**<u>EXHIBIT A</u>**

Court File No: 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL
NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

OUTLINE OF THE CANADIAN DEBTORS AND THE MONITOR OF MATTERS TO BE
CONSIDERED AT THE PRE-TRIAL CONFERENCE ON APRIL 22, 2014

(Pre-Trial Conference to be held on April 22, 2014)

Date:  April 21, 2014

GOODMANSLLP
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Jay A. Carfagnini** (LSUC #: 22293T)
jcarfagnini@goodmans.ca
**Alan Mark** (LSUC #: 21772U)
amark@goodmans.ca
**Jessica Kimmel** (LSUC #: 32312W)
jkimmel@goodmans.ca
**Peter Ruby** (LSUC #: 38439P)
pruby@goodmans.ca
**Joseph Pasquariello** (LSUC #: 38390C)
jpasquariello@goodmans.ca

Tel:      416.979.2211
Fax:      416.979.1234

Lawyers for the Monitor

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place,
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Derrick Tay** (LSUC #: 21152A)
derrick.tay@gowlings.com
**Jennifer Stam** (LSUC #: 46735J)
Jennifer.stam@gowlings.com

Tel:     (416) 862-5697
Fax:     (416) 862-7661

Lawyers for the Canadian Debtors

TOR_LAW\ 8413307\1

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**OUTLINE OF THE CANADIAN DEBTORS AND THE MONITOR OF**
**MATTERS TO BE CONSIDERED AT THE PRE-TRIAL CONFERENCE**
**ON APRIL 22, 2014**

**(Pre-Trial Conference to be held on April 22, 2014)**

## I.    OVERVIEW

1.    On April 15, 2014, the Monitor filed a letter (the "**April 15 Letter**") with the Canadian

Court outlining the matters that it anticipated would be addressed at the pre-trial

conference scheduled for April 22, 2014. The April 15 Letter was also filed with the U.S.

Court (together with the Canadian Court, the "**Courts**").  A copy of the April 15 Letter is

attached as Appendix A.

2.    The following provides further information on the proposed topics for the pre-trial

conference.

-2-

## II.    TRIAL LOGISTICS

3.    On April 17, 2014, the Monitor/Canadian Debtors and the U.S. Debtors jointly filed a letter providing details regarding the logistics relating to the Trial. A copy of that letter is attached as Appendix B. We request the Courts' consideration of the following logistical points:

(a)    The Monitor/Canadian Debtors are aware that the U.S. Court has requested a master sign in sheet at the beginning of the Trial so that lawyers are not required to sign in every day. We also understand that Kim Neeson believes this will be logistically easier if the same is done in Canada; and

(b)    The Monitor/Canadian Debtors believe that, for at least the first week of the Trial, additional security in Courtrooms 8-1 and 8-2 may be advisable and would appreciate the Court's direction on that point.

## III.    TRIAL PROTOCOL

### (a)    Background

4.    An initial trial protocol was presented at the January 29, 2014 (the **"Original Protocol"**, attached as Appendix C) pre-trial conference and was approved by the Courts (the transcript from the January 29 pre-trial conference and pre-trial memorandum summarizing the determinations of the Courts submitted by the Core Parties at the direction of the Courts are attached as Appendices D and E). A further supplement and amendment to the Original Protocol (the **"Supplementary Trial Protocol"**) was submitted to the Courts in advance of the March 12, 2014 pre-trial conference and is

- 3 -

attached hereto as Appendix F.  The Courts subsequently issued rulings which are attached as Appendices G and H.

5.    Certain trial protocol issues remain open for direction of the Courts, discussed in the following paragraphs.

**(b)    Opening Statements**

6.    The Core Parties have not agreed on an allocation of hours to each Group for opening submissions for Allocation.  The following proposal, based on the one made by the EMEA Debtors (with the allotted time for the Bondholders added to the US Allocation Group), is acceptable to the Monitor and Canadian Debtors and is generally proportionately consistent with the proposals made at the March 12 pre-trial conference:[1]

    (i)     EMEA Debtors – 2.5 hours

    (ii)    US Allocation Group/ Bondholders – 3 hours 35 minutes

    (iii)   Canadian Allocation Group – 2.5 hours

    (iv)   UK Pension Claimants – 1 hour 15 minutes

    (v)    CCC – 1 hour 15 minutes

7.    The Courts have previously ruled that the opening statements for Claims will immediately follow the opening statements for Allocation.[2]  Given the substantial overlap

---

[1] Opening statement time will also need to account for other Core Parties who are not listed above, namely the indenture trustees and the directors and officers.  Each such Core Party is entitled (although not obliged) to make a 15 min opening statement.

[2] The U.S. Court may choose to not sit that day.

in the evidence, as discussed below, this is the sensible way to proceed. The alternative, having opening statements for Claims at the outset of the "Claims only" portion of the trial, would mean that the Canadian Court would hear opening statements, setting the context for the Claims evidence, after most of the fact evidence on Claims has already been heard.

**(c)**      **Total Chess Clock Time for Allocation**

8.      The U.S. Court assigned 12 hours of time in the Allocation trial to the CCC in addition to the 150 hours the Courts have set aside for "Allocation" generally; however, the CCC has indicated that it is willing to work within the hours otherwise allocated to the Canadian Allocation Group – so that 12 additional hours can be removed by the Courts from the ordered schedule, which will assist in the reconciliation of the available trial time with the currently allotted time (discussed in the section below dealing with the scheduling orders of the Courts). Once the time allotments have all been reconciled, the Courts may wish to make a further confirmatory order in this regard.

**(d)**      **Trial Schedule**

*Overview*

9.      The Monitor and Canadian Debtors understand that certain of the other Core Parties may now seek to rely on the recent assignment of trial dates by the Courts as a basis for re-opening a number of previously decided or agreed upon matters, namely that:

     (a)      Contrary to multiple prior rulings that Allocation and Claims would be heard in a single trial, there should be two separate trials (i.e. an Allocation Trial and a Claims Trial);

- 5 -

(b)     Contrary to all prior agreements and rulings, opening statements for Claims should be made at the beginning of the Claims only Trial (i.e. on July 7, 2014) (which issue directly relates to the issue in (a) above); and

(c)     Contrary to all prior agreements and rulings, that witnesses whose evidence or cross-examinations relates to both Allocation and Claims should be required to appear twice, first for purposes of Allocation and then again for Claims.

10.     The issue of "one trial" vs "two trials" was argued and decided as early as April 3, 2013 when the Canadian Court issued its reasons (the "**Reasons**") approving the allocation protocol (the "**Allocation Protocol Order**") and confirmed as recently as the January 29 pre-trial conference.  Consistently, the Courts have found that there is to be **<u>one trial</u>** that addresses both Allocation and Claims and that witnesses should only have to appear once to give their evidence as it relates to both.

11.     Since this issue was first determined back as April 3, 2013, subsequent attempts by both the EMEA Debtors and the UK Pension Claimants to re-open the issue (including at the January 29 pre-trial conference have been consistently rejected by the Courts.  These issues were confirmed at the March 12 pre-trial conference.

*The January 29 Pre-Trial Conference*

12.     At the January 29 pre-trial conference, both the EMEA Debtors and the UK Pension Claimants made robust submissions (that were the subject of detailed briefings) arguing that there should be two separate and consecutive trials.  Even then, however, both the EMEA Debtors and the UK Pension Claimants acknowledged that witnesses who were to

- 6 -

give overlapping testimony would only be required to appear once in what was described by counsel to the UK Pension Claimants as "sequential, but pragmatic" approach.[3]

13.    At that time, counsel for the Monitor submitted that:[4]

    (a)    The issue of whether there was one trial or two had already been decided as part of Allocation Protocol Order;

    (b)    There was substantial evidentiary overlap between Allocation and both the EMEA Claimants' Claims and the UK Pension Claimants' Claims; and

    (c)    Where there are different portions to a trial with a common evidentiary basis, it follows that opening statements, pre-trial filings and briefs must all be filed and made at the beginning of the trial itself.

14.    The Courts, consistent with prior rulings, stated "it is one trial".[5] It was further noted that additional time would be carved out to address "exclusive issues with respect to [Canadian Claims]."[6] In light of the fact that all parties agreed that witnesses should not be required to appear more than once, no ruling was required on that point.

---

[3] January 29 pre-trial conference transcript, pages 36:4-36:10.

[4] January 29 pre-trial conference transcript, pages 52:6 – 56:3

[5] January 29 pre-trial conference transcript, page 80:13

[6] January 29 pre-trial conference transcript, page 81:2-81:4.

*The March 12 Pre-Trial Conference*

15.    At the March 12 pre-trial conference, the discussion about the Allocation vs. Claims portions of the trial was focussed on page limits and time allocations. The Core Parties presented the Supplementary Trial Protocol, reflecting extensive agreement among the Core Parties and highlighted a few discrete points of disagreement. Implicit among the agreed terms was that it was expected that there would be overlapping fact witness evidence but that certain discrete testimony could be designated as "Claims only".

16.    At the March 12 pre-trial conference, counsel for the U.S. Debtors provided the following succinct submissions as to the proposed conduct of the Trial, which at that time was not opposed by any of the Core Parties:

> [The trial] would run consecutive weekdays that are non-holidays, obviously taking a break if the Courts ever decide, for scheduling purposes if they needed, we would go through allocation, in which we would have actually opening statements on allocation, followed by opening statements on Claims, following which we would have all of the fact witnesses, because there's a lot of intermingling of the fact witnesses, and this is also in the January Protocol as well. We would then have the allocation experts, and that would close the allocation record. . . . [subsequently the parties to the Claims] would then proceed with the remaining time for the Claims, specifically, the Claims experts for the EMEA Claims and the UKP Claims. Again, the exact structure is set out in the January Proposed Joint Protocol."[7]

17.    The U.S. Court specifically asked about the timing of opening statements on Claims and whether it would be in or around May 12:

> U.S. COURT: Let me just interrupt you for one moment, Mr. Rosenthal. The openings beginning May 12 would include both allocation and Claims?

---

[7] March 12 pre-trial conference transcript, pages 10:20 – 11:13

MR. ROSENTHAL: The parties that are involved in the Claims, as you know the U.S. Debtors are not, the parties that are involved in the Claims have said that because the evidence is going to deal with both--

U.S. COURT: Yes.

MR. ROSENTHAL: -- allocation and Claims, because that way witnesses won't have to be called back or anything like that --

U.S. COURT: Understood. That's right.[8]

18.    No opposing submissions were made on that point.

19.    The Canadian Debtors and Monitor have proceeded accordingly in their identification of fact witnesses for trial and the affidavits filed (many of which have parts designated for Claims and parts for Allocation, and some overlapping).

20.    It is also expected that other Core Parties' designated witnesses for Allocation have knowledge of matters relevant to Claims. Cross-examinations at Trial[9] will cover their knowledge of matters relevant to both. The Supplementary Trial Protocol dictates, for "chess clock" purposes only, whether time gets deducted for Allocation or for Claims during the cross-examination of a particular witness at trial, but the reality is that there will be significant overlap and the Monitor and Canadian Debtors expect that often evidence will apply to both Allocation and Claims. It would otherwise be burdensome on the parties, but more importantly the witnesses, to have to appear twice to give what may be in many instances the exact same evidence. Further, two of the EMEA witnesses, whose affidavits have been designated as relating only to Allocation, have constraints on

---

[8] March 12 pre-trial conference transcript, page 11:14-11:24.

[9] Not limited to the matters they may have selectively chosen to include in their affidavits

- 9 -

their availability arising from, in one case, the requirements of French law and, in the other case, a family situation. Both of them have relevant evidence to provide regarding Claims, with respect to which the Claims parties have the right to cross-examine them. It would be both inefficient and burdensome to require them to appear twice. There may be other witnesses whose affidavits have been designated as relating Allocation who similarly have evidence relevant to Claims. There are many witnesses whose affidavit evidence has been designated in part for Allocation and in part for Claims, with some for both.

21.    It is clear based on the foregoing that the issues regarding the bifurcation of the Trial, the timing for opening statements and the order for calling witnesses have been thoroughly argued and decided. However, it is important that the scheduling orders of the Courts account for the fact that it is now known (and detailed in the next section below) that there are multiple trial witnesses who, consistent with what was anticipated at the previous pre-trial conferences, have been designated to testify about matters relating to both Allocation and Claims.

*The Scheduling Orders of the Courts*

22.    It is now known how many witnesses (both fact and expert) are anticipated to appear at Trial and how many of them are Allocation, Allocation and Claims, or "Claims only" witnesses. Specifically,

(a)    of the 23 fact witnesses that are anticipated to appear at Trial (a list of which is attached as Appendix I hereto), only three such witnesses are "Claims only" and

- 10 -

thus there will be 20 fact witnesses appearing in the early days of the Trial (with some of their testimony time clocked for Allocation and some for Claims);[10] and

(b)     of the 33 expert witnesses that are anticipated to appear at Trial (a list of which is attached as Appendix J hereto), only 10 of such witnesses are "Claims only" and thus there will be 23 expert witnesses appearing prior to the "Claims only" portion of the Trial (with some of their testimony time clocked for Allocation and some for Claims).

23.     The Monitor and Canadian Debtors are pleased to report that they have reached agreement with the EMEA Debtors and do not anticipate that any of the 34 foreign law experts will appear at Trial.  Further, there is still a process whereby certain fact witnesses will not be required to appear at Trial.[11]

24.     Currently, there are 25 days which have been identified as "Allocation" days for Trial starting on May 12 and ending on June 27 (with certain non-Trial days identified during that time).

25.     The Monitor and Canadian Debtors do not believe that any party should be permitted to use the scheduling orders to, yet again, re-open the issue of "one-trial" vs. "two-trials" or as a platform to argue, contrary to the parties' joint prior representations to the Courts, that opening statements for Claims should be deferred or that witnesses should be required to appear twice at Trial.

---

[10] See footnote 9 above.

[11] Supplementary Trial Protocol, Section II.B.1

26.     Instead, the Monitor and Canadian Debtors respectfully request clarification from the Courts about the Allocation and Claims trial dates that the Courts have set aside in light of the fact that cross-examinations of witnesses appearing during the first part of the Trial will in many cases be about both Allocation and Claims. The Monitor and the Canadian Debtors are respectful of the time of both Courts and, in particular, the understandable desire of the U.S. Court to avoid sitting through what is truly "Claims only" testimony (to be scheduled for July 2014 in the absence of the U.S. Court). The Monitor and Canadian Debtors believe that the contemplated approach was designed to minimize any inefficiency including for the following reasons:

(a)     Direct evidence/ evidence in chief is largely done in writing and will be filed in advance of the start of the Trial;

(b)     The Core Parties have identified for each other and will identify for the Courts which portions of that testimony has been designated by the party proffering that evidence is for Allocation, which is for Claims, and which is for both;

(c)     While there will be some discrete matters addressed in cross-examination for Allocation and some for Claims, it is not expected that the majority of the testimony will be bifurcated in that way and it is more likely the same evidence will have multiple applications; and

(d)     In order to avoid inconsistent findings as between the two Courts, it would be best for both Courts to hear as much of the evidence as possible, while avoiding the U.S. Court hearing evidence only useful for determining the Claims.

**(e)      Other Trial Protocol Issues**

27.      The operation of the Chess clock issues are:

     (a)      by whom it is operated;

     (b)      how to clock evidence relevant to both Allocation and Claims; and

     (c)      in what circumstances does the chess clock stop and start running.

28.      The Courts may also wish to provide with respect to the Trial Protocol including finalizing the Amendment and Supplement to the Joint Trial Protocol and consolidating the Original and Supplementary Trial Protocols.

**IV.      PRE-TRIAL MOTIONS**

29.      The Monitor and Canadian Debtors request the Courts' direction:

     (a)      On whether any pre-trial motions will be heard orally.  Specifically, the Monitor and the Canadian Debtors' motion to strike the reports and testimony of Bruce Stratton and Daniel Bereskin or, in the alternative, leave to file the report of Sheldon Burshtein.

     (b)      Concerning any other pre-trial motions noticed on April 21, 2014 including timing for their determination and other process issues.

     (c)      On the process for evidentiary or other rulings that may be required from both Courts prior to or during the Trial.

## V.    USE OF EXHIBITS AT TRIAL AND FILING OF MATERIALS

30.    The Monitor and Canadian Debtors' respectfully request the Courts' direction on:

      (a)    The Courts' preferred method for use of exhibits at Trial (electronic, paper or both); and

      (b)    The Courts' preferred format of evidentiary filings and written submissions (electronic, paper or both), and confirmation of timing of "filing" materials, particularly with the Canadian Court as deadlines under the Trial Protocol are 8:30pm and the Court office closes at 5pm. Further, to the extent that the Courts prefer paper filing of documents, some of which will be colour coded (e.g. the deposition transcripts will be highlighted to show designations or testimony and objections to designations), the timing for filing of paper copies as opposed to electronic copies.

31.    To the extent the Courts would benefit from a review of materials that will be included with the pre-trial Orders (a procedure that is familiar to the U.S. Court but not to the Canadian Court) or would like to provide any further direction on these issues, this could be done at the pre-trial if so requested by either or both of the Courts.

## VI.    CONFIDENTIALITY AND PRIVILEGE ISSUES

32.    The Canadian Debtors/Monitor, U.S. Debtors and/or EMEA Debtors are subject to both contractual and legal confidentiality restrictions.

33.    There is currently a protective order (the "**Discovery Protective Order**") in place that allowed for the disclosure of documents in discovery to counsel and certain other

authorized persons on a "confidential" or "highly confidential" basis.  The Discovery Protective Order is attached as Appendix K.

34.    At the time of the granting of the Discovery Protective Order, the CCC referred to the public interest served by open trials, as articulated by the Supreme Court of Canada in *Sierra Club*, and took the position that although they were content for documents to be produced on a confidential or highly confidential basis for discovery purposes, this issue would need to be re-visited at Trial.  The expectation was that by the time of the Trial the universe of relevant documents would be reduced from the many millions that were still in the process of being reviewed and were to be produced for discovery purposes.

35.    The CCC brought a motion to that effect, which did not proceed on the basis that the Discovery Protective Order would only apply to production at discovery and would be revisited for purposes of the Trial.

36.    Potential areas of confidentiality include:

(a)    Any that may arise under agreements with purchasers of the lines of business and patent portfolio post-filing which might implicate designated exhibits to the extent that they contain commercial information that is determined to be confidential.

(b)    Any that may arise by operation of law or under agreements with the taxing authorities;

(c)    Any that may arise under individual contracts containing confidentiality clauses (including customer or vendor agreements and IP license agreements); and

(d)    Any personal information that may be required to be kept confidential under the privacy laws of the applicable jurisdiction.

37.    The fact that there are multiple exhibits that have been designated for trial that may be subject to confidentiality restrictions could have significant impact on the Trial and will impact:

(a)    The use of documents at Trial:

(i)    there are currently 14,000 potential trial exhibits (not including 7,600 patent assignments which have been designated for the Allocation trial) and it may be difficult if not impractical to individually review and assess for confidentiality considerations in the current timeframe;

(b)    The use of fact and expert witness deposition transcripts at Trial:

(i)    currently all transcripts have been designated as "highly confidential" and the designated portions have not been reviewed on a line by line basis for confidential content and it may be difficult if not impractical to do so in the available time;

(ii)    transcript designations are expected to be submitted in respect of approximately 100 fact witnesses and approximately 35 expert witnesses;

(c)    The use of affidavits and reports at Trial and cross-examination of trial witnesses;

(d)    The filing of pre-trial briefs; and

(e)    Statements made during opening statements.

38.    A continuation of the existing Confidentiality and Protective Order at Trial would require:

(a)    redaction of portions of exhibits[12], transcripts, affidavits, reports and briefs; and

(b)    potentially frequent clearing of the Court rooms.

39.    Certain third parties may have an interest in any proposed alterations to the protections afforded by the existing Confidentiality and Protective Order, as it relates to exhibits and/or testimony that has been designated for use at Trial.  The estates do not wish to be exposed to any claims for non-compliance of with any confidentiality obligations

40.    In addition to the confidentiality issues, joint privilege applies to many of these documents.  Last summer, the parties agreed on protective language in an amendment to the protective order (attached as Appendix L) and produced "joint privileged" documents as part of discovery.[13] These documents were produced on a "highly confidential" basis.

41.    The Canadian Debtors/Monitor have initiated discussions regarding a potential solution with the U.S. Debtors and EMEA Debtors regarding the confidentiality and privilege considerations.

---

[12] The Canadian Debtors/Monitor expect that given the magnitude of the document production process during discovery (approximately 3 million documents) and the abbreviated timeframe in which that production took place, that certain documents were designated as confidential or highly confidential which could be de-designated as such, but there may not be time to do this in advance of the trial.

[13] "Joint privileged documents" were documents where the privilege was determined by the producing party to be held by more than one estate.  "Single estate privileged documents" were not produced. As with the confidential documents, the Canadian Debtors and Monitor expect that given the magnitude of the document production process during discovery (approximately 3 million documents) and the abbreviated timeframe in which that production took place, that certain documents were designated as privileged which could be de-designated as such, but there may not be time to do this in advance of the trial.

(a)     With respect to the privilege considerations, it is contemplated that an order similar to the one made by the Canadian court last week protecting against waiver of privilege (including subject matter privilege) may be a means of addressing some of the concerns.

(b)     Discussions regarding confidentiality are ongoing and more complex in part because of the impact on third parties, and discussions that are likely necessary with those third parties. The[ Canadian Debtors and Monitor believe that these issues need to be addressed by the parties and the Courts as soon as possible given their potential breadth and the impending Trial which is only 3 weeks away. Thus, consideration should be given by the Courts to setting a schedule for any motions that may need to be brought on notice to third parties in this regard.

## VII.    OTHER ISSUES

42.    Other issues include:

(a)     Expert reports have been provided to the Courts, some of which remain subject to objection.

(b)     Directions about qualification of experts and formal filing of their reports at Trial;

(c)     Should the formal filing of documents (i.e. affidavits) be done on a consolidated basis or by party and USB key, paper or both; and

(d)     whether US lawyers need to robe when appearing in Canada.

# INDEX

*ONTARIO*
**SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

## INDEX

| TAB | | PAGE NO. |
|---|---|---|
| A | Letter to Justice Newbould re: list of items to be addressed at April 22, 2014 pre-trial conference | 1 |
| B | Letter re: Courtroom Logistics | 2 |
| C | Original Protocol | 5 |
| D | Transcript from January 29 pre-trial conference | 20 |
| E | Cover letter and pre-trial conference memorandum | 124 |
| F | Supplementary Trial Protocol | 146 |
| G | Nortel procedural ruling released March 21, 2014 | 152 |
| H | Amended Order re: Allocation Trial Protocol | 155 |
| I | Anticipated Fact Witness List | 158 |
| J | Anticipated Expert Witness List | 160 |
| K | Discovery Protective Order | 162 |
| L | First Amendment to Protective Order | 184 |

# TAB A

# Goodmans LLP

Barristers & Solicitors

Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario M5H 2S7

Telephone: 416.979.2211
Facsimile: 416.979.1234
goodmans.ca

Direct Line: 416.597-4184
pruby@goodmans.ca

April 15, 2014

Our File No.: 083800

The Honourable Justice Frank Newbould
Ontario Superior Court of Justice
Judge's Administration
330 University Avenue, 7th Floor
Toronto, ON M5G 1R7

Your Honour:

**Re:    Nortel Networks Corporation, *et al*. (Court File No. 09-CL-7950)**
**April 22 Joint Pre-Trial Conference**

We understand that you have requested a list of the items that we anticipate will be addressed at the April 22 joint pre-trial conference. We have not canvassed all other parties for a complete list of potential issues. However, we anticipate that some or all of the following matters may be addressed:

1. Update about court reporting, audio/video and communication facilities for the joint trial and physical trial logistics;
2. Review and finalization of the trial protocol including appearance of witnesses in light of the Courts' trial schedule;
3. Pre-trial motions;
4. Preferred format of evidentiary filings and written submissions (electronic, paper or both);
5. Confidentiality issues;
6. Advance filing of documents; and
7. Whether US lawyers need to robe when appearing in Canada.

We will endeavour to provide a further update regarding the proposed list of matters to be addressed prior to the date of the conference.

Yours truly,

**Goodmans LLP**

*Peter Ruby / u.r.*

Peter Ruby
Copy:  Core Parties Service List

6319705

# TAB B

2.

April 17, 2014

**The Honourable Justice Frank Newbould**
Ontario Superior Court of Justice
Judge's Administration
330 University Avenue, 7th Floor
Toronto, Ontario  M5G 1R7

**The Honorable Kevin Gross**
United States Bankruptcy Court
for the District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

Dear Your Honours:

**RE: Nortel Networks Trial: Courtroom Logistics (Canadian Court File Numbers 09-CL-7950 and US Case Number 09-10138(KG)**

We write on behalf of Ernst & Young Inc., Monitor of Nortel Networks Limited and the other Canadian Debtors (the "Canadian Debtors") and Nortel Networks Inc. and the other US Debtors (the "US Debtors") to provide an update with respect to the courtroom logistics and court reporting proposal for the Nortel Trial commencing on May 12, 2014.

We are pleased to advise that an agreed upon joint solution for the trial technology has been reached and implementation is underway.  The solution is being implemented in the Ontario Court in Courtroom 8-1 as well as Courtroom 8-2 (as a gallery courtroom) and in the Delaware Court in Courtroom 3 and office space on the second floor of 824 N. Market Street (as a gallery courtroom) . Courtrooms 8-1 and 3 are referred to as the "Main Courtrooms" and Courtrooms 8-2 and the second floor space are referred to as the "Gallery Courtrooms".

A brief summary of the solution is as follows:

- Vendor: Bell Canada, along with its partner ET Group and its US partner, Advanced AV (collectively, the "Service Provider") have been retained by the Canadian Debtors and the US Debtors to provide the Courtroom solution.

- Connection: The Service Provider is installing a dedicated telecommunications line between the Ontario and Delaware Courts to provide for a reliable and high capacity connection between the two Courts. Such a dedicated connection avoids using the internet as the means of communication and the variability associated with transmitting video over the internet.

- Video conferencing solution:

  o Equipment for the video conferencing solution is being purchased under the Service Provider contracts as purchasing such equipment was more economical than renting such equipment.

  o Video monitors will be provided in the Main Courtrooms as follows (a) two

monitors for the judge; (b) two monitors for Judge Gross's Clerk; (c) a monitor in the witness box; (d) two monitors placed on each counsel table; and (e) a monitor imbedded in the podium.

o Microphones will be placed in the same locations as the video monitors, except no microphone will be place in front of Judge Gross's Clerk and the court reporters will be provided with microphones as well.

o The monitors will show the judge, the witness box and the podium in the Courtroom of the other jurisdiction (for example, in Toronto, each monitor will show Judge Gross, the US witness box and the US podium). Discussions regarding the display of evidence are ongoing and are likely to be addressed at the April 22 Pre-Trial conference. There will also be one monitor placed in each of the Main Courtrooms showing what is happening in that Courtroom (so that the participants in one Courtroom can check what is being transmitted to the other Courtroom).

o Each of the Gallery Courtrooms will have video screens and audio showing what is happening in both Main Courtrooms.

- Support. The Service Provider will provide daily, on-site support in both Ontario and Delaware for the duration of the Trial.

- Court Reporting. Neeson & Associates and Wilcox Fetzer have been retained to provide court reporting services in the Main Courtrooms. The Court Reporters will work together to provide a single joint transcript for both Courts.

o An iPad or laptop will be provided to each of Your Honours to view the transcript in real time; and

o iPads or laptops will also be on each counsel table so that counsel may view the transcript in real time.

o We have been advised that it will be technologically difficult for the Court Reporters to switch transcription mid-day. As such, Your Honors and counsel will be viewing the transcription of Wilcox Fetzer or Neeson & Associates based on the predominate location of the witness or witnesses for that day. For greater clarity, both Court Reporters will be taking transcription on all days and a single final official transcript will be produced for each day; the prior sentence relates only to the live stream that you will be able to see in real time.

- Courtroom floor plan. Court personnel, the Service Provider and counsel have discussed floor plans for the Main Courtrooms which will maximize the number of counsel tables and chairs in each courtroom. Gallery seating will be available in the Gallery Courtrooms.

- Remote Access: In order to limit the need for all counsel to be in the courtroom at all times, we have arranged for the following remote access to the video, audio and

transcripts.

- o Webstreaming access will be provided for authorized users who will be able to log in from remote locations. This access will provide those authorized users with the same monitor views as what are seen on the monitors in the Main Courtrooms.

- o Live streaming access will be provided for authorized users to view the real time transcript provided by the court reporters.

- **Cost**. Given the extent and complexity of this solution as well as the fact that there is a small amount of time to complete the installation, the cost of this solution is estimated to be approximately $1.3 million (not including court reporting fees). Certain of the Core Parties have agree to a cost sharing arrangement.

- **Timing**. Currently, we anticipate that Courtroom work will commence on or about April 22, 2014 in Toronto and May 3, 2014 in Delaware. We are optimistic that installation and testing will be complete by May 12, 2014.

We would be pleased to provide any further information, or make any changes to the technology plan set forth above, as the Courts may require.

Yours Truly,

GOODMANS LLP, for the Monitor

MORRIS, NICHOLS, ARSHT & TUNNELL, for the US Debtors

# TAB C

## Proposed Joint Trial Protocol[1]

**I.    Pre-Trial Submissions**

**A.    Fact Witness Affidavits**

1.    By March 31, 2014,[2] the Core Parties shall disclose the names of the fact witnesses for Allocation (as defined in the Allocation Protocol) and Claims[3] from whom they will submit affidavits, which witnesses will be made available for cross-examination at trial.[4]

2.    Opening fact witness affidavits for Allocation and Claims shall be exchanged by the Core Parties by April 11, 2014,[5] and submitted to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H.

3.    At the time of exchange of fact witness affidavits, the offering Core Party shall disclose the location at which each witness shall testify at trial.

4.    On April 25, 2014, the Core Parties shall exchange the reply witness affidavits and submit such affidavits to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H. Except with leave of the Courts for good cause shown, or as necessary to rebut specific allegations concerning a proposed new affiant which could not have been reasonably anticipated, reply affidavits shall be

---

[1]    This proposal assumes a single trial of Allocation and Claims and is subject to change in the event of the Courts' adoption of the anticipated requests of the EMEA Claimants and the UK Pension Claimants for an increased trial length or bifurcation of the trial. Additionally, the Litigation Timetable provides that the Bondholder Allocation Group is distinct from the allocation groups of the US, Canadian and EMEA Debtors and therefore has the right to make its own presentations to the Courts. However, in an effort to streamline the trial proceedings, the Core Parties agree that for purposes of this Proposed Joint Trial Protocol, the Bondholder Allocation Group shall be considered part of the US Allocation Group except (i) the Bondholder Allocation Group shall have the right to submit its own pre-trial and post-trial briefs and is entitled to its own allocation of time for opening statements and closing arguments (each not to exceed 15 minutes) and (ii) in the event of disagreement between them, either the Bondholder Allocation Group or the US Allocation Group shall have the right to petition the Courts, upon a showing of good cause, for additional time to allocate at trial for witness examinations specifically for the Bondholder Allocation Group. All other Core Parties' rights are reserved with respect to any such application by the Bondholder Allocation Group and/or the US Allocation Group.

[2]    All deadlines are to be considered to be no later than 8:30 p.m. Eastern time unless otherwise indicated.

[3]    "Claims" means the Canadian EMEA Claims and Canadian UKPC Claims as both terms are defined in the Allocation Protocol.

[4]    The Core Parties will meet and confer to discuss mutually acceptable limitations on the affidavits and those matters set out in Section II.C.4 herein with a view to submitting a joint proposal or competing proposals no later than February 28, 2014 and, subject to the availability of the Courts, with any unresolved issues to be determined by the Courts at a subsequent pre-trial conference to be convened no later than March 14, 2014.

[5]    "Claims Party" or "Claims Parties" refers to the Canadian Claims Defendant Group, the EMEA Claimants, and the UK Pension Claimants.

submitted only from witnesses who submit initial affidavits.

**B.     Deposition Designations**

1.     Deposition testimony may be submitted by any Core Party of any witness, except that deposition testimony (other than counter-designations for completeness) shall not be submitted by any Core Party of any witness from whom its Allocation Group is submitting an affidavit except that the EMEA Claimants and the UK Pension Claimants, as the case may be, may submit deposition testimony of a witness whose affidavit is submitted by the other of the EMEA Claimants and UK Pension Claimants solely with respect to their Claims.[6]

2.     Fact witness designations

a)     Initial designations shall be due by April 11, 2014.

b)     Objections to initial designations and counter-designations necessary for completeness, as well as initial supplemental designations specifically responsive to affidavit testimony, shall be due by April 25, 2014.

c)     Objections to counter-designations and initial supplemental designations, as well as final supplemental designations specifically responsive to reply affidavit testimony and counter-designations to initial supplemental designations, shall be due by April 29, 2014.

d)     Objections to final supplemental designations and counter-designations to initial supplemental designations, as well as counter-designations to final supplemental designations, shall be due by May 1, 2014.[7]

3.     Expert witness designations

a)     Designations for expert testimony shall be due April 17, 2014.

b)     Objections and counter-designations for expert testimony shall be due by April 25, 2014.

c)     Objections to counter-designations shall be due by April 30, 2014.

4.     Objections to deposition designations shall be made succinctly in writing and provided to the Courts with the final deposition designations for determination.   The time for determination of such objections will be subject to the discretion of the Courts.

---

[6]     In the event representative depositions take place, a Core Party may not offer the representative deposition testimony of any representative of itself or its Allocation Group (other than counter-designations for completeness).

[7]     Any objections to such further counter-designations shall be due by May 5, 2014 and shall result in the supplementation of the pre-trial orders.

5.      Any Core Party may seek leave of the Courts, for good cause shown, to permit the introduction at trial of deposition designations not included with the joint pre-trial orders/books. This provision shall not limit any Core Party's rights under Section II.C.8.

6.      Final deposition designations and objections shall be submitted to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H.

**C.    Exhibit lists**

1.      The Core Parties shall exchange exhibit lists prior to their submission to the Courts, in accordance with the following schedule:[8]

   a)      Initial exhibit designations shall be exchanged by April 11, 2014.

   b)      Objections to exhibit designations and supplemental designations shall be exchanged by April 25, 2014.

      (1)      Supplemental designations are intended to encompass a limited number of exhibits that were overlooked with initial designations or relate to another Allocation Group's or Claims Party's initial designations.

      (2)      The Courts shall have the right to exclude supplemental exhibit designations if they believe that admission would be prejudicial to any Core Party or order any other relief.

   c)      Objections to supplemental designations shall be due by April 30, 2014.

   d)      Final exhibit lists and objections shall be submitted to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H.

2.      Objections to exhibits shall be made succinctly in writing and provided to the Courts with the final exhibit lists for determinations.

   a)      Barring objection, all exhibits shall be deemed admitted without having to be specifically moved into evidence at trial.

   b)      No objection shall be made to the authenticity of any exhibit or to the lack of foundational testimony necessary for its admission into evidence unless a party has a specific good faith basis to believe that the proffering party could not have laid a proper foundation with an

---

[8]      The Core Parties contemplate that prior to the pre-trial conference scheduled for January 29, 2014, they will reach final agreement on a stipulation regarding representative depositions, which will incorporate certain additional phases in the exhibit list schedule set forth herein. In the event they do not reach such agreement, the Core Parties reserve their rights with respect to any necessary modification of the dates set forth in Sections I.C.1.b and I.I.

appropriate witness. The Core Parties reserve all rights to raise objections to the admissibility of documents to the extent they, in good faith, believe that necessary foundational testimony could not have been obtained, or as otherwise appropriate under the applicable laws or rules of evidence for reasons other than authenticity and foundation.[9] So long as notice is provided in accordance with the timeline for objections to exhibits generally, such objections may be raised by either the objecting Core Party or the proffering Core Party with the Courts as part of the Pre-Trial Motions in the manner set out in Section I.I.

3.      Any Core Party may seek leave of the Courts to permit the introduction at trial of any document that has not been designated for inclusion by any Core Party in the trial exhibit book upon a showing of good cause. In determining whether good cause has been shown, the Courts may consider, among other factors, the timeliness of the disclosure of the proposed exhibit and the underlying reasons therefore.

4.      Following the exchange of exhibit lists, the Core Parties shall confer to compile for the Courts a single set of joint exhibits whose admissibility is uncontested, along with separate sets (one for each Allocation Group and one for each Claims Party) of objected-to exhibits.

5.      Where applicable, exhibits shall be given the same number as used at depositions. Where an exhibit was marked more than one time at a deposition, one number shall be used and the Core Parties shall seek to modify other transcripts submitted to the Courts to reflect the exhibit number to be used at trial. In addition to providing the exhibit number marked at depositions, the exhibits shall also include the as-produced Document ID numbers.

**D.      Expert reports (which shall be those previously served in accordance with the Litigation Timetable)**

1.      The Core Parties shall meet and confer in order to reach agreement by no later than April 4, 2014 on the number of experts (both foreign law and non-foreign law experts) each Group will be permitted to offer to testify live at trial, with the reports of its other experts being submitted without live examination.

    a)      By April 11, 2014, each Allocation Group and each Claims Party shall identify those expert witnesses (non-foreign law experts and, to the extent agreement is not reached pursuant to Section 1.D.1.b below, foreign law experts) who will be testifying live and the location where they will be testifying.

    b)      The Core Parties will work in good faith after the exchange of expert reports to try and reach an agreement that would allow for the

---

[9]      For the avoidance of doubt, except with respect to hearsay or other foundational objections dealt with pursuant to the foregoing, the Core Parties' rights to object to the admission of exhibits (or their weight) on other evidentiary grounds, such as improper opinion evidence, are preserved.

testimony of foreign law experts to be submitted without live testimony (through expert reports and deposition testimony). In the event that the Core Parties are unable to agree, a Core Party may designate foreign law experts to testify live at trial subject to the terms herein.

2.      The expert reports that a Core Party intends to rely upon may not be altered or supplemented after the expert has been deposed unless the expert is made available for re-deposition.

3.      In the event that a Core Party seeks to withdraw an expert, the Core Party shall provide notice in writing of its intention. If a Core Party withdraws an expert in writing prior to that expert's deposition, no other Core Party may refer to the report(s) of such an expert (including in any rebuttal report to the extent practicable) and there shall be no inference related to such expert having been withdrawn. If a Core Party withdraws an expert in writing after that expert's deposition, the other Core Parties may refer to the report(s) and/or designate portions of the deposition of such expert.

**E.      Statement of Agreed Facts**

1.      The Core Parties shall endeavor in good faith to prepare a statement of agreed facts.

**F.      Confidentiality and Protective Order**

1.      The Core Parties shall endeavor in good faith to negotiate a proposed confidentiality and protective order no later than March 31, 2014 and shall file such order (or their respective proposed versions if the Core Parties do not reach agreement) on or before April 11, 2014.

**G.      Pre-trial briefs**

1.      On May 2, 2014, the Core Parties shall serve and file pre-trial briefs. Core Parties who do not file a brief shall have until May 6, 2014 to file a joinder to the pre-trial brief of another Core Party.

2.      Pre-trial briefs on Claims and Allocation shall be separate.

**H.      Proposed pre-trial orders**

1.      The Core Parties shall jointly prepare a proposed pre-trial order on Allocation  and a separate proposed pre-trial order on the EMEA Claims and the UK Pension Claims and submit such pre-trial orders to the Courts on May 2, 2014 by noon Eastern time. These orders shall contain:

a)      Any agreed upon written statement of facts;

b)      A list of all deposition designations (both fact witness designations and expert witness depositions), including the relevant excerpts, as well as all objections to any such testimony;

c)      A list of all exhibits designations, as well as all objections to any such exhibit designations;

d)      A single set of joint exhibits whose admissibility is uncontested, along with separate sets (one for Allocation and one for Claims) of objected-to exhibits;

e)      Copies of all fact witness affidavits of designated trial witnesses; and

f)      Copies of all expert reports.

**I.      Motions regarding matters that for good reason ought to be decided prior to trial ("Pre-Trial Motions")**

1.      Pre-Trial Motions shall be served and filed on April 17, 2014.

2.      Responses to Pre-Trial Motions shall be served and filed on April 25, 2014.

3.      Replies to Pre-Trial Motions shall be served and filed on May 2, 2014.

4.      Any Core Party may request, or oppose any request, to appear before the Courts to provide oral submissions.

**II.    Trial**

**A.      General**

1.      Total trial time is estimated at 120 hours (20 days of six hours each). The trial time shall be utilized for (i) opening statements and (ii) presentation of witnesses in the manner permitted hereunder.

2.      The US Allocation Group shall be entitled to [●] hours, the Canadian Allocation Group shall be entitled to [●] hours, the Canadian Claims Defendant Group shall be entitled to [●] hours, the EMEA Allocation Group shall be entitled to [●] hours, the EMEA Claimants shall be entitled to [●] hours, and UK Pension Claimants shall be entitled to [●] hours. The Core Parties defer until a future date (as set forth in Section II.C.4) a decision with respect to the foregoing allocation of time but agree that the time used by each Core Party shall be measured in a "chess clock" approach.[10]

---

[10]      The UK Pension Claimants intend to raise the issue as to whether the length of trial prescribed by the Courts applies only to the Allocation trial rather than Allocation and Claims resolution. In this respect, the UK Pension Claimants will submit that the length of the trial is inadequate to address Allocation and Claims in a just and fair manner. All other Core Parties reserve their rights to support or object to the position of the UK Pension Claimants.

Other Core Parties may have submissions about entitlement to separate time allocations and all rights are reserved in this regard.

a)      Each Allocation Group (and the Canadian Claims Defendant Group) shall have no restriction on how they wish to use or allocate their time allocations among members.

b)      Any Core Party that is not part of an Allocation Group shall identify the Allocation Group with whom that Core Party is most closely aligned by April 14, 2014.

## B.    Opening Statements

1.      Opening statements on Allocation shall be limited to [●] hours for each of the Allocation Groups, to be allocated among intra-Group members in whatever manner they see fit.[11]

a)      Opening statements shall be in the following order:

(1)      EMEA Allocation Group

(2)      US Allocation Group

(3)      Canadian Allocation Group

b)      Each Core Party that is not part of an Allocation Group may present an opening statement immediately following the Allocation Group identified by that Core Party pursuant to Section II.A.2.b.  Such opening statement shall be no longer than 15 minutes.

2.      Opening statements on EMEA Claims and UK Pension Claims shall be limited to [●] hours for each of the Canadian Claims Defendant Group, the EMEA Claimants, and the UK Pension Claimants, to be allocated by intra-Group members in whatever manner they see fit.

a)      Opening statements shall be in the following order:

(1)      EMEA Claimants

(2)      UK Pension Claimants

(3)      Canadian Claims Defendant Group

## C.    Fact Witnesses[12]

1.      No fact witness may testify who has not submitted an affidavit.

2.      Fact witnesses shall be called in the following order:

---

[11]      No single Core Party will use the entire time allotted to any Allocation Group or Claims Group for making opening or closing submissions without agreement of other members of its Allocation Group or Claims Group.

[12]      The rights of the Core Parties to examine and cross-examine are subject to the usual rules governing cross examination with respect to parties who are not adverse in interest, and are to be exercised in light of the expectation that direct evidence is to be disclosed in pre-filed affidavits.

a)      Canadian Allocation Group and Canadian Claims Defendant Group

b)      US Allocation Group

c)      EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants

3.      The examination of witnesses shall be in the following order (with the proffering Group determining the order of its witnesses):

a)      For Canadian Allocation Group and Canadian Claims Defendant Group witnesses:

(1)      Canadian Allocation Group and Canadian Claims Defendant Group

(2)      US Allocation Group  (on Allocation only)

(3)      EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants

b)      For US Allocation Group witnesses:

(1)      US Allocation Group

(2)      EMEA Allocation Group

(3)      Canadian Allocation Group

c)      For EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants witnesses:

(1)      EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants

(2)      Canadian Allocation Group and Canadian Claims Defendant Group

(3)      US Allocation Group  (on Allocation only)

4.      Re-direct and re-cross examinations shall be limited in scope to the preceding examinations since that Allocation Group or Claims Party last examined the witness and shall be conducted in the same order as the initial examinations.

5.      The Core Parties shall meet and confer in order to submit proposals to the Courts with respect to the trial schedule including (i) the time permitted for opening statements, and (ii) the division of trial time among the various Allocation Groups and/or Claims Parties.  An agreed-upon proposal, or separate proposals in the event the Core Parties fail to reach agreement, shall be submitted

to the Courts no later than February 28, 2014 so as to enable the Courts to adjudicate any disagreement at a pre-trial conference to be held no later than March 14, 2014, subject to the availability of the Courts.[13]

6.     Affidavits from fact witnesses shall serve as direct testimony; however, Core Parties shall be permitted to conduct an initial direct examination of up to 30 minutes consistent with the witness's affidavit or as appropriate to respond to the testimony of another witness, with such time being charged against the proffering Allocation Group's or Claims Party's time allocation.

7.     Core Parties that do not belong to any Allocation Group may cross-examine witnesses in conjunction with the Allocation Group identified by that Core Party pursuant to Section II.A.2.b, provided that such Core Parties shall coordinate their efforts with the members of the Allocation Group identified by that Core Party pursuant to Section II.A.2.b to the extent practicable.

8.     Fact witnesses shall only be called to testify once. Two business days following the completion of all fact witness testimony, the Core Parties shall have the opportunity to submit additional deposition designations solely as necessary to rebut testimony of a fact witness of another Allocation Group or Claims Party (with the Core Party that proffered such fact witness(es) having the right to submit two business days later objections as well as counter-designations necessary for completeness). A Core Party may not designate additional deposition testimony of a testifying witness without having first put the deposition testimony to the witness at trial.

     a)     If challenged, the Core Party seeking to offer such supplemental deposition designations shall be required to identify the specific testimony to which each designation relates

## D.    Expert Witnesses[14]

1.     The number of all expert witnesses (both non-foreign law and foreign law, unless an agreement has been reach that no foreign law experts need to appear at trial) to testify at trial will be chosen by each Allocation Group and Claims Party and disclosed to the other Core Parties no later than April 4, 2014, with the remaining experts testifying through written reports and deposition testimony.[15] Each other Allocation Groups or Claims Parties shall have the right to request the live appearance and cross examination of additional expert witnesses from the other Allocation Groups or Claims Parties.

---

[13]    The proposal(s) can be either for a specific allocation of time or principles by which time would be allocated. The allocation of any trial time to Core Parties who are not part of an Allocation Group shall be taken pro rata from all Allocation Groups.

[14]    The rights of the Core Parties to examine and cross-examine are subject to the usual rules governing cross examination with respect to parties who are not adverse in interest, and are to be exercised in light of the expectation that direct evidence is to be disclosed in pre-filed expert reports.

[15]    Subject to ability to call additional rebuttal expert witnesses.

a)      Deposition testimony may be submitted by the other Allocation Groups or Claims Parties without restriction with respect to any experts. Deposition testimony may not be offered (except proper counter-designations) by any Allocation Group or Claims Party with respect to its own expert witness it is calling as a live witness.

2.      Expert trial witnesses for Allocation and Claims shall be disclosed on April 11, 2014.

3.      Expert witnesses whose evidence is solely in respect of Allocation or a combination of Allocation and Claims ("Allocation Experts") shall be called in the following order after the examination of all fact witnesses:

a)      EMEA Allocation Group

b)      Canadian Allocation Group

c)      US Allocation Group

4.      The examination of Allocation Experts shall be in the following order (with the proffering Allocation Group determining the order of its witnesses):

a)      For EMEA Allocation Group witnesses

(1)      EMEA Allocation Group

(2)      Canadian Allocation Group

(3)      US Allocation Group

b)      For Canadian Allocation Group witnesses:

(1)      Canadian Allocation Group

(2)      US Allocation Group

(3)      EMEA Allocation Group

c)      For US Allocation Group witnesses

(1)      US Allocation Group

(2)      EMEA Allocation Group

(3)      Canadian Allocation Group

5.      Expert witnesses whose evidence is only in respect of Claims ("Claims Experts") shall be called in the following order after the examination of all

Allocation expert witnesses:[16]

    a)    EMEA Claimants

    b)    UK Pension Claimants

    c)    Canadian Claims Defendant Group

6.    The examination of Claims Experts shall be in the following order (with the proffering Claims Party determining the order of its witnesses):

    a)    For EMEA Claimants witnesses:

        (1)    EMEA Claimants

        (2)    Canadian Claims Defendant Group

    b)    For UK Pension Claimants witnesses:

        (1)    UK Pension Claimants

        (2)    Canadian Claims Defendant Group

    c)    For Canadian Claims Defendant Group witnesses:

        (1)    Canadian Claims Defendant Group

        (2)    EMEA Claimants

        (3)    UK Pension Claimants

7.    Re-direct and re-cross examinations shall be limited in scope to the preceding examinations since that Allocation Group or Claims Party last examined the witness and shall be conducted in the same order as the initial examinations.

8.    Core Parties that do not belong to any Allocation Group may cross-examine expert witnesses in conjunction with the Allocation Group identified by that Core Party pursuant to Section II.A.2.b, provided that such Core Parties shall coordinate their efforts with the members of the Allocation Group identified by that Core Party pursuant to Section II.A.2.b to the extent practicable.

9.    Expert reports and rebuttal reports shall serve as direct testimony; however, Core Parties shall be permitted to conduct initial direct examinations (without time restriction) consistent with the expert's reports, with such time being charged against the proffering Allocation Group's or Claims Party's time allocation.

---

[16]    For greater certainty, the UK Pension Claimants shall not be entitled to conduct an examination of EMEA Claimants' Claims Experts, and the EMEA Claimants shall not be entitled to conduct an examination of the UK Pension Claimants' Claims Experts.

E.    The evidentiary record shall be closed simultaneously for all Core Parties at the conclusion of trial.

**III.   Post-Trial**

**A.    Written Submissions**

1.    Opening post-hearing memoranda on Allocation and opening post-hearing memoranda on Claims will be filed separately.

a)    Each opening post-hearing memoranda shall be submitted four weeks after the last day of trial.  Core Parties shall have two additional business days to file a joinder to the post-hearing memoranda of another Core Party.

2.    Responsive post-hearing memoranda on Allocation and responsive post-hearing memoranda on Claims will be filed separately.

a)    Responsive post-hearing memoranda shall be submitted three weeks after the opening post-hearing memoranda.  Core Parties shall have two additional business days to file a joinder to the responsive post-hearing memoranda of another Core Party.

**B.    Closing Arguments**

1.    On [dates] [2 consecutive days], closing arguments on Allocation shall be heard.  On [date(s)], closing arguments on the EMEA Claims and UK Pension Claims shall be heard.

2.    Closing arguments on Allocation shall be limited to [●] hours for each of the Canadian Allocation Group, EMEA Allocation Group, and US Allocation Group, to be allocated by intra-Group members in whatever manner they see fit.  This time shall not be charged against the trial time allocations set forth above.

a)    Closing arguments on Allocation shall be in the following order:

(1)    Canadian Allocation Group

(2)    EMEA Allocation Group

(3)    US Allocation Group

b)    Each Core Party that is not part of an Allocation Group may present a closing argument immediately following the Allocation Group identified by that Core Party pursuant to Section II.A.2.b.  Such closing argument shall be no longer than 15 minutes.  A Core Party is not obligated to present a closing argument.

c)    Allocation Groups may reserve up to 1/3 of their time for closing arguments for a single round of rebuttal arguments in the same order as

12

initial closing arguments.

3.     The available time for closing arguments on EMEA Claims will be limited to [●] hours for the EMEA Claimants and [●] hours for the Canadian Claims Defendant Group, to be allocated among Group members in whatever manner they see fit.

   a)     Closing arguments on the EMEA Claims Dispute shall be in the following order:

      (1)     EMEA Claimants

      (2)     Canadian Claims Defendant Group

   b)     The EMEA Claimants may reserve up to 1/3 of their time of closing argument for a rebuttal argument.

4.     The available time for closing arguments on the UK Pension Claims Dispute will be limited to [●] hours for the UK Pension Claimants and [●] hours for the Canadian Claims Defendant Group, to be allocated among Group members in whatever manner they see fit.

   a)     Closing arguments on the UK Pension Claims Dispute shall be in the following order:

      (1)     UK Pension Claimants

      (2)     Canadian Claims Defendant Group

   b)     The UK Pension Claimants may reserve up to 1/3 of their time for closing argument for a rebuttal argument.

## IV.    Trial Location

A.     Each Allocation Group and Claims Party shall be entitled to advance and prove its case in the location it chooses (*i.e.*, opening statement, oral evidence and closing argument).

B.     Witnesses shall testify in either Toronto or Wilmington at their election, provided notice of location is furnished at the time of the exchange of affidavits.

C.     Trial location in Toronto shall be _____.

D.     Trial location in Wilmington shall be _____.

E.     Miscellaneous

   1.     When proceedings are occurring in Toronto, the US Court shall participate by live video link.

   2.     When proceedings are occurring in Wilmington, the Canadian Court shall

13

participate by live video link.

3.      All arguments shall be presented live in the locations listed above. Witness examination may be presented in either court location and presented through video link to the other location.

4.      Each Allocation Group shall have at least one lawyer present in the courtroom participating by video link in order to ensure the smooth presentation of documentary evidence to the video linked judge.

5.      Counsel admitted in either the US Court or Canadian Court (including by *pro hac vice*) may appear and participate fully in the other courtroom as if admitted in that Court.

## V.    Miscellaneous

A.      The Core Parties hereby acknowledge the previous agreements and orders that bear on the Joint Trial, including but not limited to (i) the Cross-border Insolvency Protocol; (ii) the Cross-border Claims Protocol; (iii) the Discovery Plan; and (iv) the Deposition Protocol and amendments thereto.  The Core Parties stipulate and agree that to the extent these agreements are inconsistent with this Joint Trial Protocol, the Joint Trial Protocol shall govern.

B.      The Courts shall have the right to modify this Joint Trial Protocol at their discretion for good cause so long as they conclude that such modification is not unduly prejudicial to any Core Party.

C.      In the event any of the Core Parties elects to adopt an allocation position not contained in its pleadings, any other Core Party shall have the right to petition the Courts for a re-allocation of trial time and/or a re-ordering of the trial presentation.  Nothing in this provision shall relieve any Core Party of any obligation to seek leave to amend its pleadings to the extent it is otherwise required to do so by law, or to impose any obligation to seek leave to amend its pleadings if it is not otherwise required to do so by law.

D.      Core Parties shall not be obligated to prove Canadian law to the US Court or US law to the Canadian Court as an issue of fact, but shall be entitled to argue the law of either jurisdiction in their pre-trial or post-hearing memoranda.

E.      Conduct of counsel at trial

1.      For efficiency, an examining attorney may approach a witness at any time without seeking permission from the Court.

2.      Counsel may conduct examinations or cross-examinations of a witness remotely or in person.  Counsel may be present in both Courts.

3.      Counsel will conduct examination from a lectern.

4.      Any objection raised by one party shall be deemed reserved by all Core

Parties other than those in the Allocation Group against whom the objection is asserted.

5.       Counsel who will be conducting the examination (which shall be no more than one per Core Party for each witness[17]) and counsel who will be objecting during the examination will announce themselves at the beginning of the examination.  Two persons from each Allocation Group (from different Core Parties) shall be designated to make objections for each witness.

F.     Exhibits

1.       A master set of all documents and proposed exhibits listed on all Core Parties' evidence lists will be prepared for each court.  Four copies of these will be prepared in binders.  One copy will be provided for each judge and one copy will be provided for the witness in each courtroom.

2.       A master set of exhibits will also be prepared electronically for the Courts and distributed on CD to the Courts.  The Core Parties shall coordinate on the preparation of these master exhibits lists and delivery to the Courts.

3.       Demonstrative Exhibits

a)       Any Core Party shall be permitted to use either hard copy demonstratives, computer demonstratives, or a whiteboard if desired.

b)       A Core Party shall provide a copy of any demonstratives that it intends to use during a trial day no later than 7:00 p.m. the prior day (which can be a Sunday for demonstratives to be used on a Monday).

---

[17]     A Core Party may have a second examiner exclusively for Claims-related issues.

15

# TAB D

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                          )   Case No.  09-10138(KG)
                                )
                                )   (Jointly Administered)
                                )
NORTEL NETWORKS, INC.,          )
        et.al.,                 )   Chapter 11
                                )
                                )   Courtroom 3
                                )   824 Market Street
        Debtors.                )   Wilmington, Delaware
                                )
                                )   January 29, 2014
                                )   Time a.m.


TRANSCRIPT OF JOINT PROCEEDINGS
BEFORE THE HONORABLE JUDGE KEVIN GROSS
BEFORE THE HONORABLE JUSTICE GEOFFREY MORAWETZ
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtors:              Morris Nichols Arsht & Tunnell LLP
                          BY: DEREK ABBOTT, ESQ.
                          BY: ANN CORDO, ESQ.
                          1201 North Market St., 18th Floor
                          Wilmington, DE  19899-1347
                          (302) 351-9357

                          Cleary Gottlieb Steen & Hamilton
                          BY: JEFFREY ROSENTHAL, ESQ.
                          BY: HOWARD ZELBO, ESQ.
                          One Liberty Plaza
                          New York, NY  10006
                          (212) 225-2000

ECRO:                     GINGER MACE

Transcription Service:    DIAZ DATA SERVICES
                          331 Schuylkill Street
                          Harrisburg, Pennsylvania 17110
                          (717) 233-6664

Proceedings recorded by electronic sound recording;
transcript produced by transcription service

2

APPEARANCES:
(Continued)

For the Official Committee
Of Unsecured Creditors:     Richards Layton & Finger
                            BY: CHRIS SAMIS, ESQ.
                            One Rodney Square
                            920 North King Street
                            Wilmington, DE  19801
                            (302) 651-7531

                            Akin Gump Strauss Hauer & Feld
                            BY: ROBERT JOHNSON, ESQ.
                            BY: FRED HODARA, ESQ.
                            BY: ABID QURESHI, ESQ.
                            One Bryant Park
                            New York, NY  10035
                            (212) 872-1000

For Ad Hoc Bondholder
Group:                      Milbank Tweed Hadley & McCloy
                            BY: ANDREW LEBLANC, ESQ.
                            One Chase Manhattan Plaza
                            New York, NY  10005
                            (212) 530-5000

                            Pachulski Stang Ziehl & Jones
                            BY: PETER KEANE, ESQ.
                            919 North Market Street
                            17th Floor
                            Wilmington, DE  19801
                            (302) 778-6417

For Wilmington Trust
Indenture Trustee:          Katten Muchin Rosenman, LLP
                            BY: DAVID CRICHLOW, ESQ.
                            575 Madison Avenue
                            New York, NY
                            (212) 940-8800

For the CCC:                DLA Piper, LLP, U.S.
                            BY: SELINDA A. MELNIK, ESQ.
                            BY: TIMOTHY HEFFNER, ESQ.
                            919 N. Market St., Ste. 1500
                            Wilmington, DE  19801
                            (302) 468-5650

APPEARANCES:
(Continued)

For Joint Administrators
EMEA:                        Hughes Hubbard & Reed LLP
                             BY: DEREK ADLER, ESQ.
                             One Battery Park Plaza
                             New York, NY  10005
                             (212) 837-6068

                             Young Conaway Stargatt & Taylor
                             BY: JOHN DORSEY, ESQ.
                             Rodney Square
                             1000 North King Street
                             Wilmington, DE  19801
                             (302) 571-6000

For Monitor, Ernst &
Young:                       Buchanan Ingersoll & Rooney, PC
                             BY: KATHLEEN A. MURPHY, ESQ.
                             1105 North Market St., Ste. 1900
                             Wilmington, DE  19801-1054
                             (302) 552-4214

                             Allen & Overy
                             BY: LAURA HALL, ESQ.
                             BY: JOSEPH BADTKE-BERKOW, ESQ.
                             BY: JACOB PULTMAN, ESQ.
                             1221 Avenue of the Americas
                             New York, NY  10020
                             (212) 610-6417

For Law Debenture:           Morris James LLP
Indenture Trustee            BY: STEPHEN M. MILLER, ESQ.
                             500 Delaware Avenue, Ste. 1500
                             Wilmington, DE  19801-1494
                             (302) 888-6853

                             Patterson Belknap Webb & Tyler
                             BY: DANIEL A. LOWENTHAL, ESQ.
                             1133 Avenue of the Americas
                             New York, NY  10036
                             (212) 336-2000

```
APPEARANCES:
(Continued)

U.K. Pension Claimants:   Willkie Farr & Gallagher, LLP
                          BY: BRIAN O'CONNOR, ESQ.
                          BY: SAMEER ADVANI, ESQ.
                          787 Seventh Avenue
                          New York, NY  10019-6099
                          (212) 728-8000

                          Bayard, PA
                          BY: JUSTIN R. ALBERTO, ESQ.
                          222 Delaware Ave., Ste. 900
                          Wilmington DE  19899
                          (302) 429-4226

TELEPHONIC APPEARANCES:

For Nortel Networks,
Inc.:                     Tory's, LLP
                          BY: ADAM SLAVENS, ESQ.
                          (416) 865-7333

For Official Committee
Of Unsecured Creditors:   Akin Gump Strauss Hauer & Feld
                          BY: DAVID BOTTER, ESQ.
                          (212) 872-1055

For CitiGroup Global:     CitiGroup
                          BY: JOSH W. BRANT
                          (212) 723-1584

For Covalent Partners:    Covalent Partners
                          BY: JONATHAN BARNETT
                          (617) 658-5527

For Interested Party:     Stone Lion Capital Partners
                          BY: JUSTIN BRASS
                          (212) 843-1242

For Interested Party:     Dow Jones & Company
                          BY: PEG BRICKLEY
                          (215) 462-0953
```

TELEPHONIC APPEARANCES:
(Continued)

For Trustee, U.K.
Pension Plan:            Hogan Lovells US, LLP
                         BY: MATTHEW BULLEN, ESQ.
                         (212) 728-8881
                         BY: ANGELA DIMSDALE-GILL, ESQ.
                         (212) 728-3135

                         Willkie Farr & Gallagher LLP
                         BY: ANDREW HANRAHAN, ESQ.
                         (212) 728-8170

For Wilmington Trust:    Katten Muchin Rosenman LLP
                         BY: DAREN B. DINE, ESQ.
                         (212) 940-8772

For Interested Party:    Reorg Research, Inc.
                         BY: KENT COLLIER
                         (212) 257-4383

For Interested Party:    Bank of America
                         BY: ESTHER CHUNG
                         (646) 855-6705

For Silver Point
Capital:                 Silver Point Capital
                         BY: MATTHEW EHMER
                         (302) 542-4219

For Monitor:             Allen & Overy, LLP
                         BY: DANIEL GUYDER
                         (212) 756-1132

For Nortel Cont.
Employees:               Shibley Righton, LLC
                         BY: ARTHUR JACQUES
                         (416) 214-5213

For Interested Party:    Farallon Capital Management
                         BY: MICHAEL LINN
                         (415) 421-2132

For Law Debenture
Trust Co. of NY:         Patterson Belknap Webb & Tyler
                         BY: DANIEL LOWENTHAL, ESQ.
                         (212) 336-2720

6

```
TELEPHONIC APPEARANCES:
(Continued)

For Bondholder Group:     Milbank Tweed Hadley & McCloy
                          BY: THOMAS MATZ, ESQ.
                          (212) 530-5885

For Interested Party:     Perry Capitol
                          BY: RICHARD PAIGE
                          (212)583-4000

For Interested Party:     CRT Capital Group LLC
                          BY: KEVIN J. STARKS, ESQ.
                          (203) 569-6421

For Interested Party:     Southpaw Asset Management
                          BY: ANDREW M. THAU
                          (203) 862-6231

For CAW-Canada and
George Borosh, et.al.:    CAW Canada
                          BY: BARRY WADSWORTH
                          (416) 863-4715

For Interested Party:     Dentons Canada, LLP
                          BY: MICHAEL J. WUNDER
                          (416) 863-4715

For Interested Party:     Aurelius Capital Management LP
                          BY: MATTHEW A. ZLOTO
                          (646) 445-6518
```

1    WILMINGTON, DELAWARE, WEDNESDAY, JANUARY 29, 2014, 9:44 A.M.

2              THE COURT:  Good morning, everyone.  Please be

3    seated.  Good to see you all.  Good morning, Ms. Cordo.

4              MS. CORDO:  Good morning, Your Honor.  Mr. Abbott

5    appears to have disappeared on us for a second, but for the

6    record, Annie Cordo, Morris Nichols Arsht & Tunnell, on

7    behalf of the Debtors. I know you and Justice Morawetz

8    normally have your way to begin the joint hearing so --

9              THE COURT:  Yes, and I'll let Justice Morawetz do

10   that if he's on the telephone.  Good morning, Justice Morawetz.

11             JUSTICE MORAWETZ:  Good morning, sir.  How are you

12   today?

13             THE COURT:  I'm well.  How are you?

14             JUSTICE MORAWETZ:  Well, it continues to be about

15   zero Fahrenheit in Toronto, so I suspect everybody here is

16   still thawing out.

17             THE COURT:  Yes.

18             JUSTICE MORAWETZ:  But this is a Case Conference,

19   obviously, in Nortel.  We do have the standard wording that

20   you do have Court Orders that authorize the Court-to-Court

21   communications, and both Judge Gross and I scheduled this

22   Conference really as an update to hear from Counsel how you're

23   getting along in the preparations for the upcoming trial,

24   which as you all know, commences on May the 12th of this year.

25   And a number of submissions have been provided by the parties

8

1   and I'm just turning to Counsel in Toronto.  Is there any sort

2   of organized way in which Counsel think that this matter

3   should proceed today?  The call is -- the Conference is

4   scheduled for a maximum of two hours.

5          UNKNOWN:  Your Honors, we do have the Trial

6   Protocol, in respect of which there is substantial agreement,

7   subject to two Objections.  So it would seem the appropriate

8   way would be to start with presentation to the Courts of the

9   Protocol and then we could deal with the Objections; one from

10  CCC and one from EMEA and the UKPC would be my suggestion.

11         THE COURT:  Good morning.

12         MS. BLOCK:  From the point of view of the U.S.

13  Debtors in Canada, it's Sheila Block speaking.  Our

14  submissions will be made in the Delaware Court by Mr.

15  Rosenthal.

16         THE COURT:  Oh, very well.  Good morning.

17         MR. ROSENTHAL:  Good morning, Your Honor, and good

18  morning, Mr. Justice Morawetz.  This is Jeff Rosenthal, with

19  Clearly Gottlieb, on behalf of the U.S. Debtors.  As --

20         JUSTICE MORAWETZ:  All right.  Just before you

21  launch in, perhaps I might just say, Judge Gross, why don't,

22  at the conclusion of all of the submissions, then you and I

23  will have a brief conference?

24         THE COURT:  Absolutely.  Mr. Rosenthal?

25         JUSTICE MORAWETZ:  Please proceed.

1            MR. ROSENTHAL:  Thank you, Your Honor.

2            THE COURT:  You may proceed.

3            MR. ROSENTHAL:  So I'm pleased to report, as the

4    Court saw in the filings at the end of last week --

5            THE COURT:  Yes.

6            MR. ROSENTHAL:  -- that the parties have again

7    successfully had a meet-and-confer regarding a major milestone

8    in the case.  We did that with respect to the document request

9    and Interrogatories early on.  We met up in Canada.  We met

10   with regards to the deposition protocol in our offices in

11   August, both of which enabled us to submit consensual Plans to

12   the Courts, and we yet again had a very successful meeting

13   earlier this month which followed an exchange of some

14   preliminary ideas on a Trial Protocol, numerous telephonic

15   conferences, and I think near unanimity on a Trial Protocol.

16   Obviously, this one very much affects the Courts, and you

17   know, we'd welcome any feedback the Courts have with regard to

18   either the pre-trial phase.  We tried to be quite

19   comprehensive here, not only talking about how the parties

20   envisioned the trial itself being conducted, but also the lead

21   up to the trial since it does affect, and in fact, helped us

22   resolve.  Hopefully later today, we'll be able to submit to

23   the Courts a resolution on the representative deposition

24   issue that, in some respects, things that were folding into

25   the Trial Protocol helped to lead to a resolution of that

10

1  issue.  So we tried to be very detailed, and I think that the

2  parties, as I said, were very successful.  A few things, Your

3  Honors, that we did carve out because the parties all agreed

4  that, perhaps it's a little premature at this stage, entering

5  the month of February, we're going to have a further meet-and-

6  confer and those things in particular are how the time

7  specifically should be divided up at trial.

8           THE COURT:  Right.

9           MR. ROSENTHAL:  And also whether it's appropriate

10 to have limitations either on the number of live witnesses

11 parties would call, the length of the submissions, how many

12 live experts, and so on and so forth, and the parties have

13 agreed to get back together, whether it's telephonically or in

14 person during the month of February.  We'll talk about that.

15 We'll hopefully, at the end of February, either present a

16 Joint Proposal to the Courts or separate submissions that we

17 would ask for the scheduling of our next Pre-Trial Conference

18 to address that.

19           THE COURT:  And, of course, a lot of the trial it

20 looks like will proceed on papers?

21           MR. ROSENTHAL:  Yes.  I mean what we had set back

22 at the very outset of the case in our first Plan was for at

23 least Direct Testimony to come in by Affidavit.

24           THE COURT:  Yes.

25           MR. ROSENTHAL:  Avoid surprise, both insofar as all

11

1  of the potential witnesses have already been deposed.  So the

2  parties should know generally what these witnesses are likely

3  to say or what they know and then with the rest being through

4  Affidavit, you know, with obviously brief introductory

5  remarks.  I think we put in the Protocol that it could be up

6  to 30 minutes of a Direct, if a party wants to; not obligated

7  to.

8            THE COURT:  Right.

9            MR. ROSENTHAL:  Of course, expert reports will have

10  already been exchanged, the initial round.  The next round of

11  expert reports will be submitted -- exchanged at the end of

12  next month, and then we'll have expert depositions.  But

13  obviously, the parties -- the Courts will be getting a

14  substantial volume of paper in advance of the trial.  So I

15  hope that we'll, next month, be able to continue our

16  successful streak when we talk about specific allocation of

17  time.

18            And whether it's now or at the end of the

19  presentation, I'm happy to answer any questions or concerns

20  the Court has.  Otherwise, I'll mention that there's just

21  been two Objections and they're really -- I don't want to

22  downplay them by saying they're minor objections but they are

23  Objections --

24            THE COURT:  Relatively speaking, yes.

25            MR. ROSENTHAL:  They're -- I mean one of them is

1  obviously significant, the concerns that are expressed by the

2  EMEA Debtors and the UKP, but there's complete buy-in by the

3  parties that the framework that's established here in the

4  Trial Protocol is the appropriate framework and the Objectors

5  themselves don't disagree with that, which I'm quite pleased

6  to say.

7           I'll defer second to the EMEA Debtors and UKP

8  Claimants to talk about their issues since obviously it's

9  really more of a disagreement between them --

10          THE COURT:  Yes.

11          MR. ROSENTHAL:  -- and the Canadian Debtors now that

12  the U.S. Debtors have settled the claims here in the U.S.

13  Court.  But I just want to mention briefly, because I don't

14  think the Courts really need to dwell on the first Objection

15  which is that of the CCC, specifically to footnote one --

16          THE COURT:  Yes.

17          MR. ROSENTHAL:  -- and other than the first

18  sentence.  The first sentence deals with UKP and EMEA and,

19  after that, it deals with the Bondholders.  And I think, or at

20  least over the weekend when we were thinking about it at the

21  U.S. Debtors, we had conversations with the Bondholders and

22  we decided that, in many respects, it's a premature dispute

23  that we can resolve much more easily for the Courts right now

24  and agree to simply delete that entire passage of footnote

25  one, and we proposed that to the CCC yesterday and they can


13

1  speak for themselves.  But in our view, Your Honors, because

2  the parties have deferred until the late February meet-and-

3  confer and the March Conference that we're proposing for the

4  Courts, how the time between the parties would be allocated,

5  really, there's no need at this point to say how much time

6  specifically the CCC should get; how much time -- in some

7  respects, it may play out as being really an intra-Canadian

8  issue because there will be an allocation of time for the

9  Canadian group, you'll have that being divided up among its

10  members, and there's a footnote in here saying that one group

11  can't take all of the time allocated to it so, to make sure

12  that it's fair, I think the CCC, to my understanding, is that

13  they had asked that that footnote be put in.  It was put in.

14  You know, unless, of course, the members of the group all want

15  one party to take all of its time on a particular issue.  So

16  our suggestion is we could delete the rest of that footnote

17  one; we could defer the issue of whether the CCC feels that

18  they are not getting a fair amount of time out of the Canadian

19  allocation of time until the parties sit down and actually

20  talk about what the allocation of time should be.  And if

21  there's a disagreement or if they're unhappy about it, then

22  nobody's saying that any of their rights to go to the Courts

23  and say, you know, that there's some disagreement at that time,

24  nobody's saying that their rights are waived in that regard.

25  So that's our proposal.

14

1        THE COURT:  Okay.

2        MR. ROSENTHAL:  It takes that issue off the table

3   for today and I would just say that the only issue, therefore,

4   that the Court needs to really address would be the EMEA and

5   UKP concerns that they have expressed in their filings.

6        Obviously, I don't want to speak for the CCC and

7   I'm happy to turn over the microphone, whether it's here or

8   there to allow them to speak for themselves and I'll address

9   it at any point in time that the Courts would like, whether

10  the Courts have any comments at all on the Protocol.

11       THE COURT:  All right.  Thank you, Mr. Rosenthal.

12  It might -- yes, please.

13       MR. LEBLANC:  Good morning, Your Honor and --

14       THE COURT:  Good morning.

15       MR. LEBLANC:  -- and Mr. Justice Morawetz.  Andrew

16  Leblanc, at Milbank Tweed Hadley & McCloy, on behalf of the

17  Bondholder Group, and I just wanted to make one point.  I

18  completely agree with Mr. Rosenthal that this is an issue that

19  we can defer until later but there were comments made in the

20  submission of the CCC that I think are necessary for us to at

21  least address in some form or fashion.  I think it's important

22  for the Court to recognize that what's reflected in the Trial

23  Protocol is actually a concession by the Bondholder Group to

24  not get a separate allocation of time for the Bondholder Group

25  separately.  And what I mean by that, not because of where we

1  are situated today, but because the Trial Protocol that the

2  Courts entered in May of last year, May 17th, identified the

3  Bondholder Group as a separate allocation group.  So there was

4  the EMEA allocation group, the Canadian allocation group, the

5  U.S. allocation group, and recognizing the fact that the

6  Bondholders have claims against both Canada and the U.S. and,

7  therefore, are truly unique among the constituencies, that we

8  were a separate allocation group, a core party, who was in

9  their own allocation group.  We haven't, throughout the

10  process, and I think there hasn't been any suggestion that we

11  have, but throughout the process, we have not abused our

12  status as being a separate allocation group.  Quite to the

13  contrary, we've acted in accordance with the understanding

14  that was in place at the time.  We've acted in concert with

15  the parties with whom we share an interest.  So, at times, with

16  the Canadian Debtors, we've discussed with them their document

17  requests, and by doing so, we're able to make comments to

18  theirs instead of serving our own.  So we haven't abused the

19  fact that we're a separate allocation group, but we think by

20  right, by the fact that under the Trial Protocol that was

21  entered by this Court, we were a separate allocation group.

22  We could have demanded our own slot of time just like each of

23  the other allocation groups did because that is something that

24  this Court -- that these Courts ordered more than almost a year

25  ago now.  We didn't do that.  We made these concessions

1  to be treated the same way as other core parties who are not

2  part of an allocation group to identify the allocation group,

3  to limit it to the three Estate allocation groups, and then to

4  identify which of those allocation groups we are aligned with

5  and be part of that and to defer until another date the

6  allocation of time so that we can ensure ourselves just like

7  the Unsecured Creditors Committee here in the United States,

8  the UKP in -- with respect to the EMEA Estates.  We could

9  assure ourselves a meaningful role at trial given what we would

10 view as our unique and substantial economic interests in the

11 matter, but at the same time not take a disparate advantage of

12 the fact that we were identified as our own allocation group.

13 So the compromises that are reflected in the Proposed Protocol

14 are compromises literally that we made from the position that

15 the Courts ordered almost a year ago now and that -- I think

16 that's important to know.

17         Now, with the discussion that Mr. Rosenthal just

18 mentioned where we've agreed now to take out footnote one, in

19 light of the rest of the language and the fact that these are

20 issues that will be resolved in the coming weeks, we think it

21 really should resolve the entirety of the issue.  But our

22 understanding is that the omission of the offending language

23 of footnote one wasn't an acceptable concession on our part

24 and so we'll leave it to the CCC to state their position.  But

25 I just wanted to make those points that we have been

 1  recognized from the time that the IFSA was entered in this

 2  case where we were given the right to consent to an agreement

 3  on allocation of sales proceeds.  We've been recognized as a

 4  group that has a very distinct economic interest in these

 5  matters that isn't completely aligned economically with the

 6  interests of any of the other Estates, and it's for those

 7  reasons that these Courts have recognized that in the May

 8  Protocol of last year.

 9            THE COURT:  Yes.

10            MR. LEBLANC:  And as we said, we're not even asking

11  for any advantage as a result of that at this point in time.

12  Instead, we're trying to be cooperative with every party and

13  make this trial as efficient as possible in the limited period

14  of time that the Court's allowed for it.

15            So we would agree with Mr. Rosenthal that we think

16  this is an issue that we can deal with in the coming weeks.

17  If it becomes a problem, we can address it at that time.

18            THE COURT:  All right.

19            MR. LEBLANC:  Thank you, Your Honors.

20            THE COURT:  Thank you, Mr. Leblanc.  Mr. Adler,

21  good morning.  Good to see you again.

22            MR. ADLER:  Good morning.  Good to see you, Your

23  Honor, and Justice Morawetz as well.  It's Derek Adler, for

24  the Joint Administrators and the EMEA Debtors.

25            THE COURT:  Yes.

18

1             MR. ADLER: As Mr. Rosenthal said, we support the

2 Trial Protocol. We think it's a terrific outline for how

3 things should go. It lays out a plan for dealing with both

4 allocation and claims in a very efficient way. And we've

5 just made one request that doesn't affect the substance of

6 what's in the Trial Protocol and that concerns the treatment

7 of evidence and arguments that pertain specifically to

8 claims, the remaining claims that the EMEA Debtors have

9 asserted against the Canadian Estate and then there's a --

10             JUSTICE MORAWETZ: Mr. Adler, I hesitate to

11 interrupt, but Judge Gross, does it make more sense to finish

12 off the issues relating to the CCC that have now been

13 introduced and in the Protocol what -- that have been

14 introduced by Mr. Rosenthal and by Mr. Leblanc?

15             THE COURT: That's -- why don't we then? Mr.

16 Adler, if you don't mind, we'll just --

17             MR. ADLER: Thank you, Your Honor. That's fine.

18             THE COURT: All right. We'll just interrupt your

19 presentation.

20             MR. ZIEGLER: Your Honor?

21             MR. MARK: So, Judge Gross, good morning. It's

22 Alan Mark for the Canadian Monitor and Debtors in Toronto,

23 and just before I hand it over to Counsel for the CCC, just a

24 couple of notes about the Protocol.

25             Firstly, as alluded to by Mr. Rosenthal, the

19

1   parties expect this week to finalize a discovery stipulation

2   regarding the representative depositions and that will result

3   in some new dates and some new process with respect to the

4   pre-trial process.  So it's our expectation that the final

5   form of the Joint Trial Protocol that will be remitted to the

6   Court for approval will be slightly different, but we don't

7   expect those issues to be controversial, but rather, just to

8   reflect a further stipulation that the parties are going to

9   enter into.

10          Secondly, I just want to note, I don't want to

11  repeat anything Mr. Rosenthal says, but as Justice Gross

12  noted, the Protocol does provide, by and large, for the cases

13  in chief to be pre-filed, in writing, with the Court.  That

14  means that we have, in the Protocol, been somewhat

15  presumptuous in setting dates for when the parties' Briefs,

16  when the exhibit lists, when the Pre-Trial Affidavits and

17  expert reports will be provided to the Court.  And another

18  consequence of that front-end loaded process is that the

19  Protocol does provide the opportunity for pre-trial

20  Objections and possibly Motions to resolve some issues before

21  the trial begins.  So I just wanted to indicate that if the

22  Courts had any questions about that proposed schedule, we're

23  happy to address them, but I just wanted to make sure the

24  Courts were aware.

25          THE COURT:  Thank you, Mr. Mark.

20

1        MR. ZIEGLER:  Your Honor?  It's Mark -- and Judge
2   Gross, it's Mark Ziegler in Toronto speaking for the CCC, and
3   we have Counsel in Delaware as well, but I will respond to
4   the issues that were raised by Mr. Rosenthal and by the
5   Noteholders' Counsel, Mr. Leblanc.  I think we have to step
6   back to where we were last May, when my clients also sought a
7   separate discovery group.  That request at the time was
8   denied, without prejudice, to our seeking relief at a later
9   date, should we believe it is warranted, and that's in an
10  email that Judge Gross and Justice Morawetz sent to us on May
11  15th.  I can circulate copies if you like but I think everyone
12  is familiar with that.

13        What's happened since is pretty clear.  We have
14  three Estates and behind each of the Estates, three different
15  interest groups.  They break down essentially to the
16  Noteholder groups and Pensioner groups.  And the issue here
17  is not the removal of a footnote.  It's what's in the rest of
18  the Protocol as the default position once that footnote is
19  removed.  Because essentially, although there are three major
20  interests that could be addressed through the three main
21  Estates, there is reserve in this Protocol without footnote
22  one, and particularly, I am talking about the ability to make
23  oral submissions to the Court at the opening and at the
24  closing, and you can turn off the references that they're
25  essentially Section 1(B) on opening statements on page seven

21

1   and Section 3, all (B) on page 12 where it's everybody who's

2   not part of an allocation group has at least 15 minutes to

3   make opening submissions and closing submissions and this

4   isn't just about 15 minutes at each end.  It's about treating

5   all the Creditor interests equally.  If we all had to work

6   within three allocation groups, including the Noteholders,

7   that would be fine.  But we don't.  There is, in effect, a

8   fourth column that gets to make submissions while we are

9   restricted within an allocation group where we share time,

10  not just with the Canadian Debtors and the Monitor, but also

11  the Directors who have to defend claims.  This allocation

12  Protocol which you are being asked to approve today carves

13  out time as a default position for the Noteholders and the

14  Indenture Trustees of at least 15 minutes at the front end

15  and at least 15 minutes at the back end.  So it's a lovely

16  concession to take out footnote one, but if they don't tell

17  you what the default position is, you can see it's a bit of

18  slate of hands in my position.  All my clients ask is the

19  same 15-minute right and then at the back end so that they

20  don't get jammed within the allocation group.  We will do our

21  best to work within the allocation group, just as I'm sure

22  everybody else who is a party in interest will work within

23  the three allocation groups and the Noteholders have, in

24  effect, joined up with the U.S. group, which is fine.  We

25  have joined up with the Canadian group but there is one issue

1   where we differ.  We take one allocation position that is not

2   in common as an alternative position with the Monitor, that

3   being the pro-rata distribution, and it would be highly

4   prejudicial to my clients to have a Trial Protocol go forward

5   that doesn't carve out explicit time for them, yet does for

6   the parties who are most adverse in interest to them.  At

7   this stage, five years in, there are pensioner interests and

8   there are Noteholder interests.  What happened before the

9   filing; what happened at the IFSA almost doesn't matter in

10  the sense of, ultimately, this is about distributions to

11  Creditors and if that's the case, the three biggest Creditor

12  groups have got to have their time before the Court.  That's

13  all I've got to say for now.

14              JUSTICE MORAWETZ:  Thank you.

15              THE COURT:  Mr. Rosenthal, did you wish to

16  respond?

17              MR. ROSENTHAL:  Your Honor, just about one minute

18  is all I need to respond.  Just -- I just want to underscore

19  why we believe that this issue is premature.  We believe it's

20  premature for several reasons, one of which is that the

21  Canadian Monitor and Debtors support the Protocol as

22  submitted and they said, and it's reflected in the Protocol,

23  they're going to give time to the CCC.  If the CCC, after

24  February 28th when we make the next round of submissions

25  regarding allocations, thinks that they haven't gotten their

42

23

```
1    15 minutes or whatever amount of time that they think that

2    they want, and I agree that this is a broader issue they're

3    talking about and it really is about the trial generally, if

4    they have any complaints about how they're dividing up the

5    time with the Canadian group, that's the time that they could

6    raise it.  They say that -- by the way, it's not just the

7    Monitor and Debtors and the CCC, but you have Ds & Os as

8    well, it's actually not true.  The Canadian allocation group

9    does not include the Ds & Os.  They're only Claims Defendants

10   and the Protocol divides up the opening statements and

11   closing arguments for allocation and claims.  So when it

12   comes to the allocation opening, we contemplate the U.S. is

13   going to get a set amount of time.  We don't know what that

14   is going to be.  We'll give an opening and the UCC will give

15   an opening.  Canada will get a set amount of time and the

16   Monitor and Debtors will give an opening and the CCC will

17   give an opening.  The EMEA group will get a set amount of

18   time and we don't know what that is.  And EMEA Debtors and

19   the UKP will give an opening.  And if parties have multiple

20   theories or different theories from each other, yes, they may

21   need time to present those theories, and the other parties

22   will need a comparable amount of time to respond to the

23   ultimate theories.  But I think this is all going to be

24   something that's worked out over the next month as opposed to

25   saying today how this thing -- the CCC and the Canadian group
```

 1  be.  And if Canada doesn't give the CCC their 15 minutes or

 2  whatever, you'll hear it when we have the hearing in mid-

 3  March, and therefore, we would suggest that either footnote

 4  one stay in or come out.  Either way is fine with us.  But

 5  that we ought to proceed and proceed to the next step and see

 6  if there's any dispute that the Courts even need to resolve.

 7          THE COURT:  Well, I haven't taken time to look,

 8  but I assume that there's nothing in the Protocol, and I

 9  don't remember seeing anything that would preclude the CCC

10  from making an opening and closing.

11          MR. ROSENTHAL:  Quite to the contrary, Your Honor.

12          THE COURT:  Right.

13          MR. ROSENTHAL:  There's a footnote.  I don't have

14  the footnote number handy.

15          THE COURT:  Right.

16          MR. ROSENTHAL:  But there is a footnote that

17  expressly says that without permission of the other parties

18  in their group, a party cannot take all of the time allocated

19  to it.  So, therefore, the CCC has a guaranty, and the

20  Canadian Debtors I believe have also assured them they'll get

21  time to deliver their opening.  So I think as to how much

22  that time should be, that's exactly what the next months'

23  worth of negotiations is all about.

24          THE COURT:  Okay.

25          MR. ROSENTHAL:  Thank you.

25

1          THE COURT:  Thank you, Mr. Rosenthal.  Justice

2   Morawetz, was there anyone in your Courtroom who wished to be

3   heard on this point?

4          JUSTICE MORAWETZ:  Anything further on this issue?

5   Mr. Swan.

6          MR. SWAN:  Yes, just briefly in reply on behalf of

7   the Bondholders.  Every single party here has agreed to the

8   Protocol on all of these issues with the exception of the

9   CCC.  They are the only party that's objecting.  The

10  fundamental distinction that's been identified is that in the

11  Litigation Timetable, the Bondholder group is a separate

12  allocation group.  The Bondholder group is, in effect,

13  compromising procedural rights by agreeing to this in the

14  form that it's in and as a recognition of that, footnote one

15  recognizes certain limited procedural rights guaranteeing the

16  right to make a 15-minute opening and 15-minute closing.  The

17  CCC --

18          JUSTICE MORAWETZ:  Well, is it a case that the

19  Bondholders are compromising a right or is it a case that

20  it's just being expanded for the CCC to have a right?  What

21  specific rights are the Bondholders compromised on?

22          MR. SWAN:  They're compromised on the right to

23  otherwise carry out independent examinations with separate

24  time allocated to them because they would be a separate

25  allocation group.  So the Bondholders could have asserted the

1  right as a full allocation group to have the same rights as

2  the Canadian allocation group and the U.S. allocation group.

3  They haven't done that.   They have agreed that with respect

4  to the other elements of the proceedings, that they will

5  shelter, so to speak, under the U.S. allocation group's time

6  allocation.   But with respect to this one issue, footnote one

7  recognizes that they will have an opening and a closing

8  right.   The CCC is in a different position because they are a

9  Creditor whose economic interest are perfectly aligned with

10 the Canadian allocation group in much the same way that the

11 UKPC does not have a separate defined time, separate and

12 apart from the EMEA allocation group.   Obviously, it won't

13 make an opening statement as part of EMEA allocation group,

14 but it doesn't have separate defined time, nor does the UCC,

15 separate and apart from the U.S. allocation group.   So

16 there's no reason why the CCC as a Creditor who is within an

17 allocation group should have a separate specified right that

18 is unique and elevated above any other Creditor who's part of

19 an allocation group.

20          UNKNOWN:   Your Honor, if I may reply to some new

21 arguments that have been raised?

22          JUSTICE MORAWETZ:   Briefly.

23          UNKNOWN:   I thought that footnote one was off the

24 table.   Now it's back on.   If it's back on, all we ask is the

25 same 15 minutes and the same rights to come back to the

1   Courts with the Bondholders.  This is about treating major

2   Creditors equally.  It's not about historical status that was

3   allocated before the allocation positions came out.  We all

4   want to work effectively.  We will work with the Canadian

5   allocation group.  The Noteholders have worked with the

6   American group, that's fine.  That's as it should be.  But if

7   we're going to have a carve out time for one group of

8   Creditors, there should be the same for the others.

9           THE COURT:  I used to think it was only in the

10  United States that lawyers could argue for 30 minutes over 15

11  minutes but it sounds like we share that with Canada.

12                      (Laughter)

13          MR. LEBLANC:  I'll just add how flattered we are

14  to think that we can be so influential in 15 minutes.

15          THE COURT:  Yes.

16          JUSTICE MORAWETZ:  No comment.

17                      (Laughter)

18          THE COURT:  I would suggest that, as part of the

19  spirit of compromise, we at least for the moment delete

20  without prejudice footnote one.

21          MR. LEBLANC:  And, Your Honor, we've already

22  offered that up.

23          THE COURT:  That's right.

24          MR. LEBLANC:  And we're happy to do -- this is

25  Andrew Leblanc, on behalf of the Noteholders.  We've offered

1 | it and we're happy to do it.

2 | THE COURT:  Thank you, Mr. Leblanc.  Justice

3 | Morawetz and I will discuss that, of course, as part of our

4 | discussion.  I should have said that.

5 | MR. ROSENTHAL:  Just for clarification, Your

6 | Honor --

7 | THE COURT:  Except --

8 | MR. ROSENTHAL:  -- obviously, the first sentence

9 | relates to another issue.

10 | THE COURT:  That's right.

11 | MR. ROSENTHAL:  And it's the remainder that starts

12 | with 'additionally'.

13 | THE COURT:  Exactly.

14 | MR. ROSENTHAL:  And I would -- footnote 11 is the

15 | one that I didn't have the number at my fingertips before.

16 | THE COURT:  Thank you.  Shall we now proceed with

17 | the EMEA, CCC issue?

18 | JUSTICE MORAWETZ:  Yes, back to I think it's Mr.

19 | Adler.

20 | THE COURT:  Mr. Adler had started, yes, and don't

21 | hesitate to sort of re-start if you'd like, Mr. Adler, just

22 | to get the flow.

23 | MR. ADLER:  Thank you very much, Your Honor and

24 | Justice Morawetz.  Again, it's Derek Adler, for the Joint

25 | Administrators and the EMEA Debtors, and as I was saying, we



1  do support the Trial Protocol.  We think it's a very sensible

2  and well thought out approach to dealing with all the issues

3  on both claims and allocation in an efficient manner and it

4  does have parallel tracks in it for the pre-hearing

5  submissions about both claims and allocation and post-hearing

6  as well, and the one request we're making, though, is that

7  the Courts exercise their discretion that they retained for

8  themselves in the original allocation Protocol to treat and

9  to set aside chunks of the hearings, in effect, to hear only

10  arguments and evidence related to the claims issues which

11  have now become issues related to the claims against the

12  Canadian Estate only since the claims of the EMEA Debtors and

13  the UKP against the U.S. Estate have been settled, although

14  there is considerable overlap in some areas about the

15  evidence that needs to be presented in relation to allocation

16  and in relation to the two sets of claims, and they are

17  separate sets of claims, by the way, between the EMEA Debtors

18  and the UK Pension interests.  Although there is considerable

19  overlap, there are also a lot of separate issues and separate

20  arguments and separate evidence that the Court in Canada will

21  need to consider in relation to claims that the U.S. Court

22  and the U.S. core parties don't have an interest in and don't

23  need to spend their time listening to.  The allocation

24  dispute is going to require the Courts to look at what each

25  party relinquished or conveyed in connection with the various

1    asset sales.  It's going to require the Courts to look at

2    what each business was composed of, what the different

3    classes of assets were that were transferred in each asset

4    sale, and to think about what approach should be taken to

5    dividing up each of those asset classes.  And I can tell you

6    that the biggest dispute will be about how to deal with

7    intellectual property.  The biggest value in the companies

8    was the intellectual property.  There are very different

9    approaches that have been suggested that are going to depend

10   a lot on both legal argument, but also expert evidence.  The

11   EMEA Debtors say that you value the IP in accordance with the

12   longstanding business arrangements between the companies.

13   You value IP based on the contribution that each of the

14   entities made to the creation of the IP.  The U.S. Debtors

15   say, and we actually support this as an alternative theory,

16   that you look at it by valuing the license rights that each

17   of the Debtor groups had.  And the Canadian Debtors take the

18   position that, essentially, there's a presumption that gives

19   them 100 percent of the right to all of the value of the IP,

20   unless we can show otherwise, that they controlled all of it.

21   So the issues that are going to need to be dealt with in the

22   allocation phase will be about these issues.

23          In terms of the EMEA claims, you've got claims

24   that are based on trade debt between the companies, nothing

25   to do with allocation; no reason why the U.S. Court or the

1    U.S. core parties should listen to evidence or argument about

2    trade debts between the EMEA Debtors and the Canadian

3    Debtors.   Inter-company loans, same thing.   These are issues

4    only between EMEA and Canada.   There's no reason why the

5    other parties should be hearing evidence about inter-company

6    loans.   Project Swift, a big reorganization that took place.

7              THE COURT:   Yes.

8              MR. ADLER:   No reason why Your Honor should have

9    to sit through evidence, expert reports, about Project Swift;

10   issues related to the solvency of the EMEA Debtors at various

11   times.   The only area where there is some overlap has to do

12   with the transfer pricing arrangements, the so-called MRDA,

13   and in that area, we've submitted separate expert reports

14   dealing with the allocation transfer pricing issues and the

15   claims-related transfer pricing issues.   So while there is

16   some overlap, there's considerable separate and we're simply

17   saying that there should be a separate phase for treating the

18   claims-only issues.   We've submitted three separate expert

19   reports that are related to claims only, not counting the 17

20   reports we've put in about foreign law that need to be

21   considered in relation to the claims.   We don't expect to

22   take up Court time presenting the law of 17 different

23   jurisdictions, but we will be making arguments in relation to

24   the laws of all these different countries.   And again,

25   there's no reason why Your Honor and the U.S. core parties

32

1  should have to sit through that phase of this.  So, again,
2  the original allocation Protocol contemplated that there
3  could be this separation.  We think that when we sit down
4  with the other parties in the next two months or so to try
5  and scope out how the trial should look and how time should
6  be allocated, it will be pretty clear that there is a set of
7  witnesses and issues that can be presented doing
8  argumentation separately in relation to claims.  So, in a
9  way, it's premature because we think that will become clearer
10  as we sit down, as Mr. Rosenthal described, to look at how
11  the time for trial is actually blocked out.  But we do think
12  that, with respect to time, there ought to be an additional
13  week added to address the EMEA claims.  I'm not speaking for
14  the UKP here, but this is a request of the Canadian Court,
15  not to Your Honor, to add an additional week as soon as
16  possible after the allocation hearings to address the EMEA
17  claims and evidence related only to the EMEA, claims and we
18  would proposed that that happen immediately after the 20 days
19  that have been set aside for allocation.  The 20 days will be
20  quite full already in relation to allocation.  It's an
21  ambitious schedule just to present allocation in that time
22  period.  So that's why we're making a request for separate
23  time in relation to that.  So again, this would not affect
24  the overall -- it would delay things by a week because we're
25  saying that all the pre-hearing submissions for claims and

1  allocation would go in and parallel and all the post-hearing

2  submissions as well would go in and parallel and the final

3  arguments though would take place in separate days, separate

4  times, but again, on the same track so that there isn't a

5  real delay resulting from this.

6        If this is agreed to, it will also greatly

7  simplify the discussions the parties have to have about what

8  happens during the trial, because when you mix together

9  allocation and claims at the same time, you get into some

10  difficult issues because, on allocation for example, all

11  three groups, arguably, bear the burden of proof.  But in

12  relation to claims, the EMEA Claimants bear the burden of

13  proving their claims.  The U.K. Pension Claimants bear the

14  burden of proving their claims.  So naturally, the evidence

15  should go first and arguments should go first from the people

16  who bear the burden of proof.  You also get into very

17  complicated issues about how time should be allocated if --

18  obviously, if EMEA and the Canadian Debtors are dealing with

19  both claims and allocation issues at the same time, we would

20  need more time and how much more do you give?  It gets to be

21  a little bit complicated.  You can't just divide things up by

22  threes at that point.  So that is our suggestion and those

23  are the reasons why we think it makes sense.

24        THE COURT:  All right, Mr. Alder.  Thank you.

25        JUSTICE MORAWETZ:  Judge Gross, I think it might

1  be helpful if we hear from Mr. Barrack on behalf of the U.K.

2  group in Toronto right now.

3          MR. O'CONNOR:  Your Honor, it's Brian O'Connor --

4          THE COURT:  Yes, Mr. O'Connor.

5          MR. O'CONNOR:  -- from Willke Farr.  I was just

6  going to say the same thing essentially, Justice Morawetz and

7  Judge Gross.  I will say here that we do agree with Mr.

8  Rosenthal on the hard work that was done on the protocol.

9          THE COURT:  Yes.

10          MR. O'CONNOR:  Given though the fact that the

11  issues that we raised, which are similar to the EMEA issues,

12  really tend to gravitate about the existence of both the

13  Canadian claims and the allocation.  I am going to defer to

14  Mr. Barrack that he can make the submissions on behalf of the

15  U.K. Pension Claimants.

16          THE COURT:  All right.

17          MR. O'CONNOR:  Thank you.

18          THE COURT:  Thank you, Mr. O'Connor.

19          JUSTICE MORAWETZ:  Mr. Barrack?

20          MR. BARRACK:  Thank you, Your Honor.  These

21  submissions are addressed to you primarily.  I do want to

22  echo though that there has been a lot of goodwill in this

23  case.  There's been a lot of goodwill in coming to the

24  Protocol and it's almost unfortunate the Judges couldn't have

25  been in the room to witness that process, because I think

1   what you would have seen is --

2              JUSTICE MORAWETZ:  Depends on your point of view.

3                          (Laughter)

4              MR. BARRACK:  From this perspective, we've all

5   lived through a lot of trials and in trials, trials are full

6   of ambiguity, and trials are full of not only ambiguity but

7   nuance, and I think the parties, in coming to this Protocol,

8   have addressed many of the points of nuance that are going to

9   arise in this trial in a responsible way and I think that Mr.

10  Rosenthal, particularly on the meeting and discussions,

11  people around the table, there was some feel good give-and-

12  take about what the issues that are going to arise in this

13  trial are, and people tried to deal with them responsibly.

14             We're sitting here today on a preliminary pre-

15  trial, and in the context of a preliminary pre-trial, what

16  we're looking for is guidance from the Court on how we're

17  going to conduct this trial, and you may give us guidance or

18  you may defer, but that guidance is against the background of

19  what this trial is trying to accomplish.  And our basic

20  submission is that the Court has always recognized that there

21  are separate trials here.  There's a separate trial on

22  allocations, and there's a separate trial on claims, and

23  that's in two levels.  As we settle the U.S. claims

24  procedure, you, Your Honor, are going to be trying the

25  Canadian claims alone.  You're not going to be doing that

1   with Judge Gross, and so in our submission, the sequential

2   nature of these trials, which has always been recognized,

3   should be maintained, and it should be made clear to the

4   parties that these will occur sequentially and I'm going to

5   sequentially but pragmatically; and when I say pragmatically,

6   what I mean is that where there's evidence in the

7   depositions, where there's evidence in the allocation trial,

8   that may be pled into the claims trial, there could be a

9   [indiscernible].  It should be sequentially but

10  pragmatically.

11          And our second objection is, and this does apply

12  to both you and Judge Gross, is that the length of both

13  trials should not be set until the number of witnesses is

14  settled, the number of experts is settled, and the parties

15  have, with the Court or other third-parties' assistance,

16  settled on the facts and I can't emphasize enough that 20

17  days may be enough time to do this trial, and it may be

18  enough time, if we have agreed on the facts, and you know,

19  this is a pre-trial, not the trial, and in the context of a

20  pre-trial, as I was saying in the other pre-trial, there

21  really are no facts in dispute in this case.  There is no

22  'the light was red, the light was green'.  We're going to ask

23  the Judges in this case to grapple with some very difficult

24  issues, and they're substantial issues.  But I don't think

25  anybody at the end of this day is going to be asking for a

1   credibility [indiscernible].  I'll give you an example of the

2   meet-and-confer.  The whole Project Swift; you've heard about

3   this Project Swift so you may or may not know what Project

4   Swift is.  It talks about the fact that there were transfer

5   pricing between Canada and the U.K. and the U.S., all the

6   parties that are trying for a price increase and they built

7   up an inter-company, non-interest bearing loan, and then they

8   discharged that loan with a payment each time with the shares

9   of some of the subsidiaries.  There was [indiscernible],

10  there were issues around pension funding.  There were

11  discussions between the various parties about pension

12  funding.  There were pension guarantees.  There were two

13  guarantees given.  All of the facts; I sat there with Counsel

14  on the other side and over Diet Cokes at the Advocates'

15  Society Convention, we all agreed how remarkable it is that

16  there are no facts in dispute; when the meeting occurred, who

17  said what, who said what to whom, when they said it.  As you

18  know, from most complicated commercial cases today, nobody

19  can have a thought without burping it into an email

20  immediately and so we have a virtual contemporaneous record

21  of what occurred.  We're not fighting over what happened.

22  We're fighting over the implications of what happened.  So if

23  the parties were to bear down and get a true agreed Statement

24  of Fact, we probably could do this case in 20 days.  But the

25  complication would be how much expert evidence the Judges

57

38

1  want to hear, not how much the parties want to throw at the

2  Judges, but how much the Judges want to hear.  When the

3  Judges get a true appreciation of the nuances of this case,

4  of the tasks ahead of them, of the reports that are out

5  there, we're going to be looking to the Court to tell us, you

6  know, we really want to hear on this topic.  And it's fine

7  for us to sit with all of this goodwill and determine what

8  the trial is going to look like, what we want to put to the

9  [indiscernible], given the precedential nature of this case.

10  The Court may have some strong opinions in that regard as

11  well.  And so these submissions are taken in the context of a

12  preliminary pre-trial, not a final pre-trial, and we should

13  come back to these in a final pre-trial when the Court has

14  more background laid.

15        But let me address both of these issues.  First of

16  all, the sequential nature of the trial.  You have

17  submissions that we have provided for you and so I just ask

18  you to take those out and I'm going to refer you to some of

19  these Orders briefly.  If you could go to Tab 1 of those,

20  Tab 1 is your Order of April 3, 2013, and go to three.  You

21  ordered in paragraph number three, the Court directs that (a)

22  the trial under the allocation Protocol will commence on

23  January 6th.  We know what happened to that.  And (b), the

24  trial will commence with the allocation issues and continue

25  thereafter with the EMEA Canadian claims and U.K. Pension

1  Canadian claims. And if you go to the allocation Protocol
2  which follows it, it's Item 7, it talks about the
3  simultaneous trials [indiscernible]. The U.S. and Canadian
4  parties will hold simultaneously the allocation and Protocol
5  -- allocation Protocol hearings and the hearings of say the
6  U.K. Pension claims and the hearings before the Canadian
7  Court on the merits of any remaining U.K. Pension, Canadian
8  Pension Plan, provided, however, that the Courts, in their
9  discretion, may sit separately for such hearings to hear
10 evidence or argument that is relevant only to the U.K.
11 Pension claimants. And so what was contemplated from the
12 outset was that we're going to have an allocations trial,
13 followed by a claims trial and the Court was going to
14 determine how that was going to go forward. And that
15 separateness of the trials was very true in every single
16 Order subsequently. If you go to Tab 2, there was
17 [indiscernible] Order for the allocation Protocol and
18 Litigation Timetable on Discovery Plan and in that Order, if
19 you go to the Litigation Timetable which is -- it's not
20 numbered but it's about 12 pages in. You will recall that
21 what we did was set out steps in the allocation, steps in the
22 U.S. claim, and steps in the Canadian claim, and we, for
23 efficiency purposes, put those together. We both have three
24 distinct parties. We had a definition of the parties that we
25 set out that included among the parties, the U.K. Pension

1  Claimants as a separate party -- I'm going to take you back a
2  page, and that was followed by a Discovery Plan in which, as
3  you're aware, the U.K. Pension Claimants were required as an
4  individual party to undertake all of the individual steps.
5  In making that Order, if you go back to before Tab 1, if you
6  go to our submission, and you go to page four, you may recall
7  that there was a debate as to the timetables.  You may
8  recall, and we've included the submissions, the fact that the
9  U.S. Debtors filed strong submissions, and I don't need to go
10  through them; they're there and they're highlighted, to the
11  fact that these were separate trials.  And if you go over to
12  page five, at page 11 on your May 3 Order, you made two
13  important -- or in your endorsement, you made two important
14  observations.  You said at paragraph 15, under Scheduling,
15  making this determination, I have taken into account the EMEA
16  Claimants and the U.K. Pension Claimants are major Creditors
17  in the global Nortel insolvency and it is necessary to ensure
18  they have full opportunity to put forth their case within the
19  confines of the trial schedule.  And then under Separation
20  Litigations, the proposal of the U.S. Debtors confirming
21  three separate litigations is accepted.  Although a joint
22  trial will be conducted, this does not alter the fact that
23  the U.S. Court and this Court are separate and independent
24  jurisdiction and different procedural Rules of each Court
25  need to be respected.  And what we have done in coming to the

1   allocation Protocol is work pragmatically with that

2   admonition.  So if you can then go to Tab 6, which is your

3   most recent appeal to this, this is the Order of Tuesday,

4   November 19th, and you'll recall I was not in Court the day

5   this schedule was made and subsequently, you'll recall that I

6   sent a letter to the Court and was pleased when the actual

7   Order of the Court came out to see how it had been dealt

8   with.  And what the Court ordered, and if you go to the

9   second page of this Order, on paragraph three, is that this

10  Court ordered that the terms of the amendment set out in

11  Schedule A hereto, the allocation Protocol, Litigation

12  Timetable, and Discovery Plan and Deposition Protocol are

13  amended in accordance with the terms.  And then the Court

14  went on to order:  This Court orders that the parties shall

15  be permitted to adjust interim deadlines in the Timetable

16  according -- in accordance with the following procedures.

17  The moving parties shall meet and confer to determine whether

18  further adjustments to the Timetable should be made and may,

19  upon unanimous agreement, subject to subparagraph (c) below

20  without further Order of the Court, propose amendments to the

21  Timetable, provided that such dates shall not impact the

22  Court or commencement of the date of the trial.  So that what

23  the Court ordered was that the start of the trial is

24  preemptory and no one is challenging that.  No one is

25  challenging it.  But it's still in Schedule A of this, all on

1    the Schedule A, and there are numbered pages there, and if

2    you go to page three, all this calls for is where -- what

3    we're engaging in today.  It's a preliminary Pre-Trial

4    Conference on January 29.  And if you then go to page six,

5    you'll see that what we're -- the business that we're about

6    to undertake today is under the heading Trial Logistics and

7    it says the core parties shall meet and confer as soon as

8    possible but in any event, no later than the week of December

9    16 with a view to attempting to reach a consensus with

10   respect to the conduct of trial, including the feasibility of

11   providing the Courts with a Statement of Agreed Facts, and

12   the proposed length of trial.  So where we sit today is that

13   the Courts have said we're going to start on the 20th.  We

14   agree we're going to start on the 20th.  We're going to move

15   forward and try and get a Protocol for the parties who will

16   work sensibly and give assistance to the Court in how we're

17   going to carry out the trial, which we've done.  We are then

18   going to talk about the length of the trial and determine how

19   long the parties will specifically conduct this trial, and in

20   our submission, it has always been contemplated that these

21   trials would proceed.  In our submission, to alter that

22   fundamental procedure, which is gives the proposal on page

23   one of the allocation Protocol.  [indiscernible] would put

24   the entire process at risk.  As Mr. Adler referred to, the

25   fundamental issue is this.  There's no onus of proof in the

62

43

1    allocation of the trial.  This is a very unique situation.

2    [indiscernible].  And that's going to provide some

3    interesting nuancing when we get into the trial for this

4    reason, and I'll give you an example.  If you have a witness

5    that's speaking about, say, the pro-rata theory that's been

6    put forward that we shouldn't allocate based on a valuation

7    period, but we should do some sort of pro-rata omnibus

8    theory.  That's a theory that's been put forward by my

9    clients or a position supported by my clients and has been

10   put forward by the CCC.  So the essential difficulty in

11   running this trial is the core parties in interest.  So

12   broadly structured, the allocation Protocols that now exist

13   sees the Estates as parties in interest and that makes some

14   sense.  It makes sense because, ultimately, in the allocation

15   trial, what everybody is trying to do, presumably, is get the

16   most money into their own Estate.  So the Creditors, who have

17   their principal claim in each Estate, are seemed to line up

18   with the Estate, and as Judges, you look out of the Courtroom

19   and you say well, what's this dispute?  This is a bunch of

20   [indiscernible] three pods.  So each pod you line up

21   together.  But that's going to break down when we start to

22   cross-examine the witnesses because if I start to cross-

23   examine CCC's pro-rata witness, somebody's going to stick

24   their hand up and say hey, they got the same theory.  Why

25   does he get to cross-examine, the right of cross-examination,

44

1  when they're on the same side in that sense, and I'll stick

2  my hand up and say no, but we're adverse parties in interest.

3  I want the money in a different pod.  And in good sense and

4  good faith, the way trials always run, there'll be some

5  pragmatic solution to that trial.  It will either be, Mr.

6  Barrack, you've got to go first and I will take into account

7  the fact that you are asserting exactly the same theory, and

8  you know, you may want to cross-examine but to the extent to

9  which you cross-examine, that will affect the weight of what

10  you do because your actions, meaning you're cross-examining

11  your own witness.  And I may stand up in another circumstance

12  and do exactly the same thing.  So we're going to have these

13  nuance problems that are going to arise in the course of the

14  trial.  We'll deal with them pragmatically, we'll deal with

15  them as the Judge along the trial, and we'll deal with them

16  in good spirits.  So the allocations trial will have its own

17  set of challenges.

18          The claims trial, on the other hand, is a very

19  different end.  The claims trial requires one party to get up

20  and prove a claim.  It's got a burden of proof.  It's got an

21  onus on it and it has to -- and if -- you know, far be it for

22  me to tell you what the onus is in a detailed way of claims

23  proceedings.  You wrote the book on it, so you know what the

24  onus is going to be but you know it's going to be on a party

25  and you also know that these are not summary procedures that

1   we [indiscernible].  And affirmative pleadings have been

2   required.  We've been ordered to proceed under the Rules.

3   You'll recall you made an Order that said [indiscernible].

4   We've had extensive document production of over three million

5   documents.  We've had extensive oral depositions.  And while,

6   pragmatically, some of the evidence from the depositions and

7   the allocations of the trial will come into the claims trial,

8   it would be a breach of due process on the claims trial to

9   deviate from allowing the party with the onus to put its case

10  and then hear the case in defense and call evidence in reply

11  to that.

12          And again, we've addressed this in our submissions

13  and at page five, very -- sorry, that's at paragraph five,

14  very briefly, set out the difference between the UKP and

15  Canadian claims before the Court and differentiating them

16  from the allocations case.  They have different factual

17  expert evidence from the dispute.  They involve different

18  parties, a different onus to prove.  The U.S. Court has no

19  jurisdiction.  And the core parties -- there will be core

20  parties who won't [indiscernible].  The Court has a number of

21  issues to deal with in dealing with the UKPC claim and we've

22  set those out at page seven of our submissions, starting at

23  the bottom at paragraph 19 and going over to the next page.

24  When you come to adjudicate the claims, and it's going to be

25  a very interesting case to adjudicate; and you never want to

1  hear from your doctor or your lawyer you've got an

2  interesting case, but as a Judge I don't think -- or I don't

3  think anyone in the room is [indiscernible] interesting work

4  for the Court.  So you're going to have to determine the

5  appropriate shortfall and the availability of a financial

6  support direction.  You're going to have to adjudicate

7  whether the guarantees are applicable.  You're going to have

8  to adjudicate whether there is an unjust enrichment claim and

9  whether there's damages [indiscernible].  And, you know,

10 let's not kid ourselves.  This FSD scheme in a Court,

11 proceeding with very little [indiscernible] prudential

12 guidance to adjudicate whether an FSD is appropriate is going

13 to be a heavy lifting on your part.  You're going to have to

14 bring your mind to the scheme test, the target test, the

15 insufficiently resource test, the reasonableness test, and

16 each of those tests is going to have its own factual

17 requirements.  You're going to hear expert evidence on the

18 value of NNUK's, in regards to the value of NNC and NNL's

19 resources, the degree of control, the value of benefits, the

20 transfer pricing policy, involvement with the Pension Plan,

21 and the financial services [indiscernible] here and have to

22 adjudicate substantial evidence about -- as to the

23 guarantees.  And again, you're going to hear all of that, and

24 I don't think you're going to have any factual disputes but

25 you're going to have a lot of expert evidence and you're

1  going to have some very tough issues of common.  And you're

2  going to do that against a background of the mass production

3  group that's been -- that's taken place.

4            As we sit here today, the number of witnesses is

5  not known.  They're to be identified on March 31st, with Trial

6  Affidavits to be exchanged between April 11th and April 25.

7  We haven't set out in this, limited it.  The number of

8  experts is not known.  The number of rebuttal experts will

9  only be filed on February 28th and trial experts will be

10 identified by April 11th, and most importantly, what facts

11 might be known.  So at a minimum, in our submission,

12 premature to set the length of trial, but especially

13 premature  to set the length of this trial.  We said that, at

14 a minimum, we require 10 to 12 days to make an affirmative

15 case and I stand back now --

16            JUSTICE MORAWETZ:  That's in the claims --

17            MR. BARRACK:  Claims.

18            JUSTICE MORAWETZ  -- 10 to 12?

19            MR. BARRACK:  Yes.  And if we sit back and ask

20 what is the function of the Court setting the number of trial

21 dates, we know it's proportionality.  We know -- we have to

22 respect due process and that there's an onus here but in

23 exercising your function, it's proportionality.  And we all

24 know that our Rules say that in applying our Rules, the Court

25 shall make Orders and give directions that are proportionate

1   to the importance, complexity of the issues, and the amount
2   involved.  And we set out in paragraph 52, page 16 of our
3   submission, if you look at what's going on in this Court in
4   terms of complex litigation, and the Court was given two
5   complex cases, the regional scene that's all too well aware
6   of [indiscernible], sitting in the commercial list, that the
7   *Barto* [ph] case went on for 50 days, the Nova Groats [ph]
8   case --

9            JUSTICE MORAWETZ:  Well, I can assure you the Nova
10  Groats case is not going 75 days.  I can assure you that.

11           MR. BARRACK:  You're well aware of --

12           JUSTICE MORAWETZ:  Well, I think you have to take
13  into account those, Mr. Barrack. as you well know, different
14  Judges have different styles and some of these cases were not
15  totally managed through commercial.

16           MR. BARRACK:  Right.

17           JUSTICE MORAWETZ:  Some take a greater amount;
18  some take less.

19           MR. BARRACK:  Understood.

20           JUSTICE MORAWETZ:  But your point is taken and I
21  understand where you're trying to go.

22           MR. BARRACK:  Okay.  Nobody knows [indiscernible].

23           JUSTICE MORAWETZ:  That one, I think you're --
24  I'll accept that submission.

25           MR. BARRACK:  So -- and we don't underestimate the

49

1  frustration of the Court with this case, the way that it has

2  proceeded.  That frustration is real.  But that frustration

3  does not justify disproportionate allotment of time to a

4  case.  When we stand back, this outcome will determine

5  whether future international insolvency proceedings are

6  subjected to the type of moral hazard which is

7  [indiscernible].  And we can't do anything about the past,

8  but you will have control in adjudicating this case to

9  actually make findings that will impact moral hazard issues.

10  But speaking to that moral hazard issue will be, in our

11  submission, better addressed in an appropriately length trial

12  rather than one that is set on an [indiscernible] basis to

13  try and facilitate settlement.  The case is not only of

14  national importance but it's of international importance.

15  The issues are complex.  In the case of our claims that are

16  complex foreign statutory regimes to be applied without the

17  benefit of a great deal of precedence.  The amounts involved

18  are in the billions.  And I just -- you know, we stand back.

19  There's a website up there that has Justice Winkler's comment

20  prior to the mediation [indiscernible].

21                          (Laughter)

22          JUSTICE MORAWETZ:  And I think he's still with us.

23  He may not be in his position but reports of his demise, I'm

24  sure are greatly exaggerated.

25          MR. BARRACK:  Well, and because he's with us, he

1   lives on in many ways but he did say, and it is part of the

2   public record that the Nortel insolvency is one of the most

3   complex transaction legal proceedings [indiscernible - audio

4   skipped] directly involves companies resident in almost 20

5   countries and appears to involve participants from every

6   continent except Antarctica.

7               JUSTICE MORAWETZ:  I can rectify that.

8                        (Laughter)

9               JUSTICE MORAWETZ:  I'd like to move.

10              MR. BARRACK:  Yes, before the trial.  And, you

11   know, as he noted, these circumstances give rise to many

12   difficult legal issues, not the least of which the

13   determination of which law applies, whose Courts have

14   jurisdiction, legal [indiscernible - audio skipped] conflicts

15   of law issues.  However, the complexity of the case would

16   make even a conflict of law professor cringe.  And he goes on

17   to note that the fact that there may be more than one avenue

18   of appeal available to the parties, through the Courts, in

19   numerous Countries adds yet another layer of [indiscernible -

20   loud hum] and he was so concerned at that point that, on the

21   public record, he didn't know whether it was a realistic

22   litigation option.  So I sit here representing 40,000 UK

23   Pensioners who contributed to their Pension Plans throughout.

24   They didn't take a pension claim and they're looking to this

25   Court for appropriate and proportionate justice in accordance

51

1  with the best traditions of our justice system and

2  arbitrariness and pre-judgment have never been the hallmarks

3  of our justice system.  The process should not be put in

4  jeopardy by such a process, which when examined on appeal,

5  could delay this trial, or worse, [indiscernible] entire

6  trial process and while we participated fully in

7  [indiscernible-shuffling papers] with respect to two matters.

8  The first is that the trials should occur sequentially.  The

9  claims trials should occur after allocations but

10 pragmatically.  And that the length of the trial, both

11 trials, should be set at the final pre-trial and the number

12 of witnesses, number of experts, agreeing on the facts

13 [indiscernible-coughing].  And to do otherwise, we have a

14 framework.  We have a positive framework for conducting the

15 trial.  We think that when we come back, we should have a

16 real discussion with the Judges about how long this is going

17 to take; realistically, how we can undertake the substantial

18 exercise that's being undertaken; and, in the interim, the

19 Courts should use all of its powers to bring the parties to

20 the deity  of their choice and come to an agreed Statement of

21 the Facts which will get this trial down to what it should be

22 about, is dealing with the significant issues, international

23 issues that are on the table.

24          I realize I've gone on at some length about this

25 but, well, this is our pre-trial.  This is our chance to

52

1   alert the Court of some of the issues here and I do

2   appreciate the time.

3           JUSTICE MORAWETZ:  Thank you, Mr. Barrack.

4           MR. MARK:  I think, Your Honor, it falls to me on

5   behalf of the Canadian Debtors and Monitors to respond.  Our

6   position, in summary, is as follows.  Firstly, both of the

7   issues that EMEA and UKPC put on the table have already been

8   addressed and resolved by the Courts.  UKPC and EMEA are

9   asking for separate trials, firstly, and they're asking,

10  secondly, that there be additional trial time to accommodate

11  the separate trial.  The Courts have already decided one

12  trial.  Those are distinct as everybody has said so far in

13  parallel.  [indiscernible-cough, audio skipped].  There is

14  one trial which the Courts have recognized throughout; that

15  the two are so intertwined, evidence so overlapping that

16  there should be one evidentiary hearing and none of the

17  rights Mr. Barrack says his clients are entitled to have been

18  compromised in that previous Order of the Court.  And

19  secondly, the Courts have already clearly decided and

20  directed that the duration of the trial is 20 days and the

21  Courts, of course, issued that directive when they were fully

22  cognizant of the fact that they dealt with both allocation

23  and claims and were fully cognizant of the issues and number

24  of witnesses.  That Order was made the 19th, as we were

25  discussing.  How we finish 110 depositions, there can't be

53

1  any suggestion the Court's didn't know what they were dealing
2  with.

3          Additionally, and in any event, the Protocol does
4  separate claims and allocation to the extent feasible.
5  Everything Mr. Barrack said in his submission that the Courts
6  should view and respect is done and respected by the
7  [indiscernible] Protocol that is put before you.  There are
8  separate filings.  There are separate evidentiary records.
9  There are separate arguments.  Everything is separate except
10  that the Trial Protocol recognizes that there will be
11  substantial and evidentiary overlap in the allocation and
12  claims, and nobody, not even Mr. Barrack who suggests that
13  the witnesses who give common evidence should testify twice.
14  So the notion that there should not be parallel proceedings
15  but that there should be distinctly sequential proceedings is
16  simply not feasible.  We do recognize, and the Protocol
17  allows for, the identification of those few witnesses, and we
18  think it will be very few lay or expert, may give evidence
19  relevant only to claims and certainly be scheduled so that
20  Justice Gross doesn't have to hear that.

21          Fourthly, the UKPC proposal is fundamentally
22  founded on the premise that they need a week, additional week
23  at least, of trial time to put in their case-in-chief to
24  satisfy their onus approval.  As is clear from the Trial
25  Protocol that is before the Court, which my friends endorse,

54

1  cases-in-chief are going to be put in writing.  Affidavits of

2  Trial Witnesses will be pre-filed.  All fact witnesses have

3  been deposed and the parties will be filing in advance of

4  trial separately for claims and allocation, the transcript

5  designations of those depositions they rely upon.  There will

6  be exhibit books prepared and settled which will be filed in

7  advance with admissibility issues resolved, which are going

8  to be filed in advance of trial.  And the expert reports will

9  be filed and expert depositions will be conducted prior to

10  trial and there will be a limited number of experts who

11  testify at trial.  The trial time, virtually exclusively,

12  cross-examination.  So my friend doesn't need more trial

13  time.

14        Lastly, the UKPC proposal is essentially to re-

15  visit the issue of the length of trial at some time after

16  April 11th.  That, in our submission, will make it impossible

17  for the parties over the coming weeks to do what they have

18  undertaken to do in the draft Protocol before you which is to

19  settle upon allocations of time, numbers of witnesses, etc.

20  That can only be done when the pin is put in the issue of the

21  length of the trial and, in our submission, that was done and

22  that time has come and gone.

23        Now, let me turn to my detailed submissions after

24  that.

25        JUSTICE MORAWETZ:  Let me just ask a question for

1  some guidance at this point, Mr. Mark.  Hypothetically, and I

2  underline that word about 12 times, if time and scheduling

3  was not an issue, would that eliminate or reduce the point of

4  conflict that you have, your clients have, with Mr. Barrack's

5  position?

6              MR. MARK:  Sorry, I'm not understanding.

7              JUSTICE MORAWETZ:  In the event that Judge Gross

8  and I get struck by lightning in the next three seconds,

9  wouldn't you say that this trial can extend for one year?

10             MR. MARK:  Right.

11             JUSTICE MORAWETZ:  Would that reduce or eliminate

12 the points that Mr. Barrack has made that you have responded

13 to?

14             MR. MARK:  Well, in fact, I don't think that

15 addresses Mr. Barrack's point.  If we assume that we're going

16 to keep --

17             JUSTICE MORAWETZ:  Now let's assume that you get

18 -- you deal with your allocation issues first and then you

19 deal with your claims issues.

20             MR. MARK:  So let's deal with the sequencing issue

21 first.  Nothing will change, right?  The parties, and I think

22 -- and I'll come to this in detail if there's any doubt, Your

23 Honor, there is significant overlapping evidence and

24 everybody agrees that we shouldn't have witnesses called

25 twice.  So there is going to be, to a significant extent, a

1  common evidentiary hearing.  But once you have a common

2  evidentiary hearing, it is clear beyond peradventure that the

3  parties' opening statements, pre-trial filings, all of that

4  has to happen in parallel at the beginning.  You can't embark

5  upon hearing evidence from witnesses on claims unless you've

6  had a case presented to you and opened to you on both

7  allocation and claims because you have to be able to

8  appreciate the evidence as it comes in.  So, as I understand

9  it, Mr. Barrack doesn't agree.  He -- that you're going to

10 have a parallel proceedings here where, at the front end,

11 you're going to have the pre-filed evidence that we have in

12 both claims and allocation.  You're going to have the parties

13 submitting their opening submissions and their opening

14 statements on both claims and allocation.  You will have a

15 common evidentiary hearing on overlapping evidence, and to

16 the extent there are discreet witnesses, they will be

17 scheduled to convenience the Court so that Justice Gross

18 doesn't have to sit here.  So whether that process takes four

19 weeks or 40 weeks doesn't fundamentally change.  I really

20 fail to understand the sequencing argument to that extent.

21 That will not change.

22         Now, on the issue of the length of the trial, I

23 suppose if the Courts said we have unlimited time; we have a

24 year or more, that maybe the parties would have taken a

25 fundamentally different approach to the Protocol.  But

1  whether this case is four weeks or five weeks or six weeks,

2  the Protocol is going to remain unchanged in that it will

3  fundamentally provide for parties' evidence, if you largely

4  take the record, pre-filed, and the trial time reserved with

5  the exception of some very brief overview evidence-in-chief

6  on an optional basis, the trial time will be reserved

7  exclusively for cross-examination of witnesses, and that's

8  not going to change.  Just because you give us another week

9  of trial doesn't mean this case is not going to be entirely

10  pre-filed in writing.  So my answer to your hypothetical,

11  Your Honor, is it won't make any difference.

12              UNKNOWN:  When Mr. Mark finishes, [indiscernible].

13              MR. MARK:  So let me turn to the first issue of

14  that addressed by Mr. Barrack which is the question of

15  whether the issue of there being one trial or two trials has

16  -- is still open or I think to the extent I understood his

17  submission and suggestion that, in fact, the Court has

18  directed there be two trials.  In fact, the April 3rd Order of

19  the Courts is perfectly clear that there -- and we can, I

20  think, use Mr. Barrack's material that he referred you to

21  already at Tab 1 of Mr. Barrack's Brief, page three of the

22  Court Order, paragraph three.  The Court directs that the

23  trial under the allocation Protocol will commence on January

24  6, 2014, and the trial will commence with the allocation

25  issues and continue thereafter with the EMEA Canadian claims

1  and the UK Pension Canadian claims.  So it is clear.  There

2  is one trial.  The Court has asked the parties, and I say

3  it's implicit in that, to the extent it is possible and

4  feasible, to ensure that the issues are sequent and clearly

5  separated.  But the Court clearly ordered one trial for a

6  reason, because the Court recognizes the comingling of the

7  issues here.  So the notion that there are separate trials is

8  incorrect.  That's been dealt with.  And on the issue of the

9  sequencing of the claims, the Protocol in its present form,

10  addresses that issue in every respect that Mr. Barrack

11  suggests the Court should be concerned about.  It addresses

12  it in the respect that the claims are clearly distinct.

13  There is no melding of the legal claims.  There's no

14  alteration of the onus of proof.  There's no curtailing of

15  the rights of audience or the right to have their legal

16  position separately considered.  In fact, what the allocation

17  -- what the Trial Protocol does in its present form is it

18  provides for separate pre-trial Orders to be filed for both

19  allocation and claims.  The pre-trial Orders, for your

20  benefit, Justice Morawetz, because it's an adoption of a term

21  which is more familiar to our U.S. friends, is essentially

22  the pre-trial evidentiary filings of the parties.  So there

23  will be separate filings in the allocation proceeding and

24  separate filings in the claims proceeding, each of which will

25  contain; not only will you have separate pleadings, but each

59

1  of which will contain the witness Affidavits that pertain to

2  each case, you will have the deposition excerpts that each

3  party relies upon for that case.  There'll be separate

4  filings for the claims case, separate filings for the

5  allocation cases.  The expert witnesses that the parties rely

6  on in each of the claims and allocation will be filed

7  separately in the respective Brief.  And the parties will be

8  filing separate exhibit books on claims and allocation.  So

9  all that was implicit, all of which was implicit in Mr.

10  Barrack's submission that the Protocol would not permit and

11  would put at risk and jeopardy under some notion that maybe

12  this would all be subject to appeal because there's some

13  abandonment of the separateness is, in fact, not the case.

14        The Protocol further contemplates separate opening

15  Briefs for claims and allocation, separate closing Briefs for

16  claims and allocation, and separate oral argument for claims

17  and allocation.  The U.S. Court is not being asked to decide

18  any issue with respect to claims.  The U.S. Court is not

19  being asked to hear or read Briefs or arguments on claims.

20  And the U.S. Court is not being asked to hear or read any

21  evidence which is relevant exclusively to claims.  To the

22  extent that the parties can, over the next month of meeting

23  and conferring, identify either fact or expert witnesses

24  which are agreed and acknowledged to be relevant exclusively

25  to claims, we can schedule them to ensure minimum

60

1   inconvenience to the U.S. Court.  But what cannot seriously

2   be disputed is that the evidence in the two proceedings is

3   largely inseparable and substantially overlaps.  The reality

4   is, and this is the reason why we have one trial, the vast

5   majority of the evidence in the claims cases will be

6   commented, things of allocation.

7           And let me just interject here for a moment.  In

8   Mr. Adler's submission, he said the Canadian position is that

9   Canada is entitled to 100 percent of the intellectual

10  property.  That is not Canada's position.  It's not the

11  position in Canada's allocation pleading.  It's a

12  mischaracterization of our position.  Our position, in fact,

13  is largely similar to the EMEA position which is you value

14  the interest in the IP entered by each of the parties in our

15  evidence [indiscernible-audio skipped] produce value to that.

16  We allocate that value to the respect including the U.S. and

17  EMEA.  So his characterization of our [audio skipped] is not

18  correct [audio skipped] digression.

19          So the alternatives, if one accepts that there is

20  overlapping evidence, are as follows.  (1) You can have that

21  overlapping evidence heard in common in the evidentiary

22  hearing or you can have the same evidence called again in a

23  separate trial.  And to pose the question, in my submission,

24  is to answer the question, but that would be grossly

25  inefficient, unfair to the Courts, unfair to the parties, and



61

1  unfair to the witnesses, and I think it's fair to say that

2  the Courts had that in mind when they issued the Protocol in

3  the first place and understood very well how this proceeding

4  would go.   To do it the other way around would certainly be

5  the tail of wagging of the dog, and that the Court had that

6  in mind.   I think it's very clear from some of the previous

7  Orders.   If you'll take our Brief, the Reply of the Canadian

8  Debtors that we filed, and you open to Tab D, and at Tab D,

9  you will see there, Justice Morawetz, your reasons delivered

10  in April in connection with the allocation Protocol that was

11  approved at that time.   And that's the Protocol that we've

12  already been talking about; Mr. Barrack refers to and I refer

13  to it too.   And if you turn over to paragraph 14 of your

14  reasons, you will see that in there summarized the trust and

15  the substance of the proposed allocation Protocol.   And if

16  you turn over to E, you clearly indicate that your

17  understanding of what the Protocol does is as follows.   The

18  Canadian and the U.S. Courts will hold simultaneously a joint

19  hearing regarding allocation of global proceeds and a hearing

20  into unresolved EMEA Canadian claims and EMEA U.S. claims,

21  provided that the Courts, in their discretion, may sit

22  separately to hear evidence or argument that is relevant to

23  only the Canadian or U.S. Debtors respectively.   Each Court

24  would then issue its respective Decisions.   It's clear.   It

25  couldn't be clearer.   There is one trial, and to the extent

1  possible, the Courts will sit separately to hear evidence and

2  argument which is relevant to only the claims issue and it is

3  clear beyond doubt that that is precisely what the draft

4  Protocol before you does.  And, of course, if you turn over

5  to paragraph 46 of your reason for a decision that -- pardon

6  me, paragraph 43, page 8, as originally numbered, you said in

7  the result, I grant the Canadian Debtor's Motion to Approve

8  an Amended Allocation Protocol which incorporates the

9  aforementioned amendments, while remaining substantially in

10 the form of Schedule A to the Motion originally returnable to

11 you separately.  None of the amendments that you imposed

12 affect that provision which I just read to you with your

13 summary of what the Courts were doing by approving that

14 Protocol and the draft Protocol for trial, which you now have

15 before you, as I said, is true to that directive and it's

16 exactly what the parties have done.

17         Now, if there's any doubt about how much the

18 evidence overlaps, Your Honor, and I think there's an

19 acknowledgement by everybody that there certainly is an

20 overlap, I disagree with Mr. Adler when he says that the

21 majority of the evidence will not be overlapping.  In our

22 view, it will be.  We don't have -- Mr. Adler hasn't given

23 you any [indiscernible].  He hasn't given you any witness

24 lists to support his proposition.  So what we have to do is

25 look at the pleadings and the proceedings we have to date.

82

63

1           On the EMEA side, both their claims and their
2    allocation position, fundamentally allege and depend upon an
3    allegation that there was control exerted by NNL and NNC over
4    NNUK and EMEA that's common to both their allocation and
5    claims positions.  Both their claims and allocation position
6    assert that there were improper transfers of value from EMEA
7    to Canada over the 2001-2009 time period.  They both assert
8    and depend upon a revised assessment of the relevant --
9    relative contributions of the parties to R & D.  They both
10   assert and depend upon the lack of independence of the EMEA
11   Boards of Directors.  They both assert and depend upon the
12   improper design and application and implementation of
13   transfer pricing.  And they both depend upon and assert that
14   there were improper valuations associated with Project Swift
15   and improper use of loan balances.  And they both assert that
16   there was an intention on the part of the parties to
17   establish beneficial ownership of IP.  In that context, it is
18   clear that the majority of the evidence in this case is going
19   to be impossible to parse out into separate proceedings for
20   claims and allocation.  And to give you one reference; I
21   won't turn it up, but it's in our submissions.  If you look
22   at paragraph nine in our submissions, we [indiscernible-
23   cough] pleadings where they cross-reference their allocation
24   pleading to their claims filings.  And if you look at page
25   nine of our written Brief for today, footnote 10 at the

1  bottom of the page; this is an excerpt from the EMEA's claim,

2  the facts of these transactions are set out in the

3  particulars from their allocation pleading.  The facts of

4  these transactions are set out in the particulars of claim to

5  the Proofs of Debt filed against the U.S. [indiscernible-

6  banging] for 2011 and these facts, but not the claims, are

7  incorporated by reference herein in respect of NNUK at

8  paragraphs 2 to 84, in respect of NNI are at paragraphs 2 to

9  71, and in respect of NNSA of paragraphs 2 to 84.  The same

10 facts are set out in the Proof of Debt filed against the

11 Canadian Debtor on March 18, 2011 and those facts, but not

12 the claims, are incorporated by reference herein in respect

13 of the NNUK at paragraphs 20 to 32, 61 to 85, and 106 to 161;

14 in respect of NNSA at paragraph 60, 70, and NRI at paragraphs

15 21 to 36 and 61 to [indiscernible-cough].  From the

16 pleadings, we know that the evidence will be largely

17 overlapping and we also know that the UKPC claims largely

18 overlaps with EMEA.  At paragraph 21 of the UKPC --

19         JUSTICE MORAWETZ:  Well, we're not going to

20 resolve this.  Now, this is what the trial is all about.  But

21 let me step back and go back if not one year, two years,

22 three years, four years, and five years.  As a general

23 statement, okay, it strikes me that, from the beginning, once

24 the parties figured out who they were acting for, that your

25 views on allocation for a variety of situations was dependent

1   upon the outcome of claims and your views on claims were

2   dictated by the outcome of allocation.

3           MR. MARK:  Absolutely.

4           JUSTICE MORAWETZ:  And that has been the problem

5   since day one; that no party could convincingly state here's

6   our position on allocation because you did not want to

7   prejudice yourselves with respect to claims and vice-versa.

8   So that's where you're stuck.  Now, has that changed?  What

9   I'm hearing is it has not changed and part of it comes

10  because some parties have claims in more than one Estate.

11  And, you know, nothing's really moved other than, and I do

12  acknowledge that there seems to be significantly more

13  cooperation going on between the parties, witnessing the fact

14  that we've been on the call for an hour and a half, people

15  are still calm.

16          But, you know, how much progress are you making?

17  I get it, Mr. Barrack, some of the comments that you've made

18  regarding timing, okay, and I get it with respect to a

19  Protocol that talks in terms of one trial.  You've got two

20  issues, and you know, how you're going to sequence them, you

21  know, it just strikes me that you're still struggling over

22  some of these, you know, concepts, and you know, at least

23  you've given some cogent arguments about, you know, how to

24  give -- how the Courts can provide some further direction.

25  But I don't know how much farther you're going to get in

1  debating, you know, some of the issues that both Counsel are

2  getting into considerable detail here.

3          MR. BARRACK:  Can I address -- I don't want to cut

4  Mr. Mark off so when he's finished, I do want to address --

5          JUSTICE MORAWETZ:  Yes, you'll get a chance to --

6  let's hear from Mr. Mark to conclude.  Now I asserted yet

7  from, you know, 3,000 or 10,000 or 100,000 feet where I was

8  trying -- looking at this today.

9          MR. MARK:  So lastly, let me just finish my

10  submission.  On the issue of the separateness of the trials

11  and the sequencing, I just, lastly, on this issue of

12  overlapping, if you look at paragraph 21 of the UKPC's

13  submission, Your Honor, you will see there that they set --

14  what they say are the claims issues and there are eight of

15  them, all of Items D through H are clearly common to both the

16  UKPC claims and the EMEA claims, and of course, as I've

17  already indicated, those issues are also common to

18  allocation.  So there can be no question that you can't

19  separate claims from allocation and you can't even separate

20  the UKPC claims from the EMEA claims and the Protocol.  Your

21  previous Orders recognize that.  The Protocol does permit for

22  sequencing and separate evidence and clearly provides for

23  separate argument throughout.

24          So let me now turn to the issue of the trial

25  length, and as I indicated before, I don't think there's any

1  prospect that the Courts are going to set a trial length

2  which will cause the parties to move away from the

3  fundamental scheme which is contemplated by the Trial

4  Protocol to something else.  This is going to be a case where

5  the case-in-chief is filed in writing.  The Courts made a

6  clear Order on November the 19th.  The provision that -- it

7  really couldn't be clearer when in the -- that Decision --

8  was that in your Brief?  Just give me a moment to turn it up.

9  The Order --

10             UNKNOWN:   Tab 6 of UK --

11             MR. MARK:   Yes.

12             JUSTICE MORAWETZ:   November 19th.

13             MR. MARK:   So, Your Honor, at -- in the Protocol

14  that was approved by the Order, at page three of the

15  Protocol, thereby beginning of trial, former date April 1,

16  2014, revised date, beginning on May 12, 2014, and continuing

17  for 19 trial days thereafter, and everybody who was in the

18  room clearly understood the direction we got from the Court

19  was that written in stone was the date and the number of

20  days.  The form of Protocol, and a particular provision that

21  Mr. Barrack took you to which contemplates the parties going

22  through a meet-and-confer process, which may deal with the

23  proposed length of the trial, was in the form of amended

24  deposition Protocol that was put before you before your

25  directive on the trial length, and I think was clearly a

68

1  vestige that remained after that.  But in any event, if you

2  read those two together, I don't think there's any doubt that

3  the Court had decided the issue of the trial length.  If the

4  parties could shorten the time; perhaps, they could, but what

5  was not on the table was revisiting that issue.  So the

6  question in my submission is what has changed since the

7  November Order, and the answer is, if anything, the issues

8  have been reduced and narrowed.  All that's happened is there

9  has been a settlement of the U.S. claims.  There's been no

10  expansion of the issues in the request for additional trial

11  time in that context.  It is puzzling.

12          But more important, the UKPC request is not that

13  you extend the trial length today, but that the parties come

14  back after April 11, when the parties have filed their

15  Affidavits from the witnesses that they will rely upon as

16  Affiants in this case.  They say we should return after April

17  11, and at that time, address the issue of the length of the

18  trial, and I say that is misguided for two reasons.  One that

19  I've already alluded to, given the structure contemplated by

20  the Trial Protocol, evidence-in-chief time is not

21  contemplated in this Protocol in any material respect.  The

22  number of trial witnesses doesn't affect how much time the

23  UKPC or EMEA get or need to prove their case.  Secondly, and

24  perhaps more importantly, April 11th is too late.  The

25  parties, over the next month, have agreed to meet and confer

88

69

1 and make a report back to this Court at the end of February

2 as to the number of witnesses who will testify at trial and

3 the allocation of time between the parties.  Those

4 discussions cannot be concluded, and probably can't even make

5 significant progress unless we are working with knowledge of

6 how long this trial will be.  For the parties to proceed with

7 the Protocol and complete their discussions, they have to

8 know how much time we have.  That was decided by the Courts

9 in November.  There comes a time in the run up to every trial

10 when the Court has to put a pin in the issue of the trial

11 time and, in our submission, that has been done, and it will

12 be counter-productive in the extreme if that issue is left

13 open until April 11.  Just think of witness scheduling.

14 Everybody understands that for this case to run within the

15 allotted trial time, whether it's 20 trial days or 25 days,

16 we've got to get these witnesses scheduled.  If we wait until

17 April 11th, after April 11th, to schedule witnesses, we're

18 dead.  This case will not take 20 days.  It will take 40

19 days.  We need to do that now.

20          Let me address, as I come to the end of my

21 submissions, Mr. Barrack's remarks about proportionality and

22 he is correct.  Two things.  This is a proceeding in the

23 Bankruptcy Court, but there are often summary proceedings.  I

24 think the Court has made a fully informed decision about what

25 amount of trial time is appropriate for this case.  And I ask

1  the Court to bear in mind the Decision that came out in the

2  Supreme Court of Canada in the Rule 20 cases just last week.

3  The Supreme Court of Canada has clearly said that we must

4  move our focus away from the notion that every issue which is

5  contested must require a trial and move to hybrid and other

6  forms of resolution of this case.  I remind you of the

7  submission made by my friend, Mr. Barrack, who said he

8  expects there will be no issue of credibility in this case.

9  It's his position.  No issue of credibility in this case.  In

10 that circumstance, this case calls out for what the parties

11 have done, which is largely a paper record with an allocation

12 of trial time for the parties to do reasonable cross-

13 examination on a group of principal witnesses, which they are

14 going to sit down and decide over the next few weeks, and it

15 is entirely appropriate in the amount set of time aside for

16 it.  It is not inappropriate and we need to have that

17 resolved today and the Courts have already resolved it.

18          Lastly, if the Court does order additional trial

19 time; in my submission, that would be now, not later, that

20 trial time should be available for both claims and

21 allocation.  I think I've demonstrated that this trial, to a

22 significant extent, is going to be a common evidentiary

23 hearing, and in my submission, what should be done, if you

24 allocate more trial time, is to just extend the trial and

25 make more time available for the parties to use in

1   accordance with the Protocol they have in place.  The notion

2   that we can now fill up a week with just claims evidence is,

3   in my submission, doubtful and certainly uncertain and, to

4   my mind, that would be counter-productive and if you're

5   inclined to give more time, it should be allocated across

6   all issues and the parties should work that out.  And

7   subject to your questions, Your Honor, those are my --

8            JUSTICE MORAWETZ:  Well, please.  You're

9   concluded?  For a moment, I thought you were going to ask to

10  schedule a Summary Judgment Motion.  Mr. Barrack, you wanted

11  to say a few words and then canvass down in Delaware.

12           MR. BOBICK:  Your Honor, may I start just a

13  moment before Mr. Barrack?  I just have a very brief point

14  so it might be appropriate.

15           JUSTICE MORAWETZ:  Are they different from what

16  we've already heard or just emphasizing --

17           MR. BOBICK:  It really responds, I believe, to

18  what my friend, Mr. Mark, said and I will be brief.  Thank

19  you.  Judge Gross, it's Matthew  Bobick, speaking for the

20  EMEA Debtors and I don't believe [indiscernible].

21  Hopefully, that will save the time.  First --

22           JUSTICE MORAWETZ:  Well, it will be one or the

23  other.

24           MR. BOBICK:  Thank you.  First, the -- Mr. Mark

25  referred at length to the overlap.  As Mr. Adler says, there

72

1   is overlap.  There's no doubt.  What we are asking for is to

2   deal with those matters where there is not overlap and I

3   don't think anyone around the table could submit to the

4   Courts that there are not issues purely for the Canadian

5   Court with respect to the claims.  So we are not avoiding

6   the issue.  We're confronting the issue.  So there are

7   issues that do not overlap.  That's point one.  That's what

8   we're talking about.

9           Point two is what we are talking about is

10  completely consistent with the one-trial approach and not

11  against a one-trial approach.  Every Counsel I think around

12  the table took you to the different places where the Court

13  has said the matter will be dealt with -- the matters will

14  be dealt with simultaneously but both Courts have the

15  discretion to hear matters separately.  We're talking about

16  fitting within that framework, not re-doing the framework.

17  So with respect to Mr. Mark's submissions, we are complying

18  with it and not suggesting otherwise.

19          The final point with respect to the suggestion

20  that 20 days was set in stone, with great respect, I believe

21  Mr. Barrack took you to a relevant provision of the Order

22  but two points are to be made and I think one is quite

23  obvious.  The Court always retains jurisdiction with respect

24  to length of trial when it's dealing with trials.  I don't

25  have to tell Your Honor that there are many trials that are

1   set down for a particular timeframe that go shorter or much

2   longer than the timeframe of the Courts.  Obviously, my mere

3   concern is to attempt to ensure that justice is done.  So

4   the suggestion that the door is closed on the number of days

5   of trial, in my respectful submission, that's not

6   appropriate, in addition to the reasons Mr. Barrack stated.

7   Those are all of our submissions on that point.

8                   JUSTICE MORAWETZ:  Thank you.  Mr. Barrack?

9                   MR. BARRACK:  So let's say you got hit by

10  lightning and said the trial is going to be three days.

11                  JUSTICE MORAWETZ:  Lottery tickets will be next.

12                  MR. BARRACK:  Right.  So what would be wrong with

13  that?  Why [indiscernible] reason one year, three days?  Our

14  whole concern is because neither one is proportionate.  But

15  if you look me in the eye and said as an Officer of the

16  Court that's practiced as long as I have [indiscernible],

17  how long should this trial take?  I can't tell you.  I don't

18  know how many witnesses are going to be.  I don't know who

19  the experts are.  I don't know what the Court needs.  No,

20  I'm not a time waster.  Three days isn't [indiscernible].

21  Twenty days may or may not be the best time.  But -- and if

22  setting that trial time too close to -- because when we have

23  the next pre-trial, [indiscernible], the amount of time that

24  reasonably -- reasonably -- proportionately, allows the

25  parties to put their case in a way that's responsible so all

1  of the parties come before the Court; not the lawyers who

2  come before the Court, but the parties, because the parties

3  have a -- that the Court treated them responsibly and

4  allowed them to put their case before it.  I don't know the

5  answer to that question sitting here because we really don't

6  know the moving parts.  And the biggest moving part, you

7  know, if this was a bilateral pre-trial, I'd be saying the

8  number one [inaudible] should come out of this.  Mr. Mark

9  said there won't be credibility issues.  I said there

10  shouldn't be credibility issues.  I don't underestimate the

11  ability of these parties to disagree on what day it is.  But

12  what these parties should responsibly do is get an agreement

13  Statement of Facts; that they get assistance assured that

14  assistance should be provided by a third-party, by the

15  Court, by whomever.  That will substantially shorten the

16  process.  That will deal with the issues.  Then what the

17  Court should do is sit down and look at this case and say,

18  you know, responsibly, how many people are going to be

19  standing up and talking?  How many people are going to be

20  standing up and talking on what issues?  What do we need to

21  do?  We you do the math on this, the 20 days is closer to

22  the three-week [indiscernible].  So responsibly, the Court

23  should say you've got some goodwill.  You've been working

24  [indiscernible].  You've been solving issues.  You said

25  you've come up with a chess block system.  The chess block

1   system has dealt with ordering.  It deal with, you know,

2   what order people are going to speak in, what proportion of

3   the total time is going to be allocated to various parties.

4   We've done it in, you know -- this group will go then if the

5   effect of the math is that it does come out with -- it will

6   come out with [cough] timeframe, a finite time and you work

7   through the algorithm of the Protocol, you're going to come

8   out with so much time for each party.  If you expand -- you

9   know, you expand the balloon, that's going to get expanded

10  proportionally.  If you contract the balloon, it's going to

11  get contracted proportionally.  But responsibly and

12  pragmatically, the Courts should sit down and say how long

13  is this going to take?  Three days or one year?  It's going

14  to be somewhere in between.  There's no magic to 20 days.

15  And with respect to the sequencing, the length of time isn't

16  going to affect the sequencing.  It's both -- you know,

17  three days will jeopardize this in a Court of Appeal.  Those

18  20 days, we don't know.  The Court doesn't know.  All the

19  Court can do is [indiscernible], it would serve the due

20  process [indiscernible] which is an appeal point, [paper

21  shuffling] pragmatically.  [indiscernible] our appeal, it's

22  up to the Court as to how you want to --

23          JUSTICE MORAWETZ:  Do you win any of those

24  appeals?

25          MR. BARRACK:  Well, why not?  Somebody will

76

1   appeal it.  You wait.  You can take that to the bank and we

2   might settle a case.

3            UNKNOWN:  Your Honor, I just want those two

4   factual issues that I think requires clarification.  The

5   Protocol provides that the parties do intend to work out the

6   Restatement of Facts.  That's in the Protocol already.  And

7   secondly, with respect to the number of witnesses, we do

8   have a lot of information on that.  The parties have already

9   designated the witnesses they might call as trial witnesses

10  and they are restricted to that list and the expert reports

11  have already been filed.

12           UNKNOWN:  Great.  So on that, Allen, how long --

13  you know, just one final --

14           JUSTICE MORAWETZ:  One final point.

15           UNKNOWN:  One final point.  [indiscernible] when

16  is the [indiscernible] allowing foreign plaintiffs to have

17  [indiscernible] this case.

18           JUSTICE MORAWETZ:  Looking around the room, I

19  don't see anybody else jumping up to say anything.  Judge

20  Gross, over to you or do you think -- I don't know how many

21  submissions on this issue you're going to hear in your Court

22  and I leave it to you as to whether you or anybody else in

23  the Court needs a short break at this time?

24           THE COURT:  I think that people are satisfied

25  with the comments that we've heard from Canada, Justice

1    Morawetz, and I'm not seeing anyone asking for a break at

2    this point.

3              JUSTICE MORAWETZ:  All right.  Then, perhaps,

4    we'll leave the line open and we'll recess for about 10 or

5    15 minutes.

6              THE COURT:  Very well.  Thank you.

7              MR. MARK:  Just before we recess, just a

8    reminder, the parties are requesting as part of the Protocol

9    that we have another -- the Court set another Pre-Trial

10   Conference for the week of March 10th.  So just in case you

11   and Justice Gross want to talk about that.  It's up to the

12   schedule [indiscernible].  I just want to [indiscernible].

13             JUSTICE MORAWETZ:  Thank you.

14             THE COURT:  What was that week, Mr. Rosenthal?

15             MR. ROSENTHAL:  Yes, Your Honor.  I think Mr.

16   Mark actually jumped up and made one of the two points that

17   I was going to make --

18             THE COURT:  Okay.

19             MR. ROSENTHAL:  -- before you recess which is

20   that the parties had suggested that the week of March 10,

21   perhaps with a preference, if it's okay with the Courts, I

22   know people had said the middle of the week, Tuesday,

23   Wednesday, Thursday are better for parties than the Monday

24   or Friday.

25             THE COURT:  All right.

78

1    MR. ROSENTHAL:  But, obviously, we'll do what the

2    Courts prefer.  So if the Judges can speak with each other

3    during the break to set that, that would be wonderful.

4    THE COURT:  Yes.

5    MR. ROSENTHAL:  And then the only other thing

6    would be, obviously, you know, the parties are here to get

7    the Court's feedback on some of the things that we ourselves

8    had planned for the trial and we would welcome comments and

9    an opportunity to discuss any concerns the Courts have after

10   you have a chance to confer with Justice Morawetz.  And then

11   I think when we come back, we'd like to just spend a few

12   minutes talking about a couple of logistical issues about

13   the trial.

14   THE COURT:  And I had planned that, Mr.

15   Rosenthal.  Just in Delaware.

16   MR. ROSENTHAL:  I think in both places.

17   THE COURT:  Oh.

18   MR. ROSENTHAL:  We all have questions about some

19   of the technology and location itself and we've been

20   conferring with our friends up in Canada as well and --

21   THE COURT:  All right.

22   MR. ROSENTHAL:  -- it would probably be

23   worthwhile to have a joint discussion about that.

24   THE COURT:  Okay.  Very well.

25   MR. ROSENTHAL:  Thank you.

1             THE COURT:  All right.  Thank you.  We'll --

2             JUSTICE MORAWETZ:  All right.  We'll leave the

3    line open for 10 or 15 minutes.

4             THE COURT:  Yes.  We'll recess now.

5             JUSTICE MORAWETZ:  Thank you.

6             THE COURT:  Thank you.

7             (Recess from 11:39 a.m. to 11:55 a.m.)

8             THE CLERK:  Please rise.

9             THE COURT:  Thank you, everyone.  Please be

10   seated.  We're going to wait for Justice Morawetz.  He was

11   dealing with something in another matter so he thought he'd

12   be on shortly.  At the conclusion of the joint hearing, if

13   we would like to just discuss some particulars as to this

14   Courtroom, that might be helpful.

15            JUSTICE MORAWETZ:  Okay.  Judge Gross, you're

16   back?

17            THE COURT:  I am back, sir, yes.

18            JUSTICE MORAWETZ:  I guess since most of the

19   argument was up here, Judge Gross, I think it's, perhaps,

20   easier if I started on this aspect?

21            THE COURT:  That is perfectly fine, Justice

22   Morawetz.

23            JUSTICE MORAWETZ:  This is not intended to be a

24   formal endorsement, at least some directions in the context

25   of a Trial Management Conference, but it will be, as to some

1  degree after this afternoon.

2          On the first point of, I guess Mr. Ziegler's

3  point with the CCC, that point will be addressed later.

4  However, I will assert that, certainly from my standpoint,

5  the Ontario Court would be most reluctant to foreclose that

6  party from having the opportunity to make the statements in

7  the form that Mr. Ziegler outlined.  We will look for the

8  parties to work together to see if some of the differences

9  can be narrowed, but that would be your dining principle.

10          On the second point, which was the one that was

11  the subject of the very lengthy submissions, and I don't

12  mean that in a negative way from Barrack and from Mr. Mark,

13  the -- it is one trial.  It will start with claim -- with

14  the allocation issues and the claim issues.  Realistically,

15  I think both Judge Gross and I are of the view that 20 days

16  is not something that is set in stone.  We will be looking

17  for these parties and you are now working I think in a much

18  more constructive and cooperative manner, to continue with

19  that; emphasize the word continue with that cooperation.

20  There will be additional trial time allocated.  Mr. Barrack,

21  I think you made a very valid point.  It's impossible to

22  state with certainty exactly how long this is going to take.

23  We will be looking for parties to work in the most, you

24  know, efficient and effective manner.  You know, it's not

25  going to surprise me if this is going to take an extra, you

100

81

1   know, two, possibly three weeks, and that's sort of the

2   guidelines that you should take.  There should be some time

3   in your calculations set aside for exclusive issues with

4   respect to what I'll call the Canadian claims.  That may or

5   may not be something that's of interest to the parties in

6   Judge Gross' Courtroom.  I would suspect that, given all the

7   combinations, permutations, and machinations that you've

8   been through, that this might be more than a passing

9   interest.  But deal with it first on the basis of the

10  allocation issues.  Claim issues will be dealt with in the

11  context of the same.

12          Judge Gross, do you have anything at this point

13  to add, sir?

14          THE COURT:  Just -- yes.  And just to clarify, we

15  are looking for the parties to arrive at a specific number

16  of days, additional days.  Otherwise, you're not going to be

17  able to do the allocation of time that you have to do and I

18  think that by --

19          JUSTICE MORAWETZ:  This is not an open-ended

20  invitation to extend.

21          THE COURT:  Right.  And, you know, we may have

22  something to say about, you know, what you conclude is

23  necessary but the 10 to 15 additional days is what we were

24  thinking; is what I was thinking, in any event, and we will

25  be having to work out I think the specific trial days based

1   upon various scheduling issues and holidays and the like.  I

2   can't tell you, for example, that this is going to go 30 or

3   35 trial days straight.  There may be interruptions for

4   various reasons.  But at least you know what -- that we're

5   now talking about 30 or 35 trial days and the parties can

6   make a decision as to how much they're thinking is

7   necessary.  But that should relieve some of the pressure on

8   the parties, I think, and it will also address Mr. Adler's

9   concerns about days that specifically address just the

10   claims issues and, Mr. Adler, you would have some say and be

11   arguing, I'm sure, for how many of those days you'll need

12   out of the additional time.

13            MR. ADLER:  Thank you, Your Honor.

14            THE COURT:  Yes.  Because there are so many

15   overlapping issues.  It was just difficult for us to see how

16   we could completely segregate allocation and claims, and

17   there is overlap in witnesses who will probably be

18   testifying as to both issues and so this may make some

19   sense.

20            JUSTICE MORAWETZ:  Now, just to relieve the Court

21   of some burdens, I don't know whether the parties are able

22   to take the comments from both Judge Gross and myself and

23   put them into a form of one-page notations so that all

24   parties can sign off on what we consider to be revised trial

25   scheduling or amendments or whether you're going to require

1 || something more formal than that.

2 ||          MR. BARRACK:  If I can suggest?  I think it's the

3 || Monitor circulates [indiscernible].  The parties signed off

4 || on the larger links to meeting and proceeding, in part.  I

5 || think the parties have worked in good faith.  I think we can

6 || sign off on something and --

7 ||          JUSTICE MORAWETZ:  Mr. Barrack, I think that's an

8 || excellent suggestion.  I don't see anybody expressing any

9 || negative view.

10 ||          THE COURT:  That's all right.

11 ||          JUSTICE MORAWETZ:  And Judge Gross, I'll leave it

12 || for you to decide, procedurally, how you wish to address the

13 || points in your Court, but I'll ensure that the Monitor's

14 || letter does find its way obviously to U.S. Counsel and to

15 || yourself.

16 ||          THE COURT:  And I would suggest even that both

17 || jurisdictions communicate with one another on a Form of

18 || Order and that way there won't be any questions.

19 ||          One thing we did not address in our phone call,

20 || Justice Morawetz, was the specific date for the next Pre-

21 || Trial Conference and I --

22 ||          JUSTICE MORAWETZ:  That was -- I think the

23 || suggestion was March 11, 12, or 13.

24 ||          THE COURT:  That's right.  I was going to suggest

25 || -- I think any of those days work for me.  March 12th would

1   work best in the afternoon, but I could also do the 13th in

2   the afternoon.

3          JUSTICE MORAWETZ:  I'm just canvassing.  I think

4   both -- looks to me that Counsel are available on both days?

5          MR. ROSENTHAL:  I would have a preference, Your

6   Honor, for the 12th if you were flexible between the two.

7          THE COURT:  We'll do it March the 12th and we'll

8   start at -- is 1:00 p.m. all right in Canada?

9          JUSTICE MORAWETZ:  I suspect that it is.

10          THE COURT:  All right.  Let's set it down then

11   for 1:00 p.m. on March 12th.

12          JUSTICE MORAWETZ:  And then I think that the only

13   other logistical point for today was the parties wanted some

14   guidance from the technology aspect of things.  We might --

15   I might suggest we deal with that offline, you know, with

16   some of the parties up here.  But, you know, where I'm

17   heading with that, Counsel, is to use Courtroom 801, right

18   next door here at 330 University.  I think we're probably

19   open, and a lot of you have had experience in bringing in

20   reporters.  There's, you know, certain hoops that we have to

21   deal with with the ministry on that aspect.

22          Also, I'm open for suggestions from a technology

23   standpoint.  You can speak to Court Services as to what they

24   have available both in our sort of mobile units or what you

25   might want to bring in.  You know, obviously, sooner as

1   opposed to later on that issue so there's plenty of time.

2   But what we want to have is better technology than what we

3   have over in 393 University, like flat screens as opposed

4   to, you know, like black and white sets.

5          UNKNOWN:  You know, Your Honor, has anybody made

6   even any preliminary inquiries as to whether additional

7   cabling can be put in this Courtroom?  I understand from our

8   preliminary discussions with possible service providers that

9   that's a key issue.

10          JUSTICE MORAWETZ:  I have not had those

11   discussions but I will ensure that they can be facilitated.

12          THE COURT:  And I feel likewise, as far as

13   technology.  I'm very flexible with bringing in an outside

14   vendor to do -- take care of the transmission.

15          MR. ROSENTHAL:  And, Your Honor, I think the

16   parties had some preliminary discussions and are all in

17   agreement that we would jointly try to retain an outside

18   vendor to do the wiring.

19          THE COURT:  Yes.

20          MR. ROSENTHAL:  You know, for the Courtrooms so

21   that we could ensure things are properly tested in advance,

22   and technologically, will work out well and we'll obviously

23   continue our dialog about, you know, probably retaining one

24   vendor, you know.

25          JUSTICE MORAWETZ:  I'm sure you can have a meet

1  and confer and resolve this one.

2              THE COURT:  And I would like to use my Courtroom

3  because I just think it would be difficult for me,

4  personally, not to and security issues and the like, but I

5  will make some modifications, take out some rows of seating

6  in the back and be able to put in additional tables and that

7  sort of thing.  And as far as an outside court reporter is

8  concerned, that would be fine.  We would make that the

9  official transcript.  That way, you would have the kind of

10  daily copier even, you know, same time copy that you might

11  need.

12              MR. ABBOTT:  Your Honor, Derek Abbott.  The only

13  question we -- again, just sort of brainstorming here with

14  the court reporting service here, I'm not sure what the

15  court reporting arrangements are in Canada but we thought

16  particularly for the daily feed here, it might be helpful if

17  we could perhaps, and I'm not sure that they'll be able to

18  do it, but perhaps have a colleague of the reporter who's

19  sitting here also sitting in Justice Morawetz' Courtroom

20  taking down -- it wouldn't be the official transcript in

21  Canada, obviously, but would greatly facilitate the daily

22  feed that most folks I think are going to want that'll have

23  both at least the evidence and transcripts from each day

24  available sort of on a timely basis in each place.  I don't

25  know --



87

1          THE COURT:  Sure.

2          MR. ROSENTHAL:  Again, that's one thing that

3   we're considering and would like to further explore.

4          THE COURT:  I think I can say, Mr. Abbott, within

5   reason, anything that you can do or we can do to facilitate

6   the trial will be fine with me.

7          JUSTICE MORAWETZ:  And there should be enough

8   flexibility, I might add, in that Court-to-Court

9   communication that you might even be able to put together a

10  Form of Order that allows you to have one agreed upon

11  transcript at the end of the day, as opposed to one from

12  this Court and one from the Delaware Court because if

13  there's a deviation between the two, we've got bigger

14  problems.

15         THE COURT:  That's right.

16         MR. ROSENTHAL:  That's why I thought it would be

17  helpful to have at least two -- for instance, today, it was

18  very difficult hearing some of what was happening in Canada

19  and I'm not sure if they experienced the same issues we did,

20  but it's going to be I think much more accurate to have

21  folks who work together in both places that can lash up and

22  get something concrete.

23         THE COURT:  That's right, and -- absolutely.  Who

24  could, for example, ask a witness to repeat an answer or

25  something of that sort.

1          MR. ROSENTHAL:  Exactly.

2          THE COURT:  Yes.

3          MR. ROSENTHAL:  Thank you, Your Honor.

4          THE COURT:  All right.  So we will work with you

5   for sure.

6          JUSTICE MORAWETZ:  All right.  Counsel, I do

7   appreciate it.  I'm sure Judge Gross appreciates what we

8   both, I think, can acknowledge is a better spirit of

9   cooperation, and hopefully, that extends beyond the

10  Courtrooms and into the Board room.

11         THE COURT:  Absolutely.

12         JUSTICE MORAWETZ:  Thank you very much.

13         THE COURT:  And all of your hard work in putting

14  this together.  And we really -- I will say your proposal

15  was perfectly acceptable.  I couldn't have done as well and

16  I appreciate your efforts, the joint effort.  All right.

17         JUSTICE MORAWETZ:  Thank you very much.  The call

18  is now being terminated.

19         THE COURT:  Yes.

20         MR. ROSENTHAL:  Thank you, Your Honor.

21         THE COURT:  Thank you all.

22

23      (Whereupon, at 12:12 p.m., the hearing was adjourned.)

24

25

1                              CERTIFICATION

2              I    certify    that    the    foregoing    is    a    correct

3   transcript    from    the    electronic    sound    recording    of    the

4   proceedings in the above-entitled matter.

5   **Tammy L. Kelly**  <small>Digitally signed by Tammy L. Kelly<br>DN: cn=Tammy L. Kelly, o=DDS, LLC, ou,<br>email=info@diazdata.com, c=US<br>Date: 2014.01.30 15:37:33 -05'00'</small>

6                                                           30 January 2014
7   Tammy Kelly, Transcriber                                      Date
8   Diaz Data Services, LLC

# NORTEL.1.29.14.P.DOC

| Word | Page:Line |
|---|---|

**15-minute(3)** 21:19 25:16 25:16
**a.m(4)** 1:17 7:2 79:7 79:7
**abandonmen(1)** 59:13
**abbott(5)** 1:29 7:5 86:12 86:12 87:4
**abid(1)** 2:15
**ability(2)** 20:22 74:11
**able(9)** 9:22 11:15 15:17 56:7 81:17 82:21 86:6 86:17 87:9

**about(68)** 7:15 9:19 10:14 11:16 12:8 12:20 13:10 13:21 18:24 19:22 20:22 21:4 21:4 22:10 22:17 23:3 23:3 23:4 24:23 27:1 27:2 29:5 29:14 30:4 30:6 30:22 31:1 31:5 31:9 31:20 33:7 33:17 34:12 35:12 37:2 37:4 37:11 39:2 39:20 42:5 42:18 43:5 46:22 49:7 51:16 51:22 51:24 55:2 58:11 61:12 62:17 64:20 65:23 69:2 69:24 72:8 72:9 72:15 77:4 77:11 78:12 78:12 78:18 78:23 81:22 82:5 82:9 85:23

**above(1)** 26:18
**above-entitled(1)** 89:4
**absolutely(4)** 8:24 65:3 87:23 88:11
**abused(2)** 15:11 15:18
**accept(1)** 48:24
**acceptable(2)** 16:23 88:15
**accepted(1)** 40:21
**accepts(1)** 60:19
**accommodat(1)** 52:10
**accomplish(1)** 35:19
**accordance(6)** 15:13 30:11 41:13 41:16 50:25 71:1

**according(1)** 41:16
**account(3)** 40:15 44:6 48:13
**accurate(1)** 87:20
**acknowledge(2)** 65:12 88:8
**acknowledged(1)** 59:24
**acknowledgemen(1)** 62:19
**across(1)** 71:5
**acted(2)** 15:13 15:14
**acting(1)** 64:24
**actions(1)** 44:10
**actual(1)** 41:6
**actually(7)** 13:19 14:23 23:8 30:15 32:11 49:9 77:16

**adam(1)** 4:21
**add(4)** 27:13 32:15 81:13 87:8
**added(1)** 32:13
**addition(1)** 73:6
**additional(12)** 32:12 32:15 52:10 53:22 68:10 70:18 80:20 81:16 81:23 82:12 85:2 86:6

**additionally(2)** 28:12 53:3
**address(17)** 10:18 14:4 14:8 14:21 17:17 19:23 32:13 32:16 33:15 66:3 66:4 68:17 69:20 82:8 82:9 83:12 83:19

**addressed(8)** 20:20 34:21 35:8 45:12 49:11 51:8 57:14 80:3

**addresses(3)** 55:15 58:10 58:11
**adds(1)** 50:19
**adjourned(1)** 88:23
**adjudicate(6)** 45:24 45:25 46:6 46:8 46:12 46:22

**adjudicating(1)** 49:8
**adjust(1)** 41:15
**adjustments(1)** 41:18
**adler(20)** 3:6 17:20 17:22 17:23 18:1 18:10 18:16 18:17 28:19 28:20 28:21 28:23 28:24 31:8 42:24 62:20 62:22 71:25 82:10 82:13

**adler's(2)** 60:8 82:8
**administered(1)** 1:7

**administrators(3)** 3:4 17:24 28:25
**admissibility(1)** 54:7
**admonition(1)** 41:2
**adoption(1)** 58:20
**advance(5)** 11:14 54:3 54:7 54:8 85:21
**advani(1)** 4:6
**advantage(2)** 16:11 17:11
**adverse(2)** 22:6 44:2
**advocates'(1)** 37:14
**affect(7)** 9:21 18:5 32:23 44:9 62:12 68:22 75:16

**affects(1)** 9:16
**affiants(1)** 68:16
**affidavit(2)** 10:23 11:4
**affidavits(5)** 19:16 47:6 54:1 59:1 68:15
**affirmative(2)** 45:1 47:14
**aforementioned(1)** 62:9
**after(13)** 12:19 22:23 32:16 32:18 51:9 54:15 54:23 68:1 68:14 68:16 69:17 78:9 80:1

**afternoon(3)** 80:1 84:1 84:2
**again(13)** 9:6 9:12 17:21 28:24 31:24 32:1 32:23 33:4 45:12 46:23 60:22 86:13 87:2

**against(9)** 15:6 18:9 29:11 29:13 35:18 47:2 64:5 64:10 72:11

**ago(2)** 15:25 16:15
**agree(7)** 12:24 14:18 17:15 23:2 34:7 42:14 56:9

**agreed(14)** 10:3 10:13 16:18 25:7 26:3 33:6 36:18 37:15 37:23 42:11 51:20 59:24 68:25 87:10

**agreeing(2)** 25:13 51:12
**agreement(5)** 8:6 17:2 41:19 74:12 85:17
**agrees(1)** 55:24
**ahead(1)** 38:4
**akin(2)** 2:12 4:25
**alan(1)** 1:22
**alberto(1)** 4:12
**alder(1)** 33:24
**alert(1)** 52:1
**algorithm(1)** 75:7
**aligned(3)** 16:4 17:5 26:9
**all(76)** 7:4 7:25 8:20 8:22 10:3 10:25 13:11 13:14 13:15 14:10 14:11 17:18 18:18 21:1 21:5 21:5 21:18 22:13 22:18 23:23 24:18 24:23 25:8 26:24 27:3 29:2 30:19 30:20 31:24 32:25 33:1 33:10 33:24 34:16 35:4 37:5 37:13 37:15 38:7 38:16 40:4 41:25 42:2 44:23 47:23 48:5 51:19 54:2 56:3 59:9 59:9 59:12 64:20 66:15 68:8 71:6 73:7 73:25 75:18 77:3 77:25 78:18 78:21 79:1 79:2 81:6 82:23 83:10 84:8 84:10 85:16 88:4 88:6 88:13 88:16 88:21

**allegation(1)** 63:3
**allege(1)** 63:2
**allen(3)** 3:25 5:31 76:12
**allocate(3)** 43:6 60:16 70:24
**allocated(10)** 13:4 13:11 24:18 25:24 27:3 32:6 33:17 71:5 75:3 80:20

**allocation(124)** 11:16 13:8 13:19 13:20 14:24 15:3 15:4 15:4 15:5 15:8 15:9 15:12 15:19 15:21 15:23 16:2 16:2 16:3 16:4 16:6 16:12 17:3 18:4 21:2 21:6 21:9 21:11 21:20 21:21 21:23 22:1 23:8 23:11 23:12 25:12 25:25 26:1 26:2 26:2 26:5 26:6 26:10 26:12 26:13 26:15 26:17 26:1 27:3 27:5 29:3 29:5 29:8 29:15 29:23 30:22 30:25 31:14 32:2 32:16 32:19 32:2 32:21 33:1 33:4 33:19 34:13 36:7 38:22 38:24 39:1 39:4 39:5 39:17 39:21 41:1 41:11 42:23 43:1 43:12 43:14 52:22 53:4 53:11 54:4 55:18 56:7 56:12 56:14 57:23 57:24 58:16 58:19 58:23 59:5 59:6 59:8 59:15 59:16 59:17 60:6 60:11 61:10 61:15 61:19 62:8 63:2 63:4 63:5 63:20 63:23 64:3 64:25 65:2 65:6 66:18 66:19 69:3 70:11 70:21 80:14 81:10 81:17 82:1 82:2

**allocations(8)** 22:25 35:22 39:12 44:16 45:7 45:16 51:9 54:19

**allotment(1)** 49:3
**allotted(1)** 69:15
**allow(1)** 14:8
**allowed(2)** 17:14 74:4
**allowing(2)** 45:9 76:16
**allows(3)** 53:17 73:24 87:10
**alluded(2)** 18:25 68:19
**almost(5)** 15:24 16:15 22:9 34:24 50:4
**alone(1)** 35:25
**along(2)** 7:24 44:15
**already(16)** 11:1 11:10 27:21 32:20 52:7 52:11 52:19 57:21 61:12 66:17 68:19 70:17 71:16 76:6 76:8 76:11

**also(16)** 9:20 10:9 20:6 21:10 24:20 29:19 30:10 33:6 33:16 44:25 64:17 66:17 82:8 84:1 84:22 86:19

**alter(2)** 40:22 42:21
**alteration(1)** 58:14
**alternative(2)** 22:2 30:15
**alternatives(1)** 60:19
**although(4)** 20:19 29:13 29:18 40:21
**always(5)** 35:20 36:2 42:20 44:4 72:23
**ambiguity(2)** 35:6 35:6
**ambitious(1)** 32:21
**amended(3)** 41:13 62:8 67:23
**amendment(1)** 41:10
**amendments(4)** 41:20 62:9 62:11 82:25
**america(1)** 5:23
**american(1)** 27:6
**americas(2)** 3:29 3:41
**among(3)** 13:9 15:7 39:25
**amount(11)** 13:18 23:1 23:13 23:15 23:17 33:22 48:1 48:17 69:25 70:15 73:23

**amounts(1)** 49:17

**and(301)** 6:20 7:8 7:10 7:22 7:22 7:26 8:1 8:9 8:10 8:10 8:17 8:22 9:9 9:12 9:15 9:16 9:21 10:1 10:6 10:9 10:12 10:12 10:12 10:19 11:3 11:12 11:18 11:21 12:2 12:21 12:24 12:25 12:25 13:3 13:10 13:11 13:20 13:23 14:3 14:4 14:6 14:8 14:13 14:15 14:17 14:25 15:5 15:6 15:6 15:10 16:15 16:17 16:19 16:24 17:6 17:10 17:12 17:23 17:24 18:4 18:4 18:6 18:7 18:9 18:13 18:14 18:22 18:24 19:12 19:19 19:16 19:17 19:20 20:1 20:2 20:4 20:9 20:10 20:14 20:16 20:16 20:22 20:23 20:24 21:1 21:3 21:3 21:10 21:13 21:15 21:19 21:23 22:3 22:7 22:12 23:24 22:22 22:22 23:2 23:3 23:7 23:7 23:10 23:12 23:13 23:14 23:15 23:16 23:16 23:18 23:18 23:18 23:19 23:21 23:25 24:1 24:3 24:5 24:5 24:8 24:10 24:19 25:14 25:16 26:2 26:7 26:11 26:15 26:18 26:25 27:21 27:24 28:1 28:3 28:11 28:14 28:20 28:21 28:25 28:25 29:2 29:3 29:3 29:5 29:5 29:6 29:8 29:10 29:12 29:16 29:16 29:18 29:19 29:20 29:22 29:22 30:4 30:5 30:15 30:17 31:2 31:4 31:13 31:14 31:16 31:24 31:25 32:5 32:5 32:7 32:17 32:17 32:25 33:1 33:1 33:2 33:2 33:9 33:15 33:18 33:19 33:20 33:22 34:6 34:13 34:24 34:5 35:6 35:7 35:9 35:10 35:13 35:15 35:17 35:19 35:22 35:22 36:1 36:3 36:4 36:5 36:11 36:11 36:12 36:14 36:16 36:17 36:18 36:19 36:24 37:5 37:5 37:6 37:7 37:14 37:20 37:23 38:6 38:7 38:11 38:12 38:17 38:18 38:20 38:23 38:24 38:25 39:1 39:3 39:4 39:5 39:6 39:11 39:13 39:14 39:17 39:18 39:22 39:22 40:4 40:8 40:9 40:10 40:11 40:16 40:17 40:19 40:23 40:23 40:24 40:25 41:4 41:5 41:6 41:8 41:8 41:12 41:12 41:13 41:17 41:18 41:24 41:25 42:1 42:4 42:6 42:7 42:11 42:15 42:15 42:16 42:18 42:19 43:2 43:4 43:9 43:13 43:18 43:19 43:24 44:1 44:2 44:3 44:3 44:6 44:7 44:11 44:12

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| and(301) 44:15 44:20 44:21 44:21 44:25 | | appears(2) 7:6 50:5 | | assessment(1) 63:8 | | beginning(4) 56:4 64:23 67:15 67:16 | |
| 45:1 45:5 45:6 45:10 45:10 45:12 45:13 | | applicable(1) 46:7 | | asset(4) 6:16 30:1 30:3 30:5 | | begins(1) 19:21 | |
| 45:14 45:15 45:19 45:21 45:23 45:24 | | application(1) 63:12 | | assets(1) 30:3 | | behalf(8) 7:8 8:19 14:16 25:6 27:25 34:1 | |
| 45:25 46:5 46:8 46:9 46:15 46:18 46:21 | | applied(1) 49:16 | | assistance(4) 36:15 42:16 74:13 74:14 | | 34:14 52:5 | |
| 46:21 46:23 46:25 47:1 47:6 47:9 | | applies(1) 50:13 | | associated(1) 63:14 | | behind(1) 20:14 | |
| 47:10 47:15 47:19 47:17 47:22 47:23 | | apply(1) 36:11 | | assume(3) 24:8 55:15 55:17 | | being(14) 9:20 11:3 13:7 13:9 15:12 21:12 | |
| 47:25 48:1 48:2 48:4 48:14 48:20 48:25 | | applying(1) 47:24 | | assure(3) 16:9 48:9 48:10 | | 22:3 25:20 51:18 57:15 59:17 59:19 59:20 | |
| 49:7 49:13 49:18 49:22 49:25 50:1 50:5 | | appreciate(4) 52:2 56:8 88:7 88:16 | | assured(2) 24:20 74:13 | | 88:18 | |
| 50:10 50:16 50:20 50:24 50:25 51:1 51:2 | | appreciates(1) 88:7 | | attempt(1) 73:3 | | believe(7) 20:9 22:19 22:19 24:20 71:17 | |
| 51:6 51:10 51:11 51:13 51:18 51:20 52:1 | | appreciation(1) 38:3 | | attempting(1) 42:9 | | 71:20 72:20 | |
| 52:5 52:7 52:8 52:8 52:9 52:16 52:18 | | approach(5) 29:2 30:4 56:25 72:10 72:11 | | audience(1) 58:15 | | belknap(2) 3:39 5:45 | |
| 52:19 52:20 52:23 52:23 52:23 53:3 53:4 | | approaches(1) 30:9 | | audio(5) 50:3 50:14 52:13 60:17 60:18 | | below(1) 41:19 | |
| 53:6 53:6 53:11 53:11 53:12 53:16 53:17 | | appropriate(10) 8:7 10:9 12:4 46:5 46:12 | | august(1) 9:11 | | beneficial(1) 63:17 | |
| 53:19 54:3 54:4 54:6 54:8 54:9 54:10 | | 50:25 69:25 70:15 71:14 73:6 | | aurelius(1) 6:29 | | benefit(2) 49:17 58:20 | |
| 54:11 54:21 54:22 55:1 55:12 55:16 | | | | authorize(1) 7:21 | | benefits(1) 46:19 | |
| 55:21 55:22 55:23 56:6 56:7 56:12 56:13 | | appropriately(1) 49:11 | | availability(1) 46:5 | | best(4) 21:21 51:1 73:21 84:1 | |
| 56:14 56:15 57:4 57:7 57:17 57:19 57:24 | | approval(2) 19:6 53:24 | | available(6) 50:18 70:20 70:25 84:4 84:24 | | better(4) 49:11 77:23 85:2 88:8 | |
| 57:25 58:1 58:2 58:3 58:4 58:8 58:19 | | approve(2) 21:12 62:7 | | 86:24 | | between(16) 12:9 13:4 29:17 30:12 30:24 | |
| 58:23 59:6 59:7 59:8 59:10 59:11 59:15 | | approved(2) 61:11 67:14 | | | | 31:2 31:4 37:5 37:11 45:14 47:6 65:13 | |
| 59:16 59:16 59:17 59:20 59:23 59:24 60:3 | | approving(1) 62:13 | | ave(4) 4:13 | | 69:3 75:14 84:6 87:13 | |
| 60:4 60:7 60:16 60:23 60:25 61:1 61:3 | | april(14) 38:20 47:6 47:6 47:10 54:16 | | avenue(6) 2:38 3:29 3:35 3:41 4:7 50:17 | | | |
| 61:5 61:8 61:11 61:11 61:12 61:13 61:14 | | 57:18 61:10 67:15 68:14 68:16 68:24 | | avoid(1) 10:25 | | beyond(3) 56:2 62:3 88:9 | |
| 61:15 61:18 61:19 61:20 62:15 62:1 62:2 | | 69:13 69:17 69:17 | | avoiding(1) 72:5 | | big(1) 31:6 | |
| 62:4 62:14 62:15 62:18 62:25 63:1 63:2 | | | | aware(4) 19:24 40:3 48:5 48:11 | | bigger(1) 87:13 | |
| 63:3 63:4 63:4 63:5 63:8 63:11 | | arbitrariness(1) 51:2 | | away(1) 67:2 70:4 | | biggest(4) 22:11 30:6 30:7 74:6 | |
| 63:12 63:13 63:12 63:13 63:15 63:15 | | are(134) 7:12 7:14 10:6 11:2 11:22 12:1 | | back(25) 10:13 10:21 20:6 21:15 21:19 | | bilateral(1) 74:7 | |
| 63:20 63:20 63:24 64:9 64:11 64:13 | | 13:18 13:24 14:20 15:1 15:7 16:1 16:4 | | 26:24 26:24 26:25 28:18 38:13 40:1 40:5 | | billions(1) 49:18 | |
| 64:14 64:15 64:17 64:21 64:22 65:1 65:4 | | 16:13 16:14 16:19 19:8 20:19 21:8 21:12 | | 47:15 47:19 49:4 49:18 51:15 64:21 64:22 | | bit(2) 21:17 33:21 | |
| 65:7 65:9 65:11 65:11 65:14 65:18 65:20 | | 22:6 22:7 22:8 25:9 25:19 25:21 26:8 | | 68:14 69:1 78:11 79:16 79:17 86:6 | | black(1) 85:4 | |
| 65:22 66:11 66:14 66:16 66:16 66:19 | | 26:9 27:13 29:16 29:19 30:8 30:9 30:21 | | | | block(4) 8:12 8:13 74:25 74:25 | |
| 66:20 66:22 66:22 66:25 67:16 67:17 | | 30:24 31:3 31:19 33:18 33:23 34:11 34:2 | | background(3) 35:18 38:14 47:2 | | blocked(1) 32:11 | |
| 67:19 67:20 67:25 68:7 68:18 68:17 68:18 | | 35:5 35:6 35:8 35:12 35:13 35:21 35:24 | | badtke-berkow(1) 3:27 | | board(1) 88:10 | |
| 68:23 68:25 69:1 69:2 69:4 69:7 69:11 | | 36:21 37:6 37:16 38:4 38:11 40:16 40:23 | | balances(1) 63:15 | | boards(1) 63:11 | |
| 69:11 69:21 69:25 70:5 70:14 70:14 | | 41:12 42:1 42:17 43:17 44:7 44:13 44:25 | | balloon(2) 75:9 75:10 | | bobick(4) 71:12 71:17 71:19 71:24 | |
| 70:16 70:17 70:20 70:23 70:24 71:3 71:3 | | 46:7 47:25 49:5 49:15 49:15 49:18 49:24 | | banging(1) 64:6 | | bondholder(8) 2:20 6:4 14:17 14:23 14:24 | |
| 71:4 71:6 71:6 71:11 71:18 71:20 72:2 | | 51:23 52:8 52:12 52:15 52:17 53:7 53:8 | | bank(2) 5:23 76:1 | | 15:3 25:11 25:12 | |
| 72:10 72:18 72:22 73:10 73:15 73:21 74:5 | | 53:9 54:1 54:7 56:16 58:4 58:7 58:12 | | bankruptcy(3) 1:1 1:23 69:23 | | | |
| 74:6 74:17 74:17 74:19 74:20 75:5 75:11 | | 59:24 60:20 64:2 64:4 64:6 64:8 64:10 | | barnett(1) 4:34 | | bondholders(8) 12:19 12:21 15:6 25:7 | |
| 75:12 75:15 76:1 76:6 76:10 76:10 76:22 | | 64:12 65:15 66:1 66:14 66:14 66:14 66:1 | | barrack(41) 34:1 34:14 34:19 34:20 35:4 | | 25:19 25:21 25:25 27:1 | |
| 77:1 77:4 77:11 77:16 78:5 78:8 78:8 | | 66:17 67:1 69:5 69:23 70:13 71:7 71:15 | | 44:6 47:17 47:19 48:11 48:13 48:16 48:19 | | | |
| 78:10 78:14 78:19 78:19 78:20 80:11 | | 72:1 72:4 72:5 72:6 72:7 73:10 77:22 | | 48:22 48:25 49:25 50:10 52:3 52:17 53:5 | | book(1) 44:23 | |
| 80:12 80:14 80:15 80:17 80:18 80:24 81:1 | | 72:25 72:25 73:7 73:18 73:19 74:18 74:19 | | 53:12 55:12 56:9 57:14 58:10 61:12 65:7 | | books(2) 54:6 59:8 | |
| 81:7 81:14 81:17 81:21 81:24 82:1 82:1 | | 75:2 76:10 76:24 77:8 77:23 78:6 80:15 | | 66:3 67:21 70:7 71:10 71:13 72:21 73:6 | | borosh(1) 6:21 | |
| 82:5 82:8 82:10 82:10 82:16 82:12 82:18 | | 80:17 81:15 82:14 82:21 84:4 85:16 85:2 | | 73:9 73:12 75:25 80:12 80:20 83:2 83:7 | | both(45) 7:22 9:11 10:25 15:6 18:3 29:3 | |
| 82:22 | | 86:15 86:22 | | barrack's(6) 55:4 55:15 57:20 57:21 59:10 | | 29:5 30:10 33:19 34:12 36:12 36:12 38:15 | |
| and(38) 82:22 83:4 83:6 83:11 83:14 | | | | 69:21 | | 39:23 51:10 52:6 52:22 56:12 56:14 | |
| 83:16 83:18 83:21 84:7 84:12 84:19 85:4 | | area(2) 31:11 31:13 | | | | 58:18 63:1 63:4 63:5 63:7 63:9 63:11 | |
| 85:12 85:15 85:16 85:22 85:22 86:1 86:1 | | areas(1) 29:14 | | barry(1) 6:22 | | 63:13 63:15 66:1 66:15 70:20 72:14 75:16 | |
| 86:2 86:4 86:4 86:6 86:6 86:7 86:17 | | arguably(1) 33:11 | | barto(1) 4:48 | | 78:16 80:15 82:18 82:22 83:16 84:4 84:4 | |
| 86:23 87:3 87:7 87:12 87:19 87:21 87:23 | | argue(1) 27:10 | | based(4) 30:13 30:24 43:6 81:25 | | 84:24 86:23 87:21 88:8 | |
| 88:9 88:10 88:13 88:14 88:15 | | arguing(1) 82:11 | | basic(1) 35:19 | | | |
| | | argument(9) 30:10 31:1 39:10 56:20 59:16 | | basis(4) 49:12 57:6 81:9 86:24 | | botter(1) 4:26 | |
| andrew(5) 2:22 5:12 6:17 14:15 27:25 | | 61:22 62:2 66:23 79:19 | | battery(1) 3:7 | | bottom(2) 45:23 64:1 | |
| angela(1) 5:8 | | | | bayard(1) 4:11 | | brainstorming(1) 86:13 | |
| ann(1) 1:30 | | argumentation(1) 32:8 | | bear(5) 33:11 33:12 33:13 33:16 37:23 | | brant(1) 4:30 | |
| annie(1) 7:7 | | arguments(11) 18:7 23:11 26:21 29:10 | | bearing(1) 37:7 | | brass(1) 4:38 | |
| another(10) 16:5 19:17 28:9 44:11 50:19 | | 29:20 31:23 33:13 33:15 53:9 59:19 65:23 | | because(33) 10:3 12:13 13:1 13:8 14:25 | | breach(1) 45:8 | |
| 57:8 77:9 77:9 79:11 83:17 | | | | 15:1 15:23 20:19 25:24 26:8 32:9 32:24 | | break(5) 20:15 43:21 76:23 77:1 78:3 | |
| | | arise(3) 35:9 35:12 44:13 | | 33:8 33:10 34:25 43:14 44:12 44:10 49:2 | | brian(2) 4:5 34:3 | |
| answer(6) 11:19 57:10 60:24 68:7 74:5 | | around(6) 35:11 37:10 61:4 72:3 72:11 | | 56:7 57:8 58:6 58:20 59:12 65:6 65:10 | | brickley(1) 4:42 | |
| 87:24 | | 76:18 | | 73:14 73:22 74:2 74:5 82:14 86:3 87:12 | | brief(10) 8:23 11:4 57:5 57:21 59:7 61:7 | |
| | | | | | | 63:25 67:8 71:13 71:18 | |
| antarctica(1) 50:6 | | arrangements(3) 30:12 31:12 86:15 | | become(2) 29:11 32:9 | | | |
| any(36) 8:1 9:17 11:19 13:22 14:9 14:10 | | arrive(1) 81:15 | | becomes(1) 17:17 | | briefly(5) 12:13 25:6 26:22 38:19 45:14 | |
| 15:10 17:6 17:11 19:22 23:4 24:6 26:18 | | arsht(2) 1:28 7:7 | | been(44) 7:26 11:1 11:10 11:21 15:10 | | briefs(4) 11:5 19:15 59:15 59:19 | |
| 39:7 42:8 46:24 53:1 53:3 55:22 57:11 | | arthur(1) 5:37 | | 16:25 17:3 18:12 18:13 19:14 25:10 26:2 | | bring(3) 46:14 51:19 84:25 | |
| 59:18 59:20 62:17 62:23 62:23 66:25 68:1 | | aside(4) 29:9 32:19 70:15 81:3 | | 29:13 30:9 32:19 34:22 34:23 34:25 36:2 | | bringing(2) 84:19 85:13 | |
| 68:2 68:21 75:23 78:9 81:24 83:8 83:18 | | ask(10) 10:17 21:18 26:24 36:22 38:17 | | 41:7 42:20 43:5 43:8 43:9 45:1 45:2 47:3 | | broader(1) 23:2 | |
| 83:25 85:6 | | 47:19 54:25 69:25 71:9 87:24 | | 52:12 52:17 54:3 58:8 61:12 65:4 | | broadly(1) 43:12 | |
| | | | | 65:14 68:8 68:9 68:9 69:11 74:23 74:24 | | bryant(1) 2:16 | |
| anybody(5) 36:25 76:19 76:22 83:8 85:5 | | asked(6) 13:13 21:12 58:2 59:17 59:19 | | 76:11 78:19 81:8 | | buchanan(1) 3:19 | |
| anyone(4) 25:2 46:3 72:3 77:1 | | 59:20 | | | | built(1) 37:6 | |
| anything(8) 19:11 24:9 25:4 49:7 68:7 | | | | before(27) 1:21 1:22 8:20 18:23 19:20 | | bullen(1) 5:6 | |
| 76:19 81:12 87:5 | | asking(6) 17:10 36:25 52:9 52:9 72:1 77:1 | | 22:8 22:12 27:3 28:15 39:6 40:5 45:15 | | bunch(1) 43:19 | |
| | | aspect(3) 79:20 84:14 84:21 | | 50:10 53:7 53:25 54:18 62:4 62:5 66:25 | | burden(5) 33:11 33:12 33:14 33:16 44:20 | |
| apart(1) 26:12 26:15 | | assert(7) 63:6 63:7 63:10 63:11 63:13 | | 67:24 67:24 71:13 74:1 74:2 74:4 77:7 | | burdens(1) 82:21 | |
| appeal(8) 41:3 50:18 51:4 59:12 75:17 | | 63:15 80:4 | | 77:19 | | | |
| 75:20 75:21 76:1 | | | | begin(1) 7:9 | | | |
| | | asserted(3) 18:9 25:25 66:6 | | | | | |
| appeals(1) 75:24 | | asserting(1) 44:7 | | | | | |
| appearances(3) 4:17 5:1 6:1 | | | | | | | |

# NORTEL.1.29.14.P.DOC

| Word | Page:Line |
|---|---|
| burping(1) 37:19 | |
| business(3) 30:2 30:12 42:5 | |

but(112) 7:6 7:19 9:20 11:12 11:22 12:2 12:13 13:1 14:19 15:1 15:11 15:19 16:11 16:21 16:24 18:11 19:6 19:7 19:11 19:23 20:3 20:11 21:7 21:10 21:16 21:25 23:7 23:23 24:4 24:8 24:16 26:6 26:14 27:6 27:11 30:10 31:23 32:11 32:14 33:4 33:1 35:6 35:18 36:5 36:9 36:24 37:24 38:2 38:15 39:20 41:25 42:8 43:7 43:21 44:2 44:8 44:24 46:2 46:24 47:12 47:22 48:20 49:2 49:8 49:10 49:14 49:23 50:1 51:9 51:25 53:15 56:1 56:25 58:5 58:25 60:1 60:24 63:21 64:6 64:11 64:20 65:16 65:23 68:1 68:4 68:12 68:13 69:23 72:14 72:22 73:14 73:21 74:2 74:11 75:11 78:1 79:25 80:9 81:9 81:23 82:4 82:7 83:13 84:1 84:16 85:2 85:11 86:4 86:15 86:18 86:21 87:20

buy-in(1) 12:2
cabling(1) 85:7
calculations(1) 81:3
call(8) 8:3 10:11 45:10 65:14 76:9 81:4 83:19 88:17

called(2) 55:24 60:22
calls(2) 42:2 70:10
calm(1) 65:15
came(3) 27:3 41:7 70:1

can(48) 12:23 12:25 14:19 16:6 17:16 17:17 20:11 20:24 21:17 27:14 30:5 30:24 32:7 34:14 37:19 41:2 48:9 48:10 50:7 51:17 54:20 55:9 57:19 59:22 59:25 60:2 60:22 65:24 66:3 66:18 71:2 75:19 76:1 78:2 80:9 82:5 82:24 83:2 83:5 84:23 85:7 85:11 85:25 87:4 87:5 87:5 87:21 88:8

canada(21) 6:21 6:25 8:13 9:9 15:6 23:15 24:1 27:11 29:20 31:4 37:5 60:9 63:7 70:2 70:3 76:25 78:20 84:8 86:15 86:21 87:18
canada's(2) 60:10 60:11

canadian(43) 12:11 13:9 13:18 15:4 15:16 18:9 18:22 21:10 21:25 22:21 23:5 23:8 23:25 24:20 26:2 26:10 27:4 29:12 30:17 31:2 32:14 33:18 34:13 35:25 38:25 39:1 39:3 39:6 39:7 39:22 45:15 52:5 57:25 58:1 60:8 61:7 61:18 61:20 61:23 62:7 64:11 72:4 81:4

cannot(3) 24:18 60:1 69:4
canvass(1) 71:11
canvassing(1) 84:3
can't(11) 13:11 33:21 36:16 49:7 52:25 56:4 66:16 66:19 69:4 73:17 82:2

capital(6) 4:37 5:27 5:27 5:40 6:12 6:29
capitol(1) 6:8
care(1) 85:14
carry(2) 25:23 42:17
carve(3) 10:3 22:5 27:7
carves(1) 21:12

case(54) 1:5 7:19 9:8 10:22 17:2 22:11 25:18 25:19 34:23 36:21 36:23 37:24 38:2 38:9 40:18 45:9 45:10 45:16 45:25 46:2 47:15 48:7 48:8 48:10 49:1 49:4 49:8 49:13 49:15 50:15 56:6 57:1 57:9 59:2 59:3 59:4 59:13 63:18 67:4 68:16 68:23 69:14 69:18 69:25 70:8 70:9 70:9 70:10 73:25 74:4 74:17 76:2 76:17 77:10

case-in-chief(2) 53:23 67:5
cases(7) 19:12 37:18 48:5 48:14 59:5 60:5 70:2

cases-in-chief(1) 54:1
cause(1) 67:2
caw(1) 6:21
caw-canada(1) 6:20

ccc(29) 2:42 8:10 12:15 12:25 13:6 13:12 13:17 14:6 14:20 16:24 18:12 18:23 20:2 22:23 22:23 23:7 23:16 23:25 24:1 24:9 24:19 25:9 25:17 25:20 26:8 26:16 28:17 43:10 80:3

ccc's(1) 43:23
certain(2) 25:15 84:20
certainly(5) 53:19 61:4 62:19 71:3 80:4
certainty(1) 80:22
certification(1) 89:1
certify(1) 89:2
challenges(1) 44:17
challenging(2) 41:24 41:25
chance(3) 51:25 66:5 78:10
change(4) 55:21 56:19 56:21 57:8
changed(3) 65:8 65:9 68:6
chapter(1) 1:10
characterization(1) 60:17
chase(1) 2:23
chess(2) 74:25 74:25
chief(1) 19:13
choice(1) 51:20
chris(1) 2:6
chung(1) 5:24
chunks(1) 29:9
circulate(1) 20:11
circulates(1) 83:3
circumstance(2) 44:11 70:10
circumstances(1) 50:11
citigroup(2) 4:29 4:29

claim(12) 39:22 39:22 43:17 44:20 45:21 46:8 50:24 64:1 64:4 80:13 80:14 81:10

claimants(10) 4:4 12:8 33:12 33:13 34:15 39:11 40:1 40:3 40:16 40:16

claims(106) 12:12 15:6 18:4 18:8 18:8 21:11 23:9 23:11 29:3 29:5 29:10 29:11 29:12 29:16 29:17 29:21 30:23 30:23 31:19 31:21 32:8 32:13 32:17 32:17 32:25 33:9 33:12 33:13 33:14 33:19 34:13 35:22 35:23 35:25 36:8 38:25 39:1 39:6 39:13 44:18 44:19 44:22 45:7 45:8 45:15 45:24 47:16 47:17 49:15 51:9 52:23 53:4 53:12 53:19 54:4 55:19 56:5 56:7 56:12 56:14 57:25 58:1 58:9 58:12 58:13 58:19 58:24 59:4 59:6 59:8 59:15 59:16 59:16 59:18 59:19 59:21 59:25 60:5 61:20 61:20 62:2 63:1 63:5 63:5 63:20 63:24 64:6 64:12 64:17 65:1 65:1 65:7 65:10 66:14 66:16 66:16 66:19 66:20 66:20 68:9 70:20 71:2 72:5 81:4 82:10 82:16

claims-only(1) 31:18
claims-related(1) 31:15
clarification(2) 28:5 76:4
clarify(1) 81:14
classes(2) 30:3 30:5
clear(12) 20:13 32:6 36:3 53:24 56:2 57:19 58:1 61:6 61:24 62:3 63:18 67:6

clearer(3) 32:9 61:25 67:7
clearly(11) 8:19 52:19 58:4 58:5 58:12 61:16 66:15 66:22 67:18 67:25 70:3

cleary(1) 1:35
clerk(1) 79:8
clients(7) 20:6 21:18 22:4 43:9 43:9 52:17 55:4

close(1) 73:22
closed(1) 73:4
closer(1) 74:21
closing(7) 20:24 21:3 23:11 24:10 25:16 26:7 59:15

cogent(1) 65:23
cognizant(2) 52:22 52:23
cokes(1) 37:14

colleague(1) 86:18
collier(1) 5:20
column(1) 21:8
combinations(1) 81:7
come(20) 10:23 24:4 26:25 38:13 45:7 45:24 51:15 51:20 54:22 55:22 68:13 69:20 74:1 74:2 74:8 74:25 75:5 75:6 75:7 78:11

comes(4) 23:12 56:8 65:9 69:9
coming(6) 16:20 17:16 34:23 35:7 40:25 54:17

comingling(1) 58:6
commence(4) 38:22 38:24 57:23 57:24
commencemen(1) 41:22
commences(1) 7:25
comment(2) 27:16 49:19
commented(1) 60:6
comments(7) 14:10 14:19 15:17 65:17 76:25 78:8 82:22

commercial(3) 37:18 48:6 48:15
committee(3) 2:4 4:24 16:7
common(11) 22:2 47:1 53:13 56:1 56:1 56:15 60:21 63:4 66:15 66:17 70:22

communicat(1) 83:17
communication(1) 87:9
communications(1) 7:22
companies(4) 30:7 30:12 30:24 50:4
company(1) 4:41
comparable(1) 23:22
complaints(1) 23:4
complete(2) 12:2 69:7
completely(4) 14:18 17:5 72:10 82:16
complex(5) 48:4 48:5 49:15 49:16 50:3
complexity(2) 48:1 50:15
complicated(3) 33:17 33:21 37:18
complication(1) 37:25
complying(1) 72:17
composed(1) 30:2
comprehensive(1) 9:19
compromise(1) 27:19
compromised(3) 25:21 25:22 52:18
compromises(2) 16:13 16:14
compromising(2) 25:13 25:19
conaway(1) 3:11
concepts(1) 65:22
concern(2) 73:3 73:14
concerned(3) 50:20 58:11 86:8
concerns(6) 11:19 12:1 14:5 18:6 78:9
concert(1) 15:14
concession(3) 14:23 16:23 21:16
concessions(1) 15:25
conclude(2) 66:6 81:22
concluded(2) 69:4 71:9
conclusion(2) 8:22 79:12
concrete(1) 87:22
conduct(3) 35:17 42:10 42:19
conducted(3) 9:20 40:22 54:9
conducting(1) 51:14
confer(7) 10:6 13:3 41:17 42:7 68:25 78:10 86:1

conference(10) 7:19 7:23 8:3 8:23 10:17 13:3 42:4 77:10 79:25 83:21

conferences(1) 9:15
conferring(2) 59:23 78:20
confines(1) 40:19
confirming(1) 40:20
conflict(2) 50:16 55:4
conflicts(1) 50:14
confronting(1) 72:6
connection(2) 29:25 61:10
consensual(1) 9:11
consensus(1) 42:9
consent(1) 17:2
consequence(1) 19:18

consider(2) 29:21 82:24
considerable(4) 29:14 29:18 31:16 66:2
considered(2) 31:21 58:16
considering(1) 87:3
consistent(1) 72:10
constituencies(1) 15:7
constructive(1) 80:18
cont(1) 5:35
contain(2) 58:25 59:1
contemplate(1) 23:12
contemplated(6) 32:2 39:11 42:20 67:3 68:19 68:21

contemplates(2) 59:14 67:21
contemporaneous(1) 37:20
contested(1) 70:5
context(7) 35:15 36:19 38:11 63:17 68:11 79:24 81:11

continent(1) 50:6
continue(6) 11:15 38:24 57:25 80:18 80:19 85:23

continued(5) 2:2 3:2 4:2 5:2 6:2
continues(1) 7:15
continuing(1) 67:16
contract(1) 75:10
contracted(1) 75:11
contrary(2) 15:13 24:11
contributed(1) 50:23
contribution(1) 30:13
contributions(1) 63:9
control(3) 46:19 49:8 63:3
controlled(1) 30:20
controversial(1) 19:7
convenience(1) 56:17
convention(1) 37:15
conversations(1) 12:21
conveyed(1) 29:25
convincingly(1) 65:5
cooperation(3) 65:13 80:19 88:9
cooperative(2) 17:12 80:18
copier(1) 86:10
copies(1) 20:11
copy(1) 86:10
cord(4) 1:30 7:4 7:5 7:7
core(9) 15:8 16:1 29:22 31:1 31:25 42:7 43:11 45:19 45:19

correct(3) 60:18 69:22 89:2
cough(2) 63:23 75:6
could(24) 8:9 11:5 13:16 13:17 15:22 16:8 20:20 23:5 25:25 27:10 32:3 36:8 37:24 38:19 51:5 65:5 68:4 68:4 72:3 82:16 84:1 85:21 86:17 87:24

couldn't(4) 34:24 61:25 67:7 88:15
counsel(13) 7:23 8:1 8:22 18:23 20:3 20:5 37:13 66:1 72:11 83:14 84:4 84:17 88:6

counter-productive(2) 69:12 71:4
counting(1) 31:19
countries(3) 31:24 50:5 50:19
couple(2) 18:24 78:12
course(8) 10:19 11:9 13:14 28:3 44:13 52:21 62:4 66:16

# NORTEL.1.29.14.P.DOC

| Word | Page:Line |
|---|---|
| court(193) | 1:1  7:3  7:10  7:14  7:18  7:21 |
|  | 8:11  8:14  8:16  8:24  9:2  9:4  9:5  10:8 |
|  | 10:19  10:24  11:8  11:20  11:24  12:10  12:13 |
|  | 12:16  14:1  14:4  14:11  14:14  14:22  15:21 |
|  | 15:24  17:9  17:18  17:20  17:25  18:15  18:18 |
|  | 19:6  19:13  19:17  19:25  20:23  22:12  22:15 |
|  | 24:7  24:12  24:15  24:24  25:1  27:9  27:15 |
|  | 27:18  27:23  28:2  28:7  28:10  28:13  28:16 |
|  | 28:20  29:20  29:21  30:25  31:7  31:22  32:1 |
|  | 33:24  34:4  34:9  34:16  34:18  35:16  35:20 |
|  | 36:15  38:5  38:10  38:13  38:21  39:7  39:13 |
|  | 40:23  40:23  40:24  41:4  41:6  41:7  41:8 |
|  | 41:10  41:13  41:14  41:20  41:22  41:23 |
|  | 42:16  45:15  45:18  45:20  46:4  46:10  47:20 |
|  | 47:24  48:3  48:4  49:1  50:25  52:1  52:18 |
|  | 53:25  56:17  57:17  57:22  58:2  58:2  58:5 |
|  | 58:6  58:11  59:17  59:18  59:20  60:1  61:5 |
|  | 61:23  67:18  68:3  69:1  69:10  69:23  69:24 |
|  | 70:1  70:2  70:3  70:18  72:5  72:12  72:23 |
|  | 73:16  73:19  74:1  74:2  74:3  74:15  74:17 |
|  | 74:22  75:17  75:18  75:19  75:22  76:21 |
|  | 76:23  76:24  77:6  77:9  77:17  77:18  77:25 |
|  | 78:4  78:14  78:17  78:21  78:24  79:1  79:4 |
|  | 79:6  79:9  79:17  79:21  80:5  81:14  81:21 |
|  | 82:14  82:20  83:10  83:13  83:16  83:24  84:1 |
|  | 84:10  84:23  85:12  85:19  86:2  86:7  86:14 |
|  | 86:15  87:1  87:4  87:12  87:12  87:15  87:23 |
|  | 88:2  88:4  88:11  88:13  88:19  88:21 |
| court-to-court(2) | 7:21  87:8 |
| courtroom(9) | 1:12  25:2  43:18  79:14  81:6 |
|  | 84:17  85:7  86:2  86:19 |
| courtrooms(2) | 85:20  88:10 |
| courts(56) | 8:8  9:12  9:16  9:17  9:23  10:16 |
|  | 11:13  12:14  12:23  13:4  13:22  14:9  14:10 |
|  | 15:2  15:24  16:15  17:7  19:22  19:24  24:6 |
|  | 27:1  29:7  29:24  30:1  39:8  42:11  42:13 |
|  | 50:13  50:18  51:19  52:8  52:11  52:14  52:19 |
|  | 52:21  53:5  56:23  57:19  60:25  61:2  61:18 |
|  | 61:21  62:1  62:13  65:24  67:1  67:5  69:8 |
|  | 70:17  72:4  72:14  73:2  75:12  77:21  78:2 |
|  | 78:9 |
| court's(3) | 17:14  53:1  78:7 |
| covalent(2) | 4:33  4:33 |
| creation(1) | 30:14 |
| credibility(5) | 37:1  70:8  70:9  74:9  74:10 |
| creditor(5) | 21:5  22:11  26:9  26:16  26:18 |
| creditors(8) | 2:5  4:25  16:7  22:11  27:2  27:8 |
|  | 40:16  43:16 |
| crichlow(1) | 2:37 |
| cringe(1) | 50:16 |
| cross(2) | 43:22  70:12 |
| cross-examination(3) | 43:25  54:12  57:7 |
| cross-examine(4) | 43:22  43:25  44:8  44:9 |
| cross-examining(1) | 44:10 |
| cross-reference(1) | 63:23 |
| crt(1) | 6:12 |
| curtailing(1) | 58:14 |
| cut(1) | 66:3 |
| daily(3) | 86:10  86:16  86:21 |
| damages(1) | 46:9 |
| daniel(3) | 3:40  5:32  5:46 |
| daren(1) | 5:16 |
| data(1) | 1:44 |
| date(9) | 16:5  20:9  41:22  62:25  67:15  67:16 |
|  | 67:19  83:20  89:7 |
| dates(4) | 19:3  19:15  41:21  47:21 |
| david(2) | 2:37  4:26 |
| day(6) | 36:25  41:4  65:5  74:11  86:23  87:11 |
| days(37) | 32:18  32:19  33:3  36:17  37:24 |
|  | 47:14  48:7  48:10  52:20  67:17  67:20  69:14 |
|  | 69:15  69:18  69:19  72:20  73:4  73:10  73:13 |
|  | 73:20  73:21  74:21  75:13  75:14  75:17 |
|  | 75:18  80:15  81:16  81:16  81:23  81:25  82:3 |
|  | 82:5  82:9  82:21  83:25  84:4 |
| dead(1) | 69:18 |

| Word | Page:Line |
|---|---|
| deadlines(1) | 41:15 |
| deal(19) | 8:9  17:16  30:6  35:13  44:14  44:14 |
|  | 44:15  45:21  49:17  55:18  55:19  55:20 |
|  | 67:22  72:2  74:16  75:1  81:9  84:15  84:21 |
| dealing(9) | 18:3  29:2  31:4  33:18  45:21 |
|  | 51:22  53:1  72:24  79:11 |
| deals(2) | 12:18  12:19 |
| dealt(8) | 30:21  41:7  52:22  58:8  72:13 |
|  | 72:14  75:1  81:17 |
| debate(1) | 40:7 |
| debating(1) | 66:1 |
| debenture(2) | 3:33  5:44 |
| debt(3) | 30:24  64:5  64:10 |
| debtor(2) | 30:17  64:11 |
| debtors(36) | 1:14  1:28  7:8  8:13  8:19  12:2 |
|  | 12:7  12:11  12:12  12:21  15:16  17:24  18:8 |
|  | 18:22  21:10  22:21  23:7  23:16  23:18  24:20 |
|  | 28:25  29:12  29:17  30:11  30:14  30:17  31:2 |
|  | 31:3  31:10  33:18  40:9  40:20  52:5  61:8 |
|  | 61:23  71:20 |
| debtor's(1) | 62:7 |
| debts(1) | 31:2 |
| december(1) | 42:8 |
| decide(3) | 59:17  70:14  83:12 |
| decided(5) | 12:22  52:11  52:19  68:3  69:8 |
| decision(5) | 62:5  67:7  69:24  70:1  82:6 |
| decisions(1) | 61:24 |
| default(3) | 20:18  21:13  21:17 |
| defend(1) | 21:11 |
| defendants(1) | 23:9 |
| defense(1) | 45:10 |
| defer(6) | 12:7  13:17  14:19  16:5  34:13 |
| deferred(1) | 13:2 |
| defined(2) | 26:11  26:14 |
| definition(1) | 39:24 |
| degree(2) | 46:19  80:1 |
| deity(1) | 51:20 |
| delaware(10) | 1:2  1:14  3:35  4:13  7:2  8:14 |
|  | 20:3  71:11  78:15  87:12 |
| delay(3) | 32:24  33:5  51:5 |
| delete(3) | 12:24  13:16  27:19 |
| deliver(1) | 24:21 |
| delivered(1) | 61:9 |
| demanded(1) | 15:22 |
| demise(1) | 49:23 |
| demonstrated(1) | 70:21 |
| denied(1) | 20:8 |
| dentons(1) | 6:25 |
| depend(6) | 30:9  63:2  63:8  63:10  63:11 |
|  | 63:13 |
| dependent(1) | 64:25 |
| depends(1) | 35:2 |
| deposed(1) | 11:1  54:3 |
| deposition(5) | 9:10  9:23  41:12  59:2  67:24 |
| depositions(8) | 11:12  19:2  36:7  45:5  45:6 |
|  | 52:25  54:5  54:9 |
| derek(5) | 1:29  3:6  17:23  28:24  86:12 |
| described(1) | 32:10 |
| design(1) | 63:12 |
| designated(1) | 76:9 |
| designations(1) | 54:5 |
| detail(2) | 55:22  66:2 |
| detailed(3) | 10:1  44:22  54:23 |
| determination(2) | 40:15  50:13 |
| determine(6) | 38:7  39:14  41:17  42:18  46:4 |
|  | 49:4 |
| deviate(1) | 45:9 |
| deviation(1) | 87:13 |
| dialog(1) | 85:23 |
| diaz(1) | 1:44 |
| dictated(1) | 65:2 |

| Word | Page:Line |
|---|---|
| did(9) | 9:8  10:3  15:23  22:15  39:21  50:1 |
|  | 65:6  83:19  87:19 |
| didn't(5) | 15:25  28:15  50:21  50:24  53:1 |
| diet(1) | 37:14 |
| differ(1) | 22:1 |
| difference(2) | 45:14  57:11 |
| differences(1) | 80:8 |
| different(19) | 19:6  20:14  23:20  26:8  30:2 |
|  | 30:8  31:22  31:24  40:24  44:3  44:19  45:16 |
|  | 45:17  45:18  48:13  48:14  56:25  71:15 |
|  | 72:12 |
| differentiating(1) | 45:15 |
| difficult(6) | 33:10  36:23  50:12  82:15  86:3 |
|  | 87:18 |
| difficulty(1) | 43:10 |
| digression(1) | 66:20 |
| dimsdale-gill(1) | 5:8 |
| dine(1) | 5:16 |
| dining(1) | 80:9 |
| direct(2) | 10:23  11:6 |
| directed(2) | 52:20  57:18 |
| direction(3) | 46:6  65:24  67:18 |
| directions(1) | 47:25  79:24 |
| directive(3) | 52:21  62:15  67:25 |
| directly(1) | 50:4 |
| directors(2) | 21:11  63:11 |
| directs(2) | 38:21  57:22 |
| disagree(3) | 12:5  62:20  74:11 |
| disagreemen(3) | 12:9  13:21  13:23 |
| disappeared(1) | 7:6 |
| discharged(1) | 37:8 |
| discovery(5) | 19:1  20:7  39:18  40:2  41:12 |
| discreet(1) | 56:16 |
| discretion(4) | 29:7  39:9  61:21  72:15 |
| discuss(3) | 28:3  78:9  79:13 |
| discussed(1) | 15:16 |
| discussing(1) | 52:25 |
| discussion(4) | 16:17  28:4  51:16  78:23 |
| discussions(3) | 33:7  35:10  37:11  69:4  69:7 |
|  | 85:8  85:11  85:16 |
| disparate(1) | 16:11 |
| disproportionate(1) | 49:3 |
| dispute(8) | 12:22  24:6  29:24  30:6  36:21 |
|  | 37:16  43:19  45:17 |
| disputed(1) | 60:2 |
| disputes(1) | 46:24 |
| distinct(4) | 17:4  39:24  52:12  58:12 |
| distinction(1) | 25:10 |
| distinctly(1) | 53:15 |
| distribution(1) | 22:3 |
| distributions(1) | 22:10 |
| district(1) | 1:2 |
| divide(1) | 33:21 |
| divided(2) | 10:7  13:9 |
| divides(1) | 23:10 |
| dividing(2) | 23:4  30:5 |
| dla(1) | 2:42 |
| doctor(1) | 46:1 |
| document(3) | 9:8  15:16  45:4 |
| documents(1) | 45:5 |
| does(21) | 9:21  18:11  19:12  19:19  22:5  23:9 |
|  | 26:11  26:14  29:4  36:11  40:22  43:25  49:3 |
|  | 53:3  58:17  61:17  62:4  66:21  70:18  75:5 |
|  | 83:14 |
| doesn't(13) | 18:5  22:5  22:9  24:1  26:14 |
|  | 53:20  54:12  56:9  56:18  56:19  57:9  68:22 |
|  | 75:18 |
| dog(1) | 61:5 |
| doing(4) | 15:17  32:7  35:25  62:13 |
| done(14) | 26:3  34:8  40:25  42:17  53:6 |
|  | 54:20  54:22  62:16  69:11  70:11  70:23  73:4 |
|  | 75:4  88:15 |

| Word | Page:Line |
|---|---|
| don't(48) | 8:21  11:21  12:5  12:13  14:6 |
|  | 18:15  18:16  19:6  19:10  21:7  21:16  21:20 |
|  | 23:13  23:18  24:9  24:13  25:20  29:22  29:22 |
|  | 31:21  36:24  40:9  46:2  46:2  46:24  48:25 |
|  | 55:14  62:22  65:25  66:3  66:25  68:2  71:20 |
|  | 72:3  72:24  73:17  73:18  73:19  74:4  74:5 |
|  | 74:10  75:18  76:19  76:20  80:11  82:21  83:8 |
|  | 86:24 |
| door(2) | 73:4  84:18 |
| dorsey(1) | 3:12 |
| doubt(5) | 55:22  62:3  62:17  68:2  72:1 |
| doubtful(1) | 71:3 |
| dow(1) | 4:41 |
| down(14) | 13:19  20:15  32:3  32:10  37:23 |
|  | 43:21  51:21  70:14  71:11  73:1  74:17  75:12 |
|  | 84:10  86:20 |
| downplay(1) | 11:22 |
| draft(3) | 54:18  62:3  62:14 |
| due(3) | 45:8  47:22  75:19 |
| duration(1) | 52:20 |
| during(3) | 10:14  33:8  78:3 |
| dwell(1) | 12:14 |
| each(26) | 15:22  20:14  21:4  23:20  29:24 |
|  | 30:2  30:3  30:5  30:13  30:16  37:8  40:24 |
|  | 43:17  43:20  46:16  58:24  58:25  59:2  59:2 |
|  | 59:6  60:14  61:23  75:8  78:2  86:23  86:24 |
| earlier(1) | 9:13 |
| early(1) | 9:9 |
| easier(1) | 79:20 |
| easily(1) | 12:23 |
| echo(1) | 34:22 |
| economic(3) | 16:10  17:4  26:9 |
| economically(1) | 17:5 |
| ecro(1) | 1:42 |
| effect(5) | 21:7  21:24  25:12  29:9  75:5 |
| effective(1) | 80:24 |
| effectively(1) | 27:4 |
| efficiency(1) | 39:23 |
| efficient(4) | 17:13  18:4  29:3  80:24 |
| effort(1) | 88:16 |
| efforts(1) | 88:16 |
| ehmer(1) | 5:28 |
| eight(1) | 66:14 |
| either(7) | 9:18  10:10  10:15  24:3  24:4  44:5 |
|  | 59:23 |
| electronic(2) | 1:49  89:3 |
| elements(1) | 26:4 |
| elevated(1) | 26:18 |
| eliminate(2) | 55:3  55:11 |
| else(4) | 21:22  67:4  76:19  76:22 |
| email(2) | 20:10  37:19 |
| embark(1) | 56:4 |
| emea(47) | 3:5  8:10  12:2  12:7  12:18  14:4 |
|  | 15:4  16:8  17:24  18:8  23:17  23:18  26:12 |
|  | 26:13  28:17  28:25  29:12  29:17  30:11 |
|  | 30:23  31:2  31:4  31:10  32:13  32:16  32:17 |
|  | 33:12  33:18  34:11  38:25  40:15  52:7  52:8 |
|  | 57:25  60:13  60:17  61:20  61:20  61:3  63:4 |
|  | 63:6  63:10  64:18  66:16  66:20  68:23  71:20 |
| emea's(1) | 64:1 |
| emphasize(2) | 36:16  80:19 |
| emphasizing(1) | 71:16 |
| employees(1) | 5:36 |
| enabled(1) | 9:11 |
| end(14) | 9:4  10:15  11:11  11:18  21:4  21:14 |
|  | 21:15  21:19  36:25  44:19  56:10  69:1  69:20 |
|  | 87:11 |
| endorse(1) | 53:25 |
| endorsement(2) | 40:13  79:24 |
| engaging(1) | 42:3 |
| enough(4) | 36:16  36:17  36:18  87:7 |
| enrichment(1) | 46:8 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| ensure(8) 16:6 40:17 58:4 59:25 73:3 83:13 85:11 85:21 | | exercising(1) 47:23 | | final(9) 19:4 33:2 38:12 38:13 51:11 72:19 76:13 76:14 76:15 | | four(4) 40:6 56:18 57:1 64:22 | |
| | | exerted(1) 63:3 | | | | fourth(1) 21:8 | |
| enter(1) 19:9 | | exhibit(3) 19:16 54:6 59:8 | | finalize(1) 19:1 | | fourthly(1) 53:21 | |
| entered(4) 15:2 15:21 17:1 60:14 | | exist(1) 43:12 | | financial(2) 46:5 46:21 | | framework(6) 12:3 12:4 51:14 51:14 72:16 72:16 | |
| entering(1) 10:4 | | existence(1) 34:12 | | find(1) 83:14 | | | |
| entire(3) 12:24 42:24 51:5 | | expand(2) 75:8 75:9 | | findings(1) 49:9 | | fred(1) 2:14 | |
| entirely(2) 57:9 70:15 | | expanded(2) 25:20 75:9 | | fine(9) 18:17 21:7 21:24 24:4 27:6 38:6 79:21 86:8 87:6 | | friday(1) 77:24 | |
| entirety(1) 16:21 | | expansion(1) 68:10 | | | | friend(3) 54:12 70:7 71:18 | |
| entities(1) 30:14 | | expect(3) 19:1 19:7 31:21 | | finger(1) 2:5 | | friends(3) 53:25 58:21 78:20 | |
| entitled(2) 52:17 60:9 | | expectation(1) 19:4 | | fingertips(1) 28:15 | | from(55) 7:23 8:9 8:10 8:12 16:14 17:1 23:20 24:10 26:12 26:15 33:5 33:15 34:1 34:5 35:4 35:16 37:18 39:11 45:6 45:9 | |
| envisioned(1) 9:20 | | expects(1) 70:8 | | finish(3) 18:11 52:25 66:9 | | | |
| equally(2) 21:5 27:2 | | experience(1) 84:19 | | finished(1) 66:4 | | | |
| ernst(1) 3:18 | | experienced(1) 87:19 | | finishes(1) 57:12 | | 45:16 45:17 46:1 50:5 53:24 56:6 56:11 | |
| especially(1) 47:12 | | expert(18) 11:9 11:11 11:12 19:17 30:10 31:9 31:13 31:18 37:25 45:17 46:17 46:2 | | finite(1) 75:6 | | 63:6 64:1 64:3 64:15 64:23 66:6 66:7 66:19 66:20 67:2 67:18 68:15 70:4 71:15 76:25 79:7 80:4 80:6 80:12 80:12 82:22 84:14 84:22 85:7 86:23 87:11 87:12 89:3 | |
| esq(33) 1:29 1:30 1:36 1:37 2:6 2:13 2:15 2:22 2:29 2:37 2:43 2:44 3:6 3:12 3:20 3:26 3:27 3:28 3:34 3:40 4:5 4:6 4:12 4:21 4:26 5:6 5:8 5:12 5:16 5:46 6:7 6:13 | | experts(8) 10:22 16:14 47:8 47:8 47:9 51:12 54:10 73:19 | | first(18) 10:22 12:14 12:17 12:18 28:8 33:15 33:15 38:15 44:6 51:8 55:18 55:21 57:13 61:3 71:21 71:24 80:2 81:9 | | | |
| | | | | firstly(3) 18:25 52:6 52:9 | | front(2) 21:14 56:10 | |
| | | explicit(1) 22:5 | | fitting(1) 72:18 | | front-end(1) 19:18 | |
| | | explore(1) 87:3 | | five(6) 22:7 40:12 45:13 45:13 57:1 64:22 | | frustration(3) 49:1 49:2 49:2 | |
| essential(1) 43:10 | | expressed(2) 12:1 14:5 | | flat(1) 85:3 | | fsd(2) 46:10 46:12 | |
| essentially(7) 20:15 20:19 20:25 30:18 34:6 54:14 58:21 | | expressing(1) 83:8 | | flattered(1) 27:13 | | full(5) 26:1 32:20 35:5 35:6 40:18 | |
| | | expressly(1) 24:17 | | flexibility(1) 46:5 | | fully(4) 51:6 52:21 52:23 69:24 | |
| establish(1) 63:17 | | extend(4) 55:9 68:13 70:24 81:20 | | flexible(2) 84:6 85:13 | | function(2) 47:20 47:23 | |
| established(1) 12:3 | | extends(1) 88:9 | | floor(2) 1:31 2:31 | | fundamental(4) 25:10 42:22 42:25 67:3 | |
| estate(8) 16:3 18:9 18:9 29:12 29:13 43:16 43:17 43:18 65:10 | | extensive(2) 45:4 45:5 | | flow(1) 28:22 | | fundamentally(5) 53:21 56:19 56:25 57:3 63:2 | |
| | | extent(10) 44:8 53:4 55:25 56:16 56:20 57:16 58:3 59:22 61:25 70:22 | | focus(1) 70:4 | | | |
| estates(6) 16:8 17:6 20:14 20:14 20:21 43:13 | | extra(1) 80:25 | | folding(1) 9:24 | | funding(2) 37:10 37:12 | |
| | | extreme(1) 69:12 | | folks(2) 86:22 87:21 | | further(8) 10:5 19:8 25:4 41:18 41:20 59:14 65:24 87:3 | |
| esther(1) 5:24 | | eye(1) 73:15 | | followed(3) 9:13 39:13 40:2 | | | |
| et.al(2) 1:10 6:21 | | facilitate(3) 49:13 86:21 87:5 | | following(1) 41:16 | | future(1) 49:5 | |
| etc(1) 54:19 | | facilitated(1) 85:11 | | follows(4) 39:2 52:6 60:20 61:17 | | gallagher(2) 4:4 5:11 | |
| even(10) 17:10 24:6 50:16 53:12 66:19 69:4 83:16 85:6 86:10 87:9 | | fact(24) 9:21 15:5 15:19 15:20 16:12 16:19 34:10 37:4 37:24 40:8 40:11 40:22 44:7 50:17 52:22 54:2 55:14 57:17 57:18 58:16 59:13 59:23 60:12 65:13 | | footnote(21) 12:15 12:24 13:10 13:13 13:16 16:18 16:23 20:17 20:18 20:21 21:16 24:3 24:13 24:14 24:16 25:14 26:6 26:23 27:20 28:14 63:25 | | general(1) 64:22 | |
| | | | | | | generally(2) 11:2 23:3 | |
| event(5) 42:8 53:3 55:7 68:1 81:24 | | | | | | geoffrey(1) 1:22 | |
| | | | | | | george(1) 6:21 | |
| every(8) 17:12 25:7 39:15 50:5 58:10 69:5 70:4 72:11 | | | | for(173) 1:2 1:28 2:4 2:20 2:35 2:42 3:4 3:18 3:33 4:19 4:24 4:29 4:33 4:37 4:41 5:4 5:15 5:19 5:23 5:26 5:31 5:35 5:40 5:44 6:4 6:8 6:12 6:16 6:20 6:25 6:29 7:6 7:6 7:24 8:4 10:17 10:22 12:23 13:1 13:8 14:3 14:6 14:8 14:20 14:22 14:24 17:6 17:11 17:14 17:23 18:2 18:3 18:22 18:23 19:6 19:12 19:15 19:19 20:2 21:13 22:5 22:5 22:13 22:20 23:11 25:20 27:7 27:8 27:10 27:19 28:5 28:24 29:4 29:7 31:17 32:11 32:13 32:19 32:22 32:25 33:10 35:16 36:25 37:6 38:7 38:17 39:9 39:17 39:22 42:2 42:15 43:3 44:21 46:4 48:7 50:25 51:14 52:9 53:17 54:4 54:17 54:25 55:9 57:3 57:7 58:5 58:18 58:18 58:19 59:3 59:4 59:4 59:15 59:15 59:16 60:7 62:5 62:14 63:19 63:25 64:6 64:24 64:25 65:14 66:21 66:22 67:7 68:11 68:18 68:24 69:16 69:25 70:10 70:12 70:13 70:20 70:25 71:9 71:19 72:1 72:4 73:1 75:8 77:1 77:4 77:10 77:23 78:8 79:3 79:10 80:7 80:17 80:23 81:3 81:15 82:2 82:3 82:11 82:15 83:12 83:20 83:25 84:6 84:11 84:13 84:22 85:20 86:3 86:16 87:1 87:24 88:5 | | get(33) 10:13 13:6 14:24 21:20 23:13 23:15 23:17 24:20 28:22 33:9 33:16 37:25 38:3 42:15 43:3 43:15 43:25 44:19 51:21 55:8 55:17 65:17 65:18 65:25 66:5 68:23 67:8 71:5 | |
| | | | | | | | |
| everybody(9) 7:16 21:1 21:22 43:15 52:12 55:24 62:19 67:17 69:14 | | | | | | gets(2) 21:8 33:20 | |
| | | | | | | getting(4) 7:24 11:13 13:18 66:2 | |
| everyone(3) 7:3 20:11 79:9 | | | | | | ginger(1) 1:42 | |
| everything(2) 53:5 53:9 | | facts(16) 36:16 36:18 36:21 37:13 37:16 42:11 47:10 51:12 51:21 64:2 64:3 64:6 64:10 64:11 74:13 76:6 | | | | give(6) 22:23 23:14 23:14 23:16 23:17 23:19 24:1 33:20 35:17 37:1 42:16 43:4 47:25 50:11 53:13 53:18 57:8 63:20 65:24 67:8 71:5 | |
| evidence(45) 18:7 29:10 29:15 29:20 30:10 31:1 31:5 31:9 32:17 33:14 36:6 36:7 37:25 39:10 45:6 45:10 45:17 46:17 46:22 46:25 52:15 53:13 53:18 55:23 56:5 56:22 56:11 56:11 56:15 57:3 59:21 60:2 60:5 60:15 60:20 60:21 60:22 61:22 62:1 62:18 62:2 63:18 64:16 66:22 71:2 86:23 | | | | | | | |
| | | | | | | give-and(1) 35:11 | |
| | | | | | | given(11) 16:9 17:2 34:10 37:13 38:9 48:4 62:22 62:23 65:23 68:19 81:6 | |
| | | | | | | | |
| | | factual(4) 16:16 46:16 46:24 76:4 | | | | gives(2) 30:18 42:22 | |
| | | fahrenheit(1) 7:16 | | foreclose(1) 80:5 | | global(3) 4:29 40:17 61:19 | |
| evidence-in-chief(2) 57:5 68:20 | | fair(3) 13:12 13:18 61:1 | | foregoing(1) 89:2 | | goes(1) 50:16 | |
| evidentiary(9) 52:16 53:8 53:11 56:1 56:2 56:15 58:12 60:10 70:22 | | fairly(1) 56:20 | | foreign(3) 31:20 49:16 76:16 | | going(102) 10:5 19:8 22:23 23:13 23:14 23:23 27:7 29:24 30:1 30:9 30:21 34:6 34:13 35:8 35:12 35:17 35:24 35:25 36:4 36:22 36:25 38:5 38:8 38:18 39:12 39:13 39:14 40:1 42:13 42:14 42:17 42:18 43:2 43:21 43:23 44:12 44:13 44:24 44:24 45:23 45:24 46:4 46:6 46:7 46:12 46:13 46:16 46:17 46:23 46:24 46:25 47:1 47:2 48:3 48:10 51:16 54:1 54:7 55:15 55:25 56:9 56:11 56:12 57:2 57:8 57:9 63:18 64:19 65:13 65:20 65:25 67:1 67:4 67:21 70:14 70:22 71:9 73:10 73:18 74:18 74:19 75:2 75:3 75:7 75:9 75:10 75:13 75:13 75:16 76:21 77:17 79:10 80:22 80:25 80:25 81:16 82:2 82:25 83:24 86:22 87:22 | |
| | | falls(1) 52:4 | | | | | |
| | | familiar(2) 20:12 58:21 | | form(12) 14:21 19:5 25:14 58:9 58:17 62:10 67:20 67:23 80:7 82:23 83:17 87:10 | | | |
| | | far(4) 44:21 52:12 85:12 86:7 | | | | | |
| | | farallon(1) 5:40 | | | | | |
| | | farr(3) 4:4 5:11 34:5 | | formal(2) 79:24 83:1 | | | |
| exactly(7) 24:22 28:13 44:7 44:12 62:16 80:22 88:1 | | farther(1) 65:25 | | former(1) 67:15 | | | |
| | | fashion(1) 14:21 | | forms(1) 70:6 | | | |
| | | feasibility(1) 42:10 | | forth(2) 10:12 40:18 | | | |
| exaggerated(1) 49:24 | | feasible(3) 53:4 53:16 58:4 | | forward(6) 22:4 39:14 42:15 43:6 43:8 43:10 | | | |
| examination(1) 70:13 | | february(7) 10:5 10:14 10:15 13:2 22:24 47:9 69:1 | | | | | |
| examinations(1) 25:23 | | | | | | | |
| examine(1) 43:23 | | | | | | gone(2) 51:24 54:22 | |
| examined(1) 51:4 | | feed(2) 86:16 86:22 | | | | | |
| example(5) 33:10 37:1 43:4 82:2 87:24 | | feedback(2) 9:17 78:7 | | | | | |
| excellent(1) 83:8 | | feel(2) 35:11 85:12 | | | | | |
| except(3) 28:7 50:6 53:9 | | feels(1) 13:17 | | | | | |
| exception(2) 25:8 57:5 | | feet(1) 66:7 | | | | | |
| excerpt(1) 64:1 | | feld(2) 2:12 4:25 | | | | | |
| excerpts(1) 59:2 | | few(6) 10:2 53:17 53:18 70:14 71:11 78:1 | | founded(1) 53:22 | | | |
| exchange(1) 9:13 | | fighting(2) 37:21 37:22 | | | | | |
| exclude(1) 11:10 11:11 47:6 | | figured(1) 64:24 | | | | | |
| exclusive(1) 81:3 | | filed(13) 40:9 47:9 54:6 54:8 54:9 58:18 59:6 61:8 64:5 64:10 67:5 68:14 76:11 | | | | | |
| exclusively(4) 54:11 57:7 59:21 59:24 | | | | | | | |
| exercise(1) 29:7 51:18 | | filing(3) 22:9 54:3 59:8 | | | | | |
| | | filings(10) 9:4 14:5 53:8 56:3 58:22 58:23 58:24 59:4 59:8 63:24 | | | | | |
| | | fill(1) 71:2 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| good(22) 7:3 7:4 7:4 7:5 7:11 7:12 8:11 8:16 8:17 8:17 14:13 14:14 17:21 17:21 17:22 17:22 18:21 35:11 44:3 44:4 44:16 83:5 | | have(187) 7:6 7:9 7:20 7:21 7:26 8:5 8:23 9:6 9:17 10:5 10:10 10:12 11:1 11:9 11:12 12:12 13:2 13:9 14:5 14:10 15:6 15:11 15:11 15:22 16:25 17:7 18:8 18:12 18:13 19:14 20:3 20:5 20:13 21:11 21:23 21:25 22:4 22:12 22:12 23:4 23:7 23:19 24:24 24:13 24:20 25:20 25:25 26:1 26:3 26:7 26:11 26:14 26:17 26:21 27:5 27:7 28:4 28:15 29:4 29:11 29:13 29:22 30:9 31:8 32:1 32:19 33:7 33:7 34:24 35:1 35:8 36:15 36:18 37:19 37:20 38:10 38:16 38:17 39:12 39:23 40:15 40:18 40:25 42:13 43:4 43:16 44:12 44:16 45:1 45:16 46:4 46:6 46:7 46:13 46:16 46:21 46:24 46:25 47:1 47:21 48:12 48:14 49:8 50:3 51:2 51:13 51:14 51:15 52:7 52:11 52:14 52:17 52:19 53:20 54:2 54:17 55:4 55:4 55:12 55:24 56:1 56:7 56:10 56:11 56:11 56:12 56:14 56:18 56:23 56:23 56:24 58:15 58:25 59:2 60:4 60:20 60:22 62:14 62:16 62:22 62:24 62:25 65:10 68:8 68:1 68:25 69:7 69:8 70:11 70:16 70:17 71:1 71:13 72:14 72:25 73:16 73:22 74:3 76:8 76:8 76:11 76:16 77:9 78:9 78:10 78:18 78:23 81:12 81:17 81:21 82:10 83:5 84:5 84:19 84:20 84:24 85:2 85:3 85:10 85:25 86:9 86:18 86:22 87:10 87:17 87:20 88:1 | hoops(1) 84:20 | | insolvency(3) 40:17 49:5 50:2 |
| | | | | hope(1) 11:15 | | instance(1) 87:17 |
| goodwill(4) 34:22 34:23 38:7 74:23 | | | | hopefully(4) 9:22 10:15 71:21 88:9 | | instead(2) 15:18 17:12 |
| got(14) 22:12 22:13 30:23 43:24 44:6 44:20 44:20 46:1 65:19 67:18 69:16 73:9 74:23 87:13 | | | | hour(1) 65:14 | | insufficiently(1) 46:15 |
| | | | | hours(1) 8:4 | | intellectua(3) 30:7 30:8 60:9 |
| gotten(1) 22:25 | | | | how(55) 7:12 7:14 7:23 9:19 10:6 10:11 13:4 13:5 13:6 18:2 23:4 23:25 24:21 27:13 30:6 32:5 32:5 32:10 33:17 33:20 35:16 37:15 37:25 38:1 38:2 39:14 41:7 42:16 42:18 51:16 51:17 52:25 61:3 62:7 65:16 65:20 65:23 65:24 65:25 68:22 69:3 69:8 73:17 73:18 74:18 74:19 75:12 75:22 76:12 76:20 80:22 82:6 82:11 82:15 83:1 | | intend(1) 76:5 |
| gottlieb(2) 1:35 8:19 | | | | | | intended(1) 79:23 |
| grant(1) 62:7 | | | | | | intention(1) 63:16 |
| grapple(1) 36:23 | | | | | | inter-company(1) 31:3 31:5 37:7 |
| gravitate(1) 34:12 | | | | | | interest(13) 15:15 17:4 20:15 21:22 22:10 |
| great(3) 49:17 72:20 76:12 | | | | | | 26:9 29:22 43:11 43:13 44:2 60:14 81:5 81:9 |
| greater(1) 48:12 | | | | | | interested(10) 4:37 4:41 5:19 5:23 5:40 |
| greatly(3) 33:6 49:24 86:21 | | | | howard(1) 1:37 | | 6:8 6:12 6:16 6:25 22:8 |
| green(1) 36:22 | | | | however(3) 39:8 50:15 80:4 | | |
| groats(2) 48:7 48:10 | | | | hubbard(1) 3:5 | | interesting(4) 43:3 45:25 46:2 46:3 |
| gross(25) 1:21 7:22 8:21 18:11 18:21 19:11 20:2 20:10 33:25 34:7 36:1 36:12 53:20 55:7 56:17 71:19 76:20 77:11 79:1 79:19 80:15 81:12 82:22 83:11 88:7 | | | | hughes(1) 3:5 | | interests(7) 16:10 17:6 20:20 21:5 22:7 22:8 29:18 |
| | | | | hum(1) 50:20 | | |
| | | | | hybrid(1) 70:5 | | interim(2) 41:15 51:18 |
| | | | | hypothetical(1) 57:10 | | interject(1) 60:7 |
| | | | | hypothetically(1) 55:1 | | international(3) 49:5 49:14 51:22 |
| grossly(1) 60:24 | | | | i'm(1) 49:23 | | interrogatories(1) 9:9 |
| gross'(1) 81:6 | | | | ideas(1) 9:14 | | interrupt(2) 18:11 18:18 |
| group(55) 2:21 6:4 6:12 13:9 13:10 13:14 14:17 14:23 14:24 15:3 15:3 15:4 15:4 15:5 15:8 15:9 15:12 15:19 15:21 16:2 16:2 16:12 17:4 20:7 21:2 21:9 21:10 21:21 21:24 21:25 23:5 23:8 23:17 23:25 24:18 25:11 25:12 25:12 25:25 26:1 26:2 26:2 26:10 26:12 26:13 26:15 26:17 26:15 27:5 27:6 27:7 34:2 47:3 70:13 75:4 | | | | identification(1) 53:17 | | interruptions(1) 82:3 |
| | | | | identified(5) 15:2 16:12 25:10 47:5 47:10 | | intertwined(1) 52:15 |
| | | | | identify(3) 16:2 16:4 59:23 | | into(17) 9:24 19:9 33:9 33:16 36:8 37:19 40:15 43:3 43:16 44:6 45:7 48:13 61:20 63:19 66:2 82:23 88:10 |
| | | | | ifsa(2) 17:1 22:9 | | |
| | | | | immediately(2) 32:18 37:20 | | |
| | | | | impact(2) 41:21 49:9 | | intra-canadian(1) 13:7 |
| | | | | implementation(1) 63:12 | | introduced(2) 18:13 18:14 |
| | | | | implications(1) 37:22 | | introductory(1) 11:4 |
| groups(11) 15:23 16:3 16:4 20:15 20:16 20:16 21:16 21:23 22:12 30:17 33:11 | | | | implicit(3) 58:3 59:9 59:9 | | invitation(1) 81:20 |
| | | | | importance(3) 48:1 49:14 49:14 | | involve(2) 45:17 50:5 |
| group's(1) 26:5 | | | | important(5) 14:21 16:16 40:13 40:13 | | involved(2) 48:2 49:17 |
| guaranteeing(1) 25:15 | | | | importantly(2) 47:10 68:24 | | involvement(1) 46:20 |
| guarantees(4) 37:12 37:13 46:7 46:23 | | heading(2) 42:6 84:17 | | imposed(1) 62:11 | | involves(1) 50:4 |
| guaranty(1) 24:19 | | | | impossible(3) 54:16 63:19 80:21 | | isn't(5) 17:5 21:4 33:4 73:20 75:15 |
| guess(2) 79:18 80:2 | | hear(20) 7:23 24:2 29:9 34:1 38:1 38:2 38:6 39:9 45:10 46:1 46:17 46:23 53:20 59:19 59:20 61:22 62:1 66:6 72:15 76:21 | | improper(4) 63:6 63:12 63:14 63:15 | | issue(48) 9:24 10:1 13:8 13:15 13:17 14:2 14:3 14:18 16:21 17:16 20:16 21:25 22:19 23:2 25:4 26:6 28:9 28:17 42:25 49:10 54:15 54:20 55:3 55:20 56:22 57:13 57:15 58:8 58:10 59:18 61:24 62:2 66:10 66:11 66:24 68:3 68:5 68:17 69:10 69:12 70:4 70:8 70:9 72:6 72:6 76:21 85:1 85:9 |
| guidance(6) 35:16 35:17 35:18 46:12 55:1 84:14 | | | | inappropriate(1) 70:16 | | |
| | | | | inaudible(1) 74:8 | | |
| | | | | inc(3) 1:9 4:20 5:19 | | |
| guidelines(1) 81:2 | | helped(2) 9:21 9:25 | | inclined(1) 71:5 | | |
| gump(2) 2:12 4:25 | | helpful(4) 34:1 79:14 86:16 87:17 | | include(1) 23:9 | | |
| guyder(1) 5:32 | | here(32) 7:16 9:19 12:3 12:12 13:10 16:7 16:7 20:16 25:7 32:14 34:7 35:14 35:21 46:21 47:4 47:22 50:22 52:1 56:10 56:18 58:7 60:7 66:2 74:5 78:6 79:19 84:16 84:18 86:13 86:14 86:16 86:19 | | included(2) 39:25 40:8 | | issued(2) 52:21 61:2 |
| had(24) 9:7 9:12 10:21 12:21 13:13 19:22 21:5 28:20 30:17 39:24 41:7 45:4 45:5 56:6 61:2 61:5 68:3 77:20 77:22 78:8 78:14 84:19 85:10 85:16 | | | | including(3) 21:6 42:10 60:16 | | issues(75) 12:8 16:20 18:12 19:7 19:20 20:4 25:8 29:2 29:10 29:11 29:19 30:21 30:22 31:3 31:10 31:14 31:15 31:18 32:7 33:10 33:17 33:19 34:11 34:11 35:12 36:24 36:24 37:10 38:15 38:24 45:21 47:48:1 49:9 49:15 50:12 50:15 52:13 52:1 52:1 52:7 52:23 54:7 55:18 55:19 57:25 58:4 58:7 65:20 66:1 66:4 66:16 66:17 68:7 68:10 71:6 72:4 72:7 74:9 74:10 74:16 74:20 74:24 76:4 78:12 80:14 80:14 81:3 81:10 81:10 82:1 82:10 82:15 82:18 86:4 87:19 |
| | | | | inconvenience(1) 64:7 64:12 | | |
| | | herein(2) 64:7 64:12 | | incorporated(2) 64:7 64:12 | | |
| | | hereto(1) 41:11 | | incorporates(1) 62:8 | | |
| | | here's(1) 65:5 | | incorrect(1) 58:8 | | |
| hadley(3) 2:21 6:4 14:16 | | hesitate(2) 18:10 28:21 | | increase(1) 37:6 | | |
| half(1) 65:14 | | hey(1) 43:24 | | indenture(2) 2:36 3:34 21:14 | | item(1) 39:2 |
| hall(1) 3:26 | | he'd(1) 79:11 | | independence(1) 63:10 | | items(1) 66:15 |
| hallmarks(1) 51:2 | | he's(4) 7:11 49:22 49:25 66:4 | | independent(2) 25:23 40:23 | | its(10) 13:9 13:15 44:16 45:9 46:16 51:9 58:9 58:17 61:24 83:14 |
| hamilton(1) 1:35 | | highlighted(1) 40:10 | | indicate(2) 19:21 61:16 | | |
| hand(4) 18:23 43:24 44:2 44:18 | | highly(1) 22:3 | | indicated(2) 66:17 66:25 | | |
| hands(1) 21:18 | | his(8) 49:23 49:23 52:17 53:5 57:16 60:17 62:24 70:9 | | indiscernible(46) 36:9 37:1 37:9 38:9 39:3 | | itself(2) 9:20 78:19 |
| handy(1) 24:14 | | | | 39:17 42:23 43:2 43:20 45:1 45:3 45:20 | | it's(77) 8:13 10:4 10:9 10:13 11:18 12:8 12:22 13:12 14:7 14:21 17:6 17:23 18:2 18:21 19:4 20:1 20:2 20:17 21:1 21:4 21:15 21:17 22:19 22:22 23:6 23:8 25:14 25:20 26:24 26:24 27:2 28:11 28:18 28:24 29:1 30:1 32:9 32:20 34:3 34:24 38:6 39:2 39:19 39:20 41:25 42:3 44:20 44:20 44:24 45:24 47:21 47:23 49:14 58:3 58:20 60:10 60:11 61:1 61:6 61:24 62:15 63:21 69:15 70:9 71:19 72:24 75:10 75:13 75:16 75:21 77:11 77:21 79:19 80:21 80:24 83:2 87:20 |
| hanrahan(1) 5:12 | | | | 46:3 46:9 46:11 46:21 48:6 48:22 49:7 | | |
| happen(2) 32:18 56:4 | | historica(1) 27:2 | | 49:22 49:20 50:3 50:14 50:19 51:5 53:7 | | |
| happened(7) 20:13 22:8 22:9 37:21 37:22 38:23 68:8 | | hit(1) 73:9 | | 57:12 62:23 63:22 64:5 71:20 73:13 73:16 | | |
| | | hoc(1) 2:20 | | 73:20 73:23 74:22 74:24 75:19 75:20 | | |
| | | hodara(1) 2:14 | | 75:21 76:16 76:17 77:12 77:12 83:3 | | |
| happening(1) 87:18 | | hogan(1) 5:5 | | | | |
| happens(1) 33:8 | | hold(2) 39:4 61:18 | | indiscernible-audi(1) 60:15 | | |
| happy(5) 11:19 14:7 19:23 27:24 28:1 | | holidays(1) 82:1 | | indiscernible-cough(2) 52:13 64:15 | | |
| hard(2) 34:8 88:13 | | honor(38) 7:5 8:9 9:1 14:13 17:23 18:17 18:20 20:1 22:17 24:11 26:20 27:21 28:8 28:23 31:8 31:25 32:15 34:3 34:20 35:24 52:4 55:23 57:11 62:18 66:13 67:13 71:7 71:12 72:25 76:3 77:15 82:13 84:6 85:5 85:15 86:12 88:3 88:20 | | indiscernible-coughing(1) 51:13 | | |
| harrisburg(1) 1:46 | | | | indiscernible-shuffling(1) 51:7 | | |
| has(36) 11:20 17:4 21:2 24:19 25:7 31:11 34:22 35:20 36:2 38:13 42:20 43:9 44:21 45:18 45:20 49:1 49:19 52:12 54:22 55:17 56:4 57:15 57:17 58:2 65:4 65:8 65:9 68:6 68:9 69:10 69:11 69:24 70:13 75:1 85:5 | | | | individua(2) 40:4 40:4 | | |
| | | | | inefficient(1) 60:25 | | |
| | | | | influential(1) 77:14 | | |
| | | | | information(1) 76:8 | | |
| | | | | informed(1) 69:24 | | |
| | | | | ingersoll(1) 3:19 | | |
| | | | | initial(1) 11:10 | | |
| hasn't(3) 15:10 62:22 62:23 | | honorable(2) 1:21 1:22 | | inquiries(1) 85:6 | | |
| hauer(2) 2:12 4:25 | | honors(4) 8:5 10:3 13:1 17:19 | | inseparable(1) 60:3 | | i'd(2) 50:9 74:7 |
| | | | | insofar(1) 10:25 | | |

# NORTEL.1.29.14.P.DOC

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**i'll(13)** 7:10 11:20 12:7 14:8 27:13 37:1 43:4 44:1 48:24 55:22 81:4 83:11 83:13

**i'm(25)** 7:14 8:1 9:3 11:19 12:5 14:7 21:22 32:13 36:4 38:18 40:1 55:6 65:9 73:20 77:1 82:11 84:3 84:16 84:22 85:13 85:25 86:14 86:17 87:19 88:7

**i've(5)** 22:13 51:24 66:16 68:19 70:21

**jacob(1)** 3:28

**jacques(1)** 5:37

**james(1)** 3:33

**jammed(1)** 21:20

**january(6)** 1:16 7:2 38:23 42:4 57:23 89:6

**jeff(1)** 8:18

**jeffrey(1)** 1:36

**jeopardize(1)** 75:17

**jeopardy(2)** 51:4 59:11

**john(1)** 3:12

**johnson(1)** 2:13

**joined(2)** 21:24 21:25

**joint(12)** 1:20 3:4 7:9 10:16 17:24 19:5 28:24 40:21 61:18 78:23 79:12 88:16

**jointly(2)** 1:7 85:17

**jonathan(1)** 4:34

**jones(2)** 2:28 4:41

**joseph(1)** 3:27

**josh(1)** 4:30

**judge(25)** 1:21 1:23 7:22 8:21 18:11 18:21 20:1 20:10 33:25 34:7 36:1 36:12 44:15 46:2 55:7 71:19 76:19 79:15 79:19 80:15 81:6 81:12 82:22 83:11 88:7

**judges(10)** 34:24 36:23 37:25 38:2 38:2 38:3 43:18 48:14 51:16 78:2

**judgment(1)** 71:10

**jumped(1)** 77:16

**jumping(1)** 76:19

**jurisdiction(4)** 40:24 45:19 50:14 72:23

**jurisdictions(2)** 31:23 83:17

**just(69)** 8:1 8:20 8:21 11:20 12:13 14:3 14:17 15:22 16:6 16:17 16:25 18:5 18:16 18:18 18:23 18:23 19:7 19:10 19:21 19:23 21:4 21:10 21:21 22:17 22:18 22:18 23:6 24:25 25:6 25:20 27:13 28:5 28:21 32:21 33:21 34:5 38:17 49:18 54:25 57:8 60:7 62:12 65:21 66:9 66:11 67:8 69:13 70:2 70:24 71:2 71:12 71:13 71:16 76:3 76:13 77:7 77:7 77:10 77:12 78:11 78:15 79:13 81:14 81:14 82:9 82:15 82:20 84:3 86:3 86:13

**justice(92)** 1:22 7:8 7:10 7:11 7:12 7:15 7:19 8:18 8:20 8:25 14:15 17:23 18:10 19:11 20:10 22:14 25:1 25:4 25:18 26:22 27:16 28:2 28:18 28:24 33:25 34:6 34:19 35:2 47:16 47:18 48:9 48:12 48:17 48:20 48:23 49:19 49:22 50:7 50:9 50:25 51:1 51:3 52:3 53:20 54:25 55:7 55:11 55:17 56:17 58:20 61:9 64:19 65:4 66:5 67:12 71:8 71:15 71:22 73:3 73:8 73:11 75:23 76:14 76:18 76:25 77:3 77:11 77:13 78:10 79:2 79:5 79:10 79:15 79:19 79:21 79:23 81:19 82:20 83:7 83:11 83:20 83:22 84:3 84:9 84:12 85:10 85:25 86:19 87:7 88:6 88:12 88:17

**justify(1)** 49:3

**justin(2)** 4:12 4:38

**kathleen(1)** 3:30

**katten(2)** 2:36 5:15

**keane(1)** 2:29

**keep(1)** 55:16

**kelly(1)** 89:7

**kent(1)** 5:20

**kevin(2)** 1:21 6:13

**key(1)** 85:9

**kid(1)** 46:10

**kind(1)** 86:9

**king(2)** 2:8 3:14

**know(78)** 7:8 7:25 9:17 11:2 11:3 11:4 13:14 13:23 16:16 23:13 23:18 36:18 37:17 37:18 38:6 38:23 44:8 44:21 44:23 44:24 44:25 46:9 47:21 47:21 47:24 48:13 49:1 50:11 50:21 53:1 64:16 64:17 65:11 65:11 66:7 69:8 73:18 73:18 73:19 74:4 74:6 74:7 74:18 75:1 75:4 75:9 75:16 75:18 75:18 76:13 76:20 77:22 78:6 80:24 80:25 81:1 81:21 81:22 82:4 82:21 84:15 84:16 84:20 84:25 85:4 85:5 85:20 85:23 85:24 86:10 86:25

**knowledge(1)** 69:5

**known(3)** 47:5 47:8 47:11

**knows(1)** 48:22

**lack(1)** 63:10

**laid(1)** 38:14

**language(2)** 16:19 16:22

**large(1)** 19:12

**largely(6)** 57:3 60:3 60:13 64:16 64:17 70:11

**larger(1)** 83:4

**lash(1)** 87:21

**last(5)** 9:4 15:2 17:8 20:6 70:2

**lastly(4)** 54:14 66:9 66:11 70:18

**late(2)** 13:2 68:24

**later(7)** 9:22 14:19 20:8 42:8 70:19 80:3 85:1

**laughter(5)** 27:12 27:17 35:3 49:21 50:8

**launch(1)** 8:21

**laura(1)** 3:26

**law(7)** 3:33 5:44 31:20 31:22 50:13 50:15 50:16

**laws(1)** 31:24

**lawyer(1)** 46:1

**lawyers(2)** 27:10 74:1

**lay(1)** 53:18

**lays(1)** 18:3

**layer(1)** 50:19

**layton(1)** 2:5

**lead(2)** 9:20 9:25

**least(14)** 10:23 12:20 14:21 21:2 21:14 21:15 27:19 50:12 53:23 65:22 79:24 82:2 86:23 87:17

**leave(1)** 16:24 76:22 77:4 79:2 83:11

**leblanc(14)** 2:22 14:13 14:15 14:16 17:10 17:19 17:20 18:14 20:5 27:13 27:21 27:24 27:25 28:2

**left(1)** 69:12

**legal(6)** 30:10 50:3 50:12 50:14 58:13 length(22) 10:11 31:10 51:24 52:4 54:21 47:13 49:11 51:10 51:24 51:24 54:21 56:22 66:25 67:1 67:23 67:25 68:3 68:13 68:17 71:25 72:24 75:15

**lengthy(1)** 80:11

**less(1)** 48:18

**let(10)** 7:10 38:15 54:23 54:25 57:13 60:7 64:21 66:9 66:24 69:20

**letter(2)** 41:6 83:14

**let's(6)** 46:10 55:17 55:20 66:6 73:9 84:10

**levels(1)** 35:23

**liberty(1)** 1:38

**license(1)** 30:16

**lifting(1)** 46:13

**light(3)** 16:19 36:22 36:22

**lightning(2)** 55:8 73:10

**like(17)** 10:20 14:9 15:22 16:6 20:11 27:11 28:21 38:8 50:9 78:11 79:13 82:1 85:3 85:4 86:2 86:4 87:3

**likely(1)** 11:2

**likewise(1)** 85:12

**limit(1)** 16:3

**limitations(1)** 10:10

**limited(4)** 17:13 25:15 47:7 54:10

**line(4)** 43:17 43:20 77:4 79:3

**links(1)** 83:4

**linn(1)** 5:41

**lion(1)** 4:37

**list(2)** 48:6 76:10

**listen(1)** 31:1

**listening(1)** 29:23

**lists(2)** 19:16 62:24

**literally(1)** 16:14

**litigation(6)** 25:11 39:18 39:19 41:11 48:4 50:22

**litigations(2)** 40:20 40:21

**little(3)** 10:4 33:21 46:11

**live(2)** 10:10 10:12

**lived(1)** 35:5

**lives(1)** 50:1

**llc(2)** 5:36 6:12

**llp(12)** 1:28 2:36 2:42 3:5 3:33 4:4 4:20 5:5 5:11 5:15 5:31 6:25

**loaded(1)** 19:18

**loan(3)** 37:7 37:8 63:15

**loans(2)** 31:3 31:6

**location(1)** 78:19

**logistical(2)** 78:12 84:13

**logistics(1)** 42:6

**long(8)** 42:19 51:16 69:6 73:16 73:17 73:17 76:12 80:22

**longer(1)** 73:2

**longstanding(1)** 30:12

**look(16)** 24:7 29:24 30:1 30:16 32:5 32:10 38:8 43:18 48:3 62:25 63:21 63:24 66:12 73:15 74:17 80:7

**looking(8)** 35:16 38:5 50:24 66:8 76:18 80:16 80:23 81:15

**looks(2)** 10:20 84:4

**lot(9)** 10:29 29:19 30:10 34:22 34:23 35:5 46:25 76:8 84:19

**lottery(1)** 73:11

**loud(1)** 50:20

**lovells(1)** 5:5

**lovely(1)** 21:15

**lowenthal(2)** 3:40 5:46

**mace(1)** 1:42

**machinations(1)** 81:7

**made(22)** 8:14 14:19 15:25 16:14 18:5 30:14 36:3 40:12 40:13 41:5 41:18 45:3 52:24 55:11 65:17 67:5 69:24 70:7 72:22 77:16 80:21 85:5

**madison(1)** 2:38

**magic(1)** 75:14

**main(1)** 20:20

**maintained(1)** 36:3

**major(4)** 9:7 20:19 27:1 40:16

**majority(3)** 60:5 62:21 63:18

**make(29)** 13:11 14:17 15:17 16:25 17:13 18:11 19:23 20:22 21:3 21:8 22:24 25:16 26:13 34:14 47:14 47:25 49:9 50:16 54:16 57:11 69:1 69:4 70:25 77:17 80:6 82:6 82:18 86:5 86:8

**makes(1)** 33:23 43:13 43:14

**making(7)** 24:10 29:6 31:23 32:22 40:5 40:15 65:16

**managed(1)** 48:15

**management(4)** 5:40 6:16 6:29 79:25

**manhattan(1)** 2:23

**manner(3)** 29:3 80:18 80:24

**many(12)** 10:11 12:22 35:8 50:1 50:11 72:25 73:18 74:18 74:19 76:20 82:17 82:14

**march(10)** 13:3 24:3 47:5 64:11 77:10 77:20 83:23 83:25 84:7 84:11

**mark(25)** 18:21 18:22 19:25 20:1 20:2 52:4 55:1 55:6 55:10 55:14 55:20 57:12 57:13 65:3 66:4 66:6 66:9 67:11 67:13 71:18 71:24 74:8 77:7 77:16 80:12

**market(5)** 1:13 1:31 2:30 2:45 3:21

**mark's(1)** 72:17

**mass(1)** 47:2

**material(5)** 57:20 68:21

**math(2)** 74:21 75:5

**matter(6)** 8:2 16:11 22:9 72:13 79:11 89:4

**matters(5)** 17:5 51:7 72:2 72:13 72:15

**matthew(5)** 5:4 5:28 6:30 71:19

**matz(1)** 6:5

**maximum(1)** 8:4

**may(39)** 7:25 9:2 13:7 15:2 15:2 17:7 20:6 20:10 23:20 26:20 35:17 35:18 36:8 36:17 36:17 37:3 37:3 38:10 39:9 40:6 40:7 40:12 41:18 44:8 44:11 49:23 50:17 53:18 61:21 67:16 67:22 71:12 73:21 73:21 81:4 81:5 81:21 82:3 82:18

**maybe(2)** 56:24 59:11

**mccloy(3)** 2:1 6:4 14:16

**mean(6)** 10:21 11:25 14:25 36:6 57:9

**meaning(1)** 44:10

**meaningful(1)** 16:9

**means(1)** 19:14

**mediation(1)** 49:20

**meet(4)** 41:17 42:17 68:25 85:25

**meet-and(2)** 10:5 13:2

**meet-and-confer(3)** 9:7 37:2 67:22

**meeting(5)** 9:12 35:10 37:16 59:22 83:4

**melding(1)** 58:13

**melnik(1)** 2:43

**members(2)** 13:10 13:14

**mention(1)** 11:20 12:13

**mentioned(1)** 16:18

**mere(1)** 73:2

**merits(1)** 39:7

**met(2)** 9:9 9:9

**michael(2)** 5:41 6:26

**microphone(1)** 14:7

**mid(1)** 24:2

**middle(1)** 77:22

**might(16)** 8:21 14:12 33:25 47:11 71:14 76:2 76:9 79:14 81:8 84:14 84:15 84:25 86:10 86:16 87:8 87:9

**milbank(3)** 2:21 6:4 14:16

**milestone(1)** 9:7

**miller(1)** 3:34

**million(1)** 45:4

**mind(6)** 18:16 46:14 61:2 61:6 70:1 71:4

**minimum(3)** 47:11 47:14 59:25

**ministry(1)** 84:21

**minor(1)** 11:22

**minute(1)** 22:17

**minutes(14)** 11:6 21:2 21:4 21:14 21:15 23:1 24:1 26:25 27:10 27:11 27:14 77:5 78:12 79:3

**mischaracterization(1)** 60:12

**misguided(1)** 68:18

**mix(1)** 33:8

**mobile(1)** 84:24

**modifications(1)** 86:5

**moment(5)** 27:19 60:7 67:8 71:9 71:13

**monday(1)** 77:23

**money(2)** 43:16 44:3

**monitor(3)** 3:18 5:31 18:22 21:10 22:2 22:21 23:7 23:16 83:3

# NORTEL.1.29.14.P.DOC

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| monitors(1) 52:5 | | nnsa(2) 64:9 64:14 | | official(4) 2:4 4:24 86:9 86:20 | | our(62) 8:13 9:10 10:17 10:22 11:15 13:1 |
| monitor's(1) 83:13 | | nnuk(3) 63:4 64:7 64:13 | | offline(1) 84:15 | | 13:16 13:25 15:11 15:18 15:22 16:10 |
| month(8) 9:13 10:5 10:14 11:12 11:15 | | nnuk's(1) 46:18 | | often(1) 69:23 | | 16:12 16:21 16:23 19:4 20:8 21:20 28:3 |
| 23:24 59:22 68:25 | | nobody(3) 37:18 48:22 53:12 | | okay(9) 14:1 24:24 48:22 64:23 65:18 | | 33:22 35:19 36:1 36:11 40:6 42:20 42:21 |
| | | nobody's(2) 13:22 13:24 | | 77:18 77:21 78:24 79:15 | | 45:12 45:22 47:11 47:24 47:24 48:2 49:10 |
| months(1) 32:4 | | non-interest(1) 37:7 | | | | 49:15 51:1 51:3 51:25 51:25 52:5 54:16 |
| months'(1) 24:22 | | none(2) 52:16 62:11 | | omission(1) 16:22 | | 54:21 58:21 60:12 60:12 60:14 60:17 61:7 |
| moral(3) 49:6 49:9 49:10 | | nor(1) 26:14 | | omnibus(1) 43:7 | | 62:21 63:21 63:22 63:25 65:6 69:11 70:4 |
| morawetz(82) 1:22 7:8 7:10 7:11 7:12 | | normally(1) 7:9 | | once(3) 20:18 56:1 64:23 | | 73:7 73:13 75:21 78:20 83:19 84:24 85:7 |
| 7:15 7:19 8:18 8:20 8:25 14:15 17:23 | | nortel(6) 1:9 4:19 5:35 7:20 40:17 50:2 | | one(78) 1:38 2:7 2:16 2:23 3:7 8:9 8:10 | | 85:23 |
| 18:10 20:10 22:14 25:2 25:4 25:18 26:22 | | north(5) 1:31 2:8 2:30 3:14 3:21 | | 9:16 11:25 12:15 12:25 13:10 13:15 13:17 | | ourselves(4) 16:6 16:9 46:10 78:7 |
| 27:16 28:3 28:18 28:24 33:25 34:6 34:19 | | not(100) 9:19 11:6 13:18 14:24 14:25 | | 14:17 16:18 16:23 18:5 20:22 21:16 21:24 | | out(46) 7:17 10:3 13:7 13:18 16:18 18:3 |
| 35:2 47:16 47:18 48:9 48:12 48:17 48:20 | | 15:11 16:1 16:11 17:10 20:17 21:2 21:10 | | 22:1 22:17 22:20 24:4 25:14 26:6 26:6 | | 21:13 21:16 22:5 23:24 24:4 25:23 27:3 |
| 48:23 49:22 50:7 50:9 52:3 54:25 55:7 | | 22:1 23:6 23:8 23:9 26:11 27:2 31:19 | | 26:23 27:7 27:20 28:15 29:6 41:24 41:24 | | 27:7 29:2 32:5 32:11 38:4 38:18 39:21 |
| 55:11 55:17 58:20 61:9 64:19 65:4 66:5 | | 32:13 32:15 32:23 35:6 35:25 36:13 36:14 | | 42:23 44:19 48:23 49:12 50:2 50:17 52:1 | | 39:25 41:7 41:10 42:17 43:18 45:14 45:22 |
| 67:12 71:8 71:15 71:22 73:8 73:11 75:23 | | 37:3 37:21 38:1 38:12 39:19 40:22 41:4 | | 52:14 52:16 55:9 57:15 58:2 58:5 60:4 | | 47:7 48:2 63:19 64:2 64:4 64:10 64:24 |
| 76:14 76:18 77:1 77:3 77:13 78:10 79:2 | | 41:21 44:25 46:10 47:5 47:8 48:10 48:14 | | 60:19 61:25 63:20 64:21 65:5 65:10 65:19 | | 70:1 70:10 71:6 74:8 75:5 75:6 75:8 76:5 |
| 79:5 79:10 79:15 79:18 79:22 79:23 81:19 | | 49:3 49:13 49:23 50:12 51:3 53:12 53:14 | | 68:18 71:22 72:7 72:22 73:13 73:14 74:8 | | 81:25 82:12 85:22 86:5 |
| 82:20 83:7 83:11 83:20 83:22 84:3 84:9 | | 53:16 55:3 55:6 56:21 57:8 57:9 58:25 | | 75:13 76:13 76:14 76:15 77:16 80:10 | | |
| 84:12 85:10 85:25 87:7 88:6 88:12 88:17 | | 59:10 59:13 59:17 59:18 59:20 60:10 | | 80:13 83:17 83:19 85:23 86:1 87:2 87:10 | | outcome(3) 49:4 65:1 65:2 |
| | | 60:10 60:17 62:21 64:6 64:11 64:19 64:2 | | 87:11 87:12 | | outline(1) 18:2 |
| morawetz'(1) 86:19 | | 65:6 65:9 68:5 68:12 68:20 69:18 70:16 | | | | outlined(1) 80:7 |
| more(22) 12:9 12:23 15:24 18:11 33:20 | | 70:19 72:2 72:4 72:5 72:7 72:10 72:16 | | one-page(1) 82:23 | | outset(2) 10:22 39:12 |
| 33:20 38:14 50:17 54:12 56:24 58:21 | | 72:18 73:5 73:20 73:21 74:1 75:25 77:1 | | one-trial(2) 72:10 72:11 | | outside(3) 85:13 85:17 86:7 |
| 65:10 65:12 68:12 68:24 70:24 70:25 71:7 | | 79:23 80:16 80:24 81:5 81:16 81:19 83:11 | | only(23) 9:19 14:3 23:9 25:9 27:9 29:9 | | over(23) 12:20 14:7 18:23 23:24 27:10 |
| 80:18 81:8 83:17 89:22 | | 85:10 86:4 86:14 86:17 87:19 | | 29:12 31:4 31:11 31:19 32:17 35:6 39:10 | | 37:14 37:21 37:22 40:11 45:4 45:23 54:17 |
| | | | | 47:9 49:13 53:19 54:20 58:25 61:23 62:2 | | 59:22 61:13 61:16 62:4 63:3 63:7 65:21 |
| morning(14) 7:3 7:4 7:5 7:11 7:12 8:11 | | notations(1) 82:23 | | 78:5 84:12 86:2 | | 68:25 70:14 76:20 85:3 |
| 8:16 8:17 8:18 14:13 14:14 17:21 17:22 | | note(2) 19:10 50:17 | | | | |
| 18:21 | | noted(2) 19:12 50:11 | | ontario(1) 80:5 | | overall(1) 32:24 |
| morris(3) 1:28 3:33 7:7 | | noteholder(2) 20:16 22:8 | | onus(9) 42:25 44:21 44:22 44:24 45:9 | | overlap(11) 29:14 29:19 31:11 31:16 |
| most(10) 22:6 37:18 41:3 43:16 47:10 | | noteholders(5) 21:6 21:13 21:23 27:5 | | 45:18 47:22 53:24 58:14 | | 53:11 62:20 71:25 72:1 72:2 72:7 82:17 |
| 50:2 79:18 80:3 80:23 86:22 | | noteholders'(1) 20:5 | | | | |
| | | notes(1) 18:24 | | open(7) 57:16 61:8 69:13 77:4 79:3 84:19 | | overlapping(9) 52:15 55:23 56:15 60:20 |
| motion(3) 62:7 62:10 71:10 | | nothing(3) 24:8 30:24 55:21 | | 84:22 | | 60:21 62:21 64:17 66:12 82:15 |
| motions(1) 19:20 | | nothing's(1) 65:11 | | | | |
| move(5) 42:14 50:9 67:2 70:4 70:5 | | notion(5) 53:14 58:7 59:11 70:4 71:1 | | open-ended(1) 81:19 | | overlaps(1) 60:3 62:18 64:18 |
| moved(1) 65:11 | | nova(2) 48:7 48:9 | | opened(1) 56:6 | | overview(1) 57:5 |
| moving(3) 41:17 74:6 74:6 | | november(5) 41:4 67:6 67:12 68:7 69:9 | | opening(19) 20:20 20:25 21:3 23:10 23:12 | | own(8) 15:9 15:18 15:22 16:12 43:16 |
| mrda(1) 31:12 | | now(32) 11:18 12:11 12:23 15:25 16:15 | | 23:14 23:15 23:16 23:17 23:19 24:10 | | 44:11 44:16 46:16 |
| much(23) 9:16 12:23 13:5 13:6 24:21 | | 16:17 16:18 18:12 22:13 26:24 28:16 | | 24:21 25:16 26:7 26:13 56:3 56:13 56:13 | | |
| 26:10 28:23 33:20 37:25 38:1 38:2 62:17 | | 29:11 34:2 43:12 47:15 54:23 55:17 56:22 | | 59:14 | | ownership(1) 63:17 |
| 65:16 65:25 68:22 69:8 73:1 75:8 80:17 | | 62:14 62:17 64:20 65:8 66:6 66:24 69:19 | | opinions(1) 38:10 | | o'connor(8) 4:5 34:3 34:3 34:4 34:5 34:10 |
| 82:6 87:20 88:12 88:17 | | 70:19 71:2 79:4 80:17 82:5 82:20 88:18 | | opportunity(4) 19:19 40:18 78:9 80:6 | | 34:17 34:18 |
| | | | | opposed(4) 23:24 85:1 85:3 87:11 | | |
| muchin(2) 2:36 5:15 | | nri(1) 64:14 | | option(1) 50:22 | | p.m(3) 84:8 84:11 88:23 |
| multiple(1) 23:19 | | nuance(3) 35:7 35:8 44:13 | | optional(1) 57:6 | | pachulski(1) 2:28 |
| murphy(1) 3:20 | | nuances(1) 38:3 | | oral(3) 20:23 45:5 59:16 | | page(19) 20:25 21:1 40:2 40:6 40:12 |
| must(2) 70:3 70:5 | | nuancing(1) 43:3 | | order(25) 38:20 39:16 39:17 39:18 40:5 | | 40:12 41:9 42:2 42:4 42:22 45:13 45:22 |
| myself(1) 82:22 | | number(23) 7:26 10:10 24:14 28:15 36:13 | | 40:12 41:3 41:7 41:9 41:14 41:20 45:3 | | 45:23 48:2 57:21 62:6 63:24 64:1 67:14 |
| narrowed(2) 68:8 80:9 | | 36:14 38:21 45:20 47:4 47:7 47:8 47:20 | | 52:18 52:24 57:18 57:22 67:6 67:9 67:14 | | |
| national(1) 49:14 | | 51:11 51:12 52:23 54:10 67:19 68:22 69:2 | | 68:7 70:18 72:21 75:2 83:18 87:10 | | pages(2) 39:20 42:1 |
| naturally(1) 33:14 | | 73:4 74:8 76:7 81:15 | | | | paige(1) 6:9 |
| nature(3) 36:2 38:9 38:16 | | | | ordered(8) 15:24 16:15 38:21 41:8 41:10 | | paper(3) 11:14 70:11 75:20 |
| near(1) 9:15 | | numbered(3) 39:20 42:1 62:6 | | 41:23 45:2 58:5 | | papers(2) 10:20 51:7 |
| necessary(4) 14:20 40:17 81:23 82:7 | | numbers(1) 54:19 | | | | paragraph(14) 38:21 40:14 41:9 45:13 |
| need(21) 12:14 13:5 22:18 23:21 23:22 | | numerous(2) 9:14 50:19 | | ordering(1) 75:1 | | 45:23 48:2 57:22 61:13 62:5 62:6 63:22 |
| 24:6 29:21 29:23 30:21 31:20 33:20 40:9 | | objecting(1) 25:9 | | orders(8) 7:21 38:19 41:14 47:25 58:18 | | 64:14 64:18 66:12 |
| 40:25 53:22 54:12 68:23 69:19 70:16 | | objection(2) 12:14 36:11 | | 58:19 61:7 66:21 | | |
| 74:20 82:11 86:11 | | objections(6) 8:7 8:9 11:21 11:22 11:23 | | | | paragraphs(5) 64:8 64:8 64:9 64:13 64:14 |
| | | 19:20 | | organized(1) 8:2 | | parallel(7) 29:4 33:1 33:2 52:13 53:14 |
| needs(4) 14:4 29:15 73:19 76:23 | | | | original(2) 29:8 32:2 | | 56:4 56:10 |
| negative(2) 80:12 83:9 | | objectors(1) 12:4 | | originally(2) 62:6 62:10 | | |
| negotiations(1) 24:23 | | obligated(1) 11:6 | | other(22) 12:17 15:23 16:1 17:6 23:20 | | pardon(1) 62:5 |
| neither(1) 73:14 | | observations(1) 40:14 | | 23:21 24:17 26:4 26:18 31:5 32:4 36:15 | | park(2) 2:16 3:7 |
| networks(2) 1:9 4:19 | | obvious(1) 72:23 | | 36:20 37:14 44:18 61:4 65:11 70:5 71:23 | | parse(1) 63:19 |
| never(2) 45:25 51:2 | | obviously(17) 7:20 9:16 11:4 11:13 12:1 | | 78:2 78:5 84:13 | | part(15) 16:2 16:5 16:23 21:2 26:13 26:18 |
| new(11) 1:39 2:17 2:24 2:39 3:8 3:30 | | 12:8 14:6 26:12 28:8 33:18 73:2 78:1 | | | | 27:18 28:3 46:13 50:1 63:16 65:9 74:6 |
| 3:42 4:8 19:3 19:3 26:20 | | 78:6 83:14 84:25 85:22 86:21 | | others(1) 27:8 | | 77:8 83:4 |
| | | | | otherwise(6) 11:20 25:23 30:20 51:13 | | |
| next(18) 10:17 11:10 11:12 11:15 22:24 | | occur(3) 36:4 51:8 51:9 | | 72:18 81:16 | | participants(1) 50:5 |
| 23:24 24:5 24:22 32:4 45:23 55:8 59:22 | | occurred(2) 37:16 37:21 | | | | participated(1) 51:6 |
| 68:25 70:14 73:11 73:23 83:20 84:18 | | off(8) 14:2 18:12 20:24 26:23 66:4 82:24 | | ought(2) 24:5 32:12 | | particular(4) 10:6 13:15 67:20 73:1 |
| | | 83:3 83:6 | | | | particularly(3) 20:22 35:10 86:16 |
| nichols(2) 1:28 7:7 | | | | | | particulars(3) 64:3 64:4 79:13 |
| nine(2) 63:22 63:25 | | offending(1) 16:22 | | | | |
| nnc(2) 46:18 63:3 | | offered(2) 27:22 27:25 | | | | |
| nni(1) 64:8 | | officer(1) 73:15 | | | | |
| nnl(1) 63:3 | | offices(1) 9:10 | | | | |
| nnl's(1) 46:18 | | | | | | |

# NORTEL.1.29.14.P.DOC

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| parties(108) 7:26 9:6 9:19 10:2 10:3 10:11 10:12 11:2 11:13 12:3 13:2 13:4 13:19 15:15 16:1 19:1 19:8 22:6 23:19 23:21 24:17 29:22 31:1 31:5 31:25 32:4 33:7 35:7 36:4 36:14 37:6 37:11 37:23 38:1 39:4 39:24 39:24 39:25 41:14 41:17 42:7 42:15 42:19 43:11 43:13 44:2 45:18 45:19 45:20 50:18 51:19 54:3 54:17 55:2 56:12 56:24 58:2 58:22 59:5 59:7 59:22 60:14 60:25 62:16 63:9 63:16 64:24 65:10 65:13 67:2 67:21 68:4 68:13 68:14 68:25 69:3 69:6 70:10 70:12 70:25 71:6 73:25 74:1 74:2 74:2 74:11 74:12 75:3 76:5 76:8 77:8 77:20 77:23 78:6 80:8 80:17 80:23 81:5 81:15 82:5 82:8 82:21 82:24 83:3 83:5 84:13 84:16 85:16 | parties'(3) 19:15 56:3 57:3 | partners(3) 4:33 4:33 4:37 | parts(1) 74:6 | party(28) 4:37 4:41 5:19 5:23 5:40 6:8 6:12 6:16 6:25 6:29 11:9 13:13 13:15 15:8 17:12 21:22 24:18 25:7 25:9 29:25 40:1 40:4 44:19 44:24 45:9 59:3 65:5 75:8 80:6 | passage(1) 12:24 | passing(1) 81:8 | past(1) 49:7 | patterson(2) 3:39 5:45 | payment(1) 37:8 | peg(1) 4:42 | pennsylvania(1) 1:46 | pension(20) 4:4 5:5 29:18 33:13 34:15 37:10 37:11 38:1 38:9 39:6 39:7 39:8 39:11 39:25 40:3 40:16 46:20 50:23 50:2 58:1 | pensioner(2) 20:16 22:7 | pensioners(1) 50:23 | people(9) 33:15 35:11 35:13 65:14 74:18 74:19 75:2 76:24 77:22 | peradventure(1) 56:2 | percent(2) 30:19 60:9 | perfectly(4) 26:9 57:19 79:21 88:15 | perhaps(9) 8:21 10:4 68:4 68:24 77:3 77:21 79:19 86:17 86:18 | period(4) 17:13 32:22 43:7 63:7 | permission(1) 24:17 | permit(2) 59:10 66:21 | permitted(1) 41:15 | permutations(1) 81:7 | perry(1) 6:8 | person(1) 10:14 | personally(1) 86:4 | perspective(1) 35:4 | pertain(2) 18:7 59:1 | peter(1) 2:29 | phase(4) 9:18 30:22 31:17 32:1 | phone(1) 83:19 | pin(2) 54:20 69:10 | piper(1) 2:42 | place(7) 15:14 16:3 33:3 47:3 61:3 71:1 86:24 | places(3) 72:12 78:16 87:21 | plaintiffs(1) 76:16 | plan(8) 5:5 10:22 18:3 39:8 39:18 40:2 41:12 46:20 | planned(2) 78:8 78:14 | plans(2) 9:11 50:23 | play(1) 13:7 | plaza(3) 1:38 2:23 3:7 | pleading(3) 60:11 63:24 64:3 | pleadings(5) 45:1 58:25 62:25 63:23 64:16 | please(6) 7:3 8:25 14:12 71:8 79:8 79:9 | pleased(3) 9:3 12:5 41:6 | pled(1) 36:8 | plenty(1) 85:1 | pod(2) 43:20 44:3 | pods(1) 43:20 | point(31) 5:26 5:27 8:12 13:5 14:9 14:17 17:11 25:3 33:22 35:2 48:20 50:20 55:1 55:3 55:15 71:13 72:7 72:19 72:19 73:7 75:20 76:14 76:15 77:2 80:2 80:3 80:3 80:10 80:21 81:12 84:13 | points(6) 16:25 35:8 55:12 72:22 77:16 83:13 | policy(1) 46:20 | pose(1) 60:23 | position(25) 16:14 16:24 20:18 21:13 21:17 21:18 22:1 22:22 26:8 30:18 43:9 49:23 52:6 55:5 58:16 60:8 60:10 60:11 60:12 60:12 60:13 63:2 63:5 65:6 70:9 | positions(2) 27:3 63:5 | positive(1) 51:14 | possible(6) 17:13 32:16 42:8 58:3 62:1 | possibly(1) 19:20 81:1 | post-hearing(2) 29:5 33:1 | potential(1) 11:1 | powers(1) 51:19 | ppearances(4) 1:26 2:1 3:1 4:1 | practiced(1) 73:16 | pragmatic(1) 44:5 | pragmatically(9) 36:5 36:5 36:10 41:1 44:14 45:6 51:10 75:12 75:21 | pre(2) 35:14 83:20 | pre-filed(5) 19:13 54:2 56:11 57:4 57:10 | pre-hearing(2) 29:4 32:25 | pre-judgment(1) 51:2 | pre-trial(22) 9:18 10:17 19:4 19:16 19:19 35:15 36:19 36:20 38:10 38:12 38:12 38:13 42:3 51:11 51:25 56:3 58:18 58:19 58:22 73:23 74:7 77:9 | precedence(1) 49:17 | precedential(1) 38:9 | precisely(1) 62:3 | preclude(1) 24:9 | preemptory(1) 41:24 | prefer(1) 78:2 | preference(2) 77:21 84:5 | prejudice(3) 20:8 27:20 65:7 | prejudicial(1) 22:4 | preliminary(8) 9:14 35:14 35:15 38:12 42:3 85:6 85:8 85:16 | premature(4) 10:4 12:22 22:19 22:20 32:9 47:12 47:13 | premise(1) 53:22 | preparations(1) 7:24 | prepared(1) 54:6 | present(5) 10:15 23:21 32:21 58:9 58:17 | presentation(3) 8:8 11:19 18:19 | presented(3) 29:15 32:7 56:6 | presenting(1) 31:22 | pressure(1) 82:7 | presumably(1) 43:15 | presumption(1) 30:18 | presumptuous(1) 19:15 | pretty(2) 20:13 32:6 | previous(3) 52:18 61:6 66:21 | price(1) 37:6 | pricing(3) 31:12 31:14 31:15 37:5 46:20 63:13 | primarily(1) 34:21 | principal(2) 43:17 70:13 | prior(2) 49:20 54:9 | pro-rata(2) 22:3 43:5 43:7 43:23 | probably(6) 37:24 69:4 78:22 82:17 84:18 85:23 | problem(2) 17:17 65:4 | problems(2) 44:13 87:14 | procedural(3) 25:13 25:15 40:24 | procedurally(1) 83:12 | procedure(2) 35:24 42:22 | procedures(2) 41:16 44:25 | proceed(10) 8:3 8:25 9:2 10:20 24:5 24:5 28:16 42:21 45:2 69:6 | proceeded(1) 49:2 | proceeding(6) 46:11 58:23 58:24 61:3 69:22 83:4 | proceedings(14) 1:20 1:49 26:4 44:23 49: 53:14 53:15 56:10 60:2 62:25 63:19 69:23 89:4 | proceeds(2) 17:3 61:19 | process(16) 15:10 15:11 19:3 19:4 19:18 34:25 42:24 45:8 47:22 51:3 51:4 51:6 56:18 67:22 74:16 75:20 | produce(1) 60:15 | produced(1) 1:50 | production(2) 45:4 47:2 | professor(1) 50:16 | progress(2) 65:16 69:5 | project(6) 31:6 31:9 37:2 37:3 37:3 63:14 | proof(6) 33:11 33:16 42:25 44:20 58:14 64:10 | proofs(1) 64:5 | properly(1) 85:21 | property(3) 30:7 30:8 60:10 | proportion(1) 75:2 | proportionality(3) 47:21 47:23 69:21 | proportionally(2) 75:10 75:11 | proportionate(3) 47:25 50:25 73:14 | proportionately(1) 73:24 | proposal(7) 10:16 13:25 40:20 42:22 53:21 54:14 88:14 | propose(1) 41:20 | proposed(7) 12:25 16:13 19:22 32:18 42:12 61:15 67:23 | proposing(1) 13:3 | proposition(1) 62:24 | prospect(1) 67:1 | protocol(85) 8:6 8:9 9:10 9:14 9:15 9:25 11:5 12:4 14:10 14:23 15:1 15:20 16:13 17:8 18:2 18:6 18:13 18:24 19:5 19:12 19:14 19:19 20:8 20:21 20:21 21:12 22:4 22:22 23:10 24:8 25:8 29:1 29:8 32:2 34:8 34:24 35:7 38:22 39:1 39:4 39:5 39:17 41:1 41:11 41:12 42:15 42:23 53:3 53:7 53:10 53:16 53:25 54:18 56:25 57:2 57:23 58:9 58:17 59:10 59:14 61:2 61:10 61:11 61:15 61:17 62:4 62:8 62:14 65:19 66:20 66:21 67:4 67:13 67:15 67:25 67:24 68:20 68:21 69:7 71:1 75:7 76:5 76:7 77:8 | protocols(1) 43:12 | prove(3) 44:20 45:18 68:23 | provide(5) 19:12 19:19 43:2 57:3 65:24 | provided(7) 7:26 19:17 38:17 39:8 41:21 61:21 74:14 | providers(1) 85:8 | provides(3) 58:18 66:22 76:5 | providing(1) 42:11 | proving(2) 33:13 33:14 | provision(4) 62:12 67:6 67:20 72:21 | prudential(1) 46:11 | public(2) 50:2 50:21 | pultman(1) 3:28 | purely(1) 72:4 | purposes(1) 39:23 | put(27) 11:5 13:13 13:13 31:20 38:8 39:23 40:18 42:23 43:6 43:8 43:10 45:9 51:3 52:7 53:7 53:23 54:1 54:20 59:11 67:24 69:10 73:25 74:4 82:23 85:7 86:6 87:9 | putting(1) 88:13 | puzzling(1) 68:11 | question(68) 54:25 57:14 60:23 60:24 66:18 68:6 74:5 86:13 | questions(5) 11:19 19:22 71:7 78:18 83:18 | quite(5) 9:18 12:5 15:12 24:11 32:20 | qureshi(1) 2:15 | raise(1) 23:6 | raised(4) 20:4 26:21 34:11 | rather(2) 19:7 49:12 | re-doing(1) 72:16 | re-start(1) 28:21 | reach(1) 42:9 | read(4) 39:19 59:20 62:12 68:2 | real(3) 33:5 49:2 51:16 | realistic(1) 50:21 | realistically(2) 51:17 80:14 | reality(1) 60:3 | realize(1) 51:24 | really(18) 7:23 11:21 12:9 12:14 13:5 13:7 14:4 16:21 23:3 34:12 36:21 38:6 56:19 65:11 67:7 71:17 74:5 88:14 | reason(21) 26:16 30:25 31:4 31:8 31:25 43:4 58:6 60:4 62:5 73:13 87:5 | reasonable(1) 70:12 | reasonableness(1) 46:15 | reasonably(2) 73:24 73:24 | reasons(8) 17:7 22:20 33:23 61:9 61:14 68:18 73:6 82:4 | rebuttal(1) 47:8 | recall(6) 39:20 40:6 40:8 41:4 41:5 45:3 | recent(1) 41:3 | recess(5) 77:4 77:7 77:19 79:4 79:7 | recognition(1) 25:14 | recognize(3) 14:22 53:16 66:21 | recognized(6) 17:1 17:3 17:7 35:20 36:2 52:14 | recognizes(4) 25:15 26:7 53:10 58:6 | recognizing(1) 15:5 | record(6) 7:7 37:20 50:2 50:21 57:4 70:11 | recorded(1) 1:49 | recording(2) 1:49 89:3 | records(1) 53:8 | rectify(1) 50:7 | red(1) 36:22 | reduce(2) 55:3 55:11 | reduced(1) 68:8 | reed(1) 3:5 | refer(2) 38:18 61:12 | reference(3) 63:20 64:7 64:12 | references(1) 20:24 | referred(3) 42:24 57:20 71:25 | refers(1) 61:12 | reflect(1) 19:8 | reflected(3) 14:22 16:13 22:22 | regard(3) 9:17 13:24 38:10 | regarding(5) 9:7 19:2 22:25 61:19 65:18 | regards(2) 9:10 46:18 | regimes(1) 49:16 | regional(1) 48:5 | related(5) 29:10 29:11 31:10 31:19 32:17 | relates(1) 28:9 | relating(1) 18:12 | relation(9) 29:15 29:16 29:21 31:21 31:23 32:8 32:20 32:23 33:12 | relative(1) 63:9 |

| Word | Page:Line |
|------|-----------|
| relatively(1) 11:24 | |
| relevant(8) 39:10 53:19 59:21 59:24 61:22 62:2 63:8 72:21 | |
| relief(1) 20:8 | |
| relies(1) 59:3 | |
| relieve(2) 82:7 82:20 | |
| relinquished(1) 29:25 | |
| reluctant(1) 80:5 | |
| rely(3) 54:5 59:5 68:15 | |
| remain(1) 57:2 | |
| remainder(1) 28:11 | |
| remained(1) 68:1 | |
| remaining(3) 18:8 39:7 62:9 | |
| remarkable(1) 37:15 | |
| remarks(2) 11:5 69:21 | |
| remember(1) 24:9 | |
| remind(1) 70:6 | |
| reminder(1) 77:8 | |
| remitted(1) 19:5 | |
| removal(1) 20:17 | |
| removed(1) 20:19 | |
| reorg(1) 5:19 | |
| reorganization(1) 31:6 | |
| repeat(2) 19:11 87:24 | |
| reply(4) 25:6 26:20 45:10 61:7 | |
| report(2) 9:3 69:1 | |
| reporter(2) 86:7 86:18 | |
| reporters(1) 84:20 | |
| reporting(2) 86:14 86:15 | |
| reports(11) 11:9 11:11 19:17 31:9 31:13 31:19 31:20 38:4 49:23 54:8 76:10 | |
| representative(2) 9:23 19:2 | |
| representing(1) 50:22 | |
| request(8) 9:8 18:5 20:7 29:6 32:14 32:22 68:10 68:12 | |
| requesting(1) 77:8 | |
| requests(1) 15:17 | |
| require(5) 29:24 30:1 47:14 70:5 82:25 | |
| required(2) 40:3 45:2 | |
| requirements(1) 46:17 | |
| requires(2) 44:19 76:4 | |
| research(1) 5:19 | |
| reserve(1) 20:21 | |
| reserved(2) 57:4 57:6 | |
| resident(1) 50:4 | |
| resolution(3) 9:23 9:25 70:6 | |
| resolve(7) 9:22 12:23 16:21 19:20 24:6 64:20 86:1 | |
| resolved(5) 16:20 52:8 54:7 70:17 70:17 | |
| resource(1) 46:15 | |
| resources(1) 46:19 | |
| respect(31) 8:6 9:8 16:8 19:3 26:3 26:6 32:12 42:10 47:22 51:7 53:6 58:10 58:12 59:18 60:16 64:7 64:8 64:9 64:12 64:14 65:7 65:18 68:21 72:5 72:17 72:19 72:20 72:23 75:15 76:7 81:4 | |
| respected(2) 40:25 53:6 | |
| respectful(1) 73:5 | |
| respective(2) 59:7 61:24 | |
| respectively(1) 61:23 | |
| respects(3) 9:24 12:22 13:7 | |
| respond(5) 20:3 22:16 22:18 23:22 52:5 | |
| responded(1) 55:12 | |
| responds(1) 71:17 | |
| responsible(2) 35:9 73:25 | |
| responsibly(6) 35:13 74:3 74:12 74:18 74:22 75:11 | |
| rest(4) 11:3 13:16 16:19 20:17 | |
| restatement(1) 76:6 | |
| restricted(2) 21:9 76:10 | |
| result(3) 17:11 19:2 62:7 | |
| resulting(1) 33:5 | |
| retain(1) 85:17 | |

| Word | Page:Line |
|------|-----------|
| retained(1) 29:7 | |
| retaining(1) 85:23 | |
| retains(1) 72:23 | |
| return(1) 68:16 | |
| returnable(1) 62:10 | |
| revised(3) 63:8 67:16 82:24 | |
| revisiting(1) 68:5 | |
| richard(1) 6:9 | |
| richards(1) 2:5 | |
| right(47) 8:20 10:8 11:8 12:23 14:11 15:20 17:2 17:18 18:18 21:19 24:12 24:18 25:16 25:19 25:20 25:22 26:1 26:8 26:17 27:23 28:10 30:19 33:24 34:2 34:16 43:22 48:16 55:10 55:21 58:15 73:12 77:3 77:21 78:21 79:1 79:2 81:21 83:10 83:24 84:8 84:10 84:17 87:15 87:23 88:4 88:6 88:16 | |
| righton(1) 5:36 | |
| rights(10) 13:22 13:24 25:13 25:15 25:21 26:1 26:25 30:16 52:17 58:15 | |
| rise(2) 50:11 79:8 | |
| risk(2) 42:24 59:11 | |
| robert(1) 2:13 | |
| rodney(2) 2:7 3:13 | |
| role(1) 16:9 | |
| room(5) 34:25 46:3 67:18 76:18 88:10 | |
| rooney(1) 3:19 | |
| rosenman(2) 2:36 5:15 | |
| rosenthal(57) 1:36 8:15 8:17 8:18 8:24 9:1 9:3 9:6 10:9 10:21 10:25 11:9 11:25 12:11 12:17 14:2 14:11 14:18 16:17 17:17 18:1 18:14 18:25 19:11 20:4 22:15 22:17 24:11 24:13 24:16 24:25 25:1 28:5 28:8 28:11 28:14 32:10 34:8 35:10 77:14 77:17 77:19 78:1 78:5 78:15 78:16 78:18 78:22 78:25 84:5 85:15 85:20 87:2 87:16 88:1 88:3 88:20 | |
| round(3) 11:10 11:10 22:24 | |
| rows(1) 86:5 | |
| rule(1) 70:2 | |
| rules(4) 40:24 45:2 47:24 47:24 | |
| run(3) 44:4 69:9 69:14 | |
| running(1) 43:11 | |
| said(28) 10:2 17:10 18:1 22:22 28:4 37:17 37:17 37:17 40:14 42:13 45:3 47:13 52:12 53:5 56:23 60:8 62:6 62:15 70:3 70:7 71:18 72:13 73:10 73:15 74:9 74:9 74:24 77:22 | |
| sale(1) 30:4 | |
| sales(2) 17:3 30:1 | |
| same(22) 16:1 16:11 21:19 26:1 26:10 26:25 26:25 27:8 31:3 33:4 33:9 33:19 34:6 43:24 44:1 44:7 44:12 60:22 64:9 81:11 86:10 87:19 | |
| sameer(1) 4:6 | |
| samis(1) 2:6 | |
| sat(1) 37:13 | |
| satisfied(1) 76:24 | |
| satisfy(1) 53:24 | |
| save(1) 71:21 | |
| saw(1) 9:4 | |
| say(36) 8:21 11:3 12:6 13:5 13:23 14:3 22:13 23:6 30:11 30:15 34:6 34:7 36:5 39:5 43:5 43:19 43:24 44:2 47:24 50:1 55:9 58:2 61:1 66:14 68:16 68:18 71:11 73:9 74:17 74:23 75:12 76:19 81:22 82:16 87:4 88:14 | |
| saying(10) 11:22 13:10 13:22 13:24 23:25 28:25 31:17 32:25 36:20 74:7 | |
| says(6) 19:11 24:17 42:7 52:17 62:20 | |
| scene(1) 48:5 | |
| schedule(12) 19:22 32:21 40:19 41:5 41:1 41:25 42:1 59:25 62:10 69:17 71:10 77:1 | |
| scheduled(5) 7:22 8:4 53:19 56:17 69:16 | |

| Word | Page:Line |
|------|-----------|
| scheduling(6) 10:17 40:14 55:2 69:13 82:1 82:25 | |
| scheme(3) 46:10 46:14 67:3 | |
| schuylkill(1) 1:45 | |
| scope(1) 32:5 | |
| screens(1) 85:3 | |
| seated(2) 7:4 70:10 | |
| seating(1) 86:5 | |
| second(5) 7:6 12:7 36:11 41:9 80:10 | |
| secondly(5) 19:10 52:10 52:19 68:23 76:7 | |
| seconds(1) 55:8 | |
| section(2) 20:25 21:1 | |
| security(1) 86:4 | |
| see(14) 7:4 17:21 17:22 21:17 24:5 41:7 42:5 61:9 61:14 66:13 76:19 80:8 82:15 83:8 | |
| seeing(2) 24:9 77:1 | |
| seeking(1) 20:8 | |
| seem(1) 8:7 | |
| seemed(1) 43:17 | |
| seems(1) 65:12 | |
| seen(1) 35:1 | |
| sees(1) 43:13 | |
| segregate(1) 82:16 | |
| selinda(1) 2:43 | |
| sense(8) 28:11 22:10 33:23 43:14 43:14 44:1 44:3 82:19 | |
| sensible(1) 29:1 | |
| sensibly(1) 42:16 | |
| sent(2) 20:10 41:6 | |
| sentence(3) 12:18 12:18 28:8 | |
| separate(58) 10:16 14:24 15:3 15:8 15:12 15:19 15:21 20:7 25:11 25:23 25:24 26:1 26:11 26:14 26:15 26:17 29:17 29:19 29:19 29:20 31:13 31:16 31:17 31:18 32:22 33:3 33:3 35:21 35:21 35:22 40:1 40:11 40:21 40:23 52:9 52:11 53:4 53:8 53:8 53:9 53:9 58:7 58:18 58:23 58:24 58:25 59:3 59:4 59:8 59:14 59:15 59:16 60:23 63:19 66:19 66:19 66:22 66:23 | |
| separated(1) 58:5 | |
| separately(10) 14:25 32:8 39:9 54:4 58:16 59:7 61:22 62:1 62:11 72:15 | |
| separateness(3) 39:15 59:13 66:10 | |
| separation(2) 32:3 40:19 | |
| sequence(1) 65:20 | |
| sequencing(7) 55:20 56:20 58:9 66:11 66:22 75:15 75:16 | |
| sequent(1) 58:4 | |
| sequential(3) 36:1 38:16 53:15 | |
| sequentially(4) 36:4 36:5 36:9 51:8 | |
| seriously(1) 60:1 | |
| serve(1) 75:19 | |
| service(4) 1:44 1:50 85:8 86:14 | |
| services(3) 1:44 46:21 84:23 | |
| serving(1) 15:18 | |
| set(33) 10:21 23:13 23:25 23:17 29:9 32:6 32:19 36:13 39:21 39:25 41:10 44:17 45:14 45:22 47:7 47:13 48:2 49:17 51:11 64:2 64:4 64:10 66:13 67:1 70:15 72:20 73:1 77:9 78:3 80:16 81:3 84:10 | |
| sets(3) 29:16 29:17 85:4 | |
| setting(3) 19:15 47:20 73:22 | |
| settle(3) 35:23 54:19 76:2 | |
| settled(5) 12:12 29:13 36:14 36:14 36:16 54:6 | |
| settlement(2) 49:13 68:9 | |
| seven(2) 20:25 45:22 | |
| seventh(1) 4:7 | |
| several(1) 22:20 | |
| shall(6) 28:16 41:14 41:17 41:21 42:17 | |
| share(3) 15:15 21:9 27:11 | |

| Word | Page:Line |
|------|-----------|
| shares(1) 37:8 | |
| sheila(1) 8:13 | |
| shelter(1) 26:5 | |
| shibley(1) 5:36 | |
| short(1) 76:23 | |
| shorten(2) 68:4 74:15 | |
| shorter(1) 73:1 | |
| shortfall(1) 46:5 | |
| shortly(1) 79:12 | |
| should(60) 8:3 10:7 11:2 13:6 13:20 16:21 18:3 20:9 24:22 26:17 27:6 27:8 28:4 30:4 31:1 31:5 31:8 31:17 32:1 32:5 32:5 33:15 33:15 33:17 36:3 36:3 36:9 36:13 38:12 41:18 43:7 51:3 51:8 51:9 51:11 51:15 51:19 51:21 52:16 53:6 53:13 53:14 53:15 58:11 68:16 70:20 70:23 71:5 71:6 73:17 74:8 74:12 74:14 74:17 74:23 75:12 81:2 81:2 82:7 87:7 | |
| shouldn't(3) 43:6 55:24 74:10 | |
| show(1) 30:20 | |
| shuffling(1) 75:21 | |
| side(3) 37:14 44:1 63:1 | |
| sign(2) 82:24 83:6 | |
| signed(1) 83:3 | |
| significant(6) 12:1 51:22 55:23 55:25 69:5 70:22 | |
| significantly(1) 65:12 | |
| silver(2) 5:26 5:27 | |
| similar(2) 34:11 60:13 | |
| simplify(1) 33:7 | |
| simply(3) 12:24 31:16 53:16 | |
| simultaneous(1) 39:3 | |
| simultaneously(3) 39:4 61:18 72:14 | |
| since(7) 9:21 12:8 20:13 29:12 65:5 68:6 79:18 | |
| single(2) 25:7 39:15 | |
| sir(3) 7:12 79:17 81:13 | |
| sit(17) 13:19 31:9 32:1 32:3 32:3 32:10 38:7 39:9 42:12 47:4 47:9 50:22 56:18 61:21 62:1 70:14 74:17 75:12 | |
| sitting(5) 35:14 48:6 74:5 86:19 86:19 | |
| situated(1) 15:1 | |
| situation(1) 43:1 | |
| situations(1) 64:25 | |
| six(2) 42:4 57:1 | |
| skipped(6) 50:4 50:14 52:13 60:15 60:17 60:18 | |
| slate(1) 21:18 | |
| slavens(1) 4:21 | |
| slightly(1) 19:6 | |
| slot(1) 15:22 | |
| so-called(1) 31:12 | |
| society(1) 37:15 | |
| solution(1) 44:5 | |
| solvency(1) 31:10 | |
| solving(1) 74:24 | |
| some(59) 9:13 9:24 13:6 13:23 14:21 19:3 19:3 19:20 26:20 29:14 31:11 31:16 33:9 35:11 36:23 37:9 38:10 38:18 43:2 43:7 43:13 44:4 45:6 47:1 48:14 48:17 48:18 51:24 52:1 54:15 55:1 57:5 59:11 59:12 61:6 65:10 65:17 65:22 65:23 65:24 66:1 74:23 78:7 78:18 79:13 79:24 79:25 80:8 81:2 82:7 82:10 82:18 82:21 84:13 84:16 85:16 86:5 86:5 87:18 | |
| somebody(1) 75:25 | |
| somebody's(1) 43:23 | |
| something(11) 15:23 23:24 67:4 79:11 80:16 81:5 81:22 83:1 83:6 87:22 87:25 | |
| somewhat(1) 19:14 | |
| somewhere(1) 75:14 | |
| soon(2) 32:15 42:7 | |

# NORTEL.1.29.14.P.DOC

| Word | Page:Line |
|------|-----------|
| sooner(1) 84:25 | |
| sorry(2) 45:13 55:6 | |
| sort(9) 8:1 28:21 43:7 81:1 84:24 86:7 86:13 86:24 87:25 | |
| sought(1) 20:6 | |
| sound(2) 1:49 89:3 | |
| sounds(1) 27:11 | |
| southpaw(1) 6:16 | |
| speak(7) 13:1 14:6 14:8 26:5 75:2 78:2 84:23 | |
| speaking(7) 8:13 11:24 20:2 32:13 43:5 49:10 71:19 | |
| specific(5) 11:16 25:21 81:15 81:25 83:20 | |
| specifically(6) 10:7 12:15 13:6 18:7 42:19 82:9 | |
| specified(1) 26:17 | |
| spend(2) 29:23 78:11 | |
| spirit(2) 27:19 88:8 | |
| spirits(1) 44:16 | |
| square(2) 2:7 3:13 | |
| stage(2) 10:4 22:7 | |
| stand(4) 44:11 47:15 49:4 49:18 | |
| standard(1) 7:20 | |
| standing(2) 74:19 74:20 | |
| standpoint(2) 80:4 84:23 | |
| stang(1) 2:28 | |
| stargatt(1) 3:11 | |
| starks(1) 6:13 | |
| start(9) 8:8 41:23 42:13 42:14 43:21 43:22 71:12 80:13 84:8 | |
| started(2) 28:20 79:20 | |
| starting(1) 45:22 | |
| starts(1) 28:11 | |
| state(3) 16:24 65:5 80:22 | |
| stated(1) 73:6 | |
| statement(2) 26:13 37:23 42:11 51:20 64:23 74:13 | |
| statements(5) 20:25 23:10 56:3 56:14 80:6 | |
| states(4) 1:1 1:23 16:7 27:10 | |
| status(2) 15:12 27:2 | |
| statutory(1) 49:16 | |
| stay(1) 24:4 | |
| ste(4) 2:45 3:21 3:35 4:13 | |
| steen(1) 1:35 | |
| step(3) 20:5 24:5 64:21 | |
| stephen(1) 3:34 | |
| steps(4) 39:21 39:21 39:22 40:4 | |
| stick(2) 43:23 44:1 | |
| still(6) 7:17 41:25 49:22 57:16 65:15 65:2 | |
| stipulation(2) 19:1 19:8 | |
| stone(4) 4:37 67:19 72:20 80:16 | |
| straight(1) 82:3 | |
| strauss(2) 2:12 4:25 | |
| streak(1) 11:16 | |
| street(5) 1:13 1:45 2:8 2:30 3:14 | |
| strikes(2) 64:23 65:21 | |
| strong(2) 38:10 40:9 | |
| struck(1) 55:8 | |
| structure(1) 68:19 | |
| structured(1) 43:12 | |
| struggling(1) 65:21 | |
| stuck(1) 65:8 | |
| styles(1) 48:14 | |
| subject(5) 8:7 41:19 59:12 71:7 80:11 | |
| subjected(1) 49:6 | |
| submission(26) 14:20 35:20 36:4 42:20 42:21 47:11 48:3 48:24 49:11 53:5 54:16 54:21 57:17 59:10 60:8 60:23 66:10 66:13 68:6 69:11 70:7 70:19 70:23 71:3 73:5 | |

| Word | Page:Line |
|------|-----------|
| submissions(30) 7:26 8:14 8:22 10:11 10:16 20:23 21:3 21:3 21:8 22:24 29:5 32:25 33:2 34:14 34:21 38:11 38:17 40:8 40:9 45:12 45:22 54:23 56:13 63:21 63:22 69:21 72:17 73:7 76:21 80:11 | |
| submit(3) 9:11 9:22 72:3 | |
| submitted(4) 11:11 22:22 31:13 31:18 | |
| submitting(1) 56:13 | |
| subparagraph(1) 41:19 | |
| subsequently(2) 39:16 41:5 | |
| subsidiaries(1) 37:9 | |
| substance(2) 18:5 61:15 | |
| substantial(7) 8:6 11:14 16:10 36:24 46:22 51:17 53:11 | |
| substantially(3) 60:3 62:9 74:15 | |
| successful(3) 9:12 10:2 11:16 | |
| successfully(1) 9:7 | |
| such(3) 39:9 41:21 51:4 | |
| suggest(6) 24:3 27:18 83:2 83:16 83:24 84:15 | |
| suggested(2) 30:9 77:20 | |
| suggesting(1) 72:18 | |
| suggestion(10) 8:10 13:16 15:10 33:22 53:1 57:17 72:19 73:4 83:8 83:23 | |
| suggestions(1) 84:22 | |
| suggests(2) 53:12 58:11 | |
| summarized(1) 61:14 | |
| summary(5) 44:25 52:6 62:13 69:23 71:10 62:24 | |
| supported(1) 43:9 | |
| suppose(1) 56:23 | |
| supreme(2) 70:2 70:3 | |
| sure(12) 13:11 19:23 21:21 49:24 82:11 85:25 86:14 86:17 87:1 87:19 88:5 88:7 | |
| surprise(1) 10:25 80:25 | |
| suspect(3) 7:16 81:6 84:9 | |
| swan(3) 25:5 25:6 25:22 | |
| swift(6) 31:6 31:9 37:2 37:3 37:4 63:14 | |
| system(4) 51:1 51:3 74:25 75:1 | |
| tab(9) 38:19 38:20 39:16 40:5 41:2 57:21 61:8 61:8 67:10 | |
| table(8) 14:2 26:24 35:11 51:23 52:7 68:5 72:3 72:12 | |
| tables(1) 86:6 | |
| tail(1) 61:5 | |
| take(32) 13:11 13:15 16:11 16:18 21:16 22:1 24:18 30:17 31:22 33:3 35:12 38:18 39:14 39:14 39:18 39:20 39:24 39:25 40:2 40:5 40:7 40:8 40:11 40:22 41:1 41:5 41:9 41:10 41:14 41:21 41:22 41:23 41:24 42:5 42:5 42:12 42:20 42:21 43:6 43:12 43:13 44:1 44:5 44:7 44:9 44:13 44:25 44:25 45:3 45:11 46:23 47:2 47:13 47:22 47:24 47:24 47:25 48:6 48:10 48:23 48:24 49:1 49:2 49:2 49:9 49:10 49:12 49:15 49:19 50:2 50:7 50:17 50:17 50:20 50:20 51:8 51:10 51:15 51:23 52:7 52:10 52:14 52:15 52:18 52:20 52:21 52:22 | |
| taken(7) 24:7 30:4 38:11 40:15 47:3 48:20 56:24 | |
| takes(2) 14:2 56:18 | |
| taking(1) 86:20 | |
| talk(6) 10:14 11:16 12:8 13:20 42:18 72:9 72:15 74:19 74:20 78:12 82:5 | |
| talking(11) 9:19 20:22 23:3 61:12 72:8 | |
| talks(3) 37:4 39:2 65:19 | |
| tammy(1) 89:7 | |
| target(1) 46:14 | |
| tasks(1) 38:4 | |
| taylor(1) 3:11 | |
| technologically(1) 85:22 | |
| technology(5) 78:19 84:14 84:22 85:2 | |
| telephone(1) 7:11 | |
| telephonic(4) 4:17 5:1 6:1 9:14 | |
| telephonically(1) 10:13 | |

| Word | Page:Line |
|------|-----------|
| tell(7) 21:16 30:5 38:5 44:22 72:25 73:17 82:2 | |
| tend(1) 34:12 | |
| term(1) 58:20 | |
| terminated(1) 88:18 | |
| terms(5) 30:23 41:10 41:13 48:4 65:19 | |
| terrific(1) 18:2 | |
| test(4) 46:14 46:14 46:15 46:15 | |
| tested(1) 85:21 | |
| testify(3) 53:13 54:11 69:2 | |
| testifying(1) 82:18 | |
| testimony(1) 10:23 | |
| than(12) 12:17 15:24 42:8 49:12 50:17 65:10 65:11 73:2 77:23 81:8 83:1 85:2 | |
| thank(33) 9:1 14:11 17:19 17:20 18:17 19:25 22:14 24:25 25:1 28:2 28:16 28:23 33:24 34:17 34:18 34:20 52:3 71:18 71:24 73:8 77:6 77:13 78:25 79:1 79:5 79:6 79:9 82:13 88:3 88:12 88:17 88:20 88:21 | |
| that(301) 7:11 7:20 7:21 8:2 9:6 9:8 9:24 9:24 9:25 10:1 10:3 10:4 10:14 10:14 10:16 10:18 11:5 11:15 11:20 12:1 12:3 12:5 12:11 12:15 12:19 12:22 12:23 12:24 12:25 13:3 13:4 13:10 13:12 13:12 13:13 13:13 13:16 13:17 13:22 13:23 13:23 13:24 13:24 14:2 14:3 14:4 14:5 14:9 14:18 14:18 14:20 14:22 14:25 15:1 15:5 15:7 15:10 15:14 15:19 15:20 15:20 15:22 15:23 15:24 15:25 16:5 16:6 16:12 16:13 16:14 16:14 16:15 16:17 16:19 16:20 16:22 16:25 17:1 17:4 17:5 17:7 17:7 17:11 17:14 17:15 17:16 17:17 18:5 18:6 18:7 18:8 18:12 18:13 19:2 19:4 19:5 19:8 19:13 19:14 19:18 19:18 19:21 19:22 20:4 20:7 20:10 20:12 20:18 20:20 20:24 21:7 21:8 21:19 22:1 22:2 22:5 22:19 22:20 22:25 23:1 23:1 23:2 23:5 23:6 23:13 23:18 24:3 24:5 24:6 24:8 24:9 24:16 24:17 24:22 25:10 25:14 25:14 25:18 25:19 26:3 26:3 26:4 26:7 26:10 26:17 26:21 26:23 27:2 27:10 27:17 27:18 27:22 28:3 28:4 28:11 28:15 29:6 29:7 29:15 29:20 29:21 30:3 30:6 30:9 30:9 30:11 30:13 30:16 30:16 30:18 30:18 30:20 30:21 30:24 31:6 31:13 31:17 31:19 31:20 32:1 32:2 32:3 32:6 32:7 32:9 32:25 33:4 33:22 33:22 34:7 34:8 34:10 34:11 34:14 34:22 34:25 35:8 35:9 35:12 35:18 35:20 35:20 35:25 36:4 36:6 36:8 36:12 36:16 37:4 37:6 37:8 37:15 38:4 38:10 38:17 38:21 38:23 39:8 39:10 39:12 39:14 39:14 39:18 39:20 39:24 39:25 40:2 40:5 40:7 40:8 40:11 40:22 41:1 41:5 41:9 41:10 41:14 41:21 41:22 41:23 41:24 42:5 42:5 42:12 42:20 42:21 43:6 43:12 43:13 44:1 44:5 44:7 44:9 44:13 44:25 44:25 45:3 45:11 46:23 47:2 47:13 47:22 47:24 47:24 47:25 48:6 48:10 48:23 48:24 49:1 49:2 49:2 49:9 49:10 49:12 49:15 49:19 50:2 50:7 50:17 50:17 50:20 50:20 51:8 51:10 51:15 51:23 52:7 52:10 52:14 52:15 52:18 52:20 52:21 52:22 | |
| that(242) 52:24 53:5 53:7 53:10 53:10 53:12 53:14 53:15 53:19 53:20 53:22 53:25 54:16 54:20 54:21 54:22 54:24 55:2 55:3 55:4 55:7 55:9 55:11 55:12 55:12 55:14 55:15 55:17 55:24 56:2 56:3 56:9 56:11 56:17 56:18 56:20 56:21 56:24 57:2 57:14 57:17 57:19 57:20 57:22 58:3 58:4 58:7 58:10 58:10 58:12 59:1 59:2 59:3 59:5 59:9 59:10 59:11 59:22 60:2 60:8 60:10 60:15 60:16 60:19 60:20 60:24 61:2 61:5 61:5 61:8 61:10 61:11 61:11 61:14 61:16 61:21 61:22 62:3 62:3 62:5 62:11 62:12 62:13 62:15 62:19 62:20 63:3 63:6 63:13 63:15 63:17 63:18 64:16 64:17 64:23 64:24 65:4 65:5 65:8 65:12 65:14 65:17 65:19 65:21 66:1 66:13 66:18 66:2 67:1 67:6 67:7 67:8 67:14 67:19 67:20 67:24 68:1 68:1 68:2 68:5 68:11 68:12 68:13 68:15 68:17 68:18 68:18 68:9 69:1 69:12 69:14 69:19 70:1 70:3 70:4 70:10 70:16 70:19 70:19 70:20 70:21 71:2 71:4 71:6 71:21 72:4 72:7 72:16 72:20 72:25 72:25 73:1 73:3 73:4 73:7 73:13 73:22 73:23 74:3 74:5 74:13 74:13 74:15 74:16 75:5 76:1 76:4 76:5 76:8 76:10 76:12 76:24 76:25 77:9 77:11 77:14 77:16 77:20 77:20 78:3 78:3 78:7 78:14 78:23 79:14 79:20 80:3 80:4 80:5 80:7 80:9 80:10 80:12 80:15 80:16 80:19 80:19 81:2 81:4 81:6 81:7 81:8 81:17 81:18 82:2 82:4 82:7 82:9 82:23 83:1 83:13 83:16 83:18 83:22 84:4 84:9 84:12 84:15 84:17 84:20 84:21 85:1 85:8 85:11 85:17 85:21 86:6 86:8 86:8 86:9 86:10 86:17 86:22 87:2 87:5 87:8 87:9 87:10 87:21 87:25 88:9 89:2 | |
| that'll(2) 86:22 | |
| that's(54) 12:3 13:25 16:16 18:15 18:17 20:9 22:11 22:12 23:5 23:24 24:22 25:9 25:10 27:6 27:6 27:23 28:10 32:22 35:23 43:2 43:5 43:5 43:8 43:8 43:21 45:13 47:3 47:3 47:16 48:5 51:18 57:7 58:8 71:11 63:4 65:8 68:2 72:7 72:7 73:5 73:16 73:25 75:9 76:6 81:1 81:5 83:7 83:10 83:24 85:9 87:2 87:15 87:16 87:23 | |
| thau(1) 6:17 | |
| thawing(1) 7:17 | |

# NORTEL.1.29.14.P.DOC

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| the(301) 1:1  1:2  1:21  1:22  2:4  2:42  3:29 | | the(301) 22:23  22:23  22:24  23:3  23:4  23:5 | | the(301) 39:1  39:2  39:3  39:4  39:5  39:5 | | the(301) 57:13  57:14  57:15  57:16  57:17 | |
| 3:41  7:3  7:6  7:8  7:9  7:10  7:11  7:14  7:18 | | 23:5  23:6  23:6  23:7  23:8  23:9  23:10 | | 39:6  39:6  39:7  39:8  39:10  39:11  39:13 | | 57:18  57:19  57:21  57:22  57:22  57:23 | |
| 7:20  7:21  7:24  7:24  7:25  7:26  8:3  8:3  8: | | 23:10  23:12  23:12  23:14  23:15  23:16 | | 39:15  39:17  39:19  39:21  39:21  39:22 | | 57:24  57:24  57:25  58:1  58:2  58:2  58:3 | |
| 8:7  8:8  8:8  8:9  8:10  8:11  8:12  8:12  8:14 | | 23:17  23:19  23:21  23:22  23:24  23:25 | | 39:24  39:25  39:25  40:3  40:4  40:7  40:8 | | 58:4  58:5  58:6  58:6  58:6  58:7  58:8  58:8 | |
| 8:16  8:19  8:22  8:22  8:24  9:2  9:3  9:4  9:4 | | 23:25  24:1  24:2  24:5  24:6  24:7  24:8  24:9 | | 40:8  40:8  40:10  40:15  40:16  40:17  40:18 | | 58:9  58:9  58:11  58:12  58:12  58:13  58:14 | |
| 9:5  9:6  9:8  9:8  9:10  9:12  9:16  9:17  9:18 | | 24:11  24:12  24:14  24:15  24:17  24:18 | | 40:19  40:20  40:20  40:22  40:23  40:25  41:1 | | 58:15  58:15  58:16  58:17  58:19  58:22 | |
| 9:19  9:20  9:20  9:21  9:23  9:23  9:25  10:1 | | 24:19  24:19  24:22  24:24  25:1  25:7  25:7 | | 41:4  41:6  41:6  41:7  41:8  41:8  41:10 | | 58:22  58:23  58:24  59:1  59:2  59:4  59:4 | |
| 10:3  10:5  10:6  10:8  10:10  10:11  10:11 | | 25:8  25:8  25:9  25:9  25:10  25:11  25:12 | | 41:10  41:11  41:13  41:13  41:14  41:15 | | 59:5  59:5  59:6  59:7  59:7  59:10  59:13 | |
| 10:12  10:14  10:15  10:16  10:17  10:19 | | 25:13  25:15  25:16  25:18  25:20  25:21 | | 41:16  41:17  41:18  41:20  41:20  41:21 | | 59:13  59:14  59:17  59:18  59:20  59:21 | |
| 10:19  10:22  10:22  10:24  11:1  11:1  11:3 | | 25:22  25:25  25:25  26:1  26:2  26:2  26:4 | | 41:22  41:22  41:23  41:23  41:23  42:1  42:5 | | 59:22  59:22  60:1  60:2  60:2  60:3  60:4 | |
| 11:5  11:8  11:10  11:10  11:11  11:13  11:13 | | 26:4  26:5  26:8  26:10  26:10  26:10  26:12 | | 42:6  42:7  42:8  42:10  42:10  42:11  42:12 | | 60:4  60:5  60:5  60:8  60:9  60:10  60:13 | |
| 11:14  11:18  11:18  11:20  11:24  12:1  12:1 | | 26:14  26:15  26:16  26:23  26:24  26:25 | | 42:13  42:13  42:14  42:15  42:16  42:17 | | 60:14  60:14  60:14  60:16  60:16  60:19 | |
| 12:2  12:2  12:3  12:3  12:4  12:4  12:7  12:10 | | 26:25  27:1  27:3  27:4  27:5  27:5  27:8  27:8 | | 42:18  42:18  42:19  42:22  42:23  42:24 | | 60:21  60:22  60:23  60:24  60:25  60:25  61: | |
| 12:11  12:12  12:12  12:12  12:14  12:14 | | 27:9  27:9  27:15  27:18  27:18  27:19  27:23 | | 42:24  42:25  43:1  43:3  43:5  43:10  43:10 | | 61:2  61:2  61:3  61:4  61:5  61:5  61:5  61:6 | |
| 12:15  12:16  12:17  12:18  12:19  12:20 | | 27:25  28:2  28:7  28:8  28:10  28:11  28:13 | | 43:11  43:12  43:13  43:14  43:15  43:16 | | 61:7  61:7  61:10  61:11  61:14  61:15  61:15 | |
| 12:20  12:21  12:23  12:25  13:2  13:2  13:3 | | 28:14  28:15  28:16  28:17  28:20  28:22 | | 43:18  43:18  43:22  43:24  43:25  44:1  44:3 | | 61:17  61:17  61:18  61:21  61:23  61:25  62: | |
| 13:3  13:4  13:4  13:6  13:8  13:11  13:12 | | 28:24  28:25  29:1  29:2  29:4  29:6  29:7 | | 44:4  44:7  44:7  44:8  44:9  44:12  44:13 | | 62:2  62:3  62:7  62:7  62:8  62:10  62:10 | |
| 13:14  13:14  13:16  13:17  13:17  13:18 | | 29:8  29:9  29:10  29:11  29:11  29:12  29:12 | | 44:13  44:15  44:15  44:16  44:18  44:18 | | 62:21  62:13  62:14  62:16  62:17  62:20 | |
| 13:19  13:20  13:22  14:1  14:2  14:3  14:4 | | 29:13  29:13  29:14  29:16  29:17  29:17 | | 44:19  44:22  44:23  44:23  45:2  45:6  45:6 | | 62:21  62:25  62:25  63:1  63:7  63:8  63:9 | |
| 14:4  14:6  14:7  14:9  14:10  14:10  14:11 | | 29:18  29:20  29:21  29:22  29:23  29:24 | | 45:7  45:7  45:7  45:8  45:9  45:9  45:10 | | 63:10  63:10  63:11  63:16  63:16  63:18 | |
| 14:14  14:16  14:19  14:20  14:22  14:22 | | 29:25  30:1  30:2  30:6  30:7  30:7  30:8 | | 45:14  45:14  45:15  45:16  45:17  45:18 | | 63:18  63:25  64:1  64:1  64:2  64:2  64:3 | |
| 14:23  14:24  15:1  15:1  15:2  15:4  15:4 | | 30:10  30:11  30:11  30:12  30:13  30:13 | | 45:19  45:20  45:21  45:23  45:23  45:24  46: | | 64:4  64:5  64:5  64:6  64:9  64:10  64:10 | |
| 15:4  15:5  15:5  15:6  15:7  15:9  15:11 | | 30:14  30:14  30:14  30:16  30:17  30:17 | | 46:4  46:4  46:5  46:7  46:14  46:14  46:14 | | 64:12  64:13  64:15  64:16  64:17  64:18 | |
| 15:12  15:13  15:14  15:15  15:16  15:18 | | 30:17  30:19  30:19  30:19  30:21  30:21 | | 46:15  46:17  46:18  46:19  46:19  46:19 | | 64:20  64:23  64:24  65:1  65:2  65:4  65:13 | |
| 15:20  15:20  15:23  16:1  16:2  16:3  16:5 | | 30:23  30:24  30:25  30:25  31:2  31:2  31:4 | | 46:20  46:21  46:22  47:2  47:4  47:7  47:8 | | 65:13  65:14  65:17  65:24  66:1  66:10  66:10 | |
| 16:7  16:7  16:8  16:8  16:10  16:11  16:12 | | 31:7  31:10  31:10  31:11  31:12  31:12  31:14 | | 47:12  47:13  47:16  47:20  47:20  47:20 | | 66:10  66:11  66:12  66:14  66:15  66:16 | |
| 16:13  16:13  16:14  16:15  16:17  16:19 | | 31:14  31:17  31:19  31:21  31:22  31:24 | | 47:24  48:1  48:1  48:1  48:4  48:5  48:6  48:6 | | 67:2  67:2  67:3  67:5  67:5  67:6  67:6  67:7 | |
| 16:19  16:19  16:20  16:21  16:21  16:22 | | 31:25  32:2  32:4  32:4  32:5  32:11  32:13 | | 48:7  48:9  48:25  49:1  49:1  49:6  49:7 | | 67:9  67:13  67:14  67:14  67:17  67:18  67:18 | |
| 16:22  16:24  17:1  17:1  17:2  17:5  17:6 | | 32:14  32:14  32:16  32:16  32:17  32:18 | | 49:13  49:15  49:15  49:16  49:17  49:18 | | 67:19  67:19  67:20  67:21  67:22  67:23 | |
| 17:7  17:9  17:13  17:14  17:16  17:18  17:20 | | 32:19  32:24  32:25  33:1  33:2  33:4  33:7 | | 49:20  50:1  50:2  50:2  50:10  50:12  50:12 | | 67:23  67:25  68:3  68:3  68:3  68:3  68:4 | |
| 17:24  17:24  17:25  18:1  18:5  18:6  18:6 | | 33:7  33:8  33:9  33:11  33:12  33:12  33:13 | | 50:15  50:15  50:17  50:18  50:18  50:20  51: | | 68:5  68:5  68:6  68:7  68:7  68:9  68:10 | |
| 18:8  18:8  18:9  18:12  18:12  18:13  18:15 | | 33:13  33:14  33:15  33:16  33:18  33:19 | | 51:2  51:3  51:8  51:8  51:8  51:10  51:10 | | 68:10  68:12  68:13  68:13  68:14  68:15 | |
| 18:18  18:22  18:23  18:24  18:25  19:2  19:3 | | 33:23  33:24  34:1  34:4  34:6  34:8  34:8 | | 51:11  51:11  51:12  51:14  51:16  51:17 | | 68:17  68:17  68:17  68:19  68:20  68:21 | |
| 19:4  19:5  19:5  19:8  19:12  19:12  19:13 | | 34:9  34:10  34:10  34:11  34:12  34:12  34:1 | | 51:18  51:18  51:19  51:20  51:21  51:22 | | 68:22  68:24  68:25  69:1  69:2  69:3  69:3 | |
| 19:14  19:15  19:16  19:16  19:17  19:18 | | 34:14  34:14  34:16  34:18  34:23  34:24 | | 51:23  52:1  52:1  52:2  52:5  52:6  52:7  52:8 | | 69:6  69:7  69:8  69:9  69:10  69:10  69:10 | |
| 19:19  19:21  19:21  19:23  19:25  20:2  20:4 | | 34:25  35:7  35:8  35:10  35:11  35:12  35:15 | | 52:11  52:12  52:14  52:15  52:16  52:18 | | 69:12  69:14  69:20  69:22  69:24  70:1  70:1 | |
| 20:4  20:7  20:14  20:16  20:16  20:17  20:17 | | 35:16  35:18  35:20  35:23  35:24  36:1  36:3 | | 52:19  52:20  52:20  52:20  52:22  52:23 | | 70:1  70:2  70:3  70:4  70:6  70:10  70:12 | |
| 20:18  20:18  20:20  20:22  20:23  20:23 | | 36:6  36:7  36:8  36:12  36:13  36:14  36:14 | | 52:24  53:1  53:3  53:4  53:5  53:6  53:10 | | 70:14  70:15  70:17  70:18  70:24  70:25  71: | |
| 20:23  20:24  21:5  21:6  21:10  21:10  21:11 | | 36:15  36:16  36:18  36:19  36:19  36:20 | | 53:11  53:13  53:14  53:16  53:17  53:21 | | 71:1  71:6  71:19  71:21  71:22  71:24  71:25 | |
| 21:13  21:13  21:14  21:15  21:17  21:18 | | 36:22  36:22  36:23  36:25  37:1  37:2  37:4 | | 53:22  53:24  53:25  54:3  54:4  54:8  54:11 | | 72:3  72:3  72:4  72:5  72:6  72:6  72:10 | |
| 21:19  21:20  21:21  21:23  21:23  21:24 | | 37:5  37:5  37:5  37:8  37:9  37:11  37:13 | | 54:14  54:15  54:15  54:17  54:17  54:18 | | 72:12  72:12  72:12  72:13  72:13  72:14 | |
| 21:25  22:2  22:3  22:6  22:8  22:9  22:10 | | 37:14  37:14  37:16  37:22  37:23  37:24 | | 54:20  54:20  54:20  54:21  55:3  55:7  55:8 | | 72:16  72:19  72:19  72:21  72:23  73:2  73:2 | |
| 22:11  22:11  22:12  22:15  22:20  22:21 | | 37:25  38:1  38:1  38:2  38:2  38:3  38:4  38:4 | | 55:12  55:20  55:21  56:2  56:4  56:8  56:10 | | 73:4  73:4  73:4  73:6  73:10  73:15  73:15 | |
| 22:22 | | 38:5  38:8  38:8  38:9  38:10  38:11  38:13 | | 56:11  56:12  56:16  56:17  56:20  56:22 | | 73:19  73:19  73:21  73:23 | |
| | | 38:16  38:16  38:21  38:22  38:22  38:23 | | 56:22  56:22  56:23  56:24  56:25  57:2  57:4 | | | |
| | | 38:24  38:25 | | 57:4  57:5  57:6 | | | |
| | | | | | | the(208) 73:23  73:24  74:1  74:1  74:2 | |
| | | | | | | 74:2  74:2  74:3  74:4  74:6  74:7  74:10 | |
| | | | | | | 74:14  74:15  74:16  74:16  74:21  74:21 | |
| | | | | | | 74:22  74:22  74:25  75:3  75:4  75:5  75:7 | |
| | | | | | | 75:7  75:9  75:10  75:12  75:15  75:15  75:16 | |
| | | | | | | 75:18  75:18  75:19  75:22  76:1  76:4  76:5 | |
| | | | | | | 76:5  76:6  76:7  76:8  76:9  76:10  76:16 | |
| | | | | | | 76:18  76:23  76:24  76:25  77:4  77:6  77:8 | |
| | | | | | | 77:8  77:9  77:10  77:11  77:14  77:16  77:18 | |
| | | | | | | 77:20  77:20  77:21  77:22  77:22  77:23 | |
| | | | | | | 77:25  78:1  78:2  78:3  78:4  78:5  78:6  78:7 | |
| | | | | | | 78:7  78:8  78:9  78:13  78:14  78:17  78:19 | |
| | | | | | | 78:21  78:24  79:1  79:2  79:4  79:6  79:8 | |
| | | | | | | 79:9  79:12  79:12  79:17  79:18  79:21  79:24 | |
| | | | | | | 80:2  80:3  80:5  80:6  80:6  80:7  80:7  80:8 | |
| | | | | | | 80:10  80:10  80:11  80:11  80:13  80:14 | |
| | | | | | | 80:14  80:15  80:19  80:23  81:1  81:4  81:5 | |
| | | | | | | 81:6  81:9  81:9  81:10  81:11  81:14  81:15 | |
| | | | | | | 81:17  81:21  81:23  81:25  82:1  82:5  82:7 | |
| | | | | | | 82:8  82:9  82:12  82:14  82:20  82:21  82:22 | |
| | | | | | | 83:2  83:3  83:4  83:5  83:10  83:12  83:13 | |
| | | | | | | 83:16  83:20  83:20  83:22  83:24  84:1  84:1 | |
| | | | | | | 84:2  84:6  84:6  84:7  84:7  84:10  84:12 | |
| | | | | | | 84:13  84:14  84:16  84:21  85:12  85:14 | |
| | | | | | | 85:15  85:18  85:19  85:20  86:2  86:4  86:6 | |
| | | | | | | 86:8  86:9  86:12  86:14  86:14  86:18  86:18 | |
| | | | | | | 86:20  86:21  86:23  87:1  87:4  87:6  87:11 | |
| | | | | | | 87:11  87:12  87:13  87:15  87:19  87:23  88:2 | |
| | | | | | | 88:4  88:9  88:10  88:11  88:13  88:16  88:17 | |
| | | | | | | 88:19  88:21  88:23  89:2  89:3  89:3  89:4 | |

# NORTEL.1.29.14.P.DOC

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| their(41) 12:8 13:22 13:24 14:5 15:9 15:16 16:24 22:12 22:25 24:1 24:18 24:2 29:7 29:23 33:13 33:14 39:8 40:18 43:16 43:17 43:24 50:23 51:20 53:23 53:24 56:13 56:13 58:15 61:21 63:1 63:1 63:4 63:5 63:23 63:24 64:3 68:14 68:23 69:7 73:25 74:4 | | think(87) 8:2 9:15 10:1 11:5 12:14 12:19 13:12 14:20 14:21 15:10 15:19 16:15 16:20 17:15 18:2 20:5 20:11 23:1 23:23 24:21 27:9 27:14 28:18 29:1 30:4 32:3 32:9 32:11 33:23 33:25 34:25 35:7 35:9 36:24 46:2 46:3 46:24 48:12 48:23 49:22 51:15 52:4 53:18 55:14 55:21 57:16 57:22 61:1 61:6 62:18 66:25 67:25 68:2 69:13 69:24 70:21 72:3 72:11 72:22 76:4 76:20 76:24 77:15 78:11 78:16 79:19 80:15 80:17 80:21 81:18 81:25 82:8 83:2 83:5 83:5 83:7 83:22 83:25 84:3 84:12 84:18 85:15 86:3 86:22 87:4 87:20 88:8 | | time(109) 1:17 10:6 11:17 13:4 13:5 13:6 13:8 13:11 13:15 13:18 13:19 13:20 13:2 14:9 14:24 15:14 15:22 16:6 16:11 17:1 17:11 17:14 17:17 20:7 21:9 21:13 22:5 22:12 22:23 23:1 23:5 23:5 23:13 23:25 23:18 23:21 23:22 24:7 24:18 24:21 24:2 24:25 24:6 26:11 26:14 27:7 29:23 31:22 32:5 32:11 32:12 32:21 32:23 33:9 33:17 33:19 33:20 36:17 36:18 37:8 49:3 52:2 52:10 53:23 54:11 54:13 54:15 54:19 54:22 55:2 56:23 57:4 57:6 61:11 63:7 68:4 68:11 68:17 68:20 68:22 69:3 69:8 69:9 69:19 69:25 70:12 70:15 70:15 70:20 70:24 70:25 71:5 71:21 73:20 73:22 73:23 75:3 75:6 75:8 75:15 76:23 80:20 81:2 81:17 82:12 85:1 86:10 | | trial(156) 7:24 8:5 9:14 9:15 9:20 9:21 9:25 10:7 10:19 11:14 12:4 14:22 15:1 15:20 16:9 17:13 18:2 18:6 19:5 19:21 22:4 23:3 29:1 32:5 32:11 33:8 35:9 35:13 35:15 35:17 35:19 35:21 35:22 36:7 36:8 36:17 36:19 38:8 38:16 38:22 38:24 39:12 39:13 40:19 40:22 41:22 41:23 42:6 42:10 42:12 42:17 42:18 42:19 43:1 43:3 43:11 43:15 44:5 44:14 44:15 44:16 44:18 44:19 45:7 45:7 45:8 47:5 47:9 47:12 47:13 47:20 49:11 50:10 51:5 51:6 51:10 51:15 51:21 52:10 52:11 52:12 52:14 52:21 53:10 53:23 53:24 54:2 54:4 54:8 54:10 54:11 54:11 54:12 54:15 54:21 55:9 56:22 57:4 57:6 57:9 57:15 57:23 57:24 58:2 58:5 58:17 60:4 60:23 61:25 62:14 64:20 65:19 66:24 67:1 67:3 67:15 67:17 67:23 67:25 68:3 68:10 68:13 68:18 68:22 69:2 69:6 69:10 69:10 69:15 69:15 69:25 70:5 70:12 70:18 70:20 70:21 70:24 70:24 72:24 73:5 73:10 73:17 73:22 76:9 78:8 78:13 79:25 80:13 80:20 81:25 82:3 82:5 82:24 83:21 87:6 |
| theirs(1) 15:18 | | | | | | | |
| them(24) 11:22 11:25 12:9 14:8 15:16 19:23 22:5 22:6 24:20 25:24 30:19 35:13 38:4 40:10 44:14 44:15 44:15 45:15 59:2 65:20 66:15 74:3 74:4 82:23 | | | | | | | |
| themselves(4) 12:5 13:1 14:8 29:8 | | | | | | | |
| then(26) 8:9 8:22 11:3 11:12 13:21 16:3 18:9 18:15 21:19 37:7 40:19 41:2 41:13 42:4 42:17 45:10 55:18 61:24 71:11 74:1 75:4 77:3 78:5 78:10 84:10 84:12 | | thinking(4) 12:20 81:24 81:24 82:6 | | timeframe(3) 73:1 73:2 75:6 | | | |
| | | thinks(1) 22:25 | | timely(1) 86:24 | | trials(22) 35:5 35:5 35:5 35:6 35:21 36:2 36:13 39:3 39:15 40:11 42:21 44:4 51:8 51:9 51:11 52:9 57:15 57:18 58:7 66:10 72:24 72:25 | |
| | | third-parties(1) 36:15 | | times(4) 15:15 31:11 33:4 55:2 | | | |
| theories(4) 23:20 23:20 23:21 23:23 | | third-party(1) 74:14 | | timetable(7) 25:11 39:18 39:19 41:12 41:15 41:18 41:21 | | | |
| theory(6) 30:15 43:5 43:8 43:8 43:24 44:7 | | this(146) 7:19 7:22 7:25 8:2 8:18 9:13 9:16 10:4 13:5 14:18 15:21 15:24 17:1 17:11 17:13 17:16 19:1 20:21 21:3 21:11 22:7 22:10 22:19 23:2 23:23 23:25 25:3 25:4 25:13 26:6 27:1 27:24 30:15 32:1 32:3 32:14 32:23 33:5 33:6 34:22 35:4 35:7 35:9 35:12 35:17 35:19 36:11 36:17 38:6 38:7 38:9 40:15 40:22 40:23 41:3 41:3 41:5 41:9 41:9 41:14 41:25 42:2 42:19 42:25 43:1 43:3 43:11 43:19 43:19 45:12 46:10 47:7 47:13 48:3 49:1 49:4 49:8 50:24 51:5 51:16 51:21 51:24 51:25 51:25 55:5 55:22 57:1 57:9 59:12 60:4 61:3 63:18 64:1 64:20 64:20 66:8 66:11 67:4 68:16 68:21 69:1 69:6 69:14 69:18 69:22 69:25 70:6 70:8 70:9 70:10 70:21 73:17 74:7 74:14 74:21 75:4 75:13 75:17 76:17 76:21 76:23 77:2 79:1 79:20 79:23 80:1 80:22 80:25 81:8 81:12 81:19 82:2 82:18 85:7 86:1 87:12 88:14 | | | | tried(3) 9:18 10:1 35:13 |
| there(104) 8:1 8:6 13:8 14:8 14:19 15:3 15:10 20:19 20:21 21:7 21:25 22:7 22:8 24:16 25:2 27:8 29:14 29:18 29:19 30:8 31:11 31:15 31:17 32:2 32:6 32:12 33:4 34:22 35:11 35:20 36:20 36:21 37:4 37:9 37:10 37:10 37:12 37:12 37:13 37:16 38:5 39:16 40:7 40:10 42:1 42:1 45:19 46:8 49:19 50:17 52:10 52:13 52:16 52:22 53:7 53:8 53:9 53:10 53:14 53:15 54:5 54:10 55:23 55:25 56:16 57:15 57:18 57:19 58:1 58:7 58:13 58:22 60:19 61:9 61:14 61:25 62:19 63:3 63:6 63:14 63:16 65:12 66:13 66:14 66:18 68:8 69:9 69:23 70:8 71:25 72:2 72:4 72:6 72:25 74:9 74:9 80:20 81:2 82:3 82:14 82:17 83:18 87:7 | | today(19) 7:13 8:3 9:22 14:3 15:1 21:12 23:25 35:14 37:18 42:3 42:6 42:12 47:4 63:25 66:8 68:13 70:17 84:13 87:17 | | true(3) 23:8 37:23 38:3 39:15 62:15 | |
| | | | | | | truly(1) 15:7 | |
| | | | | | | trust(4) 2:35 5:15 5:45 61:14 | |
| | | | | | | trustee(3) 2:36 3:34 5:4 | |
| | | | | | | trustees(1) 21:14 | |
| | | | | together(9) 10:13 33:8 39:23 43:21 68:2 80:8 87:9 87:21 88:14 | | try(4) 32:4 42:15 49:13 85:17 | |
| | | | | | | trying(7) 17:12 35:19 35:24 37:6 43:15 48:21 66:8 | |
| thereafter(3) 38:25 57:25 67:17 | | | | too(4) 48:5 61:13 68:24 73:22 | | | |
| thereby(1) 67:15 | | | | took(4) 31:6 67:21 72:12 72:21 | | | |
| therefore(4) 14:3 15:7 24:3 24:19 | | | | topic(1) 38:6 | | | |
| there'll(2) 44:4 59:3 | | | | toronto(5) 7:16 8:1 18:22 20:2 34:2 | | tuesday(2) 41:3 77:22 | |
| there's(38) 11:20 12:2 13:5 13:10 13:21 13:23 18:9 24:6 24:8 24:13 26:16 30:18 31:4 31:16 31:25 34:23 35:21 35:22 36:6 36:7 42:25 46:9 47:22 49:19 55:22 58:13 58:14 59:12 62:17 62:18 66:25 68:2 68:9 72:1 75:14 84:20 85:1 87:13 | | thomas(1) 6:5 | | tory's(1) 4:20 | | tunnel(2) 1:28 7:7 | |
| | | those(30) 10:6 16:4 16:25 17:6 19:7 23:21 30:5 33:22 38:18 38:19 39:23 45:22 46:1 48:13 52:12 53:17 54:5 64:11 66:17 68:2 69:3 71:17 72:12 73:7 75:17 75:23 76:3 82:11 83:25 85:10 | | total(1) 75:3 | | turn(10) 14:7 20:24 54:23 57:13 61:13 61:16 62:4 63:21 66:24 67:8 | |
| | | | | totally(1) 48:15 | | | |
| | | | | tough(1) 47:1 | | turning(1) 8:1 | |
| these(31) 11:2 15:24 15:25 16:19 17:4 17:7 25:8 30:22 31:3 31:24 34:20 36:2 36:4 38:11 38:13 38:15 38:19 40:11 42:20 44:12 44:25 48:14 50:11 64:2 64:4 64:6 65:22 69:16 74:11 74:12 80:17 | | though(4) 29:6 33:3 34:10 34:22 | | track(1) 33:4 | | tweed(3) 2:21 6:4 14:16 | |
| | | thought(7) 26:23 29:2 37:19 71:9 79:11 86:15 87:16 | | tracks(1) 29:4 | | twenty(1) 73:2 | |
| | | | | trade(2) 30:24 31:2 | | twice(2) 53:13 55:25 | |
| | | | | traditions(1) 51:1 | | two(28) 8:4 8:7 11:21 29:16 32:4 35:23 37:12 40:12 40:13 48:4 51:7 52:15 57:15 57:18 60:2 64:21 65:19 68:2 68:18 69:22 72:9 72:22 76:7 77:16 81:1 84:6 87:13 87:17 | |
| | | | | transaction(1) 50:3 | | | |
| they(65) 11:3 11:22 12:5 13:13 13:18 14:5 20:15 21:16 21:19 22:22 22:25 23:1 23:2 23:4 23:5 23:6 23:20 25:9 25:24 26:3 26:3 26:4 26:7 26:8 29:7 29:16 30:20 37:6 37:7 37:17 40:18 43:24 45:16 45:17 50:24 52:21 52:22 53:1 53:22 54:5 54:17 56:16 61:2 63:7 63:9 63:11 63:13 63:15 63:23 64:24 66:13 66:14 68:4 68:15 68:16 69:7 70:13 71:1 71:15 74:13 76:9 76:10 84:23 85:11 87:19 | | three(29) 16:3 20:14 20:14 20:19 20:20 21:16 21:23 22:11 31:18 33:11 38:20 38:2 39:23 40:21 41:9 42:2 43:20 45:4 55:8 57:21 57:22 64:22 67:14 73:10 73:13 73:20 75:13 75:17 81:1 | | transactions(2) 64:2 64:4 | | | |
| | | | | transcriber(1) 89:7 | | | |
| | | | | transcript(7) 1:20 1:50 54:4 86:9 86:20 87:11 89:3 | | tyler(2) 3:39 5:45 | |
| | | | | | | type(1) 49:6 | |
| | | | | | | u.k(13) 4:4 5:4 33:13 34:1 34:15 37:5 38:25 39:6 39:7 39:10 39:25 40:3 40:16 | |
| | | three-week(1) 74:22 | | transcription(2) 1:44 1:50 | | | |
| | | threes(1) 3:22 | | transcripts(1) 86:23 | | | |
| | | through(12) 11:3 20:20 31:9 32:1 35:5 40:18 48:15 50:18 66:15 67:22 75:7 81:8 | | transfer(6) 31:12 31:14 31:15 37:4 46:20 63:13 | | | |
| they'll(2) 24:20 86:17 | | | | | | u.s(40) 2:42 8:12 8:19 12:12 12:12 12:21 15:5 15:6 21:24 23:12 26:2 26:5 26:15 29:13 29:21 29:22 30:14 30:25 31:1 31:25 35:23 37:5 39:3 39:22 40:9 40:20 40:23 45:18 58:21 59:17 59:18 59:20 60:1 60:16 61:18 61:20 61:23 64:5 68:9 83:14 | |
| they're(18) 11:21 11:22 11:25 13:21 20:24 22:23 23:2 23:4 23:9 25:22 36:24 40:10 40:10 44:1 47:5 50:24 52:9 82:6 | | | | transferred(1) 30:3 | | | |
| | | throughout(5) 15:9 15:11 50:23 52:14 | | transfers(1) 63:6 | | | |
| | | throw(1) 38:1 | | transmission(1) 85:14 | | | |
| | | thursday(1) 77:23 | | treat(1) 29:8 | | | |
| thing(8) 23:25 31:3 34:6 44:12 78:5 83:19 86:7 87:2 | | tickets(1) 73:11 | | treated(2) 16:1 74:3 | | ucc(2) 23:14 26:14 | |
| | | | | treating(3) 21:4 27:1 31:17 | | ukp(9) 12:2 12:7 12:18 14:5 16:8 23:19 32:14 53:14 45:14 | |
| | | | | treatment(1) 18:6 | | | |
| things(11) 9:24 10:2 10:6 18:3 32:24 33:21 60:6 69:22 78:7 84:14 85:21 | | | | | | ukpc(13) 8:10 26:11 45:21 52:7 52:8 53:21 54:14 64:17 64:18 66:16 66:20 68:12 68:23 | |
| | | | | | | ukpc's(1) 66:12 | |
| | | | | | | ultimate(1) 23:23 | |
| | | | | | | ultimately(2) 22:10 43:14 | |
| | | | | | | unanimity(1) 9:15 | |
| | | | | | | unanimous(1) 41:19 | |
| | | | | | | uncertain(1) 71:3 | |
| | | | | | | unchanged(1) 57:2 | |

# NORTEL.1.29.14.P.DOC

| Word | Page:Line |
|------|-----------|
| under(9) | 15:20 26:5 38:22 40:14 40:19 42:6 45:2 57:23 59:11 |
| underestimate(2) | 48:25 74:10 |
| underline(1) | 55:2 |
| underscore(1) | 22:18 |
| understand(4) | 48:21 56:8 56:20 85:7 |
| understanding(5) | 13:12 15:13 16:22 55:6 61:17 |
| understands(1) | 69:14 |
| understood(4) | 48:19 57:16 61:3 67:18 |
| undertake(3) | 40:4 42:6 51:17 |
| undertaken(2) | 51:18 54:18 |
| unfair(3) | 60:25 60:25 61:1 |
| unfortunate(1) | 34:24 |
| unhappy(1) | 13:21 |
| unique(4) | 15:7 16:10 26:18 43:1 |
| united(4) | 1:1 1:23 16:7 27:10 |
| units(1) | 84:24 |
| university(2) | 84:18 85:3 |
| unjust(1) | 46:8 |
| unknown(9) | 8:5 26:20 26:23 57:12 67:10 76:3 76:12 76:15 85:5 |
| unless(4) | 13:14 30:20 56:5 69:5 |
| unlimited(1) | 56:23 |
| unresolved(1) | 61:20 |
| unsecured(3) | 2:5 4:25 16:7 |
| until(7) | 13:2 13:19 14:19 16:5 36:13 69:13 69:16 |
| upcoming(1) | 7:24 |
| update(1) | 7:23 |
| upon(14) | 41:19 54:5 54:19 56:5 59:3 63:2 63:8 63:10 63:11 63:13 65:1 68:15 82:1 87:10 |
| use(6) | 51:19 57:20 63:15 70:25 84:17 86:2 |
| used(1) | 27:9 |
| valid(1) | 80:21 |
| valuation(1) | 43:6 |
| valuations(1) | 63:14 |
| value(11) | 30:7 30:11 30:13 30:19 46:18 46:18 46:19 60:13 60:15 60:16 63:6 |
| valuing(1) | 30:16 |
| variety(1) | 64:25 |
| various(6) | 29:25 31:10 37:11 75:3 82:1 82:4 |
| vast(1) | 60:4 |
| vendor(3) | 85:14 85:18 85:24 |
| very(34) | 8:16 9:12 9:16 10:1 10:2 10:22 17:4 18:4 28:23 29:1 30:8 33:16 36:23 39:15 43:1 44:18 45:13 45:14 45:25 46:1 47:1 53:18 57:5 61:3 61:6 71:13 77:6 78:24 80:11 80:21 85:13 87:18 88:12 88:17 |
| vestige(1) | 68:1 |
| vice-versa(1) | 65:7 |
| view(9) | 8:12 13:1 16:10 35:2 42:9 53:6 62:22 80:15 83:9 |
| views(2) | 64:25 65:1 |
| virtual(1) | 37:20 |
| virtually(1) | 54:11 |
| visit(1) | 54:15 |
| volume(1) | 11:14 |
| wadsworth(1) | 6:22 |
| wagging(1) | 61:5 |
| wait(3) | 69:16 76:1 79:10 |
| waived(1) | 13:24 |
| want(28) | 11:21 12:13 13:14 14:6 19:10 19:10 22:18 23:2 27:4 34:21 38:1 38:1 38:2 38:6 38:8 44:3 44:8 45:25 65:6 66:3 64:6 75:22 76:3 77:11 77:12 84:25 85:2 86:22 |

| Word | Page:Line |
|------|-----------|
| wanted(6) | 14:17 16:25 19:21 19:23 71:10 84:13 |
| wants(1) | 11:6 |
| warranted(1) | 20:9 |
| was(78) | 10:22 13:13 15:3 15:8 15:14 15:20 17:1 20:7 25:2 26:23 27:2 27:9 28:25 30:2 30:8 34:5 34:8 35:11 36:20 36:22 36:22 37:9 39:11 39:12 39:13 39:15 39:16 39:21 40:2 40:7 41:4 41:5 41:6 41:23 48:4 50:20 50:21 52:24 54:21 55:3 59:9 59:9 61:10 63:3 63:16 64:25 66:7 67:8 67:14 67:17 67:19 67:19 67:23 67:24 67:25 68:5 68:5 69:18 72:20 74:7 77:14 77:17 79:10 79:19 80:10 80:10 81:24 82:15 83:20 83:22 83:23 83:24 84:13 87:17 87:18 88:15 88:23 |
| wasn't(1) | 16:23 |
| waster(1) | 73:20 |
| way(20) | 7:9 8:2 8:8 16:1 18:4 23:6 24:4 26:10 29:17 32:9 35:9 44:4 44:22 49:1 61:4 73:25 80:12 83:14 83:18 86:9 |
| ways(1) | 50:1 |
| we've(1) | 75:4 |
| webb(2) | 3:39 5:45 |
| website(1) | 49:19 |
| wednesday(2) | 7:2 77:23 |
| week(15) | 9:4 19:1 32:13 32:15 32:24 32:25 53:22 53:22 57:8 70:2 71:2 77:10 77:14 77:20 77:22 |
| weekend(1) | 12:20 |
| weeks(10) | 16:20 17:16 54:17 56:19 56:19 57:1 57:1 57:1 70:14 81:1 |
| weight(1) | 44:9 |
| welcome(2) | 9:17 78:8 |
| well(31) | 7:14 7:15 8:16 17:23 20:3 23:8 24:7 25:18 29:2 29:6 33:2 38:11 43:19 48:5 48:9 48:11 48:12 48:13 49:25 51:25 55:14 61:3 64:19 71:8 71:22 75:25 77:6 78:20 78:24 85:22 88:15 |
| went(2) | 41:14 48:7 |
| were(34) | 9:24 10:2 12:20 14:19 15:8 15:21 16:12 17:2 19:24 20:4 20:6 30:3 30:3 37:4 37:10 37:10 37:12 37:12 37:23 40:3 40:11 48:14 52:21 52:23 52:24 53:1 62:13 63:6 63:14 64:24 65:1 71:9 81:23 84:6 |
| we'd(2) | 9:17 78:11 |
| we'll(21) | 9:22 10:14 10:15 11:12 11:15 16:24 18:16 18:18 23:14 44:14 44:14 44:15 77:4 77:4 78:1 79:1 79:2 79:4 84:7 84:7 85:22 |
| we're(41) | 10:5 13:5 15:17 15:19 17:10 17:12 19:22 27:7 27:24 28:1 29:6 31:16 32:22 32:24 35:14 35:16 35:16 36:22 37:21 37:22 38:5 39:12 42:3 42:5 42:5 42:13 42:14 42:14 42:16 44:2 44:12 55:1 64:19 69:17 72:6 72:8 72:15 79:10 82:4 84:18 87:3 |
| we've(26) | 15:13 15:14 15:16 16:18 17:3 18:4 27:21 27:25 31:13 31:18 31:20 35:4 40:8 42:17 45:2 45:4 45:5 45:12 45:21 61:11 65:1 69:16 71:16 76:25 78:19 87:13 |

| Word | Page:Line |
|------|-----------|
| what(94) | 10:21 11:2 11:3 13:20 14:25 16:9 18:13 21:17 22:18 22:9 23:13 23:8 24:22 25:20 29:24 30:2 30:2 30:4 33:7 35:1 35:12 35:15 35:19 36:6 37:3 37:17 37:17 37:21 37:21 37:22 38:7 38:8 38:23 39:11 39:21 40:25 41:8 41:22 42:2 42:5 43:15 44:9 44:22 44:23 47:10 47:20 51:2 53:1 54:17 58:16 58:17 60:1 61:17 62:3 62:13 62:16 62:24 64:20 65:8 66:14 68:4 68:6 69:24 70:10 70:23 71:15 71:18 72:1 72:7 72:9 73:12 73:19 74:11 74:12 74:16 74:20 74:20 75:2 75:2 77:14 78:1 81:4 81:22 81:23 81:24 82:4 82:24 84:23 84:24 85:2 85:2 86:14 87:18 88:7 |
| whatever(2) | 23:1 24:2 |
| what's(6) | 14:22 18:6 20:13 20:17 43:19 48:3 |
| when(37) | 11:16 12:20 19:15 19:16 19:16 20:6 22:24 23:11 24:2 32:3 33:8 36:5 37:16 37:17 38:2 38:13 41:6 43:3 43:21 44:1 45:24 49:4 51:4 51:15 52:21 54:20 57:12 61:2 62:20 66:4 67:7 68:14 69:10 72:24 73:22 76:15 78:11 |
| where(21) | 14:25 16:18 17:2 20:6 21:1 21:9 22:1 31:11 36:6 36:7 42:2 42:12 48:21 56:10 63:23 65:8 66:7 67:4 72:2 72:12 84:16 |
| whereupon(1) | 88:23 |
| whether(21) | 10:9 10:13 11:18 13:17 14:7 14:9 41:17 46:7 46:8 46:9 46:12 49:5 50:21 56:18 57:1 57:15 69:15 76:22 82:22 82:25 85:6 |
| which(53) | 7:25 8:2 8:6 9:11 9:13 12:5 12:15 16:4 21:12 21:24 22:20 29:10 34:1 36:2 39:2 39:19 40:2 41:2 42:17 42:22 44:9 46:6 50:12 50:13 51:4 51:21 52:14 53:25 54:6 54:7 54:18 57:14 58:21 58:24 59:1 59:9 59:21 59:24 60:13 62:2 62:8 62:12 62:14 67:3 67:21 67:22 70:4 70:11 70:13 75:20 77:19 80:10 |
| while(5) | 21:8 31:15 45:5 51:6 62:9 |
| white(1) | 85:4 |
| who(26) | 15:8 16:1 21:11 21:22 22:6 25:2 26:16 33:16 37:16 37:17 42:15 43:16 45:20 50:23 53:12 53:13 54:10 64:24 67:17 69:2 70:7 73:18 74:1 82:17 87:21 87:23 |
| whole(2) | 37:3 73:14 |
| whom(2) | 15:15 37:17 |
| whomever(1) | 74:15 |
| whose(2) | 26:9 50:13 |
| who's(3) | 21:1 26:18 86:18 |
| why(15) | 8:21 18:15 22:19 26:16 30:25 31:4 31:8 31:25 32:22 33:23 43:24 60:4 73:13 75:25 87:16 |
| will(128) | 8:14 8:23 10:20 11:9 11:11 11:13 13:8 16:20 19:2 19:5 19:6 19:17 20:3 21:20 21:22 23:14 23:15 23:16 23:17 23:19 23:22 26:4 26:7 27:4 28:3 29:20 30:6 30:22 31:23 32:6 32:9 32:19 33:6 34:7 36:4 38:22 38:24 39:4 39:20 40:22 42:15 42:19 44:5 44:6 44:9 44:16 45:7 45:19 47:8 47:9 49:4 49:8 49:9 49:10 51:21 53:10 53:18 54:2 54:3 54:5 54:6 54:8 54:9 54:10 54:11 55:21 56:14 56:16 56:16 57:6 58:23 58:24 58:25 59:1 59:2 59:6 59:7 60:5 61:9 61:14 61:18 62:1 62:21 62:22 64:16 66:13 67:2 68:15 69:2 69:6 69:11 69:18 69:18 70:8 71:18 71:21 71:22 72:13 72:13 73:11 74:15 74:16 75:4 75:5 75:17 75:25 79:25 80:3 80:3 80:4 80:7 80:13 80:16 80:20 80:23 81:10 81:24 82:8 82:17 85:11 85:22 86:5 87:6 88:4 88:14 |

| Word | Page:Line |
|------|-----------|
| willke(1) | 34:5 |
| willkie(2) | 4:4 5:11 |
| wilmington(12) | 1:14 1:32 2:9 2:32 2:35 2:46 3:15 3:22 3:36 4:14 5:15 7:2 |
| win(1) | 75:23 |
| winkler's(1) | 49:19 |
| wiring(1) | 85:18 |
| wish(2) | 22:15 83:12 |
| wished(1) | 25:2 |
| with(165) | 8:18 8:9 8:18 9:8 9:10 9:17 11:3 11:4 12:5 12:18 12:19 12:21 14:18 15:13 15:14 15:15 15:15 15:16 16:4 16:8 16:17 17:5 17:12 17:15 17:18 18:3 19:3 19:13 20:12 21:10 21:24 21:25 22:2 23:5 24:4 25:8 25:23 26:3 26:6 26:9 27:1 27:4 27:8 27:11 28:12 28:16 29:2 29:25 30:6 30:11 30:21 30:25 31:12 31:14 32:4 32:12 33:18 34:7 35:13 36:1 36:15 36:23 37:8 37:8 37:13 38:7 38:24 38:25 41:1 41:8 41:13 41:16 42:9 42:9 42:11 43:18 44:14 44:14 44:15 45:9 45:21 45:21 46:11 46:20 47:5 49:1 49:22 49:25 51:1 51:7 51:16 51:22 52:22 53:2 54:7 55:4 55:18 55:19 55:20 57:4 57:24 57:25 58:8 59:18 61:10 62:12 62:20 63:14 64:18 65:7 65:18 67:22 69:6 69:6 70:11 71:1 71:2 72:2 72:5 72:10 72:13 72:14 72:17 72:18 72:19 72:20 72:23 72:24 73:12 74:16 74:25 75:1 75:1 75:5 75:6 75:8 75:15 76:7 76:25 77:21 77:21 78:2 78:10 78:20 79:11 80:3 80:13 80:13 80:18 80:19 80:22 81:3 81:9 81:10 83:17 84:15 84:15 84:17 84:21 84:21 85:8 85:13 86:13 87:6 88:4 |
| within(10) | 16:21 21:9 21:20 21:21 21:22 26:16 40:18 69:14 72:16 87:4 |
| without(7) | 20:8 20:21 24:17 27:20 37:19 41:20 49:16 |
| witness(8) | 34:25 43:4 43:23 44:11 59:1 62:23 69:13 87:24 |
| witnesses(32) | 10:10 11:1 11:2 32:7 36:13 43:22 47:4 51:12 52:24 53:3 54:2 54:2 54:19 55:24 56:5 56:16 57:7 59:5 59:23 61:1 68:15 68:22 69:2 69:16 69:17 70:13 73:18 76:7 76:9 76:9 82:17 |
| witnessing(1) | 65:13 |
| won't(1) | 45:20 |
| wonderful(1) | 78:3 |
| won't(5) | 26:12 57:11 63:21 74:9 83:18 |
| word(2) | 55:2 80:19 |
| wording(1) | 7:20 |
| words(1) | 71:11 |
| work(21) | 21:5 21:21 21:22 27:4 27:4 34:8 41:1 42:16 46:3 71:6 75:6 76:5 80:8 80:23 81:25 83:23 84:1 85:22 87:21 88:4 88:13 |
| worked(3) | 23:24 27:5 83:5 |
| working(3) | 69:5 74:23 80:17 |
| worse(1) | 51:5 |
| worth(1) | 24:23 |
| worthwhile(1) | 78:23 |
| would(66) | 8:7 8:8 8:10 10:11 10:17 13:4 14:3 14:14 14:9 16:9 17:15 21:7 22:3 24:3 24:9 25:24 27:18 28:14 32:18 32:23 32:24 33:1 33:23 33:19 35:1 37:20 42:23 45:8 50:15 55:3 55:11 56:24 59:10 59:11 59:12 60:24 61:4 61:4 61:24 70:19 71:4 73:12 75:19 78:3 78:6 78:8 78:22 79:13 80:5 80:9 81:6 82:10 83:16 83:25 84:5 85:17 86:2 86:3 86:8 86:9 |
| wouldn't(2) | 55:9 86:20 |
| writing(4) | 19:13 54:1 57:10 67:5 |
| written(2) | 63:25 67:19 |

| Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|

wrong(1) 73:12

wrote(1) 44:23

wunder(1) 6:26

year(10) 7:25 15:2 15:24 16:15 17:8 55:9
56:24 64:21 73:13 75:13

years(5) 22:7 64:21 64:22 64:22 64:22

yes(32) 7:10 7:18 9:5 10:21 10:24 11:24
12:10 12:16 14:12 17:9 17:25 23:20 25:6
27:15 28:18 28:20 31:7 34:4 34:9 47:19
50:10 66:5 67:11 77:15 78:4 79:4 79:17
81:14 82:14 85:19 88:2 88:19

yesterday(1) 12:25

yet(4) 9:12 22:5 50:19 66:6

york(8) 1:39 2:17 2:24 2:39 3:8 3:30 3:42
4:8

you(259) 7:4 7:8 7:12 7:14 7:21 7:25 8:20
8:22 9:1 9:2 9:16 11:4 13:14 13:23 14:11
17:19 17:20 17:21 17:22 18:16 18:17
19:25 20:11 20:24 21:12 21:17 21:17
22:14 22:15 23:7 24:25 25:1 28:2 28:16
28:23 30:5 30:11 30:13 30:16 33:8 33:9
33:16 33:20 33:21 33:24 34:17 34:18
34:20 34:21 35:1 35:17 35:18 35:24 36:12
36:18 37:1 37:3 37:17 38:5 38:16 38:17
38:18 38:18 38:19 38:20 39:1 39:16 39:19
39:20 40:1 40:5 40:5 40:6 40:6 40:7
40:11 40:12 40:13 40:14 41:2 41:8 42:2
42:4 43:4 43:4 43:18 43:19 43:20 44:7
44:8 44:8 44:9 44:10 44:21 44:22 44:23
44:23 44:24 44:25 45:3 45:24 45:25 46:9
48:3 48:9 48:10 48:12 48:13 49:8 49:18
50:10 52:3 53:7 54:18 55:4 55:9 55:12
55:17 55:18 55:18 56:1 56:4 56:6 56:6
56:7 56:14 57:3 57:8 57:20 58:25 59:2
60:13 60:20 60:22 61:8 61:9 61:13 61:14
61:16 61:16 62:4 62:4 62:6 62:11 62:11
62:12 62:14 62:15 62:23 62:23 63:20
63:21 63:24 65:6 65:11 65:16 65:16 65:20
65:20 65:22 65:22 65:23 66:1 66:7 66:12
66:13 66:18 66:19 67:21 67:24 68:1 68:13
70:6 70:23 71:9 71:10 71:19 71:24 72:12
72:21 73:8 73:9 73:15 73:17 74:6 74:18
74:21 74:24 75:1 75:4 75:6 75:8 75:8
75:9 75:10 75:16 75:22 75:23 76:1 76:1
76:13 76:20 76:20 76:22 76:22 77:6 77:10
77:13 77:19 78:6 78:10 78:25 79:1 79:5
79:6 79:9 80:17 80:21 80:23 80:24 80:25
81:2 81:12 81:17 81:21 81:22 81:22 82:2
82:4 82:10 82:13 83:12 83:12 84:6 84:15
84:16 84:19 84:20 84:23 84:24 84:25 85:4
85:5 85:20 85:23 85:24 85:25 86:9 86:10
86:10 87:5 87:9 87:10 88:3 88:4 88:12
88:17 88:20 88:21

you've(1) 56:5

young(2) 3:11 3:19

your(81) 7:5 7:9 8:5 8:17 9:1 10:2 13:1
14:13 17:19 17:22 18:17 18:18 18:20 20:1
22:17 24:11 25:2 26:20 27:21 28:5 28:23
31:8 31:25 32:15 34:3 34:20 35:2 35:24
38:20 40:12 40:13 41:2 44:10 44:11 46:1
46:1 46:13 46:14 47:23 48:20 52:4 55:4
55:18 55:19 55:22 57:10 57:11 58:19 61:9
61:13 61:16 62:5 62:12 62:18 64:24 65:1
66:13 66:20 67:8 67:13 67:24 71:7 71:7
71:12 72:25 76:3 76:21 77:15 80:9 81:3
82:13 83:13 84:5 85:5 85:15 86:12 88:3
88:13 88:14 88:16 88:20

yourself(1) 83:15

yourselves(1) 65:7

you'd(1) 28:21

you'll(9) 13:9 24:2 41:4 41:5 42:5 45:3
61:7 66:5 82:11

you're(31) 7:23 35:25 40:3 44:10 46:4
46:6 46:7 46:13 46:17 46:23 46:24 46:25
46:25 47:1 48:11 48:21 48:23 56:9 56:11
56:12 65:8 65:20 65:21 65:25 71:4 71:8
75:7 76:21 79:15 81:16 82:25

you've(12) 30:23 37:2 44:6 46:1 65:17
65:19 65:23 74:23 74:23 74:24 74:25 81:7

zelbo(1) 1:37

zero(1) 7:16

ziegler(4) 18:20 20:1 20:2 80:7

ziegler's(1) 80:2

ziehl(1) 2:28

zloto(1) 6:30

# TAB E

124



February 5, 2014

**VIA HAND DELIVERED**

Jennifer Stam
Direct 416-862-5697
jennifer.stam@gowlings.com
File No. T991328

The Honourable Justice Geoffrey B. Morawetz
Ontario Superior Court of Justice
Judge's Administration
330 University Avenue, 7th Floor
Toronto, Ontario  M5G 1R7

Your Honour:

**Re:  Nortel Networks Corporation, et. al. (Court File No. 09-CL-7950): Pre-Trial Conference
Held on January 29, 2014**

In connection with the pre-trial conference held on January 29, 2014 with the United States Bankruptcy Court for the District of Delaware (the "US Court") and as requested by this Court, enclosed is the pre-trial conference memorandum that has been agreed upon by the Core Parties.

We are also making arrangements for the memo to be filed with the US Court.

Sincerely,

**GOWLING LAFLEUR HENDERSON LLP**

Jennifer Stam

JS:kd

Encl.

TOR_LAW 835028\1\

Gowling Lafleur Henderson LLP · Lawyers · Patent and Trade-mark Agents

1 First Canadian Place · 100 King Street West · Suite 1600 · Toronto · Ontario · M5X 1G5 · Canada  T 416-862-7525  F 416-862-7661  gowlings.com

125

File No. 09-CL-7950

**SUPERIOR COURT OF JUSTICE - ONTARIO**
**(COMMERCIAL LIST)**

RE:        IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

               AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

BEFORE:    MORAWETZ, RSJ.

COUNSEL:  A. Mark and J. Kimmel, for the Ernst & Young Inc., the Monitor

             J. Stam, for Nortel Networks Corporation et. al.

             S. Block and S. Bomhof, for the US Debtors

             M. Gottlieb and T. Wynne, for the EMEA Debtors

             M. Barrack, J. Finnigan, R. Lewis, for the UK Pension Claimants

             M. Zigler and B. Walancik, for the Canadian Creditors Committee

             R. Swan and G. Finlayson, for the ad hoc bondholders group

             L. Barnes, for the former directors and officers of Nortel Networks Corporation and Nortel Networks Limited

             S. Kukulowicz, for the unsecured creditors committee

             J. Salmas, for Wilmington Trust, National Association

- 2 -

**HEARD:**    **January 29, 2014**

## PRE-TRIAL MANAGEMENT MEMORANDUM

At this jointly convened pre-trial conference which was conducted via teleconference with a parallel pre-trial conference being held in the United States Bankruptcy Court with His Honour, Judge Gross pursuant to the cross-border protocol which has previously been approved in both Courts. The Ontario and Delaware Courts approved the Joint Trial Protocol submitted by the parties, subject to the following directions and any corresponding adjustments to be incorporated into the final form to be attached to the approval orders in both jurisdictions (which may also include amendments arising out of the stipulations referred to in footnote #8):

1. In respect of the issue raised by the CCC, Justice Morawetz directed that the point will be addressed later and, following the presentations by the parties at pages 12-28 of the transcript, provided guidance as set out in the 1st paragraph of page 80 of the transcript, all of which is excerpted in Schedule A hereto.

2. In respect of the submissions and positions concerning the EMEA Debtors' and UK Pension Claimants' requests, the matters will proceed as a single trial commencing on May 12. The trial will generally address allocation issues (and issues that involves both allocation and claims) first, followed by issues related to Canadian Claims.

3. The 20 days allotted for trial are not set in stone. Additional trial time will be allocated with some time set aside to deal exclusively with the Canadian Claims of the EMEA Debtors and the UKPC. A request for up to 10 to 15 total additional trial days will be considered. The parties are to confer and advise the Courts of the specific number of trial days sought.

4. The next joint pre-trial conference will be held on March 12, 2014 at 1 pm.

127

## SCHEDULE A

Attached

```
 1  obviously significant, the concerns that are expressed by the

 2  EMEA Debtors and the UKP, but there's complete buy-in by the

 3  parties that the framework that's established here in the

 4  Trial Protocol is the appropriate framework and the Objectors

 5  themselves don't disagree with that, which I'm quite pleased

 6  to say.

 7           I'll defer second to the EMEA Debtors and UKP

 8  Claimants to talk about their issues since obviously it's

 9  really more of a disagreement between them --

10           THE COURT:  Yes.

11           MR. ROSENTHAL:  -- and the Canadian Debtors now that

12  the U.S. Debtors have settled the claims here in the U.S.

13  Court.  But I just want to mention briefly, because I don't

14  think the Courts really need to dwell on the first Objection

15  which is that of the CCC, specifically to footnote one --

16           THE COURT:  Yes.

17           MR. ROSENTHAL:  -- and other than the first

18  sentence.  The first sentence deals with UKP and EMEA and,

19  after that, it deals with the Bondholders.  And I think, or at

20  least over the weekend when we were thinking about it at the

21  U.S. Debtors, we had conversations with the Bondholders and

22  we decided that, in many respects, it's a premature dispute

23  that we can resolve much more easily for the Courts right now

24  and agree to simply delete that entire passage of footnote

25  one, and we proposed that to the CCC yesterday and they can
```

13

1  speak for themselves.  But in our view, Your Honors, because

2  the parties have deferred until the late February meet-and-

3  confer and the March Conference that we're proposing for the

4  Courts, how the time between the parties would be allocated,

5  really, there's no need at this point to say how much time

6  specifically the CCC should get; how much time -- in some

7  respects, it may play out as being really an intra-Canadian

8  issue because there will be an allocation of time for the

9  Canadian group, you'll have that being divided up among its

10 members, and there's a footnote in here saying that one group

11 can't take all of the time allocated to it so, to make sure

12 that it's fair, I think the CCC, to my understanding, is that

13 they had asked that that footnote be put in.  It was put in.

14 You know, unless, of course, the members of the group all want

15 one party to take all of its time on a particular issue.  So

16 our suggestion is we could delete the rest of that footnote

17 one; we could defer the issue of whether the CCC feels that

18 they are not getting a fair amount of time out of the Canadian

19 allocation of time until the parties sit down and actually

20 talk about what the allocation of time should be.  And if

21 there's a disagreement or if they're unhappy about it, then

22 nobody's saying that any of their rights to go to the Courts

23 and say, you know, that there's some disagreement at that time,

24 nobody's saying that their rights are waived in that regard.

25 So that's our proposal.

14

1        THE COURT:  Okay.

2        MR. ROSENTHAL:  It takes that issue off the table

3   for today and I would just say that the only issue, therefore,

4   that the Court needs to really address would be the EMEA and

5   UKP concerns that they have expressed in their filings.

6        Obviously, I don't want to speak for the CCC and

7   I'm happy to turn over the microphone, whether it's here or

8   there to allow them to speak for themselves and I'll address

9   it at any point in time that the Courts would like, whether

10  the Courts have any comments at all on the Protocol.

11       THE COURT:  All right.  Thank you, Mr. Rosenthal.

12  It might -- yes, please.

13       MR. LEBLANC:  Good morning, Your Honor and --

14       THE COURT:  Good morning.

15       MR. LEBLANC:  -- and Mr. Justice Morawetz.  Andrew

16  Leblanc, at Milbank Tweed Hadley & McCloy, on behalf of the

17  Bondholder Group, and I just wanted to make one point.  I

18  completely agree with Mr. Rosenthal that this is an issue that

19  we can defer until later but there were comments made in the

20  submission of the CCC that I think are necessary for us to at

21  least address in some form or fashion.  I think it's important

22  for the Court to recognize that what's reflected in the Trial

23  Protocol is actually a concession by the Bondholder Group to

24  not get a separate allocation of time for the Bondholder Group

25  separately.  And what I mean by that, not because of where we

1  are situated today, but because the Trial Protocol that the

2  Courts entered in May of last year, May 17th, identified the

3  Bondholder Group as a separate allocation group.  So there was

4  the EMEA allocation group, the Canadian allocation group, the

5  U.S. allocation group, and recognizing the fact that the

6  Bondholders have claims against both Canada and the U.S. and,

7  therefore, are truly unique among the constituencies, that we

8  were a separate allocation group, a core party, who was in

9  their own allocation group.  We haven't, throughout the

10  process, and I think there hasn't been any suggestion that we

11  have, but throughout the process, we have not abused our

12  status as being a separate allocation group.  Quite to the

13  contrary, we've acted in accordance with the understanding

14  that was in place at the time.  We've acted in concert with

15  the parties with whom we share an interest.  So, at times, with

16  the Canadian Debtors, we've discussed with them their document

17  requests, and by doing so, we're able to make comments to

18  theirs instead of serving our own.  So we haven't abused the

19  fact that we're a separate allocation group, but we think by

20  right, by the fact that under the Trial Protocol that was

21  entered by this Court, we were a separate allocation group.

22  We could have demanded our own slot of time just like each of

23  the other allocation groups did because that is something that

24  this Court -- that these Courts ordered more than almost a year

25  ago now.  We didn't do that.  We made these concessions

1   to be treated the same way as other core parties who are not

2   part of an allocation group to identify the allocation group,

3   to limit it to the three Estate allocation groups, and then to

4   identify which of those allocation groups we are aligned with

5   and be part of that and to defer until another date the

6   allocation of time so that we can ensure ourselves just like

7   the Unsecured Creditors Committee here in the United States,

8   the UKP in -- with respect to the EMEA Estates.  We could

9   assure ourselves a meaningful role at trial given what we would

10  view as our unique and substantial economic interests in the

11  matter, but at the same time not take a disparate advantage of

12  the fact that we were identified as our own allocation group.

13  So the compromises that are reflected in the Proposed Protocol

14  are compromises literally that we made from the position that

15  the Courts ordered almost a year ago now and that -- I think

16  that's important to know.

17          Now, with the discussion that Mr. Rosenthal just

18  mentioned where we've agreed now to take out footnote one, in

19  light of the rest of the language and the fact that these are

20  issues that will be resolved in the coming weeks, we think it

21  really should resolve the entirety of the issue.  But our

22  understanding is that the omission of the offending language

23  of footnote one wasn't an acceptable concession on our part

24  and so we'll leave it to the CCC to state their position.  But

25  I just wanted to make those points that we have been

1    recognized from the time that the IFSA was entered in this

2    case where we were given the right to consent to an agreement

3    on allocation of sales proceeds.  We've been recognized as a

4    group that has a very distinct economic interest in these

5    matters that isn't completely aligned economically with the

6    interests of any of the other Estates, and it's for those

7    reasons that these Courts have recognized that in the May

8    Protocol of last year.

9                THE COURT:  Yes.

10               MR. LEBLANC:  And as we said, we're not even asking

11   for any advantage as a result of that at this point in time.

12   Instead, we're trying to be cooperative with every party and

13   make this trial as efficient as possible in the limited period

14   of time that the Court's allowed for it.

15               So we would agree with Mr. Rosenthal that we think

16   this is an issue that we can deal with in the coming weeks.

17   If it becomes a problem, we can address it at that time.

18               THE COURT:  All right.

19               MR. LEBLANC:  Thank you, Your Honors.

20               THE COURT:  Thank you, Mr. Leblanc.  Mr. Adler,

21   good morning.  Good to see you again.

22               MR. ADLER:  Good morning.  Good to see you, Your

23   Honor, and Justice Morawetz as well.  It's Derek Adler, for

24   the Joint Administrators and the EMEA Debtors.

25               THE COURT:  Yes.

134

18

1        MR. ADLER:  As Mr. Rosenthal said, we support the

2   Trial Protocol.  We think it's a terrific outline for how

3   things should go.  It lays out a plan for dealing with both

4   allocation and claims in a very efficient way.  And we've

5   just made one request that doesn't affect the substance of

6   what's in the Trial Protocol and that concerns the treatment

7   of evidence and arguments that pertain specifically to

8   claims, the remaining claims that the EMEA Debtors have

9   asserted against the Canadian Estate and then there's a --

10       JUSTICE MORAWETZ:  Mr. Adler, I hesitate to

11  interrupt, but Judge Gross, does it make more sense to finish

12  off the issues relating to the CCC that have now been

13  introduced and in the Protocol what -- that have been

14  introduced by Mr. Rosenthal and by Mr. Leblanc?

15       THE COURT:  That's -- why don't we then?  Mr.

16  Adler, if you don't mind, we'll just --

17       MR. ADLER:  Thank you, Your Honor.  That's fine.

18       THE COURT:  All right.  We'll just interrupt your

19  presentation.

20       MR. ZIEGLER:  Your Honor?

21       MR. MARK:  So, Judge Gross, good morning.  It's

22  Alan Mark for the Canadian Monitor and Debtors in Toronto,

23  and just before I hand it over to Counsel for the CCC, just a

24  couple of notes about the Protocol.

25       Firstly, as alluded to by Mr. Rosenthal, the

1  parties expect this week to finalize a discovery stipulation

2  regarding the representative depositions and that will result

3  in some new dates and some new process with respect to the

4  pre-trial process.  So it's our expectation that the final

5  form of the Joint Trial Protocol that will be remitted to the

6  Court for approval will be slightly different, but we don't

7  expect those issues to be controversial, but rather, just to

8  reflect a further stipulation that the parties are going to

9  enter into.

10         Secondly, I just want to note, I don't want to

11  repeat anything Mr. Rosenthal says, but as Justice Gross

12  noted, the Protocol does provide, by and large, for the cases

13  in chief to be pre-filed, in writing, with the Court.  That

14  means that we have, in the Protocol, been somewhat

15  presumptuous in setting dates for when the parties' Briefs,

16  when the exhibit lists, when the Pre-Trial Affidavits and

17  expert reports will be provided to the Court.  And another

18  consequence of that front-end loaded process is that the

19  Protocol does provide the opportunity for pre-trial

20  Objections and possibly Motions to resolve some issues before

21  the trial begins.  So I just wanted to indicate that if the

22  Courts had any questions about that proposed schedule, we're

23  happy to address them, but I just wanted to make sure the

24  Courts were aware.

25         THE COURT:  Thank you, Mr. Mark.

1              MR. ZIEGLER:  Your Honor?  It's Mark -- and Judge

2    Gross, it's Mark Ziegler in Toronto speaking for the CCC, and

3    we have Counsel in Delaware as well, but I will respond to

4    the issues that were raised by Mr. Rosenthal and by the

5    Noteholders' Counsel, Mr. Leblanc.  I think we have to step

6    back to where we were last May, when my clients also sought a

7    separate discovery group.  That request at the time was

8    denied, without prejudice, to our seeking relief at a later

9    date, should we believe it is warranted, and that's in an

10   email that Judge Gross and Justice Morawetz sent to us on May

11   15th.  I can circulate copies if you like but I think everyone

12   is familiar with that.

13             What's happened since is pretty clear.  We have

14   three Estates and behind each of the Estates, three different

15   interest groups.  They break down essentially to the

16   Noteholder groups and Pensioner groups.  And the issue here

17   is not the removal of a footnote.  It's what's in the rest of

18   the Protocol as the default position once that footnote is

19   removed.  Because essentially, although there are three major

20   interests that could be addressed through the three main

21   Estates, there is reserve in this Protocol without footnote

22   one, and particularly, I am talking about the ability to make

23   oral submissions to the Court at the opening and at the

24   closing, and you can turn off the references that they're

25   essentially Section 1(B) on opening statements on page seven

21

1  and Section 3, all (B) on page 12 where it's everybody who's

2  not part of an allocation group has at least 15 minutes to

3  make opening submissions and closing submissions and this

4  isn't just about 15 minutes at each end.  It's about treating

5  all the Creditor interests equally.  If we all had to work

6  within three allocation groups, including the Noteholders,

7  that would be fine.  But we don't.  There is, in effect, a

8  fourth column that gets to make submissions while we are

9  restricted within an allocation group where we share time,

10  not just with the Canadian Debtors and the Monitor, but also

11  the Directors who have to defend claims.  This allocation

12  Protocol which you are being asked to approve today carves

13  out time as a default position for the Noteholders and the

14  Indenture Trustees of at least 15 minutes at the front end

15  and at least 15 minutes at the back end.  So it's a lovely

16  concession to take out footnote one, but if they don't tell

17  you what the default position is, you can see it's a bit of

18  slate of hands in my position.  All my clients ask is the

19  same 15-minute right and then at the back end so that they

20  don't get jammed within the allocation group.  We will do our

21  best to work within the allocation group, just as I'm sure

22  everybody else who is a party in interest will work within

23  the three allocation groups and the Noteholders have, in

24  effect, joined up with the U.S. group, which is fine.  We

25  have joined up with the Canadian group but there is one issue



1  where we differ.  We take one allocation position that is not

2  in common as an alternative position with the Monitor, that

3  being the pro-rata distribution, and it would be highly

4  prejudicial to my clients to have a Trial Protocol go forward

5  that doesn't carve out explicit time for them, yet does for

6  the parties who are most adverse in interest to them.  At

7  this stage, five years in, there are pensioner interests and

8  there are Noteholder interests.  What happened before the

9  filing; what happened at the IFSA almost doesn't matter in

10 the sense of, ultimately, this is about distributions to

11 Creditors and if that's the case, the three biggest Creditor

12 groups have got to have their time before the Court.  That's

13 all I've got to say for now.

14           JUSTICE MORAWETZ:  Thank you.

15           THE COURT:  Mr. Rosenthal, did you wish to

16 respond?

17           MR. ROSENTHAL:  Your Honor, just about one minute

18 is all I need to respond.  Just -- I just want to underscore

19 why we believe that this issue is premature.  We believe it's

20 premature for several reasons, one of which is that the

21 Canadian Monitor and Debtors support the Protocol as

22 submitted and they said, and it's reflected in the Protocol,

23 they're going to give time to the CCC.  If the CCC, after

24 February 28th when we make the next round of submissions

25 regarding allocations, thinks that they haven't gotten their

1  15 minutes or whatever amount of time that they think that

2  they want, and I agree that this is a broader issue they're

3  talking about and it really is about the trial generally, if

4  they have any complaints about how they're dividing up the

5  time with the Canadian group, that's the time that they could

6  raise it.  They say that -- by the way, it's not just the

7  Monitor and Debtors and the CCC, but you have Ds & Os as

8  well, it's actually not true.  The Canadian allocation group

9  does not include the Ds & Os.  They're only Claims Defendants

10 and the Protocol divides up the opening statements and

11 closing arguments for allocation and claims.  So when it

12 comes to the allocation opening, we contemplate the U.S. is

13 going to get a set amount of time.  We don't know what that

14 is going to be.  We'll give an opening and the UCC will give

15 an opening.  Canada will get a set amount of time and the

16 Monitor and Debtors will give an opening and the CCC will

17 give an opening.  The EMEA group will get a set amount of

18 time and we don't know what that is.  And EMEA Debtors and

19 the UKP will give an opening.  And if parties have multiple

20 theories or different theories from each other, yes, they may

21 need time to present those theories, and the other parties

22 will need a comparable amount of time to respond to the

23 ultimate theories.  But I think this is all going to be

24 something that's worked out over the next month as opposed to

25 saying today how this thing -- the CCC and the Canadian group

24

1   be.  And if Canada doesn't give the CCC their 15 minutes or

2   whatever, you'll hear it when we have the hearing in mid-

3   March, and therefore, we would suggest that either footnote

4   one stay in or come out.  Either way is fine with us.  But

5   that we ought to proceed and proceed to the next step and see

6   if there's any dispute that the Courts even need to resolve.

7            THE COURT:  Well, I haven't taken time to look,

8   but I assume that there's nothing in the Protocol, and I

9   don't remember seeing anything that would preclude the CCC

10  from making an opening and closing.

11           MR. ROSENTHAL:  Quite to the contrary, Your Honor.

12           THE COURT:  Right.

13           MR. ROSENTHAL:  There's a footnote.  I don't have

14  the footnote number handy.

15           THE COURT:  Right.

16           MR. ROSENTHAL:  But there is a footnote that

17  expressly says that without permission of the other parties

18  in their group, a party cannot take all of the time allocated

19  to it.  So, therefore, the CCC has a guaranty, and the

20  Canadian Debtors I believe have also assured them they'll get

21  time to deliver their opening.  So I think as to how much

22  that time should be, that's exactly what the next months'

23  worth of negotiations is all about.

24           THE COURT:  Okay.

25           MR. ROSENTHAL:  Thank you.

1      THE COURT:  Thank you, Mr. Rosenthal.  Justice

2  Morawetz, was there anyone in your Courtroom who wished to be

3  heard on this point?

4      JUSTICE MORAWETZ:  Anything further on this issue?

5  Mr. Swan.

6      MR. SWAN:  Yes, just briefly in reply on behalf of

7  the Bondholders.  Every single party here has agreed to the

8  Protocol on all of these issues with the exception of the

9  CCC.  They are the only party that's objecting.  The

10  fundamental distinction that's been identified is that in the

11  Litigation Timetable, the Bondholder group is a separate

12  allocation group.  The Bondholder group is, in effect,

13  compromising procedural rights by agreeing to this in the

14  form that it's in and as a recognition of that, footnote one

15  recognizes certain limited procedural rights guaranteeing the

16  right to make a 15-minute opening and 15-minute closing.  The

17  CCC --

18      JUSTICE MORAWETZ:  Well, is it a case that the

19  Bondholders are compromising a right or is it a case that

20  it's just being expanded for the CCC to have a right?  What

21  specific rights are the Bondholders compromised on?

22      MR. SWAN:  They're compromised on the right to

23  otherwise carry out independent examinations with separate

24  time allocated to them because they would be a separate

25  allocation group.  So the Bondholders could have asserted the

1  right as a full allocation group to have the same rights as

2  the Canadian allocation group and the U.S. allocation group.

3  They haven't done that.  They have agreed that with respect

4  to the other elements of the proceedings, that they will

5  shelter, so to speak, under the U.S. allocation group's time

6  allocation.  But with respect to this one issue, footnote one

7  recognizes that they will have an opening and a closing

8  right.  The CCC is in a different position because they are a

9  Creditor whose economic interest are perfectly aligned with

10 the Canadian allocation group in much the same way that the

11 UKPC does not have a separate defined time, separate and

12 apart from the EMEA allocation group.  Obviously, it won't

13 make an opening statement as part of EMEA allocation group,

14 but it doesn't have separate defined time, nor does the UCC,

15 separate and apart from the U.S. allocation group.  So

16 there's no reason why the CCC as a Creditor who is within an

17 allocation group should have a separate specified right that

18 is unique and elevated above any other Creditor who's part of

19 an allocation group.

20              UNKNOWN:  Your Honor, if I may reply to some new

21 arguments that have been raised?

22              JUSTICE MORAWETZ:  Briefly.

23              UNKNOWN:  I thought that footnote one was off the

24 table.  Now it's back on.  If it's back on, all we ask is the

25 same 15 minutes and the same rights to come back to the

1    Courts with the Bondholders.  This is about treating major

2    Creditors equally.  It's not about historical status that was

3    allocated before the allocation positions came out.  We all

4    want to work effectively.  We will work with the Canadian

5    allocation group.  The Noteholders have worked with the

6    American group, that's fine.  That's as it should be.  But if

7    we're going to have a carve out time for one group of

8    Creditors, there should be the same for the others.

9                THE COURT:  I used to think it was only in the

10   United States that lawyers could argue for 30 minutes over 15

11   minutes but it sounds like we share that with Canada.

12                          (Laughter)

13                MR. LEBLANC:  I'll just add how flattered we are

14   to think that we can be so influential in 15 minutes.

15                THE COURT:  Yes.

16                JUSTICE MORAWETZ:  No comment.

17                          (Laughter)

18                THE COURT:  I would suggest that, as part of the

19   spirit of compromise, we at least for the moment delete

20   without prejudice footnote one.

21                MR. LEBLANC:  And, Your Honor, we've already

22   offered that up.

23                THE COURT:  That's right.

24                MR. LEBLANC:  And we're happy to do -- this is

25   Andrew Leblanc, on behalf of the Noteholders.  We've offered

1  it and we're happy to do it.

2         THE COURT:  Thank you, Mr. Leblanc.  Justice

3  Morawetz and I will discuss that, of course, as part of our

4  discussion.  I should have said that.

5         MR. ROSENTHAL:  Just for clarification, Your

6  Honor  --

7         THE COURT:  Except --

8         MR. ROSENTHAL:  -- obviously, the first sentence

9  relates to another issue.

10        THE COURT:  That's right.

11        MR. ROSENTHAL:  And it's the remainder that starts

12 with 'additionally'.

13        THE COURT:  Exactly.

14        MR. ROSENTHAL:  And I would -- footnote 11 is the

15 one that I didn't have the number at my fingertips before.

16        THE COURT:  Thank you.  Shall we now proceed with

17 the EMEA, CCC issue?

18        JUSTICE MORAWETZ:  Yes, back to I think it's Mr.

19 Adler.

20        THE COURT:  Mr. Adler had started, yes, and don't

21 hesitate to sort of re-start if you'd like, Mr. Adler, just

22 to get the flow.

23        MR. ADLER:  Thank you very much, Your Honor and

24 Justice Morawetz.  Again, it's Derek Adler, for the Joint

25 Administrators and the EMEA Debtors, and as I was saying, we

1  degree after this afternoon.

2          On the first point of, I guess Mr. Ziegler's

3  point with the CCC, that point will be addressed later.

4  However, I will assert that, certainly from my standpoint,

5  the Ontario Court would be most reluctant to foreclose that

6  party from having the opportunity to make the statements in

7  the form that Mr. Ziegler outlined.  We will look for the

8  parties to work together to see if some of the differences

9  can be narrowed, but that would be your dining principle.

10         On the second point, which was the one that was

11  the subject of the very lengthy submissions, and I don't

12  mean that in a negative way from Barrack and from Mr. Mark,

13  the -- it is one trial.  It will start with claim -- with

14  the allocation issues and the claim issues.  Realistically,

15  I think both Judge Gross and I are of the view that 20 days

16  is not something that is set in stone.  We will be looking

17  for these parties and you are now working I think in a much

18  more constructive and cooperative manner, to continue with

19  that; emphasize the word continue with that cooperation.

20  There will be additional trial time allocated.  Mr. Barrack,

21  I think you made a very valid point.  It's impossible to

22  state with certainty exactly how long this is going to take.

23  We will be looking for parties to work in the most, you

24  know, efficient and effective manner.  You know, it's not

25  going to surprise me if this is going to take an extra, you

# TAB F



Amendment and Supplement to the Joint Trial Protocol

## I. Definitions

1. This Amendment and Supplement to the Joint Trial Protocol approved by the Courts on January 29, 2014 (the "Original Protocol" and together with this Amendment and Supplement, the "Joint Trial Protocol") supplements and amends the Original Protocol. Unless specifically amended herein, the Original Protocol shall continue to govern.

2. Capitalized terms used herein and not otherwise defined have the meaning given to them in the Original Protocol.

## II. Affidavits, Pre-Trial Briefs, Fact Witnesses and Experts

### A. Limits

1. The Core Parties shall be limited to the following restrictions in respect of affidavit page limits: [1]

> a) For Allocation, each of the Canadian Allocation Group, US Allocation Group and EMEA Allocation Group shall be entitled to up to an aggregate of [■][2] pages that they may in good faith attribute to Allocation matters in any affidavits of opening fact witnesses who they designated and up to an aggregate of [■][3] pages that they may in good faith attribute to Allocation matters in any affidavits of reply witnesses who they designated.

> b) For Claims, each of (i) the EMEA Claimants and (ii) the UK Pension Claimants shall be entitled to up to an aggregate of 150 pages that they may in good faith attribute to Claims matters in any affidavits of opening fact witnesses who they designated and up to an aggregate of 75 pages that they may in good faith attribute to Claims matters in any affidavits of reply witnesses who they designated and the Canadian

---

[1] All references to page limits shall be based on double spaced 12 point times new roman font text and shall, for greater certainty, count all pages of narrative text and pages of any appendices or schedules attached to the affidavit but shall not include any exhibits attached to the affidavit (understanding that the rules relating to the designation of exhibits set out in the Original Protocol still apply).

[2] Proposals are as follows:
- Monitor/Canadian Debtors, EMEA Debtors & UK Pension Claimants: 250 pages per Allocation Group;
- US Debtors: 100 pages per Allocation Group; and
- CCC: 150 pages for each of the Canadian Debtors/ Monitor, CCC, US Allocation Group, the EMEA Debtors and the UK Pension Claimants.

[3] Proposals are as follows:
- Monitor/Canadian Debtors, EMEA Debtors & UK Pension Claimants: 125 pages per Allocation Group;
- US Debtors: 50 pages per Allocation Group; and
- CCC: 75 pages for each of the Canadian Debtors/ Monitor, CCC, US Allocation Group, the EMEA Debtors and the UK Pension Claimants

TOR_LAW\ 8366393\9



Claims Defendant Group shall be entitled to up to an aggregate of 300 pages that they may in good faith attribute to Claims matters in any affidavits of opening fact witnesses who they designated and up to an aggregate of 150 pages that they may in good faith attribute to Claims matters in any affidavits of reply witnesses who they designated. [4]

2.      At the time of submission of an affidavit, the Parties in the Canadian and EMEA Allocation Groups who are proffering the affidavits shall provide their good faith designation on the # of pages that are addressing exclusively Claims ("Claims Only Pages"), and the balance of the pages will be attributed to that Group's Allocation limits.[5] Another Core Party may object where it believes the designation is materially incorrect within 2 business days thereafter.  Parties shall attempt to resolve any objections consensually, failing which direction shall be sought from the Court(s). For greater certainty, Claims Only Pages shall not form part of the Allocation Record; however the fact that a page has not been marked as a Claims Only Page does not make it inadmissible on the Claims Record.[6]

3.      The Core Parties agree to limit the pages of their pre-trial briefs as follows:

a)      Allocation: ■[7] pages for each Core Party that filed a pleading that is not a joinder and 15 pages for each Core Party that filed a joinder pleading

b)      Claims: 150 pages for each of EMEA and UK Pension Claimants, 300 pages for the Canadian Claims Defendant Group[8]

**B.      Examination of Fact Witnesses**

1.      <u>Examination of Fact Witnesses.</u>

a)      On May 2, 2014, the Core Parties shall provide notice of any fact witness who (i) they would be entitled to cross-examine under the Joint

---

[4] The EMEA Claimants and UK Pension Claimants do not object to the page limits but believe the Canadian Claims Defendant Group should be required to split their total allocated affidavit pages between EMEA Claims and UK Pension Claims

[5] Parties shall structure their affidavits in a way that it is apparent which pages are "Claims Only" either through section headings, notations or by separate cover.

[6] The EMEA Debtors request the following provision to be inserted: "Within 3 business days following the submission of opening fact witness affidavits and 3 business days following the submission of reply fact witness affidavits, a Core Party may adopt any affidavit submitted by another Core Party, in which case such affidavit will be treated as affirmative evidence submitted by both the proffering Core Party and the adopting Core Party.  Any affidavit adopted (but not submitted) by a Core Party shall not count towards that Core Party's page limits."

[7] Proposals are as follows:
- <u>Monitor/Canadian Debtors, EMEA Debtors, CCC, UK Pension Claimants</u>: 150 pages per Core Party that filed a pleading
- <u>US Debtors</u>: 75 pages per Allocation Group

[8] The EMEA Claimants and UK Pension Claimants do not object to the page limits but believe the Canadian Claims Defendant Group should split their briefs between EMEA Claims and UK Pension Claims



Trial Protocol; but whom (ii) they do not wish to cross-examine. Subject to (b) below, to the extent that no examining party wishes to examine a witness (a "Non-Noticed Witness"), such witness does not need to appear for cross-examination at trial unless requested by either or both of the Courts.

b)    On May 5, 2014, any proffering party shall give notice of any Non-Noticed Witness who they intend to have appear at trial.

2.    Any fact witness who appears at trial may be cross-examined by any other Core Party, irrespective of whether they provided a notice under section 1(a) (to the extent such party is otherwise entitled to do so under the Joint Trial Protocol). It is understood that any cross-examination of any witness that is conducted by any Core Party that is not a party to the Claims proceedings is only part of the record in the Allocation case. Notwithstanding the foregoing, the Core Parties with standing on Claims retain the right to object to the ability of a Core Party without standing on Claims to cross-examine witnesses whose evidence relates only to Claims.

3.    Location of Examinations. Fact witnesses shall appear for trial in the location disclosed in accordance with Section I.A.3 of the Original Protocol, except that any fact witness who will be examined on Claims only or whose affidavit is mostly related to Claims matters (on the good faith determination of the proffering Core Party) shall appear in Toronto.

**C.    Examination of Experts (foreign law and non-foreign law)[9]**

1.    Pursuant to I.D.1 of the Original Protocol, the Core Parties agree there shall be no numerical limit on the number of experts (foreign law and non-foreign law) appearing at trial and the following paragraphs shall instead apply.

2.    Examination of Experts.

a)    On May 2, 2014, the Core Parties shall provide notice of any expert who (i) they would be entitled to cross-examine under the Joint Trial Protocol; but whom (ii) they do not wish to cross-examine. Subject to (b) below, to the extent that no examining party wishes to examine a witness (a "Non-Noticed Expert"), such expert does not need to appear for cross-examination at trial unless requested by either or both of the Courts.

b)    On May 5, 2014, any proffering party shall give notice of any Non-Noticed Expert who they intend to have appear at trial (it being acknowledged that all oral evidence on direct will be limited to the contents of such expert's report).

---

[9] For the purpose of this Amendment and Supplement, "foreign law experts" means those foreign law experts put forward by the EMEA Debtors and the responding experts put forward by the Canadian Claims Defendant Group.

3.      Any expert who appears at trial may be cross-examined by any other Core Party, irrespective of whether they provided a notice under section 2 (a) (to the extent such party is otherwise entitled to do so under the Joint Trial Protocol). Any cross-examination of an expert witness conducted by a Core Party that is not a party to the Claims proceeding is only part of the record in the Allocation proceeding. Notwithstanding the foregoing, the Core Parties with standing on Claims retain the right to object to the ability of a Core Party without standing on Claims to cross-examine witnesses whose evidence relates only to Claims.

4.      With respect to expert witnesses on Allocation issues, (a) the EMEA Debtors reserve the right to cross-examine any expert witnesses proffered by the UK Pension Claimants to the extent that the trial testimony of such expert is adverse to the EMEA Debtors' theory on Allocation, and (b) the UK Pension Claimants reserve the right to cross-examine any expert witness proffered by the EMEA Debtors, to the extent that the trial testimony of such expert is adverse to the UK Pension Claimants' theory on Allocation. Any such testimony shall not be admissible on the Claims record.

5.      Foreign Law Experts.  In accordance with the Original Protocol, EMEA Claimants and the Canadian Claims Defendant Group will work in good faith to try and reach an agreement to reduce or eliminate the need for live testimony of foreign law experts at trial.

6.      Location of Cross-Examination:  Each Core Party shall advise the others on April 11, 2014 which Court location their expert witnesses will appear in to give their testimony (whether appearing by virtue of sub-paragraph 2 (a) or (b) hereof) except that any expert witness who will be examined on Claims only related matters shall appear in Toronto.

## D.      Scheduling

1.      On May 5, 2014, each proffering Core Party shall provide an anticipated order of their witnesses for appearance at trial and file such notice with the Courts.  If changes are required to be made to the order of appearances of witnesses the proffering Core Party shall provide notice to the other Core Parties and to the Courts as soon as reasonably practicable.

## III.    Trial

### A.      General

1.      Total trial time will be 210 hours commencing May 12, 2014. The Core Parties agree that, subject to the Courts' direction,

    a)      the trial will be conducted on all days that both Courts are open (unless during a Claims only portion of the trial);

TOR_LAW\ 836639319

b)    the intention of the Core Parties is that the Allocation portion of the trial will end no later than June 13, 2014; and

c)    the Claims portion of the trial will not start prior to June 23, 2014.

2.    The time allocations will be measured in a chess clock approach and the total trial time are as follows:

a)    Allocation:  42 hours shall be allocated to each of the US Allocation Group/Bondholder Allocation Group, the Canadian Allocation Group and the EMEA Allocation Group.[10]

b)    Claims: each of the EMEA Claimants and UK Pension Claimants shall be entitled to 21 hours and the Canadian Claims Defendant Group shall be entitled to 42 hours.[11]

c)    Where the examination of a fact witness or expert overlaps between Allocation and Claims, any cross-examining party who is participating in both Allocation and Claims shall either indicate during their examination which portions relate exclusively to Claims or within 1 business day after the completion of the examination provide their good faith estimate of the time within their examination attributable exclusively to Claims ("Claims Only Testimony"), the balance of which time shall be attributed to the Allocation time allotment.  Another Core Party may object where it believes the breakdown is materially incorrect within 1 business day thereafter.  Parties shall attempt to resolve any objections consensually, failing which direction shall be sought from the Court(s).  Claims Only Testimony shall not form part of the Allocation Record; however the fact that testimony has not been identified as Claims Only Testimony does not make it inadmissible on the Claims Record.

d)    Where more than one Core Party is required to share time, there shall be no restriction on how they decide to use or allocate their time allocations among themselves.

B.    **Opening Statements**

1.    The amount of time for opening statements as contemplated by II.B of the Original Protocol is as follows (to be credited against the general time allocations set forth in III.A (2)):

---

[10] This proposal is supported by the Monitor/ Canadian Debtors, US Debtors and CCC.  The UK Pension Claimants propose 31.5 hours for each of the US Allocation Group/ Bondholder Allocation Group, Canadian Debtors/ Monitor, EMEA Debtors and UK Pension Claimants/CCC.

[11] The EMEA Claimants and UK Pension Claimants do not object to the page limits but believe the Canadian Claims Defendant Group should be required to split their total allocated time between EMEA Claims and UK Pension Claims

a)    Allocation: [■] hours for the US Allocation Group; .25 hours for any other Core Party that is not in an Allocation Group (in accordance with II.B.2 of the Original Protocol); [■] hours for the Canadian Debtors/Monitor;[12] [■] hours for the EMEA Debtors; and [■] hours for the UK Pension Claimants/CCC; and[13]

b)    Claims: [■] hours for each of the EMEA Claimants and the UK Pension Claimants; and [■] hours for the Canadian Claims Defendant Group.[14]

## IV.    Post-Trial

### A.    Closing Arguments and Post-Trial Briefs

1.    Matters relating to closing arguments and post-trial briefs as set out in III.B of the Original Protocol shall be deferred following consultation with the Courts during or upon the conclusion of the evidentiary portion of the trial.

## V.    Miscellaneous

1.    In the event that a Core Party elects not to cross-examine a fact witness or expert at all, or on any particular statements made in their affidavit or report or their evidence in chief (and regardless of whether that witness appears at trial or not), no other Core Party may request, suggest or assert that an adverse inference should be drawn, and the Courts shall not draw any inferences, from the failure to cross-examine at all or on any particular statements made and no other Core Party may request, suggest or assert that the Court should infer, and the Courts shall not infer, that the Core Party thereby accepts the testimony of that witness or expert.

---

[12] All submissions on behalf of the Canadian Allocation Group in support of the Ownership Allocation Order will be made in this time allotment.

[13] Proposals are as follows:
- Monitor/ Canadian Debtors, US Debtors, UK Pension Claimants and CCC: 2.25 hours for the US Allocation Group/ Bondholder Allocation Group; 1.5 hours for the Canadian Debtors/ Monitor; 1.5 hours for the EMEA Debtors and 1.5 hours for the UK Pension Claimants/ CCC
- EMEA Debtors: 4.5 hours for the US Allocation Group/ Bondholder Allocation Group; 3 hours for the Canadian Debtors/ Monitor; 3 hours for the EMEA Debtors and 3 hours for the UK Pension Claimants/ CCC

[14] Proposals are as follows:
- Monitor/ Canadian Debtors and UK Pension Claimants: 1.5 hours for the EMEA Claimants; 1.5 hours for the UK Pension Claimants; 3.0 hours for the Canadian Claims Defendant Group (Subject to UK Pension Claimants position on splitting of time);
- EMEA Debtors: 3 hours for the EMEA Claimants, 3 hours for the UK Pension Claimants and 3 hours for the Canadian Claims Defendant Group on each of EMEA Claims and UK Pension Claims

TOR_LAW\ 8366393\9

# TAB G

CITATION: Re Nortel Networks Corporation et al  2014 ONSC 1787
COURT FILE NO.: 09-CL-7950
DATE: 20140321

RE:        In the Matter of Nortel Networks Corporation et al
           Court File No. 09-CL-7950 (Ontario Superior Court of Justice)


           In re Nortel Networks Inc. et al
           Case No. 09-10138 (KG) (Bankr. D. Del.)


BEFORE:    Judge Gross and Justice Newbould

HEARD:     March 12, 2014


## PROCEDURAL RULING


[1]     This follows a joint case conference held on March 12, 2014 to discuss changes to the Joint Trial Protocol that has been the subject of negotiations amongst the parties. Issues have arisen on which the parties have not been able to agree.

[2]     I adopt the comments of Judge Gross in his order of March 21, 2014 in paragraphs 1 to 3 and his directions in paragraphs 4 and 5.

[3]     The page limits on the affidavit and brief filings on the claims issues are as follows:

1.      Affidavits

(i)      The EMEA Claimants and the UK Pension Claimants are each entitled to up to 150 pages for the initial affidavits and up to 75 pages for the reply affidavits.

153

- Page 2 -

(ii)    The Canadian Claims Defendant Group is entitled to up to 300 pages for the initial affidavits and up to 150 pages for reply affidavits. The request of the EMEA Claimants directing a split of the Canadian Claims Defendant Group's allocated pages between the EMEA Claims and the UK Pension Claims is denied.

2.    Briefs

(i)    The EMEA Claimants and the UK Pension Claimants are each entitled to up to 150 pages.

(ii)    The Canadian Claims Defendant Group is entitled to up to 300 pages. The request of the EMEA Claimants directing a split of the Canadian Claims Defendant Group's allocated pages between the EMEA Claims and the UK Pension Claims is denied.

[4]    The opening statement on the claims issues shall be one day, with 1.5 hours allocated to each of the EMEA Claimants and UK Pension Claimants and 3 hours allocated to the Canadian Claims Defendant Group.

[5]    The time allocation on the claims issues is as follows:

(i)    21 hours for each of the EMEA Claimants and UK Pension Claimants.

(ii)    42 hours for the Canadian Claims Defendant Group. The request of the EMEA Claimants directing a split of the Canadian Claims Defendant Group's allocated time between the EMEA Claims and the UK Pension Claims is denied.

[6]    The claims trial shall be 15 days of 6 hours each on the following schedule:

(a)    July 7 to 11
(b)    July 14 to 18
(c)    July 21 to 25

154

- Page 3 -

_____
.Newbould J.

**Date:** March 21, 2014

# TAB H

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS, INC., et al. | ) | Case No. 09-10138(KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re D.I. Nos. 13186 and 13195** |
| | ) | |
| In re: | ) | Chapter 15 |
| NORTEL NETWORKS LTD., et al. | ) | |
| | ) | Case No. 09-10164(KG) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re D.I. Nos. 573 and 574** |

### AMENDED[1]
### ORDER RE ALLOCATION TRIAL PROTOCOL[2]

1.    The Court, with the Canadian Court, held a joint case conference on March 12, 2014, to discuss changes to the Joint Trial Protocol that has been the subject of negotiations among the parties. The parties have asked both Courts to resolve unsettled issues.

2.    The Courts commend counsel for their good faith efforts to agree on a trial protocol, a protocol that is necessary to achieve a fair and balanced trial process in these highly complex cases with time limitations.

3.    The Courts may from time to time to find it necessary to adjust the trial protocol to afford the parties a full and fair opportunity to present their cases. All counsel have acknowledged that any trial protocol will be subject to the discretion of the Courts to determine any changes that the Courts find necessary to promote justice.

---

[1]   This Order replaces in full the prior Orders, (Case No. 09-10138, D.I. Nos. 13186 and 13195 and Case No. 09-10164, D.I. Nos. 573 and 574). The Court's goal is fairness. As the trial unfolds, the Court will be in a better position to determine what, if any, adjustments are appropriate. See ¶ 3.

[2]   The Canadian Court will address the protocol for the Claims Trial by Endorsement filed in the Canadian Court.

4.   <u>Page Limits on the Affidavit and Brief Filings for the Allocation Issues.</u>

    A.   Briefs

        1.   Allocation Core Parties         150 pages
for each Core Party that filed a pleading and 15 pages for joinders

    B.   Opening Affidavits

        1.   Allocation Groups              150 pages per group

        2.   Canadian Creditors Committee    50 pages

    C.   Reply Affidavits

        1.   Allocation Groups              100 pages per group

        2.   Canadian Creditors' Committee    35 pages

5.   The trial will commence on May 12, 2014, with (2) days of Opening Statements. The trial, including Opening Statements, will be twenty-five (25) days of 6 hours per day on the dates set forth on the attached schedule. The Court has allotted 150 hours for the trial on the Allocation Issues. The hours shall be divided among the parties as follows:

| | |
|---|---|
| US Allocation Group | 48 hours |
| EMEA Allocation Group | 54 hours |
| Canadian Allocation Group | 48 hours |
| Canadian Creditors' Committee | 12 hours |

**Date:** March 21, 2014

KEVIN GROSS, U.S.B.J.

2

# NORTEL ALLOCATION TRIAL DATES

| MAY | | JUNE | |
|---------|------|---------|------|
| **DAY NO.** | **DATE** | **DAY NO.** | **DATE** |
| 1. | 12 | 14. | 2 |
| 2. | 13 | 15. | 5 |
| 3. | 14 | 16. | 6 |
| 4. | 15 | 17. | 16 |
| 5. | 16 | 18. | 17 |
| 6. | 20 | 19. | 18 |
| 7. | 21 | 20. | 19 |
| 8. | 22 | 21. | 20 |
| 9. | 23 | 22. | 24 |
| 10. | 27 | 23. | 25 |
| 11. | 28 | 24. | 26 |
| 12. | 29 | 25. | 27 |
| 13. | 30 | | |

3

# TAB I



## APPENDIX I - ANTICIPATED FACT WITNESS LIST

"*" denotes a "claims only" witness

Pursuant to the Allocation Protocol, fact witnesses will be presented first by the Canadian Allocation Group/ Canadian Claims Defendant Group, then the US Allocation Group and lastly by the EMEA Allocation Group.

The list of witnesses below is not indicative of the order that individual witnesses within a group will appear at Court.

|  | **Fact Witness Name** | **Location where witness will appear at trial** |
|---|---|---|
| *Canadian Allocation Group/ Canadian Claims Defendant Group* | | |
| 1. | Clive Allen | Toronto |
| 2. | Paviter Binning | Toronto |
| 3. | Peter Currie | Toronto |
| 4. | Gordon Davies | Toronto |
| 5. | Angela DeWilton | Toronto |
| 6. | Sharon Hamilton | Toronto |
| 7. | Michael McCorkle | Toronto |
| 8. | Brian McFadden | Toronto |
| 9. | Donald Sproule | Toronto |
| 10. | John Poos* | Toronto |
| *U.S. Allocation Group* | | |
| 11. | Wally Henderson | Toronto |
| 12. | Mike Orlando | Toronto |
| 13. | John Ray | Wilmington |
| 14. | Chris Ricaurte | Wilmington |
| 15. | Mark Weisz | Wilmington |
| *EMEA Allocation Group/ EMEA Claimants/ UK Pension Claimants* | | |
| 16. | Philippe Albert-Lebrun (EMEA Debtors) | Toronto |
| 17. | Simon Brueckheimer (EMEA Debtors and UKPC) | Toronto |
| 18. | Geoffrey Hall (UKPC) | Toronto |
| 19. | Andrew Jeffries (UKPC) | Wilmington |
| 20. | Peter Newcombe (EMEA Debtors and UKPC) | Wilmington |

|     | **Fact Witness Name**              | **Location where witness will appear at trial** |
| --- | ---------------------------------- | ----------------------------------------------- |
| 21. | Kerry Stephens (EMEA Debtors)      | Wilmington                                      |
| 22. | David Davies* (UKPC)               | Toronto                                         |
| 23. | Clive Gilchrist* (UKPC)            | Toronto                                         |

# TAB J



## APPENDIX J - ANTICIPATED EXPERT WITNESS LIST

"*" denotes a "claims only" witness

Pursuant to the Allocation Protocol, expert witnesses whose evidence relates solely to allocation or to both allocation and claims will be presented first by the EMEA Allocation Group, then the Canadian Allocation Group and lastly by the US Allocation Group. Separately, the Allocation Protocol contemplates that expert witnesses whose evidence relates solely to claims, will be presented first by the EMEA Claimants, then by the UK Pension Claimants and lastly by the Canadian Claimants Defendant Group.

The list of witnesses below is not indicative of the order that individual witnesses within a group will appear at Court.

|  | Expert Witness Name | Location where witness will appear at trial |
|---|---|---|
| *EMEA Allocation Group* | | |
| 1. | Richard Cooper (EMEA Debtors) | Wilmington[1] |
| 2. | Paul Huffard (EMEA Debtors) | Wilmington |
| 3. | James Malackowski (EMEA Debtors) | Toronto |
| 4. | Coleman Bazelon (UKPC) | Toronto |
| 5. | Leif Clark (UKPC) | Toronto |
| 6. | Jay Westbrook (UKPC) | Toronto |
| 7. | Steven Felgran (UKPC) | Toronto |
| 8. | Bruce Stratton (UKPC) | Wilmington[2] |
| *Canadian Allocation Group* | | |
| 9. | Phil Green | Wilmington |
| 10. | Alan Cox | Toronto |
| 11. | Mark Berenblut | Toronto |
| 12. | Tim Reichert | Toronto |
| 13. | Sheldon Burshstein[3] | Wilmington |
| 14. | Thomas Britven | Wilmington |
| *US Allocation Group/ Bondholder Allocation Group* | | |
| 15. | Lorraine Eden | Wilmington |

---

[1] The EMEA Debtors have indicated they plan to have Mr. Cooper appear twice.

[2] Mr. Stratton's report and testimony is subject to a motion to strike

[3] Mr. Burshsteins' report is subject to a motion for leave

| | Expert Witness Name | Location where witness will appear at trial |
|---|---|---|
| 16. | Jeffrey Kinrich | Wilmington |
| 17. | Terrence McGarty | Wilmington |
| 18. | Laureen Ryan | Wilmington |
| 19. | Raymond Zenkich | Wilmington |
| 20. | Daniel Bereskin | Toronto[4] |
| 21. | Robert Kilimnik | Toronto |
| 22. | John McConnell | Toronto |
| 23. | Catherine Tucker | Toronto |
| *EMEA Claimants[5]* | | |
| 24. | Gervase MacGregor* | Toronto |
| 25. | David Mitchell* | Toronto |
| *UK Pension Claimants* | | |
| 26. | Ronald Bowie* | Toronto |
| 27. | Robert Ham* | Toronto |
| 28. | J. Soren Reynertson* | Toronto |
| *Canadian Claims Defendant Group[6]* | | |
| 29. | Mark Berenblut (pension report) * | Toronto |
| 30. | Henry Legge* | Toronto |
| 31. | Mark Stocker* | Toronto |
| 32. | David Tabak* | Toronto |
| 33. | Paul Wertheim* | Toronto |

---

[4] Mr. Bereskin's report and testimony is subject to a motion to strike.
[5] This list does not include the EMEA foreign law experts who are not anticipated to appear at trial.
[6] This list does not include the foreign law experts relating to the EMEA claims who are not anticipated to appear at trial.

# TAB K

162

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| | | |
|---|---|---|
| **THE HONOURABLE MR.** | ) | **TUESDAY, THE 11ᵗʰ DAY OF** |
| **JUSTICE MORAWETZ** | ) | **JUNE, 2013** |
| | ) | |
| | ) | |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**ORDER**
**(Protective Order)**

**THIS MOTION**, made by Nortel Networks Corporation, Nortel Networks Limited,

Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel

Networks International Corporation (collectively, the "**Canadian Debtors**") jointly with Ernst &

Young Inc. in its capacity as monitor (the "**Monitor**") of the Canadian Debtors for the relief set

out in the Notice of Motion dated June 5, 2013 was heard this day at 393 University Avenue,

Toronto, Ontario.

**ON READING** the Ninety-Fifth Report of the Monitor dated June 5, 2013 (the "**Ninety-**

**Fifth Report**") and on hearing submissions of counsel for the Canadian Debtors, the Monitor,

and those other parties present,  no one appearing for any other person on the service list,

163

although served as appears from the Affidavit of Service of Jennifer Stam, sworn June 7, 2013, filed.

1.      **THIS COURT ORDERS** that the time for the service of the Notice of Motion, the Ninety-Fifth Report, and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.      **THIS COURT ORDERS** that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the protective order in the form attached hereto as Schedule "A" (the **"Protective Order"**).

3.      **THIS COURT ORDERS** that the Protective Order be and is hereby approved.

**MISCELLANEOUS**

4.      **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

5.     **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

JUN 1 1 2013

165

## SCHEDULE A

### Attached.

## PROTECTIVE ORDER

### 1.    Application of this Protective Order.

(a)    This Protective Order (the "Protective Order") shall govern the participation of any person, entity or group, including, but not limited to, the Canadian Debtors,[1] EMEA Debtors, US Debtors, Committee, Bondholder Group, Monitor, Joint Administrators, CCC, Indenture Trustees, UK Pension Claimants, and Officers and Directors  (the "Parties" and each a "Party") and the Parties' counsel (and, where a Party is a committee or group, counsel to each member), in discovery undertaken in connection with the litigation or arbitration (subject to any Party's right to oppose any request for arbitration on any grounds and/or to oppose the use of any Discovery Material, as defined below, in any such arbitration) of Allocation, the EMEA Claims, and the UK Pension Claims in the US and/or Canadian Court (collectively the "Proceedings"), notwithstanding anything to the contrary previously agreed to or ordered by the United States Bankruptcy Court for the District of Delaware (the "US Court") or the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court" and, together with the US Court, the "Courts"), and subject to approval by both Courts.

(b)    This Protective Order shall govern the Proceedings with respect to the handling of documents, depositions, examinations for discovery, exhibits to depositions or examinations for discovery, affidavits, testimony and any other information produced, given or disclosed by any Party or any non-parties (in each case, a "Producing Party") to any other Party or non-party receiving or viewing such materials(in each case, "Receiving Party"), including through access to a shared dataroom (all such materials and the substance of such materials, hereinafter referred to as "Discovery Material").

### 2.    Highly Confidential Discovery Material.

(a)    Any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that "Highly Confidential" documents and information shall not include:

    (i)    information that is publicly available in substantially the same form in which it was provided;

    (ii)    information that was, is or becomes public knowledge, not in violation of this Protective Order;

    (iii)    information that is voluntarily de-designated by the Producing Party;

    (iv)    information that a Court order has de-designated;

    (v)    information rightfully acquired from an independent source without restrictions as to use; or

---

[1]    Capitalized terms not defined herein shall have the meaning given in the Allocation Protocol.

167

(vi)   information that is at any time independently developed by a Party without use of or reliance upon any Discovery Material.

(b)   Subject to these conditions and limitations, any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i)   personal information that requires the protections provided in this Protective Order, including, but not limited to, social security numbers, information about current or former employee compensation and/or benefits, health information and financial information;

(ii)   information required to be kept confidential pursuant to law or regulation; or

(iii)   information of a commercially sensitive nature subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party;

(all information designated as such, including the document itself as well as the information therein, the "Highly Confidential Discovery Material").

**3.    Confidential Discovery Material.**

(a)   Any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that Confidential information shall not include any documents or information as set forth in Section 2(a) hereof.

(b)   Subject to these conditions and limitations, any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i)   non-public proprietary information about a Party;

(ii)   non-public financial or accounting results or data;

(iii)   tax returns, any tax-related correspondence or agreements with any government, all workpapers, books and records relating to taxes, any tax opinions, records (including accounting records) relating to taxes paid or payable by the parties, all intercompany agreements related to taxes, and all financial and tax records relating to the estate that form part of a parties' general ledger or otherwise constitute accounting records, as well as drafts with respect to any of the foregoing;

(iv)   information subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party; or

2

(v)    confidential communications offered in mediation or compromise negotiations, including, but not limited to, Discovery Material bearing a designation that it is subject to Federal Rule of Evidence 408;

(all documents or information designated as such, including the document itself as well as the information therein, the "Confidential Discovery Material").

## 4.    Designation of Documents.

(a)    A Producing Party may designate Discovery Material as Confidential Discovery Material by applying the legend "Confidential" to each page or portion containing any Confidential Discovery Material.

(b)    A Producing Party may designate Discovery Material as Highly Confidential Discovery Material by applying the legend "Highly Confidential" to each page or portion containing any Highly Confidential Discovery Material.

(c)    In the case of electronically produced information, the "Confidential" or "Highly Confidential" legend, if any, shall be printed on the cover or container of the disk, tape, or other medium in which the electronic form data is stored, and the "Confidential" or "Highly Confidential" legend shall be applied, by electronic means to each electronic document or other electronically stored information containing any Confidential or Highly Confidential Discovery Material, unless such electronic materials are produced in native format. If produced in native format, such materials will be produced without alteration along with a corresponding Bates-numbered slipsheet bearing the "Confidential" or "Highly Confidential" legend.

(d)    The failure to designate a document as "Confidential" or "Highly Confidential" does not constitute a waiver of such claim, and a Producing Party may so designate a document after such document has been produced in accordance with Section 10, with the effect that such document is subject thereafter to the protections of this Protective Order.

(e)    At the request of a Party (the "Requesting Party"), a Producing Party shall designate as Confidential or Highly Confidential Discovery Material containing information of the Requesting Party that the Requesting Party reasonably believes in good faith meets any of the criteria for such designation. With respect to Discovery Material designated as Confidential or Highly Confidential Discovery Material pursuant to request, the Requesting Party shall thereafter be deemed a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. The costs of providing new copies of such re-designated documents to each Receiving Party and/or a shared dataroom shall be borne by the Requesting Party, and the "Confidential" or "Highly Confidential" legend on such copies must clearly indicate the Party who requested the designation.

(f)    A Party may designate as Confidential or Highly Confidential Discovery Material produced by another Party pursuant to subsection (e), even if such Discovery Material has already been designated as Confidential or Highly Confidential. If more than one Party designates the same Discovery Material as Confidential or Highly Confidential, all such Parties shall be considered a Producing Party with respect to such Discovery Material and be treated as a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order.

3

For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

## 5.    Treatment of Highly Confidential Information.

(a)    Any information designated as Highly Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b)    Provided that disclosure is not otherwise prohibited by this Protective Order, and subject to Section 7(d), a Receiving Party shall only disclose Highly Confidential Discovery Material to:

(i)    current employees, officers and directors of a Receiving Party who previously had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material;

(ii)    former employees of a Receiving Party who are currently retained by that Party as consultants or independent contractors who during their employment with the Receiving Party had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material provided that they comply with the requirements of Section 13 hereof;

(iii)    court-appointed Monitors, Trustees and Administrators and their respective staffs, and for the US Debtors, the employees of RLKS Executive Solutions LLC and the employees of Avidity Partners, LLC;

(iv)    outside or in-house counsel for the Parties or outside or in-house counsel for members of a committee or group (where a Party is a committee or group), and legal assistants, secretaries, staff or agents and consultants working with or for such counsel, but only to the extent that it is reasonably necessary to share Highly Confidential Discovery Material;

(v)    litigation support personnel, including outside copying, scanning and coding services and court reporters;

(vi)    persons expected to be deponents, trial witnesses or hearing witnesses in the Proceedings and counsel to such persons, provided that counsel providing the Highly Confidential Discovery Material has a good-faith basis for believing that such witnesses had prior, rightful access to or knowledge of the Highly Confidential Discovery Material, and provided that counsel ascertain as soon as practicable whether such witnesses had such access or knowledge, and provided that upon the first indication that such witnesses did not have such access or knowledge, counsel must immediately refrain from any further disclosure to such witnesses and procure the return or destruction of such Highly Confidential Discovery Material;

4



    (vii)    witnesses designated pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and/or party representatives designated for discovery examination pursuant to the Ontario Rule of Civil Procedure and/or alternative procedures agreed to by the Parties;

    (viii)    any experts retained for the purpose of providing advice and assistance to outside counsel of record and/or giving evidence in the Proceedings, including their staff, provided that they comply with the requirements of Section 13 hereof;

    (ix)    personnel of the Courts;

    (x)    any other person upon written agreement of the Producing Party, provided that he or she complies with the requirements of Section 13 hereof;

    (xi)    any other person upon order of the Court(s) and upon such conditions as may be imposed by the Court(s); and

    (xii)    any other person, as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, subject to Section 9 of this Protective Order.

    (c)    In addition to the foregoing, draft or final pleadings that cite to or quote Highly Confidential Discovery Material (but not any attachments thereto designated as Highly Confidential) may be shared with non-attorney representatives from each Party (or, where the Party is a committee or group, non-attorney representatives of each committee or group, who represent such member or group in committee or group matters), provided that they comply with the requirements of Section 13 hereof, but only to the extent that sharing such draft or final pleadings that cite to or quote Highly Confidential Discovery Material is necessary to render advice to or receive guidance or approval from the Party in the Proceedings.

    (d)    Any Receiving Party may request leave of a Producing Party to show Highly Confidential Discovery Material to parties or persons expected to be examined for discovery, deponents, Party representatives and/or trial witnesses in the Proceedings by providing notice to the Producing Party of the Highly Confidential Discovery Material the Receiving Party seeks to use and the parties shall use their best efforts within five business days to determine whether such material may be disclosed by the Receiving Party to such persons while protecting the Producing Party's need for confidentiality, including, but not limited to, considering whether portions of such material can be redacted and re-evaluating whether such material must be protected as Highly Confidential. In the event the Producing Party and the Receiving Party cannot resolve an issue concerning the use of Highly Confidential Discovery Material, the matter may be presented to the Courts for resolution on an expedited basis.

    (e)    Persons receiving Highly Confidential Discovery Material pursuant to this Section shall not copy or disclose such Highly Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(f)     Treatment of Highly Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

## 6.    Treatment of Confidential Information.

(a)     Any information designated as Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b)     Provided that disclosure is not otherwise prohibited by this Protective Order and subject to Section 7(d), a Receiving Party shall only disclose Confidential Discovery Material to:

(i)     parties or persons to whom Highly Confidential Discovery Material may be disclosed as set forth in Section 5;

(ii)     current employees, committee members of, officers, or directors of a Receiving Party (including current employees, officers or directors of members of a committee or group that is a Party provided that they comply with the requirements of Section 13 hereof), provided that disclosure is reasonably necessary to the Proceedings;

(iii)     former employees of a Receiving Party, provided that disclosure is reasonably necessary to the Proceedings and that they comply with the requirements of Section 13 hereof; or

(iv)     persons expected to be deponents and/or trial witnesses in the Proceedings and counsel to such persons.

(c)     Persons receiving Confidential Discovery Material pursuant to this Section shall not copy or disclose such Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(d)     Treatment of Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

## 7.    Permitted Purposes.

(a)     Confidential or Highly Confidential Discovery Material shall not be made public by any Party, shall be used only by persons permitted access to it per this Protective Order and shall be disclosed only to persons specified in this Protective Order.

(b)     All Discovery Material (except such materials publicly available in substantially the same form), whether or not designated as Confidential or Highly Confidential Discovery Material, shall be used by Receiving Parties solely in connection with the Proceedings (including appeals), and not in connection with any other litigation, judicial or regulatory proceeding or for any business, commercial, competitive, personal or other purpose except as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory

6

authority or court order, provided, however, that this Protective Order shall not prohibit the UK Pension Claimants from complying with the Beddoe proceeding pending under U.K. law in the English High Court by disclosing Discovery Material to the Beddoe court and to counsel (including barristers and solicitors) for the representative beneficiary in those proceedings (provided that such counsel is informed of the terms of this Protective Order) for purposes of obtaining periodic directions from the Beddoe court with respect to the Proceedings, provided that the Discovery Material is filed under seal and not available as a matter of public record, and provided that such Discovery Material is disclosed to counsel for the representative beneficiary either by virtue of the disclosure to the Beddoe court or in the context of confidential discussions with such counsel.

(c)     Any summary, compilation, notes, memoranda, analysis or copy containing Confidential or Highly Confidential Discovery Material, and any electronic image or database containing Confidential or Highly Confidential Discovery Material shall be subject to the terms of the Protective Order to the same extent as the material or information from which such summary, compilation, notes, memoranda, analysis, copy, electronic image or database is derived.

(d)     This Protective Order has no effect upon, and shall not apply to, a Party's use of its own Confidential or Highly Confidential Discovery Material, including information designated as such under Section 4(e) and information that was, prior to disclosure, rightfully in the possession or knowledge of the Party, for any purpose.

(e)     This Protective Order shall not preclude any Party from showing any Confidential or Highly Confidential Discovery Material or disclosing information derived therefrom at a deposition or examination for discovery to any witness, provided that, other than the witness, only those persons who are authorized by the terms of this Agreement to receive the Confidential or Highly Confidential Discovery Material to be disclosed to the witness are present at relevant portions of the deposition and the procedures provided for in Section 12 are in place.

## 8.    Court Filings.

(a)     Confidential or Highly Confidential Discovery Material shall not be filed in the public record absent the consent of the Producing Party or an order of the Court(s) so permitting.

(b)     If a Party wishes to file or otherwise submit to the Court(s) any documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material, including, but not limited to, pleadings, memoranda, transcripts, and discovery responses, such Party may redact the Confidential or Highly Confidential Discovery Material.  If the nature of the Highly Confidential Information makes redaction unreasonable or impossible, the Party may file the documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material under seal.

(c)     The entry of this Protective Order by the Courts shall be deemed an order authorizing the filing under seal of any Confidential or Highly Confidential Discovery Material and any other document citing, quoting, summarizing or otherwise reflecting information obtained from Confidential or Highly Confidential Discovery Material without any further order of either Court required.

7



(d)    This Protective Order shall not, by default, govern the use of Confidential or Highly Confidential Discovery Material at the trial.  Instead, the Parties shall meet and confer in good faith, and seek instructions from the Court(s) as necessary, prior to the start of any trial in the Proceedings regarding the use of Confidential or Highly Confidential Discovery Material at such trial or hearing.  The Parties reserve all rights with respect to trial procedures and the entry of this Protective Order shall be without prejudice to any position a Party may take in connection with the use of Confidential or Highly Confidential Discovery Material at the trial.

## 9.    **Compelled Disclosure.**

(a)    If a Receiving Party is subpoenaed in another action or proceeding, served with a document demand, or otherwise required or compelled by law, regulation, government action or other process (any of the foregoing, a "Demand") to produce Confidential or Highly Confidential Discovery Material, the Receiving Party shall, if legally permitted, (i) give prompt written notice by overnight delivery, fax or email the earlier of five (5) business days of receipt, or fourteen (14) days prior to the response date of such Demand to counsel for the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material, provided, however, that such notice shall be given as soon as practicable if the response date of the demand is within fourteen (14) business days of receipt by the Receiving Party; and (ii) refrain from producing any Confidential or Highly Confidential Discovery Material in' response to such Demand until the earlier of receipt of written notice from the Producing Party that it does not object to production of the Confidential or Highly Discovery Material, or resolution of any objection asserted by the Producing Party either by agreement or by final order of the Court(s) with jurisdiction over the objection of the Producing Party.

(b)    The burden of opposing the enforcement of the Demand shall fall solely upon the Producing Party.

(c)    Should a Producing Party neither provide written notice to the Receiving Party that it does not object to production of the Confidential or Highly Discovery Material nor submit a timely objection seeking an order that the Demand not be complied with and serve such objection upon the Receiving Party prior to production pursuant to the Demand, the Receiving Party shall be permitted to produce documents responsive to the Demand on the Demand's response date.

(d)    Subject to the provisions of this Section, compliance by the Receiving Party with any order directing production pursuant to a Demand of any Confidential or Highly Confidential Discovery Material shall not constitute a violation of this Protective Order.

(e)    Nothing herein shall be construed as requiring the Receiving Party or anyone else covered by this Protective Order to challenge or appeal any order directing production of Confidential or Highly Confidential Discovery Material covered by this Protective Order, or to subject himself, herself or itself to any penalties for non-compliance with any legal process or order.

(f)    The provisions of this Section shall apply to examinations conducted by bank or other regulators to which a Party may be subject, which may include examinations of Confidential or Highly Confidential Discovery Material received by any Party and its

8

representatives. Any such disclosure shall be limited to such portions of the Confidential or Highly Confidential Discovery Material that the applicable Party's legal counsel advises is required under the subpoena, order or process, or request or demand by a regulatory authority, organization of regulators or self-regulatory authority received by that Party (each a "Regulator Demand"). With respect to Regulator Demands for Confidential or Highly Confidential Discovery Material, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of any such Regulator Demand before the disclosure of such Confidential or Highly Confidential Discovery Material to such regulator, if the applicable Party is entitled to do so and if practicable. Otherwise, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of such Regulator Demand after the disclosure of any Confidential Information to regulator, if the applicable Party is entitled to do so. Nothing herein shall obligate any Party to prohibit or restrict any regulator's prompt access, in violation of any law, regulation, order or other obligation applicable to such Party, to documents or information in the custody, possession or control of such Party its representatives.

**10.  No Waiver.**

(a)    If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced should be designated as Confidential or Highly Confidential, the Producing Party may apprise the Receiving Parties in writing, and such designated Discovery Material will thereafter be treated as Confidential or Highly Confidential Discovery Material under the terms of this Protective Order, provided, however, that the Producing Party shall, at its cost, produce to each Receiving Party and/or to the shared dataroom substitute copies, bearing the legend "Confidential" or "Highly Confidential," of any such Discovery Material at which time the Receiving Party shall promptly return to the Producing Party or (at the election of the Receiving Party) destroy the previously produced copies of such substituted Discovery Material and shall have no right to access such substituted Discovery Material electronically.

(b)    This Protective Order shall not prevent any Party from applying to the Court(s) in writing and on notice to the Parties for relief from this Protective Order or from any provision(s) thereof, or from applying to the Court(s) in writing and on notice to the Parties for further or additional protective orders.

(c)    Producing or receiving Confidential or Highly Confidential Discovery Material or otherwise complying with the terms of this Protective Order shall not:

(i)    prejudice in any way a Producing Party's rights to object to the authenticity or admissibility into evidence of any testimony or other evidence;

(ii)    prejudice in any way the rights of the Parties to object to the production of documents that they consider not subject to discovery, or operate as an admission by any Party in the context of any other litigation or proceeding that the restrictions and procedures set forth herein constitute adequate protection for any particular information deemed by any Party to be Confidential or Highly Confidential Discovery Material;



     (iii)     prejudice in any way the rights of a Party to seek a determination by the Court(s) whether any Discovery Material should be treated as Confidential or Highly Confidential Discovery Material or subject to the terms of this Protective Order, provided that a Party seeking to challenge the designation of any Discovery Material as Confidential or Highly Confidential shall be obligated to meet and confer in good faith prior to seeking judicial resolution and follow the procedures provided in Section 11; or

     (iv)     prevent the Parties to this Protective Order from agreeing to alter or waive the provisions or protections provided herein with respect to any particular Discovery Material.

**11.    Objections to Designation.**

    (a)    Any Party objecting to the designation of any particular Discovery Material or testimony as Confidential or Highly Confidential Discovery Material shall so inform the Producing Party, stating the grounds of the objection, and, unless provided otherwise by the discovery plan adopted by the Courts, they shall have seven (7) business days to attempt to resolve the objection, at the end of which the Party objecting to the designation may seek a ruling from the Court(s), on no less than three (3) business days' notice to the Producing Party, that such information should not be treated as Confidential or Highly Confidential Discovery Material, provided that no Confidential or Highly Confidential Discovery Material shall be filed in the public record or disclosed other than in accordance with the terms of this Protective Order prior to such a determination by the Court(s), and provided further that the burden shall be on the Producing Party to justify the claim that disputed material has been properly designated and is entitled to protection from disclosure.

    (b)    Each Party hereby agrees that it will not contest a Party's request for expedited consideration of any relief sought from the Court(s) pursuant to this Section.

**12.    Use in Depositions / Examinations for Discovery.**

    (a)    If Confidential or Highly Confidential Discovery Material is utilized in a deposition, including a deposition of a party representative, examination for discovery or other recorded testimony, the Producing Party of the Confidential or Highly Confidential Discovery Material ma y designate the portion of the transcript relating to the C onfidential or Highly Confidential Discovery Material as Confidential or Highly Confidential.

    (b)    Any deponent or examinee for discovery or his or her counsel may designate all or part of the transcript of a deposition or examination for discovery as Highly Confidential or Confidential. Such deponent or examinee will be the Producing Party of the deposition or examination testimony for purposes of this Protective Order, except that testimony about Confidential or Highly Confidential Discovery Material for which the deponent or examinee is not a Producing Party shall also be deemed to have been produced by the Producing Party of the Confidential or Highly Confidential Discovery Material discussed.

10



(c)    Designation of all or part of a transcript as Highly Confidential or Confidential may be made on the record during the deposition or examination or may be made by giving written notice to the court reporter and counsel for all Parties within seven (7) business days after receiving the transcript from the court reporter. All deposition or examination transcripts will be considered  Confidential for the first seven (7) business days after receiving the transcript from the court reporter, unless designated otherwise by agreement of the Parties, by the Producing Party of Confidential or Highly Confidential Discovery Material discussed therein and/or by the deponent or examinee, as the case may be.

(d)    The Parties may modify this procedure for any particular deposition through agreement on the record at such deposition.

**13.    Disclosure to Certain Firms and Individuals.**

(a)    Prior to disclosure of Confidential or Highly Confidential Discovery Material pursuant to Sections 5(b)(ii), (viii) and (x) (including as incorporated by reference in Section 6(b)(i) hereof); 5(c) and 6(b)(ii) and (iii) hereof, counsel for the Receiving Party shall provide a copy of this Protective Order to the person or the representative of the firm to whom disclosure is intended and such person or representative must execute a Non-Disclosure Declaration in the form annexed as Exhibit A hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

(b)    A Receiving Party shall not disclose any Confidential or Highly Confidential Discovery Material to any holder of, or the investment manager for holders of, debt securities issued and/or guaranteed by the Canadian Debtors, EMEA Debtors or US Debtors, or to any officers, employees, counsel, accountants, advisors or agents of the Receiving Party that might be involved in acquiring any assets of or trading in claims against (including debt securities issued by any of) the Canadian Debtors, EMEA Debtors or US Debtors, unless such person or the representative of the person or firm to whom disclosure is intended executes a Non-Disclosure Declaration in the form annexed as Exhibit A hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

**14.    Third-Party Beneficiaries.**

Third parties that produce documents for use in the Proceedings, either voluntarily or pursuant to a subpoena or in response to discovery requests in connection with the Proceedings, are intended third-party beneficiaries of this Protective Order and shall have the right to designate materials as Confidential or Highly Confidential Discovery Material in accordance with the terms hereof and shall otherwise have the same rights and responsibilities as a Producing Party.

**15.    Redaction of Personal Information.**

(a)    Each Producing Party may redact from Discovery Material it produces, whether or not such Discovery Material are designated Confidential or Highly Confidential, such personal information (e.g., social security numbers, home addresses, bank account information) as the Producing Party deems appropriate, such as information required not to be disclosed by the data protection, privacy or similar laws of the Producing Party's jurisdiction.

11



(b)    If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced contains personal information to which a non-disclosure obligation applies, the Producing Party may apprise the Receiving Parties in writing. Promptly after receiving written notice of an inadvertent production of personal information, each Receiving Party shall return to the Producing Party or (at the election of the Receiving Party) destroy the Discovery Material as to which the claim of inadvertent production has been made and shall not use the inadvertently produced personal information for any purpose. The Producing Party shall, at its cost, provide each Receiving Party and/or the shared dataroom with substitute copies, bearing appropriate redactions, of any such Discovery Material.

(c)    Each Receiving Party retains the right to move for the disclosure of the redacted information.

## 16.    Survival.

(a)    The provisions of this Protective Order shall, absent written permission of the Producing Party or further order of the Court(s), continue to be binding throughout and after the conclusion of the Proceedings, including without limitation any appeals therefrom.

(b)    When any Party receives a notice from a court as to the release, unsealing or disposal of Confidential or Highly Confidential Discovery Material submitted by that Party, but designated Confidential or Highly Confidential by another Producing Party, the Party receiving the notice shall promptly send the notice to all Parties by overnight delivery, fax or email, so as to enable the Parties to take any actions they deem appropriate. The provisions of this Section may be waived only with the written consent of the Producing Party.

## 17.    Disposal of Confidential and Highly Confidential Discovery Material.

(a)    Within thirty (30) days after the time for appeal of an order, judgment, or decree finally disposing of or resolving the Proceedings has expired, all persons having received Confidential or Highly Confidential Discovery Material shall, at their own cost and expense, either return such material and all copies thereof (including summaries and excerpts) to counsel for the Producing Parties or (at the election of the Receiving Party) destroy all such Confidential or Highly Confidential Discovery Material and certify that fact to the Producing Parties. Documents that have been received electronically must be electronically deleted and deleted from "trash" files; provided, however, that to the extent that Confidential or Highly Confidential Discovery Material exists in whole or in part on computer backup tapes or other not readily accessible media used for disaster recovery purposes, information from such media does not need to be restored for purposes of destroying or returning Confidential or Highly Confidential Discovery Material, but such retained information shall continue to be treated in accordance with this Protective Order.

(b)    Notwithstanding the preceding paragraph, outside counsel for the Parties shall be entitled to retain court papers, deposition and court transcripts, and attorney work product that includes or summarizes Confidential Discovery Material or Highly Confidential Discovery Material provided that such outside counsel, and employees of such outside counsel, shall not disclose such court papers, deposition or trial transcripts, or attorney work product to any person

12

except pursuant to court order or agreement with the Producing Party as to the Confidential Discovery Material or Highly Confidential Discovery Material at issue.

(c)    Notwithstanding anything herein to the contrary, the obligations of this Section shall not preclude any Party or its experts or consultants from complying with document retention policies imposed by applicable law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, provided that the Party, expert or consultant provides notice of its retention of the documents to the Producing Party.

## 18.    Privileged Documents.

(a)    Nothing in this Protective Order shall require disclosure of information that counsel contends is protected from disclosure by solicitor-client privilege, attorney-client privilege, work-product immunity, or any other applicable privilege, immunity or protection from disclosure under any applicable law (each a "Privilege" and, collectively, the "Privileges").

(b)    Consistent with Rule 502(d) of the United States Federal Rules of Evidence, if information subject to a claim of Privilege is produced, such production shall not constitute or be deemed a waiver of any claim of a Privilege that the Producing Party would otherwise be entitled to assert in the Proceedings or any other proceeding, either with respect to the produced Discovery Material or any other documents, communications, or information concerning the same subject matter. The production of information subject to a claim of Privilege is without prejudice to the right of a Producing Party to seek the return or destruction of any document as to which a claim of Privilege is later asserted.

(c)    If information subject to a claim of Privilege is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of a Privilege for such information or any other information that may be protected from disclosure by Privilege. If a Party has inadvertently or mistakenly produced a document or information that is subject to a good faith claim of Privilege, upon request by the Producing Party promptly after discovery of such inadvertent or mistaken production, the document for which a claim of inadvertent production is made shall be returned within three (3) business days of such request and all copies of that document that may have been made shall be destroyed to the extent reasonably practicable, and the Receiving Party shall not use such information for any purpose.

(d)    The Party returning such material may then file under seal a motion for an order compelling production of the material, but such motion shall not assert as a ground for entering such an order the fact or circumstances of the inadvertent production, and such motion shall not quote from or attach such material. While the motion for an order compelling production is pending before the Court(s), the moving Party shall not maintain a copy of, quote from or otherwise use the material.

(e)    No public disclosure of the contents of the Discovery Material as to which the claim of Privilege has been made shall occur absent order of the Court(s).

13

(f)     If, at trial, at a hearing, at a deposition, at an examination for discovery or on a motion, a Producing Party marks for identification or offers into evidence information subject to a claim of Privilege by the Producing Party, or proffers or elicits testimonial or other evidence that incorporates or relies on information subject to a claim of Privilege, that act shall be deemed to effect a waiver and forfeiture by the Producing Party of Privilege.  The preceding sentence shall not apply to (1) proceedings to determine whether the information is subject to a claim of Privilege,  or (2) information subject to a claim of Privilege that is marked for identification, offered into evidence, or incorporated in evidence proffered or elicited by a Party other than the Producing Party, or relied on by a witness proffered by a Party other than the Producing Party.  By marking for identification or offering into evidence information subject to a claim of Privilege, the Producing Party shall not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter.

(g)     If information is subject to a claim of privilege ("Joint Privileged Information"), which appears on its face to be held by two or more Parties ("Joint Privilege"), a Party who claims the Joint Privilege shall not refuse to produce any such Joint Privileged Information to any other Party or Parties with whom the Joint Privilege is shared.  A Party who holds the Joint Privilege may produce Joint Privileged Information only to those other Parties with whom it shares the Joint Privilege and shall not produce such Joint Privileged Information to Parties that do not share in the Joint Privilege or to a shared dataroom.  If a Party who wishes to rely on Discovery Material containing Joint Privileged Information, such Party shall, without prejudice to its position on the claim of privilege, provide notice to the other Parties with whom it shares the Joint Privilege and such other Parties shall have seven days after receiving notice to seek a protective order from the Court(s) in writing and on notice to the Parties.  Absent an order from the Court(s) granting such protective order, the Party seeking to rely on Discovery Material containing Joint Privileged Information shall designate such Discovery Material as "Highly Confidential" and produce it to the other Parties and/or to a shared dataroom.  Disclosure to a shared dataroom or to persons permitted to view Highly Confidential Discovery Material under this Protective Order does not effect a waiver of privilege as to Parties other than the Producing Party subject to the foregoing sections.  The production of such Discovery Material containing Joint Privileged Information does not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter as the Joint Privileged Information.

19.     **Effective Date and Enforceability.**

(a)     This Protective Order will become effective upon the date that it has been approved by both Courts (the "Effective Date").

(b)     Nothing in this Protective Order shall preclude any Party from seeking judicial relief, upon notice to the other Parties, with regard to any provision hereof.

(c)     No amendment or modification of this Protective Order shall be binding or enforceable unless in writing and signed by the Parties, or ordered by the Courts.

20.     **Allocation Dataroom Access**

(a)     Upon the Effective Date, all documents ("Allocation Dataroom Documents") in the electronic data site established to facilitate settlement discussions (the "Allocation

14

Dataroom") shall be deemed produced in the Proceedings pursuant to this Protective Order, and subject to its terms, including but not limited to the provisions of Section 18.

(b)     From and after the Effective Date, this Protective Order shall govern and shall supersede the provisions in prior confidentiality agreements with respect to Allocation Dataroom Documents, but only as to the Parties and any other persons or entities who are entitled to receive documents under this Protective Order (subject to any requirements herein, including, but not limited to, Section 13).

(c)     The Parties shall have twenty-one (21) days following the Effective Date to designate documents in the Allocation Dataroom as Highly Confidential Discovery Material. Any Party making such designation will be required to provide new documents with the Highly Confidential legend to replace existing or to otherwise bear the cost of the designation of such documents. Until such period expires, all Parties with access to the Allocation Dataroom will treat documents therein as Highly Confidential Discovery Material.

(d)     After the expiration of the 21-day period, a Party shall have the right at any time to designate such documents in the Allocation Dataroom as Highly Confidential in accordance with paragraph 10(a). Such documents will thereafter be treated as if they had been designated as Highly Confidential in the 21-day period after the Effective Date.

(e)     Notwithstanding anything to the contrary herein, all documents in the Allocation Dataroom shall be deemed Confidential upon the Effective Date and will be electronically stamped with the Confidential legend. Where it is evident from the Bates Stamp which Party supplied the document to the Allocation Dataroom, that Party will be deemed the Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. Absent such evidence, the document will be deemed produced by the US Debtors, Canadian Debtors and EMEA Debtors and all such Parties shall each be considered a Producing Party with respect to such documents and be treated as a Producing Party for purposes of Subsection (f) *infra*, and Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

(f)     In the event any Party objects to the designation of specifically identified documents from the Allocation Dataroom, the Producing Party shall reconsider such designation and, within ten (10) days, either re-affirm the designation or such document(s) shall no longer be considered Confidential Discovery Material.

**21.    Intentional or Negligent Disclosure of Confidential or Highly Confidential Discovery Material.**

In the event of an alleged intentional or negligent disclosure of Highly Confidential Discovery Material or Confidential Discovery Material in violation of this Protective Order, the Parties shall first seek to resolve the alleged violation through prompt and reasonable discussion. In the event such efforts fail to promptly resolve the alleged violation, the Parties reserve the right to seek any available remedy from the Courts, including, *inter alia*, money damages, injunctive relief or any other relief as appropriate.

15

## 22.    Enforcement Pending Entry.

The Parties agree to be bound by the terms of this Protective Order pending the entry of this Protective Order by the Courts, and any violation of its terms shall be subject to the same sanctions and penalties as if this Protective Order has been issued and entered by the Courts.

## 23.    Jurisdiction.

The US Court and the Canadian Court shall retain jurisdiction and venue for the purposes of any dispute arising out of or relating to this Protective Order.  For the avoidance of doubt, the Parties' obligations remain ongoing, and such jurisdiction and venue is retained even to the extent this Protective Order is utilized in connection with any arbitration proceeding.

16

182

## EXHIBIT A

I, _____, declare under penalty of perjury, the

following:

I reside at _____ in the City of

_____ and State/Province of _____;

I have read the annexed Protective Order dated _____, 2013;

I am fully familiar with and agree to comply with and be bound by the provisions of that

Protective Order and consent and attorn to the jurisdiction of the United States Bankruptcy Court

for the District of Delaware and the Ontario Superior Court of Justice solely for the purpose of

enforcement of the provisions of the Confidentiality Protective Order and Protective Order. I

will not divulge any Discovery Material to persons other than those specifically authorized by

the Protective Order, and will take reasonable steps, including, but not limited to, establishing

information firewalls, to prevent the inadvertent disclosure of Discovery Material to any persons

not so authorized. I understand, in particular, that any Confidential or Highly Confidential

Discovery Material, and any copies, excerpts or summaries thereof, or materials containing

Confidential or Highly Confidential Discovery Material derived therefrom, as well as any

knowledge or information derived from any of these items, may be used only for the Proceedings

and may not be used to inform the purchase or sale of securities or for any other purpose,

including, without limitation, any business or commercial purpose.

I further understand that failure to abide fully by the terms of the Protective Order may

result in legal action against me, such as for contempt of court or liability for monetary damages.

Dated: _____    Signature: _____

17

183

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
:GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No: 09-CL-7950

|  |  |
|---|---|
|  | ***ONTARIO*** |
|  | **SUPERIOR COURT OF JUSTICE** |
|  | Proceeding commenced at Toronto |
|  |  |
|  | **ORDER** |
|  | **(Protective Order)** |
|  |  |
|  | **GOWLING LAFLEUR HENDERSON LLP** |
|  | Barristers & Solicitors |
|  | 1 First Canadian Place, |
|  | 100 King Street West, Suite 1600 |
|  | Toronto ON M5X 1G5 |
|  |  |
|  | **Derrick Tay (LSUC #: 21152A)** |
|  | **Jennifer Stam (LSUC #: 46735J)** |
|  | Tel:  (416) 862-5697 |
|  | Fax:  (416) 862-7661 |
|  |  |
|  | **GOODMANS LLP** |
|  | Barristers & Solicitors |
|  | 333 Bay Street, Suite 3400 |
|  | Toronto ON  M5H 2S7 |
|  |  |
|  | **Jay A. Carfagnini (LSUC#: 22293T)** |
|  | **Jessica Kimmel (LSUC#: 32312W)** |
|  | **Peter Ruby (LSUC#: 38439P)** |
|  | **Joseph Pasquariello (LSUC#: 38390C)** |
|  | Tel: 416.979.2211 |
|  | Fax: 416.979.1234 |

TOR_LAW\ 8184095\1

# TAB L



File No. 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| THE HONOURABLE MR. JUSTICE | ) | WEDNESDAY, THE 9TH DAY OF |
|---|---|---|
| | ) | |
| MORAWETZ | ) | OCTOBER, 2013 |
| | ) | |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**ORDER**
**(First Amendment to Protective Order)**

**THIS MOTION** made by Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the **"Canadian Debtors"**) jointly with Ernst & Young Inc. in its capacity as monitor (the **"Monitor"**) of the Canadian Debtors for the relief set out in the Notice of Motion dated October 7, 2013, was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the Affidavit of Sydney Young sworn October 7, 2013, and on hearing submissions of counsel for the Canadian Debtors and the Monitor, no one appearing for any other person on the service list or the core party service list although duly served as appears from the affidavit of Christopher G. Armstrong sworn October 7, 2013, filed.

- 2 -

1.    **THIS COURT ORDERS** that the time for the service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is property returnable today and hereby dispenses with further service thereof.

2.    **THIS COURT ORDERS** that the First Amendment to Protective Order dated September 20, 2013, and appended as Exhibit "A" hereto be and is hereby approved *nunc pro tunc* to September 20, 2013.

**MISCELLANEOUS**

3.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Canadian Debtors, the Monitor and their respective agents in carrying out the terms of this Order.   All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Canadian Debtors and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Canadian Debtors and the Monitor and their respective agents in carrying out the terms of this Order.

4.    **THIS COURT ORDERS** that each of the Canadian Debtors and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

OCT 0 9 2013
NB



- 3 -

**EXHIBIT "A"**

**FIRST AMENDMENT TO PROTECTIVE ORDER**

**[ATTACHED]**

## FIRST AMENDMENT TO PROTECTIVE ORDER

The Parties hereby amend the Protective Order [D.I. 10805-1] approved by the Courts on June 11, 2013[1] in compliance with the requirements of Paragraph 19(c) of the Protective Order as follows:

Section 5(d) shall be amended to include the underlined language:

(d)    Any Receiving Party may (but need not) request leave of a Producing Party to show Highly Confidential Discovery Material to parties or persons expected to be examined for discovery, deponents, Party representatives and/or trial witnesses in the Proceedings by providing notice to the Producing Party of the Highly Confidential Discovery Material the Receiving Party seeks to use and the parties shall use their best efforts within five business days to determine whether such material may be disclosed by the Receiving Party to such persons while protecting the Producing Party's need for confidentiality, including, but not limited to, considering whether portions of such material can be redacted and re-evaluating whether such material must be protected as Highly Confidential. In the event the Producing Party and the Receiving Party cannot resolve an issue concerning the use of Highly Confidential Discovery Material, the matter may be presented to the Courts for resolution on an expedited basis. If such leave is not requested and granted by the Producing Party or the Courts, Highly Confidential Discovery Material may be disclosed only in accordance with the terms of the Protective Order.

Section 18(a) shall be amended to include the underlined language added as a second sentence:

(a)    Nothing in this Protective Order shall require disclosure of information that counsel contends is protected from disclosure by solicitor-client privilege, attorney-client privilege, work-product immunity, or any other applicable privilege, immunity or protection from disclosure under any applicable law (each a "Privilege" and, collectively, the "Privileges). Nothing in this Protective Order shall constitute an admission of, or be deemed to create, a solicitor-client, attorney-client or similar relationship.

Section 18 shall be amended by the addition of new subparagraph (h):

(h)    Notwithstanding anything to the contrary set forth in the Protective Order, the Parties agree that any Discovery Material subject to a claim of joint privilege by two or more of the Canadian Debtors, EMEA Debtors or US Debtors is subject to a joint privilege shared by all Parties ("Nortel Joint Privileged Discovery Material") and shall constitute Highly Confidential Discovery Material under the Protective Order, and the provisions of the Protective Order relating to treatment of Highly Confidential Discovery Material, including but not limited to Sections 8(a), 8(b) and 10, shall apply. With respect to Nortel Joint Privileged Discovery Material, the notice provisions of Sections 18(b) and (g) shall not apply to a Party's use of or reliance on Nortel Joint Privileged Discovery Material. Section 18(f) of the Protective Order

---

[1] Capitalized terms not defined herein shall have the meaning given in the Protective Order entered June 11, 2013 [D.I. 10805-1].



shall not apply to production and use of Nortel Joint Privileged Discovery Material and such production and use does not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter as the Nortel Joint Privileged Information.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

Dated:  September 20, 2013

*Counsel for the Official Committee*
*of Unsecured Creditors*

AKIN GUMP STRAUSS HAUER & FELD
LLP

David H. Botter
Fred Hodara
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins
Christopher M. Samis
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

DENTONS CANADA LLP
(formerly Fraser Milner Casgrain LLP)

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

*Counsel for the Debtors*
*and Debtors in Possession*

CLEARY GOTTLIEB STEEN & HAMILTON
LLP

Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

TORYS LLP

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2, Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380



Dated: September 20, 2013

*Counsel for the Official Committee*
*of Unsecured Creditors*

*Counsel for the Debtors*
*and Debtors in Possession*

---

**AKIN GUMP STRAUSS HAUER & FELD LLP**

David H. Botter
Fred Hodara
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins
Christopher M. Samis
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

**DENTONS CANADA LLP**
(formerly Fraser Milner Casgrain LLP)

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

---

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

**TORYS LLP**

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2, Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

191

*Counsel for the Bondholders*

*Counsel for Ernst & Young Inc. as Monitor*

PACHULSKI STANG ZIEHL & JONES LLP

GOODMANS LLP

Laura Davis Jones
Kathleen P. Makowski
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, ON M5H 257
Canada
Telephone: (416) 979 2211
Facsimile: (416) 979 1234

MILBANK, TWEED, HADLEY & McCLOY LLP

Dennis F. Dunne
Thomas R. Kreller
Albert A. Pisa
Andrew M. Leblanc
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BENNETT JONES

BUCHANAN INGERSOLL & ROONEY PC

Gavin Finlayson
Richard B. Swan
Kevin Zych
S. Richard Orzy
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario M5X 1A4
Canada

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

54

192

*Counsel for the Bondholders*

*Counsel for Ernst & Young Inc. as Monitor*

---

PACHULSKI STANG ZIEHL & JONES
LLP

GOODMANS LLP

Laura Davis Jones
Kathleen P. Makowski
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

MILBANK, TWEED, HADLEY &
McCLOY LLP

Dennis F. Dunne
Thomas R. Kreller
Albert A. Pisa
Andrew M. Leblanc
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

BENNETT JONES

Gavin Finlayson
Richard B. Swan
Kevin Zych
S. Richard Orzy
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario M5X 1A4
Canada

Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, ON M5H 2S7
Canada
Telephone: (416) 979 2211
Facsimile: (416) 979 1234

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY PC

Mary F. Caloway
Kathleen A. Murphy ,
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295



*Counsel for the Canadian Debtors*

*Counsel for the Joint Administrators*

GOWLING LAFLEUR HENDERSON LLP

Jennifer Stam
Derrick Tay
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Tel: +1 416 216 4000
Fax: +1 416 216 3930

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY
PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

James L. Patton
Edwin J. Harron
John T. Dorsey
Jaime Luton Chapman
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Gabrielle Glemann
Charles H. Huberty
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

DAVIES WARD PHILLIPS & VINEBERG LLP

Robin Schwill
Sean Campbell
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

LAX O'SULLIVAN SCOTT LISUS LLP

Matthew P. Gottlieb
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

5

194

*Counsel for the Canadian Debtors*

*Counsel for the Joint Administrators*

---

GOWLING LAFLEUR HENDERSON LLP

Jennifer Stam
Derrick Tay
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Tel: +1 416 216 4000
Fax: +1 416 216 3930

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY
PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

James L. Patton
Edwin J. Harron
John T. Dorsey
Jaime Luton Chapman
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Gabrielle Glemann
Charles H. Huberty
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

DAVIES WARD PHILLIPS & VINEBERG LLP

Robin Schwill
Sean Campbell
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

LAX O'SULLIVAN SCOTT LISUS LLP

Matthew P. Gottlieb
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

5

195

*Counsel for the Canadian Creditors
Committee*

*Selinda A. Melnik* [signature]

Selinda A. Melnik (DE Bar No. 4032)

*on behalf of*

**DLA PIPER LLP (US)**
*U.S. Counsel for the Canadian Creditors
Committee*

Selinda A. Melnik
919 North Market Street
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 468-5650
Facsimile: (302) 778-7914
*- and -*
Richard Hans
Timothy Hoeffner
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4530

**CAW-CANADA LEGAL DEPARTMENT**
*Lawyers for the Canadian Autoworkers Union*

Barry Wadsworth
205 Placer Court
Toronto, ON  M2H 3H9
Telephone: (416) 495-3776
Facsimile: (416) 495-3786

**KOSKIE MINSKY LLP**
*Lawyers for the Former and Disabled
Canadian Employees*

Mark Zigler
Susan Philpott
Ari Kaplan
20 Queen Street West, Suite 900
Toronto, ON  M5H 3R3
Telephone: (416) 595-2090
Facsimile: (416) 204-2877

**McCARTHY TÉTRAULT LLP**
*Lawyers for Morneau Shepell Ltd.,
as administrator of the Nortel Canada
registered pension plans*

R. Paul Steep
Byron D. Shaw
Elder Marques
James D. Gage
Barbara J. Boake
TD Bank Tower, Suite 5300
Toronto Dominion Centre
66 Wellington Street West
Toronto ON M5K 1E6
Telephone: (416) 601-7998
Facsimile: (416) 868-0673

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**

Ken Rosenberg
Lily Harmer
Karen Jones
Massimo Starnino
155 Wellington Street West, 35th Floor
Toronto, ON  M5V 3H1
Telephone: (416) 646-4300
Facsimile: (416) 646-4301

**SHIBLEY RIGHTON LLP**
**w/ NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
*Lawyers for the Active and Transferred
Canadian Employees*

Arthur O. Jacques/ Thomas McRae
Co-Counsel: Janice Payne / Steve Levitt
250 University Avenue, Suite 700
Toronto, ON  M5H 3E5
Telephone:   (416) 214-5213/5206
Facsimile:   (416) 214-5413/5400

196

*Counsel for the Wilmington Trust Company, not in its individual capacity but solely as Trustee*

KATTEN MUCHIN ROSENMAN LLP

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

HEENAN BLAIKIE LLP

John Salmas
Kenneth David Kraft
Bay Adelaide Centre
P.O. Box 2900
333 Bay Street, Suite 2900
Toronto, ON M5H 2T4
Telephone: (416) 360-6336
Facsimile: (416) 360-8425

*Counsel for the Former Directors and Officers of Nortel Networks Corporation and Nortel Networks Limited*

OSLER, HOSKIN & HARCOURT LLP

Lyndon A.J. Barnes
Adam Hirsh
Box 50, 1 First Canadian Place
Toronto, Ontario
M5X 1B8
Canada

*Counsel for The Bank of New York Mellon, as Indenture Trustee*

LATHAM & WATKINS LLP

Michael J. Riela
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

MCMILLAN LLP

Sheryl E. Seigel
Brookfield Place, Suite 4400
181 Bay Street
Toronto, ON M5J 2T3
Canada
Telephone: (416) 865-7000
Facsimile: (416) 865-7048

*Counsel for the Wilmington Trust Company, not in its individual capacity but solely as Trustee*

---

KATTEN MUCHIN ROSENMAN LLP

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

HEENAN BLAIKIE LLP

John Salmas
Kenneth David Kraft
Bay Adelaide Centre
P.O. Box 2900
333 Bay Street, Suite 2900
Toronto, ON M5H 2T4
Telephone: (416) 360-6336
Facsimile: (416) 360-8425

*Counsel for the Former Directors and Officers of Nortel Networks Corporation and Nortel Networks Limited*

---

OSLER, HOSKIN & HARCOURT LLP

Lyndon A.J. Barnes
Adam Hirsh
Box 50, 1 First Canadian Place
Toronto, Ontario
M5X 1B8
Canada

*Counsel for The Bank of New York Mellon, as Indenture Trustee*

---

LATHAM & WATKINS LLP

Michael J. Riela
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

MCMILLAN LLP

Sheryl E. Seigel
Brookfield Place, Suite 4400
181 Bay Street
Toronto, ON M5J 2T3
Canada
Telephone: (416) 865-7000
Facsimile: (416) 865-7048

198

*Counsel for the Wilmington Trust Company, not in its individual capacity but solely as Trustee*

*Counsel for The Bank of New York Mellon, as Indenture Trustee*

LATHAM & WATKINS LLP

KATTEN MUCHIN ROSENMAN LLP

Michael J. Riela
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

MCMILLAN LLP

Sheryl E. Seigel
Brookfield Place, Suite 4400
181 Bay Street
Toronto, ON M5J 2T3
Canada
Telephone: (416) 865-7000
Facsimile: (416) 865-7048

HEENAN BLAIKIE LLP

John Salmas
Kenneth David Kraft
Bay Adelaide Centre
P.O. Box 2900
333 Bay Street, Suite 2900
Toronto, ON M5H 2T4
Telephone: (416) 360-6336
Facsimile: (416) 360-8425

*Counsel for the Former Directors and Officers of Nortel Networks Corporation and Nortel Networks Limited*

OSLER, HOSKIN & HARCOURT LLP

Lyndon A.J. Barnes
Adam Hirsh
Box 50, 1 First Canadian Place
Toronto, Ontario
M5X 1B8
Canada

199

*Counsel for the Trustee of Nortel Networks UK Pension Plan and the Board of the Pension Protection Fund*

BAYARD, P.A.

Charlene D. Davis
Justin R. Alberto
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

WILLKIE FARR & GALLAGHER LLP

Brian E. O'Connor
787 7th Ave.
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-9251

CASSELS BROCK & BLACKWELL LLP

David Ward
William Burden
Lara Jackson
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

THORNTON GROUT FINNIGAN LLP

Michael Barrack
D.J. Miller
Rebecca Lewis
Andrea McEwan
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON M5K 1K7

*Counsel for the Law Debenture Trust Company of New York*

BORDEN LADNER GERVAIS

John D. Marshall
Craig J. Hill
Edmond Lamek
Scotia Plaza,
40 King Street West, 44th Floor
Toronto, Ontario M5H 3Y4
Canada
Telephone: (416) 367-6000
Facsimile: (416) 367-6749

PATTERSON BELKNAP WEBB & TYLER LLP

Daniel A. Lowenthal
Brian P. Guiney
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

MORRIS JAMES LLP

Stephen M. Miller
Courtney R. Hamilton
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

28

*Counsel for the Trustee of Nortel Networks*
*UK Pension Plan and the Board of the*
*Pension Protection Fund*

BAYARD, P.A.

Charlene D. Davis
Justin R. Alberto
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

WILLKIE FARR & GALLAGHER LLP

Brian E. O'Connor
787 7th Ave.
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-9251

CASSELS BROCK & BLACKWELL LLP

David Ward
William Burden
Lara Jackson
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

THORNTON GROUT FINNIGAN LLP

Michael Barrack
D.J. Miller
Rebecca Lewis
Andrea McEwan
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON M5K 1K7

*Counsel for the Law Debenture Trust Company of*
*New York*

BORDEN LADNER GERVAIS

John D. Marshall
Craig J. Hill
Edmond Lamek
Scotia Plaza,
40 King Street West, 44th Floor
Toronto, Ontario M5H 3Y4
Canada
Telephone: (416) 367-6000
Facsimile: (416) 367-6749

PATTERSON BELKNAP WEBB &
TYLER LLP

Daniel A. Lowenthal
Brian P. Guiney
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

MORRIS JAMES LLP

Stephen M. Miller
Courtney R. Hamilton
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

---

|  |  |
|---|---|
|  | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**COMMERCIAL LIST** |
|  | Proceeding commenced at Toronto |
|  | **ORDER**<br>**(First Amendment to Protective Order)** |
|  | **Goodmans LLP**<br>Bay Adelaide Centre<br>333 Bay Street, Suite 3400<br>Toronto, ON   M5H 2S7<br><br>Jay A. Carfagnini (LSUC#: 22293T)<br>Joseph Pasquariello (LSUC#: 38390C)<br>Christopher Armstrong (LSUC#: 55148B)<br>Tel: 416.979.2211<br>Fax: 416.979.1234<br><br>Lawyers for the Monitor, Ernst & Young Inc. |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

Court File No. 09-CL-7950

---

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(Commercial List)**

Proceeding commenced at Toronto

---

**Outline of the Monitor and Canadian Debtors**

**(Pre-Trial Conference to be held on April 22, 2014)**

---

| | |
|---|---|
| **GOODMANS LLP**<br>Barristers & Solicitors<br>333 Bay Street, Suite 3400<br>Toronto, Canada  M5H 2S7<br><br>Jay A. Carfagnini  (LSUC #: 22293T)<br>jcarfagnini@goodmans.ca<br>Alan Mark (LSUC #: 21772U)<br>amark@goodmans.ca<br>Jessica Kimmel (LSUC #: 32312W)<br>jkimmel@goodmans.ca<br>Peter Ruby (LSUC #: 38439P)<br>pruby@goodmans.ca<br>Joseph Pasquariello (LSUC #: 37389C)<br>jpasquariello@goodmans.ca<br><br>Tel:      416.979.2211<br>Fax:     416.979.1234<br><br>**Lawyers for the Monitor, Ernst & Young Inc.** | **Gowling Lafleur Henderson LLP**<br>Barristers & Solicitors<br>1 First Canadian Place<br>100 King Street West, Suite 1600<br>Toronto, ON  M5X 1G5<br><br>Derrick Tay  (LSUC #: 21152A)<br>derrick.tay@gowlings.com<br>Jennifer Stam  (LSUC #: 46735J)<br>Jennifer.stam@gowlings.com<br><br>Tel:   416.862.5697<br>Fax:  416.862.7661<br><br>**Lawyers for the Canadian Debtors** |

6280791