```
                    IN THE UNITED STATES BANKRUPTCY COURT
                      FOR THE DISTRICT OF DELAWARE


IN RE:                         )   Case No. 09-10138(KG)
                               )   (Jointly Administered)
NORTEL NETWORKS, INC.,         )
     et al.,                   )   Chapter 11

                               )   Courtroom 3
                               )   824 Market Street
           Debtors.            )   Wilmington, Delaware
                               )
                               )   April 17, 2014
                               )   11:00 a.m.

                     TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JUDGE KEVIN GROSS
                 UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:              Morris Nichols Arsht & Tunnell, LLP
                          BY: DEREK C. ABBOTT, ESQ.
                          BY: ANNIE CORDO, ESQ.
                          Morris Nichols Arsht & Tunnell, LLP
                          1201 North Market St., 18th Floor
                          Wilmington, DE  19899-1347
                          (302) 351-9357

                          Cleary Gottlieb Steen & Hamilton
                          BY: LISA SCHWEITZER, ESQ.
                          BY: BRENT TUNIS, ESQ.
                          One Liberty Plaza
                          New York, NY  10006
                          (212) 225-2000

ECRO:                     GINGER MACE

Transcription Service:    DIAZ DATA SERVICES, LLC
                          331 Schuylkill Street
                          Harrisburg, Pennsylvania 17110
                          (717) 233-6664
                          www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

APPEARANCES:
(Continued)

| For the EMEA<br>Debtors: | Young Conaway Stargatt & Taylor,<br>LLP<br>BY: JOHN DORSEY, ESQ.<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware  19801<br>(302) 571-6703 |
| --- | --- |
| | Hughes Hubbard & Reed LLP<br>BY: NEIL OXFORD, ESQ.<br>One Battery Park Plaza<br>New York, NY  10005<br>(212) 837-6068 |
| For UK Pension<br>Interests: | Bayard, PA<br>BY: JUSTIN R. ALBERTO, ESQ.<br>222 Delaware Ave., Ste. 900<br>Wilmington DE  19899<br>(302) 429-4226 |
| For the Creditors'<br>Committee: | Richards Layton & Finger<br>BY: CHRISTOPHER SAMIS, ESQ.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE  19801<br>(302) 651-7531 |
| | Akin Gump Strauss Hauer & Feld, LLP<br>BY: DAVID BOTTER, ESQ.<br>BY: ROBERT JOHNSON, ESQ.<br>One Bryant Park<br>New York, NY  10036-6745<br>(212) 872-1000 |
| For Monitor, Ernst &<br>Young & Canadian<br>Debtors: | Buchanan Ingersoll & Rooney PC<br>BY: KATHLEEN A. MURPHY, ESQ.<br>1105 North Market St., Ste. 1900<br>Wilmington, DE  19801-1054<br>(302) 552-4214 |

TELEPHONIC APPEARANCES:

| For Monitor, Ernst &<br>Young: | Allen & Overly, LLP<br>BY: LEONA KEYASHIAN, ESQ.<br>(212) 610-6300 |
| --- | --- |

TELEPHONIC APPEARANCES:
(Continued)

For Ad Hoc Committee:        Milbank Tweed Hadley & McCloy
                             BY: THOMAS MATZ, ESQ.
                             (212) 530-5885
                             Pachulski Stang Ziehl & Jones
                             BY: PETER J. KEANE, ESQ.
                             (302) 778-6401

For Official Committee       Akin Gump Strauss Hauer & Feld, LLP
of Unsecured Creditors:      BY: ABID QURESI, ESQ.
                             (212) 872-1000
                             BY: MATTHEW FAGEN, ESQ.
                             (212) 872-8051

For Interested Party:        Farallon Capital Management
                             BY: MICHAEL LINN
                             (415) 421-2132

For Peg Brickley:            Dow Jones & Co.
                             BY: PEG BRICKLEY, ESQ.
                             (215) 462-0953

For Nortel Networks          Willkie Farr & Gallagher, LLP
UK Pension Trust:            BY: SAMEER ADVANI, ESQ.
                             (212) 728-8170

For Bank of America:         BY: ESTHER CHUNG, ESQ.
                             (646) 855-6706

For Law Debenture            Patterson Belknap Webb & Tyler
Trust Co of New York:        BY: BRIAN GUINEY, ESQ.
                             (212) 336-2305

For Aurelius Capital         Aurelius Capital Management
Management:                  BY: MATTHEW A. ZLOTO, ESQ.
                             (646) 445-6518

For Nortel Networks          Hogan Lovells, US, LLP
UK Pension Trust:            BY: ANGELA DIMSDALE-GILL, ESQ.
                             (212) 728-3135
                             Thornton Grout Finnigan, LLP
                             BY: MICHAEL S. SHAKRA, ESQ.
                             (416) 304-0332

For Wilmington Trust:        Katten Munchin Rosenmann, LLP
                             BY: DAVID CRICHLOW, ESQ.
                             (212) 940-8941

TELEPHONIC APPEARANCES:
(Continued)

For Joint Administrators    Hughes Hubbard & Reed LLP
and Foreign Reps:           BY: FARA TABATABAL, ESQ.
                            (212) 837-6000

For Reorganized             Reorganized Research, Inc.
Research:                   BY: KENT COLLIER, ESQ.
                            (212) 257-4383

For K Street Capital:       Kamunting Street
                            BY: JACK MUI
                            (203) 541-4268

For Deutsche Bank:          Deutsche Bank
                            BY: JAMES MACINNIS
                            (212) 250-2578

For DLA Piper:              BY: SELINDA A. MELNIK
                            (302) 468-5650

For U.S. Debtors            Torys
& Canada:                   BY: ADAM SLAVENS
                            (416) 865-7333

For Cassels Brock &         Cassels Brock & Blackwell, LLP
Blackwell:                  BY: MICHAEL J. WUNDER, ESQ.
                            (416) 860-6484

WILMINGTON, DELAWARE, THURSDAY, APRIL 17, 2014, 11:05 A.M.

1          THE CLERK:  All rise.  Court's now in session,

2  please be seated.

3          JUSTICE NEWBOULD:  Good morning, Judge Gross.

4          THE CLERK:   Please rise.

5          THE COURT:  Good morning, everyone.  Please be

6  seated.  It's good to see all of you.  And it's good to see

7  you, Justice Newbould.

8          JUSTICE NEWBOULD:  Very nice and you, too, Mr.

9  Justice Gross.  All right, MR. GOTTLIEB, this is your

10  Motion.  The -- it involves a production of a document --

11          MR. GOTTLIEB:  Yes.

12          JUSTICE NEWBOULD:   -- in the claims case here in

13  our Court.

14          MR. GOTTLIEB:  Yes.

15          JUSTICE NEWBOULD:  All right.

16          THE COURT:  I thought I might just --

17          JUSTICE NEWBOULD:  The thing I'm wondering --

18          THE COURT:  Does the matter involve this Court,

19  Mr. Abbott or Ms. Schweitzer?  Good morning, Ms. Schweitzer.

20          MS. SCHWEITZER:  Good morning, Your Honor.  Lisa

21  Schweitzer for the U.S. Debtors.

22          The Motion as I understand it was brought by the

23  EMEA Debtors.

24          THE COURT:  Yes.

1          MS. SCHWEITZER:  And before the Canadian Court

2   for the production or use of the documents with respect to

3   the claims proceedings for the claims that the EMEA Debtors

4   have filed against the Canadian Debtors.

5          THE COURT:  Right.

6          MS. SCHWEITZER:  The reason that we sought a

7   Joint Hearing on the matter is because the document in

8   question and the arguments regarding privilege, relate to

9   the involvement of a U.S. employee, Mike Orlando, who was

10  copied and contributed, apparently, to the document.

11         THE COURT:  All right.

12         MS. SCHWEITZER:  And so people are making

13  arguments with respect to Mr. Orlando's role and with

14  respect to whether the documents should be clawed back and

15  from whom.  To the point where one of our concerns is

16  whether the U.S. Debtors are being asked to destroy their

17  own books and records for their own employee because it came

18  from our files.

19         THE COURT:  Okay.

20         MS. SCHWEITZER:  So we'll allow them to proceed

21  first in Canada.  I have my colleague or co-counsel, Mr.

22  Gray of the Torys Firm, who is prepared to make submissions

23  in Canada.  But given that, while we're being told it

24  relates to the claims proceedings and it's not an allocation

25  issue, because it relates to our employees' documents, we

1   wanted to make sure Your Honor was aware and that nothing

2   prejudicial was happening with respect to the U.S. Debtors

3   in the context of the Motion.

4            JUSTICE NEWBOULD:  Well, I understand that and

5   I've read the Factums, but are you suggesting that Judge

6   Gross needs to be involved in the decision to be made?

7            MS. SCHWEITZER:  Well to the extent that these --

8   the document appears to relate to documents in books and

9   records which are property of the United States Debtors, and

10  so to the extent that anyone is seeking any finding that

11  would direct or have the consequence of asking the U.S.

12  Debtors to destroy documents in their own possession, we do

13  think it is a matter that would be properly before Judge

14  Gross because we don't think that that relief is

15  appropriate.

16           We also don't think it's necessary in the context

17  of the Motion, but we have received, prior to the hearing,

18  letters from the Canadian Debtors asking us to confirm we've

19  destroyed the document.  And what that would mean for the

20  U.S. is taking the hard drive and wiping it off the hard

21  drive or something equivalent to that.  And so, we think

22  that would be inappropriate.  And to the extent that that is

23  the relief being sought, that is appropriate for a Joint

24  Hearing.

25           Second of all, Mr. Orlando is a trial witness for

1    the Allocation Trial.  And there are submissions being made

2    by the Canadian Debtors and the Monitor before the Canadian

3    Court taking positions with respect to Mr. Orlando's role,

4    not merely with respect to this one document, but with

5    regard to his involvement and his responsibilities to

6    different estates in the larger transfer pricing

7    arrangements between the estates.  And there are positions,

8    quite frankly, that we disagree with in the way that

9    they're --

10            JUSTICE NEWBOULD:  Well, let me --

11            MS. SCHWEITZER:  -- characterizing his role.  So

12    our concern --

13            JUSTICE NEWBOULD:  Okay.  Let me just -- Miss,

14    Ma'am, could I just ask you to just hold it for a minute,

15    please?

16            MS. SCHWEITZER:  Of course.

17            JUSTICE NEWBOULD:  Mr. Gottlieb are you looking

18    for an Order that something be destroyed?

19            MR. GOTTLIEB:  No, it's quite the opposite, Your

20    Honor, and --

21            JUSTICE NEWBOULD:  So you're not looking for

22    that?

23            MR. GOTTLIEB:  But just to clarify the point that

24    Ms. Schweitzer is making, the Canadian's wrote to the

25    American's and said you must destroy the documents under the

1    protocol.  So it's the Canadian Debtors that made that

2    request of the American's.  So what Ms. Schweitzer is saying

3    is --

4                    JUSTICE NEWBOULD:  Right.

5                    MR. GOTTLIEB:  -- that is part of what the

6    Canadian's have said the implication is and that's why I

7    believe Ms. Schweitzer has asked Judge Gross to be involved

8    because that would affect the U.S. Estate directly.

9                    JUSTICE NEWBOULD:  All right.

10                   MR. GOTTLIEB:  And I apologize for speaking for

11   her, but I think that's where it's headed.

12                   MS. SCHWEITZER:  And the second point, obviously,

13   being that since we're being told this is relating to the

14   claims proceeding, that yet, obviously, it's before Your

15   Honor, Mr. Justice Newbould, that we would be concerned if

16   there were any findings regarding the role and involvement

17   of Mr. Orlando, our trial witness, on transfer pricing

18   issues --

19                   JUSTICE NEWBOULD:  All right.  I understand that.

20   I've heard that.  And Mr. Ruby, you wanted to say something?

21                   MR. RUBY:  Very briefly, Your Honor, to try and

22   make this easier for you and Judge Gross.

23                   When we wrote to the U.S. Debtors and asked them

24   to follow the Protective Order in this case and the

25   discovery plan, the usual course is to destroy it.  Last

1    night, I saw the Factum from the U.S.  They say they're not

2    going to use the document.  We're fine with them segregating

3    it for now.  This doesn't have to be dealt with at this

4    hearing and that --

5            JUSTICE NEWBOULD:  Okay.  So Ms. Schweitzer,

6    you've got some comfort there.

7            MS. SCHWEITZER:  That's good, we appreciate that.

8            JUSTICE NEWBOULD:  All right, thank you.

9            THE COURT:  Thank you, Ms. Schweitzer.

10           JUSTICE NEWBOULD:  Then I guess we'll hear from

11   you, MR. GOTTLIEB.

12           MR. GOTTLIEB:  Thank you, Your Honor.  Good

13   morning.  Good morning, Judge Gross.

14           THE COURT:  Good morning.

15           MR. GOTTLIEB:  I'll just set out what the Motion

16   is so we're all on the same page.  It's a Motion by the EMEA

17   Debtors for really three Orders, all related.

18           The first Order that we're seeking is requiring

19   the production of the disputed document which is a

20   PowerPoint produced by the U.S. Debtors in this litigation

21   and marked as an exhibit during the examination of Michael

22   Orlando who is a U.S. employee, in its un-redacted form.

23   The Canadian Debtors held back that document, clawed it back

24   under the protocol.  After we advised that this Motion was

25   being brought and scheduled, they provided a redacted

1   version of it.  But in our respectful submission, we are

2   seeking on this Motion, production of the un-redacted form.

3   That's the first head relief.

4           The second head is production of all other

5   related documents that were clawed back by the Canadian

6   Debtors or not produced.  And we know there were twelve

7   documents that are alleged to have been clawed back by the

8   Canadian Debtors on the same grounds, apparently --

9           JUSTICE NEWBOULD:  Let me just ask you a

10  question.

11          MR. GOTTLIEB:  Yes.

12          JUSTICE NEWBOULD:  What you're now referring to

13  is -- I don't see it in your Motion.

14          MR. GOTTLIEB:  What's that?

15          JUSTICE NEWBOULD:  What we're now talking about,

16  twelve other documents, I don't see it in the Notice of

17  Motion.

18          MR. GOTTLIEB:  Yeah, when you look at the Motion

19  of record, A, the first Motion is production and any related

20  documents.  Do you see that?  It's at the very bottom of

21  that.  And what the Canadian Monitor and the Canadian

22  Debtors, and I'm going to use that interchangeably, they had

23  confirmed in their Factum, that they pulled -- they clawed

24  back twelve documents, in particular, at the same time with

25  respect to this issue.  But we've said all along, we don't

1  know what other documents related to this point were not

2  produced for the same reason.  So we had to be broad and say

3  'and related documents'.  So that's what we did there and

4  that's covered.  So we're seeking production of any related

5  documents to the issue that were improperly clawed back or

6  not produced.

7          And finally, and this is not referred to

8  specifically in the Notice of Motion, but it is as day

9  follows night, a portion of the transcript of Mr. Orlando's

10  deposition was sealed as a result of the disputed document.

11  So under the protocol, that portion of the transcript where

12  this document was being discussed, it was sealed.  And if

13  the relief is granted that we seek with respect to the

14  disputed document or any form of it, there's going to have

15  to be a review of that transcript and the relevant part or

16  all of that produced.  And again, I do say that's a day

17  follows night, because it was only sealed as a result of the

18  Canadian position on the disputed documents.

19          So in our respectful submission, those heads of

20  relief and dealing specifically with the disputed documents

21  and the related document ought to be granted.  First,

22  because the document is not protected by privilege and that

23  is the only basis upon which the Canadians --

24          JUSTICE NEWBOULD:  Well, I've read your Factum

25  and I've read the material.

1          MR. GOTTLIEB:  Okay.  So let me hit the

2    highlights of that and I appreciate that, thank you, Justice

3    Newbould for that.

4          The key factor here is that Mr. Orlando prepared

5    this document.  And the fact that he only prepared part of

6    it, or only was involved in part of it is irrelevant.  He

7    was involved in the preparation of it in May of 2010, and

8    we'll come back to that because that's critical.  And a copy

9    of document was sent to him at the same time a completed

10   copy and that is in the Motion record.  I believe it's --

11   just so you don't have to turn back, but I believe it's

12   Exhibit 2-C.  It is --

13          JUSTICE NEWBOULD:  Well, I saw that in the --

14          MR. GOTTLIEB:  Correct.  So he was involved in

15   the preparation and a copy was sent by the Canadian Monitor

16   to Mr. Orlando in May of 2010.

17          I'm going to come back to the document itself

18   because that's critical.  And I'm going to come back to how

19   it's framed, but it's the May 2010 point that is very

20   important because this is something that the Canadian

21   Monitor, Canadian Debtors in their Factum really don't deal

22   with because, frankly, there's no way to deal with it.

23          In May 2010, the insolvency proceedings were

24   already sixteen months old.  This was not a parent

25   subsidiary relationship at that time, that's trite.  We've

1   got proceedings in Canada regarding NNL and NNC.  We've got

2   proceedings in the U.S. Court in Delaware before Judge Gross

3   dealing with NNI.

4                JUSTICE NEWBOULD:  All right.  Now you just said

5   something which I need to ask you about.

6                MR. GOTTLIEB:  Of course.

7                JUSTICE NEWBOULD:  You said it's not a parent

8   subsidiary relationship.  And you people put over this

9   [indiscernible] time and these acronyms are flying around --

10               MR. GOTTLIEB:  I apologize.  I should have taken

11  that into consideration.

12               JUSTICE NEWBOULD:  -- like a -- flying around

13  like flint, so.

14               MR. GOTTLIEB:  All right.

15                         (Laughter)

16               JUSTICE NEWBOULD:  Just explain why you say the

17  NNI.  Tell me how it fits in -- how that kind of fit into

18  the corporate structure.

19               MR. GOTTLIEB:  Of course.  Okay.  So what you

20  have is the Canadian Companies, and I'll just call them the

21  Canadian Companies, but for your notes it's NNL --

22               JUSTICE NEWBOULD:  Yes.

23               MR. GOTTLIEB:  -- for the sake of discussion.

24               JUSTICE NEWBOULD:  Yes.

25               MR. GOTTLIEB:  And then you've got the U.S.

1  Company, NNI.

2            JUSTICE NEWBOULD:  Yes.

3            MR. GOTTLIEB:  By that time, both companies had

4  filed sixteen months previously for protection under the

5  U.S. Bankruptcy Code in the U.S. with respect to the U.S.

6  Company and in Canada under the CCAA.

7            JUSTICE NEWBOULD:  Yes.

8            MR. GOTTLIEB:  Both controlled by the Court, both

9  stayed --

10            JUSTICE NEWBOULD:  Well, both controlled by the

11  Court, but it was Debtor in possession was it not?

12            MR. GOTTLIEB:  It was but here's the key point.

13  And again, I do say this is trite.  The Canadian Company

14  could not exercise any control whatsoever over the American

15  Company while it's the CCAA.  It couldn't enforce anything.

16  And more to the point, Your Honor, at this point, these

17  companies had a very serious adversity of interest.

18            JUSTICE NEWBOULD:  Well, just a minute.  At the

19  time --

20            MR. GOTTLIEB:  In May 2010.

21            JUSTICE NEWBOULD:  -- did Mr. Orlando report to

22  people at the NNL, the Canadian --

23            JUSTICE NEWBOULD:  It's not the question of

24  whether he was --

25            JUSTICE NEWBOULD:  I'm just asking you a

1    question.  Did he report?

2            MR. GOTTLIEB:  To the company, I can't give a

3    straight answer to that.  And I --

4            JUSTICE NEWBOULD:  Okay.  It said in the --

5    certainly, in the material from Torys, that he reported to

6    two people in Canada.

7            MR. GOTTLIEB:  But the question really is in

8    May --

9            JUSTICE NEWBOULD:  Right.

10           MR. GOTTLIEB:  -- of 2010, which is the key part.

11   And Mr. Gray can deal with that when he stands up.

12           JUSTICE NEWBOULD:  Right.

13           MR. GOTTLIEB:  But the point that I'm making is

14   this.  As at the time of May 2010 --

15           JUSTICE NEWBOULD:  Yes.

16           MR. GOTTLIEB:  -- we had a situation where, for

17   example, the U.S. Debtors had already made a $2 billion

18   claim against the Canadian Estate.

19           JUSTICE NEWBOULD:  Yes.

20           MR. GOTTLIEB:  The companies were selling their

21   businesses or had sold their businesses.  They had already

22   entered into agreements about -- and these were heavily,

23   heavily, negotiated agreements with each having their own

24   counsel, about the procedures for dividing up the assets.

25   So for example, the IFSA that you've seen referred to in the

1  material, funding agreements.

2           So the point is, as of May of 2010, you have

3  parties, Canadian Debtors in the Canadian Estate as part of

4  the Canadian CCAA process.  You've got the American debtors

5  in the U.S. Bankruptcy Court in that process with their own

6  counsel, with their own very distinct interests.  And again,

7  the fact that one of them made a claim against the other for

8  $2 billion, shows that they've got an adversity of interest.

9  Plus, they've all got their own counsel and they're

10 negotiating.  And no one who has been with this case since

11 the very beginning in January of '09, no one would say that

12 in May 2010, the Canadian's and the American's were holding

13 hands and were on the same page and had the same interests

14 as --

15           JUSTICE NEWBOULD:  Okay.  Well, all right, but I

16 think you're going to have to deal with the argument put

17 against you, and that -- I mean, your argument is really

18 grounded on the fact that Mr. Orlando was working for some

19 independent company, of the Canadian companies, and

20 therefore, whatever he did or whatever was given to him was

21 given to somebody else.  That's -- your argument is grounded

22 on that argument as I understand it.

23           MR. GOTTLIEB:  That is a big part of --

24           JUSTICE NEWBOULD:  All right.

25           MR. GOTTLIEB:  -- the argument, right.

1              JUSTICE NEWBOULD:  So I think you're going to

2     need to deal with what's put against you on that.  Now you

3     can -- you say you don't know other use reporting to Canada

4     at the time.  I think that -- if the date of May 2010 is

5     important --

6              MR. GOTTLIEB:  Yes.

7              JUSTICE NEWBOULD:  -- and I think that needs --

8     you need to run that to the ground.

9              MR. GOTTLIEB:  Okay.  And I will, but I before I

10    sit down, I will run that to the ground.

11             JUSTICE NEWBOULD:  All right.

12             MR. GOTTLIEB:  But let me go back for a moment to

13    the document itself because the document and Mr. Orlando's

14    involvement in it is important to understand why the issue

15    is before you.  Because the document itself is a very

16    important document because --

17             JUSTICE NEWBOULD:  That's fine.

18             MR. GOTTLIEB:  Well, let me go back to the

19    document and then I'll work on coming back.  As you know

20    from our material, the EMEA Debtors have very significant

21    claims against the Canadian Estate.

22             JUSTICE NEWBOULD:  Right.

23             MR. GOTTLIEB:  And one is a loan of $950 million

24    U.S.  And that's just a loan balance on the books owned by

25    the Canadian Estate to the UK Companies.

1              JUSTICE NEWBOULD:  Yes.  It's the setout point

2     that you say this document relates to.

3              MR. GOTTLIEB:  Right.  So what the Canadian's

4     took -- the position they took in their allocation papers

5     filed with the Court is they made a setoff claim of $557-odd

6     million.  And they said it's based on competing -- pardon

7     me, a compensating adjustment.  And the language that they

8     used in their materials is very important as to how they

9     categorized that.  Because what they say is that the

10    compensating adjustment, and I'm paraphrasing, of course, is

11    the only implication of the compensating adjustment that

12    NNUK, NNSA, NN Ireland will have to pay money back to

13    Canada.

14             And so that's the only implication that can be

15    drawn from the $2 billion settlement that was reached

16    between CRA and IRS.  And that's the key because the

17    Canadian's say it's the only implication --

18             JUSTICE NEWBOULD:  Yes.

19             MR. GOTTLIEB:  -- that can be drawn from that.

20             JUSTICE NEWBOULD:  I understand.

21             MR. GOTTLIEB:  But what we know now is two things

22    that are important.  One, is that no one knows how the IRS

23    and the CRA arrived at the $2 billion figure.  And that came

24    out of deposition after deposition.  And it's confirmed in

25    the Monitor's own material, but no one knows how they

1  arrived at it.  So for the Canadian Monitor, the Canadian

2  Debtors to say the only implication of the settlement is

3  "X", there's an issue about that, to put it bluntly.

4           JUSTICE NEWBOULD:  So just let me -- from what I

5  can glean from the material, this is a transfer pricing

6  issue, and the IRA and the CRA said bring those profits back

7  to Canada or the United States.

8           MR. GOTTLIEB:  Right, correct.

9           JUSTICE NEWBOULD:  And they ended up agreeing to

10  bring $2 billion back somewhere to North America.  Is that

11  -- is --

12           MR. GOTTLIEB:  There was over a $2 billion

13  capture.

14           JUSTICE NEWBOULD:  Yes.

15           MR. GOTTLIEB:  Back into the U.S.  But when they

16  were --

17           JUSTICE NEWBOULD:  That goes to the U.S.

18  Companies?

19           MR. GOTTLIEB:  Correct.

20           JUSTICE NEWBOULD:  Yes.

21           MR. GOTTLIEB:  And what we have then is the U.S.

22  and Canada negotiate and with the taxation authorities, what

23  the claim from the U.S. into the Canadian Estate is for the

24  CCAA proceeding, because the U.S. Company is going to make a

25  claim against a Canadian Company.  And that claim amount

1   that the Canadian's agree to is a $2 billion claim amount,

2   approximately a $2 billion claim amount.  So NNI for the

3   purpose of this CCAA proceeding, the U.S. Debtors for the

4   purpose of this CCAA proceeding, has a claim against the

5   Canadian Estate for $2 billion.

6           And what the Canadian Debtors and Monitor did was

7   they said well we have a claim against us and the

8   implications of that $2 billion adjustment means, and the

9   only implication of that is that we, Canada, are entitled to

10  be paid back or have claim against NNUK, NN Ireland, and

11  NNSA in France.  So it used that $2 billion claim that the

12  U.S. has against Canada, as forming the basis of a claim

13  that Canada has against those three estates.  And they say

14  in their papers that's the only implication.

15          And then we come to the document, and that's why

16  the document --

17          JUSTICE NEWBOULD:  This is important.  I'm making

18  a note that I have a question for you.

19          MR. GOTTLIEB:  Of course.

20          JUSTICE NEWBOULD:  The $2 billion claimed by the

21  U.S. Estate against the Canadian Estate --

22          MR. GOTTLIEB:  Correct.  Has --

23          JUSTICE NEWBOULD:  Was that a coincidence?  It's

24  the same as the tax deal or is it related to the settlement?

25          MR. GOTTLIEB:  They bid on the tax deal.

1          JUSTICE NEWBOULD:  All right.  Just explain to me

2    how then -- just explain to me how it -- they made an

3    arrangement to bring $2 billion in profits back, you say

4    under the deal, it goes back to the NNI?

5          MR. GOTTLIEB:  So the way it worked was that it

6    allowed NNI to make a claim in the Canadian Estate --

7          JUSTICE NEWBOULD:  Well, let's back up.

8          MR. GOTTLIEB:  -- as part of that --

9          JUSTICE NEWBOULD:  Try to back up.  The

10   settlement with the CRA and IRA settlement, repatriated $2

11   billion in profits.  Is that right?

12         MR. GOTTLIEB:  In revenue.

13         JUSTICE NEWBOULD:  In revenue, okay --

14         MR. GOTTLIEB:  Yes.

15         JUSTICE NEWBOULD:  -- sorry, that's revenue.  And

16   repatriated that to which company?  Which side of the board?

17         MR. GOTTLIEB:  NNI to the U.S. side.

18         JUSTICE NEWBOULD:  All right.  So NNI now has $2

19   billion more revenue.

20         MR. GOTTLIEB:  They have a claim against the

21   Canadian --

22         JUSTICE NEWBOULD:  Well, no, but because of the

23   settlement, they had revenue now, NNI, of $2 billion.

24         MR. GOTTLIEB:  Correct.

25         JUSTICE NEWBOULD:  Right.  What's the theory -- I

1  just want you to educate me a bit.  What's the theory of the

2  $2 billion claim by NNI against the Canadian Company?

3           MR. GOTTLIEB:  So that the transfer price --

4  there's a transfer pricing mechanism in place that had been

5  in place from '01 to '05.  And the taxation authorities

6  reviewed that transfer pricing methodology and came up with

7  what they call an adjustment as to how it should have been

8  done as opposed to how it was done.

9           JUSTICE NEWBOULD:  Yes.

10          MR. GOTTLIEB:  So that's the basis for it.  And

11  as a result of the negotiations that were in place between

12  the Canada taxation authority, and the U.S. taxation

13  authority, as a result of that, because both of these

14  companies are insolvency proceedings, what is negotiated

15  between them is that there will be a post-filing claim that

16  NNI has against the Canadian Company as a result of that

17  adjustment --

18          JUSTICE NEWBOULD:  And what's the theory of the

19  claim?  I just don't understand the theory of how they --

20          MR. GOTTLIEB:  The theory of the claim --

21          JUSTICE NEWBOULD:  I'm sure you all do, but I

22  don't.  What's the theory of $2 billion claim by the NNI

23  against the, we'll call it NNL?

24          MR. GOTTLIEB:  To put it in simplest terms, that

25  the way the transfer pricing was carried out as between the

1  companies --

2           JUSTICE NEWBOULD:  Yes.

3           MR. GOTTLIEB:  -- was not properly done and,

4  therefore, an adjustment had to be made for that period of

5  '01 to '05.

6           JUSTICE NEWBOULD:  Okay.  So what, do they say

7  it's entirely the fault of NNL?  Is that what you're saying?

8           MR. GOTTLIEB:  No, it's not an issue of fault,

9  it's the issue of the parties how they carried out their

10  transfer pricing system.

11           JUSTICE NEWBOULD:  Okay.

12           MR. GOTTLIEB:  And how the payments flowed back

13  and forth.

14           JUSTICE NEWBOULD:  All right.

15           MR. GOTTLIEB:  I don't think I can make it --

16           JUSTICE NEWBOULD:  That's fine.

17           MR. GOTTLIEB:  Okay.

18           JUSTICE NEWBOULD:  That helps me.

19           MR. GOTTLIEB:  Okay, thank you.  And I'm sorry

20  that took me so long to get to.

21           JUSTICE NEWBOULD:  No, that's all right, it's not

22  simple.

23           MR. GOTTLIEB:  So that was the point that the

24  Canadian's took on this.  And if you go into the Reply

25  Motion record that we filed.  It's the thin white --

1          JUSTICE NEWBOULD:  I have it.

2          MR. GOTTLIEB:  -- covered record.  And you go to

3   the first tab, and the fourth page in, Page 40 at the top.

4   You'll see that?

5          JUSTICE NEWBOULD:  Yes.

6          MR. GOTTLIEB:  Starting on the second line to the

7   right side, it says the -- the initial answer in part, the

8   IRS and CRA accepted the RPSM of the Monitor --

9          JUSTICE NEWBOULD:  Okay.  What's RPSM?

10         MR. GOTTLIEB:  The residual profit split method.

11  It's the transfer pricing mechanism used between the

12  parties.

13         JUSTICE NEWBOULD:  Okay.  Let me make a note what

14  it is.

15         MR. GOTTLIEB:  Of course.

16         JUSTICE NEWBOULD:  Residual --

17         MR. GOTTLIEB:  -- profit split method or

18  methodology.

19         So the IRS and CRA accepted the transfer pricing,

20  but considered the routine returns to be too high and

21  require reallocation of income, using revised routine

22  returns in accordance with the transfer pricing methodology.

23  So that's what you were asking about.  And this is again,

24  the Monitor and Canadian's position.  It's the response to

25  the EMEA claim.  And what they say is the adjustment

1    reinforces the endorsement of the tax authorities and this

2    is including it in the underlying revenue, so on, and so on,

3    just in the end, of the overall transfer pricing

4    methodology.

5              And here's the key.  The Monitor and the Canadian

6    Debtor said the only implication of a compensating

7    adjustment is that it gives rise to a throw through claim

8    back against NNUK, NN France, and NN Ireland to offset the

9    corresponding overpayments received by them in those years.

10   So that the only implication of that adjustment that we

11   talked about is that.

12             So now let's go to the document in its redacted

13   form.  And that is the Motion record, the original Motion

14   record, Your Honor.  I apologize, folks, the original Motion

15   record at 2L.

16             JUSTICE NEWBOULD:  I'm sorry, which one are you

17   on now?

18             MR. GOTTLIEB:  2L of the original Motion.

19             JUSTICE NEWBOULD:  Okay.

20             MR. GOTTLIEB:  And what we have is as you'll

21   recall from the material, we had advised this document was

22   in our position, improperly clawed back.  We asked for

23   production, it was refused --

24             JUSTICE NEWBOULD:  Well I understand that.  Then

25   they eventually gave you this.

1          MR. GOTTLIEB:  Then they gave us this after we

2    said [indiscernible].  So this is the document and it's

3    prepared jointly as you can see on Page 109 of the records

4    by Shawn Kruger from the Monitor and Michael Orlando who

5    they list as Nortel Transfer Pricing.  He's an NNI employee.

6    He's paid by NNL.  He's not an NN --

7          JUSTICE NEWBOULD:  Excuse me, now you said

8    something.  You said he's an NNI --

9          MR. GOTTLIEB:  He's a U. S. employee.

10         JUSTICE NEWBOULD:  And then you said paid by NNL.

11         MR. GOTTLIEB:  NNI, I apologize, if I said that.

12    Never been a Canadian employee.

13         JUSTICE NEWBOULD:  Right.

14         MR. GOTTLIEB:  And here is the reason this

15    document is critical to the dispute because it contradicts

16    directly, the point that the Monitor made and the Canadian

17    Debtors made in their joint response where they said the

18    only implication was a --

19         JUSTICE NEWBOULD:  I understand your point.

20         MR. GOTTLIEB:  So when you flip through the

21    document, and this is the point, on Page 110, Your Honor, so

22    it's the second page in, the last bullet point, said they

23    were -- that the CRA and IRS had refused to provide any

24    guidance as to how they move from their position.  And

25    that's been confirmed in depositions that people don't know

1 how the U.S. tax authority and the Canadian tax authority

2 came up with the $2 billion.

3             And if you flip it over, the next two pages,

4 you've got preliminary legal analysis, preliminary legal

5 analysis, so obviously, the Canadian Debtor says that that

6 is privileged based on legal advice.  And then the next two

7 pages --

8             JUSTICE NEWBOULD:  Let me ask you a question --

9             MR. GOTTLIEB:  Yes.

10             JUSTICE NEWBOULD:  -- about this.  What's it

11 matter what the legal advice was?  Let's assume you're right

12 and you get it.

13             MR. GOTTLIEB:  Yes.

14             JUSTICE NEWBOULD:  Then what?

15             MR. GOTTLIEB:  It's as in all of these cases,

16 Your Honor, and I believe the document has been brought up

17 to show Your Honor, I can't know the answer to that question

18 until we see the document.  I can't --

19             JUSTICE NEWBOULD:  Let's say if there's an answer

20 in there that really helps you, all right?  Then what?  Does

21 that bind the Court?  In the end, it's just the lawyer's

22 opinion, isn't it?

23             MR. GOTTLIEB:  I -- well, one, I don't know what

24 it is, but I --

25             JUSTICE NEWBOULD:  Well, presumably it's a legal

1   analysis.  It's going to be a legal analysis.

2            MR. GOTTLIEB:  Well, it --

3            JUSTICE NEWBOULD:  It may even include an opinion

4   that may be very favorable to you, but then what?  The

5   Court's not bound by it for sure.

6            MR. GOTTLIEB:  Right, but in every opinion, which

7   is it is interwoven with facts.  It's interwoven with

8   positions.  It's interwoven with analysis.

9            JUSTICE NEWBOULD:  Yes.

10           MR. GOTTLIEB:  But I can't give you an answer as

11  to how it can be used, how it can be used, until I know what

12  it is.  But I agree that if the language is -- "X" has a

13  better than 50 percent chance of winning that point.  If

14  that's all that a legal analysis said, whether we should get

15  it or not as a matter of law, as a matter of waiver, I

16  understand that not's your question.  Your question is so

17  what.  And --

18           JUSTICE NEWBOULD:  That's my question.

19           MR. GOTTLIEB:  I know.

20                     (Laughter)

21           MR. GOTTLIEB:  I've heard the question before.

22                     (Laughter)

23           JUSTICE NEWBOULD:  Surely not from me.

24           MR. GOTTLIEB:  No.

25                     (Laughter)

1      MR. GOTTLIEB:  I didn't mean that, Your Honor.

2                  (Laughter)

3      MR. GOTTLIEB:  That I understand the question and

4  it's difficult to answer, other than to say, you're right,

5  it may not be binding on the Court.  It may, frankly, not

6  even be that relevant to the Court, but it may be something

7  that the Court can consider.

8           And I'll take a step sideways.  And I

9  acknowledge, this is a bit of a step sideways.  This is

10  prepared by the Monitor.

