**EXHIBIT G**

1

Court File No: 09-CL-7950

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

## NOTICE OF MOTION

(Motion Regarding "Ultimate Issue" opinion evidence contained in the EMEA Foreign Law Expert Reports - Experts Not Scheduled to Appear at Trial)

Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "**Canadian Debtors**") together with Ernst & Young Inc. in its capacity as monitor of the Canadian Debtors (the "**Monitor**") will make a motion to Justice Newbould of the Commercial List court (the "**Trial Judge**"), on such date and time prior to or during the trial as he may direct, at 393 University Avenue, Toronto, Ontario.

**PROPOSED METHOD OF HEARING**: The motion is to be heard orally, or in writing, as the Trial Judge may direct.

**THE MOTION IS FOR:**

1. an Order that any statements contained in the foreign law expert reports tendered by the EMEA Claimants[1] purporting to express conclusions or opinions about, *inter alia*,

    (a) the outcome, likely outcome and/or success of the claims and entitlements asserted in the EMEA Claimants' Proofs of Claim filed in these proceedings, or the constituent elements thereof, and/or

    (b) what a court would/should decide about those claims and entitlements;

    (collectively, the "**Ultimate Issue**"), shall not form part of the evidentiary record in this proceeding and shall be disregarded;

2. In the alternative and/or if considered necessary, an Order striking any statements on the Ultimate Issue contained in the foreign law expert reports tendered by the EMEA Claimants. Examples of such statements contained in the initial and reply reports of the EMEA Claimants' foreign law experts are identified in Exhibit "A" hereto[2]; and

3. such further relief as this Honourable Court deems just.

**THE GROUNDS FOR THE MOTION ARE:**

*Procedural History and Rationale for this Motion*

4. The Joint Trial Protocol that was considered by the Courts on January 29, 2014 (the "**Joint Trial Protocol**") contains a separate mechanism for the Core Parties to raise objections to exhibit designations (Section I C (1) and (2)) and deposition testimony designations (Section I B (2), (3), (4), and (6)). The Joint Trial Protocol also makes provision for the live testimony of fact (Section II D) and expert (Section II C) witnesses at trial.

---

[1] EMEA Claimants has the same meaning as in the Joint Response of the Monitor and the Canadian Debtors filed in these proceedings (the "**Joint Response**"), and is comprised of the Nortel entities in Europe, the Middle East and Africa that have filed proofs of claim against some or all of the Canadian Debtors.

[2] The EMEA Claimants did not serve foreign law reports on Finnish or Romanian law. Of the 17 foreign law experts whose reports have been tendered by the EMEA Claimants, only the ones who made "Ultimate Issue" statements are listed in Exhibit "A".

5. The Joint Trial Protocol contemplated that the Core Parties would work in good faith to try to reach an agreement that would allow for the evidence of foreign law experts to be submitted without live testimony (Section I D (1) (b)). An agreement was reached on this and other matters relating to the trial testimony of the foreign law experts for the EMEA claims, which provides for the admission of those experts' reports into evidence at trial "<u>subject to a party's right to challenge the admissibility of some or all of any foreign law report, rebuttal report, reply report, or sur-reply report for failure to comply with the rules governing expert evidence</u>," in addition to the right "…to argue at trial that little or no weight should be given to some or all of any foreign law report, rebuttal report, reply report, or sur-reply report." [emphasis added] This was confirmed in an email exchange among counsel which is attached at Exhibit "B" hereto, at paras. 6 and 7 (the "**Stipulation**").

6. In light of the Stipulation, the initial and reply reports of the EMEA Claimants' foreign law experts who have purported to give opinions on the Ultimate Issue are subject to challenge as to their admissibility and the pre-trial motion procedure is the only procedural mechanism currently available under which to bring forward that challenge given that the experts are not expected to appear at trial (unless their attendance is requested by the Trial Judge, which the Stipulation provides for in paragraph 1).

7. The Joint Trial Protocol makes provision for Pre-Trial Motions, which, by agreement of the Parties, are to be served by April 21, 2014 (responses are due April 28, 2014 and replies are due May 5, 2014).

8. The Canadian Debtors and the Monitor are prepared to have this matter determined either before or during the trial, as the Trial Judge directs. This motion has been brought now in order to preserve their challenge to the admissibility of purported opinions of the EMEA Claimants' experts on the "Ultimate Issue". The examples listed in Exhibit "A" of paragraphs that contain impugned "Ultimate Issue" statements have been restricted for purposes of this motion to those that are considered to have crossed the "admissibility" line. All arguments as to weight and foundation for the remaining statements of the

EMEA Claimants' foreign law experts' in their initial and reply reports are reserved as provided for in the Stipulation.

