## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                                                   :

*In re*                                         :          Chapter 11
                                                    :

Nortel Networks Inc., *et al.*,[1]          :          Case No. 09-10138 (KG)
                                                    :

                            Debtors.         :          Jointly Administered
                                                    :

                                                    :           **Hearing Date**: May 8, 2014 at 11:00am (ET) (Proposed)
                                                    :           **Obj. Due**: May 7, 2014 at 12:00 p.m. (ET) (Proposed)

-------------------------------------------------------- X

## MOTION OF THE U.S. DEBTORS FOR ENTRY OF AN ORDER PROVIDING DIRECTIONS AND ESTABLISHING PROCEDURES FOR SEALING TRIAL EXHIBITS, REDACTING PRETRIAL SUBMISSIONS, AND PROTECTING CONFIDENTIAL INFORMATION FROM PUBLIC DISCLOSURE DURING THE TRIAL

Nortel Networks, Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "U.S. Debtors") hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as **Exhibit A**[2] that would provide directions and establish procedures for sealing trial exhibits, redacting pretrial submissions, and protecting confidential information from public disclosure in respect of the joint trial on allocation of sale

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]      The U.S. Debtors are in active discussions with the other estates regarding an agreed form of order, and anticipate filing a revised form of order with more specific procedures prior to the hearing.

proceeds scheduled to commence on May 12, 2014 (the "Trial").[3]  In support of this Motion, the

U.S. Debtors respectfully represent as follows:

## Preliminary Statement

1.        The Nortel estates are about to embark on a trial to determine allocation of over

$7 billion in sale proceeds.  The estates recognize the interest their stakeholders have in the trial

and the issues being litigated, and are committed to an open trial process.  At the same time, they

are conscious of certain confidentiality obligations they have to other parties, including

purchasers of their businesses and assets, and want to properly balance these interests.

2.        Over the past year, the Core Parties have undertaken and now completed an

extensive discovery process leading up to the allocation trial.  A protective order was entered by

the Courts to govern discovery, which covers the substantial documents produced and evidence

taken to date.  It was contemplated that a further order would address the confidentiality of such

documents and evidence at trial.  This motion seeks directions and the approval of procedures in

respect of the joint trial and related submissions, in order to balance the interest of an open trial

against the need to protect certain limited confidential information from disclosure.

## Background and Proposal

3.        On May 15, 2013 and May 17, 2013, respectively, the Ontario Superior Court of

Justice (Commercial List) (the "Canadian Court," and together with this Court, the "Courts") and

this Court entered orders approving an allocation protocol, which established procedures and a

schedule for the cross-border resolution by the Courts in joint hearings of the allocation of the

proceeds from the post-petition asset sales [D.I. 10565].

---

[3]        Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the
Allocation Protocol.

4.      On June 11, 2013, the Courts issued orders, approving and entering a protective order which governed the exchange of documents during the discovery phase of these proceedings (the "Protective Order") [D.I. 10805].

5.      The Protective Order permitted a party producing documents to designate documents as "Confidential" or "Highly Confidential" based on certain criteria set forth therein. Depending on the designation given to a document, the Protective Order provided that it may only be disclosed to a limited number of persons and their counsel with a connection to the litigation.  Over two million documents have been produced in this litigation, including both by the Core Parties and by certain non-parties, and many of them have been designated Confidential or Highly Confidential.  Over one hundred depositions also have been taken, which transcripts are all currently designated Highly Confidential.

6.      Section 8(c) of the Protective Order provides that the entry of such order "shall be deemed an order authorizing the filing under seal of any Confidential or Highly Confidential Discovery Material and any other document citing, quoting, summarizing or otherwise reflecting information obtained from Confidential or Highly Confidential Discovery Material without any further order of either Court required."

