Court File No.  09-CL-7950

## ONTARIO
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 09-10138 (KG) |
| NORTEL NETWORKS INC., *et al.,* | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Re: Docket No. 13461, 13462, 13463 |
| | ) | Hearing:  May 8, 2014 @ 11:00 a.m. |
| | ) | |

## FACTUM OF THE CANADIAN CREDITORS' COMMITTEE
### (motion returnable May 8, 2014)

CANADIAN CREDITORS COMMITTEE'S RESPONSE TO MOTIONS SEEKING
SEALING OR CONFIDENTIALITY ORDERS FOR TRIAL SUBMISSIONS

May 5, 2014

**KOSKIE MINSKY LLP**
20 Queen Street West, Suite 900
Toronto, ON M5H 3r3

Mark Zigler/Ari Kaplan/Jeff Van Bakel
Tel. 416-595-2090
Fax. 416-204-2877

Lawyers for the Canadian Former
Employees and Disabled Employees
through their court appointed
Representatives

**CAW-CANADA LEGAL
DEPARTMENT**
205 Placer Court
Toronto, ON M2H 3H9

Barry Wadsworth
Tel: 416.495.3776
Fax: 416.495.3786

Lawyers for the Canadian Autoworkers
Union

**SHIBLEY RIGHTON LLP
w/ NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, ON M5H 3E5

Arthur O. Jacques/ Thomas McRae
Co-Counsel: Janice Payne / Steve Levitt
Tel: 416.214.5213/5206
Fax:416.214.5413/5400

Lawyers for active and transferred
employees of Nortel Canada

**McCARTHY TÉTRAULT LLP**
TD Bank Tower, Suite 5300
Toronto Dominion Centre
66 Wellington Street West
Toronto ON M5K 1E6

R. Paul Steep / James D. Gage / Barbara J.
Boake
Tel: 416.601.7998
Fax: 416.868.0673

Lawyers for Morneau Shepell Ltd., as
administrator of the Nortel Canada
registered pension plan

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
155 Wellington Street West, 35th Floor
Toronto, ON M5V 3H1

Ken Rosenberg / Lily Harmer / Massimo
Starnino
Tel: 416.646.4300
Fax: 416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

  - and –

**DLA PIPER LLP (US)**

Selinda A. Melnik (DE 4032)
1201 N. Market Street, Suite 2100
Wilmington Delaware 19801
Telephone: (302) 468-5650
E-mail:  selinda.melnik@dlapiper.com

  - and –

Richard Hans  (admitted *pro hac vice)*
Timothy Hoeffner (admitted *pro hac vice)*
Farah Lisa Whitley-Sebti (admitted *pro ha)*
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone:  (212) 335-4500
E-mail:  richard.hans@dlapiper.com
E-mail:  timothy.hoeffner@dlapiper.com
E-mail:  farahlisa.sebti@dlapiper.com

*Counsel for the Canadian Creditors Committee*

Court File No.  09-CL-7950

**ONTARIO**

**SUPERIOR COURT OF JUSTICE**

**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

**FACTUM OF THE CANADIAN CREDITORS' COMMITTEE**
**(motion returnable May 8, 2014)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Case No. 09-10138 (KG) |
| NORTEL NETWORKS INC., *et al.,* | ) (Jointly Administered) |
| | ) |
| Debtors. | ) Re: Docket No. 13461, 13462, 13463 |
| | ) Hearing:  May 8, 2014 @ 11:00 a.m. |
| | ) |

CANADIAN CREDITORS COMMITTEE'S RESPONSE TO MOTIONS SEEKING SEALING OR CONFIDENTIALITY ORDERS FOR TRIAL SUBMISSIONS

**PART I - OVERVIEW**

1.      Motions brought by (i) Ernst and Young Inc. in its capacity as monitor (the "Monitor") of Nortel Networks Corporation *et al.* (the "Canadian Debtors") and the Canadian Debtors [U.S. Docket No. 13463] and by (ii) Nortel Networks Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "US Debtors")

[U.S. Docket Nos. 13461 and 13462] seek "sealing" or "confidentiality" orders over unidentified and unspecified trial exhibits and seek to redact unidentified trial submissions.

