UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NORTEL NETWORKS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10138-KG<br>(Jointly Administered) |

— and —

Court File No. 09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER PART IV OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Nortel Networks Inc. (6332), NNCC (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), and Nortel Networks Cable Solutions Inc. (0567) (collectively, the "US Debtors").

## JOINDER OF THE BANK OF NEW YORK MELLON, AS INDENTURE TRUSTEE, IN THE PRE-TRIAL BRIEFS OF (A) THE US INTERESTS AND (B) THE AD HOC GROUP OF BONDHOLDERS

The Bank of New York Mellon, as indenture trustee (in such capacity, "BNY"), hereby submits this joinder (this "Joinder") and statement in support of (a) the *Pre-Trial Brief of the US Interests* [ECF # 13454] and (b) the *Pre-Trial Brief of the Ad Hoc Group of Bondholders*, dated May 2, 2014 [ECF # 13456] (together, the "Briefs").

### BACKGROUND

1. BNY serves as the indenture trustee under (a) that certain Indenture dated as of July 5, 2006 among Nortel Networks Limited ("NNL") as issuer, Nortel Networks Corporation ("NNC") and Nortel Networks Inc. ("NNI") as guarantors, and BNY as indenture trustee and (b) that certain Indenture dated as of March 28, 2007 among NNC as issuer, NNL and NNI as guarantors, and BNY as indenture trustee (as each indenture may have been amended, modified or supplemented). As of the commencement of these chapter 11 cases, the outstanding principal amount of the notes for which BNY is the indenture trustee was approximately $4 billion.

### JOINDER

2. BNY respectfully submits that the only allocation theory that is supported by the evidence and the law is the one advanced in the Briefs – each selling debtor must be allocated the fair market value of the assets, rights and property that such selling debtor sold or relinquished in each sale transaction. Accordingly, BNY files this Joinder in support of the Briefs.

3. The allocation positions advanced by each of the Canadian Monitor and Canadian debtors, the Canadian Creditors' Committee (the "CCC"), the EMEA joint

2

administrators and the Nortel Networks UK Pension Trust Limited and the Board of the Pension Protection Fund (the "UKP") are supported by neither the facts nor the law, and should be rejected for the reasons set forth herein and in the Briefs. In particular, BNY submits that the "*pro rata* distribution" (*i.e.*, global substantive consolidation) theory espoused by the CCC and the UKP should be rejected, as substantive consolidation is a truly extraordinary remedy that (a) can be imposed non-consensually within the Third Circuit only in extremely limited circumstances (which are not present here, as the evidence at trial will establish) and (b) has never been imposed non-consensually across national borders.

    4.    Significantly, the holders of the notes for which BNY is the indenture trustee are the beneficiaries of a critical investor protection that was explicitly bargained for – a guarantee from NNI. By pooling all assets and claims together and effectively canceling the guarantees, the *pro-rata* distribution theory would eviscerate that protection.[2]

---

[2] Not only is the *pro-rata* distribution theory not supported by the law, it is not supported by the equities either. Distributions under a *pro-rata* scheme could not be made until all claims against all of the Nortel estates are resolved. Only then could the allocation percentage be calculated and distributions be made. This will likely take years to accomplish, and there is nothing "equitable" about making creditors wait for their first distribution until *all* claims against *each* estate are resolved (particularly since these cases have already been pending for more than five years).

NEWYORK/#342512.1

5.  For the reasons set forth in this Joinder and for the reasons set forth in the Briefs themselves, BNY respectfully requests that the Courts approve the allocation position set forth in the Briefs.

Dated: May 6, 2014

> VEDDER PRICE P.C.
>
> By: /s/ *Michael J. Riela*
> Michael J. Riela
> 1633 Broadway, 47th Floor
> New York, NY 10019
> Telephone: 212-407-7700
> Email: mriela@vedderprice.com
>
> - and -
>
> Sheryl Seigel
> McMillan LLP
> Brookfield Place
> 181 Bay Street, Suite 4400
> Toronto, Ontario
> Canada M5J 2T3
> Telephone: 416-865-7000
> Email: sheryl.seigel@mcmillan.ca
>
> *Attorneys for The Bank of New York Mellon, as Indenture Trustee*

NEWYORK/#342512.1