**<u>EXHIBIT B</u>**

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**REPLY FACTUM OF THE MONITOR AND THE CANADIAN DEBTORS**

**(Motion to Strike Expert Reports and Testimony of Daniel R. Bereskin QC**
**and Bruce W. Stratton)**

**Goodmans LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Jay A. Carfagnini** LSUC#: 22293T
jcarfagnini@goodmans.ca
**Peter Ruby** LSUC#: 38439P
pruby@goodmans.ca
**Joseph Pasquariello** LSUC#: 38390C
jpasquariello@goodmans.ca
**Hannah Arthurs** LSUC#: 55337O
harthurs@goodmans.ca

Tel:    416.979.2211
Fax:    416.979.1234

Lawyers for the Monitor

**Gowling Lafleur Henderson LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON  M5X 1G5

**Derrick Tay** LSUC#: 21152A
derrick.tay@gowlings.com
**Jennifer Stam** LSUC#: 46735J
jennifer.stam@gowlings.com

Tel:    416.862.7525
Fax:    416.862.7661

Lawyers for the Canadian Debtors

**TO:  THE CORE PARTIES SERVICE LIST**

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**REPLY FACTUM OF THE MONITOR AND THE CANADIAN DEBTORS**

**(Motion to Strike Expert Reports and Testimony of Daniel R. Bereskin QC
and Bruce W. Stratton)**

## PART I - INTRODUCTION

1.     This Reply Factum is filed in support of the Monitor and the Canadian Debtors' motion for

an Order striking the Bereskin and Stratton Reports and in reply to the US Interests' Responding

Factum received on April 25, 2014.[1]  Capitalized terms used herein but not defined have the

meanings ascribed to them in the Monitor and the Canadian Debtors' Factum dated April 14, 2014

(the "**Moving Factum**").[2]

---

[1] The Monitor and the Canadian Debtors also seek an Order striking the transcripts from the Bereskin and Stratton
depositions.  In the alternative, if the Bereskin Report and/or the Stratton Report are not struck, the Monitor and the
Canadian Debtors seek leave to file the Burshtein Report in response to the Bereskin and/or Stratton Reports.

[2] The terms "US Interests" used in this Reply Factum refers to Nortel Networks Inc. and certain of its affiliates, as
debtors in possession (collectively, the "US Debtors"), together with the Official Committee of Unsecured Creditors
of the US Debtors.

2.      As noted in paragraph 3 of the Moving Factum, a companion motion has been brought by the Monitor and the Canadian Debtors in the US Proceedings for the same relief and the within motion and the US Motion are to be heard as a joint motion.  In order to avoid duplicative materials and submissions, the Monitor and the Canadian Debtors respectfully request that this Court refer to the *"Reply in Support of Motion of the Monitor and Canadian Debtors for entry of an Order Striking the Expert Reports and Testimony of Daniel R. Bereskin QC and Bruce W. Stratton or, in the Alternative, Granting Leave to File the Expert Report of Sheldon Burshtein in Rebuttal to Reports of Daniel R. Bereskin QC and Bruce W. Stratton"* and the declaration of Daniel Guyder dated May 5, 2014 (the "**US Reply Materials**") filed in the US Proceedings.  The Monitor and the Canadian Debtors repeat and rely on the submissions made in the US Reply Materials and in their Moving Factum.

3.      After the Monitor and the Canadian Debtors' motion to strike the Bereskin and Stratton Reports was served, the U.K. Pension Claimants delivered a Notice of Filing in the US Proceedings with respect to this motion.  In that Notice, the U.K. Pension Claimants stated that they have not sought to have the Stratton Report admitted in the Canadian proceedings (a position which up until that point had not been made clear).  Since the U.K. Pension Claimants are not seeking to have the Stratton Report admitted in the Canadian proceedings, the relief being sought in the within motion before this Court is now limited to striking the Bereskin Report and related deposition testimony, or, in the alternative, granting leave to file the Burshstein Report in response to the Bereskin Report.  The Monitor and the Canadian Debtors are still pursuing their request to have the Stratton Report struck in the US Proceedings.

