## EXHIBIT A

Court File No.  09-CL-7950

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## - COMMERCIAL LIST

### IN THE MATTER OF
### THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED
### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

## FACTUM OF THE MONITOR AND THE CANADIAN DEBTORS

### (Motion Regarding the Use of Documents at Trial, Returnable May 8, 2014)

May 7, 2014

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto, Canada  M5H 2S7

Jay A. Carfagnini  (LSUC #: 22293T)
jcarfagnini@goodmans.ca
Alan Mark (LSUC #: 21772U)
amark@goodmans.ca
Jessica Kimmel (LSUC #: 32312W)
jkimmel@goodmans.ca
Peter Ruby (LSUC #: 38439P)
pruby@goodmans.ca
Joseph Pasquariello (LSUC #: 37389C)
jpasquariello@goodmans.ca

Tel:      416.979.2211
Fax:     416.979.1234

**Lawyers for the Monitor, Ernst & Young Inc.**

**Gowling Lafleur Henderson LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON  M5X 1G5

Derrick Tay  (LSUC #: 21152A)
derrick.tay@gowlings.com
Jennifer Stam  (LSUC #: 46735J)
Jennifer.stam@gowlings.com

Tel:  416.862.5697
Fax:  416.862.7661

**Lawyers for the Canadian Debtors**

Court File No.  09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**- COMMERCIAL LIST**

**IN THE MATTER OF**
**THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36,**
**AS AMENDED**
**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

# FACTUM OF THE MONITOR AND THE CANADIAN DEBTORS

## PART I -OVERVIEW

1.     On May 12, 2014, this Court will commence hearing the trial (the "**Trial**") to determine the allocation of proceeds from the sale of Nortel's assets and the litigation of certain related claims asserted against Nortel Networks Corporation ("**NNC**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "**Canadian Debtors**").  The outcome of the Trial will have significant implications for Nortel's creditors and other stakeholders.  In this context, the importance of the open court principle, and the ability of interested parties to attend the Trial, cannot be understated.  This is well recognized by the Canadian Debtors and their court-appointed monitor, Ernst & Young Inc. (the "**Monitor**"), who have and continue to take steps that ensure open access throughout the course of these insolvency proceedings.

2.     As this Court is aware, the context of these proceedings also sometimes gives rise to a need for confidentiality, which derives primarily from the nature of Nortel's business, and the various

post-petition transactions, including asset sales.   This Court has previously recognised the importance of preserving confidentiality where appropriate, and has, for instance, granted sealing orders with respect to many of the documents for post-petition transactions entered into by the Canadian Debtors.   Indeed, a balance between the open court principle and the public interest in preserving confidentiality has been needed and achieved in these proceedings on numerous occasions.

3.      The Monitor and the Canadian Debtors bring this motion in order to achieve the same balance in the upcoming Trial.   In particular, they seek an order in respect of the treatment of confidential information ("**Confidential Information**") as identified in the proposed Order (the "Order", attached as Schedule "C"), and the documents that contain such Confidential Information, in order to protect the interests of third-parties, to which the Canadian Debtors, amongst others, have confidentiality and privacy obligations.   As the Trial will commence in less than a week, a two-stage process is proposed, which would (i) protect against the disclosure of Confidential Information contained in documents that may be used in the portion of the Trial scheduled for May and June; and, (ii) provide a process for the subsequent review of additional documents and sealing or redaction of Confidential Information as may be contained in the exhibits designated as needed for the remainder of the trial.[1]   The proposed process is set out in the Order and discussed in further detail below.

4.      An open court process is facilitated by minimising, if not eliminating, any need to clear the courtroom during the course of the Trial.   The process proposed by the Monitor and Canadian Debtors seeks to do just that, by protecting against the disclosure of Confidential Information and

---

[1] Capitalized terms used herein and not otherwise defined have the meaning given to them in the one hundred and fifth report of the Monitor dated May 2, 2014 (the "**One Hundred and Fifth Report**").

by reducing the potential for reference to such Confidential Information during the course of the hearing. In this vein, the Monitor and Canadian Debtors ask this Court to order that the documents designated for use at the first phase of the Trial will be unsealed other than with respect to a specified set of documents containing Confidential Information, which will be redacted or sealed only as necessary. The process proposed strikes an appropriate and necessary balance between preserving the confidentiality of information that should not be publicly disclosed and the public interest in the Trial being open and accessible.

## PART II - SUMMARY OF FACTS

### Background

5.      On January 14, 2009, the Canadian Debtors were granted protection under the *Companies' Creditors Arrangement Act*, RSC 1985, c. C-36, as amended (the "**CCAA**") by Order of this Honourable Court.

6.      On that same day, NNC's U.S. subsidiaries, including Nortel Networks Inc. ("**NNI**") (the "**US Debtors**"), made voluntary filings in the U.S. Bankruptcy Court for the District of Delaware (the "**US Court**") under Chapter 11 of the United States Bankruptcy Code.

7.      On January 15, 2009, Nortel Networks UK ("**NNUK**") and certain subsidiaries of the Nortel group incorporated in Europe, the Middle East or Africa (the "**EMEA Debtors**") obtained an administration order for the appointment of administrators from the High Court of England and Wales under the Insolvency Act 1986.

### Discovery Process

8.      On May 15, 2013, this Court and the US Court approved orders establishing a litigation plan and discovery plan (the "**Discovery Plan**") in relation to the Trial to allocate of proceeds from the

- 4 -

sale of Nortel's assets (the **"Allocation"**) and certain litigation claims asserted against the Canadian Debtors (the **"Claims"**).

