IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Nortel Networks Inc., *et al.*,<br><br>    Debtors. | Chapter 11<br><br>Case No. 09-10138 (KG)<br><br>Jointly Administered<br><br>Re: D.I. 13502 |

**DECLARATION OF DONALD POWERS
IN SUPPORT OF ROCKSTAR'S REQUEST FOR SEALING PROCEDURES**

I, Donald Powers, declare as follows:

1.   I have been a member in good standing of the State Bar of Texas since 1986 and am currently employed by Rockstar Consortium US LP as an attorney. I make this declaration based upon my own personal knowledge unless otherwise indicated herein, and if called as a witness, I could and would competently testify thereto. I make this declaration in regards to the *Notice of Filing of Revised Proposed Order Providing Directions and Establishing Procedures for Sealing Trial Exhibits, Redacting Pretrial Submissions, and Protecting Confidential Information from Public Disclosure During Trial*, dated May 6, 2014 (D.I. 13502) the ("**Proposed Order**").[1]

2.   Rockstar Consortium US LP along with other companies are affiliated, owned by, or under common ownership with Rockstar Bidco LP ("**Rockstar**"). The equity owners of Rockstar include Apple, Blackberry, Ericsson, Microsoft, and Sony. Rockstar and its affiliates are the successors-in-interest to certain intellectual property and related assets and materials (the "**Assets**") that were previously held by Nortel. Rockstar obtained rights in the Assets, including the right to confidential and privilege materials, through an Asset Sale Agreement by and among Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc., Nortel Networks UK Limited, Nortel Networks (Ireland) Limited, Nortel Networks S.A., and the other entities

---

[1] I understand a similar or identical proposed order has been submitted by the Canadian Debtors in regards to the overlapping proceedings in Canada. This Declaration applies equally to the provisions in that proposed order.

3036862                                                  - 1 -

identified therein as **Sellers** and Alan Bloom, Stephen Harris, Alan Hudson, David Hughes and Christopher Hill as Joint Administrators and Maitre Cosme Rogeau as French Liquidator and Rockstar Bidco, LP (the "**Agreement**"), including Common Interest Agreements entered into with Rockstar Bidco LP and Rockstar Consortium Inc. pursuant thereto (collectively, the "**Common Interest Agreements**").

3. I submit this declaration to describe the concrete and significant harm that will occur if Rockstar and its affiliates are not allowed to (a) review with at least two business days advance notice any trial exhibits and confidential information that relates to the Assets and that any party intends to publicly use or disclose at any Trial in Nortel's bankruptcy proceedings; and (b) seek confidential treatment or redaction of such materials where necessary.

4. In Sections 2.1.1(a) and 2.1.1.(f) of the Agreement the Sellers assigned to Rockstar "the right to sue and recover damages or other compensation for past, present or future infringements" of the Assets, "the right to sue and obtain equitable relief, including injunctive relief, in respect of such infringements, and the right to fully and entirely stand in the place of the Sellers in all matters related thereto" as well as "all rights of the Sellers under any non-disclosure agreement, to the extent such non-disclosure agreement relates to the Assets." The Agreement further provides Rockstar with the rights to all "Intellectual Property . . . of any Seller, to the extent embodied in the Patent Related Documentation" provided for in the Agreement. Section 2.1.1(d). These provisions give Rockstar the right to assert and waive privilege and confidentiality associated with the Assets, including intellectual property presently being prosecuted in litigation.

5. The Sellers also agreed in Section 8 of the Common Interest Agreements that "as between the Parties as of the Closing, the Common Interest Information shall be Purchaser Confidential Information, to the extent it pertains to the Patent Assets." Common Interest Information under the Common Interest Agreements includes "documentation related to the Patents that are being transferred, assigned or licensed to the Purchaser pursuant to the Sale Agreement as part of the Closing," information "that may be protected by the attorney-client privilege or work product doctrine," and "communications, whether oral, written or electronic,

documents, things, mental impressions, factual materials, memoranda, or opinions relating to the Patent Assets or the transactions contemplated by the Sale Agreement."

6. When the sale of the patents-in-suit closed during the Nortel bankruptcy proceedings in 2011, many of the former Nortel employees who worked in the intellectual property (IP) group were hired by Rockstar Consortium Inc. and Rockstar Consortium US LP. Certain of Nortel's Canadian employees involved in intellectual property were hired by a Canadian entity, Rockstar Consortium Inc., which has entered into a services agreement to provide various support services to Rockstar Consortium US LP.

7. At the time Nortel filed for bankruptcy, its international headquarters was located in Ontario, Canada, and Nortel's United States headquarters was located in Richardson, Texas. I worked for Nortel for over 13 years as Senior Counsel in the Richardson, Texas office. This location was referred to as the Lakeside campus. I began my employment with Nortel on February 2, 1998 and left the company in April 2011. I joined Rockstar Consortium US LP in January 2012.

8. At various times dating back to at least 2000, including at the time of Nortel's bankruptcy, Nortel's IP Law Group was run from the Lakeside campus. For the majority of that time period, Nortel's licensing activities were handled exclusively by the IP Law Group. Many members of that group lived and worked in the Dallas area up to and including the time when Nortel declared bankruptcy. Nortel patent management and licensing activities occurred at the Lakeside campus since the mid-1990s.

