```
                    IN THE UNITED STATES BANKRUPTCY COURT
                      FOR THE DISTRICT OF DELAWARE


IN RE:                          )    Case No. 09-10138(KG)
                                )    (Jointly Administered)
                                )
NORTEL NETWORKS, et al.,        )    Chapter 11

                                )    Courtroom 3
                                )    824 Market Street
            Debtors.            )    Wilmington, Delaware
                                )
                                )    May 9, 2014
                                )    2:00 P.m.
```

                   TRANSCRIPT OF TELEPHONIC PROCEEDINGS
                 BEFORE THE HONORABLE JUDGE KEVIN GROSS
                    UNITED STATES BANKRUPTCY JUDGE
                 BEFORE THE HONORABLE FRANK NEWBOULD
                    ONTARIO SUPERIOR COURT JUSTICE

APPEARANCES:

For Debtors:                    Morris Nichols Arsht & Tunnell LLP
                                BY: DEREK ABBOTT, ESQ.
                                BY: ANN CORDO, ESQ.
                                (302) 351-9357

                                Cleary Gottlieb Steen & Hamilton
                                BY: LISA SCHWEITZER, ESQ.
                                BY: INNA ROZENBERG, ESQ.
                                BY: ALEXZANDRA MCCOWEN, ESQ.
                                (212) 225-2000

                                Tory's LLP
                                BY: ADAM M. SLAVENS, ESQ.
                                BY: SHEILA BLOCK, ESQ.
                                BY: SCOTT BOMHOF, ESQ
                                BY: ANDREW GRAY, ESQ.
                                (416) 865-7333

ECRO:                           GINGER MACE

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664
                                www.diazdata.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service

APPEARANCES:
(Continued)

```
For Interested Party:      Superior Court of Justice-Toronto
                           BY: ANDEREW MAX
                           (302) 351-9358


For Canadian Debtor:       Goodmans, LLP
                           BY: LAUREN BUTTI, ESQ.
                           (416) 597-6259


For Canadian Board of
Directors:                 Osler, LLP
                           BY: BETSY PUTNAM, ESQ.
                           (416) 862-6835


For Official Committee
Of Unsecured Creditors:    Akin Gump Strauss Hauer & Feld
                           BY: FRED HODARA, ESQ.
                           BY: ROBERT JOHNSON, ESQ.
                           BY: DAVID BOTTER, ESQ.
                           BY: CHRIS SAMIS, ESQ.
                           BY: CHRISTINE DONIAK, ESQ.
                           BY: BRAD KAHN, ESQ.
                           BY: ABID QURESHI, ESQ.
                           BY: JOSEPH SORKIN, ESQ.
                           BY: JACQUELINE YECIES, ESQ.
                           (212) 872-1000


For Canadian Debtors
& Monitor:                 Allen & Overy
                           BY: JACOB PULTMAN, ESQ.
                           BY: JOSEPH BADKE-BERKOW, ESQ.
                           (212) 610-6300


                           Buchanan Ingersoll & Rooney, PC
                           BY: MARY CALOWAY, ESQ.
                           (302) 552-4214


For Canadian Debtor:       Gowlings Lafleur & Henderson, LLP
                           BY: JENNIFER STAM, ESQ.
                           (416) 862-5697


For U. S. Trustee:         Office of the U. S. Trustee
                           BY: MARK KENNEY, ESQ.
                           (302) 573-6491
```

| | |
|---|---|
| For UK Pension Claimants: | Bayard, PA<br>BY: JUSTIN R. ALBERTO, ESQ.<br>(302) 429-4226 |
| | Willkie Farr & Gallagher, LLP<br>BY: SAMEER ADVANI, ESQ.<br>(212) 728-8000 |
| For Joint Administrators: | Young Conaway Stargatt & Taylor<br>BY: JAIME CHAPMAN, ESQ.<br>BY: JOHN DORSEY, ESQ.<br>Wilmington, DE  19801<br>(302) 571-6000 |
| | Hughes Hubbard & Reed LLP<br>BY: FARA TABATABAI, ESQ.<br>(212) 837-6000 |
| For Ad Hoc Bondholder Group: | Pachulski Stang Ziehl & Jones<br>BY: PETER KEANE, ESQ.<br>(302) 652-4100 |
| | Milbank Tweed Hadley & McCloy<br>BY: ATARA MILLER, ESQ.<br>(212) 530-5000 |
| For Creditor, Superintendent of Financial Services, et al.: | Pallare Roland & Rosenberg<br>BY: MAX STAMINO, ESQ.<br>(416) 646-4300 |
| For Wilmington Trust: | Katten Muchin Rosenman, LLP<br>BY: DAVID CRICHLOW, ESQ.<br>(212) 940-8800 |
| For CCC: | DLA Piper, LLP, U.S.<br>BY: SELINDA A. MELNIK, ESQ.<br>BY: TIMOTHY HOEFFNER, ESQ.<br>BY: FARAH WHITLEY, ESQ.<br>(302) 468-5650 |
| For Creditor Tellabs: | Bryan Cave, LLP<br>BY: RYAN O. LAWLOR, ESQ.<br>(312)602-5000 |

```
For Ericsson/Bidco:         Paul Weiss
                            BY: STEPHEN SHIMSHAK, ESQ.
                            BY: DIANE MEYERS, ESQ.
                            (212) 373-3000

For Microsoft:              Gibson Dunn
                            BY: MITCHELL KARLAN, ESQ.
                            (212) 351-4000

                            Brown, Wynn McGarry Nimeroff
                            BY: JAMIE NIMEROFF, ESQ.
                            (267) 861-5335

                            Aird Berlis, LLP
                            BY: HARRY FOGUL, ESQ.
                            (416) 865-7726

For Bank of America:        Bank of America
                            BY: ESTHER CHUNG
                            (646) 855-6705

For Successor/Trustee
Wilmington Trust
National Association:       Dentons Canada, LLP
                            BY: KENNETH D. KRAFT, ESQ.
                            (416)863-4374

For Creditor, Former
Employees of Nortel
Canada:                     Koskie Minsky, LLP
                            BY: BARBARA WALANCIK, ESQ.
                            (416) 595-2087

For Creditor,
Bondholders:                Milbank Tweed Hadley McCloy, LLP
                            BY: THOMAS MATZ, ESQ.
                            BY: ANDREW LEBLANC, ESQ.
                            (212) 530-5000

For Bank of New York,
Mellon:                     Vedder Price, PC
                            BY: MICHAEL J. REILA, ESQ.
                            (212) 407-7766

For Hitachi:                Morrison & Foerster
                            BY: JENNIFER S. FEISTRITZER, ESQ.
                            (415) 268-7000
```

```
For Law Debenture
Trust:                          Patterson Belknap Webb & Tyler
                                BY: DANIEL A. LOWENTHAL, ESQ.
                                (212) 336-2305

                                Morris James, LLP
                                BY: STEPHEN MILLER, ESQ.
                                (302) 888-6853

For Creditor, CAW-
Canada and George
Borosh, et al.:                 CAW Canada
                                BY: BARRY WADSWORTH
                                (416) 495-6564


For Interested Party:           Cassels Brock & Blackwell, LLP
                                BY: MICHAEL J. WUNDER, ESQ.
                                (416) 860-6484


For Interested Party:           Dow Jones & Co.
                                BY: PEG BRICKLEY
                                (215) 462-0953


For Interested Party:           Weil Gotshall & Manges, LLP
                                BY: FRANK GRESE, ESQ.
                                (212) 310-8192


For Interested Party:           Farallon Capital Management
                                BY: MICHAEL LINN
                                (415) 421-2132
```

1  WILMINGTON, DELAWARE, FRIDAY, MAY 9, 2014, 2:03 P.M.

2              THE COURT:  Justice Newbould, are you on the

3  phone, sir?

4              OPERATOR:  Pardon my interruption, Your Honor.

5  This is the Court Call Operator and Justice Newbould has

6  joined at this time.

7              THE COURT:  Thank you.  Justice --

8              JUSTICE NEWBOULD:  Hello?

9              THE COURT:  Justice Newbould, it's Judge Gross on

10  the phone.

11              JUSTICE NEWBOULD:  Judge Gross, how are you today?

12              THE COURT:  I am doing well, thank you.  How are

13  you?

14              JUSTICE NEWBOULD:  Very well.  Jennifer, are you

15  on the call?

16              MS. STAM:  I am.  Good afternoon, Your Honor.

17  Good afternoon, Judge Gross.

18              THE COURT:  Good afternoon, Ms. Stam.

19              JUSTICE NEWBOULD:  I'm just printing off -- you've

20  just sent me an Order so I'm just printing it off now.  While

21  I'm printing it off, there's one thing I wanted to raise with

22  you, Jennifer.  It's a small thing.  If you turn to page five

23  of your previous Order, so it's paragraph 7(b), as in Bob.

24  At the end of that paragraph, it says "and shall advise

25  either (1) that such additional priority document does not

1    contain confidential information that may be unsealed".  I

2    think instead of "unsealed", because we're not talking about

3    sealing, it would be better to replace the word unsealed with

4    "used at trial".  So it can say "and may be used at trial".

5            And the other comment I have that's under sub (d),

6    which is at the top of page six on this draft, it says "in

7    the event no objections received," et cetera, "shall be filed

8    and made publically available".  I think you need a period

9    there because in the unredacted version, "it shall be filed

10   under seal in each case if such filing is made".  Why would

11   you be filing any unredacted version?  Why wouldn't you just

12   put a period after available?  Those are the two comments.

