Court File No. 09-CL-7950

# ONTARIO
# SUPERIOR COURT OF JUSTICE
# (COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

## REPLY AFFIDAVIT OF CLIVE ALLEN
## (SWORN APRIL 23, 2014)

I, **Clive V. Allen,** of the City of Toronto, in the Province of Ontario, **MAKE OATH AND SAY:**

1. I swear this affidavit in reply to the affidavit of Walter T. Henderson, Jr. dated April 11, 2014 and further to my affidavit sworn April 11, 2014 (my "**First Affidavit**"). Capitalized terms not otherwise defined in this affidavit have the same meaning as the terms in my First Affidavit.

2. I have never met Mr. Henderson and to the best of my knowledge and belief he was not involved in the preparation and drafting of any of the Cost Sharing Agreements between Northern Telecom Limited (or NNL, its successor) and any of its subsidiaries during my tenure as a senior executive officer, all of which were prepared under my supervision.

3. At paragraph 21 of his affidavit, Mr. Henderson states that "[u]nder the terms of the 1992 R&D [Cost Sharing Agreement], I understood that the perpetual, exclusive license granted to NNI effectively amounted to economic and beneficial ownership of all interests in NT Technology within NNI's territory." Mr. Henderson also states the he "understood that each

CSA Participant had all the economic and beneficial rights or 'benefits and burdens' of the NT Technology within its territory."

4.  As I explained in my First Affidavit, as the Chief Legal Officer of Nortel, I was significantly involved in the conception, drafting and implementation of the Cost Sharing Agreements in the 1970s and 1980s and oversaw the work of lawyers who prepared later versions of these agreements, including the 1992 Cost Sharing Agreement between Northern Telecom Limited and Northern Telecom Inc. effective January 1, 1992 referred to by Mr. Henderson.

5.  The Cost Sharing Agreements did not state that NNL's subsidiaries had "economic and beneficial rights" to the Technology. None of the Cost Sharing Agreements executed during my term of office provided that subsidiaries received the "benefits and burdens" of the Technology. Under the Cost Sharing Agreements, the subsidiaries received licenses which granted them permission to use Technology owned by NNL in order to make and sell Nortel products in return for contributions to the cost of on-going R&D expenses proportionate to their use of the Technology and based on formulas set out in the agreements. As set forth in my First Affidavit, no ownership interest in the Technology was ever transferred to any subsidiaries and there was no intention to do so.

6.  At paragraph 23 of his affidavit, Mr. Henderson states that under the Cost Sharing Agreements, NNL held legal title for "administrative simplicity and did not have any economic or beneficial rights in the NT Technology in NNI's territory." This statement is historically incorrect and does not reflect the purpose of the Cost Sharing Agreements. As set forth at paragraph 30 of my First Affidavit, pursuant to the Cost Sharing Agreements, all Technology including all patents no matter where the invention was made remained at all times owned by NNL or its predecessors. NNL's subsidiaries were only entitled to use the patents to

manufacture, or in some instances merely to sell, Nortel products. NNL's subsidiaries had no ownership in the Technology. NNL's continued ownership of the Technology was not a matter of mere "administrative convenience" but a corporate policy. This was a deliberate decision by senior management of a storied Canadian-based technology company that was increasingly beginning to carry on business through subsidiaries incorporated in various jurisdictions throughout the world.

**SWORN BEFORE ME** at the City of Toronto, Ontario, on April 23, 2014.

_____
Commissioner for taking affidavits
Barbara Walancik

_____
**Clive Allen**

| | |
|---|---|
| IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-35, AS AMENDED<br><br>AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, et. al. | Court File No: 09-CL-7950 |
| | ONTARIO<br>SUPERIOR COURT OF JUSTICE<br><br>Proceeding commenced at TORONTO |
| | **REPLY AFFIDAVIT OF CLIVE ALLEN**<br>(sworn April 23, 2014) |
| | **KOSKIE MINSKY LLP**<br>Mark Zigler / Susan Philpott / Ari Kaplan<br>mzigler@kmlaw.ca<br>Lawyers for the Canadian Former Employees and Disabled Employees through their court appointed Representative<br><br>**McCARTHY TÉTRAULT LLP**<br>R. Paul Steep / James D. Gage / Barbara J. Boake<br>psteep@mccarthy.ca<br>Lawyers for Morneau Shepell Ltd., as administrator of the Nortel Canada registered pension plans<br><br>**PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**<br>Ken Rosenberg / Lily Harmer / Massimo Starnino<br>ken.rosenberg@paliareroland.com<br>Lawyers for the Superintendent of Financial Services as Administrator of the Pension Benefits Guarantee Fund<br><br>**UNIFOR LEGAL DEPT.**<br>Barry Wadsworth<br>barry.wadsworth@unifor.org<br>Lawyers for the Canadian Autoworkers Union<br><br>**SHIBLEY RIGHTON LLP**<br>**NELLIGAN O'BRIEN PAYNE LLP**<br>Arthur O. Jacques / Thomas McRae / Steve Levitt<br>arthur.jacques@shibleyrighton.com<br>Lawyers for active and transferred employees of Nortel Canada |