Court File No.  09-CL-7950

### ONTARIO
### SUPERIOR COURT OF JUSTICE
### - COMMERCIAL LIST

**IN THE MATTER OF THE** *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE** *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

### AFFIDAVIT OF DONALD SPROULE
### (sworn April 10, 2014)

I, **DONALD SPROULE**, of the City of Ottawa, in the Province of Ontario, **MAKE
OATH AND SAY:**

1.      I am a former employee and pensioner of Nortel Networks Limited ("NNL"). I retired on
April 27, 2005, after approximately 28 years of service at Nortel.

2.      I am one of three court-appointed Representatives who were appointed on behalf of all
former employees, including pensioners, of Nortel Networks Corporation, NNL, Nortel
Networks Global Corporation, Nortel International and/or Nortel Networks Technology
Corporation (collectively the "Canadian Debtors" or "Nortel"), or any person claiming and
interest under or on behalf of such former employee or pensioners and surviving spouses in
receipt of a Nortel pension or group or class of them (collectively, the "Former Employees").

3.      I am currently the President of the Nortel Retiree and Former Employee Protection
Canada ("NRPC"), a volunteer non-profit organization with membership of some 6500 former

1

employees with the mandate to protect the pensions and benefits of some 20,000 individuals who have been impacted by Nortel's insolvency. I serve as a volunteer with no remuneration.

4.      As such, I have personal knowledge of the matters of which I hereinafter depose in this Affidavit. Where I do not possess personal knowledge, I have stated the source of my information, and in all such cases, believe it to be true.

**Employment History**

5.      In 1974, after receiving my Master's degree in System Engineering (Carelton University, Ottawa), I worked at Bell Northern Research ("BNR"), a predecessor of Nortel, in Ottawa as a member of the scientific staff in Systems Engineering. Between 1974 and 1991, I held various positions in Systems Engineering and in the research and development ("R&D") organization for SL-10 (a packet switching piece of equipment that was later became the DPN packet switching equipment). In 1991 I left BNR for Mitel Networks in Ottawa, working on R&D for a telephony switch.

6.      I returned to BNR after approximately a year and half as a Director in Systems Engineering doing systems consulting work for various clients worldwide, including Bell Canada and Bell South. I then held various roles including working in the Nortel corporate head office (in Mississauga at that time), reviewing the R&D budget for network management investments. In 1993 I took a special assignment in Frankfurt, Germany working as the European Product Line Manager for the Data Networking group.

7.      In 1995 I returned to Canada and became the Director and subsequently the Vice President in 1999 of Product Line Management for Carrier Data Networks and in 2001 its General Manager.

2

8.      I have a claim against the Canadian Debtors for the loss of my excess pension, transitional retirement allowance, life insurance and medical and dental benefits. In addition, my registered pension has also been reduced by 30% and I have lost my indexation benefits. As a court appointed representative, I am familiar with all aspects of the employee pensions and other claims in this Proceeding.

**Background**

9.      On January 14, 2009, Nortel was granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. c. C-36, as amended ("CCAA") pursuant to an initial order (as subsequently amended and restated, the "Initial Order") of the Ontario Superior Court of Justice (the "CCAA Court").

10.     On May 27, 2009, the CCAA Court appointed Michael Campbell, David Archibald, and I, Donald Sproule, (the "Representatives") as representatives for the Former Employees, subject to certain exceptions. The Representation Order also appointed Koskie Minsky LLP as Representative Counsel for the Former Employees, subject to certain exceptions. Found at NNC-NNL10672437 is a true copy of the Order of Mr. Justice Morawetz, dated May 27, 2009.

11.     On July 30, 2009, Koskie Minsky was further appointed by the CCAA Court as Representative counsel for all disabled employees of Nortel (the "LTD Beneficiaries"). Susan Kennedy was appointed by the CCAA Court as the Representative for all LTD Beneficiaries and formed the Canadian Nortel Employees on Long Term Disability ("CNELTD").

12.     The NRPC and CNELTD have worked with Representative Counsel on a number of benefit and pension related issues since the Initial Order. We work together with Morneau Shepell Ltd (formerly Morneau Sobeco Limited Partnership) ("Morneau Shepell"), the administrator of the pension plans; the Superintendent of Financial Services, as administrator of

3

the Pension Benefits Guarantee Fund ("PBGF"); the non-unionized employees who were transferred to purchasers of business units; and the unionized employees as part of the Canadian Creditors Committee (the "CCC").

**The Compensation Claims**

13.     In the months following the Initial Order, the Canadian Debtors took numerous actions to reduce costs and realize efficiencies, including significant headcount reductions and cessation of certain payments to former employees (including cessation of benefits under unregistered, unfunded, supplemental retirement plans, transition to retirement allowances and termination and severance payments).

14.     On June 19, 2009, Nortel announced it was proceeding with discussions with several parties to sell all of its remaining business units.

15.     On July 30, 2009, the CCAA Court approved an order establishing a creditor claims process that did not apply to employee claims.

16.     Representative counsel, the Canadian Debtors and the Monitor engaged in discussions in respect of employee benefits for pensioners and LTD beneficiaries and certain employment related issues. An agreement was reached and ultimately executed between the Canadian Debtors, the Monitor and representative counsel on February 8, 2010, and later revised on March 31, 2010 (the "Settlement Agreement").

17.     The Settlement Agreement provided for the continuation of LTD income, and LTD and pensioner medical, dental and life insurance benefits to December 31, 2010. Effective December 31, 2010, all monthly LTD income payments ceased, as did all LTD and pensioner medical, dental and life insurance benefits.

4

18.    The court order approving the Settlement Agreement did not relate to claims relating to the registered pension plans and required the parties to work towards a court-approved distribution of Nortel's Health and Welfare Trust ("HWT").

19.    Following further negotiations, the court approved a proposed methodology for the allocation of the corpus of the HWT on November 9, 2010.

20.    In addition, the Canadian Debtors, the Monitor and representative counsel for former employees, LTD beneficiaries and the CAW held discussion and negotiations regarding an acceptable methodology for the calculation of employment-related claims and a streamlined procedure to deal with them.

21.    On October 6, 2011, the CCAA Court approved the Compensation Claims Methodology Order and the Compensation Claims Procedure Order that the parties had reached an agreement on.

22.    Following court approval, the Monitor issued Information Statement Packages to over 14,000 individuals representing non-registered pension plan claim amounts of approximately $1.06 billion claim (the "Compensation Claim").

23.    As reported in the Seventy-Fifth Report of the Monitor, the Compensation Claim is comprised of the following components:

    (a)    Benefit Claims consisting of:

        (i)    claims for lost benefits under the Non-Registered Pension Plans of approximately $268 million[1]; and

---

[1] This amount includes Termination and Severance Pay relating to the Non-Registered Pension Plans and Registered Pension Plan accruals.

   (ii)  claims for lost Non-Pension Benefits of approximately $631 million[2];

 (b)  Base Severance Claims for approximately $164 million; and

 (c)  Patent Award Claims for approximately $285,000.[3]

The full claims breakdown are based on valuations performed by the Monitor's actuary, Mercer (Canada) Ltd. ("Mercer"), which were provided at Appendix B and C to the Seventy-Fifth Report of the Monitor. Found at UCC0064410 to UCC0064527 is a true copy of the Motion Record for the Motion for Compensation Claims Methodolgy Order and Compensation Claims Procedure Order, containing the Seventy-Fifth Report of the Monitor. Found at NNC-NNL11755981 is a true copy of Appendix B (Mercer 2011 Non-Registered Pension/Pension Accrual Valuation) and Appendix C (Mercer 2011 Non-Pension Benefit Valuation) to the Seventy-Fifth Report of the Monitor.

24.  The Monitor continues to review and finalize claims pursuant to the Compensation Claims Procedure Order and as such the Compensation Claim has not been finalized. However, the aggregate totals are not expected to change. In the interim, pensioners and former employees have lost health, dental, life insurance and supplemental pension and retirement benefits and the disabled employees have lost their long term disability insurance payments.

**The Pension Deficit**

---

[2] This amount includes Termination and Severance Claims relating to the Non-Pension Benefits; Pensioner Benefits including for example, medical, dental, life insurance and lost disability income.

[3] Seventy-Fifth Report of the Monitor dated at September 19, 2011 at para. 14.

25.     Nortel sponsored two registered pension plans in Canada, the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan (the "Managerial Plan") and the Nortel Networks Negotiated Pension Plan (the "Negotiated Plan" and together with the Managerial Plan, the "Plans"). The Managerial Plan has about 14,000 beneficiaries and the Negotiated Plan has about 8,200 beneficiaries.

26.     On September 22, 2010, the Ontario Superintendent of Financial Services (the "Superintendent") appointed Morneau Shepell as the administrator of the Plans, effective October 1, 2010.

27.     The Superintendent issued an Order on March 8, 2011 to wind up the Plans, effective October 1, 2010 (the "Wind-Up Date"). Nortel became obligated to fund the deficit in the Plans on the Wind-Up Date.

28.     I am advised by my counsel and counsel for Morneau Shepell that the Wind-Up deficit in the Plans is currently estimated to be approximately $2 billion CDN.

29.     Rules for windup of the Plans are based on the province from which the Plan member retired and as such virtually all provincial jurisdictions are represented. Pensionable service earned in Ontario is unique in that Ontario is the only jurisdiction with a PBGF, which guarantees the payment of certain (but not all) pension benefits to a maximum of $1000 of an individual's monthly pension income.  As such, the PBGF has become a claimant in these proceedings. About half of the members of the Plans are not entitled to this PBGF coverage. The PBGF, however, does not cover and in fact eliminates future indexation.

30.     Due to the significant deficits in the Plans, pensions have been cut in every province where Nortel pensioners live. Those cuts were imposed effective August 25, 2011. The reductions in pension payments range from 30% in Ontario to 41% in Alberta and Quebec for the

7

Managerial Plan and from 25% in Ontario to 43% in Alberta and Quebec for the Negotiated Plan.

31.      I have reviewed a copy of each and every document that I refer to in my affidavit prior to swearing it.

32.      I swear this Affidavit in support of the Canadian Creditors' Committee (the "CCC") Allocation Position and for no other improper purpose.

**SWORN BEFORE ME** at the City of Ottawa, Ontario on April 10, 2014.

_____
Commissioner for taking affidavits

_____
**DONALD SPROULE**

1052589v1

**Julien Bernard Bourgeois,
a Commissioner, etc., Province of
Ontario, while a Student-at-Law.
Expires May 16, 2015.**

8

**AFFIDAVIT OF DONALD SPROULE (sworn April 10, 2014)**

**INDEX**

| Tab | Paragraph Referred to in Affidavit | Trial Exhibit Number | Bate Number |
|---|---|---|---|
| 1 | Paragraph 10 | TR45166 | NNC-NNL10672437 |
| 2 | Paragraph 23 | TR49818 | UCC0064410-UCC0064527 |
| 3 | Paragraph 23 | TR45610 | NNC-NNL11755981 |

Court File No. 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. JUSTICE | ) | WEDNESDAY, THE 27TH DAY OF |
| | ) | |
| MORAWETZ | ) | MAY, 2009 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION (the "Applicants")

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36 AS AMENDED

### O R D E R

THIS MOTION, made by Donald Sproule, David Archibald and Michael Campbell
(collectively, the "Representatives") on behalf of former employees, including pensioners, of
Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global
Corporation, Nortel Networks International and/or Nortel Networks Technology Corporation
(collectively "Nortel") or any person claiming an interest under or on behalf of such former
employees or pensioners and surviving spouses in receipt of a Nortel pension, or group or
class of them (collectively the "Former Employees") was heard Monday, April 20, 2009, on
the Commercial List at the courthouse at 330 University Avenue, Toronto, Ontario, Reasons
for Decision having been reserved to May 27, 2009,

ON READING the Motion Record of the Representatives and on hearing the
submissions of counsel for the Representatives, Nortel, the Monitor and other parties,

DOCSTOR: 1671251\7

CONFIDENTIAL                    NNC-NNL10672437 / 1

2

1.    **THIS COURT ORDERS** that further service of the Notice of Motion and Motion Record on any party not already served is hereby dispensed with, such that this motion was properly returnable April 20, 2009.

2.    **THIS COURT ORDERS** that, subject to paragraphs 8-9 hereof, Donald Sproule, David Archibald and Michael Campbell are hereby appointed as representatives of all Former Employees in the proceedings under the *Companies' Creditors Arrangement Act (Canada)* ("CCAA"), the *Bankruptcy and Insolvency Act* (Canada) (the "BIA") or in any other proceeding which has been or may be brought before this Honourable Court (the "Proceedings"), including, without limitation, for the purpose of settling or compromising claims by the Former Employees in the Proceedings.

3.    **THIS COURT ORDERS** that, subject to paragraphs 8-9 hereof, Koskie Minsky LLP is hereby appointed as counsel for all Former Employees in the Proceedings for any issues affecting the Former Employees in the Proceedings.

4.    **THIS COURT ORDERS** that Nortel shall provide to the Representatives and their counsel, without charge:

(a)    the names, last known addresses and last known e-mail addresses (if any) of all the Former Employees, whom they represent, as well as applicable data regarding their entitlements, subject to a confidentiality agreement and to only be used for the purposes of the Proceedings; and

(b)    upon request of the Representatives and their counsel, such documents and data, as may be relevant to matters relating to the issues in the Proceedings, including documents and data, pertaining to the various pension, benefit, supplementary pension, termination allowance plans, severance and termination payments and other arrangements for group health, life insurance, retirement and severance payments, including up to date financial information regarding the funding and investments of any of these arrangements.

5.    **THIS COURT ORDERS** that all reasonable legal, actuarial and financial expert and advisory fees and all other incidental fees and disbursements, as may have been or shall be

CONFIDENTIAL    NNC-NNL10672437 / 2

3

incurred by the Representatives and their counsel, shall be paid by Nortel on a bi-weekly basis, forthwith upon the rendering of accounts to Nortel. In the event of any disagreement regarding such fees, such matters may be remitted to this Court for determination.

6.     **THIS COURT ORDERS** that notice of the granting of this Order be provided to the Former Employees by advertisement in the national edition of the Globe and Mail, La Presse, the Ottawa Citizen and the Calgary Herald under such terms and conditions as to be agreed upon by the Representatives, the Applicants and the Monitor.

7.     **THIS COURT ORDERS** that the Representatives, or their counsel on their behalf, are authorized to take all steps and to do all acts necessary or desirable to carry out the terms of this Order, including dealing with any Court, regulatory body and other government ministry, department or agency, and to take all such steps as are necessary or incidental thereto.

8.     **THIS COURT ORDERS** that, subject to paragraph 9 hereof, any individual Former Employee who does not wish to be bound by this Order and all other related Orders which may subsequently be made in these proceedings shall, within 30 days of publication of notice of this Order, notify the Monitor, in writing, by facsimile, mail or delivery, and in the form attached as Schedule "A" hereto and shall thereafter not be bound and shall be represented themselves as an independent individual party to the extent they wish to appear in these Proceedings.

9.     **THIS COURT ORDERS** that notwithstanding paragraph 8 hereof any Former Employee already represented by Lewis Gottheil, counsel to the National Automobile, Aerospace, Transportation and General Workers Union of Canada ("CAW-Canada") ("CAW Counsel") are not bound by this Order and CAW Counsel shall deliver to Koskie Minsky LLP, the Monitor and Nortel a listing of each Former Employee so represented within 30 days of the issuance of this Order.

10.    **THIS COURT ORDERS** that Former Employees bound by this Order specifically exclude any former chief executive officer or chairman of the board of directors, any non-employee member of the board of directors, or such former employees or officers that are

CONFIDENTIAL                    NNC-NNL10672437 / 3

4

subject to investigation and charges by the Ontario Securities Commission or the United States Securities and Exchange Commission, and that the Representatives have no obligation to represent such persons.

11. **THIS COURT ORDERS** that the Representatives and Koskie Minsky LLP shall have no liability as a result of their respective appointment or the fulfilment of their duties in carrying out the provisions of this Order from and after January 14, 2009 save and except for any gross negligence or unlawful misconduct on their part.

12. **THIS COURT ORDERS** that the Representatives shall be at liberty and are authorized at any time to apply to this Honourable Court for advice and directions in the discharge or variation of theirs powers and duties.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

JUN 3 0 2009

PER / PAR: TV

## SCHEDULE "A"

Court File No.: 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES CREDITORS' ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

### OPT-OUT LETTER

Ernst & Young Inc.
Ernst & Young Tower
222 Bay Street
P.O. Box 251
Toronto, Ontario  M5K 1J7

Attention:  Lee K. Close
Tel:  1.866.942.7177
Fax:  416.943.3300

I, _____, am a former employee of the Nortel companies, as
           [Insert Name]
defined in the Order of Mr. Justice Morawetz dated April 20, 2009.

Under Paragraph 8 of that Order, former employees who do not wish Koskie Minsky LLP to act
as their representative counsel may opt out.

I hereby notify the Monitor that I do not wish to be bound by the Order and will be represented
as an independent individual party to the extent I wish to appear in these proceedings.

_____      _____

Date                                    *Signature*

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No:  09-CL-7950

---

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

Proceeding commenced at Toronto

---

### O R D E R

---

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

CONFIDENTIAL

NNC-NNL10672437 / 6

DOCSTOR: 1671251\7

A/C

TR45166

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**MOTION RECORD**
**(VOLUME I OF II)**

(Motion for Compensation Claims Methodology Order
and Compensation Claims Procedure Order)
(returnable October 6, 2011)

**NORTON ROSE OR LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J 2Z4 CANADA

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jennifer.stam@nortonrose.com

**Tony Reyes LSUC #28218V**
Tel: (416) 216-4825
Email: tony.reyes@nortonrose.com

Fax: (416) 216-3930
Lawyers for the Applicants

CONFIDENTIAL

# INDEX

CONFIDENTIAL

UCC0064411

Court File No.  09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

### INDEX

| DOCUMENT | | TAB NO. | |
|---|---|---|---|
| **VOLUME I** | | | |
| Notice of Motion returnable October 6, 2011 | | 1 | |
| Affidavit of John Doolittle sworn September 19, 2011 | | 2 | |
| Seventy-Fifth Report of the Monitor dated September 19, 2011 | | 3 | |
| Appendix "A" | Glossary of Defined Terms | A | |
| Appendix "B" | Mercer 2011 Non-Registered Pension/Pension Accruals Valuation | B | |
| Appendix "C" | Mercer 2011 Non-Pension Benefits Valuation | C | |
| Appendix "D" | Termination and Severance Claim Methodology | D | |
| | Appendix "D-1"    Description of Termination and Severance Claim | | D-1 |
| | Appendix "D-2"    Aggregate Severance Grid | | D-2 |
| | Appendix "D-3"    Severance Grid Formulae | | D-3 |
| Appendix "E" | Patent Award Claim Methodology | E | |
| **VOLUME II** | | | |
| Appendix "F" | Employee Communications concerning CARP Changes | F | |

- 2 -

| DOCUMENT | | TAB NO. |
|---|---|---|
| Appendix "G" | The Nortel Networks Limited Managerial and Non-Negotiated Excess Plan | G |
| Appendix "H" | The Supplementary Executive Retirement Plan | H |
| Appendix "I" | The Nortel International Pension Plan | I |
| Appendix "J" | The Nortel Networks Limited Transitional Retirement Allowance Plan | J |
| Appendix "K" | The Nortel Networks Limited Retirement Allowance Plan | K |
| Appendix "L" | Summary of Patent Awards Program | L |
| Appendix "M" | Mercer List of Differences between HWT Report and Mercer 2011 Valuation Report for Non-Pension Benefits | M |
| Appendix "N" | Information Statement Package | N |
| Appendix "O" | Proof of Claim Document Package | O |
| Appendix "P" | Form of Letter to Active Employees | P |
| Appendix "Q" | Form of Letter to Post-Filing Transferred Employees who are not receiving an Information Statement Package | Q |
| Appendix "R" | Form of Letter to Employees with out-of-country addresses who are not receiving an Information Statement Package | R |
| Appendix "S" | Form of Notice for Publication | S |
| Appendix "T" | Form of Notice of Acceptance (Personal Information) | T |
| Appendix "U" | Form of Notice of Disallowance (Personal Information) | U |
| Appendix "V" | Form of Notice of Disallowance (Proof of Claim) | V |
| Appendix "W" | Form of Dispute Notice (Personal Information) | W |
| Appendix "X" | Form of Dispute Notice (Proof of Claim) | X |
| Draft Compensation Claims Methodology Order | | 4 |
| Draft Compensation Claims Procedure Order | | 5 |

CONFIDENTIAL

# TAB 1

CONFIDENTIAL

Court File No. 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

NOTICE OF MOTION

**(Motion for Compensation Claims Methodology Order**
**and Compensation Claims Procedure Order)**
**(returnable October 6, 2011)**

Nortel Networks Corporation ("NNC"), Nortel Networks Limited, Nortel Networks
Technology Corporation, Nortel Networks International Corporation and Nortel Networks
Global Corporation (collectively, the "Applicants") will make a motion to Justice Morawetz of
the Commercial List court on **Thursday, October 6, 2011 at 10:00 a.m.**, or as soon after that
time as the motion can be heard, at **361 University Avenue**, Toronto, Ontario.

PROPOSED METHOD OF HEARING: The motion is to be heard:

☐ in writing under subrule 37.12.1(1) because it is on consent or unopposed or made without
notice;

☐ in writing as an opposed motion under subrule 37.12.1(4);

☒ orally.

DOCSTOR: 225900013

00002

## THE MOTION IS FOR:

(a)     a "Compensation Claims Methodology Order" in substantially the form contained in the Applicants' Motion Record;

(b)     a "Compensation Claims Procedure Order" in substantially the form contained in the Applicants' Motion Record; and

(c)     such further and other relief as counsel may request and this Honourable Court may grant.

## THE GROUNDS FOR THE MOTION ARE:

### *Proceedings in Canada, U.S. and the U.K.*

(a)     On January 14, 2009, the Applicants were granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order of this Honourable Court, and Ernst & Young Inc. was appointed as monitor (the "Monitor") in the CCAA proceedings;

(b)     Also on January 14, 2009, certain of NNC's United States subsidiaries made voluntary filings in the U.S. Bankruptcy Court for the District of Delaware under Chapter 11 of the U.S. Bankruptcy Code. Nortel Networks (CALA) Inc. subsequently filed under Chapter 11 of the U.S. Bankruptcy Code;

(c)     Additionally, on January 14, 2009, Nortel Networks UK Limited and certain subsidiaries of the Nortel group incorporated in Europe, the Middle East or Africa each obtained an administration order for the appointment of administrators from the High Court of England and Wales under the Insolvency Act 1986. These debtors together with Nortel Networks Israel (Sales and Marketing) Limited are herein referred to as the "EMEA Debtors";

DOCSTOR: 2259000\3

CONFIDENTIAL          UCC0064416

00003

### Prior Orders regarding claims against the Applicants

(d)      An Amended and Restated Claims Procedure Order dated July 30, 2009 (the "2009 Claims Procedure Order") was made by this Court, establishing a process for the proving of "Claims", as defined therein;

(e)      Certain categories of claims were excluded from the definition of "Claims" as defined in the 2009 Claims Procedure Order; among the excluded categories of claims were inter-company claims, "Compensation Claims" as defined therein, grievance claims, and the claims of any director or officer for indemnification and/or contribution arising from such director's or officer's service to any Applicant (collectively, the "Excluded Claims");

(f)      A Claims Resolution Order was made by this Court on September 16, 2010, establishing the resolution process for "Claims" as defined in the 2009 Claims Procedure Order. Consistent with the 2009 Claims Procedure Order, the Claims Resolution Order did not establish resolution procedures for Excluded Claims;

(g)      An EMEA Claims Procedure Order was made on January 14, 2011, establishing a claims procedure (including resolution procedures) for certain inter-company claims, being claims between the EMEA Debtors and the Applicants;

### Need for a compensation claims process

(h)      To date, no claims filing procedure or claims resolution procedure has been established with respect to Compensation Claims (as defined in the 2009 Claims Procedure Order), grievance claims, or the claims of any director or officer for indemnification and/or contribution arising from such director's or officer's service to any Applicant;

(i)      One of the largest claims against the Applicants, in aggregate, will be the claims of their employees, former employees, pensioners and their survivors, including long-term disability beneficiaries (collectively, "Employees"); as noted in the Monitor's Report and in the actuarial materials filed with respect to this motion, these Employee liabilities are estimated in aggregate to exceed one billion dollars;

DOCSTOR: 2259000\3

CONFIDENTIAL          UCC0064417

00004

(j)     Accordingly, a mechanism for the determination of Employee claims, together with grievance claims and the claims of directors or officers for indemnification or contribution ("Indemnification Claims"), must be established in order that there will then be claims processes for all of the significant anticipated claims against the Applicants;

(k)     The establishment of a process to determine Employee claims and Indemnification Claims will help to avoid potential future delays in the administration of the Canadian estates, in determining claims for voting and distribution purposes;

*Compensation Claims Methodology Order*

(l)     Approximately 16,000 Employees may have employment-related claims against one or more of the Applicants, given the large number of compensation and benefit programs provided by the Applicants;

(m)    It was anticipated by the Applicants, the Monitor and employee representatives that an individual employee would generally not be in a position to value his or her own claim, since this would require accessing and analyzing all of the documents and information affecting any potential claim, and actuarial and other advice would be required;

(n)     In addition, if individuals had been required to submit individual proofs of claim with respect to their claims, it is likely that a large number of inconsistent calculations and assessments would have been received in the claims process;

(o)     The Applicants, the Monitor, the Employee Representatives, Representative Counsel and the CAW (each as defined in the Monitor's Seventy-Fifth Report dated September 19, 2011, filed in support of this motion (the "Monitor's Report")) realized that it would be in the interests of all the Employees and the estate if they could develop and agree upon an acceptable methodology for the calculation of employment-related claims and a streamlined procedure to deal with them;

(p)     After extensive discussions and negotiations among the Compensation Claims Participants (as defined in the Monitor's Report), certain principles were developed that,

DOCSTOR: 2259000\3

CONFIDENTIAL          UCC0064418

00005

taken as a whole and applied consistently to each individual, were acceptable to the Applicants, the Monitor, and to the Employee Representatives and the CAW, representing different categories of Employees;

(q)    The Compensation Claims Methodology Order seeks the Court's approval of these principles and methodologies, so that a claims process can deal with a large number of Employee claims in a streamlined claims process, as described below;

(r)    The Compensation Claims Methodology Order, if granted, will approve methodologies for calculating Benefit Claims, Termination and Severance Pay Claims and Patent Award Claims, as defined in the Monitor's Report. If such methodologies are approved, then the Monitor, with actuarial assistance and support, and with the assistance of the Applicants, will be in a position to inform individual Employees what their identifiable claims are;

(s)    While the methodologies in the Compensation Claims Methodology Order, if such an Order is granted, will be binding on all Employees, Employees will (i) have the opportunity to review and correct the personal information to which these methodologies will be applied, and (ii) be able to make employment-related claims other than Benefit Claims, Termination and Severance Pay Claims and Patent Award Claims, each as defined in the Monitor's Report, by completing and submitting a Proof of Claim for such other claims;

*Compensation Claims Procedure Order*

(t)    The proposed form of Compensation Claims Procedure Order will, if granted, permit for a two-track process;

(u)    The first track will apply to Benefit Claims, Termination and Severance Pay Claims and Patent Award Claims, as defined, and in very general terms will operate as follows:

        (i)    by way of an "Information Statement", each Employee will be advised of the amount of his or her individual claim, calculated based on the methodologies approved in the Compensation Claims Methodology Order

DOCSTOR: 2259000\3

as applied to the personal information with respect to that Employee (as per the Applicants' books and records);

(ii)     there will be a process by which the Employee can request corrections to their personal information as set out in the Information Statement;

(iii)     corrections to personal information can be accepted by the Monitor and, if these corrections change the amount of the Employee's claim, the Employee will be issued a revised Information Statement and advised of the amount of his or her revised claim;

(iv)     if corrections to personal information are rejected by the Monitor, there are mechanisms for the discussion, settlement, and ultimately the adjudication of any disputes, similar to the mechanisms applicable to the determination of other creditor claims;

(v)     The vast majority of employment-related claims will proceed under the first track described above;

(w)     The second track will apply to all Other Compensation Claims (as defined) and, again in very general terms, operates as follows:

(i)     any creditor may submit a Proof of Claim with respect to an Other Compensation Claim (as defined), being a claim other than those claims being dealt with in the first track;

(ii)     there are disallowance, dispute and resolution procedures applicable to the determination of these claims as well;

(x)     The Compensation Claims Procedure Order also contains detailed provisions with respect to other matters which, taken as whole, will ensure that the claims process comes to the attention of all parties likely to be affected, and that the process will operate fairly and efficiently, including provisions relating to (i) publication and notice, (ii) previously settled claims and duplicate claims, (iii) the Monitor's role, protections for the Monitor, and the role of representative counsel, (iv) the transfer of claims, (v) seeking direction

CONFIDENTIAL     

from the Court, (vi) service and notice, and (vii) aid and assistance of other courts and tribunals;

(y)  Compensation Claims Participants (as defined in the Monitor's Report), including the Applicants and the Monitor, are all of the view that the process established by the Compensation Claims Procedure Order, applying the methodologies set out in the Compensation Claims Methodology Order, will permit for the determination of Employee claims on a fair, reasonable and efficient basis;

***Miscellaneous***

(z)  The provisions of the CCAA; and

(aa)  Such further and other grounds as counsel may advise and this Honourable Court permit.

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the motion:

(a)  the affidavit of John Doolittle sworn September 19, 2011;

(b)  the Monitor's Report; and

(c)  such further and other material as counsel may request and this Honourable Court may permit.

DOCSTOR: 2259000\3

**00008**

September 19, 2011

**NORTON ROSE OR LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4  CANADA

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jennifer.stam@nortonrose.com

**Tony Reyes LSUC #28218V**
Tel: (416) 216-4825
Email: tony.reyes@nortonrose.com


Fax: (416) 216-3930
Lawyers for the Applicants

TO:        Attached Service List

AND TO:  Terry Laschuk
            3033 Dangerfield Road
            Kemptville, ON  K0G 1J0

AND TO:  Tharini Shanmuganathar
            218 Edenbrook Hill Drive
            Brampton, ON  L7A 2W7

AND TO:  Roy William Vokey
            702-1001 Main Street West
            Hamilton, ON  L8S 1A9

AND TO:  Yuan Zhuo Xie
            54 Snowball Crescent
            Toronto, ON  M1B 1R9

AND TO:  Karen Wong
            2385 Gamble Road
            Oakville, ON  L6H 7V6

DOCSTOR: 2259000\3

CONFIDENTIAL

UCC0064422

00009

AND TO:  Québec Labour Standards Commission
          Montreal Regional Office
          26$^e$ étage
          500, boulevard René-Lévesque Ouest
          Montréal, Québec  H2Z 2A
          Attention:  Denis René

DOCSTOR: 2259000\3

CONFIDENTIAL

UCC0064423

00010

*July 8, 2011*

Court File No. 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

SERVICE LIST

TO: **NORTON ROSE OR LLP**
  Royal Bank Plaza, South Tower
  200 Bay Street, Suite 3800
  Toronto, Ontario M5J 2Z4

  Derrick Tay
  Tony Reyes
  Jennifer Stam

  Email: derrick.tay@nortonrose.com
     tony.reyes@nortonrose.com
     jennifer.stam@nortonrose.com

  Tel: 416.216.4000
  Fax: 416.216.3930

  Lawyers for the Applicants

DOCSTOR: 1600901\23

CONFIDENTIAL        UCC0064424

00011

- 2 -

TO: **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, Ontario M5K 1J7

Murray McDonald
Brent Beekenkamp

Email: nortel.monitor@ca.ey.com

Tel: 416.943.3016
Fax: 416.943.3300

AND
TO: **GOODMANS LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario M5H 2S7

Jay Carfagnini
Joseph Pasquariello
Gail Rubenstein
Fred Myers
Chris Armstrong

Email: jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
grubenstein@goodmans.ca
fmyers@goodmans.ca
carmstrong@goodmans.ca

Tel: 416.597.4107
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND
TO: **OSLER HOSKIN AND HARCOURT
LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, Ontario M5X 1B8

Lyndon Barnes
Rupert Chartrand
Edward Sellers
Betsy Putnam

Email: lbarnes@osler.com
rchartrand@osler.com
esellers@osler.com
eputnam@osler.com

Tel: 416.362.2111
Fax: 416.862.6666

Lawyers for the Boards of Directors of
Nortel Networks Corporation and Nortel
Networks Limited

AND
TO: **FASKEN MARTINEAU DUMOULIN LLP**
66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, Ontario M5K 1N6

Donald E. Milner
Aubrey Kauffman
Edmond Lamek
Jon Levin

Email: dmilner@fasken.com
akauffman@fasken.com
elamek@fasken.com
jlevin@fasken.com

Tel: 416.868.3538
Fax: 416.364.7813

Lawyers for Export Development Canada

DOCSTOR: 1600901\23

CONFIDENTIAL      UCC0064425

00012

- 3 -

AND TO:  **EXPORT DEVELOPMENT CANADA**
151 O'Connor Street
Ottawa, Ontario K1A 1K3

Jennifer Sullivan

Email:  jsullivan@edc.ca

Tel:  613.597.8651
Fax:  613.598.3113

AND TO:  **THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific Tower
Toronto, Ontario M5K 1K7

Leanne M. Williams

Email:  lwilliams@tgf.ca

Tel:  416.304.1616
Fax:  416.304.1313

Lawyers for Flextronics Telecom Systems Ltd.

AND TO:  **McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email:  john.stringer@mcinnescooper.com
stephen.kingston@mcinnescooper.com

Tel:  902.425.6500
Fax:  902.425.6350

Lawyers for Convergys EMEA Limited

AND TO:  **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario M5H 3S1

Jeffrey Carhart

Email:  jcarhart@millerthomson.com

Tel:  416.595.8615/8577
Fax:  416.595.8695

Lawyers for Toronto-Dominion Bank

AND TO:  **CAW-CANADA**
Legal Department
205 Placer Court
Toronto, Ontario M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:  barry.wadsworth@caw.ca
lewis.gottheil@caw.ca

Tel.:  416.495.3776
Fax:  416.495.3786

Lawyers for all active and retired Nortel employees represented by the CAW-Canada

AND TO:  **BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC V7X 1S8

R. Hoops Harrison

Email:  hharrison@boughton.ca

Tel:  604.687.6789
Fax:  604.683.5317

Lawyers for Tonko Realty Advisors (BC) Ltd., in its capacity as duly authorized agent for Holdings 1506 Enterprises Ltd.

DOCSTOR: 1600901\23

CONFIDENTIAL

UCC0064426

00013

- 4 -

AND TO:
**BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, Ontario M5H 3Y4

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email: mmacnaughton@blgcanada.com
Tel: 416. 367.6646
Fax: 416. 682.2837

Email: rjaipargas@blgcanada.com
Tel: 416.367.6266
Fax: 416.361.7067

Email: srappos@blgcanada.com
Tel: 416.367.6033
Fax: 416.361.7306

Lawyers for Bell Canada

AND TO:
**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

John Contini

Email: john.contini@mcmillan.ca
Tel: 416.307.4148
Fax: 416.304.3767

Lawyers for ABN AMRO Bank N.V.

AND TO:
**SISKINDS LLP**
680 Waterloo Street
London, Ontario N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Emilie E. M. Maxwell

Email: ray.leach@siskinds.com
dimitri.lascaris@siskinds.com
emilie.maxwell@siskinds.com

Tel: 519.672.2121
Fax: 519.672.6065

Lawyers for Indiana Electrical Workers
Pension Trust Fund IBEW, Laborers Local
100 and 397 Pension Fund, and Bruce
William Lapare

AND TO:
**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson
Richard Swan

Email: zychk@bennettjones.com
Tel: 416.777.5738
Fax: 416.863.1716

Email: orzyr@bennettjones.com
Tel: 416.777.5737
Fax: 416.863.1716

Email: finlaysong@bennettjones.com
Tel: 416.777.5762
Fax: 416.863.1716

Email: swanr@bennettjones.com
Tel: 416.777.7479
Fax: 416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

DOCSTOR: 1600901\23

CONFIDENTIAL          UCC0064427

00014

- 5 -

| AND TO: | **KOSKIE MINSKY**<br>20 Queen Street West<br>Suite 900<br>Toronto, Ontario  M5H 3R3 | AND TO: | **KOSKIE MINSKY**<br>20 Queen Street West<br>Suite 900<br>Toronto, Ontario  M5H 3R3 |
|---|---|---|---|

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon
Celeste Poltak

Email: mzigler@kmlaw.ca
Tel: 416.595.2090
Fax: 416.204.2877

Email: sphilpott@kmlaw.ca
Tel: 416.595.2104
Fax: 416.204.2882

Email: dyiokaris@kmlaw.ca
Tel: 416.595.2130
Fax: 416.204.2810

Email: amckinnon@kmlaw.ca
Tel: 416.595.2150
Fax: 416.204.2874

Email: cpoltak@kmlaw.ca
Tel: 416.595.2701
Fax: 416.204.2909

Lawyers for the Former Employees of Nortel

---

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon
Celeste Poltak

Email: mzigler@kmlaw.ca
Tel: 416.595.2090
Fax: 416.204.2877

Email: sphilpott@kmlaw.ca
Tel: 416.595.2104
Fax: 416.204.2882

Email: dyiokaris@kmlaw.ca
Tel: 416.595.2130
Fax: 416.204.2810

Email: amckinnon@kmlaw.ca
Tel: 416.595.2150
Fax: 416.204.2874

Email: cpoltak@kmlaw.ca
Tel: 416.595.2701
Fax: 416.204.2909

Lawyers for the LTD Beneficiaries

DOCSTOR: 1600901\23

CONFIDENTIAL

UCC0064428

00015

- 6 -

AND TO: **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:  jcarhart@millerthomson.com
Tel:    416.595.8615
Fax:    416.595.8695

Email:  msims@millerthomson.com
Tel:    416.595.8577
Fax:    416.595.8695

Email:  jmklotz@millerthomson.com
Tel:    416.595.4373
Fax:    416.595.8695

Lawyers for LG Electronics Inc.

AND TO: **LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongduengpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:  joseph.kim@lge.com

Tel:    +82.2.3777.3171
Fax:    +82.2.3777.5345

AND TO: **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:  jcarhart@millerthomson.com
Tel:    416.595.8615
Fax:    416.595.8695

Email   msims@millerthomson.com
Tel:    416.595.8577
Fax:    416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision
Communication Services, Inc.

AND TO: **CHAITONS LLP**
185 Sheppard Avenue West
Toronto, Ontario  M2N 1M9

Harvey G. Chaiton

Email:  harvey@chaitons.com

Tel:    416.218.1129
Fax:    416.218.1849

Lawyers for IBM Canada Limited

DOCSTOR: 1600901\23

CONFIDENTIAL

UCC0064429

00016

- 7 -

AND TO: **PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, Ontario  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:  ken.rosenberg@paliareroland.com
Tel:    416.646.4304
Fax:    416.646.4301

Email:  max.stamino@paliareroland.com
Tel:    416.646.7431
Fax:    416.646.4301

Email:  lily.harmer@paliareroland.com
Tel:    416.646.4326
Fax:    416.646.4301

Email:  tina.lie@paliareroland.com
Tel:    416.646.4332
Fax:    416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

AND TO: **FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder
Ryan Jacobs

Email:  Shayne.kukulowicz@fmc-law.com
        Alex.macfarlane@fmc-law.com
        Michael.wunder@fmc-law.com
        ryan.jacobs@fmc-law.com

Tel:    416.863.4511
Fax:    416.863.4592

Canadian Lawyers for the Official Committee
of Unsecured Creditors

AND TO: **GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1G5

E. Patrick Shea

Email:  patrick.shea@gowlings.com

Tel:    416.369.7399
Fax:    416.862.7661

Lawyers for Westcon Group

AND TO: **MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:  rslattery@mindengross.com
        dullmann@mindengross.com
Tel:    416.369.4149
Fax:    416.864.9223

Lawyers for Verizon Communications Inc.

DOCSTOR: 1600901\23

CONFIDENTIAL

UCC0064430

00017

- 8 -

AND TO:
**AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:  hfogul@airdberlis.com
Tel:     416.865.7773
Fax:     416.863.1515

Email:  pczegledy@airdberlis.com
Tel:     416.865.7749
Fax:     416.863.1515

Lawyers for Microsoft Corporation

AND TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:  renglish@airdberlis.com
           smitra@airdberlis.com

Tel:     416.863.1500
Fax:     416.863.1515

Lawyers for Tata Consultancy Services
Limited and Tata America International
Corporation

AND TO:
**ALEXANDER HOLBURN BEAUDIN &
LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:  surquhart@ahbl.ca
Tel:     604.484.1757
Fax:     604.484.1957

Lawyers for Algo Communication Products
Ltd.

AND TO:
**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:     416.865.6655
Fax:     416.865.6636

Email:  vdare@foglers.com
Tel:     416.865.6641
Fax:     416.865.6636

Lawyers for Andrew, LLC

AND TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:  iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street, West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Maurice Fleming

Email:  mfleming@millerthomson.com
Tel:     416.595.8686
Fax:     416.595.8695

Lawyers for Verint Americas Inc. and Verint
Systems, Inc.

DOCSTOR: 1600901\23

   UCC0064431

00018

- 9 -

| | | | |
|---|---|---|---|
| AND TO: | **DAVIS LLP**<br>1 First Canadian Place<br>Suite 5600<br>100 King Street West<br>Toronto, Ontario  M5X 1E2 | AND TO: | **McMILLAN LLP**<br>Brookfield Place, Suite 4400<br>181 Bay Street<br>Toronto, Ontario  M5J 2T3 |

**DAVIS LLP**

Bruce Darlington
Jonathan Davis-Sydor

Email:  bdarlington@davis.ca
Tel:  416.365.3529
Fax:  416.369.5210

Email:  jdavissydor@davis.ca
Tel:  416.941.5397
Fax:  416.365.7886

Lawyers for Brookfield LePage Johnson
Controls Facility Management Services

**McMILLAN LLP**

Andrew F. Kent
Tushara Weerasooriya
Hilary E. Clarke

Email:  andrew.kent@mcmillan.ca
Tel:  416.865.7160
Fax:  416.865.7048

Email:  hilary.clarke@mcmillan.ca
Tel:  416.865.7286
Fax:  416.865.7048

Email:  tushara.weerasooriya@mcmillan.ca
Tel:  416.865.7262
Fax:  416.865.7048

Lawyers for Royal Bank of Canada

---

**AIRD & BERLIS LLP**

AND TO:
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:  416.865.7726
Fax:  416.863.1515

Email:  iaversa@airdberlis.com
Tel:  416.865.3082
Fax:  416.863.1515

Lawyers for Perot Systems Corporation

**McMILLAN LLP**

AND TO:
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Brett Harrison
Adam C. Maerov

Email:  brett.harrison@mcmillan.ca
Tel :  416.865.7932
Fax :  416.865.7048

Email:  adam.maerov@mcmillan.ca
Tel:  416.865.7285
Fax:  416.865.7048

Lawyers for Citibank

DOCSTOR: 1600901\23

CONFIDENTIAL

00019

- 10 -

AND TO: **CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario M5H 3C2

Deborah S. Grieve

Email: dgrieve@casselsbrock.com
Tel: 416.860.5219
Fax: 416.350.6923

Lawyers for Alvarion Ltd.

AND TO: **BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario M5C 3G5

Domenico Magisano

Email: dmagisano@blaney.com
Tel: 416.593.2996
Fax: 416.593.5437

Lawyers for Expertech Network Installation Inc.

AND TO: **GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email: jwigley@gardiner-roberts.com
Tel: 416.865.6655
Fax: 416.865.6636

Email: vdare@foglers.com
Tel: 416.865.6641
Fax: 416.865.6636

Lawyers for Amphenol Corporation

AND TO: **McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Alex Ilchenko

Email: alex.ilchenko@mcmillan.ca
Tel: 416.307.4116
Fax: 416.365.1719

Lawyers for Right Management Inc.

AND TO: **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Sanjeev P.R. Mitra

Email: smitra@airdberlis.com

Tel: 416.863.1500
Fax: 416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

AND TO: **CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario M5H 3C2

E. Bruce Leonard
David S. Ward
Michael Casey

Email: bleonard@casselsbrock.com
dward@casselsbrock.com
mcasey@casselsbrock.com

Tel: 416.860.6455
Fax: 416.640.3054

Lawyers for the UK Pension Protection Fund and Nortel Networks UK Pension Trust Limited

DOCSTOR: 1609901\23

CONFIDENTIAL

UCC0064433

00020

- 11 -

| | |
|---|---|
| AND TO: | **MCFARLANE LEPSOE**<br>Barristers & Solicitors<br>70 Gloucester Street, Third Floor<br>Ottawa, Ontario K2P 0A2<br><br>Paul K. Lepsoe<br><br>Email:  pklepsoe@mcfarlanelaw.com<br><br>Tel:    613.233.2679<br>Fax:   613.233.3774<br><br>Lawyers for Iron Mountain Canada Corporation and Iron Mountain Information Management, Inc. | AND TO: | **IRVING MITCHELL KALICHMAN LLP**<br>Place Alexis Nihon, Tour 2<br>3500 Boulevard De Maisonneuve Ouest<br>Bureau 1400<br>Montreal, Quebec H3Z 3C1<br><br>Kurt A. Johnson<br><br>Email :  kjohnson@imk.ca<br>Tel :    514.935.5755<br>Fax :   514.935.2999<br><br>Lawyers for GFI INC., a division of Thomas & Betts Manufacturing Inc. |

**AND TO:**

**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario K2P 0A2

Paul K. Lepsoe

Email:  pklepsoe@mcfarlanelaw.com

Tel:    613.233.2679
Fax:   613.233.3774

Lawyers for Iron Mountain Canada Corporation and Iron Mountain Information Management, Inc.

**AND TO:**

**IRVING MITCHELL KALICHMAN LLP**
Place Alexis Nihon, Tour 2
3500 Boulevard De Maisonneuve Ouest
Bureau 1400
Montreal, Quebec H3Z 3C1

Kurt A. Johnson

Email :  kjohnson@imk.ca
Tel :    514.935.5755
Fax :   514.935.2999

Lawyers for GFI INC., a division of Thomas & Betts Manufacturing Inc.

**AND TO:**

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:  theintzm@mccarthy.ca
Tel:    416.601.7627
Fax:   416.868.0673

Email:  jsirivar@mccarthy.ca
Tel:    416.601.7750
Fax:   416.868.0673

Lawyers for Frank Andrew Dunn

**AND TO:**

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:  janice.payne@nelligan.ca
steven.levitt@nelligan.ca
christopher.rootham@nelligan.ca

Tel:    613.231.8245
Fax:   613.788.3655

Lawyers for the Steering Committee of Nortel Canadian Continuing Employees – Post CCAA as at January 14, 2009

DOCSTOR: 1600901\23

CONFIDENTIAL

UCC0064434

00021

- 12 -

AND TO:
**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario M5J 2T3

Chris Besant
Lydia Salvi

Email: chris.besant@bakernet.com

Tel: 416.865.2318
Fax: 416.863.6275

Email: lydia.salvi@bakernet.com

Tel: 416.865.6944
Fax: 416.863.6275

Lawyers for Jabil Circuit Inc.

AND TO:
**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email: ryanbellr@bennettjones.com
laugesenm@bennettjones.com

Tel: 416.863.1200
Fax: 416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and
Tel-e Connect Systems (Toronto) Ltd.

AND TO:
**SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec H9S 2A5

Dan Goldstein
Marco Gaggino

Email: dgoldstein@schneidergaggino.com
mgaggino@schneidergaggino.com

Tel: 514.631.8787
Fax: 514.631.0220

Lawyers for the Teamsters Quebec Local
1999

AND TO:
**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario M5H 4G2

Timothy R. Dunn

Email: tdunn@mindengross.com
Tel: 416.369.4335
Fax: 416.864.9223

Lawyers for 2748355 Canada Inc.

AND TO:
**EURODATA**
2574 Sheffield Road
Ottawa, Ontario K1B 3V7

Nanci Shore

Email: nanci@eurodata.ca
Tel: 613.745.0921
Fax: 613.745.1172

AND TO:
**BALDWIN LAW PROFESSIONAL
CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email: ibrady@baldwinlaw.ca
Tel: 613.771.9991
Fax: 613.771.9998

Lawyers for Sydney Street Properties Corp.

DOCSTOR: 1600901\23

CONFIDENTIAL                      UCC0064435

00022

- 13 -

AND
TO:
**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Raffy Lorentzian

Email:   raffy.lorentzian@ntscorp.com
Tel:   714.998.4351
Fax:   714.998.7142

Lawyers for AETL Testing, Inc.

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:   416.865.7726
Fax:   416.863.1515

Email:   iaversa@airdberlis.com
Tel:   416.865.3082
Fax:   416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND
TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:   arthur.jacques@shibleyrighton.com
Tel:   416.214.5213
Fax:   416.214.5413

Email :   thomas.mcrae@shibleyrighton.com
Tel :   416.214.5206
Fax :   416.214.5400

Lawyers for The Recently Severed
Canadian Nortel Employees Committee

AND
TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:   arthur.jacques@shibleyrighton.com
Tel:   416.214.5213
Fax:   416.214.5413

Email :   thomas.mcrae@shibleyrighton.com
Tel :   416.214.5206
Fax :   416.214.5400

Co-Counsel for the Steering Committee of
Nortel Canadian Continuing Employees –
Post CCAA as at January 14, 2009

AND
TO:
**NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Raffy Lorentzian

Email:   raffy.lorentzian@ntscorp.com
Tel:   714.998.4351

AND
TO:
**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email:   david.cohen@gowlings.com

Tel:   416.369.6667
Fax:   416.862.7661

Lawyers for General Electric Canada
Equipment Finance G.P. and GE Capital
Canada Leasing Services Inc.

DOCSTOR: 1600901\23

CONFIDENTIAL

UCC0064436

00023

- 14 -

| | | | | |
|---|---|---|---|---|
| AND TO: | **DAVIS LLP**<br>1 First Canadian Place<br>Suite 5600<br>100 King Street West<br>Toronto, ON M5X 1E2 | | AND TO: | **DAVIES WARD PHILLIPS & VINEBERG LLP**<br>44th Floor<br>1 First Canadian Place<br>Toronto, ON M5X 1B1 |

<table>
<tr>
<td>AND<br>TO:</td>
<td><b>DAVIS LLP</b><br>1 First Canadian Place<br>Suite 5600<br>100 King Street West<br>Toronto, ON M5X 1E2<br><br>Bruce Darlington<br>Jonathan Davis-Sydor<br><br>Email: bdarlington@davis.ca<br>Tel: 416.365.3529<br>Fax: 416.369.5210<br><br>Email: jdavissydor@davis.ca<br>Tel: 416.941.5397<br>Fax: 416.365.7886<br><br>Lawyers for Computershare Trust Company<br>of Canada</td>
<td>AND<br>TO:</td>
<td><b>DAVIES WARD PHILLIPS & VINEBERG LLP</b><br>44th Floor<br>1 First Canadian Place<br>Toronto, ON M5X 1B1<br><br>Robin B. Schwill<br>Matthew P. Gottlieb<br><br>Email: rschwill@dwpv.com<br>Tel: 416.863.0900<br>Fax: 416.863.0871<br><br>Email: mgottlieb@dwpv.com<br>Tel: 416.863.0900<br>Fax: 416.863.0871<br><br>Lawyers for Nortel Networks UK Limited (In<br>Administration)</td>
</tr>
<tr>
<td>AND<br>TO:</td>
<td><b>LAX O'SULLIVAN SCOTT LLP</b><br>Counsel<br>Suite 1920, 145 King Street West<br>Toronto, Ontario M5H 1J8<br><br>Terrence O'Sullivan<br>Shaun F. Laubman<br><br>E-mail: tosullivan@counsel-toronto.com<br>Tel: 416.598.1744<br>Fax: 416.598.3730<br><br>Email: slaubman@counsel-toronto.com<br>Tel: 416.598.1744<br>Fax: 416.598.3730<br><br>Lawyers for William A. Owens</td>
<td>AND<br>TO:</td>
<td><b>SIMMONS, DA SILVA & SINTON LLP</b><br>Suite 200, 201 County Court Blvd.<br>Brampton, Ontario<br>L6W 4L2<br><br>Howard Simmons<br>Email: howard@sdslawfirm.com<br><br>Puneet S. Kohli<br>Email: puneet@sdslawfirm.com<br><br>Tel: 905.861.2819<br><br>Lawyers for Wipro Limited</td>
</tr>
</table>

DOCSTOR: 1600901\23

UCC0064437

00024

- 15 -

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:      416.865.7726
Fax:     416.863.1515

Email:  iaversa@airdberlis.com
Tel:      416.865.3082
Fax:     416.863.1515

Lawyers for the Current and Former
Employees of Nortel Networks Inc. who are
or were Participants in the Long-Term
Investment Plan Sponsored by Nortel
Networks Inc.

AND
TO:
**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario, M5J 2T3

Sheryl E. Seigel

Email:  sheryl.seigel@mcmillan.ca
Tel:      416.307.4063
Fax:     416.365.1719

Lawyers for The Bank of New York Mellon

AND
TO:
**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario M5L 1A9

Susan M. Grundy
Marc Flynn

Email:  susan.grundy@blakes.com
Tel:      416.863.2572
Fax:     416.863.2653

Email:  marc.flynn@blakes.com
Tel:      416.863.2685
Fax:     416.863.2653

Lawyers for Telefonaktiebolaget L M
Ericsson (publ)

DOCSTOR: 1600901\23

AND
TO:
**McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario  M5K 1E6

Heather Meredith

Email:  hmeredith@mccarthy.ca
Tel:      416.601.8342
Fax:     416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND
TO:
**DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email:  dwinters@justice.gc.ca
Tel:      416.973.3172
Fax:     416.973.0810

AND
TO:
**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran
Ryan Stabile

Email:  kmcelcheran@mccarthy.ca
Tel:      416.601.7730
Fax:     416.868.0673

Email:  rstabile@mccarthy.ca
Tel:      416.601.8335
Fax:     416.868.0673

Lawyers for Avaya Inc.

CONFIDENTIAL

UCC0064438

00025

- 16 -

AND TO:
**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:  pamela.huff@blakes.com
Tel:     416.863.2958
Fax:    416.863.2653

Email:  milly.chow@blakes.com
Tel:     416.863.2594
Fax:    416.863.2653

Email:  hugh.desbrisay@blakes.com
Tel:     416.863.2426
Fax:    416.863.2653

Email:  craig.thorburn@blakes.com
Tel:     416.863.2965
Fax:    416.863.2653

Lawyers for MatlinPatterson Global
Advisers LLC, MatlinPatterson Global
Opportunities Partners III L.P. and
MatlinPatterson Opportunities Partners
(Cayman) III L.P.

AND TO:
**FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:  jspiegelman@foglers.com
Tel:     416.864.9700
Fax:    416.941.8852

Lawyers for Belden (Canada) Inc.

AND TO:
**SACK GOLDBLATT MITCHELL LLP**
20 Dundas Street West
Suite 1100
Toronto, Ontario  M5G 2G8

James McDonald
Darrell Brown

Email:  lmcdonald@sgmlaw.com
Tel:     416.979.6425
Fax:    416.591.7333

Email:  dbrown@sgmlaw.com
Tel:     416.979.4050
Fax:    416.591.7333

Lawyers for Edmund Fitzgerald

AND TO:
**VINCENT DAGENAIS GIBSON LLP/s.r.l**
Barristers and Solicitors
600-325 Dalhousie Street
Ottawa, ON  K1N 7G2

Thomas Wallis

E-mail:  thomas.wallis@vdg.ca
Tel:      613.241.2701
Fax:     613.241.2599

Lawyers for La Regie des Rentes du Quebec

DOCSTOR: 1600901\23

CONFIDENTIAL                                          UCC0064439

00026

- 17 -

AND
TO:

**STIKEMAN ELLIOTT LLP**
5300 Commerce Court West
199 Bay Street
Toronto, ON  M5L 1B9

Sean F. Dunphy

Email:  sdunphy@stikeman.com
Tel:     416.869.5662
Fax:     416.947.0866

Lawyers for GENBAND Inc.

AND
TO:

**STIKEMAN ELLIOTT LLP**
445 Park Avenue, 7th Floor
New York, NY  10022

Gordon Cameron
Ron Ferguson

Email:  gncameron@stikeman.com
Tel:     212.845.7464
Fax:     212.371.7087

Email:  rferguson@stikeman.com
Tel:     212.845.7477
Fax:     212.371.7087

Lawyers for GENBAND Inc.

AND
TO:

**BORDEN LADNER GERVAIS LLP**
Barristers and Solicitors
Scotia Plaza, Suite 4400
40 King Street West
Toronto, ON  M4H 3Y4

John D. Marshall
Craig J. Hill

Email:  jmarshall@blgcanada.com
Tel:     416.367.6024
Fax:     416.361.2763

Email:  chill@blgcanada.com
Tel:     416.367.6156
Fax:     416.631.7301

Lawyers for the U.K. Pensions Regulator

AND
TO:

**BLAKE, CASSELS & GRAYDON**
Box 25, Commerce Court West
199 Bay Street, Suite 2800
Toronto, Ontario  M5L 1A9

Pamela J. Huff
J. Jeremy Forgie

Email:  pamela.huff@blakes.com
Tel:     416.863.2958
Fax:     416.863.2653

Email:  jeremy.forgie@blakes.com
Tel:     416.863.3888
Fax:     416.863.2653

Lawyers for The Northern Trust Company,
Canada

AND
TO:

**ROCHON GENOVA LLP**
121 Richmond Street West
Suite 900
Toronto, ON  M5H 2K1

Joel P. Rochon

Email:  jrochon@rochongenova.com
Tel:     416.363.1867
Fax:     416.363.0263

Lawyers for the Opposing LTD Employees

AND
TO:

**LERNERS LLP**
130 Adelaide St. West
Suite 2400
Toronto, ON  M5H 3P5

William E. Pepall

Email:  wpepall@lerners.ca
Tel:     416.601.2352
Fax:     416.867.2415

Lawyers for the Former Employees in Respect
of the Distribution of the Corpus of the Health
and Welfare Trust

DOCSTOR: 1600901\23

CONFIDENTIAL    UCC0064440

00027

- 18 -

| | |
|---|---|
| AND TO: | **MACLEOD DIXON LLP**<br>3700 Canterra Tower<br>400 Third Avenue SW<br>Calgary, Alberta<br>T2P 4H2 |

Kyle D. Kashuba

Email:   kyle.kashuba@macleoddixon.com
Tel:     403.267.8399
Fax:    403.264.5973

Constellation NewEnergy Canada Inc.

AND TO:   **SACK GOLDBLATT MITCHELL**
500 – 30 rue Metcalfe St.
Ottawa, ON K1P 5L4

Peter Engelmann
Fiona Campbell

Email:   pengelmann@sgmlaw.com
Tel:     613-482-2452
Fax:    613-235-3041

Email:   fcampbell@sgmlaw.com
Tel:     613-482-2451
Fax:    613-235-3041

Lawyers for the LTD Beneficiaries in Respect of the Distribution of the Corpus of the Health and Welfare Trust

AND TO:   **CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006

James Bromley
Lisa Schweitzer
Martin N. Kostov

Email:   jbromley@cgsh.com
        lschweitzer@cgsh.com
        mkostov@cgsh.com
Tel:     212.225.2000
Fax:    212.225.3999

Lawyers for Nortel Networks Inc.

AND TO:   **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario M5K 1E6

Barbara J. Boake
James D. Gage
Elder C. Marques

E-mail:   bboake@mccarthy.ca
Tel:     416.601.7557
Fax:    416.868.0673

Email:   jgage@mccarthy.ca
Tel:     416.601.7539
Fax:    416.686.0673

Email:   emarques@mccarthy.ca
Tel:     416.601.7822
Fax:    416.686.0673

Lawyers for Morneau Shepell Limited

DOCSTOR: 160090123

CONFIDENTIAL

00028

- 19 -

AND TO: **McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, ON  M5J 2T3

D. Brent McPherson

Email:  brent.mcpherson@mcmillan.ca
Tel:    416.307.4103
Fax:    416.304.3769

Lawyers for Wells Fargo Bank, National
Association, as successor by merger to
Wachovia Bank, N.A., in its capacity as
Servicer for the Nortel Networks Pass-
Through Trust, Series 1-1

AND TO: **FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:  jspiegelman@foglers.com

Tel:    416.864.9700
Fax:    416.941.8852

Lawyers for Apex Logistics Inc.

AND TO: **TORYS LLP**
79 Wellington St. W., Suite 3000
Toronto-Dominion Centre
Toronto, Ontario  M5K 1N2

Michael Rotsztain
Adam M. Slavens

Email:  mrotsztain@torys.com
Tel:    416.865.7508
Fax:    416.865.7380

Email:  aslavens@torys.com
Tel:    416.865.7333
Fax:    416.865.7380

Lawyers for Ranger, Inc.

DOCSTOR: 1600901\23

AND TO: **DAVID STEER**
10 Cypress Court
Nepean, ON  K2H 8Z8

E-mail:  davidsteer127@sympatico.ca

AND TO: **TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Tony DeMarinis
Scott Bomhof
Sheila Block
Andrew Gray

Email:  tdemarinis@torys.com
        sbomhof@torys.com
        sblock@torys.com
        agray@torys.com
Tel:    416.865.0040
Fax:    416.865.8730

Lawyers for Nortel Networks Inc.

AND TO: **TEMPLEMAN MENNINGA LLP**
401-366 King Street East
Kingston, Ontario  K7K 6Y3

Harold Van Winssen
R. Benjamin Mills

Email:  hvw@tmlegal.ca
        rbm@tmlegal.ca

Tel:    613.542.1889
Fax:    613.542.6202

Lawyers for The Corporation of the City of
Belleville

CONFIDENTIAL

UCC0064442

00029

- 20 -

AND TO:   **MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson

Email :
andrew.robertson@macleoddixon.com

Tel :  403.267.8222
Fax :  403.264.5973

Lawyers for Recently Severed Calgary
Employees

AND TO:   **McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Brett Harrison

Email:  brett.harrison@mcmillan.ca
Tel :  416.865.7932
Fax :  416.865.7048

Lawyers for Rogers Communications Inc.

AND TO:   **ATTORNEY GENERAL FOR ONTARIO**
Crown Law Office – Civil
720 Bay Street, 8th Floor
Toronto, Ontario  M7A 2S9

Leonard Marsello
William MacLarkey

Email:  leonard.marsello@ontario.ca
Tel:  416.326.4939
Fax:  416.326.4181

Email:  William.MacLarkey@ontario.ca
Tel:  416.326.4082
Fax:  416.326.4181

Lawyers for Her Majesty the Queen in right
of Ontario, as represented by the Ministry of
the Environment

AND TO:   **BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Steven J. Weisz
Jackie Moher

Email:  steven.weisz@blakes.com
Tel:  416.863.2616
Fax:  416.863.2653

Email:  jackie.moher@blakes.com
Tel:  416.863.3174
Fax:  416.863.2653

Lawyers for the American Registry for Internet
Numbers

AND TO:   **TEMPLEMAN MENNINGA LLP**
401-366 King Street East
Kingston, Ontario  K7K 6Y3

Harold Van Winssen
R. Benjamin Mills

Email:  hvw@tmlegal.ca
rbm@tmlegal.ca

Tel:  613.542.1889
Fax:  613.542.8202

Lawyers for Algonquin and Lakeshore
Catholic District School Board

AND TO:   **McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Andrew J. F. Kent
Wael Rostom

Email:  andrew.kent@mcmillan.ca
Tel :  416.865.7160
Fax :  416.865.7048

Email:  wael.rostom@mcmillan.ca
Tel :  416.865.7790
Fax :  416.865.7048

Lawyers for the Norpax LLC and RPX
Corporation, in its capacity as Managing
Member of Norpax LLC

DOCSTOR: 1600901\23

CONFIDENTIAL

UCC0064443

00030

- 21 -

| | | | |
|---|---|---|---|
| AND TO: | **MILLER THOMSON LLP**<br>Scotia Plaza<br>40 King Street West, Suite 5800<br>P.O. Box 1011<br>Toronto, Ontario M6H 3S1<br><br>Craig A. Mills<br><br>Email: cmills@millerthomson.com<br>Tel : 416.595.8596<br>Fax : 416.595.8695<br><br>Lawyers for 2058756 Ontario Limited | AND TO: | **STIKEMAN ELLIOTT LLP**<br>Barristers & Solicitors<br>5300 Commerce Court West<br>199 Bay Street<br>Toronto, Ontario M5L 1B9<br><br>Elizabeth Pillon<br>Dan Murdoch<br><br>Email: lpillon@stikeman.com<br>Tel: 416.869.5623<br>Fax: 416.947.0866<br><br>Email: dmurdoch@stikeman.com<br>Tel: 416.869.5529<br>Fax: 416.947.0866<br><br>Lawyers for Apple Inc. |

AND
TO:

**DAVIS LLP**
1 First Canadian Place, Suite 6000
100 King Street West
P.O. Box 367,
Toronto, Ontario M5X 1E2

David Foulds

Email: dfoulds@davis.ca
Tel : 416.941.5392
Fax : 416.777.7414

Lawyers for Lenovo (Singapore) Pte. Ltd.

DOCSTOR: 1600901\23

CONFIDENTIAL        UCC0064444

00031

- 22 -

**COURTESY COPIES:**

| | |
|---|---|
| AND TO: | **LEWIS AND ROCA**<br>40 North Central Avenue<br>Phoenix, Arizona<br>USA 85004-4429<br><br>Scott K. Brown<br><br>Email: sbrown@lrlaw.com<br><br>Tel: 602.262.5321<br>Fax: 602.734.3866<br><br>Lawyers for The Prudential Insurance<br>Company of America |
| AND TO: | **CURTIS, MALLET-PREVOST, COLT &**<br>**MOSLE LLP**<br>101 Park Avenue<br>New York, New York 10178-0061<br><br>Steven J. Reisman<br>James V. Drew<br><br>E-mail: sreisman@curtis.com<br>        jdrew@curtis.com<br><br>Tel: 212.696.6000<br>Fax: 212-697-1559<br><br>Lawyers for Flextronics International |

| | |
|---|---|
| AND TO: | **AKIN GUMP STRAUSS HAUER &**<br>**FELD LLP**<br>One Bryant Park<br>New York, NY 10036<br><br>Fred S. Hodara<br><br>Email: fhodara@akingump.com<br><br>Tel: 212.872.1000<br>Fax: 212.872.1002<br><br>U.S. Lawyers for the Official Committee<br>of Unsecured Creditors |
| AND TO: | **MILBANK, TWEED, HADLEY**<br>**McCLOY LLP**<br>1 Chase Manhattan Plaza<br>New York, NY 10005<br><br>Thomas R. Kreller<br>Jennifer P. Harris<br>Albert A. Pisa<br><br>Email: TKreller@milbank.com<br>Tel: 213.892.4463<br>Fax: 213.629.5063<br><br>Email: JHarris@milbank.com<br>Tel: 212.530.5475<br>Fax: 212.530.5219<br><br>Email: APisa@milbank.com<br>Tel: 212.530.5319<br>Fax: 212.530.5219<br><br>U.S. Lawyers for The Informal Nortel<br>Noteholder Group |

DOCSTOR: 1600901\23

00032

- 23 -

| | | | |
|---|---|---|---|
| AND<br>TO: | **VEDDER PRICE P.C.**<br>1633 Broadway, 47th Floor<br>New York, New York 10019 | AND<br>TO: | **BRYAN CAVE LLP**<br>161 North Clark Street, Suite 4300<br>Chicago, Illinois 60601 |

**AND TO:**

**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York 10019

Michael L. Schein

Email: mschein@vedderprice.com

Tel: 212.407.6920
Fax: 212.407.7799

U.S. Lawyers for Telmar Network
Technology, Inc. and Precision
Communication Services, Inc.

**AND TO:**

**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email :
andrew.robertson@macleoddixon.com
caylee.rieger@macleoddixon.com

Tel : 403.267.8222
Fax : 403.264.5973

Agent for Nelligan O'Brien Payne LLP,
lawyers for the Steering Committee of
Recently Severed Canadian Nortel
Employees and lawyers for the Steering
Committee of Nortel Canadian Continuing
Employees – Post CCAA as at January 14,
2009

**AND TO:**

**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois 60601

Eric S. Prezant

Email: eric.prezant@bryancave.com
Tel: 312.602.5033
Fax: 312.602.5050

U.S. Lawyers for Tellabs, Inc.

**AND TO:**

**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022-4834

Michael J. Riela

Email: michael.riela@lw.com

Tel : 212.906.1373
Fax : 212.751.4864

U.S. Lawyers for The Bank of New York
Mellon

DOCSTOR: 1600901\23

CONFIDENTIAL      UCC0064446

A/C

CONFIDENTIAL

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No: **09-CL-7950**

---

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**
Proceeding commenced at Toronto

---

**NOTICE OF MOTION OF NORTEL**
**(motion returnable October 6, 2011)**

---

**NORTON ROSE OR LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jennifer.stam@ nortonrose.com

**Tony Reyes LSUC#:** 28218V
Tel: (416) 216-4825
Email: tony.reyes@nortonrose.com

Fax: (416) 216-3930

Lawyers for the Applicants

00033

TR49818

UCC0064447

DOCSTOR: 2259984\1

# TAB 2

CONFIDENTIAL

00034

Court File No: 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**AFFIDAVIT OF JOHN DOOLITTLE**
**(sworn September 19, 2011)**

I, John Doolittle, of the city of Oakville in the Province of Ontario, MAKE OATH AND
SAY:

1.    I am the Senior Vice-President, Corporate Services and Chief Financial Officer of Nortel
Networks Corporation ("NNC") and Nortel Networks Limited ("NNL"). I have held those
positions since March 22, 2010. From August 10, 2009 to March 21, 2010, I was the Senior
Vice-President, Finance and Corporate Services. From June 23, 2008 to August 10, 2009, I was
the Treasurer. From October 14, 2002 to June 12, 2006, I was the Vice-President, Tax and from
March 13, 2000 to October 14, 2002, I was the Assistant Treasurer. I have been the President of
Nortel Networks Global Corporation and Nortel Networks International Corporation since
October 10, 2009 and I have been a Director of Nortel Networks Technology Corporation since
August 15, 2009. As such, I have personal knowledge of the matters to which I hereinafter
depose in this Affidavit. Where I do not possess personal knowledge, I have stated the source of
my information and, in all such cases, believe it to be true.

2.    I swear this affidavit in support of the motion for:

    (a)    a "Compensation Claims Methodology Order" in substantially the form contained
        in the Applicants' Motion Record;

DOCSTOR: 2075240\9

CONFIDENTIAL      UCC0064449

00035

(b)      a "Compensation Claims Procedure Order" in substantially the form contained in the Applicants' Motion Record; and

(c)      such further and other relief as counsel may request and the Court may grant.

3.      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Compensation Claims Procedure Order contained in the Applicants' Motion Record.

## BACKGROUND

### *Proceedings in Canada, the United States and the United Kingdom*

4.      On January 14, 2009, the Applicants were granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order of this Honourable Court, and Ernst & Young Inc. was appointed as monitor (the "Monitor") in the CCAA proceedings.

5.      Also on January 14, 2009, certain of NNC's United States subsidiaries (together with Nortel Networks (CALA) Inc., the "U.S. Debtors") made voluntary filings in the U.S. Bankruptcy Court for the District of Delaware under Chapter 11 of the U.S. Bankruptcy Code. Nortel Networks (CALA) Inc. subsequently filed under Chapter 11 of the U.S. Bankruptcy Code.

6.      Additionally, on January 14, 2009, Nortel Networks UK Limited and certain subsidiaries of the Nortel group incorporated in Europe, the Middle East or Africa each obtained an administration order for the appointment of administrators from the High Court of England and Wales under the Insolvency Act 1986. These debtors together with Nortel Networks Israel (Sales and Marketing) Limited are herein referred to as the "EMEA Debtors".

7.      Further details regarding the background to these proceedings and the various other proceedings are set out in affidavits previously filed in these proceedings and are therefore not repeated herein.

DOCSTOR: 2075240\9

CONFIDENTIAL      UCC0064450

00036

**PRIOR ORDERS REGARDING CLAIMS AGAINST THE APPLICANTS**

8.     An Amended and Restated Claims Procedure Order dated July 30, 2009 (the "2009 Claims Procedure Order") was made by this Court, establishing a process for the proving of "Claims", as defined therein.

9.     Certain categories of claims were excluded from the definition of "Claims" as defined in the 2009 Claims Procedure Order; among the excluded categories of claims were inter-company claims, "Compensation Claims" as defined therein, grievance claims, and the claims of any director or officer for indemnification and/or contribution arising from such director's or officer's service to any Applicant (collectively, the "Excluded Claims").

10.    A Claims Resolution Order was made by this Court on September 16, 2010, establishing the resolution process for "Claims" as defined in the 2009 Claims Procedure Order. Consistent with the 2009 Claims Procedure Order, the Claims Resolution Order did not establish resolution procedures for Excluded Claims.

11.    An EMEA Claims Procedure Order was made on January 14, 2011, establishing a claims procedure (including resolution procedures) for certain inter-company claims, being claims between the EMEA Debtors and the Applicants.

**NEED FOR A COMPENSATION CLAIMS PROCESS**

12.    The Applicants are moving forward to deal with certain "Excluded Claims" as defined in the 2009 Claims Procedure Order, so that these claims can also be determined for the purposes of voting and distribution under a plan of arrangement. Of the categories of "Excluded Claims" referred to in the 2009 Claims Procedure Order, four will have been addressed if the Compensation Claims Procedure Order is made in the form that has been requested.

13.    With respect to inter-company claims: (i) the largest claims of the U.S. Debtors against the Applicants has been addressed by a Final Canadian Funding and Settlement Agreement dated December 23, 2009 among the Applicants, the Monitor, and the U.S. Debtors, wherein the Applicants agreed to accept a claim by NNI against NNL in the aggregate amount of U.S. $2.0627 billion, and (ii) the Applicants sought and obtained an "EMEA Claims Procedure Order"

DOCSTOR: 2075240\9

on January 14, 2011, which establishes a process for the proving and resolution of "EMEA Claims" as therein defined (being other significant inter-company claims).

14. The draft Compensation Claims Procedure Order deals with three other categories of "Excluded Claims", being (i) Compensation Claims (as defined in the 2009 Claims Procedure Order), (ii) grievance claims under collective agreements, and (iii) indemnity and contribution claims by current or former officers and directors.

15. One of the largest claims against the Applicants, in aggregate, will be the claims of their employees, former employees, pensioners and their survivors, including long-term disability beneficiaries (collectively, "Employees"); as noted in the Monitor's Seventy-Fifth Report dated September 19, 2011 filed in support of this motion (the "Monitor's Report") and in the actuarial materials filed with respect to this motion, these Employee liabilities are estimated in aggregate to exceed one billion dollars.

16. Accordingly, a mechanism for the determination of Employee claims, together with grievance claims and the claims of directors or officers for indemnification or contribution ("Indemnification Claims"), must be established in order that there will then be claims processes for all of the significant anticipated claims against the Applicants.

17. The establishment of a process to determine Employee claims and Indemnification Claims will help to avoid potential future delays in the administration of the Canadian estates, in determining claims for voting and distribution purposes.

## METHODOLOGIES FOR CALCULATING COMPENSATION CLAIMS

18. Approximately 16,000 Employees may have employment-related claims against one or more of the Applicants, given the large number of compensation and benefit programs provided by the Applicants.

19. It was anticipated by the Applicants, the Monitor and employee representatives that an individual employee would generally not be in a position to value his or her own claim, since this would require accessing and analyzing all of the documents and information affecting any potential claim, and actuarial and other advice would be required.

DOCSTOR: 2075240\9

CONFIDENTIAL

UCC0064452

20.    In addition, if individuals had been required to submit individual proofs of claim with respect to their claims, it is likely that a large number of inconsistent calculations and assessments would have been received in the claims process.

21.    The Applicants, the Monitor, the Employee Representatives, Representative Counsel and the CAW (each as defined in the Monitor's Report) realized that it would be in the interests of all the Employees and the estate if they could develop and agree upon an acceptable methodology for the calculation of employment-related claims and a streamlined procedure to deal with them.

22.    After extensive discussions and negotiations among the Compensation Claims Participants (as defined in the Monitor's Report), certain principles were developed that, taken as a whole and applied consistently to each individual, were acceptable to the Applicants, the Monitor, and to the Employee Representatives and the CAW, representing different categories of Employees.

23.    The Compensation Claims Methodology Order seeks the Court's approval of these principles and methodologies, so that a claims process can deal with a large number of Employee claims in a streamlined claims process, as described below.

24.    The Compensation Claims Methodology Order, if granted, will approve methodologies for calculating Benefit Claims, Termination and Severance Pay Claims and Patent Award Claims, as defined in the Monitor's Report. If such methodologies are approved, then the Monitor, with actuarial assistance and support, and with the assistance of the Applicants, will be in a position to inform individual Employees what their identifiable claims are. The vast majority of employment-related claims will proceed on this basis.

25.    While the methodologies in the Compensation Claims Methodology Order, if such an Order is granted, will be binding on all Employees, Employees will (i) have the opportunity to review and correct the personal information to which these methodologies will be applied, and (ii) be able to make employment-related claims other than Benefit Claims, Termination and Severance Pay Claims and Patent Award Claims, each as defined in the Monitor's Report, by completing and submitting a Proof of Claim for such other claims.

26.    The Compensation Claims referred to in the preceding paragraph are all described in the Monitor's Report. They are based on the books and records of the Applicants as at December 31,

DOCSTOR: 207524019

CONFIDENTIAL

UCC0064453

2010 and are calculated in accordance with the Mercer 2011 Valuations (as defined in the Monitor's Report) prepared by Mercer (Canada) Limited ("Mercer") and other appendices to the Monitor's Report. Given that these Employee claims are described in detail in the Mercer Reports and the Monitor's Report, I will not describe such claims in this affidavit.

27.     The Applicants have cooperated fully and worked closely with the Monitor (and Mercer) in order to assemble documents and facts with respect to the Employee claims for the purposes of the Compensation Claims Process and Compensation Claims Methodology, including the data for the Mercer 2011 Valuations and the Severance Grid (as defined in the Monitor's Report).

## GENERAL DESCRIPTION OF COMPENSATION CLAIMS PROCESS

28.     The proposed form of Compensation Claims Procedure Order will, if granted, permit for a two-track process.

29.     The first track will apply to Benefit Claims, Termination and Severance Pay Claims and Patent Award Claims, as defined, and in very general terms will operate as follows:

    (a)     by way of an "Information Statement", each Employee will be advised of the amount of his or her individual claim, calculated based on the methodologies approved in the Compensation Claims Methodology Order as applied to the personal information with respect to that Employee (as per the Applicants' books and records);

    (b)     there will be a process by which the Employee can request corrections to their personal information as set out in the Information Statement;

    (c)     corrections to personal information can be accepted by the Monitor and, if these corrections change the amount of the Employee's claim, the Employee will be issued a revised Information Statement and advised of the amount of his or her revised claim;

    (d)     if corrections to personal information are rejected by the Monitor, there are mechanisms for the discussion, settlement, and ultimately the adjudication of any

CONFIDENTIAL

disputes, similar to the mechanisms applicable to the determination of other creditor claims.

30.     The second track will apply to all Other Compensation Claims (as defined) and, again in very general terms, operates as follows:

   (a)     any creditor may submit a Proof of Claim with respect to an Other Compensation Claim (as defined), being a claim other than those claims being dealt with in the first track;

   (b)     there are disallowance, dispute and resolution procedures applicable to the determination of these claims as well.

31.     The Compensation Claims Procedure Order also contains detailed provisions with respect to other matters which, taken as whole, will ensure that the claims process comes to the attention of all parties likely to be affected, and that the process will operate fairly and efficiently, including provisions relating to (i) publication and notice, (ii) previously settled claims and duplicate claims, (iii) the Monitor's role, protections for the Monitor, and the role of representative counsel, (iv) the transfer of claims, (v) seeking direction from the Court, (vi) service and notice, and (vii) aid and assistance of other courts and tribunals.

32.     Compensation Claims Participants (as defined in the Monitor's Report), including the Applicants and the Monitor, are all of the view that the process established by the Compensation Claims Procedure Order, applying the methodologies set out in the Compensation Claims Methodology Order, will permit for the determination of Employee claims on a fair and efficient basis.

## PRIOR PAYMENTS TO EMPLOYEES

33.     During the course of the CCAA proceedings, certain payments to Employees have been permitted as 'advances' against the dividends that will ultimately be received by these Employees. It was recognized that such Employees have legitimate claims against the Applicants, and will ultimately receive dividends on account of those claims. However, in order to alleviate hardship to these Employees pending the distribution of dividends in the future,

DOCSTOR: 2075240\9

00041

certain payments were authorized by the Court, being (i) hardship payments ("Hardship Payments") pursuant to a program approved by the Court on July 30, 2009 (and by subsequent Orders extending the program), and (ii) "Termination Payments", to a maximum of $3000, paid from a "Termination Fund" of $4.3 million established pursuant to an Amended and Restated Settlement Agreement made as of March 30, 2010 among the Applicants, the Monitor, Representative Counsel and certain other Employee representatives.

34.     As noted in the Monitor's Report, the <u>dividends</u> to Employees (based on the aggregate proven claims) will be reduced on a dollar-for-dollar basis by the aggregate amount of Hardship Payments made to these Employees, whereas the <u>Compensation Claim</u> of Employees will be reduced by the amount of any Termination Payment received by that Employee.

35.     In addition, certain Employees have or will receive distributions from the Health and Welfare Trust established by the Applicants. This Health and Welfare Trust, and the distribution of this Health and Welfare Trust to Employees, has been the subject-matter of prior proceedings before the Court. Distributions from the Health and Welfare Trust will reduce the aggregate <u>Compensation Claims</u> of Employees on a dollar-for-dollar basis.

**<u>CONCLUSION</u>**

36.     The Compensation Claims Methodology Order and the Compensation Claims Procedure Order will allow the Applicants to advance the CCAA proceedings by establishing mechanisms to deal with the Compensation Claims and to accept, resolve, settle or dispute such Compensation Claims.

37.     As a result of the actuarial work done by Mercers, and as a result of discussions among the Applicants, the Monitor and Representative Counsel, those Employees entitled to Benefit Claims, Termination and Severance Pay Claims, and/or Patent Award Claims, can be advised of the identified claims to which they are entitled, based on their personal information and based on actuarial assumptions and methodologies approved by the Court. This will streamline the determination of these types of Compensation Claims and result in the consistent treatment of these types of Compensation Claims.

DOCSTOR: 2075240\9

00042

38.    To ensure the accuracy of the personal information upon which Benefit Claims, Termination and Severance Pay Claims, and/or Patent Award Claims will be calculated, Employees will be given the opportunity to review this personal information and to request corrections.

39.    The proposed Compensation Claims process with allow Employees and Directors and Officers to make Other Compensation Claims, by completing a proof of claim form.

40.    I believe that the Compensation Claims Process represents a fair and reasonable balancing of the interests of the Applicants' stakeholders, results in a fair and reasonable method for the calculation and submission of the employment-related claims of the Employees, and was arrived at in a fair and reasonable process.

SWORN before me at the City of
Toronto in the Province of Ontario, on
the 19th day of September, 2011.

A Commissioner for taking affidavits
*Juan Antonio Reyes*

John Doolittle

DOCSTOR: 2075240\9

CONFIDENTIAL                                                                                    UCC0064457

CONFIDENTIAL

A/C

**IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

Court File No: 09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST
Proceeding commenced at Toronto

**AFFIDAVIT OF JOHN DOOLITTLE**
(sworn September 19, 2011)

**NORTON ROSE OR LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jennifer.stam@ nortonrose.com

**Tony Reyes LSUC#: 28218V**
Tel: (416) 216-4825
Email: tony.reyes@nortonrose.com

Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 2259153\1

UCC0064458

00043

TR49818

# TAB 3

CONFIDENTIAL

00044

Court File No. 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS*
*ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

SEVENTY-FIFTH REPORT OF THE MONITOR

DATED SEPTEMBER 19, 2011

CONFIDENTIAL UCC0064460

00045

# TABLE OF CONTENTS

I.      INTRODUCTION .............................................................................................. 1

II.     OVERVIEW ...................................................................................................... 3

III.    PURPOSE OF THIS REPORT.......................................................................... 10

IV.     TERMS OF REFERENCE ................................................................................ 10

V.      BACKGROUND .............................................................................................. 11

      A.      The Claims Procedure Order ................................................................ 11

      B.      Employee Representatives and Representative Counsel ....................... 12

      C.      The Employee Settlement Agreement ................................................... 15

      D.      Approval of HWT Allocation Methodology........................................... 17

      E.      Hardship Fund and Termination Fund.................................................. 19

VI.     PROCESS FOR NEGOTIATING AND DEVELOPING THE COMPENSATION
CLAIMS PROCESS .................................................................................................... 20

VII.    COMPENSATION CLAIMS AND CLAIMANTS ........................................... 24

      A.      Employee Benefits................................................................................ 25

            (1)     Registered Pension Plans .......................................................... 26

            (2)     Non-Registered Pension Plans................................................... 27

            (3)     Non-Pension Benefits ................................................................ 27

            (4)     Patent Awards Program ............................................................ 31

            (5)     Vacation Policy.......................................................................... 32

      B.      Claimants .............................................................................................. 34

CONFIDENTIAL                                                                    UCC0064461

- 2 -

    (1)    Deferred Vested Employees, Canadian Service Employees and Precision Employees .................................................................. 34

    (2)    Pre-Filing Terminated Employees, Post-Filing Terminated Employees and Pensioner Eligible Terminated Employees .......................................... 35

    (3)    Post-Filing Transferred Employees ............................................................. 35

    (4)    Pensioners ...................................................................................................... 36

    (5)    LTD Beneficiaries .......................................................................................... 36

    (6)    Active Employees ........................................................................................... 37

VIII.    COMPENSATION CLAIMS METHODOLOGY ........................................................ 38

    A.    Benefit Claims ................................................................................................ 38

    B.    Termination and Severance Pay Claims ...................................................... 41

    C.    Patent Award Claims ..................................................................................... 43

IX.    COMPENSATION CLAIMS PROCEDURE ............................................................. 44

    A.    Information Statement Process ..................................................................... 44

    B.    Proof of Claim Process .................................................................................. 50

    C.    Notice to Creditors ........................................................................................ 52

    D.    Resolution of Claims ...................................................................................... 56

    E.    Role of Employee Representatives and Representative Counsel ................ 59

    F.    Other Claims Matters .................................................................................... 63

X.    MONITOR'S RECOMMENDATIONS ...................................................................... 64

CONFIDENTIAL

00047

Court File No. 09-CL-7950

**_ONTARIO_**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE _COMPANIES' CREDITORS_
_ARRANGEMENT ACT_, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

SEVENTY-FIFTH REPORT OF THE MONITOR
DATED SEPTEMBER 19, 2011

## I.  INTRODUCTION

1.   On January 14, 2009 (the "**Filing Date**"), Nortel Networks Corporation ("**NNC**" and

collectively with all of its subsidiaries, "**Nortel**" or the "**Company**"), Nortel Networks

Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks

International Corporation and Nortel Networks Global Corporation (collectively, the

"**Applicants**") filed for and obtained protection under the _Companies' Creditors_

_Arrangement Act_ ("**CCAA**"). Pursuant to the Order of this Honourable Court dated

January 14, 2009, as amended and restated (the "**Initial Order**"), Ernst & Young Inc.

("**EYI**") was appointed as the Monitor of the Applicants (the "**Monitor**") in the CCAA

CONFIDENTIAL   UCC0064463

**00048**

proceedings. The stay of proceedings was extended to December 14, 2011, by this Honourable Court in its Order dated June 30, 2011.

2.    Also on the Filing Date, Nortel Networks Inc. ("**NNI**") and certain of its U.S. subsidiaries concurrently filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code (the "**Code**") in the United States Bankruptcy Court for the District of Delaware (the "**U.S. Court**") (the "**Chapter 11 Proceedings**"). Nortel Networks (CALA) Inc. filed a voluntary petition under the Code on July 14, 2009. (Nortel Networks (CALA) Inc., NNI and those of its subsidiaries that filed the Chapter 11 Proceedings on the Filing Date, are referred to collectively as the "**U.S. Debtors**").

3.    As required by U.S. law, an official committee of unsecured creditors of the U.S. Debtors (the "**Committee**") was established in January, 2009. Also, an ad hoc group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized and is participating in these proceedings as well as the Chapter 11 Proceedings (the "**Bondholder Group**"). In addition, pursuant to Orders of this Honourable Court dated May 27, 2009, July 22, 2009 and July 30, 2009, respectively, representative counsel was appointed on behalf of the former employees of the Applicants, the continuing employees of the Applicants and the LTD Beneficiaries and each of these groups is participating in the CCAA proceedings.

4.    Nortel Networks UK Limited ("**NNUK**") and certain of its subsidiaries located in EMEA (together the "**EMEA Debtors**") were granted Administration orders by the English High Court on January 14, 2009. These Administration orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as Administrators of the

00049

various EMEA Debtors, except for Ireland, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed. On June 8, 2009, the Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to NNUK under Chapter 15 of the Code. On June 26, 2009, the U.S. Court entered an Order recognizing the English Proceedings as foreign main proceedings under Chapter 15 of the Code.

5.     Subsequent to the Filing Date, Nortel Networks SA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court.

6.     Subsequent to the Filing Date, certain other Nortel subsidiaries have filed for creditor protection or bankruptcy proceedings in the local jurisdiction in which they are located.

## II. OVERVIEW

7.     Approximately 16,000 of the Applicants' employees, former employees, pensioners and their survivors, including LTD Beneficiaries (collectively, the "**Employees**") may have employment-related claims, given the various compensation and benefit programs provided by the Applicants. Most of these claims relate to the loss of benefits that, but for the relief sought in this motion, would require individualized actuarial determinations and calculations. As well, claims by former Employees in connection with the loss of their employment would require individualized determinations of the applicable notice of

CONFIDENTIAL

UCC0064465

- 4 -

00050

termination and/or severance period and the calculation of any damages incurred during such period.

8. It is a substantial task to value these claims, magnified because Nortel offered compensation and benefit programs over the course of many decades, during which time the programs underwent changes. In addition, there were differences in compensation and benefit programs provided to unionized and non-unionized employees and certain Employees had individual employment contracts. Further, given Nortel's international operations, a number of Employees transferred among jurisdictions and many moved between different benefit categories of employment over time.

9. The Applicants, the Monitor, the Employee Representatives, Representative Counsel and the CAW recognized the magnitude of the task of valuing these claims and the fact that, generally, individuals are not in a position to value their own claims. In most cases, it would be impossible for an individual to obtain the necessary actuarial and other advice. Even if it were possible, individual calculations and assessments might yield inconsistent results.

10. The Applicants, the Monitor, the Employee Representatives, Representative Counsel and the CAW realized that it would be in the interests of all the Employees and the estate if they could develop and agree upon an acceptable methodology for the calculation of employment-related claims and a streamlined procedure to deal with them. The Applicants' proposed Compensation Claims Process was reached after extensive discussions and negotiations among the Applicants, the Monitor, the Former Employees' Representatives, the Former Employees' Representative Counsel, the LTD Beneficiaries'

CONFIDENTIAL

Representative, the LTD Beneficiaries' Representative Counsel, CAW Counsel, the Continuing Employees' Representatives, the Continuing Employees' Representative Counsel and their respective actuarial and financial advisors (collectively, the "**Compensation Claims Participants**"). These consultations and negotiations led to the development of certain principles that, taken as a whole and applied consistently to each individual, were acceptable to the Employee Representatives and the CAW, representing different categories of Employees. These categories (described more fully below) reflect the commonality within similarly situated groups of Employees, even though their individual situations might differ.

11. Each of the Employee Representatives and Representative Counsel consents to the proposed Compensation Claims Process and the related Orders. The fact that the employee groups with potentially differing interests worked together successfully so that this motion could be brought on consent is a considerable achievement and supports the fairness and reasonableness of the proposed Compensation Claims Process.

12. If approved, the proposed Compensation Claims Methodology will be final and binding on all Employees and stakeholders. The vast majority of employment-related claims will be valued based on:

(a) identified and agreed-upon benefits and agreed categories of claims, including post-retirement benefits;

(b) agreed-upon actuarial assumptions and calculations, including with respect to income benefits, other benefits for LTD Beneficiaries, post-retirement benefits and non-registered pension plan benefits and, with respect to adjustments relating

- 6 -

00052

to administrative costs and income tax, as applicable, that increase or "gross up" claim amounts as described in further detail below and in the Mercer 2011 Valuations attached as Appendices "B" and "C"; and

(c)     agreed-upon formulae relating to Termination and Severance Pay Claims, including the following key components:

(i)     recognition of outstanding payments due under pre-filing employment contracts and termination agreements;

(ii)     for unionized Employees who were terminated post-filing, a notice of termination/severance period and/or a lay-off lump sum payment, as set out in the applicable collective bargaining agreement;

(iii)     for non-unionized Employees who were terminated post-filing, a notice of termination/severance period of 3.3 weeks per year of service, with a minimum of 8 weeks and a maximum of 78 weeks;

(iv)     employee benefits, pension accruals and entitlements to post-retirement benefits and non-registered pension plans to which the Employee became entitled or "grew in" during the applicable notice period; and

(v)     with respect to mitigation:

(A)     no deduction will be taken in respect of employees who were not offered an opportunity to transfer to a buyer; and

CONFIDENTIAL

UCC0064468

- 7 -

00053

      (B)    a deduction will be taken in respect of former employees who were transferred to a buyer.[1]

The application of the proposed termination and severance pay methodology relevant to each category of employee is summarized in Appendix "D".

13.    Under the proposed Compensation Claims Procedure:

    (a)    The vast majority of employment-related claims will proceed by way of individual Information Statements. The Information Statements will reflect the amount of these claims calculated in accordance with the Compensation Claims Methodology as well as the underlying data used in such calculation. Individual Employees will have an opportunity to correct data they believe is inaccurate. The amount set out in the Information Statement will be accepted as the individual's Compensation Claim in the CCAA proceedings for all purposes and will be changed only if the individual's proposed information corrections are accepted by the Monitor and if they affect the Compensation Claim amount. There will be no opportunity in the Compensation Claims Procedure to challenge calculations for Compensation Claims made in accordance with the Compensation Claims Methodology if approved by this Honourable Court.

---

[1] Those employees who declined offers of employment from a buyer will be treated as if they had transferred and deduction will be taken for mitigation. However, their Termination and Severance Pay Claims will not fall below the amounts prescribed by applicable employment standards legislation.

CONFIDENTIAL

- 8 -

00054

(b)      There is a parallel proof of claim process which:

     (i)      allows any individual who believes he/she is entitled to a claim in addition to the claims set out in the Information Statement to submit such a claim for determination; and

     (ii)      calls for Grievance Claims, director compensation claims and director or officer indemnification claims that were excluded from the Applicants' prior claims process.

14.      The total value of Compensation Claims, which rank as ordinary, unsecured claims, is estimated to be approximately $1.06 billion[2], comprised of the following components:

(a)      Benefit Claims consisting of:

     (i)      claims under the Non-Registered Pension Plans of approximately $268 million[3]; and

     (ii)      claims for Non-Pension Benefits of approximately $631 million[4];

(b)      Base Severance Claims of approximately $164 million; and

---

[2] This amount will be reduced by distributions received from the corpus of the HWT and any other valid set-offs relating to amounts owing by the Compensation Creditor to an Applicant but reflects a reduction by payments received under the Termination Fund. This amount does not include claims of Active Employees, Active Canadian Service Employees and Active Precision Employees as at the date they cease active employment. In total, these claims are estimated to be less than the amount to be deducted for HWT distributions.

[3] This amount includes Termination and Severance Pay Claims relating to the Non-Registered Pension Plans and Registered Pension Plan accruals.

[4] This amount includes Termination and Severance Pay Claims relating to the Non-Pension Benefits.

CONFIDENTIAL

- 9 -

00055

(c)      Patent Award Claims of approximately $285,000[5].

15.      The Monitor recognizes that the proposed Compensation Claims Process is complex and the Information Statements will be lengthy. The process and forms reflect the sheer number of potential Compensation Claims, the need to take into account numerous individual data points, and the variations in Nortel's compensation and benefit programs over time. The Applicants and the Monitor developed a process and forms in consultation with the other Compensation Claims Participants, including the Employee Representatives' governing committees, who devoted significant time and expertise to the task, and who have indicated their commitment to assisting their constituents in understanding and, where necessary, responding to, the Information Statements.

16.      The Monitor is of the view that the proposed Compensation Claims Process establishes a fair, reasonable, efficient and orderly process for the calculation and determination of the numerous employment-related claims against the Applicants. Overall, the Compensation Claims Process fairly balances the interests of the Applicants' stakeholders and represents an important step towards the development of a plan of compromise or arrangement for the Applicants' restructuring. It has been arrived at in a fair and reasonable way, after extensive negotiations among the Compensation Claims Participants.

---

[5] The Patent Award Claim Methodology is set out in Appendix "E".

CONFIDENTIAL          UCC0064471

- 10 -

00056

## III. PURPOSE OF THIS REPORT

17.    The purpose of this Seventy-Fifth Report of the Monitor is to provide this Honourable Court with:

(a)    information relating to the Compensation Claims Process; and

(b)    the Monitor's support for the Compensation Claims Methodology Order and the Compensation Claims Procedure Order in the form submitted by the Applicants.

## IV. TERMS OF REFERENCE

18.    In preparing this Seventy-Fifth Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with management of Nortel. The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of the information and, accordingly, the Monitor expresses no opinion or other form of assurance on the information contained in this Seventy-Fifth Report.

19.    Unless otherwise stated, all monetary amounts contained herein are expressed in Canadian dollars.

20.    Capitalized terms used in this Seventy-Fifth Report are defined in the Glossary attached as Appendix "A". Some terms are also defined in the body of this report for ease of reference. In the Termination and Severance Claim Methodology Appendix, certain capitalized terms are defined by detailed calculations. These terms are defined in the appendix itself and are cross-referenced in the Glossary.

CONFIDENTIAL

## V. BACKGROUND

### A.     The Claims Procedure Order

21.     On July 31, 2009, this Honourable Court granted the Claims Procedure Order.

22.     The following claims, among others, were excluded from the Claims Procedure Order:

      (a)     claims of any current or former employee of any of the Applicants for amounts owing to him or her on account of wages, salaries, any other form of compensation (whether sales-based, incentive-based, deferred, retention-based, share-based or otherwise), severance or termination pay, employee benefits (including, but not limited to, medical and similar benefits, disability benefits, relocation or mobility benefits and benefits under employee assistance programs), pension and retirement benefits, vacation pay and employee expenses, claims of any current or former employee of any of the Applicants arising from the administration, management or oversight of any of the pension plans or employee benefit plans administered or sponsored by the Applicants or their subsidiaries and the claims of any Director for compensation for acting as a Director including without limitation fees, deferred share-based compensation, benefits and director expenses;

      (b)     claims for grievances under any collective agreements to which any of the Applicants are a party; and

      (c)     claims of any Director and Officer of the Applicants for indemnification and/or contribution arising from such Director's or Officer's service to any Applicant.

UCC0064473

- 12 -

00058

23. Compensation and employment-related claims of any person or entity other than an Employee (i.e., claims of the Ontario Pension Benefits Guarantee Fund, pension plan administrators or pension regulators) were not excluded. Therefore, deficiency claims relating to the Registered Pension Plans are subject to the Claims Procedure Order.

24. The U.S. Debtors also implemented a call for claims procedure with a filing deadline of September 30, 2009. The U.S. Debtors adopted a different approach, requiring all employees (current and former) of the U.S. Debtors to fill out and submit proofs of claims. The adjudication of those claims is ongoing.

25. Although employee compensation and employment-related claims were excluded from the Claims Procedure Order, some employees filed employment-related claims with the Applicants in error. These claims filed in response to the Claims Procedure Order will be disallowed under the Claims Procedure Order. The claims filed in error under the Claims Procedure Order will be subject to the Compensation Claims Process. The employee will either receive an Information Statement Package or a Proof of Claim Document Package.

**B.     Employee Representatives and Representative Counsel**

26. Almost all individuals with Compensation Claims are represented in these proceedings by:

UCC0064474

- 13 -

00059

(a)     Court-appointed representative counsel, being the Former Employees' Representative Counsel, LTD Beneficiaries' Representative Counsel[6], Continuing Employees' Representative Counsel[7] or CAW Counsel (collectively, the **"Representative Counsel"**); and

(b)     Court-appointed representatives, being the Former Employees' Representatives, the LTD Beneficiaries' Representative or the Continuing Employees' Representatives[8] (together with the CAW, the **"Employee Representatives"**).

27.    The only individuals not represented by the above appointments are:

(a)     5 Employees who opted out of such representation; and

(b)     any (i) former chief executive officer or chairman of the board of directors, (ii) non-employee member of the board of directors, and (iii) former employees or officers who are subject to investigation and charges by the Ontario Securities Commission or the United States Securities and Exchange Commission.

28.    The Court Orders appointing the Employee Representatives authorize them to represent their constituents in these proceedings. Further, the Court Orders appointing the Former

---

[6] The Former Employees' Representatives and their counsel and the LTD Beneficiaries' Representative and her counsel represent Former Employees and LTD Beneficiaries respectively who were subject to a collective bargaining agreement with a union other than CAW (which unions include the Canadian Office Employee Union and the Canadian Union of Communication Workers), including, in the case of the Former Employees, unionized Post-Filing Transferred Employees.

[7] The Continuing Employees' Representatives and their counsel represent the Active Employees and the non-unionized Post-Filing Transferred Employees. The order appointing them may require clarification in this regard, as discussed in paragraph 150 below.

[8] See footnote 7.

CONFIDENTIAL

- 14 -

00060

Employees' Representatives and the LTD Beneficiaries' Representative expressly state that they may represent their constituents for the purpose of settling or compromising their claims in insolvency proceedings or in any other proceeding which has been or may be brought before this Honourable Court. In addition, the mandate of Representative Counsel includes acting as counsel in respect of employment-related issues affecting their constituents in the CCAA proceedings. CAW derives its authority from its retainer in relation to former CAW members (including Pensioners and their survivors who have retained the CAW) and as the exclusive bargaining agent for Employees, including LTD Beneficiaries, who are CAW members.

29. The Monitor has been advised by the CAW that the retainer executed by certain former CAW members authorizes:

    (a)      CAW Counsel to discuss the issues, facts and potential resolutions of their cases relating to the CCAA proceedings with representatives of the CAW; and

    (b)      such representatives to provide instructions necessary to conduct these former members' cases relating to the CCAA proceedings.

CAW is the sole and exclusive bargaining agent for Employees, including LTD Beneficiaries, who are CAW members in relation to all employment-related matters.

30. The Representative Counsel and Employee Representatives have established structures and mechanisms to communicate with their constituents and provide a forum for constituents to submit inquiries and raise matters for discussion. These include websites, email communications and bulletins, information sessions and webinars and the

UCC0064476

- 15 -

00061

establishment of legal steering committees. The Former Employees' Representatives and the LTD Beneficiaries' Representative are actively involved with two organizations established prior to the appointment of the Employee Representatives: the NRPC and the CNELTD (previously the NNLTDS), respectively. Through these structures and mechanisms, Representative Counsel and Employee Representatives are able to assess the main concerns of a large number of their constituents and use this assessment to settle claims of their constituents in accordance with their Court-approved mandate.

31. The appointments of the Employee Representatives and Representative Counsel established a framework for the Applicants and the Monitor to engage in discussions and consultations with them throughout the CCAA proceedings, including with respect to a settlement regarding certain employment-related issues and the Compensation Claims Process.

32. Representative Counsel and the Employee Representatives have been involved from the initial stages of development of the Compensation Claims Process. Extensive discussions and negotiations involving the Compensation Claims Participants have culminated in the proposed Compensation Claims Methodology and the consent of Employee Representatives and Representative Counsel to the Compensation Claims Process, including the Compensation Claims Methodology.

**C.    The Employee Settlement Agreement**

33. The Settlement Agreement was approved by this Honourable Court by Order dated March 31, 2010. Leave to appeal the Order was denied by the Ontario Court of Appeal on June 3, 2010 and the Settlement Agreement has become effective in accordance with

CONFIDENTIAL       

- 16 -

00062

its terms. Additional information on the Settlement Agreement and the process leading up to it can be found in the Thirty-Ninth Report, the supplements to the Thirty-Ninth Report and the Forty-Second Report of the Monitor.

34. In summary, the Settlement Agreement:

(a) addresses the payment of benefits incurred during 2010 to, among others, Pensioners and LTD Beneficiaries;

(b) confirms that claims in respect of benefits and relating to the HWT rank as ordinary unsecured claims on a *pari passu* basis with the claims of the ordinary unsecured creditors of the Applicants; and

(c) releases directors, officers, the Trustee and others from certain direct and indirect claims (other than against a director of Nortel for a matter referred to in subsection 5.1(2) of the CCAA or with respect to fraud).

35. Pursuant to the Settlement Agreement and Court orders, eligible terminated employees (including eligible LTD Beneficiaries) received payments from the Termination Fund established under the Settlement Agreement. These payments will be deducted from their Compensation Claims (as described in further detail below).

36. The Settlement Agreement also provided that the parties would work towards a Court-approved distribution of the corpus of the HWT to its beneficiaries entitled thereto and the resolution of any issues necessarily incidental thereto.

00063

### D.   Approval of HWT Allocation Methodology

37.    Nortel established the HWT on January 1, 1980 as a tax-efficient vehicle through which Nortel would continue to provide employee benefits. Certain of Nortel's non-pension employee benefits, including life insurance, long term disability, medical, dental and survivor income benefits were funded by Nortel on a pay-as-you-go basis but as an administrative matter were paid using the HWT as a payment mechanism. Certain other benefit plans were funded in part by the HWT, using trust assets.

38.    In August 2010, the Monitor served and filed its motion for approval of a proposed allocation methodology with respect to the funds held in the HWT and ancillary relief to implement the proposed methodology and distribute the funds held in the HWT to the beneficiaries entitled thereto. The Fifty-First Report of the Monitor, dated August 27, 2010:

    (a)    provides details regarding the HWT and the benefits provided thereunder;

    (b)    attaches the Mercer HWT Report; and

    (c)    proposes an allocation methodology for distribution of the HWT corpus.

39.    Pursuant to the HWT Allocation Order dated November 9, 2010, this Honourable Court approved the HWT Allocation Methodology, under which distributions are being made *pro rata* on account of the following benefits:

UCC0064479

- 18 -

(a)    Pensioner Life;[9]

(b)    LTD Basic Life;

(c)    LTD Income;

(d)    LTD Optional Life Benefit;

(e)    SIBs; and

(f)    STBs in pay.

40.    On November 29, 2010, counsel for a small group of dissenting LTD Beneficiaries filed leave to appeal the HWT Allocation Order to the Ontario Court of Appeal. The application was dismissed. An application for leave to appeal to the Supreme Court of Canada was dismissed on June 9, 2011. Two interim distributions were made from the HWT, with the approval of this Court, while the leave applications were in process.

41.    As a result of the Supreme Court of Canada's refusal to grant leave to appeal, there is now certainty that the corpus of the HWT is to be distributed in accordance with the HWT Allocation Methodology. However, some degree of uncertainty still remains regarding the final amount that will be available to distribute from the HWT, because it will be based on the outcome of matters referred to in the Monitor's prior reports. Accordingly, the Monitor sought approval for further interim distributions from the

---

[9] The value of Pensioner Life benefits for Pensioners is reduced by the amount paid from the HWT in 2010 for Pensioner Life premiums.

CONFIDENTIAL

UCC0064480

00065

HWT. By Court Orders dated June 21, 2011 and August 23, 2011, respectively, this Honourable Court approved such further interim distributions.

42.　　The Monitor has worked and will continue to work diligently with the Applicants, the Trustee, the LTD Beneficiaries' Representative and her advisors, the Former Employees' Representatives and their advisors, the CAW and others to finalize outstanding HWT matters, including accounting and financial reporting thereon, so that the final distribution from the HWT may be made to all HWT Participating Beneficiaries.

43.　　The claims of the HWT Participating Beneficiaries in the Compensation Claims Process will be reduced by the distributions they receive from the HWT.

**E.　　Hardship Fund and Termination Fund**

44.　　This Court, by Order dated July 30, 2009, approved an employee hardship process making available up to $750,000 for hardship payments that will reduce the amount of any eventual distributions to the Employees who receive them. By Orders dated February 25, 2011 and April 8, 2011, respectively, the total available for hardship payments was reduced by an amount to be used to supplement the Termination Fund (to be treated as Termination Fund payments when made) and by a further amount to make payments to SIB beneficiaries and STB Beneficiaries entitled to STBs in pay (to be used and treated as hardship fund payments). The total hardship payments to date, including those authorized by the April 8, 2011 Order but excluding the amounts used to supplement the Termination Fund, are approximately $299,000.

UCC0064481

45.    The total Termination Fund payments to date are approximately $4.33 million. Termination Fund payments will reduce the amount of the proven claims of the Employees to whom they are made.

## VI.    PROCESS FOR NEGOTIATING AND DEVELOPING THE COMPENSATION CLAIMS PROCESS

46.    The Applicants and the Monitor worked closely with the Employee Representatives in identifying potential Compensation Claims, many of which had been previously identified through the Settlement Agreement and HWT Allocation Methodology approval processes.

47.    Throughout these CCAA proceedings, the Applicants proceeded with the assistance of the Monitor and their respective counsel. In summary, among other things, they:

(a)    reviewed the records of the Applicants to identify those Employees with employment contracts, including employment termination contracts;

(b)    reviewed the Applicants' employment policies, including its CARP and the relevant collective bargaining agreements;

(c)    identified potential Compensation Claims and consulted Mercer with respect to those Compensation Claims requiring actuarial assistance, including data exchanges, testing for reasonableness and confirmation of data consistency and, where necessary, made adjustments required to comply with benefit documents; and

(d)    considered, for all claims, with the assistance of counsel:

CONFIDENTIAL

- 21 -                                    00067

    (i)    the Applicant's policies and practices;

    (ii)    the nature and quantum of claims; and

    (iii)    the legal basis and any uncertainty or litigation risk associated with such claims.

48.    The Employee Representatives for their part asserted claims, which the Applicants with the assistance of the Monitor and counsel considered.

49.    After extensive discussion and negotiations among the Compensation Claims Participants, the basic principles of the Compensation Claims Methodology were identified and agreed-upon, including the actuarial assumptions. Mercer prepared valuations, when appropriate, using work done for the HWT Allocation Methodology approval motion. Segal, in its capacity as actuarial advisor to the Former Employees' Representatives, the LTD Beneficiaries' Representative and the Continuing Employees' Representatives, reviewed Mercer's assumptions and performed due diligence with respect to the valuations. The Applicants, with the assistance of the Monitor and counsel, began a detailed process of considering and applying the basic principles to numerous fact situations. RSM Richter Inc., in its capacity as financial advisor to the Former Employees' Representatives and the LTD Beneficiaries' Representative, reviewed the work product from time to time.

50.    The Applicants, with the assistance of the Monitor and counsel, considered the practical elements of implementing any Compensation Claims process, including:

    (a)    number of claimants;

CONFIDENTIAL                                          UCC0064483

00068

(b)    actuarial factors;

(c)    number and types of potential claims of any individual Employee given the number of benefits over time; and

(d)    costs.

51.    It was concluded that simply calling for claims would not be realistic, fair or cost-effective. Consideration was then given to various alternative processes in which, after the Compensation Claims Methodology was approved, completed forms would be sent to Employees who have been identified as having a Compensation Claim. Various potential elements of the procedure were considered, including:

(a)    requiring positive confirmation of data;

(b)    whether a proof of claim process should be carried on in tandem; and

(c)    the design and nature of any materials.

52.    The Compensation Claims Participants were closely involved in the development of the Compensation Claims Process. Draft materials were circulated among and commented on by the Representative Counsel. Further, there were two in person meetings and a number of telephone meetings in which certain of the Employee Representatives and their committee members (along with their counsel and advisors) participated directly with Applicants' counsel, the Monitor and its counsel, and, at one in person meeting, with Mercer.

CONFIDENTIAL

00069

53.     The Compensation Claims Participants agreed on the basic principle that individualized packages would be developed for each Employee who is identified as having a Compensation Claim that would include claims results and the individualized data on which the claims were based. A due diligence process was then followed for the design and content of the Information Statement Packages and for the Proof of Claim Document Packages, which were reviewed by the Employee Representatives, including French translations.

54.     "Mock-ups" of the materials were performed confidentially for individual Employees identified by the Employee Representatives and who had agreed their claims information could be shared with the members of their respective committees. The mock-up exercises provided an opportunity to review the cover letters and Information Statements for different Employees with different claims, which led to further drafts and refinement.

55.     The next stage was the performance of "test runs" during which claims packages were run through the calculation process that will be used if the Compensation Claims Process is approved. Again, the test runs were performed for individual Employees identified by the Employee Representatives with multiple and different claims chosen with a view to testing the spectrum of potential claims. The Employee Representatives, their respective committees and advisors worked with the Employees and gathered comments and concerns, which were shared with the Applicants and the Monitor. The process and forms were then further refined and tested.

56.     The Applicants and the Monitor engaged in various discussions with the U.S. Debtors, the Committee and the Bondholder Group with respect to the Compensation Claims

Process. The Applicants and the Monitor have been providing an estimate of the aggregate value of the employment-related claims against the Applicants to the U.S. Debtors as well as to the Committee and Bondholder Group, which estimates were materially consistent with the current estimate of the value for the Compensation Claims of approximately $1.06 billion. The Monitor and the Applicants have also provided the U.S. Debtors as well as the Committee and the Bondholder Group with an opportunity to ask questions, including of Mercer, which led to a number of conference calls, a meeting and exchange of information.

57. The Monitor believes the process resulting in the proposed Compensation Claims Methodology Order and Compensation Claims Procedure Order was diligent, prudent and fair and reasonable, while also taking into account and balancing appropriately the interests of all stakeholders, including various Employee groups.

## VII. COMPENSATION CLAIMS AND CLAIMANTS

58. The first step in the Compensation Claims Process is Court approval of the proposed Compensation Claims Methodology for calculating:

(a) Benefit Claims;

(b) Termination and Severance Pay Claims; and

(c) the Patent Award Claims.

59. With Court approval of the Compensation Claims Methodology, the Applicants and the Monitor, with actuarial assistance, can proceed to the next step in the Compensation

00071

Claims Process, namely, the completion of the Information Statements reflecting the amount of the Compensation Claims calculated in accordance with the Compensation Claims Methodology and setting out the personal information upon which the individual's Compensation Claims have been calculated. The nature of potential claims differs depending on, among other things, whether the Employee was unionized or non-unionized, was terminated pre-filing or post-filing or transferred to a buyer, is a pensioner or his/her survivor, or is an employee on long term disability. The Compensation Claims Participants have therefore developed and agreed upon the form of Information Statement, that addresses all the potential claims for each of these various Employee circumstances.

60.     There will also be a proof of claim process for other employment-related claims that compensation claimants believe they have against an Applicant, a Director or an Officer that is not included on the Information Statement, including claims for director compensation or monetary grievances. However, by far the majority of the Compensation Claims will proceed by way of Information Statement.

61.     The Compensation Claims Methodology is set out in Section VIII and the Compensation Claims Procedure in Section IX. Both were developed after identification and consideration of the employee benefits and the categories of Employees who were entitled to the benefits.

## A.     **Employee Benefits**

62.     Nortel provided benefits to Employees over the course of many decades. The Applicants and Monitor reviewed those benefit plans and booklets that are available. Certain benefit

CONFIDENTIAL

00072

booklets and Sun Life policies were attached to the Fifty-First Report, which (together with its Appendices) is available on the Monitor's website.

63.    Starting in 2000, certain communications to employees contained language specifying that Nortel reserved the right to make changes to its CARP (including retiree benefit programs) in the future.

64.    Effective January 1, 2008, changes were made to the CARP, of which Nortel gave eighteen months prior notice. Attached as Appendix "F" are employee communications concerning CARP changes, including certain frequently asked questions and information concerning those employees who were "grandfathered" or unaffected with respect to certain existing retiree benefits at December 31, 2007.

65.    No further changes were made to the retiree benefits. As at December 31, 2010, Nortel had in place the following benefit plans or programs:

**(1)    Registered Pension Plans**

66.    The Applicants provided pension benefits through the Registered Pension Plans. Claims of the administrators and the regulators of the Registered Pension Plans, among others, were included in the call for claims pursuant to the Claims Procedure Order. The Applicants, as administrator of the Registered Pension Plans at that time, filed an omnibus claim in September 2009 in respect of each of the Registered Pension Plans, which has not yet been adjudicated or allowed. On October 1, 2010, Morneau became the administrator of the Registered Pension Plans and it is anticipated that Morneau will submit an amended claim under the Claims Procedure Order. Although deficiency

00073

claims related to the Registered Pension Plans are not included in the Compensation Claims Process, individual claims for loss of pension accrual during the notice period are addressed as components of the Termination and Severance Pay Claims as well as claims of LTD Beneficiaries for pension accruals.

**(2)     Non-Registered Pension Plans**

67.     In addition, the Applicants provided pension benefits under the Non-Registered Pension Plans, which are summarized in the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation.   Copies of the Non-Registered Pension Plans are attached as Appendices "G" to "K".

68.     The Applicants ceased making payments under the Non-Registered Pension Plans on the Filing Date.   Claims relating to the Non-Registered Pension Plans are included in the Compensation Claims Process.  The Applicants propose these claims be calculated based on the methodology and assumptions set out in the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation.

**(3)     Non-Pension Benefits**

69.     The Applicants also provided the Non-Pension Benefits.   Pursuant to the Settlement Agreement, the Applicants ceased paying the Non-Pension Benefits as at December 31, 2010.  Claims relating to the Non-Pension Benefits are included in the Compensation Claims Process.  The Applicants propose that these claims be calculated based on the methodology and assumptions set out in the Mercer 2011 Non-Pension Benefits

UCC0064489

Valuation. These benefits are summarized below and described in greater detail in the Fifty-First Report of the Monitor and the supplements thereto.

**(a)    *Pensioner Benefits***

70.    Nortel provided the following benefits to Pensioners:

(a)    Pensioner Life;

(b)    ADB;

(c)    Pensioner M&D; and

(d)    STB M&D Accrual.

71.    Pensioner Life premiums were historically paid from HWT assets. Pensioner M&D was historically funded by Nortel on a pay-as-you-go basis but, as an administrative matter, was paid using the HWT as the payment mechanism. These practices continued during the CCAA proceedings and, as provided under the Settlement Agreement, until December 31, 2010.

**(b)    *LTD Benefits***

72.    LTD benefits are provided when short-term disability benefits end and continue until the earlier of:

(a)    the date the employee returns to active status; or

(b)    age 65, when the employee qualifies for pensioner benefits.

CONFIDENTIAL

00075

73.    Nortel provided the following LTD benefits:

    (a)    waiver of premium for the following benefits while an individual is on LTD benefits:

        (i)    LTD Basic Life;

        (ii)    LTD Optional Life Benefit;

        (iii)    LTD AD&D Benefit; and

        (iv)    LTD Dependent Life Benefit;

    (b)    LTD M&D;

    (c)    LTD-STB Accrual; and

    (d)    LTD Income.

74.    LTD Income was historically paid from HWT assets.    Other LTD benefits were historically funded by Nortel on a pay-as-you-go basis but, as an administrative matter, were paid using the HWT as the payment mechanism. These practices continued during the CCAA proceedings, prior to the Settlement Agreement.    Under the Settlement Agreement, all LTD benefits were paid by Nortel on a pay-as-you-go basis until December 31, 2010.

75.    The Settlement Agreement provided for termination of employment of LTD Beneficiaries on December 31, 2010 and that:

CONFIDENTIAL

"such termination shall not affect in any manner any rights the LTD Beneficiaries or anyone claiming through them may have, either under a collective agreement, at common law or pursuant to any statute in relation to ordinary unsecured claims against Nortel arising out of their employment or termination thereof, including but not limited to claims for future lost long term disability or income continuation benefits, pension benefits or pension benefit accruals, and medical, dental and life insurance benefits, nor should affect in any manner their ability to participate in any program of benefits for which they are eligible that is established as a successor to the plans in which they participated prior to December 31, 2010".

**(c)**    *Survivor Income Benefits*

76.    SIBs have not been provided since before the commencement of the CCAA proceedings but continue to be paid to a group of surviving spouses. SIBs were historically paid by the HWT from HWT assets, which continued during the CCAA proceedings prior to the Settlement Agreement. Under the Settlement Agreement, SIBs were paid by Nortel on a pay-as-you-go basis until December 31, 2010.

**(d)**    *Survivor Transition Benefits*

77.    STBs were funded on a pay-as-you-go basis by Nortel but, as an administrative matter, were paid using the HWT as the payment mechanism. This practice continued during the CCAA proceedings and, as provided under the Settlement Agreement, until December 31, 2010.

CONFIDENTIAL

78.    STBs were closed during 2003. Those people who were entitled to STBs at that time (namely, survivors then in pay, survivors of individuals who retired prior to April 1, 2003 and who remained LTD Beneficiaries with no interruptions of more than 60 days) were grandfathered.

### (e)    *Optional Life Benefit*

79.    Nortel provided basic, core group life insurance (group life – part I), for all active employees. In addition, Nortel offered Optional Life (also known as group life – part II) to active employees at their own cost, insured by Sun Life under a policy naming Nortel as the policyholder. Optional Life participants changed from year to year as they decided to opt in or out of coverage or their employment was terminated. Optional Life is term life insurance, with benefits terminating no later than January 1st following an Optional Life participant's 65th birthday. Each Optional Life participant selected an amount of coverage by applying the benefit formula.

### (4)    Patent Awards Program

80.    Nortel provided the Patent Filing Award to Employees for patent applications filed or the Patent Issuance Award for patents issued on inventions that an Employee made during his or her term of active employment with Nortel. Any such inventions and patents were assigned to Nortel in accordance with the conditions of employment. Nortel has advised the Monitor that:

(a)    it began the patent awards program in September 1996;

- 32 -                          00078

(b)     the program was amended in September 1999, October 2001 and July 2005 (although the 2005 amendments did not change the amount of the awards from the 2001 program);

(c)     awards were provided based on the program in place at the time the event occurred giving rise to an award (i.e. if a patent application was filed in 2000, the employee-inventor would have received the Patent Filing Award based on the program in place in 2000 and, if that same patent was issued in 2006, the employee-inventor would have received the Patent Issuance Award based on the program in place in 2006); and

(d)     Nortel ceased making payments under the patent awards program effective December 31, 2009.

81.    Based on the information available to the Monitor, the total value of the claims under the patent awards program is approximately $285,000.    Attached as Appendix "L" is a summary of Nortel's patent awards program.

**(5)    Vacation Policy**

82.    Pursuant to the Nortel Vacation Policy:

(a)     a Non-Unionized Employee:

(i)     accrues vacation entitlement every month based on years of continuous service as follows:

- 33 -

(A)     less than 10 years of service – 15 days per annum or 112.5 hours per annum, based on an hourly accrual rate of 9.375 hours per month;

(B)     after 10 years and less than 19 years of service – 20 days per annum or 150 hours per annum, based on an hourly accrual rate of 12.5 hours per month; and

(C)     after 19 years of service – 25 days per annum or 187.5 hours per annum, based on an hourly accrual rate of 15.625 hours per month;

(ii)    prior to 2001, an employee who accrued vacation at a higher rate than listed above (or who was eligible for a higher accrual rate by December 31, 2000) was grandfathered and continued to earn vacation at the higher rate; and

(iii)   upon cessation of employment, any accrued and unused vacation is paid out;

(b)    certain Non-Unionized Employees have employment contracts setting out vacation accrual entitlement that may differ from the entitlement described in (a) above, in which case, vacation entitlement accrues in accordance with the employment contract, and upon cessation of employment any accrued and unused vacation is paid out; and

CONFIDENTIAL

(c)     a Unionized Employee accrues vacation entitlement in accordance with the applicable collective bargaining agreement and upon cessation of employment, accrued and unused vacation is paid out.

## B.    Claimants

83.    The Employees have been grouped in categories based on their potential Compensation Claims. In each category, the potential claims are the same, and are calculated using the same methodology, for which the same information is required. There are a number of categories for which the claims are specific to that category, although there is also overlap between categories. For example, LTD Beneficiaries have potential claims specific to them as well as certain of the potential claims of the Former Employees and Pensioners. Whether an individual has a particular Compensation Claim will depend on the individual circumstances. The following are the potential Compensation Claims by category of claimant.

**(1)    Deferred Vested Employees, Canadian Service Employees and Precision Employees**

84.    For those Deferred Vested Employees who do not have Termination and Severance Pay Claims[10], the potential Compensation Claims are:

     (i)    claims under Non-Registered Pension Plans; and

     (ii)    Patent Award Claims.

---

[10] Deferred Vested Employees who have a Termination and Severance Pay Claim are included in the Pre-Filing Terminated Employees category and their claims will be calculated in accordance with the Pre-Filing Terminated Employee Termination and Severance Claim Methodology.

CONFIDENTIAL

- 35 -                                        00081

85.    The potential Compensation Claims of Canadian Service Employees are claims under Non-Registered Pension Plans.

86.    The potential Compensation Claims of Precision Employees are claims under the RAP.

**(2)    Pre-Filing Terminated Employees, Post-Filing Terminated Employees and Pensioner Eligible Terminated Employees**

87.    The potential Compensation Claims of Pre-Filing Terminated Employees, Post-Filing Terminated Employees and Pensioner Eligible Terminated Employees are:

    (a)    Termination and Severance Pay Claims calculated in accordance with the Pre-Filing Terminated Employee Termination and Severance Claim Methodology, Post-Filing Terminated Employee Termination and Severance Claim Methodology or the Pensioner Eligible Terminated Employee Termination and Severance Claim Methodology, as applicable (set out in Sections A, B and D of Appendix "D"); and

    (b)    Patent Award Claims.

**(3)    Post-Filing Transferred Employees**

88.    The buyers of the Applicants' business units offered employment to certain of the Employees in those business units on substantially the same terms as the Applicants, but did not offer post-retirement benefits, non-registered pension plans or defined benefit pension plans.    The potential Compensation Claims of Post-Filing Transferred Employees are:

CONFIDENTIAL

- 36 -

**00082**

(a)     Termination and Severance Pay Claims calculated in accordance with the Post-Filing Transferred Employee Termination and Severance Claim Methodology (set out in Section C of Appendix "D"); and

(b)     Patent Award Claims.

**(4)**     **Pensioners[11]**

89.     The potential Compensation Claims of Pensioners are:

(a)     claims under Non-Registered Pension Plans;

(b)     SIB claims;

(c)     STB claims, including claims for accrual of STBs;

(d)     claims for Pensioner M&D including STB M&D Accrual;

(e)     claims for Pensioner Life, including ADB and death benefits; and

(f)     Patent Award Claims.

**(5)**     **LTD Beneficiaries**

90.     The potential Compensation Claims of LTD Beneficiaries are:

(a)     claims for LTD Basic Life, LTD Optional Life Benefit, LTD AD&D Benefit and LTD Dependent Life Benefit;

---

[11] For the purposes of describing their potential claims, Pensioners do not include Post-Filing Transferred Employees who were retirement eligible on the date of transfer or became retirement eligible during the proposed applicable notice period.

CONFIDENTIAL

UCC0064498

00083

(b)    claims for LTD M&D;

(c)    claims for LTD Income;

(d)    claims for accrual of STBs;

(e)    claims for continuation of defined benefit or defined contribution accruals under the Registered Pension Plans;

(f)    claims under the Non-Registered Pension Plans;

(g)    claims for Pensioner M&D;

(h)    claims for Pensioner Life, including ADB;

(i)    Patent Award Claims; and

(j)    Termination and Severance Pay Claims calculated in accordance with the LTD Beneficiary Termination and Severance Claim Methodology (set out in Section E of Appendix "D").

**(6)    Active Employees**

91.    Active Employees have continued their employment with a buyer of the Applicants' businesses, have or will retire if they become eligible to do so, have or will be terminated as the Applicants sell and wind down their remaining business operations or have or may voluntarily leave the employ of an Applicant.

92.    The types of potential Compensation Claims of Active Employees against the Applicants that will form the basis of their Compensation Claim amount and personal Information

CONFIDENTIAL                                                                UCC0064499

- 38 -

00084

Statement will depend on the status of the Active Employee when he or she ceases employment with an Applicant and are as follows:

(a)     if the Active Employee continued his/her employment with a buyer, claims as a Post-Filing Transferred Employee;

(b)     if the Active Employee is terminated, claims as a Post-Filing Terminated Employee or Pensioner Eligible Terminated Employee;

(c)     if the Active Employee meets the applicable benefit eligibility requirements on the date on which the Active Employee ceases to be an Active Employee and that Active Employee retires from one of the Applicants, claims as a Pensioner; and

(d)     if the Active Employee voluntarily leaves the employ of an Applicant, no claim other than a Patent Award Claim.

## VIII.  COMPENSATION CLAIMS METHODOLOGY

93.     With the potential Compensation Claims identified, the Compensation Claims Participants agreed on a methodology for calculating the Benefit Claims, the Termination and Severance Pay Claims and the Patent Award Claims, for which the Applicants are seeking approval in this motion.   The Compensation Claims all rank as ordinary, unsecured claims against the Applicants.

## A.     **Benefit Claims**

94.     Faced with the uncertainty of future events and the conflict inherent in each beneficiary seeking to maximize his or her recovery by obtaining the highest possible valuation, the

UCC0064500

Monitor believes the use of agreed-upon actuarial assumptions is a reasonable, fair and practical approach to the required valuation. The Mercer 2011 Valuations were prepared following extensive consultation with Segal, the actuary for the Employee Representatives, and the other Compensation Claims Participants.

95. Mercer prepared the Mercer 2011 Valuations, copies of which are attached as Appendices "B" and "C" hereto. The Mercer 2011 Valuations were prepared for the purpose of determining the value of Benefit Claims, Non-Registered Pension Plan Claims and the portions of the Termination and Severance Pay Claims relating to Registered Pension Plan accruals, Non-Registered Pension Plans and Non-Pension Benefits for purposes of the Compensation Claims Process. The reports outline in detail the methodology and assumptions used to arrive at the valuation results and are based on the most recent data available as at December 31, 2010, as reflected in the Applicants' books and records, which data may be updated from time to time.

96. The data and assumptions on which the Mercer 2011 Valuations are based are set out in the valuations.

97. The actuarial assumptions used in the Mercer 2011 Non-Pension Benefits Valuation are substantially the same as the assumptions used in the Mercer HWT Report, on which the HWT Allocation Methodology was based. Mercer has prepared a detailed list of the differences between the Mercer HWT Report and the Mercer 2011 Non-Pension Benefits Valuation, which is attached as Appendix "M".

98. Other than the matters on which Mercer received instructions based on the agreement among the Compensation Claims Participants, and the discount rates and costs of living

CONFIDENTIAL  UCC0064501

adjustment rate, which were updated in accordance with actuarial standards, there are no differences of a substantive nature or which have a substantial impact on the value of the Compensation Claims. There are differences in presentation designed to make certain of the information more easily understood.

99.     The Applicants and the Monitor took into account Nortel's historic cost of providing the Non-Pension Benefits, including the administrative and tax expenses, and availability and cost of replacing coverage for these benefits. The Compensation Claims Participants reached agreement that Mercer should be instructed to make the following adjustments:

(a)     an increase of 10% on the present value of medical and dental benefits[12] (the **"Administrative Costs Gross Up"**); and

(b)     a net effective 10% gross up for income taxes on the present value of the following claims[13] (the **"Income Tax Gross Up"**) to reflect the potential negative consequences of receiving the following benefits as a lump sum:

(i)     Pensioner Life, including ADB and all LTD Life insurances (i.e., Basic Life, Optional Life, AD&D, Dependent Life);

(ii)     claims under Non-Registered Pension Plans;

(iii)     claims for Registered Pension Plan accruals;

---

[12] For example, assuming a present value of $100, the Administrative Cost Gross Up will result in a claim value of $110.

[13] For example, assuming a present value of $100, the Income Tax Gross Up will result in a claim value of $111.11. The net effective gross-up puts the claimant in the same net position assuming a 10% tax rate.

CONFIDENTIAL                                    UCC0064502

- 41 -

    (iv)    SIBs; and

    (v)    STBs.

100.    The Mercer 2011 Valuations will be used to prepare the individual Information Statements (including the calculation of the Benefit Claims and components of the Termination and Severance Pay Claims set out therein) for submission in the Compensation Claims Process and will form the basis for distributions to compensation claimants from the Applicants' estates.

101.    In preparing the Information Statements, Mercer will apply the same actuarial assumptions and data dates used to value the benefits to each Identified Claimant. For Active Employees, Active Canadian Service Employees and Active Precision Employees, Mercer will apply the same actuarial assumptions but based on a determination date of the date employment ceased with respect to discount rates, inflation and mortality as determined by the Canadian Institute of Actuaries' standard at that time. Mercer will also apply unique employee information to determine the individual amounts for the Benefit Claims and the portions of the Termination and Severance Pay Claims relating to Registered Pension Plan accruals, the Non-Registered Pension Plans and Non-Pension Benefits, as indicated in the Mercer 2011 Valuations.

**B.**    **Termination and Severance Pay Claims**

102.    Although Nortel had termination and severance guidelines, it did not have a general termination and severance policy that applied to all employees and could be considered part of their employment contract. Therefore, the methodology for calculating

CONFIDENTIAL

Termination and Severance Pay Claims was the subject of extensive discussions and negotiations among the Applicants, the Monitor and the other Compensation Claims Participants.

103. With respect to the notice of termination/severance period specifically, a number of factors, including age, years of service, position and compensation, were considered, as well as how mitigation could be taken into account in a practical way. After due diligence (including modelling of different factors with different weightings) and negotiations among the Compensation Claim Participants, agreement was reached that an approach using only years of service and without mitigation for those Terminated Employees who did not have employment contracts dealing with termination and severance and who did not transfer to buyers but with mitigation for those Terminated Employees who transferred or declined transfer to buyers would achieve a reasonable, fair and practical result that can be applied objectively and uniformly among the affected Employees.

104. A rate of 5.14% was applied for employee benefits during the notice period to base weekly or base monthly salary, as applicable. This approximates the Applicants' 2010 cost of providing medical and dental benefits, life insurance benefits, travel and other insurance benefits and the employer match portion of RRSP contributions.

105. Attached as Appendix "D-1" is a description of the proposed methodology for calculating Termination and Severance Pay Claims for each category of Employee. Attached as Appendix "D-2" is the Aggregate Severance Grid reflecting the aggregate liability for Base Severance Claims under the proposed methodology and attached as Appendix "D-

UCC0064504

3" are charts reflecting the Severance Grid Formulae for calculating the Base Severance Claims for each category of Terminated Employees. The methodology varies depending on the timing of termination and the category of compensation claimant in which the Terminated Employee belongs. For example, Terminated Employees who were terminated or provided with notice of termination before the Filing Date received a termination package forming the basis of their Termination and Severance Pay Claim. The Termination and Severance Pay Claims of Employees terminated after the Filing Date will be calculated using a proposed methodology that differs depending, for example, on whether the Employee was unionized, was transferred (or was offered transfer) to a buyer or was on long term disability benefits.

106.    Where the applicable minimum notice period (and severance period for Ontario employees) under the ESA Minimum Notice/Severance Period is greater than the proposed methodology notice period for Non-Unionized Employees terminated post-filing, the individual Information Statement will reflect the applicable statutory period and the applicable severance calculations will be made and shown accordingly.

107.    In preparing the Information Statements, the Applicants and the Monitor will apply the applicable Termination and Severance Claim Methodology described in Appendix "D-1" and reflected on the Severance Grid.

## C.    Patent Award Claims

108.    The methodology for the calculation of Patent Award Claims is set out in Appendix "E".

CONFIDENTIAL

- 44 -

00090

## IX. COMPENSATION CLAIMS PROCEDURE

### A.    Information Statement Process

109.    If the Compensation Claims Orders are granted, the vast majority of claims will proceed by way of the Information Statement process. In summary, under the Information Statement process:

   (a)    The Information Statement Package will be sent to Identified Claimants, who do not include Active Employees, Active Canadian Service Employees or Active Precision Employees;

   (b)    Active Employees, Active Canadian Service Employees and Active Precision Employees will be sent an Information Statement Package in a prescribed period of time after their employment has ceased;

   (c)    Claimants will have an opportunity to correct their Personal Information and to file a proof of claim for Other Compensation Claims, being claims other than Benefit Claims, Termination and Severance Pay Claims and Patent Award Claims. The methodology for the calculation of the Compensation Claims, if approved, cannot be challenged;

   (d)    The Monitor may accept or disallow the changes to information and a proof of claim;

   (e)    There is a resolution process for disputed information and claims.

CONFIDENTIAL

UCC0064506

- 45 -

110.  A copy of the English version in substantially the form of the Information Statement Package which will be individualized and mailed to each Identified Claimant according to his or her indicated language preference as per the Applicant's records is attached as Appendix "N". A French version of the Information Statement Package will be attached as an appendix to a supplementary report of the Monitor to be served and filed in advance of the within motion.  The Information Statement Package is comprised of:

(a)    a cover letter summarizing the Compensation Claims Process, which will include the aggregate amount of the Employee's Compensation Claims against the Applicants calculated in accordance with the Compensation Claims Methodology using data as of December 31, 2010 from the Applicants' books and records;

(b)    the Information Statement consisting of:

(i)    Form A – Your Compensation Claim Amount; and

(ii)    Form B – Your Personal Information Change Form;

(c)    Guide to Using Form B;

(d)    Form C Proof of Claim; and

(e)    Guide to Completing Form C.

111.  The Applicants and the Monitor, with actuarial assistance, will complete an Information Statement for each of the Identified Claimants, Active Employees, Active Canadian Service Employees and Active Precision Employees using the Compensation Claims

- 46 -

00092

Methodology and data as at December 31, 2010 from the Applicants' books and records (as updated from time to time).

112. Each Information Statement will include:

(a) Form A (Your Compensation Claim Amount) setting out the Employee's:

(i) Termination and Severance Pay Claim amount, if applicable, as calculated based on the applicable Termination and Severance Claim Methodology;

(ii) Benefit Claim amount, if applicable, under one or more of the Non-Registered Plans as calculated pursuant to the methodology and assumptions in the Mercer 2011 Valuations; and

(iii) Patent Award Claim amount, if applicable, as calculated based on the Patent Award Claim Methodology; and

(b) Form B (Your Personal Information Change Form) setting out the Personal Information relating to the particular Employee as at December 31, 2010 (completed based on the books and records of the Applicants, as updated from time to time) that is used in the determination of the Compensation Claim amounts, which section includes a column for the Employee to indicate any corrections to the data (together with supporting documentation to be attached) and the Confirming Changes Section, to be signed and completed by the Employee only if that Employee has requested changes or corrections to the personal information.

CONFIDENTIAL

UCC0064508

113.    The Information Statements indicate the "Employer of Record" based on the books and records of the Applicants. An issue has been raised as to whether the Applicant named as Employer of Record is necessarily the only or the appropriate entity to be responsible for the Employee's claim given, among other things, that Employees were transferred among the Applicants. The Compensation Claims Participants have agreed to defer this issue while the Applicants develop a Plan, which may render the issue moot, depending on the nature of the Plan.

114.    The cover letter and Information Statement include sections that are applicable to specific categories of Employees. Only the section relevant to a specific Employee will be sent to that Employee. English and French versions of examples of the form of personalized cover letter and Information Statement that will be sent to Pre-Filing Terminated Employees, Post-Filing Terminated Employees, Post-Filing Transferred Employees, Pensioners and LTD Beneficiaries will be attached as appendices to a supplementary report of the Monitor to be served and filed in advance of the within motion.

115.    Also included in the Information Statement Package is a Guide to Using Form B. This Guide is intended to assist the Employee in understanding the various data points that are completed for the Employee in Form B, which, in turn, will assist the Employee in determining whether any of the Personal Information requires correction. In addition, the Guide describes documents that the Employee can look to in order to verify the particular data point and that can be used as supporting documentation to be attached to the Confirming Changes Section should the Employee determine that a correction is required.

CONFIDENTIAL      UCC0064509

- 48 -

00094

116.    An Employee who has any changes or corrections to Form B must mark those changes or corrections in the corrections column, attach supporting documentation, complete and sign the Confirming Changes Section and return Form B as so completed and signed (a "**Request for Correction**") to the Monitor so that it is received by the Monitor on or before 4:00 p.m. (Eastern Time) on December 23, 2011 (the "**Request for Correction Bar Date**").

117.    The Information Statement Package will also be sent to Active Employees, Active Canadian Service Employees and Active Precision Employees, however, the process and bar date with respect to these active employees differs. Any claims an Active Employee, Active Canadian Service Employee or Active Precision Employee may have as at December 31, 2010 are subject to adjustment once that employee ceases active employment. In addition, an Active Employee, Active Canadian Service Employee or Active Precision Employee may have claims that arise between January 1, 2011 and the date on which that employee ceases active employment. Accordingly, it is only once an Active Employee, Active Canadian Service Employee or Active Precision Employee ceases active employment that such employee will receive an Information Statement setting out his or her applicable Compensation Claims (a "**Rolling Information Statement**"), which Information Statement is subject to a rolling bar date, namely on or before 4:00 p.m. (Eastern Time) on the date that is forty-five calendar days after the day on which an Information Statement was sent to that Active Employee, Active Canadian Service Employee or Active Precision Employee (the "**Request for Correction Rolling Bar Date**", together with the Request for Correction Bar Date, the "**Correction Bar Date**").

UCC0064510

118.    The Monitor, in consultation with the Applicants, will review and consider any Requests for Correction and may accept the corrections requested or reject them (in whole or in part). The Monitor will provide copies of the Requests for Correction received to the applicable Representative Counsel.

119.    If the Request for Correction is accepted and the correction(s):

    (a)    change the Compensation Claim amount set out in the Employee's Form A, the Monitor will send a Revised Information Statement with explanatory cover letter to the Employee reflecting the correction(s) to the Personal Information and the revised Compensation Claim amount; or

    (b)    do not change the Compensation Claim amount set out in the Employee's Form A, the Monitor will send a Notice of Acceptance (Personal Information) to the Employee indicating acceptance of the change in the Personal Information and that the change does not result in a revised Compensation Claim amount.

120.    Where a Request for Correction has not been received by the Monitor on or before the applicable Correction Bar Date, or a Request for Correction has been accepted in writing by the Monitor, then the Compensation Claim amount and Personal Information set out in the Information Statement, Revised Information Statement, or Notice of Acceptance (Personal Information), as applicable, shall be final and binding for all purposes, including for the purposes of voting and distribution under the Plan, and the Employee shall be barred from disputing the Compensation Claim amount or Personal Information set out therein and from making any Claim inconsistent with such Personal Information.

00096

121.    If the Request for Correction is rejected, the Monitor will send the Employee a Notice of Disallowance (Personal Information) together with a blank Dispute Notice (Personal Information) and the Employee will have an opportunity to dispute that disallowance, each in the manner and as described in Section D below.

122.    Notwithstanding the foregoing, if the Monitor independently discovers or is made aware of any errors in the Personal Information that affect the amount of the Compensation Claim of such Employee, the Monitor has the discretion to make those corrections. If any such errors are discovered and corrections are made by the Monitor, the Monitor will send a Monitor Corrected Information Statement together with a blank Dispute Notice (Personal Information) to the individual, who will have 28 calendar days after the Monitor Corrected Information Statement is sent to dispute the revised data in the Monitor Corrected Information Statement, which will be subject to the dispute resolution process for Compensation Claims.

**B.    Proof of Claim Process**

123.    As discussed, the Compensation Claims Process is structured so that the vast majority of claims are based on Information Statements and any accepted Requests for Correction, rather than individual proofs of claim. However, as referenced above, certain claims were excluded from the Claims Procedure Order. As a result, an individual Form C Proof of Claim must be filed:

CONFIDENTIAL

UCC0064512

(a)    by the individual if:

    (i)    an Employee believes he/she has any other claim against any one or more of the Applicants, the Directors or Officers for amounts owing to him/her in his/her capacity as an employee or arising from the administration, management or oversight of any pension plans or employee benefit plans administered or sponsored by the Applicants or their subsidiaries that is not included in Form A (Your Compensation Claim Amount) of the Information Statement;

    (ii)    a Director believes he/she has a claim for compensation for acting as a director, including, without limitation in respect of fees, deferred share-based compensation, benefits and director expenses; and

    (iii)    a Director or Officer believes he/she has a claim against one or more of the Applicants for indemnification and/or contribution arising from such Director's or Officer's service to any Applicant; and

(b)    by the applicable union if an Employee believes he or she has a Grievance Claim.

The claims set out in (a) and (b) above are referred to collectively as the **"Other Compensation Claims"**.[14]    A copy of substantially the form of the Proof of Claim Document Package is attached as Appendix "O".

---

[14] Some of these claims were subsequently released pursuant to the Settlement Agreement and the Order approving it.

CONFIDENTIAL                    UCC0064513

124.    Any Proof of Claim (other than with respect to an Active Employee, Active Canadian Service Employee or Active Precision Employee) must be filed so that it is received by the Monitor prior to 4:00 pm (Eastern time) on December 23, 2011 (the "**Proof of Claim Bar Date**").

125.    Any Active Employee, union in respect of a Grievance Claim of an Active Employee, Active Canadian Service Employee or Active Precision Employee must file a Form C Proof of Claim so that it is received by the Monitor prior to 4:00 pm (Eastern time) on the date that is forty-five calendar days after the day on which the Information Statement Package was sent to that Employee (the "**Proof of Claim Rolling Bar Date**" with the Proof of Claim Bar Date, as applicable, the "**Applicable Proof of Claim Bar Date**").

126.    Any Compensation Creditor (or union with respect to a Grievance Claim) who does not file a Form C Proof of Claim (together with supporting documentation) which is received by the Monitor on or before the Applicable Proof of Claims Bar Date (a) shall be forever barred from making or enforcing any Other Compensation Claim against the Applicants, or any of them, or against the Directors or Officers, or any of them; (b) shall not be entitled to vote at the Creditors' Meeting with respect to any Other Compensation Claim in respect of the Plan or to receive any distribution thereunder, and (c) in respect of any Other Compensation Claim, shall not be entitled to any further notice, and shall not be entitled to participate as a creditor, in these proceedings.

**C.**    **Notice to Creditors**

127.    Within 10 business days following the making of the Compensation Claims Procedure Order, the Monitor will post on its website at www.ey.com/ca/Nortel an electronic copy

UCC0064514

of the Motion Record relating to the within Motion and will also, as a separate link, post an electronic copy of the following documents:

(a)      the Compensation Claims Procedure Order;

(b)      Guide to Using Form B (in both English and French);

(c)      a Proof of Claim Document Package (in both English and French);

(d)      the Mercer 2011 Valuations (Appendices "B" and "C");

(e)      the Termination and Severance Claim Methodology (Appendix "D"); and

(f)      the Patent Award Claim Methodology (Appendix "E").

128.    The Monitor will send a copy of the following by ordinary mail at the Employee's address as last shown in the Applicants' records within 21 business days of the making of the Compensation Claims Procedure Order:

(a)      the applicable Information Statement Package to each Identified Claimant;

(b)      a Proof of Claim Package to those employees referred to in paragraph 25 who are not sent an Information Statement Package;

(c)      to the Active Employees, a letter substantially in the form as attached as Appendix "P";

(d)      to the Post-Filing Transferred Employees who are not receiving an Information Statement Package, a letter substantially in the form as attached as Appendix "Q" and a Proof of Claim Document Package; and

- 54 -

00100

(e)     to Employees with out of country addresses who are not receiving an Information Statement Package, a letter substantially in the form attached as Appendix "R" and a Proof of Claim Document Package.

129.    The letters will be translated into French and sent in French or English, as applicable, according to the indicated language preference of the Employee as per the Applicant's records. French versions of the letters will be attached as appendices to a supplementary report of the Monitor to be served and filed in advance of the within motion.

130.    The Monitor will send a copy of the Information Statement Package to each Active Employee, Active Canadian Service Employee and Active Precision Employee:

(a)     within twenty-one (21) Business Days of December 31, 2011 for those (A) Active Employees and Active Canadian Service Employees the Applicants have informed the Monitor ceased to be an Active Employee or Active Canadian Service Employee, as applicable, on or before December 31, 2011 and (B) Active Precision Employees the Former Employees' Representative Counsel have informed the Monitor and the Applicants ceased to be an Active Precision Employee on or before December 31, 2011; or

(b)     within twenty-one (21) Business Days after (A) the Applicants inform the Monitor that the Active Employee or Active Canadian Service Employee ceased to be an Active Employee or Active Canadian Service Employee, as applicable, on or after January 1, 2012 and (B) the Former Employees' Representative Counsel inform the Monitor and the Applicants that the Active Precision Employee ceased to be an Active Precision Employee on or after January 1, 2012.

CONFIDENTIAL

131. If an Information Statement Package, Proof of Claim Document Package or letter referred to in paragraph 128 is returned by the post office as having an incorrect address, the Monitor and the Applicants will make reasonable efforts to ascertain a correct address for the applicable individual and resend the applicable documents to such individual.

132. Within 21 business days of the making of the Compensation Claims Procedure Order, the Monitor will cause to be published a notice for publication in the form attached as Appendix "S" hereto in English in the Globe and Mail (National Edition), The Ottawa Citizen, the Calgary Herald, the Toronto Star, the Belleville Intelligencer, the Kingston Whig Standard, the London Free Press, Vancouver Sun, Halifax Chronicle Herald and the Montreal Gazette and in French in La Presse and Le Droit.

133. In addition, provided that such request is received by the Monitor prior to the applicable claims bar date, the Monitor will send the applicable Claims Package to any person claiming to be a Compensation Creditor as soon as reasonably possible after receipt of such a request from a potential compensation creditor.

134. In the Monitor's view:

     (a)      each of the Request for Correction Bar Date, Proof of Claim Bar Date, Request for Correction Rolling Bar Date and the Proof of Claim Rolling Bar Date is reasonable in that they provide at least 45 calendar days from the date of mailing of the Information Statement Packages during which compensation claimants may review the Personal Information, evaluate their employment-related claims against the Applicants and/or Directors/Officers and submit any Requests for Correction or Proofs of Claim; and

CONFIDENTIAL

- 56 -

00102

(b)      the identification of Compensation Creditors, the mailing of Claims Packages, the posting of the documents on the Monitor's website and the newspaper advertisements described above will provide sufficient and timely notification to allow Compensation Creditors to submit any Requests for Correction and Proofs of Claim by the applicable claims bar date.

## D.    <u>Resolution of Claims</u>

135.    Any Claim, as determined in accordance with the Compensation Claims Orders, shall be final for all purposes including any Plan filed with this Honourable Court and any distributions made to creditors of the Applicants pursuant to such Plan.

136.    The Monitor, in consultation with the Applicants and, if a Claim is asserted against a Director or Officer, such Director or Officer, will review all Requests for Correction and each Form C Proof of Claim filed on or before the applicable claims bar date and at any time may:

(a)      request additional information from a Compensation Creditor; and

(b)      accept or disallow (in whole or in part):

       (i)      the corrections requested in any Request for Correction by delivering to the applicable Compensation Creditor a Revised Information Statement or Notice of Acceptance (Personal Information), as applicable, if the Request for Correction is accepted or, if the Request for Correction is rejected, in whole or in part, a Notice of Disallowance (Personal Information), together with a blank Dispute Notice (Personal Information); and

CONFIDENTIAL

UCC0064518

- 57 -

00103

(ii)    the amount and/or status of the Other Compensation Claim set out in any Form C Proof of Claim. If a Form C Proof of Claim is rejected, in whole or in part, the Monitor will deliver to the applicable Compensation Creditor a Notice of Disallowance (Proof of Claim), together with a blank Dispute Notice (Proof of Claim).

The forms of Notice of Acceptance (Personal Information), Notice of Disallowance (Personal Information), Notice of Disallowance (Proof of Claim), Dispute Notice (Personal Information) and Dispute Notice (Proof of Claim) are attached hereto as Appendices "T" to "X".

137.    Any Compensation Creditor who intends to dispute a Notice of Disallowance must file a Dispute Notice with the Monitor no later than 4:00 pm (Eastern time) on the date that is 28 calendar days after the Monitor sends the Notice of Disallowance or Monitor Corrected Information Statement.

138.    Where a Compensation Creditor who receives a Notice of Disallowance or Monitor Corrected Information Statement fails to file a Dispute Notice with the Monitor within the time limited therefor, the amount and status of such Compensation Creditor's Claim, together with the Personal Information, shall be deemed to be as set out in the Notice of Disallowance or Monitor Corrected Information Statement and shall establish such Compensation Creditor's proven claim.

139.    The Monitor believes the period of time to file a Dispute Notice is reasonable as most creditors will have performed an evaluation of their Claim prior to submitting a Request

UCC0064519

- 58 -

00104

for Correction or Proof of Claim and therefore should be in a position to respond within the time period established.

140.   Upon receipt of a Dispute Notice, the Monitor, in consultation with the Applicants and a Director or Officer if the Claim is asserted against such Director or Officer, may attempt to consensually resolve the amount of the Claim with the Compensation Creditor. If the Claim is not settled within a time period or in a manner satisfactory to the Monitor, the Monitor may refer the dispute to a Claims Officer for determination or, in the alternative, bring the dispute before this Honourable Court for determination.

141.   If the Monitor refers the dispute to a Claims Officer for determination, the Claims Officer will determine the manner, if any, in which evidence may be brought before the Claims Officer by the parties as well as any other procedural or substantive manners.

142.   The Claims Officer shall notify the Compensation Creditor, Monitor, the Applicants and, if a Claim is asserted against a Director of Officer, such Director or Officer, as soon as practicable and in any event no later than 30 calendar days from the closing of submissions or such other date as the Claims Officer and the Monitor may agree, as to the Claims Officer's determination of the amount and status of the Compensation Creditor's Claim.

143.   The Applicants propose that each Compensation Creditor, the Monitor and a Director or Officer, if a Claim is asserted against such Director or Officer, have the ability to appeal a determination of the Claims Officer by way of motion to this Honourable Court filed within ten business days of delivery of such determination.

CONFIDENTIAL

- 59 -

00105

144. The amount and status of all Claims as finally determined in accordance with the forms and procedures set out in the Compensation Claims Orders and as described above shall be final for all purposes, including any Plan, and including without limitation for any distribution made to Compensation Creditors and no other Claim may be made by a Compensation Creditor.

E. **Role of Employee Representatives and Representative Counsel**

145. The Employee Representatives and Representative Counsel will assist and facilitate their constituents in reviewing the Information Statements, filing any proofs of claim for any Other Compensation Claims and respond to inquiries their constituents may have regarding the Information Statements and Compensation Claims Process.

146. Representative Counsel will hold a series of informational webinars following service of the Compensation Claims Process materials in order to provide an overview of the Compensation Claims Process, including the proposed methodology and Information Statement process, to their respective constituents and an opportunity for their constituents to ask any questions they may have regarding the Compensation Claims Process. The proposed schedule for the informational webinars is as follows:

(a) Pensioners, Terminated Employees, Unionized Post-Filing Transferred Employees and CAW members - The Former Employees' Representatives, Former Employees' Representative Counsel and their financial and actuarial advisors, with the participation of CAW Counsel, will hold informational webinars on September 22, 2011 and September 30, 2011;

CONFIDENTIAL

(b)    <u>LTD Beneficiaries and CAW members</u> - The LTD Beneficiaries' Representative, LTD Beneficiaries' Representative Counsel and their financial and actuarial advisors, with the participation of CAW Counsel, will hold a special informational webinar on September 30, 2011, which is supplementary to the webinars for Pensioners, Terminated Employees, Unionized Post-Filing Transferred Employees and CAW members on September 22 and 30, 2011; and

(c)    <u>Active Employees and Non-Unionized Post-Filing Transferred Employees</u> - The Continuing Employees' Representatives and Continuing Employees' Representative Counsel will hold an informational webinar on September 26, 2011.

147.   It is anticipated that following approval of the Compensation Claims Process and delivery of the Information Statements, Representative Counsel will also hold a series of webinars and "roadshows" in a variety of locations to facilitate an understanding of the Information Statements and proof of claim process and respond to inquiries.   The anticipated schedule for these informational webinars and roadshows is as follows:

(a)    <u>Pensioners, Terminated Employees and Unionized Post-Filing Transferred Employees</u> - The Former Employees' Representatives, Former Employees' Representative Counsel and their financial and actuarial advisors will hold an informational webinar on November 10, 2011 and the following roadshows:

(i)    Calgary - November 14, 2011;

(ii)   Toronto - November 15, 2011 and November 24, 2011;

- 61 -

00107

    (iii)    London - November 16, 2011;

    (iv)    Bellville - November 17, 2011;

    (v)    Kingston - November 17, 2011;

    (vi)    Ottawa - November 21, 2011; and

    (vii)    Montreal - November 22, 2011;

(b)    <u>LTD Beneficiaries</u> - The LTD Beneficiaries' Representative, LTD Beneficiaries' Representative Counsel and their financial and actuarial advisors will hold an informational webinar on November 10, 2011 and roadshows in the same locations and dates as set out in (a) above;

(c)    <u>CAW members</u> – The informational webinars referenced in (a) and (b) above will be open to CAW members and CAW Counsel will participate in those webinars. CAW Counsel will also participate in the roadshows referenced in (a) and (b) above in the locations in which the CAW has collective bargaining rights, being Toronto, London, Belleville and Kingston; and

(d)    <u>Active Employees and Non-Unionized Post-Filing Transferred Employees</u> – The Continuing Employees' Representatives and Continuing Employees' Representative Counsel will hold an informational webinar on November 11, 2011 and a roadshow in Ottawa on November 17, 2011.

CONFIDENTIAL

00108

148.    A schedule of the webinars and roadshows referenced in paragraphs 146 and 147 above will be provided to Employees with the Information Statement Package and the letters referenced in paragraph 128 above.

149.    Representative Counsel may act for an Employee who disputes the data in his Information Statement or where the Employee, in the judgment of the Representative Counsel, has a *bona fide* claim that has not been dealt with through the Compensation Claims Methodology, at the cost of the Applicants. However, the costs associated with adjudicating any claim that is not reasonably resolved, including preparation for adjudication, shall be dealt with by the Claims Officer or the Court, as applicable.

150.    Since their Court appointment, the Continuing Employees' Representatives and their counsel have included on their websites and in communications, information concerning potential offers of employment to Active Employees from buyers of Nortel assets and addressed concerns of Post-Filing Transferred Employees with respect to the insolvency proceedings and their claims. Their governance structure includes the Post-Filing Transferred Employees that are not Unionized Employees. The Former Employees' Representatives and their counsel have not included Post-Filing Transferred Employees that are not Unionized Employees in their governance structure and have not formally communicated with them nor represented their interests in the insolvency proceedings. While the Monitor, the Applicants and the Employee Representatives all recognized that the Continuing Employees' Representatives and their counsel represented Non-Unionized Post-Filing Transferred Employees, it has been brought to the attention of the Monitor that the Order appointing the Continuing Employees' Representatives and their counsel

UCC0064524

may not be completely clear with respect to their representation of Post-Filing Transferred Employees. The Monitor is of the view that to eliminate any potential concerns, the Continuing Employees' Representatives appointment order should be amended to explicitly reflect that the Post-Filing Transferred Employees that are not Unionized Employees are included therein.[15] The Monitor believes all of the Representatives have carried out their mandates appropriately, that the Post-Filing Transferred Employees are being appropriately represented and that there is no prejudice to any party in clarifying that Order.

F.    **Other Claims Matters**

151. Compensation Claims or distributions in respect thereof have been or will be reduced, on a dollar for dollar basis, by any payments in respect of the following that a Compensation Creditor receives during the CCAA proceedings before a final distribution from the Applicants' estates:

     (a)      hardship payments received as a partial distribution in advance of a general distribution to creditors (which will reduce the amount of any eventual distribution to which such Compensation Creditor may be entitled under a Plan);

     (b)      payments received from the Termination Fund created under and payable in accordance with the Settlement Agreement or Court Order as a credit against proven claims of such Compensation Creditor (which is currently reflected as a

---

[15] CAW Counsel will continue to act for Post-Filing Transferred Employees that are CAW members and Former Employees' Representative Counsel will continue to act for Post-Filing Transferred Employees that are subject to a collective bargaining agreement with Unions other than CAW.

CONFIDENTIAL             UCC0064525

reduction to the Termination and Severance Pay Claim in an Employee's Form A);

(c)      distributions received from the corpus of the HWT (which will reduce the amount of the proven claim of such Compensation Creditor); and

(d)      any other valid set-offs relating to amounts owing by the Compensation Creditor to one or more of the Applicants.[16]

## X. MONITOR'S RECOMMENDATIONS

152.     In the Monitor's view, the proposed Compensation Claims Process:

(a)      represents a fair, reasonable, efficient and practical method for the calculation and submission of employment-related claims that approximately 16,000 Employees may have against the Applicants, the majority of which relate to claims for loss of benefits that require actuarial determination and calculation;

(b)      will assist in ensuring that claims which have facts or issues in common will be determined consistently in a streamlined, efficient process; and

(c)      brings greater certainty to the calculation of Compensation Claims, fairly taking into account litigation risk, thereby reducing the risk that assets would be depleted in order to fund potentially significant litigation costs.

---

[16] In this regard, the Information Statements contain a data point setting out any amount showing on Nortel's books and records as owed to the Applicants by the employee due to an overpayment of an item through payroll or a tax equalization calculation, which will reduce the amount of the proven claim of such employee.

CONFIDENTIAL

- 65 -

00111

153.   The Monitor believes that, overall, the Compensation Claims Process represents a fair balancing of the interests of the Applicants' stakeholders and an important step in the implementation of the Applicants' restructuring. It was arrived at after extensive negotiations among the Compensation Claims Participants. The Monitor recommends that this Honourable Court approve the Compensation Claims Process and grant the Compensation Claims Orders substantially in the form submitted by the Applicants.

All of which is respectively submitted this 19th day of September, 2011.

**ERNST & YOUNG INC.**

**In its capacity as Monitor of the Applicants**

Per:

Murray A. McDonald
President

\5991257.20

CONFIDENTIAL

UCC0064527

# APPENDIX "A"

NNC-NNL11755981 / 1

00112

# GLOSSARY

| Term | Definition |
|---|---|
| **Active Canadian Service Employees:** | individuals who (i) as of Year End 2010 were employed by a Nortel entity that is not an Applicant, (ii) were at some point employed by an Applicant, and (iii) as at the date they cease employment, have Benefit Claims against an Applicant under a Non-Registered Pension Plan in respect of accrued service to an Applicant according to the books and records of the Applicants |
| **Active Employee:** | an Employee who was employed by an Applicant as of Year End 2010 |
| **Active Precision Employees:** | individuals who (i) were employed by an Applicant immediately prior to the Precision Transaction, (ii) were Unionized Employees, (iii) were transferred to Precision as part of the Precision Transaction, (iv) are identified by Former Employees' Representative Counsel as continuing employment with Precision as of the date of the Compensation Claims Procedure Order, as updated from time to time, and (v) have a Benefit Claim under the RAP in accordance with the terms of the Precision Transaction according to the books and records of the Applicants |
| **ADB:** | an additional death benefit provided to a closed group of Pensioners (most of whom retired prior to 1983) |
| **Administrative Costs Gross Up:** | an administrative cost/premium tax increase of 10% on the present value of Pensioner M&D and LTD M&D |
| **Aggregate Severance Grid** | a grid reflecting the aggregate liability for the Base Severance Claims calculated under the proposed Termination and Severance Claim Methodology |
| **Applicable Proof of Claims Bar Date:** | the Proof of Claim Rolling Bar Date and the Proof of Claim Bar Date, as applicable |
| **Applicable Rehired Employees:** | Terminated Employees in Ontario who experienced breaks in service to the Applicants (i.e. an Employee employed by one of the Applicants who was terminated and subsequently rehired) for whom employee entitlement to notice and severance under the applicable ESA Minimum Notice/Severance Period is greater than the severance amount calculated under the Methodology Notice Period |
| **Applicants:** | Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation |
| **Base Severance Claims:** | that portion of the Termination and Severance Pay Claims that excludes any claims valued in the Mercer 2011 Valuations but reflecting a reduction for payments from the Termination Fund |

1

NNC-NNL11755981 / 2

00113

| Term | Definition |
| --- | --- |
| **Benefit Claims:** | the claims of Employees under the Non-Registered Pension Plans and claims for Non-Pension Benefits |
| **Bondholder Group:** | the ad hoc group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation that has been organized and is participating in the Applicants' CCAA proceedings as well as the Chapter 11 Proceedings |
| **Bridging Period:** | the bridging period set out in the termination agreements of the Pre-Filing Terminated Bridging Employees, being the period equal to the amount of time required following the Pre-Filing Bridging Notice Period to make such Employee pensioner eligible or eligible for an enhanced early retirement pension under the defined benefit plan |
| **Canadian Service Employees:** | Terminated Canadian Service Employees and Active Canadian Service Employees |
| **CARP:** | Nortel's compensation and retirement accumulation programs |
| **CAW:** | National Automobile, Aerospace, Transportation and General Workers Union of Canada (CAW-Canada) and its Locals 27, 1525, 1530, 1837, 1839, 1905 and/or 1915 and George Borosh et al. |
| **CAW Counsel:** | Barry E. Wadsworth and Lewis Gottheil, counsel to the CAW |
| **CBA Benefit Period:** | the number of months in addition to the CBA Notice Period set out in a collective bargaining agreement in respect of which a Post-Filing Terminated Employee is entitled to continued non-pension benefits following layoff |
| **CBA Bridging Employees:** | Post-Filing Terminated Employees who are Unionized Employees and are eligible for bridging under the applicable collective bargaining agreement at the date of termination |
| **CBA Bridging Period:** | the period equal to the amount of time required following the CBA Notice Period to make a CBA Bridging Employee pensioner eligible |
| **CBA Notice/Bridging Period:** | the CBA Bridging Period together with the CBA Notice Period |
| **CBA Notice Period:** | the number of weeks a CBA Bridging Employee is entitled to notice as set out in the applicable collective bargaining agreement |
| **CBA Notice/Severance Period:** | the CBA Severance Period together with the CBA Notice Period |

2

NNC-NNL11755981 / 3

00114

| Term | Definition |
|---|---|
| **CBA Severance Period:** | the number of weeks set out in the applicable collective bargaining agreement in respect of which a Non-Retirement Eligible CBA Employee with no recall rights is entitled to severance |
| **CCAA:** | *Companies' Creditors Arrangement Act* |
| **Chapter 11 Proceedings:** | the voluntary petitions under Chapter 11 of the Code filed by NNI and certain of its U.S. subsidiaries in the U.S. Court |
| **Claim:** | any Compensation Claim or Other Compensation Claim |
| **Claims Officer:** | the person or persons so designated by the Monitor and approved by the Court, or designated by the Court, as the case may be |
| **Claims Packages:** | the applicable Information Statement Package or the Proof of Claim Document Package sent by the Monitor |
| **Claims Procedure Order:** | Court Order granted July 30, 2009 calling for certain claims against the Applicants and establishing a bar date for the filing of such claims |
| **CNELTD:** | Canadian Nortel Employees on Long-Term Disability |
| **Code:** | United States Bankruptcy Code |
| **Committee:** | the official committee of unsecured creditors of the U.S. Debtors |
| **Company:** | Nortel Networks Corporation collectively with all of its subsidiaries |
| **Compensation Claims:** | the Benefit Claims, Termination and Severance Pay Claims or Patent Award Claims calculated pursuant to the Compensation Claims Methodology |
| **Compensation Claims Methodology:** | the assumptions and methodologies for calculating Compensation Claims described and as set out in the Seventy-Fifth Report and the Appendices attached thereto, including the Mercer 2011 Valuations and "APPENDIX D - TERMINATION AND SEVERANCE CLAIM METHODOLOGY" |
| **Compensation Claims Methodology Order:** | the Order sought by the Applicants as a first step in the Compensation Claims Process for approval of the Compensation Claims Methodology |
| **Compensation Claims Orders:** | the Compensation Claims Methodology Order and the Compensation Claims Procedure Order |

3

00115

| Term | Definition |
|------|-----------|
| **Compensation Claims Participants:** | the Applicants, the Monitor, the Former Employees' Representatives, the Former Employees' Representative Counsel, the LTD Beneficiaries' Representative, the LTD Beneficiaries' Representative Counsel, CAW Counsel, the Continuing Employees' Representatives, the Continuing Employees' Representative Counsel and their respective actuarial and financial advisors |
| **Compensation Claims Procedure:** | the Applicants' proposed compensation claims procedure whereby the Applicants will: (A) call for Compensation Claims and Other Compensation Claims; and (B) establish bar dates by which any Requests for Correction and/or Form C Proof of Claim must be filed |
| **Compensation Claims Procedure Order:** | the Order sought by the Applicants for approval of the Compensation Claims Procedure |
| **Compensation Claims Process:** | the Compensation Claims Methodology and the Compensation Claims Procedure |
| **Compensation Creditor:** | any Person asserting a Claim |
| **Confirming Changes Section:** | a section of Form B to be signed and completed by an Employee only if that Employee has requested changes or corrections to the Personal Information |
| **Continuing Employees' Representatives:** | Kent Felske and Dany Sylvain, as appointed by the Court on July 22, 2009 |
| **Continuing Employees' Representative Counsel:** | Nelligan O'Brien Payne LLP and Shibley Righton LLP, as appointed by the Court on July 22, 2009 |
| **Contract Notice Period:** | for a Post-Filing Terminated Employee who is a Non-Unionized Employee and who has a written employment contract with an Applicant that expressly sets out the number of weeks he/she is entitled to notice and severance, the number of weeks set out in such written employment contract |
| **Correction Bar Date:** | the Request for Correction Bar Date and the Request for Correction Rolling Bar Date |
| **Court:** | Ontario Superior Court of Justice |
| **Creditors' Meeting:** | the meeting or meetings of Compensation Creditors (and other creditors) scheduled pursuant to further Order of the Court, or by any Plan when and as filed with the Court |

4

00116

| Term | Definition |
| --- | --- |
| **Cumulative Patent Issuance Award:** | monetary awards provided by Nortel to eligible employee-inventors upon the cumulative issuance of patents |
| **Deferred Vested Employees:** | Employees whose employment terminated pre-filing and, at the time of termination, were eligible for benefits under a Registered Pension Plan but deferred payment of the benefits under such plan and did not retire from an Applicant on or before December 31, 2010 |
| **Director:** | any current or former director of the Applicants or any of them |
| **Dispute Notice:** | a Dispute Notice (Personal Information) or a Dispute Notice (Proof of Claim), as the case may be |
| **Dispute Notice (Personal Information):** | a written notice to the Monitor, in substantially the form attached to the Compensation Claims Procedure Order, delivered to the Monitor by a Compensation Creditor that has received a Notice of Disallowance (Personal Information) or a Monitor Corrected Information Statement, as applicable, notifying of its intention to dispute such Notice of Disallowance (Personal Information) or such Monitor Corrected Information Statement, as applicable |
| **Dispute Notice (Proof of Claim):** | a written notice to the Monitor, in substantially the form attached to the Compensation Claims Procedure Order, delivered to the Monitor by a Compensation Creditor that has received a Notice of Disallowance (Proof of Claim), notifying of its intention to dispute such Notice of Disallowance (Proof of Claim) |
| **EMEA:** | Europe, Middle East and Asia |
| **EMEA Debtors:** | NNUK and certain of its subsidiaries located in EMEA |
| **Employees:** | the Applicants' employees, former employees, pensioners and their survivors, including LTD Beneficiaries |
| **Employee Representatives:** | the Continuing Employees' Representatives, the Former Employees' Representatives, the LTD Beneficiaries' Representative and the CAW |
| **ESA Minimum Notice Period:** | the applicable minimum notice period under applicable employment standards legislation |
| **ESA Minimum Notice/Severance Period:** | the ESA Minimum Notice Period and the ESA Minimum Severance Period |
| **ESA Minimum Severance Period:** | the applicable severance period set out in Ontario employment standards legislation |

NNC-NNL11755981 / 6

00117

| Term | Definition |
|---|---|
| **Excess Plan:** | the Nortel Networks Limited Managerial and Non-Negotiated Excess Plan |
| **EYI:** | Ernst & Young Inc. |
| **Fifty-First Report:** | the Fifty-First Report of the Monitor dated August 27, 2010 |
| **Filing Date:** | January 14, 2009 |
| **Form A:** | Compensation Claim amount form of the Information Statement setting out an Employee's:<br>(i) Termination and Severance Pay Claim amount, if applicable, as calculated based on the applicable Termination and Severance Claim Methodology;<br>(ii) Benefit Claim amount, if applicable, under one or more of the Non-Registered Plans as calculated pursuant to the methodology and assumptions in the Mercer 2011 Valuations; and<br>(iii) Patent Award Claim amount, if applicable, as calculated based on the Patent Award Claim Methodology |
| **Form B:** | personal information change form of the Information Statement setting out the Personal Information that is used in the determination of the Compensation Claim amounts, which section includes a column for the Employee to indicate any corrections to the data (together with supporting documentation to be attached) and a section to be signed and completed by the Employee only if that Employee has requested changes or corrections to the Personal Information |
| **Form C Proof of Claim:** | the form of Proof of Claim for Other Compensation Claims in substantially the form attached to the Compensation Claims Procedure Order |
| **Former Employees:** | former employees, including pensioners, of the Applicants or any Person claiming an interest under or on behalf of such former employees or pensioners and surviving spouses in receipt of a Nortel pension, or group or class of them |
| **Former Employees' Representatives:** | Donald Sproule, David Archibald and Michael Campbell as representatives of the Former Employees, as appointed by the Court on May 27, 2009 |
| **Former Employees' Representative Counsel:** | Koskie Minsky LLP, as appointed by the Court on May 27, 2009 |
| **Forty-Second Report:** | the Forty-Second Report of the Monitor dated March 30, 2010 |

6

NNC-NNL11755981 / 7

00118

| Term | Definition |
|---|---|
| **Grievance Claim:** | any grievance (or part of such grievance) by an Employee against any Applicant as of the date of the Compensation Claims Procedure Order, where that grievance (or part of such grievance) is (i) pursuant to a collective agreement with such Applicant, (ii) for monetary compensation, and (iii) not covered in an Information Statement and the Compensation Claims Methodology. Where part of a grievance is for monetary compensation, and part of the same grievance is for other relief, only that part of the grievance that is for monetary compensation shall be a Grievance Claim for the purposes of the Compensation Claims Procedure Order |
| **Guide to Completing Form C:** | a guide to completing the Form C Proof of Claim in substantially the form of the guide attached to the Seventy-Fifth Report as Appendix "O" |
| **Guide to Using Form B:** | a guide to using Form B in substantially the form of the guide attached to the Seventy-Fifth Report as Appendix "N" to assist the Employee in understanding the various data points that are completed for the Employee in Form B and in determining whether any of the Personal Information requires correction |
| **HWT:** | the Applicants' Health and Welfare Trust |
| **HWT Allocation Methodology:** | the methodology for allocation of the corpus of the HWT approved by the Court pursuant to the HWT Allocation Order |
| **HWT Allocation Order:** | the Court Order dated November 9, 2010 approving the HWT Allocation Methodology |
| **HWT Participating Beneficiaries:** | Beneficiaries under the HWT who are entitled to participate in the distribution of the HWT in accordance with the HWT Allocation Methodology |
| **Identified Claimants:** | Employees (other than Active Employees, Active Canadian Service Employees and Active Precision Employees), including Terminated Canadian Service Employees and Retired Precision Employees, known to the Applicants and the Monitor as of the date of the Compensation Claims Procedure Order to have Compensation Claims according to the books and records of the Applicants |
| **Income Beneficiaries:** | LTD Beneficiaries entitled to LTD Income, STB Beneficiaries entitled to STBs in pay and SIB Beneficiaries entitled to SIBs |
| **Income Benefits:** | LTD Income, STBs in pay and SIBs |

7

00119

| Term | Definition |
|---|---|
| **Income Tax Gross Up:** | a net effective 10% gross up for income taxes on the present value of the following claims: (i) Pensioner Life, including ADB and all LTD Life insurances (i.e., Basic Life, Optional Life, AD&D, Dependent Life); (ii) claims under Non-Registered Pension Plans; (iii) Registered Pension Plan accruals, (iv) SIBs; and (v) STBs |
| **Information Statements:** | individual information statements prepared by the Applicants, with the assistance of Mercer and the Monitor, to be sent to Identified Claimants and, subsequently, Active Employees, Active Canadian Service Employees and Active Precision Employees, as part of the Information Statement Package reflecting the amount of an individual claimants' Compensation Claim calculated in accordance with the Compensation Claims Methodology as well as the underlying data used in such calculation, and that will consist of Form A and Form B |
| **Information Statement Package:** | a document package to be sent to each Identified Claimant and, subsequently, Active Employees, Active Canadian Service Employees and Active Precision Employees, comprised of:<br>(i) a cover letter;<br>(ii) Form A – Your Compensation Claim Amount;<br>(iii) Form B – Your Personal Information Change Form;<br>(iv) Guide to Using Form B;<br>(v) Form C – Canadian Compensation Proof of Claim re: Other Compensation Claims; and<br>(vi) Guide to Completing Form C |
| **Initial Order:** | the Order of the Court dated January 14, 2009, as amended and restated |
| **IPP:** | the Nortel International Pension Plan |
| **LGN:** | LG Nortel Co. Ltd. |
| **LTD:** | Long-term disability |
| **LTD AD&D Benefit:** | Long-term disability accidental death and dismemberment benefits |
| **LTD Basic Life:** | Long-term disability life insurance benefits |

NNC-NNL11755981 / 9

00120

| Term | Definition |
|---|---|
| **LTD Beneficiaries:** | Terminated Employees of an Applicant who were not working at the time of their termination due to an injury, illness or medical condition in respect of which they were receiving or were entitled to receive disability income benefits by or through an Applicant, and who may assert an existing or future claim for payment, reimbursement or coverage arising in connection with their employment with an Applicant or termination thereof, a pension or benefit plan sponsored by an Applicant, including in relation to medical, dental, long-term or short-term disability benefits, life insurance or any other benefit, obligation or payment to which such person (or others who may be entitled to claim under or through such person) may be entitled, save and except those LTD Beneficiaries whose benefit or other payments, as described above, arise directly or inferentially out of a collective agreement between the Applicants, or any of them, and the CAW |
| **LTD Beneficiaries' Representative:** | Sue Kennedy, as representative of the LTD Beneficiaries, as appointed by the Court on July 30, 2009 |
| **LTD Beneficiaries' Representative Counsel:** | Koskie Minsky LLP, as appointed by the Court on July 30, 2009 |
| **LTD Beneficiary Termination and Severance Claim Methodology:** | Description available beginning at Section E of "APPENDIX D - TERMINATION AND SEVERANCE CLAIM METHODOLOGY" |
| **LTD Dependent Life Benefit:** | Long-term disability dependent life insurance benefits |
| **LTD Income:** | Long-term disability income replacement benefits |
| **LTD M&D:** | Long-term disability medical and dental benefits |
| **LTD Optional Life Benefit:** | Long-term disability Optional Life |
| **LTD-STB Accrual:** | Long-term disability income benefits to certain future survivors upon an LTD Beneficiary's death |
| **Managerial Plan:** | the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan |
| **Mercer 2011 Non-Pension Benefits Valuation:** | Valuation of the Obligations of the Non-Pension Benefits For Claim Purposes as at the Determination Date, by Mercer, dated September 2011 |

NNC-NNL11755981 / 10

00121

| Term | Definition |
|------|-----------|
| **Mercer 2011 Non-Registered Pension/ Pension Accruals Valuation:** | Valuation of Non-Registered Pension Benefits and Loss of Registered Pension Benefit Accruals for Claim Purposes as at the Determination Date, by Mercer, dated September 2011 |
| **Mercer 2011 Valuations:** | Collectively, the Mercer 2011 Non-Pension Benefits Valuation and the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation |
| **Mercer:** | Mercer (Canada) Limited (the Applicants' actuarial advisor) |
| **Mercer HWT Report:** | Valuation of the Obligations of the Non-Pension Benefits as at December 31, 2010, plus addendum dated September 16, 2010 |
| **Methodology Notice Period:** | Refer to definition at paragraph 3(d), p.10 of "APPENDIX D - TERMINATION AND SEVERANCE CLAIM METHODOLOGY" |
| **Monitor:** | Ernst & Young Inc., in its capacity as monitor pursuant to the Initial Order |
| **Monitor Corrected Information Statement:** | a revised Information Statement sent by the Monitor to an Employee if any errors are independently discovered by or made known to the Monitor in the Personal Information that affect the amount of the Compensation Claim of such Employee |
| **Morneau:** | Morneau Shepell Ltd. |
| **NNC:** | Nortel Networks Corporation |
| **NNI:** | Nortel Networks Inc. |
| **NNL:** | Nortel Networks Limited |
| **NNUK:** | Nortel Networks UK Limited |
| **Negotiated Plan:** | the Nortel Networks Negotiated Pension Plan |
| **Non-Pension Benefits:** | non-pension benefits provided by the Applicants to Employees consisting of Pensioner Life, ADB, Pensioner M&D, STB M&D Accrual, LTD Basic Life, LTD Optional Life Benefit, LTD AD&D Benefit, LTD M&D, LTD-STB Accrual, LTD Income, SIBs, STBs and Optional Life |
| **Non-Registered Pension Plans:** | the Excess Plan, SERP, IPP, TRA, and RAP |
| **Non-Registered Pension Plan Claims:** | claims under the Non-Registered Pension Plans |

10

NNC-NNL11755981 / 11

00122

| Term | Definition |
|---|---|
| **Non-Retirement Eligible CBA Employees:** | Post-Filing Terminated Employees who are Unionized Employees and are not eligible for bridging or are not pensioner eligible at the date of termination under the applicable collective bargaining agreement |
| **Non-Unionized Employees:** | all current employees of the Applicants that are not subject to a collective bargaining agreement and all former employees of the Applicants that were not subject to a collective bargaining agreement at the date of their termination |
| **Nortel:** | Nortel Networks Corporation, collectively with all of its subsidiaries |
| **Nortel Vacation Policy:** | Nortel's vacation policy described in paragraph 82 of the Seventy-Fifth Report |
| **Notice of Acceptance (Personal Information):** | a notice, in substantially the form attached to the Compensation Claims Procedure Order, advising an Employee that the Monitor has accepted a change to that Employee's Personal Information and that the change does not result in a revised Compensation Claim amount |
| **Notice of Allowance (Proof of Claim):** | a notice, in substantially the form attached to the Compensation Claims Procedure Order, advising a Compensation Creditor that the Monitor has allowed such Compensation Creditor's Claim |
| **Notice of Disallowance:** | the Notice of Disallowance (Personal Information) and the Notice of Disallowance (Proof of Claim) |
| **Notice of Disallowance (Personal Information):** | a notice, in substantially the form attached to the Compensation Claims Procedure Order, advising an Employee that the Monitor has disallowed all or part of the changes that have been requested by such Employee in a Request for Correction |
| **Notice of Disallowance (Proof of Claim):** | a notice, in substantially the form attached to the Compensation Claims Procedure Order, advising a Compensation Creditor that the Monitor has disallowed all or part of such Compensation Creditor's Claim set out in a Form C Proof of Claim filed by or on behalf of that Compensation Creditor |
| **NRPC:** | Nortel Retiree and Former Employee Protection Canada |
| **Officer:** | a current or former officer of an Applicant |
| **Optional Life:** | an optional life insurance program provided by Nortel (also known as group life – part II), available to employees at their own cost, insured by Sun Life in a policy naming Nortel as the policyholder |
| **Optional Life Participants:** | participants in the Optional Life program |

11

00123

| Term | Definition |
|------|-----------|
| **Other Compensation Claims:** | (i) claims of an Employee against any one or more of the Applicants, the Directors or Officers for amounts owing to him/her in his/her capacity as an Employee or arising from the administration, management or oversight of any pension plans or employee benefit plans administered or sponsored by the Applicants or their subsidiaries that is not included in Form A (Your Compensation Claim Amount) of the Information Statement;<br>(ii) claims of a Director for compensation for acting as a director, including, without limitation in respect of fees, deferred share-based compensation, benefits and Director expenses;<br>(iii) claims of a Director or Officer as of the date of the Compensation Claims Procedure Order against one or more of the Applicants for indemnification and/or contribution arising from such Director's or Officer's service to any Applicant; and<br>(iv) a Grievance Claim |
| **Outstanding Lump Sum Employee Notice Period:** | the outstanding notice period under the termination agreement of a Pre-Filing Terminated Lump Sum Employee (determined as reflected in charts 3.1 and 3.2 of the Severance Grid Formulae) |
| **Outstanding Notice/ Bridging Period:** | the outstanding Pre-Filing Notice/Bridging Period for Pre-Filing Terminated Bridging Employees determined as reflected in chart 1 of the Severance Grid Formulae |
| **Outstanding Salary Continuance Period:** | the outstanding Salary Continuance Period for Pre-Filing Salary Continuance Employees determined as reflected in chart 2 of the Severance Grid Formulae |
| **Patent Award:** | the Patent Filing Award, the Patent Issuance Award or Cumulative Patent Issuance Award |
| **Patent Award Claims:** | claims under the Applicants' patent award program calculated in accordance with the Compensation Claims Methodology and to be set out in an Information Statement |
| **Patent Award Claim Methodology:** | the methodology for calculating Patent Award Claims as set out in Appendix "E" to the Seventy-Fifth Report |
| **Patent Filing Award:** | monetary awards provided by Nortel to eligible employee-inventors for the first filing of a patent |
| **Patent Issuance Award:** | monetary awards provided by Nortel to eligible employee-inventors for the first issuance of a patent |
| **Pensioners:** | Pensioners in receipt of a pension from an Applicant, their beneficiaries and eligible dependants |

12

00124

| Term | Definition |
|------|------------|
| **Pensioner Eligible Terminated Employees:** | Terminated Employees who were terminated after the Filing Date and were pensioner eligible at the date of termination but excluding Post-Filing Transferred Employees and LTD Beneficiaries |
| **Pensioner Eligible Terminated Employee Termination and Severance Claim Methodology:** | Description available beginning at Section D of "APPENDIX D - TERMINATION AND SEVERANCE CLAIM METHODOLOGY" |
| **Pensioner Life:** | a group life insurance benefit provided to Pensioners, the amount of which varies and generally decreases on every anniversary of retirement and is available on the death of the pensioner at any age and is insured by Sun Life under a policy naming Nortel as the policyholder plus a death benefit provided to the surviving spouses of certain eligible Pensioners |
| **Pensioner M&D:** | medical and dental benefits for Pensioners and their dependants |
| **Person:** | includes any individual (including an Employee), partnership, joint venture, trust, corporation, unlimited liability company, unincorporated organization, government body or agency or instrumentality thereof, or any other juridical entity howsoever designated or constituted |
| **Personal Information:** | the personal information relating to a particular employee as at December 31, 2010 (completed based on the books and records of the Applicants, as updated from time to time) and as set out in Form B |
| **Plan:** | any plan of compromise and arrangement by one or more of the Applicants, if and when filed and approved by the Court, as revised, amended, modified or supplemented from time to time in accordance with its terms |
| **Post-Filing Terminated Employees:** | Terminated Employees other than Pre-Filing Terminated Employees |
| **Post-Filing Terminated Employee Applicable Notice Period:** | the period ending at the end of the ESA Minimum Notice/Severance Period, CBA Notice/Bridging Period, CBA Notice/Severance Period, Contract Notice Period or Methodology Notice Period, as applicable |
| **Post-Filing Terminated Employee Termination and Severance Claim Methodology:** | Description available beginning at Section B of "APPENDIX D - TERMINATION AND SEVERANCE CLAIM METHODOLOGY" |

NNC-NNL11755981 / 14

00125

| Term | Definition |
|---|---|
| **Post-Filing Transferred Employees:** | Post-Filing Terminated Employees of any Applicant who, after the Filing Date, transferred employment to the buyer of a business unit of an Applicant, or who were offered employment with a buyer, but declined the offer, but excluding Pensioner Eligible Terminated Employees |
| **Post-Filing Transferred Employee Applicable Notice Period:** | the period ending at the end of the ESA Minimum Notice/Severance Period, CBA Notice/Bridging Period, CBA Notice Period, CBA Notice/Severance Period, Contract Notice Period or Methodology Notice Period, as applicable |
| **Post-Filing Transferred Employee Termination and Severance Claim Methodology:** | Description available beginning at Section C of "APPENDIX D - TERMINATION AND SEVERANCE CLAIM METHODOLOGY" |
| **Precision:** | Precision Communications Service Corp. |
| **Precision Employees:** | Retired Precision Employees and Active Precision Employees |
| **Precision Transaction:** | the sale of assets by Nortel Networks Corporation to Precision completed as of March 3, 2000 |
| **Pre-Filing Bridging Notice Period:** | the notice period set out in the termination agreements of Pre-Filing Terminated Bridging Employees |
| **Pre-Filing Notice/ Bridging Period:** | the Bridging Period together with the Pre-Filing Bridging Notice Period |
| **Pre-Filing Terminated Bridging Employees:** | Pre-Filing Terminated Employees who were bridged to retirement pursuant to their termination agreements (that is, Employees whose termination agreements provided for a notice period equal to the amount of time required to make them pensioner eligible or eligible for an enhanced retirement pension under the defined benefit plan) |
| **Pre-Filing Terminated Contingency Employees:** | Pre-Filing Terminated Employees determined by the Applicants to be entitled (as at December 31, 2010) to additional contingency weeks of notice pursuant to their termination agreements |
| **Pre-Filing Terminated Employees:** | Terminated Employees who were terminated or received notice of termination prior to the Filing Date and have amounts owing to them under their termination agreements |

14

00126

| Term | Definition |
|---|---|
| **Pre-Filing Terminated Employee Termination and Severance Claim Methodology:** | Description available beginning at Section A of "APPENDIX D - TERMINATION AND SEVERANCE CLAIM METHODOLOGY" |
| **Pre-Filing Terminated Lump Sum Employees:** | Pre-Filing Terminated Employees who were entitled to a lump sum payment pursuant to their termination agreements |
| **Pre-Filing Terminated Salary Continuance Employees:** | Pre-Filing Terminated Employees who were on salary continuance pursuant to their termination agreements |
| **Pre-Filing Terminated Settlement Employees:** | Pre-Filing Terminated Employees who have entered into a settlement termination agreement with the Applicants |
| **Proof of Claim Bar Date:** | prior to 4:00 p.m. (Eastern time) on December 23, 2011 |
| **Proof of Claim Document Package:** | a claim document package for any Compensation Creditor other than Identified Claimants comprised of a Form C – Proof of Claim and a Guide to Completing Form C |
| **Proof of Claim Rolling Bar Date:** | prior to 4:00 p.m. (Eastern Time) on the date that is forty-five calendar days after the day on which the Information Statement Package was sent to an Active Employee, Active Canadian Service Employee or Active Precision Employee, as applicable |
| **RAP:** | the Nortel Networks Limited Retirement Allowance Plan |
| **Registered Pension Plans:** | the Managerial Plan and the Negotiated Plan |
| **Representatives:** | Employee Representatives and Representative Counsel |
| **Representative Counsel:** | Court-appointed representative counsel, being the Former Employees' Representative Counsel, LTD Beneficiaries' Representative Counsel, Continuing Employees' Representative Counsel and CAW Counsel |
| **Request for Correction:** | Form B marked by an Employee to reflect any changes or corrections in the corrections column of Form B accompanied by supporting documentation and a completed and signed Confirming Changes Section |
| **Request for Correction Bar Date:** | on or before 4:00 p.m. (Eastern Time) on December 23, 2011 |

15

00127

| Term | Definition |
|---|---|
| **Request for Correction Rolling Bar Date:** | on or before 4:00 p.m. (Eastern Time) on the date that is forty-five calendar days after the day on which an Information Statement Package was sent to an Active Employee, Active Canadian Service Employee or Active Precision Employee, as applicable |
| **Retired Precision Employees** | individuals who (i) were employed by an Applicant immediately prior to the Precision Transaction, (ii) were Unionized Employees, (iii) were transferred to Precision as part of the Precision Transaction, (iv) are identified by Former Employees' Representative Counsel by the date of the Compensation Claims Procedure Order as having retired from Precision, and (v) have a Benefit Claim under the RAP in accordance with the terms of the Precision Transaction according to the books and records of the Applicants |
| **Revised Information Statement:** | a revised Information Statement sent to an Employee reflecting correction(s) to the Personal Information and the revised Compensation Claim amount |
| **Rolling Information Statement:** | an Information Statement setting out an employee's applicable Compensation Claims received by such employee once, in the case of an Active Employee or Active Canadian Service Employee, such employee ceases to be an Active Employee or Active Canadian Service Employee, as applicable, or, in the case of an Active Precision Employee, such employee retires from Precision |
| **Salary Continuance Base Severance Amount:** | the amount of severance outstanding under the termination agreement of a Pre-Filing Terminated Salary Continuance Employee calculated as:<br><br>(i) base bi-weekly salary (in the amount set out in the termination agreement and calculated as reflected in chart 2 of the Severance Grid Formulae) during the Salary Continuance Period, minus<br>(ii) any payments made by the Applicants under the termination agreement |
| **Salary Continuance Period:** | the salary continuance period set out in the termination agreement of a Pre-Filing Terminated Salary Continuance Employee |
| **Segal:** | The Segal Company (the Settlement Employee Representatives' actuary) |
| **SERP:** | the Supplementary Executive Retirement Plan |
| **Settlement Agreement:** | the agreement among the Applicants, the Monitor, the Former Employee Representatives, the LTD Beneficiaries' Representative, the Former Employees' Representative Counsel, the LTD Beneficiaries' Representative Counsel and the CAW regarding certain issues related to, among other things, the Registered Pension Plans, certain employee benefits for, among others, Pensioners and LTD Beneficiaries and certain employment-related issues, as amended and restated on March 30, 2010 |
| **Seventy-Fifth Report:** | the Seventy-Fifth Report of the Monitor dated September 19, 2011 |

16

NNC-NNL11755981 / 17

00128

| Term | Definition |
|---|---|
| **Severance Grid:** | the Severance Grid Formulae and the Aggregate Severance Grid |
| **Severance Grid Formulae:** | the formulae for calculating the Base Severance Claims for each category of Employee |
| **SIBs:** | life-time income benefits for survivors of certain former non-unionized Nortel employees |
| **STBs:** | income benefits for survivors of certain unionized former Nortel employees, payable for a five year period |
| **STB Beneficiaries:** | survivors currently receiving STBs and Pensioners and LTD Beneficiaries whose survivors would be eligible for STBs |
| **STB M&D Accrual:** | medical and dental benefits to certain future survivors on a Pensioner's death |
| **Terminated Canadian Service Employees:** | individuals who (i) were employed by an Applicant at some point, (ii) have been terminated, (iii) immediately prior to their termination were employed by a Nortel entity that is not an Applicant, and (iv) as of the date of their termination, have Benefit Claims against an Applicant under a Non-Registered Pension Plan in respect of accrued service to an Applicant according to the books and records of the Applicants |
| **Terminated Employees:** | Employees employed by an Applicant immediately prior to termination and who were terminated |
| **Termination and Severance Claim Methodology:** | the termination and severance claim methodology described in "APPENDIX D - TERMINATION AND SEVERANCE CLAIM METHODOLOGY" and as reflected in the Severance Grid and the Mercer 2011 Valuations |
| **Termination and Severance Pay Claims:** | termination and severance pay claims of Terminated Employees including, where applicable, claims for fringe benefits, Registered Pension Plan accruals and grow-ins under Non-Registered Pension Plans and Non-Pension Benefits during the applicable proposed notice period calculated in accordance with the Compensation Claims Methodology and to be set out in an Information Statement |

17

00129

| Term | Definition |
|---|---|
| **Termination Fund:** | a pool of $4.3 million (later supplemented by amounts from the employee hardship fund, as approved by the Court Order dated February 25, 2011) that was created by Nortel and set aside pursuant to the Settlement Agreement for employees and former employees of Nortel whose employment was terminated prior to or on June 30, 2010 to whom amounts were owing for termination or severance payments, who were not offered employment with a purchaser of Nortel's assets and who had not received or were not entitled to receive (i) gross cumulative Annual Incentive Plan payments from and after October 1, 2009 of $3,000.00 or more; or (ii) a Key Employee Incentive Plan or Key Employee Retention Plan payment in 2009; or (iii) payment from any Court approved equivalent 2010 plan |
| **Thirty-Ninth Report:** | the Thirty-Ninth Report of the Monitor dated February 18, 2010 |
| **TRA:** | the Nortel Networks Limited Transitional Retiring Allowance Plan |
| **Trustee:** | the trustee of the HWT |
| **U.S. Court:** | the United States Bankruptcy Court for the District of Delaware |
| **U.S. Debtors:** | Nortel Networks (CALA), Inc., NNI and those of its subsidiaries that filed the Chapter 11 Proceedings on the Filing Date |
| **Unionized Employees:** | all current employees of the Applicants that are subject to a collective bargaining agreement and all former employees of the Applicants that were subject to a collective bargaining agreement at the date of their termination |
| **Year End 2010:** | midnight on December 31, 2010 |

\5991444

18

# APPENDIX "B"

NNC-NNL11755981 / 20

00130

September 2011

# Valuation of Non-Registered Pension Benefits and Loss of Registered Pension Benefit Accruals for Claim Purposes as at the Determination Date

Nortel Networks Limited, Nortel Networks Corporation, Nortel Networks Technology Corporation, Nortel Networks International Corporation, Nortel Networks Global Corporation (collectively "Nortel Canada" or the "Company")

**Confidential and Without Prejudice**

MERCER

Consulting. Outsourcing. Investments.

**Nortel Networks Limited**

Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date

00131

# Contents

**1.** Introduction ................................................................................................. 2

**2.** Valuation Results ......................................................................................... 9

**3.** Methods and Assumptions .......................................................................... 11

**4.** Membership Data ........................................................................................ 27

**5.** Summary of Benefit Eligibility Requirements ............................................. 33

**Appendix A:** Summary of Plan Provisions for the Nortel Networks Limited Transitional Retiring Allowance (TRA)

**Appendix B:** Summary of Plan Provisions for the Nortel Networks Limited Retirement Allowance Plan (RAP)

**Appendix C:** Summary of Plan Provisions for the Supplementary Executive Retirement Plan (SERP)

**Appendix D:** Summary of Plan Provisions for the Nortel Networks Limited Managerial and Non-Negotiated Excess Plan (Excess Plan)

**Appendix E:** Summary of Plan Provisions for the Nortel International Pension Plan (IPP Plan)

**Appendix F:** Employer Certification

v:\nortelcm\claims process\report\draft\valuation of non-registered pension benefits and loss of registered pension benefit accruals for claim purposes as at the determination date (final).doc

NNC-NNL11755981 / 22

**Nortel Networks Limited**

Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date

00132



**1**

# Introduction

## To Nortel Canada and Ernst & Young Inc. (the "Monitor")

In accordance with your request, we have performed a valuation of the accrued benefits under the non-registered pension and retiring allowance plans and certain accruals under the registered pension plans sponsored by Nortel Canada for purpose of determining the claim against the estate of Nortel Canada by the employees, former employees and their survivors for lost benefit entitlements. This report contains preliminary estimated liabilities for the identified Plans (as defined below) and Plan members based on assumptions and methodologies as discussed with Nortel Canada and the Monitor. We understand that the liability figures provided in this report are expected to be used to determine an initial estimate of the per claimant liabilities for the specific benefits provided in this report. These liabilities, after potential adjustments for updates, will be used to determine the claim against Nortel Canada's estate for the specified benefit, to the individual claimants.

This is subject to the approval of the Court in Nortel Canada's insolvency proceedings.

As instructed by the Monitor and the Company, the following plans and accrued benefits (collectively referred to as the "Plans") are covered by this report:

- The Nortel Networks Limited Managerial and Non-Negotiated Excess Plan ("Excess Plan");

- The Supplementary Executive Retirement Plan ("SERP") – Canadian benefits only;

- The Nortel International Pension Plan ("IPP");

- The Nortel Networks Limited Transitional Retiring Allowance Plan ("TRA");

- The Nortel Networks Limited Retirement Allowance Plan ("RAP");

**Mercer (Canada) Limited**                                                   2

NNC-NNL11755981 / 23

**Nortel Networks Limited**                    Preliminary Valuation of Non-Registered Pension Benefits
                                               for Claim Purposes as at the Determination Date

00133

- Loss of defined benefit ("RPP DB") or defined contribution ("RPP DC") accruals under the Nortel registered pension plans[1] after December 31, 2010 for members on long term disability ("LTD Claimants") ("LTD Lost Pension Accrual"); and

- Loss of defined benefit or defined contribution accruals under the Nortel registered pension plans[2] during the Notice Period (as defined below) for Terminated Members[3] ("Terminated Lost Pension Accrual").

- Loss of pension equivalent for qualifying union members who were terminated after January 14, 2009 ("Lost Pension Equivalent").

The LTD Lost Pension Accrual, the Terminated Lost Pension Accrual and the Lost Pension Equivalent are collectively referred as "Lost Pension Accrual" in this report.

Nortel Canada ceased all benefit payments under the Plans as at January 14, 2009, the date Nortel Canada filed and obtained court protection under the Companies' Creditors Arrangement Act (the "CCAA proceedings"). The liabilities in this report represent the actuarial present value of the benefits as at the applicable "Determination Date" in accordance with the following:

---

[1]  The Nortel Networks Limited Managerial and Non-Negotiated Pension Plan ("Managerial Plan") and the Nortel Networks Negotiated Pension Plan ("Negotiated Plan").

[2]  The Managerial Plan and the Negotiated Plan.

[3]  "Terminated Members" include (i) members who were involuntarily terminated prior to January 14, 2009 that had a Notice Period extending past January 14, 2009, (ii) members who were involuntarily terminated on or after January 14, 2009 and on or before December 31, 2010, and (iii) members that were transferred to another employer as part of a transaction in 2009 or 2010.

**Mercer (Canada) Limited**                                                    3

NNC-NNL11755981 / 24

**Nortel Networks Limited**             Preliminary Valuation of Non-Registered Pension Benefits
                                           for Claim Purposes as at the Determination Date    00134

| Member Group | Determination Date |
|---|---|
| Active and LTD Claimants | December 31, 2010 |
| Active Canadian Service Members[4] | December 31, 2010 |
| Pensioners in receipt of monthly benefits on January 14, 2009 | January 14, 2009 |
| Pensioners and deceased members who died between January 14, 2009 and December 31, 2010 and were in receipt as at January 14, 2009, and their survivors if eligible for any survivor benefits | Date of death |
| Deferred vested members with a benefit entitlement as at January 14, 2009 who received a pension package prior to December 31, 2008 and: | |
| ▪ did not receive a further package after December 31, 2008 | January 14, 2009 |
| ▪ received a further package after December 31, 2008 | Date of which the package was prepared |
| Members on special leaves of absence prior to pension ("SPLA") and salary continuance and members with an outstanding lump sum severance | Date of termination under the registered pension plans |
| Members affected by the 2009/2010 transactions, as follows: | Date of transaction |
| ▪ Avaya | December 18, 2009 |
| ▪ Ericsson | December 31, 2009 |
| ▪ Ciena | March 19, 2010 |
| ▪ Ericsson / Kapsch | March 31, 2010 |
| ▪ Genband | May 28, 2010 |
| Terminated Canadian Service Members[5] | Date of termination or date of retirement under the registered pension plans |
| Other members who became Terminated Members or retired on or after January 14, 2009 | Date of termination or date of retirement under the registered pension plans. |

For greater clarity, the aggregate claim presented in this report represents the sum of the individual claimant liabilities calculated as at the corresponding Determination Dates without any interest adjustment to the date of the report or Court approval of the compensation claims methodology.

---

[4] "Active Canadian Service Members" are members who were employed by a Nortel entity outside of Canada and eligible for a benefit under the Plans with respect to their Canadian service.

[5] "Terminated Canadian Service Members" are members who were employed by a Nortel entity outside of Canada at the date of termination and eligible for a benefit under the Plans with respect to their Canadian service.

NNC-NNL11755981 / 25

All amounts provided in this report are in Canadian dollars, unless specified otherwise.

The list of the Plans was prepared based on information provided by the Company. Although we have included the above Plans, we understand that there has been no decision on the proposed compensation claims methodology. Further, we make no comment on the applicability of the assumptions used herein, including the valuation date, for any purpose other than the valuation of the liabilities with respect to the termination of the Plans. The assumptions and methodologies used in this valuation are described in Section 3 of this report.

This valuation is based on membership data as at December 31, 2010. Additional information related to the membership data is provided in Section 4 of this report.

This valuation reflects the Plan provisions and the administrative practices related to the application of the Plan provisions as communicated to us by the Company. A summary of the Plan provisions is provided in the Appendices. Summaries of the plan provisions for the registered pension plans can be found in the respective *Report on the Actuarial Valuation for Funding Purposes as at December 31, 2009* filed with the Financial Services Commission of Ontario in September 2010.

Please also note the following:

- <u>Notice Period and periods of SPLA, severance and salary continuance (collectively to be Court approved and referred to as "Notice Period" in this report)</u>
  As instructed by Nortel Canada and the Monitor, the claim for the non-registered plan benefits includes service between the member's date of termination under the registered pension plans and the Notice Period end date, as provided by Nortel Canada and the Monitor, assuming the member terminated at the end of the Notice Period. The claim also includes the value of any loss of defined benefit or defined contribution benefit accruals during the Notice Period under the registered pension plans.

  The claim is not less than the claim based on the member's original date of termination without consideration of the Notice Period[6].

  As instructed by Nortel Canada and the Monitor, for the purpose of this report, a claim for Terminated Lost Pension Accrual for the Notice Period is included for all members[7], regardless of their benefit payment elections.

---

[6] The claim including the Notice Period may be less than the claim without consideration of the Notice Period under the non-registered plans and the DB registered plans. This is because the value of any additional benefit accrual during the Notice Period can be offset entirely by the value of the missed benefit payments between the optimal retirement age and the end of the severance / notice period.

[7] A RPP DC Terminated Lost Pension Accrual claim is not valued for members with RPP DC benefits who transferred to Avaya, Ericsson and Ericsson / Kapsch where these buyers provide a DC plan that is at least as generous as the Nortel plans.

NNC-NNL11755981 / 26

**Nortel Networks Limited**
<div align="right">Preliminary Valuation of Non-Registered Pension Benefits<br>for Claim Purposes as at the Determination Date 00136</div>

- **Income Tax Gross Up**
  As instructed by Nortel Canada and the Monitor, all benefit claims included in this report are grossed up by an effective 10% for income tax[8].

- **Eligibility for TRA / RAP Claim**
  In accordance with the plan provisions, a member who is eligible to retire and entitled to a TRA / RAP benefit can receive the TRA / RAP benefit if the member elects to commence the DB monthly pension immediately under the registered pension plans. If the member elects to receive a commuted value transfer under the DB registered pension plans or defer the commencement of his/her DB pension, the TRA / RAP benefit is forfeited.

  In addition, under the TRA plan, if a member is terminated under the work force reduction provisions with 20 years or more of service, but the member is not eligible to retire at the date of termination, the member is entitled to a reduced TRA benefit regardless of the member's benefit payment election under the registered pension plan.

  For the purpose of this report, we have not valued a claim for TRA and RAP if the member was eligible to retire at the date of termination and elected to receive the commuted value transfer option under the registered pension plan. A TRA / RAP claim is included for the following members

  - Members eligible to retire at the date of termination who elected to commence the DB monthly pension immediately;

  - Members eligible to retire at their date of termination but have not returned their election forms;

  - Members who were not eligible to retire at the date of termination with at least 20 years of service.

  - Members who became eligible to retire during their Notice Period regardless of their benefit payment elections in transferring their DB or DC entitlements out of the registered pension plans.

  - Members who were not eligible to retire at the end of their Notice Period with at least 20 years of service.

  Precision
  This valuation includes the former employees for whom Precision had notified Nortel Canada of their retirements and therefore the commencement of their RAP benefits. For greater clarity, this valuation does not include any former employees who are still active with Precision.

---

[8] Claim with income tax gross-up = Claim before income tax gross-up / (1 – 10%). For example, if the claim before income tax gross-up is $100, then the claim with income tax gross-up is $111.11 (i.e. $100 / (1-10%) ).

NNC-NNL11755981 / 27

**Nortel Networks Limited**        Preliminary Valuation of Non-Registered Pension Benefits    00137
for Claim Purposes as at the Determination Date

- **Allocation of Claim under SERP and IPP to Other Foreign Nortel Canada Entities**
  Both the SERP and the IPP recognize members' service accrued in other countries.
  As instructed by Nortel Canada and the Monitor, we have calculated the SERP claim
  for the benefits payable in Canadian dollars only as representing SERP claims
  against Nortel Canada. The SERP claim for the benefits payable in US dollars is
  excluded in this report. Also as instructed by Nortel Canada and the Monitor, we
  have included an IPP claim for the full amount against Nortel Networks Limited
  ("NNL") and excluded any possible reduction in the claim resulting from cross claims
  against foreign affiliates of Nortel Canada.

- **Claim for Active Claimants and Active Canadian Service Members**
  As instructed by Nortel Canada and the Monitor, the claim for Active Claimants and
  Active Canadian Service Members provided in this Report is based on the
  Determination Date of December 31, 2010 and assumptions in accordance with the
  CIA standard for pension commuted values payable from a registered pension plan
  as at December 31, 2010[9]. In addition, no consideration is given in this Report for the
  Lost Pension Accrual Claim with respect to the Notice Period to which these
  members might be entitled if they were terminated as at December 31, 2010.

  However, the final claim, including any Lost Pension Accrual Claim if applicable, for
  these members will be recalculated upon their actual termination using the same
  methods and assumptions as described in this Report, but based on a Determination
  Date at the member's date of termination and assumptions with respect to interest
  rates, inflation and mortality as determined by the CIA standard at that time. As such,
  the final claim for these members may be higher or lower than the claim provided in
  this Report. Furthermore, there may be additional claimants not covered by this
  Report since they were not eligible to receive benefits under the Plans as at
  December 31, 2010 but became eligible at their actual date of termination.

- **Changes in Assumptions and Methods**
  The assumptions and methods used in this report are still subject to Court approval.
  As such, the valuation of the claim provided in this report should be considered as
  preliminary.

After checking with representatives of the Company, on the date of preparation of this
report, to the best of our knowledge, there have been no other subsequent events which,
in our opinion, would have a material impact on the results of the valuation.

---

[9] For the purpose of this valuation, the economic assumptions (i.e. interest rates, inflation) used for Active
Claimants and Active Canadian Service Members are based on the month-end CANSIM rates for
December 2010 instead of the usual rates with a 2-month lag.

NNC-NNL11755981 / 28

**Nortel Networks Limited**

Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date

00138

In our opinion,

- The individual membership data on which the valuation is based are sufficient and reliable for the purposes of preparing a preliminary estimate of the aggregate liabilities.  However, individual members will be provided with a statement for the purpose of correcting their own data.  Therefore, at this time, individual liability amounts should be considered as preliminary estimates only, subject to revision and correction when accepted pursuant to the compensation claims resolution process to be Court approved.

- The assumptions are in accordance with the instructions received from the Company and the Monitor and in aggregate appropriate for the purposes of this report.  The assumptions may not be appropriate for other purposes.

- The methods employed are in accordance with the instructions received from the Company and the Monitor for the valuation and appropriate for the purposes of the valuation.

This report has been prepared and our opinions given, in accordance with accepted actuarial practice in Canada.  However, we are not aware of any actuarial standards or practice requirements specifically designed for settlement of non-registered benefits as outlined in this report.

The information contained in this report was prepared exclusively for Nortel Canada and the Monitor, in connection with the court application with respect to the claim for the benefits payable under the Plans.  This report is only intended for the purposes outlined above.  Mercer assumes no liability for the use, or reliance upon, this report for purposes other than those specifically identified in this report.

Respectfully submitted,

Paul Forestell
Fellow of the Canadian Institute of Actuaries
Fellow of the Society of Actuaries

Joseph Tang
Fellow of the Canadian Institute of Actuaries
Fellow of the Society of Actuaries

September 19, 2011
Date

September 19, 2011
Date

Mercer (Canada) Limited; 161 Bay Street, P.O. Box 501; Toronto, Ontario  M5J 2S5

**Mercer (Canada) Limited**

8

NNC-NNL11755981 / 29

**Nortel Networks Limited**    Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date    00139

<div style="border:1px solid black; width:120px; height:120px; text-align:center;">

**2**

</div>

# Valuation Results

The following table summarizes the value of the accrued benefits under the Plans as at
the Determination Date:

**Estimated Liabilities of Accrued Benefits as at the Determination Date (in millions)**

| | Claim in $CDN | | | | | | | IPP |
|---|---|---|---|---|---|---|---|---|
| | TRA | RAP | Excess Plan | SERP [10] | RPP DB Accrual | RPP DC Accrual | Total ($CDN) | ($US) |
| _Estimated Liabilities Before Notice Period and Income Tax Gross-Up Adjustments_ | | | | | | | | |
| Active Members[11] | 4.5 | 0.1 | 0.4 | - | - | - | $5.0 | - |
| LTD Claimants | 4.3 | 4.4 | 0.3 | 0.4 | 2.8 | 1.4 | $13.6 | - |
| Pensioners and Survivors[12] | 13.3 | 7.6[13] | 96.4 | 56.2[14] | - | - | $173.5 | - |
| Deferred Vested Members | ‡ | - | 5.2 | 0.4 | - | - | $5.6 | 0.2 |
| SPLA / Salary Continuance / Outstanding Severance | 1.2 | 0.1 | 0.1 | - | - | - | $1.4 | - |

---

[10] For benefits payable in Canadian dollars only.

[11] Including Active Canadian Service Members.

[12] Including deceased pensioners and deceased members and their survivors.

[13] $2.0 million of the $7.6 million is for Precision members.

[14] Including $3.2 million for pensions paid to the two survivors of deceased former Bell executives (Nortel
portion only and paid in Canadian dollars).

NNC-NNL11755981 / 30

**Nortel Networks Limited**

Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date

| | Claim in \$CDN | | | | | | | IPP (\$US) |
|---|---|---|---|---|---|---|---|---|
| | TRA | RAP | Excess Plan | SERP [10] | RPP DB Accrual | RPP DC Accrual | Total (\$CDN) | |
| 2009/10 Transaction Members | 13.4 | 0.7 | 1.3 | - | - | - | **\$15.4** | - |
| Other Terminated Members[15] | 7.9 | 2.9 | 4.7 | - | - | - | **\$15.5** | 0.1 |
| *Adjustments for Notice Period*[16] | | | | | | | | |
| Increase in claim for members who already have a claim: | | | | | | | | |
| ▪ SPLA / Salary Continuance / Outstanding Severance | 0.1 | 0.1 | - | - | - | - | **\$0.2** | - |
| ▪ 2009/10 Transaction Members | 3.0 | 0.3 | ‡ | - | - | - | **\$3.3** | - |
| ▪ Other Terminated Members | 0.9 | ‡ | ‡ | - | - | - | **\$0.9** | - |
| New claim for members who became eligible to receive benefits due to the Notice Period: | | | | | | | | |
| ▪ SPLA / Salary Continuance / Outstanding Severance | 0.1 | - | - | - | 0.1 | 0.2 | **\$0.4** | - |
| ▪ 2009/10 Transaction Members | 0.3 | - | - | - | 1.8 | 1.7 | **\$3.8** | - |
| ▪ Other Terminated Members | 0.1 | - | - | - | 0.7 | 2.1 | **\$2.9** | - |
| Lost Pension Equivalent | - | - | - | - | 0.2 | - | **\$0.2** | - |
| *Adjustments for Income Tax Gross-Up*[17] | | | | | | | | |
| All Members | 5.5 | 1.8 | 12.0 | 6.3 | 0.6 | 0.6 | **\$26.8** | ‡ |
| **Grand Total** | **\$54.6** | **\$18.0** | **\$120.4** | **\$63.3** | **\$6.2** | **\$6.0** | **\$268.5** | **\$0.3** |

‡ Less than \$50,000

---

[15] Including Terminated Canadian Service Members.

[16] The Adjustments for Notice Period represent the increase in the liabilities after reflecting the additional benefit and/or eligibility accrual during the Notice Period. For members whose liabilities decrease after reflecting the Notice Period under the particular plan, their Adjustments for Notice Period are $0.

[17] This is 11.11% of the claim (or effective 10%).

**Mercer (Canada) Limited**

10

**Nortel Networks Limited**

Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date

00141

<br>
<br>

## 3

# Methods and Assumptions

### *Valuation Methods*

The claim represents the actuarial present value of the benefits payable under the Plans as at the Determination Date, as follows:

| Member Group | Determination Date |
|---|---|
| Active and LTD Claimants | December 31, 2010 |
| Active Canadian Service Members[18] | December 31, 2010 |
| Pensioners in receipt of monthly benefits on January 14, 2009 | January 14, 2009 |
| Pensioners and deceased members who died between January 14, 2009 and December 31, 2010 and were in receipt as at January 14, 2009, and their survivors if eligible for any survivor benefits | Date of death |
| Deferred vested members with a benefit entitlement as at January 14, 2009 who received a pension package prior to December 31, 2008 and: | |
| ▪ did not receive a further package after December 31, 2008 | January 14, 2009 |
| ▪ received a further package after December 31, 2008 | Date of which the package was prepared |
| Members on SPLA and salary continuance and members with an outstanding lump sum severance | Date of termination under the registered pension plans |

---

[18] "Active Canadian Service Members" are members who were employed by a Nortel entity outside of Canada and eligible for a benefit under the Plans with respect to their Canadian service.

**Mercer (Canada) Limited**                                                           11

NNC-NNL11755981 / 32

00142

**Nortel Networks Limited**           Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date

| Members affected by the 2009/2010 transactions, as follows: | Date of transaction |
| --- | --- |
| ▪   Avaya | December 18, 2009 |
| ▪   Ericsson | December 31, 2009 |
| ▪   Ciena | March 19, 2010 |
| ▪   Ericsson / Kapsch | March 31, 2010 |
| ▪   Genband | May 28, 2010 |
| Terminated Canadian Service Members[19] | Date of termination or date of retirement under the registered pension plans |
| Other members who became Terminated Members or retired on or after January 14, 2009 | Date of termination or date of retirement under the registered pension plans. |

As instructed by Nortel Canada and the Monitor, the claim for Active Claimants and Active Canadian Service Members provided in this Report is based on the Determination Date of December 31, 2010 and assumptions in accordance with the CIA standard for pension commuted values payable from a registered pension plan as at December 31, 2010[20]. In addition, no consideration is given in this Report for the Lost Pension Accrual Claim with respect to the Notice Period to which these members might be entitled if they were terminated as at December 31, 2010.

However, the final claim, including any Lost Pension Accrual Claim if applicable, for these members will be recalculated upon their actual termination date using the same methods and assumptions as described in this Report, but based on a Determination Date at the member's date of termination and assumptions with respect to interest rates, inflation and mortality as determined by the CIA standard at that time. As such, the final claim for these members may be higher or lower than the claim provided in this Report. Furthermore, there may be additional claimants not covered by this Report since they were not eligible to receive benefits under the Plans as at December 31, 2010 but became eligible at their actual date of termination.

---

[19] "Terminated Canadian Service Members" are members who were employed by a Nortel entity outside of Canada at the date of termination and eligible for a benefit under the Plans with respect to their Canadian service.

[20] For the purpose of this valuation, the economic assumptions (i.e. interest rates, inflation) used for Active Claimants and Active Canadian Service Members are based on the month-end CANSIM rates for December 2011 instead of the usual rates with a 2-month lag.

**Mercer (Canada) Limited**           12

NNC-NNL11755981 / 33

**Nortel Networks Limited**                    Preliminary Valuation of Non-Registered Pension Benefits
                                                for Claim Purposes as at the Determination Date

The following table describes the basis for establishing the claim under each Plan for each member group:

| Plan and Member Group | Claim Basis |
|---|---|
| All Plans<br><br>All members who received a pension package after December 31, 2008 | The claim equals the lump sum shown on the pension package.<br><br>Such lump sum was calculated as at the members' date of termination or retirement under the registered pension plans for members who terminated or retired after 2008 based on the CIA assumptions at that date. For deferred vested members who terminated prior to January 14, 2009 and received a package after January 14, 2009, the date of calculation is the date on which the package was prepared.<br><br>Where applicable, the claim is based on service including the member's Notice Period assuming the member terminated plan membership at the end of the Notice Period, if such an amount is greater than the lump sum shown on the member's package.<br><br>There is no claim for TRA and RAP for members who were eligible to retire at the date of termination and elected a commuted value transfer of their benefits under the registered pension plans, despite the fact that a TRA or RAP lump sum was included on their pension packages. An eligible-to-retire member must elect to receive an immediate pension in order to receive the TRA and RAP benefits in accordance with the plan provisions.<br><br>A claim was included for members who have not selected any payment option yet or elected to commence a monthly pension under the registered pension plans.<br><br>A claim was also included for Managerial Plan members who were not eligible to retire at the date of termination but eligible for a reduced TRA benefit as a result of the work force reduction provisions with 20 years of service, regardless of the payment options elected under the registered pension plan |
| TRA and RAP<br><br>Active members, including Active Canadian Service Members | The claim represents the actuarial present value of the benefits payable assuming the member terminated employment on December 31, 2010, calculated as at December 31, 2010 based on assumptions at December 31, 2010.<br><br>We have also considered that any members whose age plus years of service equal at least 55 at December 31, 2010 under the work force reduction provisions would be entitled to enhanced early retirement benefits.<br><br>An active member who would not meet the benefit eligibility requirements on December 31, 2010 if they terminated employment on December 31, 2010 is assumed to have no claim for these benefits at this time. |
| TRA and RAP<br><br>LTD Claimants | The claim represents the actuarial present value of the projected benefits that the members will receive at age 65 assuming they will remain on disability and continue to accrue benefits until age 65 and commence these benefits at age 65. The actuarial present value is calculated as at December 31, 2010 based on assumptions at December 31, 2010. The |

**Mercer (Canada) Limited**                                                13

00144

**Nortel Networks Limited**                    Preliminary Valuation of Non-Registered Pension Benefits
                                               for Claim Purposes as at the Determination Date

| Plan and Member Group | Claim Basis |
|---|---|
|  | actuarial present value is discounted by interest and mortality for the period between December 31, 2010 and age 65 for TRA or the earliest retirement age for RAP as there is no pre-retirement death benefit payable before those ages. The actuarial present value is also discounted by the cumulative ultimate recovery rates for the period between December 31, 2010 and the earliest benefit eligibility age[21] as it is assumed that members will be terminated immediately upon recovery and no benefits would be payable if such termination occurs before the earliest benefit eligibility age. |
| TRA and RAP<br><br>Pensioners and survivors as at December 31, 2010[22] where the member retired prior to January 14, 2009 | The claim represents the actuarial present value of the monthly benefits payable between January 14, 2009 and the benefit end date, calculated as at January 14, 2009 based on assumptions at January 14, 2009. |
| TRA and RAP<br><br>Deceased pensioners and members as at December 31, 2010 | For deceased pensioners, the claim equals the total monthly benefits that should have been made between January 14, 2009 and the date of death (or the benefit end date if earlier). No interest is assumed in this calculation.<br><br>For other deceased members, the claim equals the lump sum, if any, communicated on the pension package to the survivor. Such lump sum was calculated as at the members' date of death based on the CIA assumptions at that date. |
| TRA and RAP<br><br>Deferred vested as at December 31, 2010 who terminated prior to January 14, 2009 | A TRA claim is included for Managerial Plan members who were not eligible to retire at the date of termination but terminated under work force reduction provisions with 20 years of service and therefore eligible for a reduced TRA benefit in accordance with the plan provisions. The claim equals the amount shown on their pension packages.<br><br>Otherwise, no claim is included since they are not entitled to the TRA or RAP benefits. |
| TRA and RAP<br><br>Terminated Members or members retired on or after January 14, | For members who received a pension package after December 31, 2008, the claim equals the lump sum shown on the pension package, if any, subject to the applicable situations described below.<br><br>For members who did not receive a pension package[23], the claim equals the lump sum that would have been included on the package if a package |

---

[21]  For TRA, the earliest benefit eligibility age is the earlier of age 55 and the age at which the member attains 20 years of service. For RAP, the earliest benefit eligibility age is the earlier of age 55 and the age at which the member attains 30 years of service.

[22]  Effective date of data.

[23]  Since the transfer of the administration responsibility of the registered pension plans from Nortel to Morneau Shepell Ltd. effective September 30, 2010, issuance of termination and retirement packages were suspended under the registered plans as instructed by Morneau Shepell Ltd. Therefore, members who terminated or retired before October 1, 2010 had received a pension package whereas members who terminated or retired after September 30, 2010 had not received any package.

**Mercer (Canada) Limited**                                                                    14

00145

**Nortel Networks Limited**

Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date

| Plan and Member Group | Claim Basis |
|---|---|
| 2009, including members on SPLA, salary continuance, and members with an outstanding lump sum severance, and Terminated Canadian Service Members<br><br>(excluding members affected by transactions) | was provided to them, subject to the applicable situations described below.<br><br>We have also considered that any members whose age plus years of service equal at least 55 at the date of termination under the work force reduction provisions would be entitled to enhanced early retirement benefits.<br><br>Where applicable, the claim is based on service including the member's Notice Period assuming the member terminated plan membership at the end of the Notice Period, if such an amount is greater than the lump sum shown on the member's package or the lump sum that would have been shown on the package had the member received a package.<br><br>There is no claim for TRA and RAP for members who were eligible to retire at the date of termination and elected a commuted value transfer of their benefits under the registered pension plans, despite the fact that a TRA or RAP lump sum was included on their pension packages. An eligible-to-retire member must elect to receive an immediate pension in order to receive the TRA and RAP benefits in accordance with the plan provisions.<br><br>A claim was included for members who have not selected any payment option yet or elected to commence a monthly pension under the registered pension plans.<br><br>A claim was also included for Managerial Plan members who were not eligible to retire at the date of termination but eligible for a reduced TRA benefit as a result of the work force reduction provisions with 20 years of service, regardless of the payment options elected under the registered pension plans.<br><br>A member who did not meet the benefit eligibility requirements at the date of termination or did not become eligible by the end of the applicable Notice Period would have no claim for TRA and RAP. |

**Mercer (Canada) Limited**                                                                                 15

NNC-NNL11755981 / 36

| Plan and Member Group | Claim Basis |
|---|---|
| TRA and RAP<br><br>Terminated Members affected by the 2009/2010 transactions | Due to legislative requirements for the registered pension plans, not all members affected by the 2009/2010 transactions received a pension package at the date of transfer. Specifically, only members in British Columbia, Alberta, and Quebec received a pension package at the date of transfer. Subject to the below, the claim for such members is the lump sum shown on the member's pension package. Members in other jurisdictions will receive a pension package when they terminate employment with the purchasers.<br><br>For members who have not received a pension package, the claim represents the lump sum that the member would have seen on the pension package had a pension package been issued to the member at the date of transfer, subject to the applicable situations described below. For greater clarity, the lump sum was calculated at the date of transfer based on service, earnings, and assumptions at the date of transfer.<br><br>We have also considered that any members whose age plus years of service equal at least 55 at the date of transfer under the work force reduction provisions would be entitled to enhanced early retirement benefits.<br><br>Where applicable, the claim is based on service including the member's Notice Period assuming the member terminated plan membership at the end of the Notice Period, if such an amount is greater than the lump sum shown on the member's package or the lump sum that would have been shown on the package had the member received a package.<br><br>There is no claim for TRA and RAP for members who were eligible to retire at the date of transfer and elected a commuted value transfer of their benefits under the registered pension plans. An eligible-to-retire member must elect to receive an immediate pension in order to receive the TRA and RAP benefits in accordance with the plan provisions.<br><br>A claim was also included for Managerial Plan members who were not eligible to retire at the date of termination but eligible for a reduced TRA benefit as a result of the work force reduction provisions with at least 20 years of service, regardless of the payment options elected under the registered pension plans.<br><br>A member who did not meet the benefit eligibility requirements at date of transfer or did not become eligible by the end of the Notice Period where applicable would have no claim for TRA and RAP. |
| RAP Only<br><br>Members affected by Precision | A claim is calculated for former Nortel Canada employees for whom Precision had notified Nortel Canada of their retirements and therefore the commencement of their RAP benefits. For greater clarity, this valuation does not include former Nortel Canada employees who are still active with Precision.<br><br>For members who were in receipt of a monthly RAP benefit from Nortel Canada at January 14, 2009, the claim represents the actuarial present value of the monthly benefits payable from Nortel Canada between January 14, 2009 and the benefit end date, calculated as at January 14, |

NNC-NNL11755981 / 37

| Plan and Member Group | Claim Basis |
|---|---|
| | 2009 based on assumptions at January 14, 2009. |
| | For members who retired after January 14, 2009, the claim equals the Nortel Canada portion of the RAP lump sum as calculated by Precision at the date of the retirement. |
| <u>TRA and RAP</u><br><br>Members affected by Flextronics, Expertech, and Nordx/CDT | No claim is included for members transferred to these companies. |
| <u>Excess Plan</u><br><br>Active members, including Active Canadian Service Members | The claim represents the actuarial present value of the benefits payable assuming the member terminated employment on December 31, 2010, calculated as at December 31, 2010 based on assumptions at December 31, 2010.<br><br>We have also considered that any members whose age plus years of service equal at least 55 at December 31, 2010 under the work force reduction provisions would be entitled to enhanced early retirement benefits.<br><br>An active member who would not meet the benefit eligibility requirements on December 31, 2010 if they terminated employment on December 31, 2010 is assumed to have no claim for these benefits at this time. |
| <u>Excess Plan</u><br><br>LTD Claimants | The claim represents the actuarial present value of the projected benefits that the members will receive at age 65, assuming they will remain on LTD and continue to accrue benefits until age 65, and commence these benefits at age 65. The actuarial present value is calculated as at December 31, 2010 based on assumptions at December 31, 2010. For greater clarity, the actuarial present value is discounted by interest but not by mortality nor recovery for the period between December 31, 2010 and age 65 (i.e. assuming members will still be entitled to an Excess Plan benefit if they recover before age 65 or a death benefit if they die before age 65). |
| <u>Excess Plan</u><br><br>Pensioners and survivors as at December 31, 2010 who retired prior to January 14, 2009 | The claim represents the actuarial present value as at January 14, 2009 of the future monthly benefits payable based on assumptions at January 14, 2009. |
| <u>Excess Plan</u><br><br>Deceased pensioners and deceased members as at December 31, 2010 | For deceased pensioners, the claim equals the total monthly benefits that should have been made between January 14, 2009 and the date of death. No interest is assumed in this calculation.<br><br>For other deceased members, the claim equals the lump sum, if any, communicated on the pension package to the survivor. Such lump sum was calculated as at the members' date of death based on the CIA assumptions at that date. |
| <u>Excess Plan</u><br><br>Deferred vested as at December 31, | The claim represents the actuarial present value as at January 14, 2009 of the future benefits payable based on assumptions at January 14, 2009. |

NNC-NNL11755981 / 38

**Nortel Networks Limited**                    Preliminary Valuation of Non-Registered Pension Benefits
                                               for Claim Purposes as at the Determination Date

| Plan and Member Group | Claim Basis |
| --- | --- |
| 2010 who terminated prior to January 14, 2009 | |
| Excess Plan<br><br>Terminated Members or members retired on or after January 14, 2009 including members on SPLA, salary continuance, and members with an outstanding lump sum severance, and Terminated Canadian Service Members<br><br>(excluding members affected by transactions) | For members who received a pension package after December 31, 2008, the claim equals the lump sum shown on the pension package, if any, subject to the applicable situations described below.<br><br>For members who did not receive a pension package[24], the claim equals the lump sum that would have been included on the package if a package was provided to them, subject to the applicable situations described below.<br><br>We have also considered that any members whose age plus years of service equal at least 55 at the date of termination under the work force reduction provisions would be entitled to enhanced early retirement benefits.<br><br>Where applicable, the claim is based on service including the member's Notice Period assuming the member terminated plan membership at the end of the Notice Period, if such an amount is greater than the lump sum shown on the member's package or the lump sum that would have been shown on the package had the member received a package. |
| Excess Plan<br><br>Terminated Members affected by the 2009/2010 transactions | Due to legislative requirements for the registered pension plans, not all members affected by the 2009/2010 transactions received a pension package at the date of transfer. Specifically, only members in British Columbia, Alberta, and Quebec received a pension package at the date of transfer. Subject to the below, the claim for such members is the lump sum shown on the member's package. Members in other jurisdictions will receive a pension package when they terminate employment with the purchasers.<br><br>For members who have not received a pension package, the claim represents the lump sum that the member would have seen on the pension package had a pension package been issued to the member at the date of transfer. For greater clarity, the lump sum was calculated at the date of transfer based on service, earnings, and assumptions at the date of transfer.<br><br>We have also considered that any members whose age plus years of service equal at least 55 at the date of transfer under the work force reduction provisions would be entitled to enhanced early retirement benefits.<br><br>Where applicable, the claim is based on service including the member's Notice Period assuming the member terminated plan membership at the end of the Notice Period, if such an amount is greater than the lump sum shown on the member's package or the lump sum that would have been shown on the package had the member received a package. |

---

[24] Since the transfer of the administration responsibility of the registered pension plans from Nortel to Morneau Shepell Ltd. effective September 30, 2010, issuance of termination and retirement packages were suspended under the registered plans as instructed by Morneau Shepell Ltd. Therefore, members who terminated or retired before October 1, 2010 had received a pension package whereas members who terminated or retired after September 30, 2010 had not received any package.

NNC-NNL11755981 / 39

| Plan and Member Group | Claim Basis |
|---|---|
| SERP<br>Active members, including Active Canadian Service Members | There is no member in this category. |
| SERP<br>LTD Claimants | The claim represents the actuarial present value of the projected benefits that the members will receive at age 65 assuming they will remain on LTD and continue to accrue benefits until age 65 and commence these benefits at age 65. The actuarial present value is calculated as at December 31, 2010 based on assumptions at December 31, 2010. For greater clarity, the actuarial present value is discounted by interest and mortality for the period between the age at December 31, 2010 and age 65 as there is no pre-retirement death benefit payable. |
| SERP<br>Pensioners and survivors as at December 31, 2010, excluding executive pensioners and survivors whose pension should be split between Nortel Canada and Bell | The claim represents the actuarial present value as at January 14, 2009 of the future monthly benefits payable based on assumptions at January 14, 2009. |
| SERP<br>Executive pensioners and survivors whose pension should be split between Nortel Canada and Bell | <u>Pensioners and survivors who were receiving their pension from Nortel Canada</u><br>The claim represents the actuarial present value as at January 14, 2009 of the Nortel Canada portion of the future monthly benefits payable based on assumptions at January 14, 2009.<br><u>Pensioners and survivors who were receiving their pension from Bell</u><br>Based on past payment practice, Bell would have the primary responsibility to pay these pensioners and survivors. As such, no claim has been valued for these pensioners and survivors. |
| SERP<br>Deceased pensioners and members as at December 31, 2010 | For deceased pensioners, the claim equals the total monthly benefits that should have been made between January 14, 2009 and the date of death. No interest is included in the calculation.<br>No member died from active or disabled status after January 14, 2009 according to our data at the time this report is prepared. |
| SERP<br>Deferred vested members as at December 31, 2010 terminated prior to January 14, 2009 | There is no member in this category. |
| SERP<br>Terminated | The claim represents the commuted value of the Canadian SERP entitlements as at the date of termination based on the CIA assumptions |

NNC-NNL11755981 / 40

00150

**Nortel Networks Limited**          Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date

| Plan and Member Group | Claim Basis |
|---|---|
| Members or members retired on or after January 14, 2009 including members on SPLA, salary continuance, and members with an outstanding lump sum severance, and Terminated Canadian Service Members<br><br>(excluding members affected by transactions) | at the date of termination.<br>Where applicable, the claim is based on service including the member's Notice Period assuming the member terminated plan membership at the end of the Notice Period, if such an amount is greater than the commuted value as at the date of termination without the Notice Period. |
| SERP<br><br>Members affected by the 2009/2010 transactions | There is no member in this category. |
| IPP<br>Active members | The claim represents the actuarial present value of the benefits payable assuming the member terminated employment on December 31, 2010, calculated as at December 31, 2010 based on assumptions at December 31, 2010. |
| IPP<br><br>Deferred Vested members and Terminated Members | Members who have received an IPP package before January 14, 2008<br>Since it cannot be confirmed if the IPP benefits have been paid already, the IPP benefits are assumed to have been paid and therefore there is no claim to be made for the purpose of this valuation.<br>Members who have not received an IPP package<br>The claim represents the termination lump sum the member would have received had a pension package been provided at the date of termination. The termination lump sum would have been calculated based on service and earnings at the date of termination, and the assumptions used in the last formal valuation for IPP as at December 31, 2007[25]. |

---

[25] It has been Nortel's practice to determine the IPP lump sum for a terminated member based on the assumptions used in the last formal valuation. The last formal valuation was performed as at December 31, 2007. The assumptions used in the December 31, 2007 valuation were consistent with the assumptions used for Nortel Canada's 2007 yearend financial disclosure.

**Mercer (Canada) Limited**          20

NNC-NNL11755981 / 41

**Nortel Networks Limited**

Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date

00151

| Plan and Member Group | Claim Basis |
|---|---|
| Lost Pension Accrual for LTD Claimants under the RPP DB | The claim equals A minus B, where A and B are defined as follows:<br><br>A = the actuarial present value of the projected RPP DB benefits that the members will receive at age 65 assuming they will remain on LTD and continue to accrue RPP DB benefits until age 65 and commence these benefits at age 65. The actuarial present value is calculated as at December 31, 2010 based on assumptions at December 31, 2010. For greater clarity, the actuarial present value is discounted by interest but not by mortality nor recovery for the period between the age at December 31, 2010 and age 65; and<br><br>B = the actuarial present value of the benefits payable assuming the member terminated employment on December 31, 2010, calculated as at December 31, 2010 based on assumptions at December 31, 2010.<br><br>If A is less than B (i.e. the value of the missed benefit payments between the optimal retirement age and age 65 is higher than the value of continued benefit accruals to age 65), the claim equals $0.<br><br>We have also considered that any members whose age plus years of service equal at least 55 at December 31, 2010 under the work force reduction provisions would be entitled to enhanced early retirement benefits. |
| Lost Pension Accrual for LTD Claimants under the RPP DC | The claim equals the actuarial present value of the projected DC allocations at 2% of salary for Managerial Plan members and 4% of salary for Negotiated Plan members between December 31, 2010 and age 65, calculated as at December 31, 2010 based on assumptions at December 31, 2010. |
| Lost Pension Accrual during Notice Period for Terminated Members and members on SPLA and salary continuance under RPP DB | The claim equals C minus D, where C and D are defined as follows:<br><br>C = the actuarial present value of the projected RPP DB benefits that the members would receive based on service accrued up to the end of the Notice Period and the member terminated plan membership at the end of the Notice Period. The actuarial present value is calculated as at the member's date of termination under the registered pension plans based on assumptions on that date; and<br><br>D = the actuarial present value of the benefits payable at the member's date of termination under the registered pension plans based on service accrued up to the date of termination without Notice Period.<br><br>If C is less than D (i.e. the value of the missed benefit payments between the optimal retirement age and the end of the Notice Period is higher than the value of continued benefit accruals to the end of the Notice Period), the claim equals $0.<br><br>We have considered that any members whose age plus years of service equal at least 55 at the date of termination under the work force reduction provisions would be entitled to enhanced early retirement benefits. |

NNC-NNL11755981 / 42

**Nortel Networks Limited**    Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date    00152

| Plan and Member Group | Claim Basis |
|---|---|
| Lost Pension Accrual during Notice Period for Terminated Members and members on SPLA and salary continuance under RPP DC | For members not affected by the 2009/2010 transactions with a vested DC balance at the member's date of termination, the claim equals the actuarial present value of the projected DC allocations at 2% of salary for Managerial Plan members and 4% of salary for Negotiated Plan members between the member's date of termination under the registered pension plans and the end of the Notice Period, calculated as at the member's date of termination based on assumptions at the same date.

For members not vested at the member's date of termination, the claim is based on total service up to the end of the Notice Period instead of the service between the member's date of termination and the end of the Notice Period only.

As instructed by Nortel Canada and the Monitor, for Managerial Plan members affected by Ciena and Genband, the claim is based on the projected DC allocations at 1% of salary for Managerial Plan members and 0% of salary for Negotiated Plan members.

For Managerial Plan members affected by the other 2009/10 transactions and Negotiated Plan members affected by the other 2009/10 transactions, no DC accrual claim is included, as the new companies offer a DC plan which provides for a company contribution of at least 2% of salary for Managerial Plan members and 4% of salary for Negotiated Plan members, which is equal to Nortel Canada's contribution and therefore no DC loss has been incurred by these members. |
| Union Members Eligible for Pension Equivalent Bridging | The Lost Pension Equivalent claim equals the total monthly pension equivalent amount the member would have received during the bridging period. The monthly pension equivalent amount represents the DB monthly pension payable from the Negotiated Plan assuming the member retired at the end of the bridging period with service accrued up to the end of the bridging period. |

NNC-NNL11755981 / 43

**Nortel Networks Limited**                    Preliminary Valuation of Non-Registered Pension Benefits
                                                for Claim Purposes as at the Determination Date         00153

## *Actuarial Assumptions*

### *For Active, Active Canadian Service Members and LTD Claimants*

| | |
|---|---|
| Determination Date | December 31, 2010 |
| Interest Rates | CIA rates for December 2010 without the 2-month lag (i.e. based on the month end CANSIM rates for December 2010):<br>▪ Non-indexed: 3.6% per year for 10 years, 4.9% per year thereafter<br>▪ Fully indexed: 1.8% per year for 10 years, 2.2% per year thereafter |
| Inflation | 1.77% per year for 10 years, 2.64% per year thereafter |
| ITA Limit | Actual amounts for years up to 2011, and projected at inflation + 1% from the 2011 level |
| Mortality | UP94 projected to 2020 using AA scale (sex distinct) |
| Retirement age | For LTD claimants, the assumed retirement age is 65.<br>For active members, the optimal age is determined for each Plan separately as follows:<br>Excess – age that would maximize the total benefit from the registered pension plan, the Excess Plan and SERP<br>TRA / RAP – immediate age<br>IPP – immediate age<br>SERP – not applicable as there is only one LTD member remaining in the Plan |
| Family composition | 90% probability of having a spouse at retirement with males assumed to be 3 years older than their female spouses. |
| LTD Recovery Assumption | Based on Canadian Group Long Term Disability Termination Experience 1988-1997 |
| Income Tax Gross Up | An effective 10%[28]. |

---

[28] Claim with income tax gross-up = Claim before income tax gross-up / (1 – 10%). For example, if the claim
   before income tax gross-up is $100, then the claim with income tax gross-up is $111.11
   (i.e. $100 / (1-10%) ).

NNC-NNL11755981 / 44

**Nortel Networks Limited**         Preliminary Valuation of Non-Registered Pension Benefits         00154
                                         for Claim Purposes as at the Determination Date

*For pensioners and survivors in receipt of monthly benefits at January 14, 2009 and deferred vested members with a benefit entitlement as at January 14, 2009 who received a pension package prior to December 31, 2008 (excluding members with IPP benefits)*

| Determination Date | January 14, 2009 |
|---|---|
| Interest Rates | CIA rates for January 2009 without the 2-month lag (i.e. based on the month end CANSIM rates for January 2009) |
| | ▪ Non-indexed: 3.0% per year for 10 years, 5.0% per year thereafter |
| | ▪ Fully indexed: 2.0% per year for 10 years, 3.25% per year thereafter |
| Inflation | 0.94% per year for 10 years, 1.69% per year thereafter |
| ITA Limit | <u>For deferred vested members only:</u> |
| | Actual amounts for years up to 2011, and projected at inflation + 1% from the 2011 level |
| Mortality | UP94 projected to 2015 using AA scale (sex distinct) |
| Retirement age | Age 65 for deferred vested members. |
| | Not applicable for pensioners. |
| Family composition | <u>For deferred vested members:</u> |
| | 90% probability of having a spouse at retirement with males assumed to be 3 years older than their female spouses. |
| | <u>For pensioners and survivors:</u> |
| | Pensioners are assumed married and their eligible spouses are still alive if the pension is payable in a joint and survivor form. For current pensioners the actual spousal date of birth information was used where available. Where actual spousal dates of birth were not provided, males are assumed to be 3 years older than their female spouses. |
| Income Tax Gross Up | An effective 10%. |

NNC-NNL11755981 / 45

### *Members with IPP benefits who did not receive a pension package*

The claim equals the lump sum that would have been calculated had the member received a pension package at the date of termination. Specifically, it has been Nortel Canada's practice to determine the IPP lump sum for a terminated member based on the assumptions used in the last formal valuation. The last formal valuation was performed as at December 31, 2007. The assumptions used in the December 31, 2007 valuation were consistent with the assumptions used for Nortel Canada Canada's 2007 yearend financial disclosure. A summary of the assumptions is provided below:

| Interest Rates | 5.5% per annum |
|---|---|
| Inflation | 2.0% per annum |
| Mortality | RP2000 (no collar) with projected improvements to 2016 (sex distinct) |
| Retirement age | Age 65 for members under age 55, immediate age for members at least age 55 |
| Family composition | 100% married, males are assumed to be 3 years older than their female spouses where spousal date of birth information is not available. |
| Income Tax Gross Up | An effective 10%. |

### *For Terminated Members and members who retired on or after January 14, 2009 or members who received a pension package after December 31, 2008*

The claim is based on the assumptions described in *Section 3500 – Pension Commuted Values of the Canadian Institute of Actuaries' Standards of Practice* applicable for the date of calculation of the package. For most members, the date of calculation is the date of termination or date of retirement. For deferred vested members who have terminated for more than 6 months, the date of calculation is the date when the pension package was prepared.

As instructed by Nortel Canada and the Monitor, the claim is grossed-up by an effective 10% for income tax.

### *For members affected by the 2009/10 transactions*

For members who received a pension package, the claim is based on the assumptions described in *Section 3500 – Pension Commuted Values of the Canadian Institute of Actuaries' Standards of Practice* applicable for the date of calculation of the package.

For members who did not receive a pension package, the claim is based on the assumptions described in *Section 3500 – Pension Commuted Values of the Canadian Institute of Actuaries' Standards of Practice* applicable for the date of transfer.

As instructed by Nortel Canada and the Monitor, the claim is grossed-up by an effective 10% for income tax.

NNC-NNL11755981 / 46

*For deceased pensioners and deceased members*

The claim equals the total monthly benefits that should have been paid to the deceased pensioners between January 14, 2009 and date of death. No interest is assumed in this calculation.

As instructed by Nortel Canada and the Monitor, the claim is grossed-up by an effective 10% for income tax.

00157

**Nortel Networks Limited**

Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date



**4**

# Membership Data

This valuation is based on the membership data as at December 31, 2010 provided by Nortel Canada, supplemented by the Notice Period data as calculated per the proposed compensation claims methodology.

We have not independently verified the accuracy or completeness of the data except to the extent required by generally accepted professional standards and practices. Mercer will not be held responsible for any liability arising from the use of incomplete, inaccurate or not up-to-date data or documentation. We have applied tests for internal consistency, as well as for consistency with the data used for the previous valuation. These tests were applied to membership reconciliation, basic information (date of birth, date of hire, date of membership, gender, etc.), earnings, and service. The results of these tests were satisfactory. Individual claim statements will be sent to all members to communicate the claim amount and confirm their data and should there be changes to the data, their claim will be adjusted according to the claims resolution process to be approved by the Court.

NNC-NNL11755981 / 48

00158

**Nortel Networks Limited**

Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date

## Membership Statistics

### Active Members

| | Non-Union | Union |
|---|---|---|
| **Number with TRA or RAP benefits** | **73** | **2** |
| ▪ Average age at 12.31.2010 | 55.9 | 57.1 |
| ▪ Average best average earnings at 12.31.2010 | $117,925 | N/A |
| ▪ Average pensionable service at 12.31.2010 (in years) | 24.7 | 21.2 |
| **Number with Excess Plan benefits** | **2[27]** | **N/A** |
| ▪ Average age at 12.31.2010 | 60.7 | - |
| ▪ Average best average earnings / final average earnings at 12.31.2010 | $235,230 | - |
| ▪ Average pensionable service at 12.31.2010 (in years) | 18.4 | - |

---

[27] Both active members with Excess Plan benefits are in Part I of the Managerial Plan.

**Mercer (Canada) Limited**

28

**Nortel Networks Limited**              Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date    00159

## LTD Claimants

| | Non-Union | Union |
|---|---|---|
| **Number with Canadian SERP and Excess Plan benefits** | 1[28] | N/A |
| ▪ Average age at 12.31.2010 | * | - |
| ▪ Average final average earnings at 12.31.2010 | * | - |
| ▪ Average pensionable service at 12.31.2010 (in years) | * | - |
| **Number with TRA or RAP benefits** | 124 | 124 |
| ▪ Average age at 12.31.2010 | 56.6 | 56.7 |
| ▪ Average best average earnings / final average earnings at 12.31.2010 | $55,797 | N/A |
| ▪ Average pensionable service at 12.31.2010 (in years) | 26.8 | 30.6 |
| **Number with Lost Pension Accrual (DB) claim – Part I Managerial Plan or Program I Negotiated Plan** | 25 | 9 |
| ▪ Average age at 12.31.2010 | 49.0 | 50.2 |
| ▪ Average best average earnings at 12.31.2010 | $48,123 | N/A |
| ▪ Average pensionable service at 12.31.2010 (in years) | 17.2 | 16.0 |
| **Number with Lost Pension Accrual (DB) claim – Part II Managerial Plan** | 34 | N/A |
| ▪ Average age at 12.31.2010 | 52.0 | - |
| ▪ Average final average earnings at 12.31.2010 | $76,667 | - |
| ▪ Average pensionable service at 12.31.2010 (in years) | 16.8 | - |
| **Number with Lost Pension Accrual (DC) Claim – Part III of Managerial Plan and Part II of Negotiated Plan** | 56 | 3 |
| ▪ Average age at 12.31.2010 | 48.4 | 52.0 |
| ▪ Average earnings | $80,593 | $59,016 |
| ▪ Average annual Company DC contributions | $2,254 | $2,361 |

---

[28] This member is in Part I of the Managerial Plan.  The data is not shown for privacy reason.

NNC-NNL11755981 / 50

00160

**Nortel Networks Limited**                     Preliminary Valuation of Non-Registered Pension Benefits
                                                        for Claim Purposes as at the Determination Date

### Pensioners and Survivors[29]

|  | Non-Union | Union |
|---|---|---|
| **Number with TRA or RAP benefits** | **449** | **306**[30] |
| ▪ Average age | 61.8 | 61.3 |
| ▪ Average monthly benefit at 1.14.2009 | $960 | $867 |
| ▪ Average years of remaining payments | 2.9 | 2.6 |
| **Number with Excess Plan benefits** | **260** | **N/A** |
| ▪ Average age | 65.7 | - |
| ▪ Average monthly benefit at 1.14.2009 | $2,285 | - |
| **Number with Canadian SERP benefits** | **102** | **N/A** |
| ▪ Average age | 70.7 | - |
| ▪ Average monthly benefit at 1.14.2009 | $3,583 | - |

### Deferred Vested Members

|  | Non-Union | Union |
|---|---|---|
| **Number with Excess Plan benefits** | | **N/A** |
| ▪ Received a pension package after December 31, 2008 | 8 | |
| ▪ Did not receive a pension package after December 31, 2008 | 14 | |
| **Number with Canadian SERP benefits** | 1[31] | **N/A** |
| **Number with IPP benefits** | 22 | **N/A** |

---

[29] Headcounts include deceased pensioners, deceased members and survivors, but the average ages exclude such members whose date of birth is not available

[30] Including 47 Precision members (37 retired prior to January 14, 2009 and 10 retired after January 14, 2009). Statistics on average age, monthly benefit and years of remaining payments provided here exclude the 10 Precision members retired after January 14, 2009 whose claim is based on the RAP lump sum calculated by Precision.

[31] Data is not shown for privacy reason.

**Mercer (Canada) Limited**                                                             30

NNC-NNL11755981 / 51

### Terminated Members, Terminated Canadian Service Members and Members Retired on or after January 14, 2009
### (Before Adjustment for Notice Period)

|  | Non-Union | Union |
|---|---|---|
| **Number with TRA or RAP benefits** | | |
| ▪ SPLA / Salary Continuance / Outstanding Severance | 34 | 3 |
| ▪ Other Nortel Canada members | 318 | 44 |
| **Number with Excess benefits** | | |
| ▪ SPLA / Salary Continuance / Outstanding Severance | 3 | - |
| ▪ Other Nortel Canada members | 49 | - |
| **Number with IPP benefits** | 2 | - |

### Members Affected by 2009/10 Transactions
### (Before Adjustment for Notice Period)

|  | Non-Union | Union |
|---|---|---|
| **Number with TRA or RAP benefits** | | |
| ▪ Avaya | 61 | 3 |
| ▪ Ericsson | 62 | - |
| ▪ Ciena | 111 | 2 |
| ▪ Ericsson / Kapsch | - | - |
| ▪ Genband | 52 | 2 |
| **Number with Excess Plan benefits[32]** | | N/A |
| ▪ Avaya | - | - |
| ▪ Ericsson | 1 | - |
| ▪ Ciena | 4 | - |
| ▪ Ericsson / Kapsch | - | - |
| ▪ Genband | - | - |

---

[32] All 2009/10 Sales Members with Excess Plan benefits are in Part I of the Managerial Plan.

**Mercer (Canada) Limited**                                                31

Nortel Networks Limited            Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date            00162

### Terminated Members with a Notice Period

| | Number of Members with a Notice Period | Number of Members with an Increased Claim[33] Due to Notice Period | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | TRA / RAP (already has a claim without Notice Period) | TRA / RAP (new claim) | Excess Plan | SERP | RPP DB Accrual | RPP DC Accrual |
| SPLA / Salary Continuance / Outstanding Severance | 304 | 12 | 2 | - | - | 8 | 201 |
| 2009/10 Transaction Members | | | | | | | |
| ▪ Avaya | 814 | 49 | 12 | - | - | 10 | - |
| ▪ Ericsson | 895 | 51 | 4 | - | - | 15 | - |
| ▪ Ciena | 1,298 | 98 | 6 | 2 | - | 28 | 1,247 |
| ▪ Ericsson / Kapsch | 7 | - | - | - | - | - | - |
| ▪ Genband | 476 | 38 | 8 | - | - | 9 | 463 |
| Other Terminated Members | 1,221 | 67 | 5 | 1 | - | 22 | 1,154 |

### Union Members Eligible for Lost Pension Equivalent Claim

| | Non-Union | Union |
| --- | --- | --- |
| **Number with Pension Equivalent Claim** | N/A | 13 |

---

[33] A claim may increase, compared to the claim at the member's date of termination without the Notice Period, due to additional benefit accrual during the Notice Period, or the inclusion of the Notice Period would allow the member to meet the eligibility requirements for a better benefit (e.g. Rule of 55). However, a claim may decrease since the member is assumed to terminate at the end of the Notice Period and miss the benefit payments that he would have received before the Notice Period end date. The above chart only includes members whose claim has been increased due to the Notice Period.

NNC-NNL11755981 / 53

**Nortel Networks Limited**          Preliminary Valuation of Non-Registered Pension Benefits    00163
                                     for Claim Purposes as at the Determination Date



**5**

## Summary of Benefit Eligibility Requirements

The following table summarizes the eligibility requirements for a member to receive a
benefit by plans

NNC-NNL11755981 / 54

| Eligibility to Receive Benefit | | | | |
|---|---|---|---|---|
| | **TRA (Non-Union) and RAP (Union)** | **Excess Plan** | **SERP** | **RPP DB and RPP DC** |
| **Managerial and Non-Negotiated (Non-Union)** | | | | |
| Traditional Grandfathered Part I and II | <u>Part I:</u> Retire directly from active or LTD status (i.e. attained age 55 or 30 years of service under work force reduction) with 4 years of service and commence the monthly pension immediately at retirement OR Terminate before age 55 under work force reduction provisions with at least 20 years of service <u>Part II:</u> Not eligible to receive any benefit | Terminate or retire with a DB pension benefit that is capped by the maximum pension limits under the *Income Tax Act.* | Designated executives who terminate or retire after the earliest of: <ul><li>age 65;</li><li>age 60 with 20 years of service;</li><li>age 58 with 85 points (age + service); or</li><li>for Current Revised SERP and New SERP only, age 60 with 5 years of service, provided hired directly onto the Executive Leadership Team after December 31, 1998</li></ul> | Continue to accrue RPP DB pensionable and eligible service until termination or retirement date Not eligible to receive RPP DC contributions |
| Traditional Non-Grandfathered Part I and II | Same as Traditional Grandfathered Part I members | Same as Traditional Grandfathered Part I and II members | Same as Traditional Grandfathered Part I and II members | Continue to accrue RPP DB eligible service but not pensionable service since December 31, 2007 In addition, the members also receive RPP DC contributions until termination or retirement |

NNC-NNL11755981 / 55

00164

TR45610

**Nortel Networks Limited**

Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date

A/C *

| Eligibility to Receive Benefit | | | | |
|---|---|---|---|---|
| | **TRA (Non-Union) and RAP (Union)** | **Excess Plan** | **SERP** | **RPP DB and RPP DC** |
| **Managerial and Non-Negotiated (Non-Union)** | | | | |
| Balanced | Not eligible to receive any benefit | Same as Traditional Grandfathered Part I and II members for members with a suspended RPP DB pension benefit | Same as Traditional Grandfathered Part I and II members for members with a suspended RPP DB pension benefit | Eligible to receive RPP DC contributions until termination or retirement<br><br>If addition, for members with a suspended RPP DB pension, they also accrue RPP DB eligible service but not pensionable service |
| Investor | Not eligible to receive any benefit | Same as Traditional Grandfathered Part I and II members for members with a suspended RPP DB pension benefit | Same as Traditional Grandfathered Part I and II members for members with a suspended RPP DB pension benefit | Eligible to receive RPP DC contributions since December 31, 2007 until termination or retirement<br><br>If addition, for members with a suspended RPP DB pension, they also accrue RPP DB eligible service but not pensionable service |
| All employees hired on or after January 1, 2008 | Not eligible to receive any benefit | Not eligible to receive any benefit | Not eligible to receive any benefit | Eligible to receive RPP DC contributions if vested at the date of termination |

NNC-NNL11755981 / 56

00165

TR45610

**Nortel Networks Limited**

| Eligibility to Receive Benefit | | | | |
|---|---|---|---|---|
| | **TRA (Non-Union) and RAP (Union)** | **Excess Plan** | **SERP** | **RPP DB and RPP DC** |
| **Negotiated (Union)** | | | | |
| Program I | Retire directly from active or LTD status (i.e. attained age 55 or 30 years of service under work force reduction) with 10 years of service and commence the monthly pension immediately at retirement | Not eligible to receive any benefit | Not eligible to receive any benefit | Continue to accrue RPP DB pensionable and eligible service until termination or retirement date<br><br>Not eligible to receive RPP DC contributions |
| Program II | Not eligible to receive any benefit | Not eligible to receive any benefit | Not eligible to receive any benefit | Eligible to receive RPP DC contributions until termination or retirement<br><br>If addition, for members with a suspended RPP DB pension, they also accrue RPP DB eligible service but not pensionable service |

A/C *

| Eligibility to Receive Benefit | | | | |
|---|---|---|---|---|
| | TRA (Non-Union) and RAP (Union) | Excess Plan | SERP | RPP DB and RPP DC |
| **Surviving Spouses and Beneficiaries** | | | | |
| Surviving spouses and beneficiaries of deceased pensioners | Present value of any remaining monthly payments payable to the deceased pensioners | In accordance with the pension form elected by the deceased pensioner at retirement, if any | In accordance with the pension form elected by the deceased pensioner at retirement, if any | In accordance with the RPP DB pension form elected by the deceased pensioner at retirement, if any |
| Surviving spouses and beneficiaries of deceased members who have not commenced a monthly pension | Not eligible for any benefit | A pre-retirement death benefit is payable to the surviving spouse or the beneficiary if there is no spouse or the spouse has waived the pre-retirement death benefit if the deceased member's DB pension is capped by the maximum pension limits under the Income Tax Act at the date of death | Not eligible for any benefit | A pre-retirement death benefit is payable to the surviving spouse or the beneficiary if there is no spouse or the spouse has waived the pre-retirement death benefit |

00167

TR45610

---

Appendix A

---

# Summary of Plan Provisions for the Nortel Networks Limited Transitional Retiring Allowance (TRA)

## Introduction

This Plan provides benefits to employees of Nortel Networks Limited, Nortel Networks Technology Corp. and Prism who retire under the Part I provision of the Nortel Networks Managerial Pension Plan after completion of 4 years of service. Members of the Part II, Balanced and Investor programs are not entitled to TRA, except for those Non-Grandfathered Part I Members who joined the Balanced Program on January 1, 2008.

The plan was amended effective January 1, 2008 to reflect the plan changes announced in June 2006 ("CARP changes"). For members who were not grandfathered in the plan provisions at December 31, 2007:

- their pensionable service for TRA accrual purposes ceases accruing effective December 31, 2007 (but not pensionable service for early retirement eligibility purposes); and

- their Best Average Earnings are determined as at December 31, 2007.

Effective September 30, 2010, the Managerial Plan was amended such that all DB service accruals and DC contributions ceased on that date. As the benefit accruals under the TRA Plan are tied with the DB service accruals under the Managerial Plan, members ceased to accrue further TRA benefits effective September 30, 2010 as well.

The following is a more detailed summary of the plan's main provisions in effect on December 31, 2007, including the CARP changes. It is not intended as a complete description of the plan.

NNC-NNL11755981 / 59

**Nortel Networks Limited**                    Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date **00169**

## Grandfathered Members

Grandfathered Members are members who, as at December 31, 2007:

- are at least age 60;
- have at least 30 years of pensionable service;
- are at least age 55 with at least 70 points (age plus years of pensionable service); or
- are on long term disability as at December 31, 2007 and remain on long term disability
- are recovered from long term disability and meet the above age and/or service requirements at the date of recovery

Otherwise, the member is a Non-Grandfathered Member.

## Contributions

No employee contributions are required. The Company pays benefits out of operating income.

## Retirement Dates

The normal, early and postponed retirement dates are the same as in the Nortel Networks Managerial Pension Plan.

## Retirement Benefits

The TRA benefit is a lump sum amount based on earnings, TRA benefit rate, years of employment and age at retirement. The TRA benefit rate is based on the following schedule:

### TRA Benefit Rate

| Benefit Group | Benefit Rate |
|:---:|:---:|
| 1 | $19 |
| 2 | $20 |
| 3 | $22 |
| 4 | $25 |
| 5 | $27 |

With respect to Prism employees transferred from Microtel in accordance with the Purchase and Sale Agreement, service prior to January 1, 1990 is not covered under the TRA Plan.

For Non-Grandfathered Members, the service for benefit accrual purposes ceased accruing as at December 31, 2007 and the best 3 years' average annual salary is

NNC-NNL11755981 / 60

determined as at December 31, 2007, but the completed years of service for the determination of the months of TRA continue to accrue after December 31, 2007.

Effective September 30, 2010, the Managerial Plan was amended such that all DB service accruals and DC contributions ceased on that date. As the benefit accruals under the TRA Plan are tied with the DB service accruals under the Managerial Plan, members ceased to accrue further TRA benefits effective September 30, 2010 as well. For the purpose of the claim calculation, members are assumed to continue to accrue service after September 30, 2010 until the date of termination or the end of the Notice Period.

**Normal Retirement**

If a member retires at normal retirement date, the TRA benefit in a lump sum equals the sum of (a) plus (b) as follows:

(a) the TRA benefit rate, multiplied by the number of years of employment service, multiplied by the months of TRA, where the months of TRA are equal to:

<div align="center">

**Months of TRA**

| Completed years of service | Number of months |
|---|---|
| Less than 4 | 0 |
| 4-10 | 6 |
| 11-16 | Completed years of service less 5 |
| 17-22 | Completed years of service less 4 |
| 23, 24 | Completed years of service less 3 |
| 25, 26 | Completed years of service less 2 |
| 27, 28 | Completed years of service less 1 |
| 29, 30 | Completed years of service |
| 31, 32 | Completed years of service plus 1 |
| 33, 34 | Completed years of service plus 2 |
| 35, 36 | Completed years of service plus 3 |
| 37, 38 | Completed years of service plus 4 |
| 39 and over | 44 |

</div>

(b) 3% of the employee's best 3 years' average annual salary in excess of $32,000, multiplied by the employee's completed years of service, in excess of 10.

**Early retirement pension**

If a member retires early under company initiated or employee initiated retirement with an unreduced or subsidized pension (Class A, B or C), the TRA benefit in a lump sum equals the sum of (a) plus (b) plus (c) as follows:

(a) the TRA benefit rate, multiplied by the number of completed years of service, multiplied by the value of an annuity payable for the number months of TRA, under normal retirement, determined at 10.25%;

(b) $11.00 multiplied by the number of completed years of service, multiplied by the value of a temporary annuity until age 65, determined at 10.25%;

(c) 3% of the employee's best 3 years' average annual salary in excess of $32,000, multiplied by the employee's completed years of service, in excess of 10 years.

If the member is entitled to an actuarially reduced pension, the TRA will be the actuarial equivalent of the TRA that would be payable at the first age when a Class A, B or C pension would become available to the member, given his pensionable service at retirement.

**Early retirement supplement (ERS)**

Any early retirement supplement payable under the Nortel Networks Managerial Pension Plan is subtracted from the TRA benefit.

## Survivor Benefits

**Member's Death before retirement**

No benefits are payable.

**Member's Death after retirement**

The remaining TRA payments continue to be paid to the surviving beneficiary in equal monthly instalments. All monthly benefits payable are guaranteed.

## Termination Benefits

No benefits are payable upon termination except under workforce reduction conditions. An employee is considered terminated if he or she takes a commuted value under the Managerial Plan.

**Special Termination Benefits**

At the discretion of the company, the following special TRA benefits are provided under workforce reduction conditions:

Under the SPLA policy, up to 2 years of service is provided for Traditional Part I members who would be eligible to retire under Class A, B or C within 2 years. The TRA benefit is determined based on Best Average Earnings at the start of the SPLA but using age and service (including bridged service) at the time of retirement, i.e. at the end of the

NNC-NNL11755981 / 62

SPLA.

For Traditional Part I members with at least 20 years of continuous service but neither eligible to retire nor eligible to be bridged, such member is eligible to receive 50% of the TRA amount payable at the TRA eligibility age[34] based on pensionable service at date of termination. The TRA lump sum payable would be discounted from the TRA eligibility age to the termination age.

---

[34] Earliest of age 65, age 60 with age plus pensionable service equals at least 80, or age 55 with age plus pensionable service equals at least 85.

NNC-NNL11755981 / 63

---

Appendix B

---

# Summary of Plan Provisions for the Nortel Networks Limited Retirement Allowance Plan (RAP)

## Introduction

This Plan provides benefits to employees of Nortel Networks who retire under the Program I provision of the Negotiated Plan after completion of 10 years of service. Program II members are not entitled to RAP.

Notwithstanding the above, Program I members who transferred to a non-union position after April 30, 2000 and who have elected to retain their Program I benefits will be entitled to a portion of the RAP based on their service accrued under Program I to date of transfer over the member's total service.

Effective September 30, 2010, the Negotiated Plan was amended such that all DB service accruals and DC contributions ceased on that date. As the benefit accruals under the RAP Plan are tied with the DB service accruals under the Negotiated Plan, members ceased to accrue further RAP benefits effective September 30, 2010 as well.

## Contributions

No employee contributions are required. The Company pays benefits out of operating income.

## Retirement Dates

The normal, early and postponed retirement dates are the same as in the Nortel Canada Negotiated Pension Plan.

**Nortel Networks Limited**       Preliminary Valuation of Non-Registered Pension Benefits
                                    for Claim Purposes as at the Determination Date       00174

## Retirement Benefits

The basic RAP benefit is a monthly amount based on the basic RAP benefit rate, years of employment and age at retirement. Additional RAP is a temporary monthly supplement for retirement before age 65 in addition to the basic RAP benefit. The basic and additional RAP benefit rates are based on the following schedules:

### RAP Benefit Rates before and after 2006 CLA
### CAW Unions

| | Before 2006 CLA | | After 2006 CLA | |
|---|---|---|---|---|
| **Benefit Group** | **January 1, 2005** | **January 1, 2006** | **January 1, 2007** | **January 1, 2008** |
| Basic RAP | | | | |
| 1 | $28.11 | $28.67 | $29.23 | $29.79 |
| 2 | $29.59 | $30.18 | $30.77 | $31.36 |
| 3 | $32.55 | $33.20 | $33.85 | $34.50 |
| 4 | $36.98 | $37.72 | $38.46 | $39.20 |
| 5 | $39.94 | $40.74 | $41.54 | $42.34 |
| Additional RAP | | | | |
| 1 to 5 | $15.97 | $16.28 | $16.60 | $16.92 |

NNC-NNL11755981 / 65

**Nortel Networks Limited**     Preliminary Valuation of Non-Registered Pension Benefits for Claim Purposes as at the Determination Date     00175

### RAP Benefit Rates before and after 2007 CLA
### CUCW#1 Unions

| Benefit group | Before 2007 CLA Jan. 1, 2006 | After 2007 CLA Jan. 1, 2007 | Jan. 1, 2010 | Jan. 1, 2011 |
|---|---|---|---|---|
| Basic Rap | | | | |
| 1 | $27.01 | $27.55 | $27.82 | $28.09 |
| 2 | $28.44 | $29.00 | $29.29 | $29.57 |
| 3 | $31.28 | $31.90 | $32.22 | $32.53 |
| 4 | $35.54 | $36.25 | $36.61 | $36.96 |
| 5 | $38.39 | $39.15 | $39.54 | $39.92 |
| Additional RAP | | | | |
| 1 to 5 | $15.34 | $15.65 | $15.80 | $15.96 |

### RAP Benefit Rates before and after 2007 CLA
### CUCWO (formerly COEU) Union

| Benefit group | Before 2007 CLA June 19, 2003 | After 2007 CLA Jan. 1, 2007 | Jan. 1, 2008 | Jan. 1, 2009 |
|---|---|---|---|---|
| Basic Rap | | | | |
| 1 | $27.55 | $28.10 | $28.38 | $28.65 |
| 2 | $29.00 | $29.58 | $29.89 | $30.16 |
| 3 | $31.90 | $32.54 | $32.86 | $33.18 |
| 4 | $36.25 | $36.98 | $37.34 | $37.70 |
| 5 | $39.15 | $39.94 | $40.33 | $40.72 |
| Additional RAP | | | | |
| 1 to 5 | $15.65 | $15.96 | $16.12 | $16.27 |

NNC-NNL11755981 / 66

### RAP Benefit Rates for Divested Unions (e.g. CEP, CUCW#2)

| Benefit Group | January 1, 1998 |
|---|---|
| Basic RAP | |
| 1 | $24.31 |
| 2 | $25.60 |
| 3 | $28.16 |
| 4 | $32.00 |
| 5 | $34.56 |
| Additional RAP | |
| 1 to 5 | $13.81 |

### Normal retirement

If a member retires at normal retirement date, the RAP will be a lump sum equal to the basic RAP benefit rate, multiplied by the number of years of service, multiplied by the months of RAP, where the months of RAP are:

Months of RAP

| Completed years of service | Number of months |
|---|---|
| Less than 10 | 0 |
| 10 | 5 |
| 11-16 | Completed years of service less 5 |
| 17-22 | Completed years of service less 4 |
| 23, 24 | Completed years of service less 3 |
| 25, 26 | Completed years of service less 2 |
| 27, 28 | Completed years of service less 1 |
| 29, 30 | Completed years of service |
| 31, 32 | Completed years of service plus 1 |
| 33, 34 | Completed years of service plus 2 |
| 35, 36 | Completed years of service plus 3 |
| 37, 38 | Completed years of service plus 4 |
| 39 and over | 44 |

### Early retirement benefit

If a member retires early with an unreduced pension (Class A, B or C) under company-initiated or employee-initiated retirement, the RAP benefits equal a monthly amount which is the sum of (a) and (b) as follows, payable until age 65:

(a) the basic RAP benefit rate, multiplied by the number of completed years and months of service, multiplied by the value of an annuity certain payable for the number of months of RAP determined at 10.25%, and divided by the value of a temporary annuity until age 65 determined at 10.25%, plus

(b) the additional RAP benefit rate, multiplied by the number of completed years and months of service.

If the member is entitled to an actuarially reduced pension (Class E), the RAP will be the actuarial equivalent of the RAP that would otherwise be payable at the first age when a Class A, B or C pension would become available to the member, given his pensionable service at retirement.

### Early retirement supplement (ERS)

All members who were entitled to an unreduced pension based on their age and service as at December 31, 1987 are entitled to an ERS under the Nortel Networks Negotiated pension plan. The monthly ERS benefit is $10.00 per year of service to December 31, 1987, payable until age 65.

Any early retirement supplement payable under the Nortel Networks Negotiated pension plan is subtracted from the RAP benefit.

## Survivor Benefits

### Member's Death before retirement

With the exception of CEP* & CUCW#2* members, eligible dependants of a member who dies in service after having met the conditions for a Class A, B, C or E pension will receive RAP payments that would have otherwise been made to the member had the member retired immediately prior to his death. The effective dates for this change are one day after ratification of the 2000 collective labour agreements.

Prior to this change, no benefits were payable upon death prior to retirement.

* New 2000 contracts have not been negotiated for CEP and CUCW#2 members due to sale of businesses in 2000.

### Member's Death after retirement

The remaining RAP payments may be paid to the surviving beneficiary in equal monthly instalments, or converted to a lump sum. All monthly benefits are payable are guaranteed.

## Termination Benefits

No benefits are payable upon termination. An employee is considered terminated if he or she takes a commuted value under the Negotiated Plan.

### Special Termination Benefits

At the discretion of the company, special RAP benefits are provided under workforce reduction conditions.

Under the Special Leave of Absence prior to pension (SPLA) policy, up to 2 years of service is provided for Program I members who would be eligible to retire under Class A, B or C within 2 years. RAP benefit is determined based on RAP rates at the start of the SPLA but using age and service (including bridged service) at the time of retirement, i.e. at the end of the SPLA.

## Special RAP Benefits for Precision Members

Subject to conditions as stipulated in the Purchase and Sale Agreements, certain divested employees who were Program I members of the Negotiated plan at the time the business units were divested and continued employment with the purchaser, shall be entitled to a portion of the RAP benefits based on accrued Nortel Canada service and RAP benefit rates in effect as at the date of divestiture.

The following bullets summarise the special conditions for payment of RAP to divested Program I members

- The divested employee is entitled to a monthly or lump sum RAP, provided that the divested employee retires from the purchaser and elects to receive an immediate pension[35] from the Negotiated Plan and that the divested employee has not commuted his Nortel Canada pension or previously received a RAP benefit from Nortel Canada as at the sale date. The RAP benefits are pro-rated on the employee's total service with Nortel Canada and with the purchaser, where the portion payable by Nortel Canada is with respect to service accrued with Nortel Canada.

---

[35] Provided that the divested employee has met conditions for an immediate pension from the Negotiated plan and has satisfied the requirement for RAP benefits, i.e. 10 years of combined service from Nortel and the purchaser.

NNC-NNL11755981 / 69



Appendix C

# Summary of Plan Provisions for the Supplementary Executive Retirement Plan (SERP)

## Introduction

The SERP is comprised of three components, an Original SERP, a Current Revised SERP and a New SERP. A qualifying executive may be eligible to receive benefits from one or more of these components. If an executive is eligible for benefits from more than one component, the benefit is based on the SERP provisions which produce the highest benefit.

The SERP was amended effective January 1, 2008 to reflect the plan changes announced in June 2006 ("CARP changes"). For members who are not grandfathered in the current plan provisions at December 31, 2007:

- their Credited Service (under the Original SERP and the Current Revised SERP) and Percentage Credits (under the New SERP) cease accruing effective December 31, 2007 (but not pensionable service for early retirement eligibility purposes); and

- their Final Average Earnings are determined as at December 31, 2007.

The SERP was wound up as at December 31, 2010.

## Grandfathered Members

Grandfathered Members are members who, as at December 31, 2007:

- are at least age 60;
- have at least 30 years of pensionable service; or
- are at least age 55 with at least 70 points (age plus years of pensionable service).

NNC-NNL11755981 / 70

Otherwise, the member is a Non-Grandfathered Member.

# Original SERP

## Introduction

This Plan provides benefits to all North American executives of Nortel Networks in Band 11 and above at retirement. Effective January 1, 1999, there will not be any new entrants into the Original SERP.

## Eligibility

A member of the Original SERP will become eligible for benefits at the earliest of:

- 65th birthday;

- 60th birthday with at least 20 years of retirement eligibility service; or

- 58th birthday and the sum of age and actual years of service total 85 or more.

## Normal Retirement Pension

On retirement, a member is entitled to an annual pension equal to 1.3% of Final Average Earnings for each year of Credited Service. Final Average Earnings includes base salary, a portion of the bonus and commissions. The portion of the bonus that is included for this purpose is based on the member's Band level.

For Non-Grandfathered Members, Credited Service ceases accruing effective December 31, 2007 and Final Average Earnings are determined as at December 31, 2007.

## Early Retirement Pension

If a SERP member retires early, the member's pension will be determined based on Final Average Earnings with bonus inclusion reduced by 1/3 of the bonus each year below age 60. This benefit is not payable if a member terminates prior to age 58.

For Non-Grandfathered Members, Credited Service ceases accruing effective December 31, 2007 and Final Average Earnings are determined as at December 31, 2007.

## Retirement Benefit Cap

The total annual pension payable from the plan cannot exceed 70% of the final 12 months base salary.

NNC-NNL11755981 / 71

**Nortel Networks Limited**                              Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date   00181

### Survivor Benefit

On death after retirement, an eligible surviving spouse will receive a benefit for life, of 60% of the retirement benefit calculated under this plan, including the portion applicable to the special pension credits.

## Current Revised SERP

### Introduction

This plan provides benefits to Canadian executives who elected Part I and did not switch to Part II.

Effective January 1, 2000, there were no new entrants into the Current Revised SERP.

### Qualification for SERP

Effective January 1, 1999 through to December 31, 1999, only senior executives with an annual base salary of $200,000 or more qualified for the SERP program. However, senior executives who qualified under the prior eligibility rules (prior Band 11+) by December 31, 1998, continue to participate in the SERP program beyond 1998.

### Eligibility

A member of the Current Revised SERP become eligible for benefits at the earliest of:

- 65th birthday;

- 60th birthday with at least 20 years of retirement eligibility service;

- 58th birthday and the sum of age and actual years of service total 85 or more; or

- age 60 with at least 5 years of continuous service, provided the member was hired directly onto the Executive Leadership Team after December 31, 1998.

### Retirement Pension

On retirement, a member is entitled to an annual pension equal to 1.3% of Final Average Earnings for each year of Credited Service. Final Average Earnings are the average of eligible earnings over a consecutive three-year period. Eligible earnings include base salary, bonuses and commissions. However, bonuses and commissions are included only up to 60% of base salary.

For Non-Grandfathered Members, Credited Service ceases accruing effective December 31, 2007 and Final Average Earnings are determined as at December 31, 2007.

NNC-NNL11755981 / 72

Nortel Networks Limited    Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date    00182

## Early Retirement Pension

If a SERP member retires early, the member's pension equals the normal retirement pension reduced by 7% per year for each year prior to age 60 (reduction pro-rated for partial years).

## Retirement Benefit Cap

The total annual pension payable from the plan cannot exceed 60% of final average earnings.

## Survivor Benefit

If a member dies after retirement an eligible surviving spouse will receive a benefit for life, of 60% of the retirement benefit calculated under this plan, including the portion applicable to the special pension credits.

# New SERP

## Introduction

This plan provides benefits to Canadian executives who elected to stay in Part I or Part II effective May 1, 2000 (rather than switching to either the Balanced program or the Investor program.

Effective January 1, 2000, there were no new entrants into the New SERP.

## Qualification for SERP

Effective January 1, 1999 through to December 31, 1999, only senior executives with an annual base salary of $200,000 or more qualified for the SERP program. However, senior executives who qualified under the prior eligibility rules (prior Band 11+) by December 31, 1998, continue to participate in the SERP program beyond 1998.

## Eligibility

A member of the New SERP will become eligible for benefits at the earliest of:

- 65th birthday;

- 60th birthday with at least 20 years of retirement eligibility service;

- 58th birthday and the sum of age and actual years of service total 85 or more; or
- age 60 with at least 5 years of continuous service, provided hired directly onto the Executive Leadership Team post December 31, 1998.

NNC-NNL11755981 / 73

**Nortel Networks Limited**                 Preliminary Valuation of Non-Registered Pension Benefits    00183
                                                       for Claim Purposes as at the Determination Date

## Normal Retirement Benefit

On retirement, a member is entitled to a lump sum value equal to an accumulated percentage of their Final Average Earnings. The accumulated percentages are calculated according to the following table:

| Points (Age & Service) | Percentage Credit |
|---|---|
| Up to 45 points | 2% |
| 46 to 55 points | 5% |
| 56 to 65 points | 20% |
| 66 to 75 points | 22% |
| over 75 points | 24% |

Final Average Earnings are the average of eligible earnings over a consecutive three-year period. Eligible Earnings include base salary, bonuses and commissions. However, bonuses and commissions are included only up to 60% of base salary. The lump sum value can be converted on an actuarial equivalent basis to a pension. It is payable as a 60% joint and survivor if the member is married and has elected a joint and survivor pension, and payable as a lifetime pension otherwise.

For Non-Grandfathered Members, Percentage Credits cease accruing effective December 31, 2007 and Final Average Earnings will be determined as at December 31, 2007.

## Early Retirement Pension

There is no reduction if a SERP member retires early.

## Retirement Benefit Cap

The total lump sum value payable from the plan cannot exceed 550% of final average earnings.

NNC-NNL11755981 / 74

**Nortel Networks Limited**  Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date  00184



Appendix D

# Summary of Plan Provisions for the Nortel Networks Limited Managerial and Non-Negotiated Excess Plan (Excess Plan)

The Excess Plan is a non-funded arrangement which provides benefits which, in the absence of the maximum pension limits imposed under the *Income Tax Act* and in the absence of any funding shortfall, would be payable under the Managerial Plan.

For greater clarity, under Part II of the plan, if a member elects an immediate or deferred pension option, post-retirement indexing of the total pension payable under both the Excess Plan and the Managerial Plan is limited to 4.0% per annum and pre-retirement increases are limited such that the cumulative increase for any given member shall not exceed the cumulative increase in the Industrial Aggregate Wage from the member's date of termination to the date of pension commencement.

In contrast, if a Part II member elects a commuted value in settlement of benefit entitlement, the Excess Plan pays any excess of the member's Cash Value over the commuted value of the pension payable under the Managerial Plan. This excess commuted value is paid in the form of a 15-year term certain annuity if this value exceeds 50% of the Final Average Earnings (as defined under Part II of the Managerial Plan) of the member. A lump sum cash payment may be made if this value is less than 50% of the Final Average Earnings of the member.

The Excess Plan was amended effective January 1, 2008 to reflect the plan changes announced in June 2006 ("CARP changes"). In addition, for Quebec Non-Grandfathered Members, the total pension payable under both the Excess Plan and the Managerial Plan will be the greater of:

NNC-NNL11755981 / 75

**Nortel Networks Limited**   Preliminary Valuation of Non-Registered Pension Benefits   00185
for Claim Purposes as at the Determination Date

- the pension calculated based on Best Average Earnings (under Part I) or Final Average Earnings (under Part II) determined as at December 31, 2007, or

- the pension payable under the Managerial Plan.

The Excess Plan was wound up as at December 31, 2010.

NNC-NNL11755981 / 76

**Nortel Networks Limited**

00186

---

Appendix E

---

# Summary of Plan Provisions for the Nortel International Pension Plan (IPP Plan)

## Eligibility

The Nortel International Pension Plan became effective January 1, 1996. The Plan provides benefits to those employees who have transferred permanently from employment in one country to another where the new employer does not sponsor a pension plan or where social security benefits will not be payable.

Effective March 1, 2005 membership in the Plan was frozen. No new entrants were eligible to join the Plan on or after March 1, 2005; however current active members will continue to accrue benefits.

Pensionable service includes only the period of Nortel Canada service when the above eligibility requirements were satisfied. Pensionable service is limited to 35 years.

## Normal Retirement Pension

If a member retires on his normal retirement date, he will be entitled to a monthly pension equals 1.67% of his Best Average Earnings multiplied by Pensionable Service reduced by:

a) benefits payable under the local pension plan; and

b) benefits payable from social security.

Best Average Earnings equals average Pensionable Earnings in the best 36 consecutive months out of the last 60 months of employment.

NNC-NNL11755981 / 77

**Nortel Networks Limited**    Preliminary Valuation of Non-Registered Pension Benefits
for Claim Purposes as at the Determination Date    00187

Pensionable Earnings equal base earnings, plus target compensation for employees on a sales incentive basis.

## Early Retirement Pension

If a member retires following the attainment of age 60, he will receive a pension without reduction for early commencement. The pension will be calculated at age 65 based on pensionable service and pensionable earnings to the pension commencement date. If he retires after age 55, but prior to age 60, his pension, calculated at age 65 based on pensionable service and earnings to the pension commencement date, will be reduced by 4% per year that the pension commencement date precedes age 60.

A member who terminates employment prior to age 55 may elect to commence his pension as early as age 55. In that event, his pension, calculated at age 65, will be reduced by 6% per year that the pension commencement date precedes age 65.

## Death Benefit

Upon retirement, the pension is payable for the lifetime of the member, with a guarantee of at least 60 payments in the event of death. If the member has a spouse at retirement, the spouse will receive the balance of the 60 payments at 100% of the pension and then receive a pension equals 60% of the pension payable prior to death. In lieu of a pension, the member has the option of receiving a lump sum payment equals the commuted value of the pension.

NNC-NNL11755981 / 78

00188

**Nortel Networks Limited**                    Preliminary Valuation of Non-Registered Pension Benefits
                                               for Claim Purposes as at the Determination Date

---

Appendix F

---

## Employer Certification

With respect to the Report on the Valuation of Non-Registered Pension Benefits and
Loss of Registered Pension Benefit Accruals for Claim Purposes as at the Determination
Date, I hereby certify that, to the best of my knowledge and belief:

- The membership data supplied to the actuary provides a complete and accurate
  description of all persons who are entitled to benefits under the terms of the Plans for
  service up to the date of the data provided and supplemented by those persons who
  became entitled to benefits during the Notice Period, all as outlined in Section 4.

- A copy of the plan documents and of all amendments made up to the date of the
  valuation were supplied to the actuary.

- All events subsequent to the valuation that may have an impact on the results of the
  valuation have been communicated to the actuary.

September 19, 2011
Date

Signed

John Shaughnessy
Name

HR Leader, Canada
Company and Title

**Mercer (Canada) Limited**                                                    58

**Nortel Networks Limited**

# MERCER

Mercer (Canada) Limited
161 Bay Street, PO Box 501
Toronto, Ontario  M5J 2S5

Consulting. Outsourcing. Investments.

Mercer (Canada) Limited

NNC-NNL11755981 / 80

# APPENDIX "C"

00190

19 September 2011

## Valuation of the Obligations of the
## Non-Pension Benefits for Claim Purposes
## as at the Determination Date

Nortel Networks Limited, Nortel Networks Corporation,
Nortel Networks Technology Corporation, Nortel Networks
International Corporation, Networks Global Corporation
(collectively, "Nortel Canada" or the "Company")

# MERCER

Consulting. Outsourcing. Investments.

NNC-NNL11755981 / 82

**Valuation of the Obligations of the Non-Pension Benefits
for Claim Purposes as at the Determination Date**

Nortel Canada

00191

# Contents

1. Introduction ........................................................................................................... 1

2. Valuation Results .................................................................................................. 6

3. Membership Data .................................................................................................. 8
   ▪ Member Headcount ........................................................................................ 9
   ▪ Summary of Data .......................................................................................... 10

4. Methods and Assumptions ................................................................................ 13
   ▪ Valuation Methods........................................................................................ 13
   ▪ Actuarial Assumptions ................................................................................ 15

Appendix A:   Summary of Plan Provisions for Post Retirement Benefits (including PRB for actives and LTD claimants)

Appendix B:   Summary of Plan Provisions for Benefits Provided to LTD Claimants

Appendix C:   Summary of Plan Provisions for Survivor Benefits

Appendix D:   Employer Certification

NNC-NNL11755981 / 83

**Valuation of the Obligations of the Non-Pension Benefits**
**for Claim Purposes as at the Determination Date**

Nortel Canada

00192



**1**

# Introduction

To Nortel Canada and Ernst & Young Inc. (the "Monitor").

In accordance with your request, we have performed a valuation of the Non-Pension Benefits (defined below) sponsored by Nortel Canada for purposes of determining the claim against the estate of Nortel Canada by the employees, former employees and their survivors for lost benefit entitlements. This report contains preliminary estimated liabilities for the identified Non-Pension Plans (defined below) and Plan members based on assumptions and methodologies as discussed with Nortel Canada and the Monitor. We understand that the liability figures provided in this report are expected to be used to determine an initial estimate of the per claimant liabilities for the specific benefits provided in this report. These liabilities, after potential adjustments for updates, will be used to determine the claim against the estate for the specified benefit, to the individual claimants.

This is subject to the approval of the Court in Nortel Canada's insolvency proceedings.

The following plans (collectively the "Non-Pension Plans" or the "Plans") and benefits (collectively the "Non-Pension Benefits") are covered in this report:

1. Post retirement medical and dental benefits[1] (PRB – M&D[2])
2. Survivor transition medical and dental benefits for eligible beneficiaries of existing pensioners (STB – accrual - M&D)
3. Post retirement life insurance (PRB – Life)
4. Post retirement additional death benefit (PRB – ADB)
5. Long term disability income benefits (LTD – Income)

---

[1]   Includes M&D benefits for surviving spouses in receipt of STB, SIB and others.

[2]   Note that any references for the dental plan for the LTD members, includes vision care and hearing costs (DVH plan), whereas for the PRB plans these costs are measured separately but included in PRB - M&D.

**Mercer (Canada) Limited**                                                       1

**Valuation of the Obligations of the Non-Pension Benefits**
**for Claim Purposes as at the Determination Date**

Nortel Canada

00193

6.  Medical and dental benefits for LTD[3] claimants (LTD – M&D[4])
7.  Basic Life insurance benefits for LTD[5] claimants (LTD – Life)
8.  Optional life insurance benefits for LTD claimants (LTD – Optional Life)
9.  Accidental death and dismemberment benefits for LTD claimants (LTD – AD&D)
10. Dependent life insurance benefits for LTD claimants (LTD – Dep Life)
11. Survivor transition benefits for members on LTD (LTD – STB – accrual)
12. Survivor income benefit plan (SIB)
13. Survivor transition (income) benefit plan (STB – in receipt)
14. Survivor transition (income) benefit plan for eligible beneficiaries of existing
    pensioners (STB – accrual)

Nortel Canada ceased all benefit payments under the Plans as at December 31, 2010.
The liabilities represent the present value as at December 31, 2010, of expected benefits
to be received/claimed after December 31, 2010, or for expected benefits to be
received/claimed after the end of the notice or severance period for terminated or
transferred employees to be Court approved, if later than December 31, 2010.[6]
Therefore, for purposes of the Non-Pension Plans outlined in this report, December 31,
2010 is the Determination Date.

For greater clarity, the aggregate claims presented in this report represent the sum of the
individual claimant liabilities calculated as at the Determination Date without any interest
adjustment to the date of the report or the date of settlement.

All amounts provided in this report are in Canadian dollars, unless specified otherwise.

The list of the Plans was prepared based on information provided by the Company.
Although we have included the above Plans, we understand that there has been no
Court decision on the proposed compensation claims methodology. Further, we make no
comment on the applicability of the assumptions used herein, including the
Determination Date, for any purpose other than the valuation of the liabilities with respect
to the termination of the Plans. The assumptions and methodologies used in this
valuation are described in Section 4 of this report.

---

[3]   LTD claimants with full benefit offsets (i.e. WSIB income benefit is greater than the LTD income
      benefit) that are still eligible for medical and dental benefits have been included in the information
      provided.

[4]   Note that any references for the dental plan for the LTD members, includes vision care and hearing
      costs (DVH plan), whereas for the PRB plans these costs are measured separately but included in
      PRB - M&D.

[5]   LTD claimants with full benefit offsets (i.e. WSIB income benefit is greater than the LTD income
      benefit) that are still eligible for life insurance benefits have been included in the information
      provided.

[6]   For the purpose of this report, terminated or transferred employees are (i) members who were
      involuntarily terminated prior to January 14, 2009 that had a Notice Period extending past
      January 14, 2009, (ii) members who were involuntarily terminated on or after January 14, 2009 and
      on or before December 31, 2010, and (iii) members who were transferred to another employer as
      part of a transaction in 2009 or 2010.  For LTD claimants the notice period is not relevant for these
      benefits.

**Mercer (Canada) Limited**                                                                 2

NNC-NNL11755981 / 85

**Valuation of the Obligations of the Non-Pension Benefits**
**for Claim Purposes as at the Determination Date**

Nortel Canada **00194**

This valuation is based on membership data as at December 31, 2010. Additional information related to the membership data is provided in Section 3 of this report.

This valuation reflects the Plan provisions and the administrative practices related to the application of the Plan provisions as communicated to us by the Company or the insurer. A summary of the Plan provisions is provided in the Appendices.

Please also note the following:

- Notice Period and Periods of special leave of absence prior to pension ("SPLA"), severance and salary continuance for terminated and transferred employees (collectively to be Court approved and referred to as "Notice Period" in this report) As instructed by Nortel Canada and the Monitor, the claim for the post retirement benefits (PRB) includes amounts for members who meet the PRB plan eligibility requirements by the end of the Notice period, assuming the member terminated at the end of the Notice Period.

- Income Tax Gross Up
  As instructed by Nortel Canada and the Monitor, life insurance and survivor income benefits covered in this report, have been increased or grossed up by an effective 10% for income tax[7]. That is, the liability amounts determined for PRB – Life, PRB – ADB, LTD – Life, LTD – Optional Life, LTD – AD&D, LTD – Dependent Life, LTD – STB – Accrual, SIB and STB benefits have been grossed up. The gross up amount is shown separately. There has been no increase determined for the LTD – income benefits.

- Administration Costs Gross Up
  As instructed by Nortel Canada and the Monitor, a calculation has been made to increase the medical and dental liabilities by 10%[8]. That is, the liability amounts determined for PRB – M&D and LTD – M&D benefits have been grossed-up. The gross up amount is shown separately.

- Out of Country Addresses
  According to the terms of the Non-Pension medical and dental plans, members who reside outside of Canada are not eligible to have their claims reimbursed under the Plan. As instructed by Nortel Canada and the Monitor, pensioners or LTD claimants with addresses outside of Canada were not provided with a liability estimate for medical and dental benefits. They may still be eligible for other benefits.

---

[7]   Claims with income tax gross-up = Claim amount before income tax gross-up / (1-10%) For example, if the claim before income tax gross-up is $100, then the claim with income tax gross-up is $111.11 (i.e. $100/(1-10%)).

[8]   Claims with administrative costs gross-up = Claim amounts before administration costs gross-up x (1+10%). For example, if the claim before administrative tax gross-up is $100, then the claim with administrative tax gross-up is $110.00 (i.e. $100 x(1+10%)).

**Mercer (Canada) Limited**                                         3

NNC-NNL11755981 / 86

- **Changes in Assumptions and Methods**
  The assumptions and methods used in this report are still subject to Court approval. As such, the valuation of the claim provided in this report should be considered as preliminary.

- **Active Members**
  As instructed by Nortel Canada and the Monitor, the claim for Active Members who met the PRB plan eligibility as at December 31, 2010 is provided in this Report. It is based on the determination date of December 31, 2010 and assumptions in accordance with the CIA standard for pension commuted values as at December 31, 2010. In addition, no consideration is given in this Report for members who might have met the PRB plan eligibility during any Notice Period to which these members might be entitled if they were terminated as at December 31, 2010.

  However, the final claim for PRB benefits for these members will be recalculated upon their actual termination using the same methods and assumptions as described in this report, but based on a determination date at the member's date of termination and assumptions with respect to interest rates and mortality as determined by the CIA standard at that time. As such, the final claim for these members may be higher or lower than the claim provided in this Report. Furthermore, there may be additional claimants not covered by this Report since they were not eligible for PRB benefits as at December 31, 2010 but became eligible at their actual date of termination.

- **Deaths in January 2011**
  The PRB – Life liability for pensioners who died in January 2011 and have already had their benefit paid out have been removed from this report.

After checking with representatives of the Company, on the date of preparation of this report, to the best of our knowledge, there have been no other subsequent events which, in our opinion, would have a material impact on the results of the valuation.

NNC-NNL11755981 / 87

In our opinion:

- The individual membership data on which the valuation is based are sufficient and reliable for the purposes of preparing a preliminary estimate of the aggregate liabilities. However, individual members will be provided with a statement for the purpose of correcting their own data. Therefore, at this time, individual liability amounts should be considered as preliminary estimates only, subject to revision and correction when accepted pursuant to the compensation claims resolution process, to be Court approved.

- The assumptions are in accordance with the instructions received from the Company and the Monitor and in aggregate are appropriate for the purposes of this report. The assumptions may not be appropriate for other purposes.

- The methods employed are in accordance with the instructions received from the Company and the Monitor for the valuation and are appropriate for the purposes of the valuation.

This report has been prepared and our opinions given, in accordance with accepted actuarial practice in Canada. However, we are not aware of any actuarial standards or practice requirements specifically designed for valuation of Non-Pension Plans as outlined in this report. With respect to the selection of the discount rate and the assumed mortality, we have used the assumptions described in Section 3800 – *Pension Commuted Values* of the Canadian Institute of Actuaries Standards of Practice.

The information contained in this report was prepared exclusively for Nortel Canada and the Monitor, in connection with the court application with respect to the claim for the benefits payable under the Plans. This report is only intended for the purposes outlined above. Mercer assumes no liability for the use, or reliance upon, this report for purposes other than those specifically identified in this report.

Respectfully submitted,

| | |
|---|---|
| *Ellen Whelan* | *Karen Dixon* |
| Ellen Whelan | Karen Dixon |
| Fellow of the Canadian Institute of Actuaries | Fellow of the Canadian Institute of Actuaries |
| Fellow of the Society of Actuaries | Fellow of the Society of Actuaries |
| September 19, 2011 | September 19, 2011 |
| Date | Date |

Mercer (Canada) Limited; 161 Bay Street, P.O. Box 501; Toronto, Ontario  M5J 2S5

Valuation of the Obligations of the Non-Pension Benefits
for Claim Purposes as at the Determination Date

Nortel Canada
00197

---

## 2

# Valuation Results

Please see the following page.

NNC-NNL11755981 / 89

A/C *

**Valuation of the Obligations of the Non-Pension Benefits**
**for Claim Purposes as at the Determination Date**

Nortel Canada

The following table presents a summary of the estimated liabilities from our valuation as at December 31, 2010 (in millions Canadian dollars).

| Plans | Actives | Terminated Before Notice Period Adjustment[9] | Terminated Notice Period Adjustment[10] | Transferred Before Notice Period Adjustment[9] | Transferred Notice Period Adjustment[10] | LTD | Pensioners/ Beneficiaries | Subtotal | Income Tax Gross Up | Administration Cost Gross Up | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PRB – M&D | $2.3 | $2.4 | $2.8 | $7.7 | $3.6 | $12.8 | $270.9 | $302.5 | $0.0 | $30.3 | $332.8 |
| STB – Accrual - M&D | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 1.4 | 1.4 | 0.0 | 0.1 | 1.5 |
| PRB – Life | 0.7 | 0.7 | 0.6 | 2.1 | 0.8 | 2.5 | 102.9 | 110.3 | 12.3 | 0.0 | 122.6 |
| PRB – ADB | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 2.2 | 2.2 | 0.2 | 0.0 | 2.4 |
| **PRB/STB – Total** | **$3.0** | **$3.1** | **$3.4** | **$9.8** | **$4.4** | **$15.3** | **$377.4** | **$416.4** | **$12.5** | **$30.4** | **$459.3** |
| LTD – Income [11] | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $76.2 | $0.0 | $76.2 | $0.0 | $0.0 | $76.2 |
| LTD – M&D | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 24.0 | 0.0 | 24.0 | 0.0 | 2.4 | 26.4 |
| LTD – Basic Life | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 2.5 | 0.0 | 2.5 | 0.3 | 0.0 | 2.8 |
| LTD – Optional Life | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 5.0 | 0.0 | 5.0 | 0.6 | 0.0 | 5.6 |
| LTD – AD&D | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.8 | 0.0 | 0.8 | 0.1 | 0.0 | 0.9 |
| LTD – Dependent Life | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.3 | 0.0 | 0.3 | ‡ | 0.0 | 0.3 |
| LTD – STB – accrual | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.3 | 0.0 | 0.3 | ‡ | 0.0 | 0.3 |
| **LTD – Total** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$109.1** | **$0.0** | **$109.1** | **$1.0** | **$2.4** | **$112.5** |
| SIB | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $16.2 | $16.2 | $1.8 | $0.0 | $18.0 |
| STB – in receipt | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 5.4 | 5.4 | 0.6 | 0.0 | 6.0 |
| STB – accrual | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 29.9 | 29.9 | 3.3 | 0.0 | 33.2 |
| **SIB/STB – Total** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$51.5** | **$51.5** | **$5.7** | **$0.0** | **$57.2** |
| **Grand Total** | **$3.0** | **$3.1** | **$3.4** | **$9.8** | **$4.4** | **$124.4** | **$428.9** | **$577.0** | **$19.2** | **$32.8** | **$629.0** |

‡ Amounts round to less than $50,000.

---

[9]   Represents the value of the benefit to those that were eligible as at the date of termination/transfer.

[10]   Represents the value of the benefit to those that become eligible by the end of the Notice Period.

[11]   The liability included in this report is for LTD claimants who were in receipt of an income benefit as at December 31, 2010.  No liability is included for members whose LTD status was unresolved as at December 31, 2010.

**Mercer (Canada) Limited**

NNC-NNL11755981 / 90

00198

TR45610

<div style="border: 2px solid black; display: inline-block; padding: 20px;">

**3**

</div>

# Membership Data

This valuation is based on membership data as at December 31, 2010. This data has
been provided by Nortel Canada and Sun Life.

We have not independently verified the accuracy or completeness of the data except to
the extent required by generally accepted professional standards and practices. Mercer
will not be held responsible for any liability arising from the use of incomplete, inaccurate
or not up-to-date data or documentation. We have applied tests for internal consistency,
as well as for consistency with the data used for the previous valuation. These tests were
applied to membership reconciliation, basic information (date of birth, date of hire, date
of membership, gender, etc.), earnings, and service. The results of these tests were
satisfactory. Individual claim statements will be sent to all members to communicate the
claim amount and confirm their data and should there be changes to the data, their claim
will be adjusted in accordance with the Court approved resolution process.

Valuation of the Obligations of the Non-Pension Benefits                                                Nortel Canada
for Claim Purposes as at the Determination Date

## Member Headcount

| Plans | Remaining Active[12] | Terminated Before Notice Period Adjustment[13] | Terminated Notice Period Adjustment | Transferred Before Notice Period Adjustment[14] | Transferred Notice Period Adjustment | LTD | Pensioners/ Beneficiaries | Total |
|---|---|---|---|---|---|---|---|---|
| PRB – M&D | 51 | 54 | 54 | 156 | 72 | 321 | 9,311[15] | 10,019 |
| STB – Accrual – M&D | 0 | 0 | 0 | 0 | 0 | 0 | 686 | 686 |
| PRB – Life | 51 | 54 | 55 | 156 | 76 | 330 | 8,195 | 8,917 |
| PRB – ADB | 0 | 0 | 0 | 0 | 0 | 0 | 150 | 150 |
| | | | | | | | | |
| LTD – Income | 0 | 0 | 0 | 0 | 0 | 344 | 0 | 344 |
| LTD – M&D | 0 | 0 | 0 | 0 | 0 | 349 | 0 | 349 |
| LTD – Life | 0 | 0 | 0 | 0 | 0 | 351 | 0 | 351 |
| LTD – Optional Life | 0 | 0 | 0 | 0 | 0 | 268 | 0 | 268 |
| LTD – AD&D | 0 | 0 | 0 | 0 | 0 | 204 | 0 | 204 |
| LTD – Dependent Life | 0 | 0 | 0 | 0 | 0 | 183 | 0 | 183 |
| LTD – STB – accrual | 0 | 0 | 0 | 0 | 0 | 96 | 0 | 96 |
| | | | | | | | | |
| SIB | 0 | 0 | 0 | 0 | 0 | 0 | 80 | 80 |
| STB – in receipt | 0 | 0 | 0 | 0 | 0 | 0 | 347 | 347 |
| STB – accrual | 0 | 0 | 0 | 0 | 0 | 0 | 2,846 | 2,846 |

[12]   As at December 31, 2010 there were 395 active members, of which 51 met the PRB eligibility at December 31, 2010.

[13]   As at December 31, 2010 there were 1,525 terminated members of which 109 met the PRB eligibility at the date of termination or by the end of their Notice period.

[14]   As at December 31, 2010 there were 3,490 transferred members of which 232 met the PRB eligibility at the date of transfer or by the end of their Notice period.

[15]   There are also 6,346 spouses of pensioners covered for benefits. The beneficiaries on STB – in receipt and the beneficiaries on SIB who also are eligible for M&D benefits are included in the PRB- M&D figures for their M&D benefits.

Mercer (Canada) Limited

00200

TR45610

**Valuation of the Obligations of the Non-Pension Benefits**
**for Claim Purposes as at the Determination Date**

Nortel Canada

00201

## Summary of Data

|  | Non-Union | Union | Total |
|---|---|---|---|
| **PRB – Pensioner/Beneficiary Members** | | | |
| *Pensioners* | | | |
| **Total Number** | **3,763** | **4,656** | **8,419** |
| ▪ Average age (years) | 72.5 | 74.1 | 73.3 |
| **Number with Medical/Dental** | **3,725** | **4,641** | **8,366** |
| ▪ Average age (years) | 72.5 | 74.0 | 73.3 |
| **Number with Life Insurance** | **3,605** | **4,590** | **8,195** |
| ▪ Average age (years) | 72.5 | 74.0 | 73.3 |
| ▪ Average life insurance | $41,106 | $15,758 | $26,909 |
| **Number with ADB** | **150** | **0** | **150** |
| ▪ Average age (years) | 87.9 | N/A | 87.9 |
| ▪ Average ADB benefit | $24,579 | N/A | $24,579 |
| *Spouses of Pensioners* | | | |
| **Number with Medical/Dental** | **3,119** | **3,227** | **6,346** |
| ▪ Average age (years) | 69.9 | 72.1 | 71.0 |
| *Surviving Spouses* | | | |
| **Number with Medical/Dental** | **607** | **338** | **945** |
| ▪ Average age (years) | 77.7 | 75.3 | 76.9 |
| **PRB - Active Members** | | | |
| **Number** | **49** | **2** | **51** |
| ▪ Average age (years) | 58.7 | 57.1 | 58.6 |
| ▪ Average service (years) | 28.3 | 21.2 | 28.0 |
| ▪ Average life insurance | $50,408 | $35,000 | $49,804 |
| **PRB – Terminated** | | | |
| **Number** | **99** | **10** | **109** |
| ▪ Average age (years) | 57.6 | 57.0 | 57.5 |
| ▪ Average service (years) | 22.1 | 29.8 | 22.8 |
| ▪ Average life insurance | $40,646 | $36,750 | $40,289 |
| **PRB –Transferred** | | | |
| **Number** | **212** | **18** | **230** |
| ▪ Average age (years) | 57.5 | 54.1 | 57.2 |
| ▪ Average service (years) | 23.5 | 29.7 | 24.0 |
| ▪ Average life insurance | $43,208 | $40,500 | $42,996 |

**Mercer (Canada) Limited**

10

**Valuation of the Obligations of the Non-Pension Benefits**
**for Claim Purposes as at the Determination Date**

Nortel Canada

00202

| | Non-Union | Union | Total |
|---|---|---|---|
| **PRB - LTD Members** | | | |
| Number[16] | **204** | **128** | **332** |
| ▪ Average age (years) | 54.4 | 56.6 | 55.3 |
| ▪ Average service (years) | 24.3 | 30.4 | 26.7 |
| ▪ Average life insurance | $37,294 | $39,639 | $38,198 |
| **LTD Members** | | | |
| **LTD - Income[17]** | | | |
| **Number with Income Benefits** | 217 | 127 | 344 |
| ▪ Average age (years) | 53.8 | 56.6 | 54.8 |
| ▪ Average duration on claim | 12.1 | 17.1 | 13.9 |
| ▪ Average monthly benefit | $3,003 | $1,614 | $2,490 |
| **LTD – M&D[18]** | | | |
| **Number with Medical/Dental** | 222 | 127 | 349 |
| ▪ Average age (years) | 53.8 | 56.5 | 54.8 |
| ▪ Average duration on claim | 12.1 | 17.0 | 13.9 |
| **LTD - Life** | | | |
| **Number with Basic Life Insurance** | 224 | 127 | 351 |
| ▪ Average age (years) | 53.7 | 56.5 | 54.7 |
| ▪ Average duration on claim | 12.1 | 17.0 | 13.9 |
| ▪ Average life insurance benefit | $64,865 | $33,354 | $53,464 |
| **LTD - Optional Life** | | | |
| **Number with Optional Life Insurance** | 167 | 101 | 268 |
| ▪ Average age (years) | 54.3 | 57.0 | 55.3 |
| ▪ Average duration on claim | 12.8 | 17.5 | 14.6 |
| ▪ Average optional life insurance benefit | $187,117 | $63,960 | $140,703 |
| **LTD – AD&D** | | | |
| **Number with AD&D Insurance** | 81 | 123 | 204 |
| ▪ Average age (years) | 51.5 | 56.7 | 54.6 |
| ▪ Average duration on claim | 7.6 | 17.1 | 13.3 |
| ▪ Average AD&D insurance benefit | $262,877 | $34,821 | $125,373 |

---

[16]  One member did not elect to join the Nortel Canada pension plan and was therefore not eligible for PRB benefits. Not all LTD Claimants are projected to receive PRB – M&D based on plan eligibility and location of residence.

[17]  As at December 31, 2010, there were 353 LTD claimants in total. Six non-union and 2 union members from the data provided have $0 net benefit as the Workers' Compensation benefits or other offsets have reduced the net benefit to $0. One non-union member is from previous divestitures and Nortel Canada is only responsible for their medical/dental and life insurance benefits. All 9 of these records have been excluded from the LTD income benefit information.

[18]  Five union members are receiving non-union medical/dental benefits but are included in the union statistics. One non-union member is receiving union medical/dental benefits but is included in the non-union statistics. Four members were excluded since they reside outside of Canada.

**Mercer (Canada) Limited**

11

**Valuation of the Obligations of the Non-Pension Benefits
for Claim Purposes as at the Determination Date**

Nortel Canada

00203

| | Non-Union | Union | Total |
|---|---|---|---|
| **LTD Members (Cont'd)** | | | |
| **LTD – Dependent Life** | | | |
| **Number with Dependent Life Insurance** | 114 | 69 | 183 |
| ▪ Average age (years) | 53.2 | 57.6 | 54.9 |
| ▪ Average duration on claim | 11.3 | 16.9 | 13.4 |
| ▪ Average dependent life insurance benefit | $69,386 | $16,993 | $49,631 |
| **LTD – STB - Accrual** | | | |
| **Number with STB accrual** | 0 | 96 | 96 |
| ▪ Average age (years) | N/A | 57.1 | 57.1 |
| ▪ Average duration on claim | N/A | 17.8 | 17.8 |
| ▪ Average monthly STB benefit | N/A | $555 | $555 |
| **SIB/STB – Beneficiaries in receipt of SIB/STB** | | | |
| **Number of STB** | 0 | 347 | 347 |
| ▪ Average Age (years) | N/A | 76.9 | 76.9 |
| ▪ Average monthly STB benefit | N/A | $535 | $535 |
| | | | |
| **Number of SIB** | 80 | 0 | 80 |
| ▪ Average Age (years) | 70.4 | N/A | 70.4 |
| ▪ Average monthly SIB benefit | $1,398 | N/A | $1,398 |
| | | | |
| **STB – Accruals for Future Beneficiaries** | | | |
| **Number[19]** | 0 | 2,846 | 2,846 |
| ▪ Average Age (years) | N/A | 74.2 | 74.2 |
| ▪ Average monthly STB benefit | N/A | $574 | $574 |
| ▪ Average lump sum benefit | N/A | $13,417 | $13,417 |

---

[19]    Eighty-nine of these members have elected to take their STB benefit as a lump sum payment rather than as a monthly payment over 5 years.

Mercer (Canada) Limited                12

NNC-NNL11755981 / 95



**4**

# Methods and Assumptions

## Valuation Methods

The claim represents the actuarial present value of the benefits payable under the Plans as at the Determination Date of December 31, 2010.

The following table describes the basis for establishing the claim under each Plan for each member group:

| Member Group | Claim Basis |
|---|---|
| **PRB - Pensioners/ Beneficiaries** | The liability represents the actuarial present value of the benefits payable under the Plans as of December 31, 2010 based on members who were retired or survivors of retirees as at December 31, 2010. |
| **PRB – Active Members** | The liability represents the actuarial present value of the benefits payable under the Plans assuming the member terminated employment on December 31, 2010 and benefits commence immediately if the member met the eligibility requirements for the Plans at December 31, 2010, based on members who were active as at December 31, 2010. If the member does not meet the eligibility requirements for the Plans at December 31, 2010, no liability has been included. |

NNC-NNL11755981 / 96

**Valuation of the Obligations of the Non-Pension Benefits**
**for Claim Purposes as at the Determination Date**

Nortel Canada
00205

| Member Group | Claim Basis |
|---|---|
| **PRB –<br>Terminated/Transferred** | Due to the insolvency proceedings, there were a number of employees who were terminated by Nortel Canada before and after the CCAA filing date, whose termination and severance pay claims including benefits, were not fully paid or who were transferred to new employers. Employees were tested for inclusion in the valuation as outlined below.<br><br>The liability represents the actuarial present value of the benefits payable under the Plans assuming the member terminated employment at the end of their Notice Period. If the member met the eligibility requirements for the Plan as at the end of their Notice Period, it was assumed that benefits commence at the later of December 31, 2010 or the end of the Notice Period. If the Notice Period ends after December 31, 2010, the liability amount is discounted back to December 31, 2010. If the member does not meet the eligibility requirements for the Plans by the end of their Notice Period, no liability has been calculated. If the member met the eligibility requirements for the Plan at the date of termination or transfer, no liability has been calculated if a Traditional Part 1 pension plan members did not elect an immediate pension. |
| **PRB – LTD Claimants** | The liability represents the actuarial present value of the benefits payable under the Plans assuming the members remain on LTD until age 65 and commence these benefits at age 65 if they meet the eligibility requirements at that date. The actuarial present value is discounted by the cumulative ultimate recovery rates for the period between the projected age of the disabled member at December 31, 2010 and the earliest eligibility age for these benefits. |
| **LTD Claimants** | The liability represents the actuarial present value of the benefits (i.e. LTD - Income, LTD – M&D, LTD – Life, LTD – Optional Life, LTD – STB – accrual, LTD – AD&D, LTD – Dependent Life) payable after December 31, 2010 and until the earliest of age 65, recovery, or death according to the disabled recovery and mortality assumptions. |
| **SIB/STB – Pensioners/<br>Beneficiaries** | The liability for the "accruals" represents the actuarial present value of the benefits payable under the Plans after December 31, 2010 based on members who were retired as at December 31, 2010, and the liability for the SIB and STB "in receipt benefits" is based on beneficiaries who were in receipt of the benefits as at December 31, 2010, that were to continue after December 31, 2010 |

This valuation is based on the plan provisions as provided by Nortel Canada and the provisions of government healthcare programs as they existed at the time of the valuation. Except as otherwise noted, it has been assumed that the Nortel Canada and government plan provisions described and valued in this report continue unchanged.

**Mercer (Canada) Limited**

14

## Actuarial Assumptions

### *Post Retirement Medical, Dental and Life Insurance Benefits*
**(PRB – M&D, STB – Accrual – M&D, PRB – Life and PRB – ADB)**

The liability for PRBs is determined for each eligible individual, including LTD claimants. The liability is equal to the present value of expected future benefits after December 31, 2010 or on and after the Notice Period if later than December 31, 2010 then discounted back to December 31, 2010. LTD claimants who were disabled as at December 31, 2007 and never returned to active status by December 31, 2010, were not affected by the CARP changes. Anticipated benefits are discounted for payment eligibility, for increases in medical and dental costs and the time value of money.

| | |
|---|---|
| *Determination date* | December 31, 2010 |
| *Discount rate* | CIA rates for December 2010 without the 2-month lag (i.e. based on the month end CANSIM rates for December 2010): |
| | ▪ 3.6% per year for 10 years, 4.9% per year thereafter |
| *Health care cost trend rates* | **Grandfathered Traditional Program** |
| | Semi-Private Hospital     4.75% per annum |
| | Prescription Drugs     8.40% per annum in 2011 grading down to 5.00% per annum in and after 2028 |
| | Other Health Care     4.75% per annum |
| | Vision Care     0.00% per annum |
| | Dental Care     4.75% per annum |
| | Provincial Premium (non-BC)     0.00% per annum |
| | BC Provincial Premium     6.0% per annum for 1 year, then 4.5% per annum thereafter |
| | **Non-Grandfathered Traditional Program** |
| | Catastrophic Plan     7.55% per annum in 2011 grading down to 5.00% per annum in and after 2028 |
| | Healthcare Spending Account Allocation     No increases |
| | Provincial Premium (non-BC)     0.00% per annum |
| | BC Provincial Premium     6.0% per annum for 1 year, then 4.5% per annum thereafter |

**Valuation of the Obligations of the Non-Pension Benefits**
**for Claim Purposes as at the Determination Date**

Nortel Canada

00207

| Health care cost trend rates (Cont'd) | **Balanced Program and SARP** | |
|---|---|---|
| | Healthcare Spending Account Allocation | No increases |
| | Provincial Premium (non-BC) | 0.00% per annum |
| | BC Provincial Premium | 6.0% per annum for 1 year, then 4.5% per annum thereafter |
| Mortality | UP 94 mortality table with generational improvements projected to 2020 using AA scale (sex distinct) | |
| Retirement rates | Members currently in receipt of LTD benefits are assumed to retire at age 65 regardless if they reach 65 before the end of their Notice period. | |
| | Active members who meet the eligibility requirements for benefits are assumed to retire at December 31, 2010. | |
| Marital status | For members not in receipt of PRB benefits as at December 31, 2010, there is a 90% probability of having a covered spouse at retirement. The covered spouse is assumed to be the opposite gender with male spouses assumed to be 3 years older than their female spouses. | |
| | For members currently in receipt of PRB benefits as at December 31, 2010 and enrolled for dependent coverage, actual spousal date of birth information was used where available and the covered spouse is assumed to be the opposite gender. Otherwise, where these members are enrolled for dependent coverage and actual spousal information was not provided, the covered spouse is assumed to be the opposite gender and male spouses are assumed to be 3 years older than their female spouses. | |

2011 per capita claim cost at age 65

**Grandfathered Traditional Program**

| | Retiree | Dependent |
|---|---|---|
| Semi-private Hospital | $33 | $18 |
| Prescription Drugs[20] | 477 | 318 |
| Vision Care | 20 | 16 |
| Other Medical | 140 | 124 |
| Dental Care | 320 | 211 |
| **Total** | **$990** | **$687** |

**Non-Grandfathered Traditional Program**

| Catastrophic Medical Program [20] | Retiree | $698 |
|---|---|---|
| | Dependent | $622 |
| Healthcare Spending Account | $50[21] per year of service from age 40 to retirement age | |

---

[20]   Drug costs are reduced from age 65 due to coverage from the provincial government drug plans. The assumptions shown here are after the assumed offset.

[21]   Amount decreases to 50% upon members' death and continues for surviving spouses.

**Mercer (Canada) Limited**                                                                                        16

**Valuation of the Obligations of the Non-Pension Benefits
for Claim Purposes as at the Determination Date**

Nortel Canada

00208

| | | |
|---|---|---|
| *2011 per capita claim cost at age 65 (Cont'd)* | **Balanced Program** | |
| | Healthcare Spending Account | $50[22] per year of service from age 40 to retirement age |
| | **SARP Program** | |
| | Healthcare Spending Account | $50[22] per year of service from age 40 to retirement age |

| *Increases in cost by age* | | Cost at Age | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 55 | 60 | 65 | 70 | 75 | 80 | 85 |
| | Supplementary Hospital | 45% | 64% | 100% | 161% | 253% | 388% | 562% |
| | Prescription Drugs | 75% | 88% | 100% | 109% | 113% | 114% | 113% |
| | Other Medical | 106% | 103% | 100% | 102% | 110% | 121% | 135% |
| | Vision Care | 106% | 103% | 100% | 97% | 95% | 92% | 89% |
| | Dental Care | 107% | 104% | 100% | 95% | 90% | 83% | 74% |
| | Catastrophic Medical Plan | 75% | 88% | 100% | 109% | 113% | 114% | 113% |
| | Healthcare Spending Account | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| *Prescription drug offset assumption at age 65 and after* | Average: 55% of prescription drug claims |
|---|---|

| *Adjustment factors for the Catastrophic Medical Plan deductible and lifetime maximum* | The liabilities for the catastrophic medical coverage under the Non-Grandfathered Traditional Program were initially calculated based on the above claims cost, aging, trend and drug offset assumptions. The resulting obligations were then reduced by multiplying by the following factors by age at the valuation date to reflect the expected impact of the plan's lifetime deductible ($7,500 per family) and lifetime maximum ($500,000 per family) provisions. It has been assumed that the current flat lifetime deductible and maximum amounts do not increase in the future. |
|---|---|

| Age Group | Adjustment Factors |
|---|---|
| Less than 30 | 0.96 |
| 30 to 34 | 0.95 |
| 35 to 39 | 0.93 |
| 40 to 44 | 0.92 |
| 45 to 49 | 0.89 |
| 50 to 54 | 0.87 |
| 55 to 59 | 0.82 |
| 60+ | 0.89 |

---

[22]   Amount decreases to 50% upon members' death and continues for surviving spouses.

NNC-NNL11755981 / 100

00209

| Provincial government plans – annual premiums | As of January 1, 2011 the pensioner premium for the government plans are as follows: | | |
|---|---|---|---|
| | Province | Single | Couple |
| | RAMQ Premium (Nortel Canada reimbursement) | $175 | $350 |
| | British Columbia MSP | $726 | $1,308 |

## Claims Cost Development

### Grandfathered Traditional Plan

The 2011 per covered person claim costs at age 65 are based on actual paid claims experience for Nortel Canada's retired members or surviving spouses for the calendar years, 2007 to 2009, applying equal weight to all experience years. Claim costs were trended to the mid-point (July 1, 2011) of the current valuation period. Refer to the schedule for the development of the 2011 claim costs on the following pages for the retired members and the members' spouses.

### Catastrophic Plan

As no credible actual paid claim information is available, to determine the per capita costs at age 65 for the catastrophic plan, actual eligible claims data for the Grandfathered Traditional Plan was relied on and certain relative value adjustments for the differences in plan designs was applied, to develop estimated per capita costs for the catastrophic plan.

NNC-NNL11755981 / 101

**Valuation of the Obligations of the Non-Pension Benefits**
**for Claim Purposes as at the Determination Date**

Nortel Canada

00210

### Grandfathered Traditional Plan – Retired Members

| | 2009 Total | 2008 Total | 2007 Total |
|---|---|---|---|
| **Actual Nortel retirees' paid claims (before administration costs and taxes)** | | | |
| Hospital | $668,348 | $733,075 | $806,179 |
| Drug | 4,458,996 | 4,342,462 | 4,131,161 |
| Vision care | 194,020 | 169,843 | 168,882 |
| Other medical | 1,436,701 | 1,274,631 | 1,130,459 |
| Dental | 2,564,563 | 2,230,421 | 2,198,337 |
| Total | $9,322,626 | $8,750,432 | $8,435,018 |
| | | | |
| **Number of Nortel retirees** | | | |
| • Eligible for medical and dental benefits | 9,387 | 9,473 | 9,125 |
| • Eligible for drug benefits | 9,392 | 9,478 | 9,130 |
| | | | |
| **Per covered member costs** | | | |
| Hospital | $71.20 | $77.39 | $88.34 |
| Drug | 474.79 | 458.18 | 452.46 |
| Vision care | 20.67 | 17.93 | 18.51 |
| Other medical | 153.05 | 134.55 | 123.87 |
| Dental | 273.20 | 235.45 | 240.89 |
| Total | $992.91 | $923.50 | $924.06 |
| | | | |
| **Trend to July 01, 2009** | | | |
| Hospital | 1.00 | 1.05 | 1.10 |
| Drug | 1.00 | 1.09 | 1.19 |
| Vision care | 1.00 | 1.00 | 1.00 |
| Other medical | 1.00 | 1.05 | 1.10 |
| Dental | 1.00 | 1.05 | 1.10 |
| | | | |
| **2009 per covered member costs** | | | |
| Hospital | $71.20 | $81.06 | $96.93 |
| Drug | 474.79 | 499.42 | 537.57 |
| Vision care | 20.67 | 17.93 | 18.51 |
| Other medical | 153.05 | 140.95 | 135.92 |
| Dental | 273.20 | 246.63 | 264.31 |
| Total | $992.91 | $985.99 | $1,053.24 |
| | | | |
| **Weighting** | 33% | 33% | 33% |

| **Trend to July 01, 2011** | |
|---|---|
| Hospital | 1.097 |
| Drug | 1.182 |
| Vision care | 1.000 |
| Other medical | 1.097 |
| Dental | 1.097 |
| | |
| **2011 per covered member costs** | |
| Hospital | $91.14 |
| Drug | 595.42 |
| Vision care | 19.03 |
| Other medical | 157.24 |
| Dental | 286.81 |
| Total | $1,149.65 |
| | |
| **Adjustment factors to convert 2011 per covered member costs** | |
| **into age 65 per covered member costs** | |
| Hospital | 0.3621 |
| Drug | 1.7803 |
| Vision care | 1.0507 |
| Other medical | 0.8903 |
| Dental | 1.1157 |
| | |
| **Drug offset assumption at age 65** | 55% |
| | |
| **Per covered member age 65 claims costs (2011 per covered member costs x adjustment factors)** | |
| Hospital | $33.00 |
| Drug - incorporating 55% drug offset | 477.00 |
| Vision care | 20.00 |
| Other medical | 140.00 |
| Dental | 320.00 |
| Total | $990.00 |

**Mercer (Canada) Limited**

19

*00211*

**Valuation of the Obligations of the Non-Pension Benefits**
**for Claim Purposes as at the Determination Date**

Nortel Canada

### Grandfathered Traditional Plan – Covered Dependents

| | 2009 Total | 2008 Total | 2007 Total |
|---|---|---|---|
| **Actual Nortel dependents paid claims (before administration costs and taxes)** | | | |
| Hospital | $237,911 | $341,950 | $296,720 |
| Drug | 2,361,121 | 2,485,445 | 2,366,840 |
| Vision care | 129,602 | 110,158 | 111,230 |
| Other medical | 796,585 | 1,212,410 | 694,152 |
| Dental | 1,386,061 | 1,206,572 | 1,182,386 |
| **Total** | **$4,911,280** | **$5,356,536** | **$4,651,327** |
| | | | |
| **Number of Nortel spouses and surviving spouses** | | | |
| • Eligible for medical and dental benefits | 7,528 | 7,517 | 7,385 |
| • Eligible for drug benefits | 7,531 | 7,520 | 7,388 |
| | | | |
| **Per covered member costs** | | | |
| Hospital | $31.60 | $45.49 | $40.18 |
| Drug | 313.51 | 330.50 | 320.36 |
| Vision care | 17.22 | 14.65 | 15.06 |
| Other medical | 105.81 | 161.29 | 93.99 |
| Dental | 184.12 | 160.51 | 160.11 |
| **Total** | **$652.27** | **$712.45** | **$629.70** |
| | | | |
| **Trend to July 01, 2009** | | | |
| Hospital | 1.00 | 1.05 | 1.10 |
| Drug | 1.00 | 1.09 | 1.19 |
| Vision care | 1.00 | 1.00 | 1.00 |
| Other medical | 1.00 | 1.05 | 1.10 |
| Dental | 1.00 | 1.05 | 1.10 |
| | | | |
| **2009 per covered member costs** | | | |
| Hospital | $31.60 | $47.65 | $44.09 |
| Drug | 313.51 | 360.25 | 380.62 |
| Vision care | 17.22 | 14.65 | 15.06 |
| Other medical | 105.81 | 168.95 | 103.14 |
| Dental | 184.12 | 168.14 | 175.68 |
| **Total** | **$652.27** | **$759.64** | **$718.58** |
| | | | |
| **Weighting** | 33% | 33% | 33% |
| | | | |
| **Trend to July 01, 2011** | | | |
| Hospital | 1.097 | | |
| Drug | 1.182 | | |
| Vision care | 1.000 | | |
| Other medical | 1.097 | | |
| Dental | 1.097 | | |
| | | | |
| **2011 per covered member costs** | | | |
| Hospital | $45.11 | | |
| Drug | 415.27 | | |
| Vision care | 15.64 | | |
| Other medical | 138.22 | | |
| Dental | 193.09 | | |
| **Total** | **$807.34** | | |
| | | | |
| **Adjustment factors to convert 2011 per covered member costs** | | | |
| **into age 65 per covered member costs** | | | |
| Hospital | 0.3990 | | |
| Drug | 1.7001 | | |
| Vision care | 1.0228 | | |
| Other medical | 0.8971 | | |
| Dental | 1.0927 | | |
| | | | |
| **Drug offset assumption at age 65** | 55% | | |
| | | | |
| **Per covered member age 65 claims costs (2011 per covered member costs x adjustment factors)** | | | |
| Hospital | $18.00 | | |
| Drug - incorporating 55% drug offset | 318.00 | | |
| Vision care | 16.00 | | |
| Other medical | 124.00 | | |
| Dental | 211.00 | | |
| **Total** | **$687.00** | | |

**Mercer (Canada) Limited**

20

NNC-NNL11755981 / 103

00212

### Benefits Provided to LTD Claimants – LTD Income, Medical, Dental, Life Insurance, Optional Life Insurance, AD&D, Dependent Life Insurance and STB Benefits (LTD – Income, LTD – M&D, LTD – Life, LTD – Optional Life, LTD – AD&D, LTD – Dep Life, LTD – STB – Accruals)

In general, LTD claimants are provided the same benefits as active members.[23] Benefits are paid to the earlier of recovery, death or attainment of age 65. The benefits provided are pursuant to the applicable benefit plan at the time the member became disabled. The liability associated with this obligation is the present value of income payments, health care claim reimbursements and life insurance benefits provided to disabled members while they are disabled or upon their death during disability. Income and/or benefits are discounted for the likelihood of continuing disability and the time value of money. Anticipated payments are increased to reflect increases in the cost of living for members with indexed LTD income benefits or trend rate increases in the cost of medical and dental benefits.

| | |
|---|---|
| Determination date | December 31, 2010 |
| Discount rate | CIA rates for December 2010 without the 2-month lag (i.e. based on the month end CANSIM rates for December 2010):<br>• 3.6% per year for 10 years, 4.9% per year thereafter |
| COLA increase for members with indexed benefits | 60% of (1.77% per annum for 10 years, then 2.64% per annum thereafter) |
| Medical trend rate | 8.4% per annum in 2011 grading down linearly to 5.0% per annum in and after 2028. |
| BC Provincial Premium | 6.0% per annum for 1 year, then 4.5% per annum thereafter |
| Dental (DVH) trend rate | 4.75% per annum |
| CPP offset | If the LTD claimant has an approved CPP/QPP disability pension at the date of the valuation, the valuation assumes that benefit level will continue.<br><br>If the LTD claimant does not have an approved CPP/QPP disability pension at the date of the valuation, the valuation assumes no disability pension will be awarded in the future. |
| Termination rate (due to mortality, termination and recovery) assumption | Canadian Group Long Term Disability Termination Experience 1988-1997 as at December 31, 2009 assuming a 6 month elimination period for non-union members and a 12 month elimination period for union members, no modifications applied; 15% Quebec assumed; 12 month own occupation period |
| Covered dependents | Actual covered dependent information was used to determine the medical and dental liabilities for the non-union members.<br><br>Coverage level (EE only (EE), Employee and Spouse (EE+SP), Employee, Spouse and child (EE+SP+CH) or Employee and child (EE+CH) was used to determine the medical and dental liabilities for the union members and for their STB accrual liabilities. |

---

[23] Where the benefit program has changed since the member became disabled, the member may be provided benefits under the earlier benefit program or may have been changed to the newer benefit plan. As an example, certain union LTD claimants are provided with STB coverage.

Nortel Canada 00213

**Valuation of the Obligations of the Non-Pension Benefits**
**for Claim Purposes as at the Determination Date**

| Provincial government plans – annual premiums | As of January 1, 2011 the premium for the government plans are as follows: | | | |
|---|---|---|---|---|
| | **Province** | **Single** | **Couple** | **Family** |
| | British Columbia MSP | $726 | $1,308 | $1,452 |

| 2011 per capita claim cost (contributions not subtracted) | **Non-Union[24]** | **Employee** | **Employee + Spouse** | **Employee + Child** | **Employee + Spouse + Child** |
|---|---|---|---|---|---|
| | **Medical** | | | | |
| | ▪ Comprehensive | $3,883 | $4,549 | $4,382 | $5,048 |
| | ▪ Plus | $4,357 | $5,223 | $4,821 | $5,687 |
| | ▪ Select | $9,085 | $15,439 | $9,445 | $15,799 |
| | **Dental (DVH)[25]** | | | | |
| | ▪ Comprehensive | $462 | $823 | $1,085 | $1,446 |
| | ▪ Plus | $671 | $1,150 | $1,480 | $1,959 |

| | **Union** | **Employee** | **Employee + Spouse** | **Employee + Child** | **Employee + Spouse + Child** |
|---|---|---|---|---|---|
| | **Medical** | $4,464 | N/A | N/A | $7,090 |
| | **Dental[25]** | $433 | N/A | N/A | $1,370 |

| 2011 annual employee contributions | **Non-Union** | **Employee** | **Employee + Spouse** | **Employee + Child** | **Employee + Spouse + Child** |
|---|---|---|---|---|---|
| | **Medical** | | | | |
| | ▪ Comprehensive | $0 | $72 | $56 | $135 |
| | ▪ Plus | $150 | $461 | $356 | $616 |
| | ▪ Select | $277 | $831 | $468[26] | $1,115 |
| | **Dental (DVH)[25]** | | | | |
| | ▪ Comprehensive | $0 | $41 | $26 | $110 |
| | ▪ Plus | $97 | $345 | $233 | $519 |

| Assumed Adjustment for Accidental Deaths | AD&D liability is determined using the same termination and recovery tables as Basic Life insurance benefits as outlined above, then the results are adjusted by a ratio of the AD&D premium rate over the Basic Life premium rate to reflect accidental mortality (approximately 20.8%) |
|---|---|

---

[24] There are 5 union members who are identified as receiving the Non-Union plan and paying appropriate contributions, so have been valued with the Non-Union plan assumptions. Similarly, 1 non-union member was identified as receiving the Union plan, so has been valued with the Union plan assumptions.

[25] Dental costs for disabled members also include Vision Care and Hearing benefit costs.

[26] There are 2 members with this level of coverage and each are paying different contributions rates than the other. The average has been shown here.

NNC-NNL11755981 / 105

| Assumed Cost for Dependent Life Insurance | Dependent Life insurance liability is determined as the present value of dependent life insurance premiums during the disabled employee's expected disabled lifetime. Spousal dependent life premiums are flat for union members, but vary by age and smoker status for non-union members. Child dependent premiums are flat for both groups. The average dependent life premium between the assumed dependent's (+/- 3 years from disabled members) current age and the maximum age based rate was assumed to apply during the entire disabled period for the non-union spousal dependent life benefits. |
|---|---|

## Claims Cost Development

The 2011 per covered person claim costs are based on actual claims experience for Nortel Canada's disabled members and their covered dependents for the calendar years, 2008 to 2009, applying equal weight to all experience years. Claims totalling $292,800 for 2008 and $106,800 for 2009 were provided but not indentified as being from union or non-union members. These claims were allocated to the union and non-union groups on a pro-rata basis. Claim costs were then trended to the mid-point (July 1, 2011) of the current valuation period. Refer to the schedules for the development of the 2011 claim costs on the following pages.

NNC-NNL11755981 / 106

**Valuation of the Obligations of the Non-Pension Benefits
for Claim Purposes as at the Determination Date**

Nortel Canada

## 2008 Data

| | Records | Med | DVH | Total | Per Capita Claim Costs Records | Med | DVH | Trend to 2011 Med | DVH | Trended Claim Costs Med | DVH |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Employee** | | | | | | | | | | | |
| Union | 150 | $694,225 | $62,620 | $756,846 | 179.76 | $3,861.98 | $348.36 | 1.287909 | 1.149376 | $4,973.89 | $400.39 |
| Non-Union | 223 | $977,166 | $117,345 | $1,094,511 | 267.24 | $3,656.50 | $439.10 | 1.287909 | 1.149376 | $4,709.23 | $504.69 |
| *Medical* COMP-Comprehensive Medical | 154 | $602,489 N/A | | $602,489 | 184.55 | $3,264.60 N/A | | 1.287909 | 1.149376 | $4,204.51 | |
| PLUS-Plus Medical | 55 | $246,843 N/A | | $246,843 | 65.91 | $3,745.07 N/A | | 1.287909 | 1.149376 | $4,823.31 | |
| SMED-Select Medical | 14 | $127,834 N/A | | $127,834 | 16.78 | $7,619.37 N/A | | 1.287909 | 1.149376 | $9,813.06 | |
| WAIV-Waived Medical | 0 | $0 N/A | | $0 | - | - N/A | | 1.287909 | 1.149376 | - | |
| *DVH* COMP-Comprehensive DVH | 164 N/A | | $77,876 | $77,876 | 196.54 N/A | | $396.24 | 1.287909 | 1.149376 | | $455.43 |
| PLUS-Plus DVH | 59 N/A | | $39,469 | $39,469 | 70.71 N/A | | $558.22 | 1.287909 | 1.149376 | | $641.60 |
| WAIV-Waived DVH | 0 N/A | | $0 | $0 | - N/A | | - | 1.287909 | 1.149376 | | - |
| Total | 447 | $1,671,392 | $179,965 | $1,851,357 | 447.00 | $3,739.13 | $402.61 | 1.287909 | 1.149376 | $4,815.66 | $462.75 |
| **Spouse** | | | | | | | | | | | |
| Union | 82 | $133,938 | $30,174 | $164,111 | 97.20 | $1,377.96 | $310.43 | 1.287909 | 1.149376 | $1,774.69 | $356.80 |
| Non-Union | 123 | $148,422 | $47,796 | $196,218 | 145.80 | $1,017.96 | $327.82 | 1.287909 | 1.149376 | $1,311.07 | $376.78 |
| *Medical* COMP-Comprehensive Medical | 81 | $47,767 N/A | | $47,767 | 96.01 | $497.50 N/A | | 1.287909 | 1.149376 | $640.73 | |
| PLUS-Plus Medical | 31 | $26,300 N/A | | $26,300 | 36.75 | $715.71 N/A | | 1.287909 | 1.149376 | $921.77 | |
| SMED-Select Medical | 11 | $74,355 N/A | | $74,355 | 13.04 | $5,702.51 N/A | | 1.287909 | 1.149376 | $7,344.32 | |
| WAIV-Waived Medical | 0 | $0 N/A | | $0 | - | - N/A | | 1.287909 | 1.149376 | - | |
| *DVH* COMP-Comprehensive DVH | 86 N/A | | $30,729 | $30,729 | 101.94 N/A | | $301.43 | 1.287909 | 1.149376 | | $346.46 |
| PLUS-Plus DVH | 37 N/A | | $17,067 | $17,067 | 43.86 N/A | | $389.14 | 1.287909 | 1.149376 | | $447.27 |
| WAIV-Waived DVH | 0 N/A | | $0 | $0 | - N/A | | - | 1.287909 | 1.149376 | | - |
| Total | 243 | $282,360 | $77,969 | $360,329 | 243.00 | $1,161.98 | $320.86 | 1.287909 | 1.149376 | $1,496.52 | $368.79 |
| **Child** | | | | | | | | | | | |
| Union | 33 | $27,667 | $20,608 | $48,275 | 36.76 | $752.58 | $560.57 | 1.287909 | 1.149376 | $969.25 | $644.30 |
| Non-Union | 81 | $32,202 | $50,810 | $83,012 | 90.24 | $356.86 | $563.08 | 1.287909 | 1.149376 | $459.60 | $647.19 |
| *Medical* COMP-Comprehensive Medical | 50 | $20,682 N/A | | $20,682 | 55.70 | $371.30 N/A | | 1.287909 | 1.149376 | $478.20 | |
| PLUS-Plus Medical | 24 | $9,640 N/A | | $9,640 | 26.74 | $360.54 N/A | | 1.287909 | 1.149376 | $464.35 | |
| SMED-Select Medical | 7 | $1,880 N/A | | $1,880 | 7.80 | $241.07 N/A | | 1.287909 | 1.149376 | $310.48 | |
| WAIV-Waived Medical | 0 | $0 N/A | | $0 | - | - N/A | | 1.287909 | 1.149376 | - | |
| *DVH* COMP-Comprehensive DVH | 58 N/A | | $31,264 | $31,264 | 64.61 N/A | | $483.85 | 1.287909 | 1.149376 | | $556.13 |
| PLUS-Plus DVH | 23 N/A | | $19,547 | $19,547 | 25.62 N/A | | $762.86 | 1.287909 | 1.149376 | | $876.81 |
| WAIV-Waived DVH | 0 N/A | | $0 | $0 | - N/A | | - | 1.287909 | 1.149376 | | - |
| Total | 127 | $59,869 | $71,419 | $131,287 | 127.00 | $471.41 | $562.35 | 1.287909 | 1.149376 | $607.13 | $646.35 |

**Mercer (Canada) Limited**

NNC-NNL11755981 / 107

00215

TR45610

A/C *

A/C *

**Valuation of the Obligations of the Non-Pension Benefits
for Claim Purposes as at the Determination Date**

Nortel Canada

## 2009 Data

| | | Records | Med | DVH | Total | Records | Med | DVH | Med | Dent | Med | DVH | Med | DVH |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **Per Capita Claim Costs** | | | **Trend to 2011** | | **Trended Claim Costs** | | **Averaged Claim Costs** | |
| **Employee** | | | | | | | | | | | | | | |
| Union | | 150 | $605,556 | $76,873 | $682,429 | 181 $ | 3,345.71 | N/A | 424.72 | 1.181568 | 1.097256 | 3,953.18 $ | 466.03 | $ 4,483.53 $ 435.21 |
| Non-Union | | 242 | $1,003,342 | $142,145 | $1,145,488 | 292 $ | 3,436.04 | $ 486.79 | 1.181568 | 1.097256 $ | 4,059.92 $ | 534.13 | $ 4,354.58 $ 519.41 |
| | Medical COMP-Comprehensive Medical | 161 | $585,608 N/A | | $585,898 | 194 $ | 3,014.90 | N/A | 1.181568 | 1.097256 $ | 3,562.31 | | $ 3,863.41 |
| | PLUS-Plus Medical | 60 | $238,405 N/A | | $238,405 | 72 $ | 3,292.98 | N/A | 1.181568 | 1.097256 $ | 3,890.88 | | $ 4,257.10 |
| | SMED-Select Medical | 21 | $179,239 N/A | | $179,239 | 25 $ | 7,073.58 | N/A | 1.181568 | 1.097256 $ | 8,357.91 | | $ 9,085.48 |
| | WAIV-Waived Medical | 0 | $0 N/A | | $0 | - $ | - | N/A | 1.181568 | 1.097256 $ | | | |
| | DVH COMP-Comprehensive DVH | 173 N/A | | $88,954 | $88,954 | 209 N/A | | $ 426.13 | 1.181568 | 1.097256 | | $ 467.57 | $ 461.50 |
| | PLUS-Plus DVH | 69 N/A | | $53,192 | $53,192 | 83 N/A | | $ 638.88 | 1.181568 | 1.097256 | | $ 701.02 | $ 671.31 |
| | WAIV-Waived DVH | 0 N/A | | $0 | $0 | - N/A | | $ - | 1.181568 | 1.097256 | | $ - | $ - |
| Total | | 473 | $1,608,899 | $219,018 | $1,827,917 | 473 $ | 3,401.48 | $ 463.04 | 1.181568 | 1.097256 $ | 4,018.08 $ | 508.07 | $ 4,417.37 $ 485.41 |
| **Spouse** | | | | | | | | | | | | | | |
| Union | | 63 | $112,808 | $31,222 | $144,030 | 90 $ | 1,258.04 | $ 348.19 | 1.181568 | 1.097256 $ | 1,486.46 $ | 382.05 | $ 1,630.57 $ 369.43 |
| Non-Union | | 141 | $185,745 | $58,285 | $224,031 | 152 $ | 1,088.07 | $ 382.62 | 1.181568 | 1.097256 $ | 1,285.82 $ | 419.84 | $ 1,298.35 $ 398.31 |
| | Medical COMP-Comprehensive Medical | 68 | $55,881 N/A | | $55,681 | 96 $ | 585.87 | N/A | 1.181568 | 1.097256 $ | 692.01 | | $ 666.27 |
| | PLUS-Plus Medical | 36 | $28,695 N/A | | $26,695 | 39 $ | 688.38 | N/A | 1.181568 | 1.097256 $ | 810.98 | | $ 696.38 |
| | SMED-Select Medical | 17 | $63,370 N/A | | $63,370 | 18 $ | 4,539.36 | N/A | 1.181568 | 1.097256 $ | 5,363.56 | | $ 6,353.94 |
| | WAIV-Waived Medical | 0 | $0 N/A | | $0 | - $ | - | N/A | 1.181568 | 1.097256 $ | | | |
| | DVH COMP-Comprehensive DVH | 94 N/A | | $34,674 | $34,674 | 102 N/A | | $ 341.43 | 1.181568 | 1.097256 | | $ 374.64 | $ 360.85 |
| | PLUS-Plus DVH | 47 N/A | | $23,612 | $23,612 | 51 N/A | | $ 465.01 | 1.181568 | 1.097256 | | $ 510.23 | $ 478.75 |
| | WAIV-Waived DVH | 0 N/A | | $0 | $0 | - N/A | | $ - | 1.181568 | 1.097256 | | $ - | $ - |
| Total | | 242 | $278,553 | $89,507 | $368,060 | 242 $ | 1,151.05 | $ 369.87 | 1.181568 | 1.097256 $ | 1,360.64 $ | 405.84 | $ 1,428.28 $ 387.31 |
| **Child** | | | | | | | | | | | | | | |
| Union | | 31 | $28,619 | $14,825 | $43,443 | 33 $ | 864.57 | $ 447.85 | 1.181568 | 1.097256 $ | 1,021.55 $ | 491.41 | $ 895.40 $ 567.85 |
| Non-Union | | 87 | $38,481 | $59,887 | $98,368 | 93 $ | 414.23 | $ 644.85 | 1.181568 | 1.097256 $ | 489.44 $ | 707.34 | $ 474.52 $ 677.27 |
| | Medical COMP-Comprehensive Medical | 50 | $23,518 N/A | | $23,518 | 53 $ | 440.45 | N/A | 1.181568 | 1.097256 $ | 520.43 | | $ 499.31 |
| | PLUS-Plus Medical | 26 | $10,898 N/A | | $10,898 | 28 $ | 392.53 | N/A | 1.181568 | 1.097256 $ | 463.81 | | $ 464.06 |
| | SMED-Select Medical | 11 | $4,067 N/A | | $4,067 | 12 $ | 346.29 | N/A | 1.181568 | 1.097256 $ | 409.17 | | $ 359.63 |
| | WAIV-Waived Medical | 0 | $0 N/A | | $0 | - $ | - | N/A | 1.181568 | 1.097256 $ | | | |
| | DVH COMP-Comprehensive DVH | 58 N/A | | $38,946 | $38,946 | 82 N/A | | $ 628.85 | 1.181568 | 1.097256 | | $ 690.01 | $ 622.07 |
| | PLUS-Plus DVH | 29 N/A | | $20,941 | $20,941 | 31 N/A | | $ 678.24 | 1.181568 | 1.097256 | | $ 742.01 | $ 809.41 |
| | WAIV-Waived DVH | 0 N/A | | $0 | $0 | - N/A | | $ - | 1.181568 | 1.097256 | | $ - | $ - |
| Total | | 126 | $67,100 | $74,711 | $141,811 | 126 $ | 532.54 | $ 592.95 | 1.181568 | 1.097256 $ | 628.23 $ | 650.61 | $ 618.16 $ 648.48 |

00216

TR45610

## Survivor Benefits (SIB, STB – in receipt, STB – accrual)

The liability for the survivor benefits is determined for each eligible pensioner or beneficiary in receipt.  The liability is equal to the present value of expected future benefits after December 31, 2010 for those currently in receipt of a benefit (SIB or STB – in receipt). For certain pensioners, their beneficiaries are eligible for an STB benefit upon their death.  The present value of these expected payments, which would start upon the member's death, has been included in the STB – accrual figures. For medical and dental benefits for eligible beneficiaries, refer to the section on PRB-M&D. Anticipated benefits are discounted for payment eligibility and the time value of money.

| Determination date | December 31, 2010 |
|---|---|
| Discount rate | CIA rates for December 2010 without the 2-month lag (i.e. based on the month end CANSIM rates for December 2010):<br>• 3.6% per year for 10 years, 4.9% per year thereafter |
| Mortality | UP 94 mortality table with generational improvements projected to 2020 using AA scale (sex distinct) |



Appendix A

# Summary of Plan Provisions for Post Retirement Benefits (including PRB for actives and LTD claimants)

Please see the following pages.

Please note the following comments regarding the eligibility and plan information for the PRB benefits for LTD claimants.

**Non-Union:**
With respect to LTD claimants as of January 1, 2008 who were participants in the CARP as of December 31, 2007 and who never returned to active employment and remained on LTD as at December 31, 2010, the Grandfathering and CARP Criteria in the following table is ignored in determining for which PRB plan the member is eligible. The registered pension plan and PRB plan eligibility requirements are used only, assuming that periods on LTD also qualify as service.

LTD claimants on or after January 1, 2008 are participants in the CARP and therefore the Grandfathering and CARP Criteria in the following table is followed in determining for which PRB plan the member is eligible, assuming that periods on LTD also qualify as service.

**Union:**
The PRB plan is determined based on which registered pension plan the LTD claimants are in, assuming periods on LTD also qualify as service.

Some union groups had life insurance benefit improvements effective in 2005 and onwards which did not apply to members who were on LTD at the time and who never returned to active employment and remained on LTD as at December 31, 2010.  The (PRB) life insurance for these members is determined based on the pre-2005 levels (which may not be captured in the summary below).

Valuation of the Obligations of the Non-Pension Benefits
for Claim Purposes as at the Determination Date

Nortel Canada

PRB – Eligibility and Plan Coverage for Non-Union Members

| Registered Pension Plan | Grandfathering and CARP Criteria | PRB Eligibility Requirements at retirement | Benefits | | |
|---|---|---|---|---|---|
| | | | Retirement Health Care Plan (PRB- M&D) | Basic Life Insurance Benefits (PRB- Life) | Provincial Premiums (PRB – M&D) |
| Managerial and Non-Negotiated Pension (Traditional Part I and Traditional Part II) hired before January 1, 2008 | Minimum age 50 or 28 years of service as of April 30, 2000 | Part I - retire directly from active status or LTD with 55+2 or 30 years of pensionable service; Part II - Minimum age 55 with 5 years of service at retirement | Traditional Grandfathered Plan – Traditional Medical and Dental Benefits (see PRB – M&D Plan Details page for more information) | Basic life insurance amount is equal to pre-retirement basic life coverage (equal to final flex) at retirement.  If the member retired before January 1, 1991, the basic life amount will reduce after retirement by 5% per year until the ultimate level of 75% of the original amount.  If the member retired on or after January 1, 1991, the basic life amount will reduce after retirement by 5% per year until the ultimate level of 25% of the original amount, subject to a minimum of $20,000.<br><br>Prism System Division members have basic life insurance coverage based on years of service and best consecutive years earnings with no reduction after retirement.<br><br>Directors have $75,000 basic life insurance.<br><br>Additional Death Benefit (ADB) – certain retired Northern Electric Company members have an additional death benefit | British Columbia and Quebec RAMQ premiums are fully or partially company paid |
| | Not age 50 or 28 years of service on April 30, 2000 BUT age 50 or older with 5 years of service as of July 1, 2006 | Part I - retire directly from active status or LTD with 55+2 or 30 years of pensionable service; Part II - Minimum age 55 with 10 years of service at retirement | Traditional Plan – Catastrophic Medical Plan Plus Health Care Spending Account ($50/ year of service from age 40) (see PRB – M&D Plan Details page for more information) | $25,000 life insurance plus $10,000 death benefit or just $10,000 death benefit | British Columbia and Quebec RAMQ premiums are fully or partially company paid |
| | Not age 50 or 28 years of service on April 30, 2000 and NOT age 50 or older with 5 years of service as of July 1, 2006 | If retirement age is at least 55 with 10 years of service | No company sponsored M&D plan as a result of the CARP amendments | $10,000 death benefit | N/A |
| Balanced Program (DC plan; Managerial and Non-negotiated Pension Plan Part III) hired before January 1, 2008 | Age 50 or older with 5 years of service as of July 1, 2006 | If retirement age is at least 55 with 10 years of service | Balanced Plan - Health Care Spending Account ($50/ year of service from age 40), and prescription drug coverage (matching Traditional Grandfathered plan) for Quebec residents (see PRB – M&D Plan Details page for more information) | $25,000 life insurance plus $10,000 death benefit or just $10,000 death benefit | British Columbia and Quebec RAMQ premiums are fully or partially company paid |
| | NOT age 50 or older with 5 years of service as of July 1, 2006 | If retirement age is at least 55 with 10 years of service | No company sponsored M&D plan as a result of the CARP amendments | $10,000 death benefit | N/A |

**Mercer (Canada) Limited**

NNC-NNL11755981 / 111

A/C *

00219

TR45610

A/C *

**Valuation of the Obligations of the Non-Pension Benefits**
**for Claim Purposes as at the Determination Date**

Nortel Canada

| Registered Pension Plan | Grandfathering and CARP Criteria | PRB Eligibility Requirements at retirement | Benefits | | |
| | | | Retirement Health Care Plan (PRB-M&D) | Basic Life Insurance Benefits (PRB- Life) | Provincial Premiums (PRB – M&D) |
| --- | --- | --- | --- | --- | --- |
| Investor and Other Pension DC plan members hired before January 1, 2008 | If age 50 or older with 5 years of service as of July 1, 2006 | If retirement age is at least 55 with 10 years of service | No company sponsored M&D plan except for prescription drug coverage (matching Traditional Grandfathered plan) for Quebec residents | N/A | N/A |
| | If NOT age 50 or older with 5 years of service as of July 1, 2006 | If retirement age is at least 55 with 10 years of service | No company sponsored M&D plan | N/A | N/A |
| All employees hired on or after January 1, 2008 | N/A | N/A | N/A | N/A | N/A |
| Nedco | Closed group of covered retirees | Closed group of covered retirees | Company sponsored M&D plan similar to Traditional Grandfathered Plan – Traditional Medical and Dental Benefits | Level benefit; closed group of covered retirees | Quebec RAMQ premiums are fully or partially company paid |

Mercer (Canada) Limited

00220

TR45610

A/C *

**Valuation of the Obligations of the Non-Pension Benefits
for Claim Purposes as at the Determination Date**

Nortel Canada

PRB – Eligibility and Plan Coverage for Union Members

| Registered Pension Plan | Grandfathering criteria | PRB Eligibility at retirement | Benefits | | | |
|---|---|---|---|---|---|---|
| | | | Retirement Health Care Plan (PRB-M&D) | Basic Life Insurance Benefits (PRB- Life) | Survivor Transition Benefit (STB – Accrual) | Provincial Premiums (PRB – M&D) |
| Negotiated Pension Program I | All employees except CAW Union Group Program II with Pension plan admin code 55 | Part I - retire directly from active status or LTD with 55+2 or 30 years of pensionable service; Part II - Minimum age 55 with 5 years of service at retirement | Traditional Grandfathered Plan – Traditional Medical and Dental Benefits (see PRB – M&D Plan Details page for more information) | Various flat or decreasing amounts based on union group and year of retirement. Refer to Union Life insurance page. | Closed group of covered retirees enrolled with dependent M&D coverage – their surviving beneficiaries are provided with sixty (60) months of income replacement benefits and potentially M&D (see details on Survivor Benefits page) upon the members' death | British Columbia and Quebec RAMQ premiums are fully or partially company paid |
| Negotiated Pension Program II | CAW Union Group Program II with Pension plan admin code 55 | If retirement age is at least 55 with 10 years of service | SARP - Health Care Spending Account ($50/ year of service from age 40), and prescription drug coverage (matching Traditional Grandfathered plan) for Quebec residents (see PRB – M&D Plan Details page for more information) | Various flat or decreasing amounts based on union group and year of retirement. Refer to Union Life insurance page. | Closed group of covered retirees enrolled with dependent M&D coverage – their surviving beneficiaries are provided with sixty (60) months of income replacement benefits and potentially M&D (see details on Survivor Benefits page) upon the members' death | British Columbia and Quebec RAMQ premiums are fully or partially company paid |

NNC-NNL11755981 / 113

**Mercer (Canada) Limited**

00221

TR45610

**Valuation of the Obligations of the Non-Pension Benefits
for Claim Purposes as at the Determination Date**

Nortel Canada

## Survivor Benefits (SIB, STB – in receipt)

| Employee Group | Benefits | | |
|---|---|---|---|
| | Income Benefits | Retirement Health Care Plan (PRB – M&D or STB – Accrual – M&D) | Provincial Premiums (PRB – M&D or STB – Accrual – M&D) |
| Non-union | Survivor Income Benefit (SIB) - Surviving spouses of certain non-union deceased retirees are provided with monthly income benefits for life upon the members' death. | Traditional Grandfathered or Traditional or Balanced Plan –Eligible surviving spouse receive the same coverage for their lifetime, as when the member was alive, if retiree elected a joint & survivor pension or entitled to the SIB benefit, except for any health care spending account balance which would decrease to 50% of the amount prior to the member's death. | British Columbia and Quebec RAMQ premiums are fully or partially company paid |
| Union | Survivor Transition Benefit (STB) - Surviving spouses of certain union deceased retirees are provided with sixty (60) months of income replacement benefits upon the member's death. They make take the payment as a lump sum or monthly annuity. | Traditional or SARP Plan – Eligible surviving spouses receive the same coverage for their lifetime, as when the member was alive, if retiree elected a joint & survivor pension, except for any health care spending account balance which would decrease to 50% of the amount prior to the member's death. If retiree retired from Nortel prior to January 1, 1994 and did not elect a joint & survivor pension and surviving spouse entitled to STB benefit or retiree was a former Nedco employee then survivor coverage provided access for sixty (60) months to this coverage paid 100% by surviving spouse. If retiree retired from Nortel after January 1, 1994 and did not elect a joint & survivor pension and surviving spouse entitled to STB benefit, then survivor coverage provided for sixty (60) months at no cost to survivor. If retiree did not elect a joint & survivor pension and surviving spouse not entitled to STB benefit, then no survivor coverage provided. | British Columbia and Quebec RAMQ premiums are fully or partially company paid |

**Mercer (Canada) Limited**

31

Valuation of the Obligations of the Non-Pension Benefits
for Claim Purposes as at the Determination Date

Nortel Canada

## PRB – M&D Plan Details

| | Traditional Medical and Dental Plan | Catastrophic Plan | Healthcare Spending Account |
|---|---|---|---|
| Deductible | $25/50 (single/family) per calendar year<br><br>Applies to expenses incurred under either or both health and dental plans | $7,500 lifetime out-of-pocket deductible per family<br><br>Applies to certain medical benefits only | N/A |
| Overall Plan Maximum | Unlimited | $500,000 lifetime maximum per family | N/A |
| Benefit Amount | Out-of-pocket maximum of $1,000 per calendar year per family | Reimburses 100% (from catastrophic plan) of eligible medical expenses after the lifetime deductible is satisfied | Annual company paid allocation is $50 per year of service from age 40 |
| Spousal & Dependent Coverage | Yes, depending on pension joint and survivor elections | Yes, depending on pension joint and survivor elections | Annual company paid allocation reduced by half after the death of the pensioner |
| Drug (Non-Quebec) | Prescription drugs covered at 80% | Prescription drugs, generic substitution where possible, covered at 100%<br><br>$7 dispensing fee maximum | Not covered |
| Drug (Quebec) – Pensioners 65 and over: 2 Choices | Provincial RQ Drug Plan<br><br>• Reimburses a portion of the eligible expenses up to an out of pocket maximum determined by RAMQ and 100% in excess of the out of pocket maximum<br><br>• Nortel Canada pays premiums (taxable benefit) to a maximum of $175/yr<br><br>Nortel Canada RAMQ Equivalent Drug Plan<br><br>• 80% eligible on RAMQ formulary up to an annual out of pocket maximum determined by RAMQ and 100% of expenses in excess of the allowable out of pocket maximum<br><br>• Pensioner pays premiums | Provincial RQ Drug Plan<br><br>• Reimburses a portion of the eligible expenses up to an out of pocket maximum determined by RAMQ and 100% in excess of the out of pocket maximum<br><br>• Nortel Canada pays premiums (taxable benefit) to a maximum of $175/yr<br><br>Nortel Canada RAMQ Equivalent Drug Plan<br><br>• 80% eligible on RAMQ formulary up to an annual out of pocket maximum determined by RAMQ and 100% of expenses in excess of the allowable out of pocket maximum<br><br>• Pensioner pays premiums | Provincial RQ Drug Plan<br><br>• Reimburses a portion of the eligible expenses up to an out of pocket maximum determined by RAMQ and 100% in excess of the out of pocket maximum<br><br>• Nortel Canada pays premiums (taxable benefit) to a maximum of $175/yr<br><br>Nortel Canada RAMQ Equivalent Drug Plan<br><br>• 80% eligible on RAMQ formulary up to an annual out of pocket maximum determined by RAMQ and 100% of expenses in excess of the allowable out of pocket maximum<br><br>• Pensioner pays premiums |
| Hospital | 100% of the first $50 per day and 50% of the remaining cost<br><br>Difference between ward and private room coverage | Not covered | Not covered |
| Private Duty Nursing | 80% to a maximum of $12,500 in period of illness/injury | 100% to a maximum of $12,500 in period of illness/injury, subject to deductible and overall plan maximum | Not covered |
| Vision Care | 50% up to a maximum of $100/ 2yrs /per person, and $200/2yrs for severe eye conditions | Not covered | Not covered |
| Hearing Aid | 50% to a maximum of $200 /2yrs/ per person | Not covered | Not covered |
| Provincial Health Insurance Premium | Nortel Canada Networks pays 100% of the provincial health insurance premiums for pensioners in British Columbia. | Nortel Canada Networks pays 100% of the provincial health insurance premiums for pensioners in British Columbia. | Nortel Canada Networks pays 100% of the provincial health insurance premiums for pensioners in British Columbia. |

Mercer (Canada) Limited

32

NNC-NNL11755981 / 115

A/C *

00223

TR45610

**Valuation of the Obligations of the Non-Pension Benefits**
**for Claim Purposes as at the Determination Date**

Nortel Canada

| | Traditional Medical and Dental Plan | Catastrophic Plan | Healthcare Spending Account |
|---|---|---|---|
| Other Medical | Includes:<br>80% co-insurance:<br>• Out of province medical coverage<br>• Medical equipment and supplies<br>• Ambulance services<br>• X-rays<br>• Accidental dental<br>• Paramedical services ($250 maximum per person per calendar year)<br>• Orthopaedic shoes<br>• Physiotherapist (no maximum)<br>• Other parameds ($250 maximum)<br>50% co-insurance:<br>• Nursing Homes ($10 per day for lifetime total of 365 days) | Includes:<br>• Medical equipment and supplies<br>• Ambulance services<br>• X-rays<br>• Selected list of paramedical services (physiotherapist, chiropractor, speech therapist, osteopath) $250 maximum per practitioner per calendar year<br>• 100% subject to deductible and overall plan maximum | Not covered |
| Dental<br>• Basic<br>• Periodontic / Endodontic<br>• Major Restorative<br>• Orthodontic<br>• Maximum Benefit | Coinsurance of:<br>80%<br>50%<br>50%<br>None<br>Periodontic / Endodontic: $1,000 per person in any 3 years<br>Major: $1,000 per person per calendar year | Not covered | Not covered |

**Mercer (Canada) Limited**

33

A/C *

**Valuation of the Obligations of the Non-Pension Benefits**
**for Claim Purposes as at the Determination Date**

Nortel Canada

### PRB – Union Life Insurance

| | Original Basic Life Insurance Amount | | Reduction Schedule[27] |
|---|---|---|---|
| CAW Program I | Benefit Group | Amount of Coverage | Retired before January 1, 1991, basic life insurance coverage will reduce at retirement by 5% per year until it reduces to 75% of original amount. |
| | 1 | $76,000 | Retired on or after January 1, 1991, but before April 1, 2003, basic life insurance coverage will reduce at retirement by 5% per year until it reduces to 50% of original amount, subject to a minimum amount of $10,000. |
| | 2 | 77,500 | |
| | 3 | 80,000 | |
| | 4 | 83,500 | Retired on or after April 1, 2003, basic life insurance coverage will reduce by 50% immediately at age 65 or at retirement, whichever is earlier, and will continue to reduce 5% per year thereafter until it reduces to a minimum amount of $25,000. |
| | 5 | 87,000 | |
| CAW Program II | Benefit Group | Amount of Coverage | Option 1 |
| | | | Retired on or after April 1, 2003, the basic life insurance coverage will be based on 50% reduction immediately at age 65 or at retirement, whichever is earlier, and will continue to reduce and 5% per year thereafter until it reduces to a minimum of $30,000. |
| | 1 | $76,000 | |
| | 2 | 77,500 | |
| | 3 | 80,000 | |
| | 4 | 83,500 | Option 2: In order to avoid taxable benefits, employee can choose a $10,000 death benefit instead of the Option 1 coverage. |
| | 5 | 87,000 | |
| CEP Local 4 and CUCW Local 2 | Benefit Group | Amount of Coverage | Retired before January 1, 1991, basic life insurance coverage will reduce at retirement by 5% per year until it reduces to 75% of original amount. |
| | 4 | $40,000 | Retired on or after January 1, 1991, the original basic life insurance amount will reduce by 5% over the next 10 years until it reaches a minimum of $10,000. |
| CEP Local 9 | Benefit Group | Amount of Coverage | Retired before January 1, 1991, basic life insurance coverage will reduce at retirement by 5% per year until it reduces to 75% of original amount. |
| | 1 | $32,500 | |
| | 2 | 34,000 | Retired on or after January 1, 1991, the original basic life insurance amount will reduce upon retirement by 5% over the next 10 years until it reaches a minimum of $10,000 |
| | 3 | 36,500 | |
| | 4 | 40,000 | |
| | 5 | 43,500 | |
| COEU | $43,500 | | The original basic life insurance amount will reduce by 5% on each anniversary of your retirement date over the next 10 years until it is reduced by 50% minimum coverage is $10,000. |
| CUCW Local 1 | $87,000 | | Retired before January 1, 1991, basic life insurance coverage will reduce at retirement by 5% per year until it reduces to 75% of original amount. |
| | | | Retired on or after January 1, 1991, but before May 1, 2004, life insurance coverage will reduce by 5% per year until it reduces to 50% of original amount, subject to a minimum amount of $10,000. |
| | | | Retired on or after May 1, 2004, life insurance coverage will reduce by 50% immediately at age 65 or at retirement, whichever is earlier, and will continue to reduce 5% per year thereafter until it reduces to a minimum amount of $21,750; rounded down to the thousands |
| CUOE and GW Local 100 | Benefit Group | Amount of Coverage | N/A |
| | 2 | $31,000 | |
| | 3 | 33,500 | |

---

[27]    All mention of reductions are based on the original amount, and therefore on a straight-line basis.

**Mercer (Canada) Limited**

34

00225

TR45610

Valuation of the Obligations of the Non-Pension Benefits
for Claim Purposes as at the Determination Date

Nortel Canada

| | Original Basic Life Insurance Amount | | Reduction Schedule[27] |
|---|---|---|---|
| IUOE 796 | Benefit Group | Amount of Coverage | Retired before January 1, 1991, basic life insurance coverage will reduce at retirement by 5% per year until it reduces to 75% of original amount. Retired on or after January 1, 1991, but before October 1, 2003, life insurance coverage will reduce by 5% per year until it reduces to 50% of original amount, subject to a minimum amount of $10,000. Retired on or after October 1, 2003, life insurance coverage will reduce by 50% immediately at age 65 or at retirement, whichever is earlier, and will continue to reduce 5% per year thereafter until it reduces to a minimum amount of $25,000; rounded down to the thousands |
| | 2 | $77,500 | |
| | 3 | 80,000 | |
| SIPIQ | Benefit Group | Amount of Coverage | Retired before January 1, 1991, basic life insurance coverage will reduce at retirement by 5% per year until it reduces to 75% of original amount. |
| | 2 | $31,000 | Retired on or after January 1, 1991, life insurance coverage will reduce by 5% per year until it reduces to 50% of original amount, subject to a minimum amount of $10,000. |
| UNI | $22,000 | | N/A |
| United Steelworkers of America, Barrie ON | 1 x annual base rate of earned income to maximum of $65,000 | | Life insurance coverage will reduce by 50% at age 65 |

NNC-NNL11755981 / 118

00226

TR45610

A/C *

Appendix B

# Summary of Plan Provisions for Benefits Provided to LTD Claimants

## *LTD – Income Benefits*

For most union members, the income benefit is a flat amount based on their benefit group. There is a 12 month elimination period to be satisfied before LTD starts. There is a 12 month own occupation period. There is a 75% all source maximum and no provision for Cost of Living Adjustment (COLA) on the benefit.

For the non-union members, the income benefit is based on their Flexible Benefit plan election, with the option of 50% or 66 2/3% of salary (reduced from 70%, effective January 1, 2006), with or without Cost of Living Adjustment (COLA) benefit. Beginning after two years of receiving LTD benefit payments, each January, the full amount of disability payment will be increased by the lesser of 60% of the Consumer Price Index or 6%. There is a 6 month elimination period to be satisfied before LTD starts and a 12 month own occupation period. This COLA feature does not apply if the member is covered under the core LTD option only.

## *LTD – Medical and Dental Benefits*

For both union and non-union LTD claimants, continuation of medical and dental benefits and life insurance is provided up to the earlier of recovery, death or age 65. If the non-union member has waived coverage or is in the Basic or Comprehensive plan, he or she will be put into the Comprehensive plan at no cost to the member. If the member is in the Plus or Select plan, he or she can continue in that plan provided the member pays the member contributions.

**Valuation of the Obligations of the Non-Pension Benefits**          Nortel Canada
**for Claim Purposes as at the Determination Date**

00228

In general, LTD claimants are provided the same benefits as active members.[28] The benefits provided are pursuant to the applicable benefit plan at the time the member is disabled.

Union LTD claimants continue to receive the same benefits as provided under their respective union group. Non-union LTD claimants continue to receive benefits as provided on the next pages under the Nortel Canada Flex Plan.

---

[28]   Where the benefit program has changed since the member became disabled, the member may be provided benefits under the earlier benefit program or may have been changed to the newer benefit plan. As an example, certain disabled union members are provided with STB coverage.

**Mercer (Canada) Limited**                                              37

NNC-NNL11755981 / 120

**Valuation of the Obligations of the Non-Pension Benefits for Claim Purposes as at the Determination Date**

Nortel Canada

00229

## LTD – Medical and Dental (Non-Union Flex Plan)

| Benefit | Basic | Comprehensive | Plus | Select |
|---|---|---|---|---|
| Percentage paid for covered services | 80% | 90% | 95% | 100% |
| Prescription drugs | | | | |
| • Generic drugs | Covered under all four options | | | |
| • Brand name drugs | Covered only if there is no generic equivalent on the market | | | |
| • Drug formulary | Basic, Comprehensive, and Plus options: New drugs are not covered under the plan unless approved by at least one provincial plan first | | | New drugs covered automatically, subject to plan provisions |
| • Prior authorization | Required for five categories of drugs, plus the drug Wellbutrin™ | | | Required for two categories of drugs |
| Annual deductible for all eligible medical expenses (except drugs) | | | | |
| • Individual | None | $40 | None | None |
| • Family | None | $80 | None | None |
| Per prescription copayment | $8 | $8 | $8 | $8 |
| Dispensing fee maximum per prescribed drug | $7 | $7 | $7 | $7 |
| Annual out-of-pocket maximum (once you've paid this maximum per year, the balance of prescription drug expenses will be paid at 100%) | $954 per person[29] | $954 per person[29] | $954 per person[29] | $954 per person[29] |
| Hospital coverage | | | | |
| • Acute and convalescent care | None | Semi-private room rate, up to $225 per day for acute and convalescent care, and up to 90 days per calendar year for convalescent care | Semi-private room rate for acute and convalescent care, and up to 90 days per calendar year for convalescent care | Semi-private room rate for acute and convalescent care, and up to 90 days per calendar year for convalescent care |
| Ambulance | Ground transportation and emergency air ambulance | | | |
| Professional services | | Maximums per individual year | | |
| • Chiropractor[30] | One combined maximum of $300 for these professionals | $300 | $500 | $500 |
| • Osteopath[31] | | $300 | $500 | $500 |
| • Chiropodist | | $300 | $500 | $500 |
| • Speech therapy | | $300 | $500 | $500 |
| • Naturopath | | $300 | $500 | $500 |
| • Massage therapy[32] | | $300 | $500 | $500 |
| • Podiatrist | | $300 | $500 | $500 |

---

[29] All plan options covering eligible prescription drugs are designed to meet the current requirements of Bill 33 for Quebec residents.

[30] Under the Basic and Comprehensive options, chiropractic expenses are covered only after provincial health insurance plan coverage, where applicable, has been exhausted. Under the Plus and Select options, chiropractic coverage begins on the first visit, whether or not the provincial health insurance provides coverage.

[31] Services must be performed by a licensed physician (MD) or a licensed acupuncturist approved by the provincial regulating body in the province. Currently, only British Columbia, Alberta and Quebec have provincially regulated acupuncturists. This may be extended to other provinces in the future. In Ontario, osteopathic treatments must be performed by practitioners who are regulated and certified by the College of Physicians and Surgeons of Ontario.

[32] Requires a referral from a physician.

**Mercer (Canada) Limited**

38

**Valuation of the Obligations of the Non-Pension Benefits for Claim Purposes as at the Determination Date**

Nortel Canada

00230

| Benefit | Basic | Comprehensive | Plus | Select |
|---|---|---|---|---|
| • Acupuncture[33] | | $300 | $500 | $500 |
| • Dietician[34]<br><br>Contract shows dietician covered under Basic Psychologist | | $300 | $500 | $500 |
| Psychologist | $300 | $300 | $500 | $500 |
| Physiotherapy | $300 | $300 | $500 | $500 |
| Private Duty Nursing[34] | | | | |
| • Maximum per calendar year | $10,000 | $12,500 | $15,000 | $15,000 |
| Out-of-province (within Canada) emergency medical expenses and travel assistance while travelling for personal reasons | 21 days maximum | 31 days maximum | 90 days maximum | 90 days maximum |
| Overall maximum per person | $1,000,000 lifetime[35] | | | |

---

[33]    Services must be performed by a licensed physician (MD) or a licensed acupuncturist approved by the provincial regulating body in your province. Currently, only British Columbia, Alberta and Quebec have provincially regulated acupuncturists. This may be extended to other provinces in the future. In Ontario, osteopathic treatments must be performed by practitioners who are regulated and certified by the College of Physicians and Surgeons of Ontario.

[34]    Requires a referral from a physician.

[35]    Quebec residents, please note that all plan options covering eligible prescription drugs are designed to meet the current requirements of Bill 33.

**Mercer (Canada) Limited**

39

NNC-NNL11755981 / 122

## LTD – Basic Life Insurance and Optional Life Insurance

Premium for the employer paid basic life insurance and employee paid optional insurance are paid by Nortel Canada or waived while the employee is disabled.

Subject to the following, the basic life insurance coverage amount is equal to the original basic life amount (before reduction) as summarized earlier in the post retirement section. For members of certain unions, the basic life insurance coverage amount is equal to the coverage the individual had at the time he or she became an LTD claimant.

For non-union employees, optional employee life insurance coverage are available in multiplies of 1 to 5 times benefit earnings.

For union employees, optional employee life insurance coverage ranges from $10,000 to $110,000.

For both groups, the definition of disability is the same as the LTD definition.

## LTD – AD&D Insurance

Premiums for the AD&D insurance are paid by Nortel Canada or waived while the employee is disabled.

Union employees are entitled to AD&D insurance with coverage equal to their basic life insurance.

Non-union employees are entitled to optional employee and dependent AD&D coverage through the Flex Plan. Premium for the basic life insurance is continued and paid by Nortel Canada while the employee is disabled. Non-union employee AD&D coverage is available in multiples of 1 to 5 times benefit earnings, to a maximum of $1,500,000. AD&D coverage is also available for the employee's spouse and eligible children based on a percentage of the employee's AD&D coverage.

## LTD – Dependent Life Insurance

Premiums for the employee paid optional dependent insurance are paid by Nortel Canada or waived while the employee is disabled.

For non-union employees, the optional dependent spousal life coverage ranges from $10,000 to $500,000. The optional dependent child life coverage ranges from $5,000 to $25,000.

For union employees, the optional dependent spousal life coverage ranges from $5,000 to $45,000. The optional dependent child life coverage ranges from $2,500 to $10,000.

For both groups, the definition of disability is the same as the LTD definition.

NNC-NNL11755981 / 123

## LTD – STB – Accrual

If the union member went on disability before April 1, 2003 and has a covered dependent, such dependent is eligible to receive the STB income benefit if the member dies while on LTD.

Nortel Canada 00233



Appendix C

# Summary of Plan Provisions for Survivor Benefits

## Survivor Income Benefits (SIB) and Survivor Transition Benefits (STB)

Survivor Income Benefit (SIB) is a monthly income benefit provided upon the death of non-union members. This benefit coverage is no longer provided with the exception of a closed group of surviving spouses. The payment of benefits is provided for the lifetime of the surviving spouse.

Survivor Transition Benefit (STB) is a monthly income benefit provided upon the death of certain union members or certain retired union members. The monthly benefit is provided to the surviving spouse for 60 months following the death of the member.

Coverage for two of the union groups is as follows:

- CAW – Effective April 1, 2003, there is no STB for active members or future pensioners. Members on LTD at the time of this benefit change will maintain STB coverage while on LTD, but will no longer have STB coverage if they retire or return to active status.

- COEU – Effective January 1, 2004, active members were covered under the non union Flex plan, and STB benefits for current or future pensioners were eliminated.

Current pensioners retain eligibility for the STB coverage if they retired before the dates outlined above and they have an eligible dependent upon their death.

NNC-NNL11755981 / 125

Valuation of the Obligations of the Non-Pension Benefits
for Claim Purposes as at the Determination Date

Nortel Canada

00234

---

| Appendix D |

# Employer Certification

With respect to the Report on the Valuation of the Obligations of the Non-Pension Benefits for Claim Purposes as at the Determination Date for Nortel's Benefit Plans, I hereby certify that, to the best of my knowledge and belief:

- The membership data supplied to the actuary provides a complete and accurate description of all persons who are entitled to benefits under the terms of the Plans for service up to the date of the data provided and supplemented by those persons who became entitled to benefits during the Notice Period, all as outlined in Section 3.

- A copy of the plan documents and of all amendments made up to the date of the valuation were supplied to the actuary.

- All events subsequent to the valuation that may have an impact on the results of the valuation have been communicated to the actuary.

September 19, 2011
_____
Date

_____
Signed

John Shaughnessy
_____
Name

HR Leader, Canada
_____
Title

Mercer (Canada) Limited

43

00235

# MERCER

Mercer (Canada) Limited
161 Bay Street
P.O. Box 501
Toronto, Ontario  M5J 2S5
+1 416 868 2000

**Consulting. Outsourcing. Investments.**

Mercer (Canada) Limited

NNC-NNL11755981 / 127

# APPENDIX "D-1"

00236

# APPENDIX "D" – TERMINATION AND SEVERANCE CLAIM METHODOLOGY

## TABLE OF CONTENTS

**Appendix "D-1" – Description of Termination and Severance Claim Methodology**

A.     Pre-Filing Terminated Employees – The Pre-Filing Terminated Employee Termination and Severance Claim Methodology ................................................................................................1

B.     Post-Filing Terminated Employees – The Post-Filing Terminated Employee Termination and Severance Claim Methodology ........................................................................................8

C.     Post-Filing Transferred Employees – The Post-Filing Transferred Employee Termination and Severance Claim Methodology ......................................................................................14

D.     Pensioner Eligible Terminated Employees – The Pensioner Eligible Terminated Employee Termination and Severance Claim Methodology ........................................................19

E.     LTD Beneficiaries – The LTD Beneficiary Termination and Severance Claim Methodology ...........................................................................................................................23

F.     Active Employees ...........................................................................................................26

**Appendix "D-2" – Aggregate Severance Grid**

**Appendix "D-3 – Severance Grid Formulae**

00237

## APPENDIX D
## TERMINATION AND SEVERANCE CLAIM METHODOLOGY[1]

1.  This Appendix sets out the proposed termination and severance claim methodology (the methodology described below and as reflected in the Severance Grid attached as Appendices D-2 and D-3 and the Mercer 2011 Valuations attached as Appendices "B" and "C", the "**Termination and Severance Claim Methodology**"), as applicable to each of the categories of Employees described below.

A.  <u>**Pre-Filing Terminated Employees – The Pre-Filing Terminated Employee Termination and Severance Claim Methodology**</u>

2.  The termination and severance claims of Terminated Employees who were terminated or received notice of termination prior to the Filing Date and have amounts owing to them under their termination agreements (the "**Pre-Filing Terminated Employees**") will be calculated in accordance with their termination agreements, which differ and encompass different kinds of payments. Because of these differences, a consistent methodology must be applied to calculate the amounts outstanding.

(a)  For Pre-Filing Terminated Employees who were bridged to retirement pursuant to their termination agreements (that is, employees whose termination agreements provided for a notice period equal to the amount of time required to make them pensioner eligible[2] or eligible for an enhanced early retirement pension under the defined benefit plan) (collectively, "**Pre-Filing Terminated Bridging**

---

[1] Capitalized terms used but not otherwise defined herein have the meaning given to them in the Seventy-Fifth Report.

[2] For the purposes of this Appendix and the Termination and Severance Claim Methodology described herein, pensioner eligible means an employee who is eligible to retire.

NNC-NNL11755981 / 130

- 2 -

00238

**Employees"**[3]), the following periods are used in the calculation of the Termination and Severance Pay Claim:

(i)    the notice period set out in the termination agreement (the **"Pre-Filing Bridging Notice Period"**); and

(ii)    the bridging period set out in the termination agreement, being the period equal to the amount of time required following the Pre-Filing Bridging Notice Period to make the employee pensioner eligible or eligible for an enhanced early retirement pension under the defined benefit plan (the **"Bridging Period"**, together with the Pre-Filing Bridging Notice Period, the **"Pre-Filing Notice/Bridging Period"**).

(b)    Pre-Filing Terminated Bridging Employees have a Termination and Severance Pay Claim for:

(i)    the amount of severance outstanding under the termination agreement calculated as:

1.    base weekly salary (based on the employee's base salary as at the date the employment was terminated and calculated as reflected in chart 1 of the Severance Grid Formulae) for the Pre-Filing Bridging Notice Period, plus

2.    the severance amount set out in the termination agreement, minus

3.    any payments made by the Applicants under the termination agreement;

(ii)    employee benefits (excluding pension accrual and vacation pay) during the outstanding Pre-Filing Notice/Bridging Period (determined as reflected

---

[3] Pre-Filing Terminated Bridging Employees are employees who were terminated prior to the Filing Date and whose termination agreements provided for a special leave of absence prior to pension ("**SPLA**") at the date of termination provided for therein.

00239

- 3 -

in chart 1 of the Severance Grid Formulae, the "**Outstanding Notice/Bridging Period**") calculated as 5.14% of the base weekly salary for the Outstanding Notice/Bridging Period;

(iii)    vacation pay on any outstanding ESA Minimum Notice Period (determined as reflected in chart 1 of the Severance Grid Formulae) based on vacation accrual pursuant to the Nortel Vacation Policy and base weekly salary;

(iv)    pension accrual during the Outstanding Notice/Bridging Period as follows: an additional claim amount for any lost pension growth during the Outstanding Notice/Bridging Period (for those employees with continued eligibility under the defined benefit plan) or for lost pension contributions during the Outstanding Notice/Bridging Period (for those employees participating in the defined contribution pension plans) calculated in accordance with the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation;

(v)    if a Pre-Filing Terminated Bridging Employee becomes eligible for Pensioner M&D and/or Pensioner Life by the end of the Pre-Filing Notice/Bridging Period, an additional claim amount for these benefits calculated in accordance with the Mercer 2011 Non-Pension Benefits Valuation;

(vi)    if a Pre-Filing Terminated Bridging Employee becomes eligible under a Non-Registered Pension Plan by the end of the Pre-Filing Notice/Bridging Period, an additional claim amount under these plans calculated in accordance with the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation; and

(vii)    notwithstanding the foregoing, a Pre-Filing Terminated Bridging Employee who was pensioner eligible at the date of termination and opted to take a commuted vale under Part 1 of the Managerial Plan or Program I of the Negotiated Plan:

00240

- 4 -

1.   is entitled to a Termination and Severance Pay Claim set out in 2(b)(iv) above; and

2.   is not entitled to a Termination and Severance Pay Claim set out in 2(b)(v) and 2(b)(vi) (with respect to TRA and RAP) above;

(c)   Pre-Filing Terminated Employees who were on salary continuance pursuant to their termination agreements (**"Pre-Filing Terminated Salary Continuance Employees"**) have a Termination and Severance Pay Claim for:

(i)   the amount of severance outstanding under the termination agreement calculated as:

1.   base bi-weekly salary (in the amount set out in the termination agreement and calculated as reflected in chart 2 of the Severance Grid Formulae) during the salary continuance period set out in the termination agreement (the **"Salary Continuance Period"**), minus

2.   any payments made by the Applicants under the termination agreement,

(the **"Salary Continuance Base Severance Amount"**);

(ii)   employee benefits (excluding pension accrual and vacation pay) during the outstanding Salary Continuance Period (which outstanding period is determined as reflected in chart 2 of the Severance Grid Formulae, the **"Outstanding Salary Continuance Period"**) calculated as 5.14% of the Salary Continuance Base Severance Amount;[4]

(iii)   pension accrual during the Outstanding Salary Continuance Period as follows: an additional claim amount for any lost pension growth during

---

[4] Nortel has advised the Monitor that the termination agreements of Pre-Filing Terminated Salary Continuance Employees provide that vacation does not accrue during the Salary Continuance Period.

**00241**

- 5 -

the Outstanding Salary Continuance Period (for those employees with continued eligibility under the defined benefit plan) or for lost pension contributions during the Outstanding Salary Continuance Period (for those employees participating in the defined contribution pension plans) calculated in accordance with the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation;

(iv) if a Pre-Filing Terminated Salary Continuance Employee becomes eligible for Pensioner M&D and/or Pensioner Life by the end of the Salary Continuance Period, an additional claim amount for these benefits calculated in accordance with the Mercer 2011 Non-Pension Benefits Valuation; and

(v) if a Pre-Filing Terminated Salary Continuance Employee becomes eligible under a Non-Registered Pension Plan by the end of the Salary Continuance Period, an additional claim amount under these plans calculated in accordance with the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation;

(d) Pre-Filing Terminated Employees who were entitled to a lump sum payment pursuant to their termination agreements[5] (**"Pre-Filing Terminated Lump Sum Employees"**) have a Termination and Severance Pay Claim for:

(i) the amount of severance outstanding under the termination agreement calculated as:

---

[5] Nortel has advised the Monitor that the termination agreements of Pre-Filing Terminated Lump Sum Employees provided that such employees could continue to file claims for benefits in accordance with their agreements and therefore employee benefits do not form part of their Termination and Severance Pay Claim. Nortel has also advised the Monitor that the termination agreements of Pre-Filing Terminated Lump Sum Employees provided for a severance amount that encompassed Registered Pension Plan accruals. In addition, grow-ins under the Non-Registered Plans do not form part of the Termination and Severance Pay Claim for Pre-Filing Terminated Lump Sum Employees as Pre-Filing Terminated Lump Sum Employees would have been offered bridging to pensioner eligibility if they were bridging eligible. Further, if Pre-Filing Terminated Lump Sum Employees were pensioner eligible at the time of termination and retired from an Applicant, they are treated as Pensioners.

1.   base monthly salary (for Unionized Employees) or base weekly salary (for Non-Unionized Employees), as applicable (based on the employee's base salary as at the date the employment was terminated and calculated as reflected in charts 3.1 and 3.2, respectively, of the Severance Grid Formulae) during the outstanding notice period under the termination agreement (determined as reflected in charts 3.1 and 3.2 of the Severance Grid Formulae, the "**Outstanding Lump Sum Employee Notice Period**"), plus

2.   the severance amount set out in the termination agreement, minus

3.   any payments made by the Applicants under the termination agreement;

(ii)   vacation pay on any outstanding ESA Minimum Notice Period (determined as reflected in charts 3.1 and 3.2, respectively, of the Severance Grid Formulae) based on vacation accrual pursuant to the Nortel Vacation Policy and base monthly salary (for Unionized Employees) or base weekly salary (for Non-Unionized Employees);

(iii)   pension accrual during the Outstanding Lump Sum Employee Notice Period as follows: an additional claim amount for any lost pension growth during the period (for those employees with continued eligibility under the defined benefit plan) or for lost pension contributions during the applicable period (for those employees participating in the defined contribution pension plans) calculated in accordance with the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation.

(e)   Pre-Filing Terminated Employees determined by the Applicants to be entitled (as at December 31, 2010) to additional contingency weeks of notice pursuant to their

00243

- 7 -

termination agreements[6] (**"Pre-Filing Terminated Contingency Employees"**) have a Termination and Severance Pay Claim for:

(i)     the amount of severance outstanding for contingency weeks under the termination agreement calculated as:

      1.     base weekly salary (based on the employee's base salary as at the date the employment was terminated and calculated as reflected in chart 4 of the Severance Grid Formulae) for the number of contingency weeks set out in the termination agreement, minus

      2.     any payments made by the Applicants under the termination agreement in respect of the contingency weeks.

(f)     Pre-Filing Terminated Employees who have entered into a settlement termination agreement with the Applicants[7] (**"Pre-Filing Terminated Settlement Employees"**) have a Termination and Severance Pay Claim for:

(i)     the amount of severance outstanding under the settlement termination agreement calculated as:

      1.     the severance amount set out in the settlement termination agreement, minus

---

[6] Nortel has advised the Monitor that Pre-Filing Terminated Contingency Employees received their working notice and full severance payment under their termination agreements such that employee benefits do not form part of the Termination and Severance Pay Claim for Pre-Filing Terminated Contingency Employees. Nortel has also advised the Monitor that the termination agreements of Pre-Filing Terminated Contingency Employees provided for a severance amount that encompassed Registered Pension Plan accruals. In addition, grow-ins under the Non-Registered Plans do not form part of the Termination and Severance Pay Claim for Pre-Filing Terminated Contingency Employees as Pre-Filing Terminated Contingency Employees would have been offered bridging to pensioner eligibility if they were bridging eligible. Further, if Pre-Filing Terminated Contingency Employees were pensioner eligible at the time of termination and retired from an Applicant, they are treated as Pensioners.

[7] Nortel has advised the Monitor that settlement termination agreements provided for a severance amount that encompassed all employee benefits, Registered Pension Plan accruals and grow-ins under Non-Registered Plans such that these claims do not form part of the Termination and Severance Pay Claim for Pre-Filing Terminated Settlement Employees.

NNC-NNL11755981 / 136

00244

- 8 -

2.    any payments made by the Applicants under the settlement termination agreement.

**B. <u>Post-Filing Terminated Employees – The Post-Filing Terminated Employee Termination and Severance Claim Methodology</u>**

3.    The termination and severance claim methodology with respect to Terminated Employees other than Pre-Filing Terminated Employees (the "**Post-Filing Terminated Employees**")[8] is as follows:

(a)    for Applicable Rehired Employees, the applicable ESA Minimum Notice/Severance Period is used to calculate the Termination and Severance Pay Claim (except for vacation pay);

(b)    for Post-Filing Terminated Employees who are Unionized Employees, the periods used to calculate the Termination and Severance Pay Claim (except for vacation pay) differ depending on whether the Post-Filing Terminated Employee was pensioner eligible at the date of termination, eligible for bridging to pensioner eligibility at the date of termination or neither as follows:

(i)    Post-Filing Terminated Employees who are Unionized Employees and are pensioner eligible at the date of termination are addressed in paragraph 5 below;

(ii)    in respect of Post-Filing Terminated Employees who are Unionized Employees and are eligible for bridging under the applicable collective bargaining agreement at the date of termination ("**CBA Bridging Employees**"), the following periods are used:

---

[8] For the purposes of the Post-Filing Terminated Employee Termination and Severance Claim Methodology, Post-Filing Terminated Employees exclude Post-Filing Transferred Employees, Pensioner Eligible Terminated Employees and LTD Beneficiaries.

NNC-NNL11755981 / 137

00245

- 9 -

1.  the number of weeks the employee is entitled to notice as set out in the collective bargaining agreement (the "**CBA Notice Period**");

2.  the period equal to the amount of time required following the CBA Notice Period to make the employee pensioner eligible (the "**CBA Bridging Period**", together with the CBA Notice Period, the "**CBA Notice/Bridging Period**"); and

3.  the number of months in addition to the CBA Notice Period set out in the collective bargaining agreement in respect of which an employee is entitled to continued non-pension benefits following layoff (the "**CBA Benefit Period**")[9];

(iii)  in respect of Post-Filing Terminated Employees who are Unionized Employees and are not eligible for bridging or are not pensioner eligible at the date of termination under the applicable collective bargaining agreement (the "**Non-Retirement Eligible CBA Employees**"), the CBA Notice Period and CBA Benefit Period[10] are used, as well as the number of weeks set out in the collective bargaining agreement in respect of which an employee with no recall rights is entitled to severance (the "**CBA Severance Period**", together with the CBA Notice Period, the "**CBA Notice/Severance Period**");

(c)  for Post-Filing Terminated Employees who are Non-Unionized Employees and who have a written employment contract with the Applicants that expressly sets out the number of weeks in respect of which the employee is entitled to notice and severance (collectively, the "**Contract Notice Period**"), the Contract Notice

---

[9] The CBA Benefit Period runs concurrently with the CBA Bridging Period and CBA Severance Period, as applicable, such that in certain circumstances, it is the greater of: (i) the CBA Bridging Period or CBA Severance Period, as applicable; and (ii) the CBA Benefit Period, that is used.
[10] See above footnote.

NNC-NNL11755981 / 138

**00246**

- 10 -

Period is used in calculating the Termination and Severance Pay Claim (except for vacation pay);

(d)    for Post-Filing Terminated Employees who do not fall under category (a), (b) or (c) above, a Termination and Severance Pay Claim is calculated (except for vacation pay) based on a notice period of 3.3 weeks for each year of service (calculated as reflected in the applicable Severance Grid Formulae), subject to a minimum of 8 weeks and a maximum of 78 weeks (the "**Methodology Notice Period**");

(e)    Each of the CBA Notice Period, CBA Severance Period, CBA Benefit Period and Methodology Notice Period is calculated using the Post-Filing Terminated Employee's:

    (i)    rehire date if the Post-Filing Terminated Employee is a Non-Unionized Employee and previously left employment with the Applicants, was previously terminated by the Applicants or had a break in service with the Applicants, each for a period greater than three months; provided that moving employment from one Applicant to another or among an Applicant and another Nortel entity does not for this purpose constitute leaving employment, termination or a break in service;

    (ii)    exception date if a Post-Filing Terminated Employee is a Non-Unionized Employee and his/her employment contract or hire documents with Nortel specifically indicates an exception service date. For greater certainty, the foregoing shall not preclude a Request for Correction by any Employee supported by satisfactory evidence that establishes an exception date; or

    (iii)    continuous service date if clause (i) or (ii) above does not apply;

00247

- 11 -

(f)    Post-Filing Terminated Employees have a Termination and Severance Pay Claim as follows:

    (i)    a severance amount calculated as follows:

        1.    in respect of CBA Bridging Employees:

            (I)    base monthly salary (based on the employee's base salary as at the date the employment was terminated and calculated as reflected in chart 9.2 of the Severance Grid Formulae) for the outstanding CBA Notice Period (determined as reflected in chart 9.2 of the Severance Grid Formulae), plus

            (II)    a pension equivalent amount (calculated as reflected in the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation) for the CBA Bridging Period if the applicable collective bargaining agreement provides for such amount, plus

            (III)    an amount calculated in accordance with the voluntary retirement option (and as reflected in chart 9.2 of the Severance Grid Formulae for CBA Bridging Employees) if the option is set out in the applicable collective bargaining agreement;

        2.    in respect of Non-Retirement Eligible CBA Employees, base weekly salary (based on such employee's base salary as at the date the employment was terminated and calculated as reflected in chart 9.3 of the Severance Grid Formulae), during the CBA Severance Period and the outstanding CBA Notice Period (determined as reflected in chart 9.3 of the Severance Grid Formulae); and

        3.    in respect of Post-Filing Terminated Employees that are Non-Unionized Employees, base weekly salary based on the employee's base salary as at the date the employment was terminated and calculated as reflected in chart 6 of the Severance Grid Formulae for the Contract Notice Period, chart 10 for the

00248

- 12 -

Methodology Notice Period or chart 14 for the ESA Minimum Notice/Severance Period, as applicable;

(ii)     employee benefits (excluding pension accrual and vacation pay) calculated as 5.14% of:

    1.     the base monthly salary for the outstanding CBA Notice Period and for the greater of the CBA Bridging Period and the CBA Benefit Period in respect of CBA Bridging Employees;

    2.     the base weekly salary for the outstanding CBA Notice Period and for the greater of the CBA Severance Period and the CBA Benefit Period in respect of Non-Retirement Eligible CBA Employees; and

    3.     the base weekly salary for the ESA Minimum Notice Period, Contract Notice Period or Methodology Notice Period, as applicable, in respect of Post-Filing Terminated Employees who are Non-Unionized Employees;

(iii)     vacation pay on the ESA Minimum Notice Period or outstanding ESA Minimum Notice Period, as applicable (determined as reflected in the applicable chart of the Severance Grid Formulae), based on vacation accrual pursuant to the Nortel Vacation Policy and base weekly salary (for Post-Filing Terminated Employees who are Non-Unionized Employees and Non-Retirement Eligible CBA Employees) or base monthly salary (for CBA Bridging Employees);

(iv)     pension accrual during the ESA Minimum Notice/Severance Period, outstanding CBA Notice Period, CBA Severance Period, Contract Notice Period or Methodology Notice Period, as applicable, as follows: a claim amount for any lost pension growth during the applicable period (for those employees with continued eligibility under the defined benefit plan) or for lost pension contributions during the applicable period (for those employees participating in the defined contribution pension plans)

00249

- 13 -

calculated in accordance with the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation;

(v)     if the Post-Filing Terminated Employee becomes eligible for Pensioner M&D and/or Pensioner Life by the end of the ESA Minimum Notice/Severance Period, CBA Notice/Bridging Period, CBA Notice/Severance Period, Contract Notice Period or Methodology Notice Period, as applicable (the "**Post-Filing Terminated Employee Applicable Notice Period**"), an additional claim amount for these benefits calculated in accordance with the Mercer 2011 Non-Pension Benefits Valuation; and

(vi)    if the Post-Filing Terminated Employee becomes eligible under a Non-Registered Pension Plan by the end of the Post-Filing Terminated Employee Applicable Notice Period, an additional claim amount under these plans calculated in accordance with the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation;

(g)    notwithstanding the foregoing, a Post-Filing Terminated Employee who opted to take a commuted value under Part 1 of the Managerial Plan or Program 1 of the Negotiated Plan is entitled to a Termination and Severance Pay Claim set out in 3(f)(iv) and, in addition, if the employee:

(i)     would have otherwise become eligible for Pensioner Life and/or Pensioner M&D or under any Non-Registered Pension Plan by the end of the Post-Filing Terminated Employee Applicable Notice Period, is entitled to a Termination and Severance Pay Claim set out in 3(f)(v) and3(f)(vi) above; or

(ii)    would not have otherwise become eligible for Pensioner Life and/or Pensioner M&D or under any Non-Registered Pension Plan by the end of the Post-Filing Terminated Employee Applicable Notice Period, is not

NNC-NNL11755981 / 142

00250

- 14 -

entitled to a Termination and Severance Pay Claim set out in 3(f)(v) and 3(f)(vi) above, but is entitled to an additional claim amount under the special termination provisions of the TRA relating to workforce reduction if the Post-Filing Terminated Employee becomes eligible to receive the special termination benefits under the TRA by the end of the Post-Filing Terminated Employee Applicable Notice Period, which claim will be calculated in accordance with the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation; and

(h)     there is no requirement for Post-Filing Terminated Employees to prove that they found (or did not find) another job or that they attempted to find another job and there will be no deduction in respect of mitigation.

## C. Post-Filing Transferred Employees – The Post-Filing Transferred Employee Termination and Severance Claim Methodology

4.     The termination and severance claim methodology with respect to Post-Filing Transferred Employees[11] is as follows:

(a)     for Applicable Rehired Employees, the applicable ESA Minimum Notice/Severance Period is used in calculating the Termination and Severance Pay Claim (except in relation to (f)(iv) below);

(b)     for Post-Filing Transferred Employees who are Unionized Employees, the CBA Notice Period, CBA Bridging Period and CBA Severance Period, as applicable as described in paragraph 3(b) above in relation to Post-Filing Terminated Employees and calculated as reflected in charts 12.1, 12.2 and 12.3 of the

---

[11] For purposes of the Post-Filing Termination and Severance Claim Methodology, Post-Filing Transferred Employees excludes Pensioner Eligible Terminated Employees.

00251

- 15 -

Severance Grid Formulae, are used in calculating the Termination and Severance Pay Claim (except in relation to (f)(iv) below);

(c) for Post-Filing Transferred Employees who are Non-Unionized Employees and who have a written employment contract with the Applicants that sets out a Contract Notice Period, the Contract Notice Period is used in calculating the Termination and Severance Pay Claim (except in relation to (f)(iv) below);

(d) for Post-Filing Transferred Employees who do not fall under category (a), (b) or (c) above, a Termination and Severance Pay Claim is calculated based on the Methodology Notice Period (except in relation to (f)(iv) below);

(e) Each of the CBA Notice Period, CBA Bridging Period, CBA Severance Period and Methodology Notice Period is calculated using the Post-Filing Transferred Employee's:

  (i) rehire date if the Post-Filing Transferred Employee is a Non-Unionized Employee and previously left employment with the Applicants, was previously terminated by the Applicants or had a break in service with the Applicants, each for a period greater than three months; provided that moving employment from one Applicant to another or among an Applicant and another Nortel entity does not for this purpose constitute leaving employment, termination or a break in service;

  (ii) exception date if a Post Filing Transferred Employee is a Non-Unionized Employee and his/her employment contract or hire documents with Nortel specifically indicates an exception date. For greater certainty, the foregoing shall not preclude a Request for Correction by any Employee supported by satisfactory evidence that establishes an exception date; or

00252

- 16 -

(iii)   continuous service date if clause (i) or (ii) above does not apply;

(f)   Post-Filing Transferred Employees have a Termination and Severance Pay Claim
for:

(i)   pension accrual during the ESA Minimum Notice/Severance Period,
outstanding CBA Notice Period[12], CBA Severance Period[13], Contract
Notice Period or Methodology Notice Period, as applicable, as follows:

1.   a claim amount for any lost pension growth during the applicable
notice period for those employees with continued eligibility under
the defined benefit plan at the date of transfer if a buyer did not
offer a defined benefit pension plan; and

2.   a claim amount for lost pension contributions during the applicable
notice period for those employees participating in the defined
contribution pension plans at the date of transfer if the defined
contribution plan offered by the applicable buyer included an
employer contribution less than provided in Nortel's defined
contribution plan or, if no defined contribution plan was offered by
the buyer, the applicable buyer did not agree to provide cash
compensation to the employee specifically in lieu of providing a
defined contribution plan,

each calculated in accordance with the Mercer 2011 Non-
Registered Pension/Pension Accruals Valuation;

(ii)   if a buyer did not offer any retiree health, dental and life benefits and a
Post-Filing Transferred Employee was eligible for Pensioner M&D and/or
Pensioner Life at the date of his/her transfer or becomes eligible by the

---

[12] For all Post-Filing Transferred Employees who are Unionized Employees.

[13] Only for Post-Filing Transferred Employees who are Unionized Employees and who are not eligible for bridging
or pensioner eligible at the date of transfer.

NNC-NNL11755981 / 145

- 17 -

**00253**

end of the ESA Minimum Notice/Severance Period, CBA Notice/Bridging Period, CBA Notice Period[14], CBA Notice/Severance Period, Contract Notice Period or Methodology Notice Period, as applicable (the "**Post-Filing Transferred Employee Applicable Notice Period**"), an additional claim amount for these benefits calculated in accordance with the Mercer 2011 Non-Pension Benefits Valuation; and

(iii)    if a buyer did not offer non-registered pension plans and a Post-Filing Transferred Employee was eligible under a Non-Registered Pension Plan at the date of his/her transfer or becomes eligible by the end of the Post-Filing Transferred Employee Applicable Notice Period, an additional claim amount under these plans calculated in accordance with the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation;

(iv)    only if the Post-Filing Transferred Employee was offered employment with a buyer but rejected that offer:

1.    base weekly salary (based on the employee's base salary as at the date the employment was terminated and calculated as reflected in chart 15 of the Severance Grid Formulae) for the ESA Minimum Notice/Severance Period;

2.    employee benefits (excluding pension accrual and vacation pay) calculated as 5.14% of base weekly salary for the ESA Minimum Notice Period; and

3.    vacation pay on the ESA Minimum Notice Period based on vacation accrual pursuant to the Nortel Vacation Policy and base weekly salary;

---

[14] For Post-Filing Transferred Employees who are Unionized Employees and were pensioner eligible at the date of transfer.

NNC-NNL11755981 / 146

- 18 -

00254

(g)     notwithstanding the foregoing:

    (i)     a Post-Filing Transferred Employee who was pensioner eligible at the date of transfer and opted to take a commuted value under Part 1 of the Managerial Plan or Program I of the Negotiated Plan:

        1.     is entitled to a Termination and Severance Pay Claim set out in 4(f)(i) above;

        2.     is not entitled to a Termination and Severance Pay Claim set out in 4(f)(ii) or 4(f)(iii) (with respect to TRA and RAP) above[15];

    (ii)     a Post-Filing Transferred Employee who was not pensioner eligible at the date of transfer and opted to take a commuted value under Part 1 of the Managerial Plan or Program I of the Negotiated Plan is entitled to a Termination and Severance Pay Claim set out in 4(f)(i) and, in addition, if the employee:

        1.     would have otherwise become eligible for Pensioner Life and/or Pensioner M&D or under any Non-Registered Pension Plan by the end of the Post-Filing Transferred Employee Applicable Notice Period, is entitled to a Termination and Severance Pay Claim set out in 4(f)(ii) and 4(f)(iii) above; or

        2.     would not have otherwise become eligible for Pensioner Life and/or Pensioner M&D or under any Non-Registered Pension Plan by the end of the Post-Filing Transferred Employee Applicable Notice Period, is not entitled to a Termination and Severance Pay Claim set out in 4(f)(ii) and 4(f)(iii) above, but is entitled to an additional claim amount under the special termination provisions

---

[15] Nortel has advised the Monitor that: (i) a pensioner eligible employee must elect to receive an immediate pension at the time of termination or transfer in order to receive the TRA and RAP benefits in accordance with the plan provisions; and (ii) in applying the TRA and RAP to pensioner eligible terminated employees who took commuted value, these employees were not entitled to any TRA or RAP benefits.

NNC-NNL11755981 / 147

- 19 -

00255

of the TRA relating to workforce reduction if the Post-Filing Transferred Employee becomes eligible to receive the special termination benefit under the TRA by the end of the Post-Filing Transferred Employee Applicable Notice Period, which claim will be calculated in accordance with the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation; and

(h)     because full mitigation is assumed on salary and all benefits other than those listed in (f) above, the Termination and Severance Pay Claim of Post-Filing Transferred Employees is for the limited benefits listed in (f) above relating to pension accruals and grow-ins to Non-Registered Plans during the Post-Filing Transferred Employee Applicable Notice Period. For greater certainty, the foregoing shall not preclude a claim by a Post-Filing Transferred Employee who has not been employed for the full duration of the CBA Notice Period, CBA Bridging Period, CBA Severance Period, Contract Notice Period and Methodology Notice Period, as applicable, provided that, in any event, any claim shall be determined in accordance with the Post-Filing Terminated Employee Termination and Severance Claim Methodology but subject to deduction for all mitigation.

D. **Pensioner Eligible Terminated Employees – The Pensioner Eligible Terminated Employee Termination and Severance Claim Methodology**

5.     The termination and severance claim methodology with respect to Pensioner Eligible Terminated Employees[16] is as follows:

---

[16] For purposes of the Pensioner Eligible Terminated Employee Termination and Severance Claim Methodology, Pensioner Eligible Terminated Employees excludes Post-Filing Transferred Employees and LTD Beneficiaries.

00256

- 20 -

(a)     for Applicable Rehired Employees, the applicable ESA Minimum Notice/Severance Period is used in calculating the Termination and Severance Pay Claim (except for vacation pay);

(b)     for Pensioner Eligible Terminated Employees who are Unionized Employees, the CBA Notice Period is used in calculating the Termination and Severance Pay Claim (except for vacation pay);

(c)     for Pensioner Eligible Terminated Employees who are Non-Unionized Employees and who have a written employment contract with the Applicants that sets out a Contract Notice Period, the Contract Notice Period is used in calculating the Termination and Severance Pay Claim (except for vacation pay);

(d)     for Pensioner Eligible Terminated Employees who do not fall under category (a), (b) or (c) above, a Termination and Severance Pay Claim is calculated (except for vacation pay) based on the Methodology Notice Period;

(e)     Each of the CBA Notice Period and Methodology Notice Period is calculated using the Pensioner Eligible Terminated Employee's:

    (i)     rehire date if the Pensioner Eligible Terminated Employee is a Non-Unionized Employee and previously left employment with the Applicants, was previously terminated by the Applicants or had a break in service with the Applicants, each for a period greater than three months; provided that moving employment from one Applicant to another or among an Applicant and another Nortel entity does not for this purpose constitute leaving employment, termination or a break in service;

- 21 -

**00257**

(ii)    exception date if a Pensioner Eligible Terminated Employee is a Non-Unionized Employee and his/her employment contract or hire documents with Nortel specifically indicates an exception date. For greater certainty, the foregoing shall not preclude a Request for Correction by any Employee supported by satisfactory evidence that establishes an exception date; or

(iii)    continuous service date if clause (i) or (ii) above does not apply;

(f)    Pensioner Eligible Terminated Employees have a Termination and Severance Claim for:

(i)    a severance amount calculated as follows:

1.    in respect of Pensioner Eligible Terminated Employees who are Unionized Employees, base monthly salary (based on the employee's base salary as at the date the employment was terminated and calculated as reflected in chart 9.1 of the Severance Grid Formulae) for the outstanding CBA Notice Period (determined as reflected in chart 9.1 of the Severance Grid Formulae), plus an amount calculated in accordance with the voluntary retirement option (and as reflected in chart 9.1 of the Severance Grid Formulae) if the option is set out in the applicable collective bargaining agreement;

2.    in respect of Pensioner Eligible Terminated Employees who are Non-Unionized Employees, base weekly salary based on such employee's base salary as at the date the employment was terminated and calculated as reflected in chart 6 of the Severance Grid Formulae for the Contract Notice Period, chart 10 for the Methodology Notice Period or chart 14 for the ESA Minimum Notice/Severance Period, as applicable;

00258

- 22 -

(ii)     employee benefits (excluding pension accrual and vacation pay) calculated as 5.14% of:

     1.     the base monthly salary for the outstanding CBA Notice Period in respect of Pensioner Eligible Terminated who are Unionized Employees; and

     2.     the base weekly salary for the ESA Minimum Notice Period, Contract Notice Period or Methodology Notice Period, as applicable, in respect of Pensioner Eligible Terminated Employees who are Non-Unionized Employees;

(iii)     vacation pay on the ESA Minimum Notice Period or outstanding ESA Minimum Notice Period, as applicable (determined as reflected the applicable chart of the Severance Grid Formulae), based on vacation accrual pursuant to the Nortel Vacation Policy and base weekly salary (for Non-Unionized Employees) or base monthly salary (for Unionized Employees);

(iv)     pension accrual during the ESA Minimum Notice/Severance Period, outstanding CBA Notice Period, Contract Notice Period or Methodology Notice Period, as applicable, as follows: an additional claim amount for any lost pension growth during the applicable period (for those employees with continued eligibility under the defined benefit plan) or for lost pension contributions during the applicable period (for those employees participating in the defined contribution pension plans) calculated in accordance with the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation;

(v)     an additional claim amount for Pensioner M&D and/or Pensioner Life calculated in accordance with the Mercer 2011 Non-Pension Benefits Valuation; and

00259

    (vi)    if the Pensioner Eligible Terminated Employee is eligible under a Non-Registered Pension Plan, an additional claim amount under these plans calculated in accordance with the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation;

(g)    notwithstanding the foregoing, a Pensioner Eligible Terminated Employee who opted to take a commuted value under Part 1 of the Managerial Plan or Program I of the Negotiated Plan is entitled to pension accrual during the ESA Minimum Notice/Severance Period, outstanding CBA Notice Period, Contract Notice Period or Methodology Notice Period, as applicable, but is not entitled to a claim for Pensioner M&D and/or Pensioner Life or a claim under the TRA or RAP[17]; and

(h)    there is no requirement for Pensioner Eligible Terminated Employees to prove that they found (or did not find) another job or that they attempted to find another job and there will be no deduction in respect of mitigation.

### E. **LTD Beneficiaries – The LTD Beneficiary Termination and Severance Claim Methodology**

6.    The termination and severance claim methodology for LTD Beneficiaries is as follows:

(a)    for LTD Beneficiaries who are Unionized Employees, the CBA Notice Period, CBA Bridging Period and CBA Severance Period, as applicable as described in paragraph 3(b) above in relation to Post-Filing Terminated Employees, are used in calculating the Termination and Severance Pay Claim (except for vacation pay);

---

[17] Nortel has advised the Monitor that: (i) a Pensioner Eligible Terminated Employee must elect to receive an immediate pension at the time of termination or transfer in order to receive the TRA and RAP benefits in accordance with the plan provisions; and (ii) in applying the TRA and RAP to Pensioner Eligible Terminated Employees who took commuted value, these Employees were not entitled to any TRA or RAP benefits.

- 24 -

00260

(b) for LTD Beneficiaries who are Non-Unionized Employees and who have a written employment contract with the Applicants that sets out a Contract Notice Period, the Contract Notice Period is used in calculating the Termination and Severance Pay Claim;

(c) for LTD Beneficiaries who do not fall under category (a) or (b) above, a Termination and Severance Pay Claim is calculated (except for vacation pay) based on the Methodology Notice Period;

(d) each of the CBA Notice Period, CBA Bridging Period, CBA Severance Period and Methodology Notice Period is calculated using the LTD Beneficiary's:

    (i) rehire date if the LTD Beneficiary is a Non-Unionized Employee and previously left employment with the Applicants, was previously terminated by the Applicants or had a break in service with the Applicants, each for a period greater than three months; provided that moving employment from one Applicant to another or among an Applicant and another Nortel entity does not for this purpose constitute leaving employment, termination or a break in service;

    (ii) exception date if a LTD Beneficiary is a Non-Unionized Employee and his/her employment contract or hire documents with Nortel specifically indicates an exception date. For greater certainty, the foregoing shall not preclude a Request for Correction by any Employee supported by satisfactory evidence that establishes an exception date; or

    (iii) continuous service date if clause (i) or (ii) above does not apply;

(e) LTD Beneficiaries have a Termination and Severance Claim for:

    (i) a severance amount calculated as follows:

NNC-NNL11755981 / 153

00261

- 25 -

1.  in respect of LTD Beneficiaries who are Unionized Employees and were eligible for bridging under the applicable collective bargaining agreement as at December 31, 2010:

> (I)  base monthly salary (based on the employee's base salary as at the date the employment was terminated and calculated as reflected in chart 7.2 of the Severance Grid Formulae) for the CBA Notice Period, plus
>
> (II)  a pension equivalent amount (calculated as reflected in the Mercer 2011 Non-Registered Pension/Pension Accruals Valuation) for the CBA Bridging Period if the applicable collective bargaining agreement provides for such amount, plus
>
> (III)  an amount calculated in accordance with the voluntary retirement option (and as reflected in chart 7.2 of the Severance Grid Formulae) for CBA Bridging Employees if the option is set out in the applicable collective bargaining agreement;

2.  in respect of LTD Beneficiaries who are Non-Unionized Employees, base weekly salary (based on such employee's base salary as at the date the employment was terminated and calculated as reflected in chart 8 of the Severance Grid Formulae) for the Contract Notice Period or Methodology Notice Period, as applicable;

3.  in respect of LTD Beneficiaries who are Unionized Employees who were pensioner eligible as at December 31, 2010, base monthly salary for the CBA Notice Period, plus an amount calculated in accordance with the voluntary retirement option set out in the applicable collective bargaining agreement and as reflected in chart 7.1 of the Severance Grid Formulae;

4.  in respect of LTD Beneficiaries who are Unionized Employees and were not eligible for bridging or pensioner eligible as at December

NNC-NNL11755981 / 154

- 26 -

31, 2010, base monthly salary for the CBA Notice/Severance Period;

(ii)    vacation pay on the ESA Minimum Notice Period based on vacation accrual pursuant to the Nortel Vacation Policy, years of service calculated as years of service to the Applicants before becoming an LTD Beneficiary plus the years as an LTD Beneficiary and base weekly salary (for Non-Unionized LTD Beneficiaries) or base monthly salary (for Unionized Employees);

(iii)    since, for the purposes of and as set out in the Mercer 2011 Valuations, LTD Beneficiaries are assumed to remain on LTD benefits, subject to the recovery and mortality assumptions used in the Mercer 2011 Valuations, until they reach the age of 65 and are thereafter assumed to retire, the following are otherwise captured in the Mercer 2011 Valuations for LTD Beneficiaries and are therefore not separately applied to the Termination and Severance Pay Claim of LTD Beneficiaries:

1.    the benefits that encompass the 5.14% fringe rate applied to other categories of Employees; and

2.    pension accrual and grow-ins to Pensioner M&D, Pensioner Life and Non-Registered Pension Plans; and

(f)    there is no requirement for LTD Beneficiaries to prove that they found (or did not find) another job or that they attempted to find another job and there will be no deduction in respect of mitigation.

## F.   Active Employees

7.    As appropriate, the Post-Filing Terminated Employee Termination and Severance Claim Methodology, Post-Filing Transferred Employee Termination and Severance Claim Methodology or Pensioner Eligible Terminated Employee Termination and Severance

00263

- 27 -

Claim Methodology will apply to Active Employees upon any termination of their employment without just cause.

\5999337

NNC-NNL11755981 / 156

# APPENDIX "D-2"

APPENDIX D-2      00264

**Nortel Canada**
**Summary of Base Severance Claims** [Note 1]
(in CDN$ millions)

| | Headcount | Severance Amount per Termination Claim and Severance Methodology | | Payments made | | Employee Benefit at 5.14% | | Vacation pay on ESA period | | Payments from Termination Fund [Note 2] | | Base Severance Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Pre-Filing Terminated Employees:** | 311 | $ | 32.84 | $ | (4.95) | $ | 0.43 | $ | 0.07 | $ | (0.92) | $ 27.47 |
| **Post-Filing Terminated Employees:** | | | | | | | | | | | | |
| LTD Beneficiaries | 353 | | 23.52 | $ | - | $ | - | $ | 0.29 | $ | (1.05) | $ 22.76 |
| Other Post-Filing Terminated Employees | 1,221 | | 108.71 | $ | - | $ | 5.58 | $ | 1.32 | $ | (2.58) | $ 113.03 |
| **Post-Filing Transferred Employees who declined an offer from a Buyer** | 7 | | 0.30 | $ | - | $ | 0.02 | $ | 0.01 | $ | - | $ 0.32 |
| | 1,892 | $ | 165.37 | $ | (4.95) | $ | 6.03 | $ | 1.69 | $ | (4.55) | $ 163.58 |

Note 1: Does not include the claims for Active Employees.

Note 2: Includes approximately $0.2 million of Termination Fund payments not yet paid to eligible recipients as Termination Fund paperwork has not been received.

# APPENDIX "D-3"

NNC-NNL11755981 / 159

Appendix D-3                          00265

| Chart # 1 - Pre-filing Terminated Bridging Employees[1] | |
|---|---|
| Base Weekly Salary = Annual Salary ÷ 26.089 +.009 rounded down to whole number first, then ÷ 2 | A |
| Pre-Filing Bridging Notice Period | B |
| Severance amount as per your Bridging Agreement | C |
| Less: Termination payment made by Nortel | D |
| *Outstanding Notice/Bridging Amount* | $E=B*A+C-D$ |
| Employee benefit rate of 5.14% | F |
| Outstanding Notice/Bridging Period = (Bridging End Date – Last Payment Date) ÷ 7 days/week | G |
| *Employee benefits on Outstanding Notice/Bridging Period* | $H=F*G*A$ |
| Outstanding ESA Minimum Notice Period = Entitled statutory notice period – (Last Payment Date - Notice Date ) ÷ 7 days/week) | I |
| Vacation accrual= Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | J |
| *Vacation pay on outstanding ESA Minimum Notice Period* | $K=I*J*A$ |
| *Less : Payment received from Termination Fund* | L |

[1]All values are rounded to the nearest 2 decimal places except for Vacation accrual.

NNC-NNL11755981 / 160

00266

| Chart # 2 - Pre-filing Terminated Salary Continuance Employees[1] | |
|---|---|
| Salary Continuance Period = (Agreement End Date - Agreement Beginning Date) ÷ 7 | A |
| Salary Continuance Amount = Bi-Weekly Salary as per Agreement ÷ 2 x Total # of weeks per Agreement | B |
| Less: Termination payment made by Nortel | C |
| *Outstanding Salary Continuance Base Severance Amount* | $D = B-C$ |
| Employee benefit rate of 5.14% | E |
| *Employee benefits on Outstanding Salary Continuance Base Severance Amount* | $F = E^*D$ |
| *Less : Payment received from Termination Fund* | G |

[1] All values are rounded to the nearest 2 decimal places.

NNC-NNL11755981 / 161

00267

| Chart # 3.1 – Unionized Pre-filing Terminated Lump Sum Employees[1] | |
|---|---|
| Base Monthly Salary = Annual Salary ÷12 ÷ 4.3482 x Standard weekly working hours x hourly COLA, rounded to 2 decimals places | A |
| Outstanding Lump Sum Employee Notice Period = (Termination Date - Last Payment Date) ÷ 7 ÷ 4.3482) | B |
| | |
| Severance amount as per Agreement | C |
| Less: Termination payment made by Nortel | D |
| *Outstanding Notice/Severance Amount* | $E=B*A+C-D$ |
| | |
| Lapsed ESA Minimum Notice Period = (Last Payment Date - Notice Date) ÷ 7 ÷ 4.3482 | F |
| Outstanding ESA Minimum Notice Period = Entitled Statutory notice period ÷ 4.3482 – Lapsed ESA Minimum Notice Period | G |
| Vacation accrual = Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | H |
| *Vacation pay on outstanding ESA Minimum Notice Period* | $I = G*H*A$ |
| | |
| *Less : Payment received from Termination Fund* | J |

[1] All values are rounded to the nearest 2 decimal places except for Vacation accrual.

NNC-NNL11755981 / 162

00268

| Chart #3.2 - Non-unionized Pre-filing Terminated Lump Sum Employees[1] | |
| --- | --- |
| Base Weekly Salary = Annual Salary ÷ 26.089 +.009 rounded down to whole number first, then ÷ 2 | A |
| Outstanding Lump Sum Notice Period = (Termination Date - Last Payment Date) ÷ 7 | B |
| Severance amount as per Agreement | C |
| Less: Termination payment made by Nortel | D |
| *Outstanding Notice/Severance Amount* | $E=B*A+C-D$ |
| | |
| Lapsed ESA Minimum Notice Period = (Last Payment Date - Notice Date ) ÷ 7 days/week | F |
| Outstanding ESA Minimum Notice Period = Entitled ESA Minimum Notice Period – Lapsed ESA Minimum Notice Period | G |
| Vacation accrual= Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | H |
| *Vacation pay on outstanding ESA Minimum Notice Period* | $I = H*G*A$ |
| | |
| *Less : Payment received from Termination Fund* | *I* |

[1] All values are rounded to the nearest 2 decimal places except for Vacation accrual.

NNC-NNL11755981 / 163

00269

| Chart #4 - Pre-filing Terminated Contingency Employees[1] | |
|---|---|
| Base Weekly Salary = Annual Salary ÷ 26.089 + .009 rounded down to whole number first, then ÷ 2 | A |
| Total # of Contingency Weeks | B |
| Contingency Amount = Base Weekly Salary x Total # of Contingency weeks | C=B*A |
| Less: Termination payment made by Nortel | D |
| *Outstanding Contingency Amount* | *E=C-D* |
| *Less : Payment received from Termination Fund* | *F* |

[1] All values are rounded to the nearest 2 decimal places.

NNC-NNL11755981 / 164

00270

| Chart #5 - Pre-filing Terminated Settlement Employees[1] | |
| --- | --- |
| Severance amount as per settlement termination agreement | A |
| Less: Termination payment made by Nortel | B |
| Outstanding Severance Amount | C= A - B |
| Less : Payment received from Termination Fund | D |

[1] All values are rounded to the nearest 2 decimal places.

NNC-NNL11755981 / 165

00271

| Chart #6 - Non-Unionized Post-Filing Terminated Employees with Contract provisions[1] | |
|---|---|
| Base Weekly Salary = Annual Salary ÷ 52, rounded to 2 decimal places | A |
| Contract Notice Period | B |
| Contract Notice Period Amount | C = A*B |
| | |
| Employee benefit rate of 5.14% | D |
| Employee benefits on Contract Notice Period Amount | E = D*C |
| | |
| Entitled ESA Minimum Notice Period | F |
| Vacation accrual = Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | G |
| Vacation pay on ESA Minimum Notice Period | H = F*G*A |
| Less : Payment received from Termination Fund | I |

[1] All values are rounded to the nearest 2 decimal places except for Vacation accrual.

NNC-NNL11755981 / 166

00272

| Chart # 7.1 – Unionized LTD Beneficiaries who are pensioner eligible[1] | |
|---|---|
| Base Monthly Salary = Annual Salary ÷12 + 4.3482 x Standard weekly working hours x hourly COLA | A |
| CBA  Notice Period  ÷ 4.3482 | B |
| *CEP members:*<br>Pension Incentive | C |
| *CUCW#1 members:*<br>*Less than 30 years of service*<br>Voluntary Retirement Option =  26 weeks ÷ 4.3482 x Base Monthly Salary<br><br>*30 years or more of service*<br>Voluntary Retirement Option = Greater of:<br>a) $40,000; or<br>b) 26 weeks ÷ 4.3482 x Base Monthly Salary | C |
| *CAW members:*<br>Voluntary Retirement Option = Greater of:<br>a) $40,000; or<br>b) 7 x Base Monthly Salary | C |
| *COEU members:*<br>Voluntary Retirement Option = Greater of:<br>a) $40,000; or<br>b) 6 x Base Monthly Salary | C |
| *CBA Notice/VRO Amount* | D=B*A +C |
| ESA Minimum Notice Period ÷ 4.3482 | E |
| Vacation accrual = Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | F |
| *Vacation pay on ESA Minimum Notice Period, rounded to 2 decimal places* | G=E*F*A |
| *Less : Payment received from Termination Fund* | H |

[1] All values are rounded to the nearest 2 decimal places except for Vacation accrual.

00273

| Chart # 7.2 – Unionized LTD Beneficiaries eligible for bridging[1] | |
|---|---|
| Base Monthly Salary = Annual Salary ÷12 + 4.3482 x Standard weekly working hours x hourly COLA, rounded to 2 decimal places | A |
| Years of Service =  (Termination Date - Hire Date) ÷ 365 | B |
| *CEP members:*<br>Pension Incentive | C |
| *CUCW#1 members:*<br>Voluntary Retirement Option = CBA Bridging Period (weeks) ÷ 4.3482 x Base Monthly Salary | C |
| *CAW members:*<br>Voluntary Retirement Option = CBA Bridging Period (months) x Base Monthly Salary | C |
| *COEU Members:*<br>Voluntary Retirement Option = CBA Bridging Period (months) x Base Monthly Salary | C |
| CBA Notice Period ÷ 4.3482 | D |
| *CBA  Notice/Bridging Amount* | $E=C+(A*D)$ |
|  |  |
| ESA Minimum Notice Period ÷ 4.3482 | F |
| Vacation accrual = Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | G |
| *Vacation pay on ESA Minimum Notice Period* | $H=F*G*A$ |
|  |  |
| *Less : Payment received from Termination Fund* | I |

[1] All values are rounded to the nearest 2 decimal places except for Vacation accrual.

00274

| Chart # 7.3 – Unionized LTD Beneficiaries not eligible for bridging or pensioner eligible[1] | |
|---|---|
| Base Monthly Salary = Annual Salary ÷12 + 4.3482 x Standard weekly working hours x hourly COLA, rounded to 2 decimal places | A |
| Years of Service = (Termination Date - Hire Date) ÷ 365 | B |
| CBA Severance Amount = CBA Severance Period ÷ 4.3482 | C |
| CBA Notice Period ÷ 4.3482 | D |
| *CBA Notice/Severance Amount* | *E=A\*(C+D)* |
| | |
| ESA Minimum Notice Period ÷ 4.3482 | F |
| Vacation accrual = Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | G |
| *Vacation pay on ESA Minimum Notice Period* | *H=F\*G\*A* |
| | |
| *Less : Payment received from Termination Fund* | *I* |

[1] All values are rounded to the nearest 2 decimal places except for Vacation accrual.

NNC-NNL11755981 / 169

00275

| Chart # 8 - Non-unionized LTD Beneficiaries[1] | |
|---|---|
| Base Weekly Salary = Annual Salary ÷ 52, rounded to 2 decimal places | A |
| Years of Service =  (Termination Date - Hire Date) ÷ 365 | B |
| Methodology Notice Period= 3.3 Weeks x Years of service [Min 8; Max 78] | C |
| *Severance Amount* | $D=A*C$ |
|  |  |
| ESA Minimum Notice Period | E |
| Vacation accrual = Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | F |
| *Vacation pay on ESA Minimum Notice Period* | $G = E*F*A$ |
| *Less : Payment received from Termination Fund* | H |

[1] All values are rounded to the nearest 2 decimal places except for Vacation accrual.

00276

| Chart #9.1 – Unionized Pensioner Eligible Terminated Employee[1] | |
|---|---|
| Base Monthly Salary = Annual Salary ÷12 + 4.3482 x Standard weekly working hours x hourly COLA, rounded to 2 decimal places | A |
| *CUCW#1 members:*<br>*Less than 30 years of service*<br>Voluntary Retirement Option = 26 weeks ÷ 4.3482 x Base Monthly Salary<br><br>*30 years or more of service*<br>Voluntary Retirement Option= Greater of:<br>a) $40,000; or<br>b) 26 weeks ÷ 4.3482 x Base Monthly Salary | B |
| *CAW members:*<br>Voluntary Retirement Option = Greater of:<br>a) $40,000; or<br>b) 7 x Base Monthly Salary | B |
| *COEU members:*<br>Voluntary Retirement Option = Greater of:<br>a) $40,000; or<br>b) 6 x Base Monthly Salary | B |
| Notice Received = (Last Payment Date - Notice Date) ÷ 7 ÷ 4.3482 | C |
| Outstanding CBA Notice Period = (CBA Notice Period ÷ 4.3482) - Notice Received | D |
| *Outstanding CBA Notice/VRO Amount* | $E = B + D*A$ |
| Employee benefit rate of 5.14% | F |
| *Employee benefits on Outstanding CBA Notice Period* | $G=F*D*A$ |
| Outstanding ESA Minimum Notice Period = (Entitled ESA Minimum Notice Period ÷ 4.3482) - Notice Received) | H |
| Vacation accrual = Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | I |
| *Vacation pay on outstanding ESA Minimum Notice Period* | $J=H*I*A$ |
| *Less : Payment received from Termination Fund* | K |

[1] All values are rounded to the nearest 2 decimal places except for Vacation accrual.

00277

| Chart # 9.2 – CBA Bridging Employees[1] | |
|---|---|
| Base Monthly Salary = Annual Salary ÷12 + 4.3482 x Standard weekly working hours x hourly COLA, rounded to 2 decimal places | A |
| Years of Service =  (Termination Date - Hire Date) ÷ 365 | B |
| *CEP members:* Pension Incentive | C |
| *CUCW#1 members:* Voluntary Retirement Option = CBA Bridging Period (weeks) ÷ 4.3482 x Base Monthly Salary | C |
| *CAW members:* Voluntary Retirement Option = CBA Bridging Period (months) x Base Monthly Salary | C |
| *COEU Members:* Voluntary Retirement Option = CBA Bridging Period (months) x Base Monthly Salary | C |
| Notice Received =  (Last Payment Date - Notice Date) ÷ 7 ÷ 4.3482 | D |
| Outstanding CBA Notice Period =  (CBA Notice Period  ÷ 4.3482) - Notice Received | E |
| *Outstanding CBA Notice/VRO Amount* | $F = C+(A*E)$ |
| Employee benefit rate of 5.14% | G |
| *CAW, CUCW#1 and CEP#9 Members:* *Employee benefits on Outstanding CBA Notice Period and the greater of the CBA Bridging Period and the CBA Benefit Period* | $H=G*A*(E + CBA$ Bridging Period or CBA Benefit Period$)$ |
| *COEU Members:* *Employee benefits on Outstanding CBA Notice/Bridging Period* | $H=G*A* (E+ CBA$ Bridging Period$)$ |
| | |
| Outstanding ESA Minimum Notice Period  =  (Entitled Statutory notice period  ÷ 4.3482) - Notice Received) | I |
| Vacation accrual = Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | J |
| *Vacation pay on outstanding ESA Minimum Notice Period* | $K = I*J*A$ |
| *Less : Payment received from Termination Fund* | L |

[1] All values are rounded to the nearest 2 decimal places except for Vacation accrual.

NNC-NNL11755981 / 172

00278

| Chart # 9.3 – Non-Retirement Eligible CBA Employees[1] | |
|---|---|
| Base Weekly Salary = Annual Salary ÷ 12 ÷ 4.3482 + (Standard weekly working hours x hourly COLA), rounded to 2 decimal places | A |
| CBA Severance Period | B |
| Notice Received = (Last Payment Date - Notice Date) ÷ 7 | C |
| Outstanding CBA Notice Period = CBA Notice Period - Notice Received | D |
| *Outstanding CBA Notice/Severance Amount* | $E = (B + D)*A$ |
| Employee benefit rate of 5.14% | F |
| *CAW, CEP#9 and CUCW#1 Members:* *Employee benefits on Outstanding CBA Notice Period and the greater of the CBA Severance Period and the CBA Benefit Period* | $G = F*A*(D+ $ CBA Severance period or CBA Benefit period)) |
| *COEU Members:* *Employee benefits on Outstanding CBA Notice Period/Severance Period* | $G = F*A*(B + D)$ |
| Outstanding ESA Minimum Notice Period = ( Entitled Statutory notice period - Notice Received) | H |
| Vacation accrual = Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | I |
| *Vacation pay on outstanding ESA Minimum Notice Period* | $J=H*I*A$ |
| *Less : Payment received from Termination Fund* | K |

[1] All values are rounded to the nearest 2 decimal places except for Vacation accrual.

NNC-NNL11755981 / 173

00279

| Chart #10 - Non-Unionized Post-Filing Terminated Employees[1] | |
|---|---|
| Base Weekly Salary = Annual Salary ÷ 52 | A |
| Years of Service = (Termination Date - Hire Date) ÷ 365 | B |
| Methodology Notice Period = 3.3 Weeks x Years of service [Min 8; Max 78] | C |
| *Severance Amount* | $D = A{*}C$ |
| Employee benefit rate of 5.14% | E |
| *Employee benefits on Severance Amount* | F=E*D |
| | |
| ESA Minimum Notice Period | G |
| Vacation accrual = Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | H |
| *Vacation pay on ESA Minimum Notice Period* | $I = G{*}H{*}A$ |
| | |
| *Less : Payment received from Termination Fund* | J |

[1] All values are rounded to the nearest 2 decimal places except for Vacation accrual.

00280

| Chart # 11 - Non-Unionized Post-filing Transferred Employees[1] | |
|---|---|
| This is the formulae used to determine the Methodology Notice Period as per the Termination and Severance Claim Methodology. This Methodology Notice Period was used (i) to calculate the claim for lost pension accrual/lost pension contributions during the Methodology Notice Period; and (ii) to determine whether you became eligible for post-retirement benefit claims and/or non-registered pension plans claims by the end of this Methodology Notice Period. | |
| Years of Service = (Termination Date - Hire Date) ÷ 365 | A |
| Methodology Notice Period = 3.3 Weeks x Years of service [Min 8; Max 78] | B |

[1] All values are rounded to the nearest 2 decimal.

NNC-NNL11755981 / 175

00281

| Chart # 12.1 - Unionized Pensioner Eligible Post-Filing Transferred Employees[1] | |
|---|---|
| This is the formulae used to determine the CBA Notice Period as per the Termination and Severance Claim Methodology.  This CBA Notice Period was used (i) to calculate the claim for lost pension accrual/lost pension contributions during the CBA Notice Period; and (ii) to determine whether you became eligible for post-retirement benefit claims and/or non-registered pension plans claims by the end of this CBA Notice Period. | |
| Years of Service = (Termination Date - Hire Date) ÷ 365 | A |
| CBA Notice Period | B |

[1] All values are rounded to the nearest 2 decimal places.

NNC-NNL11755981 / 176

00282

| Chart # 12.2 – CBA Bridging Post-Filing Transferred Employees[1] | |
|---|---|
| This is the formulae used to determine the CBA Notice/Bridging Period as per the Termination and Severance Claim Methodology.  This CBA Notice/Bridging Period was used (i) to calculate the claim for lost pension accrual/lost pension contributions during the CBA Notice/Bridging Period; and (ii) to determine whether you became eligible for post-retirement benefit claims and/or non-registered pension plans claims by the end of this CBA Notice/Bridging Period. | |
| Years of Service =  (Termination Date - Hire Date) ÷ 365 | A |
| CBA Notice Period | B |
| *CAW, COEU and CUCW#1 members:*<br>CBA Bridging Period | C |

[1] All values are rounded to the nearest 2 decimal places.

NNC-NNL11755981 / 177

00283

| Chart # 12.3 – Non Retirement CBA Post-filing Transferred Employees[1] | |
|---|---|
| This is the formulae used to determine the CBA Notice/Severance Period as per the Termination and Severance Claim Methodology.  This CBA Notice/Severance Period was used (i) to calculate the claim for lost pension accrual/lost pension contributions during the CBA Notice/Severance Period; and (ii) to determine whether you became eligible for post-retirement benefit claims and/or non-registered pension plans claims by the end of this CBA Notice/Severance Period. | |
| Years of Service =  (Termination Date - Hire Date) ÷ 365 | A |
| CBA Notice Period | B |
| CBA Severance Period | C |

[1] All values are rounded to the nearest 2 decimal places.

NNC-NNL11755981 / 178

00284

| Chart # 14 - Applicable Rehired Former Employees[1] | |
|---|---|
| It has been determined that the ESA Minimum Notice/Severance Period is greater than the Termination and Severance Claim Methodology. Therefore, your Base Severance Claim based on the option 2. | |
| **Option 1: Termination and Severance Claim Methodology** | |
| Base Weekly Salary = Annual Salary ÷ 52, rounded to 2 decimal places | A |
| Years of Service = (Termination Date - Hire Date) ÷ 365 | B |
| Methodology Notice Period= 3.3 Weeks x Years of service [Min 8; Max 78] | C |
| *Severance Amount* | $D = A*C$ |
| Employee benefit rate of 5.14% | E |
| *Employee benefits on Methodology Notice Period* | $F=E*D$ |
| ESA Minimum Notice Period | G |
| Vacation accrual = Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | H |
| *Vacation pay on ESA Minimum Notice Period* | $I = G*H*A$ |
| *Less : Payment received from Termination Fund* | J |
| **Option 2: ESA Minimum Notice/Severance Period** | |
| ESA Severance Period (Ontario Only) | L |
| ESA Minimum Notice Period | G |
| *ESA Minimum Notice/Severance Amount* | $M= (L+G) * A$ |
| Employee benefit rate of 5.14% | E |
| *Employee benefits on ESA Notice/Severance Amount, rounded to 2 decimal places* | $N=E *M$ |
| Vacation accrual = Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | H |
| *Vacation pay on ESA Minimum Notice Period, rounded to 2 decimal places* | $O=G*H*A$ |
| *Less : Payment received from Termination Fund* | J |
| *Less: Termination payment made by Nortel* | P |

[1] All values are rounded to the nearest 2 decimal places except for Vacation accrual.

NNC-NNL11755981 / 179

00285

| Chart # 15 - Post-filing Transferred Applicable Rehired Employees who rejected an offer[1] | |
|---|---|
| The ESA Minimum Notice/Severance Period as per the Termination and Severance Claim Methodology is the combination of the ESA Minimum Notice Period and the ESA Severance Period (if applicable). This ESA Minimum Notice/Severance Period was used (i) to calculate the claim for lost pension accrual/lost pension contributions during the ESA Minimum Notice/Severance Period; and (ii) (ii) to determine whether you became eligible for post-retirement benefit claims and/or non-registered pension plans claims by the end of this ESA Minimum Notice/Severance Period. | |
| Base Weekly Salary = Annual Salary ÷ 52, rounded to 2 decimal places | A |
| ESA Severance Period (Ontario only) | B |
| ESA Minimum Notice Period | C |
| *ESA Minimum Notice/Severance Amount* | $D=(B+C)*A$ |
| | |
| Employee benefit rate of 5.14% | E |
| *Employee benefits on ESA Minimum Notice/Severance Period* | $F=E*D$ |
| | |
| Vacation accrual = Annual Vacation Entitlement ÷ 5 working days/week ÷ 52 weeks/year | G |
| *Vacation pay on ESA Minimum Notice Period* | $H=G*A*C$ |
| | |
| *Less : Payment received from Termination Fund* | *I* |
| *Less: Termination payment made by Nortel* | *J* |

[1] All values are rounded to the nearest 2 decimal places except for Vacation accrual.

NNC-NNL11755981 / 180

00286

| Chart # 16 - Post-filing Transferred Applicable Rehired Employees | |
|---|---|
| It has been determined that the ESA Minimum Notice/Severance Period is greater than the Methodology Notice Period. Therefore, the notice period as per the Termination and Severance Claim Methodology is based on the ESA Minimum Notice/Severance Period. This ESA Minimum Notice/Severance Period was used (a) to calculate the claim for lost pension accrual/lost pension contributions during the ESA Minimum Notice/Severance Period; and (ii) to determine whether you became eligible for post-retirement benefit claims and/or non-registered pension plans claims by the end of this ESA Minimum Notice/Severance Period. | |
| **Option 1: Total Court approved Termination and Severance Claim Methodology** | |
| Years of Service = (Termination Date - Hire Date) ÷ 365 | A |
| Methodology Notice Period= 3.3 Weeks x Years of service [Min 8; Max 78] | B |
| | |
| **Option 2: ESA Minimum Notice/Severance Period** | |
| ESA Severance Period (Ontario residents only) | C |
| ESA Minimum Notice Period | D |

¹ All values are rounded to the nearest 2 decimal places.

# APPENDIX "E"

NNC-NNL11755981 / 182

00287

## APPENDIX "E"
## PATENT AWARD CLAIM METHODOLOGY[1]

The following is the Patent Award Claims Methodology:

1.  Nortel maintains a database of all inventions together with the names of the inventors and their cumulative status with respect to any previous patents filed and granted to Nortel. The inventions are assigned unique disclosure numbers ("**Disc Numbers**").

2.  Nortel has advised it has fully paid all Patent Award payments for Disc Numbers filed by Nortel and/or granted to Nortel up to and including December 31, 2009.

3.  The Applicants, with the assistance of the Monitor, reviewed Nortel's records to determine inventor status and eligibility of Employees (for example, whether an employee-inventor retired, transferred to a buyer or left an Applicant's employ voluntarily) with respect to those Disc Numbers that are included in determining the Patent Award Claims to be set out on the Information Statements for eligible employee-inventors of the Applicants (collectively, the "**Included Disc Numbers**"):

    (a)  in accordance with Nortel's normal process, Nortel has determined which patent filings will not be made for certain Disc Numbers and which prior patent applications will be withdrawn/abandoned. Only the remaining Disc Numbers are included in the calculation.

---

[1] Capitalized terms used but not otherwise defined herein have the meaning given to them in the Seventy-Fifth Report.

00288

- 2 -

4.   With respect to the Disc Numbers remaining following the determination described in clause (a):

    (i)   with respect to Disc Numbers that were purchased by and transferred to a buyer on or before December 31, 2010, if the patent was filed by Nortel or was issued/granted to Nortel prior to the closing date, these Disc Numbers are included; otherwise

    (ii)   Disc Numbers that have been filed by Nortel or patents issued/granted to Nortel during the period January 1, 2010 to December 31, 2010 are included;

    (iii)   Disc Numbers for which Nortel filed a patent application on or prior to December 31, 2009 which did not already result in a patent being granted/issued prior to December 31, 2010 are included; and

    (iv)   Disc Numbers for which Nortel had not filed a patent application on or prior to December 31, 2010 are included.

5.   With respect to Disc Numbers remaining following the application of clause (a), it is assumed that:

    (i)   All remaining unfiled Disc Numbers as at December 31, 2010 will be filed by Nortel on January 1, 2011 and will result in patents being issued/granted to Nortel on January 1, 2011; and

    (ii)   All remaining Disc Numbers for which Nortel filed a patent application as at December 31, 2010 will result in patents being issued/granted to Nortel on January 1, 2011.

6.   If an individual is eligible for a Patent Filing Award and/or Patent Issuance Award with respect to one or more of the Included Disc Numbers, a claim amount relating to any such Patent Award will be set out in such individual's Information Statement. For

NNC-NNL11755981 / 184

00289

- 3 -

example, a Post-Filing Transferred Employee that is an employee-inventor is eligible for a Patent Filing Award regardless of when the patent was filed, but is only eligible for a Patent Issuance Award if the patent was actually issued before the employee-inventor was transferred to a buyer.

7.   In addition, Cumulative Patent Issuance Awards that would be triggered as a result of the foregoing are included in the Patent Award Claims to be set out on the Information Statements.

8.   For greater certainty, the Patent Award Claims include Disc Numbers which formed part of the sale to Rockstar.

\6002905

NNC-NNL11755981 / 185

A/C *

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

Court File No.:09-CL-7950

AND IN THE MATTER OF A PLAN OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

---

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

---

**MOTION RECORD  FOR COMPENSATION CLAIMS METHODOLOGY ORDER AND COMPENSATION CLAIMS PROCEDURE ORDER)**
**(VOLUME I OF II)**
**(RETURNABLE OCTOBER 6, 2011)**

---

**NORTON ROSE OR LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4  CANADA

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: derrick.tay@nortonrose.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jennifer.stam@nortonrose.com

**Tony Reyes LSUC #28218V**
Tel: (416) 216-4825
Email: tony.reyes@nortonrose.com

Fax:  (416) 216-3930
Lawyers for the Applicant

\6006257

NNC-NNL11755981 / 186

TR45610

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-35, AS AMENDED

Court File No: 09-CL-7950

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, et. al.

---

**ONTARIO**
SUPERIOR COURT OF JUSTICE

Proceeding commenced at TORONTO

---

**AFFIDAVIT OF DONALD SPROULE**
(sworn April 10, 2014)

---

**KOSKIE MINSKY LLP**
Mark Zigler / Susan Philpott / Ari Kaplan
Lawyers for the Canadian Former Employees and Disabled
Employees through their court appointed Representative

**McCARTHY TÉTRAULT LLP**
R. Paul Steep / James D. Gage / Barbara J. Boake
Lawyers for Morneau Shepell Ltd., as administrator of the
Nortel Canada registered pension plans

**PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
Ken Rosenberg / Lily Harmer / Massimo Starnino
Lawyers for the Superintendent of Financial Services as
Administrator of the Pension Benefits Guarantee Fund

**CAW- CANADA LEGAL DEPARTMENT**
Barry Wadsworth
Lawyers for the Canadian Autoworkers Union

**SHIBLEY RIGHTON LLP**
**NELLIGAN O'BRIEN PAYNE LLP**
Arthur O. Jacques / Thomas McRae / Steve Levitt
Lawyers for active and transferred employees of
Nortel Canada