



From: Poos, Johannus [BRAM:0048:EXCH]
Sent: March 23, 2006 8:13:40 PM
To: McCorkle, Michael [BRAM:0049:EXCH]; Currie, Peter [BRAM:0007:EXCH];
Doolittle, John [BRAM:0088:EXCH]
CC: Stevenson, Kate [BRAM:0007:EXCH]
Subject: RE:  UK Funding--PwC discussion

Peter:

Further to Mike's message, here are some additional pieces of information
and historical information, that may be useful for the PwC call tomorrow.

PWC

You should be aware that PwC has suggested to the Trustee that we are
obfuscating, and have no real desire to complete a deal. They have
advised that many other companies are engaged in a similar practice, so
they are not surprised that our efforts have been less than genuine.
However, PwC have not been involved in these discussions for long and are
not aware of all or our efforts, as detailed below.

You should also be aware that many of the individuals in the Regulators
office are former PwC employees and that PwC was directly involved in the
creation of the Regulators office. Consequently, PwC can be a powerful
ally, or a significant foe.

Here are some PWC related facts:

PwC was only hired by the Trustee on November 29, 2005 to provide a high
level overview;
A supplemental engagement letter was signed on Feb 16, 2006 to conduct a
detailed review of Nortel
A detailed request for information was not received until Feb 9, 2006,
and we responded with information the following week
A follow up conference call was conducted with several senior finance
employees to answer additional questions arising out of the original
disclosure

Negotiation History

Ken Gardener, Iain Morgan and Gareth Pugh attended a PIC meeting on Dec
3, 2004 to express concern with our funding. At that time they were
looking for a commitment of £56m (based on Actuarial advice), while our
common platform model was calling for a contribution of £36m. We
contributed £12m before year end and an additional £24m in Jan 2005;
On Jan 19, 2005, I attended in the UK for the first of a series of
meetings to establish a long-term funding deal
On June 14, 2005 both parties signed a short term funding deal which
required annual contributions of £46m. The parties chose a short-term
deal because of uncertainty relating to the evolving Pension environment
in the UK. An additional contribution of £10m was paid upon execution of
the short term agreement and quarterly contributions of £11.5m commenced
on July 4, 2005

CONFIDENTIAL                          NOR-CAN00033507 / 1

Long-term funding discussions recommenced at the end of the summer of
2005 and the Company submitted a new funding proposal on November 4,
2005;
Peter Currie, Kate Stevenson and I attended a working party session on
Dec 12 2005;
Additional proposals have been submitted, culminating in 3 separate
proposals in Jan, 2006
Our current proposal is for annual contributions of £76m over 7 years
without a guarantee and £60m over 10 years with a guarantee (recall that
less than 14 months earlier the Trustee was seeking £56m based on
Actuarial advice)
The Actuary must sign the Actuarial report for April 5, 2005 before April
5, 2006. In that report he must indicate the status of long term funding
discussions with the Company. If he cannot say that an Agreement has been
reached, the Regulator can step in and force the parties to negotiate for
an additional 12 weeks. At the end of that period, if no agreement has
been reached, the Regulator can impose a deal.
You should be aware that the Trustee working party is concerned about
personal liability, and would prefer that the Regulator impose a deal,
rather than agree to a deal that could be challenged. They are currently
suggesting that they would seek Regulator endorsement of any negotiated
deal, even one supported by PwC.

I trust this is somewhat helpful. If you have any specific additional
questions, before our meeting, please send them and I'll try to get
answers before our meeting tomorrow morning.

John Poos
Director, Global Pensions


     -----Original Message-----
From:     McCorkle, Michael [BRAM:0049:EXCH]
Sent: Thursday, March 23, 2006 6:14 PM
To:   Currie, Peter [BRAM:0007:EXCH]; Doolittle, John [BRAM:0088:EXCH];
Poos, Johannus [BRAM:0048:EXCH]
Cc:   Stevenson, Kate [BRAM:0007:EXCH]
Subject:   UK Funding--PwC discussion
Importance: High
Sensitivity:   Confidential


John Poos is separately sending a general update on the PwC relationship
and our history in attempting to reach a satisfactory agreement with the
trustees.  One of the purposes of this meeting will be to build a
positive rapport with PwC.  Here are some points on the issues we think
they will be focused on:

We understand the value they are bringing to the process, and do want to
work with them as closely as possible to assure a strong working
relationship between ourselves and the trustees and to assure that the

deficit is handled and reduced in a repsonsible manner, while assuring
that we can maintain the liquidity and flexibility to grow the business.

A general update on Nortel's current situation, activities and strengths

An explanation as to why they have not seen a long range forecast up to
now

We have not provided to anyone--bond holders, litigants who have agreed
to settle for 14.5% of the company, Board or new $1.3B facility lenders
Transition period with new mgmt and new board
We are willing to share with them our long term forecast prepared
primarily for tax purposes, will send it out today and will be happy to
follow up later with any questions they may have on that.  They do need
to understand that it makes certain broad assumptions, some of which are
based on Market Intelligence we have collected, and that it is not a
board approved full financial model.
Since the business model is changing so rapidly, we think an investor
should be focusing on our strong products, our 100+ year history, new
management

If you have $3B of cash, including $300m or so in the UK, why can't you
pay down the deficit more rapidly?

