**Table of Contents**

*4.10   Registration Rights Agreement dated July 5, 2006 among Nortel Networks Limited, Nortel Networks Corporation, Nortel Networks Inc. and the representative of the initial purchasers with regards to U.S.$1,000,000,000 Floating Rate Senior Notes due 2011, U.S.$550,000,000 10.125% Senior Notes due 2013, U.S.$450,000,000 10.750% Senior Notes due 2016 (filed as Exhibit 10.2 to Nortel Networks Corporation's Current Report on Form 8- K dated July 6, 2006).

*4.11   Indenture dated as of March 28, 2007 among Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc. and The Bank of New York, as trustee (filed as Exhibit 4.1 to Nortel Networks Corporation's Current Report on Form 8- K dated March 28, 2007).

*4.12   Purchase Agreement dated March 22, 2007 among Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc. and the representatives of initial purchasers (filed as Exhibit 10.1 to Nortel Networks Corporation's Current Report on Form 8- K dated March 28, 2007).

*4.13   Registration Rights Agreement dated March 28, 2007 among Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc. and the representatives of the initial purchasers (filed as Exhibit 10.2 to Nortel Networks Corporation's Current Report on Form 8- K dated March 28, 2007).

*4.14   Purchase Agreement dated May 21, 2008 among Nortel Networks Limited, Nortel Networks Corporation, Nortel Networks Inc. and a representative of the initial purchasers (filed as Exhibit 10.1 to Nortel Networks Corporation's Current Report on Form 8- K dated May 28, 2008).

*4.15   Registration Rights Agreement dated May 28, 2008 among Nortel Networks Limited, Nortel Networks Corporation and Nortel Networks Inc. and a representative of the initial purchasers (filed as Exhibit 10.2 to Nortel Networks Corporation's Current Report on Form 8- K dated May 28, 2008).

*10.1   Nortel Networks Supplementary Executive Retirement Plan, as Amended effective October 18, 2001 and October 23, 2002, as amended by Resolutions by the Pension Investment Committee dated December 19, 2007 and December 20, 2007 with effect from January 1, 2008 (filed as Exhibit 10.77 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2007).

*10.2   Statement describing the retirement arrangements of the former President and Chief Executive Officer (filed as Exhibit 10.5 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2001).

*10.3   Assumption Agreement between Nortel Networks Corporation and Nortel Networks Limited dated March 5, 2001, regarding the assumption and agreement by Nortel Networks Corporation to perform certain covenants and obligations of Nortel Networks Limited under the Nortel Networks Limited Executive Retention and Termination Plan (filed as Exhibit 10.25 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2000).

*10.4   Nortel Networks Corporation Executive Retention and Termination Plan, as Amended and Restated, effective from June 26, 2002, Amended and Restated with effect from June 1, 2007 including the name change to Nortel Networks Corporation Change in Control Plan, as Amended and Restated with effect from January 18, 2008 (filed as Exhibit 10.3 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2008).

*10.5   Nortel Networks Limited SUCCESS Plan approved on July 25, 2002, as Amended and Restated on July 28, 2003 with effect from January 1, 2003, as Amended on July 28, 2003 with effect from January 1, 2003, as Amended on February 26, 2004 with effect from January 1, 2004, as Amended March 9, 2006 with effect from January 1, 2006, as Amended March 15, 2007 with effect from January 1, 2007 including name change to Nortel Networks Limited Annual Incentive Plan, as Amended on February 22, 2008 with effect from January 1, 2008 (filed as Exhibit 10.2 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2008).

*10.6   Supplementary Pension Credits Arrangement (filed as Exhibit 10.14 to Nortel Networks Corporation's Registration Statement dated August 28, 1975 on Form S- 1 (No. 2- 71087)).

*10.7   Statements describing the right of certain executives in Canada to defer all or part of their short- term and long- term incentive awards (filed as Exhibit 10.4 to Nortel Networks Limited's Quarterly Report on Form 10- Q for the quarter ended June 30, 2000).

*10.8   Statement describing eligibility for the Group Life Insurance Plan for directors who are not salaried employees of Nortel Networks Corporation (filed as Exhibit 10.30 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2002).

283

**HIGHLY CONFIDENTIAL**

### Table of Contents

*10.9  Amended general description of cash bonus for employees and executives of Nortel Networks Corporation and Nortel Networks Limited as originally filed as Exhibit 10.5 to Nortel Networks' Corporation's Quarterly Report on Form 10- Q for the quarter ended September 30, 2002 (filed as Exhibit 10.01 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2003).

*10.10  Nortel Networks Corporation Directors' Deferred Share Compensation Plan effective January 1, 2002, as Amended and Restated May 29, 2003, as Amended and Restated December 18, 2003 effective January 1, 2004, as Restated on June 29, 2005 and Amended December 7, 2005, as Amended and Restated on October 3, 2007 effective August 30, 2007 (filed as Exhibit 10.74 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2007).

*10.11  Nortel Networks Limited Directors' Deferred Share Compensation Plan effective June 30, 1998, as Amended and Restated May 1, 2000, as further Amended and Restated effective January 1, 2002, as Amended and Restated May 29, 2003, as Amended and Restated December 18, 2003 effective January 1, 2004, as Restated on June 29, 2005 and Amended December 7, 2005, as Amended and Restated on October 3, 2007 effective August 30, 2007 (filed as Exhibit 10.75 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2007).

*10.12  Nortel Networks Corporation 1986 Stock Option Plan, as Amended and Restated, as amended effective April 30, 1992, April 27, 1995, December 28, 1995, April 8, 1998, February 25, 1999, April 29, 1999, September 1, 1999, December 16, 1999, May 1, 2000 and January 31, 2002 (filed as Exhibit 10.1 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2002).

*10.13  Nortel Networks Corporation 2000 Stock Option Plan, as Amended effective May 1, 2000 and January 31, 2002 (filed as Exhibit 10.2 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2002).

*10.14  Nortel Networks/BCE 1985 Stock Option Plan (Plan of Arrangement 2000) (filed as Exhibit 10.5 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2000).

*10.15  Nortel Networks/BCE 1999 Stock Option Plan (Plan of Arrangement 2000) (filed as Exhibit 10.6 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2000).

*10.16  Nortel Networks U.S. Deferred Compensation Plan (filed as Exhibit 4.3 to Post- Effective Amendment No. 1 to Nortel Networks Corporation's Registration Statement dated May 16, 2000 on Form S- 8 (No. 333- 11558)), as amended by Resolutions dated January 18, 2008 (filed as Exhibit 10.7 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2008).

*10.17  Master Facility Agreement dated as of February 14, 2003, and amended by Amending Agreement No. 1 dated July 10, 2003, between Nortel Networks Limited and Export Development Canada, and as further amended by letter agreements dated March 29, 2004, May 28, 2004, August 20, 2004, September 29, 2004, October 29, 2004, November 19, 2004, December 10, 2004, January 14, 2005, February 15, 2005, March 15, 2005, April 29, 2005, May 31, 2005, amended and restated as of October 24, 2005 and further amended by Amendment No. 1 and Waiver dated May 9, 2006 and Amendment No. 2 dated December 12, 2006 and Waiver dated March 9, 2007 and further amended by Second Amended and Restated Master Facility Agreement dated December 14, 2007 (filed as Exhibit 99.1 to Nortel Networks Corporation's Current Report on Form 8- K dated December 18, 2007).

*10.18  Master Indemnity Agreement dated as of February 14, 2003 between Nortel Networks Limited and Export Development Canada, amended and restated as of October 24, 2005 (filed as Exhibit 10.3 to Nortel Networks Corporation's Current Report on Form 8- K dated October 28, 2005).

*10.19  Letter dated June 23, 2003 from the former President and Chief Executive Officer of Nortel Networks, to the Joint Leadership Resources Committee of the Board of Directors of Nortel Networks Corporation and Nortel Networks Limited regarding the voluntary return for cancellation of certain stock options to purchase common shares of Nortel Networks Corporation (filed as Exhibit 10.4 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2003).

*10.20  Asset Purchase Agreement dated June 29, 2004 among Nortel Networks Limited, Flextronics International Ltd. and Flextronics Telecom Systems, Ltd., amended as of November 1, 2004, February 7, 2005, August 22, 2005 and further amended by the Fourth and Fifth Amending Agreements as of May 8, 2006 (filed as Exhibits 10.2 and 10.3 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2006).

284

NNC-NNL06001427 / 296

**Table of Contents**

**\*\*10.21**      Amended and Restated Master Contract Manufacturing Services Agreement dated June 29, 2004 between Nortel Networks Limited and Flextronics Telecom Systems, Ltd., amended as of November 1, 2004 and May 8, 2006 (most recently filed as Exhibit 99.1 to Nortel Networks Corporation's Current Report on Form 8- K dated June 4, 2007).

**\*\*10.22**      Master Repair Services Agreement dated June 29, 2004 between Nortel Networks Limited and Flextronics Telecom Systems Limited, amended as of February 8, 2005 and May 8, 2006 (most recently filed as Exhibit 99.2 to Nortel Networks Corporation's Current Report on Form 8- K dated June 4, 2007).

