~~Parent and the~~The Purchaser has all requisite power and authority to enter into, deliver and perform its obligations pursuant to this Agreement and any Transaction Documents to which it is or will become a party.

~~Each of the Parent and the~~The Purchaser is qualified to do business as contemplated by this Agreement and the other Transaction Documents to which it is or will become a party and to own or lease and operate its properties and assets, including, following the Closing, the Assets, except to the extent that the failure to be so qualified would not, individually or in the aggregate, materially hinder, delay or impair ~~the Parent's or~~ the Purchaser's ability to carry out its obligations under, and to consummate the transactions contemplated by, this Agreement.

SECTION 3.2.   ~~Section 1.7.~~ Authorization; Binding Effect; No Breach.

The execution, delivery and performance of each Transaction Document to which ~~the Parent or~~ the Purchaser is, or at the Closing Date will be, a party have been duly authorized by ~~the Parent or~~ the Purchaser~~, as applicable~~. Assuming due authorization, execution and delivery by the relevant Sellers, each Transaction Document to which ~~the Parent or~~ the Purchaser is, or at the Closing Date will be, a party constitutes, or upon execution thereof will constitute, a valid and binding obligation of ~~the Parent or~~ the Purchaser~~, as applicable~~, enforceable against the ~~Parent or the~~ Purchaser~~, as applicable,~~ in accordance with its respective terms.

The execution, delivery and performance by ~~the Parent or~~ Purchaser of the Transaction Documents to which ~~the Parent or~~ the Purchaser is, or on the Closing Date will be, a party do not and will not conflict with or result in a breach of the terms, conditions or provisions of, constitute a default under, result in a violation of, or require any Consent of any Person (other than the Mandatory Regulatory Approvals) or other action by or declaration or notice to any Government Entity pursuant to (i) the ~~articles, charter or by-laws~~certificate of formation or limited partnership agreement (or similar governing document) of the ~~Parent or~~ Purchaser; (ii) any Contract or other document to which the ~~Parent or~~ Purchaser, as applicable, is a party or to which any of the ~~Parent's or~~ Purchaser's assets, as applicable, is subject; or (iii) any Laws to which the ~~Parent or~~ Purchaser~~, as applicable,~~ or any of the ~~Parent's or the~~ Purchaser's assets ~~as applicable,~~ is subject; except, in the case of clauses (ii) and (iii) of this sentence, for such defaults, violations, actions and notifications that would not, individually or in the aggregate, materially hinder, delay or impair ~~the Parent's or~~ the Purchaser's ability to carry out its obligations under, and to consummate the transactions contemplated by, this Agreement.

SECTION 3.3.   Financing. (a) The Purchaser has delivered to the Sellers correct and complete copies of executed commitment letters of even date herewith (such commitment letters collectively, the "**Commitment Letters**") pursuant to which the other parties thereto (the "**Equityholders**") has each committed, subject solely to the terms and conditions expressly set forth therein, to make capital contributions and other payments to the Purchaser for purposes of funding the transactions contemplated herein and paying any other amount due hereunder or in respect hereof (the "**Commitments**"). The Commitment Letters in the forms so delivered are valid and in full force and effect and are legal, valid and binding agreement of the Equityholders, enforceable against the Equityholders in accordance with their respective terms. Except as set forth in the Commitment Letters there are no conditions precedent to the obligations of the Equityholders to fund the Commitments.

(b) ~~Section 1.8. Financing. The Parent has, as of the date hereof, and the~~<ins>Upon the funding of the Commitments in accordance with and subject to their terms and conditions,</ins> Purchaser will have, as of the Closing, (i) sufficient funds available for purposes of paying the Purchase Price <ins>(less the amount of the Good Faith Deposit)</ins> and paying any other amount due hereunder or in respect hereof, and (ii) the resources and capabilities (financial or otherwise) to perform its obligations hereunder, including the Assumed Liabilities. The Purchaser has not, as of the date hereof, and will not have, as of the Closing, incurred any obligation, commitment, restriction or liability of any kind that would materially impair or adversely affect such resources and capabilities. The Purchaser's obligations to consummate the transactions contemplated by this Agreement are not conditioned or contingent in any way upon the receipt of financing from any Person or the availability of funds to the Purchaser <ins>(including the Commitments)</ins>.

SECTION 3.4. ~~Section 1.9.~~ Adequate Assurance of Future Performance. To the extent required by any U.S. Bankruptcy Laws, the Purchaser will be able to provide, at Closing or on such earlier date as is designated by the U.S. Bankruptcy Court, adequate assurance of its future performance under each 365 Contract to the parties thereto (other than the U.S. Debtors) in satisfaction of section 365(f)(2)(B) of the U.S. Bankruptcy Code. The Purchaser acknowledges and agrees that, if it becomes necessary to provide a 365 Contract counterparty with additional assurances to satisfy the Purchaser's obligations under Section 2.1.7, the Purchaser shall perform all actions and bear all such costs and expenses as may be necessary or advisable in connection with its obligations under Section 2.1.7 without recourse to any Seller.

SECTION 3.5. ~~Section 1.10.~~ Purchaser's Acknowledgments; Exclusivity of Representations and Warranties.

~~Each of the Parent and the~~<ins>The</ins> Purchaser is experienced and sophisticated with respect to transactions of the type contemplated by this Agreement and the other Transaction Documents. In consultation with experienced counsel and advisors of its choice, ~~each of the Parent and~~ the Purchaser has conducted its own independent review and analysis of the Assets, the Assumed Liabilities, and the rights and obligations it is acquiring and assuming under this Agreement and the other Transaction Documents. ~~Each of the Parent and the~~<ins>The</ins> Purchaser acknowledges that it and its representatives have been permitted such access to the books and records, contracts and other properties related to the Assets as it required to complete its review, and that it and its representatives have been provided with an opportunity to meet with the officers and other employees of the Sellers, to discuss the conduct of business related to the Assets.

~~Each of the Parent and the~~<ins>The</ins> Purchaser acknowledges and agrees that:

except for the representations and warranties expressly set forth in Article IV and the statements set forth in Annex I, ~~neither the Parent nor~~ the Purchaser has <ins>not</ins> relied on, and ~~each~~ hereby specifically disclaims, any representation or warranty from the Sellers or any Affiliate of any such Person, or the Joint Administrators, the French Liquidator or any of their firms, partners, employees, agents, advisors or representatives or any employee, officer, director, accountant, financial, legal or other representative of the Sellers or by the Joint Administrators, the French Liquidator or any of their firms, partners, employees, agents, advisors or representatives in determining whether to enter into this Agreement;

except for the representations and warranties expressly set forth in Article IV and the statements set forth in Annex I, none of the Sellers, or any employee, officer, director, accountant, financial, legal or other representative of the Sellers, or any Affiliate of any such Person has made any representation or warranty, express or implied, as to the Assets (including any implied representation or warranty as to the condition, merchantability, suitability or fitness for a particular purpose of any of the Assets including under the International Convention on Contracts for the Sale of Goods (Geneva Convention) and any other applicable sale of goods Laws), the Assumed Liabilities, or any Affiliate of any such Person or as to the accuracy or completeness of any information regarding any of the foregoing that the Sellers, or any other Person furnished or made available to the ~~Parent or the~~ Purchaser or ~~their~~its representatives (including any projections, estimates, budgets, offering memoranda, management presentations or due diligence materials);

none of the Sellers, the Joint Administrators, the French Liquidator or any other Person shall have or be subject to any Liability to the ~~Parent or the~~ Purchaser or any other Person resulting from the distribution to the ~~Parent or the~~ Purchaser, ~~or the Parent~~ or the Purchaser's use, of the information referred to in Section 3.5(b)(ii); and

the enforceability of this Agreement against the Sellers is subject to entry of the U.S. ~~Bidding Procedures~~Sale Order and ~~the~~ Canadian ~~Sales Process~~Approval and Vesting Order.

