communications required or permitted hereby; and (iii) consent to any amendment, waivers and modifications hereof.

Subject to entry of the French Court Order, theThe French Liquidator shall expressly have the power to, in the name and on behalf of NNSA as its agent: (i) take all decisions and carry out any actions required or desirable in connection with this Agreement; (ii) send and receive all notices and other communications required or permitted hereby; and (iii) consent to any amendment, waivers and modifications hereof.

SECTION 10.22.    Section 1.89.Limitations.

Under this Agreement, except for any documents, the forms of which have been agreed by the Joint Administrators and the French Liquidator as at the date of this Agreement, none of the EMEA Sellers, the Joint Administrators or the French Liquidator shall be required to enter into or execute any document unless such document contains exclusions of liability in favour of the Joint Administrators or the French Liquidator (as applicable), to an extent consistent with, or more favourable than, the exclusions of liability provided in favour of the Joint Administrators or the French Liquidator (as applicable) in this Agreement. For the avoidance of doubt, neither the Joint Administrators nor the French Liquidator shall be required to enter into or execute any document in their personal capacities or as administrators of the EMEA Sellers or *mandataire liquidateur* of NNSA respectively, to the extent that such document would cause the Joint Administrators and/or the French Liquidator to incur any personal liability.

The obligations or undertakings of the EMEA SellersJoint Administrators and the French Liquidator under this Agreement are subject to their duties to act at all relevant times in the best interests of the creditors of the EMEA Sellers (in respect of the Joint Administrators) and, in relation to the French Liquidator, NNSA. Accordingly, nothing in this Agreement shall operate to derogate from, restrict, or prevent the Joint Administrators and French Liquidator from complying with their statutory duties or legal obligations in relation to the exercise of their powers, duties or functions as, in the case of the Joint Administrators, administrators of the EMEA Sellers or, in the case of the French Liquidator, as *mandataire liquidateur* of NNSA, under the Insolvency Act, FCC or any other applicable legislation or statutory instrument as they see fit, (acting in good faith) and/or preclude the Joint Administrators from terminating the administration of the EMEA Sellers pursuant to the Administration Orders (and/or the French Liquidator from terminating his appointment as *mandataire liquidateur* of NNSA) should the Joint Administrators (and/or the French Liquidator, in relation to NNSA) be required to do so to discharge their statutory duties or legal obligations, provided that, notwithstanding the foregoing, any failure to comply with the terms of this Agreement by any EMEA Seller will be a breach of this Agreement by the relevant EMEA Seller, and the Purchaser shall not be restricted from claiming against the relevant EMEA Seller and receiving any remedy, or exercising any right, other than a claim against the Joint Administrators or the French Liquidator in their respective personal capacities, to which it is otherwise entitled pursuant to the terms of this Agreement, for any breach of this Agreement notwithstanding that the Joint Administrators or the French Liquidator (as applicable) are complying with such statutory duties or legal obligations in accordance with this Section 10.22.

SECTION 10.23.    Section 1.90.Limitations on Post-Closing Obligations.
Notwithstanding any other provisions in this Agreement, all outstanding obligations of each

NNC-NNL11755866 / 253

EMEA Seller under this Agreement (except under Section 5.11 (Confidentiality), and Article 6 (Tax Matters)) shall cease on and from the date six (6) months following the Closing Date without prejudice to (i) any accrued obligations of the EMEA Sellers, (ii) any accrued rights of the Purchaser, or (iii) any accrued Liabilities in relation to any obligations to have been carried out by the EMEA Sellers, in each of (i), (ii) or (iii), prior to or on such date.

~~Section 1.91.      Parent Guarantee.~~

~~(a)      The Parent, as primary obligor and not merely as surety, hereby absolutely, unconditionally and irrevocably guarantees the full and timely payment and performance of all Liabilities (including indemnities, fees and Liabilities in respect of equitable relief) of the Purchaser incurred under, arising out of or in connection with this Agreement and the other Transaction Documents, as from time to time amended, modified or supplemented in accordance with their terms (such Liabilities, the "**Guaranteed Obligations**"). This is a guarantee of payment and performance, and not of collectibility. The obligations of the Parent under this Section 10.24 are absolute and unconditional in respect of satisfying the Guaranteed Obligations and shall be enforceable against the Parent to the same extent as if the Parent were the primary obligor (and not merely a surety) under this Agreement and the other Transaction Documents.~~

~~(b)      The Parent hereby waives as to itself promptness, diligence, notice of the acceptance of this guarantee and of the Guaranteed Obligations, presentment, demand for payment, notice of non-performance, default, dishonor and protest, notice of any Guaranteed Obligations incurred, all defenses which may be available by virtue of any valuation, stay, moratorium Law or other similar Law now or hereafter in effect, and all suretyship defenses (it being understood that nothing in this sentence shall be deemed a waiver by the Parent of the obligation of any other Party to deliver notice pursuant to the terms of this Agreement). The Parent agrees that the Guaranteed Obligations shall not be discharged except by complete performance or payment of the amounts payable under this Agreement, as applicable, and that the obligations of the Parent hereunder shall not be released or discharged, in whole or in part, or otherwise affected by (i) the failure or delay on the part of the Sellers to assert any claim or demand or to enforce any right or remedy against the Purchaser; (ii) any change in the time, place or manner of payment of any of the Guaranteed Obligations or any waiver, compromise, consolidation or other amendment or modification of any of the terms or provisions of this Agreement made in accordance with the terms thereof or any agreement evidencing, securing or otherwise executed in connection with any of the Guaranteed Obligations; (iii) any change in the corporate existence, structure or ownership of the Parent, Purchaser or any other Person interested in the transactions contemplated by this Agreement; or (iv) the adequacy of any other means the Sellers may have of obtaining payment related to any of the Guaranteed Obligations. If at any time payment under the Agreement is rescinded or must be otherwise restored or returned by the Sellers upon the insolvency, bankruptcy or reorganization of the Purchaser or the Parent or otherwise, the Parent's obligations hereunder with respect to such payment shall be reinstated upon such restoration or return being made by the Sellers, all as though such payment had not been made. The Parent acknowledges that it will receive substantial direct and indirect benefits from the transactions contemplated by this Agreement.~~

~~(c)      The Parent hereby expressly acknowledges and agrees to be bound by the following provisions of this Agreement: Article III (Representations and Warranties of the Parent and the Purchaser), Section 10.2 (Remedies), Section 10.4 (Consent to Amendments; Waivers), the~~

NNC-NNL11755866 / 254

first paragraph of Section 10.5 (Successors and Assigns), Section 10.6(a) through (e) (Governing Law; Submission to Jurisdiction; Waiver of Jury Trial), Section 10.7 (Notices), Section 10.9 (Counterparts), Section 10.10 (No Presumption), Section 10.11 (Severability), Section 10.12 (No Set-off, Deduction or Counterclaim), Section 10.13 (Headings) and Section 10.14 (Entire Agreement), Section 10.18 (Obligations of Sellers and EMEA Sellers), Section 10.19 (Exclusion of Liability of Joint Administrators and Acknowledgement), Section 10.20 (Exclusion of Liability of French Liquidator and Acknowledgments), Section 10.21 (Joint Administrators and French Liquidator as Agents of EMEA Sellers), Section 10.22 (Limitations), Section 10.23 (Limitations on Post-Closing Obligations), and this Section 10.24 (Parent Guarantee).

**[Remainder of this page intentionally left blank.  Signature pages follow.]**

NNC-NNL11755866 / 255

IN WITNESS WHEREOF, the parties have duly executed this Asset Sale Agreement as of the date first written above.

**NORTEL NETWORKS CORPORATION**

By: _____
     Name:
     ~~Title:~~  George A. Riedel
     Title:   Chief Strategy Officer and President,
             Business Units

By: _____
     Name:
     ~~Title:~~  John M. Doolittle
     Title:   Senior Vice President, Corporate
             Services and Chief Financial Officer

**NORTEL NETWORKS LIMITED**

By: _____
     Name:
     ~~Title:~~  George A. Riedel
     Title:   Chief Strategy Officer and President,
             Business Units

By: _____
     Name:
     ~~Title:~~  John M. Doolittle
     Title:   Senior Vice President, Corporate
             Services and Chief Financial Officer

**NORTEL NETWORKS INC.**

By: _____
     Name:  John Ray
     Title: Principal Officer

NNC-NNL11755866 / 256

**NN APPLICATIONS MANAGEMENT SOLUTIONS INC.**

By: _____
    Name: <u>John Ray</u>
    Title: <u>Principal Officer</u>

**NORTEL ALTSYSTEMS, INC.**

By: _____
    Name:
    Title:

**CORETEK, INC.**

By: _____
    Name:
    Title:

**QTERA CORPORATION**

By: _____
    Name:
    Title:

**XROS, INC.**

By: _____
    Name:
    Title:

*Asset Sale Agreement Signature Page*

NNC-NNL11755866 / 257

**SIGNED** for and on behalf of **Nortel Net-**  )
**works UK Limited** (in administration) by  )  .......................................................
Christopher Hill as Joint Administrator (act- )  Christopher Hill
ing as agent and without personal liability)  )
in the presence of:  )

Witness signature

.......................................................  )
Name: Wilma Graham  )
Address: Ernst & Young LLP, 1 More Lon- )
don Place, SE1 2AF

  *Asset Sale Agreement Signature Page*

**SIGNED** for and on behalf of **Nortel Net-**          )          ................................................
**works (Ireland) Limited** (in administra-          )          David Hughes
tion) by David Hughes as Joint Administra-          )
tor (acting as agent and without personal          )
liability) in the presence of:

Witness signature

................................................          )
Name:          )
Address:          )

NNC-NNL11755866 / 259

**SIGNED** for and on behalf of **Nortel Net-** )
**works S.A.** (in administration and *liquida-* )     ..................................................
*tion judiciaire*) by Christopher Hill as Joint )     Christopher Hill
Administrator (acting as agent and without )
personal liability) in the presence of:


Witness signature

.................................................... )
Name: Wilma Graham )
Address: Ernst & Young LLP, 1 More Lon- )
don Place, SE1 2AF

NNC-NNL11755866 / 260

**SIGNED** for and on behalf of **Nortel Networks France S.A.S.** (in administration) by Kerry Trigg acting as authorised representative of Christopher Hill as Joint Administrator (acting as agent and without personal liability) in the presence of:    )
)
)
)
    ...................................................

