

To: Waida, Christian [MOP:8310:EXCH][christian.waida@americasm01.nt.com]; Gill, Dara [MOP:8310:EXCH][daragill@americasm01.nt.com]
Cc: Corser, Philip[]
From: Ufland, Richard
Sent: Mon 19/12/2005 1:01:33 PM
Subject: Intra-group loans
LIB01 1598703 v1 - Nortel - note on intra group loans.DOC
LIB01 1597704 v2 - Nortel written record of decisions.DOC

Confidential

---

Christian/Dara

I refer to our telcon last week and now attach a formal note of our advice in this matter.

Our aim has been to keep the note relatively concise and we have not therefore gone in much detail into the underlying jurisprudence, but, if you would like us to do so, we would of course be happy to provide a fuller note.

With regard to the proposed change to the objects clause of NNUK, I am attaching a draft resolution, as referred to in our note. If this is signed, we would of course be happy to arrange on your behalf for this to be filed at Companies House - it will also be necessary to produce a new print of the company's memorandum of association and file that. No doubt you will let us know if you would like us to do this.

I imagine that you may have some further queries or thoughts after reading our note. If so, please do not hesitate to get in touch with me or Philip.

Kind regards
Richard

Direct dial: +44 (0)20 7296 5712
Fax: +44 (0)20 7296 2001
Switchboard: +44 (0)20 7296 2000
Email: richard.ufland@lovells.com

---

Lovells is an international law firm.

CONFIDENTIALITY. This email and any attachments are confidential and may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.



Confidential

EMEAPRIV0278921

# Lovells

**Memorandum**

| | | | |
|---|---|---|---|
| **To** | Christian Waida<br>Dara Gill | **Location** | Nortel Networks (UK) Limited |
| **Copy** | Philip Corser | | Lovells |
| **From** | Richard Ufland | **Location** | Lovells |
| **Date** | 19 December 2005 | **Telephone** | +44 20 7296 5712 |

**Nortel Intra-Group Loans**

This note sets out our advice, as outlined in our telephone conference with you on 13 December 2005, on the following three issues raised in your note of 12 December 2005.

A   *Are there any particular corporate law matters which the Directors of Nortel Networks UK Limited ("NNUK") should consider in making their decision to increase/extend the loan facilities outlined in your note?*

B   *What considerations should the Directors generally take into account when making funds available to other Nortel group companies.*

C   *In evaluating whether NNUK is in a position to meet its obligations as they fall due is it reasonable, absent evidence to the contrary, to assume that loans to other Nortel group companies will realise book value? Is this something the Directors will need to take into account in making their assesments?*

**A.   Interests of the company**

Under English law directors of a company are bound to exercise their powers bona fide in what they consider to be in the interests of the company. The interests of the company refer in this context to its interests as a commercial entity - these are to be judged by reference to the interests of present and future shareholders, except where a company is insolvent or on the verge of insolvency when the interests of the creditors become paramount. (Under the Companies Act directors are also to have regard to the interests of the company's employees and in practice they may also have regard to the interests of customers, creditors and in some cases to the general public, but the only circumstances in which directors can legitimately promote the interests of these other groups are where this ultimately advances the interests of the shareholders.)

The same principle applies to the directors of a company in a group. Each company in a group is a separate legal entity and the directors of a particular group company are not entitled to sacrifice the interests of that company (in the absence of specific shareholder authorisation - as to which see below) to the interests of other members of its group. Indeed, case law states that the test should be whether an intelligent and honest man in the position of a director of the company concerned could, in the whole of the existing circumstances, reasonably believe that the relevant transactions are for the benefit of the company.

This means in relation to the loans between NNUK and the other members of the group that the directors of NNUK in authorising the making of the loans (or agreeing to an extension or renewal of them) should satisfy themselves that either the loans stand up by themselves as an

LIB01/C3RMU/1596447.1

appropriate use by NNUK of its surplus cash or that the assistance which NNUK is giving to the other members will indirectly be of benefit to NNUK and that NNUK has sufficient funds to be able to pay all its debts as they fall due for the foreseeable future after making these loans. Given the importance to NNUK of its parent company NNL and, as we understand it, the other members of the group, we would not have thought that it should be difficult for the directors of NNUK to conclude that the making of the loans is in the best interests of NNUK. It is however important that when the loans are made to group members other than any subsidiaries of NNUK itself the directors are reasonably satisfied that they will be repaid by the debtor group companies since otherwise there is a risk that the making of the loans could be treated as an unlawful distribution unless NNUK had distributable reserves equal to the principal amount of the loan - see the paragraph headed "Aveling Barford" below.

