

C

TR45067.02

# GUARANTEE

DATED                    2007

BY

NORTEL NETWORKS LIMITED

FOR

NORTEL NETWORKS UK PENSION TRUST LIMITED
AS TRUSTEE OF THE NORTEL NETWORKS UK PENSION PLAN

4130204_2.DOC

JOINT PRIVILEGED DOCUMENT           HIGHLY CONFIDENTIAL           NNC-NNL08190906 / 1

C                                                                                          TR45067.02

## CONTENTS

**Clause**                                                                                          **Page**

1............................................................................................................Interpretation    1
2.......................................................................................................... Guarantee    3
3.......................................................................................................... Payments    6
4..............................................................................Representations and Undertaking    6
5..........................................................................................Changes to the Parties    7
6.......................................................................................................... Severability    8
7..........................................................................................................Counterparts    8
8.......................................................................................................... Notices    8
9.......................................................................................................... Taxes    9
10.......................................................................................................... Language    10
11.......................................................................................................... Governing law    10
12.......................................................................................................... Enforcement    10

**Schedules**

Form of Demand ........................................................................................................... 9

Signatories…………….................................................................................... 13

C                                                                                          TR45067.02

**THIS GUARANTEE** is dated                                                                                  2007

BETWEEN:

(1)     **Nortel Networks Limited** (a company registered in Canada with number 125147-3 and
        principal place of business at 195 The West Mall, Toronto, Ontario, M9C 5K1 ) (the
        "**Guarantor**"); and

(2)     **Nortel Networks UK Pension Trust Limited** (a company registered in England and Wales
        with number 2091890 whose registered office is at Maidenhead Office Park, Westacott Way,
        Littlewick Green, Maidenhead, Berkshire, SL6 3QH) as trustee of the Nortel Networks UK
        Pension Plan (the "**Beneficiary**").

**IT IS AGREED** as follows:

1.      **INTERPRETATION**

1.1     **Definitions**

        In this Agreement:

        **Accounts** means the audited balance sheet as at the end of, and the audited profit and loss
        account of the Vendor for, any financial period of the Company ended before 30 June 2012

        **Agreement** means this Guarantee.

        **Business Day** means a day (other than a Saturday or a Sunday) on which banks are open for
        general business in both (i) Toronto, Ontario, Canada and (ii) London, England.

        **Company** means Nortel Networks UK Limited (registered in England and Wales with number
        03937799) whose registered office is at Maidenhead Office Park, Westacott Way, Littlewick
        Green, Maidenhead, Berkshire, SL6 3QH.

        **Demand** means a written demand made by the Beneficiary to the Guarantor in the form set out
        at Schedule 1 to this Agreement.

        **Expiry Date** means the earlier of

        (a)     30 June 2012;

        (b)     the payment in full of the Guaranteed Obligation.

        **Guaranteed Obligation** means the lower of either (a) the sum of £[ ] payable by the Guarantor
        to the Beneficiary under or in connection with clause 2.1 of this Agreement or, (b) the amount
        of the Scheme's deficit [calculated on the buy-out basis], if, at the date the Guaranteed
        Obligation becomes due, the Scheme's deficit [calculated on the buy-out basis] is less than £[*the
        sum above*], in each case reduced by clause 2.2(iv) and 2.2(v).

        **Insolvency Act** means the Insolvency Act 1986, an Act of Parliament of England & Wales.

        **Insolvency Event** means in relation to the Company, a court making a winding up order or an
        order for the dissolution or liquidation of the Company or a liquidator being appointed to the
        Company.

                                                                                        4130204-1

TR45067.02

**Material Adverse Effect** means a material adverse effect on:

(a)    the ability of the Guarantor to perform its payment obligations under this Agreement;

(b)    the validity or enforceability of this Agreement;

(c)    any right or remedy of the Beneficiary under this Agreement.

**NNC** means Nortel Networks Corporation, a company registered in Canada with number 375438-3 with a principal place of business at The West Mall, Toronto, Ontario, M9C 5KL .

