# APPENDIX B:
## Canadian Taxation of Foreign Source Income

1. Canada taxes its resident corporations on their worldwide income; nonresident corporations are taxed only on their Canadian source income.[1]

   ### A. Separate Entity Taxation

2. The Canadian approach to taxing foreign source income is typical of OECD countries and has many similarities to the U.S. corporate income tax rules.[2] This approach is approved under the OECD Model Income Tax Convention. Such systems are referred to as "separate entity" systems because the unit of taxation is the corporation as a stand-alone entity. When corporate income taxes apply to MNEs, each foreign corporation is treated as a stand-alone entity. Corporate income taxes are levied within country borders, defined as the "water's edge," and transfer pricing rules are used to price related party cross-border transactions.

3. The Canadian government deliberately chose to structure its corporate income tax system around the corporation as a stand-alone entity because that is a simple approach that refers to a clearly-definable legal entity and thereby respects legal concepts, such as the limited liability of a corporation.[3]

---

[1] For summaries of the Canadian rules for taxing foreign source income see Lorraine Eden, *Taxing Multinationals: Transfer Pricing and Corporate Income Taxation in North America* ch. 2 (1998). *See also* Elinore Richardson & Larissa Tkachenko, *Current Taxation by Host Country of Income Earned by Controlled Foreign Corporations: Canada*, 32 Tax Mgmt. Int'l Forum 21, 21-27 (Mar. 2011).

[2] For example, Canada's FAPI rules have similarities to the rules in Subpart F of the U.S. IRC, 26 U.S.C. §§ 951-65, which governs controlled foreign corporations.

[3] Dep't of Finance, Canada, *The Taxation of Corporate Groups Consultation Paper* 3 (Nov. 2010), *available at* https://www.fin.gc.ca/activty/consult/tcc-igs-eng.pdf ("Under Canada's corporate income tax system, the basic unit of taxation is the corporation as a stand-alone entity. There are several rationales for this approach: it is a simple definition; the entity can be clearly identified; the definition corresponds to the legal definition of the entity; and it respects legal concepts such as the limited liability of a corporation. The separate-entity approach implies that income from one part of a corporation can be offset by losses from other activities within the same corporation,

B.    **Foreign Affiliates versus Foreign Branches**

4. Under the Canadian CIT system, Canadian MNEs can choose to structure their offshore entities as foreign affiliates or foreign branches.

5. Canadian tax rules define a *foreign affiliate* as a non-resident corporation where the Canadian taxpayer's equity percentage is at least 1% and the total of Canadian taxpayers' and any related persons' equity percentage is not less than 10%. In order to qualify as a corporation, the entity must be incorporated, with a separate and distinct legal personality from its owners. The corporation must have the ability to acquire rights and assume liabilities separate from its shareholders, and to provide its shareholders with limited liability.[4] Because foreign affiliates of Canadian MNEs are considered to be separate entities and non-residents for Canadian corporate income tax purposes, their foreign source income is typically not taxable on an accrual basis (as it is earned).

6. As an alternative to a foreign affiliate structure, Canadian MNEs can structure their foreign entities as branches. Income earned by a foreign branch must be included in its Canadian parent's income on an accrual basis and taxed as earned, with credit given for foreign income taxes paid. Foreign branch losses are deductible from the Canadian parent's income.

---

while losses by one corporation may not be used directly against the income of another corporation, even where the other corporation is in the same corporate group.").

[4] *See* Canada Revenue Agency, *Income Tax Act: Meaning of the Term Corporation*, Information Bulletin IT-343R, Sep. 26, 1977, *available at* http://www.cra-arc.gc.ca/E/pub/tp/it343r/it343r-e html ("A corporation is an entity created by law having a legal personality and existence separate and distinct from the personality and existence of those who caused its creation or those who own it. A corporation possesses its own capacity to acquire rights and to assume liabilities, and any rights acquired or liabilities assumed by it are not the rights or liabilities of those who control or own it. As long as an entity has such separate identity and existence, the Department will consider such entity to be a corporation even though under some circumstances or for some purposes the law may ignore some facet of its separate existence or identity.").

