This is Exhibit "A" referred to in the Affidavit of PHILIPPE ALBERT-LEBRUN sworn 5 May, 2014

_____
Commissioner for Taking Affidavits (or as may be)

Vu pour la certification
matérielle de la signature
de Mr Philippe ALBERT-LEBRUN
apposée ci-dessus

Subject to EMEA-US-Canada Joint Privilege



# NORTEL

## MEMO

Date: April 13, 2005
To: 2004 Tax Provision Files
Copy: D&T, John Doolittle, Mark Weisz, Simon Schofield, Philippe Albert-Lebrun
From: Vince Raimondo
Subject: French Tax Audit – NNSA and NNF.

### Background

On December 22, 2004, we received an income tax assessment from the French tax authorities with respect to the 2001 tax year. This assessment was issued following their brief review of the 2001 tax years of NNSA and NNF.

The basis of the assessment is basically threefold:

1) The auditor concluded that NN SA had made an 'abnormal act of management' by not charging R&D costs to Nortel Networks Limited as it had in 2000, as a result of a change in transfer pricing methodology to the Residual Profit Split method. Accordingly, the auditor determined that NNSA has in fact conferred a benefit on its shareholder and has determined that the value of the benefit should be a deemed dividend. A 5% withholding tax was then applied to that dividend;

2) Since that "dividend" was deemed to have been paid in 2001, interest has been charged on the outstanding tax; and

3) The 2001 R&D costs and transfer pricing adjustments were essentially denied as a deduction (under the 'abnormal act of management' principle) reducing the loss for that period. The reduction of this loss for the period in turn led to a reduction in the loss carry-back claim made in that period.

Vince Raimondo
Senior Manager - Taxation
vincera@nortel.com
T (905)-863-6201 F (905)-863-8475 nortel.com



Highly Confidential                               EMEAPRIV0194732

1

Subject to EMEA-US-Canada Joint Privilege

In addition, the denial of the R&D expenses and the transfer pricing adjustment for the year would result in a reduction of the NNSA loss carry-forward balance.

### Conclusion

1) We believe that the audit and corresponding assessment represents a potential loss contingency which should be analyzed in the context of SFAS 5 (i.e. whether an accrual or disclosure is required in the financial statements). This conclusion will not be further discussed in this memorandum.

2) The amount of the assessment is approximately $45M in excess what is accrued in the financial statements. Although the assessment would also lead to a reduction of loss carry-forwards, the tax benefit of these losses is not recorded in the financial statements (i.e. a full valuation allowance is recorded against the tax benefit of these losses). We do not believe it is probable that we will have to pay this amount. Accordingly, in accordance with the recommendations of paragraph 8 of SFAS 5, this amount will not be accrued in the financial statements.

3) We do believe that is **possible** that some loss may be incurred in the future as a result of the French examination. However, due to reasons explained further below, we are unable at this time to quantify the amount of those potential losses.

4) We are unable to quantify a "range" of potential exposures. Although, the assessment does quantify an amount, for reasons described below we do not believe that this amount represents the upper limit of an appropriate range. Accordingly, a range has not been disclosed in the notes to the financial statements, other than to say the potential outcome could be "material".

### Analysis

The history as it pertains to the French assessment is not particularly extensive. The assessment was received approximately one week after the audit began. It was based on very little dialog with Nortel Networks personal and was not based on an extensive review of documentation. Our experience with other audits is that generally a fair audit of a company the size of NNSA could take up to several years to complete. In the absence of an assessment, the 2001 tax year for France would have become

Vince Raimondo
Senior Manager - Taxation
vincera@nortel.com
T (905)-863-6201 F (905)-863-8475  nortel.com

Highly Confidential                                    EMEAPRIV0194733

2

Subject to EMEA-US-Canada Joint Privilege

closed on December 31, 2004. This assessment was made by the French tax authorities as a tactic to keep the 2001 taxation year open after December 31, 2004. By casting a wide web on the reassessment (i.e. denying all R&D expenses and transfer pricing adjustments and applying a withholding tax thereto) they have effectively kept all pertinent issues open for discussion.

We have provided a written response this assessment. In summary, our response centered on the following key points:

1) The French tax authorities did not fully comprehend the facts surrounding the change in the transfer pricing. As noted above, the audit was concluded in approximately a week, which is insufficient time to fully comprehend the residual profit split methodology;

2) The modification of the transfer pricing policy to the residual profit split was fully justified based on a comprehensive study that was done on the functions and risks of each entity in the group;

3) The application of the residual profit split methodology is consistent with the arm's length principal. The residual profit split methodology is an acceptable model under OECD principals and guidelines, and France as an OECD country should recognize the residual profit split methodology as a fair one;

4) As a result of the points above, management in France did not make an abnormal act of management; and

5) The failure to invoice R&D expenses did not constitute an effective distribution in favour of Nortel Networks Limited, and accordingly no withholding tax should apply to this assessment.

A copy of the English translation of the French tax assessment and a copy of response thereto is attached to this memorandum.

From the perspective of SFAS 5, we are not of the view that it is probable that a liability has been incurred as at the balance sheet. In addition to our disagreement with respect to the points raised in

Vince Raimondo
Senior Manager - Taxation
vincera@nortel.com
T (905)-863-8201 F (905)-863-8475 nortel.com

Subject to EMEA-US-Canada Joint Privilege

the assessment, as outlined in our response to the French tax authorities attached, the circumstances surrounding the assessment allow us to reach no other conclusion. There was no effort made whatsoever by the French tax authorities to understand the facts and circumstances surrounding our transfer pricing methodology. Indeed, their assessment was made in haste, as a protective measure to keep the tax year open. To highlight this point, the authorities have agreed to follow up meeting to understand our response and the issues at hand. We are of the view that we are still in the very early stages of this examination, not withstanding that an assessment has been issued. We are not of the view that our entire R&D costs and transfer pricing adjustments will be denied as deduction in France. Such a result would be extreme.

In reality, and like any audit, it is possible that the company will incur a loss in the future as this examination progresses. SFAS 5 would prohibit us from accruing an amount in the financial statements for this exposure (since it is "possible" but not "probable"). However, SFAS 5 would require that a potential range be disclosed in the financial statements to the extent that such a range can be quantified. However, since the transfer pricing has not been reviewed in any level of detail at this point by the French tax authorities, and as a result we are not aware of any specific exposures, we are unable to quantify at this time what those exposures might be. Therefore, the range of exposure is somewhere between zero and an unknown amount. We do not believe the amount of the assessment represents a reasonable upper limit due to the circumstances described above (i.e. we do not agree with the basis for the assessment). In addition, since the methodology is a residual profit split methodology, the results of the APA negotiations between Canada, US, and UK can impact the result for France. Again, we are unable to quantify this impact at this time, and there is substantial disclosure in our Form 10-K concerning our APA risks. Accordingly, we are unable to quantify a range to be disclosed in the financial statements, other than to say that the amount could be material. Accordingly, disclosure of this assessment, and the fact that the outcome could be material, will be disclosure in the tax note to the consolidated financial statements.

Vince Raimondo
Senior Manager - Taxation
vincera@nortel.com
T (905)-863-6201 F (905)-863-8475 nortel.com

Highly Confidential       EMEAPRIV0194735