UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | (Jointly Administered) |

Court File No. 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
- COMMERCIAL LIST

IN THE MATTER OF
THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36,
AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

NORTEL CANADIAN AND US INSOLVENCY
PROCEEDINGS – BONDHOLDER CLAIMS ISSUES

Further to Your Honours' request of yesterday, the following briefly sets out the Monitor's views as to:

i) what should be decided by the Courts regarding bondholder claims; and

---

[1] The US Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

ii) why it would be helpful for the foregoing to be decided now by the Courts.

## I      BONDHOLDER CLAIMS ISSUES

Unsecured claims each in the amount of approximately US$4.092 billion (including outstanding pre-filing interest) have been filed as against one or more of the Canadian Debtors and one or more of the US Debtors by the relevant indenture trustees for amounts owing in respect of guaranteed or "cross-over" bonds (the "**Crossover Bonds**") as more particularly described on Schedule "A" hereto (collectively, "**Crossover Bonds' Claims**").  In addition, Crossover Bonds' Claims include unliquidated claims against each of the Canadian Estate and the US Estate (collectively, the "**Estates**") for additional amounts and additional interest claimed to be due under the relevant indentures, including claims for post-petition interest, fees and expenses (collectively, "**Post-Petition Interest and Additional Amounts Claims**").  The Monitor calculates that the post-petition interest portion alone of the Post-Petition Interest and Additional Amounts Claims, absent insolvency law considerations, approximates US$1.6 billion as of December 31, 2013, which amount is above and beyond the US$4.092 billion claimed against each of the Estates under the Crossover Bonds' Claims.

The Monitor is of the view that both the Ontario Court and the Delaware Court should determine the following legal issues:

i) whether the holders of the Crossover Bonds' Claims are legally entitled in each jurisdiction to claim or receive any amounts under the relevant indentures above and beyond the outstanding principal debt and pre-petition interest (namely, above and beyond US$4.092 billion); and

ii) if determined that the holders of the Crossover Bonds' Claims are so entitled, what additional amounts are such holders entitled to so claim and receive,

(collectively, the "**Common Bond Claim Issues**").

The Monitor is of the view that given: (i) the interwoven nature of the Crossover Bonds' Claims; (ii) the potential material impact of the determination of the issues on both Estates; (iii) the provisions of prior Orders of both Courts and of Joint Protocols; and (iv) generally, the principles of co-operation and comity underlying such Orders, the Ontario Court and the Delaware Court

should hold a joint hearing as soon as reasonably practical to determine the Common Bond Claim Issues.

A consideration of the Common Bond Claim Issues may require separate sub-issues be dealt with by each Court.  For example, in the event that the US Debtors are solvent and the Delaware Court determines that the holders of the Crossover Bonds' Claims are entitled to an amount above and beyond the collective US$4.092 billion, the Delaware Court would also have to decide if such additional amounts should be capped at post-petition interest accrued at the applicable US federal judgment rate of interest in accordance with the principles enunciated in that Court's decision in the *In Re: Washington Mutual, Inc.*[2] case, which amount of interest the Monitor calculates as approximately US$90 million as of December 31, 2013.[3]  Such jurisdiction-specific inquiries do not detract from the commonality of the Common Bond Claim Issues.

## II    DECIDING CROSSOVER BONDS' CLAIMS NOW WOULD BE HELPFUL

The Monitor fully understands and agrees with what must be the sentiment of Nortel creditors worldwide, that the various Nortel insolvency estates must move in their respective proceedings expeditiously to be in a position to make distributions to creditors with allowed claims.  The determination of the issues presently before the Courts in the form of the allocation of sale proceeds and the determination of various claims advanced against the Canadian Debtors by the EMEA Debtors and UK Pension Parties (collectively, the "**Current Trial Issues**") will no doubt assist moving Nortel insolvency proceedings along.  However, the Monitor notes that it can reasonably be expected that any such determinations will likely be subject to appeals in both jurisdictions, thereby potentially further delaying distributions to creditors.  It is obvious that reaching a consensual resolution of such matters would be far more preferable.

