## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------X
                                                          :
In re                                                     :          Chapter 11
                                                          :          Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,¹                            :          Jointly Administered
                                                          :
                                     Debtors              :
                                                          :
                                                          :
                                                          :
                                                          :
----------------------------------------------------------X
```

— and —

Court File No. 09-CL-7950

## ONTARIO
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C.
1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION
AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER PART IV OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, R.S.C. 1985, c. C-36, AS AMENDED.

## MEMORANDUM OF THE US PARTIES REGARDING INTEREST ISSUES[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation ("NNCC") (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. ("NN CALA") (4226).

[2] The "US Parties" are the (i) US Debtors, (ii) the Official Committee of Unsecured Creditors, (iii) the Ad Hoc Group of Bondholders, (iv) The Bank of New York Mellon, as indenture trustee and (v) Law Debenture Trust Company of New York, as indenture trustee.

The Monitor's request that these Courts issue rushed and premature rulings on the entitlement to and the applicable rate of postpetition or post-filing interest on certain cross-border bond claims (the "Interest Issues") should be denied.  First, the US Court has already determined that a US ruling before the allocation to the US estate is known would be an improper advisory opinion, concluding that "the issue will only be germane if the US Debtors are found to be solvent and the solvency issue is far from decided."[3]  The Monitor did not object to, and cannot now ask, the US Court to reconsider that ruling.  Second, the Interest Issues are not properly before the Canadian Court.  In Canada, such issues are determined as part of a plan process subject to the votes of creditors and are entirely irrelevant to the allocation trial currently pending before the Courts (the "Allocation Trial").  Third, even if certain of the Interest Issues could be subjected to a joint hearing pursuant to the Claims Protocol (as defined below), the Interest Issues are claims resolution issues that are not subject to the joint jurisdiction of the Courts, but rather are subject to the applicable law and procedures in each jurisdiction.  Fourth, forcing the parties to brief in less than one week (while the US Parties are putting their experts on the witness stand) what the Monitor itself has described as a $1.6 billion "gating issue" is manifestly unfair and violates due process.  Finally, the Monitor's argument that the Interest Issues somehow present an obstacle to settlement is both an improper violation of the confidentiality of settlement discussions and simply wrong.  A rushed attempt to rule on this issue in a vacuum now will not promote settlement but instead risks creating new litigation fronts, with multiple appeals and the further entrenchment of parties' positions.

---

[3] *See* Order dated Nov. 15, 2013 regarding the objection (the "Wilmington Objection") filed by Wilmington Trust NA to certain claims against the US Debtors, [ECF No. 12399] (the "Prior Interest Issue Order"), at 1.

I.    **The Interest Issues are Not Properly Before the Courts.**

In the Prior Interest Issue Order, the US Court ruled that the Interest Issues are not ripe absent a determination that the US Debtors can pay prepetition claims in full.  The US Court stated that:

> The Court is adjourning the Objection without date, principally because the Objection would require the Court to issue an advisory opinion on an issue which may never arise and, if it does, only at a later date and perhaps in a different context.  The Objection will only be germane if the U.S. Debtors are found to be solvent and the solvency issue is far from decided.  Courts do not have the power to render an advisory opinion, *i.e.*, based on a contingency and resulting in a contingent declaration.  *Pittsburgh Mack Sales and Service, Inc. v. Int'l Union of Operating Engineers, Local Union No. 66*, 580 F.3d 185, 191-193 (3d Cir. 2009).

Prior Interest Issue Order, at 1.[4]  The Monitor essentially seeks reconsideration of the Prior Interest Issue Order, but in the United States, "[a] motion to reconsider may be granted only 'to correct manifest error of law or fact or to present newly discovered evidence.'"  *In re ABC Learning Centres Ltd.*, 445 B.R. 318, 342 (Bankr. D. Del. 2011) (Gross, J.) *citing Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  There has been no change of law since November, no new evidence has come to light, and no clear error of law is present.

The Prior Interest Issue Order rested on black letter law that postpetition interest on unsecured claims is only payable where the debtors are able to satisfy all prepetition claims in full.  Pending the outcome of the Allocation Trial, it has not yet been (and indeed cannot be) determined whether the US Debtors will be able to pay their creditors in full on their prepetition claims so as to permit the payment of *any* postpetition interest.  Absent such determination, the Interest Issues are not ripe.

