M E M O R A N D U M

TO: The Honorable Kevin Gross and The Honourable Justice Frank Newbould

FROM: The CCC

DATE: June 21, 2014

RE: Reply to U.S. Parties' Responding Submissions Re Scheduling Argument of Common Bond Issues

Having read the submissions of the U.S. Parties, the CCC is reminded of the reasons of the Court of Appeal for the Third Circuit in this very case:

> We are concerned that the attorneys representing the respective sparring parties may be focusing on some of the technical differences governing bankruptcy in the various jurisdictions without considering that there are real live individuals who will ultimately be affected by the decisions being made in the courtrooms. It appears that the largest claimants are pension funds in the U.K. and the United States, representing pensioners who are undoubtedly dependent, or who will become dependent, on their pensions. They are the Pawns in the moves being made by the Knights and the Rooks.[1]

The CCC, on behalf of its pensioners, former employees and disabled employees—involuntary creditors who do not have the luxury of being able to sell in and out of their position—supports and adopts the Reply Submissions of the Monitor. At the very least, the Monitor's proposal will advance the administration of these estates so as to minimize delay in the payment of dividends to pensioners and others; one hopes that it will also have the salutary effect of invigorating settlement discussions that have thus far been fruitless.

In addition to adopting the Monitor's reply submissions, the CCC submits as follows.

1. The US Parties argue in their response that "payment of post-filing interest is not prohibited by the CCAA" (see footnote 4, page 3). In keeping with the specific direction of these courts that the parties should not make submissions on matters of substance, the CCC does not propose to argue the issue here. However, the CCC notes that:

    a. the US Parties' statement of the law pertaining to the payment of interest is incorrect; and,

---

[1] *In re Nortel Networks, Inc.*, 669 F.3d 128, 143 (3rd Cir. 2011)

    b. the disagreement on this point only serves to highlight the inevitability of a hearing to resolve these issues in the event that these courts elect not to exercise their discretion to make orders predicated on the payment of a single common dividend to creditors, either as part of a *pro rata* allocation or otherwise.

2. On or about May 1 2013, the Ad Hoc Group of Bondholders expressly opposed the 8 month extension of the CCAA stay of proceedings then being sought by the Canadian Debtors, and successfully advocated for a much shorter extension on the express basis that they wished to ensure that progress was being made by the Canadian Debtors and the Monitor in the administration of claims. The Ad Hoc Group's counsel expressly argued that the resolution of the allocation process, by itself, would not be sufficient for the completion of these proceedings, and that they wanted progress to be made in respect of the claims process, in tandem. Those comments, which were accepted by Justice Morawetz, apply equally to the bond claims.

3. The fact that the bondholders are seeking to exempt their claims from the position that they took in May 2013 is at best self-serving, and, more likely, a contrived attempt to further the US Parties' specious argument that the remedial discretion of these courts in relation to the *pro rata* allocation proposed by the CCC is somehow fettered by the fact that the claims process in the various estates has yet to be finalized.

4. Contrary to the US Parties' submission, it is not at all unusual, in CCAA proceedings, for issues related to claims to be narrowed or resolved through adjudication in advance of the filing of a CCAA plan for the purposes of facilitating the formulation of the restructuring plan, related negotiations, and/or voting rights in connection with the plan. Sometimes these determinations are even made outside of the formal claims process. For example, in the case of *Sino-Forest Corporation (Re)*, the debtor (represented by Canadian counsel to the Ad Hoc Group of Bondholders in the Nortel case), moved for (and was later granted) an order of this court characterizing potential indemnity claims in the CCAA proceedings so as to facilitate negotiations and the presentation of a restructuring plan. This was done prior to the passage of the claims bar date, well in advance of the formulation of any restructuring plan, and over objections of 'prematurity' by a number of affected stakeholders, including a group of underwriters represented by Canadian counsel to the US Debtors in the Nortel case. The factors considered by the court in granting the relief sought included that the issues being raised did not come as a surprise to anyone and that the restructuring needed to be completed expeditiously.[2]

5. The need for expedition in this case was made clear by Justice Morawetz almost three years ago to the day in his endorsement dated June 29, 2011:

---

[2] *Sino-Forest Corporation (Re)*, 2012 ONSC 4377 (aff'd 2012 ONCA 816).

> [10] The Canadian Debtors have no significant secured creditors. The Canadian Debtors do, however, have significant unsecured creditors, most of whom are individuals who are employed or were formerly employed by Nortel. Many of these former employees are pensioners and this group have unsecured claims for both pension and medical benefits.
>
> [11] There are also significant employee and former employee claims against the U.S. Debtors and the EMEA Debtors.
>
> [12] For many of these individuals, the delay in receiving a meaningful distribution can be significant. It is not just a question of calculating the time value of money. For this group of creditors, time is not on their side.
>
> [13] This issue is international in scope. It is also a public-interest issue. A protracted delay in resolving the impasse surrounding allocation is highly prejudicial to this group.
>
> [14] In making these comments, I do not mean to suggest that the claims of other creditor groups are not of equal significance, The reality is, however, that the timing of a receipt of a distribution may be less critical for a financial player as opposed to an individual.

6. Three years later, the experience of this case has proven to us that the amounts at stake are such that the case cannot be settled in the current circumstances, and, absent a comprehensive settlement, we can expect litigation to continue post-allocation determination. Now that we are at the end of the allocation trial and a settlement continues to elude the parties, we know that compromise will not be found by postponing the determination of issues related to the bond claims. Accordingly, it is in the interest of the due administration of justice that those issues be resolved, now and not months or years from now.