IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
: Chapter 11
:
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*, :
: Jointly Administered
            Debtors. :
: **RE: D.I. 13910**
:
: Hearing Date: July 25, 2014 at 9 a.m. (ET)
: Response Deadline: July 22, 2014 at 4 p.m.
: (ET)
---------------------------------------------------------X

## US DEBTORS' SUBMISSION ON THE INTEREST ISSUES

1. NNI and its affiliated US debtors (collectively, the "US Debtors")[1] make this submission in response to the Court's order dated June 30, 2104, establishing a briefing schedule on certain "Interest Issues" relating to certain Crossover Bonds' Claims,[2] as requested by Ernst & Young Inc., the court-appointed monitor (the "Monitor") of Nortel Networks Corporation and certain of its Canadian direct and indirect subsidiaries (the "Canadian Debtors"). *See* Scheduling Order Re: Interest Issues, June 30, 2014, D.I. 13910. In particular,

---

[1] The US Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel/.

[2] Unless otherwise noted, capitalized terms used herein shall have the meaning ascribed to them in the Monitor's submission stylized as Nortel Canadian and US Insolvency Proceedings – Bondholder Claims Issues, June 19, 2014, D.I. 13880 (the "Monitor Submission"). The Crossover Bonds' Claims relate to the bonds governed by the Indenture dated as of July 5, 2006, as supplemented as of July 5, 2006, May 1, 2007, and May 28, 2008 (US $1B LIBOR + 4.25% due 2011; US $550M 10.125% due 2013; and US $1.125B 10.75% due 2016); the Indenture dated as of March 28, 2007 (US $575M 1.75% due 2012 and US $575M 2.125% due 2014); and the Indenture dated as of February 15, 1996 (US $150M 7.875% due 2026). *See* Monitor Submission App. A. The Monitor excluded the 6.875% Notes due 2023 from the bond claims against the Canadian estates for which it sought resolution of the Interest Issues, although to the extent issues of law are decided they may prove to be preclusive for such claims. *See id.*

the Scheduling Order sets dates for briefing and argument on just two questions: "(1) whether the holders of the crossover bonds claims are legally entitled in each jurisdiction to claim or receive any amounts under the relevant indentures, above and beyond the outstanding principal debt and prepetition interest; and (2) if determined that the holders of the crossover bonds claims are so entitled, what additional amounts are such holders entitled to so claim and receive (the 'Interest Issues')." *Id.* at 1.

2.   The US Debtors understand that the Official Committee of Unsecured Creditors appointed in these cases (the "Creditors Committee") and the ad hoc group of bondholders that hold claims issued and/or guaranteed by NNC, NNL, NNI, and Nortel Networks Capital Corporation (the "Bondholder Group") intend to make submissions regarding the merits of the Interest Issues, and assume that the Monitor similarly will brief the merits as the party seeking this adjudication. Accordingly, given the number of parties holding differing interests that will address these issues, the US Debtors do not intend to address the merits of these issues in this submission. Rather, the US Debtors make this submission to address certain procedural issues relating to the Interest Issues in the context of these proceedings.

3.   *The Monitor's Statements Regarding Settlement Negotiations Should Be Disregarded.* In seeking the adjudication of the Interest Issues, the Monitor posited that "greater clarity" around the Interest Issues will "assist in breaking the logjam" in settlement of the allocation litigation because it will allow the estates and their creditors meaningfully to anticipate potential recoveries. *See* Monitor Submission at 4. The Monitor has put the US Debtors in an untenable position; it has stated there is a settlement "logjam" and implied that the issue of post-petition interest is the cause of that "logjam," but confidentiality restrictions prevent the US Debtors from meaningfully responding to this assertion, including explaining to the Court their

2

view on why settlement discussions to date have not yet succeeded.  At this time, the US Debtors would request that the Court not draw any inferences with respect to the reasons why settlement negotiations have thus far been unsuccessful and that it disregard the Monitor's comments regarding such negotiations.

        4.    *Each Court Must Rule On The Interest Issues Separately.*  The Monitor has requested that the Interest Issues be heard at a joint hearing because of the "commonality" of these issues in the US and Canadian Debtors' cases.  *See id.* at 3.  However, the Monitor also acknowledges that the standards governing the Bondholder Group's entitlement to post-petition interest differ in the United States and Canada such that each Court should deal with this "sub-issue" separately.  *Id.*  The US Debtors have no objection to the Interest Issues being heard in a joint hearing, but agree with the Monitor that each Court should address and rule on the Interest Issues separately.  The Cross-Border Claims Protocol that the Courts approved limits the extent to which the Bondholder Group's claims would be addressed jointly by the Courts, in contrast to other claims involving common issues as against the US and Canadian Debtors.  *See* Cross-Border Protocol on the Resolution of Claims ¶ 17, Debtors' Motion for Entry of an Order Approving a Cross-Border Protocol on the Resolution of Claims Ex. B, Sept. 11, 2010, D.I. 3922.

