## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| | (Jointly Administered) |
| Debtors. | |

### OPENING BRIEF OF THE MONITOR AND THE CANADIAN DEBTORS REGARDING POST-PETITION INTEREST AND RELATED ISSUES

**BUCHANAN INGERSOLL
& ROONEY PC**
Mary F. Caloway (No. 3059)
Kathleen A. Murphy (No. 5215)
919 North Market Street, Suite 1500
Wilmington, Delaware 19801
(302) 552-4200 (telephone)
(302) 552-4295 (facsimile)
mary.caloway@bipc.com
kathleen.murphy@bipc.com

**ALLEN & OVERY LLP**
Ken Coleman
Daniel J. Guyder
John W. Kibler
1221 Avenue of the Americas
New York, New York 10020
(212) 610-6300 (telephone)
(212) 610-6399 (facsimile)
ken.coleman@allenovery.com
daniel.guyder@allenovery.com
john.kibler@allenovery.com

*Attorneys for Ernst & Young Inc., as Monitor
and Foreign Representative of the Canadian Debtors*

Dated: July 15, 2014

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................................... 1

BACKGROUND ................................................................................................................................... 2

    A.    The Proceedings ..................................................................................................................... 2

    B.    The Crossover Bond Claims ................................................................................................. 3

ARGUMENT ........................................................................................................................................ 4

    A.    Section 502(b)(2) of the Bankruptcy Code Disallows Claims for Unmatured Interest .......................................................................................................... 4

    B.    The Bankruptcy Code—and Established Case Authority in this District—Limit the Rate of Post-Petition Interest Owing to Unsecured Creditors in a Solvent Debtor Case to the Federal Judgment Rate ..................................................... 4

        i.    Section 726(a)(5) Governs Post-Petition Interest on Allowed Unsecured Claims and Requires Payment of Post-Petition Interest at the Federal Judgment Rate .......................................................................... 4

        ii.    The Requirements of Section 726(a)(5) Apply With Equal Force in Chapter 11 Cases Through Section 1129(a)(7) .................................................. 6

        iii.    Section 1129(b) of the Bankruptcy Code, Even if Applicable, Does Not Require Payment of Post-Petition Interest at a Rate Above the Federal Judgment Rate ................................................................................... 8

            a.    The Absolute Priority Rule Does Not Provide a Basis for Post-Petition Interest Above the Federal Judgment Rate ..................... 9

            b.    Equitable Considerations Do Not Provide a Basis for Post-Petition Interest Above the Federal Judgment Rate ........................... 11

    C.    Bondholders Are Not Entitled to Prepayment Consideration or Damages in Excess of Principal and Accrued Pre-Petition Interest on the Bonds .................... 14

CONCLUSION .................................................................................................................................... 16

## TABLE OF AUTHORITIES

### CASES

*Andrus v. Glover Constr. Co.*,
  446 U.S. 608 (1980)........................................................................................10

*Branch Banking & Trust Co. v. McDow (In re Garriock)*,
  373 B.R. 814 (E.D. Va. 2007)..........................................................................5

*Commodity Futures Trading Comm'n v. Weintraub*,
  471 U.S. 343 (1985).......................................................................................14

*HSBC Bank USA v. Calpine Corp.*,
  07 Civ. 3088 (GBD), 2010 U.S. Dist. LEXIS 96792 (S.D.N.Y. Sept. 14, 2010)....................15

*In re Adelphia Commc'ns Corp.*,
  368 B.R. 140 (Bankr. S.D.N.Y. 2007)..............................................................5

*In re Calpine Corp.*,
  365 B.R. 392 (Bankr. S.D.N.Y. 2007), *rev'd on other grounds*, 2010 U.S. Dist.
  LEXIS 96792 (S.D.N.Y. Sept. 14, 2010) & 2011 U.S. Dist. LEXIS 62100 (S.D.N.Y.
  June 7, 2011)...................................................................................................15

*In re Central Ice Cream Co.*,
  836 F.2d 1068 (7th Cir. 1987) .......................................................................14

*In re Chemtura Corp.*,
  439 B.R. 561 (Bankr. S.D.N.Y. 2010)............................................................14

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2004)...........................................................................10

*In re Coram Healthcare Corp.*,
  315 B.R. 321 (Bankr. D. Del. 2004) ..........................................................12, 13

*In re Country Manor of Kenton, Inc.*,
  254 B.R. 179 (Bankr. N.D. Ohio 2000) ...........................................................9

*In re Dow Corning Corp.*,
  244 B.R. 678 (Bankr. E.D. Mich. 1999) ..........................................................9

*In re Exide Techs.*,
  303 B.R. 48 (Bankr. D. Del. 2003) .............................................................10, 11

*In re Fesco Plastics Corp.*,
996 F.2d 152 (7th Cir. 1993) ..........................................................................10

*In re Genesis Health Ventures, Inc.*,
266 B.R. 591 (Bankr. D. Del. 2001) ...............................................................11

*In re Kellogg Square P'ship.*,
160 B.R. 343 (Bankr. D. Minn. 1993) ..............................................................7

