# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------X
                                        :
In re                                   :         Chapter 11
                                        :         Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,[1]        :         Jointly Administered
                                        :
                       Debtors          :     Re: Docket No. 13910
                                        :
                                        :     Hearing Date: July 25, 2014 at 9:00 a.m. (ET)
                                        :     Response Deadline: July 22, 2014 at 4:00 p.m. (ET)
-------------------------------------------------------X
```

## MEMORANDUM OF LAW OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING ENTITLEMENT OF US CREDITORS TO POSTPETITION INTEREST

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation ("NNCC") (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. ("NN CALA") (4226).

## TABLE OF CONTENTS

Page

I. US Creditors are Entitled to Postpetition Interest if the US Debtors are Able to Pay All Claims for Principal and Prepetition Accrued Interest. ...................................... 3

    A. The Best Interests Test Requires the Payment of Postpetition Interest to Unsecured Creditors of "Solvent" Debtors. ................................................. 3

    B. To be Fair and Equitable Under Section 1129(b), a Plan for a "Solvent" Debtor Must Provide for Postpetition Interest for Unsecured Creditors. ............... 4

    C. Unsecured Creditors of a "Solvent" Debtor Must Receive Postpetition Interest on Their Claims In Order to Be Considered Unimpaired and Outside the "Cram Down" Provisions of Section 1129(b). ...................................... 6

II. US Creditors are Entitled to Postpetition Interest at the Contract Rate. ......................... 7

    A. A Creditor's Rights Under Applicable Nonbankruptcy Law Must be Respected in Bankruptcy. .................................................................... 8

    B. To be Fair and Equitable Under Section 1129(b), a Plan for a "Solvent" Debtor Must Provide for Postpetition Interest at the Contract Rate. ..................... 10

    C. Pre-Code Case Law Provides Precedent for the Provision of Postpetition Interest at the Contract Rate and Such Precedent is to be Followed in Post-Code Cases if not Statutorily Overruled. .................................................... 13

    D. There is No Basis for the Use of the Federal Judgment Rate. ................................. 15

        1. "The" Legal Rate Does Not Mean the Federal Judgment Rate ................. 16

        2. Postpetition Interest is Neither Procedural in Nature nor Akin to a "Federal Judgment" and Must be Governed by Applicable Nonbankruptcy Law. ....................................................................... 18

        3. Administrative Simplicity is Not a Basis to Disregard Contractual Rights. ..................................................................................... 19

        4. The Court Does Not Have Discretion to Disregard Contractual Rights. ..................................................................................... 19

III. The Entitlement to, and Appropriate Rate of Postpetition Interest for US Creditors is Not Properly Before the Court. ..................................................................... 21

## TABLE OF AUTHORITIES

**STATUTES**                                                                                          **PAGE(S)**

11 U.S.C. § 205 ........................................................................................................12
11 U.S.C. § 207 ........................................................................................................12
11 U.S.C. § 502(b)(2) .................................................................................................3
11 U.S.C. § 726(a)(5) .............................................................1, 4, 10, 11, 15, 16
11 U.S.C. § 1124(1) ...................................................................................................6
11 U.S.C. § 1125(b) .................................................................................................21
11 U.S.C. § 1126(f) ...................................................................................................6
11 U.S.C. § 1129(a) ...........................................................................................3, 4, 6
11 U.S.C. § 1129(a)(7) .......................................................................................3, 4, 21
11 U.S.C. § 1129(a)(7)(A) ........................................................................................3
11 U.S.C. § 1129(b) ......................................................6, 7, 11, 12, 16, 21
11 U.S.C. § 1129(b)(1) ..........................................................................................2, 4
11 U.S.C. § 1129(b)(2) ...........................................................................................11
11 U.S.C. § 1129(b)(2)(B) .........................................................................................2
11 U.S.C. § 1129(b)(2)(B)(ii) ............................................................................2, 5, 11
15 U.S.C. § 636(4)(A) .............................................................................................17
15 U.S.C. § 697(c)(2) ..............................................................................................17
15 U.S.C. § 4303(a) ................................................................................................16
15 U.S.C. § 4303(b) ................................................................................................16
15 U.S.C. § 4303(c) ................................................................................................16
21 U.S.C. § 844a(h) ................................................................................................17
22 U.S.C. § 2151t(b) ...............................................................................................18
22 U.S.C. .§ 6082(a)(1)(B) .......................................................................................17
26 U.S.C. § 501(c)(16) ............................................................................................18
26 U.S.C. § 521(b)(2) ..............................................................................................18
28 U.S.C. § 1961 .............................................................................4, 15, 16, 17
28 U.S.C. § 2412(f) .................................................................................................17
28 U.S.C. § 2465(b)(1)(B) .......................................................................................17

**CASES**                                                                                             **PAGE(S)**

*Bank of American Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. Partnership,*
    526 U.S. 434 (1999) .............................................................................................6

*Butner v. United States,* 440 U.S. 48 (1979) ..............................................................8

*Cohen v. De La Cruz,* 523 U.S. 213 (1998) ...............................................................13

*Consol. Rock Prods. Co. v. DuBois,* 312 U.S. 510 (1941) .................................11, 13

*Debentureholders Protective Comm. Of Continental Inves. Corp. v. Continental Inves.*
    *Corp.,* 679 F.2d 264 (1st Cir. 1982) ...........................................................12, 14

*Dewsnup v. Timm,* 502 U.S. 410 (1992) ...................................................................13

*Empire Trust Co v. Equitable Office Bldg. Corp.,* 167 F.2d 346 (2d Cir. 1948)...........................14

*In re Allegheny Intern., Inc.,* 118 B.R. 282 (Bankr. W.D. Pa. 1990)...............................3, 5, 12, 13

*In re Chiapetta,* 159 B.R. 152 (Bankr. E.D.Pa. 1993) ...................................................18

*In re Chicago, Milwaukee, St. Paul & Pac. R. Co.,* 791 F.2d 524 (7th Cir. 1986).................10, 14

*In re Coram Healthcare Corp.,* 315 B.R. 321 (Bankr. D. Del. 2004) ...................................3, 5, 6

