**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>NORTEL NETWORKS INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10138-KG<br>(Jointly Administered)<br><br>**Re:  D.I. 13910, 14024 & 14025** |

**SUPPLEMENTAL OPENING BRIEF OF LAW DEBENTURE TRUST COMPANY OF NEW YORK, AS INDENTURE TRUSTEE FOR THE NNCC NOTES, WITH RESPECT TO MONITOR'S REQUEST THAT THE COURT DETERMINE BONDHOLDER ENTITLEMENT TO POST-PETITION INTEREST AND ADDITIONAL BONDHOLDER CLAIMS ISSUES UNDER U.S. LAW**

Law Debenture Trust Company of New York ("Law Debenture"), as indenture trustee for the NNCC Notes (as defined below), by and through its attorneys, Patterson Belknap Webb & Tyler LLP and Morris James LLP, hereby submits this supplemental brief ("Supplemental Brief") pursuant to an Order of the United States Bankruptcy Court for the District of Delaware on June 30, 2014 (D.I. 13910) ("Interest Issues Order").

**BACKGROUND**

1. Pursuant to: (a) an indenture, dated as of February 15, 1996 (the "Indenture"), by and among Nortel Networks Limited (f/k/a Northern Telecom Limited) ("NNL"), as issuer and guarantor, Nortel Networks Capital Corporation (f/k/a Northern Telecom Capital Corporation) ("NNCC"), as issuer, and The Bank of New York, as trustee, (b) the Prospectus for Northern Telecom Capital Corporation's $150,000,000 7.40% Notes Due 2006

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Nortel Networks Inc. (6332), NNCC (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), and Nortel Networks Cable Solutions Inc. (0567) (collectively, the "U.S. Debtors").

7173261/

and $150,000,000 7.875% Notes due 2026, dated May 2, 1996 ("Prospectus"), and (c) the Prospectus Supplement for Northern Telecom Capital Corporation's $150,000,000 7.40% Notes Due 2006 and $150,000,000 7.875% Notes due 2026, dated June 12, 1996 ("Prospectus Supplement," and, with the Indenture and the Prospectus, "Indenture Documents"), NNCC and NNL issued $150 million in aggregate principal amount of 7.875% Notes Due 2026 ("NNCC Notes"). Pursuant to the terms of the Indenture Documents, Law Debenture filed timely proofs of claim against NNCC and NNL for all principal, interest, and other amounts due on account of the NNCC Notes.[2]

2. Law Debenture, the Bank of New York, and the *ad hoc* group of bondholders have submitted an opening brief pursuant to the Interest Issues Order that addresses issues common to all of the so-called "cross-border bonds," including the NNCC Notes (D.I. 14025) (the "Opening Brief").[3] Law Debenture submits this Supplemental Brief to address two additional issues unique to the NNCC Notes.[4]

## SUPPLEMENTAL ARGUMENT

**A.  Breach of a "No-Call" Provision Would Entitle the Holders of the 2026 Notes to Damages.**

3. In addition to the rights and claims set forth in the Opening Brief, the

---

[2] Law Debenture subsequently amended the proofs of claim it filed against NNCC (as amended, the "NNCC Notes US Claim") and NNL (with the NNCC Notes US Claim, the "NNCC Notes Claims"). Copies of the Indenture Documents were included with the NNCC Notes Claims.

[3] Law Debenture also joins (a) any briefs filed by holders of NNCC Notes and (b) the *Memorandum of Law of the Official Committee of Unsecured Creditors Regarding Entitlement of US Creditors to Postpetition Interest*, dated July 15, 2014 (D.I. 14024), filed by the Official Committee of Unsecured Creditors (the "Committee"). Law Debenture is a member of the Committee, but submits the Opening Brief and this Supplemental Brief in its capacity as representative of the interests of the holders of the NNCC Notes.

[4] The Opening Brief and the Supplemental Brief do not address Law Debenture's entitlement to fees and expenses under the Indenture as payment of those amounts are not dependent upon a finding of solvency. Law Debenture's rights regarding such fees and expenses are expressly reserved.

holders of the NNCC Notes would also be entitled to damages for breach of a no-call provision prohibiting repayment of the NNCC Notes before their stated maturity date.[5]  A no-call serves to "protect [a] bargained-for yield [. . . ] by expressly prohibit[ing] prepayment." *In re S. Side House, LLC*, 451 B.R. 248, 268 (Bankr. E.D.N.Y. 2011).[6]  Courts have not specifically enforced a no-call provision against a debtor in bankruptcy, *see, e.g., In re Calpine Corp.*, 365 B.R. 392, 397 (Bankr. S.D.N.Y. 2007) ("*Calpine I*") (collecting cases), but prepayment of a note in contravention of a no-call provision gives rise to damages because the prepayment "deprives [the holder] of the present value of an expected payment stream." *In re Premier Entm't Biloxi LLC*, 445 B.R. 582, 641 (Bankr. S.D. Miss. 2010).  *See also In re Chemtura Corp.*, 439 B.R. 561, 605 (Bankr. S.D.N.Y. 2010) ("With a solvent debtor, issues as to fairness amongst creditors, in sharing a limited pie, no longer apply; the allowance of claims under a make-whole provision, or for damages for breach of a no-call [provision], no longer comes at the expense of other creditors.") and *Calpine I* ("The [lenders'] expectation of an uninterrupted payment stream has been dashed giving rise to damages. Accordingly, [. . . ] the [lenders] have an unsecured claim for damages for the Debtors' breach of the agreements.").[7]  Payment of the NNCC Notes before their stated maturity in June 2026 would deny the holders of the NNCC Notes the benefit of their bargain – the income stream contracted for over the life of the loan – and give rise to an

---

[5] *See Prospectus Supplement*, S-3.  ("The Offered Notes may not be redeemed prior to maturity[.]")

