**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 09-10138 (KG) |
| NORTEL NETWORKS INC., *et al.*, | (Jointly Administered) |
| | |
| Debtors. | Reply Deadline: July 22, 2014 4pm. |
| | Hearing Date: July 25, 2014 10am |

- and –

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED**

# WRITTEN SUBMISSIONS OF THE CANADIAN CREDITORS' COMMITTEE (MOTION RE CROSS-OVER BONDS) (RETURNABLE JULY 25, 2014)

**KOSKIE MINSKY LLP**
20 Queen Street West, Suite 900
Toronto, ON M5H 3R3

Mark Zigler / Ari Kaplan / Jeff Van Bakel
Tel: 416.595.2090
Fax: 416.204.2877

Email: mzigler@kmlaw.ca
akaplan@kmlaw.ca
jvanbakel@kmlaw.ca

Lawyers for the Canadian Former Employees and Disabled Employees through their court appointed Representative

**UNIFOR**
Legal Department
205 Placer Court
Toronto, ON M2H 3H9

Barry Wadsworth
Tel: 416.495.3750
Fax: 416.495.3786

Email: barry.wadsworth@unifor.org

Lawyer for Unifor

**SHIBLEY RIGHTON LLP**
**w/ NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, ON M5H 3E5

Arthur O. Jacques/ Thomas McRae
Co-Counsel: Janice Payne / Steve Levitt
Tel: 416.214.5213/5206
Fax: 416.214.5413/5400

Email: arthur.jacques@shibleyrighton.com
thomas.mcrae@shibleyrighton.com

Lawyers for active and transferred employees of Nortel Canada

**McCARTHY TETRAULT LLP**
TD Bank Tower, Suite 5300
Toronto Dominion Centre 66
Wellington Street West
Toronto, ON M5K 1E6

R. Paul Steep / Elder C. Marques / Byron Shaw
Tel: 416.601.7998
Fax: 416.868.0673

Email: psteep@mccarthy.ca
emarques@mccarthy.ca
bdshaw@mccarthy.ca

Lawyers for Monreau Shepell Ltd., as administrator of the Nortel Canada registered pension plans

**PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
155 Wellington Street West
35th Floor
Toronto, ON M5V 3H1

Ken Rosenberg / Lily Harmer / Massimo Starnino
Tel: 416-646.4300
Fax: 416.646.4301

Email: ken.rosenberg@paliareroland.com
lily.harmer@paliareroland.com
max.starnino@paliareroland.com

Lawyers for the Superintendent of Financial Services as Administrator of the Pension Benefits Guarantee Fund

**DLA PIPER LLP (US)**

1201 North Market Street, Suite 2100
Wilmington, Delaware 19801

Selinda A. Melnik (DE 4032)
Tel: 302.468.5650
Timothy Hoeffner (*admitted pro hac vice)*
Tel: 212..335.4841

Email: selinda.melnik@dlapiper.com
timothy.hoeffner@dlapiper.com

Counsel for the Canadian Creditors Committee

## TABLE OF CONTENTS

**PAGE**

PART I - OVERVIEW ........................................ 1

PART II - THE FACTS ........................................ 2

PART III - ISSUES AND ARGUMENT ........................................ 2

PART IV - ORDER REQUESTED ........................................ 8

APPENDIX A: RESTRUCTURING TIMELINE ........................................ 9

SCHEDULE "A"
LIST OF AUTHORITIES ........................................ 11

## PART I. OVERVIEW

1. The present dispute involves the entitlement of Nortel unsecured crossover bondholders to receive any post-filing interest. The bonds seek significant interest at their respective contractual rates—asserted to aggregate approximately US$1.6 billion over and above the bondholders' aggregate pre-filing principal and interest claims of US$4.092 billion, all to the prejudice of Nortel's other unsecured creditors, particularly Nortel disabled employees, retirees and other former employees. The applicable law in Canada and the United States is as set forth in the Monitor's submissions, which the CCC adopts and incorporates by reference, subject to and along with limited complementary submissions set forth below

2. Put simply: under the laws of both jurisdictions, including the CCAA, unsecured creditors are not entitled to post-filing interest in the context of liquidating insolvency proceedings where a debtor's assets are insufficient to pay pre-filing claims in full — in other words, Interest Stops. Where the debtor is solvent, post-filing interest may be paid on claims, and then only at the statutory rate.

