IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NORTEL NETWORKS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10138-KG<br>(Jointly Administered)<br><br>Re: D.I. 14019, 14023, 14028, 14032 and 14053 |

**SUPPLEMENTAL REPLY BRIEF OF LAW DEBENTURE TRUST
COMPANY OF NEW YORK, AS INDENTURE TRUSTEE FOR THE NNCC
NOTES, WITH RESPECT TO MONITOR'S REQUEST THAT THE COURT
DETERMINE BONDHOLDER ENTITLEMENT TO POST-PETITION INTEREST
AND ADDITIONAL BONDHOLDER CLAIMS ISSUES UNDER U.S. LAW**

Law Debenture Trust Company of New York ("Law Debenture"), as indenture trustee for the NNCC Notes, by and through its attorneys, Patterson Belknap Webb & Tyler LLP and Morris James LLP, hereby submits this supplemental reply brief ("Supplemental Reply Brief") pursuant to the Interest Issues Order.[2]

**REPLY**[3]

1. The Opening Brief of the Monitor and the Canadian Debtors Regarding Post-Petition Interest and Related Issues, dated July 15, 2014 (D.I. 14023) ("Monitor's Opening

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Nortel Networks Inc. (6332), NNCC (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), and Nortel Networks Cable Solutions Inc. (0567) (collectively, the "U.S. Debtors").

[2] Capitalized terms used herein that are not defined have the meanings given to them in the Supplemental Brief of Law Debenture Trust Company of New York, as Indenture Trustee for the NNCC Notes, with Respect to Monitor's Request That The Court Determine Bondholder Entitlement to Post-Petition Interest and Additional Bondholder Claims Issues Under U.S. Law, dated July 15, 2014 (D.I. 14028) ("Supplemental Opening Brief").

[3] Law Debenture, the Bank of New York, and the Ad Hoc Bondholder Group have submitted a reply brief pursuant to the Interest Issues Order that addresses issues common to all of the so-called "cross-over bonds," including the NNCC Notes (D.I. 14053). Law Debenture submits this Supplemental Reply Brief to address additional issues unique to the NNCC Notes.

7190476

Brief"), contends that "Law Debenture is not entitled to an allowed Crossover Bond Claim on account of any premiums or damages in connection with the prepayment or redemption of the [NNCC Notes]." Monitor's Opening Brief, ¶ 24.[4] The Monitor's arguments in support of this contention are flawed, primarily because the Monitor <u>completely ignores</u> the thorough and well-reasoned opinion of Bankruptcy Judge Olack regarding a no-call provision in *In re Premier Entm't Biloxi LLC*, 445 B.R. 582 (Bankr. S.D. Miss. 2010) ("*Premier*").

        2.     <u>First</u>, the Monitor states that "it is well-settled that provisions which prohibit the early repayment of debt are not enforceable in bankruptcy." Monitor's Opening Brief, ¶ 24. But Law Debenture does not seek specific enforcement of the NNCC Notes' no-call provision.[5] Rather, Law Debenture asserts a claim for damages for breach of the no-call provision. As the authorities cited by the Monitor make clear,[6] it is well-settled that a "non-breaching party is not deprived of a monetary remedy just because no-call provisions are not subject to the remedy of specific performance in bankruptcy cases." *Premier* at 634.

        3.     <u>Second</u>, the Monitor argues that "prepayment is no longer possible. NNCC's bankruptcy filing accelerated the principal of the [NNCC Notes] by operation of law."

---

[4] The Written Submissions of the Canadian Creditors Committee (Motion re Cross-Over Bond Issues), dated July 15, 2104 (D.I. 14032) (the "CCC Submission") joins and adopts the arguments set forth in the Monitor's Opening Brief. Accordingly, this Supplemental Reply Brief also serves as a reply to the CCC Submission.

[5] *See* Supplemental Opening Brief, ¶ 3 ("Courts have not specifically enforced a no-call provision against a debtor in bankruptcy . . .").

