## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------X
                                              :
In re                                         :        Chapter 11
                                              :        Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,¹                :        Jointly Administered
                                              :
                        Debtors               :
                                              :        Re: Docket Nos. 14021, 14023, 14024
                                              :            14032 & 14039
                                              :
-------------------------------------------------------X
```

## REPLY BRIEF OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING ENTITLEMENT OF US CREDITORS TO POSTPETITION INTEREST

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation ("NNCC") (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. ("NN CALA") (4226).

## TABLE OF CONTENTS

Page

I.   The Canadian Monitor's Reliance on *W.R. Grace* is Misplaced........................................ 4

   A.   *W.R. Grace* Did Not Hold that Federal Judgment Rate is the Appropriate Rate of
   Postpetition Interest.......................................................................................................... 4

   B.   The *W.R. Grace* Court's Findings Regarding the Absolute Priority Rule and
   Postpetition Interest are Distinguishable........................................................................... 6

   C.   There is No Federal Interest in Prohibiting Payment of Postpetition Interest
   Where a Debtor can Pay Prepetition Claims in Full. ........................................................ 8

II.  The Court Does Not Have Discretion to Disregard the Contractual Rights of US
   Creditors Based on the Length of these Cases. ................................................................ 10

III. The Canadian Parties' Meritless Allocation Positions are Not Relevant to the
   Postpetition Interest Issues.............................................................................................. 12

IV.  The Canadian Parties other than the Canadian Monitor Lack Standing to be
   Heard on the Postpetition Interest Issues in the US Proceedings.................................... 13

The Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks, Inc. ("NNI") and its affiliated debtors and debtors in possession (collectively, the "US Debtors") submits this reply in further support of the Committee's memorandum of law regarding the entitlement of US creditors to postpetition interest [ECF No. 14024] (the "Opening Brief")[2] and in response to positions set forth in the briefs submitted by (i) the Canadian Debtors and Monitor (collectively referred to herein as the "Canadian Monitor") [ECF No. 14023], (ii) the Canadian Creditors' Committee ("CCC") [ECF No. 14032], (iii) Wilmington Trust, National Association, as indenture trustee for the Canadian-only bonds ("Wilmington") [ECF No. 14021] and (iv) the Board of the UK Pension Protection Fund and Nortel Networks UK Pension Trust Limited [ECF No. 14039] (the "UK Pension Claimants" and, together with the Canadian Monitor, the CCC and Wilmington, the "Canadian Parties").[3]

## PRELIMINARY STATEMENT

The Court should not be misled by the filings of the various Canadian Parties – *this is not an intercreditor dispute*.  Rather, all of the US Debtors' creditors that have filed pleadings – the Committee, the ad hoc bondholder group, The Bank of New York Mellon, Law Debenture Trust Company of New York, Solus Alternative Asset Management LP and Macquarie Capital (USA) Inc. – are in agreement: to the extent the US Debtors can pay in full all claims for prepetition principal and interest, US creditors are entitled to postpetition interest at the contract rate.  This dispute is instead an issue between US creditors and the equity holder of the US Debtors, NNL.  As such, the only proper party in interest to oppose the entitlement of US creditors to

---

[2] All capitalized terms not defined herein shall have the meanings ascribed to them in the Opening Brief.

[3] As discussed further below, neither the CCC, Wilmington nor the UK Pension Claimants have standing to be heard on the postpetition interest issues as they relate to the US Debtors.  These parties do not have any claims or interests in the US Debtors.  The UK Pension Claimants' claims against the US Debtors – along with the claims of the EMEA Joint Administrators (who did not even attempt to file a pleading in these US postpetition interest proceedings) – were settled and such claims released in January 2014.

postpetition interest at bargained-for contractual rates is NNL, as represented by the Canadian

Monitor. The other Canadian Parties are not creditors of the US Debtors and have no standing to

be heard on the postpetition interest issues as they relate to the US Debtors. The interests of

*Canadian creditors* in the *Canadian proceedings* of the *Canadian Debtors* have no relevance

whatsoever to the purely US issues before this Court: are US creditors entitled to postpetition

interest in the US proceedings and, if so, at what rate?

