In the Matter Of:

# Nortel Trial

## DAY 21
## June 24, 2014





FOR EXCELLENCE IN COURT REPORTING

```
 1                UNITED STATES BANKRUPTCY COURT
 2
                  FOR THE DISTRICT OF DELAWARE
 3
 4   -------------------------------)
 5   In Re                           )
 6     NORTEL NETWORKS INC.,         )   Case No.
 7     et al.,                       )   09-10138 (KG)
 8       Debtors.                    )
 9   -------------------------------)
10                     - and -
11              Court File No. 09-CL-7950
12                     ONTARIO
13            SUPERIOR COURT OF JUSTICE
14                (COMMERCIAL LIST)
15     IN THE MATTER OF THE COMPANIES' CREDITORS
16   ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED
17     AND IN THE MATTER OF A PLAN OF COMPROMISE OR
18   ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL
19       NETWORKS LIMITED, NORTEL NETWORKS GLOBAL
20       CORPORATION, NORTEL NETWORKS INTERNATIONAL
21       CORPORATION AND NORTEL NETWORKS TECHNOLOGY
22                     CORPORATION
23     APPLICATION UNDERT PART IV OF THE COMPANIES'
24    CREWDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36,
25                     AS AMENDED
```

```
 1
 2
 3
 4   ---- This is the Day 21/Volume 21 of the transcript
 5   of the proceedings in the above matter held
 6   simultaneously in:
 7   Superior Court of           United States Bankruptcy
 8   Ontario (Commercial         Court for the District of
 9   List)                       Delaware
10   Courtroom 8-1               Courtroom 3
11   330 University Avenue       824 Market Street
12   Toronto, Ontario            Wilmington, Delaware
13
14              on the 24th day of June, 2014,
15   commencing at 9:25 a.m.
16
17                     ---------
18   B E F O R E:
19   The Honorable Judge Kevin Gross (United States)
20   The Honorable Mr. Justice Frank Newbould (Canada)
21
22                     ---------
23
24
25
```

1  unfortunately, decisions were made.  $4 billion was
2  borrowed, and that $4 billion was generally used to
3  support the Canadian business, to pay Canadian
4  employees, to support Canadian R&D and settle
5  claims against Canadian individuals.  And so to
6  take those issues out of the panoply of issues that
7  we have had and make it public was very disturbing
8  to us, so we felt it was necessary to take a public
9  stand against that.
10             So we stand here today now with one
11 issue identified and dozens of others not.  And
12 frankly, the temptation that we all have on our
13 side of the courtroom is to stand up and say here
14 are the other issues.  We have not done that and we
15 will not do it.  The Courts have decided that we
16 should address these issues.  We are professionals,
17 and we will do that.
18             THE US COURT:  Isn't this helpful to
19 the Debtors, the US Debtors?
20             MR. BROMLEY:  Well, Your Honor, if we
21 were sitting down in a room like we have been for
22 so often, and I have been in every minute of every
23 one of those mediations and every one of those
24 discussions, I would tell you that it doesn't solve
25 the problem.  I wish it would.  I wish it could.

```
 1   But every one of the other issues that we are
 2   dealing with, including ones that have been subject
 3   to extensive discovery and briefing in this
 4   allocation trial, are as front and center in that
 5   conversation about how to settle these cases.
 6              In some respects, it is an issue
 7   between the Bondholders and the Canadian Debtors.
 8   But frankly, it is more an issue between the
 9   Bondholders and the CCC.  And if folks are to get
10   out of the way, if you will, the Monitor should get
11   out of the way just as much as the US Debtors.  The
12   Monitor is supposed to be a court-appointed
13   officer.  And I am not a Canadian lawyer by any
14   stretch of the imagination, though I wish to be
15   some day.
16              The fact of the matter is that on the
17   one hand we have a group of individuals who are
18   suffering.  I understand that.  They also have a
19   grudge.  There is no question about that.  They
20   were also very unhappy over a long period of time.
21              On the other side we have a group of
22   Bondholders.  We have documents that govern those
23   bonds, documents that bind the US Debtors solely
24   because its parent told them to do it.
25              So here we are.  It is time for us to
```

```
 1   deal with the issue.  I think we should brief it.
 2   The Courts have told us to do that, and we will all
 3   do it.
 4              One question I have, frankly, for the
 5   Courts, Your Honors, is when will you tell us what
 6   you decide, because while we are instructed to sit
 7   down --
 8              THE CANADIAN COURT:  Once we decide.
 9              MR. BROMLEY:  If we are to sit down and
10   settle, Your Honor, and have conversations, I can
11   tell you without hesitation that this is going to
12   be an obstacle to having any further conversation
13   so long as it is being litigated before you.  Okay?
14   So if we walk back into the room next week, we are
15   not going to get anywhere so long as this is now
16   subject to litigation before the Courts.  And I
17   don't mean appeals.
18              We are sitting here today with this
19   issue in front of us.  Frankly, we are sitting here
20   with the pro rata issue in front of us just as
21   much.
22              THE US COURT:  Sure.
23              MR. BROMLEY:  And why are we -- we will
24   sit down and, you know, we are sick of each other,
25   frankly.  I wish I could say we would be happy to
```

```
 1   or the other, cannot hurt those discussions.
 2              We are told that further settlement
 3   discussions can be held next week and that is all
 4   to the good.
 5              However, what we propose to order will
 6   not affect the ability of the parties to negotiate
 7   further next week.  Negotiations and compromises
 8   are the stuff of CCAA proceedings.
 9              However, this issue has been known
10   since the Rockstar transaction in 2011 and has not
11   been settled.  It is also the case that three
12   mediations and discussions for a week, a few weeks
13   ago, have all failed.  It is not at all sure that
14   further discussions will achieve a settlement while
15   this issue remains outstanding.
16              I see no prejudice to anyone in having
17   this issue now dealt with.  The longer it festers,
18   the higher the legal fees will undoubtedly be.
19   Legal fees in this case are of huge concern to the
20   courts and to the pensioners and other claimants,
21   and they are hardly minor.
22              If there are going to be appeals, so be
23   it.  That likely would be the case in any event,
24   and if so, the sooner the better.
25              The success or failure of the
```

```
 1    bondholders' claim for interest will have an
 2    important and large effect on the Canadian Estate,
 3    and on the claims of the pensioners and of the
 4    disability claimants.  The sooner that is decided,
 5    the better.
 6              In their allocation pleadings, the US
 7    interests assert an allocation that will result in
 8    the US Estate being solvent and their expert
 9    evidence is to that effect.  This, of course, is
10    perhaps a US bankruptcy issue, but I would observe
11    that while allocation issues have yet to be
12    decided, one cannot, at this stage, say that the US
13    Debtors' allocation position will not be accepted.
14              It is not unknown in Canada to have
15    issues decided in CCAA proceedings on claims
16    involving potential issues.  In Re:  Sino Forest
17    Corporation, 2012 ONSC 4377, affirmed 2012 ONCA
18    816, an issue was decided in a class action by
19    shareholders as to whether those claims were equity
20    claims, and whether the auditor's claims for
21    indemnity, if they ultimately were liable, would be
22    equity claims.  It was contended, without success,
23    that the motion was premature and the issue was
24    decided.
25              It is also the case under the Ashmore
```