**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------X
        :
        :
        :      Chapter 11

*In re*        :
        :      Case No. 09-10138 (KG)

Nortel Networks Inc., *et al.*,[1]        :
        :      Jointly Administered
        Debtors.      :
        :      **Re: Docket No. 14117**
        :
        :
-----------------------------------------------------------X

**U.S. DEBTORS' OBJECTION TO THE MOTION OF THE MONITOR AND THE
CANADIAN DEBTORS FOR AN ADJOURNMENT OF THE OBJECTION
DEADLINE CONCERNING THE U.S. DEBTORS' 9019 MOTION
AND FOR EXPEDITED DISCOVERY**

Nortel Networks Inc. and certain of its affiliates, as debtors and debtors in

possession (collectively, the "U.S. Debtors"), hereby object (the "Objection") to the *Motion of*

*the Monitor and the Canadian Debtors for an Adjournment of the Objection Deadline*

*Concerning the U.S. Debtors' 9019 Motion and for Expedited Discovery* [D.I. 14117] (the

"Motion to Adjourn"), filed by Ernst & Young Inc., the court-appointed monitor (the "Monitor")

of Nortel Networks Corporation ("NNC") and certain of its Canadian direct and indirect

subsidiaries (the "Canadian Debtors"), together with the Canadian Debtors (together, the

"Movants").  In support of this Objection, the U.S. Debtors respectfully state as follows:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. ("NNI") (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. ("NN CALA") (4226), (collectively the "Debtors").  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

**PRELIMINARY STATEMENT**

1.      By the Motion to Adjourn, the Movants would turn a negotiated good faith settlement between the U.S. Debtors, the Supporting Noteholders, and the Indenture Trustee – a consensual agreement intended to further streamline the resolution of these cases – into expensive full blown litigation replete with unnecessary discovery without making the slightest attempt to reach consensual resolution of these matters.[2]  In addition to seeking to adjourn the objection deadline on the 9019 Motion, the Movants also seek expedited, unnecessary, overly broad discovery that is not targeted in the slightest to the issues addressed in the 9019 Motion. This is yet another clear indication of which estate is prolonging the litigation, driving up costs and avoiding at all costs a consensual resolution.

2.      Just over one month ago, the Movants – the Monitor and the Canadian Debtors (who are, for all purposes, the Monitor) – aggressively insisted the question of whether certain bondholders' entitlement to post-petition interest be resolved not only in their own cases but in the U.S. Debtors' cases as well, on the purported premise that resolution of this question would advance the resolution of other matters, namely a consensual agreement on the sale proceeds allocation dispute.  Indeed, the Movants have repeatedly emphasized that this Court could resolve the US PPI Dispute as a matter of law.[3]  As a result, the Court and the Canadian Court

---

[2]      Capitalized terms used herein but not otherwise defined shall have the meanings ascribed in the *Debtors' Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 Approving Settlement Agreement by and among Nortel Networks, Inc., the Supporting Bondholders, and the Bank of New York Mellon with Respect to the NNI Post-Petition Interest Dispute and Related Issues* [D.I. 14076] (the "9019 Motion").

[3]      *See Reply Brief of the Monitor and Canadian Debtors Regarding Post-Petition Interest and Related Issues* [D.I. 14054] (the "Movants' Reply")  ¶ 32 ("That test is satisfied here because the issues are purely legal, the parties are adverse in interest, and the resolution will be of assistance to the parties by providing  greater clarity about distributions from the US and Canadian estates."); ¶ 34 ("Under any scenario – plan, settlement or otherwise – absent consent of all parties, the result mandated by the Bankruptcy Code and established case authority in this District is that any post-petition interest must be paid at the federal judgment rate."); and ¶ 36 ("The proceeding to decide the Crossover Bond Claim Issues presents the Court with an opportunity to rule on a discrete legal issue that has the potential to materially move the allocation dispute towards resolution by providing needed guidance in these

ordered that the issue be litigated now, and various parties submitted legal briefing on the issue.

