IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| | (Jointly Administered) |
| Debtors. | |
| | RE: D.I. 14117 |

**REPLY IN FURTHER SUPPORT OF THE PRELIMINARY OBJECTION
AND MOTION OF THE MONITOR AND THE CANADIAN DEBTORS
FOR AN ADJOURNMENT OF THE OBJECTION DEADLINE CONCERNING
THE U.S. DEBTORS' 9019 MOTION AND FOR EXPEDITED DISCOVERY**

Ernst & Young Inc., the court-appointed monitor (the "**Monitor**")[2] and foreign representative of Nortel Networks Corporation ("**NNC**") and certain of its Canadian direct and indirect subsidiaries (collectively, the "**Canadian Debtors**") in proceedings (the "**Canadian Proceedings**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**"), pending before the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**," and together with this Court, the "**Courts**"), together with the Canadian Debtors (together, the "**Movants**") submit this reply (the "**Reply**") in further support of the *Preliminary Objection and Motion of the Monitor and the Canadian Debtors for an Adjournment of the Objection Deadline Concerning the U.S. Debtors' 9019 Motion and for Expedited Discovery* [D.I. 14117] (the "**Motion**"), and in response to the objections (together, the "**Objections**") to the Motion filed by the U.S. Debtors [D.I. 14161] and the Ad Hoc Group of

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226) (the "**U.S. Debtors**").

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion. Citations to the "Objection" refer to the Objection filed by the U.S. Debtors [D.I. 14161].

Bondholders [D.I. 14165] (the "**Bondholders**," and together, with the U.S. Debtors, the "**Objectors**").

In support of this Reply, the Movants respectfully state as follows:

## PRELIMINARY STATEMENT

1. In their opening papers, the Movants demonstrated that the governing standard for evaluating Bankruptcy Rule 9019 settlements in this Circuit requires the Court to perform a fact-specific analysis that considers, among other things, whether the settlement resulted from arm's length negotiation that fairly considered the interests of the creditors, the estate and the interest-holders. As the Movants further demonstrated, the relief sought by this Motion is necessary to determine whether the Proposed Settlement satisfies this governing test. Without it, the Movants will be denied a fair opportunity to respond to the 9019 Motion, and will suffer irreparable harm.

2. The Objectors offer no meaningful response to this showing in their Objections. The Objectors do not provide any specific objection to the Movants' discovery requests or identify any particular request that the Objectors believe is inappropriate. Instead, the Objectors launch an attack on the supposed intentions of the Movants with hyperbole and unsupported inflammatory comments, while the Objectors struggle to identify any prejudice that they could possibly suffer by virtue of a brief adjournment of the Movants' time to object to the 9019 Motion. In fact, the Objectors would suffer none.

3. First, the relief requested by the Movants does not impact the timing of the resolution of the 9019 Motion. The Movants do not seek to move the September 15, 2014 hearing date for the 9019 Motion, but merely request a reasonable adjournment of their objection deadline, which is currently set for August 11, 2014. With the cooperation of the Discovery Parties, there should be ample time to complete expedited discovery and provide the Movants

2

with a reasonable adjournment of their objection deadline without the need to move the September 15 hearing date. Second, the U.S. Debtors' assertion that they need time to take "reciprocal" discovery from the Movants has no basis in law or common sense, and is an obvious effort to inflict payback for the Movants' service of discovery requests.

4. Contrary to the Objectors' assertions, the Movants seek nothing more than a fair opportunity to take reasonable and targeted discovery relating to the material factual issues raised by the 9019 Motion and the Proposed Settlement. The Movants' sole objective in seeking this relief is to obtain the information necessary to test the factual assertions that underlie the U.S. Debtors' 9019 Motion and determine whether the Proposed Settlement meets the governing standard in this Circuit, as set forth in *Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996) and other applicable case law. As the Objectors have provided no reason to deprive the Movants of this opportunity, the Motion should be granted.

## ARGUMENT

5. Courts could not be clearer in holding that a key factor to be considered in evaluating a proposed settlement for Bankruptcy Rule 9019 purposes is "the extent to which the settlement is the product of arm's length bargaining," and that an examination of the process by which the proposed settlement was reached is therefore essential to evaluating the settlement under Bankruptcy Rule 9019. *See, e.g., Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461-62 (2d Cir. 2007); *In re Exide Techs.*, 303 B.R. 48, 67-68, 71 (Bankr. D. Del. 2003) (considering extent to which proposed settlement was product of arm's length bargaining in assessing fairness of deal, and denying approval where this standard was not met); *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 838 (Bankr. D. Del. 2008) (deciding that a plan settlement was not fair and equitable when certain trade creditors were not afforded "meaningful participation" in the negotiations); *In re*

3

*Innkeepers USA Trust*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010) (considering evidence regarding process of negotiations in determining whether to approve plan settlement). For example, in the recent *Lyondell* bankruptcy proceedings, the court ordered the production of settlement communications on a Rule 9019 motion in order to assess whether the negotiations were conducted at arm's length. *See In re Lyondell Chem. Co.*, Case No. 09-10023, D.I. 2592, Tr. at 14-15 (Bankr. S.D.N.Y. Jan. 7, 2010) (Gerber, J.) (a copy of which is attached hereto as Exhibit A) (ordering discovery concerning settlement communications over objection in order to ensure that the court has "total comfort that the settlement was at arms length and wasn't collusive").

