# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
:
*In re*                                                        :   Chapter 11
                                                               :
Nortel Networks Inc., *et al.*,[1]                             :   Case No. 09-10138 (KG)
                                                               :
                        Debtors.                               :   Jointly Administered
                                                               :
                                                               :
---------------------------------------------------------------X

# DEBTORS' REQUEST FOR
# PRODUCTION OF DOCUMENTS DIRECTED TO
# THE MONITOR AND THE CANADIAN DEBTORS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (incorporated into Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure) (the "Bankruptcy Rules") and Bankruptcy Rule 9014, Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby request Ernst & Young Inc., the court-appointed monitor (the "Monitor") and foreign representative of Nortel Networks Corporation ("NNC") and certain of its Canadian direct and indirect subsidiaries, including Nortel Networks Limited ("NNL") (collectively, the "Canadian Debtors") in proceedings (the "Canadian Proceedings") to produce the documents described below (collectively, the "Discovery Requests") at the offices of Morris, Nichols Arsht & Tunnell LLP, 1201 North Market Street, Wilmington, Delaware 19801 on or before August [●], 2014 (or such other date as

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

is agreed) with all productions to be made on a good-faith, rolling basis at the earliest possible date.

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1. "9019 Motion" means the *Debtors' Motion for Entry of An Order Pursuant to Bankruptcy Rule 9019 Approving Settlement By and Among Nortel Networks Inc., The Supporting Bondholders, and The Bank of New York Mellon With Respect to the NNI Post-Petition Interest Dispute and Related Issues*, dated July 24, 2014 [D.I. 14076].

2. "Any and all documents" means every document within Your possession, custody or control.

3. "Bondholders" means all holders of the Crossover Bonds.

4. "Canadian Debtors" means Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation.

5. "Communicate" or "Communication" means all verbal and written means of transmission or exchange of information, including but not limited to statements, admissions, denials, inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, ideas, opinions or thoughts by any means and is not limited to written or verbal transfers between natural persons, but includes all other transfers, including but not limited to electronic transfers, transfers of information stored on computer disk or computer memory and memoranda to file.

6. "Concerning" means assessing, describing, constituting, containing, discussing, embodying, evidencing, identifying, recording, referring to, reflecting, regarding, relating to, showing, or stating the subject matter identified.

7. "Core Parties" means the Core Parties as defined in the Allocation Protocol.

8. "Crossover Bonds" means those bonds governed by the Indenture dated as of July 5, 2006, as supplemented as of July 5, 2006, May 1, 2007, and May 28, 2008 (US $1B LIBOR + 4.25% due 2011; US $550M 10.125% due 2013; and US $1.125B 10.75% due 2016); and the Indenture dated as of March 28, 2007 (US $575M 1.75% due 2012 and US $575M 2.125% due 2014); and the Indenture dated as of February 15, 1996 (US $150M 7.875% due 2026).

9. "Crossover Bond Claims" means those claims filed against the Debtors that relate to the Crossover Bonds.

10. "Dataroom" means the Merrill Lextranet shared electronic data site established to facilitate settlement discussions.

11. "Date" means the exact day, month and year if ascertainable, or if not, the best approximation (including relationship to other events).

12. "Debtors" means the above-captioned debtors.

13. "Document" or "Documents" shall include any record that contains any type of information or data in any form and includes everything within the definition of "document" contemplated by Rule 30.01 of the Rules of Civil Procedure for Ontario and/or the types of documents contemplated by Rule 34 of the Federal Rules of Civil Procedure, and for the purposes of these Discovery Requests shall be deemed to include "electronically stored

3

information" ("ESI") as also defined in Rule 33 of the Federal Rules of Civil Procedure and "document" as also defined in Rules 1.03(1) and 30.01 of the Rules of Civil Procedure (Ontario). Examples of Documents include but are not limited to every original (any copy of any original and any copy which differs in any way from any original) of every writing and recording, photograph, or other memorialization, of every kind or description, whether handwritten, typed, drawn, sketched, printed or recorded by any physical, mechanical, magnetic, optical, electronic or electrical means whatsoever, and shall include, by way of illustration only and not by way of limitation, notes, correspondence, communications of any nature, memoranda, advertisements, notebooks, plans, manuals, spreadsheets, summaries or records of personal conversations, appointment books, calendars, diaries, reports, Bloombergs, publications, minutes or records of meetings, transcripts of oral testimony or statements, reports and/or summaries of interviews, agreements and contracts, including all modifications and/or revisions thereof, court papers, brochures, pamphlets, press releases, drafts, revisions of drafts and translations of any documents, tape recordings, audio recordings, video recordings, records, e-mail, instant messages, telephone records, voice mail, computer records, personal digital assistants, all other forms of electronic communication, other data, databases or data compilations of whatever nature stored in any medium and facsimiles to which You now have or have had access to in the past, excluding documents that have been produced to the Dataroom.  Any document with any marks on any sheet or side thereof, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment or any notation of any character and not part of the original text, or any reproduction thereof, is to be considered a separate document for purposes of these Discovery Requests.

