16. Paragraphs A16–A56 provide guidance on recognizing operating leases and intangible assets. Paragraphs 23–30 specify the types of identifiable assets and liabilities that include items for which this Statement provides limited exceptions to the recognition principle and conditions in paragraphs 12–14.

## *Classifying or Designating Identifiable Assets Acquired and Liabilities Assumed in a Business Combination*

**17. At the acquisition date, the acquirer shall classify or designate the identifiable assets acquired and liabilities assumed as necessary to subsequently apply other GAAP. The acquirer shall make those classifications or designations on the basis of the contractual terms, economic conditions, its operating or accounting policies, and other pertinent conditions as they exist at the acquisition date.**

18. In some situations, GAAP provides for different accounting depending on how an entity classifies or designates a particular asset or liability. Examples of classifications or designations that the acquirer shall make on the basis of the pertinent conditions as they exist at the acquisition date include but are not limited to:

   a. Classification of particular investments in securities as trading, available for sale, or held to maturity in accordance with FASB Statement No. 115, *Accounting for Certain Investments in Debt and Equity Securities*
   b. Designation of a derivative instrument as a hedging instrument in accordance with FASB Statement No. 133, *Accounting for Derivative Instruments and Hedging Activities*
   c. Assessment of whether an embedded derivative should be separated from the host contract in accordance with Statement 133 (which is a matter of *classification* as this Statement uses that term).

19. This Statement provides two exceptions to the principle in paragraph 17:

   a. Classification of a lease contract as either an operating lease or a capital lease in accordance with FASB Statement No. 13, *Accounting for Leases,* as interpreted by FASB Interpretation No. 21, *Accounting for Leases in a Business Combination*
   b. Classification of a contract written by an entity that is in the scope of FASB Statement No. 60, *Accounting and Reporting by Insurance Enterprises,* as amended by this Statement, as an insurance or reinsurance contract or a deposit contract.

6

The acquirer shall classify those contracts on the basis of the contractual terms and other factors at the inception of the contract (or, if the terms of the contract have been modified in a manner that would change its classification, at the date of that modification, which might be the acquisition date).

## Measurement Principle

20. **The acquirer shall measure the identifiable assets acquired, the liabilities assumed, and any noncontrolling interest in the acquiree at their acquisition-date fair values.**

21. Paragraphs A57–A61 provide guidance on measuring the fair values of particular identifiable assets and a noncontrolling interest in an acquiree.

## Exceptions to the Recognition or Measurement Principles

22. This Statement provides limited exceptions to its recognition and measurement principles. Paragraphs 23–33 specify the types of identifiable assets and liabilities that include items for which this Statement provides limited exceptions. The acquirer shall apply the specified GAAP or the specified requirements rather than the recognition and measurement principles in paragraphs 12 and 20 to determine when to recognize or how to measure the assets or liabilities identified in paragraphs 23–33. That will result in some items being either:

    a. Recognized either by applying recognition conditions in addition to those in paragraphs 13 and 14 or by applying the requirements of other GAAP, with results that differ from applying the recognition principle and conditions in paragraphs 12–14; or
    b. Measured at an amount other than their acquisition-date fair values.

### *Exception to the Recognition Principle*

**Assets and liabilities arising from contingencies**

23. FASB Statement No. 5, *Accounting for Contingencies,* defines a *contingency* as an existing condition, situation, or set of circumstances involving uncertainty as to possible gain or loss to an entity that will ultimately be resolved when one or more future events occur or fail to occur.

7

24. The guidance in Statement 5 **does not apply** in determining which assets or liabilities arising from contingencies to recognize as of the acquisition date. Instead:

  a. The acquirer shall recognize as of the acquisition date all of the assets acquired and liabilities assumed that arise from contingencies related to contracts (referred to as *contractual contingencies*), measured at their acquisition-date fair values.
  b. For all other contingencies (referred to as *noncontractual contingencies*), the acquirer shall assess whether it is **more likely than not** as of the acquisition date that the contingency gives rise to an asset or a liability as defined in Concepts Statement 6. If that criterion is met as of the acquisition date, the asset or liability arising from a noncontractual contingency shall be recognized at that date, measured at its acquisition-date fair value. If that criterion is not met as of the acquisition date, the acquirer shall not recognize an asset or a liability at that date. The acquirer shall instead account for a noncontractual contingency that does not meet the more-likely-than-not criterion as of the acquisition date in accordance with other GAAP, including Statement 5, as appropriate. Paragraphs A62–A65 illustrate the application of the more-likely-than-not criterion.

