IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------------ X | : | |
| *In re* | : | Chapter 11 |
| | : | |
| Nortel Networks Inc., *et al.*, | : | Case No. 09-10138 (KG) |
| | : | |
| Debtors.[1] | : | Jointly Administered |
| | : | **Hearing date: September 15, 2014 at 10:00 am (ET)** |
| | : | **RE: D.I. 14076, 14117** |
| | : | |
| ------------------------------------------------------------ X | : | |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF NORTEL NETWORKS, INC. ET AL. IN SUPPORT
OF DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO
BANKRUPTCY RULE 9019 APPROVING SETTLEMENT AGREEMENT BY
AND AMONG NORTEL NETWORKS INC., THE SUPPORTING
BONDHOLDERS, AND THE BANK OF NEW YORK MELLON WITH RESPECT
TO THE NNI POST-PETITION INTEREST DISPUTE AND RELATED ISSUES**

The Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks, Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "US Debtors"), hereby files this statement (the "Statement") in support of the *Debtors' Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 Approving Settlement Agreement By and Among Nortel Networks Inc., the Supporting Bondholders, and the Bank of New York Mellon With Respect to the NNI Post-Petition Interest Dispute and Related Issues* [Docket No. 14076]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation ("NNCC") (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. ("NN CALA") (4226).

RLF1 10668493v.1

(the "9019 Motion").[2] In support of the 9019 Motion, the Committee respectfully states as follows.

## STATEMENT

1. The Committee, which has a statutory duty to all unsecured creditors of the US Debtors, supports approval of the 9019 Motion and believes that the Settlement Agreement is yet another positive step in a series of settlements that are paving the way toward a hoped for global resolution of all issues. The Settlement Agreement should be approved by this Court because it (i) avoids the uncertainty, time, expense and delay attendant to the dispute regarding the entitlement of the holders (the "Bondholders") of certain bonds issued by the Canadian debtors and guaranteed by the US Debtors (the "Crossover Bonds") to, and the proper rate of, postpetition interest (the "PPI Dispute"), (ii) eliminates the likely appellate practice that would result from any decision on the PPI Dispute and (iii) represents a substantial compromise of the Bondholders' entitlement that is the subject of the PPI Dispute, while achieving a number of other benefits to the US estates.

2. In evaluating whether a proposed 9019 settlement is fair, reasonable and in the interests of the estate, the court's role is to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

3. First, as the vigorous arguments with respect to the PPI Dispute demonstrate, the PPI Dispute is a complex matter that has already consumed, and threatens to continue to consume, an enormous amount of time, attention and attendant expense in these cases. While the Committee believes that postpetition interest, in cases in which it accrues, accrues at the contract

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the 9019 Motion.

RLF1 10668493v.1

rate, the Settlement Agreement removes substantial uncertainty that is inherent in the PPI Dispute given that there is no binding precedent on the issue. Further, litigation of the PPI Dispute has side-tracked the parties from efforts to resolve the threshold issue in these cases: the Allocation Dispute. Approval of the Settlement Agreement now will allow the parties to re-focus on potential resolution of the Allocation Dispute.

4. Second, approval of the Settlement Agreement will eliminate likely appellate practice that would follow any decision concerning the PPI Dispute. As set forth in several of the briefs regarding the entitlement of the Bondholders to postpetition interest, there are procedural issues with respect to the Court's consideration of the entitlement to, and proper rate of, postpetition interest outside of a chapter 11 plan process. Rendering a decision in the PPI Dispute before there is a determination that the US Debtors have sufficient funds to pay prepetition, administrative and priority claims in full raises further procedural infirmities. These procedural issues weigh in favor of approval of the Settlement Agreement.

5. Third, in addition to representing a substantial compromise of the Bondholders' entitlements that are the subject of the PPI Dispute, the Settlement Agreement achieves a number of other benefits to the US estates, including (i) providing a positive example of a negotiated resolution of a claim to postpetition interest that will potentially encourage the consensual resolution of the claims of other unsecured creditors to postpetition interest and thereby expedite effectuation of a plan of reorganization and distributions to creditors upon resolution of the Allocation Dispute, (ii) settling and allowing the principal amount of the Bondholders' claims, representing further progress by the US Debtors in reconciling their unsecured claims base and (iii) elimination of the Monitor's stated concern – a concern the Committee believes is at best

misguided – that the continuing accrual of interest provides a disincentive to settling the allocation litigation, through the implementation of a hard cap.

6.  Finally, as the Court recognized at the conclusion of the evidentiary portion of the Allocation Trial, there are wide goalposts between the accrual of postpetition interest at the contract rate and the accrual of postpetition interest at the federal judgment rate. The Settlement Agreement brings one of these goalposts to the middle of the field.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court (a) enter an order approving the Debtors' entry into the Settlement Agreement, (b) deny any objections to the 9019 Motion and (c) grant such other and further relief as the Court deems just, proper and equitable.

*[remainder of page intentionally left blank]*

| | |
|---|---|
| Dated: August 8, 2014<br>      Wilmington, Delaware | Respectfully submitted,<br><br>By: */s/ Amanda R. Steele*<br>    Mark D. Collins (No. 2981)<br>    Christopher M. Samis (No. 4909)<br>    Amanda R. Steele (No. 5530)<br>    Richards, Layton & Finger, P.A.<br>    One Rodney Square<br>    920 North King Street<br>    Wilmington, DE  19801<br>    Telephone:  (302) 651-7700<br><br>    and<br><br>    Fred S. Hodara (*pro hac vice*)<br>    David H. Botter (*pro hac vice*)<br>    Brad M. Kahn (*pro hac vice*)<br>    Akin Gump Strauss Hauer & Feld LLP<br>    One Bryant Park<br>    New York, NY  10036<br>    Telephone:  (212) 872-1000<br>    Co-counsel to the Committee |