IN THE UNITED STATES BANKRUPTCY COURT
                      FOR THE DISTRICT OF DELAWARE

IN RE:                          )     Case No. 09-10138(KG)
                                )     (Jointly Administered)
                                )
NORTEL NETWORKS, et al.,        )     Chapter 11
                                )
                                )     Courtroom 3
                                )     824 Market Street
             Debtors.           )     Wilmington, Delaware
                                )
                                )     August 8, 2014
                                )     12:00 p.m.


                   TRANSCRIPT OF TELEPHONIC PROCEEDINGS
                  BEFORE THE HONORABLE JUDGE KEVIN GROSS
                    UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:
For Debtors:                    Morris Nichols Arsht & Tunnell LLP
                                BY: DEREK ABBOTT, ESQ.
                                BY: ANN CORDO, ESQ.
                                (302) 351-9357

                                Cleary Gottlieb Steen & Hamilton
                                BY: LISA SCHWEITZER, ESQ.
                                (212) 225-2000

ECRO:                           GINGER MACE

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664
                                www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service

TELEPHONIC APPEARANCES:
(Continued)

```
For Official Committee
Of Unsecured Creditors:    Akin Gump Strauss Hauer & Feld
                           BY: FRED HODARA, ESQ.
                           BY: CHRIS SAMIS, ESQ.
                           BY: BRAD KAHN, ESQ.
                           BY: ABID QURESHI, ESQ.
                           BY: ROBERT A. JOHNSON, ESQ.
                           (212) 872-1000

                           Cassels Brock & Blackwell
                           BY: RYAN JACOBS, ESQ.
                           (416) 869-5300

For Canadian Debtors
& Monitor:                 Allen & Overy
                           BY: JOSEPH BADKE-BERKOW, ESQ.
                           BY: KENNETH COLEMAN, ESQ.
                           BY: DANIEL GUYDER, ESQ.
                           BY: BRAD PENSYL, ESQ.
                           BY: JACOB PULTMAN, ESQ.
                           (212) 610-6300

                           Buchanan Ingersoll & Rooney, PC
                           BY: MARY CALOWAY, ESQ.
                           BY: KATHLEEN MURPHY
                           (302) 552-4214

For the Monitor,
Ernst & Young:             Goodmans, LLP
                           BY: JOSEPH PASQUARIELLO, ESQ.
                           (416) 597-4216

For UK Pension
Claimants:                 Bayard, PA
                           BY: JUSTIN R. ALBERTO, ESQ.
                           (302) 429-4226

                           Willkie Farr & Gallagher, LLP
                           BY: BRIAN E. O'CONNOR, ESQ.
                           BY: SAMEER ADVANI, ESQ.
                           (212) 728-8000

For Ad Hoc Bondholder
Group:                     Pachulski Stang Ziehl & Jones
                           BY: PETER KEANE, ESQ.
                           (302) 652-4100
```

TELEPHONIC APPEARANCES:
(Continued)

For Joint
Administrators:                Young Conaway Stargatt & Taylor
                               BY: JAIME CHAPMAN, ESQ.
                               BY: JOHN DORSEY, ESQ.
                               (302) 571-6000

                               Hughes Hubbard & Reed LLP
                               BY: CHARLES HUBERTY, ESQ.
                               (212) 837-6000

For Solus Alternative
Asset Management:              Quinn Emanuel Urquhart & Sullivan
                               BY: JAMES TECCE, ESQ.
                               (212) 849-7000

For Wilmington Trust:          Katten Muchin Rosenman, LLP
                               BY: DAVID CRICHLOW, ESQ.
                               BY: REBECCA KINBURN, ESQ.
                               (212) 940-8800

For CCC:                       DLA Piper, LLP, U.S.
                               BY: SELINDA A. MELNIK, ESQ.
                               BY: TIMOTHY HOEFFNER, ESQ.
                               (302) 468-5650

For Creditor, Former
Employees of Nortel
Canada:                        Koskie Minsky, LLP
                               BY: BARBARA WALANCIK, ESQ.
                               (416) 595-2087

For Nortel Cont.
Employees:                     Shibley Righton, LLC
                               BY: ARTHUR JACQUES, ESQ.
                               (416) 214-5213

For Creditor,
Bondholders:                   Milbank Tweed Hadley McCloy, LLP
                               BY: THOMAS MATZ, ESQ.
                               BY: ANDREW LEBLANC, ESQ.
                               BY:  DENNIS DUNNE, ESQ.
                               (212) 530-5000

For Bank of New York,
Mellon:                        Vedder Price, PC
                               BY: MICHAEL J. REILA, ESQ.
                               (212) 407-7766

TELEPHONIC APPEARANCES:
(Continued)

For Nortel Networks
UK Pension Trust:          Hogan Lovells US, LLP
                           BY: ANGELA DIMSDALE-GILL, ESQ.
                           (212) 918-3000

For Law Debenture
Trust:                     Patterson Belknap Webb & Tyler
                           BY: DANIEL A. LOWENTHAL, ESQ.
                           (212) 336-2305

                           Morris James, LLP
                           BY: STEPHEN MILLER, ESQ.
                           (302) 888-6853

For Joint
Administrators:            Lax O'Sullivan Scott Lisus, LLP
                           BY: MATTHEW GOTTLIEB, ESQ.
                           (416) 598-1744

For Nortel Networks:       Nortel Networks, Inc.
                           BY: JOHN RAY
                           (302)351-9318

For CAW-Canada and
George Borosh, et al.:     CAW Canada
                           BY: BARRY WADSWORTH
                           (416) 495-6564

For Creditor:              Regiment Capital Advisors
                           BY: WEI WANG
                           (617) 488-1647

For Third Party:           Silver Point Capital
                           BY: MATTHEW EHMER
                           (203) 542-4219

For Interested Party:      Cassels Brock & Blackwell, LLP
                           BY: MICHAEL J. WUNDER, ESQ.
                           (416) 860-6484

For Interested Party:      Jefferies & Company
                           BY: CHETAN BANSAL
                           (203)708-5993

For Interested Party:      DebtWire
                           BY: JON R. BERKE
                           (212) 686-2741

```
TELEPHONIC APPEARANCES:
(Continued)

For Interested Party:     Solus LP - Client
                          BY: STEPHEN BLAUNER
                          (212) 373-1562

For Creditor, Solus:      Pinckney Harris & Weidinger, LLC
                          BY: KEVIN M. CAPUZZI, ESQ.
                          (302) 504-1497

For Interested Party:     CitiGroup
                          BY: JOHN W. BRANT
                          (212) 723-1584

For Interested Party:     Stone Lion Capital Par4tners
                          BY: JUSTIN BRASS
                          (212) 843-1246

For Interested Party:     Dow Jones & Company
                          BY: PEG A. BRICKLEY
                          (215) 462-0953

For Interested Party:     Macquarie Capital (USA), Inc.
                          BY: SUSAN S. CHEN
                          (212) 231-2386

For Interested Party:     Bank of America
                          BY: ESTHER CHUNG
                          (646) 855-6705

For Interested Party:     Bloomberg, LP
                          BY: STEVEN H. CHURCH
                          (302) 661-7606

For Interested Party:     Reorg Research, Inc.
                          BY: KENT COLLIER
                          (212) 257-4383

For Interested Party:     DK Partners
                          BY: EPHRAIM DIAMOND
                          (646) 282-5841

For Interested Party:     Contrarian Capital Management
                          BY: KIMBERLY B. GLANIS
                          (203) 862-8250

For Interested Party:     Hain Capital Group, LLC
                          BY: DAVID KLYMAN
                          (201) 896-6100
```

TELEPHONIC APPEARANCES:
(Continued)

For Interested Party:      Barclays PLC
                           BY: ERIC M. MASON
                           (646) 412-6772

For Interested Party:      Kamunting Street Capital
                           BY: JACK MUI
                           (203) 541-4268

For Interested Party:      Southpaw Asset Management
                           BY: ANDREW M. THAU
                           (203) 862-6231

For Non-party:             Brigade Capital Management
                           BY: DAVID YOU
                           (212) 745-9703

For Interested Party:      Aurelius Capital Management, LP
                           BY: MATTHEW ZLOTO
                           (646) 445-6518

1

1   WILMINGTON, DELAWARE, FRIDAY, AUGUST 8, 2014, 11:59 A.M.

2            THE COURT:  Good morning or afternoon everyone.

3   It's Judge Gross.  I am sitting in the Courtroom with our ace

4   ECRO, Mr. Miller, my ace law clerk, Ms. McClam [ph], and a

5   reporter, an ace reporter I should say, and I'm prepared to

6   proceed at this time with the pending Motion of the Monitor,

7   and I've carefully read all of your papers, and obviously,

8   this is an important and interesting issue and before we

9   discuss the Monitor's Motion, I have a question and it's

10  truly a question and it's directed to the settling parties

11  and actually there are several related questions and here

12  they are, and first I'll explain the basis for the question.

13           In the briefing on the interest issue, which was

14  scheduled to be heard the day after the settling parties

15  announced their settlement and filed the Motion, those same

16  parties had  argued in their papers, and were quite

17  persuasive, that the interest issue was not ripe for decision

18  and that the Court was being asked to provide an Advisory

19  Opinion because, among other reasons, the Court had not yet

20  determined the allocation of the sale proceeds.  I need to

21  understand why, in light of those justiciability arguments

22  the settlement is timely.  Why doesn't the Settlement Motion

23  bring into play, just from a different direction, the same

24  issues that the Court would have considered had it gone

25  forward with argument on interest?  In assessing the fairness

1 of the settlement, don't I have to consider, at least to some

2 extent, the underlying merits of the parties' arguments on

3 the appropriate rate of interest?  That is whether it is the

4 contract rate or the federal judgment rate because one of the

5 elements that I have to consider on the settlement is the

6 probability of success on the merits.  Now, that was a long

7 question and a long introduction, but I would like to have

8 some explanation of the timeliness of the Motion to Approve

9 the Settlement.

10           MR. LEBLANC:  Your Honor, this is Andrew LeBlanc,

11 of Milbank Tweed --

12           THE COURT:  Yes, Mr. LeBlanc.

13           MR. LEBLANC:  -- on behalf -- and can Your Honor

14 hear me okay?

15           THE COURT:  Very well.  Thank you.

16           MR. LEBLANC:  And, Your Honor, I'm happy to tackle

17 that issue at the outset and obviously respond to any other

18 questions that the Court has.  Let me deal with them in

19 reverse order.  The second question Your Honor asked is

20 whether or not you have to consider the likelihood of success

21 on the question of federal judgment rate versus contract

22 rate, and I think the answer to that is clearly Your Honor

23 does.  That's essentially -- that is the issue that's

24 presented to the Court and that was settled pursuant to the

25 Settlement Agreement that is now before the Court.  So, of

1  course, we think you do have to canvas that issue to consider

2  it.  Your Honor has already, we believe, all of the

3  information you need to canvas that issue as required under

4  the applicable standards to consider the 9019 Motion.  But,

5  of course, that is the question.  What is the likelihood of

6  success, and of course, the question is not simply before

7  Your Honor.  It's not a -- it's not simply what Your Honor

8  would do but it's also what might happen in the inevitable

9  appeals, and obviously, as the Court is well aware, this

10  issue was most recently addressed in briefing and argument

11  before the Third Circuit in the *W.R. Grace* case and a

12  settlement actually occurred there after argument before the

13  Third Circuit on a panel that included Judge Ambro.  And so

14  to the extent that there's -- I think that is exactly the

15  question Your Honor has to consider is what -- one of the

16  questions the Court has to consider is what is the likelihood

17  of success on those issues, and canvas those issues,

18  recognizing that Your Honor would not likely be the last

19  decision maker on the point.  So even if Your Honor said I

20  have a clear view to this one way or the other, I don't think

21  that would end the analysis.  The question is what is the

22  likelihood of success on this issue throughout the various

23  levels of appeal?  And I think the fact that the parties in

24  the *W.R. Grace* case, the Bondholders and the Debtors there,

25  settled their matter after argument at the Third Circuit at a

1  rate that represented approximately 70 percent of the default

2  rate of interest; represents a clear indication of what the

3  parties were thinking at that time.  So we clearly think

4  that's relevant, but Your Honor, we -- I think more relevant

5  to the Motion that's before the Court, on the Motion to

6  Adjourn and the corresponding discovery requests, we think

7  Your Honor has all the information you need today to canvas

8  that issue as required by the applicable standards.

9           Now, turning back to the first question that was

10  asked of Your Honor is whether or not this issue is ripe for

11  determination, and I think the answer to that, Your Honor, is

12  it clearly is ripe for determination and I'm not even sure

13  that anybody has really questioned that.  We pointed out to

14  the Court when we announced the settlement that Thursday

15  before the Friday hearing that the Monitor in its submission,

16  in its last round submission on the substantive issue about

17  the interest question, had presented, and I think it was

18  footnote 15 of their Brief on page 20 of that Brief, had

19  identified the fact that we had said one of the issues -- or

20  this could approach the Court under a 9019 standard and that

21  was one of reasons it was not justiciable is because the

22  Court did not know what standard it would apply.  The

23  Monitor, in that submission, didn't question the ability of

24  the Debtor to settle this issue, but simply said the Debtor

25  had not done that so it wasn't appropriate for the Court to

1    consider a 9019 standard because that had not been the way

2    that it was presented to the Court.  That was true when the

3    Monitor filed that submission, but of course, it's no longer

4    true.  The reason for this, Your Honor, the reason that it's

5    timely for parties to settle it, but not timely for it to be

6    adjudicated by the Court, is that parties can settle issues

7    conditioned on subsequent events, just like was done here.

8              So the Settlement Agreement that was reached here

9    said that to the extent that there is excess available in the

10   United States, that the Bondholders have agreed to cap their

11   recoveries for post-Petition interest in an amount that

12   represents approximately 55 percent of the accrued, as of the

13   July 1st amount, of 1.65 billion.  So the number is 874

14   million.  So the Bondholders have agreed to reduce their

15   claim by more than 700 million, as of that date, with

16   continued accruals.  But the point is the parties can always

17   reach agreement, subject to the occurrence of future

18   conditions and those agreements are considered by the Court

19   under 9019.  Courts, however, have the constitutional

20   limitation that they have to adjudicate matters that are ripe

21   for adjudication.  They can't issue conditional rulings or

22   rulings that are dependent upon the occurrence of future

23   events because those then necessarily become Advisory

24   Opinions.  And so the question, we think, Your Honor before

25   the Court is not whether or not it was appropriate for you to

1  adjudicate the question.  We don't think there's any

2  meaningful dispute that the parties could settle the question

3  because parties can settle, subject to the occurrence of

4  future events, but the Courts can't adjudicate on that same

5  term.

6          So I think, Your Honor, that's why we believe

7  there's no comparability between whether or not it was an

8  issue that was capable of being adjudicated, as opposed to an

9  issue that was capable of being settled.  It's not uncommon

10  for parties to settle even before lawsuits are brought, to

11  agree to resolutions, or even to agree in advance of there

12  even being a dispute how they will resolve their issues if

13  and when a dispute arises.  So those are all things the

14  parties can do in the freedom of their negotiations.  But

15  Courts can't adjudicate those unless they're constitutionally

16  appropriate disputes.  So that's the -- that's how those

17  arguments, Your Honor, are fully consistent with one another.

18  I don't know if that's responsive to the Court's question but

19  I wanted to try to give as fulsome an answer as I could.

20          THE COURT:  That was very responsible, Mr.

21  LeBlanc.  Thank you.  And let me hear from anyone else who'd

22  like to be heard.

23          MS. SCHWEITZER:  Judge Gross, this is Lisa

24  Schweitzer.

25          MR. HODARA:  Well, Your Honor, this is -- oh, go

1   ahead, Lisa.  That's fine.

2           THE COURT:  Ms. Schweitzer?

3           MS. SCHWEITZER:  Hi.  This is Lisa Schweitzer.

4           THE COURT:  Yes.

5           MS. SCHWEITZER:  So I think -- I don't disagree

6   with Mr. LeBlanc, but just to further some of his answers.  I

7   think on the obligation of the Court or Your Honor to

8   consider the likelihood of success of the underlying legal

9   issue, I think certainly, as Mr. LeBlanc said, that you would

10  consider that there's a live legal issue being settled.  I

11  think that necessarily in any settlement, there's a dispute

12  as to peoples' rights and entitlement and sometimes that

13  dispute is factual in nature, sometimes it's legal in nature,

14  and sometimes it's both.  I think the one thing that the

15  public records make very clear is that there is a real legal

16  dispute as to what the law is in the Third Circuit on

17  entitlement to post-Petition interest and different people

18  have put in Briefs in which they argue very vehemently as to

19  their legal position that, you know, you certainly would

20  consider that whether either those arguments are frivolous,

21  but I don't think you have to ultimately find the legal

22  answer.  I think one of the compromises that can be made is

23  recognizing that where an issue, as Mr. LeBlanc said, could

24  be litigated and could be litigated for a long time with

25  uncertain results that has effect on other people, that that

1   is an issue that is susceptible to compromise.  So the fact

2   of the existence of the dispute and that it could come out

3   different ways goes into the mix of consideration when people

4   settle.

5            I think on the second point, as to ripeness, I

6   think there is one distinction between the settlement being

7   proposed as opposed to the legal issue being teed up, and it

8   was a particular concern raised at the time that the legal

9   issue was teed up in that the Monitor had originally sought

10  the relief or suggested that they wanted to litigate the

11  issue of post-Petition interest with respect to crossover

12  bond claims, and as we, the Debtors, have raised at the

13  initial hearing, one of our concerns was that if the Court is

14  being asked to make a final legal ruling as to the

15  entitlement of the Bondholders to get post-Petition interest

16  in the U.S. Estates, they were also -- it's a legal ruling

17  and it would potentially impact the rights of all other

18  Creditors in the case to make their own arguments about their

19  entitlement to post-Petition interest if they had such rights

20  or if -- you know, if they could articulate their reasons for

21  potentially other claims and it became clear to us also in

22  the legal briefing that, in fact, the positions that were

23  filed, the Monitor did make clear that they intended that

24  this wouldn't just be a ruling, a legal ruling, on the

25  Bondholders' rights, but because of the nature -- a legal,

1  not a factual ruling, would have bound all over had a

2  collateral effect over all the Creditors' in the Debtor's

3  case.  The one distinction between the settlement and that

4  type of legal ruling is the Bondholder claims would be

5  compromised here and capped and what it provides is the

6  general Unsecured Creditors or other Creditors of the U.S.

7  Debtors, their rights would be reserved because there's not a

8  legal finding that a more narrow group of parties claim post-

9  Petition interests were being compromised and there's even

10  one set of Bondholders of another U.S. affiliate, NNCC, that

11  are not parties to this settlement as well.  So it's not even

12  every last Bondholder claim for post-Petition interest that's

13  being compromised here.  So I just think it's an additional

14  factor into some of the initial concerns about the timing of

15  the legal issue being raised, purportedly for a smaller group

16  of people, but having collateral effect as opposed to the

17  settlement.  The settlement has, in fact, been served or

18  notice of the settlement has been served on the entire

19  Creditor body just to be sure that everybody does have notice

20  on this, but I wanted to raise that as an additional

21  distinction between the settlement and the original legal

22  issues being presented to the Court.

23          THE COURT:  Thank you, Ms. Schweitzer.

24          MR. HODARA:  Your Honor, this is Fred Hodara.

25          THE COURT:  Yes, Mr. Hodara.

1          MR. HODARA:  On behalf of the Official Committee

2    and I'll just have one additional point which is surely the

3    Debtor can settle claims with parties at any point during a

4    case and one of the things -- it may seem like a smaller

5    aspect of the settlement, but one of the things that the

6    Committee focused on is that the Debtor had never actually

7    approved the underlying amount, the principal pre-Petition

8    amount, of the claim until this settlement and that's not

9    only something that's clearly within the Debtor's ability to

10   do in accordance with the Bankruptcy Code at this stage of

11   the case, but it's yet another helpful thing in cleaning up

12   the claim space and in doing that, I don't think anybody

13   could dispute that the Debtor has the ability to settle that

14   claim at this time.  In doing that, one would think that it's

15   perfectly sensible and the righteous prudential thing to do

16   to settle all aspects of the claim at that same time.  So

17   that's something the Committee thought about in considering

18   the settlement.

19          THE COURT:  All right.  Thank you, Mr. Hodara.

20   Anyone else?

21          MR. GUYDER:  Your Honor, this is Dan Guyder from

22   Allen & Overy.

23          THE COURT:  Yes, Mr. Guyder.

24          MR. GUYDER:  On behalf of the Monitor.

25          THE COURT:  Yes, sir.

1          MR. GUYDER:  I just want to add one point here,

2     Your Honor.  I think there's maybe a little confusion about

3     the scope of what the settlement does do and what it doesn't

4     do and the issues that are raised by the settlement.  You

5     know, from our perspective, obviously, it's been framed as a

6     9019 settlement and we did, in fact, acknowledge that because

7     there was some threat that this could also come up in the

8     context of 9019.  But -- and I really don't want to get into

9     the merits of the settlement.  I don't think that's really

10    the scope of what we're trying to cover today in terms of the

11    discovery issues, but we do think that the settlement raises

12    issues beyond 9019 with respect to Plan issues and dictating

13    the terms of future plans.  All of those issues, we think,

14    you know, frankly, in our Brief, as Mr. Hodara noted at the

15    last teleconference, that you know, essentially, this

16    settlement tees up many of the same issues and so I think

17    there's some agreement on that.  But it sounds to me like

18    there's some complaining of the issues presented by the

19    settlement and I just want to make clear that it's our view

20    that this is not limited to, you know, the standards

21    applicable to 9019 because of the scope of what seems to be

22    presented in the settlement.

23          THE COURT:  All right.  Well, I appreciate the

24    answers.

25          MS. SCHWEITZER:  Your Honor?

1         THE COURT:  Yes?

2         MS. SCHWEITZER:  I agree -- I'm sorry.  It's Lisa

3   Schweitzer again.  I agree with Mr. Guyder.  Obviously, we're

4   not here to argue the underlying merits, and ultimately, we

5   do understand your concerns and consideration of the issue is

6   ultimately up to, you know -- one of the factors to us was

7   obviously that the Courts had made a determination that this

8   was a ripe issue to go forward legally.  Certainly, if it's a

9   ripe issue to go forward legally, that we had taken that as

10  part of our consideration going forward to reach a settlement

11  of the issue, but I will leave for another day the response

12  on what is or is not being settled here.

13        THE COURT: Absolutely.  I appreciate that.  I

14  appreciate the answers.  I take comfort from them in the

15  appropriateness of my hearing the Settlement Motion that is

16  presently scheduled, and your answers were very helpful and

17  very professorial so it was helpful to me.

18        Let me raise an issue with you, one that really

19  doesn't make a difference to me.  It may make a difference to

20  all of you and I want to take, to a certain extent, your

21  lives into consideration because you've really been working

22  hard and I do take notice of that and have some concern about

23  it, and that is this.  We're scheduled for September 15, and

24  I'm prepared to talk about what I see as an appropriate

25  schedule here and it's going to require a great deal of

1  effort by everyone and here we are in the last few weeks of

2  summer, a summer that really I don't think any of you have

3  had an opportunity to enjoy, and I had this thought and

4  subject to what you all think, I thought perhaps I would

5  declare a three-week truce.  Nobody could do anything for

6  three weeks.  Then we would begin again and we would postpone

7  the settlement hearing to sometime a little bit later, you

8  now, early to mid-October range, and it would give you all a

9  few weeks to recuperate.  Now, I recognize that the parties

10  are anxious to have this matter resolved.  I don't know that

11  it needs to be resolved prior to the allocation argument and

12  it probably wouldn't be, frankly, because I anticipate taking

13  the matter under advisement in any event.  So I don't know if

14  parties want to consider that, if they'd like to discuss it,

15  or if they just want to reject it out of hand.  Again, I'm

16  content to proceed as we are presently scheduled on September

17  15, but I was trying to take all of you into account.

