# TAB 1

Code of Federal Regulations
  Title 26. Internal Revenue
    Chapter I. Internal Revenue Service, Department of the Treasury
      Subchapter A. Income Tax
        Part 1. Income Taxes (Refs & Annos)
          Procedure and Administration
            Additions to the Tax, Additional Amounts, and Assessable Penalties

26 C.F.R. § 1.6662–6, Treas. Reg. § 1.6662–6

§ 1.6662–6 Transactions between persons described in
section 482 and net section 482 transfer price adjustments.

Effective: December 22, 2011
Currentness

<Text of section amended by 76 FR 80136, retroactively effective Dec. 16, 2011.>

**(a) In general--(1) Purpose and scope.** Pursuant to section 6662(e) a penalty is imposed on any underpayment attributable to a substantial valuation misstatement pertaining to either a transaction between persons described in section 482 (the transactional penalty) or a net section 482 transfer price adjustment (the net adjustment penalty). The penalty is equal to 20 percent of the underpayment of tax attributable to that substantial valuation misstatement. Pursuant to section 6662(h) the penalty is increased to 40 percent of the underpayment in the case of a gross valuation misstatement with respect to either penalty. Paragraph (b) of this section provides specific rules related to the transactional penalty. Paragraph (c) of this section provides specific rules related to the net adjustment penalty, and paragraph (d) of this section describes amounts that will be excluded for purposes of calculating the net adjustment penalty. Paragraph (e) of this section sets forth special rules in the case of carrybacks and carryovers. Paragraph (f) of this section provides coordination rules between penalties. Paragraph (g) of this section provides the effective date of this section.

**(2) Reported results.** Whether an underpayment is attributable to a substantial or gross valuation misstatement must be determined from the results of controlled transactions that are reported on an income tax return, regardless of whether the amount reported differs from the transaction price initially reflected in the taxpayer's books and records. The results of controlled transactions that are reported on an amended return will be used only if the amended return is filed before the Internal Revenue Service has contacted the taxpayer regarding the corresponding original return. A written statement furnished by a taxpayer subject to the Coordinated Examination Program or a written statement furnished by the taxpayer when electing Accelerated Issue Resolution or similar procedures will be considered an amended return for purposes of this section if it satisfies either the requirements of a qualified amended return for purposes of § 1.6664–2(c)(3) or such requirements as the Commissioner may prescribe by revenue procedure. In the case of a taxpayer that is a member of a consolidated group, the rules of this paragraph (a)(2) apply to the consolidated income tax return of the group.

**(3) Identical terms used in the section 482 regulations.** For purposes of this section, the terms used in this section shall have the same meaning as identical terms used in regulations under section 482.

**(b) The transactional penalty--(1) Substantial valuation misstatement.** In the case of any transaction between related persons, there is a substantial valuation misstatement if the price for any property or services (or for the use of property) claimed on any return is 200 percent or more (or 50 percent or less) of the amount determined under section 482 to be the correct price.

**(2) Gross valuation misstatement.** In the case of any transaction between related persons, there is a gross valuation misstatement if the price for any property or services (or for the use of property) claimed on any return is 400 percent or more (or 25 percent or less) of the amount determined under section 482 to be the correct price.

**(3) Reasonable cause and good faith.** Pursuant to section 6664(c), the transactional penalty will not be imposed on any portion of an underpayment with respect to which the requirements of § 1.6664–4 are met. In applying the provisions of § 1.6664–4 in a case in which the taxpayer has relied on professional analysis in determining its transfer pricing, whether the professional is an employee of, or related to, the taxpayer is not determinative in evaluating whether the taxpayer reasonably relied in good faith on advice. A taxpayer that meets the requirements of paragraph (d) of this section with respect to an allocation under section 482 will be treated as having established that there was reasonable cause and good faith with respect to that item for purposes of § 1.6664–4. If a substantial or gross valuation misstatement under the transactional penalty also constitutes (or is part of) a substantial or gross valuation misstatement under the net adjustment penalty, then the rules of paragraph (d) of this section (and not the rules of § 1.6664–4) will be applied to determine whether the adjustment is excluded from calculation of the net section 482 adjustment.

