TAB 13

United States Code Annotated
    Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
        Title V. Disclosures and Discovery (Refs & Annos)

Federal Rules of Civil Procedure Rule 26

Rule 26. Duty to Disclose; General Provisions Governing Discovery

Currentness

<Notes of Decisions for 28 USCA Federal Rules of Civil Procedure Rule 26 are displayed in two separate documents. Notes of Decisions for subdivisions I to III are contained in this document. For Notes of Decisions for subdivisions IV to end, see second document for 28 USCA Federal Rules of Civil Procedure Rule 26.>

**(a) Required Disclosures.**

**(1)** *Initial Disclosure.*

**(A)** *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

**(i)** the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**(ii)** a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

**(iii)** a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

**(iv)** for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

**(B)** *Proceedings Exempt from Initial Disclosure.* The following proceedings are exempt from initial disclosure:

**(i)** an action for review on an administrative record;

**(ii)** a forfeiture action in rem arising from a federal statute;

**(iii)** a petition for habeas corpus or any other proceeding to challenge a criminal conviction or sentence;

**(iv)** an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision;

**(v)** an action to enforce or quash an administrative summons or subpoena;

**(vi)** an action by the United States to recover benefit payments;

**(vii)** an action by the United States to collect on a student loan guaranteed by the United States;

**(viii)** a proceeding ancillary to a proceeding in another court; and

**(ix)** an action to enforce an arbitration award.

**(C)** *Time for Initial Disclosures--In General.* A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan. In ruling on the objection, the court must determine what disclosures, if any, are to be made and must set the time for disclosure.

**(D)** *Time for Initial Disclosures--For Parties Served or Joined Later.* A party that is first served or otherwise joined after the Rule 26(f) conference must make the initial disclosures within 30 days after being served or joined, unless a different time is set by stipulation or court order.

**(E)** *Basis for Initial Disclosure; Unacceptable Excuses.* A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

**(2)** *Disclosure of Expert Testimony.*

**(A)** *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

**(B)** *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially

employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) *Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

(D) *Time to Disclose Expert Testimony*. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

(E) *Supplementing the Disclosure*. The parties must supplement these disclosures when required under Rule 26(e).

(3) *Pretrial Disclosures.*

(A) *In General*. In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:

**(i)** the name and, if not previously provided, the address and telephone number of each witness--separately identifying those the party expects to present and those it may call if the need arises;

**(ii)** the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

**(iii)**an identification of each document or other exhibit, including summaries of other evidence--separately identifying those items the party expects to offer and those it may offer if the need arises.

**(B)** *Time for Pretrial Disclosures; Objections.* Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made--except for one under Federal Rule of Evidence 402 or 403--is waived unless excused by the court for good cause.

**(4)** *Form of Disclosures.* Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served.

## (b) Discovery Scope and Limits.

**(1)** *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

**(2)** *Limitations on Frequency and Extent.*

**(A)** *When Permitted.* By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

**(B)** *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(C)** *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

**(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

**(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

**(iii)** the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

**(3)** *Trial Preparation: Materials.*

**(A)** *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

**(i)** they are otherwise discoverable under Rule 26(b)(1); and

**(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

**(B)** *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

**(C)** *Previous Statement*. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

**(i)** a written statement that the person has signed or otherwise adopted or approved; or

**(ii)** a contemporaneous stenographic, mechanical, electrical, or other recording--or a transcription of it--that recites substantially verbatim the person's oral statement.

**(4)** *Trial Preparation: Experts.*

**(A)** *Deposition of an Expert Who May Testify*. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

**(B)** *Trial-Preparation Protection for Draft Reports or Disclosures*. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

**(C)** *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses*. Rules 26(b)(3) (A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

    **(i)** relate to compensation for the expert's study or testimony;

    **(ii)** identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

    **(iii)** identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

**(D)** *Expert Employed Only for Trial Preparation*. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

    **(i)** as provided in Rule 35(b); or

    **(ii)** on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

**(E)** *Payment*. Unless manifest injustice would result, the court must require that the party seeking discovery:

    **(i)** pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and

    **(ii)** for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

**(5)** *Claiming Privilege or Protecting Trial-Preparation Materials.*

**(A)** *Information Withheld*. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

**(B)** *Information Produced.* If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

**(c) Protective Orders.**

**(1)** *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

**(A)** forbidding the disclosure or discovery;

**(B)** specifying terms, including time and place, for the disclosure or discovery;

**(C)** prescribing a discovery method other than the one selected by the party seeking discovery;

**(D)** forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

**(E)** designating the persons who may be present while the discovery is conducted;

**(F)** requiring that a deposition be sealed and opened only on court order;

**(G)** requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

**(H)** requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

**(2)** *Ordering Discovery.* If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

**(3)** *Awarding Expenses.* Rule 37(a)(5) applies to the award of expenses.

## (d) Timing and Sequence of Discovery.

**(1)** *Timing.* A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

**(2)** *Sequence.* Unless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:

**(A)** methods of discovery may be used in any sequence; and

**(B)** discovery by one party does not require any other party to delay its discovery.

## (e) Supplementing Disclosures and Responses.

**(1)** *In General.* A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:

**(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

**(B)** as ordered by the court.

**(2)** *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

## (f) Conference of the Parties; Planning for Discovery.

**(1)** *Conference Timing.* Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable--and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b).

**(2)** *Conference Content; Parties' Responsibilities.* In conferring, the parties must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan. The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging the conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 14 days after the conference a written report outlining the plan. The court may order the parties or attorneys to attend the conference in person.

**(3)** *Discovery Plan.* A discovery plan must state the parties' views and proposals on:

**(A)** what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;

**(B)** the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;

**(C)** any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced;

**(D)** any issues about claims of privilege or of protection as trial-preparation materials, including--if the parties agree on a procedure to assert these claims after production--whether to ask the court to include their agreement in an order;

**(E)** what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and

**(F)** any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).

**(4)** *Expedited Schedule.* If necessary to comply with its expedited schedule for Rule 16(b) conferences, a court may by local rule:

**(A)** require the parties' conference to occur less than 21 days before the scheduling conference is held or a scheduling order is due under Rule 16(b); and

**(B)** require the written report outlining the discovery plan to be filed less than 14 days after the parties' conference, or excuse the parties from submitting a written report and permit them to report orally on their discovery plan at the Rule 16(b) conference.

**(g) Signing Disclosures and Discovery Requests, Responses, and Objections.**

**(1)** *Signature Required; Effect of Signature.* Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name--or by the party personally, if unrepresented--and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

   **(A)** with respect to a disclosure, it is complete and correct as of the time it is made; and

   **(B)** with respect to a discovery request, response, or objection, it is:

      **(i)** consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

      **(ii)** not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

      **(iii)** neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

**(2)** *Failure to Sign.* Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention.

**(3)** *Sanction for Improper Certification.* If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

## CREDIT(S)

   (Amended December 27, 1946, effective March 19, 1948; January 21, 1963, effective July 1, 1963; February 28, 1966, effective July 1, 1966; March 30, 1970, effective July 1, 1970; April 29, 1980, effective August 1, 1980; April 28, 1983, effective August 1, 1983; March 2, 1987, effective August 1, 1987; April 22, 1993, effective December 1, 1993; April 17, 2000, effective December 1, 2000; April 12, 2006, effective December 1, 2006; April 30, 2007, effective December 1, 2007; April 28, 2010, effective December 1, 2010.)

## ADVISORY COMMITTEE NOTES
1937 Adoption

**Note to Subdivision (a).** This rule freely authorizes the taking of depositions under the same circumstances and by the same methods whether for the purpose of discovery or for the purpose of obtaining evidence. Many states have adopted this practice on account of its simplicity and effectiveness, safeguarding it by imposing such restrictions upon the subsequent use of the deposition at the trial or hearing as are deemed advisable. See Ark.Civ.Code (Crawford, 1934) §§ 606 to 607; Calif.Code Civ.Proc. (Deering, 1937) § 2021; 1 Colo.Stat.Ann. (1935) Code Civ.Proc. § 376; Idaho Code Ann. (1932) § 16-906; Ill.Rules of Pract.Rule 19 (Smith-Hurd Ill.Stats. c. 110, § 259.19); Smith-Hurd Ill.Stats. c. 51, § 24; 2 Ind.Stat.Ann. (Burns, 1933) §§ 2-1501, 2-1506; Ky.Codes (Carroll, 1932) Civ.Pract. § 557; 1 Mo.Rev.Stat. (1929) § 1753; 4 Mont.Rev.Codes Ann. (1935)

§ 10645; Neb.Comp.Stat. (1929) ch. 20, §§ 1246-7; 4 Nev.Comp.Laws (Hillyer, 1929) § 9001; 2 N.H.Pub.Laws (1926) ch. 337, § 1; N.C.Code Ann. (1935) § 1809; 2 N.D.Comp.Laws Ann. (1913) §§ 7889 to 7897; 2 Ohio Gen.Code Ann. (Page, 1926) §§ 11525-6; 1 Ore.Code Ann. (1930) Tit. 9, § 1503; 1 S.D.Comp.Laws (1929) §§ 2713-16; Vernon's Ann.Civ.Stats.Tex. arts. 3738, 3752, 3769; Utah Rev.Stat.Ann. (1933) § 104-51-7; Wash.Rules of Practice adopted by the Supreme Ct., Rule 8, 2 Wash.Rev.Stat.Ann. (Remington, 1932) § 308-8; W.Va.Code (1931) ch. 57, art. 4, § 1. Compare [former] Equity Rules 47 (Depositions--To be Taken in Exceptional Instances); 54 (Depositions Under Revised Statutes, §§ 863, 865, 866, 867--Cross Examination); 58 (Discovery--Interrogatories--Inspection and Production of Documents--Admission of Execution or Genuineness).

This and subsequent rules incorporate, modify, and broaden the provisions for depositions under U.S.C., Title 28, [former] §§ 639 (Depositions *de bene esse;* when and where taken; notice), 640 (Same; mode of taking), 641 (Same; transmission to court), 644 (Depositions under *dedimus potestatem* and *in perpetuam),* 646 (Deposition under *dedimus potestatem*; how taken). These statutes are superseded in so far as they differ from this and subsequent rules. U.S.C. Title 28, [former] § 643 (Depositions; taken in mode prescribed by State laws) is superseded by the third sentence of Subdivision (a).

While a number of states permit discovery only from parties or their agents, others either make no distinction between parties or agents of parties and ordinary witnesses, or authorize the taking of ordinary depositions, without restriction, from any persons who have knowledge of relevant facts. See Ark.Civ.Code (Crawford, 1934) §§ 606 to 607; 1 Idaho Code Ann. (1932) § 16-906; Ill.Rules of Pract., Rule 19 (Smith-Hurd Ill.Stats. c. 110, § 259.19); Smith-Hurd Ill.Stats. c. 51, § 24; 2 Ind.Stat.Ann. (Burns, 1933) § 2-1501; Ky.Codes (Carroll, 1932) Civ.Pract. §§ 554 to 558; 2 Md.Ann.Code (Bagby, 1924) Art. 35, § 21; 2 Minn.Stat. (Mason, 1927) § 9820; Mo.St.Ann. §§ 1753, 1759, pp. 4023, 4026; Neb.Comp.Stat. (1929) ch. 20, §§ 1246-7; 2 N.H.Pub.Laws (1926) ch. 337, § 1; 2 N.D.Comp.Laws Ann. (1913) § 7897; 2 Ohio Gen.Code Ann. (Page, 1926) §§ 11525-6; 1 S.D.Comp.Laws (1929) §§ 2713-16; Vernon's Ann.Civil Stats.Tex. arts. 3738, 3752, 3769; Utah Rev.Stat.Ann. (1933) § 104-51-7; Wash.Rules of Practice adopted by Supreme Ct., Rule 8, 2 Wash.Rev.Stat.Ann. (Remington, 1932) § 308-8; W.Va.Code (1931) ch. 57, art. 4, § 1.

The more common practice in the United States is to take depositions on notice by the party desiring them, without any order from the court, and this has been followed in these rules. See Calif.Code Civ.Proc. (Deering, 1937) § 2031; 2 Fla.Comp.Gen.Laws Ann. (1927) §§ 4405-7; 1 Idaho Code Ann. (1932) § 16-902; Ill.Rules of Pract., Rule 19 (Smith-Hurd Ill.Stats. c. 110, § 259.19); Smith-Hurd Ill.Stats. c. 51, § 24; 2 Ind.Stat.Ann. (Burns, 1933) § 2-1502; Kan.Gen.Stat.Ann. (1935) § 60-2827; Ky.Codes (Carroll, 1932) Civ.Pract. § 565; 2 Minn.Stat. (Mason, 1927) § 9820; Mo.St.Ann. § 1761, p. 4029; 4 Mont.Rev.Codes Ann. (1935) § 10651; Nev.Comp.Laws (Hillyer, 1929) § 9002; N.C.Code Ann. (1935) § 1809; 2 N.D.Comp.Laws Ann. (1913) § 7895; Utah Rev.Stat.Ann. (1933) § 104-51-8.

**Note to Subdivision (b).** While the old chancery practice limited discovery to facts supporting the case of the party seeking it, this limitation has been largely abandoned by modern legislation. See Ala.Code Ann. (Michie, 1928) §§ 7764 to 7773; 2 Ind.Stat.Ann. (Burns, 1933) §§ 2-1028, 2-1506, 2-1728-2-1732; Iowa Code (1935) § 11185; Ky.Codes (Carroll, 1932) Civ.Pract. §§ 557, 606(8); La.Code Pract. (Dart, 1932) arts. 347-356; 2 Mass.Gen.Laws (Ter.Ed., 1932) ch. 231, §§ 61 to 67; Mo.St.Ann. §§ 1753, 1759, pp. 4023, 4026; Neb.Comp.Stat. (1929) §§ 20-1246, 20-1247; 2 N.H.Pub.Laws (1926) ch. 337, § 1; 2 Ohio Gen.Code Ann. (Page, 1926) §§ 11497, 11526; Vernon's Ann.Civ.Stats.Tex. arts. 3738, 3753, 3769; Wis.Stat. (1935) § 326.12; Ontario Consol.Rules of Pract. (1928) Rules 237-347; Quebec Code of Civ.Proc. (Curran, 1922) §§ 286 to 290.

**Note to Subdivisions (d), (e), and (f).** The restrictions here placed upon the use of depositions at the trial or hearing are substantially the same as those provided in U.S.C., Title 28, [former] § 641, for depositions taken, *de bene esse,* with the additional provision that any deposition may be used when the court finds the existence of exceptional circumstances. Compare English Rules Under the Judicature Act (The Annual Practice, 1937) O. 37, r. 18 (with additional provision permitting use of deposition by consent of the parties). See also [former] Equity Rule 64 (Former Depositions, Etc. May be Used Before Master); and 2 Minn.Stat. (Mason, 1927) § 9835 (Use in a subsequent action of a deposition filed in a previously dismissed action between the same parties and involving the same subject matter).

**1946 Amendment**

**Note. Subdivision (a).** The amendment eliminates the requirement of leave of court for the taking of a deposition except where a plaintiff seeks to take a deposition within 20 days after the commencement of the action. The retention of the requirement where a deposition is sought by a plaintiff within 20 days of the commencement of the action protects a defendant who has not had an opportunity to retain counsel and inform himself as to the nature of the suit; the plaintiff, of course, needs no such protection. The present rule forbids the plaintiff to take a deposition, without leave of court, before the answer is served. Sometimes the defendant delays the serving of an answer for more than 20 days, but as 20 days are sufficient time for him to obtain a lawyer, there is no reason to forbid the plaintiff to take a deposition without leave merely because the answer has not been served. In all cases, Rule 30(a) empowers the court, for cause shown, to alter the time of the taking of a deposition, and Rule 30(b) contains provisions giving ample protection to persons who are unreasonably pressed. The modified practice here adopted is along the line of that followed in various states. See e.g., 8 Mo.Rev.Stat.Ann.1939, § 1917; 2 Burns' Ind.Stat.Ann.1933, § 2-1506.

