# TAB 16

Restatement (Second) of Contracts § 223 (1981)

Restatement of the Law - Contracts

Database updated June 2014
Restatement (Second) of Contracts

Chapter 9. The Scope of Contractual Obligations

Topic 4. Scope as Affected by Usage

§ 223 Course of Dealing

Comment:
Reporter's Note
Case Citations - by Jurisdiction

**(1) A course of dealing is a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.**

**(2) Unless otherwise agreed, a course of dealing between the parties gives meaning to or supplements or qualifies their agreement.**

---

## Comment:

*a. Relation to other rules.* This Section follows Uniform Commercial Code § 1-205 and states a particular application of the rules stated in §§ 220 and 221. As to conflict between course of dealing and express terms, course of performance or usage of trade, see § 203.

*b. Common basis of understanding.* Course of dealing may become part of an agreement either by explicit provision or by tacit recognition, or it may guide the court in supplying an omitted term. Like usage of trade, it may determine the meaning of language or it may annex an agreed but unstated term. There is no requirement that an agreement be ambiguous before evidence of a course of dealing can be shown, nor is it required that the course of dealing be consistent with the meaning the agreement would have apart from the course of dealing.

**Illustrations:**
**Illustrations:**

> 1. A, a sugar company, enters into a written agreement with B, a grower of sugar beets, by which B agrees to raise and deliver and A to purchase specified quantities of beets during the coming season. No price is fixed. The agreement is on a standard form used for B and many other growers in prior years. A's practice is to pay all growers uniformly on a formula based on A's "net return" according to A's established accounting system. Unless otherwise agreed, the established pattern of pricing is part of the agreement.

> 2. A, a manufacturer, sends a price quotation on goods to B, a dealer, together with printed "conditions of sale." B then sends orders to A; and A fills them. B takes advantage of discount terms of the quotation not referred to in B's orders. Unless otherwise agreed, the "conditions of sale" are part of each contract.

## Reporter's Note

This is a new Section following Uniform Commercial Code § 1-205(1) and (3). See 5 Williston, Contracts § 660 (3d ed.1961); 3 Corbin, Contracts §§ 555-56 (1960 & Supp.1980); 9 Wigmore, Evidence § 2465 (3d ed.1940).

*Comment b.* Illustration 1 is based on California Lettuce Growers, Inc. v. Union Sugar Co., 45 Cal.2d 474, 289 P.2d 785 (1955); see Amerine Nat'l Corp. v. Denver Feed Co., 493 F.2d 1275 (10th Cir.1974). Illustration 2 is based on D'Orsay Equip. Co. v. United States Rubber Co., 302 F.2d 777 (1st Cir.1962).

## Case Citations - by Jurisdiction

C.A.2
C.A.3
C.A.5
C.A.7
C.A.9
U.S.Cl.Ct.
U.S.Ct.Cl.
Ct.Fed.Cl.
D.Colo.
S.D.Fla.
C.D.Ill.
N.D.Ill.
D.Me.
D.Md.
D.N.J.
E.D.N.Y.
S.D.N.Y.
S.D.N.Y.Bkrtcy.Ct.
W.D.N.Y.
E.D.Pa.
E.D.Pa.Bkrtcy.Ct.
W.D.Pa.
W.D.Pa.Bkrtcy.Ct.
D.Vt.
W.D.Wis.
Ariz.App.
Cal.App.
Idaho
Ill.App.
Iowa
Md.Spec.App.
Mich.
Minn.
Neb.

N.J.Super.
N.Y.
Pa.
Tex.App.
Wash.
Wash.App.

### C.A.2

**C.A.2,** 1997. Cit. in disc. A ship owner and its agent sued a company that built and repaired ship engines, alleging breach of contract and negligent repair of the ship's engine. Reversing the district court's dismissal of the case and remanding, this court held, inter alia, that plaintiffs were entitled to an evidentiary hearing as to whether a prior course of dealing between the parties had incorporated into the engine parts contract a forum selection clause designating Germany as the litigation forum. New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 31.

**C.A.2,** 1970. Section 249 of Tentative Draft 5 which is now Section 223 of the Official Draft cit. in sup. Plaintiff-dealer brought an action against an auto manufacturer for termination of his dealership in alleged harassment for his efforts in organizing a dealers' association. The defendant manufacturer alleged fraudulent practices in the dealer's warranty repairs operation. The dealer operated in New York; his association was incorporated in New Jersey. He first brought action with the association as co-plaintiff in New Jersey. Motivated at least partially by adverse rulings in the original suit, the plaintiff later sought to prosecute a second action brought in New York and to dismiss the New Jersey action. The court affirmed a temporary injunction prohibiting the termination of the dealership, modified to allow the manufacturer to make inquiries of the dealer's customers related to its claim of fraud, but ordered that further proceedings be stayed pending termination of the New Jersey litigation, ruling that the prior suit should prevail even though both states would presumably enforce the choice of law provision in the dealership contract. As to the contract itself, the court ruled that the manufacturer was subject to the "construction against the draftsman" rule on the issue of termination, and that the language was not so crystal clear as to prevail over contrary evidence from a past course of dealing. Semmes Motors, Inc. v. Ford Motor Company, 429 F.2d 1197, 1207.

### C.A.3

**C.A.3,** 1996. Com. (b) quot. in case quot. in disc. Participants in two "top hat" pension plans filed claims in bankruptcy court seeking benefits after their employer had been declared bankrupt and terminated the plans. Bankruptcy court dismissed the claims, relying on a clause in the plan documents that reserved the company's right to amend or terminate the plans at any time for any reason. The bankruptcy court found this language clear and unambiguous. New Jersey federal district court affirmed. This court reversed and remanded, holding, inter alia, that because the participants had demonstrated ambiguity in the plan, the bankruptcy court should have permitted participants to present extrinsic evidence to clarify its meaning. The court stated that the words "at any time" were inconclusive and that the right to terminate even after retirement would render the provisions for benefits largely illusory. It also stated that bankruptcy court and district court erred in applying a "four corners" approach to the contract. In re New Valley Corp., 89 F.3d 143, 150, cert. denied 519 U.S. 1110, 117 S.Ct. 947, 136 L.Ed.2d 835 (1997).

**C.A.3,** 1995. Com. (b) quot. in case quot. in disc. Manufacturer of antibiotic animal feed supplement brought an action against the drug's developer for a declaratory judgment that, pursuant to the parties' contracts, it had perpetual rights to use developer's new-animal-drug application approved by the FDA. Affirming the district court's entry of judgment for developer, this court held that the parties' agreements, read against the background of the extrinsic evidence, could not reasonably be found to convey to manufacturer a perpetual, royalty-free license to use developer's regulatory authority. American Cyanamid v. Fermenta Animal Health, 54 F.3d 177, 181.

**C.A.3,** 1994. Cit. in ftn. After the IRS levied on a bank account, owned jointly by taxpayer and his wife, to enforce a judgment for a tax deficiency obtained against taxpayer in his individual capacity, bank filed a complaint in interpleader. The district court

upheld the levy. Reversing in part with the direction to dissolve the levy, this court held that, because taxpayer did not have the ability to withdraw funds unilaterally from the account, the IRS levy was improper. The court noted that wife's unilateral savings transfers from one account to another in the bank did not constitute a course of dealing inconsistent with the requirement of the signature card that both taxpayer and wife authorize withdrawals from the account, since a savings transfer was not a withdrawal, because no money left the bank, and the signature card governed only withdrawals. I.R.S. v. Gaster, 42 F.3d 787, 795.

