# TAB 23

American Cyanamid Co. v. Novopharm Ltd., 1972 CarswellNat 38
1972 CarswellNat 38, 1972 CarswellNat 38F, [1972] F.C. 739, 7 C.P.R. (2d) 61

Case 09-10138-MFW    Doc 14225-23    Filed 08/15/14    Page 2 of 19

1972 CarswellNat 38
Federal Court of Canada — Court of Appeal

American Cyanamid Co. v. Novopharm Ltd.

1972 CarswellNat 38F, 1972 CarswellNat 38, [1972] F.C. 739, 7 C.P.R. (2d) 61

# American Cyanamid Company (Appellant) v. Novopharm Limited (Respondent)

Jackett C.J., Bastin and Sweet D.JJ.

Toronto: May 11, 1972

Proceedings: affirming *American Cyanamid Co. v. Novopharm Ltd.* (1971), 1971 CarswellNat 248, 3 C.P.R. (2d) 206, [1971] F.C. 534 (Fed. T.D.)

Counsel: *Donald F. Sim, Q.C.*, and *Roger T. Hughes* for appellant.
*I. Goldsmith, Q.C.*, for respondent.
*David Watson* for Bristol-Myers Co.

Subject: Intellectual Property; Property

**Related Abridgment Classifications**
For all relevant Canadian Abridgment Classifications refer to highest level of case via History.

**Headnote**

Patents — Infringement — Right of action for infringement by non-exclusive patentee — Patentee must be party to action — Stay of proceedings — Patent Act, s. 57(1) and (2).

The non-exclusive licensee of a patent of invention brought action for damages against an alleged infringer of the patent. The defendant moved to strike out the statement of claim (1) as disclosing no cause of action and (2) because the patentee was not a party as required by section 57(2) of the *Patent Act*.

*Held* (Jackett C.J. dissenting in part), reversing Noël A.C.J. in the Trial Division, the motion must be dismissed.

**Per curiam:**

A non-exclusive licensee of a patent is a person claiming under the patentee within the meaning of section 57(1) of the *Patent Act*.

**Per Bastin and Sweet D.JJ.:**

A non-exclusive licensee is entitled to recover from the infringer the damages he has suffered by reason of the infringement, and these can only be determined following a trial.

**Per Jackett C.J.:**

Case 09-10138-MFW    Doc 14225-23    Filed 08/15/14    Page 3 of 19

American Cyanamid Co. v. Novopharm Ltd., 1972 CarswellNat 38
1972 CarswellNat 38, 1972 CarswellNat 38F, [1972] F.C. 739, 7 C.P.R. (2d) 61

Since a non-exclusive licence merely entitles the licensee to use the patented invention, which right is not affected by the infringement, he suffers no damage from the infringement and therefore the statement of claim discloses no cause of action and should be dismissed before trial.

**Held also (per curiam):**

While failure to make the patentee a party to the action as required by section 57(2) is not ground for striking out the statement of claim, proceedings in the action should be stayed until final disposition of a motion to make the patentee a party to the action.

*Fiberglas Canada Ltd. v. Spun Rock Wools Ltd.*, [1943] S.C.R. 547; (1946-47) 6 Fox Pat. C. 39, applied; *Electric Chain Co. of Can. Ltd. v. Art Metal Works Inc.*, [1933] S.C.R. 581, considered.

Appeal from Noël A.C.J. [1971] F.C. 534.

*Jackett C.J.*:

1      This is an appeal from a decision of the Trial Division dismissing with costs the appellant's action on a motion made before a Defence was filed to strike out the Statement of Claim.

2      By Statement of Claim filed June 23, 1971, the appellant brought an action against the respondent for relief in respect of acts alleged to constitute infringement of Canadian Letters Patent No. 726,675, which "was granted to and is owned by Bristol-Myers Company".

3      The appellant alleges that it is "a non-exclusive licensee" under certain claims in Letters Patent No. 726,675.

4      By Notice of Motion filed October 25, 1971, the respondent gave notice of a motion for an order striking out the Statement of Claim on the grounds that it discloses no reasonable cause of action, that the appellant, as a non-exclusive licensee under the Letters Patent owned by Bristol-Myers Company, has no status to maintain its action without making the patentee a party thereto as required by section 57(2) of the *Patent Act* and that an action by Bristol-Myers Company for alleged infringement of the patent against the respondent is pending in this Court.

5      Pursuant to an order of the Court, notice of that motion was given to Bristol-Myers Company with the result that that Company appeared by counsel upon the return of the motion before the Associate Chief Justice. Counsel representing Bristol-Myers Company also appeared and made submissions during the argument of this appeal.

6      When disposing of the motion, the Associate Chief Justice dealt with the ground of the motion based on section 57(2) of the *Patent Act*, which reads as follows:

> *57.* (2) Unless otherwise expressly provided, the patentee shall be or be made a party to any action for the recovery of such damages.

by rejecting the appellant's contention that it was the "patentee" within the meaning of that provision and saying that as, in his opinion, no action should be defeated by reason of the non-joinder of a party, "if this were the only impediment to this action", he would not hesitate to allow the appellant to move to have Bristol-Myers Company made a party. He held, however, that a non-exclusive licensee cannot claim damages for infringement of a patent and that the appellant having, accordingly, no status in the action, it should be dismissed.

7      This appeal is from the resulting judgment dismissing the action without costs.

Case 09-10138-MFW    Doc 14225-23    Filed 08/15/14    Page 4 of 19

American Cyanamid Co. v. Novopharm Ltd., 1972 CarswellNat 38
1972 CarswellNat 38, 1972 CarswellNat 38F, [1972] F.C. 739, 7 C.P.R. (2d) 61

8   A copy of the licence agreement and certain amending letters was attached to the Statement of Claim by the appellant. By its terms, Bristol-Myers Company "grants" to the appellant "a non-exclusive right and license", under certain claims of Patent No. 726,675, "to manufacture, have manufactured for it, use and sell" certain products manufactured by any of a specified class of processes. There is a further right conferred on the appellant by the licence document to "sublicense" one sublicensee when it is not itself manufacturing the specified products. The licence agreement contains provisions for payment of royalties and other provisions not relevant to the present problem. In addition it contains detailed provisions under the heading "Article V — Third Party Infringement and Equal Treatment". Those provisions read as follows:

> If at any time while this Agreement is in effect, CYANAMID shall believe that substantial infringement of the Subject Patent is occurring with respect to the rights licensed to CYANAMID hereunder, CYANAMID may so notify BRISTOL and at the same time furnish to BRISTOL information upon which CYANAMID's belief is based, together with sufficient facts demonstrating that CYANAMID's or its sublicensee's sales in Canada of Tetracycline and products containing or made with Tetracycline have been or will be substantially detrimentally affected. In such notice CYANAMID may request BRISTOL to advise CYANAMID whether BRISTOL will initiate appropriate steps to bring about a discontinuance of such alleged infringement.

> If, within a period of one hundred and twenty (120) days after receipt of such notice and request BRISTOL fails to notify CYANAMID that it will initiate appropriate steps to bring about a discontinuance of such alleged infringement or notifies CYANAMID that it does not intend to do so, CYANAMID shall, after the expiration of such period, be relieved of its obligation to pay royalties hereunder with respect to the Letters Patent which were alleged to be infringed.

> If BRISTOL in the reasonable exercise of its judgment determines that the information submitted by CYANAMID or otherwise available to BRISTOL is insufficient to indicate the reasonable probability of such alleged infringement, or that sales of Tetracycline by CYANAMID or its sublicensees have not been, or will not be, substantially detrimentally affected by such infringement, and so notifies CYANAMID within such period, then CYANAMID shall not be so relieved.

> In the event, after receipt of CYANAMID's notice as above stated, BRISTOL advises CYANAMID that it will initiate such appropriate step, CYANAMID shall not be relieved of its obligation to pay such royalties hereunder except as hereinafter provided.

