# TAB 37

1980 CarswellOnt 404
Ontario Supreme Court [Master's Chambers]

Canadian Bronze Co. v. Shrum

1980 CarswellOnt 404, 17 C.P.C. 241, 4 A.C.W.S. (2d) 95

# **Canadian Bronze Company Ltd. v. Shrum et al.**

Master Sandler

Judgment: July 8, 1980
Docket: Ottawa-Carleton No. 4522/78

Counsel: *R.S. Jolliffe*, for plaintiff.
*J.A. Kazanjian*, for applicants-defendants.

Subject: Civil Practice and Procedure

**Related Abridgment Classifications**

For all relevant Canadian Abridgment Classifications refer to highest level of case via History.

**Headnote**

**Practice --- Service of originating process — Service ex juris of originating process — Grounds — Contract connected to jurisdiction**

Writs — Service ex juris — Application to set aside service of notice of writ action to determine foreign patent interests — Ont. Rr. 25 and 29.

The plaintiff's action was essentially against his former employee S, and a related company for a declaration that certain foreign patent interests obtained in the United States, and the United Kingdom, West Germany and Japan on an invention allegedly belonging to the plaintiff were held in trust for the benefit of the plaintiff. The plaintiff sought injunctive, mandatory and declaratory relief related to the patent interests as well as an accounting.

As against two foreign defendants (a Swiss and a United States company), it was alleged by the plaintiff that S assigned the Canadian and American patent interests to the United States company and further assigned the United Kingdom, West German and Japanese patent interests to the Swiss company. It was alleged that the foreign defendants held the patent interests in trust for the plaintiffs. The plaintiffs claimed appropriate declaratory, mandatory, injunctive, accounting and damage relief against the two foreign companies. The Swiss and the United States companies moved to set aside the service of the notice of the writ on the basis that the statement of claim did not comply with any of the heads of Rule 25.

**Held:**

The application should be granted. An order should go setting aside the service of the notice of writ as against the Swiss and the United States companies.

The plaintiff sought to support service out of the jurisdiction under a number of heads of R. 25 but was unsuccessful for the following reasons:

WestlawNext. CANADA  Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.    1

(a) Rule 25(1)(*b*) — the Master held that this rule did not apply to assist the plaintiff because the foreign patent interests were not personal property situate in Ontario. The situs of patents is "the country where they can be effectively transferred under the law governing their creation." There being nothing before the Master to show whether these patents could effectively be transferred as was done in this case (that is, by agreement), he held that the statement of claim in this action did not set forth a claim or claims in respect of personal property situate in Ontario.

(b) Rule 25(1)(*f*) — the Master held that this rule did not assist the plaintiff because there was no contract between the plaintiff and either of the foreign defendants.

(c) Rule 25(1)(*g*) and (*h*) — the Master held that these two provisions did not assist the plaintiff because there was no tort of conversion claimed by the plaintiff in the statement of claim. The claim was for infringement of a proprietory interest or for a declaration of an implied constructive trust.

(d) Rule 25(1)(*i*) — the Master held that this provision did not assist the plaintiff because relief by way of injunction in order to comply with this provision must be in Ontario. The injunctive relief claim in this action was also requested in relation to United Kingdom, Japanese, United States and West German patent interests and therefore could not be held to involve an injunction for things done or to be done in Ontario.

(e) Rule 25(1)(*o*) — the Master held that this provision did not assist the plaintiff because it could not be shown that the foreign defendants were "necessary or proper parties" in the action against S and his related company. The American foreign defendant, which took an interest in the Canadian patent, might be a necessary or proper party in an action against S and his related company, but service ex juris cannot be maintained unless all of the claims in the statement of claim against the foreign party fall under R. 25(1). The claims against the American company were not all under R. 25(1) and as a result the plaintiff could not support service out of the jurisdiction under R. 25(1)(*o*).

## Annotation

See Holmested & Gale, R. 25 and Power's Western Practice Digest (3rd ed.), p. 982.

