TAB 40

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

1996 CarswellOnt 3227
Ontario Court of Appeal

Canadian Newspapers Co. v. Kansa General Insurance Co.

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No.
3054, 30 O.R. (3d) 257, 65 A.C.W.S. (3d) 488, 93 O.A.C. 26

**Canadian Newspapers Company Limited (plaintiff / respondent) and Kansa
General Insurance Company Ltd., Kansa Insurance Management Inc. and
Jevco Insurance Management Inc. (defendants / appellants); Canadian
Newspapers Company Limited (plaintiff) and Kansa General Insurance Company
Ltd., Kansa Insurance Management Inc. and Jevco Insurance Management
Inc. (defendants / appellants) and Tory, Tory, DesLauriers & Binnington,
Marsh & McLennan Limited and Paul Bennett (third parties / respondents)**

McKinlay, Doherty and Weiler JJ.A.

Heard: January 31, 1996
Judgment: September 11, 1996
Docket: CA C10326, C10333

Counsel: *W.R. McMurtry, Q.C.*, and *Jess C. Bush*, for appellants.
*G.W. Hately, Q.C.*, and *Mary Jane Stitt*, for respondent Canadian Newspapers Company Limited.
*Claude R. Thomson, Q.C.*, and *Jeffrey S. Leon*, for third party respondents Tory, Tory, DesLauriers & Binnington.
*Harvey Poss, Q.C.*, for third party respondents Marsh & McLennan Limited and Paul Bennett.

Subject: Insurance; Contracts; Civil Practice and Procedure

### Related Abridgment Classifications

For all relevant Canadian Abridgment Classifications refer to highest level of case via History.

### Headnote

**Insurance --- Contract of indemnity — Subrogation — Defences to subrogated action — Miscellaneous defences**

**Insurance --- Actions on policies — Relief against forfeiture**

Insurance — Contract of indemnity — Subrogation — Defences to subrogated action — Miscellaneous defences —
Insurance policy requiring newspaper to co-operate with insurer — Newspaper having to advise insurer of significant
developments in litigation — Plaintiff bringing action against newspaper — Newspaper sending insurer first reporting letter
during trial — Newspaper not advising insurer of latest offer to settle — Plaintiff's action being allowed — Insurer refusing
to indemnify newspaper — Newspaper bringing action against insurer — Trial judge allowing action and newspaper
appealing — Newspaper breaching co-operation clause — Newspaper's non-disclosure also infringing insurer's right to
defend action — Insurer not being required to indemnify plaintiff — Appeal allowed.

Insurance — Actions on policies — Relief against forfeiture — Insurance policy requiring newspaper to co-operate with
insurer — Newspaper having to advise insurer of significant developments in litigation — Plaintiff bringing action against
newspaper — Newspaper sending insurer first reporting letter during trial — Newspaper not advising insurer of latest offer
to settle — Plaintiff's action being allowed — Insurer refusing to indemnify newspaper — Newspaper bringing action

WestlawNext® CANADA  Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

against insurer — Trial judge allowing action and newspaper appealing — Newspaper breaching co-operation clause — Newspaper's non-disclosure infringing insurer's right to defend action — Newspaper's breach being substantial breach — Newspaper not being entitled to claim relief from forfeiture — Appeal allowed.

A newspaper entered into a corporate insurance policy with the insurer. The policy provided that the newspaper would co-operate with the insurer. The policy stated that if the newspaper refused to consent to any settlement recommended by the insurer, the insurer's liability for the claim would not exceed the amount for which the claim could have been settled for, plus the costs incurred up to the date of the newspaper's refusal. The policy further provided that the insurer was not required to indemnify the newspaper where the newspaper breached the policy. Notices of libel were to be handled in the first instance by D, the newspaper's in-house counsel. Both parties agreed that a law firm would be retained to defend any lawsuits for libel. The insurer would reimburse the newspaper for the legal fees. The trial judge found that the insurer had agreed that D would handle the day-to-day litigation, but would keep the insurer advised of all significant developments in the litigation through the broker. The plaintiff subsequently brought an action against the newspaper for libel. The plaintiff offered to settle in June of 1983. D advised the broker of the offer, and it was refused. Between December 1985 and September 1986, the plaintiff was examined for discovery. The plaintiff offered to settle, the pre-trial was held, and 300 hours were spent by the law firm in preparation for trial. The insurer was not advised of the developments. The first major account for legal fees was sent at the commencement of the trial. It did not provide the information required to assess the risk of continuing the litigation, and did not convey the last settlement offer. At the end of the first week of the trial, D sent his first reporting letter to the broker. The letter advised the insurer of the issues at trial for the first time. It did not refer to the most recent offer to settle. The trial judge ultimately allowed the plaintiff's action. The insurer refused to indemnify the newspaper, and the newspaper brought an action against the insurer. The insurer counterclaimed for the legal fees it had paid during the course of the litigation. The trial judge allowed the newspaper's action, and dismissed the insurer's counterclaim. The insurer appealed.

**Held:**

The appeal was allowed.

The trial judge did not give effect to the general duty of co-operation contained in the policy, or interpret that general duty in the context of the reporting arrangement and the settlement clause. The duty of co-operation required the newspaper to provide sufficient information to the insurer regarding developments in the litigation, to enable the insurer to decide whether its risk had increased such that it wished to invoke the settlement clause. The newspaper did not convey material information to the insurer which amounted to a breach of the co-operation clause. The omissions were not excused on the basis that statements of account had been provided to the insurer, or that prior offers to settle that had been conveyed to the insurer had been turned down. The insurer's lack of inquiry did not excuse the newspaper from fulfilling its duty to report significant developments in the litigation to the insurer. The newspaper's non-disclosure also infringed the insurer's right to defend the action. The insurer was prevented from making an informed decision as to whether or not to settle the action or to invoke the settlement clause instead of proceeding to trial. The insurer did not expressly and unequivocally waive the breach of the policy, and it was not estopped from relying on the breaches. The insurer should not be required to indemnify the newspaper under the policy. The insurer should not have been held liable to pay legal fees with respect to work done after the final settlement offer was made. Legal fees paid with respect to work done after that time should be returned.

The newspaper's breach was a substantial breach of the policy, and, accordingly, the newspaper was not entitled to claim relief from forfeiture. The effect of the newspaper's breach was to deprive the insurer of the opportunity to settle the litigation, and to control the defence of the action. The newspaper did not establish that the insurer would not have acted differently.

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

**Table of Authorities**

**Cases considered:**

*Banque Keyser Ullmann S.A. v. Skandia (U.K.) Insurance Co.*, [1990] 3 W.L.R. 364 (H.L.) — *considered*

*Canadian Equipment Sales & Service Co. v. Continental Insurance Co.*, [1975] I.L.R. 1-680, 9 O.R. (2d) 7, 59 D.L.R. (3d) 333 (Ont. C.A.), reversing 5 O.R. (2d) 220, [1975] I.L.R. 1-663, 50 D.L.R. (3d) 30 (H.C.) — *considered*

*Canadian Indemnity Co. v. Andrews & George Co* (1952), [1953] 1 S.C.R. 19, [1952] 4 D.L.R. 690, [1952] I.L.R. 1-089 — *referred to*

*Canadian Indemnity Co. v. Canadian Johns-Manville Co.*, [1990] I.L.R. 1-2650, [1990] 2 S.C.R. 549, 72 D.L.R. (4th) 478, 115 N.R. 161, 50 B.L.R. 1, 33 Q.A.C. 161, 50 C.C.L.I. 95, [1990] R.R.A. 1038 (headnote only) — *considered*

*Chablis Textiles Inc. (Syndic de) c. London Life Insurance Co.* (1996), 34 C.C.L.I. (2d) 1, [1996] R.R.A. 1, *(sub nom. Goldstein v. London Life Insurance Co.)* 192 N.R. 241, *(sub nom. Chablis Textiles Inc. (Trustee of) v. London Life Insurance Co.)* 132 D.L.R. (4th) 15, [1996] I.L.R. 1-3283, [1996] 1 S.C.R. 160 — *referred to*

*Consolidated-Bathurst Export Ltd. v. Mutual Boiler & Machinery Insurance Co.*, [1980] 1 S.C.R. 888 — *referred to*

*Crisci v. Security Insurance Co. of New Haven*, 426 P.2d 173, 58 Cal. Rptr. 13 (U.S. 1967) — *referred to*

*D.S. Ashe Trucking Ltd. v. Dominion Insurance Corp.* (1966), 55 W.W.R. 321, 56 D.L.R. (2d) 730 (B.C. C.A.) — *considered*

*Elance Steel Fabricating Co. v. Falk Brothers Industries Ltd.* (1989), 35 C.L.R. 225, 39 C.C.L.I. 161, 99 N.R. 228, 80 Sask. R. 22, *(sub nom. Falk Brothers Industries Ltd. v. Elance Steel Fabricating Co.)* [1989] 2 S.C.R. 778, [1989] I.L.R. 1-2506, [1990] 1 W.W.R. 29, 62 D.L.R. (4th) 236, [1989] R.R.A. 1029 (headnote only) — *considered*

*Findlay v. Madill* (1979), 28 O.R. (2d) 673, [1980] I.L.R. 1-1181, 111 D.L.R. (3d) 180 (H.C.) — *referred to*

