was ultra vires the borrower, it would be contrary to public policy to allow a personal claim in restitution. Such a question has arisen in the past not only in relation to associations such as the Birkbeck Permanent Benefit Building Society, but also in relation to infants' contracts. Moreover there is a respectable body of opinion that, if such a case arose today, it should still be held that public policy would preclude a personal claim in restitution, though not of course by reference to an implied contract. That was the opinion expressed by Leggatt L.J. in the Court of Appeal in the present case (see [1994] 1 W.L.R. 938, 952E-F), as it had been by Hobhouse J.; and the same view has been expressed by Professor Birks (see *An Introduction to the Law of Restitution* (1985), at p. 374). I myself incline to the opinion that a personal claim in restitution would not indirectly enforce the ultra vires contract, for such an action would be unaffected by any of the contractual terms governing the borrowing, and moreover would be subject (where appropriate) to any available restitutionary defences. If my present opinion were to prove to be correct then *Sinclair v. Brougham* will fade into history. If not, then recourse can at least be had to *Sinclair v. Brougham* as authority for the proposition that, in such circumstances, the lender should not be without a remedy. Indeed, I cannot think that English law, or equity, is so impoverished as to be incapable of providing relief in such circumstances. Lord Wright, who wrote in strong terms (see [1938] C.L.J. 305) endorsing

- 10 -

the just result in *Sinclair v. Brougham,* would turn in his grave at any such suggestion. Of course, it may be necessary to reinterpret the decision in that case to provide a more satisfactory basis for it: indeed one possible suggestion has been proposed by Professor Birks (see his *An Introduction to the Law of Restitution,* pp. 396 et seq.). But for the present the case should in my opinion stand, though confined in the manner I have indicated, as an assertion that those who are caught in the trap of advancing money under ultra vires borrowing contracts will not be denied appropriate relief.

<u>The availability of an equitable proprietary claim in the present case</u>

Having put *Sinclair v. Brougham* on one side as providing no authority that a resulting trust should be imposed in the facts of the present case. I turn to the question whether, as a matter of principle, such a trust should be imposed, the Bank's submission being that such a trust arose at the time when the sum of £2.5m. was received by the Council from the Bank.

As my noble and learned friend Lord Browne-Wilkinson observes, it is plain that the present case falls within neither or the situations which are traditionally regarded as giving rise to a resulting trust, viz. (1) voluntary payments by A to B. or for the purchase of property in the name of B or in his and A's joint names, where there is no presumption of advancement or evidence of intention to make an out and out gift; or (2) property transferred to B on an express trust which does not exhaust the whole beneficial interest. The question therefore arises whether resulting trusts should be extended beyond such cases to apply in the present case, which I shall treat as a case where money has been paid for a consideration which fails.

In a most interesting and challenging paper published in *Equity: Contemporary Legal Developments* (1992 ed. Goldstein). Professor Birks has argued for a wider role for the resulting trust in the field of restitution, and specifically for its availability in cases of mistake and failure of consideration. His thesis is avowedly experimental, written to test the temperature or the water. I feel bound to respond that the temperature of the water must be regarded as decidedly cold: see. e.g., Professor Burrows in [1995] R.L.R. 15. and Mr. W.J. Swadling in (1996) 16 Legal Studies 133.

In the first place, as Lord Browne-Wilkinson points out, to impose a resulting trust in such cases is inconsistent with the traditional principles of trust law. For on receipt of the money by the payee it is to be presumed that (as in the present case) the identity of the money is immediately lost by mixing with other assets of the payee, and at that lime the payee has no knowledge of the facts giving rise to the failure of consideration. By the time that those facts come to light, and the conscience of the payee may thereby be affected, there will therefore be no identifiable fund to which a trust can attach. But there are other difficulties. First, there is no general rule that the property in money paid under a void contract does not pass to the payee: and it is difficult to escape the conclusion that, as a general rule, the beneficial

