On 17 December 1993 the Court of Appeal (Dillon, Leggatt and Kennedy L.JJ.) dismissed the local authority's appeal and allowed the cross-appeal by the Bank: (1994) 1 WLR 938. It held that the Bank was entitled to recover the balance at law as money had and received (Dillon L.J., at p. 946: Leggatt L.J., at p. 953E). It also held that the Bank was entitled to recover the balance in equity on the ground that the local authority held the upfront payment on a resulting trust and was therefore personally liable, as trustee, to repay the bank (Dillon L.J., at p. 947A-E: Leggatt L.J., at p. 953G). The Court of Appeal further held the local authority liable to pay compound interest on the balance from time to time outstanding as from the date of receipt of the upfront payment. The ability of the Court to award compound, as opposed to simple, interest was founded on the equitable jurisdiction to award compound interest as against a trustee or other person owing fiduciary duties who is personally accountable and who has made use of the plaintiff's money: Dillon L.J., at pp. 949B-951E: Leggatt L.J., at pp. 953H-955.A.

The local authority now accepts that it is personally liable to repay the balance to the Bank. The local authority appeals to your Lordships only against the award of compound interest. But, as will appear, notwithstanding the narrow scope of the appeal it raises profound questions for decision by your Lordships.

- 23 -

Compound Interest in Equity

It is common ground that in the absence of agreement or custom the court has no jurisdiction to award compound interest either at law or under section 35A of the Supreme Court Act, 1981. It is also common ground that in certain limited circumstances courts of equity can award compound interest. Mr. Philipson, for the local authority, contends that compound interest can only be ordered on a claim against a trustee or other person owing fiduciary duties who in breach of such duty has used trust monies in his own trade. He contends that compound interest cannot be awarded in this case since (a) the local authority never held the upfront payment as a trustee or in a fiduciary capacity and (b) in any event the local authority did not use the upfront payment in its trade. Mr. Sumption, for the Bank, contends that compound interest can be awarded in equity whenever the defendant is liable to disgorge a benefit received whether or not he is a trustee or a fiduciary. Alternatively, Mr. Sumption contends that the local authority did receive the upfront payment as a trustee and as such is in equity accountable for the benefits it has

received, including the benefit of not having to borrow £2.5m. on the market at compound interest.

In the absence of fraud Courts of Equity have never awarded compound interest except against a trustee or other person owing fiduciary duties who is accountable for profits made from his position. Equity awarded simple interest at a time when courts of law had no right under common law or statute to award any interest. The award of compound interest was restricted to cases where the award was in lieu of an account of profits improperly made by the trustee. We were not referred to any case where compound interest had been awarded in the absence of fiduciary accountability for a profit. The principle is clearly stated by Lord Hatherley L.C. in *Burdick v. Garrick,* L.R. 5 Ch. App. 233, 241:

> "The court does not proceed against an accounting party by way of punishing him for making use of the plaintiff's money by directing rests, or payment of compound interest, but proceeds upon this principle, either that he has made, or has put himself into such a position as that he is to be presumed to have made, 5 per cent., or compound interest, as the case may be."

The principle was more fully stated by Buckley L.J. in *Wallersteiner v. Moir (No. 2)* [1975] Q.B. 373, 397.

> "Where a trustee has retained trust money in his own hands, he will be accountable for the profit which he has made or which he is assumed to have made from the use of the money. In *Attorney-General v. Alford,* 4 De G.M. & G. 843, 851 Lord Cranworth L.C. said:

- 24 -

> "What the court ought to do, I think, is to charge him only with the interest which he has received, or which it is justly entitled to say he ought to have received, or which it is so fairly to be presumed that he did receive that he is estopped from saying that he did not receive it.'

> "This is an application of the doctrine that the court will not allow a trustee to make any profit from his trust. The defaulting trustee is normally charged with simple interest only, but if it is established that

he has used the money in trade he may be charged compound interest . . . The justification for charging compound interest normally lies in the fact that profits earned in trade would be likely to be used as working capital for earning further profits. Precisely similar equitable principles apply to an agent who has retained monies of his principal in his hands and used them for his own purposes: *Burdick v. Garrick*."

In *President of India v. La Pintada Compania Navigacion S.A.* [1985] A.C. 104. 116 Lord Brandon (with whose speech the rest of their Lordships agreed) considered the law as to the award of interest as at that date in four separate areas. His third area was equity, as to which he said this :

"Thirdly, the area of equity. The Chancery courts, again differing from the common law courts, had regularly awarded simple interest as ancillary relief in respect of equitable remedies, such as specific performance, rescission and the taking of an account. Chancery courts had further regularly awarded interest, including not only simple interest but also compound interest, when they thought that justice so demanded, that is to say in cases where money had been obtained and retained by fraud, or where it had been withheld or misapplied by a trustee or anyone else in a fiduciary position. . . Courts of Chancery only in two special classes of case, awarded compound, as distinct from simple, interest."

