. . .

> "21. <u>The equitable jurisdiction:</u> The equitable jurisdiction to award
> interest and to fix the rate at which it should be paid is extensive. It
> includes, for example, the power to order the payment of interest
> where money has been obtained or withheld by fraud or where it has
> been misapplied by someone in a fiduciary position. In such cases the
> court has an inherent power to order the payment of interest at
> whatever rate is equitable in the circumstances and may direct that
> such interest be compounded at appropriate intervals. Our view is that
> it would not be appropriate to impose statutory controls upon the
> exercise of the equitable jurisdiction to award interest, beyond those
> controls that are already in existence. We invited criticisms of this
> view in our working paper but no one disagreed with us. Accordingly,
> we make no recommendations for change in relation to the equitable
> jurisdiction."

   From what I have said already it is clear that I agree with the statements in those paragraphs in so far as the equitable jurisdiction to award interest is regarded as "ancillary relief" but not in so far as they suggest that it is only equitable remedies in relation to which there can be the ancillary jurisdiction to award interest. The paragraphs are perfectly satisfactory as long as they are not regarded as exhaustive. It has to be remembered that the Law Commission were not intending to make any recommendations as to the equitable interest.

   The fact that the paragraphs accept that compound interest is payable in the case of fraud perhaps suggests that it is not intended to limit the relief to situations which only give an entitlement to an equitable remedy. In many cases of fraud the appropriate remedy will be common law damages. It is

- 50 -

true in the first of the only two cases referred to by the Law Commission. *Johnson v. The King* [1904] A.C. 817, 821, the Privy Council appeared to think that interest was not payable in the case of an overpayment by mistake. However the authority relied on for this conclusion was the decision of *The London, Chatham and Dover Railway Co. v. South Eastern Railway Co.* [1893] A.C. 429. Lord Macnaghten regarded "the law as settled by the judgment" of this House in that case. It is a case to which I will refer later but it was not concerned with the equitable jurisdiction to grant interest, only the common law jurisdiction. What is of interest is what Lord Macnaghten

said as to the power to award interest if there had been fraud. He said:

> "In order to guard against any possible misapprehension of their Lordships' views, they desire to say that, in their opinion, there is no doubt whatever that money obtained by fraud and retained by fraud can be recovered with interest, whether <u>the proceedings be taken in a Court of equity or in a Court of law,</u> or in a Court which has a jurisdiction both equitable and legal, as the Supreme Court of Sierra Leone possesses under the Ordinance of November 10. 1881." (emphasis added)

Lord Macnaghten did not consider that it mattered whether the proceedings were based on a common law or equitable cause of action.

The other case referred to in the Report is *Wallersteiner v. Moir (No. 2)* [1975] Q.B. 373. That case is a clear authority for the existence of an equitable jurisdiction and that it can be exercised where there is breach of a fiduciary duty but the court was not concerned with extent of that jurisdiction. It was accepted by all the members of the Court of Appeal that the jurisdiction was frequently exercised in the case of breach of trust and of a fiduciary duty but there is nothing in the judgments to suggest that the jurisdiction is limited to those situations. Indeed Lord Denning M.R. clearly did not regard it as being so limited. He said, at p. 388:

> "The reason is because a person in a fiduciary position is not allowed to make a profit out of his trust: and, if he does, he is liable to account for that profit or interest in lieu thereof.
>
> "In addition, in equity interest is awarded whenever a wrongdoer deprives a company of money which it needs for use in its business. It is plain that the company should be compensated for the loss thereby occasioned to it. Mere replacement of the money - years later - is by no means adequate compensation, especially in days of inflation. The company should be compensated by the award of interest. That was done by Sir William Page Wood V.-C. (afterwards Lord Hatherley) in one of the leading cases on the subject, *Atwool v. Merryweather* (1867) L.R. 5 Eq. 464n., 468-469. But the question arises: should it be simple interest or compound interest? On general principles I think it should be presumed that the company (had it not

- 51 -

> been deprived of the money) would have made the most beneficial use

> open to it: cf. *Armory v. Delamirie* (1723) 1. Stra. 505. It may be that the company would have used it in its own trading operations: or that it would have used it to help its subsidiaries. Alternatively, it should be presumed that the wrongdoer made the most beneficial use of it. But, whichever it is, in order to give adequate compensation, the money should be replaced at interest with yearly rests, i.e. compound interest."

This was a broader approach than that adopted by Buckley or Scarman L.JJ.

There remains a further case to which I should make reference before leaving the authorities as to the equitable jurisdiction. It is *President of India v. La Pintada Compania Navigacion S.A.* [1985] A.C. 104. This is the leading case as to the common law and statutory jurisdictions to which I will return later. I refer to it for the leading speech of Lord Brandon of Oakbrook with which the other members of the House agreed. Lord Brandon reviewed the different jurisdictions to award interest. While doing so he made the following dicta about the equitable jurisdiction (Lord Brandon also referred to the equitable jurisdiction (pp. 118-121) but he was then dealing with the position as to interest in the Admiralty Court and I do not consider those references are of any help here):

> "Thirdly, the area of equity. The Chancery Courts, again differing from the common law courts, had regularly awarded simple interest as ancillary relief in respect of equitable remedies, such as specific performance, rescission and the taking of an account. Chancery courts had further regularly awarded interest, including not only simple interest but also compound interest, when they thought that justice so demanded, that is to say in cases where money had been obtained and retained by fraud, or where it had been withheld or misapplied by a trustee or anyone else in a fiduciary position.
>
> . . .
>
> "The first point is that neither the Admiralty Court, nor Courts of Chancery, awarded interest, except in respect of moneys for which they were giving judgment. The second point is that the Admiralty Court never, and Courts of Chancery only in two special classes of case, awarded compound, as distinct from simple, interest."

