Westdeutsche Landesbank Girozentrale v Islington LBC [1996] UKHL 12 (22 May 1996)

concerned with whether any interest, simple or compound, was payable. The
view that no interest, not even simple, was payable was understandable on the
facts but not otherwise.

While, therefore, it is not necessary on my approach to decide whether
the sums paid by the bank are recoverable from the local authority in equity
or in common law, it is necessary for me to indicate that Hobhouse J. was
wrong in his judgment in the *Kleinwort Benson* case in deciding that he would
have no power to award compound interest if, as he thought was the case, the
bank was entitled to a personal equitable remedy which would enable it to
obtain judgment for the sums which had been paid.

There is one more aspect of Hobhouse J.'s judgment to which I should
refer. In his review of the authorities. Hobhouse J. drew attention to two
lines of authority, one where simple interest is being awarded, and the second
where compound interest being awarded. In the former situation, the court,
according to Hobhouse J., is concerned to compensate the party for what he
has lost in consequence of not receiving the money to which he was entitled.
In the latter situation the court is concerned with the benefit which the payee
has derived as a result of the payment having been made. The distinction is
a valid one if what is being considered is the right to interest on the one hand
under the statute or common law and on the other in equity. The distinction
is not valid if a different position is being considered, namely, whether simple
or compound interest should be awarded in equity. Equity, in the case of both
simple and compound interest, will look at the benefit which the payee has
derived. If it is equitable so to do, the payee will be ordered to pay simple
or compound interest depending upon the benefit which has resulted from the
payment.

## The Position at Common Law and by Statute

I should now deal shortly with the situation as to interest at common
law and by statute. At common law the power to award interest was linked
to the power to award damages. While the equitable jurisdiction was
concerned to prevent profit by the recipient of funds to which he was not
entitled, the common law was concerned with the loss suffered by the payer
of the funds. The statutory jurisdiction differed from the common law
because initially there had to be a judgment for the payment of a debt or
damages before interest could be awarded and the legislator was dealing with
the generality of those situations.

As to the common law position a convenient starting point is provided
by the decision of this House in the *London, Chatham and Dover Railway*

Westdeutsche Landesbank Girozentrale v Islington LBC [1996] UKHL 12 (22 May 1996)

*Company* case which I have already cited. In that case the Lord Chancellor. Lord Herschell, and the other members of this House, came to the conclusion with considerable reluctance that <u>at common law</u> where there was no

- 57 -

agreement or statutory provision which permitted the payment of interest a court had no power to award interest, whether simple or compound, by way of damages for the late payment of a debt. The view of the House was rather surprising because the members reluctantly followed a decision of Lord Tenterden CJ. in *Page v. Newman* 9 B. & C. 378, based on convenience in preference to an earlier and more" liberal" line of authorities including a decision of Lord Mansfield in *Eddowes v. Hopkins* 1 Douglas 376, and Lord Ellenborough in *De Havilland v. Bowerbank* 1 Camp. 50. Lord Mansfield stated the position in these terms:

> "... 'that though by the common law book debts do not of course carry interest, it may be payable in consequence of the usage of particular branches of trade or of a special agreement' (which of course is beyond question), 'or in cases of long delay under vexatious and oppressive circumstances if a jury in their discretion shall think fit to allow it."

Lord Ellenborough included among four categories of situations where interest was payable that where the money had been actually used and interest made on it.

After the decision in the *London, Chatham and Dover Railway Company* case it was generally accepted that at common law, apart from statute and some limited exceptions, there was no power to award simple or compound interest for the late payment of a sum of money.

This situation which was regarded as unsatisfactory by this House in 1893 was ameliorated in 1934 by the intervention of the legislature. Section 3(1) of the Law Reform (Miscellaneous Provisions) Act 1934 considerably extended the power which was contained in Lord Tenterden's Act [1833] (3 and 4 Wm. 4. c. 42). The Act of 1934 so far as relevant provided:

> "(1) In any proceedings tried in any court of record for the recovery of any debt or damages, the court may, if it thinks fit, order that there shall be included in the sum for which judgment is given interest at such rate as it thinks fit on the whole or any part of the debt or

damages for the whole or any part of the period between the date when
the cause of action arose and the date of the judgment: Provided that
nothing in this section - *(a)* shall authorise the giving of interest upon
interest; or *(b)* shall apply in relation to any debt upon which interest
is payable as of right whether by virtue of any agreement or otherwise;
or *(c)*. . ."

