approach which Lord Goff and I would adopt. Here I take a different view.
If their Lordships had not raised the issue of the correctness and scope of the
decision in *Sinclair v. Brougham,* the bank would have succeeded. The local
authority were only prepared to argue this point with reluctance. As I have
indicated, the local authority also wanted the argument curtailed. In these
circumstances they can hardly complain if they lacked the opportunity of
dealing with the detail of your Lordships' reasoning.

In my recollection of his argument Mr. Sumption made it clear that his
argument was not totally dependent on establishing that the local authority was
a fiduciary. I have already set out how his case described the position in

- 63 -

principle. I would also refer to paragraph 13 of his case and the footnote
thereto, where he said:

"13. Quite apart from the proprietary claim, the Bank also has a
<u>personal</u> claim in equity to require Islington to account for its
property: *Snell's Equity, 29th ed.* (1990), 284-287.[1] (emphasis added)

"[1] In *Sinclair v. Brougham* it was held that there was no
personal claim in equity or at law, because to allow such a
claim would be indirectly to enforced an invalid borrowing
contract: see, in particular, pages 414, 418 (Viscount Haldane
L.C.). This part of the decision has been subjected to powerful
and justified criticism by Lord Wright: (1938) 6 C.L.J. 805.
But even if correct <u>it has no application to a restitutionary
claim, whether at law or in equity,</u> arising out of a void swap
contract since such restitution would not be legally or
financially equivalent to enforcement of the contract itself."
(emphasis added).

The passage in *Snell* refers to a personal claim in equity where their
is a breach of trust. However, the footnote makes reasonably clear that Mr.
Sumption was applying the same approach as I would to a restitutionary claim
"whether at law or in equity".

For these reasons I would dismiss the appeal.

# LORD LLOYD OF BERWICK

My Lords,

It was common ground before your Lordships that the Bank is entitled to recover the principal sum of £1,145,526 in a common law action for money had and received. Judgment for that sum would carry simple interest at the appropriate rate under section 35A of the Supreme Court Act 1981. Hobhouse J. and the Court of Appeal have held (albeit for different reasons) that the Bank has an alternative claim to recover the principal sum in equity, and that the equitable cause of action entitles the Bank to claim a discretionary award of compound interest, depending on the facts of the particular case. The issue in the appeal as it came before your Lordships was whether the courts below were right in this respect. Thus the Bank's argument is stated succinctly in paragraph 11 of the respondent's printed case as follows:

> "The Bank's submission in summary is that where money is paid either (i) pursuant to a contract which is void, or (ii) under a fundamental mistake of fact or law, the money is impressed in the hands of the

- 64 -

> payee with a trust in favour of the payer. The payee is then accountable to the payer not only for the principal but for the entire benefit which he has obtained from his possession of the principal in the intervening period."

A little later it is said, in paragraph 12(5):

> "The separation of the legal from the equitable interest necessarily imports a trust."

In support of his argument Mr. Sumption relied, as he had in the courts below, on *Sinclair v. Brougham* [1914] A.C. 398. He also relied on the speech of Lord Brandon of Oakbrook in *President of India v. La Pintada* [1985] A.C. 104, 116b. It was not suggested in the respondent's printed case that Lord Brandon's formulation of the equitable jurisdiction to award compound interest was incomplete, or insufficient for the Bank's purposes. Nor was it suggested that the decision of Hobhouse J. in the parallel decision of *Kleinwort Benson Ltd. v. South Tyneside Metropolitan Borough Council* [1994] 4 All E.R. 972, (in which he declined to make an award of compound interest in favour of the bank, on the ground that the bank was in that case

confined to its common law action for money had and received) was wrongly decided.

The local authority, in paragraph 5.1 of the appellant's case, stated the issue for decision in similar terms:

> "Both parties accept that compound, as opposed to simple, interest is payable only if Islington received the money under the void interest rate swaps agreement as fiduciary: *President of India v. La Pintada Compania Navigacion* [ 1985] A.C. 104. 116."

The whole thrust of the appellant's case was directed to showing that the local authority was not a fiduciary when it received the money, and did not become a fiduciary thereafter. *Sinclair v. Brougham* could be distinguished. It had never been suggested that the mere failure to pay back the principal sum rendered the local authority a fiduciary, otherwise "every overdue debtor would be a fiduciary liable to compound interest."

Both parties, therefore, came before your Lordships on the basis that *Sinclair v. Brougham* was correctly decided, for whatever it did decide. But in the course of the argument your Lordships indicated that the House would be willing to reconsider the correctness of that decision. For the reasons given by my noble and learned friend Lord Browne-Wilkinson. I agree that *Sinclair v. Brougham* was wrongly decided on both the points discussed in his speech, and should be overruled. I understand that all your Lordships are agreed that the Bank has failed to make good its claim that it has an equitable cause of action against the local authority for breach of duty as trustee or

- 65 -

fiduciary. It follows that the ground on which the courts below awarded compound interest cannot be supported. The local authority has succeeded on the only issue on which the parties came before your Lordships. Accordingly, I would be content to allow the appeal, and leave it at that.

