# TAB 170

# U.S. INTERNATIONAL TAXATION

JOEL D. KUNTZ

ROBERT J. PERONI

VOLUME 1



WARREN GORHAM LAMONT

# U.S. INTERNATIONAL TAXATION

## JOEL D. KUNTZ

*General Counsel*
*ENTEK International, L.L.C.*

## ROBERT J. PERONI

*Robert C. Fielder Regents Professor in Tax Law*
*University of Texas School of Law*
*Austin, Tex.*

## VOLUME 1

**WG&L**

WARREN, GORHAM & LAMONT
OF RIA



LIBRARY OF
CLEARY GOTTLIEB
STEEN & HAMILTON LLP

Copyright © 1992, 1994, 1996, 2002, 2005 by

WARREN, GORHAM & LAMONT

of RIA

ALL RIGHTS RESERVED

No part of this book may be reproduced in any form, by photostat, micro-
film, xerography, or any other means, or incorporated into any information
retrieval system, electronic or mechanical, without the written permission of
the copyright owner. Inquiries regarding permission for use of material con-
tained in this publication should be addressed to:

RIA
117 East Stevens Avenue
Valhalla, NY 10595

Vol. 1 ISBN 0-7913-5696-5
Vol. 2 ISBN 0-7913-5697-2
Vol. 3 ISBN 0-7913-5698-1
Set ISBN 0-7913-5695-7

Library of Congress Control No. 91-65051

This publication is designed to provide accurate and authoritative information
in regard to the subject matter covered. It is sold with the understanding that
neither the author(s) nor the publisher is engaged in rendering legal, account-
ing, or other professional service. If legal advice or other expert assistance is
required, the services of a competent professional should be sought.

PRINTED IN THE UNITED STATES OF AMERICA



THOMSON

RIA

332.[385] In that case, the parent recognizes gain on the liquidation. Section 1248 may treat some or all of the gain as a dividend and may allow the parent to claim an indirect foreign tax credit.[386] Despite the recognition of gain, the regulations provide for a carryover basis for assets received by the domestic parent.[387]

If the domestic parent realizes a loss on the liquidation, Section 332(a) prevents recognition. Section 367 should not change the result.[388] Moreover, net operating losses carry over from the subsidiary to the parent only if the losses were effectively connected with the conduct of a U.S. trade or business.[389]

## ¶ A1.04  FOREIGN TAXPAYERS WITH U.S. ACTIVITIES OR INCOME

### [1]  General Taxation of Foreign Persons With U.S. Activities or Income

Although the United States generally taxes U.S. persons on their worldwide incomes,[1] it asserts only a limited taxing jurisdiction over nonresident alien individuals and foreign corporations. Foreign persons pay U.S. taxes only on income that has a sufficient nexus with the United States.[2]

Congress overhauled the basic rules on the taxation of foreign persons in 1966.[3] In 1980, Congress added rules to tax foreign persons on virtually all sales of U.S. real property.[4] In 1986, Congress added the branch profits tax to impose a second level of tax on a foreign corporation that engages in a U.S. business and then withdraws the earnings from the U.S. business.[5]

The United States uses two quite different regimes to tax the income of foreign persons.[6] One regime imposes a 30 percent tax on the gross amount of U.S.-source income of specified types not effectively connected with a U.S.

---

[385] See ¶ B6.08[4][c][ii].

[386] See id.

[387] See id.

[388] See ¶ B6.08[4][b].

[389] See ¶ B6.08[5].

[1] See ¶ B1.03.

[2] See 1990 Staff Report at 10.

[3] See the Foreign Investors Tax Act of 1966, discussed at ¶ C1.01. See also 1990 Staff Report at 14–17.

[4] See ¶ C1.06.

[5] See ¶ C1.05.

[6] See ¶ C1.01.

business.[7] The second regime applies regular U.S. tax rates to the net income effectively connected with a U.S. trade or business (or treated as so connected).[8] A taxpayer with both types of income may be subject to both tax regimes in a single taxable year.

*Certain gross income not from U.S. business.* A nonresident alien individual or foreign corporation pays a flat 30 percent tax on income that (1) arises from a U.S. source; (2) falls within the term "fixed or determinable annual or periodical gains, profits, and income" or within certain other categories listed in the statute; and (3) is not effectively connected with the conduct of a U.S. trade or business.[9] A U.S. treaty, however, may reduce the 30 percent rate or exempt an item from tax altogether.[10]

The 30 percent tax regime depends heavily on the Code's rules regarding the source of income.[11] Treating an item of gross income as arising from a foreign source is equivalent to granting an exemption from the gross income tax.

If a nonresident alien individual is present in the United States for at least 183 days during the individual's taxable year, the individual may pay a flat 30 percent tax on U.S.-source capital gains (other than those effectively connected with a U.S. trade or business).[12] Foreign corporations are not subject to U.S. tax on such gains.[13] The tax on individual's gains does not have great importance because an alien's presence in the United States for a period of 183 days or more usually results in the alien's being a resident alien subject to U.S. tax on worldwide income.[14]

Sections 871(a) and 881 list the types of U.S.-source income that are subject to the 30 percent tax. Such types generally include interest,[15] dividends,[16] and rents.[17] Sections 871(a) and 881 also use the phrase "fixed or determinable annual or periodical gains, profits, and income." That phrase includes royalties,[18] alimony,[19] and other items. These sections generally tax original issue discount, but only when payments or sales proceeds are

---

[7] See ¶ C1.03.

[8] See ¶ C1.04.

[9] IRC §§ 871(a), 881. See ¶ C1.03[1].

[10] Regarding interest, for example, see ¶ C4.06.

[11] Regarding the source rules, see Chapter A2.

[12] IRC § 871(a)(2). See ¶ C1.03[15][b].

[13] See ¶ C1.03[15][c].

[14] IRC § 7701(b), adopted by Congress in 1986, discussed at ¶ B1.02[2][c].

[15] See ¶ C1.03[2][a].

[16] See ¶ C1.03[3][a].

[17] See ¶ C1.03[5][a].

[18] See ¶ C1.03[4][a].

[19] See ¶ C1.03[9][b].

received.[20] In addition, the 30 percent tax may apply to gains from the sale of patents, copyrights, and like property if the payments are contingent on the use of the property.[21] The 30 percent tax is generally collected by the payor's withholding.[22]

In part to finance the gross deficits in the federal budget and the U.S. balance of payments, Congress has created exemptions for certain types of interest and original issue discount earned in the United States by foreign persons. As a result, foreign persons generally may pay no U.S. tax on portfolio interest,[23] bank interest,[24] and short-term original issue discount[25] (if such interest or discount is not effectively connected with the conduct of a U.S. trade or business). The United States even offers secrecy regarding the ownership of portfolio interest and short-term original issue discount obligations.[26] That secrecy helps foreign lenders wishing to violate foreign tax and currency laws.

The 30 percent tax generally applies to gross income with no deductions allowed.[27] In some cases, therefore, the tax may apply to a taxpayer that has no net income at all. By contrast, the tax at regular rates on income effectively connected with the conduct of a U.S. trade or business allows deductions.[28] To avoid hardship in the case of real property income, Sections 871(d) and 882(d) allow a foreign taxpayer to elect to treat income derived from U.S. real property as effectively connected with a U.S. trade or business.[29] The main purpose of such an election is to obtain deductions to offset income.

Generally, a dividend from a domestic corporation has a domestic source and is subject to tax under Section 871(a) or Section 881 (if not effectively connected with a U.S. business).[30] Sections 871(i) and 881(d), however, may exempt a foreign person from tax on the percentage of any dividend paid by a domestic corporation that meets the 80 percent active foreign business requirements of Section 861(c).[31]

In some cases, a U.S. citizen may attempt to avoid U.S. taxation on certain income by renouncing U.S. citizenship and becoming a resident of a

---

[20] See ¶ C1.03[2][b].

[21] See ¶ C1.03[13].

[22] See ¶ C2.02.

[23] See ¶ C1.03[2][c].

[24] See ¶ C1.03[2][h].

[25] See ¶ C1.03[2][d].

[26] See ¶ C1.03[2][c].

[27] See ¶ C1.03[17].

[28] See ¶ C1.04[8].

[29] See ¶ C1.03[19].

[30] See ¶ C1.03[3][a]. Regarding the source of dividends from domestic corporations, see ¶ A2.03[3].

[31] See ¶ C1.03[3][c].

foreign country. Under certain conditions, however, Section 877 taxes such a former citizen under special rules for ten years.[32]

*Net U.S. business income.* A foreign person generally pays U.S. income taxes at the regular rates on the taxable income effectively connected with a U.S. trade or business.[33] The first issue for this purpose is whether a taxpayer is engaged in a trade or business within the United States. The Code contains specific rules regarding the performance of personal services and trading in securities or commodities.[34] Further, the Code treats certain income from the disposition of a U.S. real property interest as effectively connected with the conduct of a U.S. trade or business.[35] Finally, if a partnership engages in a U.S. trade or business, the Code treats each foreign partner as so engaged.[36] Most other situations, however, are left to the courts and the Service to determine. The Service will ordinarily not issue a private ruling on whether a taxpayer is engaged in a U.S. trade or business.[37]

The second issue under Sections 871(b) and 882 is what income is effectively connected with the conduct of the taxpayer's U.S. trade or business. Section 864(c) contains detailed rules, which generally differ for U.S.- and foreign-source income.[38] A taxpayer may not be able to escape U.S. taxation by ceasing to conduct a U.S. business before selling property or receiving deferred payments. Sections 864(c)(6) and 864(c)(7) preserve the U.S. business taint under certain conditions.[39]

In computing the tax on U.S. business income, a foreign person generally may deduct the expenses that are connected with the business (as determined under apportionment and allocation regulations).[40] Further, a restricted foreign tax credit may be allowed (subject to the Section 904 limit).[41]

*Treaty exemptions.* Even if the rules of the Code call for taxation, a treaty may protect a foreign person from tax on business profits if that person does not have a U.S. "permanent establishment."[42]

*Disposition of U.S. real property interests.* Section 897 treats certain

---

[32] See ¶ C1.10.

[33] IRC §§ 871(b) and 882, discussed at ¶ C1.04. Regarding the rates of tax that may apply, see ¶ C1.04[3].

[34] Regarding personal services, see ¶ C1.04[4][b]. Regarding trading in securities or commodities, see ¶ C1.04[4][c].

[35] See ¶ C1.04[4][f].

[36] See ¶ C1.04[4][d].

[37] See ¶ C1.04[4][a].

[38] See ¶ C1.04[5].

[39] See ¶ C1.04[5][b].

[40] See ¶ C1.04[8].

[41] See ¶ C1.04[11].

[42] See ¶¶ C1.04[7], C4.05.

gains from the sale of certain U.S. real property interests as income that is effectively connected with a U.S. trade or business. Thus, Section 897 generally forces a foreign taxpayer to pay U.S. income taxes at the regular rates on the net gains derived from the disposition of U.S. real property interests.[43] Although the Senate Finance Committee stated that taxing foreign persons on their U.S. real estate gains was "essential to equity of tax treatment in U.S. real property between foreign and domestic investors,"[44] various commentators have expressed the opinion that the real purpose for enacting these provisions was to discourage foreign investment in U.S. real estate (particularly farmland).[45]

*Branch profits tax/branch interest tax.* In 1986, Congress added a second tax that may apply to a foreign corporation that has income effectively connected with the conduct of a U.S. trade or business. When earnings are withdrawn from the U.S. business, a branch profits tax may apply.[46] Congress enacted Section 884 to reduce the disparity between the treatment of a foreign corporation that conducts a U.S. business through a branch and the treatment of a foreign corporation that conducts such a business through a domestic subsidiary.[47] In the latter case, a U.S. tax may apply to dividends paid by the domestic subsidiary.

The branch profits tax may not apply when a foreign corporation completely terminates its U.S. business.[48] That result mirrors the result that may apply when a foreign shareholder sells the stock of a U.S. corporation.

Congress also intended to reduce the disparity between the U.S. tax treatment of interest paid by foreign corporations with U.S. businesses and interest paid by domestic corporations owned by foreign persons.[49] Section 884(f)(1) generally treats interest paid by the U.S. business of a foreign corporation as paid by a domestic corporation.[50] That treatment causes the interest to have a U.S. source and to be subject to a 30 percent withholding tax (unless an exemption or reduction applies). Section 884(f)(1)(B) may also tax the foreign corporation on certain interest deductions claimed by a foreign corporation.[51]

---

[43] See ¶¶ C1.04[5][e], C1.06.

[44] S. Rep. No. 504, 96th Cong., 1st Sess. 6 (1979).

[45] See Kaplan, "Creeping Xenophobia and the Taxation of Foreign-Owned Real Estate," 71 Geo. LJ 1091 (1983); Kingson, "The Coherence of International Taxation," 81 Colum. L. Rev. 1151, 1273–1275 (1981).

[46] See ¶ C1.05.

[47] See ¶ C1.05[1].

[48] See ¶ C1.05[7].

[49] See ¶ C1.05[1].

[50] See ¶ C1.05[8][b].

[51] See ¶ C1.05[8][c].

## [2] Withholding

The Code imposes six major types of withholding that may apply to payments to, or the income of, foreign persons. The policy underlying withholding is to collect U.S. taxes without relying on the voluntary compliance of foreign persons, who may have few connections with the United States.

Withholding is a serious matter for U.S. persons as well as for foreign persons. The failure to withhold may leave a U.S. person "holding the bag," with full personal liability for taxes, interest, and penalties.[52]

*Sections 1441 and 1442 withholding on certain U.S.-source income.* Sections 1441 and 1442 require the withholding of a 30 percent tax from certain types of U.S.-source income paid to a nonresident alien individual, foreign partnership, or foreign corporation.[53] This type of withholding dates from 1913.[54] In general, the types of income subject to withholding match the types subject to tax under Sections 871(a) and 881 (i.e., fixed or determinable annual or periodical gains, profits, and income and other listed items).[55] For example, interest,[56] dividends,[57] rents,[58] and royalties[59] may be subject to withholding.

Sections 1441 and 1442 contain important exceptions to withholding. For example, such withholding does not apply to portfolio interest[60] or short-term original issue discount.[61] Foreign-source income is not subject to withholding under these sections.

A U.S. treaty may reduce or eliminate withholding on certain income.[62] The payor, however, should obtain the proper certificate from the foreign payee.

Withholding under Sections 1441 and 1442 generally does not apply to income that is effectively connected with the conduct of the payee's U.S. trade or business.[63] The payor, however, should obtain the proper certificate from the foreign payee.[64]

---

[52] See ¶ C2.07[3].

[53] See ¶ C2.02[1]. A 14 percent withholding tax applies to certain items. See ¶ C2.02[7].

[54] See ¶ C2.01.

[55] See ¶ C2.02[1].

[56] See ¶ C2.03[1].

[57] See ¶ C2.03[2].

[58] See ¶ C2.03[4].

[59] See ¶ C2.03[3].

[60] See ¶ C2.03[1][d].

[61] See ¶ C2.03[1][e].

[62] See ¶ C2.02[8].

[63] See ¶ C2.02[6].

[64] As discussed at ¶ C2.05, Section 1446 may require a partnership to withhold with respect to its income effectively connected with the conduct of a U.S. trade or business.

*Section 1445 U.S. real property withholding.* Congress adopted Section 1445 in 1984 to enforce the tax imposed by Section 897 on dispositions of U.S. real property interests.[65] The motto of Section 1445 should be "let the buyer beware." A person that buys a U.S. real property interest from a foreign person and fails to withhold may be personally liable for the tax.[66] Further, under certain conditions, Section 1445(d) may hold an agent of the transferor or transferee liable for the failure to withhold.[67]

When a foreign person disposes of a U.S. real property interest, Section 1445(a) generally requires the transferee to deduct and withhold a tax equal to 10 percent of the transferor's amount realized on the disposition.[68] This withholding may apply to a sale of U.S. real estate or associated personal property[69] or to a sale of corporate stock that is a U.S. real property interest.[70] Under certain conditions, however, exceptions to Section 1445 withholding may apply if the transferor furnishes an affidavit of nonforeign status,[71] if a domestic corporation furnishes an affidavit that the corporation is not and has not been a U.S. real property holding corporation,[72] if the Service issues a statement of exemption,[73] if the purchase price of a residence is $300,000 or less,[74] or if the stock purchased is regularly traded on an established securities market.[75]

Special rules may apply with respect to entities that hold U.S. real property interests or that are U.S. real property holding corporations. Certain dispositions or distributions of U.S. real property interests by corporations, partnerships, trusts, and estates may require the entity to deduct and withhold a defined amount on the disposition or distribution of the U.S. real property interests.[76] Further, the transferee of an interest in a partnership, trust, or estate may have to withhold 10 percent of the amount realized.[77]

*Section 1446 partnership withholding.* Congress adopted the first version of Section 1446 in 1986.[78] Section 1446 requires a partnership that has income

---

[65] See ¶ C2.04[1][b].

[66] See ¶ C2.04[15].

[67] See ¶ C2.04[13].

[68] See ¶ C2.04[4].

[69] See ¶ C2.04[4][c]. Regarding the basic definition of a U.S. real property interest, see ¶ C1.06[2].

[70] See ¶ C2.04[4][c]. Regarding when stock may be a U.S. real property interest, see ¶ C3.06[2].

[71] See ¶ C2.04[5][c].

[72] See ¶ C2.04[5][d].

[73] See ¶ C2.04[5][e].

[74] See ¶ C2.04[5][f].

[75] See ¶ C2.04[5][g].

[76] See ¶¶ C2.04[7]–C2.04[12].

[77] See ¶ C2.04[11].

[78] See ¶ C2.05[1][b].

effectively connected with a U.S. trade or business to pay a withholding tax with respect to effectively connected taxable income that is allocable to its foreign partners.[79] The rates of withholding are 31 percent with respect to noncorporate partners and 34 percent with respect to corporate partners.[80] Section 704 determines a foreign partner's allocable share of the partnership's effectively connected taxable income.[81]

If a partnership fails to withhold, any general partner may be liable.[82] Thus, Section 1446 creates a major trap for a partnership with foreign partners.

*Section 1443 withholding for tax-exempt organizations.* Withholding at a 30 percent rate may apply to a foreign tax-exempt organization's income that is includible under Section 512 in computing the Section 511 unrelated business income tax.[83] Further, under Section 1443(b), withholding at a 4 percent rate may apply to a foreign private foundation's U.S.-source gross investment income that is subject to the Section 4948(a) excise tax.[84]

*Section 3406 backup withholding.* In 1983, Congress adopted the backup withholding system.[85] The purpose of that system is to encourage the payment of taxes by U.S. persons on certain types of income, such as dividends and interest.[86] Although aimed at U.S. persons, the backup withholding system may have an impact in certain international transactions.

In many cases, a payor can avoid backup withholding simply by obtaining the proper form from the foreign payee. For example, the payor generally may avoid withholding by obtaining a certification of the payee taxpayer's identification number (Form W-9)[87] or a certification of foreign status (Form W-8, 1001, or 4224).[88] Further, backup withholding generally is not an issue if withholding occurs under Section 1441 or Section 1442[89] or if the payee is a corporation.[90] All of these exemptions, however, require that the payor know the identity of the payee.

In some transactions, foreign payees desire anonymity. Congress and the Treasury have adopted exemptions from backup withholding for interest and

---

[79] See ¶¶ C2.05[1][a], C2.05[3].

[80] See ¶ C2.05[1][a].

[81] See ¶ C2.05[4].

[82] See ¶ C2.05[5].

[83] See ¶ C2.06.

[84] See id.

[85] Interest and Dividend Tax Compliance Act of 1983, § 104.

[86] See ¶ C2.08[1].

[87] See ¶ C2.08[3][a].

[88] See ¶ C2.08[3][b].

[89] See ¶ C2.08[3][c].

[90] See ¶ C2.08[3][d].

original issue discount that may apply without revealing the identity of the payee.[91]

*Section 3401 wage withholding.* Section 3401 may require the withholding of taxes from the wages of foreign individuals for services performed in the United States.[92] Certain exemptions exist, however.[93]

## [3] U.S. Corporations Owned by Foreign Persons

Section 11 generally taxes a domestic corporation on its worldwide income, even if foreign persons own some or all of its stock.[94] Further, under appropriate facts, either the accumulated earnings tax or the personal holding company tax may apply to a domestic corporation owned by foreign persons.[95] Special rules apply if a corporation with foreign shareholders uses a consent dividend to reduce either of these taxes.[96] A domestic corporation with a shareholder that is a foreign corporation, nonresident alien, or foreign trust may not avoid corporate taxes by electing under subchapter S.[97]

A domestic corporation may not join in filing a consolidated return with a foreign parent corporation.[98] However, the domestic corporation may file a consolidated return with its domestic subsidiaries.[99]

*Current distributions.* The normal rules of Sections 301 and 316 define the extent to which distributions from a domestic corporation to its foreign shareholders are dividends.[100] If those dividends are not effectively connected with a foreign shareholder's U.S. trade or business, that shareholder generally pays a 30 percent tax under Section 871(a) or Section 881.[101] The domestic corporation generally collects that tax by withholding.[102] However, foreign shareholders may not have to pay U.S. taxes on a portion of dividends from a domestic corporation that meets the 80 percent foreign business requirements

---

[91] See ¶ C2.08[4].

[92] See ¶ C2.09[1].

[93] See ¶ C2.09.

[94] See ¶ C3.04[1].

[95] Regarding the accumulated earnings tax, see ¶ C3.04[2][a]. Regarding the personal holding company tax, see ¶ C3.04[3][a].

[96] Regarding the accumulated earnings tax, see ¶ C3.04[2][b]. Regarding the personal holding company tax, see ¶ C3.04[3][b].

[97] See ¶ C3.04[4][b].

[98] See ¶ C3.04[4][a].

[99] See id.

[100] See ¶ C3.05[3][b].

[101] See ¶ C3.05[3][c]. A U.S. treaty may reduce the rate of tax, however.

[102] See ¶ C2.03[2].

of Section 861(c)(2)(A).[103] A foreign shareholder generally pays taxes at regular rates on dividends that are effectively connected with the conduct of a trade or business within the United States.[104]

*Interest.* A foreign shareholder generally pays U.S. taxes on any interest received from the domestic corporation.[105] However, a foreign shareholder may not have to pay U.S. taxes on interest from a domestic corporation that meets the 80 percent foreign business requirements of Section 861(c)(2)(A).[106] Further, a treaty may reduce or eliminate U.S. taxes on interest.[107] If a treaty reduces the taxes due from shareholders on interest, however, Section 163(j), the limit on "earnings stripping," may reduce the interest deduction of the domestic corporation.[108]

The shareholders of a domestic corporation may be able to withdraw earnings without any U.S. tax by lending money to the corporation and receiving interest under the portfolio interest rules.[109] However, substantial shareholders cannot use the portfolio interest rules. The term "portfolio interest" does not apply to any interest paid to a "10-percent shareholder."[110]

*Sales of stock.* In general, foreign persons pay no U.S. taxes on the sale of the stock of a domestic corporation (assuming that the gain is not effectively connected with the conduct of a U.S. trade or business).[111] However, tax may result if the domestic corporation is, or was within five years, a U.S. real property holding corporation.[112]

A U.S. real property holding corporation is any corporation that meets a mathematical test. The test is met, in simplified terms, if the value of the corporation's U.S. real estate exceeds one half of the sum of the values of the corporation's U.S. real estate, foreign real estate, and other business assets.[113]

An interest in a corporation will not be a U.S. real property interest if the corporation purges itself of taint. To purge itself, the corporation generally

---

[103] See ¶¶ C1.03[3][c], C3.05[3][c].

[104] See ¶¶ C1.04, C3.05[3][d].

[105] See ¶ C3.03[3][c].

[106] See ¶¶ A2.03[2][c], C3.03[3][c].

[107] See ¶¶ C3.03[3][c], C4.06.

[108] See ¶ C3.04[5][d].

[109] Regarding the portfolio interest rules, see ¶ C1.03[2][c].

[110] See ¶¶ C1.03[2][c], C3.03[3][c].

[111] Regarding the taxation of gains that are effectively connected with the conduct of a U.S. trade or business, see ¶ C1.04. Regarding the taxation of nonresident alien individuals that are present in the United States for 183 days or more during a taxable year, see ¶ C1.03[15][b].

[112] See ¶ C3.09.

[113] See ¶ C3.06[2][c].

must dispose of all the U.S. real property interests held during a defined period (often five years) in transactions in which all gain is recognized.[114]

If a domestic corporation has a class of stock that is "regularly traded on an established securities market," shares in that class generally will not be a U.S. real property interest.[115] This rule allows most foreign persons to buy and sell the stock of publicly traded U.S. corporations without being concerned about Section 897. However, this favorable rule does not apply for a shareholder that owns, or has owned, more than 5 percent of the class of stock at any time during a defined period (often five years).[116]

*Section 332 liquidations.* If a foreign corporation owns 80 percent or more of the stock of a domestic corporation (by both vote and value), the domestic corporation may liquidate in a transaction that qualifies under Section 332.[117] The fact that the parent corporation is foreign, however, changes some of the normal tax results.

