# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NORTEL NETWORKS, INC., *et al.*, | Case No. 09-10138-KG <br> (Jointly Administered) |
| Debtors. | **Re: D.I. 14178 and 14182** |

— and —

Court File No. 09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED.

**JOINDER OF LAW DEBENTURE TRUST COMPANY
OF NEW YORK, AS INDENTURE TRUSTEE FOR THE NNCC
NOTES, IN (1) THE POST-TRIAL BRIEF OF THE US INTERESTS AND
<u>(2) THE POST-TRIAL BRIEF OF THE *AD HOC* GROUP OF BONDHOLDERS</u>**

7227637

Law Debenture Trust Company of New York ("Law Debenture"), as indenture trustee for the NNCC Notes (defined below), by and through its attorneys, Patterson Belknap Webb & Tyler LLP, Morris James LLP, and Borden Ladner Gervais LLP, hereby submits this joinder ("Joinder") and statement in support of (1) the *Post-Trial Brief of the US Interests* ("US Interests' Post-Trial Brief")[1] (D.I. 14178) and (2) the *Post-Trial Brief of the Ad Hoc Group of Bondholders* (D.I. 14182) (together with the US Interests' Post-Trial Brief, "US Post-Trial Briefs"). Law Debenture joins in the US Post-Trial Briefs and, for the reasons set forth below, respectfully requests that the Courts enter the findings of fact and conclusions of law proposed by the US Interests.

## BACKGROUND

1. Pursuant to an indenture, dated February 15, 1996, by and among Nortel Networks Limited (f/k/a Northern Telecom Limited) ("NNL"), as issuer and guarantor, Nortel Networks Capital Corporation (f/k/a Northern Telecom Capital Corporation) ("NNCC"), as issuer, and The Bank of New York, as trustee, NNCC and NNL issued $150 million in aggregate principal amount of 7.875% Notes Due 2026 ("NNCC Notes"). NNCC and Nortel Networks Inc. (f/k/a Northern Telecom Inc.) are parties to a Support Agreement, dated February 15, 1996. Law Debenture is a "Core Party" as defined in the Allocation Protocol approved by the Courts on April 3, 2013 (D.I. 9947).

## JOINDER

2. The three principal debtor groups have advanced three different allocation methodologies. But only the US Interests' theory is supported by well-established valuation principles, applicable law, and the evidence that was presented at trial. The other two theories

---

[1] All capitalized terms used but not defined in this Joinder have the meanings given to such terms in the US Interests' Post-Trial Brief.

7227637

2

(one put forth by the Monitor and the Canadian Debtors and the other by the EMEA Debtors) have critical flaws that drastically understate the proper allocation to the US Debtors' estates. A fourth approach advanced by the UKPC and the CCC ("Global Sub Con Proponents") is not an allocation theory. Instead, this approach promotes a specious "pro rata distribution" model based on each estate's aggregate creditor claims, is unsupported by law, and fails to address the central question posed in this proceeding concerning allocation. Accordingly, Law Debenture files this Joinder in support of the fair market valuation approach advanced by the US Interests.

3. The allocation theory advanced by the Monitor (the "Canadian Allocation Theory") has many incorrect assumptions, as the US Interests' Post-Trial Brief explains. But two flawed assumptions, in particular, work in tandem and demonstrate how the Canadian Allocation Theory dramatically overstates the amount of sale proceeds that should be allocated to the Canadian estate. First, the Canadian Allocation Theory presumes that the MRDA granted rights of limited scope and value to the US Debtors and the other Licensed Participants. This is wrong. As explained in the US Interests' Post-Trial Brief, the scope of NNI's perpetual, royalty-free license was broad and was not limited to making, using or selling "Products" embodying "NN Technology," as asserted by the Monitor. The MRDA conferred many and valuable rights upon each of the Licensed Participants with respect to Nortel's intellectual property, including the right to sublicense, the right to exclude, and the rights to make, have made, use, lease, license, offer to sell, and sell. Based on the evidence presented at trial, the most valuable bundle of rights owned by any of the Nortel entities were those owned by the US Debtors. These were ultimately sold to Rockstar and gave rise to a substantial majority of the sale proceeds.

4. Second, the Canadian Allocation Theory assumes that NNL's bare legal title to Nortel's intellectual property had substantial residual value. This second assumption

7227637

3

artificially inflates the value of NNL's bare legal title precisely because of the first incorrect assumption – that the rights granted to the Licensed Participants under the MRDA are of limited scope and value. NNL's bare legal title to Nortel's intellectual property was encumbered at all relevant times by the broad and valuable rights granted to the Licensed Participants under the MRDA. This encumbrance significantly limited the value of the rights NNL enjoyed as the holder of legal title to Nortel's intellectual property.

5. The EMEA Debtors' "contribution" theory is based on the historical research and development contributions made by the three principal debtor groups. The Courts should reject this theory because it is inconsistent with economic reality: the fair market value of an asset – the price a willing buyer will pay for it – is based on the prospective value of that asset to the buyer, not the cost of developing that asset.

6. The Global Sub Con Proponents' "pro rata distribution" approach is not even an allocation theory. It is a baseless request that the Courts ignore the Nortel entities' corporate separateness and fashion an unprecedented, results-oriented remedy. It avoids the central question presented to these Courts concerning allocation and should be disregarded on this basis alone. Significantly, "pro rata distribution" finds no support in the law of any of the relevant jurisdictions or in international law. And, to the extent the Courts would even consider the concept of substantive consolidation (which they should not), the approach advocated by the Global Sub Con Proponents would fail because there is no evidentiary support for it. The Global Sub Con Proponents offered no competent evidence at trial that the Nortel entities' assets and liabilities were "hopelessly entangled."

7. For all of these reasons and the reasons set forth in the US Post-Trial Briefs, which Law Debenture joins and fully supports, Law Debenture respectfully requests that

the Courts approve the fair market valuation approach to allocation advanced by the US Interests and enter the findings of fact and conclusions of law proposed by the US Interests.

Dated:   August 7, 2014                                    **MORRIS JAMES LLP**

_____
Stephen M. Miller (DE Bar No. 2610)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: smiller@morrisjames.com

- and -

Daniel A. Lowenthal
Brian P. Guiney
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: (212) 336-2000
Facsimile: (212) 336-2222
Email:   dalowenthal@pbwt.com
             bguiney@pbwt.com

- and -

Edmond F.B. Lamek
BORDEN LADNER GERVAIS LLP
Scotia Plaza
40 King St W, Toronto, ON M5H 3Y4
Telephone: (416) 367-6311
Facsimile: (416) 361-2436
Email: elamek@blg.com

*Attorneys for Law Debenture Trust Company of New York, as Indenture Trustee*

7227637

5