## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re:* | ) Chapter 11 |
| | ) Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Objection Deadline:** September 19, 2014 at 4:00 pm (ET) |
| | ) **Hearing Date:** Scheduled only if necessary |
| | ) |

**FIFTH MONTHLY APPLICATION OF CASSELS BROCK & BLACKWELL LLP
CANADIAN COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM
ALLOWANCE OF COMPENSATION AND FOR
REIMBURSEMENT OF EXPENSES FOR SERVICES
RENDERED DURING THE PERIOD FROM
JULY 1 TO JULY 31, 2014
(All Amounts in Canadian Dollars)**

This is a(n): x monthly _____ interim _____ final application.

| | |
|---|---|
| Name of Applicant: | Cassels Brock & Blackwell LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | March 17, 2014, *Nunc Pro Tunc* to March 4, 2014 |
| Period for which Compensation And Reimbursement is sought: | July 1 to July 31, 2014 |
| Amount of Compensation sought as actual, reasonable and necessary: | CDN $373,135.00 Equivalent to USD $340,933.45[2] |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | CDN $1,229.24 Equivalent to USD $1,123.16[2] |

The total time expended during this Compensation Period for the preparation of Cassels Brock's Fourth Monthly Fee Application was 4.8 hours and the corresponding compensation is CDN. $3,816.00.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

[2] Reuters Exchange Rate on August 27, 2014 was CDN. $1.00 : U.S. $0.9137

## SUMMARY OF LAWYERS AND PARALEGALS
## RENDERING SERVICES DURING THE PERIOD
## JULY 1, 2014 THROUGH JULY 31, 2014
### (All Amounts in Canadian Dollars)

| Name | Title | Department | Province of Bar Admission/Year | Hours | Rate | Billed Value |
|------|-------|------------|-------------------------------|-------|------|--------------|
| Daniel Waldman | Associate | Advocacy | Ontario - 2010 | 14.3 | $420.00 | $6,006.00 |
| Geoffrey B. Shaw | Partner | Advocacy | Ontario - 1986 | 9.5 | $945.00 | $8,977.50 |
| Jane Dietrich | Partner | Financial Restructuring | Ontario - 2004 | 19.0 | $660.00 | $12,540.00 |
| Lauren Grossman | Student | Students | | 68.5 | $125.00 | $8,562.50 |
| Michael Mahoney | Student | Students | | 32.7 | $125.00 | $4,087.50 |
| Michael Wunder | Partner | Financial Restructuring | Ontario - 1990 | 132.7 | $795.00 | $105,496.50 |
| Monique Sassi | Associate | Financial Restructuring | Ontario - 2013 | 83.0 | $390.00 | $32,370.00 |
| Noah Leszcz | Student | Students | | 68.2 | $125.00 | $8,525.00 |
| Ryan Jacobs | Partner | Financial Restructuring | Ontario - 2011 | 131.0 | $750.00 | $98,250.00 |
| Shayne Kukulowicz | Partner | Financial Restructuring | Ontario - 1990 | 55.9 | $900.00 | $50,310.00 |
| Stefanie Holland | Associate | Advocacy | Ontario - 2010 | 90.5 | $420.00 | $38,010.00 |
| | | | | | | |
| TOTAL | | | | 705.3 | CDN. | $373,135.00 |

**COMPENSATION BY PROJECT CATEGORY**
**JULY 1, TO JULY 31, 2014**
**(All Amounts in Canadian Dollars)**

| Description | Hours | Fees |
|---|---|---|
| Cassels Brock Fee Application/Monthly Billing Reports | 5.8 | 4611.00 |
| Creditors Committee Meetings | 9.5 | 7119.00 |
| Court Hearings | 232.7 | 68291.00 |
| General Claims Analysis/Claims Objections | 226.5 | 151994.00 |
| Intercompany Analysis | 172.5 | 111331.50 |
| Canadian Proceedings/Matters | 58.3 | 29788.50 |
| | | |
| **TOTAL** | **705.3** | **$ 373,135.00** |

## DISBURSEMENT SUMMARY
## JULY 1 TO JULY 31, 2013
## (All Amounts in Canadian Dollars)

Non-Taxable Disbursements

| | | |
|---|---|---:|
| Copies | $ | 587.40 |
| Telephone / Long Distance/Conference Calls | $ | 2.04 |
| Binding Books / Documents | $ | 71.20 |
| Library Computer Searches | $ | 480.01 |
| Meals / Beverages | $ | 43.59 |
| Agency Fees and Disbursements | $ | 45.00 |
| | | |
| Total Non-Taxable Disbursements | $ | 1,229.24 CDN. |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------X
                                                   :

