**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ------------------------------------------------------------x | Chapter 11 |
| *In re* : | Case No. 09-10138 (KG) |
| : | (Jointly Administered) |
| **NORTEL NETWORKS, INC., et al.,**[1] : | |
| : | Related D.I.: 14076 |
| : | Hearing Date: |
| **Debtors.** : | September 15, 2014 at 10:00 am |
| : | Response Deadline: |
| ------------------------------------------------------------x | August 29, 2014 (extended by agreement) |

**STATEMENT OF SOLUS ALTERNATIVE ASSET MANAGEMENT LP AND MACQUARIE CAPITAL (USA) INC. WITH RESPECT TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 APPROVING SETTLEMENT AGREEMENT BY AND AMONG NORTEL NETWORKS INC., THE SUPPORTING BONDHOLDERS, AND THE BANK OF NEW YORK MELLON WITH RESPECT TO NNI POST-PETITION INTEREST DISPUTE AND RELATED ISSUES**

Solus Alternative Asset Management LP, on behalf of certain funds and managed accounts ("Solus"), and Macquarie Capital (USA) Inc. ("Macquarie), in their capacities as holders of certain fixed rate senior notes due June 15, 2026 (the "7.875% Notes")[2] issued by Nortel Networks Limited f/k/a Northern Telecom Limited ("NNL") and Nortel Networks Capital Corporation f/k/a Northern Telecom Capital Corporation ("NNCC"), and guaranteed by NNL, submit this statement with respect to the Debtors' Motion For Entry Of An Order Pursuant To Bankruptcy Rule 9019 Approving Settlement Agreement By And Among Nortel Networks Inc., The Supporting Bondholders, And The Bank Of New York Mellon With Respect To NNI Post-

---

[1] The Debtors in the above-captioned chapter 11 cases (the "Bankruptcy Cases"), along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769),Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortea Networks Cable Solutions Inc. (0567), and Nortel Networks (CALA) Inc. (4226).

[2] The 7.875% Notes were issued pursuant to that certain Indenture dated February 15, 1996 (the "Indenture"). As of the petition date, the amount owing under the Indenture included $150,000,000 in principal and $984,375 in interest. See Proof of Claim No. 3946 filed in Bankruptcy Cases, as amended January 10, 2013 (the "7.875% Notes Proof of Claim").

Petition Interest Dispute And Related Issues (Docket No. 14076) (the "9019 Motion"), which requests approval of the Agreement Settling The NNI Post-Petition Interest Dispute And Related Matters (the "NNI-PPI Settlement Agreement"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1. Solus and Macquarie do not object to the 9019 Motion. The proposed compromise falls within the range of reasonableness for holders of crossover bonds that were issued by NNL and/or NNC and that are guaranteed by NNI.[3] Solus and Macquarie hold nearly 90% of the 7.875% Notes issued by NNCC. The NNI-PPI Settlement Agreement does not cover the 7.875% Notes.[4] That exclusion is appropriate because the 7.875% Notes have unique contractual entitlements that demand bespoke treatment for their post-petition interest claims.

2. Specifically, NNCC has claims against NNI under both the Revolving Loan Agreement (among NNCC as Lender and NNI as Borrower) and the Support Agreement, which requires NNI to cause NNCC to have a net worth (determined in accordance with generally accepted accounting principles) at all times of $1.00. Under the Support Agreement, NNI must maintain NNCC's solvency and ensure NNCC's liabilities are capable of being fully satisfied. Those liabilities include NNCC's obligation to pay all post-petition interest to holders of the 7.875% Notes. The proposed settlement requires that NNI itself must be solvent in order for the Settling Bondholders to be paid post-petition interest. To that end, NNI must have sufficient assets to satisfy all of NNI's pre-petition claims—including NNCC's claims against NNI under the Revolving Loan and Support Agreements—before it can pay post-petition interest to the Settling Bondholders. For that reason alone, the claims for post-petition interest on the 7.875% Notes must be paid in full and without compromise.

---

[3] In point of fact, Solus and Macquarie hold certain of these notes. See Verified Statement Of Quinn Emanuel Urquhart & Sullivan LLP Pursuant To Bankruptcy Rule 9019, Docket No. 14030.

