# EXHIBIT A

## REVOLVING LOAN AGREEMENT

THIS REVOLVING LOAN AGREEMENT (the "**Agreement**") is entered as of this 15th day of June 2008 ("**Effective Date**"), by and between NORTEL NETWORKS CAPITAL CORPORATION, a Delaware corporation with its registered office at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, USA 19801 (the "**Lender**") and NORTEL NETWORKS INC., a Delaware corporation with its registered office at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, USA 19801 (the "**Borrower**").

WHEREAS, the Lender desires to make periodic loan advances to the Borrower to support on-going working capital funding for general corporate purposes in exchange for an interest bearing obligation payable to the Lender at a future date.

AND WHEREAS, the Borrower had previously delivered a Promissory Note dated 23rd July 1996 (the "**1996 Promissory Note**") to the Lender to evidence its borrowing of a loan from Lender with a current outstanding principal balance of USD 296,671,383.90

AND WHEREAS, effective as of February 14, 2006, the Lender returned the 1996 Promissory Note to the Borrower and the Borrower and the Lender entered into a Revolving Loan Agreement evidencing the rights and obligations of the Borrower and the Lender relating to the loan in the principal amount of USD 296,671,383.90 previously evidenced and governed by the 1996 Promissory Note (the "**February 2006 Agreement**"), which superseded and replaced the 1996 Promissory Note for all purposes with respect to actions occurring either before or after the effective date thereof, including without limitation, evidencing the principal amount thereof.

AND WHEREAS, the Lender and Borrower had then entered into a Revolving Loan Agreement dated 15th June 2006 (the "**June 2006 Agreement**") with respect to a credit facility of USD 146,671,383.90, of which USD 146,671,383.90 was drawn as at 15th June 2008.

AND WHEREAS, the June 2006 Agreement matures on June 15, 2008 by its terms.

AND WHEREAS, it is the intention of the Lender and Borrower that, as of the Effective Date, this Agreement shall replace the June 2006 Agreement.

NOW THEREFORE, in consideration of the obligations described herein, the Lender and the Borrower agree as follows:

## ARTICLE 1 - DEFINITIONS

**Section 1.1    Defined Terms.** As used in this Agreement, the following terms have the following meanings:

"**Advance**" means any amount advanced by the Lender to the Borrower pursuant to Section 2.2;

"**Agreement**" means this revolving loan agreement between the parties hereto, including the Funding Report referred to herein and attached hereto, as the same may be amended or supplemented in writing from time to time;

"**Banking Day**" means any day (other than a Saturday or Sunday) on which the banks are open for business in the United States of America and Canada.

"**Effective Date**" has the meaning set forth for such term in the first paragraph of this Agreement;

"**Funding Report**" means the schedule substantially in the form attached as Exhibit A hereto reflecting all Advances made under this Agreement, and for each such Advance, its respective Interest Rate, Interest Payment Dates and related calculations, and whether interest shall be compounded for such Advance;

"**Interest Payment Dates**" means each June 15 and December 15 during the term of this Agreement;

"**Interest Rate**" means 7.875%;

"**Maximum Facility Amount**" means USD 146,671,383.90 (One hundred and forty-six million, six hundred and seventy-one thousand, three hundred and eighty-three and ninety one hundredths United States Dollars); and

"**Term**" has the meaning set forth for such term in Section 2.4 hereof.

## ARTICLE 2 – THE FACILITY, REPORTS, TERM, COVENANT

**Section 2.1    The Maximum Facility Amount:** The Lender agrees to make Advances to the Borrower during the Term from time to time in accordance with this Agreement. The outstanding principal amount of all Advances may not exceed the Maximum Facility Amount.

**Section 2.2    Advances:** The Lender shall make the Advances available to the Borrower on any Banking Day upon the Lender's receipt of a written request from the Borrower specifying the amount and date of a particular Advance, together with the bank account details. On the Effective Date, the Lender shall be deemed to have made an

Advance to the Borrower in an amount equal to the principal balance outstanding under the June 2006 Agreement and the accrued but unpaid interest thereon.

**Section 2.3** **Funding Report:** The Funding Report shall be prepared on any Banking Day and updated by the Lender within five (5) days following any changes in the amount under any Advance. A copy of the Funding Report shall be provided to the Borrower upon request. Each of the Borrower and the Lender hereby acknowledge, confirm and agree that all amounts set out in each Funding Report shall be considered true and correct, and shall be accepted by the Borrower and Lender and become a part of this Agreement, absent manifest error. However, the failure to prepare such Funding Report shall not affect the liability of the Borrower to the Lender in respect of the relevant indebtedness.

