**TAB 1**

# UNITED STATES DISTRICT COURT

for the

Eastern District of Texas

| | |
|---|---|
| CONSTELLATION TECHNOLOGIES LLC | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:13-CV-1079-RSP |
| TIME WARNER CABLE INC., et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:         Nortel Networks, Inc.
c/o CT CORPORATION SYSTEM, 150 FAYETTEVILLE ST., BOX 1011, RALEIGH NC 27601

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Documents and electronically stored information described in the attached Exhibit.

| Place: Regus - Meridian Pkwy, 2530 Meridian Parkway, Durham, North Carolina, 27713 | Date and Time: 06/20/2014 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _9 JUN 2014_

*CLERK OF COURT*

OR

_____            _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's Signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Time Warner Cable, Inc.. _____ , who issues or requests this subpoena, are:

Jonas R. McDavit, Desmarais LLP, 230 Park Ave., New York, NY 10169 (212) 351-3400
jmcdavit@desmaraisllp.com

**Notice to the person who issues or requests this subpoena**

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 2:13-CV-1079-RSP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____           _____
                                        *Server's signature*

                                _____
                                        *Printed name and title*

                                _____
                                        *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Subpoena Exhibit

1. Documents relating to any Assets sold by Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc., NN Applications Management Solutions Inc., Nortel Altsystems, Inc., CoreTek, Inc, Qtera Corporation, Xros, Inc., Nortel Networks UK Limited, Nortel Networks France S.A.S., Nortel GmbH, Nortel Networks (Ireland) Limited and/or Nortel Networks S.A. (collectively, "Nortel") to Rockstar Bidco ("Rockstar") pursuant to that certain June 30, 2011 Asset Sale Agreement (*In re Nortel Networks, et al.*, Case No. 09-10138-KG, Dkt. No. 5935, Ex. A (Bankr. D. Del.)) by and between Nortel and Rockstar (the "Asset Sale Agreement"), including the "Patent Related Documentation" as defined in that agreement.

2. The "Sellers Disclosure Schedule" defined in and referenced in section 10.8 of the Asset Sale Agreement and purportedly delivered by Nortel to Rockstar.

3. All Exhibits and Annexes to the Asset Sale Agreement attached to and that "constitute part of" and "incorporated into" the Asset Sale Agreement per section 10.8 of the Asset Sale Agreement.

4. Documents sufficient to describe the contents of the "Data Room" defined in the Asset Sale Agreement.

5. Documents sufficient to identify and describe the "Ericsson Licenses" defined in the Asset Sale Agreement.

6. Documents sufficient to identify the "Excluded Patents" defined in the Asset Sale Agreement.

7. The "Master R&D Agreement" (and all addenda thereto) defined in the Asset Sale Agreement.

8. The "Master R&D Agreement" (and all addenda thereto) referenced in the May 11, 2014 briefing of the US Interests in *In re Nortel Networks, et al.*, Case No. 09-10138-KG, Dkt. No. 13551 (Bankr. D. Del.)

9. The "Exclusive Licenses" referenced in the May 11, 2014 briefing of the US Interests in *In re Nortel Networks, et al.*, Case No. 09-10138-KG, Dkt. No. 13551 (Bankr. D. Del.)

10. All documents reflecting "Permitted Encumbrances" on the transferred assets as defined in the Asset Sale Agreement, including any "promises, declarations, and commitments granted made or committed in writing by the Sellers [Nortel] to standard setting bodies or industry groups concerning the Transferred Patents, Purchased Specified UK Patents, or Undisclosed Patent Interests" and including ""the commitments concerning the Transferred Patents, Purchased Specified UK Patents, or Undisclosed Patent Interests granted in writing by [Nortel] pursuant to the membership agreements, by-laws, or policies of standard setting bodies..." as defined in the Asset Sale Agreement.

11. Documents reflecting the Permitted Encumbrances identified in the Sellers Disclosure Schedule.

12. Documents sufficient to identify all "Commercial Licenses" and "End-User Licenses" related to the patents transferred from Nortel to Rockstar.

13. Documents sufficient to identify all records made available by Nortel to Rockstar during the bidding for the patents transferred by the Asset Sale Agreement.

14. Documents sufficient to identify all records made available by Nortel to Rockstar after bidding but prior to closing the Asset Sale Agreement.

