**TAB 5**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| | |
|---|---|
| Spherix Incorporated ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No. 1:14-cv-721-GBL-TCB |
| Verizon Services Corp. et al. ) | |
| ) | |
| *Defendant* ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Nortel Networks Inc.
4001 E. Chapel Hill-Nelson Hwy., Research Triangle Park, NC 27709
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A.

| Place: Capital Reporting Inc.<br>8320 Falls of Neuse Rd., Suite 111<br>Raleigh, NC 27615 | Date and Time:<br>09/19/2014 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 09/05/2014

*CLERK OF COURT*

OR  *(signature)*

_____        _____
*Signature of Clerk or Deputy Clerk*                   *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Verizon Services Corp. et al. _____, who issues or requests this subpoena, are:
C. Brandon Rash, 901 New York Ave. NW, Washington DC, 20001, brandon.rash@finnegan.com, 202-408-4475

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:14-cv-721-GBL-TCB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____                              _____
                                                              *Server's signature*

                                                              _____
                                                              *Printed name and title*

                                                              _____
                                                              *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**

**DEFINITIONS AND INSTRUCTIONS**

Each of these definitions and instructions is incorporated into each of the documents requests to which it pertains.

1. "Verizon" refers collectively to Verizon Services Corp.; Verizon South Inc.; Verizon Virginia LLC; Verizon Communications Inc.; Verizon Federal Inc.; Verizon Business Network Services Inc.; and MCI Communications Services, Inc.; and further includes all corporate predecessors of these companies, including, without limitation, MCI Communications, Inc.; MCI WorldCom; WorldCom; and MCI, Inc.

2. "Nortel" refers to Nortel Networks Inc., including the bankruptcy estate of the foregoing, all of its subsidiaries, and any predecessor or successor company, joint venture, partnership, corporation, or business entity, and any directors, officers, agents, employees, accountants, attorneys, consultants, or representatives of Nortel, including without limitation, all persons acting or purporting to act on behalf of, or who are subject to the direction and control of, any of the forgoing, whether currently or formerly.

3. "Spherix" refers to Spherix Incorporated, any predecessor or successor company, joint venture, partnership, corporation, or business entity, and any directors, officers, agents, employees, accountants, attorneys, consultants, or representatives of Spherix, including without limitation, all persons acting or purporting to act on behalf of, or who are subject to the direction and control of, any of the forgoing, whether currently or formerly.

4. The term "Rockstar Entities" refers collectively to Rockstar Bidco, LP; Rockstar Consortium US LP; MobileStar Technologies; Constellation Technologies LLC; Bockstar Technologies LLC; and any predecessor or successor company, joint venture, partnership, corporation, or business entity of the foregoing.

5. The term "Standards Setting Organizations" refers collectively to all organizations whose primary activities include developing and promulgating technical standards, including by way of example without limitation, the International Organization for

Standardization (ISO), International Electrotechnical Commission (IEC), Internet Engineering Task Force (IETF), Institute of Electrical and Electronics Engineers (IEEE), International Telecommunication Union (ITU), Telecommunications Industry Association (TIA), and Virtual Private Network Consortium (VPNC).

6.  The term "Standards" refers to any standard, protocol, technical specification, request for comment, or similar document promulgated by any of the Standards Setting Organizations.

7.  The "'648 Patent" means United States Patent No. 6,507,648.

8.  The "'800 Patent" means United States Patent No. 6,882,800.

9.  The "'564 Patent" means United States Patent No. 6,980,564.

10. The "'533 Patent" means United States Patent No. 8,166,533.

11. The "'167 Patent" means United States Patent No. 7,478,167.

12. The term "Asserted Patents" refers collectively to the '648 Patent, the '800 Patent, the '564 Patent, the '533 Patent, and the '167 Patent, and any other patent that may be added to this litigation in any amended pleading, and the applications that led to any of the aforementioned patents. Any request referring to the "Asserted Patents" seeks information as to each of the aforementioned patents and applications.

13. The term "Identified Technologies" means (i) fiber optic switching; (ii) voice over internet protocol (VoIP); (iii) multilevel precedence and preemption (MLPP); (iv) Session Initiation Protocol (SIP); (v) Virtual Private Network (VPN) tunnels and/or auto-discovery in connection with VPNs.

