**TAB 9**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Texas

| | | |
|---|---|---|
| Rockstar Consortium US LP & NetStar Technologies LLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  13-cv-00893-RG |
| | ) | |
| Google Inc. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Raj Krishnan, Esq., STMicroelectronics, Inc.
             1310 Electronics Drive, Carrolton, Texas 75006

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  Attachment A

| Place: Steve Sessions, Advanced Discovery<br>500 N Akard Street, Suite 250<br>Dallas, TX 75201 | Date and Time:<br><br>08/18/2014 9:00 am |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   08/04/2014

|  CLERK OF COURT | OR | *[signature]* |
|---|---|---|
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____ Google Inc. _____, who issues or requests this subpoena, are:

Michelle Ernst, Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor, New York, NY 10010, 212-849-7531

michelleernst@quinnemanuel.com**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.    13-cv-00893-RG

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____             _____
                                                     *Server's signature*

                                         _____
                                                     *Printed name and title*

                                         _____
                                                     *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a
person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or
regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly
transacts business in person, if the person
       **(i)** is a party or a party's officer; or
       **(ii)** is commanded to attend a trial and would not incur substantial
expense.

 **(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or
tangible things at a place within 100 miles of where the person resides, is
employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney
responsible for issuing and serving a subpoena must take reasonable steps
to avoid imposing undue burden or expense on a person subject to the
subpoena. The court for the district where compliance is required must
enforce this duty and impose an appropriate sanction—which may include
lost earnings and reasonable attorney's fees—on a party or attorney who
fails to comply.

 **(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce
documents, electronically stored information, or tangible things, or to
permit the inspection of premises, need not appear in person at the place of
production or inspection unless also commanded to appear for a deposition,
hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible
things or to permit inspection may serve on the party or attorney designated
in the subpoena a written objection to inspecting, copying, testing, or
sampling any or all of the materials or to inspecting the premises—or to
producing electronically stored information in the form or forms requested.
The objection must be served before the earlier of the time specified for
compliance or 14 days after the subpoena is served. If an objection is made,
the following rules apply:
       **(i)** At any time, on notice to the commanded person, the serving party
may move the court for the district where compliance is required for an
order compelling production or inspection.
       **(ii)** These acts may be required only as directed in the order, and the
order must protect a person who is neither a party nor a party's officer from
significant expense resulting from compliance.

 **(3) *Quashing or Modifying a Subpoena.***
   **(A)** *When Required.* On timely motion, the court for the district where
compliance is required must quash or modify a subpoena that:
       **(i)** fails to allow a reasonable time to comply;
       **(ii)** requires a person to comply beyond the geographical limits
specified in Rule 45(c);
       **(iii)** requires disclosure of privileged or other protected matter, if no
exception or waiver applies; or
       **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a
subpoena, the court for the district where compliance is required may, on
motion, quash or modify the subpoena if it requires:
       **(i)** disclosing a trade secret or other confidential research,
development, or commercial information; or

       **(ii)** disclosing an unretained expert's opinion or information that does
not describe specific occurrences in dispute and results from the expert's
study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances
described in Rule 45(d)(3)(B), the court may, instead of quashing or
modifying a subpoena, order appearance or production under specified
conditions if the serving party:
       **(i)** shows a substantial need for the testimony or material that cannot be
otherwise met without undue hardship; and
       **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1) *Producing Documents or Electronically Stored Information.*** These
procedures apply to producing documents or electronically stored
information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents
must produce them as they are kept in the ordinary course of business or
must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.*
If a subpoena does not specify a form for producing electronically stored
information, the person responding must produce it in a form or forms in
which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The
person responding need not produce the same electronically stored
information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person
responding need not provide discovery of electronically stored information
from sources that the person identifies as not reasonably accessible because
of undue burden or cost. On motion to compel discovery or for a protective
order, the person responding must show that the information is not
reasonably accessible because of undue burden or cost. If that showing is
made, the court may nonetheless order discovery from such sources if the
requesting party shows good cause, considering the limitations of Rule
26(b)(2)(C). The court may specify conditions for the discovery.

