# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CONSTELLATION TECHNOLOGIES LLC, *Plaintiff* vs. TIME WARNER CABLE INC. and TIME WARNER CABLE ENTERPRISES LLC, *Defendants* | Civil Action No. 2:13-CV-1079 **JURY TRIAL DEMANDED** |

**CONSTELLATION'S OPPOSITION TO
TIME WARNER CABLE'S MOTION TO DISMISS**

## I. INTRODUCTION

Time Warner Cable's ("TWC") Motion to Dismiss ignores settled law that plaintiffs can base claims of willful infringement on defendants' conduct following the filing of a complaint. TWC received notice of its infringement of the patents in suit at least as of the service of the original Complaint on December 13, 2013, yet without justification has refused to cease its infringement. Constellation Technologies LLC ("Constellation") therefore, on January 3, 2014, amended its original Complaint to add willfulness allegations fully supported by the record in this case. Under these circumstances, TWC's motion should be denied.

## II. FACTUAL BACKGROUND REGARDING CONSTELLATION

Constellation is a wholly-owned subsidiary of Rockstar Consortium US LP ("Rockstar"), the successor to a large portion of intellectual property that resulted from research and development at Nortel Networks ("Nortel"). Rockstar was formed by Apple, BlackBerry, Ericsson, Microsoft, and Sony.

2946530

Nortel was a prolific innovator in the telecommunications industry.  As an example, Nortel was one of the first companies to envision telecommunications over fiber optics, and it led the industry's move to the current era of digital telecommunications.  Nortel's patent portfolio resulted from billions of dollars of research conducted by tens of thousands of employees over a period of decades.  In the year 2000 alone, Nortel spent nearly $4 billion on research and development with over 25,000 research-and-development employees (nearly 10,000 in the United States alone).

Nortel, due in no small part to its enormous research and development expenditures, eventually entered bankruptcy.  As part of that process, in 2011, a consortium of highly sophisticated technology companies (including Rockstar's founders) paid $4.5 billion for the Nortel patent portfolio, outbidding other technology giants including Google and Intel.  That cash infusion has helped Nortel discharge its commitments to its former employees.

Rockstar's owners assigned the majority of the patent portfolio to Rockstar.  Given the breadth and depth of Nortel's patent portfolio, Rockstar assigned certain groups of patents relating to particular technologies to different subsidiaries.  Rockstar assigned to Constellation many of the patents related to provisioning cable, telecommunications, and other multimedia services.  Constellation and its parent, Rockstar, are committed to ensuring that Nortel's innovations are available for licensing.

### III. FACTUAL BACKGROUND REGARDING THIS MOTION

TWC, one of the nation's largest cable companies, has chosen to construct foundational elements of its business using Nortel's inventions, yet has not obtained a license permitting such conduct.  Constellation was therefore forced to file suit against TWC.  That suit was filed in this Court on December 11, 2013.  TWC was served with the Complaint on December 13, 2013.  As

described in the Complaint, TWC was infringing the asserted patents with services including its designs for HD video, voice-over-IP, Whole House DVR, Whole House HD-DVR, and MPLS fast reroute. Constellation also sent TWC two letters requesting that TWC abate its infringing activity and enter into licensing discussions with Constellation. *See* Declaration of Zachary Elsea, Exhs. A, C. TWC instead elected to continue with its infringement rather than to respect Constellation's rights. *See id.*, Exh. B. Constellation recognizes that on a pleading motion of this sort it is not appropriate to present additional evidence, but TWC has never denied that it has knowledge of the patents in suit either in its response to Constellation's first letter or elsewhere. Accordingly, Constellation amended its Complaint on January 3, 2014 to add allegations that TWC had, and continued to, willfully infringe the patents-in-suit. TWC responded with a motion to dismiss those willful infringement claims.

## IV. ARGUMENT

TWC argues that the Court must dismiss Constellation's claims for willful infringement because Constellation has not pleaded facts describing TWC's ***pre-suit*** knowledge of the patents. Motion at 3–4. TWC is wrong.

The law is well-settled that claims for willful infringement may be based on a defendant's ***post-filing*** conduct. Courts recognize that "if a plaintiff . . . is able to establish the defendant's knowledge of the alleged infringement based on a prior, though superseded, complaint, the defendant should not be able to escape liability for [willful] conduct occurring after the plaintiff files its complaint." *MyMedicalRecords, Inc. v. Jardogs, LLC*, No. 2:13-cv-03560, 2014 WL 585450, at *5 (C.D. Cal. Feb. 14, 2014) (denying motion to dismiss post-filing willfulness claims); *see also Affinity Labs of Texas, LLC v. Alpine Electronics of America., Inc.,* No. 9:08-CV-171, 2009 WL 9091275, at *2–*4 (E.D. Tex. Sept. 2, 2009) (denying motion to dismiss willfulness claims based solely on post-filing infringement); *DataQuill Ltd. v. High Tech*

*Computer Corp.*, 887 F. Supp. 2d 999, 1014–17 (S.D. Cal. 2011) (holding that plaintiff's "claim for [post-filing] willful infringement is not barred as a matter of law").

