# Exhibit 18

## Dustin Guzior

| | |
|---|---|
| **From:** | Dustin Guzior |
| **Sent:** | Wednesday, September 17, 2014 10:33 AM |
| **To:** | Rozenberg, Inna |
| **Cc:** | Herrington, David H.; McCown, Alexandra S. |
| **Subject:** | Re: Constellation v. TWC - Subpoena to NNI |

Yes, I'm happy to be flexible on that, but it is important that we speak this week, as my client understandably wants to start receiving a more complete production from Nortel. Could we speak at noon tomorrow?

I am going to send an agenda that includes some points that we have learned this week. In particular, we understand that Google has subpoenaed NNI but that Mike Supko at C&M is representing NNI for that response. We want to make sure that effort isn't being duplicated, especially given the request for fees and costs, and that we receive whatever is produced to Google.

Additionally, subpoena responses from inventors (former Nortel employees) are starting to come in, and we are beginning to learn about the Nortel projects that led to the patents in suit. I have some questions about material that your client might have on the technology and your thoughts on how best to receive it. We understand that not all of that material is EDR material.

Finally, at your suggestion, I studied the transcript for the hearing related to confidentiality and the protective order in your case. I also re-examined the order concerning public use of trial exhibits. I continue to be perplexed by the idea that production in our case is governed by the last order, as opposed to the protective order, which expressly contemplates that produced material might be requested by subpoena in a separate litigation and prescribes a process to follow in that event. Please let's discuss what your final position is on that issue and why you refused to send notice letters to the producing party, as I requested on our last call. If you have not sent those notice letters, you have actually breached your obligations under the bankruptcy court's protective order.

Let me know if noon tomorrow works for you.

Thanks,

Dustin F. Guzior
Desmarais LLP
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622
Dguzior@desmaraisllp.com

On Sep 17, 2014, at 10:20 AM, "Rozenberg, Inna" <irozenberg@cgsh.com> wrote:

> Dustin,
>
> Would it be possible to move our call to tomorrow afternoon or Friday?
>
> Thanks,
> Inna

Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
Assistant: jclarke@cgsh.com, jkiefer@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 | f: +1 212 225 3999
www.clearygottlieb.com | irozenberg@cgsh.com

**From:** Dustin Guzior [mailto:DGuzior@desmaraisllp.com]
**Sent:** Sunday, September 14, 2014 8:39 PM
**To:** Rozenberg, Inna
**Cc:** Herrington, David H.; McCown, Alexandra S.
**Subject:** Re: Constellation v. TWC - Subpoena to NNI

Inna,

Thanks for your email. I apologize for bugging you while you are out of the office, but I obviously needed to review your proposal before our call.

I do not understand what you mean when you say that our communications are covered by FRE 408. If your goal is to establish that we cannot use our negotiations in any motion to compel that might be necessary (although it does not seem necessary yet), I cannot agree to that, and FRE 408 does not help in any event. If your goal is for us to agree that these communications will not be used at a trial or evidentiary hearing, I can discuss with my team whether we can stipulate to that (again, I don't know that 408 gets you where you want to go) because I don't know that we have any reason to use these communications at trial.

Can you please clarify what you mean by "pre-filing period" for Weiss and Cianciolo and "post-filing period" for Veschi and Riedel? I assume you mean bankruptcy filing, but Veschi was employed by Nortel pre-filing and I think we would be interested in that set of material. Can you also clarify what you mean by "public versions" of the trial exhibits? We understand that you might need to redact for privilege but we do not expect to have any redactions for confidentiality given the protective order in our case. I am optimistic that we can secure the consent of Rockstar to have the confidential portions produced but designated with the highest confidentiality protection under the protective order in our case. Let's discuss the details on our next call.

Ultimately, what is going to prove most useful to us from your production, apart from the deps and trial exhibits, is: (1) internal patent valuations (including evaluation of the IPCo model and analysis of encumbrances) leading up to bankruptcy or after filing for bankruptcy but not shared with the bidders or Rockstar and (2) documents about Nortel's enforcement and licensing of its IP generally and specifically with respect to TWC, Cisco, Arris, and other suppliers to TWC. We don't need Nortel to produce duplicate copies of what is in the EDR, and I have taken to heart your request that we press only Rockstar for that material.

I need to evaluate your proposal to see if it captures at least (1) and (2) above. I also need to consult on the cost shifting request, but I am virtually certain that is a non-starter and I do not think it is legally required. Please be prepared to provide me a cost estimate and to let me know if that is your final position. We have expressed willingness to move to compel on this issue before, and I don't know that we need to go in circles any longer. Of course, if we can agree that Nortel will conduct a more fulsome search that captures the documents of most interest to us, I can discuss with my client that cost shifting or partial cost shifting might be a nice gesture, even if not legally required.

I would like to postpone our call until Wednesday so that I can discuss the proposal with my team. Let's speak at 2pm ET.

Thanks,

Dustin F. Guzior
Desmarais LLP
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622
Dguzior@desmaraisllp.com

On Sep 14, 2014, at 7:22 PM, "Rozenberg, Inna" <irozenberg@cgsh.com> wrote:

> WITHOUT PREJUDICE / SETTLEMENT OFFER / SUBJECT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE
>
> Dustin,
>
> I am the one surprised by your email today given that you know I have been out of the office.  In any event, we have been prepared to respond to your emails of September 6 and 9 before our next call, and do so below.  I remain prepared to proceed with a call tomorrow at 11am, or if you prefer to postpone, I can be available on Tuesday at 10am or on Wednesday any time between 10am and 5pm.  Whenever we have our call, please confirm beforehand that you agree we are engaging in settlement discussions subject to Rule 408 of the Federal Rules of Evidence.
>
> First, with respect to documents provided to the DOJ, I have inquired and learned that it was counsel to the Canadian Monitor which handled that aspect of the matter.
>
> Second, in order to make our next call as productive as possible, I set forth below the outlines of NNI's proposal on how to settle all of the outstanding issues between us in connection with TWC's subpoena to NNI.
>
> In addition to the deposition transcript portions which we already produced and the public version of the trial exhibits which we have agreed to produce, NNI can also agree, following a review for privilege and/or confidentiality to be undertaken with Rockstar and other affected parties (which, as I've previously stated many times, may include other purchasers, licensees and tax authorities), to produce:  (1) the entire deposition transcripts for Cianciolo, Lee, McColgan, Riedel and Veschi; (2) three specific documents in response to your request 2(c) from your September 3 email; and (3) any responsive, non-privileged documents yielded by running the search terms reflected in the attached against documents NNI produced in the allocation litigation from custodians Cianciolo and Weiss (for the pre-filing period) and Riedel and Veschi (for the post-filing period).  While we are still working through the details, we believe this will yield close to 4,500 documents.  Given the volume and the burden, we will not search, produce or log any documents which NNI has already determined were privileged while conducting its review for the allocation litigation.  This search responds to your request 2(b) from your September 3 email, except for "valuation of the IP before bankruptcy," the relevance, if

any, of which does not justify the burden of attempting to formulate search terms and conduct a review.

The foregoing offer is conditioned upon you agreeing that:  (a) for all past and future productions, notwithstanding the terms of the protective order in your case and pursuant to the request of Constellation's counsel, we may designate all past and future productions under paragraph 32 of that order; (b) for all past and future productions, you will not argue that production by NNI results in a waiver of any privilege or protection from discovery, including any broader subject matter waiver, pursuant to paragraph 11 of the allocation litigation confidentiality order and the request of Constellation's counsel; (c) TWC will reimburse NNI for costs incurred in connection with the work described in the paragraph above; and (d) TWC will not seek any further document productions from NNI, except for good cause shown and as a result of new information discovered by the review of documents produced in accordance with the paragraph above.

We look forward to discussing this proposal and other matters with you during our next call.

