# Exhibit 2
# REDACTED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARRIS GROUP, INC., ARRIS ENTERPRISES, INC., ARRIS SOLUTIONS, INC., and GENERAL INSTRUMENT CORPORATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 14-114 (SLR) |
| v. | ) ) ) | REDACTED - PUBLIC VERSION |
| CONSTELLATION TECHNOLOGIES LLC and ROCKSTAR CONSORTIUM US LP, | ) ) ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

John M. Desmarais
Paul Bondor
Michael P. Stadnick
Jonas R. McDavit
Ameet A. Modi
Karim Z. Oussayef
Dustin F. Guzior
Alex Henriques
Edward Terchunian
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400

June 6, 2014 - Original Filing Date
June 13, 2014 - Redacted Filing Date

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARRIS GROUP, INC., ARRIS ENTERPRISES, INC., ARRIS SOLUTIONS, INC., and GENERAL INSTRUMENT CORPORATION, | ) ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) ) |
| CONSTELLATION TECHNOLOGIES LLC and ROCKSTAR CONSORTIUM US LP, | ) ) ) |
| Defendants. | ) |

C.A. No. 14-114 (SLR)

REDACTED - PUBLIC VERSION

### FIRST AMENDED COMPLAINT

Plaintiffs ARRIS Group, Inc. ("ARRIS"), ARRIS Enterprises, Inc. ("ARRIS

Enterprises"), ARRIS Solutions, Inc. ("ARRIS Solutions"), and General Instrument Corporation

("General Instrument") for their complaint, hereby demand a jury trial and allege as follows:

### THE PARTIES

1.      ARRIS is a Delaware corporation with its principal place of business located at

3871 Lakefield Drive, Suwanee, Georgia 30024.

2.      ARRIS Enterprise is a subsidiary of ARRIS and a Delaware corporation with its

principal place of business located at 3871 Lakefield Drive, Suwanee, Georgia 30024.

3.      ARRIS Solutions is a subsidiary of ARRIS and a Delaware corporation with its

principal place of business located at 3871 Lakefield Drive, Suwanee, Georgia 30024.

4.      General Instrument is a subsidiary of ARRIS and a Delaware corporation with its

principal place of business located at 3871 Lakefield Drive, Suwanee, Georgia 30024.

5.      Constellation Technologies LLC ("Constellation") is a wholly-owned subsidiary

of Rockstar Consortium US LP and a Delaware limited liability company that purports to have

its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway, Suite

Number 250, Plano, TX 75024.

6.     Rockstar Consortium US LP ("Rockstar") is a Delaware limited partnership that

purports to have its principal place of business at Legacy Town Center I, 7160 North Dallas

Parkway, Suite 250, Plano, Texas 75024.

## JURISDICTIONAL STATEMENT

7.     This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.,

and under the patent laws of the United States, 35 U.S.C. § 1 et seq.

8.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331,

1338(a), 1338(b), 1367(a), 2201(a), and 2202.

9.     This Court has personal jurisdiction over defendant Constellation by virtue of its

sufficient minimum contacts with this forum at least as a result of its organization under the laws

of Delaware.

10.     This Court has personal jurisdiction over defendant Rockstar by virtue of its

sufficient minimum contacts with this forum at least as a result of its organization under the laws

of Delaware.

11.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) at least

because Defendants reside and conduct business in this judicial district.

## DEFENDANTS HAVE ACCUSED ARRIS CUSTOMERS OF PATENT INFRINGEMENT

12.     Defendants have accused ARRIS customers of infringing at least U.S. Patent Nos.

5,471,474 ("the '474 patent" attached as Exhibit 1), 5,761,197 ("the '197 patent" attached as

Exhibit 2), 6,128,298 ("the '298 patent" attached as Exhibit 3), 6,130,893 ("the '893 patent"

attached as Exhibit 4), 6,321,253 ("the '253 patent" attached as Exhibit 5), 7,154,879 ("the '879

patent" attached as Exhibit 6), 6,128,649 ("the '649 patent" attached as Exhibit 7), and 8,464,299

("the '299 patent" attached as Exhibit 8) (the "Asserted Patents").

13.     Defendants have accused the following services of infringing the Asserted

Patents: High-Speed Internet, Whole-House DVR, Cable Digital TV, and Cable Phone (the

"Accused Services").  Defendants have accused the following standards of infringing the

Asserted Patents:  DOCSIS 2.0/3.0, MOCA, OpenCable (Tru2way), PacketCable 1.0/1.5, and

eRouter (the "Accused Standards").

14.     ARRIS customers use at least the following ARRIS products to implement the

Accused Services or comply with the Accused Standards: Cable Modem Terminations Systems

("CMTSs") including at least the ARRIS C3, C4, BSR 6400 and E6000, Embedded Media

Terminal Adapters ("eMTAs") including at least the "TM" series eMTAs, "WTM" series

eMTAs, "TG" series eMTAs, "SBV" series eMTAs, and "SVG" series eMTAs, Cable Modems

("CMs") including at least the "CM" series CMs, "WBM" series CMs, "DG" series CMs, "SB"

series CMs, and "SBG" series CMs, Set-Top Boxes ("STBs") including at least the "DCT" series

STBs, "DCX" series STBs, and "DCH" series STBs, routers including at least the DG series, the

TG series, SVG series, SBG series, and Switched Digital Video Systems ("SDV Systems")

including at least the CVEx and SVM products (collectively the "Implicated ARRIS Products").

## A CONSORTIUM OF COMPANIES ACQUIRED THE NORTEL PATENT PORTFOLIO SUBJECT TO CERTAIN OBLIGATIONS INCURRED BY NORTEL

15.     Until its dissolution in 2011, Nortel Networks Corporation ("Nortel") was a

multinational manufacturer of communications and data networking equipment.

16.     On January 14, 2009, Nortel filed for bankruptcy protection in the United States,

Canada, and the United Kingdom.

17.     During bankruptcy proceedings, Nortel auctioned various business units and other

assets, including Nortel's patent portfolio.

18.     The Nortel patent portfolio consisted of approximately 6,000 U.S. patents, foreign patents, and patent applications, and encompassed a wide range of technologies including wireless, wireless 4G, data networking, optical, voice, Internet, and semiconductors.

19.     A consortium of companies that included Apple and Microsoft won that auction and acquired the Nortel patent portfolio, which included the Asserted Patents.

20.     A subset of patents from the Nortel patent portfolio, including the Asserted Patents, was subsequently transferred to Rockstar and then purportedly transferred to Constellation.

21.     When the consortium of companies acquired the Nortel patent portfolio from the Nortel bankruptcy estate, based on the terms of the bankruptcy sale order, the consortium was bound to abide by certain categories of Nortel licenses that Nortel had granted to ARRIS.

22.     When the consortium of companies acquired the Nortel patent portfolio from the Nortel bankruptcy estate, based on the terms of the bankruptcy sale order, the consortium was also bound to abide by certain encumbrances that ran with the patents, including commitments that Nortel and its affiliates (including ARRIS, Bay Networks, and LANcity) made to standard development organizations ("SDOs") and industry groups.

**ARRIS WAS SPUN OUT OF NORTEL**

23.     In November of 1995, Products Venture LLC ("Products Venture") was formed as a joint venture pursuant to agreements between Nortel and ANTEC Corp. ("Joint Venture Agreements").

24.     The Joint Venture Agreements specified that Products Venture would operate in at least the cable equipment and digital video business markets.

25.     The Joint Venture Agreements stated that Products Venture would "develop,

4

manufacture and have manufactured, and distribute . . . digital broadband access networking products and applications for the delivery of narrow band and broadband services over a Hybrid Fiber Coaxial Cable Network . . . and video file server systems delivering advertising insertion services and interactive services providing analog and digital video-on-demand or near video-on-demand for a Hybrid Fiber Coaxial Cable Network."

26.     Nortel created and was aware of business plans for Products Venture to develop, manufacture and have manufactured, and distribute: (1) digital broadband access networking products and applications for the delivery of narrow band and broadband services over a Hybrid Fiber Coaxial Cable Network and (2) video file server systems delivering advertising insertion services and interactive services providing analog and digital video-on-demand or near video-on-demand for a Hybrid Fiber Coaxial Cable Network.

27.     The Joint Venture Agreements included a license agreement ("1995 License Agreement") whereby Nortel granted Product Venture a license to its patents for products in the hybrid fiber-coax network industry including but not limited to Cornerstone Voice, Cornerstone Data, and Cornerstone Total Access, including The Broadband Selector Unit and "such derivatives and modifications as may be made."  A copy of the 1995 License Agreement is attached as Exhibit 9.

28.     Products Venture was renamed ARRIS Interactive, LLC ("ARRIS Interactive").

29.     In 1996 Bay Networks, Inc. ("Bay Networks"), a company in the data networking industry, purchased LANcity Corp. ("LANcity"), a company in the cable equipment industry.

30.     In 1998, Nortel merged with Bay Networks.

31.     In March of 1999, Nortel contributed its broadband technology division (including but not limited to technology that Nortel obtained through the acquisition of Bay

5

Networks and Bay Network's assets from its previous acquisition of LANcity) to ARRIS

Interactive and took an increased stake in the ARRIS Interactive joint venture.  Nortel and

ARRIS also signed an amendment to the 1995 License Agreement ("1999 IP Agreement"),

which covered the Cornerstone Voice, Cornerstone Data, Corner Stone Total Access, Broadband

Technology Division ("BTD") "Generation 3" Cable Modem, BTD "Generation 4" Cable

Modems, and Netserve products "with such derivatives and modifications as may be made by

Arris."  A copy of the 1999 IP Agreement is attached as Exhibit 10.

32.      In August of 2001, Nortel executed agreements ("ARRIS Group Agreements")

that incorporated ARRIS as a new non-affiliated entity and transferred ownership of ARRIS

Interactive to ARRIS.

33.      The ARRIS Group Agreements included an August 3, 2001 Intellectual Property

Rights Agreement ("2001 IP Agreement").  A copy of the 2001 IP Agreement is attached as

Exhibit 11.

34.      The 2001 IP Agreement granted ARRIS Interactive a license to Nortel's patent

portfolio for ARRIS Interactive's then-current products, including Cornerstone Voice Customer

Premise Equipment, DOCSIS Cable Modems, DOCSIS Network Equipment (including CMTSs),

and "natural improvements and evolutions thereof."

35.      The 2001 IP Agreement explicitly granted ARRIS a license to U.S. Patent No.

5,471,474.

36.      Due to the material nature of the 2001 IP Agreement to ARRIS's business, the

2001 IP Agreement was published with the SEC.

37.      Nortel's subsequent filings with the SEC identify the 2001 IP Agreement.

38.      Rockstar and Constellation had actual or constructive notice of the 2001 IP

Agreement, based at least upon the publication of the documents with the SEC.

39.    ARRIS is licensed to the Asserted Patents pursuant to the terms of the 1995 License Agreement to the extent they are "derivatives and modifications" of the products and product roadmap specified in the 1995 License Agreement, which includes all Implicated ARRIS Products.

40.    ARRIS is licensed to the Asserted Patents pursuant to the terms of the 1999 IP Agreement to the extent they cover "derivatives and modifications" of the products and product roadmap specified in the 1999 IP Agreement, which includes all Implicated ARRIS Products.

41.    ARRIS is licensed to the Asserted Patents pursuant to the terms of the 2001 IP Agreement to the extent they cover "natural improvements and evolutions" of the products specified in the 2001 IP Agreement, which includes all Implicated ARRIS Products.

42.    ARRIS is licensed to the '474 patent generally because it was granted an explicit license under the terms of the 2001 IP Agreement.

43.    When the consortium of companies acquired the Nortel patent portfolio from the Nortel bankruptcy estate, based on the terms of the bankruptcy sale order, the consortium expressly agreed to abide by certain categories of Nortel commercial licenses, which include at least the 1995 License Agreement, 1999 IP Agreement, and 2001 IP Agreement.

**NORTEL'S PARTICIPATION IN
SETTING COMMUNICATIONS AND DATA NETWORKING STANDARDS**

THE STANDARD SETTING PROCESS

44.    Technical standards for communications and data networking technologies are usually developed through the efforts of SDOs, whose membership includes industry participants, such as hardware manufacturers, software designers, and service providers.  The standards established by SDOs play a significant role in the development of communications and

data networking technologies because they facilitate, for example, adoption of new technologies and the development of interoperable systems.

45.     For example, Data over Cable Service Interface Specification ("DOCSIS") is a cable TV communication standard that most consumers in the U.S. use every day.  DOCSIS is a standard technology through which cable television operators can provide high-speed data services (and telephony services through its companion PacketCable standard) to their subscribers regardless of the systems manufacturer that provides the equipment at the subscribers' premises.  DOCSIS is ubiquitous because cable television operators and system manufacturers demand interoperable technology.

46.     While standards generally benefit industry participants and consumers, there are risks attached to adopting a standard if implementing the standard requires a patented technology.  In that case, a patent holder can demand excessive royalties from industry participants that adopt the standard.  That is especially true if the patent holder demands royalties after the standard essential technology is widely incorporated into products and services.  At that point, industry participants are stuck because: (1) the technology is necessary to implement the industry standard and (2) the technology is already "locked in" to their products and services.

47.     To ensure that market participants are able to adopt and use established standards without fear of patent hold up, SDOs promulgate policies and procedures that control the disclosure and licensing of patents held by standard setting participants that may read on standards under consideration.  Those policies and procedures are typically set out in each SDO's bylaws or intellectual property rights policies ("IPR policies").

48.     IPR policies generally require participants to disclose patents that relate to the standards being considered by the SDO.  Those disclosures allow the SDO and its members to

8

evaluate technologies with full knowledge of patent rights that may affect the industry-wide cost of adopting that technology as part of a new standard.

49.     At the time that a participant discloses patents that might relate to a standard being considered by an SDO, the IPR policy generally requires the participant to commit to provide licenses: (1) to all parties interested in implementing the industry standard and (2) on fair, reasonable, and non-discriminatory ("F/RAND") or royalty-free terms.

50.     In the event the patent holder will not commit to those licensing terms, the SDO has the option to design around the disclosed patent or select a different standard that does not read on the disclosed patent.

## DOCSIS AND PACKETCABLE ROYALTY-FREE LICENSING ENCUMBRANCES ON CERTAIN PATENTS IN THE NORTEL PATENT PORTFOLIO

51.     Cable Television Laboratories, Inc. ("CableLabs") is a non-profit research and development consortium that is dedicated to pursuing new cable communications technologies and helping its cable operator members integrate those technical advancements into their business objectives.

52.     Nortel and/or its affiliates (including ARRIS, Bay Networks, and LANcity) committed to provide royalty-free licenses to certain patents in the Nortel patent portfolio that concern the DOCSIS standards and related PacketCable standards to CableLabs, and gave CableLabs the right to grant royalty-free sublicenses to implementers of the DOCSIS or PacketCable standards.

