## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- X

|  |  |  |
|---|---|---|
| *In re* | : | Chapter 11 |
|  | : |  |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |
|  | : | **Hearing Date:  TBD** |
|  | : | **Objections Due: TBD** |

------------------------------------------------------- X

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## COMPELLING THE DEPOSITION OF MURRAY MCDONALD

Nortel Networks Inc. ("NNI"), and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to section 105(a) of the United States Code (the "Bankruptcy Code") and Rule 7037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) compelling the deposition of Murray McDonald, and (b) granting them such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

1.     The Debtors have proposed a settlement that would reduce litigation and resolve issues relating to the entitlement of crossover bonds to post-petition interest (the "PPI Settlement").  They have done so in light of repeated statements by the Monitor and Canadian Debtors before this Court that these issues needed to be resolved in order to move forward with a

---

[1]      The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the U.S. Debtors and their petitions are available at http://dm.epiq11.com/nortel.

global resolution of the sale proceeds allocation litigation and related claims issues.  However,

since the announcement of the PPI Settlement, the Monitor and Canadian Debtors have

aggressively opposed the settlement, including by (i) filing objections to the PPI Settlement

based in part on an argument that funds available for payment of postpetition interest by the

Debtors are unlikely to reach the $1.6 billion they have previously indicated represents the

contract rate of interest that would be owed to the settling bondholders and (ii) taking the

deposition of the Debtors' Principal Officer, John J. Ray III.  The Debtors disagree that the

Monitor and Canadian Debtors' objections have any merit for several reasons, including the fact

that the PPI Settlement represents a compromise of a legal issue on terms that are well within the

range of reasonableness required for approval.

       2.      To the extent the Monitor and Canadian Debtors are not held to their prior

position that post-petition interest entitlement in the Debtors' cases is a $1.6 billion issue, the

Debtors must be permitted to probe the basis for the objection to the PPI Settlement.  A

significant aspect of the Monitor and Canadian Debtors' objection – for which they have served

an expert report and intend to present expert testimony at the hearing – centers on the range of

potential distributions the Debtors and the crossover bonds will receive based on their claims

against certain of the Canadian Debtors.  While the Debtors disagree with the relevance of the

Monitor and Canadian Debtors' proffered expert testimony, the Debtors are entitled to probe the

factual and evidentiary bases for the expert's assumptions.  In order to do so, the Debtors noticed

the deposition of Murray McDonald of Ernst & Young, Inc., the Canadian Monitor, who has

proclaimed familiarity with the many assumptions made by the Monitor and Canadian Debtors'

expert.  Yesterday, October 14, 2014, counsel for the Monitor advised the Debtors' counsel that

Mr. McDonald will not comply with the notice of deposition.  While it is incumbent upon the

Monitor and Canadian Debtors to seek a protective order rather than refuse to comply with the notice, in order to avoid unnecessary delay and disruption to the schedule, the Debtors seek by this Motion to compel Mr. McDonald's deposition on October 23, 2014, the date prescribed in this Court's Scheduling Order.

## JURISDICTION

3.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware (the "District Court") dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.       The statutory bases for the relief requested herein is section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7037.

## FACTUAL BACKGROUND

### A.       Procedural Background

5.       On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. ("NN CALA"),[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases are consolidated for procedural purposes only (the "Chapter 11 Cases"). The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]       NN CALA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

6.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

7.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  On February 27, 2009, based on a petition filed by Mr. Murray McDonald for the Monitor, the Bankruptcy Court entered an order recognizing the CCAA Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code (the "Chapter 15 Proceedings").  Also on the Petition Date, the High Court of Justice in England and Wales placed nineteen of Nortel's European affiliates, including Nortel Networks UK Limited ("NNUK") and certain of its affiliates located in Europe, the Middle East and Africa (collectively, the "EMEA Debtors"),[4] into administration under the control of court-appointed administrators and foreign

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  NNUK, Nortel Networks S.A. ("NNSA"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

representatives.  On July 29, 2011, NNOCL commenced a creditors' voluntary liquidation, represented by Kerry Trigg (the "<u>Liquidator</u>").

