## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| | (Jointly Administered) |
| Debtors. | **RE: D.I. 14570** |

### MONITOR'S AND CANADIAN DEBTORS' OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER COMPELLING THE DEPOSITION OF MURRAY MCDONALD

Ernst & Young Inc., the Monitor (the "**Monitor**") and foreign representative of Nortel Networks Corporation and certain of its Canadian direct and indirect subsidiaries (collectively, the "**Canadian Debtors**," and with the Monitor, the "**Canadian Interests**") in proceedings (the "**Canadian Proceedings**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**"), pending before the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**," and with this Court, the "**Courts**"), together with the Canadian Debtors, hereby object to the *Debtors' Motion for Entry of an Order Compelling the Deposition of Murray McDonald* (the "**Motion to Compel**") [Dkt. No. 14570]. In support of this objection, the Canadian Interests have filed contemporaneously herewith the *Declaration of Jacob S. Pultman* dated October 20, 2014 (the "**Pultman Declaration**").

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226) (the "**Debtors**").

### PRELIMINARY STATEMENT

1.      The discovery that has been ordered by the Court in connection with the 9019 Motion was intended (i) to be strictly limited in scope, and (ii) to follow a logical progression.  The Motion to Compel violates both aspects of this Court's discovery order in that it seeks to take a deposition that is entirely unrelated to the proposed settlement between the Debtors and the Bondholder Group as contained in the 9019 Motion, and seeks to bypass the schedule of discovery that the Court's order put in place, starting with the witnesses and exhibits intended to be introduced at the hearing.

2.      As this Court recognized, the burden on the 9019 Motion rests squarely with the Debtors.  Thus, the focus of the hearing on the proposed settlement (to the extent that this is a matter that can be settled), and of the limited discovery leading up to that hearing, is on whether the Debtors satisfied their burden under the governing law by demonstrating that the proposed settlement was the result of arms' length negotiations, that the terms were fair and reasonable, and in the best interest of NNI's estate.

3.      As this inquiry called for analysis of the negotiation of the proposed settlement, it was unsurprising that the proponents of the settlement designated as witnesses the key individuals involved in the negotiations.  These two proposed witnesses were then deposed by the Canadian Interests, including the principal officer of the Debtors, who was apparently the only individual handling or approving negotiations for the Debtors, and the lead financial analyst for the Bondholder Group.

4.      By stark contrast to the discovery taken by the Canadian Interests, the Debtors here seek to compel the deposition of a person who had absolutely no involvement in the settlement negotiations at issue, and who has not been designated as a witness in connection with the hearing on the 9019 Motion.  Despite the fact that the burden on the 9019 Motion is on the

Debtors, and the Court's statement that the discovery that should proceed in this matter should be very limited, the Debtors provide no legitimate reason for broadening this Court's discovery order to require this expansive and irrelevant discovery.

5.     The sought deposition of Mr. McDonald is plainly a sideshow intended to deflect attention from the Debtors' own lack of diligence in the negotiation of the proposed settlement and not to obtain relevant discovery, as is plain from three key points.  First, as the Monitor was completely excluded from all settlement negotiations between the Debtors and the Bondholder Group, Mr. McDonald has absolutely no relevant information about that proposed agreement, its terms, and the negotiations.  Second, the Debtors' current claim that they need Mr. McDonald's deposition to inquire about the basis for the expert testimony of Dr. Paul Wertheim, the witness designated by the Canadian Interests, is hardly persuasive given that the Debtors sought the deposition of Mr. McDonald *before* learning of Dr. Wertheim's designation.  Third, the Debtors have not even taken the deposition of Dr. Wertheim and can hardly claim to be in need of testimony from the Monitor as to the basis of his testimony.

6.     In short, the Debtors' Motion to Compel the deposition of Mr. McDonald is a wholly contrived effort under the guise of taking discovery somehow relevant to the 9019 Motion, and should be denied.

