# EXHIBIT 1

1   Courtland L. Reichman (SBN 268873)
    creichman@mckoolsmithhennigan.com
2   **McKool Smith Hennigan, P.C.**
    255 Shoreline Drive, Suite 510
3   Redwood Shores, California 94065
    Telephone:     (650) 394-1400
4   Facsimile:     (650) 394-1422

5   ADDITIONAL COUNSEL LISTED
    ON SIGNATURE PAGE
6
    Attorneys for Defendants
7   Rockstar Consortium U.S. LP and
    MobileStar Technologies LLC
8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11                        **OAKLAND**

12  Google Inc.,

13                  Plaintiff,                    | Case No. 4:13-cv-5933-CW

14         v.                                     | **DEFENDANTS ROCKSTAR
                                                  | CONSORTIUM U.S. LP AND
15  Rockstar Consortium U.S. LP and MobileStar    | MOBILESTAR TECHNOLOGIES
    Technologies LLC,                             | LLC'S ANSWER AND
16                                                | COUNTERCLAIMS TO
                  Defendants.                     | PLAINTIFF'S COMPLAINT FOR
17                                                | DECLARATORY JUDGMENT OF
                                                  | NON-INFRINGEMENT
18
                                                  | **JURY TRIAL DEMANDED**
19

20

21

22

23

24

25

26

27                                      -1-
28  Case No. 4:13-cv-5933-CW          DEFENDANTS' ANSWER AND COUNTERCLAIMS
                                      TO COMPLAINT FOR DECLARATORY JUDGMENT
                                              OF NON-INFRINGEMENT

<u>**ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT**</u>

Defendants and Counterclaim-Plaintiffs Rockstar Consortium U.S. LP and MobileStar Technologies LLC (collectively, "Rockstar") file this Answer and Counterclaims to Plaintiff and Counterclaim-Defendant Google, Inc.'s ("Google") Complaint filed on December 23, 2013.

<u>**NATURE OF THE ACTION**</u>

1.      Rockstar admits that Google's Complaint purports to be a declaratory judgment action of non-infringement brought against Rockstar Consortium U.S. LP ("Rockstar Consortium") and MobileStar Technologies LLC ("MobileStar") that arises under the patent laws of the United States, Title 35 of the United States Code.   Rockstar admits that Rockstar has filed patent infringement lawsuits against certain makers of mobile communication devices for infringement of Rockstar's United States Patents Nos. 5,838,551, 6,037,937, 6,128,298, 6,333,973, 6,463,131, 6,765,591, and 6,937,572 (the "Patents-in-Suit").   Except as so admitted, Rockstar denies the allegations in Paragraph 1 of Google's Complaint.

<u>**THE PARTIES**</u>

2.      On information and belief, based solely on Paragraph 2 of Google's Complaint as pled by Google, Google is a Delaware corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California, 94043. On information and belief, based solely on Paragraph 2 of Google's Complaint as pled by Google, Google makes available to the public an open-source version of Android. Except as so admitted, Rockstar denies the allegations in Paragraph 2 of Google's Complaint.

3.      Rockstar admits that Rockstar Consortium is a limited partnership organized and existing under the laws of the state of Delaware and that its principal place of business is at Legacy Town Center 1, 7160 North Dallas Parkway Suite No. 250, Plano, TX 75024.   Except as so admitted, Rockstar denies the allegations in Paragraph 3 of Google's Complaint.

4.      Rockstar admits that MobileStar is a limited liability corporation organized and

-2-

DEFENDANTS' ANSWER AND COUNTERCLAIMS
TO COMPLAINT FOR DECLARATORY JUDGMENT
OF NON-INFRINGEMENT

existing under the laws of the State of Delaware and that MobileStar's principal place of business is at Legacy Town Center 1, 7160 North Dallas Parkway, Suite No. 250, Plano, Texas 75024. Rockstar admits that MobileStar is a subsidiary of Rockstar Consortium. Except as so admitted, Rockstar denies the allegations in Paragraph 4 of Google's Complaint.

## JURISDICTIONAL STATEMENT

5. Denied.

6. Denied.

7. Rockstar denies that the Court has personal jurisdiction over it. Rockstar also denies that it has continuous and systematic contacts with California. Rockstar admits that in certain instances it may seek to license its patents to those entities that may require a license. Except as so admitted, Rockstar denies the allegations in Paragraph 7 of Google's Complaint.

8. On information and belief, Apple Inc.'s ("Apple") headquarters are in Cupertino, California. Rockstar admits that Apple is a minority shareholder in Rockstar Consortium and Rockstar Consortium Inc. and that an employee of Apple is a member of Rockstar Consortium's board of directors. Except as so admitted, Rockstar denies the allegations in Paragraph 8 of Google's Complaint.

9. Rockstar admits that MobileStar conducted three meetings with entities located in California to discuss high-level global licensing issues. Each of these meetings was subject to a non-disclosure agreement. One such meeting occurred after Rockstar initiated its action against Google in the Eastern District of Texas and was for the purpose of discussing patents that are not at issue in this case. Except as so admitted, Rockstar denies the allegations in Paragraph 9 of Google's Complaint.

10. Denied.

11. Denied.

## INTRADISTRICT ASSIGNMENT

12. Paragraph 12 of Google's Complaint does not contain a statement that warrants an

-3-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

affirmance or denial. To the extent a response is warranted, Rockstar denies the allegations in Paragraph 12 of Google's Complaint.

## ROCKSTAR'S HISTORY AND BUSINESS

13.     Rockstar admits that each of Apple, BlackBerry Corporation, and Microsoft Corporation (among others) are limited partners of Rockstar Consortium and that the Patents-in-Suit were formerly owned by Nortel Networks.  Except as so admitted, Rockstar denies the allegations in Paragraph 13 of Google's Complaint.

14.     Rockstar admits that certain patents were transferred from Rockstar Bidco to its founding licensees, including, but not limited to, Apple.  Except as so admitted, Rockstar denies the allegations in Paragraph 14 of Google's Complaint.

15.     Rockstar admits that it does not make or sell products. Except as so admitted, Rockstar denies the allegations in Paragraph 15 of Google's Complaint.

16.     Rockstar admits that in certain instances it may seek to license its patents to those entities that may require a license.  Except as so admitted, Rockstar denies the allegations in Paragraph 16 of Google's Complaint.

17.     Rockstar admits that it has asserted the Patents-in-Suit against ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE ("the Eastern District Defendants").  Except as so admitted, Rockstar denies the allegations in Paragraph 17 of Google's Complaint, and expressly denies the characterizations of "ensnared" and "dragnet."

18.     Rockstar admits that it brought patent infringement suits against the Eastern District Defendants in the Marshall Division of the United States District Court for the Eastern District of Texas on October 31, 2013.  Except as so admitted, Rockstar denies the allegations in Paragraph 18 of Google's Complaint.

19.     Rockstar admits that it has alleged that the Eastern District Defendants make, use, sell, offer for sale, import, export, supply and/or distribute "certain mobile communication devices having a version (or an adaption thereof) of Android operating system."  Except as so admitted,

-4-

DEFENDANTS' ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND COUNTERCLAIMS

1    Rockstar denies the allegations in Paragraph 19 of Google's Complaint.

2         20.    Admitted.

3         21.    Admitted.

4         22.    Rockstar admits that it has asserted the Patents-in-Suit against the Eastern District

5    Defendants and has accused "certain mobile communication devices having a version (or an

6    adaption thereof) of Android operating system."  Rockstar admits that it has asserted infringement

7    by the Nexus 7 as to ASUS with an operating system configured and installed by ASUS.  Except as

8    so admitted, Rockstar denies the allegations in Paragraph 22 of Google's Complaint.

9         23.    Denied.

10        24.    Paragraph 24 of Google's Complaint does not contain a statement that warrants an

11   affirmance or denial.  To the extent that any response is warranted, Rockstar denies the allegations in

12   Paragraph 24 of Google's Complaint.

13                   **GOOGLE DOES NOT INFRINGE THE PATENTS IN SUIT**

14        25.    Denied.

15        26.    Denied.

16                                  **FIRST COUNT**

17               **(Declaration of Non-Infringement of the '551 Patent)**

18        27.    Rockstar incorporates its responses to Paragraphs 1-26 above, as if fully set forth

19   herein.

20        28.    Admitted.

21        29.    Rockstar admits that Rockstar has accused the Eastern District Defendants of

22   infringing United States Patent No. 5,838,551 ("the '551 patent") and has alleged that each "makes,

23   uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States"

24   devices including "at least one electronic package comprising a component that is located between

25   an EMI shield and a ground member for performing shielding operations" where "[t]he EMI shield

26   is incorporated into the electronic package, which is then mounted to a circuit board" in the accused

27

28   Case No. 4:13-cv-5933-CW

-5-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

1    devices. Rockstar admits that it has asserted infringement by the Nexus 7 as to ASUS with an

2    operating system configured and installed by ASUS. Except as so admitted, Rockstar denies the

3    allegations in Paragraph 29 of Google's Complaint.