11      JUSTICE NEWBOULD:  Yes.

12      MR. GOTTLIEB:  And it's an Ernst & Young

13  document.  It's the Monitor's document.  You'll know this

14  very well, Your Honor, but a Monitor's function in a CCAA

15  case is not to attack claims.  That's not the role to defeat

16  every claim brought before them.  They're supposed to deal

17  with the claims that are brought before the estate.  If

18  they're employee claims, terrific.  If they creditor's

19  claims, bondholder claims, terrific.  The Monitor's role is

20  to deal with the claims, allow the ones that should be

21  allowed, refuse the ones that should be refused, fight about

22  the ones in the middle, et cetera.

23           So this is prepared by the Monitor before the

24  claims were made.  And it's relevant to know what the

25  Monitor's position is because the Monitor did reject these

1  claims of the EMEA Debtors outright.  Even the claim for the

2  loan was rejected by the Monitor.

3         So as part of the document, I did say this was a

4  bit of an aside, it may be relevant to the Court to know

5  whether the Monitor's view was that it should reject the

6  claim, even though there was no real basis to do so.

7         But the real answer I want to give you on that

8  point is I don't know to respond to what's in here because I

9  don't know what's in here,  but I understand Your Honor's

10  point.  But that is an additional reason why it might be

11  relevant.

12         JUSTICE NEWBOULD:  Okay.

13         MR. GOTTLIEB:  If you flip over the next couple

14  of pages, I can't respond to anything about those because

15  the entire page is blank.

16         JUSTICE NEWBOULD:  Right.

17         MR. GOTTLIEB:  I assume it doesn't say

18  preliminary legal analysis because it wasn't blacked out on

19  the prior two pages.  No idea what's there.

20         Option 1, Option 2, Option 3, Option 4, they show

21  that the Monitor created a position that there's only one

22  implication for every $2 billion settlement is not right.

23  That's what this document shows and it's their own document.

24  The pros and -- I apologize.

25         JUSTICE NEWBOULD:  So you now know that?

1                MR. GOTTLIEB:  I know that by this.

2                JUSTICE NEWBOULD:  Okay.

3                MR. GOTTLIEB:  I don't know what the pros and

4      cons are.

5                JUSTICE NEWBOULD:  Right.

6                MR. GOTTLIEB:  And then we get to the -- on Page

7      119 of the record, we have --

8                JUSTICE NEWBOULD:  Can I make an assumption here

9      and you can tell me if I'm wrong.

10               MR. GOTTLIEB:  Of course.

11               JUSTICE NEWBOULD:  What's blacked out is legal

12     advice?

13               MR. GOTTLIEB:  I don't know.

14               JUSTICE NEWBOULD:  Have you been told that?

15               MR. GOTTLIEB:  No.

16               JUSTICE NEWBOULD:  Have you been told what the

17     reason for the blackout is?

18               MR. GOTTLIEB:  We've been told anything that's

19     blacked out is covered by either litigation privilege or

20     solicitor and client privilege.

21               JUSTICE NEWBOULD:  All right.

22               MR. GOTTLIEB:  We haven't been told anything

23     beyond that.

24               JUSTICE NEWBOULD:  All right.

25               MR. GOTTLIEB:  But again, I say pros and cons.

1  I'm not sure how pro and con is legal advice, but that's

2  what we were told, but we haven't seen it.  And, Your Honor,

3  now --

4          JUSTICE NEWBOULD:   It could be good lawyers say

5  it's good and bad lawyers say it's bad vis-à-vis.

6          MR. GOTTLIEB:  Yes, it may be that, but we won't

7  know.

8          Then if you turn over one, you've got the

9  conclusions and recommendations of 119 blacked out entirely.

10          JUSTICE NEWBOULD:  Yes.

11          MR. GOTTLIEB:  And then 120 --

12          JUSTICE NEWBOULD:  Yes.

13          MR. GOTTLIEB:  -- this is important.  120 is --

14  you've got the chart.  And what the chart shows is an Option

15  1, 2, and 3.  And then when you go down to the various

16  entities involved, what you see is contrary to the Monitor

17  and Canadian Debtors' position, it is not the only

18  implication of the $2 billion settlement that NNUK --

19          JUSTICE NEWBOULD:  So just tell me why this

20  document says that.

21          MR. GOTTLIEB:  All right.  So if you look down at

22  the top, you've got two -- you've Nortel Networks saying,

23  that's the American Company on the left side.  You got that?

24          JUSTICE NEWBOULD:  Yes.

25          MR. GOTTLIEB:  And it's the $2 billion number all

1  the way across because that's the claim it has in any

2  scenario.

3           JUSTICE NEWBOULD:  Yes.

4           MR. GOTTLIEB:  Then you have Nortel Networks,

5  Ltd., the Canadian Company.  And you've got the position it

6  has with respect to its loss and, therefore, compensating

7  adjustment that it's looking for.  And all you need to see

8  when you look down, and if you go down to the next line,

9  Nortel Networks UK, it's a loss number all the way across,

10 but then when you get to Nortel Networks SA, and Nortel

11 Networks Ireland, they're actually positive numbers which

12 means they have a claim under the compensating adjustment.

13          When you look at the joint response, at a --

14          JUSTICE NEWBOULD:  Where was SA?  Was that a

15 Spanish --

16          MR. GOTTLIEB:  France.

17          JUSTICE NEWBOULD:  France?

18          MR. GOTTLIEB:  France, yeah, that's France.

19          JUSTICE NEWBOULD:  Okay.

20          MR. GOTTLIEB:  And, Your Honor, I apologize, I'll

21 flip back, just so you'll see the starkness of it.  You have

22 the reply report, the reply affidavit in front of you.  I

23 took you to the joint response, just that paragraph before.

24          JUSTICE NEWBOULD:  Yeah.

25          MR. GOTTLIEB:  Provided at paragraph -- Page 40

1   at the top.

2   JUSTICE NEWBOULD:  Right.

3   MR. GOTTLIEB:  Go to the next page, if you don't

4   mind.  It's 101.  And you'll see the Order requested under

5   317, and you can read that for yourself.

6   JUSTICE NEWBOULD:  Yes.

7   MR. GOTTLIEB:  So they say that's the

8   compensating adjustment that they're entitled to, that's

9   615.  They've since lowered it to, I think, 557.

10   Now when you go back to Page 120 of the record,

11   of the Motion record, you'll see that France who they called

12   in the joint response is NNSA --

13   JUSTICE NEWBOULD:  Yeah.

14   MR. GOTTLIEB:  -- under a couple of these

15   scenarios, France actually has a very, very significant

16   claim back into the Canadian Estate.  You don't have the

17   requirement to pay $131 million U.S. to the Canadian Estate,

18   but that the Canadian Estate will have an obligation of over

19   $500 million to NNSA, that's Nortel France.

20   JUSTICE NEWBOULD:  None of these claims which

21   bear on 317, are reflected in this document, which I

22   understand this was a document back in 2010.

23   MR. GOTTLIEB:  Correct.

24   JUSTICE NEWBOULD:  But your -- I understand the

25   point.

1          MR. GOTTLIEB:  Correct, right.  So that's how the

2    document itself is very relevant.  So now, if we go back to

3    the creation of the document which forms the crux of it,

4    which is it was prepared in 2010 --

5          JUSTICE NEWBOULD:  At this point, I have a small

6    question.

7          MR. GOTTLIEB:  Of course.

8          JUSTICE NEWBOULD:  You got three scenarios.

9    There were four scenarios you referred to.

10          MR. GOTTLIEB:  Yes.

11          JUSTICE NEWBOULD:  Your four total options.

12    They've obviously decided, in this particular document, just

13    to deal with three of them.

14          MR. GOTTLIEB:  Yeah, in this particular document.

15          JUSTICE NEWBOULD:  All right.

16          MR. GOTTLIEB:  It's tough to know how that fits

17    in again.

18          JUSTICE NEWBOULD:  Right.  Okay.

19          MR. GOTTLIEB:  So at the time in May 2010, and I

20    will get back to your question, but just so we have it,

21    again, and this is just a matter of fact, this May 2010

22    document, was four months after the U.S. made its $2 billion

23    claim against the Canadian Estate.

24          JUSTICE NEWBOULD:  It was what?

25          MR. GOTTLIEB:  $2 billion claim.

1            JUSTICE NEWBOULD:  No, no --

2            MR. GOTTLIEB:  It was four months after.

3            JUSTICE NEWBOULD:  After this document?

4            MR. GOTTLIEB:  This document was created four

5    months after the U.S. had already made its $2 billion claim

6    against the Canadian Estate.  It was after the parties had

7    hotly negotiated many steps.  And I'll just give you a

8    couple of examples.

9            The IFSA document that you will either -- you

10   either you know a bit about it or will know a lot about, was

11   the document whereby the parties agreed, none of the things

12   they agreed to was that they would sell jointly the assets

13   of the company.  They would take steps to settle them, but

14   they would preserve all their rights.  The money would go

15   into a box, et cetera, et cetera, a whole bunch of

16   agreements.

17           The only point I make is every party, including

18   the U.S. in the case, had their own counsel, and very

19   difficult, hotly negotiated, and when the parties came back

20   to Court, that's what they were told.  That's what the two

21   Courts were told that the parties worked very hard, the

22   negotiations were very tough.  They took a very long time.

23   And the point is as at this time, there was -- this was not

24   business as usual, the sixteen months after filing.

25           JUSTICE NEWBOULD:  IFSA?

1          MR. GOTTLIEB:  Yes.

2          JUSTICE NEWBOULD:  And what's that stand for?

3          MR. GOTTLIEB:  Interim Funding and Settlement

4   Agreement.  And anyone who was back in the Court in May of

5   2010, in that timeframe, would well know that it was not

6   business as usual.  They were very contentious positions

7   taken by Canada against the U.S., U.S. against Canada, and

8   that's just the way it was.  It was not what I said before,

9   a parent/sub relationship at the time.  As I said, and it is

10  trite, the Canadian Estate could exercise zero control over

11  the U.S. Company as of that time.  And it's not the way it

12  worked.

13          The document itself was --

14          JUSTICE NEWBOULD:  Well, in one sense, yes, but

15  if somebody, if the NNI's reported to the Canadian Company

16  as a direct report relationship, are you suggesting that the

17  Canadian Company can't tell that person what he should and

18  shouldn't be doing?

19          MR. GOTTLIEB:  I am going to tell Your Honor that

20  at that time, that is correct.  They couldn't tell them what

21  to do in that context.  Both companies were in filing at

22  this point.  And I'll try to give you a more direct answer,

23  but don't forget also, NNUK, our client, my client, pardon

24  me, the UK Company was also a subsidiary of the Canadian

25  Companies.  So no more than the Monitor or the President

1   of --

2              JUSTICE NEWBOULD:  NNI was also a sub or indirect

3   sub --

4              MR. GOTTLIEB:  Yeah.  So what you have is you've

5   got the Canadian Company at the top, you've got the American

6   NNI, and then you've got a bunch of companies including,

7   NNUK, which we're talking about being the NNUK Company.

8              So if the president of the UK -- of the Canadian

9   Company said to someone in the UK Company, so if someone in

10  Canada said to someone in the UK, I want you to do "X".  I

11  want you to sell this, I want you to do that.  I want you to

12  -- it wouldn't happen.  They have no control while the

13  companies are administration in the UK, while they're in

14  bankruptcy proceedings in the U.S., while they're in

15  insolvency proceedings in Canada.  Once you're in those

16  proceedings, the concept of you are controlling the other

17  company, has completely fallen away.  There's just no

18  factual basis to that.

19             JUSTICE NEWBOULD:  Is there any evidence as to

20  who asked Mr. Orlando to prepare this document?

21             MR. GOTTLIEB:  There is no evidence that I know

22  of in the record of who asked him to prepare the document.

23             JUSTICE NEWBOULD:  All right.

24             MR. GOTTLIEB:  He was asked on deposition if he

25  was told that the document was prepared at the request of

1    counsel and he said I don't recall.  But and I believe

2    you'll hear this from Mr. Gray, and I believe you can tell

3    by the U.S. Factum that was filed by parties on this

4    proceeding, the U.S. takes the position, plain and simple,

5    that Mr. Orlando was their employee, their employee only.

6    That the document in their file coauthored by Mr. Orlando is

7    their document.  And that they had every right to control

8    that document.  And there is no doubt whatsoever, and this

9    is why, from the very perspective Canadian's position on

10   this Motion falls away.  They talk about this being done in

11   confidence, Mr. Orlando could not keep the document

12   confidential from the American Company.  It's his employer.

13           So if the Canadian Company wanted to use an

14   employee of the American Company, their -- I don't debate

15   whether that was appropriate, inappropriate, or whether they

16   should have got permission, didn't need permission, but

17   that's not the point.  If they wanted to use someone who

18   wasn't a part of their company, they can't have privilege.

19           They didn't tell Mr. Orlando that the document

20   was to be privileged.  They didn't tell him it was to be

21   confidential.  The only thing you have in the record is Mr.

22   Kruger saying he believes, not that he was told that it

23   would be confidential, but he believes, and I don't have the

24   terminology right in front of me, but I'll get it.  I

25   believe that the confidential nature of the information

1   would have been apparent to him.  They've got nothing more

2   than a supposition, no statement to him.  The document

3   itself, Your Honor, doesn't say confidential.  It doesn't

4   say privileged.  And it was sitting in NNI, the American

5   Company's file for years.

6            So as we sit here in Court today, we've got a

7   document that is in the files of the Canadian Company.  And

8   we have a document, the same document in the file of the

9   American Company.  So right there, you would have to figure

10  out how is it possible that it's privileged, if two

11  different companies have it?  And the Monitor's attempt to

12  say well, they're not really two different companies, just

13  with great respect, it doesn't fly on these facts.  It's not

14  normal business as usual.  These are parties in this very

15  proceeding before Your Honor --

16           JUSTICE NEWBOULD:  This is a document you say NNL

17  had a copy of, has a copy of this?

18           MR. GOTTLIEB:  I believe there is no question

19  that NNL has a copy of it.

20           JUSTICE NEWBOULD:  Has it been -- and what's

21  happened so far as they producing it is concerned?

22           MR. GOTTLIEB:  NNL did not produce it as part of

23  this litigation.

24           JUSTICE NEWBOULD:  And there's a reason?  Did

25  they give a reason for not producing it?  Or Mr. Ruby can

1 | deal with that then --

2 | MR. GOTTLIEB:  Well, Mr. Rudy can say they don't

3 | have a copy.

4 | MR. RUBY:  Your Honor, I can't tell you standing

5 | here, whether somewhere in the records of the Canadian

6 | Debtors, there is a copy of this document, but we certainly

7 | did not produce it.  I'd have to check if it made its way to

8 | the rather unusual privilege logs which don't list documents

9 | by number.

10 | JUSTICE NEWBOULD:  There's a plea coming in from

11 | the bench there.

12 | (Laughter)

13 | MR. RUBY:  Well, I'm told that it is not on our

14 | logs, so --

15 | JUSTICE NEWBOULD:  What does that mean?

16 | MR. RUBY:  Well, it means that there -- in this

17 | case, we had -- the privilege logs don't look a typical

18 | Ontario Schedule B and you've seen highlights on here.   So

19 | they're not listed in there.  So the Canadian Debtors did

20 | not produce it or list it.

21 | JUSTICE NEWBOULD:  But, MR. GOTTLIEB, I just

22 | asked these questions because Mr. Bromley said that your

23 | client had it.

24 | MR. GOTTLIEB:  It's a very good question, Your

25 | Honor.  And I guess I was wrong in my answer because the

1    document went from the Monitor via email to Mr. Orlando, I

2    assumed that the Monitor, or the Canada Debtors had a copy

3    of it.  But now Mr. Ruby is telling us, with the assistance

4    of the bench, that they actually don't have a record of

5    having a copy of it, which makes matters even more

6    difficult, if I can put it that way.  Because now you have

7    the Canadians taking a position that they hold privilege

8    over a document that they don't even have, but that another

9    party in the litigation has.

10            JUSTICE NEWBOULD:  Well Mr. Ruby said it's not on

11    their list of privileged documents.

12            MR. GOTTLIEB:  Correct.  Which means that they

13    did not list it.  They didn't produce it.  And they didn't

14    list it as a document that they were withholding because of

15    privilege.  And this document clearly dealing with one of

16    the fundamental matters in this case, thereby it's relevant.

17    So it would either have to have been produced or on their

18    privilege log and it's neither.  For the sake of today we

19    have to assume they don't have it.

20            So I was going to say, apparently based on wrong

21    facts, that you've got a situation where Canada has it, the

22    U.S. has it, and that should right there have stopped the

23    discussion of privilege.  I now understand that it's

24    actually not those facts.  That Canada doesn't even have the

25    document over which they're claiming is privilege, but the

1  U.S. does.

2              JUSTICE NEWBOULD:  Well for one thing -- what

3  happened -- what about the Monitor?  Was the Monitor -- did

4  the Monitor produce documents in this litigation?

5              MR. GOTTLIEB:  No, only the Canadian Debtor did,

6  but the Canadian Debtor produced documents that were

7  generated that were relevant to the litigation that were the

8  Monitor's materials as well, I could put it that way.

9              JUSTICE NEWBOULD:  So what you would say is they

10 should have produced this document from the Monitor's file?

11             MR. GOTTLIEB:  Well --

12             JUSTICE NEWBOULD:  It's clearly a Monitor

13 document.

14             MR. GOTTLIEB:  It's a Monitor document that was

15 done with respect to the Canadian Estate though.

16             JUSTICE NEWBOULD:  Right.

17             MR. GOTTLIEB:  So it would be in the Canadian

18 Estate file if they had it as well.  I'm guessing that, Your

19 Honor, I wish I could help, but I can't on this.  I assumed

20 that they had it, but that was a wrong assumption.  I

21 shouldn't have made the assumption, but the point is, it's

22 now a document that is not even in their file as far as we

23 understand and they're claiming privilege over it.  It's in

24 another part of --

25             JUSTICE NEWBOULD:  So you're saying that they

1    produced documents that the Monitor had produced or were the

2    -- was it documents that had come in to their position from

3    the Monitor?  If they're doing that in either case, one

4    would ask why wasn't this produced in some form.

5              MR. GOTTLIEB:  Correct.

6              JUSTICE NEWBOULD:  Right.

7              MR. GOTTLIEB:  Or listed on the privilege log,

8    that's right, either way.  And again, to take a little bit

9    of a step sideways to come back to the point I made, because

10   I'm reminded, in May of 2010, there is this CCAA proceeding.

11   And what we know is we have got the Canadian Debtors are a

12   party.  NNI, the U.S. Debtors, are also party to this

13   litigation.  EMEA Debtors, the Joint Administrators of NNUK

14   are also parties and there are other parties.  You know the

15   way the CCAA works, you become a party to it by filing the

16   necessary document and you show up to the hearings and you

17   get all the documents.

18              But NNI, the U.S. company was a major player in

19   this CCAA proceeding.  So again, any way you slice it, NNI

20   is an adverse party in this litigation, vis-à-vis in the

21   American proceeding before Judge Gross.  It's a U.S.

22   proceeding regarding the American Companies and the Canadian

23   Estate, NNL is a major adverse party in that litigation.  So

24   there's an adversity of interests.  So I just wanted to make

25   sure you're aware of that.

1          JUSTICE NEWBOULD:  Well, there may be a $2

2   million claim I --

3                    (Laughter)

4          JUSTICE NEWBOULD:  You might offset Sanbury's.

5          MR. GOTTLIEB:  Okay, thank you.  So when -- if I

6   now go back to where I was, when you have two parties that

7   have the same document, they have to be able to raise

8   something that gives them the right to say, well I know my

9   adverse party in litigation has it, but there's a reason

10  they have it.  That's justifiable not to waive privilege.

11  Because we say as a matter of law, it's not privilege on

12  inception because Mr. Orlando is there.  He creates it.

13  He's an NNI employee.  He's at the time the employee of an

14  adverse party.  If they want to use him, they can use him,

15  but privilege doesn't attach to it.  It's that simple.

16          They haven't put a single case before the Court

17  because there can't be one where an adverse party to a

18  litigation, where another party assists with the preparation

19  of a document, gets the document, but somehow privilege is

20  retained.  It doesn't -- it just doesn't work that way.  It

21  can't work that way.  There would be no privilege.  I mean,

22  everything would be privileged if that were the case.

23          So they have to come up with a justifiable reason

24  to say not withstanding they don't have a single case that

25  lets them do that to say that privilege was maintained and

1  it really isn't.  There's no justification for it.  They

2  don't claim common interest privilege because they can't

3  meet out the test for common interest privilege.  And the

4  U.S. Debtors stating it again, it's -- you got to have two

5  to tango.  You have to have two parties that agree on a

6  common interest if they're going to exchange.  You can't

7  have a [indiscernible] usually -- sorry, it's usually

8  between counsel these types of arrangements, but there has

9  to be some agreement or understanding.  That's why they

10  can't claim common interest privilege which is the only way

11  to get around this, because there was no common interest

12  discussed, agreed to, contemplated with the U.S.  The U.S.

13  hasn't --

14          JUSTICE NEWBOULD:  All right.  You said they're

15  not making it, so let's move for now.

16          MR. GOTTLIEB:  Right.  Okay.  So, Your Honor, we

17  put in our brief, and I'll stop there with respect to the

18  facts.  We got the redacted document.  I've told you the

19  other documents, the twelve other clawed back, the

20  additional documents we don't know anything else about.

21          JUSTICE NEWBOULD:  Just point where in the record

22  where it is in reference to that, please.

23          MR. GOTTLIEB:  The twelve?

24          JUSTICE NEWBOULD:  Yes.

25          MR. GOTTLIEB:  It's in the Factum of the -- it's

1   in the Monitor's Factum, Page 6, Paragraph 12.

2               JUSTICE NEWBOULD:  What's it mean related family

3   members, do you know?  Mr. Ruby can tell us, maybe.

4               MR. RUBY:  For sure.  So, for example, when

5   there's an email with attachments, the copies mails to

6   parents.  The attachments are the children.  So by family,

7   we mean, group emails.

8               JUSTICE NEWBOULD:  So it says twelve documents

9   were sent to the other versions of the disputed document,

10  other versions of the -- what Mr. -- I'm looking at -- and

11  related family members.  Okay.

12              MR. RUBY:  So the email and its attachments.

13  It's nothing more complicated than that.

14              JUSTICE NEWBOULD:  So it's really just it's the

15  email and it's attachment going to various companies.

16              MR. RUBY:  And wherever it went.

17              JUSTICE NEWBOULD:  And it says other versions of

18  the disputed document.  That suggests there's some other

19  version of it.

20              MR. GOTTLIEB:  They're now identical.  Were there

21  other version?  Both Your Honor and Judge Gross, I'm going

22  to hand up to you, copies of all this so that you can see it

23  all.

24              JUSTICE NEWBOULD:  Okay.

25              MR. GOTTLIEB:  It's not that sophisticated.

1           JUSTICE NEWBOULD:  Okay.  Plus, Your Honor,

2    there's the additional documents that were not produced.

3    Obviously, we don't know anything about those, we just know

4    that there are other documents that weren't produced, so

5    we're going to have to hear something about that as well.

6           JUSTICE NEWBOULD:  Right.

7           MR. GOTTLIEB:  So on the facts, and the only

8    additional fact will be my response to the question that you

9    asked earlier about Mr. Orlando's reporting role.

10          JUSTICE NEWBOULD:  Yeah.

11          MR. GOTTLIEB:  I gave you my answer to that about

12   the way this functions.  And I'll just say this.  The

13   companies were both in post-filing mode, getting ready for

14   sales, doing what they could to carry on.  But when you look

15   at this document itself, there is no way, Mr. Orlando was

16   reporting to the Canadian Estate for the purpose of

17   formulating a position with respect to EMEA.  That's the

18   European Middle East and African Companies, which is what

19   this document is.

20          JUSTICE NEWBOULD:  You say he's not reporting to

21   the Canadian Estate on what?

22          MR. GOTTLIEB:  Formulating a position as to how

23   to deal with the compensating adjustment against the EMEA

24   Estate, NNUK and the others.  Like I say, if it was business

25   as usual, which it wasn't, sure, we could provide

1  information, perform function regarding this sale, that

2  sale, that's --

3           JUSTICE NEWBOULD:  What was he doing?

4           MR. GOTTLIEB:  Pardon me?

5           JUSTICE NEWBOULD:  You say he wasn't doing that.

6  What was he doing?

7           MR. GOTTLIEB:  Well, my point is, we have to look

8  at what he was doing with respect to this document.

9           JUSTICE NEWBOULD:  Right.

10           MR. GOTTLIEB:  And the evidence is he was

11  providing analysis and providing -- I'm going to use the

12  wrong term, number crunching, but doing some model and

13  analysis with respect to this issue.  But my point is, this

14  is not day-to-day carryon business reporting to your

15  superior in the line of work.  This is NNL, the Canadian

16  Company, formulating a position about how to get a claim

17  back against EMEA, the EMEA Estate, and a go to an employee

18  of another party to the litigation to assist.

19           JUSTICE NEWBOULD:  So one question I'm going to

20  ask you, Mr. Ruby, and you don't have to answer it now is

21  you, under your Factum, you say you're acting as lawyers for

22  the Monitor.  And it's being stated that you act as well for

23  the Canadian Estate and I've seen that elsewhere.  So I want

24  to understand why the Monitor is using the same counsel as

25  the Canadian Companies and what the relationship is there.

1  I don't want you to answer it now, but it's something on my

2  mind.

3       MR. GOTTLIEB:  Mr. Mitchell is pointing out for

4  me, that when you look at the document in the presentation

5  of the meeting, Mr. Orlando --

6       JUSTICE NEWBOULD:  You're looking at what date?

7       MR. GOTTLIEB:  Looking at the Affidavit of Mr.

8  Kruger --

9       JUSTICE NEWBOULD:  Okay.  Where's that?

10       MR. GOTTLIEB:  That's in the responding record.

11       JUSTICE NEWBOULD:  Okay.

12       MR. GOTTLIEB:  If you go to Page 2 of that

13  record, at the top right corner.  It says that the

14  PowerPoint presentation in Paragraph 4 was presented by Mr.

15  Kruger through the Monitor employee, Mr. Orlando.  And if

16  you look at the list, there's none of these people that it

17  is alleged -- there are none of these people that is alleged

18  that Mr. Orlando reported to.

19       JUSTICE NEWBOULD:  Yeah, just a minute.  Oh, I

20  see.  I see Goodman's acted for the Monitor and Mr. Tay acts

21  for the Company, but they have a joint position here,

22  obviously, on the Factum.  All right.  I see it.

23       MR. GOTTLIEB:  Well, now it's more completely

24  different.  Goodman's has taken on the role effectively of

25  acting for the Monitor and the Canadian Debtors jointly in

1   this for quite some time now.  I can't put an exact date on

2   it.

3             JUSTICE NEWBOULD:  Okay.

4             MR. GOTTLIEB:  Maybe Mr. Ruby --

5             MR. RUBY:  I know you wanted to let me answer

6   after, but since it's taking up some time, maybe I can

7   clarify this --

8             MR. GOTTLIEB:  Sure.

9             MR. RUBY:  -- quickly for you and Judge Gross.

10  Goodman acts for the Monitor only.  Collins acts for the

11  Canadian Debtors only.  At some time ago, the Monitor became

12  what my friends in the Bankruptcy Bar tell me is called a

13  Super Monitor.

14            JUSTICE NEWBOULD:  I haven't had time -- is that

15  the new employees, therefore, they start taking on the role

16  of the company.

17            MR. RUBY:  And so, effectively, the Monitor has

18  all the powers of the Board of Directors.  In the Canadian

19  Debtors, there was no need for two law firms to essentially

20  run the litigation part of this proceeding.

21            JUSTICE NEWBOULD:  Right.

22            MR. RUBY:  And so --

23            JUSTICE NEWBOULD:  I understand that.

24            MR. GOTTLIEB:  Thank you, Mr. Ruby.  So when you

25  look at Orlando at the time in May 2010, sixteen months

1  after the insolvency, it doesn't follow in that situation,

2  nor would anyone suggest it.  The Canadian company gets to

3  order around employees of the American --

4             JUSTICE NEWBOULD:  All right.  Can I ask you a

5  question?  But this was the meeting.  I understand them all

6  except Norton Rose with then Ogilvy Renault.  Who are they

7  acting for?

8             MR. GOTTLIEB:  At the time, the Canadian Debtors.

9             JUSTICE NEWBOULD:  But I see Mr. Tay was there,

10 yes.  Okay.

11            MR. GOTTLIEB:  Correct.  Now with Gowling's.

12            JUSTICE NEWBOULD:  I see, yes.  [indiscernible].

13 Okay, thanks.

14            MR. GOTTLIEB:  So when you look at this, what we

15 have very different interests.  He's an employee of the

16 Americans.  Again, I say if they use him and want to use him,

17 I guess they can but privilege doesn't attach to it for as we

18 said, and Your Honor made very clear, they are adverse in

19 interest at the time.  Adversity of interest is not on a

20 moment-by-moment basis.  It's not on issue-by-issue basis.

21 It's an everything basis.  They're adverse in the same

22 proceeding and they do not enter into common interest.  They

23 don't argue it so.

24            JUSTICE NEWBOULD:  You don't have to repeat

25 yourself.

1          MR. GOTTLIEB:  Yes, Your Honor.

2          So I'm just going to very briefly, Your Honor,

3   because I know you know it, just touch on the law but, again,

4   unless you direct me to taking it further, by all means, I'm

5   just going to move on.  So our first submission is that

6   privilege doesn't attach because whether it's a client

7   privilege or litigation privilege, confidentiality is key

8   and, again, I say with respect it's trite that if it is not

9   intended to be confidential by the conduct, then it fails on

10  the test of privilege and that's for both [indiscernible]

11  client privilege and litigation privilege.  And I'll just

12  make the point; I apologize, I am repeating myself just so

13  you can have with this part of your notes, Orlando at the

14  time, was duty-bound to give it to his employer, NNI, the

15  U.S. company.  He had no option but to.  It's in their

16  filings and, therefore, there could not be any privilege at

17  the time it was created.

18          JUSTICE NEWBOULD:  It may not make any difference.

19  You say he's duty-bound to give it to NNI.  The likelihood is

20  he just kept it with him, put it in his files at NNI.  That's

21  probably what happened.

22          MR. GOTTLIEB:  Of course.

23          JUSTICE NEWBOULD:  Right.

24          MR. GOTTLIEB:  And he had it prepared.  He was

25  involved in the preparation of it, must have had drafts of

1   it, and he's fulfilling that role as again, I'll say being

2   paid by NNI for his services, not NNL; paid by the U.S.

3   company, not the American --

4           JUSTICE NEWBOULD:  You said that.

5           MR. GOTTLIEB:  I think I might have said that

6   before.  I apologize.  So what we need to do is look at the

7   test.  Confidentiality is a critical part of it.  There is no

8   evidence that he was told et cetera, et cetera, all the

9   things I've already said.  So the key element of privilege

10   does not exist here which is it being confidential, created

11   in confidence, created with the idea that it be kept

12   confidential.  There's no evidence of that at all and, in

13   fact, the contrary is obvious based on the facts.  Litigation

14   privilege for the same reason doesn't apply and you have all

15   the cases.  We don't disagree on that.  Then we get to the

16   issue of waiver.  Your Honor, I should have said, and this is

17   clear, the ability to prove privilege, the onus lies on Mr.

18   Ruby and his clients.  They have the onus to show that

19   privilege exists.  Waiver, on the other hand, is an

20   obligation for us to show.  We have the onus to show waiver

21   and the argument that you've heard before isn't complicated.

22   Once it was given to NNI, the American company, privilege was

23   waived.  They're an adverse party in litigation.

24           JUSTICE NEWBOULD:  You say it's waived by --

25           MR. GOTTLIEB:  The provision that --

1          JUSTICE NEWBOULD:  -- keeping it or giving it to

2  NNI?

3          MR. GOTTLIEB:  Correct.

4          JUSTICE NEWBOULD:  That's the waiver?

5          MR. GOTTLIEB:  Correct.  And again, it really is

6  just the opposite side of the same coin.  I say the privilege

7  couldn't exist because --

8          JUSTICE NEWBOULD:  I understand that.

9          MR. GOTTLIEB:  Right.  Thank you.  Which means

10 that it was waived when we give it over.  The cases that the

11 Monitor attempts to rely on where a third party is brought in

12 as a consultant, brought into the team,  and that's the key

13 that I'll ask Your Honor to stick with.  When you bring a

14 consultant, you hire an expert, et cetera, or you hire

15 someone to do work for you.  The agreement is part of the

16 team and the Court has to do an analysis of whether they are

17 actually part of a team where it was assumed confidentially

18 and privilege would exist between them all, they're actually

19 paid for it, et cetera, et cetera.  So all the cases they're

20 relying on is when you have an outside consultant brought in,

21 obviously has no interest in the litigation, and they're

22 brought in as a consultant by the party, that's the *XCG* case

23 and the *Barrick & Gold Corp*. case.  But that's not what was

24 done.

25          JUSTICE NEWBOULD:  You say right now, the *X* case,

1  whatever it's called *X* --

2              MR. GOTTLIEB:  *XCGADD*.

3              JUSTICE NEWBOULD:  It's not in my Brief.  There

4  are two copies of another case under two tabs but whoever put

5  it together neglected to put in the *X* case so --

6              MR. GOTTLIEB:  We'll get it to Your Honor.

7              UNIDENTIFIED:  Your Honor?

8              MR. GOTTLIEB:  And to Judge Gross.  Sorry about

9  that.

10              JUSTICE NEWBOULD:  That may be just mine.  Maybe

11  Judge Gross's is right but mine is not.  Probably Judge

12  Gross's is -- has the same problem.

13              MR. GOTTLIEB:  We'll hand it up.

14              JUSTICE NEWBOULD:  Well, I'm not going to need it

15  right now.

16              MR. GOTTLIEB:  I didn't think you would.  We'll

17  hand it up.

18              JUSTICE NEWBOULD:  Yes.

19              MR. GOTTLIEB:  So what we don't have is a single

20  case, as I said not surprisingly, where the person they say

21  is on their team is actually an adverse party in the

22  litigation.  The only way you get around that is common

23  interest and we don't have it.  And so if Your Honor's going

24  over to my colleagues here, I will make one point just

25  because it's being (unintelligible) in the Factum.  They talk

1  about that when the EMEA Debtors did their privilege logs,

2  beginning with Mr. Orlando, Mr. Orlando was on some of the

3  documents listed.  I don't know if you caught that but what

4  they say is when EMEA produced it's --

5          JUSTICE NEWBOULD:  What who says?

6          MR. GOTTLIEB:  -- privilege log --

7          JUSTICE NEWBOULD:  What who says?

8          MR. GOTTLIEB:  The Canadian Debtor, the Monitor.

9  They say when the EMEA Debtors produced their privilege log,

10 they contained some documents that Mr. Orlando was a

11 recipient or cc'd on or was on the document somehow and they,

12 therefore, say; I'm paraphrasing, although they probably say

13 it a little more nicely than this, what's good for the goose

14 is good for the gander.  They have documents.  It's dealt

15 with in the Reply Affidavit of Jessica [indiscernible] which

16 is that's just not true that we have those documents.  The

17 parties all acknowledge that they were in a very big rush at

18 the time of production of the privilege log as you --

19         JUSTICE NEWBOULD:  Where do I find that?

20         MR. GOTTLIEB:  The Jessica [indiscernible]

21 Affidavit is in the Reply.  It's in the Reply Motion record.

22 And if you go to her Affidavit which is at Tab 1(a), starting

23 at page I believe it's two of the Affidavit itself, paragraph

24 five.

25         JUSTICE NEWBOULD:  So it's Tab -- yes, it's Tab 1.

1          MR. GOTTLIEB:  Yes, the privilege log heading.

2          JUSTICE NEWBOULD:  Which paragraph?

3          MR. GOTTLIEB:  Paragraph five.  There's -- and

4     privilege logs.  You don't really have to read beyond

5     paragraph five.

6          JUSTICE NEWBOULD:  All right.

7          MR. GOTTLIEB:  Because, again, just -- if you look

8     at the correspondence, we put it in so there'd be no issue of

9     this.  The parties rushed to get their privilege logs in.

10    They all understood there would be mistakes and then that's

11    why this whole far back system was put in place because they

12    knew there would be problems with everything.  All of the

13    Orlando documents -- putting it differently, all of the

14    documents on the privilege log that contain Orlando on them

15    have been produced or were produced one month later back in

16    October of '13; so many, many months ago.

17         JUSTICE NEWBOULD:  All right.

18         MR. GOTTLIEB:  So that merely is a red herring

19    issue here.

20         JUSTICE NEWBOULD:  Okay.

21         MR. GOTTLIEB:  So now I'm just going to read over

22    it for a second, Your Honor.  Okay.  Your Honor and Judge

23    Gross, subject to any questions you may have, those are my

24    submissions.

25         JUSTICE NEWBOULD:  Very well.  Thank you.  I have

1    no questions.  Do you, Judge Gross?