*Expert Testimony on the Ultimate Issue is neither Relevant nor Necessary*

9.   Having assumed all facts in the Proofs of Claim to be true, the EMEA Claimants' foreign law experts identified in Exhibit "A" hereto then proceed, to varying degrees in their reports, to express views about how the asserted claims should be decided.

10.  The Supreme Court of Canada has re-affirmed as recently as in February of this year that expert witnesses should not be permitted to give opinion evidence concerning the "guilt" of the defendants [*R. v. Sekhon*, 2014 SCC 15 (*"Sekhon"*, attached at Schedule "A1" hereto), at paras 61 and 75-76].

11.  In *Sekhon*, the Supreme Court of Canada re-affirmed the *Mohan* principles [*R. v. Mohan* [1994] 2 S.C.R. 9 (*"Mohan"*, attached at Schedule "A2" hereto)] that the admission of expert evidence depends on the criteria of 1) relevance; 2) necessity in assisting the trier of fact; 3) the absence of any exclusionary rule; and 4) a properly qualified expert [*Sekhon*, supra, at para 43]. After reviewing the *Mohan* criteria of "relevance" and "necessity" [at paras 43 to 45], the Supreme Court stated as follows in para 46:

> Given the concerns about the impact expert evidence can have on a trial – including the possibility that experts may usurp the role of the trier of fact – trial judges must be vigilant in monitoring and enforcing the proper scope of expert evidence. While these concerns are perhaps more pronounced in jury trials, all trial judges – including those in judge-alone trials – have an ongoing duty to ensure that expert evidence remains within its proper scope. It is not enough to simply consider the *Mohan* criteria at the outset of the expert's testimony and make an initial ruling as to the admissibility of the evidence. The trial judge must do his or her best to ensure that, throughout the expert's testimony, the testimony remains within the proper boundaries of expert evidence.

12.  Although dissenting on other points, the remaining judges concurred with the majority on the following basic principles (at para 75):

> The *Mohan* requirement of necessity is the primary safeguard against the inappropriate proliferation of expert evidence. But even where the

  expert's evidence is broadly necessary, as in this case, it should be assessed with special scrutiny as it approaches the "ultimate issue"…The decision to qualify an expert does not end the need for scrutiny of the expert's evidence. A properly qualified expert could stray into expressing inadmissible opinions about the guilt of an accused, and the trial judge must ensure that the expert's testimony stays within the proper boundaries of such evidence and maintain the integrity and independence of his or her own fact-finding function as regards the credibility of witnesses and the guilt or innocence of the accused.

13. Expert evidence is not necessary nor relevant on matters where it is open to the trier of fact to draw his or her own conclusions – applying the law (in this case, foreign law to be proven through the experts tendered by both sides) to the facts being the quintessential example of the Court's role. In this case, where the claims trial is for the very purpose of the Trial Judge deciding the outcome and/or success of the multitude of claims and entitlements asserted in the EMEA Claimants' Proofs of Claim, it is neither relevant nor necessary for the EMEA Claimants' foreign law experts to be permitted to provide opinion evidence on those very matters (which are the Ultimate Issue that the Trial Judge is to decide).

*Miscellaneous*

14. Such further and other grounds as counsel may advise and this Honourable Court may permit.

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the motion:

1. The Exhibits and Schedules attached hereto;

2. The foreign law expert and expert reply reports provided to the Court by counsel to the EMEA Claimants that are identified in Exhibit "A" hereto (specific extracts will be provided in a compendium for the motion);

3. The Joint Response of the Monitor and Canadian Debtors previously filed in these proceedings;

4. The Joint Trial Protocol (considered at the January 29, 2014 pre-trial);

5. Such further and other evidence as counsel may advise and this Honourable Court may permit.

April 21, 2014

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7

**Jay A. Carfagnini** LSUC#: 22293T
jcarfagnini@goodmans.ca
**Jessica Kimmel** LSUC#: 32312W
jkimmel@goodmans.ca
**Joseph Pasquariello** LSUC #: 38390C
jpasquariello@goodmans.ca
**Hannah Arthurs** LSUC#: 55337O
harthurs@goodmans.ca

Tel:   416.979.2211
Fax:   416.979.1234

Lawyers for the Monitor

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place,
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Derrick Tay** (LSUC #: 21152A)
derrick.tay@gowlings.com
**Jennifer Stam** (LSUC #: 46735J)
jennifer.stam@gowlings.com

Tel:   (416) 862-5697
Fax:   (416) 862-7661

Lawyers for the Canadian Debtors

**TO:   THE CORE PARTIES SERVICE LIST**