7.      Section 8(d) of the Protective Order provides that it "shall not, by default, govern the use of Confidential or Highly Confidential Discovery Material at the trial.  Instead, the Parties shall meet and confer in good faith, and seek instructions from the Court(s) as necessary, prior to the start of any trial in the Proceedings regarding the use of Confidential or Highly Confidential Discovery Material at such trial or hearing."

8.      On November 27, 2013 and November 29, 2013, respectively, this Court and the Canadian Court issued orders stating, in part, that the Trial would commence on May 12, 2014. [D.I. 12522]

9.      On January 24, 2014, the U.S. Debtors filed a Proposed Joint Trial Protocol with this Court [D.I. 12863] (as amended, the "Trial Protocol").  The Canadian and EMEA Debtors filed a substantially similar proposed trial protocol in the Canadian Court on the same date.  On March 10, 2014, the estates filed substantially similar amendments to the Trial Protocol with the Courts [D.I. 13132].

10.     The Trial Protocol provided for the exchange of various pretrial submissions during the months of January to May 2014, including expert reports and reply expert reports, affidavits and reply affidavits, pretrial motions and responses and replies thereto, and pretrial briefs.  All of these submissions have been filed under seal pursuant to Section 8(c) of the Protective Order, as described above.

11.     The Trial Protocol also provided for the Core Parties to exchange initial exhibit lists and supplemental exhibit lists on April 11, 2014 and April 25, 2014, respectively.  The Core Parties made such exchanges on those dates.  In addition, pursuant to agreement between the Core Parties, the Core Parties exchanged preliminary exhibit lists on March 28, 2014.  In total, the Core Parties have designated over 13,000 documents as potential trial exhibits, some of which are subject to admissibility objections.  The Core Parties are providing the Courts access to an online database containing electronic copies of all such designated trial exhibits.

12.     In addition, pursuant to the Trial Protocol, starting on April 11, 2014, the Core Parties have been exchanging fact and expert witness deposition designations and objections

thereto.  The Core Parties will deliver to the Courts copies of such deposition transcripts prior to the commencement of Trial.

13.     As a result of these exchanges, the identification of trial exhibits, the designation or deposition testimony, and the exchange of trial witness affidavits has been substantially completed only in recent days, with certain discrete deadlines still pending and other issues subject to further discussion among the Core Parties.

14.     At a joint pretrial conference on April 22, 2014, the issue of confidentiality was discussed.  The estates agreed to continue to meet and confer in good faith pursuant to Section 8(d) of the Protective Order, and to revert to the Courts with a proposal on how to address confidentiality concerns now that the discovery phase of the proceedings has ended and the Trial is to commence shortly.  Transcript of April 22, 2014 Hearing, 88:16-89:1; 89:11-90:13.

15.     Since the pretrial conference, the estates have been working together diligently to review the exhibit lists that have been exchanged and identify the documents from such lists that may be subject to confidentiality obligations of one or more of the estates.  In addition, the estates have been discussing how to protect from public disclosure confidential information that may be contained in pretrial submissions, expert reports, witness affidavits, and deposition testimony or that otherwise may be discussed or presented during the Trial.

16.     The U.S. Debtors recognize the strong public interest in ensuring that the Trial is as transparent and publicly accessible as possible.  The U.S. Debtors have taken particular note of the interest expressed by counsel to the U.S. Creditors' Committee at the April 22, 2014 pretrial conference with regard to having these proceedings be public to the extent feasible and consistent with the debtors' confidentiality obligations, Tr. 80:20-81:3, and of the April 30, 2014

letter received from counsel to the Canadian Creditors' Committee expressing the view that, save for special circumstances, the Trial should be open.

17.     The U.S. Debtors support a public trial that is consistent with confidentiality obligations they and other debtors may have to third parties – in particular, as further described below, to post-petition purchasers of Nortel assets, counterparties to license agreements, and tax authorities.  Thus, the U.S. Debtors have been working cooperatively with the other Nortel estates to formulate a practical approach to propose to the Courts regarding the treatment of confidential information in connection with the Trial that would protect the Nortel estates from liability while at the same time protecting the public interest in open court proceedings.