2.      The Canadian Creditors' Committee ("CCC") opposes the relief sought by the Monitor/Canadian Debtors and the US Debtors. The CCC represents the interests of more than 20,000 pensioners and other pension interests, long-term disabled and other employees whose entitlements have been cut, and who stand to lose significantly more depending upon the results of the trial of these proceedings.

3.      Canada and the US do not have secret trials. It is a fundamental tenet of natural justice that court proceedings must be transparent and open to the public in all but the most exceptional circumstances. The public, as well as affected parties, have the presumptive right to know what is going on in judicial proceedings, particularly in a case where there are tens of thousands of pensioners worldwide with a direct interest in the outcome.

4.      The open court principle is not one to be readily abrogated. The onus is on the party seeking to conceal trial exhibits from the public that such an extraordinary order is justified. The order sought by the Monitor/Canadian Debtors and the US Debtors effectively seeks to switch that onus by requiring all trial material to be sealed pending a "non-confidential" designation to be bestowed at a later date.

5.      These court proceedings have already garnered significant public attention, which will undoubtedly continue throughout the trial. In order to maintain the integrity

of the process, and to preserve the public's confidence in the administration of justice, it is imperative that the evidence at trial remain transparent and publicly accessible.

6.      The CCC represents pensioners and former employees who have a direct and material interest in the outcome of this trial. They should be permitted to review and access all documents that the courts will rely upon when determining their ultimate entitlement.

## PART II - THE FACTS

### Background

7.      Nortel was a large multi-national technology enterprise headquartered in Canada, with a history dating back to the nineteenth century. At its peak, Nortel has annual revenue of approximately $30 billion and employed approximately 93,000 people.[1]

8.      On January 14, 2009, Nortel's Canadian debtors, U.S. debtors, and UK/EMEA (Europe, Middle East and Africa) debtors commenced insolvency proceedings in their respective jurisdictions. Thereafter, Nortel liquidated its lines of businesses and residual portfolio of patents which generated approximately $7.3 billion (the "Sale Proceeds"). The Sale Proceeds are currently being held in escrow. The trial of these proceedings will determine the allocation of the Sale Proceeds between the estates, with an ultimate distribution to the various creditors of those estates.[2]

---

[1] Affidavit of Donald Sproule sworn May 5, 2014, at para. 4.
[2] The One Hundred and Fifth Report of the Monitor dated May 2, 2014 (the "One Hundred and Firth Report"), paras. 1-6; Affidavit of Donald Sproule sworn May 5, 2014, at para. 5.

9.      On June 11, 2014, the Honourable Mr. Justice Morawetz of the Ontario Superior

Court of Justice, Commercial Court, and The Honourable Kevin Gross, Chief United

States Bankruptcy Judge, signed orders pertaining to the treatment of documents,

depositions, examinations for discovery, exhibits to depositions, or examinations for

discovery, affidavits, testimony and any other information produced (the "Discovery

Material") with respect to the **discovery process** of this proceeding only (collectively,

the "Protective Order").[3]

10.     The Protective Order made no provisions for the treatment of documents or

evidence at trial. Article 8(d) of the Protective Order states:

> This Protective Order shall not, by default, govern the use of Confidential or
> Highly Confidential Discovery Material <u>at the trial</u>. Instead, the Parties shall
> meet and confer in good faith, and seek instructions from the Court(s) as
> necessary, prior to the start of any trial in the Proceedings regarding the use of
> Confidential of Highly Confidential Discovery material at such trial or hearing.
> The Parties reserve all right with respect to trial procedures and the entry of this
> Protective Order shall be without prejudice to any position a Party may take in
> connection with the use of Confidential or Highly Confidential Material at the
> trial.[4] (emphasis added).

11.     The Core Parties have met and conferred to discuss the treatment of what certain

of them, but not the courts, have deemed confidential or highly confidential material,

pursuant to Article 8(d) of the Protective Order. No agreement has been reached.[5]

**The Relief Sought by the Monitor and US Debtors**

12.     The Monitor/Canadian Debtors and the US Debtors are seeking sealing orders

over a group of as of yet unidentified and unspecified documents.