## PART II - LAW & ARGUMENT

4.      As set out in the Monitor and the Canadian Debtors' Moving Factum, the Bereskin Report is an improper rebuttal report, both because of the opinions offered by Mr. Bereskin and the timing of the delivery of the report.  The Bereskin Report is inadmissible as it does not meet the criteria for the admission of expert evidence and is not proper rebuttal.

**(A)      THE BERESKIN REPORT DOES NOT PROPERLY REBUT ANY OF THE EXPERT REPORTS SUBMITTED BY THE MONITOR AND THE CANADIAN DEBTORS**

5.      The Bereskin Report, which presents opinion evidence on how this Court should interpret the MRDA from a legal perspective (or purportedly based on "custom and practice"), is not responsive to the expert reports tendered by the Monitor and the Canadian Debtors.  The expert reports tendered by the Monitor and the Canadian Debtors address the implications of the MRDA from a financial, economic, accounting and valuation perspective.  Whether the views as to the meaning of the MRDA are based on their own reading or from instruction from counsel, the views are just assumptions as to how the MRDA should be interpreted, necessary for the Court to know how to evaluate the evidence they do offer about, for example, the value of assets transferred or surrendered in sales.  That is quite different from Mr. Bereskin's evidence which is about, and only about, the meaning of the MRDA.

6.      **Mr. Green**.  Mr. Green, who is not a lawyer, does not purport to offer any legal interpretation of the MRDA.  Mr. Green is clear that "[t]he court gets to decide on the interpretation of a contract" and indeed that "the court is infinitely more skilled" than he is to do so with respect to the MRDA.  Mr. Green makes no secret that he is "not the person to be asking" about legal ownership because it "is not within [his] purview."  Instead, Mr. Green explains that

his report only assists "the court in evaluating the financial, accounting and valuation related issues" of the proceedings.

> Transcript from the deposition of Philip Green held on March 31, 2014, p. 164
> line 18 to p. 165 line 10; p. 128 lines 8 to 23 and p. 164 line 15 to p. 164 line 19;
> Exhibit "A" to the Declaration of Daniel Guyder (the "**Guyder Declaration**")
> (Exhibit "2" to the Affidavit of Monique Allen sworn May 5, 2014 (the "**Allen
> Affidavit**"); Reply Motion Record, Tab 3(A)

7.    **Dr. Reichert.**  Dr. Reichert is clear that he is not offering a legal opinion on how to interpret the rights under the MRDA.  When asked by counsel for the US Interests whether he was "offering an opinion on how the Court should read the license grant under the MRDA," Dr. Reichert stated "No.  To be clear, I'm offering an opinion regarding the implications -- the economic implications of the license as I read the license.  And I read the license as an economist." Dr. Reichert does not offer an expert opinion on how the contract should be interpreted, but only on its consequences assuming a certain interpretation.

> Transcript from the deposition of Dr. Timothy Reichert held on March 20, 2014,
> p. 24 lines 15 to 20 and p. 30 lines 8 to 14; Exhibit "B" to the Guyder Declaration
> (Exhibit "2" to the Allen Affidavit); Reply Motion Record, Tab 3(B)

8.    **Messrs. Berenblut and Cox.**  In his deposition, Mr. Berenblut echoed the sentiments expressed by Messrs. Green and Reichert.  Mr. Berenblut explains that with respect to his limited discussion of the MRDA, he "cannot state that here is my interpretation of the contract from a legal perspective" and explains that "[t]he MRDA is clearly a legal contract and I will always defer to the Court and to -- especially to the Court in the interpretation of that legal contract."  He is explicit that he did not "want to appear to be providing a legal opinion."  Mr. Berenblut states that with respect to his discussion of the MRDA, "I understand how that contract impacts the economics of what I'm doing and the valuation of what I'm doing" and that "when I read contracts in my work I have to understand the economic and valuation and accounting underpinnings to them in order to

be able to do the work. I can't offer a legal opinion on them." While he "read [the contracts] as a valuator and an economist and a financial expert," his evidence is not offered on the issue of the interpretation of the MRDA.