*The Protective Order*

9.      On June 11, 2013, this Court granted a protective order in relation to the production of documents as a part of the discovery process for the Trial. At that time, the Canadian Creditors' Committee (the **"CCC"**) brought a motion regarding the treatment of confidential documents at Trial. The CCC's motion did not proceed at that time on the basis that the issue of how documents would be used at Trial would be re-visited after the discovery process had concluded. The parties expected that the universe of documents that may be used at Trial would be significantly smaller than the many millions that were being reviewed at the outset of the discovery process. Accordingly, they determined that the issue was better addressed closer to Trial. The protective order as granted accounted for these discussions (the **"Protective Order"**).[2]

10.     The Protective Order provides a process for documents produced in the litigation to be identified as "Confidential" or "Highly Confidential"; the Protective Order also addresses the implications of such identification:

(a)      With regard to the discovery process, section 8(c) of the Protective Order provides that the entry of such order "shall be deemed an order authorizing the filing under seal of any Confidential or Highly Confidential Discovery Material and any other document citing, quoting, summarizing or otherwise reflecting information obtained from Confidential or Highly Confidential Discovery Material without any order of either Court required."

---

[2] This Protective Order was approved by the US Court on the same day.

(b)     With regard to the Trial, section 8(d) of the Protective Order provides that it "shall

not, by default, govern the use of Confidential or Highly Confidential Discovery

Material at the trial. Instead, the Parties shall meet and confer in good faith, and seek

instructions from the Court(s) as necessary, prior to the start of any trial in the

Proceedings regarding the use of Confidential or Highly Confidential Discovery

Material at such trial or hearing."

One Hundred and Fifth Report, Appendix "B"

*Steps Taken in Discovery*

11.     In the past year, the parties have engaged in an extensive discovery process that has included

the: conduct of 110 fact witnesses depositions, production of approximately three million

documents, designation of approximately 16,000 documents for use at trial ("**Trial Exhibits**"),

filing of 49 expert reports, reply expert reports and sur-reply expert reports, and the conduct of 33

expert depositions.

One Hundred and Fifth Report, at paras. 10, 16.

12.     The issue of protecting the confidential information that was produced during discovery was

raised during a joint pretrial conference on April 22, 2014.  This Court and the US Court indicated

that any motion to address these issues would be held by way of a joint hearing on May 8, 2014.

The estates agreed to continue to meet and confer in good faith pursuant to section 8(d) of the

Protective Order and to provide the Courts with a proposal on how to address confidentiality

concerns at trial.

13.     The volume of produced materials framed the discussions between the Core Parties

regarding the question of how confidential information ought to be dealt with at Trial.  In light of

the number of Trial Exhibits, the parties prioritized a confidentiality review of the approximately

6,500 Trial Exhibits that have been designated for use during the Allocation portion of the Trial,

scheduled for May and June ("**Priority Trial Exhibits**").  The parties must also address how to

review the balance of Trial Exhibits (the "**Additional Priority Trial Documents**"), that may be

used through the Allocation and Claims Trial.  To this end, the Canadian Debtors, the US Debtors

and the EMEA Debtors (the "**Debtors**") have agreed on and are proposing to implement a rolling

review process (the "**Review Process**") with set time frames for the review of Additional Priority

Trial Documents to determine if any of them need to be sealed or redacted.  The proposed Review

Process prioritizes the deadline for the review of documents in accordance with their anticipated use

at Trial and is set out in more detail below.  The Review Process is necessary to address the

practical reality of the volume of documents that need to be reviewed and the current proximity to

the commencement of the Trial.

One Hundred and Fifth Report at paras. 26-28.

14.     In anticipation of this motion, the Debtors began an early notice process to provide

potentially interested parties with notice of this motion and the issues related to the use of

documents at Trial.

One Hundred and Fifth Report, at para. 21.

**The Documents at Issue**

15.     Many documents at issue belong to a "set" that relates to a particular event or transaction

regarding which there are general confidentiality concerns.  In this vein, sets of documents that

would be covered by the proposed order include: post-petition transaction documents that were

sealed by orders of this Court concurrent with the approval of those transactions, communications

- 7 -

with tax authorities, third-party contracts and third-party personal information held by the Canadian

Debtors, which are described below.

*Post-Petition Sale Documents*

16.     The various asset purchase agreements for the post-filing sales impose confidentiality

restrictions on the Sellers, which in most or all cases include most or all of the Debtors.  These

obligations restrict disclosure of certain business information and types of transaction

documentation, including information about patent and business plans related to patents.

> One Hundred and Fifth Report, Appendix "C".

17.     There is no doubt that such confidentiality clauses were necessary and normal in light of the

nature of the post-petition sales.  Such clauses also create expectations of confidentiality by the

various purchasers of what was often proprietary or otherwise sensitive information.

*Communications with Tax Authorities*

18.     On January 21, 2010, this Court approved an advance pricing agreement between the

Canadian Debtors and the Minister of National Revenue (the "**APA**") and granted an order sealing

the APA pending further court order.  Accordingly, NNL and the Monitor must hold certain

information and communications with tax authorities related to the APA confidential.

> One Hundred and Fifth Report, Appendix "G", at paras. 63-64.

19.     The confidentiality provisions in the APA apply to certain documents that have been

designated for use at Trial.  The Monitor has had ongoing discussions with the Minister of National

Revenue with respect to the confidentiality obligations owed in connection with the APA as related

- 8 -

to the Trial.  The Monitor also advised the Minister that, if necessary, it would seek further order or directions concerning the treatment and permitted use of such information at the Trial.

> One Hundred and Fifth Report at paras. 24, 25.

*Third-Party Contracts*

20.     Many third-party contracts entered into by Nortel entities contain confidentiality clauses. These documents consist primarily of patent licenses or cross-licenses, which contain sensitive proprietary intellectual information belonging to or impacting third-parties.  Third-parties clearly have an interest in ensuring that their proprietary information is protected even though it is no longer being used by Nortel.  In fact, due to the sensitive nature of this information copies of these sensitive contracts were sometimes not provided to the bidders during the course of the post-petition asset sales.  The fact the Trial is occurring does not obviate the interests of these third-parties, or the obligations of the Nortel parties, to keep such information confidential.  As such, the Monitor and Canadian Debtors seek to ensure that the Trial does not result in any breach of their contractual obligations.

21.     The Debtors have notified the counterparties to these agreements that court orders are being sought to protect these agreements from public disclosure.