9. Based on my employment with Nortel and Rockstar, I have relevant knowledge regarding confidential materials and information that concern the Assets that Nortel transferred to Rockstar under the Agreement. For example, I have knowledge regarding Nortel's corporate organization and structure, Rockstar's corporate organization and structure, employees that were involved in realizing, acquiring, evaluating, enforcing, licensing, and transferring the Assets and their activities, and Nortel's efforts to obtain legal advice concerning the Assets and their realization, acquisition, evaluation, enforcement, licensing and transfer.

10. Documents concerning Nortel's efforts to acquire, evaluate, license, enforce, and transfer intellectual property included in the Assets often contain information that is highly confidential. Such documents are also often privileged because they include and reflect attorney-client communications and advice concerning the Assets.

11. Disclosure of confidential information concerning the Assets would seriously harm Rockstar and its affiliates in their ongoing efforts to license and enforce the intellectual property purchased from Nortel. Many former Nortel employees and attorneys continue to be involved in such efforts on Rockstar's behalf and the documents may reflect their plans, expectations, and evaluations concerning potential contractual arrangements and enforcement strategies concerning the intellectual property. Evaluation and execution of those arrangements and strategies remain ongoing, including with respect to companies that Nortel was involved with prior to entering into the Agreement.

12. I understand that Nortel and other entities involved in the bankruptcy proceedings intend to potentially use at trial confidential information concerning the Assets. I was informed on May 5, 2014 that such materials may be included as part of as many as 16,000 documents that have not been provided to Rockstar for review. During the week of May 5, 2014, a small subset of less than 200 of those documents were provided to Rockstar's outside counsel for review, but the Nortel entities insisted that such documents not be provided to me or any other Rockstar employee for review and evaluation at this time. I am also informed that even the materials that the Nortel entities provided to outside counsel were in some instances only partial and incomplete. The Nortel entities have not provided any document-by-document description of either the 16,000 documents or any particular subset that may contain confidential information concerning the Assets that now belong to Rockstar. Under these circumstances it has been logically, temporally, and physically impossible for Rockstar to review and evaluate the documents that may be used at the upcoming bankruptcy trial to ensure that no confidential or privileged information belonging to Rockstar becomes public. I am, however, able to describe the types of information that I am aware would be contained in confidential documents

concerning the Assets the disclosure of which would cause Rockstar substantial commercial harm.

13. Public disclosure of confidential information concerning the Assets would seriously harm Rockstar and its affiliates in their ongoing negotiations, particularly if such disclosure might result in another party arguing that a broader privilege waiver had occurred. In my experience, public disclosure of at least the following types of information would lead to significant negotiating disadvantage and, further, would cause both strategic and economic harm, contrary to Rockstar's expectations when it entered into the Agreement and Common Interest Agreements:

- lists of Nortel licensees, potential licensees, and those that Nortel believed may be interested in rights to the Assets;
- contracts, licenses, and other agreements concerning the Assets that contain confidentiality provisions, at least to the extent that the provisions designate information in such agreements as confidential;
- lists of encumbrances or potential encumbrances on the Assets, including patent license lists;
- actual or proposed royalty rates, fees, or other pricing structures for the Assets;
- companies identified as potentially subject to infringement actions or licensing efforts concerning the Assets;
- identifications or evaluations of the products or lines of business to which the Assets relate;
- patent claim charts, infringement or invalidity evaluations, or comparisons between actually or potentially patented technology and any product or standard;
- financial projections concerning the Assets;
- for license agreements concerning the Assets, the identity of the parties, field of use, patents covered, royalty rates or amounts, and any other information designated confidential under such agreements; and

- other sensitive financial or proprietary information relating to any customers, counterparties, or licensees.

14. Paragraphs 5(a) and 5(b) of the Debtors' Proposed Order are insufficient because they address at best a subset of these categories of confidential information concerning the Assets that must be protected and because the Proposed Order indicates that redacting such confidential information prior to public disclosure would be permissive rather than mandatory.

15. These categories represent sensitive commercial information, the disclosure of which would harm Rockstar, its affiliates, and the companies involved in the license agreements. Such information is and was treated by Nortel and Rockstar as highly confidential, and was often the result of analysis conducted by, in association with, or under the guidance of attorneys that were helping form legal strategy. The information is and was distributed within these companies only to those who have a specific need for it. Such individuals are typically bound by confidentiality obligations that would prohibit them from disclosing the information if they left the company. This information is not made publicly available and, in particular, is not disclosed to companies that may ultimately be in licensing or business negotiations concerning any of the Assets. Disclosing such information could permit potential licensees, business partners, and customers to make purchasing or licensing decisions disadvantageous to Rockstar using Rockstar's own confidential information.

16. In addition to harming Rockstar, publicly disclosing confidential information concerning the Assets may also harm the public if made available to Rockstar's competitors because that would permit them to make competitive decisions based on Rockstar's actions and strategy, and thereby affect prices (such as license fees and royalty rates) and licensing structures in the technology markets and target Rockstar's potential customers and business partners by taking advantage of Rockstar's actual and potential licensee lists and other work product. Disclosing such information could also provide Rockstar's competitors with critical information about Rockstar's strategy and operations regarding the Assets.

17. The confidential information described above could be used by potential licensees (and licensors) to gain an unfair negotiating advantage over Rockstar, its affiliates, and the

companies involved in the license agreements. This type of information is generally understood in the industry to be critically important to keep confidential and I am not aware of other companies that commonly disclose such information to the public.

Executed on May 7, 2014, at Plano, Texas.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Donald Powers