13           MS. STAM:  Okay.  Well, thank you very much, Your

14   Honor, and I will take a look at that.  The second comment

15   you made, I think relates to the peculiarities between the

16   U.S. and Canada in terms of what constitutes a filing.  I am

17   aware that there are probably a number of parties on the call

18   who do wish to make submissions.  I may -- Ms. Schweitzer may

19   have a better lay of the landscape in terms of who, at least

20   in the U.S., would like to speak.  We have been working on

21   trying to reflect the comments and observations and

22   directions that you and Judge Gross gave yesterday and we'd

23   like to reach resolution on an Order and I think it's fair to

24   say that there are people who have views on the current form

25   and the current form that's been provided to yourself and to

1   Judge Gross.  So subject to your directions and Judge Gross'

2   directions, we probably should let them speak and decide how

3   best to proceed.

4           JUSTICE NEWBOULD:  Okay.

5           THE COURT:  That's fine with me, of course, to

6   hear from other parties.

7           JUSTICE NEWBOULD:  Now, the only change I'd say is

8   it's not we "wish" to get this resolved.  I think it must be

9   resolved no later than 3:00.

10          MS. STAM:  I agree with you on that, Your Honor.

11          MS. SCHWEITZER:  Your Honors, this is Lisa

12  Schweitzer, from Cleary.  I think as Ms. Stam suggested in

13  her comments that we -- this has been a very active process.

14          JUSTICE NEWBOULD:  Can I ask you a question?

15          MS. SCHWEITZER:  We faithfully did --

16          JUSTICE NEWBOULD:  Can I ask you a question?

17          MS. SCHWEITZER:  Go ahead.

18          JUSTICE NEWBOULD:  Did you get any sleep last

19  night?

20          MS. SCHWEITZER:  Not only did I get sleep,

21  everyone on the team got some hours of sleep so that was

22  good, right?  But notwithstanding that, we did -- we've been

23  trying actively since we left the Court and as a result, just

24  so Your Honors know, that there was a Canadian Order that was

25  sent I believe to both Chambers, as well as all the

1 | interested parties and then there was a U.S. Order that

2 | followed shortly thereafter and they don't match perfectly.

3 | They're not largely substantial changes.  It's just the

4 | drafts are catching up to each other as we're reading it,

5 | finding changes.  And, for example, Justice Newbould, the

6 | point you -- the second provision you pointed to with respect

7 | to saying why can't we stop in the little (d) as to them

8 | being publically available and sealed, we actually had

9 | changed that language in the U.S. Order to say it shall not

10 | -- instead of saying "it will be sealed", we just said "shall

11 | not be made publically available".  So I think we're all in

12 | the common goal of having an Order settled.  I think even

13 | with a settled Order, there's -- the two pieces of paper in

14 | front of you don't perfectly match and we do apologize for

15 | that and the U.S. and Canadian version is -- it's moving

16 | quickly.  I think every counter-party should have an

17 | opportunity to speak but I'll let you know what we understand

18 | the issues to be and I'm sure I will forget some and so

19 | apologies if I do.  I think that what -- the purchaser

20 | comments that I've seen have discreet comments that I think

21 | we could work through or clean up.  I think the one comment

22 | that is a process comment is that the procedure we had

23 | proposed yesterday was very similar to this in that the

24 | thousand documents or whatever, the Schedule A documents,

25 | have been identified and we re-sent the total volume of

1    documents except confidential information.  Then once we have

2    that re-sent and we have our definition of confidential

3    information, that the Estates can self-effectuate that Order.

4    They can redact as we go.  In this Order, we also provide the

5    added protection that we'll consider counter-party comments

6    or the interested party comments, and that if there is

7    issues, that they can come to the Court and make motions.

8    But we didn't have an idea in here in a prior Order or in

9    this Order that we would be showing redacted versions of all

10   of the trial exhibits as opposed to the Briefs or the expert

11   reports or things that we can do in advance.  So the trial

12   exhibits, merely because of the volume and because we can't

13   get them all done on day one and we don't know which ones

14   we're going to use in which order, that we can't be bound to

15   a Court Order that says we're going to give advance notice of

16   all the proposed redactions and recognizing that everyone is

17   moving quickly and we haven't had a time to talk about it.

18   The last purchaser comments that I just got suggested that

19   they were requesting, or perceived they were requesting two

20   business days advance notice to be able to review redactions

21   of trial exhibits.  It's not that we're not sympathetic to

22   that request; we just don't know that it's going to be able

23   to be implemented and that it would effectively hamstring us

24   from being able to use trial exhibits or we would have to use

25   them on a sealed non-public basis -- I hate using the word

1  sealed -- on a non-public basis.  And the only thing we

2  really can agree to is something that would prevent us from

3  using information at trial.

4         They had a second comment regarding whether, for

5  purposes of the review for confidentiality if it's outside

6  Counsel or if it's some bigger universe, that's something

7  that I would hope that we wouldn't need to burden the Court

8  with, although it's important for us to constrain who sees

9  the documents just because they're really being reviewed for

10  a limited purpose.  Other than that, having flipped through

11  the comments just very quickly, I didn't see ones that looked

12  substantially different than our forms of Orders but they

13  haven't quite caught up yet.  Were there comments -- I

14  apologize.  Were there comments from the licensees that we

15  need to address on this one?  I think -- maybe it's better if

16  I let the other parties talk rather than try to summarize

17  every other comment that we've gotten.

18         JUSTICE NEWBOULD:   I just ask you -- okay.

19  That's fine.  The first point you made, what is it they want

20  you to change on the first point?

21         MS. SCHWEITZER:  Paul Weiss could address it

22  directly but it would be in paragraph five what we now

23  provide for designated documents is that the core parties

24  will use their good faith efforts to redact, remove the

25  confidential information out.  The second thing is that in

1   (b), to paraphrase it, we will take comments from counter-

2   parties.  We'll consider their redactions.  And the third

3   step is that they can bring Motions for relief which is just

4   really a fail-safe that if we know of an issue, that they can

5   come to the Court and make a showing.  And what they had

6   asked is that prior to the use at trial of any exhibit that

7   we would give them, I think -- believe, two business days'

8   notice of the proposed redactions so that they could review

9   them and, you know, either comment on them or key up an

10  issue.

11             MR. SHIMSHAK:  Your Honor, this is -- Your Honors,

12  this is Steve Shimshak.  I think the difficulty from our

13  perspective is that there's a hole in this procedure and the

14  hole is the following:  As Ms. Schweitzer accurately

15  reported, the draft, the redaction process is that they will,

16  consistent with their obligations under the contracts to

17  protect confidentiality, they will take the first stab at

18  redaction.  They will then give us the documents as they have

19  redacted them and offer us an opportunity to identify what

20  things that we may believe deserve further redaction but they

21  reserve in the end the discretion to accept or reject the

22  comments that we make and we do not have an opportunity to

23  view the rejection because, obviously, if the comments have

24  been accepted, there's no problem.  But if they have rejected

25  comments and then the documents are filed or introduced and

1  we would have otherwise had an opportunity to seek a sealing

2  Order, you know, the cow is out of the barn.  It's too late.

3  And so we had proposed a simple mechanic that once they had

4  determined whether they were accepting or rejecting comments

5  that we had made, we had an opportunity to hear the results

6  of that deliberative process and to react to it so that if we

7  disagreed with them about comments or further redactions that

8  we had proposed and rejected, we would have an opportunity to

9  consider whether or not we wanted it sealed.  But as I say,

10 the process that they've designed --

11          JUSTICE NEWBOULD:  I understand.

12          MR. SHIMSHAK:  Okay.

13          JUSTICE NEWBOULD:  What -- I understand that.  So

14 if they accepted all your redactions, obviously, you don't

15 need to see it but you really need -- what you say is if they

16 don't accept all your redactions, you need to be given notice

17 of the document so you got a chance to do something about it?

18 That's really what you want?

19          MR. SHIMSHAK:  Before it becomes public, yes, Your

20 Honor.

21          JUSTICE NEWBOULD:  I understand.  I mean that

22 seems reasonable to me.  It may be just a question of timing

23 here that the parties have difficulty with, but speaking for

24 myself, that sounds very reasonable.

25          THE COURT:  And likewise, yes.

1          MR. ZIGLER:  Your Honor, coming from our end as --

2   just as any Counsel in the trial, it requires giving two

3   days' notice.  You never know two days in advance what you're

4   going to put to a witness necessarily, especially if you're

5   cross-examining them and especially in a multi-party trial

6   where several parties are cross-examining them.  This makes,

7   from Counsel's point of view -- I appreciate the concern of

8   the purchasers, but it makes it, from Counsel's point of

9   view, presenting a case at trial, almost impossible.  You've

10  got to tell somebody two days in advance about a document

11  that you may be putting to a witness or may not be and in the

12  ordinary course if we had the luxury of time, we would deal

13  with all of this up front.

14          JUSTICE NEWBOULD:  Let me just understand that.

15  The documents, as I understand it, have now been sent out to

16  the third parties.  Counsel?

17          MR. SHIMSHAK:  No, I don't believe --

18          MS. SCHWEITZER:  Yes, but not all documents have

19  been sent to all third parties but the ones that should --

20  they should be concerned about for each purchaser or counter-

21  party.  For the purchasers, they have them.

22          JUSTICE NEWBOULD:  Okay.

23          MS. SCHWEITZER:  Anyone who asked for them got

24  them.

25          JUSTICE NEWBOLD:  Okay.

1          MR. KAPLAN:  That is not correct for Microsoft,

2    however.

3          JUSTICE NEWBOULD:  Okay.  But just in terms of

4    principle, it wouldn't -- if that's happened, then the people

5    should be getting back, the purchasers or the third parties

6    or the counter-parties, will be getting back with their

7    comments.