Ours is an extremely competitive and rapidly changing industry
        Constant need to invest in new technologies to remain competitive.
        Internal investments or targetted acquisitions
All competitors in our industry maintain high cash balances--CISCO, MOT,
Ericsson, Nokia.
We are in over 100 countries, with the resulting working capital
obligations
Significant intra-quarter volatility--quarter end balances mask that
fact.
A significant piece of our business is the building of large, complex
networks which by their nature tie up working capital for extended
periods.
Have provisionally settled very significant lawsuits, with an agreement
to place $575M in escrow by June 1
Rating agencies watch our liquidity closely and view it as an important
credit metric during this time of transition.
Among other general obligations, we are also making payments into our
other global pension plans to reduce their deficits in a responsible
manner.
We use NNUK and NNI as global hubs for managing cash requirements of the
organization, so the $300M is both for use by NNUK and for other entities
as requried.
Due to the above, it is critical that we manage our business with
sufficient liquidity to give us the flexibility to grow the business and
succeed.

We are anxious to reach agreement with the trustees as soon as possible.
In fact, we have just inofrmed the trustees that we are willing to
support  the deficit with the Nortel corporate guarantee.

CONFIDENTIAL

What else can we do to help move the process forward?

Mike

```
-----Original Message-----
From:      McCorkle, Michael [BRAM:0049:EXCH]
Sent: 21 March 2006 13:51
To:   Currie, Peter [BRAM:0007:EXCH]
Cc:   Stevenson, Kate [BRAM:0007:EXCH]; Poos, Johannus [BRAM:0048:EXCH];
Donoghue, Adrian [BRAM:1162:EXCH]; Shane, Catherine [BRAM:0014:EXCH]
Subject:    FW: UK Funding
Importance: High
Sensitivity:    Confidential
```

Peter,

We are trying to set up a couple of meetings with you--the first to brief
you on the current situation in the UK, hopefully tomorrow evening after
John arrives back in Toronto, and the second with Price Waterhouse on
Thursday morning so that we can discuss primarily the two items which
they have identified as outstanding issues.  The first of these is the
answer to the question "what do we need our liquidity for which prevents
us from paying down the UK deficit more rapidly?"  The second is the
question of provision of long term forecasts.  As to this second
question, this is clearly something which PwC is not going to drop and
which they view as extremely significant.  I wonder if you and Adrian
would be comfortable sharing with Price Waterhouse our 10 year goodwill
impairment and tax forecast which Finance has put together, as long as it
was wrapped in sufficient disclosures?

We are working with Catherine to set up the timing, but I did want to let
you know the reason for the calls.

Mike

```
-----Original Message-----
From:      Poos, Johannus [BRAM:0048:EXCH]
Sent: 21 March 2006 06:05
To:   Stevenson, Kate [BRAM:0007:EXCH]; McCorkle, Michael
[BRAM:0049:EXCH]
Subject:    UK Funding
Importance: High
Sensitivity:    Confidential
```

Kate & Mike:

It is very hard to describe the status of these discussions. I think Ken
was confident that he could deliver a 7 year deal, provided we delivered
credit enhancement, but it looks like much has changed. PwC will not be
supportive, and have threatened to terminate the relationship. They argue
that a company that cannot provide projections cannot be viewed as a
going concern, and additionally, NNUK has sufficient current assets to
provide a significant up front contribution (if not retire the complete

deficit). Given the position expressed by PwC, the Trustees cannot agree
with our current proposal….even if it was a guaranteed 7 year deal vs the
10 year deal currently proposed (Is credit default insurance available?
That could solve a number of problems). I have it (unofficially) that
some members are advocating a 3 year deal. I don't know the annual costs
of such a plan….5 years is GBP97m.

In any event, we need to engage PwC directly to resolve the issues
expressed in the attached letter. I am meeting with the working group
later today, and possibly PwC, to pave the way for direct dialogue. The
Trustee has not wanted direct contact, but I believe that is the only way
this will get resolved. We need to answer the attached letter.

We need to do 2 things:
1. Convince PwC, through scenarios, that we view the Company as a going
concern. They understand the projections may vary wildly, but they need
to understand the ranges of future expectations over the term of this
agreement; and
2. We need to convince both PwC and the Trustee that we cannot afford to
pay at a faster rate. In this regard, Kate's short message is all that
the Trustees require….something from senior mgt that they can put in
their files to support all of the verbal advice given to date. You may
want to expand on some of Kate's points, but the letter need not be
longer than a page.

Lastly, I've met with 2 senior individuals in the UK business community (
Ken arranged this) who felt the urge to warn me that our plan is very
much on the Regulator's radar, and we need PwC support to avoid any
confrontation. This discussion with PwC is urgent (Wednesday if
possible)! I'll try to clear the way today, but I would strongly suggest
that all senior finance officers available to participate, do so,
including Peter Currie, if possible. I view this meeting as the most
critical of the past 13 months, and may require a follow up face to face
meeting. I know you are all actively engaged in other pressing matters,
but this can have far reaching implications if we're unsuccessful.

<< File: PWC Letter 03.03.06.doc >>


John Poos
Director, Global Pensions
Nortel Networks
8200 Dixie Road, Suite 100
Brampton, L6T 5P6
Phone 905-863-8402
Fax 905-863-8256
Email jpoos@nortel.com

CONFIDENTIAL

A/C                                                                                          TR21301