**\*\*10.23**      Master Contract Logistics Services Agreement dated June 29, 2004 between Nortel Networks Limited and Flextronics Telecom Systems, Ltd., amended as of February 8, 2005 (most recently filed as Exhibit 99.3 to Nortel Networks Corporation's Current Report on Form 8- K dated June 4, 2007).

**\*\*10.24**      Letter Agreement dated June 29, 2004 among Nortel Networks Limited, Flextronics International Ltd. and Flextronics Telecom Systems, Ltd. amended and restated as of May 8, 2006 (filed as Exhibit 10.6 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2006).

**\*10.25**      Letter, dated January 10, 2005, to Mr. Lynton (Red) Wilson, the Chairman of the Board of Nortel Networks Corporation, and modified March 1, 2005 and delivered on August 11, 2005 from certain officers of Nortel Networks Corporation (filed as Exhibit 10.1 to Nortel Networks Corporation's Current Report on Form 8- K dated August 18, 2005).

**\*10.26**      Peter W. Currie, Executive Vice- President and Chief Financial Officer, Letter Agreement dated February 4, 2007 (filed as Exhibit 10.4 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2007). The Letter Agreement terminated the remuneration arrangement previously filed as Exhibit 10.2 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2005

**\*10.27**      Summary statement of terms of the additional special pension benefits for the Vice- Chairman and Chief Executive Officer approved by the Joint Leadership Resources Committee of the Board of Directors of Nortel Networks Corporation and Nortel Networks Limited and the Independent members of the Board of Directors of Nortel Networks Corporation and Nortel Networks Limited on March 22, 2005 (filed as Exhibit 10.8 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2005).

**\*10.28**      The Nortel 2005 Stock Incentive Plan (as filed with the 2005 Proxy Statement), as Amended and Restated on November 6, 2006 with effect on December 1, 2006, as Amended and Restated on January 18, 2008, as Amended and Restated on February 22, 2008 (filed as Exhibit 10.1 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2008).

**\*10.29**      Summary statement of the interest payable on the special pension benefits for the Vice- Chairman and Chief Executive Officer of Nortel Networks Corporation and Nortel Networks Limited approved by the Joint Leadership Resources Committee of the Board of Directors of Nortel Networks Corporation and Nortel Networks Limited on May 27, 2005 (filed as Exhibit 10.2 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2005).

**\*10.30**      Form of Indemnity Agreement effective on or as of June 29, 2005 entered into between Nortel Networks Corporation and each of the following Directors: Harry J. Pearce, Ronald W. Osborne, Richard D. McCormick, John A. MacNaughton, James B. Hunt, Jr. and Jalynn H. Bennett (filed as Exhibit 10.4 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2005).

**\*10.31**      Summary of remuneration, retirement compensation and group life insurance of the Chairman of the Board, Directors and Chairman of Committees of Nortel Networks Corporation effective June 29, 2005, restated with effect from February 20, 2008 (filed as Exhibit 10.73 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2007).

**\*10.32**      Summary of remuneration, retirement compensation and group life insurance of the Chairman of the Board, Directors and Chairman of Committees of Nortel Networks Limited effective June 29, 2005, as amended with effect from January 1, 2008 and restated February 20, 2008 (filed as Exhibit 10.72 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2007).

**\*10.33**      Forms of Instruments of Grant generally provided to optionees granted options under the Nortel Networks Corporation 1986 Stock Option Plan, as Amended and Restated or the Nortel Networks Corporation 2000 Stock Option Plan (filed as Exhibit 10.9 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2005).

HIGHLY CONFIDENTIAL      NNC-NNL06001427 / 297

**Table of Contents**

*10.34    Proxy Agreement effective as of July 29, 2005 with respect to Capital Stock of Nortel Government Solutions Inc. by and among Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc., Nortel Government Solutions Inc., James Frey, Thomas McInerney, Gregory Newbold, and the United States Department of Defense (filed as Exhibit 10.1 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended September 30, 2005).

*10.35    Escrow Agreement dated as of March 1, 2005 and as entered into on August 11, 2005 between Nortel Networks Corporation, Computershare Trust Company of Canada and certain officers of Nortel Networks Corporation (filed as Exhibit 10.3 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended September 30, 2005).

*10.36    Termination Agreement dated September 7, 2005 between Nicholas DeRoma, Chief Legal Officer and Nortel Networks Corporation (filed as Exhibit 10.06 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended September 30, 2005). The Agreement terminated the remuneration arrangement previously filed as Exhibits 10.3 and 10.4 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2001.

*10.37    Agreement and Plan of Merger dated as of April 25, 2005, by and among Nortel Networks Inc., PS Merger Sub, Inc. and PEC Solutions, Inc. (filed as Exhibit 99(d)(1) to Nortel Networks Inc. Current Report on Form SC TO- T dated May 3, 2005 and filed as Exhibit 10.9 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2005).

*10.38    William A. Owens letter agreement entered into on December 1, 2005, concerning the cessation of Mr. Owens' responsibilities as Vice-Chairman and Chief Executive Officer of Nortel Networks Corporation and Nortel Networks Limited effective November 15, 2005 (filed as Exhibit 10.68 to Nortel Network Corporation's Annual Report on Form 10- K/A for the year ended December 31, 2005). The letter agreement terminated the employment arrangements previously filed as Exhibit 10.1 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2004 and as Exhibit 10.2 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended September 30, 2004.

*10.39    Nicholas DeRoma, former Chief Legal Officer, Letter Agreement dated December 20, 2005 amending the Termination Agreement dated September 7, 2005 (filed as Exhibit 10.69 to Nortel Networks Corporation's Annual Report on Form 10- K/A for the year ended December 31, 2005).

*10.40    Steve Pusey, Executive Vice- President and President, Eurasia, Letter Agreement dated September 29, 2005 concerning a retention bonus (filed as Exhibit 10.70 to Nortel Networks Corporation's Annual Report on Form 10- K/A for the year ended December 31, 2005).

*10.41    Mike Zafirovski, President and Chief Executive Officer, Indemnity Agreement dated January 18, 2006 with effect from October 31, 2005 (filed as Exhibit 10.72 to Nortel Networks Corporation's Annual Report on Form 10- K/A for the year ended December 31, 2005).

*10.42    Pascal Debon letter agreement dated February 21, 2006, concerning the cessation of Mr. Debon's responsibilities as Senior Advisor of Nortel Networks Corporation and Nortel Networks Limited effective December 23, 2005 (filed as Exhibit 10.75 to Nortel Networks Corporation's Annual Report on Form 10- K/A for the year ended December 31, 2005).

*10.43    Forms of Instruments of Award as amended on April 11, 2007 and subsequently on March 3, 2008 generally provided to recipients of Restricted Stock Units and Performance Stock Units, Form of Instrument of Grant as amended on April 4, 2007 generally provided to recipients of stock options subsequently amended effective March 3, 2008 generally provided to recipients of stock options and stock appreciation rights under the Nortel 2005 Stock Incentive Plan, As Amended and Restated (filed as Exhibit 10.6 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2008).

*10.44    Stipulation and Agreement of Settlement, dated June 20, 2006, in the matter captioned In re Nortel Networks Corp. Securities Litigation, United States District Court for the Southern District of New York, Consolidated Civil Action No. 01 Civ. 1855 (RMB) (filed as Exhibit 99.1 to Nortel Networks Corporation's Current Report on Form 8- K dated December 12, 2007).

*10.45    Stipulation and Agreement of Settlement, dated June 20, 2006, in the matter captioned In re Nortel Networks Corp. Securities Litigation, United States District Court for the Southern District of New York, Master File No. 05- MD1659 (LAP) (filed as Exhibit 99.2 to Nortel Networks Corporation's Current Report on Form 8- K dated December 12, 2007).