Without limiting the generality of the foregoing, ~~EACH OF THE PARENT AND~~ THE PURCHASER ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY PROVIDED HEREIN (INCLUDING IN ANNEX I), THERE ARE NO EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR TITLE OF ASSETS, OR NONINFRINGEMENT OF THIRD PARTY INTELLECTUAL PROPERTY, OR REGARDING THE SCOPE, VALIDITY OR ENFORCEABILITY OF ANY TRANSFERRED PATENTS, JOINTLY OWNED PATENTS, SPECIFIED UK PATENTS, OR UNDISCLOSED PATENT INTERESTS.

SECTION 3.6.    ~~Section 1.11.~~ Brokers. Except for fees and commissions that will be paid by ~~the Parent or~~ the Purchaser, no broker, finder or investment banker is entitled to any brokerage, finder's or similar fee or commission in connection with the transactions contemplated by this Agreement and the other Transaction Documents based upon arrangements made by or on behalf of ~~the Parent or~~ the Purchaser or any of their Affiliates.

SECTION 3.7.    ~~Section 1.12.~~ Independence. In respect of NNSA, ~~each of the Parent and~~ the Purchaser acknowledges and agrees that: it wholly satisfies, without limitation, the statutory conditions set out under Section L.642-3 of the FCC in that (i) ~~none of the Parent,~~neither the Purchaser, nor any director thereof has been or is a director (administrateur), a managing director (directeur général or directeur général délégué) or the President (Président) of, or has had or has, directly or indirectly, de facto Control over, NNSA and (ii) the Purchaser is not directly or indirectly Controlled by: (x) NNSA, or (y) any past or present director (administrateur), managing director (directeur général or directeur général délégué) or President (Président) of, or

any person having de facto Control over, NNSA, or (z) the father, mother, son, daughter, brother or sister (in each case, by blood or in-law by marriage) of any natural person in clause (y).

### ARTICLE IV

### REPRESENTATIONS AND WARRANTIES OF THE SELLERS

Except as expressly set forth in the applicable sections of the Sellers Disclosure Schedule, (i) each of the NA Sellers and Other Sellers jointly and severally represents and warrants to the Purchaser as set forth in Section 4.1 through Section 4.2(b) and Section 4.3; (ii) NNC and NNL jointly and severally represent and warrant to the Purchaser as set forth in Section 4.4 and Section 4.5; and (iii) the Joint Administrators, the EMEA Sellers and NNSA represent and warrant to the Purchaser as set forth in Sections 4.2(c), (d) and (e), respectively.

SECTION 4.1.    ~~Section 1.13.~~ Organization and Corporate Power.

Each NA Seller and Other Seller is duly organized and validly existing under the Laws of the jurisdiction in which it is organized. Subject to entry of the U.S. ~~Bidding Procedures Order and the U.S.~~ Sale Order in the case of the U.S. Debtors and the ~~Canadian Sales Process Order and~~ Canadian Approval and Vesting Order in the case of the Canadian Debtors and receipt of other Consents required from the U.S. Bankruptcy Court and the Canadian Court in connection with the transactions contemplated hereby and in the other Transaction Documents (collectively, the "**Bankruptcy Consents**"), each of the NA Sellers and Other Sellers has the requisite corporate power and authority to enter into, deliver and perform its obligations pursuant to this Agreement and each of the Transaction Documents to which it is or will become a party.

Each of the NA Sellers and the Other Sellers is qualified to do business and to own, lease or otherwise hold its properties and assets, including the Assets, and to conduct its business as presently conducted, as applicable in each jurisdiction in which its ownership of property or conduct of business relating to the Assets requires it to so qualify, except for jurisdictions where the failure to be so qualified does not have, and would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

SECTION 4.2.    ~~Section 1.14.~~ Authorization; Binding Effect; No Breach.

Subject to the receipt of the Bankruptcy Consents, the execution, delivery and performance by each NA Seller and Other Seller of this Agreement and each of the Transaction Documents to which such NA Seller or Other Seller is, or at the Closing will be, a party has been duly authorized by such NA Seller or Other Seller. Subject to receipt of the Bankruptcy Consents, and assuming due authorization, execution and delivery by the Purchaser, the Transaction Documents to which any NA Seller or Other Seller is or will be a party, will constitute a legal, valid and binding obligation of such NA Seller or Other Seller, enforceable against it in accordance with its terms.

Subject to receipt of the Bankruptcy Consents and the Mandatory Regulatory Approvals, the execution, delivery and performance by each NA Seller and Other Seller of this Agreement and each of the Transaction Documents to which such NA Seller or Other Seller is or

will be a party do not and will not conflict with or result in, with or without the giving of notice or lapse of time or both, a breach of the terms, conditions or provisions of, constitute a default under, give rise to any right of acceleration, payment, amendment, cancellation or termination under, result in a violation of, result in the creation or imposition of any Lien upon any of the Assets pursuant to, or (subject to the receipt of Consents in connection with the Assigned Contracts, Consents required in connection with the assignment of the Sellers' interest in any of the Specified UK Patents or Patent Related Documentation relating to any Specified UK Patent and any other Consents expressly provided for herein, in each case to the extent set forth in Section 4.2(b) of the Sellers Disclosure Schedule) require any Consent (other than the Mandatory Regulatory Approvals and the Bankruptcy Consents) or other action by or declaration or notice to any Government Entity or other Person pursuant to (i) the articles, charter or by-laws (or similar governing document) of the relevant NA Sellers and Other Sellers or any resolution adopted by the board of directors, shareholders, members or general partners (as applicable) of any of the Sellers and not rescinded or superseded prior to the date hereof; (ii) any order of any Government Entity applicable to any NA Seller or Other Seller or by which any of their respective properties or assets are bound; (iii) any Laws to which any of the NA Sellers or Other Sellers or any of their respective properties or assets are subject; or (iv) any Contract or other document to which any of the Sellers is a party or by which any of the Sellers or their respective properties or assets are bound. Except as may have been asserted in connection with the Bankruptcy Proceedings, there are no Actions or claims pending or, to the Knowledge of the Sellers, threatened against or affecting the Sellers in which it is sought to restrain or prohibit, or to obtain damages or other relief in connection with, the transactions contemplated hereby.

The Joint Administrators warrant to the Purchaser that: (i) they are duly ~~authorised~~authorized to act as insolvency practitioners in accordance with Part XIII of the Insolvency Act; and (ii) they were appointed by the English Court on the Petition Date as administrators of each EMEA Seller in accordance with the Insolvency Act and such appointment has not been terminated by the English Court or the Joint Administrators.

Each EMEA Seller (acting by the Joint Administrators) warrants to the Purchaser that, with respect to itself, this Agreement has been duly executed and delivered by a representative of the Joint Administrators as agent for and on behalf of such EMEA Seller, and constitutes legal, valid and binding obligations of such EMEA Seller enforceable against such EMEA Seller in accordance with its terms.

NNSA (acting by the French Liquidator) warrants to the Purchaser that, with respect to itself, subject to ~~entry~~the terms of the French Court Order, it has the requisite corporate power and authority to enter into, deliver and perform its obligations pursuant to this Agreement and each of the Transaction Documents to which it is or will become a party.

SECTION 4.3.    ~~Section 1.15.~~ Brokers. Except for fees and commissions that will be paid or otherwise settled or provided for by the Sellers, no broker, finder or investment banker is entitled to any brokerage, finder's or other similar fee or commission in connection with the transactions contemplated by this Agreement and the other Transaction Documents based upon arrangements made by or on behalf of the Sellers or any of their Affiliates.