          Kerry Trigg

Witness signature

......................................................    )
Name:                            )
Address:                       )

NNC-NNL11755866 / 261

**SIGNED** for and on behalf of **Nortel**
**GmbH** (in administration) by Christopher
Hill as Joint Administrator (acting as agent
and without personal liability) in the pres-
ence of:

)
)
)
)

.................................................

Christopher Hill

Witness signature

.................................................................
Name: Wilma Graham
Address: Ernst & Young LLP, 1 More Lon-
don Place, SE1 2AF

)
)
)

NEWYORK:2412508.1     *Asset Sale Agreement Signature Page*

**SIGNED** by Alan Bloom                          )
                                                  )     ..............................................
in his own capacity and on behalf of the Joint    )     Alan Bloom
Administrators without personal liability and
solely for the purpose of obtaining the benefit
of the provisions of this Agreement expressed
to be conferred on or given to the Joint Ad-
ministrators in the presence of:


Witness signature

..................................................      )
Name:                                                   )
Address:                                                )

*Asset Sale Agreement Signature Page*

NNC-NNL11755866 / 263

Signed by **MAÎTRE COSME ROGEAU**, acting in the capacity of *Mandataire Liquidateur* of **NORTEL NETWORKS S.A. (IN ADMINISTRATION AND LIQUIDATION JUDICIARE)**, without personal liability and solely for the purpose of obtaining the benefit of the provisions of this Agreement expressed to be conferred on or given to the French Liquidator:

By _____

Name: Maître Cosme Rogeau
    Title: *Mandataire Liquidateur*

In the presence of:
Witness signature

_____

Name:
Address:

| | |
|---|---|
| **SIGNED** for and on behalf of **NORTEL NETWORKS S.A. (IN ADMINISTRATION AND LIQUIDATION JUDICIARE)** by **MAÎTRE COSME ROGEAU** as *Mandataire Liquidateur* (acting as agent and without personal liability) in the presence of:<br>Witness signature | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  …………………………………<br>**MAÎTRE COSME ROGEAU** |

_____

Name:
Address:

*Asset Sale Agreement Signature Page*

RANGER INC.

*Asset Sale Agreement Signature Page*

NNC-NNL11755866 / 265

**ROCKSTAR BIDCO, LP**

By: Rockstar Bidco GP, LLC, *its General Partner*

By: _____

    Name:

    Title:

      ~~Solely for the purpose of Section 10.24~~
      ~~and the other Sections referenced in~~
      ~~Section 10.24(c):~~

      ~~GOOGLE INC.~~

    ~~By:~~ _____

    ~~Name:~~

    ~~Title:~~

NNC-NNL11755866 / 266

**ANNEX I – ~~STATEMENTS~~Statements**

Except (i) as set forth in the applicable sections of the Sellers Disclosure Schedule or (ii) to the extent solely relating to the Excluded Assets or the Excluded Liabilities:

(a)    To the Knowledge of the Sellers, an accurate, true and complete list of all Patents owned in whole or in part by the Sellers (including Jointly Owned Patents and Specified UK Patents) is set forth in Section A.I(a) of the Sellers Disclosure Schedule. Such list includes, for each patent and patent application, the patent number or application serial number and the jurisdiction, and for each U.S. patent and patent application that is not a Specified UK Patent, the name of the Person holding such patent or patent application and the filing date and issue date, if applicable. With respect to Jointly Owned Patents, the list identifies the co-owner(s) of each U.S. patent and, to the extent the Sellers have or are able to obtain copies of the applicable agreements, the agreements under which any Seller and the co-owner(s) share ownership of the patent.

(b)    None of the Listed Patents, the Listed Jointly Owned Patents, the Specified Listed UK Patents or the Listed Inventions, and, to the Knowledge of the Sellers, none of the other Transferred Patents, Jointly Owned Patents or Specified UK Patents, is subject to any Liens other than Permitted Encumbrances, and no Seller has granted any exclusive license to any Third Party with respect to any Listed Patent, Listed Jointly Owned Patent, Specified Listed UK Patent or Listed Invention or, to the Knowledge of the Sellers, any other Transferred Patent, Jointly Owned Patent or Specified UK Patent, which exclusive license is in force as of the date hereof.

(c)    With respect to the Specified Listed UK Patents, the Listed Jointly Owned Patents and the Listed Patents, and, to the Knowledge of the Sellers, with respect to the other Specified UK Patents, Jointly Owned Patents and Transferred Patents, the Sellers own all right, title, and interest in and to each such Patent (other than the rights of co-owners of Jointly Owned Patents in and to the Jointly Owned Patents); and subject to the Cross-License Agreements, the Outbound License Agreements and the Commercial Licenses, such right, title, and interest are sufficient for the Sellers to independently bring suit against a Third Party to enforce the Listed Patents, the Specified Listed UK Patents, and, to the Knowledge of the Sellers, the other Specified UK Patents and Transferred Patents.

(d)    To the Knowledge of the Sellers, Section A.I(d) of the Sellers Disclosure Schedule sets forth an accurate, true and complete list of all Contracts between the Sellers or their Affiliates, on the one hand, and any other Person, on the other hand, under which the Sellers or their Affiliates both (i) grant a license under any Transferred Patent, Jointly Owned Patent or Specified UK Patent and (ii) receive from the counter-party a license under Patents owned by (or licensed to) such counter-party (but other than inbound or outbound license agreements where the only grant back from the licensee is under improvements on the licensed Intellectual Property) (collectively, the "**Cross-License Agreements**"), and the Sellers have furnished a correct and complete copy of each such Contract in its final and effective form to the Purchaser prior to the date hereof, except to the extent disclosure of the terms or existence of a Cross License Agreement is prohibited, in which case it has been omitted from Section A.I(d) of the Sellers Disclosure Schedule, but the number of such Cross License Agreements that have been omitted is set forth in Section A.I(d) of the Sellers Disclosure Schedule.

NNC-NNL11755866 / 267

(e)    To the Knowledge of the Sellers, Section A.I(e) of the Sellers Disclosure Schedule sets forth an accurate, true and complete list of all Contracts (other than Cross-License Agreements and Commercial Licenses) under which the Sellers or their Affiliates grant a license (including a grant back or any other express license made by any of the Sellers (as licensors) to improvements or any other license rights) to a Transferred Patent, Jointly Owned Patent or Specified UK Patent (whether alone or with any Software or Trade Secrets) (collectively, the "**Outbound License Agreements**"), indicating for each such Outbound License Agreement the title and the parties thereto, and the Sellers have furnished a correct and complete copy of each such Contract in its final and effective form to the Purchaser prior to the date hereof.

(f)    To the Knowledge of the Sellers, (i) Section A.I(f) of the Sellers Disclosure Schedule sets forth (A) an accurate, true and complete list of each transition services agreement, master purchase agreements and development and support agreements that the Sellers entered into with the purchasers of its various business units after the Petition Date in connection with their divestitures and (B) with respect to the transition services agreements, the original scheduled termination date thereof (which, as of the date hereof, has not been extended by more than 90 days), and (ii) the scope of the licenses granted under the Transferred Patents, Jointly Owned Patents and Specified UK Patents pursuant to such transition services agreements, master purchase agreements and development and support agreements is not broader than the scope of such licenses contained in the form licenses provided to the Purchaser prior to the date hereof in the Data Room as document numbers 2.5.3.187 2.5.3.193, 2.5.3.194 and 2.5.3.195; it being understood that work orders under certain of such agreements have been issued pursuant to such agreements, but are not listed. To the Knowledge of the Sellers, the license rights, if any, granted by the Sellers under the Transferred Patents, Jointly Owned Patents and Specified UK Patents pursuant to each such transition services agreement during the term of such transition services agreement shall expire upon the termination of such transition services agreement (except for (A) rights to use and make certain Software applications and tools relating to the businesses being divested, to the extent that such Software applications and tools were delivered by the Sellers or their Affiliates and (B) internal use of Intellectual Property created by Sellers or their Affiliates prior to the expiration of such transition services agreement in support of or during the course of performing the services, to the extent such Intellectual Property has been delivered, including by integration into the divested business.

(g)    To the Knowledge of the Sellers, there is no Action pending asserting invalidity, misuse or unenforceability of any of the Jointly Owned Patents, Transferred Patents or Specified UK Patents or challenging the Sellers' right to use, right to transfer, or ownership of any of the Jointly Owned Patents, Transferred Patents or Specified UK Patents.

(h)    To the Knowledge of the Sellers, each of the registrations and applications for the Jointly Owned Patents, Transferred Patents or Specified UK Patents included in the Assets is currently in good standing and subsisting. The foregoing will not be construed as a warranty that any patent will issue based on a patent application.

(i)    To the Knowledge of the Sellers, Section A.I(i) of the Sellers Disclosure Schedule sets forth an accurate, true and complete list of all Actions (including opposition, interferences and cancellation petitions and like proceedings) against any Seller, except for the

NNC-NNL11755866 / 268

Bankruptcy Proceedings, pending before any Government Entity or threatened in writing that involves the Jointly Owned Patents, Transferred Patents or Specified UK Patents.

(j)     To the Knowledge of the Sellers, there are no prior or preferential rights, rights of first refusal, rights of first offer or other similar rights of any party (other than the Purchaser) to purchase or otherwise acquire any of the Assets.

(k)     To the Knowledge of the Sellers: every Patent solely owned by the Sellers or their Affiliates, except for the Excluded Patents, is included among the Listed Patents or the Specified Listed UK Patents; every Patent jointly owned by one or more of the Sellers and their Affiliates, on the one hand, and one or more Third Parties, on the other hand, except for the Excluded Patents, is included among the Listed Jointly Owned Patents; and every invention disclosure owned by the Sellers or their Affiliates and under consideration for the filing of a patent application is included among the Listed Inventions.