If NNUK were itself insolvent or on the verge of insolvency, then the interests of the company's creditors would become paramount and the directors would have to consider how any such loans would impact on their position before making such loans. In any event the directors of a company which is in such a position would be well advised to call in an insolvency practitioner and not make any material dispositions of property without having received advice from the practitioner concerned.

**Objects clause**

Two of the loans which NNUK currently has outstanding (to NNL and to NN Israel) are non-interest bearing. The directors are entitled to make such loans, without requiring payment of interest, where, as presumably here, they consider that to be in the interests of the company. However as a matter of caution we would generally recommend that the company makes sure that in its memorandum of association it makes it clear that it has an object as opposed to a mere power which provides for the making of loans to group members without receiving any benefit or advantage. The reason for this is to avoid any doubt that such a transaction is fully intra vires – furthermore if it is one of the company's purposes set out in its memorandum of association to make interest free loans to subsidiaries then it would seem difficult for anyone to argue that the making of such loans is not in the company's best interests given that the directors are giving effect to the company's purposes by entering into such transactions. NNUK has as one of the paragraphs in its objects clause the making of loans but this does not specifically provide for them to be interest free where they are made to group members and we therefore suggest expanding the wording to make this clear and moving the provision further up in the objects clause so that it looks more like one of the main purposes of the company.

**Shareholder authorisation**

If the making of intra group loans is specifically authorised or ratified by shareholders by way of shareholder resolution then, assuming that NNUK is solvent, that should provide the directors with a complete defence to any possible claim that they have not considered the interests. Most breaches of duty on the part of directors can be ratified by an ordinary resolution of a general meeting of shareholders – there are some limitations on this principle in respect of particular breaches such as those involving a failure of honesty which would not apply here. It is worth noting however that even breaches which cannot be ratified by ordinary resolution can be cleansed where the approval of all shareholders is obtained provided that the breach is not ultra vires the company and does not involve a fraud on the company's creditors.

Furthermore, if the shareholders direct, as opposed to merely authorise, the directors to carry out an action (which the shareholders are entitled to do under NNUK's articles by special resolution), then this effectively robs the directors of any discretion in the matter and therefore in our view provides an even more robust defence against any claim that the directors have failed properly to take into account the company's best interests. It is not possible for the shareholders to make such a direction in relation to loans which have already been made. We therefore suggest that they formally ratify the making of those loans and give a direction in respect of any extensions or

Christian Waida/Dara Gill — 3 —  19 December 2005

renewals of those loans or in respect of the grant of new loans which may be made in the future. We have included appropriate wording in the attached draft resolution.

**Aveling Barford**

The 1989 case of Aveling Barford Ltd v Perion Ltd raises some legal issues which are relevant to intra group loans.

That case concerned a sale of land by the plaintiff to a company controlled by the same person as controlled the plaintiff shortly before the plaintiff became insolvent - it was found that the sale was known and intended to be a sale at an undervalue and the judge held the transaction to amount to an unlawful distribution. Following this case there was some concern that this principle could be extended to make a range of intra group transactions potentially unlawful, including intra group loans which did not carry interest at a commercial rate. There have however not been any subsequent cases to indicate how the courts might apply this principle in different situations.

In our view the provision of a loan to a group company on an interest-free basis should not be considered as analogous to a sale at an undervalue. The company making the loan clearly is not maximising its return on the money employed but the company is not actually depleting its existing assets, assuming that it reasonably expects the loan to be repaid in due course. Therefore we do not consider that the mere fact that an intra group loan is interest free runs the risk that it could be regarded as an unlawful distribution.

However, if the directors of NNUK make a loan which they have no reasonable expectation at the time of grant or renewal will be repaid, then the position is different. In that case, given that NNUK has, we understand, a deficiency on realised profits, there would be a real concern then that the making of the loan whether or not it carries a commercial rate of interest could fall to be treated as an unlawful distribution.