**Pensions Act** means the Pensions Act 2004, an Act of Parliament of England & Wales.

**Reservations** means:

(a)    the principle that equitable remedies are remedies which may be granted or refused at the discretion of the court and damages may be regarded as an adequate remedy;

(b)    the limitation on enforcement as a result of laws relating to bankruptcy, insolvency, liquidation, reorganisation, court schemes, moratoria, administration and other laws affecting the rights of creditors generally;

(c)    the statutory time-barring of claims;

(d)    defences of set off or counterclaim;

(e)    rules against penalties and similar principles;

(f)    the possibility that an undertaking to assume liability for, or indemnify a person against, non-payment of stamp duty may be void;

(g)    the fact that a court may refuse to give effect to a purported contractual obligation to pay costs imposed upon another person in respect of costs of an unsuccessful litigation brought against that person or may not award by way of costs all of the expenditure incurred by a successful litigant in proceedings brought before that court or that a court may stay proceedings if concurrent proceedings based on the same grounds and between the same parties have previously been brought before another court,

and any other reservations or qualifications of law contained in any legal opinion delivered to the Company, the Beneficiary or the Guarantor in respect of this Agreement.

**Scheme** means the Nortel Networks UK Pension Plan currently governed by the Consolidated Definitive Trust Deed and Rules made between the Company and the Beneficiary dated 21 August 2003 (as supplemented or amended from time to time).

1.2    **Construction**

(a)    In this Guarantee, unless the contrary intention appears, a reference to:

        (i)    **assets** includes present and future properties, revenues and rights of every description;

        (ii)    an **authorisation** includes an authorisation, consent, approval, resolution, licence, exemption, filing, registration or notarisation;

4130204-1

C

(iii)    a **person** includes any individual, company, corporation, unincorporated association or body (including a partnership, trust, joint venture or consortium), government, state, agency, organisation or other entity whether or not having separate legal personality;

(iv)    a **regulation** includes any regulation, rule, official directive, request or guideline (whether or not having the force of law but, if not having the force of law, being of a type with which persons to which it applies are accustomed to comply) or any governmental, inter-governmental or supranational body, agency, department or regulatory, self-regulatory or other authority or organisation;

(v)    a **currency** is a reference to the lawful currency for the time being of the relevant country;

(vi)    a **provision of law** is a reference to that provision as extended, applied, amended or re-enacted and includes any subordinate legislation;

(vii)    a Clause, a Subclause or a Schedule is a reference to a clause or subclause of, or a schedule to, this Agreement;

(viii)    a party to this Agreement or any other person includes its successors in title, permitted assigns and permitted transferees; and

(ix)    a **time of day** is a reference to London time.

(b)    Unless the contrary intention appears, a reference to a **month** or **months** is a reference to a period starting on one day in a calendar month and ending on the numerically corresponding day in the next calendar month or the calendar month in which it is to end, except that:

(i)    if the numerically corresponding day is not a Business Day, the period will end on the next Business Day in that month (if there is one) or the preceding Business Day (if there is not);

(ii)    if there is no numerically corresponding day in that month, that period will end on the last Business Day in that month; and

(iii)    notwithstanding subparagraphs (i) and (ii) above, a period which commences on the last Business Day of a month will end on the last Business Day in the next month or the calendar month in which it is to end, as appropriate.

(c)    The headings in this Agreement do not affect its interpretation.

**2.    GUARANTEE**

**2.1    Guarantee**

Subject at all times to Clauses 2.2 and 3.6, the Guarantor irrevocably and unconditionally guarantees to the Beneficiary its performance of the Guaranteed Obligation, when due, in the event that:

(a)    an Insolvency Event occurs; and

4130204-1

(b)    a Demand is subsequently delivered to the Guarantor.