7. With the exception of the banking industry, the foreign branch structure has not been common in Canada. Most foreign entities with Canadian parents are organized as foreign affiliates, and therefore treated as separate entities for tax purposes.

8. From a U.S.-Canada perspective, it is more advantageous for a Canadian parent to set up a U.S. affiliate as a subsidiary rather than a branch. In addition to the benefits of being a separate legal entity, there are also tax benefits since Canadian taxes either do not apply or can be deferred to a U.S. subsidiary, whereas the income of a U.S. branch is taxable in Canada as earned.[5]

### C. Exempt Surplus versus Taxable Surplus

9. The actual Canadian tax treatment of foreign affiliates depends on whether the foreign affiliate earns "exempt surplus" or "taxable surplus." Exempt surplus roughly corresponds to activity business income earned in listed countries, generally countries where Canada has a double tax treaty. Dividends out of exempt surplus paid by foreign affiliates to their Canadian parents can be repatriated free of Canadian taxation; exempt surplus that is not repatriated is not taxed in Canada. Foreign affiliate losses, however, cannot be deducted from the Canadian parent's income. Since Canada has an extensive double tax treaty network, in effect, most foreign source income is not taxed in Canada.

10. Taxable surplus consists of passive income and active business income in non-listed countries. Under Canada's Foreign Accrual Property Income ("FAPI") rules, dividends

---

[5] *See, e.g.*, Jack Bernstein, Tax Analysts, *The Purchase of U.S. Businesses by Canadians* (Mar. 12, 2013), http://www.taxanalysts.com/www/features.nsf/Articles/7D5CE15BB915972085257B2C0057342A (last accessed Feb. 28, 2014) (noting that a "U.S. subsidiary is generally more advantageous than a U.S. branch" for various tax and accounting reasons).

paid out of taxable surplus are included in the Canadian parent's income and taxed at Canadian rates, with a foreign tax credit or deduction available for foreign income taxes.

11. Taxable surplus that is not repatriated is generally not taxable in Canada unless the income is considered passive (e.g., rents, royalties, interest); in this case, the passive income is taxable as accrued. The overall effect of the Canadian CIT rules is that foreign affiliates of Canadian MNEs are considered separate entities and their foreign source income is (with rare exceptions) not taxed in Canada. As a result, the Canadian tax system is often considered a *de facto* territorial system, even though nominally Canadian MNEs are taxable on their worldwide income.[6]

12. The stand-alone entity approach therefore provides benefits to Canadian firms. Canadian MNEs typically structure their offshore activities through foreign affiliates because of the applicable tax benefits. Foreign source income (with the exception of FAPI income) is sheltered from Canadian tax, making the effective tax rate the foreign rate. Even income earned in tax havens, as long as the country has a tax treaty with Canada, is sheltered from Canadian taxation because that income (even royalty income from IP licenses and sales) is considered to be active business income and therefore not taxable in Canada if the income is kept offshore.

13. From a home country perspective, Canada's treatment of foreign income and withholding taxes depends on (1) whether the foreign taxes are paid on exempt or taxable surplus and (2) whether the foreign entity is an affiliate or branch.

---

[6] *See, e.g.*, Philip Dittmer, Tax Foundation Special Report No. 202, *A Global Perspective on Territorial Taxation* 19-21 (Aug. 10, 2012), *available at* http://taxfoundation.org/sites/taxfoundation.org/files/docs/sr202_0.pdf (explaining that "[b]ecause the treaty network now encompasses 91 countries and all major trading partners, the Canadian system is, in practice, a territorial system").

14. For a *foreign affiliate*,

    - *Exempt surplus* is not taxable in Canada. Therefore, no credit or deduction is given for foreign income or withholding taxes when exempt surplus (e.g. dividends from treaty countries) is repatriated to Canada.