So long as the Common Bond Claim Issues remain unresolved it will be virtually impossible for the respective estates and their creditors to meaningfully anticipate potential recoveries and therefore to effectively evaluate any settlement proposal regarding the Current Trial Issues.  In addition, potential recoveries from the Canadian Estate may be materially impacted if any excess funds in the US Estate are utilized to pay claims for Post-Petition Interest and Additional

---

[2] 461 B.R. 200 (Bankr D. Del.2011)
[3] This particular issue has been raised in the Nortel US Chapter 11 proceedings by way of objection of Wilmington Trust, N. A. filed October 25, 2013, the hearing of which was adjourned.

Amount Claims instead of flowing back to the Canadian parent company. This impacts all creditors of the Canadian Estate, which include the EMEA Debtors, UK Pension Parties and the US Debtors, all to the extent of allowed claims. The Monitor is therefore of the view that greater clarity around the Common Bond Claim Issues at this time would assist in breaking the logjam.

Moreover, if the Courts proceed to only determine the Current Trial Issues, ultimately moving to the goal of making a meaningful distribution to the creditors will, in any event, require the determination of the critical Common Bond Claim Issues. The amounts in dispute that flow from the Common Bond Claim Issues and the cross-border nature of such issues create a legal and practical impediment to moving the Nortel insolvency proceedings to the point of the Estates being in a position to make a meaningful distribution to creditors. It is therefore not a question of "if" the Common Bond Claim Issues will have to be decided but rather "when" they will have to be decided.

In the circumstances and in keeping with the principles of *Ashmore v. Corp. of Lloyd's (1992)*[4], the Monitor views the Common Bond Claim Issues as critical issues that should be decided expeditiously by way of a joint hearing. In addition to being consistent with prior Orders in these proceedings and in keeping with principles of comity, a joint hearing would be the most expeditious and inexpensive way of dealing with the Common Bond Claim Issues and would eliminate the duplication of filings and oral argument that otherwise would have to be made by all the same key parties on different dates in front of each of the two Courts. Further, the Monitor is mindful that the Current Trial Issues will have occupied 5 weeks of the Courts' calendars in Ontario and Delaware, not to mention an additional 3 weeks in Ontario to address certain claims. Making use of the already allotted time next week in both Courts, which is now anticipated to be unused, in order to have the Common Bond Claims Issues heard by both Courts by way of joint hearing in the same courtrooms and using the same technology currently utilized for the trial of the Current Trial Issues would be an efficient and expeditious approach to dealing with such critical issues.

Given the inevitability of the determination of the Common Bond Claim Issues and the opportunity to present positions at a hearing of both the Ontario Court and Delaware Court, the

---

[4] [1992] All E.R. 486, considered by the Ontario Court of Appeal in *Kovach (Litigation Guardian of) v. Kovach,* [2010] O.J. No. 643

Monitor is of the view that the parties in question would not be prejudiced in advancing matters in the above proposed fashion.  On the other hand, delaying the inevitable and having the Common Bond Claim Issues heard at a later date separately by the Courts with the consequent additional fees and expenses associated therewith, would prejudice the Nortel creditors.

Dated: June 19, 2014
Wilmington, Delaware

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ Kathleen A. Murphy
Mary F. Caloway (No. 3059)
Kathleen A. Murphy (No. 5215)
919 North Market Street, Suite 1500
Wilmington, Delaware 19801
(302) 552-4200 (telephone)
(302) 552-4295 (facsimile)
mary.caloway@bipc.com
kathleen.murphy@bipc.com

-and-

**ALLEN & OVERY LLP**

Jacob S. Pultman
Paul B. Keller
Laura R. Hall
Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, NY  10020
(212) 610-6300 (telephone)
(212) 610-6399 (facsimile)
jacob.pultman@allenovery.com
paul.keller@allenovery.com
laura.hall@allenovery.com
ken.coleman@allenovery.com
daniel.guyder@allenovery.com

*Attorneys for Ernst & Young Inc., as Monitor and Foreign Representative of the Canadian Nortel Debtors*