---

[4] Indeed, in their remarks before the Courts on June 19, 2014 in support of the Monitor's position, counsel for both the Canadian Creditors Committee and the UK Pension Claimants acknowledged that the Interest Issues may never arise in the US proceedings.  *See* June 19, 2014 Hr'g Tr., 4394:15 - 4394:16, 4394:18 - 4394:23.

It is likewise not appropriate that the Canadian Court determine at this time whether unsecured creditors are entitled to recover post-filing interest in the Canadian Proceedings under the CCAA. Whether post-filing interest is to be taken into account in the calculation of claims is something that is to be dealt with in a plan of arrangement or compromise and put to the creditors for a vote.[5] It is improper and premature for the Canadian Court to determine the issue of entitlement to post-filing interest under the CCAA in a vacuum, separate from other substantive compromises (including, among other things, the appropriate date for applying an exchange rate for debt denominated in foreign currencies) which are part of the creditors' bargain in a plan of compromise or arrangement.

## II.    The Interest Issues are Not Subject to the Joint Jurisdiction of the Courts.

The Interest Issues are claims issues to be litigated or resolved between creditors and debtors *within* particular debtor estates pursuant to applicable law in each jurisdiction and therefore are not subject to the joint jurisdiction of the Courts. The question of whether creditors are entitled to postpetition interest in the US proceedings, and the related question of the applicable rate of interest, are peculiarly US law issues under the Bankruptcy Code, subject solely to the jurisdiction of the US Court, and cannot be decided by the Canadian Court. The same can be said for the US Court's involvement in the determination of post-filing interest on allowed claims against the Canadian estates. While the Monitor and Canadian Debtors, as equity holders, may have standing in the US Court to be heard with respect to any determination of the entitlement to and proper rate of postpetition interest on claims allowed against the US Debtors,

---

[5] Numerous plans have been sanctioned by the Canadian Court which provide for post-filing interest to be paid or taken into account in the calculation of a claim. Given that a plan may not be sanctioned by the Court if it does not comply with all provisions of the CCAA, it is implicit in these sanction orders that payment of post-filing interest is not prohibited by the CCAA. The law on this point in Ontario has been clearly set out by the Court of Appeal in *Stelco Inc. (Re)*, 2007 CarswellOnt 4108, 2007 ONCA 483 at para 67-70 relying upon comments made by the Supreme Court of Canada in *NAV Canada v. Wilmington Trust Co.*, [2006] 1 S.C.R. 865 at para. 96. In a precedential decision, the Court of Appeal has held that, independent of the terms of a plan, voted on by the creditors, there is no "Interest Stops Rule" in the CCAA.

if such issue is ever properly before the US Court, such potential standing does not make the Interest Issues subject to the joint jurisdiction of the Courts.[6]

### III.    The Monitor's Request Raises Due Process Concerns.

In addition to the insurmountable ripeness and procedural issues discussed above, there are significant due process obstacles that should caution the Courts against accepting the Monitor's request to hear the Interest Issues now.  The ultimate determination of the Interest Issues, if they become ripe for determination at some future date, are undoubtedly significant to a number of parties in these cases, including parties that are not Core Parties in the Allocation Trial.  Once the Interest Issues are properly before the Courts, all parties in interest in each jurisdiction that have standing to be heard on such issues must be given notice and an opportunity to be heard.  *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950); *Kalkinis (Litigation guardian of) v. Allstate Insurance Co. of Canada* [1998] O.J. No. 4466 (Ont. C.A.) at para. 13, *Rodaro v. Royal Bank of Canada* [2002] O.J. No. 1365 (Ont. C.A.) at para. 61 and *R. v. Felderhof* [2002] O.J. No. 4103 at paras 252-253.  The Interest Issues cannot be appropriately noticed, briefed and determined in a week's time.  Indeed, hearing the Interest Issues on such short notice contravenes the Court-approved Allocation Protocol under which the Core Parties have been operating for over a year.  *See* Allocation Protocol, ¶ 1 (stating that, other than the EMEA Claims and UK Pension Claims, "creditor claims, including but not limited to

---

[6] While not explicitly referenced in its memorandum, the Monitor is presumably relying on the Cross-Border Protocol on the Resolution of Claims (the "Claims Protocol") approved by the Courts to assert that the Interest Issues are "common" to both jurisdictions and should be heard by joint hearing of the Courts.  The Claims Protocol is clear, however, that nothing therein deprives the Courts of their exclusive jurisdiction over matters arising in their respective cases.  *See* Claims Protocol, ¶ 19 ("The approval and implementation of this Claims Protocol shall not divest or diminish the U.S. Court's and the Canadian Court's respective independent jurisdiction over the subject matter of the Chapter 11 Cases and the Canadian Proceedings, respectively. By approving and implementing this Claims Protocol, none of the U.S. Court, the Canadian Court, the Debtors nor any creditor or any other party in interest shall be deemed to have approved or engaged in any infringement on the sovereignty of the United States or Canada.").