        5.    *The US Court Should Consider The Standing Of Parties Seeking Relief.*  It is important that each Court ultimately determine the issues affecting its respective Debtors and make such rulings based on the submissions of the parties in interest in their respective cases.  In the US Debtors' cases, the Canadian Debtors may have an interest in the Interest Issues as the equityholder of NNI, but neither the Canadian Creditors Committee, an ad hoc group of representatives of certain employee and employee benefits creditors asserting direct claims *solely*

3

against the Canadian parent and certain Canadian affiliates,[3] nor Wilmington Trust, N.A., as the Indenture Trustee for notes issued only by NNL and not guaranteed by the US Debtors, falls within the scope of "a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee" under Bankruptcy Code section 1109(b) who are parties in interest in the US Debtors' cases.[4]  *See* 11 U.S.C. § 1109(b).  Similarly, the EMEA Debtors and UK Pension Parties settled their proofs of claim against the US Debtors for a cash payment and provided broad releases in connection with that settlement, and as such do not have pending claims against the US Debtors.  *See* Agreement Settling US Claims Litigation §§ 4.3-4.5, Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363, 503(b) and 507(a)(2) and Bankruptcy Rules 6004(h) and 9019 Approving the US Claims Litigation Settlement Agreement by and among the Debtors, the Creditors' Committee, the Joint Administrators, the EMEA Debtors, Nortel Networks Optical Components Limited, Nortel Telecom France SA, the Liquidator, the French Liquidator, the UK Pension Parties and Certain Affiliates Ex. B, Dec. 17, 2013, D.I. 12618.  The Interest Issues relate to claims issues that are separate and distinct from the allocation dispute,[5] and the Court should consider the parties' interests in determining the weight to give to their submissions on the Interest Issues.  The US

---

[3]  *See* Verified Statement of DLA Piper LLP (US) Regarding Canadian Creditors Committee Pursuant to Bankruptcy Rule 2019, April 30, 2013, D.I. 10385; *see also* Amended Verified Statement Pursuant to Bankruptcy Rule 2019 of DLA Piper LLP (US) at 1, June 5, 2013, D.I. 10761 (the Canadian Creditors Committee has appeared in the US Debtors' cases "solely for the purpose of and expressly limited" to the Allocation Litigation).

[4]  In contrast, the Cross-Border Insolvency Protocol recognizes the US Debtors and the Creditors Committee as parties in interest in the Canadian Proceedings.  *See* Cross-Border Insolvency Protocol ¶ 19, Order Approving Stipulation of the Debtors and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al., Amending the Cross-Border Court-to-Court Protocol Ex. A(1), June 29, 2009, D.I. 990.

[5]  The Allocation Protocol which defined the scope of the allocation litigation expressly provided that other than the EMEA Claims and UK Pension Claims, "creditor claims, including but not limited to intercompany claims by and between any Nortel entities . . . are not governed by this Allocation Protocol."  *See* Allocation Protocol ¶ 1, Order Entering Allocation Protocol Ex. 1, May 17, 2013, D.I. 10565.  This includes the rights of the Core Parties to be heard in the US Debtors' cases on non-allocation matters.

Debtors reserve their rights with respect to these various parties' standing and right to be heard on other matters in the US Debtors' cases.

      6.    *The Narrow Issues To Be Decided.*  In the US, the Bondholder Group's ultimate entitlement to distributions will depend on the terms of the chapter 11 plans confirmed in the US Debtors' cases.  Accordingly, any order entered regarding the Interest Issues should make clear that no determinations are being made with respect to other matters in the US Debtors' cases or relating to the chapter 11 plans that ultimately may be confirmed in their cases, such as the solvency of each of the US Debtors, the terms of any chapter 11 plan in the US proceedings, the manner in which distributions will be made under any such plan, or the validity of any other claims against or among the US Debtors, whether arising under any agreements other than the Indentures or otherwise.[6]

[*Remainder of Page Intentionally Left Blank*]

---

[6] Such agreements would include, but are not limited to, the Support Agreement, dated as of February 15, 1996, between NNI and NNCC, which the US Debtors understand is not encompassed within the Interest Issues being presented to the Court.  *See* Monthly Operating Report No. 24 Ex. A, Mar. 31, 2011, D.I. 5188.

| | |
|---|---|
| Dated: July 15, 2014<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>Howard S. Zelbo (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Jeffrey A. Rosenthal (admitted *pro hac vice*)<br>Lisa M. Schweitzer (admitted *pro hac vice*)<br>Neil P. Forrest (admitted *pro hac vice*)<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone:  (212) 225-2000<br>Facsimile:  (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Ann C. Cordo*<br>Derek C. Abbott (No. 3376)<br>Ann C. Cordo (No. 4817)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone:  (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors*<br>*and Debtors in Possession* |