*In re Ridgewood Apartments of DeKalb County, Ltd.*,
174 B.R. 712 (Bankr. S.D. Ohio 1994)............................................................15

*In re Rota*,
No. 89-14333S, 1990 WL 90968 (Bankr. E.D. Pa. June, 26 1990)...................7

*In re Thurmon*,
87 B.R. 190 (Bankr. M.D. Fla.1988) .................................................................7

*In re Timbers of Inwood Forest Assocs., Ltd.*,
793 F.2d 1380 (5th Cir. 1986), *aff'd* 484 U.S. 365 (1988) .........................9

*In re W.R. Grace & Co.*,
475 B.R. 34 (D. Del. 2012) ...................................................................... passim

*In re Washington Mutual, Inc.*,
442 B.R. 314 (Bankr. D. Del. 2011) ..........................................................12, 13

*In re Washington Mutual, Inc.*,
461 B.R. 200 (Bankr. D. Del. 2011), *vacated on other grounds*,
2012 Bankr. LEXIS 895 (Bankr. D. Del. Feb 23, 2012) .......................... passim

*Kitrosser v. The CIT Grp./Factoring, Inc.*,
177 B.R. 458 (S.D.N.Y. 1995)...........................................................................7

*Official Comm. of Unsecured Creditors v. Dow Chem. Corp. (In re Dow Corning Corp.)*,
456 F.3d 668 (6th Cir. 2006) .......................................................................12, 13

*Onink v. Cardelucci (In re Cardelucci)*,
285 F.3d 1231 (9th Cir. 2002) ..................................................................5, 6, 12

*Pepper v. Litton*,
308 U.S. 295 (1939)..........................................................................................14

*Solow v. PPI Enters. (U.S.), Inc.*,
324 F.3d 197 (3d Cir. 2003)..............................................................................11

*U.S. Bank Trust Nat'l Ass'n v. Am. Airlines, Inc. (In re AMR Corp.)*,
   485 B.R. 279 (Bankr. S.D.N.Y. 2013)...................................................................15

*United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*,
   484 U.S. 365 (1988)...................................................................................................4

## RULES AND STATUTES

11 U.S.C. § 105....................................................................................................10

11 U.S.C. § 502(b)(2) ................................................................................. passim

11 U.S.C. § 506(b) .................................................................................4, 5, 6, 10

11 U.S.C. § 704(a)(1)..............................................................................................8

11 U.S.C. § 726(a)(5) ................................................................................. passim

11 U.S.C. § 1124(1) ..............................................................................................11

11 U.S.C. § 1129(a)(7)..............................................................................4, 6, 7, 8, 11

11 U.S.C. § 1129(a)(7)(A)(ii) .................................................................................6

11 U.S.C. § 1129(b) ................................................................................8, 10, 12, 14

11 U.S.C. § 1129(b)(2) ........................................................................................11

11 U.S.C. § 1129(b)(2)(B)(i) .................................................................................9

11 U.S.C. § 1129(b)(2)(B)(ii) ................................................................................9

28 U.S.C. § 1961..................................................................................................2, 5

## OTHER AUTHORITIES

Charles & Emil A. Kleinhaus, *Prepayment Clauses in Bankruptcy*, 15 AM. BANKR. INST.
L. REV. 537, 563-64 (Winter 2007) .......................................................................15

*Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended 2013)......................1

*Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, s. 18.6 (as amended 2013) ..........2

Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No.
93-137, § 4-405(a)(8), (1st Sess. 1973), *reprinted in* Collier App. Pt. 4(c)....................................6

Ernst & Young Inc., the monitor (the "**Monitor**") and foreign representative of Nortel Networks Corporation ("**NNC**"), Nortel Networks Limited ("**NNL**"), and certain of their direct and indirect subsidiaries (collectively, the "**Canadian Debtors**") in proceedings (the "**Canadian Proceedings**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**"), pending before the Ontario Superior Court of Justice (Commercial List) (the "**Ontario Court**"), files this memorandum at the request of the Ontario Court and this Court (together, the "**Courts**") to address the following issues (the "**Crossover Bond Claim Issues**") with regard to certain bond claims (the "**Crossover Bond Claims**," as defined below) filed in both the Canadian Proceedings and the above-captioned proceedings (the "**US Proceedings**" and with the Canadian Proceedings, the "**Proceedings**"):

(i)      whether the holders of the Crossover Bond Claims are legally entitled in each jurisdiction to claim or receive any amounts under the relevant indentures above and beyond the outstanding principal debt and pre-petition interest (namely, above and beyond USD 4.092 billion); and

(ii)     if determined that the holders of the Crossover Bond Claims are so entitled, what additional amounts are such holders entitled to so claim and receive.