*In re Dow Corning Corp.,* 237 B.R. 380 (Bankr. E.D. Mich. 1999) ...............................................4

*In re Dow Corning Corp.,* 244 B.R. 678 (Bankr. E.D. Mich. 1999) ...................................5, 11, 19

*In re Dow Corning Corp.,* 456 F.3d 668 (6th Cir. 2006)..............................................5, 10, 11, 19

*In re Fernandos,* 402 F.3d 147, 152 n. 2 (3d Cir. 2005)..........................................................9

*In re Godsey,* 134 B.R. 865 (Bankr. M.D. Tenn. 1991) ........................................................15

*In re Jason Realty, L.P.,* 59 F.3d 423 (3d Cir. 1995).............................................................9

*In re Majestic Casinos, LLC,* 716 F.3d 736 (3d Cir. 2013) .....................................................9

*In re Melenyzer,* 143 B.R. 829 (Bankr. W.D. Tex. 1992)........................................................15

*In re Realty Assocs. Sec. Corp.,* 163 F.2d 387 (2d Cir. 1947).............................................14

*In re Washington Mut., Inc.,* 461 B.R. 200 (Bankr. D. Del. 2011).........................3, 4, 6, 15, 16, 18

*In re W.R. Grace & Co.,* 475 B.R. 34 (D. Del. 2012)...............................................................4

*Onink v. Cardelucci (In re Cardelucci),* 285 F.3d 1231 (9th Cir. 2002)...........................15, 18, 19

*Rosello v. United States,* 464 U.S. 16 (1983)......................................................................17

*Solow v. PPI Enters. (U.S.), Inc. (In re PPI Enters. (U.S.), Inc.)* 324 F.3d 197
(3d Cir. 2003).........................................................................................................1, 3, 6, 7

*Threadgill v. Armstrong World Indus., Inc.,* 928 F.2d 1366 (3d Cir. 1991)................................16

*Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.,*
549 U.S. 443 (2007)...........................................................................................................9, 18

*UPS Capital Business Credit v. Gencarelli (In re Gencarelli),* 501 F.3d 1 (1st Cir. 2007)........10

*Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156 (1946).....................................14

**OTHER AUTHORITIES**                                                        **PAGE(S)**

H.R. Rep. No. 103-835, at 47-48 (1994) ...............................................................7, 14

N.Y. GEN OBLIG. Law § 5-501 ...........................................................................9

FED R. BANKR. P. 2002(b) ................................................................................22

FED R. BANKR. P. 3007(a) ................................................................................22

FED R. BANKR. P. 7001(a)(7) ...........................................................................22

FED R. BANKR. P. 7003 .....................................................................................22

FED R. BANKR. P. 7012(a) ................................................................................22

Pursuant to the direction of the United States Bankruptcy Court for the District of

Delaware (the "Bankruptcy Court") and the Ontario Superior Court of Justice (the "Canadian

Court" and, together with the Bankruptcy Court, the "Courts") on June 24, 2014, the Official

Committee of Unsecured Creditors (the "Committee") of Nortel Networks, Inc. ("NNI"),

together with its affiliated debtors and debtors in possession (collectively, the "US Debtors")

submits this memorandum of law in support of the entitlement of unsecured creditors of the US

Debtors to postpetition interest.[2]  As set forth below, the Committee submits that (i) it is black-

letter law in the Third Circuit that unsecured creditors are entitled to payment of postpetition

interest where a debtor is able to pay prepetition claims in full, and (ii) such postpetition interest

must be paid at the bargained-for contractual rate, if any, applicable to each claim before any

distribution can be made to NNI's equity holder, Nortel Networks Limited ("NNL").

### PRELIMINARY STATEMENT

The law in the Third Circuit is clear – when a debtor estate is able to pay in full claims

for principal and prepetition accrued interest,[3] unsecured creditors are then entitled to recover

interest accrued during the pendency of the bankruptcy case.  *See Solow v. PPI Enters. (U.S.),*

*Inc. (In re PPI Enters. (U.S.), Inc.)*, 324 F.3d 197, 203 (3d Cir. 2003).  The absolute priority rule

further mandates that, where a debtor has the financial wherewithal to pay all prepetition claims

and interest in full, unsecured creditors ***must*** receive the amounts to which they are entitled

---

[2] The Committee's positions stated herein assume (i) the US and Canadian Courts have rendered a decision on the allocation of the approximately $7.3 billion of sale proceeds that results in NNI being able to pay in full all claims for principal and prepetition accrued interest and (ii) that a chapter 11 plan has been proposed which provides for such payment.  As discussed below, such assumptions are necessary for this Court to even reach the questions at issue pursuant to the Courts' directions on June 20, 2014.

[3] As discussed *infra*, the bankruptcy rule regarding entitlement to postpetition interest where a debtor can pay prepetition claims in full has been referred to as the "solvent debtor exception."  The term "solvency" in this context, however, is a misnomer, as all that is required by section 726(a)(5) of title 11 of the United States Code (the "Bankruptcy Code") before accrued interest must be paid is that all prepetition claims are paid in full, regardless of whether the debtor is technically solvent.  While this memorandum of law may use the term "solvent" debtor from time to time, that is meant to refer to the scenario where all prepetition claims are paid in full.

under applicable non-bankruptcy law – most importantly, the amounts for which they bargained in their contractual arrangements with the debtor – *before* any amounts can be paid to equity.  11 U.S.C. § 1129(b)(2)(B).  The Committee, as a fiduciary for all unsecured creditors of the US Debtors, asserts that *all* such unsecured creditors are entitled to postpetition interest on all allowed claims at their bargained-for contract rate.[4]

The entitlement of US unsecured creditors to postpetition interest at their contractually bargained-for rates is amply supported both by the law, as well as the policies and equitable underpinnings of the Bankruptcy Code.  First, the law requires that a plan must be "fair and equitable" to creditors who have not voted in favor of the plan.  11 U.S.C. § 1129(b)(1).[5] Further, such plan must not violate the absolute priority rule.  11 U.S.C. § 1129(b)(2)(B)(ii).  A plan that makes distributions to equity prior to unsecured creditors receiving payment in full of their contractually bargained-for entitlements violates each of these bedrock Bankruptcy Code protections of creditors' rights.  Additionally, the entitlement of US creditors to postpetition interest at the contract rate is supported by the weight of pre-Bankruptcy Code precedent and the lack of any evidence of legislative intent to overturn such precedent.

Limiting (and varying) the contractual rights of unsecured creditors by application of the Federal Judgment Rate (as defined below) as the rate of postpetition interest on their claims is not supported by any provision of the Bankruptcy Code.  Similarly, an argument for administrative simplicity as a rationale for depriving creditors of the benefit of their bargain should carry little or no weight in a case where the contractual rates of interest for over 80% in

---

[4] The Committee is not addressing in this memorandum of law the entitlement of certain creditors to make-whole premium or no-call claims.  As is clear with respect to entitlement to postpetition interest, where a debtor is "solvent," all creditors are entitled to the benefit of their full contractual rights, whatever they may be.

[5] As there is currently no plan being considered by the Court, nor voted on by creditors, the Committee assumes for purposes of this memorandum of law that any plan proposed by any party that does not provide for payment of all contractual entitlements of creditors prior to making any payments to equity will be rejected.