[6] *See also Id.*, at 266-67 (Bankr. E.D.N.Y. 2011) ("Prepayment provisions are the consequence of well-settled law, dating back to the early 19th century, that a borrower may not prepay its loan before its maturity date unless the parties otherwise agree or prepayment is allowed by statute. This prohibition arises from the 'rule of perfect tender in time,' under which a lender or mortgage investor has the absolute right to rely upon the income stream contracted for over the life of the loan.").  *See generally* Scott K. Charles & Emil A. Kleinhaus, *Prepayment Clauses in Bankruptcy*, 15 AM. BANKR. INST. L. REV. 537, 543-44 (Winter 2007).

[7] *But see, e.g., HSBC Bank USA v. Calpine Corp.*, 2010 U.S. Dist. LEXIS 96792 (S.D.N.Y. Sept. 14, 2010) (differing with the Bankruptcy Court's determination to allow unsecured claims for breach of a no-call in *Calpine I*) and *In re Solutia Inc.*, 379 B.R. 473, 485 (Bankr. S.D.N.Y. 2007).

unsecured claim for damages.

    4. The damage calculation will require the development of an evidentiary record. At least two courts have ruled that the measure of such damages is the present value of the difference between the interest that could be earned under current market conditions and the interest that would have been earned but for the impermissible prepayment. *See Chemtura*, 439 B.R. at 599 (damages equal "the present value of the difference between (1) the interest income the lender would have earned on the loan through maturity and (2) the interest income that the lender could have earned by making an investment comparable to the loan"), and *Premier Entm't*, 445 B.R. at 646 ("[t]he amount of damages is the present value difference between the market interest rate and the contract interest rate at the time the Notes were repaid.").[8] Law Debenture reserves the right to argue in support of this or other methods for calculating the damages for breach of the NNCC Notes' no-call provision and to introduce evidence in support of such methods, including expert testimony, if necessary, at the appropriate time.

  **B.** **A Support Agreement Requires That NNI Maintain NNCC's Solvency At All Times.**

    5. As the Opening Brief notes, adjudication of the proper rate of post-petition interest and the other entitlements of the bondholders presumes that the U.S. Debtors will have enough funds to pay administrative and pre-petition claims in full. (Opening Brief, ¶13.) Separately, the holders of the NNCC Notes have the benefit of a Support Agreement that was

---

[8] *Cf. Teachers Ins. & Annuity Ass'n v. Coaxial Commm'ns, Inc.*, 799 F. Supp. 16, 19 (S.D.N.Y. 1992) ("[Lender] is thus entitled to damages equal to the discounted present value of the incremental interest income [it] would be expected to lose as a result of the breach. Specifically, the lost interest income is measured as the difference between (a) the interest income [lender] would have earned had the contract been performed, and (b) the interest income [lender] would be deemed to have earned by timely mitigating its damages-- i.e., by making an investment with similar characteristics at the time of the breach."); *Teachers Ins. & Annuity Asso. v. Butler*, 626 F. Supp. 1229, 1236 (S.D.N.Y. 1986) ("Plaintiff is entitled to the difference between the contracted for rate of interest . . . and the rate of interest at the time of the breach . . . discounted to present value.").

entered into between NNCC and Nortel Networks Inc. f/k/a Northern Telecom Inc. ("NNI") on February 15, 1996. The Support Agreement provides that "at all times prior to the termination of this Agreement, NTI [NNI] shall cause the Company [NNCC] to have and to maintain a net worth of at least $1.00." Thus, NNI is contractually obligated to maintain NNCC's solvency at all times. As a result, the holders of the NNCC Notes are entitled to payment of principal, pre-petition interest, and the other contractual entitlements embodied in the Indenture Documents, including post-petition interest at the contractual rate and damages for breach of the no-call provision.

Dated: July 15, 2014

MORRIS JAMES LLP

*/s/ Carl N. Kunz, III*

Stephen M. Miller (DE Bar. No. 2610)
Carl N. Kunz, III (DE Bar No. 3201)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email:  smiller@morrisjames.com
           ckunz@morrisjames.com

- and -

Daniel A. Lowenthal
Brian P. Guiney
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: (212) 336-2000
Facsimile: (212) 336-2222
Email:  dalowenthal@pbwt.com
           bguiney@pbwt.com

*Attorneys for Law Debenture Trust Company of New York, as Indenture Trustee*