3. The legislatures and the courts have reached these determinations for sound and sustainable reasons: to ensure that all creditors are treated fairly, to encourage restructuring and to dis-incentivize creditors from causing additional delay to proceedings and preventing timely distributions in order to increase the quantum of post-filing interest they might receive. If post-filing interest must paid at all, an order that post-filing interest must be paid at the liquidation statutory rate avoids unfair and irrational outcomes and treats creditors equally.

## PART II. FACTS

4. The CCC adopts the facts as set forth by the Monitor. In addition, the CCC refers to and relies on the timeline of events described in Appendix A, hereto. Terms not otherwise defined herein have the same meaning as in the Monitor's written submissions.

## PART III. ISSUES AND ARGUMENT

5. The Ontario Court and the Delaware Court have identified the following issues:

(a) are the Crossover Bondholders legally entitled, in each jurisdiction, under the relevant indentures, to claim or receive any amounts above and beyond the outstanding principal debt and pre-petition interest (namely, above and beyond US$4.092 billion); and

(b) if so, what additional amounts are such holders entitled to so claim and receive.[1]

6. The CCC adopts the submissions made by the Monitor in respect of the Common Bonds' Claims Issues and makes 3 complementary submissions, as follows:[2]

---

[1] With respect to post-filing interest, the pertinent question for the Delaware Court is: if it is payable, whether it is payable at the contract rate or the federal judgment rate, as was ordered, e,g., in *In re Washington Mutual*, 461 B.R. 200 (Bankr. D. Del. 2011).

[2] In making these submissions, the CCC reserves all rights and makes no admission in respect of any relief that is being sought by it or that may be sought by it in future, including, without limitation, in connection with the allocation dispute, any motion to consolidate estates, or the application of any other rule of equity affecting the payment of dividends to creditors.

**First Submission:  The Interest Stops Rule is a Rule of Common Law and Therefore Applies Equally to CCAA Proceedings.**

7. In Canada, claims for post-filing interest are disallowed through the exercise of judicial discretion intended to promote equity and fairness:

> As to the rule which my learned brother has laid down, it is the rule in bankruptcy. *That rule was, as has been said, Judge-made law; but it was made after great consideration, and no doubt because it works with equality and fairness between the parties*; and if we are to consider convenience, it is quite clear that, where an estate is insolvent, convenience is in favour of stopping all the computations at the date of the winding-up.[3]  [Emphasis ours]

8. The application of the Interest Stops Rule is consistent with the purpose of the CCAA, which is to permit the debtor to continue to carry on business and, where possible, avoid the social and economic costs of liquidating its assets.[4]  At the core of achieving the CCAA's objective is the preservation of the *status quo* while the proceedings unfold.[5]  Along these lines, the *Ted LeRoy Trucking* court cautioned against "[g]iving a key player in any insolvency "skewed incentives" as this would "risk inviting the very social ills that [the CCAA] was enacted to avert."[6]

9. The Supreme Court of Canada's reasoning plainly favours the application of the Interest Stops Rule in CCAA proceedings:

---

[3] *In re Humber Ironworks and Shipbuilding Company; Warrant Finance Company's Case*, (1869), 4 L.R. 643 (L.JJ.) ("*Humber Ironworks*") at 647.  Here, the court held that creditors could not assert a claim for interest owing pursuant to their contract with an insolvent debtor.  For an application of this principle by the Ontario Courts, see, for example, *Canada (Attorney General)* v. *Confederation Life Insurance Co.,* [2001] O.J. No. 2610 (Sup. Ct. J. [Commercial List]) at paras. 21-22.
[4] *Century Services Inc.* v. *Canada* (A.G.), [2010] 3 S.C.R  379 ("*Ted LeRoy Trucking*") at para. 15.
[5] *Ted LeRoy Trucking* at para. 77 ("The CCAA creates conditions for preserving the status quo while attempts are made to find common ground amongst stakeholders for a reorganization that is fair to all.")
[6] *Ted LeRoy Trucking* at para. 47.