[6] The Monitor cites *In re Chemtura Corp.*, 439 B.R. 561, 604 (Bankr. S.D.N.Y. 2010), as authority for the proposition that the NNCC Notes' no-call provision is unenforceable. But, in that case, acknowledging that no bankruptcy court would ever *enjoin* repayment of a debtor's creditors, Judge Gerber explained that, "[w]hile the notion of specific performance is generally repugnant to bankruptcy policy, bankruptcy courts allow claims for damages for breaches of contracts they won't specifically enforce with great frequency. The [*Premier*] court—properly, in my view—did exactly that. On this issue, I believe that the bondholders would have by far the better argument"). The Monitor's reliance on Scott K. Charles & Emil A. Kleinhaus, Prepayment Clauses in Bankruptcy, 15 AM. BANKR. INST. L. REV. 537, 543-44 (Winter 2007) is likewise misplaced. In that article, just *two sentences* after stating that a "contractual prohibition on prepayment should not be specifically enforced in bankruptcy," the authors explain that "[t]he real issue is whether, when a debtor prepays a loan in the face of no call, the *damages* resulting from such prepayment should be allowed under the Bankruptcy Code." (Emphasis added.)

7190476

2

Monitor's Opening Brief, ¶ 25. The Monitor cites cases for the proposition that "even without specific contractual language, a bankruptcy filing acts as an acceleration of all of a debtor's obligations." *Id.* But the Monitor's analysis ignores the difference between *contractual* acceleration and acceleration *by operation of the Bankruptcy Code.* Acceleration under the Bankruptcy Code "is relatively limited and does not change the maturity date of the debt . . . ." *Premier* at 630. It "does not defeat a lender's claim for a prepayment premium unless the lender waives it by engaging in affirmative acts to collect the debt prior to its maturity." *Id.* "On the other hand, a contractual acceleration provision . . . goes beyond allowing a creditor to file a claim for unmatured principal and actually advances the maturity date of the debt." *Id. See also In re LHD Realty Corp.*, 726 F.2d 327, 332 (7th Cir. 1984) ("[I]f the lender wishes to preserve its right to a premium, it must forbear from exercising its acceleration option and await the trustee's or the debtor's decision. Should the trustee or the debtor then decide to repay the loan, the lender would presumably be able to enforce an otherwise valid prepayment premium").

    4. The Indenture for the NNCC Notes does <u>not</u> contain an automatic acceleration clause. Section 501 of the Indenture states that "the Trustee or the Holders . . . **may** declare the principal . . . due and payable immediately." (Emphasis added.) Law Debenture is not aware of, and no evidence has been presented to the Court regarding, any "overt act" taken by any party to accelerate the maturity of the NNCC Notes. Accordingly, even if the NNCC Notes were accelerated under the Bankruptcy Code, this would not defeat Law Debenture's claim for damages for breach of the no-call provision.

    5. <u>Third</u>, the Monitor argues that "even if the No-Call Provision could be breached, the indenture for the [NNCC Notes] does not provide for any contractual damages to be payable in connection with such breach." Monitor's Opening Brief, ¶ 26. On the contrary,

the Indenture states that "[i]f an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal of (and premium, if any) or interest on Debt Securities," and that "[a]ll remedies . . . are cumulative to the extent permitted by law." Indenture, Section 504(a)-(b). Such language enables Law Debenture to pursue contractual damages for any breach of the Indenture, including a breach of the no-call provision. *See Premier* at 636 ("the Indenture at issue here expressly says that '[a]ll remedies are cumulative to the extent permitted by law,' thereby reflecting the agreement of the parties that common law damages are an available remedy for breach of the No-Call Provision").