The Canadian Monitor's arguments that the entitlement of US creditors to postpetition

interest is limited to the Federal Judgment Rate are flawed for a number of reasons: (i) reliance

on the definite article in "the legal rate" ignores the manner in which Congress referred to "the

legal rate" and the Federal Judgment Rate elsewhere in the US Code; (ii) a claim is not

equivalent to a federal judgment and so holding would ignore the fact that claims are determined

by looking to applicable non-bankruptcy law;[4] (iii) administrative convenience is not an

appropriate reason to disregard a creditor's bargained-for contractual rights; and (iv) where a

debtor is able to pay prepetition claims in full, the court does not have discretion to abrogate a

creditor's non-bankruptcy rights absent an express intent by Congress to do so.[5]

---

[4] As the Bankruptcy Court noted in *Dow*:

> So while claim allowance may be tantamount to entry of a 'judgment,' a chapter 11 creditor's contract rights are not merged into that judgment. ... A plan proponent must therefore reckon with those contract rights. And if a cramdown is attempted, the proponent must also reckon with the requirement that the plan's payment provision be "fair and equitable." 11 U.S.C. § 1129(b)(1). In these respects, the chapter 11 claimant differs fundamentally from both its chapter 7 counterpart and a federal-judgment creditor. Thus there is no contradiction between the holding in our previous decision and the contention that § 1129(b) may mandate recognition of contractual interest rates.

*In re Dow Corning Corp.*, 24 B.R. 678, 687 (Bankr. E.D.Mich. 1999) (internal citations omitted).

[5] These issues are discussed in depth in Section II.D of the Opening Brief. The Committee will not repeat these arguments in this reply but instead incorporates by reference the Opening Brief.

Further, the Canadian Monitor's misplaced reliance on the *W.R. Grace* decision by the United States District Court for the District of Delaware (the "District Court"), *In re W.R. Grace & Co.*, 475 B.R. 34 (D. Del. 2012), does not support the Canadian Monitor's efforts to deprive US creditors of their right to interest at bargained-for contractual rates.  First and foremost, *W.R. Grace* simply *does not hold* that the Federal Judgment Rate is the appropriate rate of postpetition interest for unsecured creditors.[6]  Second, the District Court's discussion of the requirements of the absolute priority rule as it relates to postpetition interest (a) is distinguishable because, in that case, the debtor's solvency was not certain at the time, whereas, in the Nortel case, the solvency of the US Debtors must be assumed for purposes of the pending proceedings and, (b) would lead to illogical results.  Third, the Canadian Monitor's reliance on *W.R. Grace* for the proposition that there is a federal interest in prohibiting the payment of postpetition interest is belied by the existence of the "solvent debtor" exception and the black-letter law in this circuit that creditors are entitled to postpetition interest where a debtor can pay prepetition claims in full.  *See Solow v. PPI Enters. (U.S.), Inc. (In re PPI Enters. (U.S.), Inc.)*, 324 F.3d 197, 206-07 (3d Cir. 2003).

Separately, the other Canadian Parties, who lack any standing, attempt to use their meritless allocation positions as a basis for denying postpetition interest to US creditors at the contract rate.  Specifically, the attempt by the UK Pension Claimants and Wilmington to argue for the application of their *pro rata* allocation methodology in the context of the postpetition interest dispute must be disregarded.  In the first instance, the UK Pension Claimants rely on their allocation methodology to say that the US Debtors should not be considered "solvent," thereby depriving this Court of any justiciable conflict.  The UK Pension Claimants and

---

[6] Only one of the Canadian Parties – the UK Pension Claimants – was candid enough to note in its discussion of *W.R. Grace* that the portion of that decision addressing the appropriate rate of postpetition interest is mere dicta. *See* UK Pension Claimants Br., ¶ 31.

3

Wilmington then try to use their *pro rata* theory as a basis to rebut US creditors' entitlement to postpetition interest at the contract rate. These arguments are another flailing attempt to prop up the *pro rata* theory and must be ignored. The Core Parties in the allocation litigation will have their time to submit post-trial briefing and present closing arguments to the Courts. Now is not that time. When appropriate, the Committee will demonstrate that the *pro rata* allocation theory was thoroughly discredited as a matter of law and fact during the course of the trial.