Contemporaneous with these litigation efforts, the U.S. Debtors were able to negotiate a

settlement that resolves this matter as it relates to the cross-over bondholders, obviating the risk

of further litigation to all parties in interest, and leaving for another day other U.S. creditors'

entitlements to post-petition interest.  Now that the U.S. Debtors negotiated for the voluntary

reduction by the relevant bondholders of approximately $600 million of post-petition interest

claimed, however, the amount of interest to which such bondholders are entitled allegedly

requires massive discovery by the Movants.  While the Movants have previously accused other

parties of attempting to delay the resolution of the US PPI Dispute, it is the Movants who are

now using scorched earth discovery tactics to derail the resolution of the US PPI Dispute and end

the litigation related thereto.[4]

3.      The Movants allege that by filing the 9019 Motion, the U.S. Debtors have taken a

dispute that was purely legal in nature and "injected a fact-intensive analysis into the

proceedings."  Motion to Adjourn ¶ 3.  The Movants appear to be criticizing the U.S. Debtors for

saving both this Court's time, and the estates' money, by settling the US PPI Dispute simply

because they don't like the deal.

4.      The current objection deadline gives the Movants ample time to file a full

objection to the 9019 Motion if they believe appropriate, and then propound limited and targeted

discovery on the U.S. Debtors if they can demonstrate such discovery is both necessary and

relevant to any objection they raise.  Of course, in the event any such discovery were found to be

appropriate, it likely would require reciprocal discovery from the Movants.  Additionally,

---

cases. . . .  The Court has correctly determined that the Crossover Bond Claim Issues represent discrete issues of law
that if resolved may materially move these cases forward.").

[4]      *See* Movants' Reply, p. 2.

3

receiving the Movants response before any response to discovery requests is required will give the U.S. Debtors and the Court the ability to gauge what discovery is actually necessary. What is clear at this point, even from first glance, is that the Movants' current overly broad discovery requests – served a mere three business days after the settlement motion was filed – are more intended to harass the Debtors than make a legitimate inquiry. Further, seeing any response by the Movant before initiating discovery will allow the U.S. Debtors to take discovery from the Movants as the Movants are not entitled to make unsupported conclusory statements regarding the U.S. Debtors' efforts to streamline these cases without being made subject to discovery themselves. The schedule proposed by the Movants would eliminate that ability in its entirety.

5.      As the Movants have put forth no colorable reason why they need the extensive discovery requested in the Motion to Adjourn on such an expedited timeline, and in fact granting the relief would prejudice the U.S. Debtors' right to take discovery of the Movants, this Court should deny the Motion to Adjourn.

6.      To the extent the Court finds that the Movants are entitled to discovery in connection with the 9019 Motion, it should be extremely limited, only after the Movants have filed their full objection to the 9019 Motion, and with the opportunity for the U.S. Debtors to take discovery of the Movants.

**OBJECTION**

7.      The objection deadline for the 9019 Motion should not be disturbed. The Third Circuit has emphasized that "[t]o minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy." *Myers v. Martin* (*In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal quotation marks omitted) (quoting 9 *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)). In *Martin*, the Third Circuit noted that "a bankruptcy

judge has authority to approve a compromise of a claim, provided that the debtor, trustee, and creditors are given twenty days' notice of the hearing on approval." *Martin*, 91 F.3d at 393 (citing an earlier version of Fed. R. Bankr. P. 2002(a)(3)).    The U.S. Debtors filed the 9019 Motion on July 24, 2014, well exceeding the notice required by Federal Rule of Bankruptcy Procedure 2002(a)(3).

8.    Rule 9006-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") provides that when a motion is filed at least 21 days prior to the hearing date "the movant may establish any objection deadline that is no earlier than fourteen (14) days after the date of service." Del. Bankr. L.R. 9006-1.   The U.S. Debtors filed the 9019 Motion more than 21 days prior to the proposed hearing date and set the objection deadline 18 days after the date of service, well within the time permitted by the Local Rules.  The current timeline for the 9019 Motion gives the Movants ample time to file any objection they have with the Court and seek limited and targeted discovery.

9.    One of the main advantages of settlement is the avoidance of litigation of the issues being settled.  *In re ID Liquidation One, LLC*, 555 Fed. Appx. 202, 207 (3d Cir. 2014). Through the Motion to Adjourn, and the discovery requests issued in connection therewith, the Movants are seeking to negate this advantage and instead initiate and exhaustively pursue the exact litigation that the settlement proposed by the 9019 Motion was meant to resolve.