6. Recognizing that the Proposed Settlement must meet this standard, as well as fully satisfy all of the additional criteria established in *Martin*, the U.S. Debtors predicated their 9019 Motion on factual contentions that the Proposed Settlement is a compromise of claims that was "vigorously negotiated" at "arm's length" to achieve a fair result for the estate and the creditors, but have provided no evidentiary support for those assertions. Contrary to the Objectors' suggestions, the Movants are not required to blindly accept the Objectors at their word. The Movants are well within their rights to seek a fair opportunity to develop a complete factual record against which to test the U.S. Debtors' assertions. Moreover, in light of the magnitude of the issues covered by the Proposed Settlement and their financial consequences to the Movants, the Movants are acting well within reason in insisting that the Objectors produce the factual material needed to fairly evaluate the 9019 Motion.

7. The Objectors criticize the Movants' preliminary objection as lacking in "facts" and evidentiary support, but in the same breath argue that the Movants should be precluded from taking discovery before they submit their full objection to the 9019 Motion and make a threshold evidentiary showing that the discovery sought is "both necessary and relevant

4

to an objection they raise." Objection ¶¶ 4, 12. The Objectors further contend that the Movants' full objection must be submitted before the Movants seek discovery so that the Objectors can "gauge," in their discretion, "what discovery is actually necessary." *Id.* ¶ 4. The Objectors' position is without merit.

8. First, the Objectors concede that the Federal Rules of Civil Procedure (the "**Federal Rules**") govern the scope of permissible discovery with respect to the 9019 Motion. Under Federal Rule 26(b)(1), a party is entitled to discovery "regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This rule permits discovery into any matter that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

9. In addition to being eminently reasonable, the discovery requests served by the Movants fit comfortably within the standards set forth in Federal Rule 26(b)(1). The Objectors argue, in vague and unspecific terms, that the Movants' discovery requests are overly broad and amount to "scorched earth tactics." A review of the Movants' discovery requests, however, demonstrates that they seek information that directly and specifically relates to the unsupported assertions contained in the 9019 Motion, including the U.S. Debtors' assertions that: (1) the Proposed Settlement resulted from "arm's length settlement discussions" and "vigorous" negotiation (*see, e.g.*, D.I. 14117-8 (Document Production Requests to U.S. Debtors) ¶¶ 1, 2, 8), (2) the negotiation fairly considered the interests of creditors, the estate and the relevant interest-holders (*see, e.g., id.* ¶¶ 4, 9), and (3) the Proposed Settlement "fairly balances" the risks and benefits of entering the agreement versus the alternatives (*see, e.g., id.* ¶¶ 3, 6, 7). This is routine and targeted discovery that goes to the core of the fact-specific test that must be applied to determine if the Proposed Settlement meets the standards of Bankruptcy Rule 9019.

10.     The Objectors' suggestion that the Movants' present opposition to the 9019 Motion is somehow inconsistent with the Monitor's prior representations to the court of the scope of the PPI Dispute is misplaced. The issue originally raised by the Monitor was the purely legal issue of the Bondholders' nominal entitlement to approximately $1.6 billion in post-petition interest at the contract rate. The 9019 Motion improperly seeks to avoid a determination of this issue, but in so doing, raises a number of additional factual issues, not least of which is whether the Bondholders have given up any real value in connection with the settlement, as determined by reference to the likely recoveries on such entitlement under reasonable projections of the surplus in the NNI estate. For example, if NNI is only likely to have a surplus of $1 billion under any realistic scenario—even assuming for the sake of argument that the U.S. Debtors prevail on the Allocation Dispute—then "conceding" $600 million out of a $1.6 billion claim is substantially less impressive than if NNI is likely to have a surplus of $1.6 billion or greater. It is not possible for any party to evaluate the Proposed Settlement, or for the U.S. Debtors to meet their burden of demonstrating that the settlement is fair and equitable, without insight into how the U.S. Debtors have assessed the actual value of the Bondholders' purported concession. To that end, the targeted discovery sought by the Movants is needed to examine how much true value is being given up by the Bondholders. This is not at all inconsistent with the Monitor's prior representations as to the significance of the PPI Dispute and the scope of the Bondholders' claimed entitlement to contract rate interest.

11.     If the Objectors seek to dispute any of the Movants' discovery requests, their recourse is to serve objections identifying the requests with which they take issue and specifying the grounds for each objection. The hyperbole contained in the Objections provides no reason for the Court to deny the Movants' reasonable requests for a short adjournment of time to respond to the 9019 Motion and for expedited discovery.