14. "Identify" or "Identity," as used herein with reference to a corporation or other non-human entity, shall mean to set forth its name, principal place of business, business address, business telephone number, and the name of the relevant point of contact at the entity.

15. "Identify" or "Identity," as used herein with reference to a natural person, shall mean to set forth his or her name, last known home address and telephone number; corporate affiliations and titles held during the relevant period, including the dates thereof; locations in which he or she worked for a Nortel entity; his or her role; whether currently employed; and if so, the position, and the name, address, telephone number of his or her current employer.

16. "Monitor" means Ernst & Young Inc., in its capacity as the court-appointed monitor in the proceedings commenced under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended, in respect of the Canadian Debtors and each of its divisions, subsidiaries, affiliates, controlled entities, joint ventures, related companies, predecessors, successors and assigns; and present and former officers, directors, employees, agents, attorneys, accountants, and representatives of any of them; and any other person who currently or formerly acted or purported to act on behalf, or who are or have been subject to the direction or control of, any of the entities listed above, but notwithstanding the foregoing, excludes any other Core Parties.

17. "Monitor's Request" means the Memorandum of the Monitor Regarding Bondholder Claims Issues, dated June 19, 2014 [D.I. 13880] requesting the determination by the Ontario Superior Court of Justice and the Bankruptcy Court for the District of Delaware of issues regarding the entitlement of bondholders to post-petition interest.

18. "Person" means a natural person, individual, partnership, firm, labor organization, corporation, governmental body, or any kind of business or legal entity, its agents or employees.

19. "Petition Date" means January 14, 2009.

20. "PPI Dispute" means the dispute over the Bondholders' entitlement to post-petition interest in the Debtors' cases.

21. "Pre-petition" means any time before the Petition Date.

22. "Preliminary Objection" means the *Preliminary Objection and Motion of the Monitor and the Canadian Debtors for an Adjournment of the Objection Deadline Concerning the U.S. Debtors' 9019 Motion and for Expedited Discovery*, dated July 30, 2014 [D.I. 14177] objecting to the 9019 Motion.

23. "You" or "Your" as used herein means each of the Monitor and the Canadian Debtors, as well as any former or current member, owner, director, officer, employee, agent, trust, custodian, predecessor, successor, attorney, accountant, representative, parent, subsidiary, affiliate or other Person(s) purporting to act on behalf of the Monitor or the Canadian Debtors.

24. All other capitalized terms not defined herein shall have the meaning assigned to them in the 9019 Motion.

## INSTRUCTIONS

1. Each Discovery Request shall be answered fully and in writing.

2. If You claim a privilege as to any of the information requested to be identified and produced in the Discovery Requests, you shall provide a privilege log containing details about the category of documents withheld, including at least the following information for

each category: (a) the discovery participant asserting the privilege; (b) the subject matter of the category; (c) the date range; and (d) the author(s) and other recipients, which may be grouped by employer (such as Nortel entity or advisor or law firm).  The Debtors may request additional information regarding categories on the privilege log in order to assess the basis for withholding and shall meet and confer with You on the same.  The following documents, to the extent created after the Petition Date, presumptively need not be included on a privilege log: (a) communications exclusively between You and Your outside counsel or (b) work product created by outside counsel and/or such counsel's agents.  Responsive documents which are jointly privileged shall be produced only to the extent that such joint privilege is shared as between You and the Debtors.

        3.      These Discovery Requests are continuing in nature, and pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, You shall provide, by way of supplemental responses, such additional information as You or any Person acting on Your behalf may hereafter obtain or become aware of that will augment, modify or clarify the responses now given or otherwise be responsive to any of these Discovery Requests.

        4.      Where appropriate, the singular form of a word should be interpreted in the plural, and vice versa, to obtain the broadest possible meaning.

        5.      In construing these requests the word "any" shall be read to mean each and every.

        6.      These Discovery Requests are intended to cover all information and Documents in Your possession, custody or control not already produced to the Dataroom.

        7.      Each Discovery Request is to be answered separately and as completely as possible though joint responses are permissible where applicable, subject to instruction number

7

11 below. The fact that an investigation is continuing or that discovery is not complete shall not be an excuse for failure to answer each Discovery Request as fully as possible.