25. In some situations, determining whether a contingency is contractual or noncontractual may require the exercise of judgment based on the facts and circumstances of the specific situation. Paragraphs 62 and 63 provide guidance on the subsequent accounting for assets and liabilities arising from contingencies that would be in the scope of Statement 5 if not acquired or assumed in a business combination.

## *Exceptions to Both the Recognition and Measurement Principles*

### Income taxes

26. The acquirer shall recognize and measure a deferred tax asset or liability arising from the assets acquired and liabilities assumed in a business combination in accordance with FASB Statement No. 109, *Accounting for Income Taxes,* as amended by this Statement.

27. The acquirer shall account for the potential tax effects of temporary differences, carryforwards, and any income tax uncertainties of an acquiree that exist at the acquisition date or that arise as a result of the acquisition in accordance with Statement 109, as amended, and related interpretative guidance, including FASB Interpretation No. 48, *Accounting for Uncertainty in Income Taxes.*

8

**Employee benefits**

28. The acquirer shall recognize and measure a liability (or asset, if any) related to the acquiree's employee benefit arrangements in accordance with other GAAP, as amended by this Statement. For example, employee benefits in the scope of the following standards would be recognized and measured in accordance with those standards:

   a. APB Opinion No. 12, *Omnibus Opinion—1967* (deferred compensation contracts)
   b. FASB Statement No. 43, *Accounting for Compensated Absences*
   c. FASB Statement No. 87, *Employers' Accounting for Pensions*
   d. FASB Statement No. 88, *Employers' Accounting for Settlements and Curtailments of Defined Benefit Pension Plans and for Termination Benefits*
   e. FASB Statement No. 106, *Employers' Accounting for Postretirement Benefits Other Than Pensions*
   f. FASB Statement No. 112, *Employers' Accounting for Postemployment Benefits*
   g. FASB Statement No. 146, *Accounting for Costs Associated with Exit or Disposal Activities* (one-time termination benefits)
   h. FASB Statement No. 158, *Employers' Accounting for Defined Benefit Pension and Other Postretirement Plans.*

**Indemnification assets**

29. The seller in a business combination may contractually indemnify the acquirer for the outcome of a contingency or uncertainty related to all or part of a specific asset or liability. For example, the seller may indemnify the acquirer against losses above a specified amount on a liability arising from a particular contingency; in other words, the seller will guarantee that the acquirer's liability will not exceed a specified amount. As a result, the acquirer obtains an indemnification asset. The acquirer shall recognize an indemnification asset at the same time that it recognizes the indemnified item, measured on the same basis as the indemnified item, subject to the need for a valuation allowance for uncollectible amounts. Therefore, if the indemnification relates to an asset or a liability that is recognized at the acquisition date and measured at its acquisition-date fair value, the acquirer shall recognize the indemnification asset at the acquisition date measured at its acquisition-date fair value. For an indemnification asset measured at fair value, the effects of uncertainty about future cash flows because of collectibility considerations are included in the fair value measure and a separate valuation allowance is not necessary (paragraph A57).

30. In some circumstances, the indemnification may relate to an asset or a liability that is an exception to the recognition or measurement principles. For example, an

9

indemnification may relate to a noncontractual contingency that is not recognized at the acquisition date because it does not satisfy the more-likely-than-not criterion at that date. Alternatively, an indemnification may relate to an asset or a liability, for example, one that results from an uncertain tax position that is measured on a basis other than acquisition-date fair value (paragraphs 26 and 27). In those circumstances, the indemnification asset shall be recognized and measured using assumptions consistent with those used to measure the indemnified item, subject to management's assessment of the collectibility of the indemnification asset and any contractual limitations on the indemnified amount. Paragraph 64 provides guidance on the subsequent accounting for an indemnification asset.

## *Exceptions to the Measurement Principle*

### Reacquired rights

31. The acquirer shall measure the value of a reacquired right recognized as an intangible asset in accordance with paragraph A23 on the basis of the remaining contractual term of the related contract regardless of whether market participants would consider potential contractual renewals in determining its fair value. Paragraphs A23 and A24 provide additional recognition guidance. Paragraph 61 provides guidance on the subsequent accounting for reacquired rights.