18          MS. SCHWEITZER:  Your Honor, it's Lisa --

19          MR. PULTMAN:  Your Honor, Jacob Pultman -- briefly

20  be heard, of Allen & Overy.  While we have come in today with

21  the intention of trying to keep the September 15th date, and

22  working within the confines of it so as not to affect unduly

23  the 9019 settlement discussion, our goal was really to deal

24  with only two procedural issues, the objection date and the

25  discovery.  We, from our perspective, have no opposition to

1   the Court moving back the September 15th day.  We do believe

2   that there are provisions within the Settlement Agreement

3   that speak to that.  That may be impacted, and I believe that

4   the parties themselves to the proposed Settlement Agreement

5   can speak to that issue.  But from a conceptual standpoint,

6   the Monitor and the Canadian Debtors have no opposition to

7   the proposal and I certainly know that my family would

8   appreciate it as well.

9           MS. SCHWEITZER:  Your Honor, it's Lisa Schweitzer

10  again.  Mr. Pultman had I guess maybe foreseen what I was

11  going to say, which is I think there's probably no one on the

12  call who doesn't appreciate a hiatus of some sort, and I

13  think it's a very constructive idea.  As Mr. Pultman noted

14  that the Settlement Agreement has an outside date of

15  September 30th, which it doesn't automatically terminate but

16  the parties have a right to terminate, I don't foresee that

17  being an issue for the Debtors.  I think it's a very positive

18  and constructive suggestion that we take some time to pause

19  and regroup and to proceed, as you said, on a good nights'

20  rest and in an orderly manner.  Obviously, we'll all have to

21  go back.  The parties of the Settlement Agreement just have

22  to talk to their clients but I -- from the Debtor's side, I

23  think it's very constructive and we would support that

24  extension if that was agreeable to all parties.

25          THE COURT:  Mr. LeBlanc, any thoughts or do you

1  want to -- do you need to go back and consult your clients?

2  MR. LEBLANC:  I do, Your Honor.  Gabriel LeBlanc,

3  Milbank Tweed.  I do have to consult my clients, Your Honor,

4  but I will tell you up front that we don't reject it, as I

5  think that was one of the options Your Honor gave.  You had

6  also said if you accept it or you need time to consider it.

7  We just need -- I would just need a very short period of time

8  to consult with my clients to make sure that that was

9  acceptable.  But as Ms. Schweitzer said, the outside date is

10  not a termination event.  It doesn't automatically expire.

11  So even if the Court were to extend beyond that, it simply is

12  an option.  So I think the Court would -- if that was

13  desirable to the -- from the Court's perspective, I think

14  doing that would make an awful lot of sense.  But I can't say

15  yes until I can have an opportunity to consult with my

16  clients, Your Honor.

17  THE COURT:  I appreciate that, obviously, Mr.

18  LeBlanc.  That's the right thing to do.  And again, my

19  thought is this would be a truce.  In other words, I'm not

20  looking to expand the amount of time that you have to

21  litigate.  I would just be, in effect, saying well, we'll

22  begin all of the scheduling from, you know, the three-week

23  point or roughly three weeks, something like that.  So well,

24  I'll wait to hear from you and we can make whatever

25  adjustments to the schedule are appropriate.

1          MR. LEBLANC:  Yes, and Your Honor, the only thing

2    I would add is that -- Your Honor's last point is the

3    important one.  I think we -- we obviously raised some very

4    significant concerns about the scope of discovery.  We don't

5    need this to be a new -- it shouldn't be a new trial of these

6    -- of any issues, let alone these issues that have been

7    briefed, and are, you know, before the Court.  It should be a

8    canvassing of those issues.  So if the three weeks were just

9    to extend the discovery demands that are propounded upon us,

10   that -- we would have an issue with that, but if it's a true

11   pencils-down for everybody on this issue and when we commence

12   whenever is appropriate at some later time, that would be

13   something we'd certainly -- and I would recommend to my

14   clients.

15          THE COURT:  All right.  You know, I still

16   recognize that lawyers are actually people and I think that

17   they're entitled to some opportunity to take a breather here

18   and there.  All right.  So I'll wait to hear from you all on

19   that and --

20          MR. GUYDER:  Well, Your Honor?

21          THE COURT:  Yes?

22          MR. GUYDER:  Your Honor, if I could just say one

23   more thing?  This is Dan Guyder from Allen & Overy.

24          THE COURT:  Certainly.

25          MR. GUDYER:  I appreciate the suggestion that Your

1  Honor has proposed here today.  It does raise, I think, one

2  of the immediate questions that I think was before the Court

3  today with regard to the pending objection deadline, which I

4  think is set now for Monday.

5          THE COURT:  Yes.

6          MR. GUYDER:  And so just -- I know we're talking

7  about a truce.  I want to clarify that that's included in

8  this proposed truce.

9          THE COURT:  You bet it is, and I'll get to that,

10  Mr. Guyder, because I certainly have my views on how we

11  structured this.  But the dates I was considering, just so

12  you all will know, October the 9th is a possibility and

13  October 13 or 14.  Those were the potential dates just so

14  you'll have some sense of what I'm thinking.  That it's not,

15  you know, a terribly long adjournment that we would be

16  discussing.  All right?

17          Now, let me say this to you.  I've read your

18  papers very carefully several times again.  So I'm going to

19  depart a little bit from how I normally function, which is

20  first I listen, then I rule, and I have some thoughts and I'm

21  going to express them sort of as a preliminary ruling and

22  you'll all have an opportunity to respond to the ruling to

23  the extent that you think it's necessary.  Okay?  And I will

24  not take offense if you disagree with where I'm coming from

25  or if you want to point certain matters out to me that

1    perhaps I should be reconsidering.  But I thought it would be

2    more constructive to proceed with my thinking first.

3              To begin with, I'm satisfied that the Monitor has,

4    in its Preliminary Objection, created a contested matter.

5    The Monitor is really asking for discovery in order to file a

6    supplemental objection, and to do so, it needs discovery and

7    to provide facts presently unavailable to it, which may

8    assist the Court in reaching a decision on the settlement and

9    which will enable the Monitor as well to comply with the

10   requirements of Rule 11.  So I am going to extend the

11   objection deadline beyond either August 11 or a later date,

12   which, if we all agree to the truce, we will work into the

13   schedule.  I think that August 11 is just too far in advance

14   of the hearing, and again, we can discuss a date for that

15   objection, although I will give you my thoughts on that as

16   well.

17             On discovery, I have a few observations.  The

18   settling parties will bear the burden at the hearing of

19   proving that the settlement was the result of arms' length

20   negotiations, that the terms are fair and reasonable and in

21   the best interest of the Debtor's Estate.  The Court also, as

22   we've discussed, has to determine the probability of success,

23   which brings into play, to some extent, the merits of the

24   underlying dispute.  I could order the settling parties to

25   respond to the pending discovery, but I don't think that

1    would accomplish very much because it's apparent to me that

2    the discovery requests are overbroad and are going to bring

3    into play objections based on that and also based on work

4    product and attorney/client privilege.  And in addition,

5    there may be some issue as to some of the discovery requests

6    with the confidentiality of settlement negotiations.  One

7    example I see right away is there is a request for drafts of

8    the Settlement Agreement and I think that would probably

9    implicate settlement discussions and I have concerns about

10   that.  I'm not deciding the issue, but I certainly do have

11   concerns about it.

12           So here's what I think should happen.  Since the

13   settling parties are going to have to make their case for the

14   settlement through witnesses and perhaps documents,

15   evidencing the elements that the Court has to consider in

16   approving the settlement, I would like to order that the

17   settling parties make available to the Monitor for deposition

18   the witnesses they are going to call to testify.  This is not

19   going to be an appropriate hearing for proffers, and I don't

20   think there would be agreement to a proffer in any event, and

21   I want to hear testimony, and they would also produce any

22   documents that they believe are appropriate and necessary.

23   That would be step one of discovery.

24           The Monitor would then be permitted to request

25   additional targeted discovery based upon what it had received

1  and the depositions it had taken and discuss that with the

2  settling parties, and if it didn't obtain what it wanted

3  promptly, could immediately call the Court for assistance.

4  Qgain, if it was refused and believed that the refusal was

5  inappropriate and we would schedule that, and you know, I had

6  dates in mind, but we may now be adjourning those dates.

7  That would then enable the Monitor to file an objection in

8  advance of the hearing, and at that time that it files its

9  objection, the Monitor would identify any witnesses it's

10  going to call at the hearing and any documents it will

11  introduce at the hearing and the settling parties could then

12  take depositions shortly thereafter, and that discovery of

13  the Monitor would be on a very limited basis, because you

14  know, it's the settling parties, in my mind, who have to

15  carry the burden, and so I would not want the discovery to

16  become overly intrusive.  And then that would also allow the

17  settling parties some time to submit any papers in support of

18  the settlement.  All right?

19           And then I'm going to tell you one other

20  scheduling matter that I'm going to insist on and that is the

21  evening before the settlement hearing, I'm going to have some

22  representatives from the settling parties and from the

23  Monitor come to my Chambers for a Settlement Conference that

24  will take at least a few hours.  It's not going to be a

25  mediation.  I'm not going to participate in the discussion,

1   but I am going to provide some structure and a little bit of

2   pressure, but I will allow you to leave at some point.  It

3   will not be an all-night affair unless progress is being

4   made, at which point I will be pleased to remain and oversee

5   the settlement discussions.  But I think that I want to make

6   sure before we go to this hearing that -- see, I view the

7   settlement, to some extent, as a significant movement and a

8   significant target for further settlement discussions, which

9   apparently are not taking place and which should be taking

10  place, and that concerns me, and I want to make sure that I

11  am an instrument to encourage that to happen.

12          So those are my comments and now parties can talk

13  to me, and I would suggest it would be the Monitor first

14  because it's the Monitor's Motion.

15          MR. PULTMAN:  And, Your Honor, on behalf of the

16  Movants, it's Jacob Pultman, of Allen & Overy, and speaking

17  to Your Honor's proposed -- your inclination towards

18  ordering, we understand and take as Your Honor's direction

19  the intent essentially of our Motion, which was to try and

20  make the 9019 hearing meaningful.  We take Your Honor's

21  guidance and direction as the way to do that.  The only

22  clarifications that we'll seek is with respect to the

23  proposal to take the depositions of the witnesses.  We think

24  it would be helpful to have the documents that are intended

25  to be used at the hearing first so that we could, in fact,

1   use the relevant documents at the depositions that are

2   proposed, and hopefully, thereby cut back on the need for

3   further depositions.  We do think that it will be necessary

4   to have production of the communications, the settlement

5   communications, between the parties and we take seriously

6   Your Honor's concerns of confidentiality and believe that

7   under the Protective Order that's in place, there are ways to

8   ensure that those communications get the confidentiality and

9   remain confidential but can be used at -- in the discovery

10  process, and if necessary, at the hearing as well.  With

11  that, Your Honor, we are certainly amenable to the

12  inclination of the Court and to the Proposed Order of the

13  Court.

14          THE COURT:  I did anticipate, Mr. Pultman, that

15  you would get your documents before you took any depositions.

16  That was also something that I was going to order.  Let me

17  hear from the other side at this point.

18          MR. ABBOTT:  Your Honor, Derek Abbott, or Lisa, do

19  you want to --

20          MS. SCHWEITZER:  Go ahead, Derek.

21          MR. ABBOTT:  That's fine.  Your Honor, I have --

22  overall, I think Your Honor's comments were quite

23  constructive.  I guess, and Mr. Pultman's comments to them

24  have raised a question in my mind.  As I understood, Your

25  Honor, where you were headed, you basically told the settling

1   parties to produce the documents that would be used in their

2   affirmative case and the witnesses that would be used in

3   their affirmative case for deposition, and then after that,

4   you had left room for a second round.  It's unclear to me,

5   and I think Mr. Pultman has suggested that that first round

6   is inadequate for his purposes and he wants the settlement

7   communications as well without having the benefit of, you

8   know, understanding what these witnesses would and wouldn't

9   say about those settlement communications.

10          From my perspective, I thought Your Honor's idea

11  made a lot of sense because I suspect that most of this would

12  be resolved by those depositions.  But did Your Honor suggest

13  that we would have a first round of documents, then

14  potentially a second round of documents before the

15  depositions because that's where the difference between what

16  he said and I thought I heard Your Honor say really comes in

17  conflict.

18          THE COURT:  No, Mr. Abbott.  I had in mind I think

19  what you're suggesting; namely, that you would present your

20  affirmative case in discovery to the Monitor.  The Monitor

21  would then have an opportunity to take depositions using

22  those documents that would be produced.  At that point, based

23  upon the discovery that had been produced and the depositions

24  that the Monitor took, they could come back to you and say we

25  want these additional documents or we want to perhaps even,

1    hopefully not, depose this particular other person.  If you

2    said fine, that's what would happen.  If you said no, the

3    Monitor would then have an opportunity to involve me.

4              MR. ABBOTT:  Okay, Your Honor.  And that's

5    helpful.  The one thing that I want to make sure we do, and

6    I'm sure Counsel can -- in fact, we were sort of in the

7    middle of a meet-and-confer process even before this hearing

8    was teed up, Your Honor, that got interrupted.  But the one

9    thing that I think is critical is that we have a single

10   deposition, you know, of each of these folks.  I don't want

11   to be in a position where we provide our case-in-chief

12   deposition testimony and after that they say well, we want X,

13   Y, and Z additional stuff, and by the way, we want an

14   opportunity after we get that other stuff to re-depose the

15   same people and that would be problematic for us, obviously.

16             THE COURT:  Sure.

17             MR. ABBOTT:  But I think Your Honor's idea

18   certainly is constructive.  I do have a concern about the

19   settlement communications, depending on the scope of what

20   we're talking about.  I think if it's simply a matter of some

21   of the documents related to, you know, communications up

22   until sort of an agreement was reached, you know, that might

23   be something we could live with, and we'll continue to talk

24   to Counsel about that, Your Honor.  But I do have a

25   substantial concern, as Your Honor raised, about, for

1  instance, drafts of the Settlement Agreements, et cetera,

2  again.  We just don't think that that really has any meaning

3  to Your Honor, to the Monitor because the final Settlement

4  Agreement is where it landed.  That's what's before the

5  Court.  I just don't -- I agree with Your Honor's concerns

6  about invading that, you know, generally sacred place of

7  settlement discussions.

8            THE COURT:  Yes.  Here's my concept, just to

9  perhaps expand on it a little bit and that is you will be

10 providing the Monitor with everything that you are going to

11 use at the hearing to support your effort to have me approve

12 the settlement.  There will be no surprises at the hearing.

13 The documents that you might present will have been provided.

14 The testimony that will be presented will have -- at least

15 those witnesses will have been made available and the Monitor

16 will have had an opportunity to ask questions.  That is what

17 I think is appropriate.

18            MR. ABBOTT:  Understood, Your Honor.  I think that

19 clears it up and obviously makes a lot of sense.

20            MS. SCHWEITZER:  Your Honor, I don't mean to

21 double-team for the U.S. Debtors.  I just -- one, we're in

22 different places so I just wanted to chime in on two other

23 thoughts.

24            First, is the thought that you ended with in terms

25 of settlement discussions or a conference before the hearing.

1   I -- you know, in fact, there are discussions going on right

2   now but we, the Debtors, always remain willing on any and all

3   issues in this case to have those discussions on small

4   issues, on large issues, and I think, obviously, I would hope

5   and assume that everyone on the call shares in the interest

6   to resolving everything in this case and will continue to

7   work towards that.

8          Your Honor, on the ruling that you had made, in

9   terms of the contested matter, in fact, the Monitor has put

10  in what they call an objection and we had previously told the

11  Monitor we're not asking them to formally re-serve discovery

12  later.  I think our concern wasn't simply that parties have a

13  further opportunity to put in objections or replies based on

14  factual discovery.  Our concern in asking for objections

15  first is that we know the scope of the nature of the

16  objections being raised.  It's one thing to say I don't have

17  the facts to articulate how I did or don't think arms' length

18  bargaining occurred.  It's another thing to raise new

19  potential legal issues.  Mr. Guyder today raised an issue

20  that's not reflected in his objection about Plan issues being

21  implicated and I think our concern is that before discovery

22  commences, we just understand that the objections -- the

23  legal arguments or the basis for objection or challenge to

24  the settlement are put forward so that there isn't two, three

25  dips at the wheel and that we're providing, you know,

1    evidence that goes to the ultimate matters.  So if the

2    Monitor is confirming that they've already put forward their

3    legal objections, they don't intend to raise new issues, that

4    may be obvious.  But if, in fact, they wanted to have more

5    time to consider that, I think that was our main concern, is

6    that we don't have -- we're not surprised close to the

7    hearing time with new arguments rather than just a

8    marshalling of any evidence or arguments made based on the

9    facts and they took them further into their -- in their

10   initial objections.

11            THE COURT:  Well, I did take that concern of yours

12   into consideration and that's why I proposed that rather

13   than, in effect, providing discovery that responds to the

14   objection, that you provide discovery in support of the

15   settlement.

16            MS. SCHWEITZER:  Your Honor, we're prepared to

17   proceed on that basis.  I think our only concern is, and

18   maybe it's something hopefully that we can work out in terms

19   of more targeted responses -- more targeted requests coming

20   our way, and I think it does make sense for us to maybe leave

21   it for another day on some of these specifics in terms of the

22   -- you know, working with the Monitor respectively that -- to

23   work out scope issues is that just that we don't -- we're not

24   facing larger requests in order to deal with arguments that

25   we're not aware of.  So I think as long as the discovery

1  sought matches the objections they've raised so that we

2  understand it, why the discovery is being taken care -- being

3  sought maybe it takes care of itself along the way.

4          THE COURT:  All right.  That's what I would hope

5  and I'm always available if issues arise, if specifics create

6  a problem and keep in mind, you will have the Monitor's

7  objection I think with sufficient time to take any discovery

8  that you deem appropriate.

9          MR. GUYDER:  Exactly, Your Honor.  This is Dan

10 Guyder again.  I just want to note I mean we obviously

11 provided a Preliminary Objection in the context of our

12 request for fact discovery.  It certainly was not intended to

13 limit our objections to factual issues.  There are numerous

14 legal issues that are raised by the settlement.  As I

15 suggested, some of these things are teed up already and the

16 -- have filed Briefs.  And it was certainly not our intention

17 to limit our arguments to factual issues and so I think as

18 Your Honor seems to be indicating, the objection is not -- a

19 deadline will be set with sufficient time to allow the

20 Debtors, you know, obviously a fair opportunity to respond to

21 that, whether it's a factual issue or a legal issue.

22          THE COURT:  Exactly.

23          MR. GUYDER:  And I don't -- just to be clear, I

24 don't want to face in three, four weeks' time the argument

25 that we've now once again surprised everybody in the

1  Courtroom with our arguments.  You know, the whole point here

2  is we were putting together our Preliminary Objection based

3  on the obvious need for fact discovery and certainly have no

4  intention to limit our legal argument.

5          MR. LEBLANC:  Your Honor, this is Andrew LeBlanc

6  again, with Milbank Tweed.

7          THE COURT:  Yes, sir.

8          MR. LEBLANC:  Your Honor, we appreciate the

9  Court's -- the order in which Your Honor did just give us,

10 your views up front.  I think we're amenable to what Your

11 Honor described generally with respect to the structure of

12 how discovery is going and I do appreciate Your Honor

13 relieving us of the obligation to respond to the discovery

14 requests as they've been framed.

15         THE COURT:  Yes.

16         MR. LEBLANC:  Because we would have had a

17 substantial issue with that.  The one thing, and Your Honor

18 can tell me that we can deal with this later if you think

19 it's appropriate, but I think there is identified in the

20 papers submitted by the parties a clear dispute or

21 disagreement about the scope of issues that are relevant to

22 the proceeding and where I envision this coming up is

23 actually not in the subsequent discovery requests that follow

24 depositions to the extent that any requests are made, but

25 rather at the depositions themselves and the disagreement

1  between the parties centers on whether or not -- Your Honor

2  had asked the question up front, do I need to canvas the

3  issue, and of course, we say yes to that.  The question is

4  what is the issue?  As we believe it to be, the issue is the

5  $1.6 plus billion post-Petition interest claim amount based

6  on the contract rate that the Bondholders have, that the

7  Monitor identified in Chambers to the Courts back, you know,

8  the week before the -- or I'm sorry, I think it was June 16th,

9  just coming back off the week of delay.  The Monitor, through

10 its discovery requests and through its Preliminary Objection,

11 has suggested that the settlement reflects no concession at

12 all by the Bondholders which necessarily means that they

13 don't believe it to be a $1.6 billion issue and the way they

14 say that is because the allocation outcomes are such that

15 they think the amount of cash available to pay post-Petition

16 interest could be less than 1.6 billion.  But what they've

17 sought to put at issue, through their submissions and through

18 the discovery requests, is the amount that the U.S. Debtors

19 believe or that the settling parties believe will be

20 available for post-Petition interest following the ruling on

21 allocation.  But we suggest in our papers that that's a red

22 herring, that that's not the issue that's before the Court.

23 But rather, the issue before the Court is what is the

24 appropriate rate of post-Petition interest?  And I raise this

25 now because I could envision a deposition of the settling

1   parties centered almost exclusively around what do you think

2   the outcome of the allocation proceeding is going to be and

3   how is that translated into Creditor recoveries at each level

4   such that you can tell us how much you're giving up at the

5   end of the day based upon the occurrence of a decision in the

6   allocation trial.  We don't believe that that's what is teed

7   up.  In the settlement, that's what was before the Courts for

8   hearing and we think it's simply irrelevant to the question

9   of whether or not the settlement should be approved.  That is

10  an area of dispute.  We can deal with this issue later if

11  Your Honor wants us to, but I fear that it will lead to us

12  calling Chambers during the deposition and asking for

13  guidance from the Court at that time.  So I raise that

14  question now because I will submit, Your Honor, I don't

15  envision that we would advance evidence affirmatively that

16  this -- what the outcome of the allocation trial will be, and

17  therefore, the relevance of this resolution to that eventual

18  outcome.  But instead, we would advance evidence that would

19  suggest that the Monitor told the Courts when he asked the

20  Courts to hear this that this was a more than $1.6 billion

21  and growing issue and that it reflects a substantial

22  compromise off of that amount.  So I think there is a clear

23  dispute between the parties on that issue and I think it

24  would be useful to get the Court's guidance because this

25  issue, if we wait for it to come up at the deposition, it's

1    simply going to require us to call the Court in the middle of

2    a deposition which is never terribly efficient for us or for

3    the Courts.

4              THE COURT:  Well, first of all, I'll say that I

5    don't mind parties calling me, but those calls are often

6    difficult because, you know, I'm not there and the context is

7    not always clear.  But I didn't think this a an issue

8    because I thought, essentially, the Monitor already conceded

9    that the issue was $1.6 billion and growing; that that was

10   the whole purpose for the initial briefing and potential

11   argument on the post-Petition -- or pre-Petition -- post-

12   Petition, excuse me, post-Petition interest issue.

13             MR. GUYDER:  Your Honor, this is Dan Guyder from

14   Allen & Overy.  If I may speak?

15             THE COURT:  Yes, Mr. Guyder.  Certainly.

16             MR. GUYDER:  Obviously, you know, the record is

17   clear.  The parties have been discussing the asserted claim

18   of $1.6 billion for post-Petition interest.  There's no

19   dispute that that has been the subject of the proceedings

20   over the last few weeks.  I don't think it's fair to say that

21   we've, you know, conceded that by acknowledging the

22   contractual calculation of interest under the respective

23   indentures it necessarily follows that the settlement is, in

24   fact, a concession of $600 million as is suggested.  We think

25   it's absolutely relevant to a consideration of the merits of

1  the settlement to understand what it really means for the

2  Estate and what value, you know, in effect, would be there

3  left for the Estate as a result of the concession, and I

4  really don't want to weigh it into the merits of that, Your

5  Honor, but the idea that Mr. LeBlanc I think is suggesting

6  that, you know, we ought to be limited in our ability to make

7  the relevant arguments on the facts and the law.  I just

8  don't think it's appropriate at this time and if it leaves us

9  with the specter that there may be disputes over this, I

10  think Your Honor has already taken into account that

11  possibility and I think we just have to take that as an

12  inherent risk given the magnitude of this dispute.