**(c) Net adjustment penalty--(1) Net section 482 adjustment.** For purposes of this section, the term net section 482 adjustment means the sum of all increases in the taxable income of a taxpayer for a taxable year resulting from allocations under section 482 (determined without regard to any amount carried to such taxable year from another taxable year) less any decreases in taxable income attributable to collateral adjustments as described in § 1.482–1(g). For purposes of this section, amounts that meet the requirements of paragraph (d) of this section will be excluded from the calculation of the net section 482 adjustment. Substantial and gross valuation misstatements that are subject to the transactional penalty under paragraph (b)(1) or (2) of this section are included in determining the amount of the net section 482 adjustment. See paragraph (f) of this section for coordination rules between penalties.

**(2) Substantial valuation misstatement.** There is a substantial valuation misstatement if a net section 482 adjustment is greater than the lesser of 5 million dollars or ten percent of gross receipts.

**(3) Gross valuation misstatement.** There is a gross valuation misstatement if a net section 482 adjustment is greater than the lesser of 20 million dollars or twenty percent of gross receipts.

**(4) Setoff allocation rule.** If a taxpayer meets the requirements of paragraph (d) of this section with respect to some, but not all of the allocations made under section 482, then for purposes of determining the net section 482 adjustment, setoffs, as taken into account under § 1.482–1(g)(4), must be applied ratably against all such allocations. The following example illustrates the principle of this paragraph (c)(4):

**Example.** (i) The Internal Revenue Service makes the following section 482 adjustments for the taxable year:

| (1) | Attributable to an increase in gross income because of an increase in royalty payments..... | $9,000,000 |

| | | |
|---|---|---:|
| (2) | Attributable to an increase in sales proceeds due to a decrease in the profit margin of a related buyer.................................................................................................................... | 6,000,000 |
| (3) | Because of a setoff under § 1.482–1(g)(4)............................................................... | (5,000,000) |
| | Total section 482 adjustments................................................................................ | 10,000,000 |

(ii) The taxpayer meets the requirements of paragraph (d) with respect to adjustment number one, but not with respect to adjustment number two. The five million dollar setoff will be allocated ratably against the nine million dollar adjustment ($9,000,000/$15,000,000 x $5,000,000 = $3,000,000) and the six million dollar adjustment ($6,000,000/$15,000,000 x $5,000,000 = $2,000,000). Accordingly, in determining the net section 482 adjustment, the nine million dollar adjustment is reduced to six million dollars ($9,000,000 - $3,000,000) and the six million dollar adjustment is reduced to four million dollars ($6,000,000 - $2,000,000). Therefore, the net section 482 adjustment equals four million dollars.

**(5) Gross receipts.** For purposes of this section, gross receipts must be computed pursuant to the rules contained in § 1.448–1T(f)(2)(iv), as adjusted to reflect allocations under section 482.

**(6) Coordination with reasonable cause exception under section 6664(c).** Pursuant to section 6662(e)(3)(D), a taxpayer will be treated as having reasonable cause under section 6664(c) for any portion of an underpayment attributable to a net section 482 adjustment only if the taxpayer meets the requirements of paragraph (d) of this section with respect to that portion.

**(7) Examples.** The principles of this paragraph (c) are illustrated by the following examples:

**Example 1.** (i) The Internal Revenue Service makes the following section 482 adjustments for the taxable year:

| | | |
|---|---|---:|
| (1) | Attributable to an increase in gross income because of an increase in royalty payments..... | $2,000,000 |
| (2) | Attributable to an increase in sales proceeds due to a decrease in the profit margin of a related buyer.................................................................................................................... | 2,500,000 |
| (3) | Attributable to a decrease in the cost of goods sold because of a decrease in the cost plus mark-up of a related seller......................................................................................... | 2,000,000 |
| | Total section 482 adjustments................................................................................ | 6,500,000 |

(ii) None of the adjustments are excluded under paragraph (d) of this section. The net section 482 adjustment ($6.5 million) is greater than five million dollars. Therefore, there is a substantial valuation misstatement.

**Example 2.** (i) The Internal Revenue Service makes the following section 482 adjustments for the taxable year:

| | | |
|---|---|---:|
| (1) | Attributable to an increase in gross income because of an increase in royalty payments..... | $11,000,000 |
| (2) | Attributable to an increase in sales proceeds due to a decrease in the profit margin of a related buyer.................................................................................................................... | 2,000,000 |
| (3) | Because of a setoff under § 1.482–1(g)(4)............................................................... | (9,000,000) |
| | Total section 482 adjustments................................................................................ | 4,000,000 |

(ii) The taxpayer has gross receipts of sixty million dollars after taking into account all section 482 adjustments. None of the adjustments are excluded under paragraph (d) of this section. The net section 482 adjustment ($4 million) is less than the lesser of five million dollars or ten percent of gross receipts ($60 million x 10% = $6 million). Therefore, there is no substantial valuation misstatement.