**Subdivision (b).** The amendments to subdivision (b) make clear the broad scope of examination and that it may cover not only evidence for use at the trial but also inquiry into matters in themselves inadmissible as evidence but which will lead to the discovery of such evidence. The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case. *Engl v. Aetna Life Ins. Co.,* C.C.A.2, 1943, 139 F.2d 469; *Mahler v. Pennsylvania R. Co.,* E.D.N.Y.1945, 8 Fed.Rules Serv. 33.351, Case 1. In such a preliminary inquiry admissibility at trial should not be the test as to whether the information sought is within the scope of proper examination. Such a standard unnecessarily curtails the utility of discovery practice. Of course, matters entirely without bearing either as direct evidence or as leads to evidence are not within the scope of inquiry, but to the extent that the examination develops useful information, it functions successfully as an instrument of discovery, even if it produces no testimony directly admissible. *Lewis v. United Air Lines Transportation Corp.,* D.Conn.1939, 27 F.Supp. 946; *Engl v. Aetna Life Ins. Co.,* supra; *Mahler v. Pennsylvania R. Co.,* supra; *Bloomer v. Sirian Lamp Co.,* D.Del.1944, 8 Fed.Rules Serv. 26b.31, Case 3; *Rosseau v. Langley,* N.Y.1945, 9 Fed.Rules Serv. 34.41, Case 1 (Rule 26 contemplates "examinations not merely for the narrow purpose of adducing testimony which may be offered in evidence but also for the broad discovery of information which may be useful in preparation for trial."); *Olson Transportation Co. v. Socony-Vacuum Co.,* E.D.Wis.1944, 8 Fed.Rules Serv. 34.41, Case 2 (". . . the Rules . . . permit 'fishing' for evidence as they should."); Note, 1945, 45 Col.L.Rev. 482. Thus hearsay, while inadmissible itself, may suggest testimony which properly may be proved. Under Rule 26(b) several cases, however, have erroneously limited discovery on the basis of admissibility, holding that the word "relevant" in Rule 26(b) meant "material and competent under the rules of evidence". *Poppino v. Jones Store Co.,* W.D.Mo.1940, 1 F.R.D. 215, 3 Fed.Rules Serv. 26b.5, Case 1; *Benevento v. A. & P. Food Stores, Inc.,* E.D.N.Y.1939, 26 F.Supp. 424. Thus it has been said that inquiry might not be made into statements or other matters which, when disclosed, amounted only to hearsay. *See Maryland for use of Montvila v. Pan-American Bus Lines, Inc.,* D.Md.1940, 1 F.R.D. 213, 3 Fed.Rules Serv. 26b.211, Case 3; *Gitto v. "Italia," Societa Anonima Di Navigazione,* E.D.N.Y.1940, 31 F.Supp. 567; *Rose Silk Mills, Inc. v. Insurance Co. of North America,* S.D.N.Y.1939, 29 F.Supp. 504; *Colpak v. Hetterick,* E.D.N.Y.1941, 40 F.Supp. 350; *Matthies v. Peter F. Connolly Co.,* E.D.N.Y.1941, 6 Fed.Rules Serv. 30a.22, Case 1, 2 F.R.D. 277; *Matter of Examination of Citizens Casualty Co. of New York,* S.D.N.Y.1942, 3 F.R.D. 171, 7 Fed.Rules Serv. 26b.211, Case 1; *United States v. Silliman,* D.C.N.J.1944, 8 Fed.Rules Serv. 26b.52, Case 1. The contrary and better view, however, has often been stated. See, e.g., *Engl v. Aetna Life Ins. Co.,* supra; *Stevenson v. Melady,* S.D.N.Y.1940, 3 Fed.Rules Serv. 26b.31, Case 1, 1 F.R.D. 329; *Lewis v. United Air Lines Transport Corp.,* supra; *Application of Zenith Radio Corp.,* E.D.Pa.1941, 4 Fed.Rules Serv. 30b.21, Case 1, 1 F.R.D. 627; *Steingut v. Guaranty Trust Co. of New York,* S.D.N.Y.1941, 1 F.R.D. 723, 4 Fed.Rules Serv. 26b.5, Case 2; *DeSeversky v. Republic Aviation Corp.,* E.D.N.Y.1941, 2 F.R.D. 183, 5 Fed.Rules Serv. 26b.31, Case 5; *Moore v. George A. Hormel & Co.,* S.D.N.Y.1942, 6 Fed.Rules Serv. 30b.41, Case 1, 2 F.R.D. 340; *Hercules Powder Co. v. Rohm & Haas Co.,* D.Del.1943, 7 Fed.Rules Serv. 45b.311, Case 2, 3 F.R.D. 302; *Bloomer v. Sirian Lamp Co.,* supra; *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.,* D.Mass.1944, 8 Fed.Rules Serv. 26b.31, Case 1; *Patterson Oil Terminals, Inc. v. Charles Kurz & Co., Inc.,* E.D.Pa.1945, 9 Fed.Rules Serv. 33.321, Case 2; *Pueblo Trading Co. v. Reclamation Dist. No. 1500,* N.D.Cal.1945, 9 Fed.Rules Serv. 33.321, Case 4, 4 F.R.D. 471. See also

discussion as to the broad scope of discovery in *Hoffman v. Palmer,* C.C.A.2, 1942, 129 F.2d 976, 995-997, affirmed 63 S.Ct. 477, 318 U.S. 109, 87 L.Ed. 645; Note, 1945, 45 Col.L.Rev. 482.

**1963 Amendment**

This amendment conforms to the amendment of Rule 28(b). See the next-to-last paragraph of the Advisory Committee's Note to that amendment.

**1966 Amendment**

The requirement that the plaintiff obtain leave of court in order to serve notice of taking of a deposition within 20 days after commencement of the action gives rise to difficulties when the prospective deponent is about to become unavailable for examination. The problem is not confined to admiralty, but has been of special concern in that context because of the mobility of vessels and their personnel. When Rule 26 was adopted as Admiralty Rule 30A in 1961, the problem was alleviated by permitting depositions *de bene esse,* for which leave of court is not required. See Advisory Committee's Note to Admiralty Rule 30A (1961).

A continuing study is being made in the effort to devise a modification of the 20-day rule appropriate to both the civil and admiralty practice to the end that Rule 26(a) shall state a uniform rule applicable alike to what are now civil actions and suits in admiralty. Meanwhile, the exigencies of maritime litigation require preservation, for the time being at least, of the traditional *de bene esse* procedure for the post-unification counterpart of the present suit in admiralty. Accordingly, the amendment provides for continued availability of that procedure in admiralty and maritime claims within the meaning of Rule 9(h).

**1970 Amendment**

A limited rearrangement of the discovery rules is made, whereby certain rule provisions are transferred, as follows: Existing Rule 26(a) is transferred to Rules 30(a) and 31(a). Existing Rule 26(c) is transferred to Rule 30(c). Existing Rules 26(d), (e), and (f) are transferred to Rule 32. Revisions of the transferred provisions, if any, are discussed in the notes appended to Rules 30, 31, and 32. In addition, Rule 30(b) is transferred to Rule 26(c). The purpose of this rearrangement is to establish Rule 26 as a rule governing discovery in general. (The reasons are set out in the Advisory Committee's explanatory statement.)

**Subdivision (a)--Discovery Devices.** This is a new subdivision listing all of the discovery devices provided in the discovery rules and establishing the relationship between the general provisions of Rule 26 and the specific rules for particular discovery devices. The provision that the frequency of use of these methods is not limited confirms existing law. It incorporates in general form a provision now found in Rule 33.

**Subdivision (b)--Scope of Discovery.** This subdivision is recast to cover the scope of discovery generally. It regulates the discovery obtainable through any of the discovery devices listed in Rule 26(a).

All provisions as to scope of discovery are subject to the initial qualification that the court may limit discovery in accordance with these rules. Rule 26(c) (transferred from 30(b) ) confers broad powers on the courts to regulate or prevent discovery even though the materials sought are within the scope of 26(b), and these powers have always been freely exercised. For example, a party's income tax return is generally held not privileged, 2A Barron & Holtzoff, *Federal Practice and Procedure,* § 651.2 (Wright ed. 1961), and yet courts have recognized that interests in privacy may call for a measure of extra protection. E.g., *Wiesenberger v. W. E. Hutton & Co.,* 35 F.R.D. 556 (S.D.N.Y.1964). Similarly, the courts have in appropriate circumstances protected materials that are primarily of an impeaching character. These two types of materials merely illustrate the many situations, not capable of governance by precise rule, in which courts must exercise judgment. The new subsections in Rule 26(b) do not change existing law with respect to such situations.

**Subdivision (b)(1)--In General.** The language is changed to provide for the scope of discovery in general terms. The existing subdivision, although in terms applicable only to depositions, is incorporated by reference in existing Rules 33 and 34. Since decisions as to relevance to the subject matter of the action are made for discovery purposes well in advance of trial, a flexible treatment of relevance is required and the making of discovery, whether voluntary or under court order, is not a concession or determination of relevance for purposes of trial. *Cf.* 4 *Moore's Federal Practice* ¶26-16[1] (2d ed. 1966).

**Subdivision (b)(2)--Insurance Policies.** Both the cases and commentators are sharply in conflict on the question whether defendant's liability insurance coverage is subject to discovery in the usual situation when the insurance coverage is not itself admissible and does not bear on another issue in the case. Examples of Federal cases requiring disclosure and supporting comments: *Cook v. Welty,* 253 F.Supp. 875 (D.D.C.1966) (cases cited); *Johanek v. Aberle,* 27 F.R.D. 272 (D.Mont.1961); Williams, *Discovery of Dollar Limits in Liability Policies in Automobile Tort Cases,* 10 Ala.L.Rev. 355 (1958); Thode, *Some Reflections on the 1957 Amendments to the Texas Rules,* 37 Tex.L.Rev. 33, 40-42 (1958). Examples of Federal cases refusing disclosure and supporting comments: *Bisserier v. Manning,* 207 F.Supp. 476 (D.N.J.1962); *Cooper v. Stender,* 30 F.R.D. 389 (E.D.Tenn.1962); Frank, *Discovery and Insurance, Coverage,* 1959 Ins.L.J. 281; Fournier, *Pre-trial Discovery of Insurance Coverage and Limits,* 28 Ford.L.Rev. 215 (1959).

The division in reported cases is close. State decisions based on provisions similar to the federal rules are similarly divided. See cases collected in 2A Barron & Holtzoff, *Federal Practice and Procedure* § 647.1, nn. 45.5, 45.6 (Wright ed. 1961). It appears to be difficult if not impossible to obtain appellate review of the issue. Resolution by rule amendment is indicated. The question is essentially procedural in that it bears upon preparation for trial and settlement before trial, and courts confronting the question, however they have decided it, have generally treated it as procedural and governed by the rules.

The amendment resolves this issue in favor of disclosure. Most of the decisions denying discovery, some explicitly, reason from the text of Rule 26(b) that it permits discovery only of matters which will be admissible in evidence or appear reasonably calculated to lead to such evidence; they avoid considerations of policy, regarding them as foreclosed. See *Bisserier v. Manning, supra.* Some note also that facts about a defendant's financial status are not discoverable as such, prior to judgment with execution unsatisfied, and fear that, if courts hold insurance coverage discoverable, they must extend the principle to other aspects of the defendant's financial status. The cases favoring disclosure rely heavily on the practical significance of insurance in the decisions lawyers make about settlement and trial preparation. In *Clauss v. Danker,* 264 F.Supp. 246 (S.D.N.Y.1967), the court held that the rules forbid disclosure but called for an amendment to permit it.

Disclosure of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation. It will conduce to settlement and avoid protracted litigation in some cases, though in others it may have an opposite effect. The amendment is limited to insurance coverage, which should be distinguished from any other facts concerning defendant's financial status (1) because insurance is an asset created specifically to satisfy the claim; (2) because the insurance company ordinarily controls the litigation; (3) because information about coverage is available only from defendant or his insurer; and (4) because disclosure does not involve a significant invasion of privacy.

Disclosure is required when the insurer "may be liable" on part or all of the judgment. Thus, an insurance company must disclose even when it contests liability under the policy, and such disclosure does not constitute a waiver of its claim. It is immaterial whether the liability is to satisfy the judgment directly or merely to indemnify or reimburse another after he pays the judgment.

The provision applies only to persons "carrying on an insurance business" and thus covers insurance companies and not the ordinary business concern that enters into a contract of indemnification. *Cf.* N.Y.Ins.Law § 41. Thus, the provision makes no change in existing law on discovery of indemnity agreements other than insurance agreements by persons carrying on an insurance business. Similarly, the provision does not cover the business concern that creates a reserve fund for purposes of self-insurance.

For some purposes other than discovery, an application for insurance is treated as a part of the insurance agreement. The provision makes clear that, for discovery purposes, the application is not to be so treated. The insurance application may contain personal and financial information concerning the insured, discovery of which is beyond the purpose of this provision.

In no instance does disclosure make the facts concerning insurance coverage admissible in evidence.

**Subdivision (b)(3)--Trial Preparation: Materials.** Some of the most controversial and vexing problems to emerge from the discovery rules have arisen out of requests for the production of documents or things prepared in anticipation of litigation or for trial. The existing rules make no explicit provision for such materials. Yet, two verbally distinct doctrines have developed, each conferring a qualified immunity on these materials--the "good cause" requirement in Rule 34 (now generally held applicable to discovery of documents via deposition under Rule 45 and interrogatories under Rule 33) and the work-product doctrine of *Hickman v. Taylor,* 329 U.S. 495 (1947). Both demand a showing of justification before production can be had, the one of "good cause" and the other variously described in the *Hickman* case: "necessity or justification," "denial * * * would unduly prejudice the preparation of petitioner's case," or "cause hardship or injustice" 329 U.S. at 509-510.

In deciding the *Hickman* case, the Supreme Court appears to have expressed a preference in 1947 for an approach to the problem of trial preparation materials by judicial decision rather than by rule. Sufficient experience has accumulated, however, with lower court applications of the *Hickman* decision to warrant a reappraisal.

The major difficulties visible in the existing case law are (1) confusion and disagreement as to whether "good cause" is made out by a showing of relevance and lack of privilege, or requires an additional showing of necessity, (2) confusion and disagreement as to the scope of the *Hickman* work-product doctrine, particularly whether it extends beyond work actually performed by lawyers, and (3) the resulting difficulty of relating the "good cause" required by Rule 34 and the "necessity or justification" of the work-product doctrine, so that their respective roles and the distinctions between them are understood.

**Basic Standard.**--Since Rule 34 in terms requires a showing of "good cause" for the production of all documents and things, whether or not trial preparation is involved, courts have felt that a single formula is called for and have differed over whether a showing of relevance and lack of privilege is enough or whether more must be shown. When the facts of the cases are studied, however, a distinction emerges based upon the type of materials. With respect to documents not obtained or prepared with an eye to litigation, the decisions, while not uniform, reflect a strong and increasing tendency to relate "good cause" to a showing that the documents are relevant to the subject matter of the action. *E.g., Connecticut Mutual Life Ins. Co. v. Shields,* 17 F.R.D. 273 (S.D.N.Y.1959), with cases cited; *Houdry Process Corp. v. Commonwealth Oil Refining Co.,* 24 F.R.D. 58 (S.D.N.Y.1955); see *Bell v. Commercial Ins. Co.,* 280 F.2d 514, 517 (3d Cir. 1960). When the party whose documents are sought shows that the request for production is unduly burdensome or oppressive, courts have denied discovery for lack of "good cause", although they might just as easily have based their decision on the protective provisions of existing Rule 30(b) (new Rule 26(c) ). *E.g., Lauer v. Tankredei,* 39 F.R.D. 334 (E.D.Pa.1966).

As to trial-preparation materials, however, the courts are increasingly interpreting "good cause" as requiring more than relevance. When lawyers have prepared or obtained the materials for trial, all courts require more than relevance; so much is clearly commanded by *Hickman.* But even as to the preparatory work of nonlawyers, while some courts ignore work-product and equate "good cause" with relevance, *e.g., Brown v. New York, N.H. & H.R.R.,* 17 F.R.D. 324 (S.D.N.Y.1955), the more recent trend is to read "good cause" as requiring inquiry into the importance of and need for the materials as well as into alternative sources for securing the same information. In *Guilford Nat'l Bank v. Southern Ry.,* 297 F.2d 921 (4th Cir. 1962), statements of witnesses obtained by claim agents were held not discoverable because both parties had had equal access to the witnesses at about the same time, shortly after the collision in question. The decision was based solely on Rule 34 and "good cause"; the court declined to rule on whether the statements were work-products. The court's treatment of "good cause" is quoted at length and with approval in *Schlagenhauf v. Holder,* 379 U.S. 104, 117-118 (1964). See also *Mitchell v. Bass,* 252 F.2d 513 (8th Cir. 1958); *Hauger v. Chicago, R.I. & Pac. R.R.,* 216 F.2d 501 (7th Cir. 1954); *Burke v. United States,* 32 F.R.D. 213 (E.D.N.Y.1963). While the opinions dealing with "good cause" do not often draw an explicit distinction between

trial preparation materials and other materials, in fact an overwhelming proportion of the cases in which a special showing is required are cases involving trial preparation materials.

The rules are amended by eliminating the general requirement of "good cause" from Rule 34 but retaining a requirement of a special showing for trial preparation materials in this subdivision. The required showing is expressed, not in terms of "good cause" whose generality has tended to encourage confusion and controversy, but in terms of the elements of the special showing to be made: substantial need of the materials in the preparation of the case and inability without undue hardship to obtain the substantial equivalent of the materials by other means.

These changes conform to the holdings of the cases, when viewed in light of their facts. Apart from trial preparation, the fact that the materials sought are documentary does not in and of itself require a special showing beyond relevance and absence of privilege. The protective provisions are of course available, and if the party from whom production is sought raises a special issue of privacy (as with respect to income tax returns or grand jury minutes) or points to evidence primarily impeaching, or can show serious burden or expense, the court will exercise its traditional power to decide whether to issue a protective order. On the other hand, the requirement of a special showing for discovery of trial preparation materials reflects the view that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side. See Field and McKusick, *Maine Civil Practice* 264 (1959).

Elimination of a "good cause" requirement from Rule 34 and the establishment of a requirement of a special showing in this subdivision will eliminate the confusion caused by having two verbally distinct requirements of justification that the courts have been unable to distinguish clearly. Moreover, the language of the subdivision suggests the factors which the courts should consider in determining whether the requisite showing has been made. The importance of the materials sought to the party seeking them in preparation of his case and the difficulty he will have obtaining them by other means are factors noted in the *Hickman* case. The courts should also consider the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents the production of which he seeks.