**C.A.3,** 1993. Subsec. (2) cit. in sup., com. (b) quot. in sup. Employee pension funds sued an employer for contributions to the funds on behalf of probationary employees, and the trial court entered summary judgment in favor of the funds. This court reversed with instructions, deciding that the collective bargaining agreement that required the employer to make contributions for "each" employee was ambiguous as to whether it included probationary employees, since it distinguished between probationary and regular employees but used the term "employees" in some contexts in which it unambiguously meant only regular employees. As a result, evidence that the union had failed to complain for five years about the employer's failure to contribute, that the union had failed to mention during renegotiation of the agreement on two separate occasions that the employer should make contributions, and that the funds had failed to demand that the employer make payments was admissible to establish conclusively that the parties had not intended for such contributions to be made. Teamsters Indus. Emp. Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135, 137.

### C.A.5

**C.A.5,** 2011. Subsecs. (1) and (2) quot. in sup. After injured employee of subcontractor brought a negligence action against ship-repair contractor and barge owner, contractor's insurer sought a declaratory judgment that owner was not entitled to coverage under contractor's liability policy; owner then brought a third-party complaint against contractor, alleging that contractor was contractually obligated to defend and indemnify it against employee's claims and breached a contractual duty to carry insurance naming it as an additional insured. The district court entered judgment for insurer on its declaratory-judgment claim, but found for owner on its third-party claims against contractor. Affirming, this court held, inter alia, that the terms and conditions of owner's repair service order (RSO), which required contractor to defend, indemnify, and obtain insurance for owner, constituted part of a written agreement between the parties as a result of their course of dealing with respect to the RSO process, and that contractor ratified their course of dealing by submitting an invoice for the work on the barge without objecting to the terms and conditions. One Beacon Ins. Co. v. Crowley Marine Services, Inc., 648 F.3d 258, 265.

### C.A.7

**C.A.7,** 2002. Cit. in disc. Class action was brought under ERISA to recover severance pay on behalf of 55 employees who were terminated when their employer transferred part of its business. Affirming the district court's grant of summary judgment for employer, this court held, inter alia, that employer's past practice of providing severance pay did not create an enforceable obligation under principles of contract law. Brines v. XTRA Corp., 304 F.3d 699, 703, cert. denied 538 U.S. 978, 123 S.Ct. 1789, 155 L.Ed.2d 667 (2003).

**C.A.7,** 2002. Cit. in sup. Supplier sued manufacturer for breach of contract. Reversing the district court's entry of judgment for defendant and remanding, this court held, inter alia, that modification of quantity specifications in purchase orders was enforceable, since e-mails sent between parties satisfied the written-consent requirement of contract and UCC, and there was waiver of the requirement based on reasonable reliance. Cloud Corp. v. Hasbro, Inc., 314 F.3d 289, 298.

**C.A.7,** 1998. Com. (b) cit. in disc. Retirees who received a lump-sum payout in lieu of an annuity brought a class action under ERISA against their former employer's pension plan. Affirming the district court's grant of summary judgment for defendant, this court held, inter alia, that, under the doctrine of extrinsic ambiguity, extrinsic evidence, including "course of dealing" evidence, was admissible to show that an ambiguity in the plan language existed. The court concluded that defendant properly interpreted the plan to permit use of the discount rate fixed by the Pension Benefit Guaranty Corporation (PBGC) for January 1

of the year of retirement to determine a retiree's lump-sum distribution, even though the plan itself provided that the applicable rate was the PBGC rate "as of the date of distribution," which the plan defined as the first day of the month following retirement. Mathews v. Sears Pension Plan, 144 F.3d 461, 468.

### C.A.9

**C.A.9,** 1989. Cit. in disc. An electrical subcontractor sued a general contractor for wrongful termination of the subcontract, and the general contractor counterclaimed for breach of the subcontract. This court affirmed the district court judgment for the general contractor. The court stated that, under Arizona law, the district court was permitted to use custom and usage in interpreting the subcontract, without first determining that the subcontract terms were ambiguous. L.K. Comstock & Co. v. United Eng. and Constructors, 880 F.2d 219, 223.

**C.A.9,** 1982. Cit. in ftn. and cit. in. disc. The plaintiff inventor brought an action against the defendant for patent infringement. Earlier the inventor had undertaken to produce a prototype toy watch movement for a production company. After development of the prototype, the inventor entered into an agreement with the production company transferring all rights in the prototype movement to the company. More than a year after the date of this agreement the inventor filed an application and was eventually granted a patent on the movement. The trial court granted summary judgment in favor of the defendant, stating that since the plaintiff failed to file an application for patent within one year of a public sale as statutorily required, and since the plaintiff failed to come within the experimental use exception to this time bar, the patent was invalid. The trial court insisted that any evidence of experimental use must appear of the face of the written agreement. The trial court would not look to the subsequent conduct of the parties or to the surrounding circumstances to interpret the written agreement. The inventor appealed the summary judgment, contending that the written agreement, the conduct of the parties, and the surrounding circumstances created a question of material fact about whether the experimental use exception applied. This court affirmed the summary judgment but stated that the trial court should not have confined itself to the written agreement but instead should have examined all available evidence to aid it in interpreting the contract. Here, in examining the available evidence, the court found no evidence of experimental use or purpose. The court found only an out-right transfer of all rights to the prototype. Such a sale more than one year before the filing of an application for a patent would invalidate any issued patent. Kock v. Quaker Oats Co., 681 F.2d 649, 657, 658, certiorari denied 459 U.S. 1147, 103 S.Ct. 787, 74 L.Ed.2d 994 (1983).

### U.S.Cl.Ct.

**U.S.Cl.Ct.**1990. Subsec. (1) and com. (b) quot. in disc. A contractor responded to an advertisement for bids on a Postal Service facility in Arizona by submitting a bid incorporating drawings of a prototype facility he had designed and constructed for Postal Service field offices in the eastern United States. His bid was accepted, but the contract was terminated after the contractor refused to comply with changes required by the Postal Service, arguing that his designs had been bid and accepted by the Postal Service as 100% plans. The court dismissed the contractor's complaint for wrongful termination, finding that the contracting officer had acted reasonably, since both the standard form for responding to the advertisements to bid and a letter sent to the contractor had made it clear that his designs were being accepted as 30% plans. The court rejected the contractor's argument that the acceptance of his prototype designs as 100% submissions under different agreements with divisions of the Postal Service in the eastern United States made it improper for the Los Angeles field office to treat them as incomplete, finding that conduct to be of insufficient similarity and repetitiveness to indicate a common understanding. Romala Corp. v. U.S., 20 Cl.Ct. 435, 446.