> CYANAMID shall have the benefit of any decision of a court of competent jurisdiction of Canada, unappealable or unappealed within the time allowed for appeal, holding the Subject Patent invalid in whole or in part, or holding that the Subject Patent or any particular claim or claims of such Subject Patent is not infringed by a particular product. Should a court of competent jurisdiction of Canada hold such Subject Patent invalid in whole or in part or hold that such Subject Patent or any particular claim or claims of such Subject Patent is not infringed by a particular product, CYANAMID shall have the benefit of that decision unless and until it is reversed as provided below. To the extent royalties would not thereafter accrue under this Agreement if the holding of such a decision were followed, payment of such royalties shall be suspended. In case such decision is reversed by the decision of a court of competent jurisdiction, unappealable or unappealed within the time allowed for appeal, and if pursuant to the holding of that reversed decision suspended royalties would accrue hereunder, then such royalties shall thereafter be paid in accordance with the terms of this Agreement, and to the extent payment of such royalties shall have theretofore been suspended, the amount thereof shall become due and payable to BRISTOL.

> If CYANAMID shall have given BRISTOL the notice and request, together with the information and facts, provided for above and for a period of three (3) years from the date of such notice, substantial infringement of the Subject Patent referred to in such notice has continued to the substantial detriment of the sales of Tetracycline in Canada by CYANAMID, its subsidiary or a sublicensee hereunder, CYANAMID shall be relieved of paying royalties hereunder with respect to such Subject Patent so long as such alleged infringement thereafter continues.

> In the event that CYANAMID is relieved of the obligation to pay royalties under the foregoing provisions, and BRISTOL is thereafter successful in bringing about a discontinuance of the infringement which was the basis for the relief, CYANAMID's obligation to pay royalties shall there-upon revive and if BRISTOL, in bringing about the discontinuance of said infringement, shall have collected royalties (or damages) for said past infringement the revival of CYANAMID's obligation to pay royalties shall be retroactive to whatever extent BRISTOL was successful in collecting royalties (or damages) for such past infringement.

9      There is one further significant fact to be mentioned. On June 24, 1971, Bristol-Myers Company commenced an infringement action against the respondent in this Court and paragraph 13 of the Statement of Claim in that action reads as follows:

> 13. The Plaintiff is willing to grant to the Defendant a licence under Canadian Patent 726,675 at a royalty rate of $3\ 1/2$ per cent and being cancellable by licensee upon 90 days' notice and containing other conventional provisions.

10      The questions that arise for consideration on this appeal, as I understand them, are, in effect, as follows[1]:

> 1. Having regard particularly to the fact that the appellant is a "non-exclusive licensee" on the terms that I have indicated, do the facts alleged by the Statement of Claim disclose a cause of action?
>
> 2. Even if this Court concludes that the Statement of Claim does not disclose a cause of action, should that question nevertheless be left to be decided after the trial of the action?
>
> 3. Even if the action would otherwise be allowed to go to trial, is it defective for failure to comply with section 57(2) of the *Patent Act*, and if so, what should the judgment be on this appeal?

11      I propose to consider first what right, if any, section 57 of the *Patent Act* confers on a licensee who is not an exclusive licensee as against an infringer.

12      Before proceeding to consider this problem, it is useful to refer to the following provisions of the *Patent Act*[2]:

> *2.* In this Act, and in any rule, regulation or order made under it,
>
> . . . . .
>
> (*d*) "invention" means any new and useful art, process, machine, manufacture or composition of matter, or any new and useful improvement in any art, process, machine, manufacture or composition of matter;
>
> (*e*) "legal representatives" includes heirs, executors, administrators, guardians, curators, tutors, assigns and all other persons claiming through or under applicants for patents and patentees of inventions;
>
> . . . . .
>
> (*g*) "patent" means letters patent for an invention;
>
> (*h*) "patentee" means the person for the time being entitled to the benefit of a patent for an invention;
>
> . . . . .
>
> *12.* (1) The Governor in Council, on the recommendation of the Minister, may make, amend or repeal such rules and regulations as may be deemed expedient
>
> . . . . .
>
> (*c*) in particular, but without restricting the generality of the foregoing, with respect to the following matters
>
> . . . . .

WestlawNext® CANADA  Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.    4

> (iii) the registration of assignments, transmissions, *licences*, disclaimers, judgments or other documents relating to any patent,

. . . . .

*46.* Every patent granted under this Act shall contain the title or name of the invention, with a reference to the specification, and shall, subject to the conditions in this Act prescribed, grant to the patentee and his legal representatives for the term therein mentioned, from the granting of the same, the exclusive right, privilege and liberty of making, constructing, using and vending to others to be used the said invention, subject to adjudication in respect thereof before any court of competent jurisdiction.

. . . . .

*48.* Every patent granted under this Act shall be issued under the signature of the Commissioner and the seal of the Patent Office; the patent shall bear on its face the date on which it is granted and issued and it shall thereafter be *prima facie* valid and avail the grantee and his legal representatives for the term mentioned therein, which term shall be as provided in and by section 49.

. . . . .

*53.* (1) Every patent issued for an invention is assignable in law, either as to the whole interest or as to any part thereof, by an instrument in writing.

(2) Such assignment, and every grant and conveyance of any exclusive right to make and use and to grant to others the right to make and use the invention patented, within and throughout Canada or any part thereof, shall be registered in the Patent Office in the manner from time to time prescribed by the Commissioner.

. . . . .

(4) Every assignment affecting a patent for invention, whether it be referable to this section or section 52, is null and void against any subsequent assignee, unless such instrument is registered as hereinbefore prescribed, before the registration of the instrument under which such subsequent assignee claims.

. . . . .

*57.* (1) Any person who infringes a patent is liable to the patentee and to all persons claiming under him for all damages sustained by the patentee or by any such person, by reason of such infringement.

(2) Unless otherwise expressly provided, the patentee shall be or be made a party to any action for the recovery of such damages.

. . . . .

*59.* (1) In any action for infringement of a patent the court, or any judge thereof, may, on the application of the plaintiff or defendant make such order as the court or judge sees fit,

> (*a*) restraining or enjoining the opposite party from further use, manufacture or sale of the subject matter of the patent, and for his punishment in the event of disobedience of such order, or
>
> (*b*) for and respecting inspection or account, and
>
> (*c*) generally, respecting the proceedings in the action.

13

. . . . .

(The italics in section 12 are mine.)

WestlawNext CANADA  Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.    5

14     A review of these provisions shows that letters patent for an "invention" under the *Patent Act* grant to the patentee (the person for the time being entitled to the benefit of the patent) and his legal representatives (which term includes "assigns and all other persons claiming through or under ... patentees of inventions") for a term "the exclusive right, privilege and liberty" of making, constructing and using the invention and of "vending" it to others to be used. (Section 46.)

15     Such a patent is specifically made assignable "either as to the whole interest or as to any part thereof". (Section 53(1).)

16     While there is no express authority in the statute for a sub-grant of some portion of the patent rights, it is expressly recognized that there may be a "grant and conveyance" of an "exclusive right to make and use and to grant to others the right to make and use the invention patented" either throughout Canada or any part thereof. (Section 53(2).)

17     Finally, there is no express provision under which the patentee may grant a licence in its ordinary sense of "liberty (to do something), leave, permission", but this must be inherent in ownership of the patent as well as in the right granted to the patentee of "vending to others to be used". That this is so is confirmed by the fact that the Act contemplates rules and regulations providing for the registration of "licences" (section 12(1)(*c*)) and that it also contemplates exclusive and non-exclusive compulsory licences in certain circumstances. (Section 68.)