## Table of Authorities

**Cases considered:**

*Br. Nylon Spinners Ltd. v. Imperial Chemicals Indust. Ltd.*, [1953] Ch. 19, [1952] 2 All E.R. 780 (C.A.) — *considered*

*Duke v. Andler*, [1932] S.C.R. 734, [1932] 4 D.L.R. 529 — *considered*

*Lloyd's Bank Ltd. v. Chartered Bank of India etc.*, [1929] 1 K.B. 40 (C.A.) — *followed*

*Mackay v. Colonial Invt. & Loan Co.* (1902), 4 O.L.R. 571 (Div. Ct.) — *distinguished*

*Marshall v. Marshall* (1888), 38 Ch. D. 330 (C.A.) — *considered*

*Packard Instrument Co. v. Beckman Instruments Inc.* (1972), 22 C.P.R. (2d) 148 — *considered*

*Richmond & Co. v. Wrightson* (1904), 22 R.P.C. 25 — *considered*

*Tridon Ltd. v. Otto Bihlier KG* (1979), 21 O.R. (2d) 569, 8 C.P.C. 19, 90 D.L.R. (3d) 733 (H.C.) — *referred to*

**Rules considered:**

Ont. Rr. 25(1) [re-en. O. Reg. 106/75, s. 4], 29 [re-en. O. Reg. 106/75, s. 8].

**Authorities considered:**

Dicey and Morris, The Conflict of Laws (9th ed. 1973), p. 512. Fleming, The Law of Torts (4th ed. 1971), p. 51.

Motion to set aside service of notice of writ.

*Master Sandler*:

1      This is an application by two of the defendants in this action, Concast AG and Concast Inc. for certain relief as set out in the notice of motion, the most significant of which is for an order setting aside service of a notice of writ of summons on each of these defendants who were both served out of Ontario.

2      This action emerges out of an employer-employee relationship between the plaintiff and the defendant L.R. Shrum. Shrum worked for the plaintiff from August of 1971 to January of 1974 and during that time was working on a new development related to continuous casting moulds. The plaintiff, alleges that while Shrum was still working for the plaintiff, he secretly filed an application for a patent for this new technique, in the United Kingdom, on November 6, 1973. Also in November, 1973, Shrum gave two months notice of his intention to resign. After his resignation, Shrum filed applications for patents for the invention in Canada (October 11, 1974), and in the U.S. (October 15, 1974), and in due course specific patents were issued to Shrum in Canada, in the United Kingdom and in the U.S. Shrum also about this time incorporated L.R. Shrum Inc. These two defendants then started making and selling moulds using this patented invention.

3      The plaintiff started this action in 1978 alleging that Shrum breached his duty of confidence and fiduciary duty and seeks in this action the following relief: (a) a declaration that the plaintiff is the true and sole beneficial owner of the invention and of all letters patent and reissue letters patent which have been or may be granted in respect thereof, including the Canadian patent, the British patent, the U.S. patent, and certain U.S., West German and Japanese patent applications; (b) an order requiring that Shrum execute assignments to the plaintiff of all his rights in the said patents and reissue patents and patent applications; (c) injunctive relief against Shrum; and (d) certain other declaratory relief and an accounting and general damages.

4      The writ was issued in June of 1978, and the writ and statement of claim were served shortly thereafter. The defendants Shrum and Shrum Inc. (the only defendants originally) entered an appearance in July of 1978. The statement of defence of the said defendants was delivered in September of 1978, and the plaintiffs reply and joinder of issue were delivered in October of 1978.

5      In June of 1979, the local Master at Ottawa, on the plaintiff's application, made an order adding Concast AG, Concast Incorporated, and Concast Canada Limited as defendants. Concast Canada Limited appeared in August of 1979. The amended statement of claim indicates that Concast AG is a Swiss company, that Concast Inc. is a U.S. company, and that Concast Canada Limited is a Canadian company with its head office in Montreal, and is alleged to be the agent for Concast AG and Concast Incorporated.

6      The amended statement of claim alleges that by an agreement of November 9, 1977, Shrum assigned to Concast AG all rights in the said patents and patent applications, and granted to Concast AG a licence concerning the invention. The pleading further alleges that Shrum actually assigned the Canadian patent, and the U.S. patent, and the U.S. patent application for re-issue of the U.S. patent, to Concast Inc. It further alleges that Shrum actually assigned the United Kingdom patent, and the

West German and Japanese patent applications, to Concast AG. The plaintiff alleges that the legal title held by Concast AG and Concast Inc. to the said patents or patent applications or inventions, is held in trust for the plaintiff.