*Fletcher v. Manitoba Public Insurance Corp.* (1990), 5 C.C.L.T. (2d) 1, 1 C.C.L.I. (2d) 1, 30 M.V.R. (2d) 260, 71 Man. R. (2d) 81, [1990] 3 S.C.R. 191, *(sub nom. Fletcher v. Manitoba Public Insurance Co.)* [1990] I.L.R. 1-2672, 74 D.L.R. (4th) 636, 116 N.R. 1, 44 O.A.C. 81, 75 O.R. (2d) 373 (note), *(sub nom. Fletcher c. Manitoba Public Insurance Co.)* [1990] R.R.A. 1053 (headnote only) — *considered*

*Gallen v. Allstate Grain Co* (1984), 25 B.L.R. 314, *(sub nom. Gallen v. Butterley)* 53 B.C.L.R. 38, 9 D.L.R. (4th) 496 (C.A.), leave to appeal to S.C.C. refused (1984), *(sub nom. Allstate Grain Co. v. Guichon)* 56 N.R. 233 (S.C.C.) — *referred to*

*Gruenberg v. Aetna Insurance Co.*, 108 Cal. Rptr. 480 (U.S. 1973) — *referred to*

*Hawrish v. Bank of Montreal*, [1969] S.C.R. 515, 66 W.W.R. 673, 2 D.L.R. (3d) 600 — *referred to*

*Hillis Oil & Sales Ltd. v. Wynn's Canada Ltd.*, [1986] 1 S.C.R. 57, 65 N.R. 23, 71 N.S.R. (2d) 353, 171 A.P.R. 353, 25 D.L.R. (4th) 649 (S.C.C.) — *referred to*

Case 09-10138-MFW    Doc 14225-40    Filed 08/15/14    Page 5 of 22

Canadian Newspapers Co. v. Kansa General Insurance Co., 1996 CarswellOnt 3227

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

*Hollis v. Birch* (1995), [1996] 2 W.W.R. 77, 14 B.C.L.R. (3d) 1, 27 C.C.L.T. (2d) 1, *(sub nom. Hollis v. Dow Corning Corp.)* 129 D.L.R. (4th) 609, 190 N.R. 241, 67 B.C.A.C. 1, 111 W.A.C. 1, [1995] 4 S.C.R. 634 — *referred to*

*Mallett v. Lumbermen's Mutual Casualty Co*, [1928] 3 D.L.R. 150 (Ont. C.A.) — *applied*

*Maracle v. Travellers Indemnity Co. of Canada*, [1991] I.L.R. 1-2728, 125 N.R. 294, 3 O.R. (3d) 510 (note), 80 D.L.R. (4th) 652, 3 C.C.L.I. (2d) 186, 50 C.P.C. (2d) 213, 47 O.A.C. 333, *(sub nom. Travellers Indemnity Co. of Canada v. Maracle)* [1991] 2 S.C.R. 50 — *considered*

*McNish & McNish v. American Home Assurance Co.*, [1989] I.L.R. 1-2434, 39 C.C.L.I. 200, 68 O.R. (2d) 365 (H.C.), affirmed (1991), 5 C.C.L.I. (2d) 222 (Ont. C.A.) — *applied*

*Minto Construction Ltd. v. Gerling Global General Insurance Co.* (1978), 19 O.R. (2d) 617, [1978] I.L.R. 1-989, 86 D.L.R. (3d) 147 (C.A.) — *considered*

*Montreal Trust Co. of Canada v. Birmingham Lodge Ltd.* (1995), 46 R.P.R. (2d) 153, 125 D.L.R. (4th) 193, 24 O.R. (3d) 97, 82 O.A.C. 25, 21 B.L.R. (2d) 165 (C.A.) — *applied*

*Northern Life Assurance Co. of Canada v. Reierson*, [1977] 1 S.C.R. 390, [1976] 3 W.W.R. 275, *(sub nom. Reierson v. Northern Life Assurance Co. of Canada)* [1976] I.L.R. 1-749, 8 N.R. 351, 67 D.L.R. (3d) 193 — *applied*

*Pelky v. Hudson Bay Insurance Co* (1981), 35 O.R. (2d) 97, [1982] I.L.R. 1-1493 (H.C.) — *referred to*

*Rainbow Industrial Caterers Ltd. v. Canadian National Railway Co.* (1991), 8 C.C.L.T. (2d) 225, 59 B.C.L.R. (2d) 129, [1991] 6 W.W.R. 385, 84 D.L.R. (4th) 291, 126 N.R. 354, 3 B.C.A.C. 1, 7 W.A.C. 1, [1991] 3 S.C.R. 3, (sub nom. *Cie des chemins de fer nationaux du Canada c. Rainbow Industrial Caterers Ltd.*), [1991] R.R.A. 850 — *referred to*

*Redgrave v. Hurd* (1881), 20 Ch. D. 1 (C.A.) — *referred to*

*Saskatchewan River Bungalows Ltd. v. Maritime Life Assurance Co.*, [1994] 7 W.W.R. 37, 20 Alta. L.R. (3d) 296, 23 C.C.L.I. (2d) 161, [1994] 2 S.C.R. 490, 168 N.R. 381, 115 D.L.R. (4th) 478, 155 A.R. 321, 73 W.A.C. 321, *(sub nom. Maritime Life Assurance Co. v. Saskatchewan River Bungalows Ltd.)* [1994] I.L.R. 1-3077 — *referred to*

*Saskatchewan Trust Co. v. Hawrish* (1993), [1994] 4 W.W.R. 225, 118 Sask. R. 41 (Q.B.), [affirmed (February 21, 1995), Cameron, Lane and Jackson JJ.A. (Sask. C.A.) [unreported], leave to appeal to S.C.C. refused [1996] 2 W.W.R. lxxx (note) (S.C.C.)] — *considered*

*Schwartz v. Canada*, [1996] 1 S.C.R. 254 — *considered*

*Teskey v. Canadian Newspapers Co.* (1989), 68 O.R. (2d) 737, 59 D.L.R. (4th) 709, 33 O.A.C. 383, leave to appeal to S.C.C. refused (1990), 37 O.A.C. 396 (note) (S.C.C.) — *referred to*

*Travellers Indemnity Co. v. Sumner*, [1961] I.L.R. 1-037, 27 D.L.R. (2d) 562, 45 M.P.R. 332 (N.B. C.A.) — *applied*

*Zippy Print Enterprises Ltd. v. Pawliuk* (1994), 100 B.C.L.R. (2d) 55, [1995] 3 W.W.R. 324, 20 B.L.R. (2d) 170 (C.A.) — *applied*

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

**Statutes considered:**

Insurance Act, R.S.O. 1980, c. 218

s. 106 *considered*

Insurance Act, The, R.S.S. 1978, c. S-26

generally *referred to*

Libel and Slander Act, R.S.O. 1980, c. 237

s. 5(2) *referred to*

APPEAL by insurer from judgment reported at [1991] I.L.R. 1-2751 (Ont. Gen. Div.), allowing action based on insurance policy and dismissing counterclaim.

**The judgment of the court was delivered by *Weiler J.A.*:**

**Overview**

1    Canadian Newspapers Company Limited ("CNCL") was sued for libel by the law firm of Teskey, Heacock and Ferguson ("Teskey"). At the time, CNCL was insured against libel claims by Kansa General Insurance Company Ltd. ("Kansa"). The libel action proceeded to trial and the Teskey firm was successful. The jury found that the newspaper owned by CNCL did not act in good faith in publishing the material, did not act in mistake of the facts, and did not publish a full and fair apology. The amount the Teskey firm was awarded in damages was greater than the amount for which they had offered to settle the action and, as a result, solicitor-and-client costs were awarded from the date of the offer through to the end of trial. An appeal by CNCL to this court was dismissed: *Teskey v. Canadian Newspapers Co.* (1989), 68 O.R. (2d) 737; leave to appeal to the Supreme Court refused: (1990), 71 O.R. (2d) x.

2    Following the trial, Kansa refused to indemnify CNCL and CNCL sued on the insurance policy for an amount in excess of $500,000. Although there was no issue that the Teskey action was covered by the policy, Kansa's position was that CNCL had breached the duty of co-operation CNCL owed to the insurer, acted in violation of the insurer's right to defend the action and committed breaches of good faith and fiduciary duty. Kansa joined as third parties to the action Tory, Tory, DesLauriers & Binnington ("Tory's"), the law firm mutually agreed upon by CNCL and Kansa to act as counsel with respect to any libel claims under the policy, and Marsh & McLennan Limited, the insurance broker at the relevant time. Kansa also counterclaimed for the legal fees it had paid to CNCL during the course of the litigation.

3    The trial judge gave judgment in favour of CNCL on the main action, dismissed Kansa's counterclaim, and dismissed the third party action. From this judgment CNCL now appeals. Inasmuch as the very detailed reasons of the trial judge are reported at 5 C.C.L.I. (2d) 66, I shall only review the facts and the evidence to the extent necessary to appreciate the arguments raised on appeal.