- 11 -

interest to the money likewise passes to the payee. This must certainly be the case where the consideration for the payment fails after the payment is made, as in cases of frustration or breach of contract: and there appears to be no good reason why the same should not apply in cases where, as in the present case, the contract under which the payment is made is void ab initio and the consideration for the payment therefore fails at the time of payment. It is true that the doctrine of mistake might be invoked where the mistake is fundamental in the orthodox sense of that word. But that is not the position in the present case: moreover the mistake in the present case must be

classified as a mistake of law which, as at the law at present stands, creates its own special problems. No doubt that much-criticised doctrine will fall to be reconsidered when an appropriate case occurs: but I cannot think that the present is such a case, since not only has the point not been argued but (as will appear) it is my opinion that there is any event jurisdiction to award compound interest in the present case. For all of these reasons I conclude, in agreement with my noble and learned friend, that there is no basis for holding that a resulting trust arises in cases where money has been paid under a contract which is ultra vires and therefore void ab initio. This conclusion has the effect that all the practical problems which would flow from the imposition of a resulting trust in a case such as the present, in particular the imposition upon the recipient of the normal duties of trustee, do not arise. The dramatic consequences which would occur are detailed by Professor Burrows in his article on *Swaps and the Friction between Common Law and Equity* in [1995] R.L.R. 15, 27: the duty to account for profits accruing from the trust property; the inability of the payee to rely upon the defence of change of position: the absence of any limitation period: and so on. Professor Burrows even goes so far as to conclude that the action for money had and received would be rendered otiose in such cases, and indeed in all cases where the payer seeks restitution of mistaken payments. However, if no resulting trust arises, it also follows that the payer in a case such as the present cannot achieve priority over the payee's general creditors in the event of his insolvency - a conclusion which appears to me to be just.

For all these reasons I conclude that there is no basis for imposing a resulting trust in the present case, and I therefore reject the Bank's submission that it was here entitled to proceed by way of an equitable proprietary claim. I need only add that, in reaching that conclusion, I do not find it necessary to review the decision of Goulding J. in *Chase Manhattan Bank N.A. v. Israel-British Bank (London) Ltd.* [1981] Ch. 105.

Interest

It is against that background that I turn to consider the question of compound interest. Here there are three points which fall to be considered. These are (1) whether the court had jurisdiction to award compound interest; (2) if so, whether it should have exercised its jurisdiction to make such an award in the present case; and (3) from what date should such an award of compound interest run, if made.

- 12 -

It is common ground that in a case such as the present there is no

jurisdiction to award compound interest at common law or by statute. The central question in the present case is therefore whether there is jurisdiction in equity to do so. It was held below, on the basis that the Bank was entitled to succeed not only in a personal claim at common law but also in a proprietary claim in equity, that there was jurisdiction in equity to make an order that the Council should pay compound interest on the sum adjudged due. It was that jurisdiction which was exercised by Hobhouse J., whose decision on the point was not challenged before the Court of Appeal, on the basis that *Sinclair v. Brougham* [1914] A.C. 398 provided binding authority that a proprietary claim was available to the Bank in this case. However since, in my opinion. *Sinclair v. Brougham* provides no such authority, and no proprietary claim is available to the Bank, the question now arises whether the equitable jurisdiction to award compound interest may nevertheless be exercised on the facts of the present case.

I wish however to record that Hobhouse J. was in no doubt that, if he had jurisdiction to do so, he should award compound interest in this case. He said (see [1994] 4 All E.R. at p. 955):

> "Anyone who lends or borrows money on a commercial basis receives or pays interest periodically and if that interest is not paid it is compounded. ... I see no reason why I should deny the plaintiff a complete remedy or allow the defendant arbitrarily to retain part of the enrichment which it has unjustly enjoyed."

With that reasoning I find myself to be in entire agreement. The Council has had the use of the Bank's money over a period of years. It is plain on the evidence that, if it had not had the use of the Bank's money, it would (if free to do so) have borrowed the money elsewhere at compound interest. It has to that extent profited from the use of the Bank's money. Moreover, if the Bank had not advanced the money to the Council, it would itself have employed the money on similar terms in its business. Full restitution requires that, on the facts of the present case, compound interest should be awarded. having regard to the commercial realities of the case. As the judge said, there is no reason why the Bank should be denied a complete remedy.