These authorities establish that in the absence of fraud equity only awards compound (as opposed to simple) interest against a defendant who is a trustee or otherwise in a fiduciary position by way of recouping from such a defendant an improper profit made by him. It is unnecessary to decide whether in such a case compound interest can only be paid where the defendant has used trust monies in his own trade or (as I tend to think) extends to all cases where a fiduciary has improperly profited from his trust. Unless the local authority owed fiduciary duties to the Bank in relation to the upfront payment, compound interest cannot be awarded.

Was there a Trust? The Argument for the Bank in Outline

The Bank submitted that, since the contract was void, title did not pass at the date of payment either at law or in equity. The legal title of the Bank

- 25 -

was extinguished as soon as the money was paid into the mixed account,

whereupon the legal title became vested in the local authority. But, it was argued, this did not affect the <u>equitable</u> interest, which remained vested in the Bank ("the retention of title point"). It was submitted that whenever the legal interest in property is vested in one person and the equitable interest in another, the owner of the legal interest holds it on trust for the owner of the equitable title: "the separation of the legal from the equitable interest necessarily imports a trust." For this latter proposition ("the separation of title point") the Bank, of course, relies on *Sinclair v. Brougham* [1914] A.C. 598 and *Chase Manhattan Bank* [1981] Ch. 105.

The generality of these submissions was narrowed by submitting that the trust which arose in this case was a resulting trust "not of an active character": see *per* Viscount Haldane L.C. in *Sinclair v. Brougham,* at p. 421. This submission was reinforced, after completion of the oral argument, by sending to your Lordships Professor Peter Birks' paper *'Restitution and Resulting Trusts," Goldstein, Equity: Contemporary Legal Developments* (1992). p. 335. Unfortunately your Lordships have not had the advantage of any submissions from the local authority on this paper, but an article by William Swadling "A new role for resulting trusts?" 16 Legal Studies 133 puts forward counter arguments which I have found persuasive.

It is to be noted that the Bank did not found any argument on the basis that the local authority was liable to repay either as a constructive trustee or under the *in personam* liability of the wrongful recipient of the estate of a deceased person established by *In re Diplock* [1948] Ch. 465. I therefore do not further consider those points.

The Breadth of the Submission

Although the actual question in issue on the appeal is a narrow one, on the arguments presented it is necessary to consider fundamental principles of trust law. Does the recipient of money under a contract subsequently found to be void for mistake or as being *ultra vires* hold the monies received on trust even where he had no knowledge at any relevant time that the contract was void? If he does hold on trust, such trust must arise at the date of receipt or, at the latest, at the date the legal title of the payer is extinguished by mixing monies in a bank account: in the present case it does not matter at which of those dates the legal title was extinguished. If there is a trust two consequences follow:

> (a) the recipient will be personally liable, regardless of fault, for any subsequent payment away of the monies to third parties even though, at the date of such payment, the "trustee" was

still ignorant of the existence of any trust: see Burrows *Swaps and the Friction between Common Law and Equity* [1995] RLR 15;

- 26 -

    (b) as from the date of the establishment of the trust (i.e. receipt or mixing of the monies by the "trustee") the original payer will have an equitable proprietary interest in the monies so long as they are traceable into whomsoever's hands they come other than a purchaser for value of the legal interest without notice.

Therefore, although in the present case the only question directly in issue is the personal liability of the local authority as a trustee, it is not possible to hold the local authority liable without imposing a trust which, in other cases, will create property rights affecting third parties because monies received under a void contract are "trust property."

The Practical Consequences of the Bank's Argument

    Before considering the legal merits of the submission, it is important to appreciate the practical consequences which ensue if the Bank's arguments are correct. Those who suggest that a resulting trust should arise in these circumstances accept that the creation of an equitable proprietary interest under the trust can have unfortunate, and adverse, effects if the original recipient of the monies becomes insolvent: the monies, if traceable in the hands of the recipient, are trust monies and not available for the creditors of the recipient. However, the creation of an equitable proprietary interest in monies received under a void contract is capable of having adverse effects quite apart from insolvency. The proprietary interest under the unknown trust will, quite apart from insolvency, be enforceable against any recipient of the property other than the purchaser for value of a legal interest without notice.

    Take the following example, T (the transferor) has entered into a commercial contract with R1 (the first recipient). Both parties believe the contract to be valid but it is in fact void. Pursuant to that contract:

    (i) T pays £1m. to R1 who pays it into a mixed bank account:

    (ii) T transfers 100 shares in X company to R1. who is registered as a shareholder.

Thereafter R1 deals with the money and shares as follows:

> (iii) R1 pays £50,000 out of the mixed account to R2 otherwise than for value; R2 then becomes insolvent, having trade creditors who have paid for goods not delivered at the time of the insolvency.
>
> (iv) R1 charges the shares in X company to R3 by way of equitable security for a loan from R3.