The House had been referred in the course of argument to the report of the Law Commission and I suspect that Lord Brandon restricted the jurisdiction of the courts to award interest to equitable remedies following what was stated in that report. Likewise as to the distinction which he drew between the

jurisdictions to award simple and compound interest. According to the report of argument, counsel did not address the House on the limits of the equitable jurisdiction. Therefore although any statement of Lord Brandon is entitled to

- 52 -

the greatest respect I do not regard these two dicta as indicating that Lord Brandon held a considered opinion inconsistent with my views, which I have set out above. It may well be that he was doing no more than describing the situations where in the past the equitable jurisdiction had been exercised.

The position where the claim is based on a personal equity

Lord Browne-Wilkinson, in his speech, points out that two arguments were not advanced on behalf of the bank. The first is that the local authority should be liable to make the repayments as a constructive trustee. There is no need for me to make any comment about this argument. The second

argument which was not advanced is that the bank was entitled to repayment

because of the existence of a personal equity based on the decision in *In re Diplock* [1948] Ch. 465. This is a point which it is necessary for me to consider because of the decision of Hobhouse J. in *Kleinwort Benson Ltd. v. South Tyneside Metropolitan Borough Council* [1994] 4 All E.R. 972, although the decision in *In re Diplock* dealt with very different circumstances from those which exist here. The court in *In re Diplock* was concerned with the personal equitable liability of a legatee to repay the executors of an estate of a deceased person a sum which was wrongly paid to them out of the estate. In the *Kleinwort Benson* case, Hobhouse J. decided that the existence of a personal equitable cause of action did not create a power to award compound interest. This conclusion is inconsistent with the view which I have expressed that there is a power to award compound interest in the circumstances of this case.

Personal equitable rights are not confined to the situation considered in *In re Diplock*. For example, a personal equitable right to contribution can exist between co-sureties. This is regarded as being an application of an equitable approach to restitution to a situation where the remedy at law is not normally satisfactory. It exists without there having to be any proprietary right which could give rise to the difficulties to which Lord Browne-Wilkinson has referred.

The *Kleinwort Benson* case also involved a local authority which had

entered into a swap transaction which was void. Hobhouse J. distinguished the *Kleinworth Benson* case from the present case because in that case there was no reliance on an equitable proprietary claim for repayment of the sum which had been paid under the void swap contract. In the *Kleinwort Benson* case, the local authority accepted that prima facie they were under a personal liability to make restitution in law and in equity to the bank but argued it was not open to a court to award compound interest where only remedies in personam were established.

Hobhouse J. decided that the local authority's submissions were correct. At pp. 994G-995C he said as follows:

- 53 -

"The position is therefore that if a plaintiff is entitled to a proprietary remedy against a defendant who has been unjustly enriched, the court may but is not bound to order the repayment of the sum with compound interest. If on the other hand the plaintiff is only entitled to a personal remedy which will be the case where, although there was initially a fiduciary relationship and the payer was entitled in equity to treat the sum received by the payee as his, the payer's, money and to trace it, but because of subsequent developments he is no longer able to trace the sum in the hands of the payee, then there is no subject matter to which the rationale on which compound Interest is awarded can be applied. The payee cannot be shown to have a fund belonging to the payer or to have used it to make profits for himself. The legal analysis which is the basis of the award of compound interest is not applicable. (It is possible that in some cases there might be an intermediate position where it could be demonstrated that the fiduciary had, over part of the period, profited from holding a fund as a fiduciary even though he no longer held the fund at the date of trial and that in such a case the court might make some order equivalent to requiring him to account for those profits: but that is not the situation which I am asked to consider in the present case.)

"Although the original equitable right in both situations is the same at the outset, that is to say at the time when the payment was made and received, the two situations do not continue to be the same and are not the same at the time of trial when the remedy comes to be given. The payee no longer has property of the payer. The payer is confined to personal rights and remedies analogous to those recognised

by the common law in the action for money had and received. In such a situation only simple interest can be awarded even though the plaintiff is relying upon a restitutionary remedy. Simple interest was awarded in *Woolwich Building Society v. I.R.C.* [1992] 3 All E.R. 737, [1993] A.C. 70 and in *BP Exploration (Libya) v. Hunt (No. 2)* [1982] 1 All E.R. 925, [1979] 1 W.L.R. 783 and both those cases involved an application of restitutionary principles which carried with them remedies in personam (see also *O'Sullivan v. Management Agency and Music Ltd.* [1985] 3 All E.R. 351, [1985] Q.B. 428.)"