It is to be noted that section 3 of the Act of 1934 makes it abundantly
clear that it does not authorise the giving of compound interest and that it
confines the power to award interest to situations where there is a "sum for
which judgment is given." The latter point was a cause of considerable

- 58 -

injustice. It enabled a debtor to prevent a court exercising; the power under
section 3 of the Act of 1934 by making a late payment but a payment prior to
any judgment being given. To remedy that situation, the Supreme Court Act
1981 was amended by the Administration of Justice Act 1982 by adding a new
section, section 35A. Section 35A is still the current relevant statutory
provision. It makes clear:

"(a) that it is still only simple interest which is payable. That it only
applies to the recovery of a debt or damages and that interest is to be
paid at 'such rate as the court thinks fit or as rules of court may
provide' (subsection (1));

(b) that the section does not apply when for whatever reason
interest on a debt already runs (subsection (4)).

(c) that the section applies to payments made up to the date of the
judgment (subsection (l)(a))."

The Act of 1982 followed the Report on interest by the Law
Commission (Cmnd. 7229) of 7 April 1978 to which I have already referred.
Parliament did not implement by the Act of 1982 all the recommendations of
the Law Commission as to changes which should be made. In particular, it
did not accede to the suggestion of the Law Commission that there should be
a statutory standard rate of interest for reasons of administrative convenience.
Instead, it retained the court's existing wide statutory discretion.

There are two more cases to which I need to refer. The first is

*Wadsworth v. Lydall* [1981] 1 W.L.R. 598, and the second is *President of India v. La Pintada Compania Navigacion S.A.,* to which I have already referred. The decision in *Wadsworth v. Lydall* received express approval in *La Pintada.* I refer to *Wadsworth v. Lydall* for three reasons. The first is that it brings out clearly that despite the decision of this House in the *London, Chatham and Dover Railway Company* case, there is no inherent common law bias against the award of compound interest at common law. What is required for compound interest to be payable is that the contract either expressly or impliedly provides for the payment of compound interest or there is a breach of the contract and the breach is such that compound interest will be regarded as flowing from the breach in accordance with the second limb of the principle laid down in *Hadley v. Baxendale* (1854) 9 Exchequer 341. The second reason is that while prior to the decision in *Wadsworth v. Lydall* it could legitimately be thought that the situations where compound interest would be awarded at common law were necessarily of a commercial nature, this is not an essential requirement. The situations where it was clearly established that compound interest was recoverable (as, for example, in the case of bills of exchange or banking transactions) should be regarded not so much as independent exceptions to a general rule but as examples of the application of a general rule where in accordance with ordinary contractual principles

- 59 -

compound interest should be recoverable. The third reason why I refer to *Wadsworth v. Lydall* is that it clearly demonstrates that notwithstanding the period which has elapsed since the decision in the *London, Chatham and Dover Railway Co.* case, in 1893, the courts will be prepared to limit the application of that decision where this can be done in accordance with principle and it is appropriate to do so.

      *Wadsworth v. Lydall* was a decision of the Court of Appeal. The facts were straightforward. The defendant and the plaintiff had an informal partnership agreement under which the partnership held an agricultural tenancy of a farm and the plaintiff lived in the farmhouse. When the partnership was dissolved the plaintiff and the defendant agreed that the plaintiff would give up possession of the farm by a specified date when he would receive £10,000 from the defendant. On the strength of that agreement the plaintiff entered into a further agreement with a third party to purchase another property on terms which required him to pay the £10,000, which by [hen he should have received from the defendant, to the third party. Only part of the £10,000 was paid by the defendant to the plaintiff prior to his completing his transaction with the third party. The plaintiff therefore had to

Westdeutsche Landesbank Girozentrale v Islington LBC [1996] UKHL 12 (22 May 1996)

take out a mortgage from the third party for the balance. In an action which
he brought against the defendant the plaintiff claimed as special damages the
interest and costs he incurred due to his having to obtain the mortgage.