But my noble and learned friend Lord Woolf is of the view that, even though the Bank has failed to prove any breach of trust or fiduciary duty, it may nevertheless be entitled to claim compound interest by way of a general equitable remedy ancillary to its common law claim for money had and received: and his views receive the powerful support of my noble and learned friend Lord Goff of Chieveley.

I have naturally considered these views with the greatest care: for there
is much force in the argument that the local authority ought, in justice, to pay
compound interest, if it would have had to pay compound interest (as no doubt
it would) on sums borrowed by way of more orthodox bank lending. But I
regret that in my opinion the House cannot, or at any rate should not, hold
that there is any such power in equity to make good the supposed defects of
the common law remedy. I have come to that conclusion for three main
reasons.

In the first place the point in question, which is one of great general
importance, was scarcely argued. This was not the fault of counsel. The
point only emerged from the background once it became apparent that *Sinclair
v. Brougham* might fall to be reconsidered. By then there was no time to
develop the argument. Thus the decision of Hobhouse J. in the *Kleinwort
Benson* case, which would have to be overruled if the point is good, was only
mentioned by Mr. Philipson at the very end of his argument, and then only
in connection with the date from which interest should run. The decision was
never mentioned by Mr. Sumption at all.

Nor did Mr. Sumption seek to question the reasoning or conclusion of
the House in *President of India v. La Pintada.* On the contrary, he relied on
Lord Brandon's speech as an accurate summary of the equitable jurisdiction
to award compound interest in the two special classes of case to which Lord
Brandon referred. I may be wrong, but I do not recall any reference to the
comments expressed by Mason C.J. and Wilson J. in *Hungerfords* v. *Walker*
[1988] 171 C.L.R. 125. It is accepted that to decide the compound interest
point in favour of the Bank would mean breaking new ground, and would be
extending the equitable jurisdiction to a field where it has never before been
exercised. I do not think it right to take so momentous a course, involving
such widespread ramifications, on the back of such inadequate argument.
Above all I cannot regard it as fair to decide the case against the local
authority on the alternative argument when through no fault of their own, they
have not had a proper opportunity to deal with the argument.

Secondly, I have difficulty in reconciling an award of compound
interest as an equitable remedy available in support of the common law claim

- 66 -

for money had and received with the ratio decidendi of the House in *President
of India v. La Pintada.* The facts of that case were that the charterers were
between two and six years late in paying sums due to the owners by way of

freight and demurrage. The owners claimed interest in respect of the late payment. The question was referred to arbitration, and the umpire awarded compound interest in favour of the owners for the whole period of the delay. One of the questions of law for the court was whether the umpire had jurisdiction to award interest in respect of the late payment. Mr. Saville Q.C. launched a frontal attack on *London, Chatham and Dover Railway Co. v. South Eastern Railway Co.* [1893] A.C. 429, in which it was held that a claim for interest by way of general damages will not lie at common law for late payment of a debt, in the absence of some custom binding on the parties, or some express or implied agreement. In giving the leading speech, Lord Brandon said, at p. 129, that other things being equal there was "a strong, if not an overwhelming, case" for departing from decision in *London, Chatham and Dover Railway Co. v. South Eastern Railway Co.* in order to do justice to creditors. But with regret he felt unable to take that course. I return to his reasons later. All the other noble Lords shared Lord Brandon's regret. Lord Roskill said, at p. 111:

> "It has long been recognised *that London, Chatham and Dover Railway Co. v. South Eastern Railway Co.* left creditors with a legitimate sense of grievance and an obvious injustice without remedy. I think the House in 1893 recognised those consequences of the decision, but then felt compelled for historical reasons to leave that injustice uncorrected."

Like Lord Brandon, he felt unable to depart from the *London, Chatham and Dover Railway* case, and called for the injustice to be remedied by further legislation.

I quote these passages in order to make the point that if Mr. Saville Q.C., for the owners, could have detected some way of supporting the umpire's award of compound interest, he would have found a ready ear. He pointed out in the course of his argument that the equitable jurisdiction to award compound interest had survived the passing of the Act of 1934, as had the Admiralty jurisdiction, and he argued that these "exceptional" jurisdictions should be regarded as the rule, and not vice versa. But this argument did not prevail. When Lord Brandon said, at p. 116, that "the Admiralty Court never, and Courts of Chancery only in two special classes of case" awarded compound, as distinct from simple, interest (my emphasis), he meant, I think, exactly what he said. Moreover, he regarded it as a point of importance. I cannot, therefore, agree that he was only giving examples of the application of a more general equitable jurisdiction to grant ancillary relief by way of compound interest. To my mind the immediate context, and the shape of the case as a whole, make quite clear that that was not his meaning.