The regulations generally require gain recognition when a domestic corporation distributes property in complete liquidation under Section 332 to a foreign corporation that is an 80 percent shareholder.[118] Gain results under Section 367(e)(2), which section overrides Sections 337(a) and 337(b)(1). In certain cases, however, the regulations allow the domestic corporation to avoid the recognition of gain. First, a domestic corporation may avoid recognizing gain on the distribution of property used by the corporation in a U.S. trade or business if certain conditions are met.[119] Second, a domestic corporation generally does *not* recognize gain on the distribution of a U.S. real property interest to a foreign corporation that is an 80 percent shareholder.[120]

The foreign parent corporation generally recognizes no gain or loss on the receipt of property in a Section 332 liquidation.[121] The basis of the distributed property in the hands of the foreign parent equals the subsidiary's basis, increased by any gain and decreased by any loss recognized by the subsidiary.[122]

*Information reporting.* Any domestic corporation that is "25-percent foreign-owned" at any time during a taxable year must report certain information to the Service.[123] In addition, such a corporation must maintain

[114] See ¶ C3.06[2][d].
[115] See ¶ C3.06[2][e].
[116] See id.
[117] See ¶ C3.12[1].
[118] See ¶ C3.12[2][b].
[119] See ¶ C3.12[2][c].
[120] See ¶ C3.12[2][d].
[121] See ¶ C3.12[3].
[122] See id.
[123] See ¶ C3.13.

records needed to determine the correct treatment of certain transactions with related parties.[124]

## [4] Income Tax Treaties

The United States has entered into income tax treaties with forty countries.[125] These treaties are a key part of the U.S. international tax system. Treaties foster international trade and investment by reducing tax barriers, preventing double taxation, and preventing discriminatory tax treatment of residents of treaty countries.[126] Treaties also permit reciprocal administration to prevent avoidance.[127]

The U.S. Constitution provides that treaties are part of the "supreme law of the land."[128] Section 894(a) requires "due regard" to be given to any treaty.[129] Section 7852(d)(1) provides that in determining the relationship between a treaty provision and any U.S. revenue law, "neither the treaty nor the law shall have preferential status by reason of its being a treaty or law."[130] As a result, treaties and the Code generally have equal authoritative weight.[131] In the case of a conflict, the provision adopted later generally controls, unless Congress intends a contrary result.[132] In recent years, Congress has adopted several Code sections that have overridden or limited the benefits of treaties.[133]

To qualify for treaty benefits with respect to U.S. taxes, a foreign person generally must be a resident of a foreign treaty country.[134] Further, a foreign person must not run afoul of treaty shopping limits in either the treaty, the Code, or judicial decisions.[135]

In general, a U.S. treaty contains a "saving" clause that prevents a U.S. citizen from claiming benefits under the treaty.[136] Each saving clause has

---

[124] See id.

[125] See ¶ C4.02.

[126] See ¶ C4.01[2].

[127] See id.

[128] See ¶ C4.03.

[129] See id.

[130] See id.

[131] See id.

[132] See id.

[133] See id.

[134] See ¶ C4.04[1].

[135] See ¶ C4.04[3].

[136] See ¶ C4.04[2]. See also 1991 Staff Report at 217.

exceptions, however, that allow specific benefits (e.g., U.S. foreign tax credits for U.S. citizens).[137]

Most income tax treaties exempt the business profits of a resident of a treaty country from U.S. tax unless those profits are attributable to a taxpayer's U.S. "permanent establishment."[138] These treaties allow foreign persons to conduct limited commercial activities in the United States without tax. Each treaty that exempts business profits contains some definitions of "business profits"[139] and "permanent establishment."[140] In addition, the treaty addresses the matter of what business profits are "attributable" to a permanent establishment.[141]

The Code generally imposes a 30 percent tax on items of U.S.-source fixed or determinable annual or periodical gains, profits, and income that are not effectively connected with the conduct of a U.S. trade or business.[142] Treaties, however, often provide a reduction or exemption for specific types of income, such as interest,[143] dividends,[144] and royalties.[145] To avoid withholding, however, a payor generally must obtain Form 1001 from the foreign payee.[146] A treaty may also protect a foreign corporation from the U.S. branch profits tax.[147]

The Code generally taxes a foreign individual that renders services in the United States.[148] Many treaties, however, provide exemptions for a host of activities.[149]

Double taxation of income may result if two countries treat the income inconsistently. To encourage consistency, a treaty typically allows the U.S. competent authority to attempt to resolve disputes with the competent

---

[137] See ¶ C4.04[2]. Regarding the effect of U.S. treaties on foreign tax credits, see ¶ C4.18. See also 1991 Staff Report at 216, 221–222.

[138] See 1991 Staff Report at 217–219.

[139] See ¶ C4.05[3]. Some treaties use the phrase "industrial or commercial profits" instead of "business profits."

[140] See ¶ C4.05[2].

[141] See ¶ C4.05[4].

[142] See ¶ C1.03.

[143] See ¶ C4.06. The 1991 Staff Report at 220 indicates that the U.S. goal is to have treaties that provide for no withholding tax on interest.

[144] See ¶ C4.07. See also 1991 Staff Report at 219.

[145] See ¶ C4.09. The 1991 Staff Report at 220 indicates that the U.S. goal is to have treaties that provide for no withholding tax on royalties.

[146] See ¶ C2.02[8].

[147] See ¶ C4.08.

[148] See ¶ C1.04[4][b].

[149] See ¶ C4.12.

authority of the foreign treaty country.[150] A taxpayer may invoke the competent authority rules, but a treaty does not require that the two competent authorities reach an agreement.[151]

In 1988, Congress adopted special disclosure rules regarding return positions based on treaties.[152] If a taxpayer takes a position that a treaty reduces the taxpayer's U.S. taxes, Section 6114 may require the taxpayer to disclose the position to the Service.[153] Disclosure has been waived in specific circumstances, however.[154] Penalties may apply to a taxpayer that fails to disclose when required to do so.[155]

## ¶ A1.05 U.S. TAXATION RELATING TO POSSESSIONS

The United States has five major possessions: Puerto Rico, Guam, the U.S. Virgin Islands, the Northern Mariana Islands, and American Samoa.[1] Each major possession has its own individual tax system, framed under statutes adopted by Congress. The Code deals with each major possession against the background of the possession's particular tax system.

Chapter D1 outlines the Code provisions that relate to U.S. possessions. Some of the major features are summarized here.

*Puerto Rico.* An individual resident of Puerto Rico generally is subject to U.S. taxation at regular rates under Section 1.[2] However, such individuals may exclude from gross income most income from sources within Puerto Rico.[3]

A Puerto Rican corporation is generally subject to U.S. taxation as a foreign corporation.[4] Thus, a Puerto Rican corporation generally pays U.S. taxes only on income effectively connected with the conduct of a U.S. trade or business and on U.S.-source fixed or determinable annual or periodical gains, profits, and income.

*Virgin Islands.* An individual who is a bona fide resident of the Virgin Islands at the close of a taxable year files a return with the Virgin Islands and

---

[150] See ¶ C4.21[1].

[151] See id.

[152] See ¶ C4.22[1].

[153] See id.

[154] See ¶ C4.22[5].

[155] See ¶ C4.22[6].

[1] See ¶ D1.01. In addition, the United States has other smaller possessions.

[2] IRC § 876, discussed at ¶ D1.02[2]. The 1991 Staff Report at 215 indicates that a person born in Puerto Rico typically is a U.S. citizen.

[3] IRC § 933(1), discussed at ¶ D1.02[3].

[4] See ¶ D1.03.

# U.S. INTERNATIONAL TAXATION

JOEL D. KUNTZ

ROBERT J. PERONI

VOLUME 2



# U.S. INTERNATIONAL TAXATION

JOEL D. KUNTZ

*General Counsel*
*ENTEK International, L.L.C.*

ROBERT J. PERONI

*Parker C. Fielder Regents Professor in Tax Law*
*University of Texas School of Law*
*Austin, Tex.*

**VOLUME 2**

LIBRARY OF
CLEARY GOTTLIEB



STEEN & HAMILTON LLP

WG
&L

WARREN, GORHAM & LAMONT
OF RIA

Copyright © 1992, 1994, 1996, 2002, 2005 by

WARREN, GORHAM & LAMONT

of RIA

ALL RIGHTS RESERVED

No part of this book may be reproduced in any form, by photostat, micro-
film, xerography, or any other means, or incorporated into any information
retrieval system, electronic or mechanical, without the written permission of
the copyright owner. Inquiries regarding permission for use of material con-
tained in this publication should be addressed to:

RIA
117 East Stevens Avenue
Valhalla, NY 10595

Vol. 1 ISBN 0-7913-5696-5
Vol. 2 ISBN 0-7913-5697-2
Vol. 3 ISBN 0-7913-5698-1
Set ISBN 0-7913-5695-7

Library of Congress Control No. 91-65051

This publication is designed to provide accurate and authoritative information
in regard to the subject matter covered. It is sold with the understanding that
neither the author(s) nor the publisher is engaged in rendering legal, account-
ing, or other professional service. If legal advice or other expert assistance is
required, the services of a competent professional should be sought.

PRINTED IN THE UNITED STATES OF AMERICA





THOMSON

RIA

# Summary

*VOLUME*

### PART A   GENERAL MATTERS
**A1**  Introduction
**A2**  Sources of Income and Deductions
**A3**  Reallocations of Income and Deduction

### PART B   TAXATION OF U.S. PERSONS ACTIVITIES
**B1**  General Taxation of U.S. Citizens, Res
        Corporations With Foreign Activities c
**B2**  Foreign Corporations Owned by U.S. F
**B3**  Controlled Foreign Corporations
**B4**  Foreign Tax Credits
**B5**  Reorganizations and Divisions Involvir
        by U.S. Persons
**B6**  Distributions, Sales, Pledges, Redempti
        Foreign Corporations Owned by U.S. F
**B7**  U.S. Persons in Partnerships and Limit
        Foreign Activities or Income

*VOLUME*

### PART C   TAXATION OF FOREIGN PEI ACTIVITIES
**C1**  General Taxation of Foreign Persons W
**C2**  Withholding
**C3**  U.S. Corporations Owned by Foreign F
**C4**  Income Tax Treaties

¶ C1.08  Corporate Penalty Taxes ................................... C1-274
    [1] Introduction ....................................... C1-274
    [2] Accumulated Earnings Tax ............................. C1-274
    [3] Personal Holding Company Tax ........................ C1-278

¶ C1.09  Increases in Taxes Imposed on Citizens and Corporations of
    Certain Foreign Countries That Impose Discriminatory or More
    Burdensome Taxes on U.S. Citizens and Corporations (Sections
    891 and 896) ......................................... C1-279
    [1] Section 891 ....................................... C1-279
    [2] Section 896 ....................................... C1-280
       [a] Section 896(a) .................................. C1-280
       [b] Section 896(b) .................................. C1-281

¶ C1.10  Special Rules for Individuals That Give Up U.S. Citizenship or
    Residency ............................................ C1-282
    [1] Individuals That Abandon U.S. Citizenship (Section 877) ... C1-282
       [a] Introduction ................................... C1-282
       [b] Application .................................... C1-282
       [c] Tax Results Under Section 877 .................... C1-283
       [d] Establishing Tax-Avoidance Motive ................ C1-286
       [e] Relationship Between Treaty Provisions and
          Section 877 .................................... C1-286
       [f] Current Significance of Section 877 ................ C1-287
    [2] Individuals That Give Up U.S. Residency (Section
       7701(b)(10)) ...................................... C1-287

# ¶ C1.01  INTRODUCTION

The United States taxes its citizens, resident aliens, and domestic corporations on their worldwide incomes, without regard to the geographic source of such income (subject to a few exceptions only, such as Section 911).[1] By contrast, the United States asserts a much more limited taxing jurisdiction over nonresident alien individuals and foreign corporations.[2] For such foreign persons, the United States generally taxes only U.S.-source income of specified types[3] and income effectively connected (or treated as effectively connected) with a trade or business conducted by the foreign person within the United States.[4]

---

[1] See ¶ B1.03.

[2] Regarding the taxation of foreign persons, see generally Balkin, "Nonresident Alien Individuals—U.S. Income Taxation," Tax Mgmt. Portfolio (BNA) 340 (1986); Schneidman, "U.S. Portfolio Investment by Foreign Taxpayers," G1 Tax Transactions Library (CCH) (1990); Sarafopoulos, "Foreign Corporations—U.S. Income Taxation," Tax Mgmt. Portfolio (BNA) 156-5th (1988).

[3] See infra ¶ C1.03.

[4] See infra ¶ C1.04.

A nonresident alien individual or foreign corporation may be subject to either or both of two radically different tax regimes. The first regime applies to certain income that is not effectively connected with the conduct of a U.S. trade or business. The second regime applies to income that is effectively connected with the conduct of a U.S. trade or business.

*Income not from a U.S. business.* Under Sections 871(a) and 881, a nonresident alien individual or foreign corporation pays tax at a flat rate of 30 percent on the U.S.-source income that is not effectively connected with a U.S. trade or business and that falls within the definition of fixed or determinable annual or periodical income and certain other income listed in the statute.[5] This tax may apply to such items as dividends,[6] interest,[7] and royalties[8] and is generally collected through withholding by the payor.[9] This tax applies to gross income, generally with no deductions allowed.[10] A tax treaty, however, may reduce the tax rate or eliminate the tax altogether.[11]

In part to manage the U.S. balance of payments, Congress has created huge tax exemptions for certain types of interest earned in the United States by foreign persons. As a result, foreign persons generally may receive portfolio interest,[12] bank interest,[13] and short-term original issue discount[14] without U.S. tax.

A nonresident alien individual, but not a foreign corporation, may pay a flat 30 percent tax on the individual's U.S.-source capital gains (other than gains effectively connected with a U.S. trade or business) if the individual is present in the United States for at least 183 days during the individual's taxable year.[15] Most other capital gains not effectively connected with a U.S. trade or business are not subject to U.S. income tax.[16]

*U.S. business income.* Under Sections 871(b) and 882, a nonresident alien individual or foreign corporation generally pays U.S. income tax at the regular U.S. rates on the income (including certain foreign-source income) that is

---

[5] See infra ¶ C1.03[1].

[6] See infra ¶ C1.03[3].

[7] See infra ¶ C1.03[2].

[8] See infra ¶ C1.03[4].

[9] See ¶ C2.02.

[10] See infra ¶ C1.03[17].

[11] See Chapter C4.

[12] See infra ¶ C1.03[2][c].

[13] See infra ¶ C1.03[2][h].

[14] See infra ¶ C1.03[2][d].

[15] See infra ¶ C1.03[15][b]. Presence in the United States for 183 days or more generally causes an alien to be taxed as a U.S. resident on worldwide income, however. See ¶ B1.02[2][c].

[16] See infra ¶ C1.03[15].

effectively connected with a U.S. trade or business.[17] Application of these taxes requires the determination of (1) whether the foreign person is engaged in a U.S. trade or business[18] and (2) what income is effectively connected with the conduct of a U.S. trade or business.[19] Despite the rules in the Code, however, a U.S. treaty may protect a foreign person from tax if that person does not have a U.S. "permanent establishment."[20]

In computing the tax on U.S. business income, a foreign person generally may deduct the expenses that are connected with the business if a true and accurate return is filed.[21] Further, a limited foreign tax credit may be allowed.[22]

In 1980, Congress adopted a special provision to apply to gains on the disposition of U.S. real property. Section 897 generally treats such gains as effectively connected with the conduct of a U.S. trade or business and, thus, subject to U.S. tax at regular rates.[23]

In 1986, Congress added a second tax that may apply to a foreign corporation that has income effectively connected with the conduct of a U.S. trade or business. When earnings are withdrawn from the U.S. business, a branch profits tax under Section 884 may apply.[24]

*Application to nonresident aliens and foreign corporations.* The rules discussed in this chapter generally apply to nonresident alien individuals, foreign corporations, and certain other foreign persons. Section 7701(b) contains the tests for determining whether an alien individual is a U.S. resident for income tax purposes.[25] A nonresident alien is subject to the rules discussed in this chapter. By contrast, an alien that is a U.S. resident is generally subject to U.S. tax on worldwide income.[26] Further, the residents of certain U.S. possessions may be subject to U.S. taxation on their worldwide incomes, rather than taxation under the sections discussed in this chapter.[27]

Section 7701(a)(5) defines a foreign corporation as any corporation that is

---

[17] See infra ¶ C1.04. Section 2(d) provides that the tax imposed by Section 1 applies to nonresident alien individuals only to the extent provided in Section 871 or Section 877 (relating to expatriates who renounced their U.S. citizenship with tax avoidance as one of the principal purposes for such renunciation). Similarly, Section 11(d) provides that the tax imposed by Section 11 applies to foreign corporations only to the extent that Section 882 provides.

[18] See infra ¶ C1.04[4].

[19] See infra ¶ C1.04[5].

[20] See infra ¶ C1.04[7] and ¶ C4.05.

[21] See infra ¶ C1.04[8].

[22] See infra ¶ C1.04[10].

[23] See infra ¶ C1.06.

[24] See infra ¶ C1.05.

[25] See ¶ B1.02[2][c].

[26] See ¶ B1.03.

[27] IRC § 876, discussed at ¶¶ D1.02, D1.08.

not domestic.[28] A corporation organized in a U.S. possession generally is treated as a foreign corporation.[29]

Certain foreign corporations, however, may not be subject to the rules discussed in this chapter. A foreign corporation with stapled stock may be taxed as a domestic corporation.[30] Further, Section 881(b) treats certain corporations organized in U.S. possessions as *not* foreign corporations for purposes of Sections 881 and 884.[31]

*History of Foreign Investors Tax Act of 1966.* Before 1966, a nonresident alien individual or foreign corporation engaged in a trade or business in the United States was taxable at regular tax rates on all the individual's or corporation's U.S.-source income (whether or not connected with the conduct of a U.S. trade or business), net of deductions properly allocable to such income.[32] A nonresident alien or foreign corporation that was not engaged in a U.S. trade or business was taxed at a flat rate of 30 percent on U.S.-source fixed or determinable annual or periodical income (unless a lower treaty rate applied).[33] However, if such income exceeded $21,200, a nonresident alien individual was taxed at the regular rates if the regular rates produced a greater tax than the 30 percent gross basis tax.[34] A nonresident alien individual's U.S.-source capital gains were subject to tax if the individual was present in the United States when the capital gains were realized.[35] Further, the nonresident alien individual was subject to tax on all U.S.-source capital gains realized during a year (regardless of whether the alien was present in the United States when the gains were realized) if the alien was present in the United States for periods aggregating at least ninety days during the year.[36] A foreign corporation's capital gains were not subject to tax if the corporation was not engaged in a U.S. trade or business.

---

[28] Under Sections 7701(a)(4) and 7701(a)(10), a domestic corporation is a corporation created or organized in the United States, or under the laws of the United States, the District of Columbia, or one of the fifty states. See ¶ B1.03[a].

[29] See ¶¶ D1.03, D1.06, D1.09.

[30] See IRC § 269B, discussed at ¶ B2.09.

[31] See ¶¶ D1.03[1][b], D1.06[1][b], D1.09[1][b].

[32] Former IRC §§ 871(c), 882(a). This rule became known as the "force of attraction" principle, meaning that under pre–1966 Act law, if a foreign person engaged in a U.S. trade or business during a taxable year, that U.S. business "attracted" all of such person's U.S.-source income (including fixed or determinable annual or periodical income) and caused such income to be taxed at regular rates, without regard to whether the income had any connection with the U.S. business. Regarding the rules that applied before the Foreign Investors Tax Act of 1966, see generally S. Roberts & W. Warren, U.S. Income Taxation of Foreign Corporations and Nonresident Aliens (1967).

[33] Former IRC §§ 871(a)(1), 881(a).

[34] Former IRC § 871(b).

[35] Former IRC § 871(a)(2)(A).

[36] Former IRC § 871(a)(2)(B).

Congress enacted the Foreign Investors Tax Act of 1966 to provide a more equitable tax treatment of foreign investment in the United States and to simplify what it viewed as an "unnecessarily complicated" and somewhat arbitrary law.[37] Congress also attempted to use the change in the rules governing foreign persons to stimulate increased investment in the United States by nonresident alien individuals and foreign corporations.[38]

The Foreign Investors Tax Act of 1966 revised Section 871(a)(1) to impose a 30 percent, gross basis tax on a nonresident alien individual's or foreign corporation's U.S.-source fixed or determinable annual or periodical income, regardless of the amount of such income, provided that such income is not effectively connected with the conduct of a U.S. trade or business. Under Section 871(a)(2), as revised by the 1966 Act, a nonresident alien individual (but not a foreign corporation) is subject to tax at a flat 30 percent rate on the individual's U.S.-source net capital gains, if such gains are not effectively connected with a U.S. trade or business and if the individual is present in the United States for at least 183 days during the year. A nonresident alien individual's or foreign corporation's income that is effectively connected with a U.S. trade or business (including any capital gains that are so connected), net of the deductions that are properly allocable to such income, is taxable at regular, graduated rates under Section 871(b) or Section 882.

## ¶ C1.02 GROSS INCOME

### [1] In General

The general definition of "gross income" applies for nonresident alien individuals and foreign corporations.[1] However, Sections 872(a) and 882(b) narrow the definition greatly. Under Sections 872(a) and 882(b), the gross

---

[37] See HR Rep. No. 1450, 89th Cong., 2d Sess. 1, 5–6, 27 (1966); S. Rep. No. 1707, 89th Cong., 2d Sess. 1, 9, 23–24, 32–33 (1966).

[38] See HR Rep. No. 1450, 89th Cong., 2d Sess. 5–6 (1966); S. Rep. No. 1707, 89th Cong., 2d Sess. 9 (1966).

[1] Section 61(a) defines "gross income" except to the extent "otherwise provided by this subtitle [subtitle A]." Subtitle A consists of Sections 1–1564. Sections 71–134 contain various exclusions and inclusions that modify the general definition of gross income in Section 61 for all taxpayers (including, generally, nonresident alien individuals and foreign corporations). In the case of nonresident alien individuals and foreign corporations, Sections 872(b) and 882(b) further limit the general definition of gross income. See Rev. Rul. 56-514, 1956-2 CB 499 (stating that term "gross income" in Sections 861, 862, 863, and 872 for nonresident alien individual had to be defined by referring to meaning of "gross income" in other Code provisions, such as Section 61 and specific exclusion provisions in Sections 104, 105, and 106; nonresident alien individual could exclude payments for sickness or injury under Sections 104, 105, and 106 if the individual otherwise met requirements of those sections).

election.[409] If a nonresident alien or foreign corporation is a member of a partnership that owns U.S. real property, any election occurs at the partner level (not at the partnership level).[410]

Once made, the election remains in effect for all later years, until properly revoked.[411] Revocation generally can be made only with the consent of the Commissioner.[412] However, the regulations allow a taxpayer to revoke the initial election without the Commissioner's consent within the time period allowed for making the election.[413]

A taxpayer that revokes an election with the Service's consent generally may not elect again under Section 871(d) or Section 882(d) before the fifth taxable year that begins after the first taxable year for which the revocation is effective.[414] The Service, however, may consent to an earlier new election.[415]

## ¶ C1.04 TAXATION OF INCOME EFFECTIVELY CONNECTED WITH U.S. TRADE OR BUSINESS

### [1] Introduction

A nonresident alien individual or foreign corporation engaged in a trade or business in the United States is subject to two different methods of U.S. taxation.[1] First, the nonresident alien individual or foreign corporations engaged in a U.S. trade or business is taxed on certain *nonbusiness* income

---

[409] See Treas. Reg. § 1.871-10(d)(1)(i).

[410] Treas. Reg. § 1.871-10(d)(3).

[411] IRC §§ 871(d)(1), 882(d)(1); Treas. Reg. § 1.871-10(d)(2)(i). The election remains in effect even in later years in which the taxpayer has no income from U.S. real property or in which the taxpayer does not need to file a return because the taxpayer's gross income does not reach the floor triggering the filing requirement under Section 6012. See Treas. Reg. § 1.871-10(d)(2)(i).

[412] Treas. Reg. § 1.871-10(d)(1)(i).

[413] Id.

[414] IRC §§ 871(d)(2), 882(d)(2). If a taxpayer makes a timely revocation without the Service's consent, the taxpayer may make another Section 871(d) or Section 882(d) election for a later taxable year, without the Commissioner's consent. Treas. Reg. § 1.871-10(d)(1)(i). A request for revocation of the election must be made in writing and must contain certain information required in the regulations. Treas. Reg. § 1.871-10(d)(2)(iii).

[415] IRC §§ 871(d)(2), 882(d)(2); Treas. Reg. §§ 1.871-10(d)(2)(i), 1.871-10(d)(2)(iii). A request for a new election before the five-year waiting period must be made in writing and must contain certain information required in the regulations. Treas. Reg. § 1.871-10(d)(2)(iii). A new election is treated as an initial election and is subject to all the rules just described in the text. Treas. Reg. § 1.871-10(d)(2)(ii).