In re                                         : Chapter 11
                                                : Case No. 09-10138 (KG)
Nortel Networks Inc., et al., [1]          : Jointly Administered
                                                 :

                       Debtors     :__Objection Deadline:__ September 19, 2014 at 4:00 pm (ET)
                                                :__Hearing Date:__ Scheduled only if necessary
-----------------------------------------------------X

## FIFTH MONTHLY APPLICATION OF CASSELS BROCK & BLACKWELL LLP, CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JULY 1, 2014 THROUGH JULY 31, 2014

Cassels Brock & Blackwell LLP ("Cassels Brock" or the "Applicant"), Canadian counsel

to the Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc.

("NNI"), et al. (the "Debtors"), hereby submits its fifth monthly application (the "Application")

pursuant to (i) sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy

Code"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

(iii) Rule 2016-2 of the Local Rules of Bankruptcy Procedure for the District of Delaware (the

"Local Rules"), (iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R.

Bankr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation

and Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "Administrative Fee Order") and (v) the Order Appointing Fee

Examiner and Establishing Related Procedures for Compensation and Reimbursement of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. ("NN CALA") (4226).

Expenses for Professionals and Consideration of Fee Applications (the "Fee Examiner Order"

and, together with the Administrative Fee Order, the "Fee Orders"), for interim allowance of

compensation for services rendered in the aggregate amount of CDN. $373,135.00 and for

reimbursement of actual and necessary expenses incurred by Cassels Brock in connection

therewith in the amount of CDN. $1,229.24 for the period from July 1, 2014 through July 31,

2014 (the "Compensation Period"). In support of this Application, Cassels Brock respectfully

states as follows:

## I.    JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein

are sections 1103 and 330 of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.    BACKGROUND

2.      On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United

States Bankruptcy Court for the District of Delaware (the "Court"), except for NN CALA which

filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009.

3.      The Debtors are operating their businesses and managing their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On

January 15, 2009, the Court entered an order for the joint administration of these cases pursuant

to Bankruptcy Rule 1015(b) for procedural purposes only.

4.      On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks

Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian

affiliates (collectively, the "Canadian Debtors") commenced a proceeding (the "Canadian

Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Companies' Creditors Arrangement Act (Canada) ("CCAA"). The Canadian Debtors have sold the majority of their businesses and manage their properties under the supervision of the Canadian Court, and the Monitor (as that term is defined below).

5.      On January 14, 2009, the High Court of Justice in England (the "U.K. Court") placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors" and, together with the Debtors and the Canadian Debtors, the "Nortel Debtors"), including Nortel Networks U.K. Limited ("NNUK"), into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrators").

6.      On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee. The Committee currently consists of three members, as follows: (i) Law Debenture Trust Company of New York, as indenture trustee; (ii) Pension Benefit Guaranty Corporation; and (iii) The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed in these chapter 11 cases.

7.      On March 17, 2014, this Court entered an order authorizing the retention of Cassels Brock as Canadian counsel to the Committee, *nunc pro tunc* to March 4, 2014. On March 5, 2009, the Court previously authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker (the Committee and Jefferies mutually agreed to terminate Jefferies' role as investment banker to the Committee effective as of August 31, 2012), Capstone Advisory Group, LLC ("Capstone") as the Committee's financial

advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.     On May 30, 2014, Cassels Brock filed its First Interim Fee Application for the Period March 4, 2014 through April 30, 2014 (the "First Interim Application"). In its First Interim Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $512,610.00 and the reimbursement of expenses in the amount of CDN. $8,055.40. As of the filing of this Application, Cassels Brock has received payment of 80% of the fees and 100% of the expenses requested pursuant to the First Interim Fee Application.

9.     On August 15, 2014, Cassels Brock filed its Third Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period May 1, 2014 through May 31, 2014 (the "Third Monthly Application"). In its Third Monthly Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $976,432.50 and the reimbursement of expenses in the amount of CDN. $24,225.10. Cassels Brock has not received payment of the fees and the expenses requested in the Third Monthly Application.

10.     On August 25, 2014, Cassels Brock filed its Fourth Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period June 1, 2014 through June 30, 2014 (the "Fourth Monthly Application"). In its Fourth Monthly Application, Cassels Brock sought the award and allowance of fees in the amount of CDN. $565,192.50 and the reimbursement of expenses in the amount of CDN. $34,017.26. Cassels Brock has not received payment of the fees and the expenses requested in the Fourth Monthly Application.