[4] See 9019 Mot. at 2 & n.2 (recognizing "[t]he fixed rate 7.875% senior notes issued by [NNCC] … and guaranteed by NNL in an aggregate principal amount of $150 million due 2026 pursuant to the Indenture dated as of February 15, 1996 are not subject to this settlement.").

3.     Lastly, the issue of post-petition interest remains unresolved with respect to the NNCC estate and its creditors. While it can be decided in connection with the Court's consideration of the 9019 Motion, it need not be. Instead, issues relating to the entitlement of NNCC's creditors to post-petition interest and NNCC's claims against NNI can be decided when NNCC submits its chapter 11 plan for confirmation. That may require independent representatives who act solely for the benefit of NNCC and its creditors—especially to the extent claims between NNI and NNCC are compromised in the formulation and confirmation of chapter 11 plans for NNI and NNCC. In any event, Solus and Macquarie reserve any and all rights, claims, and defenses with respect to their claims for post-petition interest, the Revolving Loan and the Support Agreement, and any inter-estate issues between NNCC and NNI.

## RELEVANT FACTUAL BACKGROUND

4.     NNCC issued the 7.875% Notes in the aggregate principal amount of $150 million (due 2026) pursuant to the Indenture dated as of February 15, 1996 (the "<u>7.875% Notes Indenture</u>"). NNL co-issued and guaranteed the 7.875% Notes. On September 28, 2009, Law Debenture timely filed the 7.875% Notes Proof of Claim preserving, among other things, the claim for "payment in full of all post-petition interest due and payable under the [1996] Indenture." Holders of the 7.875% Notes also have claims for damages arising from the breach of a no-call provision prohibiting repayment of the notes before their stated maturity date.

### A.     REVOLVING LOAN AGREEMENT

5.     NNCC acts as a financing company for its affiliates. NNCC distributed the proceeds from the 7.875% Notes to NNI. The Revolving Loan Agreement, dated as of June 15, 2008 (the "<u>Revolving Loan Agreement</u>")[5] among NNCC (as "Lender") and NNI (as "Borrower"), provides that "Lender desires to make periodic loan advances to the Borrower to support on-going working capital funding for general corporate purposes in exchange for an

---

5     A copy of the Revolving Loan Agreement is attached hereto as <u>Exhibit A</u>.

3

interest bearing obligation payable to the Lender at a future date." It also notes that as of June 15, 2008, NNI had fully drawn against the credit facility in the amount of $146,671,383.90. NNCC has a claim against NNI for amounts owing under the Revolving Loan Agreement (the "Revolving Loan Agreement Claim").

### B. SUPPORT AGREEMENT

6. In connection with the issuance of the 7.875% Notes, NNCC (then known as Northern Telecom Capital Corporation) entered into a Support Agreement, dated as of February 15, 1996 (the "Support Agreement"), with NNI (then known as Northern Telecom Inc. ("NTI")).

7. Through the Support Agreement, the parties intended to ensure that NNCC would remain solvent and at all times have the financial ability to satisfy its liabilities, particularly fixed-debt obligations like the 7.875% Notes. See Support Agreement at 1 (stating specifically that "NTI [NNI] and the Company [NNCC] desire to provide certain assurances with respect to performance of [NNCC's] obligations in connection with [NNCC's] offer of debt securities … under an Indenture dated as of February 16, 1996.").[6]

8. To that end, the Support Agreement requires that "[a]t all times prior to the termination of this Agreement, NTI [NNI] shall cause the Company [NNCC] to have and to maintain a net worth of at least $1.00."[7] The agreement makes clear that "'net worth' shall mean a sum equal to the Company's tangible net worth, as determined in accordance with generally accepted accounting principles." Id. Under the Support Agreement, NNCC has a claim against NNI for any amounts required to keep NNCC solvent (the "Support Agreement Claim"). See, e.g., In re Chateaugay, 944 F.2d 997, 1008 (2d Cir. 1991) (recognizing that where "specific performance obligation[s] may be satisfied by an alternative right to payment … the specific performance creditor has a 'claim' in bankruptcy."). The relationships among NNCC and NNI

---

6     A copy of the Support Agreement is attached hereto as Exhibit B.

7     Ex. B (Support Agreement) at 1 (§ 2) ("Maintenance Of Net Worth").

with respect to the 7.875% Notes, the Revolving Loan Agreement and the Support Agreement appear below.