**Section 2.4** **Term:** This Agreement shall continue in full force and effect from the Effective Date until the earlier of (the "Term"):

(a) June 15, 2010;

(b) The effective date of any notice delivered by either party to this Agreement to the other declaring a termination of this Agreement for any reason whatsoever, which effective date shall be no earlier than five (5) days following the other party's receipt of such notice;

(c) Automatic termination without notice upon the occurrence of any of the following events:

(i) The Borrower shall fail to pay any principal due with respect to any Advance made hereunder, or any interest payable hereunder, within five (5) business days of the due date thereof (unless such failure is cured, and this provision waived by the Lender);

(ii) The Borrower generally does not pay its debts as they become due or shall admit in writing its inability to pay its debts generally or makes a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against the Borrower in any such case, seeking to adjudicate it bankrupt or insolvent, or seeking liquidation, winding up, reorganisation, arrangement, adjustment, protection, relief or composition of it or its debts under any law relating to bankruptcy, insolvency or reorganisation or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, custodian or other similar official for it or any substantial part of its property, and such proceeding shall remain undismissed or unvacated for a period of thirty (30) days, or any of the actions sought in any such proceeding shall be granted;

(iii) The Borrower shall take any corporate action to authorise any of the actions set forth in clause (ii) above in this Section 2.4(c); or

   (iv) The Borrower shall fail to observe the covenant set forth at Section 2.5 hereof.

**Section 2.5 Covenant--Material Adverse Change:** During the period in which any Advances are outstanding, the Borrower shall notify the Lender of any material adverse change in the business, financial position or results of operations of the Borrower, within ten (10) business days after any director or officer of the Borrower obtains actual knowledge of such material adverse change. Notwithstanding the foregoing, nothing contained in this Agreement shall prevent the Borrower, from amalgamating, merging or consolidating with or into any related party, affiliate or subsidiary.

## ARTICLE 3 - INTEREST

**Section 3.1 Interest on Advances:** The Borrower shall pay interest on the unpaid principal amount of each Advance from the date of the Advance until the principal amount of the Advance is repaid in full at the end of its respective Interest Payment Date, at the Interest Rate applicable to each Advance. Interest on each Advance shall be calculated and payable at the end of each Interest Payment Date based on a 360 day year and the actual number of days elapsed. If interest on an Advance is not paid on the Interest Payment Date, then, at the request of the Borrower and at the sole and absolute discretion of the Lender, such interest may be capitalized and added to the outstanding principal amount of such Advance as of such date. Such capitalization of interest, if any, shall be reflected in the related Funding Reports. The Lender shall provide notice to the Borrower of such capitalization of interest, through delivery of the Funding Report(s) or otherwise. All accrued interest that remains unpaid at the end of the applicable Interest Payment Date and has not been capitalized shall be paid in full when the outstanding principal amount of all Advances is repaid in full.

**Section 3.2 Maximum Rate:** No interest rate specified in this Agreement shall at any time exceed the maximum rate permitted by applicable law (the "**Maximum Rate**"). Notwithstanding anything to the contrary contained in this Agreement, none of the terms and provisions of this Agreement shall ever be construed to create a contract or obligation to pay interest at a rate in excess of the Maximum Rate; and the Lender shall not ever charge, receive, take, collect, reserve or apply, as interest on the obligations evidenced by this Agreement (the "**Obligations**"), any amount in excess of the Maximum Rate. The parties hereto agree that any interest, charge, fee, expense or other obligation provided for in this Agreement which constitutes interest under applicable law shall be, ipso facto and under any and all circumstances, limited or reduced to an amount equal to the lesser of (i) the amount of such interest, charge, fee, expense or other obligation that would be payable in the absence of this Section 3.2 or (ii) an amount, which when added to all other interest payable under this Agreement, equals the maximum amount of interest that would be payable if calculated at the Maximum Rate. If, notwithstanding the foregoing, the Lender ever contracts for, charges, receives, takes, collects, reserves or applies as interest any amount in excess of the amount permitted at the Maximum Rate, such amount which would be deemed excessive interest shall be deemed a partial payment or

prepayment of principal of the Obligations and treated hereunder as such; and if the Obligations, or applicable portions thereof, are paid in full, any remaining excess shall promptly be paid to the Borrower. In determining whether the interest paid or payable, under any specific contingency, exceeds the Maximum Rate, the Borrower and the Lender shall, to the maximum extent permitted by applicable law, (i) characterize any nonprincipal payment as an expense, fee or premium rather than as interest, (ii) exclude voluntary prepayments and the effects thereof, and (iii) amortize, prorate, allocate and spread in equal or unequal parts the total amount of interest throughout the entire contemplated term of the Obligations, or applicable portions thereof, so that the interest rate does not exceed the Maximum Rate at any time during the term of the Obligations; <u>provided that</u>, if the unpaid principal balance is paid and performed in full prior to the end of the full contemplated term thereof, and if the interest received for the actual period of existence thereof exceeds the Maximum Rate, the Lender shall refund to the Borrower the amount of such excess and, in such event, the Lender shall not be subject to any penalties provided by any laws for contracting for, charging, receiving, taking, collecting, reserving or applying interest in excess of the Maximum Rate.

## ARTICLE 4 - REPAYMENT

**Section 4.1    Repayment:**  The principal and interest outstanding in respect of all Advances, as documented in the Funding Report, is due and payable by the Borrower to the Lender on the earlier of the last day of the relevant Interest Payment Date or the last day of the Term.