15. The "Employee Transfer Side Agreement" referenced and defined in the Asset Sale Agreement.

16. Documents sufficient to identify all "Transferring Employees" as defined in the Asset Sale Agreement.

17. Personnel records of any Transferring Employees.

18. The "Commitment Letters" delivered by Rockstar to Nortel referenced in section 3.3 of the Asset Sale Agreement.

19. Documents sufficient to identify any "Certain Obligations" made by Rockstar to Nortel pursuant to section 5.20 of the Asset Sale Agreement.

20. Documents sufficient to identify the "Books and Records" related to the Assets transferred by the Asset Sale Agreement pursuant to section 5.24 of the Asset Sale Agreement.

21. Any "Books and Records" related to U.S. Patent Nos. 6,128,649; 6,845,389; 6,901,048; 7,154,879; 8,134,917; and 8,464,299 (the "Patents-in-Suit").

22. Claim charts related to the Patents-in-Suit or patents sharing a common patent application to the Patents-in-Suit, including charts mapping the Patents-in-Suit or patents sharing a common patent application to the Patents-in-Suit to alleged infringing technology or industry standard or against prior art.

23. Valuation of the Patents-in-Suit, or any group of patents that include the Patents-in-Suit.

24. Prior art to the Patents-in-Suit, or any group of patents that include the Patents-in-Suit.

25. Documents sufficient to identify any "Books and Records" destroyed by Nortel pursuant to section 5.24 of the Asset Sale Agreement.

26. The "Optioned Licenses" entered into with Rockstar or one or more of Rockstar's limited partners under section 5.27 of the Asset Sale Agreement.

27. The "Side Agreement" referenced in paragraph 57 of Dkt. No. 5202 in *In re Nortel Networks, et al.*, Case No. 09-10138-KG (Bankr. D. Del.).

28. The documents referenced in paragraph 102 of Dkt. No. 5202 in *In re Nortel Networks, et al.*, Case No. 09-10138-KG (Bankr. D. Del.).

29. All documents relating to the Patents-in-Suit, including:

    (a) all provisional patent applications, patent applications and patents set forth in Section 1.1(h) of the disclosure schedule (the "Sellers' Disclosure Schedule") delivered by the Nortel Sellers (the "Sellers' Listed Patents");

    (b) national (of any country of origin) and multinational patents or patent applications (i) to which any of the Sellers' Listed Patents claims priority (directly or indirectly), (ii) for which any of the Sellers' Listed Patents forms a basis for priority (directly or indirectly), and/or (iii) which are subject to a terminal disclaimer with any of the Sellers' Listed Patents;

    (c) reissues, reexaminations, continuations, continuations in part, continuing prosecution applications, requests for continuing examinations, divisions, registrations or other extensions of any item in the foregoing categories 1(a) and 1(b);

    (d) national (of any country of origin) and multinational counterparts of any item in any of the foregoing categories 1(a) through 1(c), including certificates of invention, design registrations and utility models;

    (e) all rights provided by multinational treaties or conventions for any item in any of the foregoing categories 1(a) through 1(d); and

    (f) the inventions disclosed in Section 1.1(k) of the Sellers' Disclosure Schedule (the "Listed Inventions") .

30. Documents relating to the Excluded Patents (as defined in section 5.19 the Asset Sale Agreement), including all provisional patent applications, patent applications and patents set forth in the Sellers' Disclosure Schedule (the "Excluded Patents").

31. Documents sufficient to identify any Undisclosed Patent Interest (as defined in the Asset Sale Agreement), including:

    (a) Patents owned by the Nortel Sellers that are not Transferred Patents, Jointly Owned Patents, Specified UK Patents or Excluded Patents;

    (b) Inventions, other that the Listed Inventions;

    (c) Exclusive licenses to all or substantially all rights under any patent that is not a Transferred Patent, a Jointly Owned Patent, a Specified UK Patent or an Excluded Patent; and

(d)     Options to receive or purchase, or any reversionary interest in, any of the foregoing.

32.     Any "Option Trigger Notice" (as defined in section 5.19 of the Asset Sale Agreement)

33.     Documents sufficient to identify relating to any Undisclosed Patent Interest that Rockstar purchased under section 5.19 of the Asset Sale Agreement.

34.     Documents regarding the Transferred Patents, the Sellers Patents, the Specified UK Listed Patents, the Listed Jointly Owned Patents and/or the Excluded Listed Patents (each as defined in the Asset Sale Agreement) which Nortel or any of its representatives, agents, or employees delivered or made available, or caused to be delivered or made available, to any Qualified Bidder pursuant to the Bidding Procedures (*see In re Nortel Networks, et al.*, Case No. 09-10138-KG, Dkt. No. 5359, Ex. 1 (Bankr. D. Del.) including the following entities:

(a)     Apple Inc.