14. The term "Identified Services" means any service that employs or operates using any of the Identified Technologies.

15. The term "Identified Devices" means (i) devices that are capable of establishing and/or configuring Virtual Private Network (VPN) tunnels and/or auto-discovery in connection with VPNs; (ii) optical network terminals (ONTs); (iii) optical switching systems (including without limitation wavelength selective switches and optical add/drop multiplexers); (iv) devices

designed to support or operate using Session Initial Protocol (SIP) (including without limitation session border controllers, border elements, application level gateways, and media proxy servers); (iv) equipment capable of implementing or used to implement Multilevel Precedence and Preemption (MLPP).

16. The term "person" refers to any natural person, firm, association, organization, partnership, sole proprietorship, business trust, corporation, or public entity.

17. The term "communications" includes both written and oral communications between or among any persons or entities, including all documents relating thereto.

18. The terms "document" or "documents" are used herein in their customary broad sense, and mean any kind of printed, recorded, written, graphic, or photographic matter (including tape recordings), however printed, produced, reproduced, coded, or stored, of any kind or description, whether sent or received or not, including originals, copies, drafts, and both sides thereof, and including papers, books, charts, graphs, photographs, drawings, correspondence, telegrams, cables, telex messages, memoranda, notes, notations, work papers, routing slips, intra- and inter-office communications, electronic mail, instant messages, affidavits, statements, opinions, court pleadings, reports, indices, studies, analyses, forecasts, evaluations, contracts, computer printouts, data processing input and output, computer programs, microfilms, microfiche, all other records kept by electronic, photographic, or mechanical means, and things similar to any of the foregoing, regardless of their author or origin, or any kind.

19. The phrases "concerning," "regarding," "relate to," "related to" or "relating to" mean refer to, concern, mention, reflect, summarize, evidence, involve, describe, discuss, respond to, support, contradict, constitute, or comment on, in whole or in part.

20. The term "including" means "including without limitation," as appropriate, so as to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope. The term "all" means "any and all," as appropriate.

21. In producing the documents and things requested, you are requested to produce all documents and things known or available to you regardless of whether such documents and

things are possessed directly by you or your agents, employees, representatives, investigators, or by your attorneys or their agents, employees, representatives, or investigators. If any of the documents and things requested cannot be produced in full, produce them to the extent possible.

22. These requests seek documents in your possession, custody, or control, which extends to documents in the possession, custody, or control of your predecessors and/or successors, as well as to documents in the possession, custody, or control of your officers, directors, agents, employees, servants, representatives, and, unless privileged, attorneys.

23. If any document responsive to any of the requests contained herein is withheld from production on the ground that such document is privileged or otherwise protected from discovery in whole or in part, then (a) the purportedly protected document shall be identified by date, author, recipients, its nature (for example, memorandum, report, chart, letter, etc.), and its subject matter; (b) the nature and basis for the claim that such document is privileged or otherwise protected from discovery shall be stated with sufficient particularity and in sufficient detail to permit the Court to rule on the claim that such document is privileged or otherwise protected from discovery; and (c) all portions of such documents that are not claimed to be privileged or otherwise protected from discovery shall be produced.

24. In producing the documents and writings requested herein, please produce them in their original file folders, if any, or in lieu thereof, attach to the set of documents produced from a given file a photostatic or electrostatic duplicate of all written or printed material on the original file folder. In addition, the documents shall be produced in the same sequence as they are contained or found in the original file folder. The integrity and internal sequence of the requested documents within each file folder shall not be disturbed. Under no circumstances shall documents from any file folder be commingled with documents from any other file folder.

## **REQUESTS FOR PRODUCTION**

Request for Production No. 1:

All documents reflecting that Nortel had knowledge that Verizon was using, purchasing, and/or selling the Identified Technologies, the Identified Services, and/or the Identified Devices.

Request for Production No. 2:

All documents reflecting that Nortel sold Verizon any Identified Devices or products that are capable of implementing, are used to implement, or in any way facilitate the implementation of the Identified Services.

Request for Production No. 3:

All documents relating to Nortel's participation in the MultiService Forum, a.k.a., MultiService Switching Forum.