 **(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information
under a claim that it is privileged or subject to protection as trial-preparation
material must:
       **(i)** expressly make the claim; and
       **(ii)** describe the nature of the withheld documents, communications, or
tangible things in a manner that, without revealing information itself
privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a
subpoena is subject to a claim of privilege or of protection as
trial-preparation material, the person making the claim may notify any party
that received the information of the claim and the basis for it. After being
notified, a party must promptly return, sequester, or destroy the specified
information and any copies it has; must not use or disclose the information
until the claim is resolved; must take reasonable steps to retrieve the
information if the party disclosed it before being notified; and may promptly
present the information under seal to the court for the district where
compliance is required for a determination of the claim. The person who
produced the information must preserve the information until the claim is
resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a
motion is transferred, the issuing court—may hold in contempt a person
who, having been served, fails without adequate excuse to obey the
subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

**DEFINITIONS**

1.       "YOU" or "YOUR" shall mean Raj Krishnan.

2.       "NETGRAVITY" means any SOURCE CODE, EXECUTABLE SOFTWARE, or services offered by NetGravity, Inc., previously known as Netvertiser, Inc. prior to July 8, 1999, as referenced in, by way of example only, Exhibit 5.

2.       "NORTEL" means Nortel Networks Corporation and Nortel Networks Inc., their officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and their affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by Nortel Networks Corporation or Nortel Networks Inc., and all predecessors and successors in interest to such entities, including Alteon WebSystems, Inc., Alteon WebSystems International, Inc., Architel Systems (U.S.) Corporation, Bay Networks, Inc., CoreTek, Inc., New Oak Communications, Inc., Nortel Altsystems Inc., Nortel Altsystems International Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Cable Solutions Inc., Nortel Networks (CALA) Inc., Nortel Networks Capital Corporation, Nortel Networks Global Corporation, Nortel Networks HPOCS Inc., Nortel Networks International Corporation, Nortel Networks International Inc., Nortel Networks Limited, Nortel Networks Optical Components Inc., Nortel Networks Technology Corporation, Northern Telecom International Inc., Qtera Corporation, Sonoma Systems, and Xros, Inc..

3.       "ROCKSTAR" means Rockstar Consortium US LP and NetStar Technologies LLC;  their officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, their

affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns,

predecessors and successors in interest, and any other legal entities, whether foreign or domestic,

that own or control them, are owned or controlled by them, or share with them common

ownership or control, as well as predecessors and successors in interest to such entities, including

Bockstar Technologies LLC, Constellation Technologies LLC, MobileStar Technologies LLC,

NetStar Technologies LLC, Rockstar Bidco GP, LLC, Rockstar Bidco LLC, Rockstar Bidco LP,

Rockstar Consortium Inc., Rockstar Consortium LLC, or Rockstar Consortium US LP.

3.      "ROCKSTAR CONSORTIUM" means Rockstar Consortium US LP; its officers,

directors, current and former employees, counsel, agents, consultants, representatives, and any

other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, subsidiaries,

divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest,

and any other legal entities, whether foreign or domestic, that own or control it, are owned or

controlled by it, or share with it common ownership or control, as well as predecessors and

successors in interest to such entities.

4.      "NETSTAR" means NetStar Technologies LLC; its officers, directors, current

and former employees, counsel, agents, consultants, representatives, and any other PERSONS

acting on behalf of any of the foregoing; its affiliates, parents, subsidiaries, divisions, joint

ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other

legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it,

or share with it common ownership or control, as well as predecessors and successors in interest

to such entities.