Courts have also explained why, as a practical matter, it is entirely sensible and appropriate to base allegations of willful infringement on an earlier complaint.  "For purposes of pleading willful infringement, there [is] little practical difference between a pre-complaint notice letter informing a defendant about a patentee's allegation of infringement and a subsequently-superseded original complaint formally alleging infringement."  *Clouding IP, LLC v. Amazon.com, Inc.*, C.A. Nos. 12–641, 12–642, 12–675, 2013 WL 2293452, at *4 (D. Del. May 24, 2013) (denying defendants' motion to dismiss willfulness claims).

Indeed, in the related context of indirect infringement, which similarly requires a defendant's knowledge of the patents in suit, this Court reaffirmed that the filing of a complaint is sufficient to put a defendant on notice of the patents in suit.  *InMotion Imagery Technologies v. Brain Damage Films*, No. 2:11-CV-414-JRG, 2012 WL 3283371, at *3 (E.D. Tex. Aug. 10, 2012) (Gilstrap, J.) ("In this case, there can be no dispute that Galaxy has actual notice of the ′219 patent at least as of the time of the filing of this lawsuit.").

Here, there is no question that TWC has had knowledge of the patents-in-suit since at least December 13, 2013, when TWC was served with Constellation's original Complaint. Constellation amended its Complaint the following month to include TWC's willful infringement of the patents, which began at least as early as December 13, 2013 and continues unabated today. Under these facts, Constellation's First Amended Complaint plainly suffices to support a claim of willful infringement.  TWC's motion should accordingly be denied.[1]

---

[1] If deemed necessary by the Court, Constellation is willing to amend its Complaint to address any asserted deficiencies and respectfully requests an opportunity to do so.  Constellation understands that the Court's usual practice is to permit amendment without leave until a date that will be set at the initial Scheduling Conference.

| | |
|---|---|
| Dated: February 24, 2014. | Respectfully submitted, |

*/s/ Harry L. Gillam Jr.*
Harry L. Gillam, Jr.
State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257
gil@gillamsmithlaw.com

Benjamin W. Hattenbach
bhattenbach@irell.com
Ellisen S. Turner
eturner@irell.com
Jason G. Sheasby
jsheasby@irell.com
Hong Annita Zhong
hzhong@irell.com
James A. Milkey
jmilkey@irell.com
Zachary Elsea
zelsea@irell.com
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
P: 310-203-7675
F: 310-203-7199

**ATTORNEYS FOR CONSTELLATION
TECHNOLOGIES LLC**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service, on this the 24th day of February, 2014.

*/s/ Harry L. Gillam, Jr.*
Harry L. Gillam, Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CONSTELLATION TECHNOLOGIES LLC,<br><br>*Plaintiff*<br><br>vs.<br><br>TIME WARNER CABLE INC. and<br>TIME WARNER CABLE ENTERPRISES LLC, | Civil Action No. 2:13-CV-1079<br><br>**JURY TRIAL DEMANDED** |

### DECLARATION OF ZACHARY ELSEA IN SUPPORT OF CONSTELLATION'S OPPOSITION TO TIME WARNER CABLE'S MOTION TO DISMISS

I, Zachary Elsea, declare as follows:

1. I am an attorney at the law firm of Irell & Manella LLP, counsel of record for Constellation Technologies in this matter. I am a member in good standing of the State Bar of California and have been admitted to practice before this Court. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. Attached hereto as Exhibit A is a true and correct copy of John Garland's December 12, 2013 letter to John Silverio.

3. Attached hereto as Exhibit B is a true and correct copy of John Silverio's letter of December 26, 2013 to John Garland.

4. Attached hereto as Exhibit C is a true and correct copy of John Garland's January 8, 2014 letter to John Silverio.

Case 09-10138-MFW Doc 14552-3 Filed 10/14/14 Page 8 of 18

- 2 -

Executed on February 24, 2014, at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Zachary T. Elsea*
Zachary T. Elsea

# EXHIBIT A

# Constellation Technologies LLC

John Garland, President  
Constellation Technologies LLC  
Legacy Town Center 1  
7160 North Dallas Parkway; Suite 250  
Plano, TX 75024  
613-576-1025  
jgarland@ip-rockstar.com

December 12, 2013

BY ELECTRONIC MAIL AND PRIORITY MAIL

John Silverio  
Senior Counsel, IP  
Time Warner Cable  
60 Columbus Circle  
New York, NY 10023