Sincerely,
Inna Rozenberg

_____

Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
Assistant: jclarke@cgsh.com, jkiefer@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 | f: +1 212 225 3999
www.clearygottlieb.com | irozenberg@cgsh.com


**From:** Dustin Guzior [mailto:DGuzior@desmaraisllp.com]
**Sent:** Sunday, September 14, 2014 3:42 PM
**To:** McCown, Alexandra S.; Rozenberg, Inna
**Subject:** Re: Constellation v. TWC - Subpoena to NNI


Inna,

I am surprised that your team has not fulfilled its promise to send a search protocol prior to our call. As a matter of professional courtesy, you could have responded to any one of my emails (including the one to which you did respond) saying that you were not going to be sending a protocol.

Should we postpone our call until Tuesday or Wednesday to give your team a chance to provide the material that you promised to provide?

Dustin F. Guzior
Desmarais LLP
230 Park Avenue
New York, New York 10169
O: (212) 808-2944

M: (347) 924-3622
Dguzior@desmaraisllp.com

On Sep 11, 2014, at 11:33 PM, "Dustin Guzior" <DGuzior@desmaraisllp.com> wrote:

Alix,

I expect to receive the search protocol that your team committed to provide prior to our next call. Please let me know if that is no longer possible and let me know why.

Dustin F. Guzior
Desmarais LLP
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622
Dguzior@desmaraisllp.com

Begin forwarded message:

> **From:** "McCown, Alexandra S." <amccown@cgsh.com>
> **Date:** September 11, 2014 at 10:57:05 PM EDT
> **To:** Dustin Guzior <DGuzior@desmaraisllp.com>,
> "Rozenberg, Inna" <irozenberg@cgsh.com>
> **Cc:** "Herrington, David H." <dherrington@cgsh.com>,
> Jonas McDavit <JMcDavit@desmaraisllp.com>
> **Subject: RE: Constellation v. TWC - Subpoena to NNI**
>
> Dustin,
>
> Inna is out of the office today and tomorrow, but the counsel for Rockstar who have been participating in the confidentiality review process are Tom Werner, Ellisen Turner, and James Milkey at Irell & Manella.
>
> Best,
> Alix
>
> _____
>
> Alexandra S. McCown
> Cleary Gottlieb Steen & Hamilton LLP
> Assistant: mbosco@cgsh.com
> One Liberty Plaza, New York NY 10006
> t: +1 212 225 2759 | f: +1 212 225 3999
> www.clearygottlieb.com | amccown@cgsh.com
>
>
> **From:** Dustin Guzior
> [mailto:DGuzior@desmaraisllp.com]
> **Sent:** Thursday, September 11, 2014 4:54 PM
> **To:** Rozenberg, Inna

**Cc:** Herrington, David H.; McCown, Alexandra S.; Jonas McDavit
**Subject:** RE: Constellation v. TWC - Subpoena to NNI

Inna,

I spoke with Peter Ayers (counsel to Rockstar Bidco LP, Rockstar Bidco GP LLC, and Rockstar Consortium LLC, the GP that controls Rockstar Consortium US LP).  He did not understand Rockstar to be engaged in a review of any trial exhibits from the Nortel proceedings.  Can you please provide me with your attorney contact at Rockstar so I can discuss the process?  I am trying to work through issues with those entities, now that they have surfaced, so that we minimize the burden on you and your client.  I assume that if Rockstar waived confidentiality objections with respect to the trial exhibits and dep transcripts, that would make your like substantially easier in terms of producing that material to us quickly.  Is that correct?

Thanks,

Dustin F. Guzior

**DESMARAIS LLP**
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622

**From:** Rozenberg, Inna [mailto:irozenberg@cgsh.com]
**Sent:** Saturday, September 06, 2014 9:40 PM
**To:** Dustin Guzior
**Cc:** Herrington, David H.; McCown, Alexandra S.; Jonas McDavit
**Subject:** Re: Constellation v. TWC - Subpoena to NNI

Dustin,

While we do not agree that categories (b) and (c) represent a "set of specific documents," we are willing to work on our end to try to determine whether we could propose to you the production of specific documents and/or targeted searches that do not yield excessive results.  Of course, we are also willing to consider any suggestions you might

have for search protocols, as you mention below.  Please note that the correct name of the Nortel advisor you mention in the second sentence of your email is Global IP Law Group.

I am grateful for your statement that you will try to involve NNI as little as possible in this process.  With that in mind, we would appreciate it if you could refrain from using our correspondence to take positions on the conduct of Rockstar and other parties involved in the review process established by the confidentiality orders entered in the allocation litigation.  We are not in a position to comment specifically on each and every allegation you have made or may make in the future.  Suffice it to say that we do not agree with such allegations you made in your email below.  As I mentioned during our call on Wednesday, many purchasers, licensees and other entities specifically and heavily negotiated for confidentiality protections in various court-approved agreements and court orders concerning potential exhibits in the allocation trial.

Might I ask that we have our next call on Monday September 15 any time between 10am and 12pm?  I am out of the office on Thursday and Friday September 11 and 12.  Thank you for your flexibility.

Sincerely,

Inna Rozenberg

Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
Assistant: jclarke@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 | f: +1 212 225 3999
www.clearygottlieb.com | irozenberg@cgsh.com

On Sep 3, 2014, at 6:33 PM, "Dustin Guzior"
<DGuzior@desmaraisllp.com> wrote:


Inna,

As discussed, document categories (b)
and (c) include a set of specific
documents that we are interested in
receiving. We understand that Lazard,
Guidance IP, and
Veschi/McColgan/Cianciolo, among
others, were involved in preparation of
valuation documents related to the IP
and potentially the bids, and we are
interested in receiving those
documents. Apart from those specific
documents, a reasonable search
protocol should satisfy the requests.  I
look forward to receiving NNI's
proposal on custodians, search terms,
and privilege search terms.  During our
call, I emphasized the importance of
receiving documents related to Nortel's
enforcement and licensing of its IP prior
to bankruptcy.  We might have some
suggestions on the search protocol to
help catch those documents.

With respect to specific categories of
documents (a) and (d), I understand
that you will get back to me with NNI's
final proposal on (a) and that we should
talk to Rockstar Bidco LP's counsel
about (d).  With respect to (a), I told
you that I could agree to limit the
request to Veschi, McColgan, Riedel,
Lee, and Cianciolo, but that I needed to
reserve the right to seek other
transcripts for good cause.  We do not
presently have information suggesting a
need for other transcripts. With respect
to (d), I am delighted to learn from your
team that Rockstar Bidco LP might have
the documents that we are seeking.  If
Rockstar Bidco LP's counsel ultimately
repeats Constellation's position that
certain Data Room documents are not
in Constellation's or Rockstar's
possession, custody, or control, we will
need to discuss this issue again.

Finally, I appreciate your willingness to discuss the review of the "priority" trial exhibits with the other parties involved in the review.  We also would appreciate an update on when all of the trial exhibits will be produced at the end of September, after closing arguments.  We had previously understood that the review would be completed, at the latest, by the end of September.  I now understand date is not necessarily the end of the review.  If you could speak with the other parties and give us any sense of timing, that would be very helpful to us in determining the most efficient path forward for all parties.  If only Rockstar's review remains ongoing with respect to the 19 remaining priority exhibits, please let me know so that we can seek appropriate relief that involves NNI as little as possible.

Generally, if Rockstar's confidentiality review or confidentiality objections are at any time preventing production of material, it would be helpful to know that so we can seek appropriate relief that involves NNI as little as possible.  Rockstar and its litigation subsidiaries cannot hold up production of material on the basis of "confidentiality" when those entities negotiated a protective order in our litigation that protects confidentiality highly.  Rockstar similarly cannot insist that NNI produce redacted deposition transcripts because of confidentiality concerns.  I also reiterate that it is unlikely that any purchaser, licensee, or tax entity other than Rockstar (or its owners or subsidiaries) would object to production of material in our litigation with a blanket confidentiality designation of "attorneys' eyes only" – the highest designation available.  You did not identify any party other than Rockstar that has objected to production of confidential material in our specific case on those terms.  If that changes, please let me know.

Might we speak next Thursday at 5pm ET? It would be helpful to have NNI's proposal before the call so that I we can consider it and discuss it with TWC, if necessary.