53.     In 1998, CableLabs created a royalty-free pool for intellectual property rights essential to the DOCSIS standards.  Companies that signed a DOCSIS License Agreement ("DOCSIS Licensors") granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by it or

9

its affiliates essential for compliance with current or future versions of DOCSIS ("DOCSIS

Standards").  In return, DOCSIS Licensors and their affiliates obtained from CableLabs a non-

transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the

right to license or sublicense to the extent necessary for compliance with the DOCSIS Standards.

54.     LANcity became a DOCSIS Licensor on July 2, 1998.  A copy of the DOCSIS

License Agreement, dated July 2, 1998, and signed by LANcity, is attached as Exhibit 12.

55.     Bay Networks became a DOCSIS Licensor prior to October 1, 1998.  A copy of a

letter agreement between Bay and CableLabs whereby Bay agrees to sign the DOCSIS License

Agreement and agrees to join the patent pool for DOCSIS Version 1.1, dated October 1, 1998,

and signed by Bay, is attached as Exhibit 13.

56.     At the time LANcity became a DOCSIS Licensor, it had the right to license the

'474 patent.

57.     At the time Bay became a DOCSIS Licensor, it had the right to license the '197

patent.

58.     At the time LANcity and Bay Networks became DOCSIS Licensors, ARRIS was

an affiliate of LANcity and Bay Networks, as defined by each relevant agreement.

59.     At the time LANcity and Bay Networks became DOCSIS Licensors, Nortel was

an affiliate of LANcity and Bay Networks, as defined by each relevant agreement.

60.     As a result, Nortel and ARRIS contributed their patents to the DOCSIS patent

pool and were granted licenses to the DOCSIS patent pool.

61.     On information and belief, Nortel signed a DOCSIS License in 1998 and thus

explicitly agreed to become a DOCSIS Licensor.

62.     At the time Nortel became a DOCSIS Licensor, it had the right to license the

'474, '197, '298, '893, and '253 patents.

63.     Nortel held itself out as a DOCSIS Licensor starting at least as early as 1998. In an October 14, 1998, letter to CableLabs, for example, Nortel equated itself with Bay Networks, who had already signed the DOCSIS license agreement by describing itself as "Nortel Networks (Bay Networks)." Nortel also stated: "Nortel Networks, and the other Licensors, have set aside parochial interests and contributed their intellectual property to create a standard that would spawn a major new business for cable operators and a level play field for vendors." A copy of the October 14, 1998, letter is attached as Exhibit 14.

64.     On March 23, 1999, Nortel wrote to CableLabs to inform CableLabs that Nortel, Bay Networks, and LANcity were assigning certain broadband technology assets, including technology relevant to the DOCSIS License to ARRIS. A copy of the March 23, 1999, letter from Nortel to CableLabs is attached as Exhibit 15.

65.     In the early 2000s, Nortel identified itself as a DOCSIS Licensor by advertising its products as having received DOCSIS certifications. Copies of two such advertisements are attached as Exhibits 16 and 17.

66.     A copy of a letter memorializing ARRIS's Licensor status, dated September 9, 2003, and signed by ARRIS, is attached as Exhibit 18.

67.     By becoming DOCSIS Licensors, Nortel, LANcity, and/or Bay Networks contributed at least the '474, '197, '298, '893, and '253 patents to the DOCSIS patent pool.

68.     By becoming a DOCSIS Licensor, ARRIS was granted a license to the DOCSIS patent pool, including the '474, '197, '298, '893, and '253 patents.

69.     ARRIS continues to be a DOCSIS Licensor in good standing today.

70.     As new versions of DOCSIS have been released, ARRIS has been granted

sublicenses that cover those new versions of DOCSIS pursuant to the terms of the 1998 DOCSIS license agreement.  Accordingly, ARRIS is licensed to practice at least DOCSIS versions 1.0, 1.1, 2.0, and 3.0.

71.     CableLabs also created a royalty-free pool for intellectual property rights essential to the PacketCable standards, which were built on top of the DOCSIS Standards.  Companies that signed a PacketCable License Agreement ("PacketCable Licensors") granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by it or its affiliates essential for compliance with current or future versions of PacketCable ("PacketCable Standards").  In return, PacketCable Licensors and their affiliates obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense to extent necessary for compliance with the PacketCable Standards.

72.     ARRIS became a PacketCable Licensor on March 5, 1999.  A copy of the PacketCable License Agreement, dated March 5, 1999, and signed by ARRIS, is attached as Exhibit 19.

73.     LANcity became a PacketCable Licensor in or about 1998.  A copy of the PacketCable License Agreement, dated October 9, 1998, and signed by LANcity, is attached as Exhibit 20.

74.     On information and belief, Bay Networks became a PacketCable Licensor in or about 1998.

75.     At the time LANcity became a PacketCable Licensor, it had the right to license the '474 patent.

76.     At the time Bay Networks became a PacketCable Licensor, it had the right to

12

license the '197 patent.

77.     At the time LANcity and Bay Networks became PacketCable Licensors, ARRIS was an affiliate of LANcity and Bay Networks.

78.     At the time LANcity and Bay Networks became PacketCable Licensors, Nortel was an affiliate of LANcity and Bay Networks.

79.     As a result, Nortel and ARRIS contributed their patents to the PacketCable patent pool and were granted licenses to the PacketCable patent pool.

80.     On information and belief, Nortel signed a PacketCable License in 1998 and thus explicitly agreed to become a PacketCable Licensor.

81.     At the time Nortel became a PacketCable Licensor, it had the right to license the '474, '197, '298, '893, and '253 patents.

82.     In the early 2000s, Nortel identified itself as a PacketCable Licensor by advertising its products as having received PacketCable certifications.

83.     On March 23, 1999, Nortel wrote to CableLabs to inform CableLabs that Nortel, Bay Networks, and LANcity were assigning certain broadband technology assets, including technology relevant to PacketCable to ARRIS.  (Ex. 41.)

84.     Nortel Network Cable Solutions, Inc. ("Nortel Cable"), an affiliate of Nortel, became a PacketCable Licensor in or about 2000.  A copy of the PacketCable License Agreement, dated February 29, 2000, and signed by Nortel Cable, is attached as Exhibit 21.  A copy of the PacketCable IPR Signatories is attached as Exhibit 22.

85.     By becoming PacketCable Licensors, Nortel, LANcity, and/or Bay Networks contributed at least the '474, '197, '298, '893, and '253 patents to the PacketCable patent pool.

86.     By becoming a PacketCable Licensor, ARRIS was granted a license to the

PacketCable patent pool, including the '474, '197, '298, '893, and '253 patents.

87.     ARRIS continues to be a PacketCable Licensor in good standing today.

88.     As new versions of PacketCable have been released, ARRIS has been granted sublicenses that cover those new versions.  Accordingly, ARRIS is licensed to practice at least PacketCable versions 1.0 and 1.5.

89.     ARRIS's customers purchase hardware and software from ARRIS that implement the DOCSIS and PacketCable Standards.

90.     Pursuant to the DOCSIS and PacketCable License Agreements, ARRIS and its customers are licensed or sublicensed to the Nortel patent portfolio to the extent necessary to practice the DOCSIS and/or PacketCable Standards.

91.     Nevertheless, Rockstar has asserted that the use of DOCSIS or PacketCable infringes the '474, '197, '298, '893, and '253 patents.

92.     By representing itself as a "Licensor" to the DOCSIS and/or PacketCable License Agreements, Nortel obtained the benefit of joining the DOCSIS and/or PacketCable patent pools, and therefore received reciprocal licenses from ARRIS and other participants in the creation of the DOCSIS and PacketCable Standards.

93.     Nortel Networks and its subsidiaries benefitted from joining DOCSIS and/or PacketCable because they were able to develop, market, and sell products that were compatible with DOCSIS and/or PacketCable standards.

94.     CableLabs also created a royalty-free pool for intellectual property rights essential to a "Home Networking" standard, one version of which was known as CableHome.  Companies that signed a CableHome Agreement ("CableHome Licensors") granted CableLabs and other CableHome Licensors a non-transferable, worldwide, non-exclusive, royalty-free license to all of

14

its and its affiliates' patents and patent applications, filed prior to one year after the CableHome specification was published, that are infringed by implementation of the CableHome specification.

95.     In October 2000, ARRIS became a CableHome Licensor.  (Ex. 23.)

96.     At the time that ARRIS became a CableHome Licensor, Nortel owned 81.25% of ARRIS, and Nortel was therefore an affiliate of ARRIS, as defined by the CableHome Agreement.

97.     As a Participant, as defined by the CableHome Agreement, ARRIS received a royalty-free license to practice all of Nortel's patents and patent applications, filed prior to one year after the CableHome specification was published in August 2003, to implement the CableHome standard.

98.     ARRIS therefore holds a royalty-free license to the Asserted Patents to implement the CableHome specification.

99.     The CableHome specification includes performing Network Address Translation functionality in cable modems and eMTAs. Base functionality of the CableHome specification is utilized to implement the eRouter standard.

100.    Products that follow the eRouter specification comply with base functionality in the CableHome specification, particularly Network Address Translation.

101.    ARRIS holds a royalty-free license to the Asserted Patents to implement the eRouter functionality that is included in the CableHome specification.

102.    When the consortium of companies acquired the Nortel patent portfolio from the Nortel bankruptcy estate, based on the terms of the bankruptcy sale order, the consortium was also bound to abide by certain encumbrances that ran with the patents, including commitments

that Nortel and its affiliates (including ARRIS, Bay Networks, and LANcity) made to standard development organizations ("SDOs") and industry groups, such as CableLabs.

### ROCKSTAR ASSERTS THE NORTEL PATENTS

103.    After the consortium of companies won the auction for the Nortel patent portfolio, some of the patents from the Nortel patent portfolio were transferred to Rockstar.

104.    In an interview with Wired magazine, published on May 21, 2012, John Veschi, the CEO of Rockstar, stated that Rockstar was a "separate" company from Apple, Microsoft, and its other member companies of the consortium, and that promises and commitments made by those member companies did "not apply" to Rockstar.  The *Wired* article is attached as Exhibit 24.

105.    In the same interview, Mr. Veschi stated that "[p]retty much anybody out there is infringing, I would think.  It would be hard for me to envision that there are high-tech companies out there that don't use some of the patents in our portfolio."

106.    Rockstar subsequently transferred some of the patents to its wholly-owned subsidiary Constellation.

107.    Through a campaign to enforce the Nortel patent portfolio, Rockstar and/or Constellation have accused several ARRIS customers in the communications, cable and/or wireline industries of infringing several patents in Rockstar's and/or Constellation's portfolio.

### ROCKSTAR ASSERTS THAT THE KNOWN ACCUSED CUSTOMERS' PRODUCTS AND SERVICES BROADLY INFRINGE ITS "PATENT ESTATE"

108.    Rockstar and/or Constellation have accused at least the following ARRIS customers of patent infringement: ██████████████████████████ Time Warner Cable Inc. ("TWC"), WideOpenWest Finance, LLC a/k/a WOW! Internet, Cable & Phone ("WOW"), Knology, Inc. ("Knology"), ████████████████████ ████████████████

16

████████████, Charter Communications, Inc. ("Charter"), and Cable ONE, Inc.

("Cable One") (collectively the "Known Accused Customers").

109.    In patent assertion letters to █████ WOW, Knology, █████ █████████ Charter,

and Cable One, Rockstar informed those customers that: (1) Rockstar owns thousands of patents

and patent applications, "most notably in communications and networking," (2)  Rockstar

believes those customers require a "license to [its] patents" or its "patent estate," and

(3) Rockstar believes those customers offer "certain products and services that infringe patents

owned by Rockstar." (Exs. 25-31.)

110.    In the patent assertion letters to those customers, Rockstar identifies "exemplary

patents that inform [its] opinion," but cautions those customers to "keep in mind that the

[exemplary] patents [] are part of a much larger portfolio."  Rockstar also informs those

customers that they have "an affirmative responsibility to ensure that" they have "secured all

necessary patent rights to sell the products and services listed above, *as well as others that might

be infringing Rockstar's intellectual property*."  (Exs. 25-31 (emphasis added).)

111.    Similarly, Rockstar sent a patent assertion letter to TWC the day after

Constellation filed a patent infringement lawsuit against TWC.  In that patent assertion letter,

Rockstar informed TWC that Constellation "has a large portfolio of patents that are relevant to

the telecommunications and cable industry," and that "Constellation believes that TWC has built

the fundamental aspects of its business on inventions from the Nortel Family," including certain

exemplary patents.  In that letter, Rockstar also invited TWC to participate in "licensing

discussions for all or part of Constellation's portfolio."  (Ex. 32.)

112.    TWC objected to Rockstar's misleading and overly broad allegations in a

response letter dated December 26, 2013.  (Ex. 33.)  In that letter, TWC also expressed

disappointment that:  (1) Rockstar and Constellation filed a patent infringement lawsuit against TWC before discussing the patents-in-suit with TWC (especially with respect to any allegedly standard essential patents) and (2) Rockstar and Constellation unilaterally withdrew from any licensing negotiations.

113.    By the above-described patent assertion letters, Rockstar vaguely accused any number of each Known Accused Customer's products and services of infringing a "patent estate" that consists of thousands of patents.

114.    Rockstar suggested that the Known Accused Customers have the burden of accusing themselves of patent infringement, apparently by sifting through thousands of Rockstar's patents and "ensur[ing] that it has secured all necessary patent rights."  Rockstar further suggested that the Known Accused Customers make those determinations while the size and composition of Rockstar's patent portfolio is in flux. Rockstar constantly shifts patents to and among various wholly-owned subsidiaries and spin-offs, and, at any point in time, the patent assignment records do not accurately reflect who owns what.

115.    Rockstar's patent assertion letters are bad faith threats with baseless allegations that potentially everything a Known Accused Customer does or sells infringes all of Rockstar's patents.  Rockstar leaves it to the Known Accused Customers to figure out what patents Rockstar owns and to accuse themselves of infringing specific patents.

116.    In those patent assertion letters, Rockstar either:  (1) knows but conceals which Rockstar patents are infringed by specific products or services offered by the Known Accused Customers or (2) does not know which Rockstar patents are infringed by specific products or services offered by the Known Accused Customers, but nonetheless accuses any number of products and services of infringing any number, if not all, of the patents from Rockstar's "patent

estate."

117.     In either case, Rockstar has cast a broad patent infringement cloud over the Known Accused Customers' products and services, including products and services that ARRIS provides to the Known Accused Customers.

ROCKSTAR ASSERTS ITS PATENTS AGAINST ARRIS'S CUSTOMER, ███

118.     █████████████ purchases products from ARRIS subject to the terms and conditions of a ████████ agreement ███████████████. The ████████ agreement sets out obligations for ARRIS, ████████████████████ to indemnify ██████ from claims of patent infringement. ███████████ ██████████ is attached as Exhibit 34.