### B. The Post-Petition Interest Dispute

8.      On October 25, 2013, Wilmington Trust, N.A. ("<u>Wilmington Trust</u>") filed an objection to two proofs of claim filed by The Bank of New York Mellon and the proof of claim filed by Law Debenture Trust Company [D.I. 12116] (the "<u>Wilmington Objection</u>"), requesting that the Court disallow post-petition interest on such claims in excess of interest calculated at the Federal Judgment Rate.  On November 15, 2013 this Court issued an order adjourning the Wilmington Objection, holding that "the Objection would require the Court to issue an advisory opinion on an issue which may never arise" and that "[c]ourts do not have the power to render an advisory opinion," concluding that "the issue will only be germane if the U.S. Debtors are found to be solvent and the solvency issue is far from decided."[5]

9.      On June 19, 2014, the Monitor submitted the Memorandum of the Monitor Regarding Bondholder Claims Issues [D.I. 13880] (the "<u>Monitor's Request</u>") to request that the Canadian Court and this Court determine several issues regarding the entitlement of bondholders to post-petition interest.  The Monitor's Request asserted that "the post-petition interest portion alone of the Post-Petition Interest and Additional Amounts Claims, absent insolvency law considerations, approximates US$1.6 billion as of December 31, 2013."  Monitor's Request at 1. The Debtors, the Committee and the Bondholder Group opposed such relief.  On June 30, 2014, the Court issued an order establishing a schedule for briefing and argument on two issues regarding post-petition interest: "(1) whether the holders of the crossover bonds claims are legally entitled in each jurisdiction to claim or receive any amounts under the relevant indentures, above and beyond the outstanding principal debt and prepetition interest; and (2) if

---

[5]      <u>See</u> Order dated Nov. 15, 2013 regarding the Wilmington Objection [ECF No. 12399] at 1.

determined that the holders of the crossover bonds claims are so entitled, what additional amounts are such holders entitled to so claim and receive."[6]  Certain parties exchanged opening briefs with respect to the PPI Dispute on July 15, 2014, and response briefs were filed on July 22, 2014.

C.      **The Proposed Settlement Agreement**

10.      On July 24, 2014, the Debtors filed the *Debtors' Motion For Entry Of An Order Pursuant To Bankruptcy Rule 9019 Approving Settlement Agreement By And Among Nortel Networks Inc., The Supporting Bondholders, And The Bank Of New York Mellon With Respect To The NNI Post-Petition Interest Dispute And Related Issues* [D.I. 14076] (the "PPI Settlement Motion").

11.      On July 30, 2014, the Monitor and the Canadian Debtors filed the *Preliminary Objection and Motion of the Monitor and the Canadian Debtors for an Adjournment of the Objection Deadline Concerning the U.S. Debtors' 9019 Motion and for Expedited Discovery* [D.I. 14117] (the "Preliminary Objection").

12.      On August 4, 2014, the Debtors objected to the relief requested in the Preliminary Objection [D.I. 14161].  The Bondholder Group joined in the Debtors' objection [D.I. 14165].

13.      On September 2, 2014, the Court entered the *Order Establishing Discovery Schedule and Other Procedures in Connection with the U.S. Debtors' 9019 Motion* [D.I. 14345] (the "Scheduling Order").  The Scheduling Order provided that the Monitor and Canadian Debtors were required to file their supplemental objection to the PPI Settlement Motion by 5:00 p.m. on October 3, 2014, including the list of witnesses they intend to call in support of their objection.

---

[6]      See Scheduling Order Re: Interest Issues, June 30, 2014, [D.I. 13910].

14.     On September 8, 2014, the Committee filed the *Statement of the Official Committee of Unsecured Creditors of Nortel Networks, Inc. et al. in Support of Debtors Motion For Entry Of An Order Pursuant To Bankruptcy Rule 9019 Approving Settlement Agreement By And Among Nortel Networks Inc., The Supporting Bondholders, And The Bank Of New York Mellon With Respect To The NNI Post Petition Interest Dispute And Related Issues* [Dkt. No. 14189].

15.     On October 3, 2014, the Monitor and Canadian Debtors filed the *Monitor's and Canadian Debtors' Supplemental Objection to Debtors' Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 Approving Post-Petition Interest Agreeme*nt [D.I. 14496] (the "Supplemental Objection") and the *Notice of Filing of the Expert Report of Paul Wertheim in Support of the Monitor's and Canadian Debtors' Supplemental Objection to Debtors' Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 Approving Post-Petition Interest Agreeme*nt [D.I. 14499] (the "Expert Report Notice").  In the Supplemental Objection, the Monitor and Canadian Debtors argue that "there is no likely scenario where the NNI estate would have enough surplus funds to pay the full $1.01 billion PPI Settlement Amount, much less the $1.657 billion to which the Bondholders claim they are entitled."  Suppl. Obj. at ¶ 27.

16.     In connection with the filing of the Supplemental Objection, the Monitor and Canadian Debtors identified Dr. Paul Wertheim as the witness they would call in support of the Supplemental Objection and filed an expert report authored by Dr. Wertheim in support of the Supplemental Objection (as attached to the Expert Report Notice as Exhibit A, the "Expert Report").  The Expert Report purports to predict the amount of available postpetition interest that would be available to the bondholder parties to the PPI Settlement.  Expert Report at ¶ 3.  In so doing, the expert report relies on sources authored by the Monitor and Canadian Debtors.  See,

e.g., Expert Report at fns. 12-13, 16.  Critically, components of Dr. Wertheim's calculations –
including his material assumption valuing "other" Canadian claims at $3.235 billion – are not
found in the documentary sources he cites.