## **BACKGROUND**

7.     On July 24, 2014, the Debtors filed the *Debtors' Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 Approving Settlement Agreement by and among Nortel Networks Inc., the Supporting Bondholders, and the Bank of New York Mellon with Respect to the NNI Post Petition Interest Dispute and Related Issues* (the "**9019 Motion**") [Dkt. No. 14076].[2]

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the 9019 Motion.

8.      On July 30, 2014, the Canadian Interests filed a preliminary objection to the 9019 Motion and, given the Debtors' failure to provide any evidentiary support for their motion, the Canadian Interests also requested to take reasonable discovery from the Debtors and the Bondholder Group (the "**Discovery Motion**") [Dkt. No. 14117].

9.      On August 4, 2014, the Debtors objected to the Discovery Motion (the "**Discovery Objection**") [Dkt. No. 14161] and delivered "preliminary" document requests and deposition notices—including a deposition notice of Mr. McDonald—that the Debtors indicated they would serve were the Court to grant the relief sought by the Canadian Interests in the Discovery Motion.

10.      On August 7, 2014, the Canadian Interests filed a reply to the Discovery Objection, which attached for the Court's reference the Debtors' preliminary document requests and deposition notices [Dkt. No. 14173].

11.      On August 8, 2014, the Court held a telephonic conference (the "**August 8 Hearing**") to address the Discovery Motion and the Discovery Objection.  At that hearing, the Court decided that the Canadian Interests should be permitted the opportunity to take reasonable discovery from the Debtors and the Bondholder Group to afford the Canadian Interests a fair opportunity to address the issues raised in the 9019 Motion.  Hr'g Tr. 24:5-10, August 8, 2014.  To balance the Canadian Interests' need for a fair opportunity to respond to the 9019 Motion while avoiding an unduly burdensome and intrusive discovery process, the Court directed the parties to finalize a multi-stage process for the conduct of "targeted" discovery in connection with the 9019 Motion.  *Id*. at 25:12-26:18.  First, the Debtors and the Bondholder Group were required to disclose to the Canadian Interests all of the documents and witnesses on which they intended to rely in support of the 9019 Motion.  Then, the Canadian Interests would be given the opportunity to depose those identified witnesses.  Finally, the Canadian Interests would be

permitted to request "additional targeted discovery based upon what it had received and the depositions it had taken." *Id.* at 25:25-26:1.

12.     With respect to the Debtors' requests to take discovery from the Canadian Interests in connection with Debtors' own 9019 Motion, the Court emphasized at the August 8 Hearing that "***discovery of the Monitor [should] be on a very limited basis, because . . . it's the settling parties . . . who have the burden, and so I would not want the discovery to become overly intrusive***." *Id.* at 26:12-16 (emphasis added).  To resolve this issue, the Court stated that the Canadian Interests should identify any witnesses the Canadian Interests intended to call at the hearing on the 9019 Motion, and the Debtors would then be permitted to depose any such witnesses. *Id.* at 26:9-12.  At no time did the Court contemplate that the Debtors would be permitted to unilaterally serve deposition notices on additional individuals beyond the witnesses affirmatively designated by the Canadian Interests.

13.     On August 29, 2014, following a two-week negotiation period, the parties reached agreement on a form of discovery order that adopted the Court's directions from the August 8 Hearing [Dkt. No. 14339], which order was entered by this Court on September 2, 2014 (the "**Discovery Order**") [Dkt. No. 14345].  The Discovery Order is fully consistent with the groundrules and multi-stage discovery procedure contemplated by the Court at the August 8 Hearing, and does not permit the Debtors (or any other party) to notice the deposition of any individual outside of those identified by the parties as witnesses to be called at the hearing on the 9019 Motion.

14.     On September 2, 2014, pursuant to the Discovery Order, the Debtors and the Bondholder Group designated, respectively, Mr. John Ray, the principal officer of the Debtors, and Mr. Michael Katzenstein, a principal at FTI Consulting ("**FTI**"), the financial advisor to the Bondholder Group, as the witnesses they intended to call in support of the 9019

Motion.   On that same day, the Debtors and the Bondholder Group also produced all the documents that they intend to rely upon in support of the 9019 Motion, which production amounted to a handful of emails between the Debtors and the Bondholders attempting to schedule meetings and conference calls and a few draft settlement agreements exchanged between the Debtors and the Bondholder Group.