4        30.    As to the Nexus 5, Nexus 7, and Nexus 10 devices, Rockstar admits that a

5    controversy exists between Google and Rockstar regarding whether such devices infringe or have

6    infringed the '551 patent and that a judicial declaration is necessary to determine the parties'

7    respective rights regarding the '551 patent. With respect to Google's purported "Google's Android

8    platform," however, Rockstar denies that this has any relationship to the '551 patent. Furthermore,

9    Google has not defined the "Google's Android platform," and its use of that phrase is vague, as it

10   fails to identify a specific instance of any product. Android is an open-sourced software project with

11   many contributors, and it is implemented by entities, such as the Eastern District Defendants, who

12   may use different versions of the Android software and who may also develop and contribute to the

13   Android software found within their products. Therefore, Rockstar is without information sufficient

14   to admit or deny the remainder of the allegations in Paragraph 30 of Google's Complaint, and on that

15   basis denies such allegations.

16       31.    Rockstar admits that Google purports to seek a judgment declaring that "Google's

17   Android Platform" and the Nexus 5, Nexus 7, and Nexus 10 devices do not infringe any claim of the

18   '551 patent. Google has not defined "Google's Android Platform," and its use of that phrase is

19   vague, as it fails to identify a specific instance of any product. Android is an open-sourced software

20   project with many contributors, and it is implemented by entities, such as the Eastern District

21   Defendants, who may use different versions of the Android software and who may also develop and

22   contribute to the Android software found within their products. Therefore, Rockstar is without

23   information sufficient to admit or deny the remainder of the allegations in Paragraph 31 of Google's

24   Complaint, and on that basis denies such allegations.

25

26

27

28   Case No. 4:13-cv-5933-CW

-6-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

## SECOND COUNT

### (Declaration of Non-Infringement of the '937 Patent)

32.     Rockstar incorporates its responses to Paragraphs 1-31 above, as if fully set forth herein.

33.     Admitted.

34.     Rockstar admits that it has accused ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE of infringing United States Patent No. 6,037,937 ("the '937 patent") and has alleged that each "makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States" devices that support a "navigable graphical user interface ('navigable GUI') that permits a user to manipulate and control the contents of the display to maximize the use of display real estate." Rockstar admits that it has asserted infringement by the Nexus 7 as to ASUS with an operating system configured and installed by ASUS. Except as so admitted, Rockstar denies the allegations in Paragraph 34 of Google's Complaint.

35.     Upon information and belief, the Nexus 5, Nexus 7, and Nexus 10 devices use an operating system configured and installed by Google.  Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products.  Therefore, Rockstar is without information sufficient to admit or deny the remainder of the allegations in Paragraph 35 of Google's Complaint, and on that basis denies such allegations.

36.     Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products.  Therefore, Rockstar is without

-7-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

information sufficient to admit or deny the allegations in Paragraph 36 of Google's Complaint, and on that basis denies such allegations.

37.    Rockstar admits that Google purports to seek a judgment declaring that "Google's Android Platform" and the Nexus 5, Nexus 7, and Nexus 10 devices do not infringe any claim of the '937 patent.  Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products.  Therefore, Rockstar is without information sufficient to admit or deny the remainder of the allegations in Paragraph 37 of Google's Complaint, and on that basis denies such allegations.

## **THIRD COUNT**

### **(Declaration of Non-Infringement of the '298 Patent)**

38.    Rockstar incorporates its responses to Paragraphs 1-37 above, as if fully set forth herein.

39.    Admitted.

40.    Rockstar admits that it has accused ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE of infringing United States Patent No. 6,128,298 ("the '298 patent") and has alleged that each "makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States" devices that support "Mobile Hotspot functionality [which] is designed to route data packets between wireless devices tethered to the Mobile Hotspot to nodes on a public network such as the Internet."  Rockstar admits that it has asserted infringement by the Nexus 7 as to ASUS with an operating system configured and installed by ASUS. Except as so admitted, Rockstar denies the allegations in Paragraph 40 of Google's Complaint.

41.    Upon information and belief, the Nexus 5, Nexus 7, and Nexus 10 devices use an operating system configured and installed by Google.  Google has not defined "Google's Android

-8-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products. Therefore, Rockstar is without information sufficient to admit or deny the remainder of the allegations in Paragraph 41 of Google's Complaint, and on that basis denies such allegations.

42. Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products. Therefore, Rockstar is without information sufficient to admit or deny the allegations in Paragraph 42 of Google's Complaint, and on that basis denies such allegations.

43. Rockstar admits that Google purports to seek a judgment declaring that "Google's Android Platform" and the Nexus 5, Nexus 7, and Nexus 10 devices do not infringe any claim of the '298 patent. Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products. Therefore, Rockstar is without information sufficient to admit or deny the remainder of the allegations in Paragraph 43 of Google's Complaint, and on that basis denies such allegations.

## FOURTH COUNT

### (Declaration of Non-Infringement of the '973 Patent)

44. Rockstar incorporates its responses to Paragraphs 1-43 above, as if fully set forth herein.

-9-

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

45.     Rockstar admits that MobileStar owns all rights, title, and interest in United States Patent No. 6,333,973 ("the '973 patent").  Except as so admitted, Rockstar denies the allegations in Paragraph 45 of Google's Complaint.

46.     Rockstar admits that it has accused HTC, Huawei, LG, Pantech, Samsung, and ZTE of infringing the '973 patent and has alleged that each "makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States" devices that support an "integrated notification message center."  Rockstar admits that it has asserted infringement by the Nexus 7 as to ASUS with an operating system configured and installed by ASUS. Except as so admitted, Rockstar denies the allegations in Paragraph 46 of Google's Complaint.

47.     Upon information and belief, the Nexus 5, Nexus 7, and Nexus 10 devices use an operating system configured and installed by Google.  Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products.  Therefore, Rockstar is without information sufficient to admit or deny the remainder of the allegations in Paragraph 47 of Google's Complaint, and on that basis denies such allegations.

48.     Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products.  Therefore, Rockstar is without information sufficient to admit or deny the allegations in Paragraph 48 of Google's Complaint, and on that basis denies such allegations.

49.     Rockstar admits that Google purports to seek a judgment declaring that Google's "Google's Android Platform" and the Nexus 5, Nexus 7, and Nexus 10 devices do not infringe any

-10-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

claim of the '973 patent.  Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products.  Therefore, Rockstar is without information sufficient to admit or deny the remainder of the allegations in Paragraph 49 of Google's Complaint, and on that basis denies such allegations.

## FIFTH COUNT

### (Declaration of Non-Infringement of the '131 Patent)

50.     Rockstar incorporates its responses to Paragraphs 1-49 above, as if fully set forth herein.

51.     Rockstar admits that MobileStar owns all rights, title, and interest in United States Patent No. 6,463,131 ("the '131 patent").  Except as so admitted, Rockstar denies the allegations in Paragraph 51 of Google's Complaint.

52.     Rockstar admits that it has accused ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE of infringing the '131 patent and has alleged that each "makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States" devices that support "Messaging and Notification functionality."  Rockstar admits that it has asserted infringement by the Nexus 7 as to ASUS with an operating system configured and installed by ASUS. Except as so admitted, Rockstar denies the allegations in Paragraph 52 of Google's Complaint.

53.     Upon information and belief, the Nexus 5, Nexus 7, and Nexus 10 devices use an operating system configured and installed by Google.  Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their

-11-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

products. Therefore, Rockstar is without information sufficient to admit or deny the remainder of the allegations in Paragraph 53 of Google's Complaint, and on that basis denies such allegations.

54. Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products. Therefore, Rockstar is without information sufficient to admit or deny the allegations in Paragraph 54 of Google's Complaint, and on that basis denies such allegations.

55. Rockstar admits that Google purports to seek a judgment declaring that Google's "Google's Android Platform" and the Nexus 5, Nexus 7, and Nexus 10 devices do not infringe any claim of the '131 patent. Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products. Therefore, Rockstar is without information sufficient to admit or deny the remainder of the allegations in Paragraph 55 of Google's Complaint, and on that basis denies such allegations.

### SIXTH COUNT

### (Declaration of Non-Infringement of the '591 Patent)

56. Rockstar incorporates its responses to Paragraphs 1-55 above, as if fully set forth herein.

57. Rockstar admits that MobileStar owns all rights, title, and interest in United States Patent No. 6,765,591 ("the '591 patent"). Except as so admitted, Rockstar denies the allegations in Paragraph 57 of Google's Complaint.

58. Rockstar admits that it has accused ASUS, HTC, Huawei, LG, Pantech, Samsung,

-12-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

and ZTE of infringing the '591 patent and has alleged that each "makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States" devices that support "VPN management functionality." Rockstar admits that it has asserted infringement by the Nexus 7 as to ASUS with an operating system configured and installed by ASUS. Except as so admitted, Rockstar denies the allegations in Paragraph 58 of Google's Complaint.