2              THE COURT:  No I don't.

3              MR. GOTTLIEB:  Thank you.

4              JUSTICE NEWBOULD:  Who's next?

5              MR. RUBY:  I suppose I am, Your Honor.

6              JUSTICE NEWBOULD:  All right.

7              MR. RUBY:  Judge Gross, Peter Ruby, for the

8    Monitor.  Justice Newbould, I'm going to try and start,

9    Justice Newbould, with answering some of the questions you

10   asked Mr. Gottlieb, even if they don't go into the flow of my

11   argument so you have them off the top.  First of all, you

12   asked about who and when Mr. Orlando reported to.  So the

13   best evidence that we have on the record is that Mr. Orlando,

14   at the end of his time at Nortel, which is the time we're

15   focused on, reported to either Mr. Look [ph] or Doolittle.

16             JUSTICE NEWBOULD:  Yes, sir.  At the end of his

17   time with NNI?

18             MR. RUBY:  At NNI.

19             JUSTICE NEWBOULD:  Yes.  At the end of his time

20   and you say that covers May of 2010?

21             MR. RUBY:  Yes.

22             JUSTICE NEWBOULD:  Yes.  Reported to?

23             MR. RUBY:  Either Mr. Look or Mr. Doolittle.  That

24   was his evidence.  That was the last person he reported to.

25   It's not controversial that both Mr. Look and Mr. Doolittle

1  were with NNL, the Canadian parent operating company.

2           JUSTICE NEWBOULD:  Yes.  I think that's in your

3  Factum somewhere I saw.

4           MR. RUBY:  It is, and I'll put a little gloss on

5  that in a moment with respect to Mr. Doolittle.

6           JUSTICE NEWBOULD:  All right.  That's at paragraph

7  16.

8           MR. RUBY:  Mr. Look's evidence, which is in the

9  record, was that he had left the company he said either in

10 December 2010 --

11          JUSTICE NEWBOULD:  Left which company?  NNL?

12          MR. RUBY:  NNL.

13          JUSTICE NEWBOULD:  And December '10?

14          MR. RUBY:  2010 or January 2011.  And then, not

15 helpful for our purposes, said or it might have been a year

16 earlier.  Let's put our cards on the table.  That's the best

17 evidence that we have.  The other thing to know about Mr. --

18          JUSTICE NEWBOULD:  He's not a very precise person

19 for an accountant.

20          MR. RUBY:  Well, ACT Specialist.  So -- and it's

21 worth noting --

22          JUSTICE NEWBOULD:  Universal.

23          MR. RUBY:  Yes.  You know, although I'm not here

24 to defend Mr. Look, to be fair to him, almost all of the

25 hundred and something witnesses we deposed in this case had

1   all left Nortel a long time earlier.

2          JUSTICE NEWBOULD:  Again, this is a bad

3   experience.  They just want to get it out of their mind.

4          MR. RUBY:  There was one witness I can tell you I

5   sat in for who, when couldn't answer a few questions, said to

6   the person questioning him, let me just tell you I was there

7   two and a half years and it was the worst two and a half

8   years of my life.  So I tried to block it out.  With respect

9   to Mr. Doolittle, if -- there's a little bit of a gloss on

10  who he was and I don't have to ask you to turn it up but if

11  you want to make a note in the Respondent Motion record, at

12  Tab 2(g) is an excerpt of the transcript from the examination

13  of Mr. Doolittle where he talks about his career, which was

14  lengthy, and lasted well past the filing date for insolvency

15  and he noticed -- he notes that, eventually, he ended up

16  being Senior Vice President-Corporate Affairs and CFO with

17  NNL but also remarked that he was an Officer of NNI.

18         JUSTICE NEWBOULD:  This -- in your Factum you got

19  him as CEO and I wondered about that.  That's a typo?

20         MR. RUBY:  It's a typo.  My apologies.

21         JUSTICE NEWBOULD:  CFO.

22         MR. RUBY:  And he had a wide variety of roles over

23  the years but, at times, I just wanted to let you have, Judge

24  Gross and Justice Newbould, just for clarity is he not only

25  was CFO of NNL but he also held a role as Office of NNI past

1  the date of filing.

2           JUSTICE NEWBOULD:  Just a second.  That's the date

3  of filing?

4           MR. RUBY:  Yes.

5           JUSTICE NEWBOULD:  Which is what date?

6           MR. RUBY:  January 14, 2009.

7           JUSTICE NEWBOULD:  Yes.

8           MR. RUBY:  And then, again, I don't think on the

9  record we have when he left but he was one of the last

10  remaining people standing at Nortel and he -- what he

11  describes in the excerpt we have on the record from his

12  deposition is that post-filing, there were essentially three

13  roles in the company, one of which he occupied which he

14  described as "everything else" other than some operational

15  and supply issues.

16           JUSTICE NEWBOULD:  You said post-filing there were

17  three what?

18           MR. RUBY:  Three -- he called separate groups.  So

19  he said there were people assigned for the [indiscernible]

20  line of business.

21           JUSTICE NEWBOULD:  Well, let me ask you this

22  question.

23           MR. RUBY:  Yes?

24           JUSTICE NEWBOULD:  At the time of this document in

25  May of 2010, do you know whether he was an Officer of NNL or

1  of NNI?

2          MR. RUBY:  There isn't anything on the record and

3  to check that exact date, Your Honor, I'd have to get back to

4  you because it -- I don't think the record goes that far.

5  What we know is Mr. Look, we'd hope that his Answer would be

6  clear but it doesn't quite get us there.

7          JUSTICE NEWBOULD:  I believe you could get that

8  information --

9          MR. RUBY:  We're going to --

10          JUSTICE NEWBOULD:  -- and discuss it with Mr.

11  Gottlieb and then let me have it.

12          MR. RUBY:  We're going to try and do that.  Thank

13  you.

14          JUSTICE NEWBOULD:  All right.  Thank you.

15          MR. RUBY:  We do know that Mr. Doolittle was one

16  of the last employees.  We'll just have to check when he left

17  the disputed company.

18          JUSTICE NEWBOULD:  As an Officer of NNI?

19          MR. RUBY:  Yes, on both, an officer of NNI and

20  NNL.  What he does say in the excerpt that we have is one of

21  his functions is managing all the corporate functions, which

22  he lists as Tax Treasury, Insurance and [indiscernible].  And

23  so tax, I suggest includes the transfer pricing issue that

24  we're dealing with.  I also wanted to take a moment just to

25  clarify the production aspect of this.  Unfortunately, Judge

1  Gross, you've lived through a little bit of this but Justice

2  Newbould hasn't.  There's been a long 14-month history of

3  production in this matter.  We've produced about one and a

4  half million documents.  There are about three million

5  produced all together between all of the core parties.  I

6  think it's fair to say that there have been almost no

7  discovery disputes in part because the parties talked to each

8  other and arrived at very, very elaborate agreements on how

9  we're going to do things, one of which resulted in the

10 Canadian Debtors not producing on their privilege log

11 privileged documents after the filing date.  So in other

12 words, merely for reasons of volume, the privilege logs were

13 cut off for the Canadian Debtors which makes --

14               JUSTICE NEWBOULD:  By agreement?

15               MR. RUBY:  It was done by agreement and

16 eventually, there's a Court Order that's in the materials

17 where the parties agreed and then the Court endorsed that

18 other than privilege issues, whatever had been done by way of

19 documentary production, no one would go back and complain

20 that it was done improperly.

21               JUSTICE NEWBOULD:  All right.

22               MR. RUBY:  But that, hopefully, explains some of

23 this, why the record is the way it is.  Also, Your Honor, you

24 asked a little bit about how -- what the work that was being

25 done in the time period we're talking about.  To be clear,

1  and this also comes from Mr. Doolittle's evidence that is in

2  the record, the company was involved in business sales.  It

3  was still involved in doing some operations.  It was still

4  servicing some remaining customers so it wouldn't be in

5  breach of its obligations.  And we heard from Mr. Doolittle

6  that corporate functions such as tax were still operating.

7  The only other question I thought, Your Honor, I might be

8  able to help you with up front is you had asked some

9  questions about how the transfer pricing worked and what the

10  RPSM was.  I will say very little about it, just to give you

11  background because Your Honor and Judge Gross, whether that

12  plays the subject of great controversy for the trial, but to

13  give you at least the terminology so you come equipped, there

14  was an Agreement signed in December 2004 by NNL, the Canadian

15  operating parent; NNI, the main U.S. Debtor who is the

16  largest U.S. Debtor; NNUK; what we call NN France for short

17  which is NNSA; and NN Ireland, called the Master Research and

18  Development Agreement.  And for the purpose of today, it

19  really had two parts.  One is it dealt with the intellectual

20  property rights of the Nortel entities and the second part it

21  dealt with was transfer pricing.  It's in that document

22  that --

23           JUSTICE NEWBOULD:  Transfer pricing generally or

24  transfer pricing with respect to intellectual property?

25           MR. RUBY:  Transfer pricing generally, but with

1  respect to the five signatories that I just named for you,

2  and it is in that document that you see references to the

3  RPSM, the Residual Profit Split Methodology.  And so when you

4  see references in the materials or when Mr. Gottlieb refers

5  to the compensating adjustment, what we're really dealing

6  with is when this $2 billion adjustment was made, as between

7  the U.S. and Canada, we say there was a contract that

8  dictated in how the three European Nortel entities would

9  share the payment with NNL, the Canadian entity.

10           JUSTICE NEWBOULD:  You say the 2004 Agreement?

11           MR. RUBY:  It's dated 2004 and it's amended

12  several times.

13           JUSTICE NEWBOULD:  Yes.

14           MR. RUBY:  In fact, the RPSM methodology was used

15  all the way back to 2001 without written agreement between

16  the parties.  So that -- so the claim that resulted in the

17  two billion, that's an accepted claim in Canada.  The

18  dispute --

19           JUSTICE NEWBOULD:  I'm sorry; what's the accepted

20  claim?

21           MR. RUBY:  The two -- in Canada, the $2 billion

22  claim of the U.S. related to the settlement between the IRS

23  and Canada Revenue Agency.

24           JUSTICE NEWBOULD:  Is an accepted claim?

25           MR. RUBY:  Is an accepted claim in Canada.  It was

1  part of an overall settlement of certain issues.  The dispute

2  is, as I say, not related to what happens to the U.S.  It has

3  its claim.  The dispute in the trial that you'll hear and

4  Judge Gross will hear in about a month relates to sharing the

5  pain between Canada and the three European Nortel entities

6  that I mentioned.

7          JUSTICE NEWBOULD:  Between Canada and the three

8  European entities?

9          MR. RUBY:  Yes.  So there is a Transfer Pricing

10  Agreement when one party ends up with $2 billion in the hole,

11  if I could put it this way, and the question is well now how

12  do I share it out among everybody else and that is what the

13  subject of the disputed documents that's in front of you is

14  about and it will be a subject at trial.

15          JUSTICE NEWBOULD:  Well, the hole you talk about,

16  is that because there was tax -- there were tax implications?

17          MR. RUBY:  Yes.  Well, it's -- the U.S. recognized

18  $2 billion more income so that has tax implications.  There's

19  a claim into Canada that has tax implications but it also

20  has, as you've heard, whether you call it a set-off or just

21  part of the accounting between the companies, it has

22  implications.  The question is how much, and I suppose my

23  friends from EMEA would claim that there should be no

24  implications at all.  But that's the subject of this one

25  particular dispute.

1           JUSTICE NEWBOULD:  Okay.

2           MR. RUBY:  It doesn't involve the U.S.  It's

3   between NNL and the three EMEA companies.  So, Your Honor,

4   what I propose to do is hand up to you, and my colleagues in

5   Delaware have for Judge Gross in a sealed envelopes, a copy

6   of three things.  One is an unredacted copy of the document

7   in dispute.

8           JUSTICE NEWBOULD:  You're saying it doesn't

9   involve the U.S. companies because the matter has been

10  settled.

11          MR. RUBY:  The matter has been settled.  They'll

12  have their claim.

13          JUSTICE NEWBOULD:  Mr. -- and Mr. Gottlieb says

14  well, now is nice but what's really important is back at the

15  time.

16          MR. RUBY:  Well, the reason why the disputed

17  document was triggered, as he said, is because there was a

18  settlement of the $2 billion claim into Canada; that NNI

19  would get a $2 billion revenue increase for the time --

20          JUSTICE NEWBOULD:  So tell me when was that claim

21  accepted in relation to this document?

22          MR. RUBY:  I'd have to check when it was accepted

23  but the -- it was several months earlier when the settlement

24  with the U.S. and Canadian tax authorities took place.

25          JUSTICE NEWBOULD:  It was all part of the same

1  settlement?

2          MR. RUBY:  All -- it was -- I can't tell you when

3  the Court approved the claim or when the Monitor approved the

4  claim.

5          JUSTICE NEWBOULD:  It was settled by the parties,

6  subject --

7          MR. RUBY:  Yes.  The tax authorities settled

8  between them and then the parties had to settle how they were

9  going to deal with it in two parts.

10          JUSTICE NEWBOULD:  In light of what Mr. Gottlieb's

11  argued, I think I need to know whether the U.S. and Canadian

12  Debtors were at loggerheads at the time of this document,

13  whether they had effectively settled.  I think that's

14  important to know.

15          MR. RUBY:  I will find it out but, certainly, the

16  disputed document itself, the lead-in that he had not

17  redacted, is about -- there is this $2 billion.  What are we

18  going to do about it?  So I can hand it up and we can go

19  through it.

20          JUSTICE NEWBOULD:  Right.

21          MR. RUBY:  It might be the easiest way.

22          JUSTICE NEWBOULD:  So you'll get me the time when

23  the claim was -- U.S. claim was settled?

24          MR. RUBY:  Yes.  So if I may, Your Honor, I have

25  three envelopes for you.

1          JUSTICE NEWBOULD:  You can't look over my

2    shoulder.

3          MR. RUBY:  So, Your Honor, it's just -- the only

4    one we need to look at now is the disputed document.  It's

5    where they're hand-labeled.  Can you tell which is which?

6          JUSTICE NEWBOULD:  Yes.

7          MR. RUBY:  And, Judge Gross, let me know when

8    you've got them.

9          JUDGE GROSS:  I have them now.  Thank you.

10          MR. RUBY:  I know this is not going to be fun for

11    the rest of the people in the room and I'll do it quickly,

12    but unredacted on page two, just to very quickly take the two

13    Courts through it, is the -- it's the third -- sorry, fourth

14    bullet point.  It says the question, therefore, arises as to

15    whether NNL is able to recover any portion of --

16          JUSTICE NEWBOULD:  I'm sorry; this is on page

17    what?

18          MR. RUBY:  Two of the slide data.  So this was not

19    redacted.  It's under the heading Background.

20          JUSTICE NEWBOULD:  Yes.

21          MR. RUBY:  The fourth bullet, it says the

22    question, therefore, arises as to whether NNL was able to

23    recover any portion of the two billion from the other IE's.

24    Those are the five participants in the transfer pricing I

25    talked about early, particularly NNUK and NN Ireland, and

1  we'll see that immediately above it, there's a note about NNL

2  is required to accept the claim.  So although I can't give

3  the exact date, the reference to the BAPA, that's the

4  Bilateral Advanced Pricing Agreement that documented the $2

5  billion.  So now while I don't know off-hand the date,

6  Justice Newbould, I can tell you that it was done before this

7  document was --

8            JUSTICE NEWBOULD:  The settlement.

9            MR. RUBY:  The settlement.

10            JUSTICE NEWBOULD:  Tax settlement.

11            MR. RUBY:  Yes, and you'll see it says as part of

12  the settlement, NNL was required to accept the claim.

13            JUSTICE NEWBOULD:  So where is that?

14            MR. RUBY:  So I'll still get you the exact --

15            JUSTICE NEWBOULD:  Just tell me where I see that

16  as part of the settlement?

17            MR. RUBY:  If you see the -- it starts in terms of

18  the backup.  That's the --

19            JUSTICE NEWBOULD:  Oh, I see.

20            MR. RUBY:  That's the Agreement.

21            JUSTICE NEWBOULD:  All right.  So --

22            MR. RUBY:  You're going to be given a date because

23  this -- it's before this.

24            JUSTICE NEWBOULD:  Yes, it's shown on the redacted

25  copy as well.

1          MR. RUBY:  Yes.

2          JUSTICE NEWBOULD:   There's eight pages there?

3          MR. RUBY:  Yes.  It's still there.

4          JUSTICE NEWBOULD:   Okay.

5          MR. RUBY:  But if you want to know what the slide

6   deck is about, it is that fourth bullet where it says 'the

7   question, therefore arises'. Right.  It's share the pain.

8   That's what this is.  And if you turn to pages three and

9   four, these are the slides that were headed -- or are headed

10  Preliminary Legal Analysis.  Obviously, I won't read out the

11  contents but the Courts obviously can satisfy themselves that

12  what is under that heading is Preliminary Legal Analysis.

13         JUSTICE NEWBOULD:   Mr. Ruby, what if I look at

14  this and determine that a lot of this is not legal?  There's

15  a heading Legal Analysis.  What if I read something and it

16  doesn't look like legal analysis to me?  Just -- I just look

17  at this for the very first time.

18         MR. RUBY:  Yes.

19         JUSTICE NEWBOULD:   I'll have to look at it more

20  carefully but just, for example, I'm not going to say what it

21  is but 1(b) on page three, for example, is that legal advice?

22         MR. RUBY:  Oh, Your Honor, I think it is and the

23  evidence in Mr. Kruger's Affidavit is that this information

24  came from Ogilvy Renault who were at time Counsel for the

25  Canadian Debtors.

1          JUSTICE NEWBOULD:  Which information?

2          MR. RUBY:  That's in the legal slot.

3          JUSTICE NEWBOULD:  I'm sorry; where is that at?

4          MR. RUBY:  I'll -- let me help you.  It's in our

5    record.

6          JUSTICE NEWBOULD:  Yes.

7          MR. RUBY:  This may be a slightly longer lead-in

8    but if you look at page two of the record, Tab 1, this is the

9    Affidavit of Mr. Kruger whose name is also on the document.

10         JUSTICE NEWBOULD:  Yes.

11         MR. RUBY:  And he is with the Monitor.

12         JUSTICE NEWBOULD:  Yes.

13         MR. RUBY:  In paragraph four, he describes the

14   purpose of the meeting.

15         JUSTICE NEWBOULD:  Yes.

16         MR. RUBY:  Page five, he tells you who's there,

17   including --

18         JUSTICE NEWBOULD:  Yes, yes, yes.

19         MR. RUBY:  -- the lawyers.  And in paragraph 10,

20   he says the preliminary legal analysis named in the disputed

21   document is a summary of legal advice contained in the Legal

22   Memorandum dated April 15, 2010, marked draft and privileged,

23   but NNL, the main Canadian operating company in the Nortel

24   Group, had requested from then Ogilvy Renault.

25         JUSTICE NEWBOULD:  Okay.

1          MR. RUBY:  To answer your question though, Your

2  Honor, finding that --

3          JUSTICE NEWBOULD:  If a lawyer gives an opinion,

4  is all the lawyers --

5          MR. RUBY: -- letter --

6          JUSTICE NEWBOULD:  -- legal advice or is it --

7          MR. RUBY:  The general rule would be, of course,

8  no, but the contents matters.

9          JUSTICE NEWBOULD:  Because I'd be surprised that

10  some of the stuff that's in there, that Mr. Tay would have

11  any knowledge whatsoever.  He must have got it from somewhere

12  else.

13          MR. RUBY:  So I think there are two points with

14  this, Your Honor.  We're not just claiming Solicitor/client

15  privilege over legal advice, but also the litigation strategy

16  which is what, not only just on this page, but on another

17  pages, and it's what the U.S. and Canadian Courts seem to

18  call the zone of privacy to allow people to formulate their

19  litigation strategy and to move away from the document,

20  Justice Gross -- I'm sorry, Judge Gross and Justice Newbould,

21  the question you asked Mr. Gottlieb earlier which was why

22  does any of this matter; am I bound by this, the answer is,

23  of course, no.  But it's not just no on this document.  You

24  are going to hear evidence at trial about this.  You have

25  just received a report, an expert report, from a gentleman

1    named Mr. Reichert who provides detailed economic analysis of

2    the transfer pricing model and how it applies to this

3    compensating adjustment.  You're going to hear from legal

4    Counsel on legal points.  The background here doesn't really

5    mean anything, what the lawyers were thinking back in 2010,

6    four years ago.  If you turn --

7              JUSTICE NEWBOULD:  I'm just wondering whether this

8    whole game is worth a candle.

9              MR. RUBY:  So I started, Your Honor, with saying

10   back as 14 months ago --

11             JUSTICE NEWBOULD:  You can trust me that just

12   having rea all this, I'm going to be the draw Judge.  Will

13   this make a world of difference?

14             MR. RUBY:  Zero.  So, Your Honor, that's why we

15   produced the document unredacted.  If you want to know why

16   we're here at all, at least on the Monitor side, it's not

17   about this document.  This is a privilege that should be

18   protected; don't get me wrong.  We're here because of the

19   request --

20             JUSTICE NEWBOULD:  What if it settled without

21   prejudicing any privilege issue in any document?

22             MR. RUBY:  I'd have to take instructions on it but

23   we -- to be clear, we don't think it's in the Notice of

24   Motion and you asked this question of Mr. Gottlieb.  Where

25   does it say that these -- what these related documents are?

1           JUSTICE NEWBOULD:  Well, we'll take a look at

2    those too but --

3           MR. RUBY:  Well, we'll look at them, and those

4    fall in this category too.

5           JUSTICE NEWBOULD:  Yes.

6           MR. RUBY:  My concern isn't with that.  It's with

7    the last couple of paragraphs of my friend's Factum where,

8    and you should turn it up because it's really the reason,

9    candidly, that we're here.

10           JUSTICE NEWBOULD:  Paragraph 37.

11           MR. RUBY:  37.

12           JUSTICE NEWBOULD:  Yes.  So what does it say?

13    This gets produced just like any other document, with respect

14    to any documents?

15           MR. RUBY:  I would take instructions on this but I

16    can tell Your Honor almost every other -- because I don't

17    want to discuss it without prejudiced discussion.

18           JUSTICE NEWBOULD:  I understand that.

19           MR. RUBY:  [Indiscernible].

20           JUSTICE NEWBOULD:  I understand that.

21           MR. RUBY:  But almost every other discovery

22    dispute in this case has not ended up in front of the Court.

23    There's been a handful.  Again, without going into it,

24    there's a reason why we're here and --

25           JUSTICE NEWBOULD:  Well, if that's the reason,

1  then there's a way to solve that.

2          MR. RUBY:  It would take more than one party but I

3  tend to agree with you, Your Honor.

4          MR. GOTTLIEB:  Your Honor, and I rise.  We did

5  have, as you would expect from Mr. Ruby and from Your Honor.

6  We did have good faith discussions [indiscernible]one shot.

7  We asked for some assurance that we would be getting

8  documents related to this document so that it wasn't just a

9  one document issue because we didn't know about it.

10          JUSTICE NEWBOULD:  Well, okay.  But --

11          MR. GOTTLIEB:  My only point is the suggestion

12  that it takes two to tango, I find personally a bit

13  offensive.

14          JUSTICE NEWBOULD:  No, no, no.

15          MR. GOTTLIEB:  We had the discussion.

16          JUSTICE NEWBOULD:  No, no, no.  Don't take

17  anything personally offensive.  Don't -- we're all lawyers

18  and we're all above that fray, I hope.  Okay.  So don't worry

19  about that, Mr. Gottlieb.  I hear that too much in Court.  I

20  don't ascribe -- if people can't settle, I don't ascribe a

21  "fault" or reason to any side because I know what

22  negotiations are all about.  I spent my life doing it.

23          MR. RUBY:  This was only about the 12 documents

24  that I've handed up and we haven't opened yet and the one you

25  have in front of you and it wasn't going any further.  I

1  asked the Courts to adjourn for a few minutes.  Mr. Gottlieb

2  and I could take a step out of the room and see if we can

3  either resolve it or get instructions.  But my understanding

4  from the Factum that was delivered only two days ago --

5          JUSTICE NEWBOULD:  I understand that too.  I do

6  understand that.

7          MR. RUBY:  Yes.

8          JUSTICE NEWBOULD:  The second -- the third of

9  these 12-related documents, should we look at that now?

10          MR. RUBY:  Yes, but if you just let me take you

11  through a little bit more of the disputed documents, I think

12  there are a couple more things you should --

13          JUSTICE NEWBOULD:  Because what I'm thinking is

14  that we're going to break at 1:00 for lunch anyway.  I assume

15  Judge Gross wants lunch.  I know I do.  Then you got time

16  over lunch to talk about this.

17          MR. RUBY:  I'm completely in your hands, Your

18  Honor.

19          JUSTICE NEWBOULD:  Okay.  That's fine.  No, go

20  ahead.

21          MR. RUBY:  Okay.

22          JUSTICE NEWBOULD:  We'll stop at one.  At least --

23  I'll ask Judge Gross what he wants to do, but is stopping at

24  one for lunch, Judge Gross, something that meets with your

25  approval?

1          THE COURT:  That's fine with me.  I do have a 2:00

2    hearing but I can delay that a little bit.

3          JUSTICE NEWBOULD:  All right.  Let's see how we do

4    then.

5          MR. RUBY:  Okay.  Thank you, Your Honor.  I'll try

6    and move through this.

7          JUSTICE NEWBOULD:  All right.

8          MR. RUBY:  Again, the play from the bench, by the

9    way, just so you have the date, is the $2 billion settlement.

10   It's dated December 22, 2009.

11         JUSTICE NEWBOULD:  December?

12         MR. RUBY:  22, 2009.

13         JUSTICE NEWBOULD:  Okay.  It's clearly before this

14   document because it's shown on that first page as we looked

15   at it?

16         MR. RUBY:  Yes.  That's -- you had asked for the

17   date so that's the date.

18         JUSTICE NEWBOULD:  That's fine.  Yes.

19         MR. RUBY:  Your Honor, if I can ask you to turn to

20   page five of the unredacted version and Judge Gross.  I'll do

21   this very quickly.  I'm going to call these pages Mitigation

22   Positioning Analysis.

23         JUSTICE NEWBOULD:  Yes, I understand that.

24         MR. RUBY:  If we turn to pages 7 to 10, you've

25   seen the unredacted -- sorry, the redacted form of these

1   already, and you'll see what the pros and cons are.  Again,

2   this is litigation strategizing.  I should say litigation

3   strategizing four years ago.  And again, on page 11, you've

4   got the conclusion and recommendations and the Courts will

5   obviously judge for themselves when they hear the evidence in

6   the case whether the recommendations that were made got

7   followed in 2013.

8          JUSTICE NEWBOULD:  I'd make the same comment as I

9   made before about the game worth the candle when I read these

10  pages.

11         MR. RUBY:  I don't know what to tell you, Your

12  Honor.

13         JUSTICE NEWBOULD:  Yes.

14         MR. GOTTLIEB:  Well, Your Honor, I mean we can

15  break.  We asked for production of the document.  We didn't

16  get it.  We got the Motion.  We got a redacted version.  We

17  have nothing more than the redacted version.  We only have

18  one.  So I'm happy to chat about it with my friend but the

19  reason it was brought up was because we didn't get any of

20  this.

21         JUSTICE NEWBOULD:  Well --

22         MR. GOTTLIEB:  So -- and we still don't.

23         JUSTICE NEWBOULD:  What I'm suggesting to Mr. Ruby

24  is that there be an agreement to produce the unredacted

25  without prejudice to any -- and to all related once we look

1  at them without prejudice to any other claims with respect to

2  any other documents.  That's what I'm suggesting it be, in

3  which case, you get what you want.

4              MR. GOTTLIEB:  I -- like I say, I think it's a

5  good idea, whether it's the lunch break or shortly, to step

6  out and see if that deal can be made.  But you seem to have

7  the paragraph in the packet.

8              MR. RUBY:  So then the other remaining pages which

9  were not redacted are pages 12 and 13, then interestingly

10  enough, when I heard Mr. Gottlieb's submission, it sounded

11  like those are the submissions he'd end up making at trial

12  anyway, are based on the numbers and he has that information.

13              JUSTICE NEWBOULD:  Okay.

14              MR. RUBY:  And again, the Court will decide how to

15  weigh that.

16              JUSTICE NEWBOULD:  Right.

17              MR. RUBY:  Just to make sure you have a full set,

18  you've also got the 12 documents that are related

19  [indiscernible] to the families.  I don't propose to take you

20  through them.  I think you're going to find they look very

21  familiar to what you just looked at.

22              JUSTICE NEWBOULD:  They're all basically the same

23  but they've got some sort of timelines for doing things but

24  that's neither here or there.

25              MR. RUBY:  Like I said, I don't propose to take

1  you through them.

2           JUSTICE NEWBOULD:  Right.

3           MR. RUBY:  The same with the excerpts of the

4  Orlando transcript that were [indiscernible].  I don't --it's

5  up to the Courts whether they even want to open the envelope

6  and deal with --

7           JUSTICE NEWBOULD:  That's going to be discussed

8  about what I just looked at?

9           MR. RUBY:  Part of it, yes.  Some of it -- a

10  little bit is about -- part of it maybe we can have

11  unredacted but some of it, for example, says turn now to the

12  preliminary legal analysis.  So those go together and I agree

13  with Mr. Gottlieb it's up or down.

14           JUSTICE NEWBOULD:  Well, what if we break now for

15  lunch, Judge Gross, and come back at quarter to two and by

16  that time, these reasonable fellows may have worked out a

17  deal?

18           THE COURT:  Ms. Schweitzer?  Ms. Schweitzer, yes?

19           MS. SCHWEITZER:  Your Honors, I am sympathetic to

20  everyone's desire to take a lunch break.  I just -- there

21  were certain statements describing NNI's claims and the

22  transfer pricing arrangements that didn't come out quite

23  right and I was just wondering if I can take two minutes

24  before lunch just to correct a couple things that were said

25  and described.

1          JUSTICE NEWBOULD:  All right.  Two minutes.

2    They're clearly not very important in the scheme of things.

3          MR. RUBY:  If it helps, I tried to preface my

4    comments with this is controversial --

5          JUSTICE NEWBOULD:  Right.

6          MR. RUBY:  - and said as little as possible just

7    to get --

8          JUSTICE NEWBOULD:  No.  I'm not going to

9    influenced ever by these kinds of statements.  I just --

10   there's some background but if you want to take two minutes,

11   go ahead.

12         MS. SCHWEITZER:  Thank you, Your Honor.  I don't

13   mean to inconvenience the Court.  I just -- in describing

14   these arrangements, they do bleed directly over into certain

15   issues that are in dispute in the allocation proceeding.  So

16   to the extent that this is an education process, we just want

17   to make sure that the record isn't uncorrected and I tried to

18   not jump up.  But I think that the basic description was

19   correct in that there is an Agreement in place that was

20   signed in 2004 by which certain Nortel affiliates made

21   payments to each other and with respect to transfer pricing

22   issues.

23         NNI did periodically, under that arrangement, pay

24   money to the Canadian affiliate, NNL; in fact, billions of

25   dollars and the issue at stake that is referred to in these

1  documents is the IRS coming to NNI and saying with a specific

2  period that there was overpayments.  NNI had to pay the IRS

3  millions of dollars to settle that claim and then after that,

4  NNI also, as part of that same time period, agreed to have a

5  $2 billion claim allowed against Canada, and Canada agreed to

6  that.

7          The specific documents at issue here come to the

8  arrangement of it looks like NNL attempting to pursue a claim

9  against the EMEA Debtors.  That's not at issue against NNI.

10  NNI already has its allowed claim.

11          UNIDENTIFIED:  I hate to interrupt now, but we may

12  have lost Canada.

13          THE COURT:  Oh.  Canada?

14          MS. SCHWEITZER:  Okay.  Thank you.

15          THE COURT:  I think we did.  Sometimes they go on

16  time.

17          MS. SCHWEITZER:  Did we lose them?

18          UNIDENTIFIED:  I think, yes.

19          THE COURT:  And we don't have control over that.

20          MS. SCHWEITZER:  Okay.  Well, we will address it

21  when we come back then.  The record will stand as imperfect.

22          THE COURT:  All right.  All right.  And I

23  certainly understand your desire to make your position clear.

24          MS. SCHWEITZER:  Right.  I think certainly to the

25  extent the record is inaccurate or misdescribed or

1   characterized, that's one concern and also, obviously --

2              THE COURT:  You're back.

3              JUSTICE NEWBOULD:  Ms. Schweitzer, I want you to

4   know that that was not me pushing a button.

5              MS. SCHWEITZER:  I'll know when I'm being

6   personally offended.  You'll warn me first.  So well, with

7   due respect, I understand so I will make it a minute and a

8   half now or I'll try my best in lawyer time to do that.  As I

9   was saying, and I'll step back one or two statements, is that

10  we were -- generally, everyone's describing the transfer

11  pricing system accurately; that there was an Agreement dated

12  2004 under which parties were making payments to each other

13  for transfer pricing arrangements.  NNI, in fact, over time

14  periods, made billions of dollars of payments to NNL, and NNL

15  made payments to or from or had claims to or from other

16  European affiliates for that transfer pricing payment.  In

17  the time period being discussed is that the U.S. Government,

18  the IRS, came to NNI and said you, in fact, made billions of

19  dollars of overpayments, ultimately settled on this $2

20  billion number, to NNL for a discreet period of time.  Your

21  transfer pricing payments formulas are wrong.  Right, and you

22  paid too much.  And so NNI, after paying the IRS and getting

23  an allowed claim against Canada in that end of 2009, January

24  2010 period, was done with IRS and with Canada for that one

25  period of time.  The documents, these narrow set of piles of

1   documents, appear to relate solely to NNL considering

2   bringing a snapback claim, a carryover claim, against

3   Europeans to bring money back into NNL for that period.  That

4   narrow issue doesn't appear to have been, the parties were

5   saying, they don't intend to raise that spring-back claim in

6   the allocation proceedings.

7            The concern, obviously, of us is that the larger

8   transfer pricing system or any flaws of it, the fact that the

9   formulas weren't right; there was reference to this RPSM

10  formula, have been injected into the allocation proceedings.

11  Our employee, Mr. Orlando, an NNI employee, has put in

12  Affidavits into the U.S. -- for the U.S. Debtors in the

13  allocation proceedings.  So when people are talking about the

14  arrangements and who's adverse and none of this relates to

15  the U.S., we just want to be clear that there -- that this

16  very narrow issue of these 12 documents or one document or

17  how ever handful of documents and the subject matter here,

18  people are telling us they're not going to bring into larger

19  allocation disputes, but there are other things covered by

20  it.  In the same way, people are asking about Mr. Orlando's

21  roles, what hats did he wear, who did he report to, again,

22  with respect to this very narrow issue, we did not bring Mr.

23  Orlando in.  People had an opportunity to depose him.  The

24  record has been submitted to Your Honor of what it is.  We

25  are not bringing him in to litigate this issue because

1    everyone is telling us it doesn't affect us with respect to

2    this narrow claim.  However, Mr. Orlando, post-bankruptcy,

3    was a U.S. employee that he testified he did report to

4    Canadian employees who held global roles in the company; that

5    they oversaw global issues with respect to tax or transfer

6    pricing.  Mr. Doolittle also had a U.S. position at the same

7    time, and again, those issues may be left for the allocation

8    trial in terms of how those -- you know, whether there was

9    adversity or non-adversity or who people were making

10   decisions for.  But certainly, as a U.S. employee of a U.S.

11   Debtor in 2010, Mr. Orlando ultimately was employed by NNI

12   and was controlled in that sense in his decision-making and

13   his acting for NNI was controlled by NNI.  NNL employees

14   certainly could not have come and told Mr. Orlando take this

15   action with respect to NNI.  That is a post-bankruptcy

16   arrangement.  Here, this appears to have been a meeting

17   organized by the Monitor or presentations organized by the

18   Monitor.  It's not clear to us if the Monitor has this

19   document, doesn't have this document, and I'm not sure the

20   record is clear whether the Monitor actually searched or

21   tried to produce documents for these periods that are non-

22   privileged.  But with respect to I think those issues, that's

23   all -- our concern is mainly that it's kept narrow; that

24   we're not here to bring Mr. Orlando to testify on this narrow

25   issue to open up these larger issues for the trial.  They'll

1  be saved for the trial and I just wanted to make sure that

2  our silence isn't deemed as acceptance of some of these

3  larger statements regarding roles, responsibilities, or

4  reporting issues.

5          THE COURT:  Thank you, Ms. Schweitzer.

6          JUSTICE NEWBOULD:  All right.  Thank you very

7  much.  So why don't we break now and come back at a quarter

8  to two?

9          THE COURT:  Very well.

10          MR. RUBY:  If I may, for what other dates, I can

11  give it to you now from the bench.