18.     Taking into account the different aspects of the Trial and the submissions related thereto, and based on the discussions the U.S. Debtors have been having with the other Nortel estates, the U.S. Debtors respectfully propose the entry of court orders directing the Core Parties with respect to procedures that would govern confidential information in respect of the Trial. The Canadian Debtors have filed a motion on May 2, 2014 seeking substantially similar relief with the Canadian Court.  While competing deadlines have limited the ability of the estates to finalize or fully socialize a proposed form of order with all of the Core Parties, the U.S. Debtors intend to continue discussions with the Core Parties in the coming days with the goal of presenting a consensual order to the Courts at or prior to the May 8, 2014 hearing.

*Trial Exhibits*

19.     As indicated above, the estates have been reviewing the exhibit lists to identify documents potentially warranting protection from public disclosure because of confidentiality

obligations.  While this work is ongoing, the estates have identified the following categories of documents that are subject to confidentiality obligations with varying terms.[4]

20.    <u>Post-petition sale documents</u>:  The sale agreements for the post-petition asset sales, including the business line sales and the residual patent portfolio sale, include certain confidentiality provisions.  While the provisions vary, broadly speaking, they generally obligate the Nortel sellers to protect from public disclosure confidential, competitively sensitive and proprietary information related to the business lines and assets sold.

21.    It should also be noted that as part of the approval process for the sales, the Court authorized the U.S. Debtors to file the disclosure schedules and certain other documents related to the sale agreements under seal.  To the extent such documents are filed publicly in connection with the Trial, the U.S. Debtors propose to continue the same confidential treatment and file them under seal.

22.    As further described below, the U.S. Debtors intend to identify for the Court shortly a further description of the relevant documents and/or a list of a limited number of documents related to the sales that they have identified in good faith as warranting protection from public disclosure, with all other documents being made publicly available should they be filed or otherwise presented in connection with the Trial.

23.    For the avoidance of doubt, the U.S. Debtors are not seeking to file the sale agreements (other than the disclosures schedules and possibly certain related confidential transaction documents) under seal.  The U.S. Debtors expect that numerous other documents related to the sales similarly will not be filed under seal.

---

[4]    In all cases, the descriptions of the agreements set forth herein are provided for general background purposes, and are qualified by and subject to the terms of the actual agreements. While the estates have endeavored to identify the relevant confidentiality obligations in the time available, to the extent the estates subsequently identify further documents that they believe in good faith should be filed under seal, the parties may identify such documents and nothing herein is intended to prejudice their right to do so.

24.    The Nortel estates have sent letters notifying the purchasers of these assets of the May 8, 2014 hearing on these issues, so that the estates can take into account the views of the purchasers on which documents warrant continued confidential treatment.

25.    <u>Pre-petition license agreements</u>:  Over one hundred intellectual property license agreements that Nortel entered into with various third parties have been designated as potential trial exhibits.  Many contain confidentiality provisions obligating Nortel to keep confidential the agreement and/or its terms, subject to various limitations and other terms.  The Nortel estates have notified the counterparties to these license agreements that they intend to seek a court order to protect such agreements and/or their terms from public disclosure, to the extent the use of or reference to such agreement in connection with the Trial reveals the identity of the counterparty. For the avoidance of doubt, the Debtors may propose procedures by which the Core Parties or witnesses can discuss such agreements in open court without revealing the counterparty's identity.

26.    <u>Tax documents</u>:  Certain Nortel entities have confidentiality obligations to tax authorities surrounding documents related to transfer pricing issues.  The estates are continuing to work together to determine which documents on the exhibit lists may be subject to such confidentiality obligations.