---

[3] One Hundred and Fifth Report, paras. 11.
[4] One Hundred and Fifth Report at Appendix "B", Motion Record of the Monitor at p. 47.
[5] One Hundred and Fifth Report, paras. 17.

13.    Of the 16,000 documents that have been designated as trial exhibits, the Monitor/Canadian Debtors have prioritized a subset of 6,500 of these documents (the "Priority Trial Exhibits") to determine if they fall into one of the following four categories:

    (a)    Business Sales Confidentiality Concerns;

    (b)    Minister of National Revenue;

    (c)    Third Party Contracts that Contain Confidentiality Clauses; and

    (d)    Personal Information.[6]

14.    The Monitor/Canadian Debtors seek the sealing or redaction of a "specified list" of the Priority Trial Exhibits. However, the specified list has not been produced to the Core Parties even though the trial commences on May 12, 2014.[7]

15.    The moving parties also seek to implement a rolling review process over the remaining 16,000 trial exhibits, as well as transcripts, expert reports, affidavit and trial briefs which have not been designated as Priority Trial Exhibits (the "Rolling Review Process"). The Rolling Review Process would have those documents reviewed pursuant to "specified time frames" - which as of yet have *not* been specified – in priority with their anticipated use at trial.[8]

---

[6] The One Hundred and Fifth Report, paras. 18 -20.
[7] The Monitor's Notice of Motion at para. 1(b); The One Hundred and Firth Report at paras. 19 & 26.
[8] The Monitor's Notice of Motion at para. 1(c); The One Hundred and Firth Report at para. 27.

16.     Although not specifically stated, the Protective Order is essentially sought to be extended in the interim, and all court material is to be filed under seal pending further order of the courts. This is not acceptable to the CCC and is contrary to law.

**Interest to the Public**

17.     Nortel's insolvency and the resulting joint trial have generated widespread public and media interest globally, and particularly in Canada. The trial will unquestionably generate further attention, which reflects the public's interest in learning how the Sales Proceeds are to be allocated.

18.     The CCC represents tens of thousands of pensioners and former creditors of Nortel with a direct and material interest in the outcome of this trial. Their confidence in the administration of justice has the potential to be impaired if documents are ordered to be sealed and not accessible to them.[9]

---

[9] Affidavit of Donald Sproule sworn May 5, 2014, at paras. 8 & 10..

**PART III - ISSUES AND THE LAW**

    (a)    **Protective Orders and the Open Court Principle**

19.    The judicial process in Canada and the US is premised on the open court principle. This principle finds expression in the Charter and in the U.S. Constitution. The protection of this public interest is a paramount consideration for the courts. [10]

20.    A sealing or confidentiality order involves an infringement on freedom of expression.[11] As a result, the onus is on the moving party that seeks to conceal information from the public to meet the following strict test:

    (a)    such an order is necessary in order to prevent a serious risk to an important interest, including a commercial interest, in the context of litigation because reasonably alternative measures will not prevent the risk; and

    (b)    the salutary effects of the confidentiality order, including the effects on the right of civil litigants to a fair trial, outweigh its deleterious effects, including the effects on the right to free expression, which in this context includes the public interest in open and accessible court proceedings.[12]

21.    In order to qualify as an "important commercial interest", the interest in question cannot merely be unique to the party requesting the order; the interest must be a *public*

---

[10] *Sierra Club,* 2002 SCC 41, at paras. 1 & 36; *Publow v. Wilson,* [1994] O.J. No. 3036 (Gen Div) at para. 8; *Leucadia, Inc. v. Applied Extrusion Techs., Inc.,* 998 F.2d 157, 161 & n.6 (3d Cir. 1993) (recognizing "that the First Amendment, independent of the common law, protects the public's right of access to civil proceedings").
[11] *Sierra Club,* 2002 SCC 41, at para. 56; *see also Leucadia,* 998 F.2d at 161 & n.6 (recognizing access to civil trials is First Amendment right).
[12] *Sierra Club,* 2002 SCC 41, at para. 56.