> Transcript from the deposition of Mark Berenblut held on March 26, 2014, p. 25 lines 10 to 15; p. 26 lines 2 to 15; p. 39 lines 5 to 7; p. 26 lines 20 to 25; p. 28 lines 8 to 13 and p. 32 lines 9 to 22; Exhibit "C" to the Guyder Declaration (Exhibit "2" to the Allen Affidavit); Reply Motion Record, Tab 3(C)

9.      Dr. Cox is equally clear that it is "not [his] job to tell the court what it should or should not consider" with respect to the proper interpretation of the MRDA. Instead, Dr. Cox "as an economist, especially one who specializes in industrial economics . . . [has] some expertise in thinking about how contracts work and what – well, basically how contracts work and how the incentives would operate."[3] Dr. Cox is explicit that he is qualified to explain the economic consequences or interpret the economic implications of a contract, but he has not purported to opine on the proper legal meaning of the MRDA.

> Transcript from the deposition of Alan Cox held on March 26, 2014, p. 102 lines 7 to 21 and p. 290 line 24 to p. 291 line 3; Exhibit "D" to the Guyder Declaration (Exhibit "2" to the Allen Affidavit); Reply Motion Record, Tab 3(D)

---

[3] The US Interests misrepresent Dr. Cox's testimony to make it appear as though Dr. Cox were opining on custom and practice with respect to contract interpretation in his initial expert report. To be clear, the US Interests' quoted portion of the transcript relates to Dr. Cox's rebuttal report to the initial expert report of Mr. Kinrich, not the initial report from Dr. Cox that the Stratton Report (but not the Bereskin Report) purports to rebut. Moreover, Dr. Cox specifies that he has "[n]o formal training" in law and is not offering any legal opinions. When then asked if Dr. Cox was "offering any expert opinions into custom and practice," Dr. Cox responded that he might offer opinions with respect to custom and practice in licensing and managing portfolios of intellectual property. It is apparent that Dr. Cox is not using the phrase "custom and practice" in a legal sense, but rather to mean how economists generally view matters. Indeed, Dr. Cox states as much when he responds to a question inquiring whether he understands "the phrase custom and practice testimony for an expert." Dr. Cox replies: "I don't know what you mean by custom and practice for an expert." See transcript from the deposition of Alan Cox held on March 26, 2014, p. 41 lines 13 to 14; p. 41 lines 23 to p. 43 line 7 and p. 182 lines 16 to 20; Exhibit "D" to the Guyder Declaration (Exhibit "2" to the Allen Affidavit); Reply Motion Record, Tab 3(D).

**(B)     THE BERESKIN REPORT IS A LEGAL OPINION AND NOT OPINION EVIDENCE ON "CUSTOM AND PRACTICE"**

10.     Despite the US Interests' much repeated refrain that the Bereskin Report provides "custom and practice" opinion evidence, the Bereskin Report presents a legal opinion, not the custom and practice of the industry, as set out in the Monitor and the Canadian Debtors' Moving Factum.

11.     The fact that the Bereskin Report uses the term "custom and practice" 23 times in 18 pages of text does not make it so.  The content of the report and the opinions expressed therein make clear that the report attempts to interpret the MRDA by applying Mr. Bereskin's legal knowledge.  The US Interests' incantation of the term "custom and practice" is a transparent attempt to submit the report under the guise of an opinion on custom and practice to avoid it being found inadmissible.

12.     Despite the US Interests' deployment of cases that on the surface may appear similar to the case at hand, the fact remains that Mr. Bereskin's report is a not an admissible report on custom or practice, but an inadmissible opinion on domestic law.  All of the cases cited by the US Interests to support their position are distinguishable.

13.     This is not a case like *Stewart, Teskey* or *Roberge* involving the standard of care or fiduciary duties imposed on members of the legal profession, in which expert evidence of practice is required from a lawyer.  Indeed, in the *Roberge* case, the Supreme Court of Canada upheld the decision of the trial judge distinguishing between the issue of validity of title, on which expert evidence was not admissible, and the issue of notarial practice, on which it was.