> One Hundred and Fifth Report, Appendix "D".

*Personal Information*

22.     The Canadian Debtors are subject to privacy and related laws regarding the use of personal information held by them, including personal information of former employees. The types of sensitive information including private personal details (e.g. social security numbers and information about former employee compensation and benefits) and personal financial information.

One Hundred and Fifth Report, at para. 18.

**Protection of Privilege**

23.     The Courts have previously addressed the desire of the Monitor and Canadian Debtors and the other Nortel estates to protect their joint privilege in certain documents produced during the discovery process. Due to the nature of the Nortel enterprise prior to its insolvency, solicitor-client privilege was often held by more than one estate ("**Joint Privilege Documents**"). Accordingly, the Core Parties agreed to an amendment to the Protective Order to confirm the extension of the joint privilege, and its ongoing applicability to Joint Privilege Documents used in the discovery process on a highly confidential basis. The Canadian Debtors did not and do not intend to waive their privilege in certain of those documents that have now been designated by the parties for use at Trial. Underlying this consideration is the fact that although Nortel is no longer an operating business, after the Trial concludes the Monitor and Canadian Debtors will have to negotiate, resolve or litigate third-party claims; they seek to ensure that their positions in respect of those claims will not be prejudiced by the Trial.

One Hundred and Fifth Report, at paras. 29-30.

## PART III – ISSUES AND ARGUMENT

24.     This Court must now determine whether the sealing or redaction of a limited number of

documents and the establishment of a review process for the redaction of other Court documents is

fair and reasonable in the circumstances.


### Only Confidential Information Should be Sealed or Redacted

25.     This Court may grant sealing orders and confidentiality orders generally.    Section 137(2) of

the *Courts of Justice Act* states:

> A court may order that any document filed in a civil proceeding before it be
> treated as confidential, sealed and not form part of the public record.

*Courts of Justice Act,* RSO 1990, c 43.

26.     Similarly, Rule 30.11 of the *Rules of Civil Procedures*, states:

> The court may order that a relevant document be deposited for safe keeping
> with the registrar and thereafter the document shall not be inspected by any
> person except with leave of the court.

*Rules of Civil Procedure,* RRO 1990, Reg. 194.

27.     The Court's jurisdiction to grant orders protecting the confidentiality of documents holds

notwithstanding the presumption of public access to the courts.

*BASF Canada Inc v Max Auto Supply (1986) Inc*, [1999] OJ No 515 at para. 15.

28.     An order protecting Confidential Information for use in a court proceeding must strike a

balance between the disclosure necessary for the conduct of an action and a party's *bona fide* right

to protection of confidential and sensitive information.    If an order is essential to achieving the

necessary protection, the scope of the order must be as narrowly tailored as the circumstances allow,

in order to limit obstruction to the open court principle.    The Supreme Court has set out a two-part

test for achieving the required balance:

- 11 -

(a)     Such an order is necessary in order to prevent a serious risk to an important interest, including a commercial interest, in the context of litigation because reasonably alternative measures will not prevent the risk; and

(b)     The salutary effects of the confidentiality order, including the effects on the right of civil litigants to a fair trial, outweigh its deleterious effects, including the effects on the right to free expression, which includes the public interest in open and accessible court proceedings.

*Sierra Club v Canada (Minister of Finance)*, [2002] 2 SCR 522 at paras. 53, 59-61 ("***Sierra Club***").

*The Sealing Order is Necessary to Prevent a Serious Risk to Important Interest*

29.     Confidential and private information contained in the Priority Trial Exhibits and Additional Priority Trial Documents must be protected from public disclosure.  Certain documents that have been marked for use at Trial, which documents in respect of which this Court has previously granted sealing orders, contain proprietary information, trade secrets, personal information and communications with tax authorities that are not, and would not be in normal course, publicly available.  Disclosure of such information poses a real risk to important commercial and personal interests; these interests can be protected by a court order providing against their disclosure—there is no reasonable alternative.

30.     In *Sierra Club*, the Court set out a three-step test to determine if the requested order is necessary to prevent a serious risk to an important interest:  Each of these steps is met on the facts of this case.

*Sierra Club, supra* at paras. 54-57.

- 12 -

31.    First, as the Trial record is public unless otherwise ordered, there is a real risk that Confidential Information contained in the Priority Trial Exhibits and Additional Priority Trial Documents will be publicly disclosed if the requested order is not granted.  Such public disclosure will be detrimental to third-parties, whose interests are currently protected by (i) confidentiality agreements between various Nortel entities, including the Canadian Debtors, and the purchasers of the major lines of business and the residual intellectual property, the Minister of National Revenue, and various third-parties and (ii) privacy obligations to individuals.

32.    Second, there is a public interest in protecting the kind of information regarding which the Canadian Debtors seek to have sealed or redacted—i.e. documents that contain information that is subject to confidentiality or privacy obligations:

(a)    Since *Sierra Club*, courts have recognised that "there are broad public interests in preserving contractual confidentiality obligations and in preserving the confidential information of non-parties," including with respect to the terms and of conditions of licensing agreements and financial information that would permit competitors to interfere with economic relationships.

*Andersen v St Jude Medical, Inc, 2010 ONSC 5191 at para. 19*

*Orange County Choppers Inc v Trio Selection Inc., 2006 FC 1122.*

(b)    Courts have accepted that the principles that support protecting confidential and proprietary commercial information of non-parties also apply to the protection of sensitive personal and compensation information.

*Re Canwest Global Communications Corp,* [2009] OJ No 4286 at para. 52 (*"Canwest"*)

- 13 -

(c)     Courts have recognized that the required "important commercial interest" often

arises from the unique circumstances of CCAA proceedings, "where the release of

commercial information would have undermined the efficacy of the proceedings or

prejudiced the position of stakeholders."