8          MS. SCHWEITZER:  The purchasers did not want to

9    take on the burden of redacting things themselves so we --

10    and we have a trial that starts on Monday.  So we, as the

11    Estates, agreed that we would take on the burden of redaction

12    and we would use our best efforts to conform to the

13    categories of documents.  But if we do that, then we can't

14    then build in another several-business-day process of that

15    meet and confer afterwards.  We're amenable to the purchasers

16    doing the redactions.  We're also sympathetic to them being

17    in the same place we are which is the impossibility of, you

18    know, doing redactions in the next 24 hours.  So what we had

19    tried to do was create this idea that once the categories are

20    defined that if they want to make the redactions, they can

21    and we'll look at them and if there's a problem with their

22    redactions, they can always move for relief.  If they said

23    here are my redactions and we rejected them, they would know

24    and could move for relief.  If they want to put the burden on

25    us, then we have the ability to make the redactions and use

1  the redactions.

2          JUSTICE NEWBOULD:  How --

3          MS. SCHWEITZER:  We're happy to give them the --

4  go ahead.  I'm sorry.

5          JUSTICE NEWBOULD:  How would they know?  I'm

6  hearing that there's no procedure to tell them whether you've

7  accepted the redactions or not?  That's what I --

8          MS. SCHWEITZER:  Well, I'm sure -- we can't wait

9  for redactions, but if there were redactions given, we

10  certainly could respond to proposed redactions.  But what we

11  understood that they wanted was that we do the redactions, we

12  send it to the purchasers for their review for two business

13  days or, you know, that they have a two-business-day window

14  to review, and then that issue gets keyed up before we come

15  before Your Honor.  We also --

16          MR. SHIMSHAK:  Well, let me address --

17          MS. SCHWEITZER:  Go ahead.

18          MR. SHIMSHAK:  Let me address the -- I mean let's

19  go back to yesterday.  We, the purchasers, are under a great

20  deal of time pressure.  As the Court knows, tomorrow we're

21  going to be receiving these Briefs and we are supposed to

22  review those and we have 24 hours to review those briefs to

23  determine whether our -- you know, we need further redactions

24  or issues on that score.  It made sense to us, given the

25  competing demands on our time under the circumstances, and as

1   the Courts know, this is not a situation of our making in

2   terms of the collapsed schedule.  We certainly would have

3   preferred, and you know, would have been available to deal

4   with this on a -- you know, on a more extended basis if we

5   had been brought into this sooner but we weren't so we are

6   where we are.  It seemed practical to us, particularly since

7   these are Nortel documents, because recall that the documents

8   -- many of the documents that are subject to confidentiality

9   were originally documents designated as confidential by

10  Nortel, but then as a consequence of the documents coming

11  into our possession, the burden of confidentiality shifted to

12  Nortel and Nortel was the party that was to maintain the

13  confidentiality of the documents.  So many of these

14  documents, in the aggregate, are documents with which they

15  have much greater familiarity and much greater sensitivity to

16  things that may be confidential.  So it made sense to us that

17  they would do the initial redaction.  We would get the

18  benefit of their thinking, and look at things that are

19  important to us and that become important to us with the

20  passage of time and do further redaction and, in the

21  meantime, we would have had the opportunity to review the

22  Briefs that are being delivered to us at some point tonight

23  or tomorrow.  All we're asking for, and I thought I heard Ms.

24  Schweitzer offer it, was that we would have some process with

25  this that we got a thumbs up or thumbs down on the proposed

1 additional redactions that we had made, and you know,

2 obviously, a meaningful opportunity; not 5 minutes or 10

3 minutes or whatever, but a meaningful opportunity if we felt

4 it was necessary to protect our interests by seeking judicial

5 intervention, a sealing Order or something of the sort.  And

6 as I say, the procedures, as contemplated, did not provide

7 that so we made a counter-proposal with language to deal with

8 that circumstance.

9           MS. STAM:  Your Honor, it's Jennifer Stam

10 speaking.  I think that from the Canadian Debtor's and

11 Monitor's perspective, you know, we're sympathetic to the --

12 all of the issues and both the purchasers concerns, but you

13 know, equally importantly, the time constraints and the

14 practicalities of conducting the trial as Mr. Zigler pointed

15 out.  You know, we have made progress with some of the

16 purchasers thus far with respect to specific documents where

17 they have -- there's clearly more concern and there are

18 specific redactions that have already started to be suggested

19 and, you know, I think that the Order that we proposed

20 provides that we will take into consideration suggestions

21 that are made and that responsible parties will make timely

22 suggestions and those suggestions will be taken seriously.

23 But if the idea is that the Debtors will redact -- review and

24 redact the trial exhibits, the Briefs, their Affidavits, the

25 expert reports, the transcripts, all while the trial is being

1  conducted, I don't think that -- I think it's just not going

2  to be realistic or feasible for there to be this review

3  period inserted into that process.

4            MR. SHIMSHAK:  Well, I'll let my colleague in

5  Canada, Mr. Galloway, talk about the scope of what's supposed

6  to be redacted because that sounded -- I could be wrong but

7  that sounded like a bit broader than what we're talking

8  about, but let me say with equal force that we have the

9  benefit of these confidentiality provisions.  These were

10  parts of the agreement.  They --

11            JUSTICE NEWBOULD:  You don't have to tell us that.

12  We're more than aware of that.

13            MR. SHIMSHAK:  I understand, but I am essentially,

14  Your Honors, hearing an argument that the interests of the

15  trial somehow supervene legitimate and fair procedures to

16  protect our rights and that's something from the perspective

17  of my clients that I have to reject.  I think we're entitled

18  to a fair opportunity --

19            JUSTICE NEWBOULD:  I understand.  I understand.

20            MR. SHIMSHAK:  Thank you very much.  Thank you.

21            JUSTICE NEWBOULD:  I understand.

22            MR. HOEFFNER:  Hi.  This is Tim Hoeffner, from DLA

23  Piper, on behalf of the CCC.  I have a question.  We weren't

24  involved in the discussions last night or this morning about

25  the changes made to the document.  There was a paragraph 13

1   that had been included in the document yesterday setting up a

2   procedure to permit parties to challenge, inclusion of

3   documents included on Schedule A and I thought that just

4   about everybody was comfortable with that provision and

5   that's now not included in the document and we think that's

6   an important part of the process.

7          MS. SCHWEITZER:  I think that it's built in there

8   effectively because it's built into the -- I guess if people

9   challenge the redaction, you know, that someone could come

10  and say I reject a redaction.  We're doing the best we can.

11  One could certainly seek to challenge a redaction.  So we

12  were cognizant of the length of the Order presented in front

13  of the Courts yesterday, and believe it or not, tried to give

14  a more streamlined Order.  We also were cognizant of the

15  purchaser concern that we're not reinventing the wheel on

16  having an Order with one hand and undoing an Order with the

17  other hand.

18         JUSTICE NEWBOULD:  Can I just make a -- can I make

19  a suggestion that I've heard both sides and no one's going to

20  be completely happy here, but we've got to fish or cut bait.

21  If this could say, after paragraph (b), you're going to take

22  into account all these things and then if -- that if the

23  redactions that are requested are not agreed to, notice will

24  be immediately given to the other party, the responding

25  party, period.  Not and they got two days.  They'll give you

1  immediate notice.  And if this becomes a problem, we'll have

2  to deal with it at the time.  There may not be any problem.

3  We may be arguing here about nothing.  I don't know.

4          THE COURT:  Well, that's what I was thinking,

5  Justice Newbould.  I can't imagine a situation where the

6  purchaser's come in and say here is material that we consider

7  to be very proprietary and confidential and that the Debtors

8  would say well, we don't agree with that.  I can't imagine

9  that going on.

10          MR. SHIMSHAK:  Well, I would hope not and they --

11  speaking for Ericsson and Bidco, the suggestion is certainly

12  acceptable to us.  Your Honor, I would say -- I maybe would

13  add immediate email notice because everything's done by email

14  right now and that's probably the fasted form of

15  communication.

16          JUSTICE NEWBOULD:  Don't you believe that --

17          MS. SCHWEITZER:  Right.  And, Your Honor -- go

18  ahead.

19          JUSTICE NEWBOULD:  No, no.  I was going to make a

20  joke.  They don't use carrier pigeons anymore.

21          MS. SCHWEITZER:  Not in a telecomm bankruptcy at

22  least.  I think that we certainly obviously could live with

23  that.  I think the only thing that I have made clearer is

24  that we can certainly take into account any proposed

25  redactions but let's say on Monday or Tuesday or Wednesday,

1  if we haven't been given a proposed redaction to a document,

2  then we can follow the 5(a) procedure which is that we will

3  use our effort to redact the document and put it forward to

4  the Court and if we're able to, without putting it in the

5  Order, if we're able to give advance notice, we're happy to.

6  If the purchaser wants to have someone in the Courtroom to

7  look at the document, that's okay too.  But that unless and

8  until we get that type of redaction, we can go forward as

9  Estates or as core parties making the redactions as we go so

10 that the trial isn't frozen for a period of time.

11         MR. SHIMSHAK:  And I just want -- could I -- could

12 you elaborate on that a little, Lisa?  So let's say that you

13 complete the process; I'm just imagining a hypothetical and

14 you can tell me if it's completely outrageous, but you're

15 completing the process of a review and suggested redactions,

16 you know, in the morning and you send us an email at 9:30 and

17 you're due in Court at 10:00, so what would happen in that

18 circumstance?