HIGHLY CONFIDENTIAL    NNC-NNL06001427 / 298

**Table of Contents**

| | |
|---|---|
| *10.46 | Court Order, dated June 20, 2006, in the matter captioned Frohlinger et. al. v. Nortel Networks Corporation et. al., Ontario Superior Court of Justice, Court File No. 02- CL- 4605 (Ont.Sup.Ct.J.) (filed as Exhibit 10.12 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2006). |
| *10.47 | Court Order, dated June 20, 2006, in the matter captioned *Association de Protection des Epargnants et. al. Investisseurs du Québec v. Corporation Nortel Networks*, Superior Court of Quebec, District of Montreal, No. 500- 06- 000126- 017 (filed as Exhibit 10.13 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2006). |
| *10.48 | Court Order, dated June 20, 2006, in the matter captioned *Jeffery et. al. v. Nortel Networks Corporation et. al.*, Supreme Court of British Columbia, Vancouver Registry Court File No. S015159 (B.C.S.C.) (filed as Exhibit 10.14 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2006). |
| *10.49 | Court Order, dated June 20, 2006, in the matter captioned *Gallardi v. Nortel Networks Corporation et. al.*, Ontario Superior Court of Justice, Court File No. 05- CV- 285606CP (Ont.Sup.Ct.J.) (filed as Exhibit 10.15 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2006). |
| *10.50 | Court Order, dated June 20, 2006, in the matter captioned *Skarstedt v. Corporation Nortel Networks*, Superior Court of Quebec, District of Montreal, No. 500- 06- 000277- 059 (filed as Exhibit 10.16 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2006). |
| *10.51 | Resolution effective June 28, 2006 for Mike Zafirovski, President and Chief Executive Officer of Nortel Networks Corporation and Nortel Networks Limited outlining acceptance by Boards of Directors of Nortel Networks Corporation and Nortel Networks Limited of the voluntary reduction by Mr. Zafirovski of a special lifetime annual pension benefit by 29% resulting in a payout of U.S.$355,000 per year rather than U.S.$500,000 per year (filed as Exhibit 10.17 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2006). |
| *10.52 | Form of indemnity agreement entered into between Nortel Networks Corporation and members of the Board of Directors of Nortel Networks Corporation on or after September 6, 2006 (filed as Exhibit 10.4 to Nortel Network Corporation's Quarterly Report on Form 10- Q for the quarter ended September 30, 2006). |
| *10.53 | Summary statement of employment terms and conditions for Mike Zafirovski, President and Chief Executive Officer, November 15, 2005 as approved by the Joint Leadership Resources Committee of the Board of Directors of Nortel Networks Corporation and Nortel Networks Limited and the Independent members of the Board of Directors of Nortel Networks Corporation and Nortel Networks Limited on October 16, 2005 and form of instrument of award for restricted stock units and form of instrument of award for stock options granted on November 15, 2005 under the Nortel 2005 Stock Incentive Plan to Mike Zafirovski, President and Chief Executive Officer (filed as Exhibit 10.5 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended September 30, 2006). |
| **10.54 | Agreement between Nortel Networks Limited and Flextronics Telecom Systems, Inc. dated October 13, 2006, amending the asset purchase agreement dated June 29, 2004 among Nortel, and Flextronics International Ltd., and Flextronics Telecom, which was filed as Exhibit 10.3 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2004, as amended from time to time, the amended and restated master contract manufacturing services agreement dated as of June 29, 2004, which was filed as Exhibit 10.4 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2004, as amended from time to time, and the letter agreement dated June 29, 2004, which was filed as Exhibit 10.7 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2004, as amended and restated (filed as Exhibit 10.88 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2006). |
| *10.55 | Share and Asset Sale Agreement between Nortel Networks Limited and Alcatel Lucent dated December 4, 2006, as amended December 29, 2006 and June 28, 2007 (filed as Exhibit 10.5 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2007). |
| *10.56 | Dion Joannou letter agreement dated July 27, 2007 concerning the cessation of Mr. Joannou's responsibilities as President, North America of Nortel Networks Corporation and Nortel Networks Limited effective August 31, 2007 (filed as Exhibit 10.1 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended September 30, 2007). |
| *10.57 | Compensation and Human Resonrces Committee Policy on Company Aircraft dated July 31, 2007 (filed as Exhibit 10.2 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended September 30, 2007). |

HIGHLY CONFIDENTIAL      NNC-NNL06001427 / 299

**Table of Contents**

*10.58    Paviter Binning, Executive Vice- President and Chief Financial Officer of Nortel Networks Corporation and Nortel Networks Limited, Employment Letter dated September 28, 2007 (filed as Exhibit 10.3 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended September 30, 2007).

*10.59    Nortel Networks Corporation Share Purchase Plan for S. 16 Executive Officers dated November 8, 2007 (filed as Exhibit 10.71 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2007).

*10.60    Joel Hackney, President, Enterprise Solutions, Employment Letter amended effective September 19, 2007 updating and replacing the terms and conditions in the offer letter dated December 13, 2005 (filed as Exhibit 10.76 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2007).

*10.61    David Drinkwater, Chief Legal Officer, Employment Letter dated December 9, 2005 (filed as Exhibit 10.4 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2008) and Letter regarding special bonus dated October 4, 2007 (filed as Exhibit 10.79 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2007).

*10.62    Pay- Off Letter dated July 5, 2006 under the Credit Agreement dated February 14, 2006 among Nortel Networks Inc. and JPMorgan Chase Bank, N.A., J.P. Morgan Securities Inc. and Citigroup Global Markets Inc., Citicorp USA, Inc., Royal Bank of Canada and Export Development Canada, the Lenders party thereto (filed as Exhibit 10.80 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2007).

*10.63    Consent of Defendants Nortel Networks Corporation and Nortel Networks Limited, dated September 28, 2007, in the matter captioned *Securities and Exchange Commission v. Nortel Networks Corporation and Nortel Networks Limited,* United States District Court for the Southern District of New York, Civil Docket for Case No. 1:07- CV- 08851- LAP (filed as Exhibit 10.81 to Nortel Networks Corporation's Annual Report on Form 10- K for the year ended December 31, 2007).

*10.64    Nortel U.S. Stock Purchase Plan, As Amended and Restated, amended as of January 18, 2008, effective January 1, 2008 and amended and restated as of February 22, 2008 (filed as Exhibit 10.4 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2008).

*10.65    Nortel Global Stock Purchase Plan, As Amended and Restated, amended as of January 18, 2008, effective January 1, 2008 and amended and restated as of February 22, 2008 (filed as Exhibit 10.5 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2008).

*10.66    Nortel Stock Purchase Plan for Members of the Savings and Retirement Program, As Amended on February 22, 2008 (filed as Exhibit 10.6 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended March 31, 2008).

*10.67    Dennis Carey, Executive Vice- President, Corporate Operations, Employment Letter amended effective June 23, 2008 updating and replacing the terms and conditions of the offer letter dated January 26, 2006 (filed as Exhibit 10.3 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2008).

*10.68    Steve Slattery letter agreement concerning the cessation of Mr. Slattery's responsibilities as President, Enterprise Solutions of Nortel Networks Corporation and Nortel Networks Limited effective September 18, 2007 (filed as Exhibit 10.5 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended June 30, 2008).

*10.69    Nortel Networks Enhanced Severance Allowance Plan, as Amended and Restated, effective January 1, 2008 (filed as Exhibit 10.1 to Nortel Networks Corporation's Quarterly Report on Form 10- Q for the quarter ended September 30, 2008).

10.70    Form of indemnity agreement entered into between Nortel Networks Corporation and Board Appointed Officers of Nortel Networks Corporation on or after October 16, 2008.

10.71    David Drinkwater letter agreement dated November 11, 2008 concerning the cessation of Mr. Drinkwater's responsibilities as Chief Legal Officer of Nortel Networks Corporation and Nortel Networks Limited effective December 31, 2008, arrangements concerning appointment as Senior Advisor of Nortel Networks Corporation and Nortel Networks Limited effective January 1, 2009 and arrangements concerning the cessation of Mr. Drinkwater's employment effective close of business on February 28, 2009.

*10.72    Standstill and Waiver Agreement dated December 15, 2008 between Nortel Networks Limited and Export Development Canada (filed as Exhibit 10.1 to Nortel Networks Corporation's Current Report on Form 8- K dated December 17, 2008).

288

### Table of Contents

10.73    Form of indemnity agreement entered into between Nortel Networks Limited and members of the Board of Directors and Board Appointed Officers of Nortel Networks Limited on or after December 22, 2008.

10.74    William Nelson, Executive Vice- President, Global Sales, Employment Letter dated December 28, 2007.

10.75    William Nelson letter agreement dated November 27, 2008 concerning the cessation of Mr. Nelson's responsibilities as Executive Vice- President, Global Sales of Nortel Networks Corporation and Nortel Networks Limited effective December 31, 2008.

10.76    Steven Bandrowczak, Chief Information Officer, Employment Letter dated May 11, 2007.

10.77    Steven Bandrowczak letter agreement dated January 6, 2009 concerning his new role as Vice- President Enterprise Sales of Nortel Networks Inc. effective January 1, 2009.

10.78    Amending Agreement effective as of January 13, 2009 to the following agreements and any amendments from the effective date of each up to January 13, 2009: to the Amended and Restated Master Contract Manufacturing Services Agreement dated June 29, 2004 and October 13, 2006 between Nortel Networks Limited and Flextronics Telecom Systems Ltd.; to the Master Contract Manufacturing Services Agreement dated September 30, 2003 and October 13, 2006 between Nortel Networks Limited and Flextronics Corporation; to the Master Repair Services Agreement dated June 29, 2004 between Nortel Networks Limited and Flextronics Telecom Systems Ltd.; to the Master Contract Logistics Services Agreement dated June 29, 2004 between Nortel Networks Limited and Flextronics Telecom Systems Ltd.; and to the Master Contract Repair Services Agreement dated June 3, 2000 between Nortel Networks Limited and Flextronics Telecom Systems Ltd.

10.79    Agreement dated January 14, 2009 between Nortel Networks Limited and Export Development Canada ceasing the Standstill and Waiver Agreement dated December 15, 2008 and implementing a Temporary Facility.

10.80    Amended and Restated Short- Term Support Agreement dated as of February 10, 2009 between Nortel Networks Limited and Export Development Canada.

10.81    Amended and Restated summary of remuneration, retirement compensation and group life insurance of the Chairman of the Board, Directors and Chairman of Committees of Nortel Networks Corporation effective January 14, 2009.