SECTION 4.4. ~~Section 1.16.~~ Canadian Tax Matters.

~~Residency.~~ Each of NNC and NNL is not a non-resident of Canada for purposes of the *Income Tax Act* (Canada).

~~Taxable Canadian Property.~~ At the time of Closing, none of the Assets will be "taxable Canadian property" as that term is defined in the *Income Tax Act* (Canada) of any Seller (other than NNC or NNL).

~~Withholdings and Remittances.~~ Each of NNC, NNL and any Seller who is selling Assets used in a business carried on in Canada has remitted all material amounts that it withheld or collected, on account of amounts that it was required by applicable Law to have withheld or collected, including for all Canada Pension Plan contributions, provincial pension plan contributions, employment insurance premiums, employer health taxes and any other Taxes to the appropriate Canadian Tax Authority within the time required under applicable Law.

SECTION 4.5. ~~Section 1.17.~~ Export Controls. To the Knowledge of the Sellers, the export, re-export or sale of the Assets by each NA Seller and Other Seller to the Purchaser in the United States of America for use in the United States of America, in the manner contemplated by this Agreement and the Transaction Documents, are not controlled under any Canadian Laws regarding export controls (other than Laws relating to embargoed or sanctioned countries).

## ARTICLE V

## COVENANTS AND OTHER AGREEMENTS

SECTION 5.1. ~~Section 1.18.~~ U.S. Bankruptcy Actions. On the timetables and subject to the terms set forth below, the U.S. Debtors shall ~~(i) file with the U.S. Bankruptcy Court one or more motions and proposed orders as set forth below; (ii) notify, as required by the U.S. Bankruptcy Code and the U.S. Bankruptcy Rules, all parties entitled to notice of such motions and orders, as modified by orders in respect of notice which may be issued at any time and from time to time by the U.S. Bankruptcy Court, and such additional parties as the U.S. Debtors and the Purchaser have agreed shall be notified; and (iii) subject to the provisions of this Agreement, including the provisions of Section 8.1, and the U.S. Bidding Procedures Order, if entered,~~ use their reasonable best efforts to obtain U.S. Bankruptcy Court approval of the U.S. ~~Bidding Procedures Order, and the U.S.~~ Sale Order~~.~~:

(a) The Sellers will comply with all noticing and other provisions of the U.S. Bidding Procedures Order to obtain entry of the U.S. Sale Order.

(b) ~~(a) As promptly as possible, but in no event later than the date that is three (3) Business Days from the date hereof, the U.S. Debtors shall file with~~ The U.S. Debtors shall use reasonable best efforts to seek to obtain by July 15, 2011 the approval of the U.S. Bankruptcy Court ~~a motion (the "U.S. Bidding Procedures and Sale Motion") and two proposed orders~~ of an order (as entered, the "U.S. ~~Bidding Procedures Order" and the "U.S.~~ Sale Order") ~~seeking approval of a process for the sale of the Assets, as set forth below~~ approving the sale of the Assets

<u>to the Purchaser and the assumption by the Purchaser of the Assumed Liabilities, in each case as contemplated herein; provided that in any event the U.S. Debtors shall obtain the U.S. Sale Order no later than 45 days after the date of this Agreement.</u>

~~(b)    The U.S. Bidding Procedures and Sale Motion shall be in the form agreed by the Parties.~~

~~(c)    The U.S. Bidding Procedures Order shall be in the form of Exhibit F hereto with such changes as the Purchaser and the Sellers shall approve in their reasonable discretion; provided, however, that the Purchaser may withhold its consent to any modifications that affect the relief granted in or the findings of fact and conclusions of law expressed in paragraphs C through L, O, 1, 3 through 6, 13 through 17, 20, 21, 34 and 36 through 39 of the U.S. Bidding Procedures Order in its sole discretion.~~

<u>(c)</u>    ~~(d)~~ The U.S. Sale Order shall be in the form of <u>Exhibit G</u>~~F~~ hereto with only such changes as the Purchaser and the Sellers shall approve in their reasonable discretion; provided, however, that the Purchaser may withhold its consent to any modifications that affect the relief granted in or the findings of fact and conclusions of law expressed in paragraphs G through J, R through T, X, 7, 8, 10, 11, 21, 23, 25, 28 through 30 and 37, and the last sentence of paragraph O of the U.S. Sale Order in its sole discretion.

SECTION 5.2.    ~~Section 1.19.~~ Canadian Bankruptcy Actions. ~~(a) Canadian Sales Process Order. As promptly as possible, but in no event later than the date that is five (5) Business Days from the date hereof, the Canadian Debtors shall serve a motion record including a notice of motion and affidavit each in form and substance reasonably satisfactory to the Purchaser, including a draft Canadian Sales Process Order (as defined below) on the Canadian Debtors' service list as supplemented with such additional parties as the Purchaser may reasonably request (the "Service List") (the "**Canadian Sales Process Order Motion**") and shall file such motion record with the Canadian Court seeking an order (as granted, the "**Canadian Sales Process Order**") of the Canadian Court, approving of the execution, delivery and performance of this Agreement, including payment of the Break-Up Fee and a process for the sale of the Assets of the Canadian Debtors. The Canadian Sales Process Order shall be in the form attached as Exhibit H hereto, with only such changes as the Purchaser and the Sellers shall approve in their reasonable discretion (provided, however, that the Purchaser may withhold its consent to any modifications that affect the relief granted in or the findings of fact and conclusions of law expressed in paragraphs 1, 3 through 7 and 8(a) through 8(e) of the Canadian Sales Process Order in its sole discretion).~~

<u>(a)</u>    ~~(b)~~ Canadian Approval and Vesting Order. As promptly as practicable, but in no event later than the third Business Day following the completion of the Auction, and subject to their rights and obligations set forth in the Canadian Sales Process Order, the Canadian Debtors shall serve on the ~~Service List~~<u>Canadian Debtors' service list as supplemented with such additional parties as the Purchaser may reasonably request,</u> one or more motion records including one or more notices of motions and affidavits all in form and substance reasonably satisfactory to the Purchaser, including a draft Canadian Approval and Vesting Order (the "**Canadian Approval and Vesting Order Motion**") and shall file such motion records with the Canadian Court ~~seeking~~<u>and use reasonable best efforts to seek</u> an order (as granted, the "**Canadian Approval and**

**Vesting Order")** of the Canadian Court<s>,</s> <u>to be entered no later than July 15, 2011,</u> seeking approval of the sale of the Assets<s>.</s><u>; provided that in any event the Canandian Approval and Vesting Order shall be entered no later than 45 days from the date of this Agreement.</u> The Canadian Approval and Vesting Order shall be in the form attached as Exhibit <s>J</s><u>G</u> hereto, with only such changes as the Purchaser and the Sellers shall approve in their reasonable discretion; provided, however, that the Purchaser may withhold its consent to any modifications that affect the relief granted in or the findings of fact and conclusions of law expressed in paragraphs 1, 3, 6, 8, 10, 11, 13 through 15, 17 through <s>19, 21 and</s><u>21,</u> 22 <u>through 24</u> of the Canadian Approval and Vesting Order in its sole discretion<u>; provided, further, however, that the Purchaser may not withhold its consent to a modification to paragraphs 1 and 3 of the Canadian Approval and Vesting Order if (i) the sole effect of such modification would be to eliminate any differences between the Canadian Approval and Vesting Order and the form Canadian Approval and Vesting Order attached to the Canadian Approval and Vesting Order Motion and (ii) the Canadian Debtors used their best efforts to obtain Canadian Court approval of paragraphs 1 and 3 of the Canadian Approval and Vesting Order</u>.