(l)     No Person listed in Section A.I(l) of the Sellers Disclosure Schedule has been granted any license (other than a Commercial License) under the Jointly Owned Patents, Transferred Patents or Specified UK Patents by the Sellers, which license is in force as of the date hereof, it being understood that such Persons may have rights or licenses solely with respect to products or services sold or provided by the Sellers or Sellers' Affiliates.

(m)     To the Knowledge of the Sellers, Section A.I(m) of the Sellers Disclosure Schedule sets forth an accurate, true and complete list of all Contracts (other than Cross-License Agreements and Outbound License Agreements listed in Sections A.I(d) or A.I(e) of the Sellers Disclosure Schedule, respectively) under which the Sellers or their Affiliates have joint ownership in the Jointly Owned Patents (collectively, the "**Joint Ownership Agreements**"), indicating each Jointly Owned Patent and the title and the parties to each such agreement, and the Sellers have furnished a correct and complete copy of each such Contract in its final and effective form to the Purchaser prior to the date hereof.

(n)     To the Knowledge of the Sellers, no Affiliate of the Sellers that is not itself a Seller owns any Patents, invention disclosures or Patent Related Documentation.

(o)     To the Knowledge of the Sellers, (i)(x) all promises, declarations and commitments granted, made or committed in writing by the Sellers to standard-setting bodies or industry groups (other than those contained in membership agreements, by-laws or policies of standard-setting bodies or industry groups and described in clause (y) below or, without limiting clause (y) below, in Section A.I(b) of the Sellers Disclosure Schedule) and that may concern the Transferred Patents or Specified UK Patents, together with the title and number of the standard and the Patents to which such promises, declarations or commitments refer (in each case, to the extent identified in the respective promise, declaration or commitment), are listed in Section A.I(o)(i)(x) of the Sellers Disclosure Schedule, and (y) all membership agreements, by-laws or policies of standard-setting bodies or industry groups in which Sellers were participants and which contained commitments that may concern the Transferred Patents or Specified UK Patents granted in writing by the Sellers and which bind Sellers to bind the Purchaser thereto, are listed in Section A.I(o)(i)(y) of the Sellers Disclosure Schedule; and (ii) except as set forth on Schedule A.I(o)(ii) of the Sellers

NNC-NNL11755866 / 269

Disclosure Schedule, none of the declarations, promises and commitments referred to in clause (i) above require royalty-free licensing of any of the Transferred Patents.

(p)        The patents, patent applications and provisional patent application listed in Section 1.1(c) of the Sellers Disclosure Schedule are solely those sold after the Petition Date to purchasers in connection with sales of divisions of Sellers and are not included in the Sellers' Patents.

(q)        There exist no Permitted Encumbrances of the type described in clause (i) of the definition of "Permitted Encumbrances" on any of the Assets.

(r)        To the Knowledge of the Sellers, there exist no Licensed Residual Patents (other than invention disclosures that (x) relate to a patent application filed anywhere in the world or (y) are dated thirty (30) months or more before the date hereof) or Undisclosed Patent Interests.

(s)        To the Knowledge of the Sellers, the aggregate amount of all unpaid past, present and future income and royalties payable to the Sellers under (i) the Transferred Licenses and (ii) any licenses granted under the Transferred Patents, Jointly Owned Patents or Specified UK Patents does not exceed $10 million.

(t)        The portions of the Ericsson Licenses and any other agreement between any Seller, on one hand, and Ericsson on the other hand, which were redacted in the copy of such agreements provided in the Data Room, do not provide for: (i) the assignment to any Person of any ownership or exclusive rights (including any option to acquire ownership or exclusive rights) to any Transferred Patents, Specified UK Patents or Jointly Owned Patents, (ii) the grant of any sublicense or other license rights under the Transferred Patents, Specified UK Patents or Jointly Owned Patents, (iii) the Sellers to have any rights to receive an ownership or exclusive interest in any Patents transferred by any Sellers to Ericsson or (iv) any rights for any Person in any improvements to any Transferred Patents, Specified UK Patents or Jointly Owned Patents made by any Seller or any purchaser of Transferred Patents, Specified UK Patents or Jointly Owned Patents.

(u)        The Sellers have disclosed to Purchaser all agreements, contracts, notices and correspondence to, from or with Ericsson that relate in any way to the Transferred Patents, Jointly Owned Patents or Specified UK Patents, other than agreements, contracts, notices and correspondence relating to a potential stalking horse transaction for the Transferred Patents, Jointly Owned Patents and Specified UK Patents, as a whole.

(v)        To the Knowledge of the Sellers, there exist no disputes between any Seller, on the one hand, and Ericsson, on the other hand, concerning the Transferred Patents, Jointly Owned Patents or Specified UK Patents or the scope of any licenses granted to the Transferred Patents, Jointly Owned Patents or Specified UK Patents.

(w)      There are no Collective Labor Agreements in effect or labor organizing efforts outstanding or threatened with respect to any Employee of any of the Sellers.

(x)        No Employee of any of the Sellers works in Quebec, Canada.

NNC-NNL11755866 / 270

(y)    [Reserved]

(z)    To the Knowledge of the Sellers, there is no ongoing and will be no future manufacture, development, sale, supply or other distribution, or servicing of Nortel Products or other products under the Transferred Patents or Specified UK Patents by, for or on behalf of Sellers or an Affiliate of any Seller, other than to the extent such activities would be permitted after the Closing Date pursuant to the terms of the Closing Date License Agreement or Section 5.13(b) of this Agreement.

NNC-NNL11755866 / 271

# APPENDIX "D"

## [CONFIDENTIAL]

NNC-NNL11755866 / 272

APPENDIX "E"

[CONFIDENTIAL]

NNC-NNL11755866 / 273

APPENDIX "F"

[CONFIDENTIAL]

NNC-NNL11755866 / 274

**APPENDIX "G"**

**[ATTACHED]**

NNC-NNL11755866 / 275

Dominion of Canada, PROVINCE OF ONTARIO,
MUNICIPALITY of METROPOLITAN TORONTO

TO WITNESS:

IN THE MATTER OF:  NORTEL NETWORKS INC.

I Patricia Tabone, of the City of Toronto, in the Municipality of Metropolitan
Toronto, in the Province of Ontario, Advertising Services Representative, in
the employment of The Globe and Mail, make oath and say that the
advertisement :

LEGAL NOTICE

A true copy of which is hereto annexed, was duly distributed in
the issues of The Globe and Mail a daily newspaper, simultaneously
published in the Cities of Toronto, Montreal, Vancouver, Halifax, Calgary,
Brandon, Canada, on the following dates, namely:

MAY 6 TH , A.D. 2011

That I have examined copies of the said newspaper published on the said
dates and found the said advertisement to be correctly inserted therein.

Sworn before me at the City of Toronto
in the Municipality of Metropolitan
Toronto this 17TH  day of  MAY, A.D. 2011

Fatima Brito Wilson,
a Commissioner, etc., City of Toronto,
for CTVglobemedia Publishing inc.
Expires June 28, 2013

TR45574

NNC-NNL 11755866 / 277



# AFFIDAVIT

STATE OF TEXAS          )
                        )
CITY AND COUNTRY OF DALLAS)

I, Albert Fox, being duly sworn, depose and say that I am the Advertising Clerk of the Publisher

of THE WALL STREET JOURNAL, a daily national newspaper of general circulation throughout

the United States, and that the notice attached to this Affidavit has been regularly

published in THE WALL STREET JOURNAL for National distribution for

1   insertion(s) on the following date(s):

MAY-06-2011;

ADVERTISER: Nortel Networks Inc., et al.;

and that the foregoing statements are true and correct to the best of my knowledge.

Sworn to before me this
6   day of  May      2011

Notary Public

DONNA HESTER
Notary Public, State of Texas
My Commission Expires
October 29, 2014

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re                                         Chapter 11.
Nortel Networks Inc., et al.,      Case No. 09-10138 (KG)
          Debtors,                         Jointly Administered

Court File No.: 09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE - (COMMERCIAL LIST)
IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

JOINT NOTICE OF PUBLIC AUCTION, SALE HEARING
AND REJECTION OF IP LICENSES

**PLEASE TAKE NOTICE** that on April 4, 2011, Nortel Networks Corporation, Nortel Networks Limited (together, the "Canadian Debtors"), Nortel Networks Inc. (collectively with certain of its U.S. debtor affiliates, the "U.S. Debtors"), and together with the Canadian Debtors, the "Sellers") entered into an agreement (the "Agreement") to convey substantially all of the Sellers' residual patents and certain related assets as described therein (the "Assets") to Ranger Inc., an affiliate of Google Inc., as more fully set forth in the motions for approval of the Agreement and other related relief, including the procedures for the rejection of certain outbound and cross patent licenses, filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on April 4, 2011 (D.I. 5202) (the "U.S. Sale Motion") and filed with the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") on April 7, 2011( the "Canadian Sale Motion"). Except as set forth in the Agreement, the Sellers seek to sell to Ranger Inc. or such other successful bidder(s) at an auction (the "Successful Bidder") the Assets covered by the Agreement free and clear of all claims and interests, in the case of the U.S. Debtors, pursuant to section 363 of the Bankruptcy Code, and in the case of the Canadian Debtors, pursuant to the Canadian Approval and Vesting Order.

**PLEASE TAKE FURTHER NOTICE** that the terms and conditions of the proposed sale to Ranger Inc. are set forth in the Agreement attached to the U.S. Sale Motion and the Canadian Sale Motion. The Agreement represents the results of extensive marketing efforts conducted by the Sellers to obtain the highest and best offer for the Assets.