**Conclusion**

NNUK's directors will not be in breach of their duties if they authorise loans to group companies, even on interest-free terms or at interest rates below market rates, provided that they reasonably consider at the time when the loans are made that they are overall in NNUK's own interests, even if the benefit will be indirect.

It would, however, be advisable for the directors to protect themselves against any future claims by:

(i) arranging for the company's objects clause to be amended to ensure that it explicitly allows intra-group loans on non-market terms;

(ii) obtain a direction from shareholders for the making of all future loans; and

(iii) obtain shareholder ratification for past loans.

It is important that NNUK's directors should at the time of making the loans reasonably expect repayment in due course from the debtor company - otherwise there is a risk that the loans could be treated as unlawful capital distributions, at least if NNUK does not have distributable profits equal to the amount which is expected not to be repaid.

If at any stage there is any doubt about NNUK's solvency, then at that time the directors must be particularly careful to ensure that their actions do not prejudice creditors' interests. In such situations, shareholder ratification will not protect the directors.

Do let me know if you have any further questions arising from the above.

Christian Waida/Dara Gill — 4 — 19 December 2005

Company Number: 03937799

The Companies Act 1985

A private company limited by shares

Written record of the decisions of the sole member of

**Nortel Networks UK Limited**

(the "Company")

provided pursuant to section 382B(1) of the Companies Act 1985

(decisions taken on [● December 2005])

Pursuant to section 382B(1) of the Companies Act 1985, the sole member of the Company has provided the Company with a written record of the following decisions taken on [● December 2005], being decisions which may be taken by the Company in general meeting and which have effect as if agreed by the Company in general meeting as special resolutions of the Company.

**Resolutions**

1. THAT the memorandum of association of the Company be altered with respect to the statement of the Company's objects:

    (a) by deleting the words "including (without limiting the generality of the foregoing) any holding, subsidiary or associated company of the Company" from the existing sub-clause 3(16);

    (b) by deleting the words ", and "holding company" and "subsidiary undertaking" shall have the same meanings as in the Companies Act 1985, as amended" from the existing sub-clause 3(25);

    (c) by inserting the words set out below at the end of the final (unnumbered) paragraph of clause 3

    "The words "holding company" and "subsidiary undertaking" in this Clause shall have the same meanings as in the Companies Act 1985, as amended."; and

    (d) by inserting the wording set out below as new sub-clauses 3(6) and 3(7) after the existing sub-clause 3(5) and renumbering the existing sub-clauses 3(6) and 3(7) as 3(8) and 3(9) and renumbering all subsequent sub-clauses accordingly

    "(6) to advance or lend money or give credit to any holding company or subsidiary undertaking of the Company or any subsidiary undertaking of

LIB01/C3PRLC/1597704.2

any holding company of the Company whether with or without receiving any interest or other advantage or benefit for or in relation to such advances, loans or credit;

(7) to guarantee or give indemnities or provide security, whether by personal covenant or by mortgage or charge upon all or any part of the undertaking, property and assets (present and future) and the uncalled capital of the Company, or by all or any such methods for the performance of any contracts or obligations, and the payment of capital or principal (together with any premium) and dividends or interest on any shares, debentures or other securities, of any holding company or subsidiary undertaking of the Company or any subsidiary undertaking of any holding company of the Company, whether with or without receiving any advantage, consideration or other benefit for granting any such guarantee, indemnity or security;".

2. THAT:

(a) the existing loans which have been made by the Company to other members of the Company's group as set out in Part 1 of the Schedule to this Resolution be hereby ratified; and

(b) the directors of the Company be hereby directed to extend, renew or grant (as the case may be) the loans set out in Part 2 of the Schedule to this Resolution.

Signed: _____     Date: _____
For and on behalf of
Nortel Networks Limited

C

TR31174

Subject to Joint Privilege

## Schedule

## Loans to be made by Nortel Networks UK Limited

1. Part 1

    Company                         Loan amount
    [●]                             [●]

2. Part 2

    Company                         Loan amount
    [●]                             [●]