**2.2   Limitations**

(a)    The guarantee contained in this Agreement is given subject as follows:

(i)    any Demand made under this Agreement shall be addressed to the Guarantor and shall be delivered if given in person at or sent by registered delivery post, courier or fax to the address or fax number set out in clause 8.2 of this Agreement or such other address or fax number as may be notified in writing by the Guarantor to the Beneficiary from time to time by not less than 7 days' notice. A Demand served by fax shall only be deemed to be received by the Guarantor if the Beneficiary has obtained a successful delivery receipt for the transmission;

(ii)    no amendment to this Agreement, nor the terms of any other agreement between the Company and the Beneficiary, shall have the effect of increasing the Guaranteed Obligation or accelerating the time for payment thereof, unless the Guarantor has agreed in writing to any such amendment and this Guarantee is amended accordingly;

(iii)    no Demand may be made under this Agreement after 11a.m. (London time) on the Expiry Date; and

(iv)    notwithstanding any other provision of this Agreement, in the event that the Company or any persons connected with or associated to it (as such terms are defined in sections 249 and 435 of the Insolvency Act) (which shall include, for the avoidance of doubt, the Guarantor, NNC and any of NNC's subsidiary companies and corporations) make any payments to the Scheme under a contribution notice or financial support direction issued by the United Kingdom Pensions Regulator under the provisions of Part 1 Pensions Act, such payments due under any such contribution notice and financial support direction shall reduce the Guaranteed Obligation on a pound-for-pound basis;

(v)    this Agreement shall terminate forthwith with effect from the date of publication by the Company of Accounts that state that the Scheme is not in deficit on [Financial Reporting Standard 17 basis (as amended or renumbered from time to time as issued by the Accounting Standards Board)] and the Guarantor shall have no further liability to the Beneficiary under this Agreement.

**2.3   Reinstatement**

If any discharge or arrangement is made in whole or in part on the faith of any payment, security or other disposition which is avoided or must be restored on insolvency, liquidation or otherwise without limitation, the liability of the Guarantor under this Clause will continue as if the discharge or arrangement had not occurred.

**2.4   Waiver of defences**

Subject to Clauses 2.2 and 3.6, the obligations of the Guarantor under this Clause will not be affected by any act, omission or thing which, but for this provision, would reduce, release or prejudice any of its obligations under this Clause. This includes:

4130204-1

C

TR45067.02

(a)     any time or waiver granted to, or composition with, any person;

(b)     any release of any person under the terms of any composition or arrangement ;

(c)     the taking, variation, compromise, exchange, renewal or release of, or refusal or neglect to perfect, take up or enforce, any rights against, or security over assets of, any person;

(d)     any non-presentation or non-observance of any formality or other requirement in respect of any instrument or any failure to realise the full value of any security (other than a failure to present a Demand as required by this Agreement);

(e)     any incapacity or lack of power, authority or legal personality of or dissolution or change in the members or status of any person; or

(f)     any unenforceability, illegality, invalidity or non-provability of any Guaranteed Obligation due in any such case to the insolvency, bankruptcy, reorganisation, or liquidation of the Company.

**2.5     Subrogation/Non-competition**

Upon payment of the Guaranteed Obligation by or on behalf of the Guarantor, the Guarantor (or its nominee) shall thereupon be subrogated to the rights and benefits of the Beneficiary provided that such subrogated rights of the Guarantor (or its nominee) shall be and remain subject and subordinate to the rights of the Beneficiary as provided in this Clause 2.5. Unless the Beneficiary otherwise directs, the Guarantor will not, during a period following the service of a Demand and only while the same Demand remains unsatisfied in full:

(i)     exercise any rights in the nature of subrogation with respect to any rights, security or moneys held, received or receivable by any Beneficiary (or any trustee or agent on its behalf);

(ii)    exercise any right of contribution or indemnity in respect of any payment made or moneys received on account of the Guarantor's liability under this Clause;

(iii)   claim, rank, prove or vote as a creditor of the Company or its estate in competition with the Beneficiary (or any trustee or agent on their behalf) in respect of amounts owing under this Guarantee only **provided** however that subject to the final sentence of this Clause 2.5 the Guarantor shall not be prohibited from filing or proving any such claim to the extent (A) that the Guarantor would otherwise be barred from proving or asserting such claim later if application is not made during such period, and (B) the rights of the Guarantor under any such claim are, during such period, subordinate to the rights of the Beneficiary and any distribution received on account of any such claim during such period is held in trust for the benefit of the Beneficiary and transferred to the Beneficiary in accordance with the final sentence of this Clause 2.5; or

(iv)    receive, claim or have the benefit of any payment, distribution or security from or on account of the Company (except as provided in the immediately-preceding sub-clause), or exercise any right of set-off as against the Company in each case in respect of amounts owing under this Guarantee only.