    - *Taxable surplus that is considered active business income* is only taxable when repatriated to Canada. Foreign income and withholding taxes are creditable or deductible against the applicable Canadian taxes up to the Canadian income tax rate.

    - *Taxable surplus that is considered passive income* is taxable on an accrual basis (as earned) with a credit or deduction for foreign income and withholding taxes up to the Canadian tax rate.

15. For a *foreign branch*, income is included in its Canadian parent's income and taxable on an accrual basis with credit given for foreign income and withholding taxes up to the Canadian tax.

### D. Treatment of Foreign Income and Withholding Taxes

16. The statutory corporate income rates for Canada, the United States and EMEA (France, Ireland and the United Kingdom) for 2000-2013 are provided in Figure B-1 below. These rates take into account both the federal corporate tax rate and the average state/provincial corporate income tax rate. Canada's corporate income tax rate moves below the U.S. rate in 2002 with the gap progressively widening almost every year post-2002.[7]

---

[7] Note that the effective statutory rates facing NNL, NNI and the EMEA entities will vary slightly from these rates depending on the state or province in which the firm is located and any special tax preferences for which the firm qualifies, such as R&D tax credits.

**Figure B-1: Statutory Corporate Income Tax Rates, Selected Countries, 2000-2013**[8]

|        | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 |
|--------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|
| **Canada** | **42.2** | **40.5** | **38.0** | **35.9** | **34.4** | **34.2** | **33.9** | **34.0** | **31.4** | **31.0** | **29.4** | **27.6** | **26.1** | **26.1** |
| France | 37.8 | 36.4 | 35.4 | 35.4 | 35.4 | 35.0 | 34.4 | 34.4 | 34.4 | 34.4 | 34.4 | 34.4 | 34.4 | 34.4 |
| Ireland | 24.0 | 20.0 | 16.0 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 |
| UK | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 | 28.0 | 28.0 | 28.0 | 26.0 | 24.0 | 23.0 |
| USA | 39.3 | 39.3 | 39.3 | 39.3 | 39.3 | 39.3 | 39.3 | 39.3 | 39.3 | 39.1 | 39.2 | 39.2 | 39.1 | 39.1 |

17. In addition to the corporate income tax, all countries levy withholding taxes on various kinds of related-party payments that leave the country, such as royalties, dividends, interest payments and management fees. These funds typically go to the MNE parent firm, but can also be paid, for example, to regional headquarters. Under double tax treaties, these rates are typically reduced and may be zero depending on the type of cross-border flow.

### E. Tax Treatment of Nortel's Foreign Source Income

18. In Nortel's case, the Integrated Entities were organized as foreign affiliates located in countries that had double tax treaties with Canada (U.S., UK, France, and Ireland). As such, their income would have been treated under Canadian income tax law as exempt surplus (active business income). Repatriated dividends would therefore *not* have been taxed in Canada, and *no* credit would have been given for foreign income and withholding taxes. Passive income, however, such as royalties and management fees would have been taxed, but only when remitted to Canada, with a foreign tax credit up to the Canadian tax rate. Unused foreign tax credits (for example, where the Canadian parent was making losses) could be carried forward or backward for some years.

---

[8] *See* Org. for Econ. Coop. & Dev. (OECD), Table II.1, Corporate & Capital Income Taxes, *OECD Tax Database* (May 2013), http://www.oecd.org/ctp/tax-policy/tax-database.htm (last accessed Feb. 28, 2014).

19.     Under the U.S.-Canada double tax treaty, dividends sent from NNI to NNL would incur a 5% withholding tax in the U.S. that would not be creditable in Canada. Any payments that were classified as taxable surplus would be taxed only when remitted by NNI to NNL, with credit for the U.S. income and withholding taxes given up to the level of the Canadian tax. Since NNL was making losses from 2000 onwards, the excess foreign tax credits would have had to be carried forward or backwards.