intercompany claims by and between Nortel entities … are not governed by this Allocation Protocol.").

It is particularly inappropriate for the Interest Issues to be adjudicated on such a timeframe given the history of these cases. The possibility that recoveries on the eventual allocation made to the US Debtors may result in the payment of postpetition interest to US creditors has been known to all of the parties and these courts since the success of the residual IP sale three years ago. The Monitor's position on this contingency has similarly been well understood since at least that time, as reflected in an article by the Monitor's counsel released shortly after the residual IP sale that stated a definitive position on the subject. *See* Jay A. Carfagnini & Caterina Costa, "Claims for Post-Filing Interest and Prepayment Premiums in a CCAA Proceeding" (2011), Annual Review of Insolvency Law 2011 at 165. Nevertheless, neither the Monitor nor any other party identified the possibility of the payment of postpetition interest as a "gating issue" for the resolution of the allocation dispute. Yet now, five weeks into the trial, the Monitor not only raises this so-called gating issue but, equally remarkably, suggests that the issue should somehow be litigated in less than one week.[7] The decision by the Monitor to raise the issue of post-petition interest in the final days of the allocation trial and ask for an issue with more than $1.6 billion at stake to be briefed and argued in less than one week is not a fair process and will distract the US Parties from the issues in the Allocation Trial necessarily consuming all of their focus and attention. The US Parties respectfully ask the Courts to consider the prejudice to the US Parties to have the Interest Issues suddenly brought at exactly

---

[7] Notably, when the opportunity presented itself to the Monitor to take up this issue months ago in the context of the Wilmington Objection, it demurred. The Monitor's only response – a month after the filing of the Wilmington Objection – was to file a reservation of rights seeking to be heard if the US Court determined that it would hear the merits of the objection.

the time that such parties are finally presenting their affirmative expert witness case in the Allocation Trial.

## IV.    The Determination of the Interest Issues Will Not Make Settlement of the Allocation Dispute More Likely.

The determination of the Interest Issues will not make a consensual resolution of the allocation dispute more likely.  Without disclosing positions taken by parties in settlement discussions, the US Parties note that there are myriad factual and legal issues, many of which are interrelated, impacting settlement discussions.  The suggestion that resolution of the Interest Issues in a vacuum will facilitate further settlement discussions is simply untrue and does not reflect the actual negotiating dynamic.  Indeed, a premature resolution of the Interest Issues likely would lead to appeals in both jurisdictions that could disrupt settlement discussions and cause parties to become further entrenched in their positions.  Because any such appeal would likely last for years, the allocation dispute still would have to be resolved by the Courts in the interim.

The Monitor, moreover, has singled out just one of a number of complex and significant claims issues that must be resolved before distributions can be made to creditors of the US and Canadian estates.  The Courts should not permit any party to make the resolution of *any* issue a precondition to engaging in further good faith negotiations.

The US Court recognized the risks of such a piecemeal approach in reaching its prior decision to not hear the Interest Issues raised in the Wilmington Objection.  During the status conference regarding such objection, the US Court stated, "if the parties really want to settle the matter, there are ways to do that [] but this is not the way to do it, selecting a single issue … out of many."  Nov. 15, 2013 Hr'g Tr. 40:6-40:8.  The US Court further noted, "[i]t troubles the [US

Court] that one issue is being spotlighted, when there are as the Court knows and as all the parties here know, a number of issues." *Id.* at 38:20-38:22.[8]

The Core Parties are sophisticated, well-represented and fully capable of negotiating a resolution of these complex issues. The US Parties believe that all Core Parties should reengage next week upon the closing of evidence in the Allocation Trial. The Courts should not permit the Monitor to avoid doing so by making the determination of any separate claims issues, including the Interest Issues, a precondition to their participation in settlement talks.