## PRELIMINARY STATEMENT

In the United States, the starting point for analyzing any demand for post-petition interest is section 502(b)(2) of the Bankruptcy Code. That section categorically prohibits creditors from recovering *any* post-petition interest on their allowed claims. This implements an important federal policy that alters creditors' contractual and non-bankruptcy law rights. The only potentially relevant exception to this rule is found in section 726(a)(5) of the Bankruptcy Code, which is the only provision of the Bankruptcy Code that references post-petition interest on unsecured claims. As previously decided in this District and by the majority of courts across the country, under this provision, in solvent debtor cases, unsecured creditors are entitled to post-

1

petition interest at the federal judgment rate provided by 28 U.S.C. § 1961.  As such, if the US Debtors are solvent, the *only* additional amount that may be payable on the Crossover Bond Claims is post-petition interest at the federal judgment rate in effect at the commencement of these cases on January 14, 2009.  This result would be fully consistent with the case law in this District and also:

- is the result of a proper construction of the Bankruptcy Code;
- promotes fairness among creditors with different or no contract rates of interest;
- provides markets with commercial certainty and predictability;
- is administratively efficient; and
- would not establish precedent that would incentivize creditors with relatively high interest–bearing claims in other cases to profit by delaying resolution of a case.

The federal judgment rate is also the rate that is compelled here because these estates have already been liquidated to cash and there is no justification to depart from the distribution rules applicable in liquidations.

## BACKGROUND

### A.    The Proceedings

1.    Beginning on January 14, 2009 (the "**Petition Date**"), Nortel Networks Inc. ("**NNI**"), Nortel Networks Capital Corporation ("**NNCC**"), and certain of their affiliates (collectively, the "**US Debtors**") commenced the US Proceedings under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  On that same date, the Canadian Proceedings were commenced, the Monitor was appointed by the Ontario Court, and the Ontario Court recognized the US Proceedings as "foreign proceedings" for the purposes of section 18.6 of the CCAA.  By order of this Court entered February 27, 2009, the Canadian Proceedings were recognized as "foreign main proceedings" under chapter 15 of the Bankruptcy Code.

**B.**      **The Crossover Bond Claims**

2.      The Crossover Bonds include certain unsecured notes issued by (a) NNL and guaranteed by NNC and NNI, for which The Bank of New York Mellon ("**BNYM**") acts as trustee, under an Indenture dated as of July 5, 2006 (the "**2006 Indenture**"), (b) NNC and guaranteed by NNL and NNI, for which BNYM also acts as trustee, under an indenture dated as of March 28, 2007 (the "**2007 Indenture**"), and (c) NNCC and guaranteed by NNL, for which Law Debenture Trust Company of New York (as successor trustee to BNYM, "**Law Debenture**") acts as trustee, under an Indenture dated February 15, 1996 (the "**1996 Indenture**," and together with the 2006 and 2007 Indentures, the "**Indentures**").[2]

3.      Each of BNYM and Law Debenture have filed proofs of claim in respect of the Crossover Bonds in both Proceedings, including the following claims filed against the US Debtors (the "**Crossover Bond Claims**"):  (i) claim numbers 3971 and 3972 filed against NNI by BNYM and (ii) claim number 3946, as amended by claim number 8446, filed against NNCC by Law Debenture.  In addition to liquidated claims for outstanding principal and unpaid interest accrued to the Petition Date, the Crossover Bond Claims assert claims for the continuing accrual of post-petition interest, and the Law Debenture Crossover Bond Claim further claims any amounts due if NNCC elects to redeem the Law Debenture Crossover Bonds before their stated maturity of June 15, 2026.  The Crossover Bond Claims are among the largest claims filed against the US and Canadian Debtors.

4.      On June 24, 2014, the Courts directed the core parties in the Proceedings to submit memoranda of law addressing the Crossover Bond Claim Issues.

---

[2]      The Indentures have been filed in the US Proceedings as exhibits to their corresponding Crossover Bond Claims.

**ARGUMENT**

**A.      Section 502(b)(2) of the Bankruptcy Code Disallows Claims for Unmatured Interest**

5.      Section 502(b)(2) of the Bankruptcy Code expressly disallows claims for unmatured interest as of the commencement of a chapter 11 case, embodying a general bankruptcy policy that disfavors the payment of post-petition interest.  11 U.S.C. § 506(b)(2); s*ee also United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 372-73 (1988); *In re W.R. Grace & Co.*, 475 B.R. 34, 160 (D. Del. 2012) (noting that "the [section] 502(b)(2) prohibition of payment of unmatured interest is [an] example of an important federal interest which could […] lawfully adversely affect creditor state law contractual rights.").

**B.      The Bankruptcy Code—and Established Case Authority in this District—Limit the Rate of Post-Petition Interest Owing to Unsecured Creditors in a Solvent Debtor Case to the Federal Judgment Rate**

6.      The Bankruptcy Code contains only two exceptions to the general prohibition on post-petition interest: (i) section 506(b) provides an *oversecured* secured creditor the right to accrue interest;[3] and (ii) section 726(a)(5) (made applicable to chapter 11 cases by section 1129(a)(7)), which requires the payment of post-petition interest on *unsecured* claims at "the legal rate" if there is a surplus in a chapter 7 liquidation.  The Bankruptcy Code provides no other exceptions to the baseline rule set forth in section 502(b)(2) that interest stops upon the filing of a bankruptcy petition.

    i.      <u>Section 726(a)(5) Governs Post-Petition Interest on Allowed Unsecured Claims and Requires Payment of Post-Petition Interest at the Federal Judgment Rate</u>