amount of the US Debtors' unsecured creditors are known and the remaining rates, if any, can be ascertained with minimal added cost or effort. The only "fair and equitable" result, in a "solvent" debtor scenario, can be that creditors receive postpetition interest at their contractually bargained-for rates.

## ARGUMENT

I.     **US Creditors are Entitled to Postpetition Interest if the US Debtors are Able to Pay All Claims for Principal and Prepetition Accrued Interest.**

Section 502(b)(2) generally disallows claims for unmatured interest. 11 U.S.C. § 502(b)(2). However, courts within the Third Circuit have recognized a well-established exception to the general prohibition on "unmatured interest" in section 502(b)(2) where all creditors are paid in full on their claims for principal and prepetition accrued interest. *In re PPI Enters. (U.S.) Inc.*, 324 F.3d at 206-07; *In re Washington Mut., Inc.*, 461 B.R. 200, 241 (Bankr. D. Del. 2011); *In re Coram Healthcare Corp.*, 315 B.R. 321, 343-44 (Bankr. D. Del. 2004); *In re Allegheny Intern., Inc.*, 118 B.R. 282, 314-15 (Bankr. W.D. Pa. 1990). This "solvent debtor" exception is rooted in several fundamental sections of the Bankruptcy Code and requires the payment of postpetition interest to US creditors before any distributions are made to NNL.

A.     **The Best Interests Test Requires the Payment of Postpetition Interest to Unsecured Creditors of "Solvent" Debtors.**

A chapter 11 plan can only be confirmed if it meets each of the requirements set forth in section 1129(a). Section 1129(a)(7), also known as the "best interests of creditors test" (the "Best Interests Test"), mandates that impaired unsecured creditors of chapter 11 debtors must receive at least the same recovery that they would receive under a chapter 7 liquidation. 11 U.S.C. § 1129(a)(7)(A). In a chapter 7 liquidation where the debtor is "solvent," a creditor must receive postpetition interest on its claim before equity holders receive any distributions. 11 U.S.C. § 726(a)(5). Therefore, because creditors of a "solvent debtor" would be entitled to

3

interest on their claims in a chapter 7 liquidation, they must receive interest on their claims under a chapter 11 plan, at least to the same extent that they would in a chapter 7 liquidation, to satisfy the Best Interests Test. *See In re Dow Corning Corp.*, 237 B.R. 380, 394 (Bankr. E.D. Mich. 1999) ("Dow I") ("the Court concludes that in this presumptively solvent estate, the Proponents are required by 11 U.S.C. §§ 1129(a)(7), 502(b)(2), 726(a)(5) and 28 U.S.C. § 1961(a) to provide interest on the [creditors'] claims."); *Washington Mut.*, 461 B.R. at 241 (stating that there is an exception to the general prohibition on unmatured interest where the debtor is solvent because under a chapter 7 liquidation, unsecured creditors are entitled to postpetition interest before shareholders receive a recovery); *see also In re W.R. Grace & Co.*, 475 B.R. 34, 159 n. 132 (D. Del. 2012) (recognizing "[t]he § 726(a)(5) exception" providing for creditors to receive postpetition interest on their claims).

Thus, whether it is via straight application of the priorities set forth in Bankruptcy Code section 726(a) or the Best Interests Test, US unsecured creditors are entitled to postpetition interest on their claims if the US estate is "solvent."

**B.      To be Fair and Equitable Under Section 1129(b), a Plan for a "Solvent" Debtor Must Provide for Postpetition Interest for Unsecured Creditors.**

As stated above, a chapter 11 plan of reorganization must meet each of the requirements of Bankruptcy Code section 1129(a) to be confirmed. If an impaired class of creditors rejects the plan, a bankruptcy court must find the plan to be "fair and equitable" with respect to each such class, or the plan cannot be confirmed over the applicable class's rejection. 11 U.S.C. § 1129(b)(1). For a plan to be "fair and equitable" with respect to unsecured creditors, each holder of an unsecured claim must receive the allowed amount of its claim before the holder of a junior claim or equity interest receives any distributions (the "Absolute Priority Rule"). 11 U.S.C. § 1129(b)(2)(B)(ii).

In a series of decisions arising out of the *Dow Corning* bankruptcy, the Sixth Circuit Court of Appeals, the only Court of Appeals to consider the "solvent debtor" exception under the Bankruptcy Code, held that the Absolute Priority Rule requires a "solvent" debtor to provide payment in full, including postpetition interest, to unsecured creditors before any payments are made to equity holders. *See In re Dow Corning Corp.*, 244 B.R. 678, 695 (Bankr. E.D. Mich. 1999) ("Dow II") (holding that the "fair and equitable" requirement mandates that postpetition interest be paid to unsecured creditors in the "solvent debtor" context); *In re Dow Corning Corp.*, 456 F.3d 668, 678 (6th Cir. 2006) ("Dow III") ("in order for a plan to be fair and equitable, unsecured and undersecured creditors' claims must be paid in full, including postpetition interest, before equity holders may participate in any recovery") (internal quotations and citations omitted).

Courts within the Third Circuit have also recognized that the Absolute Priority Rule requires a "solvent" debtor to provide postpetition interest to unsecured creditors before any payments are made to equity holders. *See Coram Healthcare*, 315 B.R. at 343-44 ("payment of postpetition interest before any distribution to equity holders in a chapter 11 case is not prohibited by the Code and, in fact, may be required."); *Allegheny*, 118 B.R. at 314-15 (relying on the Absolute Priority Rule to confirm a plan that incorporated a settlement that provided for the payment of postpetition interest to unsecured creditors).

Here, the Absolute Priority Rule mandates that unsecured creditors of the US Debtors must receive postpetition interest on their claims before NNL, as equity holder, receives any distribution from the US Debtors.

**C.**     **Unsecured Creditors of a "Solvent" Debtor Must Receive Postpetition Interest on Their Claims In Order to Be Considered Unimpaired and Outside the "Cram Down" Provisions of Section 1129(b).**

As noted above, the Absolute Priority Rule protects the rights of impaired creditors from having a plan "crammed down" upon them that provides for payment to junior creditors or interest holders prior to the impaired creditors being paid in full.  Bankruptcy Code section 1124 protects creditors from inappropriate disenfranchisement in order to skirt the protection afforded to them by section 1129(b) and further supports the payment of postpetition interest to unsecured creditors of a "solvent" debtor.