(a) For obvious reasons, the *status quo* cannot be maintained if, during the administration of the proceedings, some creditors' claims are permitted to grow disproportionately to others. This would encourage creditors whose interests were being proportionately disadvantaged to seek to initiate bankruptcy proceedings, creating, at a minimum, instability and uncertainty, and threatening the objectives of the statute;

(b) Where interest accrues post-filing, creditors are more inclined to 'watch the clock' and therefore disinclined to engage in challenging settlement discussions and mediations, thereby undermining the ability to achieve the "compromise" or "arrangement" of rights that is core to the objectives of the CCAA and the public policy favouring settlement generally[7];

(c) Depending on the returns available in other parts of the market, creditors such as bondholders could be highly motivated to delay the proceedings to accrue greater interest.

None of the outcomes described above are consistent with or would serve the objectives of the CCAA.

[7] See,.e.g, *M. (J.)* v. *Bradley* (2004), 71 O.R. (3d) 171 (CA) at para 65 ("Finally, there is an additional, and powerful, reason to support the implementation of the Agreements in this case: the overriding public interest in encouraging the pre-trial settlement of civil cases. This laudatory objective has long been recognized by Canadian courts as fundamental to the proper administration of civil justice…. Furthermore, the promotion of settlement is especially salutary in complex, costly, multi-party litigation."); *Wilcher v. City of Wilmington*, 139 F. 3d 366, 372 (3d Cir. 1998) ("As a general rule, we encourage attempts to settle disagreements outside the litigative context."); *In re Washington Mut.*, No. 08-12229 (MFW), 2012 WL 1563880, *19 (Bankr. Del. Feb. 24, 2012) (finding that there is "a strong public policy in bankruptcy cases to encourage settlement"); *In re Tribune Co.*, No. 08-13141 (KJC), 2011 WL 386827, *8 (Bankr. Del. Feb. 3, 2011) (recognizing the "well established public needs of encouraging settlement") (citations omitted).

10. Thus, the lack of an express provision in the CCAA barring claims to post-filing interest is of no matter in the analysis. The court has jurisdiction to apply the Interest Stops Rule regardless of the specific statutory form of the insolvency proceeding; and, absent an agreement amongst the creditors to the contrary, no creditor should be entitled to claim post-filing interest in the context of liquidating insolvency proceedings, where the debtor's assets are insufficient to pay pre-filing claims in full.

**Second Submission: The Principles Behind the Interest Stops Rule Are Directly Applicable to This Case**

11. The fundamental principle undergirding the Interest Stops Rule was articulated by Lord Justice Selwyn in the *Humber Ironworks* case:

> …no person should be prejudiced by the accidental delay which, in consequence of the necessary forms and proceedings of the Court, actually takes place in realizing the assets; but that, in the case of an insolvent estate, all the money being realized as speedily as possible, should be applied equally and rateably in payment of the debts as they existed at the date of the winding-up. I, therefore, think that nothing should be allowed for interest after that date.[8]

12. The course of events in the Nortel proceedings bears out Lord Justice Selwyn's reasoning as there is no question that since Nortel's January 14, 2009 filing, Nortel's creditors have experienced tremendous delays. For example, as demonstrated by the timeline appended hereto as Appendix A:

(a) The liquidation of Nortel's major lines of business and assets took over two years to complete;

[8] *Humber Ironworks*, at 646.