6.  The Monitor's only authority for its restrictive view of contract damages is *HSBC Bank USA v. Calpine Corp.*, 2010 U.S. Dist. LEXIS 96792 (S.D.N.Y. Sept. 14, 2010), in which the Court held that, "[b]ecause Debtor's bankruptcy filing rendered the no-call provision in the notes unenforceable and liability cannot be incurred pursuant to an unenforceable contractual provision, Debtor did not incur any liability for repaying the notes."). This holding is at odds with the weight of authority, *i.e.*, that money damages may be an adequate remedy where specific performance is not, and prompted Judge Gerber to characterize the holding in *Calpine* as "an overly broad statement of the law." *Chemtura*, 439 B.R. at 604. "As to the damages on the No-Call Provision in the 2026 Notes, I see no provision in their documentation saying that the remedies for breach are limited to those expressly provided. So I would think that there'd be a pretty good argument that damages for breach of the No-Call Provisions would be recoverable as a matter of state law." *Id.* at 603.

7.  The Monitor's position and the view expressed in *Calpine* are particularly inapt here if the U.S. Debtors are solvent. "[I]n solvent debtor cases, rather than considering equitable principles, courts have generally confined themselves to determining and enforcing

whatever pre-petition rights a given creditor has against the debtor." *In re Dow Corning Corp.*, 456 F.3d 668, 678-79 (6th Cir. 2006). This principle has been applied to validate enforcement of prepayment premiums such as the NNCC Notes' no-call provision against a solvent debtor. *See, e.g., Premier* at 640 ("Because Claimants have shown that the Debtors were solvent, [they] are entitled to pursue an unsecured claim for damages under § 502 for the Debtors' breach of the Indenture."). *See also In re Gencarelli*, 501 F.3d 1 (1st Cir. 2007)(where debtor is solvent, prepayment penalties are allowable as unsecured claims under § 502(b)), *In re 360 Inns, Ltd.*, 76 B.R. 573, 576 (Bankr. N.D. Tex. 1987)("At the conclusion of the confirmation hearing, the Court advised the parties that since the debtor was solvent [. . .], that the prepayment penalty, even if not includible in UNUM's secured claim, must be treated in the debtor's plan of reorganization because of the interaction of § 1129(a)(7), the 'best interest of creditors' test, and § 726(a)(4), the priority of distribution for penalties established for Chapter 7 liquidation cases.").

        8. The Monitor's final argument – that Law Debenture seeks an "end run" around the Bankruptcy Code by "prohibiting prepayment" of the NNCC Notes, which would "make a mockery section 502" – is absurd. Monitor's Opening Brief, ¶ 26. Law Debenture does not ask this Court to enjoin or prohibit prepayment of the NNCC Notes. Rather, Law Debenture asserts that it is entitled to an unsecured claim for damages if NNCC breaches a particular provision of the Indenture. This request is consistent with both the Bankruptcy Code and persuasive case law.

        9. Separately, in their initial briefs, Law Debenture and two holders of NNCC Notes – Solus Alternative Asset Management LP and Macquaire Capital (USA) – discussed the Support Agreement between NNL and NNCC, dated as of February 15, 1996 (the "Support Agreement"). The Support Agreement requires NNI to cause NNCC to have and

maintain a net worth of at least $1.00 calculated in accordance with GAAP. The U.S. Debtors, in their initial brief, state that the Support Agreement is "not encompassed within the Interest Issues being presented to the Court." U.S. Debtors' Submission on the Interest Issues (D.I. 14019), ¶ 6, n.6. The briefing of the Interest Issues presumes that the U.S. Debtors are solvent because an award of post-petition interest on the cross-over bonds depends on a finding of solvency. The holders of the NNCC Notes are nevertheless entitled to payment of post-petition interest because the solvency of NNCC should be assumed by reason of the Support Agreement.

Dated: July 22, 2014

**MORRIS JAMES LLP**

/s/ Stephen M. Miller

Stephen M. Miller (DE Bar. No. 2610)
Carl N. Kunz, III (DE Bar No. 3201)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: smiller@morrisjames.com
ckunz@morrisjames.com

- and -

Daniel A. Lowenthal
Brian P. Guiney
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: (212) 336-2000
Facsimile: (212) 336-2222
Email: dalowenthal@pbwt.com
bguiney@pbwt.com

*Attorneys for Law Debenture Trust Company of New York, as Indenture Trustee*

7190476