The underlying principles of the Bankruptcy Code are clear. Where a debtor is able to pay its prepetition claims in full, the role of the court is to respect creditors' contractually bargained-for rights. There is no basis in the Bankruptcy Code, or under the facts and circumstances of these cases, to abrogate the rights of US creditors in favor of a distribution to NNL, as equity holder. None of the arguments set forth in the briefs of the Canadian Parties – including arguments raised by the Canadian Parties that lack standing –should persuade this Court to the contrary.

**REPLY**

**I.      The Canadian Monitor's Reliance on *W.R. Grace* is Misplaced.**

The Canadian Monitor's arguments in favor of using the Federal Judgment Rate rely on *W.R. Grace* for three separate propositions, each of which is misleading, incorrect or both and should be disregarded.

**A.      *W.R. Grace* Did Not Hold that Federal Judgment Rate is the Appropriate Rate of Postpetition Interest.**

Contrary to the Canadian Monitor's assertion, the District Court in *W.R. Grace* did ***not*** hold that the Federal Judgment Rate was the appropriate rate of postpetition interest to apply to the claims of unsecured creditors. *See* Canadian Monitor Br., ¶ 7 (citing *W.R. Grace* for the proposition that courts in the District of Delaware have "held that 'the legal rate' means the

4

federal judgment rate"). At issue in *W.R. Grace* was the confirmation of a chapter 11 plan that incorporated, among other things, a settlement of certain disputes with the debtor's unsecured bank lenders. *See* 475 B.R. at 73-74. The plan settlement provided that the bank lenders would receive postpetition interest at a rate that was *above* the non-default contract rate of interest but below the default rate of interest. *See id.* at 73. The unsecured bank lenders objected to the propriety of the plan settlement, arguing that they were entitled to the full default rate of interest provided in the governing credit agreement. *See id.* at 74. In confirming the plan over the objection of the bank lenders, the District Court held that the bank lenders were not entitled to the full default rate of interest because no default had occurred postpetition. But, the District Court still approved a settlement that gave such lenders *more than the non-default contractual rate of interest. See id.* at 152-56.

While the *W.R. Grace* court discussed the different approaches courts have taken to interpreting the meaning of "the legal rate" (i.e., the state law/contract rate approach, the state statutory rate approach and the Federal Judgment Rate approach), the court expressly refrained from holding that any particular approach was correct. Specifically, the District Court stated "it does not matter which of the three approaches would properly apply here because none of the three approaches would award the Bank Lenders the contractual *default* rate of interest… the Bank Lenders are not entitled to the default interest rate since no event of default occurred here in the first place." *Id.* at 200-01 (emphasis in original). The District Court merely noted, in dicta, that the Bankruptcy Court in its prior confirmation decision was within its discretion to adopt the Federal Judgment Rate approach because the Court of Appeals for the Third Circuit

5

had not yet addressed the issue. *See id.* at 200.[7] In any event, the District Court confirmed a

plan that granted unsecured creditors postpetition interest at a rate that was *above* the non-default

contract rate. *See id.* at 73.

**B.    The *W.R. Grace* Court's Findings Regarding the Absolute Priority Rule and Postpetition Interest are Distinguishable.**

The Canadian Monitor's reliance on *W.R. Grace* for the proposition that the absolute

priority rule does not require payment of postpetition interest to creditors before distributions are

made to equity is also misguided. *See* Canadian Monitor Br., ¶¶ 15, 17.  The Canadian Monitor

observes that Bankruptcy Code section 1129(b) requires unsecured creditors to receive value

"equal to the allowed amount of such claim" before distributions can be made to equity, *see* 11

U.S.C. § 1129(b)(2)(B)(i), and that section 502(b)(2) generally disallows claims for postpetition

interest, *see* 11 U.S.C. § 502(b)(2).  But, relying on *W.R. Grace*, the Monitor erroneously

concludes from these two sections of the Bankruptcy Code that the absolute priority rule only

requires that creditors receive payment of their principal and prepetition interest. *See* Canadian

Monitor Br., ¶ 16.