10.    The Movants are also incorrect that the 9019 Motion turns what they allege was a purely legal issue into a fact-intensive analysis such that they are entitled to the overreaching discovery they have propounded.  When considering a settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 "[t]he court need not decide the numerous questions of law or fact raised by the litigation, but rather should canvas the issues to determine whether the settlements

5

falls above the lowest point in the range of reasonableness." *In re Capmark Fin. Grp. Inc.*, 438

B.R. 471, 515 (Bankr. D. Del. 2010) (citations omitted).  In making this determination, "the

Court is not required to conduct a full evidentiary hearing as a prerequisite to approving a

compromise." *Id.* (citing *In re Jasmine, Ltd.*, 258 B.R 119, 123 (D.N.J. 2000) (stating that when

deciding whether to approve a proposed compromise in a bankruptcy, the court is not to conduct

a 'mini trial on the merits.')) (further citations omitted).  Given the tenor of the Motion to

Adjourn and the extensive amount of discovery propounded by the Movants, which include

extensive interrogatories and requests for production in addition to three depositions, they seem

to be asking the Court to do exactly that while ignoring the substantial evidentiary record that is

already before this Court relating to the issues being resolved by the 9019 Motion.

11.    In support of their allegation that there is not an adequate record to support the

approval of the 9019 Motion, the Movants allege that the 9019 Motion represents a "full-fledged

surrender [by the U.S. Debtors] of the post-petition interest issue with respect to the holders of

the Guaranteed Bonds . . . ." Motion to Adjourn ¶ 5.  This could not be further from the truth.

The Movants themselves have estimated the potential liability on the US PPI Dispute as US$1.6

billion.  *See Nortel Canadian and US Insolvency Proceedings – Bondholder Claims Issues* [D.I.

13880].  As set forth in the 9019 Motion, any recoveries on post-petition interest by the

Guaranteed Bonds would be capped at $876 million, plus up to an additional maximum of $134

million if distributions are not made in the next year.  These amounts constitute nearly $600

million less than the potential liability estimated by the Movants themselves.  The settlement also

contains various other agreements and compromises with respect to the bondholders' claims that

are beneficial to the Debtors and their estates and parties in interest.

12.     The Movants have no entitlement to discovery prior to filing a full objection to the 9019 Motion.  *See PW Enterprises, Inc. v. Kaler (In re Racing Services, Inc.),* 332 B.R. 581, 585 (8th Cir. B.A.P. 2005) (noting that when settlement motion to objected to, it becomes a contested matter giving the parties the opportunity to engage in discovery.)  The Motion to Adjourn contains a single unsupported paragraph with no facts or legal authority entitled "Preliminary Objection and Reservation of Rights."  This "Preliminary Objection" is wholly insufficient for the U.S. Debtors to determine what the Movants' objection to the 9019 Motion actually is in order to respond to the discovery requests they've received or to be able to propound reciprocal discovery requests against the Movants if and as appropriate.  Given that the U.S. Debtors are entitled to discovery as well, the Movants should be required to put forth their complete and full objections to the 9019 Motion and then both parties should be permitted to take limited, targeted discovery.  The timeline proposed by the Movants would eliminate the ability for the U.S. Debtors to take discovery of them, even though the Movants appear to seek to derail the settlement in favor of continued litigation of these issues.

13.     For the reasons set forth in the 9019 Motion, the settlement of the US PPI Dispute meets the factors set forth in *Martin* and the U.S. Debtors submit that no discovery is appropriate or necessary.  The U.S. Debtors are willing to discuss limited and targeted discovery with the Movants, if given the opportunity and time to take discovery themselves.  To the extent the parties cannot reach agreement on the scope of discovery, the U.S. Debtors submit that such discovery should be extremely limited and targeted directly to the merits of the 9019 Motion.


*[Remainder of Page Intentionally Blank]*

## CONCLUSION

14.    For the reasons set forth above, the Court should deny the Motion to Adjourn

and any discovery by the Movants should be limited and targeted directly to the merits of the

9019 Motion.

Dated:  August 4, 2014          CLEARY GOTTLIEB STEEN & HAMILTON LLP
Wilmington, Delaware

Howard S. Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*