12. The Objectors have identified no real prejudice that would be visited upon them should the relief requested in the Motion be granted. The Objectors' assertion that such relief would deprive them of the ability to seek discovery from the Movants concerning the negotiation of the Proposed Settlement is a grasp at straws. The U.S. Debtors have provided the Movants with "preliminary" discovery requests and deposition notices that the U.S. Debtors intend to serve in the event that the Court grants the relief sought in this Motion.[3] Although at issue is the factual underpinnings of the Proposed Settlement, to which the Movant is not a party and was not involved in the negotiations, the U.S. Debtors' requests seek information concerning the *Movants'* assessment of the Proposed Settlement. Such discovery is utterly irrelevant to the Court's analysis of the 9019 Motion and the Proposed Settlement. As described above, under the governing standard, the *settling parties'* evaluation of the fairness of the deal and consideration of the interests of all the stakeholders are highly relevant factors that are to be considered in determining whether to approve the Proposed Settlement under Bankruptcy Rule 9019. By contrast, the assessment of the deal by outside parties such as the Movants, who were excluded from the negotiations of the Proposed Settlement and therefore have no direct insight into the relevant issues, such as whether the deal was negotiated at arm's length, bears no relevance to the analysis.

13. Moreover, the relief requested by the Movants should have no impact on the timing of the resolution of the 9019 Motion. Under the current schedule established by the U.S. Debtors, the Movants' objection deadline of August 11, 2014 is more than 30 days before

---

[3] The U.S. Debtors' "preliminary" discovery requests, copies of which are attached hereto as Exhibits B-E, are aimed at both the Canadian Debtors and the court-appointed Canadian Monitor. Should the U.S. Debtors wish to proceed with attempting to seek such discovery, that matter will have to be decided by the Canadian Court so that proper consideration can be given by the Canadian Court to, among other things, the stay issued by that Court.


the September 15, 2014 hearing date.[4]  With the cooperation of the Discovery Parties, this would leave sufficient time to complete expedited discovery and provide the Movants with a reasonable adjournment of their objection deadline, without the need to alter the hearing date.

14.    The Movants have attempted to reach agreement with the Objectors concerning the timing of discovery, and remain willing to continue those discussions.  However, as the Objectors do not seem amenable to any reasonable arrangement, and as the Movants' objection deadline under the current schedule falls in just four days, the Movants respectfully request that the Court grant the Motion and direct the parties to proceed under the following proposed schedule.

15.    The Discovery Parties' deadline to serve their responses, including the production of responsive documents, to the Movants' interrogatories and document production requests should be set for August 11, 2014.

16.    Depositions of the individuals noticed in the Movants' deposition notices should be scheduled for the week of August 18, 2014.

17.    The Movants' deadline to file their full objection to the 9019 Motion should be adjourned to September 2, 2014.

---

[4] The U.S. Debtors' stated intention for setting a hearing date on at least 45-days notice was to "giv[e] people full notice" and to "give everybody sufficient time, everybody who has a right to be heard, sufficient time to be heard on the issue." July 24, 2014 Tr. [D.I. 1408414] at 3-24. The actual objection deadline set by the U.S. Debtors, however, has left the Movants with a mere 18 days from filing to review, digest and formulate detailed objections (without the benefit of discovery) to a settlement that has the potential to determine where the value brakes in these multi-billion dollar liquidating chapter 11 cases. A brief adjournment of the objection deadline to allow for discovery and to ensure that final objections are full and complete would be more likely to accomplish the U.S. Debtors' stated aim of providing a fair timeframe for review of the 9019 Motion.

## **CONCLUSION**

18. For the foregoing reasons, and the reasons set forth in their opening papers, the Movants respectfully request that the Court grant their motion for an order (i) adjourning the deadline for the Movants' objection to the 9019 Motion, and (ii) expediting the time for the Discovery Parties to respond to the Movants' discovery requests.

Dated: August 7, 2014
       Wilmington, Delaware

**BUCHANAN INGERSOLL & ROONEY PC**

/s/  Kathleen A. Murphy
Mary F. Caloway (No. 3059)
Kathleen A Murphy (No. 5215)
919 North Market Street, Suite 1500
Wilmington, Delaware 19801
(302) 552-4200 (telephone)
(302) 552-4295 (facsimile)
mary.caloway@bipc.com
kathleen.murphy@bipc.com

-and-

**ALLEN & OVERY LLP**

Jacob S. Pultman
Paul B. Keller
Laura R. Hall
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300 (telephone)
(212) 610-6399 (facsimile)
jacob.pultman@allenovery.com
paul.keller@allenovery.com
laura.hall@allenovery.com

*Attorneys for Ernst & Young Inc., as Monitor and Foreign Representative of the Canadian Debtors*