8. All Documents shall be produced in the manner in which they were maintained in the usual course of business to the extent that the Document continues to be maintained in such manner. A request for a Document shall be deemed to include a request for any and all file folders or binders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself.

9. All Documents requested herein shall be produced in their entirety, along with any attachments, drafts, and non-identical copies, including copies that differ due to handwritten notes or other notes or markings.

10. Produce all Documents in the form and manner specified in <u>Schedule A</u> attached hereto.

11. Produce Documents with sequential Bates numbers, where the Bates number prefix reflects the Person from whom the Document was collected (identifying the specific Person when Your production is on behalf of more than one Person).

12. No part of a Discovery Request shall be left unanswered merely because an objection is made to another part of the Discovery Request.

13. Unless otherwise indicated, the relevant time period for purposes of these Discovery Requests is between June 6, 2014 and the date of these Discovery Requests. To the extent that You request documents from a broader period of time, however, the relevant time period of these Discovery Requests shall be construed as coextensive with the relevant time period of Your requests.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

REQUEST NO. 1: Documents sufficient to show that "the post-petition interest portion alone of the Post-Petition Interest and Additional Amounts Claims, absent insolvency law considerations, approximates US$1.6 billion as of December 31, 2013," as alleged on page 1 of the Monitor's Request, including the complete basis for the calculation of the amount.

REQUEST NO. 2: All Documents supporting the Monitor's statement to the Court that "moving to the goal of making a meaningful distribution to the creditors will, in any event, require the determination of the critical Common Bond Claim Issues," as alleged on page 3 of the Monitor's Request.

REQUEST NO. 3: All Documents concerning the Monitor's statement to the Court that "Prior to the U.S. Debtors' filing of their 9019 Motion, the issues pending before the Court were purely legal in nature," as referenced in ¶ 3 of the Preliminary Objection.

REQUEST NO. 4: All Documents concerning the allegation that "the Proposed Settlement appears to provide little if any compromise," as alleged in ¶ 5 of the Preliminary Objection.

REQUEST NO. 5: All Documents concerning any communications by the Monitor or Canadian Debtors related to a possible consensual resolution of the PPI Dispute.

REQUEST NO. 6: All Documents concerning the consideration by the Canadian Debtors or the Monitor of the likelihood of successfully litigating the PPI Dispute, including without limitation the probability of a determination that, with respect to the PPI Dispute, each of the following would apply: (i) the federal judgment rate as set forth in 28 U.S.C. § 1961; or (ii) the applicable contract rate.

REQUEST NO. 7: All Documents concerning the consideration by the Monitor or Canadian Debtors of the fairness of the Proposed Settlement to the Canadian Debtors and to all creditors of the Debtors.

REQUEST NO. 8: All Documents concerning (i) the complexity of the legal issues at issue in the PPI Dispute and (ii) the anticipated costs of litigation of the PPI Dispute, including, without limitation, consideration of the likelihood of appeal of any judicial determination regarding the PPI Dispute.

REQUEST NO. 9: All Documents You intend to use at any hearing on the 9019 Motion, without regard to the relevant time period.

REQUEST NO. 10: All Documents concerning any communications by the Monitor or Canadian Debtors with any third parties concerning the PPI Dispute as it relates to the Debtors.

REQUEST NO. 11: All Documents concerning the Canadian Debtors' control over operations of the Debtors subsequent to the Petition Date without reference to the time limitations specified above including, without limitation, the basis for the Canadian Debtors' determination, as indicated in the Form 10-K of Nortel Networks Corporation filed with the Securities and Exchange Commission for the fiscal year ended December 31, 2011 that "Nortel determined that it did not exercise all of the elements of control over the U.S. subsidiaries as of October 1, 2010.

*Remainder of Page Left Intentionally Blank*]

Dated: August [●], 2014
Wilmington, Delaware

        CLEARY GOTTLIEB STEEN & HAMILTON LLP

        Howard Zelbo (admitted *pro hac vice*)
        James L. Bromley (admitted *pro hac vice*)
        Jeffrey A. Rosenthal (admitted *pro hac vice*)
        Lisa M. Schweitzer (admitted *pro hac vice*)
        One Liberty Plaza
        New York, New York 10006
        Telephone:  (212) 225-2000
        Facsimile:  (212) 225-3999

          - and -

        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

        Derek C. Abbott (No. 3376)
        Eric D. Schwartz (No. 3134)
        Ann C. Cordo (No. 4817)
        1201 North Market Street
        P.O. Box 1347
        Wilmington, Delaware 19801
        Telephone: (302) 658-9200
        Facsimile: (302) 658-3989