### Share-based payment awards

32. The acquirer shall measure a liability or an equity instrument related to the replacement of an acquiree's share-based payment awards with share-based payment awards of the acquirer in accordance with the method in FASB Statement No. 123 (revised 2004), *Share-Based Payment.* (This Statement refers to the result of that method as the *fair-value-based measure* of the award.) Paragraphs 43–46 and A91–A106 provide additional guidance.

### Assets held for sale

33. The acquirer shall measure an acquired long-lived asset (or disposal group) that is classified as held for sale at the acquisition date in accordance with FASB Statement No. 144, *Accounting for the Impairment or Disposal of Long-Lived Assets,* at fair value less cost to sell in accordance with paragraphs 34 and 35 of that Statement.

10

# Appendix A

# IMPLEMENTATION GUIDANCE

# CONTENTS

|  | Paragraph Numbers |
|---|---|
| Introduction | A1 |
| Identifying a Business Combination (Application of Paragraph 4) | A2–A3 |
| Definition of a Business (Application of Paragraph 4) | A4–A9 |
| Identifying the Acquirer (Application of Paragraphs 8 and 9) | A10–A15 |
| Recognizing Particular Assets Acquired and Liabilities Assumed (Application of Paragraphs 12–15) | A16–A56 |
|   Operating Leases | A16–A18 |
|   Recognition of Intangible Assets Separately from Goodwill | A19–A56 |
|     Reacquired Rights | A23–A24 |
|     Assembled Workforce and Other Items That Are Not Identifiable | A25–A28 |
|   Examples of Intangible Assets That Are Identifiable | A29–A56 |
|     Marketing-Related Intangible Assets | A31–A35 |
|       Trademarks, Trade Names, Service Marks, Collective Marks, Certification Marks | A32–A34 |
|       Internet Domain Names | A35 |
|     Customer-Related Intangible Assets | A36–A43 |
|       Customer Lists | A37 |
|       Order or Production Backlog | A38 |
|       Customer Contracts and the Related Customer Relationships | A39–A41 |
|       Noncontractual Customer Relationships | A42 |
|       Examples Illustrating Customer Contract and Customer Relationship Intangible Assets Acquired in a Business Combination | A43 |
|     Artistic-Related Intangible Assets | A44–A45 |
|     Contract-Based Intangible Assets | A46–A50 |
|       Servicing Contracts Such as Mortgage Servicing Contracts | A47–A48 |
|       Employment Contracts | A49 |
|       Use Rights | A50 |

|  | Paragraph Numbers |
|---|---|
| Technology-Based Intangible Assets | A51–A56 |
|    Computer Software and Mask Works | A52–A53 |
|    Databases, including Title Plants | A54–A55 |
|    Trade Secrets Such as Secret Formulas, Processes, Recipes | A56 |
| Measuring the Fair Values of Particular Identifiable Assets and a Noncontrolling Interest in an Acquiree (Application of Paragraph 20) | A57–A61 |
|   Assets with Uncertain Cash Flows (Valuation Allowances) | A57 |
|   Assets Subject to Operating Leases in Which the Acquiree Is the Lessor | A58 |
|   Assets That the Acquirer Intends Not to Use or to Use in a Way Other Than Their Highest and Best Use | A59 |
|   Measuring the Fair Value of a Noncontrolling Interest in an Acquiree | A60–A61 |
| Recognizing Assets and Liabilities Arising from Contingencies (Application of Paragraph 24) | A62–A65 |
|   Example 1: A Liability Arising from a Noncontractual Contingency | A64–A65 |
| Measuring Goodwill or a Gain from a Bargain Purchase | A66–A72 |
|   Measuring the Acquisition-Date Fair Value of the Acquirer's Interest in the Acquiree Using Valuation Techniques (Application of Paragraphs 34–38) | A66 |
|   Special Considerations in Applying the Acquisition Method to Combinations of Mutual Entities (Application of Paragraph 35) | A67–A69 |
|   Bargain Purchases (Application of Paragraphs 36–38) | A70–A72 |
|     Example 2: A Business Combination in Which the Consideration Transferred for Less Than 100 Percent of the Equity Interests in the Acquiree Is Less Than the Fair Value Received | A71–A72 |
| Measurement Period (Application of Paragraphs 51–56 and 72(a)) | A73–A76 |
|   Example 3: Appraisal That Is Incomplete at the Reporting Date | A74–A76 |
| Determining What Is Part of the Business Combination Transaction (Application of Paragraphs 57 and 58) | A77–A106 |
|   Effective Settlement of a Preexisting Relationship between the Acquirer and Acquiree in a Business Combination (Application of Paragraph 58(a)) | A78–A85 |
|     Example 4: Effective Settlement of a Supply Contract as a Result of a Business Combination | A82–A84 |
|     Example 5: Effective Settlement of a Contract between the Acquirer and Acquiree in Which the Acquirer Had Recognized a Liability before the Business Combination | A85 |