13  Certainly, I don't think we should be pre-judging the

14  determination of what really is at issue here with respect to

15  the settlement.

16          THE COURT:  Well, I don't want to -- I certainly

17  don't -- yes, I certainly don't want to pre-judge and I don't

18  want to sort of weigh it into the merits at this point.  But

19  I understand the issue, I think, and I don't know how to

20  resolve it today.

21          MR. LEBLANC:  And, Your Honor, again, Andrew

22  LeBlanc --

23          MR. GUYDER:  Obviously, the parties -- the Court

24  has made a proposal with regard to the process here.  It

25  deals I think with the development of the factual record and

1   provides ample opportunity for the parties to consider the

2   legal issues that are presented, and again, I just think it's

3   -- it would be an absurd result to decide today that, you

4   know, we're somehow off limits or that by discussing this,

5   based on the facts that this was an asserted claim of $1.6

6   billion, we've basically foreclosed arguments with regard to

7   a settlement that didn't even exist at the time the parties

8   were talking about $1.6 billion.

9           THE COURT:  Mr. LeBlanc, you started to speak.

10          MR. LEBLANC:  I did, Your Honor.  Thank you.  Just

11  in brief response, Your Honor, I think this issue is directly

12  teed up by the parties' respective submissions.  Paragraph 10

13  of the Monitor's submission of yesterday identified -- they

14  respond to our suggestion that they should be estopped from

15  suggesting this is not a $1.6 billion issue in large part

16  because they were able to convince the Courts to schedule it

17  for hearing on the basis of an argument that it was a $1.6

18  billion issue and this -- I think this dispute as to whether

19  or not it's relevant what the -- how the allocation outcome

20  flows through Creditor recoveries is probably in my mind,

21  Your Honor, the key dispute that was identified by the

22  parties in the papers that were submitted to you over the

23  last several days, and we can leave it for another day but to

24  be sure.  I think it's been briefed by all the parties and

25  it's in the submissions but it's an issue that I expect and

1    it's so fundamental to it because what they have suggested is

2    that the settlement doesn't reflect any compromise at all by

3    reducing the post-Petition interest claim for less than $900

4    million because -- which necessarily means they no longer

5    believe that it is a $1.6 billion issue because you cannot

6    make that statement if it's a $1.6 billion issue.  And so we

7    can certainly leave it for another day, but I think resolving

8    it as part of this -- as part of dictating the scope of

9    discovery, I don't think there's anything more important

10   because I expect that the depositions they would conduct,

11   when they get our discovery, it's not going to include

12   information about how we estimated Creditor recoveries based

13   upon potential allocation outcomes and when they get our

14   information, they're nonetheless going to ask those questions

15   of the witnesses and I would expect, based upon what they've

16   submitted and because it seems to be the linchpin of their

17   argument, is that this is not a concession at all and the

18   only way they get there is through Creditor recoveries, is

19   they're content just to spend a lot of the time in the

20   depositions to deal with this issue and it's going to come to

21   a head at some point in time and I think Your Honor has all

22   the information you need to make a decision on that.

23              THE COURT:  Well --

24              MR. GUYDER:  Again, Your Honor --

25              THE COURT:  Yes, Mr. Guyder.  Yes, sir.

1              MR. GUYDER:  Yes, and just -- again, I really am

2    loathe to go into the substance of this, but I think there is

3    a key distinction here and I'm trying not to react to Mr.

4    LeBlanc's suggestion again that the Monitor is somehow not

5    being forthright.  It's an undisputed fact that there is a

6    $1.6 billion claim for entitlement to post-Petition interest

7    based on the contract rate of interest.  The relevance of

8    allocation outcomes and the like is key to understanding the

9    merits of the settlement and what factors were considered in

10   weighing the likely outcomes and what the real value of that

11   concession is based on the outcomes of allocation and what

12   Creditors could likely expect to receive in the best and

13   worst case scenarios.  It seems implausible to us that you

14   could consider the merits of the settlement without weighing

15   those issues before deciding to approve it or not, you know,

16   as a management matter.

17              THE COURT:  Well --

18              MR. LEBLANC:  Your Honor?

19              THE COURT:  Yes?  Mr. LeBlanc?

20              MR. LEBLANC:  I hate to debate this, but it would

21   be useful if the Monitor could simply take a direct position.

22   They believe, Your Honor, based upon their submissions, that

23   there will not be enough cash to pay $1.6 billion worth of

24   post-Petition interest.  That is not a belief that is new to

25   them or that was new to them on June 16th when Mr. Carpanini

1  [ph] told Your Honor that this was a $1.6 billion issue.

2           THE COURT:  And growing a million dollars by the

3  day.

4           MR. LEBLANC:  And grows by the day.  Exactly, Your

5  Honor.  And this settlement cuts off that -- reduces the

6  growth for a year and then cuts it off completely after 365

7  days.  When he told you it was $1.6 billion issue, he didn't

8  say, but it's not really because there isn't enough cash to

9  pay that.  The real numbers are something significantly lower

10 than that and even a $700 million concession might reflect no

11 settlement at all, which is their position in their papers.

12 It's not -- this isn't -- the Monitor said it's all a bunch

13 of words about how there's outcomes that are possible.  Let's

14 just say what it is.  They don't think it's a $1.6 billion

15 issue.  They presented it to the Courts as a $1.6 billion

16 issue.  We settled it with the U.S. Debtor with an enormous

17 concession off of the issue that was presented.  We think it

18 has nothing whatsoever to do with the allocation dispute that

19 is otherwise before the Courts, nothing whatsoever.  So we've

20 not introduced anything about the allocation dispute that's

21 before the Courts.  They though want to tie those two issues

22 together and now we're saying to the Court that it's less

23 than a $900 million issue.  It just -- the question -- this

24 is such a critical question because it introduces a set of

25 factors to the analysis by the Court that is a completely

1  separate sideshow from what the Court would otherwise hear if

2  Your Honor simply considered this as it was presented which

3  was a $1.6 billion issue that's been settled for less than

4  $900 million with the turning off of accruals.  The Monitor

5  just doesn't want to say to you, no, in fact, we believe it

6  to be far less than that because the Monitor told you

7  something very, very different less than two months ago when

8  they were trying to convince you to hear this.

9            THE COURT:  Well, I do think --

10           MR. GUYDER:  Your Honor, again --

11           THE COURT:  Yes?  Yes.

12           MR. GUYDER:  -- I don't want to belabor this.  The

13  -- [indiscernible] of the claim is in dispute.  It was

14  considered in the context of the crossover bond issues that

15  were framed as pure legal questions regarding the rate of

16  interest.  But what's changed here is there is an intervening

17  proposed settlement that deals with now the distribution of

18  residual value in the Estates after payment of allowed claims

19  if there's a surplus and it necessarily -- it is relevant to

20  understand the merits of the settlement to know what is the

21  expected outcome for the Estates if they were to proceed with

22  the settlement?  We're not trying to re-litigate the

23  allocation questions, but it's absolutely critical to

24  understanding the process and the foundation in which there

25  was a determination to settle at the level that has been

1   suggested by Mr. LeBlanc and as is reflected in the

2   Settlement Agreement to understand what that means for the

3   Estate when we talk about leaving $600 million in value in

4   the Estate.  If there's no scenario where there's residual

5   value to the Estates, then there's no compromise and so I

6   think that's a point that has to remain on the table here for

7   further consideration by the parties in discovery as well as

8   in the arguments regarding the merits of the settlement and

9   any suggestion I think otherwise from Mr. LeBlanc at this

10  stage is, you know, I think yields an absurd result.

11          THE COURT:  Well, I understand the dispute.  But

12  is the Monitor now taking the position that there is not the

13  potential $1.6 billion payment of interest because that is

14  what you settle.  What you settle, generally, is not a sure

15  result but the potential of a result.

16          MR. GUYDER:  Again I don't think that the size of

17  the claim is disputed, Your Honor.  What's at issue here is

18  the suggestion of a compromise relative to what are the

19  likely outcomes for allocation and if in all scenarios the

20  Bondholders and other Creditors take all the value in the

21  Estate, there's not really a settlement of the dispute

22  inasmuch as there is a complete victory for the bonds as if

23  they had prevailed on their arguments for contract rate of

24  interest.  So, you know, again, I think it's something that

25  has to be explored from both a factual perspective as well as

1  a legal perspective, and again, I think those issues are

2  largely briefed in the existing Briefs.

3          MS. SCHWEITZER:  Your Honor, it's Lisa Schweitzer,

4  and a lot of people have strong views.  I just wanted to

5  chime in on one point here.  I think Your Honor has seen that

6  one of the requests we had made, which you acknowledge might

7  come to pass, is that discovery would be taken of the Monitor

8  with respect to the Reply and I think we had -- the Debtors

9  had sent over to the Monitor, and I believe that it might

10  have been compelled by the Court, preliminary requests and I

11  think that this all comes back a little bit to the first

12  question Your Honor asked on the phone today which is, is

13  this premature?  Is it ripe to be heard?  You know, what --

14  do you have to consider their merit and I think that the

15  Monitor is turning towards the Debtors and saying we want to

16  be able to explore every inch of your work product, every

17  inch of the allocation trial we just had where we were

18  adversaries, and every outcome in order to be able to argue

19  that this is not a valuable settlement and it's turning the

20  issue on its head.  The issue started with the Monitor coming

21  to the Court saying this is an issue that's ripe and

22  necessary to be determined, number one.  And number two, it's

23  a $1.6 billion issue.  And number three, it's important

24  because it will break logjams.  We've made submissions on

25  this point.  This was teed up as a legal issue.  We were told

1   it was ripe.  And then now, when we're in a settlement

2   context, the Monitor is saying it's all about the economics.

3   It's not $1.6 billion, or at least we're entitled to go

4   rummage through the Debtor's books and depose multiple

5   witnesses to find out what the right number is.  And number

6   three, the Monitor shouldn't be touched by discovery because

7   what -- the Monitor's views are irrelevant.  And it's --

8   quite frankly, Your Honor, that's upsetting.  It's unfair at

9   that point.  We think that this settlement was put forward in

10  good faith.  We understand that there will be discovery and

11  we have to make a showing with respect to the good faith, but

12  this idea that the Monitor is now coming in and saying that

13  they have unlimited ability to rummage through our documents,

14  ask for "everything" really, depose our witnesses, and yet

15  their views don't matter, which is going to be the second

16  shoe to drop, and that they're immune from discovery on these

17  issues is just outrageous.

18             MR. PULTMAN:  And, Your Honor --

19             MR. GUYDER:  Your Honor --

20             MR. PULTMAN:   -- I hate to get into --

21             MR. GUYDER:   -- this is Dan Guyder again.  We -- I

22  mean, again, I think we're just going a little too far down

23  the path here today given the scope of what was on the

24  Agenda.  But in any event, Your Honor, all we're seeking here

25  with respect to framing the issue I think as it's been framed

1  is to understand the process and the considerations that went

2  into weighing the strength and weakness of this concession or

3  alleged concession of $600 million and understand the

4  analysis so that we can understand if, in fact, the Debtors

5  have even considered the outcome based on allocation and it

6  may be the case that they didn't and that's the simple answer

7  to the inquiry.  But it's absolutely relevant, from our

8  perspective, to understand the merits of the settlement and

9  the strength of the suggestion of concession in these

10  circumstances.

11          THE COURT:  Well, look --

12          MR. PULTMAN:  Your Honor, if I can speak with

13  regard --

14          THE COURT:  Yes.

15          MR. PULTMAN:  Jacob Pultman, on behalf of the

16  Monitor, and again, we have the same problem that other have

17  which is we're not in the same room.  From a procedural

18  standpoint, Your Honor, we take Your Honor's guidance as to

19  the best way forward in terms of the discovery.  We agree

20  that we should be doing everything to try and streamline that

21  and that it remains a 9019 Motion, and therefore, it's the

22  Movant on that Motion's burden to persuade the Court.  That's

23  why Your Honor's suggestion of having their documents and

24  their depositions of their witnesses makes the most sense as

25  the way to start.  If we are going to respond to that by

1  taking issue with the nature of the compromise and whether

2  it's an appropriate compromise, we will have to question them

3  in that discovery and then we'll have to put forward in the

4  9019 hearing our own witness or expert who can put forward to

5  the Court an explanation as to why it's not compromised and

6  they'll have the opportunity to take that discovery.  But it

7  doesn't fundamentally alter the burdens of the 9019 Motion

8  which is why the proposal that Your Honor made in scheduling

9  an Order is eminently reasonable, makes the most sense and

10 due process to get to the 9019 component and at that hearing,

11 rather than have [indiscernible] between all the Counsel on

12 the phone as to the merits of whether this is a settlement or

13 isn't a settlement and whether it's for the best interest of

14 all stakeholders and between the Creditors and the equity,

15 rather than having that today in the context of a discussion

16 on process, the right time to have that is either September

17 15th or the dates in October Your Honor proposed for hearing

18 the merits of the settlement.

19            And the only other point that I put -- as to the

20 responses [indiscernible] by others, the protection of

21 depositions.  I share the concern that's been expressed that

22 we not take multiple times take the depositions of the same

23 witness and I think often times the best way to do that is to

24 have the documents in hand before the depositions so that if

25 we could come up with a process where the documents are in

1   hand before the deposition, it will minimize the necessity

2   for calling witnesses back and obviously if there is a need

3   because additional documents are then produced, that that may

4   create a need for a second deposition.  So I know Mr. Abbott

5   was responding to my proposal ther,e but it's all in an

6   effort to try and reduce the number of times we have to

7   depose witnesses.

8            MS. SCHWEITZER:  This is Lisa Schweitzer.  If I

9   could just briefly respond.  I don't want to prolong this.

10  But I do think that the one concern I have and what I heard

11  Mr. Pultman say is let us get our discovery from the Debtors

12  and then let's consider at a later date what discovery, if

13  any, is required of the Monitor.  I understand that was your

14  Court's -- Your Honor's ruling at the highest ,level but I

15  have a concern when it's being raised in this specific

16  context is the idea that the Monitor is saying that they, you

17  know, might have a different view than they've previously

18  expressed to the Court.  In their Reply, they have a footnote

19  saying that the Canadian Court, not Your Honor, is the one

20  that should be deciding whether they're even subject to

21  discovery and if those are the types of issues that are being

22  reserved, that's just inappropriate for them to say let us

23  get everything from the Debtor and then fight over whether

24  the Monitor is even subject to the Court ordering discovery

25  or that this is -- you know, that we can reserve on whether

1  it's right to explore these types of issues with us, the very

2  same issues that we intend to depose the Debtor on.

3          THE COURT:  Well, a couple of things because I too

4  read the comment about having to seek relief from the

5  Canadian Court to obtain discovery and I will say that if

6  you're going to come into my Court and present evidence or

7  cross-examination or anything of that sort, you're subject to

8  discovery in this Court.  Okay?  And I don't want any

9  confusion about that.  I will hear from the Monitor at the

10 settlement hearing if the Monitor hasn't engaged in

11 discovery.  If you're going to be a party in my Court, then

12 you're subject to discovery in that case.  It's that simple.

13 So let's put that confusion to an end right now.

14          As far as this other issue is concerned that Mr.

15 Pultman raised, keep in mind I have said that the Monitor may

16 depose those persons who the settling parties identify as

17 persons who will testify in support of the settlement at the

18 hearing.  So it's not -- you know, there shouldn't be any

19 confusion.  The -- on the date that we select or that I

20 select, the settling parties are going to produce their

21 documents and identify their witnesses and the depositions

22 will then take place thereafter.  So the Monitor will have

23 the documents prior to taking the depositions.

24          As to this broader issue of what does the

25 settlement represent, what is the compromise, you know, the

1  allocation issue has not been resolved.  It is possible that

2  -- sure, it's possible but a settlement involves what is the

3  potential.  In a personal injury settlement, the parties

4  don't know for certain what the Court is going to say is the

5  amount of damage but it's the potential.  Is it a million

6  dollars?  $5 million?  And what is the compromise off of

7  that?  And here, I just -- I am surprised, and I didn't

8  really fully comprehend what perhaps the Monitor was saying,

9  but I am surprised to hear the Monitor now arguing that the

10  potential interest to be paid, based upon all of its

11  arguments and all of the pressure placed, is not $1.6 billion

12  and around a million dollars a day.  So I'm going to go back

13  and re-read that, but I can't rule on it today but there is

14  such a thing, you know, as estoppel and I think that's what I

15  hear the Bondholders arguing and I think it may be -- that

16  may be where I come down on it if I'm forced to make a ruling

17  and the Monitor is free to argue, I suppose, that it's also

18  possible that there will be nothing to be paid to the

19  Bondholders because the -- depending upon how allocation is

20  determined, that there's nothing.  But again, there's nothing

21  versus $1.6 billion.  That is what is being compromised.

22  That's my -- that's just my off-the-cuff and not legal ruling

23  but certainly my impression of what this settlement involves.

24          MR. GUYDER:  Your Honor, we don't want to belabor

25  the point.  We simply would reserve all of our rights with

1  respect to those issues for later discussion and debate if

2  need be.  Again, we are -- you know, we've made the point

3  that the claim is, I think as it's been asserted, I don't

4  think that anything we've said is inconsistent with that and

5  I think we can just leave it at that for the day.

6          THE COURT:  All right.  As matters heat up, if you

7  will, we'll take it up at that point and I'm not ruling today

8  and no one I think is being restrained in making arguments at

9  a later date but those are certainly my impressions.  All

10  right.  So --

11          MS. SCHWEITZER:  Your Honor?

12          THE COURT:  Yes?

13          MS. SCHWEITZER:  It's Lisa Schweitzer.

14          THE COURT:  Yes, Ms. Schweitzer?

15          MS. SCHWEITZER:  It's Lisa Schweitzer.  First of

16  all, we thank you again, as always, for your time today.  As

17  a preface point, I think where we are, and you have given us

18  the very constructive suggestion of a short hiatus followed

19  by potential hearing dates and a roadmap for the staging of

20  discovery.  Does it make sense given that Bondholder Counsel

21  and we have to go back to the client to confirm the end dates

22  and the like that we confer each side internally and then

23  with each other to first confirm the hiatus, which I have a

24  feeling that people will find acceptable, and then second of

25  all, the hearing date and to the extent that we can, to put

1  some shape around the hiatus in terms of what happens after

2  the hiatus and then we can -- if we can agree upon some

3  things, submit it to the Court?

4              THE COURT:  Yes.  I think that does make a lot of

5  sense and let me make one suggestion right now.  It so

6  happens that the 13th and 14th of October are both free.  I'm

7  not sure --

8              MR. SCHWEITZER:  Yes.

9              THE COURT:  -- if this is a one-day or two-day

10 hearing.  It might make more sense to shoot for the 13th.

11             MS. SCHWEITZER:  Your Honor, the two things I have

12 that I just wanted to talk internally with is first, I think

13 the 13th is Columbus Day.  I don't know who does or doesn't

14 observe that date --

15             THE COURT:  Oh.

16             MS. SCHWEITZER:  -- or if the Courts are closed on

17 that date.  But we can certainly talk amongst ourselves in

18 terms of how long we think the hearing will be as well.  The

19 second thing is that I wanted -- it would be helpful for the

20 parties probably to talk about what it means after the hiatus

21 only because the allocation hearing --

22             THE COURT:  Oh, yes.

23             MS. SCHWEITZER:  -- on the -- closing arguments

24 are the 22nd and 23rd and the Briefs are due on the 10th.  So

25 there's always the bandwith issue potentially of what -- how

1   this overlaps with that schedule.  But I think we have a lot

2   of smart people on the phone who can work -- talk amongst

3   ourselves in terms of where dates would fall on that calendar

4   and possibly come back to Your Honor once we've tried to at

5   least work it out on our own.

6           THE COURT:  That would be wonderful and do this

7   for me.  At least give me a couple of weeks to decide the

8   settlement issue before parties have an opportunity to

9   withdraw.  Okay?

10          MR. LEBLANC:  Your Honor, just -- this is Andrew

11  LeBlanc.  Just looking, we had a scheduled hearing on the 15th

12  of September with a termination date of the 30th of September.

13          THE COURT:  Yes.

14          MR. LEBLANC:  We can certainly go back to our

15  clients with the same -- with a one-month extension, a

16  recommendation on the one-month extension to place that out

17  to the end of October and then have the hearing in -- either

18  of the dates that Your Honor has suggested.

19          THE COURT:  That's right.

20          MR. LEBLANC:  Is that sufficient time or would

21  Your Honor like more time?

22          THE COURT:  No, no.  That will be sufficient.

23          MR. LEBLANC:  And, Your Honor, just for everyone's

24  comfort, I think we're -- I think we all understand; Your

25  Honor's been clear, that the objection deadline for Monday is

1   no longer on the table so --

2           THE COURT:  That's right.  At least we can, with

3   definition, resolve that.  All right?  And the other dates

4   we'll work on and if you need to get back to me, obviously,

5   you will.  But I think you can probably -- I think -- look,

6   despite the differences, you've all worked remarkably well

7   together and accommodated one another to my great

8   satisfaction and I suspect you'll be able to do so here as

9   well.

10          MR. LEBLANC:  Thank you, Your Honor.

11          MR. ABBOTT:  Thank you, Your Honor, for your time.

12          THE COURT:  All right everyone.  Good day to you

13  and I'll wait to hear from someone.

14          MR. ABBOTT:  Thank you, Your Honor.

15          THE COURT:  Thank you all.

16          (Whereupon the hearing ended at 1:16 p.m.)

17

18                       CERTIFICATION

19          I  certify  that  the  foregoing  is  a  correct

20  transcript  from  the  electronic  sound  recording  of  the

21  proceedings in the above-entitled matter.