**Example 3.** (i) The Internal Revenue Service makes the following section 482 adjustments to the income of an affiliated group that files a consolidated return for the taxable year:

| | | |
|---|---|---:|
| (1) | Attributable to Member A.................................................................................................. | $1,500,000 |
| (2) | Attributable to Member B.................................................................................................. | 1,000,000 |
| (3) | Attributable to Member C.................................................................................................. | 2,000,000 |
| | Total section 482 adjustments........................................................................................... | 4,500,000 |

(ii) Members A, B, and C have gross receipts of 20 million dollars, 12 million dollars, and 11 million dollars, respectively. Thus, the total gross receipts are 43 million dollars. None of the adjustments are excluded under paragraph (d) of this section. The net section 482 adjustment ($4.5 million) is greater than the lesser of five million dollars or ten percent of gross receipts ($43 million x 10% = $4.3 million). Therefore, there is a substantial valuation misstatement.

**Example 4.** (i) The Internal Revenue Service makes the following section 482 adjustments to the income of an affiliated group that files a consolidated return for the taxable year:

| | | |
|---|---|---:|
| (1) | Attributable to Member A.................................................................................................. | $1,500,000 |
| (2) | Attributable to Member B.................................................................................................. | 3,000,000 |
| (3) | Attributable to Member C.................................................................................................. | 2,500,000 |
| | Total section 482 adjustments........................................................................................... | 7,000,000 |

(ii) Members A, B, and C have gross receipts of 20 million dollars, 35 million dollars, and 40 million dollars, respectively. Thus, the total gross receipts are 95 million dollars. None of the adjustments are excluded under paragraph (d) of this section. The net section 482 adjustment (7 million dollars) is greater than the lesser of five million dollars or ten percent of gross receipts ($95 million x 10% = $9.5 million). Therefore, there is a substantial valuation misstatement.

**Example 5.** (i) The Internal Revenue Service makes the following section 482 adjustments to the income of an affiliated group that files a consolidated return for the taxable year:

| | | |
|---|---|---:|
| (1) | Attributable to Member A.................................................................................................. | $2,000,000 |
| (2) | Attributable to Member B.................................................................................................. | 1,000,000 |
| (3) | Attributable to Member C.................................................................................................. | 1,500,000 |
| | Total section 482 adjustments........................................................................................... | 4,500,000 |

(ii) Members A, B, and C have gross receipts of 10 million dollars, 35 million dollars, and 40 million dollars, respectively. Thus, the total gross receipts are 85 million dollars. None of the adjustments are excluded under paragraph (d) of this section. The net section 482 adjustment ($4.5 million) is less than the lesser of five million dollars or ten percent of gross receipts ($85 million x 10% = $8.5 million). Therefore, there is no substantial valuation misstatement even though individual member A's adjustment ($2 million) is greater than ten percent of its individual gross receipts ($10 million x 10% = $1 million).

**(d) Amounts excluded from net section 482 adjustments--(1) In general.** An amount is excluded from the calculation of a net section 482 adjustment if the requirements of paragraph (d)(2), (3), or (4) of this section are met with respect to that amount.

**(2) Application of a specified section 482 method--(i) In general.** An amount is excluded from the calculation of a net section 482 adjustment if the taxpayer establishes that both the specified method and documentation requirements of this paragraph (d)(2) are met with respect to that amount. For purposes of this paragraph (d), a method will be considered a specified method if it is described in the regulations under section 482 and the method applies to transactions of the type under review. An unspecified method is not considered a specified method. See §§ 1.482–3(e) and 1.482–4(d).