Consideration of these factors may well lead the court to distinguish between witness statements taken by an investigator, on the one hand, and other parts of the investigative file, on the other. The court in *Southern Ry. v. Lanham,* 403 F.2d 119 (5th Cir. 1968), while it naturally addressed itself to the "good cause" requirements of Rule 34, set forth as controlling considerations the factors contained in the language of this subdivision. The analysis of the court suggests circumstances under which witness statements will be discoverable. The witness may have given a fresh and contemporaneous account in a written statement while he is available to the party seeking discovery only a substantial time thereafter. *Lanham, supra* at 127-128; *Guilford, supra* at 926. Or he may be reluctant or hostile. *Lanham, supra* at 128-129; *Brookshire v. Pennsylvania RR,* 14 F.R.D. 154 (N.D.Ohio 1953); *Diamond v. Mohawk Rubber Co.,* 33 F.R.D. 264 (D.Colo.1963). Or he may have a lapse of memory. *Tannenbaum v. Walker,* 16 F.R.D. 570 (E.D.Pa.1954). Or he may probably be deviating from his prior statement. *Cf. Hauger v. Chicago, R.I. & Pac. RR,* 216 F.2d 501 (7th Cir. 1954). On the other hand, a much stronger showing is needed to obtain evaluative materials in an investigator's reports. *Lanham, supra* at 131-133; *Pickett v. L. R. Ryan, Inc.,* 237 F.Supp. 198 (E.D.S.C.1965).

Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision. *Goosman v. A. Duie Pyle, Inc.,* 320 F.2d 45 (4th Cir. 1963); cf. *United States v. New York Foreign Trade Zone Operators, Inc.,* 304 F.2d 792 (2d Cir. 1962). No change is made in the existing doctrine, noted in the *Hickman* case, that one party may discover relevant facts known or available to the other party, even though such facts are contained in a document which is not itself discoverable.

**Treatment of Lawyers; Special Protection of Mental Impressions, Conclusions, Opinions, and Legal Theories Concerning the Litigation.**--The courts are divided as to whether the work-product doctrine extends to the preparatory work only of lawyers. The *Hickman* case left this issue open since the statements in that case were taken by a lawyer. As to courts of appeals compare *Alltmont v. United States,* 177 F.2d 971, 976 (3d Cir. 1949), cert. denied, 339 U.S. 967 (1950) (*Hickman*

applied to statements obtained by FBI agents on theory it should apply to "all statements of prospective witnesses which a party has obtained for his trial counsel's use"), with *Southern Ry. v. Campbell,* 309 F.2d 569 (5th Cir. 1962) (Statements taken by claim agents not work-product), and *Guilford Nat'l Bank v. Southern Ry.,* 297 F.2d 921 (4th Cir. 1962) (avoiding issue of work-product as to claim agents, deciding case instead under Rule 34 "good cause"). Similarly, the district courts are divided on statements obtained by claim agents, compare, e.g., *Brown v. New York, N.H. & H.R.R.,* 17 F.R.D. 324 (S.D.N.Y.1955) with *Hanke v. Milwaukee Electric Ry. & Transp. Co.,* 7 F.R.D. 540 (E.D.Wis.1947); investigators, compare *Burke v. United States,* 32 F.R.D. 213 (E.D.N.Y.1963) with *Snyder v. United States,* 20 F.R.D. 7 (E.D.N.Y.1956); and insurers, compare *Gottlieb v. Bresler,* 24 F.R.D. 371 (D.D.C.1959) with *Burns v. Mulder,* 20 F.R.D. 605 (E.D.Pa.1957). See 4 Moore's *Federal Practice* ¶26.23[8.1] (2d ed. 1966); 2A Barron & Holtzoff, *Federal Practice and Procedure* § 652.2 (Wright ed. 1961).

A complication is introduced by the use made by courts of the "good cause" requirement of Rule 34, as described above. A court may conclude that trial preparation materials are not work-product because not the result of lawyer's work and yet hold that they are not producible because "good cause" has not been shown. *Cf. Guilford Nat'l Bank v. Southern Ry.,* 297 F.2d 921 (4th Cir. 1962), cited and described above. When the decisions on "good cause" are taken into account, the weight of authority affords protection of the preparatory work of both lawyers and nonlawyers (though not necessarily to the same extent) by requiring more than a showing of relevance to secure production.

Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf. The subdivision then goes on to protect against disclosure the mental impressions, conclusions, opinions, or legal theories concerning the litigation of an attorney or other representative of a party. The *Hickman* opinion drew special attention to the need for protecting an attorney against discovery of memoranda prepared from recollection of oral interviews. The courts have steadfastly safeguarded against disclosure of lawyers' mental impressions and legal theories, as well as mental impressions and subjective evaluations of investigators and claim-agents. In enforcing this provision of the subdivision, the courts will sometimes find it necessary to order disclosure of a document but with portions deleted.

Rules 33 and 36 have been revised in order to permit discovery calling for opinions, contentions, and admissions relating not only to fact but also to the application of law to fact. Under those rules, a party and his attorney or other representative may be required to disclose, to some extent, mental impressions, opinions, or conclusions. But documents or parts of documents containing these matters are protected against discovery by this subdivision. Even though a party may ultimately have to disclose in response to interrogatories or requests to admit, he is entitled to keep confidential documents containing such matters prepared for internal use.

**Party's Right to Own Statement**--An exception to the requirement of this subdivision enables a party to secure production of his own statement without any special showing. The cases are divided. Compare, *e.g., Safeway Stores, Inc. v. Reynolds,* 176 F.2d 476 (D.C. Cir.1949); *Shupe v. Pennsylvania R.R.,* 19 F.R.D. 144 (W.D.Pa.1956); with *e.g., New York Central R.R. v. Carr,* 251 F.2d 433 (4th Cir. 1957); *Belback v. Wilson Freight Forwarding Co.,* 40 F.R.D. 16 (W.D.Pa.1966).

Courts which treat a party's statement as though it were that of any witness overlook the fact that the party's statement is, without more, admissible in evidence. Ordinarily, a party gives a statement without insisting on a copy because he does not yet have a lawyer and does not understand the legal consequences of his actions. Thus, the statement is given at a time when he functions at a disadvantage. Discrepancies between his trial testimony and earlier statement may result from lapse of memory or ordinary inaccuracy; a written statement produced for the first time at trial may give such discrepancies a prominence which they do not deserve. In appropriate cases the court may order a party to be deposed before his statement is produced. *E.g., Smith v. Central Linen Service Co.,* 39 F.R.D. 15 (D.Md.1966); *McCoy v. General Motors Corp.,* 33 F.R.D. 354 (W.D.Pa.1963).

Commentators strongly support the view that a party be able to secure his statement without a showing. 4 *Moore's Federal Practice* ¶26.23[8.4] (2d ed. 1966); 2A Barron & Holtzoff, *Federal Practice and Procedure* § 652.3 (Wright ed. 1961); see also Note, *Developments in the Law--Discovery,* 74 Harv.L.Rev. 940, 1039 (1961). The following states have by statute

or rule taken the same position: *Statutes:* Fla.Stat.Ann. § 92.33; Ga.Code Ann. § 38-2109(b); La.Stat.Ann.R.S. 13:3732; Mass.Gen.Laws Ann. c. 271, § 44; Minn.Stat.Ann. § 602.01; N.Y.C.P.L.R. § 3101(e); *Rules:* Mo.R.C.P. 56.01(a); N.Dak.R.C.P. 34(b); Wyo.R.C.P. 34(b); *cf.* Mich.G.C.R. 306.2.

In order to clarify and tighten the provision on statements by a party, the term "statement" is defined. The definition is adapted from 18 U.S.C. § 3500(e) (Jencks Act). The statement of a party may of course be that of plaintiff or defendant, and it may be that of an individual or of a corporation or other organization.

**Witness' Right to Own Statement.**--A second exception to the requirement of this subdivision permits a non-party witness to obtain a copy of his own statement without any special showing. Many, though not all, of the considerations supporting a party's right to obtain his statement apply also to the non-party witness. Insurance companies are increasingly recognizing that a witness is entitled to a copy of his statement and are modifying their regular practice accordingly.

**Subdivision (b)(4)--Trial Preparation: Experts.** This is a new provision dealing with discovery of information (including facts and opinions) obtained by a party from an expert retained by that party in relation to litigation or obtained by the expert and not yet transmitted to the party. The subdivision deals separately with those experts whom the party expects to call as trial witnesses and with those experts who have been retained or specially employed by the party but who are not expected to be witnesses. It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.

Subsection (b)(4)(A) deals with discovery of information obtained by or through experts who will be called as witnesses at trial. The provision is responsive to problems suggested by a relatively recent line of authorities. Many of these cases present intricate and difficult issues as to which expert testimony is likely to be determinative. Prominent among them are food and drug, patent, and condemnation cases. See, *e.g., United States v. Nysco Laboratories, Inc.,* 26 F.R.D. 159, 162 (E.D.N.Y.1960) (food and drug); *E. I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 24 F.R.D. 416, 421 (D.Del.1959) (patent); *Cold Metal Process Co. v. Aluminum Co. of America,* 7 F.R.D. 425 (N.D.Ohio 1947), aff'd, *Sachs v. Aluminum Co. of America,* 167 F.2d 570 (6th Cir. 1948) (same); *United States v. 50.34 Acres of Land,* 13 F.R.D. 19 (E.D.N.Y.1952) (condemnation).

In cases of this character, a prohibition against discovery of information held by expert witnesses produces in acute form the very evils that discovery has been created to prevent. Effective cross-examination of an expert witness requires advance preparation. The lawyer even with the help of his own experts frequently cannot anticipate the particular approach his adversary's expert will take or the data on which he will base his judgment on the stand. McGlothlin, *Some Practical Problems in Proof of Economic, Scientific, and Technical Facts,* 23 F.R.D. 467, 478 (1958). A California study of discovery and pretrial in condemnation cases notes that the only substitute for discovery of experts' valuation materials is "lengthy--and often fruitless--cross-examination during trial," and recommends pretrial exchange of such material. Calif.Law Rev.Comm'n, Discovery in Eminent Domain Proceedings 707-710 (Jan. 1963). Similarly, effective rebuttal requires advance knowledge of the line of testimony of the other side. If the latter is foreclosed by a rule against discovery, then the narrowing of issues and elimination of surprise which discovery normally produces are frustrated.

These considerations appear to account for the broadening of discovery against experts in the cases cited where expert testimony was central to the case. In some instances, the opinions are explicit in relating expanded discovery to improved cross-examination and rebuttal at trial. *Franks v. National Dairy Products Corp.,* 41 F.R.D. 234 (W.D.Tex.1966); *United States v. 23.76 Acres,* 32 F.R.D. 593 (D.Md.1963); see also an unpublished opinion of Judge Hincks, quoted in *United States v. 48 Jars, etc.,* 23 F.R.D. 192, 198 (D.D.C.1958). On the other hand, the need for a new provision is shown by the many cases in which discovery of expert trial witnesses is needed for effective cross-examination and rebuttal, and yet courts apply the traditional doctrine and refuse disclosure. *E.g., United States v. Certain Parcels of Land,* 25 F.R.D. 192 (N.D.Cal.1959); *United States v. Certain Acres,* 18 F.R.D. 98 (M.D.Ga.1955).

Although the trial problems flowing from lack of discovery of expert witnesses are most acute and noteworthy when the case turns largely on experts, the same problems are encountered when a single expert testifies. Thus, subdivision (b)(4)(A) draws no line between complex and simple cases, or between cases with many experts and those with but one. It establishes by rule substantially the procedure adopted by decision of the court in *Knighton v. Villian & Fassio,* 39 F.R.D. 11 (D.Md.1965). For a full analysis of the problem and strong recommendations to the same effect, see Friedenthal, *Discovery and Use of an Adverse Party's Expert Information,* 14 Stan.L.Rev. 455, 485-488 (1962); Long, *Discovery and Experts under the Federal Rules of Civil Procedure,* 38 F.R.D. 111 (1965).

Past judicial restrictions on discovery of an adversary's expert, particularly as to his opinions, reflect the fear that one side will benefit unduly from the other's better preparation. The procedure established in subsection (b)(4)(A) holds the risk to a minimum. Discovery is limited to trial witnesses, and may be obtained only at a time when the parties know who their expert witnesses will be. A party must as a practical matter prepare his own case in advance of that time, for he can hardly hope to build his case out of his opponent's experts.

Subdivision (b)(4)(A) provides for discovery of an expert who is to testify at the trial. A party can require one who intends to use the expert to state the substance of the testimony that the expert is expected to give. The court may order further discovery, and it has ample power to regulate its timing and scope and to prevent abuse. Ordinarily, the order for further discovery shall compensate the expert for his time, and may compensate the party who intends to use the expert for past expenses reasonably incurred in obtaining facts or opinions from the expert. Those provisions are likely to discourage abusive practices.

Subdivision (b)(4)(B) deals with an expert who has been retained or specially employed by the party in anticipation of litigation or preparation for trial (thus excluding an expert who is simply a general employee of the party not specially employed on the case), but who is not expected to be called as a witness. Under its provisions, a party may discover facts known or opinions held by such an expert only on a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Subdivision (b)(4)(B) is concerned only with experts retained or specially consulted in relation to trial preparation. Thus the subdivision precludes discovery against experts who were informally consulted in preparation for trial, but not retained or specially employed. As an ancillary procedure, a party may on a proper showing require the other party to name experts retained or specially employed, but not those informally consulted.

These new provisions of subdivision (b)(4) repudiate the few decisions that have held an expert's information privileged simply because of his status as an expert, *e.g., American Oil Co. v. Pennsylvania Petroleum Products Co.,* 23 F.R.D. 680, 685-686 (D.R.I.1959). See *Louisell, Modern California Discovery* 315-316 (1963). They also reject as ill-considered the decisions which have sought to bring expert information within the work-product doctrine. See *United States v. McKay,* 372 F.2d 174, 176-177 (5th Cir. 1967). The provisions adopt a form of the more recently developed doctrine of "unfairness". See *e.g., United States v. 23.76 Acres of Land,* 32 F.R.D. 593, 597 (D.Md.1963); Louisell, *supra,* at 317-318; 4 *Moore's Federal Practice* 26.24 (2d ed. 1966).

Under subdivision (b)(4)(C), the court is directed or authorized to issue protective orders, including an order that the expert be paid a reasonable fee for time spent in responding to discovery, and that the party whose expert is made subject to discovery be paid a fair portion of the fees and expenses that the party incurred in obtaining information from the expert. The court may issue the latter order as a condition of discovery, or it may delay the order until after discovery is completed. These provisions for fees and expenses meet the objection that it is unfair to permit one side to obtain without cost the benefit of an expert's work for which the other side has paid, often a substantial sum. E.g., *Lewis v. United Air Lines Transp. Corp.,* 32 F.Supp. 21 (W.D.Pa.1940); *Walsh v. Reynolds Metal Co.,* 15 F.R.D. 376 (D.N.J.1954). On the other hand, a party may not obtain discovery simply by offering to pay fees and expenses. Cf. *Boynton v. R. J. Reynolds Tobacco Co.,* 36 F.Supp. 593 (D.Mass.1941).

In instances of discovery under subdivision (b)(4)(B), the court is directed to award fees and expenses to the other party, since the information is of direct value to the discovering party's preparation of his case. In ordering discovery under (b)(4)(A)(ii), the court has discretion whether to award fees and expenses to the other party; its decision should depend upon whether the discovering party is simply learning about the other party's case or is going beyond this to develop his own case. Even in cases where the court is directed to issue a protective order, it may decline to do so if it finds that manifest injustice would result. Thus, the court can protect, when necessary and appropriate, the interests of an indigent party.

**Subdivision (c)--Protective Orders.** The provisions of existing Rule 30(b) are transferred to this subdivision (c), as part of the rearrangement of Rule 26. The language has been changed to give it application to discovery generally. The subdivision recognizes the power of the court in the district where a deposition is being taken to make protective orders. Such power is needed when the deposition is being taken far from the court where the action is pending. The court in the district where the deposition is being taken may, and frequently will, remit the deponent or party to the court where the action is pending.

In addition, drafting changes are made to carry out and clarify the sense of the rule. Insertions are made to avoid any possible implication that a protective order does not extend to "time" as well as to "place" or may not safeguard against "undue burden or expense."

The new reference to trade secrets and other confidential commercial information reflects existing law. The courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure. Frequently, they have been afforded a limited protection. See, *e.g., Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993 (10th Cir. 1965); *Julius M. Ames Co. v. Bostitch, Inc.,* 235 F.Supp. 856 (S.D.N.Y.1964).

The subdivision contains new matter relating to sanctions. When a motion for a protective order is made and the court is disposed to deny it, the court may go a step further and issue an order to provide or permit discovery. This will bring the sanctions of Rule 37(b) directly into play. Since the court has heard the contentions of all interested persons, an affirmative order is justified. See *Rosenberg, Sanctions to Effectuate Pretrial Discovery,* 58 Col.L.Rev. 480, 492-493 (1958). In addition, the court may require the payment of expenses incurred in relation to the motion.