**U.S.Cl.Ct.**1990. Cit. in sup. A food service contractor that contracted with the United States Army to provide dining facility attendant services sought costs for alleged extracontractual services. Granting the defendant's motion for summary judgment, the court stated that, since the prior course of dealing between the parties required the defendant to issue a written disposition form to confirm any extension of service, the plaintiff could not recover because the disposition form was not issued and the mess sergeant who had requested an additional serving line had no authority to bind the government. United Food Services, Inc. v. U.S., 19 Cl.Ct. 539, 549, affirmed 928 F.2d 411 (Fed.Cir.1991).

**U.S.Cl.Ct.**1988. Quot. in disc., cit. in ftn., Rptr's Note cit. in ftn. A contractor that was awarded a contract by the federal government to construct a pumping plant and substation sued the government for, inter alia, the cost of supplying electricity to the defendant's temporary storage building where government-supplied equipment was stored. Denying the plaintiff's motion for partial summary judgment, the court held that the plaintiff's obligations to properly store and care for the equipment and to provide and distribute electricity that it used to perform the contract mandated the plaintiff's responsibility for the cost of powering the temporary storage building. The court rejected the plaintiff's argument that the government's failure to seek payment for the power at an earlier date constituted a course of dealing between the parties that kept the defendant from denying that it accepted the obligation to furnish the electricity; although a failure to act when obligated might constitute conduct creating a course of dealing, no such obligation was shown here. Underground Const. Co., Inc. v. U.S., 16 Cl.Ct. 60, 66.

**U.S.Cl.Ct.**1984. Cit. in sup. § 249, T.D. Nos. 1-7, which is now s 223. Plaintiff contractor agreed to construct a hydrant fueling system for the defendant United States. Defendant entered into another contract with an engineering firm to design the system. Construction was delayed due to a dispute over who was to design the control wiring diagram for the system, and plaintiff sued defendant claiming damages for the delay and extra costs incurred because of defendant's alleged failure to provide the designs. The Claims Court found that plaintiff was entitled to recover all costs incurred as a result of preparing the design because defendant had provided plaintiff with designs in previous projects. The court held, inter alia, that since the contract was ambiguous, it was proper to consider the prior course of dealing for an interpretation. Tibshraeny Bros. Const., Inc. v. United States, 6 Cl.Ct. 463, 470.

### U.S.Ct.Cl.

**U.S.Ct.Cl.**1977. Section 249 of Tentative Drafts 1 through 7, Revised and Edited, which is now Section 223 of the Official Draft cit. in sup. Review was sought of a decision of the armed services board of contract appeals which adopted the opinion of the trial judge upholding the right of a contracting officer to require the submission of cost data from a contractor in support of a proposed catalog price for a commercial item being purchased by the Government on a negotiated procurement basis. The plaintiff and the United States entered into a 2 year contract pursuant to which plaintiff was to supply various types of aeronautical equipment. An unpriced order, an order issued in the absence of prior agreement on price, was made for delivery of 660 Model ML-1 remote compass transmitters. There had been three previous unpriced orders for this item processed under the instant contract, and on each of these past occasions the contractor had proposed and received its then current catalog price. The newly assigned contracting officer refused the proposed price and asked for substantiating cost data. After the contractor refused, the officer issued a final decision which unilaterally established a new price based upon financial data available to the officer. The plaintiff argued, inter alia, that all previous Navy procurements of this item were completed without cost data submissions; and that the Government cannot reverse course and abandon a practice upon which plaintiff had come to rely. The court stated that although departure from practice previously adhered to by an agency in the administration of contracts may, under certain circumstances, furnish the basis for an actionable claim against the United States, it is essential in such situations that this sequence of previous conduct between the parties to the agreement, that is, their course of dealing be such that it can be "fairly" regarded as establishing a common basis of understanding for interpreting their expressions and other conduct. A course of dealing may supply an enforceable term to a contract or may supplement or qualify the contract provided that the conduct which identifies the course of dealing can reasonably be construed as indicative of the parties' intentions. The court concluded that the reliance argument that plaintiff offered was, at best, only a statement of its unilateral assumptions concerning the Navy's expected future conduct. Sperry Flight Systems Div. of Sperry Rand Corp. v. United States, 212 Ct.Cl. 329, 548 F.2d 915, 923.

### Ct.Fed.Cl.

**Ct.Fed.Cl.**1994. Cit. in headnote, quot. in disc., com. (b) quot. in disc. Elevator maintenance contractor for a federal office building sued the United States for an equitable adjustment in price for the additional maintenance required for compliance with the terms of the contract following commencement of the government's renovation of the building. The court granted plaintiff

an equitable adjustment, holding, inter alia, that, as a result of government representatives' routine oral authorization of work outside the scope of the contract, the government constructively waived the written authorization requirements of the contract by a prior course of dealing. Miller Elevator Co., Inc. v. U.S., 30 Fed.Cl. 662, 663, 689, dismissed 36 F.3d 1111 (Fed.Cir.1994).

### D.Colo.

**D.Colo.**1994. Subsec. (1) quot. in sup., subsec. (2) cit. in headnotes and in sup., com. (b) quot. in sup. A developer sued the county, county commissioners, and the county housing authority for breach of contract, among other claims, after a dispute arose as to whether developer's apartment's rental rate increases complied with the development agreement between county and developer. The court denied summary judgment to county and housing authority, holding, inter alia, that because the amended development agreement was ambiguous and not integrated as to the method of setting of the annual rental rates under the governmental guidelines, parol evidence and the course of dealings between the parties was admissible to explain the agreement. The court stated that the parties' failure to specify in the development agreement whether the guidelines were adjusted annually by objective or discretionary criterion resulted in an ambiguity subject to clarification through extrinsic evidence. Centennial-Aspen II Ltd. v. City of Aspen, 852 F.Supp. 1486, 1492.

### S.D.Fla.

**S.D.Fla.**2007. Subsecs. (1) and (2) quot. in sup., com. (b) cit. in sup. Yacht owners sought to enforce a settlement agreement that had resolved earlier litigation against the yacht's engine manufacturer for damages related to the engine's failure to produce specified power output. Granting in part and denying in part plaintiffs' motion, this court held, inter alia, that neither plaintiffs nor defendant materially breached the settlement agreement. The court concluded that defendant did not commit an anticipatory breach of the settlement agreement by refusing to pay all costs of installation without any limit as to the amount of cost or scope of work; in light of the plain language of the agreement, the parties' intent, usage of trade, and the parties' course of dealing and course of performance, plaintiffs failed to prove, among other things, that defendant had any obligation to ensure the engines and vessel passed a sea trial. F.W.F., Inc. v. Detroit Diesel Corp., 494 F.Supp.2d 1342, 1367.

### C.D.Ill.

**C.D.Ill.**2012. Subsec. (1) cit. in sup. Criminal defendant was indicted by a federal grand jury on three counts of murder by use of a firearm during a federal drug felony. This court denied defendant's motions to dismiss the indictment and to suppress statements he had made to law enforcement regarding the murders after signing an agreement in which he pled guilty to federal drug and weapons charges in exchange for use immunity conditioned on his continuing cooperation with the government. The court held that the government was not bound by its promise not to use defendant's statements against him, because defendant breached his agreement to cooperate by refusing to testify against two individuals he had implicated in the murders. The court rejected defendant's argument that a prior course of dealing provided extrinsic evidence that the cooperation was terminated at the time of his sentencing on the drug and weapons charges, noting that defendant had not suggested any prior conduct between himself and the government showing that a reasonable assumption existed on both sides that his cooperation duties would terminate at sentencing. U.S. v. Bryant, 905 F.Supp.2d 877, 888.