18     Before proceeding further, it is important to have in mind the two principal kinds of arrangement by which a patentee may bestow on some other person authority to use the patented invention, *viz:*

> (a) a "grant or conveyance" of an "exclusive right" to make and use and to grant to others the right to make and use the invention, [3] and
>
> (b) a grant of a mere licence to make and use the invention so that the licensee can do so lawfully when, without the licence, it would be unlawful for him to do so.

An arrangement of either kind may be, and usually is, accompanied by special contractual terms.

19     I think it is clear law that, apart from statute, a mere licence to use property confers no interest or property right in the property that is the subject of the licence and cannot, in itself, confer a right to damages against a third person who also uses that property, whether or not the third person has a licence from the owner to use it. A licence is, therefore, apart from some statutory provision to the contrary, different in kind from a grant of an "exclusive right" to make and use property. The grantee of such a right in respect of property has an exclusive right in the property (carved out of the patentee's full ownership rights) which exclusive right is infringed by user inconsistent with it and the law would, I should have thought, provide a remedy for any such infringement whether or not the statute expressly provides for such a remedy. [4]

20     The first question that has to be decided in considering whether the facts alleged by the Statement of Claim in this case disclose a cause of action is the question whether section 57 makes the person who infringes a patent liable, not only to a grantee of an "exclusive right" to use the patented invention but also to a mere non-exclusive licensee, as being a person "claiming under" the patentee, for all "damages sustained ... by any such person".

21     As a matter of first impression, I should have thought that the words "persons claiming under" the patentee refer to persons claiming against the infringer by virtue of a property right derived directly or indirectly from the patentee. This clearly would include a person to whom the patentee has granted an "exclusive right" to use the patented invention and who is claiming against a person who has infringed that exclusive right. Having regard, however, to the fact that the grant by a patentee of a mere licence confers only a liberty to use the invention and no property right, it would not seem, as a matter of first impression, that the grant of such a licence supplies any basis for a claim against an infringer. And, indeed, this would seem to have been the state of the law in earlier times even if there was a contract between the patentee and the licensee that the licence was exclusive. See *Heap v. Hartley* (1889) 42 Ch. D. 461, which was applied by the Supreme Court of Canada in *Electric Chain Company of Canada Ltd. v. Art Metal Works Inc.,* [1933] S.C.R. 581, at pages 586-87. The respondent's position is, however, that it has been determined by the decision of the Supreme Court of Canada [1943] S.C.R. 547, and the decision of the Privy Council

Case 09-10138-MFW    Doc 14225-23    Filed 08/15/14    Page 8 of 19

American Cyanamid Co. v. Novopharm Ltd., 1972 CarswellNat 38
1972 CarswellNat 38, 1972 CarswellNat 38F, [1972] F.C. 739, 7 C.P.R. (2d) 61

(1946-47) 6 Fox Pat. C. 39, in *Fiberglas Canada Ltd. v. Spun Rock Wools Ltd.* that a mere licensee has a good cause of action, by virtue of section 57, against a person who infringes the patent.

22      Whether or not section 57 confers a cause of action on a bare licensee will depend on what effect is to be given to *Fiberglas Canada Ltd. v. Spun Rock Wools Ltd*. Before examining that decision, however, it is important to ascertain what was decided by the Supreme Court of Canada in *Electric Chain Co. of Canada Ltd. v. Art Metal Works Inc.*, [1933] S.C.R. 581.

23      In the *Electric Chain* case, the question before the Court arose in a somewhat unusual way. A New Jersey corporation had brought an action for infringement of a Canadian patent of which it was the patentee. The defendant admitted the facts pleaded by the statement of claim and put damages and profits in issue. There was, in effect, a consent judgment for *inter alia* damages to be determined on a reference. On the reference, it appeared that the New Jersey corporation did not itself carry on business in Canada but that it had a wholly owned subsidiary that did. When the referee's report came before a judge, he gave leave to add the subsidiary as a party plaintiff. Substantial damages were allowed based on damage sustained by the subsidiary. In the Supreme Court of Canada it was determined that there was no "grant and conveyance of any exclusive right" to use the patented invention from the New Jersey corporation to its subsidiary, but merely "evidence of a licence". The statute in question was the *Patent Act* of 1927, R.S.C. 1927, c. 150, which defined "patentee" to mean "the person for the time being entitled to the benefit of a patent" (section 2(*e*)), provided that an infringer was liable to "the patentee" or his legal representatives in an action for damages, and defined "legal representatives" to include "heirs, executors, administrators, guardians, curators, tutors, assigns or other legal representatives". The Supreme Court [at p. 487] referred to *Heap v. Hartley* (1889) 42 Ch. D. 461 where it was unsuccessfully argued that "since a patentee was ... 'the person for the time being entitled to the benefit of a patent', an exclusive licensee for a particular district was *quâ* that district ... in the position of a person to whom the patentee had given his monopoly ... and was entitled to maintain an action for infringement of his rights within the district in his own name, and without joining the patentee". Reference was made by the Supreme Court of Canada to a passage in the reasons for judgment in *Heap v. Hartley*, where it was said: "... the licence pure and simple, and by itself, never conveys an interest in property. It only enables a person to do lawfully what he could not otherwise do, except unlawfully". Applying this decision, the Supreme Court held that the patentee's subsidiary in the *Electric Chain* case was not "the patentee" or "the legal representative of the patentee" and had no right to be a party to the infringement action. In the result, the New Jersey corporation got damages for the infringement that did not include damages sustained by its licensee.

24      After the *Electric Chain* case and before the *Fiberglas* case, the provision of the *Patent Act* spelling out the liability of an infringer was changed. As has already been noted the new section, which came into force in 1935 and is now section 57(1), provides that an infringer is liable to "the patentee and to all persons claiming under him for all damages sustained by the patentee or by any such person".

25      In the *Spun Rock* case, a Canadian patent had issued to a foreign company, who granted exclusive licences to intermediate parties who, in turn, granted exclusive licences to Fiberglas Canada Ltd. The foreign company became an enemy with the result that its interest in the patent became vested in the Custodian under the *Trading with the Enemy Regulations*. In those circumstances, when Fiberglas commenced its action in the Exchequer Court of Canada against Spun Rock for infringement of the patent, it joined the Custodian as a defendant. (See judgment of Kerwin J. at page 558 and judgment of Rand J. at pages 565-66.) The trial judge gave leave to add one of the intermediate parties as a plaintiff and gave judgment in favour of the plaintiffs. The Supreme Court of Canada (Rand J. dissenting) reversed that judgment on the ground that there was no invention in the claim sued upon. In these circumstances, although it was not necessary for the decision, the status of the plaintiffs in the action was discussed. Davis J., who gave the judgment of himself and Taschereau J., said that the relevant provision was section 55 (now section 57). He said that "The statutory remedy provided is an action 'for all damages sustained' ..." and expressed the opinion that "A licensee is ... for the purposes of the section, a person claiming under the patentee ..." (page 557). He pointed out, however, that "the statutory liability is 'for all damages sustained' by such person by reason of such infringement" (page 557). He also expressed the opinion that the intermediate party was neither a necessary nor a proper party. Kerwin J. said: "... the appellant admitting infringement if it be held that the claim sued on is valid, Fiberglas Canada Limited, as exclusive licensee, would be entitled in that event to the usual order of restraint against the appellant" (pages 558-59). He then referred to the decision in the *Electric Chain* case and the subsequent changes in the statute and said: "So far as a claim for damages

Case 09-10138-MFW    Doc 14225-23    Filed 08/15/14    Page 9 of 19

American Cyanamid Co. v. Novopharm Ltd., 1972 CarswellNat 38
1972 CarswellNat 38, 1972 CarswellNat 38F, [1972] F.C. 739, 7 C.P.R. (2d) 61

is concerned, therefore, an exclusive licensee claims under the patentee within the meaning of this section, and the presence of the Custodian as a party defendant in this litigation would, I think, be sufficient if the plaintiff had worked the invention in Canada" (page 559). Hudson J. said: "As the patentee and the original licensees are before the Court, I think it is unnecessary for me to express any opinion as to the status of the plaintiff to bring the action" (page 560). Rand J. dealt with the question at pages 565 and 566 as follows:

> A further defence was raised as to the right of the respondents to maintain the action. The original plaintiff claimed to be the exclusive sub-licensee of the added plaintiff, Owens-Corning Fiberglas Corporation, under exhibits 3, 4 and 5: but that these documents conveyed such an interest was seriously challenged. The capacity of the added plaintiff, in turn, was alleged to be that of exclusive licensee of the patentee. There does not appear to be any doubt of that fact, and the inclusion of the corporation in the action cures any defect in parties of beneficial interest. The patentee was a corporation of Holland and, by the provisions of the regulations respecting Trading with the Enemy (1939), the legal title to the patent has been vested in the defendant Custodian. All interested parties are, therefore, before the court and whether as plaintiff or defendant would not, in the circumstances, appear to be material.