7      The plaintiff seeks the following relief as against Concast AG and Concast Inc: (a) a declaration that the plaintiff is the true owner of the invention, and all letters patent and re-issue patents and patent applications, including the U.S., Canadian and U.K. patents, and the U.S., West German and Japanese patent applications; (b) an order requiring that Concast AG execute valid assignments to the plaintiff of all their interest and rights in connection with the U.K. patent and the West German and Japanese patent applications; (c) an order requiring that Concast Inc. execute valid assignments to the plaintiff of all their interest and rights in connection with the Canadian and U.S. patents, and the U.S. patent applications; (d) a declaration by the Court that all existing agreements and licences made by Shrum or Concast AG, with respect to the said invention and the said patents and patent applications, are invalid and void; (e) an injunction restraining Shrum or any person having knowledge of the injunction from using the trade secret or confidential information which had been disclosed or invested in Shrum during his employment with the plaintiff (which would include Concast AG and Concast Inc.); (f) an injunction enjoining and restraining Concast AG and Concast Incorporated from disclosing or utilizing the trade secrets and confidential information of the plaintiff, and from making any further use of or working the new mould forming technique described and claimed in the Canadian patent and the other patents and patent applications, regarding the said invention; (g) an accounting from the defendants, and an order for payment of the avails and profits in connection with the use of the invention.

8      Shrum and Shrum Inc. delivered their amended statement of defence to the amended statement of claim in September of 1979.

9      In due course, the notice of the amended writ of summons and the statement of claim were served on the defendant Concast AG in Switzerland, and on Concast Inc. in the U.S. As I have said, Concast Canada Ltd., although served in Montreal, Quebec, entered an appearance.

10      Concast AG and Concast Inc. now apply under R. 29 [re-en. O. Reg. 106/75, s. 8] to set aside the notice for service out of Ontario served on them ex-juris, or in the alternative, for leave to file a conditional appearance.

11      The notice for service out of Ontario indicates that the plaintiff relies on R. 25(1)(*b*), (*f*), (*g*), (*h*), (*i*), and (*o*) [re-en. O. Reg. 106/75, s. 4] as authorizing service ex-juris on these two defendants. The arguments surrounding sub-rules (*b*); (*g*) and (*h*); and (*o*) are the most significant ones. Rule 25(1)(*f*), relating to a "contract", cannot apply as there is no contract between the plaintiff and either of the applicants. Rule 25(1)(*i*) relating to an "injunction" for things done or to be done *in Ontario* cannot apply since relief is also requested in relation to the United Kingdom and United States patents and the Japanese and West German patent applications. Therefore, the plaintiff must rely either on Rule 25(1)(*b*); or (*g*) and (*h*); or (*o*).

12      The applicants argue that whatever it is that is alleged against them, it is not a tort commited either within "Ontario" or "elsewhere". The plaintiff argues that para. 30 of the statement of claim, since it alleges that Shrum has improperly disclosed and made available to Concast AG and Concast Inc. the confidential information and trade secrets of the plaintiff which all the defendants have made use of, alleges the tort of conversion.

13      Having read the definition of "Conversion" in Fleming, Law of Torts (4th ed., 1971), at p. 51, and the case of *Lloyds Bank Ltd. v. Chartered Bank of India etc.*, [1929] 1 K.B. 40 at pp. 55-56 (C.A.), and notwithstanding the allegations in paras. 10 and 30 of the amended statement of claim, I hold that the plaintiff is not here alleging, nor could it allege, the tort of conversion against the defendants Concast AG or Concast Inc. The claim against these defendants may involve the infringement of some proprietary interest, or may result in the imputation of an implied or constructive trust, but it does not involve the tort of conversion or any other tort, and thus R. 25(1)(*g*) or (*h*) cannot be used to justify service ex juris.

14      As to the argument that the action consists of a claim for or in respect of personal property situate within Ontario and thus falls within 25(1)(*b*), the question immediately arises as to the situs of these patents. Dicey and Morris, Conflict of Laws, 9th ed., 1973, p. 512, indicates that patents are situate "in the country where they can be effectively transferred *under the law governing their creation*". (The italics are mine) Clearly, the law governing the creation of the U.K. patent is English law,

the law governing the creation of the Japanese patent application is Japanese law, and so on. There is nothing before me to show whether the law of Japan, West Germany, the United Kingdom or the United States allows these patents to be effectively transferred by an agreement of the type between Shrum and Concast AG of November 9th, 1977, referred to in para. 27 of the amended statement of claim, or by the type of assignments referred to in paras. 28 and 29 of the amended statement of claim.

15     Further, in *Br. Nylon Spinners Ltd. v. Imperial Chemicals Indust. Ltd.*, [1953] Ch. 19 at p. 26, [1952] 2 All E.R. 780 (C.A.), a case cited both in footnote 94 on p. 512 of Dicey and Morris, supra, and in *Packard Instrument Co. v. Beckman Instruments Inc.* (1972), 22 C.P.R. (2d) 148, (a case cited to me in argument by the applicants) the following statement of Evershed M.R. appears:

> ... An English patent is a species of English property of the nature of a chose in action and peculiar in character. By English law it confers certain monopoly rights, exercisable in England, on its proprietor. A person who has an enforceable right to a licence under an English patent appears therefore to have at least some kind of proprietary interest which it is the duty of our courts to protect. And, certainly so far as the English patents are concerned, it seems to me, with all deference to his Honour's judgment, to be an assertion of an extraterritorial jurisdiction which we do not recognize for the American courts to make orders which would destroy or qualify those statutory rights belonging to an English national who is not subject to the jurisdiction of the American courts.