**The Issues**

4    Overall, it is the position of Kansa that the trial judge erred in concluding that Kansa was obligated to indemnify CNCL. Kansa submits that the trial judge erred in giving effect to an oral arrangement respecting the conduct of the litigation which Kansa says contradicted the terms of the policy. In the alternative, if effect is given to the oral arrangement, Kansa submits that the trial judge erred in his interpretation of the provisions of the policy relating to CNCL's duty to co-operate and wrongly concluded that Kansa's right to defend the action under the policy had not been violated. Kansa further submits that CNCL breached the duty of good faith an insured owes to an insurer and that CNCL committed a breach of fiduciary duty.

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

5    In the third party action, Kansa submits that the trial judge erred in finding that the law firm of Tory, Tory had no obligation to report on the progress of the Teskey claim, including offers to settle, to their client Kansa, because of the arrangement Kansa made with CNCL concerning the conduct of litigation. With respect to the insurance brokerage firm of Marsh & McLennan Limited, Kansa challenges the trial judge's finding that it was not negligent in failing to relate and to seek instructions promptly concerning an offer to settle.

**I The Reporting Arrangement**

*1. Background facts*

6    CNCL is a subsidiary of Thomson Newspapers Limited whose in-house counsel is Michael Doody, a lawyer who has specialized in litigation in the insurance field. The Ontario Community Newspaper Association (OCNA) entered into a contract of insurance with Kansa for libel coverage. Thomson's Ontario weekly papers obtained their libel coverage from Kansa as an incident of their membership in the OCNA ("the weekly policy"). Subsequently, Doody negotiated a corporate policy for Thomson Newspapers Ltd. ("the corporate policy"). For purposes of its libel insurance, Thomson was not willing to turn over control of the defence of litigation and handling of retractions to an insurance company which was solely concerned with the "economics" of the claims and not the broader implications which were important to a newspaper, such as journalistic integrity. CNCL alleges that as an inducement to obtain the corporate insurance policy Kansa agreed to a special arrangement with respect to all of the Thomson newspapers which differed from the manner in which libel claims against other newspapers insured by Kansa were handled. The extent of the arrangment is a matter of dispute. There is agreement that:

(1) Notices of libel were to be handled in the first instance by Doody.

(2) The report of the notice of libel would be made by Doody to the insurance broker.

(3) Doody was to have control of matters which required expeditious treatment such as retractions and apologies.

7    Both parties also agreed that Sheila Block of Tory's would be retained to defend any lawsuits for libel.

8    The dispute concerns the management and reporting of litigation. Doody testified that the following billing and reporting arrangements would be adhered to under the policy:

(a) Upon receipt of a writ of summons or statement of claim, Doody was to instruct Block to defend the action and Doody was to forward copies of the relevant documents to the insurance broker to be forwarded to Kansa.

(b) Block was to keep Doody informed as the action progressed. Doody would then inform the broker of any significant progress in the action and the broker would thereafter report to Kansa management.

(c) All accounts for legal fees and disbursements were to be paid directly by CNCL and then forwarded to the broker who was then responsible for forwarding the account to Kansa for reimbursement.

In a letter to Block on June 23, 1982, Doody stated:

You will technically be acting for the insurance company, but the policy provides that there will be consultation with us during the conduct of the action.

9    The trial judge accepted that the arrangement was as stated by Doody, although no formal authorization was ever obtained from Lionel Nepveu, Kansa's national claims manager, and the person who, as the witnesses testified, would have to approve the arrangement. It was important to CNCL that its insurer show consideration for the newspaper's desire to maintain its journalistic integrity by not settling a libel claim and allowing it to defend certain actions upon bases that were not purely economic. CNCL had eliminated consideration of one proposed carrier on the basis that it was not prepared to show sufficient flexibility in this regard. The trial judge's conclusion was also based in part on the fact that, when the Teskey action was commenced, the conduct

Canadian Newspapers Co. v. Kansa General Insurance Co., 1996 CarswellOnt 3227

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

of the parties was in accordance with the arrangement described by Doody. The trial judge found that the nature of the reporting was such that the manner of handling the litigation must have been, and was, apparent to Kansa and that no objection to it was taken by Kansa. The trial judge did not find it necessary to decide whether the arrangement was in itself contractual in nature so as to be enforceable at law. He considered it, however, to be a factor in determining the rights of the parties.

### *2. Discussion*

10    The appellant's position is that no oral arrangement existed outside the written terms contained in the policy.

11    The trial judge found that Kansa agreed that Doody would handle the day-to-day litigation but would keep Kansa advised of all significant developments in the litigation through the broker. The finding that the arrangement was as Doody had testified, was based in part on the subsequent conduct of the parties after notice of the Teskey action was received. The trial judge was entitled to consider the subsequent conduct of the parties in determining whether the arrangement described by Doody existed: *Montreal Trust Co. of Canada v. Birmingham Lodge Ltd.* (1995), 24 O.R (3d) 97 (C.A.).

12    The appellant submits that this court is in as good a position to make findings of fact and to draw inferences from the evidence as the trial judge because his findings were only partly based on the credibility of the witnesses. The recent judgment of the Supreme Court of Canada in *Schwartz v. Canada*, [1996] 1 S.C.R. 254 affirms the long settled principle that appellate courts must treat a trial judge's findings of fact with great deference. The principle of deference applies more strictly when the credibility of witnesses is at issue because of the trial judge's privileged position in seeing and hearing the witnesses' testimony at trial. Even when credibility is not at issue, policy concerns that the autonomy and integrity of the trial process be preserved and that unlimited freedom to intervene would greatly increase the number of appeals, suggest that deference be given to the trial judge's findings of fact. A specific and identifiable error must exist which justifies reconsideration of the evidence and which is determinative in the assessment of the balance of probabilities: *Schwarz*, *supra*, *per* La Forest J. at pp. 279-281. The trial judge's finding that the arrangement existed was open to him on the evidence and is not tainted by any misapprehension of the evidence, or lack of consideration of relevant evidence.

13    The appellant also submits that the trial judge was not at liberty to consider any oral arrangement which was made because to do so violates the parol evidence rule. Simply put, this rule indicates that the language of a written document may not be contradicted by oral evidence. The trial judge was not persuaded that the oral arrangement was inconsistent with the terms of the policy. The appellant contends that the trial judge's consideration of the effect of the arrangement on the rights of the parties ignores two unambiguous standard form paragraphs of exclusion contained in the policy. They are as follows:

#### 10. Changes

Notice to any agent or knowledge possessed by an agent or any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form part of this Policy, signed by a duly authorized agent of the Company.

#### 15. Declarations

By acceptance of this Policy, the Named Insured agrees that the statements in the application for this insurance which is signed on behalf of the Insured are his agreements and representations, that this Policy, including the Declarations, is issued in reliance upon the truth of such representations and that this embodies all agreements existing between himself and the Company relating to this insurance.

Section 10 of the policy requires that any changes be endorsed on the policy and signed by a duly authorized agent. The reporting arrangement was not endorsed on the policy. The reporting arrangement was different than the usual arrangement between an insurer and an insured but the reporting arrangement is not specifically covered in the standard policy. It is not a change to the terms of the policy *per se*. The second exclusion in s. 15 states that the application for insurance and the policy embody all agreements, but this general phraseology cannot prevail over the specific reporting arrangement agreed to by the parties where

Case 09-10138-MFW    Doc 14225-40    Filed 08/15/14    Page 9 of 22

Canadian Newspapers Co. v. Kansa General Insurance Co., 1996 CarswellOnt 3227

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

it has been acted upon by the parties: *Zippy Print Enterprises Ltd. v. Pawliuk (1994), 20 B.L.R. (2d) 170* (B.C. C.A.) at 186-188. Alternatively, having acquiesced in the arrangement, it can be said that Kansa's conduct amounted to a representation that this method of handling the libel claims was approved, that the equitable remedy of estoppel applies, and Kansa is estopped from complaining about its existence now: *D.S. Ashe Trucking Ltd. v. Dominion Insurance Corp. (1966), 55 W.W.R. 321* (B.C. C.A.).

14     Even when a document seems to embody all the terms of the agreement, evidence of an oral statement is relevant and may be admitted to demonstrate *inter alia* the factual matrix of the agreement: *Gallen v. Allstate Grain Co. (1984), 9 D.L.R. (4th) 496* (B.C. C.A.); leave to appeal to the Supreme Court refused, *sub nom. Allstate Grain Co. v. Guichon (1984), 56 N.R. 233 at p. 506.* See also *Hawrish v. Bank of Montreal (1969), 2 D.L.R. (3d) 600* (S.C.C.). The oral arrangement gave substance to what the parties meant when they agreed that there was a duty to co-operate.

15     The trial judge did not err in taking the reporting arrangement into consideration in his interpretation of the policy.

**II The Policy**

16

**A. Duty of Co-operation**

17     Kansa's position is that, if it is bound by the arrangment with respect to the conduct of the litigation, CNCL did not keep Kansa informed of developments in the *Teskey* case in terms of potential risk or expense. It is the position of Kansa that these omissions on the part of CNCL constituted a breach of the insured's duty of co-operation under the policy of insurance and prevented it from exercising an informed decision as to whether to defend the Teskey action or to invoke the settlement clause.