It follows therefore that everything depends on the scope of the equitable jurisdiction. It also follows, in my opinion, that if that jurisdiction does not extend to apply in a case such as the present. English law will be revealed as incapable of doing full justice.

It is right that I should record that the scope of the equitable jurisdiction was not explored in depth in the course of argument before the

Appellate Committee, in which attention was concentrated on the question whether a proprietary claim was available to the Bank in the circumstances of the present case. In other circumstances, it might well have been appropriate to invite further argument on the point. However, since it was indicated to

- 13 -

the Committee that the Council was not prepared to spend further money on the appeal, whereupon it took no further part in the proceedings, and since the relevant authorities had been cited to the Committee, I am satisfied that it is appropriate that the point should now be decided by your Lordships' House.

I wish also to record that I have had the opportunity of reading in draft the speech of my noble and learned friend Lord Woolf, and that I find myself to be in agreement with his reasoning and conclusion on the point. Even so, I propose to set out in my own words my reasons for reaching the same conclusion.

I shall begin by expressing two preliminary thoughts. The first is that, where the jurisdiction of the court derives from common law or equity, and is designed to do justice in cases which come before the courts, it is startling to be faced by an argument that the jurisdiction is so restricted as to prevent the courts from doing justice. Jurisdiction of that kind should as a matter of principle be as broad as possible, to enable justice to be done wherever necessary: and the relevant limits should be found not in the scope of the jurisdiction but in the manner of its exercise as the principles are worked out from case to case. Second, I find it equally startling to find that the jurisdiction is said to be limited to certain specific categories of case. Where jurisdiction is founded on a principle of justice. I would expect that the categories of case where it is exercised should be regarded not as occupying the whole field but rather as emanations of the principle, so that the possibility of the jurisdiction being extended to other categories of case is not foreclosed.

It is with these thoughts in mind that I turn to the equitable jurisdiction to award interest. In *President of India v. La Pintada Compania Navigacion S.A* [1985] A.C. 104 Lord Brandon of Oakbrook, delivering a speech with which the other members of the Appellate Committee agreed, described the equitable jurisdiction in the following words, at p. 116:

> "Chancery courts had further regularly awarded interest, including not only simple interest but also compound interest, when they thought that justice so demanded, that is to say in cases where

money had been obtained and retained by fraud, or where it had been withheld or misapplied by a trustee or anyone else in a fiduciary position."

Later however he said, also at p. 116, that Courts of Chancery only awarded compound, as distinct from simple, interest in two special classes of case.

With great respect I myself consider that, if the jurisdiction to award compound interest is available where justice so demands, it cannot be so confined as to exclude any class of case simply because that class of case has not previously been recognised as falling within it. I prefer therefore to read the passage quoted from Lord Brandon's speech as Mason C.J. and Wilson J. read it in *Hungerfords v. Walker* (1988) 171 C.L.R. 125, 148, as providing

- 14 -

examples (i.e., not exclusive examples) of the application of the underlying principle of justice.

Now it is true that the reported cases on the exercise of the equitable jurisdiction, which are by no means numerous, are concerned with cases of breach of duty by trustees and other fiduciaries. In *Attorney-General v. Alford* (1855) 4 De G.M. & G. 843, for example, which came before Lord Cranworth L.C., the question arose whether an executor and trustee, who had for several years retained in his hands trust funds which he ought to have invested, should be chargeable with interest in excess of the ordinary rate of simple interest. It was held that he should not be chargeable at a higher rate. Lord Cranworth recognised that the court might in such a case impose interest at a higher rate, or even compound interest. But he observed that if so the court does not impose a penalty on the trustee. He said, at p. 851:

> "What the court ought to do, I think, is to charge him only with the interest which he has received, or which it is justly entitled to say he ought to have received, or which it is so fairly to be presumed that he did receive that he is estopped from saying that he did not receive it."

In cases of misconduct which benefits the executor, however, the court may fairly infer that he used the money in speculation, and may, on the principle 'In odium spoliatoris omnia praesumuntur' assume that he made a higher rate, if that was a reasonable conclusion.