If the Bank's arguments are correct, R1 holds the £1m. on trust for T once the money has become mixed in R1's bank account. Similarly R1

- 27 -

becomes the legal owner of the shares in X company as from the date of his registration as a shareholder but holds such shares on a resulting trust for T. T therefore has an equitable proprietary interest in the monies in the mixed account and in the shares.

T's equitable interest will enjoy absolute priority as against the creditors in the insolvency of R2 (who was not a purchaser for value) provided that the £50,000 can be traced in the assets of R2 at the date of its insolvency. Moreover, if the separation of title argument is correct, since the equitable interest is in T and the legal interest is vested in R2, R2 also holds as trustee for T. In tracing the £50,000 in the bank account of R2, R2 as trustee will be treated as having drawn out "his own" monies first, thereby benefitting T at the expense of the secured and unsecured creditors of R2. Therefore in practice one may well reach the position where the monies in the bank account of R2 in reality reflect the price paid by creditors for goods not delivered by R2: yet, under the tracing rules, those monies are to be treated as belonging in equity to T.

So far as the shares in the X company are concerned. T can trace his equitable interest into the shares and will take in priority to R3, whose equitable charge to secure his loan even though granted for value will pro tanto be defeated.

All this will have occurred when no one was aware, or could have been aware, of the supposed trust because no one knew that the contract was void.

I can see no moral or legal justification for giving such priority to the right of T to obtain restitution over third parties who have themselves not been enriched, in any real sense, at T's expense and indeed have had no dealings with T. T paid over his money and transferred the shares under a supposed valid contract. If the contract had been valid, he would have had purely personal rights against Rl. Why should he be better off because the contract is void?

My Lords, wise judges have often warned against the wholesale importation into commercial law of equitable principles inconsistent with the certainty and speed which are essential requirements for the orderly conduct of business affairs: see *Barnes v. Addy* (1874) L.R. 9 Ch.App. 244. 251, 255; *Scandinavian Trading Tanker Co. A.B. v. Flota Petrolera Ecuatoriana* [1983] 2 A.C. 694, 703-704. If the Bank's arguments are correct, a businessman who has entered into transactions relating to or dependent upon property rights could find that assets which apparently belong to one person in fact belong to another; that there are "off-balance-sheet" liabilities of which he cannot be aware; that these property rights and liabilities arise from circumstances unknown not only to himself but also to anyone else who has been involved in the transactions. A new area of unmanageable risk will be introduced into commercial dealings. If the due application of equitable

- 28 -

principles forced a conclusion leading to these results, your Lordships would be presented with a formidable task in reconciling legal principle with commercial common sense. But in my judgment no such conflict occurs. The resulting trust for which the Bank contends is inconsistent not only with the law as it stands but with any principled development of it.

The Relevant Principles of Trust Law

>   (i) Equity operates on the conscience of the owner of the legal interest. In the case of a trust, the conscience of the legal owner requires him to carry out the purposes for which the property was vested in him (express or implied trust) or which the law imposes on him by reason of his unconscionable conduct (constructive trust).

>   (ii) Since the equitable jurisdiction to enforce trusts depends upon the conscience of the holder of the legal interest being affected, he cannot be a trustee of the property if and so long as he is

ignorant of the facts alleged to affect his conscience, i.e. until he is aware that he is intended to hold the property for the benefit of others in the case of an express or implied trust, or, in the case of a constructive trust, of the factors which are alleged to affect his conscience.

(iii) In order to establish a trust there must be identifiable trust property. The only apparent exception to this rule is a constructive trust imposed on a person who dishonestly assists in a breach of trust who may come under fiduciary duties even if he does not receive identifiable trust property.

(iv) Once a trust is established, as from the date of its establishment the beneficiary has, in equity, a proprietary interest in the trust property, which proprietary interest will be enforceable in equity against any subsequent holder of the property (whether the original property or substituted property into which it can be traced) other than a purchaser for value of the legal interest without notice.

These propositions are fundamental to the law of trusts and I would have thought uncontroversial. However, proposition (ii) may call for some expansion. There are cases where property has been put into the name of X without X's knowledge but in circumstances where no gift to X was intended. It has been held that such property is recoverable under a resulting trust: *Birch v. Blagrave* (1755) Amb. 264: *Childers v. Childers* (1875) 1 De G. & J. 482: *In re Vinogradoff* [1935] W.N. 68: *In re Muller* [1953] N.Z.L.R. 879. These cases are explicable on the ground that, by the time action was brought. X or his successors in title have become aware of the facts which gave rise to a resulting trust: his conscience was affected as from the time of such

- 29 -

discovery and <u>thereafter</u> he held on a resulting trust under which the property was recovered from him. There is, so far as I am aware, no authority which decides that X was a trustee, and therefore accountable for his deeds, at any time before he was aware of the circumstances which gave rise to a resulting trust.

Those basic principles are inconsistent with the case being advanced by the Bank. The latest time at which there was any possibility of identifying the "trust property" was the date on which the monies in the mixed bank account of the local authority ceased to be traceable when the local authority's