The three cases cited by the judge to support his proposition that simple interest only could be awarded do not in fact assist to determine the question of principle which is at stake here. In both the *Woolwich* and the *BP Exploration* cases, the claim which was advanced was limited to statutory interest. The position as to compound interest was not considered. In the *O'Sullivan* case, it was conceded that in relation to part of the claim compound interest was payable and, in fact, it was awarded. Only simple interest was paid in relation to the balance of the claim, but this was not because of any lack of jurisdiction; it was because it was only appropriate to award simple interest in the circumstances of that case.

- 54 -

If Hobhouse J.'s reasoning is correct, then even if there had been an equitable claim in rem which would justified the award of compound interest, that would cease to be the situation if the right to trace were lost. That this would create an unsatisfactory state of affairs is demonstrated by the contrasting decisions to which the judge came in this case and in the *Kleinwort Benson* case. The power of the court to award compound interest would depend upon circumstances over which the claimant would have no control. This is inconsistent with the commercial realities to which the judge referred in the passage which I have cited from his judgment in this case.

Contrary to the view expressed by Hobhouse J., the rationale on which compound interest is awarded is independent of whether or not there is any property capable of being traced still in the payee's hands. The critical issue is whether, as has happened in this case, the authority was able to make a profit (which would include making a saving in the interest which it had to pay) from the fact it had received a sum of money to which it was not entitled. Even in the case of a claim in rem, the profit is distinct from the traceable property. If this were not the position the payee by returning the property to the payer prior to the proceedings could defeat the right which a

claimant would otherwise have to compound interest.

Hobhouse J. refers to *In re Diplock* in order to identify the distinction between personal and proprietary equitable remedies. He cites a passage from the very long judgment of the Court of Appeal in that case, at p. 521. However, although this is not clear, I would regard that passage as dealing only with equitable <u>proprietary</u> remedies. He also refers to a further passage in the judgment in *In re Diplock*. at p. 517, which he does not cite. He presumably refers to the sentence in the judgment which indicates the view of the Court of Appeal that:

> "... upon their personal claims the appellants are not entitled to any interest. The same may not however be true as regards the claim in rem, at least where the appellants are able to 'trace' their proprietary interest into some specific investment."

It is therefore probable that Hobhouse J. was influenced in coming to his decision by the judgment of the Court of Appeal in *In re Diplock*. However, that judgment provides a shaky foundation for Hobhouse J.'s decision. The passage to which he refers can. and should, in my judgment, be regarded as doing no more than indicating the decision on the merits of the situation which the Court of Appeal was considering in *In re Diplock*. A situation which is very different from that which exists here. There was no commercial relationship between the parties. The overpaid legatees' liability was secondary and they were charities. In those circumstances if they had actually made a profit from the overpayment which could be traced it would have been reasonable to award interest but if they had not it would not have been reasonable to do so. I would draw attention here to the following passage of

- 53 -

the judgment of the Court of Appeal in *In re Diplock* which indicates the Court of Appeal's general approach:

> "Since the original wrong payment was attributable to the blunder of the personal representatives, the right of the unpaid beneficiary is in the first instance against the wrongdoing executor or administrator: and the beneficiary's direct claim in equity against those overpaid or wrongly paid should be limited to the amount which he cannot recover from the party responsible. In some cases the amount will be the whole amount of the payment wrongly made ..." (at p. 503).

I would also draw attention to the only passage of the Court of Appeal's judgment which gives any reason for their conclusion as to interest which is in these terms:

> "We should add that ... in our judgment the respondents are liable under this head of their claim for the principal claimed only and not for any interest. This last result appears to follow from the case of *Gittins v. Steele* (1818) 1 Swan 200, 36 English Reports 356, cited in *Roper* at p. 461, where the language of Lord Eldon L. C. in the case is cited:
>
>> 'If a legacy has been erroneously paid to a legatee who has no farther property in the estate, in recalling that payment I apprehend that the rule of the court is not to charge interest: but if the legatee is entitled to another fund making interest in the hands of the court, justice must be done out of his share.'"

The judgment of Lord Eldon in this case is extremely short. The Court of Appeal has cited the whole of the judgment except the opening sentence which reads:

> "Where the fund out of which the legacy ought to have been paid is in the hands of the Court making interest, unquestionably interest is due."

In fact, interest was therefore ordered to be paid in that case at 4 per cent. The short judgment of Lord Eldon was in proceedings which followed an earlier judgment (reported (1818) 1 Swan 25, 36 English Reports p. 283). Having examined the case in both reports, I find they provide no support for a general proposition that equity could not in an appropriate case award interest in support of a personal equitable claim. The case supports the contrary view. In the circumstances which Lord Eldon is considering, the legatee had as far as one can tell benefited financially from the early payment and, that being so, the decision is merely an example of the fact that if a payee has benefited financially from his being unjustly enriched, an order for interest will be made. It is relevant that as interest had been earned (in the hands of the court), interest was payable.

- 56 -

Before leaving *In re Diplock* it is important to note mat *in re Diplock* was not concerned with whether compound interest was payable: it was