The trial judge disallowed those two items of special damage but the
plaintiff succeeded in recovering them as a result of the decision of the Court
of Appeal. In relation to the argument that the Court of Appeal were bound
to conclude that the appeal failed because of the combined effect of the
decision in the *London, Chatham and Dover Railway Co.* case and because of
the provisions of the Law Reform (Miscellaneous) Provisions Act 1934,
Brightman L.J. said as follows, at p. 603:

> "In my view the court is not so constrained by the decision of the
> House of Lords. In *The London, Chatham and Dover Railway Co. v.
> The South Eastern Railway Co.* [1893] A.C. 429 the House of Lords
> was not concerned with a claim for special damages. The action was
> an action for an account. The House was concerned only with a claim
> for interest by way of general damages. If a plaintiff pleads and can
> prove that he has suffered special damage as a result of the defendant's
> failure to perform his obligation under a contract, and such damage is
> not too remote on the principle of *Hadley v. Baxendale* (1854) 9 Exch.
> 341, I can see no logical reason why such special damage should be
> irrecoverable merely because an obligation on which the defendant
> defaulted was an obligation to pay money and not some other type of
> obligation."

The facts of the *La Pintada* case are not important. Its significance is
that the approach of this House was that Parliament had chosen to remedy

- 60 -

some of the injustices caused by the common law rule as laid down in the
decision in the *London, Chatham and Dover Railway Co.* case, and the
restrictive language of section 3(1) of the Act of 1934. Due deference to the
intention of Parliament therefore prevented any further departure from the
House's earlier decision in relation to interest. So the earlier decision would
still apply to general damages.

In his speech, Lord Brandon of Oakbrook, at p. 122 identified:

> "... three cases in which the absence of any common law remedy for

damage or loss caused by the late payment of a debt may arise."

For convenience he described these cases as case 1, case 2 and case 3. Case 1 is where a debt is paid late, before any proceedings for its recovery have been begun. Case 2 is where a debt is paid late, after proceedings for its recovery have begun, but before they have been concluded. Case 3 is where a debt remains unpaid until, as a result of proceedings for its recovery being brought and prosecuted to a conclusion, a money judgment is given in which the original debt becomes merged.

Having examined the history and origins of the common law rule and the interventions by the legislature. Lord Brandon described qualification of the common law rule made in *Wadsworth v. Lydall.* at p. 129, as being important, and set out his conclusions as follows:

"First, an ideal system of justice would ensure that a creditor should be able to recover interest both on unpaid debts in case 1, and also in respect of debts paid late or remaining unpaid in cases 2 and 3. Secondly, if the legislature had not intervened twice in this field since the *London, Chatham and Dover Railway Co.* case, first by the Act of 1934 and more recently by the Act of 1982, and if the Court or" Appeal had not limited the scope of that case by its decision in *Wadsworth v. Lydall* [1981] 1 W.L.R. 598, I should have thought that a strong, if not an overwhelming, case would have been made out for your Lordships' House, in order to do justice to creditors in all three cases 1, 2 and 3, to depart from the decision in the *London, Chatham and Dover Railway* case [1893] A.C. 429. But, thirdly, since the legislature has made the two interventions in this field to which I have referred, and since the scope of the *London, Chatham and Dover Railway* case has been qualified to a significant extent by *Wadsworth v. Lydall* [1981] 1 W.L.R. 598, I am of the opinion, for three main reasons, that the departure sought by the respondents would not now be justified."