It may be said that in *President of India v. La Pintada* the claim was for payment of a debt due under a contract, whereas in the present case the claim is for money had and received. But why should that make any difference? It is true that the common law action for money had and received can be given a restitutionary label: and that "restitution" may be said to be incomplete unless compound interest is included in the award. But the label cannot change the underlying reality. The cause of action remains a common law action for the return of money paid in pursuance of an ineffective contract. If compound interest cannot be recovered in a claim for debt due under a contract (in the absence of custom, or some express or implied agreement to that effect) I cannot see any reason in principle, or logic, why it should be recoverable in the case of money paid under a contract which turns out to be ineffective.

It is said, nevertheless, that the reasoning which led Lord Brandon to reject the owners' claim for compound interest does not apply to the different facts of the present case. Lord Brandon identified three main reasons for his conclusion. It is to the second reason, at p. 130, that I would draw attention. I will quote the reason in full:

> "My second main reason is that, when Parliament has given effect by legislation to some recommendations of the Law Commission in a particular field, but has taken what appears to be a policy decision not to give effect to a further such recommendation, any decision of your Lordships' House which would have the result of giving effect, by another route, to the very recommendation which Parliament appears to have taken that policy decision to reject, could well be regarded as an unjustifiable usurpation by your Lordships' House of the functions which belong properly to Parliament, rather than as a judicial exercise in departing from an earlier decision on the ground that it has become obsolete and could still, in a limited class of cases, continue to cause some degree of injustice."

It is true that the Law Commission made no recommendation for changing the equitable jurisdiction to award interest, and so Parliament cannot be said to have taken a policy decision to reject any such recommendation. But the underlying objection remains. Parliament has on two occasions, first in 1934, and then in 1981, remedied injustices which had long been apparent in the power to award interest at common law. On the latter occasion it did so in the light of the view expressed by the Law Commission that the equitable jurisdiction to award interest was working satisfactorily, and called for no

change. To extend the equitable jurisdiction for the first time to cover a residual injustice at common law, which Parliament chose not to remedy, would, I think, be as great a usurpation of the role of the legislature, and as clear an example of judicial law-making, as it would have been in *President of India v. La Pintada.* If it is thought desirable that the courts should have a power to award compound interest in common law claims for money had and received, then such a result can now only be brought about by Parliament.

- 68 -

My third reason for rejecting the Bank's claim for compound interest is that I am by no means certain that the policy considerations all point in favour of change. It is presumably in commercial transactions that the discretionary power to award compound interest would most frequently be used, on the ground that the money received by the payee would otherwise have had to be borrowed at compound interest. But it is in just such transactions that the need for certainty is paramount. Disputes which would otherwise be settled on the basis of simple interest would be fought in the hope of persuading the court that an award of compound interest was appropriate. It is interesting to note that it was on this very ground that Lord Tenterden C.J. rejected the solution proposed by Best C.J. in *Arnott v. Redfern* (1826) 3 Bing. 353. In *Page v. Newman* (1829) 9 B. & C. 378, Lord Tenterden said, at p. 380:

> "If we were to adopt as a general rule that which some of the expressions attributed to the Lord Chief Justice of the Common Pleas in *Arnott v. Redfern* which it seemed to warrant, viz. that interest is due wherever the debt has been wrongfully withheld after the plaintiff has endeavoured to obtain payment of it, it might frequently be made a question at nisi prius whether the proper means had been used to obtain payment of the debt, and such as the party ought to have used. That would be productive of great inconvenience."

As one who has in the past attempted to keep open the availability of equitable remedies in commercial disputes, I am now conscious of the strength of the arguments the other way: see *Scandinavian Trading Tanker Co. A.B. v. Flota Petrolera Ecuatoriana* [1983] 2 A.C. 694, disapproving dicta of Lloyd J. in *Afovos Shipping Co. S.A. v. R. Pagnan & Fratelli* [1980] 2 Lloyd's Rep. 469. It is, of course, true that even an award of simple interest lies in the discretion of the court, as does the rate of interest. But in the great majority of cases it is not difficult to predict the amount of simple interest which is likely to be awarded. Compound interest, on the other hand, is not so predictable. It

presents wider room for disagreement. Disputes would be likely to end up in court, and this would, in the words of Lord Tenterden, "be productive of great inconvenience." Despite the weight which must attach to the views of my noble and learned friends Lord Goff of Chieveley and Lord Woolf. I would allow the appeal.

- 69 -

---

**BAILII:** [Copyright Policy](#) | [Disclaimers](#) | [Privacy Policy](#) | [Feedback](#) | [Donate to BAILII](#)
URL: *http://www.bailii.org/uk/cases/UKHL/1996/12.html*