[1] See Treas. Reg. §§ 1.871-8(a), 1.882-1(a).

from U.S. sources. That nonbusiness income is U.S.-source fixed (
minable annual or periodical gains, profits, and income and other U.S
income falling within one of the categories of income taxable under
871(a) or Section 881(a), as well as U.S.-source net capital gains fo
nonresident alien individuals.[2] This U.S.-source, nonbusiness income
on a gross basis, with virtually no offsetting deductions, at a flat ra
percent (or lower treaty rate, if applicable).[3]

Second, in the case of income that is effectively connected ↩
conduct of a trade or business within the United States, a nonresid〈
individual or foreign corporation is taxed on a net basis—effectively cc
income less allowable deductions allocable to that income.[4] This net
income from the U.S. business is subject to income tax at regular ra

Sections 871(b) and 882 take priority over Sections 871(a) and 88]
respect to income that is effectively connected with the conduct of a U.
or business. In other words, income that is effectively connected ↩
conduct of a U.S. trade or business is taxable at regular rates under
871(b) or Section 882 even if the income would otherwise be of a type d
in Section 871(a) or Section 881(a).[6]

Sections 871(b)(1) and 882(a)(1) apply only to a nonreside
individual's or foreign corporation's taxable income that is effectiv
nected with the conduct of a U.S. trade or business. Thus, to trigger
under Sections 871(b) and 882(a), the nonresident alien individual or
corporation generally must be engaged in a trade or business within th〈
States. The issue of whether the foreign person is engaged in a U.S.
business is discussed later in this chapter.[7] A separate paragraph (

---

[2] IRC §§ 871(a), 873, 881(a), 882(c), discussed supra ¶ C1.03. Section
does not apply to a foreign corporation, and Section 881 does not contain an a
rule. A foreign corporation is not subject to U.S. income tax on its nonbusine:
gains. See supra ¶ C1.03[15][c].

[3] IRC §§ 871(a), 881(a). As discussed infra ¶ C1.09, these tax rates
increased under Section 891 or Section 896 under certain circumstances i
taxpayers who are citizens or residents of foreign countries that impose discrii
or unduly burdensome income taxes on U.S. citizens and residents and
corporations.

[4] IRC §§ 871(b), 882(a).

[6] Sections 871(b)(1) and 882(a)(1) refer to taxation under Sections 1,
402(e)(1) for individuals and Sections 11, 55, 59A, and 1201(a) for corporati

[6] Sections 871(a)(1) and 881(a) both provide that the 30 percent, gross-ba
those sections applies "only to the extent the amount so received is not ei
connected with the conduct of a trade or business within the United States." S
Section 871(a)(2) provides that the 30 percent tax in that Section on certain U.!
net capital gains of a nonresident alien individual does not apply if the capital
taken into account under Section 871(b).

[7] See infra ¶ C1.04[4].

when income is effectively connected with a taxpayer's U.S. trade or business.[8]

Certain Code sections treat a taxpayer as engaged in a trade or business within the United States even if the taxpayer is not actually so engaged. For example, if a nonresident alien individual or foreign corporation has gains and losses from the disposition of U.S. real property interests, Section 897(a) treats the taxpayer as engaged in the conduct of a trade or business within the United States. Section 897(a) also treats those gains and losses as if they were effectively connected with such trade or business.[9] As a result, such gains or losses are taxable under Section 871(b) or Section 882 at regular rates. As another example, Section 875 treats a partner of a partnership or a beneficiary of a trust as engaged in a U.S. trade or business if the partnership or trust is so engaged.

Further, other Code sections treat income as effectively connected with a U.S. trade or business even if the income is received in a year in which the taxpayer is not actually engaged in such a business. For example, Section 864(c)(6) provides that in determining whether income or gain attributable to a sale of property or the performance of services in a prior taxable year is effectively connected, the income will be treated as if it were taken into account in the prior taxable year and without regard to whether the taxpayer is engaged in a U.S. trade or business in the current year.[10] In addition, if the taxpayer elects under Section 871(d) or Section 882(d), income from certain U.S. real property is treated as effectively connected with the conduct of a U.S. trade or business and is taxed at regular rates under Section 871(b) or Section 882 even though the income would not otherwise be effectively connected with a U.S. trade or business.[11]

Engaging in a U.S. trade or business may have important indirect effects for a foreign corporation. First, in addition to the tax under Section 882, the branch profits tax under Section 884 may apply.[12] Second, in some cases, dividends paid by the foreign corporation will be treated as U.S.-source income, taxable even to its foreign shareholders.[13]

Under certain conditions, a U.S. treaty may help a foreign corporation avoid U.S. tax on income that is effectively connected with the conduct of a U.S. trade or business. Such a treaty may help if the corporation does not have a "permanent establishment" in the United States.[14]

---

[8] See infra ¶ C1.04[5].

[9] See infra ¶ C1.06.

[10] See infra ¶ C1.04[5][b].

[11] Regarding the election under Section 871(d) or Section 882(d), see supra ¶ C1.03[19] and infra ¶ C1.04[5][f].

[12] See infra ¶ C1.05.

[13] Regarding the impact of effectively connected income on the source of dividends, see ¶ A2.03[3][d].

[14] See ¶ C4.05.

election.[409] If a nonresident alien or foreign corporation is a member of a partnership that owns U.S. real property, any election occurs at the partner level (not at the partnership level).[410]

Once made, the election remains in effect for all later years, until properly revoked.[411] Revocation generally can be made only with the consent of the Commissioner.[412] However, the regulations allow a taxpayer to revoke the initial election without the Commissioner's consent within the time period allowed for making the election.[413]

A taxpayer that revokes an election with the Service's consent generally may not elect again under Section 871(d) or Section 882(d) before the fifth taxable year that begins after the first taxable year for which the revocation is effective.[414] The Service, however, may consent to an earlier new election.[415]

## ¶ C1.04 TAXATION OF INCOME EFFECTIVELY CONNECTED WITH U.S. TRADE OR BUSINESS

### [1] Introduction

A nonresident alien individual or foreign corporation engaged in a trade or business in the United States is subject to two different methods of U.S. taxation.[1] First, the nonresident alien individual or foreign corporations engaged in a U.S. trade or business is taxed on certain *nonbusiness* income

---

[409] See Treas. Reg. § 1.871-10(d)(1)(i).

[410] Treas. Reg. § 1.871-10(d)(3).

[411] IRC §§ 871(d)(1), 882(d)(1); Treas. Reg. § 1.871-10(d)(2)(i). The election remains in effect even in later years in which the taxpayer has no income from U.S. real property or in which the taxpayer does not need to file a return because the taxpayer's gross income does not reach the floor triggering the filing requirement under Section 6012. See Treas. Reg. § 1.871-10(d)(2)(i).

[412] Treas. Reg. § 1.871-10(d)(1)(i).

[413] Id.

[414] IRC §§ 871(d)(2), 882(d)(2). If a taxpayer makes a timely revocation without the Service's consent, the taxpayer may make another Section 871(d) or Section 882(d) election for a later taxable year, without the Commissioner's consent. Treas. Reg. § 1.871-10(d)(1)(i). A request for revocation of the election must be made in writing and must contain certain information required in the regulations. Treas. Reg. § 1.871-10(d)(2)(iii).

[415] IRC §§ 871(d)(2), 882(d)(2); Treas. Reg. §§ 1.871-10(d)(2)(i), 1.871-10(d)(2)(iii). A request for a new election before the five-year waiting period must be made in writing and must contain certain information required in the regulations. Treas. Reg. § 1.871-10(d)(2)(iii). A new election is treated as an initial election and is subject to all the rules just described in the text. Treas. Reg. § 1.871-10(d)(2)(ii).

[1] See Treas. Reg. §§ 1.871-8(a), 1.882-1(a).

---

from U.S. sources. That nonbusiness income is U.S.-sourc minable annual or periodical gains, profits, and income and income falling within one of the categories of income taxab 871(a) or Section 881(a), as well as U.S.-source net capital nonresident alien individuals.[2] This U.S.-source, nonbusines on a gross basis, with virtually no offsetting deductions, at percent (or lower treaty rate, if applicable).[3]

Second, in the case of income that is effectively con conduct of a trade or business within the United States, a individual or foreign corporation is taxed on a net basis — effe income less allowable deductions allocable to that income.[4] income from the U.S. business is subject to income tax at r

Sections 871(b) and 882 take priority over Sections 871(a respect to income that is effectively connected with the condu or business. In other words, income that is effectively co conduct of a U.S. trade or business is taxable at regular ra 871(b) or Section 882 even if the income would otherwise be o in Section 871(a) or Section 881(a).[5]

Sections 871(b)(1) and 882(a)(1) apply only to a r individual's or foreign corporation's taxable income that i nected with the conduct of a U.S. trade or business. Thus, t under Sections 871(b) and 882(a), the nonresident alien indi corporation generally must be engaged in a trade or business States. The issue of whether the foreign person is engaged i business is discussed later in this chapter.[7] A separate par

---

[2] IRC §§ 871(a), 873, 881(a), 882(c), discussed supra ¶ C1.0: does not apply to a foreign corporation, and Section 881 does not cc rule. A foreign corporation is not subject to U.S. income tax on its gains. See supra ¶ C1.03[15][c].

[3] IRC §§ 871(a), 881(a). As discussed infra ¶ C1.09, these increased under Section 891 or Section 896 under certain circu taxpayers who are citizens or residents of foreign countries that imp or unduly burdensome income taxes on U.S. citizens and resid corporations.

[4] IRC § 871(b), 882(a).

[5] Sections 871(b)(1) and 882(a)(1) refer to taxation under S 402(e)(1) for individuals and Sections 11, 55, 59A, and 1201(a) for

[6] Sections 871(a)(1) and 881(a) both provide that the 30 percen those sections applies "only to the extent the amount so receive connected with the conduct of a trade or business within the Unitec Section 871(a)(2) provides that the 30 percent tax in that Section on net capital gains of a nonresident alien individual does not apply if i taken into account under Section 871(b).

[7] See infra ¶ C1.04[4].

## [2] Determination of Taxable Income From U.S. Trade or Business

Sections 871(b)(1) and 882(a)(1) tax at regular rates a nonresid
individual's or foreign corporation's "taxable income" that is e
connected with the conduct of a trade or business in the Unite
"Taxable income" for this purpose is computed by taking gross incor
effectively connected with the conduct of a U.S. trade or busin
subtracting the deductions that are connected with that income.[15]

Thus, to compute effectively connected taxable income, the no
alien individual or foreign corporation first determines what gross i
effectively connected with the conduct of the trade or business w
United States. Section 864(c) governs that basic determination.[16]  F
other Code sections may treat certain income realized by a foreign p
effectively connected income even if the income would not be e
connected income under Section 864(c). For example, if a foreign pe
gains and losses from the disposition of U.S. real property interests
897(a) generally treats those gains and losses as if they were e
connected with the conduct of a trade or business within the United

Second, the foreign person must determine which deductions
properly apportioned and allocated to the effectively connecte
income.[18] This issue is discussed in Chapter A2.[19]

## [3] Tax Rates

As a general matter, the nonresident alien individual's or foreign corp
taxable income that is effectively connected with the U.S. trade or bu
taxed at the regular rates in Section 1 or Section 11, as the case may
addition, either a nonresident alien individual or a foreign corporatio
subject to the alternative minimum tax on income that is effectively c
with the conduct of a U.S. trade or business,[21] and a foreign corpora
be liable for the environmental tax.[22] A foreign corporation may pay a

---

[15] IRC §§ 871(b)(2), 873(a), 882(a)(2), 882(c)(1)(A). See also Treas.
1.871-8(b)(2), 1.882-1(b)(2).

[16] See infra ¶ C1.04[5].

[17] See infra ¶ C1.06.

[18] IRC §§ 873(a), 882(c)(1)(A). See infra ¶ C1.04[8].

[19] See ¶ A2.05.

[20] IRC §§ 871(b)(1), 882(a)(1). Regarding the rate schedules that app
Section 1 to married nonresident aliens with effectively connected income,
Rul. 72-413, 1972-2 CB 436.

[21] IRC §§ 55, 871(b)(1), 882(a)(1).

[22] IRC §§ 59A, 882(a)(1).

rate of tax on a net capital gain, but only if Congress reinstates a rate preference for corporate capital gains.[23] A nonresident alien individual may be liable for tax under Section 402(e)(1) on a lump-sum distribution from a qualified retirement plan.[24]

The general rates of tax may change for foreign persons under certain conditions. If a foreign country's laws discriminate against U.S. persons, the president can double the U.S. tax rates in retaliation.[25] In addition, foreign discrimination against U.S. persons may lead to adjustment under Section 896.[26]

### [4] Definition of "Trade or Business Within the United States"

#### [a] In General

Section 864(b) contains a limited definition of the phrase "trade or business within the United States."[27] Section 864(b)(1) basically applies to the performance of personal services. Section 864(b)(2) applies to the trading in securities or commodities. All cases not governed by Section 864(b) are left to the courts and the Service.[28]

The fact that a person is treated under Section 864(b) as not engaged in a U.S. trade or business by reason of the activities described in that section is not relevant in determining whether the person is engaged in a U.S. trade or

---

[23] IRC §§ 882(a)(1), 1201(a). At present, the top rate of tax in both Sections 11 and 1201(a) is 34 percent.

[24] IRC §§ 402(e)(1), 871(b)(1).

[25] IRC § 891, discussed infra ¶ C1.09.

[26] See infra ¶ C1.09.

[27] The rules in Section 864(b) for determining whether a foreign person is engaged in a trade or business in the United States "may differ in some respects from those used in determining whether a taxpayer is engaged in a trade or business" under other Code sections. See Rev. Rul. 88-3, 1988-1 CB 268.

Section 864(d) applies by its terms for purposes of this part, part II, and ch. 3. Those parts and chapter consist of Sections 861–865, Sections 871–898, and Sections 1441–1464.

[28] Rev. Rul. 88-3, 1988-1 CB 268 (determinations under Section 864 must be made by applying Section 864 regulations "to the facts and circumstances of each case"). Rev. Rul. 88-3 revoked Rev. Rul. 73-227, 1973-1 CB 338, which had held, with scant analysis, that the U.S.-source interest income that had been earned by a foreign financing subsidiary of a U.S. parent corporation was effectively connected with a U.S. trade or business under Section 864(c). Rev. Rul. 88-3 revoked Rev. Rul. 73-227 because the latter ruling concluded that the subsidiary's interest income was effectively connected income without applying the rules in Section 864(b) and the regulations thereunder to the facts involved in the ruling. Since Rev. Rul. 73-227 failed to apply the proper legal standard, Rev. Rul. 88-3 concluded that "its conclusion may be unsound." Rev. Rul. 88-3, 1988-1 268, 269.

business by reason of other activities not governed by that section.[29] In
of these other activities, the determination of whether a foreign tax
engaged in a trade or business within the United States involves
and-circumstances analysis.[30]

The mere maintenance of records and collection of dividends
managerial attention to securities does not constitute a trade or busi
purposes of Section 864.[31] The courts have stated that the Supreme
definition of "trade or business" in *Higgins v. Comm'r*[32] applies for
of interpreting that term in Section 871.[33] The Service ordinarily will
a private ruling regarding whether a taxpayer is engaged in a trade or
in the United States.[34]

Courts or the Service have found that a U.S. trade or business
when (1) a taxpayer sold products in the United States through an ag
a taxpayer exported goods from the United States with activities in th
States that included the solicitation of orders, the inspection of merc
the making of purchases, the completion of sales, and the maintenan
office and bank account;[36] and (3) a taxpayer entered horses in rac
United States.[37] A court also found a U.S. trade or business when a

---

[29] Treas. Reg. § 1.864-2(e).

[30] Id.; Rev. Rul. 88-3, 1988-1 CB 268, 269 (determination of whethe
person is engaged in trade or business within United States is "highly
revoking Rev. Rul. 73-227, 1973-1 CB 338. For discussions of the cases and r
the question whether a foreign person is engaged in the conduct of a trade or
within the United States, see Garelik, "What Constitutes Doing Business W
United States by a Nonresident Alien Individual or a Foreign Corporation,"
Rev. 423 (1963); Isenbergh, "The 'Trade or Business' of Foreign Taxpaye
United States," 61 Taxes 972 (1983).

[31] Piedad Alvarado deKrause, ¶ 74,291 P-H Memo. TC (1974) (domesi
collection and distribution of investment income was not treated as trade or
within United States).

[32] Higgins v. Comm'r, 312 US 212 (1941).

[33] See Piedad Alvarado deKrause, ¶ 74,291 P-H Memo. TC (1974). The
case was also cited in Continental Trading, Inc. v. Comm'r, 265 F2d 40 (9th C
denied, 361 US 827 (1959), and in Amalgamated Dental Co., 6 TC 1009 (19

[34] Rev. Proc. 91-6, § 4.013, 1991-2 IRB 29, 30. See also Rev. Rul. 88-3, 1
268, 269 (stating this point).

[35] Rev. Rul. 70-424, 1970-2 CB 150; Rev. Rul. 55-617, 1955-2 CB 774.

[36] United States v. Balanovski, 236 F2d 298 (2d Cir. 1956), rev'g on this is:
on other issues 131 F. Supp. 898 (SDNY 1955), cert. denied, 352 US 968 (195
much earlier case that reached a contrary result on different facts, see RJ Dor
12 BTA 1102 (1928), acq. VIII-1 CB 13 (nonresident alien individual's g;
purchase of manufactured goods in United States and sale of such goods outsic
States was foreign-source income not subject to U.S. income tax even though ii
maintained office in United States for purchase of such goods).

[37] Rev. Rul. 58-63, 1958-1 CB 624 (nonresident alien individual owne
stable in France and entered horse in single race in United States; indivi
engaged in trade or business within United States under former Section 871(c)

person traded in commodities through a resident agent with discretionary authority[38] and when another foreign person traded actively in the United States for his own account.[39]

On the other hand, courts or the Service have found that a U.S. trade or business did not exist when (1) a taxpayer rented an office from a U.S. lawyer without obtaining exclusive use of any room or even a desk in the lawyer's office;[40] (2) a taxpayer maintained a U.S. office to collect dividends;[41] (3) a taxpayer operated a radio station in Mexico;[42] (4) a taxpayer advanced money, either as a loan or as a contribution to a joint venture, to a U.S. corporation for the purchase of ships, which were sold shortly thereafter;[43] (5) a taxpayer bought goods in the United States and sold those goods involuntarily during war time;[44] (6) a taxpayer made two isolated sales of goods in the United States;[45] (7) a taxpayer collected dividends and engaged in isolated purchases and sales of goods;[46] (8) a taxpayer obtained a license to do business and had a letterhead with a U.S. address;[47] (9) a taxpayer, after a whaling expedition,

---

was exempt from U.S. income tax, however, under U.S.-French income tax treaty because individual did not have permanent establishment in United States), amplified by Rev. Rul. 60-249, 1960-2 CB 264.

[38] Fernand CA Adda, 10 TC 273 (1948), aff'd, 171 F2d 457 (4th Cir. 1948), cert. denied, 336 US 952 (1949). In a case involving a later taxable year, the court held that the taxpayer was not engaged in a U.S. trade or business. See Fernand CA Adda, 10 TC 1291 (1948), acq. 1953-1 CB 3. For a ruling involving an agent with discretionary authority, see Rev. Rul. 55-282, 1955-1 CB 634. Regarding current law, see IRC § 864(b)(2).

[39] Comm'r v. Nubar, 185 F2d 584 (4th Cir. 1950), rev'g 13 TC 566 (1949), cert. denied, 341 US 925 (1951). Regarding current law, see IRC § 864(b)(2).

For a more recent instance in which the Service stated that active trading for a taxpayer's own account would be a U.S. trade or business, see Rev. Rul. 79-116, 1979-1 CB 212.

[40] Recherches Industrielles, SARISA, 45 BTA 253 (1941) (taxpayer liable for flat rate tax on dividend income).

[41] Aktiebolaget Separator, 45 BTA 243 (1941), aff'd per curiam, 128 F2d 739 (2d Cir.), cert. denied, 317 US 661 (1942) (space rented in United States by foreign corporation with no purpose on its part to carry on any part of its manufacturing business was held "not an office of place of business" within United States under a provision of Revenue Act of 1936).

[42] Piedras Negras Broadcasting Co., 43 BTA 297 (1941), nonacq., 1941-1 CB 18, aff'd, 127 F2d 260 (5th Cir. 1942) (income arose from foreign sources).

[43] Jorge Pasquel, ¶ 54,002 P-H Memo. TC (1953) (single, isolated transaction).

[44] European Naval Stores Co., 11 TC 127 (1948), acq. 1948-2 CB 2 (isolated sale without consent).

[45] Linen Thread Co., 14 TC 725 (1950) (taxpayer had office in United States for purposes of collecting income from investments; that office did not solicit sales, but did perform minor functions).

[46] Continental Trading, Inc. v. Comm'r, 265 F2d 40 (9th Cir.), cert. denied, 361 US 827 (1959).

[47] Consolidated Premium Iron Ores Ltd., 28 TC 127, 147, 150 (1957) (taxpayer

delivered whale oil to a buyer in the United States;[48] (10) a taxpayer purchased goods in the United States with direct shipment from the supplier to foreign customers;[49] (11) a taxpayer that invested in U.S. securities had a U.S. office to handle clerical matters;[50] and (12) a taxpayer had a personal investment account in the United States.[51] In addition, the Service has stated that a taxpayer would not be engaged in a U.S. trade or business by reason of placing its insurance with an underwriter located in the United States or executing an insurance contract in the United States.[52] A foreign corporation does not engage in a U.S. trade or business by having an employee in the United States supervising its investment in U.S. operating subsidiaries.[53]

*Agency.* The activities of an agent may cause a foreign taxpayer to be engaged in a U.S. trade or business.[54] However, the fact that a related person,

---

was not engaged in U.S. trade or business and had no U.S. permanent establishment), nonacq. 1958-1 CB 7, aff'd on another issue, 265 F2d 320 (6th Cir. 1959) (taxpayer had no U.S. permanent establishment).

[48] Comm'r v. Spermacet Whaling & Shipping Co., 281 F2d 646 (6th Cir. 1960), aff'g 30 TC 618 (1958) (taxpayer was acting under contract to provide services, not as owner of oil; no U.S. office or employees; no regular or continuous transaction of substantial portion of taxpayer's ordinary business in United States).

[49] Amalgamated Dental Co., 6 TC 1009 (1946) (gratuitous services rendered by supplier did not create agency).

[50] Scottish Am. Inv. Co., 12 TC 49 (1949). For a ruling following this case, see Rev. Rul. 55-182, 1955-1 CB 77. For an earlier case that did not reach the trade or business question, see Comm'r v. Scottish Am. Inv. Co., 323 US 119 (1944) (taxpayer had office or fixed place of business in United States).

[51] Edward A. Neuman de Vegvar, 28 TC 1055 (1957), acq. 1958-1 CB 4 (personal investment account was not U.S. trade or business); Chang Hsiao Liang, 23 TC 1040 (1955), acq. 1955-1 CB 4 (no U.S. trade or business on account of U.S. securities investments).

[52] Cf. Rev. Rul. 70-304, 1970-1 CB 163 ("A taxpayer will not be considered as engaged in trade or business in a country merely by virtue of the fact that it has placed its marine insurance with an underwriter located in that country or has executed the insurance contract there.").

[53] Treas. Reg. § 1.864-3(b), Ex. 2.

[54] See, e.g., Inez De Amodio, 34 TC 894 (1960), aff'd, 299 F2d 623 (3d Cir. 1962) (properties managed by agents); Jan. C. Lewenhaupt, 20 TC 151 (1953), aff'd per curiam, 221 F2d 227 (9th Cir. 1955) (agent for rental of real property); Frank Handfield 23 TC 633 (1955) (nonresident alien manufactured postal cards in Canada that he sold in United States through agreement with news company; court held that under the agreement, news company was nonresident alien's agent for distributing the cards in United States; thus, nonresident alien was engaged in business within United States and was subject to U.S. income tax from sales of the cards in United States); Fernand CA Adda, 10 TC 273 (1948), aff'd, 171 F2d 457 (4th Cir. 1948), cert. denied, 336 US 952 (1949).

See also Rev. Rul. 80-225, 1980-2 CB 318 (involving foreign insurance company that was not licensed to do insurance business in a particular state and conducted a surplus lines insurance business in that state through licensed broker that acted as

such as a U.S. corporation under common control, does business in the United States does not necessarily mean that a foreign taxpayer does business in the United States.[55]

*Rental activities.* A foreign person that owns U.S. real property and leases the property to others may or may not be engaged in a U.S. trade or business. The mere receipt of income from the property, the sporadic negotiation of new leases, and the payment of expenses incidental to the collection of the income may not constitute the conduct of a U.S. trade or business.[56] However, activity beyond the receipt of income and the payment of expenses may rise to the level of a trade or business, particularly if the activity is considerable, continuous, and regular.[57] One court applied similar principles and held that the ownership of fractional working interests in oil and gas properties did not cause a foreign person to be engaged in a U.S. trade or business.[58]

### [b] Personal Services (Section 864(b))

[i] General rule. Section 864(b) generally treats a taxpayer who performs personal services in the United States at any time during the taxable year as

---

company's agent; agent regularly signed and countersigned policies and settled losses arising under the insurance policies; foreign insurance company was held to be engaged in trade or business in United States); Rev. Rul. 70-424, 1970-2 CB 150 (foreign corporation's arrangement with domestic corporation for exclusive sales of foreign corporation's products in United States treated as an ordinary principal and agent arrangement through which foreign corporation engaged in trade or business within United States; thus, foreign corporation held to be subject to U.S. income tax under Section 882); Rev. Rul. 55-617, 1955-2 CB 774 (foreign corporation that did extensive business in United States in form of sales of its manufactured products through the medium of commission agent was treated, without discussion, as engaged in trade or business within United States under former Section 871(c)). In Amalgamated Dental Co., 6 TC 1009 (1946), the court held that a U.S. supplier was not the agent of a foreign purchaser.

[55] See, e.g., European Naval Stores Co., 11 TC 127 (1948), acq. 1948-2 CB 2.