### III.    RELIEF REQUESTED

11.    By this Application, Cassels Brock seeks (i) interim allowance and award of compensation for the professional services rendered by Cassels Brock during the Compensation Period in the amount of CDN. $373,135.00 representing 705.30 hours of professional services; and (ii) reimbursement of actual and necessary expenses incurred by Cassels Brock during the Compensation Period in connection with the rendition of such professional services in the amount of CDN. $1,229.24.

12.    Pursuant to the Fee Orders, Cassels Brock is seeking payment of 80% of its fees (CDN $298,508.00) and 100% of its expenses (CDN. $1,229.24) relating to services rendered during the Compensation Period.

13.    Cassels Brock has received no payment and no promises for payment from any source for services rendered in connection with these chapter 11 cases other than in accordance with the Fee Orders. There is no agreement or understanding between the Applicant and any other person (other than members of Cassels Brock) for the sharing of compensation to be received for the services rendered in these cases.

14.    As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

### IV.    SUMMARY OF SERVICES RENDERED

15.    Cassels Brock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to

issues on an expedited basis in furtherance of the Committee's needs have required the

expenditure of significant time by Cassels Brock personnel from several legal disciplines.

16.      In the ordinary course of its practice, Cassels Brock maintains written records of

the time expended by lawyers and paraprofessionals in the rendition of their professional

services.  In accordance with the provisions of the Fee Orders, a compilation showing the name

of the lawyer or paraprofessional, the date on which the services were performed, a description

of the services rendered, and the amount of time spent in performing the services for the

Committee during the Compensation Period is annexed hereto as Exhibit B.  Cassels Brock

believes that the compensation requested in the Application is based on the customary

compensation charged by comparably skilled professionals in cases other than cases under Title

11 of the United Stated Bankruptcy Code.

17.      In the ordinary course of its practice, Cassels Brock also maintains records of all

actual and necessary out-of-pocket expenses incurred in connection with the rendition of its

services, all of which are available for inspection.  A schedule of the categories of expenses and

amounts for which reimbursement is requested is annexed hereto as Exhibit C.  A detailed

summary of the expenses is attached hereto as Exhibit D.

18.      Cassels Brock respectfully submits that the professional services that it rendered

on behalf of the Committee were necessary and appropriate, and have directly and indirectly

contributed to the effective administration of these chapter 11 cases, including the Committee's

interest in the Canadian Proceeding.

19.      The following summary of services rendered during the Compensation Period is

not intended to be a detailed description of the work performed, as those day-to-day services and

the time expended in performing such services are fully set forth in Exhibit B.  Rather, it is

merely an attempt to highlight certain of those areas in which services were rendered to the

Committee, as well as to identify some of the problems and issues that Cassels Brock was required to address.

### Canadian Proceedings

(Fees: CDN. $29,788.50; Hours: 58.30)

20.     During the Compensation Period, Cassels Brock analyzed proposed orders in connection with various relief being sought in the Canadian Proceeding. Cassels Brock also reviewed and analyzed material filed with the Canadian Court by the Canadian Debtors and Ernst & Young Inc. in its capacity as the CCAA monitor of the Canadian Debtors (the "Monitor") in the Canadian Proceeding. In connection therewith, Cassels Brock, carefully analyzed the relief requested in proposed orders, participated on calls with Canadian counsel for the Monitor as well as other major stakeholders, to discuss the issues associated therewith. In connection with such analyses, Cassels Brock conducted diligence on the subject matter of each motion in order to determine the effect that the relief requested by the Canadian Debtors in the Canadian Proceeding would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of the Debtors' cases and the Canadian Proceeding. Cassels Brock, with the assistance of Akin Gump, ensured that the Committee had a complete understanding of the Canadian Proceeding and was apprised of all material developments in the Canadian Proceeding through regular updates and, as appropriate, detailed memoranda.

21.     During the Compensation Period, the Monitor filed reports with the Canadian court with updates on the progress of the Canadian Debtors' activities and/or the Monitor's recommendations with respect to relief requested by the Canadian Debtors. Cassels Brock reviewed each of these reports and discussed the reports with Akin Gump and the Committee's advisors, as well as the professionals for the Debtors.

22.    Cassels Brock attorneys spent time during the Compensation Period assessing Canadian issues relating to allocation of sale proceeds and distributions from the Canadian estate, and liaised with Akin Gump and Capstone in connection therewith.

### Cassels Brock Fee Application/Monthly Billing Rates
(Fees: CDN. $4,611.00; Hours: 5.80)

23.    This subject matter relates to time spent reviewing invoices and drafting monthly and interim fee statements as required under the Fee Orders, including paraprofessional and attorney time to ensure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses or these chapter 11 cases.