C.      **NNI-PPI SETTLEMENT AGREEMENT**

9.      On June 30, 2014 the Scheduling Order Re Interest Issues (D.I. 13910) (the "Scheduling Order") directed parties to file submissions addressing whether holders of crossover bonds are entitled to claim additional amounts above and beyond the outstanding principal amount of their debt and pre-petition interest.  Solus and Macquarie joined in the Ad Hoc

Bondholders Opening Brief (as supplemented by Law Debenture Trust Company of New York, in its capacity as successor trustee for the 7.875% Notes ("Law Debenture")) and argued, among other things, that post-petition interest is payable on the 7.875% Notes in accordance with the specific terms bargained for in their contracts—not the federal judgment rate.[8]

10.   The NNI-PPI Settlement Agreement resolves disputes among NNI and the holders of crossover bonds issued by NNC and/or NNL and guaranteed by NNI (hereinafter, the "Settling Bondholders") to post-petition interest by capping their claims at an agreed-upon percentage of their respective contract rates.[9] Solus and Macquarie (in their capacities as holders of the 7.875% Notes) and Law Debenture are not parties to, or otherwise bound by the NNI-PPI Settlement Agreement.

11.   The NNI-PPI Settlement Agreement provides that NNI will only pay post-petition interest to the Settling Bondholders with respect to the NNI Guaranteed Notes "in the event that NNI at any time has more than sufficient funds to pay all of its allowed administrative, priority, secured, and general unsecured claims in full."[10]

---

[8]   See Opening Brief Of The Ad Hoc Group Of Bondholders, Law Debenture Trust Company Of New York, As Trustee, And The Bank Of New York Mellon, As Trustee With Respect To Monitor's Request That The Court Determine Bondholder Entitlement To Post-Petition Interest And Additional Bondholder Claims Issues Under U.S. Law, dated July 15, 2014 (Docket No. 14025) (the "Bondholder Pleading"); Joinder Of Solus Alternative Asset Management LP And Macquarie Capital (USA) Inc. In Bondholder Pleading, dated July 15, 2014 (Docket No. 14029); Supplemental Opening Brief Of Law Debenture Trust Company Of New York, dated July 15, 2014 (Docket No. 14028).

[9]   Specifically, the Settling Bondholders hold (a) senior notes issued by Nortel Networks Limited ("NNL"), guaranteed by Nortel Networks Corporation ("NNC") and NNI, including two series of fixed rate 10.75% senior notes in the aggregate principal amounts of $450 million and $675 million due 2016, a series of fixed rate 10.125% senior notes in the aggregate principal amount of $550 million due 2013, and a series of floating rate senior notes in the aggregate principal amount of the $1 billion due 2011 (the "2006 Indenture Notes"); and (b) 2.125% convertible senior notes due 2014 issued by NNC and guaranteed by NNI and NNL and 1.75% convertible senior notes due 2012 (the "2007 Notes," and, with the 2006 Notes, the "NNI Guaranteed Notes"). Solus and Macquarie hold one or more of the series of NNI Guaranteed Notes, and have no objection to the settlement in that capacity.

[10]  NNI-PPI Settlement Agreement at 4 (§ 2.1).

**RESPONSE**

A.  **NNI MUST HAVE SUFFICIENT ASSETS TO SATISFY REVOLVING LOAN AND SUPPORT AGREEMENT CLAIMS BEFORE IT CAN PAY SETTLING BONDHOLDERS POST-PETITION INTEREST**

12. On its face, the NNI-PPI Settlement Agreement does not appear to violate the absolute priority rule. That is because the agreement requires that NNI must be solvent and therefore capable of satisfying its pre-petition and administrative expense claims in full *before* it can pay post-petition interest to the Settling Bondholders. See NNI-PPI Settlement Agreement at 4 (§ 2.1). Absent that feature, the settlement agreement could not be approved. See, e.g., In re Iridium Operating LLC, 478 F.d 452, 464 (2d Cir. 2007) ("[W]hether a particular settlement's distribution scheme complies with the Code's priority scheme must be the most important factor for the bankruptcy court to consider when determining whether a settlement is 'fair and equitable' under Rule 9019."); In re Nutraquest, Inc., 434 F.3d 639, 644 (3d Cir. 2006) (noting "settlements must be fair and equitable.").