**Section 4.2    Prepayment:**  The Borrower may, in its sole and absolute discretion, from time to time without notice, bonus or penalty, make prepayments in any amounts desired, on account of the principal and interest outstanding on any Advance. If more than one Advance is outstanding at the time the Borrower elects to make a prepayment, the Borrower shall be entitled to specify the Advance to which the prepayment will apply. All prepayments will be applied first on account of interest and then on account of principal due hereunder for the Advance to which the prepayment applies. In the sole discretion of the Lender, amounts prepaid hereunder may be re-borrowed during the Term, so long as the total amount of Advances borrowed and not yet pre-paid does not at any time exceed the Maximum Facility Amount.

**Section 4.3    Repayment upon Early Termination:**  Upon the early termination of this Agreement pursuant to Section 2.4(b) or Section 2.4(c) hereof, a final Funding Report shall be prepared which shall indicate the Advances outstanding and the amount of interest attributable to such Advances. The Borrower shall repay the total amount due in a manner and by a date agreed to by the parties but not later than the last day of the Term.

## ARTICLE 5  REPRESENTATIONS AND WARRANTIES

**Section 5.1    Representations of the Borrower:**  The Borrower represents and warrants to the Lender on the date hereof and on each date of an Advance that:

    (a)    the Borrower is a corporation duly incorporated and validly existing under the laws of the State of Delaware;

    (b)    the execution, delivery and performance by the Borrower of this Agreement (i) are within its corporate powers, has been duly authorized by all necessary corporate action, (ii) requires no action by or in respect of or filing with, any governmental body, agency or official and (iii) do not contravene any provision of applicable law or its certificate of incorporation or by-laws or any contractual restriction, order, decree or other instrument binding upon the Borrower, except, in the case of (ii) and (iii) above, any such action, filing or contravention which would not have a material adverse effect on the Borrower;

    (c)    as of the date hereof and the date of each Advance, the Borrower has not ceased paying its current obligations in the ordinary course of business as they generally become due.

**Section 5.2    Representations of the Lender:** The Lender represents and warrants to the Borrower on the date hereof and on each date of an Advance that:

    (a)    the Lender is a corporation duly formed and validly existing under the laws of the State of Delaware; and

    (b)    the execution, delivery and performance by the Lender of this Agreement (i) are within its corporate powers, has been duly authorized by all necessary corporate action, (ii) requires no action by or in respect of or filing with, any governmental body, agency or official and (iii) do not contravene any provision of applicable law or its certificate of incorporation or by-laws or any contractual restriction, order, decree or other instrument binding upon the Lender, except, in the case of (ii) and (iii) above, any such action, filing or contravention which would not have a material adverse effect on the Lender.

### ARTICLE 6 - GENERAL PROVISIONS

**Section 6.1    Amendments to this Agreement:** This Agreement may be amended only by written agreement signed by both parties.

**Section 6.2** **Waiver:** The Lender may waive in writing any breach by the Borrower of any of the provisions contained in this Agreement or any default by the Borrower in the observance or performance of any covenant or condition required to be observed or performed by the Borrower under this Agreement; provided that no act or omission by the Lender with regard to any such breach or default by the Borrower will be taken in any manner whatsoever to affect any subsequent breach or default or the rights resulting therefrom.

**Section 6.3** **Notices:** Any request, notice or demand made or given in connection with this Agreement must be in writing and delivered to the relevant party at its address or facsimile number set forth below, or any other address or facsimile number that a party may direct:

| | |
|---|---|
| if to the Borrower: | Nortel Networks Inc., 220 Athens Way, Suite 300, MS 438/03/01, Nashville, Tennessee USA 37228 Attention: Legal Department |
| With copy to: | European Treasury Department Facsimile number: +44 1628 432884 |
| if to the Lender: | Nortel Networks Capital Corporation, 220 Athens Way, Suite 300, MS 438/03/01, Nashville, Tennessee USA 37228 Attention: Legal Department |
| With copy to: | European Treasury Department Facsimile number: +44 1628 432884 |

**Section 6.4** **Assignment of Agreement:** All of the covenants, stipulations, promises and agreements in this Agreement shall bind the parties' respective successors and permitted assigns, whether so expressed or not; <u>provided, however,</u> that neither party may, without the prior written consent of the other, assign any rights, powers, duties, or obligations under this Agreement.

**Section 6.5** **Headings:** The headings of this Agreement are included for convenience of reference only and do not constitute a part of this Agreement for any other purpose.

**Section 6.6   Governing Law:**  This Agreement and all other documents and instruments referred to will be construed in accordance with and governed by the internal laws of the State of New York.

**Section 6.7   Severability:**  If any term or provision of this Agreement shall be determined to be invalid or unenforceable in any situation in any jurisdiction, such invalidity or unenforceability shall not affect the validity or enforceability of the remaining terms and provisions hereof.

IN WITNESS WHEREOF, the parties hereto have caused this Revolving Loan Agreement to be executed by their duly authorized persons as of the Effective Date.

**NORTEL NETWORKS CAPITAL CORPORATION**

By: _____
Name: _____Lynn C. Egan_____
Title: _____Secretary_____
Date: _____

**NORTEL NETWORKS INC.**

By: _____
Name: _____Lynn C. Egan_____
Title: _____Assistant Secretary_____
Date: _____