(b)     2256355 Ontario Limited

(c)     Research In Motion

(d)     EMC Corporation

(e)     Telefonaktiebolaget LM Ericsson

(f)     Sony Corporation

(g)     SCA IPLA Holdings Inc.

(h)     Microsoft Corporation

(i)     Intel Corporation

(j)     Rockstar Bidco, LP

(k)     Norpax LLC

(l)     RPX Corporation

(m)     Ranger Inc.

(n)     Google Inc.

35.     The Closing Date License Agreement (as defined in the Asset Sale Agreement), including any license granted by a Nortel Seller to Rockstar Bidco, LP [on or after the Closing Date] pursuant to Section 5.13(a) of the Asset Sale Agreement.

36.   Documents sufficient to identify any membership agreement, by-law or policy of a stand-setting body in which any of the Nortel Sellers was a member or a participant.

37.   Letters of assurance sent by any Nortel Seller to any standard-setting body or industry group with respect to any potential essential patent claim(s) before July 29, 2011.

38.   Letters of assurance sent to any Nortel Seller by any standard-setting body or industry group with respect to any potential essential patent claims before July 29, 2011.

39.   Documents relating to the receipt by the Nortel Sellers of the Purchase Price (as defined in Section 2.2.1 of the Asset Sale Agreement)

40.   Statements made by Nortel to government authorities, debt-rating agencies, underwriters, or any entity evaluating, investigating or valuing the sale of the Transferred Patents, the Jointly Owned Patents or the Specified UK Patents.

41.   Valuations of the Transferred Patents, Jointly Owned Patents or the Specified UK Patents, whether conducted by third parties or by Nortel personnel (other than in connection with divestitures, acquisitions, joint ventures or other transactions with a value of less than $10 million).

42.   Documents sufficient to show the patent maintenance fee payments pursuant to 37 C.F.R. 1.20(e), (f), (g) or (h) or 37 C.F.R. 1.17 made by Nortel during the pendency of the consolidated bankruptcy cases, and the patents for which each payment was made.

43.   Documents sufficient to show how Nortel Networks Inc. ("NNI") calculated the allocation of the patent sale proceeds due to the U.S. Debtors, including any valuation of the transferred patent assets. (*See In re Nortel Networks, et al.*, Case No. 09-10138-KG, Dkt. No. 13551 at 1-2 (Bankr. D. Del.)

44.   Documents or communications with Time Warner Cable, Inc. or any of its affiliates ("TWC").

45.   Documents or communications concerning TWC's alleged use or infringement of any of any current or former Nortel patent.

46.   Documents or communications concerning the underlying lawsuit or any of the following actions:   *Charter Communications Inc. et al. v. Rockstar Consortium L.P. et al.*, No. 1:14-cv-55-SLR (D. Del.); *Bockstar Techs. v. Cisco Sys Inc.*, No 1:13-cv-2020-SLR (D. Del.); *Arris Grp. Inc. et al. v. Constellation Techs. LLC et al.*, No: 1:14-cv-114-SLR (D. Del.); *Constellation Techs. v. Windstream Holdings, Inc.*, No. 2:13-cv-1080-RSP (E.D. Tex.); *In re Constellation Techs. LLC Patent Litig.*, MDL No. 2558 (J.P.M.L.).

47.   Documents concerning the options for monetizing Nortel's patent portfolio, including the "comprehensive business plan" for the formation of a Nortel "IPCo." (*See, e.g., In re Nortel Networks, et al.*, Case No. 09-10138-KG, Dkt. No. 13551 (Bankr. D. Del); Decl. of John Ray III, ¶¶ 49-52; Reply Decl. of John Ray III, ¶¶ 7-11.)

48. Exhibits and Declarations from the May 2014 pre-trial briefing (opening, opposition, and reply briefing) submitted in *In re Nortel Networks, et al.*, Case No. 09-10138-KG, Dkt. (Bankr. D. Del.) and the corresponding Canadian Bankruptcy action.

49. Trial Exhibits from trial over the allocation of sale proceeds of the Asset Sale Agreement.

50. Trial transcripts from the trial over the allocation of sale proceeds of the Asset Sale Agreement

51. The transcript and video of the deposition of John Veschi referenced in *In re Nortel Networks, et al.*, Case No. 09-10138-KG, Dkt. No. 13551 (Bankr. D. Del.)

52. Transcripts of all depositions taken concerning the allocation of the funds from the Asset Sale Agreement among the Nortel entities.