Request for Production No. 4:

All documents reflecting any communications between Nortel and Verizon regarding Nortel's patents, including without limitation, the Asserted Patents, the applicability of any Nortel patent to Verizon's products or services, and the value of any Nortel patent or patent portfolio.

Request for Production No. 5:

All documents reflecting any assurance made by Nortel that it would not assert one or more of its patents against Verizon.

Request for Production No. 6:

All documents reflecting any encumbrances on the Asserted Patents.

Request for Production No. 7:

Documents sufficient to show all products manufactured or licensed by Nortel that use the Identified Technologies or fall into the types or categories of Identified Devices or that are capable of implementing or used to implement the Identified Services.

Request for Production No. 8:

Documents sufficient to show the total revenue Nortel obtained from selling products and services to Verizon, or from any joint ventures or projects with Verizon, between 2000 and 2009.

Request for Production No. 9:

All documents reflecting whether Nortel marked any product with the name or number of any Asserted Patent.

Request for Production No. 10:

All documents reflecting whether Nortel marked the Nortel Optical Multiservice Edge 6500 with the name or number of any Asserted Patent.

Request for Production No. 11:

All documents reflecting whether Nortel marked its DMS-100 switch (Digital Multiplex System), or any switch it sold that is capable of implementing or used to implement MLPP, with the name or number of any Asserted Patent.

Request for Production No. 12:

All documents reflecting any Nortel policy or procedure to mark products that practiced a Nortel patent with the name or number of the Nortel patent, or to require licensees to make such markings.

Request for Production No. 13:

All licenses related to the Asserted Patents.

Request for Production No. 14:

All documents concerning any license, sale, auction, encumbrance, covenant not to sue, or any other transaction regarding the Asserted Patents.

Request for Production No. 15:

All documents reflecting Nortel's practice or policies concerning the licensing of its patents.

Request for Production No. 16:

All documents reflecting Nortel's practice or policies concerning the enforcement of its patents.

Request for Production No. 17:

All documents concerning or reflecting communications with any person regarding the value of the Asserted Patents.

Request for Production No. 18:

All Document reflecting any internal valuations or analyses of the market for the Asserted Patents.

Request for Production No. 19:

Documents sufficient to show the complete structure, function, and operation of the Nortel Optical Multiservice Edge 6500, including without limitation documents reflecting the architecture of the optical switch contained in the Nortel Optical Multiservice Edge 6500.

Request for Production No. 20:

Documents sufficient to show the revenue received by Nortel for sales of optical switching systems, including the Optical Multiservice Edge 6500, to Verizon.

Request for Production No. 21:

All documents reflecting communications with Verizon regarding optical switching systems.

Request for Production No. 22:

All documents reflecting Nortel's interactions with Verizon and other activities in connection with providing devices or services capable of implementing or used to implement MLPP to the Department of Defense between 1996 and 2006, including but not limited to Nortel's supply of DMS-100 switches and related services to Verizon for use in a telecommunications system to be operated for the Department of Defense.

Request for Production No. 23:

Documents sufficient to show the complete structure, function, and operation of the Nortel DMS-100 switch with respect to MLPP.

Request for Production No. 24:

All documents reflecting the participation of Nortel or its employees in Standards Setting Organizations regarding any technology or standard related to the Identified Technologies, the Identified Devices, and/or the Identified Services.

Request for Production No. 25:

All documents reflecting any communications to Standards Setting Organizations regarding the Asserted Patents.

Request for Production No. 26:

All documents reflecting any communications to Standards Setting Organizations regarding any of the Identified Technologies, Identified Devices, or Identified Services.

Request for Production No. 27:

All documents reflecting any statement, assertion, or analysis regarding whether the Asserted Patents are or may be essential to the practice of any Standards.

Request for Production No. 28:

All documents reflecting any communications between Nortel and the Rockstar Entities.

Request for Production No. 29:

All documents reflecting any communications between Nortel and Spherix.

Request for Production No. 30:

All documents concerning the Rockstar Entities or Spherix.

Request for Production No. 31:

All agreements between you and any of the Rockstar Entities and/or Spherix.

Request for Production No. 32:

All documents concerning the Rockstar Entities' and/or Spherix's purchase of the Asserted Patents.

Request for Production No. 33:

All documents related to any Standards pertaining to MLPP or to the development or drafting of such Standards, including but not limited to the following Standards published and/or issued by the International Telecommunication Union (ITU):  I.255.3, Q.85.3, Q.955.3.