5.      "ROCKSTAR BIDCO GP" means Rockstar Bidco GP, LLC; its officers,

directors, current and former employees, counsel, agents, consultants, representatives, and any

other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

6.       "ROCKSTAR BIDCO LLC" means Rockstar Bidco LLC; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

7.       "ROCKSTAR BIDCO LP" means Rockstar Bidco LP; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

8.       "ROCKSTAR CONSORTIUM INC." means Rockstar Consortium Inc.; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and

successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

9.    "ROCKSTAR CONSORTIUM LLC" means Rockstar Consortium LLC; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

10.    "APPLE" means Apple Inc.; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

11.    "EMC" means EMC Corporation; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

12.    "MICROSOFT" means Microsoft Corporation; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

13.    "SONY" means Sony Corporation of America; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

14.    "ERICSSON" means Ericsson; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

15.    "BLACKBERRY" means Blackberry Ltd. and its predecessors, including without limitation Research In Motion Ltd.; its officers, directors, current and former employees,

counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of

the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees,

franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether

foreign or domestic, that own or control it, are owned or controlled by it, or share with it

common ownership or control, as well as predecessors and successors in interest to such entities.

16.     "ANY ROCKSTAR ENTITY" means any of ROCKSTAR, ROCKSTAR

CONSORTIUM, NETSTAR, ROCKSTAR BIDCO GP, ROCKSTAR BIDCO LLC,

ROCKSTAR BIDCO LP, ROCKSTAR CONSORTIUM INC., and ROCKSTAR

CONSORTIUM LLC.

17.     "ANY ROCKSTAR SHAREHOLDER" means any current or former

shareholder, member, owner, partner, or other equity owners of ANY ROCKSTAR ENTITY,

including, APPLE, EMC, MICROSOFT, SONY, ERICSSON, and BLACKBERRY.

18.     "NORTEL ADVISOR" means any THIRD PARTY or ANY ROCKSTAR

ENTITY from whom NORTEL sought or received advice REGARDING the PATENTS-IN-

SUIT, RELATED PATENTS/APPLICATIONS, NORTEL's patents, or other intellectual

property, and the auction therefor, including, but not limited to, David Descoteaux, Lazard Frères

& Co. LLC, Global IP Law Group, Justin Lux,  Portfolio Advisors LLC, Colin Keenan,

Brightwood Capital Advisors, LLC, Edouard Gueyffier, Estin & Co., Kshitij Bhatia, or Warburg

Pincus India Pvt. Ltd.

19.     "GOOGLE" means Defendant Google Inc.

20.     "PLAINTIFFS" mean Plaintiffs Rockstar Consortium US LP and NetStar

Technologies LLC.

21.    "THIS LITIGATION" means *Rockstar Consortium US LP and NetStar Technologies LLC v. Google, Inc.*, No. 2:13-cv-893, filed in the Eastern District of Texas.

22.    "'065 PATENT" means U.S. Patent No. 6,098,065, entitled "Associative Search Engine," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, and any other patent applications in the '065 PATENT family.

23.    "'969 PATENT" means U.S. Patent No. 7,236,969, entitled "Associative Search Engine," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, and any other patent applications in the '969 PATENT family.

24.    "'245 PATENT" means U.S. Patent No. 7,469,245, entitled "Associative Search Engine," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, and any other patent applications in the '245 PATENT family.

25.    "'970 PATENT" means U.S. Patent No. 7,672,970, entitled "Associative Search Engine," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, and any other patent applications in the '970 PATENT family.

26.    "'183 PATENT" means U.S. Patent No. 7,895,183, entitled "Associative Search Engine," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, and any other patent applications in the '183 PATENT family.

27.    "'178 PATENT" means U.S. Patent No. 7,895,178, entitled "Associative Search Engine," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, and any other patent applications in the '178 PATENT family.

28.    "'883 PATENT" means U.S. Patent No. 7,933,883, entitled "Associative Search Engine," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, and any other patent applications in the '883 PATENT family.

29.     "PATENTS-IN-SUIT" refers to the '065 PATENT, '969 PATENT, '245 PATENT, '970 PATENT, '183 PATENT, '178 PATENT, and the '883 PATENT, individually and collectively, including all underlying patent applications, all continuations, continuations-in-part, divisionals, and reissues.