Dear Mr. Silverio,

      Bell Northern Research and Nortel Networks (the "Nortel Family") were responsible for many of the most important innovations in the telecommunications and cable industry over the last few decades. To put this extraordinary work in context, between 1992 and 2009 the Nortel Family spent over $34 billion on research and development. One of the Nortel Family's largest research centers was in Richardson, Texas, the area in which we are still located. In 2011, a group of some of the most respected high technology companies in world, including Apple, Microsoft, Ericsson, Sony, and Blackberry, stepped in to preserve as much of the Nortel Family's exceptional patent portfolio as possible. This group created Rockstar Consortium to serve as the steward of the portfolio. Constellation Technologies LLC was in turn created by Rockstar to make certain telecommunications/cable service provider inventions available to the public. As a result of the formation of Rockstar and Constellation, engineers and managers who walked the halls of the Nortel Family's research centers now work to make the innovations of the Nortel Family available to the public.

      Since Rockstar first reached out to TWC in August 2012, I have attempted multiple times to have discussions with your company in an effort to engage it in meaningful licensing negotiations involving Rockstar's intellectual property. This includes, since March, nearly monthly phone conversations in which I asked you to take TWC's legal obligations under the United States Patent laws seriously and asked you to enter into good faith negotiations. I also left you a number of voice messages and sent numerous emails in an effort to move our licensing discussions forward, but unfortunately, to no avail. In one March 2013 email, I forwarded a presentation illustrating to TWC the large numbers of technologies implicated by Rockstar's patents.

Over the summer months and more recently in our telephone conversation on September 27, 2013, I suggested to you that I could travel to New York to meet with you and any other appropriate TWC staff to discuss options for proceeding with potential strategic IP discussions and to advance licensing negotiations.  I also explained that I am ready and willing to provide further information if TWC deems it helpful or necessary in discussions going forward, provided the appropriate TWC employees sign a standard non-disclosure agreement.  Unfortunately, TWC ignored this proposal as well.

Because of TWC's refusal to participate in meaningful discussions, Constellation was left with no choice but to initiate legal proceedings against TWC in Texas.  We regret that Constellation has been forced to take this step.

Constellation, as the successor to certain telecommunications/cable service provider inventions from the Nortel Family, has a large portfolio of patents that are relevant to the telecommunications and cable industry.  Examples of patents in our portfolio include U.S. Patent Numbers 5,583,862; 5,761,197; 5,850,397; 6,128,649; 6,130,893, 6,321,253, 6,845,389; 6,901,048; 7,154,879; 7,486,615; 8,134,917; 8,464,299.  Constellation believes that TWC has built the fundamental aspects of its business on inventions from the Nortel Family including the aforementioned inventions.

Finally, we note that Nortel made certain commitments to standards setting organizations regarding certain of its patents that are now owned by Constellation.  Those commitments are embodied in public documents that any party can examine by visiting the standards bodies' web sites, such as those of the IEEE, IETF and ITU-T.  If TWC was interested in obtaining a license to those patents consistent with Nortel's commitments, TWC simply needed to identify the standards and the patents it desired to license, and what services it sought to license under those patents.  We then could have prepared a listing of information that we would need (for example, the revenue and profit margins on those services), so that we could make a licensing proposal as to those patents we own.  TWC refused to even take this step.

We sincerely hoped that TWC would have reconsidered its refusal to engage in licensing discussions with us.  We ask again that TWC address its unlawful activity with regards to standards and agree within the next 15 days to provide the requested information.  Furthermore, if TWC is ever interested in seriously engaging in licensing discussions for all or part of Constellation's portfolio, please do not hesitate to contact me.

Sincerely,

John Garland
President
Constellation Technologies LLC

# EXHIBIT B



John Silverio
Senior Counsel, Intellectual Property

December 26, 2013

Via Electronic Mail and First Class Mail

Mr. John Garland
Constellation Technologies LLC
Legacy Town Center 1
7160 North Dallas Parkway
Suite 250
Plano, Texas 75024
jgarland@ip-rockstar.com

Dear Mr. Garland:

I have received your letter of December 12, 2013, sent the day after you sued Time Warner Cable for patent infringement without prior notice of the asserted patents.

First, we disagree with the historical description in the first five paragraphs of your letter. However, we do not think it will be productive to address those inaccuracies here.

With regard to the remaining paragraphs of your letter where you refer to certain "commitments to standards setting organizations" by Nortel, Rockstar and Constellation, it is not apparent what you are referring to or requesting from Time Warner Cable. The topic of commitments to standard setting organizations by Nortel, Rockstar or Constellation was never raised in any prior communications between our companies, and any inference to the contrary in your letter is inaccurate. Moreover, none of the six patents-in-suit were ever brought to Time Warner Cable's attention prior to your bringing suit, and to the extent Rockstar or Constellation has any obligations to standards bodies with regard to those patents or any other patents, they were never raised with Time Warner Cable prior to your bringing suit, and again, any inference to the contrary in your letter is inaccurate.