Dustin F. Guzior
**DESMARAIS LLP**
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622

---

**From:** Dustin Guzior
**Sent:** Wednesday, September 03, 2014 1:48 PM
**To:** 'Rozenberg, Inna'
**Cc:** Herrington, David H.; McCown, Alexandra S.; Jonas McDavit
**Subject:** RE: Constellation v. TWC - Subpoena to NNI

Inna,

Please find below an agenda to help guide our call at 2:30pm ET today.

1. Production of trial exhibits
   a. Previous indication that review process could take until end of September. Is NNI still on track to complete review by end of September?
   b. Ten of the 48 priority exhibits produced, 19 identified as de-designated and posted on docket, 19 remain outstanding. Timeline?
   c. It is understood that there might be some trial exhibits that also fall within other requests.

2. Specific categories of documents.
   a. unredacted deposition transcripts

b. internal Nortel valuation documents for the residual IP, including documents concerning Nortel's enforcement of the IP and valuation of the IP before bankruptcy

c. internal Nortel evaluation of bids for the residual IP, including bids received before the formal auction process (e.g., the stalking horse bid from Google)

d. documents that Nortel made available to qualified bidders before and during the auction process (in what you refer to as the "Data Room")

3. NNI's position with respect to potentially privileged documents.

    a. Internal Nortel documents, bankruptcy trustee controls privilege

    b. Documents shared with qualified bidders, including Rockstar Bidco LP

    c. Documents transferred to Rockstar Bidco LP, but not shared with qualified bidders (if any exist)

    d. Search terms to reduce any burden from (a)

4. NNI's position with respect to confidentiality.

    a. Protective Order and blanket designation

    b. Bankruptcy Court order

    c. Parties other than Rockstar that are insisting on review before production even

with a blanket
designation

d. Letter to parties
requiring notice as
efficient solution

5. To the extent Nortel is willing to
make a production beyond
what is reflected in Ms.
Rozenberg's August 21 e-mail,
what is the timeline for that
production?

6. To the extent Nortel is going to
request reimbursement for
costs and fees, what is a best
estimate for the tasks specific
to this subpoena response and
not incurred at Rockstar's
insistence?

We might not get through all of that
material, but those are the outstanding
issues as I see it.

Dustin F. Guzior
**DESMARAIS LLP**
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622

---

**From:** Rozenberg, Inna
[mailto:irozenberg@cgsh.com]
**Sent:** Thursday, August 28, 2014 2:55
PM
**To:** Dustin Guzior
**Cc:** Herrington, David H.; McCown,
Alexandra S.; Jonas McDavit
**Subject:** RE: Constellation v. TWC -
Subpoena to NNI

Dustin,

We strongly disagree with the
inflammatory and inaccurate
statements you make in your email
below.  However, as a non-party
debtor, we are not in a position to
waste time and money on these lengthy
email exchanges, the sole reason for
which appear to be your desire for

litigation posturing.  We think a call would be a more productive forum for discussing these issues, and are available on Wednesday September 3 at 2:30 p.m.  Let's use the following dial-in:  877-492-4010; passcode 212-225-2972.

--Inna

_____

Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
Assistant: jclarke@cgsh.com, jkiefer@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 | f: +1 212 225 3999
www.clearygottlieb.com | irozenberg@cgsh.com

**From:** Dustin Guzior [mailto:DGuzior@desmaraisllp.com]
**Sent:** Thursday, August 28, 2014 2:01 PM
**To:** Rozenberg, Inna
**Cc:** Herrington, David H.; McCown, Alexandra S.; Jonas McDavit
**Subject:** Re: Constellation v. TWC - Subpoena to NNI

Inna,

We do not agree that a subpoena served on Rockstar Bidco alleviates any concerns. Constellation represented that it coordinated with its parent entities to locate documents responsive to our requests, and that they were unable to locate the requested documents in many instances. We would welcome news from Constellation's parent entities that they do in fact have the requested documents and will produce them. Until then, we need to proceed based on the representation that those entities do not have the requested documents. These are precisely the corporate shell games that we expressed concern about on our first call with you and David Herrington. Moreover, although a minor point, the near-instantaneous

transfer of information about a subpoena that has yet to be served or was served only moments ago further underscores the level of strategic coordination between Constellation and NNI. Since you seem to have better access to them than we do, perhaps you can tell me if they are correcting their representation with respect to not having certain relevant documents in their possession, custody, or control.

I believe the record is plain on TWC's substantial narrowing of the document requests from the subpoena to discrete categories of documents for which we can articulate a compelling reason that we need NNI to produce the documents.  I also believe the record is plain that a protective order has been entered in this case that allows NNI to produce documents with the highest level of confidentiality protection. I have also explained to you that we would accept a blanket designation, with the burden of identifying potential documents for de-designation shifted to us. We have agreed to all of that to substantially alleviate any burden on NNI. What we want is for you to simply give to us many non-privileged documents that are figuratively - and literally in many cases - sitting at your finger tips.

Finally, your explanation of the burden on NNI from producing responsive documents is still largely abstract. The only explanation I can understand is confidentiality and privilege. You provide no other explanation.

With respect to confidentiality, we have explained why that is not a genuine issue and have agreed to a blanket designation to alleviate burden on NNI. To the extent Constellation/Rockstar are not willing to accept the highest level of confidentiality under the protective order they negotiated with us, that is, again, an issue with them and a burden imposed by them. I find it

implausible that tax examiners are holding your feet to the fire on production in a patent infringement case, but please let me know if I am incorrect.

With respect to privilege, we are open to discussing with you appropriate search terms to identify potentially privileged documents for which the bankruptcy trustee now controls the waiver and assertion of the potential privilege. THAT privilege has nothing to do with anyone but NNI. Please let me know whether the trustee is choosing to assert it and we can discuss how to minimize any burden if the trustee is asserting it.

With respect to potentially privileged documents transferred to Rockstar, it is our position that any privilege or work product immunity that might have existed for those documents was long ago destroyed by the sharing of that information with dozens of qualified bidders, many of which were potential adversaries to the patents being sold and ultimate winner of the auction.

We would like you to clearly articulate NNI's position with respect to each set of potentially privileged material so that we can include that issue in our motion to compel in the Middle District of North Carolina. We have now researched the issues thoroughly, and we are on solid ground given our substantial narrowing of our document requests, willingness to alleviate burden from confidentiality and privilege review, and inter meddling from Constellation's counsel.

I welcome a call to discuss NNI's position with respect to the four categories of documents that you referenced in the last paragraph of your email, and I also would welcome a conversation with respect to privilege. We have done our best to narrow our requests in response to your concerns,

but we cannot accept that NNI's only committed response to the subpoena is something it is doing for the bankruptcy court in any event (something for which you appear to demand that TWC reimburse NNI in order to receive complete copies of eight documents you produced).

Please let's schedule a call for next Wednesday after 2pm ET so that you have adequate time to gather complete responses to the issues above. Let me know if your schedule allows that.

Dustin F. Guzior
Desmarais LLP
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622
Dguzior@desmaraisllp.com

On Aug 28, 2014, at 1:13 PM, "Rozenberg, Inna" <irozenberg@cgsh.com> wrote:

Dustin,

TWC has chosen to serve a lengthy and overbroad subpoena on NNI, which is a liquidating debtor in a chapter 11 case, an entity with very few remaining employees, and a non-party to your litigation with Rockstar.  Unfortunately, our efforts to cooperate with you do not seem to have caused you to narrow (or even defer) your requests.

Moreover, as we have explained, it is plain that many of the documents you are seeking are in the

possession of parties to the litigation or their affiliates, in particular Rockstar Bidco.  Indeed, I understand you have now served a subpoena on Rockstar Bidco.  I assume that takes care of this issue.

As we have also explained, documents responsive to many of your requests are contained in the over 2000 trial exhibits which we will be producing.  Until you have reviewed those exhibits and determined if there is anything further to request, there is no justification for putting NNI through the substantial burden of searching for and reviewing additional documents.