119.     On March 13, 2012, Rockstar wrote ███ and alleged that "our analysis reveals that █████████ is currently offering certain products and services that infringe patents owned by Rockstar."  As discussed above, Rockstar accused any number of ███ products and services of infringing any number, if not all, of Rockstar's patents.

120.     As examples of █████ alleged infringement, Rockstar accused █████ Whole House DVR and MOCA services of infringing the '879 patent, and ████████ High Speed Internet and DOCSIS 3.0 technologies, products, and/or services of infringing the '474 and '197 patents.

121.     On information and belief, ████ uses at least ARRIS Set-Top Boxes ("STBs") and routers to implement Whole House DVR services accused of infringing the '879 patent.

122.     On information and belief, ████ uses at least ARRIS Cable Modem Termination Systems ("CMTSs"), Embedded Multimedia Terminal Adapters ("eMTAs"), and Cable Modems ("CMs") to implement █████████ High Speed Internet and comply with the DOCSIS 3.0

standard accused of infringing the '474 and '197 patents.

123.    On July 31, 2012, ▮▮▮▮ informed ARRIS, through its subsidiary ARRIS

International, that Rockstar's March 13, 2012 letter, "appears to implicate products which ▮▮▮

purchased from ARRIS . . . ." and asked ARRIS to indemnify ▮▮▮ against Rockstar's claims.

<u>CONSTELLATION BRINGS A PATENT LAWSUIT AGAINST
ARRIS'S CUSTOMER, TWC</u>

124.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

sets out obligations for ARRIS, through its wholly-owned subsidiary Broadband Management, to

indemnify TWC from claims of patent infringement.  (Ex. 34.)

125.    On December 11, 2013, Rockstar brought suit against TWC and accused TWC's

use of switched digital video ("SDV") technology of infringing the '299 and '649 patents and

TWC's use of Ethernet passive optical networks and whole-house entertainment networks of

infringing the '879 patent.

126.    As discussed above, on December 12, 2013, Rockstar sent a patent assertion letter

in which it also broadly accused "fundamental aspects of [TWC's] business" of infringing any

number, if not all, of Constellation's patents.

127.    On information and belief, TWC uses at least ARRIS SDV Systems and STBs to

implement the SDV technology accused of infringing the '299 and '649 patents.

128.    On information and belief, TWC uses at least ARRIS routers and STBs to

implement the whole-house entertainment networks accused of infringing the '879 patent.

129.    On January 21, 2014, TWC informed ARRIS, through ARRIS's subsidiary

ARRIS International, that Rockstar's December 11, 2013, complaint may "relate to products

purchased by Time Warner Cable from Arris" and provided notice pursuant to the

indemnification provisions of the Master Product Purchase Agreement for products purchased by

Time Warner Cable from ARRIS.

## ROCKSTAR ASSERTS ITS PATENTS AGAINST ARRIS'S CUSTOMERS, KNOLOGY AND WOW

130.    Knology and WOW purchase equipment from ARRIS subject to ████ ██████████████████████████████████████████████████████████ ██ obligations for ARRIS to indemnify its customers from claims of patent infringement. ██ ██████████████████████████████████████████████ is attached as Exhibit 35.

131.    On March 13, 2012, Rockstar wrote Knology and stated that "our analysis reveals that Knology is currently offering certain products and services that infringe patents owned by Rockstar." As discussed above, Rockstar accused any number of Knology's products and services of infringing any number, if not all, of Rockstar's patents.

132.    As examples of Knology's alleged infringement, Rockstar accused Knology High Speed Internet and DOCSIS 3.0 of infringing the '474 and '197 patents.

133.    On information and belief, Knology uses at least ARRIS CMTSs, eMTAs, and CMs to implement the Knology High Speed Internet and DOCSIS 3.0 accused of infringing the '474 and '197 patents.

134.    On October 29, 2012, Rockstar wrote WOW and alleged that "our analysis reveals that WOW! and Knology, are currently offering certain products and services that infringe patents owned by Rockstar." As discussed above, Rockstar accused any number of WOW's products and services of infringing any number, if not all, of Rockstar's patents.

135.    As examples of WOW's alleged infringement, Rockstar accused WOW! Digital TV, WOW! Ultra TV, WOW! Internet Xcite, Xpress, Xteme, Xtream Turbo, WOW! Essential Phone, and WOW! Advanced Phone of infringing the '474 and '197 patents; WOW! Essential

21

Phone, WOW! Advanced Phone, and WOW! Business Voice of infringing the '893 patent; and WOW! Internet Xcite, Xpress, Xteme, Xtream Turbo, WOW! Essential Phone, and WOW! Advanced Phone of infringing the '253 patent.

136.    On information and belief, WOW uses at least ARRIS CMTSs, eMTAs, and CMs to implement the WOW! Digital TV, WOW! Ultra TV, WOW! Internet Xcite, Xpress, Xteme, Xtream Turbo, WOW! Essential Phone, and WOW! Advanced Phone, accused of infringing the '474 and '197 patents.

137.    On information and belief, WOW uses at least ARRIS eMTAs to implement the WOW! Essential Phone, WOW! Advanced Phone, and WOW! Business Voice, accused of infringing the '893 patent.

138.    On information and belief, WOW uses at least ARRIS eMTAs to implement the WOW! Internet Xcite, Xpress, Xteme, Xtream Turbo, WOW! Essential Phone, and WOW! Advanced Phone, accused of infringing the '253 patent.

139.    On November 19, 2012, WOW informed ARRIS about Rockstar's October 29, 2012 letter and asked ARRIS for assistance and reserved its rights with respect to indemnity.

<u>ROCKSTAR ASSERTS ITS PATENTS AGAINST ARRIS'S CUSTOMER,</u> █████



140.    ████████████████████████████████████████████████ █████████████████ sets out obligations for Broadband Management, dba C-COR Solutions, to indemnify █████ from claims of patent infringement.  On January 1, 2011, Broadband Management and C-COR Solutions merged into ARRIS Solutions, Inc.  █████████████ ██████████████████████████████████████████ is attached as Exhibit 36.

141.    On March 13, 2013, Rockstar wrote █████ and alleged that "our analysis reveals that █████ is currently offering certain products and services that infringe patents owned by Rockstar." As discussed above, Rockstar accused any number of █████ products and services of

22

infringing any number, if not all, of Rockstar's patents.

142.    As examples of ████ alleged infringement, Rockstar accused ████ use or sale of ████ High-Speed Internet, ████ Wideband/Broadband, and DOCSIS 2.0 and 3.0 technologies, products, and/or services of infringing the '474, and '197 patents.

143.    On information and belief, ████ uses at least ARRIS CMTSs, eMTAs, and CMs to implement the ████ High-Speed Internet and ████ Wideband/Broadband and to comply with the DOCSIS 2.0 and 3.0 standards accused of infringing the '474 and '197 patents.

144.    On August 2, 2013, ████ wrote ARRIS and stated that Rockstar "continues to assert that ████ use or sale of various products that ████ purchases from Arris Group, Inc. or its related companies . . . such as modems and eMTAs . . . infringes at least the following five patents . . . 1. U.S. Pat. No. 5,471,474 (Grobicki), 2. U.S Pat. No. 5,761,197 (Takefman), 3. U.S. Pat. No. 6,128,298 (Wootton), 4. U.S. Pat. No. 6,130,893 (Whittaker), 5. U.S. Pat. No. 6,321,253 (McKeen)" and requested that ARRIS indemnify ████ and assist ████ with Rockstar's claims.

ROCKSTAR ASSERTS ITS PATENTS AGAINST ARRIS'S CUSTOMER, ████

145.    ████████████████████████████████████████████
████████████████████████████████████████████
████████ sets out obligations for ARRIS to indemnify ████ from claims of patent infringement. ████████ is attached as Exhibit 37 and Exhibit 38, respectively.

146.    On March 13, 2013, Rockstar wrote ████ and alleged that "our analysis reveals that ████ is currently offering certain products and services that infringe patents owned by Rockstar." As discussed above, Rockstar accused any number of ████ products and services of infringing any number, if not all, of Rockstar's patents.

147.    As examples of ████ alleged infringement, Rockstar accused ████ use or sale of ████ Internet Home Networking and DOCSIS 3.0 technologies, products,

and/or services of infringing the '474, and '197 patents.

148.    On information and belief, ▮▮▮▮▮▮ uses ARRIS CMTSs and eMTAs to implement the products and services and to comply with the standards that Rockstar accused of infringement.

149.    On August 8, 2013, ▮▮▮▮▮▮ informed ARRIS about Rockstar's assertion letter, through ARRIS's subsidiary, General Instrument, stating that "the equipment and processes identified by Rockstar may be provided by your company," requested assistance, and reserved all rights to seek indemnification.

<u>ROCKSTAR ASSERTS ITS PATENTS AGAINST ARRIS'S CUSTOMER, CHARTER</u>

150.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ sets out obligations for ARRIS to indemnify Charter from claims of patent infringement. ▮▮▮▮▮▮ ▮▮▮▮▮ is attached as Exhibit 39.

151.    On March 13, 2013, Rockstar wrote Charter and alleged that "our analysis reveals that Charter Communications, Inc. is currently offering certain products and services that infringe patents owned by Rockstar." As discussed above, Rockstar accused any number of Charter's products and services of infringing any number, if not all, of Rockstar's patents.

152.    Rockstar's March 13, 2012, letter accused: (1) Charter TV Multiroom DVR service and MOCA of infringing the '879 patent and Charter Business Optical Ethernet Service and VLAN of infringing the '999 and '990 patents, (2) Charter GigE, Business Fiber Internet, and 10GigE of infringing the '2397 patent, and (3) Charter Internet Service and DOCSIS 3.0 and 2.0 of infringing the '474 and '197 patents.

153.    On information and belief, Charter uses the Implicated ARRIS Products to implement the products and services and to comply with the standards that Rockstar accused of infringement.

24

## ROCKSTAR ASSERTS ITS PATENTS AGAINST ARRIS'S CUSTOMER, CABLE ONE

154.  set out obligations for ARRIS to indemnify Cable One from claims of patent infringement. ████████ ████████████████████████████ is attached as Exhibit40.

155. On March 13, 2012, Rockstar wrote Cable One and stated that "our analysis reveals that Cable ONE, Inc. is currently offering certain products and services that infringe patents owned by Rockstar."

156. As examples, Rockstar accused Cable One's Cable One High Speed Internet, DOCSIS 2.0, Cable One High Speed Internet with Elite and Preferred services, and DOCSIS 3.0, as allegedly infringing the '474 and '197 patents.

157. On information and belief, Cable One uses the Implicated ARRIS Products to implement the products and services and to comply with the standards that Rockstar accused of infringement.

158. On information and belief, Rockstar and Constellation have asserted their patents against ARRIS customers other than the Known Accused Customers.

159. Defendants' allegations of infringement, threats of litigation, and lawsuits have cast a cloud of uncertainty over ARRIS's businesses requiring the declaratory relief sought in this complaint.

## WHILE ASSERTING PATENTS AGAINST THE KNOWN ACCUSED CUSTOMERS, ROCKSTAR AND CONSTELLATION BREACHED F/RAND AND ROYALTY-FREE LICENSING OBLIGATIONS

160. After receiving assertion letters from Rockstar, the Known Accused Customers opened a dialogue with Rockstar in an attempt to learn more about the patent portfolio and, if necessary, to negotiate a license to aspects of the portfolio.

161.    Rockstar refused these overtures and demanded that each company execute a non-disclosure agreement as a condition precedent to receiving information concerning the patents, Rockstar's assertions, or discussing the terms of a license.

162.    Restrictions demanded by Rockstar in the non-disclosure agreement provided to the Known Accused Customers required that targeted companies agree to restrict disclosure of discussions with Rockstar.  In certain instances, Rockstar demanded that one or more of the targeted companies refrain from disclosing the substance of licensing negotiations to any third party for any purpose whatsoever.

163.    Companies that declined to execute Rockstar's proposed agreement, such as Charter, were excluded from meaningful licensing negotiations with Rockstar or Constellation. Charter was left with no other option but to sue or be sued.

164.    For accused infringers that signed non-disclosure agreements it quickly became apparent that Rockstar had no intention of honoring its F/RAND or royalty-free licensing obligations or negotiating a license to its portfolio in good faith.

165.    In at least one case, Rockstar used the size of its newly-acquired portfolio, coupled with the threat of serial litigation, to demand exorbitant licensing fees—fees that do not comport with the royalty-free or F/RAND terms under which Rockstar was obligated to license the SEPs in its portfolio.

166.    In addition to demanding exorbitant licensing fees, Rockstar also used the sheer size of its portfolio to preclude accused infringers from substantively evaluating the merits of Rockstar's infringement allegations.

167.    Rockstar accomplished this by refusing to identify for accused infringers the full list of patents they were purportedly infringing.  Instead, Rockstar provided only what it deemed

"exemplary" patents from its portfolio for evaluation. This left accused infringers with no way to meaningfully evaluate Rockstar's infringement allegations, to refute its allegations of infringement, or to determine the actual value of the relevant patents within Rockstar's portfolio.

168.    Relying on the substantial breadth of its portfolio, Rockstar also intimidated accused infringers by suggesting that failure to take a license to Rockstar's entire portfolio would place a cloud of uncertainty over their business and would, ultimately, result in those parties being subjected to an endless cycle of patent enforcement through serial litigation. Rockstar's recent assignments of patents to Constellation, and sale of patents to Spherix with threats to sell more patents, constitute actions in furtherance of these threats.

169.    Following up on its threats, since October 2013, Defendants have filed multiple lawsuits in which they accuse various technology companies of infringing patents within the portfolio. These recent enforcement activities by Defendants make the threat of serial litigation all the more concerning for ARRIS and its customers.

170.    Rockstar ultimately threatened to file or did file patent infringement actions against certain of ARRIS's customers and other vendors based on several SEPs encumbered by royalty-free and F/RAND obligations, including: the '879,'474, '197, '893, and '253 patents (the "Asserted SEPs").

171.    Rockstar also used its non-disclosure agreements to preclude Plaintiffs from notifying their device manufacturers of the details of Rockstar's allegations of infringement—a necessary prerequisite to obtaining indemnification. This strategy interfered with Plaintiffs' contractual rights and increased Plaintiffs' potential liability. Rockstar used this strategy in an effort to coerce Plaintiffs, and others, to take a license to Rockstar's entire portfolio, including to

patents not relevant to those parties' products and/or services, as well as to patents that were already licensed by Plaintiffs' vendor(s).

172.    By extinguishing communications between device manufacturers and service providers, Rockstar sought to increase its already exorbitant licensing fees—allowing it to try to license device manufacturers and service providers separately.