17.     The Scheduling Order provides that all depositions of witnesses identified by the
Monitor and Canadian Debtors shall be conducted beginning October 22, 2014, and concluding
October 23, 2014.

18.     On October 8, 2014, the Debtors filed and served the Notice of Deposition of
Murray McDonald [D.I 14541] (the "McDonald Notice") and the Notice of Deposition of Paul
Wertheim [D.I. 14538] (the "Wertheim Notice," and collectively with the McDonald Notice, the
"Deposition Notices").  On Friday afternoon, October 10, 2014, counsel for the Monitor and
Canadian Debtors notified the Debtors of their agreement to the deposition of Dr. Wertheim on
October 22, 2014, and stated that "it would be helpful if the U.S. Debtors could articulate the
reasons why they believe that Mr. McDonald's deposition is necessary."[7]  Sunday morning,
October 12, 2014, counsel for the Debtors provided that additional information, requested that
the Monitor and Canadian Debtors confirm Mr. McDonald's availability on or before noon on
October 14, 2014, and indicated that the Debtors would seek prompt relief from this Court in the
event of the Monitor and Canadian Debtors' refusal to make Mr. McDonald available for
deposition.[8]  Yesterday evening, October 14, 2014, counsel to the Monitor and Canadian Debtors

---

[7]     Counsel for the Monitor and Canadian Debtors also accused the Debtors' request of being "a premeditated
tactic to harass" given that Mr. McDonald was identified by the Debtors as a potential deponent a month earlier.
The Monitor and Canadian Debtors ignore the fact that from the outset, the Monitor and Canadian Debtors indicated
that their objection would be based in part on projected distributions to creditors of the Canadian Debtors, a subject
on which the Monitor is uniquely knowledgeable.

[8]     A true and correct copy of the above correspondence is attached to the *Declaration of Russell D. Eckenrod
in Support Of Debtors' Motion For Entry Of An Order Compelling The Deposition Of Murray McDonald*, as
attached hereto as Exhibit B.

informed counsel to the Debtors by telephone that they would not produce Mr. McDonald for deposition.

## RELIEF REQUESTED

19.     By this Motion, the Debtors seek, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7037, entry of an order (i) compelling the deposition of Murray McDonald, in his capacity as Monitor and foreign representative of the Canadian Debtors in the Chapter 15 Proceedings, and (ii) granting them such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF

20.     Rule 26(b)(1) permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also* Wilburn v. Maritrans GP Inc., 139 F.3d 350, 355 (3d Cir. 1998) ("[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." (citing Fed. R. Civ. P. 37(a)(2)(A))). Bankruptcy courts allow broad discovery as long as the information sought is relevant to the subject matter of the action. See In re Reading Tube Corp. 73 B.R. 99, 100-101 (E.D. Pa. 1987) (granting motion to compel discovery over relevance objections and noting '[t]he test for relevance in the discovery area is an extremely broad one. 'It is not too strong to say that a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.'") (cite omitted); see also In re Ray, 283 B.R. 70, 81-82 (N.D. Ok. 2002) (noting the broad definition of relevance for discovery purposes.). This Motion seeks the deposition of Mr. McDonald pursuant to the Discovery Order, which provides the parties with an opportunity to seek discovery in addition to that specifically provided for in the order, with scheduling to be determined by the Court or agreement of the parties. Discovery Order at ¶ 10.

21.     The Monitor and Canadian Debtors' Supplemental Objection (and supporting expert testimony) argues that under no possible circumstances will the funds available to the Debtors for creditor distribution exceed the amount of their allowed claims including the PPI Settlement.  A significant component of their purported "analysis" is the anticipated distributions the Debtors will receive on their $2 billion claim against NNL and the crossover bondholders will receive on their primary claims against certain Canadian Debtors.  That analysis is necessarily driven entirely by the assets of and claims against the Canadian Debtors and, the Debtors submit, appears to be unfounded in several material respects.  Unless the Canadian Debtors' projected assets and claims can withstand scrutiny, the Monitor and Canadian Debtors' expert's analysis is meaningless, particularly given Dr. Wertheim's insistence that he has made every potential assumption most favorably to the Debtors.