15.   On September 8, 2014, the Canadian Interests contacted the Debtors by telephone to schedule Mr. Ray's deposition on a date that was convenient for Mr. Ray.   The Debtors stated categorically that Mr. Ray would only be made available for deposition during a three-hour window on the afternoon of September 15, 2014.   Although the Canadian Interests had not identified any of their expected witnesses, the Debtors took the opportunity to again assert their entitlement to reciprocal discovery of the Monitor and their need to depose Mr. McDonald.

16.   On September 9, 2014, the Debtors followed this telephone call with an email from their counsel stating that they were "willing to make John Ray available for a three-hour deposition beginning at 1:00 p.m. on Monday, September 15, at the offices of the Debtors' counsel."   A copy of this correspondence is attached as Exhibit A to the Pultman Declaration. Although the Debtors offered Mr. Ray as their key witness to meet their burden on the 9019 Motion, the Debtors took pains to make the deposition as minimally intrusive to Mr. Ray as possible, declaring that "[t]his three-hour deposition shall be in full satisfaction of the Settling Parties' obligations as defined in paragraph 3 of the PPI settlement discovery order [DI 14345] (the "Discovery Order"), and John will not be made available for any further deposition in respect of those obligations."   Although the Canadian Interests still had not identified any witnesses (nor had they filed their Supplemental Objection (as defined below) or expert report,

nor produced any documents yet), the Debtors stated—for the third time—that they "currently anticipate that they will require" Mr. McDonald's deposition.

17.    On September 15, 2014, the Canadian Interests took the deposition of Mr. Ray, the Debtors' lone witness.  Bearing in mind the Court's clear instructions to keep discovery targeted, and not desiring to impose undue burden on Mr. Ray, the Canadian Interests completed Mr. Ray's deposition in less than two and half hours.  On September 18, 2014, the Canadian Interests took the deposition of the Bondholder Group's lone witness, Mr. Katzenstein. The Canadian Interests completed Mr. Katzenstein's deposition in less than two hours.

18.    On September 22, 2014, pursuant to the Discovery Order, the Canadian Interests served additional requests for targeted discovery upon the Debtors and the Bondholder Group.  The Canadian Interests did not seek additional depositions, but rather limited their discovery requests to a narrowly tailored set of document production requests that related to specific testimony provided by Messrs. Ray and Katzenstein.  The Canadian Interests' supplemental document discovery requests are attached as Exhibits B and C to the Pultman Declaration.  In response to the Canadian Interests' targeted supplemental document requests, the Debtors merely referred the Canadian Interests to publicly available court pleadings, expert reports, and allocation trial transcripts relating generally to proceedings concerning allocation trial and post-petition interest.  The Bondholder Group produced a single additional page (containing redactions).

19.    On October 3, 2014, the Canadian Interests filed a supplemental objection to the 9019 Motion (the "**Supplemental Objection**") [Dkt. No. 14496], and served the Debtors and the Bondholder Group with the Canadian Interests' witness and document disclosure list, as required by the Discovery Order.  The only witness designated by the Canadian Interests in accordance with the Discovery Order was Dr. Paul Wertheim, who submitted a report that was

filed contemporaneously with the Supplemental Objection (the "**Wertheim report**") [Dkt. No. 14499].

20.     On October 8, 2014, counsel for the Debtors sent a letter to counsel for the Canadian Interests demanding the deposition of Mr. McDonald and requiring a response from the Canadian Interests with their position on such a deposition by October 10, 2014 (the "**October 8 Correspondence**").   The October 8 Correspondence is attached to the Pultman Declaration as Exhibit D.  In addition, the October 8 Correspondence included a series of broad-based document requests, which in many cases are not limited in time, and a notice of the deposition of the Canadian Interests' designated witness, Dr. Wertheim (collectively, the "**Debtors' Discovery Requests**").  In stark contrast to the limited document requests served by the Canadian Interests, the Debtors' Discovery Requests encompass a far-reaching set of requests that seek a wide range of information and documents, including a series of requests for "all documents" relating to legal arguments made in various memoranda of law submitted by the Canadian Interests.  *See* Debtors' Discovery Requests, *e.g.*, Request Nos. 2-3.