59.     Upon information and belief, the Nexus 5, Nexus 7, and Nexus 10 devices use an operating system configured and installed by Google.  Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products.  Therefore, Rockstar is without information sufficient to admit or deny the remainder of the allegations in Paragraph 59 of Google's Complaint, and on that basis denies such allegations.

60.     Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products.  Therefore, Rockstar is without information sufficient to admit or deny the allegations in Paragraph 60 of Google's Complaint, and on that basis denies such allegations.

61.     Rockstar admits that Google purports to seek a judgment declaring that Google's "Google's Android Platform" and the Nexus 5, Nexus 7, and Nexus 10 devices do not infringe any claim of the '591 patent.  Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also

-13-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

develop and contribute to the Android software found within their products. Therefore, Rockstar is without information sufficient to admit or deny the remainder of the allegations in Paragraph 61 of Google's Complaint, and on that basis denies such allegations.

<u>SEVENTH COUNT</u>

**(Declaration of Non-Infringement of the '572 Patent)**

62. Rockstar incorporates its responses to Paragraphs 1-61 above, as if fully set forth herein.

63. Rockstar admits that MobileStar owns all rights, title, and interest in United States Patent No. 6,937,572 ("the '572 patent"). Except as so admitted, Rockstar denies the allegations in Paragraph 63 of Google's Complaint.

64. Rockstar admits that it has accused ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE of infringing the '572 patent and has alleged that each "makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States" devices that support "Location Services functionality." Rockstar admits that it has asserted infringement by the Nexus 7 as to ASUS with an operating system configured and installed by ASUS. Except as so admitted, Rockstar denies the allegations in Paragraph 64 of Google's Complaint.

65. Upon information and belief, the Nexus 5, Nexus 7, and Nexus 10 devices use an operating system configured and installed by Google. Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products. Therefore, Rockstar is without information sufficient to admit or deny the remainder of the allegations in Paragraph 65 of Google's Complaint, and on that basis denies such allegations.

66. Google has not defined "Google's Android Platform," and its use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software

-14-

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND COUNTERCLAIMS

1  project with many contributors, and it is implemented by entities, such as the Eastern District

2  Defendants, who may use different versions of the Android software and who may also develop and

3  contribute to the Android software found within their products.  Therefore, Rockstar is without

4  information sufficient to admit or deny the allegations in Paragraph 66 of Google's Complaint, and

5  on that basis denies such allegations.

6        67.    Rockstar admits that Google purports to seek a judgment declaring that Google's

7  "Google's Android Platform" and the Nexus 5, Nexus 7, and Nexus 10 devices do not infringe any

8  claim of the '572 patent.  Google has not defined "Google's Android Platform," and its use of that

9  phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced

10  software project with many contributors, and it is implemented by entities, such as the Eastern

11  District Defendants, who may use different versions of the Android software and who may also

12  develop and contribute to the Android software found within their products.  Therefore, Rockstar is

13  without information sufficient to admit or deny the remainder of the allegations in Paragraph 67 of

14  Google's Complaint, and on that basis denies such allegations.

15  **PRAYER FOR RELIEF**

16        A response is not required to Google's prayer for relief.  To the extent that a response is

17  deemed required, Rockstar denies that the Nexus 5, Nexus 7, and Nexus 10 devices do not infringe

18  any of the '551, '937, '298, '973, '131, '591, or '572 patents.  Rockstar denies that judgment should

19  be entered in favor of Google and against Rockstar on each of Google's claims.  Rockstar denies that

20  this is an exceptional case under 35 U.S.C. § 285. Rockstar denies that Google should be awarded its

21  costs and attorneys' fees in connection with this action.  Rockstar denies that Google should be

22  awarded any further or additional relief. Google's prayer should, therefore, be denied in its entirety

23  and with prejudice, and Google should take nothing.

24  **JURY DEMAND**

25        A response is not required to Google's demand for a trial by jury.  To the extent that a

26  response is deemed required, Rockstar requests a trial by jury pursuant to Rule 38 of the Federal

27

28  Case No. 4:13-cv-5933-CW

-15-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

Rules of Civil Procedure.

## AFFIRMATIVE DEFENSE

Google does not have standing to maintain this action with regard to any device other than the  Nexus 5, Nexus 7, Nexus 10, and Galaxy Nexus. As is set forth herein, Google has not defined the term "Google's Android platform," as that term is used in Google's Declaratory Complaint. Google's use of that phrase is vague, as it fails to identify a specific instance of any product. Android is an open-sourced software project with many contributors, and it is implemented by entities, such as the Eastern District Defendants, who may use different versions of the Android software and who may also develop and contribute to the Android software found within their products.

## COUNTERCLAIMS

Counterclaimants Rockstar Consortium and MobileStar, by and through their attorneys, assert the following Counterclaims against Counterdefendant Google and in support thereof would respectfully show the Court the following:[1]

## PARTIES

1.      Plaintiff Rockstar Consortium US LP ("Rockstar Consortium") is a limited partnership organized and existing under the laws of the State of Delaware, and maintains its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway Suite No. 250, Plano, TX 75024.

2.      Plaintiff MobileStar Technologies LLC ("MobileStar") is a subsidiary of Rockstar and is a limited liability corporation organized and existing under the laws of the State of Delaware,

---

[1] Rockstar believes that this Court lacks personal jurisdiction over it.  *See* Dkt. No. 19-4 (Rockstar's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) and 12(b)(3) for Lack of Personal Jurisdiction and Improper Venue and to Decline Exercising Jurisdiction Under the Declaratory Judgment Act); Dkt. No. 58 (Order Denying Motion to Dismiss or, in the Alternative, to Transfer).  In light of the Court's ruling, Rockstar asserts the counterclaims contained herein.  In asserting its counterclaims, Rockstar does not consent to personal jurisdiction.  *See SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. Or. 2007) ("[W]here a party has filed a timely and unambiguous objection to the court's jurisdiction, we have concluded that the party has not consented to jurisdiction. This is true even if the party has preserved its own options by simultaneously asserting whatever claims or defenses it has against the plaintiff.").

-16-

DEFENDANTS' ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND COUNTERCLAIMS

and maintains its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway Suite No. 250, Plano, TX 75024.

3.      Upon information and belief, Defendant Google, Inc. ("Google") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California, 94043.

## BACKGROUND FACTS

4.      Nortel Networks, a previous assignee of the Patents-in-Suit, conducted an auction for Nortel's patent portfolio. The auction included the Patents-in-Suit.

5.      During the various auction dates Google, among others, bid for Nortel's portfolio.

6.      Google made its first bid for the Nortel patent portfolio on April 4, 2011.  (*See* http://googleblog.blogspot.com/2011/04/patents-and-innovation.html).

7.      Google was aware of the Patents-in-Suit at the time of its initial bid.

8.      Google placed an initial bid of $900,000,000 for the Patents-in-Suit and the rest of the Nortel portfolio. Google subsequently increased its bid multiple times, ultimately bidding as high as $4.4 billion. That price was insufficient to win the auction, as a group led by the current shareholders of Rockstar Consortium purchased the portfolio for $4.5 billion.

9.      Despite losing in its attempt to acquire the Patents-in-Suit at auction, Google has infringed and continues to infringe the Patents-in-Suit, including, but not limited to, the sale and offer for sale of its "Google Nexus" line of devices in the United States, including in this District.

10.      The Nexus devices include, but are not limited to, the Nexus 5, Nexus 7, Nexus 10, and Galaxy Nexus.

## JURISDICTION AND VENUE

11.      This is an action for patent infringement under the Patent Laws of the United States,

Case No. 4:13-cv-5933-CW                    DEFENDANTS' ANSWER TO COMPLAINT FOR
                                            DECLARATORY JUDGMENT OF NON-
                                            INFRINGEMENT AND COUNTERCLAIMS

35 U.S.C. § 271. This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. § 1338.

12. Regarding venue, Rockstar denies that venue is proper in this district pursuant to either 28 U.S.C. § 1391, *see* Dkt. No. 19-4 (Rockstar's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) and 12(b)(3) for Lack of Personal Jurisdiction and Improper Venue and to Decline Exercising Jurisdiction Under the Declaratory Judgment Act) or the provisions of 28 U.S.C. §§ 1400, *et. seq.*. As to venue under 28 U S.C. § 1391, the Court has adjudicated that venue is proper. *See* Dkt. No. 19 (Order Denying Motion to Dismiss or, in the Alternative, to Transfer). Rockstar denies that venue is proper under the provisions of 28 U.S.C. § 1400, *et. seq.* and plans to file a motion to transfer venue.