12          JUSTICE NEWBOULD:  What dates?

13          MR. RUBY:  When Mr. Doolittle left.

14          JUSTICE NEWBOULD:  Yes?

15          MR. RUBY:  December 16, 2011.

16          JUSTICE NEWBOULD:  December 2011?

17          MR. RUBY:  Yes.

18          JUSTICE NEWBOULD:  Do you have [indiscernible]?

19          MR. RUBY:  He left NNL then.  We think he left NNI

20  in March 2010.

21          JUSTICE NEWBOULD:  Left NNL when?

22          MR. RUBY:  December 2011.

23          JUSTICE NEWBOULD:  Yes.

24          MR. RUBY:  So Canada, 2011; the U.S. March 2010.

25          JUSTICE NEWBOULD:  Okay.  Thank you.

1          MS. SCHWEITZER:  With respect to the U.S. --

2          JUSTICE NEWBOULD:  So satisfactory?

3          THE COURT:  Ms. Schweitzer, is that accurate?

4          JUSTICE NEWBOULD:  I think -- no, I've heard

5   enough.  It doesn't matter really.  These fellows are going

6   to [indiscernible] over lunch.  So why don't we -- Judge

7   Gross, we'll come back at quarter to two?

8          THE COURT:  Sure.  Anything to promote discussion.

9          MS. SCHWEITZER:  Okay.

10          JUSTICE NEWBOULD:  Right.  Okay.  Thank you very

11   much.

12          MS. SCHWEITZER:  Thank you, Your Honor.

13          JUSTICE NEWBOULD:  Your Honor --

14          THE COURT:  All right, all.

15            (Recess from 12:59 p.m. to 1:49 p.m.)

16          THE CLERK:  All rise.

17          THE COURT:  You may be seated everyone.  We'll

18   wait for Justice Newbould.  I'm anxious to hear how they

19   resolved the matter.

20          THE CLERK:  Court is now resumed.  Please be

21   seated.

22          MR. RUBY:  Good news.  It may not come as a

23   complete shock to you, but we --

24          JUSTICE NEWBOULD:  I know the reason why it's been

25   [indiscernible].

1          MR. RUBY:  So we'll produce essentially the

2    material I handed up to you and Judge Gross today but on the

3    basis that we ask that both Courts make an Order about non-

4    waiver and Mr. Gottlieb and I have agreed on some language.

5    Not everybody else has had a chance to take a hard look at

6    it.

7          JUSTICE NEWBOULD:  Well, why don't you read what

8    you want me to endorse?

9          MR. RUBY:  Okay.  So leaving aside the production

10   part; this is about the non-waiver, so and I can hand up what

11   I've written to you and then I can sort of try and read it

12   off my notes.  It might make it easier.

13         MR. GOTTLIEB:  Why don't you just read the whole

14   thing for Judge Gross?

15         MR. RUBY:  Sure.

16         JUSTICE NEWBOULD:  Judge Gross is going to need it

17   too.

18         MR. RUBY:  Well, I'm going to read it but it might

19   make it easier for me to follow.

20         JUSTICE NEWBOULD:  All right.  Well, do you have

21   an extra copy?

22         MR. RUBY:  Well, I have -- well, at least my crib

23   notes so I'm going to try and get it the same way I wrote it

24   up for you, Your Honor, and I apologize for the handwriting.

25   I blame my Grade 2 teacher.

1        JUSTICE NEWBOULD:  It looks pretty good to me.

2        MR. RUBY:  Okay.  So hopefully I'm getting this

3   right.  It would be the production to all core parties of the

4   disputed documents, the 12 related documents provided to the

5   Courts today, and the clawed back testimony of Mr. Orlando.

6   I may have slightly different --

7        JUSTICE NEWBOULD:  Deposition testimony.

8        MR. RUBY:  Pardon me.  Deposition testimony of Mr.

9   Orlando that are not and shall not be deemed to be a waiver

10  of privilege, if any, and are not and shall not be a waiver

11  of the privilege and the subject matter of these documents

12  and/or testimony I should add.

13       JUSTICE NEWBOULD:  It says and testimony.

14       MR. RUBY:  And testimony for this or any other

15  purpose.

16       JUSTICE NEWBOULD:  All right.  So I take it that

17  both you and Mr. Gottlieb have agreed on that.  And is there

18  anybody else in the room who's got a problem with it?

19       UNIDENTIFIED:  Shall we hear from -- is this an

20  Order be made that we'll hear from that end?

21       THE COURT:  I think people in the U.S., Justice

22  Newbould, wish to be heard on, I'm hoping, their consent.

23  Ms. Schweitzer?

24       MS. SCHWEITZER:  Yes.  Your Honors, thank you.  I

25  -- just because the language got read and we're hearing it

1  live, I think we're fine with the language as long as it's

2  clear that it says it's not a waiver of the privilege, if

3  any.  So it's clear that there's no finding as privilege or

4  non-privilege that everyone's rights are reserved.

5      JUSTICE NEWBOULD:  That's been -- it does say all

6  that.

7      MS. SCHWEITZER:  Okay.

8      JUSTICE NEWBOULD:  All right.  So what do you --

9  how do you want me -- does Judge Gross need to endorse --

10  it's a Motion record in the Canadian proceedings is it not?

11  There's no Motion in the U.S. proceeding is there?

12      MR. RUBY:  There is -- this is a procedural hurdle

13  now on how to do this, but this only works if it can't be

14  used in the sum total of the trial in both jurisdictions.  So

15  I rely on my friends in the U.S. to tell us how to do it

16  there, but Your Honor, I propose to send you a draft Order.

17  Hopefully, we can all agree to the form.  We'll send

18  essentially the same thing to Judge Gross --

19      JUSTICE NEWBOULD:  All right.

20      MR. RUBY:  -- and ask you to sign the Order.

21      JUSTICE NEWBOULD:  All right.

22      MR. RUBY:  If you want to make an endorsement,

23  that's fine too.

24      JUSTICE NEWBOULD:  Well, on the Motion record, why

25  don't I just put -- on the Motion record, Mr. Ruby, why don't

1  I just -- or Mr. Gottlieb, I'll just say Motion settled;

2  Order -- Motion settled; Order to follow.  That's all I'll do

3  and then you can send me the Order you've worked out and then

4  you can send it down to Judge Gross and then I'll sign it,

5  and presumably, there'd be a copy for Judge Gross to sign.

6           MR. RUBY:  I guess if -- Judge Gross, if that's

7  all right with you?

8           MS. SCHWEITZER:  Your Honor?

9           MR. RUBY:  Your Motion.

10           MS. SCHWEITZER:  Your Honors, I think that's again

11  in front of Judge Gross, but we can also work out

12  procedurally among the parties whether to get the Order

13  recognized or to put a corresponding Order.  The only thing I

14  would ask --

15           JUSTICE NEWBOULD:  All right.

16           MS. SCHWEITZER:  -- unless you have a preference,

17  but the only thing I would ask is, regardless, can we submit

18  it under a Notice of Presentment rather than having to do

19  another Motion, Judge Gross?

20           THE COURT:  That's fine.  And I don't know if we

21  could perhaps just cite to the Notice of Request for Joint

22  Hearing as sort of the predicate for the Order.

23           MS. SCHWEITZER:  Okay.

24           THE COURT:  Rather than to have to worry about a

25  Motion or something of that nature.

1          MS. SCHWEITZER:  Okay.

2          JUSTICE NEWBOULD:  That's a good idea.

3          MR. RUBY:  All right.

4          THE COURT:  The Order is fine with me, Counsel.

5          UNIDENTIFIED:  Justice Newbould and Justice Gross,

6    just 30 seconds on behalf of the CCC.  We're in agreement

7    with the U.S.  We have no problem with this as long as it's,

8    as you said, assignment between the parties.  Like the U.S.,

9    we view this is a real core into the case, just deciding the

10   issues related to this -- these documents and that it doesn't

11   have any greater import beyond that.  We're completely okay

12   with that.

13         JUSTICE NEWBOULD:  [indiscernible].

14         UNIDENTIFIED:  Well, if it wasn't settled, then

15   there could be an issue --

16         JUSTICE NEWBOULD:  It is settled.

17         UNIDENTIFIED:  -- of taking Findings -- I

18   understand, Findings of Fact, But I don't understand the

19   process of the U.S.  I understand the process here.

20         JUSTICE NEWBOULD:  Right.

21         UNIDENTIFIED:  That's the issue.

22         JUSTICE NEWBOULD:  Okay.  Well, they're

23   [indiscernible] about the process so Judge Gross ends up

24   signing it too in some way, and then it will all be over.

25         UNIDENTIFIED:  Thank you.

1          JUSTICE NEWBOULD:  So I'm just going to endorse

2     the Motion record, Motion settled, Order -- I'm just going to

3     put Order to follow because you all know what that means.

4     Why don't I give you that, Mr. Lebo [ph]?   It's three

5     envelopes.

6          MR. LEBO:  Thank you, Your Honor.

7          JUSTICE NEWBOULD:  And thank you very much,

8     Counsel, for working this out.  I think it's a good idea.

9     Things usually can get worked out a lot easier worked out and

10    they have today.  Thank you very much.

11         THE COURT:  Thank you, everyone.  We'll stand in

12    recess.  Good day to you all.

13

14         (Whereupon, at 1:58 p.m., the hearing was adjourned)

15

16                    CERTIFICATION

17         I  certify  that  the  foregoing  is  a  correct

18    transcript  from  the  electronic  sound  recording  of  the

19    proceedings in the above-entitled matter.

20

21
22    _____          22 April 2014
23    Tammy Kelly, Transcriber                       Date
24    Diaz Data Services, LLC

| Word | Page:Line |
|---|---|

**-it's**(1) 83:4

**12-related**(1) 79:9
**14-month**(1) 65:2
**557-odd**(1) 19:5
**a.m**(2) 1:15 5:1
**abbott**(2) 1:24 5:20
**abid**(1) 3:12
**ability**(1) 55:17
**able**(4) 46:7 66:8 71:15 71:22
**about**(58) 11:15 14:5 16:22 16:24 20:3
25:23 26:11 28:10 30:21 31:14 37:10
37:10 39:7 40:10 44:3 47:20 49:3 49:5
49:9 49:11 50:16 57:8 58:1 60:12 61:17
62:13 62:19 65:3 65:4 65:24 65:25 66:9
66:10 68:4 68:14 68:15 70:17 70:18 71:25
72:1 73:6 75:24 76:17 78:9 78:19 78:22
78:23 79:16 81:9 81:18 83:8 83:10 87:13
87:20 91:3 91:10 94:24 95:23

**above**(2) 72:1 78:18
**above-entitled**(1) 96:19
**accept**(2) 72:2 72:12
**acceptance**(1) 89:2
**accepted**(8) 25:8 25:19 67:17 67:19 67:24
67:25 69:21 69:22

**accordance**(1) 25:22
**accountant**(1) 61:19
**accounting**(1) 68:21
**accurate**(1) 90:3
**accurately**(1) 86:11
**acknowledge**(2) 30:9 58:17
**acronyms**(1) 14:9
**across**(2) 34:1 34:9
**act**(2) 50:22 61:20
**acted**(1) 51:20
**acting**(4) 50:21 51:25 53:7 88:13
**action**(1) 88:15
**acts**(3) 51:20 52:10 52:10
**actually**(8) 34:11 35:15 43:4 43:24 56:17
56:18 57:21 88:20

**adam**(1) 4:24
**add**(1) 92:12
**additional**(4) 31:10 47:20 49:2 49:8
**address**(1) 85:20
**adjourn**(1) 79:1
**adjourned**(1) 96:14
**adjustment**(17) 19:7 19:10 19:11 21:8
23:7 23:17 24:4 25:25 26:7 26:10 34:7
34:12 35:8 49:23 67:5 67:6 76:3

**administered**(1) 1:6
**administration**(1) 39:13
**administrators**(2) 4:4 45:13
**advanced**(1) 72:4
**advani**(1) 3:26
**adverse**(10) 45:20 45:23 46:9 46:14 46:17
53:18 53:21 55:23 57:21 87:14

**adversity**(5) 15:17 17:8 45:24 53:19 88:9
**advice**(8) 28:6 28:11 32:12 33:1 73:21
74:21 75:6 75:15

**advised**(2) 10:24 26:21
**affairs**(1) 62:16
**affect**(2) 9:8 88:1
**affidavit**(8) 34:22 51:7 58:15 58:21 58:22
58:23 73:23 74:9

**affidavits**(1) 87:12
**affiliate**(1) 84:24
**affiliates**(2) 84:20 86:16
**african**(1) 49:18
**after**(14) 10:24 19:24 27:1 36:22 37:2
37:3 37:5 37:6 37:24 52:6 53:1 65:11 85:3
86:22

**again**(26) 12:16 15:13 17:6 25:23 32:25
36:17 36:21 45:8 45:19 47:4 53:16 54:3
54:8 55:1 56:5 59:7 62:2 63:8 77:23 80:8
81:1 81:3 82:14 87:21 88:7 94:10

**against**(29) 6:4 16:18 17:7 17:17 18:2
18:21 20:25 21:4 21:7 21:10 21:12 21:13
21:21 22:20 23:2 23:16 23:23 26:8 36:23
37:6 38:7 38:7 49:23 50:17 85:5 85:9
85:9 86:23 87:2

**agency**(1) 67:23
**ago**(6) 52:11 59:16 76:6 76:10 79:4 81:3
**agree**(6) 21:1 29:12 47:5 78:3 83:12 93:17
**agreed**(8) 37:11 37:12 47:12 65:17 85:4
85:5 91:4 92:17

**agreeing**(1) 20:9
**agreement**(16) 38:4 47:9 56:15 65:14
65:15 66:14 66:18 67:10 67:15 68:10 72:4
72:20 81:24 84:19 86:11 95:6

**agreements**(5) 16:22 16:23 17:1 37:16 65:8
**ahead**(2) 79:20 84:11
**akin**(2) 2:31 3:11
**alberto**(1) 2:19
**all**(105) 5:2 5:7 5:10 5:16 6:11 7:25 9:9
9:19 10:8 10:16 10:17 11:4 11:25 12:16
14:4 14:14 17:9 17:15 17:24 18:11 22:1
22:18 23:21 24:14 24:21 28:15 28:20
29:14 32:21 32:24 33:21 33:25 34:7 34:9
36:15 37:14 39:23 45:17 47:14 48:22
48:23 51:22 52:18 53:4 53:5 54:4 55:8
55:12 55:16 56:18 56:19 58:17 59:6 59:10
59:12 59:13 59:17 60:6 60:11 61:6 61:24
62:1 64:14 64:21 65:5 65:5 65:21 67:15
68:24 69:25 70:2 72:21 75:4 76:12 76:16
78:17 78:18 78:22 80:3 80:7 81:25 82:22
84:1 85:22 85:22 88:23 89:6 90:14 90:14
90:16 91:20 92:3 92:16 93:5 93:8 93:17
93:19 93:21 94:2 94:7 94:15 95:3 95:24
96:3 96:12

**alleged**(3) 11:7 51:17 51:17
**allen**(1) 2:46
**allocation**(9) 6:24 8:1 19:4 84:15 87:6
87:10 87:13 87:19 88:7

**allow**(3) 6:20 30:20 75:18
**allowed**(5) 22:6 30:21 85:5 85:10 86:23
**almost**(4) 61:24 65:6 77:16 77:21
**along**(1) 11:21
**already**(7) 13:24 16:17 16:21 37:5 55:9
81:1 85:10

**also**(19) 7:16 38:23 38:24 39:2 45:12
45:14 62:17 62:25 64:24 65:23 66:1 68:19
74:9 75:15 82:18 85:4 86:1 88:6 94:11

**although**(3) 58:12 61:23 72:2
**amended**(1) 67:11
**america**(2) 3:29 20:10
**american**(13) 15:14 17:4 33:23 39:5 40:12
40:14 41:4 41:9 45:21 45:22 53:3 55:3
55:22

**american's**(3) 82:5 9:2 17:12
**americans**(1) 53:16
**among**(2) 68:12 94:12
**amount**(3) 20:25 21:1 21:2
**analysis**(18) 28:4 28:5 29:1 29:1 29:8
29:14 31:18 50:11 50:13 56:16 73:10
73:12 73:15 73:16 74:20 76:1 80:22 83:12

**and**(301) 4:5 5:7 5:9 6:1 6:8 6:10 6:12
6:13 6:14 6:17 6:24 7:1 7:4 7:8 7:9 7:19
7:20 7:21 7:22 8:1 8:2 8:5 8:7 8:20 8:25
9:6 9:10 9:12 9:16 9:20 9:21 9:22 9:23
9:24 10:4 10:21 10:25 11:6 11:19 11:21
11:21 11:22 12:2 12:3 12:7 12:7 12:12
12:15 12:16 12:20 12:21 12:22 12:25 13:2
13:5 13:7 13:8 13:10 13:15 13:18 14:1
14:8 14:9 14:20 14:25 15:6 15:13 15:16
16:3 16:11 16:22 17:6 17:9 17:10 17:12
17:13 17:13 17:17 17:19 18:7 18:9 18:13
18:19 18:23 18:24 19:6 19:7 19:10 19:14
19:16 19:16 19:23 19:23 19:24 20:6 20:6
20:9 20:21 20:22 20:22 20:25 21:6 21:6
21:7 21:8 21:10 21:13 21:15 21:15 22:10
22:15 23:5 23:6 23:10 23:12 23:18 24:3
24:12 24:13 24:19 24:24 25:2 25:5 25:8
25:19 25:20 25:23 25:24 25:25 26:1 26:2
26:5 26:5 26:8 26:13 26:20 27:2 27:4
27:10 27:14 27:16 27:21 27:23 27:24 28:1
28:3 28:6 28:12 28:16 29:17 30:3 30:8
30:8 30:12 30:24 31:23 31:24 32:3 32:6
32:9 32:20 32:25 33:1 33:2 33:5 33:9
33:11 33:14 33:15 33:15 33:17 33:25 34:5
34:6 34:7 34:8 34:10 34:20 34:9 34:35
34:36 36:21 37:7 37:18 37:19 37:23 38:2
38:3 38:4 38:7 38:9 38:11 38:17 38:22
39:6 40:1 40:1 40:2 40:4 40:7 40:8 40:8
40:23 41:4 41:7 41:11 41:20 41:24 42:18
42:25 43:13 43:15 43:18 43:22 44:23 45:8
45:11 45:14 45:16 45:16 45:22 46:25 47:3
47:17 48:10 48:12 48:15 48:16 48:17
48:21 49:7 49:12 49:18 49:24 50:10 50:11
50:12 50:17 50:20 50:22 50:23 50:25
51:15 51:20 51:25 52:9 52:17 52:22 53:16
53:18 53:22 54:8 54:10 54:11 54:11 54:16
54:24 55:1 55:12 55:14 55:16 55:18 55:21
56:5 56:12 56:16 56:18 56:21 56:23 57:8
57:23 57:23 58:11 58:22 59:3 59:10 59:22
60:8 60:12 60:20 60:25 61:4 61:13 61:14
61:20 61:25 62:7 62:7 62:7 62:10 62:14
62:12 62:16 62:19 62:22 62:24 63:8 63:10
63:15 64:2 64:10

**and**(144) 64:11 64:12 64:19 64:22 64:22
65:3 65:8 65:15 65:17 65:19 66:1 66:5
66:9 66:11 66:17 66:17 66:18 66:20 67:2
67:3 67:7 67:11 67:23 68:3 68:5 68:7
68:11 68:12 68:18 68:22 69:3 69:4 69:13
69:24 70:8 70:11 70:18 71:7 71:11 71:25
71:25 72:11 73:8 73:8 73:14 73:15 73:22
74:11 74:19 74:22 75:17 75:17 75:19
75:20 76:2 76:24 77:3 77:8 77:24 78:4
78:5 78:18 78:24 78:24 78:25 79:2 79:2
80:6 80:20 81:1 81:1 81:3 81:4 81:4
81:22 81:25 82:6 82:9 82:12 82:14 83:6
83:12 83:15 83:3 83:21 83:23 83:25 84:6
84:17 84:21 84:25 85:1 85:3 85:5 85:19
85:22 86:1 86:7 86:9 86:14 86:18 86:21
86:22 86:22 86:24 87:14 87:14 87:17 88:7
88:12 88:12 88:14 88:19 89:1 89:7 91:2
91:4 91:4 91:10 91:11 91:11 91:23 91:24
92:5 92:9 92:10 92:10 92:11 92:13 92:14
92:17 92:17 92:25 93:20 94:3 94:3 94:4
94:5 94:20 95:5 95:10 95:24 96:7 96:9

**and/or**(1) 92:12
**angela**(1) 3:41
**annie**(1) 1:25
**another**(7) 43:8 44:24 46:18 50:18 57:4
75:16 94:19

**answer**(17) 16:3 25:7 28:17 28:19 29:10
30:4 31:7 38:22 42:25 49:11 50:20 51:1
52:5 62:5 64:5 75:1 75:22

**answering**(1) 60:9
**anxious**(1) 90:18

**any**(32) 7:10 9:16 11:19 12:4 12:14 15:14
27:23 34:1 39:19 45:19 54:16 54:18 59:23
71:15 71:23 75:11 75:22 76:21 76:21
77:13 77:14 78:21 78:25 81:19 81:25 82:1
82:2 87:8 92:10 92:14 93:3 95:11

**anybody**(1) 92:18
**anyone**(3) 7:10 38:4 53:2
**anything**(10) 15:15 31:14 32:18 32:22
47:20 49:3 64:2 76:5 78:17 90:8

**anyway**(2) 79:14 82:12
**apologies**(1) 62:20
**apologize**(9) 9:10 14:10 26:14 27:11 31:24
34:20 54:12 55:6 91:24

**apparent**(1) 41:1
**apparently**(3) 6:10 11:8 43:20
**appear**(2) 87:1 87:4
**appearances**(3) 2:44 3:1 4:1
**appears**(2) 7:8 88:16
**applies**(1) 76:2
**apply**(1) 55:14
**appreciate**(2) 10:7 13:2
**appropriate**(3) 7:15 7:23 40:15
**approval**(1) 79:25
**approved**(2) 70:3 70:3
**approximately**(1) 21:2
**april**(4) 1:14 5:1 74:22 96:22
**are**(59) 6:12 6:16 7:5 7:9 8:1 8:7 8:17
11:1 14:9 19:22 21:9 23:14 26:16 30:17
32:4 35:21 38:16 39:13 39:16 41:14 45:11
45:12 45:14 45:14 48:6 49:4 51:17 53:6
53:18 56:16 57:4 59:23 65:4 70:17 71:24
73:9 73:9 75:13 75:24 76:25 78:22 79:12
81:1 82:9 82:11 82:12 82:18 84:15 86:21
87:13 87:18 87:19 87:20 87:25 88:21 90:5
92:9 92:10 93:4

**argue**(1) 53:23
**argued**(1) 70:11
**argument**(7) 17:16 17:17 17:21 17:22
17:25 55:21 60:11

**arguments**(2) 6:8 6:13
**arises**(2) 71:14 71:22
**arises'**(1) 73:7
**around**(5) 14:9 14:12 47:11 53:3 57:22
**arrangement**(4) 22:3 84:23 85:8 88:16
**arrangements**(6) 8:7 47:8 83:22 84:14
86:13 87:14

**arrived**(3) 19:23 20:1 65:8
**arsht**(2) 1:23 1:26
**ascribe**(2) 78:20 78:20
**aside**(2) 31:4 91:9
**ask**(16) 8:14 11:9 14:5 28:8 45:4 50:20
53:4 56:13 62:10 63:21 79:23 80:19 91:3
93:20 94:14 94:17

**asked**(19) 6:16 9:7 9:23 26:22 39:20
39:22 39:24 42:22 49:9 60:10 60:12 65:24
66:8 75:21 76:24 78:7 79:1 80:16 81:15

**asking**(5) 7:11 7:18 15:25 25:23 87:20
**aspect**(1) 64:25
**assets**(2) 16:24 37:12
**assigned**(1) 63:19
**assignment**(1) 95:8
**assist**(1) 50:18
**assistance**(1) 43:3
**assists**(1) 46:18
**assume**(4) 28:11 31:17 43:19 79:14
**assumed**(3) 43:2 44:19 56:17
**assumption**(3) 32:8 44:20 44:21
**assurance**(1) 78:7
**attach**(3) 46:15 53:17 54:6
**attachment**(1) 48:15
**attachments**(3) 48:5 48:6 48:12

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **attack**(1) 30:15 | | **beyond**(3) 32:23 59:4 95:11 | | **but**(134) 6:23 7:5 7:17 8:4 8:23 9:11 11:1 11:25 12:8 13:11 13:19 14:21 15:11 15:22 16:7 16:13 17:15 18:9 18:12 19:21 19:25 20:15 22:22 23:21 25:20 28:24 29:24 29:6 29:10 29:12 30:6 30:14 31:7 31:9 31:10 32:25 33:1 33:2 33:6 34:10 35:18 35:24 36:20 37:13 38:14 38:23 40:1 40:16 40:23 40:24 42:6 42:21 43:3 43:8 43:25 44:6 44:19 44:20 44:21 45:18 46:9 46:15 46:19 47:8 49:14 50:12 50:13 51:1 51:21 52:6 53:5 53:9 53:17 54:3 54:15 56:23 57:4 57:11 58:3 62:10 62:17 62:23 62:25 63:9 64:6 65:1 65:22 66:12 66:25 68:19 68:24 69:14 69:23 70:15 71:12 73:5 73:11 73:20 73:21 74:8 74:23 75:8 75:15 75:16 75:23 76:22 77:2 77:15 77:21 78:2 78:10 79:3 79:10 79:23 80:2 81:18 82:6 82:23 82:23 83:11 84:10 84:18 85:11 87:19 88:10 88:22 90:23 91:2 91:18 93:13 93:16 94:11 94:17 95:18 | | **case**(23) 1:5 5:13 9:24 17:10 30:15 37:18 42:17 43:16 45:3 46:16 46:22 46:24 56:22 56:23 56:25 57:4 57:16 57:22 60:21 61:25 77:22 81:6 82:3 95:9 |
| **attempt**(1) 41:11 | | **bid**(1) 21:25 | | | | |
| **attempting**(1) 85:8 | | **big**(2) 17:23 58:17 | | | | **cases**(4) 28:15 55:15 56:10 56:19 |
| **attempts**(1) 56:11 | | **bilateral**(1) 72:4 | | | | **cassels**(2) 4:27 4:27 |
| **aurelius**(2) 3:36 3:36 | | **billion**(38) 16:17 17:8 19:15 19:23 20:10 20:12 21:1 21:2 21:5 21:8 21:11 21:20 22:3 22:11 22:19 22:23 23:2 23:22 28:2 31:22 33:18 33:25 36:22 36:25 37:5 37:6 67:17 67:21 68:10 68:18 69:18 69:19 70:17 71:23 72:5 80:9 85:5 86:20 | | | | **categorized**(1) 19:9 |
| **authorities**(5) 20:22 23:5 26:1 69:24 70:7 | | | | | | **category**(1) 77:4 |
| **authority**(4) 23:12 23:13 28:1 28:1 | | | | | | **caught**(1) 58:3 |
| **ave**(1) 2:20 | | | | | | **ccaa**(10) 15:6 15:15 17:4 20:24 21:3 21:4 30:14 45:10 45:15 45:19 |
| **aware**(2) 7:1 45:25 | | | | | | |
| **away**(3) 39:17 40:10 75:19 | | | | | | **ccc**(1) 95:6 |
| **back**(54) 6:14 10:23 10:23 11:5 11:7 11:24 12:5 13:8 13:11 13:17 13:18 18:12 18:18 18:19 19:12 20:6 20:10 20:15 21:7 22:3 22:4 22:7 22:9 24:12 26:8 26:22 34:21 35:10 35:16 35:22 36:2 36:20 37:19 38:4 45:9 46:6 47:19 50:17 59:11 59:15 64:3 65:19 67:15 69:14 76:5 76:10 83:15 85:21 86:2 86:9 87:3 89:7 90:7 92:5 | | **billions**(3) 84:24 86:14 86:18 | | | | **cc'd**(1) 58:11 |
| | | **bind**(1) 28:21 | | | | **ceo**(1) 62:19 |
| | | **binding**(1) 30:5 | | | | **certain**(4) 68:1 83:21 84:14 84:20 |
| | | **bit**(12) 23:1 30:9 31:4 37:10 45:8 62:9 65:1 65:24 78:12 79:11 80:2 83:10 | | | | **certainly**(7) 16:5 42:6 70:15 85:23 85:24 88:10 88:14 |
| | | | | | | |
| | | **blacked**(4) 31:18 32:11 32:19 33:9 | | **button**(1) 86:4 | | **certification**(1) 96:16 |
| | | **blackout**(1) 32:17 | | **call**(7) 14:20 23:7 23:23 66:16 68:20 75:18 80:21 | | **certify**(1) 96:17 |
| **background**(4) 66:11 71:19 76:4 84:10 | | **blackwell**(2) 4:27 4:28 | | | | **cetera**(8) 30:22 37:15 37:15 55:8 55:8 56:14 56:16 56:19 |
| **backup**(1) 72:18 | | **blame**(1) 91:25 | | | | |
| **bad**(3) 33:5 33:5 62:2 | | **blank**(1) 31:15 | | | | |
| **balance**(1) 18:24 | | **bleed**(1) 84:14 | | **called**(5) 35:11 52:12 57:1 63:18 66:17 | | **cfo**(3) 62:16 62:21 62:25 |
| **bank**(3) 3:29 4:16 4:16 | | **block**(1) 62:8 | | **came**(6) 6:17 19:23 23:6 28:2 37:19 73:24 86:18 | | **chance**(2) 29:13 91:5 |
| **bankruptcy**(6) 1:1 1:19 15:5 17:5 39:14 52:12 | | **bluntly**(1) 20:3 | | | | **chapter**(1) 1:8 |
| | | **board**(2) 22:16 52:18 | | | | **characterized**(1) 86:1 |
| | | **bondholder**(1) 3:19 | | | | **characterizing**(1) 8:11 |
| **bapa**(1) 72:3 | | **books**(3) 6:17 7:8 18:24 | | **can**(48) 16:11 18:3 19:14 19:19 20:5 24:15 27:3 29:11 29:11 30:7 32:8 32:9 35:5 40:2 41:25 42:2 43:6 46:14 48:3 48:22 52:6 53:4 53:17 54:13 62:4 70:18 70:18 71:5 72:6 73:11 76:11 77:16 79:2 80:2 80:19 81:14 82:6 83:10 83:23 89:10 91:10 91:11 93:17 94:3 94:4 94:11 94:17 96:9 | | **chart**(2) 33:14 33:14 |
| **bar**(1) 52:12 | | **both**(14) 15:3 15:8 15:8 15:10 23:13 38:21 48:21 49:13 54:10 60:25 64:19 91:3 92:17 93:14 | | | | **chat**(1) 81:18 |
| **barrick**(1) 56:23 | | | | | | **check**(4) 42:7 64:3 64:16 69:22 |
| **based**(5) 19:6 28:6 43:20 55:13 82:12 | | | | | | **children**(1) 48:6 |
| **basic**(1) 84:18 | | **botter**(1) 2:32 | | | | **christopher**(1) 2:25 |
| **basically**(1) 82:22 | | **bottom**(1) 11:20 | | | | **chung**(1) 3:29 |
| **basis**(9) 12:23 21:12 23:10 31:6 39:18 53:20 53:20 53:21 91:3 | | **bound**(2) 29:5 75:22 | | | | **cite**(1) 94:21 |
| | | **box**(1) 37:15 | | | | **claim**(62) 16:18 17:7 19:5 20:23 20:25 20:25 21:1 21:2 21:4 21:7 21:10 21:11 21:12 22:6 22:20 23:2 23:15 23:19 23:20 23:22 25:25 26:7 30:16 31:1 31:6 34:1 34:12 35:16 36:23 36:25 37:5 46:2 47:2 47:10 50:16 67:16 67:17 67:20 67:22 67:24 67:25 68:3 68:19 68:23 69:12 69:18 69:20 70:3 70:4 70:23 70:23 72:5 72:12 85:3 85:5 85:8 85:10 86:23 87:2 87:5 88:2 |
| **battery**(1) 2:14 | | **breach**(1) 66:5 | | | | |
| **bayard**(1) 2:18 | | **break**(6) 79:14 81:15 82:5 83:14 83:20 | | **can't**(14) 16:2 28:17 28:18 29:10 31:14 38:17 40:18 42:4 44:19 46:17 46:21 47:2 47:10 52:1 | | |
| **bear**(1) 35:21 | | **brent**(1) 1:33 | | | | |
| **became**(2) 52:11 | | **brian**(1) 3:33 | | | | |
| **because**(60) 6:7 6:17 6:25 7:14 9:8 12:17 12:22 13:8 13:18 13:20 13:22 18:13 18:15 18:16 19:9 19:16 20:24 22:22 23:13 27:15 30:25 31:8 31:14 31:18 34:1 42:22 42:25 43:6 43:14 45:9 46:11 46:12 46:17 47:2 47:11 54:3 54:6 56:7 57:25 59:7 59:11 64:4 65:7 66:11 68:16 69:9 69:17 72:22 75:9 76:18 77:8 77:16 78:9 78:21 79:13 80:14 81:19 87:25 92:25 96:3 | | **brickley**(2) 3:21 3:22 | | **canada**(37) 4:24 6:21 6:23 14:1 15:6 16:6 18:3 19:13 20:7 20:22 21:9 21:12 21:13 23:12 38:7 38:7 39:10 39:15 43:2 43:21 43:24 67:7 67:17 67:21 67:23 67:25 68:5 68:7 68:19 69:18 85:5 85:5 85:12 85:13 86:23 86:24 89:24 | | **claimed**(1) 21:20 |