27.    It should be noted that in connection with this Court's approval of a settlement between NNI and the Internal Revenue Service (the "<u>IRS</u>"), this Court also approved a stipulation whereby NNI agreed to keep confidential the settlement and the resulting Advance Pricing Agreement ("<u>APA</u>") [D.I. 2322].  To the extent such settlement or APA are filed or discussed in connection with the Trial, the U.S. Debtors propose to continue the same confidential treatment and file such documents under seal.

28.    <u>Personal information</u>:  There are a limited number of documents on the exhibit lists that contain personal information of former Nortel employees, such as addresses, telephone numbers and employment terms.  The laws of several relevant jurisdictions may prohibit public disclosure of such personal information.  The U.S. Debtors wish to respect the privacy of such individuals consistent with the practicalities of the Trial.  Therefore, the U.S. Debtors request Court permission to redact any personal information from these documents, in their discretion, should such documents be proposed to be filed publicly or otherwise presented in connection with the Trial.

29.    <u>Third Party Productions</u>:  Certain accounting firms located in the United Kingdom produced documents for this litigation pursuant to letters rogatory that this Court issued last year and subject to the Protective Order (as provided for in consent orders subsequently entered by the U.K. courts or otherwise).  The estates' exhibit lists contain a small number of these documents, all of which are marked Confidential or Highly Confidential.  The U.S. Debtors are in the process of communicating with these firms to seek consent for public disclosure of these documents.  The U.S Debtors therefore respectfully request that to the extent that these documents are filed, that they be filed under seal pending consent from the firms for public disclosure or a further request to the Court for relief in connection with such documents.

30.    Pending the submission of the additional descriptions and/or a complete list of confidential documents to the Courts, the U.S. Debtors respectfully request that, pursuant to the Protective Order, all trial exhibits be provisionally sealed.  Once the estates agree upon such complete list of confidential documents and submit it to the Courts, the U.S. Debtors do not object to the public disclosure of any trial exhibits not included on the list or in the descriptions

of the documents, subject to obtaining an order from this Court relieving the U.S. Debtors of any

liability with respect to the public disclosure of any such exhibits.

*Pretrial Submissions*

31.    The pretrial briefs were exchanged yesterday afternoon, and the U.S. Debtors

therefore have not had sufficient time to form a view as to the extent to which they may contain

or refer to confidential information.  However, the U.S. Debtors propose to work in good faith

with the other Nortel estates to agree upon the public disclosure of such briefs and upon limited

redactions for confidentiality consistent with the other proposed relief.

32.    With respect to witness affidavits and reply affidavits, pretrial briefs and the

pretrial motions, the U.S. Debtors propose to work together in the coming days with the other

Nortel estates to review such submissions in order to identify any confidential information they

believe should be redacted therefrom before filing publicly.  The U.S. Debtors are prepared to

work in good faith with the other estates to agree on any proposed redactions, so that these

pleadings may be publicly filed.  The U.S. Debtors propose to similarly establish procedures for

the disclosure of expert reports and rebuttal expert reports consistent with the other relief sought.

*Deposition Designations*

33.    With respect to the deposition transcripts of fact and expert witnesses containing

the parties' designations of testimony to be used at Trial, the U.S. Debtors respectfully request

that such transcripts remain protected from public disclosure pursuant to the Protective Order,

pending the following steps:

      a.     For transcripts of those witnesses appearing live at Trial, the party

            proffering the witness shall be obligated by an agreed upon deadline to

            notify counsel for all other parties of any portion of the relevant deposition

transcript that the proffering party believes should be protected from public disclosure and not referred to during the Trial without obtaining a sealing of the courtrooms.

b.    For transcripts of all other persons, the estates shall work together during the course of the Trial to identify any portions they believe should be protected from public disclosure, subject to an outside deadline for making such determinations.

*Trial Proceedings*

34.    As stated above, the U.S. Debtors recognize the important public interest in keeping this Trial as publicly accessible as possible.  However, the U.S. Debtors also recognize that certain limited circumstances may arise during the course of the Trial proceedings which would warrant a request from one or more of the Nortel estates for a sealing of the courtroom due to the presentation of highly confidential evidence falling under one of the categories described above with respect to trial exhibits (even if there was no previous request for the sealing of the particular evidence at issue).  Therefore, the U.S. Debtors respectfully request that should such a circumstance arise, they or any other Core Party may request such relief as necessary or appropriate at such time.