interest.[13] It is not enough for a company to assert it will lose money if a sensitive document is disclosed in order to justify a protective order. Speaking for a unanimous court in *Sierra Club,* Iacobucci J. stated, "the open court rule only yields "where the *public* interest in confidentiality outweighs the public interest in openness".[14]

22.     The onus that is placed on the party seeking to conceal the information has been described as a "heavy onus", under which "[i]t must be demonstrated that it is necessary to deny public access in order to protect a value of "super-ordinate importance.'"[15]

23.     Under the first branch of the Sierra Club test, the moving party must satisfy the court that the risk of harm from disclosure is *real and substantial*, and is well grounded in the evidence. Evidence that is speculative and lacks specificity is insufficient.[16]

24.     Canadian jurisprudence confirms that the court cannot accept categories or blanket designations of documents to be concealed from the public. The Court must engage in a document by document review in order to ensure the protective order is not overly broad and to ensure the documents to be concealed are actually confidential. The proper approach is that all documents are presumptively to be disclosed with the burden on the moving party to satisfy the court which portions of the material should not be

---

[13] *Sierra Club,* 2002 SCC 41, at para. 56.
[14] *Sierra Club,* 2002 SCC 41, at paras. 55-56 [Emphasis and quotations in original], citing *Re N. (F.)*, [2000] 1 S.C.R. 880.
[15] *Ontario Council of Hospital Unions v. Ontario (Min. of Health),* 85 O.R. (3d) 55 at para. 77; citing *MacIntyre v. Nova Scotia* (Attorney General), [1982] 1 S.C.R. 175 at 185-187.
[16] *Anderson v. St. Jude Medical Inc.,* 2010 ONSC 5191, at para. 14; *Fairview Donut Inc. v. TDL Group Corp.,* 2010 ONSC 789 at para. 37.

released to the public.[17] The concept of a "Rolling Review Process" is unheard of and contrary to any public interest.

25.    In *Hollinger Inc. v. The Revelstone Corporation,* the Court of Appeal for Ontario rejected the exact approach now being sought by the moving parties.[18] In *Hollinger,* the motion judge made the kind of blanket order designating all the materials filed by the applicants on the motion as confidential, without conducting a review, on the grounds that the documents filed might prejudice Mr. Black's criminal trial in the US. The Court of Appeal for Ontario overturned the order, in part because "the motion judge erred by failing to consider whether there was a portion of the sealed material that could be released."[19]

26.    The Court of Appeal for Ontario stated:

> The first reason the motion judge offered for declining to embark on a document-by-document review was that he was aware of the charges Mr. Black was facing in only the most general way, and he was not in a position to determine what of the material might be said to be relevant or prejudicial to the defence of those charges. The proper perspective should have been that all the material was presumptively disclosed and that the burden was on Mr. Black to satisfy the court as to which portions of the material should not be released. If the specific nature of the charges was relevant to that determination, the onus was on the respondents to place the necessary information before the court...
>
> The motion judge also observed that a document-by-document review would be time-consuming and costly to Hollinger and the Blacks. These parties were seeking a special dispensation of the court — a departure from the open court principle that routinely applied. There was no onus on the Globe to establish that granting its routine right of access could be accomplished efficiently and without occasioning cost to the parties. The

---

[17] *Hollinger Inc. v. The Ravelstone Corporation,* 2008 ONCA 207 para 108 & 110.[*Hollinger*], leave to appeal denied 2008 CanLII 53791 (SCC).
[18] *Hollinger, supra.*
[19] *Hollinger, supra* at para. 107.

record did not disclose any evidence that the cost and inconvenience to Hollinger and the Blacks of the special treatment they were seeking would be unreasonable in the circumstances.[20]

27.    The approach taken by the Monitor/Canadian Debtors and the US Debtors is even more extreme than the moving parties in the *Hollinger* decision. Not only are they seeking a sealing order over categories of documents, an approach that was unconditionally rejected by the Court of Appeal for Ontario in *Hollinger*, but they have failed to even *identify* the individual documents in each category.