> *Stewart v. Canadian Broadcasting Corp.* (1997), 150 D.L.R. (4th) 24 (Ont. Gen. Div.) ("*Stewart*"); US Interests' Book of Authorities at Tab 14
>
> *Teskey v. Canadian Newspapers Co.* (1989), 68 O.R. (2d) 737 (C.A.) ("*Teskey*"); US Interests' Book of Authorities at Tab 15

*Roberge v. Bolduc*, [1991] 1 S.C.R. 374 ("*Roberge*") at paras. 169, 179; US Interests' Book of Authorities at Tab 11

14.    This is also not a case where key terms of the contract are alleged to be given a special meaning by custom and practice, like *Quintette* ("comprehensive general liability (wrap-up) insurance" and "all risks builder's risk property insurance (wrap-up)"), or *Georgia Construction* ("extra haul" and "overhaul"). In such cases, "the meaning of the words used, where they have a notorious customary meaning, may be derived by reference to the relevant trade practice." However, reference to trade practice is not necessary when a term, such as "exclusive licence," has been defined by legal authorities. A quick glance at a textbook is sufficient to ascertain that an exclusive licence gives the licensee the power to exercise a right to the exclusion of all others, including the licensor. The point in issue in this case is the scope of the right, and that is defined by the licence agreement itself.

*Quintette Coal Ltd. v. Bow Valley Resource Services Ltd.* (1987), 21 B.C.L.R. (2d) 203 (B.C. S.C.) ("*Quintette*") at paras. 2, 4-5 (S.C.); US Interests' Book of Authorities at Tab 9

*Georgia Construction Co. v. Pacific Eastern Railway Co.*, [1929] S.C.R. 630 ("*Georgia Construction*") at para. 5; US Interests' Book of Authorities at Tab 8

David Vaver, *Intellectual Property Law: Copyright, Patents, Trade-Marks* (Toronto: Irwin Law, 2011) at 576; Reply Book of Authorities at Tab 1

15.    This is also not a case in which recourse to custom and practice may be necessary to establish the terms of an agreement not fully set out by the parties. In *Charles P. Rowen*, the Court of Appeal found that a contract of agency existed based on the relationship between the parties, and it fell to the Court to determine what rights and responsibilities flowed from the contract as its terms had not been set out. In *Stetson,* the parties had, by a letter of intent which the Court found to be binding, agreed to include certain "standard" clauses in a contract that was never actually drafted, and expert evidence was admitted as to such standard clauses (as the Canadian Debtors

and Monitor have pointed out, the same expert's evidence on the issue of whether the engagement letter constituted a binding agreement was inadmissible).  In this case, the parties' agreement is fully set out in the MRDA.

> *Charles P. Rowen & Associates Inc. v. Ciba-Geigy Canada Inc,* [1994] O.J. No. 1233 (C.A.) ("***Charles P. Rowen***") at paras. 14, 15, 25; US Interests' Book of Authorities at Tab 3
>
> *Stetson Oil & Gas Ltd. v. Stifel Nicolaus Canada Inc.,* [2013] O.J. No. 1058 ("***Stetson***") at para. 97 (S.C.J.—Commercial List); Book of Authorities at Tab 8

16.      This is not a case about foreign law, like *Stasun v. Nesteroff.*  Neither is it a case like *Doncaster v. Smith,* where expert evidence relating to the *Income Tax Act* was admitted on consent of both parties, or like other cases in which the incidence or calculation of tax, or the application of another complex statutory regime, as opposed to the interpretation of the statute itself, was the subject of expert evidence.  In any event, as stated in *Eco-Zone*, these cases provide "no basis upon which to announce the death of the rule against the admissibility of expert evidence as to domestic law."

> *Status v. Nesteroff* (1967), 65 D.L.R. (2d) 340 (Sask. C.A.); US Interests' Book of Authorities at Tab 13
>
> *Eco-Zone Engineering Ltd. v. Grand Falls-Windsor (Town),* 2000 NFCA 21 ("***Eco-Zone***") at paras. 15-16; Reply Book of Authorities at Tab 2, discussing *Doncaster v. Smith,* [1985] B.C.W.L.D. 2905 (B.C. S.C.); US Interests' Book of Authorities at Tab 6
>
> *Walsh v. BDO Dunwoody LLP,* 2013 BCSC 1463 at paras. 38 to 49; Book of Authorities at Tab 3, discussing *Doncaster v. Smith* and other cases

17.      Mr. Bereskin does not play the same role as the expert in *Cargill.*  Unlike that expert, Mr. Bereskin does not describe any common practice *outside the experience of the judge hearing the case,* such as, in that case, the use of a conversion factor based on "dry" as opposed to "wet" gas in

calculating the price to be paid for the gas; and unlike the expert in *Cargill,* he does not refer to any documentary evidence of the practice and usage.