*Fairview Donut Inc v TDL Group Corp,* [2010] OJ NO 502 at para. 45.[3]

33.    Third, there is no reasonable alternative measure that could prevent the harm that would

result from the public release of Confidential Information.  In *Sierra Club*, Justice Iacobucci noted

that the test provides that workable solutions must be reached.  In the context of insolvency, often

the only workable solution is a confidentiality order.  Indeed, this is why this Court has granted

confidentiality orders as necessary throughout this proceeding.

*Sierra Club, supra* at para. 66.

34.    Given that the agreements with third-parties, including purchasers in the post-petition asset

sales and the Minister of Nation Revenue, specifically protected against the publication and mass

distribution of this information, once it becomes public, the harm caused, *vis-à-vis* these third-party

agreements, will be irreparable.  Moreover, with regard to third-party agreements and documents

related to post-petition sale agreements, the creditors of the various estates will be harmed if

liability for breach of these confidentiality agreements are incurred by, and paid from, the estates.

---

[3] See also: ***Re Nortel Networks Corp,*** **[2009] OJ No 4487 at para. 38**—Sealing the confidential appendices to the
Monitor's Report concerning an asset sale; ***Canwest, supra*** **at paras. 51-52**—Sealing Key Employee Retention Plans
("KERPs") that revealed individually identifiable information and compensation information on the basis that protection
of sensitive personal and compensation information, the disclosure of which could cause harm to the individuals and the
debtor companies, was an important commercial interest that should be protected and therefore met the first branch of
the test, and that, the aggregate amount of the KERPs having been disclosed, the individual personal information added
nothing, such that the second branch of the test was met; ***Re Stelco Inc,*** **[2006] OJ No 275 at paras 2-3**—Issuing a
sealing order allowing the redaction of material related to the debtor's revenues, selling prices and profitability on the
basis that reasonable alternative measures would not prevent the risk to the debtor and that the statutory effects of the
order, including the ability of the participants in the proceeding to deal reasonably pursuant to Non-Disclosure
Agreements with submissions related to the confidential financial information, outweighed its deleterious effects, and
finding the negative effect on the open court concept "minimal".

- 14 -

These harms can be prevented only if this Court grants the order sought by the Monitor and Canadian Debtors.

*The Proposed Order Will Benefit, Not Harm, an Open Trial*

35.    In light of the terms of the order proposed by the Monitor and Canadian Debtors, the second branch of the *Sierra Club* test, which requires that the salutary effects of granting the proposed order outweigh any deleterious effects to the public's interest in open court proceedings, is met. The order the Monitor and Canadian Debtors seek would apply only to a small portion of the record in these proceedings. Any obstruction to the open court principle and the transparency of the court process, will be minimal, and will actually facilitate a public Trial by minimizing any need to clear the courtroom.

36.    The *Sierra Club* decision sets out principles that a court should consider when it weighs the deleterious and salutary effects of a sealing order. In determining whether to grant a sealing order, a court should consider the application of the core values underlying the freedom of expression to the facts at hand:

(a)    **Truth-Seeking**: Granting the requested order will not adversely affect the evidentiary process in the Trial. The Confidential Information forms a small part of the record and is primarily related to agreements between Nortel and third-parties, and discussions with tax authorities. Restrictions regarding public disclosure of the Confidential Information only will not hinder the ability of the Court to consider the entirety of the Trial Exhibits as it performs its truth-seeking function in the Trial.

(b)    **Self-Fulfillment**: Although the orders sought would restrict access to certain information, given that the Court in *Sierra Club* found that this value would not be

- 15 -

significantly affected by a sealing order, this factor has no bearing on the present motion.

(c)    **Open Participation in Political Process**:    Although the public interest in open access to the judicial process as a whole is substantial, it is less so in the present circumstances where: (i) the case involves private interests as opposed to public institutions; and (ii) the order requested sought in narrow in scope, covering only a small portion of the materials in the record and relating to materials that are essentially technical in nature.

*Sierra Club, supra* at paras. 67, 80-81.

37.    In the present case, much of the information that the Monitor and Canadian Debtors seek to avoid disclosure of is either complex financial information or concerns intellectual property rights that is not relevant or valuable to the public, would not be at risk of being in the public domain absent the Trial itself, and in many cases has already been deemed confidential by this Court. Moreover, while these documents form a part of the Trial record, it may be that many will not be relied on, or the Confidential Information contained therein will not be referred to, by any party during the course of the hearing, such that any hypothetical concerns arising from the open court principle are likely moot.    Furthermore, granting the requested orders will facilitate, not hinder, the open court process.    If the parties are aware well in advance which documents may not be publicly disclosed, they will be able to tailor the presentation of their respective cases in order to minimise and coordinate occasions where the courtroom may need to be cleared for confidentiality purposes.

*Sierra Club, supra* at paras. 74-87.

- 16 -

**The Rolling Review Process Helps to Ensure an Open Court Process**

38.     The rolling Review Process, of which the Debtors seek this Court's approval, will achieve

the desired balance between the open court principle and the protection of Confidential Information.

The Review Process will ensure that the only Trial Exhibits or information in them that will not be

publicly disclosed is what the Core Parties determine are subject to confidentiality or privacy

obligations after a careful review.   The Monitor and Canadian Debtors are interested only in

protecting against public disclosure of Confidential Information where it is necessary due to

confidentiality or privacy obligations.  They have no interest in or desire to hinder the open hearing

of the Trial.  In fact, a purpose of this motion includes ensuring that as little obstruction as possible

occurs to public attendance at the Trial.

**The Canadian Debtors' Privilege Must be Preserved**

39.     Privilege held by the Canadian Debtors that attaches to Joint Privilege Documents that may

be relevant in subsequent claims disputes between the Canadian Debtors and its creditors should not

be considered to have been waived entirely by virtue of the use of such documents at Trial among

the Core Parties to whom the joint privilege has been extended.  The law is clear that privilege,

including litigation privilege and solicitor-client privilege, are tenets of the legal system and courts

have recognised their own role in protecting the sanctity of these tenets.  These value underlie the

order the Monitor and Canadian Debtors seek regarding Joint Privilege Documents.