19         MS. SCHWEITZER:  I'm actually imaging a different

20 scenario which is that, just hypothetically, Wednesday

21 morning on Direct, you have not given us a comment on a

22 document, on the assumption that you will not be able to, as

23 you're saying, review and redact a thousand documents by

24 Wednesday.  On Wednesday morning, I'm in Court.  I need to on

25 Cross or Re-Direct or whichever party I am --

1          MR. SHIMSHAK:  Right.

2          MS. SCHWEITZER:  -- us a document.  I see it has

3   confidential information in it.  I know what I would redact

4   according to the definition of confidential information.  I

5   then, because I haven't gotten a comment from you, don't have

6   to stop the Court, phone a friend, somehow not use that

7   document because I'm waiting for your proposed redactions.

8          MR. SHIMSHAK:  Okay.

9          MS. SCHWEITZER:  If I have them and I've accounted

10  for them, we can use this process as immediate notice.

11         MR. SHIMSHAK:  Right.

12         MS. SCHWEITZER:  The only thing is we can't wait

13  for the purchaser comments.

14         MR. SHIMSHAK:  Right.  Well, I mean --

15         JUSTICE NEWBOULD:  Just very brief --

16         MR. SHIMSHAK:  I don't know what the process is

17  going to be, you know, of additional documents.  I mean what

18  you're proposing works if one's proceeding in good faith.

19  You know, the nightmare scenario is that you did some data

20  dump on us of thousands of documents and we had no reasonable

21  opportunity to review them.

22         MS. SCHWEITZER:  I'm not talking about more

23  documents.  I'm talking about the thousand documents in your

24  possession.  If you give us --

25         MR. SHIMSHAK:  Okay.

1        MS. SCHWEITZER:  -- comments and proposed

2    redactions before Wednesday, we can account for them.

3        MR. SHIMSHAK:  Yes.

4        MS. SCHWEITZER:  If we don't -- if you have any

5    idea that you're doing them on a rolling basis, we can't stop

6    the train while you're looking at them.

7        MR. SHIMSHAK:  No.  Okay.  I understand that.

8        MR. GALWAY:  It's Jeff Galway from Blakes, Counsel

9    to Ericsson and Bidco.  Is there any reason why, even if you

10   don't get comments from Ericsson and you otherwise redact the

11   Schedule A documents, that when you redact it, that you send

12   them to us.  Though we understand the concerns that you have

13   articulated, it may be the morning of and there's not going

14   to be time, but if you've done the redactions two days in

15   advance, even though you haven't gotten a comment from

16   Ericsson because we haven't been able to get through all the

17   documents, why couldn't you turn around and give us the

18   redactions you have performed on our documents, so we would

19   leave in the concept as soon as reasonably practicable?

20       MS. SCHWEITZER:  Well, I think what I would

21   propose is, so that we can get an Order on record and so it's

22   not a U.S. Debtor obligation alone, I think that what I would

23   say is leave the Order as it is and that my understanding

24   from the core parties and from the purchaser side as well, is

25   everyone, with or without provisions in this Order, is

1    prepared to meet and work through redactions and work through

2    the largest bundles if we know that there are patterns and,

3    certainly, if we're able to share redactions ahead of time,

4    absolutely, it's in everyone's interest we do that.  I think

5    that we are concerned just about piling on to the Order

6    because that slows down the entry of the Order and, quite

7    frankly, our biggest concern is the longer we spend drafting

8    an Order, the longer it takes to implement the Order and what

9    we would like to do is move from drafting an Order to getting

10   to the point of effectuating the Order through actual

11   redactions and substantive preparation for trial.

12             MR. SHIMSHAK:  I wanted to understand -- well, I

13   wanted to understand, is this them saying you are not

14   accepting the notion of immediate notice of the redactions?

15             MS. SCHWEITZER:  Immediate --

16             MR. SHIMSHAK:  As just proposed by Justice

17   Newbould?

18             MS. SCHWEITZER:  No.  I believe Justice -- we are

19   perfectly fine adding to paragraph 5(b) to say that if you

20   have provided us with proposed redactions, we will give you

21   an immediate response to whether those comments are

22   acceptable.  But what I thought the request was, was for an

23   additional -- that from the core parties' side, that we are

24   giving purchasers notice in advance of our proposed

25   redactions, and again, other core parties can speak up if

1   they disagree, for the U.S. side, we're perfectly happy on a

2   good faith basis to do that if we are able to do that but we

3   would be uncomfortable adding more procedures and

4   requirements into the Order itself, both because it slows

5   down the drafting effort and because, as a practical matter,

6   it's in our interest to do that anyway, collectively, to

7   avoid the [indiscernible].

8           MR. SHIMSHAK:  Yes.  I was just trying to

9   understand.  What are the practical obstacles, if you've

10  finished redacting, simply attaching it to an email and

11  sending it to us that was made?

12          MS. STAM:  This is Jennifer Stam again.  Just --I

13  think from the perspective of -- I don't want to speak for

14  the EMEA or U.S. Debtors, the entity that is this effort of

15  getting ready for trial and the documents involved and the

16  number of core parties that are involved in the trial,

17  including the number of people who are being -- going to be

18  in the Courtroom and how evidence is going to be presented,

19  is not a simple thing, and it may be that documents are being

20  redacted, you know, outside the Courtroom right before we go

21  into Court or during the lunch break and when people are  --

22  when Counsel are focused on litigating a trial, I think we

23  can -- I think that we would be happy to say that we will,

24  you know, use reasonable efforts to get them scanned and sent

25  to you as --

1              JUSTICE NEWBOULD:  I would not -- using best

2    efforts.  Use the word best efforts.  Can you do that?  Put

3    the word best efforts in?

4              MS. STAM:  I think we would -- in the

5    circumstances?

6              JUSTICE NEWBOULD:  I guess that goes without

7    saying.  They're always in the circumstances.

8              MR. STARNINO:  It's Max Starnino, for the CCC.  I

9    just want to clarify one point.  As the Order is currently

10   drafted, at least the Canadian version -- I've not seen the

11   U.S. version -- it doesn't contemplate the CCC as a

12   Respondent.  It would be a core party and so there really

13   wouldn't be any opportunity under that Order to say, you

14   know, we can now look --

15             UNKNOWN:  And [unintelligible] party.

16             MR. STARNINO:  Right.  So --

17             JUSTICE NEWBOULD:  I told you yesterday about Mr.

18   [audio skip] core party.

19             MR. STARNINO:  And it's also -- that's why when we

20   would have to get back to or raise an objection with respect

21   to the particular document.

22             JUSTICE NEWBOULD:  Well, the clause you've got

23   with this two-day notice, I don't think that's workable.

24   You're going to be in Court anyway.  I mean this is -- I

25   think we're just -- we're dancing on the head of a pin here.

1          MR. SHIMSHAK:  We will live with the formulation,

2    Your Honor, that -- I think you proposed two formulations,

3    the immediately and the best efforts of standard.  I think

4    that's -- it appears that, under the circumstances, that's

5    the best we can do.  As you said earlier, no one is going to

6    be completely happy.

7          JUSTICE NEWBOULD:  Okay.

8          MR. GALWAY:  Justice Newbould, it's Jeff Galway.

9          JUSTICE NEWBOULD:  Jeff?  Go ahead, Jeff.

10          MR. GALWAY:  All right.  There are two other

11    concepts that we'd suggest be added to paragraph 5.  The

12    first is I think it was implicit that what we're doing in

13    paragraph 5 is parties, in a good faith effort, are looking

14    to redact the confidential information, that's (a); (b) is

15    responding parties can make suggestions.  We're suggesting a

16    new paragraph (c) that says "the designated documents will

17    only be filed, introduced into evidence, or otherwise used at

18    trial in their redacted form".  I think that's implicit but I

19    think that's an important provision to add to the Order.

20          JUSTICE NEWBOULD:  Say that one again.

21          MR. GALWAY:  I don't know if anyone would

22    disagree.  Pardon me?

23          JUSTICE NEWBOULD:  Say that one again.

24          MR. GALWAY:  So the new paragraph (c) would read

25    "the designated documents will only be filed, introduced into

1  evidence, or otherwise used at trial in their redacted form".

2              JUSTICE NEWBOULD:  All right.

3              MR. GALWAY:  So I think it --

4              MS. STAM:  I think that's -- so, Your Honor, one

5  of the concerns that I have is the time of day, and you know,

6  a bunch of additional paragraphs.  I think it's clear in the

7  Order itself that there are restrictions on the use of the

8  designated documents.  I don't know that we need to put a lot

9  of belts and suspenders and more into this Order.

10             JUSTICE NEWBOULD:  The other concern -- go ahead.

11             MR. ZIGLER:  It's Mark Zigler at this end.  If it

12 is necessary, and we hope it never happens, but if virtually

13 the entire document has been redacted and it has to be put to

14 a witness and it's relevant evidence, the only thing you can

15 do at that point is actually seal the document, clear the

16 Courtroom, and put it to the witness and the way Mr. Galway

17 wants this amended, that would never be possible.

18             MR. GALWAY:  No, but I mean it's implicit in the

19 whole format here that parties are going through a process to

20 redact confidential information.  It's implicit that those

21 are the documents that will be filed into evidence and if

22 someone's going to then deal with confidential information,

23 we need to talk about a process for that.

24             MR. ZIGLER:  Well, the process is one we always

25 use.  We seal the document and clear the Courtroom and I --

1          MR. GALWAY:  Yes, that's correct.

2          MR. ZIGLER:  The last thing you want to do is

3   create a situation where certain evidence cannot be put at

4   trial at all because the document's been redacted.  It's just

5   a question of the circumstances under which it's put.

6          MR. GALWAY:  I don't disagree with that, Mr.

7   Zigler, and if you're going to deal with confidential

8   information, then you would deal with it through, you know,

9   the Courtroom being sealed and the confidential information

10  being redacted.  But all we're saying here is we're going

11  through a process of redacting confidential information and

12  the Order would say that it's the designated documents in the

13  redacted form which will be filed.