10.82    Amended and Restated summary of remuneration and retirement compensation of the Chairman of the Board, Directors and Chairman of Committees of Nortel Networks Limited effective January 14, 2009.

10.83    Resolutions effective December 12, 2008 terminating the Nortel U.S. Stock Purchase Plan, As Amended and Restated, Nortel Global Stock Purchase Plan, As Amended and Restated and Nortel Stock Purchase Plan for Members of the Savings and Retirement Program, As Amended.

10.84    Nortel Networks U.S. Deferred Compensation Plan, as amended by Resolutions dated December 23, 2008 with effect from January 1, 2009.

10.85    Resolution of the Compensation and Human Resources Committee of the Boards of Nortel Networks Corporation and Nortel Networks Limited extending the cessation of employment date for David Drinkwater, Senior Advisor to March 31, 2009.

21.      Subsidiaries of the Registrant.

23.1     Consent of KPMG LLP.

23.2     Consent of Deloitte & Touche LLP.

24.      Power of Attorney of certain directors and officers.

31.1     Rule 13a - 14(a)/15d - 14(a) Certification of the President and Chief Executive Officer.

31.2     Rule 13a - 14(a)/15d - 14(a) Certification of the Executive Vice- President and Chief Financial Officer.

32.      Certification of the President and Chief Executive Officer and Executive Vice- President and Chief Financial Officer pursuant to 18 U.S.C. Section 1350 as adopted pursuant to Section 906 of the Sarbanes- Oxley Act of 2002.

HIGHLY CONFIDENTIAL    NNC-NNL06001427 / 301

**Table of Contents**

\* Incorporated by Reference.
\*\* Incorporated by Reference. Certain portions of this Exhibit have been omitted based upon a request for confidential treatment. These portions have been filed separately with the United States Securities and Exchange Commission.

290

Table of Contents

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized, in the City of Toronto, Ontario, Canada on the 2nd day of March, 2009.

NORTEL NETWORKS CORPORATION

By: /s/ MIKE S. ZAFIROVSKI
(MIKE S. ZAFIROVSKI,
President and Chief
Executive Officer)

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrant and in the capacities indicated on the 2nd day of March, 2009.

| Signature | Title |
|---|---|
| Principal Executive Officer | |
| /s/ MIKE S. ZAFIROVSKI<br>(MIKE S. ZAFIROVSKI) | President and Chief Executive Officer, and a Director |
| Principal Financial Officer | |
| /s/ PAVITER S. BINNING<br>(PAVITER S. BINNING) | Executive Vice- President, Chief Financial Officer and Chief Restructuring Officer |
| Principal Accounting Officer | |
| /s/ PAUL W. KARR<br>(PAUL W. KARR) | Controller |

### Directors

| | |
|---|---|
| J.H. BENNETT*<br>(J.H. Bennett) | J.P. MANLEY*<br>(J.P. Manley) |
| M. BISCHOFF*<br>(M. Bischoff) | R.D. MCCORMICK*<br>(R.D. McCormick) |
| J.B. HUNT, JR.*<br>(J.B. Hunt, Jr.) | C. MONGEAU*<br>(C. Mongeau) |
| K.M. JOHNSON*<br>(K.M. Johnson) | H.J. PEARCE*<br>(H.J. Pearce) |
| J.A. MACNAUGHTON*<br>(J.A. MacNaughton) | M.S. ZAFIROVSKI*<br>(M.S. Zafirovski) |

/s/ GORDON A. DAVIES
By:* (GORDON A. DAVIES, as attorney- in- fact
March 2, 2009.)

291

Exhibit 4.4

AGREEMENT OF RESIGNATION, APPOINTMENT AND ACCEPTANCE, dated as of February 12, 2009 among NORTEL NETWORKS LIMITED, formerly known as NORTHERN TELECOM LIMITED, a Canadian corporation (the "Guarantor"), NORTEL NETWORKS CAPITAL CORPORATION, formerly known as NORTHERN TELECOM CAPITAL CORPORATION, a Delaware corporation (the "Issuer"), THE BANK OF NEW YORK MELLON, formerly known as The Bank of New York, a national banking association duly organized and existing under the laws of the United States of America, having its corporate trust office at 101 Barclay Street New York, New York 10286 (the "Resigning Trustee"), and LAW DEBENTURE TRUST COMPANY OF NEW YORK, a New York banking corporation duly organized and existing under the laws of the State of New York and having a corporate trust office at 400 Madison Avenue, 4th Floor, New York, New York 10017, as successor Trustee (the "Successor Trustee").

**RECITALS:**

WHEREAS, there was originally authorized and issued $150 million aggregate principal amount of the Issuer's 7.875% Notes due 2026, fully and unconditionally guaranteed by the Guarantor (the "Securities"), under an Indenture, dated as of February 15, 1996 (the "Indenture"), between the Issuer, the Guarantor and the Resigning Trustee;

WHEREAS, an Event of Default under the Indenture has occurred and is continuing;

WHEREAS, Section 607 of the Indenture provides that the Trustee may resign at any time by so notifying the Issuer and the Guarantor;

WHEREAS, Section 607 of the Indenture further provides that, if the Trustee shall resign, the Issuer shall promptly appoint a successor Trustee;

WHEREAS, Section 607 of the Indenture further provides that the successor Trustee shall deliver a written acceptance of its appointment to the retiring Trustee and to the Issuer and the Guarantor;

WHEREAS, in accordance with Section 607 of the Indenture, the resignation or removal of the retiring Trustee shall become effective, and the successor Trustee shall have all the rights, powers and duties of the Trustee under the Indenture, upon the acceptance by a successor Trustee of its appointment as a successor Trustee;

WHEREAS, Section 609 of the Indenture provides that the Trustee (i) must satisfy with the requirements of Section 310(a)(1) of the Trust Indenture Act; (ii) at all times shall have a combined capital and surplus of at least $5 million, calculated as permitted by Section 310(a)(2) of the Trust Indenture Act; and (iii) is subject to Section 310(b) of the Trust Indenture Act including the optional provision permitted by the second sentence of Section 310(b)(9) of the Trust Indenture Act;

WHEREAS, the Resigning Trustee was appointed Registrar and Paying Agent under the Indenture; and

WHEREAS, the Resigning Trustee wishes to resign as Trustee, Registrar and Paying Agent under the Indenture; the Issuer wishes to appoint the Successor Trustee to succeed the Resigning Trustee as Trustee, Registrar and Paying Agent under the Indenture; and the Successor Trustee meets the qualification and eligibility requirements of Section 609 of the Indenture and wishes to accept its appointment as Trustee, Registrar and Paying Agent under the Indenture;

[Trustee Resignation, Appointment and Acceptance Agreement]

NOW, THEREFORE, the Issuer, the Guarantor, the Resigning Trustee and the Successor Trustee, for and in consideration of the premises and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby consent and agree as follows:

ARTICLE ONE<br>THE RESIGNING TRUSTEE

Section 101. Pursuant to Section 607 of the Indenture, the Resigning Trustee has notified the Issuer and the Guarantor that the Resigning Trustee is resigning as the Trustee, Registrar and Paying Agent under the Indenture.

Section 102. The Resigning Trustee hereby represents and warrants to the Successor Trustee that:

(a)    No covenant or condition contained in the Indenture has been waived by the Resigning Trustee or, to the best of the knowledge of the responsible officers of the Resigning Trustee's corporate trust department, by the Holders of the percentage in aggregate principal amount of the Securities required by the Indenture to effect any such waiver.

(b)    There is no action, suit or proceeding pending or, to the best of the knowledge of the responsible officers assigned to the Resigning Trustee's corporate trust department, threatened against the Resigning Trustee before any court or any governmental authority arising out of any action or omission by the Resigning Trustee as the Trustee under the Indenture.

(c)    The Resigning Trustee does not and as of the Effective Date (as defined in Section 402) will not hold any property under the Indenture.

(d)    This Agreement has been duly authorized, executed and delivered on behalf of the Resigning Trustee.

(e)    The current outstanding principal amount of the Securities as of the Effective Date is $150,000,000.

(f)    Interest on the Securities was paid to November 15, 2008.

(g)    The name and contact information of the registered holders and known beneficial holders of the Securities are listed on Schedule I.

**HIGHLY CONFIDENTIAL**        NNC-NNL06001427 / 304

(h)    The Event of Default is based on Section 501 (5) of the Indenture.

<u>Section 103</u>. The Resigning Trustee hereby assigns, transfers, delivers and confirms to the Successor Trustee all right, title and interest of the Resigning Trustee in and to the trust under the Indenture and all the rights, powers and trusts of the Trustee, Registrar and Paying Agent under the Indenture. The Resigning Trustee shall execute and deliver such further instruments and shall do such other things as the Successor Trustee may reasonably require so as to more fully and certainly vest and confirm in the Successor Trustee all the rights, trusts and powers hereby assigned, transferred, delivered and confirmed to the Successor Trustee as the Trustee, Registrar and Paying Agent.

<u>Section 104</u>. The Resigning Trustee shall deliver to the Successor Trustee, as of or immediately after the effective date hereof, all of the documents listed on Exhibit A hereto.