(<u>b</u>)    <s>(c)</s> Subject to the provisions of this Agreement <s>and the Canadian Sales Process Order, if entered</s>, the Canadian Debtors shall use their reasonable best efforts to obtain Canadian Court approval of the Canadian <s>Sales Process Order, and the Canadian</s> Approval and Vesting Order.

<s>Section 1.20.    French Bankruptcy Actions. As promptly as practicable but in no event later than thirty (30) days after the date hereof, NNSA (acting by the French Liquidator) shall apply to the French Court to seek the French Court Order substantially in the form of Exhibit J hereto on terms authorizing the French Liquidator, acting on behalf of NNSA, to execute this Agreement.</s>

SECTION 5.3.    [Reserved]

SECTION 5.4.    <s>Section 1.21.</s> Consultation; Notification.

The Purchaser and the U.S. Debtors shall cooperate <s>with filing and prosecuting the U.S. Bidding Procedures and Sale Motion and obtaining the U.S. Bidding Procedures Order and</s><u>in obtaining entry of</u> the U.S. Sale Order, and the U.S. Debtors shall deliver to the Purchaser prior to filing, and as early in advance as is practicable to permit adequate and reasonable time for the Purchaser and its counsel to review and comment, copies of all proposed pleadings, motions, notices, statements, schedules, applications, reports and other material papers to be filed by the U.S. Debtors in connection <s>with such motions and relief requested therein</s><u>therewith</u> and any objections thereto.

The Purchaser and the Canadian Debtors shall cooperate with filing and prosecuting the Canadian <s>Sales Process Order Motion, and the Canadian</s> Approval and Vesting Order Motion, and <u>in</u> obtaining entry of <s>the Canadian Sales Process Order and</s> the Canadian Approval and Vesting Order, and the Canadian Debtors shall deliver to the Purchaser prior to filing, and as early in advance as is practicable to permit adequate and reasonable time for the Purchaser and its counsel to review and comment, copies of all proposed pleadings, motions, notices, statements, schedules, applications, reports and other material papers to be filed by the

NNC-NNL11755866 / 198

Canadian Debtors in connection with such motions and relief requested therein and any objections thereto.

If the U.S. Sale Order or any other order of the U.S. Bankruptcy Court granting the relief relating to this Agreement set forth in Section 5.1 shall be appealed by any Person (or a petition for certiorari or motion for rehearing, re-argument or stay shall be filed with respect thereto), the U.S. Debtors agree to, and to cause their Affiliates to, use their reasonable best efforts to, defend against such appeal, petition or motion, and the Purchaser agrees to cooperate in such efforts. Each of the Parties hereby agrees to use its reasonable best efforts to obtain an expedited resolution of such appeal, petition or motion; provided, however, that, subject to the conditions set forth herein, nothing contained in this Section shall preclude the Parties from consummating the transactions contemplated hereby if the U.S. Sale Order shall have been entered but shall not have become a Final Order, or require the Parties to do so unless they mutually so agree.

If the Canadian Approval and Vesting Order or any other order of the Canadian Court granting the relief relating to this Agreement set forth in Section 5.2 shall be appealed by any Person (or an application for certiorari or motion for leave to appeal, rehearing, re-argument, variation or vacating or stay shall be filed with respect thereto), the Canadian Debtors agree to, and to cause their Affiliates to, take all reasonable steps, and use their reasonable best efforts, including incurring reasonable legal expenses, to defend against such appeal, application or motion, and the Purchaser agrees to cooperate in such efforts. Each of the Parties hereby agrees to use its reasonable best efforts to obtain an expedited resolution of such appeal, application or motion; provided, however, that, subject to the conditions set forth herein, nothing in this Section shall preclude the Parties from consummating the transactions contemplated hereby if the Canadian Approval and Vesting Order shall have been entered but shall not have become a Final Order, or require the Parties to do so unless they mutually so agree.

If the French Court Order or any other order of the French Court relating to this Agreement shall be appealed or opposed by any Person (or a stay shall be filed with respect thereto), NNSA agrees to take all reasonable steps, and use its reasonable best efforts, including incurring reasonable expenses, to defend against such appeal, opposition or stay, and the Purchaser agrees to cooperate in such efforts. Each of the Parties hereby agrees to use its reasonable best efforts to obtain an expedited resolution of such appeal, opposition or stay; provided, however, that, subject to the conditions set forth herein, nothing in this Section shall preclude the Parties from consummating the transactions contemplated hereby if the French Court Order shall have been entered but shall not have become a Final Order, or require the Parties to do so unless they mutually so agree.

SECTION 5.5.  ~~Section 1.22.~~ Pre-Closing Cooperation.

Prior to the Closing, subject to the terms and conditions of this Agreement (including Section 5.6, which, for the avoidance of doubt, shall exclusively govern the Parties' obligations with respect to seeking the Mandatory Regulatory Approvals and any other Consents of applicable Government Entities other than those set forth in Section 5.6(g)), each of the Primary Parties shall (and each Primary Party shall cause its Subsidiaries and Affiliates to) use its reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, and to cooperate with the other Primary Party and its Subsidiaries and Affiliates in order to do or cause

NNC-NNL11755866 / 199

to be done, all things necessary, proper or advisable under applicable Law to consummate the transactions contemplated by this Agreement as soon as practicable and cause the fulfillment at the earliest practicable date of the conditions to the Parties' obligations to consummate the transactions contemplated by this Agreement as set forth in Section 7.1, including: (i) without limiting Section 5.8(a), using reasonable best efforts to prepare and make filings with the appropriate Government Entities as necessary to record one of the Sellers as the owner of the Patents listed on Section 5.5(a) of the Sellers Disclosure Schedule and any other Assets where further action and cooperation is required by Sellers to vest title with the Purchaser at Closing; (ii) defending all lawsuits and other proceedings by or before any Government Entity challenging this Agreement or the consummation of the Closing; (iii) causing to be lifted or rescinded any injunction, decree, ruling, order or other action of any Government Entity adversely affecting the ability of the Parties to consummate the Closing; and (iv) more generally, to facilitate an orderly transition at Closing, working with outside counsel on the prosecution of pending patent applications and maintenance of existing patents within the Transferred Patents and Purchased Specified UK Patents.

Each Primary Party shall promptly notify the other Primary Party of the occurrence, to such party's Knowledge, of any event or condition, or the existence, to such party's Knowledge, of any fact, that would reasonably be expected to result in any of the conditions to the other Primary Party's obligation to effect the Closing set forth in Article VII not being satisfied.

From and after the date hereof ~~until the Closing Date, the Sellers shall provide the Purchaser with a copy of any nonpublic information with respect to the Assets or Assumed Liabilities to be provided to any Third Party substantially contemporaneously with furnishing such information to such Third Party, provided, however, that, except as required by the U.S. Bidding Procedures Order and the Canadian Sales Process Order, the Sellers shall not be required to provide the Purchaser with any such nonpublic information that is furnished in the Data Room or any draft agreement or ancillary documentation pertaining to the terms of a potential Alternative Transaction.~~

~~(d)   From and after the later of the date the U.S. Bidding Procedures Order is entered in the U.S. Bankruptcy Court and the date the Canadian Sales Process Order is granted by the Canadian Court~~, (i) no Seller may affirmatively take any material steps in furtherance of an Asset Retention Transaction ~~(except to the extent that such Asset Retention Transaction also constitutes an Alternative Transaction)~~ and (ii) until the date following the Closing Date, no Seller may seek or support (A) the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the U.S. Bankruptcy Code, (B) the appointment of a trustee, receiver, receiver and manager or liquidator in respect of any Canadian Debtor, (C) the dismissal of any CCAA Cases or (D) the conversion of any CCAA Cases to bankruptcy cases under the Bankruptcy and Insolvency Act or applicable Canadian Bankruptcy Laws ~~(except to the extent that such conversion to a chapter 7 case (in respect of the Chapter 11 Cases) or a bankruptcy, receivership or liquidation case (in respect of the CCAA Cases), appointment or dismissal is sponsored by a Third Party in connection with a bid at the Auction, which bid is made in accordance with the process described in the U.S. Bidding Procedures Order)~~.