**PLEASE TAKE FURTHER NOTICE** that on May 2, 2011, the Bankruptcy Court entered an order (D.I. 5359) (the "Bidding Procedures Order") and that on May 2, 2011 the Canadian Court entered an order (the "Canadian Sales Process Order") approving, among other things, (i) the bidding procedures (the "Bidding Procedures"), which set the key dates and times related to the sale of the Assets under the Agreement and (ii) the patent license rejection procedures, which establish procedures for the rejection of Unknown Licenses (as defined in the U.S. Sale Motion and Canadian Sale Motion). *All interested bidders should carefully read the Bidding Procedures, and all counterparties to patent licenses with the Sellers should carefully read the Agreement, the U.S. Sale Motion, the Canadian Sale Motion, the Bidding Procedures Order and the Canadian Sales Process Order.*

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order and Canadian Sales Process Order, an auction (the "Auction") to sell the Assets will be conducted at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, or such other location as shall be timely communicated in accordance with the Bidding Procedures, on **June 20, 2011 at 9:00 a.m. (ET)** (the "Auction Date"). Only the Sellers, Ranger Inc., the Committee, the Bondholder Group, Ernst & Young Inc. in its capacity as the monitor of Nortel Networks Corporation et al (the "Monitor") and the Administrators (and the advisors to each of the foregoing), any creditor of the U.S. Debtors or Canadian Debtors and any other Qualified Bidder that has timely submitted a Qualified Bid, shall be entitled to attend the Auction in person, and only Ranger Inc. and such other Qualified Bidders will be entitled to make any subsequent bids at the Auction.

**PLEASE TAKE FURTHER NOTICE** that Ranger Inc. has agreed to take the Assets subject to substantially all known outbound and cross patent licenses to such Assets granted prior to the signing of the Agreement, as identified by the Sellers, upon the terms and subject to the limitations contained in the Agreement. In an abundance of caution and in furtherance of the Sale, (i) the U.S. Debtors intend to reject any Unknown Licenses (as defined in the U.S. Sale Motion) to such Assets pursuant to section 365 of the Bankruptcy Code, effective as of and conditioned on the occurrence of the Closing, and (ii) the Canadian Debtors intend to terminate all Unknown Licenses (as defined in the Canadian Sale Motion) to such Assets, effective as of and conditioned on the occurrence of the Closing. The U.S. Sale Motion, the Canadian Sale Motion, the Bidding Procedures Order and the Canadian Sales Process Order further describe the types of patent licenses that will be rejected or terminated by the U.S. Debtors and Canadian Debtors in connection with the Sale.

**PLEASE TAKE FURTHER NOTICE** that the U.S. Debtors and Canadian Debtors do not intend to reject or terminate certain "Covered Licenses" which consist of Commercial Licenses and certain intercompany agreements among the Sellers and their affiliates. Inquiries regarding the license rejection procedures, including whether a particular license is a Covered License (i) can be directed to the Monitor at (416) 943-4439 or (866) 942-7177, in the case of license agreements to which the Canadian Debtors are a party, and (ii) can be directed to Cleary Gottlieb Steen & Hamilton LLP at (212) 225-3830, in the case of license agreements to which the U.S. Debtors are a party.

**PLEASE TAKE FURTHER NOTICE** that the deadline for any counterparty to an Unknown License with the U.S. Debtors or a party in interest in the U.S. Debtors' chapter 11 cases to file and serve an objection to the rejection of any Unknown License is **May 31, 2011 at 4:00 p.m. (ET)**. Such objection shall be served in accordance with the Objection Procedures (as defined below) on: the Objection Notice Parties (as defined below); counsel to the Canadian Debtors; and counsel to the Monitor.

**PLEASE TAKE FURTHER NOTICE** that the deadline for a counterparty to an Unknown License with the U.S. Debtors to elect to retain its rights under such license in accordance with section 365(n)(1)(b) of the Bankruptcy Code is **June 6, 2011 at 4:00 p.m. (ET)** (the "Notice of Election Deadline"). Any counterparty to an Unknown License with the U.S. Debtors that wishes to retain such rights must file a notice of election to retain such rights (a "Notice of Election") in accordance with the Objection Procedures and serve such notice on: the Objection Notice Parties (as defined below); counsel to the Canadian Debtors; and counsel to the Monitor, including a copy of such Unknown License with the Notice of Election on any and all available grounds, which objections will be heard at the Sale Hearing. *Any counterparty to an Unknown License with the U.S. Debtors that does not file and serve a Notice of Election by the Notice of Election Deadline will be deemed to have elected to treat each such Unknown License as terminated under section 365(n)(1)(a) of the Bankruptcy Code.* For any Unknown License with the U.S. Debtors that is rejected, the deadline for any counterparty to such Unknown License to file a rejection damages claim against the U.S. Debtors with respect to such rejection will be thirty (30) days following the date of the Closing of the Sale.

**PLEASE TAKE FURTHER NOTICE** that the deadline for any counterparty to an Unknown License with the Canadian Debtors to come forward and object to the termination of such Unknown License by serving a notice of objection substantially in the form posted on the Monitor's website at www.ey.com/ca/nortel on counsel to the Canadian Debtors, counsel to the Monitor, counsel to the U.S. Debtors and counsel to Ranger Inc. is June 6, 2011 at 4:00 p.m. (ET). To the extent that a counterparty comes forward and asserts an Unknown License with the Canadian Debtors prior to the Canadian License Bar Date, which Unknown License is established by court order to be a valid Unknown License prior to the Closing (as defined in the Agreement), the Assets will be sold subject to such license. *Any Unknown License with the Canadian Debtors for which the counterparty to such Unknown License does not come forward and file and serve an objection notice, or whose objection is not established by court order, shall be terminated and forever barred.* Any claim arising from such deemed termination shall be an unsecured claim against the Canadian Debtors, shall be deemed a Restructuring Claim as such term is defined in the Claims Procedure Order granted by the Canadian Court on July 30, 2009, must be filed within thirty (30) days of the date of Closing and must otherwise be in compliance with that order.

**PLEASE TAKE FURTHER NOTICE** that, in addition to the foregoing license rejection procedures, the U.S. Debtors and the Canadian Debtors have agreed as part of the transaction to various limitations and prohibitions on their rights to renew, extend, assign, amend, waive or modify contracts containing licenses to the patents offered for sale, including outbound and cross patent licenses and certain licenses incorporated in Commercial Licenses, Intercompany Licenses (as defined in the Sale Order and the Vesting Order, such as defined below) and certain agreements entered into in connection with the divestiture of Nortel's business units, as set forth in paragraph 28 of the proposed Sale Order annexed to the U.S. Sale Motion (the "Sale Order") and paragraph 14 of the proposed Approval and Vesting Order annexed to the affidavit of George Riedel contained in the Canadian Sale Motion (the "Vesting Order"). *All counterparties to contracts with the Sellers should carefully read the U.S. Sale Motion and the proposed Sale Order annexed thereto and the Canadian Sale Motion and the proposed Approval and Vesting Order attached to the affidavit of George Riedel contained in the Canadian Sale Motion.*

**PLEASE TAKE FURTHER NOTICE** that a joint hearing (the "Sale Hearing") will be held before the Honorable Kevin Gross, United States Bankruptcy Judge and the Honorable Justice Morawetz of the Ontario Superior Court of Justice (Commercial List), which hearing is currently scheduled to be held on **June 30, 2011 at 10:00 a.m. (ET)**, or at such other time as the Courts permit, in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801 and the Ontario Superior Court (Commercial List) at 393 University Ave., Toronto, Ontario to confirm the results of the Auction, approve the sale of the U.S. Debtors' and Canadian Debtors' respective interests in the Assets to Ranger Inc. or the Successful Bidder and approve the rejection of Unknown Licenses with the U.S. Debtors and the Canadian Debtors. The U.S. Debtors and the Canadian Debtors may each adjourn their respective Sale Hearings one or more times without further notice by making an announcement in open Court or, in the case of the U.S. Debtors, by the filing of a hearing agenda pursuant to Local Rule 9029-3 announcing the adjournment or, in the case of the Canadian Debtors, by providing notice to the service list in the Canadian Debtors' Companies' Creditors Arrangement Act proceedings (the "Canadian Service List").

**PLEASE TAKE FURTHER NOTICE** that, except as described above, pursuant to the Bidding Procedures Order, the Bankruptcy Court has currently set: (a) **June 13, 2011 at 4:00 p.m. (ET)** as the deadline for all general objections to the U.S. Sale Motion, including objections to the sale of the Assets; (b) **June 13, 2011 at 4:00 p.m. (ET)** as the Bid Deadline (as defined in the Bidding Procedures); and (c) **June 28, 2011 at 4:00 p.m. (ET)** as the deadline for supplemental objections regarding objections to issues arising from and in connection with the Auction and/or the Sellers' selection of a Successful Bid made by a Successful Bidder other than Ranger Inc. Except as described above, pursuant to the Canadian Sales Process Order, the Canadian Court has currently set **June 13, 2011 at 4:00 p.m. (ET)** as the Bid Deadline.

**PLEASE TAKE FURTHER NOTICE** that all objections to the U.S. Sale Motion must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Clerk of the Bankruptcy Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 by no later than the General Objection Deadline, or other applicable deadline as indicated above; and (e) served in accordance with the Local Rules so as to be received on or before the relevant objection deadline by the following at the addresses provided in the Bidding Procedures by: U.S. Sale Motion: (i) counsel to the U.S. Debtors, (ii) counsel to Ranger Inc., (iii) counsel to the Committee, (iv) counsel to the Bondholder Group, and (v) the Office of the United States Trustee (collectively, the "Objection Notice Parties", such procedures the "Objection Procedures").

**PLEASE TAKE FURTHER NOTICE** that this notice is a summary only and is subject to the full terms and conditions of the Agreement, the U.S. Sale Motion, the Canadian Sale Motion, the Bidding Procedures Order, the Canadian Sales Process Order and the Bidding Procedures, and you should review such documents in their entirety. Copies of the Agreement, the U.S. Sale Motion, and the Bidding Procedures Order (including the Bidding Procedures approved by the Bankruptcy Court) may be examined by interested parties between the hours of 8:00 a.m. and 4:00 p.m. (ET) at the office of the Clerk of the Court, 824 Market Street, Wilmington, Delaware 19801, or by appointment during regular business hours at the office of the U.S. Debtors' attorneys: Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attention: James L. Bromley and Lisa M. Schweitzer. Additionally, copies of these documents may be downloaded from the Bankruptcy Court's docket at www.deb.uscourts.gov and from the website of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions LLC, at http://dm.epiq11.com/nortel. Copies of the Agreement, Canadian Sale Motion and Canadian Sales Process Order (including the Bidding Procedures approved by the Canadian Court) and the Canadian Service List can be viewed at the Monitor's website at http://www.ey.com/ca/nortel or by contacting the Monitor by telephone at 1-416-943-4439 or 1-866-942-7177) or by fax (1-416-943-2808).