The Guarantor must hold in trust for and immediately pay or transfer to the Beneficiary any payment or distribution or benefit of security received by it during such period contrary to this Clause or in accordance with any directions given by the Beneficiary under this Clause.

4130204-1

C

TR45067.02

**3.      PAYMENTS**

**3.1     Due date for payments**

(a)      Any payment due from the Guarantor to the Beneficiary following the service of a Demand under this Agreement shall be due within [20] Business Days of the date of delivery of such Demand on the Guarantor by the Beneficiary.

(b)      For the avoidance of doubt, provided the requirements of Clause 2.1 of this Agreement have been satisfied when making a Demand and subject to Clause 3.6, it is not necessary for the Beneficiary to have taken court action against the Company to recover the Guaranteed Obligations before such Demand will become payable by the Guarantor.

**3.2     Funds**

Payments under this Agreement to the Beneficiary must be made for value on the due date at such times and in such manner as the Beneficiary may specify to the Guarantor in a Demand.

**3.3     Currency**

Any amount payable under this Agreement is payable in Sterling.

**3.4     No set-off or counterclaim**

All payments made by the Guarantor under this Agreement must be made without set-off or counterclaim.

**3.5     Business Days**

If a payment under this Agreement is due on a day which is not a Business Day, the due date for that payment will instead be the next Business Day in the same calendar month (if there is one) or the preceding Business Day (if there is not).

**3.6     No Double Recovery or Greater Recovery**

(a)      For the avoidance of doubt, nothing in this Agreement entitles the Beneficiary to recover from the Guarantor an amount of the Guaranteed Obligations which has been paid by the Company to the Beneficiary, except insofar as payment of the amount concerned by the Company is or is claimed to be, by reason of the operation of any law relating to insolvency, bankruptcy or reorganization, void, voidable, unenforceable, or is otherwise required to be disgorged.

For the avoidance of doubt, nothing in this Agreement entitles the Beneficiary to recover from the Guarantor any amount save the Guaranteed Obligation.

**4.      REPRESENTATIONS AND UNDERTAKING**

**4.1     Representations**

The representations set out in this Clause are made as of the date hereof by the Guarantor to the Beneficiary.

4130204-1

C

TR45067.02

**4.2**    **Status**

The Guarantor is a corporation, duly incorporated and validly existing under the laws of Canada.

**4.3**    **Powers and authority**

The Guarantor has the power to enter into and perform, and has taken all necessary action to authorise the entry into and performance of, this Agreement and the transactions contemplated by this Agreement.

**4.4**    **Legal validity**

Subject to the Reservations, this Agreement is a legally binding obligation of the Guarantor, enforceable in accordance with its terms.

**4.5**    **Non-conflict**

The entry into and performance by the Guarantor of, and the transactions contemplated by, this Agreement do not conflict with:

(a)    any law or regulation applicable to the Guarantor; or

(b)    the Guarantor's constitutional documents; or

(c)    any agreement binding on the Guarantor to the extent that such conflict would result in a Material Adverse Effect.

**4.6**    **No default**

The Guarantor is not in default under any agreement binding on the Guarantor to an extent or in a manner which would result in a Material Adverse Effect.

**4.7**    **Pari passu ranking**

The Guarantor's payment obligations under this Agreement rank pari passu in right of payment with all its other present unsecured payment obligations, except for obligations mandatorily preferred by law.

**4.8**    **Times for making representations**

The representations set out in this Clause are made by the Guarantor on and as of the date of this Agreement.

**5.**    **CHANGES TO THE PARTIES**

(a)    The Guarantor may not assign or transfer any of its rights and obligations under this Agreement other than with the prior written consent of the Beneficiary, such consent not to be unreasonably withheld or delayed.