## V.   Conclusion

The US Parties share the desire of the Courts to resolve these insolvency proceedings in a fair and expeditious manner. The US Parties submit that the conclusion of the evidentiary portion of the Allocation Trial is a further opportunity to engage in good faith settlement discussions with the other Core Parties. The determination of the Interest Issues at this time will not assist in those efforts and, instead, could complicate those discussions while opening up new litigation fronts for the parties and the Courts. Accordingly, the US Parties submit that the Courts should deny the current request of the Monitor to determine the Interest Issues.

---

[8] Also at the Status Conference on the Wilmington Objection, the US Court pointedly asked why, if resolving the postpetition interest issue was so crucial to settlement, nobody, for years, ever sought a judicial determination: "Well, let me ask one question before I hear from anybody else. Because there was a very significant mediation, it took a lot of time, effort, and money. And if this was such a stumbling block to settlement, why didn't somebody in the midst of that mediation, say hey, Judge, you can help us to get this matter settled by deciding this issue?" Nov. 15, 2013 Hr'g Tr. at 28:24-29:5.

Dated:  June 20, 2014
Wilmington, Delaware

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

Howard S. Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

    - and -

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP


   */s/ Derek C. Abbott*
Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

    - and -

TORYS LLP

Sheila Block
79 Wellington Street W, #3000
Toronto, ON M5K 1N2
Telephone:  (416) 865-0040
Facsimile:  (416) 865-7380

*Counsel for the Debtors
and Debtors in Possession*


- - - - and - - - -

AKIN GUMP STRAUSS HAUER & FELD LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Robert Johnson (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

    - and -

RICHARDS, LAYTON & FINGER, P.A.


   */s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

    - and -

CASSELS BROCK & BLACKWELL LLP

Shayne Kukolowicz
Geoff Shaw
40 King Street W, #2100
Toronto, ON M5H 3C2
Telephone:  (416) 869-5300
Facsimile:  (416) 360-8877

*Counsel for the Official Committee
of Unsecured Creditors*


- - - - and - - - -

9

PACHULSKI STANG ZIEHL & JONES
LLP

VEDDER PRICE P.C.


____/s/ Peter J. Keane_____
Laura Davis Jones (No. 2436)
Kathleen P. Makowski (No. 3648)
Peter J. Keane (No. 5503)
919 N. Market Street, 17th Floor
PO Box 8705
Wilmington, Delaware 19899-8705
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

-and-

MILBANK, TWEED, HADLEY &
MCCLOY LLP
Dennis F. Dunne
Albert A. Pisa
Andrew M. Leblanc
Atara Miller
1 Chase Manhattan Plaza
New York, New York 10005-1413
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219

-and-

Thomas R. Kreller
601 S. Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone: (213) 892-4463
Facsimile: (213) 629-5063

-and-

BENNETT JONES LLP
Richard B. Swan
Gavin H. Finlayson
3400 One First Canadian Place, P.O. Box
130
Toronto, Ontario, M5X 1A4
Telephone:  (416) 777-5762
Facsimile:  (416) 863-1716

___/s/ Michael J. Riela_____
Michael J. Riela
1633 Broadway, 47th Floor
New York, NY 10019
Telephone:  212-407-7700
Email:  mriela@vedderprice.com

- and -

McMILLAN LLP
Sheryl Seigel
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario
Canada M5J 2T3
Telephone:  416-865-7000
Email:  sheryl.seigel@mcmillan.ca

*Counsel for The Bank of New York Mellon, as
Indenture Trustee*

*Counsel for Ad Hoc Group of Bondholders*

- - - - and - - - -

MORRIS JAMES LLP


  */s/ Stephen M. Miller*
Stephen M. Miller (No. 2610)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email:  smiller@morrisjames.com

- and -

PATTERSON BELKNAP WEBB &
TYLER LLP
Daniel A. Lowenthal
Brian P. Guiney
1133 Avenue of the Americas
New York, NY  10036-6710
Telephone: (212) 336-2000
Facsimile: (212) 336-2222
Email: dalowenthal@pbwt.com
       bguiney@pbwt.com

- and -

BORDEN LADNER GERVAIS LLP
Edmond F.B. Lamek
Scotia Plaza
40 King St W, Toronto, ON  M5H 3Y4
Telephone: (416) 367-6311
Facsimile: (416) 361-2436
Email: elamek@blg.com

*Counsel for Law Debenture Trust Company*
*of New York, as Indenture Trustee*