7.      The only provision of the Bankruptcy Code that states that post-petition interest can be paid on *unsecured* claims is section 726(a)(5).  This section provides that, in chapter 7 liquidations, following the satisfaction of specified allowed claims, but before distributions may

---

[3]      Section 506(b), and cases construing that provision, are inapposite here where the only issue before the Court is the rate at which *unsecured* creditors may be entitled to recover post-petition interest.

be made to the debtor, property of the estate must be distributed to unsecured creditors "in payment of interest at the legal rate from the date of filing of the petition."  11 U.S.C. § 726(a)(5).  While neither the Bankruptcy Code nor the legislative history defines "the legal rate," the majority of courts—including courts in this District—have held that "the legal rate" means the federal judgment rate specified by 28 U.S.C. § 1961.  *See, e.g.*, *In re W.R. Grace*, 475 B.R. at 200 (D. Del. 2012); *In re Washington Mutual, Inc.*, 461 B.R. 200, 242 (Bankr. D. Del. 2011) (hereinafter, "WaMu II"), *vacated on other grounds*, 2012 Bankr. LEXIS 895 (Bankr. D. Del. Feb. 23, 2012) ("the better view is that the federal judgment rate is the appropriate rate to be applied under section 726(a)(5), rather than the contract rate"); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 257 (Bankr. S.D.N.Y. 2007) (observing that "[i]t is by far the better view, in my opinion, that 'legal rate' is the federal judgment rate and not the same as that authorized under section 506(b), which is a contract rate."); *Branch Banking & Trust Co. v. McDow (In re Garriock),* 373 B.R. 814, 816 (E.D. Va. 2007) ("Having reviewed each line of cases, the Court is persuaded that 'the legal rate' refers to the federal judgment rate, and does not encompass . . . any lawful prepetition contract rate.").

8.    This conclusion is mandated by basic principles of statutory interpretation and fundamental bankruptcy policy.  The use of "the" legal rate in section 726(a)(5) as opposed to "a" legal rate, and for post-petition interest to be paid "on" a claim rather than "under," require the application of a single, uniform rate of post-petition interest on unsecured claims over one that fluctuates with the facts and circumstances and the nature of the underlying claim.  *See Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1234 (9th Cir. 2002) ("The definite article 'the' instead of the indefinite 'a' or 'an' indicates that Congress meant for a single source to be used to calculate post-petition interest").  If Congress intended otherwise, such as the

application of a rate specified under an agreement or applicable non-bankruptcy law, it could simply have said so, and indeed does say so in other sections of the Bankruptcy Code that expressly reference contractual terms and applicable non-bankruptcy law.  *See* 11 U.S.C. § 506(b); *WaMu II*, 461 B.R. at 242 (citing section 506(b) and noting that "where Congress intended that the contract rate of interest apply, it so stated.").

9.      As originally proposed, section 726(a)(5) itself referenced "interest on claims allowed" rather than "the legal rate," and the accompanying legislative history notes that "[t]he rate of interest is to be determined by other applicable law."  Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, § 4-405(a)(8), (1st Sess. 1973), *reprinted in* Collier App. Pt. 4(c).  Thus, in drafting the Bankruptcy Code, Congress expressly considered, and rejected, a formulation of section 726(a)(5) that would award post-petition interest at a rate variable by contract.  *See Cardelucci*, 285 F.3d at 1234 (9th Cir. 2002) ("Thus, instead of a general statement allowing for awards of interest, Congress modified what type and amount of interest could be awarded with the specific phrasing 'at the legal rate.'").  The fact that it did so is telling, and there can be no legitimate debate about the federal judgment rate governing the payment of post-petition interest on allowed claims in a liquidation under chapter 7.

ii.      The Requirements of Section 726(a)(5) Apply With Equal Force in Chapter 11 Cases Through Section 1129(a)(7)

10.      The distribution priorities of section 726 apply with equal force in chapter 11 cases through section 1129(a)(7) of the Bankruptcy Code, which requires that each holder of a claim or equity interest in a non-accepting class of claims or interests receive or retain "value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of this title on such date."  11 U.S.C. §

1129(a)(7)(A)(ii).  *See Kitrosser v. The CIT Grp./Factoring, Inc.*, 177 B.R. 458, 469 (S.D.N.Y. 1995) ("Although the requirements of Chapter 7 are in general not applicable to Chapter 11 proceedings . . . Section 726 does apply through the requirements of Section 1129.").  Thus, under section 1129(a)(7), section 726(a)(5) both creates and circumscribes an unsecured creditor's right to post-petition interest on its allowed claim in a chapter 11 case just as it does in a case under chapter 7.  Because the Bankruptcy Code specifies the applicable post-petition interest rate for unsecured creditors in section 726(a)(5) (*i.e.*, "*the* legal rate", meaning the federal judgment rate) and does not anywhere provide for the use of any other interest rate, courts in chapter 11 cases have held that the federal judgment rate is the proper measure for post-petition interest due to unsecured creditors of a solvent estate.  *WaMu II*, 461 B.R. at 243.