Whether a claim has been impaired is determined by whether the plan "leaves unaltered the legal, equitable, and *contractual rights* to which such claim or interest entitles the holder of such claim or interest."  11 U.S.C. § 1124(1) (emphasis added).  The concept of impairment is integral to the chapter 11 process in that it determines if a creditor is permitted to vote to accept or reject the plan or is, instead, deemed to accept the plan.  11 U.S.C. § 1126(f) (stating that a class of creditors that is not impaired under a plan is conclusively deemed to have accepted the plan and need not be solicited to vote on such plan).  If a class is unimpaired and deemed to have accepted the plan, that class is not afforded the protections of section 1129(b) and the mandate that the plan be "fair and equitable" to that class.  *See* 11 U.S.C. § 1129(b).  The Supreme Court has noted that "[c]laims are unimpaired if they retain all of their prepetition … *contractual* rights against the debtor."  *Bank of American Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. Partnership*, 526 U.S. 434, 442 n. 14 (1999) (emphasis added).

It is black letter law in the Third Circuit that "a solvent debtor must pay postpetition and pre-confirmation interest on a claim to have a class considered unimpaired."  *In re PPI Enters. (U.S.), Inc.*, 324 F.3d at 203; *see also Coram Healthcare*, 315 B.R. at 343-44; *Washington Mut.*,

461 B.R. at 241. Indeed, Congress has indicated in legislative history regarding an amendment
to the Bankruptcy Code that the protections afforded to impaired creditors, including the
protections of the "fair and equitable" test and Absolute Priority Rule under Bankruptcy Code
section 1129(b), extend to creditors who do not receive postpetition interest where a debtor is
"solvent." *See* H.R. Rep. No. 103-835, at 47-48 (1994). In *PPI Enters.*, the Third Circuit
specifically recognized that Congress's 1994 amendment to section 1124 was intended to prevent
a "solvent" debtor from depriving creditors of postpetition interest. *See* 324 F.3d at 206-07
(interpreting the legislative history of the repeal of section 1124(3) to relate solely to preventing
"solvent" debtors from depriving creditors of postpetition interest).

In light of the pivotal role a creditor's contractual rights play in determining the creditor's
rights in a bankruptcy proceeding – including whether the creditor is afforded protections against
a "cram down" plan pursuant to section 1129(b) – the law requires that those contractual rights
be recognized in all respects. When a creditor's contractual entitlements are left in place or
satisfied in full, that creditor's claim is unimpaired and the creditor does not need the right to
vote or the protections of section 1129(b) because it has received the full benefit of its bargain.
Conversely, when a creditor has not received the benefit of its bargained-for entitlements, its
claim is impaired and the creditor is protected from an unfair and inequitable chapter 11 plan by
the Absolute Priority Rule and section 1129(b). This principle of US bankruptcy law mandates
that postpetition interest is paid to unsecured creditors before equity can recover.

## II.   US Creditors are Entitled to Postpetition Interest at the Contract Rate.

As demonstrated above, US creditors are clearly entitled to recover postpetition interest
where a debtor estate can pay in full claims for principal and prepetition accrued interest. The
next question to be answered is, at what rate is postpetition interest to be paid to an unsecured
creditor that is entitled to postpetition interest? The Bankruptcy Code does not explicitly set

7

forth the rate to be paid and post-Code bankruptcy court and district court case law has not been consistent in its determination of this question. However, two fundamental principles of bankruptcy law enunciated in multiple Supreme Court cases, demonstrate that postpetition interest must be paid at the contractually bargained-for rate: (i) contractual rights are to be respected in bankruptcy unless such rights have been *expressly* abridged by Congress in the Bankruptcy Code; and (ii) pre-Code precedent must be respected absent "a clear indication that Congress intended such a departure." Pre-Code Supreme Court and Circuit Court cases consistently held that the stated contract rate must be enforced in a "solvent" debtor case. Several of these cases expressly stated that failure to provide payment of interest at the full contract rate violates the Absolute Priority Rule. Despite the lack of Congressional specificity, where a debtor is able to pay in full claims for principal and prepetition accrued interest, a plan can only comply with the Bankruptcy Code if it provides for the payment of postpetition interest at the contract rate.

### A.    A Creditor's Rights Under Applicable Nonbankruptcy Law Must be Respected in Bankruptcy.

Bargained-for contractual rights must be respected in bankruptcy absent express abrogation by Congress or compelling equitable circumstances. The Supreme Court has specifically recognized that applicable non-bankruptcy rights must be upheld unless the Bankruptcy Code explicitly provides otherwise or "a federal interest requires a different result." *See Butner v. United States*, 440 U.S. 48, 54-55 (1979) (determining that the property rights in the assets of a bankrupt's estate are governed by state law). While *Butner* involved the entitlement of a mortgagee to rents collected from a property in which it had a security interest, the concept that the underlying rights of creditors must be respected unless explicitly addressed

in the Bankruptcy Code is equally applicable to a creditor's entitlement to its contract rate of postpetition interest.[6]

That the *Butner* principle applies to the determination of a creditor's claims in bankruptcy is demonstrated by the Supreme Court's own reliance on *Butner* to find that contractually bargained-for attorneys' fees incurred in a postpetition litigation may be recovered by an unsecured creditor. *See Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 450-51 (2007). In *Travelers*, the Supreme Court cited *Butner* for the "basic federal rule in bankruptcy... that state law governs the substance of claims." *Id.* The Supreme Court then found that the Ninth Circuit's determination that an unsecured creditor was not entitled to contractually bargained-for attorneys' fees where such fees were incurred in connection with a postpetition litigation was improper where the Circuit court did not reach its conclusion based on applicable non-bankruptcy law. *See id.* at 451 (noting that state law permitted the payment of attorneys' fees incurred in a bankruptcy proceeding).

Here, applicable nonbankruptcy law entitles US creditors to receive postpetition interest at the contract rate. Under New York law – which governs the bondholder claims making up a substantial majority of the interest at issue here –absent the applicable rate being usurious, creditors are permitted to recover their contractually bargained-for interest. *See* N.Y. GEN OBLIG. LAW § 5-501. Neither the Bankruptcy Code nor any other applicable federal or state law has even impliedly, let alone expressly, abrogated the rights of an unsecured creditor to receive postpetition interest at the contract rate. As discussed above, the Bankruptcy Code contains no express prohibition on contractually bargained-for postpetition interest in a "solvent" debtor

---

[6] Indeed, the Third Circuit has followed the Supreme Court's lead and the *Butner* principle in a number of different circumstances. *See In re Majestic Casinos, LLC*, 716 F.3d 736, 751 (3d Cir. 2013) (looking to applicable federal tax law to determine if debtor's tax status was a property right included in the debtor's estate); *In re Fernandos*, 402 F.3d 147, 152 n. 2 (3d Cir. 2005) (refusing to "upend" New Jersey state law with respect to whether rents were subject to creditor's liens); *In re Jason Realty, L.P.*, 59 F.3d 423, 427 (3d Cir. 1995) (same).