(b) Having regard to the overriding public interest in the settlement of civil litigation[9], a considerable amount of time in this case was directed to efforts to mediate the dispute. Focussing only on the time spent after all the major assets had been liquidated, some 18 months were dedicated to the Winkler Mediation alone, while the courts were forced to grapple with difficult, and in some instances unprecedented, issues;

(c) The allocation trial phase, though treated as a priority by these courts and completed with exemplary dispatch and efficiency, will have taken some 18 months to complete by the time that closing submissions are made in September 2014.

13. The time taken to administer the vast and complex Nortel estates speaks directly to the concerns expressed by Lord Justice Selwyn: it has been beyond the control of the parties and the Courts. It would therefore be patently unfair to award the Crossover Bondholders a $1.6 billion windfall to the prejudice of Nortel's disabled employees, former employees, and retirees, only because of the inevitable delay that is endemic to all bankruptcy proceedings, but especially this one.

**Third Submission: The Application of a Common Rate of Post Filing Interest is Consistent with the Principles Undergirding the Interest Stops Rule, Both As Between Creditors and As Between Creditors and Equity Holders.**

14. Where a debtor's assets are sufficient to pay Pre-Filing Claims, the application of a common statutory rate of post-filing interest (as opposed to the contractual or other

---

[9] *Supra*, note 7.

rates specific to each debtor-creditor relationship) achieves the objectives of restructuring legislation in at least two ways:

(a)   first, it facilitates the administration of the debtor's estate by avoiding inquiries into and potential disputes over the entitlement to interest of individual creditors;

(b)   second, it balances the interests of all stakeholders, and thereby promotes fairness.[10]

The first benefit described above requires no explanation; the second has two aspects.

15.    In keeping with the usual objective of the Interest Stops Rule described above, the application of a common statutory interest rate in the context of liquidating proceedings avoids preferring one set of creditors over another in compensating them for delayed recovery on their claims;

16.    The application of a common statutory interest rate also has the salutary advantage of balancing the interests of all stakeholders.  As observed by the majority of the Supreme Court of Canada:

> "the court must often be cognizant of the various interests at stake in the reorganization, *which can extend beyond those of the debtor and creditors to include* employees, directors, *shareholders*, and even other parties

---

[10] These objectives are consistent with the reasoning of bankruptcy courts across the United States.  *See In re Washington Mutual*, 461 B.R. 200, 243 (Bankr. D. Del. 2011) ("the use of the federal judgment rate promotes two important bankruptcy goals: fairness among creditors and administrative efficiency.") (*citation omitted*); *see also In re Garriock*, 373 B.R. 814, 816 (Bankr. E.D. Va. 2007) (Post-filing interest is meant only to compensate creditors for the cost of "delays inherent in completing the bankruptcy process.") (citing *In re Melenyzer*, 143 B.R. 829, 833 (Bankr. W.D. Tex. 1993)); *Garriock*, 373 B.R. at 816 (cost of delay "affects all creditors equally, and the federal judgment rate accurately reflects the time value of each creditor's claims.") (citing *In re Godsey*, 134 B.R. 865, 867 (Bankr. M.D. Tenn. 1991)).

doing business with the insolvent company. See, e.g., Canadian Airlines Corp., Re, 2000 ABQB 442, 84 Alta. L.R. (3d) 9, at para. 144, per Paperny J. (as she then was); Air Canada, Re (2003), 42 C.B.R. (4th) 173 (Ont. S.C.J.), at para. 3; Air Canada, Re, 2003 CanLII 49366 (Ont. S.C.J.), at para. 13, per Farley J.; Sarra, Creditor Rights, at pp. 181 92 and 217 26)." [Emphasis ours][11]

**PART IV – ORDER REQUESTED**

17. The CCC supports the relief requested by the Monitor.

Dated: July 15, 2014
Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

By: */s/ Selinda A. Melnik*
Selinda A. Melnik (DE Bar ID 4032)
Timothy Hoeffner (*admitted pro hac vice*)
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Tel: 302-468-5650
Email: selinda.melnik@dlapiper.com
timothy.hoeffner@dlapiper.com

*Counsel for the Canadian Creditors Committee*

[11] *Ted LeRoy Trucking* at 60.