The findings of the *W.R. Grace* court regarding the intersection of the absolute priority

rule and entitlement to postpetition interest are distinguishable from the matter before this Court.

While the District Court found that the plan did not violate the absolute priority rule where the

bank lenders were paid in full on their allowed claims, exclusive of postpetition interest, the

court recognized that a crucial basis for its conclusion was that the solvency of the debtor was

not known at that time. *See* 475 B.R. at 202 n. 191.  Specifically, the District Court

---

[7] Notably, it is not clear that the Bankruptcy Court in *W.R. Grace* did, in fact, adopt the Federal Judgment Rate approach.  In its unreported decision, the Bankruptcy Court, like the District Court, found that none of the postpetition interest approaches would support the *default* rate of interest being paid to the bank lenders. *See In re W.R. Grace & Co.*, No. 01–1139–JKF, 2009 WL 1469831, at *5 (Bankr. D. Del. May 19, 2009) ("Regardless of which approach would be selected here, none would be the default rate.").

distinguished the Sixth Circuit's *Dow* decision, which held that the absolute priority rule required payment of postpetition interest at the contract rate, on the basis that in *Dow*, the debtor was known to be solvent, whereas the *W.R. Grace* debtor's solvency was uncertain. *Id.* ("Application of the absolute priority rule is a more contentious matter and fact-specific inquiry when a debtor is insolvent or its solvency remains unknown."). For purposes of the postpetition interest dispute before this Court, the parties have effectively been asked to assume the solvency of the US Debtors. Accordingly, the *W.R. Grace* court's discussion, based in large part on the uncertain solvency of the debtor, has no application here.

Further, taking the Canadian Monitor's position regarding the absolute priority rule to its logical conclusion leads to illogical results. Most importantly, such an interpretation of the absolute priority rule would mean that a plan can satisfy the absolute priority rule without providing payment of *any* amount of postpetition interest to creditors, let alone at the contractually bargained-for rate, before providing for distributions to equity. Even the Canadian Monitor's argument that Federal Judgment Rate is the appropriate rate would violate the Canadian Monitor's interpretation of the absolute priority rule. This result flies in the face of settled U.S. bankruptcy law.

The absolute priority rule and the concept of impairment are inextricably intertwined. If a class is impaired, it is entitled to vote to accept or reject a plan. 11 U.S.C. § 1129(a)(8). If a class is unimpaired, it is deemed to accept the plan and is not solicited to vote. 11 U.S.C. § 1126(f). Whether a class of claims is impaired is determined in accordance with Bankruptcy Code section 1124. 11 U.S.C. § 1124(1) (stating that a class of claims is impaired unless the plan "leaves unaltered the legal, equitable, and contractual rights to which such *claim*…entitles the holder of such *claim*") (emphasis added). As discussed in the Opening Brief, Congress

7

amended section 1124 to require that postpetition interest be paid to creditors in order for their "claims" to be considered unimpaired. *See PPI Enters. (U.S.), Inc.*, 324 F.3d at 206-07. If an impaired class votes to reject the plan, the class is entitled to the protections of the absolute priority rule. 11 U.S.C. § 1129(b)(1). The Canadian Monitor's interpretation of the absolute priority rule leads to the absurd result of depriving an impaired creditor, who is granted the right to vote on the plan by virtue of not receiving postpetition interest, the protections of the absolute priority rule under section 1129(b).

Notably, one of the cases cited by the Canadian Monitor for the proposition that postpetition interest is not part of an allowed claim and, therefore is not required to be paid pursuant to the absolute priority rule, held that a plan that provided postpetition interest at the Federal Judgment Rate *violated the absolute priority rule. See In re Dow Corning Corp.*, 244 B.R. 678, 696 (Bankr. E.D. Mich. 1999). The Bankruptcy Court in *Dow* stated that "section 502(b)(2) does not rule out the possibility of interest on allowed claims pursuant to 1129(b)" 244 B.R. at 685. The *Dow* bankruptcy court's conclusion that the absolute priority rule requires payment of postpetition interest to creditors at the contractually bargained-for rate is the appropriate view because it reconciles Bankruptcy Code sections 1124 and 1129(b) and upholds basic principles of bankruptcy law that respect creditors' non-bankruptcy rights where the debtor can pay prepetition claims in full. The *Dow* line of cases are the only cases on this topic that reconcile all of the issues pending before this Court in this dispute.