        *Counsel for the Debtors*
        *and Debtors in Possession*

        *Counsel for the Debtors*
        *and Debtors in Possession*

# SCHEDULE A

Format for Production: Production: will be provided by loading each production into the Merrill Lextranet database with the following objectively coded metadata, if reasonably possible, and in the following form:

| Item | Field | Field Type | Description | Format |
|---|---|---|---|---|
| **Document Numbering** | *Docid* | Note Text | Unique document ID number (alpha prefix followed by sequential numbering) | AA0000001 |
| | *Parentid* | Note Text | Docid for the parent e-mail or document that has an attachment associated with it | AA0000001 |
| | *Attchids* | Note Text | Docid(s) attached to Parentid | AA0000001 |
| **Fields/Coded Data for E-mails** | *Datesent* | Date | Used to identify the date that an e-mail was sent | MM/DD/YYYY As per metadata |
| | *Timesent* | Time | Time e-mail was sent | As per metadata (HH:MM:SS) |
| | *Timercvd* | Time | Time e-mail was received | As per metadata (HH:MM:SS) |
| | *To* | Multi-Entry | Name/e-mail address of the address(es) of individuals who received the e-mail | As per metadata |
| | *From* | Note Text | Name/e-mail address of the person who sent the e-mail | As per metadata |
| | *Subject* | Note Text | Contents of the subject field in the e-mail | As per metadata |
| | *Cc* | Multi-Entry | Names/e-mail address(es) of the individuals who were copied on the e-mail | As per metadata |
| | *Bcc* | Multi-Entry | Names/e-mail address(es) of the individuals who were blind-copied on the e-mail | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment<br>When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc<br>This field is required for loading electronic documents and attachments | As per metadata |
| **Fields/Coded Data for Attachments and Loose Electronic Documents** | *Datesvd* | Date | Date an electronic file or attachment was last saved | As per metadata |
| | *Datecrtd* | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
| | *Filetype* | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | *Filename* | Note Text | File name of electronic file or attachment | As per metadata |
| | *Doclink* | Note Text | Used to link a document to the database record<br>Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | *Folder* | Note Text | Original folder containing path of electronic document as provided | As per metadata |
| | *Custodian* | Note Text | Person from whom document was collected | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment<br>When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc<br>This field is required for loading electronic documents and attachments. | As per metadata |

| Item | Field | Field Type | Description | Format |
|---|---|---|---|---|
| **Fields/Coded Data for Paper Documents** | *Docdate* | Date | Date of document (subjectively coded) | MM/DD/YYYY |
| | *CollectDate* | Date | Creation Date of Electronic File | MM/DD/YYYY |
| | *Source* | Note Text | Location or person from whom document was collected (subjectively coded) | |
| | *Attach#* | Note Text | Sequential number applied to attachments showing attachment sequence | .001, .002, etc. |
| | *Author* | Multi-Entry | Author(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| | *Recip* | Multi-Entry | Recipient(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| **Fields/Coded Data for Electronic Documents (Chronological Review)** | *Leaddate* | Date | Date of the parent document, populated to all attachments for use with chronological sorting while keeping document families together | MM/DD/YYYY |
| | *Leadtime* | Date | Time of the parent document, populated to all attachments for use with chronological sorting while keeping document families together. Allows for further sorting of documents dated the same day by time | HH:MM:SS |

1. Each document shall be individually produced with a unique document ID number.

2. For each document, You shall provide a text file containing the text extracted directly from the native electronic version of that document, unless the document was redacted, is an image file, is a scanned hardcopy document, or is in another format from which text cannot be reasonably extracted. In these instances, provide a text file created using document-level optical character recognition (OCR) to the extent reasonably practicable.

3. All images will be single page tiff format (excluding spreadsheets, Powerpoint presentations, and database files which will be provided in native format) with 300 dpi specifications to the extent practicable. Native format files to be provided in the eDocs folder.

4. You will provide the following load files formatted as follows:

    (a) Image folder (single page tiff, 300 dpi);

    (b) eDocs folder (for native files);

    (c) OCR folder (with text files and a control list for loading);

    (d) data.txt or data.csv (with coded fields listed above for ESI and paper documentation); and

    (e) imginfo.txt or imginfo.csv or other formats at the request of the receiving party to the extent practicable.

13

5. If a document and its exact duplicates are associated with the same custodian, the responding party may withhold the exact duplicates from production. If a document and its exact duplicates are associated with different custodians, the responding party may withhold the exact duplicates from production and provide a metadata field for the produced document indicating the custodians for whom duplicates were withheld where practicable.

6. While You shall attempt in good faith to comply with all of the above, You shall produce documents and comply with the above to the extent practicable.