|  | Paragraph Numbers |
|---|---|
| Arrangements for Contingent Payments to Employees or Selling Shareholders (Application of Paragraph 58(b)) | A86–A90 |
| Example 6: Arrangement for Contingent Payment to an Employee | A88–A90 |
| Acquirer Share-Based Payment Awards Exchanged for Awards Held by the Employees of the Acquiree (Application of Paragraphs 43–46) | A91–A106 |
| Accounting for the Income Tax Effects of Replacement Awards Classified as Equity Issued in a Nontaxable Business Combination | A97–A100 |
| Example 7: Acquirer Replacement Awards That Require No Postcombination Services Exchanged for Acquiree Awards for Which Employees Have Rendered the Required Services as of the Acquisition Date | A101–A102 |
| Example 8: Acquirer Replacement Awards That Require Postcombination Services Exchanged for Acquiree Awards for Which Employees Have Rendered the Requisite Service as of the Acquisition Date | A103 |
| Example 9: Acquirer Replacement Awards That Require Postcombination Services Exchanged for Acquiree Awards for Which Employees Have Not Rendered All of the Requisite Service as of the Acquisition Date | A104–A105 |
| Example 10: Acquirer Replacement Awards for Which No Postcombination Services Are Required Exchanged for Acquiree Awards for Which Employees Have Not Rendered All of the Requisite Service as of the Acquisition Date | A106 |
| Illustration of Disclosure Requirements (Application of Paragraphs 67–73) | A107 |
| Reverse Acquisitions (Application of Paragraph A12) | A108–A129 |
| Measuring the Consideration Transferred | A109 |
| Preparation and Presentation of Consolidated Financial Statements | A110–A111 |
| Noncontrolling Interest | A112–A113 |
| Earnings per Share | A114–A116 |
| Example 11: Reverse Acquisition | A117–A129 |
| Calculating the Fair Value of the Consideration Transferred | A120 |
| Measuring Goodwill | A121–A123 |
| Consolidated Statement of Financial Position at September 30, 20X6 | A122–A123 |

|  | Paragraph Numbers |
|---|---|
| Earnings per Share | A124–A125 |
| Noncontrolling Interest | A126–A129 |
| Transition for Mutual Entities (Application of Paragraph 76) | A130–A134 |
|    Transition for Mutual Entities That Had Purchase Business Combinations Accounted for in Accordance with Opinion 16 or Statement 72 | A132–A134 |

# Appendix A

# IMPLEMENTATION GUIDANCE

*This appendix is an integral part of this Statement.*

## Introduction

A1. This appendix discusses generalized situations and provides examples that incorporate simplified assumptions to illustrate how to apply some of the provisions of this Statement.

## Identifying a Business Combination (Application of Paragraph 4)

A2. This Statement defines a business combination as a transaction or other event in which an acquirer obtains control of one or more businesses. An acquirer might obtain control of an acquiree in a variety of ways such as:

   a. By transferring cash, cash equivalents, or other assets (including net assets that constitute a business)
   b. By incurring liabilities
   c. By issuing equity interests
   d. By providing more than one type of consideration
   e. Without transferring consideration, including by contract alone (paragraph 49).

A3. A business combination may be structured in a variety of ways for legal, taxation, or other reasons, which include but are not limited to:

   a. One or more businesses become subsidiaries of an acquirer or the net assets of one or more businesses are legally merged into the acquirer.
   b. One combining entity transfers its net assets or its owners transfer their equity interests to another combining entity or its owners.
   c. All of the combining entities transfer their net assets or the owners of those entities transfer their equity interests to a newly formed entity (sometimes referred to as a roll-up or put-together transaction).

33

d.  A group of former owners of one of the combining entities obtains control of the combined entity.