22
23
24  _____          9 August 2014
25  Tammy Kelly, Transcriber                       Date
26  Diaz Data Services, LLC

| Word | Page:Line |
| --- | --- |

**a.m(1)** 7:1
**abbott(11)** 1:23 28:18 28:18 28:21 29:18 30:4 30:17 31:18 50:4 56:11 56:14
**abid(1)** 2:9
**ability(5)** 10:23 16:9 16:13 39:6 47:13
**able(4)** 40:16 46:16 46:18 56:8
**about(28)** 10:16 14:18 15:14 16:17 17:12 18:22 18:24 22:4 23:7 25:9 25:11 29:9 30:18 30:20 30:24 30:25 31:6 32:20 35:10 40:8 41:12 43:13 43:20 45:3 47:2 51:4 51:9 54:20

**above-entitled(1)** 56:21
**absolutely(4)** 18:13 38:25 44:23 48:7
**absurd(2)** 40:3 45:10
**accept(1)** 2:6
**acceptable(2)** 21:9 53:24
**accommodated(1)** 56:7
**accomplish(1)** 25:1
**accordance(1)** 16:10
**account(2)** 19:17 39:10
**accruals(2)** 11:16 44:4
**accurate(1)** 7:12
**ace(3)** 7:3 7:4 7:5
**acknowledge(2)** 17:6 46:6
**acknowledging(1)** 38:21
**actually(5)** 7:11 9:12 16:6 22:16 35:23
**add(2)** 17:1 22:2
**addition(1)** 25:4
**additional(7)** 15:13 15:20 16:2 25:25 29:25 30:13
**addressed(1)** 9:10
**adjourn(1)** 10:6
**adjourning(1)** 26:6
**adjournment(1)** 23:15
**adjudicate(4)** 11:20 12:1 12:4 12:15
**adjudicated(2)** 11:6 12:8
**adjudication(1)** 11:21
**adjustments(1)** 21:25
**administered(1)** 51:5
**administrators(2)** 3:5 4:19
**advance(5)** 12:11 24:13 26:8 37:15 37:18
**advani(1)** 2:43
**adversaries(1)** 46:18
**advisement(1)** 19:13
**advisors(1)** 4:32
**advisory(2)** 7:18 11:23
**affair(1)** 27:3
**affect(1)** 19:22
**affiliate(1)** 15:10
**affirmative(3)** 29:2 29:3 29:20
**affirmatively(1)** 37:15
**after(10)** 7:14 9:12 9:25 29:3 30:12 30:14 43:6 44:18 54:1 54:20

**afternoon(1)** 7:2
**again(26)** 18:3 19:6 19:15 20:10 21:18 23:18 24:14 31:2 34:10 34:25 35:6 39:21 40:2 41:24 42:1 42:4 44:10 45:16 45:24 46:1 47:21 47:22 48:16 52:20 53:2 53:16

**agenda(1)** 47:24
**ago(1)** 44:7
**agree(8)** 12:11 12:11 18:2 18:3 24:12 31:5 48:19
**agreeable(1)** 20:24
**agreed(2)** 11:10 11:14
**agreement(13)** 9:25 11:18 11:17 17:17 20:4 20:14 20:21 25:8 25:20 30:22 31:4 45:2

**agreements(2)** 11:18 31:1
**ahead(2)** 13:1 28:20
**akin(1)** 2:5
**alberto(1)** 2:38
**all(56)** 7:7 9:2 10:7 12:13 14:17 15:1 15:2 16:6 17:13 17:23 18:20 19:4 19:8 19:17 20:20 20:24 21:22 22:15 22:18 23:12 23:16 23:22 24:12 26:18 32:2 34:4 36:12 38:4 40:24 41:2 41:17 41:21 43:11 43:12 45:19 45:20 46:11 47:24 49:11 49:14 50:5 52:10 52:11 52:15 52:16 53:9 53:16 53:25 55:24 56:3 56:6 56:15

**all-night(1)** 27:3
**alleged(1)** 48:3
**allen(6)** 2:18 16:22 19:20 22:23 27:16 38:14
**allocation(20)** 7:20 19:11 36:14 36:21 37:2 37:6 37:16 40:19 41:13 42:8 42:11 43:18 43:20 44:23 45:19 46:17 48:5 52:1 52:19 54:21

**allow(3)** 26:16 27:2 34:19
**allowed(1)** 44:18
**almost(1)** 37:1
**alone(1)** 22:6
**along(1)** 34:3
**already(5)** 9:2 33:2 34:15 38:8 39:10
**also(11)** 9:8 14:16 14:21 17:7 21:6 24:21 25:3 25:21 26:16 28:16 52:17
**alter(1)** 49:7
**alternative(1)** 3:14
**although(1)** 24:15

**always(6)** 11:16 32:2 34:5 38:7 53:16 54:25
**ambro(1)** 9:13
**amenable(2)** 28:11 35:10
**america(1)** 5:28
**among(1)** 7:19
**amongst(2)** 54:17 55:2
**amount(10)** 11:11 11:13 16:7 16:8 21:20 36:5 56:15 36:18 37:22 52:5
**analysis(3)** 9:21 43:25 48:4
**and(301)** 4:27 7:4 7:5 7:7 7:7 7:8 7:8 7:9 7:10 7:11 7:11 7:12 7:15 7:16 7:18 8:7 8:13 8:16 8:17 8:22 8:24 9:6 9:9 9:10 9:11 9:13 9:17 9:23 9:24 10:6 10:11 10:12 10:17 10:20 11:18 11:24 12:13 12:21 13:12 13:12 13:14 13:17 13:24 14:2 14:7 14:12 14:17 14:21 15:3 15:5 15:9 15:21 16:2 16:4 16:8 16:12 16:15 17:3 17:4 17:6 17:8 17:12 17:13 17:19 18:4 18:5 18:16 18:16 18:18 18:22 18:22 18:23 18:25 19:1 19:3 19:3 19:6 19:8 19:11 19:21 19:24 20:3 20:6 20:7 20:12 20:18 20:19 20:19 20:20 20:23 21:1 21:18 21:24 22:1 22:7 22:11 22:13 22:16 22:18 22:19 22:23 23:9 23:20 23:22 23:21 23:23 24:6 24:8 24:14 24:20 25:2 25:5 25:4 25:8 25:8 25:14 25:19 25:20 25:21 25:22 26:1 26:2 26:4 26:5 26:5 26:8 26:9 26:11 26:12 26:15 26:16 26:19 26:20 26:22 27:1 27:4 27:7 27:9 27:10 27:12 27:13 27:15 27:16 27:18 27:19 27:21 28:12 28:10 28:11 28:12 28:23 29:2 29:3 29:5 29:6 29:8 29:16 29:23 29:24 30:4 30:5 30:12 30:13 30:13 30:23 31:9 31:15 31:19 32:2 32:4 32:5 32:6 32:10 32:21 32:25 33:9 33:12 33:17 33:20 34:5 34:15 34:16 34:19 34:21 36:13 36:17 36:24 37:22 37:8 37:11 37:17 37:21 37:23 38:6 38:10 38:12 39:2 39:7 39:8 39:11 39:17 39:19 39:21 39:25 40:2 40:18 40:23 40:24 40:25 41:6 41:13 41:15 41:16 41:17 41:20 41:21 42:1 42:3 42:8 42:9 42:10 42:11 42:12 43:2 43:4 43:5 43:6 43:10 43:22 44:19 44:24 45:1 45:5 45:8 45:19 45:20 46:1 46:4 46:8 46:15 46:16 46:18 46:22 46:23 47:1 47:4 47:5 47:7 47:10 47:12 47:14 47:16 47:18 48:1 48:2 48:5 48:6 48:8 48:16 48:20 48:21 48:21 48:23 49:1 49:3 49:5 49:9 49:10 49:13 49:14 49:14 49:19 49:23 50:2 50:6

**and(44)** 50:10 50:12 50:21 50:23 51:5 51:6 51:8 51:21 51:21 52:6 52:7 52:7 52:11 52:12 52:13 52:14 52:15 52:17 52:22 53:1 53:4 53:7 53:8 53:17 53:19 53:21 53:22 53:23 54:4 54:7 54:7 54:12 54:14 54:17 55:22 55:24 55:25 56:2 56:5 56:13

**andrew(6)** 3:43 6:13 8:10 35:5 39:21 55:10
**angela(1)** 4:6
**ann(1)** 1:24
**announced(2)** 7:15 10:14
**another(9)** 12:17 15:10 16:11 18:11 32:18 33:21 40:23 41:7 56:7
**answer(5)** 8:22 10:11 12:19 13:22 48:6
**answers(4)** 13:6 17:24 18:14 18:16
**anticipate(2)** 19:12 28:14
**anxious(1)** 19:10
**any(25)** 8:17 12:1 13:11 16:3 19:2 19:23 25:26 25:20 25:21 26:9 26:20 26:17 28:15 31:2 32:2 33:8 34:7 35:24 41:2 45:9 47:24 50:13 51:8 51:18
**anybody(2)** 10:13 16:12
**anyone(2)** 12:21 16:20
**anything(4)** 19:5 41:9 43:20 51:7 53:4
**apparent(1)** 25:1
**apparently(1)** 27:9
**appeal(1)** 9:23
**appeals(1)** 9:9
**appearances(5)** 2:1 3:1 4:1 5:1 6:1
**applicable(3)** 9:4 10:8 17:21
**apply(1)** 10:22
**appreciate(9)** 17:23 18:13 18:14 20:8 20:12 21:17 22:25 35:8 35:12

**approach(1)** 10:10
**appropriate(15)** 8:3 10:25 11:25 12:16 18:24 21:25 22:12 25:19 25:22 31:17 34:8 35:19 36:24 39:8 49:2
**appropriateness(1)** 18:15
**approve(3)** 8:8 31:11 42:15
**approved(2)** 16:7 37:9
**approving(1)** 25:16
**approximately(2)** 10:1 11:12
**are(60)** 7:11 7:12 11:18 11:20 11:22 12:10 12:13 12:17 13:20 15:11 17:4 19:1 19:10 19:16 20:2 21:25 22:7 22:9 22:16 24:20 25:2 25:20 25:18 25:22 27:9 27:12 27:24 28:1 28:7 28:11 31:10 32:1 32:4 34:13 34:14 34:15 35:21 35:24 36:14 38:5 40:2 43:9 43:13 45:18 46:1 47:7 48:25 49:25 50:3 50:21 50:21 51:20 53:2 53:9 53:17 54:6 54:16 54:24 54:24
**area(1)** 37:10
**argue(4)** 13:18 18:4 46:18 52:17
**argued(1)** 7:16

**arguing(2)** 52:9 52:15
**argument(10)** 7:25 9:10 9:12 9:25 19:11 34:24 35:4 38:11 40:17 41:17
**arguments(18)** 7:21 8:2 12:17 13:20 14:18 32:23 33:7 33:8 33:24 34:17 35:1 39:7 40:6 45:8 45:23 52:11 53:8 54:23
**arise(1)** 34:5
**arises(1)** 12:13
**arms(2)** 24:19 32:17
**around(3)** 37:1 52:12 54:1
**arsht(1)** 1:22
**arthur(1)** 3:37
**articulate(2)** 14:20 32:17
**asch(3)** 31:16 41:14 47:14
**asked(7)** 7:18 10:10 14:14 36:2 37:19 46:12
**asking(4)** 24:5 32:11 32:14 37:12
**aspect(1)** 16:5
**aspects(1)** 16:16
**asserted(3)** 38:17 40:5 53:3
**assessing(1)** 7:25
**asset(2)** 3:15 6:2
**assist(1)** 24:8
**assistance(1)** 26:3
**assume(1)** 32:5
**attorney/client(1)** 25:4
**august(5)** 1:13 7:1 24:11 24:13 56:24
**aurelius(1)** 6:20
**automatically(2)** 20:15 21:10
**available(6)** 11:9 25:17 31:15 34:5 36:15 36:20
**aware(2)** 9:9 33:25
**away(1)** 25:7
**awful(1)** 21:14
**back(15)** 19:9 20:1 20:21 21:1 28:2 29:24 36:7 36:9 46:11 50:2 52:2 52:3 52:21 55:4 55:14 56:4
**badke-berkow(1)** 2:19
**bandwith(1)** 54:25
**bank(2)** 3:47 5:28
**bankruptcy(3)** 1:1 1:19 16:10
**bansal(1)** 4:45
**barbara(1)** 3:32
**barclays(1)** 6:4
**bargaining(1)** 32:18
**barry(1)** 4:29
**based(17)** 25:3 25:3 25:25 29:22 33:8 35:2 36:5 37:5 40:5 41:12 41:15 42:7 42:11 42:22 48:5 52:10
**basically(2)** 28:25 40:6
**basis(5)** 7:12 26:11 32:23 33:17 40:17
**bayard(1)** 2:37
**bear(1)** 24:18
**became(1)** 14:21
**because(42)** 7:19 8:4 10:21 11:1 11:23 12:3 14:25 15:7 17:6 17:21 18:21 19:12 23:10 25:1 26:13 27:14 29:11 29:15 31:3 35:16 36:14 36:25 37:14 37:24 38:6 38:8 40:16 41:1 41:4 41:5 41:10 41:16 43:8 43:24 44:6 45:13 46:24 47:6 50:3 51:3 52:19 54:21
**become(2)** 11:23 26:11
**been(21)** 11:3 15:17 15:18 17:5 18:21 22:6 29:23 31:13 31:15 35:14 38:17 38:19 40:24 44:3 44:25 46:10 47:25 49:21 52:1 53:3 55:25
**before(30)** 1:18 7:8 8:25 9:6 9:11 9:12 10:15 11:24 12:10 12:7 23:2 26:21 27:6 28:15 29:14 30:7 31:4 31:25 32:21 36:8 36:22 36:23 37:7 42:15 43:19 43:21 49:24 50:1 55:8
**begin(3)** 19:6 21:22 24:1
**behalf(5)** 8:13 16:1 16:24 27:15 48:15
**being(24)** 7:18 12:8 12:9 12:12 13:10 14:6 14:7 14:14 15:9 15:13 15:15 15:22 18:12 20:17 27:3 32:16 32:20 34:2 42:5 42:25 50:15 50:21 52:21 53:19
**belabor(2)** 44:12 52:24
**belief(1)** 42:24
**believe(15)** 9:2 12:6 20:1 20:3 25:22 28:6 36:6 36:13 36:19 36:19 37:6 41:5 42:22 44:5 46:9
**believed(1)** 26:4
**belknap(1)** 4:10
**benefit(1)** 29:7
**berke(1)** 4:49
**best(5)** 24:21 42:12 48:19 49:13 49:23
**bet(1)** 23:9
**between(10)** 12:17 14:6 15:3 15:21 28:5 29:15 36:1 37:23 49:11 49:14
**beyond(3)** 17:12 21:11 24:11
**billion(25)** 11:13 36:5 36:13 36:16 37:20 38:9 38:18 40:6 40:8 40:15 40:18 41:5 41:6 42:6 42:23 43:1 43:7 43:14 43:15 43:17 44:3 45:13 46:23 47:3 52:11 52:21
**bit(5)** 19:7 23:19 27:1 31:9 46:11
**blackwell(2)** 2:13 4:40
**blamer(1)** 5:5
**bloomberg(1)** 5:32
**body(1)** 15:19

**bond(2)** 14:12 44:14
**bondholder(4)** 2:45 15:14 15:12 53:20
**bondholders(11)** 3:41 9:24 11:10 11:14 14:15 15:10 36:6 36:12 45:20 52:15 52:19
**bondholders'(1)** 14:25
**bonds(1)** 45:22
**books(1)** 47:4
**borosh(1)** 4:28
**both(3)** 13:14 45:25 54:6
**bound(1)** 15:1
**brad(2)** 2:8 2:22
**brant(1)** 5:13
**brass(1)** 5:17
**break(1)** 46:24
**breather(1)** 22:17
**brian(1)** 2:42
**brickley(1)** 5:21
**brief(4)** 10:18 10:18 17:14 40:11
**briefed(3)** 22:7 40:24 46:2
**briefing(4)** 7:13 9:10 14:22 38:10
**briefly(2)** 19:19 50:9
**briefs(4)** 13:18 34:16 46:2 54:24
**brigade(1)** 6:16
**bring(2)** 7:23 25:2
**brings(1)** 24:23
**broader(1)** 51:24
**brock(2)** 2:13 4:40
**brought(1)** 12:10
**buchanan(1)** 2:26
**bunch(1)** 43:12
**burden(3)** 24:18 26:15 48:22
**burdens(1)** 49:7
**but(81)** 8:7 9:4 9:8 10:4 10:24 11:3 11:5 11:16 12:4 12:14 12:18 13:6 13:21 14:25 15:16 15:20 16:5 16:11 17:8 17:11 17:17 18:11 19:17 20:5 20:15 20:22 21:4 21:9 21:14 22:10 23:11 24:1 24:25 25:10 26:6 27:1 27:22 27:25 28:9 29:12 30:8 30:17 30:24 32:2 33:4 35:19 35:24 36:16 36:21 36:23 37:21 37:25 38:5 38:7 39:3 39:18 40:4 40:23 40:25 41:5 41:7 42:22 42:24 43:8 44:16 44:21 45:15 45:17 45:21 47:1 47:24 48:7 49:6 50:5 50:10 50:14 52:2 52:5 52:9 52:10 52:13 52:20 52:23 53:9 54:17 55:1 56:5

**calculation(1)** 38:22
**calendar(1)** 55:3
**call(7)** 20:12 25:18 26:3 26:10 32:5 32:10 38:1
**calling(3)** 37:12 38:5 50:2
**calls(1)** 38:5
**caloway(1)** 4:2
**can(34)** 8:13 11:6 11:16 12:14 12:14 13:22 16:3 20:5 21:15 21:24 24:14 27:12 28:9 30:6 33:18 35:18 35:18 37:4 37:10 40:23 41:7 48:4 48:12 49:4 50:25 53:5 53:25 54:2 54:2 54:17 55:2 55:14 56:2 56:5
**canada(3)** 3:31 4:28
**canadian(4)** 2:17 20:6 50:19 51:5
**cannot(1)** 41:5
**canvas(5)** 9:1 9:3 9:17 10:7 36:2
**canvassing(1)** 22:8
**cap(1)** 11:10
**capable(2)** 12:8 12:9
**capital(9)** 4:32 4:36 5:16 5:24 5:44 5:48 6:8 6:16
**capped(1)** 15:5
**capuzzi(1)** 5:9
**care(2)** 34:2 34:3
**carefully(2)** 7:7 23:18
**carpanini(1)** 42:25
**carry(1)** 26:15
**case(16)** 1:14 9:11 9:24 14:18 15:3 16:4 16:11 25:13 29:2 29:3 29:20 32:3 32:6 42:13 48:6 51:12
**case-in-chief(1)** 30:11
**cash(3)** 36:15 42:23 43:8
**cassels(2)** 2:13 4:40
**caw(1)** 4:28
**caw-canada(1)** 4:27
**ccc(1)** 3:24
**centered(1)** 37:11
**centers(1)** 36:1
**certain(2)** 18:20 23:25 52:4
**certainly(22)** 13:9 13:19 18:8 20:7 22:13 22:24 23:10 25:10 28:11 30:18 34:12 34:16 35:3 38:15 39:13 39:16 39:17 41:7 52:23 53:9 54:17 55:14
**certification(1)** 56:18
**certify(1)** 56:19
**cetera(1)** 31:1
**challenge(1)** 32:23
**chambers(3)** 26:23 36:7 37:12
**changed(1)** 44:16
**chapman(1)** 3:6
**chapter(1)** 1:7
**charles(1)** 3:11
**chen(1)** 5:25
**chetan(1)** 4:45
**chime(2)** 12:2 46:5
**chris(1)** 2:7

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

chung(1) 5:29
church(1) 5:33
circuit(4) 9:11 9:13 9:25 13:16
circumstances(1) 48:10
citigroup(1) 5:12
claim(15) 11:15 15:8 15:12 16:8 16:12 16:14 16:16
36:5 38:17 40:5 41:3 42:6 44:13 45:17 53:3
claimants(1) 2:37
claims(5) 14:12 14:21 15:4 16:3 44:18
clarifications(1) 27:22
clarify(1) 23:7
cleaning(1) 16:1
clear(12) 9:20 10:2 13:15 14:21 14:23 17:19 34:23
35:20 37:22 38:7 38:17 55:25
clearly(4) 8:22 10:3 10:12 16:9
clears(1) 31:19
cleary(1) 1:27
clerk(1) 7:4
client(2) 5:4 53:21
clients(7) 20:22 21:1 21:3 21:8 21:16 22:14 55:15
close(1) 33:6
closed(1) 54:16
closing(1) 54:23
code(1) 16:10
coleman(1) 2:20
collateral(2) 15:2 15:16
collier(1) 5:7
columbus(1) 54:13
come(12) 14:2 17:7 19:20 26:23 29:24 37:25 41:20
46:7 49:25 51:6 52:16 55:4
comes(2) 29:16 46:11
comfort(2) 18:14 55:24
coming(6) 23:24 33:19 35:22 36:9 46:20 47:12
commence(1) 32:11
commences(1) 32:22
comment(1) 51:4
comments(3) 27:12 28:22 28:23
committee(4) 2:4 16:1 16:6 16:17
communications(7) 28:4 28:5 28:8 29:7 29:9 30:19
30:21
company(2) 4:44 5:20
comparability(1) 12:7
compel(4) 46:10
complaining(1) 17:18
complete(1) 45:22
completely(2) 43:6 43:25
comply(1) 24:9
component(1) 49:10
comprehend(1) 52:8
compromise(9) 14:1 37:22 41:2 45:5 45:18 49:1 49:2
51:25 52:6
compromised(5) 15:5 15:9 15:13 49:5 52:21
compromises(1) 13:22
conaway(1) 3:5
conceded(2) 38:8 38:21
concept(1) 31:8
conceptual(1) 20:5
concern(13) 14:8 18:22 30:18 30:25 32:12 32:14
32:21 33:5 33:11 33:17 49:21 50:10 50:15
concerned(1) 51:14
concerns(9) 14:13 15:14 18:5 22:4 25:9 25:11 27:10
28:6 31:5
concession(10) 36:11 38:24 39:3 41:17 42:11 43:10
43:17 48:2 48:3 48:9
conditional(1) 11:21
conditioned(1) 11:7
conditions(1) 11:18
conduct(1) 41:10
confer(1) 53:22
conference(2) 26:23 31:25
confidential(1) 28:9
confidentiality(3) 25:6 28:6 28:8
confines(1) 19:22
confirm(2) 53:21 53:23
confirming(1) 33:2
conflict(1) 7:9
confusion(4) 17:2 51:9 51:13 51:19
consider(19) 8:1 8:5 8:20 9:1 9:4 9:15 9:16 11:1
13:8 13:10 13:20 19:14 21:6 25:15 33:5 40:1 42:14
46:14 50:12
consideration(7) 14:3 18:5 18:10 18:21 33:12 38:25
45:7
considerations(1) 48:1
considered(6) 7:24 11:18 42:9 44:2 44:14 48:5
considering(2) 16:17 23:11
consistent(1) 12:17
constitutional(1) 11:19
constitutionally(1) 12:15

constructive(7) 20:13 20:18 20:23 24:2 28:23 30:18
53:18
consult(4) 21:1 21:3 21:8 21:15
cont(1) 3:35
content(2) 19:16 41:19
contested(1) 24:4 32:9
context(7) 17:8 34:11 38:6 44:14 47:2 49:15 50:16
continue(2) 30:23 32:6
continued(6) 2:2 3:2 4:2 5:2 6:2 11:16
contract(5) 8:4 8:21 36:6 42:7 45:23
contractual(1) 38:22
contrarian(1) 5:44
convince(2) 40:16 44:8
cordo(1) 1:24
correct(1) 56:19
corresponding(1) 10:6
could(24) 10:20 10:22 12:19 13:23 13:24 14:2 14:20
16:13 17:7 19:5 22:22 24:24 26:3 26:11 27:25 29:24
30:23 36:16 36:24 37:13 38:1 38:4 38:15
counsel(4) 30:6 30:24 49:11 53:20
couple(2) 51:3 55:7
course(5) 9:1 9:5 9:6 11:3 36:3
court(113) 1:1 7:2 7:18 7:19 7:24 8:12 8:15 8:18
8:24 8:25 9:9 9:16 10:5 10:14 10:20 10:22 10:25
11:2 11:6 11:8 11:25 12:20 13:2 13:4 13:7 14:13
15:22 15:23 15:25 16:19 16:23 16:25 17:23 18:1
18:13 20:1 20:25 21:11 21:12 21:17 22:7 22:15
22:21 22:24 23:2 23:5 23:9 24:8 24:21 25:15 26:3
28:12 28:13 28:14 29:18 30:16 31:5 31:8 33:11 34:4
34:23 35:7 35:15 36:22 36:23 37:13 38:1 38:4 38:15
39:16 39:23 40:9 41:23 41:25 42:17 42:19 43:2
43:22 43:25 44:1 44:9 44:11 45:11 46:10 46:21 48:11
48:14 48:22 49:5 50:18 50:19 50:24 51:3 51:5 51:6
51:8 51:11 52:4 53:6 53:12 53:14 54:4 54:4 54:9
54:15 54:22 55:6 55:13 55:19 55:22 56:2 56:12
56:15
courtroom(1) 1:9 7:3 35:1
courts(14) 11:19 12:4 12:15 18:7 36:7 37:7 37:19
37:20 38:3 40:16 43:15 43:19 43:21 54:16
court's(5) 12:18 21:13 35:9 37:24 50:14
cover(1) 1:17
create(2) 34:5 50:4
created(1) 24:4
creditor(5) 3:29 3:40 4:32 5:8 15:19 37:3 40:20
41:12 41:18
creditors(7) 2:5 14:18 15:6 15:6 42:12 45:20 49:14
creditors'(1) 15:2
crichlow(1) 3:20
critical(3) 30:9 43:24 44:23
cross-examination(1) 51:7
crossover(2) 14:11 44:14
cut(1) 28:2
cuts(2) 43:5 43:6
damage(1) 52:5
dan(5) 16:21 22:23 34:9 38:13 47:21
daniel(2) 2:21 4:11
data(1) 1:33
date(15) 11:15 19:21 19:24 20:14 21:9 24:11 24:14
50:12 51:19 53:9 53:25 54:14 54:17 55:12 56:25
dates(10) 23:11 23:13 26:6 26:6 49:17 53:19 53:21
55:3 55:18 56:3
david(3) 3:20 5:49 6:17
day(13) 7:14 18:11 20:1 33:21 37:5 40:23 41:7 43:3
43:4 52:12 53:5 54:13 56:12
days(2) 40:23 43:7
deadline(4) 23:3 24:11 34:19 55:25
deal(7) 8:18 18:25 19:3 33:24 35:18 37:10 41:20
deals(2) 39:25 44:17
debate(2) 42:20 53:1
debenture(1) 19:5
deem(1) 34:8
declare(1) 19:5
deem(1) 34:8
default(1) 10:1
definition(1) 56:3
delaware(3) 1:2 1:11 7:1
delay(1) 36:9
demands(1) 22:9
dennis(1) 3:44
depart(1) 23:19
dependent(1) 11:22
depending(2) 30:19 52:19