**(ii) Specified method requirement.** (A) The specified method requirement is met if the taxpayer selects and applies a specified method in a reasonable manner. The taxpayer's selection and application of a specified method is reasonable only if, given the available data and the applicable pricing methods, the taxpayer reasonably concluded that the method (and its application of that method) provided the most reliable measure of an arm's length result under the principles of the best method rule of § 1.482–1(c). A taxpayer can reasonably conclude that a specified method provided the most reliable measure of an arm's length result only if it has made a reasonable effort to evaluate the potential applicability of the other specified methods in a manner consistent with the principles of the best method rule. The extent of this evaluation generally will depend on the nature of the available data, and it may vary from case to case and from method to method. This evaluation may not entail an exhaustive analysis or detailed application of each method. Rather, after a reasonably thorough search for relevant data, the taxpayer should consider which method would provide the most reliable measure of an arm's length result given that data. The nature of the available data may enable the taxpayer to conclude reasonably that a particular specified method provides a more reliable measure of an arm's length result than one or more of the other specified methods, and accordingly no further consideration of such other specified methods is needed. Further, it is not necessary for a taxpayer to conclude that the selected specified method provides a more reliable measure of an arm's length result than any unspecified method. For examples illustrating the selection of a specified method consistent with this paragraph (d)(2)(ii), see § 1.482–8. Whether the taxpayer's conclusion was reasonable must be determined from all the facts and circumstances. The factors relevant to this determination include the following:

(1) The experience and knowledge of the taxpayer, including all members of the taxpayer's controlled group.

(2) The extent to which reliable data was available and the data was analyzed in a reasonable manner. A taxpayer must engage in a reasonably thorough search for the data necessary to determine which method should be selected and how it should be applied. In determining the scope of a reasonably thorough search for data, the expense of additional efforts to locate new data may be weighed against the likelihood of finding additional data that would improve the reliability of the results and the amount by which any new data would change the taxpayer's taxable income. Furthermore, a taxpayer must use the most current reliable data that is available before the end of the taxable year in question. Although the taxpayer is not required to search for relevant data after the end of the taxable year, the taxpayer must maintain as a principal document described in paragraph (d)(2)(iii)(B)(9) of this section any relevant data it obtains after the end of the taxable year but before the return is filed, if that data would help determine whether the taxpayer has reported its true taxable income.

(3) The extent to which the taxpayer followed the relevant requirements set forth in regulations under section 482 with respect to the application of the method.

(4) The extent to which the taxpayer reasonably relied on a study or other analysis performed by a professional qualified to conduct such a study or analysis, including an attorney, accountant, or economist. Whether the professional is an employee of, or related to, the taxpayer is not determinative in evaluating the reliability of that study or analysis, as long as the study or analysis is objective, thorough, and well reasoned. Such reliance is reasonable only if the taxpayer disclosed to the professional all relevant information regarding the controlled transactions at issue. A study or analysis that was reasonably relied upon in a prior year may reasonably be relied upon in the current year if the relevant facts and circumstances have not changed or if the study or analysis has been appropriately modified to reflect any change in facts and circumstances.

(5) If the taxpayer attempted to determine an arm's length result by using more than one uncontrolled comparable, whether the taxpayer arbitrarily selected a result that corresponds to an extreme point in the range of results derived from the uncontrolled comparables. Such a result generally would not likely be closest to an arm's length result. If the uncontrolled comparables that the taxpayer uses to determine an arm's length result are described in § 1.482–1(e)(2)(iii)(B), one reasonable method of selecting a point in the range would be that provided in § 1.482–1(e)(3).

(6) The extent to which the taxpayer relied on a transfer pricing methodology developed and applied pursuant to an Advance Pricing Agreement for a prior taxable year, or specifically approved by the Internal Revenue Service pursuant to a transfer pricing audit of the transactions at issue for a prior taxable year, provided that the taxpayer applied the approved method reasonably and consistently with its prior application, and the facts and circumstances surrounding the use of the method have not materially changed since the time of the IRS's action, or if the facts and circumstances have changed in a way that materially affects the reliability of the results, the taxpayer makes appropriate adjustments to reflect such changes.

(7) The size of a net transfer pricing adjustment in relation to the size of the controlled transaction out of which the adjustment arose.

(B) Services cost method. A taxpayer's selection of the services cost method for certain services, described in § 1.482–9(b), and its application of that method to a controlled services transaction will be considered reasonable for purposes of the specified method requirement only if the taxpayer reasonably allocated and apportioned costs in accordance with § 1.482–9(k), and reasonably concluded that the controlled services transaction satisfies the requirements described in § 1.482–9(b)(2). Whether the taxpayer's conclusion was reasonable must be determined from all the facts and circumstances. The factors relevant to this determination include those described in paragraph (d)(2)(ii)(A) of this section, to the extent applicable.