**Subdivision (d)--Sequence and Priority.** This new provision is concerned with the sequence in which parties may proceed with discovery and with related problems of timing. The principal effects of the new provision are first, to eliminate any fixed priority in the sequence of discovery, and second, to make clear and explicit the court's power to establish priority by an order issued in a particular case.

A priority rule developed by some courts, which confers priority on the party who first serves notice of taking a deposition, is unsatisfactory in several important respects:

First, this priority rule permits a party to establish a priority running to all depositions as to which he has given earlier notice. Since he can on a given day serve notice of taking many depositions he is in a position to delay his adversary's taking of depositions for an inordinate time. Some courts have ruled that deposition priority also permits a party to delay his answers to interrogatories and production of documents. *E.g., E. I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 23 F.R.D. 237 (D.Del.1959); *but cf. Sturdevant v. Sears, Roebuck & Co.,* 32 F.R.D. 426 (W.D.Mo.1963).

Second, since notice is the key to priority, if both parties wish to take depositions first a race results. See *Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co.,* 11 F.R.D. 156 (S.D.N.Y.1951) (description of tactics used by parties). But the existing rules on notice of deposition create a race with runners starting from different positions. The plaintiff may not give notice without leave of court until 20 days after commencement of the action, whereas the defendant may serve notice at any time after commencement. Thus, a careful and prompt defendant can almost always secure priority. This advantage of defendants is fortuitous, because the purpose of requiring plaintiff to wait 20 days is to afford defendant an opportunity to obtain counsel, not to confer priority.

Third, although courts have ordered a change in the normal sequence of discovery on a number of occasions, *e.g.,* *Kaeppler v. James H. Matthews & Co.,* 200 F.Supp. 229 (E.D.Pa.1961); *Park & Tilford Distillers Corp. v. Distillers Co.,* 19 F.R.D. 169 (S.D.N.Y.1956), and have at all times avowed discretion to vary the usual priority, most commentators are agreed that courts in fact grant relief only for "the most obviously compelling reasons." 2A Barron & Holtzoff, *Federal Practice and Procedure* 44-47 (Wright ed. 1961); see also Younger, *Priority of Pretrial Examination in the Federal Courts--A Comment,* 34 N.Y.U.L.Rev. 1271 (1959); Freund, *The Pleading and Pretrial of an Antitrust Claim,* 46 Corn.L.Q. 555, 564 (1964). Discontent with the fairness of actual practice has been evinced by other observers. Comments, 59 Yale L.J. 117, 134-136 (1949); Yudkin, *Some Refinements in Federal Discovery Procedure,* 11 Fed.B.J. 289, 296-297 (1951); *Developments in the Law-Discovery,* 74 Harv.L.Rev. 940, 954-958 (1961).

Despite these difficulties, some courts have adhered to the priority rule, presumably because it provides a test which is easily understood and applied by the parties without much court intervention. It thus permits deposition discovery to function extrajudicially, which the rules provide for and the courts desire. For these same reasons, courts are reluctant to make numerous exceptions to the rule.

The Columbia Survey makes clear that the problem of priority does not affect litigants generally. It found that most litigants do not move quickly to obtain discovery. In over half of the cases, both parties waited at least 50 days. During the first 20 days after commencement of the action--the period when defendant might assure his priority by noticing depositions--16 percent of the defendants acted to obtain discovery. A race could not have occurred in more than 16 percent of the cases and it undoubtedly occurred in fewer. On the other hand, five times as many defendants as plaintiffs served notice of deposition during the first 19 days. To the same effect, see Comment, *Tactical Use and Abuse of Depositions Under the Federal Rules,* 59 Yale L.J. 117, 134 (1949).

These findings do not mean, however, that the priority rule is satisfactory or that a problem of priority does not exist. The court decisions show that parties do battle on this issue and carry their disputes to court. The statistics show that these court cases are not typical. By the same token, they reveal that more extensive exercise of judicial discretion to vary the priority will not bring a flood of litigation, and that a change in the priority rule will in fact affect only a small fraction of the cases.

It is contended by some that there is no need to alter the existing priority practice. In support, it is urged that there is no evidence that injustices in fact result from present practice and that, in any event, the courts can and do promulgate local rules, as in New York, to deal with local situations and issue orders to avoid possible injustice in particular cases.

Subdivision (d) is based on the contrary view that the rule of priority based on notice is unsatisfactory and unfair in its operation. Subdivision (d) follows an approach adapted from Civil Rule 4 of the District Court for the Southern District of New York. That rule provides that starting 40 days after commencement of the action, unless otherwise ordered by the court, the fact that one party is taking a deposition shall not prevent another party from doing so "concurrently." In practice, the depositions are not usually taken simultaneously; rather, the parties work out arrangements for alternation in the taking of depositions. One party may take a complete deposition and then the other, or, if the depositions are extensive, one party deposes for a set time, and then the other. See *Caldwell-Clements, Inc. v. McCraw-Hill Pub. Co.,* 11 F.R.D. 156 (S.D.N.Y.1951).

In principle, one party's initiation of discovery should not wait upon the other's completion, unless delay is dictated by special considerations. Clearly the principle is feasible with respect to all methods of discovery other than depositions. And the experience of the Southern District of New York shows that the principle can be applied to depositions as well. The courts have not had an increase in motion business on this matter. Once it is clear to lawyers that they bargain on an equal footing, they are usually able to arrange for an orderly succession of depositions without judicial intervention. Professor Moore has called attention to Civil Rule 4 and suggested that it may usefully be extended to other areas. 4 *Moore's Federal Practice* 1154 (2d ed. 1966).

The court may upon motion and by order grant priority in a particular case. But a local court rule purporting to confer priority in certain classes of cases would be inconsistent with this subdivision and thus void.

**Subdivision (e)--Supplementation of Responses.** The rules do not now state whether interrogatories (and questions at deposition as well as requests for inspection and admissions) impose a "continuing burden" on the responding party to supplement his answers if he obtains new information. The issue is acute when new information renders substantially incomplete or inaccurate an answer which was complete and accurate when made. It is essential that the rules provide an answer to this question. The parties can adjust to a rule either way, once they know what it is. See 4 *Moore's Federal Practice* ¶33.25[4] (2d ed. 1966).

Arguments can be made both ways. Imposition of a continuing burden reduces the proliferation of additional sets of interrogatories. Some courts have adopted local rules establishing such a burden. *E.g.,* E.D.Pa.R. 20(f), quoted in *Taggart v. Vermont Transp. Co., 32 F.R.D. 587 (E.D.Pa.1963)*; D.Me.R. 15(c). Others have imposed the burden by decision. *E.g., Chenault v. Nebraska Farm Products, Inc., 9 F.R.D. 529, 533 (D.Nebr.1949)*. On the other hand, there are serious objections to the burden, especially in protracted cases. Although the party signs the answers, it is his lawyer who understands their significance and bears the responsibility to bring answers up to date. In a complex case all sorts of information reaches the party, who little understands its bearing on answers previously given to interrogatories. In practice, therefore, the lawyer under a continuing burden must periodically recheck all interrogatories and canvass all new information. But a full set of new answers may no longer be needed by the interrogating party. Some issues will have been dropped from the case, some questions are now seen as unimportant, and other questions must in any event be reformulated. See *Novick v. Pennsylvania R.R., 18 F.R.D. 296, 298 (W.D.Pa.1955)*.

Subdivision (e) provides that a party is not under a continuing burden except as expressly provided. Cf. Note, 68 Harv.L.Rev. 673, 677 (1955). An exception is made as to the identity of persons having knowledge of discoverable matters, because of the obvious importance to each side of knowing all witnesses and because information about witnesses routinely comes to each lawyer's attention. Many of the decisions on the issue of a continuing burden have in fact concerned the identity of witnesses. An exception is also made as to expert trial witnesses in order to carry out the provisions of Rule 26(b)(4). See *Diversified Products Corp. v. Sports Center Co., 42 F.R.D. 3 (D.Md.1967)*.

Another exception is made for the situation in which a party, or more frequently his lawyer, obtains actual knowledge that a prior response is incorrect. This exception does not impose a duty to check the accuracy of prior responses, but it prevents knowing concealment by a party or attorney. Finally, a duty to supplement may be imposed by order of the court in a particular case (including an order resulting from a pretrial conference) or by agreement of the parties. A party may of course make a new discovery request which requires supplementation of prior responses.

The duty will normally be enforced, in those limited instances where it is imposed, through sanctions imposed by the trial court, including exclusion of evidence, continuance, or other action, as the court may deem appropriate.

**1980 Amendment**

**Subdivision (f).** This subdivision is new. There has been widespread criticism of abuse of discovery. The Committee has considered a number of proposals to eliminate abuse, including a change in Rule 26(b)(1) with respect to the scope of discovery and a change in Rule 33(a) to limit the number of questions that can be asked by interrogatories to parties.

The Committee believes that abuse of discovery, while very serious in certain cases, is not so general as to require such basic changes in the rules that govern discovery in all cases. A very recent study of discovery in selected metropolitan districts tends to support its belief. P. Connolly, E. Holleman, & M. Kuhlman, *Judicial Controls and the Civil Litigative Process: Discovery* (Federal Judicial Center, 1978). In the judgment of the Committee abuse can best be prevented by intervention by the court as soon as abuse is threatened.

To this end this subdivision provides that counsel who has attempted without success to effect with opposing counsel a reasonable program or plan for discovery is entitled to the assistance of the court.

It is not contemplated that requests for discovery conferences will be made routinely. A relatively narrow discovery dispute should be resolved by resort to Rules 26(c) or 37(a), and if it appears that a request for a conference is in fact grounded in such a dispute, the court may refer counsel to those rules. If the court is persuaded that a request is frivolous or vexatious, it can strike it. See Rules 11 and 7(b)(2).

A number of courts routinely consider discovery matters in preliminary pretrial conferences held shortly after the pleadings are closed. This subdivision does not interfere with such a practice. It authorizes the court to combine a discovery conference with a pretrial conference under Rule 16 if a pretrial conference is held sufficiently early to prevent or curb abuse.

### 1983 Amendment

Excessive discovery and evasion or resistance to reasonable discovery requests pose significant problems. Recent studies have made some attempt to determine the sources and extent of the difficulties. See Brazil, *Civil Discovery: Lawyers' Views of its Effectiveness, Principal Problems and Abuses,* American Bar Foundation (1980); Connolly, Holleman & Kuhlman, *Judicial Controls and the Civil Litigative Process: Discovery,* Federal Judicial Center (1978); Ellington, *A Study of Sanctions for Discovery Abuse,* Department of Justice (1979); Schroeder & Frank, *The Proposed Changes in the Discovery Rules,* 1978 Ariz.St.L.J. 475.

The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor,* 329 U.S. 495, 507 (1947). Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake.

Given our adversary tradition and the current discovery rules, it is not surprising that there are many opportunities, if not incentives, for attorneys to engage in discovery that, although authorized by the broad, permissive terms of the rules, nevertheless results in delay. See Brazil, *The Adversary Character of Civil Discovery: A Critique and Proposals for Change,* 31 Vand.L.Rev. 1259 (1978). As a result, it has been said that the rules have "not infrequently [been] exploited to the disadvantage of justice." *Herbert v. Lando,* 441 U.S. 153, 179 (1979) (Powell, J., concurring). These practices impose costs on an already overburdened system and impede the fundamental goal of the "just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1.

**Subdivision (a); Discovery Methods.** The deletion of the last sentence of Rule 26(a)(1), which provided that unless the court ordered otherwise under Rule 26(c) "the frequency of use" of the various discovery methods was not to be limited, is an attempt to address the problem of duplicative, redundant, and excessive discovery and to reduce it. The amendment, in conjunction with the changes in Rule 26(b)(1), is designed to encourage district judges to identify instances of needless discovery and to limit the use of the various discovery devices accordingly. The question may be raised by one of the parties, typically on a motion for a protective order, or by the court on its own initiative. It is entirely appropriate to consider a limitation on the frequency of use of discovery at a discovery conference under Rule 26(f) or at any other pretrial conference authorized by these rules. In considering the discovery needs of a particular case, the court should consider the factors described in Rule 26(b)(1).

**Subdivision (b); Discovery Scope and Limits.** Rule 26(b)(1) has been amended to add a sentence to deal with the problem of over-discovery. The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The new sentence is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse. The grounds mentioned in the amended rule for limiting discovery reflect the existing practice of many courts in issuing protective orders

under Rule 26(c). See, e.g., *Carlson Cos. v. Sperry & Hutchinson Co.,* 374 F.Supp. 1080 (D.Minn.1974); *Dolgow v. Anderson,* 53 F.R.D. 661 (E.D.N.Y.1971); *Mitchell v. American Tobacco Co.,* 33 F.R.D. 262 (M.D.Pa.1963); *Welty v. Clute,* 1 F.R.D. 446 (W.D.N.Y.1941). On the whole, however, district judges have been reluctant to limit the use of the discovery devices. See, *e.g., Apco Oil Co. v. Certified Transp., Inc.,* 46 F.R.D. 428 (W.D.Mo.1969). See generally 8 Wright & Miller, *Federal Practice and Procedure: Civil* §§ 2036, 2037, 2039, 2040 (1970).

The first element of the standard, Rule 26(b)(1)(i), is designed to minimize redundancy in discovery and encourage attorneys to be sensitive to the comparative costs of different methods of securing information. Subdivision (b)(1)(ii) also seeks to reduce repetitiveness and to oblige lawyers to think through their discovery activities in advance so that full utilization is made of each deposition, document request, or set of interrogatories. The elements of Rule 26(b)(1)(iii) address the problem of discovery that is disproportionate to the individual lawsuit as measured by such matters as its nature and complexity, the importance of the issues at stake in a case seeking damages, the limitations on a financially weak litigant to withstand extensive opposition to a discovery program or to respond to discovery requests, and the significance of the substantive issues, as measured in philosophic, social, or institutional terms. Thus the rule recognizes that many cases in public policy spheres, such as employment practices, free speech, and other matters, may have importance far beyond the monetary amount involved. The court must apply the standards in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent.

The rule contemplates greater judicial involvement in the discovery process and thus acknowledges the reality that it cannot always operate on a self-regulating basis. See Connolly, Holleman & Kuhlman, *Judicial Controls and the Civil Litigative Process: Discovery* 77, Federal Judicial Center (1978). In an appropriate case the court could restrict the number of depositions, interrogatories, or the scope of a production request. But the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case.

The court may act on motion, or its own initiative. It is entirely appropriate to resort to the amended rule in conjunction with a discovery conference under Rule 26(f) or one of the other pretrial conferences authorized by the rules.

**Subdivision (g); Signing of Discovery Requests, Responses, and Objections.** Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37. In addition, Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions. The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection. The term "response" includes answers to interrogatories and to requests to admit as well as responses to production requests.

If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse. With this in mind, Rule 26(g), which parallels the amendments to Rule 11, requires an attorney or unrepresented party to sign each discovery request, response, or objection. Motions relating to discovery are governed by Rule 11. However, since a discovery request, response, or objection usually deals with more specific subject matter than motions or papers, the elements that must be certified in connection with the former are spelled out more completely. The signature is a certification of the elements set forth in Rule 26(g).

Although the certification duty requires the lawyer to pause and consider the reasonableness of his request, response, or objection, it is not meant to discourage or restrict necessary and legitimate discovery. The rule simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection.

The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11. See the Advisory Committee Note to Rule 11. See also *Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n,* 365 F.Supp. 975 (E.D.Pa.1973). In making the inquiry, the attorney may rely on assertions by the client and on communications with other

counsel in the case as long as that reliance is appropriate under the circumstances. Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances.

Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request. Rather, the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand. Thus, the lawyer's certification under Rule 26(g) should be distinguished from other signature requirements in the rules, such as those in Rules 30(e) and 33.

Nor does the rule require a party or an attorney to disclose privileged communications or work product in order to show that a discovery request, response, or objection is substantially justified. The provisions of Rule 26(c), including appropriate orders after *in camera* inspection by the court, remain available to protect a party claiming privilege or work product protection.

The signing requirement means that every discovery request, response, or objection should be grounded on a theory that is reasonable under the precedents or a good faith belief as to what should be the law. This standard is heavily dependent on the circumstances of each case. The certification speaks as of the time it is made. The duty to supplement discovery responses continues to be governed by Rule 26(e).

Concern about discovery abuse has led to widespread recognition that there is a need for more aggressive judicial control and supervision. *ACF Industries, Inc. v. EEOC,* 439 U.S. 1081 (1979) (certiorari denied) (Powell, J., dissenting). Sanctions to deter discovery abuse would be more effective if they were diligently applied "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643 (1976). See also Note, *The Emerging Deterrence Orientation in the Imposition of Discovery Sanctions,* 91 Harv.L.Rev. 1033 (1978). Thus the premise of Rule 26(g) is that imposing sanctions on attorneys who fail to meet the rule's standards will significantly reduce abuse by imposing disadvantages therefor.