### N.D.Ill.

**N.D.Ill.**1990. Com. (b) quot. in sup. A buyer of machinery sued a carrier for breach of contract after the carrier failed to deliver the machinery. Granting the carrier's motion for summary judgment, this court held, inter alia, that in light of a limitation-of-liability provision on the back of the carrier's invoices, the carrier was entitled to limit its liability for the alleged breach of contract pursuant to § 1-205 of the Illinois Commercial Code, which allowed a limitation-of-liability term to supplement the terms of the contract at issue as a result of course of dealing. The court reasoned that the buyer had received hundreds of

invoices from the carrier containing the same limitation term before entering into the contract and, thus, it should have been aware of the limitation. The court rejected the "narrow" interpretation of § 1-205 taken by a prior Illinois intermediate appellate court decision, stating that the Code contemplates a more expansive role for course of dealing and trade usage and that course of dealing is an integral part of a commercial agreement from its very inception and is not intended merely to fill gaps that later might appear. Capitol Converting Equipment v. LEP Transport, 750 F.Supp. 862, 866.

### D.Me.

**D.Me.**1992. Cit. in disc. A distributor of adult incontinence products sued the products' manufacturer for wrongful termination of the distributorship, alleging a federal antitrust claim and various common law claims, including misrepresentation, breach of contract, and breach of duty of good faith. Denying defendant's motion for summary judgment on the breach of contract claim, this court held, inter alia, that, although there was a genuine issue of material fact with regard to other contracts between the parties, there was no issue of material fact as to breach of any contractual arrangement arising out of the course of dealing between the parties. The court noted that the parties had established a course of dealing through previous written distributor contracts that expressly permitted termination by either party, without cause, with 60 days' written notice. The court concluded that defendant complied with the 60-day notice requirement by giving notice 75 days prior to the termination of another written sales promotion agreement between the parties. Reed Paper v. Procter & Gamble Distributing, 807 F.Supp. 840, 846.

### D.Md.

**D.Md.**1998. Cit. in headnote, quot. in sup., com. (b) quot. in disc. Shipper sued freight forwarder for negligence and breach of contract after the trucking company that defendant chose to transport plaintiff's cargo damaged the shipment when it attempted to pass under a bridge with inadequate clearance. Following a bench trial, the court entered judgment for defendant, holding that the terms and conditions on the reverse of defendant's invoice, which severely restricted defendant's liability in the event of its own or a third party's negligence, became a part of the contract by the parties' course of dealing; that it was customary in the trade to include terms and conditions on the back of invoices; that defendant was not liable for trucking company's negligence; and that defendant did not fail to use reasonable care in selecting trucking company. Government of the U.K. v. Northstar Services, Ltd., 1 F.Supp.2d 521, 522, 524.

### D.N.J.

**D.N.J.**2008. Com. (b) quot. in case quot. in disc. Dean of medical school, who was one of two defendants, was indicted on charges of engaging in a scheme to defraud the medical school under the mail and wire-fraud statutes. He moved to dismiss the indictment, arguing that the agreement that contained the bylaws of the medical school's headache clinic, which was the underlying basis for the counts of fraud against him, was too ambiguous to serve as a predicate for the indictment's allegations of criminal conduct and, instead, when properly interpreted, affirmatively authorized his conduct. Denying the motion without prejudice, this court held, inter alia, that the question of a contract's ambiguity could not be decided in a vacuum; to determine ambiguity, consideration was required of the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. U.S. v. Bryant, 556 F.Supp.2d 378, 457.

**D.N.J.**2007. Com. (b) cit. in disc. Yacht dealer sued yacht manufacturer to recover damages it incurred from its purchase of an allegedly defective yacht. Granting plaintiff's motion for partial summary judgment on defendant's affirmative defense that the sale of this yacht was covered by the limitations of a certain warranty-protection program, this court held, inter alia, that neither the warranty itself nor the dealer agreement between the parties was ambiguous; the plain language of the dealer agreement specifically limited warranty terms to dealer's retail customers and nowhere else in the agreement was there any similar language extending the warranty terms to plaintiff. Harbourview Yacht Sales, L.L.C. v. Ocean Yachts, Inc., 500 F.Supp.2d 462, 466.

**D.N.J.**2005. Com. (b) quot. in sup. Insurers that issued excess-liability policies brought an adversary proceeding against insured debtor corporation and its subsidiary, seeking a declaration that any claims for coverage under policies issued by them were released by prior settlement agreement. Bankruptcy court granted defendants summary judgment, holding that agreement was unambiguous and released only one policy. This court affirmed on other grounds, holding that the contract language was ambiguous, but by looking at contract's structure, parties' negotiation history, and other evidence, it could conclude that parties' intent was to release only the insurance obligations of one subsidiary insurer, insurer's parent, and parent's other subsidiaries, under that one policy alone. The court stated that it could not reconcile contract's conflicting provisions and discern parties' intent based on contract language alone. In re Combustion Engineering, Inc., 366 F.Supp.2d 224, 231.

**D.N.J.**2003. Subsec. (1) quot. in sup., subsec. (2) cit. in sup., com. (b) cit. in case quot. in sup. Casino bartender sued employer and his collective-bargaining representative for breach of collective-bargaining agreement (CBA) and breach of duty of fair representation, inter alia. This court granted defendants summary judgment, holding that plaintiff failed to produce sufficient evidence to create genuine issue of material fact as to whether employer's actions breached obligations under CBA. Although CBA's terms were ambiguous, no reasonable factfinder could conclude that defendants intended requirement that seniority govern designation of work shifts to excuse union employees from participating in re-bidding process. Heffron v. Adamar of New Jersey, Inc., 270 F.Supp.2d 562, 571, 572.

### E.D.N.Y.

**E.D.N.Y.**2005. Cit. in case cit. in sup., subsecs. (1) and (2) quot. in disc. Wholesale distributor of imported Asian food products sued former customs broker for, in part, breach of contract, alleging that broker mismanaged a customs transaction. Granting broker's motion for summary judgment to limit its liability, this court held that the parties' course of dealing unambiguously established their intent to limit broker's potential liability; in over 150 previous transactions prior to the present dispute, distributor had received an invoice from broker that included notice of broker's limitation of liability, thus establishing a course of dealing that governed in this case. Well Luck Co., Inc. v. F.C. Gerlach & Co., Inc., 421 F.Supp.2d 533, 540.

**E.D.N.Y.**1999. Subsec. (2) quot. in disc. Principals of corporations that provided bus and van transportation services sued the city board of education for breach of contract, violations of federal labor law, and breach of duty of good faith and fair dealing, among other claims. This court granted in part and denied in part defendant's motion to dismiss, holding, inter alia, that, even if the contract had specified that plaintiffs could not use conditionally certified drivers and escorts, given defendant's unbroken record of providing certifications, conditional or otherwise, to plaintiffs and the other contractors, defendant board was not free to unilaterally invoke an unenforced prohibition purposefully to exclude strike replacement workers so as to discriminate against such employers and undermine federal labor law policy. Van-Go Transport Co., Inc. v. New York City Board of Education, 53 F.Supp.2d 278, 297.