In the Privy Council the matter was dealt with in the judgment delivered by Lord Simonds by a passage at pages 46-7 of (1946-47) 6 Fox's Patent Cases, as follows:

> Their Lordships do not think it necessary in the circumstances again to examine in detail the several documents. With the assistance of counsel they did so at the hearing and were satisfied that the appellants had established their title to sue as licensees, and it is plain that the learned Judges of the Supreme Court took the same view.

> There remains then the question of general importance, what under Canadian law are the rights of a licensee of a patent.

> The respondent contends that a licensee has no right to sue for damages and that even if he has such a right he has no right to an injunction to restrain infringement.

> The first relevant provision is sec. 55 of the Patent Act, 1935, which provides as follows:

> 55. (1) Any person who infringes a patent shall be liable to the patentee and to all persons claiming under him for all damages sustained by the patentee or any such person, by reason of such infringement.

> (2) Unless otherwise expressly provided, the patentee shall be or be made a party to any action for the recovery of damages.

> Here the question is, whether a licensee is a person claiming under the patentee. Upon this question, even if it was argued before him, the learned trial Judge can have had no doubt; for he makes no mention of it in his judgment. In the Supreme Court Davis J. (with whom Taschereau J. concurred) held that a licensee is for the purposes of the section a person claiming under the patentee. Kerwin J. came to the same conclusion, pointing out that in the 1935 Act the relevant provision was recast, the words "the patentee and all persons claiming under him" taking the place of the words "the patentee or his legal representatives," which occurred in the earlier Patent Act of 1932 and were not apt to include a licensee. Upon this question neither Hudson J. nor Rand J. expressed an opinion, but the latter Judge, who was in favour of dismissing the appeal, can have had no doubt upon the matter.

> In the face of this consensus of opinion upon a Canadian Statute their Lordships would in any case hesitate to express a contrary view. But it appears to them that the statutory amendment of 1935 following upon the decision of *Electric Chain Co. of Canada v. Art Metal Works Inc., (1935) S.C.R. 581* points irresistibly to the conclusion that licensees are persons claiming under the patentee within the meaning of the section. The patentee by definition means the person for the time being entitled to the benefit of a patent. Sec. 55(1) contemplates an action not only by the person for the time being entitled to the benefit of a patent but also by any person claiming under that person. Upon the plain language of the section a licensee answers that description.

Case 09-10138-MFW    Doc 14225-23    Filed 08/15/14    Page 10 of 19

American Cyanamid Co. v. Novopharm Ltd., 1972 CarswellNat 38
1972 CarswellNat 38, 1972 CarswellNat 38F, [1972] F.C. 739, 7 C.P.R. (2d) 61

26     Before attempting to come to a conclusion on the effect of section 57, I must consider further the reasons given by the Associate Chief Justice for reaching the conclusion that he did in this matter.

27     After reviewing the proceedings and the decisions in the *Electric Chain* and the *Spun Rock Wools* cases and disposing of the argument based on section 57(2), the Associate Chief Justice said, with reference to the present question, that, notwithstanding the *Spun Rock* case, where it was decided "that one holding an exclusive licence can sue", he had serious doubt as to whether a non-exclusive licensee can sue for infringement (a) because he cannot claim "under the patentee", and (b) because he cannot claim damages for infringement under the patent. He expressed the view that section 57(1) must be construed strictly and after referring to the terms of the licence held by the plaintiff in the case and to what was said by Lord Buckmaster L.C. in *King v. David Allen & Sons*, [1916] 2 A.C. 54 at p. 59, he concluded that there was nothing but a personal obligation between the licensee and the plaintiff. He concluded, therefore, that the plaintiff had no status in the action and that it should be dismissed with costs.

28     In the absence of other authority, I should be content to say that I agree with the general principles enunciated by the Associate Chief Justice. I should also say that, when the decision in *Fiberglas Canada Ltd. v. Spun Rock Wools Ltd.* is restricted to the facts that were before the courts in that case, I agree that that decision is only authority for the proposition that an *exclusive* licensee is a person "claiming under" the patentee within the meaning of section 57, as it now is, of the *Patent Act*. Lower courts are not, therefore, in my view, bound by the doctrine of *stare decisis*, even if it is applicable, to hold that it has been decided by that case that a non-exclusive licensee falls within those words. [5]

29     For that reason, if I thought it was open to me to do so, I should reach the conclusion, which I suggested earlier in these reasons, that a person is "claiming under" the patentee against an infringer if he is claiming for infringement of some property right received directly or indirectly by way of grant or conveyance from the patentee, and I would include within this, as I would be bound by the *Spun Rock* decision to do, an exclusive licensee as being a person to whom an "exclusive right" has, in effect, been granted. I would not in such circumstances, include a non-exclusive licensee as a person "claiming under" the patentee.

30     However, possibly because of my common law background, I take something out of the judgments in the *Spun Rock* case that, it is clear, was not found there by my brother Noël. As I read those judgments, they contain important declarations that I think I should regard as authoritative even though I cannot see a logical basis for them. In the Supreme Court of Canada two of the judges (Davis and Taschereau, JJ.), having made it clear that they had prepared their observations on the point because the question had been argued at considerable length and was of "general importance", stated quite generally, "A licensee is ... for the purposes of the section, a person claiming under the patentee ...". In the Privy Council, after prefacing the relevant part of his judgment with the words "There remains then the question of general importance, what under Canadian law are the rights of a licensee of a patent", Lord Simonds, delivering the judgment of the Judicial Committee, quoted section 55(1) (as it then was) and said that the question "Here", was whether a licensee is a person claiming under the patentee, and answered that question by saying: "Upon the plain language of the section a licensee answers that description". I have been tempted by the view that there was no intention on the part of these judges to express any opinion except with reference to the facts before them and also by the view, which has been suggested, that what they really had in mind, when they said "licensee", was an exclusive licensee. I cannot, however, think that either Lord Simonds or Davis J., with their respective back grounds in the common law, would have used the very familiar concept of "licence" to mean only some very narrow class of licence without saying so. [6]

31     I am, therefore, constrained to take the view that a person who is a licensee under a patent is a person claiming under the patentee within the meaning of those words as used in section 57(1) of the *Patent Act*.

32     However, that is not the end of the matter. Prior to the addition of the reference to persons claiming under the patentee to section 57(1), the effect of the decisions was that an infringer was not liable to any licensee. Since that addition, an infringer has been liable to a licensee to the extent set out in the revised section 57(1). The effect of the change in the provision was to create a statutory cause of action that did not previously exist. The next step is, therefore, to determine what that cause of action is.