16     Keeping this quotation in mind, I have considered paras. 32(a); 32(b)(i); 32(b)(ii); 32(c); 32(d) especially; and 32(f) of the prayer for relief in the amended statement of claim. I have also considered the cases *of Marshall v. Marshall* (1888), 38 Ch. D. 330 (C.A.) and *Duke v. Andler*, [1932] S.C.R. 734, [1932] 4 D.L.R. 529. I do note that *Duke v. Andler* stands only for the proposition that a judgment of a foreign Court on a question of title and ownership of real property situate in a province of Canada is not to be recognized as final and to be enforced by the Courts of such province, I also note that the *Br. Nylon Spinners* case and the *Duke v. Andler* case are cases involving recognition of foreign judgments rather than permission to allow service ex juris. On the other hand, the *Marshall* and the *Packard Instrument* cases are ones involving the issue of assuming jurisdiction and allowing service ex juris to be used.

17     Counsel for the plaintiff stresses that this action does not bring into issue the validity of any patents, either Canadian or foreign, but rather the issue of the beneficial ownership of and the right to use such patents, and the alleged wrongful taking and using of confidential information belonging to the plaintiff by Shrum in 1973 and 1974.

18     The plaintiff cites *Richmond & Co. v. Wrightson* (1904), 22 R.P.C. 25. That was a case solely as between (as it turned out) the dishonest employee, Wrightson and his employer, and his employer's customer, the plaintiff Richmond and Co. Ltd. and involved no foreign party. Clearly, the plaintiff in the present action could obtain at trial (if otherwise entitled) similar relief as against Shrum and Shrum Inc. declaring them to be trustees for the plaintiff of the English and foreign patents. That was all that was asked for in that case, but on the other hand, a very much broader relief is sought by the plaintiffs in the case before me, even as against only Shrum and Shrum Inc. — see paras. 32(a); b(iii); (c); (e); (f); and (g) of the amended statement of claim.

19     The plaintiff also cites *Packard Instrument Co. v. Beckman Instruments Inc.* (1972), 22 C.P.R. (2d) 148 but that judgment was dealing with an action to determine the *validity* of foreign patents rather than the *ownership* of foreign patents. In that case, a U.S. court declined to exercise jurisdiction to determine the issue of the *validity* of a Canadian patent. Evershed M.R. in *Br. Nylon Spinners v. Imperial Chemicals Indust.*, supra, went even further in holding that foreign Courts should not make orders destroying or qualifying the statutory proprietary interests and rights of an English patentee or licensee.

20     I am far from satisfied on the material before me that this action, as it relates to Concast Inc. and Concast AG, "*consists of a claim or claims ... for, or in respect of, personal property situate within Ontario ...*" within R. 25(1)(*b*).

21     As to Concast AG and Concast Inc. being "necessary" or "proper" parties to the action brought against Shrum and Shrum Inc., I do not think that either of them are either "necessary" or "proper" to that action within the criterion discussed in Holmested & Gale, Ontario Judicature Act and Rules, vol. 1, pp. 720-721, §§71-72. This action is entirely different from the type of action in *MacKay v. Colonial Invt. & Loan Co.*, (1902) 4 O.L.R. 571 (Div. Ct.). It must be remembered that Concast Inc.

is the licensee of the Canadian patent and it may well be that Concast Inc. is a necessary or proper party to any action brought against Shrum and Shrum Inc. vis-à-vis the Canadian patent but, because of *Tridon Ltd. v. Otto Bihlier KG* (1979), 21 O.R. (2d) 569, 8 C.P.C. 19, 90 D.L.R. (3d) 733 (H.C.) which holds that service ex juris cannot be maintained unless all the claims set forth in the endorsement to the writ and in the statement of claim fall within the provisions of R. 25(*l*), the present action would have to be amended considerably so that the claims against Concast Inc. fall within the principle of that case.

22     Accordingly, I grant an order setting aside the service of the notice of writ on the defendants Concast AG and Concast Incorporated. The applicants will be entitled to their costs forthwith after taxation.

*Application allowed.*

**End of Document**   Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.

WestlawNext® CANADA  Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.    6