*1. The Facts*

*(a) Developments in 1983*

18     On May 5, 1983, the Midland Free Press, a weekly community newspaper, published a so-called advertisement by Wm. Ogilvie which alleged a conflict of interest on the part of Teskey, Heacock and Ferguson, the solicitors who acted on behalf of the Municipality of Tiny Township, in their dealings with the Municipality. In response to a libel notice from the Teskey firm, an apology was published on May 11. Notwithstanding this, writs of action were issued. Mr. Lax, Teskey's solicitor, offered to settle on June 1, and a further offer was made on June 24. Lax told Doody that they would settle if CNCL donated $5,000 to charity and $1000 in costs. Doody spoke with Longlade, the claims manager for Dale & Company, the insurance broker at the time, regarding the offer to settle and told him that he did not want to settle on this basis as Midland had published a full apology. Longlade agreed that settlement should not be made on this basis. On June 24, Doody advised Lax that CNCL would not accept their settlement offer.

19     In July, Doody received the statement of claim and forwarded it to Block with a copy to the agent who forwarded it to Kansa. The covering letter made reference to Lax's two offers to settle and indicated that CNCL wished to reject them unless Kansa insisted otherwise. In August, the offer to settle was repeated by Lax. Block was of the view that the original libel was published in good faith and that a full and fair retraction had been published pursuant to s. 5(2) of the *Libel and Slander Act*, R.S.O. 1980, c. 237. In accordance with the Act, she was of the view that in these circumstances the maximum damages to which CNCL was exposed were actual damages which were something less than $540. She paid this amount into court in November. Block wrote to Lax rejecting his offers to settle and advising him of the payment into court.

*(b) Developments in 1984*

20     The newspaper published a letter to the editor dated March 23, 1984, signed by the president of the Tiny Township Ratepayers' Association, of which Ogilvie was then vice-president. It stated that Heacock should resign as president of the Midland Chamber of Commerce or his law firm should resign as solicitors for Tiny Township. A second libel notice was sent and was forwarded without explanation by Doody to the agent who forwarded it to Kansa.

WestlawNext. CANADA Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

21    On April 13, the newspaper published a report which was signed by Ogilvie of a Tiny Township Council meeting concerning a deputation at the meeting which alleged, inaccurately, that the Teskey firm had overcharged Tiny Township for legal services. A third libel notice was received by Doody. In May, Doody wrote to Lax in response and a copy of his letter was sent to the agent and the agent forwarded it to Kansa. At about this time Marsh and McLennan Limited, a third party in this action, became the insurance broker.

22    The examination for discovery of the publisher of the newspaper took place in June 1984. By memo to file dated June 7, 1984, Doody wrote to the publisher of the newspaper enclosing documents produced by Lax and commenting that his belief was that the main purpose of these productions was to show that Ogilvie was a well known muckraker who had a reputation for total unreliability and thus the newspaper should have refused to carry the "advertisement." The insurer was never advised of the contents of the memo.

23    During 1984, Block's accounts were forwarded to Kansa and their amounts were:

> January 25, 1984 - ...... $ 400
>
> November 28, 1984 - ...... $3,240
>
> December 31, 1984 - ...... $ 576

The December account was received by Kansa in March of 1985. The account made reference to correspondence with Lax with respect to discontinuance of the action against the insured.

*(c) Developments in 1985*

24    In January 1985, Lax brought a successful motion to compel the publisher of the newspaper to re-attend to answer questions refused on discovery. These questions dealt with the accuracy of the news report of April 1984 which formed the basis for the third libel notice. Master Clark held that the question of malice was an issue to be addressed at trial and that this could be done by leading evidence of events which had occurred between the date of the issue of the writ and the trial without specifically pleading these events. He stated:

> The function of the questions was to obtain admissions which would damage the defendants' assertion of good faith, by showing that little or no effort was made to check the accuracy of the material in this news story of April 13, 1984.

No report of the potential impact of the subsequent notices of libel, the examination for discovery of the publisher, or of the outcome of the motion as it related to the newspaper's defence of good faith was ever made to Kansa.

25    In March of 1985, there is a note in Doody's file stating that "Cliff Lax is really pushing to settle and he might settle for another $1,000 or $2,000 either direct or to a charity." The same note to file indicates that Doody discussed settlement with the division manager responsible for the newspaper who indicated that he did not want to pay anything more. There is no evidence that Lax's proposal to settle was passed on to either the broker or to Kansa. On March 14, 1985, Doody telephoned Block and left instructions with her secretary to tell Lax that CNCL was not agreeable to paying any more money. Doody did not telephone Bennett at Marsh and McLennan at this time about the settlement proposal.

26    In May 1985, Block's account in the amount of $1,899.12 was received and forwarded by Doody to Kansa. In June, Doody received a letter from the insurance agent enclosing a cheque from Kansa. He asked, "

. . . . .

is this matter now closed?"

27    By letter dated June 21, 1985, Doody advised Bennet of the current status of the matter. This letter contained a number of inaccuracies. In particular, the letter indicated that most of the discoveries had been completed when, in fact, the examinations

WestlawNext CANADA Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

for discovery of the plaintiffs, involving four further days, had not yet begun. The letter provided no indication of anticipated defence costs. It did not address the issues Mr. Lax was advancing concerning the prior knowledge of the newspaper about Ogilvie's unreliable comments nor the impact of the subsequent publications on the defence of good faith. Instead, the letter reiterated only the position of CNCL that it had published an extremely full and fair retraction and that the plaintiffs could not obtain general damages. The letter advised that an offer to settle had been received for $3,500 plus costs. Doody outlined in his letter that if CNCL did not accept this offer and the Teskey firm was successful in obtaining an award at trial of $3,500 or more, then CNCL would be liable to pay Teskey's solicitor-and-client costs from the date of the offer to settle until the date of judgment. The letter also indicated CNCL's wish not to settle the action on this basis because the Teskey firm had showered CNCL with various notices of libel in the past in an attempt to intimidate and silence the newspaper. In fact, there were no past instances of notices of libel prior to this action. The letter concluded by saying, "Unless the insurer is absolutely adamant that this offer should be accepted, we propose to ignore the offer to settle."

28    On November 27, 1985, Doody wrote to Bennett enclosing the notice of trial and indicating that the earliest date the trial would take place would probably be September of 1986. In December of 1985 an account for $976 was sent to Kansa.

*(d) Developments in 1986 up to trial*

29    About March 1986, Doody became aware that Kansa was not going to renew the corporate policy.

30    Between December 1985 and September 1986: (1) the examinations for discovery of the members of the Teskey firm took place; (2) an offer to settle in May 1986 for $10,000, including costs, was made; (3) the pretrial was held; (4) a further publication involving the Teskey firm appeared in the newspaper; (5) Mr. Lax sent a letter indicating that this further publication would be relied upon in support of the allegations of malice; (6) witness statements on the issue of malice and lack of good faith were obtained by the defence; and (7) many hours of preparation for trial, some 300 hours in all, were spent by Tory, Tory. Kansa was not advised of any of these developments.

31    The five-week trial of the Teskey action commenced in Barrie on September 29,1986.

32    At the trial of the action under appeal, Mr. Nepveu and Mr. Charron testified that in their long experience in the insurance claims industry they could not recall a single case where a solicitor took a matter to trial for even a week without giving prior notice of the upcoming trial and discussing the various options and costs with the insurer. Mr. Bennett, who gave evidence on behalf of the third party, also gave evidence to this effect.

*2. The Provisions of the Policy*

33    The policy of insurance states:

**V. General Conditions**

. . . . .

[ellipsis]

*6. Assistance and Co-Operation of the Insured*

*The insured shall co-operate with the Company* and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. *Except at his own cost, the Insured shall not voluntarily make any payment, assume any liability or obligation or incur any expense, unless with the written consent of the company*. [Emphasis mine.]

*7. Settlement*

The Company shall not settle any claim without the consent of the Insured. If, however, the Insured shall refuse the consent to any settlement recommended by the Company and shall elect to contest the claim or continue any legal proceedings in

WestlawNext® CANADA  Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

connection with such claim, then the Company's liability for the claim shall not exceed the amount for which the claim could have been so settled plus the cost and expenses incurred with its consent up to the date of such refusal.

### 3. The Trial Judge's Decision

34    Kansa's submission that Doody, as the agent of CNCL, breached the duty of co-operation owed to Kansa was dealt with by the trial judge at pp. 93-94 as follows:

. . . . .

[It] seems to me that one would have to strain the language to find even *prima facie* application to the real substance of the complaint. I think it reasonably clear that the provision is directed at preventing the insured from voluntary admission of liability. Nothing of this sort was done.

As to the liability for costs, from the outset of the litigation in the Teskey case the defendant knew, or as a sophisticated insurer must be taken to have known, that the defence of the action would entail expense by way of payment to solicitors and counsel conducting the defence. I fail to see how any liability or obligation thus arising can be said to be one which the plaintiff voluntarily assumed.

[ellipsis]

As to the quantum of costs, assuming that by any stretch it is material in this aspect of the case, the defendant knew as the action progressed, from the accounts submitted from time to time, that substantial costs were being incurred. If it intended that a limit should have been imposed, it should have said so.

I find and conclude that there was no breach by the defendant of the provisions of s. V(6).