Likewise in *Burdick v. Garrick* (1876) L.R. 5 Ch. App. 233, where a fiduciary agent held money of his principal and simply paid it into his bank account, it was held that he should be charged with simple interest only. Lord Hatherley L.C., at pp. 241-242, applied the principle laid down in *Attorney-General v. Alford,* namely that:

> "... the Court does not proceed against an accounting party by way of punishing him for making use of the Plaintiff's money by directing rests, or payment of compound interest, but proceeds upon this principle, either that he has made, or has put himself in such a position that he is to be presumed to have made, 5 per cent., or compound interest, as the case may be .... If the Court finds . . . that the money received has been invested in an ordinary trade, the whole course of decision has tended to this, that the Court presumes that the party against whom relief is sought has made that amount of profit which persons ordinarily do make in trade, and in those cases the Court directs rests to be made."

For a more recent case in which the equitable jurisdiction was invoked, see *Wallersteiner v. Moir* (No.2) [1975] Q.B. p. 373.

- 15 -

From these cases it can be seen that compound interest may be awarded in cases where the defendant has wrongfully profited, or may be presumed to have so profited, from having the use of another person's money. The power to award compound interest is therefore available to achieve justice in a limited area of what is now seen as the law of restitution, viz. where the defendant has acquired a benefit through his wrongful act (see Goff and Jones, *Law of Restitution,* 4th ed., pp. 632 et seq.; Birks, *Introduction to the Law of Restitution,* pp. 313 et seq.; Burrows, *Law of Restitution,* pp. 403 et seq.) The general question arises whether the jurisdiction must be kept constrained in this way, or whether it may be permitted to expand so that it can be exercised to ensure that full justice can be done elsewhere in that rubric of the law. The particular question is whether the jurisdiction can be exercised in a case such as the present in which the Council has been ordered to repay the balance of the Bank's money on the ground of unjust enrichment, in a personal claim at common law.

At this stage of the argument I wish to stress two things. The first is that it is plain that the jurisdiction may, in an appropriate case, be exercised

in the case of a personal claim in equity. In both *Alford's* case and *Burdick v. Garrick,* the cases were concerned with the taking of an account, and an order for payment of the sum found due. In each case the accounting party was a fiduciary, who held the relevant funds on trust. But the jurisdiction is not limited to cases in which a proprietary claim is being made and an award of interest is sought as representing the fruits of the property so claimed. On the contrary, the jurisdiction is in personam, and moreover an award of interest may be made not only where the trustee or fiduciary has made a profit, but also where it is held that he ought to have made a profit and has not done so. Furthermore in my opinion the decision of the Court of Appeal in *In re Diplock* [1948] Ch. 465 provides no authority for the proposition that there is no jurisdiction to award compound interest where the claim is a personal claim. It is true that in that case the Court of Appeal decided not to award interest against a number of charities which had been held liable, in a personal claim in equity, to repay legacies which had been paid to them in error. But in so doing the Court simply followed an old decision of Lord Eldon in *Gittins v. Steele* (1818) 1 Swanst. 199, 200, in which his judgment was as follows:

> "Where the fund out of which the legacy ought to have been paid is in the hands of the Court making interest, unquestionably interest is due. If a legacy has been erroneously paid to a legatee who has no farther property in the estate, in recalling that payment I apprehend that the rule of the court is not to charge interest; but if the legatee is entitled to another fund making interest in the hands of the court, justice must be done out of his share."

The Court of Appeal in *In re Diplock* can have had no desire to make an award of interest against the charities in the personal claim against them in that case, and they must have been very content to follow uncritically this old

- 16 -

"rule of court." But it does not follow that me rule or court went to the jurisdiction of the court. It is more likely that it represented an established practice which, as Lord Eldon's brief judgment indicates, was subject to exceptions. In any event the Court of Appeal was there concerned only with simple interest: and in cases of the kind there under consideration, it seems unlikely that any question of an award of compound interest would ever have arisen.

I must confess that I find the reasoning which would restrict the