The first of the reasons Lord Brandon gave for his conclusion was that the greater part of the injustice has already been remedied by the intervention of the legislature and judicial qualification of the scope of the decision in the

- 61 -

*London, Chatham and Dover Railway* case. The second was that Parliament

Westdeutsche Landesbank Girozentrale v Islington [1996] UKHL 12 (22 May 1996)

had given effect in legislation to some of the recommendations of the Law
Commission but had not given effect to further recommendations which meant
that for the House to intervene would be to intervene in a manner which
would conflict with the policy indicated by Parliament. The third reason was
that the intervention would create for creditors a remedy as of right rather
than a discretionary remedy which would be again contrary to the policy of
Parliament as indicated in the Acts of 1934 and 1982.

## The Reasoning in the *Pintada* Case Does Not Apply to Equitable Interest

In relation to that reasoning it is important to note that none of the
three reasons directly apply to the issue at present before their Lordships.
The first reason does not directly apply to the present case because neither the
legislation nor the decision in *Wadsworth v. Lydall* addresses the injustice
demonstrated by the facts of this case. The injustice arises because, contrary
to the intention of the parties, there is no contract. The inroads which have
been made on the decision in the *London, Chatham and Dover Railway* case
by *Wadsworth v. Lydall* can only apply where there is a contract under which
either interest is expressly payable or the situation is one where the second
limb of the rule in *Hadley v. Baxendale* applies to a breach of contract. The
second reason given by Lord Brandon does not apply because the Law
Commission made no recommendation as to the equitable remedy of interest.
The third reason does not apply because if the court has jurisdiction to award
interest in equity, like other equitable remedies, the remedy will be
discretionary.

I therefore do not find anything in Lord Brandon's reasoning which
makes it inappropriate to extend the right in equity so that it extends to the
recovery of compound interest ancillary to a restitutionary remedy. In this
case this is particularly true because if there had been a contract and non
payment of the sums due under the contract by the local authority the bank
may well, if proceedings resulted, have received compound interest as special
damages.

## The Desirability of the Equitable Jurisdiction being Extended

A decision in favour of the bank in this case, will mark a further
improvement in the powers of the English courts. An improvement the need
for which has so frequently been recognised. While the improvement is
consistent with the decision of this House in the *La Pintada* case, it should be
noted that that decision has not been free from criticism. In a typically
closely reasoned article the late Dr. F. A. Mann in the *Law Quarterly Review*
(1985), 101 L.Q.R. at p. 30 was not impressed by the reasoning of the House.

Dr. Mann, at p. 34, found it difficult to understand, if interest, including compound interest, was recoverable under the second limb under the rule in *Hadley v. Baxendale:*

- 62 -

"why it should not also be recoverable under the first limb, where damages are such 'as may fairly and reasonably be considered arising naturally, i.e. according to the usual course of things' from the breach?"

As Dr. Mann pointed out, to say that interest considered as damages is too remote is an argument which at the present time is no longer realistic or persuasive and which can only be described as an "empty phrase." The modern test should be whether the debtor could reasonably foresee that in the ordinary course of things the loss was likely to occur or was on the cards. Who would refuse to impute such knowledge to a debtor? Who would venture to suggest that a defaulting debtor could not reasonably foresee interest as the creditor's loss flowing from the failure to pay.

Dr. Mann did not distinguish between simple and compound interest. However, if what he said with regard to simple interest is true then adopting the same approach it must equally apply to compound interest. Dr. Mann's final comment was. at p. 47:

"The history of interest, particularly in the field of Admiralty, displays a lack of legal analysis and a degree of positivism and inflexibility which show the common law of England at its worst."

In my judgment, their Lordships should avoid leaving the equitable jurisdiction of the English courts open to the same criticism.

Lord Browne-Wilkinson and Lord Lloyd of Berwick (whose speech I have also had the advantage of reading in draft) do not regard this as a case in which it would be appropriate to extend the law in the way I would wish. Their arguments, which are based on the legislative history as to interest and. in the case of Lord Lloyd, also based on *La Pintada.* I have dealt with already, However, as to the suggestion of usurpation of the role of parliament I do remind myself of the approach of Lord Brandon of Oakbrook in the passage of his speech in *La Pintada* which I have previously cited. Both Lord Browne-Wilkinson and Lord Lloyd also make the additional point that the local authority could feel aggrieved if this appeal were to be decided on the