[56] See, e.g., Rev. Rul. 73-522, 1973-2 CB 226 (no U.S. trade or business when foreign taxpayer owned rental properties subject to long-term net leases; sporadic negotiation of new leases did not create U.S. trade or business); Elizabeth Herbert, 30 TC 26 (1958), acq. 1958-2 CB 6 (one building leased to one tenant; net lease; no U.S. trade or business); Evelyn ML Neill, 46 BTA 197 (1942) (operation of one parcel of real property did not result in U.S. trade or business; owner's attorneys paid mortgage interest and some expenses).

[57] See, e.g., Inez De Amodio, 34 TC 894 (1960), aff'd, 299 F2d 623 (3d Cir. 1962) (properties managed by agents; agents negotiated leases, arranged for repairs, collected rents, and paid taxes); Jan C. Lewenhaupt, 20 TC 151 (1953), aff'd per curiam, 221 F2d 227 (9th Cir. 1955) (nonresident alien with resident agent in United States owned several parcels of property; agent's activities included collecting rent, executing leases, keeping books, supervising repairs); Rev. Rul. 73-522, 1973-2 CB 226, 227 (stating principle in text). See also Pinchot v. Comm'r, 113 F2d 718 (2d Cir. 1940) (involving estate taxes).

[58] Di Portanova v. United States, 690 F2d 169 (Ct. Cl. 1982).

engaged in a trade or business in the United States.[59] Further, inco
services generally is treated as effectively connected income under
864(c)(2) or Section 864(c)(6).[60] Thus, under Sections 871(b) and 882, ;
person's compensation for services performed in the United Stat
deducting the allocable expenses, generally is subject to tax at regular t
rather than at the 30 percent rate in Sections 871(a)(1)(A) and 881(a

The case law and rulings indicate that it does not take mucl
activity performed in the United States for the service provider to be t
engaged in a U.S. trade or business.[61] However, in one case involving
a taxpayer was held not to have been engaged in a U.S. trade or bu:

**[ii] Exception for limited services (ninety days/$3,000).** Section !
contains a limited exception to the general rule that rendering persona
in the United States is a U.S. trade or business. This exception
nonresident alien individual's performance of services in the United :
*not* being the conduct of a trade or business within the United State:

---

[59] See Treas. Reg. § 1.864-2(a).

[60] Regarding the treatment of service income as effectively connecte
under Section 864(c)(2), see infra ¶ C1.04[5][c][i]. Regarding the treatment
income as effectively connected income under Section 864(c)(6), see
C1.04[5][b][ii].

[61] See, e.g., Johansson v. United States, 336 F2d 809 (5th Cir. 1964) (no
alien prize fighter's participation in three fights conducted in United States
period overlapping two taxable years was held to be U.S. trade or business);
Elst v. Comm'r, 223 F2d 771 (2d Cir. 1955) (involving nonresident alien indivi
was foreign diplomat and who, while stationed in United States, became em
officer of domestic corporation; taxpayer treated as engaged in U.S. trade o
by reason of his employment by domestic corporation as officer during year
regardless of whether he actually performed services for corporation during tl
aff'g ¶ 53,363 P-H Memo. TC (1953). See also Ingram v. Bowers, 57 F2d 6!
1932) (opera singer's making of recordings in United States for record com
held to be performance of services within the United States).

Nonresident alien individuals were treated as engaged in U.S. trades or b
in the following rulings: Rev. Rul. 74-453, 1974-2 CB 19 (taxable training ɛ
treated as effectively connected trade or business income); Rev. Rul. 71-125, 1
358 (journalist's services); Rev. Rul. 70-614, 1970-2 CB 150 (taxable fellows
treated as U.S. business income); Rev. Rul. 70-543, 1970-2 CB 172 (withhold
involving boxer, professional golfer, and race horse owner); Rev. Rul. 58-14
CB 260 (nonresident alien individual serving in U.S. Army, who was present
States for period of six months of military training, treated as engaged in U.S
business).

[62] See, e.g., Comm'r v. Spermacet Whaling & Shipping Co., 281 F2d 646
1960), aff'g 30 TC 618 (1958) (delivery of whale oil, after whaling expedition,
in United States; taxpayer acting under contract to provide services, not as own
no U.S. office or employees; no regular or continuous transaction of sı
portion of taxpayer's ordinary business in United States).

requirements are met.[63] First, the nonresident alien must perform the personal services as an employee of, or under any form of contract with,[64] either (1) a nonresident alien, a foreign partnership, or a foreign corporation *not* engaged in a U.S. trade or business[65] or (2) a U.S. citizen or resident, a domestic partnership, or a domestic corporation, but only if the services or labor are performed for an office or place of business maintained by such individual, partnership, or corporation in a foreign country or a U.S. possession.[66]

Second, the nonresident alien individual must be temporarily present in the United States for a total of not more than ninety days during the taxable year.[67] A "day" for this purpose generally includes any calendar day on which the nonresident alien individual is present in the United States, even if for only a portion of the day.[68] In applying this ninety-day limit, one court held that the first day of each visit during the nonresident alien's taxable year was not counted as a day, but the last day (or portion of such day) was counted as a day.[69]

Third, the nonresident alien individual's total compensation for the services performed in the United States must not exceed $3,000.[70] If the nonresident alien individual receives a total of more than $3,000 of compensation for the labor or services performed in the United States, the

---

[63] See Treas. Reg. § 1.864-2(b)(1).

[64] Treas. Reg. § 1.864-2(b)(2)(iii).

[65] IRC § 864(b)(1)(A); Treas. Reg. § 1.864-2(b)(1)(i). In determining whether the foreign payor (i.e., nonresident alien, foreign partnership, or foreign corporation) is engaged in a U.S. trade or business for purposes of applying the requirement in Section 864(b)(1)(A), the services performed by the nonresident alien individual who is seeking to qualify for this sourcing rule exception are disregarded. Treas. Reg. § 1.864-2(b)(2)(ii).

[66] IRC § 864(b)(1)(B); Treas. Reg. § 1.864-2(b)(1)(ii). For an example involving the employee of the London branch of a domestic partnership, see Treas. Reg. § 1.864-2(b)(3), Ex. 1.

In the context of the similar special source rule in Section 861(a)(3), the Service ruled that the United States as a sovereign entity was a corporation and, therefore, that nonresident alien individuals hired by an agency or instrumentality of the United States were considered hired by a domestic corporation for purposes of Section 861(a)(3)(C). Rev. Rul. 57-69, 1957-1 CB 239. Thus, the Service held that nonresident alien employees of instrumentalities or agencies of the United States in foreign countries could be exempt from federal income tax with respect to compensation for personal services performed in the United States if the other conditions in Section 861(a)(3) were met. Id. For a discussion of Section 861(a)(3), see ¶ A2.03[6].

[67] IRC § 864(b)(1); Treas. Reg. § 1.864-2(b)(1).

[68] Treas. Reg. § 1.864-2(b)(2)(i).

[69] See Martin Tow, 36 TC 861 (1961).

[70] IRC § 861(a)(3)(B); Treas. Reg. § 1.864-2(b)(1).

exception does not apply.[71] Thus, the $3,000 limit in Section 864(b)(1) has a "cliff" effect.

At one time, compensation of $3,000 may have been a significant amount of money. Inflation, however, has been steadily eroding the importance of Section 864(b)(1). The American Law Institute has recommended that the amount be increased.[72]

In applying the $3,000 limit on total compensation received by the nonresident alien individual, pensions and retirement pay attributable to labor or personal services performed in the United States are not treated as compensation.[73] Travel expense reimbursements or advances from the employer (to the extent of the expenses actually incurred on behalf of the employer), as to which the individual was required to properly account to the employer, are not treated as compensation for personal services.[74] Reimbursements or advances from the employer in excess of the travel expenses incurred, however, are treated as compensation for purposes of the $3,000 limit.[75]

This trade-or-business exception in Section 864(b)(1) applies by its terms only to nonresident alien individuals. It does not apply to services performed by or on behalf of a foreign corporation. In other words, if a nonresident alien individual performs services in the United States on behalf of a foreign corporation, Section 864(b)(2) may apply to the service income earned by the nonresident alien individual but would not apply to the foreign corporation's income from the transaction.

The exception in Section 864(b)(1) parallels a source rule exception in Section 861(a)(3).[76] Section 861(a)(3) treats compensation income meeting these three requirements as *foreign-source* income, even though the services for which the compensation is received are performed in the United States. Thus, since such income is foreign-source income, it is not subject to the 30 percent tax in Section 871(a)(1). Without the parallel source rule, such income might be fixed or determinable annual or periodical income subject to tax under Section 871(a)(1).

The exception in Section 864(b)(1) has become less important as a result

---

[71] For an example of compensation that exceeded $3,000 (although paid in two taxable years), see Treas. Reg. § 1.864-2(b)(3), Ex. 2. Cf. Rev. Rul. 69-479, 1969-2 CB 149 (discussing parallel source rule in Section 861(a)(3), discussed at ¶ A2.03[6][c]).

[72] ALI, Federal Income Tax Project: International Aspects of United States Income Taxation 99–100 (1987).

[73] Treas. Reg. § 1.864-2(b)(2)(iv).

[74] Id.

[75] Id.

[76] See ¶ A2.03[6][c]. Because of the near identity in language in the two provisions, the authorities interpreting the source rule exception, discussed in Chapter A2, generally apply for purposes of interpreting the trade-or-business exception.

of Congress's decision to partially abandon the force-of-attraction rule of pre-1966 law. Under current law, only U.S.-source income other than fixed or determinable annual or periodical income or capital gains are subject to the force-of-attraction rule in Section 864(c)(3).[77] By contrast, before the 1966 Act changes, a nonresident alien's being engaged in a U.S. trade or business by reason of the performance of services in the United States generally could result in the taxation of all of the alien's U.S.-source fixed or determinable annual or income (net of the deductions attributable to such income) at the regular, graduated rates.

As discussed in Chapter C4, many U.S. treaties contain a commercial traveler's tax exemption that is often more liberal than the exception in Sections 864(b) and 861(a)(3). Chapter C4 discusses such treaty provisions.[78]

#### [c] Trading in Securities (Section 864(b)(2)(A))

[i] **Introduction.** Section 864(b)(2)(A) defines two cases in which a foreign person may trade in stocks and securities[79] without being engaged in a U.S. trade or business. The first case relates to trading through a broker. The second relates to trading for the taxpayer's own account. These two cases are not mutually exclusive. A taxpayer that trades through a broker for the taxpayer's own account may qualify under both rules. The Service generally will not rule privately on whether a taxpayer that trades in stock or securities is engaged in a trade or business within the United States.[80]

[ii] **Trading through independent broker.** A foreign person does not have a U.S. trade or business as a result of trading in stock or securities through a resident broker, commission agent, custodian, or other independent agent.[81] This rule may apply even if the taxpayer is a broker or a dealer.[82] Thus, the taxpayer may be trading for the accounts of customers without having a U.S. trade or business. The volume of transactions is irrelevant under this rule.[83]

*Prohibition of certain U.S. offices.* The rule of Section 864(b)(2)(A)(i) applies only if the taxpayer at no time during the taxable year has an office or other fixed place of business in the United States through which, or by the direction of which, the transactions in stocks or securities are effected.[84]

---

[77] See infra ¶ C1.04[5][c][ii].

[78] See ¶ C4.12.

[79] Treas. Reg. § 1.864-2(c)(2)(i) defines the term "securities."

[80] Rev. Proc. 91-6, § 4.013, 1991-2 IRB 29, 30.

[81] IRC § 864(b)(2)(A)(i); Treas. Reg. § 1.864-2(c)(1).

[82] Treas. Reg. § 1.864-2(c)(1).

[83] Id.

[84] IRC § 864(b)(2)(C); Treas. Reg. § 1.864-2(c)(1). Treas. Reg. § 1.864-2(c)(2)(i) defines "effecting of transactions" to include buying, selling, and other activities.

**[iii] Trading for taxpayer's own account.** A foreign person generally does not have a U.S. trade or business as a result of trading in stock or securities for the taxpayer's own account.[85] This rule applies whether the trading is by the taxpayer or the taxpayer's employees or through a resident broker, commission agent, custodian, or other agent.[86] This rule may apply even if the employee or agent has discretionary authority to make decisions in effecting the transactions.[87] For this purpose, it does not matter whether the taxpayer, the employee, or the agent is present in the United States when the trading occurs.[88] Further, it does not matter whether the agent is dependent or independent.[89] The volume of transactions also is irrelevant.[90]

*Prohibition of dealers.* Protection against having a U.S. trade or business does not apply for a dealer in stocks or securities.[91] Further, such protection generally does not apply in the case of a corporation the principal business of which is trading in stocks or securities for its own account if its principal office is in the United States.[92] Even in the later case, protection may apply if the corporation is, or would be under certain conditions, a personal holding company.[93]

*Special rules for partnerships.* The regulations contain special rules regarding partnerships.[94]

### [d]  Trading in Commodities (Section 864(b)(2)(B))

**[i] Introduction.** Section 864(b)(2)(B) defines two cases in which a foreign person may trade in commodities without being engaged in a U.S. trade or business. The first case relates to trading through a broker. The second relates to trading for the taxpayer's own account. These two cases are not mutually exclusive. A taxpayer that trades through a broker for the taxpayer's own

---

[85] IRC § 864(b)(2)(A)(ii); Treas. Reg. § 1.864-2(c)(2)(i).

[86] IRC § 864(b)(2)(A)(ii).

[87] Id.; Treas. Reg. § 1.864-2(c)(2)(i). For an example of a resident agent with discretionary authority, see Treas. Reg. § 1.864-2(c)(2)(i), Ex.

[88] Treas. Reg. § 1.864-2(c)(2)(i).

[89] Id.

[90] Id.

[91] IRC § 864(b)(2)(A)(ii); Treas. Reg. §§ 1.864-2(c)(2)(iii), 1.864-2(c)(2)(iv) (regarding the definition of a dealer).

[92] IRC § 864(b)(2)(A)(ii); Treas. Reg. § 1.864-2(c)(2)(iii).

[93] IRC § 864(b)(2)(A)(ii); Treas. Reg. § 1.864-2(c)(2)(iii). See also Rev. Rul. 79-116, 1979-1 CB 212 (foreign corporation was engaged in U.S. trade or business on account of securities trading because corporation was foreign personal holding company, not personal holding company).

[94] Treas. Reg. § 1.864-2(c)(2)(ii). See generally Collins, "The Treatment of Foreign Partners of Tiered Securities Partnerships," 7 J. Tax'n of Investments 23 (1989).

account may qualify under both rules. The Service generally will not rule privately whether a taxpayer that trades in commodities is engaged in a trade or business within the United States.[95]

These rules on trading commodities apply only if the commodities are of a kind customarily dealt in on an organized commodity exchange and if the transaction is of a kind customarily consummated at such exchange.[96] The term "commodities" does not include goods or merchandise in the ordinary channels of commerce.[97]

**[ii] Trading through independent broker.** A foreign person generally does not have a U.S. trade or business as a result of trading in commodities through a resident broker, commission agent, custodian, or other independent agent.[98] This rule may apply with respect to hedging transactions.[99] Further, a foreign person may be trading for the accounts of customers without having a U.S. trade or business. The volume of transactions does not affect the result if this rule applies.[100]

*Prohibition of certain U.S. offices.* The rule of Section 864(b)(2)(B)(i) applies only if the taxpayer at no time during the taxable year has an office or other fixed place of business in the United States through which, or by the direction of which, the transactions in commodities are effected.[101]

**[iii] Trading for taxpayer's own account.** A foreign person generally does not have a U.S. trade or business as a result of trading in commodities for the taxpayer's own account.[102] This rule applies whether the trading is by the taxpayer or the taxpayer's employees or through a resident broker, commission agent, custodian, or other agent.[103] This rule may apply even if the employee or agent has discretionary authority to make decisions in effecting the transactions.[104] For this purpose, it does not matter whether the taxpayer, the

---

[95] Rev. Proc. 91-6, § 4.013, 1991-2 IRB 29, 30.

[96] IRC § 864(b)(2)(B)(iii); Treas. Reg. § 1.864-2(d)(1). See also Rev. Rul. 73-158, 1973-1 CB 337 (raw sugar sold by sugar producer qualified under Section 864(c)(2)(B)).

[97] Treas. Reg. § 1.864-2(d)(1).

[98] IRC § 864(b)(2)(B)(i); Treas. Reg. § 1.864-2(d)(1). See also Rev. Rul. 73-158, 1973-1 CB 337 (foreign sugar producer qualified under Section 864(c)(2)(B)).

[99] Treas. Reg. § 1.864-2(d)(1).

[100] Id.

[101] IRC § 864(b)(2)(C); Treas. Reg. § 1.864-2(d)(1).

[102] IRC § 864(b)(2)(B)(ii); Treas. Reg. § 1.864-2(d)(2)(i).

[103] IRC § 864(b)(2)(B)(ii).

[104] IRC § 864(b)(2)(B)(ii); Treas. Reg. § 1.864-2(d)(2)(i). Regarding the history of this provision, see HR Rep. No. 1450, 89th Cong., 2d Sess. 55–56 (1966); Fernand CA Adda, 10 TC 273 (1948), aff'd, 171 F2d 457 (4th Cir. 1948), cert. denied, 336 US 952 (1949).

employee, or the agent is present in the United States when the trading occurs.[105] Further, it does not matter whether the agent is dependent or independent.[106] The volume of transactions also is irrelevant.[107]

*Prohibition of dealers.* Protection against having a U.S. trade or business does not apply for a dealer in commodities.[108]

*Special rules for partnerships.* The regulations contain special rules regarding partnerships.[109]

## [e]  Partner in Partnership Engaged in U.S. Trade or Business (Section 875(1))

Section 875(1) treats a nonresident alien individual or a foreign corporation that is a member of a partnership engaged in a U.S. trade or business as being engaged in a U.S. trade or business.[110] This principle applies to both general partners and limited partners of a limited partnership,[111] provided that

---

[105] Treas. Reg. § 1.864-2(d)(2)(i).

[106] Id.

[107] Id.,

[108] IRC § 864(b)(2)(B)(ii); Treas. Reg. § 1.864-2(d)(2)(i).

[109] Treas. Reg. § 1.864-2(d)(2)(ii). See generally Collins, "The Treatment of Foreign Partners of Tiered Securities Partnerships," 7 J. Tax'n of Investments 23 (1989).

[110] See Treas. Reg. § 1.875-1. The statutory predecessor of Section 875(1) was first added to the Code by the Revenue Act of 1936, § 219.'

A case decided before the enactment of the predecessor of Section 875(1) had enunciated the same principle that a foreign person that was a partner of a partnership engaged in a U.S. trade or business would be treated as so engaged. See Cantrell & Cochrane, Ltd., 19 BTA 16, 22–25 (1930) (involving foreign corporation and domestic corporation engaged in joint venture that conducted business of manufacturing certain products in United States; foreign corporation was held to be engaged in U.S. trade or business).

[111] See Robert Unger, ¶ 90,015 P-H Memo. TC (1990) (nonresident alien individual limited partner treated as being engaged in U.S. trade or business under Section 875(1) by reason of partnership's U.S. trade or business; thus, individual was taxed on his distributive share of partnership's long-term capital gain from sale of real estate located in United States); Rev. Rul. 85-60, 1985-1 CB 186 (involving nonresident alien beneficiary of foreign trust that was limited partner in domestic partnership that had permanent establishment in United States; beneficiary's share of partnership's business profits that were passed through the foreign trust to the beneficiary were not exempt from federal income tax under treaty because beneficiary was considered to be in receipt of business profits attributable to permanent establishment under domestic tax principles reflected in Section 875(2); nonresident alien beneficiary was treated as engaged in U.S. trade or business under Section 875(2) because foreign trust was considered to be engaged in U.S. trade or business under Section 875(1) by reason of its limited partnership interest in domestic partnership that actually conducted U.S. business; under Section 652(b), nonresident alien beneficiary's share of profits retained its character as business profits from U.S. trade or business taxable under Section

the taxpayer in issue is a partner of the enterprise and the enterprise is classified as a partnership (not as an association taxable as a corporation).[112] In effect, for federal income tax purposes, a nonresident alien individual or foreign corporation that is a general or limited partner of a partnership that conducts a trade or business within the United States is deemed to be engaged personally in a U.S. trade or business.[113]

The regulations provide that the same test for determining whether an individual is engaged in a U.S. trade or business applies for determining whether a partnership is engaged in a U.S. trade or business.[114] Activities of the partnership that do not rise to the level of a trade or business should not be attributed to a partner who is a foreign person for purposes of determining whether such person is engaged in a trade or business within the United States.[115]

Suppose that a nonresident alien individual or foreign corporation is a partner in a partnership that owns a limited partnership interest in a partnership that is engaged in a U.S. trade or business. Is the nonresident alien individual or foreign corporate partner treated as engaged in a U.S. trade or business by reason of the first partnership's ownership of the limited partnership interest in the second partnership that actually conducts the U.S. trade or business? The answer to this question should be affirmative.[116] In this

---

871(b)); Rev. Rul. 75-23, 1975-1 CB 290 (foreign corporate limited partner of U.S. limited partnership engaged in commercial real estate business was treated as engaged in U.S. trade or business under Section 875(1)), declared obsolete on a different issue by Rev. Rul. 87-80, 1987-2 CB 292; cf. Donroy, Ltd. v. United States, 301 F2d 200 (9th Cir. 1962) (Canadian corporate limited partners in California limited partnership treated as having permanent establishment in United States by reason of limited partnership's permanent establishment in United States).

[112] See WC Johnston, 24 TC 920 (1955) (nonresident alien taxpayer was partner of partnership that entered into oral agreement with another partnership regarding U.S. cattle business; Tax Court found relationship between the two partnerships was itself, for federal income tax purposes, a partnership engaged in cattle business in United States; accordingly, court applied predecessor of Section 875(1) to treat nonresident alien taxpayer partner of one of the partnerships as engaged in U.S. trade or business).

[113] See Alberto Vitale, 72 TC 386, 389–390 (1979); WC Johnston, 24 TC 920 (1955) (Canadian citizen and resident treated as engaged in U.S. trade or business under predecessor of Section 875(1) by reason of taxpayer's being member of partnership engaged in cattle business in United States); Rev. Rul. 75-23, 1975-1 CB 290 (foreign corporate limited partner of U.S. limited partnership engaged in commercial real estate business treated as engaged in U.S. trade or business under Section 875(1)), declared obsolete on a different issue by Rev. Rul. 87-80, 1987-2 CB 292.

[114] Treas. Reg. § 1.875-1. The test for determining whether an individual is engaged in a U.S. trade or business is discussed supra ¶ C1.04[4][a].

[115] Compare the discussion and authorities on this issue in the context of the activities of a fiduciary of a trust or estate discussed infra ¶ C1.04[4][f].

[116] For an analogy, see Rev. Rul. 85-60, 1985-1 CB 187.

situation, Section 875(1) seems to attribute a partnership's U.S. trade or business through a chain of partnerships to the ultimate nonresident alien individual or foreign corporate partner in the first-tier partnership in the chain.

The attribution of trade or business status in Section 875(1), together with the limited force-of-attraction principle in Section 864(c)(3), might lead to some surprising results for foreign taxpayers that hold interests in partnerships that are engaged in a U.S. trade or business. Section 875(1) treats the foreign person as engaged in a U.S. trade or business by reason of owning the interest in the partnership engaged in the U.S. trade or business (even if that interest is as a limited partner). Section 864(c)(3), in turn, treats all U.S.-source income, other than fixed or determinable annual or periodical income, portfolio interest, or capital gains, as effectively connected income regardless of whether such income has any relationship to the U.S. trade or business of the partnership.[117] Under Section 871(b) or Section 882, the foreign person would be taxable on such effectively connected income (net of the deductions properly allocated and apportioned to such income) at regular graduated rates. This result should apply even to U.S.-source income of the type subject to Section 864(c)(3) that is realized by a foreign person during the taxable year but before the date on which the partnership was formed and began doing business.[118]

---

[117] Regarding the force-of-attraction principle in Section 864(c)(3), see infra ¶ C1.04[5][c].

[118] See Treas. Reg. § 1.875-1, which provides that a nonresident alien individual who is a member of a partnership that *at any time within the taxable year* is engaged in a trade or business is treated as engaged in a U.S. trade or business. Although this regulation has not yet been revised to reflect developments in the law since it was adopted in 1957, it should remain valid on this point under current law.

In Alberto Vitale, 72 TC 386 (1979), decided under the broader force-of-attraction principles of pre-1966 law, the Tax Court held that a nonresident alien individual who became a limited partner in a partnership engaged in a U.S. trade or business was taxable at regular rates under former Section 871(c) on U.S.-source capital gain from the liquidation of a domestic corporation that was consummated during the year, but before the partnership was formed and began doing business in the United States. The Tax Court examined congressional intent in enacting the statute and held that the emphasized phrase in the regulations validly interpreted that intent by applying Section 875(1) to transactions occurring before the date on which the partnership began doing business in the United States. Id. at 389-390.

Although the *Vitale* case itself involved the taxation of U.S.-source capital gain from a liquidating distribution, the Tax Court stated that otherwise deductible losses sustained by a nonresident alien individual in transactions consummated before the partnership of which such an individual was a member began doing business in the United States could offset taxable gains realized after the date that the partnership's U.S. business began. Id. at 390. Thus, this principle may be advantageous to some taxpayers that have losses occurring before the date the partnership began doing business or the taxpayer became a member of the partnership. See id.