### Committee Meetings
(Fees: CDN. $7,119.00; Hours: 9.50)

24.    This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, and with the Committee's other legal and financial advisors. Cassels Brock, together with the other Committee professionals, participated in four meetings with the Committee during the Compensation Period.  In addition, during the Compensation Period, Cassels Brock had numerous telephonic conferences with Akin Gump and other Committee advisors.

25.    Prior to its meetings with the Committee, Cassels Brock reviewed each pending matter requiring the Committee's attention and underlying documentation in connection therewith, including in connection with the Canadian Proceeding.  Thereafter, Cassels Brock discussed each of these matters with Akin Gump and the Committee's other advisors and the Committee.  During these discussions, Cassels Brock assisted the Committee in formulating a position with respect to various pending matters.

26.     During the Compensation Period, Cassels Brock, together with Akin Gump, routinely held internal meetings with the professionals assigned to this matter to ensure that Cassels Brock was representing the Committee on Canadian issues in an efficient manner to minimize costs to these estates.  Cassels Brock also regularly consulted with Akin Gump and Capstone with respect to Canadian legal issues on documents and other information received from the Debtors and their representatives, and other sources.

27.     Through meetings, telephone conferences, and correspondence, Cassels Brock has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Canadian Proceeding, as same relate to the Debtors, to monitor the Debtors' involvement in the Canadian Proceeding, and to reach independent conclusions on the merits of specific matters.

### Court Hearings

(Fees: CDN. $68,291.00; Hours: 232.70)

28.     This subject matter relates to preparation for and attendance at hearings, trials and other proceedings before the Canadian Court during the Compensation Period including a hearing to determine the PPI Dispute (defined below) on July 25, 2014 (discussed below). Cassels Brock attorneys also appeared, either in person or telephonically, before the Canadian Court at the trial regarding claims against the Canadian Debtors by the UK pension parties and the hearing to approve the settlement of claims by the EMEA Debtors against the Canadian Debtors.  Cassels Brock attorneys actively represented the Committee and asserted the Committee's positions with respect to the matters being considered at the hearings and the allocation trial.  Additionally, Cassels Brock attorneys prepared for the Canadian Court hearings by reviewing all applicable motions and applications filed with the Canadian Court, including any responses thereto, and consulted with Akin Gump and the Committee's other professionals

and the Debtors' advisors to formulate appropriate strategies.  Cassels Brock's participation at

the Canadian Court hearings was necessary to protect the interests of unsecured creditors of the

Debtors.

### General Claims Analysis/Claims Objections

(Fees: $151,994.00; Hours: 226.50)

29.     This subject matter relates to time spent by Cassels Brock attorneys reviewing and

analyzing issues surrounding the claims that have been filed or asserted in the Debtors' chapter

11 cases and in the Canadian Debtors' Canadian Proceeding.  During the Compensation Period,

Cassels Brock attorneys spent time analyzing claims filed against the Nortel Debtors in the

Insolvency Proceedings, including claims against the Canadian Debtors.  Cassels Brock

attorneys also spent time researching and examining legal issues in connection with certain of the

claims filed against the Canadian Debtors including the PPI Dispute (defined below), and

consulted with Akin Gump and Capstone in connection therewith.

30.     Before the Compensation Period, this Court and the Canadian Court (sometimes

called the "Courts") determined to hear a dispute regarding the entitlement of unsecured

creditors, including certain cross-border bondholders, to, and the proper rate of, postpetition

interest (the "PPI Dispute").  Pursuant to a scheduling order issued by the Court, certain parties,

including the Committee, exchanged opening briefs and response briefs with respect to the PPI

Dispute on July 15, 2014 and July 22, 2014, respectively.  On July 24, 2014, the Debtors filed a

motion seeking approval of a settlement of the PPI Dispute in the U.S. Proceeding entered into

by the Debtors and certain bondholders (the "PPI Settlement").  A hearing on the PPI Settlement

was originally scheduled for September 15, 2014, but has been adjourned.  A hearing to

determine the PPI Dispute in the Canadian Proceeding took place on July 25, 2014.  The

Canadian Court issued an endorsement on August 19, 2014 holding that cross-border

bondholders are not legally entitled to claim against or receive any amounts from the Canadian

Debtors under the applicable bond indentures above and beyond the outstanding principal debt

and pre-petition interest.