13. The Revolving Loan and Support Agreement Claims are among the pre-petition claims that NNI must pay in full, and NNI's obligations under the two agreements are related. Specifically, NNI's repayment to NNCC of the approximately $148 million outstanding on the Revolving Loan will not provide NNCC with sufficient funds to repay the 7.875% Notes in full—including post-petition interest. The Support Agreement requires NNI to fund the balance because it obligates NNI to provide NNCC with sufficient funds to satisfy all of its liabilities and maintain a net worth of $1.00. Those liabilities include claims for post-petition interest with respect to the 7.875% Notes because accrued interest is included in the net worth calculation. See, e.g., In re Dow Corning Corp., 270 B.R. 393, 400-01 (Bankr. E.D. Mich. 2001) (noting "[t]he rule against post-petition interest – a rule which § 502(b) embodies—has no ramifications outside of the bankruptcy context …. [W]hile it is true that, as against the estate, interest stops accruing at the date of the filing of the petition, post-petition interest can accrue against the debtor notwithstanding § 502(b)(2)."); In re Charles Pitt, 240 B.R. 908, 991 (N.D. Cal. 1999)

(noting "unassailable premise that a debt entitled by non-bankruptcy law to bear interest continues to accrue interest until such time as it is either paid or discharged in bankruptcy.").

14.     In addition to NNCC, holders of the 7.875% Notes can assert direct claims against NNI under the Support Agreement as third-party beneficiaries. The Support Agreement was entered on the same date as, and in contemplation of the 7.875% Notes Indenture and does not disclaim third-party beneficiary status. Moreover, the Support Agreement on its face evidences the intent to benefit holders of the 7.875% Notes by stating it "provide[s] assurances with respect to performance of the Company's obligations in connection with the Company's offer of debt securities … to be issued under the [7.875% Notes Indenture]." Ex. B (Support Agreement) at 1. See, e.g., Newman And Schwartz, 102 F.3d 660, 663 (2d Cir. 1996) ("A party need not necessarily be specifically mentioned in a contract to be considered a third party beneficiary …. New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement."). Regardless of whether claims under the Support Agreement are asserted by NNCC or by holders of the 7.875% Notes, NNI must have sufficient assets to pay them in full before it can pay post-petition interest to the Settling Bondholders.

        **B.     PPI ISSUE REMAINS UNDECIDED WITH RESPECT TO NNCC CREDITORS**

15.     With respect to the NNCC estate, and specifically holders of the 7.875% Notes, the questions presented in the Scheduling Order concerning entitlement to amounts above principal and accrued and unpaid pre-petition interest remain unresolved. For the reasons stated in their Joinder (and in the Bondholder Pleading) Solus and Macquarie submit they are entitled to interest payable in accordance with their contractual entitlements—not the federal judgment rate.[11]

---

11     See CSC Trust Co. v. Energy Future Intermediate Holdings Company LLC (In re Energy Future Holdings Corp., et al.), Adv. Proc. 14-50363 (CSS) (Bankr. D. Del. Aug. 5, 2014) (Docket No. 1751 in Case No. 14-10979 (CSS)) (the "EFH Opinion") at 2, 12 (examining whether discovery request for "information regarding a debtor's valuation and solvency" were relevant in make-whole dispute; citing approvingly Delaware District Court's Los Angeles Dodger's decision: "a contractual provision [is] not unenforceable merely because a debtor [is] in bankruptcy. As the

16.     That determination may be made in connection with the Court's consideration of either the 9019 Motion—or in connection with the confirmation of NNCC's chapter 11 plan (presumably when NNCC's solvency is more ascertainable).  Indeed, when deciding whether unsecured creditors are entitled to post-petition interest, courts consider the debtor's solvency.[12]  What is indisputable is that if NNI is solvent and able to pay even $1.00 of post-petition interest to the Settling Bondholders, then the NNCC estate will accordingly be solvent and in a position to pay 100% of the pre- and post-petition claims of all of its creditors.