53. Notices of infringement prepared by John Veschi and his team referenced in the May 11, 2014 briefing of the US Interests in *In re Nortel Networks, et al.*, Case No. 09-10138-KG, Dkt. No. 13551 (Bankr. D. Del.).

54. The Master Consulting Agreement referenced in the May 11, 2014 briefing of the US Interests in *In re Nortel Networks, et al.*, Case No. 09-10138-KG, Dkt. No. 13551 (Bankr. D. Del.).

55. Documents related to mapping patent claims of the Nortel's Patent Portfolio to markets for potential enforcement and licenses, and screening of those patents for encumbrances as referenced in the May 11, 2014 briefing of the US Interests in *In re Nortel Networks, et al.*, Case No. 09-10138-KG, Dkt. No. 13551 (Bankr. D. Del.).

56. Documents sufficient to show any actual or proposed royalty rates or other pricing structure for any patent or group of patents in the Nortel Patent Portfolio.

57. The December 16, 2009 Global IP/Lazard presentation to the NNI Board of Directors entitled "Patent PRotfolio Analysis Phase One" and any subsequent presentations describing or characterizing the Nortel Patent Portfolio or concerning the licensing or enforcement of the Nortel Patent Portfolio.

58. Notes, minutes, or agenda from and presentations presented at IP Steering Committee meetings, including all materials from that committee referenced in the May 11, 2014 briefing of the US Interests in *In re Nortel Networks, et al.*, Case No. 09-10138-KG, Dkt. No. 13551 (Bankr. D. Del.) and the corresponding Ray Declaration.

59. Versions of the Nortel "IPCo" model, including those referenced in the May 11, 2014 briefing of the US Interests in *In re Nortel Networks, et al.*, Case No. 09-10138-KG, Dkt. No. 13551, n.243 (Bankr. D. Del.).

60. Documents and communications between Nortel and Google concerning negotiation of the Stalking Horse Agreement reflecting the valuation of the Nortel Patent Portfolio.

61. Documents and communications between Nortel and parties participating in the Nortel Patent Portfolio Auction, including the bids received by Nortel for the Portfolio from any entity.

62. Documents sufficient to identify current and former Nortel employees employed, hired, or that consult for Rockstar in any capacity.

63. Documents that contain any of the following information:

    (a) lists of Nortel licensees, potential licensees, and those that Nortel believed may be interested in rights to the Nortel Patent Portfolio;

    (b) contracts, licenses, and other agreements concerning the Nortel Patent Portfolio;

    (c) lists of encumbrances or potential encumbrances on the Nortel Patent Portfolio, including patent license lists;

    (d) actual or proposed royalty rates, fees, or other pricing structures for the Nortel Patent Portfolio;

    (e) companies identified as potentially subject to infringement actions or licensing efforts concerning the Nortel Patent Portfolio;

    (f) identifications or evaluations of the products or lines of business to which the Nortel Patent Portfolio relate;

    (g) patent claim charts, infringement or invalidity evaluations, or comparisons between actually or potentially patented technology and any product or standard;

    (h) financial projections concerning the Nortel Patent Portfolio;

    (i) for license agreements concerning the Nortel Patent Portfolio, the identity of the parties, field of use, patents covered, royalty rates or amounts, and any other information under such agreements

    (j) any other information relating to any customers, counterparties, or licensees.

64. Documents or communications concerning the Patents-in-Suit or any group of patents that contain the Patents-in-Suit between Nortel and any of the following entities: Constellation Technologies LLC, Bockstar Technologies LLC, Rockstar Bidco, LP, Rockstar Bidco GP LLC, Rockstar Consortium LLC, Rockstar Consortium US LP, Rockstar Acquisition Corp., and Rockstar Inc (collectively "the Rockstar Entities").

65. Documents or Communications between Nortel and any of the Rockstar Entities concerning enforcement of the Patents-in-Suit or a group of patents containing the Patents-in-suit.

66. Documents or Communications between Nortel and any of the Rockstar Entities concerning the value of the Patents-in-Suit or a group of patents containing the Patents-in-suit.

67. Documents or Communications between Nortel and any of the Rockstar Entities concerning the validity of the Patents-in-Suit or a group of patents containing the Patents-in-suit.

68. Documents or Communications between Nortel and any of the Rockstar Entities concerning the named inventors of the Patents-in-Suit.

69. Documents or Communications between Nortel and any of the Rockstar Entities mentioning Time Warner Cable Inc. or Time Warner Cable Enterprises LLC.