Request for Production No. 34:

All documents related to any internet draft, RFC, or other document published and/or issued by the Internet Engineering Task Force (IETF) that pertains to the use of tunnels or auto-

discovery in connection with VPNs, including but not limited to the following documents (or any other iterations or versions of them):

    draft-ietf-ppvpn-vpls-requirements

    draft-ietf-l2vpn-vpls-requirements

    draft-augustyn-vpls-requirements

    draft-ietf-ppvpn-l2-framework

    draft-ietf-l2vpn-l2-framework

    draft-andersson-ppvpn-l2-framework

    RFC 4664

    draft-ietf-ppvpn-vpn-vr

    draft-ietf-l3vpn-vpn-vr

    draft-ouldbrahim-vpn-vr

    RFC 2547

    RFC 2547bis

    draft-ietf-ppvpn-rfc2547bis

    draft-ietf-l3vpn-rfc2547bis

    draft-rosen-rfc2547bis

    RFC 4364

    draft-ietf-l3vpn-bgpvpn-auto

    draft-ietf-ppvpn-bgpvpn-auto

    draft-ouldbrahim-bgpvpn-auto

    draft-ouldbrahim-bgp-vpn

  Request for Production No. 35:

All documents related to any internet draft, RFC, or other document published and/or issued by the Internet Engineering Task Force (IETF) that pertains to SIP, including but not limited to the following documents (or any other iterations or versions of them):  RFC 3261, draft-ietf-sip-rfc2543bis, and RFC 2543.

Request for Production No. 36:

All documents reflecting any agreement or commitment to license the Asserted Patents on a fair, reasonable, and nondiscriminatory basis.

Request for Production No. 37:

All documents reflecting any statement made by Nortel regarding whether the Asserted Patents or any related patent would be licensed on a fair, reasonable, and nondiscriminatory basis.

Request for Production No. 38:

All documents reflecting or relating to when anyone at Nortel formed a belief as to whether Verizon, or any products, devices, or services sold or used by Verizon, infringe any of the Asserted Patents.

Request for Production No. 39:

All documents reflecting any communication between Nortel and Verizon regarding the Asserted Patents.

Request for Production No. 40:

All documents reflecting any analyses or studies performed by Nortel regarding whether Verizon, or any products, devices, or services sold or used by Verizon, infringe any of the Asserted Patents.

Request for Production No. 41:

All communications between Nortel and Verizon relating to the Identified Technologies, Identified Services, or Identified Devices.

Request for Production No. 42:

All documents related to Multilevel Precedence and Preemption (MLPP).

Request for Production No. 43:

All documents that were drafted, created, or received prior to March 18, 2003, by Hamid Ould-Brahim, Donald Fedyk, Bryan Gleeson, and/or Peter Ashwood-Smith, and that relate to tunneling mechanisms and/or auto-discovery mechanisms capable of use in connection with

Virtual Private Networks (VPNs), including without limitation all IETF Internet Drafts concerning the use of Border Gateway Protocol (BGP) as an auto-discovery mechanism for Virtual Private Networks.

Request for Production No. 44:

All documents that were drafted, created, or received by Nortel employees prior to March 18, 2003, and that relate to tunneling mechanisms and/or auto-discovery mechanisms capable of use in connection with Virtual Private Networks (VPNs), including without limitation all documents concerning MPLS VPNs, MPLS VPN architecture, or distribution of reachability information in VPNs.

Request for Production No. 45:

All documents reflecting any discussion concerning whether or which references would or would not be disclosed to the PTO in connection with the prosecution of any of the Asserted Patents.

Request for Production No. 46:

All documents reflecting any agreement or offer by Nortel to provision or supply equipment capable of implementing Multilevel Precedence and Preemption (MLPP) to Verizon or the United States government.

Request for Production No. 47:

All documents reflecting destruction by Nortel of any documents related to the Asserted Patents, or relating to the Identified Technologies, the Identified Services, and/or the Identified Devices.

Request for Production No. 48:

All documents reflecting any action or decision by Nortel to preserve any documents related to the Asserted Patents, or relating to the Identified Technologies, the Identified Services, and/or the Identified Devices.