30.     "NAMED INVENTORS" refers to Richard Prescott Skillen and Frederick Caldwell Livermore, the named inventors of the PATENTS-IN-SUIT

31.     The term "RELATED PATENTS/APPLICATIONS" shall mean (1) any United States or foreign patent or patent application related to the PATENTS-IN-SUIT by way of subject matter or claimed priority date, (2) all parent, grandparent or earlier, divisional, continuation, continuation-in-part, provisional, reissue, reexamination, and foreign counterpart patents and applications thereof, and/or (3) any patent or patent application filed by one of more of the same applicant(s) (or his or her assignees) that refers to any of (1) or (2) herein.

32.     The phrase "THE APPLICANTS" shall refer to the NAMED INVENTORS of the PATENTS-IN-SUIT, the prosecuting attorneys of the PATENTS-IN-SUIT (including Vernon E. Williams, Jean-Pierre Fortin, and Bruce Garlick), and/or other PERSONS owing a duty of candor to the U.S. Patent & Trademark Office in connection with the prosecution of the PATENTS-IN-SUIT, individually and collectively.

33.     "PRIOR ART" shall mean the subject matter described in 35 U.S.C. §§ 102 and 103, including but not limited to publications, articles, posters, abstracts, chapters, displays, slides, patents, physical devices, prototypes, uses, sales, and offers for sale, and any DOCUMENTS or THINGS evidencing any of the foregoing.

34.     The term "USPTO" shall mean the United States Patent and Trademark Office.

35.     "DOCUMENT" includes, without limitation, all written, graphic or otherwise recorded material, including without limitation, microfilms or other film records or impressions, electronically stored information regardless of the form of storage medium, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electronic recording device, including email, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original.  The foregoing specifically includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

36.     "THING" as used herein means any physical object other than a "DOCUMENT."

37.     "COMMUNICATION" means, without limitation, any transmission, conveyance or exchange of a word, statement, fact, THING, idea, DOCUMENT, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail.

38.     "SOURCE CODE" means source code, hardware code, machine code, assembly code, or code written in any programming language, and code that can be compiled or acted

upon by a processor, any listings or printouts thereof, and any release notes describing the features or modifications of such code.

39.     The term "PERSON" refers to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

40.     "THIRD PARTY" or "THIRD PARTIES" means any PERSON other than either YOU or ANY ROCKSTAR ENTITY.

41.     "INFRINGE" and "INFRINGEMENT" means direct infringement, contributory infringement, infringement by inducement, literal infringement, and infringement under the doctrine of equivalents.

42.     "REGARDING" means relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

43.     "SUBJECT MATTER IN SUIT" means providing search engine results influenced by user profile data, and/or providing advertisements to a search engine based on a user's search request and/or user profile data.

44.     "Include" and "including" shall mean including without limitation.

45.     Use of the singular also includes the plural and vice-versa.

46.     The words "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Document Requests.

47.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

## <u>INSTRUCTIONS</u>

The following instructions shall apply to each of the Document Requests herein:

1.      In answering the following Document Requests, furnish all available information, including information in the possession, custody, or control of YOU or any of YOUR attorneys, directors, officers, agents, employees, representatives, associates, investigators or division affiliates, partnerships, parents or subsidiaries, and PERSONS under YOUR control, who have the best knowledge, not merely information known to YOU based on YOUR own personal knowledge. If YOU cannot fully respond to the following Document Requests after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each Document Request that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the Document Request cannot be answered fully and completely; and state what knowledge, information or belief YOU have concerning the unanswered portion of any such Document Requests.

2.      Electronic records and computerized information must be produced in an intelligible format.

3.      Selection of DOCUMENTS from the files and other sources and the numbering of such DOCUMENTS shall be performed in such a manner as to ensure that the source of each DOCUMENT may be determined, if necessary.

4.      File folders with tabs or labels or directories of files identifying DOCUMENTS must be produced intact with such DOCUMENTS.