Finally, it is disappointing that Rockstar through its new subsidiary Constellation filed suit against us for patent infringement without any warning, and your choice of venue is puzzling. Nevertheless, we are available to discuss this matter in a productive manner either outside the restrictions of a non-disclosure agreement (as we have always been willing to do) or within the confines of an appropriate non-disclosure agreement, of the type we had been discussing when you unilaterally withdrew from that process and filed the lawsuit.

Very truly yours,

John V. Silverio /srh

JVS/srh
cc:   Andy Block

2

# EXHIBIT C

# CONSTELLATION TECHNOLOGIES LLC

BY EMAIL AND COURIER

January 8, 2014

John Silverio
Senior Counsel, IP
Time Warner Cable
60 Columbus Circle
New York, NY 10023

Dear John:

    I write in response to your letter of December 26, 2013.

    To begin with, we note that your letter never denies that TWC infringes the six patents that are the subject of the lawsuit Constellation was forced to file in Texas earlier this month, nor does it dispute that the patents are valid.

    As you know, for many, many months we have attempted to engage TWC in a licensing discussion. TWC has declined to participate in such a discussion. You claim that you "disagree with the historical description in the first five paragraphs of [my] letter" in which I summarized the history of our efforts to have meaningful discussions with TWC. However, you do not identify any actual statements with which you disagree or explain why you supposedly disagree with any portion of the description. In my experience, this is the type of language written by lawyers in order to avoid engaging the truth. If there are statements in my letter that you contend are inaccurate, please tell me what they are and why you contend they are inaccurate.

    As part of my attempt to engage TWC in negotiations, I provided TWC with a detailed description of the types of technologies in which Rockstar held particularly important intellectual property. TWC expressed no good-faith interest in discussing those technologies. Instead, TWC simply ignored our efforts to have a substantive dialog. TWC has not only refused to take responsibility for its serial patent infringement; TWC has refused even to discuss the subject. That is not reasonable.

Constellation Technologies LLC

John Garland
President
613-576-1025

7160 North Dallas Parkway
Suite 250
Plano Texas 75024

# CONSTELLATION TECHNOLOGIES LLC

You next state that "[i]t is not apparent what you are referring to or requesting from Time Warner Cable." Our letter could not have been clearer. We offered TWC an intellectual property license. We cannot, however, have a negotiation with ourselves. If TWC wanted a license to a patent, it need only have identified the patent and the services it wanted to license under the patent. We could then have prepared a listing of information we need to make a licensing proposal. To this day, TWC has never taken even this initial step.

There are two other issues that we need you to address: First, please explain why you contend that the "choice of venue is puzzling" for the lawsuit we have been forced to file against TWC. We are a Texas-located company, as were our predecessors, Rockstar, Nortel and Bell Northern Research. TWC is clearly doing sustained and consistent business in the Eastern District of Texas and is offering infringing services in the district. If you believe that the Texas venue is inappropriate or inconvenient, please explain why.

Second, we do not believe that the patents in suit are subject to any contractual restrictions preventing Constellation from seeking an injunction. We ask that you confirm your agreement, or if you disagree, explain why. We would like to ensure that any request for preliminary injunctive relief will not trigger a claim of breach of contract.

In closing, we remain disappointed that TWC has declined to participate in a good faith negotiation. If TWC was serious about this process, it would have signed the non-disclosure agreement that we spent so long negotiating or it would have provided a list of patents it wanted to license and the services for which it desired a license. TWC did neither. TWC's actions are not consistent with how responsible companies operate in these circumstances.

We remain as always willing to participate in a good faith negotiation.

Sincerely,

John Garland
President

Constellation Technologies LLC

John Garland
President
613-576-1025

7160 North Dallas Parkway
Suite 250
Plano Texas 75024

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CONSTELLATION TECHNOLOGIES LLC, *Plaintiff* vs. TIME WARNER CABLE INC. and TIME WARNER CABLE ENTERPRISES LLC, *Defendants* | Civil Action No. 2:13-CV-1079 **JURY TRIAL DEMANDED** |

## ORDER DENYING
## TIME WARNER CABLE'S MOTION TO DISMISS

The Court has reviewed Time Warner Cable's Motion to Dismiss, Plaintiff's opposition and the arguments, authorities, and evidence submitted by the parties.

Upon consideration of the parties' submissions, the Court DENIES Defendant Time Warner Cable's Motion to Dismiss.

IT IS, THEREFORE, ORDERED that Defendant Time Warner Cable's Motion to Dismiss is DENIED.