The burden is particularly high here because of the confidentiality and/or privilege issues involved.  As you know, NNI is not the only Nortel estate, and there are numerous parties involved in the allocation litigation.  I have already directed you to the confidentiality orders in place in the allocation litigation.  As you can see, the Responding Parties include Rockstar Bidco and other purchasers, license agreement counter-parties, and tax

authorities; and Confidential Information includes lists of encumbrances and licensees, royalty rates, infringement targets, patent claims charts, and many other items.  You must also be aware of the confidentiality clauses in the court-approved ASA with Rockstar Bidco and certain agreements with other purchasers.

I will call you about the 4 items that you say you "need NNI to produce."  Let me know when you are available.

Sincerely,
Inna Rozenberg

_____
_____
_____
Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
Assistant: jclarke@cgsh.com, jkiefer@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 | f: +1 212 225 3999
www.clearygottlieb.com | irozenberg@cgsh.com

**From:** Dustin Guzior [mailto:DGuzior@desmaraisllp.com]
**Sent:** Monday, August 25, 2014 8:48 PM
**To:** Rozenberg, Inna
**Cc:** Herrington, David H.; McCown, Alexandra S.; Jonas McDavit
**Subject:** RE: Constellation v. TWC - Subpoena to NNI

Inna,

Your e-mail does not substantively engage with the points raised in my August 22, 2014 e-mail.  We have been told by Constellation's counsel that neither Constellation nor Rockstar has in its possession, custody, or control the enumerated documents.  We are not discussing what they "should have," but rather what they have told us they do not have.  Your repeated position that we should get documents from Rockstar or Constellation is, in fact, undermined by Rockstar and Constellation not actually having the documents that you keep telling me they "should have."

While I appreciate Nortel's production of 18 documents, there is substantial additional discovery that TWC needs to receive from NNI.  It appears that I did not misunderstand your August 21, 2014 e-mail.  I asked for confirmation that Nortel would not produce the unredacted deposition transcripts without TWC agreeing to cover fees and costs.  You confirmed that.  Unless TWC agrees to cover

those fees and costs (and prejudice itself with respect to future requests for deposition transcripts), NNI will not be producing anything other than the full set of trial exhibits that it has already agreed to produce (a review process that NNI must complete in the course of the bankruptcy proceedings regardless of the subpoena).  With respect to the trial exhibits that NNI has already produced, I continue to be confused by your representation that NNI identified the "majority" of the requested exhibits on the bankruptcy docket.  NNI identified 19 of the 48 priority exhibits as documents that, as I understand it, were de-designated confidential in the course of bankruptcy proceedings with which you are closely involved.

Finally, you repeatedly reference the "Data Room" and the documents made available in the "Data Room." You are the one person so far that has confirmed the existence of many of the documents we requested and of a "Data Room" that contains them.  We do not understand why those documents

cannot be produced to us with minimal burden on NNI. You have a couple times referred abstractly to a review burden, and yet we do not have an understanding of what the review burden is and whether a burden exists apart from one created by Rockstar. If Rockstar will not produce documents that you keep saying they "should have," and is demanding of NNI a full-scale review, shouldn't NNI be asking Rockstar to cover the fees and costs associated with the review? As we understand it, you have many responsive documents that could be produced to us in short order, but you are not producing them because of a review that must be performed for Rockstar. If that is not correct, please clarify and explain to us what substantial burden is on Nortel apart from a burden created by Rockstar. Apart from Rockstar, you have mentioned only "tax" entities in an abstract fashion, and we do not believe that is a reasonable explanation with respect to many of the patent-related documents that we have requested. We also do not believe that the order from the bankruptcy court

related to confidential material applies to production of documents in separate litigation in which the documents can be produced with the highest level of confidentiality designation.

We have many times now explained to you that we need NNI to produce: (1) the unredacted deposition transcripts, (2) the internal Nortel valuation documents for the residual IP, including documents concerning Nortel's enforcement of the IP and valuation of the IP before bankruptcy, (3) the internal Nortel evaluation of bids for the residual IP, including bids received before the formal auction process (e.g., the stalking horse bid from Google), and (4) the documents that Nortel made available to qualified bidders before and during the auction process (in what you refer to as the "Data Room").  We have provided you with ample explanation for why NNI must produce that material, including because TWC believes much of that material is uniquely in NNI's possession and because Constellation and Rockstar have said they do not have documents that you keep telling us

they "should have."  TWC has, in the spirit of great cooperation, increasingly narrowed its document requests to encompass only those documents that TWC believes it must receive from NNI in order to obtain full discovery and defend itself against patents from Nortel's portfolio, patents that Nortel's creditors have benefitted from greatly.  We do not think it is proper for NNI to demand that TWC cover fees and costs associated with document production, but TWC stands ready to consider it if a court should determine it is necessary in whole or in part.  TWC believes that if any party should cover fees and costs other than NNI, that party is Rockstar and/or Constellation.

Unfortunately, we appear to be at an impasse with respect to NNI's production, apart from the full set of trial exhibits that NNI has already agreed to produce.  I would be happy to learn that is not the case.

Dustin F. Guzior
**DESMARAIS LLP**
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622

**From:** Rozenberg, Inna [mailto:irozenberg@cgsh.com]
**Sent:** Monday, August 25, 2014 6:36 PM
**To:** Dustin Guzior
**Cc:** Herrington, David H.; McCown, Alexandra S.; Jonas McDavit
**Subject:** Re: Constellation v. TWC - Subpoena to NNI

Dustin,

I am writing in response to the emails you sent me the evenings of August 21 and 22.  While we have no obligation to respond by the artificial, one business day deadline you have demanded, as a matter of courtesy and in an ongoing spirit of cooperation, we have spent substantial time over the weekend investigating the matter and have the following comments.

Unless otherwise specified, all capitalized terms used herein are as defined in the Asset Sale Agreement (the "ASA") dated as of June 30, 2011 between Rockstar Bidco, LP (together with its affiliates, "Rockstar") and various Nortel entities.

With respect to the document list in your August 22 email:

1.      Pursuant to Section 3.3 of the ASA,

the Commitment Letters are something that Purchaser delivered to Sellers.  Therefore, we have a good faith reason to believe that Rockstar would be able to produce such documents.  We have also confirmed that the Commitment Letters were in the Data Room, which is part of the Assets that Rockstar purchased.

2.    Pursuant to Section 5.27 of the ASA, the Optioned Licenses are something that would have been entered into between Purchaser and Sellers.  Therefore, to the extent such licenses were executed, Rockstar should have an equal or better ability to produce such documents as well.

3.    The "Side Agreement" you reference is one of the trial exhibits, which we will be producing.  However, we fail to see the relevance of this document; as described in Dkt. No. 5202, this is an agreement executed by "the Debtors and certain of the other Sellers…to address certain issues among the Sellers relating to the transaction contemplated by the Stalking Horse Agreement, including the allocation of certain costs incurred…"

4.      We are not sure what exactly you are seeking here.  Please note, however, that copies of license agreements are part of the Patent Related Documentation and there are summaries and lists of license counterparties in the Data Room, both of which are part of the Assets that Rockstar purchased.

5.      Pursuant to Section 5.19 of the ASA, the Option Trigger Notice is something that the relevant Seller would have provided to Purchaser.  Therefore, although we are not aware of any such notices, to the extent they were provided, Rockstar should have an equal or better ability to produce such documents as well.

6.      Pursuant to Section 5.13 of the ASA, the Closing Date License Agreement is something that Sellers granted to Purchaser.  Therefore, by definition, Rockstar should have it (as they would have any other license granted by a Nortel entity to Rockstar).  We have also confirmed that the form of agreement is in the Data Room, which is part of the Assets that Rockstar purchased, and executed versions of the agreement are trial exhibits, which we will

be producing.
7 and 9.  We note that
we never said that
Rockstar had
documents "concerning
the options for
monetizing Nortel's
patent portfolio" or the
"IPCo model."  Some of
these documents are
contained in the trial
exhibits which we will
be producing.  As
previously indicated,
considering the burden
and complexity of
conducting searches
and coordinating with
Rockstar and other
affected parties to
review for
confidentiality and/or
privilege concerns, we
think it is premature for
you to be making any
further requests on
these subjects until the
production of the trial
exhibits is complete.
8.  See the response to
7 and 9 above.  In
addition, some of these
documents are part of
the Patent Related
Documentation, which
is part of the Assets
that Rockstar
purchased.