173.    Rockstar also used these restrictive non-disclosure agreements to extinguish communications between various participants in the communications industries.  Rockstar's actions were intended to prevent Plaintiffs from ensuring that any license negotiated would be on F/RAND terms, facilitating Rockstar's efforts to extract fees in excess of those it was entitled to pursuant to its royalty-free or F/RAND licensing obligations.

174.    Based on the foregoing, Rockstar required parties to execute non-disclosure agreements, not in a good-faith attempt to protect both parties during negotiation, but rather, to erect an artifice that would allow Rockstar to conduct its improper licensing campaign in an environment that carried less risk of exposure to liability for violating its royalty-free or F/RAND obligations.

175.    Using its inappropriate licensing strategy, Rockstar has refused to engage in good faith negotiation as required pursuant to its obligations to license its patents on royalty-free or F/RAND terms.

## OWNERSHIP OF ROCKSTAR ASSERTED PATENTS

176.    As described above, Rockstar has insisted that ARRIS's customers infringe at least the '879, '474, '197, '893, '253, '649, '298, and '299 patents, and has demanded that each pay for a license to those patents.

177.    During the discussions set forth above, Rockstar represented that it was the owner and/or had the authority to negotiate licenses in connection with all of the patents in its portfolio. Rockstar, to this day, continues to communicate with one or more of Plaintiffs in an effort to license the entire portfolio of patents.

178.    Rockstar claims to own all right, title, and interest in the '298 patent.

179.    Constellation alleges that it is now the assignee of one or more of the patents that were originally included in the Rockstar portfolio, and that it owns all rights title, and interest in those patents, including at least the '879, '474, '197, '893, '253, '649, and '299 patents.

180.    On information and belief, Constellation is a shell entity that is merely a front for Rockstar and its agents.  For example, as described above, John Garland is the Vice President of patent licensing at Rockstar and the president of Constellation.  Furthermore, Rockstar formed Constellation one month before Constellation initiated two patent infringement lawsuits in the Eastern District of Texas.  The Northern District of California has ruled that Rockstar's formation of another entity under similar circumstances (MobileStar Technologies, LLC) "strongly suggest that Rockstar formed Mobilestar as a sham entity. . . ." *Google Inc. v. Rockstar Consortium U.S. LP*, 2014 WL 1571807, at *4 (N.D. Cal. Apr. 17, 2014).

181.    By engaging in negotiations to license not only its own patents but also those it has apparently assigned to Constellation, Rockstar representatives were purporting to act not only on behalf of itself, but also on behalf of Constellation.

182.    Defendants have refused to enter into meaningful negotiations with the Known Accused Customers with respect to Asserted Patents unless they execute non-disclosure agreements.

183.    Defendants threatened to bring suit against accused infringers that have refused to

execute non-disclosure agreements with Defendants.

184.    Defendants have brought suit against accused infringers that have refused to execute non-disclosure agreements with Defendants.

185.    Defendants' strategy of entering into non-disclosure agreements has concealed the scope of Defendants' assertions, has been orchestrated to subvert Rockstar's and Constellation's royalty-free obligations, and further casts a cloud of uncertainty over ARRIS's businesses requiring the declaratory relief sought in this complaint.

186.    Since October 2013, Rockstar, Constellation, and Rockstar's other subsidiaries have filed multiple lawsuits in which they accuse various technology companies of infringing patents within the portfolio.  These recent enforcement activities make the threat of serial litigation immediate and concrete to ARRIS and its customers

187.    These activities by or on behalf of Defendants create an immediate, definite, concrete and substantial dispute regarding the alleged infringement by ARRIS and ARRIS's customers of patents in Rockstar's and/or Constellation's portfolio.

## FIRST CLAIM FOR RELIEF:  DECLARATORY JUDGMENT OF LICENSE AND EXHAUSTION OF PATENT RIGHTS PURSUANT TO THE LICENSES BETWEEN ARRIS AND NORTEL

### (AGAINST ROCKSTAR AND CONSTELLATION)

188.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

189.    The Defendants have accused the Known Accused Customers of infringing the Asserted Patents by using the Implicated ARRIS Products:

      a.    Cable Modem Terminations Systems ("CMTSs"),

      b.    Embedded Media Terminal Adapters ("eMTAs"),

      c.    Cable Modems ("CMs"),

       d.      Set-Top Boxes ("STBs"),

       e.      Routers, and

       f.      Switched Digital Video Systems ("SDV Systems").

190.     The 1995 License Agreement granted ARRIS a license to Nortel's patent portfolio for products including Cornerstone Voice, Cornerstone Data, and Cornerstone Total Access, including The Broadband Selector Unit and "such derivatives and modifications as may be made."

191.     The SDV Systems that ARRIS sells to the Known Accused Customers are derivatives and modification of one or more of ANTEC digital video products and also Cornerstone Total Access, including The Broadband Selector Unit listed in the 1995 License Agreement.

192.     The 1999 IP Agreement granted ARRIS a license to Nortel's patent portfolio for products including the Cornerstone Voice, Cornerstone Data, Corner Stone Total Access (comprising STBs), BTD "Generation 3" Cable Modems, BTD "Generation 4" Cable Modems (comprising CM100 Cable Modems and CMTS 1000 Cable Modem Termination Systems), and Netserve Products (comprising the Versalar VoiceHub VOIP-POTS Terminal and CM 100 VOIP Daughter Board) "with such derivatives and modifications as may be made by Arris."

193.     The CMs that ARRIS sells to the Known Accused Customers are derivatives and modifications of one or more of the Corner Stone Total Access, BTD "Generation 3" Cable Modems, and BTD "Generation 4" Cable Modems products listed in the 1999 IP Agreement.

194.     The eMTAs that ARRIS sells to the Known Accused Customers are derivatives and modifications of one or more of the Cornerstone Voice and Netserve (comprising the Versalar VoiceHub VOIP-POTS Terminal and CM 100 VOIP Daughter Board) products listed in

31

the 1999 IP Agreement.

195.    The STBs that ARRIS sells to the Known Accused Customers are derivatives and modifications of the Corner Stone Total Access (comprising STBs) products listed in the 1999 IP Agreement.

196.    The CMTSs that ARRIS sells to the Known Accused Customers are derivatives and modifications of the "Generation 4" Cable Modem product family (comprising CMTS 1000 Cable Modem Termination Systems) listed in the 1999 IP Agreement.

197.    The 2001 IP Agreement granted ARRIS Interactive a license to the Asserted Patents for products including Cornerstone Voice Customer Premise Equipment, DOCSIS Cable Modems, DOCSIS Network Equipment (including CMTSs), and "natural improvements and evolutions thereof."

198.    The CMs that ARRIS sells to the Known Accused Customers are natural improvements and evolutions of the DOCSIS Cable Modems and DOCSIS Network Equipment products listed in the 2001 IP Agreement.

199.    The CMTSs that ARRIS sells to the Known Accused Customers are natural improvements and evolutions of ARRIS's DOCSIS Network Equipment (comprising CMTSs,) products listed in the 2001 IP Agreement.

200.    The eMTAs that ARRIS sells to the Known Accused Customers are natural improvements and evolutions of ARRIS's Cornerstone Voice Customer Premise Equipment listed in the 2011 IP Agreement.

201.    When Rockstar acquired its patent portfolio from the Nortel bankruptcy estate, Rockstar expressly agreed to abide by certain categories of Nortel commercial licenses, which include the 1995 License Agreement, 1999 IP Agreement, and the 2001 IP Agreement.

202.    As a result of ARRIS licenses to the Nortel patent portfolio pursuant to at least the 1995 License Agreement, the 1999 IP Agreement, the 2001 IP Agreement, the Asserted Patents are expressly or impliedly licensed to ARRIS, licensed to ARRIS's customers, and exhausted with respect to ARRIS's customers for at least the Implicated ARRIS Products.

203.    Absent a declaration that Defendants' rights in the Asserted Patents are expressly or impliedly licensed to ARRIS and its customer and/or exhausted, Defendants will continue to assert the Asserted Patents against ARRIS and/or its customers and thereby cause ARRIS irreparable harm and injury.

204.    A substantial, immediate, and real controversy therefore exists between ARRIS and Defendants as to whether the Asserted Patents are expressly or impliedly licensed to ARRIS, licensed to ARRIS's customers, and exhausted with respect to ARRIS's customers' use of the Implicated ARRIS Products.

205.    Based on the foregoing, Plaintiffs hereby request a declaration from the Court that Defendants' rights in at least the Asserted Patents are expressly or impliedly licensed to ARRIS, licensed to ARRIS's customers, and exhausted with respect to ARRIS's customers' use of the following Implicated ARRIS Products:

    a.    Cable Modem Terminations Systems ("CMTSs"),

    b.    Embedded Media Terminal Adapters ("eMTAs"),

    c.    Cable Modems ("CMs"),

    d.    Set-Top Boxes ("STBs"),

    e.    Routers, and

    f.    Switched Digital Video Systems ("SDV Systems").

**SECOND CLAIM FOR RELIEF:  BREACH OF CONTRACT PURSUANT TO THE LICENSES BETWEEN ARRIS AND NORTEL**

<u>(AGAINST ROCKSTAR AND CONSTELLATION)</u>

206.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

207.    Pursuant to the 1995 License Agreement, the 1999 IP Agreement, and the 2001 IP Agreement, ARRIS was and continues to be licensed under Nortel's patents to use, sell, make, and have made natural improvements and evolutions of licensed products that previously were sold and made by ARRIS and Nortel, including the Implicated ARRIS Products.

208.    When Rockstar acquired its patent portfolio from the Nortel bankruptcy estate, Rockstar expressly agreed to abide by certain categories of Nortel commercial licenses, which include the 1995 License Agreement, the 1999 IP Agreement, and the 2001 IP Agreement.

209.    Defendants have breached their express and implied licensing commitments by engaging in the following acts:

  a.    Bringing suit against TWC;

  b.    Sending assertion letters to ARRIS's customers;

  c.    Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

  d.    Refusing to enter into licensing negotiations with ARRIS and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements; and

  e.    Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including ARRIS and/or its customers, to pay licensing fees for patents that are already licensed to those industry participants.

210.    As a result of those breaches, ARRIS has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

211.    As a remedy for those breaches, ARRIS respectfully requests the equitable

remedy of specific performance by Rockstar and Constellation of their obligations to honor the royalty-free licensing terms.

212.    As an additional remedy for Rockstar's and Constellation's breaches, ARRIS respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF:  BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT PURSUANT TO THE LICENSES BETWEEN ARRIS AND NORTEL

### (AGAINST ROCKSTAR AND CONSTELLATION)

213.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

214.    Pursuant to the 1995 License Agreement, the 1999 IP Agreement, and the 2001 IP Agreement, ARRIS was and continues to be licensed under Nortel's patents to use, sell, make, and have made, ARRIS natural improvements and evolutions of licensed products that previously were sold and made by ARRIS and Nortel, including the Implicated ARRIS Products.

215.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with ARRIS and its customers in good faith and with fair dealing, would take no action that would deprive ARRIS and its customers of their benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect ARRIS's and its customers' enjoyment of their rights under Nortel's contractual commitments.

216.    At all relevant times, ARRIS and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under Nortel's contractual commitments.

217.    As successors in interest to the Nortel patent portfolio, Rockstar and Constellation were obligated to honor royalty-free licensing commitments with respect to the Asserted Patents.

218.    Defendants have breached their express and implied licensing commitments by engaging in the following acts:

      a.      Bringing suit against TWC;

      b.      Sending assertion letters to ARRIS's customers;

      c.      Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

      d.      Refusing to enter into licensing negotiations with ARRIS and/or its customers or their vendors in the absence of highly-restrictive non-disclosure agreements; and

      e.      Using the protections afforded it under non-disclosure agreements to conduct its campaign to extort industry participants, including ARRIS and/or its customers to pay licensing fees for patents that were already licensed to those industry participants.

219.    Through the foregoing acts, Rockstar unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of ARRIS and its customers under royalty-free licensing commitments, prevented ARRIS and its customers from receiving the benefits they were entitled to receive under commitments to license the Nortel patent portfolio on royalty-free terms.

220.    As a result of the foregoing breaches, ARRIS has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

221.    As a remedy for those breaches, ARRIS respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to honor the royalty-free licensing terms.

222.    As an additional remedy for Rockstar's and Constellation's breaches, ARRIS respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF: DECLARATORY JUDGMENT OF LICENSE AND EXHAUSTION OF '474 PATENT RIGHTS RELATING TO DOCSIS AND PACKETCABLE PURSUANT TO CABLELABS AGREEMENTS

### (AGAINST ROCKSTAR AND CONSTELLATION)

223.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

224.    An actual controversy exists between ARRIS and Constellation as to whether ARRIS and its customers are beneficiaries of a royalty-free license under the '474 patent.

225.    The issue of whether ARRIS and its customers are the beneficiaries of a royalty-free license under the '474 patent is ripe for adjudication because Rockstar has insisted that ARRIS's customers infringe the '474 patent by practicing one or more DOCSIS or PacketCable standards published by CableLabs, and implemented in one or more of the following products:

      a.    Cable Modem Terminations Systems ("CMTSs"),

      b.    Embedded Media Terminal Adapters ("eMTAs"), and

      c.    Cable Modems ("CMs").

226.    By alleging infringement of the '474 patent based solely on ARRIS's customers' use of DOCSIS or PacketCable, Rockstar has alleged that the '474 patent is essential to DOCSIS and PacketCable.

227.    Rockstar's and Constellation's predecessors in interest in the '474 patent, including LANcity (the assignee listed on the face of the patent), joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by it or its affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

228.    As a DOCSIS and PacketCable Licensor, ARRIS obtained from CableLabs a non-

37

transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '474 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

229.    Rockstar's allegations against ARRIS's customers are barred pursuant to the licenses that ARRIS holds to at least the '474 patent based on an express or implied license and/or the doctrine of patent exhaustion.

230.    A judicial declaration is necessary and appropriate to decide whether ARRIS and its customers are beneficiaries of a royalty-free license under the '474 patent.

231.    In light of Rockstar's allegations of infringement, an actual and justiciable controversy exists between ARRIS, Rockstar, and Constellation with respect to whether the '474 is expressly or impliedly licensed to ARRIS and/or exhausted with respect to ARRIS's customers.

232.    Absent a declaration that Rockstar's and Constellation's rights in the '474 patents are expressly or impliedly licensed to ARRIS and/or exhausted, Rockstar and Constellation will continue to wrongfully assert the '474 patent against ARRIS's customers and thereby cause ARRIS irreparable harm and injury.

233.    Based on the forgoing, ARRIS respectfully requests a declaratory judgment that ARRIS is a beneficiary of a royalty-free license to the '474 patent to the extent necessary to practice DOCSIS and/or PacketCable and that, if Rockstar and Constellation refuse to offer royalty-free licenses to the '474 patent to ARRIS, it shall be unenforceable as to ARRIS and its customers with respect to DOCSIS and/or PacketCable.