22.     The Debtors submit that this Court's approval of the PPI Settlement does not depend on the projection of creditor recoveries as portrayed in the Supplemental Objection.  The Monitor itself previously insisted to this Court that the issue the PPI Settlement addresses is legal issue regarding the bondholders' entitlement to potential postpetition interest of approximately $1.6 billion as of December 31, 2013.  *Memorandum re: Nortel Canadian and US Insolvency Proceedings – Bondholder Claims Issues,* June 19, 2014 [D.I. 13880].  The Monitor and Canadian Debtors used this characterization of the issue in pressing this Court to decide the issue, and should be held to that position now.

23.     However, to the extent that the Supplemental Objection is not struck or overruled outright, the discovery sought goes to the heart of  the Monitor and Canadian Debtors' objection. While the Debtors dispute the relevance of the Monitor and Canadian Debtors' arguments even if their Supplemental Objection is considered (as Mr. Ray will testify, he weighed the existence of

a wide range of potential outcomes and the uncertainty of potential results), as long as the

Monitor and Canadian Debtors intend to base their objection on expert testimony regarding, in

significant part, the distributions the U.S. Debtors and crossover bondholders will receive from

the Canadian Debtors, the Debtors must be permitted to probe the reliability of those assumed

distributions through a deposition of Mr. McDonald.  In particular, the Expert Report contains a

number of critical assumptions relating to the assets and liabilities of the Canadian Debtors that

cite reports of the Monitor and other similar filings as the bases for those assumptions.  In several

instances, the cited reports on their face do not reflect the assumptions in the Expert Report, and

the Monitor and Canadian Debtors have not produced any other documents or witnesses that

support or explain the validity of the expert's assumptions.[9]  A deposition of the Monitor, as the

author and/or signatory of such filings (Mr. McDonald in particular was the signatory of certain

of those filings, as well as the foreign representative of the Canadian Debtors in the Chapter 15

Proceedings) is required for the Debtors to understand the bases for the factual assertions made

in the Expert Report, in addition to certain factual arguments advanced in the Supplemental

Objection.

      24.     Notwithstanding the relevance of a deposition of Mr. McDonald to an assessment

of the validity of the Monitor and Canadian Debtors' factual assertions, the Monitor and

Canadian Debtors have refused to make Mr. McDonald available for deposition.  In the absence

of an agreement or order of this Court providing for such a deposition, the Monitor and Canadian

Debtors' refusal to make Mr. McDonald available is grounds for drawing an adverse inference

regarding the validity of the otherwise unsupported factual assumptions and arguments put

---

[9]      For example, the Expert Report assumes that there are $3.235 billion in "other" claims against NNL, and cites to the NNC Form 10-Q filed for the period ending June 30, 2012 (the "2012 10-Q").  Expert Report at Table 1. This assumption is critical to the Expert Report's conclusion regarding the amount of funds available to pay post-petition interest to bondholders in the scenario outlined in the Expert Report.  The Debtors have reviewed the 2012 10-Q, and found no specific basis for that assumption.

forward in the Expert Report and Supplemental Objection.  Such adverse inference would be particularly appropriate with respect to the scenarios depicted by the Monitor and Canadian Debtors and their expert regarding the availability of funds to pay post-petition interest to bondholders following the allocation of sale proceeds and satisfaction of other claims.  See Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 67 (1st Cir. 2003); Stoumen v. C.I.R., 208 F.2d 903, 907 (3d Cir. 1953) (Court inferred from petitioners failure to call witness who participated in the events at issue that his testimony would have been unfavorable to petitioner); Graves v. U.S., 150 U.S. 118, 121 (1893) ("if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.").  The alternative – taking the Monitor and Canadian Debtors' unsupported factual assumptions at face value, without any opportunity for the Debtors to examine their validity – would be unfair to the Debtors and would deprive this Court of the full set of facts necessary to assess the Expert Report and Supplemental Objection.[10]

25.    The Committee and the Bondholder Group support this Motion.

### LOCAL BANKRUPTCY RULE 7026-1(c) CERTIFICATION

26.    As described above, counsel for the Debtors has made reasonable efforts to resolve these discovery issues with the Monitor and Canadian Debtors and have been unable to reach agreement.

---

[10]    The Debtors reserve all rights to seek to exclude the expert report and/or testimony of Dr. Wertheim, including, without limitation, via a motion *in limine*.

## NOTICE

27.     Notice of the Motion has been given via electronic transmission, first class mail, hand delivery or overnight mail to (i) the U.S. Trustee; (ii) the Committee; (iii) the Monitor and Canadian Debtors; (iv) all parties filing objections to the PPI Settlement before this Court; and (v) the general service list established in these chapter 11 cases.  Accordingly, the Debtors submit that under the circumstances no other or further notice is necessary.

## NO PRIOR REQUEST

28.     No prior request for the relief sought herein has been made to this or any other court.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as Exhibit A hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  October 15, 2014
          Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard S. Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*