21.     That same day, the Debtors filed notices of the deposition of Dr. Wertheim [Dkt. No. 14542] and Mr. McDonald [Dkt. No. 14541].  Mr. McDonald's deposition was noticed despite the fact that the Discovery Order does not provide for his deposition and that the Canadian Interests had not yet even responded to the Debtors' request, and without leave of the Court.   Further, although Mr. McDonald was not designated as a witness by the Canadian Interests, unlike the cooperative approach taken by the Canadian Interests—which conferred with the Debtors and scheduled the depositions of Messrs. Ray and Katzenstein on dates, times, and locations that were convenient for them—the Debtors inserted dates, times, and locations of their choosing into the deposition notices of Dr. Wertheim and Mr. McDonald, without prior consultation with the Canadian Interests.

22.     On October 10, 2014, the Canadian Interests responded to the October 8 Correspondence, confirming that they would make Dr. Wertheim available at the date and time requested by the Debtors, and that the Canadian Interests would respond to the Debtors' document production requests by October 17, 2014, as required by the Discovery Order.  *See* Exhibit B to the Eckenrod Declaration.  Because the Debtors had no entitlement to issue a deposition notice for Mr. McDonald, the Canadian Interests further requested that the Debtors provide a basis for their insistence on Mr. McDonald's deposition.

23.     On October 12, 2014, in further correspondence with the Canadian Interests, the Debtors refused to provide any basis for their request, explaining that they did not want to "preview[] [their] examination of Mr. McDonald."  *See* Exhibit C to the Eckenrod Declaration (the "**October 12 Correspondence**").   The Debtors did provide "one example" of a statement in the Wertheim Report that they believe necessitates fact testimony from Mr. McDonald: "the $3.235 billion in 'other' Canadian claims that is central to the Expert Report but not found in any document cited in that report."  This is the same (and only) "example" the Debtors have cited in their Motion to Compel to attempt to explain the need to take the deposition of Mr. McDonald in addition to the deposition of the actual author of the report. Motion to Compel ¶ 16.

24.     On October 14, 2014, counsel for the Canadian Interests attempted to contact Debtors' counsel, who returned the call later that day.  On that call, the Canadian Interests notified the Debtors that they had failed to provide any reasonable basis for concluding that the deposition of Mr. McDonald is necessary in the circumstances and would therefore not produce Mr. McDonald for deposition.  The Debtors responded by filing the Motion to Compel just before midnight on the following evening, October 15, 2014, which the Canadian Interests did not receive until the morning of October 16, 2014.  The Debtors simultaneously filed a

motion to shorten notice, requesting that the Court schedule a telephonic hearing on the Motion

to Compel for October 17, 2014, arguing it was appropriate in the circumstances to provide the

Canadian Interests with essentially one day's notice of the Motion to Compel (the "**Motion to**

**Shorten**") [Dkt. No. 14572].   On October 16, 2014, the Canadian Interests opposed the Motion

to Shorten [Dkt. No. 14573] and the Court entered an order scheduling a telephonic hearing on

the Motion to Compel for October 21, 2014 [Dkt. No. 14581].

### OBJECTION

25.    The Debtors argue that they were entitled to notice Mr. McDonald's

deposition, and that "it is incumbent upon the Monitor and the Canadian Debtors to seek a

protective order rather than refuse to comply with the notice."  Motion to Compel at 2-3.  That

argument has no basis in light of the Court's direction and Discovery Order.  The Court's

directives—including, specifically, the Discovery Order that the parties spent two weeks

negotiating—govern the parties' discovery obligations in connection with the 9019 Motion.  The

Discovery Order does not permit the Debtors to notice the deposition of anyone besides the

individuals affirmatively designated as witnesses by the Canadian Interests.  The Debtors'

unilateral service of a notice of deposition on Mr. McDonald without the prior agreement of the

Canadian Interests or leave of the Court was improper.  If the Debtors wish to depose Mr.