13. This Court has personal jurisdiction over Defendant Google. Google has conducted and does conduct business within the State of California. Google's principal place of business is at 1600 Amphitheatre Parkway, Mountain View, California, 94043. Google, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises (including the provision of an interactive web page) its products (including its "Nexus" line of products) and/or services in the United States, the State of California, and the Northern District of California. Google, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Northern District of California. These infringing products and/or services have been and continue to be purchased and used by consumers in the Northern District of California. Google has committed acts of patent infringement within the State of California and, more particularly, within the Northern District of

-18-

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND COUNTERCLAIMS

California.

14.     Regarding this Court's personal jurisdiction over Rockstar, Rockstar denies that this Court has personal jurisdiction. *See* Dkt. Nos. 19-4 (Rockstar's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) and 12(b)(3) for Lack of Personal Jurisdiction and Improper Venue and to Decline Exercising Jurisdiction Under the Declaratory Judgment Act).  As to personal jurisdiction, the Court has adjudicated that it has personal jurisdiction over Rockstar.  *See* Dkt. No. 58 (Order Denying Motion to Dismiss or, in the Alternative, to Transfer).

## ASSERTED PATENTS

15.     On November 17, 1998, U.S. Patent No. 5,838,551 ("the '551 Patent") entitled "Electronic Package Carrying an Electronic Component and Assembly of Mother Board and Electronic Package" was duly and legally issued with Yee-Ning Chan as the named inventor after full and fair examination.  Rockstar Consortium owns all rights, title, and interest in and to the '551 Patent and possesses all rights of recovery under the '551 Patent.  MobileStar is the exclusive licensee of the '551 Patent, within the field of use specified in the exclusive license agreement between Rockstar Consortium and MobileStar.

16.     On March 14, 2000, U.S. Patent No. 6,037,937 ("the '937 Patent") entitled "Navigation Tool for Graphical User Interface" was duly and legally issued with Brian Finlay Beaton, Colin Donald Smith, and Bruce Dale Stalkie as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '937 Patent and possesses all rights of recovery under the '937 Patent.

17.     On October 3, 2000, U.S. Patent No. 6,128,298 ("the '298 Patent") entitled "Internet Protocol Filter" was duly and legally issued with Bruce Anthony Wootton and William G. Colvin as the named inventors after full and fair examination.  Rockstar Consortium owns all rights, title, and

-19-

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

interest in and to the '298 Patent and possesses all rights of recovery under the '298 Patent. MobileStar is the exclusive licensee of the '298 Patent, within the field of use specified in the exclusive license agreement between Rockstar Consortium and MobileStar.

18.    On December 25, 2001, U.S. Patent No. 6,333,973 ("the '973 Patent") entitled "Integrated Message Center" was duly and legally issued with Colin Donald Smith and Brian Finlay Beaton as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '973 Patent and possesses all rights of recovery under the '973 Patent.

19.    On October 8, 2002, U.S. Patent No. 6,463,131 ("the '131 Patent") entitled "System and Method for Notifying a User of an Incoming Communication Event" was duly and legally issued with Marilyn French-St. George, Mitch A. Brisebois and Laura A. Mahan as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '131 Patent and possesses all rights of recovery under the '131 Patent.

20.    On July 20, 2004, U.S. Patent No. 6,765,591 ("the '591 Patent") entitled "Managing a Virtual Private Network" was duly and legally issued with Matthew W. Poisson, Melissa L. Desroches, and James M. Milillo as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '591 Patent and possesses all rights of recovery under the '591 Patent.

21.    On August 30, 2005, U.S. Patent No. 6,937,572 ("the '572 Patent") entitled "Call Trace on a Packet Switched Network" was duly and legally issued with Brian B. Egan and Milos Vodsedalek as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '572 Patent and possesses all rights of recovery under the '572 Patent.

## **GENERAL ALLEGATIONS**

22.    Google has directly and indirectly infringed and continues to directly and indirectly

-20-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

infringe each of the '551, '937, '298, '973, '131, '591 and '572 Patents by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), (c), and/or (f), including but not necessarily limited to one or more of making, using, selling and offering to sell, in this District and elsewhere in the United States, and importing into this District and elsewhere in the United States, certain Google Devices, including Google's Nexus 5, Nexus 7, Nexus 10, and Galaxy Nexus devices and other Google products that infringe the patent claims involved in this action ("Google Devices").

23.     Google is doing business in the United States and, more particularly, in the Northern District of California by making, using, selling, importing, and/or offering for sale Google Devices or by transacting other business in this District.

24.     On information and belief, Google uses, sells, and offers for sale at least Nexus 10 devices in the United States, including in this District.

25.     Google also uses, sells, and offers for sale Nexus 5 and Nexus 7 devices in the United States, including in this District.

### PATENT INFRINGEMENT BY GOOGLE

26.     Plaintiffs incorporate by reference paragraphs 1-25 as if fully set forth herein.  As described below, Google has infringed and/or continues to infringe the '551, '937, '298, '973, '131, '591 and '572 Patents.

### The Google Devices Infringe At Least One Claim Of The '551 Patent

27.     The Google Devices infringe at least claim 1 of the '551 Patent.  Google makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States the Google Devices and thus directly infringes one or more claims of the '551 Patent, including at least claim 1.

28.     Google indirectly infringes the '551 patent by inducing infringement by others, such

-21-

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

as resellers, of at least claim 1 in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of the Google Devices. Google had actual notice of the '551 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '551 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '551 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the Patents-in-Suit'551 patent by way of this Complaint.

29. Google's affirmative acts of selling Google Devices, causing the Google Devices to be manufactured and distributed, and providing instruction manuals for Google Devices induced Google's manufacturers and resellers to make or use Google Devices in their normal and customary way to infringe the '551 patent. Through its manufacture and sales of Google Devices, Google specifically intended its resellers and manufacturers to infringe the '551 patent; further, Google was aware that these normal and customary activities would infringe the '551 patent. Google performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '551 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

30. Accordingly, a reasonable inference is that Google specifically intends for others, such as resellers and end-use customers of the Google Devices, to directly infringe one or more claims of the '551 Patent in the United States because Google has knowledge of the '551 Patent and its infringement thereof and Google actually induces others, such as resellers and end-use customers, to directly infringe the '551 patent, by using, selling, exporting, supplying and/or distributing, within the United States, Google Devices for resale to others, such as resellers and end-

-22-

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

use customers.  Google knew or should have known that such actions would induce actual infringement.

31.    Google indirectly infringes the '551 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Google Devices.  Google had actual notice of the '551 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '551 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '551 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '551 patent by way of this Complaint.

32.    The Google Devices include at least one electronic package comprising a component that is located between an EMI shield and a ground member for performing shielding operations. The EMI shield is incorporated into the electronic package, which is then mounted to a circuit board in Google Devices, and on information and belief, the electronic component does not function in an acceptable manner absent the EMI shielding.  Furthermore, the electronic package incorporating the EMI shield does not operate in isolation, but is designed to operate within the Mobile Communication Device, and absent the EMI shielding of the electronic component, the Google Devices would not function in an acceptable manner.

33.    A reasonable inference to be drawn from the facts set forth is that the EMI shielded electronic package in the Google Devices is especially made or especially adapted to operate in a Google Device as an EMI shield.

34.    A reasonable inference to be drawn from the facts set forth is that the EMI shielded

-23-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

electronic package is not a staple article or commodity of commerce and that the use of the EMI shielded electronic package is required for operation of the Google Devices.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

35.     The EMI shielded electronic package in Google Devices are each a material part of the invention of the '551 patent and are especially made for the infringing manufacture, sale, and use of Google Devices.  Google Devices, including the EMI shielded electronic package, are especially made or adapted as an electronic package that infringes the '551 patent.  Because the sales and manufacture of Google Devices including the EMI shielded electronic package infringe the '551 patent, Google's sales of its infringing products have no substantial non-infringing uses.

36.     Accordingly, a reasonable inference is that Google offers to sell, or sells within the United States the Google Devices which are or include a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing one or more claims of the '551 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of one or more claims of the '551 patent, and the Google Devices are not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Google provides to others Google Devices with distinct and separate components, including hardware components, which have no substantial non-infringing uses.

**The Google Devices Infringe At Least One Claim Of The '937 Patent**

37.     The Google Devices with an operating system and hardware components configured and installed by Google to support Gallery, Email, Maps and Browser functionality, infringe at least claim 13 of the '937 Patent.  Google makes, uses, tests, sells, offers for sale, imports, exports, supplies and/or distributes within the United States the Google Devices and thus directly infringes

-24-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

at least claim 13 of the '937 Patent.

38.     Google indirectly infringes the '937 patent by inducing infringement by others of at least claim 13, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Google Devices.  Google received actual notice of the '937 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '937 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '937 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '937 patent by way of this Complaint

39.     Google's affirmative acts of selling Google Devices, causing the Google Devices to be manufactured, and providing instruction manuals for Google Devices induced Google's manufacturers and resellers to make or use the Google Devices in their normal and customary way to infringe the '937 patent.  Through its manufacture and sales of Google Devices, Google specifically intended its resellers and manufacturers to infringe the '937 patent; further, Google was aware that these normal and customary activities would infringe the '937 patent.  Google performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '937 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

40.     Accordingly, a reasonable inference is that Google specifically intends for others, such as resellers and end-use customers of the Google Devices, to directly infringe one or more claims of the '937 patent in the United States because Google has knowledge of the '937 patent and its infringement thereof and actually induces others, such as resellers and end-use customers, to

-25-

DEFENDANTS' ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND COUNTERCLAIMS

directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Google Communication Devices for resale to others, such as resellers and end-use customers. Google knew or should have known that such actions would induce actual infringement.