| | | **brief**(2) 47:17 57:3 | | | | **claiming**(3) 43:25 44:23 75:14 |
| | | **briefly**(2) 9:21 54:2 | | | | **claims**(18) 5:13 6:3 6:3 6:24 9:14 18:21 30:15 30:17 30:18 30:19 30:19 30:20 30:24 31:1 35:20 82:1 83:21 86:15 |
| | | **bring**(8) 20:6 20:10 20:23 56:13 87:3 87:18 87:22 88:24 | | | | |
| | | | | | | **clarify**(3) 8:23 52:7 64:25 |
| | | **bringing**(2) 87:2 87:25 | | **canadian**(90) 2:39 6:1 6:4 7:18 8:2 8:2 9:1 10:23 11:5 11:8 11:21 11:21 12:18 13:15 13:20 13:21 14:20 14:21 15:13 15:22 16:18 17:3 17:3 17:4 17:19 18:21 18:25 20:1 20:1 20:23 20:25 21:5 21:6 21:21 22:6 22:21 23:2 23:16 26:5 27:12 27:16 28:1 28:5 33:17 34:5 35:16 35:17 35:18 36:23 37:6 38:10 38:13 38:17 38:24 39:5 39:8 40:13 41:7 42:5 42:19 44:5 44:6 44:15 44:17 45:12 49:16 49:21 50:15 50:23 50:25 51:25 52:11 52:18 53:2 53:8 58:8 61:1 65:10 65:13 66:14 67:9 69:24 70:11 73:25 74:23 75:17 84:24 88:4 93:10 | | **clawed**(5) 6:14 10:23 11:5 11:7 11:23 12:5 26:22 47:19 92:5 |
| | | **broad**(1) 12:2 | | | | |
| | | **brock**(2) 4:27 4:27 | | | | **clear**(11) 53:18 55:17 64:6 65:25 76:23 85:23 87:15 88:18 88:20 92:3 93:2 93:3 |
| **become**(1) 45:15 | | **bromley**(1) 42:22 | | | | |
| **been**(28) 11:7 17:10 23:4 23:7 27:12 27:25 28:16 32:14 32:16 32:18 32:22 41:1 41:20 43:17 59:15 61:15 65:2 65:6 65:18 69:9 69:11 77:23 87:4 87:10 87:24 88:16 90:24 93:5 | | **brought**(10) 5:23 10:25 28:16 30:16 30:17 56:11 56:12 56:20 56:22 81:19 | | | | **clearly**(4) 43:15 44:12 80:13 84:2 |
| | | | | | | **cleary**(1) 1:31 |
| | | **bryant**(1) 2:34 | | | | **clerk**(4) 5:2 5:5 90:16 90:20 |
| | | **buchanan**(1) 2:38 | | | | **client**(6) 32:20 38:23 38:23 42:23 54:6 54:11 |
| | | **bullet**(4) 27:22 71:14 71:21 73:6 | | | | |
| | | **bunch**(2) 37:15 39:6 | | **canadian's**(9) 8:24 9:6 17:12 19:3 19:17 21:1 24:24 25:24 40:9 | | **clients**(1) 55:18 |
| **before**(24) 1:18 6:1 7:13 8:2 9:14 14:2 18:9 18:15 29:21 30:16 30:17 30:23 34:23 38:8 41:15 45:21 46:16 55:6 55:21 72:6 72:23 80:13 81:9 83:24 | | **business**(7) 37:24 38:6 41:14 49:24 50:14 63:20 66:2 | | | | **co-counsel**(1) 6:21 |
| | | | | **canadians**(2) 12:23 43:7 | | **coauthored**(1) 40:6 |
| | | **businesses**(2) 16:21 16:21 | | **candidly**(1) 77:9 | | **code**(1) 15:5 |
| | | | | **candle**(2) 76:8 81:9 | | **coin**(1) 56:6 |
| **beginning**(2) 17:11 58:2 | | | | **can't**(6) 47:6 70:2 71:1 72:2 78:20 93:13 | | **coincidence**(1) 21:23 |
| **behalf**(1) 95:6 | | | | **capital**(4) 3:17 3:36 3:36 4:12 | | **colleague**(1) 6:21 |
| **being**(18) 6:16 6:23 7:23 8:1 9:13 9:13 10:25 12:12 39:7 40:10 50:22 55:1 55:10 57:25 62:16 65:24 86:5 86:17 | | | | **capture**(1) 20:13 | | **colleagues**(2) 57:24 69:4 |
| | | | | **cards**(1) 61:16 | | **collier**(1) 4:9 |
| | | | | **career**(1) 62:13 | | **collins**(1) 52:10 |
| **believe**(10) 9:7 13:10 13:11 28:16 40:1 40:2 40:25 44:18 58:23 64:7 | | | | **carefully**(1) 73:20 | | |
| | | | | **carried**(2) 23:25 24:9 | | |
| **believes**(2) 40:22 40:23 | | | | **carry**(1) 49:14 | | |
| **belknap**(1) 3:32 | | | | **carryon**(1) 50:14 | | |
| **bench**(4) 42:11 43:4 80:8 89:11 | | | | **carryover**(1) 87:2 | | |
| **best**(3) 60:13 61:16 86:8 | | | | | | |
| **better**(1) 29:13 | | | | | | |
| **between**(18) 8:7 19:16 23:11 23:15 23:25 25:11 47:8 56:18 65:5 67:6 67:15 67:22 68:5 68:7 68:21 69:3 70:8 95:8 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **come**(16) 13:8  13:17  13:18  21:15  45:2  45:9  46:23  66:13  83:15  83:22  85:7  85:21  88:14  89:7  90:7  90:22 | | **copy**(15) 13:8  13:10  13:15  41:17  41:17  41:19  42:3  42:6  43:2  43:3  43:5  69:5  69:6  72:25  91:21  94:5 | | **debenture**(1) 3:32 | | **dispute**(8) 27:15  67:18  68:1  68:3  68:25  69:7  77:22  84:15 | |
| | | | | **debtor**(9) 15:11  26:6  28:5  44:5  44:6  58:8  66:15  66:16  88:11 | | | |
| **comes**(1) 66:1 | | **cordo**(1) 1:25 | | | | **disputed**(15) 10:19  12:10  12:14  12:18  12:20  48:9  48:18  64:17  68:13  69:16  70:16  71:4  74:20  79:11  92:4 | |
| **comfort**(1) 10:6 | | **core**(3) 65:5  92:3  95:9 | | **debtors**(53) 1:12  1:23  2:5  2:40  4:23  5:22  5:24  6:3  6:4  6:16  7:2  7:9  7:12  7:18  8:2  9:1  9:23  10:17  10:20  10:23  11:6  11:8  11:22  13:21  16:17  17:3  17:4  18:20  20:2  43:2  45:11  45:12  45:13  47:4  51:25  52:11  52:19  53:8  58:1  58:9  65:10  65:13  70:12  73:25  85:9  87:12 | | | |
| **coming**(3) 18:19  42:10  85:1 | | **corner**(1) 51:13 | | | | **disputes**(2) 65:7  87:19 | |
| **comment**(1) 81:8 | | **corp**(1) 56:23 | | | | **distinct**(1) 17:6 | |
| **comments**(1) 84:4 | | **corporate**(3) 14:18  64:21  66:6 | | | | **district**(1) 1:2 | |
| **committee**(3) 2:25  3:4  3:11 | | **correct**(16) 13:14  20:8  20:19  21:22  22:24  35:23  36:1  38:20  43:12  45:5  53:11  56:3  56:5  83:24  84:19  96:17 | | | | **dividing**(1) 16:24 | |
| **common**(7) 47:2  47:3  47:6  47:10  47:11  53:22  57:22 | | | | | | **dla**(1) 4:20 | |
| | | | | **december**(8) 61:10  61:13  66:14  80:10  80:11  89:15  89:16  89:22 | | **document**(110) 5:11  6:7  6:10  7:8  7:19  8:4  10:2  10:19  10:23  12:10  12:12  12:14  12:21  12:22  13:5  13:9  13:17  18:13  18:13  18:15  18:16  18:19  19:2  21:15  21:16  26:12  26:21  27:2  27:15  27:21  28:16  28:18  30:13  30:13  31:3  31:23  31:23  33:20  35:21  35:22  36:2  36:3  36:12  36:14  36:22  37:3  37:4  37:9  37:11  38:13  39:20  39:22  39:25  40:6  40:7  40:8  40:11  40:19  41:2  41:7  41:8  41:8  41:16  42:6  43:1  43:8  43:14  43:15  43:25  44:10  44:13  44:14  44:22  45:16  46:7  46:19  46:19  47:18  48:9  48:18  49:15  49:19  50:8  51:4  58:11  63:24  66:21  67:2  69:6  69:17  69:21  70:12  70:16  71:4  72:7  74:9  74:21  75:19  75:23  76:15  76:17  76:21  77:13  78:8  78:9  80:14  81:15  87:16  88:19  88:19 | |
| **companies**(24) 14:20  14:21  15:3  15:17  16:20  17:19  18:25  20:18  23:14  24:1  38:25  39:6  39:13  41:11  41:12  45:22  48:15  49:13  49:18  50:25  68:21  69:3  69:9 | | **correspondence**(1) 59:8 | | | | | |
| | | **corresponding**(2) 26:9  94:13 | | **decide**(1) 82:14 | | | |
| **company**(45) 15:1  15:6  15:13  15:15  16:2  17:19  20:24  20:25  22:16  23:2  23:16  23:23  34:5  37:13  38:11  38:15  38:17  38:24  39:5  39:7  39:9  39:9  39:17  40:12  40:13  40:14  40:18  41:7  41:9  45:18  50:16  51:21  52:16  53:2  54:15  55:3  55:22  61:1  61:9  61:11  63:13  64:17  66:2  74:23  88:4 | | **could**(16) 8:14  15:14  33:4  38:10  40:11  44:8  44:19  49:14  49:25  54:16  64:7  68:11  79:2  88:14  94:21  95:15 | | **decided**(1) 36:12 | | | |
| | | | | **deciding**(1) 95:9 | | | |
| | | | | **decision**(1) 7:6 | | | |
| | | | | **decision-making**(1) 88:12 | | | |
| | | **couldn't**(2) 15:15  38:20 | | **decisions**(1) 88:10 | | | |
| **company's**(1) 41:5 | | **couldn't**(2) 56:7  62:5 | | **deck**(1) 73:6 | | | |
| **compensating**(10) 19:7  19:10  19:11  26:6  34:6  34:12  35:8  49:23  67:5  76:3 | | **counsel**(11) 16:24  17:6  17:9  37:18  40:1  47:8  50:24  73:24  76:4  95:4  96:8 | | **deemed**(2) 89:2  92:9 | | | |
| | | | | **defeat**(1) 30:15 | | **documentary**(1) 65:19 | |
| | | **couple**(6) 31:13  35:14  37:8  77:7  79:12  83:24 | | **defend**(1) 61:24 | | **documented**(1) 72:4 | |
| **competing**(1) 19:6 | | | | **delaware**(7) 1:2  1:12  2:9  2:20  5:1  14:2  69:5 | | **documents**(55) 6:2  6:14  6:25  7:8  7:12  8:25  11:5  11:7  11:16  11:20  11:24  12:1  12:5  12:18  12:20  42:8  43:11  44:4  44:6  45:1  45:2  45:17  47:19  47:20  48:8  49:2  49:4  58:3  58:10  58:14  58:16  59:13  59:14  65:4  65:11  68:13  76:25  77:14  78:8  78:23  79:9  79:11  82:2  82:18  85:1  85:7  86:25  87:1  87:16  87:17  88:21  92:4  92:4  92:11  95:10 | |
| **complain**(1) 65:19 | | **course**(12) 8:16  9:25  14:6  14:19  19:10  21:19  25:15  32:10  36:7  54:2  57:5  75:23 | | | | | |
| **complete**(1) 90:23 | | | | **delay**(1) 80:2 | | | |
| **completed**(1) 81:8 | | **court**(56) 1:1  5:6  5:14  5:17  5:19  5:19  5:25  6:1  6:5  6:11  6:19  8:3  10:9  10:14  14:2  15:8  15:11  17:5  19:5  28:21  30:5  30:6  30:7  31:4  37:20  38:4  41:6  46:16  56:16  60:2  65:16  65:17  70:3  77:22  78:19  80:1  82:14  83:18  84:13  85:13  85:15  85:19  85:22  86:2  89:5  89:9  90:3  90:8  90:14  90:17  90:20  92:21  94:20  94:24  94:24  94:24 | | **delivered**(1) 79:4 | | | |
| **completely**(4) 39:17  51:23  79:17  95:11 | | | | **depose**(1) 87:23 | | | |
| **complicated**(2) 48:13  55:21 | | | | **deposed**(1) 61:25 | | | |
| **con**(1) 33:1 | | | | **deposition**(7) 12:10  19:24  19:24  39:24  63:12  92:7  92:8 | | **documents'**(1) 12:3 | |
| **conaway**(1) 2:4 | | | | | | **does**(11) 5:19  28:20  42:15  44:1  55:10  64:20  75:22  76:25  77:12  93:5  93:9 | |
| **concept**(1) 39:16 | | **court's**(2) 5:2  29:5 | | **depositions**(1) 27:25 | | | |
| **concern**(5) 8:12  77:6  86:1  87:7  88:23 | | **courtroom**(1) 1:10 | | **derek**(1) 1:24 | | | |
| **concerned**(2) 9:15  41:21 | | **courts**(9) 37:21  71:13  73:11  75:17  79:1  81:4  83:5  91:3  92:5 | | **described**(2) 63:14  83:25 | | **doesn't**(10) 10:3  31:17  41:3  41:13  43:24  46:15  46:20  46:20  53:1 | |
| **concerns**(1) 6:15 | | | | **describes**(2) 63:11  74:13 | | | |
| **conclusion**(1) 81:4 | | | | **describing**(3) 83:21  84:13  86:10 | | | |
| **conclusions**(1) 33:9 | | **covered**(4) 12:4  25:2  32:19  87:19 | | **description**(1) 84:18 | | | |
| **conduct**(1) 54:9 | | **covers**(1) 60:20 | | **desire**(2) 83:20  85:23 | | **doesn't**(13) 53:17  54:6  55:14  64:6  69:2  69:8  73:16  76:4  87:4  88:1  88:19  90:5  95:10 | |
| **confidence**(2) 40:11  55:11 | | **cra**(7) 19:16  19:23  20:6  22:10  25:8  25:19  27:23 | | **destroy**(4) 6:16  7:12  8:25  9:25 | | | |
| **confidential**(8) 40:12  40:21  40:23  40:25  41:3  54:9  55:10  55:12 | | | | **destroyed**(2) 7:19  8:18 | | | |
| | | | | **detailed**(1) 76:1 | | **doing**(11) 38:18  45:3  49:14  50:3  50:5  50:6  50:8  50:12  66:3  78:22  82:23 | |
| | | **created**(5) 31:21  37:4  54:17  55:10  55:11 | | **determine**(1) 73:14 | | | |
| **confidentiality**(2) 54:7  55:7 | | **creates**(1) 46:12 | | **deutsche**(2) 4:16  4:16 | | | |
| **confidentially**(1) 56:17 | | **creation**(1) 36:3 | | **development**(1) 66:18 | | | |
| **confirm**(1) 7:18 | | **creditor's**(1) 30:18 | | **diaz**(1) 1:40 | | **dollars**(4) 84:25  85:3  86:14  86:19 | |
| **confirmed**(3) 11:23  19:24  27:25 | | **creditors**(1) 3:12 | | **dictated**(1) 67:8 | | **don't**(35) 7:14  7:16  11:13  11:16  11:25  13:11  13:21  18:3  23:19  23:22  24:15  27:25  28:23  31:8  31:9  32:3  32:13  35:3  35:16  38:23  40:1  40:14  40:23  42:2  42:8  42:17  43:4  43:8  43:19  46:24  47:2  47:20  49:3  50:20  51:1 | |
| **cons**(3) 32:4  32:25  81:1 | | **creditors'**(1) 2:24 | | **did**(24) 12:3  15:21  16:1  17:20  21:6  30:25  31:3  41:22  41:24  42:7  42:19  43:13  44:3  44:5  58:1  78:4  78:6  84:23  85:15  85:17  87:21  87:21  87:22  88:3 | | | |
| **consent**(1) 92:22 | | **crib**(1) 91:22 | | | | | |
| **consequence**(1) 7:11 | | **crichlow**(1) 3:48 | | | | | |
| **consider**(1) 30:7 | | **critical**(4) 13:8  13:18  27:15  55:7 | | | | | |
| **consideration**(1) 14:11 | | **crunching**(1) 50:12 | | **didn't**(6) 30:1  40:16  40:19  40:20  43:13  43:13 | | | |
| **considered**(1) 25:20 | | **crux**(1) 36:3 | | **didn't**(5) 57:16  78:9  81:15  81:19  83:22 | | **done**(12) 23:8  23:8  24:3  40:10  44:15  56:24  65:15  65:18  65:20  65:25  72:6  86:24 | |
| **considering**(1) 87:1 | | **customers**(1) 66:4 | | **difference**(2) 54:18  76:13 | | | |
| **consultant**(4) 56:12  56:14  56:20  56:22 | | **cut**(1) 65:13 | | **different**(6) 8:6  41:11  41:12  51:24  53:15  92:6 | | | |
| **contain**(1) 59:14 | | **data**(2) 1:40  71:18 | | | | **don't**(38) 53:23  53:24  55:15  57:19  57:23  58:3  59:4  60:2  60:10  62:10  63:8  64:4  72:5  76:18  76:23  77:16  78:16  78:17  78:18  78:20  78:20  81:11  81:22  82:19  82:25  83:4  84:12  85:19  87:5  89:7  90:6  91:7  91:13  93:25  93:25  94:20  95:18  96:4 | |
| **contained**(2) 58:10  74:21 | | **date**(16) 4:4  51:6  52:1  62:14  63:1  63:2  63:5  64:3  65:11  72:3  72:5  72:22  80:9  80:17  80:17  96:23 | | **differently**(1) 59:13 | | | |
| **contemplated**(1) 47:12 | | | | **difficult**(3) 30:4  37:19  43:6 | | | |
| **contentious**(1) 38:6 | | | | **dimsdale-gill**(1) 3:41 | | | |
| **contents**(2) 73:11  75:8 | | | | **direct**(5) 7:11  38:16  38:22  54:4 | | | |
| **context**(3) 7:3  7:16  38:21 | | **dated**(4) 67:11  74:22  80:10  86:11 | | **directly**(3) 9:8  27:16  84:14 | | | |
| **continued**(3) 2:2  3:2  4:2 | | **dates**(2) 89:10  89:12 | | **directors**(1) 52:18 | | | |
| **contract**(1) 67:7 | | **david**(2) 2:32  3:48 | | **disagree**(2) 8:8  55:15 | | **doolittle**(10) 60:15  60:23  60:25  61:5  62:9  62:13  64:15  66:5  88:6  89:13 | |
| **contradicts**(1) 27:15 | | **day**(3) 12:8  12:16  96:12 | | **discovery**(3) 9:25  65:7  77:21 | | | |
| **contrary**(2) 33:16  55:13 | | **day-to-day**(1) 50:14 | | **discreet**(1) 86:20 | | | |
| **contributed**(1) 6:10 | | **days**(1) 79:4 | | **discuss**(2) 64:10  77:17 | | **doolittle's**(1) 66:1 | |
| **control**(5) 15:14  38:10  39:12  40:7  85:19 | | **deal**(17) 13:21  13:22  16:11  17:16  18:2  21:24  27:23  32:4  30:16  30:20  36:13  42:1  49:23  70:9  82:6  83:6  83:17 | | **discussed**(12) 12:12  47:12  83:7  86:17 | | **dorsey**(1) 2:6 | |
| **controlled**(4) 15:8  15:10  88:12  88:13 | | | | **discussion**(5) 14:23  43:23  77:17  78:15  90:8 | | **doubt**(1) 40:8 | |
| **controlling**(1) 39:16 | | | | **discussions**(1) 78:6 | | **dow**(1) 3:21 | |
| **controversial**(2) 60:25  84:4 | | **dealing**(5) 12:20  14:3  43:15  64:24  67:5 | | | | | |
| **controversy**(1) 66:12 | | **dealt**(4) 10:3  58:14  66:19  66:21 | | | | | |
| **copied**(1) 6:10 | | **debate**(1) 40:14 | | | | | |
| **copies**(3) 48:5  48:22  57:4 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **down**(7) 18:10 33:15 33:21 34:8 34:8 83:13 94:4 | | **estate**(25) 9:8 16:18 17:3 18:21 18:25 20:23 21:5 21:21 21:21 22:6 30:17 35:16 35:17 35:18 36:23 37:6 38:10 44:15 44:18 45:23 49:16 49:21 49:24 50:17 50:23 | | **figure**(2) 19:23 41:9 | | **framed**(1) 13:19 | |

**draft**(2) 74:22 93:16
**drafts**(1) 54:25
**draw**(1) 76:12
**drawn**(2) 19:15 19:19
**drive**(2) 7:20 7:21
**due**(1) 86:7
**during**(1) 10:21
**duty-bound**(2) 54:14 54:19

**each**(4) 16:23 65:7 84:21 86:12
**earlier**(5) 49:9 61:16 62:1 69:23 75:21
**early**(1) 71:25
**easier**(4) 9:22 91:12 91:19 96:9
**easiest**(1) 70:21
**east**(1) 49:18
**economic**(1) 76:1
**ecro**(1) 1:38
**educate**(1) 23:1
**education**(1) 84:16
**effectively**(3) 51:24 52:17 70:13
**eight**(1) 73:2
**either**(10) 32:19 37:9 37:10 43:17 45:3 45:8 60:15 60:23 61:9 79:3

**elaborate**(1) 65:8
**electronic**(2) 1:46 96:18
**element**(1) 55:9
**else**(6) 17:21 47:20 68:12 75:12 91:5 92:18
**elsewhere**(1) 50:23
**else"**(1) 63:14
**email**(4) 43:1 48:5 48:12 48:15
**emails**(1) 48:7
**emea**(18) 2:4 5:24 6:3 10:16 18:20 25:25 31:1 45:13 49:17 49:23 50:17 50:17 58:1 58:4 58:9 68:23 69:3 85:9

**employed**(1) 88:11
**employee**(19) 6:9 6:17 10:22 27:5 27:9 27:12 30:18 40:5 40:5 40:14 46:13 46:13 50:17 51:15 53:15 87:11 87:11 88:3 88:10

**employees**(6) 6:25 52:15 53:3 64:16 88:4 88:13

**employer**(2) 40:12 54:14
**end**(8) 26:3 28:21 60:14 60:16 60:19 82:11 86:23 92:20

**ended**(3) 20:9 62:15 77:22
**endorse**(3) 91:8 93:9 96:1
**endorsed**(1) 65:17
**endorsement**(2) 26:1 93:22
**ends**(2) 68:10 95:23
**enforce**(1) 15:15
**enough**(2) 82:10 90:5
**enter**(1) 53:22
**entered**(1) 16:22
**entire**(1) 31:15
**entirely**(2) 24:7 33:9
**entities**(5) 33:16 66:20 67:8 68:5 68:8
**entitled**(2) 21:9 35:8
**entity**(1) 67:9
**envelope**(1) 83:5
**envelopes**(3) 69:5 70:25 96:5
**equipped**(1) 66:13
**equivalent**(1) 7:21
**ernst**(3) 2:38 2:46 30:12
**esq**(27) 1:24 1:25 1:32 1:33 2:6 2:13 2:19 2:25 2:32 2:33 2:39 2:47 3:5 3:8 3:12 3:14 3:22 3:26 3:29 3:33 3:37 3:41 3:44 3:48 4:5 4:9 4:28

**essentially**(4) 52:19 63:12 91:1 93:18

**estates**(3) 8:6 8:7 21:13
**esther**(1) 3:29
**european**(5) 49:18 67:8 68:5 86:16
**europeans**(1) 87:3
**even**(10) 29:3 30:6 31:1 31:6 43:5 43:8 43:24 44:22 60:10 83:5

**eventually**(3) 26:25 62:15 65:16
**ever**(2) 84:9 87:17
**every**(7) 29:6 30:16 31:22 37:17 40:7 77:16 77:21

**everybody**(2) 68:12 91:5
**everyone**(4) 5:6 88:1 90:17 96:11
**everyone's**(3) 83:20 86:10 93:4
**everything**(3) 46:22 53:21 59:12
**evidence**(9) 39:19 39:21 50:10 55:8 55:12 60:13 60:24 61:8 61:17 66:1 73:23 75:24 81:5

**exact**(4) 52:1 64:3 72:3 72:14
**examination**(2) 10:21 62:12
**example**(6) 16:17 16:25 48:4 73:20 73:21 83:11

**examples**(1) 37:8
**except**(1) 53:6
**excerpt**(3) 62:12 63:11 64:20
**excerpts**(1) 83:3
**exchange**(1) 47:6
**excuse**(1) 27:7
**exercise**(2) 15:14 38:10
**exhibit**(2) 10:21 13:12
**exist**(3) 55:10 56:7 56:18
**exists**(1) 55:19
**expect**(1) 78:5
**experience**(1) 62:3
**expert**(2) 56:14 75:25
**explain**(3) 14:16 22:1 22:2
**explains**(1) 65:22
**extent**(5) 7:7 7:10 7:22 84:16 85:25
**extra**(1) 91:21
**fact**(12) 13:5 17:7 17:18 36:21 49:8 55:13 67:14 84:24 86:13 86:18 87:8 95:18

**factor**(1) 13:4
**facts**(7) 29:7 41:13 43:21 43:24 47:18 49:7 55:13

**factual**(1) 39:18
**factum**(14) 10:1 11:23 12:24 13:21 40:3 47:25 48:1 50:21 51:22 57:25 61:3 62:18 77:7 79:4

**factums**(1) 7:5
**fagen**(1) 3:14
**fails**(1) 54:9
**fair**(2) 61:24 65:16
**faith**(1) 78:6
**fall**(1) 77:4
**fallen**(1) 39:17
**falls**(1) 40:10
**familiar**(1) 82:21
**families**(1) 82:19
**family**(3) 48:2 48:6 48:11
**far**(4) 41:21 44:22 59:11 64:4
**fara**(1) 4:5
**farallon**(1) 3:17
**farr**(1) 3:25
**fault**(2) 24:7 24:8
**favorable**(1) 29:4
**feld**(2) 2:31 3:11
**fellows**(2) 83:16 90:5
**few**(2) 62:5 79:1
**fight**(1) 30:21

**file**(6) 40:5 41:5 41:8 44:10 44:18 44:22
**filed**(5) 6:4 15:4 19:5 24:25 40:3
**files**(3) 6:18 41:7 54:20
**filing**(7) 37:24 38:21 45:15 62:14 63:1 63:3 65:11

**filings**(1) 54:16
**finally**(1) 12:7
**find**(4) 58:19 70:15 78:12 82:20
**finding**(3) 7:10 75:2 93:3
**findings**(3) 9:16 95:17 95:18
**fine**(10) 10:2 18:17 24:16 79:19 80:1 80:18 93:1 93:23 94:20 95:4

**finger**(1) 2:24
**finnigan**(1) 3:43
**firm**(1) 6:22
**firms**(1) 52:19
**first**(11) 6:21 10:18 11:3 11:19 12:21 25:3 54:5 60:11 73:17 80:14 86:6

**fit**(1) 14:17
**fits**(2) 14:17 36:16
**five**(7) 58:24 59:3 59:5 67:1 71:24 74:16 80:20

**flaws**(1) 87:8
**flint**(1) 14:13
**flip**(4) 27:20 28:3 31:13 34:21
**floor**(1) 1:27
**flow**(1) 60:10
**flowed**(1) 24:12
**fly**(1) 41:13
**flying**(2) 14:9 14:12
**focused**(1) 60:15
**folks**(1) 26:14
**follow**(5) 9:24 53:1 91:19 94:2 96:3
**followed**(1) 81:7
**follows**(2) 12:9 12:17
**for**(153) 1:2 1:23 2:4 2:18 2:24 2:38 2:46 3:4 3:11 3:17 3:21 3:25 3:29 3:32 3:36 3:40 3:47 4:4 4:8 4:12 4:16 4:20 4:23 4:27 5:22 6:2 6:3 6:17 7:19 7:23 7:25 8:14 8:18 8:21 9:10 9:10 9:12 10:3 10:17 12:2 13:3 14:21 14:23 15:4 16:16 16:24 16:25 17:7 17:18 17:18 18:12 20:1 22:21 24:2 21:3 21:5 21:18 23:10 24:4 26:22 29:5 31:1 31:22 32:17 34:7 35:5 38:2 41:5 41:25 43:18 44:2 47:1 47:3 47:15 48:4 48:4 49:13 49:16 50:21 50:22 51:3 52:10 51:21 51:25 52:1 52:9 52:10 52:10 52:19 53:7 53:17 54:10 55:2 55:14 55:20 56:15 56:19 58:13 58:14 59:22 60:7 61:15 61:19 62:5 62:14 62:24 63:19 63:25 65:13 66:12 66:16 66:18 67:1 69:5 69:19 70:25 71:10 71:17 73:20 73:21 73:24 78:7 79:1 79:14 79:24 80:16 81:5 81:15 82:23 83:11 83:14 86:13 86:16 86:20 86:24 87:3 87:12 88:7 88:10 88:13 88:21 88:25 89:1 89:10 90:18 91:14 91:19 91:24 91:24 92:14 94:5 94:21 94:22 96:8

**foregoing**(1) 96:17
**foreign**(1) 4:5
**forget**(1) 38:23
**form**(7) 10:22 11:2 12:14 26:13 45:4 80:25 93:17

**forming**(1) 21:12
**forms**(1) 36:3
**formula**(1) 87:10
**formulas**(2) 86:21 87:9
**formulate**(1) 75:18
**formulating**(3) 49:17 49:22 50:16
**forth**(1) 24:13
**four**(9) 36:9 36:11 36:22 37:2 37:4 73:9 74:13 76:6 81:3

**fourth**(4) 25:3 71:13 71:21 73:6

**france**(10) 21:11 26:8 34:16 34:17 34:18 34:18 35:11 35:15 35:19 66:16

**frankly**(3) 8:8 13:22 30:5
**fray**(1) 78:18
**friend**(1) 81:18
**friends**(3) 52:12 68:23 93:15
**friend's**(1) 77:7
**from**(47) 6:15 6:18 7:18 10:1 10:10 16:5 18:20 19:15 19:19 20:4 20:5 20:23 23:5 26:21 27:4 27:24 29:23 40:2 40:9 40:12 42:10 43:1 44:10 45:2 62:12 63:11 66:1 66:5 68:23 71:23 73:24 74:24 75:11 75:19 75:25 76:3 78:5 78:5 79:4 80:8 86:15 86:15 89:11 90:15 92:19 92:20 96:18

**front**(3) 34:22 40:24 66:8 68:13 77:22 78:25 94:11

**fulfilling**(1) 55:1
**full**(1) 82:17
**fun**(1) 71:10
**function**(2) 30:14 50:1
**functions**(4) 49:12 64:21 64:21 66:6
**fundamental**(1) 43:16
**funding**(2) 17:1 38:3
**further**(2) 54:4 78:25

**gallagher**(1) 3:25
**game**(2) 76:8 81:9
**gander**(1) 58:14
**gave**(3) 26:25 27:1 49:11
**general**(1) 75:7
**generally**(3) 66:23 66:25 86:10
**generated**(1) 44:7
**gentleman**(1) 75:25
**get**(30) 24:20 28:12 29:14 32:6 34:10 36:20 40:24 45:17 47:11 50:16 55:15 57:6 57:22 59:9 62:3 64:5 64:6 64:7 69:19 70:22 72:14 76:18 79:3 81:16 81:19 82:3 84:7 91:23 94:12 96:9

**gets**(3) 46:19 53:2 77:13
**getting**(4) 49:13 78:7 86:22 92:2
**ginger**(1) 1:38
**give**(14) 16:2 2:10 31:7 37:7 38:22 41:25 54:14 54:19 56:10 66:10 66:13 72:2 89:11 96:4

**given**(5) 6:23 17:20 17:21 55:22 72:22
**gives**(3) 26:7 46:8 75:3
**giving**(1) 56:1
**glean**(1) 20:5
**global**(2) 88:4 88:5
**gloss**(2) 61:4 62:9
**goes**(3) 20:17 22:4 64:4
**going**(48) 10:2 11:22 12:14 13:17 13:18 17:16 18:1 20:24 29:1 38:19 43:20 47:6 48:15 48:21 49:5 50:11 50:19 54:2 54:5 57:14 57:23 59:21 60:8 64:9 64:12 65:9 70:9 70:18 71:10 72:12 73:20 75:24 76:3 76:12 77:23 78:19 79:14 80:21 82:20 83:7 84:8 87:18 90:5 91:16 91:18 91:23 96:1 96:2

**gold**(1) 56:23
**good**(25) 5:4 5:6 5:7 5:7 5:20 5:21 10:7 10:12 10:13 10:14 33:4 33:5 42:24 58:14 78:6 82:5 90:22 92:1 95:2 96:8 96:12

**goodman**(1) 52:10
**goodman's**(2) 51:20 51:24
**goose**(1) 58:13
**got**(36) 10:6 14:1 14:1 14:25 17:4 17:8 17:9 28:4 33:8 33:14 33:22 33:23 34:5 36:8 39:5 39:5 39:6 40:16 41:1 41:6 43:21 45:11 47:4 47:18 62:18 71:8 75:11 79:15 81:4 81:6 81:6 81:16 82:18 82:23 92:18 92:25

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| gottlieb(211) | 1:31 5:10 5:12 5:15 8:17 8:19 8:23 9:5 9:10 10:11 10:12 10:15 11:11 11:14 11:18 13:1 13:14 14:6 14:10 14:14 14:19 14:23 14:25 15:3 15:8 15:12 15:20 16:2 16:7 16:10 16:13 16:16 16:20 17:23 17:25 18:6 18:9 18:12 18:18 18:23 19:3 19:19 19:21 20:8 20:12 20:15 20:19 20:21 21:19 21:22 21:25 22:5 22:8 22:12 22:14 22:17 22:20 22:24 23:3 23:10 23:20 23:24 24:3 24:8 24:12 24:15 24:17 24:19 24:23 25:2 25:6 25:10 25:15 25:17 26:20 26:20 27:7 27:11 27:14 27:20 28:9 28:13 28:15 28:23 29:2 29:10 29:19 29:21 29:24 30:1 30:3 30:12 31:13 31:17 32:1 32:3 32:6 32:10 32:13 32:15 32:18 32:22 32:25 33:6 33:11 33:13 33:21 33:25 34:4 34:16 34:18 34:20 34:25 35:3 35:7 35:14 35:23 36:1 36:7 36:10 36:14 36:16 36:19 36:25 37:2 37:4 38:1 38:3 38:19 39:4 39:21 39:24 41:18 41:22 42:2 42:21 42:24 43:12 44:5 44:11 44:14 44:17 45:5 45:7 46:5 47:16 47:23 47:25 48:20 49:7 49:11 49:22 50:4 50:7 50:10 51:3 51:7 51:10 51:12 51:23 52:4 52:8 52:24 53:8 53:11 53:14 54:1 54:22 54:24 55:5 55:25 56:3 56:5 56:9 57:2 57:6 57:8 57:13 57:16 57:19 58:6 58:8 58:20 59:1 59:3 59:7 59:18 59:21 60:3 60:10 64:11 67:4 69:13 75:21 76:24 78:4 78:11 78:15 78:19 79:1 81:14 81:22 82:4 83:13 91:4 91:13 92:17 94:1 | happening(1) | 7:2 | hire(2) | 56:14 56:14 | independent(1) | 17:19 |
| gottlieb's(2) | 70:10 82:10 | happens(1) | 68:2 | his(18) | 8:5 8:5 8:11 40:12 54:14 54:20 55:2 55:18 60:14 60:16 60:19 60:24 62:13 63:11 64:5 64:21 88:12 88:13 | indirect(1) | 39:2 |
| government(1) | 86:17 | happy(1) | 81:18 | | | indiscernible(17) | 14:9 27:2 47:7 53:12 54:10 58:15 58:20 63:19 64:22 77:19 82:19 83:4 89:18 90:6 90:25 95:13 95:23 |
| gowling's(1) | 53:11 | hard(4) | 7:20 7:20 37:21 91:5 | history(1) | 65:2 | | |
| grade(1) | 91:25 | harrisburg(1) | 1:42 | hit(1) | 13:1 | indiscernibleJone(1) | 78:6 |
| granted(2) | 12:13 12:21 | has(41) | 9:7 17:10 21:4 21:12 21:13 21:22 22:18 23:16 28:16 29:12 34:1 34:6 35:15 39:17 41:17 41:19 41:20 43:9 43:21 43:22 46:9 47:8 51:24 52:17 56:16 56:21 57:12 68:2 68:18 68:19 68:20 68:21 69:9 69:11 77:22 82:12 85:10 87:11 87:24 88:18 91:5 | hoc(1) | 3:4 | influenced(1) | 84:9 |
| gray(3) | 6:22 16:11 40:2 | | | hogan(1) | 3:40 | information(6) | 40:25 50:1 64:8 73:23 74:1 82:12 |
| great(2) | 41:13 66:12 | | | hold(2) | 8:14 43:7 | | |