## Relief Requested

35.    By this Motion, the Movants respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A** (or such revised form of order as may be presented at or prior to the hearing), pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rules 7026, 9014 and 9018.

## Basis for Relief Requested

36.    The relief requested by the Debtors is authorized under various provisions of the

Bankruptcy Code and Bankruptcy Rules.

37.    Bankruptcy Rule 9018 authorizes the Court to "make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . ."

38.    Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

39.    Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the power to issue orders to protect a party's confidential, commercial or proprietary information:

> On request of a party in interest, the bankruptcy court shall . . .
> protect an entity with respect to a trade secret or confidential
> research, development, or commercial information. . . .

11 U.S.C. § 107(b).

40.    Furthermore, Bankruptcy Rule 9018 defines the procedure by which a party may move for relief under section 107(b) of the Bankruptcy Code:

> On motion or on its own initiative, with or without notice, the court
> may make any order which justice requires . . . to protect the estate
> or any entity in respect of a trade secret or other confidential
> research, development, or commercial information . . . .

Fed. R. Bankr. P. 9018.

41.    Once the Court determines that an interested party is seeking protection of information that falls within one of the categories enumerated in section 107(b) of the Bankruptcy Code, "the court is required to protect a requesting interested party and has no discretion to deny the application." *Video Software Dealers Ass'n v. Orion Pictures Corp.* (*In re Orion Pictures Corp.*), 21 F.3d 24, 27 (2d Cir. 1994). *See also In re Global Crossing, Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003) (stating that the purpose of Bankruptcy Rule 9018 is to

"protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury."). Courts in this district have defined commercial information as "information which would result in an 'unfair advantage to competitors by providing them with information as to the commercial operations of the debtor.'" *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del. 2006) (quoting *Orion Pictures Corp.*).

42.     Commercial information need not rise to the level of a trade secret to be protected under section 107(b) of the Bankruptcy Code. *In re Orion Pictures Corp.*, 21 F.3d at 28 (stating that section 107(b)(1) creates an exception to the general rule that court records are open to examination by the public and that under this exception, an interested party has to show only that the information it wishes to seal is "confidential and commercial" in nature).

43.     Section 107(c) of the Bankruptcy Code permits the court "for cause, [to] protect an individual, with respect to [certain] types of information to the extent that disclosure…would create undue risk of identity theft or other unlawful injury to the individual or the individual's property." 11 U.S.C. § 107(c).

44.     Accordingly, and for the reasons stated in the "Background and Proposal" section of this Motion, the Court should enter an order substantially in the form attached hereto as **Exhibit A,** providing directions and establishing procedures for sealing trial exhibits, redacting pretrial submissions, and protecting confidential information from public disclosure during the Trial.

45.     To the extent the proposed procedures and relief are consistent with the confidentiality obligations of the Nortel debtors, subject to balancing such interests against the interests in an open trial and open court proceedings, protecting the confidential information

outlined above from public disclosure is in the best interests of the U.S. Debtors and their estates,

creditors, and interest holders and all other parties in interest herein.

### Notice

46.      Notice of the Motion has been given via overnight mail or email to (i) the U.S.

Trustee; (ii) the general service list established in these chapter 11 cases; (iii) the Core Parties;

(iv) the purchasers in the post-petition sales; (v) the license agreement counterparties; (vi) the

U.K. firms subject to the letters rogatory; (vii) the IRS; and (viii) the Canadian Revenue

Authority.

### No Prior Request

47.      Except as described herein, no prior request for the relief sought herein has been

made to this or any other court.

Dated:  May 3, 2014
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard S. Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

  */s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347

14

Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*