**The US Approach**

28.    Like Canadian law, U.S. law has adopted a strong presumption against closing judicial proceedings and records.[21]  The Third Circuit has held that "[p]ublic access to civil trials . . . plays an important role in the participation and the free discussion of governmental affairs."[22]  Thus, a party moving to restrict public access to trials and exhibits bears a heavy burden of demonstrating that the party will suffer a "clearly defined and serious injury" upon public disclosure.[23]  The Third Circuit has held that "[i]n delineating the injury to be prevented, specificity is essential.  Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient."  Moreover, issuance and maintenance of a sealing order must be based upon "*current evidence* [that] show[s] how public dissemination *now*" would cause harm.[24]

---

[20] *Hollinger, supra*, at paras. 108 & 110.
[21] *See E.E.O.C. v. Kronos, Inc.*, 620 F.3d 287, 302 (3d Cir. 2010) ("[T]here is a strong presumption against entering an order of confidentiality whose scope would prevent disclosure of information that would otherwise be accessible under a relevant freedom of information law."); *In re Cendant Corp.*, 260 F.3d 183, 193-94 (3d Cir. 2001) (recognizing "strong presumption . . . disallowing the routine and perfunctory closing of judicial records").
[22] *Cendant Corp.*, 260 F.3d at 194
[23] *Cendant Corp.*, 260 F.3d at 194 (requiring movant to show "specific examples" of alleged harm).
[24] *Leucadia*, 998 F.2d at 167 (internal citation omitted) (emphasis in original).

29.     Like the Court of Appeal for Ontario, the Third Circuit has required the proponent of a sealing order to justify the need for confidentiality with respect to *all* documents it seeks to shield from disclosure.   In *Leucadia v. Applied Extrusion Technologies*, the Third Circuit vacated the trial court's decision to keep a sealing order in place in response to a challenge to the order by a third party intervenor.[25]  The order had initially been entered to cover broad categories of documents based only on the court's familiarity with their "general nature."[26]  The Third Circuit rejected the trial court's decision to maintain the documents under seal without conducting a "document-by-document review of their contents," and the case was remanded so that the trial court could make specific determinations as to whether the sealing order continued to be justified.[27]

30.     The Third Circuit has also imposed a heightened standard for sealing court records where, as here, a significant public interest is implicated.  In *re Cendant Corp.*, the Third Circuit imposed "with particular strictness" the already high standard for departing from the default rule of open records.[28]  The Court noted that because the case before it was a class action lawsuit, certain members of the public were parties to the case and had a special interest in the documents and proceedings sought to be closed.[29]  As a result, the Third Circuit held the trial court was required to find "compelling countervailing interests" supporting the sealing order, a standard the Third Circuit

---

[25] *See Leucadia*, 998 F.2d at 166-67.
[26] *See Id.*, at 166.
[27] *See Id.*, at 167.
[28] *Cendant Corp.*, 260 F.3d at 194.
[29] *See Id.*, at 194.

characterized as requiring "exceptional scrutiny."[30]   The same standard should apply here, where the CCC is representing the interests of a large group of pension and disabled and other employee claimants.

**Application of the test to the documents sought to be concealed.**

31.     Rather than identifying specific documents to be sealed, and seeking to convince the court that those documents warrant departure from the default U.S. and Canadian rule of open judicial proceedings and exhibits, the Monitor/Canadian Debtors and the US Debtors are essentially proposing that the Protective Order currently be extended to all material filed in the trial, subject to certain documents. This approach would turn the open court principle on its head, reverse the onus placed on the moving party, and would mean that all documents are presumptively confidential - and should therefore be concealed from the public- unless designated as otherwise at a later date.

32.     The CCC is unable to assert that the documents to be sealed are non-confidential, because the Monitor/Canadian Debtors and the US Debtors have failed to identify which documents they are seeking to conceal from the public. Accordingly, the CCC is required to respond to this motion in a vacuum.