> *Cargill Gas Marketing Ltd. v. Alberta Northeast Gas Limited,* 2008 ABQB 59
> ("*Cargill*") at paras. 18 to 24; US Interests' Book of Authorities at Tab 2
>
> Bereskin Report at para. 22

18.     Neither can Mr. Bereskin's role be compared to that of the experts in *Envirodrive.* Those experts were asked to provide their opinion in a shareholder oppression case as to whether the terms of a licence granted by the corporation were commercially reasonable (so as not to constitute oppression). The issue was not how the terms should be interpreted. Indeed, the Court cautioned that expert opinion about the meaning of the contract would be impermissible. That is the sort of evidence Mr. Bereskin gives here. The Court in *Envirodrive* found that "the true intent of the experts was merely to state their assumptions about the meaning and effect of the License Agreement, to support their conclusions about the reasonableness of those terms, and that is acceptable." This is the sort of evidence that Dr. Reichert, Mr. Green, and Mr. Cox and Mr. Berenblutt gave. They stated their assumptions about the meaning of the MRDA to support their conclusions as to transfer pricing and valuation issues. Their evidence is not offered for the interpretation question itself.

> *Envirodrive Inc. v. 836442 Alberta Ltd.,* 2005 ABQB 446 ("*Envirodrive*") at
> para. 132; US Interests' Book of Authorities at Tab 7

19.     The US Interests cite no authority for the proposition that an attack that focuses only on the assumptions underlying an expert report is proper rebuttal. In the *Bentlay* case, the Court held that it was improper to use a rebuttal report to reassert a party's main position. In so ruling, the Court said ""unlike a true rebuttal report, he makes no response directly to criticize Dr. Joy's assumptions or his methodology, or attempt to discredit Dr. Joy's report." But *Bentlay* does not

stand for the proposition that a report which is not otherwise proper rebuttal becomes proper simply because it addresses an assumption of the other party's expert. The interpretation of the MRDA has been an issue from the delivery of the pleadings and had to be addressed in a timely, initial report.

> *Bentlay v. Corbett*, 2003 BCSC 940 ("**Bentlay**") at paras. 3-4; CCC's Book of Authorities at Tab 12

> *Wright v. Brauer*, 2010 BCSC 1282, [2010] B.C.J. No. 1796 at para. 20; Reply Book of Authorities at Tab 3

## (C)    THERE ARE NO GROUNDS FOR PREVENTING THE INTRODUCTION OF MR. BURSHTEIN'S EVIDENCE

20.    If there was any disregard of a court order as alleged by the US Interests, any such breach was technical in nature, especially here where the circumstances (i.e. having to respond to improper responding evidence) were not addressed in any Court Order. There is no question that the Burshstein Report is responsive to the Bereskin and Stratton Reports and relevant evidence should not be excluded on technical grounds where doing so would prejudice the interests of justice:

> In my view, it should be remembered that any time a Court excludes relevant evidence the Court's ability to reach a just verdict is compromised. Relevant evidence should not be excluded on technical grounds, such as lack of timely delivery of a report, unless the Court is satisfied that the prejudice to justice involved in receiving the evidence exceeds the prejudice to justice involved in excluding it.

> *Hunter v. Ellenberger,* 1988 CarswellOnt 340 at para. 7 (H.C.J.); Reply Book of Authorities at Tab 4

> See also: *Jens Nielsen Custom Contracting Ltd. v. Litwin,* 2012 ONSC 2472, 2012 CarswellOnt 5792 at paras. 29-31; Reply Book of Authorities at Tab 5

21.    The Burshtein Report responds to the Bereskin Report by demonstrating that there is in fact no custom and practice that could assist the Court in interpreting the MRDA. The US Interests

suffer no real prejudice by the introduction of a properly responsive expert report. They had ample opportunity to depose Mr. Burshtein and could have done so while reserving their rights to argue against the admissibility of his report. It would be contrary to justice to exclude the Burshtein Report on technical grounds where it is precisely because the Bereskin Report was not properly filed as an original expert report that the Monitor and the Canadian Debtors were not able to deliver a rebuttal to it in compliance with the Discovery Plan and Litigation Timetable.