> *Re Hollinger Inc,* 2011 ONCA 579 at paras. 18 and 19 ("***Hollinger***")
>
> *Solosky v Canada*, [1980] 1 SCR 821.

40.     The Monitor and Canadian Debtors are clearly seeking to preserve the privilege they hold in

respect of Joint Privilege Documents.  Waiver of privilege requires establishing that the possessor

(i) knows of the existence of the privilege; and (ii) voluntarily evidences an intention to waive that

- 17 -

privilege. Accordingly, the use of Joint Privilege Documents at Trial should not be regarded as evidence of the intention of the Monitor and Canadian Debtors to waive their privilege.

*S&K Processors Ltd v Campbell Ave Herring Producers Ltd.* (1983), 45 BCLR 218 at para. 6.

41.    This Court's order can protect the Monitor and Canadian Debtors against any future claims that they have waived privilege in respect of the Joint Privilege Documents. Where privileged information is redacted from documents disclosed during a court proceeding, a court order may be relied on to protect the privilege that attaches to such information and documents.

*Hollinger, supra* at paras 28-29.

42.    Given the unique circumstances of these proceedings, the Monitor and Canadian Debtors seek to ensure that legal documents or advice that are referred to at Trial, where parameters have been set with respect to joint privilege among Nortel estates and extended to the other Core Parties is not considered to be waived outside of the Trial. Although Nortel is no longer an operating business, the Monitor and Canadian Debtors will have to negotiate, resolve or litigate third-party claims after the Trial has concluded. The Monitor and Canadian Debtors seek this Court's aid in ensuring that the conduct of the Trial should not result in prejudice to the Canadian estate in the resolution of those claims.

## PART IV – THE PROPOSED PROCESS AND ORDER REQUESTED

43.    The Monitor, Canadian Debtors, the US Debtors and the EMEA Debtors have negotiated and agreed on a proposed Order that sets out a process they believe balances the need for an open trial with the ongoing confidentiality concerns regarding Confidential Information. The proposed process also accounts for the current timeframe and the reality that the Trial will commence in less than one week. The proposed Order provides that:

- 18 -

(a)  Other than documents specified in Schedule A of the Order, all documents and information and the use thereof will be declared non-confidential and the Core Parties are directed to file the documents publicly with the Courts;

(b)  Priority Trial Exhibits listed on Schedule A will be sealed pending further Order of the Court but such documents will be able to be used at Trial without requiring sealing by this Court as long as Confidential Information contained in those Priority Trial Exhibits is redacted or otherwise kept out of the public record (it being acknowledged that in some rare cases, a whole document may be confidential); and

(c)  The Debtors will review and redact on a rolling basis all other Additional Priority Trial Documents (such as opening briefs, affidavits, excerpts from deposition transcripts and expert reports) to the extent that they contain Confidential Information. The rolling review process will prioritize the Additional Priority Trial Documents that relate to witnesses who are expected to appear at Trial;

44.  "Confidential Information" is as defined in the Order – the definition of "Confidential Information" continues to be negotiated and may be updated prior to the return date of the motion but includes the following:

(a)  With respect to the documents relating to the post-petition sales and other documents and information relating to the businesses that were sold: any lists of Nortel customer or supplier contracts contained in a transaction document or schedule; copies of customer contracts that contain confidentiality provisions (to the extent such information was designated as confidential by such provisions); confidential lists of encumbrances on the assets, such as patent license lists, actual or proposed royalty

rates for Nortel's patents contained in documents prepared prior to the closing of the 2011 sale of the patent portfolio; employee lists that contain personal information; companies identified as potential targets for infringement actions or licensing for Nortel's patents; identification of the line(s) of business to which a patent relates; patent claims charts; and, financial projections for lines of business that relate to 2014 or later periods;

(b)     With respect to License Agreements, the: identity of the counter-party; scope of the license; field of use; patents covered; royalty rates or royalty amounts (all to the extent such information was designated as confidential by a confidentiality provision in the license agreement or relevant sale agreement); and, any other information designated as confidential under a specific license agreement;

(c)     With respect to confidential tax documents, the: settlement between NNI and the Internal Revenue Service and the resulting US Advance Pricing Agreement; the APA between the Minister of National Revenue and NNL; and, the information subject to the confidentiality obligations owing by NNL to the Minister in connection thereof; and

(d)     With respect to documents containing personal information: all information subject to applicable privacy laws including home addresses, home telephone numbers, salary information, social insurance and social security numbers, Global ID numbers, pension and benefits information and other personal identification information. There are ongoing discussions with respect to the scope of personal information to be included in this category.

- 20 -

45.     The practical implication of the proposed order is that a document on Schedule A may be put to a witness at Trial without a request for clearing the courtroom as long as the Confidential Information contained in that document will not be disclosed during the examination and the public will not be able to access that document in its entirety in its unredacted form.  Decisions regarding which documents to identify as containing Confidential Information will need to be made responsibly by counsel and may be subject to objection at Trial.  The Monitor and Canadian Debtors believe that in these circumstances, where the Trial is imminent and tens of thousands of pages of Priority Trial Exhibits and Additional Priority Trial Documents need to be reviewed, the proposed process is the most practical and reasonable.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED** this 7th day of May, 2014.