14         MR. ZIGLER:  And that's fine as long as the option

15  is available to seal the document and close the Courtroom, if

16  necessary.  I hope it never happens.

17         MR. GALWAY:  Understood.  I agree with that.  The

18  second point, and this is an important one, is that we think

19  a new paragraph needs to be added to the effect no party

20  shall lead evidence into open Court with respect to

21  confidential information which has been redacted from any

22  designated document without at least two business days' prior

23  notice to a respondent party.

24         JUSTICE NEWBOULD:  I don't --

25         MR. GALWAY:  And this goes --

1          MR. ZIGLER:  That's unnecessary.

2          MR. GALWAY:  Well, no, it --

3          JUSTICE NEWBOULD:  Look, it's -- I thought we got

4   rid of this issue by saying if they don't accept the

5   redaction, to give immediate notice.  I don't think we can

6   make an Order, tying up the trial right now with that kind of

7   a provision.  I think we're making way too much of this.  I

8   think that it's like most -- I think it's -- the lawyers get

9   involved in arguments and I doubt if there's going to be a

10  problem here and if there's a problem, we'll deal with it at

11  the time.  I'm sure Judge Gross agrees.

12          THE COURT:  By my silence, I do agree and I do --

13  I think we're over-complicating this.  I think the Order, as

14  I've read it now, does the job and as far as specifics that

15  may arise at trial, we'll have to address those in any event

16  at the trial and everyone --

17          MR. KARLAN:  Judge Gross, excuse me.

18          THE COURT:  -- everyone has the same interest at

19  heart.  That's the important thing as well.

20          MR. KARLAN:  Judge Gross, this is Mitch Karlan.

21          UNIDENTIFIED:  Justice Newbould, it's -- go ahead.

22          MR. KARLAN:  I'm sorry.  I apologize if I'm

23  speaking over others.  I apologize.  This is Mitch Karlan,

24  from Gibson Dunn, for Microsoft.  I just wanted to say I

25  assume that the improvements which we're hearing suggested

1  and accepted and endorsed during this phone call, although

2  they've been made by parties other than Microsoft, will be

3  included in the new draft for Microsoft as well.

4          Second, I just wanted to re-confirm that the

5  agreement that Debtor's Counsel and I reached yesterday,

6  which Debtor's Counsel read into the record at the conclusion

7  of proceedings yesterday, is not in any way superseded or

8  eliminated by this new draft Order and that the Debtor has,

9  in fact, confirmed to me today that they are in the process

10 of complying with that agreement and moving forward on it and

11 that they've run the search terms and they will be providing

12 to us -- I take it today or tomorrow -- the hits that relate

13 to Microsoft both from the fact Affidavits and the other

14 relevant documents.

15          THE COURT:  Ms. Schweitzer, I --

16          MR. KAPLAN:  If Debtor's Counsel could just --

17          THE COURT:  That's --

18          MR. KAPLAN:  If Debtor's Counsel could just tell

19 me I'm not crazy that would be great.

20          MS. SCHWEITZER:  Okay.  Well, I'm not going to

21 comment on that, but I will confirm that we're running

22 searches --

23      (laughter)

24          MR. KAPLAN:  I may have asked for too much.  Fair

25 enough.

1          MS. SCHWEITZER:  But I will confirm that we are

2     running the -- we, collectively, the Debtors, are running the

3     search terms against the exhibits, Affidavits, fact

4     Affidavits, and fact depositions, transcripts, and we'll

5     provide you the hits.

6          JUSTICE NEWBOULD:  Have we got it resolved now?

7          MR. KAPLAN:  Yes.

8          MR. GALWAY:  And so we'll -- and we'll get the

9     same immediate notice that the purchasers are getting if our

10    proposed redactions are not agreed to so that we can take

11    whatever steps we need to take.

12         MS. STAM:  Your Honor, it's Jennifer Stam again

13    and I'm not sure if we're done with the issues on the

14    purchasers and the licensees.  I do feel I need to advise you

15    that we have had an ongoing issue with respect to CRA and the

16    treatment of some of the Canadian tax documents which is an

17    immediate issue and I'm not sure whether the CRA has been

18    able to join the Court call or not, as I understand there

19    were some technical issues.

20         MR. LEE:  The Minister is on the call so CRA is on

21    the call; Chris Lee, from the CRA.

22         MS. STAM:  Excellent.  So, Your Honor, we have

23    been struggling with respect to how to address the tax

24    issues, and you know, confidentiality obligations and the

25    like, and in light of the fact that, you know, clearly, there

1  will be tax issues discussed during the trial and the trial

2  needs to be open and we need to be able to both litigate the

3  allocation issue and defend the claims that have been

4  asserted against us.  Today, we have proposed some language

5  with respect to what we understand to be the crux of CRA's

6  concern as it relates to kind of implications on opinions

7  they may have been expressing in connection with the

8  negotiation and drafting of the APA and, you know, we were

9  hopeful that this is an elegant solution to the current terms

10 they were expressing so that we can use these documents at

11 the trial.  You will note from having read the opening

12 Briefs, there are references to tax documents in the opening

13 Briefs and we think that we need resolution of those issues

14 on the call today, and Mr. Lee is now on the call and can

15 speak for himself, but we do think it's very important and

16 extremely urgent.

17          JUSTICE NEWBOULD:  I'm looking --

18          MR. LEE:  Your Honor --

19          JUSTICE NEWBOULD:  Ms. Stam, paragraph 13?

20          MS. STAM:  That's correct, Your Honor.

21          JUSTICE NEWBOULD:  Yes, sir, go ahead.

22          MR. LEE:  So Chris Lee, on behalf of Minister of

23 National Revenue.  So the issues we have is that these all

24 stem from an Order in 2010 when the funding agreement was

25 approved and so was entry into the APA, and the confidential

1  appendix to the APA has a confidentiality clause that the

2  Minister required be entered into by both Nortel and the

3  Monitor at the time the APA was entered into.  If that hadn't

4  been agreed to, the Minister would not have entered into the

5  APA which is a treaty document.  It's signed between two

6  treaty Nations, the bilateral APA, and that based on that,

7  each Minister enters into -- or each competent authority I

8  should say, enters in an agreement with the individual Debtor

9  in the Nation.  So we had a concern at the time that the

10  materials relating to the APA would be used in these

11  proceedings for a purpose that isn't for what they were

12  produced, possibly violating settlement privilege, and we

13  thought that it would both not be instructive to the Court

14  and not be a purpose for which the documents were created,

15  and so we required that a Confidentiality Agreement be

16  entered into.  The Court approved the Confidentiality

17  Agreement.  The Monitor and Nortel recommended entry into the

18  Confidentiality Agreement and what we're asking for is that

19  the Confidentiality Agreement be followed.  It's been part of

20  this proceeding four years ago.  All the parties were

21  comfortable with entering into it and now that they have to

22  follow it, they would like to go to the same proceedings and

23  say that it doesn't need to be followed.  So in terms of

24  sealing, I think we can go and deal with the sealing issues

25  on a document-by-document basis.  We've had some productive

1  conversations.  The CCC has been particularly willing to

2  engage and we really appreciate that from them.  We are

3  willing to bring Sealing Motions as the documents come up in

4  the proceedings or we're willing to bring one outside of the

5  timetable since it's mainly a Canadian issue with the

6  Canadian parties to discuss that.  In terms of paragraph 13,

7  we weren't consulted since the close of the hearing yesterday

8  until 11:30 this afternoon -- or sorry, this morning on the

9  contents of this Order.  I had a productive call with Counsel

10 to the Monitor at that time where we finally got to

11 understand what this Order would look like from the CRA's

12 perspective.  That's the first we had heard of the approach

13 they were taking.  We didn't see the language until noon.  We

14 consulted our client.  We do have some issues with paragraph

15 13.  We think that it isn't broad enough.  We've had a number

16 of discussions with the Monitor and Nortel on what the

17 breadth of the Confidentiality Agreement is.  We don't agree

18 that the paragraph 13, as drafted, fully covers the

19 confidential material.  We're open to continuing to work with

20 the Canadian Estates to resolve this matter.  We recognize

21 it's of great importance.  The clients in Ottawa have been

22 available all day and all night, which isn't typical for

23 Government, but we are treating this with the highest

24 importance, but we do feel that this was inadequate time and

25 inadequate consultation to resolve this issue when it was a

1   known issue and we do feel that protection is warranted,

2   given the history of these proceedings and the Orders that

3   have been made so far.

4           JUSTICE NEWBOULD:  Ms. Stam, what's the timing

5   that you anticipate you would want to use some of this stuff?

6           MS. STAM:  Well, Your Honor, I may turn this over

7   to Ms. Butti who is one of the Goodman firm and with me and

8   is more familiar with the documents.  My understanding is

9   that it is an issue, an immediate issue, as it relates to the

10  Pre-Trial Briefs and given that we need to send them out

11  either in a redacted or unredacted form by tomorrow, my

12  position is that it's extremely urgent, at least as it

13  relates to the Pre-Trial Briefs.  You know, we -- if Ms.