2

HIGHLY CONFIDENTIAL       NNC-NNL06001427 / 305

ARTICLE TWO
## THE ISSUER AND THE GUARANTOR

Section 201. Each of the Issuer and the Guarantor hereby certifies that it is, and the officers of each of the Issuer and the Guarantor who have executed this Agreement are, duly authorized to: (a) accept the Resigning Trustee's resignation as Trustee, Registrar and Paying Agent under the Indenture; (b) appoint the Successor Trustee as Trustee, Registrar and Paying Agent under the Indenture; and (c) execute and deliver such agreements and other instruments as may be necessary or desirable to effectuate the succession of the Successor Trustee as Trustee, Registrar and Paying Agent under the Indenture.

Section 202. Each of the Issuer and the Guarantor hereby accept the resignation of the Resigning Trustee as Trustee, Registrar and Paying Agent under the Indenture. Pursuant to Section 607 of the Indenture, the Issuer hereby appoints the Successor Trustee as Trustee, Registrar and Paying Agent under the Indenture and confirms to the Successor Trustee all the rights, powers and duties of the Resigning Trustee under the Indenture and with respect to all property and money held by such Resigning Trustee under the Indenture, with like effect as if the Successor Trustee was originally named as Trustee, Registrar and Paying Agent under the Indenture. Each of the Issuer and the Guarantor shall execute and deliver such further instruments and shall do such other things as the Successor Trustee may reasonably require so as to more fully and certainly vest and confirm in the Successor Trustee all the rights, powers, and duties hereby assigned, transferred, delivered and confirmed to the Successor Trustee.

Section 203.

(a) The Issuer hereby represents and warrants to the Successor Trustee that it is a corporation duly formed and validly existing under the laws of the State of Delaware.

(b) The Guarantor hereby represents and warrants to the Successor Trustee that it is a corporation duly incorporated and validly existing under the laws of Canada.

(c) Each of the Issuer and the Guarantor represents and warrants to the Successor Trustee that (i) the Indenture was validly and lawfully executed and delivered by the Issuer and the Guarantor and is in full force and effect; and (ii) the Securities are validly issued securities of the Issuer.

ARTICLE THREE
## THE SUCCESSOR TRUSTEE

Section 301. The Successor Trustee hereby represents and warrants to the Resigning Trustee and to the Property Trustee that:

(a)    The Successor Trustee is qualified and eligible under the provisions of Section 609 of the Indenture to act as the Trustee under the Indenture.

3

HIGHLY CONFIDENTIAL                NNC-NNL06001427 / 306

(b)     This Agreement has been duly authorized, executed and delivered on behalf of the Successor Trustee.

Section 302. The Successor Trustee hereby accepts its appointment as the successor Trustee, Registrar and Paying Agent under the Indenture and accepts the rights, powers, duties and obligations of the Resigning Trustee as the Trustee, Registrar and Paying Agent under the Indenture, upon the terms and conditions set forth therein, with like effect as if originally named as the Trustee, Registrar and Paying Agent under the Indenture.

Section 303. References in the Indenture to "Corporate Trust Office" or other similar terms shall be deemed to refer to the Corporate Trust Office of the Successor Trustee at 400 Madison Avenue, 4th Floor, New York, NY 10017 or any other office of the Successor Trustee at which, at any particular time, its corporate trust business shall be administered.

Section 304. Promptly after the execution and delivery of this Agreement, the Successor Trustee, on behalf of the Issuer, shall cause a notice, the form of which is annexed hereto marked Exhibit B to be sent to all Holders in the manner provided in Section 607 of the Indenture.

ARTICLE FOUR

MISCELLANEOUS

Section 401. Except as otherwise expressly provided herein or unless the context otherwise requires, all terms used herein which are defined in the Indenture shall have the meaning assigned to them in the Indenture.

Section 402. This Agreement and the resignation, appointment and acceptance effected hereby shall be effective as of the opening of business on the date first above written, upon the execution and delivery hereof by each of the parties hereto (the "Effective Date"); provided, however, that the resignation of the Resigning Trustee as Registrar and Paying Agent and appointment of the Successor Trustee as Registrar and Paying Agent shall be effective as of the close of business 10 days after the date first written above and until such date the Resigning Trustee shall continue to perform its duties under the Indenture.

Section 403. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

Section 404. This Agreement may be executed in any number of counterparts each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

Section 405. The Issuer, the Guarantor, the Resigning Trustee and the Successor Trustee hereby acknowledge receipt of an executed counterpart of this Agreement and the effectiveness thereof.

Section 406. Notwithstanding the resignation of the Resigning Trustee effected hereby, the Issuer and the Guarantor shall remain obligated to compensate, reimburse and indemnify the Resigning Trustee in accordance with, and to the extent provided in, Section 606 of the Indenture. The Issuer also acknowledges and reaffirms its obligations to compensate, reimburse and indemnify the Successor Trustee in accordance with, and to the extent provided in, Section 606 of the Indenture, which obligations to the Successor Trustee shall survive the execution hereof.

4

IN WITNESS WHEREOF, the parties hereby have caused this Agreement of Resignation, Appointment and Acceptance to be duly executed as of the day and year first above written.

NORTEL NETWORKS LIMITED, as
Guarantor

By:      /s/   J. Doolittle
Name:   J. Doolittle
Title:    Treasurer

By:      /s/   T. Connelly McGilley
Name:   Tracy S.J. Connelly McGilley
Title:    Assistant Secretary

NORTEL NETWORKS CAPITAL
CORPORATION, as Issuer

By:      /s/   J. Doolittle
Name:   J. Doolittle
Title:    Vice President

THE BANK OF NEW YORK MELLON,
as Resigning Trustee

By:      /s/   Martin Feig
Name:   Martin Feig
Title:    Vice President

LAW DEBENTURE TRUST COMPANY
OF NEW YORK, as Successor Trustee

By:      /s/   Robert L. Bice II
Name:   Robert L. Bice II
Title:    Senior Vice President

5

HIGHLY CONFIDENTIAL

EXHIBIT A
Documents to the extent available to be delivered to the Successor Trustee:

1.    Executed copy of Indenture dated as of February 15, 1996

2.    File of Closing Documents

3.    A copy of the most recent Compliance Certificate delivered pursuant to Section 1005 of the Indenture.

4.    Copies of any official notices sent by the Trustee to all the Holders of the Securities pursuant to the terms of the Indenture during the past twelve months and a copy of the most recent Trustee's Annual Report to Holders, if any.

5.    The original Securities.

6

HIGHLY CONFIDENTIAL                    NNC-NNL06001427 / 309

EXHIBIT B
[LAW DEBENTURE TRUST COMPANY OF NEW YORK LETTERHEAD]
NOTICE

To the Holders of
Nortel Networks Limited and
Nortel Networks Capital Corporation
7.875% Notes due 2026
CUSIP No. 665810AB3

NOTICE IS HEREBY GIVEN, pursuant to Section 607 of the Indenture dated as of February 15, 1996 by and between Nortel Networks Limited, formerly known as Northern Telecom Limited, as Guarantor, Nortel Networks Capital Corporation, formerly known as Northern Telecom Capital Corporation, as Issuer, and The Bank of New York Mellon, formerly known as The Bank of New York, as Trustee, that The Bank of New York Mellon has resigned as Trustee under the Indenture.

Pursuant to Section 607 of the Indenture, Law Debenture Trust Company of New York, a New York banking corporation duly organized and existing under the laws of the State of New York, has accepted appointment as Trustee under the Indenture. The address of the Corporate Trust Office of Law Debenture Trust Company of New York is 400 Madison Avenue, 4 th Floor, New York, NY 10017.

The Bank of New York Mellon's resignation as Trustee and Law Debenture Trust Company of New York's appointment as successor Trustee were effective as of the opening of business on February 12, 2009.

Dated: New York, New York
   February 12, 2009

                                        Very truly yours,

                                        By:
                                        Name:
                                        Title:

7

HIGHLY CONFIDENTIAL

SCHEDULE I

NAME & ADDRESS OF REGISTERED HOLDERS:

NAME & ADDRESS OF BENEFICIAL HOLDERS:

8

 

Exhibit 10.70

### Indemnity

In consideration of your service or continued service in any of the following capacities:

as an officer of Nortel Networks Corporation (the "Corporation") and Nortel Networks Limited ("NNL");

as a director of any entity of the Corporation to the extent that you are serving in such capacity at the request of the Corporation; or

as an officer of any other entity to the extent that you are serving in such capacity at the request of the Corporation, such capacities referred to herein as the "Indemnified Capacities", the Corporation with full power and authority to grant an indemnity valid and binding upon and enforceable against it in the terms hereinafter contained, hereby agrees to indemnify you to the full extent contemplated by this agreement.

**1.    Scope of Indemnity**

(a) The Corporation shall indemnify and hold you harmless for the full amount of any "Cost" (as hereinafter defined) reasonably incurred by you in connection with any "Proceeding" (as hereinafter defined) that may be made or asserted against or affecting you or in which you are required by law to participate or in which you participate at the request of the Corporation or in which you choose to participate (based on your reasonable belief that you may be subsequently named in that Proceeding or any Proceeding related to it) if it relates to, arises from or is based on your service in an Indemnified Capacity, in any case whether or not you have been named (an "Indemnified Claim").