(a)   ~~(e)~~ From and after the date hereof, NNL shall use commercially reasonable efforts to (and Purchaser shall cooperate with NNL's efforts to) confirm that the execution of the

NNC-NNL11755866 / 200

Assumption Agreement by the parties thereto will satisfy the requirements of paragraph 7 of the CDMA Vesting Order; provided that this Section 5.5(ed) shall not require the Purchaser, NNL or their Affiliates to make any payment, deliver anything of value or incur any expense, nor require the Purchaser or its Affiliates to assume any obligations that are not obligations of NNL under the IP Licenses (as such term is defined in the CDMA Vesting Order) with respect to the Transferred Patents, Purchased Specified UK Patents or other Patents or invention disclosures acquired by the Purchaser pursuant to this Agreement. Upon or prior to the Closing, the Purchaser shall execute and deliver the Assumption Agreement substantially in the form attached as Exhibit L̶J hereto.

SECTION 5.6.    S̶e̶c̶t̶i̶o̶n̶ ̶1̶.̶2̶3̶.̶ Antitrust and Other Regulatory Approvals.

Each of the Parties agrees to prepare and file as promptly as practicable all necessary documents, registrations, statements, petitions, filings and applications for the Mandatory Regulatory Approvals, and any other Consent of any other Government Entities either required or that the Primary Parties mutually and reasonably agree are advisable to satisfy the condition set forth in Section 7.1(a) as expeditiously as possible, and in any event by no later than twenty (20) Business Days from the date of this Agreement (or on such other subsequent day as the notifying Parties mutually agree (or the earlier date required by applicable Laws)).

If a Party or any of its Affiliates receives a request for information or documentary material from any Government Entity with respect to this Agreement or any of the transactions contemplated by this Agreement, then such Party shall make, or cause to be made, as soon as reasonably practicable and after consultation with all other Primary Parties and the Joint Administrators, an appropriate response in compliance with such request.

The Parties shall keep each other and the Joint Administrators apprised of the status of matters relating to the completion of the transactions contemplated by this Agreement and work cooperatively in connection with obtaining the Mandatory Regulatory Approvals and Consents (and including in respect of responding to any information request from any Government Entity with respect to this Agreement or any of the transactions contemplated hereby pursuant to the applicable Antitrust Laws or Laws regulating foreign investment) of each applicable Government Entity, including:

> cooperating with each other and the Joint Administrators in connection with the filings required under the applicable Antitrust Laws or any Laws regulating foreign investment of any jurisdiction in connection with the transactions contemplated by this Agreement and each Mandatory Regulatory Approval and other Consents, and consulting with each other and the Joint Administrators in relation to each step of the procedure before the relevant Government Entities and as to the contents of all communications with such Government Entities. In particular, to the extent permitted by Law or Government Entity, no Party will make any submission, filing, notification, or communication in relation to the transactions contemplated hereunder without first providing the other Parties and the Joint Administrators with a copy of such notification in draft form (subject to reasonable redactions or limiting such draft, or parts thereof, on an outside-counsel-only basis where appropriate) and giving such other Party or Parties and the Joint Administrators a reasonable opportunity to discuss its content

NNC-NNL11755866 / 201

before it is filed with the relevant Government Entities, and such first Party shall consider in good faith all reasonable comments timely made by the other Parties and the Joint Administrators in this respect;

furnishing to the other Parties and the Joint Administrators (on an outside-counsel-only basis where appropriate) all information within its possession that is reasonably required for obtaining the Mandatory Regulatory Approvals and other Consents, or reasonably required for any application or other filing to be made by the other Party pursuant to the applicable Antitrust Laws or any Laws regulating foreign investment of any jurisdiction in connection with the transactions contemplated by this Agreement; provided, however, that (a) no such information shall be required to be provided by a Party if it determines, acting reasonably, that the provision of such information would jeopardize any attorney-client or other legal privilege or that such information is material and competitively sensitive (it being understood, however, that the Parties shall cooperate in any reasonable requests that would enable an otherwise required production to occur without so jeopardizing privilege or jeopardizing the confidentiality of any such material and competitively sensitive information) and (b) in any such case the Parties shall cooperate with a view to establishing a mutually satisfactory procedure for providing such information, and the relevant Party required to provide such information shall provide it directly to such Government Entity requiring or requesting such information;

promptly notifying each other and the Joint Administrators of any substantive communications from or with any Government Entity with respect to the transactions contemplated by this Agreement (including promptly providing copies of all written communications on an outside-counsel-only basis where appropriate) and ensuring, to the extent permitted by Law and by the relevant Government Entity, that each of the Parties and the Joint Administrators is entitled to attend any meetings (including telephonic and video meetings) with, or other appearances before, any Government Entity with respect to the transactions contemplated by this Agreement; and

consulting and cooperating with one another and the Joint Administrators in connection with all analyses, appearances, presentations, memoranda, briefs, arguments, opinions and proposals made or submitted by or on behalf of any party hereto in connection with proceedings under or relating to the Mandatory Regulatory Approvals, and other Consents, the applicable Antitrust Laws or any Laws regulating foreign investment of any jurisdiction, in connection with the transactions contemplated by this Agreement;

provided, however, that notwithstanding anything to the contrary in this Agreement (except Section 5.6(a)), the Purchaser will have the right to determine and direct the strategy and process (including all timing and substantive matters) by which the Parties will seek the Mandatory Regulatory Approvals and other Consents of applicable Government Entities, and under applicable Antitrust Laws or any Laws regulating foreign investment of any jurisdiction (including all elements of any Actions and communications with Government Entities); provided that the

NNC-NNL11755866 / 202

Purchaser will exercise such right in accordance with clauses (i) through (iv) of this Section 5.6(c). Subject to the Purchaser's obligations under the preceding sentence, the Sellers shall, and shall use their best efforts to cause their respective Affiliates to comply, without unreasonable delay, with all such determinations and directions by the Purchaser and supply the Purchaser with all information reasonably requested by the Purchaser in connection with making such determinations.

Subject to the limitations in Section 5.6(e), each of the Primary Parties shall use its reasonable best efforts to satisfy (or cause the satisfaction of) the conditions precedent to each respective Primary Party's obligations hereunder as set forth in Sections 7.1(a) and (b) to the extent the same is within its control and to take, or cause to be taken, all other action and to do, or cause to be done, all other things necessary, proper or advisable under all applicable Laws to consummate the transactions contemplated by this Agreement, including using its reasonable best efforts to make all required filings and obtain all Mandatory Regulatory Approvals, and any other Consent of a Government Entity required to be obtained in order for the Parties to consummate the transactions contemplated by this Agreement.