**PLEASE TAKE FURTHER NOTICE** that dates set forth in this notice as subject to change, and further notice of such changes may not be provide except through announcements in open court and/or the filing of notices and/or amended agendas. Parties in interest are encouraged to monitor the electronic court docket, the noticing agent website and/or the Monitor's website for further updates.

Dated: May 2, 2011, Wilmington, Delaware
CLEARY GOTTLIEB STEEN & HAMILTON LLP, James L. Bromley (admitted pro hac vice), Lisa M. Schweitzer (admitted pro hac vice), One Liberty Plaza, New York, New York 10006, Telephone (212) 225-2000, Facsimile (212) 225-3999- and- MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Derek C. Abbott (No 3376), Erio D. Schwartz (No. 3134), Ann C. Cordo (No. 4817), 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19801, Telephone (302) 658-9200, Facsimile: (302) 658-3989, Counsel for the U.S. Debtors and U.S. Debtors in Possession -and- OGILVY RENAULT LLP, Suite 3800 Royal Bank Plaza, South Tower, 200 Bay Street, Toronto, Ontario M5J2Z4 CANADA, Derrick Tay LSUC# 21152A, Telephone: (416) 216-2327, Email dtay@ogilvyrenault.com, Jennifer Stam LSUC# 46735J, Telephone: (41 216-4823, Email: jstam@ogilvyrenault.com, Fax (416) 216-3930, Lawyers for Canadian Debtors

A

**The New York Times**

620 8TH AVENUE · NEW YORK, NY 10018

SEC. *B*  PG *7*

## CERTIFICATION OF PUBLICATION

MAY 0 6 2011 _____ 20 ____

I, *Alice Weber* _____ , in my capacity as a Principal Clerk of the Publisher of **The New York Times** a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of **The New York Times** on the following date or dates, to wit on

_____ MAY 0 6 2011 _____ 20 ____

*Alice Weber*

Approved:

*Maria Pannullo*

THIS CERTIFICATION
NOT VALID
WITHOUT NYT RAISED SEAL

NNC-NNL11755866 / 280

TR45574

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re                                        )  Chapter 11
Nortel Networks Inc., et al.,   )  Case No. 09-10138 (KG)
                  Debtors.           )  Jointly Administered

Court File No.09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE – (COMMERCIAL LIST)**
**IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,**
**R.S.C. 1985, c.C-36, AS AMENDED**
**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT**
**OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS**
**LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL**
**NETWORKS INTERNATIONAL CORPORATION AND NORTEL**
**NETWORKS TECHNOLOGY CORPORATION**

**JOINT NOTICE OF PUBLIC AUCTION, SALE HEARING**
**AND REJECTION OF IP LICENSES**

**PLEASE TAKE NOTICE** that on April 4, 2011, Nortel Networks Corporation, Nortel Networks Limited (together, the "Canadian Debtors"), Nortel Networks Inc. (collectively with certain of its U.S. debtor affiliates, the "U.S. Debtors" and together with the Canadian Debtors, the "Sellers") entered into an agreement (the "Agreement") to convey substantially all of the Sellers' residual patents and certain related assets as described therein (the "Assets") to Ranger Inc., an affiliate of Google Inc., as more fully set forth in the motions for approval of the Agreement and other related relief, including the procedures for the rejection of certain outbound and cross patent licenses, filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on April 4, 2011 (D.I. 5202) (the "U.S. Sale Motion") and filed with the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") on April 7, 2011 (the "Canadian Sale Motion"). Except as set forth in the Agreement, the Sellers seek to sell to Ranger Inc. or such other successful bidder(s) at an auction (the "Successful Bidder") the Assets covered by the Agreement free and clear of all claims and interests, in the case of the U.S. Debtors, pursuant to section 363 of the Bankruptcy Code, and in the case of the Canadian Debtors, pursuant to the Canadian Approval and Vesting Order.

**PLEASE TAKE FURTHER NOTICE** that the terms and conditions of the proposed sale to Ranger Inc. are set forth in the Agreement attached to the U.S. Sale Motion and the Canadian Sale Motion. The Agreement represents the results of extensive marketing efforts conducted by the Sellers to obtain the highest and best offer for the Assets.

**PLEASE TAKE FURTHER NOTICE** that on May 2, 2011, the Bankruptcy Court entered an order (D.I. 5359) (the "Bidding Procedures Order") and that on May 2, 2011 the Canadian Court entered an order (the "Canadian Sales Process Order") approving, among other things, (i) the bidding procedures (the "Bidding Procedures"), which set the key dates and times related to the sale of the Assets under the Agreement and (ii) the patent license rejection procedures, which establish procedures for the rejection of Unknown Licenses (as defined in the U.S. Sale Motion and Canadian Sale Motion). *All interested bidders should carefully read the Bidding Procedures, and all counterparties to patent licenses with the Sellers should carefully read the Agreement, the U.S. Sale Motion, the Canadian Sale Motion, the Bidding Procedures Order and the Canadian Sales Process Order.*

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order and Canadian Sales Process Order, an auction (the "Auction") to sell the Assets will be conducted at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, or such other location as shall be timely communicated in accordance with the Bidding Procedures, on June 20, 2011 at 9:00 a.m. (ET) (the "Auction Date"). Only the Sellers, Ranger Inc., the Committee, the Bondholder Group, Ernst & Young Inc. in its capacity as the monitor of Nortel Networks Corporation et al (the "Monitor") and the Administrators (and the advisors to each of the foregoing), any creditor of the U.S. Debtors or Canadian Debtors and any other Qualified Bidder that has timely submitted a Qualified Bid shall be entitled to attend the Auction in person, and only Ranger Inc. and such other Qualified Bidders will be entitled to make any subsequent bids at the Auction.

**PLEASE TAKE FURTHER NOTICE** that Ranger Inc. has agreed to take the Assets subject to substantially all known outbound and cross patent licenses to such Assets granted prior to the signing of the Agreement, as identified by the Sellers, upon the terms and subject to the limitations contained in the Agreement. In an abundance of caution and in furtherance of the Sale, (i) the U.S. Debtors intend to reject any Unknown Licenses (as defined in the U.S. Sale Motion) to such Assets pursuant to section 365 of the Bankruptcy Code, effective as of and conditioned on the occurrence of the Closing, and (ii) the Canadian Debtors intend to terminate all Unknown Licenses (as defined in the Canadian Sale Motion) to such Assets, effective as of and conditioned on the occurrence of the Closing. The U.S. Sale Motion, the Canadian Sale Motion, the Bidding Procedures Order and the Canadian Sales Process Order further describe the types of patent licenses that will be rejected or terminated by the U.S. Debtors and Canadian Debtors in connection with the Sale.

**PLEASE TAKE FURTHER NOTICE** that the U.S. Debtors and Canadian Debtors do not intend to reject or terminate certain "Covered Licenses" which consist of Commercial Licenses and certain intercompany agreements among the Sellers and their affiliates. Inquiries regarding the license rejection procedures, including whether a particular license is a Covered License (i) can be directed to the Monitor at (416) 943-4439 or (866) 942-7177, in the case of license granted to which the Canadian Debtors are a party, and (ii) can be directed to Cleary Gottlieb Steen & Hamilton LLP at (212) 225-2830, in the case of license agreements to which the U.S. Debtors are a party.

**PLEASE TAKE FURTHER NOTICE** that the deadline for any counterparty to an Unknown License with the U.S. Debtors or a party in interest in the U.S. Debtors' chapter 11 cases to file and serve an objection to the rejection of any Unknown License is May 31, 2011 at 4:00 p.m. (ET). Such objection shall be served in accordance with the Objection Procedures (as defined below) on the Objection Notice Parties (as defined below); counsel to the Canadian Debtors and counsel to the Monitor.

**PLEASE TAKE FURTHER NOTICE** that the deadline for a counterparty to an Unknown License with the U.S. Debtors to retain its rights under such license in accordance with section 365(n)(1)(b) of the Bankruptcy Code is June 6, 2011 at 4:00 p.m. (ET) (the "Notice of Election Deadline"). Any counterparty to an Unknown License with the U.S. Debtors that wishes to retain such rights must file a notice of election to retain such rights (a "Notice of Election") in accordance with the Objection Procedures and serve such notice on the Objection Notice Parties (as defined below) counsel to the Canadian Debtors; and counsel to the Monitor. Any Notice of Election served as counsel to the U.S. Debtors, the Canadian Debtors and the Monitor shall include a copy of such Unknown License with the Notice of Election served on counsel to each of the U.S. Debtors, the Canadian Debtors and the Monitor. The U.S. Debtors and the Stalking Horse Purchaser (or other Successful Bidder) reserve their right to object to any Notices of Election on any and all available grounds, which objections will be heard at the Sale Hearing. *Any counterparty to an Unknown License with the U.S. Debtors that does not file and serve a Notice of Election by the Notice of Election Deadline will be deemed to have elected to treat each such Unknown License as terminated under section 365(n)(1)(a) of the Bankruptcy Code.* For any Unknown License with the U.S. Debtors that is rejected, the deadline for any counterparty to such Unknown License to file a rejection damages claim against the U.S. Debtors with respect to such rejection will be thirty (30) days following the date of the Closing of the Sale.