(b)    The Beneficiary may not assign or transfer any of their rights and obligations under this Agreement other than with the prior written consent of the Guarantor save that the Beneficiary's rights under this Agreement may be transferred in their entirety, but not in part, to any person or persons who may, from time to time and for the time being, be

4130204-1

C                                                                                          TR45067.02

appointed as trustee or trustees of the Scheme pursuant to any appropriate trust deed, or pursuant to any statutory authority (such person being a **"Successor Trustee"**). The Beneficiary shall promptly thereafter give written notice to the Guarantor of the appointment of the Successor Trustee such notice to be signed by the Beneficiary and the Successor Trustee. With effect from the date of delivery of such notice, the Successor Trustee shall assume all the Beneficiary's rights and obligations under this Agreement and this Agreement shall be construed as if all references to the Beneficiary were replaced by references to the Successor Trustee. The obligations of the Guarantor under this Agreement shall remain unaltered by such transfer and replacement.

6.      **SEVERABILITY**

If a term of this Agreement is or becomes illegal, invalid or unenforceable in any jurisdiction, that shall not affect:

(a)     the legality, validity or enforceability in that jurisdiction of any other term of this Agreement; or

(b)     the legality, validity or enforceability in other jurisdictions of that or any other term of this Agreement.

7.      **COUNTERPARTS**

This Agreement may be executed in any number of counterparts and by the parties to it on separate counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of this Agreement.

8.      **NOTICES**

8.1     **In writing**

(a)     Any communication in connection with this Agreement must be in writing and, unless otherwise stated, may be given in person, by post or fax.

(b)     Unless it is agreed to the contrary, any consent or agreement required under this Agreement must be given in writing.

8.2     **Contact details**

(a)     The contact details of the Guarantor for this purpose are:

Address:        Nortel Networks Limited
                MS T0503010
                195 The West Mall
                Toronto, Ontario, M9C 5K1
                Canada
Fax number:     +001 (905)-863-2486
Attention:      Treasurer.

With a copy to:

Address:        Nortel Networks Limited
                MS T0503005

4130204-1

C                                                                        TR45067.02

195 The West Mall
Toronto, Ontario M9C 5K1
Canada
Fax number:    +001 (905) 863-7386
Attention:    General Counsel - Corporate

(b)    The contact details of the Beneficiary are:

Address:    Nortel Networks UK Pension Trust Limited
Maidenhead Office Park
Westacott Way
Maidenhead
Berkshire
SL6 3QH
Fax number:    +44 (0)1628 432 872
E-mail:    louiseha@nortel.com
with a copy to clive.gilchrist@bestrustees.co.uk
Attention:    Louise Hammond – UK Pensions Manager

**8.3    Effectiveness**

(a)    Except as provided below, any Demand or communication in connection with this Agreement will be deemed to be delivered or given as follows:

(i)    if delivered in person, at the time of delivery;

(ii)    if posted, five days after being deposited in the post, postage prepaid, registered and with return receipt requested, in a correctly addressed envelope; and

(iii)    if by fax, when received in legible form with transmission confirmed by a generated transmission receipt.

(b)    A communication given under paragraph (a) above but received on a non-working day or after business hours in the place of receipt will only be deemed to be given on the next working day in that place.

**9.    TAXES**

**9.1    General**

In this Clause:

**Tax** means any tax, levy, impost, duty or other charge or withholding of a similar nature (including any related penalty or interest).

**Tax Deduction** means a deduction or withholding for or on account of Tax from a payment under this Agreement.

**9.2    Tax gross-up**

(a)    If the Guarantor is aware that it must make a Tax Deduction (or that there is a change in the rate or the basis of a Tax Deduction), it must promptly notify the Beneficiary.

4130204-1

JOINT PRIVILEGED DOCUMENT        HIGHLY CONFIDENTIAL        NNC-NNL08190906 / 11

C                                                                                    TR45067.02

(b)    If:

       (i)    a Tax Deduction is required by law to be made by the Guarantor or the Beneficiary; and

       (ii)   such Tax Deduction would not have been required to be made if the relevant underlying payment was being made by the Company (and not the Guarantor),

       then the amount of the payment due from the Guarantor will be increased to an amount which (after making the Tax Deduction) leaves an amount equal to the payment which would have been due if no Tax Deduction had been required.