11.    This result also comports with fundamental bankruptcy policy.  Section 1129(7) embodies the "best interests" test, which is intended to protect holders of claims and equity interests in chapter 11 cases, where debtors are given more flexibility and control, by ensuring that the results of any proposed chapter 11 plan would leave such parties no worse off than they would be in a liquidation under chapter 7.  *See W.R. Grace*, 475 B.R. at 141 ("The purpose of the best interest of the creditors test is to ensure that creditors 'are no worse off under a plan of reorganization than they would be with the Debtor in [C]hapter 7.'") (quoting *In re Kellogg Square P'ship.*, 160 B.R. 343 (Bankr. D. Minn. 1993)); *In re Rota*, No. 89-1433S, 1990 WL 90968 at *2 (Bankr. E.D. Pa. June 26, 1990) ("The purpose of Section 1129(a)(7) is to prevent confirmation of a plan which does not propose to pay more than creditors would realize in a straight liquidation, because such a plan necessarily would not be in the best interest of creditors.") (quoting *In re Thurmon*, 87 B.R. 190, 191 (Bankr. M.D. Fla.1988)).  Given the clear mandate of section 726(a)(5), the payment of post-petition interest to unsecured creditors in these

liquidating cases in excess of the legal rate would unambiguously result in such creditors receiving more cash, and shareholders receiving less cash, than they would receive in a chapter 7 case. Section 1129(a)(7) and the duties that a debtor in possession owes to both creditors *and* shareholders, particularly where the estate is solvent, serve to protect against this result.

12.    The chapter 7 benchmark is particularly relevant here, as the US Proceedings are indisputably liquidations at a very late stage. They are functionally indistinguishable from late-stage chapter 7 cases where the trustee has completed the collection of property of the estate and reduced it all to money as required by section 704(a)(1). The principal asset of the estates is cash, and the main remaining task is to allocate and distribute the cash much like a chapter 7 trustee would. There is no prospect of an on-going business here, there are no future profits or value to divide, and there are no jobs to save. Thus, none of the typical benefits of the chapter 11 plan process apply here, and any attempted manipulation of that process to achieve an outcome contrary to section 726—such as the payment of post-petition interest in excess of the federal judgment rate—would frustrate the fundamental policy that creditors and shareholders should be no worse off in chapter 11 than they would be in a chapter 7 liquidation.

iii.    Section 1129(b) of the Bankruptcy Code, Even if Applicable, Does Not Require Payment of Post-Petition Interest at a Rate Above the Federal Judgment Rate

13.    The "fair and equitable" test of section 1129(b) of the Bankruptcy Code, which applies where a debtor seeks to confirm a plan over the objection of a non-accepting class of creditors or shareholders, does not alter the result required by sections 726(a)(5) and 1129(a)(7). Section 1129(b) says nothing about interest and provides no guidance as to what rate of post-petition interest is required for a plan to be "fair and equitable" in a solvent debtor case. The so-called "absolute priority rule," which is incorporated into section 1129(b), merely requires that with respect to a class of unsecured claims each holder of a claim in such class be paid the

allowed amount of its claim. The claim is, of course, determined as of the petition date and therefore the allowed amount of such claim excludes any post-petition interest.

        a.      *The Absolute Priority Rule Does Not Provide a Basis for Post-Petition Interest Above the Federal Judgment Rate*

14.     A plan is "fair and equitable" as to a non-accepting class of unsecured claims if (i) each holder of a claim in such class will receive or retain property of a value equal to the "allowed amount" of such claim, or (ii) no holder of any claim or interest that is junior to the claims of such class will receive or retain any property under the plan on account of such junior claim or interest. 11 U.S.C. § 1129(b)(2)(B)(i)-(ii). This latter point is the modern version of the absolute priority rule.

15.     Significantly, the absolute priority rule does not provide for the payment of post-petition interest. Courts interpreting the absolute priority rule have concluded that it simply provides "that unsecured creditors . . . be paid the full amount of their *allowed claims* before equity can retain value under the plan." *W.R. Grace.*, 475 B.R. at 201 (emphasis added). Section 502(b)(2) of the Bankruptcy Code unambiguously provides that unmatured interest cannot be included in an unsecured creditor's allowed claim, and this remains the case even where a debtor is solvent. *Id.* (holding that unsecured bank lenders' "[a]llowed claims do not include claims for unmatured, post-petition interest"); *see also In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1399-1400 (5th Cir. 1986), *aff'd*, 484 U.S. 365 (1988) ("an allowed claim may not include 'unmatured interest'"); *In re Dow Corning Corp.*, 244 B.R. 678, 685 (Bankr. E.D. Mich. 1999) (post-petition interest would only be "paid on an allowed claim . . . rather than as an allowed claim"); *In re Country Manor of Kenton, Inc.*, 254 B.R. 179, 182 (Bankr. N.D. Ohio 2000) ("[U]nmatured interest (*i.e.*, postpetition interest) does not, under any circumstance, become a part of that creditor's allowed claim."). Thus, even if post-petition

interest is payable in these cases on an allowed unsecured claim, it never actually becomes part of that claim for the purposes of the absolute priority rule. *See In re WaMu II*, 461 B.R. at 241 n. 34 ("[a]lthough [section 1129(b)] embodies the absolute priority rule, which forbids junior classes of creditors or equity from receiving any distribution until senior creditors are paid in full, it also mandates that senior creditors not receive more than 100% of their claim before junior classes receive a distribution") (citing *In re Exide Techs.*, 303 B.R. 48, 61 (Bankr. D. Del. 2003)).