scenario. Rather, Bankruptcy Code section 726(a)(5) merely references the ability of creditors to recover unmatured interest at the "legal rate" where all prepetition claims have been paid in full. 11 U.S.C. § 726(a)(5). Further, the Committee is unaware of any other federal law which would impact or govern a creditor's entitlement to postpetition interest at the contract rate.

Indeed, the Sixth Circuit, in the seminal *Dow* decision, stated that "absent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights." *Dow III*, 456 F.3d at 679; (citing *In re Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986) ("[I]f the bankrupt is solvent the task for the bankruptcy court is simply to enforce creditors' rights according to the tenor of the contracts that created those rights.")); *see also UPS Capital Business Credit v. Gencarelli  (In re Gencarelli),* 501 F.3d 1, 7 (1st Cir. 2007) ("This is a solvent debtor case and, as such, the equities strongly favor holding the debtor to his contractual obligations as long as those obligations are legally enforceable under applicable non-bankruptcy law.").

If the US Debtors are able to pay their prepetition claims in full, ignoring the contractual rates of interest will have the effect of redistributing substantial amounts from US unsecured creditors to NNI's Canadian shareholder, NNL. As discussed further below, there is no consideration, equitable or otherwise, that warrants this transfer of value to an equity holder at the expense of the contractual rights of US creditors.

**B.      To be Fair and Equitable Under Section 1129(b), a Plan for a "Solvent" Debtor Must Provide for Postpetition Interest at the Contract Rate.**

The same "fair and equitable" standard that mandates the payment of postpetition interest to unsecured creditors where a debtor is able to pay all claims for principal and prepetition accrued interest also dictates that such postpetition interest must be paid at the bargained-for contractual rate. As demonstrated above, a plan may be "crammed down" on a dissenting class

10

of creditors only if it is "fair and equitable" as to that class of creditors. 11 U.S.C. § 1129(b)(2). With respect to unsecured creditors, the requirement that the plan be "fair and equitable" includes the mandate that the plan not violate the Absolute Priority Rule – that junior creditors or equity holders cannot receive distributions until each class of unsecured creditors is paid in full. 11 U.S.C. § 1129(b)(2)(B)(ii). As the Sixth Circuit noted, "the absolute priority rule applies with equal force when the debtor is solvent." *Dow III*, 456 F.3d at 678 (citing *Consol. Rock Prods. Co. v. DuBois*, 312 U.S. 510, 527 (1941)). In applying the "fair and equitable" rule in a "solvent" debtor case, the Sixth Circuit held that a plan that does not recognize and enforce a creditor's contractual rights, including the right to receive interest at the bargained-for rate, violates section 1129(b). *Dow III*, 456 F.3d at 679.[7]

In the *Dow* line of cases, the dissenting creditor class argued that a plan providing for postpetition interest at the Federal Judgment Rate was not fair and equitable under section 1129(b) because it did not provide for interest at the contractual rates. *See Dow III*, 456 F.3d at 671. The bankruptcy court found that a plan proposed for a "solvent" debtor that does not provide for postpetition interest at the contract rate violates the "fair and equitable" standard of section 1129(b), reasoning that in the chapter 11 context, Congress did not intend to preclude creditors from being paid at the contract or default rate. *See Dow II*, 244 B.R. at 695 (concluding that "a plan which would pay the dissenting class pendency interest at the minimum rate pursuant to §§ 1129(a)(7)(ii)/726(a)(5) is not necessarily "fair and equitable" for purposes of § 1129(b)."). The bankruptcy court relied, in part, on the Supreme Court's decision in *DuBois* holding that a plan permitting equity holders to retain an interest in the debtor without paying creditors their contractual rate of postpetition interest "ran afoul" of the Absolute Priority Rule.

---

[7] The Sixth Circuit expressly held that it was appropriate to enforce the creditors' contractual rights, but remanded the case for final determination as to the appropriate interest rate. *See Dow III*, 456 F.3d at 677.

*See id.* at 688-89 (citing *Dubois*, 312 U.S. at 527, decided under the predecessors to section 1129(b)'s "fair and equitable" test – Bankruptcy Act sections 77 and 77B, each of which required a judicial finding that a plan is "fair and equitable."); Bankruptcy Act, 11 U.S.C. §§ 205, 207 (*repealed* 1979).

In *Allegheny*, the Bankruptcy Court for the Western District of Pennsylvania followed the Sixth Circuit's lead and found that a plan that incorporated a settlement of claims with certain unsecured institutional lenders met the "fair and equitable" standard of section 1129(b) where the settlement provided for payment of postpetition interest at the contractual rate. 118 B.R. at 314-15. In that case, an equity committee argued that the plan settlement violated section 1129(b) on the grounds that, among other things, the unsecured claimants were receiving postpetition interest at the contract rate instead of a statutory rate under Pennsylvania state law. *See id.* at 314. In approving the settlement, the court disagreed with the equity committee's argument, holding instead that "the contractual provision for interest applies post-petition where the estate proves to be solvent." *Id.* at 315 (citing *Debentureholders Protective Comm. Of Continental Inves. Corp. v. Continental Inves. Corp.*, 679 F.2d 264, 269 (1st Cir. 1982)).

The Canadian Debtors and Monitor take the same position as the equity committee in *Allegheny* (albeit substituting the Federal Judgment Rate for the Pennsylvania state rate) and assert that the Court should ignore US unsecured creditors' contractual rights. However, as Judge Cosetti determined in *Allegheny*, creditors must receive postpetition interest at the contract rate if a plan is to be "fair and equitable." Failure to satisfy the claims of US unsecured creditors in full, including postpetition interest at the contract rate, before making distributions to equity fails to pass muster under the "fair and equitable" test and violates the Absolute Priority Rule.

**C.    Pre-Code Case Law Provides Precedent for the Provision of Postpetition Interest at the Contract Rate and Such Precedent is to be Followed in Post-Code Cases if not Statutorily Overruled.**

The argument that unsecured creditors must recover postpetition interest at the contract rate is bolstered by the weight of cases decided under the predecessor of the Bankruptcy Code, which cases the Supreme Court has held must be respected in interpreting the Bankruptcy Code unless Congress was clear in its intent to change past practice. *See Cohen v. De La Cruz*, 523 U.S. 213, 221 (1998) (determining that the Bankruptcy Code should not be interpreted to erode past bankruptcy practice absent "a clear indication that Congress intended such a departure."); *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) (stating that the Court is "reluctant to accept arguments that would interpret the Bankruptcy Code, however vague the particular language under consideration might be, to effect a major change in pre-Bankruptcy Code practice that is not the subject of at least some discussion in the legislative history."). There is no Congressional intent, let alone a "clear indication," contained in the Bankruptcy Code to change the courts' past practice of providing for the payment of postpetition interest at contractually bargained-for rates. To the contrary, as described below, the legislative history of the Bankruptcy Reform Act of 1994 indicates that Congress intended to protect the ability of creditors to recover postpetition interest at the contract rate before distributions are made to equity.