**APPENDIX A: RESTRUCTURING TIMELINE**

| **Date** | **Event** |
|---|---|
| January 14, 2009 | Filing Date |
| June 20, 2009 | Public Acknowledgment of Liquidation |
| US: March 26, 2009<br>CDA: March 30, 2009 | Order Approving Layer 4-7 Sale |
| June 29, 2009 | Orders Approving the Interim Funding and Settlement Agreement |
| July 28, 2009 | Orders Approving CDMA/LTE Sale |
| Sept. 16, 2009 | Orders Approving Enterprise Sale |
| Oct. 28, 2009 | Orders Approving Next Generation Packet Core Sale |
| Dec. 2, 2009 | Orders Approving GSM/GSM-R Sale |
| March 3, 2010 | Orders Approving CVAS Sale |
| CDA: May 20, 2010<br>US: May 24, 2010 | Orders Approving GSM Retained Contracts Sale |
| Sept. 30, 2010 | Orders Approving Multi Service Switch Sale |
| November 11-16 2010 | Attempted Mediation |
| April 11-13, 2011 | Attempted Mediation |
| June 7, 2011 | Joint Hearing of Allocation Protocol Dispute |
| June 17 and 29, 2011 | Orders Directing Mediation before Winkler C.J.O. (“Winkler Mediation”) |
| July 11, 2011 | Orders Approving Sale of the Residual Patent Portfolio |
| July 15, 2011 | US Debtors’ motion seeking to strike certain UK/EMEA claims (“US Debtors’ Motion”) |

| | |
|---|---|
| August 3, 2011 | Order requesting that the Winkler Mediation be postponed pending disposition of the US Debtors' Motion |
| October 14, 2011 | Hearing on US Debtors' Motion |
| March 20, 2012 | Opinion issued re: US Debtor's Motion |
| March 26, 2012 | Winkler C.J.O letter announcing the start of the Winkler Mediation |
| April 24, 2012 | Start of Winkler Mediation: Introductory Plenary Session |
| January 14-24, 2013 | Winkler Mediation Intensive Sessions |
| January 24, 2013 | Announcement of Termination of Winkler Mediation |
| March 7, 2013 | Further Joint Hearing re: Allocation Protocol |
| March 8, 2013 | Release of Decision on Allocation Protocol Motion |
| May 12- June 24, 2014 | Allocation Trial (Opening Statements and Evidence) |
| July 8, 2014 | Trial of UK/EMEA and UKPT Claims Against NNL and others |
| September, 2014 | Closing Argument for Allocation Trial |
| Unknown | Final Disposition of Allocation Trial including appeals (if any) |

## PART IV. SCHEDULE "A" – LIST OF AUTHORITIES

## PART V.

1. *In re Washington Mutual*, 461 B.R. 200 (Bankr. D. Del. 2011)

2. *In re Humber Ironworks and Shipbuilding Company; Warrant Finance Company's Case*, (1869), 4 L.R. 643 (L.JJ.)

3. *Canada (Attorney General)* v. *Confederation Life Insurance Co.,* [2001] O.J. No. 2610 (Sup. Ct. J. [Commercial List])

4. *Century Services Inc*. v. *Canada (A.G.)*, [2010] 3 S.C.R 379

5. *M. (J.)* v. *Bradley* (2004), 71 O.R. (3d) 171 (CA)

6. *Wilcher v. City of Wilmington*, 139 F. 3d 366, 372 (3d Cir. 1998)

7. *In re Washington Mut.*, No. 08-12229 (MFW), 2012 WL 1563880, *19 (Bankr. Del. Feb. 24, 2012)

8. *In re Tribune Co.*, No. 08-13141 (KJC), 2011 WL 386827, *8 (Bankr. Del. Feb. 3, 2011)

9. *In re Garriock*, 373 B.R. 814, 816 (Bankr. E.D. Va. 2007)