### C.    There is No Federal Interest in Prohibiting Payment of Postpetition Interest Where a Debtor can Pay Prepetition Claims in Full.

The Canadian Monitor also cites *W.R. Grace* for the proposition that there is a federal interest in prohibiting payment of postpetition interest that warrants the abrogation of contractual rights where a debtor is able to pay in full claims for principal and prepetition interest. *See*

8

Canadian Monitor Br., ¶ 5.  In the context of determining that no default had occurred that

warranted the payment of *default* interest to the bank lenders, the *W.R. Grace* court noted in dicta

that the general prohibition on postpetition interest in Bankruptcy Code section 502(b)(2)

evidenced a federal interest that adversely impacted creditors' non-bankruptcy contract rights.

475 B.R. at 159.

However, implicit in the District Court's ruling is the recognition that although there may

be a federal interest in prohibiting payment of unmatured interest where a debtor cannot pay

prepetition claims in full, there is no such federal interest that warrants the abrogation of

contractual rights where a debtor is "solvent."  *See In re Dow Corning Corp.*, 456 F.3d 668, 679

(6th Cir. 2006) ("absent compelling equitable considerations, when a debtor is solvent, it is the

role of the bankruptcy court to enforce the creditors' contractual rights."); *In re Chicago,*

*Milwaukee, St. Paul & Pac. R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986) ("[I]f the bankrupt is

solvent the task for the bankruptcy court is simply to enforce creditors' rights according to the

tenor of the contracts that created those rights."); *UPS Capital Business Credit v. Gencarelli  (In*

*re Gencarelli),* 501 F.3d 1, 7 (1st Cir. 2007) ("This is a solvent debtor case and, as such, the

equities strongly favor holding the debtor to his contractual obligations as long as those

obligations are legally enforceable under applicable non-bankruptcy law.").  Interpreting

Bankruptcy Code section 502(b)(2) to evidence a federal interest in prohibiting the payment of

postpetition interest in all circumstances would render meaningless the exception to the

prohibition on payment of postpetition interest where a debtor can pay prepetition claims in full.

And in the case cited by the Canadian Monitor for this extraordinary proposition, the District

Court approved a plan that paid the bank lenders postpetition interest at a rate that was *higher*

than the contractual non-default rate of interest.

9

II.    **The Court Does Not Have Discretion to Disregard the Contractual Rights of US Creditors Based on the Length of these Cases.**

As discussed in the Opening Brief, this Court does not have discretion to disregard the bargained-for contractual rights of creditors where a debtor estate is "solvent," and even if the Court had such discretion, there are no compelling equitable circumstances that warrant deviating from the contractual entitlements of US creditors in these cases. Certain of the Canadian Parties have argued that the Court should adopt the Federal Judgment Rate because the contract rate of interest would incentivize creditors to delay bankruptcy proceedings. *See* Canadian Monitor Br., p. 2; CCC Br., ¶ 3, Wilmington Br., ¶ 3. This "moral hazard" argument fails both generally and under the facts and circumstances of these cases.

The Canadian Parties' argument that the use of contractually bargained-for rates for postpetition interest will incentivize creditors to delay bankruptcy cases simply misses the mark because the Federal Judgment Rate is not static. At any point in time, the Federal Judgment Rate could be similar to or higher than contract rates. Here, the Canadian Parties' argument is based on the historically low level of the Federal Judgment Rate on the petition date of these cases, reflecting the financial crisis that began in late 2008. The Federal Judgment Rate has often exceeded 4% and has sometimes exceeded 6%.[8] Undoubtedly, the Federal Judgment Rate will at times be higher than creditors' contractual rates of interest. In fact, two of the cross-border bond issuances in these cases, issued in the aggregate principal amount of over $1 billion, have contractual interest rates lower than or equal to 2.125%. Accordingly, one cannot objectively say that one rule or the other (Federal Judgment Rate or contract rate) would provide an incentive for delay.