## Definition of a Business (Application of Paragraph 4)

A4. This Statement defines a business as an integrated set of activities and assets that is capable of being conducted and managed for the purpose of providing a return in the form of dividends, lower costs, or other economic benefits directly to investors or other owners, members, or participants. A business consists of inputs and processes applied to those inputs that have the ability to create outputs. Although businesses usually have outputs, outputs are not required for an integrated set to qualify as a business. The three elements of a business are defined as follows:

a.  *Input:* Any economic resource that creates, or has the ability to create, outputs when one or more processes are applied to it. Examples include long-lived assets (including intangible assets or rights to use long-lived assets), intellectual property, the ability to obtain access to necessary materials or rights, and employees.
b.  *Process:* Any system, standard, protocol, convention, or rule that when applied to an input or inputs, creates or has the ability to create outputs. Examples include strategic management processes, operational processes, and resource management processes. These processes typically are documented, but an organized workforce having the necessary skills and experience following rules and conventions may provide the necessary processes that are capable of being applied to inputs to create outputs. (Accounting, billing, payroll, and other administrative systems typically are not processes used to create outputs.)
c.  *Output:* The result of inputs and processes applied to those inputs that provide or have the ability to provide a return in the form of dividends, lower costs, or other economic benefits directly to investors or other owners, members, or participants.

A5. To be capable of being conducted and managed for the purposes defined, an integrated set of activities and assets requires two essential elements—inputs and processes applied to those inputs, which together are or will be used to create outputs. However, a business need not include all of the inputs or processes that the seller used in operating that business if market participants are capable of acquiring the business and continuing to produce outputs, for example, by integrating the business with their

34

own inputs and processes. FASB Statement No. 157, *Fair Value Measurements,* describes *market participants* as:

> . . . buyers and sellers in the principal (or most advantageous) market for the asset or liability that are:
>
> a. Independent of the reporting entity; that is, they are not related parties
> b. Knowledgeable, having a reasonable understanding about the asset or liability and the transaction based on all available information, including information that might be obtained through due diligence efforts that are usual and customary
> c. Able to transact for the asset or liability
> d. Willing to transact for the asset or liability; that is, they are motivated but not forced or otherwise compelled to do so. [Paragraph 10; footnote reference omitted.]

A6. The nature of the elements of a business varies by industry and by the structure of an entity's operations (activities), including the entity's stage of development. Established businesses often have many different types of inputs, processes, and outputs, whereas new businesses often have few inputs and processes and sometimes only a single output (product). Nearly all businesses also have liabilities, but a business need not have liabilities.

A7. An integrated set of activities and assets in the development stage might not have outputs. If not, the acquirer should consider other factors to determine whether the set is a business. Those factors include, but are not limited to, whether the set:

a. Has begun planned principal activities
b. Has employees, intellectual property, and other inputs and processes that could be applied to those inputs
c. Is pursuing a plan to produce outputs
d. Will be able to obtain access to customers that will purchase the outputs.

Not all of those factors need to be present for a particular integrated set of activities and assets in the development stage to qualify as a business.

A8. Determining whether a particular set of assets and activities is a business should be based on whether the integrated set is capable of being conducted and managed as a business by a market participant. Thus, in evaluating whether a particular set is a

35

business, it is not relevant whether a seller operated the set as a business or whether the acquirer intends to operate the set as a business.

A9. In the absence of evidence to the contrary, a particular set of assets and activities in which goodwill is present shall be presumed to be a business. However, a business need not have goodwill.

## Identifying the Acquirer (Application of Paragraphs 8 and 9)

A10. The guidance in ARB No. 51, *Consolidated Financial Statements,* as amended, shall be used to identify the acquirer—the entity that obtains control of the acquiree. If a business combination has occurred but applying the guidance in ARB 51 does not clearly indicate which of the combining entities is the acquirer, the factors in paragraphs A11–A15 shall be considered in making that determination. However, in a business combination in which a variable interest entity is acquired, the primary beneficiary of that entity always is the acquirer. The determination of which party, if any, is the primary beneficiary of a variable interest entity shall be made in accordance with FASB Interpretation No. 46 (revised December 2003), *Consolidation of Variable Interest Entities,* as amended, not by applying either the guidance in ARB 51 or that in paragraphs A11–A15.

A11. In a business combination effected primarily by transferring cash or other assets or by incurring liabilities, the acquirer usually is the entity that transfers the cash or other assets or incurs the liabilities.