depose(6) 30:1 47:4 47:14 50:7 51:2 51:16
deposition(10) 25:17 29:3 30:10 30:12 36:25 37:12
37:25 38:2 50:1 50:4
depositions(20) 26:1 26:12 27:23 28:1 28:3 28:15
29:12 29:15 29:21 29:23 35:24 35:25 41:10 41:20
48:24 49:21 49:22 49:24 51:21 51:23
derek(3) 1:23 28:18 28:20
described(1) 35:11
desirable(1) 21:13
despite(1) 56:6
determination(5) 10:11 10:12 18:7 39:14 44:25
determine(1) 24:22
determined(3) 7:20 46:22 52:20
development(1) 39:25
diamond(1) 5:41
diaz(1) 1:33
dictating(2) 17:12 41:8
did(9) 10:22 14:23 17:6 28:14 29:12 32:17 33:11
35:9 40:10
didn't(7) 10:23 26:2 38:7 40:7 43:7 48:6 52:7
difference(3) 18:19 18:19 29:15
differences(1) 56:6
different(6) 7:23 13:17 14:3 31:22 44:7 50:17
difficult(1) 38:6
dimsdale-gill(1) 4:6
dips(1) 32:25
direct(1) 42:21
directed(1) 7:10
direction(3) 7:23 27:18 27:21
directly(1) 40:11
disagree(2) 13:5 23:24
disagreement(2) 35:21 35:25
discovery(52) 10:6 17:11 19:25 22:4 22:9 24:5 24:6
24:17 24:25 25:2 25:5 25:23 25:25 26:12 26:15 28:9
29:20 29:23 32:11 32:14 32:21 33:13 33:14 33:25
34:2 34:7 34:12 35:2 35:12 35:13 35:23 36:10 36:18
41:9 41:11 45:7 46:7 47:6 47:10 47:16 48:19 49:3
49:6 50:11 50:12 50:20 52:4 52:5 51:8 51:11 51:12
53:20
discuss(4) 7:9 19:14 24:14 26:1
discussed(1) 24:22
discussing(3) 23:16 38:17 40:4
discussion(4) 19:23 26:25 49:15 53:1
discussions(7) 25:9 27:5 27:8 31:7 31:25 32:1 32:3
dispute(21) 12:2 12:12 12:13 13:11 13:13 13:16 14:2
16:13 24:24 32:20 37:10 37:23 38:19 39:12 40:18
40:21 43:18 43:20 44:13 45:11 45:21
disputed(1) 45:17
disputes(2) 12:16 39:19
distinction(3) 14:6 15:3 15:21 42:3
distribution(1) 44:17
district(1) 1:2
dla(1) 3:24
documents(20) 25:14 25:22 26:10 27:24 28:1 28:15
29:1 29:13 29:14 29:22 29:25 30:21 31:13 47:13
48:23 49:24 49:25 50:3 51:21 51:23
does(9) 8:23 15:19 17:3 23:1 33:20 51:24 53:20 54:4
54:13
doesn't(10) 7:22 17:3 18:19 20:12 20:15 21:10 41:2
44:5 49:7 54:13
dollars(3) 43:2 52:6 52:12
done(2) 10:25 11:7
don't(52) 8:11 9:21 12:18 13:5 13:21 16:12 17:8
17:9 19:2 19:10 19:13 20:16 21:4 22:4 24:25 25:19
30:10 31:2 31:5 31:20 32:16 32:17 33:3 33:6 33:23
34:23 34:24 36:13 37:6 37:14 38:5 38:20 39:4 39:8
39:13 39:16 39:17 39:17 39:19 41:9 43:14
44:12 45:16 47:15 50:9 51:8 52:4 52:13 54:13
dorsey(1) 3:7
double-team(1) 31:21
dow(1) 5:20
down(2) 47:22 52:16
drafts(2) 25:7 31:1
drop(1) 47:16
due(2) 49:10 54:24
dunne(1) 3:44
during(2) 16:3 37:12
each(4) 30:10 37:3 53:22 53:23
early(1) 19:8
economics(1) 47:2
ecro(2) 1:33 7:4
effect(6) 13:25 15:2 15:16 21:21 33:13 39:2
efficient(1) 38:2
effort(3) 19:1 31:11 50:6
ehmer(1) 4:37
either(4) 13:20 24:11 49:16 55:17
electronic(2) 1:40 56:20
elements(2) 8:5 25:15
else(2) 12:21 16:20
emanuel(1) 3:15

eminently(1) 49:9
employees(2) 3:30 3:36
enable(1) 24:9 26:7
encourage(1) 27:11
end(5) 9:21 37:5 51:13 53:21 55:17
ended(2) 31:24 56:16
engaged(1) 51:10
enjoy(1) 19:3
enormous(1) 43:16
enough(2) 42:23 43:8
ensure(1) 28:8
entire(1) 15:18
entitled(2) 22:17 47:3
entitlement(5) 13:12 13:17 14:15 14:19 42:6
envision(3) 35:22 36:25 37:15
ephraim(1) 5:41
equity(1) 49:14
eric(1) 6:5
ernst(1) 2:32
esq(40) 1:23 1:24 1:28 2:6 2:7 2:8 2:9 2:10 2:14
2:20 2:21 2:22 2:23 2:27 2:33 2:38 2:42 2:43
2:47 3:6 3:7 3:11 3:16 3:20 3:21 3:25 3:26 3:32
3:37 3:42 3:43 3:44 3:49 4:6 4:11 4:15 4:20 4:41
5:9
essentially(4) 8:23 17:15 27:19 38:8
estate(6) 24:21 39:2 39:3 45:3 45:4 45:21
estates(4) 14:16 44:18 44:21 45:5
esther(1) 5:29
estimated(1) 41:12
estopped(1) 40:14
estoppel(1) 52:14
even(15) 9:19 10:12 12:10 12:11 12:12 15:9 15:11
21:11 29:25 30:7 40:7 43:10 48:5 50:20 50:24
evening(1) 26:21
event(4) 19:13 21:10 25:20 47:24
events(3) 11:7 11:23 12:4
eventual(1) 37:17
every(15) 15:12 46:16 46:16 46:18
everybody(3) 15:19 22:11 34:25
everyone(4) 7:2 35:2 52:12 56:12
everyone's(1) 55:23
everything(4) 31:10 32:6 48:20 50:23
evidence(5) 33:1 33:8 37:15 37:18 51:6
evidencing(1) 25:15
exactly(4) 3:44 34:22 43:4
example(1) 25:7
excess(1) 11:9
exclusively(1) 37:1
excuse(1) 38:12
exist(1) 40:7
existence(1) 14:2
existing(1) 46:2
expand(2) 21:20 31:9
expect(4) 40:25 41:10 41:15 42:12
expected(1) 44:21
expert(1) 49:4
expire(1) 21:10
explain(1) 7:12
explanation(2) 8:8 49:5
explore(2) 46:16 51:1
explored(1) 45:25
express(1) 23:23
expressed(2) 49:21 50:18
extend(3) 21:11 22:9 24:10
extension(3) 20:24 55:15 55:16
extent(9) 8:2 9:14 11:9 18:20 23:23 24:23 27:7
35:24 53:25
face(1) 34:24
facing(1) 33:24
fact(17) 9:23 10:19 14:1 14:22 15:17 17:6 27:25
30:6 32:1 32:9 33:4 34:12 35:3 38:24 42:5 44:5 48:4
factor(1) 15:14
factors(3) 18:6 42:9 43:25
facts(5) 24:7 32:17 33:9 39:7 40:5
factual(8) 13:13 15:1 32:14 34:13 34:17 34:21 39:25
45:25
fair(3) 24:20 34:20 38:20
fairness(1) 7:25
fall(7) 17:10 47:11
fall(1) 55:3
family(1) 20:7
far(4) 24:13 44:6 47:22 51:14
farr(1) 2:41
fear(1) 37:11
federal(3) 4:8 8:21
feeling(1) 53:24
feld(1) 2:5
few(5) 19:1 19:9 24:17 26:24 38:20
fight(1) 50:23
file(2) 24:5 26:7
filed(4) 7:15 11:3 14:23 34:16
files(1) 26:8
final(3) 14:14 31:3
find(3) 13:21 47:5 53:24
finding(1) 15:8

| Word | Page:Line |
| --- | --- |

fine(3) 13:1 28:21 30:2
first(15) 7:12 10:9 23:20 24:2 27:13 27:25 29:5 29:13 31:24 32:15 38:4 46:11 53:15 53:23 54:12

flows(1) 40:20
focused(1) 16:6
folks(1) 30:10
follow(1) 35:23
followed(1) 53:18
following(1) 36:20
follows(1) 38:23
footnote(2) 10:18 50:18
for(127) 1:2 1:22 2:4 2:17 2:31 2:36 2:45 3:4 3:14 3:19 3:24 3:29 3:35 3:40 3:47 4:4 4:9 4:18 4:23 4:27 4:32 4:36 4:40 4:44 4:48 5:4 5:8 5:12 5:16 5:20 5:24 5:28 5:32 5:36 5:40 5:44 5:48 6:4 6:8 6:12 6:16 6:20 7:12 7:17 10:10 10:12 10:25 11:4 11:5 11:15 11:11 11:21 11:25 12:10 13:24 14:25 14:14 15:15 18:11 18:23 19:5 20:17 22:11 23:4 24:5 24:14 25:7 25:13 25:17 25:19 26:3 26:23 27:8 28:2 29:3 29:4 29:6 30:15 30:25 31:21 32:14 32:23 33:20 33:21 34:12 35:3 36:20 37:7 37:12 37:25 38:2 38:2 38:10 38:18 39:1 39:3 40:1 40:17 40:23 41:3 41:7 42:6 43:6 44:3 44:21 45:2 45:15 45:32 45:72 46:10 46:10 46:25 46:16 47:17 47:17 47:25 47:25 55:23

forced(1) 52:16
foreclosed(1) 40:6
foregoing(1) 56:19
foresee(1) 20:16
foreseen(1) 20:10
formally(1) 32:11
former(1) 3:29
forthright(1) 42:5
forward(10) 7:25 18:8 18:9 18:10 32:24 33:2 47:9 48:19 49:3 49:4
foundation(1) 44:24
four(1) 34:24
framed(4) 17:5 35:14 44:15 47:25
framing(1) 47:25
frankly(3) 17:14 19:12 47:8
fred(2) 2:6 15:24
free(2) 52:17 54:6
freedom(1) 12:14
friday(2) 7:1 10:15
frivolous(1) 13:20
from(34) 7:23 12:21 16:21 17:5 18:14 19:25 20:5 20:22 21:13 21:22 21:24 22:6 22:18 22:23 23:19 23:24 26:22 26:22 28:17 29:10 37:13 38:13 40:14 44:1 45:9 45:25 47:16 48:7 48:17 50:11 50:23 51:4 51:9 56:13 56:20
front(3) 21:4 35:10 36:2
fully(2) 12:17 52:18
fulsome(1) 12:19
function(1) 23:19
fundamental(1) 41:1
fundamentally(1) 49:7
further(6) 13:6 27:8 28:3 32:13 33:9 45:7
future(4) 11:17 11:22 12:4 17:13
gabriel(1) 21:2
gallagher(1) 2:41
gave(1) 21:5
general(1) 15:6
generally(3) 31:6 35:11 45:14
get(15) 14:15 17:8 23:9 28:8 28:15 30:14 37:24 41:11 41:13 41:18 47:20 49:10 50:10 50:23 56:4

ginger(1) 1:31
give(5) 12:19 19:8 24:15 35:9 55:7
given(4) 39:12 47:23 53:17 53:20
giving(1) 37:4
glanis(1) 5:45
goal(1) 19:23
goes(2) 14:3 33:1
going(34) 18:10 18:25 20:11 23:18 23:21 24:10 25:2 25:13 25:18 25:19 26:14 26:19 26:20 26:24 26:25 27:7 28:16 31:10 32:1 35:12 37:2 38:1 41:11 41:14 41:20 47:15 47:22 48:25 51:6 51:11 51:20 52:4 52:12
gone(1) 7:24
good(5) 7:2 20:19 47:10 47:11 56:12
goodmans(1) 2:32
got(1) 30:8
gottlieb(2) 1:27 4:20
grace(2) 9:11 9:24
great(3) 18:25 56:7
gross(3) 1:18 7:3 12:23
group(4) 2:46 5:48 15:8 15:15
growing(3) 37:6 38:9 43:2
grows(1) 43:4
growth(1) 43:6
gudyer(1) 22:25
guess(2) 20:10 28:23
guidance(4) 27:21 37:13 37:24 48:18
gump(1) 2:5

guyder(31) 2:21 16:21 16:21 16:23 16:24 17:1 18:3 22:20 22:22 22:23 23:6 23:10 32:19 34:9 34:10 34:23 38:13 38:13 38:16 39:23 41:24 41:25 42:1 44:10 44:12 45:16 47:19 47:21 47:21 52:24

had(4) 35:7 16:7 19:7 24:10 10:17 10:18 10:19 10:25 11:1 14:9 14:19 15:1 16:6 18:7 18:9 19:3 19:3 20:10 21:5 25:25 26:1 26:5 29:4 29:18 29:23 31:16 32:8 32:10 35:16 36:2 45:23 46:6 46:8 46:9 46:17 55:11

hadley(1) 3:41
hain(1) 5:48
hamilton(1) 1:27
hand(3) 19:15 49:24 50:1
happen(4) 9:8 25:12 27:11 30:2
happens(2) 34:1 54:6
happy(1) 8:16
hard(1) 42:5
harris(1) 5:8
harrisburg(1) 1:35
has(30) 8:18 9:2 9:15 9:16 10:7 10:13 13:25 15:17 15:18 16:13 20:14 23:1 24:3 24:22 25:15 29:5 31:2 32:9 36:11 38:19 39:10 39:24 41:21 43:18 44:25 45:6 45:25 46:5 52:1 55:8
hasn't(1) 51:10
hate(2) 42:20 47:20
hauer(1) 2:5
have(98) 7:9 7:24 8:1 8:5 8:7 8:20 9:1 9:20 11:10 11:14 11:19 11:20 13:18 13:21 14:12 15:1 15:19 16:2 18:22 19:2 19:10 19:20 19:25 20:6 20:16 20:20 20:21 21:3 21:15 21:20 22:6 22:10 23:10 23:14 23:20 23:22 24:17 25:9 25:10 25:13 26:14 26:21 27:24 28:4 28:17 28:24 29:13 29:21 30:3 30:9 30:18 30:24 31:11 31:13 31:14 31:15 31:16 32:3 32:12 32:16 33:4 33:6 34:6 34:16 35:3 35:16 36:6 38:17 39:11 41:1 44:4 46:10 46:14 47:11 47:13 48:5 48:16 48:16 49:2 49:3 49:6 49:11 49:16 49:24 50:6 50:10 50:15 50:17 50:18 51:15 51:22 53:17 53:21 53:23 54:11 55:1 55:8 55:17 56:16

head(2) 41:21 46:20
headed(1) 28:25
hear(13) 8:14 12:21 21:24 22:18 25:21 28:17 37:20 44:1 44:8 51:9 52:9 52:15 56:13
heard(6) 7:14 12:22 19:20 29:16 46:13 50:10
hearing(35) 10:15 14:13 18:15 19:7 24:14 24:18 25:19 26:8 26:10 26:1 26:21 27:6 27:20 27:25 28:10 30:7 31:11 31:12 31:25 33:7 33:7 38:6 40:17 49:4 49:10 49:17 51:10 51:18 53:19 53:25 54:10 54:18 54:21 55:11 55:17 56:16
heat(1) 53:6
helpful(6) 16:11 18:16 18:17 27:24 30:5 54:19
here(24) 7:11 11:7 11:8 15:5 15:13 17:1 18:4 18:12 18:25 19:1 22:17 23:1 35:1 39:14 39:24 42:3 44:16 45:6 45:17 46:5 47:23 47:24 52:7 56:8
here's(2) 25:12 31:8
herring(1) 36:22
hiatus(6) 20:12 53:18 53:23 54:1 54:2 54:20
highest(1) 50:14
his(3) 23:6 29:6 32:20
hoc(1) 2:45
hodaran(8) 2:6 12:25 15:24 15:24 15:25 16:1 16:19 17:14
hoeffner(1) 3:26
hogan(1) 4:5
honor(102) 8:10 8:13 8:16 8:19 8:22 9:2 9:7 9:7 9:15 9:18 9:19 10:4 10:7 10:10 10:11 11:4 11:24 12:6 12:17 12:25 13:7 15:24 16:21 17:2 17:25 19:18 19:10 20:9 21:21 21:25 21:16 22:1 22:20 22:22 23:1 27:15 28:1 28:18 28:21 29:17 31:20 32:8 33:16 34:9 34:18 35:5 35:8 35:9 35:11 35:12 35:17 36:1 37:11 37:14 38:13 39:5 39:10 39:21 40:10 40:11 40:21 41:24 42:18 42:21 43:5 44:2 44:10 45:17 46:3 46:12 46:16 46:17 47:24 48:12 48:18 49:8 49:17 50:19 51:1 51:4 54:11 55:4 55:15 55:18 55:22 55:25 56:1 56:10 56:11 56:14
honorable(1) 1:18
honor's(13) 22:2 27:17 27:18 27:20 28:6 28:22 29:10 30:17 31:5 48:18 48:23 50:14 55:25
hope(2) 32:4 34:4
hopefully(3) 28:2 30:1 33:18
hours(1) 26:24
how(15) 12:12 12:16 23:10 23:19 32:17 35:12 37:3 37:4 39:19 40:9 41:12 43:13 52:19 54:18 54:25
however(1) 11:19
hubbard(1) 3:10
huberty(1) 3:11
hughes(1) 3:10
idea(6) 20:13 29:10 30:17 39:5 47:12 50:16
identified(5) 10:19 35:19 36:7 40:13 40:21
identify(3) 26:9 51:16 51:21

immediate(1) 3:22
immediately(1) 26:3
immune(1) 47:16
impact(1) 44:17
impacted(1) 20:3
implausible(1) 42:13
implicate(1) 25:9
implicated(1) 32:21
important(4) 7:8 22:3 41:9 46:23
impression(1) 52:23
impressions(1) 53:9
inadequate(1) 29:6
inappropriate(2) 26:5 50:22
inasmuch(1) 45:22
inc(3) 4:23 5:24 5:36
inch(2) 46:16 46:17
inclination(2) 27:17 28:12
include(1) 41:11
included(2) 9:13 23:7
inconsistent(1) 53:4
indentures(1) 53:4
indicating(1) 34:18
indication(1) 10:2
indiscernible(38) 14:13 49:11 49:20
inevitable(1) 9:8
information(5) 9:3 10:7 41:12 41:14 41:22
ingersoll(1) 2:26
inherent(1) 39:12
initial(4) 14:13 15:14 33:10 38:10
injury(1) 52:3
inquiry(1) 48:7
insist(1) 26:20
instance(1) 31:1
instead(1) 37:18
instrument(1) 27:11
intend(2) 33:3 51:4
intended(3) 14:23 27:24 34:12
intent(1) 27:19
intention(3) 19:21 34:16 35:4
interest(30) 7:13 7:17 7:25 8:3 10:2 10:17 11:11 13:17 14:11 14:15 14:19 15:12 24:21 32:5 36:5 36:16 36:20 36:24 38:12 38:18 38:22 41:3 42:6 42:7 42:24 44:16 45:13 45:24 49:13 52:10
interested(18) 4:40 4:44 4:48 5:4 5:12 5:16 5:20 5:24 5:28 5:32 5:36 5:40 5:44 5:48 6:4 6:8 6:12 6:20
interesting(1) 7:8
interests(1) 15:9
internally(2) 53:22 54:12
interrupted(1) 30:8
intervening(1) 44:16
into(19) 7:23 14:15 17:8 18:21 19:17 24:12 24:23 25:3 33:9 33:12 37:3 39:4 39:10 39:18 42:2 47:20 48:2 51:6
introduce(1) 26:11
introduced(1) 43:20
introduces(1) 43:24
introduction(1) 8:7
intrusive(1) 26:16
invading(1) 31:6
involve(1) 30:3
involves(2) 52:2 52:23
irrelevant(2) 37:8 47:7
isn't(4) 32:24 43:8 43:12 49:13
issue(82) 7:8 7:13 7:17 8:17 8:23 9:1 9:3 9:10 9:22 10:8 10:10 10:16 10:24 11:21 12:8 12:9 13:9 13:23 14:1 14:7 14:9 14:11 15:15 18:5 18:8 18:9 18:11 18:18 20:5 20:17 22:10 22:21 25:5 25:10 31:23 36:23 37:10 37:21 37:23 37:25 38:7 38:9 38:12 39:14 39:19 40:11 40:15 40:18 40:25 41:5 41:6 41:20 43:1 43:7 43:15 43:16 43:17 43:23 44:3 44:5 45:17 51:24 52:1 54:25 55:8
issues(42) 7:24 9:17 9:17 10:19 11:6 12:12 15:22 17:4 17:11 17:12 17:12 17:13 17:16 17:18 19:24 22:6 22:6 22:8 22:9 32:3 32:24 32:2 32:19 32:20 33:3 33:20 34:5 34:13 34:14 34:17 35:21 40:2 42:15 43:21 44:14 44:17 50:21 51:1 51:2 53:1
it's(89) 7:3 7:9 7:10 9:7 9:7 9:8 11:3 11:4 12:9 13:13 13:14 14:16 15:11 16:11 16:14 17:5 17:19 18:2 18:8 18:25 19:18 20:9 20:13 20:17 20:23 22:10 23:14 23:23 25:1 26:9 26:14 26:24 27:14 27:16 29:4 30:20 32:18 33:18 34:21 35:19 37:8 37:23 37:25 38:20 38:23 38:24 39:4 40:2 40:19 40:24 40:25 41:4 41:6 41:11 41:20 43:5 43:8 43:12 43:14 43:15 43:17 43:23 43:24 44:2 44:3 45:6 46:3 46:19 47:23 47:25 47:25 47:8 48:21 49:2 49:9 50:1 51:1 51:12 51:18 52:2 52:5 52:17 53:3 53:13 53:15
itself(1) 34:3
i'll(7) 7:12 16:2 21:24 22:18 23:9 38:4 56:13