(iii) Documentation requirement--(A) In general. The documentation requirement of this paragraph (d)(2)(iii) is met if the taxpayer maintains sufficient documentation to establish that the taxpayer reasonably concluded that, given the available data and the applicable pricing methods, the method (and its application of that method) provided the most reliable measure of an arm's length result under the principles of the best method rule in § 1.482–1(c), and provides that documentation to the Internal Revenue Service within 30 days of a request for it in connection with an examination of the taxable year to which the documentation relates. With the exception of the documentation described in paragraphs (d)(2)

(iii)(B)(9) and (10) of this section, that documentation must be in existence when the return is filed. The district director may, in his discretion, excuse a minor or inadvertent failure to provide required documents, but only if the taxpayer has made a good faith effort to comply, and the taxpayer promptly remedies the failure when it becomes known. The required documentation is divided into two categories, principal documents and background documents as described in paragraphs (d)(2)(iii)(B) and (C) of this section.

(B) Principal documents. The principal documents should accurately and completely describe the basic transfer pricing analysis conducted by the taxpayer. The documentation must include the following--

(1) An overview of the taxpayer's business, including an analysis of the economic and legal factors that affect the pricing of its property or services;

(2) A description of the taxpayer's organizational structure (including an organization chart) covering all related parties engaged in transactions potentially relevant under section 482, including foreign affiliates whose transactions directly or indirectly affect the pricing of property or services in the United States;

(3) Any documentation explicitly required by the regulations under section 482;

(4) A description of the method selected and an explanation of why that method was selected, including an evaluation of whether the regulatory conditions and requirements for application of that method, if any, were met;

(5) A description of the alternative methods that were considered and an explanation of why they were not selected;

(6) A description of the controlled transactions (including the terms of sale) and any internal data used to analyze those transactions. For example, if a profit split method is applied, the documentation must include a schedule providing the total income, costs, and assets (with adjustments for different accounting practices and currencies) for each controlled taxpayer participating in the relevant business activity and detailing the allocations of such items to that activity. Similarly, if a cost-based method (such as the cost plus method, the services cost method for certain services, or a comparable profits method with a cost-based profit level indicator) is applied, the documentation must include a description of the manner in which relevant costs are determined and are allocated and apportioned to the relevant controlled transaction.

(7) A description of the comparables that were used, how comparability was evaluated, and what (if any) adjustments were made;

(8) An explanation of the economic analysis and projections relied upon in developing the method. For example, if a profit split method is applied, the taxpayer must provide an explanation of the analysis undertaken to determine how the profits would be split;

(9) A description or summary of any relevant data that the taxpayer obtains after the end of the tax year and before filing a tax return, which would help determine if a taxpayer selected and applied a specified method in a reasonable manner; and

(10) A general index of the principal and background documents and a description of the recordkeeping system used for cataloging and accessing those documents.

(C) Background documents. The assumptions, conclusions, and positions contained in principal documents ordinarily will be based on, and supported by, additional background documents. Documents that support the principal documentation may include the documents listed in § 1.6038A–3(c) that are not otherwise described in paragraph (d)(2)(iii)(B) of this section. Every document listed in those regulations may not be relevant to pricing determinations under the taxpayer's specific facts and circumstances and, therefore, each of those documents need not be maintained in all circumstances. Moreover, other documents not listed in those regulations may be necessary to establish that the taxpayer's method was selected and applied in the way that provided the most reliable measure of an arm's length result under the principles of the best method rule in § 1.482–1(c). Background documents need not be provided to the Internal Revenue Service in response to a request for principal documents. If the Internal Revenue Service subsequently requests background documents, a taxpayer must provide that documentation to the Internal Revenue Service within 30 days of the request. However, the district director may, in his discretion, extend the period for producing the background documentation.

(D) Satisfaction of the documentation requirements described in § 1.482–7(k)(2) for the purpose of complying with the rules for CSAs under § 1.482–7 also satisfies all of the documentation requirements listed in paragraph (d)(2)(iii)(B) of this section, except the requirements listed in paragraphs (d)(2)(iii)(B)(2) and (10) of this section, with respect to CSTs and PCTs described in § 1.482–7(b)(1)(i) and (ii), provided that the documentation also satisfies the requirements of paragraph (d)(2)(iii)(A) of this section.

**(3) Application of an unspecified method--(i) In general.** An adjustment is excluded from the calculation of a net section 482 adjustment if the taxpayer establishes that both the unspecified method and documentation requirements of this paragraph (d)(3) are met with respect to that amount.