Because of the asserted reluctance to impose sanctions on attorneys who abuse the discovery rules, see Brazil, *Civil Discovery: Lawyers' Views of its Effectiveness, Principal Problems and Abuses,* American Bar Foundation (1980); Ellington, *A Study of Sanctions for Discovery Abuse,* Department of Justice (1979), Rule 26(g) makes explicit the authority judges now have to impose appropriate sanctions and requires them to use it. This authority derives from Rule 37, 28 U.S.C. § 1927, and the court's inherent power. See *Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980); *Martin v. Bell Helicopter Co.,* 85 F.R.D. 654, 661-62 (D.Col.1980); Note, *Sanctions Imposed by Courts on Attorneys Who Abuse the Judicial Process,* 44 U.Chi.L.Rev. 619 (1977). The new rule mandates that sanctions be imposed on attorneys who fail to meet the standards established in the first portion of Rule 26(g). The nature of the sanction is a matter of judicial discretion to be exercised in light of the particular circumstances. The court may take into account any failure by the party seeking sanctions to invoke protection under Rule 26(c) at an early stage in the litigation.

The sanctioning process must comport with due process requirements. The kind of notice and hearing required will depend on the facts of the case and the severity of the sanction being considered. To prevent the proliferation of the sanction procedure and to avoid multiple hearings, discovery in any sanction proceeding normally should be permitted only when it is clearly required by the interests of justice. In most cases the court will be aware of the circumstances and only a brief hearing should be necessary.

1987 Amendment

The amendments are technical. No substantive change is intended.

**1993 Amendments**

**Subdivision (a).** Through the addition of paragraphs (1)-(4), this subdivision imposes on parties a duty to disclose, without awaiting formal discovery requests, certain basic information that is needed in most cases to prepare for trial or make an informed decision about settlement. The rule requires all parties (1) early in the case to exchange information regarding potential witnesses, documentary evidence, damages, and insurance, (2) at an appropriate time during the discovery period to identify expert witnesses and provide a detailed written statement of the testimony that may be offered at trial through specially retained experts, and (3) as the trial date approaches to identify the particular evidence that may be offered at trial. The enumeration in Rule 26(a) of items to be disclosed does not prevent a court from requiring by order or local rule that the parties disclose additional information without a discovery request. Nor are parties precluded from using traditional discovery methods to obtain further information regarding these matters, as for example asking an expert during a deposition about testimony given in other litigation beyond the four-year period specified in Rule 26(a)(2)(B).

A major purpose of the revision is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information, and the rule should be applied in a manner to achieve those objectives. The concepts of imposing a duty of disclosure were set forth in Brazil, *The Adversary Character of Civil Discovery: A Critique and Proposals for Change,* 31 *Vand.L.Rev.* 1348 (1978), and Schwarzer, *The Federal Rules, the Adversary Process, and Discovery Reform,* 50 *U.Pitt.L.Rev. 703, 721-23 (1989).*

The rule is based upon the experience of district courts that have required disclosure of some of this information through local rules, court-approved standard interrogatories, and standing orders. Most have required pretrial disclosure of the kind of information described in Rule 26(a)(3). Many have required written reports from experts containing information like that specified in Rule 26(a)(2)(B). While far more limited, the experience of the few state and federal courts that have required pre-discovery exchange of core information such as is contemplated in Rule 26(a)(1) indicates that savings in time and expense can be achieved, particularly if the litigants meet and discuss the issues in the case as a predicate for this exchange and if a judge supports the process, as by using the results to guide further proceedings in the case. Courts in Canada and the United Kingdom have for many years required disclosure of certain information without awaiting a request from an adversary.

**Paragraph (1).** As the functional equivalent of court-ordered interrogatories, this paragraph requires early disclosure, without need for any request, of four types of information that have been customarily secured early in litigation through formal discovery. The introductory clause permits the court, by local rule, to exempt all or particular types of cases from these disclosure requirement *[sic]* or to modify the nature of the information to be disclosed. It is expected that courts would, for example, exempt cases like Social Security reviews and government collection cases in which discovery would not be appropriate or would be unlikely. By order the court may eliminate or modify the disclosure requirements in a particular case, and similarly the parties, unless precluded by order or local rule, can stipulate to elimination or modification of the requirements for that case. The disclosure obligations specified in paragraph (1) will not be appropriate for all cases, and it is expected that changes in these obligations will be made by the court or parties when the circumstances warrant.

Authorization of these local variations is, in large measure, included in order to accommodate the Civil Justice Reform Act of 1990, which implicitly directs districts to experiment during the study period with differing procedures to reduce the time and expense of civil litigation. The civil justice delay and expense reduction plans adopted by the courts under the Act differ as to the type, form, and timing of disclosures required. Section 105(c)(1) of the Act calls for a report by the Judicial Conference to Congress by December 31, 1995, comparing experience in twenty of these courts; and section 105(c)(2)(B) contemplates that some changes in the Rules may then be needed. While these studies may indicate the desirability of further changes in Rule 26(a)(1), these changes probably could not become effective before December 1998 at the earliest. In the meantime, the present revision puts in place a series of disclosure obligations that, unless a court acts affirmatively to impose other requirements or indeed to reject all such requirements for the present, are designed to eliminate certain discovery, help focus the discovery that is needed, and facilitate preparation for trial or settlement.

Subparagraph (A) requires identification of all persons who, based on the investigation conducted thus far, are likely to have discoverable information relevant to the factual disputes between the parties. All persons with such information should be

disclosed, whether or not their testimony will be supportive of the position of the disclosing party. As officers of the court, counsel are expected to disclose the identity of those persons who may be used by them as witnesses or who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the other parties. Indicating briefly the general topics on which such persons have information should not be burdensome, and will assist other parties in deciding which depositions will actually be needed.

Subparagraph (B) is included as a substitute for the inquiries routinely made about the existence and location of documents and other tangible things in the possession, custody, or control of the disclosing party. Although, unlike subdivision (a)(3)(C), an itemized listing of each exhibit is not required, the disclosure should describe and categorize, to the extent identified during the initial investigation, the nature and location of potentially relevant documents and records, including computerized data and other electronically-recorded information, sufficiently to enable opposing parties (1) to make an informed decision concerning which documents might need to be examined, at least initially, and (2) to frame their document requests in a manner likely to avoid squabbles resulting from the wording of the requests. As with potential witnesses, the requirement for disclosure of documents applies to all potentially relevant items then known to the party, whether or not supportive of its contentions in the case.

Unlike subparagraphs (C) and (D), subparagraph (B) does not require production of any documents. Of course, in cases involving few documents a disclosing party may prefer to provide copies of the documents rather than describe them, and the rule is written to afford this option to the disclosing party. If, as will be more typical, only the description is provided, the other parties are expected to obtain the documents desired by proceeding under Rule 34 or through informal requests. The disclosing party does not, by describing documents under subparagraph (B), waive its right to object to production on the basis of privilege or work product protection, or to assert that the documents are not sufficiently relevant to justify the burden or expense of production.

The initial disclosure requirements of subparagraphs (A) and (B) are limited to identification of potential evidence "relevant to disputed facts alleged with particularity in the pleadings." There is no need for a party to identify potential evidence with respect to allegations that are admitted. Broad, vague, and conclusory allegations sometimes tolerated in notice pleading--for example, the assertion that a product with many component parts is defective in some unspecified manner--should not impose upon responding parties the obligation at that point to search for and identify all persons possibly involved in, or all documents affecting, the design, manufacture, and assembly of the product. The greater the specificity and clarity of the allegations in the pleadings, the more complete should be the listing of potential witnesses and types of documentary evidence. Although paragraphs (1)(A) and (1)(B) by their terms refer to the factual disputes defined in the pleadings, the rule contemplates that these issues would be informally refined and clarified during the meeting of the parties under subdivision (f) and that the disclosure obligations would be adjusted in the light of these discussions. The disclosure requirements should, in short, be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish. The litigants should not indulge in gamesmanship with respect to the disclosure obligations.

Subparagraph (C) imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under Rule 34. A party claiming damages or other monetary relief must, in addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying as if a request for such materials had been made under Rule 34. This obligation applies only with respect to documents then reasonably available to it and not privileged or protected as work product. Likewise, a party would not be expected to provide a calculation of damages which, as in many patent infringement actions, depends on information in the possession of another party or person.

Subparagraph (D) replaces subdivision (b)(2) of Rule 26, and provides that liability insurance policies be made available for inspection and copying. The last two sentences of that subdivision have been omitted as unnecessary, not to signify any change of law. The disclosure of insurance information does not thereby render such information admissible in evidence. See Rule 411, Federal Rules of Evidence. Nor does subparagraph (D) require disclosure of applications for insurance, though in particular cases such information may be discoverable in accordance with revised subdivision (a)(5).

Unless the court directs a different time, the disclosures required by subdivision (a)(1) are to be made at or within 10 days after the meeting of the parties under subdivision (f). One of the purposes of this meeting is to refine the factual disputes with respect to which disclosures should be made under paragraphs (1)(A) and (1)(B), particularly if an answer has not been filed by a defendant, or, indeed, to afford the parties an opportunity to modify by stipulation the timing or scope of these obligations. The time of this meeting is generally left to the parties provided it is held at least 14 days before a scheduling conference is held or before a scheduling order is due under Rule 16(b). In cases in which no scheduling conference is held, this will mean that the meeting must ordinarily be held within 75 days after a defendant has first appeared in the case and hence that the initial disclosures would be due no later than 85 days after the first appearance of a defendant.

Before making its disclosures, a party has the obligation under subdivision (g)(1) to make a reasonable inquiry into the facts of the case. The rule does not demand an exhaustive investigation at this stage of the case, but one that is reasonable under the circumstances, focusing on the facts that are alleged with particularity in the pleadings. The type of investigation that can be expected at this point will vary based upon such factors as the number and complexity of the issues; the location, nature, number, and availability of potentially relevant witnesses and documents; the extent of past working relationships between the attorney and the client, particularly in handling related or similar litigation; and of course how long the party has to conduct an investigation, either before or after filing of the case. As provided in the last sentence of subdivision (a)(1), a party is not excused from the duty of disclosure merely because its investigation is incomplete. The party should make its initial disclosures based on the pleadings and the information then reasonably available to it. As its investigation continues and as the issues in the pleadings are clarified, it should supplement its disclosures as required by subdivision (e)(1). A party is not relieved from its obligation of disclosure merely because another party has not made its disclosures or has made an inadequate disclosure.

It will often be desirable, particularly if the claims made in the complaint are broadly stated, for the parties to have their Rule 26(f) meeting early in the case, perhaps before a defendant has answered the complaint or had time to conduct other than a cursory investigation. In such circumstances, in order to facilitate more meaningful and useful initial disclosures, they can and should stipulate to a period of more than 10 days after the meeting in which to make these disclosures, at least for defendants who had no advance notice of the potential litigation. A stipulation at an early meeting affording such a defendant at least 60 days after receiving the complaint in which to make its disclosures under subdivision (a)(1)--a period that is two weeks longer than the time formerly specified for responding to interrogatories served with a complaint--should be adequate and appropriate in most cases.

**Paragraph (2).** This paragraph imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses. Normally the court should prescribe a time for these disclosures in a scheduling order under Rule 16(b), and in most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue. In the absence of such a direction, the disclosures are to be made by all parties at least 90 days before the trial date or the date by which the case is to be ready for trial, except that an additional 30 days is allowed (unless the court specifies another time) for disclosure of expert testimony to be used solely to contradict or rebut the testimony that may be presented by another party's expert. For a discussion of procedures that have been used to enhance the reliability of expert testimony, see M. Graham, *Expert Witness Testimony and the Federal Rules of Evidence: Insuring Adequate Assurance of Trustworthiness,* 1986 U.Ill.L.Rev. 90.

Paragraph (2)(B) requires that persons retained or specially employed to provide expert testimony, or whose duties as an employee of the party regularly involve the giving of expert testimony, must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor. The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness. Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed. Rule 26(a)(2)(B) does not

preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

The report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions--whether or not ultimately relied upon by the expert--are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

Revised subdivision (b)(4)(A) authorizes the deposition of expert witnesses. Since depositions of experts required to prepare a written report may be taken only after the report has been served, the length of the deposition of such experts should be reduced, and in many cases the report may eliminate the need for a deposition. Revised subdivision (e)(1) requires disclosure of any material changes made in the opinions of an expert from whom a report is required, whether the changes are in the written report or in testimony given at a deposition.

For convenience, this rule and revised Rule 30 continue to use the term "expert" to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters. The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report. By local rule, order, or written stipulation, the requirement of a written report may be waived for particular experts or imposed upon additional persons who will provide opinions under Rule 702.

**Paragraph (3).** This paragraph imposes an additional duty to disclose, without any request, information customarily needed in final preparation for trial. These disclosures are to be made in accordance with schedules adopted by the court under Rule 16(b) or by special order. If no such schedule is directed by the court, the disclosures are to be made at least 30 days before commencement of the trial. By its terms, rule 26(a)(3) does not require disclosure of evidence to be used solely for impeachment purposes; however, disclosure of such evidence--as well as other items relating to conduct of trial--may be required by local rule or a pretrial order.

Subparagraph (A) requires the parties to designate the persons whose testimony they may present as substantive evidence at trial, whether in person or by deposition. Those who will probably be called as witnesses should be listed separately from those who are not likely to be called but who are being listed in order to preserve the right to do so if needed because of developments during trial. Revised Rule 37(c)(1) provides that only persons so listed may be used at trial to present substantive evidence. This restriction does not apply unless the omission was "without substantial justification" and hence would not bar an unlisted witness if the need for such testimony is based upon developments during trial that could not reasonably have been anticipated--*e.g.,* a change of testimony.

Listing a witness does not obligate the party to secure the attendance of the person at trial, but should preclude the party from objecting if the person is called to testify by another party who did not list the person as a witness.

Subparagraph (B) requires the party to indicate which of these potential witnesses will be presented by deposition at trial. A party expecting to use at trial a deposition not recorded by stenographic means is required by revised Rule 32 to provide the court with a transcript of the pertinent portions of such depositions. This rule requires that copies of the transcript of a nonstenographic deposition be provided to other parties in advance of trial for verification, an obvious concern since counsel often utilize their own personnel to prepare transcripts from audio or video tapes. By order or local rule, the court may require that parties designate the particular portions of stenographic depositions to be used at trial.

Subparagraph (C) requires disclosure of exhibits, including summaries (whether to be offered in lieu of other documentary evidence or to be used as an aid in understanding such evidence), that may be offered as substantive evidence. The rule requires a separate listing of each such exhibit, though it should permit voluminous items of a similar or standardized character to be described by meaningful categories. For example, unless the court has otherwise directed, a series of vouchers might be shown collectively as a single exhibit with their starting and ending dates. As with witnesses, the exhibits that will probably be offered are to be listed separately from those which are unlikely to be offered but which are listed in order to preserve the right to do so if needed because of developments during trial. Under revised Rule 37(c)(1) the court can permit use of unlisted documents the need for which could not reasonably have been anticipated in advance of trial.

Upon receipt of these final pretrial disclosures, other parties have 14 days (unless a different time is specified by the court) to disclose any objections they wish to preserve to the usability of the deposition testimony or to the admissibility of the documentary evidence (other than under Rules 402 and 403 of the Federal Rules of Evidence). Similar provisions have become commonplace either in pretrial orders or by local rules, and significantly expedite the presentation of evidence at trial, as well as eliminate the need to have available witnesses to provide "foundation" testimony for most items of documentary evidence. The listing of a potential objection does not constitute the making of that objection or require the court to rule on the objection; rather, it preserves the right of the party to make the objection when and as appropriate during trial. The court may, however, elect to treat the listing as a motion "in limine" and rule upon the objections in advance of trial to the extent appropriate.

The time specified in the rule for the final pretrial disclosures is relatively close to the trial date. The objective is to eliminate the time and expense in making these disclosures of evidence and objections in those cases that settle shortly before trial, while affording a reasonable time for final preparation for trial in those cases that do not settle. In many cases, it will be desirable for the court in a scheduling or pretrial order to set an earlier time for disclosures of evidence and provide more time for disclosing potential objections.

**Paragraph (4).** This paragraph prescribes the form of disclosures. A signed written statement is required, reminding the parties and counsel of the solemnity of the obligations imposed; and the signature on the initial or pretrial disclosure is a certification under subdivision (g)(1) that it is complete and correct as of the time when made. Consistent with Rule 5(d), these disclosures are to be filed with the court unless otherwise directed. It is anticipated that many courts will direct that expert reports required under paragraph (2)(B) not be filed until needed in connection with a motion or for trial.

**Paragraph (5).** This paragraph is revised to take note of the availability of revised Rule 45 for inspection from non-parties of documents and premises without the need for a deposition.

**Subdivision (b).** This subdivision is revised in several respects. First, former paragraph (1) is subdivided into two paragraphs for ease of reference and to avoid renumbering of paragraphs (3) and (4). Textual changes are then made in new paragraph (2) to enable the court to keep tighter rein on the extent of discovery. The information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression. Amendments to Rules 30, 31, and 33 place presumptive limits on the number of depositions and interrogatories, subject to leave of court to pursue additional discovery. The revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery and to authorize courts that develop case tracking systems based on the complexity of cases to increase or decrease by local rule the presumptive number of depositions and interrogatories allowed in particular types or classifications of cases. The revision also dispels any doubt as to the power of the court to impose limitations on the length of depositions under Rule 30 or on the number of requests for admission under Rule 36.

Second, former paragraph (2), relating to insurance, has been relocated as part of the required initial disclosures under subdivision (a)(1)(D), and revised to provide for disclosure of the policy itself.