### S.D.N.Y.

**S.D.N.Y.**2009. Subsec. (1) quot. in ftn., com. (b) quot. in case quot. in disc. Sales company brought a breach-of-contract action against wholesale commercial distributor of swimming-pool liners, after defendant reduced plaintiff's sales commissions in part or entirety on at least two accounts with large pool distributors. Denying the parties' cross-motions for summary judgment, this court held, inter alia, that neither party provided sufficient evidence for the court to properly determine how both parties construed the agreement's requirement that defendant pay plaintiff a commission of 3-5%, except, in order to entertain large volume accounts, when "necessary upon mutual agreement." The court explained that, because it was theoretically possible for the parties to use extrinsic evidence to adequately explain and demonstrate to a jury what constituted "necessity," and whether the repeated decision to pay plaintiff rates below 3% resulted from "necessity," this issue should proceed to trial. Doynow Sales Associates, Inc. v. Rocheux Intern. of New Jersey, Inc., 647 F.Supp.2d 296, 309.

**S.D.N.Y.**1991. Cit. in disc. An importer entered into a line of credit agreement with a bank for a specified amount to cover specific transactions. Subsequently, the bank approved and issued letters of credit for excess amounts and for transactions unrelated to those specified in the original agreement. The importer sued the bank when it refused to issue additional unrelated letters of credit. This court entered judgment for the bank, holding that no contract existed between the parties that required the bank to issue additional unrelated letters of credit. The court stated that the bank's previous courtesy of issuing unrelated letters of credit did not create an obligation to continue this practice absent a contract or promissory estoppel, since a prior course of dealings between the parties is a tool for interpreting existing contracts and may not be used to establish contract formation. Fasolino Foods v. Banca Nazionale del Lavoro, 761 F.Supp. 1010, 1021.

### S.D.N.Y.Bkrtcy.Ct.

**S.D.N.Y.Bkrtcy.Ct.**1990. Cit. in disc. (Erron. cit. as Restatement of Contracts.) Debtors seeking a Chapter 11 reorganization sought a declaratory judgment, inter alia, that the surety of workers' compensation bonds was liable for payment of benefits under five bonds with an aggregate penalty of $51 million, four of which the debtors claimed were terminated. The surety argued that the four bonds had been cancelled and replaced by the fifth, having a maximum penalty of $27 million. This court granted the surety summary judgment, ruling that parol evidence of correspondence between the parties was admissible to determine if the termination clause of the bonds, which required written notice to the workers' compensation bureau, had been triggered. The court found that the use in the correspondence of the words "cancel" and "replace" instead of "terminate," along with the failure of the bureau to notify the surety of its continuing liability under the previous bonds as was common practice, and the addition of new corporations as principals indicated that the fifth bond constituted both a substitute contract and novation of the previous bonds, and so the surety was liable only under the fifth bond. In re Chateaugay Corp., 116 B.R. 887, 904.

### W.D.N.Y.

**W.D.N.Y.**1997. Subsec. (2) quot. in sup. Discharged advertising executive sued former employer, among others, for, inter alia, breach of his employment contract, alleging that defendant violated its contractual obligation to pay him a $101,000 earned bonus that was due upon termination. Defendant moved for summary judgment, arguing that the decision to pay the bonus was purely discretionary. Granting the motion in part and denying it in part, the court held that material factual issues existed as to what constituted an earned bonus under the terms of plaintiff's employment contract because, while defendant's interpretation was not unreasonable, the parties' course of dealing lent support to plaintiff's contention; however, summary judgment was appropriate to the extent that plaintiff alleged the existence of an oral agreement to pay the bonus. Thomson v. Saatchi & Saatchi, 958 F.Supp. 808, 826, affirmed 159 F.3d 1348 (2d Cir.1998).

### E.D.Pa.

**E.D.Pa.**1990. Cit. in disc. A wholesale jewelry seller sued the carrier company with which it had contracted to make deliveries after the carrier accepted counterfeit cashier's checks from a customer. The plaintiff had stipulated that the defendant accept "cash only" for parcels delivered and did not consider the cashier's checks to be cash. The court granted summary judgment to the carrier, holding that, absent an express provision to the contrary, "cash" was defined to include certain negotiable instruments other than currency, such as cashier's checks. The court said that its goal in interpreting the terms of the contract was to determine the parties' intent in contracting and that the parties' prior course of dealing under which the plaintiff accepted from the defendant cashier's checks, certified checks, or money orders in lieu of currency on at least 70 occasions was critical in determining this intent. Metal Marketplace v. United Parcel Service, 733 F.Supp. 976, 979.

### E.D.Pa.Bkrtcy.Ct.

**E.D.Pa.Bkrtcy.Ct.**2013. Subsecs. (1) and (2) cit. in ftn. After owner of a retail apparel store conducted a "blow out" sale, closed the store, and used the sale proceeds to pay herself back wages shortly prior to filing a petition under Chapter 7, creditor who held a security interest in the store's inventory and other collateral brought an adversary proceeding against debtor, alleging that debtor wrongfully misappropriated the proceeds and that her debt to him was nondischargeable on grounds of willful and malicious injury. Following a bench trial, this court found in favor of seller, holding that debtor had wrongfully converted the proceeds under the terms of the parties' security agreement. The court noted that, while the agreement restricted debtor from disposing of the collateral, including the store's inventory, without seller's prior written consent, it was reasonable to conclude that the parties intended an exception to the restriction such that debtor could use, sell, and dispose of inventory in the ordinary course of business without advance written permission, but that such authority did not extend to transactions that were not in the ordinary course of business, such as a going-out-of-business sale, or the disposition of the proceeds of such a sale. In re Rezykowski, 493 B.R. 713, 724.

**E.D.Pa.Bkrtcy.Ct.**2012. Cit. in sup. Chapter 7 trustee of debtor-subcontractor's bankruptcy estate brought an adversary proceeding against general contractor, seeking to recover payment for certain demolition services provided to contractor in a Maryland construction project. This court entered judgment awarding plaintiff damages, holding, inter alia, that defendant waived, based on its conduct and the parties' course of dealing, its right to rely on a provision in the parties' subcontract requiring timely notice of claims from subcontractor for additional compensation; course of dealing was defined, under Maryland law, as a sequence of previous conduct between parties to a particular transaction that was fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct. In re Red Rock Services Co., LLC, 480 B.R. 576, 593.

### W.D.Pa.

**W.D.Pa.**2010. Com. (b) quot. in case quot. in sup. Following the death of her husband, who was insured under a basic accidental death and dismemberment insurance group policy, beneficiary sued insurer, challenging insurer's denial of benefits under the policy. This court granted summary judgment for insurer, holding, inter alia, that, under the language of the policy and summary plan description (SPD) as written, it was clear that plaintiff did not show that she was entitled to accidental death benefits under the policy; the SPD, along with other extrinsic evidence, such as course of dealing, could be considered here, and provided strong evidence of the plain and unambiguous meaning of the terms "accident" and "injury" as understood by the contracting parties and as used in the policy. Erbe v. Connecticut General Life Ins. Co., 695 F.Supp.2d 232, 247.