33     In the first place, what a licensee may claim under section 57(1) is damages sustained by himself and not the damages sustained by any other person. This was made quite clear by Lord Simonds in the *Spun Rock* case at page 47 where he said:

"... since the action is in substance an action by Fiberglas (the ultimate licensee), whose right and interest as licensee began on December 29th, 1939, it should be made clear in the order that the damages recoverable are limited to the damages suffered after that date by Fiberglas as beneficial owner or by Owens-Corning (the intermediate licensee) as trustee for Fiberglas". (See also Davis J. at page 557 of [1943] S.C.R.)

34     The next question to be considered in this case is therefore: What are the "damages" sustained by a licensee within the sense of section 57(1)?

35     In so far as a licensee is concerned, what section 57(1) does is to say that an infringer of a patent is liable to a licensee, *as a person claiming under the patentee*, for all damages sustained by the licensee by reason of the infringement. Keeping in mind that an infringer is only liable to a licensee under section 57(1) because a licensee is a person "claiming under" the patentee, which must, in my view, mean a person claiming some *right* by virtue of some grant from, or other arrangement with, the patentee, it follows, in my view, that what section 57(1) makes the infringer liable to the licensee for is the damages sustained by the licensee by reason of the encroachment of the infringement on the right claimed by the licensee under the patentee.

36     If I am right in my analysis of section 57(1), where the person claiming under the patentee by virtue of section 57(1) is a licensee with an exclusive right of user that has been infringed by the defendant, such as the plaintiff Fiberglas was in the 1943 case, his damages are clearly, I should have thought, neither more nor less than the damages that have been sustained as a result of the encroachment of the infringement on the right of exclusive user that the licensee held "under" the patentee.

37     It follows that where the patentee has conferred on a licensee an unqualified right of exclusive user of the invention, any user by an infringer of that invention encroaches on the rights held by the licensee under the patentee. When, therefore, a statement of claim sets up such rights in the plaintiff and sets up an infringement, it reveals a *prima facie* cause of action under section 57(1).

38     I come now to applying the conclusions that I have reached to the first question that arises on this appeal as I framed it early in these reasons, *viz:*

> 1. Having regard particularly to the fact that the appellant is a "non-exclusive licensee" on the terms that I have indicated, do the facts alleged by the Statement of Claim disclose a cause of action?

39     In this case, the Statement of Claim alleges that the plaintiff is a "non-exclusive licensee" under certain claims in the patent that is being sued on. Taken by itself, [7] that means only that the plaintiff has an arrangement with the patentee under which he can use the invention without being an infringer. Such arrangement would confer on him no right that there should be any limitation on user of the invention by other persons. User of the invention by a third person, whether or not he is an infringer, would not, therefore, in any way, deprive the licensee of any part of what he was entitled to as between himself and the patentee. It follows that the Statement of Claim in this case does not, in my view, disclose a cause of action.

40     Where the person claiming under the patentee is a non-exclusive licensee, it is difficult, if not impossible, to conceive of a state of facts upon which he can argue that he has sustained damages by reason of being deprived of the rights that he held under the patentee as a result of infringement of the patent. In such a case, an infringer of the patent is a person who is an infringer because he did not himself get a licence from the patentee. The patentee, therefore, has a legal claim for such an infringement. It is difficult, however, to see what complaint a mere non-exclusive licensee has when the infringer would not be an infringer if he had had a licence the granting of which is no part of the legal interest or concern of such licensee.[8]

41     As I see it, a bare licence under a patent, being merely a permission from the patentee to do something that it would, otherwise, have been unlawful to do, a person who infringes the patent does not commit any wrong against the licensee and does not deprive the licensee of anything to which he was entitled as between himself and the patentee. In other words, the licensee has no right to complain against infringement of the patent either by reason of any right vested in him that is good as against the perpetrator of the particular act of infringement, or by virtue of a contract with the patentee whose legal rights are infringed by such act. A bare licensee who exercises the patent for a profit may indeed suffer a diminution in profit from

Case 09-10138-MFW    Doc 14225-23    Filed 08/15/14    Page 12 of 19

American Cyanamid Co. v. Novopharm Ltd., 1972 CarswellNat 38
1972 CarswellNat 38, 1972 CarswellNat 38F, [1972] F.C. 739, 7 C.P.R. (2d) 61

selling the invented *product* as a result of competition from some other person who also exercises the patent rights whether such person does so under licence from the patentee or as an infringer. As it seems to me, however, that diminution in profit is not a loss for which he has any recourse at law. Compare *Bradford v. Pickles*, [1895] A.C. 587.

42     The appellant does not accept the view that section 57 only confers on a person claiming under a patentee a right to damages sustained by that person as a result of having been deprived by the infringement, of some part of what he is entitled to by virtue of the rights he holds under the patentee. It says that such a view unduly limits the effect of section 57(1) as applied by the decision of the Judicial Committee in the *Spun Rock* case. The appellant's contention is that all that is required to give a licensee of a patent a right of action under section 57(1) is that there be an infringement of the patent and that the licensee has thereby lost something that he would otherwise have had. In other words, even if no right of the licensee either contractual or otherwise has been interfered with in any way, if there has been an infringement of the patentee's rights and the licensee has thereby been deprived of profits that he would otherwise have made, the appellant says that section 57(1) makes the infringer liable to it for such "*de facto* damages".

43     On the appellant's view of the matter, section 57(1) does not merely create a remedy whereby an exclusive licensee, or other person claiming under the patentee, can recover directly damages for interference with the rights held by him under the patentee, but it confers on a non-exclusive licensee a cause of action for "damages" although his rights have not been adversely affected in any way.

44     I find nothing in section 57(1) to indicate any intention to create a statutory obligation arising out of the tort of infringement to a person whose rights were not affected thereby and I find nothing in the judgments in the *Spun Rock* case that suggests such a result. In the absence of something quite specific to indicate an intention to confer such a gratuitous benefit, I do not think that any such intention should be imputed to Parliament.[9]

45     My conclusion is, therefore, as I have already indicated, that a Statement of Claim whereby a non-exclusive licensee claims damages for infringement of a patent does not disclose an arguable cause of action unless facts are pleaded upon which it can at least be argued that there was some interference with the rights held by the plaintiff under the patentee by reason of the defendant's alleged infringement of the patent.

46     In this case it is true that the Statement of Claim does allege that, by reason of the acts of the defendant, "the plaintiff has suffered loss and damage" by reason of the alleged infringement, which is all that is normally alleged on the question of damages in a claim by a patentee or an exclusive licensee. However, the situations are different. In the case of infringement of a property right, such as those granted to the patentee by the patent or the exclusive rights of an exclusive licensee, an allegation of loss or damage suffered by the owner of the right as a result of its infringement may well, depending on the circumstances, be all that is required to inform the defendant and the Court of the substance of the plaintiff's case even though it is technically deficient in that it pleads the conclusion resulting from applying the law to the facts instead of pleading the facts.

47     Where, however, all that is pleaded is the infringement of the property rights of a patentee, it is not apparent that a bare licensee has suffered any damage within the sense of section 57(1) and it becomes necessary to plead facts that set up an arguable case of loss or damage sustained by the licensee that would be recognized by the law. In this case, it was not suggested by counsel, when the matter was raised, that any facts could be pleaded, if an opportunity were given, that would show that the infringement had in any way interfered with the rights held by the appellant under the patentee.

48     That brings me to the second question, which I have framed earlier in these reasons as follows:

   2. Even if this Court concludes that the Statement of Claim does not disclose a cause of action, should that question nevertheless be left to be decided after the trial of the action?