[ellipsis]

There is no provision in the policy which obliges the insured to report from time to time to the insurer on the progress of the litigation. That obligation devolved upon Doody only as a result of the oral arrangement to which Kansa gave its assent.

### 4. Discussion

35    In interpreting an insurance contract, as in all contracts, effect must be given to the intention of the parties: *Consolidated-Bathurst Export Ltd. v. Mutual Boiler & Machinery Insurance Co.*, [1980] 1 S.C.R. 888 at 899, *per* Estey J. for the majority. The normal rules of construction of a contract require that the various clauses of a contract cannot be considered in isolation but must be given an interpretation that takes the entire agreement into account: *Consolidated Bathurst, supra*, at p. 901; *Hillis Oil & Sales Ltd. v. Wynn's Canada Ltd.*, [1986] 1 S.C.R. 57, and *Chablis Textiles Inc. (Syndic de) c. London Life Insurance Co.*, [1996] 1 S.C.R. 160. A contextual approach is required: *Canadian Indemnity Co. v. Andrews & George Co.*, [1953] 1 S.C.R. 19. Having found that the oral arrangement existed, the trial judge was obliged to give effect to it in considering the duty of co-operation under the policy. Consideration of the co-operation clause in the context of the entire agreement also required the trial judge to bear in mind the existence of the settlement clause in interpreting the co-operation clause. The trial judge's reasons do not indicate that he did this. The trial judge's comments are focussed on the concluding words of the co-operation clause. The opening words of the clause are: "The insured shall co-operate with the Company and

. . . . .

" The opening words of the clause impose a general duty on the insured. The words which follow impose an additional duty on the insured to comply with requests from the insurer to attend hearings and trials and to give evidence. The insured also undertakes not to assume liability by settling the action or to incur expenses unless with the written consent of the company. The general duty of co-operation of the insured which is contained in the opening words of the clause is not limited to the duty of the

**WestlawNext**® CANADA  Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.

insured to comply with requests from the insurance company and to obtain approval before making any payments or incurring liability. That these specific duties are in addition to the general duty of co-operation is indicated by the use of the word "and".

36      In *Travellers Indemnity Co. v. Sumner Co.* (1960), 27 D.L.R. (2d) 562 at 565 (N.B. C.A.), aff'd [1961] S.C.R. viii., West J.A. described the general duty of an insured to co-operate with the insurer pursuant to the statutory terms of an automobile policy as follows:

> The duty of the insured under the policy here involved was to give promptly all material particulars within their knowledge bearing upon the accident and to co-operate, except in a pecuniary way, with the insurer which involved an opportunity to effect an early and favourable settlement. See *Provident Ass'ce Co. v. Adamson*, [1939] 1 D.L.R. 609, [1938] S.C.R. 482, 6 I.L.R.1.

37      Here, as part of the duty to co-operate, the arrangement between the parties required that, after a claim resulting in litigation was made, material information concerning significant developments in the litigation be given by the insured to the insurer.

38      The non-reporting, particularly between December 1985 and September 1986, was material and significant because information concerning the offer to settle in May 1986, the development of the plaintiff's position concerning malice and lack of good faith, and the greatly increased legal fees for an anticipated lengthy trial, all significantly affected the risk to the insurer.

39      The respondent makes several submissions in relation to the duty of co-operation which require comment at this point:

> a) The respondent did not breach the duty of co-operation because Kansa was kept aware of developments relating to the action through the description of the services rendered in the statement of accounts.

40      The trial judge found that "

· · · · ·

even a cursory examination of the accounts would have indicated an action proceeding with significant interlocutory proceedings and the other *indicia* of a lawsuit which is being pressed by the plaintiff."

41      I agree that an examination of the accounts would have indicated that the action was proceeding. The extent of the proceedings was not apparent, however, until the first major account was sent at the commencement of trial. It was only on September 19, 1986, that Doody sent the broker the statement of accounts for services rendered between February 10, 1986, and July 2, 1986, which described the examinations for discovery of the members of the Teskey firm, Doody's examination for discovery, the pre-trial, the motion to have Doody re-attend for continued discovery, the appeal of this motion, and a further pretrial motion. This bill was in the amount of $17,922 and was substantially more than the total of all other bills sent to this point. Prior to this time, the amount paid by Kansa, pursuant to statements of account received by it, totalled $7,091.64. The account sent on September 19 also did not reflect the pre-trial preparation which began in July. The arrangement whereby Doody undertook to report significant developments in the litigation cannot be said to have been fulfilled by Doody forwarding the statements of account because it overlooks the lack of timeliness with which the accounts were rendered. Moreover, a description of services rendered is not intended to, nor does it contain any reference to the offer to settle or to the development of the position of the plaintiffs in the action pertaining to the issue of malice. The fact that on September 19 Doody forwarded to the broker Block's account for services rendered from February to July changed nothing because the account did not provide Kansa with the information it needed to assess the risk of continuing the litigation, nor did it convey the settlement offer which had been made after Kansa had decided not to renew the policy in March of that year. The statement of accounts did not contain sufficient information to enable Kansa to decide whether to invoke the settlement clause.

> b) CNCL was not obliged to pass on to Kansa subsequent offers to settle because earlier offers to settle had not been accepted and there was "nothing new" in them. The offers were merely for the same amount with more costs.

42      This submission ignores the fact that the offer of May 1986 was made much later in time in the litigation when rejection would inevitably entail substantial costs of trial preparation. Kansa did not give unconditional instructions to CNCL that it

Case 09-10138-MFW    Doc 14225-40    Filed 08/15/14    Page 14 of 22

Canadian Newspapers Co. v. Kansa General Insurance Co., 1996 CarswellOnt 3227

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

could go to trial irrespective of any settlement offers that might be made. Nor can it be said that Kansa acquiesced in Doody's conduct of the litigation to the point that it gave up its right to invoke the settlement clause. In order to be in a position to invoke the settlement clause, Kansa had to be aware of any offers to settle that were made. Although Doody was not acting as counsel to Kansa and was not in breach of the solicitors' professional code of ethics in omitting to convey the offer to settle of May 1986, by virtue of the co-operation clause and the reporting arrangement he owed Kansa a duty to make it aware of this offer so that Kansa could decide whether to invoke the settlement clause. A reasonably prudent insured in Doody's position would have done so. Doody did not. This failure was material because it affected Kansa's assessment of the risk pertaining to the claim which was being made.

> c) If Kansa wanted to find out anything about the lawsuit it had only to ask. It did not do this and therefore CNCL should not be faulted.

43    The respondent relies on the decision in *Canadian Indemnity Co. v. Johns-Manville Co.*, [1990] 2 S.C.R. 549 in support of this submission. That case held that an insured has an obligation to disclose all the facts that are material to the risk, but the insured is not obliged to disclose facts which the insurer is presumed to know from their public character and notoriety. In coming to his conclusion, however, Gonthier J. reviewed the case law which is to the effect that where the information is not in the public domain the insured is not entitled to withold information simply because the insurer fails to ask questions. See especially pp. 613-614. Although the fact situation in *Canadian Indemnity, supra*, involved disclosure in applying for insurance by an insured, as opposed to disclosure pursuant to a duty to co-operate after the policy had been obtained, Gonthier J.'s reasons are helpful. On a more general basis, where a party has represented that it will disclose material facts, and has breached that duty, it is no defence that by reasonable diligence the other party could have discovered the truth. See *Redgrave v. Hurd* (1881), 20 Ch. D. 1 (C.A.).

44    The respondent submits that Kansa should be presumed to know about the basic components of a libel claim, including the concepts of apology, good faith, aggravation of damages, malice and the potential significance of subsequent publications where malice has been alleged. There is no dispute about this. There were, however, significant developments relating to the litigation which CNCL undertook to convey to Kansa and which Kansa cannot be presumed to have known. For example, Kansa could not be expected to know that the Teskey firm was alleging that the Midland Free Press knew that Ogilvie was a muckraker and that it should therefore never have accepted the "advertisement". Nor could Kansa be presumed to know of the existence of any offers to settle which were not conveyed to it. CNCL's lack of disclosure cannot be excused on the basis that Kansa should have asked for information which was specific to this claim.

45    In summary, the trial judge did not give effect to the general duty of co-operation contained in the opening words of clause 6 or interpret this general duty in the context of the reporting arrangement and the settlement clause. The duty of co-operation in the context of this case required CNCL to provide sufficient information to Kansa concerning developments in the litigation which would enable Kansa to decide whether the risk to it had increased such that it wished to invoke the settlement clause. On behalf of CNCL, Doody did not convey material information to Kansa which would have affected Kansa's assessment of the risk relating to the *Teskey* action. CNCL's omissions amounted to a breach of the co-operation clause. The omissions cannot be excused on the basis that statements of account were provided to Kansa or that prior offers to settle which had been conveyed to Kansa had been turned down. The statements of account omitted material particulars of the litigation and the prior offers to settle were not made at a time when the serious work of preparation for trial and its attendant cost was about to begin. Nor, in the circumstances of this case, does Kansa's lack of inquiry excuse CNCL from fulfilling its duty to report to Kansa significant developments in the litigation.