To what extent are the activities of a partner attributed to the partnership for purposes of determining whether the partnership is engaged in a trade or business within the United States? The activities of the partners on behalf of the entity are relevant to determining whether a partnership is engaged in the conduct of a trade or business within the United States. Thus, if those activities are sufficient to constitute the conduct of a U.S. trade or business, the partnership will be treated as engaged in a U.S. trade or business and each partner will also be treated as so engaged by reason of Section 875(1).[119] The partners' activities that are unrelated to the partnership, however, should not be attributed to the partnership.

### [f] Beneficiary of Estate or Trust Engaged in U.S. Trade or Business (Section 875(2))

Section 875(2) treats a nonresident alien individual or a foreign corporation that is a beneficiary of an estate or trust engaged in a U.S. trade or business as being engaged in a U.S. trade or business.[120] This treatment means that such a foreign beneficiary is taxable under Section 871(b) or Section 882, as the case may be, on the beneficiary's share of the estate's or trust's income

---

It is unclear, however, whether these principles apply to partnership members that are foreign corporations, because the sentence in Treas. Reg. § 1.875-1 discussed in *Vitale* does not refer to foreign corporate partners or to Section 882. Nevertheless, logic would seem to dictate that these principles should apply to foreign corporate partners.

[119] See, e.g., United States v. Balanovski, 236 F2d 298 (2d Cir. 1956) (member of Argentine partnership located suppliers in United States, paid suppliers in United States, and took care of details related to shipping of goods to Argentine customer; partnership negotiated sale of goods to agency of Argentine government in Argentina, but title to goods passed in United States; court held that sale of goods took place in United States and partnership was, therefore, engaged in U.S. trade or business; further, each member of partnership was subject to U.S. income tax on member's share of profits of this U.S. trade or business under predecessor of Section 875(1)). rev'g on this issue, aff'g on other issues, 131 F. Supp. 898 (SDNY 1955), cert. denied, 352 US 968 (1957).

[120] Section 875(2) was added to the Code by the Foreign Investors Tax Act of 1966, § 103(e)(1). Under prior law, one case had held that a nonresident alien residuary beneficiary of an estate, the residue of which had been placed in trust, was not engaged in a trade or business within the United States merely because the trustee's activities in managing the trust property amounted to the conduct of a trade or business within the United States. See Gustava Kluehn, 46 BTA 1211 (1942), acq. 1942-2 CB 11. The Board of Tax Appeals rejected the Service's contention that the trustee was the beneficiary's agent for purposes of determining whether the beneficiary was engaged in a U.S. trade or business. Id. at 1214.

Rev. Rul. 85-60, 1985-1 CB 186, held that principles similar to Section 875(2) applied in determining whether a foreign beneficiary of an estate or trust had a permanent establishment in the United States for treaty exemption purposes, at least in the absence of a specific provision on the issue in the particular treaty or in its history.

that is effectively connected with such trade or business. Such income retains its character as business profits from a U.S. trade or business in the hands of the foreign beneficiary under Section 652(b) or Section 662(b), as the case may be.[121]

If a nonresident alien individual is the beneficiary of a trust or estate that owns a limited partnership interest in a partnership that is engaged in a U.S. trade or business, is the beneficiary treated as engaged in a U.S. trade or business by reason of the trust's or estate's ownership of the limited partnership interest in the partnership that actually conducts the U.S. trade or business? A 1985 ruling answers this question in the affirmative.[122] The attribution of the partnership's U.S. trade or business to the trust or estate under Section 875(1) is carried through to the nonresident alien beneficiary under Section 875(2).

Are activities of the fiduciary of the trust or estate that do not rise to the level of a trade or business attributed to a foreign beneficiary for purposes of determining whether the beneficiary is engaged in a trade or business within the United States? The answer to this question should be negative, although no authority appears to be squarely on point.[123]

### [g] Gains and Losses From Disposition of U.S. Real Property Interests (Section 897)

If a nonresident alien individual or foreign corporation has gains and losses from the disposition of U.S. real property interests, Section 897(a) generally treats the taxpayer as if the taxpayer were engaged in the conduct of a trade or business within the United States. Section 897(a) also treats those gains and losses as if they were effectively connected with such trade or business. As a result, such gains and losses generally are taxable under Section 871(b) or Section 882 at regular rates even though the taxpayer is not actually engaged in a U.S. trade or business. Section 897 is discussed later in this chapter.[124]

---

[121] See, e.g., Rev. Rul. 85-60, 1985-1 CB 187, 188 (nonresident alien beneficiary's share of foreign trust's share of business profits of domestic partnership in which the trust owned a limited partnership interest retained its character as business profits from U.S. trade or business taxable under Section 871(b)).

[122] Rev. Rul. 85-60, 1985-1 CB 187.

[123] See H. Zaritsky, Foreign Trusts, Estates and Beneficiaries, Tax Mgmt. Portfolio (BNA) 427, at A-31 (1986); cf. Piedad Alvarado deKrause, ¶ 74,291 P-H Memo. TC (1974) (domestic trust's collection and distribution of investment income was not treated as trade or business within United States; therefore, nonresident alien beneficiary of the trust was not treated as engaged in conduct of U.S. trade or business by reason of these activities and was taxed at 30 percent rate on trust's gross investment income, with no deductions allowed).

[124] See infra ¶ C1.06.

## [5] Definition of "Effectively Connected Income"

### [a] Introduction

Sections 871(b)(1) and 882(a)(1) tax a nonresident alien individual or foreign corporation on "taxable income which is effectively connected with the conduct of a trade or business within the United States." Thus, it is not enough to know that a taxpayer is engaged in a U.S. trade or business. The next question is what taxable income is effectively connected with that business.[125] Section 864(c) and its regulations supply the basic rules to be applied.[126] These rules apply differently depending on whether the foreign person is engaged in a U.S. trade or business and whether the income has a foreign or U.S. source.

The determination of whether an item of income, gain, or loss is effectively connected with a U.S. trade or business is made under the U.S. income tax principles. Accordingly, administrative or judicial interpretations under a foreign country's tax laws are not controlling for this purpose.[127]

### [b] Rules for Taxpayers Not Engaged in U.S. Trade or Business

**[i] In general (Section 864(c)(1)(B)).** Under the general rule in Section 864(c)(1)(B), if a nonresident alien individual or foreign corporation does not engage in a trade or business in the United States at any time during a taxable year, none of such individual's or corporation's income, gain, or losses during such year are treated as effectively connected income or loss.[128] This general rule applies even though the income or loss would have been treated as effectively connected income or loss if it had been received or accrued (or, in the case of a loss, sustained) in an earlier taxable year when the nonresident alien individual or foreign corporation was engaged in a U.S. trade or business.[129]

Congress, however, has created two types of exceptions to this general rule. In the first type of exception, certain income received or accrued by a nonresident alien individual or a foreign corporation is treated as effectively connected income without regard to whether the taxpayer ever actually

---

[125] See generally Dale, "Effectively Connected Income," 42 Tax L. Rev. 689 (1987).

[126] Treas. Reg. § 1.864-3(a).

[127] See id.

[128] Id. For an example applying this general rule, see Treas. Reg. § 1.864-3(b), Ex. 2.

[129] Treas. Reg. § 1.864-3(a).

engages in a U.S. trade or business.[130] The Code sections falling within this type of exception are discussed elsewhere in this chapter.[131]

In the second type of exception, income or gain received or accrued in a taxable year in which the nonresident alien individual or foreign corporation is not engaged in a U.S. trade or business is nonetheless treated as effectively connected income by reason of the relationship of such income or gain to economic activity in an earlier taxable year that was part of the conduct of a U.S. trade or business.[132] The two Code sections falling within this type of exception are discussed in the following subparagraphs.[133]

**[ii] Deferred payments for property, services, or other transactions (Section 864(c)(6)).** Suppose that a foreign person sells or exchanges property, performs services, or engages in some other transaction in the United States in a taxable year in which the foreign person is engaged in the conduct of a U.S. trade or business. Suppose further that the foreign person receives or accrues payment for such property, services, or other transaction in a later taxable year in which the foreign person is not engaged in a U.S. trade or business. How does the foreign person determine whether the income or gain is effectively connected income taxable at regular rates under Section 871(b) or Section 882?

Section 864(c)(6) provides that the determination of whether such income or gain is taxable under Section 871(b) or Section 882 is made as if the income or gain were taken into account in the taxable year in which the transaction giving rise to the income or gain occurred.[134] Further, Section 864(c)(6)

---

[130] See IRC § 871(c) (certain income received by nonresident alien individual who participates in certain exchange or training programs is treated as effectively connected income), IRC § 871(d) (gives nonresident alien individual an election to treat certain real property income as effectively connected income), IRC § 882(d) (gives foreign corporation an election to treat certain real property income as effectively connected income), IRC § 882(e) (treats U.S. possession banking corporation's interest income on nonportfolio U.S. obligations as effectively connected income), IRC § 897 (treats gain or loss from disposition of U.S. real property interest as effectively connected with U.S. trade or business).

[131] See the treatment of individuals in training (Section 871(c)), supra ¶ C1.03[19] (Sections 871(d) and 882(d)), ¶ D1.10 (Section 882(e)), infra ¶ C1.06 (Section 897).

[132] See IRC § 864(c)(6) (deferred payments of income or gain attributable to sale or exchange of property or performance of services from earlier taxable year beginning after 1986 are treated as effectively connected income if they would have been so treated in that earlier year), IRC § 864(c)(7) (gain from sale of property formerly used or held for use in U.S. trade or business is treated as effectively connected income if such property is disposed of within ten years after it ceased being used or held for use in U.S. trade or business).

[133] Regarding Section 864(c)(6), see infra ¶ C1.04[5][b][ii]. Regarding Section 864(c)(7), see infra ¶ C1.04[5][b][iii].

[134] By its terms, Section 864(c)(6) may apply when income taken into account in

provides that such determination is made without regard to the requirement that the taxpayer be engaged in a U.S. trade or business during the taxable year for which such income or gain is taken into account. Thus, a foreign person's income or gain for a taxable year that is attributable to a transaction occurring in any other taxable year is treated as effectively connected income if such income or gain would have been treated as effectively connected income if it had been taken into account in the other taxable year during which the transaction occurred.[135]

Congress enacted Section 864(c)(6) to prevent a foreign person from changing the manner in which the U.S. tax system taxes U.S. trade or business income by deferring the recognition of the income (e.g., through the use of the installment sale method of reporting gain from the sale of property or deferred compensation arrangements with respect to personal service income).[136] This provision reflects Congress's belief that income earned by a foreign person's U.S. trade or business should be taxed at regular rates under Section 871(b) or Section 882, regardless of when that income is taken into account for U.S. tax purposes.[137] Thus, Section 864(c)(6) preserves the character of such income as effectively connected income.

> **EXAMPLE:**[138]  During the months of May through December of year 1, *NRA,* a nonresident alien individual and cash-method taxpayer, performed services in the United States for a foreign corporation. During year 1, *NRA* received from the foreign corporation $30,000 for the services *NRA* performed in the United States. In addition, in January of

one taxable year is attributable to a transaction in any other taxable year, whether earlier or later.

Section 864(c)(6) applies to income that arises from sales, exchanges, the performance of services, or other transactions occurring in taxable years starting after 1986. Tax Reform Act of 1986, § 1242(a). For taxable years starting before 1987, income or gain attributable to a sale or exchange of property, the performance of personal services, or any other transaction that would have been treated as effectively connected income if taken into account in earlier taxable year was not treated as effectively connected income if the taxpayer did not engage in a U.S. trade or business in the taxable year in which the income or gain was actually taken into account. See IRC § 864(c)(1)(B); Treas. Reg. § 1.864-3(a). For examples applying the pre–1986 Act law on this issue, see Treas. Reg. § 1.864-3(b), Exs. 1, 3.

[135] The legislative history states that any income treated as effectively connected income by reason of Section 864(c)(6) is also to be considered attributable to a U.S. office of the foreign person's U.S. trade or business. Staff of Joint Comm. on Tax'n, 100th Cong., 1st Sess., General Explanation of the Tax Reform Act of 1986, at 1049 (1987).

[136] Staff of Joint Comm. on Tax'n, 100th Cong., 1st Sess., General Explanation of the Tax Reform Act of 1986, at 1048–1049 (1987).

[137] Id.

[138] The facts of this example, but not the results, are based on Treas. Reg. § 1.864-3(b), Ex. 3.

year 2, *NRA* received from the foreign corporation $4,000 representing the last half of *NRA*'s December salary plus a bonus of $3,000 in consideration of the services *NRA* performed for the corporation in the United States during year 1. During year 2, *NRA* performs no services in the United States and does not otherwise engage in any trade or business in the United States.

*NRA*'s compensation income of $7,000 in year 2 is treated as U.S.-source income under Section 861(a)(3).[139] Under Section 864(c)(6), *NRA*'s U.S.-source compensation income is treated as effectively connected with the conduct of a U.S. trade or business even though *NRA* was not engaged in a U.S. trade or business in year 2. The determination of whether *NRA*'s compensation income is effectively connected income is made as if the $7,000 of U.S.-source compensation income had been received by *NRA* in year 1 when the services were performed. Thus, since the $7,000 of U.S.-source compensation income would have been treated as effectively connected income under Section 864(c)(2) if it had been received in year 1, the income retains its character as effectively connected income under Section 864(c)(6) when *NRA* actually takes the income into account in year 2.

**[iii] Ten-year taint for business property (Section 864(c)(7)).** If any property ceases to be used or held for use in connection with the conduct of a U.S. trade or business, the determination of whether any gain or income attributable to a sale or exchange of such property within ten years after such cessation is effectively connected income is made as if such sale or exchange occurred just before such cessation.[140] Further, Section 864(c)(7) provides that the determination of whether the income or gain attributable to the disposition is taxable under Section 871(b) or Section 882 will be made without regard to the requirement that a taxpayer be engaged in a U.S. trade or business during the taxable year for which the income or gain is taken into account. Thus, the income or gain attributable to the sale or exchange of the property once used in the U.S. trade or business will be treated as effectively connected income if

---

[139] See ¶ A2.03[6].

[140] IRC § 864(c)(7), which applies only to property ceasing to be used in connection with a U.S. trade or business in a taxable year starting after 1986. Tax Reform Act of 1986, § 1242(c). Accordingly, Section 864(c)(7) does not apply to income or gain attributable to a sale or exchange of property after 1986 if the cessation of the business occurred before 1987. Staff of Joint Comm. on Tax'n, 100th Cong., 1st Sess., General Explanation of the Tax Reform Act of 1986, at 1049 (1987). If income or gain attributable to a sale or exchange of property formerly used in a U.S. trade or business is not subject to Section 864(c)(7), such income or gain will not be treated as effectively connected income unless the foreign person selling or exchanging the property is engaged in a U.S. trade or business in the year in which such property is sold or exchanged. See IRC § 864(c)(1)(B); Treas. Reg. § 1.864-3(a).

such income or gain would have been effectively connected income if the sale or exchange had occurred just before the taxpayer ceased using or holding the property for use in the U.S. trade or business.[141]

Congress enacted Section 864(c)(7) to prevent a foreign person from avoiding U.S. income tax at regular rates on the gain from the disposition of assets used in its U.S. trade or business by removing the assets from the United States before their disposition.[142] This provision reflects Congress' belief that the gain on such assets should be taxed at regular rates under Section 871(b) or Section 882 even though the assets are not being used in a U.S. trade or business at the time of disposition.[143] Thus, Section 864(c)(7) preserves the character of such gain as effectively connected income if the disposition of the property takes place within ten years after the foreign person ceases using the property in its U.S. trade or business.

> EXAMPLE:[144] *FC*, a foreign corporation, is engaged in a U.S. trade or business. *FC* owns business property physically located in the United States that it uses in its U.S. trade or business. *FC* ceases all U.S. business activity at the end of year 1. If *FC* had sold its property at a gain in year 1, the gain would have been attributable to its U.S. office and would, thereby, be U.S.-source and effectively connected income.[145] *FC*, however, does not dispose of the property until year 3, during which *FC* does not engage in any U.S. business activity.
>
> Under Section 864(c)(7), if *FC* sells the property in year 3, any recognized gain from the sale of the property is treated as effectively connected income. Similarly, if *FC* completely liquidates in year 3 and distributes the property to its shareholders, Section 864(c)(7) will treat any gain recognized on the distribution as effectively connected income.

---

[141] The Joint Committee Staff's *General Explanation* states that any income treated as effectively connected income by reason of Section 864(c)(7) is also to be considered attributable to a U.S. office of the foreign person's U.S. trade or business. Staff of Joint Comm. on Tax'n, 100th Cong., 1st Sess., General Explanation of the Tax Reform Act of 1986, at 1049 (1987).

[142] Staff of Joint Comm. on Tax'n, 100th Cong., 1st Sess., General Explanation of the Tax Reform Act of 1986, at 1048 (1987). This provision can be viewed as attempting to achieve tax parity between U.S. persons and foreign persons who attempt to avoid U.S. income tax by removing property from the taxing jurisdiction of the United States. Id. In the case of U.S. persons, Section 367 may force the transferor to recognize gain on the unrealized appreciation in U.S. assets that are transferred outside the U.S. taxing jurisdiction. See ¶ B2.04[4].

[143] Staff of Joint Comm. on Tax'n, 100th Cong., 1st Sess., General Explanation of the Tax Reform Act of 1986, at 1048–1049 (1987).

[144] This example is based on an example contained in Staff of Joint Comm. on Tax'n, 100th Cong., 1st Sess., General Explanation of the Tax Reform Act of 1986, at 1049 (1987).

[145] See infra ¶ C1.04[5][c].

The amount of gain taken into account under Section 864(c)(7) is *not* limited to the appreciation in the property while the property was used in the United States.[146] Rather, that amount of gain is based on the full amount of income or gain recognized at the time of the sale or exchange of the property.[147] Thus, Section 864(c)(7) may result in a foreign person's paying U.S. income tax at regular rates on appreciation in the property accruing after the property has ceased being used in a U.S. trade or business.

Suppose that a foreign person ceases using property in a U.S. trade or business, but does not dispose of the property until more than ten years after such cessation. In such a case, Section 864(c)(7) does not apply to the transaction, and the gain from disposition of the property is not treated as effectively connected income unless the foreign person is engaged in a U.S. trade or business in the year of disposition.

### [c] Treatment of U.S.-Source Income of Taxpayers Engaged in U.S. Trade or Business

Determining whether a foreign person's U.S.-source income, gains, and losses are effectively connected with the conduct of a U.S. trade or business involves sorting these items into two categories.[148] One category consists of U.S.-source fixed or determinable annual or periodical income as well as the other income items described in Sections 871(a)(1) and 881(a), portfolio interest described in Sections 871(h) and 881(c), and U.S.-source gain or loss from the sale or exchange of capital assets.[149] Income, gain, or loss in this category is treated as effectively connected with the conduct of a U.S. trade or business only if the income, gain, or loss meets either an asset-use test or a business-activities test and, thus, has a certain connection with the foreign person's U.S. trade or business.[150]

The other category consists of all other U.S.-source income, gains, and losses not falling within the first category. All such income, gains, and losses are treated as effectively connected income without regard to whether the income, gain, or loss has any connection with the foreign person's U.S. trade or business.[151]

Stated differently, the general rule of Section 864(c)(3) is "force of attraction": If the foreign person is engaged in the conduct of a U.S. trade or

---

[146] See HR Rep. No. 795, 100th Cong., 2d Sess. 288 (1988) (summarizing Section 864(c)(7)).

[147] Id.

[148] For the treatment of U.S.-source income, Section 864(c)(1)(A) refers to Sections 864(c)(2) and 864(c)(3).

[149] IRC § 864(c)(2).

[150] Id.; Treas. Reg. § 1.864-4(a).

[151] IRC § 864(c)(3); Treas. Reg. § 1.864-4(a).

business at any time during a taxable year, all the foreign person's U.S.-source income is treated as effectively connected with the U.S. trade or business, except U.S.-source fixed or determinable annual or periodical income and the other income items described in Sections 871(a)(1) and 881(a), portfolio interest described in Sections 871(h) and 881(c), and U.S.-source gain or loss from the sale or exchange of capital assets. An item in the excepted group is treated as effectively connected income under Section 864(c)(2) only if it meets either an asset-use test or a business-activities test and, thus, has a certain nexus with the U.S. trade or business.

**[i] Fixed or determinable annual or periodical gains, profits, and income, portfolio interest, and capital gains and losses (Section 864(c)(2)).** Fixed or determinable annual or periodical income and the other income items described in Sections 871(a)(1) and 881(a), portfolio interest described in Section 871(h) and 881(c), and gains and losses from the sale or exchange of capital assets, if arising from U.S. sources, are treated as effectively connected with the conduct of a trade or business if they meet either an asset-use test or a business-activities test.[152] Under the asset-use test, U.S.-source income, gain, or loss is treated as effectively connected if the income, gain, or loss is derived from assets used in, or held for use in, the conduct of the foreign person's U.S. trade or business.[153] Under the business-activities test, U.S.-source income, gain, or loss is treated as effectively connected if the activities of the U.S. trade or business were a material factor in the realization of the income, gain, or loss.[154]

*Asset-use test.* Under the asset-use test, U.S.-source fixed or determinable annual or periodical income, portfolio interest, and gains or losses from the sale or exchange of capital assets are effectively connected with the conduct of a U.S. trade or business if such income, gain, or loss is derived from assets used in, or held for use in, the conduct of a U.S. trade or business.[155] This test ordinarily applies to income, gain, or loss of a passive type when the trade or business activities do not directly give rise to the realization of the income, gain, or loss.[156] In applying this test, however, any activities of the trade or business that materially contribute to the realization of the income, gain, or loss are also used as a factor in determining whether the income, gain, or loss is effectively connected with the conduct of a U.S. trade or business.[157]

---

[152] IRC § 864(c)(2); Treas. Reg. § 1.864-4(c)(1)(i).

[153] IRC § 864(c)(2)(A); Treas. Reg. § 1.864-4(c)(1)(i).

[154] IRC § 864(c)(2)(B); Treas. Reg. § 1.864-4(c)(1)(i).

[155] IRC § 864(c)(2)(A); Treas. Reg. § 1.864-4(c)(1)(i).

[156] Treas. Reg. § 1.864-4(c)(2)(i).

[157] Id.

EXAMPLE: *FC,* a foreign corporation, is engaged in the business of manufacturing and selling goods in the United States. *FC* also derives dividends and interest from U.S. sources. Under the asset-use test, the U.S.-source dividend and interest income will be treated as effectively connected income if the dividends and interest are derived from assets used, or held for use, in the U.S. trade or business.[158]

The regulations ordinarily treat an asset as used in, or held for use in, the conduct of a U.S. trade or business if the asset is either

1. Held for the principal purpose of promoting the present conduct of the trade or business in the United States (e.g., as stock acquired and held to ensure a constant source of supply for the trade or business);

2. Acquired and held in the course of the trade or business conducted in the United States (e.g., as an account or note receivable arising from a U.S. trade or business); or

3. Otherwise held in a direct relationship to the trade or business conducted in the United States.[159]

The principal factor in determining whether an asset is held in a direct relationship to the U.S. trade or business is whether the asset is needed in that trade or business.[160] An asset is treated as needed in a U.S. trade or business only if the asset is held to meet the present needs of that trade or business.[161] For example, an asset held to meet the operating expenses of a U.S. trade or business is treated as needed in a U.S. trade or business.[162]

EXAMPLE:[163] *FC,* a foreign corporation, is engaged in industrial manufacturing in a foreign country. *FC* maintains a U.S. branch, which acts as importer and distributor of the merchandise *FC* manufactures abroad. By reason of these activities, *FC* is engaged in a U.S. trade or business during the current year.

The U.S. branch must hold a large current cash balance for business purposes. However, the amount of the required cash balance varies

---

[158] See Treas. Reg. § 1.864-4(c)(2)(i) (stating that asset-use test is "of primary significance where, for example, interest or dividend income is derived from sources within the United States by a nonresident alien individual or foreign corporation that is engaged in the business of manufacturing or selling goods in the United States").

[159] Treas. Reg. § 1.864-4(c)(2)(ii).

[160] Treas. Reg. § 1.864-4(c)(2)(iii)(*a*).

[161] Id.

[162] Id.

[163] This example is based on Treas. Reg. § 1.864-4(c)(2)(iv), Ex. 1.

because of the fluctuating seasonal nature of the branch's business. During the current year when large cash balances are not necessary, the branch invests the surplus funds in U.S. Treasury bills.

Since the Treasury bills are held to meet the present needs of the U.S. trade or business, they are treated as held in a direct relationship to that trade or business. Accordingly, the interest on the Treasury bills for the current year is effectively connected for that year with the conduct of *FC*'s U.S. trade or business.

An asset that is not held for the present needs of the U.S. trade or business is treated as *not* held in direct relationship to that U.S. trade or business. Thus, an asset held to meet the anticipated future needs of a U.S. trade or business is not treated as needed in the U.S. trade or business for this purpose.[164] For example, an asset is not treated as needed in the U.S. trade or business if the asset is held to provide for (1) future diversification into a new trade or business; (2) expansion of trade or business activities conducted outside the United States; (3) future plant replacement; or (4) future business contingencies.[165]

**EXAMPLE 1:**[166]  *FC1,* a foreign corporation, is engaged in the manufacture of goods in a foreign country. *FC1* maintains a branch in the United States and, by reason of the activities of the branch, is engaged in a U.S. trade or business during the current year.

*FC1* has excess cash that is generated by the U.S. branch but is not currently needed in the business of the branch. *FC1* invests the excess cash in securities issued by domestic corporations. The securities are held in *FC1*'s name in a brokerage office in the United States. That office receives and remits all income from the securities to *FC1*'s home office abroad. The officers of the U.S. branch have authority to manage the securities held in *FC1*'s brokerage account.