### Intercompany Issues
(Fees: CDN. $111,331.50; Hours: 172.50)

31.    This subject matter relates to time spent by Cassels Brock attorneys reviewing and

analyzing certain intercompany issues arising among the various Nortel entities around the

world, and the impact of such issues on the Nortel Debtors' Insolvency Proceedings.  Cassels

Brock attorneys, along with the Committee's other professionals spent considerable time during

the Compensation Period analyzing and examining issues related to the allocation of sale

proceeds and discussing such issues with the Committee and the Committee's advisors, including

various methodologies for allocating value among the Nortel entities.

32.    Pursuant to written decisions and orders entered by the U.S. and Canadian Courts,

the allocation dispute was heard jointly by the Courts at the allocation trial which began on May

12, 2014.  The evidentiary portion of the allocation trial concluded on June 24, 2014.  In

accordance with the litigation timetable and discovery schedule negotiated by the various parties

and approved by the Courts, Cassels Brock attorneys spent time during the Compensation Period

working with the Committee's other professionals and the Debtors' professionals to review

deposition and trial testimony and research legal issues that emerged at trial to prepare post-trial

briefs, proposed findings of fact and proposed conclusions of law.  Initial post-trial briefs,

proposed findings of fact and proposed conclusions of law were served on August 7, 2014 (after

the Compensation Period).

## V.   ALLOWANCE OF COMPENSATION

33.     The professional services rendered by Cassels Brock required a high degree of

professional competence and expertise so that the numerous issues requiring evaluation and

determination by the Committee could be addressed with skill and dispatch and have, therefore,

required the expenditure of substantial time and effort. It is respectfully submitted that the

services rendered to the Committee were performed efficiently, effectively and economically,

and the results obtained to date have benefited not only the members of the Committee, but also

the unsecured creditor body as a whole and the Debtors' estates.

34.     The allowance of interim compensation for services rendered and reimbursement

of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every
> 120 days after an order for relief in a case under this title, or more often if the
> court permits, for such compensation for services rendered . . . as is provided
> under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application pursuant to

the Fee Orders.

35.     With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in

pertinent part, that the Court may award to a professional person "reasonable compensation for

actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn,

provides that:

> In determining the amount of reasonable compensation to be awarded . . . the
> court shall consider the nature, the extent, and the value of such services, taking
> into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3).  The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

36.    The total time spent by Cassels Brock lawyers during the Compensation Period was 892.30 hours.  The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

37.    As shown by this application and supporting documents, Cassels Brock spent its time economically and without unnecessary duplication of time.  Attached hereto as Exhibit E is a schedule of the hours expended by the lawyers and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.  In addition, Cassels Brock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of CDN. $1,229.24 for which Cassels Brock respectfully requests reimbursement in full.

38.    The disbursements and expenses have been incurred in accordance with Cassels Brock's normal practice of charging clients for expenses clearly related to and required by particular matters.  Cassels Brock has endeavored to minimize these expenses to the fullest

extent possible. Expenses for which reimbursement is sought include expenses incurred in prior months, but not previously billed. This is because expenses are billed in the month processed, which can slightly lag the time of incurrence.

39.     Cassels Brock's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," postage and certain other office services, since the needs of each client for such services differ. Cassels Brock believes that it is fairest to charge each client only for the services actually used in performing services for it. In these proceedings, Cassels Brock charges $.10 per page for internal duplicating.

40.     No agreement or understanding exists between Cassels Brock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

41.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**[The Remainder of Page Intentionally Left Blank]**

**WHEREFORE,** Cassels Brock respectfully requests that this Court:

(a)    approve the allowance of CDN. $373,135.00 for compensation for professional services rendered to the Committee during the period from July 1, 2014 through and including July 31, 2014;

(b)    approve the reimbursement of Cassels Brock's out-of-pocket expenses incurred in connection with the rendering of such services during the period July 1, 2014 through and including July 31, 2014 in the amount of CDN. $1,229.24; and

(c)    authorize and direct the Debtors to immediately pay to Cassels Brock the amount of CDN. $299,737.24 (USD $273,869.92[2]), which is equal to the sum of 80% of Cassels Brock's fees and 100% of Cassels Brock's expenses incurred during the Compensation Period.

Dated:    Toronto, Ontario
           August 28, 2014

CASSELS BROCK & BLACKWELL LLP

By: _____
    Michael J. Wunder (*pro hac vice*)
    A Member of the Firm

Suite 2100, Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2
(416) 869-5300
Canadian Counsel to the Official Committee of
Unsecured Creditors

---

[2] Reuters Exchange Rate on August 27, 2014 was CDN. $1.00 : U.S. $0.9137