---

case involved a solvent debtor, the equities strongly favor holding the debtor to his contractual obligations so long as those obligations are legally enforceable under applicable non-bankruptcy law.") (citations omitted).  Compare Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.), 456 F.3d 668, 679 (6th Cir. 2006) (finding plan that provided for post-petition interest at federal judgment rate was not fair and equitable: "absent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights."), and In re Terry Ltd. Partnership, 27 F.3d 241, 243 (7th Cir. 1994) ("Despite its equity pedigree, bankruptcy is a procedure for enforcing pre-bankruptcy entitlements under specified terms and conditions rather than a flight of redistributive fancy.  Creditors have a right to bargained for post-petition interest and bankruptcy judges are not empowered to dissolve rights in the name of equity."), with In re Cardelucci, 285 F. 3d 1231, 1234 (9th Cir. 2002) (finding phrase "legal rate" in section 726(a)(5) means federal judgment rate -- not rate determined by parties' contract or state law), and In re Washington Mut., 461 B.R. 200, 242 (Bankr. D. Del. 2011) (limiting post-petition interest to federal judgment rate), vacated in part on other grounds, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012).

[12]   See EFH Opinion at 13 ("While solvent debtor cases are somewhat of a rarity, the available precedent consistently defers to previously contracted bargains and provisions when dealing with solvent debtors in varying situations.") (citations omitted).  See also In re Dow Corning Corp., 456 F.3d at 679 (accepting argument that "to interpret the amended plan as not requiring the payment of default interest … would violate § 1129(b)'s fair and equitable standard."); In re Armstrong World Indus., Inc., 432 F.3d 507, 512 (3d Cir. 2005) (noting absolute priority rule is "codified as part of the fair and equitable requirement of 11 U.S.C. § 1129(b)."); Cardelucci, 285 F.3d at 1234 ("Where a debtor in bankruptcy is solvent, an unsecured creditor is entitled to interest at the legal rate from the date of the filing of the petition."); Debenture Holders Prot. Comm. v. Continental Inv. Corp., 679 F.2d 264, 269 (1st Cir. 1982) (examining whether Bankruptcy Act plan was fair and equitable: "[w]here the debtor is *solvent*, the bankruptcy rule is that where there is a *contractual* provision valid under state law, providing for interest on unpaid installments of interest, the bankruptcy court will enforce the contractual provision with respect to both installments due before and installments due after the petition was filed."); In re W.R. Grace & Co., 475 B.R. 34, 202 & n. 191 (D. Del. 2012) (finding Dow Corning distinguishable because "debtor's solvency … was undisputed, whereas here, Grace's insolvency remains unknown.").

9

17. Lastly, NNCC and NNI may need the time until confirmation to develop the appropriate procedures required to resolve their inter-estate issues. Specifically, resolution of the claims between NNI (the debtor) and NNCC (the creditor) and the claims asserted by holders of the 7.875% Notes may require an independent representative who acts exclusively for the benefit of NNCC and its creditors. See, e.g., Weinberger v. UOP, Inc., 457 A.2d 701, 710-11 (Del. 1983) (noting "individuals who act in a dual capacity as directors of two corporations, one of whom is parent and the other subsidiary, owe the same duty of good management to both corporations, and in the absence of an independent negotiating structure, or the directors' total abstention from any participation in the matter, this duty is to be exercised in light of what is best for both companies.").

Dated: Wilmington, Delaware
August 29, 2014

Respectfully submitted,

**PINCKNEY, WEIDINGER, URBAN & JOYCE LLC**

    /s/ Kevin M. Capuzzi
Kevin M. Capuzzi (DE No. 5462)
1220 N. Market Street, Suite 950
Wilmington, DE 19801
Telephone: (302) 504-1497
Facsimile: (302) 655-5213
Email: kcapuzzi@pwujlaw.com

-and-

Susheel Kirpalani (admitted *pro hac vice*)
James C. Tecce (admitted *pro hac vice*)
Daniel Holzman (admitted *pro hac vice*)
**QUINN, EMANUEL, URQUHART & SULLIVAN LLP**
52 Madison Avenue, 22nd Floor
New York, New York 10010

*Co-Counsel to Solus Alternative Asset Management LP and Macquarie Capital (USA) Inc.*

.