5.      Documents attached to each other shall not be separated.

6.      If any information requested is claimed to be privileged or otherwise immune from discovery, please provide all information falling within the scope of the Document Request which is not privileged, and for each item of information contained in a DOCUMENT to which a claim of privilege is made, identify such DOCUMENT with sufficient particularity for purposes of a motion to compel, such identification to include at least the following:

(a)      the basis on which the privilege is claimed;

(b)      the name(s) of the author(s) of the DOCUMENT;

(c)      the name of each individual or other PERSON to whom the DOCUMENT, or a copy thereof, was sent; and

(d)      the date of the DOCUMENT

7.      If YOUR response to a particular Document Request is a statement that YOU lack the ability to comply with that Document Request, YOU must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in YOUR possession, custody, or control, in which case the name and address of any PERSON or entity known or believed by YOU to have possession, custody, or control of that information or category of information must be identified.

8.      If any of the DOCUMENTS are considered "confidential," such DOCUMENTS should be produced subject to the terms and provisions of the Protective Order entered in this case, attached as Exhibit 1.

9.      YOUR obligation to respond to these Document Requests is continuing and its responses are to be supplemented to include subsequently acquired information in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 1:**

A copy of YOUR most recent resume or curriculum vitae.

**DOCUMENT REQUEST NO. 2:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any agreements between YOU and NORTEL or ANY ROCKSTAR ENTITY.

**DOCUMENT REQUEST NO. 3:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR role or activities while employed at NORTEL or ROCKSTAR in the prosecution or monetization of NORTEL's patents or other intellectual property assets, including the PATENTS-IN-SUIT and RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 4:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the PATENTS-IN-SUIT or any RELATED PATENTS/APPLICATIONS, including without limitation any DOCUMENTS REGARDING the inventorship, prosecution, valuation, sale or assignment of the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS and including without limitation any opinions, analyses and/or investigations of INFRINGEMENT of such patents.

**DOCUMENT REQUEST NO. 5:**

All COMMUNICATIONS with the USPTO, foreign patent offices, foreign patent agents, or THIRD PARTIES REGARDING the prosecution of the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 6:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the priority claim made in the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 7:**

All PRIOR ART to the PATENTS-IN-SUIT, including publications or references, asserted by third parties to be PRIOR ART, or evaluated by YOU as potential PRIOR ART, including any PRIOR ART submitted to the USPTO during the prosecution of any of the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 8:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any search for PRIOR ART to the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS, including any DOCUMENTS created or discovered in connection with any PRIOR ART search.

**DOCUMENT REQUEST NO. 9:**

All textbooks, articles, or other sources consulted, gathered, or reviewed in drafting or prosecuting the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 10:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the conception and/or reduction to practice of any invention disclosed, described, or claimed in the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS, including, but not limited to, notebooks and research notes.

**DOCUMENT REQUEST NO. 11:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any diligence between the dates of conception and reduction to practice of any alleged invention

described, disclosed, or claimed in the PATENTS-IN-SUIT or RELATED

PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 12:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any

COMMUNICATIONS or correspondence between YOU and any other person or entity

REGARDING the technology of the purported inventions disclosed, described, or claimed in the

PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 13:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any

U.S. or foreign patents or patent applications filed prior to July 8, 1999 REGARDING search or

search-based advertising, or any alleged invention disclosed, described or claimed in the

PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 14:**

A copy of any SOURCE CODE or software that embodies or reflects any of the

inventions claimed in the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 15:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the

first written description, and first disclosure of any alleged invention described, disclosed, or

claimed in the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 16:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the

design or development of any alleged invention described, disclosed, or claimed in the

PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS, including any invention disclosure forms and prototypes.

**DOCUMENT REQUEST NO. 17:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any publications, sale, offer for sale, or public use prior to July 8, 1999 of any methods or systems related to search or search-based advertising, or any alleged invention disclosed, described, or claimed in the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 18:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, challenging, questioning, analyzing, or otherwise REGARDING the patentability, validity, enforceability, or infringement of any alleged invention described, disclosed, or claimed in the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 19:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the allegations set forth in paragraphs 45-231 of GOOGLE'S Answer to ROCKSTAR'S Complaint for Patent Infringement (Exhibit 2).