The descriptions above
make clear that you
have absolutely no
basis to claim that your
"confidence in NNI's
representations" is
undermined.  In
particular, we never
broadly stated that
"NNI likely does not
have responsive
documents that cannot
also be obtained from

Constellation or Rockstar." I direct you to NNI's individualized responses and objections to TWC's 69 document requests, which highlight which of those items we believe would be in Rockstar's possession. You also claim that NNI might be your only source for the documents listed above, but you have failed to explain whether you have sought these documents from all Rockstar affiliates first before demanding them from NNI. To be clear, to the extent the documents are in any Rockstar affiliate's possession, it would be an extraordinary waste of effort and undue burden for NNI to produce those same documents, as NNI would have to consult with Rockstar (and potentially other affected parties) on any confidentiality and/or privilege concerns before making a production.

With regard to your August 21 email, it seems that you have misunderstood my August 21 email. First, as I wrote, "NNI can agree to produce the undesignated portions of the deposition transcripts of Veschi, McColgan, Lee, Riedel, and Cianciolo, following

a review for redactions to be undertaken with Rockstar and other affected parties, but only on the condition that:  (a) TWC will not seek from NNI the production of any other deposition transcripts or portions thereof, and (b) TWC will reimburse NNI for any costs it has incurred in responding to TWC's subpoena, from the time that such subpoena was served until the conclusion of the litigation between Constellation and TWC."  Please let me know as soon as possible whether you agree so that we can begin the review process rather than wasting time on these email exchanges.

Your August 21 email also makes some inaccurate statements about trial exhibits.  First of all, NNI has produced certain portions of deposition transcripts and, as set forth above, has agreed to produce certain additional transcript portions as well.  Therefore, it is not true that NNI has only agreed to produce trial exhibits.  Furthermore, as you know, we have already begun to produce trial exhibits, prioritizing the list that you previously provided to us.  Indeed, we have either produced or

directed you to publicly available sources for the majority of such exhibits.  For the remainder, we are in the process of consulting with Rockstar and/or other affected parties on any confidentiality and/or privilege concerns they might have.  Please let us know as soon as possible whether you wish for us to request that those parties expedite their review process with respect to your "priority list" of exhibits.

Finally, as I indicated in my August 21 email, we think it is premature for you to be making further requests for documents concerning the subject matter of items that might be covered by our production of trial exhibits.  After such production, we can discuss whether there are any additional documents TWC seeks from NNI, the relevance of which justifies the burden on NNI of undergoing a complex collection and review effort.

--Inna Rozenberg
_____
_____
_____
_____

Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
Assistant:

jclarke@cgsh.com
One Liberty Plaza, New
York NY 10006
t: +1 212 225 2972 | f:
+1 212 225 3999
www.clearygottlieb.co
m |
irozenberg@cgsh.com

---

**From**: Dustin Guzior
[mailto:DGuzior@desma
raisllp.com]
**Sent**: Friday, August
22, 2014 08:35 PM
**To**: Rozenberg, Inna
**Cc**: Herrington, David
H.; McCown, Alexandra
S.; Jonas McDavit
<JMcDavit@desmaraisll
p.com>
**Subject**: RE:
Constellation v. TWC -
Subpoena to NNI


Inna,

As I previously
informed you, TWC has
had difficulty securing
the production of basic
documents from
Constellation and/or
Rockstar.  Those basic
documents include
certain documents that
are defined in the June
30, 2011 Asset Sale
Agreement between
Nortel and Rockstar
Bidco and Nortel
documents related to
those assets.  You have
many times told me that
Constellation and/or
Rockstar is the
appropriate party from
which to receive that
discovery and have
many times told me that
production of those
documents by NNI

would be duplicative and unnecessary.

This afternoon, after several document requests directed to Constellation, we held a meet and confer with Constellation to discuss specific documents that TWC requested for priority production from Constellation and/or Rockstar. During that meet and confer, Constellation's counsel informed us that neither Constellation nor its parent Rockstar can locate in its possession, custody, or control the following documents:

1) The "Commitment Letters" delivered by Rockstar to Nortel referenced in section 3.3 of the Asset Sale Agreement.

2) The "Optioned Licenses" entered into with Rockstar or one or more of Rockstar's limited partners under section 5.27 of the Asset Sale Agreement.

3) The "Side Agreement" referenced in paragraph 57 of Dkt. No. 5202 in *In re Nortel Networks, et al.*, Case No. 09-10138-KG

(Bankr. D. Del.).

4) The documents referenced in paragraph 102 of Dkt. No. 5202 in *In re Nortel Networks, et al.*, Case No. 09-10138-KG (Bankr. D. Del.).

5) Any "Option Trigger Notice" (as defined in section 5.19 of the Asset Sale Agreement).

6) The Closing Date License Agreement (as defined in the Asset Sale Agreement), including any license granted by a Nortel Seller to Rockstar Bidco, LP (on or after the Closing Date) pursuant to Section 5.13(a) of the Asset Sale Agreement.

7) Documents concerning the options for monetizing Nortel's patent portfolio, including the "comprehensive business plan" for the formation of a Nortel "IPCo." (*See, e.g., In re Nortel Networks, et al.*,

Case No. 09-10138-KG, Dkt. No. 13551 (Bankr. D. Del); Decl. of John Ray III, ¶¶ 49-52; Reply Decl. of John Ray III, ¶¶ 7-11.)

8) Documents related to mapping patent claims of the Nortel's Patent Portfolio to markets for potential enforcement and licenses, and screening of those patents for encumbrances. (*See In re Nortel Networks, et al.*, Case No. 09-10138-KG, Dkt. No. 13551 (Bankr. D. Del.).)

9) The Nortel "IPCo" model.  (See In re Nortel Networks, et al., Case No. 09-10138-KG, Dkt. No. 13551, n.243 (Bankr. D. Del.).)

With respect to all of those documents, it has become clear to us that NNI might be our *only* source for those highly relevant documents.  With respect to (7)-(9), Constellation's counsel informed us that they were frankly confused

as to why we were requesting the documents of them and that we would need to get the documents from Nortel.  All of those documents are requested of NNI in TWC's subpoena to NNI.

Please let me know no later than Monday, August 25 whether NNI will produce those documents now that Constellation and Rockstar have confirmed that they do not have them.  Please note that this development also significantly undermines our confidence in NNI's representations that NNI likely does not have responsive documents that cannot also be obtained from Constellation or Rockstar.  Please let me know no later than Monday, August 25 whether NNI's position with respect to its production - expressed in your August 21 e-mail to me – has changed in light of this development.  If your position does not change, please note that we will need to seek enforcement of our subpoena and issue additional subpoenas.  I remind CGSH of the document preservation obligations of a third party that is informed of ongoing litigation for which it might need to produce documents.

As we continue to learn of specific documents or document categories that Constellation or Rockstar claims not to have or claims that we should receive from Nortel, we will, of course, keep you apprised of those developments.

Have a nice weekend,

Dustin F. Guzior
**DESMARAIS LLP**
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622

---

**From:** Rozenberg, Inna [mailto:irozenberg@cgsh.com]
**Sent:** Thursday, August 21, 2014 9:31 PM
**To:** Dustin Guzior
**Cc:** Herrington, David H.; McCown, Alexandra S.
**Subject:** Re: Constellation v. TWC - Subpoena to NNI

Dear Dustin,

With respect to deposition transcripts, NNI can agree to produce the undesignated portions of the deposition transcripts of Veschi, McColgan, Lee, Riedel, and Cianciolo, following a review for redactions to be undertaken with Rockstar and other affected parties, but

only on the condition that:  (a) TWC will not seek from NNI the production of any other deposition transcripts or portions thereof, and (b) TWC will reimburse NNI for any costs it has incurred in responding to TWC's subpoena, from the time that such subpoena was served until the conclusion of the litigation between Constellation and TWC.