234.    Based on the forgoing, ARRIS respectfully requests a declaratory judgment that the following ARRIS products (and/or their use by ARRIS and its customers) are licensed to the

'474 patent to practice DOCSIS and/or PacketCable:

     a.     Cable Modem Terminations Systems ("CMTSs"),

     b.     Embedded Media Terminal Adapters ("eMTAs"), and

     c.     Cable Modems ("CMs").

## FIFTH CLAIM FOR RELIEF:  DECLARATORY JUDGMENT OF LICENSE AND EXHAUSTION OF '197 PATENT RIGHTS RELATING TO DOCSIS AND PACKETCABLE PURSUANT TO CABLELABS AGREEMENTS

### (AGAINST ROCKSTAR AND CONSTELLATION)

235.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

236.    An actual controversy exists between ARRIS and Constellation as to whether ARRIS and its customers are beneficiaries of a royalty-free license under the '197 patent.

237.    The issue of whether ARRIS and its customers are the beneficiaries of a royalty-free license under the '197 patent is ripe for adjudication because Rockstar has insisted that ARRIS's customers infringe the '197 patent by practicing one or more DOCSIS or PacketCable standards published by CableLabs, and implemented in one or more of the following products:

     a.     Cable Modem Terminations Systems ("CMTSs"),

     b.     Embedded Media Terminal Adapters ("eMTAs"), and

     c.     Cable Modems ("CMs").

238.    By alleging infringement of the '197 patent based solely on ARRIS's customers' use of DOCSIS or PacketCable, Rockstar has alleged that the '197 patent is essential to DOCSIS and PacketCable.

239.    Rockstar's and Constellation's predecessors in interest in the '197 patent joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and

future patents owned by it or its affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

240.    As a DOCSIS and PacketCable Licensor, ARRIS obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '197 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

241.    Rockstar's allegations against ARRIS's customers are barred pursuant to the licenses that ARRIS holds to at least the '197 patent based on an express or implied license and/or the doctrine of patent exhaustion.

242.    A judicial declaration is necessary and appropriate to decide whether ARRIS and its customers are beneficiaries of a royalty-free license under the '197 patent.

243.    In light of Rockstar's allegations of infringement, an actual and justiciable controversy exists between ARRIS, Rockstar, and Constellation with respect to whether the '197 is expressly or impliedly licensed to ARRIS and/or exhausted with respect to ARRIS's customers.

244.    Absent a declaration that Rockstar's and Constellation's rights in the '197 patents are expressly or impliedly licensed to ARRIS and/or exhausted, Rockstar and Constellation will continue to wrongfully assert the '197 patent against ARRIS's customers and thereby cause ARRIS irreparable harm and injury.

245.    Based on the forgoing, ARRIS respectfully requests a declaratory judgment that ARRIS is a beneficiary of a royalty-free license to the '197 patent to the extent necessary to practice DOCSIS and/or PacketCable and that, if Rockstar and Constellation refuse to offer royalty-free licenses to the '197 patent to ARRIS, it shall be unenforceable as to ARRIS and its

customers with respect to DOCSIS and/or PacketCable.

246. Based on the forgoing, ARRIS respectfully requests a declaratory judgment that the following ARRIS products (and/or their use by ARRIS and its customers) are licensed to the '197 patent to practice DOCSIS and/or PacketCable:

      a.     Cable Modem Terminations Systems ("CMTSs"),

      b.     Embedded Media Terminal Adapters ("eMTAs"), and

      c.     Cable Modems ("CMs").

## SIXTH CLAIM FOR RELIEF:  DECLARATORY JUDGMENT OF LICENSE AND EXHAUSTION OF '298 PATENT RIGHTS RELATING TO DOCSIS, PACKETCABLE, AND CABLEHOME PURSUANT TO CABLELABS AGREEMENTS

### (AGAINST ROCKSTAR)

247. ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

248. An actual controversy exists between ARRIS and Rockstar as to whether ARRIS and its customers are beneficiaries of a royalty-free license under the '298 patent.

249. The issue of whether ARRIS and its customers are the beneficiaries of a royalty-free license under the '298 patent is ripe for adjudication because Rockstar has insisted that ARRIS's customers infringe the '298 patent by practicing one or more DOCSIS, PacketCable, or eRouter standards published by CableLabs, and implemented in one or more of the following products:

      a.     Cable Modems ("CMs"), and

      b.     Embedded Multimedia Terminal Adapters ("eMTAs").

250. By alleging infringement of the '298 patent based solely on ARRIS's customers' use of DOCSIS, PacketCable, and eRouter, Rockstar has alleged that the '298 patent is essential to DOCSIS, PacketCable, and eRouter.

251.    Rockstar's predecessors in interest in the '298 patent joined the DOCSIS, PacketCable, and CableHome patent pools.

252.    As a DOCSIS, PacketCable, and CableHome Licensor, ARRIS obtained a royalty-free license to the '298 patent to the extent necessary for compliance with current or future versions of DOCSIS, PacketCable, and the eRouter functionality included in the CableHome specification.

253.    Rockstar's allegations against ARRIS's customers are barred pursuant to the licenses that ARRIS holds to at least the '298 patent based on an express or implied license and/or the doctrine of patent exhaustion.

254.    A judicial declaration is necessary and appropriate to decide whether ARRIS and its customers are beneficiaries of a royalty-free license under the '298 patent.

255.    In light of Rockstar's allegations of infringement, an actual and justiciable controversy exists between ARRIS and Rockstar with respect to whether the '298 is expressly or impliedly licensed to ARRIS and/or exhausted with respect to ARRIS's customers.

256.    Absent a declaration that Rockstar's rights in the '298 patents are expressly or impliedly licensed to ARRIS and/or exhausted, Rockstar will continue to wrongfully assert the '298 patent against ARRIS's customers and thereby cause ARRIS irreparable harm and injury.

257.    Based on the forgoing, ARRIS respectfully requests a declaratory judgment that ARRIS is a beneficiary of a royalty-free license to the '298 patent to the extent necessary to practice DOCSIS, PacketCable, and/or the eRouter specification, as authorized by CableHome, and that, if Rockstar refuses to offer royalty-free licenses to the '298 patent to ARRIS, it shall be unenforceable as to ARRIS and its customers with respect to DOCSIS, PacketCable, and/or the CableHome components of eRouter.

258.    Based on the forgoing, ARRIS respectfully requests a declaratory judgment that the following ARRIS products (and/or their use by ARRIS and its customers) are licensed to the '298 patent to practice DOCSIS, PacketCable, and/or the CableHome components of eRouter:

    a.    Cable Modems ("CMs"), and

    b.    Embedded Multimedia Terminal Adapters ("eMTAs").

## SEVENTH CLAIM FOR RELIEF:  DECLARATORY JUDGMENT OF LICENSE AND EXHAUSTION OF '893 PATENT RIGHTS RELATING TO DOCSIS AND PACKETCABLE PURSUANT TO CABLELABS AGREEMENTS

### (AGAINST ROCKSTAR AND CONSTELLATION)

259.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

260.    An actual controversy exists between ARRIS and Constellation as to whether ARRIS and its customers are beneficiaries of a royalty-free license under the '893 patent.

261.    The issue of whether ARRIS and its customers are the beneficiaries of a royalty-free license under the '893 patent is ripe for adjudication because Rockstar has insisted that ARRIS's customers infringe the '893 patent by practicing one or more DOCSIS or PacketCable standards published by CableLabs, and implemented in one or more of the following products:

    a.    Cable Modems ("CMs"), and

    b.    Embedded Multimedia Terminal Adapters ("eMTAs").

262.    By alleging infringement of the '893 patent based solely on ARRIS's customers' use of DOCSIS or PacketCable, Rockstar has alleged that the '893 patent is essential to DOCSIS and PacketCable.

263.    Rockstar's and Constellation's predecessors in interest in the '893 patent joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and

future patents owned by it or its affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

264.    As a DOCSIS and PacketCable Licensor, ARRIS obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '893 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

265.    Rockstar's allegations against ARRIS's customers are barred pursuant to the licenses that ARRIS holds to at least the '893 patent based on an express or implied license and/or the doctrine of patent exhaustion.

266.    A judicial declaration is necessary and appropriate to decide whether ARRIS and its customers are beneficiaries of a royalty-free license under the '893 patent.

267.    In light of Rockstar's allegations of infringement, an actual and justiciable controversy exists between ARRIS, Rockstar, and Constellation with respect to whether the '893 is expressly or impliedly licensed to ARRIS and/or exhausted with respect to ARRIS's customers.

268.    Absent a declaration that Rockstar's and Constellation's rights in the '893 patents are expressly or impliedly licensed to ARRIS and/or exhausted, Rockstar and Constellation will continue to wrongfully assert the '893 patent against ARRIS's customers and thereby cause ARRIS irreparable harm and injury.

269.    Based on the forgoing, ARRIS respectfully requests a declaratory judgment that ARRIS is a beneficiary of a royalty-free license to the '893 patent to the extent necessary to practice DOCSIS and/or PacketCable and that, if Rockstar and Constellation refuse to offer royalty-free licenses to the '893 patent to ARRIS, it shall be unenforceable as to ARRIS and its

customers with respect to DOCSIS and/or PacketCable.

270.    Based on the forgoing, ARRIS respectfully requests a declaratory judgment that the following ARRIS products (and/or their use by ARRIS and its customers) are licensed to the '893 patent to practice DOCSIS and/or PacketCable:

      a.    Cable Modems ("CMs"), and

      b.    Embedded Multimedia Terminal Adapters ("eMTAs").

## EIGHTH CLAIM FOR RELIEF:  DECLARATORY JUDGMENT OF LICENSE AND EXHAUSTION OF '253 PATENT RIGHTS RELATING TO DOCSIS AND PACKETCABLE PURSUANT TO CABLELABS AGREEMENTS

### (AGAINST ROCKSTAR AND CONSTELLATION)

271.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

272.    An actual controversy exists between ARRIS and Constellation as to whether ARRIS and its customers are beneficiaries of a royalty-free license under the '253 patent.

273.    The issue of whether ARRIS and its customers are the beneficiaries of a royalty-free license under the '253 patent is ripe for adjudication because Rockstar has insisted that ARRIS's customers infringe the '253 patent by practicing one or more DOCSIS or PacketCable standards published by CableLabs, and implemented in one or more of the following products:

      a.    Cable Modems ("CMs"), and

      b.    Embedded Multimedia Terminal Adapters ("eMTAs").

274.    By alleging infringement of the '253 patent based solely on ARRIS's customers' use of DOCSIS or PacketCable, Rockstar has alleged that the '253 patent is essential to DOCSIS and PacketCable.

275.    Rockstar's and Constellation's predecessors in interest in the '253 patent joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable,

worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by it or its affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

276.    As a DOCSIS and PacketCable Licensor, ARRIS obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '253 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

277.    Rockstar's allegations against ARRIS's customers are barred pursuant to the licenses that ARRIS holds to at least the '253 patent based on an express or implied license and/or the doctrine of patent exhaustion.

278.    A judicial declaration is necessary and appropriate to decide whether ARRIS and its customers are beneficiaries of a royalty-free license under the '253 patent.

279.    In light of Rockstar's allegations of infringement, an actual and justiciable controversy exists between ARRIS, Rockstar, and Constellation with respect to whether the '253 is expressly or impliedly licensed to ARRIS and/or exhausted with respect to ARRIS's customers.

280.    Absent a declaration that Rockstar's and Constellation's rights in the '253 patents are expressly or impliedly licensed to ARRIS and/or exhausted, Rockstar and Constellation will continue to wrongfully assert the '253  patent against ARRIS's customers and thereby cause ARRIS irreparable harm and injury.

281.    Based on the forgoing, ARRIS respectfully requests a declaratory judgment that ARRIS is a beneficiary of a royalty-free license to the '253 patent to the extent necessary to practice DOCSIS and/or PacketCable and that, if Rockstar and Constellation refuse to offer

royalty-free licenses to the '253 patent to ARRIS, it shall be unenforceable as to ARRIS and its customers with respect to DOCSIS and/or PacketCable.

282.    Based on the forgoing, ARRIS respectfully requests a declaratory judgment that the following ARRIS products (and/or their use by ARRIS and its customers) are licensed to the '253 patent to practice DOCSIS and/or PacketCable:

      a.    Cable Modems ("CMs"), and

      b.    Embedded Multimedia Terminal Adapters ("eMTAs").

## NINTH CLAIM FOR RELIEF:  BREACH OF CONTRACT PURSUANT TO CABLELABS AGREEMENTS WITH RESPECT TO THE '474 PATENT

### (AGAINST ROCKSTAR AND CONSTELLATION)

283.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

284.    Rockstar's and Constellation's predecessors in interest in the '474 patent, including LANcity (the assignee listed on the face of the patent), joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by it or its affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

285.    As a DOCSIS and PacketCable Licensor, ARRIS obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '474 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

286.    As a DOCSIS and PacketCable Licensor, ARRIS is an intended and explicit third-party beneficiary of the CableLabs agreements.

287. Defendants have breached their express and implied licensing commitments by engaging in the following acts:

a. Accusing ARRIS's customers of infringing the '474 patent by using DOCSIS and/or PacketCable;

b. Accusing ARRIS's customers of infringing the '474 patent by purchasing or using ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least: CMTSs, CMs, eMTAs, and Routers;

c. Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d. Refusing to enter into licensing negotiations with ARRIS's customers in the absence of highly-restrictive non-disclosure agreements;

e. Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including ARRIS's customers, to pay licensing fees for patents that are already licensed to those industry participants; and

f. Transferring the '474 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

288. As a result of those breaches, ARRIS has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

289. As a remedy for those breaches, ARRIS respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

48

290.    As an additional remedy for Rockstar's and Constellation's breaches, ARRIS respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

**TENTH CLAIM FOR RELIEF:  BREACH OF CONTRACT PURSUANT TO CABLELABS AGREEMENTS WITH RESPECT TO THE '197 PATENT**

**(AGAINST ROCKSTAR AND CONSTELLATION)**

291.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

292.    Rockstar's and Constellation's predecessors in interest in the '197 patent joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by it or its affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

293.    As a DOCSIS and PacketCable Licensor, ARRIS obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '197 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

294.    As a DOCSIS and PacketCable Licensor, ARRIS is an intended and explicit third-party beneficiary of the CableLabs agreements.