McDonald, it is the Debtors' burden to demonstrate why such deposition is necessary and

appropriate in the circumstances.  The Motion to Compel falls far short of meeting this burden.

26.    Moreover, the Debtors' insistence on taking Mr. McDonald's deposition is

diametrically at odds with intended scope of the discovery articulated by the Court at the August

8 Hearing and set forth in the Discovery Order, and with the burden at the hearing on the 9019

Motion.  As the Court recognized in establishing the boundaries of discovery in connection with

the 9019 Motion, "the settling parties will bear the burden at the hearing of proving that the

settlement was the result of arms length negotiations, that the terms are fair and reasonable and in the best interest of the Debtor's Estate." Hr'g Tr. 24:17-21, August 8, 2014; *see also In re Neshaminy Office Building Associates*, 62 B.R. 798, 803 (E.D. Pa.1986) (recognizing that the moving party bears the burden of meeting the governing standard, and reversing order approving 9019 settlement where moving party failed to produce sufficient evidence to meet this burden). Thus, it is the Debtors' burden to demonstrate the factors considered *by the Debtors* and the analysis performed *by the Debtors* based on information available to the Debtors at the time they reached the proposed settlement. In light of this focus on the Debtors' evaluation of the proposed settlement, the Court instructed the parties at the outset of this discovery process that any discovery of the Canadian Interests should be taken "on a *very limited basis*" to prevent such discovery from "*becom[ing] overly intrusive*." Hr'g Tr. 26:13-16, August 8, 2014 (emphasis added).

27.    The Debtors have chosen to disregard the Court's clear directions altogether. Instead of seeking good faith, targeted, and "very limited" discovery from the Canadian Interests, the Debtors have instead served far-reaching, unduly burdensome document production requests on the Canadian Interests, and have repeatedly insisted on the deposition of Mr. McDonald in a transparent effort to distract and to transform their burden to demonstrate the fairness of the settlement into a burden on the Canadian Interests to demonstrate its unfairness. In stark contrast to the Debtors' actions, the Canadian Interests complied with the Court's direction to limit discovery to targeted requests, serving only carefully-crafted and time-specific requests to ensure that no undue burden is imposed on the Debtors or the Bondholder Group.

28.    The Debtors next argue that they need to take Mr. McDonald's deposition to "understand the bases" for the opinions set forth in Dr. Wertheim's report. But that transparent argument is plainly an effort by the Debtors to justify *ex post* a deposition that they

first indicated they would demand two months *before* Dr. Wertheim was designated as a witness and before his report was filed.  To justify the necessity of taking Mr. McDonald's deposition, the Debtors have made only general statements about the materiality of the Canadian claims pool and that Mr. McDonald's deposition is needed to explain the basis for Dr. Wertheim's assumption that there is $3.235 billion worth of "other" claims against NNL.  Motion to Compel at ¶ 16.  Specifically, the Debtors claim that they cannot determine how Dr. Wertheim arrived at that figure from the face of the NNC Form 10-Q that Dr. Wertheim cited in his report.  *Id.* at ¶ 23.  It strains credulity to suggest that the Debtors require Mr. McDonald—or any other fact witness—to explain how Dr. Wertheim used a document to perform the calculations contained in his report.  The best person to provide such an explanation is Dr. Wertheim himself, and the Debtors have a full and fair opportunity to test all of the assumptions and calculations contained in his report when they take his deposition on October 22, 2014.  The deposition of Mr. McDonald is not necessary and is obviously sought to create a distraction.