41. The use of at least Google Devices with an operating system and hardware components configured and installed by Google to support Gallery, Email, Maps, Browser, and Contacts functionality as intended by Google infringes at least method claim 1 of the '937 Patent. Google uses these products and thus directly infringes at least method claim 1 of the '937 Patent.

42. In addition, Google provides at least Google Devices with an operating system and hardware components configured and installed by Google to support Gallery, Email, Maps, Browser, and Contacts functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 1 of the '937 Patent.

43. Google indirectly infringes the '937 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Google Devices. Google received actual notice of the '937 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '937 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '937 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '937 patent by way of this Complaint.

44. Google provides at least Google Devices with an operating system and hardware components configured and installed by Google to support Gallery, Email, Maps, Browser, and Contacts functionality to others, such as resellers and end-use customers, in the United States who,

-26-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

in turn, use these products to infringe the '937 Patent.  Through its manufacture and sales of Google

Devices, Google specifically intended its resellers and manufacturers to infringe the '937 patent.

45.     Google specifically intends for others, such as resellers and end-use customers, to

directly infringe one or more claims of the '937 Patent in the United States.  For example, Google

provides instructions to resellers and end-use customers regarding the use and operation of

Google's products in an infringing way.  Such instructions include at least "Google Nexus Help"

(available  at  https://support.google.com/nexus/?hl=en&topic=2765972#topic=3415518l).    When

resellers and end-use customers follow such instructions, they directly infringe the '937 Patent.

Google knows that by providing such instructions, resellers and end-use customers follow those

instructions, and directly infringe the '937 Patent.  Google thus knows that its actions induce the

infringement.

46.     Google performed the acts that constitute induced infringement, and would induce

actual infringement, with knowledge of the '937 patent and with the knowledge or willful blindness

that the induced acts would constitute infringement.

47.     Google indirectly infringes the '937 patent, by contributing to infringement by others,

such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and

elsewhere in the United States.  Direct infringement is the result of activities performed by the

manufacturers, resellers, and end-users of Google Devices.  Google received actual notice of the

'937 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio

containing each of the patents asserted herein was further aware of the '937 patent as a result of

Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further

aware of the '937 patent prior to filing its complaint for declaratory relief in this case, and further

has knowledge of its infringement of the '937 patent by way of this Complaint.

-27-

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

48.     The Google Devices include functionality and hardware that, inter alia, displays a navigable graphical user interface ("navigable GUI") that permits a user to manipulate and control the contents of the display to maximize the use of display real estate.  This navigable GUI and the associated hardware is included in Google Devices with an operating system and hardware components configured and installed by Google to support at least the Gallery, Email, Maps, Browser, and Contacts functionalities.  On information and belief, these functionalities cannot operate in an acceptable manner absent the navigable GUI, as it is included in every Google Device.

49.     A reasonable inference to be drawn from the facts set forth is that the navigable GUI and the associated hardware as included in Google Devices is especially made or especially adapted to operate on a Google Device as a navigable GUI and the associated hardware that permits a user to manipulate or control the contents of the display to maximize the use of display real estate on the user's Google Devices.

50.     A reasonable inference to be drawn from the facts set forth is that the navigable GUI and the associated hardware as included in the Google Device is not a staple article or commodity of commerce and that the use of the navigable GUI and the associated hardware in the Google Devices is required for the operation of Google Devices.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

51.     The Google Devices with the navigable GUI and the associated hardware are each a material part of the invention of the '937 patent and are especially made for the infringing manufacture, sale, and use of Google Devices.  Google Devices with the navigable GUI and the associated hardware are especially made or adapted as a navigable GUI and associated hardware that infringes the '937 patent.  Because the sales and manufacture of Google Devices with a navigable GUI and associated hardware infringes the '937 patent, Google's sales of its infringing

-28-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

products have no substantial non-infringing uses.

52. Accordingly, a reasonable inference is that Google offers to sell, or sells within the United States the Google Devices which are or include a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing one or more claims of the '937 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of one or more of the '937 patent, and the Google Devices are not a staple article or commodity of commerce suitable for substantial non-infringing uses. Google provides to others, Google Devices with distinct and separate components, including software and hardware components, which have no substantial non-infringing uses.

### The Google Devices Infringe At Least One Claim Of The '298 Patent

53. The Google Devices with an operating system and hardware components configured and installed by Google to support portable hotspot functionality infringe at least claims 27 and 31 of the '298 Patent. Google makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States the Google devices and thus directly infringes at least claims 27 and 31 of the '298 Patent.

54. Google indirectly infringes the '298 patent by inducing infringement by others of at least claims 27 and 31, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Google Devices. Google received actual notice of the '298 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '298 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further

-29-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

aware of the '298 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '298 patent by way of this Complaint..

55.     Google's affirmative acts of selling Google Devices, causing the Google Devices to be manufactured, and providing instruction manuals for Google Devices induced Google's manufacturers and resellers to make or use the Google Devices in their normal and customary way to infringe the '298 patent.  Through its manufacture and sales of Google Devices, Google specifically intended its resellers and manufacturers to infringe the '298 patent; further, Google was aware that these normal and customary activities would infringe the '298 patent.  Google performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '298 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

56.     Accordingly, a reasonable inference is that Google specifically intends for others, such as resellers and end-use customers of the Google Devices, to directly infringe one or more claims of the '298 patent in the United States because Google has knowledge of the '298 patent and its infringement thereof and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States Google Devices for resale to others, such as resellers and end-use customers.  Google knew or should have known that such actions would induce actual infringement.

57.     The use of at least Google Devices that support the portable hotspot functionality as intended by Google infringes at least method claims 14 and 24 of the '298 Patent.  Google uses these products and thus directly infringes at least method claims 14 and 24 of the '298 Patent.

58.     In addition, Google provides at least Google Devices that support the portable hotspot functionality to others, such as resellers and end-use customers, in the United States who, in turn,

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

use these products to infringe at least method claims 14 and 24 of the '298 Patent.

59. Google indirectly infringes the '298 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities of the manufacturers, resellers, and end-users of Google Devices in their intended use, including a customer's use of the portable hotspot functionality. Google received actual notice of the '298 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, and further has knowledge of its infringement of the Patents-in-Suit by way of this Complaint, was further aware of the '298 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '298 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '298 patent by way of this Complaint.

60. Google's affirmative acts of selling its Google Devices and providing instruction manuals induced the end-users of Google Devices to use Google Devices in their normal and customary way to infringe the '298 patent at least through using Mobile Hotspot functionality. Google also provides instructions, including at least "Google Nexus Help" (available at https://support.google.com/nexus/#topic=3415518), for using portable hotspot functionality. Through its sales of Google Devices with portable hotspot functionality, Google specifically intended the end-users of Google Devices to infringe the '298 patent; further, Google was aware that the normal and customary use of portable hotspot functionality would infringe the '298 patent. Google also enticed its end-users to use portable hotspot functionality by providing instruction manuals and also providing portable hotspot functionality. Google performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the

-31-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

'298 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

61.    Accordingly, a reasonable inference is that Google actively induces infringement of the '298 Patent by others, such as resellers and end-use customers.  Google specifically intends for others, including such as resellers and end-use customers, to directly infringe one or more claims of the '298 Patent in the United States because Google had knowledge of the '298 Patent, and Google actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of Google Devices in an infringing way.  Such instructions include at least "Google Nexus Help" (available at https://support.google.com/nexus/#topic=3415518). When resellers and end-use customers follow such instructions, they directly infringe the '298 Patent.  Google knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '298 Patent.  Google thus knows that its actions induce the infringement.

62.    Google indirectly infringes the '298 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Google Devices in their intended use, including a customer's use of the portable hotspot functionality.  Google received actual notice of the '298 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '298 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '298 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '298 patent by way of this Complaint. .

-32-

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

63.     The Google Devices with portable hotspot functionality allow wireless devices from a first, or private, network to connect to a second, or public, network such as the Internet.  The portable hotspot functionality is designed to route data packets between wireless devices tethered to the portable hotspot to nodes on a public network such as the Internet, and cannot function in a manner that does not utilize the portable hotspot functionality available to Google Devices.  Upon information and belief, the portable hotspot functionality is designed to entice a user to access nodes in a second, or public, network such as the Internet.

64.     A reasonable inference to be drawn from the facts set forth is that the portable hotspot functionality in the Google Devices is especially made or especially adapted to operate on Google Devices for providing access for wireless devices in a first, or private, network to nodes in a second, or public, network.