| greater(1) | 95:11 | hasn't(1) | 47:13 | holding(1) | 17:12 | ingersoll(1) | 2:38 |
| gross(43) | 1:18 5:4 5:10 7:6 7:14 9:7 9:22 10:13 14:2 45:21 48:21 52:9 57:8 59:23 60:1 60:7 62:24 65:1 66:11 68:4 69:5 71:7 71:9 75:20 75:20 79:15 79:23 79:24 80:20 83:15 90:7 91:2 91:14 91:16 93:9 94:4 94:5 94:6 94:11 94:19 95:5 95:23 | hasn't(1) | 65:2 | hole(2) | 68:10 68:11 | initial(1) | 25:7 |
| | | hate(1) | 85:11 | honor(63) | 5:21 7:1 8:20 9:15 9:21 10:12 15:16 26:14 27:21 28:16 28:17 30:1 30:14 33:2 34:20 38:19 41:3 41:15 42:4 42:25 44:19 47:16 48:21 49:1 53:18 54:1 54:2 55:16 56:13 57:6 57:7 59:22 59:22 60:5 64:3 65:23 66:7 66:11 69:3 70:24 71:3 73:22 75:2 75:14 76:9 76:14 77:16 78:3 78:4 78:5 79:18 80:5 80:19 81:12 81:14 84:12 87:24 90:12 90:13 91:24 93:16 94:8 96:6 | injected(1) | 87:10 |
| | | hats(1) | 87:21 | | | insolvency(5) | 13:23 23:14 39:15 53:1 |
| | | hauer(2) | 2:31 3:11 | | | instructions(3) | 76:22 77:15 79:3 |
| gross's(2) | 57:11 57:12 | have(142) | 6:4 6:21 7:11 7:17 9:6 10:3 11:12 12:14 13:11 14:10 14:20 17:2 17:16 18:20 19:12 20:21 21:7 21:10 21:18 22:20 23:7 25:1 26:20 32:7 32:14 32:16 34:4 34:12 34:21 35:16 35:18 36:5 36:20 39:4 39:12 40:16 40:18 40:21 40:23 41:1 41:8 41:9 41:11 42:3 42:7 43:4 43:6 43:8 43:17 43:17 43:19 43:19 43:22 43:24 44:10 44:21 45:11 46:6 46:7 46:7 46:10 46:23 46:24 47:4 47:5 47:5 47:7 49:5 50:7 50:20 51:21 53:15 53:24 54:13 54:25 55:5 55:14 55:16 55:18 55:20 56:20 57:19 57:23 58:14 58:16 59:4 59:15 59:25 59:25 60:11 60:13 61:15 61:17 62:10 62:23 63:9 63:11 64:3 64:11 64:16 64:20 65:6 69:5 69:12 69:22 70:24 71:9 73:19 75:10 75:11 75:24 76:22 78:5 78:6 78:25 80:9 81:17 81:17 82:6 82:17 83:10 83:16 85:4 85:12 85:19 87:4 87:10 88:14 88:16 88:19 89:18 91:4 91:19 92:2 92:6 92:17 94:16 94:24 95:7 95:11 96:10 | honor's(1) | 31:9 | insurance(1) | 64:22 |
| ground(2) | 18:8 18:10 | | | honorable(1) | 1:18 | intellectual(2) | 66:19 66:24 |
| grounded(2) | 17:18 17:21 | | | honors(3) | 83:19 92:24 94:10 | intend(1) | 87:5 |
| grounds(1) | 11:8 | | | honor's(1) | 57:23 | intended(1) | 54:9 |
| group(2) | 48:7 74:24 | | | hope(2) | 64:5 78:18 | interchangeably(1) | 11:22 |
| groups(1) | 63:18 | | | hopefully(3) | 65:22 92:2 93:17 | interest(12) | 15:17 17:8 47:2 47:3 47:6 47:10 47:11 53:19 53:19 53:22 56:21 57:23 |
| grout(1) | 3:43 | | | hoping(1) | 92:22 | | |
| guess(4) | 10:10 42:25 53:17 94:6 | | | hotly(2) | 37:7 37:19 | interested(1) | 3:17 |
| guessing(1) | 44:18 | haven't(4) | 32:22 33:2 46:16 52:14 | how(39) | 13:8 14:17 14:17 19:8 19:22 19:25 22:2 22:2 23:7 23:8 23:19 24:9 24:12 27:24 28:1 29:11 29:11 33:1 36:1 36:16 41:10 49:10 50:6 65:8 65:24 66:9 67:8 68:11 68:22 70:8 76:2 80:3 82:14 87:17 88:8 90:18 93:9 93:13 93:15 | interestingly(1) | 82:9 |
| guidance(1) | 27:24 | haven't(1) | 78:24 | | | interests(5) | 2:19 17:6 17:13 45:24 53:15 |
| guiney(1) | 3:33 | having(6) | 16:23 43:5 76:12 94:18 46:13 49:20 | | | interim(1) | 38:3 |
| gump(2) | 2:31 3:11 | | | however(1) | 88:2 | interrupt(1) | 85:11 |
| had(47) | 11:22 12:2 15:3 15:17 15:16 16:17 16:21 16:21 17:13 22:23 24:4 24:6 26:21 27:23 37:5 37:6 37:18 40:7 41:17 42:17 42:23 43:2 44:18 44:20 45:1 45:2 52:14 54:15 54:24 54:25 61:9 61:25 62:22 65:18 66:8 66:19 70:8 70:13 70:16 74:24 78:15 80:16 85:2 86:15 87:23 88:6 91:5 | head(2) | 11:3 11:4 | hubbard(2) | 2:12 4:4 | interwoven(3) | 29:7 29:7 29:8 |
| | | headed(3) | 9:1 73:3 73:9 | hughes(2) | 2:12 4:4 | into(20) | 14:11 14:17 16:22 20:15 20:23 24:24 35:16 37:15 53:22 56:12 60:10 68:19 69:18 77:23 84:14 87:3 87:10 87:12 87:18 95:9 |
| | | heading(4) | 59:1 71:19 73:12 73:15 | hundred(1) | 61:25 | | |
| | | heads(1) | 12:19 | hurdle(1) | 93:12 | | |
| | | hear(12) | 10:10 40:2 49:5 68:3 68:4 75:24 76:3 78:19 81:5 90:18 92:19 92:20 | i'd(1) | 42:7 | involve(3) | 5:19 69:2 69:9 |
| hadley(1) | 3:4 | | | i'll(10) | 10:15 14:20 18:19 30:8 34:20 37:7 38:22 40:24 47:17 49:12 | involved(9) | 7:6 9:7 13:6 13:7 13:14 33:16 54:25 66:2 69:6 |
| half(4) | 62:7 62:7 65:4 86:8 | heard(8) | 9:20 29:21 55:21 66:5 68:20 82:10 90:4 92:13 | | | | |
| hamilton(1) | 1:31 | | | i'm(18) | 5:18 11:22 13:17 13:18 15:25 16:13 19:10 24:19 26:16 32:9 33:1 42:13 44:18 45:10 48:10 48:21 50:11 50:19 | involvement(4) | 6:9 8:5 9:16 18:14 |
| hand(7) | 48:22 55:19 57:13 57:17 69:4 70:18 91:10 | hearing(8) | 6:7 7:17 7:24 10:4 80:2 92:25 94:22 96:14 | | | involves(1) | 5:11 |
| | | | | i've(6) | 7:5 9:20 12:24 12:25 47:18 50:23 | ira(2) | 20:6 22:10 |
| hand-labeled(1) | 71:5 | hearings(1) | 45:16 | idea(5) | 31:19 55:11 82:5 95:2 96:8 | ireland(6) | 19:12 21:10 26:8 34:11 66:17 71:25 |
| handed(2) | 78:24 91:2 | heavily(2) | 16:22 16:23 | identical(1) | 48:20 | | |
| handful(1) | 77:23 87:17 | held(3) | 10:23 62:25 88:4 | ie's(1) | 71:23 | irrelevant(1) | 13:6 |
| hands(2) | 17:13 79:17 | help(3) | 44:19 66:8 74:4 | immediately(1) | 72:1 | irs(11) | 19:16 19:22 25:8 25:19 27:23 67:22 85:1 85:22 86:18 86:22 86:24 |
| handwriting(1) | 91:24 | helpful(1) | 61:15 | imperfect(1) | 85:21 | | |
| happen(1) | 39:12 | helps(3) | 24:18 28:20 84:3 | implication(12) | 9:6 19:11 19:14 19:17 20:2 21:9 21:14 26:6 26:10 27:18 31:22 33:18 | isn't(2) | 28:22 47:1 |
| happened(3) | 41:21 44:3 54:21 | her(2) | 91:1 58:22 | | | isn't(5) | 55:21 64:2 77:6 84:17 89:2 |
| | | here(25) | 5:13 13:4 27:14 31:8 31:9 32:8 41:6 42:5 42:18 51:21 55:10 57:24 59:19 61:23 76:4 76:16 76:18 77:9 77:24 80:2 85:7 87:17 88:16 88:24 95:19 | implications(6) | 21:8 68:16 68:18 68:19 68:22 68:24 | issue(25) | 6:25 11:25 12:5 18:14 20:3 20:6 24:8 24:9 50:13 55:16 59:8 59:19 64:23 76:21 78:9 84:25 85:7 85:9 87:4 87:16 87:22 87:25 88:25 95:15 95:21 |
| | | | | import(1) | 95:11 | | |
| | | | | important(11) | 13:20 18:5 18:14 18:16 19:8 19:22 21:17 33:13 69:14 70:14 84:2 | issue-by-issue(1) | 53:20 |
| | | here's(2) | 15:12 26:5 | | | issues(12) | 9:18 63:15 65:18 68:1 84:15 84:22 88:5 88:7 88:22 88:25 89:4 95:10 |
| | | herring(1) | 59:18 | improperly(3) | 12:5 26:22 65:20 | | |
| | | he'd(1) | 82:11 | inaccurate(1) | 85:25 | it's(79) | 5:7 5:7 6:24 7:16 8:19 9:11 9:14 10:16 11:20 13:10 13:11 13:19 13:19 14:7 14:21 15:15 15:23 19:1 19:6 19:17 19:24 21:23 24:7 24:8 24:9 24:21 24:25 25:11 25:24 27:2 27:22 28:15 28:21 28:25 29:1 29:7 29:8 30:4 30:12 30:13 30:24 31:23 33:5 33:5 33:25 34:7 34:9 35:4 36:16 38:11 40:12 41:10 41:13 42:24 44:21 44:23 45:25 46:11 46:15 47:4 47:7 47:25 47:25 48:13 48:14 48:14 48:15 48:25 50:22 51:1 51:3 52:2 52:6 |
| | | he's(4) | 53:15 54:19 55:1 61:18 | inappropriate(2) | 7:22 40:15 | | |
| | | high(1) | 55:20 | inc(2) | 1:7 4:8 | | |
| | | highlights(2) | 13:2 42:18 | inception(1) | 46:12 | | |
| | | him(16) | 13:9 17:20 39:22 40:20 41:1 41:2 46:14 46:14 53:16 53:16 54:20 61:24 62:6 62:19 87:23 87:25 | include(1) | 29:3 | its(10) | 10:22 26:12 34:6 36:22 37:5 42:7 48:12 66:5 68:3 85:10 |
| | | | | includes(1) | 64:23 | | |
| | | | | including(4) | 26:2 37:17 39:6 74:17 | itself(9) | 13:17 18:13 18:15 36:2 38:13 41:3 49:15 58:23 70:16 |
| | | | | income(2) | 25:21 68:18 | | |
| | | | | inconvenience(1) | 84:13 | | |
| | | | | increase(1) | 69:19 | | |

| Word | Page:Line |
|---|---|

**it's(55)** 53:20 53:21 54:6 54:8 54:15 55:24 57:1 57:3 57:25 58:4 58:14 58:21 58:23 58:25 58:25 60:25 61:20 62:20 65:6 66:21 67:11 67:11 68:17 69:2 71:3 71:4 71:13 71:19 72:23 72:24 73:3 73:7 74:4 75:17 75:23 76:16 76:23 77:6 77:8 80:10 80:13 80:14 82:4 82:5 83:13 88:18 88:23 90:24 93:1 93:2 93:3 93:10 95:7 96:4 96:8

**i'd(5)** 64:3 69:22 75:9 76:22 81:8

**i'll(17)** 54:11 55:1 56:13 61:4 71:11 72:14 73:19 74:4 79:23 80:5 80:20 86:5 86:8 86:9 94:1 94:2 94:4

**i'm(32)** 21:17 23:21 54:2 54:4 57:14 58:12 59:21 60:8 61:23 67:19 71:16 73:20 74:3 75:20 76:7 76:12 79:13 79:17 80:21 81:18 81:23 82:2 84:8 86:5 88:19 90:18 91:18 91:23 92:2 92:22 96:1 96:2

**i've(5)** 29:21 55:9 78:24 90:4 91:11

**jack(1)** 4:13
**james(1)** 4:17
**january(4)** 17:11 61:14 63:6 86:23
**jessica(2)** 58:15 58:20
**john(1)** 2:6
**johnson(1)** 2:33
**joint(10)** 4:4 6:7 7:23 27:17 34:13 34:23 35:12 45:13 51:21 94:21

**jointly(4)** 1:6 27:3 37:12 51:25
**jones(2)** 3:7 3:21
**judge(45)** 1:18 1:19 5:4 7:5 7:13 9:7 9:22 10:13 14:2 45:21 48:21 52:9 57:8 57:11 57:11 59:22 60:1 60:7 62:23 64:25 66:11 68:4 69:5 71:7 71:9 75:20 76:12 79:15 79:23 79:24 80:20 81:5 83:15 90:6 91:2 91:14 91:16 93:9 93:18 94:4 94:5 94:6 94:11 94:19 95:23

**jump(1)** 84:18
**jurisdictions(1)** 93:14

**just(99)** 5:17 8:13 8:14 8:14 8:23 10:15 11:9 13:11 14:4 14:16 14:20 15:18 15:25 18:24 20:4 22:1 22:2 23:1 23:19 26:3 28:21 33:19 34:21 34:23 36:12 36:20 36:21 37:7 38:8 39:17 41:12 42:21 45:24 46:20 47:21 48:14 49:3 49:12 51:19 54:2 54:3 54:5 54:11 54:22 56:6 57:10 57:24 58:16 59:7 59:21 62:3 62:6 62:23 62:24 63:2 64:16 64:24 66:10 67:1 68:20 71:3 71:12 72:15 73:16 73:16 73:20 75:14 75:16 75:23 75:25 76:7 76:11 77:13 78:8 79:10 80:9 82:17 82:21 83:8 83:20 83:23 83:24 84:6 84:9 84:13 84:16 87:15 89:1 91:13 92:25 93:25 94:1 94:1 94:21 95:6 95:9 96:1 96:2

**justice(301)** 5:4 5:8 5:9 5:10 5:13 5:16 5:18 7:4 8:10 8:13 8:17 8:21 9:4 9:9 9:15 9:19 10:5 10:8 10:10 11:9 11:12 11:15 12:24 13:2 13:13 14:4 14:7 14:12 14:16 14:22 14:24 15:2 15:7 15:10 15:18 15:21 16:5 16:9 16:12 16:15 16:16 16:19 17:15 17:24 18:1 18:7 18:11 18:17 18:22 19:1 19:18 19:20 20:4 20:9 20:14 20:17 20:20 21:17 21:20 21:23 22:1 22:7 22:9 22:13 22:15 22:18 22:22 22:25 23:9 23:18 23:21 24:2 24:6 24:11 24:14 24:16 24:18 24:21 25:1 25:5 25:9 25:13 25:16 26:16 26:19 26:24 27:7 27:10 27:13 27:19 28:8 28:10 28:14 28:19 28:25 29:3 29:9 29:18 29:23 30:11 31:12 31:16 31:25 32:2 32:5 32:11 32:14 32:16 32:21 32:24 33:4 33:10 33:12 33:19 33:24 34:3 34:14 34:17 34:19 34:24 35:2 35:6 35:13 35:20 35:24 36:5 36:8 36:11 36:15 36:18 36:24 37:1 37:3 37:25 38:2 38:14 39:2 39:19 39:23 41:16 41:20 41:24 42:10 42:15 42:21 43:10 44:2 44:6 44:12 44:16 44:25 45:6 46:1 46:4 47:14 47:21 47:24 48:2 48:8 48:14 48:17 48:24 49:1 49:6 49:10 49:20 50:3 50:5 50:9 50:19 51:6 51:9 51:11 51:19 52:3 52:14 52:21 52:23 53:4 53:9 53:12 53:24 54:18 54:23 55:4 55:24 56:1 56:4 56:8 56:25 57:3 57:10 57:14 57:18 58:5 58:7 58:19 58:25 59:2 59:6 59:17 59:20 59:25 60:4 60:6 60:8 60:9 60:16 60:19 60:22 61:2 61:6 61:11 61:13 61:18 61:22 62:2 62:18 62:21 62:24 63:2 63:7 63:16 63:21 63:24 64:7 64:10 64:14 64:18 65:1 65:14 65:21 66:23 67:10 67:13 67:19 67:24 68:7 68:15 69:1 69:8 69:13 69:20 69:25 70:5 70:10 70:20 70:22 71:1 71:6 71:16 71:20 72:6 72:8 72:10 72:13 72:15 72:19 72:21 72:24 73:2 73:4 73:13 73:19 74:1 74:3 74:6 74:10 74:12 74:15 74:18 74:25 75:3 75:6 75:9 75:20 75:20 76:7 76:11 76:20 77:1 77:5 77:10 77:12 77:18 77:20 77:25 78:10 78:14 78:16 79:5 79:8 79:13 79:19 79:22 80:3 80:7 80:11

**justice(54)** 80:13 80:18 80:23 81:8 81:13 81:21 81:23 82:13 82:16 82:22 83:2 83:7 83:14 84:1 84:5 84:8 86:3 89:6 89:12 90:4 90:10 90:13 90:18 90:24 91:7 91:16 91:20 92:1 92:7 92:13 92:16 92:21 93:5 93:8 93:19 93:21 93:24 94:15 95:2 95:5 95:5 95:13 95:16 95:20 95:22 96:1 96:7

**justifiable(2)** 46:10 46:23
**justification(1)** 47:1
**justin(1)** 2:19
**kamunting(1)** 4:12
**kathleen(1)** 2:39
**katten(1)** 3:47
**keane(1)** 3:8
**keep(1)** 40:11
**keeping(1)** 56:1
**kelly(1)** 96:23
**kent(1)** 4:9
**kept(3)** 54:20 55:11 88:23
**kevin(1)** 1:18
**key(8)** 13:4 15:12 16:10 19:16 26:5 54:7 55:9 56:12

**keyashian(1)** 2:47
**kind(1)** 14:17
**kinds(1)** 84:9
**king(2)** 2:8 2:27
**knew(1)** 59:12

**know(58)** 11:6 12:1 18:3 18:19 19:21 27:25 28:17 28:23 29:11 29:19 30:13 30:24 31:4 31:8 31:9 31:25 32:1 32:3 32:13 33:7 36:16 37:10 37:10 38:5 39:21 45:11 45:14 46:8 47:20 48:3 49:3 49:3 52:5 54:3 54:3 58:3 61:17 61:23 63:25 64:5 64:15 70:11 70:14 71:7 71:10 72:5 73:5 76:15 78:9 78:21 79:15 81:11 86:4 86:5 88:8 90:24 94:20 96:3

**knowledge(1)** 75:11
**knows(2)** 19:22 19:25
**kruger(5)** 27:4 40:22 51:8 51:15 74:9
**kruger's(1)** 73:23
**language(5)** 19:7 29:12 91:4 92:25 93:1
**larger(5)** 8:6 87:7 87:18 88:25 89:3
**largest(1)** 66:16
**last(6)** 9:25 27:22 60:24 63:9 64:16 77:7
**lasted(1)** 62:14
**later(1)** 59:15
**laughter(7)** 14:15 29:20 29:22 29:25 30:2 42:12 46:3

**law(5)** 3:32 29:15 46:11 52:19 54:3
**lawyer(2)** 75:3 86:8
**lawyer's(1)** 28:21
**lawyers(7)** 33:4 33:5 50:21 74:19 75:4 76:5 78:17

**layton(1)** 2:24
**lead-in(2)** 70:16 74:7
**least(4)** 66:13 76:16 79:22 91:22
**leaving(1)** 91:9
**lebo(2)** 96:4 96:6
**left(11)** 33:23 61:9 61:11 62:1 63:9 64:16 88:7 89:13 89:19 89:19 89:21

**legal(25)** 28:4 28:4 28:6 28:11 28:25 29:1 29:14 31:18 32:11 33:1 73:10 73:12 73:14 73:15 73:16 73:21 74:2 74:20 74:21 74:21 75:6 75:15 76:3 76:4 83:12

**lengthly(1)** 62:14
**leona(1)** 2:47
**let(17)** 8:10 8:13 11:9 13:1 18:12 18:18 20:4 25:13 28:8 52:5 62:6 62:23 63:21 64:11 71:7 74:4 79:10

**let's(5)** 22:7 26:12 28:11 28:19 47:15
**lets(1)** 46:25
**letter(1)** 75:5
**letters(1)** 7:18
**let's(2)** 61:16 80:3
**liberty(1)** 1:34
**lies(1)** 55:17
**life(2)** 62:8 78:22
**light(1)** 70:10
**like(10)** 14:12 14:13 49:24 73:16 77:13 82:4 82:11 82:25 85:8 95:8

**likelihood(1)** 54:19
**line(4)** 25:6 34:8 50:15 63:20
**linn(1)** 3:18
**lisa(2)** 1:32 5:21
**list(7)** 27:5 42:8 42:20 43:11 43:13 43:14 51:16

**listed(3)** 42:19 45:7 58:3
**lists(1)** 64:22
**litigate(1)** 87:25
**litigation(23)** 10:20 32:19 41:23 43:9 44:4 44:7 45:13 45:20 45:23 46:9 46:18 50:18 52:20 54:7 54:11 55:13 55:23 56:21 57:22 75:15 75:19 81:2 81:2

**little(11)** 45:8 58:13 61:4 62:9 65:1 65:24 66:10 79:11 80:2 83:10 84:6

**live(1)** 93:1

**lived(1)** 65:1
**llc(1)** 1:40
**llp(13)** 1:23 1:26 2:5 2:12 2:31 2:46 3:11 3:25 3:40 3:43 3:47 4:4 4:27

**loan(3)** 18:23 18:24 31:2
**log(8)** 43:18 45:7 58:6 58:9 58:18 59:1 59:14 65:10

**loggerheads(1)** 70:12
**logs(7)** 42:8 42:14 42:17 58:1 59:4 59:9 65:12

**long(6)** 24:20 37:22 62:1 65:2 93:1 95:7
**longer(1)** 74:7
**look(31)** 11:18 33:21 34:8 34:13 42:17 49:14 50:7 51:4 51:16 52:25 53:14 55:6 59:7 60:15 60:23 60:25 61:24 64:5 71:1 71:4 73:13 73:16 73:16 73:19 74:8 77:1 77:3 79:9 81:25 82:20 91:5

**looked(3)** 80:14 82:21 83:8
**looking(6)** 8:17 8:21 34:7 48:10 51:6 51:7
**looks(2)** 85:8 92:1
**look's(1)** 61:8
**lose(1)** 85:17
**loss(2)** 34:6 34:9
**lost(1)** 85:12
**lot(3)** 37:10 73:14 96:9
**lovells(1)** 3:40
**lowered(1)** 35:9
**ltd(1)** 34:5
**lunch(9)** 79:14 79:15 79:16 79:24 82:5 83:15 83:20 83:24 90:6

**ma'am(1)** 8:14
**mace(1)** 1:38
**macinnis(1)** 4:17
**made(26)** 7:6 8:1 9:1 16:17 17:7 19:5 22:2 24:4 27:16 27:17 30:24 36:22 37:5 42:7 44:21 45:9 53:18 67:6 81:6 81:9 82:6 84:20 86:14 86:15 86:18 92:20

**mails(1)** 48:5
**main(2)** 66:15 74:23
**mainly(1)** 88:23
**maintained(1)** 46:25
**major(2)** 45:18 45:23
**make(25)** 6:22 7:1 9:22 20:24 22:6 24:15 25:13 32:8 37:17 45:24 54:12 54:18 57:24 62:11 76:13 81:8 82:17 84:17 85:23 86:7 89:1 91:3 91:12 91:19 93:22

**makes(2)** 43:5 65:13
**making(8)** 6:12 8:24 16:13 21:17 47:15 82:11 86:12 88:9

**management(3)** 3:17 3:36 3:37
**managing(1)** 64:21
**many(3)** 37:7 59:16 59:16
**march(2)** 89:20 89:24
**marked(2)** 10:21 74:22
**market(3)** 1:11 1:27 2:40
**master(1)** 66:17
**material(8)** 12:25 16:5 17:1 18:20 19:25 20:5 26:21 91:2

**materials(4)** 19:8 44:8 65:16 67:4
**matter(17)** 5:19 6:7 7:13 28:11 29:15 29:15 36:21 46:11 65:3 69:9 69:11 75:22 87:17 90:5 90:19 92:11 96:19

**matters(3)** 43:5 43:16 75:8
**matthew(2)** 3:14 3:37
**matz(1)** 3:5

| Word | Page:Line |
|------|-----------|

**may**(37) 13:7 13:16 13:19 13:23 15:20 16:8 16:14 17:2 17:12 18:4 29:3 29:4 30:5 30:5 30:6 31:4 33:6 36:19 36:21 38:4 45:10 46:1 52:25 54:18 57:10 59:23 60:20 63:25 70:24 74:7 83:16 85:11 88:7 89:10 90:17 90:22 92:6

**maybe**(5) 48:3 52:4 52:6 57:10 83:10

**mccloy**(1) 3:4

**mean**(10) 7:19 17:17 30:1 42:15 46:21 48:2 48:7 76:5 81:14 84:13

**means**(7) 21:8 34:12 42:16 43:12 54:4 56:9 96:3

**mechanism**(2) 23:4 25:11

**meet**(1) 47:3

**meeting**(4) 51:5 53:5 74:14 88:16

**meets**(1) 79:24

**melnik**(1) 4:20

**members**(2) 48:3 48:11

**memorandum**(1) 74:22

**mentioned**(1) 68:6

**merely**(3) 8:4 59:18 65:12

**method**(2) 25:10 25:17

**methodology**(6) 23:6 25:18 25:22 26:4 67:3 67:14

**michael**(5) 3:18 3:44 4:28 10:21 17:4

**middle**(2) 30:22 49:18

**might**(9) 5:17 31:10 46:4 55:5 61:15 66:7 70:21 91:12 91:18

**mike**(1) 6:9

**milbank**(1) 3:4

**million**(7) 18:23 19:6 35:17 35:19 46:2 65:4 65:4

**millions**(1) 85:3

**mind**(3) 35:4 51:2 62:3

**mine**(2) 57:10 57:11

**minute**(4) 8:14 15:18 51:19 86:7

**minutes**(4) 79:1 83:23 84:1 84:10

**misdescribed**(1) 85:25

**miss**(1) 8:13

**mistakes**(1) 59:10

**mitchell**(1) 51:3

**mitigation**(1) 80:21

**mode**(1) 49:13

**model**(2) 50:12 76:2

**moment**(3) 18:12 61:5 64:24

**moment-by-moment**(1) 53:20

**money**(4) 19:12 37:14 84:24 87:3

**monitor**(48) 2:38 2:46 8:2 11:21 13:15 13:21 20:1 21:6 25:8 25:24 26:5 27:4 27:16 30:10 30:23 30:25 31:2 31:21 33:16 38:25 43:1 43:2 44:3 44:3 44:4 44:12 44:14 45:1 45:3 50:22 50:24 51:15 51:20 51:25 52:10 52:11 52:13 52:17 56:11 58:8 60:8 70:3 74:11 76:16 88:17 88:18 88:18 88:20

**monitor's**(10) 19:25 30:13 30:14 30:19 30:25 31:5 41:11 44:8 44:10 48:1

**month**(2) 59:15 68:4

**months**(10) 13:24 15:4 36:22 37:2 37:5 37:24 52:25 59:16 69:23 76:10

**more**(15) 15:16 22:19 38:22 38:25 41:1 43:5 48:13 51:23 58:13 68:18 73:19 78:2 79:11 79:12 81:17

**morning**(7) 5:4 5:6 5:20 5:21 10:13 10:13 10:14

**morris**(2) 1:23 1:26

**motion**(36) 5:11 5:23 7:3 7:17 10:15 10:16 10:24 11:2 11:13 11:17 11:18 11:19 12:8 13:10 24:25 26:13 26:13 26:14 26:18 35:11 40:10 58:21 62:11 76:24 86:16 93:10 93:11 93:24 93:25 94:1 94:2 94:9 94:19 94:25 96:2 96:2

**move**(5) 27:24 47:15 54:5 75:19 80:6

**much**(7) 68:22 78:19 86:22 89:7 90:11 96:7 96:10

**mui**(1) 4:13

**munchin**(1) 3:47

**murphy**(1) 2:39

**must**(3) 8:25 54:25 75:11

**myself**(1) 54:12

**name**(1) 74:9

**named**(3) 67:1 74:20 76:1

**narrow**(7) 86:25 87:4 87:16 87:22 88:2 88:23 88:24

**nature**(2) 40:25 94:25

**necessary**(2) 7:16 45:16

**need**(12) 14:5 18:2 18:8 34:7 40:16 52:19 55:6 57:14 70:11 71:4 91:16 93:9

**needs**(2) 7:6 18:7

**neglected**(1) 57:5

**negotiate**(1) 20:22

**negotiated**(4) 16:23 23:14 37:7 37:19

**negotiating**(1) 17:10

**negotiations**(3) 23:11 37:22 78:22

**neil**(1) 2:13

**neither**(2) 43:18 82:24

**networks**(8) 1:7 3:25 3:40 33:22 34:4 34:9 34:10 34:11

**never**(1) 27:12

**new**(5) 1:35 2:15 2:35 3:33 52:15

**newbould**(301) 5:4 5:8 5:9 5:13 5:16 5:18 7:4 8:10 8:13 8:17 8:21 9:4 9:9 9:15 9:19 10:5 10:8 10:10 11:9 11:12 11:15 12:24 13:3 13:13 14:4 14:7 14:12 14:16 14:22 14:24 15:2 15:7 15:10 15:18 15:21 15:23 15:25 16:4 16:9 16:12 16:15 16:19 17:15 17:24 18:1 18:7 18:11 18:17 18:22 19:1 19:18 19:20 20:4 20:9 20:14 20:17 20:20 21:17 21:20 21:23 22:1 22:7 22:9 22:13 22:15 22:18 22:22 22:25 23:3 23:18 23:21 24:2 24:6 24:11 24:14 24:16 24:18 24:21 25:1 25:5 25:9 25:13 25:16 26:16 26:19 26:24 27:7 27:10 27:13 27:19 28:8 28:10 28:14 28:19 28:25 29:3 29:9 29:18 29:23 30:11 31:12 31:16 31:25 32:2 32:5 32:8 32:11 32:14 32:16 32:21 32:24 33:4 33:10 33:12 33:19 33:24 34:3 34:14 34:17 34:19 34:24 35:2 35:6 35:13 35:20 35:24 36:5 36:8 36:11 36:15 36:18 36:24 37:1 37:3 37:25 38:2 38:14 39:2 39:19 39:23 41:16 41:20 41:24 42:10 42:15 42:21 43:10 44:2 44:9 44:12 44:16 44:25 45:6 46:1 46:4 47:14 47:21 47:24 48:2 48:8 48:14 48:17 48:24 49:1 49:6 49:10 49:20 50:3 50:5 50:9 50:19 51:6 51:9 51:11 51:19 52:3 52:14 52:21 52:23 53:4 53:9 53:12 53:24 54:18 54:23 55:4 55:24 56:1 56:4 56:8 56:25 57:3 57:10 57:14 58:5 58:7 58:19 58:25 59:2 59:6 59:17 59:20 59:25 60:4 60:6 60:8 60:9 60:16 60:19 60:22 61:2 61:6 61:11 61:13 61:18 61:22 62:2 62:18 62:21 62:24 63:1 63:5 63:7 63:16 63:21 63:24 64:7 64:10 64:14 64:18 65:2 65:14 65:21 66:23 67:10 67:13 67:19 67:24 68:7 68:15 69:1 69:8 69:13 69:20 69:25 70:5 70:10 70:20 70:22 71:1 71:6 71:16 71:20 72:6 72:8 72:10 72:13 72:15 72:19 72:21 72:24 73:2 73:4 73:13 73:19 74:1 74:3 74:6 74:10 74:12 74:15 74:18 74:25 75:3 75:6 75:9 75:20 76:7 76:11 76:20 77:1 77:5 77:10 77:12 77:18 77:20 77:25 78:10 78:14 78:16 79:5 79:8 79:13 79:19 79:22 80:3 80:7 80:11 80:13 80:18

**newbould**(51) 80:23 81:8 81:13 81:21 81:23 82:13 82:16 82:22 83:2 83:7 83:14 84:1 84:5 84:8 86:3 89:6 89:12 89:14 89:16 89:18 89:21 89:23 89:25 90:2 90:4 90:10 90:13 90:18 90:24 91:7 91:16 91:20 92:1 92:7 92:13 92:16 92:22 93:3 93:8 93:19 93:21 93:24 94:15 95:2 95:5 95:13 95:16 95:20 95:22 96:1 96:7

**news**(1) 90:22

**next**(6) 28:3 28:6 31:13 34:8 35:3 60:4

**nice**(2) 5:9 69:14

**nicely**(1) 58:13

**nichols**(2) 1:23 1:26

**night**(3) 10:1 12:9 12:17

**nnc**(1) 14:1

**nni**(12) 14:3 14:17 15:1 21:2 22:4 22:6 22:17 22:18 22:23 23:2 23:16 23:22 27:5 22:7 27:11 39:2 39:6 41:4 45:12 45:18 45:19 46:13 54:14 54:19 54:20 55:2 55:22 56:2 60:17 60:18 62:17 62:25 64:1 64:18 64:19 66:15 69:18 84:23 85:1 85:2 85:4 85:9 85:10 86:13 86:18 86:22 87:11 88:11 88:13 88:13 88:15 89:19

**nni's**(1) 38:15

**nni's**(1) 83:21

**nnl**(38) 14:1 14:21 15:22 23:23 24:7 27:6 27:10 41:16 41:19 41:22 45:23 50:5 52:2 61:1 61:11 61:12 62:17 62:25 63:25 64:20 66:14 67:9 69:3 71:15 71:22 72:1 72:12 74:23 84:24 85:8 86:14 86:14 86:20 87:1 87:3 88:13 89:19 89:21

**nnsa**(5) 19:12 21:11 35:12 35:19 66:17

**nnuk**(11) 19:12 21:10 26:8 33:18 38:23 39:7 39:7 45:13 49:24 66:16 71:25

**non**(2) 88:21 91:3

**non-adversity**(1) 88:9

**non-privilege**(1) 93:4

**non-waiver**(1) 91:10

**none**(5) 35:20 37:11 51:16 51:17 87:14

**nor**(1) 53:2

**normal**(1) 41:14

**nortel**(18) 1:7 3:25 3:40 27:5 33:22 34:4 34:9 34:10 34:10 35:19 60:14 62:1 63:10 66:20 67:8 68:5 74:23 84:20

**north**(5) 1:27 2:8 2:27 2:40 20:10

**norton**(1) 53:6

**not**(108) 6:24 8:4 8:21 10:1 11:6 12:1 12:6 12:7 12:22 13:24 14:7 15:11 15:16 15:23 24:3 24:8 24:21 27:6 29:5 29:15 29:23 30:5 30:5 30:15 30:15 31:22 33:1 33:17 37:23 38:5 38:8 38:11 40:11 40:17 40:22 41:12 41:13 41:22 41:25 42:7 42:13 42:19 42:20 43:10 43:13 43:24 44:22 46:10 46:11 46:24 47:15 48:25 49:2 49:20 50:14 53:19 53:20 53:22 54:8 54:16 54:18 55:2 55:3 55:10 56:23 57:3 57:11 57:14 57:20 58:16 60:25 61:14 61:18 61:23 62:24 65:10 68:2 70:16 71:10 71:18 73:14 73:20 75:14 75:16 75:16 77:22 82:9 84:2 84:8 84:18 85:9 86:4 87:18 87:22 87:25 88:14 88:18 88:19 88:24 90:22 91:5 92:9 92:9 92:10 92:10 93:2 93:10

**not's**(1) 29:16

**note**(4) 21:18 25:13 62:11 72:1

**notes**(5) 14:21 54:13 62:15 91:12 91:23

**nothing**(4) 7:1 41:1 48:13 81:17

**notice**(5) 11:16 12:8 76:23 94:18 94:21

**noticed**(1) 62:15

**noting**(1) 61:21

**now**(45) 5:2 10:3 11:12 11:15 14:8 18:2 19:21 22:18 22:23 26:12 26:17 27:7 31:25 33:3 35:10 36:2 43:3 43:6 43:23 44:22 46:6 47:15 48:20 50:20 51:1 51:23 52:1 53:11 56:25 57:15 59:21 68:11 69:14 71:4 71:9 72:5 79:9 83:11 83:14 85:11 86:8 89:7 89:11 90:20 93:13

**number**(5) 33:25 34:9 42:9 50:12 86:20

**numbers**(2) 34:11 82:12

**obligation**(2) 35:18 55:20

**obligations**(1) 66:5

**obvious**(1) 55:13

**obviously**(12) 9:12 9:14 28:5 36:12 49:3 51:22 56:21 73:10 73:11 81:5 86:1 87:7

**occupied**(1) 63:13

**october**(1) 59:16

**off**(4) 7:20 60:11 65:13 91:12

**off-hand**(1) 72:5

**offended**(1) 86:6

**offensive**(2) 78:13 78:17

**office**(1) 62:25

**officer**(4) 62:17 63:25 64:18 64:19

**official**(1) 3:11

**offset**(2) 26:8 46:4

**ogilvy**(3) 53:6 73:24 74:24

**okay**(54) 6:19 8:13 10:5 13:1 14:19 16:4 17:15 18:9 22:13 24:6 24:11 24:17 24:19 25:9 25:13 26:19 31:12 32:2 34:19 36:18 46:5 47:16 48:11 48:24 49:1 51:9 51:11 52:3 53:10 53:13 59:20 59:22 69:1 73:4 74:25 78:10 78:18 79:19 79:21 80:5 80:13 82:13 85:14 85:20 89:25 90:9 90:10 91:9 92:2 93:7 94:23 95:1 95:11 95:22

**old**(1) 13:24

**once**(3) 39:15 55:22 81:25

| Word | Page:Line |
|---|---|
| one(48) 1:34 2:14 2:26 2:34 6:15 8:4 17:7 17:10 17:11 18:23 19:22 19:22 19:25 26:16 28:23 31:21 33:8 38:14 43:15 44:2 45:3 46:17 50:19 57:24 59:15 62:4 63:9 63:13 64:15 64:20 65:3 65:9 65:19 66:19 68:10 68:24 69:6 71:4 78:2 78:9 78:24 79:22 79:24 81:18 86:1 86:9 86:24 87:16 | |
| ones(3) 30:20 30:21 30:22 | |
| only(35) 12:17 12:23 13:5 13:6 19:11 19:14 19:17 20:2 21:9 21:14 26:6 26:10 27:18 31:21 33:17 37:17 40:5 40:21 44:5 47:10 49:7 52:10 52:11 57:22 62:24 66:7 71:3 75:16 78:11 78:23 79:4 81:17 93:13 94:13 94:17 | |
| ontario(1) 42:18 | |
| onus(3) 55:17 55:18 55:20 | |
| open(2) 83:5 88:25 | |
| opened(1) 78:24 | |
| operating(4) 61:1 66:6 66:15 74:23 | |
| operational(1) 63:14 | |
| operations(1) 66:3 | |
| opinion(4) 28:22 29:3 29:6 75:3 | |
| opportunity(1) 87:23 | |
| opposed(1) 23:8 | |
| opposite(2) 8:19 56:6 | |
| option(6) 31:20 31:20 31:20 31:20 33:14 54:15 | |
| options(1) 36:11 | |