33.     However, the categories of documents listed in the Monitor's record do not at first blush appear to be confidential. The Nortel entities filed for insolvency protection over five years ago. Nortel has not generated or created any new IP or products in the interim.  Outdated information, even if it was once of a commercially sensitive nature,

---

[30] *Id.*, at 194.

does not warrant a protective order.[31] This principle is especially germane given the short life cycle of much of Nortel's products and intellectual property.

34.     With respect to the "personal information" sought to concealed, the Monitor/Canadian Debtors and the US Debtors have not identified the "privacy and related laws in various jurisdictions" they are relying upon.[32]

35.     Finally, the Rolling Review Process is unworkable. The time for asserting confidentiality is now. The Rolling Review Process would force the courts to deal with a series of sealing order motions, clearing the court rooms, ordering *in camera* hearings, and ordering publication bans in the midst of a carefully constructed trial process; one with allocated times for each Core Party to make its case. The Rolling Review Process would be cumbersome, disorderly and has the potential to disrupt the carefully constructed Trial Protocol ordered by the courts.

36.     The Monitor/Canadian Debtors and the US Debtors have been in possession of the "confidential" and "highly confidential" material starting on June 10, 2013.The trial is to commence in a few days and the moving parties have still not identified which documents they purport to seal for the trial.

37.     In order to preserve the integrity of the process, this trial must be adjudicated in a fair and transparent manner. The burden rests upon the party seeking the sealing order to convince the court that it should deviate from the historic and foundational principle that

---

[31] *Anderson v. St. Jude Medical Inc.,* 2010 ONSC 5191, at paras. 18- 19;
[32] The Monitor's Notice of Motion at para. 2(i)(iv)

the public has a right to know what is going on in judicial proceedings. The circumstances of this case do not justify wavering from this principle.

38.     The CCC represents tens of thousands of pensioners and former creditors of Nortel with a direct and material interest in the outcome of this trial. They are more than mere interested bystanders. An adjudication of their interests based upon even a partial secret record will impair their confidence in the administration of justice.[33]

39.     The Protective Order governed the discovery process only. The discovery process is over. As a result, all trial documents and exhibits are subject to the open trial principle. Absent a moving party satisfying the tests for each specific document it seeks to conceal from the public, all exhibits and trial material should be filed with the court pursuant to the normal process and not under seal.

**PART IV - ORDER REQUESTED**

40.     The CCC requests an Order:

    (a)     Dismissing the motions of the Monitor/Canadian Debtors and the US Debtors are hereby dismissed;

    (b)     declaring that the Protective Order has no application to the trial of these proceedings and that no trial material shall be filed under seal; and

    (c)     requiring all trial material that has previously been filed under seal to be unsealed.

---

[33] Affidavit of Donald Sproule sworn May 5, 2014, at paras. 13-14.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED**

May 5, 2014

_____

**KOSKIE MINSKY LLP**
20 Queen Street West, Suite 900
Toronto, ON M5H 3r3

Mark Zigler/Ari Kaplan/Jeff Van Bakel
Tel. 416-595-2090
Fax. 416-204-2877

Lawyers for the Canadian Former
Employees and Disabled Employees
through their court appointed
Representatives

**CAW-CANADA LEGAL
DEPARTMENT**
205 Placer Court
Toronto, ON M2H 3H9

Barry Wadsworth
Tel: 416.495.3776
Fax: 416.495.3786

Lawyers for the Canadian Autoworkers
Union

**SHIBLEY RIGHTON LLP
w/ NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, ON M5H 3E5

Arthur O. Jacques/ Thomas McRae
Co-Counsel: Janice Payne / Steve Levitt
Tel: 416.214.5213/5206
Fax:416.214.5413/5400

Lawyers for active and transferred
employees of Nortel Canada

**McCARTHY TÉTRAULT LLP**
TD Bank Tower, Suite 5300
Toronto Dominion Centre
66 Wellington Street West
Toronto ON M5K 1E6

R. Paul Steep / James D. Gage / Barbara J.
Boake
Tel: 416.601.7998
Fax: 416.868.0673

Lawyers for Morneau Shepell Ltd., as
administrator of the Nortel Canada
registered pension plan