## PART III - FILING UNDER SEAL

22.    Pursuant to paragraph 8(b) of the Protective Order dated June 11, 2013 (as amended, the **"Protective Order"**), parties are entitled to file documents or exhibits making reference to confidential or highly confidential materials (including pleadings, memoranda, transcripts and discovery responses) under seal without further order of the Court.

Protective Order, Motion Record, Tab 9, p. 1628

23.    The *"Reply in Support of Motion of the Monitor and Canadian Debtors for entry of an Order Striking the Expert Reports and Testimony of Daniel R. Bereskin QC and Bruce W. Stratton or, in the Alternative, Granting Leave to File the Expert Report of Sheldon Burshtein in Rebuttal to Reports of Daniel R. Bereskin QC and Bruce W. Stratton"* (Exhibit "1" to the Allen Affidavit) and Exhibits "A", "B", "C", "D" and "E" to the Guyder Declaration (Exhibit "2" to the Allen Affidavit) are being filed under seal as they are currently designated Confidential or Highly Confidential in accordance with the Protective Order.

12

**ALL OF WHICH IS RESPECTFULLY SUBMITTED** this 5th day of May, 2014.

*Goodmans LLP per HArthurs*

**Goodmans LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Jay A. Carfagnini**  LSUC#: 22293T
jcarfagnini@goodmans.ca
**Peter Ruby**  LSUC#: 38439P
pruby@goodmans.ca
**Joseph Pasquariello** LSUC#: 38390C
jpasquariello@goodmans.ca
**Hannah Arthurs**  LSUC#: 55337O
harthurs@goodmans.ca

Tel:     416.979.2211
Fax:    416.979.1234

Lawyers for the Monitor

*Gowling per J. Stam per HA .*

**Gowling Lafleur Henderson LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON  M5X 1G5

**Derrick Tay**  LSUC#: 21152A
derrick.tay@gowlings.com
**Jennifer Stam**  LSUC#: 46735J
jennifer.stam@gowlings.com

Tel:     416.862.7525
Fax:    416.862.7661

Lawyers for the Canadian Debtors

SCHEDULE "A"

**LIST OF AUTHORITIES**

1.  David Vaver, *Intellectual Property Law: Copyright, Patents, Trade-Marks* (Toronto: Irwin Law, 2011), excerpt

2.  *Eco-Zone Engineering Ltd. v. Grand Falls-Windsor (Town)*, 2000 NFCA 21

3.  *Wright v. Brauer*, 2010 BCSC 1282, [2010] B.C.J. No. 1796

4.  *Hunter v. Ellenberger*, 1988 CarswellOnt 340 (H.C.J.)

5.  *Jens Nielsen Custom Contracting Ltd. v. Litwin*, 2012 ONSC 2472, 2012 CarswellOnt 5792

## SCHEDULE "B"

### TEXT OF STATUTES, REGULATIONS & BY - LAWS

1.      None.

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**REPLY FACTUM**

| **Goodmans LLP** | **Gowling Lafleur Henderson LLP** |
|---|---|
| Barristers & Solicitors | Barristers & Solicitors |
| Bay Adelaide Centre | 1 First Canadian Place |
| 333 Bay Street, Suite 3400 | 100 King Street West, Suite 1600 |
| Toronto, ON  M5H 2S7 | Toronto, ON  M5X 1G5 |
| | |
| **Jay A. Carfagnini** LSUC#: 22293T | **Derrick Tay** LSUC#: 21152A |
| jcarfagnini@goodmans.ca | derrick.tay@gowlings.com |
| **Peter Ruby** LSUC#: 38439P | **Jennifer Stam** LSUC#: 46735J |
| pruby@goodmans.ca | jennifer.stam@gowlings.com |
| **Joseph Pasquariello** LSUC #: 38390C | |
| jpasquariello@goodmans.ca | Tel:   416.862.5697 |
| **Hannah Arthurs** LSUC#: 55337O | Fax:   416.862.7661 |
| harthurs@goodmans.ca | |
| | Lawyers for the Canadian Debtors |
| Tel:   · 416.979.2211 | |
| Fax:   416.979.1234 | |
| | |
| Lawyers for the Monitor | |

6327158