May 7, 2014

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto, Canada  M5H 2S7

Jay A. Carfagnini  (LSUC #: 22293T)
jcarfagnini@goodmans.ca
Alan Mark (LSUC #: 21772U)
amark@goodmans.ca
Jessica Kimmel (LSUC #: 32312W)
jkimmel@goodmans.ca
Peter Ruby (LSUC #: 38439P)
pruby@goodmans.ca
Joseph Pasquariello (LSUC #: 37389C)
jpasquariello@goodmans.ca

Tel:     416.979.2211
Fax:    416.979.1234

**Lawyers for the Monitor, Ernst & Young Inc.**

**Gowling Lafleur Henderson LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON  M5X 1G5

Derrick Tay (LSUC #: 21152A)
derrick.tay@gowlings.com
Jennifer Stam  (LSUC #: 46735J)
Jennifer.stam@gowlings.com

Tel:  416.862.5697
Fax:  416.862.7661

**Lawyers for the Canadian Debtors**

## SCHEDULE "A"

## LIST OF AUTHORITIES

1. *BASF Canada Inc v Max Auto Supply (1986) Inc*, [1999] OJ No 515

2. *Sierra Club v Canada (Minister of Finance)*, [2002] 2 SCR 522

3. *Andersen v St Jude Medical, Inc,* 2010 ONSC 5191

4. *Orange County Choppers Inc v Trio Selection Inc.,* 2006 FC 1122

5. *Re Canwest Global Communications Corp,* [2009] OJ No 4286

6. *Fairview Donut Inc v TDL Group Corp,* [2010] OJ NO 502

7. *Re Nortel Networks Corp,* [2009] OJ No 4487

8. *Re Stelco Inc,* [2006] OJ No 275

9. *S&K Processors Ltd v Campbell Ave Herring Producers Ltd.* (1983), 45 BCLR 218

10. *Re Hollinger Inc,* 2011 ONCA 579

11. *Solosky v Canada*, [1980] 1 SCR 821

- 22 -

## SCHEDULE "B"

## TEXT OF STATUTES AND REGULATIONS

1.      *Courts of Justice Act*, RSO 1990, c 43, Section 137(2)

A court may order that any document filed in a civil proceeding before it be treated as confidential, sealed and not form part of the public record.

2.      *Rules of Civil Procedure,* RRO 1990, Reg. 194, Rule 30.11

The court may order that a relevant document be deposited for safe keeping with the registrar and thereafter the document shall not be inspected by any person except with leave of the court.

- 23 -

## SCHEDULE "C"

## DRAFT ORDER

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE MR. JUSTICE | ) | THURSDAY, THE 8TH DAY OF |
| | ) | |
| NEWBOULD | ) | MAY, 2014 |
| | ) | |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

### ORDER
### (Use of Documents at Trial)

**THIS MOTION**, made by Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "**Canadian Debtors**") jointly with Ernst & Young Inc. in its capacity as monitor (the "**Monitor**") of the Canadian Debtors for the relief set out in the Notice of Motion dated May ■, 2014 was heard this day at 393 University Avenue, Toronto, Ontario.

- 24 -

**ON READING** the one hundred and fifth report of the Monitor dated May ■, 2014 (the "**One Hundred and Fifth Report**"), ■ **[insert description of any other materials filed]** and on hearing submissions of counsel for the Canadian Debtors, the Monitor, the U.S. Debtors, the EMEA Debtors, the CCC, the UK Pension Claimants and ■, no one appearing for any other person on the service list, although served as appears from the Affidavit of Service of ■, filed.

1. **THIS COURT ORDERS** that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the One Hundred and Fifth Report.

2. **THIS COURT DECLARES** that the non-confidential use of documents at Trial is in the interests of public openness and except as set forth herein, documents at Trial shall be non-confidential and the Core Parties are directed to file the documents publicly with the Courts subject to and on the terms and conditions of this Order.

3. **THIS COURT ORDERS** that with respect to exhibits designated for use at Trial in the portion of the Trial to take place in May and June (the "**Priority Trial Exhibits**"):

   a. Priority Trial Exhibits listed on Schedule "A" hereto contain Confidential Information (as defined below) and shall be filed under seal pending further Order of the Court but subject to the terms of this Order;

   b. Confidential Information (as defined below) contained in any Priority Trial Exhibit listed on Schedule "A" may only be used on a confidential basis during the course of the Trial, and may not be used or referred to by counsel and/or witnesses in open Court without a clearing of the Courtrooms, absent further ruling of the Courts; and

- 25 -

c.  The balance of the Priority Trial Exhibits shall be deemed non-confidential and to the extent filed with and/or admitted by the Courts as evidence, they shall be filed and/or admitted and may be used on a non-confidential basis, provided that in the event of a dispute concerning whether a Priority Trial Exhibit should be sealed or redacted, such Priority Trial Exhibits shall remain under seal pending the resolution of such dispute or a further Order of the Courts.

d.  The Canadian Debtors, EMEA Debtors and US Debtors (the "Debtors") shall have the right to amend Schedule A, including but not limited to:

i.  the right to add additional documents to Schedule A, upon agreement of the Core Parties or further Order of the Courts; and

ii. the right to remove documents from Schedule A, upon agreement of the Debtors and on at least 2 business days' notice to the affected third party or further Order of the Courts.

e.  In the event of any dispute between the Core Parties regarding the amendment of Schedule A in accordance with sub-paragraph 3(d) above, the document shall be provisionally sealed, pending further order of the Courts.

4. **THIS COURT ORDERS** that with respect to designated portions of deposition transcripts, expert reports, affidavits, pretrial briefs or other materials for use at Trial in the portion of the Trial to take place in May and June (**"Additional Priority Trial Documents"**):

a.  The Debtors shall work together to review the Additional Priority Trial Documents (the "**Review Process**") and shall, in accordance with the process set out in the below sub-paragraphs, either: (i) advise the Core Party Service List and the Courts in writing that such Additional Priority Trial Document does not contain any Confidential Information and therefore can be unsealed; or (ii) serve and file a redacted version of such Additional Priority Trial Document to protect against the public disclosure of any Confidential Information.

b.  The Debtors shall coordinate the review of the Additional Priority Trial Documents to determine which Debtor or Debtors shall be delegated the review of each such document provided that the defaulting rule shall be that the Debtors shall review the Additional Priority Trial Documents proffered or produced by them and those proffered or produced by other Core Parties within their Allocation Group. The Review Process shall be completed by the relevant Debtor (the "**Reviewing Debtor**") on the following timeline:

   i.  With respect to pre-trial briefs on Allocation: by May 10, 2014;

   ii. With respect to affidavits, expert reports or transcripts relating to the evidence of a fact or expert witness who will be appearing at trial: no later than the later of (A) May 12, 2014 or (B) 3 business days prior to the expected date of the examination of that witness; and

   iii. With respect to the remainder of the designated portions of deposition transcripts and any  other Additional Priority Trial Documents that the