14  Butti could address in more detail what their discussions

15  have been.  For the U.S. side, we have not been parties to

16  the discussions, so obviously, we're not parties to that

17  agreement.  I will say, because we did go back yesterday to

18  look at the proposed redactions to the Pre-Trial Brief and

19  without knowing any further layer of discussions, just taking

20  the list of the Schedule A documents that the CRA has

21  designated or flagged, if we were to redact reference to

22  those documents in the Pre-Trial Brief, there would be

23  substantial redactions to our Brief.  Without it, it would be

24  a very narrowed, targeted redactions at most.  It's the same

25  issue with the opening.  I think it would specifically

1   hamstring our ability to discuss issues at opening and on the

2   list, to give you a flavor, right now, from our perspective,

3   what we've seen are actually Nortel-created documents and

4   documents that Nortel might have submitted to the Government

5   in addition to just Government documents.  So that's the

6   concern from the U.S.  Obviously, it's a Canadian issue in

7   terms of the discussions and the level of detail.  But the

8   ramifications for the U.S. is that it would substantially

9   hamstring us if we don't have a either [indiscernible] relief

10  or guidance.

11          JUSTICE NEWBOULD:  Okay.  Well, let me ask you

12  another question.  The -- at the moment, with respect to all

13  the other redactions for the Pre-Trial Briefs, the plan is to

14  have that resolved by what time this weekend?

15          MS. STAM:  For the other Pre-Trial Briefs, we

16  would be able to expand -- the U.S. Debtors are in a position

17  where we can send it out at the end of the call, quite

18  frankly.  But the idea was that everyone would -- the parties

19  would exchange their Pre-Trial Briefs, proposed redactions by

20  tomorrow and they would have 24 hours, basically until

21  Sunday, to review them and comment on each other's redactions

22  so that they can file them Monday.

23          JUSTICE NEWBOULD:  So --

24          MS. STAM:  And, Your Honor, with respect to the

25  exact timing, we've been using 8:30 as a general deadline.  I

1  don't -- it seems to me that one should apply to this also.

2          JUSTICE NEWBOULD:  Well, you're getting ahead of

3  me.  I'm sympathetic that if Counsel hasn't had a time yet to

4  deal with the client at the M&R and if they're prepared to

5  work in the evening, this is Friday.  Sunday comes along in

6  two days.  Is there any reason why you can't try and resolve

7  this with Counsel?  I mean it's not fair to him to say we

8  have to make a decision right here and now.  I don't know

9  enough to make the [audio skip] if he needs more time, I

10 think somebody should spend some time with him and try and

11 get it resolved before Monday morning.

12         MS. STAM:  Your Honor, I think that with respect

13 to -- I think -- we're content to proceed down that path and

14 try to make as much progress as we want, and you know, it is

15 -- the one thing that is very important to us, and I want to

16 just respond to one thing Mr. Lee said which this is not a

17 Canadian issue only.  This -- these issues and these

18 documents have been referred to in all of the Pre-Trial

19 Briefs and it impacts the allocation matter which is not just

20 a Canadian-only issue clearly.  So if we can get resolution

21 today on the Pre-Trial Briefs so that we can get them -- and

22 allocation -- so that we can get them filed publically in

23 time for the opening statements to start on Monday morning

24 and try to deal with things on an as-needed basis, we would

25 be content to go down that path.

1            JUSTICE NEWBOULD:  Right now --

2            MS. SCHWEITZER:  Your Honor, from the U.S. side, I

3  think that's only more problematic for us.  I'm always in

4  favor of consensual resolution.  The issue is that from the

5  U.S. side or from anywhere other than the Canadian Debtors

6  and Monitors, we haven't been in the room for the

7  discussions.  We don't know -- all we've heard is these

8  documents are isolated, and right now, shouldn't be used at

9  all publically and so we can get the Pre-Trial Briefs out but

10 then Monday morning, we have an opening statement which we're

11 preparing, and it, quite frankly, would substantially alter

12 the opening statement we could make such that we wouldn't be

13 able to make an effective opening statement if we were

14 suddenly told we couldn't use hundreds of documents.  So

15 we're trying to navigate.  And then right after that, we go

16 into Canadian examination.  So if a consensual resolution

17 could be reached that there were narrow redactions to a small

18 group of documents, we would be all in favor of that.  We

19 would be troubled if it was a resolution that was reached --

20 either it wasn't reached and people had -- with the position

21 that we had to just not use these documents or redact them or

22 we had no guidance such that we couldn't, for now until

23 Sunday, prepare an opening statement.

24            MS. STAM:  Your Honor, the practical suggestion,

25 you know, I would make two observations.  Number one, you

1   know, we have also not been provided the documents that that

2   Minister is concerned with.  They have not told us those

3   documents they are -- specifically they are concerned with

4   and we would -- we think that the conversation should

5   continue and we agree with Ms. Schweitzer.  The U.S. Debtors

6   and the EMEA Debtors, to the extent that they want to, should

7   participate in these conversations going forward so that we

8   can get real time resolution.

9           MR. LEE:  Just again, Your Honor, we have had a

10  meeting.  Just to correct the record here.  Chris Lee again

11  from the Minister of National Revenue.  We have had

12  discussions and pointed out some of the documents.  We've

13  pointed out -- this was yesterday.  We've pointed out the

14  issues we have with the documents, the types of documents we

15  have.  I didn't have instructions until this morning on the

16  final list.  I was to present them to the Monitor and Nortel

17  at noon.  We had agreed on that and then I received the Order

18  at noon and that totally changed the approach and we needed

19  to respond to that.  So had I gotten the Order earlier, I

20  would have been able to have that discussion.  We are in a

21  position to have that discussion as soon as the Monitor and

22  Nortel are in a position to speak with us.  An open dialog on

23  a timely basis is something that we are all in favor of over

24  on the Minister of National Revenue's side and we are happy

25  to work quickly.

 1          JUSTICE NEWBOULD:  Okay.  I appreciate that.  What

 2    I'm going to suggest on this issue is that if you need to

 3    deal with me more on this, you can email me and I'll be

 4    available tomorrow from 5:00 on, on this issue and --

 5          THE COURT:  Is that 5:00 a.m.?  You didn't mean

 6    5:00 a.m., Justice Newbould?

 7          JUSTICE NEWBOULD:  That's Judge Gross' time.  If

 8    it's a 5:00 a.m. matter, he's going to deal with it.  If it's

 9    a 5:00 p.m. matter, I'll deal with it.  Is that satisfactory,

10    Judge Gross?

11          THE COURT:  Yes, sounds good.

12          JUSTICE NEWBOULD:  Okay.  Now --

13          MS. SCHWEITZER:  Your Honor, for the purpose of

14    settling an Order today, should we just be removing paragraph

15    13 and settle the Order with respect to everything else such

16    that -- and remove those documents from Schedule A such that

17    we sort of park this issue to the side, because we --

18          JUSTICE NEWBOULD:  If that would assist everybody

19    else, then you can do another Order with the -- dealing with

20    CRA and MNR if that would assist, if you people can work with

21    that, that's fine by me.  You'll need another Order, but

22    that's fine.  I mean we can settle that.

23          MS. STAM:  That would be fine with us, Your Honor.

24          MR. SHIMSHAK:  And just so that we understand Your

25    Honors, are the Debtors going to circulate a revised form of

1    the Order consistent with the comments and the discussions

2    today?

3              MS. SCHWEITZER:  Yes, we will.

4              MR. SHIMSHAK:  Thank you.

5              MR. LEE:  And, Your Honor -- sorry, Chris Lee,

6    from CRA again.  I just want to confirm that the CRA will

7    still be covered by the rest of the Order and then we'll be

8    adding on a paragraph 13.  We're not removing all the

9    protections that the CRA has given that are equal to those of

10   the purchasers; it's just the removal of paragraph 13 and the

11   wrath of the Order still applies.  Is that a correct

12   understanding?

13             MS. SCHWEITZER:  What I was proposing is that we

14   remove the tax documents from the Schedule A.  So you're

15   welcome to get copies of things that are being provided but

16   your documents wouldn't be subject to the procedures under

17   this Order until we've defined what your universe of

18   documents are.

19             MR. LEE:  But then we have no protection for two

20   days.  I don't know that that works.

21             MS. SCHWEITZER:  There are no filings being made

22   for two days.

23             MR. LEE:  Why do the documents have to --

24             MS. STAM:  I suggest that -- I think that the

25   practical solution is for a meeting to take place as soon as

1  possible to talk about the documents so that we can try to

2  reach resolution in the next 24 hours.

3           JUSTICE NEWBOULD:  Is there any reason why this

4  the CRA documents have to be taken out of Schedule A?

5           MS. SCHWEITZER:  The concern, Your Honor, is that

6  if they're not taken out of Schedule A, and there is no

7  resolution by Monday morning, then we will have to seal the

8  Courtroom for our opening.

9           JUSTICE NEWBOULD:  [Indiscernible].  It's going to

10  have to --

11           MS. SCHWEITZER:  I mean we can list them --

12           JUSTICE NEWBOULD:  If you take them --

13           MS. SCHWEITZER:  We can list them on Schedule --

14           JUSTICE NEWBOULD:  If you take them out of

15  Schedule A now, you're still going to have the same problem.

16           MS. SCHWEITZER:  As long as Your Honors are

17  prepared to deal with that, if that is where we're left on

18  Monday morning, we're fine leaving them on or taking them

19  off.  I guess --

20           JUSTICE NEWBOULD:  If there's no resolution, then

21  I'm going to be given an email and we're going to have a

22  conference tomorrow at 5:00.  That's my assumption.

23           MS. SCHWEITZER:  Okay.

24           MR. LEE:  So my understanding is the way it's

25  being left now -- Chris Lee, again -- is that they are

1    remaining on Schedule A and I mean, likely, Schedule A will

2    be revised by consent of the Canadian Debtors and the CRA

3    over the weekend but, at this stage, the Order that's being

4    issued today, the CRA documents will continue to be on

5    Schedule A?

6              MS. STAM:  So it's Jennifer Stam again and I hate

7    to continue this conversation unnecessarily.  The concern

8    again is that we are required to redact our Pre-Trial Briefs

9    by tomorrow.  You know, I think most people would like them

10   done by today and there are documents on Schedule A that we

11   understand, based on the discussions that have taken place

12   today, are not an issue, but it impacts our redactions on the

13   Pre-Trial Briefs and if they are to be sent out tomorrow, we

14   need to have a resolution before then.