(b) Subject to the terms hereof and any applicable policy of the Corporation relating to the reimbursement of expenses, the Corporation shall also indemnify and hold you harmless for the full amount of any other Cost reasonably incurred by you or to which you are subject if it relates to, arises from or is based on your service in an Indemnified Capacity (provided however that you shall not be entitled to indemnification in respect of any tax assessed on your income). Subject to the terms of any applicable policy of the Corporation, the Corporation shall also reimburse you for reasonable legal fees that you incur in connection with your retaining separate counsel in respect of a matter being considered by the board of directors of the Corporation.

(c) For the purposes of this agreement:

Nortel Networks Corporation
195 The West Mall Toronto ON Canada M9C 5K1

(i)    "Indemnified Amount" means any amount which the Corporation is obliged to pay pursuant hereto;

(ii)    "Cost" means all injury, liability, loss, damage, charge, cost, expense, fine or settlement amount whatsoever which you may reasonably incur, suffer or be required to pay (including, without limitation, all reasonable legal and other professional fees as well as all out- of- pocket expenses for attending discoveries, trials, hearings and meetings); and

(iii)    "Proceeding" means any claim, action, suit, application, litigation, charge, complaint, prosecution, assessment, reassessment, investigation, inquiry, hearing or proceeding of any nature or kind whatsoever, whether civil, criminal, administrative or otherwise.

**2.    Procedure for Making a Claim**

(a)    If you wish to make any claim for payment of an Indemnified Amount to you by the Corporation hereunder, you shall deliver a written notice of such claim for payment to the Corporation, together with reasonable details and supporting documentation with respect to such claim (such written notice, together with such details and documentation, referred to herein as an "Indemnification Notice").

(b)    Subject to obtaining any required court approval, the Corporation shall pay all Indemnified Amounts arising in connection with the matters described in the Indemnification Notice to you (or as you may direct) no later than 30 days after the date on which you deliver an Indemnification Notice on account of any such Indemnified Amount to the Corporation.

HIGHLY CONFIDENTIAL

(c)    The Corporation shall pay all Indemnified Amounts within the time period contemplated in this Section 2, subject to Section 6 hereof.

**3.    Notice of Claim**

(a)    <u>Notice to Corporation</u>

If you become aware of any Indemnified Claim or reasonably expect that an Indemnified Claim will be made, you will give the Corporation notice in writing promptly of such Indemnified Claim or potential Indemnified Claim.

- 2 -

(b)　　Notice to Director or Officer

If the Corporation becomes aware of any Indemnified Claim or reasonably expects that an Indemnified Claim will be made, the Corporation will give you notice in writing promptly of such Indemnified Claim or potential Indemnified Claim.

**4.　　Defence of Action**

(a)　　By Corporation

The Corporation shall at its expense and in a timely manner contest and defend against any Indemnified Claim (other than an Indemnified Claim brought by the Corporation or any of its subsidiaries) and take all such steps as may be necessary or proper therein to prevent the resolution thereof in a manner adverse to you, including the taking of such appeals as counsel to the Corporation may advise are likely to succeed in the circumstances (which opinion shall be in writing and a copy thereof provided to you). In this regard, the Corporation will keep you fully informed on a timely basis of all steps and developments relating to the foregoing. The Corporation shall not agree to any settlement on your behalf without your written consent.

(b)　　By Officer

Notwithstanding Section 4(a) hereof, you will be entitled to assume carriage of your own defence relating to any Indemnified Claim (and for greater certainty, the full amount of reasonable expense you incur in connection with such defence shall be an Indemnified Amount) if:

(i)　　the Corporation does not in a timely manner:

(A)　　undertake appropriate action; or

(B)　　take such legal steps as may be from time to time required to properly defend against any such claim; or

(ii)　　in the reasonable opinion of your counsel (which opinion shall be in writing and a copy thereof provided to the Corporation) your interests in respect of the relevant matter conflict with the interests of the Corporation in respect of such matter or with the interests of any other director or officer of the Corporation in respect of whose defence the Corporation has carriage;

provided that:

(i)　　you shall not agree to settle any Indemnified Claim without the prior written consent of the Corporation (unless you have a reasonable belief that the Corporation will not satisfy its obligations to you hereunder if the Indemnified Claim proceeds); and

- 3 -

HIGHLY CONFIDENTIAL　　　　NNC-NNL06001427 / 314

(ii)    if the Indemnified Claim would be covered by insurance maintained by the Corporation, you shall comply with the applicable conditions of such coverage (provided however, that failure to so comply shall not relieve the Corporation of its obligation to indemnify you hereunder).

**5.    Former Directors and Officers**

(a) You shall continue to be entitled to indemnification and advances hereunder in accordance with the terms hereof with respect to Indemnified Claims, even though you may no longer be acting in an Indemnified Capacity.

(b) You and your advisors shall at all times be entitled to review during regular business hours all documents, records and other information with respect to the Corporation or any entity in which you acted in an Indemnified Capacity which are under the Corporation's control and which may be reasonably necessary in order to defend yourself against any Proceeding that relates to, arises from or is based on your service in an Indemnified Capacity, provided that you shall maintain all such information in strictest confidence except to the extent necessary for your defence.

**6.    No Obligation to Pay Indemnities Prohibited by Law**

(a) Notwithstanding anything contained herein, the Corporation shall not pay any Indemnified Amount hereunder if the payment of such amount would be prohibited under the provisions of the *Canada Business Corporations Act* (the "CBCA") or otherwise by law.

(b) Without limitation to Section 6(a), you acknowledge that the CBCA prohibits the Corporation from indemnifying you unless you:

(i)    acted honestly and in good faith with a view to the best interests of the Corporation or, as the case may be, of NNL or any other entity to the extent that you are serving as a director or officer of that entity at the request of the Corporation; and

(ii)    in the case of a criminal or administrative action or proceeding that is enforced by a monetary penalty, you had reasonable grounds for believing that your conduct was lawful (each of (i) and (ii) a "Condition").

(c) If the Corporation pays an Indemnified Amount which it is prohibited from paying by law (as determined by a court or administrative tribunal of competent jurisdiction in a final judgment that has become non- appealable), then such amount shall be deemed to have been an advance of Costs by the Corporation to you and upon written request by the Corporation, you shall repay such amounts to the Corporation. For greater certainty, it is acknowledged that the Corporation shall advance Costs to you or on your behalf in connection with an Indemnified Claim prior to the resolution of the merits of any action, provided that if a court or administrative tribunal of competent jurisdiction in a final judgment that has become non-appealable determines that you do not fulfill either of the Conditions, you shall repay such amounts to the Corporation.

- 4 -

**HIGHLY CONFIDENTIAL**    NNC-NNL06001427 / 315

7.    **Court Approval**

(a) If the Corporation is required under applicable law to obtain the approval of the court in order to pay any Indemnified Amount, the Corporation shall seek such approval forthwith upon demand by you for indemnification or advance.

(b) In the event of a dispute under this agreement, the Corporation shall apply to the court to approve a payment under this agreement forthwith upon receiving a written request from you to do so.

8.    **Insurance**

The Corporation will advise you promptly after it becomes aware of any material change in or withdrawal or lapse in coverage of any insurance policy of the Corporation's existing directors and officers, details of any claim made under such a policy and the triggering of any extended reporting period applicable to any such policy.

9.    **Enurement**

This indemnity and the benefit of the obligations of the undersigned hereunder shall inure to the benefit of you, your heirs, estate, executors and administrators and shall be binding upon the Corporation's successors and assigns.

10.    **Previous Indemnities**

This indemnity supersedes and replaces all prior indemnities entered into between the Corporation and you with respect to the subject matter of this indemnity, provided however, that nothing in this provision shall operate to restrict in any way any indemnity to which you are entitled under the Corporation's by- laws or otherwise at law.

11.    **Jurisdiction**

The courts of the Province of Ontario, Canada shall have exclusive jurisdiction with respect to all matters dealing with the enforcement of or otherwise arising out of or in connection with this indemnity, and by accepting and relying hereon you expressly and irrevocably submit and attorn to the exclusive jurisdiction of, and irrevocably agree to be bound by a judgment of, any such court relating to all such matters.

12.    **Notices**

Any notice permitted or required hereunder shall be made:

(i)          to the Corporation at: Nortel Networks Corporation, 195 The West Mall, Toronto, Ontario, M9C 5K1, Attention: Chief Legal Officer (facsimile: 905.863.7386); and

(ii)          to you at          Address
                                   City, Prov
                                   Postal Code

- 5 -

HIGHLY CONFIDENTIAL                                          NNC-NNL06001427 / 316

(or at such other address as you or the Corporation may from time to time specify) and shall be sufficiently given if delivered personally, if sent by mail or transmitted by fax and such notice shall be deemed to have been received on the date it is sent (or, if not sent on a day on which the Corporation is open for business at its head office (a "business day"), on the next business day), except for notices sent by mail, which will be deemed to have been received on the fifth business day following the date mailed.