The obligations of the Purchaser pursuant to Section 5.6(d) shall include committing to any and all undertakings, divestitures, licenses or hold separate or similar arrangements with respect to the Assets and to any and all arrangements for the conduct of any business and/or terminating any and all existing relationships and contractual rights and obligations with respect to the Assets as a condition to obtaining any and all Consents from any Government Entity necessary to consummate the transactions contemplated by this Agreement, including taking any and all actions necessary in order to ensure the receipt of the necessary Consents, the obtaining of all Mandatory Regulatory Approvals, or the termination, waiver or expiration of the necessary waiting periods under any other applicable Antitrust Laws or investment or similar Law without any reduction of the consideration paid to the Sellers; <u>provided, however</u>, that notwithstanding anything to the contrary in this Section 5.6 or otherwise in this Agreement, the Purchaser shall be required to offer, negotiate or commit to any of the foregoing actions only to the extent required to cause the satisfaction of the conditions set forth in Section 7.1(a) and Section 7.1(b) that relate to Consents from any Government Entity necessary to consummate the transactions contemplated by this Agreement so that the Closing may occur by the last Business Day before the Outside Date~~; and provided, further, that nothing in Section 5.6(d) above or otherwise in this Agreement shall require the Purchaser or any of its Affiliates, and nothing in Section 5.6(d) above or otherwise in this Agreement shall permit any Seller or any of its Affiliates, to offer or commit to take, or to take, any actions, undertakings, divestitures, licenses, or hold separate or similar arrangements or other arrangements for the conduct of any business and/or terminating any relationships or contractual rights or obligations that, individually or in the aggregate, would be reasonably expected to be material in relation to the value of the Assets, taken as a whole~~. The Parties further agree that the obligation of the Purchaser under this Section 5.6 is limited solely to the Assets, and does not apply to or require any action with respect to any of the assets or businesses or contractual relationships of the Purchaser or any of its Affiliates.

Notwithstanding anything in this Agreement to the contrary, if at any time (i) all of the conditions to the Closing set forth in Article VII other than the condition in Section 7.1(b) are satisfied (or were capable of being satisfied should Closing occur on the next Business Day); and (ii) the condition in Section 7.1(b) is not satisfied as a result of the existence of any Law, or any

NNC-NNL11755866 / 203

order, injunction, decree or judgment of any court or other Government Entity that purports to prohibit, prevent or make illegal the consummation of any of the transactions contemplated hereby in one or more jurisdictions other than Canada, France, Germany, the United Kingdom and the United States (each such other jurisdiction, a "**Deferred Jurisdiction**"), then if either the Sellers, on one hand, or the Purchaser, on the other, so request in their sole discretion, the Parties shall negotiate in good faith an amendment of this Agreement to provide for (x) the immediate consummation of the transactions contemplated by this Agreement in all applicable jurisdictions other than any Deferred Jurisdiction, and (y) a delay in the consummation of the transactions contemplated by this Agreement in each Deferred Jurisdiction until the condition in Section 7.1(b) is satisfied as to such Deferred Jurisdiction, provided that if the Purchaser reasonably determines in good faith that it would be impossible for the Purchaser to comply with this Section 5.6(f) without meaningful adverse consequences to the Purchaser or the Purchaser's Affiliates, the Purchaser shall not be required to undertake the foregoing actions, and provided, further, that if the Purchaser requests the negotiation of an amendment of this Agreement pursuant to this Section 5.6(f), the Sellers shall not be required to agree to any reduction in, or any delay in payment of, the Purchase Price.

The covenants under this Section 5.6 shall not apply to any action, effort, filing, Consent, proceedings, or other activity or matter under any Bankruptcy Law relating to the Bankruptcy Courts, the Bankruptcy Proceedings and/or the Bankruptcy Consents.

SECTION 5.7.    ~~Section 1.24.~~ Public Announcements. Subject to the Parties' disclosure obligations imposed by Law (including any obligations under any Bankruptcy Laws), the Parties shall (a) cooperate with each other in the development and distribution of all news releases, other public information disclosures and announcements, including announcements and notices to customers, suppliers and employees, with respect to this Agreement, or any of the transactions contemplated by this Agreement and the other Transaction Documents and (b) not issue any such announcement or statement prior to consultation with, and the approval of, the Primary Parties (such approval not to be unreasonably withheld or delayed); provided that approval shall not be required (i) where a Party determines, based on advice of counsel and after consultation with the Primary Parties, that such disclosure is required by Law or the rules of any stock exchange on which the securities of such Party or any of its Affiliates are listed and (ii) after the public announcement of this Agreement and the transactions contemplated hereunder, with respect to public disclosures and announcements by the Purchaser and its Affiliates relating to the Assets after Closing, provided that to the extent reasonably practicable the Purchaser shall not make any public disclosure or announcement contemplated by this clause (ii) without first consulting the other Primary Party.

SECTION 5.8.    ~~Section 1.25.~~ Further Actions.

Without limiting the foregoing, on and after the Closing Date, each Party shall cooperate with the other Parties, without any further consideration, to cause to be executed and delivered, all instruments, including instruments of conveyance, novations, assignment and transfer, and to make all filings with, and to obtain all consents, under any permit, license, agreement, indenture or other instrument or regulation, and to take all such other actions as any of the Parties may reasonably request any other Parties to take from time to time, consistent with the terms of this Agreement, in order to effectuate the provisions and purposes of this Agreement and

the other Transaction Documents; provided that, (i) notwithstanding anything to the contrary in this Agreement, recordation or registration of the Short-Form Assignments or any other document evidencing the assignment of the Transferred Patents and Specified UK Patents from the Sellers to the Purchaser shall be the Purchaser's responsibility and at its sole cost and expense, and (ii) subject to Section 5.5 and Section 5.6, neither the Purchaser nor the Sellers shall be obligated to make any payment or deliver anything of value (unless, in the case of the Sellers, the Purchaser offers to promptly reimburse or indemnify the Sellers for such payment or delivery) to any Third Party (other than filing and application fees to Government Entities and payment of Cure Costs for which such Party is responsible pursuant to Section 2.1.7) in order to obtain any Consent to the transfer of Assets or the assumption of Assumed Liabilities.

Subject to Section 5.11, and, with respect to Patent Related Documentation relating to Purchased Specified UK Patents, to the extent permitted under applicable Law, as soon as practicable following the transfer of the Transferred Patents and Purchased Specified UK Patents pursuant to the terms of this Agreement, the Sellers shall, in each case except for Patent Related Documentation that has been delivered pursuant to Section 2.3.2(db)(v): (i) deliver to the Purchaser or counsel designated by the Purchaser at locations to be designated by Purchaser copies (which, except for the items listed in clauses (i) and (vi) of the definition of "Patent Related Documentation," may be electronic copies) of all the tangible embodiments of the Patent Related Documentation existing as of the Closing Date and in the Sellers' possession that is related to such Transferred Patents or Purchased Specified UK Patents, and (ii) instruct all of the Sellers' outside counsel (A) that the ownership of such Transferred Patents, Purchased Specified UK Patents and Patent Related Documentation has been assigned to the Purchaser as of the Closing Date, (B) to release to the Purchaser or counsel designated by the Purchaser at locations to be designated by Purchaser copies (which, except for the items listed in clauses (i) and (vi) of the definition of "Patent Related Documentation," may be electronic copies) of all the tangible embodiments of the Patent Related Documentation existing as of the Closing Date and in such counsel's possession that is related to the Transferred Patents or Purchased Specified UK Patents, and (C) that the Purchaser or counsel designated by the Purchaser may contact such Sellers' counsel for coordination relative to further prosecution of such Transferred Patents or Purchased Specified UK Patents at the Purchaser's expense. The Sellers shall also include in such correspondence any other information that the Purchaser reasonably instructs the Sellers to include and is communicated to the Sellers prior to the Closing Date.

The Purchaser shall pay or reimburse the Sellers for all Agreed Expenses promptly after receipt of notice and demand therefor.

Sellers shall use their reasonable best efforts to obtain, as promptly as practicable and in any event prior to the commencement of the Auction, final, executed and effective copies of the Outbound License Agreements, Cross License Agreements and Joint Ownership Agreements listed in Section 2.3.2(db) of the Sellers Disclosure Schedule. Such reasonable best efforts shall include requesting production of such copies from the counterparties thereto and, to the extent reasonably practicable and permitted by applicable Law, seeking a court order to compel such production by such counterparties.