**PLEASE TAKE FURTHER NOTICE** that the deadline for any counterparty to an Unknown License with the Canadian Debtors to come forward and object to the termination of such Unknown License by serving a notice of objection substantially in the form posted on the Monitor's website at www.ey.com/ca/nortel on counsel to the Canadian Debtors, counsel to the Monitor, counsel to the U.S. Debtors and counsel to Ranger Inc. is June 6, 2011 at 4:00 p.m. (ET) (the "Canadian License Bar Date"). To the extent that a counterparty comes forward and asserts an Unknown License with the Canadian Debtors prior to the Canadian License Bar Date, which Unknown License is established by court order to be a valid Unknown License prior to the Closing (as defined in the Agreement), the Assets will be sold subject to such license. *Any Unknown License with the Canadian Debtors for which the counterparty to such Unknown License does not come forward and file and serve an objection and/or whose objection is not established by court order, will be terminated and forever barred.* Any claim arising from such deemed termination shall be an unsecured claim against the Canadian Debtors, shall be deemed a Restructuring Claim as such term is defined in the Claims Procedure Order granted by the Canadian Court on July 30, 2009, must be filed within thirty (30) days of the date of Closing and must otherwise be in compliance with that order.

**PLEASE TAKE FURTHER NOTICE** that, in addition to the foregoing license rejection procedures, the U.S. Debtors and the Canadian Debtors have agreed as part of the transaction to various limitations and prohibitions on their rights to assume, extend, assign, amend, waive or modify contracts containing licenses to the patents offered for sale, including outbound and cross patent licenses and certain licenses incorporated in Commercial Licenses, Intercompany Licenses (as defined in the Sale and the Vesting Order, each as defined below) and certain agreements entered into in connection with the divestiture of Nortel's business units, as set forth in paragraph 28 of the proposed Sale Order annexed to the U.S. Sale Motion (the "Sale Order") and paragraph 14 of the proposed Approval and Vesting Order annexed to the affidavit of George Riedel contained in the Canadian Sale Motion (the "Vesting Order"). *All counterparties to contracts with the Sellers should carefully read the U.S. Sale Motion and the proposed Sale Order annexed thereto and the Canadian Sale Motion and the proposed Approval and Vesting Order attached to the affidavit of George Riedel contained in the Canadian Sale Motion.*

**PLEASE TAKE FURTHER NOTICE** that a joint hearing (the "Sale Hearing") will be held before the Honorable Kevin Gross, United States Bankruptcy Judge and the Honourable Justice Morawetz of the Ontario Superior Court of Justice (Commercial List), which hearing is currently scheduled to be held on June 30, 2011 at 10:00 a.m. (ET), or at such other time as the Courts permit, in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801 and the Ontario Superior Court (Commercial List) at 393 University Ave., Toronto, Ontario to confirm the results of the Auction, approve the sale of the U.S. Debtors' and Canadian Debtors' respective interests in the Assets to Ranger Inc. or the Successful Bidder and approve the rejection of the Unknown Licenses with the U.S. Debtors and the Canadian Debtors. The U.S. Debtors and the Canadian Debtors may reach adjourn their respective Sale Hearings one or more times without further notice by making an announcement in open court or, in the case of the U.S. Debtors, by the filing of a hearing agenda pursuant to Local Rule 9029-3 announcing the adjournment or, in the case of the Canadian Debtors, by providing notice to the service list in the Canadian Debtors' Companies' Creditors Arrangement Act proceedings (the "Canadian Service List").

**PLEASE TAKE FURTHER NOTICE** that, except as described above, pursuant to the Bidding Procedures Order, the Bankruptcy Court has currently set: (a) June 13, 2011 at 4:00 p.m. (ET) as the deadline for all general objections to the U.S. Sale Motion, including objections to the sale of the Assets; (b) June 13, 2011 at 4:00 p.m. (ET) as the deadline for supplemental objections to the Bidding Procedures; and (c) June 28, 2011 at 4:00 p.m. (ET) as the deadline for supplemental objections regarding objections to losses arising from and in connection with the Auction and/or the Sellers' selection of a Successful Bid made by a Successful Bidder other than Ranger Inc. Except as described above, pursuant to the Canadian Sales Process Order, the Canadian Court has currently set June 13, 2011 at 4:00 p.m. (ET) as the Bid Deadline.

**PLEASE TAKE FURTHER NOTICE** that all objections to the U.S. Sale Motion must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Clerk of the Bankruptcy Court, 824 Market Street, Wilmington, Delaware 19801 by no later than the General Objection Deadline, or other applicable deadline as indicated above; and (e) served in accordance with the Local Rules so as to be received on or before the relevant objection deadline by the following at the addresses provided in the Bidding Procedures and U.S. Sale Motion: (i) counsel to the U.S. Debtors, (ii) counsel to Ranger Inc., (iii) counsel to the Committee, (iv) counsel to the Bondholder Group, and (v) the Office of the United States Trustee (collectively, the "Objection Notice Parties" such procedures the "Objection Procedures").

**PLEASE TAKE FURTHER NOTICE** that this notice is a summary only and is subject to the full terms and conditions of the Agreement, the U.S. Sale Motion, the Canadian Sale Motion, the Bidding Procedures Order, the Canadian Sales Process Order and the Bidding Procedures, and you should review such documents in their entirety. Copies of the Agreement, the U.S. Sale Motion, and the Bidding Procedures Order (including the Bidding Procedures approved by the Bankruptcy Court) may be examined by interested parties between the hours of 8:00 a.m. and 4:00 p.m. (ET) at the office of the Clerk of the Court, 824 Market Street, Wilmington, Delaware 19801, or by appointment during regular business hours at the offices of the U.S. Debtors' attorneys: Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attention: James L. Bromley and Lisa M. Schweitzer. Additionally, copies of these documents may be downloaded from the Bankruptcy Court's docket at www.deb.uscourts.gov and from the website of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC, at http://dm.epiq11.com/nortel. Copies of the Agreement, Canadian Sale Motion and Canadian Sales Process Order (including the Bidding Procedures approved by the Canadian Court) and the Canadian Service List can be viewed at the Monitor's website at http://www.ey.com/ca/nortel or by contacting the Monitor by telephone (1-416-943-4439 or 1-866-942-7177) or by fax (1-416-943-2808).

**PLEASE TAKE FURTHER NOTICE** that dates set forth in this notice are subject to change, and further notice of such changes may not be provided except through announcements in open court and/or the filing of notices and/or amended agendas. Parties in interest are encouraged to monitor the electronic court docket, the noticing agent's website and/or the Monitor's website for further updates.

Dated: May 2, 2011, Wilmington, Delaware
CLEARY GOTTLIEB STEEN & HAMILTON LLP, James L. Bromley (admitted pro hac vice), Lisa M. Schweitzer (admitted pro hac vice), One Liberty Plaza, New York, New York 10006, Telephone: (212) 225-2000, Facsimile: (212) 225-3999 -and- MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Derek C. Abbott (No.3376), Eric D. Schwartz (No.3134), Ann C. Cordo (No.4817), 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19801, Telephone: (302) 658-9200, Facsimile: (302) 658-3989. Counsel for the U.S. Debtors and U.S. Debtors in Possession -and- OGILVY RENAULT LLP, Suite 3800, Royal Bank Plaza, South Tower, 200 Bay Street, Toronto, Ontario M5J2Z4 CANADA, Derrick Tay (LSUC# 21152A), Telephone: (416) 216-2327, Email: dtay@ogilvyrenault.com, Jennifer Stam (LSUC# 46735), Telephone: (416) 216-4832, Email: jstam@ogilvyrenault.com, Fax: (416) 216-3930, Lawyers for Canadian Debtors

# AFFIDAVITS

**IN THE MATTER**
**OF:**   Nortel

## STATE OF NEW YORK:

                    **ss:**

## COUNTY OF NEW YORK:


I, Tim Hart, being duly sworn, hereby certify that (a) I am the Vice President - Financial
Advertising of FT Publications, Inc., Publisher of the FINANCIAL TIMES, a daily newspaper
published and of general circulation in the City and County of New York, and (b) that the Notice of
which the annexed is a copy was published in the WORLDWIDE EDITIONS OF THE FINANCIAL
TIMES on 6th day of MAY 2011.


     **TIM HART VICE-PRESIDENT OF ADVERTISING -FINANCIAL ADVERTISING:**



**SWORN TO BEFORE ME THIS:**


Hope Kaye                                   **HOPE KAYE**
                                **Notary Public, State of New York**
                                         No. 31-4944197
**NOTARY PUBLIC**                  Qualified in New York County
                                Commission Expires . . . . . . .   3/15/14

TR45574

company is pricing its IPO at a level that gives it a valuation of $45bn-$58bn, below the average forecast of $62bn provided by the banks underwriting the offering. Following the issue of $7.9bn of new shares, the enlarged company will have a market capitalisation of $61bn of new shares on May 19.

Swiss private banks and US money managers. They invested a total of $3.1bn.

In spite of the response, Glencore is expected to stick with its original IPO timetable, oversubscribing the order book over the next two weeks. It plans to announce the pricing of the new shares on May 19.

of these desert states.

Gulf nations, including Abu Dhabi, plan billions of dollars of investments in global food supply and infrastructure as they guard against price shocks and supply shortages in core resources.

As such, Aabar's stake in Glencore takes on a broader

Sheikh Mans have also eme tunistic inve

Last year, drew from Ba Brasil, for e investing $325 in October 20 'developing n

More famo used to inve

---

## Legal Notices

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

In re Nortel Networks Inc., et al.,  Chapter 11 · Case No. 09-10138 (KG)
Debtors.                         Jointly Administered

Court File No.: 09-CL-7950

**ONTARIO
SUPERIOR COURT OF JUSTICE - (COMMERCIAL LIST)
IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,
R.S.C. 1985, c.C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION**

**JOINT NOTICE OF PUBLIC AUCTION, SALE HEARING
AND REJECTION OF IP LICENSES**

PLEASE TAKE NOTICE that on April 4, 2011, Nortel Networks Corporation, Nortel Networks Limited (together, the "Canadian Debtors"), Nortel Networks Inc. (collectively with certain of its U.S. debtor affiliates, the "U.S. Debtors" and together with the Canadian Debtors, the "Sellers") entered into an agreement (the "Agreement") to convey substantially all of the Sellers' residual patents and certain related assets as described therein (the "Assets") to Ranger Inc., an affiliate of Google Inc., as more fully set forth in the motions for approval of the Agreement and other related relief, including the procedures for the rejection of certain outbound and executory patent licenses, filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on April 4, 2011 (D.I.5202) (the "U.S. Sale Motion") and the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") on April 7, 2011 (the "Canadian Sale Motion"). Except as set forth in the Agreement, the Sellers seek to sell to Ranger Inc. or such other successful bidder(s) at an auction (the "Successful Bidder") the Assets covered by the Agreement free and clear of all claims and interests, in the case of the U.S. Debtors, pursuant to section 363 of the Bankruptcy Code, and in the case of the Canadian Debtors, pursuant to the Canadian Approval and Vesting Order.