(c)    If the Guarantor is required to make a Tax Deduction required by law, the Guarantor must make the Tax Deduction and must make any payment required in connection with that Tax Deduction within the time allowed by law.

(d)    Prior to 31 March of the calendar year following either a Tax Deduction or a payment required in connection with a Tax Deduction, the Guarantor must deliver to the Beneficiary evidence satisfactory to the Beneficiary (acting reasonably) that the Tax Deduction has been made or (as applicable) the appropriate payment has been paid to the relevant taxing authority.

9.3    If the Guarantor pays any such additional amount as is referred to in clause 9.2 in respect of any Tax Deduction and the Beneficiary determines that the Scheme has received a credit or refund for any Tax Deduction, the Beneficiary will (to the extent that it can do so without prejudice to the retention of such credit or refund and to the extent that it is not unlawful or contrary to any official regulation or directive for it to do so and provided that no amount due and payable to the Beneficiary under either this Agreement remains unpaid) reimburse the Guarantor with such amount (if any) as the Beneficiary determines will leave the Guarantor (after such reimbursement) in no better or worse position that it would have been in if the Guarantor had not been required to make such Tax Deduction.

10.    **LANGUAGE**

Any notice given in connection with this Agreement must be in English.

11.    **GOVERNING LAW**

This Agreement is governed by English law.

12.    **ENFORCEMENT**

12.1   **Jurisdiction**

(a)    The courts of England have exclusive jurisdiction to settle any dispute in connection this Agreement (including a dispute regarding the existence, validity or termination of this Agreement).

(b)    The parties agree that the courts of England are the most appropriate and convenient courts to settle any such dispute and accordingly no party will argue to the contrary.

(c)    This Clause is for the benefit of the Beneficiary only. As a result, to the extent permitted by law, a Beneficiary may take:

       (i)    proceedings in any other court; and

4130204-1

C                                                                                      TR45067.02

<div style="margin-left: 2em">

(ii)    concurrent proceedings in any number of jurisdictions.

**12.2    Waiver of immunity**

The Guarantor irrevocably and unconditionally:

(a)    agrees not to claim any immunity from proceedings brought by a Beneficiary against it in relation to this Agreement and to ensure that no such claim is made on its behalf;

(b)    consents generally to the giving of any relief or the issue of any process in connection with those proceedings; and

(c)    waives all rights of immunity in respect of it or its assets.

This Agreement has been entered into on the date stated at the beginning of this Agreement.

</div>

4130204-1

C                                                                                    TR45067.02

## SCHEDULE 1

## FORM OF DEMAND

1.

2.      To:    Nortel Networks Limited

**Guarantee in respect of the Nortel Networks UK Pension Plan dated [●] 2007 (the "Guarantee")**

We refer to the Guarantee.  Terms defined in the Guarantee shall bear the same meaning in this letter.

3.      **We certify that an Insolvency Event has occurred.**

We demand payment of the sum of £[●] (the **"Requested Amount"**) and confirm that the Requested Amount is equal to or less than the Guaranteed Obligation.

The Requested Amount should be made the following account:

Name: [●]

Bank: [●]

Account number: [●]

Sort Code: [●]

Yours faithfully

For and on behalf of
Nortel Networks UK Pension Trust Limited as trustee of the Nortel Networks UK Pension Plan

4130204-1

C

**SIGNATORIES**

**Guarantor**

EXECUTED AS A DEED by                    )
**NORTEL NETWORKS LIMITED**     )
acting by                                              )

By: _____
Name: _____
Title: _____

and

By: _____
Name: _____
Title: _____

**Beneficiary**

EXECUTED as a deed by                    )
**NORTEL NETWORKS UK**           )
**PENSION TRUST LIMITED**        )
acting by                                              )


Director


Director/Secretary


4130204-1