16.     As noted, the Bankruptcy Code only enumerates two exceptions to the general rule that creditors are not entitled to post-petition interest:  (i) section 506(b), which applies only to oversecured creditors, and (ii) section 726(a)(5), which requires that unsecured creditors receive post-petition interest "at the legal rate" in the event of a solvent liquidation. *W.R. Grace*, 475 B.R. at 160 n. 132.  In this case there is simply no basis to create an additional exception out of whole cloth where Congress itself declined to do so. *See Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."); *In re Fesco Plastics Corp.*, 996 F.2d 152, 156 (7th Cir. 1993) (noting that "[t]he problem with the plea for an equitable exception to the general rule of § 502(b)(2) is that the exceptions to that rule are expressly stated in the Bankruptcy Code" and holding that "for a bankruptcy court to create a new exception would go beyond the authority granted in § 105"); *accord In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) ("The general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised by the parameters of the Code itself.")  All that section 1129(b) requires is

the payment of an amount "equal to" the bondholders' allowed unsecured claims, which cannot include post-petition interest—only principal and pre-petition interest.[4]

17.       Indeed, reading the absolute priority rule to require the payment of post-petition interest above the federal judgment rate would conflict not only with section 502(b)(2), which expressly disallows claims for unmatured interest, but with section 726(a)(5), the only provision of the Bankruptcy Code to actually permit post-petition interest on unsecured claims and which expressly limits such interest to "the legal rate."   Thus, if the US Debtors are solvent, the absolute priority rule only requires payment in full of the allowed amounts of the Crossover Bond Claims.  *See W.R. Grace*, 475 B.R. at 201 (finding that the absolute priority rule would not be violated because "the Bank Lenders will be paid the full amount of their allowed claims," which "do not include claims for unmatured, post-petition interest."); *see also In re Exide Techs.*, 303 B.R. 48, 61 (Bankr. D. Del. 2003) ("Courts have decided that 'a corollary of the absolute priority rule is that a senior class cannot receive more than full compensation for its claims.'") (quoting *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 612 (Bankr. D. Del. 2001)).

      b.       *Equitable Considerations Do Not Provide a Basis for Post-Petition Interest Above the Federal Judgment Rate*

18.       Payment of post-petition interest at the federal judgment rate on allowed unsecured claims where a debtor is solvent is required by sections 726(a)(5) and 1129(a)(7) of the Bankruptcy Code, without regard to equitable considerations.  *See WaMu II*, 461 B.R. at 242-

---

[4]        In *Solow v. PPI Enters. (U.S.), Inc.*, a case addressing an alleged impairment of a landlord's claim, the Third Circuit observed in dicta in a footnote that "[a]n impaired creditor in a solvent debtor case can demand postpetition interest under the 'fair and equitable' test of § 1129(b)(2)." 324 F.3d 197, 206 n.14 (3d Cir. 2003) (hereinafter, "PPI"); *but see In re WaMu II*, 461 B.R. at 242-1 & n. 34 (noting that post-petition interest above the federal judgment rate "could also conflict with the requirements of the fair and equitable test") (citing *In re Exide Techs.*, 303 B.R. 48, 61 (Bankr. D. Del. 2003)).  In *PPI*, however, the Third Circuit did not analyze or decide what rate of post-petition interest would satisfy the test.  Rather, its holding was limited to finding that (a) the statutory cap under the Bankruptcy Code did not render the landlord-creditor "impaired" under section 1124(1), and (b) creditors that will receive cash equal to their "allowed claims," together with post-petition interest, under a debtor's proposed plan are not "impaired." *PPI*, 324 F.3d at 206-07.

43 (adopting a plain meaning construction of section 726(a)(5) without regard to equitable considerations, and noting that "[t]o the extent I suggested in *Coram* that the federal judgment rate was not required by section 726(a)(5), I was wrong."); *Cardelucci*, 285 F.3d at 1236 ("'interest at the legal rate' is a statutory term with a definitive meaning that cannot shift depending on the interests invoked by the specific factual circumstances before the court.").