Under the Bankruptcy Act, courts were tasked with balancing the equities of the case when determining the appropriate rate of postpetition interest to be awarded to creditors. *See Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 165 (1946). Under this framework, courts applied the rate of interest provided for in the applicable contract to calculate postpetition interest on claims in bankruptcy in recognition of the creditors' prepetition contractual rights. *See Consol. Rock Prods. Co. v. DuBois*, 312 U.S. at 527-29 (holding that, in the case of a solvent debtor, a plan of reorganization runs afoul of the Absolute Priority Rule if

13

equity receives value before bondholders are paid their full contract rate of interest); *In re Realty Assocs. Sec. Corp.*, 163 F.2d 387, 390 (2d Cir. 1947) (relying on New York state law to find that the contract rate is the appropriate rate for calculation of postpetition interest); *Empire Trust Co v. Equitable Office Bldg. Corp.*, 167 F.2d 346, 347 (2d Cir. 1948) (same, citing *Realty Assocs.*); *In re Chicago, Milwaukee, St. Paul, and Pacific RR*, 791 F.2d at 529-30 ("when the debtor is solvent the judicial task is to give each creditor the measure of his contractual claim, no more and no less."). For example, in a case filed under chapter X of the Bankruptcy Act, the First Circuit held that a plan that denied unsecured creditors of a "solvent" debtor their contractual right to compounding postpetition interest at the contractual rate could not be approved. *See Debentureholders Protective Comm.*, 679 F.2d at 270 (finding that the plan was not "fair and equitable" as to unsecured noteholders "because it did not compensate them for the contractual right of which they were deprived.").

The Bankruptcy Code did not expressly modify the pre-Code practice of the courts in granting postpetition interest to creditors at the contract rate. Nor is there anything reflecting a Congressional intent, and certainly no "clear" Congressional intent, to modify the pre-Code practice. To the contrary, more recent legislative history indicates that Congress intended to maintain the practice of providing postpetition interest to creditors at the contract rate where the debtor is able to pay prepetition claims in full. Specifically, the legislative history of section 1124 indicates that Congress repealed section 1124(3) in 1994 specifically to prevent solvent debtors from depriving creditors of postpetition interest and favorably cited *DuBois* – a case clearly standing for the proposition that creditors are entitled to postpetition interest at the contract rate. *See* H.R. Rep. No. 103-835, at 47-48 (1994). As the Bankruptcy Code itself, as well as the legislative history attendant thereto, offers no indication of intent to override pre-

Code practice, the Committee respectfully submits that this Court must follow these other courts in ruling that unsecured creditors are entitled to postpetition interest at the contract rate.

### D.    There is No Basis for the Use of the Federal Judgment Rate.

The Canadian Debtors and Monitor will argue that, to the extent US creditors are entitled to postpetition interest, such interest should be paid at the federal judgment rate (the "Federal Judgment Rate"), as provided in section 1961 of title 28 of the United States Code (the "Judicial Code").[8] The Committee expects that these arguments in favor of the Federal Judgment Rate will generally fall into one of three categories: (1) the use of the definite article "the" before "legal rate" in Bankruptcy Code section 726(a)(5) should be interpreted as requiring a single rate for all creditors; (2) postpetition interest is procedural in nature and should be governed by federal law; and (3) the use of the Federal Judgment Rate will promote administrative simplicity. Each of these arguments fails as a matter of law and ignores the policy of protecting creditors' rights embodied in the Bankruptcy Code and its predecessor. Indeed, while a number of courts have held that postpetition interest should be paid at the Federal Judgment Rate,[9] these courts

---

[8] Pursuant to Judicial Code section 1961, "interest shall be allowed on any money judgment in a civil case recovered in a district court . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges." The Federal Judgment Rate for the week ending January 16, 2009 was 0.43%.

[9] See e.g., Onink v. Cardelucci (In re Cardelucci), 285 F.3d 1231, 1235 (9th Cir. 2002) ("As of the date of the filing of the petition, creditors hold a claim, similar to a federal judgment, against the estate, the payment of which is only dependent upon completion of the bankruptcy process. In this respect, the purpose of postpetition interest makes the award analogous to an award of post-judgment interest."); Washington Mut., 461 B.R. at 242 (holding that the "legal rate" is the Federal Judgment Rate); In re Melenyzer, 143 B.R. 829, 832-33 (Bankr. W.D. Tex. 1992) (applying postpetition interest under the Solvent Debtor Exception at the Federal Judgment Rate); In re Godsey, 134 B.R. 865, 867 (Bankr. M.D. Tenn. 1991) (the "legal rate" means the Federal Judgment Rate).

15

have largely disregarded the importance of the absolute priority rule and the requirement that a

plan be "fair and equitable" pursuant to Bankruptcy Code section 1129(b).[10]

### 1.    "The" Legal Rate Does Not Mean the Federal Judgment Rate

The courts that have applied the Federal Judgment Rate have often relied on the inclusion

of the definite article "the" prior to "legal rate" in section 726(a)(5) as supporting the proposition

that Congress intended the application of a single, uniform rate of interest. *See e.g., Cardellucci,*

285 F.3d at 1234-35 (same); *Wash. Mut.*, 461 B.R. at 242 (relying in part on the fact that section

726(a)(5) refers to "the" legal rate of interest rather than "a" legal rate of interest to conclude that

Federal Judgment Rate is the appropriate rate of postpetition interest).  The Committee

respectfully submits that this argument ignores pre-Code precedent and the manner in which

Congress has addressed rates of interest elsewhere in the U.S. Code.  Specifically, Congress was

capable of expressly referring to the Federal Judgment Rate when it intended to do so, as

demonstrated by the number of clear references to such rate in numerous places in the US Code,

including:[11]

- 15 U.S.C. § 4303(a): "[A]ny person who is entitled to recovery on a claim under such section shall recover the actual damages sustained by such person, **interest calculated at the rate specified in section 1961 of Title 28** on such actual damages . . ."

- 15 U.S.C. § 4303(b): "[A]ny State that is entitled to monetary relief on a claim under such section shall recover the total damage sustained as described in subsection (a)(1) of such section, **interest calculated at the rate specified in section 1961 of Title 28** on such total damage."