---

[8] *See* Board of Governors of the Federal Reserve System, Selected Interest Rates (Daily), Historical Data, *available at* http://www.federalreserve.gov/releases/h15/data.htm.

10

There is also no credible basis for the Canadian Parties to assert that US creditors have delayed these cases to benefit from the accrual of postpetition interest at contractually bargained-for rates. The US interests, including the US Debtors and their creditor constituencies, have consistently endeavored to progress these chapter 11 cases. Examples of the successful efforts of the US interests to move these case forward to conclusion in an expeditious manner (all of which were initially opposed by other parties) abound. Immediately following the failure of the second mediation in April 2011, the US Debtors and the Committee filed a motion seeking entry of an allocation protocol that would permit the Courts to decide the allocation dispute.[9] The US Debtors and the Committee jointly objected to and filed motions to dismiss approximately $9 billion of claims asserted against the US Debtors by the EMEA Joint Administrators (the "EMEA Claims") and prosecuted those motions to dismiss in less than three months.[10] The US parties began a similar process to dismiss over $3 billion in claims asserted by the UK Pension Claimants against the US Debtors (the "UK Pension Claims").[11] Similarly, in January 2014, the US Debtors and the Committee agreed to settle the EMEA Claims and UK Pension Claims, thus avoiding substantial discovery and a trial of those claims.[12] US creditors have not delayed the progress of these chapter 11 cases in order to benefit from the accrual of postpetition interest. There are no equitable circumstances that justify changing the contractual rights of US creditors.

---

[9] *See Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief* [ECF No. 5307].

[10] *See Objections to Claims of Nortel Networks UK Limited, Nortel Networks Ireland Limited and Nortel Neworks, S.A.* [ECF Nos. 5970, 6022, 6026].

[11] *See Joint Objection to the Proofs of Claim Filed by the Nortel Networks UK Pension Trust Limited (as Trustee for the Nortel Networks UK Pension Plan) and the Board of the Pension Protection Fund* [ECF No. 10519].

[12] *See Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. 105, 363, 503(b) and 507(a)(2) and Bankruptcy Rules 6004(h) and 9019 Approving the US Claims Litigation Settlement Agreement by and Among the Debtors, the Creditors Committee, the Joint Administrators, the EMEA Debtors, Nortel Networks Optical Components Limited, Nortel Telecom France SA, the Liquidator, the French Liquidator, the UK Pension Parties and Certain Affiliates* [ECF No. 12618].

11

III.    **The Canadian Parties' Meritless Allocation Positions are Not Relevant to the Postpetition Interest Issues.**

The Canadian Parties' meritless allocation positions are not a basis for denying

postpetition interest to US creditors at the contract rate.  The UK Pension Claimants, whose

claims were settled, satisfied and released in January resulting in such claimants no longer being

creditors of the US Debtors, seem to have mistaken the issues before this Court for an additional

opportunity to submit post-trial briefing of their allocation position.[13]  This Court should

disregard the UK Pension Claimants' arguments because their *pro rata* allocation methodology

and misplaced interpretation of the Hotchpot Rule have no bearing on the postpetition interest

issues.  *See* UK Pension Claimants Br., ¶¶ 20-26.[14]  The Court should similarly disregard

Wilmington's assertion that the Court cannot view the postpetition interest dispute as an instance

of equity receiving a windfall because NNL will ultimately distribute proceeds to Canadian

creditors that did business with an "integrated Nortel."  *See* Wilmington Br., ¶ 4.  Similar to the

UK Pension Claimants' positions, Wilmington's argument invokes concepts of global

substantive consolidation that disregard the corporate separateness of the US Debtors and the

Canadian Debtors and the separate jurisdictions of the Courts.  While this is not the time for

arguing allocation positions, the Committee believes it was clearly proven at trial that there is no

basis in law or fact in these cases for global substantive consolidation or the *pro rata* allocation

theory, and certainly no basis for such theories to impact the postpetition interest issues now

before this Court.

---

[13] As discussed below, the UK Pension Claimants' and Wilmington's arguments should also be disregarded because such parties lack standing to be heard on this matter.