A12. In a business combination effected primarily by exchanging equity interests, the acquirer usually is the entity that issues its equity interests. However, in some business combinations, commonly called *reverse acquisitions,* the issuing entity is the acquiree. Paragraphs A108–A129 provide guidance on accounting for reverse acquisitions. Other pertinent facts and circumstances also shall be considered in identifying the acquirer in a business combination effected by exchanging equity interests, including:

  a. *The relative voting rights in the combined entity after the business combination—* The acquirer usually is the combining entity whose owners as a group retain or receive the largest portion of the voting rights in the combined entity. In determining which group of owners retains or receives the largest portion of the voting rights, an entity shall consider the existence of any unusual or special voting arrangements and options, warrants, or convertible securities.
  b. *The existence of a large minority voting interest in the combined entity if no other owner or organized group of owners has a significant voting interest—*The

36

      acquirer usually is the combining entity whose single owner or organized group of owners holds the largest minority voting interest in the combined entity.
  c. *The composition of the governing body of the combined entity*—The acquirer usually is the combining entity whose owners have the ability to elect or appoint or to remove a majority of the members of the governing body of the combined entity.
  d. *The composition of the senior management of the combined entity*—The acquirer usually is the combining entity whose former management dominates the management of the combined entity.
  e. *The terms of the exchange of equity interests*—The acquirer usually is the combining entity that pays a premium over the precombination fair value of the equity interests of the other combining entity or entities.

A13. The acquirer usually is the combining entity whose relative size (measured in, for example, assets, revenues, or earnings), is significantly larger than that of the other combining entity or entities.

A14. In a business combination involving more than two entities, determining the acquirer shall include a consideration of, among other things, which of the combining entities initiated the combination, as well as the relative size of the combining entities (paragraph A13).

A15. A new entity formed to effect a business combination is not necessarily the acquirer. If a new entity is formed to issue equity interests to effect a business combination, one of the combining entities that existed before the business combination shall be identified as the acquirer by applying the guidance in paragraphs A10–A14. In contrast, a new entity that transfers cash or other assets or incurs liabilities as consideration may be the acquirer.

# Recognizing Particular Assets Acquired and Liabilities Assumed (Application of Paragraphs 12–15)

## Operating Leases

A16. The acquirer shall recognize no assets or liabilities related to an operating lease in which the acquiree is the lessee except as required by paragraphs A17 and A18.

A17. Regardless of whether the acquiree is the lessee or the lessor, the acquirer shall determine whether the terms of each of an acquiree's operating leases are favorable or

unfavorable compared with the market terms of leases of the same or similar items at the acquisition date. The acquirer shall recognize an intangible asset if the terms of an operating lease are favorable relative to market terms and a liability if the terms are unfavorable relative to market terms.

A18. An identifiable intangible asset may be associated with an operating lease, which may be evidenced by market participants' willingness to pay a price for the lease even if it is at market terms. For example, a lease of gates at an airport or of retail space in a prime shopping area might provide entry into a market or other future economic benefits that qualify as identifiable intangible assets, for example, as a customer relationship. In that situation, the acquirer shall recognize the associated identifiable intangible asset(s) in accordance with paragraph A19.

## Recognition of Intangible Assets Separately from Goodwill

A19. The acquirer shall recognize separately from goodwill the identifiable intangible assets acquired in a business combination. An intangible asset is *identifiable* if it meets either the separability criterion or the contractual-legal criterion described in paragraph 3(k).

A20. An intangible asset that meets the contractual-legal criterion is identifiable even if the asset is not transferable or separable from the acquiree or from other rights and obligations. For example:

  a. An acquiree leases a manufacturing facility under an operating lease that has terms that are favorable relative to market terms. The lease terms explicitly prohibit transfer of the lease (through either sale or sublease). The amount by which the lease terms are favorable compared with the pricing of current market transactions for the same or similar items is an intangible asset that meets the contractual-legal criterion for recognition separately from goodwill, even though the acquirer cannot sell or otherwise transfer the lease contract. (See also paragraphs A17 and A18.)
  b. An acquiree owns and operates a nuclear power plant. The license to operate that power plant is an intangible asset that meets the contractual-legal criterion for recognition separately from goodwill, even if the acquirer cannot sell or transfer it separately from the acquired power plant. An acquirer may recognize the fair value of the operating license and the fair value of the power plant as a single asset for financial reporting purposes if the useful lives of those assets are similar.
  c. An acquiree owns a technology patent. It has licensed that patent to others for their exclusive use outside the domestic market, receiving a specified percentage

38

of future foreign revenue in exchange. Both the technology patent and the related license agreement meet the contractual-legal criterion for recognition separately from goodwill even if selling or exchanging the patent and the related license agreement separately from one another would not be practical.