i'm(26) 7:5 8:16 10:12 18:2 18:24 19:15 21:19 23:14 23:18 23:20 23:24 24:3 25:10 26:19 26:20 26:21 26:25 30:6 34:5 36:8 38:6 42:3 52:12 52:16 53:7 54:25
i've(2) 7:7 23:17
jack(1) 6:9
jacob(4) 2:23 19:19 27:16 48:15
jacobs(1) 2:14
jacques(1) 3:37
jaime(1) 3:6
james(2) 3:16 4:14
jefferies(1) 4:44
john(3) 3:7 4:24 5:13
johnson(1) 2:10
joint(2) 3:4 4:18
jointly(1) 1:5
jon(1) 4:49
jones(2) 2:46 5:20
joseph(2) 2:19 2:33
judge(5) 1:18 1:19 7:3 9:13 12:23
judgment(2) 8:4 8:21
july(1) 11:13
june(2) 36:8 42:25
just(54) 7:23 11:2 13:6 14:24 15:13 15:19 16:2 17:1 17:19 19:15 19:25 20:21 21:7 21:17 21:21 22:8 22:22 23:6 23:11 23:13 24:13 31:2 31:5 31:8 31:21 31:22 32:22 33:7 33:23 34:10 34:23 35:9 36:9 39:7 40:10 41:19 42:1 43:14 43:23 44:5 46:4 46:17 47:17 47:22 50:9 50:22 51:5 52:21 52:22 53:5 54:12 55:10 55:11 55:23
justiciability(1) 7:21
justiciable(1) 10:21
justin(2) 2:38 5:17
kahn(1) 2:8
kamunting(1) 6:8
kathleen(1) 2:28
katten(1) 3:19
keane(1) 2:47
keep(3) 19:21 34:6 51:15
kelly(1) 56:25
kenneth(1) 2:20
kent(1) 5:37
kevin(2) 1:18 5:9
key(3) 40:21 42:3 42:8
kimberly(1) 5:45
kinburn(1) 3:23
klyman(1) 5:49
know(53) 10:22 12:18 13:19 14:20 17:5 17:14 17:15 17:20 18:6 19:10 19:13 20:7 21:22 22:7 22:15 23:6 23:12 23:15 26:5 26:14 29:4 30:11 36:7 38:6 38:16 38:21 39:22 39:24 40:4 42:15 44:20 45:18 45:24 46:13 50:4 50:17 50:25 51:18 51:25 52:4 52:14 54:13
koskie(1) 3:31
landed(1) 31:4
large(2) 32:4 40:15
largely(1) 46:2
larger(1) 33:24
last(8) 9:18 10:16 15:12 17:15 19:1 22:2 38:20 40:23 53:1 53:9
later(9) 19:7 22:12 24:11 32:12 35:18 37:10 50:12 53:1 53:9
law(4) 4:9 7:4 13:16 39:7
lawsuits(1) 7:12
lawyers(1) 22:16
lax(1) 4:19
lead(1) 37:11
least(7) 8:1 26:24 31:14 47:3 55:5 55:7 56:2
leave(6) 8:11 27:2 33:20 40:23 41:7 53:5
leaves(1) 39:8
leaving(1) 45:3
leblanc(36) 3:43 8:10 8:10 8:12 8:13 8:16 12:21 13:6 13:9 13:22 20:25 21:2 21:18 22:1 35:5 35:5 35:8 35:16 39:5 39:21 39:22 40:9 40:10 42:18 42:19 42:20 43:4 45:1 45:9 55:10 55:11 55:14 55:20 55:23 56:10
leblanc's(1) 42:4
left(2) 29:4 39:3
legal(28) 13:8 13:10 13:13 13:15 13:19 13:21 14:7 14:8 14:14 14:16 14:22 14:24 14:25 15:4 15:8 15:15 15:21 32:19 32:23 33:3 34:14 34:21 35:4 40:2 44:15 46:1 46:25 52:22
legally(2) 18:8 18:9
length(2) 24:19 32:17
less(5) 36:16 41:3 43:22 44:3 44:6 44:7
let(9) 8:18 8:10 8:10 8:12 8:13 8:16 12:21 13:6 23:17 28:16 50:11 50:22 54:5
let's(3) 43:13 50:12 51:13
levels(1) 9:23
level(1) 9:23
light(1) 7:21
like(11) 8:7 11:7 12:22 16:4 17:17 19:14 21:23 25:16 42:8 53:22 55:21

| Word | Page:Line |
|---|---|
| likelihood(5) 8:20 9:5 9:16 9:22 13:8 | |
| likely(4) 9:18 42:10 42:12 45:19 | |
| limit(3) 34:13 34:17 35:4 | |
| limitation(1) 11:20 | |
| limited(3) 17:20 26:13 39:6 | |
| limits(1) 40:4 | |
| linchpin(1) 41:16 | |
| lion(1) 5:16 | |
| lisa(12) 1:28 12:23 13:1 13:3 18:2 19:18 20:9 28:18 46:3 50:8 53:13 53:15 | |
| listen(1) 13:20 | |
| lisus(1) 4:19 | |
| litigate(2) 14:10 21:21 | |
| litigated(2) 13:24 13:24 | |
| little(7) 17:2 19:7 23:19 27:1 31:9 46:11 47:22 | |
| live(2) 13:10 10:23 | |
| lives(1) 18:21 | |
| llc(3) 3:36 5:8 5:48 | |
| llp(12) 1:22 2:32 2:41 3:10 3:19 3:24 3:31 3:41 4:5 4:14 4:19 4:40 | |
| loathe(1) 42:2 | |
| logjams(1) 46:24 | |
| long(6) 8:6 8:17 13:24 23:15 33:25 54:18 | |
| longer(3) 11:3 41:4 56:1 | |
| look(2) 48:11 56:5 | |
| looking(2) 21:20 55:11 | |
| lot(7) 21:14 29:1 31:19 41:19 46:4 54:4 55:1 | |
| loveihs(1) 4:5 | |
| lowenthal(1) 4:11 | |
| lower(1) 43:9 | |
| mace(1) 1:31 | |
| macquarie(1) 5:24 | |
| made(13) 13:22 18:7 20:24 31:1 32:8 33:8 35:24 39:24 46:6 46:24 49:8 53:2 | |
| magnitude(1) 39:12 | |
| main(1) 33:5 | |
| make(26) 13:15 14:14 14:18 14:23 17:19 18:19 21:8 21:14 21:24 25:13 25:17 27:5 27:10 27:20 30:5 33:20 39:6 41:6 41:22 47:1 52:16 53:20 54:4 54:5 54:10 | |
| maker(1) 9:19 | |
| makes(3) 31:19 48:24 49:9 | |
| making(1) 53:8 | |
| management(6) 3:15 5:44 6:12 6:16 6:20 42:16 | |
| manner(1) 30:20 | |
| many(1) 17:16 | |
| market(1) 1:10 | |
| marshalling(1) 33:8 | |
| mary(1) 2:27 | |
| mason(1) 6:5 | |
| matches(1) 34:1 | |
| matter(10) 9:25 19:10 19:13 24:4 26:20 30:20 32:9 42:16 47:15 56:21 | |
| matters(4) 11:20 23:25 33:1 53:6 | |
| matthew(3) 4:20 4:37 6:21 | |
| matz(1) 3:42 | |
| may(14) 16:4 18:19 20:3 24:7 25:5 26:6 33:4 38:14 39:9 48:6 50:3 51:15 52:15 52:16 | |
| maybe(5) 17:2 20:10 33:18 33:20 34:3 | |
| mcclam(1) 7:4 | |
| mccloy(1) 3:41 | |
| mean(3) 31:20 34:10 47:22 | |
| meaning(1) 31:2 | |
| meaningful(2) 12:2 27:20 | |
| means(5) 36:12 39:1 41:4 44:1 45:2 54:20 | |
| mediation(1) 16:25 | |
| meet-and-confer(1) 30:7 | |
| mellon(1) 3:48 | |
| melnik(1) 3:25 | |
| merit(1) 46:14 | |
| merits(15) 8:2 8:6 17:9 18:4 24:23 38:25 39:4 39:18 42:9 42:14 44:20 45:8 48:8 49:12 49:18 | |
| michael(2) 3:49 4:41 | |
| mid-october(1) 19:8 | |
| middle(2) 30:7 38:1 | |
| might(8) 9:8 30:22 31:13 43:10 46:6 46:9 50:17 | |
| milbank(4) 3:41 8:11 21:3 35:6 | |
| miller(2) 4:15 7:4 | |
| million(13) 11:14 11:15 38:24 41:4 43:2 43:10 43:23 44:4 45:3 48:3 52:5 52:6 52:12 | |
| mind(8) 26:6 26:14 28:24 29:18 34:6 38:5 40:20 | |
| minimize(1) 50:1 | |
| minsky(1) 3:31 | |
| mix(1) 14:3 | |
| monday(2) 23:4 55:25 | |

| Word | Page:Line |
|---|---|
| monitor(59) 2:18 2:31 7:6 10:15 10:23 11:3 14:9 14:23 16:24 20:6 24:3 24:5 24:9 25:17 25:24 26:7 26:9 26:13 26:23 27:13 29:20 29:20 29:24 30:3 31:3 31:10 31:15 32:9 32:11 33:2 33:22 36:7 36:9 37:19 38:8 42:4 42:21 43:12 44:4 44:6 45:12 46:7 46:9 46:15 46:20 47:2 47:6 47:12 48:16 50:3 50:16 50:24 51:9 51:10 51:15 51:22 52:8 52:9 52:17 | |
| monitor's(5) 7:9 27:14 34:6 40:13 47:7 | |
| months(1) 44:7 | |
| more(12) 10:4 11:15 15:8 22:23 24:2 33:4 33:19 33:19 37:20 41:9 54:10 55:21 | |
| morning(1) 7:2 | |
| morris(2) 1:22 4:14 | |
| most(4) 9:10 29:11 48:24 49:9 | |
| motion(13) 7:6 7:9 7:15 7:22 8:8 9:4 10:5 10:5 18:15 27:14 27:19 48:21 49:7 | |
| motion's(1) 48:22 | |
| movant(1) 48:22 | |
| movants(2) 17:16 | |
| movement(1) 27:7 | |
| moving(1) 20:1 | |
| much(2) 25:1 37:4 | |
| muchin(1) 3:19 | |
| mui(1) 6:9 | |
| multiple(2) 47:4 49:22 | |
| murphy(1) 2:28 | |
| namely(1) 29:19 | |
| narrow(1) 15:8 | |
| nature(5) 13:13 13:13 14:25 32:15 49:1 | |
| necessarily(6) 11:23 13:11 36:12 38:23 41:4 44:19 | |
| necessary(5) 23:25 25:22 28:3 28:10 46:22 | |
| necessity(1) 50:1 | |
| need(16) 7:20 9:3 10:7 21:1 21:6 21:7 21:7 22:5 28:2 35:3 36:2 41:22 50:2 50:4 53:2 56:4 | |
| needs(2) 19:11 24:6 | |
| negotiations(2) 12:14 24:20 25:6 | |
| networks(4) 1:7 4:4 4:23 4:23 | |
| new(8) 3:47 22:5 22:5 32:18 33:3 33:7 42:24 42:25 | |
| nichols(1) 1:22 | |
| nights(1) 20:19 | |
| nnec(1) 15:10 | |
| nobody(1) 19:5 | |
| non-party(1) 6:16 | |
| nonetheless(1) 41:14 | |
| normally(1) 23:19 | |
| nortel(6) 1:7 3:30 3:35 4:4 4:23 4:23 | |
| not(81) 7:17 7:19 8:20 9:6 9:7 9:7 9:18 10:10 10:12 10:21 10:22 10:25 11:1 11:5 11:25 11:25 12:7 12:9 15:1 15:7 15:11 15:11 16:8 17:20 18:4 18:12 19:22 21:10 21:19 23:14 23:25 25:10 25:16 26:5 26:24 26:25 27:3 27:9 30:1 32:11 32:20 33:6 33:23 33:7 34:12 34:16 34:18 35:23 36:1 36:22 37:9 38:6 38:7 40:15 40:19 41:11 41:17 42:3 42:4 42:15 42:23 42:24 43:8 43:12 43:20 44:22 45:12 45:14 45:21 46:19 47:3 48:17 49:5 49:22 50:19 51:18 52:1 52:21 52:22 53:7 54:7 | |
| note(1) 34:10 | |
| noted(2) 17:14 20:13 | |
| nothing(5) 43:18 43:19 52:18 52:20 52:20 | |
| notice(3) 10:18 15:19 18:22 | |
| now(21) 8:6 8:25 10:9 19:8 19:9 23:4 23:17 26:6 27:12 32:2 34:25 36:25 37:14 43:22 44:17 45:12 47:1 47:12 51:13 52:9 54:5 | |
| number(7) 11:13 46:22 46:22 46:23 47:5 47:5 50:6 | |
| numbers(1) 43:9 | |
| numerous(1) 34:13 | |
| objection(8) 19:24 23:3 24:4 24:6 24:11 24:15 26:7 26:9 32:10 32:20 32:23 33:14 34:7 34:11 34:18 35:2 36:10 55:25 | |
| objections(9) 25:3 32:13 32:14 32:16 32:22 33:3 33:10 34:13 34:13 | |
| obligation(2) 13:7 35:13 | |
| observations(2) 24:17 | |
| observe(1) 54:14 | |
| obtain(2) 26:2 51:5 | |
| obvious(2) 33:4 35:3 | |
| obviously(18) 7:7 8:17 9:9 17:5 18:3 18:7 20:20 21:17 22:3 31:19 32:4 34:10 34:20 38:16 39:23 50:2 56:4 | |
| occurred(2) 9:12 32:18 | |
| occurrence(1) 11:17 11:22 12:3 37:5 | |
| october(5) 23:12 23:13 49:17 54:6 55:17 | |
| off(8) 36:9 37:22 40:4 43:5 43:6 43:17 44:4 52:6 | |
| off-the-cuff(1) 52:22 | |
| offense(1) 23:24 | |
| official(2) 2:4 16:1 | |
| often(2) 38:5 49:23 | |
| okay(5) 8:14 23:23 30:4 51:8 55:9 | |
| once(2) 34:25 55:4 | |

| Word | Page:Line |
|---|---|
| one(40) 8:4 9:15 9:20 10:19 10:21 12:17 13:14 13:22 14:6 14:13 15:3 15:10 16:2 16:4 16:5 16:14 17:1 18:6 18:18 20:11 21:5 22:3 22:22 23:1 25:6 25:23 26:19 30:5 30:8 31:21 32:16 35:17 46:5 46:6 46:22 50:10 50:19 53:8 54:5 56:7 | |
| one-day(1) 54:9 | |
| one-month(2) 55:15 55:16 | |
| only(8) 16:9 19:24 22:1 27:21 33:17 41:18 49:19 54:21 | |
| opinion(1) 7:19 | |
| opinions(1) 11:24 | |
| opportunity(13) 19:3 21:15 22:17 23:22 29:21 30:3 30:14 31:16 32:13 34:20 40:1 49:6 55:8 | |
| opposed(3) 12:8 14:7 15:16 | |
| opposition(2) 19:25 20:6 | |
| option(1) 21:12 | |
| options(1) 21:5 | |
| order(11) 8:19 24:5 24:24 25:16 28:7 28:12 28:16 33:24 35:9 46:18 49:9 | |
| ordering(2) 27:18 50:24 | |
| orderly(1) 20:20 | |
| original(1) 15:21 | |
| originally(1) 14:9 | |
| other(19) 7:19 8:17 9:20 13:25 14:17 14:21 15:6 21:19 26:19 28:7 30:1 30:14 31:22 45:20 48:16 49:19 51:14 53:23 56:3 | |
| others(1) 49:20 | |
| otherwise(3) 43:19 44:1 45:9 | |
| ought(1) 39:6 | |
| our(36) 7:3 14:13 17:5 17:14 17:19 18:10 19:23 19:25 27:19 30:1 32:12 32:14 32:21 33:5 33:17 33:20 34:11 34:13 34:16 34:17 35:1 35:2 35:4 36:21 39:6 40:14 41:11 41:13 47:13 47:14 48:7 49:4 50:11 52:25 55:5 55:14 | |
| ourselves(2) 54:17 55:3 | |
| out(9) 10:13 14:2 17:9 19:15 23:25 33:18 33:23 47:5 55:5 55:16 | |
| outcome(7) 37:2 37:16 37:16 37:18 40:19 44:21 46:18 48:5 | |
| outcomes(7) 36:14 41:13 42:8 42:10 42:11 43:13 | |
| outrageous(1) 47:17 | |
| outset(1) 8:17 | |
| outside(2) 20:14 21:9 | |
| over(7) 15:1 15:2 38:20 39:9 40:22 46:9 50:23 | |
| overall(1) 28:22 | |
| overbroad(1) 25:2 | |
| overlaps(1) 55:1 | |
| overly(1) 26:16 | |
| oversee(1) 27:4 | |
| overy(6) 2:18 16:22 19:20 22:23 27:16 38:14 | |
| own(3) 14:18 49:4 55:5 | |
| o'connor(1) 2:42 | |
| o'sullivan(1) 4:19 | |
| p.m(2) 1:14 56:16 | |
| pachulski(1) 2:46 | |
| page(1) 10:18 | |
| paged(2) 52:10 52:18 | |
| panel(1) 9:13 | |
| papers(8) 7:7 7:16 23:18 26:17 35:20 36:21 40:22 43:11 | |
| par4tners(1) 5:16 | |
| paragraph(1) 40:12 | |
| part(4) 18:10 40:15 41:8 41:8 | |
| participate(1) 26:25 | |
| particular(2) 14:8 30:1 | |
| parties(52) 7:10 7:14 7:16 9:23 10:3 11:5 11:6 11:16 12:2 12:13 12:12 12:10 12:14 15:8 16:3 19:9 19:14 20:4 20:16 20:21 20:24 24:18 24:24 25:13 25:17 26:2 26:11 26:16 26:17 26:22 27:12 28:5 29:1 32:12 35:20 36:1 36:19 37:1 37:23 38:5 38:17 39:23 40:1 40:7 40:22 40:24 47:5 51:16 51:20 52:3 54:20 55:8 | |
| parties'(2) 8:2 40:12 | |
| partners(1) 5:40 | |
| party(20) 4:36 4:40 4:44 4:48 5:4 5:12 5:16 5:20 5:24 5:28 5:32 5:36 5:40 5:44 5:48 6:4 6:8 6:12 6:20 51:11 | |
| pasquarello(1) 2:33 | |
| pass(1) 4:6:7 | |
| path(1) 47:23 | |
| patterson(1) 4:10 | |
| pause(1) 20:18 | |
| pay(3) 36:15 42:23 43:9 | |
| payment(2) 44:18 45:13 | |
| peg(1) 5:12 | |
| pencils-down(1) 21:16 | |
| pending(3) 7:6 23:3 24:25 | |
| pennsylvania(1) 1:35 | |
| pension(2) 2:36 4:5 | |
| pensyl(1) 2:22 | |
| people(9) 13:17 13:25 14:3 15:16 22:16 30:15 46:4 53:24 55:2 | |

| Word | Page:Line |
|---|---|
| peoples'(1) 13:12 | |
| percent(2) 10:1 11:12 | |
| perfectly(1) 16:15 | |
| perhaps(6) 19:4 24:1 25:14 29:25 31:9 52:8 | |
| period(1) 21:7 | |
| permitted(1) 25:24 | |
| person(1) 30:1 | |
| personal(1) 52:3 | |
| persons(2) 51:16 51:17 | |
| perspective(7) 17:5 19:25 21:13 29:10 45:25 46:1 | |
| persuade(1) 48:22 | |
| persuasive(1) 7:17 | |
| peter(1) 2:47 | |
| petition(2) 15:9 38:12 | |
| phone(3) 46:12 49:12 55:2 | |
| pinckney(1) 5:8 | |
| piper(1) 3:24 | |
| place(6) 27:9 27:10 28:7 31:6 51:22 55:16 | |
| placed(1) 52:11 | |
| places(1) 31:22 | |
| plan(2) 17:12 32:20 | |
| plans(1) 17:13 | |
| play(3) 7:23 24:23 25:3 | |
| plc(1) 6:4 | |
| pleased(1) 21:9 | |
| plus(1) 36:5 | |
| point(26) 4:36 9:19 11:16 14:5 16:2 16:3 17:1 21:23 45:6 46:5 46:25 47:9 49:19 52:25 53:2 53:7 53:17 | |
| pointed(1) 10:13 | |
| position(5) 13:19 30:11 42:21 43:11 45:12 | |
| positions(1) 14:22 | |
| positive(1) 20:17 | |
| possibility(2) 23:12 39:11 | |
| possible(4) 43:13 52:1 52:2 52:18 | |
| possibly(1) 55:4 | |
| post(2) 15:8 38:11 | |
| post-petition(16) 11:11 13:17 14:11 14:15 14:19 15:12 36:5 36:15 36:20 36:24 38:11 38:12 38:18 41:3 42:6 42:24 | |
| postpone(1) 19:6 | |
| potential(10) 23:13 32:19 38:10 41:13 45:13 45:15 52:3 52:5 52:10 53:19 | |
| potentially(4) 14:17 14:21 29:14 54:25 | |
| ppearances(1) 2:1 | |
| pre-judge(1) 39:17 | |
| pre-judging(1) 39:13 | |
| pre-petition(2) 16:7 38:11 | |
| preface(1) 53:17 | |
| preliminary(4) 23:21 24:4 34:11 35:2 36:10 46:10 | |
| premature(1) 46:13 | |
| prepared(3) 7:5 18:24 33:16 | |
| present(3) 29:19 31:13 51:6 | |
| presented(11) 8:24 10:17 11:2 15:22 17:18 17:22 31:14 40:2 43:15 43:17 44:2 | |
| presently(3) 18:16 19:16 24:7 | |
| pressure(2) 32:10 50:17 | |
| prevailed(1) 45:23 | |
| previously(2) 32:10 50:17 | |
| price(1) 3:48 | |
| principal(1) 16:7 | |
| prior(2) 19:11 51:23 | |
| privilege(1) 25:4 | |
| probability(2) 8:6 24:22 | |
| probably(6) 19:12 20:11 25:8 40:20 54:20 56:5 | |
| problem(2) 34:6 48:16 | |
| problematic(1) 30:15 | |
| proceed(5) 7:24 48:17 | |
| proceed(6) 7:6 19:16 20:19 24:2 33:17 44:21 | |
| proceeding(2) 35:22 37:2 | |
| proceedings(4) 1:17 1:40 38:19 56:21 | |
| proceeds(1) 7:20 | |
| process(8) 28:10 30:7 39:24 44:24 48:1 49:10 49:16 49:25 | |
| produce(3) 35:21 29:1 51:20 | |
| produced(4) 1:41 29:22 29:23 50:3 | |
| product(2) 25:4 46:16 | |
| profession(1) 18:4 | |
| professorial(1) 18:17 | |
| proffer(1) 25:20 | |
| proffers(1) 25:19 | |
| progress(1) 27:3 | |
| prolong(1) 50:9 | |
| promptly(1) 26:3 | |
| proposal(5) 20:7 27:23 39:24 49:8 50:5 | |
| proposed(10) 14:7 20:4 23:1 23:8 27:17 28:2 28:12 33:12 44:17 49:17 | |
| propounded(1) 22:9 | |
| protection(1) 40:9 | |
| protective(1) 28:7 | |
| provide(5) 7:18 24:7 27:1 30:11 33:14 | |
| provided(3) 31:13 34:11 | |
| provides(2) 15:5 40:1 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

providing(3) 31:10 32:25 33:13
proving(1) 24:19
provisions(1) 20:2
prudential(1) 16:15
public(1) 13:15
pulman(16) 2:23 19:19 19:19 20:10 20:13 27:15 27:16 28:14 29:5 47:18 47:20 48:12 48:15 48:15 50:11 51:15
pulman's(1) 28:23
pure(1) 44:15
purportedly(1) 15:15
purpose(1) 38:10
purposes(1) 29:6
pursuant(1) 8:24
put(12) 13:18 13:22 19:9 32:13 32:24 33:2 36:17 47:9 49:3 49:4 49:19 51:13 53:25

putting(1) 35:2
qgain(1) 26:4
question(26) 7:9 7:10 7:12 8:7 8:19 8:21 9:5 9:6 9:15 9:21 10:9 10:17 10:23 11:24 12:1 12:2 12:18 28:24 36:2 36:3 37:8 37:14 43:23 43:24 46:12 49:2
questioned(1) 10:13
questions(8) 7:11 8:18 9:16 23:2 31:16 41:14 44:15 44:23