**(ii) Unspecified method requirement--**(A) In general. If a method other than a specified method was applied, the unspecified method requirement is met if the requirements of paragraph (d)(3)(ii)(B) or (C) of this section, as appropriate, are met.

(B) Specified method potentially applicable. If the transaction is of a type for which methods are specified in the regulations under section 482, then a taxpayer will be considered to have met the unspecified method requirement if the taxpayer reasonably concludes, given the available data, that none of the specified methods was likely to provide a reliable measure of an arm's length result, and that it selected and applied an unspecified method in a way that would likely provide a reliable measure of an arm's length result. A taxpayer can reasonably conclude that no specified method was likely to provide a reliable measure of an arm's length result only if it has made a reasonable effort to evaluate the potential applicability of the specified methods in a manner consistent with the principles of the best method rule. However, it is not necessary for a taxpayer to conclude that the selected method provides a more reliable measure of an arm's length result than any other unspecified method. Whether the taxpayer's conclusion was

reasonable must be determined from all the facts and circumstances. The factors relevant to this conclusion include those set forth in paragraph (d)(2)(ii) of this section.

(C) No specified method applicable. If the transaction is of a type for which no methods are specified in the regulations under section 482, then a taxpayer will be considered to have met the unspecified method requirement if it selected and applied an unspecified method in a reasonable manner. For purposes of this paragraph (d)(3)(ii)(C), a taxpayer's selection and application is reasonable if the taxpayer reasonably concludes that the method (and its application of that method) provided the most reliable measure of an arm's length result under the principles of the best method rule in § 1.482–1(c). However, it is not necessary for a taxpayer to conclude that the selected method provides a more reliable measure of an arm's length result than any other unspecified method. Whether the taxpayer's conclusion was reasonable must be determined from all the facts and circumstances. The factors relevant to this conclusion include those set forth in paragraph (d)(2)(ii) of this section.

**(iii) Documentation requirement--**(A) In general. The documentation requirement of this paragraph (d)(3) is met if the taxpayer maintains sufficient documentation to establish that the unspecified method requirement of paragraph (d)(3)(ii) of this section is met and provides that documentation to the Internal Revenue Service within 30 days of a request for it. That documentation must be in existence when the return is filed. The district director may, in his discretion, excuse a minor or inadvertent failure to provide required documents, but only if the taxpayer has made a good faith effort to comply, and the taxpayer promptly remedies the failure when it becomes known.

(B) Principal and background documents. See paragraphs (d)(2)(iii)(B) and (C) of this section for rules regarding these two categories of required documentation.

**(4) Certain foreign to foreign transactions.** For purposes of calculating a net section 482 adjustment, any increase in taxable income resulting from an allocation under section 482 that is attributable to any controlled transaction solely between foreign corporations will be excluded unless the treatment of that transaction affects the determination of either corporation's income from sources within the United States or taxable income effectively connected with the conduct of a trade or business within the United States.

**(5) Special rule.** If the regular tax (as defined in section 55(c)) imposed on the taxpayer is determined by reference to an amount other than taxable income, that amount shall be treated as the taxable income of the taxpayer for purposes of section 6662(e)(3). Accordingly, for taxpayers whose regular tax is determined by reference to an amount other than taxable income, the increase in that amount resulting from section 482 allocations is the taxpayer's net section 482 adjustment.

**(6) Examples.** The principles of this paragraph (d) are illustrated by the following examples:

**Example 1.** (i) The Internal Revenue Service makes the following section 482 adjustments for the taxable year:

| (1) | Attributable to an increase in gross income because of an increase in royalty payments..... | $9,000,000 |
|---|---|---|
| (2) | Not a 200 percent or 400 percent adjustment........................................................... | 2,000,000 |
| (3) | Attributable to a decrease in the cost of goods sold because of a decrease in the cost plus mark-up of a related seller................................................................................. | 9,000,000 |

| | Total section 482 adjustments............................................................................................... | 20,000,000 |

(ii) The taxpayer has gross receipts of 75 million dollars after all section 482 adjustments. The taxpayer establishes that for adjustments number one and three, it applied a transfer pricing method specified in section 482, the selection and application of the method was reasonable, it documented the pricing analysis, and turned that documentation over to the IRS within 30 days of a request. Accordingly, eighteen million dollars is excluded from the calculation of the net section 482 adjustment. Because the net section 482 adjustment is two million dollars, there is no substantial valuation misstatement.