Third, paragraph (4)(A) is revised to provide that experts who are expected to be witnesses will be subject to deposition prior to trial, conforming the norm stated in the rule to the actual practice followed in most courts, in which depositions of experts have become standard. Concerns regarding the expense of such depositions should be mitigated by the fact that the expert's fees for the deposition will ordinarily be borne by the party taking the deposition. The requirement under subdivision (a)(2)(B) of a complete and detailed report of the expected testimony of certain forensic experts may, moreover, eliminate the need for some such depositions or at least reduce the length of the depositions. Accordingly, the deposition of an expert required by subdivision (a)(2)(B) to provide a written report may be taken only after the report has been served.

Paragraph (4)(C), bearing on compensation of experts, is revised to take account of the changes in paragraph (4)(A).

Paragraph (5) is a new provision. A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product protection. To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.

The party must also provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection. Although the person from whom the discovery is sought decides whether to claim a privilege or protection, the court ultimately decides whether, if this claim is challenged, the privilege or protection applies. Providing information pertinent to the applicability of the privilege or protection should reduce the need for in camera examination of the documents.

The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories. A party can seek relief through a protective order under subdivision (c) if compliance with the requirement for providing this information would be an unreasonable burden. In rare circumstances some of the pertinent information affecting applicability of the claim, such as the identity of the client, may itself be privileged; the rule provides that such information need not be disclosed.

The obligation to provide pertinent information concerning withheld privileged materials applies only to items "otherwise discoverable." If a broad discovery request is made--for example, for all documents of a particular type during a twenty year period--and the responding party believes in good faith that production of documents for more than the past three years would be unduly burdensome, it should make its objection to the breadth of the request and, with respect to the documents generated in that three year period, produce the unprivileged documents and describe those withheld under the claim of privilege. If the court later rules that documents for a seven year period are properly discoverable, the documents for the additional four years should then be either produced (if not privileged) or described (if claimed to be privileged).

**Subdivision (c).** The revision requires that before filing a motion for a protective order the movant must confer--either in person or by telephone--with the other affected parties in a good faith effort to resolve the discovery dispute without the need for court intervention. If the movant is unable to get opposing parties even to discuss the matter, the efforts in attempting to arrange such a conference should be indicated in the certificate.

**Subdivision (d).** This subdivision is revised to provide that formal discovery--as distinguished from interviews of potential witnesses and other informal discovery--not commence until the parties have met and conferred as required by subdivision (f). Discovery can begin earlier if authorized under Rule 30(a)(2)(C) (deposition of person about to leave the country) or by local rule, order, or stipulation. This will be appropriate in some cases, such as those involving requests for a preliminary injunction or motions challenging personal jurisdiction. If a local rule exempts any types of cases in which discovery may be needed from the requirement of a meeting under Rule 26(f), it should specify when discovery may commence in those cases.

The meeting of counsel is to take place as soon as practicable and in any event at least 14 days before the date of the scheduling conference under Rule 16(b) or the date a scheduling order is due under Rule 16(b). The court can assure that discovery is not unduly delayed either by entering a special order or by setting the case for a scheduling conference.

**Subdivision (e).** This subdivision is revised to provide that the requirement for supplementation applies to all disclosures required by subdivisions (a)(1)-(3). Like the former rule, the duty, while imposed on a "party," applies whether the corrective information is learned by the client or by the attorney. Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches. It may be useful for the scheduling order to specify the time or times when supplementations should be made.

The revision also clarifies that the obligation to supplement responses to formal discovery requests applies to interrogatories, requests for production, and requests for admissions, but not ordinarily to deposition testimony. However, with respect to experts from whom a written report is required under subdivision (a)(2)(B), changes in the opinions expressed by the expert whether in the report or at a subsequent deposition are subject to a duty of supplemental disclosure under subdivision (e)(1).

The obligation to supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect. There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition or when an expert during a deposition corrects information contained in an earlier report.

**Subdivision (f).** This subdivision was added in 1980 to provide a party threatened with abusive discovery with a special means for obtaining judicial intervention other than through discrete motions under Rules 26(c) and 37(a). The amendment envisioned a two-step process: first, the parties would attempt to frame a mutually agreeable plan; second, the court would hold a "discovery conference" and then enter an order establishing a schedule and limitations for the conduct of discovery. It was contemplated that the procedure, an elective one triggered on request of a party, would be used in special cases rather than as a routine matter. As expected, the device has been used only sparingly in most courts, and judicial controls over the discovery process have ordinarily been imposed through scheduling orders under Rule 16(b) or through rulings on discovery motions.

The provisions relating to a conference with the court are removed from subdivision (f). This change does not signal any lessening of the importance of judicial supervision. Indeed, there is a greater need for early judicial involvement to consider the scope and timing of the disclosure requirements of Rule 26(a) and the presumptive limits on discovery imposed under these rules or by local rules. Rather, the change is made because the provisions addressing the use of conferences with the court to control discovery are more properly included in Rule 16, which is being revised to highlight the court's powers regarding the discovery process.

The desirability of some judicial control of discovery can hardly be doubted. Rule 16, as revised, requires that the court set a time for completion of discovery and authorizes various other orders affecting the scope, timing, and extent of discovery and disclosures. Before entering such orders, the court should consider the views of the parties, preferably by means of a conference, but at the least through written submissions. Moreover, it is desirable that the parties' proposals regarding discovery be developed through a process where they meet in person, informally explore the nature and basis of the issues, and discuss how discovery can be conducted most efficiently and economically.

As noted above, former subdivision (f) envisioned the development of proposed discovery plans as an optional procedure to be used in relatively few cases. The revised rule directs that in all cases not exempted by local rule or special order the litigants must meet in person and plan for discovery. Following this meeting, the parties submit to the court their proposals for a discovery plan and can begin formal discovery. Their report will assist the court in seeing that the timing and scope of disclosures under revised Rule 26(a) and the limitations on the extent of discovery under these rules and local rules are tailored to the circumstances of the particular case.

To assure that the court has the litigants' proposals before deciding on a scheduling order and that the commencement of discovery is not delayed unduly, the rule provides that the meeting of the parties take place as soon as practicable and in any event at least 14 days before a scheduling conference is held or before a scheduling order is due under Rule 16(b). (Rule 16(b) requires that a scheduling order be entered within 90 days after the first appearance of a defendant or, if earlier, within 120 days after the complaint has been served on any defendant.) The obligation to participate in the planning process is imposed on all parties that have appeared in the case, including defendants who, because of a pending Rule 12 motion, may not have yet filed an answer in the case. Each such party should attend the meeting, either through one of its attorneys or in person if unrepresented. If more parties are joined or appear after the initial meeting, an additional meeting may be desirable.

Subdivision (f) describes certain matters that should be accomplished at the meeting and included in the proposed discovery plan. This listing does not exclude consideration of other subjects, such as the time when any dispositive motions should be filed and when the case should be ready for trial.

The parties are directed under subdivision (a)(1) to make the disclosures required by that subdivision at or within 10 days after this meeting. In many cases the parties should use the meeting to exchange, discuss, and clarify their respective disclosures. In other cases, it may be more useful if the disclosures are delayed until after the parties have discussed at the meeting the claims and defenses in order to define the issues with respect to which the initial disclosures should be made. As discussed in the Notes to subdivision (a)(1), the parties may also need to consider whether a stipulation extending this 10-day period would be appropriate, as when a defendant would otherwise have less than 60 days after being served in which to make its initial disclosure. The parties should also discuss at the meeting what additional information, although not subject to the disclosure requirements, can be made available informally without the necessity for formal discovery requests.

The report is to be submitted to the court within 10 days after the meeting and should not be difficult to prepare. In most cases counsel should be able to agree that one of them will be responsible for its preparation and submission to the court. Form 35 has been added in the Appendix to the Rules, both to illustrate the type of report that is contemplated and to serve as a checklist for the meeting.

The litigants are expected to attempt in good faith to agree on the contents of the proposed discovery plan. If they cannot agree on all aspects of the plan, their report to the court should indicate the competing proposals of the parties on those items, as well as the matters on which they agree. Unfortunately, there may be cases in which, because of disagreements about time or place or for other reasons, the meeting is not attended by all parties or, indeed, no meeting takes place. In such situations, the report-- or reports--should describe the circumstances and the court may need to consider sanctions under Rule 37(g).

By local rule or special order, the court can exempt particular cases or types of cases from the meet-and-confer requirement of subdivision (f). In general this should include any types of cases which are exempted by local rule from the requirement for a scheduling order under Rule 16(b), such as cases in which there will be no discovery (*e.g.,* bankruptcy appeals and reviews of social security determinations). In addition, the court may want to exempt cases in which discovery is rarely needed (*e.g.,* government collection cases and proceedings to enforce administrative summonses) or in which a meeting of the parties might be impracticable (*e.g.,* actions by unrepresented prisoners). Note that if a court exempts from the requirements for a meeting any types of cases in which discovery may be needed, it should indicate when discovery may commence in those cases.

**Subdivision (g).** Paragraph (1) is added to require signatures on disclosures, a requirement that parallels the provisions of paragraph (2) with respect to discovery requests, responses, and objections. The provisions of paragraph (3) have been modified to be consistent with Rules 37(a)(4) and 37(c)(1); in combination, these rules establish sanctions for violation of the rules regarding disclosures and discovery matters. Amended Rule 11 no longer applies to such violations.

**2000 Amendment**

**Purposes of amendments.** The Rule 26(a)(1) initial disclosure provisions are amended to establish a nationally uniform practice. The scope of the disclosure obligation is narrowed to cover only information that the disclosing party may use to support its position. In addition, the rule exempts specified categories of proceedings from initial disclosure, and permits a party who contends that disclosure is not appropriate in the circumstances of the case to present its objections to the court, which must then determine whether disclosure should be made. Related changes are made in Rules 26(d) and (f).

The initial disclosure requirements added by the 1993 amendments permitted local rules directing that disclosure would not be required or altering its operation. The inclusion of the "opt out" provision reflected the strong opposition to initial disclosure felt in some districts, and permitted experimentation with differing disclosure rules in those districts that were favorable to disclosure. The local option also recognized that--partly in response to the first publication in 1991 of a proposed disclosure rule--many districts had adopted a variety of disclosure programs under the aegis of the Civil Justice Reform Act. It was hoped that developing experience under a variety of disclosure systems would support eventual refinement of a uniform national disclosure practice. In addition, there was hope that local experience could identify categories of actions in which disclosure is not useful.

A striking array of local regimes in fact emerged for disclosure and related features introduced in 1993. *See* D. Stienstra, *Implementation of Disclosure in United States District Courts, With Specific Attention to Courts' Responses to Selected Amendments to Federal Rule of Civil Procedure 26* (Federal Judicial Center, March 30, 1998) (describing and categorizing local regimes). In its final report to Congress on the CJRA experience, the Judicial Conference recommended reexamination of the need for national uniformity, particularly in regard to initial disclosure. Judicial Conference, *Alternative Proposals for Reduction of Cost and Delay: Assessment of Principles, Guidelines and Techniques,* 175 F.R.D. 62, 98 (1997).

At the Committee's request, the Federal Judicial Center undertook a survey in 1997 to develop information on current disclosure and discovery practices. *See* T. Willging, J. Shapard, D. Stienstra & D. Miletich, *Discovery and Disclosure Practice, Problems, and Proposals for Change* (Federal Judicial Center, 1997). In addition, the Committee convened two conferences on discovery involving lawyers from around the country and received reports and recommendations on possible discovery amendments from a number of bar groups. Papers and other proceedings from the second conference are published in 39 Boston Col. L. Rev. 517-840 (1998).

The Committee has discerned widespread support for national uniformity. Many lawyers have experienced difficulty in coping with divergent disclosure and other practices as they move from one district to another. Lawyers surveyed by the Federal Judicial Center ranked adoption of a uniform national disclosure rule second among proposed rule changes (behind increased availability of judges to resolve discovery disputes) as a means to reduce litigation expenses without interfering with fair outcomes. *Discovery and Disclosure Practice, supra,* at 44-45. National uniformity is also a central purpose of the Rules Enabling Act of 1934, as amended, 28 U.S.C. §§ 2072-2077.

These amendments restore national uniformity to disclosure practice. Uniformity is also restored to other aspects of discovery by deleting most of the provisions authorizing local rules that vary the number of permitted discovery events or the length of depositions. Local rule options are also deleted from Rules 26(d) and (f).

**Subdivision (a)(1).** The amendments remove the authority to alter or opt out of the national disclosure requirements by local rule, invalidating not only formal local rules but also informal "standing" orders of an individual judge or court that purport to create exemptions from--or limit or expand--the disclosure provided under the national rule. *See* Rule 83. Case-specific orders remain proper, however, and are expressly required if a party objects that initial disclosure is not appropriate in the circumstances of the action. Specified categories of proceedings are excluded from initial disclosure under subdivision (a)(1) (E). In addition, the parties can stipulate to forgo disclosure, as was true before. But even in a case excluded by subdivision (a) (1)(E) or in which the parties stipulate to bypass disclosure, the court can order exchange of similar information in managing the action under Rule 16.

The initial disclosure obligation of subdivisions (a)(1)(A) and (B) has been narrowed to identification of witnesses and documents that the disclosing party may use to support its claims or defenses. "Use" includes any use at a pretrial conference, to support a motion, or at trial. The disclosure obligation is also triggered by intended use in discovery, apart from use to respond to a discovery request; use of a document to question a witness during a deposition is a common example. The disclosure obligation attaches both to witnesses and documents a party intends to use and also to witnesses and to documents the party intends to use if--in the language of Rule 26(a)(3)--"the need arises."

A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use. The obligation to disclose information the party may use connects directly to the exclusion sanction of Rule 37(c)(1). Because the disclosure obligation is limited to material that the party may use, it is no longer tied to particularized allegations in the pleadings. Subdivision (e)(1), which is unchanged, requires supplementation if information later acquired would have been subject to the disclosure requirement. As case preparation continues, a party must supplement its disclosures when it determines that it may use a witness or document that it did not previously intend to use.

The disclosure obligation applies to "claims and defenses," and therefore requires a party to disclose information it may use to support its denial or rebuttal of the allegations, claim, or defense of another party. It thereby bolsters the requirements of Rule 11(b)(4), which authorizes denials "warranted on the evidence," and disclosure should include the identity of any witness or document that the disclosing party may use to support such denials.

Subdivision (a)(3) presently excuses pretrial disclosure of information solely for impeachment. Impeachment information is similarly excluded from the initial disclosure requirement.

Subdivisions (a)(1)(C) and (D) are not changed. Should a case be exempted from initial disclosure by Rule 26(a)(1)(E) or by agreement or order, the insurance information described by subparagraph (D) should be subject to discovery, as it would have been under the principles of former Rule 26(b)(2), which was added in 1970 and deleted in 1993 as redundant in light of the new initial disclosure obligation.

New subdivision (a)(1)(E) excludes eight specified categories of proceedings from initial disclosure. The objective of this listing is to identify cases in which there is likely to be little or no discovery, or in which initial disclosure appears unlikely to contribute to the effective development of the case. The list was developed after a review of the categories excluded by local rules in various districts from the operation of Rule 16(b) and the conference requirements of subdivision (f). Subdivision (a)(1)(E) refers to categories of "proceedings" rather than categories of "actions" because some might not properly be labeled "actions." Case designations made by the parties or the clerk's office at the time of filing do not control application of the exemptions. The descriptions in the rule are generic and are intended to be administered by the parties--and, when needed, the courts--with the flexibility needed to adapt to gradual evolution in the types of proceedings that fall within these general categories. The exclusion of an action for review on an administrative record, for example, is intended to reach a proceeding that is framed as an "appeal" based solely on an administrative record. The exclusion should not apply to a proceeding in a form that commonly permits admission of new evidence to supplement the record. Item (vii), excluding a proceeding ancillary to proceedings in other courts, does not refer to bankruptcy proceedings; application of the Civil Rules to bankruptcy proceedings is determined by the Bankruptcy Rules.

Subdivision (a)(1)(E) is likely to exempt a substantial proportion of the cases in most districts from the initial disclosure requirement. Based on 1996 and 1997 case filing statistics, Federal Judicial Center staff estimate that, nationwide, these categories total approximately one-third of all civil filings.

The categories of proceedings listed in subdivision (a)(1)(E) are also exempted from the subdivision (f) conference requirement and from the subdivision (d) moratorium on discovery. Although there is no restriction on commencement of discovery in these cases, it is not expected that this opportunity will often lead to abuse since there is likely to be little or no discovery in most

such cases. Should a defendant need more time to respond to discovery requests filed at the beginning of an exempted action, it can seek relief by motion under Rule 26(c) if the plaintiff is unwilling to defer the due date by agreement.

Subdivision (a)(1)(E)'s enumeration of exempt categories is exclusive. Although a case-specific order can alter or excuse initial disclosure, local rules or "standing" orders that purport to create general exemptions are invalid. *See* Rule 83.