**W.D.Pa.**2007. Cit. in sup., subsec. (2) cit. in sup. Insurer sued security service hired by insured to maintain its fire-protection and alarm systems, seeking to recover the amount it paid to insured under a property-insurance policy for damages sustained to insured's building after a broken pipe in insured's sprinkler system went undetected. Granting in part defendant's motion for summary judgment, this court held, inter alia, that insured had consented to a limitation-of-liability provision contained in a service ticket issued by defendant and signed by both insured and defendant in connection with a proposed repair to a part of insured's alarm system; while there was no prior written service agreement between insured and defendant, a contract could be implied from the conduct of insured in requesting that defendant service its alarm system and of defendant in providing the requested service on at least six occasions. Great Northern Ins. Co. v. ADT Sec. Services, Inc., 517 F.Supp.2d 723, 737.

### W.D.Pa.Bkrtcy.Ct.

**W.D.Pa.Bkrtcy.Ct.**2007. Com. (b) quot. in disc. After insurers entered into a settlement with insured Chapter 11 debtor that was a defendant in many asbestos lawsuits, and then assumed the liabilities of another carrier that had not settled with debtor, insurers brought adversary proceeding against debtor, seeking a declaration that the settlement also released debtor's claims against the other carrier. Granting summary judgment for insurers, this court held that the settlement was not ambiguous and reflected the parties' clear intent to provide a broad, general release of insurers, as well as their predecessors and assignors, including the other carrier. The court observed that it was not only entitled to consider the contract's language and the meanings

suggested by counsel in making a finding concerning the existence of an ambiguity, but also could consider extrinsic evidence, such as course of dealing. In re H.K. Porter Co., Inc., 358 B.R. 231, 234.

### D.Vt.

**D.Vt.**2001. Cit. in case cit. in sup. Contractor sued landfill owner for wrongfully terminating contract to build lined landfill cell, alleging, in part, that termination of the contract by defendant's parent, instead of by defendant itself, was a breach of the contract. Denying plaintiff's motion for partial summary judgment, this court held, inter alia, that, because of the parties' course of dealing prior to the alleged default, it was apparent that the parties understood that defendant's parent could, under the contract, speak for its subsidiary; thus, termination of the contract by parent did not rise to the level of wrongful termination constituting a breach of contract. J.A. McDonald, Inc. v. Waste Systems International Moretown Landfill, Inc., 189 F.Supp.2d 174, 182.

### W.D.Wis.

**W.D.Wis.**2004. Quot. in disc. Wholesale distributor of groceries sued owner of convenience stores that ordered merchandise from distributor, alleging breach of contract for failure to pay for merchandise. Defendant counterclaimed for breach of contract, alleging that plaintiff did not provide certain delivery and distribution services during its conversion to a new system. This court granted plaintiff summary judgment, holding that defendant did not prove that plaintiff's provision of services as to price books and invoicing had become contractual obligation through past course of dealings or usage of trade. Fleming Companies, Inc. v. Krist Oil Co., 324 F.Supp.2d 933, 944.

### Ariz.App.

**Ariz.App.**1993. Quot. in sup., com. (b) quot. in disc. Drywall subcontractor sued general contractor for breach of contract, inter alia. The trial court entered summary judgment for defendant on the ground that, as a matter of law, no contract existed between the parties because essential terms were absent from their agreement. Reversing and remanding, this court held that the agreement was sufficiently definite to be enforceable, since the terms of the oral contract were sufficient to show a breach and to guide the court in awarding an appropriate remedy. The court stated that extrinsic evidence in the form of course of dealing between the parties was also admissible to interpret the contract and supply missing terms. AROK Const. Co. v. Indian Const. Services, 174 Ariz. 291, 848 P.2d 870, 878.

**Ariz.App.**1987. Cit. in ftn. An employee who was discharged for threatening his supervisor sued his employer on the ground that his dismissal breached his employment contract because it violated a provision in the company's discipline procedures. The trial court entered judgment on a jury verdict for the employee. Affirming, this court held that the trial court properly instructed the jury that it should decide what constituted the contract of the parties and could consider not only the employee agreement, but also company documents outlining discipline policies, as well as the company's customs and practices. The court noted that the question of whether a writing had been adopted as an integrated agreement was a question of fact to be determined in accordance with all relevant evidence. The court remarked that the defendant inappropriately misplaced reliance on another court's characterization of the term "implied contract" as an equitable theory that would override even an unambiguous agreement to create an employment-at-will contract. Loffa v. Intel Corp., 153 Ariz. 539, 738 P.2d 1146, 1153.

### Cal.App.

**Cal.App.**1999. Cit. in sup. Thirty-year employee brought wrongful termination action against former employer, alleging that defendant breached an implied-in-fact contract to terminate only for good cause. The trial court entered summary judgment for defendant. Reversing, this court held that the evidence was sufficient to support a finding that the parties intended to

create an agreement pursuant to which plaintiff could be discharged only for good cause; that, in light of relevant surrounding circumstances, a good-cause termination could be described as one for fair and honest reasons, not trivial, arbitrary, or capricious, and regulated by good faith on defendant's part; and that material factual issues existed as to whether defendant satisfied the standard for a good-cause dismissal. Binder v. Aetna Life Ins. Co., 75 Cal.App.4th 832, 89 Cal.Rptr.2d 540, 554.

### Idaho

**Idaho,** 1983. Cit. in sup. A potato packager and shipper brought an action against a corporation and its subsidiary, a restaurant chain, for delinquent payments under a potato purchase contract. The lower court entered judgment in favor of the potato packager, and the corporation appealed. The court affirmed, holding that the evidence was sufficient to support a finding that a distributing company which did the invoicing for the restaurant chain's potato purchases was not an independent buying broker, but functioned merely as a billing agent for the restaurant chain; thus, the restaurant chain was the purchaser and was responsible for the purchase price of the potatoes. The lower court's judgment was reversed and remanded in part, on different grounds. Idaho Falls Bonded Produce v. General Mills, 105 Idaho 46, 665 P.2d 1056, 1059.

### Ill.App.

**Ill.App.**2008. Com. (b) cit. in disc. Producer of sports-related programming for broadcast in a range of media sought a declaratory judgment that its license agreement with athletic association permitted it to use the "March Madness" trademark to promote certain shows distributed via any broadcast media, including video-enabled mobile wireless communications devices. The trial court entered judgment for plaintiff. Affirming, this court held, inter alia, that in the agreement's language permitting plaintiff to "advertise, promote, and sell publications, videos, and media broadcasts," the term "videos" was broad enough to encompass dissemination to mobile wireless media devices on demand. The court noted that it was not required that contract terms be found to be ambiguous before evidence of the custom and usage of the terms in the parties' trade or practice could be considered. Intersport, Inc. v. National Collegiate Athletic Ass'n, 381 Ill.App.3d 312, 319 Ill.Dec. 261, 885 N.E.2d 532, 539.