49     Whether or not an action should be disposed of, in whole or in part, before trial, on a question of law, is a matter of judicial discretion. In my view, in this case, the question of law should be decided at this stage — that is, before further pleadings, discovery or trial. On the one hand, if the matter is decided at the outset and the ultimate decision is that the pleadings do not

Case 09-10138-MFW    Doc 14225-23    Filed 08/15/14    Page 13 of 19

American Cyanamid Co. v. Novopharm Ltd., 1972 CarswellNat 38
1972 CarswellNat 38, 1972 CarswellNat 38F, [1972] F.C. 739, 7 C.P.R. (2d) 61

disclose a cause of action, the matter will have been decided with only the expense and delay of an argument on the question of law in the Trial Division, of an appeal on the question of law to this Court and of an appeal on the question of law to the Supreme Court of Canada, and, if the matter is decided at the outset and the ultimate decision is that the pleadings do disclose a cause of action, that expense and delay will probably to a large extent have been thrown away. On the other hand, if the question of law is postponed until after trial and the ultimate decision is that the Statement of Claim does not disclose a cause of action, the parties will have been put to the very substantially greater expense of pleading, discovery, preparation for trial and trial of a patent infringement action — a matter that not infrequently runs into many, many thousands of dollars. On that consideration alone, as it seems to me, the balance of convenience in this case is in favour of a decision at the outset. The only consideration that, in my view, was urged against that conclusion with any weight was that a trial was necessary in order to find the relevant facts. I think, however, that it became clear during argument that, if there are any facts that require to be ascertained in order to decide the law to be applied, they should have been pleaded, and counsel for the appellant was not prepared to suggest any such facts that might be pleaded. Finally, any analogy with *Decorite Igav (Canada) Limited v. Ciba Corporation* where, earlier this year, this Court upheld a decision of the Trial Division that a similar question concerning section 57 be left until after trial breaks down when it is realized that, there, the patentee and licensee, with common representation in the matter, merely wished to bring the licensee into the patentee's infringement action, which would have to go to trial in any event, whereas here, the patentee and licensee are separately represented and show no signs of any possibility of cooperating on a joinder of actions or a common trial and the Court cannot impose either course on noncooperating plaintiffs.

50    My conclusion is that the appeal should be dismissed with costs.

51    As, however, the other members of the Court have reached the conclusion that the Statement of Claim does disclose a cause of action, consideration must be given to the third question, which I have framed earlier in these proceedings as follows:

> 3. Even if the action would otherwise be allowed to go to trial, is it defective for failure to comply with section 57(2) of the *Patent Act*, and, if so, what should the judgment be on this appeal?

52    I repeat section 57 of the *Patent Act* here for convenience.

> *57.* (1) Any person who infringes a patent is liable to the patentee and to all persons claiming under him for all damages sustained by the patentee or by any such person, by reason of such infringement.

> (2) Unless otherwise expressly provided, the patentee shall be or be made a party to any action for the recovery of such damages.

53    Counsel for appellant conceded that this Court was bound by the decision of the Supreme Court of Canada in *Electric Chain Company of Canada Ltd. v. Art Metal Works Inc. (supra)* to hold that the appellant is not the "patentee" within the meaning of that word as used in section 57 although he reserved his position on that point so that he will be in a position in the Supreme Court of Canada to argue that the appellant is the "patentee" and that the action as framed does comply with section 57(2).

54    I agree with the Associate Chief Justice that section 57(2) does not make a nullity *ab initio* of an action that has been commenced without complying with that provision and that, if failure to comply with that provision had been the only basis for the motion to strike out, the hearing of the motion might well have been adjourned, if the appellant so desired, to permit the appellant to apply to add the patentee as a party. However, there was the other ground on which the judgment of the Trial Division proceeded and, in this Court, the appeal from that judgment must be disposed of on the material that was before the Trial Division — no application having been made to this Court to receive further evidence under Rule 1102.

55    While, in my view, a failure to make the patentee a party as required by section 57 should not be made a ground for striking out the Statement of Claim without giving the plaintiff an opportunity to correct the defect, I am of the view that, once the question has been raised, a plaintiff should not be permitted to proceed with an action that does not comply with section 57.

56    If, therefore, I were of the view that the majority takes on the question whether the Statement of Claim discloses a cause of action, I should be of the view that the judgment appealed against should be set aside and that there should be a judgment

Case 09-10138-MFW    Doc 14225-23    Filed 08/15/14    Page 14 of 19

American Cyanamid Co. v. Novopharm Ltd., 1972 CarswellNat 38
1972 CarswellNat 38, 1972 CarswellNat 38F, [1972] F.C. 739, 7 C.P.R. (2d) 61

staying all proceedings in the action other than an application to add the patentee as a party until the final disposition of an application to make the patentee a party to the action results in the patentee becoming a party and providing that

> (a) upon the expiration of 30 days from this Court's judgment without any application having been made to make the patentee a party to the action, or

> (b) upon the final disposition of such an application without the patentee becoming a party to the action,

the action should stand dismissed with costs.

57     On the same assumption, I would be of the view that the judgment of this Court should provide that the appellant should, in any event, pay to the respondent the costs of the motion in the Trial Division and that the respondent should pay to the appellant one-half of the costs of the appeal to this Court. The latter opinion is based on the view that the appellant has three-quarters success on the appeal and the respondent has one-quarter success.

*Bastin D.J.*:

58     The Chief Justice in his reasons for judgment has explained the nature of this appeal so I shall confine myself to the ground upon which the action was dismissed in the court below. I believe the following quotation from the judgment gives the reasoning:

> The right of a licensee to sue is purely statutory and, in so far as the *Patent Act* is concerned, is contained in section 57(1) of the *Patent Act*. This section, in my view, is subject to a strict interpretation and should go no further than the words of the section will allow. It is not, in my view, sufficient to say that an infringer is liable to all persons claiming under a patentee in order to give a right of action. The person suing must also have a defined right to do so and he must be able to exercise this right against those persons infringing his right. Although there may be some basis for allowing an exclusive licensee to sue as a person claiming under the patentee, I fail to see how a non-exclusive licensee can do so. The latter, indeed, has no defined right. [Page 537.]

59     The issue in this appeal is whether a non-exclusive licensee has the right to sue an infringer to recover damages for loss attributable to the infringement. The answer depends on the interpretation given to section 57(1) of the *Patent Act*. The words of this section were introduced into the Act in 1935 following the decision of the Supreme Court of Canada in *Electric Chain Company of Canada Ltd. v. Art Metal Works Inc.*, [1933] S.C.R. 581. In this case the Supreme Court applied the principle enunciated in the case of *Heap v. Hartley* (1889) 42 Ch. D. 461. I quote from the judgment of Fry L.J. as follows:

> A licence may be, and often is, coupled with a grant, and that grant conveys an interest in property, but the licence pure and simple, and by itself, never conveys an interest in property. It only enables a person to do lawfully what he could not otherwise do, except unlawfully. I think, therefore, that an exclusive licensee has no title whatever to sue.

60     It is reasonable to assume that the amendment which is now embodied in section 57 was intended by Parliament to alter the law, and both the Supreme Court of Canada and the Privy Council held that such a change in the law had been effected, in the case of *Fiberglas Canada Ltd. v. Spun Rock Wools Ltd.* (1946-47) 6 Fox Pat. C. 39. That case related to an exclusive licensee, but in holding that an exclusive licensee had been given the right to claim damages from an infringer by the amendment to the Act neither the judges of the Supreme Court nor the member of the Privy Council who gave the Privy Council judgment made any distinction between an exclusive and a bare licensee. In my opinion this is very significant. It is also significant that the legislators when changing the law used such general and comprehensive words. It is a cardinal principle of interpretation that the ordinary and grammatical sense of the words be adhered to unless this would lead to manifest absurdity. Parliament could not have used words with a more comprehensive meaning than those found in this section:

> ... all persons claiming under him (the patentee) for all damages sustained ... by any such person, by reason of such infringement.

As the Associate Chief Justice stated in his judgment, "The right of a licensee to sue is purely statutory". It follows that the intention of parliament must be ascertained from the words of the statute. The Court is not justified in reading into the plain meaning of this section qualifications which Parliament could have expressly provided if that was the intention.