## B. Insurer's Right to Defend

46    Section II of the policy of insurance provides that the Company shall:

> (a) have the right and duty to defend any suit or injunctive relief or both against the Insured seeking damages payable under the terms of this Policy,

Case 09-10138-MFW    Doc 14225-40    Filed 08/15/14    Page 15 of 22

Canadian Newspapers Co. v. Kansa General Insurance Co., 1996 CarswellOnt 3227

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

47    In his reasons the trial judge stated:

> The contention of the defendant is that the plaintiff, by the activities of Doody in and about the defence of the Teskey
> claim, usurped the right of the defendant to defend. In my view, this contention meets with two difficulties, either of which
> is insurmountable. The first is that the defendant was not deprived of its right to defend and, on the other hand, did defend
> the action by solicitors and counsel of its choice. There is no suggestion that such defence was not vigorous and competent.
> This seems to me to be sufficiently clear and simple that it requires no elaboration.

The trial judge also commented:

> The defendant, by the oral arrangement which I have earlier discussed, agreed that Doody should have the day to day
> management of litigation and that reporting by Tory's should be to him and, as to significant developments, by him to Kansa
> through the broker. It was always open to Kansa to give instructions directly to, or to request reports directly from, Tory's.
> That it did not choose to do so confirms the arrangement as the plaintiff asserts it. Having acceded to that arrangement, the
> defendant cannot now contend for an interpretation of section II(a) of the policy by which the activities of Doody would
> comprise a breach of that provision.

48    The trial judge appears to hold that, by entering into the arrangement whereby the management of the litigation would be
conducted by Doody on a day-to-day basis, Kansa abdicated its right to defend the action and is now precluded from asserting
that the policy has been breached.

49    The approach adopted by the trial judge negates any effect being given to the written term of the contract concerning the
insurer's right to defend the action. It was incumbent on the trial judge insofar as possible to interpret the policy in a manner
which gave meaning both to the insurer's right to defend the action and to the arrangement requiring Doody to report significant
developments in the litigation. The fact that Kansa wished Block to act for it in the Teskey action and the observation that the
action was vigorously and competently defended by Block does not mean there was compliance with the policy. The reporting
arrangement did not give CNCL a blanket right to conduct the litigation as it saw fit. CNCL's conduct must be considered
bearing in mind the right of the insurer to defend the action by settling it or by invoking the settlement clause. Kansa never
gave up this right. The decision as to whether or not an action should continue to be defended cannot be made in a vacuum. It
must be an informed decision. Kansa could not make an informed decision about the continued defence of the action because its
insured breached its duty of co-operation to inform it of significant developments in the litigation. Stating that Kansa could give
instructions directly to, or request reports directly from, Tory's ignores the fact that the conduct of Doody on behalf of CNCL
led Kansa to think that the action was more or less a nuisance claim until the trial commenced. Doody's non-disclosure of the
significant developments in the litigation infringed Kansa's right to defend the action because Kansa was prevented from making
an informed decision as to whether or not to settle the action or to invoke the settlement clause instead of proceeding to trial.

50    By not considering the right to defend as including the right to limit the defence by invoking the settlement clause, and,
in ignoring Doody's obligation in clause II to make Kansa aware of the proposed expenses of the litigation in a timely fashion,
the trial judge erred in his interpretation of this clause.

## III Waiver and Estoppel

### 1. Facts

51    On September 4, 1986, Block sent Doody an account for services rendered from February 10 to July 2, totalling $17,922.65.
On September 19, 1986, Doody forwarded this account to the broker, Bennett, who forwarded it to Kansa. Kansa received the
account on September 29, the day that the trial began. On October 3, 1986, Kansa asked Doody for a report concerning the
litigation due to the magnitude of the Tory account. At that time, Doody raised the possiblity of settlement and, pursuant to
his request, was authorized to accept a dismissal of the action without costs to either party. On October 6, after the end of the
first week of trial, Doody sent a full reporting letter to Bennett to be transmitted to Kansa. This was the first report provided
after two-and-a-half years of litigation. It was also the first time that Kansa was advised that the issues at trial revolved around

Case 09-10138-MFW    Doc 14225-40    Filed 08/15/14    Page 16 of 22

Canadian Newspapers Co. v. Kansa General Insurance Co., 1996 CarswellOnt 3227

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

whether the apology was full and complete and whether the original advertisement had been accepted in good faith. The letter did not advise of the May 1986 offer to settle which had not been conveyed to Kansa, although it did refer to the June 4, 1985, offer to settle for $3,500 plus interest, which had expired. The letter stated in part:

> In any event we were not and are not disposed to accept this offer to settle, because from the time of service of the initial libel notice, and during the service of two subsequent libel notices by the plaintiffs, the plaintiffs have indicated a disposition to intimidate our newspaper and prevent us from covering community issues. We feel that we cannot allow them to do this, and for this reason we must resist their claims.

The so-called intimidation was the service of the subsequent libel notices. The letter indicated that the trial would likely continue for up to another two weeks and possibly longer due in part to the number of witnesses being called to show that it was well known Ogilvie was a malicious malcontent, as well as the witnesses called to rebut this contention. Bennett's office sent the report by ordinary mail on October 9 and Kansa received it on October 17. After conclusion of the evidence at trial Doody wrote a further report to Bennett dated October 24 In it he advised that, although the trial initially appeared to be going well in CNCL's favour, difficulties had been encountered in the latter part of the trial. On October 28, a cheque in payment of the Tory account of $17,000 was requisitioned and it was issued on October 30. On October 31, the trial ended and judgment was awarded in favour of the Teskey firm. On November 3, Doody received a letter from Block recommending an appeal of the trial judge's charge to the jury. Doody reported on the outcome of the trial and transmitted Block's letter of recommendation on November 6; it was received by Kansa on November 10.

52    Kansa referred the matter to Wm. R. McMurtry who wrote to Block indicating that his clients were not in a position to give her instructions regarding an appeal. CNCL filed a notice of appeal and Block, in responding to McMurtry's letter on November 28, 1986, told him this had been done. On December 9, 1986, McMurtry wrote to Block formally taking the position that there had been a fundamental breach of the insurance policy by CNCL. On December 12, 1986, Doody sent Bennett the account which he had received from Tory's for their work from July to October for trial preparation and the costs of the trial totalling $166,193.48. A further account to Bennett for reimbursement by Kansa was sent on January 30, 1987, in respect of Tory's recommendations regarding the appeal and in filing the notice of appeal in the amount of $1,750.76.

### *2. Waiver*

53    It is the position of the respondent that, in paying the $17,000 after it received the full report from Doody, Kansa's conduct amounted to a waiver of any breach of the policy. Inasmuch as the trial judge found no breach of the policy on the part of CNCL, he did not specifically consider the question of waiver.

54    The relevant portion of s. 10 of the policy provides

> **10. Changes:**
>
> . . . . .
>
> nor shall the terms of this Policy be waived
>
> . . . . .
>
> except by endorsement issued to form part of this Policy, signed by a duly authorized agent of the Company.

55    The doctrine of "waiver" is one of general application in the law of contract and consequently applies to insurance contracts. The essence of a waiver is the abandonment of a right. In the insurance context it is the abandonment of the right to treat the policy as not being in force following a breach by the insured. There was no waiver of any term of the policy in writing.

56    Before one can find waiver by conduct, the conduct must be express and unequivocal: *Reierson v. Northern Life Assurance Co. of Canada*, [1977] 1 S.C.R. 390, 67 D.L.R. (3d) 193 at 199 (D.L.R.). In that case, Dickson J. held that after the grace period for renewal had expired an insurer's request for a cheque to replace the n.s.f. cheque sent by the insured did not amount to a waiver of the insured's failure to renew the policy. In our case, the insurer did not terminate the relationship until it sought legal

Case 09-10138-MFW    Doc 14225-40    Filed 08/15/14    Page 17 of 22

Canadian Newspapers Co. v. Kansa General Insurance Co., 1996 CarswellOnt 3227

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

advice shortly after the trial. Merely allowing a relationship to continue until legal advice is obtained is not an unequivocal act tantamount to a waiver: *Zippy Print, supra*, at p. 189. See also M. Parkington, *MacGillivray and Parkington on Insurance Law*, 8th ed. (London: Sweet & Maxwell, 1994) at p. 336, para. 814, to the effect that there is no duty upon insurers to make their election to affirm or avoid within a particular time after discovery of the insured's breach. The payment of the $17,000 was not an express and unequivocal waiver of the breach of the policy.

### *3. Estoppel*

57    CNCL relies on the silence of Kansa until after the litigation in support of its argument that Kansa should be estopped from relying on the breaches of the policy.

58    A party alleging promissory estoppel must establish that the other party has, by words or conduct, made a clear promise which was intended to affect their legal relationship and to be acted on. Furthermore, the person to whom the promise is made must establish that he acted upon the promise or in some way changed his or her position in reliance upon it: *Saskatchewan Trust Co. v. Hawrish*, [1994] 4 W.W.R. 225 (Sask. Q.B.); appeal to the Saskatchewan Court of Appeal dismissed, February 21, 1995; leave to appeal to the Supreme Court of Canada refused, February 15, 1996; *Maracle v. Travellers Indemnity Co. of Canada* (1991), 80 D.L.R. (4th) 652 at 656 (S.C.C.). Although a party's silence may amount to acquiescence and thus constitute conduct giving rise to a promissory estoppel, this did not happen here. Doody acted on his own without consulting Kansa. Kansa could not acquiese because it did not know the true state of affairs. When Kansa was apprised of the situation the trial had already started. CNCL did not change its conduct owing to Kansa's silence.