Since the securities are not held to meet the present needs of the U.S. trade or business, they are treated as *not* held in a direct relationship to that trade or business. Accordingly, any dividends and interest on the

---

[164] Treas. Reg. § 1.864-4(c)(2)(iii)(*a*).

[165] Id. See also Treas. Reg. § 1.864-4(c)(2)(iv), Ex. 2 (involving foreign corporation, engaged in manufacture of goods, that maintains factory at its U.S. branch and is thereby engaged in U.S. trade or business; income and gains derived from securities purchased with foreign corporation's general surplus reserves are deposited in New York bank account of U.S. branch; since funds invested in securities are not needed for present business needs of U.S. branch, securities are treated as not held in direct relationship with U.S. trade or business; accordingly, the regulations treat such income and gain as not effectively connected with conduct of foreign corporation's U.S. trade or business).

[166] This example is based on Treas. Reg. § 1.864-4(c)(2)(iv), Ex. 3.

securities for the current year and any gain or loss for that year resulting from the sale or exchange of the securities are not effectively connected for the current year with the conduct of *FCI*'s U.S. trade or business.

**EXAMPLE 2:**[167] *FC2*, a foreign corporation, is engaged in business in the United States during the current year through its manufacturing branch in the United States. The branch holds on its books stock in *DC*, a domestic corporation and wholly owned subsidiary of *FC2*. No relationship exists between the business of *DC* and the business of *FC2*'s branch in the United States. The officers of *DC* report to *FC2*'s home office and not to *FC2*'s U.S. branch. Dividends paid on the *DC* stock are paid to *FC2*'s branch in the United States and are mingled with the branch's general funds. *FC2*'s U.S. branch, however, has no present need in its business operations for the cash so received.

Since *FC2* does not hold the *DC* stock to meet the present needs of the U.S. trade or business conducted by *FC2*, the stock is treated as *not* held in a direct relationship to that trade or business. Accordingly, any dividends received by *FC2* during the current year on such stock are not effectively connected for that year with the conduct of that business.

The regulations presume that an asset is held in a direct relationship to the U.S. trade or business if

1. The asset was acquired with funds generated by that trade or business;

2. The income from the asset is retained or reinvested in that trade or business; and

3. Personnel who are present in the United States and actively involved in the conduct of that trade or business exercise significant management and control over the investment of the asset.[168]

The taxpayer may rebut this presumption, however, by showing that the asset is held to meet anticipated future needs (rather than the present needs) of the U.S. trade or business.[169]

**EXAMPLE:**[170] *FC*, a foreign corporation, has a branch office in the United States where *FC* sells to U.S. customers various products that are manufactured by *FC* in a foreign country. By reason of this activity, *FC* is engaged in business in the United States during the current year.

*FC*'s U.S. branch establishes during the current year a fund to which are

---

[167] This example is based on Treas. Reg. § 1.864-4(c)(2)(iv), Ex. 4.

[168] Treas. Reg. § 1.864-4(c)(2)(iii)(*b*).

[169] See Treas. Reg. § 1.864-4(c)(2)(iv), Ex. 5.

[170] This example is based on Treas. Reg. § 1.864-4(c)(2)(iv), Ex. 5.

credited periodically various amounts that are derived from the business carried on at such branch. The managing officers of the U.S. branch invest the amounts in this fund in various securities issued by domestic corporations. These officers have the responsibility for maintaining proper investment diversification and investment of the fund. During the current year, *FC*'s branch office derives U.S.-source dividends on these securities and gains and losses resulting from the sale or exchange of such securities.

The securities were acquired with amounts generated by the business conducted in the United States, the dividends are retained in that business, and the portfolio is managed by personnel actively involved in the conduct of that business. Therefore, the securities are presumed to be held in direct relationship to *FC*'s U.S. business, and the income, gains, or losses from such securities during the current year would be treated as effectively connected with the conduct of *FC*'s trade or business within the United States.

*FC,* however, may be able to rebut this presumption by showing that the fund was established to carry out a program of future expansion and not to meet the present needs of *FC*'s U.S. business. If *FC* is able to rebut the presumption, *FC*'s income, gains, or losses from the securities for the current year will not be treated as effectively connected for that year with the conduct of *FC*'s U.S. trade or business.

*Business-activities test.* The business-activities test focuses on the activities of the taxpayer's trade or business in the United States to determine whether those activities were a material factor in the realization of the income, gain, or loss in issue.[171] The business-activities test ordinarily applies in determining whether income, gain, or loss, even though generally of the passive type, arises directly from the active conduct of the taxpayer's U.S. trade or business.[172] The business-activities test is of primary importance in the following cases:

1. Dividends or interest derived by a dealer in stock or securities;

2. Gain or loss derived from the sale or exchange of capital assets in the active conduct of a trade or business by an investment company;

3. Royalties derived in the active conduct of a business consisting of the licensing of patents or similar intangible property; or

4. Service fees derived in the active conduct of a servicing business.[173]

---

[171] Treas. Reg. § 1.864-4(c)(1)(i).
[172] Treas. Reg. § 1.864-4(c)(3)(i).
[173] Id.

In applying the business-activities test, activities relating to the management of investment portfolios are not treated as activities of the trade or business conducted in the United States unless maintenance of the investments is the principal activity of that trade or business.[174]

**EXAMPLE 1:**[175] *FC1,* a foreign corporation, is a foreign investment company organized for the purpose of investing in stocks and securities. *FC1*'s investment portfolios consist of common stocks issued by both foreign and domestic corporations and a substantial amount of high-grade bonds. *FC1*'s business activity consists of the management of its portfolios for the purpose of investing, reinvesting, or trading in stocks and securities. During the current taxable year, *FC1* has its principal office in the United States and, by reason of its trading in the United States in stock and securities, is engaged in business in the United States.[176]

*FC1*'s activities in connection with the management of its investment portfolios are activities of its U.S. trade or business and are a material factor in the realization of the U.S.-source dividends, interest, gains, and losses with respect to the stocks and securities. Consequently, those U.S.-source dividends, interest, gains, and losses are effectively connected for the current year with the conduct of *FC1*'s U.S. trade or business.

**EXAMPLE 2:**[177] *FC2,* a foreign corporation, has a branch in the United States that acts as an importer and distributor of merchandise. By reason of the activities of its U.S. branch, *FC2* is engaged in business in the United States during the current year.

*FC2* also carries on a business in which it licenses patents to unrelated persons in the United States for use in the United States. The businesses of the licensees in which these patents are used have no direct relationship to the business carried on by *FC2*'s U.S. branch, although the merchandise marketed by *FC2*'s U.S. branch is similar in type to that manufactured under the patents. Employees of *FC2* who are *not* connected with *FC2*'s U.S. branch conduct the negotiations and other activities leading up to the consummation of these licenses. Further, *FC2*'s U.S. branch does not otherwise participate in arranging for the licenses.

The activities of *FC2*'s U.S. business are not a material factor in the realization of the royalties received by *FC2* during the current year.

---

[174] Id.

[175] This example is based on Treas. Reg. § 1.864-4(c)(3)(ii), Ex. 1.

[176] Regarding the conditions under which trading in stocks and securities may constitute a U.S. trade or business, see IRC § 864(b)(2)(A)(ii), discussed supra ¶ C1.04[4][c].

[177] This example is based on Treas. Reg. § 1.864-4(c)(3)(ii), Ex. 2.

Consequently, those royalties are not effectively connected for that year with the conduct of *FC2*'s U.S. trade or business.

*Accounting method as factor in determining whether income, gain, or loss is effectively connected.* In applying the asset-use test or the business-activities test, the statute and regulations require that "due regard" be given to whether the asset or the income, gain, or loss is accounted for through the trade or business conducted in the United States, that is, whether the asset or the income, gain, or loss is carried on books of account separately kept by that trade or business.[178] This accounting factor, however, does not by itself control whether the income, gain, or loss is effectively connected.[179]

In applying this factor, consideration will be given to whether the taxpayer's accounting reflects "the consistent application of generally accepted accounting principles in a particular trade or business in accordance with accepted conditions or practices in that trade or business."[180] Further, consideration will also be given to whether the taxpayer's accounting treatment of the item is consistent from year to year.[181]

*Effectively connected income from personal services.* Suppose that a nonresident alien individual performs personal services in the United States and, by reason of those services, is engaged in a U.S. trade or business. Wages, salaries, fees, compensations, emoluments, or other remunerations (including bonuses, pensions, and other deferred compensation) received by the nonresident alien individual for such services are effectively connected income.[182] The regulations conclusively treat such income as effectively connected income without applying the asset-use test or the business-activities test to such income, although such personal service income would be treated as effectively connected income under the business-activities test in any event (i.e., the trade or business of performing services in the United States is a material factor in the realization of the income).[183]

When a nonresident alien individual is engaged in a trade or business in

---

[178] IRC § 864(c)(2) (last sentence); Treas. Reg. § 1.864-4(c)(4).

[179] Treas. Reg. § 1.864-4(c)(4).

[180] Id.

[181] Id.

[182] Treas. Reg. § 1.864-4(c)(6)(ii) provides that such income is treated as effectively connected income if the nonresident alien individual is engaged in a U.S. trade or business in the taxable year in which such income is received. However, these regulations were written before the enactment of Section 864(c)(6) by the Tax Reform Act of 1986, § 1242(a). As discussed supra ¶ C1.04[5][b][ii], for taxable years starting after 1986, Section 864(c)(6) treats the income attributable to personal services performed in the United States as effectively connected income even if the income is received in another taxable year in which the nonresident alien individual is not engaged in a U.S. trade or business.

[183] Treas. Reg. § 1.864-4(c)(6)(ii).

the United States during a taxable year solely by reason of the individual's performing personal services in the United States, the individual's U.S.-source income or gains derived from an asset or U.S.-source gains or losses from the sale or exchange of capital assets are treated as effectively connected only if a direct economic relationship exists between the individual's holding of the asset from which the income, gain, or loss results and the individual's trade or business of performing the personal services.[184] The regulations give as an example of such a direct economic relationship the case in which a nonresident alien individual purchases stock in a domestic corporation to ensure the opportunity of performing personal services in the United States for that corporation.[185] Dividends and gain or loss from the sale or exchange of such stock should be treated as effectively connected income, gain, or loss.

*Special rules for income from banking, financing, or similar business activity.* Special rules apply to a taxpayer that conducts a banking, financing, or similar business in the United States.[186] These special rules may take priority over the general asset-use and business-activities tests.[187]

**[ii] Force of attraction for all other U.S.-source income (Section 864(c)(3)).** Section 864(c)(3) treats all U.S.-source income, gain, or loss that is not fixed or determinable annual or periodical income or one of the other types of income described in Section 871(a)(1) or Section 881, that is not portfolio interest described in Section 871(h) or Section 881(c), and that is not gain or loss from the sale or exchange of capital assets as effectively connected income, gain, or loss, without regard to whether such income has any relationship to the taxpayer's U.S. trade or business.[188] Thus, Section 864(c)(3) retains the "force-of-attraction" principle of pre-1966 law but applies it only to a limited class of U.S.-source income.[189]

---

[184] Treas. Reg. § 1.864-4(c)(6)(i).

[185] Id.

[186] Treas. Reg. §§ 1.864-4(c)(2)(i) and 1.864-4(c)(3)(i) refer to Treas. Reg. § 1.864-4(c)(5).

[187] See, e.g., Treas. Reg. § 1.864-4(c)(5)(ii), which uses the word "[n]otwithstanding."

[188] Treas. Reg. §§ 1.864-4(a) (last sentence), 1.864-4(b). See also Treas. Reg. § 1.864-4(b), Ex. 2 (taxpayer's U.S.-source installment gain from unrelated and discontinued trade or business of buying and reselling office machines in United States was treated, under Section 864(c)(3), as effectively connected with taxpayer's trade or business of selling in United States machine tools that taxpayer had manufactured in United States; income from discontinued U.S. office machine trade or business would be treated as effectively connected income in any event under Section 864(c)(6) of current law).

[189] See HR Rep. No. 1450, 89th Cong., 2d Sess. 61-62 (1966):

[The Foreign Investors Tax Act of 1966] does not change the taxation of income from U.S. sources derived by a nonresident alien individual, or by a foreign corporation, engaged in trade or business within the United States, if such income

This provision, for example, treats gain from the sale of inventory property or other property held primarily for sale to customers in the ordinary course of business as effectively connected income if the seller is engaged in a U.S. trade or business and if the inventory gain is treated as U.S.-source income under Sections 861(a)(6), 862(a)(6), and 863(b).[190] This result applies even if all the taxpayer's activities with respect to the sale of the inventory take place outside the United States and the taxpayer's U.S. office has no connection with the sale of the inventory in issue.[191]

> **EXAMPLE:**[192] *FC,* a foreign corporation, is engaged in the business of purchasing and selling electronic equipment. *FC* establishes a branch office in the United States to sell electronic equipment to customers, some of whom are located in the United States. Negotiation for the sales of the electronic equipment take place in the United States. By reason of these activities, *FC* is treated as engaged in a trade or business in the United States. *FC* is also engaged in the business of buying and reselling vintage wines. U.S. customers often place orders for vintage wine with *FC's* home office. Title to such wine passes to the U.S. customer in the United States, and, thus, under Section 861(a)(6), gain from the wine sales is U.S.-source income. *FC's* branch office for the electronics business plays no part in soliciting or filling the orders for this wine.
>
> *FC's* income from the sales of the vintage wine in the United States is treated as effectively connected income under Section 864(c)(3). This result applies even though *FC's* branch office in the United States has no connection with such sales and even though no selling activities by *FC* with respect to such sales take place in the United States.

If a taxpayer is engaged in a trade or business at any time during a taxable year, Section 864(c)(3) should apply to treat all the taxpayer's U.S.-source income that is not fixed or determinable annual or periodical income, portfolio interest, or gain from the sale or exchange of capital assets as effectively

---

does not consist of income of the types described in section 871(a)(1) or 881(a) or of gains from the sale or exchange of capital assets.

This force-of-attraction principle of Section 864(c)(3) has been criticized as being inconsistent with international norms of taxation and U.S. treaty provisions. See, e.g., Dale, "Effectively Connected Income," 42 Tax L. Rev. 689, 749 (1987) (noting that this provision "raises no meaningful amount of revenue" and recommending that provision be repealed).

[190] See, e.g., Treas. Reg. § 1.864-4(b), Ex. 1 (U.S.-source income from sales in United States of machine tools by foreign manufacturer of such tools was treated as effectively connected income under Section 864(c)(3)). Regarding the source rules for inventory property in Sections 861(a)(6), 862(a)(6), and 863(b), see ¶ A2.03[9][d].

[191] Treas. Reg. § 1.864-4(b), Ex. 3.

[192] This example is based on Treas. Reg. § 1.864-4(b), Ex. 3.

connected income, even if the taxpayer realized the income at a time during the year before the taxpayer had begun the U.S. trade or business[193] or after the taxpayer had ceased engaging in the U.S. trade or business.[194] Therefore, the foreign person's taxable year is treated as a whole for purposes of Section 864(c)(3).

### [d] Treatment of Foreign-Source Income of Taxpayers Engaged in U.S. Trade or Business

**[i] In general (Section 864(c)(4)(A)).**  In general, foreign-source income, gain, or loss is *not* treated as effectively connected with a foreign person's conduct of a U.S. trade or business.[195] This general rule is consistent with the basic source-based jurisdiction that the United States exercises over the income of foreign persons.

The statute, however, contains two limited exceptions under which certain types of foreign-source income, gain, or loss may be treated as effectively connected with a foreign person's conduct of a U.S. trade or business.[196] These exceptions serve to extend U.S. taxing jurisdiction over certain types of income that a foreign person derives principally from business activities in the United States but that are treated as arising from a foreign source under the source rules.[197]

**[ii] Certain income attributable to U.S. office (Sections 864(c)(4)(B) and 864(c)(5)).**  Section 864(c)(4)(B) treats foreign-source income, gain, or loss as effectively connected if six conditions are met. First, the taxpayer must be engaged in a U.S. trade or business during the taxable year.[198] Second, only certain types of foreign-source income, gain, or loss are subject to Section

---

[193] Cf. Alberto Vitale, 72 TC 386 (1979) (decided under broader force-of-attraction principles of pre-1966 law; nonresident alien individual who became limited partner in partnership engaged in U.S. trade or business was held taxable at regular graduated rates under former Section 871(c) on U.S.-source capital gain from liquidation of a domestic corporation consummated during the year but before partnership was formed and began doing business in United States).

[194] Cf. Van Der Elst v. Comm'r, 223 F2d 771 (2d Cir. 1955) (involving nonresident alien individual who was foreign diplomat and who, while stationed in United States, became employed as officer of domestic corporation; taxpayer was treated as engaged in U.S. trade or business and taxed on U.S.-source capital gains realized after taxpayer had left United States and ceased being employed by the domestic corporation under pre-1966 force-of-attraction principle that applied to all U.S.-source income), aff'g ¶ 53,363 P-H Memo. TC (1953).

[195] IRC § 864(c)(4)(A); Treas. Reg. § 1.864-5(a).

[196] IRC §§ 864(c)(4)(B)–864(c)(4)(C).

[197] Regarding the source rules generally, see Chapter A2.

[198] IRC § 864(c)(1); Treas. Reg. § 1.864-5(a).

864(c)(4)(B). Those types of income are certain (1) rents and royalties; (2) dividends and interest; and (3) gains or losses from inventory-type property.[199] Third, the foreign person must have, at some time during the taxable year in which the income, gain, or loss is realized, an office or other fixed place of business in the United States.[200] Fourth, the foreign-source income, gain, or loss must be "attributable" to that office or other fixed place of business.[201] Fifth, if the foreign-source income, gain, or loss were from a U.S. source, the rules governing U.S.-source income would treat the income as effectively connected with the conduct of a U.S. trade or business.[202] Sixth, the foreign-source income, gain, or loss must not (1) consist of dividends, interest, or royalties paid by a foreign corporation in which the taxpayer owns (within the meaning of Sections 958(a) and 958(b)) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or (2) be subpart F income within the meaning of Section 952(a).[203]

*Application to rents and royalties.* Section 864(c)(4)(B) may apply to income, gain, or loss that consists of rents or royalties for the use of, or for the privilege of using, certain intangible property described in Section 862(a)(4) derived in the active conduct of the U.S. trade or business.[204]

*Application to dividends and interest.* Section 864(c)(4)(B) may apply to dividends or interest that are either (1) derived in the active conduct of a banking, financing, or similar business within the United States[205] or (2) received by a corporation whose principal business is trading in stocks or securities for its own account.[206]

*Application to inventory.* Section 864(c)(4)(B) generally may apply to income, gain, or loss derived from the sale or exchange outside the United States through the taxpayer's U.S. office or fixed place of business of inventory-type property.[207] This provision does not apply, however, if the property is sold or exchanged for use, consumption, or disposition outside the United States and an office or other fixed place of business of the taxpayer in a foreign country participated materially in the sale.[208]

---

[199] IRC § 864(c)(4)(B); Treas. Reg. § 1.864-5(b).

[200] IRC § 864(c)(4)(B); Treas. Reg. § 1.864-5(a).

[201] IRC § 864(c)(4)(B); Treas. Reg. §§ 1.864-5(a), 1.864-6.

[202] Treas. Reg. § 1.864-5(a), which refers to Treas. Reg. § 1.864-5(b).

[203] IRC § 864(c)(4)(D); Treas. Reg. § 1.864-5(d). Regarding the stock ownership rules in Sections 958(a) and 958(b), see ¶ B3.02[2][e]. Regarding the definition of subpart F income in Section 952(a), see ¶ B3.04.

[204] IRC § 864(c)(4)(B)(i).

[205] For an example, see Rev. Rul. 75-253, 1975-1 CB 203.

[206] IRC § 864(c)(4)(B)(ii).

[207] IRC § 864(c)(4)(B)(iii).

[208] Id.

*U.S. office or other fixed place of business.*  Section 864(c)(4)(B) may apply only if a taxpayer has an office or other fixed place of business within the United States.[209] On the other hand, Section 864(c)(4)(B) may not apply with respect to a sale of inventory if the taxpayer has a foreign office or other fixed place of business that participates materially in a sale.[210] Thus, the definition of "office or other fixed place of business" plays a dual role.

In determining whether a taxpayer has an office or other fixed place of business for this purpose, the Code generally ignores an office or other fixed place of business of an agent.[211] However, the agent's office or other fixed place of business may count as the taxpayer's (1) if the agent has the authority to negotiate and conclude contracts in the name of the taxpayer and regularly exercises that authority or if the agent has a stock of merchandise from which orders on behalf of the taxpayer are regularly filled and (2) if the agent is *not* a general commission agent, broker, or other agent of independent status acting in the ordinary course of the agent's business.[212]

Determining whether a taxpayer has an office or other fixed place of business involves an analysis of the facts and circumstances of the case, "particularly to the nature of the taxpayer's trade or business and the physical facilities actually required by the taxpayer in the ordinary course of the conduct of" the trade or business.[213] An office or fixed place of business generally is a fixed facility (i.e., a place, site, structure, or other similar facility through which a foreign person conducts a trade or business).[214] A fixed facility may be treated as an office or other fixed place of business regardless of whether the foreign person continuously uses the facility.[215]

*Amounts attributable to U.S. office or other fixed place of business.* Section 864(c)(4)(B) applies only to income, gain, or loss that is "attributable" to the taxpayer's U.S. office or other fixed place of business.[216] For this purpose, income, gain, or loss is *not* attributable to a U.S. office or other fixed place of business unless (1) that office or place is a "material factor" in the production of the income, gain, or loss and (2) that office or place regularly

---

[209] IRC § 864(c)(4)(B). For detailed rules on the meaning of "office or other fixed place of business," see Treas. Reg. § 1.864-7.

[210] IRC § 864(c)(4)(B)(iii).

[211] IRC § 864(c)(5)(A).

[212] Id.

[213] Treas. Reg. § 1.864-7(a)(2). The regulations state that a foreign country's laws are not "controlling" in determining whether a foreign person has an office or other fixed place of business. Treas. Reg. § 1.864-7(a)(3).

[214] Treas. Reg. § 1.864-7(b)(1).

[215] Id.

[216] IRC § 864(c)(4)(B). Section 864(c)(5)(C) uses the words "properly allocable." For detailed rules on the amount of income, gain, or loss that is attributable to an office or other fixed place of business, see Treas. Reg. § 1.864-6.

carries on activities of the type from which the income, gain, or loss is derived.[217]

A special "cap" applies when inventory-type property is sold. In that case, the income attributable to a U.S. office or other fixed place of business shall not exceed the income that would have a U.S. source if the sale were made in the United States.[218]

*Exclusion for certain dividends, interest, and royalties.* Section 864(c)(4)(B) does not treat as effectively connected income foreign-source dividends, interest, or royalties paid by a foreign corporation in which the taxpayer owns more than 50 percent of the total voting power.[219] For this purpose, the taxpayer's ownership of the voting stock is determined under the rules in Sections 958(a) and 958(b).[220]

*Exclusion for subpart F income.* Section 864(c)(4)(B) does not treat as effectively connected income foreign-source income that constitutes subpart F income (within the meaning of Section 952(a)).[221] This exclusion applies to all of the foreign corporation's subpart F income, even the part that, if distributed, would be received by shareholders that are not U.S. shareholders (within the meaning of Section 951(b)).[222] This exclusion does not apply, however, to any income that is excluded in determining subpart F income for Section 952(a) purposes (e.g., income excluded from subpart F income under Section 954(b)(4) because of a high effective foreign tax rate).[223]

**[iii] Certain insurance income (Section 864(c)(4)(C)).** A special rule applies in the case of certain foreign insurance companies.[224] Section

---

[217] IRC § 864(c)(5)(B).

[218] IRC § 864(c)(5)(C).

[219] IRC § 864(c)(4)(D)(i); Treas. Reg. § 1.864-5(d).

[220] Section 864(c)(4)(D)(i) and Treas. Reg. § 1.864-5(d) refer to Sections 958(a) and 958(b). Regarding the stock ownership rules in Sections 958(a) and 958(b), see ¶ B3.02[2][e].

[221] IRC § 864(c)(4)(D)(ii) and Treas. Reg. § 1.864-5(d), which refer to Section 952(a). Regarding the definition of subpart F income in Section 952(a), see ¶ B3.04.

Section 864(c)(4)(D)(ii) applies even to foreign-source income treated as subpart income F income under the full-inclusion rule of Section 954(b)(3)(B), discussed at ¶ B3.05[7][b]. See Treas. Reg. § 1.864-5(d), Ex. 2.

[222] Treas. Reg. § 1.864-5(d). For an example illustrating this principle, see Treas. Reg. § 1.864-5(d), Ex. 1.

[223] Treas. Reg. § 1.864-5(d). Regarding Section 954(b)(4), see ¶ B3.05[8].

[224] Section 864(c)(4)(C) refers to "a foreign corporation taxable under part I or part II of subchapter L" in describing the scope of this rule. Part I of subchapter L consists of Sections 801–818 and determines the taxation of life insurance companies. Part II of subchapter L consists of Sections 831–835 and determines the taxation of insurance companies other than life insurance companies.