**DOCUMENT REQUEST NO. 20:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING affirmative steps taken by the APPLICANTS to meet their duty of candor and good faith to the United States Patent and Trademark Office REGARDING the allegations set forth in paragraphs 45-231 of Exhibit 2.

**DOCUMENT REQUEST NO. 21:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING U.S. Patent Nos. No. 5,727,129 to Barrett et al., 5,901,287 to Bull et al., 6,119,101 to Peckover et al., and 7,136,853 to Kohda et al.; the article by Youji Kohda and Sesumu Endo entitled "Ubiquitous Advertising on the WWW: Merging Advertisements on the Browser," published in the *Computer Networks and ISDN Systems* journal (Vol. 28, issues 7-11, pp. 1493-1499), attached as Exhibit 3; and the article entitled "Make Sure Search Engines Find Your Site; options include buying words, advertising, and careful page design," published by PR News, attached as Exhibit 4.

**DOCUMENT REQUEST NO. 22:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING your awareness, knowledge, or analysis of the software, services, search engines, and search engine advertising of following entities: Adapt/X Advertiser, AdForce, Alta Vista Aptex, Bell Communications Research, Inc. ("Bellcore"), DoubleClick Inc., Excite!, FireFly Network, Inc., FocaLink Media Services, Inc., HealthGate, Hotbot, Infoseek, Inktomi, Lycos, Magellan, NETGRAVITY, Open Text, Snag-It, the System for the Mechanical Analysis and Retrieval of Text ("SMART"), Submit-It, WebCrawler, Yahoo!, dated on or before July 8, 1999.

**DOCUMENT REQUEST NO. 23:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, SOURCE CODE, or EXECUTABLE SOFTWARE, including any and all versions, REGARDING Adapt/X Advertiser, AdForce, Alta Vista Aptex, Bell Communications Research, Inc. ("Bellcore"), DoubleClick Inc., Excite!, FireFly Network, Inc., FocaLink Media Services, Inc., HealthGate, Hotbot, Infoseek, Inktomi, Lycos, Magellan, NETGRAVITY, Open Text, Snag-It, the System

for the Mechanical Analysis and Retrieval of Text ("SMART"), Submit-It, WebCrawler,

Yahoo!, dated on or before July 8, 1999.

**DOCUMENT REQUEST NO. 24:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING

NORTEL'S business relationship with NETGRAVITY, including but not limited to

DOCUMENTS, COMMUNICATIONS, or things REGARDING any customer relationship

between NORTEL and NETGRAVITY as described, by way of example only, at

http://www.nasdaq.com/markets/ipos/filing.ashx?filingid=654438 and

http://www.sec.gov/Archives/edgar/data/1036419/0001047469-98-023984.txt.

**DOCUMENT REQUEST NO. 25:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, SOURCE CODE, or

EXECUTABLE SOFTWARE, including presentations, instructions, technical plans, diagrams,

workbooks, manuals, published articles, publications, and user guides, REGARDING any and all

versions of NETGRAVITY licensed, purchased, or used by NORTEL prior to July 8, 1999.

**DOCUMENT REQUEST NO. 26:**

DOCUMENTS sufficient to identify any persons knowledgeable about NORTEL'S

licensing, purchase, or use of NETGRAVITY prior to July 8, 1999.

**DOCUMENT REQUEST NO. 27:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING

NORTEL'S efforts to market any software or service related to NETGRAVITY prior to July 8,

1999.

**DOCUMENT REQUEST NO. 28:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING your awareness, knowledge, or analysis of any software or service that displayed or incorporated advertisements on a website, returned search results or advertisements based, in part, upon information about the user requesting the search results, or tracked the performance of advertisements displayed or incorporated on a website, including determining whether the advertisement was clicked by a visitor to the website and tracking the amount of advertising fees generated by the advertisement prior to July 8, 1999.