With respect to the documents you request in items 2-5 in your email below, we would refer you to NNI's Objections to TWC's Subpoena, dated July 14, 2014.  Among other objections, items 4-5 are covered by General Objection #9 in that the request seeks documents that can be provided to TWC from Constellation and/or Rockstar.  Furthermore, documents concerning the subject matter of items 2-3 might be covered by our response to document request no. 49, which seeks production of trial exhibits from the allocation litigation.  Until the production of such exhibits is complete, we think it is premature for you to be making any further such requests.

Your request for the schedules, exhibits, and attachments to the Asset

Sale Agreement is duplicative of your document requests nos. 2-3. We refer you to our objections to such requests, and to our General Objections #4 and #5, which explain that in the objections to the Subpoena served by Constellation and Rockstar, they have reserved the right to seek all available remedies, including disqualification of counsel and damages, to the extent any of their confidential or privileged information is produced or obtained. That, and nothing else, is what I was referring to during our call when I raised the issue of NNI's potential liability for production of these materials. I do not otherwise agree with how you have characterized our conversation on this point, nor do I endorse the other statements you make in the second paragraph of your email below.

Sincerely,
Inna Rozenberg

Inna Rozenberg
Cleary Gottlieb Steen &
Hamilton LLP
Assistant: jclarke@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 |
f: +1 212 225 3999
www.clearygottlieb.co

m
| irozenberg@cgsh.com

On Aug 20, 2014, at 8:02 PM, "Dustin Guzior" <DGuzior@desmaraisllp.com> wrote:

Inna,

I write to follow up on our August 14 call.  Please let me know NNI's position with respect to the following documents: (1) unredacted deposition transcripts (prioritizing Veschi, McColgan, Lee, Riedel, and Cianciolo); (2) documents related to

Nortel's internal valuation of the residual IP (including material exchanged with Global IP and Veschi and McColgan's internal reports); (3) documents related to Nortel's consideration of Google's stalking horse bid and bids made prior to Google's $900 million offer; (4) the material that Nortel made available to qualified bidders

prior to the auction of the residual IP; and (5) documents concerning Nortel's licensing commitments to standards development organizations and other encumbrances on the residual IP.

With respect to my request for the schedules, exhibits, and attachments to the Asset Sale Agreement, when we spoke on August 14 you

expressed that NNI would not produce those documents and you expressed concern that producing those – and other – documents could potentially lead to action against NNI by Constellation and/or Rockstar.  While we understand your concerns from Constellation and Rockstar's threats to seek sanctions and other remedies against

producing parties, we believe that Constellation and Rockstar are improperly discouraging third parties from complying with document requests, especially because the protective order in our case allows parties to designate documents attorneys' eyes only and contains a standard clawback provision. Plea

se confirm that NNI will not produce the requested documents.

Dustin

Dustin F. Guzior
**DESMARAIS LLP**
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622

**From:** Rozenberg, Inna [mailto:irozenberg@cgsh.com]
**Sent:** Thursday, August 14, 2014 12:56 PM
**To:**

44

Dustin Guzior

**Subject:** RE: Constellation v. TWC - Subpoena to NNI

ok

_____
_____
_____
_____
_____
_____
_____
_____
_____
Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
Assistant: jclarke@cgsh.com, jkiefer@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 | f: +1 212 225 3999
www.clearygottlieb.com | irozenberg@cgsh.com

**From:** Dustin Guzior [mailto:DGuzior@desmaraisllp.

com]
**Sent:** Thursday, August 14, 2014 12:55 PM
**To:** Rozenberg, Inna
**Subject:** RE: Constellation v. TWC - Subpoena to NNI

Yes, thanks. I will call your office if that's ok.

Dustin F. Guzior
**DESMARAIS LLP**
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622

**From:**
Rozenb
erg,
Inna
[mailto:
irozenb
erg@cg
sh.com]
**Sent:**
Thursda
y,
August
14,
2014
12:54
PM
**To:**
Dustin
Guzior
**Subjec
t:** RE:
Constell
ation v.
TWC -
Subpoe
na to
NNI

4:30
then if
that's
ok.

_____
_____
_____
_____
_____
_____
_____
_____
Inna
Rozenb
erg
Cleary
Gottlieb
Steen &
Hamilton
LLP
Assistan
t:
jclarke@
cgsh.co
m,
jkiefer@
cgsh.co
m
One
Liberty

Plaza, New York NY 10006 t: +1 212 225 2972 | f: +1 212 225 3999 www.clearygottlieb.com | irozenberg@cgsh.com

**From:** Dustin Guzior [mailto:DGuzior@desmaraisllp.com]
**Sent:** Thursday, August 14, 2014 12:47 PM
**To:** Rozenberg, Inna
**Subject:** RE: Constellation v. TWC - Subpoena to NNI

Thanks. Would it be possible to do 4? I have a client meeting until 3:30.

Dustin F. Guzior
**DESMARAIS LLP**
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622

---

**From:** Rozenberg, Inna [mailto:irozenberg@cgsh.com]
**Sent:** Thursday, August 14, 2014 12:41 PM
**To:** Dustin Guzior
**Subject:** RE: Constellation v. TWC - Subpoena to NNI

Sure. How

about 3?

_____
_____
_____
_____
_____
_____
_____
_____
_____
Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
Assistant: jclarke@cgsh.com, jkiefer@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 | f: +1 212 225 3999
www.clearygottlieb.com | irozenberg@cgsh.com

---

**From:** Dustin Guzior [mailto:DGuzior@desmaraisllp.com]
**Sent:** Thursday, August 14, 2014 12:39 PM
**To:**

Rozenberg, Inna

**Subject:** RE: Constellation v. TWC - Subpoena to NNI

Inna,

Might you be available to discuss NNI's response to TWC's subpoena later this afternoon? I think it would be easier to speak. Should not take more than 10-15 minutes.

Thanks,

Dustin F. Guzior

**DESMARAIS LLP**

230 Park Avenue New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622

---

**From:** Rozenberg, Inna [mailto:irozenberg@cgsh.com]
**Sent:** Friday, August 01, 2014 1:49 PM
**To:** Dustin Guzior
**Cc:** Herrington, David H.; McCown, Alexandra S.; Jonas McDavit
**Subject:** RE: Constellation v. TWC - Subpoena to NNI

Dustin,

We will continue to review and analyze the exhibits you list below.

--Inna

_____
_____
_____
_____
_____
_____
_____
_____
Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
Assistant: jclarke@cgsh.com, jkiefer@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 | f: +1 212 225 3999
www.clearygottlieb.com | irozenberg@cgsh.com

---

**From:** Dustin Guzior [mailto:

DGuzior@desmaraisllp.com]

**Sent:** Friday, August 01, 2014 1:36 PM

**To:** Rozenberg, Inna

**Cc:** Herrington, David H.; McCown, Alexandra S.; Jonas McDavit

**Subject:** RE: Constellation v. TWC - Subpoena to NNI

Inna,

Thank you for the information. It is difficult for us to know which trial exhibits are which docket entries,

so we appreciate your explanations.

The following trial exhibits remain:

11150
11173
22097
22098
22099
22102
22106
22108
40003
40035
43655
43658
43715
44142
45066
47150
47264
48685
50403
50634
50639
50711
50754
50762
50766
50783
50797
50823
50825

We assume that those exhibits are part of the set that you are

currently reviewing and analyzing, but please let me know if that is not correct.

Thanks,

Dustin F. Guzior
**DESMARAIS LLP**
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622

---

**From:** Rozenberg, Inna [mailto:irozenberg@cgsh.com]
**Sent:** Friday, August 01, 2014 9:53 AM
**To:**

Dustin Guzior

**Cc:** Herrington, David H.; McCown, Alexandra S.; Jonas McDavit

**Subject:** RE: Constellation v. TWC - Subpoena to NNI

Dear Dustin,

I wanted to follow up on your request below that NNI prioritize the production of 48 trial exhibits. Although it is no "small task" as you claim, in the spirit of cooperation, we have

been reviewing and analyzing the exhibits to see whether their production can be prioritized. We have discovered that many of them are publicly available, and provide you below with the details of how to access such documents.