295.    Defendants have breached their express and implied licensing commitments by engaging in the following acts:

    a.    Accusing ARRIS's customers of infringing the '197 patent by using DOCSIS and/or PacketCable;

49

b.      Accusing ARRIS's customers of infringing the '197 patent by purchasing or using ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least: CMTSs, CMs, eMTAs, and Routers;

c.      Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.      Refusing to enter into licensing negotiations with ARRIS's customers in the absence of highly-restrictive non-disclosure agreements;

e.      Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including ARRIS's customers, to pay licensing fees for patents that are already licensed to those industry participants; and

f.      Transferring the '197 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

296.    As a result of those breaches, ARRIS has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

297.    As a remedy for those breaches, ARRIS respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

298.    As an additional remedy for Rockstar's and Constellation's breaches, ARRIS respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## ELEVENTH CLAIM FOR RELIEF:  BREACH OF CONTRACT PURSUANT TO CABLELABS AGREEMENTS WITH RESPECT TO THE '298 PATENT

### (AGAINST ROCKSTAR)

299. ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

300. Rockstar's predecessors in interest in the '298 patent joined the DOCSIS, PacketCable, and CableHome patent pools

301. As a DOCSIS, PacketCable, and CableHome Licensor, ARRIS obtained a royalty-free license to the '298 patent to the extent necessary for compliance with current or future versions of DOCSIS, PacketCable, or the CableHome components of eRouter.

302. As a DOCSIS, PacketCable, and CableHome Licensor, ARRIS is an intended and explicit third-party beneficiary of the CableLabs agreements.

303. Rockstar has breached its express and implied licensing commitments by engaging in the following acts:

    a.    Accusing ARRIS's customers of infringing the '298 patent by using DOCSIS and/or PacketCable;

    b.    Accusing ARRIS's customers of infringing the '298 patent by purchasing or using ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least: CMTSs, CMs, eMTAs, and Routers;

    c.    Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

    d.    Refusing to enter into licensing negotiations with ARRIS's customers in the absence of highly-restrictive non-disclosure agreements;

    e.    Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including ARRIS's

customers, to pay licensing fees for patents that are already licensed to those industry participants.

304.     As a result of those breaches, ARRIS has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

305.     As a remedy for those breaches, ARRIS respectfully requests the equitable remedy of specific performance by Rockstar of its obligations to provide licenses on royalty-free licensing terms.

306.     As an additional remedy for Rockstar's breaches, ARRIS respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## TWELFTH CLAIM FOR RELIEF:  BREACH OF CONTRACT PURSUANT TO CABLELABS AGREEMENTS WITH RESPECT TO THE '893 PATENT

### (AGAINST ROCKSTAR AND CONSTELLATION)

307.     ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

308.     Rockstar's and Constellation's predecessors in interest in the '893 patent joined the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by it or its affiliates essential for compliance with current or future versions of DOCSIS and PacketCable.

309.     As a DOCSIS and PacketCable Licensor, ARRIS obtained from CableLabs a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense, including the '893 patent, to the extent necessary for compliance with current or future versions of DOCSIS and PacketCable.

310.     As a DOCSIS and PacketCable Licensor, ARRIS is an intended and explicit third-

party beneficiary of the CableLabs agreements.

311.    Defendants have breached their express and implied licensing commitments by engaging in the following acts:

        a.    Accusing ARRIS's customers of infringing the '893 patent by using DOCSIS and/or PacketCable;

        b.    Accusing ARRIS's customers of infringing the '893 patent by purchasing or using ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least: CMTSs, CMs, eMTAs, and Routers;

        c.    Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

        d.    Refusing to enter into licensing negotiations with ARRIS's customers in the absence of highly-restrictive non-disclosure agreements;

        e.    Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including ARRIS's customers, to pay licensing fees for patents that are already licensed to those industry participants; and

        f.    Transferring the '893 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

312.    As a result of those breaches, ARRIS has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

313.    As a remedy for those breaches, ARRIS respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide

licenses on royalty-free licensing terms.

314.    As an additional remedy for Rockstar's and Constellation's breaches, ARRIS

respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

### THIRTEENTH CLAIM FOR RELIEF:  BREACH OF CONTRACT PURSUANT TO CABLELABS AGREEMENTS WITH RESPECT TO THE '253 PATENT

### (AGAINST ROCKSTAR AND CONSTELLATION)

315.    ARRIS realleges and incorporates by reference the allegations set forth in the

other sections of the complaint.

316.    Rockstar's and Constellation's predecessors in interest in the '253 patent joined

the DOCSIS and PacketCable patent pools and granted CableLabs a non-transferable,

worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and

future patents owned by it or its affiliates essential for compliance with current or future versions

of DOCSIS and PacketCable.

317.    As a DOCSIS and PacketCable Licensor, ARRIS obtained from CableLabs a non-

transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the

right to license or sublicense, including the '253 patent, to the extent necessary for compliance

with current or future versions of DOCSIS and PacketCable.

318.    As a DOCSIS and PacketCable Licensor, ARRIS is an intended and explicit third-

party beneficiary of the CableLabs agreements.

319.    Defendants have breached their express and implied licensing commitments by

engaging in the following acts:

a.    Accusing ARRIS's customers of infringing the '253 patent by

using DOCSIS and/or PacketCable;

b.      Accusing ARRIS's customers of infringing the '253 patent by purchasing or using ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least: CMTSs, CMs, eMTAs, and Routers;

c.      Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.      Refusing to enter into licensing negotiations with ARRIS's customers in the absence of highly-restrictive non-disclosure agreements;

e.      Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including ARRIS's customers, to pay licensing fees for patents that are already licensed to those industry participants; and

f.      Transferring the '253 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

320.    As a result of those breaches, ARRIS has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

321.    As a remedy for those breaches, ARRIS respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

322.    As an additional remedy for Rockstar's and Constellation's breaches, ARRIS respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FOURTEENTH CLAIM FOR RELIEF:  BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT PURSUANT TO CABLELABS AGREEMENTS WITH RESPECT TO THE '474 PATENT

### (AGAINST ROCKSTAR AND CONSTELLATION)

323.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

324.    As discussed above, Rockstar's and Constellation's predecessors in interest signed a license agreement with CableLabs committing to provide licenses to certain patents, including the '474 patent, on royalty-free terms.

325.    The CableLabs contractual commitments to license the '474 patent on royalty-free terms are irrevocable and run with the patent and, as successors in interest to the '474 patent, Rockstar and Constellation are obligated to honor the CableLabs contractual commitments.

326.    The CableLabs contractual commitments contain a covenant implied by law that the CableLabs licensors would deal with ARRIS and its customers in good faith and with fair dealing, would take no action that would deprive ARRIS and its customers of their benefits under the CableLabs contractual commitments, and would take such actions as were necessary to protect ARRIS's and its customers' enjoyment of their rights under the CableLabs contractual commitments.

327.    At all relevant times, ARRIS and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under the CableLabs contractual commitments.

328.    As successors in interest to the '474 patent, Rockstar and Constellation were obligated to honor the CableLabs license commitments.

329.    As a DOCSIS and PacketCable Licensor, ARRIS is an intended and explicit third-party beneficiary of the CableLabs agreements.

330.     Defendants have breached their express and implied licensing commitments by engaging in the following acts:

a.     Accusing ARRIS's customers of infringing the '474 patent by using DOCSIS and/or PacketCable;

b.     Accusing ARRIS's customers of infringing the '474 patent by purchasing or using ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least: CMTSs, CMs, eMTAs, and Routers;

c.     Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.     Refusing to enter into licensing negotiations with ARRIS's customers in the absence of highly-restrictive non-disclosure agreements;

e.     Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including ARRIS's customers, to pay licensing fees for patents that are already licensed to those industry participants; and

f.     Transferring the '474 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

331.     Through the foregoing acts, Defendants unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of ARRIS and its customers under the CableLabs agreements, prevented ARRIS and its customers from receiving the benefits they were entitled to receive under commitments to license the '474 patent on royalty-free terms.

332.     As a result of the foregoing breaches, ARRIS has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

333.     As a remedy for those breaches, ARRIS respectfully requests the equitable

remedy of specific performance by Rockstar and Constellation of their obligations to provide
licenses on royalty-free licensing terms.

334.     As an additional remedy for Rockstar's and Constellation's breaches, ARRIS
respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FIFTEENTH CLAIM FOR RELIEF:  BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT PURSUANT TO CABLELABS AGREEMENTS WITH RESPECT TO THE '197 PATENT

### (AGAINST ROCKSTAR AND CONSTELLATION)

335.     ARRIS realleges and incorporates by reference the allegations set forth in the
other sections of the complaint.

336.     As discussed above, Rockstar's and Constellation's predecessors in interest
signed a license agreement with CableLabs committing to provide licenses to certain patents,
including the '197 patent, on royalty-free terms.

337.     The CableLabs contractual commitments to license the '197 patent on royalty-free
terms are irrevocable and run with the patent and, as successors in interest to the '197 patent,
Rockstar and Constellation are obligated to honor the CableLabs contractual commitments.

338.     The CableLabs contractual commitments contain a covenant implied by law that
the CableLabs licensors would deal with ARRIS and its customers in good faith and with fair
dealing, would take no action that would deprive ARRIS and its customers of their benefits
under the CableLabs contractual commitments, and would take such actions as were necessary to
protect ARRIS's and its customers' enjoyment of their rights under the CableLabs contractual
commitments.

339.     At all relevant times, ARRIS and its customers have duly performed all material
conditions, covenants, and promises on their part to be performed under the CableLabs
contractual commitments.

340.    As successors in interest to the '197 patent, Rockstar and Constellation were obligated to honor the CableLabs license commitments.

341.    As a DOCSIS and PacketCable Licensor, ARRIS is an intended and explicit third-party beneficiary of the CableLabs agreements.

342.    Defendants have breached their express and implied licensing commitments by engaging in the following acts:

a.      Accusing ARRIS's customers of infringing the '197 patent by using DOCSIS and/or PacketCable;

b.      Accusing ARRIS's customers of infringing the '197 patent by purchasing or using ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least: CMTSs, CMs, eMTAs, and Routers;

c.      Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.      Refusing to enter into licensing negotiations with ARRIS's customers in the absence of highly-restrictive non-disclosure agreements;

e.      Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including ARRIS's customers, to pay licensing fees for patents that are already licensed to those industry participants; and

f.      Transferring the '197 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

343.    Through the foregoing acts, Defendants unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of ARRIS and its customers under the CableLabs agreements, prevented ARRIS and its customers from receiving the benefits they

were entitled to receive under commitments to license the '197 patent on royalty-free terms.

344.    As a result of the foregoing breaches, ARRIS has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

345.    As a remedy for those breaches, ARRIS respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

346.    As an additional remedy for Rockstar's and Constellation's breaches, ARRIS respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## SIXTEENTH CLAIM FOR RELIEF:  BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT PURSUANT TO CABLELABS AGREEMENTS WITH RESPECT TO THE '298 PATENT

### (AGAINST ROCKSTAR)

347.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

348.    As discussed above, Rockstar's predecessors in interest signed a license agreement with CableLabs committing to provide licenses to certain patents, including the '298 patent, on royalty-free terms.

349.    The CableLabs contractual commitments to license the '298 patent on royalty-free terms are irrevocable and run with the patent and, as a successor in interest to the '298 patent, Rockstar is obligated to honor the CableLabs contractual commitments.

350.    The CableLabs contractual commitments contain a covenant implied by law that the CableLabs licensors would deal with ARRIS and its customers in good faith and with fair dealing, would take no action that would deprive ARRIS and its customers of their benefits under the CableLabs contractual commitments, and would take such actions as were necessary to protect ARRIS's and its customers' enjoyment of their rights under the CableLabs contractual

commitments.

351.    At all relevant times, ARRIS and its customers have duly performed all material

conditions, covenants, and promises on their part to be performed under the CableLabs

contractual commitments.

352.    As a successor in interest to the '298 patent, Rockstar was obligated to honor the

CableLabs license commitments.

353.    As a DOCSIS and PacketCable Licensor, ARRIS is an intended and explicit third-

party beneficiary of the CableLabs agreements.

354.    Rockstar have breached its express and implied licensing commitments by

engaging in the following acts:

        a.      Accusing ARRIS's customers of infringing the '197 patent by using

DOCSIS and/or PacketCable;

        b.      Accusing ARRIS's customers of infringing the '197 patent by purchasing

or using ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable,

including at least: CMTSs, CMs, eMTAs, and Routers;

        c.      Making or having made public statements to the effect that Nortel's

royalty-free licensing commitments would not be honored;

        d.      Refusing to enter into licensing negotiations with ARRIS's customers in

the absence of highly-restrictive non-disclosure agreements;

        e.      Using the protections afforded to them under non-disclosure agreements to

conduct their campaign to extort industry participants, including ARRIS's customers, to pay

licensing fees for patents that are already licensed to those industry participants.

355.    Through the foregoing acts, Rockstar unfairly and in bad faith, arbitrarily and

unreasonably, with a motive to intentionally frustrate the right of ARRIS and its customers under

the CableLabs agreements, prevented ARRIS and its customers from receiving the benefits they

were entitled to receive under commitments to license the '298 patent on royalty-free terms.

356.    As a result of the foregoing breaches, ARRIS has been injured in its business or

property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

357.    As a remedy for those breaches, ARRIS respectfully requests the equitable

remedy of specific performance by Rockstar and Constellation of their obligations to provide

licenses on royalty-free licensing terms.

358.    As an additional remedy for Rockstar's and Constellation's breaches, ARRIS

respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## SEVENTEENTH CLAIM FOR RELIEF:  BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT PURSUANT TO CABLELABS AGREEMENTS WITH RESPECT TO THE '893 PATENT

### (AGAINST ROCKSTAR AND CONSTELLATION)

359.    ARRIS realleges and incorporates by reference the allegations set forth in the

other sections of the complaint.

360.    As discussed above, Rockstar's and Constellation's predecessors in interest

signed a license agreement with CableLabs committing to provide licenses to certain patents,

including the '893 patent, on royalty-free terms.

361.    The CableLabs contractual commitments to license the '893 patent on royalty-free

terms are irrevocable and run with the patent and, as successors in interest to the '893 patent,

Rockstar and Constellation are obligated to honor the CableLabs contractual commitments.

362.    The CableLabs contractual commitments contain a covenant implied by law that

the CableLabs licensors would deal with ARRIS and its customers in good faith and with fair

dealing, would take no action that would deprive ARRIS and its customers of their benefits

under the CableLabs contractual commitments, and would take such actions as were necessary to protect ARRIS's and its customers' enjoyment of their rights under the CableLabs contractual commitments.

363.    At all relevant times, ARRIS and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under the CableLabs contractual commitments.

364.    As successors in interest to the '893 patent, Rockstar and Constellation were obligated to honor the CableLabs license commitments.

365.    As a DOCSIS and PacketCable Licensor, ARRIS is an intended and explicit third-party beneficiary of the CableLabs agreements.