29.    As set forth in the Canadian Interests' Supplemental Objection, the Debtors failed to meet their burden of proof on the 9019 Motion as they provided no evidence on which the Court could rely to indicate that the Debtors undertook any meaningful analysis prior to entering into the proposed settlement, much less an analysis based on the realistic value that such a settlement would provide to NNI's estate.  Given the dearth of evidence offered by the Debtors and in order to assist the Court, the Canadian Interests directed their expert to perform the analysis that any reasonable person would have expected the Debtors to undertake in the first instance.  Using publicly available information to ensure that Dr. Wertheim's analysis rested on information available to the Debtors, Dr. Wertheim demonstrates what should have been obvious

to the Debtors—that the settlement provides no value to the NNI estate.[3]  Now, under the guise of testing the accuracy of the Monitor's prior public reports, the Debtors make their extraordinary request to depose Mr. McDonald as a representative of the Monitor and seek documents regarding every aspect of the CCAA claims resolution process.  These requests are nothing more than a calculated effort to distract the Court from the Debtors' failure to prove its affirmative case.

30.    In stark contrast to the Debtors' approach here, the Canadian Interests have propounded limited and targeted discovery requests on the Debtors.  Given the Court's direction that discovery should be limited in this matter, and in light of obvious concerns about confidentiality and the risk that discovery would pose to the ongoing claims process in the United States, the Canadian Interests have not sought detailed discovery related to the claims pools of the Debtors, notwithstanding the fact that such information would be equally relevant to the question of the value of proposed settlement.[4]

31.    Similarly, with the ongoing Canadian Debtors' CCAA proceedings, the Monitor is continuing to actively discharge its obligations under the CCAA and the orders entered by the Canadian Court in connection with the Canadian claims resolution process.  The Monitor should not be required to provide non-public information regarding the status of the Canadian claims pool in this context, as such potential disclosures without the involvement of the Canadian Court that oversees these claims would plainly impose unacceptable risks to the Monitor's ongoing efforts to resolve outstanding claims and otherwise effectively administer the

---

[3]    The Wertheim Report is not offered as a definitive report on recoveries in either the U.S. or Canadian estates.  Rather, for purposes of evaluating the PPI Settlement, the report serves to demonstrate the potential likely outcomes, and to that end includes a sensitivity analysis that obviates the need for the granular discovery the Debtors seek to obtain from their burdensome discovery requests.  Wertheim Report at 10-11.

[4]    As an example, the Canadian Interests did not seek to test the factual accuracy of the Debtors' representations to the Court that the priority post-petition tax claim could be in the range of $400 million to $1 billion.  Hr'g Tr. 171:24-172:4, May 12, 2014.

Canadian Proceedings.  Specifically, Debtors' request to depose Mr. McDonald on these claims threatens the integrity of the CCAA claims process by calling for highly sensitive and non-public information that has not been disclosed in the Canadian Proceedings.

32.    In sum, the Debtors have provided virtually no evidence in support of the 9019 Motion.  Now, faced with Dr. Wertheim's report, and the stark conclusions contained therein, the Debtors have suddenly become focused on facts.  In light of the Debtors' complete failure to perform basic diligence on the settlement, the Court should not permit the Debtors now to transform their burden to demonstrate that the settlement is reasonable into a burden on the Canadian Interests to demonstrate that the settlement is unreasonable.

## CONCLUSION

33.    For all of the foregoing reasons, the Canadian Interests respectfully request that the Court deny the Motion to Compel and provide such other relief as the Court considers necessary and appropriate in the circumstances.

Dated: October 20, 2014
        Wilmington, Delaware

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ *Kathleen A. Murphy*
Mary F. Caloway (No. 3059)
Kathleen A Murphy (No. 5215)
919 North Market Street, Suite 1500
Wilmington, Delaware 19801
(302) 552-4200 (telephone)
(302) 552-4295 (facsimile)
mary.caloway@bipc.com
kathleen.murphy@bipc.com

-and-

**ALLEN & OVERY LLP**

Jacob S. Pultman
Ken Coleman
Daniel J. Guyder
John Kibler
1221 Avenue of the Americas
New York, New York 10020
(212) 610-6300 (telephone)
(212) 610-6399 (facsimile)
jacob.pultman@allenovery.com
ken.coleman@allenovery.com
daniel.guyder@allenovery.com
john.kibler@allenovery.com

*Attorneys for Ernst & Young Inc., as Monitor and Foreign Representative of the Canadian Debtors*