65.     A reasonable inference to be drawn from the facts set forth is that the portable hotspot functionality is not a staple article or commodity of commerce and that the use of the portable hotspot functionality of the Google Devices is for interfacing first and second data communications networks, e.g., a private network and a public network such as the Internet.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

66.     The Google Devices with portable hotspot functionality are each a material part of the '298 patent and especially made for the infringing use of the portable hotspot functionality for interfacing private and public data communication networks.  Google Devices with the portable hotspot functionality are especially made or adapted to provide access for wireless devices in a first, or private, network through the Google Device, to nodes in a second, or public, network that perform or facilitate performance of the steps that infringe the '298 patent.  Furthermore, Google provides user manuals describing the uses of Google Devices that infringe the '298 patent.  Because

-33-

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

the sales and manufacture of Google Devices with portable hotspot functionality infringe the '298 patent, Google's sales of its infringing products have no substantial non-infringing uses.

67.     Accordingly, a reasonable inference is that Google offers to sell, or sells within the United States the Google Devices which are or include a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing one or more claims of the '298 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of one or more claims of the '298 patent, and the Google Devices are not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Google provides to others Google Devices with an operating system and hardware components configured and installed by Google to support portable hotspot functionality.   Google installs and configures Google Devices with distinct and separate components, including software components, which are used only to perform the infringing method claims.

**The Google Devices Infringe At Least One Claim Of The '973 Patent**

68.     The Google Devices with an operating system and hardware components configured and installed by Google to support an integrated notification message center functionality infringe at least claims 1 and 21 of the '973 Patent.  Google makes, uses, sells, tests, uses, offers for sale, imports, exports, supplies and/or distributes within the United States the Google devices and thus directly infringes one or more claims of the '973 patent, including at least claims 1 and 21.

69.     Google indirectly infringes the '973 patent by inducing infringement by others, such as resellers, of at least claims 1 and 21 in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Google Devices.  Google received actual notice of the

-34-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

'973 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '973 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '973 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '973 patent by way of this Complaint.

70. Google's affirmative acts of selling Google Devices, causing the Google Devices to be manufactured, and providing instruction manuals for Google Devices induced Google's manufacturers and resellers to make or use Google's Devices in their normal and customary way to infringe the '973 patent. Through its manufacture and sales of Google Devices, Google specifically intended its resellers and manufacturers to infringe the '973 patent; further, Google was aware that these normal and customary activities would infringe the '973 patent. Google performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '973 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

71. Accordingly, a reasonable inference is that Google specifically intends for others, such as resellers and end-use customers of the Google Devices, to directly infringe one or more claims of the '973 patent in the United States because Google has knowledge of the '973 patent and its infringement thereof and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Google Communication Devices for resale to others, such as resellers and end-use customers. Google knew or should have known that such actions would induce actual infringement.

72. The use of at least Google Devices with an operating system and hardware components configured and installed by Google to support an integrated notification message center

-35-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

functionality as intended by Google infringes at least method claim 8 of the '973 Patent. Google uses these devices within the United States and thus directly infringes one or more claims of the '973 patent, including at least claim 8.

73. Google indirectly infringes the '973 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Google Devices. Google received actual notice of the '973 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '973 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '973 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '973 patent by way of this Complaint. .

74. Google provides at least Google Devices with an operating system and hardware components configured and installed by Google to support integrated notification message center functionality to others, such as resellers and end-use customers, in the United States who, in turn, use Google Devices to infringe at least method claim 8 of the '973 Patent. Through its manufacture and sales of Google Devices, Google specifically intended its resellers and manufacturers to infringe the '973 patent.

75. Google specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '973 Patent in the United States. For example, Google provides instructions to resellers and end-use customers regarding the use and operation of Google Devices in an infringing way. Such instructions include at least "Google Nexus Help" (available at https://support.google.com/nexus/#topic=3415518). When resellers and end-use customers follow

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

such instructions, they directly infringe the '973 Patent. Google knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '973 Patent. Google thus knows that its actions induce the infringement.

76. Google performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '973 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

77. Google indirectly infringes the '973 patent, by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Google Devices. Google received actual notice of the '973 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '973 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '973 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '973 patent by way of this Complaint. .

78. The Google Devices include functionality that, inter alia, displays an integrated notification message center contained in a single list. The notification message center is designed to provide a user with a single list of notifications regardless of the types of messages (e.g., email, text, etc) on the user's Google Device. On information and belief, this functionality cannot operate in an acceptable manner absent the integrated notification message center, as it is included in every Google Device.

79. A reasonable inference to be drawn from the facts set forth is that the integrated message center in the Google Devices is especially made or especially adapted to operate on a

-37-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

Google Device as an integrated notification message center that provides a user with notifications concerning different types of messages on the user's Mobile Communication Device.

80.     A reasonable inference to be drawn from the facts set forth is that the integrated notification message center in the Mobile Communication Device is not a staple article or commodity of commerce and that the use of the integrated notification message center in Google Devices is required for operation of the Google Devices.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

81.     Google Devices with the integrated notification message center are each a material part of the invention of the '973 patent and are especially made for the infringing manufacture, sale, and use of Google Devices.  Google Devices, including the integrated notification message center, are especially made or adapted as an integrated notification message center that infringes the '973 patent.  Because the sales and manufacture of Google Devices with an integrated notification message center infringes the '973 patent, Google's sales of its infringing products have no substantial non-infringing uses.

82.     Accordingly, a reasonable inference is that Google offers to sell, or sells within the United States the Google Devices which are or include a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing one ore more claims of the '973 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of one or more claims of the '973 patent, and the Google Devices are not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Google provides to others Google Devices with distinct and separate components, including software components, which have no substantial non-infringing uses.

-38-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

**<u>The Google Devices Infringe At Least One Claim Of The '131 Patent</u>**

83.     The Google Devices with an operating system and hardware components configured and installed by Google to support Message and Notification functionality infringe at least claim 1 of the '131 Patent.  Google makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States the Google Devices and thus directly infringes at least claim 1 of the '131 Patent.

84.     Google indirectly infringes the '131 patent by inducing infringement by others, such as resellers, of at least claim 1 in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Google Devices.  Google received actual notice of the '131 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '131 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '131 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '131 patent by way of this Complaint. .

85.     Google's affirmative acts of selling Google Devices, causing the Google Devices to be manufactured, and providing instruction manuals for Google Devices induced Google's manufacturers and resellers to make or use the Google Devices in their normal and customary way to infringe the '131 patent.  Through its manufacture and sales of Google Devices, Google specifically intended its resellers and manufacturers to infringe the '131 patent; further, Google was aware that these normal and customary activities would infringe the '131 patent.  Google performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '131 patent and with the knowledge or willful blindness that the induced acts

-39-

DEFENDANTS' ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND COUNTERCLAIMS

would constitute infringement.

86.   Accordingly, a reasonable inference is that Google specifically intends for others, such as resellers and end-use customers of the Google Devices, to directly infringe one or more claims of the '131 patent in the United States because Google has knowledge of the '131 patent and its infringement thereof and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Google Communication Devices for resale to others, such as resellers and end-use customers. Google knew or should have known that such actions would induce actual infringement.

87.   The use of the Google Devices with an operating system and hardware components configured and installed by Google to support Message and Notification functionality as intended by Google infringes at least method claim 5 of the '131 Patent.  Google uses these products and thus directly infringes at least method claim 5 of the '131 Patent.

88.   In addition, Google provides at least Google Devices with an operating system and hardware components configured and installed by Google to support Message functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 5 of the '131 Patent.

89.   Google indirectly infringes the '131 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Google Devices in their intended use, including a customer's use of the Message and Notifications functionality.  Google received actual notice of the '131 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '131 patent as a result of

-40-

DEFENDANTS' ANSWER TO COMPLAINT FOR
                                        DECLARATORY JUDGMENT OF NON-
                                        INFRINGEMENT AND COUNTERCLAIMS

Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '131 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '131 patent by way of this Complaint. .

90. Google's affirmative acts of selling Google Devices and providing instruction manuals induced the end-users of Google Devices to use Google Devices in their normal and customary way to infringe the '131 patent at least through using Message and Notifications functionality. Google also provides instructions, including at least "Google Nexus Help" available on Google's website at https://support.google.com/nexus/?hl=en&topic=2765972#topic=3415518, for using the Messaging and Notifications functionality. Through its sales of the Google Devices with Messaging and Notifications functionality, Google specifically intended the end-users of Google Devices to infringe the '131 patent; further, Google was aware that the normal and customary use of the Message and Notifications functionality would infringe the '131 patent. Google also enticed its end-users to use the Messaging and Notifications functionality by providing instruction manuals. Google performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '131 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

91. Accordingly, a reasonable inference is that Google actively induces infringement of the '131 Patent by others, such as resellers and end-use customers of the Google Devices. Google specifically intends for others, such as resellers and end-use customers of the Google Devices, to directly infringe one or more claims of the '131 Patent in the United States because Google had knowledge of the '131 Patent and its infringement thereof, and Google actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of Google Devices in an infringing way. Such instructions include at least "Google

-41-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

Nexus                              Help"                          available                          at
https://support.google.com/nexus/?hl=en&topic=2765972#topic=3415518.     When resellers and
end-use customers follow such instructions, they directly infringe the '131 Patent.  Google knows
that by providing such instructions, resellers and end-use customers follow those instructions, and
directly infringe the '131 Patent.  Google thus knows that its actions induce the infringement.