| order(19) 8:18 9:24 10:18 35:4 53:3 65:16 91:3 92:20 93:16 93:20 94:2 94:2 94:3 94:12 94:13 94:22 95:4 96:2 96:3 | |
| orders(1) 10:17 | |
| organized(2) 88:17 88:17 | |
| original(3) 26:13 26:14 26:18 | |
| orlando(38) 6:9 7:25 9:17 10:22 13:4 13:16 15:21 17:18 27:4 39:20 40:5 40:6 40:11 40:19 43:1 46:12 49:15 51:5 51:15 51:18 52:25 54:13 58:2 58:2 58:10 59:13 59:14 60:12 60:13 83:4 87:11 87:23 88:2 88:11 88:14 88:24 92:5 92:9 | |
| orlando's(5) 6:13 8:3 12:9 18:13 49:9 | |
| orlando's(1) 87:20 | |
| other(36) 11:4 11:16 12:1 17:7 18:3 30:4 39:16 45:14 47:19 47:19 48:9 48:10 48:17 48:18 48:21 49:4 55:19 61:17 63:14 65:8 65:11 65:18 66:7 71:23 77:13 77:16 77:21 82:1 82:2 82:8 84:21 86:12 86:15 87:19 89:10 92:14 | |
| others(1) 49:24 | |
| ought(1) 12:21 | |
| our(20) 5:14 6:15 6:18 6:25 8:12 9:17 11:1 12:19 18:20 26:22 38:23 42:13 47:17 54:5 61:15 61:16 74:4 87:11 88:23 89:2 | |
| out(25) 10:15 19:24 23:25 24:9 31:18 32:11 32:19 33:9 41:10 47:3 51:3 62:3 62:8 68:12 70:15 73:10 79:2 82:6 83:16 83:22 94:3 94:11 96:8 96:9 96:9 | |
| outright(1) 31:1 | |
| outside(1) 56:20 | |
| over(23) 14:8 15:14 20:12 28:3 31:13 33:8 35:18 38:10 43:8 43:25 44:23 56:10 57:24 59:21 62:22 71:1 75:15 79:16 84:14 85:19 86:13 90:6 95:24 | |
| overall(2) 26:3 68:1 | |
| overly(1) 2:46 | |
| overpayments(3) 26:9 85:2 86:19 | |
| oversaw(1) 88:5 | |
| own(10) 6:17 6:17 7:12 16:23 17:5 17:6 17:9 19:25 31:23 37:18 | |
| owned(1) 18:24 | |

| Word | Page:Line |
|---|---|
| oxford(1) 2:13 | |
| p.m(3) 90:15 90:15 96:14 | |
| pachulski(1) 3:7 | |
| packet(1) 80:7 | |
| page(24) 10:16 17:13 25:3 25:3 27:3 27:21 27:22 31:15 32:6 34:25 35:3 35:10 48:1 51:12 58:23 71:12 71:16 73:21 74:8 74:16 75:16 80:14 80:20 81:3 | |
| pages(12) 28:3 28:7 31:4 31:14 31:19 73:2 73:8 75:17 80:21 80:24 81:10 82:8 82:9 | |
| paid(7) 21:10 27:6 27:10 55:2 55:2 56:19 86:22 | |
| pain(2) 68:5 73:7 | |
| papers(2) 19:4 21:14 | |
| paragraph(13) 34:23 34:25 48:1 51:14 58:23 59:2 59:3 59:5 61:6 74:13 74:19 77:10 82:7 | |
| paragraphs(1) 77:7 | |
| paraphrasing(2) 19:10 58:12 | |
| pardon(4) 19:6 38:23 50:4 92:8 | |
| parent(4) 13:24 14:7 61:1 66:15 | |
| parent/sub(1) 38:9 | |
| parents(1) 48:6 | |
| park(2) 2:14 2:34 | |
| part(29) 9:5 12:15 13:5 13:6 16:10 17:3 17:23 22:8 25:7 31:3 40:18 41:22 44:24 52:20 54:13 55:7 56:15 56:17 65:7 66:20 68:1 68:21 69:25 72:11 72:16 83:9 83:10 85:4 91:10 | |
| participants(1) 71:24 | |
| particular(4) 11:24 36:12 36:14 68:25 | |
| particularly(1) 71:25 | |
| parties(26) 17:3 24:9 25:12 37:6 37:11 37:19 37:21 40:3 41:14 45:14 45:14 46:6 47:5 58:17 59:9 65:5 65:17 67:16 70:5 70:8 86:12 87:4 92:3 94:12 95:8 | |
| parts(2) 66:19 70:9 | |
| party(19) 3:17 37:17 43:9 45:12 45:12 45:15 45:20 45:23 46:9 46:14 46:17 46:18 50:18 55:23 56:11 56:22 57:21 68:10 78:2 | |
| past(2) 62:14 62:25 | |
| patterson(1) 3:32 | |
| pay(4) 19:12 35:17 84:23 85:2 | |
| paying(1) 86:22 | |
| payment(2) 67:9 86:16 | |
| payments(6) 24:12 84:21 86:12 86:14 86:15 86:21 | |
| peg(2) 3:21 3:22 | |
| pennsylvania(1) 1:42 | |
| pension(3) 2:18 3:26 3:41 | |
| people(18) 6:12 14:8 15:22 16:6 27:25 51:16 51:17 63:10 63:19 71:11 75:18 78:20 87:13 87:18 87:20 87:23 88:9 92:21 | |
| percent(1) 29:13 | |
| perform(1) 50:1 | |
| perhaps(1) 94:21 | |
| period(9) 24:4 65:25 85:2 85:4 86:17 86:20 86:24 86:25 87:3 | |
| periodically(1) 84:23 | |
| periods(2) 86:14 88:21 | |
| permission(2) 40:16 40:16 | |
| person(5) 38:17 57:20 60:24 61:18 62:6 | |
| personally(3) 78:12 78:17 86:6 | |
| perspective(1) 40:9 | |
| peter(2) 3:8 60:7 | |
| piles(1) 86:25 | |
| piper(1) 43:20 | |
| place(6) 23:4 23:5 23:11 59:11 69:24 | |
| plain(1) 40:4 | |
| plan(1) 9:25 | |

| Word | Page:Line |
|---|---|
| play(1) 80:8 | |
| player(1) 45:18 | |
| plays(1) 66:12 | |
| plaza(2) 1:34 2:14 | |
| plea(1) 42:10 | |
| please(6) 5:3 5:5 5:6 8:15 47:22 90:20 | |
| plus(2) 17:9 49:1 | |
| point(34) 6:15 8:23 9:12 12:1 13:19 15:12 15:16 15:16 16:13 17:2 19:1 24:23 27:16 27:19 27:21 27:22 29:13 31:8 31:10 35:25 36:5 37:17 37:23 38:22 40:17 44:21 45:9 47:21 50:7 50:13 54:12 57:24 71:14 78:11 | |
| pointing(1) 51:3 | |
| points(2) 75:13 76:4 | |
| portion(4) 12:9 12:11 71:15 71:23 | |
| position(19) 12:18 19:4 25:24 26:22 27:24 30:25 31:21 33:17 34:5 40:4 40:9 43:7 45:2 49:17 49:22 50:16 51:21 85:23 88:6 | |
| positioning(1) 80:22 | |
| positions(4) 8:3 8:7 29:8 38:6 | |
| positive(1) 34:11 | |
| possession(2) 7:12 15:11 | |
| possible(2) 41:10 84:6 | |
| post-bankruptcy(2) 88:2 88:15 | |
| post-filing(4) 23:15 49:13 63:12 63:16 | |
| powerpoint(2) 10:20 51:14 | |
| powers(1) 52:18 | |
| ppearances(2) 1:21 2:1 | |
| precise(1) 61:18 | |
| predicate(1) 94:22 | |
| preface(1) 84:3 | |
| preference(1) 94:16 | |
| prejudice(2) 81:25 82:1 | |
| prejudiced(1) 77:17 | |
| prejudicial(1) 7:2 | |
| prejudicing(1) 76:21 | |
| preliminary(7) 28:4 28:4 31:18 73:10 73:12 74:20 83:12 | |
| preparation(4) 13:7 13:15 46:18 54:25 | |
| prepare(2) 39:20 39:22 | |
| prepared(9) 6:22 13:4 13:5 27:3 30:10 30:23 36:4 39:25 54:24 | |
| presentation(2) 51:4 51:14 | |
| presentations(1) 88:17 | |
| presented(1) 51:14 | |
| presentment(1) 94:18 | |
| preserve(1) 37:14 | |
| president(2) 38:25 39:8 | |
| president-corporate(1) 62:16 | |
| presumably(2) 28:25 94:5 | |
| pretty(1) 92:1 | |
| previously(1) 14:10 | |
| price(1) 23:3 | |
| pricing(30) 8:6 9:17 20:5 23:4 23:6 23:25 24:10 25:11 25:19 25:22 26:3 27:5 64:23 66:9 66:21 66:23 66:24 66:25 68:9 71:24 72:4 76:2 83:22 84:21 86:11 86:13 86:16 86:21 87:8 88:6 | |
| prior(2) 7:17 31:19 | |
| privacy(1) 75:18 | |
| privilege(56) 6:8 12:22 32:19 32:20 40:18 42:8 42:17 43:7 43:15 43:18 43:23 43:25 44:23 45:7 46:10 46:11 46:15 46:21 46:25 47:2 47:3 47:10 53:17 54:6 54:7 54:7 54:10 54:11 54:11 54:16 55:14 55:17 55:19 55:22 56:6 56:18 58:1 58:6 58:9 58:18 59:1 59:4 59:9 59:14 65:10 65:12 65:18 75:15 76:17 76:21 92:10 92:11 93:2 93:3 | |
| privileged(9) 28:6 40:20 41:4 41:10 43:11 46:22 65:11 74:22 88:22 | |
| pro(1) 33:1 | |

| Word | Page:Line |
|---|---|
| probably(3) 54:21 57:11 58:12 | |
| problem(3) 57:12 92:18 95:7 | |
| problems(1) 59:12 | |
| procedural(1) 93:12 | |
| procedurally(1) 94:12 | |
| procedures(1) 16:24 | |
| proceed(1) 6:20 | |
| proceeding(14) 9:14 20:24 21:3 21:4 40:4 41:15 45:10 45:19 45:21 45:22 52:20 53:22 84:15 93:11 | |
| proceedings(16) 1:17 1:46 6:3 6:24 13:23 14:1 14:2 23:14 39:14 39:15 39:16 87:6 87:10 87:13 93:10 96:19 | |
| process(6) 17:4 17:5 84:16 95:19 95:19 95:23 | |
| produce(8) 41:22 42:7 42:20 43:13 44:4 81:24 88:21 91:1 | |
| produced(22) 1:47 10:20 11:6 12:2 12:6 12:16 43:17 44:6 44:10 45:1 45:1 45:4 49:2 49:4 58:4 58:9 59:15 59:15 65:3 65:5 76:15 77:13 | |
| producing(3) 41:21 41:25 65:10 | |
| production(15) 5:11 6:2 10:19 11:2 11:4 11:19 12:4 26:23 58:18 64:25 65:3 65:9 81:15 91:9 92:3 | |
| profit(3) 25:10 25:17 67:3 | |
| profits(3) 20:6 22:3 22:11 | |
| promote(1) 90:8 | |
| properly(2) 7:13 24:3 | |
| property(3) 7:9 66:20 66:24 | |
| propose(4) 69:4 82:19 82:25 93:16 | |
| pros(4) 31:24 32:3 32:25 81:1 | |
| protected(2) 12:22 76:18 | |
| protection(1) 15:4 | |
| protective(1) 9:24 | |
| protocol(3) 9:1 10:24 12:11 | |
| prove(1) 55:17 | |
| provide(2) 27:23 49:25 | |
| provided(3) 10:25 34:25 92:4 | |
| provides(1) 76:1 | |
| providing(2) 50:11 50:11 | |
| provision(1) 55:25 | |
| pulled(1) 11:23 | |
| purpose(6) 21:3 21:4 49:16 66:18 74:14 92:15 | |
| purposes(1) 61:15 | |
| pursue(1) 85:8 | |
| pushing(1) 86:4 | |
| put(22) 14:8 17:16 18:2 20:3 23:24 43:6 44:8 46:16 47:17 52:1 54:20 57:4 57:5 59:8 59:11 61:4 61:16 68:11 87:11 93:25 94:13 96:3 | |
| putting(1) 59:13 | |
| quarter(3) 83:15 89:7 90:7 | |
| question(30) 6:8 11:10 15:23 16:1 16:7 21:18 28:8 28:17 29:16 29:16 29:18 29:21 30:3 36:6 36:20 41:18 42:24 49:8 50:19 53:5 63:22 66:7 68:1 68:11 68:22 71:14 71:22 73:7 75:1 75:21 76:24 | |
| questioning(1) 62:6 | |
| questions(6) 42:22 59:23 60:1 60:9 62:5 66:9 | |
| quickly(4) 52:9 71:11 71:12 80:21 | |
| quite(5) 8:8 8:19 52:1 64:6 83:22 | |
| quresi(1) 3:12 | |
| raise(2) 46:7 87:5 | |
| rather(3) 42:8 94:18 94:24 | |
| rea(1) 76:12 | |
| reached(1) 19:15 | |

| Word | Page:Line |
|------|-----------|

read(14) 7:5 12:24 12:25 35:5 59:4 59:21 73:10 73:15 81:9 91:7 91:11 91:13 91:18 92:25
ready(1) 49:13
real(3) 31:6 31:7 95:9
reallocation(1) 25:21
really(16) 10:17 13:21 16:7 17:17 28:20 41:12 47:1 48:14 56:5 59:4 66:19 67:5 69:14 76:4 77:8 90:5
reason(17) 6:6 12:2 27:14 31:10 32:17 41:24 41:25 46:9 46:23 55:14 69:16 77:8 77:24 77:25 78:21 81:19 90:24
reasonable(1) 83:16
reasons(1) 65:12
recall(2) 26:21 40:1
received(3) 7:17 26:9 75:25
recess(2) 90:15 96:12
recipient(1) 58:11
recognized(2) 68:17 94:13
recommendations(3) 33:9 81:4 81:6
record(37) 11:19 13:10 24:25 25:2 26:13 26:14 26:15 32:7 35:10 35:11 39:22 40:21 43:4 47:21 51:10 51:13 58:21 60:13 61:9 62:11 63:9 63:11 64:2 64:4 65:23 66:2 74:5 74:8 84:7 85:21 85:25 87:24 88:20 93:10 93:24 93:25 96:2
recorded(1) 1:46
recording(2) 1:46 96:18
records(4) 6:17 7:9 27:3 42:5
recover(2) 71:15 71:23
red(1) 59:18
redacted(10) 10:25 26:12 47:18 70:17 71:19 72:24 80:25 81:16 81:17 82:9
reed(2) 2:12 4:4
reference(3) 47:22 72:3 87:9
references(2) 67:2 67:4
referred(4) 12:7 16:25 36:9 84:25
referring(1) 11:12
refers(1) 67:4
reflected(1) 35:21
refuse(1) 30:21
refused(3) 26:23 27:23 30:21
regard(1) 8:5
regarding(6) 6:9 9:16 14:1 45:22 50:1
regardless(1) 94:17
reichert(1) 76:1
reinforces(1) 26:1
reject(2) 30:25 31:5
rejected(1) 31:2
relate(3) 6:8 7:8 87:1
related(18) 10:17 11:5 11:19 12:1 12:3 12:4 12:21 21:24 48:2 48:11 67:22 68:2 76:25 78:8 81:25 82:18 92:4 95:10
relates(5) 6:24 6:25 19:2 68:4 87:14
relating(1) 9:13
relation(1) 69:21
relationship(5) 13:25 14:8 38:9 38:16 36:2 43:16 44:7
relevant(8) 12:15 30:6 30:24 31:4 31:11 36:2 43:16 44:7
relief(5) 7:14 7:23 11:3 12:13 12:20
rely(2) 56:11 93:15
relying(1) 56:20
remaining(3) 63:10 66:4 82:8
remarked(1) 62:17
reminded(1) 45:10
renault(3) 53:6 73:24 74:24
reorganized(2) 4:8 4:8
repatriated(2) 22:10 22:16
repeat(1) 53:24
repeating(1) 54:12
reply(6) 24:24 34:22 34:22 58:15 58:21 58:21

report(8) 15:21 16:1 34:22 38:16 75:25 75:25 87:21 88:3
reported(7) 16:5 38:15 51:18 60:12 60:15 60:22 60:24
reporting(6) 18:3 49:9 49:16 49:20 50:14 89:4
reps(1) 4:5
request(4) 9:2 39:25 76:19 94:21
requested(2) 35:4 74:24
require(1) 25:21
required(2) 72:2 72:12
requirement(1) 35:17
requiring(1) 10:18
research(3) 4:8 4:9 66:17
reserved(1) 93:4
residual(3) 25:10 25:16 67:3
resolve(1) 79:3
resolved(1) 90:19
respect(31) 6:2 6:13 6:14 7:2 8:3 8:4 11:25 12:13 15:5 34:6 41:13 44:15 47:17 49:17 50:8 50:13 54:8 61:5 62:8 66:24 67:1 77:13 82:1 84:21 86:7 87:22 88:1 88:5 88:15 88:22 90:1
respectful(2) 11:1 12:19
respond(2) 31:8 31:14
respondent(2) 62:11
responding(1) 51:10
response(6) 25:24 27:17 34:13 34:23 35:12 49:8
responsibilities(2) 8:5 89:3
rest(1) 71:11
result(5) 12:10 12:17 23:11 23:13 23:16
resulted(2) 65:9 67:16
resumed(1) 90:20
retained(1) 46:20
returns(2) 25:20 25:22
revenue(8) 22:12 22:13 22:15 22:19 22:22 26:2 67:23 69:19
review(1) 12:15
reviewed(1) 23:6
revised(1) 25:21
richards(1) 2:24
right(97) 5:10 5:16 6:5 6:11 9:4 9:9 9:19 10:8 14:4 14:14 16:9 16:12 17:15 17:24 17:25 18:11 18:22 19:3 20:8 22:1 22:11 22:18 22:25 24:14 24:21 25:7 27:13 28:11 28:20 29:6 30:4 31:16 31:22 32:5 32:22 32:24 33:21 35:2 36:1 36:15 36:18 39:23 40:7 40:24 41:9 43:22 44:16 45:6 45:8 46:8 47:14 47:16 49:6 50:9 51:13 51:22 52:21 53:4 54:23 56:9 56:25 57:11 57:15 59:6 59:17 60:6 61:6 64:14 65:21 70:20 72:21 73:7 80:3 80:7 82:16 83:2 83:23 84:1 84:5 85:22 85:22 85:24 86:21 87:9 89:6 90:10 90:14 91:20 92:3 92:16 93:8 93:19 93:21 94:7 94:15 95:3 95:20
rights(3) 37:14 66:20 93:4
rise(5) 5:2 5:5 26:7 78:4 90:16
robert(1) 2:33
rodney(2) 2:7 2:26
role(11) 6:13 8:3 8:11 9:16 30:15 30:19 49:9 51:24 52:15 55:1 62:25
roles(5) 62:22 63:13 87:21 88:4 89:3
room(3) 71:11 79:2 92:18
rooney(1) 2:38
rose(1) 53:6
rosenmann(1) 3:47
routine(2) 25:20 25:21
rpsm(6) 25:8 25:9 66:10 67:3 67:14 87:9

ruby(146) 9:20 9:21 41:25 42:4 42:13 42:16 43:3 43:10 48:3 48:4 48:12 48:16 50:20 52:4 52:5 52:9 52:17 52:22 52:24 55:18 60:5 60:7 60:7 60:18 60:21 60:23 62:20 62:22 63:4 63:6 63:8 63:18 63:23 64:2 64:9 64:12 64:15 64:19 65:15 65:22 66:25 67:11 67:14 67:21 67:25 68:9 68:17 69:2 69:11 69:16 69:22 70:2 70:7 70:15 70:21 70:24 71:3 71:7 71:10 71:18 71:21 72:9 72:11 72:14 72:17 72:20 72:22 73:1 73:3 73:5 73:13 73:18 73:22 74:2 74:4 74:7 74:11 74:13 74:16 74:19 75:1 75:5 75:7 75:13 76:9 76:14 76:22 77:3 77:6 77:11 77:15 77:19 77:21 78:2 78:5 78:23 79:7 79:10 79:17 79:21 80:5 80:8 80:12 80:16 80:19 80:24 81:11 81:23 82:8 82:14 82:17 82:25 83:3 83:9 84:3 84:6 89:10 89:13 89:15 89:17 89:19 89:22 89:24 90:22 91:1 91:9 91:15 91:18 91:22 92:2 92:8 92:14 93:12 93:20 93:22 93:25 94:6 94:9 95:3
rudy(1) 42:2
rule(1) 75:7
run(3) 18:8 18:10 52:20
rush(1) 58:17
rushed(1) 59:9
said(43) 8:25 9:6 11:25 14:4 14:7 16:4 19:6 20:6 21:7 26:6 27:2 27:7 27:8 27:10 27:11 27:17 27:22 29:14 38:8 38:9 39:9 39:10 40:1 42:22 43:10 47:14 53:18 55:4 55:5 55:9 55:16 57:20 61:9 61:15 62:5 63:16 63:19 69:17 82:25 83:24 84:6 86:18 95:8
sake(2) 14:23 43:18
sale(2) 50:1 50:2
sales(2) 49:14 66:2
same(24) 10:16 11:8 11:24 12:2 13:9 17:13 17:13 21:24 41:8 46:7 50:24 53:21 55:14 56:6 57:12 59:25 81:8 82:22 83:3 85:4 87:20 88:6 91:23 93:18
sameer(1) 3:26
samis(1) 2:25
sanbury's(1) 46:4
sat(1) 62:5
satisfactory(1) 90:2
satisfy(1) 73:11
saved(1) 89:1
saw(3) 10:1 13:13 61:3
say(66) 9:20 10:1 12:2 12:16 14:16 15:13 17:11 18:3 19:2 19:9 19:17 20:2 21:13 22:3 24:6 25:25 28:19 30:4 31:3 31:17 32:25 33:4 33:5 33:17 41:3 41:4 41:12 41:16 42:2 43:20 44:9 46:8 46:11 46:24 46:25 49:12 49:20 49:24 50:3 52:10 53:16 54:8 54:19 55:1 55:24 56:6 56:25 57:20 58:4 58:9 58:12 58:12 60:20 64:20 65:6 66:10 67:7 67:10 68:2 73:20 76:25 77:12 81:2 82:4 93:5 94:1
saying(10) 9:2 24:7 33:22 40:22 44:25 69:8 76:9 85:1 86:9 87:5
says(17) 25:7 28:5 33:20 48:8 48:17 51:13 58:5 58:7 69:13 71:14 71:21 72:11 73:6 74:20 83:11 92:13 93:2
scenario(1) 34:2
scenarios(3) 35:15 36:8 36:9
schedule(1) 42:18
scheduled(1) 10:25
scheme(1) 84:2
schuylkill(1) 1:41

schweitzer(42) 1:32 5:20 5:20 5:21 5:22 6:1 6:6 6:12 6:20 7:7 8:11 8:16 8:24 9:2 9:7 9:12 10:5 10:7 10:9 83:18 83:18 83:19 84:12 85:14 85:17 85:20 85:24 86:3 86:5 89:5 90:3 90:5 90:12 92:23 92:24 93:7 94:8 94:10 94:16 94:23 95:1
sealed(4) 12:10 12:12 12:17 69:5
searched(1) 88:20
seated(4) 5:3 5:7 90:17 90:21
second(9) 7:25 9:12 11:4 25:6 27:22 59:22 63:2 66:20 79:8
seconds(1) 95:6
see(30) 5:7 5:7 11:13 11:16 11:20 25:4 27:3 28:18 33:16 34:7 34:21 35:4 35:11 48:22 51:20 51:20 51:22 53:9 53:12 67:2 67:4 72:1 72:11 72:15 72:17 72:19 79:2 80:3 81:1 82:6
seek(1) 12:13
seeking(4) 7:10 10:18 11:2 12:4
seem(2) 75:17 82:6
seen(5) 16:25 33:2 42:18 50:23 80:25
segregating(1) 10:2
selinda(1) 4:20
sell(2) 37:12 39:11
selling(1) 16:20
send(4) 93:16 93:17 94:3 94:4
senior(1) 62:16
sense(2) 38:14 88:12
sent(3) 13:9 13:15 48:9
separate(1) 63:18
serious(1) 15:17
service(2) 1:40 1:47
services(1) 1:40 55:2
servicing(1) 66:4
session(1) 5:2
set(3) 10:15 82:17 86:25
set-off(1) 68:20
setoff(1) 19:5
setout(1) 19:5
settle(4) 37:13 70:8 78:20 85:3
settled(13) 69:10 69:11 70:5 70:7 70:13 70:23 76:20 86:19 94:1 94:2 95:14 95:16 96:2
settlement(20) 19:15 20:2 21:24 22:10 22:10 22:23 31:22 33:18 38:3 67:22 68:1 69:18 69:23 70:1 72:8 72:9 72:10 72:12 72:16 80:9
several(2) 67:12 69:23
shakra(1) 3:44
shall(3) 92:9 92:10 92:19
share(3) 67:9 68:12 73:7
sharing(1) 68:4
shawn(1) 27:4
shock(1) 90:23
short(1) 66:16
shortly(1) 82:5
shot(1) 78:6
should(19) 6:14 14:10 23:7 29:14 30:20 30:21 31:5 38:17 40:16 42:24 44:10 55:16 68:23 76:17 77:8 79:9 79:12 81:2 92:12
shoulder(1) 71:2
shouldn't(2) 38:18 44:21
show(6) 28:17 31:20 45:16 55:18 55:20 55:20
shown(2) 72:24 80:14
shows(3) 17:8 31:23 33:14
side(7) 22:16 22:17 25:7 33:23 56:6 76:16 78:21
sideways(3) 30:8 30:9 45:9
sign(3) 93:20 94:4 94:5
signatories(1) 67:1
signed(2) 66:14 84:20
significant(2) 18:20 35:15

| Word | Page:Line |
|------|-----------|
| signing(1) 95:24 | |
| silence(1) 89:2 | |
| simple(3) 24:22 40:4 46:15 | |
| simplest(1) 23:24 | |
| since(4) 9:13 17:10 35:9 52:6 | |
| single(3) 46:16 46:24 57:19 | |
| sir(1) 60:16 | |
| sit(2) 18:10 41:6 | |
| sitting(1) 41:4 | |
| situation(3) 16:16 43:21 53:1 | |
| sixteen(4) 13:24 15:4 37:24 52:25 | |
| slavens(1) 4:24 | |
| slice(1) 45:19 | |
| slide(2) 71:18 73:5 | |
| slides(1) 73:9 | |
| slightly(2) 74:7 92:6 | |
| slot(1) 73:4 | |
| small(1) 36:5 | |
| snapback(1) 87:2 | |
| sold(1) 16:21 | |
| solely(1) 87:1 | |
| solicitor(1) 32:20 | |
| solicitor/client(1) 75:14 | |
| solve(1) 78:1 | |
| some(26) 10:6 17:18 45:4 47:9 48:18 50:12 52:1 52:6 52:11 58:2 58:10 60:9 63:14 65:22 66:3 66:4 66:8 75:10 78:7 82:23 83:9 83:11 84:10 89:2 91:4 95:24 | |
| somebody(2) 17:21 38:15 | |
| somehow(2) 46:19 58:11 | |
| someone(5) 39:9 39:9 39:10 40:17 56:15 | |
| something(14) 9:7 11:8 16:20 13:20 14:5 27:8 30:6 46:8 49:5 51:1 61:25 73:15 79:24 94:25 | |
| sometimes(1) 85:15 | |
| somewhere(4) 20:10 42:5 61:3 75:11 | |
| sophisticated(1) 48:25 | |
| sorry(11) 22:15 24:19 26:16 47:7 57:8 67:19 71:13 71:16 74:3 75:20 80:25 | |
| sort(3) 82:23 91:11 94:22 | |
| sought(2) 6:6 7:23 | |
| sound(2) 1:46 96:18 | |
| sounded(1) 82:10 | |
| spanish(1) 34:15 | |
| speaking(1) 9:10 | |
| specialist(1) 61:20 | |
| specific(2) 85:1 85:7 | |
| specifically(2) 12:8 12:20 | |
| spent(1) 78:22 | |
| split(3) 25:10 25:17 67:3 | |
| spring-back(1) 87:5 | |
| square(2) 2:7 2:26 | |
| stake(1) 84:25 | |
| stand(3) 38:2 85:21 96:11 | |
| standing(2) 42:4 63:10 | |
| stands(1) 16:11 | |
| stang(1) 3:7 | |
| stargatt(1) 2:4 | |
| starkness(1) 34:21 | |
| start(2) 52:15 60:8 | |
| started(1) 76:9 | |
| starting(2) 25:6 58:22 | |
| starts(1) 72:17 | |
| stated(1) 50:22 | |
| statement(1) 41:2 | |
| statements(4) 83:21 84:9 86:9 89:3 | |
| states(4) 1:1 1:19 7:9 20:7 | |
| stating(1) 47:4 | |
| stayed(1) 15:9 | |
| ste(2) 2:20 2:40 | |
| steen(1) 1:31 | |
| step(6) 30:8 30:9 45:9 79:2 82:5 86:9 | |
| steps(2) 37:7 37:13 | |
| stick(1) 56:13 | |
| still(6) 66:3 66:3 66:6 72:14 73:3 81:22 | |
| stop(2) 47:17 79:22 | |

| Word | Page:Line |
|------|-----------|
| stopped(1) 43:22 | |
| stopping(1) 79:23 | |
| straight(1) 16:3 | |
| strategizing(2) 81:2 81:3 | |
| strategy(2) 75:15 75:19 | |
| strauss(2) 2:31 3:11 | |
| street(6) 1:11 1:41 2:8 2:27 4:12 4:12 | |
| structure(1) 14:18 | |
| stuff(1) 75:10 | |
| sub(2) 39:2 39:3 | |
| subject(8) 59:23 66:12 68:13 68:14 68:24 70:6 87:17 92:11 | |
| submission(4) 11:1 12:19 54:5 82:10 | |
| submissions(4) 6:22 8:1 59:24 82:11 | |
| submit(1) 94:17 | |
| submitted(1) 87:24 | |
| subsidiary(3) 13:25 14:8 38:24 | |
| such(1) 66:6 | |
| suggest(2) 53:2 64:23 | |
| suggesting(4) 7:5 38:16 81:23 82:2 | |
| suggestion(1) 78:11 | |
| suggests(1) 48:18 | |
| sum(1) 93:14 | |
| summary(1) 74:21 | |
| super(1) 52:13 | |
| superior(1) 50:15 | |
| supply(1) 63:15 | |
| suppose(2) 60:5 68:22 | |
| supposed(1) 30:16 | |
| supposition(1) 41:2 | |
| sure(14) 7:1 23:21 29:5 33:1 45:25 48:4 49:25 52:8 82:17 84:17 88:19 89:1 90:8 91:15 | |
| surely(1) 29:23 | |
| surprised(1) 75:9 | |
| surprisingly(1) 57:20 | |
| sympathetic(1) 83:19 | |
| system(4) 24:10 59:11 86:11 87:8 | |
| tab(6) 25:3 58:22 58:25 58:25 62:12 74:8 | |
| tabatabal(1) 4:5 | |
| table(1) 61:16 | |
| tabs(1) 57:4 | |
| take(20) 30:8 37:13 45:8 64:24 71:12 76:22 77:1 77:15 78:2 78:16 79:2 79:10 82:19 82:25 83:20 83:23 84:10 88:14 91:5 92:16 | |
| taken(3) 14:10 38:7 51:24 | |
| takes(2) 40:4 78:12 | |
| taking(7) 7:20 8:3 43:7 52:6 52:15 54:4 95:17 | |
| talk(4) 40:10 57:25 68:15 79:16 | |
| talked(3) 26:11 65:7 71:25 | |
| talking(4) 11:15 39:7 65:25 87:13 | |
| talks(1) 62:13 | |
| tammy(1) 96:23 | |
| tango(2) 47:5 78:12 | |
| tax(16) 21:24 21:25 26:1 28:1 28:1 64:22 64:23 66:6 68:16 68:16 68:18 68:19 69:24 70:7 72:10 88:5 | |
| taxation(4) 20:22 23:5 23:12 23:12 | |
| tay(3) 51:20 53:9 75:10 | |
| taylor(1) 2:4 | |
| teacher(1) 91:25 | |
| team(4) 56:12 56:16 56:17 57:21 | |
| telephonic(3) 2:44 3:1 4:1 | |
| tell(22) 14:17 32:9 33:19 38:17 38:19 38:20 40:2 40:19 40:20 42:4 48:3 52:12 62:4 62:6 69:20 70:2 71:5 72:6 72:15 77:16 81:11 93:15 | |
| telling(3) 43:3 87:18 88:1 | |
| tells(1) 74:16 | |
| tend(1) 78:3 | |
| term(1) 50:12 | |
| terminology(2) 40:24 66:13 | |
| terms(3) 23:24 72:17 88:8 | |

| Word | Page:Line |
|------|-----------|
| terrific(2) 30:18 30:19 | |
| test(3) 47:5 54:10 55:7 | |
| testified(1) 88:3 | |
| testify(1) 88:24 | |
| testimony(6) 92:5 92:7 92:8 92:12 92:13 92:14 | |
| than(12) 29:13 30:4 38:25 41:2 48:13 58:13 63:14 65:18 78:2 81:17 94:18 94:24 | |
| thank(27) 10:8 10:9 10:12 13:2 24:19 46:5 52:24 56:9 59:25 60:3 64:12 64:14 71:9 80:5 84:12 85:14 89:5 89:6 89:25 90:10 90:12 92:24 95:25 96:6 96:7 96:10 96:11 | |
| thanks(1) 53:13 | |
| that(301) 6:3 6:6 6:23 7:1 7:4 7:5 7:7 7:10 7:10 7:13 7:14 7:14 7:19 7:21 7:22 7:22 7:22 7:23 8:8 8:8 8:18 8:22 8:23 9:1 9:1 9:5 9:8 9:13 9:14 9:15 9:19 9:20 10:4 10:7 10:18 10:23 10:24 11:5 11:7 11:14 11:20 11:21 11:22 11:23 12:5 12:11 12:13 12:15 12:16 12:22 13:2 13:2 13:3 13:4 13:5 13:8 13:10 13:13 13:19 13:20 13:25 14:11 14:17 15:3 16:3 16:5 16:11 16:13 16:25 17:5 17:7 17:8 17:11 17:17 17:18 17:22 17:23 18:2 18:4 18:7 18:8 18:10 19:2 19:7 19:9 19:14 19:15 19:20 19:15 19:19 19:19 19:22 19:22 19:23 20:3 20:10 20:17 20:25 21:1 21:8 21:9 21:9 21:11 21:11 21:13 21:18 21:23 22:5 22:8 22:11 22:16 23:3 23:4 23:6 23:11 23:13 23:15 23:15 23:16 23:24 24:4 24:7 24:18 24:20 24:23 24:23 24:25 25:4 26:7 26:10 26:10 26:10 26:11 26:13 26:24 27:11 27:16 27:23 27:25 28:5 28:5 28:17 28:20 28:21 29:4 29:12 29:13 29:14 29:16 30:1 30:3 30:6 30:7 30:17 30:20 30:21 31:5 31:7 31:10 31:21 31:21 31:25 32:1 32:14 32:23 33:6 33:18 33:20 33:23 34:7 34:14 34:23 35:5 35:8 35:11 35:18 36:16 37:9 37:12 37:21 38:2 38:5 38:5 38:11 38:16 38:17 38:19 38:20 38:20 38:21 39:11 39:18 39:21 39:25 40:3 40:5 40:6 40:7 40:8 40:15 40:19 40:22 40:22 40:25 41:7 41:10 41:19 42:1 42:13 42:15 42:16 42:22 43:2 43:4 43:6 43:7 43:8 43:8 43:12 43:14 43:21 43:22 43:23 43:24 44:6 44:7 44:7 44:8 44:14 44:18 44:20 44:20 44:22 44:25 45:1 45:2 45:3 45:23 45:25 46:6 46:8 46:15 46:20 46:21 46:22 46:24 46:25 46:25 47:22 47:23 48:13 48:18 48:22 48:25 49:2 49:4 49:4 49:5 49:8 49:11 50:1 50:5 50:22 50:23 51:4 51:9 51:12 51:13 51:16 51:17 51:18 52:14 52:23 53:1 54:5 54:8 55:1 55:4 55:5 55:8 55:12 55:12 55:15 55:18 55:21 55:25 56:8 56:10 56:10 56:13 57:9 57:10 57:22 58:1 58:3 58:10 58:16 58:17 58:19 59:14 59:18 | |
| that's(46) 9:6 9:11 10:7 11:3 12:3 12:4 12:16 13:8 13:18 13:25 17:21 18:17 18:24 19:14 19:16 21:14 21:15 22:15 23:10 24:16 24:21 25:23 27:25 29:14 29:18 30:15 31:23 32:18 33:1 33:23 34:1 34:18 35:7 35:8 35:19 36:1 37:20 37:20 38:8 40:17 45:8 46:10 47:9 49:17 50:2 51:10 | |