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
155 Wellington Street West, 35th Floor
Toronto, ON M5V 3H1

Ken Rosenberg / Lily Harmer / Massimo
Starnino
Tel: 416.646.4300
Fax: 416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

 - and –

**DLA PIPER LLP (US)**

Selinda A. Melnik (DE 4032)
1201 N. Market Street, Suite 2100
Wilmington Delaware 19801
Telephone: (302) 468-5650
E-mail:  selinda.melnik@dlapiper.com

 - and –

Richard Hans  (admitted *pro hac vice*)
Timothy Hoeffner (admitted *pro hac vice*)
Farah Lisa Whitley-Sebti (admitted *pro hac
vice*)

1251 Avenue of the Americas

New York, NY 10020-1104
Telephone:  (212) 335-4500
E-mail:  richard.hans@dlapiper.com
E-mail:  timothy.hoeffner@dlapiper.com
E-mail:  farahlisa.sebti@dlapiper.com

*Counsel for the Canadian Creditors*
*Committee*

## SCHEDULE "A"

### List of Authorities

| TAB | DESCRIPTION |
|-----|-------------|
| 1. | *Sierra Club*, 2002 SCC 41 |
| 2. | *Publow v. Wilson,* [1994] O.J. No. 3036 (Gen Div) |
| 3. | *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 161 & n.6 (3d Cir. 1993) |
| 4. | *Ontario Council of Hospital Unions v. Ontario (Min. of Health)*, 85 O.R. (3D) 55 |
| 5. | *MacIntyre v. Nova Scotia (Attorney General),* [1992] 1 S.C.R. 175 |
| 6. | *Anderson v. St. Jude Medical Inc.*, 2010 ONSC 5191 |
| 7. | *Fairview Donut Inc. v. TDL Group Corp.,* 2010 ONSC 789 |
| 8. | *Hollinger Inc. v. The Ravelstone Corporation*, 2008 ONCA 207 |
| 9. | *E.E.O.C. v. Kronos, Inc.*, 620 F.3d 287, 302 (3d Cir. 2010) |
| 10. | *In re Cendant Corp.,* 260 F.3d 183, 193-94 (3d Cir. 2001) |

**SCHEDULE "B"**
**List of Statutes**


*Canadian Charter of Rights and Freedoms*, **Part I of the** *Constitution Act*, **1982 being Schedule B to the** *Canada Act* **1982 (U.K.), 1982, c. 11.**

**Fundamental freedoms**

2. Everyone has the following fundamental freedoms:

(b) freedom of thought, belief, opinion and expression, including freedom of the press and other media of communication;

---

**US Const Amend I**

**Amendment 1 – Freedom of Religion, Press, Expression**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-35, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, et. al.

APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS
AMENDED

Court File No: 09-CL-7950

---

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at TORONTO

---

**FACTUM OF THE CANADIAN CREDITORS
COMMITTEE**

---

**KOSKIE MINSKY LLP**
Mark Zigler / Susan Philpott / Ari Kaplan
mzigler@kmlaw.ca
Lawyers for the Canadian Former Employees and Disabled
Employees through their court appointed Representative

**McCARTHY TÉTRAULT LLP**
R. Paul Steep / James D. Gage / Barbara J. Boake
psteep@mccarthy.ca
Lawyers for Morneau Shepell Ltd., as administrator of the
Nortel Canada registered pension plans

**PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
Ken Rosenberg / Lily Harmer / Massimo Starnino
ken.rosenberg@paliareroland.com
Lawyers for the Superintendent of Financial Services as
Administrator of the Pension Benefits Guarantee Fund

**UNIFOR LEGAL DEPT.**
Barry Wadsworth
barry.wadsworth@unifor.org
Lawyers for the Canadian Autoworkers Union

**SHIBLEY RIGHTON LLP**
**NELLIGAN O'BRIEN PAYNE LLP**
Arthur O. Jacques / Thomas McRae / Steve Levitt
arthur.jacques@shibleyrighton.com
Lawyers for active and transferred employees of
Nortel Canada