- 27 -

Debtors may identify: on a rolling basis and no later than June 27, 2014.

c. Upon completion of the Review Process for a particular Additional Priority Trial Document on the timeline set out in sub-paragraph 4(b) above, the Reviewing Debtor shall provide notice to the Core Party Service List either (i) that the Additional Priority Document does not contain Confidential Information and may be unsealed or (ii) of the proposed redaction of the Additional Priority Document.

d. If any Core Party objects to the treatment of an Additional Priority Trial Document proposed by the Reviewing Debtor, it shall do so in writing delivered to all Core Parties: (i) with respect to pretrial briefs, within 24 hours of receipt of the notice; (ii) with respect to affidavits, expert reports or transcripts submitted by a fact or expert witness who will be appearing at trial, within 1 business day before such witness' appearance; and (iii) with respect to all other Additional Priority Trial Documents, within 5 business days of receipt of the notice. The parties shall work in good faith to attempt to resolve the objection on the same business day that the objection was received.

e. In the event that no objection is received in accordance with sub-paragraph 4(d) above, the Debtors shall work together to provide notice of the unsealing to the Courts and/or file the redacted version of the Additional Priority Trial Document, as applicable, provided that the process for filing of any such

- 28 -

redacted Additional Priority Trial Documents shall be done in a manner that is efficient and consistent with the conduct of the Trial and applicable local rules.

f.  Pending completion of the Review Process for any particular Additional Priority Trial Document, the Protective Order shall continue to apply to all unredacted Additional Priority Trial Documents and the same are hereby sealed by the Courts pending the earlier of (i) the expiration of the period for objection set out above if no objection is made, or the date on which any such objection is resolved in writing, or (ii) further Order of the Courts.

5.  **THIS COURT ORDERS AND DECLARES** that notwithstanding anything to the contrary herein, any Priority Trial Exhibit or Additional Priority Trial Document, whether or not fully or partially sealed and/or redacted, may be used or referred to by counsel and/or witnesses in open Court without a clearing of the Courtrooms, provided that such Priority Trial Exhibit or Additional Priority Trial Document is summarized, excerpted and/or redacted in such a way that the following categories of confidential information ("Confidential Information") contained in such Priority Trial Exhibit or Additional Priority Trial Document are not revealed through such use or reference. For purposes of this Order, the following categories of information constitutes a non-exhaustive list of Confidential Information that may be redacted or otherwise removed from a Priority Trial Exhibit or Additional Priority Trial Document so that it may be used or referred to in open Court without a clearing of the Courtrooms:

a.  With respect to the documents relating to the Sales and other documents and information relating to the businesses that were sold: any lists of Nortel

- 29 -

customer or supplier contracts contained in a transaction document or schedule; copies of customer contracts that contain confidentiality provisions (to the extent of the information designated as confidential by such provisions); confidential lists of encumbrances on the assets such as patent license lists, actual or proposed royalty rates for Nortel's patents contained in documents prepared prior to the closing of the 2011 sale of the patent portfolio; employee lists that contain personal information; companies identified as potential targets for infringement actions or licensing for Nortel's patents; identification of the line(s) of business to which a patent relates; patent claims charts; financial projections for lines of business that relate to 2014 or later periods;

b.  With respect to License Agreements: the identity of the counter-party, the scope of the license, field of use, patents covered, royalty rates or royalty amounts (all to the extent of the information designated as confidential by a confidentiality provision in the license agreement or relevant sale agreement) and any other information designated as confidential under a specific license agreement;

c.  With respect to confidential tax documents: the settlement between NNI and the Internal Revenue Service and the resulting US Advance Pricing Agreement, the Advance Pricing Agreement between the Minister and NNL and the information subject to the confidentiality obligations owing by NNL to the Minister in connection thereof;

- 30 -

d.  With respect to documents containing personal information: all information including home addresses, home telephone numbers, salary information, social insurance and social security numbers, Global ID numbers, pension and benefits information and other personal identification information.[4]

6.  **THIS COURT ORDERS AND DECLARES** that upon the reasonable request of a Core Party or Core Parties, the Courtrooms will be cleared during the course of the Trial if it is determined that a witness is expected to testify about Confidential Information or Confidential Information is otherwise expected to be presented, provided, however, that any such requests shall be only as reasonably necessary and consistent with paragraph 5 above, and that the Courtrooms shall be re-opened as soon as reasonably practicable after any examinations or presentations regarding Confidential Information are completed.  To the extent practicable, any such request will be made at least one day prior to the day such clearing will be required in order to preserve the efficiency of the conduct of the Trial, provided that a Core Party may make such a request on the same day that such testimony is given or evidence presented.  A clearing of the Courtrooms shall include any gallery Courtroom or rooms where the Trial is being viewed remotely.

7.  **THIS COURT ORDERS** that in the event that any Core Party determines or realizes that:

a.  A Priority Trial Exhibit not on Schedule "A" contains Confidential Information such that it warrants sealing, such Core Party shall provide notice

---

[4] The treatment of certain personal information contained in Additional Priority Trial Documents is subject to further discussion.

of such further sealing to the Core Parties Service List and, unless another Core Party objects within 2 business days of receipt of the notice, such document shall be deemed so sealed without further Order of the Courts. To the extent that any Core Party objects, the objecting party and the notifying party shall attempt to resolve the objection or seek direction from the Courts, and pending the resolution of such objection, the documents shall be sealed in accordance with the notice.

b. Further redaction must be made to an Additional Priority Trial Document, written notice of such further redaction shall be made to the Core Parties Service List and, unless another Core Party objects within 2 business days of receipt of the notice, such document shall be so redacted without further Order of the Courts. To the extent that any Core Party objects, the objecting party and the notifying party shall attempt to resolve the objection or seek direction from the Courts, and pending the resolution of such objection, the document shall be redacted in accordance with the notice.