15             JUSTICE NEWBOULD:  Well, you're going to have to

16   get together with the CRA and try to sort it out.  But I

17   think those documents should remain on Schedule A and then if

18   you haven't got an agreement as to how you're going to redact

19   or what you're going to use, then we'll have to deal with it

20   tomorrow at 5:00.  All right?

21             MS. SCHWEITZER:  What we've done, which maybe

22   other people want to do as well, is we've done a redaction

23   for everything else and then for the ones that are the CRA

24   documents, we've highlighted that in yellow saying we don't

25   propose to redact them but we've highlighted the issue for

1  the CRA so that they can say, you know, we don't think these

2  are confidential.  These are implicated by your documents and

3  you would have to counter-designate and we would be prepared

4  to get that out and work in good faith.

5       JUSTICE NEWBOULD:  I just don't -- I think they

6  should stay part of Schedule A.

7       MS. SCHWEITZER:  That's fine.  So we'll leave the

8  documents on Schedule A.  We'll take out the paragraph 13

9  until we settle on a different Order.

10       JUSTICE NEWBOULD:  All right.  Now, the -- I've

11  got more comments than I started with just to make sure that

12  I understand what is or isn't going to happen.  Looking at

13  the new Order on page 5 under paragraph (b), again, these are

14  the comments I started with.  At the end of subparagraph (b),

15  "that such additional priority document does not contain

16  confidential information and may be unsealed".  There's no

17  sealing.  So it can be changed to "may be used at trial",

18  some language like that?

19       MS. STAM:  Yes, we've -- I have made a note of

20  that change.

21       JUSTICE NEWBOULD:  And the next -- again, under

22  (d), as in David, there's still a typo in there at the

23  beginning but the -- do we need the last line and a half?

24  Could it be stopped at "made publically available", period,

25  or is there some problem with taking out the rest of that

1  sentence?

2          MS. STAM:  I think that -- the U.S. Order has that

3  it "shall be filed and made publically available and the

4  unredacted version shall not be made publically available",

5  period.  Would that be acceptable?

6          JUSTICE NEWBOULD:  That's fine.

7          MS. STAM:  Okay.

8          JUSTICE NEWBOULD:  All right.  Sure.  That's fine.

9  So you make it consistent, the Canadian Order then, Jennifer.

10         MS. STAM:  I will.

11         JUSTICE NEWBOULD:  Is the plan that you want me to

12  sign an Order this afternoon or Judge Gross to sign an Order?

13  What --

14         THE COURT:  I think so.

15         MS. STAM:  I think that we would ideally like that

16  but because of the Schedules, we will probably -- it will

17  probably be more efficient to deliver it up to Judge's

18  Administration than to try to email all of the Schedules.

19  Your Honor, I'm not sure what your timing is though so we're

20  in your hands.

21         JUSTICE NEWBOULD:  Well, no, I don't plan to read

22  the Schedules.  Trust me.  But if you send a copy, bring --

23  have someone bring up an Order and I'll sign it.  I'm going

24  to be here until 5:30 and I don't know about Judge Gross'

25  time.  I know he's got something at 3:00 which is two minutes

1   ago.

2               THE COURT:  No, no.  I'm sorry.  It's actually at

3   4 and I'll be here until about 5:30 as well.

4               JUSTICE NEWBOULD:  Okay.

5               MS. STAM:  Judge Gross, may we --

6               THE COURT:  The problem is getting it docketed

7   after 5.

8               JUSTICE NEWBOULD:  It won't be in our -- I mean in

9   our Court.  I can sign it and it will be official, but it

10  won't get entered, as we call it, until Monday morning.  The

11  staff will be gone.

12              THE COURT:  That's right.

13              JUSTICE NEWBOULD:  But I don't think it matters.

14  It's still a form of Order isn't it?

15              THE COURT:  Right.

16              MS. SCHWEITZER:  But, Judge Gross, if you could

17  get it to us electronically, I'm sure we could send it by

18  email to the parties on the call if that would be helpful.

19              THE COURT:  We can do that.  I'll work with you.

20              MS. SCHWEITZER:  Okay.

21              MR. LAWLOR:  Your Honors, if I may, very quickly,

22  Ryan Lawlor, on behalf of Tellabs Operations.  We are a

23  counter-party to an agreement that was noticed by the U.S.

24  Debtors as a potential trial exhibit which has been marked as

25  highly confidential.  Ms. Schweitzer has said during this

1    telephone hearing that, you know, counter-parties will have

2    the opportunity to make comments.  As I read it paragraph

3    5(b), what is defined as responding parties is a -- maybe a

4    smaller subset of that.  I just want to confirm for the

5    record, and maybe if Ms. Schweitzer could do that, that

6    Tellabs Operations, by filing a joinder to the Motion of the

7    U.S. Debtors, is considered a responding party under the

8    Orders.

9            MS. SCHWEITZER:  Yes you are.

10           MR. LAWLOR:  Thank you very much.

11           MR. ROSENTHAL:  Your Honors, it's Jeff Rosenthal,

12    from Cleary Gottlieb.  I think just before we break for the

13    day, we just have a 60-second clarification that I'd like to

14    ask regarding Judge Gross' comment yesterday.  I'll be very,

15    very brief.  This is on page 41 of the transcript.  Judge

16    Gross had given an instruction of what he expects for this

17    Monday and he said "so what I think is most appropriate to do

18    is that on Monday, the parties will indicate how many

19    objections they have.  For want of a better cure of it, we

20    will assign a minute per objection, thinking that it would

21    probably take that amount of time to raise the objection, to

22    get an answer, to make a ruling.  A minute per objection and

23    that amount of time will be deducted from the allocation of

24    time to that specific party.  That way, I think that will

25    give sort of an incentive to all of the parties to really

1   hone their objections to what is most necessary".  So most of

2   the parties, Judge Gross, are not submitting their objections

3   to the Court today but are rather working to withdraw a

4   substantial majority, if not all of them, over the weekend

5   and plan to submit on Monday a new list of objections that

6   they actually want to pursue with the minute penalty in mind.

7   But there is a party that did not interpret your Order that

8   way, and I would just like to get some clarification that

9   that's what the Court had in mind?

10          THE COURT:  I can confirm that's exactly what I

11  had in mind, that at the beginning of the trial and it

12  doesn't necessarily have to be on Monday morning.  That might

13  be most helpful to people but it's opening arguments so it

14  probably won't really be that critical.  But at the beginning

15  of evidence, the parties will announce how many objections

16  they have and then we can make the appropriate deduction of

17  one minute per objection for such parties' allocated time.

18          JUSTICE NEWBOULD:  I agree entirely and I hope --

19  Counsel should just get rid of that whole -- get rid of it

20  all because it's -- in the end, it's going to cost you time

21  and it's going -- not going to make a hill of beans with a

22  difference in the end of the trial I don't think.

23          MR. ROSENTHAL:  I would be surprised if the U.S.

24  Debtors have many, if any, objections as a result of the

25  directive yesterday.

1          MR. PULTMAN:  And, Your Honors, it's Jacob

2    Pultman, of Allen & Overy, on behalf of the Monitor.  As I

3    think we said yesterday, it's our goal to reduce as far as

4    possible down our objections.  Our hope was to divide the

5    objections with respect to documents and have those at the

6    beginning of the evidence, to put to the back the issues with

7    respect to the deposition designations because as Justice

8    Morawetz said, it's -- Justice Newbould said, it's clearly in

9    everyone's interest to withdraw  all of those and as we see

10   the progress of the case, that would be everyone's intent but

11   the documents which would be much more important for the

12   trial itself, our goal would be on Wednesday morning right

13   before we are ready to start putting in documents and putting

14   documents to witnesses that we be prepared to tell the Court

15   exactly how many objections we have left because we have

16   continued to pare down our objections and that at that point

17   in time, we'd be prepared to argue them to the extent

18   necessary.  And as we said previously, I mean there was one

19   group of 234 exhibits.  We don't view those as 234 separate

20   objections.  It's all one objection and we don't view it as

21   appropriate for us to be penalized 234 minutes if, in fact,

22   our objection is upheld.  So, you know, our goal would be to

23   make the one-minute objection, as Judge Gross said, and have

24   it ruled on and then proceed from there.

25          THE COURT:  My only concern with the deposition

1  transcripts being held to the end is by that time, you will

2  have used all of your time.  There won't be any way, if you

3  will, to penalize for an objection.

4        MR. ROSENTHAL:  And, Your Honor, in fact, we need

5  to know what the objections are so that we can find out

6  what's still left, meet and confer over them.  We're going to

7  be referring to deposition testimony throughout this case.

8  It's not merely an at-the-end thing.  So I had understood

9  your ruling yesterday, in fact, it's the deposition testimony

10  that we are most concerned with.

11        THE COURT:  Sure.  I would think so.

12        MR. PULTMAN:  And, Your Honor, it's Jacob Pultman

13  again.  If I could suggest with respect to the first point,

14  the penalty point, if what we need to do is to do it early

15  enough in the trial that we still have time left, I mean I'd

16  say a couple days into trial would certainly be early enough

17  to do that.  But it would be helpful actually to hear some of

18  the trial and see how Your Honors rule with respect to

19  evidence because that will give far more guidance than

20  anything else with respect to the question of what objections

21  we should continue to pursue.  And if I hear correctly from

22  what I'm hearing from both Your Honors, that Your Honors tend

23  to be of the view that objections are going to be looked upon

24  with distain.  It will become very clear in a couple of days

25  and it will make everyone's life much simpler and we can deal

1  with those objections much more quickly.  But we are moving

2  with the mindset of withdrawing as many and as quickly as

3  possible.