**13.   Governing Law**
This indemnity shall in all respects be governed by and construed in accordance with the laws of the Province of Ontario, Canada, and all disputes, claims or matters arising out of or under it shall be governed by such laws.
DATED this     day of              , 2008.

                                        **NORTEL NETWORKS CORPORATION**

                                        by
                                        Name:                        Gordon A. Davies
                                        Title:                       Deputy General
                                                                     Counsel and
                                                                     Corporate Secretary


                                        by
                                        Name:                        Pavi Binning
                                        Title:                       Chief Financial
                                                                     Officer

The undersigned accepts the foregoing indemnity and agrees to comply with the terms and conditions set out above.


        [Name of Officer]                                      [Witness]

                                   - 6 -

**HIGHLY CONFIDENTIAL**

 

**CONFIDENTIAL- SPECIAL HANDLING**                                            Exhibit 10.71

November 11, 2008
Mr. David Drinkwater
195 The West Mall
Toronto, Ontario
M9C 5K1
Dear David:

This letter ("Agreement") records the arrangements between you and Nortel Networks Limited ("NNL") concerning the cessation of your employment. The Agreement shall bind and inure to the benefit of each party and their respective heirs, successors and assigns. You acknowledge that this Agreement contains modifications to the arrangements provided to you in an earlier document on or about October 16, 2008 concerning the cessation of your employment.

1.  As used in this Agreement, the term "Corporation" shall mean Nortel Networks Corporation ("NNC"), its subsidiaries and affiliates, their successors and assigns, and all of their past and present officers, directors, employees and agents (in their individual and representative capacities), in every case, individually and collectively.

2.  You will cease to act as Chief Legal Officer of NNC and NNL effective December 31, 2008 and, you will be appointed Senior Advisor of NNC and NNL effective January 1, 2009. Effective as of the close of business on February 28, 2009, your active employment relationship with the Corporation will cease (the "Employment Termination Date") unless otherwise extended beyond February 28, 2009 by mutual agreement between you and the Corporation. You will cease to act as an officer and/or director of the Corporation and any of the Corporation's subsidiaries and affiliates on February 28, 2009, and the Corporation will take all necessary steps to remove you from all such positions.

3.  You understand and agree that your designation of Reporting Insider pursuant to Corporate Policy 320.28 of the Corporation (and under applicable Canadian/U.S. securities legislation for Reporting Insiders), shall cease effective 12:01 a.m. on March 1, 2009. Notwithstanding the fact that you no longer have this designation, if you are in possession of material non- public information relating to the Corporation, you are prohibited from trading in securities of the Corporation (or informing another person of the material non- public information) in accordance with applicable laws. You further understand that you are required to amend your insider profile within 10 days of February 28, 2009 on the Canadian System for Electronic Disclosure by Insiders (SEDI) to indicate that you are no longer a Reporting Insider of the Corporation. You should

    contact the Insider Reporting Department at (905) 863- 1220 and fax (905) 863- 8524 for assistance in amending the SEDI profile.

4.  Conditional upon your compliance with all terms and conditions of this Agreement, including, without restriction, paragraph 9 of this Agreement, the Corporation shall:

*(Severance Allowance)*

    (a) pay you the sum of CAD$21,153.85 (Canadian dollars) bi- weekly, less applicable deductions, for the period commencing on March 1, 2009 and terminating August 31, 2010 ("Salary Continuation Period");

*(Vacation Benefit)*

    (b) pay you, on or before March 31, 2009 a lump sum amount equivalent to 14 days of base salary representing all of your current accrued but unused vacation benefit, with no further vacation accrual subsequent to February 28, 2009;

*(2008 Nortel Networks Limited Annual Incentive Plan ("AIP"))*

    (c) determine your eligibility for any AIP payment for calendar year 2008 in accordance with the terms and conditions of the 2008 AIP. Any payment under the Plan will be determined by the Corporation based on the terms and conditions of the Plan applicable to you as of this date, applying the corporate performance data applicable to all other participants. Eligibility shall not be construed as a right to any payment. In accordance with the AIP, you will not be eligible for any AIP payment for calendar year 2009 or any year thereafter;

*(Pension benefits)*

HIGHLY CONFIDENTIAL

(d)    continue your participation and the related matching by the Corporation in the Capital Accumulation and Retirement Program (CARP) during the Salary Continuation Period, pursuant to the terms of the Northern Telecom Managerial and Non- Negotiated Pension Plan (the "Pension Plan") and the changes to the Pension Plan which became effective January 1, 2008. Your final Pension Plan benefits will be calculated in accordance with the Pension Plan provisions that apply to you as of the date of determination;

*(Long Term Incentives)*

(e)    consider you ineligible for consideration for any future grant(s) of stock options, restricted stock units ("RSUs") and performance stock units ("PSUs"). Stock

Page 2

HIGHLY CONFIDENTIAL                        NNC-NNL06001427 / 319

options and RSUs previously granted to you will continue to vest during the Salary Continuation Period in accordance with the provisions of such plans. Your rights with respect to any outstanding stock options and RSUs will continue to be determined in accordance with the applicable Nortel equity plans and applicable Instruments of Grant and/or Instruments of Award. Subject to any applicable trading restrictions that may restrict your ability to trade Nortel securities, you will have the right to exercise any vested Nortel stock options or have any vested RSUs settled as set forth in Exhibit A in accordance with the terms of the applicable instruments of grant/award, equity plan(s) and any other relevant documents governing the options and RSUs. In addition, you acknowledge that, in certain circumstances, you agree that you will, if required by Nortel in its sole discretion, pay to Nortel an amount in cash equal to; (i) the amount by which the market value of the shares on the date of exercise of the options exceeds the exercise price (in the case of options); and (ii) the amount (subject to certain adjustments) equal to the number of RSUs that vested during the applicable period multiplied by the market value of the shares on the applicable settlement date (in the case of RSUs), all in accordance with the terms of the applicable instruments of award/grant and any other documents that govern. All outstanding unvested PSU's previously granted to you shall be forfeited and cancelled for no consideration in accordance with the applicable equity plan and instrument of award;

*(Investment Plan)*

(f)     following your completion of the necessary documentation, distribute your account balance in accordance with the provisions of the Nortel Networks Investment Plan. Your right to contribute to and participate in the Investment Plan will cease at the end of the Salary Continuation Period;

*(Income Tax Preparation)*

(g)     pay the cost of personal income tax preparation by a service provider selected by you for the tax years 2008, 2009 and 2010; and.

*(Taxation)*

(h)     with respect to any monies or monetary equivalents to be paid hereunder, in its reasonable discretion withhold appropriate amounts concerning any and all applicable federal and provincial taxes.

Page 3

HIGHLY CONFIDENTIAL                    NNC-NNL06001427 / 320

*(Independent Legal Advice)*

(i)   pay the cost of independent legal advice relating to this agreement to a maximum of $5,000.

5.   All of the Corporation's compensation, benefits and perquisites not expressly extended to or preserved for you pursuant to this Agreement shall be terminated effective 12:01 a.m., March 1, 2009.

6.   Regardless of whether you comply with this Agreement, the Corporation shall indemnify you, and advance any reasonable legal fees and expenses, to the extent permitted by, and in accordance with, section 124 of the Canada Business Corporations Act (the "CBCA") and the Corporation's By-Laws (the "By-Laws"). You shall repay such fees and expenses if and to the extent it is determined that you do not fulfill the conditions set forth in subsection 124(3) of the CBCA or the By-Laws. Subject to and without limiting the foregoing, the Corporation's legal counsel will represent you in respect of any civil, criminal, administrative, investigative (including any internal investigation or independent review being conducted by the Corporation's Board of Directors or a Committee thereof) or other proceeding in Canada, the United States or other applicable jurisdiction in which you are involved (including as a witness) because of your association with the Corporation (hereinafter, the "Matter"). However, in the event that the Corporation's counsel cannot represent you in the Matter because of a conflict, the Corporation agrees to advance monies to pay your reasonable and actual legal expenses in the Matter provided that you will not settle the Matter, retain defense counsel or expert witnesses or consultants, or incur any defense costs without obtaining the prior written consent of the Deputy General Counsel and Corporate Secretary, which consent will not be unreasonably withheld.

7.   It is agreed and understood that for the purposes of the Nortel Networks Corporation Change in Control Plan ("CIC Plan"), "Termination Date" as defined in the CIC Plan is February 28, 2009. In the event that in the 30 day period after February 28, 2009, you become eligible for the Entitlements (as defined under the CIC Plan) provided under the CIC Plan, this Agreement shall cease and be replaced by the terms and conditions of the CIC Plan.

8.   You shall reconcile and settle your employee expense account, and any advances made to you by the Corporation, as soon as possible, but in any event no later than March 31, 2009 and the Corporation shall in the normal course reimburse you for any business expenses incurred by you through the Employment Termination Date.