SECTION 5.9.    Section 1.26. Conduct of Business. The Sellers covenant that, from and after the date hereof until the Closing Date, subject to any limitation imposed as a

result of being subject to the Bankruptcy Proceedings, and except as (i) the Purchaser may approve otherwise in writing, (ii) set forth in Section 5.9 of the Sellers Disclosure Schedule, (iii) required by Law (including any Bankruptcy Law of general applicability) but subject to Section 5.6(e), (iv) otherwise expressly contemplated or permitted by this Agreement, or (v) relates solely to Excluded Assets or Excluded Liabilities, the Sellers shall:

notify the Purchaser as promptly as practicable after becoming aware of any event, development or condition that has had or would reasonably be expected to have a Material Adverse Effect on the Assets;

use commercially reasonable efforts (but in any case no less efforts than the Sellers use with respect to their own assets of a similar nature) to maintain the confidentiality (to the extent not publicly available), integrity and use of the Assets, and the availability of appropriate "back-up" copies thereof;

~~except as provided in the U.S. Bidding Procedures Order or the Canadian Sales Process Order,~~ not take any of the following actions:

directly or indirectly (including by operation of law or through any merger, consolidation, reorganization, issuance of securities or rights, license, lease, encumbrance or otherwise) sell, assign, convey, transfer, license, lease or otherwise dispose of any Assets (except to the extent that such activities would be permitted after the Closing Date pursuant to the terms of the Closing Date License Agreement);

incur any Lien on any Assets, other than (A) Liens that will be discharged at or prior to Closing and (B) Permitted Encumbrances;

grant any license or sublicense of any rights under or with respect to any Assets (except to the extent that such activities would be permitted after the Closing Date pursuant to the terms of the Closing Date License Agreement);

waive, release, assign, settle or compromise any Action relating to the Assets to the extent that such waiver, release, assignment, settlement or compromise imposes any obligation, whether contingent or realized, upon the Purchaser or any of its Affiliates or the Assets or that materially affects any Seller's title to or the value of any Transferred Patent, Jointly Owned Patent or Specified UK Patent;

enter into any Contract granting an indemnity that would impose any obligation upon the Purchaser or any of its Affiliates or the Assets;

modify, amend or change, in each case, in any material respect, or terminate (other than with respect to any Cross-License Agreements or Outbound License Agreements), or expressly waive compliance with the terms of or breaches under, or expressly waive, release, assign or terminate any rights or claims under, any term of any Transferred License, any non-disclosure agreement or any other agreement

NNC-NNL11755866 / 206

(including any Cross-License Agreement or Outbound License Agreement) relating to the sale or licensing of the Assets;

fail to make any filing, pay any fee, or take any other action consistent with past practice of the Sellers (including, after consultation with the Purchaser, responding to assertions of invalidity by Third Parties of which the Sellers become aware) as necessary to maintain the ownership, validity and enforceability of any Transferred Patent, Jointly Owned Patent or Specified UK Patent; provided that if any Seller fails to make any such filings, pay such fee, or take such other action consistent with past practice of the Sellers as described above, then such Seller will, upon becoming aware of any such failure, make all reasonable efforts to correct any adverse effects of such failure;

take or omit to take any action, or request the Bankruptcy Court to approve, authorize or require the Sellers to take or to omit to take any action that would materially affect any Seller's title to or the value of any Transferred Patent, Jointly Owned Patent or Specified UK Patent or would otherwise breach the Sellers' covenants under or any other provisions of this Agreement or the Transaction Documents, or consent to any such approval or authorization;

amend, or assign to any Third Party their rights under, any Cross-License Agreement or Outbound License Agreement to which any Transferred Patent, Jointly Owned Patent or Specified UK Patent is subject;

fail to exercise any termination right pursuant to the terms of any Cross-License Agreement or Outbound License Agreement provided that such exercise would not result in the Sellers' incurring any meaningful cost or Liability or losing any meaningful right under such Cross-License Agreement or Outbound License Agreement;

consent to the assignment by any counterparty to any Cross-License Agreement or Outbound License Agreement of such counterparty's rights or obligations under any such agreement to any Person; or

authorize, agree or commit to do any of the foregoing.

SECTION 5.10.   Section 1.27. Transaction Expenses. Except as otherwise provided in this Agreement or the other Transaction Documents, each of the Purchaser and the Sellers shall bear its own costs and expenses (including brokerage commissions, finders' fees or similar compensation, and legal fees and expenses) incurred in connection with this Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby.

SECTION 5.11.   Section 1.28. Confidentiality.

The Parties acknowledge that the Non-Disclosure Agreement and the Supplementary Non-Disclosure Agreement, as amended from time to time, remain in full force and effect in accordance with their terms, which are incorporated herein by reference, and the Parties agree to be bound thereby in the same manner and to the same extent as if the terms had

been set forth herein in full, except that the Parties, the Joint Administrators and the French Liquidator shall be at liberty to disclose the terms of this Agreement to (i) if required by order of any court of competent jurisdiction or under any applicable Law, any court or to any court-appointed liquidator of any of the Sellers to show appropriate figures in their administration records, accounts and returns, (ii) ~~Third Parties pursuant to the auction process set forth in the U.S. Bidding Procedures Order; (iii)~~ the applicable Bankruptcy Court for the purposes of obtaining the Bankruptcy Consents and to the applicable Government Entities and Third Parties for purposes of obtaining the Mandatory Regulatory Consents or any other Consents contemplated hereunder; and (~~iv~~iii) as otherwise required by the terms and conditions of this Agreement (in respect of Third Parties pursuant to clause (~~iii~~ii) other than Government Entities, without any appurtenant schedules except for Sections 1.1(d) (Jointly Owned Patents), 1.1(h) (Listed Patents), 1.1(k) (Listed Inventions); A.I(d) (Cross-License Agreements); A.I(e) (Outbound License Agreements), and A.I(m) (Joint Ownership Agreements) of the Sellers Disclosure Schedule, and only to the extent necessary to obtain the applicable Consent). Each Primary Party agrees not to request the other Primary Party to return or destroy Evaluation Material or Interested Party Material (as such terms are defined in the Non-Disclosure Agreement) pursuant to the Non-Disclosure Agreement unless this Agreement shall have terminated. The Parties further acknowledge that the Cross License Agreements and Outbound License Agreements provided or delivered pursuant to Sections 2.3.2(~~d~~b) shall be deemed to have been provided to the Purchaser as "Highly Confidential Information" under the Supplementary Non-Disclosure Agreement, and the Supplementary Non-Disclosure Agreement shall apply to such documents. The Sellers agree to treat the Sellers Disclosure Schedules as Purchaser Confidential Information from and after the Closing.