PLEASE TAKE FURTHER NOTICE that the terms and conditions of the proposed sale to Ranger Inc. are set forth in the Agreement attached to the U.S. Sale Motion and the Canadian Sale Motion. The Agreement represents the results of extensive marketing efforts conducted by the Sellers to obtain the highest and best offer for the Assets.

PLEASE TAKE FURTHER NOTICE that on May 2, 2011, the Bankruptcy Court entered an order (D.I.5359) (the "Bidding Procedures Order") and that on May 2, 2011 the Canadian Court entered an order (the "Canadian Sales Process Order") approving, among other things, (i) the bidding procedures (the "Bidding Procedures"), which set the key dates and times related to the sale of the Assets under the Agreement and (ii) the granting of certain injection protections, which establish procedures for the rejection of Unknown Licenses (as defined in the U.S. Sale Motion and Canadian Sale Motion). All interested bidders should carefully read the Bidding Procedures, and all counterparties to patent licenses with the Sellers should carefully read the Agreement, the U.S. Sale Motion, the Canadian Sale Motion, the Bidding Procedures Order and the Canadian Sales Process Order.

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms and conditions of the Bidding Procedures Order, an auction (the "Auction") to sell the Assets will be conducted at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, or such other location as shall be timely communicated in accordance with the Bidding Procedures, on June 20, 2011 at 9:00 a.m. (ET) (the "Auction Date"). Only the Sellers, Ranger Inc., the Committee, the Bondholder Group, Ernst & Young Inc. in its capacity as Monitor of Nortel Networks Corporation et al. (the "Monitor") and the Administrators (and the advisors to each of the foregoing), any creditor of the U.S. Debtors or Canadian Debtors and any other Qualified Bidder that has timely submitted a Qualified Bid, shall be entitled to attend the Auction in person, and only Ranger Inc. and such other Qualified Bidders will be entitled to make any subsequent bids at the Auction.

PLEASE TAKE FURTHER NOTICE that Ranger Inc. has agreed to take the Assets subject to an abstractedly a) known outbound and cross patent licenses to such Assets granted prior to the signing of the Agreement, as identified by the Sellers, upon the terms and subject to the limitations contained in the Agreement. In an abundance of caution and in furtherance of the Sale, (i) the U.S. Debtors intend to reject any Unknown Licenses (as defined in the U.S. Sale Motion) to such Assets pursuant to section 365 of the Bankruptcy Code, effective as of and conditioned on the occurrence of the Closing, by creation of the U.S. Debtors and Canadian Sale Motion, the Bidding Procedures Order and the Canadian Sales Process Order both to describe the types of patent licenses that will be rejected or terminated by the U.S. Debtors and Canadian Debtors in connection with the Sale.

PLEASE TAKE FURTHER NOTICE that the U.S. Debtors and Canadian Debtors do not intend to reject or terminate certain "Covered Licenses" which consist of Commercial Licenses and certain Intercompany agreements among the Sellers and their affiliates. Inquiries regarding the license rejection procedures, including whether a particular license is a Covered License (i) can be directed to the Monitor at (416) 943-4439 or (866) 942-7177, in the case of license agreements to which the Canadian Debtors are a party, and (ii) can be directed to Cleary Gottlieb Steen & Hamilton LLP at (212) 325-3830, in the case of license agreements to which the U.S. Debtors are a party.

PLEASE TAKE FURTHER NOTICE that the deadline for any counterparty to an Unknown License with the U.S. Debtors or a party in interest in the U.S. Debtors' chapter 11 cases to file and serve an objection to its rejection of any Unknown License is May 31, 2011 at 4:00 p.m. (ET). Such objection shall be served in accordance with the Objection Procedures (as defined below) on the Objection Notice Parties (as defined below), counsel to the Canadian Debtors, and counsel to the Monitor.

PLEASE TAKE FURTHER NOTICE that the deadline for a counterparty to an Unknown License with the U.S. Debtors to elect to retain its rights under such license in accordance with section 365(n)(1)(b) of the Bankruptcy Code is June 6, 2011 at 4:00 p.m. (ET) (the "Notice of Election Deadline"). Any counterparty to an Unknown License with the U.S. Debtors that wishes to retain such rights must file a notice of election to retain such rights (a "Notice of Election") in accordance with the Objection Procedures and serve such notice on: the Objection Notice Parties (as defined below); counsel to the Canadian Debtors; and counsel to the Monitor, including a copy of such Unknown License with the Notice of Election served on counsel to each of the U.S. Debtors, the Canadian Debtors and the Monitor. The U.S. Debtors and the Stalking Horse Purchaser (or other Successful Bidder) reserve their right to object to any Notices of Election on any and all available grounds, which objection(s) will be heard at the Sale Hearing. Any counterparty to an Unknown License with the U.S. Debtors' that does not file and serve a Notice of Election by the notice of Election Deadline as provided in section 365(n)(1)(b) of the Bankruptcy Code. Any Unknown License with the U.S. Debtors that is rejected, the deadline for any counterparty to such Unknown License to file a rejection damages claim against the U.S. Debtors with respect to such rejection will be thirty (30) days following the date of the Closing of the Sale.

PLEASE TAKE FURTHER NOTICE that the deadline for any counterparty to an Unknown License with the Canadian Debtors to come forward and object to the termination of such Unknown License by serving a notice of objection substantially in the form posted on the Monitor's website at www.ey.com/ca/nortel as executed by the Canadian Debtors, counsel to the Monitor, counsel to the U.S. Debtors and counsel to Ranger Inc. is June 6, 2011 at 4:00 p.m. (ET) (the "Canadian License Bar Date"). To the extent that a counterparty comes forward and asserts an Unknown License with the Canadian Debtors prior to the Canadian License Bar Date, with Unknown License is established by court order to be a valid Unknown License prior to the Closing (as defined in the Agreement), the Assets will be sold subject to such license. Any Unknown License with the Canadian Debtors for which the counterparty to such Unknown License does not come forward and object and is not a valid Unknown License prior to the Closing, to the extent such is established by court order, will be terminated and forever barred. Any claim arising from such deemed termination shall be an unsecured claim against the Canadian Debtors, shall be deemed a Restructuring Claim as such term is defined in the Claims Procedure Order granted by the Canadian Court on July 30, 2009, must be filed within thirty (30) days of the state of Closing and must otherwise be in compliance with the Claims Order.

PLEASE TAKE FURTHER NOTICE that, in addition to the foregoing license rejection procedures, the U.S. Debtors and the Canadian Debtors have agreed as part of the transaction to various limitations and prohibitions on their rights to move, extend, assign, amend, waive or modify contracts containing licenses to the patents offered for sale, including outbound and cross patent licenses and certain Bonds incorporated in Commercial Licenses, Intercompany Licenses (as defined in the Sale Order and the Vesting Order, each as defined below) and certain agreements entered into in connection with the divestiture of Nortel's business units, as set forth in paragraph 28 of the proposed Sale Order annexed to the U.S. Sale Motion (the "Sale Order") and paragraph 9 of the proposed Approval and Vesting Order annexed in the affidavit of George Riedel contained in the Canadian Sale Motion (the "Vesting Order"). All counterparties to contracts with the Sellers should carefully read the U.S. Sale Motion and the proposed Sale Order annexed thereto and the Canadian Sale Motion and the proposed Approval and Vesting Order attached to the affidavit of George Riedel contained in the Canadian Sale Motion.

PLEASE TAKE FURTHER NOTICE that a joint hearing (the "Sale Hearing") will be held before the Honorable Kevin Gross, United States Bankruptcy Judge and the Honorable Justice Morawetz of the Ontario Superior Court of Justice (Commercial List), which hearing is currently scheduled to be held on June 30, 2011 at 10:00 a.m. (ET) or at such other time as the Courts permit, in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801 and the Ontario Superior Court (Commercial List) at 393 University Ave, Toronto, Ontario to confirm the results of the Auction, approve the sale of the U.S. Debtors' and Canadian Debtors' respective interests in the Assets to Ranger Inc. or the Successful Bidder and approve the rejection of the Unknown Licenses with the U.S. Debtors and the Canadian Debtors. The U.S. Debtors and the Canadian Debtors may each adjourn their respective Sale Hearings one or more times without further notice by making an announcement in open Court or, in the case of the U.S. Debtors, by the filing of a hearing agenda pursuant to Local Rule 9029-3 and asking the adjournment as in the case of the Canadian Debtors, by providing notice to the service list in the Canadian Debtors' Companies' Creditors Arrangement Act proceedings (the "Canadian Service List").

PLEASE TAKE FURTHER NOTICE that, except as described above, pursuant to the Bidding Procedures Order, the Bankruptcy Court has currently set: (a) June 13, 2011 at 4:00 p.m. (ET) as the deadline for all general objections to the U.S.'s Sale Motion, including all objections to the sale of the Assets; (b) June 13, 2011 at 4:00 p.m. (ET) as the Bid Deadline (as define the Bidding Procedures); and (c) June 28, 2011 at 4:00 p.m. (ET) as the deadline for supplemental objections regarding objections to issues arising from and in connection with the Auction and/or the Sellers' selection of a Successful Bid made by a Successful Bidder other than Ranger Inc. Except as described above, pursuant to the Canadian Sales Process Order, the Canadian Court has currently set: (a) June 13, 2011 at 4:00 p.m. (ET) as the Bid Deadline.