19.     Bankruptcy Judge Walrath's prior decisions in *Coram* and *Washington Mutual* had suggested that a court may award a higher post-petition rate after examining the equities.  *In re Coram Healthcare Corp.*, 315 B.R. 321, 346 (Bankr. D. Del. 2004) (noting that equitable considerations may justify a higher rate of interest); *In re Washington Mutual, Inc.*, 442 B.R. 314, 358 (Bankr. D. Del. 2011) (hereinafter, "WaMu I") (noting that the federal judgment rate remains "the minimum that must be paid to unsecured creditors in a solvent debtor case under a plan to meet the best interest of creditors' test, but . . . the Court ha[s] discretion to alter it"); *see also W.R.* Grace, 475 B.R. at 201 (citing *Coram*, 315 B.R. at 346 and *WaMu I*, 442 B.R. at 358). Further, on different facts the Sixth Circuit has concluded that section 1129(b) may, in certain circumstances, permit the payment of post-petition interest above the federal judgment rate to unsecured creditors.  *Official Comm. of Unsecured Creditors v. Dow Chem. Corp. (In re Dow Corning Corp.)*, 456 F.3d 668 (6th Cir. 2006) (hereinafter, "Dow").  These cases only confirm that creditors do not have an automatic right to contract rate interest under section 1129(b) as part of a court-made exception to the express requirements of section 502(b)(2).  Even if this Court were to determine that section 1129(b) allows the Court to consider the equities when determining the proper rate of post-petition interest, the bondholders must demonstrate that the equities support payment of interest at the contract rate.

20.     Here, there are no equitable considerations that would justify a departure from the federal judgment rate, particularly since these cases are late-stage liquidations where the debtors have no prospect of reorganizing and any distributions to equity in this case will be distributed to creditors in Canada.   None of the courts in *Coram*, *WaMu I*, or *W.R. Grace* found equitable considerations to justify a rate higher than the federal judgment rate, and the court in *Dow* remanded the issue for further development of the record.   *See, e.g.*, *Coram,* 315 B.R. at 347 ("allowing [creditors] to accrue post-petition interest at their contractual default rate would not be fair and equitable" concluding that "the federal judgment rate is fair and equitable").

21.     The US Debtors have no prospect of any on-going business, the US and Canadian Proceedings are pure liquidations, and the possibility of the US Debtors' solvency only emerged well after the debtors announced in 2009 their intention to liquidate—indeed, only after the final major asset sale in 2011.   The equities here overwhelmingly favor the federal judgment rate (which is already required under the Bankruptcy Code, based on Judge Walrath's guidance in *WaMu II*) because NNL—the sole shareholder of the NNI—is itself a debtor, and any available funds that remain after the full payment of allowed unsecured claims, *plus* the payment of post-petition interest on such allowed claims in the US Proceedings will ultimately be distributed to Canadian creditors.   Such creditors include former employees, pensioners, trade creditors, and others who will not under any scenario likely receive full payment of the principal amount of their claims from the Canadian estate, much less any interest or premium above that.

22.     This is *not* a case where the going-concern value of the US Debtors is subject to debate, or where shareholders are seeking to retain value and future earning potential in a reorganized business at the expense of creditors.   In contrast, *Dow* involved a debtor that was fully solvent at all times during the pendency of its chapter 11 case, including at filing and that

13

proposed a plan under which existing equity holders retained their interests in a reorganized, ongoing business.  Unlike in *Dow*, this is effectively an inter-creditor dispute where fairness and equity dictate the application of a uniform interest rate that does not provide a greater recovery to one group of constituents in the Proceedings at the expense of all others.

23.     Here, the diversion of available funds to pay post-petition interest on allowed Crossover Bond Claims in excess of the federal judgment rate would come at the expense of creditors in the Canadian Proceedings.  The primary objective of these liquidation cases should be to distribute available funds to all stakeholders in accordance with established liquidation priorities.  Doing so is entirely consistent with section 1129(b) of the Bankruptcy Code and the US Debtors' duties to creditors and shareholders alike, particularly if the US Debtors are solvent.[5]

## C.     Bondholders Are Not Entitled to Prepayment Consideration or Damages in Excess of Principal and Accrued Pre-Petition Interest on the Bonds

24.     Law Debenture is not entitled to an allowed Crossover Bond Claim on account of any premiums or damages in connection with the prepayment or redemption of the Law Debenture Crossover Bonds.  While the Global Security for the Law Debenture Crossover Bonds provides that such bonds, "may not be redeemed prior to the Stated Maturity of their principal amount" (the "**No-Call Provision**"), it is well-settled that provisions which prohibit the early repayment of debt are not enforceable in bankruptcy, as it is essential that a debtor be permitted to restructure its obligations.  *See*, *e.g.*, *In re Chemtura Corp.*, 439 B.R. 561, 603 (Bankr.

---

[5]     As the Supreme Court has observed, debtors-in-possession are fiduciaries of estate creditors *and* shareholders and owe duties to both, including the duty of impartiality, which are "designed for the protection of the *entire* community of interests of the corporation—creditors as well as stockholders." *Pepper v. Litton*, 308 U.S. 295, 307 (1939); *see also Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985); *In re Central Ice Cream Co.*, 836 F.2d 1068, 1072 (7th Cir. 1987) ("The trustee preferred the creditors over the shareholders. The trustee's counsel . . . testified that in negotiating the settlement he 'did not consider the interests of shareholders.' This is an unusual posture for a trustee, whose duty is to maximize the value of the estate, not a particular group of claimants.").  These duties assume even greater importance where there is excess value to be paid to shareholders.