---

[10] Notably, the decision in *Washington Mut.* is not binding authority on the Bankruptcy Court in these cases, as decisions by bankruptcy courts within the same district are not binding on other bankruptcy courts in that district. *See Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) (finding that there is no such concept as "law of the district" and stating, "[w]here a second judge believes that a different result may obtain, independent analysis is appropriate." (internal citations omitted)).

[11] Emphasis added in each of the following citations.

16

- 15 U.S.C. § 4303(c): "[A]ny person who is entitled to recovery on a claim under such provision shall not recover in excess of the actual damages sustained by such person, **interest calculated at the rate specified in section 1961 of Title 28** on such actual damages . . ."

- 21 U.S.C. § 844a(h): The Attorney General may institute a civil action to recover "the amount assessed and an amount representing **interest at a rate computed in accordance with section 1961 of Title 28.**"

- 22 U.S.C. § 6082(a)(1)(B): With respect to the amount of civil liability for trafficking in confiscated property claimed by U.S. nationals, "Interest under subparagraph (A)(i) shall be at **the rate set forth in section 1961 of Title 28** . . ."

- 28 U.S.C. § 2412(f): "[I]nterest shall be paid on the amount of the award as affirmed. **Such interest shall be computed at the rate determined under section 1961(a) of this title** . . ."

- 28 U.S.C.A. § 2465(b)(1)(B): "Except as provided in paragraph (2), in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, **the United States shall be liable for-- . . . post-judgment interest, as set forth in section 1961 of this title.**"

Congress's express inclusion of references to the Federal Judgment Rate in other parts of the U.S. Code and *exclusion of that same language in the Bankruptcy Code* must be given meaning. *Rosello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another ..., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted).

An analysis of Congress' use of the phrase "the legal rate" in other statutes is similarly instructive. Importantly, Congress has used "legal rate" in numerous places in the U.S. Code to mean something *other than* the Federal Judgment Rate. Specifically, Congress has used the "legal rate" of interest in the U.S. Code as follows:

- 15 U.S.C. § 636(4)(A): "[T]he maximum legal rate of interest on any financing made on a deferred basis pursuant to this subsection . . ." In this section, "legal rate" means "a rate [up to a maximum] prescribed by the Administration."

17

- 15 U.S.C. § 697(c)(2): "[T]he maximum legal rate of interest on any commercial loan which funds any portion of the cost of the project financed pursuant to this section . . ." In this section, the "legal rate" means "a rate which is established by the Administrator of the Small Business Administration."

- 22 U.S.C. § 2151t(b): Interest shall be no "higher than the applicable legal rate of interest of the country in which the loan is made." In this section, the "legal rate" is a rate to be determined by a foreign country.

- 26 U.S.C. § 501(c)(16) and 26 U.S.C. § 521(b)(2): Tax exemption will not be denied if dividend rate does not "exceed the legal rate of interest in the State of incorporation or 8 percent per annum, whichever is greater . . ." In these sections, the "legal rate" is a rate determined by state law.

Most importantly, Congress has *never* used the phrase "legal rate" to mean the Federal Judgment Rate. Any attempt to force such meaning on the phrase now is wholly unsupported.

### 2. Postpetition Interest is Neither Procedural in Nature nor Akin to a "Federal Judgment" and Must be Governed by Applicable Nonbankruptcy Law.

In finding that creditors are entitled to receive postpetition interest at the Federal Judgment Rate rather than a contractually bargained-for rate, certain courts have determined that postpetition interest, like post-judgment interest, is procedural in nature and should be dictated by federal law. *See Cardelucci*, 285 F.3d at 1235; *Washington Mut.*, 461 B.R. at 242-43; *In re Chiapetta*, 159 B.R. 152, 160-61 (Bankr. E.D.Pa. 1993). These cases liken a claim in bankruptcy to a federal judgment and conclude that pendency interest on such claim should be treated as any other federal judgment and accrue at the Federal Judgment Rate. *See Chiapetta*, 159 B.R. at 161. These courts, however, ignore the fundamental bankruptcy principle recognized by the Supreme Court in *Travelers* that the substance of claims is governed by applicable non-bankruptcy law. *See* 549 U.S. at 450-51.

As discussed above, a creditor's nonbankruptcy rights must be respected in bankruptcy absent an express intent by Congress to abrogate such rights in the Bankruptcy Code. There is

18

no evidence in the Bankruptcy Code or the legislative history regarding the Bankruptcy Code of any intent to curtail the rights of creditors to receive postpetition interest at their contractually bargained-for rates where a debtor is able to fully pay prepetition claims. The adoption of the Federal Judgment Rate on the basis that claims are to be treated as simple federal judgments is in clear violation of the basic tenet of bankruptcy practice that courts are to look to underlying nonbankruptcy law to determine a creditor's claims.

### 3.    Administrative Simplicity is Not a Basis to Disregard Contractual Rights.

Courts applying the Federal Judgment Rate have also relied on the "simplicity" of applying a single rate of interest to all creditors. *See, e.g., Cardelucci,* 285 F.3d at 1235 (stating that "federal rate promotes uniformity within federal law"). As the bankruptcy court in *Dow* noted, however, there is a price to pay for administrative simplicity – the disregard of a creditor's validly bargained-for rights in a scenario where the estate is able to pay prepetition claims in full. *See Dow II*, 244 B.R. at 685. As noted above, where a debtor is able to pay its prepetition claims in full, the court's role is to enforce and protect the creditor's contractually bargained-for rights before any amounts are returned to equity. *See Dow III*, 456 F.3d at 679. Administrative simplicity is not a valid reason to ignore this principle of bankruptcy law.

### 4.    The Court Does Not Have Discretion to Disregard Contractual Rights.

The Canadian Debtors and Monitor may argue that the Court should exercise its discretion and apply the Federal Judgment Rate, rather than applicable contractual rates, based on equitable considerations. The Committee respectfully submits that the Court does not have such discretion. Where a debtor is "solvent," a court's role is to safeguard and enforce creditors' contractual rights. *See Dow III*, 456 F.3d at 679 ("[w]hen a debtor is solvent, then, the presumption is that a bankruptcy court's role is merely to enforce the contractual rights of the

19

parties, and the role that equitable principles play in the allocation of competing interest is significantly reduced."). Indeed, the Sixth Circuit has stated that a "bankruptcy judge does not have free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness." *Id.* (internal citation omitted).