[14] The UK Pension Claimants admit that the Hotchpot Rule is not applicable under the facts of these cases as such rule (codified in Bankruptcy Code section 1532) applies to a creditor's recovery on the same claim against the same debtor in multiple proceedings. Here, cross-border claimants are asserting separate claims against separate debtors. Further, the UK Pension Claimants' invocation of the Hotchpot Rule conflates such rule with their baseless global substantive consolidation theories.

IV.    **The Canadian Parties other than the Canadian Monitor Lack Standing to be Heard
on the Postpetition Interest Issues in the US Proceedings.**

Bankruptcy Code section 1109(b) mandates that only "parties in interest" can be heard in

chapter 11 cases.  11 U.S.C. § 1109(b).  The CCC, Wilmington and the UK Pension Claimants

do not qualify as "parties in interest" under any of the categories specified in Section 1109(b).

*See id.* ("the debtor, the trustee, a creditors' committee, an equity security holders' committee, a

creditor, an equity security holder, or any indenture trustee").  Rather, the CCC, Wilmington and

the UK Pension Claimants are *creditors of a party in interest* – namely, the US Debtors' equity

holder, NNL.[15]

While the Third Circuit has held that the list of parties listed in Bankruptcy Code section

1109(b) is not exhaustive and the term "party in interest" should be construed broadly, *see In re

Global Indus. Technologies, Inc.,* 645 F.3d 201, 210-11 (3d Cir. 2011), the term is not infinitely

expansive.  Courts, including another bankruptcy court in this District, have found that parties

that are merely creditors or stakeholders of parties in interest do not have standing.  *See, e.g., In

re Lifeco Inv. Grp., Inc.,* 173 B.R. 478, 487-88 (Bankr. D. Del. 1994) (holding that a statutory

receiver of a creditor is not a party in interest and finding "no statutory or judicial support to

conclude that a creditor of a creditor has standing in a bankruptcy case."); *In re Refco Inc.,* 505

F.3d 109, 117 n.10 (2d Cir. 2007) (stating that courts have consistently held that "party in

interest standing does not arise … if a party seeks to assert some right that is purely derivative of

another party's rights in the bankruptcy proceeding.").  Indeed, while creditors of a party in

interest may have a substantial financial interest in the outcome of a bankruptcy case, there is no

basis in law to confer standing on creditors of a party in interest where such creditors' interests

---

[15] As noted above, Wilmington is an indenture trustee for an issuance of notes with claims solely against
certain of the Canadian Debtors.

13

are already represented by a party in interest. *See Lifeco Inv. Grp.*, 173 B.R. at 487-88; *cf. Unofficial Comm. Of Zero Coupon Noteholders v. Grand Union Co.*, 179 B.R. 56, 59 (D. Del. 1995) (conferring standing on a creditor of an equity holder where the equity holder was an affiliate of the debtor and there was significant director and officer overlap between the equity holder and the debtor such that it was not clear that the creditor's interest were represented by the equity holder).

The CCC, Wilmington and the UK Pension Claimants do not have standing with respect to the postpetition interest issues before this Court as they are merely creditors of a party in interest.  The interests of these Canadian Parties are represented by the Canadian Monitor, which has filed an opening brief and will argue its position on the postpetition interest issues as a proper party in interest under Bankruptcy Code section 1109(b).  The postpetition interest issues in the US proceedings are not an intercreditor dispute as the Canadian Parties are ***not*** creditors of the US Debtors.

## CONCLUSION

As set forth in the Opening Brief, creditors' contractual rights, including the right to recover interest at a contractually bargained-for rate, must be respected where a debtor estate is able to pay in full claims for principal and prepetition interest. The Canadian Monitor's position that postpetition interest, to the extent permissible, should be calculated at the Federal Judgment Rate fails as a matter of law and basic bankruptcy principles.

14

Dated:  July 22, 2014
Wilmington, Delaware

AKIN GUMP STRAUSS HAUER & FELD LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Robert Johnson (admitted *pro hac vice*)
Brad Kahn (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

- and -

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

Counsel to the Official Committee of Unsecured
Creditors of Nortel Networks Inc., et al.

15