A21. The separability criterion means that an acquired intangible asset is capable of being separated or divided from the acquiree and sold, transferred, licensed, rented, or exchanged, either individually or together with a related contract, identifiable asset, or liability. An intangible asset that the acquirer would be able to sell, license, or otherwise exchange for something else of value meets the separability criterion even if the acquirer does not intend to sell, license, or otherwise exchange it. An acquired intangible asset meets the separability criterion if there is evidence of exchange transactions for that type of asset or an asset of a similar type, even if those transactions are infrequent and regardless of whether the acquirer is involved in them. For example, customer and subscriber lists are frequently licensed and thus meet the separability criterion. Even if an acquiree believes its customer lists have characteristics different from other customer lists, the fact that customer lists are frequently licensed generally means that the acquired customer list meets the separability criterion. However, a customer list acquired in a business combination would not meet the separability criterion if the terms of confidentiality or other agreements prohibit an entity from selling, leasing, or otherwise exchanging information about its customers.

A22. An intangible asset that is not individually separable from the acquiree or combined entity meets the separability criterion if it is separable in combination with a related contract, identifiable asset, or liability. For example:

a. Market participants exchange deposit liabilities and related depositor relationship intangible assets in observable exchange transactions. Therefore, the acquirer should recognize the depositor relationship intangible asset separately from goodwill.
b. An acquiree owns a registered trademark and documented but unpatented technical expertise used to manufacture the trademarked product. To transfer ownership of a trademark, the owner is also required to transfer everything else necessary for the new owner to produce a product or service indistinguishable from that produced by the former owner. Because the unpatented technical expertise must be separated from the acquiree or combined entity and sold if the related trademark is sold, it meets the separability criterion.

39

*Reacquired Rights*

A23. As part of a business combination, an acquirer may reacquire a right that it had previously granted to the acquiree to use one or more of the acquirer's recognized or unrecognized assets. Examples of such rights include a right to use the acquirer's trade name under a franchise agreement or a right to use the acquirer's technology under a technology licensing agreement. A reacquired right is an identifiable intangible asset that the acquirer recognizes separately from goodwill. Paragraph 31 provides guidance on measuring a required right, and paragraph 61 provides guidance on the subsequent accounting for a reacquired right.

A24. If the terms of the contract giving rise to a reacquired right are favorable or unfavorable relative to the terms of current market transactions for the same or similar items, the acquirer shall recognize a settlement gain or loss. Paragraph A79 provides guidance for measuring that settlement gain or loss.

*Assembled Workforce and Other Items That Are Not Identifiable*

A25. The acquirer subsumes into goodwill the value of an acquired intangible asset that is not identifiable as of the acquisition date. For example, an acquirer may attribute value to the existence of an assembled workforce, which is an existing collection of employees that permits the acquirer to continue to operate an acquired business from the acquisition date. An assembled workforce does not represent the intellectual capital of the skilled workforce—the (often specialized) knowledge and experience that employees of an acquiree bring to their jobs. Because the assembled workforce is not an identifiable asset to be recognized separately from goodwill, any value attributed to it is subsumed into goodwill.

A26. The acquirer also subsumes into goodwill any value attributed to items that do not qualify as assets at the acquisition date. For example, the acquirer might attribute value to potential contracts the acquiree is negotiating with prospective new customers at the acquisition date. Because those potential contracts are not themselves assets at the acquisition date, the acquirer does not recognize them separately from goodwill. The acquirer should not subsequently reclassify the value of those contracts from goodwill for events that occur after the acquisition date. However, the acquirer should assess the facts and circumstances surrounding events occurring shortly after the acquisition to determine whether a separately recognizable intangible asset existed at the acquisition date.

A27. After initial recognition, an acquirer accounts for intangible assets acquired in a business combination in accordance with the provisions of FASB Statements No. 142, *Goodwill and Other Intangible Assets,* and No. 144, *Accounting for the Impairment or Disposal of Long-Lived Assets.* However, as described in paragraph 8 of Statement 142, the accounting for some acquired intangible assets after initial recognition is prescribed by other Statements.

A28. The identifiability criteria determine whether an intangible asset is recognized separately from goodwill. However, the criteria neither provide guidance for measuring the fair value of an intangible asset nor restrict the assumptions used in estimating the fair value of an intangible asset. For example, the acquirer would take into account assumptions that market participants would consider, such as expectations of future contract renewals, in measuring fair value. It is not necessary for the renewals themselves to meet the identifiability criteria. (However, see paragraph 31, which establishes an exception to the fair value measurement principle for reacquired rights recognized in a business combination.) EITF Issue No. 02-7, "Unit of Accounting for Testing Impairment of Indefinite-Lived Intangible Assets," provides guidance for determining whether indefinite-lived intangible assets should be combined into a single unit of account to test for impairment if they are operated as a single asset and essentially are inseparable from one another.