quinn(1) 3:11
quite(3) 7:16 28:22 47:8
qureshi(1) 2:9
raise(7) 15:20 18:18 23:1 32:18 33:3 36:24 37:13
raised(13) 14:8 14:12 15:15 17:4 23:18 28:24 30:25 32:16 32:19 34:1 34:14 50:15 51:15

raises(1) 17:11
range(1) 19:8
rate(12) 8:3 8:4 8:4 8:4 8:21 8:22 10:1 10:2 36:6 36:24 42:7 44:15 45:23

rather(6) 3:7 33:12 35:25 36:23 49:11 49:15
ray(1) 4:24
re-depose(1) 30:14
re-litigate(1) 44:22
re-read(1) 52:13
re-serve(1) 32:11
reach(2) 11:17 18:10
reached(1) 11:8 30:22
reaching(1) 24:8
react(1) 42:3
read(3) 7:7 23:17 51:4
real(3) 13:15 42:10 43:9
really(18) 10:13 17:8 17:9 18:18 18:21 19:2 19:23 24:5 29:16 31:2 39:1 39:4 39:14 42:1 43:8 45:21 47:14 52:8
reason(2) 11:4 11:4
reasonable(2) 24:20 49:9
reasons(3) 7:19 10:21 14:20
rebecca(1) 3:21
receive(1) 42:12
received(1) 25:25
recently(1) 9:10
recognize(2) 19:9 22:16
recognizing(2) 9:18 13:23
recommend(1) 22:13
recommendation(1) 55:16
reconsidering(1) 24:1
record(2) 38:16 39:25
recorded(1) 1:40
recording(1) 1:40 56:20
records(1) 13:15
recoveries(5) 11:11 37:3 40:20 41:12 41:18
recuperate(1) 19:9
red(1) 36:21
reduce(2) 11:14 50:6
reduces(1) 43:5
reducing(1) 41:3
reed(1) 3:10
reflect(2) 41:2 43:10
reflected(2) 32:20 45:1
reflects(2) 36:11 37:21
refusal(1) 26:4
refused(1) 26:4
regard(4) 23:3 39:24 40:6 48:13
regarding(2) 44:15 45:8
regiment(1) 4:32
regroup(1) 20:19
reila(1) 3:49
reject(2) 19:15 21:4
related(2) 7:11 30:21
relative(1) 45:18
relevance(2) 37:17 42:7
relevant(9) 10:4 10:4 28:1 35:21 38:25 39:7 40:19 44:19 48:7
relief(2) 14:10 51:4
relieving(1) 35:13
remain(4) 27:4 28:9 32:2 45:6
remains(1) 48:21
remarkably(1) 56:6

reorg(1) 5:36
replies(1) 32:13
reply(2) 46:8 50:18
reporter(2) 7:5 7:5
represent(1) 51:25
representative(1) 26:22
represented(1) 10:1
represents(2) 10:2 11:12
request(2) 25:7 25:24 34:12
requests(12) 10:6 25:23 25:16 33:19 33:24 33:24 35:14 35:23 35:24 36:10 36:18 46:6 46:10

require(2) 18:25 38:1
required(3) 9:3 10:8 50:13
requirements(1) 24:10
research(1) 5:36
reserve(2) 50:25 52:25
reserved(2) 15:7 50:22
residual(2) 44:18 45:4
resolution(1) 37:17
resolutions(1) 12:11
resolve(3) 12:12 39:20 56:3
resolved(4) 19:10 19:11 29:12 52:1
resourcing(2) 32:6 41:7
respect(9) 14:11 17:12 27:22 35:11 39:14 46:8 47:11 47:25 53:1

respective(3) 38:22 40:12
respectively(1) 33:22
respond(9) 8:17 23:22 24:25 34:20 35:13 40:14 48:25 50:9
responding(1) 50:5
responds(1) 33:13
response(2) 33:11 40:11
responses(2) 33:19 49:20
responsibility(1) 12:20
responsive(1) 12:18
rest(1) 20:20
restrained(1) 53:8
result(6) 24:19 39:3 40:3 45:10 45:15 45:15
results(1) 13:25
reverse(1) 8:19
right(22) 16:19 17:23 20:16 21:18 22:15 22:18 23:16 25:7 26:6 33:12 34:4 47:5 49:16 51:1 51:13 53:6 53:10 54:5 55:19 56:2 56:3 56:12
righteous(1) 16:15
righton(1) 3:36
rights(6) 13:12 14:17 14:19 14:25 15:7 52:25
ripe(9) 7:17 10:10 10:12 11:20 18:8 18:9 46:13 46:21 47:1

ripeness(1) 14:5
risk(1) 39:12
roadmap(1) 53:19
robert(1) 2:10
room(2) 29:4 48:17
rooney(1) 2:26
rosenman(1) 3:19
roughly(1) 21:23
round(5) 10:16 29:4 29:5 29:13 29:14
rule(3) 23:20 24:10 53:2
ruling(14) 14:14 14:14 14:16 14:24 14:24 15:1 15:4 23:21 23:22 32:6 36:20 50:14 52:16 52:22 53:7

rulings(2) 11:21 11:22
rummage(2) 47:4 47:13
ryan(1) 2:14
sacred(1) 31:6
said(15) 9:19 10:19 10:24 11:9 13:9 13:23 20:19 21:6 21:9 29:16 30:2 30:2 43:12 51:15 53:4

sale(1) 7:20
same(11) 7:15 7:23 12:4 16:16 17:16 30:15 48:16 48:17 49:22 51:2 55:15
sameer(1) 2:43
samis(1) 2:7
satisfaction(1) 56:8
satisfied(1) 24:3
say(21) 7:15 20:11 21:14 22:22 23:17 29:9 29:16 29:24 30:12 32:16 36:3 36:14 38:4 38:20 43:8 43:14 44:5 50:11 50:22 51:5 52:4

saying(9) 21:21 43:22 46:15 46:21 47:2 47:12 50:16 50:19 52:8
scenario(1) 45:4
scenarios(2) 42:13 45:19
schedule(6) 18:25 21:25 24:13 26:5 40:16 55:1
scheduled(5) 7:14 18:16 18:23 19:16 55:11
scheduling(3) 21:22 26:20 49:8
schuylkill(1) 1:34
schweitzer(32) 1:28 12:23 12:24 13:2 13:3 13:3 13:15 15:23 17:25 18:2 18:3 19:18 20:9 20:9 21:9 28:20 31:20 33:16 46:3 46:3 50:8 50:8 53:11 53:13 53:13 53:14 53:15 53:15 54:8 54:11 54:16 54:23

scope(10) 17:3 17:10 17:21 22:4 30:19 32:15 33:23 35:21 41:8 47:23
scott(1) 4:19
second(8) 8:19 14:5 29:4 29:14 47:15 50:4 53:24 54:19
see(3) 18:24 25:7 27:6
seek(2) 27:22 51:4
seeking(1) 37:3
seem(1) 16:4
seems(4) 17:21 34:18 41:16 42:13
seen(1) 46:5
select(2) 51:19 51:20
selinda(1) 3:25
sense(10) 21:14 23:14 29:11 31:19 33:20 48:24 49:9 53:20 54:5 54:10
sensible(1) 16:15
sent(1) 46:9
separate(1) 44:1
september(8) 18:23 19:16 19:21 20:1 20:15 49:16 55:12 55:12
seriously(1) 28:5
served(2) 15:17 15:18
service(2) 1:33 1:41
services(1) 1:33
set(4) 15:10 23:4 34:19 43:24
settle(13) 10:24 11:5 11:6 12:2 12:3 12:10 14:4 16:3 16:13 16:16 44:25 45:14 45:14
settled(7) 8:24 9:25 12:9 13:10 18:12 43:16 44:3
settlement(94) 7:15 7:22 7:22 8:1 8:5 8:9 8:25 9:12 10:14 11:8 13:11 14:6 15:3 15:11 15:17 15:17 15:18 15:21 16:5 16:8 16:18 17:3 17:4 17:6 17:9 17:11 17:16 17:19 17:22 18:10 18:15 19:7 19:23 20:2 20:4 20:14 20:21 24:4 24:19 25:6 25:8 25:9 25:21 25:24 26:18 26:21 26:23 27:5 27:7 27:8 28:4 29:6 29:9 30:19 31:1 31:3 31:7 31:12 32:24 33:15 34:14 36:11 37:7 37:9 38:23 39:1 39:15 40:7 41:2 42:9 42:14 43:5 43:11 44:17 44:20 44:22 45:2 45:8 45:15 46:19 47:1 47:9 48:8 49:12 49:13 49:18 51:10 51:17 51:25 52:2 52:3 52:23 55:8

settling(16) 7:10 7:14 24:18 24:24 25:13 25:17 26:2 26:11 26:14 26:17 26:22 28:25 36:19 36:25 51:16 51:20
several(3) 7:11 23:18 40:23
shape(1) 54:1
share(1) 49:21
shares(1) 32:5
shibley(1) 3:36
shoe(1) 54:10
shoot(1) 54:10
short(2) 21:7 53:18
shortly(1) 26:12
should(10) 7:5 22:7 24:1 25:12 27:9 37:9 39:13 40:14 48:20 50:20
shouldn't(3) 22:5 47:6 51:18
showing(1) 47:11
side(3) 20:22 28:17 53:22
sideshow(1) 44:1
significant(2) 24:2 27:7 27:8
significantly(1) 43:9
silver(1) 4:36
simple(2) 48:6 51:12
simply(11) 9:6 9:7 10:24 21:11 30:20 32:12 37:8 38:1 42:21 44:2 52:5
since(1) 25:12
single(1) 30:9
sir(3) 16:25 35:7 41:25
sitting(1) 7:3
size(1) 45:16
small(1) 43:24
smaller(2) 15:15 16:4
smart(1) 55:2
solus(3) 3:14 5:4 5:8
some(29) 8:1 8:8 13:6 15:14 17:7 17:17 17:18 18:22 20:12 20:18 22:3 22:12 22:17 23:14 23:20 24:23 25:5 25:5 26:17 26:21 27:1 27:2 27:7 30:20 33:21 34:15 41:21 54:1 54:2
somehow(2) 40:4 42:4
someone(1) 56:13
something(10) 16:9 16:17 21:23 22:13 28:16 30:23 33:18 43:9 44:7 50:4
sometime(1) 19:7
sometimes(3) 13:12 13:13 13:14
sorry(2) 18:2 36:8
sort(6) 20:12 23:21 30:6 30:22 39:18 51:7
sought(4) 9:3 34:1 34:3 36:17
sound(2) 1:40 56:20
sounds(1) 17:17
southpaw(1) 6:12
space(1) 6:12
speak(5) 20:3 20:5 38:14 40:9 48:12

speaking(1) 27:16
specific(1) 50:15
specifics(2) 33:21 34:5
specter(1) 39:9
spend(1) 19:11
stage(2) 16:10 45:10
staging(1) 53:19
stakeholders(1) 49:14
standard(3) 10:20 10:22 11:1
standards(3) 9:4 10:8 17:20
standpoint(2) 20:5 48:18
stang(1) 2:46
stargatt(1) 3:5
start(1) 48:25
started(2) 40:9 46:20
statement(1) 41:6
states(3) 1:1 1:19 11:10
steen(1) 1:27
step(1) 25:23
stephen(2) 4:15 5:5
steven(1) 5:33
still(1) 22:15
stone(1) 5:16
strauss(1) 2:5
streamline(1) 48:20
street(3) 1:10 1:34 6:8
strength(2) 48:2 48:9
strong(1) 46:4
structure(2) 27:1 35:11
structured(1) 23:11
stuff(2) 30:13 30:14
subject(8) 8:11 17 12:3 19:4 38:19 50:20 50:24 51:7 51:12
submission(5) 10:15 10:16 10:23 11:3 40:13
submissions(5) 36:17 40:12 40:25 42:22 46:24
submit(3) 26:17 37:14 54:3
submitted(3) 35:20 40:22 41:16
subsequent(2) 11:7 35:23
substance(1) 42:2
substantial(3) 30:25 35:17 37:21
substantive(1) 10:16
success(7) 8:6 8:20 9:6 9:17 9:22 13:8 44:22
such(5) 14:19 36:14 37:4 43:24 52:14
sufficient(4) 34:7 34:19 55:20 55:22
suggest(4) 27:13 29:12 36:17 37:19
suggested(8) 14:10 29:5 34:15 36:11 38:24 41:1 45:1 55:18

suggesting(3) 29:19 39:5 40:15
suggestion(10) 20:18 22:25 40:14 42:4 45:9 45:18 48:9 48:23 53:18 54:5
sullivan(1) 3:15
summer(2) 19:2 19:2
supplemental(1) 24:6
support(5) 20:23 26:17 31:11 33:14 51:17
suppose(1) 52:17
sure(12) 50:12 15:19 21:8 27:6 27:10 30:5 30:6 30:16 40:24 45:14 52:2 54:7
surely(1) 16:2
surplus(1) 44:19
surprised(4) 33:6 34:25 52:7 52:9
surprises(1) 31:12
susan(1) 5:25
susceptible(1) 14:1
suspect(2) 29:11 56:8
table(2) 45:6 56:1
tackle(1) 8:16
take(25) 18:14 18:20 18:22 19:17 20:18 23:24 26:12 26:24 27:18 27:20 27:23 28:5 29:21 33:11 34:7 39:11 42:21 45:20 48:18 49:6 49:22 49:22 51:22 53:7

taken(5) 18:9 26:1 34:2 39:10 46:7
takes(1) 34:3
taking(6) 19:12 27:9 27:9 45:12 49:1 51:23
talk(9) 18:24 20:22 27:12 30:23 45:3 54:12 54:17 54:20 55:2
talking(3) 23:6 30:20 40:8
tammy(1) 56:25
target(1) 27:8
targeted(3) 35:25 33:19 33:19
taylor(1) 3:11
tecce(1) 3:16
teed(7) 14:7 14:9 30:8 34:15 37:6 40:12 46:25
tees(1) 17:16
teleconference(1) 17:15
telephonic(6) 1:17 2:1 3:1 4:1 5:1 6:1
tell(4) 21:4 26:19 35:4 54:11
term(1) 12:5
terminate(2) 20:15 20:16
termination(2) 21:10 55:12
terms(11) 17:10 17:13 24:20 31:24 32:9 33:18 33:21 48:19 54:1 54:18 55:3
terribly(2) 23:15 38:2

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

testify(2) 25:18 51:17

testimony(3) 25:21 30:12 31:14

than(14) 11:15 33:7 33:8 36:16 37:20 41:3 43:10
43:23 44:3 44:6 44:7 49:11 49:15 50:17

thank(10) 8:15 12:21 15:23 16:19 40:10 53:16 56:10
56:11 56:14 56:15

that(301) 7:17 7:18 7:24 8:3 8:5 8:6 8:17 8:18 8:22
8:23 8:24 8:25 9:1 9:3 9:5 9:13 9:14 9:14 9:18 9:21
9:23 10:1 10:3 10:8 10:9 10:11 10:13 10:13 10:14
10:15 10:18 10:19 10:20 10:23 10:25 11:1 11:2 11:2
11:3 11:4 11:6 11:8 11:9 11:19 11:10 11:11 11:15
11:20 11:20 11:22 12:2 12:4 12:8 12:9 12:20 13:9
13:11 13:12 13:12 13:14 13:15 13:19 13:20 13:22
13:23 13:25 13:25 13:25 14:1 14:2 14:8 14:9 14:10
14:13 14:22 14:22 14:23 14:23 15:3 15:8 15:10
15:19 15:20 16:5 16:6 16:12 16:13 16:13 16:14
16:14 16:16 17:4 17:6 17:7 17:11 17:15 17:17 17:19
17:20 18:7 18:7 18:9 18:13 18:15 18:18 18:22
18:23 19:2 19:9 19:10 19:14 20:2 20:3 20:3 20:3
20:3 20:5 20:7 20:16 20:18 20:23 20:24 20:24 21:4
21:5 21:8 21:8 21:11 21:12 21:14 21:17 21:20 21:23
22:2 22:6 22:9 22:10 22:10 22:12 22:16 22:16 22:19
22:25 23:2 23:7 23:9 23:14 23:15 23:23 23:25 24:3
24:13 24:14 24:15 24:19 24:20 24:25 25:1 25:3 25:8
25:10 25:15 25:16 25:22 25:23 26:1 26:4 26:5 26:7
26:8 26:8 26:12 26:16 26:20 26:20 26:23 27:5 27:6
27:10 27:10 27:11 27:21 27:22 27:24 27:25 28:1
28:2 28:6 28:8 28:11 28:14 28:16 28:16 29:1 29:2
29:3 29:5 29:5 29:11 29:13 29:19 29:22 29:22 29:23
29:24 30:5 30:8 30:9 30:12 30:14 30:15 30:22
30:24 31:2 31:2 31:6 31:9 31:10 31:13 31:14 31:16
31:18 31:24 32:5 32:7 32:8 32:12 32:15 32:21 32:22
32:24 32:25 33:1 33:2 33:3 33:5 33:5 33:6 33:11
33:12 33:13 33:14 33:17 33:18 33:22 33:23 33:23
33:24 34:1 34:8 34:14 34:21 34:25 35:17 35:18
35:21 35:23 35:24 36:3 36:6 36:6 36:11 36:12 36:14
36:14 36:36 36:19 36:21 36:22 37:3 37:4 37:6 37:9
37:11 37:13 37:15 37:15 37:15 37:17 37:18 37:19
37:20 37:21 37:22 37:23 38:4 38:9 38:9 38:9 39:10
38:19 38:20 38:21 38:23 39:4 39:5 39:6 39:9 39:10

that(131) 39:11 40:2 40:3 40:4 40:5 40:7 40:14
40:17 40:21 40:22 40:25 41:2 41:5 41:6 41:10 41:17
41:22 42:4 42:5 42:10 42:13 42:22 42:24 42:24
42:25 43:1 43:5 43:9 43:10 43:13 43:17 43:18 43:22
43:25 44:6 44:14 44:17 44:25 45:2 45:6 45:12 45:13
45:16 45:24 46:5 46:7 46:9 46:13 46:16 46:19 47:9
47:9 47:10 47:12 47:12 47:16 48:1 48:4 48:3 48:6
48:20 48:20 48:21 48:22 48:25 49:3 49:6 49:8 49:10
49:15 49:16 49:19 49:21 49:23 49:24 50:3 50:3
50:10 50:13 50:16 50:16 50:19 50:20 50:21 50:25
50:25 51:2 51:5 51:7 51:9 51:12 51:12 51:13 51:14
51:15 51:19 51:19 52:1 52:7 52:9 52:13 52:15 52:17
52:18 52:20 52:21 53:3 53:4 53:4 53:5 53:7 53:20
53:22 53:24 53:25 54:4 54:6 54:12 54:14 54:17
54:19 55:1 55:5 55:6 55:16 55:18 55:20 55:22 55:25
56:9 56:9

that's(44) 8:23 8:23 10:4 10:5 12:6 12:16 12:16
12:18 13:1 15:12 16:8 16:9 16:17 17:9 21:18 23:7
28:7 28:21 29:15 30:2 30:4 31:4 32:20 33:12 34:4
36:21 36:22 36:22 37:6 37:7 43:20 44:3 45:6 46:21
47:8 48:6 48:22 49:21 50:22 52:14 52:22 52:22
55:19 56:2

thau(1) 6:13

the(301) 1:1 1:2 1:18 2:31 7:2 7:3 7:6 7:6 7:9 7:10
7:12 7:12 7:13 7:13 7:14 7:14 7:15 7:17 7:18 7:19
7:20 7:20 7:22 7:22 7:23 7:24 7:25 8:1 8:2 8:2 8:3
8:3 8:4 8:4 8:5 8:5 8:6 8:8 8:8 8:9 8:12 8:15 8:17
8:18 8:19 8:20 8:21 8:22 8:23 8:24 8:24 8:25 9:2
9:4 9:4 9:5 9:5 9:6 9:8 9:9 9:11 9:11 9:12 9:14 9:14
9:15 9:16 9:18 9:19 9:20 9:20 9:21 9:21 9:22 9:22
9:23 9:23 9:24 9:24 9:25 10:1 10:2 10:5 10:6 10:6
10:5 10:6 10:7 10:8 10:9 10:11 10:14 10:14 10:15
10:15 10:16 10:17 10:19 10:19 10:20 10:21 10:22
10:23 10:24 10:24 10:25 11:1 11:2 11:2 11:4 11:4
11:6 11:8 11:9 11:9 11:10 11:12 11:12 11:13 11:14
11:16 11:16 11:17 11:18 11:19 11:21 11:22 11:24 11:25
12:1 12:2 12:2 12:3 12:4 12:13 12:14 12:16 12:18
12:20 13:2 13:4 13:7 13:7 13:8 13:8 13:14 13:14
13:16 13:16 13:21 13:22 14:1 14:2 14:2 14:3 14:5
14:6 14:7 14:8 14:8 14:9 14:10 14:10 14:12 14:12
14:13 14:14 14:15 14:16 14:17 14:18 14:22 14:22
14:23 14:24 14:25 15:2 15:2 15:3 15:3 15:4 15:5
15:6 15:14 15:14 15:15 15:16 15:17 15:18 15:18
15:21 15:21 15:22 15:23 15:25 16:1 16:2 16:4 16:5
16:5 16:5 16:6 16:7 16:7 16:8 16:9 16:10 16:11
16:12 16:13 16:13 16:15 16:16 16:17 16:18 16:19
16:23 16:24 16:25 17:3 17:3 17:4 17:4 17:6 17:7 17:9
17:9 17:10 17:10 17:11 17:13 17:14 17:15 17:16
17:18 17:20 17:21 17:22 17:23 17:23 18:1 18:4 18:5
18:6 18:7 18:11 18:11 18:13 18:14 18:14 18:15 18:15
19:1 19:7 19:9 19:11 19:13 19:21 19:22 19:22 19:23
19:24 19:24 20:1 20:2 20:4 20:4 20:6 20:6 20:6 20:7
20:11 20:14 20:16 20:17 20:18 20:20 20:21 20:25
21:5 21:6 21:11 21:12 21:13 21:13 21:17 21:20
21:21 21:22 21:22 21:25 22:1 22:2 22:4 22:7 22:8
22:9 22:11 22:15 22:20 22:25 23:2 23:2 23:3

the(301) 23:5 23:9 23:11 23:12 23:13 23:22 23:23
24:3 24:5 24:8 24:8 24:9 24:9 24:10 24:12 24:12
24:14 24:17 24:18 24:18 24:19 24:19 24:20 24:21
24:21 24:21 24:22 24:23 24:23 24:24 24:25 25:2
25:5 25:6 25:8 25:10 25:12 25:13 25:15 25:15 25:16
25:16 25:18 25:18 25:24 26:1 26:1 26:3 26:4 26:7
26:8 26:9 26:10 26:11 26:11 26:13 26:14 26:15 26:15
26:16 26:18 26:20 26:21 26:22 26:22 26:25 27:5
27:6 27:13 27:14 27:15 27:19 27:20 27:21 27:21
27:22 27:23 27:23 27:23 28:1 28:1 28:2 28:4
28:4 28:5 28:7 28:8 28:9 28:10 28:11 28:12 28:12
28:12 28:14 28:17 28:25 29:1 29:2 29:6 29:7 29:14
29:15 29:19 29:20 29:20 29:23 29:23 29:24 30:2
30:5 30:6 30:8 30:13 30:14 30:16 30:18 30:18 30:19 30:21
31:1 31:3 31:3 31:4 31:8 31:10 31:11 31:12 31:12
31:13 31:14 31:15 31:21 31:24 31:25 32:2 32:5 32:5
32:8 32:9 32:9 32:10 32:15 32:15 32:15 32:17 32:22
32:22 32:23 32:24 32:25 33:1 33:1 33:6 33:8 33:11
33:13 33:14 33:21 33:22 33:25 34:1 34:2 34:3 34:4
34:6 34:11 34:14 34:15 34:18 34:19 34:22 34:24
34:25 35:1 35:3 35:7 35:9 35:11 35:13 35:13 35:13
35:15 35:17 35:19 35:20 35:21 35:22 35:23 35:24
35:25 35:25 36:1 36:2 36:2 36:3 36:4 36:4 36:4 36:8
36:6 36:6 36:7 36:8 36:8 36:9 36:9 36:11 36:12
36:13 36:14 36:15 36:18 36:18 36:20 36:19 36:20
36:22 36:22 36:23 36:23 36:25 37:2 37:2 37:4 37:4
37:5 37:5 37:5 37:7 37:7 37:8 37:9 37:12 37:13
37:16 37:16 37:17 37:19 37:19 37:19 37:23 37:24
37:25 38:1 38:1 38:3 38:4 38:6 38:8 38:9 38:10
38:10 38:11 38:15 38:16 38:17 38:17 38:19 38:19
38:20 38:21 38:22 38:23 38:25 39:1 39:1 39:3 39:3
39:4 39:5 39:7 39:7 39:7 39:9 39:12 39:13 39:15
39:16 39:18 39:19 39:23 39:23 39:24 39:25 39:25
40:1 40:1 40:5 40:7 40:7 40:9 40:12 40:13 40:16
40:17 40:19 40:19 40:21 40:21 40:22 40:22