**Example 2.** (i) The Internal Revenue Service makes the following section 482 adjustments for the taxable year:

| (1) | Attributable to an increase in gross income because of an increase in royalty payments..... | $9,000,000 |
| (2) | Attributable to an adjustment that is 200 percent or more of the correct section 482 price.. | 2,000,000 |
| (3) | Attributable to a decrease in the cost of goods sold because of a decrease in the cost plus mark-up of a related seller............................................................................................ | 9,000,000 |
| | Total section 482 adjustments............................................................................................... | 20,000,000 |

(ii) The taxpayer has gross receipts of 75 million dollars after all section 482 adjustments. The taxpayer establishes that for adjustments number one and three, it applied a transfer pricing method specified in section 482, the selection and application of the method was reasonable, it documented that analysis, and turned the documentation over to the IRS within 30 days. Accordingly, eighteen million dollars is excluded from the calculation of the section 482 transfer pricing adjustments for purposes of applying the five million dollar or 10% of gross receipts test. Because the net section 482 adjustment is only two million dollars, the taxpayer is not subject to the net adjustment penalty. However, the taxpayer may be subject to the transactional penalty on the underpayment of tax attributable to the two million dollar adjustment.

**Example 3.** CFC1 and CFC2 are controlled foreign corporations within the meaning of section 957. Applying section 482, the IRS disallows a deduction for 25 million dollars of the interest that CFC1 paid to CFC2, which results in CFC1's U.S. shareholder having a subpart F inclusion in excess of five million dollars. No other adjustments under section 482 are made with respect to the controlled taxpayers. However, the increase has no effect upon the determination of CFC1's or CFC2's income from sources within the United States or taxable income effectively connected with the conduct of a trade or business within the United States. Accordingly, there is no substantial valuation misstatement.

**(e) Special rules in the case of carrybacks and carryovers.** If there is a substantial or gross valuation misstatement for a taxable year that gives rise to a loss, deduction or credit that is carried to another taxable year, the transactional penalty and the net adjustment penalty will be imposed on any resulting underpayment of tax in that other taxable year. In determining whether there is a substantial or gross valuation misstatement for a taxable year, no amount carried from another taxable year shall be included. The following example illustrates the principle of this paragraph (e):

**Example.** The Internal Revenue Service makes a section 482 adjustment of six million dollars in taxable year 1, no portion of which is excluded under paragraph (d) of this section. The taxpayer's income tax return for year 1 reported a loss of three million dollars, which was carried to taxpayer's year 2 income tax return and used to reduce income taxes otherwise due with respect to year 2. A determination is made that the six million dollar allocation constitutes a substantial valuation misstatement, and a penalty is imposed on the underpayment of tax in year 1 attributable to the substantial valuation misstatement and on the underpayment of tax in year 2 attributable to the disallowance of the net operating loss in year 2. For purposes of determining whether there is a substantial or gross valuation misstatement for year 2, the three million dollar reduction of the net operating loss will not be added to any section 482 adjustments made with respect to year 2.

**(f) Rules for coordinating between the transactional penalty and the net adjustment penalty--(1) Coordination of a net section 482 adjustment subject to the net adjustment penalty and a gross valuation misstatement subject to the transactional penalty.** In determining whether a net section 482 adjustment exceeds five million dollars or 10 percent of gross receipts, an adjustment attributable to a substantial or gross valuation misstatement that is subject to the transactional penalty will be taken into account. If the net section 482 adjustment exceeds five million dollars or ten percent of gross receipts, any portion of such amount that is attributable to a gross valuation misstatement will be subject to the transactional penalty at the forty percent rate, but will not also be subject to net adjustment penalty at a twenty percent rate. The remaining amount is subject to the net adjustment penalty at the twenty percent rate, even if such amount is less than the lesser of five million dollars or ten percent of gross receipts.

**(2) Coordination of net section 482 adjustment subject to the net adjustment penalty and substantial valuation misstatements subject to the transactional penalty.** If the net section 482 adjustment exceeds twenty million dollars or 20 percent of gross receipts, the entire amount of the adjustment is subject to the net adjustment penalty at a forty percent rate. No portion of the adjustment is subject to the transactional penalty at a twenty percent rate.