The time for initial disclosure is extended to 14 days after the subdivision (f) conference unless the court orders otherwise. This change is integrated with corresponding changes requiring that the subdivision (f) conference be held 21 days before the Rule 16(b) scheduling conference or scheduling order, and that the report on the subdivision (f) conference be submitted to the court 14 days after the meeting. These changes provide a more orderly opportunity for the parties to review the disclosures, and for the court to consider the report. In many instances, the subdivision (f) conference and the effective preparation of the case would benefit from disclosure before the conference, and earlier disclosure is encouraged.

The presumptive disclosure date does not apply if a party objects to initial disclosure during the subdivision (f) conference and states its objection in the subdivision (f) discovery plan. The right to object to initial disclosure is not intended to afford parties an opportunity to "opt out" of disclosure unilaterally. It does provide an opportunity for an objecting party to present to the court its position that disclosure would be "inappropriate in the circumstances of the action." Making the objection permits the objecting party to present the question to the judge before any party is required to make disclosure. The court must then rule on the objection and determine what disclosures--if any--should be made. Ordinarily, this determination would be included in the Rule 16(b) scheduling order, but the court could handle the matter in a different fashion. Even when circumstances warrant suspending some disclosure obligations, others--such as the damages and insurance information called for by subdivisions (a)(1)(C) and (D)--may continue to be appropriate.

The presumptive disclosure date is also inapplicable to a party who is "first served or otherwise joined" after the subdivision (f) conference. This phrase refers to the date of service of a claim on a party in a defensive posture (such as a defendant or third-party defendant), and the date of joinder of a party added as a claimant or an intervenor. Absent court order or stipulation, a new party has 30 days in which to make its initial disclosures. But it is expected that later-added parties will ordinarily be treated the same as the original parties when the original parties have stipulated to forgo initial disclosure, or the court has ordered disclosure in a modified form.

**Subdivision (a)(3).** The amendment to Rule 5(d) forbids filing disclosures under subdivisions (a)(1) and (a)(2) until they are used in the proceeding, and this change is reflected in an amendment to subdivision (a)(4). Disclosures under subdivision (a)(3), however, may be important to the court in connection with the final pretrial conference or otherwise in preparing for trial. The requirement that objections to certain matters be filed points up the court's need to be provided with these materials. Accordingly, the requirement that subdivision (a)(3) materials be filed has been moved from subdivision (a)(4) to subdivision (a)(3), and it has also been made clear that they--and any objections--should be filed "promptly."

**Subdivision (a)(4).** The filing requirement has been removed from this subdivision. Rule 5(d) has been amended to provide that disclosures under subdivisions (a)(1) and (a)(2) must not be filed until used in the proceeding. Subdivision (a)(3) has been amended to require that the disclosures it directs, and objections to them, be filed promptly. Subdivision (a)(4) continues to require that all disclosures under subdivisions (a)(1), (a)(2), and (a)(3) be in writing, signed, and served.

"Shall" is replaced by "must" under the program to conform amended rules to current style conventions when there is no ambiguity.

**GAP Report**

The Advisory Committee recommends that the amendments to Rules 26(a)(1)(A) and (B) be changed so that initial disclosure applies to information the disclosing party "may use to support" its claims or defenses. It also recommends changes in

the Committee Note to explain that disclosure requirement. In addition, it recommends inclusion in the Note of further explanatory matter regarding the exclusion from initial disclosure provided in new Rule 26(a)(1)(E) for actions for review on an administrative record and the impact of these exclusions on bankruptcy proceedings. Minor wording improvements in the Note are also proposed.

**Subdivision (b)(1).** In 1978, the Committee published for comment a proposed amendment, suggested by the Section of Litigation of the American Bar Association, to refine the scope of discovery by deleting the "subject matter" language. This proposal was withdrawn, and the Committee has since then made other changes in the discovery rules to address concerns about overbroad discovery. Concerns about costs and delay of discovery have persisted nonetheless, and other bar groups have repeatedly renewed similar proposals for amendment to this subdivision to delete the "subject matter" language. Nearly one-third of the lawyers surveyed in 1997 by the Federal Judicial Center endorsed narrowing the scope of discovery as a means of reducing litigation expense without interfering with fair case resolutions. *Discovery and Disclosure Practice, supra*, at 44-45 (1997). The Committee has heard that in some instances, particularly cases involving large quantities of discovery, parties seek to justify discovery requests that sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the "subject matter" involved in the action.

The amendments proposed for subdivision (b)(1) include one element of these earlier proposals but also differ from these proposals in significant ways. The similarity is that the amendments describe the scope of party-controlled discovery in terms of matter relevant to the claim or defense of any party. The court, however, retains authority to order discovery of any matter relevant to the subject matter involved in the action for good cause. The amendment is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery. The Committee has been informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery. Increasing the availability of judicial officers to resolve discovery disputes and increasing court management of discovery were both strongly endorsed by the attorneys surveyed by the Federal Judicial Center. *See Discovery and Disclosure Practice*, *supra*, at 44. Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention. When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

The amendments also modify the provision regarding discovery of information not admissible in evidence. As added in 1946, this sentence was designed to make clear that otherwise relevant material could not be withheld because it was hearsay or otherwise inadmissible. The Committee was concerned that the "reasonably calculated to lead to the discovery of admissible

evidence" standard set forth in this sentence might swallow any other limitation on the scope of discovery. Accordingly, this sentence has been amended to clarify that information must be relevant to be discoverable, even though inadmissible, and that discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence. As used here, "relevant" means within the scope of discovery as defined in this subdivision, and it would include information relevant to the subject matter involved in the action if the court has ordered discovery to that limit based on a showing of good cause.

Finally, a sentence has been added calling attention to the limitations of subdivision (b)(2)(i), (ii), and (iii). These limitations apply to discovery that is otherwise within the scope of subdivision (b)(1). The Committee has been told repeatedly that courts have not implemented these limitations with the vigor that was contemplated. *See 8 Federal Practice & Procedure § 2008.1 at 121.* This otherwise redundant cross-reference has been added to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery. *Cf. Crawford-El v. Britton, 118 S.Ct. 1584, 1597 (1998)* (quoting Rule 26(b)(2)(iii) and stating that "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly").

### GAP Report

The Advisory Committee recommends changing the rule to authorize the court to expand discovery to any "matter"--not "information"--relevant to the subject matter involved in the action. In addition, it recommends additional clarifying material in the Committee Note about the impact of the change on some commonly disputed discovery topics, the relationship between cost-bearing under Rule 26(b)(2) and expansion of the scope of discovery on a showing of good cause, and the meaning of "relevant" in the revision to the last sentence of current subdivision (b)(1). In addition, some minor clarifications of language changes have been proposed for the Committee Note.

**Subdivision (b)(2).** Rules 30, 31, and 33 establish presumptive national limits on the numbers of depositions and interrogatories. New Rule 30(d)(2) establishes a presumptive limit on the length of depositions. Subdivision (b)(2) is amended to remove the previous permission for local rules that establish different presumptive limits on these discovery activities. There is no reason to believe that unique circumstances justify varying these nationally-applicable presumptive limits in certain districts. The limits can be modified by court order or agreement in an individual action, but "standing" orders imposing different presumptive limits are not authorized. Because there is no national rule limiting the number of Rule 36 requests for admissions, the rule continues to authorize local rules that impose numerical limits on them. This change is not intended to interfere with differentiated case management in districts that use this technique by case-specific order as part of their Rule 16 process.

**Subdivision (d).** The amendments remove the prior authority to exempt cases by local rule from the moratorium on discovery before the subdivision (f) conference, but the categories of proceedings exempted from initial disclosure under subdivision (a)(1)(E) are excluded from subdivision (d). The parties may agree to disregard the moratorium where it applies, and the court may so order in a case, but "standing" orders altering the moratorium are not authorized.

**Subdivision (f).** As in subdivision (d), the amendments remove the prior authority to exempt cases by local rule from the conference requirement. The Committee has been informed that the addition of the conference was one of the most successful changes made in the 1993 amendments, and it therefore has determined to apply the conference requirement nationwide. The categories of proceedings exempted from initial disclosure under subdivision (a)(1)(E) are exempted from the conference requirement for the reasons that warrant exclusion from initial disclosure. The court may order that the conference need not occur in a case where otherwise required, or that it occur in a case otherwise exempted by subdivision (a)(1)(E). "Standing" orders altering the conference requirement for categories of cases are not authorized.

The rule is amended to require only a "conference" of the parties, rather than a "meeting." There are important benefits to face-to-face discussion of the topics to be covered in the conference, and those benefits may be lost if other means of conferring were routinely used when face-to-face meetings would not impose burdens. Nevertheless, geographic conditions in some districts may exact costs far out of proportion to these benefits. The amendment allows the court by case-specific order to require a face-to-face meeting, but "standing" orders so requiring are not authorized.

As noted concerning the amendments to subdivision (a)(1), the time for the conference has been changed to at least 21 days before the Rule 16 scheduling conference, and the time for the report is changed to no more than 14 days after the Rule 26(f) conference. This should ensure that the court will have the report well in advance of the scheduling conference or the entry of the scheduling order.

Since Rule 16 was amended in 1983 to mandate some case management activities in all courts, it has included deadlines for Completing these tasks to ensure that all courts do so within a reasonable time. Rule 26(f) was fit into this scheme when it was adopted in 1993. It was never intended, however, that the national requirements that certain activities be completed by a certain time should delay case management in districts that move much faster than the national rules direct, and the rule is therefore amended to permit such a court to adopt a local rule that shortens the period specified for the completion of these tasks.

"Shall" is replaced by "must," "does," or an active verb under the program to conform amended rules to current style conventions when there is no ambiguity.

**GAP Report**

The Advisory Committee recommends adding a sentence to the published amendments to Rule 26(f) authorizing local rules shortening the time between the attorney conference and the court's action under Rule 16(b), and addition to the Committee Note of explanatory material about this change to the rule. This addition can be made without republication in response to public comments.

2006 Amendment

**Subdivision (a).** Rule 26(a)(1)(B) is amended to parallel Rule 34(a) by recognizing that a party must disclose electronically stored information as well as documents that it may use to support its claims or defenses. The term "electronically stored information" has the same broad meaning in Rule 26(a)(1) as in Rule 34(a). This amendment is consistent with the 1993 addition of Rule 26(a)(1)(B). The term "data compilations" is deleted as unnecessary because it is a subset of both documents and electronically stored information.

**[Subdivision (a)(1)(E).]** Civil forfeiture actions are added to the list of exemptions from Rule 26(a)(1) disclosure requirements. These actions are governed by new Supplemental Rule G. Disclosure is not likely to be useful.

**Subdivision (b)(2).** The amendment to Rule 26(b)(2) is designed to address issues raised by difficulties in locating, retrieving, and providing discovery of some electronically stored information. Electronic storage systems often make it easier to locate and retrieve information. These advantages are properly taken into account in determining the reasonable scope of discovery in a particular case. But some sources of electronically stored information can be accessed only with substantial burden and cost. In a particular case, these burdens and costs may make the information on such sources not reasonably accessible.

It is not possible to define in a rule the different types of technological features that may affect the burdens and costs of accessing electronically stored information. Information systems are designed to provide ready access to information used in regular ongoing activities. They also may be designed so as to provide ready access to information that is not regularly used. But a system may retain information on sources that are accessible only by incurring substantial burdens or costs. Subparagraph (B) is added to regulate discovery from such sources.

Under this rule, a responding party should produce electronically stored information that is relevant, not privileged, and reasonably accessible, subject to the (b)(2)(C) limitations that apply to all discovery. The responding party must also identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing. The

identification should, to the extent possible, provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources.

A party's identification of sources of electronically stored information as not reasonably accessible does not relieve the party of its common-law or statutory duties to preserve evidence. Whether a responding party is required to preserve unsearched sources of potentially responsive information that it believes are not reasonably accessible depends on the circumstances of each case. It is often useful for the parties to discuss this issue early in discovery.

The volume of -- and the ability to search -- much electronically stored information means that in many cases the responding party will be able to produce information from reasonably accessible sources that will fully satisfy the parties' discovery needs. In many circumstances the requesting party should obtain and evaluate the information from such sources before insisting that the responding party search and produce information contained on sources that are not reasonably accessible. If the requesting party continues to seek discovery of information from sources identified as not reasonably accessible, the parties should discuss the burdens and costs of accessing and retrieving the information, the needs that may establish good cause for requiring all or part of the requested discovery even if the information sought is not reasonably accessible, and conditions on obtaining and producing the information that may be appropriate.

If the parties cannot agree whether, or on what terms, sources identified as not reasonably accessible should be searched and discoverable information produced, the issue may be raised either by a motion to compel discovery or by a motion for a protective order. The parties must confer before bringing either motion. If the parties do not resolve the issue and the court must decide, the responding party must show that the identified sources of information are not reasonably accessible because of undue burden or cost. The requesting party may need discovery to test this assertion. Such discovery might take the form of requiring the responding party to conduct a sampling of information contained on the sources identified as not reasonably accessible; allowing some form of inspection of such sources; or taking depositions of witnesses knowledgeable about the responding party's information systems.

Once it is shown that a source of electronically stored information is not reasonably accessible, the requesting party may still obtain discovery by showing good cause, considering the limitations of Rule 26(b)(2)(C) that balance the costs and potential benefits of discovery. The decision whether to require a responding party to search for and produce information that is not reasonably accessible depends not only on the burdens and costs of doing so, but also on whether those burdens and costs can be justified in the circumstances of the case. Appropriate considerations may include: (1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources.

The responding party has the burden as to one aspect of the inquiry -- whether the identified sources are not reasonably accessible in light of the burdens and costs required to search for, retrieve, and produce whatever responsive information may be found. The requesting party has the burden of showing that its need for the discovery outweighs the burdens and costs of locating, retrieving, and producing the information. In some cases, the court will be able to determine whether the identified sources are not reasonably accessible and whether the requesting party has shown good cause for some or all of the discovery, consistent with the limitations of Rule 26(b)(2)(C), through a single proceeding or presentation. The good-cause determination, however, may be complicated because the court and parties may know little about what information the sources identified as not reasonably accessible might contain, whether it is relevant, or how valuable it may be to the litigation. In such cases, the parties may need some focused discovery, which may include sampling of the sources, to learn more about what burdens and costs are involved in accessing the information, what the information consists of, and how valuable it is for the litigation in light of information that can be obtained by exhausting other opportunities for discovery.

The good-cause inquiry and consideration of the Rule 26(b)(2)(C) limitations are coupled with the authority to set conditions for discovery. The conditions may take the form of limits on the amount, type, or sources of information required to be accessed and produced. The conditions may also include payment by the requesting party of part or all of the reasonable costs of obtaining information from sources that are not reasonably accessible. A requesting party's willingness to share or bear the access costs may be weighed by the court in determining whether there is good cause. But the producing party's burdens in reviewing the information for relevance and privilege may weigh against permitting the requested discovery.

The limitations of Rule 26(b)(2)(C) continue to apply to all discovery of electronically stored information, including that stored on reasonably accessible electronic sources.

**Subdivision (b)(5).** The Committee has repeatedly been advised that the risk of privilege waiver, and the work necessary to avoid it, add to the costs and delay of discovery. When the review is of electronically stored information, the risk of waiver, and the time and effort required to avoid it, can increase substantially because of the volume of electronically stored information and the difficulty in ensuring that all information to be produced has in fact been reviewed. Rule 26(b)(5)(A) provides a procedure for a party that has withheld information on the basis of privilege or protection as trial-preparation material to make the claim so that the requesting party can decide whether to contest the claim and the court can resolve the dispute. Rule 26(b)(5)(B) is added to provide a procedure for a party to assert a claim of privilege or trial-preparation material protection after information is produced in discovery in the action and, if the claim is contested, permit any party that received the information to present the matter to the court for resolution.

Rule 26(b)(5)(B) does not address whether the privilege or protection that is asserted after production was waived by the production. The courts have developed principles to determine whether, and under what circumstances, waiver results from inadvertent production of privileged or protected information. Rule 26(b)(5)(B) provides a procedure for presenting and addressing these issues. Rule 26(b)(5)(B) works in tandem with Rule 26(f), which is amended to direct the parties to discuss privilege issues in preparing their discovery plan, and which, with amended Rule 16(b), allows the parties to ask the court to include in an order any agreements the parties reach regarding issues of privilege or trial-preparation material protection. Agreements reached under Rule 26(f)(4) and orders including such agreements entered under Rule 16(b)(6) may be considered when a court determines whether a waiver has occurred. Such agreements and orders ordinarily control if they adopt procedures different from those in Rule 26(b)(5)(B).

A party asserting a claim of privilege or protection after production must give notice to the receiving party. That notice should be in writing unless the circumstances preclude it. Such circumstances could include the assertion of the claim during a deposition. The notice should be as specific as possible in identifying the information and stating the basis for the claim. Because the receiving party must decide whether to challenge the claim and may sequester the information and submit it to the court for a ruling on whether the claimed privilege or protection applies and whether it has been waived, the notice should be sufficiently detailed so as to enable the receiving party and the court to understand the basis for the claim and to determine whether waiver has occurred. Courts will continue to examine whether a claim of privilege or protection was made at a reasonable time when delay is part of the waiver determination under the governing law.