**Ill.App.**2000. Com. (b) quot. in disc. Subcontractor brought action against landlord and tenant, among others, seeking to foreclose mechanic's lien. The trial court entered summary judgment for defendants on the ground that plaintiff's notice of lien was untimely. Affirming in part, reversing in part, and remanding, this court held that, because the date of completion of the work was disputed, material factual issues existed as to whether plaintiff made a timely lien claim, and that evidence of custom or course of dealing was admissible to help determine whether defendants innocently relied on plaintiff's alleged lien waiver. Merchants Envir. Indus. v. SLT Realty Ltd., 314 Ill.App.3d 848, 863, 246 Ill.Dec. 866, 877, 731 N.E.2d 394, 405.

**Ill.App.**1988. Cit. in disc. A freight consolidator sued a shippers' association for breach of contract, alleging that members of the association had sent freight to other consolidators in violation of the contract between them. The trial court granted summary judgment for the defendant, finding the alleged exclusivity provision of the contract too indefinite to be enforceable. Affirming, this court agreed that the contract provision was too vague. The court rejected the plaintiff's argument that the exclusivity obligation was confirmed by the course of dealing between the plaintiff and the defendant before they had a written contract; the course of dealing could give meaning to a vague contract, but the record here did not confirm the plaintiff's allegations. Wald v. Chicago Shippers Ass'n, 175 Ill.App.3d 607, 125 Ill.Dec. 62, 71, 529 N.E.2d 1138, 1147.

**Ill.App.**1986. Cit. in sup. The plaintiff borrowers sued a bank for breach of a line-of-credit agreement, malicious breach of that agreement, and fraud. The bank had unilaterally terminated the agreement, and the plaintiffs were forced to sell their farm machinery and livestock to pay their outstanding debts because the bank refused to loan the plaintiffs any additional money. The lower court granted a dismissal of the two breach claims, and the plaintiffs appealed. On the issue of whether the plaintiffs sufficiently pleaded an enforceable contract, this court affirmed in part, reversed in part and remanded, holding that the plaintiffs might recover on their breach of the line-of-credit agreement and fraud claims, but could not recover punitive damages on the malicious breach claim. The court stated that a previous course of dealing may be used to give meaning to or qualify the parties'

agreement, and that the terms of the agreement may be reasonably certain even though they empowered one party to make a selection of terms in the course of performance. Carrico v. Delp, 141 Ill.App.3d 684, 95 Ill.Dec. 880, 490 N.E.2d 972, 975.

### Iowa

**Iowa,** 1982. Quot. in disc. The plaintiffs were payees on two promissory notes executed by the defendant. When the defendant made a late payment, the plaintiffs demanded payment of the entire unpaid balance, with interest, in accordance with the acceleration clause contained in the notes. The defendant refused to pay and the plaintiffs brought this suit. The trial court found that the plaintiffs waived their right to invoke the acceleration clause by accepting late payments on several prior occasions. On appeal, the issue was whether acceleration clauses could be waived by a prior course of dealing. This court stated that acceleration clauses were subject to general contract principles. Because waiver of other contract rights could be proved by evidence of a general course of dealing between the parties, the court applied this rule to acceleration clauses, holding that the holder of an installment note who had engaged in a course of dealing of accepting late payments waived the right to accelerate the obligation upon a subsequent late payment unless the holder had notified the obligor that future late payments would not be accepted. Dunn v. General Equities of Iowa, Ltd., 319 N.W.2d 515, 516.

### Md.Spec.App.

**Md.Spec.App.**1992. Quot. in ftn. A travel agency that had sold and collected money for airline tickets failed to pay the money it owed to the airline. The airline sued the travel agency's parent company and individual owners to recover the funds representing ticket proceeds. The trial court entered judgment for the airline. Affirming in part, reversing in part, vacating in part, and remanding, this court held, inter alia, as to the travel agency's counterclaim, that, even though the airline had never previously exercised its prerogative to raise its stated fares, this did not establish a course of dealing that would prevent it from raising its rates. The court noted that Restatement (Second) of Contracts § 223, on which the travel agent relied to establish a course of dealing, was predicated upon the existence of an agreement between the parties, which was not present here. Travel Committee v. Pan Am., 91 Md.App. 123, 603 A.2d 1301, 1329-1330.

### Mich.

**Mich.**1991. Quot. in ftn. to diss. op. Members of an insurance company's sales force sued the company for breach of contract and unjust enrichment after the company changed its policy relating to the payment of commissions for insurance policy sales. The trial court granted summary judgment to the employer, and the intermediate appellate court reversed. Reversing, this court held that the employer's change of policy was not actionable. The dissent argued that a trier of fact could properly find that, under the circumstances that the employer promised to pay a 7% commission on policy renewals of old sales and encouraged its sales representatives to accumulate new accounts, the employer had by implication agreed, in order to give efficacy to its promise, that it would not change or eliminate the rate of commission it agreed to pay on policy renewals of old sales. Dumas v. Auto Club Ins. Ass'n, 437 Mich. 521, 473 N.W.2d 652, 688.

### Minn.

**Minn.**1981. Cit. in diss. op. (Cit. section 249 of the Tentative Drafts, which is now section 223 of the Official Draft.) School district had been permitting an automatic payroll deduction for dues for associations representing teachers in the district. The association which was the exclusive representative of all of the teachers brought an action challenging the authority of the district under applicable statutory provisions to permit dues checkoff for an association which represented a minority of teachers. The trial court held that the statute was clear and precluded the practice of permitting dues checkoff for the minority association. On appeal, the court held that, absent a contractual provision permitting checkoff for minority associations, the school district lacked the authority to permit dues checkoff for the minority employee association when a certified exclusive representative

existed. The court noted that contract language the teachers shall have the right to have their membership dues deducted for the exclusive representative on a payroll deduction plan did not constitute a waiver in "clear and unmistakable language" of the teachers' statutory rights; moreover, such language manifests the parties' intention with respect to dues checkoff. Accordingly, the judgment of the trial court was affirmed. The dissent stated that the prior conduct of the parties and the customs of the profession demonstrated that the contract allowed minority dues checkoff. The dissent noted that, while the majority decision acknowledged that the parties can agree to permit this practice, it did not decide whether such an agreement had been made. Accordingly, since the dissent found that the facts demonstrated such an agreement, it believed that the decision should have been reversed. Anoka-Hennepin, Etc. v. Anoka-Henn.Ind. Sch., 305 N.W.2d 326, 331.

### Neb.

**Neb.**2011. Cit. in ftn. City sued waste-disposal company, seeking disgorgement of alleged overpayments it made to company after one of the two contracts between the parties expired. The trial court entered judgment for plaintiff. Affirming in part, reversing in part, and remanding, this court held, inter alia, that plaintiff was entitled to restitution for the full amount of the overpayments. The court reasoned that, while the parties did not show an intent to continue to be bound under the terms of the expired contract, the evidence established that, following that contract's expiration, they operated under an implied contract for temporary disposal services, and that, during that time, plaintiff involuntarily paid defendant's charges after defendant unilaterally increased its rate; because defendant obtained plaintiff's assent to its unilateral modification of the price through economic duress, the modification was invalid, and defendant was unjustly enriched by the overpayments. City of Scottsbluff v. Waste Connections of Nebraska, Inc., 282 Neb. 848, 862, 809 N.W.2d 725, 740.