61     It cannot be argued that a non-exclusive licensee is not a person claiming under the patentee. Whether the permission he receives from the patentee is called a right, a privilege or a benefit, it is derived from the patentee and he is, therefore, a person claiming under the patentee. It remains to consider whether he can sustain damages by reason of such infringement. The ordinary meaning of damages is compensation for loss. Halsbury, 3rd ed., vol. 29, page 110 has this to say regarding damages for infringement.

> Where the plaintiff is a manufacturer, the ordinary measure of damages is the loss of the profit the plaintiff would have made had his sales not been diminished by the infringement; it is presumed, in the absence of evidence to the contrary, that sales by the infringer were taken from the plaintiff.

62     It can hardly be questioned that the diminution in the volume of his sales due to sales by an infringer can result in a loss to a non-exclusive licensee. It might be argued that Parliament never contemplated compelling an infringer to compensate a non-exclusive licensee for such *de facto* damages but intended to restrict damages for which an infringer is liable to those of a person whose rights were directly infringed by the particular act of infringement. On this reasoning, a bare licensee has merely permission to make use of the patent and, unless his freedom to exercise this permission is interfered with, he cannot complain. On the other hand, an exclusive licensee has been granted a monopoly and an infringement of the patent directly affects this legal right. This may appear a logical argument but the answer is that the right of any licensee to collect damages is purely statutory and, if Parliament had intended to distinguish between an exclusive and a non-exclusive license, it would have made this clear. Since parliament has made no such distinction, it follows that all licensees should be treated alike.

63     As the law now stands, the only qualification to enable a licensee to sue is actual loss attributable to the infringement. Damages are the gist of the action and these can only be determined in the trial. For the purpose of an application to strike out the statement of claim for want of a cause of action, the allegations in the statement of claim are assumed to be true. The plaintiff has alleged loss so it has set out a cause of action, but it has failed to particularize its loss as it should have done when its claim is confined to special damages. However, this is a defect which can be remedied by the giving of particulars.

64     Counsel suggested that to grant every bare licensee the right to collect damages from an infringer would result in a vast increase of litigation. However, all such claims with respect to a particular infringement would be similar so all claimants with respect to an infringement could be brought into one action or their damages could all be assessed in the one trial. In any case, this possibility must have been considered when Parliament in section 68 granted to a non-exclusive licensee, who derives his licence from the Commissioner of Patents, the right to institute proceedings against an infringer of the patent if the patentee neglected to act after being requested to do so.

65     I agree with the suggestion made by the Chief Justice as to the disposition of this appeal in the circumstances.

*Sweet D.J.*:

66     I have had the advantage of reading the reasons for judgment of my lord, the Chief Justice. In them he indicated relief sought, the nature of the application resulting in the order of The Honourable, The Associate Chief Justice appealed from, history of the proceedings to this point, and reviewed and analyzed relevant jurisprudence including *Heap v. Hartley*, (1889) [42 Ch. D. 461](), *Electric Chain Company of Canada, Ltd. v. Art Metal Works Inc.*, [[1933] S.C.R. 581](), and *Fiberglas Canada Ltd. v. Spun Rock Wools Ltd.*, [[1943] S.C.R. 547](); (1946-47) [6 Fox Pat. C. 39]().

67     The relevant licence agreement here contains, *inter alia*:

Case 09-10138-MFW    Doc 14225-23    Filed 08/15/14    Page 16 of 19

American Cyanamid Co. v. Novopharm Ltd., 1972 CarswellNat 38
1972 CarswellNat 38, 1972 CarswellNat 38F, [1972] F.C. 739, 7 C.P.R. (2d) 61

> BRISTOL hereby grants to CYANAMID a non-exclusive right and license, with the right to grant sublicenses, as hereinafter expressly set forth, under all valid Tetracycline product claims to manufacture, have manufactured for it, use and sell Tetracycline manufactured by Current Operations.

68    As between the parties to the licence agreement such a provision would, in itself, do nothing more than permit the licensee to do that which otherwise could not be done without violating the rights of the patentee. Moreover, it would appear from *Heap v. Hartley (supra)*, referred to in *Electric Chain Company of Canada, Ltd. v. Art Metal Works Inc. (supra)*, that, as the legislation was at the time those cases were decided, the only rights a licensee, as distinguished from an assignee, would have had would be whatever contractual rights he might have had against the licensor. He would have no rights against infringing third parties.

69    What is to be decided here is whether or not section 57(1) of the *Patent Act* has created a statutory right in a non-exclusive licensee to recover from an infringer of the patent for loss sustained by the non-exclusive licensee by reason of the infringement.

70    The creation, by statute, of rights and liabilities which did not previously exist requires clear and unequivocal wording.

71    Section 57(1) of the *Patent Act* is:

> *57.* (1) Any person who infringes a patent is liable to the patentee and to all persons claiming under him for all damages sustained by the patentee or by any such person, by reason of such infringement.

72    Respectfully, I agree in the result with the conclusion of The Honourable, the Chief Justice that a person who is a licensee under a patent is a person claiming under the patentee within the meaning of those words as used in section 57(1) of the *Patent Act*.

73    It is, I think, clear from *Fiberglas Canada Ltd. v. Spun Rock Wools Ltd. (supra)*, that both exclusive licensees and non-exclusive licensees are "persons claiming under" a patentee within the meaning of section 57(1).

74    One might add that the subsection refers to "all persons claiming under him". The word "all" must include every person who might claim under the patentee which would necessarily include every type or kind of licensee and whether exclusive or non-exclusive. No word could be more embracing, more inclusive than "all".

75    However, as my Lord says, that is not the end of the matter.

76    Although prior to the enactment of section 57(1) a non-exclusive licensee had no remedy against a person infringing the patent, it cannot be said that such a licensee was ever without any rights. By virtue of his licence he had the right, even though non-exclusively, to benefit in some way and to some extent in or from the patent. The infringer had no such right. He was and is a wrong-doer. There are circumstances when an infringer by his infringement, his wrongdoing, could cause the licensee to sustain damage. The infringement could reduce or even destroy benefits which were the licensee's by right because of his agreement with the patentee.

77    The extent to which the licensee may become legally entitled to use or benefit from the patent, or its subject-matter, is, of course, still governed by the terms of the licence. As between the patentee and the bare non-exclusive licensee there is no element of exclusivity. Nevertheless, by the very fact of the licensee having the licence and the infringer not having it, there is established an element of exclusivity as it relates to the licensee and the person infringing which remains until the patentee also licenses the infringer and so removes that exclusivity. The encroachment, by the person infringing, upon that exclusivity could seriously damage and cause loss to the licensee.

78    It would seem logical for Parliament to decide to correct the situation wherein the licensee, under such circumstances, had no protection from and no recourse against the infringer and, in enacting section 57(1) in its present form, to create, by statute, a right in the licensee against the infringer and to provide a means of enforcing that right. Certainly the change was not necessary for the protection of the patentee or the assignee of the patent. They were already protected.

79     An analysis of section 57(1) of the *Patent Act* reveals, I think, Parliament's intention to create such a right and to provide the accompanying remedy and that it has implemented that intention and accomplished its purpose. In this connection, the following are noted:

> 1. The expressed liability of the person who infringes both to the patentee and to all persons claiming under him is set out in the same subsection and in the same terms.
>
> 2. The words "any person who infringes a patent is liable to" relate both to the patentee and to persons claiming under him.
>
> 3. The words "for all damages sustained" relate both to the patentee and to persons claiming under him.
>
> 4. There is no differentiation between the liability of the infringer to the patentee and to persons claiming under him nor is there any differentiation between the nature of the rights the patentee and the persons claiming under him have against the person infringing.