59    The respondent submits that Kansa was under a duty to advise CNCL if there was dissatisfaction with the content or frequency of the reporting regarding the Teskey claim. As Kansa did not do this, it is said that Kansa is estopped from denying coverage because otherwise the insured might have conducted the action differently. In support of its position, the respondent relies on *Banque Keyser Ullmann S.A. v. Skandia (U.K.) Insurance Co.*, [1990] 3 W.L.R. 364 at 369 (H.L.) and *Fletcher v. Manitoba Public Insurance Corp.* (1991), 74 D.L.R. (4th) 636 at 647-51 (S.C.C.). These cases stand for the proposition that an insurer who negligently fails to disclose important information to an insured can be liable in negligence if: (i) the insured relied on the information; (ii) its reliance was reasonable; and (iii) the insurer knew or ought to have known that the insured would rely on the information.

60    Here, it was CNCL who had the duty and who failed to disclose important information to Kansa; Kansa relied on the information to be provided by CNCL; owing to the reporting arrangement, Kansa's reliance was reasonable; and CNCL knew that Kansa was relying on it to provide the information.

61    I would also reject the respondent's related argument that Kansa negligently represented to CNCL that it would take into account and respect the non-economic factors which were important to a newspaper. There is clear evidence that Kansa did take this into account early in the litigation. As I have indicated, however, this consideration did not mean that CNCL was relieved of its duty to co-operate or to allow Kansa to control the litigation.

### IV Indemnification

62    I have stated my view that the insured breached the duty of co-operation under the policy of insurance. In *Travellers Indemnity Co. of Canada v. Sumner, supra*, at p. 565. West J.A. stated:

> The duty of the insured to co-operate with the insurer, being a condition precedent to his right to recover, requires him to assist willingly and to the best of his judgment and ability. If in this connection a breach occurs in some material respect the insurer is entitled even to refuse to defend an action. Lack of co-operation, however, must be substantial. No inconsequential or trifling breach of such obligation should serve to exonerate the insurer from his contractual liabilities under the policy.

63    The breach of the duty of co-operation in this case was substantial because it affected the insurer's assessment of the risks of the litigation.

WestLawNext® CANADA   Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.

Case 09-10138-MFW    Doc 14225-40    Filed 08/15/14    Page 18 of 22

Canadian Newspapers Co. v. Kansa General Insurance Co., 1996 CarswellOnt 3227

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

64      I have also stated my view that there has been an infringement of the right of the insurer to defend the action. In such a situation the insurer is also absolved from liability to indemnify the insured under the policy: *Mallett v. Lumbermen's Mutual Casualty Co.*, [1928] 3 D.L.R. 150 (Ont. C.A.).

65      Section 12 of the policy of insurance also specifically relieves Kansa from indemnifying CNCL where there has been a breach of the policy. It states:

**12. Action Against the Company**

No action shall lie against the Company for the enforcement of any claim under this Policy unless the insured has complied with all the terms and conditions set out in the Policy.

66      Having regard to the jurisprudence and to the specific wording of the policy, Kansa is entitled to refuse to pay for the costs of the Teskey action subject to the respondent's possible entitlement to relief from forfeiture.

67      In the circumstances, it is not necessary to address the appellant's submissions concerning breach of fiduciary duty and I do not propose to do so.

**V Relief Against Forfeiture**

68      The remedy of relief against forfeiture is based on statute. In Ontario the relevant provision is s. 106 (now s. 129) of the *Insurance Act*:

106. Where there has been imperfect compliance with a statutory condition as to the proof of a loss to be given by the insured or other matter or thing required to be done or omitted by the insured with respect to the loss and a consequent forfeiture or avoidance of the insurance in whole or in part and the court considers it inequitable that the insurance should be forfeited or avoided on that ground, the court may relieve against the forfeiture or avoidance on such terms as it considers just.

It could be argued that the provision, on its face, applies only to breaches of statutory conditions. This court held, however, in *Minto Construction Ltd. v. Gerling Global GeneralInsurance Co.* (1978), 19 O.R. (2d) 617 (C.A.), that the court's power to relieve was not restricted to statutory provisions. The court held that s.106 (then s. 103) should be broadly interpreted to provide relief also to those who have breached contractual provisions. The Supreme Court of Canada gave the same interpretation to an identical section in the *Saskatchewan Insurance Act*, R.S.S. 1978, c. S-26, in *Elance Steel Fabricating Co. v. Falk Brothers Industries Ltd.*, [1989] 2 S.C.R. 778 at 781-84.

69      In *McNish & McNish v. American Home Assurance Co.* (1989), 68 O.R. (2d) 365 (H.C.), aff'd (1991), 5 C.C.L.I. (2d) 222 (C.A.), Steele J., at p. 372, lists the following requirements for relief against forfeiture:

(1) Imperfect compliance with a term of the policy.

(2) A consequent forfeiture or avoidance of insurance.

(3) The court must consider the forfeiture inequitable.

(4) The court may relieve against the forfeiture on such terms as it considers just.

*A. Imperfect Compliance*

70      The courts have distiguished between mere imperfect compliance with statutory or contractual provisions and non-compliance with such provisions. McLachlin J. explains in *Falk Bros., supra*, at p. 784:

Case 09-10138-MFW    Doc 14225-40    Filed 08/15/14    Page 19 of 22

Canadian Newspapers Co. v. Kansa General Insurance Co., 1996 CarswellOnt 3227

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

The distinction between imperfect compliance and non-compliance is akin to the distinction between breach of a term of the contract and breach of a condition precedent. If the breach is of a condition, that is, it amounts to non-compliance, no relief under s. 109 [the relief against forfeiture section of the Saskatchewan Act] is available.

71    In *Travellers Indemnity Co. v. Sumner Co.* (1960), 27 D.L.R. (2d) 562 (N.B. C.A.), the court held that, although a breach of the insured's duty of co-operation could qualify as imperfect compliance, an insurer could deny coverage or refuse to defend if the lack of co-operation was "substantial". West J.A. held, at p. 565, that "[n]o inconsequential or trifling breach of such obligation should serve to exonerate the insurer from his contractual liabilities under the policy." The liability in that case arose out of a motor vehicle accident. The breach complained of by the insurer was the insured's failure to promptly notify the insurer of a drink the insured had taken shortly before the accident. The insured informed the insurer of this drink before he was examined for discovery and, at trial, the judge found that the insured was not intoxicated at the time of the accident. The court of appeal held that this inconsequential breach should not serve to allow the insurer to refuse to indemnify the insured.

72    The breach complained of in the present appeal is a "substantial" breach of the insured's duty of co-operation and of the insurer's right to defend the action. CNCL failed to report on the progress of the litigation, to convey offers to settle, to inform Kansa of the theory of the defence and to advise that the action had proceeded to trial until after the trial had begun. This breach is more than mere "imperfect compliance," it is a substantial breach of the policy and on this basis alone CNCL is not entitled to claim relief from forfeiture. In view of the extensive submissions made with respect to whether forfeiture of the benefits of the contract would be inequitable, I shall, however, go on to consider the submission.

### B. Inequitable Forfeiture

#### 1. Conduct of the Insured

73    Conduct is important in deciding whether to grant relief against forfeiture because insurance contracts are contracts of good faith and because the remedy is an equitable one. It is trite law that conduct amounting to a breach of good faith by an insured will disentitle the insured to relief against forfeiture. The trial judge appears to have accepted that Doody did not keep Kansa fully advised of all significant developments in the case, but he found that this was not a breach of the duty of good faith. He stated:

> With the wisdom of hindsight it is easy to see things which Doody might have done, or left undone, which in turn might, or might not, have caused matters to take another and happier course. Perhaps he should have recognized at some stage in the action that the costs were reaching an amount which the defendant might consider excessive, balancing its own economic interest against the interest of the plaintiff in maintaining a matter of principle. Perhaps he was excessively confident in the defence of the action, having regard for the inherent hazards of litigation, and, in consequence, did not have sufficient regard for offers of settlement. I think he should probably have advised the defendant when the actual trial date was determined and have provided at that time a complete report on the status of the Teskey action

> . . . . .

> it is open to question whether it would have influenced the course of events, but that is not the point. All of these were matters of judgment and not of bad faith

> . . . . .