Before Section 864(c)(4)(C) was amended by the Revenue Act of 1987, § 10242(b), the foreign-source income of a foreign insurance company (other than a foreign life insurance company) that was attributable to a U.S. insurance business was not treated

864(c)(4)(C) treats all of a foreign insurance company's foreign-source income that is attributable to the company's U.S. insurance business as effectively connected with the conduct of a U.S. trade or business.[225] Such foreign-source income is treated as effectively connected income without regard to whether the foreign insurance company has an office or other fixed place of business in the United States to which such income is attributable.[226] The effect of this provision is to require the foreign corporation, in determining its insurance company taxable income from its U.S. business, to include all of its items of foreign-source income that "would appropriately be taken into account" in determining the insurance company taxable income of a domestic corporation.[227]

Section 864(c)(4)(C) does not, however, treat a foreign insurance company's foreign-source income as effectively connected income if such income consists of dividends, interest, or royalties paid by a foreign corporation in which the foreign insurance company owns more than 50 percent of the total combined voting power.[228] Further, if the foreign insurance company is a controlled foreign corporation, Section 864(c)(4)(C) does not treat any subpart F income of the foreign insurance company as effectively connected income.[229] Finally, foreign-source income is not treated as effectively connected with the conduct of a U.S. trade or business under this rule if the income would not have been treated as effectively connected had it been from U.S. sources.[230]

### [e]  Gains and Losses From Disposition of U.S. Real Property Interests (Section 897(a))

Section 897(a)(1) treats a nonresident alien individual's or foreign corporation's gain or loss from the disposition of a U.S. real property interest as if the foreign person were engaged in a U.S. trade or business and as if the gain

---

as effectively connected income under Section 864(c)(4)(C). See also Treas. Reg. § 1.864-5(c)(2) (issued before Section 864(c)(4)(C) was amended).

[225] See Treas. Reg. § 1.864-5(c)(1) (issued before Section 864(c)(4)(C) was amended to apply to foreign insurance companies in addition to foreign life insurance and mutual insurance companies). See also Treas. Reg. § 1.864-5(a).

[226] Treas. Reg. § 1.864-5(c)(1) (last sentence). In other words, the U.S. office or other fixed place of business requirement and the material factor test do not apply in determining whether a foreign insurance company's foreign-source income that is attributable to the foreign company's U.S. insurance business is effectively connected under Section 864(c)(4)(C).

[227] See Treas. Reg. § 1.864-5(c)(1) (issued before Section 864(c)(4)(C) was amended to apply to foreign insurance companies in addition to foreign life insurance and mutual insurance companies).

[228] IRC § 864(c)(4)(D)(i); Treas. Reg. § 1.864-5(d).

[229] IRC § 864(c)(4)(D)(ii) and Treas. Reg. § 1.864-5(d), which refer to Section 952(a).

[230] Treas. Reg. § 1.864-5(a), which refers to Treas. Reg. § 1.864-5(c).

or loss were effectively connected with the conduct of such trade or business. Thus, the foreign person is taxable on the gain or loss at regular rates under Section 871(b)(1) or Section 882(a)(1), as the case may be. The rules in Section 897 are discussed later in this chapter.[231]

### [f] Election to Treat Real Property Income as Effectively Connected With U.S. Trade or Business (Sections 871(d) and 882(d))

Sections 871(d) and 882(d) generally allow a nonresident alien individual or foreign corporation to elect to treat income from U.S. real property as effectively connected income if such income would not otherwise be effectively connected income. If a foreign person makes such an election, the foreign person's income from the U.S. real property, net of the deductions properly allocated and apportioned to such income, is taxable at regular rates under Section 871(b) or Section 882 even though the foreign person is not actually engaged in a U.S. trade or business at any time during the taxable year.[232] In the case of a foreign corporation, the U.S. real property income covered by the election may be subject to the branch profits tax in Section 884.[233] The rules regarding this election are discussed elsewhere in this chapter.[234]

### [g] Transportation Income (Section 887(b)(4))

Section 887(b)(4) contains special rules for determining whether a taxpayer's "United States source gross transportation income" is effectively connected income.[235] These special rules help determine whether such U.S.-source gross transportation income is taxable on a gross basis, at a 4 percent rate under Section 887, or on a net basis, at regular rates under Section 871(b) or Section 882(a), as the case may be.

If the U.S.-source gross transportation income is treated as effectively connected income under Section 887(b)(4), Section 887 does not apply,[236] and the income is taxable under Section 871(b) or Section 882(a), as the case may be.[237] If the U.S.-source gross transportation income is not treated as

---

[231] See infra ¶ C1.06.

[232] Sections 871(d) and 882(d) represent exceptions to the general rule in Section 864(c)(1)(B) that no income or gain will be treated as effectively connected income if the nonresident alien individual or foreign corporate taxpayer is not engaged in the conduct of a U.S. trade or business during the taxable year. See IRC § 864(c)(1)(B), which starts with the words "[e]xcept as provided in . . . section 871(d) or section 882(d)."

[233] See infra ¶ C1.05.

[234] See supra ¶ C1.03[19].

[235] The source rules for transportation income are discussed at ¶ A2.03[10].

[236] IRC § 887(b)(2).

[237] A foreign corporation's U.S.-source gross transportation income that is

effectively connected income under Section 887(b)(4), the 4 percent, gross-basis tax in Section 887 generally applies to such income.[238] Neither the net-basis tax in Sections 871(b) and 882(a) nor the gross-basis tax in Section 887 applies, however, to the extent the foreign person's U.S.-source gross transportation income is exempt from U.S. income tax under an applicable treaty or under the reciprocal exemption provided by Sections 872(b) and 883.[239]

Section 887(b)(4) treats a taxpayer's "United States source gross transportation income" as effectively connected income only if two requirements are met.[240] In the case of transportation income (other than leasing income), those two requirements are as follows: (1) The taxpayer must have, in the United States, a fixed place of business involved in the earning of the U.S.-source gross transportation income[241] and (2) substantially all of the U.S.-source gross transportation income must be attributable to regularly scheduled transportation.[242] In the case of transportation income from the leasing of a vessel or aircraft, the two requirements for treating the U.S.-source gross transportation income as effectively connected income are as follows: (1) The taxpayer must have, in the United States, a fixed place of business involved in the earning of the U.S.-source gross transportation income,[243] and (2) substantially all of the U.S.-source gross transportation income must be attributable to the fixed place of business.[244] These rules are discussed later in this chapter.[245]

### [h] FSC Income Treated as Effectively Connected Under Section 921(d) or Section 926(b)

Two provisions involving FSCs (foreign sales corporations) treat income as effectively connected with the conduct of a U.S. trade or business. These

---

effectively connected with a U.S. trade or business may also be subject to the branch profits tax in Section 884, unless the income is exempt from tax under an applicable treaty or under the reciprocal exemptions in Sections 872(b) and 883(a). S. Rep. No. 313, 99th Cong., 2d Sess. 342 (1986); Joint Comm. on Tax'n, 100th Cong., 1st Sess., General Explanation of the Tax Reform Act of 1986, at 930 (1987). Regarding the branch profits tax, see generally infra ¶ C1.05.

[238] IRC §§ 887(a), 887(c).

[239] See Staff of Joint Comm. on Tax'n, 100th Cong., 1st Sess. 930, General Explanation of the Tax Reform Act of 1986, at 930 (1987). Regarding the effects of treaties, see ¶ C4.14. Regarding the exclusion of transportation income under the reciprocal exemption in Sections 872(b) and 883(a), see infra ¶ C1.04[6][a].

[240] Section 863(c) contains special source rules for transportation income. See ¶ A2.03[10].

[241] IRC § 887(b)(4)(A).

[242] IRC § 887(b)(4)(B).

[243] IRC § 887(b)(4)(A).

[244] IRC § 887(b)(4)(B).

[245] See infra ¶ C1.07.

provisions ensure that foreign taxpayers will pay regular U.S. taxes on that income. First, Section 921(d) treats certain income of a FSC itself as effectively connected. Second, Section 926(b) treats certain distributions as effectively connected income in the hands of foreign shareholders of the FSC.

### [i]  Income Treated as Effectively Connected Under Section 953(c)(3)(C)

Section 953(c)(1) contains strict rules that may apply with respect to related-person insurance income.[246] A foreign corporation may avoid those rules by electing to treat certain income as effectively connected with the conduct of a U.S. trade or business.[247]

### [j]  Interest on U.S. Obligations Received by Banks Organized in U.S. Possessions (Section 882(e))

Section 882(e) contains a special rule for certain interest income of a corporation organized and conducting a banking business in a U.S. possession. This rule treats the corporation's interest income on U.S. government obligations as effectively connected with the conduct of a trade or business in the United States, without regard to whether the corporation actually conducts a trade or business in the United States.[248] Thus, such interest income is taxable under Section 882 at regular rates and is subject to the branch-level taxes in Section 884. Section 882(e), however, does not apply to interest that constitutes "portfolio interest" (as defined in Section 881(c)(2)).[249] Section 882(e) is discussed in Chapter D1.[250]

## [6]  Exclusions

### [a]  Certain Shipping and Aircraft Income (Sections 872(b) and 883(a))

Sections 872(b)(1) and 872(b)(2) exempt from U.S. tax gross income derived by a nonresident alien individual who is resident in a foreign country from the international operation of a ship or ships or from the international operation of an aircraft if such foreign country grants an equivalent exemption

---

[246] See ¶ B3.07.

[247] IRC § 953(c)(3)(C).

[248] Section 882(e) represents an exception to the general rule in Section 864(c)(1)(B) that no income or gain will be treated as effectively connected income if a taxpayer is not engaged in the conduct of a U.S. trade or business during the taxable year. See IRC § 864(c)(1)(B), which starts with the words "[e]xcept as provided in . . . section 882 . . . (e)."

[249] Regarding the definition of "portfolio interest," see supra ¶ C1.03[2][c].

[250] See ¶ D1.10.

to individual residents of the United States.[251] Similarly, Sections 883(a)(1) and 883(a)(2) exempt from U.S. tax gross income derived by a foreign corporation organized in a foreign country from the international operation of a ship or ships or from the international operation of aircraft if such foreign country grants an equivalent exemption to corporations organized in the United States.[252] Sections 872(b)(5) and 883(a)(4) extend these exemptions to income derived from the rental on a full or bareboat basis of a ship or ships or aircraft.

Sections 872(b)(6) and 883(a)(4) allow the Treasury to apply the reciprocal exemption rules separately with respect to income from different types of transportation.[253] Thus, the exemptions may apply to some types of shipping and aircraft income and not to others, depending on the scope of the particular foreign country's reciprocal exemption.

A foreign country may grant an exemption from tax by exempting persons from that tax through an income tax treaty or an exchange of diplomatic notes, by not imposing a tax, or by a decree or specific statutory exemption if a tax is generally imposed.[254] For example, countries enacting laws similar to the provisions of Sections 872(b) and 883(a) may be treated as granting an equivalent exemption.[255] A taxpayer may request a ruling that a particular country qualifies as granting an equivalent exemption.[256]

An income tax treaty between the United States and a foreign country may provide benefits under articles covering business profits, shipping and aircraft, rentals and royalties, capital gains, or other income.[257] However, to determine whether a treaty provides an equivalent exemption for purposes of Section 883(a), the Service has stated that only the exemptions in articles providing for a full exemption are to be considered.[258] Articles providing only

---

[251] Income qualifying for the exclusions in Sections 872(b) and 883(a) is exempt from U.S. tax under subtitle A of the Code. Subtitle A consists of Sections 1–1564.

[252] For purposes of this exemption, Sections 872(b)(7) and 883(a)(4) provide that a U.S. possession will be treated as a foreign country to the extent provided in the regulations.

In Rev. Rul. 87-18, 1987-1 CB 178, 179, the Service treated a foreign corporation that had its legal head office registered in Turkey under the Turkey Code of Commerce as organized in Turkey for purposes of Section 883.

[253] For examples of such separate treatment by the Service, see Rev. Rul. 87-18, 1987-1 CB 178 (treating certain transportation income of Turkish persons as reciprocally exempt from U.S. tax).

[254] See Rev. Rul. 89-42, 1989-1 CB 234 (providing list of countries known to grant equivalent exemptions for income derived from international operation of ships or aircraft as of the date of this ruling). Regarding treaty exemptions, see ¶ C4.14.

[255] HR Rep. No. 1435, 80th Cong., 2d Sess. 1–3 (1938). See also Rev. Rul. 90-37, 1990-1 CB 141, 141–142 (stating this point).

[256] Rev. Rul. 89-42, 1989-1 CB 234, 235 (indicating certain information that must be included in ruling request).

[257] Rev. Rul. 89-42, 1989-1 CB 234.

[258] Id.

a partial exemption, such as basing exemption on the absence of a permanent establishment, are not to be considered.[259]

In the case of a foreign corporation, Section 883(a)(5) provides that any failure of a foreign country to grant an equivalent exemption to a U.S. corporation is ignored if (1) the U.S. corporation is subject to tax on a residence basis under the provisions of foreign law and (2) those foreign legal provisions meet the standards (if any) that the Treasury has provided. If Section 883(a)(5) applies, a corporation organized in a foreign country may qualify for the exemptions in Sections 883(a)(1) and 883(a)(2) even though such foreign country does not grant an equivalent exemption to U.S. corporations.

These provisions were intended to exempt from U.S. tax only the transportation profits generated by the international transport of goods and passengers.[260] Thus, these provisions apparently do not exempt investment or other nontransportation income derived by shipping, aircraft, or railroad rolling stock enterprises.[261] Accordingly, in the Service's view, Sections 872(b) and 883(a) do not provide authority for the United States to conclude an executive agreement that modifies the taxation of income to which Section 897 applies.[262]

> EXAMPLE:[263] *FC*, a foreign corporation organized under the laws of country *X*, engages in the international operation of ships and aircraft through its offices in the United States. *FC* realizes gain on the disposition of real property that *FC* had used in its business. This property is a U.S. real property interest within the meaning of Section 897(c).[264] By an exchange of diplomatic notes, the United States and country *X* have entered into an agreement based on Sections 872(b) and 883(a) to exclude from taxation in one country the gross income derived by an enterprise of the other country from the international operation of ships or aircraft.
>
> Section 883(a) does not exempt *FC* from U.S. tax on its gain from the disposition of the U.S. real property interest because such gain is not the type of income from international transportation operations to which

---

[259] Id. The Service pointed out that a full exemption is not granted under many royalty, rental, and capital gains articles. Id.

[260] See also Rev. Rul. 90-37, 1990-1 CB 141, 142 (stating this point).

[261] See Rev. Rul. 74-170, 1974-1 CB 175; Rev. Rul. 274, 1953-2 CB 81. See also Rev. Rul. 90-37, 1990-1 CB 141, 142 (stating this point).

[262] Rev. Rul. 90-37, 1990-1 CB 141, 142. See also United States v. Guy W. Capps, Inc., 204 F2d 655 (4th Cir. 1953); Swearingen v. United States, 565 F. Supp. 1019 (D. Colo. 1983).

[263] This example is based on Rev. Rul. 90-37, 1990-1 CB 141 (executive agreement between United States and Argentina did not exclude from U.S. tax, under Section 897, gain from disposition of U.S. real property interest realized by U.S. branch of Argentine corporation engaged in international operation of ships and aircraft).

[264] Regarding the definition of a U.S. real property interest generally, see infra ¶ C1.06[2].

Section 883(a) was intended to apply. Thus, *FC* is subject to tax on such gain under Section 897(a).[265]

Further, Sections 872(b) and 883(a) exclude from gross income only earnings from certain types of transportation activities. These exclusions do not extend to income from nontransportation activities merely because a ship or aircraft is involved in the earning of the income.[266]

> **EXAMPLE:**[267] *FC,* a foreign corporation, is hired to conduct exploratory drilling in the outer continental shelf of the United States to obtain information about the soil conditions before the payor enters into an offshore lease. *FC* conducts this drilling from a ship that it leases from an unrelated party.
>
> *FC*'s income from the exploratory offshore drilling is not excludible under Section 883(a). Such income is not derived from the "operation of a ship," as that phrase is used in Section 883(a), because the income is derived from nontransportation activities.

Suppose a nonresident alien individual or foreign corporation earns interest from funds arising from the shipping business and deposited temporarily in banks located in the United States. Suppose further that the funds represent surplus working cash of the individual or corporation, the funds will be immediately disbursed for use in the shipping business, and the equivalent exemption requirements of Section 883 are met. Is this interest income exempt from U.S. tax under Sections 872(b)(1) and 883(a)(1)? Under an earlier version of Section 883(a)(1), the Service held that such interest was exempt from U.S. tax as "earnings derived from the operation of a ship or ships."[268] The Service reasoned that since these deposits were used merely as a depository of working funds in continual turnover in the shipping business, this income was incidental to the shipping business.[269] Despite the change in statutory language, the holding of this ruling may apply under current law.

---

[265] Regarding Section 897 generally, see infra ¶ C1.06.

[266] See Rev. Rul. 80-64, 1980-1 CB 158, 159.

[267] This example is based on Rev. Rul. 80-64, 1980-1 CB 158.

[268] Rev. Rul. 70-263, 1970-1 CB 158, superseding Gen. Couns. Mem. 4859, VII-2 CB 73 (1928).

[269] Contrast the facts and holding in Rev. Rul. 70-263 with the facts and holding in Rev. Rul. 274, 1953-2 CB 81. In Rev. Rul. 274, the Service held that interest earned on temporary short-term investments (such as U.S. Treasury notes and certificates) held in a U.S. bank and purchased with surplus cash by a foreign corporation engaged in the shipping business were not "earnings derived from the operation of a ship or ships documented under the laws of a foreign country" within the meaning of a statutory predecessor of Section 883. The Service reasoned that interest earned on such investments was not received from current assets used in the operation of the shipping business and, thus, could not represent earnings derived from the operation of ships. Rev. Rul. 274, 1953-2 CB 81, 82.

Sections 872(b) and 883(a) are intended to prevent the double taxation of shipping, aircraft, and certain railroad rolling stock income of individuals and corporations that operate on an international basis.[270] Further, these provisions are intended to eliminate the difficulties of determining the source of income earned from such international shipping, aircraft, and railroad rolling stock operations and to encourage the international adoption of uniform tax laws regarding such activities.[271]

To prevent taxpayers from shopping for a country, Section 883(c) excludes certain foreign corporations from the exemptions for shipping and aircraft income. Under Section 883(c), a foreign corporation generally is excluded from the exemptions if 50 percent or more of the value of the corporation's stock is owned by individuals who are *not* residents of either (1) the foreign country in which the corporation is incorporated or (2) another foreign country that grants a reciprocal exemption to U.S. corporations.[272] In other words, a foreign corporation is excluded from the exemptions in Sections 883(a)(1) and 883(a)(2) if more than 50 percent of the foreign corporation's stock is owned by individuals who are residents of the United States or of a foreign country that does not grant an equivalent exemption to U.S. corporations.

For purposes of applying this country-shopping exclusion, Section 883(c)(4) provides constructive ownership rules. Stock owned (directly or indirectly) by or for a corporation, partnership, trust, or estate is treated as owned proportionately by its shareholders, partners, or beneficiaries. Stock treated as owned by a person under this rule is treated as actually owned by the person for purposes of applying this rule again to make another the owner of the stock. Thus, a chain of attribution is possible. A revenue ruling treats stock owned by the government of the country in which the corporation is organized and that grants the reciprocal exemption as not owned by a person who is not a resident of the foreign country granting the exemption.[273]

This country-shopping exclusion from the shipping and aircraft income exemptions does not apply to two types of foreign corporations. First, a controlled foreign corporation may qualify for the exemptions in Sections

---

[270] See HR Rep. No. 1435, 80th Cong., 2d Sess. 1–3 (1948); S. Rep. No. 275, 67th Cong., 1st Sess. 14 (1921). See also M/V Nonsuco, Inc. v. Comm'r, 234 F2d 583 (4th Cir. 1956).

[271] See HR Rep. No. 1435, 80th Cong., 2d Sess. 1–3 (1948); S. Rep. No. 275, 67th Cong., 1st Sess. 14 (1921). See also M/V Nonsuco, Inc. v. Comm'r, 234 F2d 583 (4th Cir. 1956).

[272] IRC § 883(c)(1).

[273] Rev. Rul. 87-18, 1987-1 CB 178 (government of Turkey treated as ultimate owner of any stock owned in foreign corporation, and value of such stock was included in calculating beneficial ownership of foreign corporation; government of Turkey was not treated as individual resident of foreign country other than Turkey for purposes of Section 883(c)).

883(a)(1) and 883(a)(2) without regard to stock ownership.[274] Second, the exclusion does not apply to any corporation organized in a foreign country that grants a reciprocal exemption to U.S. corporations if the stock of the corporation is primarily and regularly traded on an established securities market in that foreign country, another foreign country that grants a reciprocal exemption to U.S. corporations, or the United States.[275] Thus, such publicly traded foreign corporations may qualify for the shipping and aircraft income exemptions without regard to the percentage of the corporations' stock owned by residents of particular foreign countries.

Further, if such a publicly traded corporation owns (directly or indirectly) stock in another corporation, the stock owned by the publicly traded corporation will be treated as owned by individual residents of the foreign country in which the publicly traded corporation is organized.[276] Thus, the stock owned by the publicly traded corporation helps the other corporation qualify for the shipping and aircraft income exemptions.

### [b] Foreign Corporation's Income From Certain Railroad Rolling Stock (Section 883(a)(3))

Section 883(a)(3) exempts from U.S. tax earnings derived from payments by a common carrier for use on a temporary basis of railroad rolling stock owned by a corporation organized in a foreign country, if that foreign country grants an equivalent exemption to U.S. corporations. "Temporary use" for purposes of this provision means use not expected to exceed a total of ninety days in any taxable year.[277]

Section 883(a)(5) provides that any failure of a foreign country to grant an equivalent exemption to a U.S. corporation is ignored if (1) the U.S. corporation is subject to tax on a residence basis under the provisions of foreign law and (2) those foreign legal provisions meet the standards (if any) that the Treasury prescribes.

### [c] Certain Earnings Derived by Foreign Entities From Communications Satellite Systems (Section 883(b))

Section 883(b) exempts from U.S. income tax earnings derived from the ownership or operation of a communications satellite system by a foreign

---

[274] Section 883(c)(2) refers to the definition of a "controlled foreign corporation" in Section 957(a). Regarding that definition of "controlled foreign corporation," see ¶ B3.02.

[275] IRC § 883(c)(3)(A). For other Code sections that refer to regularly traded stock; see IRC §§ 884(e)(4)(B), discussed infra ¶ C1.05, and 897(c)(3), discussed at ¶ C3.06[2][e].

[276] IRC § 883(c)(3)(B).

[277] IRC § 883(a)(3).

entity designated by a foreign government to participate in such ownership or operation, provided that one requirement is met. The United States must participate, through its designated entity, pursuant to the Communications Satellite Act of 1962, in the communications satellite system from which the earnings are derived.[278] Section 883(b) does not define the term "foreign entity," but the use of that term, rather than the term "foreign corporation," suggests that foreign entities other than corporations may qualify for this exemption.

### [7] Treaty-Protected Income

A U.S. treaty may protect a foreign person from tax under Section 871(b) or Section 882 on income that is effectively connected with the conduct of a U.S. trade or business. That result may be most likely to occur for a taxpayer that has business profits but does not have a permanent establishment in the United States.[279]

### [8] Deductions

#### [a] In General

A foreign person pays tax at the regular graduated rates on the person's effectively connected taxable income.[280] In computing effectively connected taxable income, Section 873(b) allows a nonresident alien individual to take the following three deductions (even if not connected with a U.S. trade or business): (1) casualty losses from property located in the United States, to the extent those losses are allowable under Section 165(c)(3); (2) charitable contributions, to the extent those contributions are allowable under Section 170; and (3) Section 151 personal exemptions (generally only one).[281] Section 882(c) allows a foreign corporation to take the charitable contribution deduction under Section 170 (without regard to whether the deduction is effectively connected with the foreign person's U.S. trade or business). Sections 873(a) and 882(c)(1)(A) allow a foreign person to take other deductions only if and to the extent such deductions are connected with income that is effectively connected with the conduct of a U.S. trade or business.[282] The amount of the foreign person's deductions that are connected with effectively

---

[278] Section 883(b) refers to "47 U.S.C. 701 and following."

[279] See ¶ C4.05.

[280] IRC §§ 871(b), 882(a)(1).

[281] If the nonresident alien individual is a resident of a contiguous country or is a U.S. national, the limit of one personal exemption does not apply. IRC § 873(b)(3).

[282] See Hanna v. Comm'r, 763 F2d 171 (4th Cir. 1985) (disallowing, under Section 873, nonresident alien individual's attempted deduction, under pre–1986 Act version of

connected income is determined under the allocation and apportionment rules discussed in Chapter A2.[283] None of these deductions, however, generally is allowable to a nonresident alien individual or a foreign corporation unless the individual or corporation files a true and accurate return.[284]

### [b]  Deduction of Foreign Taxes Paid or Accrued (Sections 164 and 906)

Suppose a nonresident alien individual or foreign corporation pays or accrues a tax to a foreign country. May the nonresident alien individual or foreign corporation deduct that tax in computing the taxable income that is effectively connected with the conduct of a U.S. trade or business? The answer is generally affirmative under Section 164.[285] Even if the foreign tax qualifies for deduction under Section 164, however, a nonresident alien individual or foreign corporation may deduct the foreign tax only under limited circumstances.