**DOCUMENT REQUEST NO. 29:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any alleged INFRINGEMENT of the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS, including, but not limited to, any DOCUMENTS concerning or REGARDING pre-litigation investigations REGARDING the alleged INFRINGEMENT.

**DOCUMENT REQUEST NO. 30:**

All COMMUNICATIONS with NORTEL, ANY ROCKSTAR ENTITY, the INVENTORS, and/or their attorneys or agents REGARDING the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, GOOGLE, or THIS LITIGATION.

**DOCUMENT REQUEST NO. 31:**

All notes or minutes from any meetings or telephone conferences with NORTEL, ROCKSTAR, and/or the INVENTORS in which NORTEL, ROCKSTAR, the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS, or the LAWSUIT were discussed.

**DOCUMENT REQUEST NO. 32:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING decisions, analysis, or strategy of NORTEL or ANY ROCKSTAR ENTITY to file patent-infringement litigation and/or enter license agreements.

**DOCUMENT REQUEST NO. 33:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the July 2011 auction for NORTEL's intellectual property assets.

**DOCUMENT REQUEST NO. 34:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any bid submitted at the July 2011 auction for NORTEL's intellectual property assets.

**DOCUMENT REQUEST NO. 35:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any meeting or discussion between YOU, NORTEL, ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER, any NORTEL ADVISOR, any THIRD PARTY, or GOOGLE REGARDING any of NORTEL's patents or other intellectual property assets, including the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 36:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any meeting or discussion between YOU, NORTEL, ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER, any NORTEL ADVISOR, or any THIRD PARTY, REGARDING GOOGLE.

**DOCUMENT REQUEST NO. 37:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any efforts made to license, sell, monetize, or otherwise generate revenue from any patent, group of patents, or other intellectual property assets of NORTEL, including but not limited to any diligence, presentations, mailings, meeting minutes, license negotiations, sales negotiations, claim charts, infringement analyses, validity analyses, notice letters, cease and desist letters, offers, proposals, letters of intent, draft agreements, and term sheets.

**DOCUMENT REQUEST NO. 38:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any proposed merger, acquisition, sale, license, or proposed, considered, or actual transaction REGARDING any patent, group of patents, or other intellectual property assets of NORTEL, including but not limited to any diligence, presentations, mailings, meeting minutes, license negotiations, sales negotiations, claim charts, infringement analyses, validity analyses, notice letters, cease and desist letters, offers, proposals, letters of intent, draft agreements, and term sheets.

**DOCUMENT REQUEST NO. 39:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the licensing of any of the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, or any patent related to the SUBJECT MATTER IN SUIT, including, but not limited to, all license agreements, cross licenses, covenants not to sue, or non-assertion agreements that cover any of the PATENTS-IN-SUIT, all offers to license any of the PATENTS-IN-SUIT to any THIRD PARTY, all draft agreements, and All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the negotiation of any agreement or royalties paid.

**DOCUMENT REQUEST NO. 40:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING NORTEL's or ANY ROCKSTAR ENTITY's formal or informal policies, procedures, practices, or guidelines for licensing, sublicensing or assigning rights to patents, including the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, or any patent related to the SUBJECT MATTER IN SUIT.

**DOCUMENT REQUEST NO. 41:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the value of any of the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS, or the SUBJECT MATTER IN SUIT, including any valuation performed by NORTEL, NORTEL'S ADVISORS, ANY ROCKSTAR ENTITY, or any THIRD PARTY.

**DOCUMENT REQUEST NO. 42:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any review, valuation, assessment, or evaluation of any of NORTEL's patents or other intellectual property assets, including any review, valuation, assessment, or evaluation performed by NORTEL, NORTEL's ADVISORS, ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER, or any THIRD PARTY, or by any PERSON on behalf of YOU, ANY ROCKSTAR SHAREHOLDER, ANY ROCKSTAR ENTITY, or any THIRD PARTY.