? 21003

– This is

the Master R&D Agreement, for which we have already

provided details on how to access. ?21281 and 21282 —

These are the 63rd and 71st Reports of the Canadian

Monitor, which are available at http://documentcentr

e.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.21509

?

–

This is a hearing transcript, for which access det

ails can be found at docket entry #5939.22084 — This

is the complaint (entry #1) in a case entitled Nort

el Networks Inc. v. Foundry Networks Inc., No. 1:01-

cv-10442-WGY, D. Mass. 40725 — See docket entry #520

?  2.40777 - This is the complaint (entry #1) in a case

entitled

Nortel

Networks

Inc.

v.

Extreme

Networks

I

nc., No. 1:01-cv-10443-EFH, D. Mass.

? 40788 – This

i
s

t
h
e

a
m
e
n
d
e
d

c
o
m
p
l
a
i
n
t

(
e
n
t
r
y

#
4
)

i
n

a

c
a
s
e

e
n
t
i
t
l

ed

Nortel

Networks

Limited

v.

Kyocera

Wireless

Corp.

, No. Case 3:02-cv-00032-K, N.D. Tex. ? 48716 — This is

the

same

document

as

referred

to

in

your

request

no

.

54.

We have just discovered that the version foun

dat docket entry #1796 may not include an exhibit t

h
a
t

i
s

i
n
c
l
u
d
e
d

i
n

t
h
e

v
e
r
s
i
o
n

t
h
a
t

i
s

t
h
e

t
r
i
a
l

e
x
h

ibit.

We are continuing to investigate the situatio

?

n. 4974 — Available at http://ctf09.info/wp-content/

uploads/Documents/EYCan-2011-09/project@20copperhead

@5cenglish@5cmotion@20materials@5c0900.@20motion@20re

c
o
r
d
@
2
0
r
e
@
2
0
c
a
n
a
d
i
a
n
@
2
0
s
a
l
e
s
@
2
0
p
r
o
c
e
s
s
@
2
0
o
r
d
e
r
@
2
0
r
e
g

arding@20certain@20patents@20and@20other@20assets@5c

motion record ret may 2 2011 cdn sales process order regard cer

tain patents other assets.pdf

? 50137 – See docket entry

? #1796.50138 — See docket entry

? #1928.50153 — See doc

ket entry #2787.

? 50155

— See docket entry #294.

? 50182

— See docket entry #507.50518

— This is a reply brie

?

f (entry #273) in a case entitled Vonage Holdings Co

r
p
.

v
.

S
B
C

I
n
t
e
r
n
e
t

S
e
r
v
i
c
e
s
,

I
n
c
.

e
t

a
l
.
,

N
o
.

4
:
0
4
-

cv-00548-Y, N.D. Tex.

Please also note that documents previously referred to as exhibits 50800, 50803, and 50806 are no longer trial exhibits in the allocation litigation.

We trust that the foregoing

information is useful to you.

Sincerely,
Inna Rozenberg

_____
_____
_____
_____
_____
_____
_____
_____

Inna Rozenberg
Cleary Gottlieb Steen & Hamilton LLP
Assistant: jclarke@cgsh.com, jkiefer@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2972 | f: +1 212 225 3999
www.clearygottlieb.com | irozenberg@cgsh.com

**From:** Dustin Guzior [mailto:DGuzior@desmaraisllp.

com]

**Sent:**
Saturday, July 19, 2014 11:17 AM

**To:**
Rozenberg, Inna

**Cc:**
Herrington, David H.; McCown, Alexandra S.

**Subject:** Re: Constellation v. TWC - Subpoena to NNI

Inna,

Thanks for your response.

You had mentioned that the total volume of trial exhibits could be in the range of 2-3k. We have

limited that universe to a mere 48 documents to be treated with priority. You did commit on our call to letting us know a date certain by which we might expect the short list of prioritized exhibits, but I understand you to be expressing now that providing a date is not possible. Given that we are talking about 48 docum

ents, it would be disappointing if you could not provide them well before September or at least provide a date by which we can expect them. Even with 100 confidentiality concerns per document (and I highly doubt there are that many) this is a small task by any measure.

Finally, your expression of "well before then" might

have only been conversational. At that point in our conversation, you had raised that our case was, in your view, progressing slowly. I kept contemporaneous notes, but I will, of course, accept your correction that production might not be "well before then."

Hopefully the list that we generated is of assistance to CGSH, and please

let me know if there is anything else we can do to assist NNI in complying with our subpoena.

Have a nice weekend,

Dustin F. Guzior Desmarais LLP 230 Park Avenue New York, New York 10169 O: (212) 808-2944 M: (347) 924-3622 Dguzior@desmaraisllp.com

On Jul 19, 2014, at 10:58 AM,

"Rozen berg, Inna" <[irozen berg@c gsh.co m](mailto:irozenberg@cgsh.com)> wrote:

Dear

Dustin,

Thank

you

for

your

email.

I

can confirm that we are endeavoring by the end of ne

xt week to produce designated portions of certain de

position transcripts (redacted for confidentiality),

in accordance with our response and objections to r

equests 51-52.

With regard to the 48 documents that

you

call

the

"Priority

Trial

Exhibits,"

as

I mentio

ned, I will have to consult with the Nortel estates

and

other

affected

parties

to

determine

whether

such

production can be prioritized. I cannot commit to l

etting you know by the end of next week a date certa

in for production, and I never said that I would pro

vide such a date.

Your email contains another inacc

uracy that must be corrected. I did say that in ligh

t
o
f
t
h
e
c
l
o
s
i
n
g
a
r
g
u
m
e
n
t
s
s
c
h
e
d
u
l
e
d
f
o
r
l
a
t
e
S
e
p
t
e
m

ber 2014, you should be receiving the public version

o
f

t
h
e

t
r
i
a
l

e
x
h
i
b
i
t
s

b
e
f
o
r
e

t
h
e

c
l
o
s
e

o
f

y
o
u
r

d
i
s
c

overy in January 2015. However, I do not recall usin

g
t
h
e
w
o
r
d
s
"
w
e
l
l
b
e
f
o
r
e
t
h
e
n
"
a
n
d
I
r
e
i
t
e
r
a
t
e
t
h
a
t

I cannot make a commitment as to production dates.

As always, please feel free to contact me with any q

uestions or comments.

Sincerely,

Inna Rozenberg

———

–
–
–
–
–
–
–

Inna Rozenberg

Cleary Gottlieb Steen & Hamilt

on LLP

Assistant:

[lgiambatista@cgsh.com](lgiambatista@cgsh.com)

One Liberty

Plaza, New York NY 10006 t: +1 212 225 2972 | f: +1

212

225

3999

www.clearygottlieb.com | irozenberg@cgs

h
.
c
o
m

**From:**
Dustin
Guzior
[mailto:DGuzior@desmaraisllp.

[com]

**Sent:** Friday, July 18, 2014 06:07 PM

**To:** Rozenberg, I

nna

**Subject:** Constellation v. TWC - Subpoena to NNI

Inn

a, This memorializes our July 16, 2014 conversation

concerning

NNI,

s

response

to

the

subpoena

from

TWC

t

o

N
N
l

i
n

t
h
e

a
b
o
v
e
-
r
e
f
e
r
e
n
c
e
d

l
i
t
i
g
a
t
i
o
n
.

W
i
t
h

r
e
s
p
e

c
t

t
o

r
e
q
u
e
s
t
s

4
8
-
-
4
9
,

w
e

u
n
d
e
r
s
t
a
n
d

t
h
a
t

N
N
I

i
s

c
u
r
r

e
n
t
l
y

u
n
d
e
r
g
o
i
n
g

a

c
o
n
f
i
d
e
n
t
i
a
l
i
t
y

r
e
v
i
e
w

o
f

t
h
e

t
r
i

al exhibits and that additional trial exhibits, whic

h
m
u
s
t

a
l
s
o

b
e

r
e
v
i
e
w
e
d

f
o
r

c
o
n
f
i
d
e
n
t
i
a
l
i
t
y
,

c
o
u
l
d

b

e

introduced

between

now

and

the

end

of

September.