366.    Defendants have breached their express and implied licensing commitments by engaging in the following acts:

a.      Accusing ARRIS's customers of infringing the '893 patent by using DOCSIS and/or PacketCable;

b.      Accusing ARRIS's customers of infringing the '893 patent by purchasing or using ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least: CMTSs, CMs, eMTAs, and Routers;

c.      Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

d.      Refusing to enter into licensing negotiations with ARRIS's customers in the absence of highly-restrictive non-disclosure agreements;

e.      Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including ARRIS's customers, to pay licensing fees for patents that are already licensed to those industry participants; and

f.      Transferring the '893 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

367.    Through the foregoing acts, Defendants unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of ARRIS and its customers under the CableLabs agreements, prevented ARRIS and its customers from receiving the benefits they were entitled to receive under commitments to license the '893 patent on royalty-free terms.

368.    As a result of the foregoing breaches, ARRIS has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

369.    As a remedy for those breaches, ARRIS respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

370.    As an additional remedy for Rockstar's and Constellation's breaches, ARRIS respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## EIGHTEENTH CLAIM FOR RELIEF:  BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT PURSUANT TO CABLELABS AGREEMENTS WITH RESPECT TO THE '253 PATENT

### (AGAINST ROCKSTAR AND CONSTELLATION)

371.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

372.    As discussed above, Rockstar's and Constellation's predecessors in interest signed a license agreement with CableLabs committing to provide licenses to certain patents, including the '253 patent, on royalty-free terms.

373.    The CableLabs contractual commitments to license the '253 patent on royalty-free terms are irrevocable and run with the patent and, as successors in interest to the '253 patent, Rockstar and Constellation are obligated to honor the CableLabs contractual commitments.

374.    The CableLabs contractual commitments contain a covenant implied by law that the CableLabs licensors would deal with ARRIS and its customers in good faith and with fair dealing, would take no action that would deprive ARRIS and its customers of their benefits under the CableLabs contractual commitments, and would take such actions as were necessary to protect ARRIS's and its customers' enjoyment of their rights under the CableLabs contractual commitments.

375.    At all relevant times, ARRIS and its customers have duly performed all material conditions, covenants, and promises on their part to be performed under the CableLabs contractual commitments.

376.    As successors in interest to the '893 patent, Rockstar and Constellation were obligated to honor the CableLabs license commitments.

377.    As a DOCSIS and PacketCable Licensor, ARRIS is an intended and explicit third-party beneficiary of the CableLabs agreements.

378.    Defendants have breached their express and implied licensing commitments by engaging in the following acts:

      a.    Accusing ARRIS's customers of infringing the '253 patent by using DOCSIS and/or PacketCable;

      b.    Accusing ARRIS's customers of infringing the '253 patent by purchasing or using ARRIS equipment that is certified for compliance with DOCSIS and/or PacketCable, including at least: CMTSs, CMs, eMTAs, and Routers;

      c.     Making or having made public statements to the effect that Nortel's royalty-free licensing commitments would not be honored;

      d.     Refusing to enter into licensing negotiations with ARRIS's customers in the absence of highly-restrictive non-disclosure agreements;

      e.     Using the protections afforded to them under non-disclosure agreements to conduct their campaign to extort industry participants, including ARRIS's customers, to pay licensing fees for patents that are already licensed to those industry participants; and

      f.     Transferring the '253 patent to Constellation with the knowledge that Constellation would not honor its royalty-free licensing obligations as a successor-in-interest.

379.    Through the foregoing acts, Defendants unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the right of ARRIS and its customers under the CableLabs agreements, prevented ARRIS and its customers from receiving the benefits they were entitled to receive under commitments to license the '253 patent on royalty-free terms.

380.    As a result of the foregoing breaches, ARRIS has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

381.    As a remedy for those breaches, ARRIS respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms.

382.    As an additional remedy for Rockstar's and Constellation's breaches, ARRIS respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

**NINETEENTH CLAIM FOR RELIEF:**
**UNFAIR COMPETITION UNDER DELAWARE LAW**

**(AGAINST ROCKSTAR AND CONSTELLATION)**

383.    ARRIS realleges and incorporates by reference the allegations set forth in the

other sections of the complaint.

384.    Rockstar and Constellation are Delaware entities subject to Delaware unfair

competition law.

385.    ARRIS sells products and provides technical support to its customers, including

the Known Accused Customers.

386.    ARRIS has business relationships with its customers, including the Known

Accused Customers, with which Rockstar and Constellation have unfairly interfered by casting,

in bad faith, broad patent infringement clouds over the products and services that ARRIS

provides to its customers.

387.    As set forth above, Rockstar and Constellation have broadly accused any number

of the Known Accused Customers' products and services – if not their entire business

operation –  of infringing any number of unidentified patents in Rockstar's and/or

Constellation's patent portfolio.

388.    Those broad accusations are made in bad faith because: (1) to the extent that

Rockstar and Constellation have identified specific products and services that infringe specific

patents – beyond the "exemplary" contentions in their patent assertion letters – they are

concealing those specific details from the Known Accused Customers and (2) to the extent that

Rockstar and Constellation have not identified specific products and services that infringe

specific patents – beyond the "exemplary" contentions in their patent assertion letters –  they

have no good faith basis for alleging further patent infringement.

389.    Those broad and bad faith accusations of unspecified patent infringement amount

to unfair competition because they negatively interfere with the business relationship between

ARRIS and its customers.  Because any number of unspecified products that a customer

purchases from ARRIS could fall under Rockstar's and Constellation's broad and bad faith patent infringement allegations, future purchases are negatively impacted. Because these allegations are vague and not detailed, it frustrates Plaintiffs' ability to bring a declaratory judgment claim on specific patents to clear the air.

390.     Additionally, Rockstar has accused the Known Accused Customers of infringement based on patents to which ARRIS already has a license pursuant to multiple contracts with Nortel. Although Rockstar had notice of ARRIS's licenses pursuant to SEC filings and ARRIS's own communications with Rockstar, Rockstar has continued to assert the licensed patents.

391.     As set forth above, despite the fact that ARRIS is licensed to the '474, '197, '298, '893, and '253 patents to the extent those patents are essential to use DOCSIS or PacketCable, Rockstar has wrongfully accused ARRIS customers of infringing those patents based solely on their use of DOCSIS or PacketCable, as implemented through the following ARRIS products:

   a.     Cable Modem Terminations Systems ("CMTSs"),

   b.     Embedded Media Terminal Adapters ("eMTAs"), and

   c.     Cable Modems ("CMs").

392.     As set forth above, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate ARRIS's enjoyment of its rights under these royalty-free licensing commitments, prevented ARRIS from receiving the benefits it was entitled to receive under commitments to license those patents on royalty-free terms. This conduct amounts to unfair competition under Delaware law.

393.     As set forth above, Rockstar has refused to enter into licensing negotiations with ARRIS or its customers in the absence of highly-restrictive non-disclosure agreements intended

to achieve royalty-bearing licenses for patents with royalty-free encumbrances, and extort

industry participants, including ARRIS, that have adopted well-established digital

telecommunication standards.  These agreements prevent ARRIS's customers from freely

disclosing Rockstar's allegations to ARRIS to seek assistance or indemnification, or from

discovering that Rockstar's patents are subject to royalty-free obligations or exhaustion.

Rockstar's actions amount to unfair competition under Delaware law.

394.    Defendants' unfair competition has interfered with ARRIS's relationship with its

customers.

395.    As a result of the foregoing unfair competition, ARRIS has been damaged in its

business or property and is threatened by imminent loss of profits and customers.

396.    ARRIS respectfully requests equitable relief sufficient to eliminate the effects of

the Defendants' unlawful and unfair business acts.  ARRIS therefore respectfully requests

injunctive relief including, but not limited to: (1) an injunction requiring Rockstar and

Constellation to identify all patents that have been assigned or licensed to each and that each

entity presently owns, (2) an injunction requiring Rockstar and Constellation to identify each of

ARRIS's customers to which it has sent patent assertion letters or otherwise asserted

infringement, (3) an injunction requiring Rockstar and Constellation to identify with specificity

in this action all patent infringement claims against ARRIS or any of ARRIS's customers to

which either entity has sent a patent assertion letter or otherwise asserted infringement

(including, but not limited to, the Known Accused Customers) based on all patents identified in

response to item (1) of this paragraph, either by notice to ARRIS and ARRIS's customers so that

ARRIS can bring appropriate declaratory judgment claims in this Court or by assertion of

counterclaims in this action, and to the extent that Rockstar and Constellation cannot or refuse to

particularize their allegations, enjoin Defendants from continuing to lodge unsupported and vague infringement allegations, which cast a cloud over Plaintiffs' business, (4) an injunction requiring Rockstar and Constellation to provide non-confidential, corrective, written statements that they have no further basis upon which to believe that ARRIS or ARRIS's customers have infringed, either directly or indirectly, any patents identified in response to item (1) of this paragraph, (5) an injunction preventing Rockstar and Constellation from bringing further patent infringement claims based on the patents identified in item (1) of this paragraph against ARRIS or any of ARRIS's customers to which either entity has sent a patent assertion letter or otherwise asserted infringement, to the extent those allegations are not made pursuant to item (3) of this paragraph, (6) an injunction preventing Rockstar and Constellation from further accusing ARRIS or ARRIS's customers of patent infringement based on patents to which ARRIS owns a license.

397.     ARRIS also respectfully requests: (1) a declaration that the non-disclosure agreements that Rockstar and/or Constellation has forced its customers to sign in order to negotiate a license to either entity's patents are void and unenforceable and (2) an injunction preventing Rockstar and/or Constellation from requiring ARRIS or its customers to sign a non-disclosure agreement in order to negotiate a license to either entity's patents.

398.     As a remedy for Defendants' unfair competition, ARRIS also respectfully requests compensatory damages, punitive damages, and such other relief as this cause of action allows.

## TWENTIETH CLAIM FOR RELIEF – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '474 PATENT

### (AGAINST ROCKSTAR AND CONSTELLATION)

399.     ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

70

400.     Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the
Known Accused Customers of infringing the '474 Patent by using at least the following
technologies, products, and/or services or complying with the following standards:

      a.      High-Speed Internet,

      b.      DOCSIS 2.0,

      c.      DOCSIS 3.0,

      d.      Digital TV Services, and

      e.      Phone Services.

401.     On information and belief, the Known Accused Customers use the following
ARRIS products to implement the above technologies, products, and services or comply with the
above standards:

      a.      Cable Modem Terminations Systems ("CMTSs"),

      b.      Embedded Media Terminal Adapters ("eMTAs"), and

      c.      Cable Modems ("CMs").

402.     Absent a declaration that the Implicated ARRIS Products do not infringe the '474
Patent, Rockstar and Constellation will continue to wrongfully assert the '474 Patent against
ARRIS and/or its customers and thereby cause ARRIS irreparable harm and injury.

403.     A substantial, immediate, and real controversy therefore exists between ARRIS,
and Rockstar and Constellation as to whether ARRIS's products infringe the '474 Patent.

404.     Based on the foregoing, ARRIS hereby requests a declaration from the Court that
at least the following ARRIS products (and/or their use by ARRIS and its customers) do not
directly or indirectly infringe any claim of the '474 Patent:

      a.      Cable Modem Terminations Systems ("CMTSs"),

      b.        Embedded Media Terminal Adapters ("eMTAs"), and

      c.        Cable Modems ("CMs").

## TWENTY-FIRST CLAIM FOR RELIEF – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '197 PATENT

### (AGAINST ROCKSTAR AND CONSTELLATION)

405.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

406.    Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '197 Patent by using at least the following technologies, products, and/or services or complying with the following standards:

      a.        High-Speed Internet,

      b.        DOCSIS 2.0,

      c.        DOCSIS 3.0,

      d.        Digital TV Services, and

      e.        Phone Services.

407.    On information and belief, the Known Accused Customers use the following ARRIS products to implement the above technologies, products, and services or comply with the above standards:

      a.        Cable Modem Terminations Systems ("CMTSs"),

      b.        Embedded Media Terminal Adapters ("eMTAs"), and

      c.        Cable Modems ("CMs").

408.    Absent a declaration that the Implicated ARRIS Products do not infringe the '197 Patent, Rockstar and Constellation will continue to wrongfully assert the '197 Patent against ARRIS and/or its customers and thereby cause ARRIS irreparable harm and injury.

409.    A substantial, immediate, and real controversy therefore exists between ARRIS, and Rockstar and Constellation as to whether ARRIS's products infringe the '197 Patent.

410.    Based on the foregoing, ARRIS hereby requests a declaration from the Court that at least the following ARRIS products (and/or their use by ARRIS and its customers) do not directly or indirectly infringe any claim of the '197 Patent:

      a.      Cable Modem Terminations Systems ("CMTSs"),

      b.      Embedded Media Terminal Adapters ("eMTAs"), and

      c.      Cable Modems ("CMs").

## TWENTY-SECOND CLAIM FOR RELIEF – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '298 PATENT

### (AGAINST ROCKSTAR)

411.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

412.    Rockstar has accused the Known Accused Customers of infringing the '298 Patent by using at least the following technologies, products, and/or services or complying with the following standards:

      a.      High-Speed Internet,

      b.      DOCSIS 2.0/3.0,

      c.      OpenCable (Tru2way),

      d.      PacketCable 1.5, and

      e.      eRouter.

413.    On information and belief, the Known Accused Customers use the following ARRIS products to implement the above technologies, products, and services or comply with the above standards:

      a.      Cable Modem Terminations Systems ("CMTSs"), and

      b.      Embedded Media Terminal Adapters ("eMTAs").

414.    Absent a declaration that the Implicated ARRIS Products do not infringe the '298 Patent, Rockstar will continue to wrongfully assert the '298 Patent against ARRIS and/or its customers and thereby cause ARRIS irreparable harm and injury.

415.    A substantial, immediate, and real controversy therefore exists between ARRIS and Rockstar as to whether ARRIS's products infringe the '298 Patent.

416.    Based on the foregoing, ARRIS hereby requests a declaration from the Court that at least the following ARRIS products (and/or their use by ARRIS and its customers) do not directly or indirectly infringe any claim of the '298 Patent:

      a.      Cable Modem Terminations Systems ("CMTSs"), and

      b.      Embedded Media Terminal Adapters ("eMTAs").

### TWENTY-THIRD CLAIM FOR RELIEF – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '893 PATENT

### (AGAINST ROCKSTAR AND CONSTELLATION)

417.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

418.    Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '893 Patent by using at least the following technologies, products, and/or services or complying with the following standards:

      a.      Cable Phone Service,

      b.      Multimedia Terminal Adapters,

      c.      PacketCable 1.5,

      d.      High-Speed Internet,

      e.      DOCSIS 2.0/3.0,

      f.      OpenCable (Tru2way), and

      g.      eRouter.

419.     On information and belief, the Known Accused Customers use the following ARRIS products to implement the above technologies, products, and services or comply with the above standards:

      a.      Cable Modem Terminations Systems ("CMTSs"),

      b.      Embedded Media Terminal Adapters ("eMTAs"), and

      c.      Cable Modems ("CMs").

420.     Absent a declaration that the Implicated ARRIS Products do not infringe the '893 Patent, Rockstar and Constellation will continue to wrongfully assert the '893 Patent against ARRIS and/or its customers and thereby cause ARRIS irreparable harm and injury.