92.     Google indirectly infringes the '131 Patent by contributing to infringement by others,
such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and
elsewhere in the United States.  Direct infringement is the result of activities performed by the
manufacturers, resellers, and end-users of Google Devices in their intended use, including a
customer's use of the Messaging and Notification functionality.  Google received actual notice of
the '131 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio
containing each of the patents asserted herein, and was further aware of the '131 patent as a result
of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was
further aware of the '131 patent prior to filing its complaint for declaratory relief in this case, and
further has knowledge of its infringement of the '131 patent by way of this Complaint. .

93.     Google's Message and Notification functionality receives and displays message of
different types, such as a phone call, voice mail, text message, or email.  The Message and
Notification Services functionality is designed to notify the user of an incoming communication and
to select the format of the message received and cannot function in a manner that does not utilize
the messaging functionality available to Google Devices.  Upon information and belief, the
Message and Notifications functionality is designed to entice a user to receive notifications of an
incoming communication.

94.     A reasonable inference to be drawn from the facts set forth is that the Message and

-42-

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

Notifications functionality is especially made or especially adapted to operate on the Google Devices for notifying a user of an incoming communication.

95.     A reasonable inference to be drawn from the facts set forth is that the Message and Notifications functionality is not a staple article or commodity of commerce and that the use of the Messaging and Notifications functionality of the Google Devices is for notifying a user of an incoming communication.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

96.     Google Devices with Messaging and Notifications functionality are each a material part of the '131 patent and especially made for the infringing use of the Messaging and Notification functionality to receive and display messages.  Google Devices including the Messaging and Notification functionality, are especially made or adapted to notify a user of an incoming communication that perform or facilitate performance of the steps that infringe the '131 patent. Furthermore, Google provides user manuals describing the uses of its Google Devices that infringe the '131 patent.  Because the functionality provided by Google's Messaging and Notification to notify a user of an incoming communication infringes the '131 patent, Google's sales of its infringing products have no substantial non-infringing uses.

97.     Accordingly, a reasonable inference is that Google offers to sell, or sells within the United States the Google Devices which are or include a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing one or more claims of the '131 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of one or more claims of the '131 patent, and the Google Devices are not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Google provides to others, Google Devices with an operating

-43-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

system and hardware components configured and installed by Google to support Message and Notification functionality. Google installs and configures on these products distinct and separate components, including software components, which are used only to perform the infringing method claims.

## The Google Devices Infringe At Least One Claim Of The '591 Patent

98. The Google Devices with an operating system and hardware components configured and installed by Google to support VPN management functionality, infringe at least claims 1 and 8 of the '591 Patent. Google makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States the Google Devices and thus directly infringes at least claims 1 and 8 of the '591 Patent.

99. The use of at least Google Devices with an operating system and hardware components configured and installed by Google to support VPN management functionality as specified and intended by Google infringes at least claims 1 and 8 of the '591 Patent. Google uses these products and thus directly infringes at least claims 1 and 8 of the '591 Patent.

100. Google indirectly infringes the '591 patent by inducing infringement by others, such as resellers, of at least claims 1 and 8 in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Google Devices. Google received actual notice of the '591 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '591 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '591 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '591 patent by way of this Complaint. .

-44-

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

101.    Google's affirmative acts of selling Google Devices, causing the Google Devices to be manufactured, and providing instruction manuals for Google Devices induced Google's manufacturers and resellers to make or use the Google Devices in their normal and customary way to infringe the '591 patent.  Through its manufacture and sales of Google Devices, Google specifically intended its resellers and manufacturers to infringe the '591 patent; further, Google was aware that these normal and customary activities would infringe the '591 patent.  Google performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '591 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

102.    Accordingly, a reasonable inference is that Google specifically intends for others, such as resellers and end-use customers of the Google Devices, to directly infringe one or more claims of the '591 patent in the United States because Google has knowledge of the '591 patent and its infringement thereof and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Google Communication Devices for resale to others, such as resellers and end-use customers. Google knew or should have known that such actions would induce actual infringement.

103.    In addition, Google provides at least its Google Devices with an operating system and hardware components configured and installed by Google to support VPN management functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least claims 1 and 8 of the '591 Patent.

104.    Google indirectly infringes the '591 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the

-45-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

manufacturers, resellers, and end-users of Google Devices in their intended use, including a customer's use of the VPN management functionality. Google received actual notice of the '591 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '591 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '591 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '591 patent by way of this Complaint. .

105.    Google's affirmative acts of selling its Google Devices and providing instruction manuals induced the end-users of Google Devices to use Google Devices in their normal and customary way to infringe the '591 patent at least through using VPN management functionality. Google also provides instructions, including at least "Google Nexus Help" available on Google's website at https://support.google.com/nexus/?hl=en&topic=2765972#topic=3415518, for using the VPN management functionality. Through its sales of Google Devices with VPN management functionality, Google specifically intended the end-users of Google Devices to infringe the '591 patent; further, Google was aware that the normal and customary use of VPN management functionality would infringe the '591 patent. Google also enticed its end-users to use the VPN management functionality by providing instruction manuals. Google performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '591 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

106.    Accordingly, it is a reasonable inference that Google actively induces infringement of the '591 Patent by others, such as resellers and end-use customers of the Google Devices. Google specifically intends for others, such as resellers and end-use customers, to directly infringe one or

-46-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

more claims of the '591 Patent in the United States because Google had knowledge of the '591 Patent and its infringement thereof, and Google actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of Google's products in an infringing way. Such instructions include at least "Google Nexus Help" available on Google's website at https://support.google.com/nexus/?hl=en&topic=2765972#topic=3415518. When resellers and end-use customers follow such instructions, they directly infringe the '591 Patent. Google knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '591 Patent. Google thus knows that its actions induce the infringement.

107.    Google indirectly infringes the '591 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Google Devices in their intended use, including a customer's use of the VPN management functionality. Google received actual notice of the '591 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '591 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '591 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '591 patent by way of this Complaint. .

108.    Google's VPN management functionality facilitates management of VPNs. The VPN management functionality is designed for management of VPNs and cannot function in a manner that does not utilize the VPN management functionality available to Google Devices. The VPN management functionality is designed upon information and belief to entice a user to manage

-47-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

VPNs.

109.    A reasonable inference to be drawn from the facts set forth is that the VPN functionality is especially made or especially adapted to operate on the Google Devices for providing VPN management functionality.

110.    A reasonable inference to be drawn from the facts set forth is that the VPN management functionality is not a staple article or commodity of commerce and that the use of the VPN management functionality of the Google Devices is for managing VPNs.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

111.    The Google Devices with VPN management functionality are each a material part of the invention of the '591 patent and especially made for the infringing use of the VPN functionality. Google Devices including the VPN management functionality, are especially made or adapted to provide VPN management functionality that perform or facilitate performance of the steps that infringe the '591 patent.  Furthermore, Google provides user manuals describing the uses of its Google Devices that infringe the '591 patent.  Because the functionality provided by Google's VPN management functionality infringes the '591 patent, Google's sales of its infringing Google Devices have no substantial non-infringing uses.

112.    Accordingly, a reasonable inference is that Google offers to sell, or sells within the United States the Google Devices which are or include a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing one or more claims of the '591 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of one or more claims of the '591 patent, and the Google Devices are not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Google provides to others Google Devices with an operating

-48-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

system and hardware components configured and installed by Google to support VPN management functionality. Google installs and configures on these products distinct and separate components, including software components, which are used only to infringe the '591 Patent.

## The Google Devices Infringe At Least One Claim Of The '572 Patent

113.   The use of Google Devices with an operating system and hardware components configured and installed by Google to support Location Services functionality, as intended by Google infringes at least method claim 17 of the '572 Patent. Google uses these Google Devices and thus directly infringes at least method claim 17 of the '572 Patent.

114.   In addition, Google provides at least its Google Devices with an operating system and hardware components configured and installed by Google to support Location Services functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 17 of the '572 Patent.

115.   Google indirectly infringes by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Google Devices in their intended use, including a customer's use of the Location Services functionality. Google received actual notice of the '572 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '572 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '572 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '572 patent by way of this Complaint. .