| that's(45) 54:10 54:20 56:4 56:12 56:22 56:23 58:16 59:10 61:2 61:6 61:16 62:19 63:2 65:16 67:17 68:13 68:24 70:13 72:3 72:18 72:20 73:8 74:2 75:10 76:14 77:25 79:19 80:1 80:16 80:17 80:18 82:2 82:24 83:7 85:9 86:1 88:22 93:5 93:23 94:2 94:6 94:10 94:20 95:2 95:21 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) 1:1 1:2 1:18 2:4 2:24 5:2 5:5 5:6 5:11 5:13 5:17 5:18 5:19 5:19 5:22 5:23 5:23 5:25 6:1 6:2 6:2 6:3 6:3 6:3 6:4 6:5 6:6 6:7 6:7 6:8 6:9 6:10 6:11 6:14 6:15 6:16 6:19 6:22 6:24 7:2 7:3 7:3 7:5 7:6 7:7 7:8 7:9 7:10 7:11 7:11 7:16 7:17 7:17 7:18 7:19 7:19 7:20 7:20 7:22 7:23 8:1 8:2 8:2 8:2 8:6 8:7 8:8 8:19 8:23 8:24 8:24 8:25 8:25 9:1 9:2 9:5 9:6 9:8 9:12 9:13 9:16 9:23 9:24 9:24 9:25 10:1 10:1 10:2 10:9 10:14 10:15 10:16 10:16 10:18 10:19 10:19 10:20 10:21 10:23 10:24 11:2 11:3 11:4 11:5 11:7 11:8 11:16 11:18 11:19 11:20 11:21 11:21 11:24 12:2 12:5 12:8 12:9 12:10 12:11 12:11 12:13 12:13 12:15 12:17 12:18 12:20 12:21 12:22 12:23 12:23 12:25 13:1 13:4 13:5 13:7 13:9 13:10 13:13 13:15 13:15 13:17 13:19 13:20 13:23 14:2 14:16 14:18 14:20 14:20 14:23 14:25 15:4 15:5 15:5 15:6 15:8 15:10 15:12 15:13 15:14 15:15 15:16 15:18 15:22 15:23 16:2 16:4 16:5 16:7 16:10 16:13 16:14 16:17 16:18 16:20 16:24 16:24 16:25 16:25 17:2 17:3 17:4 17:4 17:5 17:7 17:7 17:11 17:12 17:12 17:13 17:13 17:16 17:18 17:19 17:25 18:4 18:4 18:8 18:10 18:13 18:13 18:14 18:15 18:18 18:20 18:21 18:24 18:25 18:25 19:1 19:3 19:4 19:5 19:7 19:9 19:11 19:11 19:14 19:15 19:16 19:16 19:17 19:22 19:23 19:23 19:25 20:1 20:1 20:2 20:2 20:5 20:6 20:6 20:7 20:15 20:17 20:21 20:22 20:23 20:23 20:23 20:24 21:1 21:2 21:3 21:3 21:4 21:6 21:7 21:8 21:11 21:12 21:14 21:15 21:16 21:20 21:20 21:21 21:24 21:24 21:24 21:25 22:4 22:4 22:5 22:6 22:9 22:10 22:16 22:17 22:20 22:22 22:25 23:1 23:1 23:2 23:3 23:5 23:10 23:11 23:12 23:12 23:16 23:18 23:18 23:19 23:20 23:20 23:22 23:22 23:23 23:25 23:25 23:25 24:7 24:9 24:9 24:12 24:23 | | **the**(301) 24:23 24:24 24:25 25:3 25:3 25:3 25:6 25:6 25:7 25:7 25:7 25:8 25:8 25:10 25:11 25:11 25:19 25:19 25:20 25:22 25:24 25:24 25:25 25:25 26:1 26:1 26:2 26:3 26:3 26:5 26:5 26:5 26:6 26:8 26:10 26:12 26:13 26:13 26:14 26:18 26:21 27:2 27:3 27:4 27:14 27:15 27:16 27:16 27:16 27:17 27:20 27:21 27:22 27:22 27:23 28:1 28:1 28:2 28:3 28:5 28:6 28:11 28:16 28:17 28:18 28:21 28:21 28:21 29:4 29:12 29:21 30:3 30:5 30:6 30:7 30:10 30:13 30:15 30:17 30:17 30:19 30:20 30:20 30:21 30:22 30:22 30:23 30:23 30:24 30:25 31:1 31:1 31:1 31:2 31:3 31:4 31:5 31:5 31:7 31:13 31:15 31:19 31:21 31:24 32:3 32:6 32:7 32:16 32:17 32:18 33:14 33:14 33:15 33:16 33:17 33:18 33:22 33:23 33:23 33:25 34:1 34:1 34:5 34:5 34:8 34:9 34:12 34:13 34:21 34:22 34:22 34:23 35:1 35:3 35:4 35:7 35:10 35:11 35:12 35:16 35:16 35:17 35:18 35:24 36:1 36:3 36:3 36:3 36:19 36:22 36:23 37:5 37:6 37:6 37:9 37:11 37:11 37:11 37:12 37:13 37:14 37:17 37:18 37:18 37:19 37:20 37:21 37:21 37:23 37:24 38:4 38:7 38:8 38:9 38:10 38:11 38:11 38:13 38:15 38:15 38:16 38:24 38:24 38:25 39:5 39:5 39:5 39:7 39:8 39:8 39:8 39:9 39:10 39:12 39:13 39:14 39:16 39:16 39:22 39:22 39:25 39:25 40:3 40:4 40:4 40:6 40:9 40:11 40:12 40:13 40:14 40:17 40:19 40:21 40:21 40:23 40:25 40:25 41:2 41:4 41:7 41:7 41:8 41:8 41:8 41:11 42:5 42:5 42:8 42:11 42:17 42:19 42:25 43:1 43:2 43:2 43:3 43:4 43:7 43:9 43:16 43:18 44:5 44:6 44:7 44:7 44:10 44:15 44:17 44:21 44:21 45:1 45:1 45:3 45:7 45:9 45:11 45:12 45:13 45:14 45:15 45:15 45:16 45:17 45:18 45:20 45:22 45:22 46:7 46:8 46:13 46:13 46:16 46:18 46:19 46:22 47:3 47:3 47:10 47:12 47:12 47:17 47:18 47:18 47:19 47:19 47:21 47:23 47:25 47:25 48:1 48:5 48:6 | | **the**(301) 48:6 48:9 48:9 48:9 48:10 48:12 48:14 48:18 49:2 49:7 49:7 49:8 49:12 49:12 49:16 49:16 49:17 49:21 49:23 49:23 49:24 50:10 50:11 50:15 50:15 50:17 50:18 50:22 50:23 50:24 50:24 50:25 50:25 51:4 51:4 51:5 51:7 51:10 51:13 51:13 51:15 51:16 51:20 51:21 51:22 51:24 51:25 51:25 52:10 52:10 52:11 52:12 52:15 52:15 52:16 52:17 52:18 52:18 52:18 52:20 52:25 53:1 53:2 53:3 53:5 53:8 53:8 53:15 53:19 53:21 54:3 54:9 54:10 54:12 54:13 54:14 54:17 54:19 54:25 55:2 55:3 55:6 55:8 55:9 55:11 55:13 55:13 55:14 55:15 55:15 55:17 55:17 55:18 55:19 55:20 55:21 55:22 55:25 56:4 56:6 56:6 56:6 56:10 56:10 56:12 56:12 56:15 56:15 56:16 56:19 56:21 56:22 56:22 56:23 56:25 57:5 57:12 57:20 57:21 57:22 57:25 58:1 58:2 58:8 58:8 58:9 58:11 58:13 58:14 58:15 58:16 58:18 58:18 58:20 58:21 58:21 58:23 59:1 59:8 59:9 59:12 59:13 59:14 60:2 60:7 60:9 60:10 60:11 60:12 60:13 60:14 60:14 60:16 60:19 60:24 61:1 61:8 61:9 61:16 61:16 61:17 61:24 62:6 62:7 62:11 62:12 62:12 62:14 62:23 63:1 63:2 63:8 63:9 63:11 63:11 63:13 63:19 63:24 64:2 64:4 64:16 64:17 64:20 64:21 64:23 64:25 65:3 65:7 65:9 65:11 65:12 65:13 65:16 65:17 65:17 65:23 65:23 65:24 65:25 66:2 66:7 66:7 66:9 66:9 66:12 66:12 66:13 66:14 66:15 66:15 66:17 66:18 66:19 66:20 66:20 67:1 67:2 67:3 67:4 67:5 67:7 67:8 67:9 67:9 67:10 67:14 67:15 67:16 67:16 67:16 67:17 67:19 67:21 67:21 67:22 67:22 68:1 68:2 68:3 68:3 68:4 68:5 68:7 68:10 68:11 68:12 68:13 68:15 68:17 68:21 68:21 68:22 68:24 69:2 69:3 69:6 69:9 69:9 69:11 69:14 69:16 69:16 69:18 69:19 69:23 69:23 69:24 69:25 70:3 70:3 70:3 70:5 70:7 70:8 70:11 70:12 70:15 70:16 70:21 70:22 70:23 71:3 71:4 71:11 71:11 71:11 71:12 71:13 71:13 71:14 71:18 71:19 71:21 71:21 71:23 71:24 71:24 72:2 72:3 | | **the**(237) 72:3 72:3 72:3 72:4 72:5 72:8 72:9 72:12 72:12 72:14 72:16 72:17 72:18 72:18 72:20 72:24 73:5 73:7 73:9 73:10 73:11 73:17 73:22 73:24 74:2 74:8 74:8 74:9 74:11 74:13 74:14 74:19 74:20 74:21 74:23 74:23 75:4 75:7 75:8 75:10 75:15 75:17 75:18 75:19 75:21 75:22 76:2 76:4 76:5 76:12 76:16 76:16 76:18 76:23 77:7 77:8 77:22 77:25 78:11 78:15 78:23 78:24 79:1 79:2 79:4 79:8 79:8 79:11 80:1 80:8 80:8 80:8 80:9 80:9 80:16 80:17 80:20 80:25 80:25 81:1 81:4 81:4 81:5 81:6 81:6 81:8 81:9 81:9 81:15 81:16 81:17 81:18 81:24 82:5 82:7 82:7 82:8 82:11 82:12 82:14 82:18 82:19 82:22 83:3 83:3 83:3 83:5 83:5 83:11 83:18 83:21 84:2 84:13 84:15 84:16 84:17 84:18 84:24 84:25 85:1 85:2 85:7 85:7 85:9 85:13 85:15 85:19 85:21 85:22 85:24 85:25 86:2 86:10 86:17 86:17 86:18 86:22 86:25 87:4 87:6 87:7 87:7 87:8 87:8 87:10 87:12 87:12 87:12 87:13 87:15 87:17 87:20 87:23 88:4 88:6 88:7 88:17 88:17 88:18 88:19 88:20 88:25 89:1 89:5 89:9 89:11 89:24 90:1 90:3 90:8 90:14 90:16 90:17 90:19 90:20 90:24 91:1 91:2 91:9 91:10 91:13 91:23 91:24 92:3 92:3 92:4 92:4 92:5 92:12 92:18 92:21 92:21 92:25 93:1 93:2 93:10 93:11 93:14 93:14 93:15 93:17 93:18 93:20 93:24 93:25 94:3 94:12 94:12 94:13 94:17 94:20 94:21 94:22 94:22 94:24 95:4 95:4 95:6 95:7 95:8 95:8 95:9 95:9 95:18 95:19 95:19 95:21 95:23 96:2 96:11 96:14 96:17 96:18 96:18 96:19 |
| | | | | | | **their**(40) 6:16 6:17 7:12 11:23 13:21 16:20 16:21 16:25 17:5 17:6 17:9 19:4 19:8 21:14 24:9 27:17 27:24 31:23 37:14 37:18 40:5 40:5 40:6 40:7 40:14 40:18 43:11 43:17 44:22 45:2 54:15 57:21 58:1 58:9 59:9 62:3 65:10 69:12 75:18 92:22 |
| | | | | | | **them**(25) 6:20 9:23 10:2 14:20 17:7 23:15 26:9 30:16 36:13 37:13 38:20 46:8 46:25 53:5 56:18 59:14 60:11 70:8 71:8 71:9 77:3 82:1 82:20 83:1 85:17 |
| | | | | | | **themselves**(2) 73:11 81:5 |
| | | | | | | **then**(45) 10:10 14:25 18:19 20:21 21:15 22:2 26:24 27:1 27:10 28:6 28:14 28:20 29:4 32:6 33:8 33:11 33:15 34:4 34:10 39:6 42:1 53:6 54:9 55:15 59:10 61:14 63:8 64:11 65:17 78:24 78:24 78:1 79:15 80:4 82:8 82:9 85:3 85:21 89:19 91:11 94:3 94:3 94:4 95:14 95:24 |
| | | | | | | **theory**(6) 22:25 23:1 23:18 23:19 23:20 23:22 |
| | | | | | | **there**(82) 8:1 8:7 9:16 10:6 11:6 12:3 20:12 23:15 28:20 31:6 31:19 36:9 37:23 39:19 39:21 40:8 41:9 41:18 42:6 42:11 42:16 42:19 43:22 45:10 45:14 46:1 46:12 46:17 46:21 47:8 47:11 47:17 48:20 49:4 49:15 50:25 51:17 52:19 53:9 54:16 55:7 57:3 59:10 59:12 62:4 62:6 63:12 63:16 63:19 64:2 64:6 65:4 65:6 66:13 67:7 68:9 68:16 68:16 68:23 69:17 70:17 73:2 73:3 74:16 75:10 75:13 79:8 82:24 83:20 84:19 85:2 86:11 87:9 87:15 87:19 88:8 92:17 93:11 93:12 93:16 95:15 |
| | | | | | | **there's**(16) 12:14 13:22 20:3 23:4 28:19 31:21 39:17 41:24 42:10 45:24 46:9 47:1 48:5 48:18 49:2 51:16 |
| | | | | | | **thereby**(1) 43:16 |
| | | | | | | **therefore**(9) 17:20 24:4 34:6 52:15 54:16 58:12 71:14 71:22 73:7 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **there'd**(2) 59:8 94:5 | | **this**(182) 5:10 5:19 8:4 9:13 9:22 9:24 10:3 10:3 10:20 10:24 11:2 11:25 12:1 12:7 12:12 13:5 13:20 13:24 14:8 15:13 15:16 16:14 17:10 19:2 20:5 21:3 21:4 21:17 24:24 25:23 26:1 26:21 26:25 27:1 27:2 27:14 27:21 28:10 30:9 30:9 30:13 30:23 31:3 31:23 32:1 33:13 33:19 35:21 35:22 36:5 36:12 36:14 36:21 36:21 37:3 37:4 37:23 37:23 38:22 39:11 39:20 40:2 40:3 40:8 40:10 40:10 41:14 41:14 41:17 41:23 42:6 42:16 43:15 43:16 44:4 44:10 44:19 45:4 45:10 45:12 45:19 45:20 47:11 48:22 49:12 49:12 49:15 49:19 50:1 50:8 50:13 50:13 50:15 52:1 52:7 52:20 53:5 53:14 54:13 55:16 58:13 59:9 59:11 61:25 62:2 62:18 63:21 63:24 64:25 65:1 65:3 65:23 66:1 67:6 68:11 68:24 69:21 70:12 70:17 71:10 71:16 71:18 72:6 72:23 72:23 73:8 73:14 73:14 73:17 73:23 74:7 74:8 75:14 75:16 75:22 75:22 75:23 75:24 76:2 76:7 76:12 76:13 76:17 76:17 76:24 77:3 77:15 77:22 78:3 79:10 79:16 80:6 80:13 80:21 81:2 81:20 84:4 84:16 86:19 87:9 87:14 87:15 87:22 87:25 88:2 88:14 88:16 88:18 88:19 88:24 91:10 92:2 92:14 92:19 93:12 93:13 93:13 95:7 95:9 95:10 96:8 | | **transfer**(30) 8:6 9:17 20:5 23:3 23:4 23:6 23:25 24:10 25:11 25:19 25:22 26:3 27:5 64:23 66:9 66:21 66:23 66:24 66:25 68:9 71:24 76:2 83:22 84:21 86:10 86:13 86:16 86:21 87:8 88:5 | | **upon**(1) 12:23 | |
| **there's**(15) 55:12 59:3 62:9 65:2 65:16 68:18 72:1 73:2 73:14 77:23 77:24 78:1 84:10 93:3 93:11 | | | | | | **use**(11) 10:2 11:22 18:3 40:13 40:17 46:14 46:14 50:11 53:16 53:16 | |
| | | | | | | **used**(7) 19:8 21:11 25:11 29:11 29:11 67:14 93:14 | |
| **these**(34) 7:7 14:9 15:16 16:22 23:13 28:15 30:25 35:14 35:20 41:13 41:14 42:22 47:8 51:16 51:17 73:9 76:25 76:25 79:9 80:21 80:25 81:9 83:16 84:9 84:14 84:25 86:25 87:16 88:21 88:25 89:2 90:5 92:11 95:10 | | | | **treasury**(1) 64:22 | | |
| | | | | **trial**(12) 7:25 8:1 9:17 66:12 68:3 68:14 75:24 82:11 88:8 88:25 89:1 93:14 | | **using**(2) 25:21 50:24 | |
| **they**(113) 10:15 11:22 11:23 11:23 16:21 19:4 19:5 19:6 19:7 19:8 19:9 19:25 20:9 20:15 21:7 21:13 21:25 22:2 22:20 22:23 23:7 23:19 24:6 24:9 25:25 26:25 27:1 27:5 27:17 27:22 27:24 30:18 31:20 34:12 35:7 35:11 37:12 37:12 37:13 37:14 37:20 37:22 38:6 38:20 39:12 40:7 40:10 40:15 40:17 40:18 40:19 40:20 41:21 41:25 42:2 43:4 43:7 43:8 43:12 43:13 43:13 43:14 43:19 44:9 44:18 44:20 44:25 46:7 46:10 46:14 46:14 46:16 46:23 46:24 47:1 47:2 47:9 49:14 51:21 52:15 53:6 53:16 53:17 53:18 53:22 53:22 55:18 56:16 57:20 57:25 58:4 58:9 58:10 58:11 58:12 58:14 58:17 59:10 59:11 60:10 62:3 70:8 70:13 81:5 82:20 83:5 84:14 85:15 87:5 88:5 90:18 96:10 | | | | **tried**(4) 62:8 84:3 84:17 88:21 | | **usual**(5) 9:25 37:24 38:6 41:14 49:25 | |
| | | | | **trite**(4) 13:25 15:13 38:10 54:8 | | **usually**(3) 47:7 47:7 96:9 | |
| | | | | **true**(1) 58:16 | | **variety**(1) 62:22 | |
| | | | | **trust**(5) 3:26 3:33 3:41 3:47 76:11 | | **various**(2) 33:15 48:15 | |
| | | | | **try**(9) 9:21 22:9 38:22 60:8 64:12 80:5 86:8 91:11 91:23 | | **version**(6) 11:1 48:19 48:21 80:20 81:16 81:17 | |
| | | | | | | **versions**(3) 48:9 48:10 48:17 | |
| **they're**(15) 8:9 10:1 30:16 30:18 34:11 35:8 39:13 39:14 41:12 42:19 44:23 45:3 47:6 47:14 48:20 | | | | **tunis**(1) 1:33 | | **very**(44) 5:9 9:21 11:20 13:19 15:17 17:6 17:11 18:15 18:20 19:8 29:4 30:14 35:15 35:15 36:2 37:18 37:21 37:22 37:22 38:6 40:9 41:14 42:24 53:15 53:18 54:2 58:17 59:25 61:18 65:8 65:8 66:10 71:12 73:17 80:21 82:20 84:2 87:16 87:22 89:6 89:9 90:10 96:7 96:10 | |
| | | | | **tunnell**(2) 1:23 1:26 | | | |
| | | | | **turn**(9) 13:11 33:8 62:10 73:8 76:6 77:8 80:19 80:24 83:11 | | | |
| **they've**(3) 17:8 17:9 41:1 | | | | | | | |
| **they'll**(2) 69:11 88:25 | | **though**(3) 31:6 44:15 75:1 | | **tweed**(1) 3:4 | | **via**(1) 43:1 | |
| **they're**(12) 17:9 43:25 53:21 55:23 56:18 56:19 56:21 71:5 82:22 84:2 87:18 95:22 | | **thought**(2) 5:17 66:7 | | **twelve**(6) 11:6 11:16 11:24 47:19 47:23 48:8 | | **vice**(1) 62:16 | |
| | | **three**(17) 10:17 21:13 36:8 36:13 63:12 63:17 63:18 65:18 67:8 68:5 68:7 69:3 69:6 70:25 73:8 73:21 96:4 | | | | **view**(2) 31:5 95:9 | |
| **they've**(3) 35:9 36:12 82:23 | | | | **two**(37) 16:6 19:21 28:3 28:6 31:19 33:22 37:20 41:10 41:12 46:6 47:4 47:5 52:19 57:4 57:4 58:23 62:7 62:7 66:19 67:17 67:21 70:9 71:12 71:12 71:18 71:23 74:8 75:13 78:12 79:4 83:15 83:23 84:1 84:10 86:9 89:9 90:7 | | **vis-à-vis**(2) 33:5 45:20 | |
| **thin**(1) 24:25 | | | | | | **volume**(1) 65:12 | |
| **thing**(8) 5:18 40:21 44:2 61:17 91:14 93:18 94:13 94:17 | | **through**(10) 26:7 27:20 51:15 65:1 70:19 71:13 79:11 80:6 82:20 83:1 | | | | **wait**(1) 90:18 | |
| | | | | | | **waive**(1) 46:10 | |
| | | | | **tyler**(1) 3:32 | | **waived**(5) 55:23 55:24 56:10 | |
| **things**(11) 19:21 37:11 55:9 65:9 69:6 79:12 82:23 83:24 84:2 87:19 96:9 | | **throw**(1) 26:7 | | **types**(1) 47:8 | | **waiver**(9) 29:15 55:16 55:19 55:20 56:4 91:4 92:9 92:10 93:2 | |
| | | **thursday**(1) 5:1 | | **typical**(1) 42:17 | | | |
| | | **time**(48) 11:24 13:9 13:25 14:9 15:3 15:19 16:14 18:4 36:19 37:22 37:23 38:9 38:11 38:20 46:13 52:1 52:6 52:11 52:14 52:25 53:8 53:19 54:14 54:17 58:18 60:14 60:14 60:19 60:19 62:1 63:24 65:25 69:19 69:24 70:12 70:22 73:17 73:24 79:15 83:16 85:4 85:16 86:8 86:13 86:17 86:20 86:25 88:7 | | **typo**(2) 62:19 62:20 | | **want**(24) 23:1 31:7 39:10 39:11 39:11 39:11 46:14 50:23 51:1 53:16 62:3 62:11 73:5 76:15 77:17 82:3 83:5 84:10 84:16 86:3 87:15 91:8 93:9 93:22 | |
| **think**(36) 7:13 7:14 7:16 7:21 9:11 17:16 18:1 18:4 18:7 24:15 35:9 55:5 57:16 61:2 63:8 64:4 65:6 70:11 70:13 73:22 75:13 76:23 79:11 82:4 82:20 84:18 85:15 85:18 85:24 88:22 89:19 90:4 92:21 93:1 94:10 96:8 | | | | **u.s**(79) 4:23 5:22 6:9 6:16 7:2 7:11 7:20 9:8 9:23 10:1 10:20 10:22 14:2 14:25 15:5 15:5 15:5 16:17 17:5 18:24 20:15 20:17 20:21 20:23 20:24 21:3 21:12 21:21 22:17 23:12 28:1 35:17 36:22 37:5 37:18 38:7 38:7 38:11 39:14 40:3 40:4 43:22 44:1 45:12 45:18 45:21 47:4 47:12 47:12 54:15 55:2 66:15 66:16 67:7 67:22 68:2 68:17 69:2 69:9 69:24 70:11 70:23 75:17 86:17 87:12 87:12 87:15 88:3 88:6 88:10 88:10 89:24 90:1 92:21 93:11 93:15 95:7 95:8 95:19 | | **wants**(2) 79:15 79:23 | |
| | | | | | | **warn**(1) 86:6 | |
| | | | | | | **was**(164) 5:23 6:9 7:1 7:2 10:24 12:10 12:12 12:12 12:17 13:6 13:7 13:9 13:14 13:15 13:24 15:11 15:11 15:12 15:24 17:18 17:20 17:20 19:15 20:12 21:6 21:23 22:5 23:8 23:25 24:3 24:23 26:21 26:23 27:18 28:11 31:2 31:3 31:5 31:6 34:14 34:14 35:22 36:4 36:22 36:24 37:2 37:4 37:6 37:10 37:12 37:23 37:23 38:4 38:5 38:8 38:8 38:13 38:24 39:2 39:24 39:25 39:25 40:3 40:5 40:10 40:20 40:22 41:4 42:25 43:20 44:3 44:14 44:20 45:2 45:18 46:6 46:25 47:11 49:15 49:15 50:6 50:8 50:10 51:14 52:19 53:5 53:9 54:14 54:17 54:24 55:8 55:22 55:22 56:10 56:17 56:23 58:2 58:10 58:11 59:11 60:24 60:24 61:9 62:4 62:6 62:7 62:10 62:13 62:17 62:25 63:9 63:25 64:15 65:15 65:20 66:2 66:2 66:3 66:6 66:14 66:16 66:21 67:6 67:7 67:14 67:25 68:16 69:17 69:17 69:20 69:22 69:23 69:25 70:2 70:5 70:23 70:23 71:18 71:22 72:6 72:7 72:12 75:21 78:23 79:4 81:19 81:19 83:23 84:18 84:19 85:2 86:4 86:9 86:11 86:24 87:9 88:3 88:8 88:11 88:12 88:13 96:14 | |
| | | **timeframe**(1) 38:5 | | | | | |
| | | **timelines**(1) 82:23 | | **ultimately**(2) 86:19 88:11 | | | |
| **thinking**(2) 76:5 79:13 | | **times**(2) 62:23 67:12 | | **un-redacted**(2) 10:22 11:2 | | | |
| **third**(3) 56:11 71:13 79:8 | | **today**(6) 41:6 43:18 66:18 91:2 92:5 96:10 | | **uncorrected**(1) 84:17 | | | |
| | | **together**(3) 57:5 65:5 83:12 | | **under**(16) 8:25 10:24 12:11 15:4 15:6 22:4 34:12 35:4 35:14 50:21 57:4 71:19 73:12 84:23 86:12 94:18 | | | |
| | | **told**(15) 6:23 9:13 32:14 32:16 32:18 32:22 33:2 37:20 37:21 39:25 40:22 42:13 47:18 55:8 88:14 | | | | | |
| | | | | **underlying**(1) 26:2 | | | |
| | | **too**(10) 5:9 25:20 77:2 77:4 78:19 79:5 86:22 91:17 93:23 95:24 | | **understand**(30) 5:23 7:4 9:19 17:22 18:14 19:20 23:19 26:24 27:19 29:16 30:3 31:9 35:22 35:24 43:23 44:23 50:24 52:23 53:5 56:8 77:18 77:20 79:5 79:6 80:23 85:23 86:7 95:18 95:18 95:19 | | **wasn't**(5) 31:18 40:18 45:4 49:25 50:5 | |
| | | | | | | **wasn't**(3) 78:8 78:25 95:14 | |
| | | **took**(7) 19:4 19:4 24:20 24:24 34:23 37:22 69:24 | | **understanding**(2) 47:9 79:3 | | **way**(30) 8:8 13:22 22:5 23:25 34:1 34:9 38:8 38:11 42:23 44:6 44:8 45:8 45:15 45:19 46:20 46:21 47:10 49:12 49:15 57:22 65:18 65:23 67:15 68:11 70:21 78:1 80:9 87:20 91:23 95:24 | |
| | | **top**(6) 25:3 33:22 35:1 39:5 51:13 60:11 | | **understood**(1) 59:10 | | | |
| | | **torys**(3) 4:23 6:22 16:5 | | **unfortunately**(1) 64:25 | | | |
| | | **total**(2) 36:11 93:14 | | **unidentified**(9) 57:7 85:11 85:18 92:19 95:5 95:14 95:17 95:21 95:25 | | | |
| | | **touch**(1) 54:3 | | | | | |
| | | **tough**(2) 36:16 37:22 | | **unintelligible**(1) 57:25 | | | |
| | | **transcriber**(1) 96:23 | | **united**(4) 1:1 1:19 7:9 20:7 | | | |
| | | **transcript**(8) 1:17 1:47 12:9 12:11 12:15 62:12 83:4 96:18 | | **universal**(1) 61:22 | | | |
| | | | | **unless**(2) 54:4 94:16 | | | |
| | | | | **unredacted**(7) 69:6 71:12 76:15 80:20 80:25 81:24 83:11 | | | |
| | | **transcription**(2) 1:40 1:47 | | | | | |
| | | | | **unsecured**(1) 3:12 | | **we'll**(4) 6:20 10:10 13:8 23:23 | |
| | | | | **until**(2) 28:18 29:11 | | | |
| | | | | **unusual**(1) 42:8 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**we're**(9) 6:23 9:13 10:2 10:16 10:18 11:15 12:4 39:7 49:5

**we've**(2) 7:18 11:25 13:25 14:1 32:18 41:6

**wear**(1) 87:21

**webb**(1) 3:32

**weigh**(1) 82:15

**well**(63) 7:4 7:7 8:10 12:24 13:13 15:10 15:18 17:15 18:18 21:7 22:7 22:22 26:24 28:23 28:25 29:2 30:14 38:5 38:14 41:12 42:2 42:13 42:16 43:10 44:2 44:8 44:11 44:18 46:1 46:8 49:5 50:7 50:22 51:23 57:14 59:25 61:20 62:14 63:21 68:11 68:15 68:17 69:14 69:16 72:25 77:1 77:3 77:25 78:10 81:14 81:21 83:14 85:20 86:6 89:9 91:7 91:18 91:20 91:22 91:22 93:24 95:14 95:22

**went**(2) 43:1 48:16

**were**(56) 9:16 11:5 11:6 11:7 12:1 12:5 13:23 16:20 16:22 17:12 17:13 20:16 23:11 25:23 27:23 30:24 33:2 36:9 37:20 37:21 37:22 38:6 38:21 43:14 44:6 44:7 44:7 45:1 46:22 48:9 48:20 49:2 49:13 58:17 59:15 61:1 63:12 63:16 63:19 65:12 66:6 68:16 70:8 70:12 73:9 73:24 76:5 81:6 82:9 83:4 83:21 83:24 86:10 86:12 87:4 88:9

**weren't**(1) 49:4

**weren't**(1) 87:9

**we'd**(1) 64:5

**we'll**(14) 57:6 57:13 57:16 64:16 72:1 77:1 77:3 79:22 90:7 90:17 91:1 92:20 93:17 96:11

**we're**(20) 60:14 64:9 64:12 64:24 65:9 65:25 67:5 75:14 76:16 76:18 77:9 77:24 78:17 78:18 79:14 88:24 92:25 93:1 95:6 95:11

**we've**(1) 65:3

**what**(115) 7:19 9:2 9:5 10:15 11:12 11:15 11:21 12:1 12:3 14:19 19:3 19:9 19:21 20:4 20:21 20:22 21:6 23:7 23:14 24:6 24:7 25:13 25:23 25:25 26:20 28:11 28:14 28:20 28:23 29:4 29:11 29:7 30:24 31:23 32:3 32:16 33:2 33:14 33:16 36:24 37:20 37:20 38:8 38:17 38:20 39:4 42:15 44:2 44:3 44:9 45:11 48:10 49:14 49:18 49:21 50:3 50:6 50:8 50:25 51:6 52:12 53:14 54:21 55:6 56:23 57:19 58:3 58:5 58:7 63:5 63:10 63:17 64:5 64:20 65:24 66:9 66:16 67:5 68:12 69:4 70:10 70:17 71:17 73:5 73:8 73:12 73:13 73:15 73:20 75:16 75:17 76:5 76:20 76:25 77:12 78:21 79:13 79:23 81:1 81:11 81:23 82:2 82:3 82:21 83:8 83:14 87:21 87:24 89:10 89:12 91:7 91:10 93:8 96:3

**what's**(15) 11:14 18:2 22:25 23:1 23:18 23:22 25:9 28:10 31:8 31:9 31:19 32:11 38:2 41:20 48:2

**whatever**(4) 17:20 17:20 57:1 65:18

**whatsoever**(3) 15:14 40:8 75:11

**what's**(3) 58:13 67:19 69:14

**when**(47) 9:23 11:18 16:11 20:15 27:20 33:15 34:8 34:10 34:3 35:10 37:19 46:5 46:6 48:4 49:14 51:4 52:24 53:14 56:10 56:13 56:20 58:1 58:4 58:9 60:12 62:5 63:9 64:16 67:3 67:4 67:6 68:10 69:20 69:22 69:23 70:2 70:3 70:22 71:7 81:5 81:9 82:10 85:21 86:5 87:13 89:13 89:21

**where**(25) 6:15 9:11 12:11 16:16 27:17 34:14 43:21 46:6 46:17 46:18 47:21 47:22 56:11 56:17 57:20 58:19 62:13 65:17 71:5 72:13 72:15 73:6 74:3 76:24 77:7

**where's**(1) 51:9

**whereby**(1) 37:11

**whereupon**(1) 96:14

**wherever**(1) 48:16

**whether**(24) 6:14 6:16 15:24 29:14 31:5 40:15 40:15 42:5 54:6 56:16 63:25 66:11 68:20 70:11 70:13 71:15 71:22 76:7 81:6 82:5 83:5 88:8 88:20 94:12

**which**(47) 7:9 10:19 12:23 14:5 16:10 22:16 22:16 26:16 29:6 34:11 35:20 35:21 36:3 36:4 39:7 42:8 43:5 43:12 43:25 47:10 49:18 49:25 55:10 56:9 58:15 58:22 59:2 60:14 61:8 61:11 62:13 63:5 63:13 63:13 64:21 65:9 65:13 66:17 71:5 71:5 74:1 75:16 75:21 82:3 82:8 84:20 86:12

**while**(6) 6:23 15:15 39:12 39:13 39:14

**white**(1) 24:25

**who**(22) 6:9 6:22 10:22 17:10 27:4 35:11 38:4 39:20 39:22 40:17 53:6 58:5 58:7 60:12 62:5 62:10 66:15 73:24 76:1 87:21 88:4 88:9

**whoever**(1) 57:4

**whole**(4) 37:15 59:11 76:8 91:13

**whom**(1) 6:15

**whose**(1) 74:9

**who's**(4) 60:4 74:16 87:14 92:18

**why**(25) 9:6 14:16 18:14 21:15 31:10 33:19 40:9 45:4 47:9 50:24 59:11 65:23 69:16 75:21 76:14 76:15 77:24 89:7 90:6 90:24 91:7 91:13 93:24 93:25 96:4

**wide**(1) 62:22

**will**(21) 18:9 18:10 19:12 23:15 35:18 36:20 37:9 37:10 49:8 57:24 60:16 68:4 68:14 70:15 76:12 81:4 82:14 85:20 85:21 86:7 95:24

**willkie**(1) 3:25

**wilmington**(8) 1:12 1:28 2:9 2:21 2:28 2:41 3:47 5:1

**winning**(1) 29:13

**wiping**(1) 7:20

**wish**(2) 44:19 92:22

**with**(112) 6:2 6:13 6:13 7:2 8:3 8:4 8:4 8:8 10:2 10:3 11:24 12:13 12:20 13:22 13:22 14:3 15:5 16:11 16:23 17:5 17:16 17:10 17:16 18:2 19:5 20:22 22:10 23:6 25:22 28:2 29:7 29:9 30:17 30:20 34:6 36:13 41:13 42:1 43:3 43:15 44:15 46:18 46:23 47:12 47:17 48:5 49:17 49:23 50:8 50:13 53:6 53:11 54:8 54:13 54:20 56:19 56:13 58:2 58:15 59:12 60:9 60:17 61:1 61:5 62:8 62:16 64:10 64:24 66:8 69:19 66:21 66:24 66:25 67:6 67:9 68:10 69:24 70:9 74:11 75:13 76:9 77:6 77:6 77:13 78:3 79:24 80:1 81:18 82:1 83:3 83:6 83:13 84:4 84:21 85:1 86:6 86:24 86:24 87:22 88:1 88:5 88:15 88:22 90:1 92:18 93:1 94:7 95:4 95:7 95:12

**withholding**(1) 43:14

**without**(6) 67:15 76:20 77:17 77:23 81:25 82:1

**withstanding**(1) 46:24

**witness**(3) 7:25 9:17 62:4

**witnesses**(1) 61:25

**won't**(1) 33:6

**wondered**(1) 62:19

**wondering**(3) 5:18 76:7 83:23

**won't**(1) 73:10

**words**(1) 65:12

**work**(7) 18:19 46:20 46:21 50:15 56:15 65:24 94:11

**worked**(8) 22:5 37:21 38:12 66:9 83:16 94:3 96:9 96:9

**working**(2) 17:18 96:8

**works**(2) 45:15 93:13

**world**(1) 76:13

**worry**(2) 78:18 94:24

**worst**(1) 62:7

**worth**(3) 61:21 76:8 81:9

**would**(40) 7:11 7:13 7:19 7:22 9:8 9:15 17:11 37:12 37:13 37:14 37:14 38:5 40:23 41:1 41:9 43:17 44:9 44:17 45:4 46:21 46:22 53:2 56:18 57:16 59:10 59:12 64:5 65:19 67:8 68:23 69:19 75:7 75:10 77:15 78:2 78:5 78:7 92:3 94:14 94:17

**wouldn't**(1) 39:12

**wouldn't**(1) 66:4

**written**(2) 67:15 91:11

**wrong**(7) 32:9 42:25 43:20 44:20 50:12 76:18 86:21

**wrote**(3) 8:24 9:23 91:23

**wunder**(1) 4:28

**www.diazdata.com**(1) 1:44

**xcg**(1) 56:22

**xcgadd**(1) 57:2

**yeah**(8) 11:18 34:18 34:24 35:13 36:14 39:4 49:10 51:19

**year**(1) 61:15

**years**(7) 26:9 41:5 62:7 62:8 62:23 76:6 81:3

**yes**(83) 5:12 5:15 5:25 11:11 14:22 14:24 15:2 15:7 16:15 16:19 18:6 19:1 19:18 20:14 20:20 22:14 23:9 24:2 25:5 28:9 28:13 29:9 30:11 33:6 33:10 33:12 33:24 34:3 35:6 36:10 38:1 38:14 47:24 53:10 53:12 54:1 57:18 58:25 59:1 60:16 60:19 60:21 60:22 61:2 61:23 63:4 63:7 63:23 64:19 67:13 68:9 68:17 70:7 70:24 71:6 71:20 72:11 72:24 73:1 73:3 73:18 74:6 74:10 74:12 74:15 74:18 74:18 74:18 75:7 77:12 79:7 79:10 80:16 80:18 80:23 81:13 83:9 83:18 85:18 89:14 89:17 89:23 92:24

**yet**(2) 9:14 78:24

**york**(4) 1:35 2:15 2:35 3:33

**you**(279) 5:7 5:8 5:9 7:5 8:14 8:17 8:25 9:20 9:22 10:8 10:9 10:11 10:12 11:9 11:18 11:20 13:2 13:11 14:4 14:5 14:7 14:8 14:16 14:19 15:25 17:2 17:17 18:2 18:2 18:3 18:3 18:8 18:15 18:19 19:2 21:18 22:3 23:1 23:21 24:19 24:24 25:2 25:23 26:16 26:25 27:3 27:7 27:8 27:10 27:20 28:3 28:8 28:12 28:20 29:4 29:10 31:7 31:13 31:25 32:9 32:14 32:16 33:8 33:15 33:16 33:21 33:23 34:4 34:7 34:8 34:8 34:10 34:13 34:21 34:22 34:23 35:3 35:5 35:10 35:16 36:8 36:9 37:7 37:9 37:9 37:10 38:16 38:22 39:4 39:10 39:11 39:11 39:11 39:16 40:2 40:21 41:9 41:16 42:4 43:6 44:9 45:14 45:15 45:16 45:16 45:19 46:4 46:5 46:6 47:4 47:5 47:6 47:14 47:18 48:3 48:22 48:22 49:8 49:11 49:14 49:20 50:5 50:20 50:20 50:21 50:22 51:1 51:4 51:12 51:16 52:5 52:9 52:24 52:24 53:4 53:14 53:23 54:4 54:4 54:13 54:19 55:4 55:14 55:24 56:9 56:13 56:14 56:14 56:15 56:20 56:25 57:16 57:22 58:3 58:18 58:22 59:4 59:7 59:23 59:25 60:1 60:3 60:9 60:11 60:11 60:20 61:23 62:4 62:6 62:10 62:11 62:18 62:23 63:16 63:21 63:25 64:4 64:7 64:13 64:14 65:23 66:8 66:8 66:10 66:13 66:13 67:1 67:2 67:3 67:10 68:13 68:15 68:20 69:4 70:2 70:25 71:1 71:5 71:9 72:6 72:14 72:17 73:5 73:8 74:4 74:8 74:16 75:21 75:23 75:24 76:6 76:11 76:15 76:24 77:8 78:3 78:5 78:24 78:25 79:10 79:10 79:12 79:15 80:5 80:9 80:16 80:19 81:11 82:3 82:3 82:6 82:17 82:19 82:21 83:1 84:10 84:12 85:14 86:3 86:18 86:21 88:8 89:5 89:6 89:11 89:18 89:25 90:10 90:12 90:17 90:23 91:2 91:7 91:8 91:11 91:13 91:20 91:24 92:17 92:24 93:8 93:9 93:16 93:20 93:22 94:3 94:4 94:7 94:16 95:8 95:25 96:3 96:4 96:6 96:7 96:10 96:11 96:12

**you'll**(7) 25:4 26:20 30:13 34:21 35:4 35:11 40:22

**you're**(12) 8:21 11:12 17:16 18:1 24:7 28:11 30:4 39:15 44:25 45:25 50:21 51:6

**you've**(15) 10:6 14:25 16:25 17:4 28:4 33:8 33:14 33:22 35:13 34:5 39:4 39:5 39:6 42:18 43:21

**young**(4) 2:4 2:39 2:47 30:12

**your**(93) 5:10 5:21 7:1 8:19 9:14 9:21 10:12 11:13 12:24 14:21 15:16 17:17 17:21 26:14 27:19 27:21 28:16 28:17 29:16 29:16 30:1 30:14 31:9 33:2 34:20 35:24 36:11 36:20 38:19 41:3 41:15 42:4 42:22 42:24 44:18 47:16 48:21 49:1 50:14 50:21 53:18 54:1 54:2 54:13 55:16 56:13 57:6 57:7 57:23 59:22 59:22 60:5 61:2 62:18 64:3 65:23 66:7 66:11 69:3 70:24 71:3 73:22 75:1 75:11 75:14 76:9 76:14 77:16 78:3 78:4 78:5 79:17 79:17 79:24 80:5 80:19 81:11 81:14 83:19 84:12 85:23 85:23 86:20 87:24 90:12 90:13 91:24 92:24 93:16 94:8 94:9 94:10 96:6

**yourself**(2) 35:5 53:25

**you'll**(5) 68:3 70:22 72:11 81:1 86:6

**you're**(5) 69:8 72:22 76:3 82:20 86:2

**you've**(5) 55:21 65:1 68:20 71:8 80:24 81:3 82:18 94:3

**zero**(2) 38:10 76:14

**ziehl**(1) 3:7

**zloto**(1) 3:37

**zone**(1) 75:18

**'and**(1) 12:3

**'the**(1) 73:6

**"everything**(1) 63:14

**"fault"**(1) 78:21