8. **THIS COURT ORDERS** that no Core Party, nor its attorneys or advisors, nor any fact or expert witness submitting a report or affidavit and/or testifying at the Trial, shall incur any liability for compliance with this Order.

9. **THIS COURT ORDERS AND DECLARES** that the Protective Order continues to apply to:

a. All exhibits, transcripts, expert reports, affidavits, briefs or other materials that are not also Priority Trial Exhibits or Additional Priority Trial Documents and

- 32 -

that have been designated for the "Claims" portion of the Trial scheduled to take place in July 2014, pending further Order of the Courts; and

b.  Any document produced during the discovery process but not designated for use at Trial, pending further Order of the Courts.

10. **THIS COURT ORDERS THAT** to the extent filed with and/or admitted by the Courts as evidence, all documents listed on Schedule "B" hereto, which consists of documents produced by the United Kingdom affiliates of PwC LLP, Grant Thornton LLP, Deloitte LLP, and Towers Watson and that have been designated as exhibits for use at the Trial on allocation of sale proceeds and/or the "Claims" portion of the Trial, shall constitute Confidential Information and be filed under seal and remain under seal pending consent from the producing party for public disclosure of any such document or documents.

11. **THIS COURT ORDERS THAT** the inclusion in the Trial Exhibits and the use or reliance at Trial by any Core Party of any document that constitutes Nortel Joint Privileged Discovery Material (as defined in the Protective Order, as amended) shall not, and is not intended to, be:

a.  In the case of any such document that is not sealed at the Trial, a waiver of any Privilege (as defined in the Protective Order) with respect to any other document or information or testimony concerning the same subject matter as the Nortel Joint Privileged Discovery Material for the purposes of this Trial or any other purpose; and

- 33 -

b.  In the case of any such document that is sealed at Trial, a waiver of any Privilege with respect to that document or any other document or information or testimony concerning the same subject matter as it, or as any related Nortel Joint Privileged Discovery Material, for the purposes of this Trial or any other purpose.

12. **THIS COURT ORDERS** that exhibits B and D to the Affidavit of Robert Ferguson sworn May 2, 2014 attached as Appendix E to the One Hundred and Fifth Report be and are hereby sealed pending further Order of the Courts.

- 34 -

**MISCELLANEOUS**

13. **THIS COURT ORDERS** that this Court and the U.S. Court shall retain jurisdiction and venue for the purposes of any dispute arising out of or relating to this Order.

14. **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Canadian Debtors, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Canadian Debtors and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Canadian Debtors and the Monitor and their respective agents in carrying out the terms of this Order.

15. **THIS COURT ORDERS** that each of the Canadian Debtors and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

_____

**IN THE MATTER OF THE** *COMPANIES' CREDITORS*
*ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS
AMENDED AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION *et al.*

Court File No. 09-CL-7950

---

| | |
|---|---|
| | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**(Commercial List)**<br><br>Proceeding commenced at Toronto |

---

| | |
|---|---|
| | **ORDER**<br>**(Use of Documents at Trial)** |

| | |
|---|---|
| **GOODMANS LLP**<br>Barristers & Solicitors<br>333 Bay Street, Suite 3400<br>Toronto, Canada  M5H 2S7<br><br>Jay A. Carfagnini  (LSUC #: 22293T)<br>jcarfagnini@goodmans.ca<br>Alan Mark (LSUC #: 21772U)<br>amark@goodmans.ca<br>Jessica Kimmel (LSUC #: 32312W)<br>jkimmel@goodmans.ca<br>Peter Ruby (LSUC #: 38439P)<br>pruby@goodmans.ca<br>Joseph Pasquariello (LSUC #: 37389C)<br>jpasquariello@goodmans.ca<br><br>Tel:      416.979.2211<br>Fax:     416.979.1234<br><br>**Lawyers for the Monitor, Ernst & Young Inc.** | **Gowling Lafleur Henderson LLP**<br>Barristers & Solicitors<br>1 First Canadian Place<br>100 King Street West, Suite 1600<br>Toronto, ON  M5X 1G5<br><br>Derrick Tay  (LSUC #: 21152A)<br>derrick.tay@gowlings.com<br>Jennifer Stam  (LSUC #: 46735J)<br>Jennifer.stam@gowlings.com<br><br>Tel:   416.862.5697<br>Fax:   416.862.7661<br><br>**Lawyers for the Canadian Debtors** |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

Court File No. 09-CL-7950

---

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(Commercial List)**

Proceeding commenced at Toronto

---

**FACTUM OF THE MONITOR AND THE CANADIAN DEBTORS**
**(Motion Regarding the Use of Documents at Trial, Returnable May 8, 2014)**

| | |
|---|---|
| **GOODMANS LLP**<br>Barristers & Solicitors<br>333 Bay Street, Suite 3400<br>Toronto, Canada M5H 2S7 | **Gowling Lafleur Henderson LLP**<br>Barristers & Solicitors<br>1 First Canadian Place<br>100 King Street West, Suite 1600<br>Toronto, ON M5X 1G5 |
| Jay A. Carfagnini (LSUC #: 22293T)<br>jcarfagnini@goodmans.ca<br>Alan Mark (LSUC #: 21772U)<br>amark@goodmans.ca<br>Jessica Kimmel (LSUC #: 32312W)<br>jkimmel@goodmans.ca<br>Peter Ruby (LSUC #: 38439P)<br>pruby@goodmans.ca<br>Joseph Pasquariello (LSUC #: 37389C)<br>jpasquariello@goodmans.ca | Derrick Tay (LSUC #: 21152A)<br>derrick.tay@gowlings.com<br>Jennifer Stam (LSUC #: 46735J)<br>Jennifer.stam@gowlings.com<br><br>Tel: 416.862.5697<br>Fax: 416.862.7661 |
| Tel:    416.979.2211<br>Fax:    416.979.1234 | **Lawyers for the Canadian Debtors** |
| **Lawyers for the Monitor, Ernst & Young Inc.** | |