4           MR. ROSENTHAL:  We will -- in light of your

5  directive, Your Honor, we will have our revised objections if

6  any remain by the start of evidence, the first witness being

7  called, whether it's Tuesday or Wednesday, and we will

8  provide it in advance to Counsel for all of the other

9  parties.

10           THE COURT:  And the other parties should be doing

11  likewise.

12           MR. ROSENTHAL:  Thank you, Your Honor.

13           THE COURT:  The same --

14           MR. MARK:  Your Honor, it's Alan Mark, just for

15  the Canadian Monitors and Debtors.  Just for some

16  clarification, I had understood that Justice Newbould's

17  ruling at the outset yesterday, is that the objections would

18  be dealt with as necessary as they arise.  Am I to understand

19  that there's now some different process proposed?

20           JUSTICE NEWBOULD:  Well, it's up to you people

21  when you want to raise the objections and -- it's up to you

22  people.  We can't tell -- we can't direct when you make --

23           MR. MARK:  No, but then my understanding, Justice

24  Newbould, though is your intention that if, as, and when the

25  objection is raised during the proceedings; whether during

1    evidence or in the argument, you would deal with it.

2              THE COURT:  As opposed to --

3              MR. ROSENTHAL:  But there is going to be a final

4    list submitted by each party by Wednesday morning, as Judge

5    Gross said and had said yesterday, so we can count up how

6    many objections there are because we've got to prepare to

7    respond to them as well to be aware.

8              MR. MARK:  Well, that's not -- I understand.

9              MR. ROSENTHAL:  So -- so let's -- we'll go in.

10             MR. MARK:  I understand about preparing a list.

11             MR. PULTMAN:  And, Your Honors, Jacob Pultman.

12   One final thought from my side is if, in fact, we are

13   sustained with respect to our objections, we would assume

14   that we are not going to be penalized for having made a

15   proper objection to evidence.

16             JUSTICE NEWBOULD:  I don't understand what the

17   penalty would be.

18             MR. PULTMAN:  Well, if I stand up and I say the

19   234 documents that the U.S. Debtors are trying to put in are

20   improper hearsay and should not come in, and Your Honors both

21   agree, then we're not going to be penalized 234 minutes for

22   having made a proper objection are we?

23             THE COURT:  Well, here's the concern I've got.

24   Proper objections, nonetheless, are time-consuming and this

25   is not -- again, this is not a course in evidence.  This is a

1   trial and every time you get up, it may be hearsay.  It

2   doesn't matter to you.  If it's important enough, then you

3   should be prepared to sacrifice some time to make that

4   objection.  I think that's -- that is really the goal here.

5          MR. PULTMAN:  And we have no problem with being

6   penalized for the amount of time it takes us to make an

7   objection.  But if I make a one-minute objection to deal with

8   all of that, we would think that it would be an inordinate

9   penalty upon us --

10          JUSTICE NEWBOULD:  Which would be a penalty.

11          MR. PULTMAN:  -- if we were correct.

12          JUSTICE NEWBOULD:  There's no rocket science.

13          UNKNOWN:  Your Honor?

14          JUSTICE NEWBOULD:  It will be -- no, excuse me

15   just for a minute.  If you make an objection for one minute,

16   you're penalized one minute.  If it covers 238, then it's one

17   minute.  I don't understand --

18          MR. PULTMAN:  That is fine with -- we have no

19   objections.

20          UNKNOWN:  That's fine, Your Honor.

21          JUSTICE NEWBOULD:  The other thing I would

22   encourage all of you -- because in the cases that I run

23   trials up here; I do it in every case and everybody's quite

24   agreeable, at the beginning, I say I understand what hearsay

25   is and you don't have to pop off your feet every two minutes

1  and tell me it's hearsay.  We'll deal with it at the end.  I

2  hope you can -- I hope you'd be able to sort of deal with

3  that -- do it that way too.  That way, you won't have to --

4              MR. ROSENTHAL:  And I --

5              THE COURT:  Mr. Rosenthal?

6              MR. ROSENTHAL:  I'm sorry, Your Honor.

7              THE COURT:  Yes, Mr. Rosenthal?

8              MR. ROSENTHAL:  I apologize.

9              THE COURT:  Go ahead.

10             MR. ROSENTHAL:  I've been calling you Judge

11 Newbould.  I'm sorry, Justice Newbould.

12             JUSTICE NEWBOULD:  No, I'm just saying and that

13 way you don't have to take up time objecting and be on your

14 feet all the time.

15             MR. PULTMAN:  Yes, and I'm assuming, Justice

16 Newbould, if we do that, I mean we're not -- if we at the end

17 of the day have, you know, on the list 30 objections to

18 hearsay but we don't do the jack-in-the-box at trial, we

19 leave it to be dealt with and after you've heard the

20 evidence, you will decide what you're prepared to rely on or

21 not; you know the hearsay rule better than we do I dare say.

22 Are we going to be penalized 30 minutes?  I'm just not sure

23 how this system works?

24             MR. ROSENTHAL:  Your Honors, this seems -- I

25 didn't actually intend to be reopening yesterday's arguments

1   and rulings, but my understanding is to encourage the parties

2   to be as minimal as possible, Judge Gross' Order was clear.

3   At the outset, we're going to have a list.  The U.S. Debtors

4   will have a list.  The EMEA Debtors will have a list.  UKP

5   will have a list.  The Canadian Debtors will have a list.

6   That gets put in at the outset.  We take a minute off for

7   objection, for each of those, and we have the list.  Whenever

8   they come up during trial, we don't have to worry about how

9   many minutes do I have left or things like that.  We have a

10  list and the parties need to be as minimalistic as possible

11  because that list is a minute per objection, and I thought

12  that Judge Gross spoke yesterday and at the outset today, it

13  was as clear as day that that's what we're to do.

14          THE COURT:  And --

15          JUSTICE NEWBOULD:  I mean that's my understanding

16  too and Mr. Mark, what I'd say is this.  At the end of the

17  case, if you haven't been popping up on your feet and you're

18  arguing your case; it's all part of the time, your argument

19  comes out of your time, and you say look, you shouldn't be --

20  you should not be relying upon this piece of evidence because

21  it's hearsay.  If it's important enough for you to argue

22  that, that's just part of the time for your argument.  That's

23  all.

24          MR. PULTMAN:  Well, that's what we thought.  I

25  just don't want to be in a position where if Mr. Rosenthal

1   has put in an excessive number of documents which clearly

2   shouldn't be in the record, I'm the one who gets penalized

3   for objecting to them.  I mean I hear if people want to take

4   argument time during the proceeding to argue objections, then

5   that may have to come out of their time but I don't

6   understand how it will work.

7          JUSTICE NEWBOULD:  I thought the one-minute Judge

8   Gross referred to, and I agreed with, was all these

9   objections that have been delivered now on the -- I don't

10  know what you're calling them but you got --

11          MR. ROSENTHAL:  Exactly.  [Indiscernible], Your

12  Honor.

13          JUSTICE NEWBOULD:  That's what the one minute is

14  intended to deal with.

15          MR. ROSENTHAL:  And if we want to withdraw them,

16  then the Courts don't have to worry about those objections

17  and if the Courts are going to have to deal with those

18  objections, then let you know by Wednesday morning if we want

19  you to ever deal with them, and we'll take the minute penalty

20  for every one that we say we want you to deal with on

21  Wednesday morning.

22          THE COURT:  And by the way --

23          MR. ROSENTHAL:  And we will give you a list --

24          THE COURT:  Yes.  And the word penalty, by the

25  way, is an inappropriate word I think.  It's not a penalty.

1            MR. ROSENTHAL:  I'm sorry.

2            THE COURT:  But it is a deduction from your time

3  for the time spent in raising the objection.  The fact is the

4  problem arose because some of the parties expressed

5  voluminous objections that I understand that they are now

6  paring down and this is an incentive to pare them down even

7  more.  But when I have one party with 80 objections and

8  another party with 1,100 objections, it indicates to me that

9  somebody's being reasonable and somebody is not.

10            JUSTICE NEWBOULD:  Amen.

11            MR. ROSENTHAL:  We will pare down our list

12  further, Your Honor, and we will be prepared to accept a

13  minute per objection for whatever gets to you on the list on

14  Wednesday so thank you for the guidance.

15            THE COURT:  All right.  Thank you, Mr. Rosenthal,

16  and I guess we drop the puck at 9 a.m. on Monday.

17            UNIDENTIFIED:  Bring it on, right?

18            THE COURT:  That's right.  All right.

19            JUSTICE NEWBOULD:  Montreal versus Boston.  Okay.

20            THE COURT:  Listen, if you need us --

21            COUNSEL:  Thank you, Your Honor.

22            THE COURT:  If you need us, you know how to reach

23  us.

24            MS. SCHWEITZER:  Thank you.  We appreciate your

25  time.

1          JUSTICE NEWBOULD:  Okay.

2          THE COURT:  All right, Counsel.  Good day to you.

3          COUNSEL:  Thank you.

4          THE COURT:  Good afternoon.

5        (Whereupon the hearing ended at 3:17 p.m.)

6                    <u>CERTIFICATION</u>

7          I   certify   that   the   foregoing   is   a   correct

8  transcript   from   the   electronic   sound   recording   of   the

9  proceedings in the above-entitled matter.

10
11
12
13  _____          12 May 2014
14  Tammy Kelly, Transcriber                    Date
15  Diaz Data Services, LLC