Page 4

HIGHLY CONFIDENTIAL

9.   You shall continue to maintain the confidentiality of all of the Corporation's trade secrets and confidential or proprietary commercial, technical or other information; and specifically you agree that you shall not at any time during or following your employment with the Corporation, disclose, other than to the Corporation's authorized personnel, or otherwise use for non- Corporation purposes, any confidential or proprietary information (whether or not a trade secret) relating to an activity of the Corporation. You shall also continue to maintain the confidentiality of any dealings, transactions or affairs of the Corporation which may have come to your knowledge in any manner during your employment.

Further, you agree not to reveal, disclose, or cause to be revealed or disclosed, anything with respect to the Corporation that is injurious or harmful of any of its interests, or the interests of its employees, officers or directors. In addition, during the period March 1, 2009 through to the end of the Salary Continuation Period, you:

(i)   shall issue no public statement on the business affairs, policies or the like of the Corporation without the prior written consent of the Deputy General Counsel and Corporate Secretary and, without limiting the foregoing, you shall not in any way disparage the Corporation or any director, officer and/or employee of the Corporation from the date of receipt of this Agreement to and including the last day of the Salary Continuation Period; and

(ii)   shall not, on behalf of yourself or others, directly or indirectly, recruit, induce or solicit or attempt to recruit, induce or solicit any individual who is supplying services to the Corporation, whether as an employee, contractor, consultant or otherwise, to terminate their employment or contractual arrangements with the Corporation; and

(iii)   shall not become an employee, contractor, consultant, representative or in any manner or capacity accept any assignment, project or work for a company in competition with the Corporation, without the prior written approval of the Deputy General Counsel and Corporate Secretary, provided that such approval shall not be unreasonably withheld.

The Corporation, on its own behalf and on behalf of its employees, officers and directors agrees not to reveal, disclose or cause to be revealed or disclosed, anything with respect to you that is injurious or harmful to any of your interests and, without limiting the foregoing, shall not in any way disparage you.

Nothing in this Agreement or otherwise shall prevent you or the Corporation from (x) responding to incorrect, disparaging or derogatory statements to the extent reasonably necessary to correct or refute such statement or (y) making any truthful statement to the

Page 5

HIGHLY CONFIDENTIAL   NNC-NNL06001427 / 322

extent necessary in connection with the circumstances covered by clauses (i), (ii) and (iii) of the next paragraph.

Notwithstanding any of the foregoing, the provisions of this paragraph 9 shall not apply (i) when disclosure is required by law or by any court, or administrative or legislative body (including any committee thereof) with actual or apparent jurisdiction to order you or the Corporation to disclose or make accessible any such information, (ii) with respect to any litigation involving this Agreement or any other agreement between you and the Corporation, (iii) in connection with any assistance provided by you pursuant to paragraph 12 hereof or (iv) as to information that becomes generally known to the public or within the relevant trade or industry other than due to a violation of this paragraph 9.

Also, you hereby acknowledge and agree that until your Employment Termination Date you, as a senior executive of Nortel, are expected to continue to perform your responsibilities at an exemplar level while displaying the highest professional standards.

10.    The Corporation's obligations under paragraphs 4(a), (c), (d), (e), (f) and (g) will terminate forthwith if you become an employee, consultant, contractor or representative of any direct competitor of the Corporation unless the Deputy General Counsel and Corporate Secretary provides prior written approval of such engagement.

11.    Upon the occurrence of any contingency which may affect your rights in or to any subsequent payment or benefit, or affects the Corporation's rights under this Agreement, including without limitation, your obtaining new employment, you shall, within ten (10) days of such occurrence, provide written notice to the Corporation of that event. Such notice shall be sent in writing to the Deputy General Counsel and Corporate Secretary. Subject to paragraph 10 above, and provided that you are in compliance with this Agreement, it is understood that you are under no duty to mitigate, and no remuneration or benefits earned by or paid to you during the Salary Continuation Period shall affect the obligations of the Corporation to make the payments, or provide the benefits, to you contemplated by this Agreement.

12.    You shall make available to the Corporation, upon reasonable notice and at a time convenient to you, advice, assistance and information that shall include, but not be limited to, offering and explaining evidence, providing sworn statements, participation in discovery, and trial preparation testimony as may be deemed necessary by the Corporation concerning the Corporation's position in any legal proceedings involving issues brought against or initiated by the Corporation of which you have knowledge. In the event it is necessary for you to provide the aforementioned services, then the Corporation shall reimburse you for authorized, reasonable and documented travel expenses, including, but not limited to, transportation, lodging and meals. The

Page 6

HIGHLY CONFIDENTIAL    NNC-NNL06001427 / 323

Corporation acknowledges that attorneys' fees and associated expenses are reimbursable if the assistance you provide is related to any Matter, as set forth in paragraph 6 hereof.

13. Prior to your Employment Termination Date, you shall return to the Corporation any and all property of the Corporation that was in your possession and/or subject to your control, whether such material shall be written instruments or tapes in electronic and/or recorded format. Nortel Networks Corporate Procedure 206.01 states that "all documents, messages or data composed, sent, or received through the network of Nortel Networks in any form are and remain at all times the property of Nortel Networks". In addition, all work product that you have produced during your employment with the Corporation is the property of the Corporation. Therefore, all information, (however recorded or stored) ("Information") in your possession and/or that you have created in the course of your employment with the Corporation (whether or not currently in your possession or control) is the property of the Corporation. Information does not include copies in your possession of your records of employment and/or financial dealings between you and the Corporation.

The Corporation is a party to certain civil lawsuits and other investigations and may need access to certain Information for those matters as well. Therefore, you took affirmative steps to preserve all applicable information in your possession, custody and control (including information controlled by your assistant, if any), have left all such information in the possession and custody of the Corporation, and do not have any other Information that is not in public domain in your possession or custody.

The Information will be used by the Corporation for general business purposes and may also be provided to regulatory authorities in response to their requests or disclosed in any relevant private litigation to which the Corporation is a party. Also, the Information may be used by and provided to entities within the Corporation's group of companies and/or the Corporation's external advisors. In some instances, the recipients of this Information will be located outside your geographic area. To the extent that the information contains any personal information, you consent to the collection, transfer and disclosure of that information by the Corporation to subsidiaries and affiliates of the Corporation, third parties and regulatory authorities within and outside of your geographic area for the purposes set out above, and the Corporation shall advise you of any such transmittal.

14. In consideration of the monies and other benefits to be provided to you as set forth herein, you hereby fully and completely release the Corporation, its subsidiaries and affiliates, and their respective directors, officers and employees, to the extent permitted by law, from any and all real or pretended claims, causes of actions, rights, damages or

Page 7

injuries of any nature whatsoever you may have had or now have, whether known or unknown, (except for promises and commitments contained or preserved herein), arising from or connected with your employment with the Corporation or the termination thereof, including any and all such claims, causes of action, rights, damages or injuries arising under any statute, including, without limitation, the applicable labour legislation in Ontario or at common law. Furthermore, you understand that this release shall be binding upon you and your heirs, administrators, representatives, executors, successors, and assigns and its enforceability shall not be challenged.

You acknowledge that you have read this letter and that you understand all of its terms and have executed it voluntarily with full knowledge of its significance. Further, you acknowledge that you have had an adequate opportunity to review and consider the arrangements, including at your discretion, the right to discuss this Agreement with legal counsel of your choice. Also, you acknowledge that you understand you are hereby granting to the Corporation a full and final release as set forth above. In addition, you agree that your receipt of payments and benefits described in this Agreement are contingent upon you executing on or promptly following the Employment Termination Date, and returning to Deputy General Counsel and Corporate Secretary, a release in the Form of Exhibit B, which is attached and made a part of this Agreement.

15. This Agreement constitutes the entire understanding of the parties with respect to your employment, including the cessation of your employment, and there are no promises, understandings or representations other than those expressly set forth or preserved herein. This Agreement may be modified only with a written instrument duly executed by you and the Corporation.

16. This Agreement shall be governed by the laws of Ontario, Canada without regard to any provisions concerning conflict of laws. This Agreement may be delivered by facsimile and executed in counterparts, all of which, taken together, shall constitute one and the same original instrument.

17. The parties agree that should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

18. If you have not returned an executed copy of this Agreement, by facsimile or the original, to Deputy General Counsel and Corporate Secretary by the close of business on November 28, 2008, then the terms and conditions set forth in this Agreement shall be withdrawn as of that time and date.

Page 8

HIGHLY CONFIDENTIAL      NNC-NNL06001427 / 325

19.    References to the Deputy General Counsel and Corporate Secretary contained herein shall mean, as applicable, the Deputy General Counsel and Corporate Secretary prior to December 31, 2008 and the Chief Legal Officer after December 31, 2008.

Please acknowledge that the foregoing correctly and completely sets forth your understanding of the arrangements, and your acceptance hereof, by signing, dating and returning to Deputy General Counsel and Corporate Secretary, the attached second copy of this Agreement.

Yours truly,

/s/ Mike S. Zafirovski
Mike S. Zafirovski

For and on behalf of Nortel Networks Limited

/s/ Gordon A. Davies
Gordon A. Davies
Deputy General Counsel and Corporate Secretary

/s/ David Drinkwater
David Drinkwater

Date              November 20, 2008

Attach. Second copy of this Agreement

Page 9

HIGHLY CONFIDENTIAL         NNC-NNL06001427 / 326