The Sellers shall not, and shall use best efforts to cause their Affiliates not to, disclose any Purchaser Confidential Information, including by means of appropriate redaction, other than (A) to any member of any committee of creditors which may include the holders of, or investment managers for holders of, equity or debt securities of the Sellers, including, without limitation, those of (i) the Official Committee of Unsecured Creditors in the Chapter 11 Cases, (ii) the Ad-Hoc Committee of Bondholders in such Chapter 11 Cases and in the filings made by the Sellers under the CCAA Cases, (iii) the unofficial Canadian creditors' committee, and (iv) any other creditors' committees or analogous bodies appointed in respect of the EMEA Sellers and their debtor affiliates, (B) to the United States Trustee for the District of Delaware in the Chapter 11 Cases, (C) to any monitor, administrator, trustee or similar appointed official in any foreign proceedings, including, without limitation, Alan Bloom, Stephen Harris, Chris Hill and Alan Hudson of Ernst & Young LLP and David Hughes of Ernst & Young Chartered Accountants, in their capacities as the Joint Administrators, Maître Cosme Rogeau as French Liquidator, the Monitor in the CCAA Cases and with respect to the Sellers and each of the foregoing persons described in clauses (A), (B) or (C), any employees, agents, advisors (including, without limitation, attorneys, accountants, investment banks and consultants) and other representatives thereof; provided that, in the case of each of the persons described in the foregoing clauses (A), (B) or (C), the Sellers shall have used reasonable efforts to inform such Persons of the confidential nature of such information, and that, to the extent such Persons are not already required by applicable Law or any confidentiality agreement with the Sellers to keep such information confidential, such Persons shall have agreed to be bound by confidentiality restrictions, or (D) as may otherwise be required, based on the advice of legal counsel, under applicable Law, including, without limitation, the Bankruptcy Laws; provided, however, that to the extent legally permissible and reasonably practicable, the Sellers shall provide the Purchaser with prompt notice of such event described in

(D) above so that, where possible, the Purchaser may seek a protective order or other appropriate remedy and the Sellers shall cooperate with the Interested Party in taking steps to resist or narrow the scope of such request or legal process (at the expense of the Purchaser). In the event that such protective order or other remedy is not obtained and any of the Sellers or their representatives are advised by legal counsel that it is compelled by Law to disclose any information described in the foregoing sentence, the Sellers or its representative, as the case may be, (i) may without liability hereunder furnish that portion (and only that portion) of such information which, based on the advice of legal counsel to the Sellers or their representatives, as the case may be, the Sellers or their representatives are legally required to disclose and (ii) will use commercially reasonable efforts to have confidential treatment accorded any such information so furnished. For the avoidance of doubt, none of the Sellers shall act in furtherance of or consent to the unsealing of any Transaction Documents that are filed under seal unless otherwise ordered by the applicable Bankruptcy Court or unless the Purchaser shall consent in its sole discretion.

Notwithstanding the foregoing Section 5.11(a), nothing contained in this Agreement or the Transaction Documents shall be deemed to prohibit the Parties, the Joint Administrators, or the French Liquidator from disclosing any information as may be required, based on the advice of legal counsel, under applicable Law, including Title 11 of the United States Code, the CCAA, the Insolvency Act of 1986 and any other applicable bankruptcy or insolvency Laws of any jurisdiction in which bankruptcy proceedings concerning Nortel are held from time to time, any legal process before, or any order of, the U.S. Bankruptcy Court or any other court of competent jurisdiction, the applicable rules or regulations of any securities exchange or similar self-regulatory authority or applicable securities Laws; provided, however, that to the extent legally permissible and reasonably practicable, if the relevant Party believes in its reasonable judgment that such legally required disclosure includes confidential information of any other Party hereunder, the disclosing Party shall provide the other Parties with prompt notice of such event so that, where possible, the affected Parties may seek a protective order or other appropriate remedy, and the relevant Parties shall cooperate in taking steps to resist or narrow the scope of such request or legal process (at the expense of the Party requesting such action). In the event that such protective order or other remedy is not obtained and any Party or its representatives are advised by legal counsel that it is compelled by Law, regulation or legal, regulatory or judicial process or the rules of a stock exchange or similar self-regulatory authority to disclose any information described in the foregoing sentence, such Party or its representatives, as the case may be, (i) may without liability hereunder furnish that portion (and only that portion) of such information which, based on the advice of legal counsel to such Party or its representative, as the case may be, such Party or its representative is legally required to disclose and (ii) will use commercially reasonable efforts to have confidential treatment accorded any such information so furnished.

SECTION 5.12. ~~Section 1.29.~~ Certain Payments or Instruments Received from Third Parties. To the extent that, after the Closing Date, (a) the Purchaser receives any payment or instrument that is for the account of a Seller according to the terms of any Transaction Document, the Purchaser shall promptly deliver such amount or instrument to the relevant Seller, and (b) any of the Sellers receives any payment or instrument that is for the account of the Purchaser according to the terms of any Transaction Document, such Seller shall promptly deliver such amount or instrument to the Purchaser. All amounts due and payable under this Section 5.12 shall be due and payable by the applicable Party in immediately available funds, by wire transfer to the account designated in writing by the relevant Party. Notwithstanding the foregoing, each Party

hereby undertakes to use reasonable best efforts to direct or forward all bills, invoices or like instruments to the appropriate Party.

SECTION 5.13.    ~~Section 1.30.~~ License to Transferred Patents, Jointly Owned Patents, Specified UK Patents and Licensed Residual Patents; Termination of Intercompany Arrangements.

Concurrently with the Closing, (i) the Purchaser shall grant the Sellers a license under the Transferred Patents, the Purchased Specified UK and other Patents acquired pursuant to this Agreement in connection with (x) the disposal of Inventory and (y) contracts that relate to wind-down operations of the Sellers and their Affiliates (such contracts being (A) existing contracts for Nortel Products or Nortel Services between one or more Sellers or Affiliates of the Sellers and a Third Party, that have been retained by the Sellers or their Affiliates in connection with the sale of a Divested Business (the "**Existing Contracts**"), (B) contracts entered into for performance of obligations under the Existing Contracts for customers or end users, or (C) contracts that are ancillary to Existing Contracts, including work orders, statements of work, purchase orders or contracts implementing phases of Existing Contracts, and are for provision of Nortel Products and/or Nortel Services to Persons who are customers or end users of Sellers or their Affiliates as of the date hereof (such contracts specified in this clause (y), the "**Retained Contracts**"); for avoidance of doubt, Retained Contracts do not include licenses granted pursuant to Intercompany Contracts), and (ii) the Sellers shall grant the Purchaser and its Affiliates a license under the Licensed Residual Patents, the Jointly Owned Patents, the Specified UK Patents that are not Purchased Specified UK Patents and Undisclosed Patent Interests, in each case on the terms described in Exhibit ~~O~~L hereto (the "**Closing Date License Agreement**").

Effective as of the Closing, the Sellers shall terminate all license rights granted under the Master R&D Agreement to the extent such license rights are under any of the Transferred Patents, Specified UK Patents or Undisclosed Patent Interests; in each case, subject to the purchase thereof by (or, pursuant to Section 2.1.8, the grant of an exclusive license (with the right to sublicense) thereto to) the Purchaser pursuant to this Agreement. Effective as of the Closing, the Sellers shall also terminate all license rights granted under any other Intercompany Contracts (x) exclusively among Sellers or (y) pursuant to which any Seller is a licensee, to the extent such license rights are under any of the Transferred Patents, Specified UK Patents or Undisclosed Patent Interests; in each case, subject to the purchase thereof by (or, pursuant to Section 2.1.8, the grant of an exclusive license (with the right to sublicense) thereto to) the Purchaser pursuant to this Agreement. Promptly following the Closing, each Seller shall request that any non-Seller Affiliate of such Seller that is a licensee under any other Intercompany Contract terminate its license rights pursuant to such Contract under any of the Transferred Patents, Specified UK Patents and Undisclosed Patent Interests (in each case, subject to the purchase thereof by, or, pursuant to Section 2.1.8, the grant of an exclusive license (with the right to sublicense) thereto to, the Purchaser pursuant to this Agreement) in exchange for a sublicense under the license rights granted to the Sellers and their Affiliates pursuant to the Closing Date License Agreement and shall keep the Purchaser reasonably informed of the progress of such requests and the responses of such Affiliates. From and after Closing there shall be no future manufacture, development, sale, supply or other distribution, or servicing of any products under the Transferred Patents or Specified UK Patents by, for or on behalf of Sellers other than to the extent such activities would be permitted after the Closing Date pursuant to the terms of the