PLEASE TAKE FURTHER NOTICE that all objections to the U.S. Sale Motion must be: (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the Bankruptcy Rules and the Local Rules; (iv) filed with the Clerk of the Bankruptcy Court, 824 Market Street, Wilmington, Delaware 19801, on or before the General Objection Deadline, or other applicable deadline as indicated above; and (v) served in accordance with the Local Rules so as to be received on or before the relevant objection deadline by the following at the addresses provided in the Bidding Procedures and U.S. Sale Motion: (i) counsel to the U.S. Debtors; (ii) counsel to the Canadian Debtors; (iii) counsel to the Bondholder Group, and (iv) the Office of the United States Trustee (collectively the "Objection Notice Parties") such procedures the "Objection Procedures").

PLEASE TAKE FURTHER NOTICE that this notice is a summary only and is subject to the full terms and conditions of the Agreement, the U.S. Sale Motion, the Canadian Sale Motion, the Bidding Procedures Order, the Canadian Sales Process Order and the Bidding Procedures, and you should review such documents in their entirety. Copies of the Agreement, the U.S. Sale Motion, and the Bidding Procedures Order (including the Bidding Procedures approved by the Bankruptcy Court) may be examined by interested parties between the hours of 8:00 a.m. and 4:00 p.m. (ET) at the office of the Clerk of the Court, 824 Market Street, Wilmington, Delaware 19801, or by appointment during regular business hours at the offices of the U.S. Debtors' attorneys: Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attention: James L. Bromley and M.E. Schweitzer. Additionally, copies of these documents may be downloaded from the Bankruptcy Court's docket at www.deb.uscourts.gov and from the website of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC at http://dm.epiq11.com/nortel. Copies of the Agreement, Canadian Sale Motion and Canadian Sales Process Order (including the Bidding Procedures approved by the Canadian Court) and the Canadian Service List can be viewed at the Monitor's website at http://www.ey.com/ca/nortel or by contacting the Monitor by telephone at 1-416-943-4439 or 1-866-942-7177 or by fax (1-416-943-2854).

PLEASE TAKE FURTHER NOTICE that dates set forth in this notice are subject to change, and further notice of such changes may not be provided except through announcements in open court and/or the filing of notices and/or amended agendas. Parties in interest are encouraged to monitor the electronic court docket, the noticing agent website and/or the Monitor's website for further updates.

Dated: May 2, 2011, Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP, James L. Bromley (admitted pro hac vice), Lisa M. Schweitzer (admitted pro hac vice), One Liberty Plaza, New York, New York 10006, Telephone: (212) 225-2000, Facsimile: (212) 225-3999, -and- MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Derek C. Abbott (No. 3376), Eric D. Schwartz (No. 3134), Ann C. Cordo (No. 4817), 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19801, Telephone: (302) 658-9200, Facsimile: (302) 658-3989, Counsel for the U.S. Debtors and U.S. Debtors in Possession -and- OGILVY RENAULT LLP, Suite 3800, Royal Bank Plaza, South Tower, 200 Bay Street, Toronto, Ontario M5J 2Z4 CANADA, Derrick Tay LSUC# 21153A, Telephone: (416) 216-3127, Email: dtay@ogilvyrenault.com, Jennifer Stam LSUC# 46735S, Telephone: (416) 216-4823, Email: jstam@ogilvyrenault.com, Fax: (416) 216-3930, Lawyers for Canadian Debtors

---

NEWS ANA

# Carr
# in f
# valu

Division
to reva

By Stanle

When La four unveiled the grou ture in spoke o four wit and sharehc

In th a share p cent ab over b in a over th reve

Divi tion o bly of its Euro separ perm push to inside

Th the Ca Arm .com .com an rig thi al mu aff re

APPENDIX "H"

[ATTACHED]

NNC-NNL11755866 / 284

EXECUTION VERSION

## COMMERCIAL LICENSES ACKNOWLEDGMENT

This acknowledgment dated as of June 30, 2011 (the "**Acknowledgment**") is provided by Rockstar Bidco, LP (the "**Purchaser**") to:

(i)     Nortel Networks Corporation, a corporation organized under the laws of Canada ("**NNC**");

(ii)    Nortel Networks Limited, a corporation organized under the laws of Canada ("**NNL**");

(iii)   Nortel Networks Inc., a corporation organized under the laws of Delaware ("**NNI**");

(iv)    the entities listed in <u>Exhibit A</u> hereto (the "**EMEA Sellers**") which, in the case of Nortel Networks UK Limited (in administration) ("**NNUK**"), Nortel Networks France S.A.S. (in administration) and Nortel GmbH (in administration) are acting by Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (the "**UK Joint Administrators**") and in the case of Nortel Networks (Ireland) Limited (in administration) is acting by David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom (the "**Irish Joint Administrators**") (the UK Joint Administrators and the Irish Joint Administrators being collectively, the "**Joint Administrators**"), and in the case of Nortel Networks S.A. (in administration and *liquidation judiciaire*) ("**NNSA**") is acting by the UK Joint Administrators and Maître Cosme Rogeau, 26 avenue Hoche, 78000 VERSAILLES appointed as *mandataire liquidateur* by the French Court (as defined below) (the "**French Liquidator**"), the Joint Administrators act as agents of the EMEA Sellers without any personal liability and the French Liquidator acts as agent of NNSA without any personal liability;

(v)     the entities listed in <u>Exhibit B</u> hereto;

(vi)    the French Liquidator; and

(vii)   the Joint Administrators.

The parties referred to in (i) through (v) are referred to collectively as the "**Sellers**".

The parties referred to in (i) through (vii) are referred to collectively as the "**Selling Parties**".

## W I T N E S S E T H

WHEREAS the Selling Parties have entered into an asset sale agreement dated as of June 30, 2011, among the Selling Parties and the Purchaser (as the same may be further amended, restated, amended and restated or modified, the "**Sale Agreement**") pursuant to which the Sellers are selling the Assets (as defined in the Sale Agreement) to the Purchaser. The sale of the Assets shall be referred to herein as the "**Transaction**".

Doc#: US1:7018421v1

WHEREAS under the Sale Agreement, the Assets are sold subject to, *inter alia*, Commercial Licenses (as such term is defined in the Sale Agreement) entered into prior to the date of the Sale Agreement.

WHEREAS the Selling Parties wish to clarify with the Purchaser the Selling Parties' characterization of certain agreements between the Sellers, or any of them, and certain third parties as Commercial Licenses.

NOW, THEREFORE, The Purchaser acknowledges as follows:

1.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Sale Agreement.

2.  All agreements listed in Schedule "A" hereto, as well as all amendments and supplements thereto (whether or not listed in Schedule "A") and all agreements that are substantially similar to those listed in Schedule "A" (and with licensing terms that are substantially similar to or no more broad than the licensing terms in the agreements listed in Schedule "A") and that are between any of the Sellers and the counterparties to the agreements listed in Schedule "A" and their respective affiliates, as well as all amendments and supplements thereto (collectively, the "**Subject Agreements**") shall be deemed to constitute Commercial Licenses.

3.  Notwithstanding any provision to the contrary in the Sale Agreement, the Purchaser shall purchase the Assets subject to any licenses granted under the Subject Agreements, if any, and shall have no entitlement to indemnification or other remedy from any of the Sellers, including in respect of Damages suffered, or that may be suffered, as a result of the existence of any licenses granted under the Subject Agreements.

4.  The Purchaser acknowledges that the list of Subject Agreements attached hereto as Schedule "A" is not, and is not intended to be, an exhaustive list of all Commercial Licenses to which the Assets are subject. For greater certainty, the Purchaser shall purchase the Assets subject to the Commercial Licenses entered into prior to the date of the Sale Agreement and thereafter in accordance with the terms of the Sale Agreement, whether or not such licenses have been identified on Schedule "A" hereto or elsewhere.

5.  Listing of a particular Subject Agreement on Schedule "A" hereto is not intended by the Parties to be, and shall not be, an acknowledgment or evidence that any such agreement remains in force as of the date of execution of this Acknowledgment or that any such agreement provides any license rights whatsoever to any third party.

6.  Listing of a particular Subject Agreement on Schedule "A" hereto is not intended by the Parties to be, and shall not be, an acknowledgment or evidence that any particular Seller or its affiliates that is party to such Subject Agreement has any rights in any particular Asset that is the subject of the Transaction.

NNC-NNL11755866 / 286

7.    This Acknowledgment shall be binding upon the Purchaser and its successors and
      permitted assigns.

8.    No failure to exercise, and no delay in exercising, any right, remedy, power or privilege
      under this Acknowledgment by any Selling Party will operate as a waiver of such right,
      remedy, power or privilege, nor will any single or partial exercise of any right, remedy,
      power or privilege under this Acknowledgment preclude any other or further exercise of
      any right, remedy, power or privilege.  No Selling Party will be deemed to have waived
      any acknowledgment provided herein unless such waiver is in writing, and then such
      waiver shall be limited to the circumstances set forth in such written waiver.

**ROCKSTAR BIDCO, LP**
by: Rockstar Bidco GP, LLC, *its general
partner*

By: _____

Name: Kasim Alfalahi.
Title: Vice President.

NNC-NNL11755866 / 287

EXECUTION VERSION

**EXHIBIT A – EMEA Sellers**

Nortel Networks UK Limited (in administration)
Nortel Networks S.A. (in administration and *liquidation judiciaire*)
Nortel Networks (Ireland) Limited (in administration)
Nortel Networks France S.A.S. (in administration)
Nortel GmbH (in administration)

Doc# US1:7018421v1

NNC-NNL11755866 / 288

**EXHIBIT B – Other Sellers**

NN Applications Management Solutions Inc.
Nortel Altsystems, Inc. (previously "Alteon Networks, Inc.")
CoreTek, Inc.
Qtera Corporation
Xros, Inc.

Doc# US1.7018421v1