S.D.N.Y. 2010) ("I don't think anybody could seriously argue that a no-call provision could ever be specifically enforceable in bankruptcy."); *In re Calpine Corp.*, 365 B.R. 392, 397 (Bankr. S.D.N.Y. 2007), *rev'd on other grounds*, 2010 U.S. Dist. LEXIS 96792 (S.D.N.Y. Sept. 14, 2010) & 2011 U.S. Dist. LEXIS 62100 (S.D.N.Y. June 7, 2011); Charles & Emil A. Kleinhaus, *Prepayment Clauses in Bankruptcy*, 15 AM. BANKR. INST. L. REV. 537, 563 (Winter 2007) ("the cases . . . agree on one thing: [a] contractual prohibition on prepayment should not be specifically enforced in bankruptcy").[6]

25.    Moreover, such prepayment is no longer possible. NNCC's bankruptcy filing accelerated the principal of the Law Debenture Crossover Bonds by operation of law.  *See, e.g., U.S. Bank Trust Nat'l Ass'n v. Am. Airlines, Inc. (In re AMR Corp.)*, 485 B.R. 279, 290 n.7 (Bankr. S.D.N.Y. 2013) ("[T]he filing of a bankruptcy petition—even without specific contractual language—acts to accelerate all of a debtor's obligations by operation of law."); *In re Ridgewood Apartments of DeKalb County, Ltd.*, 174 B.R. 712, 720 (Bankr. S.D. Ohio 1994) ("Even without specific contractual language, a bankruptcy filing acts as an acceleration of all of a debtor's obligations.").  As such, the No-Call Provision is no longer relevant because the debt has matured.  *See HSBC Bank USA v. Calpine Corp.*, 07 Civ. 3088 (GBD) 2010 U.S. Dist. LEXIS 96792 at *10-13 (S.D.N.Y. Sept. 14, 2010) ("Debtor's repayment of the notes also did not occur prior to maturity, because accelerated debts are mature."); *see also Ridgewood*, 174 B.R. at 720 ("It would be anomalous for acceleration of an obligation to be construed as a

---

[6]    While BNYM has not asserted any claim for contractual prepayment or redemption consideration under the BNYM Bonds, and BNYM will never have a basis to do so because none of the optional redemption rights under the 2006 and 2007 Indentures have been—or ever will be—exercised and these indentures do not otherwise contain make-whole provisions triggered by prepayment or acceleration.  Indeed, all but one of the applicable redemption periods under these rights have already expired, and the last will expire on July 15, 2014.  Thus, there is no basis in law or equity to find that any additional amounts in the form of prepayment or redemption premiums will ever be payable on the BNYM Crossover Bonds.

prepayment which triggered the application of a penalty. Even without specific contractual language, a bankruptcy filing acts as an acceleration of all a debtor's obligations.").

26.     Even if the No-Call Provision could be breached, the indenture for the Law Debenture Crossover Bonds does not provide for any contractual damages to be payable in connection with such breach.  Moreover, awarding common-law expectation damages for the breach of such a provision effectively punishes a debtor for restructuring its debts in bankruptcy, which is contrary to the underlying policy of the Bankruptcy Code.  *Calpine Corp.*, 2010 U.S. Dist. LEXIS 96792 at *12 ("Because Debtor's bankruptcy filing rendered the no-call provision in the notes unenforceable and liability cannot be incurred pursuant to an unenforceable contractual provision, Debtor did not incur any liability for repaying the notes.").  The unjustness of this result is especially apparent here, where the measure of damages would presumably be based on a bondholder's expectation of an uninterrupted interest stream; allowing a creditor to essentially claim post-petition interest by simply prohibiting prepayment—a fundamental feature of any reorganization—would make a mockery of section 502.  The Court should not tolerate this end run around the Bankruptcy Code.

## **CONCLUSION**

WHEREFORE, the Monitor and the Canadian Debtors respectfully request that the Court enter an order (i) declaring that, if the US Debtors prove not to be solvent, then no post-petition interest shall be payable on allowed Crossover Bond Claims, (ii) declaring that, if the US Debtors prove to be solvent, post-petition interest, if payable on allowed Crossover Bond Claims, will be limited to the federal judgment rate for the week ending January 9, 2009, compounded annually, (iii) declaring that no additional amounts would be payable in connection with the

prepayment or early redemption of the Bonds under the terms of the relevant Indentures, and (iv)

granting such other and further relief as deemed just and proper.

Dated: July 15, 2014
Wilmington, Delaware

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ Kathleen A. Murphy
Mary F. Caloway (No. 3059)
Kathleen A. Murphy (No. 5215)
919 North Market Street, Suite 1500
Wilmington, Delaware 19801
(302) 552-4200 (telephone)
(302) 552-4295 (facsimile)
mary.caloway@bipc.com
kathleen.murphy@bipc.com

-and-

**ALLEN & OVERY LLP**
Ken Coleman
Daniel J. Guyder
John W. Kibler
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300 (telephone)
(212) 610-6399 (facsimile)
ken.coleman@allenovery.com
daniel.guyder@allenovery.com
john.kibler@allenovery.com

*Attorneys for Ernst & Young Inc., as Monitor
and Foreign Representative of the Canadian
Debtors*

17