There are no compelling equitable considerations in these cases that permit this Court to curtail the valid contractual rights of US creditors. One of the truly material terms of any agreement to extend credit, whether it be a bond indenture, a purchase order, by statute or other evidence of an extension of trade credit, is the interest rate charged to the borrower or customer for the extension of such credit. This stated, contractually bargained-for, interest rate must be respected by the bankruptcy court where a debtor estate is able to pay prepetition claims in full. The desire of the US Debtors' equity holder, NNL, to recover additional funds to pay its creditors does not constitute a "compelling" equitable consideration to grant this Court discretion to redistribute significant proceeds from US creditors to Canadian creditors in derogation of the valid contractual rights of US creditors.[12]

The Canadian Debtors and Monitor have no basis to argue that US creditors have acted improperly or in any manner that warrants the involuntary transfer of value by US creditors to

---

[12] In addition to the contractually-bargained for rights under contracts governing extensions of credit, there is also the question of whether postpetition interest may be payable to holders of purely statutory claims, and if so, at what rate. In that case, the "legal rate" would not be a bargained-for contractual rate, but may instead be a prescribed statutory rate. For example, the Pension Benefit Guaranty Corporation (the "PBGC") — a wholly owned United States government corporation and an agency of the United States that administers the termination insurance program for defined benefit pension plans under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301-1461 — was appointed statutory trustee of the Nortel Networks Retirement Income Plan ("Plan"), which terminated July 17, 2009. The PBGC asserts certain statutory claims with respect to the Plan, among which are PBGC's claim for the amount of the Plan's unfunded benefit liabilities. 29 U.S.C. § 1362 (a), (b). Pursuant to ERISA and federal regulations governing the PBGC, interest accrues on PBGC's claims for a plan's unfunded benefit liabilities at a rate of approximately 4%. See 29 U.S.C. § 1362(b)(1)(A) (establishing liability for interest in accordance with regulations prescribed by PBGC); 29 C.F.R. § 4062.7(a), (c) (stating that liability includes interest from the termination date of the applicable plan and that such interest rate is to be calculated pursuant to section 6601(a) of the Internal Revenue Code). To the extent postpetition interest may be payable to the US creditors, holders of other statutory claims, including those of other governmental units, may likewise assert entitlement to a prescribed statutory rate of interest.

NNL that will result from applying the Federal Judgment Rate. Over $4 billion of the unsecured claims against the US Debtors result from the US Debtors being required to guarantee the funded debt issued by their Canadian parents. Rather than acting improperly, the US Debtors and US creditors (and their representatives) have worked tirelessly and cooperatively with the other estates to maximize value for the Nortel estates through the sale processes and zealously, but appropriately, advocated their positions in the allocation litigation. The Canadian Debtors and Monitor cannot set forth a basis for this Court to disregard the contractual rights of US creditors to postpetition interest at their bargained-for rates where the US Debtors are able to pay their prepetition claims in full. A desire to receive more than that to which they are legally entitled does not warrant the overruling of consistent Supreme Court precedent on basic principles respecting contractual state law rights in bankruptcy proceedings.

### III.   The Entitlement to, and Appropriate Rate of Postpetition Interest for US Creditors is Not Properly Before the Court.

While the Committee submits this memorandum of law in accordance with the Courts' directions, as set forth in the US Parties' submission on June 20, 2014 [ECF No. 13883], the Committee continues to believe that the issues regarding entitlement to postpetition interest are not properly before the Court at this time. These issues are not ripe until the allocation litigation is resolved and it is known whether the US Debtors have sufficient funds to pay prepetition claims and accrued interest in full. Further, the Court's consideration of these matters is premature outside of a chapter 11 plan process. As demonstrated above, the Court's determination of whether US creditors are entitled to recover postpetition interest and the rate thereof entails an analysis of, among others, Bankruptcy Code sections 1124, 1129(a)(7) and 1129(b). *Each* of these sections relate to the terms of a plan that simply does not exist at this time. Moreover, these matters that are more appropriately determined in the context of

21

confirmation are being decided without the procedural protections provided by the Bankruptcy Code and Bankruptcy Rules. For example, creditors have not received adequate disclosure regarding the plan in the form of a disclosure statement, as required by Bankruptcy Code section 1125. 11 U.S.C. § 1125(b). Also, creditors have not been given 28 days' notice of the time to file objections to, and the hearing to consider, confirmation of a plan as required by Bankruptcy Rule 2002(b). *See* FED R. BANKR. P. 2002(b). Instead, parties in interest were afforded 15 days' notice to file opening briefs on an issue that is important to all US unsecured creditors, including a multitude of unsecured creditors that are not Core Parties in the allocation litigation. *See* Scheduling Order re: Interest Issues, dated June 30, 2014 [ECF No. 13910].

The procedural due process concerns for US unsecured creditors are not limited to the fact that the postpetition interest issues are properly addressed in the context of plan confirmation. The Monitor's request to have these issues heard at this point in time appears to constitute either a claims objection or a declaratory judgment action. To the extent the Monitor's request is an objection to *every* unsecured claim allowed against the US Debtors, each such creditor is afforded 30 days' notice of such objection pursuant to Bankruptcy Rule 3007(a). *See* FED R. BANKR. P. 3007(a). If instead the Monitor seeks a declaratory judgment on the postpetition interest issues, such requested relief is governed by Bankruptcy Rule 7001(a)(7). *See* FED R. BANKR. P. 7001(a)(7) (stating that a proceeding for an injunction or equitable relief outside of a plan process requires the commencement of an adversary proceeding). If the Monitor's request requires an adversary proceeding, such proceeding must be commenced by complaint, with opposing parties – once again, *every* US unsecured creditor – given 30 days to answer. *See* FED R. BANKR. P. 7003, 7012(a). The Monitor's request does not comply with any of the foregoing procedural requirements.

## CONCLUSION

Where a debtor estate is able to pay its prepetition claims in full, courts must respect creditors' contractual rights, including the right to recover interest at a contractually bargained-for rate. The Bankruptcy Code clearly provides that for a plan to be "fair and equitable" and comply with the Absolute Priority Rule, unsecured claims must be satisfied in full before equity can recover. To determine whether unsecured claims have been paid in full, courts look to applicable nonbankruptcy law – most notably, state law governing contractual rights. Absent Congressional intent to abrogate applicable nonbankruptcy rights, courts should respect the bargained-for rights of creditors. The Bankruptcy Code evidences no intent to limit the right of unsecured creditors to receive postpetition interest at the contract rate where a debtor is able to pay in full claims for principal and prepetition accrued interest. Rather, the Bankruptcy Code, the principles underlying the Code and precedential pre-Code case law all support the entitlement to postpetition interest at the contract rate. There is no basis in the law or based upon the facts and circumstances of these cases to deviate from the foundational principle that where a debtor is "solvent," the role of the courts is to respect and enforce contractual rights before equity receives any recovery.

Dated: July 15, 2014
Wilmington, Delaware

AKIN GUMP STRAUSS HAUER & FELD LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Robert Johnson (admitted *pro hac vice*)
Brad Kahn (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

  - and -

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Counsel to the Official Committee of Unsecured
Creditors of Nortel Networks Inc., et al.