## Examples of Intangible Assets That Are Identifiable

A29. The following are examples of identifiable intangible assets acquired in a business combination. Some of the examples may have characteristics of assets other than intangible assets. The acquirer should account for those assets in accordance with their substance. The examples are not intended to be all-inclusive.

A30. Intangible assets designated with the symbol # are those that arise from contractual or other legal rights. Those designated with the symbol * do not arise from contractual or other legal rights but are separable. Intangible assets designated with the symbol # might also be separable, but separability is not a necessary condition for an asset to meet the contractual-legal criterion.

### *Marketing-Related Intangible Assets*

A31. Marketing-related intangible assets are primarily used in the marketing or promotion of products or services. Examples of marketing-related intangible assets are:

   a. Trademarks, trade names, service marks, collective marks, certification marks #
   b. Trade dress (unique color, shape, package design) #

41

  c. Newspaper mastheads #
  d. Internet domain names #
  e. Noncompetition agreements. #

**Trademarks, trade names, service marks, collective marks, certification marks #**

A32. Trademarks are words, names, symbols, or other devices used in trade to indicate the source of a product and to distinguish it from the products of others. A service mark identifies and distinguishes the source of a service rather than a product. Collective marks identify the goods or services of members of a group. Certification marks certify the geographical origin or other characteristics of a good or service.

A33. Trademarks, trade names, service marks, collective marks, and certification marks may be protected legally through registration with governmental agencies, continuous use in commerce, or by other means. If it is protected legally through registration or other means, a trademark or other mark acquired in a business combination is an intangible asset that meets the contractual-legal criterion. Otherwise, a trademark or other mark acquired in a business combination can be recognized separately from goodwill if the separability criterion is met, which normally it would be.

A34. The terms *brand* and *brand name,* often used as synonyms for trademarks and other marks, are general marketing terms that typically refer to a group of complementary assets such as a trademark (or service mark) and its related trade name, formulas, recipes, and technological expertise. This Statement does not preclude an entity from recognizing, as a single asset separately from goodwill, a group of complementary intangible assets commonly referred to as a brand if the assets that make up that group have similar useful lives.

**Internet domain names #**

A35. An Internet domain name is a unique alphanumeric name that is used to identify a particular numeric Internet address. Registration of a domain name creates an association between that name and a designated computer on the Internet for the period of the registration. Those registrations are renewable. A registered domain name acquired in a business combination meets the contractual-legal criterion.

*Customer-Related Intangible Assets*

A36. Examples of customer-related intangible assets are:

  a. Customer lists *
  b. Order or production backlog #

42

    c. Customer contracts and related customer relationships #
    d. Noncontractual customer relationships. *

## Customer lists *

A37. A customer list consists of information about customers, such as their names and contact information. A customer list also may be in the form of a database that includes other information about the customers, such as their order histories and demographic information. A customer list generally does not arise from contractual or other legal rights. However, customer lists are frequently leased or exchanged. Therefore, a customer list acquired in a business combination normally meets the separability criterion.

## Order or production backlog #

A38. An order or production backlog arises from contracts such as purchase or sales orders. An order or production backlog acquired in a business combination meets the contractual-legal criterion even if the purchase or sales orders are cancelable.

## Customer contracts and the related customer relationships #

A39. If an entity establishes relationships with its customers through contracts, those customer relationships arise from contractual rights. Therefore, customer contracts and the related customer relationships acquired in a business combination meet the contractual-legal criterion, even if confidentiality or other contractual terms prohibit the sale or transfer of a contract separately from the acquiree.

A40. A customer contract and the related customer relationship may represent two distinct intangible assets. Both the useful lives and the pattern in which the economic benefits of the two assets are consumed may differ.

A41. A customer relationship exists between an entity and its customer if (a) the entity has information about the customer and has regular contact with the customer, and (b) the customer has the ability to make direct contact with the entity. Customer relationships meet the contractual-legal criterion if an entity has a practice of establishing contracts with its customers, regardless of whether a contract exists at the acquisition date. Customer relationships also may arise through means other than contracts, such as through regular contact by sales or service representatives. As noted in paragraph A38, an order or a production backlog arises from contracts such as purchase or sales orders and therefore is considered a contractual right. Consequently,