the(291) 40:24 40:25 41:2 41:3 41:8 41:10 41:15
41:16 41:17 41:19 41:19 41:22 41:23 41:25 42:2
42:4 42:7 42:7 42:8 42:8 42:9 42:10 42:10 42:11
42:12 42:14 42:14 42:17 42:19 42:21 43:2 43:4 43:4
43:5 43:9 43:12 43:15 43:16 43:17 43:18 43:19
43:20 43:21 43:22 43:23 43:25 43:25 44:1 44:4 44:4
44:6 44:9 44:11 44:12 44:13 44:14 44:14 44:15
44:17 44:18 44:20 44:20 44:20 44:21 44:22 44:22
44:23 44:24 44:25 45:1 45:2 45:4 45:5 45:6 45:7
45:8 45:8 45:8 45:11 45:11 45:12 45:12 45:12 45:15
45:16 45:17 45:18 45:18 45:19 45:20 45:20 45:21
45:22 46:2 46:6 46:7 46:8 46:8 46:9 46:10 46:11
46:12 46:14 46:15 46:17 46:19 46:20 46:20 46:21
47:2 47:2 47:4 47:5 47:6 47:7 47:11 47:12 47:15
47:23 47:23 47:23 47:23 48:1 48:1 48:2 48:3 48:4
48:5 48:6 48:6 48:7 48:8 48:8 48:9 48:9 48:11 48:14
48:15 48:16 48:17 48:18 48:19 48:21 48:22 48:24
48:25 49:1 49:1 49:3 49:5 49:6 49:7 49:7 49:8 49:9
49:10 49:11 49:12 49:12 49:13 49:14 49:14 49:15
49:16 49:17 49:18 49:18 49:19 49:19 49:20 49:21
49:22 49:22 49:23 49:24 49:24 49:25 50:1 50:1 50:6
50:10 50:11 50:13 50:14 50:16 50:18 50:18 50:19
50:19 50:21 50:23 50:24 51:1 51:2 51:3 51:4 51:4
51:4 51:9 51:9 51:10 51:15 51:16 51:17 51:17 51:19
51:19 51:20 51:21 51:22 51:23 51:23 51:24 51:25
51:25 52:2 52:3 52:4 52:4 52:5 52:6 52:8 52:9 52:9
52:11 52:15 52:17 52:18 52:19 52:25 53:2 53:3 53:5
53:6 53:12 53:14 53:18 53:19 53:21 53:22 53:22
53:23 53:25 53:25 54:1 54:2 54:3 54:4 54:6 54:9
54:20 54:21 54:22 54:23 54:24 54:24 54:24 54:25
54:25 55:6 55:7 55:11 55:12 55:13 55:15 55:16 55:17
55:17 55:18 55:19 55:22 55:25 56:1 56:2 56:3 56:6
56:12 56:15 56:16 56:19 56:20 56:20 56:21

their(34) 7:15 7:16 9:25 10:18 11:10 11:14 12:12
12:14 13:19 14:18 14:18 14:25 15:7 20:22 25:13
29:1 29:13 32:1 33:9 33:9 36:17 41:16 42:22 43:11
43:11 45:23 46:14 47:15 48:23 48:24 48:24 50:18
51:20 51:21

them(10) 8:18 18:14 23:21 28:23 32:11 33:9 42:25
42:25 49:2 50:2

themselves(2) 20:4 35:25

then(25) 11:23 19:6 23:20 25:24 26:7 26:11 26:16
26:19 29:3 29:13 29:21 30:3 43:6 45:5 47:1 49:3
50:3 50:12 50:23 51:11 51:22 53:23 53:24 54:2
55:17

there(1) 50:5

there(37) 7:11 9:12 9:24 11:9 12:11 13:15 16:7 17:7
20:2 22:18 25:5 25:7 25:20 28:7 31:12 32:1 32:24
34:13 35:19 37:22 38:6 39:2 39:9 41:18 42:2 42:5
42:23 43:8 44:16 44:24 45:12 45:12 47:10 50:2
51:18 52:13 52:18

thereafter(2) 26:12 51:22

thereby(1) 37:17

therefore(2) 37:17 48:21

there's(22) 9:14 12:1 12:7 13:10 13:11 15:7 15:9
17:2 17:17 17:18 20:11 38:4 39:1 39:13 47:4 47:5
45:4 45:5 45:21 52:20 52:20 54:25

these(10) 22:5 22:6 29:8 29:25 30:10 33:21 34:15
47:16 49:9 51:1

the(43) 7:12 11:20 11:21 12:12 13:18 14:10 14:16
14:19 14:20 14:23 19:15 25:18 25:21 25:22 29:24
30:12 32:10 33:3 33:4 33:9 36:12 36:13 36:15 40:13
40:14 40:16 41:1 41:4 41:10 41:11 41:13 41:18
42:22 43:14 43:15 43:21 44:8 44:21 45:23 47:13
48:6 50:16 50:18

they'd(1) 19:14

they'll(1) 49:6

they're(12) 12:15 22:17 41:14 41:19 47:16 50:20

they've(6) 33:2 34:1 35:14 36:16 41:15 50:17

thing(13) 13:14 16:11 16:15 21:18 22:1 22:23 30:5
30:9 32:16 32:18 35:17 52:14 54:19

things(7) 12:13 16:4 16:5 34:15 51:3 54:3 54:11

think(132) 8:22 9:1 9:14 9:20 9:23 10:3 10:4 10:6
10:11 10:17 11:24 12:1 12:5 13:7 13:9 13:11
13:14 13:21 13:22 14:5 14:6 15:13 16:12 16:14 17:2
17:9 17:11 17:13 17:16 19:2 19:4 20:11 20:13 20:17
20:23 21:5 21:12 21:13 22:5 22:16 23:1 23:2 23:4
23:23 24:13 24:25 25:8 25:12 25:20 27:5 27:23 28:3
28:22 29:5 29:18 30:9 30:17 30:20 31:2 31:17 31:18
32:4 32:12 32:17 32:21 33:5 33:17 33:20 33:25 34:7
34:17 35:10 35:18 35:19 36:8 36:15 37:11 37:8 37:22
37:23 38:7 38:20 38:24 39:5 39:8 39:10 39:12 39:18 40:4
40:5 40:11 41:5 41:8 41:14 42:6 42:13 42:20 42:24
43:11 43:15 43:16 43:23 44:12 44:13 45:9 45:19
46:1 46:13 46:19 46:21 46:23 47:6 47:22 47:25 49:2
50:1 50:2 50:15 51:3 53:4 53:5 53:8 53:17 54:1 54:10
54:12 54:18 55:2 54:19 55:1 55:6 55:10

thinking(3) 10:3 23:14 24:2

third(5) 4:36 9:11 9:13 9:25 13:16

this(102) 7:6 7:10 8:10 9:9 9:20 9:22 10:10 10:20
10:24 11:4 12:23 12:25 13:3 14:24 15:11 15:20 15:24
16:8 16:10 16:14 16:21 17:7 17:15 17:20 18:7 18:23
19:3 19:10 19:19 22:5 22:11 23:23 23:24 23:11 23:17
25:18 27:6 28:17 29:11 30:1 30:7 32:3 32:6 34:9
35:5 35:18 35:22 36:24 37:10 37:16 37:17 37:20
37:24 38:2 38:13 39:6 39:8 39:9 39:12 39:18 40:4
40:5 40:11 41:5 41:8 41:14 42:6 42:13 42:20 42:24
42:20 43:1 43:5 43:12 43:23 44:2 44:8 44:12 45:9
46:11 46:13 46:19 46:21 46:25 46:7 47:22 47:25 49:2
47:21 48:2 49:12 50:8 50:9 50:15 50:25 51:8 51:11
51:24 52:23 54:9 55:1 55:6 55:10

thomas(1) 3:42

those(30) 7:15 7:21 9:17 9:17 11:18 11:23 12:13
12:15 12:16 13:20 17:13 22:18 23:13 26:6 27:12 28:8
29:9 29:12 29:22 31:15 32:3 38:5 41:14 42:15 43:21
46:1 50:21 51:16 53:1 53:9

though(1) 43:21

thought(9) 16:17 19:3 19:4 21:19 24:1 29:10 29:16
31:24 38:8

thoughts(4) 20:25 23:20 24:15 31:23

threat(1) 17:7

three(7) 19:6 21:23 22:8 32:24 34:24 46:23 47:6

through(7) 19:5 21:22

through(29) 25:14 36:9 36:10 36:17 36:17 40:20
41:18 47:4 47:13

throughout(1) 9:22

thursday(1) 10:14

tie(1) 43:21

time(28) 7:6 10:3 13:24 14:8 16:14 16:16 20:18 21:6
21:7 21:20 22:12 26:8 26:17 33:5 33:7 34:7 34:19
34:23 35:18 39:10 40:7 41:19 41:21 49:16 53:16
55:20 55:21 56:11

timeliness(1) 8:18

timely(3) 7:22 11:5 11:5

times(4) 23:18 49:22 49:23 50:6

timing(1) 15:14

timothy(1) 3:26

today(14) 10:7 17:10 19:20 23:1 23:3 32:19 39:20
40:3 46:12 47:23 49:15 52:13 53:7 53:16

together(3) 35:2 43:22 56:7

told(7) 38:25 42:10 47:9 43:1 43:7 44:6 46:25

too(5) 24:13 47:22 51:3

took(3) 28:15 29:24 33:9

touched(1) 47:8

towards(3) 27:17 32:7 46:15

transcriber(1) 56:25

transcriber's(3) 1:17 1:41 56:20

transcription(2) 1:33 1:41

translated(1) 37:3

trial(4) 22:5 37:16 37:16 46:17

tried(1) 55:4

truce(5) 19:5 21:19 23:7 23:8 24:12

true(3) 11:2 11:4 22:10

truly(1) 7:10

trust(3) 3:19 4:5 4:10

try(4) 12:19 27:19 48:20 50:6

trying(6) 17:10 19:17 19:21 42:3 44:8 44:22

tunnell(1) 1:12

turning(6) 10:9 44:4 46:5 46:19

tweed(4) 3:41 8:11 21:3 35:6

two(7) 19:24 31:22 32:24 43:21 44:7 54:11

two-day(1) 54:9

two(1) 4:10

type(1) 15:4

types(2) 50:21 51:1

u.c(3) 5:24 14:16 15:6 15:10 31:21 36:18 43:16

ultimate(1) 33:1

ultimately(3) 13:21 18:4 18:6

unavailable(1) 27:4

uncertain(1) 13:25

unclear(1) 29:4

uncommon(1) 12:9

under(6) 9:5 10:20 11:19 19:13 28:7 38:22

underlying(5) 8:2 13:8 16:7 18:4 24:24

understand(17) 7:21 18:5 27:18 32:22 34:2 39:1
39:19 44:20 45:2 45:11 47:10 48:1 48:3 48:4 48:8
50:13 55:24

understanding(3) 29:8 42:8 44:24

understood(2) 28:24 31:18

undisputed(1) 42:5

unduly(1) 19:22

unfair(1) 47:8

united(3) 1:1 1:19 11:10

unless(2) 12:15 27:3

unlimited(1) 47:13

unsecured(2) 2:5 15:6

until(3) 16:8 21:15 30:22

upon(11) 11:22 22:9 25:25 29:23 37:5 41:13 41:15
42:22 52:10 52:19 54:2

upsetting(1) 47:8

urquhart(1) 3:15

usa(1) 5:24

use(2) 28:1 31:11

used(4) 27:25 28:9 29:1 29:2

useful(2) 37:24 42:21

ugly(1) 29:21

valuable(1) 46:19

value(6) 39:2 42:10 44:18 45:3 45:5 45:20

various(1) 9:22

vedder(1) 3:48

vehemently(1) 13:18

versus(2) 8:21 52:21

very(18) 8:15 12:20 13:15 13:18 18:16 18:17 20:13
20:17 20:23 21:7 22:3 23:18 25:1 26:13 44:7 44:7
51:1 53:18

victory(1) 45:22

view(4) 9:20 17:19 27:6 50:17

views(5) 23:10 35:10 46:4 47:7 47:15

w.r(2) 9:11 9:24

wadsworth(1) 4:29

wait(4) 21:24 22:18 37:25 56:13

walancki(1) 3:32

want(3) 17:3 17:8 17:19 18:20 19:14 19:15 21:1
23:7 23:25 25:21 26:15 27:5 27:10 28:19 29:25
29:25 30:5 30:10 30:12 30:13 34:10 34:24 39:4
39:16 39:17 39:18 43:21 44:5 44:12 46:15 50:9 51:8
52:24

wanted(9) 12:19 14:10 15:20 26:2 31:22 33:4 46:4
54:12 54:19

wants(2) 29:6 37:11

was(70) 7:13 7:17 7:18 8:6 8:24 9:10 10:9 10:17
10:21 10:24 11:2 11:2 11:7 11:8 11:25 12:7 12:18
12:9 12:20 14:8 14:9 14:13 17:7 18:6 18:8 18:17
19:17 19:23 20:10 20:24 21:15 21:18 21:22 23:11
24:19 24:24 26:5 27:19 28:16 28:16 30:22 30:25 33:6
34:12 34:16 36:8 37:7 37:20 38:8 38:13 38:19 40:3
40:17 40:25 42:25 43:1 43:7 43:11 43:17 44:13 44:13
44:25 46:25 47:1 47:9 47:23 50:5 50:13 52:8

wasn't(2) 10:25 32:12

way(11) 9:20 11:1 27:21 30:13 33:20 34:3 36:13
41:18 45:4 47:25 48:25 49:23

ways(2) 14:3 28:7

weakness(1) 48:2

webb(1) 4:10

week(2) 36:8 36:9

weeks(7) 19:6 19:9 21:23 22:8 38:20 55:7

weeks'(1) 34:24

wei(1) 4:33

weidinger(1) 5:8

weigh(2) 39:4 39:18

weighing(3) 42:10 42:14 48:2

well(28) 8:15 9:9 12:25 15:11 17:23 20:8 21:22
21:23 22:20 24:9 24:16 28:10 29:7 30:12 33:11 38:4
39:16 41:23 42:17 44:9 45:7 45:11 45:25 48:11 51:3
54:18 56:2 56:9

went(1) 48:1

were(22) 7:16 10:3 14:16 14:22 15:9 18:16 21:11
22:8 23:13 28:22 28:25 30:6 35:2 40:8 40:16 40:22
44:2 44:3 44:15 44:21 46:17 46:25

we'd(1) 22:13

we'll(7) 20:20 21:21 27:22 30:23 49:3 53:7 56:4

| Word | Page:Line |
|------|-----------|

**we're**(22) 17:10 18:3 18:23 23:6 30:20 31:21 32:11 32:25 33:6 33:16 33:23 33:25 35:10 40:4 43:22 44:22 47:1 47:3 47:22 47:24 48:17 55:24

**we've**(9) 24:22 34:25 38:21 40:6 43:19 46:24 53:2 53:4 55:4

**what**(72) 9:5 9:7 9:8 9:15 9:16 9:21 10:2 10:22 13:16 15:5 17:3 17:3 17:10 17:21 18:12 18:24 19:4 20:10 23:14 25:12 25:25 26:2 29:8 29:15 29:19 30:2 30:19 31:16 32:10 34:4 35:10 36:4 36:16 36:23 37:1 37:6 37:7 37:16 39:1 39:2 39:14 40:19 41:1 41:15 42:9 42:10 42:11 43:14 44:1 44:20 45:2 45:14 45:14 45:18 46:13 47:5 47:7 47:23 50:10 50:12 51:24 51:25 52:2 52:4 52:6 52:8 52:14 52:21 52:23 54:1 54:20 54:25

**whatever**(1) 21:24
**whatsoever**(2) 43:18 43:19
**what's**(3) 31:4 44:16 45:17
**wheel**(1) 32:25
**when**(14) 10:14 11:2 12:13 14:3 22:11 37:19 41:11 41:13 42:25 43:7 44:7 45:3 47:1 50:15

**whenever**(1) 22:12
**where**(13) 13:23 23:24 28:25 29:15 30:11 31:4 35:22 45:4 46:17 49:25 52:16 53:17 55:3

**whereupon**(1) 56:16
**whether**(16) 8:3 8:20 10:10 11:25 12:7 13:20 34:21 36:1 37:9 40:18 49:1 49:12 49:13 50:20 50:23 50:25

**which**(28) 7:13 13:18 16:2 20:11 20:15 23:3 23:19 24:7 24:9 24:12 24:23 27:4 27:8 27:9 27:19 35:9 36:12 38:2 41:4 43:11 44:2 44:24 46:6 46:12 47:15 48:17 49:8 53:23

**while**(1) 19:20
**who**(7) 20:12 26:14 49:4 51:16 51:17 54:13 55:2
**whole**(2) 35:1 38:10
**who'd**(1) 12:21
**why**(8) 7:21 7:22 12:6 33:12 34:2 48:23 49:5 49:8
**will**(45) 12:12 18:11 21:4 23:12 23:23 24:9 24:12 24:15 24:18 26:10 26:24 27:2 27:3 27:4 28:3 31:9 31:12 31:13 31:14 31:14 31:15 31:16 32:6 34:6 34:19 36:19 37:11 37:14 37:16 42:23 46:24 47:10 49:2 50:1 51:5 51:9 51:17 51:22 51:22 52:18 53:7 53:24 54:18 55:22 56:5

**willing**(1) 32:2
**willkie**(1) 2:41
**wilmington**(3) 1:11 3:19 7:1
**with**(72) 7:3 7:6 7:25 8:18 11:15 12:17 13:6 13:24 14:11 16:3 16:10 17:12 18:3 18:18 19:20 19:24 21:8 21:15 22:10 23:3 23:24 24:2 24:3 24:9 25:6 26:1 27:22 28:10 30:23 31:5 31:10 31:24 33:7 33:22 33:24 34:7 34:19 35:1 35:6 35:11 35:17 35:18 37:10 39:8 39:25 40:6 41:20 43:16 43:16 43:18 44:4 44:17 44:21 46:8 46:20 47:11 47:25 48:12 49:1 49:25 51:1 52:25 53:4 53:23 54:12 55:1 55:12 55:15 55:15 56:2

**withdraw**(1) 55:9
**within**(3) 16:9 19:22 20:2
**without**(2) 29:7 42:14
**witness**(2) 49:4 49:23
**witnesses**(14) 25:14 25:18 26:9 27:23 29:2 29:8 31:15 41:15 47:5 47:14 48:24 50:2 50:7 51:21

**wonderful**(1) 55:6
**words**(2) 21:19 43:13
**work**(9) 24:12 25:3 32:7 33:18 33:23 46:16 55:2 55:5 56:4

**worked**(1) 56:6
**working**(3) 18:21 19:22 33:22
**worst**(1) 42:13
**worth**(1) 42:23
**would**(77) 7:24 8:7 9:8 9:18 9:21 10:22 13:9 13:19 14:17 15:1 15:4 15:7 16:14 19:4 19:6 19:6 19:8 20:7 20:23 21:7 21:12 21:14 21:19 21:21 22:2 22:10 22:12 22:13 23:15 24:1 25:1 25:8 25:16 25:20 25:21 25:23 25:24 26:5 26:7 26:9 26:13 26:15 26:16 27:13 27:13 27:24 28:15 29:1 29:2 29:8 29:11 29:13 29:19 29:21 29:22 30:2 30:3 30:15 32:4 34:4 35:16 37:15 37:18 37:18 37:24 39:2 40:3 41:10 41:15 42:20 44:1 46:7 52:25 54:19 55:13 55:5 55:6 55:20

**wouldn't**(3) 14:24 19:12 29:8
**wunder**(1) 4:41
**www.diazdata.com**(1) 1:37
**year**(1) 43:6
**yes**(29) 8:12 13:4 15:25 16:23 16:25 18:1 21:15 22:1 22:21 23:5 31:8 35:7 35:15 36:3 38:15 39:17 41:25 41:25 42:1 42:19 44:11 44:11 48:14 53:12 53:14 54:4 54:8 54:22 55:13

**yesterday**(1) 40:13
**yet**(3) 7:19 16:11 47:14
**yields**(1) 45:10
**york**(1) 3:47

**you**(125) 6:17 8:15 8:20 9:1 9:3 10:7 11:25 12:21 13:9 13:19 13:19 13:21 14:20 15:23 16:19 17:4 17:14 17:15 17:20 18:6 18:18 18:20 19:2 19:4 19:7 19:8 19:17 20:19 20:25 21:1 21:4 21:5 21:6 21:6 21:20 21:22 21:25 22:18 23:9 23:12 23:15 23:17 23:23 23:24 23:25 24:15 26:5 26:13 26:19 27:2 28:15 28:15 28:19 28:25 28:25 29:4 29:7 29:19 29:24 30:1 30:2 30:10 30:21 30:22 31:6 31:9 31:10 31:13 31:24 32:1 32:8 32:25 33:14 33:22 34:6 34:8 34:20 35:1 35:18 36:7 37:1 37:4 38:6 38:16 38:21 39:2 39:6 40:3 40:9 40:10 40:22 41:5 41:22 42:13 42:15 43:7 44:5 44:6 44:8 45:10 45:14 45:14 45:24 46:6 46:13 46:14 50:16 50:25 51:18 51:25 52:14 53:2 53:6 53:16 53:17 56:4 56:5 56:5 56:10 56:11 56:12 56:14 56:15

**young**(2) 2:32 3:5
**your**(130) 6:17 7:7 8:10 8:13 8:16 8:19 8:22 9:7 9:7 9:15 9:18 9:19 10:4 10:7 10:10 10:11 11:4 11:24 12:6 12:17 12:25 13:7 15:24 16:21 17:2 17:25 18:5 18:16 18:20 19:18 19:19 20:9 21:1 21:2 21:3 21:5 21:16 22:1 22:2 22:20 22:22 22:25 23:17 27:15 27:17 27:17 27:18 27:20 28:6 28:11 28:15 28:18 28:21 28:22 28:24 29:10 29:12 29:16 29:19 30:4 30:8 30:17 30:24 30:25 31:3 31:5 31:11 31:18 31:20 32:8 33:16 34:9 34:18 35:5 35:8 35:9 35:10 35:10 35:12 35:17 36:1 37:11 37:14 38:13 39:4 39:10 39:21 40:10 40:11 40:21 41:21 41:24 42:18 42:22 43:1 43:4 44:2 44:10 45:17 46:3 46:5 46:12 46:16 47:8 47:18 47:19 47:24 48:12 48:18 48:18 48:23 49:8 49:17 50:13 50:14 50:19 52:24 53:11 53:16 54:11 55:4 55:10 55:18 55:21 55:23 55:24 56:10 56:11 56:11 56:14

**yours**(1) 33:11
**you'll**(3) 23:14 23:22 56:8
**you're**(6) 29:19 37:4 51:6 51:7 51:11 51:12
**you've**(2) 18:21 56:6
**ziehl**(1) 2:46
**zloto**(1) 6:21
**"everything"**(1) 47:14