**(3) Examples.** The following examples illustrate the principles of this paragraph (f):

**Example 1.** (i) Applying section 482, the Internal Revenue Service makes the following adjustments for the taxable year:

| (1) | Attributable to an adjustment that is 400 percent or more of the correct section 482 arm's length result................................................................................................................. | $2,000,000 |
|---|---|---|
| (2) | Not a 200 or 400 percent adjustment....................................................................................... | 2,500,000 |
|  | Total........................................................................................................................................... | 4,500,000 |

(ii) The taxpayer has gross receipts of 75 million dollars after all section 482 adjustments. None of the adjustments is excluded under paragraph (d) (Amounts excluded from net section 482 adjustments) of this section, in determining the five million dollar or 10% of gross receipts test under section 6662(e)(1)(B)(ii). The net section 482 adjustment (4.5 million dollars) is less than the lesser of five million dollars or ten percent of gross receipts ($75 million x 10% = $7.5 million). Thus, there is no substantial valuation misstatement. However, the two million dollar adjustment is attributable to a gross valuation misstatement. Accordingly, the taxpayer may be subject to a penalty, under section 6662(h), equal to 40 percent of the underpayment of tax attributable to the gross valuation misstatement of two million dollars. The 2.5 million dollar adjustment is not subject to a penalty under section 6662(b)(3).

**Example 2.** The facts are the same as in Example 1, except the taxpayer has gross receipts of 40 million dollars. The net section 482 adjustment ($4.5 million) is greater than the lesser of five million dollars or ten percent of gross receipts ($40 million x 10% = $4 million). Thus, the five million dollar or 10% of gross receipts test has been met. The two million dollar adjustment is attributable to a gross valuation misstatement. Accordingly, the taxpayer is subject to a penalty, under section 6662(h), equal to 40 percent of the underpayment of tax attributable to the gross valuation misstatement of two million dollars. The 2.5 million dollar adjustment is subject to a penalty under sections 6662(a) and 6662(b)(3), equal to 20 percent of the underpayment of tax attributable to the substantial valuation misstatement.

**Example 3.** (i) Applying section 482, the Internal Revenue Service makes the following transfer pricing adjustments for the taxable year:

| (1) | Attributable to an adjustment that is 400 percent or more of the correct section 482 arm's length result.................................................................................................................. | $6,000,000 |
|---|---|---|
| (2) | Not a 200 or 400 percent adjustment........................................................................ | 15,000,000 |
| | Total........................................................................................................................... | 21,000,000 |

(ii) None of the adjustments are excluded under paragraph (d) (Amounts excluded from net section 482 adjustments) in determining the twenty million dollar or 20% of gross receipts test under section 6662(h). The net section 482 adjustment (21 million dollars) is greater than twenty million dollars and thus constitutes a gross valuation misstatement. Accordingly, the total adjustment is subject to the net adjustment penalty equal to 40 percent of the underpayment of tax attributable to the 21 million dollar gross valuation misstatement. The six million dollar adjustment will not be separately included for purposes of any additional penalty under section 6662.

**(g) Effective/applicability date--(1) In general.** This section is generally applicable on February 9, 1996. However, taxpayers may elect to apply this section to all open taxable years beginning after December 31, 1993.

**(2) Special rules.** The provisions of paragraphs (d)(2)(ii)(B), (d)(2)(iii)(B)(4) and (d)(2)(iii)(B)(6) of this section are applicable for taxable years beginning after July 31, 2009. However, taxpayers may elect to apply the provisions of paragraphs (d)(2)(ii)(B), (d)(2)(iii)(B)(4) and (d)(2)(iii)(B)(6) of this section to earlier taxable years in accordance with the rules set forth in § 1.482–9(n)(2).

**Credits**
[T.D. 8656, 61 FR 4880, Feb. 9, 1996; 61 FR 14248, April 1, 1996; 62 FR 46877, Sept. 5, 1997; T.D. 9278, 71 FR 44518, Aug. 4, 2006; T.D. 9441, 74 FR 390, Jan. 5, 2009; T.D. 9456, 74 FR 38875, Aug. 4, 2009; T.D. 9568, 76 FR 80136, Dec. 22, 2011]

SOURCE: T.D. 6500, 25 FR 11402, Nov. 26, 1960; 25 FR 14021, Dec. 21, 1960, unless otherwise noted.

AUTHORITY: Sections 1.6055–1 and 1.6055–2 also issued under 26 U.S.C. 6055.

Current through July 24, 2014; 79 FR 43161.

**End of Document**    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

 © 2014 Thomson Reuters. No claim to original U.S. Government Works.