After receiving notice, each party that received the information must promptly return, sequester, or destroy the information and any copies it has. The option of sequestering or destroying the information is included in part because the receiving party may have incorporated the information in protected trial-preparation materials. No receiving party may use or disclose the information pending resolution of the privilege claim. The receiving party may present to the court the questions whether the information is privileged or protected as trial-preparation material, and whether the privilege or protection has been waived. If it does so, it must provide the court with the grounds for the privilege or protection specified in the producing party's notice, and serve all parties. In presenting the question, the party may use the content of the information only to the extent permitted by the applicable law of privilege, protection for trial-preparation material, and professional responsibility.

If a party disclosed the information to nonparties before receiving notice of a claim of privilege or protection as trial-preparation material, it must take reasonable steps to retrieve the information and to return it, sequester it until the claim is resolved, or destroy it.

Whether the information is returned or not, the producing party must preserve the information pending the court's ruling on whether the claim of privilege or of protection is properly asserted and whether it was waived. As with claims made under Rule 26(b)(5)(A), there may be no ruling if the other parties do not contest the claim.

**Subdivision (f).** Rule 26(f) is amended to direct the parties to discuss discovery of electronically stored information during their discovery-planning conference. The rule focuses on "issues relating to disclosure or discovery of electronically stored information"; the discussion is not required in cases not involving electronic discovery, and the amendment imposes no additional requirements in those cases. When the parties do anticipate disclosure or discovery of electronically stored information, discussion at the outset may avoid later difficulties or ease their resolution.

When a case involves discovery of electronically stored information, the issues to be addressed during the Rule 26(f) conference depend on the nature and extent of the contemplated discovery and of the parties' information systems. It may be important for the parties to discuss those systems, and accordingly important for counsel to become familiar with those systems before the conference. With that information, the parties can develop a discovery plan that takes into account the capabilities of their computer systems. In appropriate cases identification of, and early discovery from, individuals with special knowledge of a party's computer systems may be helpful.

The particular issues regarding electronically stored information that deserve attention during the discovery planning stage depend on the specifics of the given case. *See Manual for Complex Litigation* (4th) § 40.25(2) (listing topics for discussion in a proposed order regarding meet-and-confer sessions). For example, the parties may specify the topics for such discovery and the time period for which discovery will be sought. They may identify the various sources of such information within a party's control that should be searched for electronically stored information. They may discuss whether the information is reasonably accessible to the party that has it, including the burden or cost of retrieving and reviewing the information. *See* Rule 26(b)(2)(B). Rule 26(f)(3) explicitly directs the parties to discuss the form or forms in which electronically stored information might be produced. The parties may be able to reach agreement on the forms of production, making discovery more efficient. Rule 34(b) is amended to permit a requesting party to specify the form or forms in which it wants electronically stored information produced. If the requesting party does not specify a form, Rule 34(b) directs the responding party to state the forms it intends to use in the production. Early discussion of the forms of production may facilitate the application of Rule 34(b) by allowing the parties to determine what forms of production will meet both parties' needs. Early identification of disputes over the forms of production may help avoid the expense and delay of searches or productions using inappropriate forms.

Rule 26(f) is also amended to direct the parties to discuss any issues regarding preservation of discoverable information during their conference as they develop a discovery plan. This provision applies to all sorts of discoverable information, but can be particularly important with regard to electronically stored information. The volume and dynamic nature of electronically stored information may complicate preservation obligations. The ordinary operation of computers involves both the automatic creation and the automatic deletion or overwriting of certain information. Failure to address preservation issues early in the litigation increases uncertainty and raises a risk of disputes.

The parties' discussion should pay particular attention to the balance between the competing needs to preserve relevant evidence and to continue routine operations critical to ongoing activities. Complete or broad cessation of a party's routine computer operations could paralyze the party's activities. *Cf. Manual for Complex Litigation* (4th) § 11.422 ("A blanket preservation order may be prohibitively expensive and unduly burdensome for parties dependent on computer systems for their day-to-day operations.") The parties should take account of these considerations in their discussions, with the goal of agreeing on reasonable preservation steps.

The requirement that the parties discuss preservation does not imply that courts should routinely enter preservation orders. A preservation order entered over objections should be narrowly tailored. Ex parte preservation orders should issue only in exceptional circumstances.

Rule 26(f) is also amended to provide that the parties should discuss any issues relating to assertions of privilege or of protection as trial-preparation materials, including whether the parties can facilitate discovery by agreeing on procedures for asserting claims of privilege or protection after production and whether to ask the court to enter an order that includes any agreement the parties reach. The Committee has repeatedly been advised about the discovery difficulties that can result from efforts to guard against waiver of privilege and work-product protection. Frequently parties find it necessary to spend large amounts of time reviewing materials requested through discovery to avoid waiving privilege. These efforts are necessary because materials subject to a claim of privilege or protection are often difficult to identify. A failure to withhold even one such item may result in an argument that there has been a waiver of privilege as to all other privileged materials on that subject matter. Efforts to avoid the risk of waiver can impose substantial costs on the party producing the material and the time required for the privilege review can substantially delay access for the party seeking discovery.

These problems often become more acute when discovery of electronically stored information is sought. The volume of such data, and the informality that attends use of e-mail and some other types of electronically stored information, may make privilege determinations more difficult, and privilege review correspondingly more expensive and time consuming. Other aspects of electronically stored information pose particular difficulties for privilege review. For example, production may be sought of information automatically included in electronic files but not apparent to the creator or to readers. Computer programs may retain draft language, editorial comments, and other deleted matter (sometimes referred to as "embedded data" or "embedded edits") in an electronic file but not make them apparent to the reader. Information describing the history, tracking, or management of an electronic file (sometimes called "metadata") is usually not apparent to the reader viewing a hard copy or a screen image. Whether this information should be produced may be among the topics discussed in the Rule 26(f) conference. If it is, it may need to be reviewed to ensure that no privileged information is included, further complicating the task of privilege review.

Parties may attempt to minimize these costs and delays by agreeing to protocols that minimize the risk of waiver. They may agree that the responding party will provide certain requested materials for initial examination without waiving any privilege or protection -- sometimes known as a "quick peek." The requesting party then designates the documents it wishes to have actually produced. This designation is the Rule 34 request. The responding party then responds in the usual course, screening only those documents actually requested for formal production and asserting privilege claims as provided in Rule 26(b)(5)(A). On other occasions, parties enter agreements -- sometimes called "clawback agreements"-- that production without intent to waive privilege or protection should not be a waiver so long as the responding party identifies the documents mistakenly produced, and that the documents should be returned under those circumstances. Other voluntary arrangements may be appropriate depending on the circumstances of each litigation. In most circumstances, a party who receives information under such an arrangement cannot assert that production of the information waived a claim of privilege or of protection as trial-preparation material.

Although these agreements may not be appropriate for all cases, in certain cases they can facilitate prompt and economical discovery by reducing delay before the discovering party obtains access to documents, and by reducing the cost and burden of review by the producing party. A case-management or other order including such agreements may further facilitate the discovery process. Form 35 is amended to include a report to the court about any agreement regarding protections against inadvertent forfeiture or waiver of privilege or protection that the parties have reached, and Rule 16(b) is amended to recognize that the court may include such an agreement in a case-management or other order. If the parties agree to entry of such an order, their proposal should be included in the report to the court.

Rule 26(b)(5)(B) is added to establish a parallel procedure to assert privilege or protection as trial-preparation material after production, leaving the question of waiver to later determination by the court.

2007 Amendment

The language of Rule 26 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 26(a)(5) served as an index of the discovery methods provided by later rules. It was deleted as redundant. Deletion does not affect the right to pursue discovery in addition to disclosure.

Former Rule 26(b)(1) began with a general statement of the scope of discovery that appeared to function as a preface to each of the five numbered paragraphs that followed. This preface has been shifted to the text of paragraph (1) because it does not accurately reflect the limits embodied in paragraphs (2), (3), or (4), and because paragraph (5) does not address the scope of discovery.

The reference to discovery of "books" in former Rule 26(b)(1) was deleted to achieve consistent expression throughout the discovery rules. Books remain a proper subject of discovery.

Amended Rule 26(b)(3) states that a party may obtain a copy of the party's own previous statement "on request." Former Rule 26(b)(3) expressly made the request procedure available to a nonparty witness, but did not describe the procedure to be used by a party. This apparent gap is closed by adopting the request procedure, which ensures that a party need not invoke Rule 34 to obtain a copy of the party's own statement.

Rule 26(e) stated the duty to supplement or correct a disclosure or discovery response "to include information thereafter acquired." This apparent limit is not reflected in practice; parties recognize the duty to supplement or correct by providing information that was not originally provided although it was available at the time of the initial disclosure or response. These words are deleted to reflect the actual meaning of the present rule.

Former Rule 26(e) used different phrases to describe the time to supplement or correct a disclosure or discovery response. Disclosures were to be supplemented "at appropriate intervals." A prior discovery response must be "seasonably * * * amend[ed]." The fine distinction between these phrases has not been observed in practice. Amended Rule 26(e)(1)(A) uses the same phrase for disclosures and discovery responses. The party must supplement or correct "in a timely manner."

Former Rule 26(g)(1) did not call for striking an unsigned disclosure. The omission was an obvious drafting oversight. Amended Rule 26(g)(2) includes disclosures in the list of matters that the court must strike unless a signature is provided "promptly * * * after being called to the attorney's or party's attention."

Former Rule 26(b)(2)(A) referred to a "good faith" argument to extend existing law. Amended Rule 26(b)(1)(B)(i) changes this reference to a "nonfrivolous" argument to achieve consistency with Rule 11(b)(2).

As with the Rule 11 signature on a pleading, written motion, or other paper, disclosure and discovery signatures should include not only a postal address but also a telephone number and electronic-mail address. A signer who lacks one or more of those addresses need not supply a nonexistent item.

Rule 11(b)(2) recognizes that it is legitimate to argue for establishing new law. An argument to establish new law is equally legitimate in conducting discovery.

**2010 Amendments**

**Rule 26.** Rules 26(a)(2) and (b)(4) are amended to address concerns about expert discovery. The amendments to Rule 26(a)(2) require disclosure regarding expected expert testimony of those expert witnesses not required to provide expert reports and limit the expert report to facts or data (rather than "data or other information," as in the current rule) considered by the witness.

Rule 26(b)(4) is amended to provide work-product protection against discovery regarding draft expert disclosures or reports and--with three specific exceptions--communications between expert witnesses and counsel.

In 1993, Rule 26(b)(4)(A) was revised to authorize expert depositions and Rule 26(a)(2) was added to provide disclosure, including--for many experts--an extensive report. Many courts read the disclosure provision to authorize discovery of all communications between counsel and expert witnesses and all draft reports. The Committee has been told repeatedly that routine discovery into attorney-expert communications and draft reports has had undesirable effects. Costs have risen. Attorneys may employ two sets of experts--one for purposes of consultation and another to testify at trial--because disclosure of their collaborative interactions with expert consultants would reveal their most sensitive and confidential case analyses. At the same time, attorneys often feel compelled to adopt a guarded attitude toward their interaction with testifying experts that impedes effective communication, and experts adopt strategies that protect against discovery but also interfere with their work.

**Subdivision (a)(2)(B).** Rule 26(a)(2)(B)(ii) is amended to provide that disclosure include all "facts or data considered by the witness in forming" the opinions to be offered, rather than the "data or other information" disclosure prescribed in 1993. This amendment is intended to alter the outcome in cases that have relied on the 1993 formulation in requiring disclosure of all attorney-expert communications and draft reports. The amendments to Rule 26(b)(4) make this change explicit by providing work-product protection against discovery regarding draft reports and disclosures or attorney-expert communications.

The refocus of disclosure on "facts or data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. At the same time, the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert.

**Subdivision (a)(2)(C).** Rule 26(a)(2)(C) is added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions. This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.

This amendment resolves a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement. An (a)(2)(B) report is required only from an expert described in (a)(2)(B).

A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C). The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present.

**Subdivision (a)(2)(D).** This provision (formerly Rule 26(a)(2)(C)) is amended slightly to specify that the time limits for disclosure of contradictory or rebuttal evidence apply with regard to disclosures under new Rule 26(a)(2)(C), just as they do with regard to reports under Rule 26(a)(2)(B).

**Subdivision (b)(4).** Rule 26(b)(4)(B) is added to provide work-product protection under Rule 26(b)(3)(A) and (B) for drafts of expert reports or disclosures. This protection applies to all witnesses identified under Rule 26(a)(2)(A), whether they are required to provide reports under Rule 26(a)(2)(B) or are the subject of disclosure under Rule 26(a)(2)(C). It applies regardless of the form in which the draft is recorded, whether written, electronic, or otherwise. It also applies to drafts of any supplementation under Rule 26(e); *see* Rule 26(a)(2)(E).

Rule 26(b)(4)(C) is added to provide work-product protection for attorney-expert communications regardless of the form of the communications, whether oral, written, electronic, or otherwise. The addition of Rule 26(b)(4)(C) is designed to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery. The protection is limited to communications between an expert witness required to provide a report under Rule 26(a)(2)(B) and the attorney for the party on whose behalf the witness will be testifying, including any "preliminary" expert opinions. Protected "communications" include those between the party's attorney and assistants of the expert witness. The rule does not itself protect communications between counsel and other expert witnesses, such as those for whom disclosure is required under Rule 26(a)(2)(C). The rule does not exclude protection under other doctrines, such as privilege or independent development of the work-product doctrine.

The most frequent method for discovering the work of expert witnesses is by deposition, but Rules 26(b)(4)(B) and (C) apply to all forms of discovery.

Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions. For example, the expert's testing of material involved in litigation, and notes of any such testing, would not be exempted from discovery by this rule. Similarly, inquiry about communications the expert had with anyone other than the party's counsel about the opinions expressed is unaffected by the rule. Counsel are also free to question expert witnesses about alternative analyses, testing methods, or approaches to the issues on which they are testifying, whether or not the expert considered them in forming the opinions expressed. These discovery changes therefore do not affect the gatekeeping functions called for by *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and related cases.

The protection for communications between the retained expert and "the party's attorney" should be applied in a realistic manner, and often would not be limited to communications with a single lawyer or a single law firm. For example, a party may be involved in a number of suits about a given product or service, and may retain a particular expert witness to testify on that party's behalf in several of the cases. In such a situation, the protection applies to communications between the expert witness and the attorneys representing the party in any of those cases. Similarly, communications with in-house counsel for the party would often be regarded as protected even if the in-house attorney is not counsel of record in the action. Other situations may also justify a pragmatic application of the "party's attorney" concept.

Although attorney-expert communications are generally protected by Rule 26(b)(4)(C), the protection does not apply to the extent the lawyer and the expert communicate about matters that fall within three exceptions. But the discovery authorized by the exceptions does not extend beyond those specific topics. Lawyer-expert communications may cover many topics and, even when the excepted topics are included among those involved in a given communication, the protection applies to all other aspects of the communication beyond the excepted topics.

First, under Rule 26(b)(4)(C)(i) attorney-expert communications regarding compensation for the expert's study or testimony may be the subject of discovery. In some cases, this discovery may go beyond the disclosure requirement in Rule 26(a)(2)(B)(vi). It is not limited to compensation for work forming the opinions to be expressed, but extends to all compensation for the study and testimony provided in relation to the action. Any communications about additional benefits to the expert, such as further work in the event of a successful result in the present case, would be included. This exception includes compensation for work done by a person or organization associated with the expert. The objective is to permit full inquiry into such potential sources of bias.

Second, under Rule 26(b)(4)(C)(ii) discovery is permitted to identify facts or data the party's attorney provided to the expert and that the expert considered in forming the opinions to be expressed. The exception applies only to communications "identifying" the facts or data provided by counsel; further communications about the potential relevance of the facts or data are protected.

Third, under Rule 26(b)(4)(C)(iii) discovery regarding attorney-expert communications is permitted to identify any assumptions that counsel provided to the expert and that the expert relied upon in forming the opinions to be expressed. For example, the

party's attorney may tell the expert to assume the truth of certain testimony or evidence, or the correctness of another expert's conclusions. This exception is limited to those assumptions that the expert actually did rely on in forming the opinions to be expressed. More general attorney-expert discussions about hypotheticals, or exploring possibilities based on hypothetical facts, are outside this exception.

Under the amended rule, discovery regarding attorney-expert communications on subjects outside the three exceptions in Rule 26(b)(4)(C), or regarding draft expert reports or disclosures, is permitted only in limited circumstances and by court order. A party seeking such discovery must make the showing specified in Rule 26(b)(3)(A)(ii)--that the party has a substantial need for the discovery and cannot obtain the substantial equivalent without undue hardship. It will be rare for a party to be able to make such a showing given the broad disclosure and discovery otherwise allowed regarding the expert's testimony. A party's failure to provide required disclosure or discovery does not show the need and hardship required by Rule 26(b)(3)(A); remedies are provided by Rule 37.

In the rare case in which a party does make this showing, the court must protect against disclosure of the attorney's mental impressions, conclusions, opinions, or legal theories under Rule 26(b)(3)(B). But this protection does not extend to the expert's own development of the opinions to be presented; those are subject to probing in deposition or at trial.

Former Rules 26(b)(4)(B) and (C) have been renumbered (D) and (E), and a slight revision has been made in (E) to take account of the renumbering of former (B).

Notes of Decisions (1343)

Fed. Rules Civ. Proc. Rule 26, 28 U.S.C.A., FRCP Rule 26
Amendments received to 7-1-14