**Neb.**1984. Cit. in disc., quot. but dist. Plaintiff contractor had contract with defendant sugar company to haul such tonnage of beets as could be loaded by defendant. Plaintiff hauled beets for two months and then was discharged by defendant. Plaintiff sued for breach of contract, alleging that he was entitled to haul until all the beets were delivered to the factory. Plaintiff also contended that defendant's prior course of dealing caused plaintiff to believe that he was entitled to continue under the contract. The trial court granted summary judgment for defendant; on appeal, this court affirmed. The court held, inter alia, that defendant's prior actions did not constitute a course of conduct justifying plaintiff's belief that he could continue under the contract where there was no similar course of dealing between defendant and other contractors. De Los Santos v. Great Western Sugar Co., 217 Neb. 282, 348 N.W.2d 842, 844-846.

### N.J.Super.

**N.J.Super.**2003. Subsec. (1) quot. in disc. Former sales representative sued former employer for, in part, breach of employment contract, alleging that defendant reduced his compensation by changing the method of calculating sales commissions without prior notice. The trial court granted defendant's motion for summary judgment, and dismissed the complaint. Reversing in part, this court held, inter alia, that a genuine issue of material fact existed as to whether the retroactive application of the new method of calculating commissions to reduce the commissions that plaintiff had already earned constituted a breach of the terms of the employment contract established by the parties' prior course of dealing. Winslow v. Corporate Express, Inc., 364 N.J.Super. 128, 138, 834 A.2d 1037, 1043.

### N.Y.

**N.Y.**1981. Cit. in sup. (Cit. section 249 of the Tentative Drafts, which is now section 223 of the Official Draft.) The plaintiff and the defendant entered into a lease which contained a renewal clause whereby the lease could be renewed for a certain period at annual rentals to be agreed upon. The plaintiff tenant gave timely notice to the defendant of his desire to renew the lease, but the plaintiff and the defendant could not agree upon the rental price. The tenant plaintiff then sued the defendant landlord for specific performance to compel the landlord to extend the lease either at an appraiser's figure or at a figure which the court found to be reasonable. The defendant sued in another court to evict the plaintiff. The lower court held that a lease contract,

which allowed for uncertain future rental, was unenforceable for uncertainty as a matter of law and dismissed the plaintiff's complaint. The plaintiff appealed. The intermediate appellate court held that the renewal clause in the lease was enforceable if it was established that the parties' intent was not to terminate the contract in the event of a failure to agree so that if the tenant plaintiff met this burden, then the trial court could set a reasonable rental amount. The plaintiff appealed in order to have the court fix the rent without the plaintiff having to meet its burden. This court reversed the intermediate appellate court and adopted the lower court's holding. The court held that a contract must be definite and specific, as to material matters and not vague and uncertain. An agreement to agree, in which a material term is left to future negotiations, is unenforceable. However, if a methodology or standard were set forth in the contract by which the rental amount could be determined, the contract would not fail for indefiniteness. Here, however, neither the landlord nor the tenant were bound to any such formula. Joseph Martin, Jr., Delicatessen, v. Schumacher, 52 N.Y.2d 105, 436 N.Y.S.2d 247, 250, 417 N.E.2d 541, 544.

### Pa.

**Pa.**1980. Cit. in diss. op. (Cit. section 249 of the Tentative Drafts, which is now section 223 of the Official Draft.) The seller, engaged in the business of distributing meat products to processors, instituted this breach of contract action to recover damages for the alleged failure of the buyer, a large meat processing business, to provide a bank guaranty to secure payment for a quantity of meat ordered from the seller. The trial court held that the buyer did not breach the contract because it found that the letter supplied by the bank was sufficient to constitute a guaranty as required under the contract. The intermediate appellate court reversed and this court affirmed having found that the letter furnished by the bank was so ambiguous that it did not conform to the intent of the parties and that the seller, therefore, was under no obligation to accept it. The dissent argued that, based upon a prior transaction between the parties, during which a substantially identical letter was accepted by the seller as a guaranty, and based upon the circumstances surrounding the preparation and delivery of the rejected letter, during which the seller made a last minute demand for a letter of credit rather that a guaranty and was refused, the buyer intended to and did in fact deliver a bank guaranty to the seller. Further, the dissent argued that the bank had expressly recognized the letter as being in response to the seller's request for a guaranty. The dissent concluded by stating that in the event of a default by the buyer, the seller could have enforced the guaranty against the bank because an ambiguity in a written instrument would be resolved against the party who drafted it. Atalanta Corp. v. Ohio Valley Provision Co., 489 Pa. 389, 414 A.2d 123, 127.

### Tex.App.

**Tex.App.**1982. Cit. in disc. (Cit. section 249 of the Tentative Drafts, which is now section 223 of the Official Draft.) A manufacturer sued to recover the amount of a customer check drawn on the defendant bank. The trial court granted an instructed verdict in favor of the bank, and the court of appeals affirmed. The bank had an absolute right to honor the customer's stop payment order under the applicable statute. Even though the bank customarily assured the manufacturer that the customer had sufficient funds to cover the check, past dealings did not give rise to an implied agreement to honor the check before it was presented to the bank. No Texas case established that a contract could be based solely on a prior course of dealings, and there was no prior instance between parties in this case which involved a stop payment order or defective merchandise. Galaxy Boat Mfg. Co. v. East End State Bank, 641 S.W.2d 584, 587.

### Wash.

**Wash.**2012. Subsec. (1) quot. in case quot. in sup. City that had franchise agreements with adjacent municipalities to provide water services brought a declaratory-judgment action against municipalities, seeking, inter alia, a determination as to whether city or municipalities were required to bear the costs of fire hydrants. The trial court granted summary judgment for defendants. Affirming as to that issue, this court held that the franchise agreements contractually required plaintiff to provide hydrants to defendants; although the franchise agreements did not expressly provide for hydrants but instead provided more generally for a "water system," the course of dealing between the parties proved that plaintiff agreed to provide and maintain hydrants under

the agreements, because plaintiff had for years included hydrant service as part of its general duties and recouped the cost via its rates. City of Tacoma v. City of Bonney Lake, 269 P.3d 1017, 1020.

**Wash.**2002. Com. (b) quot. in sup., subsec. (1) quot. in sup. Customer sued provider of UCC filing searches for negligence and breach of contract after search provider failed to locate lien under alternative spelling. The trial court granted provider summary judgment, limiting damages. The appellate court reversed and remanded. Reversing, this court held, inter alia, that by trade usage and course of dealing, customer and search provider incorporated liability-limitation provisions as part of the contract. Puget Sound Financial, L.L.C. v. Unisearch, Inc., 146 Wash.2d 428, 436, 47 P.3d 940, 944.

**Wash.App.**

**Wash.App.**2003. Cit. in ftn. Subcontractor for school-modernization project sued school district to recover additional costs it incurred for using temperature-control-equipment installer required by district, instead of low bidder chosen by subcontractor. The trial court granted defendant summary judgment dismissing plaintiff's complaint. Reversing and remanding, this court held, inter alia, that the course of dealing between the parties supported plaintiff's position that the contract did not require plaintiff to use a specific equipment installer. The court said that, in an earlier similar contract between the parties, defendant allowed plaintiff to use another company as the installer. Diamond "B" Constructors, Inc. v. Granite Falls School District, 117 Wash.App. 157, 167, 70 P.3d 966, 971.

**End of Document**                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.