80     It seems to me to be made manifest by the legislation that what the patentee is entitled to and what the persons claiming under him are entitled to are basically the same, namely, "all damages sustained" by them respectively by reason of the infringement. It would, of course, be inconceivable that the patentee with a valid patent would not be entitled, from the person who infringes, to damages in compensation for his loss by reason of the infringement. Having regard to the structure of section 57(1), I am of opinion that all persons claiming under the patentee, who would include non-exclusive licensees, now have the same basic right, as has the patentee, namely, to recover from the person who infringes, damages in compensation for their losses by reason of the infringement.

81     By virtue of section 57(1), the position of the non-exclusive licensee is advanced beyond whatever rights or benefits he might have *vis-à-vis* the patentee arising out of the contractual relationship between them. In my opinion the person infringing is now liable to a non-exclusive licensee for all damages he sustains by the infringement to the extent that it encroaches upon that element of exclusivity as between the licensee and the infringer previously mentioned.

82     The situation of a non-exclusive licensee may change from time to time because of the right of the patentee to grant other non-exclusive licences which might dilute and diminish the benefits of the licensee. Even then there would still be a right under the licence to the non-exclusive licensee which the infringer would not have unless he also became a licensee. Even if the infringer should later become a licensee there would still be the prior period to be considered. In any event, when dealing with a situation such as this, regard is to be had to the circumstances as they exist at the relevant time and not as they might possibly be sometime in the future.

83     I am of opinion that by section 57(1) Parliament, by apt and adequate wording, has accomplished and implemented an intention to create a right in a non-exclusive licensee to recover from a person who infringes a patent, in respect of any matter relevant to his licence, damages in compensation for the licensee's loss by reason of such infringement.

84     Accordingly in this context the statement of claim, in my opinion, discloses a cause of action and sets up a triable issue.

85     I agree with the views of the Honourable, the Chief Justice, as to the effect of section 57(2) of the *Patent Act*.

86     I am of the view that the judgment appealed from should be set aside and that, as the Honourable, the Chief Justice has indicated in his reasons for judgment his views would be in that event, there should be a judgment staying all proceedings in the action other than an application to add the patentee as a party until the final disposition of an application to make the patentee a party to the action results in the patentee becoming a party and providing that

> (a) upon the expiration of 30 days from this Court's judgment without any application having been made to make the patentee a party to the action, or
>
> (b) upon the final disposition of such an application without the patentee becoming a party to the action,

the action shall stand dismissed with costs.

87     In the event that the action be not dismissed with costs by reason of the foregoing I concur with the views of the Honourable, the Chief Justice, as to costs as set out in the last paragraph of his reasons for judgment.

Footnotes

1    No submission was made in this Court to support the motion to strike out in so far as it was based on the existence of the infringement action brought by Bristol-Myers, the patentee, against the respondent.

2    As the substantive rights involved arose prior to the coming into force of the Revised Statutes of Canada of 1970 on July 15, 1971, I refer to R.S.C. 1952, chapter 203, as amended. See section 9(2) of the *Revised Statutes of Canada Act*, chapter 48 of the Statutes of 1965.

3    In which classification, I am inclined to include in modern times an exclusive licence regardless of the wording used to create it. Formerly, I have no doubt, a distinction would have been made between a grant of an exclusive right to use and a grant of an exclusive licence. Having regard to the modern looseness in the use of words, this distinction is probably now unrealistic.

4    "If a man has a right, he must, it has been observed, 'have a means to vindicate and maintain it, and a remedy if he is injured in the exercise and enjoyment of it; and, indeed, it is a vain thing to imagine a right without a remedy, for want of right and want of remedy are reciprocal'." See Broom's "Legal Maxims", 8th ed. (1911) pages 153-54, quoting from the famous dictum of Holt, C.J. in *Ashby v. White*, 2 Ld. Raym. 953. According to Broom the maxim "*Ubi jus ibi remedium*" means that whenever the common law gives a right or prohibits an injury, it also gives a remedy. I should have thought that, similarly, where Parliament creates a right, there is a necessary implication that it is accompanied by a remedy.

5    It is trite law that, for purposes of *stare decisis*, the principles that are enunciated in a decision must be read in relation to the facts that were under consideration, for, if other facts not being considered had been brought to the court's attention, the statement of principles might have been modified to exclude them.

6    When the final Court of Appeal (i.e. the Supreme Court of Canada or, as it was at that time, the Privy Council) has, very deliberately and explicitly pronounced, in current times, upon a question of "general importance" concerning the interpretation of a Canadian statute, I do not consider that I, as a judge of a lower court, should take a contrary position because I do not agree with that pronouncement even though I am not, strictly speaking, bound to apply it. In my view, it cannot help but bring the administration of justice into disrepute if lower courts deliberately ignore declarations by the final court of appeal as to the effect of the statutory law. If there is room for reconsideration, that, I should have thought, is the task of the final court. It may be otherwise where passage of time may have made the pronouncement of the final court irrelevant by reasons of changed circumstances or where the *obiter dicta* relates to the principles of the common law.

7    As already indicated, a copy of the licence agreement is attached to the Statement of Claim and it shows that the licensee had no special rights in relation to user by other persons except a right, in certain circumstances, to be relieved of paying royalties to the patentee during a period when the patent was being infringed. See Article V of the licence agreement quoted, *supra*. While the facts upon which the plaintiff relies as showing damages sustained by it are not pleaded, as I understood counsel during argument, the appellant proposes to establish that it was damaged because it lost sales of the product covered by the patent as a result of the infringement. As I understand the arrangement between the plaintiff and the patentee, the plaintiff had no right to complain of such a loss of sales but only a right, in certain circumstances, to be relieved of paying to the patentee royalties on its own sales if there had been an infringement.

8    I am not overlooking that I have accepted it that even a non-exclusive licensee is a "person claiming under" the patentee and that, by virtue of the definition of "legal representatives" as revised since the *Electric Chain* case, a non-exclusive licensee now falls within the provision in section 48 that a patent "shall ... avail the grantee and his legal representatives". Having regard, however, to the Privy Council decision in the *Spun Rock* case, this must mean that it shall avail each person claiming under the patentee to the extent of the rights conferred on him by the patentee and it shall avail the patentee or other legal representatives to the extent of the patent rights that have not been parted with to such "claiming under" persons.

Two possibilities have suggested themselves to me where it would be at least arguable that an infringement would interfere with the rights of a non-exclusive licensee, *viz:* (a) where the patentee has agreed that he will not license any other licensee at less royalty than that payable by the licensee claiming damages, and (b) where the patentee has agreed to restrict production to a defined level by himself and licensees other than the licensee claiming damages and the infringer has carried production by persons other than the licensee claiming damages over that ceiling.

Case 09-10138-MFW    Doc 14225-23    Filed 08/15/14    Page 19 of 19

**American Cyanamid Co. v. Novopharm Ltd., 1972 CarswellNat 38**
1972 CarswellNat 38, 1972 CarswellNat 38F, [1972] F.C. 739, 7 C.P.R. (2d) 61

9   Where you have, as you apparently have here, a patentee whose practice is to grant licences, he will be entitled to recover from an infringer the amount of royalties he would have obtained if the infringer had taken a licence. (Canadian Patent Law by Fox, 4th Ed., page 496) Alternatively, he may elect to take the infringer's profits from the infringement on an assumed waiver of the infringement (*idem* pages 503 *et seq.*). In the case of an exclusive licence neither of these remedies would be compatible with the exclusive licence, but a non-exclusive licence would be no bar to them. Nevertheless, if the appellant's view is right, in addition to the full relief for the infringement to which the patentee is entitled, each non-exclusive licensee can bring an action for any amount that he lost by reason of the fact that this new competitor came into the market. There would seem to be some duplication of liability for such an infringement on such a view of the law.

**End of Document**          Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.