74    This was not simply a situation where a party received reasonable professional advice as to the viability of a defence which turned out to be incorrect. It was also a situation where CNCL, as a party to a contract, was, among other things, under a duty to convey an offer to settle to Kansa and did not do so at the relevant time. While the former is a question of judgment the latter is not; it is a breach of contract: *Pelky v. Hudson Bay Insurance Co.; McKitrick, Erickson, Jones (Third Party)* (1981), 35 O.R. 2nd 97 (Ont. H.C.). CNCL's promise to keep Kansa apprised of significant developments in the litigation was the *quid pro quo* which led Kansa to acquiescence in the unusual reporting arrangement. The conduct described by the trial judge amounted to a serious breach of the contract and was mischaracterized by him as a question of judgment. Even if it is going too far to say that CNCL breached the duty of good faith it owed to Kansa, it does not follow that conduct which falls short of bad faith

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

will result in relief against forfeiture: See *Saskatchewan River Bungalows Ltd. v. Maritime Life Assurance Co.*, [1994] 2 S.C.R. 490. A party who is under a duty of good faith may not exercise its judgment without taking into consideration the interests of the party to whom the duty is owed: See D.S. Ferguson, "Conflict between the Insured and Insurer: An Analysis Of Recent Canadian Cases" (1990), 12 Advocates' Q. 129 at 145-46 and 151; *Crisci v. Security Insurance Co. of New Haven*, 58 Cal. Rptr. 13 (U.S. 1967) (Cal. S.C.) at p. 16; *Gruenberg v. Aetna Insurance Co.*, 108 Cal. Rptr. 480 (U.S. 1973). Doody did not do this. Doody breached CNCL's duty of co-operation and Kansa's right to control the litigation. As indicated by the trial judge, he failed to take into account considerations which he ought to have taken into account.

*2. Effect of the Breach on the Insurer*

75    Mackinnon J.A., speaking for the Court in *Canadian Equipment Sales & Service Co. v. Continental Insurance Co.* (1975), 59 D.L.R. (3d) 333 (Ont. C.A.), stated, at p. 16:

> Section 103 is an ameliorating clause. It is not to be used to allow contracts entered into in good faith to be broken with a careless disregard for the rights of the insurer so as to cause actual or potential injury to the insurer's position.

76    The trial judge did not find that Doody's conduct was a breach of the policy by CNCL, and as a result he did not make a definite finding concerning the effect of Doody's conduct on Kansa. Referring to what Doody might or might not have done, the trial judge commented, however, at p. 95 of his reported reasons, "[i]t is open to question whether it would have influenced the course of events."

77    The trial judge did, however, review the evidence of Nepveu and address the question of what Kansa might have done at p. 98 of his reasons. Nepveu testified that he would have acted differently if he had been kept advised of significant developments in the litigation and that he would have put a cap on Kansa's liability by invoking the settlement clause. The trial judge was of the opinion that Nepveu's evidence was *ex post facto* wisdom. He stated:

> As a responsible corporate officer, he must entertain some concern for the interests of his company. He must contend at some disadvantage because of that concern, with the insidious and pervasive element which attends almost every trial, the discernment conferred by hindsight. For a judge whose only interest in the outcome of the trial is in giving proper effect to the law and the evidence and who by precept and experience should be constantly on guard against it, such discernment is an ever present danger. *For a witness who is not disinterested in the outcome*, it is a danger of such magnitude as to be formidable indeed. (emphasis added.)

78    The trial judge's comments ignore the fact that, at the time of trial, Nepveu was no longer an employee of Kansa and he was not, in that sense, an interested party. The trial judge found Nepveu to be an impressive individual who was inherently honest. Nepveu conceded that the clause contained in the policy limiting the amount the insurer would pay is seldom invoked. Nepveu did not say, however, that settlements of a libel action are infrequent. In fact the evidence in this case indicates just the opposite. It is rare, however, for an insured to refuse to agree to a settlement proposed by an insurance company thereby putting the company in the position of having to decide whether or not to invoke the clause. In this case, Kansa had given CNCL notice that it did not intend to renew the policy of insurance by March 1986. There was no commercial incentive for Kansa to continue its relationship with its insured. As a practical matter, it is certainly not obvious that if Kansa had been aware of the extent of the litigation it would have forborne invoking clause 7 which would have limited its liability in relation to the offer to settle which was made in May 1986 for $10,000. The trial judge pointed out that Doody and Block were fully aware of the nature of the case against them and were still confident that it would fail. It was only after the result of the trial became apparent that Kansa complained and, in light of this, he refused to accept Nepveu's evidence. The trial judge's comments had the effect of placing the onus on Kansa to show that it would have acted differently as soon as it received the reporting letter from Doody at the commencement of trial. In the case of relief against forfeiture, the onus is on the insured to show that the insurer suffered no prejudice as a result of the breach: see *Findlay v. Madill* (1979), 28 O.R. 2d 673 at 690 (H.C.) and *Canadian Equipment Sales, supra*, at pp. 15-17. Further, recent jurisprudence involving non-disclosure of information which affects a risk has instead placed the onus on the party who failed to disclose to show that the injured party would not have acted any

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

differently: see by analogy *Hollis v. Birch*, [1995] 4 S.C.R. 634 at 682; and *Rainbow Industrial Caterers Ltd. v. Canadian National Railway Co.*, [1991] 3 S.C.R. 3 at 14-17.

79     There was ample evidence before the trial judge to suggest that Kansa was prejudiced by CNCL's failure to report on significant developments in the litigation. At the very least, Kansa lost the opportunity to get out of the litigation for a modest amount prior to the trial in 1986. Once the trial began, the May 1996 offer of settlement no longer existed. It was only after the trial began that Kansa received a full report. After the trial began, it would have cost Kansa considerably more to settle the litigation, and its inactivity at that point cannot be taken as conclusive proof that it would not have acted on the offer to settle in May. In a similar vein, the fact that Block and Doody were confident that the trial would be won does not mean that Kansa would have forborne invoking clause 7 limiting its liability. After the trial was lost, Block and Doody were equally confident that an appeal would succeed. Despite this, the notice of appeal was not filed at Kansa's request. It was up to Kansa to decide whether it wished to file a notice of appeal and to continue the litigation. Kansa made it clear that, in filing a notice of appeal, CNCL was not acting at the request of Kansa.

80     The effect of CNCL's breach on Kansa was to deprive Kansa of the opportunity to settle the litigation and to control the defence of the action. Having regard to this, the onus was on CNCL to show that Kansa would not have acted differently bearing in mind the clause limiting liability and bearing in mind Kansa's conduct with regard to the appeal as well as during the trial.

**The Third Party Claims**

*1. Tory, Tory, Deslauriers & Binnington*

81     The appellant submits that Tory, Tory had an obligation to report on the progress of the Teskey claim directly to Kansa instead of through CNCL or, at the very least, that the law firm was obliged to confirm its understanding that this was the arrangement. I have already indicated that there was ample evidence to support the finding of the trial judge that the arrangement was that Block was to report directly to CNCL who would keep Kansa advised of significant developments in the litigation. The trial judge rejected the submission that Block was under any obligation to confirm the arrangement or to monitor the nature or extent of the reporting which Doody was doing. The trial judge did not misapprehend the evidence, ignore relevant evidence or make any error in making this finding and it must be affirmed.

82     The appellant also alleged that Block failed to pass on an offer to settle made in May 1996 to Doody, the broker or the insurer, and that the trial judge found this to be the case. The trial judge found at p. 87 of his reported reasons:

> In May of 1986, in the course of examinations for discovery, there was an offer to settle for something on the order of $10,000 including costs, to be accompanied by what Doody referred to as an acknowledgment of guilt. This offer was not reported to the broker.

83     The trial judge's comments indicate that he found that Doody was aware of the offer but did not report it to the broker. The trial judge also found, at p. 102 of his reasons, that any failures in reporting were as between Doody and Kansa, through the broker. There is no criticism of Block's reporting to CNCL and, on the hearing of this appeal, CNCL did not challenge or criticize the reporting by the Tory firm to it. The appeal with respect to the third party Tory, Tory is dismissed.

*2. Marsh & McLennan Limited and Paul Bennett*

84     The appellant also submits that the trial judge erred in finding that Bennett and his employer Marsh & McLennan Limited were not negligent in failing to relate promptly and to seek instructions concerning an offer to settle on October 3, 1986. Without going into detail as to the facts, I am of the view that the trial judge did not ignore evidence, err in his appreciation of the evidence or misapply the law and therefore the appeal with respect to this third party is also dismissed.

**The Counterclaim**

1996 CarswellOnt 3227, [1996] I.L.R. I-3369, [1996] O.J. No. 3054, 30 O.R. (3d) 257...

85    Kansa has counterclaimed for the return of the money it paid in defending the Teskey action. It follows from my judgment in the main action that Kansa should not have been held liable to pay accounts with reference to work done after the May 1986 offer to settle which was not conveyed to it. The failure to convey this offer was a breach of both CNCL's duty of co-operation and of Kansa's right to control the litigation by deciding whether or not the action should continue to be defended. Accordingly, I would allow the counterclaim in part and order the return of payment for legal fees with respect to work done after the May 1986 offer to settle.

**Disposition**

86    For the reasons given, I would set aside the order of the trial judge, allow the appeal as between Kansa and CNCL in the main action, and allow the counterclaim to the extent I have indicated. I would dismiss the appeal as between Kansa and the third parties. In the event it is necessary, written submissions may be made as to costs. Otherwise, the appellant is entitled to its costs of the appeal and of trial against CNCL and I would so order. I would also order that the costs of the third parties Tory, Tory and Marsh & McLennan Ltd. be paid by Kansa and that Kansa be entitled to add those costs to its costs against CNCL.

*Appeal allowed.*

---

End of Document Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.

 Copyright © Thomson Reuters Canada Limited or its licensors (excluding individual court documents). All rights reserved.