First, if the tax is of a type that qualifies for the foreign tax credit under Sections 901 and 906, the taxpayer must decide whether to credit or deduct the tax.[286] If the taxpayer elects to credit any foreign tax, no deduction may be taken for any foreign income taxes.[287]

Second, the foreign tax must be connected with income that is effectively connected with the conduct of a U.S. trade or business.[288] Whether the tax is so connected is determined under the allocation and apportionment regulations.[289]

---

Section 164, of personal sales taxes, personal property taxes, and state and local gasoline taxes, none of which were allocable to U.S.-source trade or business income; also disallowing taxpayer's deduction of personal interest expense under Section 163), rev'g in part but aff'g on this issue 76 TC 252 (1981); Stemkowski v. Comm'r, 690 F2d 40, 48–49 (2d Cir. 1982) (disallowing, under Section 873, nonresident alien individual's attempted deduction of personal sales taxes under pre–1986 Act version of Section 164 because taxpayer failed to show the sales taxes were business related), rev'g in part but aff'g on this issue 76 TC 252, 306–312 (1981). See also Favell v. United States, 89-1 USTC ¶ 9287, at 87,720 (Cl. Ct. 1989) (deductions not at issue in these consolidated cases "at this time").

[283] See ¶ A2.05.

[284] IRC §§ 874(a), 882(c)(2), discussed infra ¶ C1.04[8][d].

[285] Section 164(a)(1) allows a deduction for foreign real property taxes. Section 164(a)(3) allows a deduction for foreign income, war profits, and excess profits taxes. Section 164(a) (second sentence) allows a deduction for any other foreign taxes paid or accrued in carrying on a trade or business or an activity described in Section 212.

[286] As discussed infra ¶ C1.04[10], Section 906 allows a limited foreign tax credit for nonresident alien individuals and foreign corporations.

[287] IRC § 275(a)(4)(A).

[288] IRC §§ 873(a), 882(c)(1)(A).

[289] Id. The allocation and apportionment regulations are discussed at ¶ A2.05.

Third, Section 906(b)(1) limits the types of foreign taxes that a nonresident alien or foreign corporation may deduct under Section 873(a) or Section 882(c).[290] Section 906(b)(1) provides that an amount of tax paid or accrued to a foreign country or to a U.S. possession is not deductible to the extent that the tax is imposed with respect to income from U.S. sources that would not be taxed by the foreign country or U.S. possession but for the fact that the nonresident alien is a citizen or resident of the foreign country or possession or the foreign corporation is incorporated or domiciled for tax purposes in the foreign country or possession.

Section 906(b)(1), however, does not prevent a nonresident alien or foreign corporation from deducting foreign taxes imposed on *foreign-source* income. The Service has held that a nonresident alien individual or foreign corporation may deduct such foreign taxes without regard to Section 906(b)(1), even if the foreign tax is imposed solely because the nonresident alien individual is a citizen or resident of the foreign country or because the foreign corporation is incorporated under the laws of the foreign country or is domiciled in the country for tax purposes.[291]

Suppose a foreign country in which the nonresident alien individual is a citizen or resident or in which the foreign corporation is incorporated or domiciled imposes an income tax on foreign-source income from sources outside that country. Suppose further that the foreign country allows the nonresident alien individual or foreign corporation a credit for any taxes paid or accrued to the foreign-income-source country. A ruling issued by the Service limits the nonresident alien's or foreign corporation's deduction in this situation to the amount of foreign tax paid or accrued to the foreign country of residence less the credit allowed by the foreign country of residence for the foreign tax paid or accrued to the foreign-income-source country.[292]

---

[290] Sections 873(c) and 882(c)(4) contain cross-references to Section 906(b)(1).

[291] Rev. Rul. 80-243, 1980-2 CB 413 (involving U.K. corporation that had permanent establishment in United States; U.K. corporation paid U.K. income taxes on business profits attributable to its U.S. business only because corporation was resident of United Kingdom; Service held that Section 906(b)(1)(B) was not contrary to any treaty provisions and prevented corporation from deducting the U.K. income taxes imposed on *U.S.-source* business profits under Section 882(c); Service also held, however, that Section 906(b)(1)(B) did not prevent foreign corporation from deducting U.K. income tax on effectively connected income from foreign sources).

[292] Rev. Rul. 80-243, 1980-2 CB 413 (to the extent U.K. income tax is imposed on foreign-source income from U.K. sources, foreign corporation may deduct foreign tax in full in computing U.S. taxable income; to the extent U.K. income tax is imposed on foreign-source income from sources other than United Kingdom, foreign corporation may deduct U.K. income tax only to the extent that U.K. tax on such income exceeds any foreign tax credit allowed by United Kingdom for taxes paid to foreign-income-source country with respect to such income).

### [c] Application of Uniform Capitalization Rules to Foreign Persons (Section 263A)

Section 263A provides uniform capitalization rules that apply to costs incurred by a taxpayer with respect to property produced and property acquired for resale. These rules generally apply to foreign persons engaged in the production of property or the acquisition of property for resale, unless an exception to the rules applies.[293]

Two notices allow foreign persons to use a simplified method of accounting for costs that must be capitalized under Section 263A (called the U.S. ratio method).[294] This simplified method eventually will be incorporated in regulations to be issued under Section 263A.

Under the U.S. ratio method, an electing foreign person allocates the additional costs required to be capitalized under Section 263A to property produced or property acquired for resale by applying the "U.S. ratio" of the "applicable U.S. trade or business" to the cost (as determined by the foreign person before the application of Section 263A) of the property produced or acquired for resale.[295] This simplified U.S. ratio method does not, however, apply to interest required to be capitalized by Section 263A(f).[296]

### [d] Return Requirement (Sections 874(a) and 882(c)(2))

A nonresident alien individual generally receives deductions and credits only if the individual files a true and accurate return in the manner prescribed.[297] This rule does not, however, limit the individual's right to certain credits.[298]

A foreign corporation generally receives deductions and credits only if the corporation files a true and accurate return in the manner prescribed.[299] This

---

[293] Section 263A and its regulations generally use the term "taxpayer" in describing the operation of the rules, without distinguishing between U.S. and foreign persons. Notice 88-104, 1988-2 CB 443, stated that Section 263A generally applies to foreign persons as well as U.S. persons.

[294] Notice 88-104, 1988-2 CB 443; Notice 89-67, 1989-1 CB 723, 727.

[295] Notice 89-67, 1989-1 CB 723, 727; Notice 88-104, 1988-2 CB 443, 443–444.

[296] Notice 89-67, 1989-1 CB 723, 727; Notice 88-104, 1988-2 CB 443.

[297] IRC § 874(a). For regulations, see Treas. Reg. § 1.874-1.
In Nino Sanzogno, 60 TC 321 (1973), acq. 1976-2 CB 2, a nonresident alien individual filed Form 1040C, U.S. Departing Alien Income Tax Return. The court treated that form as an income tax return for Section 874 purposes.

[298] Section 874(a) refers to Sections 31 (wage withholding taxes), 33 (chapter 3 withholding taxes), and 34 (excise taxes on certain fuels).

[299] IRC § 882(c)(2). For regulations, see Treas. Reg. § 1.882-4. See also Blenheim Co. v. Comm'r, 125 F2d 906 (4th Cir. 1942) (deductions denied; taxpayer filed personal holding company return, but not timely, regular return); Ardbern Co. v. Comm'r, 120

rule does not, however, limit the corporation's right to certain credits.[300] Moreover, this rule does not apply for purposes of the personal holding company tax.[301]

## [9] Withholding

Sections 1441 and 1442 generally do not require withholding with respect to income that is effectively connected with the conduct of a trade or business within the United States and that is included in the recipient's gross income under Section 871(b)(2).[302] Important procedural rules should be followed for this withholding exemption.[303]

Other types of withholding may apply, however, with respect to effectively connected income. In the case of a disposition of a U.S. real property interest by a foreign person, Section 1445 may require the transferee to withhold a tax of 10 percent of the transferor's amount realized on the disposition.[304] Section 1446 generally requires a partnership to withhold a tax from the portion of its effectively connected taxable income allocable to foreign partners.[305] Further, in some cases, wage withholding may apply.[306]

## [10] Credits

### [a] Foreign Tax Credit (Section 906)

Section 906 allows nonresident alien individuals and foreign corporations that are engaged in a U.S. trade or business a limited foreign tax credit under

---

F2d 424 (4th Cir. 1941) (deductions allowed; foreign corporation had attempted in good faith to file income tax returns claiming deductions with internal revenue agent, who rejected the returns on ground that they were improperly executed); Anglo-American Direct Tea Trading Co., 38 BTA 710 (1938), nonacq. 1939-1 CB 39 (foreign corporation filed its tax returns after returns' due dates; statutory predecessor of Section 882(c)(2) did not bar corporation from obtaining dividends-received deductions by reason of late filing of returns); Gladstone Co., 35 BTA 764 (1937) (foreign corporation's dividends-received deduction denied where foreign corporation filed return but did not fill in schedule relating to dividends-received deductions).

[300] Section 882(c)(2) refers to Sections 33 (chapter 3 withholding taxes) and 34 (excise taxes on certain fuels).

[301] IRC § 882(c)(2). Regarding the application of the personal holding company to a foreign corporation, see infra ¶ C1.08[3].

[302] IRC §§ 1441(c)(1) and 1442(a), discussed at ¶ C2.02[6].

[303] Those rules are discussed at ¶ C2.02[6].

[304] See ¶ C2.04.

[305] See ¶ C2.05.

[306] See ¶ C2.09.

Section 901.[307] The Section 906 credit applies to certain foreign income taxes paid or accrued (or deemed paid or accrued under Section 902) on income effectively connected with the conduct of a trade or business within the United States.[308] Section 906 generally applies only to foreign taxes paid or accrued with respect to effectively connected income from foreign sources.[309] The Section 906 credit is the only foreign tax credit allowed by the Code to nonresident alien individuals and foreign corporations.[310] This credit may offset only the tax liability imposed by Sections 871(b) and 882(a).[311]

As is true of the other foreign tax credits allowed by Section 901, the taxpayer must affirmatively elect to claim the foreign taxes as a credit under

---

[307] IRC § 906(a). The Code provides no foreign tax credit for nonresident alien individuals or foreign corporations that are not engaged in a U.S. trade or business. No credit is allowed because the United States taxes only the U.S.-source income of such foreign persons. The United States views itself, as the country of source, as having primary tax jurisdiction over such U.S.-source income. To the extent that double taxation of such U.S.-source income exists, the foreign country of residence should provide relief under general principles of international tax law.

[308] IRC § 906(a). The Section 906 credit applies both to foreign income, war profits, and excess profits taxes within the meaning of Section 901(a) and to taxes "in lieu of" such taxes within the meaning of Section 903. See HR Rep. No. 1450, 89th Cong., 2d Sess. 106 (1966). Section 903 provides that the term "income, war profits, and excess profits taxes" includes "in lieu of" taxes for purposes of Sections 164(a) and 275(a) and part III of subchapter N of chapter 1. Part III consists of Sections 901–989.

[309] IRC §§ 906(a), 906(b)(1).

[310] Section 874(c) provides that a nonresident alien individual may not use any foreign tax credit under Section 901 except as provided in Section 906. Similarly, Section 882(c)(3) limits a foreign corporation to whatever foreign tax credit is allowed by Section 906. Section 901(b)(4) reinforces this rule by providing that a nonresident alien individual or foreign corporation may claim a foreign tax credit under Section 901(a) for the amount determined under Section 906.

A foreign corporation's unused foreign tax credits carry over to a successor corporation and may be used by the successor corporation, subject to the restrictions in Sections 383(c) and 904. See Rev. Rul. 80-144, 1980-1 CB 80 (involving foreign corporation that transferred substantially all of its properties to related domestic corporation in transaction that qualified as reorganization under Section 368(a)(1)(D); Service held that any unused foreign income taxes of the transferor foreign corporation could be carried over and used in computing foreign tax credit of the acquiring domestic corporation, subject to Section 904 limit).

[311] A nonresident alien individual or foreign corporation may *not* use the foreign tax credit allowed by Section 906 to offset the taxes imposed by Sections 871(a), 881, and 884. See IRC §§ 906(b)(3), 906(b)(7). Further, a nonresident alien individual or foreign corporation may not use the foreign tax credit allowed by Section 906 to offset the 4 percent tax imposed by Section 887 on a foreign person's U.S.-source gross transportation income. See infra ¶ C1.07.

Section 906.[312] If the taxpayer elects the credit, the taxpayer may not deduct any foreign income taxes.[313] Most of the basic procedural rules that apply to other foreign tax credits under Section 901 apply to the Section 906 credit.[314]

Congress added Section 906 to the Code in 1966 when nonresident aliens and foreign corporations first became taxable on certain foreign-source income that was effectively connected with a U.S. trade or business. Congress was concerned that a nonresident alien or foreign corporation could be subject to taxation of such foreign-source effectively connected income by both the United States and the foreign country of source or of residence (or both).[315] Thus, Section 906 allows a credit for certain taxes paid to a foreign country or U.S. possession with respect to such foreign-source effectively connected income.

Section 906 applies only to income, war profits, and excess profits taxes (or certain taxes "in lieu of" such taxes) paid or accrued to a foreign country or U.S. possession with respect to income effectively connected with the conduct of a trade or business within the United States. How is the determination made as to what portion of a creditable foreign tax is imposed on a taxpayer's income that is effectively connected with the conduct of a U.S. trade or business?[316] The statute says nothing about this point, and no regulations have yet been issued (over twenty-five years after the enactment of Section 906). The legislative history provides some assistance, however.

The 1966 House Report suggested that if a foreign tax can be "specifically allocated to an item or class of income," then that allocation should apply for Section 906 purposes.[317] If a foreign tax cannot be specifically allocated to an item or class of income, the portion of the creditable foreign tax allocable to

---

[312] Regarding the rules for claiming the foreign tax credit allowed by Section 901, see ¶ B4.08.

[313] IRC § 275(a)(4)(A).

[314] Section 906(a) allows a nonresident alien individual or foreign corporation a tax credit under Section 901, thus incorporating the procedural rules of that Section (except where modified by Section 906 itself). See also HR Rep. No. 1450, 89th Cong., 2d Sess. 105 (1966), stating:

The credit allowed pursuant to section 906 is determined in basically the same manner as the credit would be determined if the nonresident alien individual were a citizen of the United States, or the foreign corporation were a domestic corporation managed and controlled in the United States, and all of the income of such citizen or domestic corporation consisted of the alien's or foreign corporation's income which is effectively connected with the conduct of a trade or business within the United States.

[315] See S. Rep. No. 1707, 89th Cong., 2d Sess. 44 (1966).

[316] For a discussion of this issue, see Owens, "Foreign Tax Credit Granted to Foreigners," 45 Taxes 463, 469–472 (1967).

[317] HR Rep. No. 1450, 89th Cong., 2d Sess. 107 (1966).

the income that is effectively connected with a U.S. trade or business should be determined by multiplying the foreign tax by a fraction.[318] The numerator of the fraction is the taxpayer's taxable income that is effectively connected income. The denominator of the fraction is the taxpayer's total taxable income.[319]

*Exclusion of certain taxes on U.S.-source income.* Section 906(b)(1) provides that no credit is allowed for any tax paid or accrued to any foreign country or U.S. possession on U.S.-source income that would not have been taxed by the foreign country or U.S. possession but for the fact that (1) the nonresident alien individual is a citizen or resident of the foreign country or U.S. possession or (2) the foreign corporation was organized under the law of the foreign country or U.S. possession or is domiciled for tax purposes in such country or possession. Section 906(b)(1) (combined with the limit in Section 904, as modified for this purpose) generally limits the Section 906 credit to foreign taxes paid or accrued with respect to *foreign-source* income effectively connected with a U.S. trade or business. This limit reflects the view of the United States that it has primary tax jurisdiction over U.S.-source income that is effectively connected with a U.S. trade or business. Section 906(b)(1), however, does *not* prevent a foreign person from obtaining a credit under Section 906(a) for foreign income taxes imposed on *foreign-source* income solely because the foreign person is a citizen or resident of the country or is a corporation organized under the laws of the country or domiciled for tax purposes in the country.[320]

A nonresident alien individual or foreign corporation *cannot* escape the limit in Section 906(b)(1) by electing to deduct (rather than credit) foreign

---

[318] Id.

[319] One commentator has taken the position that is unclear whether the numerator and denominator of this fraction are computed under U.S. tax law or under foreign law. See Owens, "Foreign Tax Credit Granted to Foreigners," 45 Taxes 463, 470 (1967).

[320] Rev. Rul. 76-190, 1976-1 CB 197 (foreign corporation organized under laws of country *M* allowed a credit under Section 906 for income taxes paid or accrued to country *M* on its *M*-source income that was effectively connected with U.S. trade or business). Congress apparently allowed a credit under Section 906 for foreign taxes imposed on the foreign person's country of residence or domicile on the foreign-source income because Congress viewed this credit as consistent with the purpose for enacting Section 864(c)(4) to treat foreign-source income as effectively connected income. That purpose was to prevent the United States from being used by foreign persons as a tax haven by manipulating the source rules to convert income having its economic locus in the United States into foreign-source income. To the extent a foreign person has to pay tax to some country on such foreign-source income, the United States is willing to forego its claim to tax the income. See ALI, Federal Income Tax Project: International Aspects of United States Income Taxation 132 (1987). Under the American Law Institute's proposal, "no credit [would be] given for taxes paid to the country of residence or domicile, except in the unusual case where that country taxes a U.S. branch of a domestic taxpayer in the same manner as a foreign taxpayer." Id.

taxes. Section 906(b)(1) precludes a foreign person from deducting any foreign taxes imposed by a foreign country on U.S.-source income that is taxed only because the foreign person is a citizen or resident of the foreign country or is a corporation incorporated under the laws of that country.[321]

*Section 904 limit.* The credit allowed by Section 906 is subject to the limit on the foreign tax credit imposed by Section 904.[322] In applying this limitation to the Section 906 credit, however, only taxable income that is effectively connected with a U.S. trade or business is taken into account.[323] It has been suggested that the tax to which the Section 904 limit fraction applies should be the U.S. tax on income effectively connected with the conduct of a U.S. trade or business.[324]

*Indirect credit under Section 902.* Section 906 allows a foreign corporation that is engaged in a U.S. trade or business a credit under Section 902 for taxes paid or accrued by a second foreign corporation in which the first corporation owns at least 10 percent of the voting stock and from which the first corporation receives dividends during the year.[325] Under Section 78, the foreign corporation also must "gross-up" the dividends received by the amount of the credit and include that grossed-up amount in gross income.[326] Section 906(b)(4) accomplishes this result by treating a foreign corporation as a domestic corporation "[f]or purposes of sections 902(a) and 78."

Only foreign taxes paid or accrued by the foreign subsidiary with respect to income effectively connected with the conduct of a trade or business should qualify for the Section 902 credit allowed by Section 906.[327] Further, the legislative history states that to qualify for the Section 902 credit via Section 906, the foreign corporation's dividends from the foreign subsidiary must be income effectively connected with the conduct of a U.S. trade or business.[328]

---

[321] See supra ¶ C1.04[8][b].

[322] Section 906(a) provides that the credit allowed by Section 906 is allowed under Section 901. Section 904 limits the total amount of foreign tax credits that a taxpayer may claim under Section 901. IRC § 901(a). Section 906(b)(2), which modifies the Section 904 limit for purposes of the credits allowed by Section 906, confirms that the Section 904 limit generally applies to foreign tax credits allowed by Section 906.

[323] IRC § 906(b)(2). Regarding the Section 904 limit generally, see ¶ B4.16.

[324] See Owens, "Foreign Tax Credit Granted to Foreigners," 45 Taxes 463, 472 (1967).

[325] IRC §§ 902(a), 906(a), 906(b)(4). Regarding Section 902, see generally ¶ B4.09.

[326] IRC §§ 78, 906(b)(4). Regarding Section 78, see generally ¶ B4.15.

[327] See IRC § 906(a); HR Rep. No. 1450, 89th Cong., 2d Sess. 106 (1966); S. Rep. No. 1707, 89th Cong., 2d Sess. 45 (1966); Owens, "Foreign Tax Credit Granted to Foreigners," 45 Taxes 463, 476 (1967).

[328] HR Rep. No. 1450, 89th Cong., 2d Sess. 106, 109 (1966).

Although Section 906(b)(4) refers to Section 902(a), rather than Section 902, the foreign corporation's Section 902 credit should apply to qualifying foreign taxes paid by its second-tier and third-tier foreign subsidiaries if the foreign corporation meets the stock percentage requirements of Section 902(b).[329] The 1966 House Report stated that in applying Section 902 to dividends paid by a third-tier subsidiary to a second-tier subsidiary and paid by a second-tier subsidiary to a first-tier subsidiary, "[i]t is not necessary to make any determination as to whether the dividends paid by such other foreign corporation are effectively connected with the conduct of a trade or business within the United States."[330]

In calculating the Section 902 credit, Section 906(b)(6) prevents a taxpayer from taking into account any foreign or U.S. possession income, war profits, and excess profits taxes paid or accrued by the foreign subsidiary (or deemed paid or accrued by the foreign subsidiary) with respect to income effectively connected with the conduct of a trade or business within the United States. Section 906(b)(6) also prevents the foreign corporation from taking into account any accumulated profits attributable to such income.[331] Congress enacted this provision to prevent taxpayers from obtaining a double tax benefit.

*Foreign taxes on certain income of a FSC.* Section 906 does *not* allow a credit for any income taxes paid or accrued with respect to the "foreign trade income" (as defined in Section 923(b)) of a FSC.[332] A FSC produces certain tax benefits and cannot claim foreign tax credits with respect to foreign trade income to increase those benefits.

*Nonresident alien individuals who are residents of certain U.S. possessions.* Section 906 does not apply to nonresident alien individuals who are bona fide residents of Puerto Rico or America Samoa for the entire taxable year and to whom Section 876 applies.[333] After the United States signs implementation agreements with Guam and the Northern Mariana Islands, Section 906 also will not apply to nonresident alien individuals who are bona fide residents of Guam and the Northern Mariana Islands for the entire taxable year.[334]

---

[329] HR Rep. No. 1450, 89th Cong., 2d Sess. 109 (1966); Owens, "Foreign Tax Credit Granted to Foreigners," 45 Taxes 463, 476 (1967). Regarding foreign tax credits for taxes paid by lower-tier subsidiaries, see generally, ¶ B4.09.

[330] HR Rep. No. 1450, 89th Cong., 2d Sess. 109 (1966).

[331] The reference in Section 906(b)(6) to "accumulated profits" is dated. Before amendment by the Tax Reform Act of 1986, Section 902(a) was based on the accumulated profits of a foreign subsidiary. See ¶ B4.09[3][g]. The current version of Section 902(a) works with the foreign subsidiary's "post-1986 undistributed earnings."

[332] IRC § 906(b)(5).

[333] See IRC §§ 876, 901(b)(4).

[334] Until those implementation agreements are signed, nonresident alien individuals

## [b] Miscellaneous

A foreign person may claim a credit for U.S. taxes withheld from wages.[335] A foreign person may also claim a credit for any U.S. taxes withheld under chapter 3 (which includes Sections 1441, 1442, 1445, and 1446).[336] In addition, a foreign person may claim a credit for taxes paid on certain fuels.[337] However, a nonresident alien individual may not take the Section 22 credit for the elderly and the permanently and totally disabled.[338]

## [11] Self-Employment Tax (Sections 1401 and 1402)

Sections 1401 and 1402 impose a tax on an individual's net income from a trade or business carried on by that individual. The self-employment tax in Section 1401 also applies to an individual's distributive share of income or loss from any trade or business carried on by a partnership of which that individual is a member.[339] However, Section 1402(b) provides that nonresident alien individuals generally do *not* have self-employment income (except as provided by an agreement under Section 233 of the Social Security Act).[340] Thus, nonresident alien individuals generally are *not* subject to the Section 1401 self-employment tax.[341] For self-employment tax purposes, a resident of Puerto Rico, the Virgin Islands, Guam, or American Samoa is *not* treated as a nonresident alien individual and, thus, may be subject to the tax.[342]

---

who are citizens of Guam or the Northern Mariana Islands generally are taxable for U.S. tax purposes as nonresident alien individuals. See ¶ D1.08. The Section 906 credit, therefore, applies to such individuals if they are engaged in a U.S. trade or business. See HR Rep. No. 1450, 89th Cong., 2d Sess. 106 (1966).

[335] IRC §§ 31(a), 874(a).

[336] IRC §§ 33, 874(a).

[337] IRC §§ 34, 874(a).

[338] IRC § 22(f).

[339] See IRC § 1402(a).

[340] See IRC § 1402(b); Treas. Reg. § 1.1402(b)-1(d). See also Rev. Rul. 62-200, 1962-2 CB 211 (nonresident alien missionaries who were not U.S. citizens but who were associated with a religious denomination that had its corporate headquarters in United States were held not subject to self-employment tax unless missionary was resident of Virgin Islands, Puerto Rico, Guam, or American Samoa).

[341] However, income received by a cash-method, resident alien individual taxpayer for trade or business activities performed while the taxpayer was a nonresident alien individual is includible in computing the taxpayer's net earnings from self-employment under Section 1402(a). See Rev. Rul. 79-390, 1979-2 CB 308 (royalties received by cash-method, resident alien author for books published while author was nonresident alien were held includible in net earnings from self-employment under Section 1402(a)).

[342] See IRC § 1402(b) (second to last sentence) and Treas. Reg. § 1.1402(b)-1(d) (last sentence), discussed at ¶ D1.12. See also Rev. Rul. 62-200, 1962-2 CB 211.