**DOCUMENT REQUEST NO. 43:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the assertion, potential assertion, or potential for assertion of any patent against GOOGLE or any THIRD PARTY in the NORTEL patent portfolio, including but not limited to the PATENTS-IN-

SUIT, RELATED PATENTS/APPLICATIONS, or any patent related to the SUBJECT

MATTER IN SUIT.

**DOCUMENT REQUEST NO. 44:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the

assertion, potential assertion, or potential for assertion against GOOGLE of any patent in the

NORTEL patent portfolio, including but not limited to the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 45:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any

attempt by NORTEL, ANY ROCKSTAR ENTITY, or by any party acting on behalf of

NORTEL or ANY ROCKSTAR ENTITY to enforce any of the PATENTS-IN-SUIT,

RELATED PATENTS/APPLICATIONS, or any patent related to the SUBJECT MATTER IN

SUIT, either in the United States or abroad.

**DOCUMENT REQUEST NO. 46:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any

decision, by NORTEL or ANY ROCKSTAR ENTITY, to file or decline to file any potential or

actual litigation or other claim REGARDING any of the PATENTS-IN-SUIT or RELATED

PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 47:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any

proposed or actual settlement of any litigation, prospective litigation, dispute, or adversarial

proceeding in the United States or abroad involving the PATENTS-IN-SUIT, RELATED

PATENTS/APPLICATIONS, or any patent related to the SUBJECT MATTER IN SUIT.

**DOCUMENT REQUEST NO. 48:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the commercialization of any of the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, or any patent related to the SUBJECT MATTER IN SUIT, including marketing plans, analyses of market demand or market share (either projected or actual), or other market studies, reports, memoranda, or opinions.

**DOCUMENT REQUEST NO. 49**:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any product, system, or method that embodies any claim of the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, or any patent related to the SUBJECT MATTER IN SUIT.

**DOCUMENT REQUEST NO. 50**:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING business plans, strategic plans, competitive or market analysis, operating plans, marketing plans, financial plans, production plans, sales plans, and capital or investment plans REGARDING any product, system, or method that embodies any claim of the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, or any patent related to the SUBJECT MATTER IN SUIT.

**DOCUMENT REQUEST NO. 51:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the sales, revenue, income, profit, gross margin, costs, expenses, forecasts, projections, or budgets for any NORTEL or ANY ROCKSTAR ENTITY product, system, or method that embodies any claim of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 52:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the marketing and promotion of any NORTEL or ANY ROCKSTAR ENTITY product, system, or method that embodies any claim of the PATENTS-IN-SUIT, including surveys, advertising materials, promotional or sales materials, press releases, and analyst reports.

**DOCUMENT REQUEST NO. 53**:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the presence or absence of any non-infringing alternatives or substitutes for any claim of the PATENTS-IN-SUIT, including DOCUMENTS concerning any investigation REGARDING the characteristics of any non-infringing alternative, the reasons why the alternative is non-infringing, and the time and cost to develop or implement any non-infringing alternative.

**DOCUMENT REQUEST NO. 54**:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the performance, advantages, disadvantages, problems, features, commercial or technical benefits, or improvements of the technology claimed in any of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 55**:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any commercial success based on any of the PATENTS-IN-SUIT, any long-felt need satisfied by any of the PATENTS-IN-SUIT, or any praise or acclaim as a result of any of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 56**:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING NORTEL's first awareness of GOOGLE's activities that form the basis of any allegation that GOOGLE infringes any of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 57**:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the timing or delay of potential legal claims based on any of the PATENTS-IN-SUIT, including the circumstances REGARDING that timing or delay, and any actual or potential prejudice REGARDING that timing or delay.

**DOCUMENT REQUEST NO. 58**:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the marking under 35 U.S.C. § 287 of any products, services, systems, or methods with any of the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 59**:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR efforts to preserve, retain or destroy DOCUMENTS, including all DOCUMENTS REGARDING any destruction of any DOCUMENTS otherwise responsive to these requests.