You committed to providing trial exhibits on a rolli

n
g

b
a
s
i
s

a
s

t
h
e

c
o
n
f
i
d
e
n
t
i
a
l
i
t
y

r
e
v
i
e
w

p
r
o
g
r
e
s
s
e
s
,

b

u
t

y
o
u

e
x
p
l
a
i
n
e
d

t
h
a
t

y
o
u

c
o
u
l
d

n
o
t

p
r
o
v
i
d
e

a

d
a
t
e

c

e
r
t
a
i
n

b
y

w
h
i
c
h

p
r
o
d
u
c
t
i
o
n
s

w
o
u
l
d

s
t
a
r
t

o
r

b
y

w
h
i
c
h

you could produce all of the trial exhibits.

In res

ponse

to

Jonas

McDavit's

explanation

that

fact

disco

very

closes

in

January

2015,

however,

you

responded

that

you

would

be

able

to

produce

all

trial

exhibits

"well before then."

We also discussed prioritizing

review and production of certain trial exhibits.

T

he

trial

exhibits

that

should

be

reviewed

and

produc

e
d

a
s

s
o
o
n

a
s

p
o
s
s
i
b
l
e

a
r
e

l
i
s
t
e
d

b
e
l
o
w

(
t
h
e

"
P
r
i
o
r
i

t
y

T
r
i
a
l

E
x
h
i
b
i
t
s
"
)
.

Y
o
u

c
o
m
m
i
t
t
e
d

t
o

p
r
o
v
i
d
i
n
g

a

d

a
t
e

c
e
r
t
a
i
n

f
o
r

p
r
o
d
u
c
t
i
o
n

o
f

t
h
e

P
r
i
o
r
i
t
y

T
r
i
a
l

E
x
h

ibits after reviewing the list.

Please let me know

by the end of next week the date by which we can exp

ect

production

of

the

Priority

Trial

Exhibits.

With

r
e
s
p
e
c
t

t
o

r
e
q
u
e
s
t
s

5
1
-
5
2
,

w
e

u
n
d
e
r
s
t
a
n
d

t
h
a
t

N
N
I

w
i

ll produce the "designated portions" of the depositi

on

transcripts

listed

in

NNI's

formal

responses

and

objections by the end of next week.

We will review

the

designated

portions

and

discuss

the

need

for

pro

duction of the undesignated portions. With respect t

o

r
e
q
u
e
s
t
s

5
5

a
n
d

5
7
-
5
9
,

w
e

r
e
q
u
e
s
t
e
d

t
h
a
t

N
N
I

p
r
i
o
r

itize the production of particular documents.

Those

documents are listed below as Priority Trial Exhibi

ts.

As with the response to 48-49, please let us kn

o
w

b
y

t
h
e

e
n
d

o
f

n
e
x
t

w
e
e
k

a

d
a
t
e

c
e
r
t
a
i
n

b
y

w
h
i
c
h

w

e

c
a
n

e
x
p
e
c
t

t
o

r
e
c
e
i
v
e

t
h
e

P
r
i
o
r
i
t
y

T
r
i
a
l

E
x
h
i
b
i
t
s
.

Priority

Trial

Exhibits

– 48

Total

11150
11173
21003
21281
21282
21509
22084
22097
22098
22099
22102
22106
22108
40003

40035
40725
40777
40788
43655
43658
43715
44142
45066
47150
47264
48685
48716
49974
50137
50138
50153
50155
50182
50403
50518
50634
50639
50711
50754
50762
50766
50783
50797
50800
50803
50806
50823
50825

P
l
e
a
s
e

l
e
t

m

e

k
n
o
w

i
f

y
o
u

h
a
v
e

a
n
y

q
u
e
s
t
i
o
n
s
.

T
h
a
n
k
s
,

D
u
s
t
i
n

D
u

stin F. Guzior
**DESMARAIS LLP**
230 Park Avenue New York, New

York

10169

O: (212) 808-2944

M: (347) 924-3622

This

em

a
i
l

m
a
y

c
o
n
t
a
i
n

c
o
n
f
i
d
e
n
t
i
a
l

a
n
d

p
r
i
v
i
l
e
g
e
d

m
a
t
e
r
i
a

l

f
o
r

t
h
e

u
s
e

o
f

t
h
e

i
n
t
e
n
d
e
d

r
e
c
i
p
i
e
n
t
.

A
n
y

r
e
v
i
e
w

, use, or distribution by anyone other than the add

ressee is strictly prohibited. If you are not the i

n
t
e
n
d
e
d

r
e
c
i
p
i
e
n
t
,

p
l
e
a
s
e

c
o
n
t
a
c
t

t
h
e

s
e
n
d
e
r

b
y

r
e
p

l
y

e
m
a
i
l

a
n
d

d
e
l
e
t
e

a
l
l

c
o
p
i
e
s

o
f

t
h
i
s

m
e
s
s
a
g
e
.

T
h
i

s

message

is

being

sent

from

a

law

firm

and

may

con

tain

confidential

or

privileged

information.

If

you

are

not

the

intended

recipient,

please

advise

the

sender immediately by reply e-mail and delete this

message and any attachments without retaining a cop

y.

Throughout this communication, "Cleary Gottlieb

" and the " firm " refer to Cleary Gottlieb Steen & H

amilton LLP and its affiliated entities in certain

jurisdictions, and the term "offices" includes offi

ces of those affiliated entities.

This email may contain confidential and privileged material for the use of the intended recipie

nt. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message. This message is being sent from a law firm and may contain confidential or privileged inform

ation. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP

and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the address

ee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message. This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the

sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term

"offices" includes offices of those affiliated entities.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please

contact the sender by reply email and delete all copies of this message. This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and

any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this

message. This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout

this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

This email may contain confidential and privileged

material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message. This message is being sent from a law firm and

may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to

Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distrib

ution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to

Cleary Gottlieb Steen
& Hamilton LLP and
its affiliated entities in
certain jurisdictions,
and the term "offices"
includes offices of
those affiliated
entities.

This email may
contain confidential
and privileged
material for the use of
the intended recipient.
Any review, use, or
distribution by anyone
other than the
addressee is strictly
prohibited. If you are
not the intended
recipient, please
contact the sender by
reply email and delete
all copies of this
message.
This message is being
sent from a law firm
and may contain
confidential or
privileged
information. If you
are not the
intended recipient,
please advise the
sender immediately
by reply e-mail and
delete this message
and any
attachments without
retaining a copy.

Throughout this
communication,
"Cleary Gottlieb" and
the "firm" refer to
Cleary Gottlieb Steen
& Hamilton LLP and
its affiliated entities in
certain jurisdictions,
and the term "offices"

includes offices of those affiliated entities.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any
attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the

term "offices" includes offices of those affiliated
entities.


This email may contain confidential and privileged
material for the use of the intended recipient. Any
review, use, or distribution by anyone other than the
addressee is strictly prohibited. If you are not the
intended recipient, please contact the sender by
reply email and delete all copies of this message.
This message is being sent from a law firm and may
contain confidential or privileged information. If
you are not the
intended recipient, please advise the sender
immediately by reply e-mail and delete this
message and any
attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb"
and the "firm" refer to Cleary Gottlieb Steen &
Hamilton LLP and
its affiliated entities in certain jurisdictions, and the
term "offices" includes offices of those affiliated
entities.


This email may contain confidential and privileged material for the use of the
intended recipient. Any review, use, or distribution by anyone other than the
addressee is strictly prohibited. If you are not the intended recipient, please
contact the sender by reply email and delete all copies of this message.
This message is being sent from a law firm and may contain confidential or
privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and
delete this message and any
attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary
Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices
of those affiliated entities.

<Proposed Search Terms.docx>


This email may contain confidential and privileged material for the use of the intended recipient.
Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you
are not the intended recipient, please contact the sender by reply email and delete all copies of
this message.
This message is being sent from a law firm and may contain confidential or privileged
information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message

and any
attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen
& Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those
affiliated entities.