421.     A substantial, immediate, and real controversy therefore exists between ARRIS, and Rockstar and Constellation as to whether ARRIS's products infringe the '893 Patent.

422.     Based on the foregoing, ARRIS hereby requests a declaration from the Court that at least the following ARRIS products (and/or their use by ARRIS and its customers) do not directly or indirectly infringe any claim of the '893 Patent:

      a.      Cable Modem Terminations Systems ("CMTSs"),

      b.      Embedded Media Terminal Adapters ("eMTAs"), and

      c.      Cable Modems ("CMs").

## TWENTY-FOURTH CLAIM FOR RELIEF – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '253 PATENT

### (AGAINST ROCKSTAR AND CONSTELLATION)

423.     ARRIS realleges and incorporates by reference the allegations set forth in the

other sections of the complaint.

424.    Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the

Known Accused Customers of infringing the '253 Patent by using at least the following

technologies, products, and/or services or complying with the following standards:

      a.    Cable Phone Service,

      b.    High-Speed Internet,

      c.    PacketCable 1.0/1.5,

      d.    Embedded Multimedia Terminal Adapters, and

      e.    DOCSIS 2.0/3.0.

425.    On information and belief, the Known Accused Customers use the following

ARRIS products to implement the above technologies, products, and services or comply with the

above standards:

      a.    Embedded Media Terminal Adapters, and

      b.    Cable Modem Termination Systems

426.    Absent a declaration that the Implicated ARRIS Products do not infringe the '253

Patent, Rockstar and Constellation will continue to wrongfully assert the '253 Patent against

ARRIS and/or its customers and thereby cause ARRIS irreparable harm and injury.

427.    A substantial, immediate, and real controversy therefore exists between ARRIS,

and Rockstar and Constellation as to whether ARRIS's products infringe the '253 Patent.

428.    Based on the foregoing, ARRIS hereby requests a declaration from the Court that

at least the following ARRIS products (and/or their use by ARRIS and its customers) do not

directly or indirectly infringe any claim of the '253 Patent:

      a.    Embedded Media Terminal Adapters, and

b.      Cable Modem Termination Systems

## TWENTY-FIFTH CLAIM FOR RELIEF – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '879 PATENT

### (AGAINST ROCKSTAR AND CONSTELLATION)

429.    ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

430.    Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '879 Patent by using at least the following technologies, products, and/or services or complying with the following standards:

a.      Ethernet Passive Optical Networks, and

b.      Whole-house Entertainment Networks.

431.    On information and belief, the Known Accused Customers use the following ARRIS products to implement the above technologies, products, and services or comply with the above standards:

a.      Set-Top Boxes, and

b.      Routers

432.    Absent a declaration that the Implicated ARRIS Products do not infringe the '879 Patent, Rockstar and Constellation will continue to wrongfully assert the '879 Patent against ARRIS and/or its customers and thereby cause ARRIS irreparable harm and injury.

433.    A substantial, immediate, and real controversy therefore exists between ARRIS, and Rockstar and Constellation as to whether ARRIS's products infringe the '879 Patent.

434.    Based on the foregoing, ARRIS hereby requests a declaration from the Court that at least the following ARRIS products (and/or their use by ARRIS and its customers) do not directly or indirectly infringe any claim of the '879 Patent:

      a.      Set-Top Boxes, and

      b.      Routers

## TWENTY-SIXTH CLAIM FOR RELIEF – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '649 PATENT

### (AGAINST ROCKSTAR AND CONSTELLATION)

435.     ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

436.     Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '649 Patent by using at least the following technologies, products, and/or services:

      a.      Switched Digital Video,

      b.      Video On Demand, or

      c.      IP Cable Television.

437.     On information and belief, the Known Accused Customers use the following ARRIS products to implement the above technologies, products, and services:

      a.      Set-Top Boxes, and

      b.      SDV Systems.

438.     Absent a declaration that the Implicated ARRIS Products do not infringe the '649 Patent, Rockstar and Constellation will continue to wrongfully assert the '649 Patent against ARRIS and/or its customers and thereby cause ARRIS irreparable harm and injury.

439.     A substantial, immediate, and real controversy therefore exists between ARRIS, and Rockstar and Constellation as to whether ARRIS's products infringe the '649 Patent.

440.     Based on the foregoing, ARRIS hereby requests a declaration from the Court that at least the following ARRIS products (and/or their use by ARRIS and its customers) do not

directly or indirectly infringe any claim of the '649 Patent:

      a.     Set-Top Boxes, and

      b.     SDV Systems.

## TWENTY-SEVENTH CLAIM FOR RELIEF – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '299 PATENT

### (AGAINST ROCKSTAR AND CONSTELLATION)

441. ARRIS realleges and incorporates by reference the allegations set forth in the other sections of the complaint.

442. Rockstar, for itself and on behalf of its subsidiary, Constellation, has accused the Known Accused Customers of infringing the '299 Patent by using at least the following technologies, products, and/or services:

      a.     Switched Digital Video,

      b.     Video On Demand, or

      c.     IP Cable Television.

443. On information and belief, the Known Accused Customers use the following ARRIS products to implement the above technologies, products, and services:

      a.     Set-Top Boxes, and

      b.     SDV Systems.

444. Absent a declaration that the Implicated ARRIS Products do not infringe the '299 Patent, Rockstar and Constellation will continue to wrongfully assert the '299 Patent against ARRIS and/or its customers and thereby cause ARRIS irreparable harm and injury.

445. A substantial, immediate, and real controversy therefore exists between ARRIS, and Rockstar and Constellation as to whether ARRIS's products infringe the '299 Patent.

446. Based on the foregoing, ARRIS hereby requests a declaration from the Court that

at least the following ARRIS products (and/or their use by ARRIS and its customers) do not directly or indirectly infringe any claim of the '299 Patent:

    a.    Set-Top Boxes, and

    b.    SDV Systems.

## PRAYER FOR RELIEF

WHEREFORE, ARRIS seeks the following relief:

1.    A declaration from the Court that Defendants' rights in at least the Asserted Patents are expressly or impliedly licensed to ARRIS, licensed to ARRIS's customers, and exhausted with respect to ARRIS's customers' use of the following Implicated ARRIS Products:

    a.    Cable Modem Terminations Systems ("CMTSs"),

    b.    Embedded Media Terminal Adapters ("eMTAs"),

    c.    Cable Modems ("CMs"),

    d.    Set-Top Boxes ("STBs"),

    e.    Routers, and

    f.    Switched Digital Video Systems ("SDV Systems").

2.    Specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms pursuant the agreements between ARRIS and Nortel for each of the asserted patents.

3.    Specific performance by Rockstar and Constellation of their obligations to provide licenses on royalty-free licensing terms pursuant the CableLabs agreements to the '474, '197, '298, '893, and '253 patents.

4.    Restitution and/or expectancy damages in an amount to be proven at trial for the breach of the agreements between ARRIS and Nortel, and the CableLabs agreements.

5.    An injunction requiring Rockstar and Constellation to honor royalty-free

commitments attached to the Nortel patent portfolio.

6.      A declaratory judgment that the following ARRIS products (and/or their use by ARRIS and its customers) are licensed to the '474 patent to practice DOCSIS and/or PacketCable:

        a.      Cable Modem Terminations Systems ("CMTSs"),

        b.      Embedded Media Terminal Adapters ("eMTAs"), and

        c.      Cable Modems ("CMs").

7.      A declaratory judgment that the following ARRIS products (and/or their use by ARRIS and its customers) are licensed to the '197 patent to practice DOCSIS and/or PacketCable:

        a.      Cable Modem Terminations Systems ("CMTSs"),

        b.      Embedded Media Terminal Adapters ("eMTAs"), and

        c.      Cable Modems ("CMs").

8.      A declaratory judgment that the following ARRIS products (and/or their use by ARRIS and its customers) are licensed to the '298 patent to practice DOCSIS and/or PacketCable:

        a.      Cable Modems ("CMs"), and

        b.      Embedded Multimedia Terminal Adapters ("eMTAs").

9.      A declaratory judgment that the following ARRIS products (and/or their use by ARRIS and its customers) are licensed to the '893 patent to practice DOCSIS and/or PacketCable:

        a.      Cable Modems ("CMs"), and

        b.      Embedded Multimedia Terminal Adapters ("eMTAs").

10.     A declaratory judgment that the following ARRIS products (and/or their use by ARRIS and its customers) are licensed to the '253 patent to practice DOCSIS and/or PacketCable:

    a.     Cable Modems ("CMs"), and

    b.     Embedded Multimedia Terminal Adapters ("eMTAs").

11.     Equitable relief sufficient to eliminate the effects of the Defendants' unlawful and unfair business acts, including, but not limited to: (1) an injunction requiring Rockstar and Constellation to identify all patents that have been assigned or licensed to each and that each entity presently owns, (2) an injunction requiring Rockstar and Constellation to identify each of ARRIS's customers to which it has sent patent assertion letters or otherwise asserted infringement, (3) an injunction requiring Rockstar and Constellation to identify with specificity all patent infringement claims against ARRIS or any of ARRIS's customers to which either entity has sent a patent assertion letter or otherwise asserted infringement (including, but not limited to, the Known Accused Customers) based on all patents identified in response to item (1) of this paragraph so that Plaintiffs can bring appropriate declaratory judgment claims, and to the extent that Rockstar and Constellation cannot or refuse to particularize their allegations, enjoin Defendants from continuing to lodge unsupported and vague infringement allegations, which cast a cloud over Plaintiffs' business, (4) an injunction requiring Rockstar and Constellation to provide non-confidential, corrective, written statements that they have no further basis upon which to believe that ARRIS or ARRIS's customers have infringed, either directly or indirectly, any patents identified in response to item (1) of this paragraph, (5) an injunction preventing Rockstar and Constellation from bringing further patent infringement claims based on the patents identified in item (1) of this paragraph against ARRIS or any of ARRIS's customers to which

either entity has sent a patent assertion letter or otherwise asserted infringement, to the extent

those allegations are not made pursuant to item (3) of this paragraph, (6) an injunction preventing

Rockstar and Constellation from further accusing ARRIS or ARRIS's customers of patent

infringement based on patents to which ARRIS owns a license.

12.     A declaration that the non-disclosure agreements that Rockstar and/or Constellation

has forced ARRIS's customers to sign in order to negotiate a license to either entity's patents are

void and unenforceable.

13.     An injunction preventing Rockstar and/or Constellation from requiring ARRIS or its

customers to sign a non-disclosure agreement in order to negotiate a license to either entity's

patents.

14.     As a remedy for Defendants' unfair competition, ARRIS also respectfully requests

compensatory damages, punitive damages, and such other relief as this cause of action allows.

15.     A declaration from the Court that at least the following ARRIS products (and/or

their use by ARRIS and its customers) do not directly or indirectly infringe any claim of the '474

Patent:

      a.     Cable Modem Terminations Systems ("CMTSs"),

      b.     Embedded Media Terminal Adapters ("eMTAs"), and

      c.     Cable Modems ("CMs").

16.     A declaration from the Court that at least the following ARRIS products (and/or

their use by ARRIS and its customers) do not directly or indirectly infringe any claim of the '197

Patent:

      a.     Cable Modem Terminations Systems ("CMTSs"),

      b.     Embedded Media Terminal Adapters ("eMTAs"), and

        c.      Cable Modems ("CMs").

17.    A declaration from the Court that at least the following ARRIS products (and/or their use by ARRIS and its customers) do not directly or indirectly infringe any claim of the '298 Patent:

        a.      Cable Modem Terminations Systems ("CMTSs") and

        b.      Embedded Media Terminal Adapters ("eMTAs").

18.    A declaration from the Court that at least the following ARRIS products (and/or their use by ARRIS and its customers) do not directly or indirectly infringe any claim of the '893 Patent:

        a.      Cable Modem Terminations Systems ("CMTSs"),

        b.      Embedded Media Terminal Adapters ("eMTAs"), and

        c.      Cable Modems ("CMs").

19.    A declaration from the Court that at least the following ARRIS products (and/or their use by ARRIS and its customers) do not directly or indirectly infringe any claim of the '253 Patent:

        a.      Embedded Media Terminal Adapters, and

        b.      Cable Modem Termination Systems.

20.    A declaration from the Court that at least the following ARRIS products (and/or their use by ARRIS and its customers) do not directly or indirectly infringe any claim of the '879 Patent:

        a.      Set-Top Boxes, and

        b.      Routers.

21.    A declaration from the Court that at least the following ARRIS products (and/or

Case 09-10138-MFW    Doc 14554-2    Filed 10/14/14    Page 87 of 90

their use by ARRIS and its customers) do not directly or indirectly infringe any claim of the '649 Patent:

        a.     Set-Top Boxes, and

        b.     SDV Systems.

22.     A declaration from the Court that at least the following ARRIS products (and/or their use by ARRIS and its customers) do not directly or indirectly infringe any claim of the '299 Patent: Set-Top Boxes and

        a.     Set-Top Boxes, and

        b.     SDV Systems.

23.     Declaring that judgment be entered in favor of ARRIS and against Defendants on each of ARRIS's claims.

24.     Finding that this an exceptional case under 35 U.S.C. § 285.

25.     Awarding ARRIS its costs and attorneys' fees in connection with this action.

26.     Such further and additional relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

ARRIS hereby demands a trial by jury on all issues properly triable before a jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

John M. Desmarais
Paul Bondor
Michael P. Stadnick
Jonas R. McDavit
Ameet A. Modi
Karim Z. Oussayef
Dustin F. Guzior
Alex Henriques
Edward Terchunian
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400

June 6, 2014  - Original Filing Date
8299095
June 13, 2014 - Redacted Filing Date

## CERTIFICATE OF SERVICE

   I hereby certify that on June 6, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

   I further certify that I caused copies of the foregoing document to be served on June 6, 2014, upon the following in the manner indicated:

Brian E. Farnan, Esquire            *VIA ELECTRONIC MAIL*
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Defendants Rockstar Consortium*
*US LP and Constellation Technologies LLC*

Jason Sheasby, Esquire             *VIA ELECTRONIC MAIL*
Alan Heinrich, Esquire
Joseph M. Lipner, Esquire
Benjamin W. Hattenbach, Esquire
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
*Attorneys for Defendants Rockstar Consortium*
*US LP and Constellation Technologies LLC*

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 13, 2014, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                   *VIA ELECTRONIC MAIL*
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants Rockstar Consortium*
*US LP and Constellation Technologies LLC*

Jason Sheasby, Esquire                                     *VIA ELECTRONIC MAIL*
Alan Heinrich, Esquire
Joseph M. Lipner, Esquire
Benjamin W. Hattenbach, Esquire
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
*Attorneys for Defendants Rockstar Consortium*
*US LP and Constellation Technologies LLC*

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)