116.   Google's affirmative acts of selling its Google Devices and providing instruction

-49-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

manuals induced the end-users of Google Devices to use Google Devices in their normal and customary way to infringe the '572 patent at least through using Location Services functionality. Google also provides instructions, including at least "Google Nexus Help," available at https://support.google.com/nexus/topic/3416294?hl=en&ref_topic=3415468, for using the Location Services functionality. Through its sales of Google Devices with Location Services functionality, Google specifically intended the end-users of Google Devices to infringe the '572 patent; further, Google was aware that the normal and customary use of Location Services would infringe the '572 patent. Google also enticed its end-users to use the Location Services by providing instruction manuals. Google performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '572 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

117.    Accordingly, a reasonable inference is that Google actively induces infringement of the '572 Patent by others, such as resellers and end-use customers of the Google Devices. Google specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '572 Patent in the United States because Google had knowledge of the '572 Patent and its infringement thereof, and Google actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of Google's products in an infringing way. Such instructions include at least "Google Nexus Help," available at https://support.google.com/nexus/topic/3416294?hl=en&ref_topic=3415468.    When resellers and end-use customers follow such instructions, they directly infringe the '572 Patent. Google knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '572 Patent. Google thus knows that its actions induce the infringement.

118.    Google indirectly infringes the '572 Patent by contributing to infringement by others,

-50-

DEFENDANTS' ANSWER TO COMPLAINT FOR
                                                                                      DECLARATORY JUDGMENT OF NON-
                                                                                      INFRINGEMENT AND COUNTERCLAIMS

such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Google Devices in their intended use, including a customer's use of the Locations Services functionality.  Google received actual notice of the '572 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, was further aware of the '572 patent as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the '572 patent prior to filing its complaint for declaratory relief in this case, and further has knowledge of its infringement of the '572 patent by way of this Complaint. .

119.    Google's Location Services functionality provides call trace information, i.e., a geographic location of Google Devices.  The Location Services functionality is designed to notify the user of Google Devices of call trace information, i.e., a geographic location of the Google Devices, and cannot function in a manner that does not utilize the Location Services functionality available to the Google Devices.  Upon information and belief, the Location Services functionality is designed to entice a user to access call trace information.

120.    A reasonable inference to be drawn from the facts set forth is that the Location Services functionality is especially made or especially adapted to operate on the Google Devices for obtaining call trace information, i.e., a geographic location of the Google Devices.

121.    A reasonable inference to be drawn from the facts set forth is that the Location Services functionality is not a staple article or commodity of commerce and that the use of the Location Services functionality of the Google Devices is for providing call trace information.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

122.    Google Devices with Location Services functionality are each a material part of the

-51-

DEFENDANTS' ANSWER TO COMPLAINT FOR
                                                                                    DECLARATORY JUDGMENT OF NON-
                                                                                    INFRINGEMENT AND COUNTERCLAIMS

'572 patent and especially made for the infringing use of the Location Services functionality to receive call trace information, i.e., a geographic location of the Google Devices. The Google Devices including the Location Services functionality are especially made or adapted to provide call trace information that perform or facilitate performance of the steps that infringe the '572 patent. Furthermore, Google provides user manuals describing the uses of its products that infringe the '572 patent. Because the functionality provided by Google's Location Services to obtain call trace information, i.e., a geographic location of the Google Devices, infringes the '572 patent, Google's sales of its infringing products have no substantial non-infringing uses.

123. Accordingly, a reasonable inference is that Google offers to sell, or sells within the United States the Google Devices which are or include a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing one or more claims of the '572 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of one or more claims of the '572 patent, and the Google Devices are not a staple article or commodity of commerce suitable for substantial non-infringing uses. Google provides to others Google Devices with an operating system and hardware components configured and installed by Google to support Location Services functionality. Google installs and configures on these products distinct and separate components, including software components, which are used only to perform the infringing method claims.

**Request For Damages And Other Relief**

124. Google's acts of infringement have caused damage to Rockstar Consortium and MobileStar. Rockstar Consortium and MobileStar are entitled to recover from Google the damages sustained by Rockstar Consortium and MobileStar as a result of Google's wrongful acts in an amount subject to proof at trial.

-52-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

125.     In addition, the infringing acts and practices of Google have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Rockstar Consortium and MobileStar for which there is no adequate remedy at law, and for which Rockstar Consortium and MobileStar are entitled to injunctive relief under 35 U.S.C. § 283.

126.     Google had actual notice of the Patents-in-Suit at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing the Patents-in-Suit, was further aware of the Patents-in-Suit as a result of Rockstar's October 31, 2013 filing of the action against the Eastern District Defendants, was further aware of the Patents-in-Suit prior to filing its complaint for declaratory relief in this case.

127.     Google has knowledge of its infringement of the Patents-in-Suit by way of this Complaint and further has knowledge of its infringement of the Patents-in-Suit as a result of filing its complaint for declaratory relief in this case.

128.     Google has willfully infringed and/or does willfully infringe the Patents-in-Suit.

## DEMAND FOR JURY TRIAL

Rockstar Consortium and MobileStar hereby demand a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Rockstar Consortium and MobileStar pray for the following relief:

1.     A judgment that Google has directly infringed the '551 Patent, contributorily infringed the '551 Patent, and/or induced the infringement of the '551 Patent;

2.     A judgment that Google has directly infringed the '937 Patent, contributorily infringed the '937 Patent, and/or induced the infringement of the '937 Patent;

3.     A judgment that Google has directly infringed the '298 Patent, contributorily

-53-

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

infringed the '298 Patent, and/or induced the infringement of the '298 Patent;

4.    A judgment that Google has directly infringed the '973 Patent, contributorily infringed the '973 Patent, and/or induced the infringement of the '973 Patent;

5.    A judgment that Google has directly infringed the '131 Patent, contributorily infringed the '131 Patent, and/or induced the infringement of the '131 Patent;

6.    A judgment that Google has directly infringed the '591 Patent, contributorily infringed the '591 Patent, and/or induced the infringement of the '591 Patent;

7.    A judgment that Google has directly infringed the '572 Patent, contributorily infringed the '572 Patent, and/or induced the infringement of the '572 Patent;

8.    A judgment that Google's infringement of the '551, '937, '298, '973, '131, '591 and '572 Patents has been willful;

9.    A ruling that this case be found to be exceptional under 35 U.S.C. § 285, and a judgment awarding Rockstar Consortium and MobileStar to their attorneys' fees incurred in prosecuting this action;

10.    A judgment and order requiring Google to pay Rockstar Consortium and MobileStar damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and treble damages for willful infringement as provided by 35 U.S.C. § 284;

11.    A judgment and order requiring Google to pay Rockstar Consortium and MobileStar the costs of this action (including all disbursements);

12.    A judgment and order requiring Google to pay Rockstar Consortium and MobileStar pre-judgment and post-judgment interest on the damages awarded;

13.    A judgment and order requiring that Rockstar Consortium and MobileStar be

-54-

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

awarded a compulsory ongoing licensing fee as to Google;

      14.    Entry of a permanent injunction enjoining Google, and all others in active concert with Google, from further infringement of the Patents-in-Suit; and

      15.    Such other and further relief as the Court may deem just and proper.

Case No. 4:13-cv-5933-CW

DEFENDANTS' ANSWER TO COMPLAINT FOR
DECLARATORY JUDGMENT OF NON-
INFRINGEMENT AND COUNTERCLAIMS

1   DATED: May 5, 2014                     Respectfully submitted,

2

3                                      By____*/s/Joshua W. Budwin*_____

4                                      Courtland L. Reichman
                                     MCKOOL SMITH HENNIGAN, P.C.

5                                      255 Shoreline Drive Suite 510
                                     Redwood Shores, CA 94065

6                                      (650) 394-1400
                                     (650) 394-1422 (facsimile)

7                                      Mike McKool (Admitted *Pro Hac Vice*)
                                     mmckool@McKoolSmith.com

8                                      Douglas A. Cawley (Admitted *Pro Hac Vice*)

9                                      dcawley@McKoolSmith.com

10                                   Ted Stevenson III (Admitted *Pro Hac Vice*)
                                 tstevenson@McKoolSmith.com

11                                David Sochia (Admitted *Pro Hac Vice*)
                               dsochia@McKoolSmith.com

12                                McKool Smith, P.C.

13                              300 Crescent Court, Suite 1500
                             Dallas, TX 75201

14                              (214) 978-4000
                           (214) 978-4044 (facsimile)

15

16                          Joshua W. Budwin (Admitted *Pro Hac Vice*)
                         jbudwin@McKoolSmith.com

17                        McKool Smith, P.C.

18                        300 W. 6th Street, Suite 1700
                       Austin, TX 78701

19                        (512) 692-8700
                     (512) 692-8744 (facsimile)

20

21                      ***Attorneys for Defendants***
                     ***Rockstar Consortium U.S. LP and MobileStar Technologies LLC***

22

23

24

25

26

27

28   Case No. 4:13-cv-5933-CW         -56-       DEFENDANTS' ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND COUNTERCLAIMS