# EXHIBIT 11

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

| | |
|---|---|
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) |
| | ) |
| _____ | ) |
| *Defendant* | ) |

Civil Action No.

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❏ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

_____, who issues or requests this subpoena, are:

michelleernst@quinnemanuel.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## DEFINITIONS

1.      "YOU," "YOUR," and "NORTEL" means Nortel Networks Corporation and

Nortel Networks Inc., their officers, directors, current and former employees, counsel, agents,

consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing,

and their affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns,

predecessors and successors in interest, and any other legal entities, whether foreign or domestic,

that are owned or controlled by Nortel Networks Corporation or Nortel Networks Inc., and all

predecessors and successors in interest to such entities, including Alteon WebSystems, Inc.,

Alteon WebSystems International, Inc., Architel Systems (U.S.) Corporation, Bay Networks,

Inc., CoreTek, Inc., New Oak Communications, Inc., Nortel Altsystems Inc., Nortel Altsystems

International Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks

Cable Solutions Inc., Nortel Networks (CALA) Inc., Nortel Networks Capital Corporation,

Nortel Networks Global Corporation, Nortel Networks HPOCS Inc., Nortel Networks

International Corporation, Nortel Networks International Inc., Nortel Networks Limited, Nortel

Networks Optical Components Inc., Nortel Networks Technology Corporation, Northern

Telecom International Inc., Qtera Corporation, Sonoma Systems, and Xros, Inc.

2.      "ROCKSTAR" means Rockstar Consortium US LP and NetStar Technologies

LLC;  their officers, directors, current and former employees, counsel, agents, consultants,

representatives, and any other PERSONS acting on behalf of any of the foregoing, their

affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns,

predecessors and successors in interest, and any other legal entities, whether foreign or domestic,

that own or control them, are owned or controlled by them, or share with them common

ownership or control, as well as predecessors and successors in interest to such entities, including

Bockstar Technologies LLC, Constellation Technologies LLC, MobileStar Technologies LLC, NetStar Technologies LLC, Rockstar Bidco GP, LLC,  Rockstar Bidco LLC, Rockstar Bidco LP, Rockstar Consortium Inc., Rockstar Consortium LLC, or Rockstar Consortium US LP.

3.      "ROCKSTAR CONSORTIUM" means Rockstar Consortium US LP; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

4.      "NETSTAR" means NetStar Technologies LLC; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

5.      "ROCKSTAR BIDCO GP" means Rockstar Bidco GP, LLC; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or

controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

6.      "ROCKSTAR BIDCO LLC" means Rockstar Bidco LLC; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

7.      "ROCKSTAR BIDCO LP" means Rockstar Bidco LP; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

8.      "ROCKSTAR CONSORTIUM INC." means Rockstar Consortium Inc.; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

9.      "ROCKSTAR CONSORTIUM LLC" means Rockstar Consortium LLC; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

10.      "APPLE" means Apple Inc.; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

11.      "EMC" means EMC Corporation; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

12.      "MICROSOFT" means Microsoft Corporation; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint

ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

13.    "SONY" means Sony Corporation of America; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

14.    "ERICSSON" means Ericsson; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

15.    "BLACKBERRY" means Blackberry Ltd. and its predecessors, including without limitation Research In Motion Ltd.; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether

5

foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

16.     "ANY ROCKSTAR ENTITY" means any of ROCKSTAR, ROCKSTAR CONSORTIUM, NETSTAR, ROCKSTAR BIDCO GP, ROCKSTAR BIDCO LLC, ROCKSTAR BIDCO LP, ROCKSTAR CONSORTIUM INC., and ROCKSTAR CONSORTIUM LLC.

17.     "ANY ROCKSTAR SHAREHOLDER" means any current or former shareholder, member, owner, partner, or other equity owners of ANY ROCKSTAR ENTITY, including, APPLE, EMC, MICROSOFT, SONY, ERICSSON, and BLACKBERRY.

18.     "NORTEL ADVISOR" means any THIRD PARTY or ANY ROCKSTAR ENTITY from whom NORTEL sought or received advice REGARDING the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, NORTEL's patents, or other intellectual property, and the auction therefor, including, but not limited to, David Descoteaux, Lazard Frères & Co. LLC, Global IP Law Group, Justin Lux,  Portfolio Advisors LLC, Colin Keenan, Brightwood Capital Advisors, LLC, Edouard Gueyffier, Estin & Co., Kshitij Bhatia, or Warburg Pincus India Pvt. Ltd.

19.     "NETGRAVITY" means any SOURCE CODE, EXECUTABLE SOFTWARE, or services offered by NetGravity, Inc., previously known as Netvertiser, Inc. prior to July 8, 1999, as referenced in, by way of example only, Exhibit 5.

20.     "GOOGLE" means Defendant Google Inc.

21.     "PLAINTIFFS" mean Plaintiffs Rockstar Consortium US LP and NetStar Technologies LLC.

22.     "THIS LITIGATION" means *Rockstar Consortium US LP and NetStar Technologies LLC v. Google, Inc.*, No. 2:13-cv-893, filed in the Eastern District of Texas.

23.     "'065 PATENT" means U.S. Patent No. 6,098,065, entitled "Associative Search Engine," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, and any other patent applications in the '065 PATENT family.

24.     "'969 PATENT" means U.S. Patent No. 7,236,969, entitled "Associative Search Engine," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, and any other patent applications in the '969 PATENT family.

25.     "'245 PATENT" means U.S. Patent No. 7,469,245, entitled "Associative Search Engine," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, and any other patent applications in the '245 PATENT family.

26.     "'970 PATENT" means U.S. Patent No. 7,672,970, entitled "Associative Search Engine," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, and any other patent applications in the '970 PATENT family.

27.     "'183 PATENT" means U.S. Patent No. 7,895,183, entitled "Associative Search Engine," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, and any other patent applications in the '183 PATENT family.

28.     "'178 PATENT" means U.S. Patent No. 7,895,178, entitled "Associative Search Engine," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, and any other patent applications in the '178 PATENT family.

29.     "'883 PATENT" means U.S. Patent No. 7,933,883, entitled "Associative Search Engine," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, and any other patent applications in the '883 PATENT family.

30.    "PATENTS-IN-SUIT" refers to the '065 PATENT, '969 PATENT, '245 PATENT, '970 PATENT, '183 PATENT, '178 PATENT, and the '883 PATENT, individually and collectively, including all underlying patent applications, all continuations, continuations-in-part, divisionals, and reissues.

31.    "PRIOR ART" shall mean the subject matter described in 35 U.S.C. §§ 102 and 103, including but not limited to publications, articles, posters, abstracts, chapters, displays, slides, patents, physical devices, prototypes, uses, sales, and offers for sale, and any DOCUMENTS or THINGS evidencing any of the foregoing.

32.    The term "RELATED PATENTS/APPLICATIONS" shall mean (1) any United States or foreign patent or patent application related to the PATENTS-IN-SUIT by way of subject matter or claimed priority date, (2) all parent, grandparent or earlier, divisional, continuation, continuation-in-part, provisional, reissue, reexamination, and foreign counterpart patents and applications thereof, and/or (3) any patent or patent application filed by one of more of the same applicant(s) (or his or her assignees) that refers to any of (1) or (2) herein.

33.    "NAMED INVENTORS" refers to Richard Prescott Skillen and Frederick Caldwell Livermore, the named inventors of the PATENTS-IN-SUIT

34.    The phrase "THE APPLICANTS" shall refer to the NAMED INVENTORS of the PATENTS-IN-SUIT, the prosecuting attorneys of the PATENTS-IN-SUIT (including Vernon E. Williams, Jean-Pierre Fortin, and Bruce Garlick), and/or other PERSONS owing a duty of candor to the U.S. Patent & Trademark Office in connection with the prosecution of the PATENTS-IN-SUIT, individually and collectively.

35.    "DOCUMENT" includes, without limitation, all written, graphic or otherwise recorded material, including without limitation, microfilms or other film records or impressions,

8

electronically stored information regardless of the form of storage medium, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electronic recording device, including email, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original. The foregoing specifically includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

36.    "THING" as used herein means any physical object other than a "DOCUMENT."

37.    "COMMUNICATION" means, without limitation, any transmission, conveyance or exchange of a word, statement, fact, THING, idea, DOCUMENT, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail.

38.    "SOURCE CODE" means source code, hardware code, machine code, assembly code, or code written in any programming language, and code that can be compiled or acted upon by a processor, any listings or printouts thereof, and any release notes describing the features or modifications of such code.

39.     The term "PERSON" refers to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

40.     "THIRD PARTY" or "THIRD PARTIES" means any PERSON other than either YOU or ANY ROCKSTAR ENTITY.

41.     "INFRINGE" and "INFRINGEMENT" means direct infringement, contributory infringement, infringement by inducement, literal infringement, and infringement under the doctrine of equivalents.

42.     "REGARDING" means relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

43.     "SUBJECT MATTER IN SUIT" means providing search engine results influenced by user profile data, and/or providing advertisements to a search engine based on a user's search request and/or user profile data.

44.     "Include" and "including" shall mean including without limitation.

45.     Use of the singular also includes the plural and vice-versa.

46.     The words "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Document Requests.

47.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

## INSTRUCTIONS

The following instructions shall apply to each of the Document Requests herein:

1.       In answering the following Document Requests, furnish all available information, including information in the possession, custody, or control of YOU or any of YOUR attorneys, directors, officers, agents, employees, representatives, associates, investigators or division affiliates, partnerships, parents or subsidiaries, and PERSONS under YOUR control, who have the best knowledge, not merely information known to YOU based on YOUR own personal knowledge. If YOU cannot fully respond to the following Document Requests after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each Document Request that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the Document Request cannot be answered fully and completely; and state what knowledge, information or belief YOU have concerning the unanswered portion of any such Document Requests.

2.       Electronic records and computerized information must be produced in an intelligible format.

3.       Selection of DOCUMENTS from the files and other sources and the numbering of such DOCUMENTS shall be performed in such a manner as to ensure that the source of each DOCUMENT may be determined, if necessary.

4.       File folders with tabs or labels or directories of files identifying DOCUMENTS must be produced intact with such DOCUMENTS.

5.       Documents attached to each other shall not be separated.

6.       If any information requested is claimed to be privileged or otherwise immune from discovery, please provide all information falling within the scope of the Document

Request which is not privileged, and for each item of information contained in a DOCUMENT

to which a claim of privilege is made, identify such DOCUMENT with sufficient particularity

for purposes of a motion to compel, such identification to include at least the following:

(a)    the basis on which the privilege is claimed;

(b)    the name(s) of the author(s) of the DOCUMENT;

(c)    the name of each individual or other PERSON to whom the
DOCUMENT, or a copy thereof, was sent; and

(d)    the date of the DOCUMENT

7.    If YOUR response to a particular Document Request is a statement that YOU

lack the ability to comply with that Document Request, YOU must specify whether the

inability to comply is because the particular item or category of information never existed, has

been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in

YOUR possession, custody, or control, in which case the name and address of any PERSON or

entity known or believed by YOU to have possession, custody, or control of that information or

category of information must be identified.

8.    If any of the DOCUMENTS are considered "confidential," such DOCUMENTS

should be produced subject to the terms and provisions of the Protective Order entered in this

case, attached as Exhibit 1.

9.    YOUR obligation to respond to these Document Requests is continuing and its

responses are to be supplemented to include subsequently acquired information in accordance

with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION

### DOCUMENT REQUEST NO. 1:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

### DOCUMENT REQUEST NO. 2:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the patentability, novelty, non-obviousness, scope, validity, invalidity, enforceability or unenforceability of any claim in any of the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS, including any analyses or searches conducted by YOU, ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER, any THIRD PARTY, or by any PERSON on behalf of YOU, ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER, or any THIRD PARTY.

### DOCUMENT REQUEST NO. 3:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any patent claim charts, infringement or invalidity evaluations, or comparisons between the PATENTS-IN-SUIT and any THIRD PARTY product, system, or method.

### DOCUMENT REQUEST NO. 4:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING ANY ROCKSTAR ENTITY, including but not limited to DOCUMENTS and COMMUNICATIONS REGARDING decisions, analysis, or strategy of ANY ROCKSTAR ENTITY to file patent-infringement litigation and/or enter license agreements.

### DOCUMENT REQUEST NO. 5:

All COMMUNICATIONS with ANY ROCKSTAR ENTITY, including all COMMUNICATIONS REGARDING the PATENTS-IN-SUIT, GOOGLE, or THIS LITIGATION.

**DOCUMENT REQUEST NO. 6:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING THIS LITIGATION, including the decision to file THIS LITIGATION.

**DOCUMENT REQUEST NO. 7:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the July 2011 auction for YOUR intellectual property assets.

**DOCUMENT REQUEST NO. 8:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any bid submitted in connection with the July 2011 auction for YOUR intellectual property assets.

**DOCUMENT REQUEST NO. 9:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any meeting or discussion between YOU and GOOGLE REGARDING any of NORTEL's patents or other intellectual property assets, including the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 10:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any meeting or discussion between ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER or any NORTEL ADVISOR and GOOGLE REGARDING any of NORTEL's patents or other intellectual property assets, including the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 11:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any meeting or discussion between YOU and ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER, or any THIRD PARTY REGARDING any of NORTEL's patents or other intellectual property assets, including the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 12:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any meeting or discussion between YOU and any NORTEL ADVISOR REGARDING any of NORTEL's patents or other intellectual property assets, including the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 13:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any efforts YOU made to license, sell, monetize, or otherwise generate revenue from NORTEL's patents or other intellectual property assets, including but not limited to any presentations, mailings, meeting minutes, license negotiations, sales negotiations, claim charts, infringement analyses, validity analyses, notice letters, cease and desist letters, offers, draft license agreements, and term sheets.

**DOCUMENT REQUEST NO. 14:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any proposed merger, acquisition, sale, or license involving any patent, group of patents, or other intellectual property assets of NORTEL or ANY ROCKSTAR ENTITY, including but not limited to any diligence, presentations, proposals, offers, term sheets and letters of intent.

**DOCUMENT REQUEST NO. 15:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the value of any of the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS, or the SUBJECT MATTER IN SUIT, including any valuation performed by NORTEL, NORTEL'S ADVISORS, ANY ROCKSTAR ENTITY, or any THIRD PARTY.

**DOCUMENT REQUEST NO. 16:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any review, valuation, assessment, or evaluation of any of NORTEL's patents or other intellectual property assets, including any review, valuation, assessment, or evaluation performed by NORTEL, NORTEL's ADVISORS, ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER, or any THIRD PARTY, or by any PERSON on behalf of YOU, ANY ROCKSTAR SHAREHOLDER, ANY ROCKSTAR ENTITY, or any THIRD PARTY.

**DOCUMENT REQUEST NO. 17:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING NORTEL's patents or other intellectual property assets provided in any clean room or electronic data room by NORTEL or NORTEL's ADVISORS to potential investors or buyers in connection with the July 2011 auction.

**DOCUMENT REQUEST NO. 18:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any confidentiality or non-disclosure agreements executed between NORTEL and ANY ROCKSTAR ENTITY or any THIRD PARTY in connection with the July 2011 auction of NORTEL's patents or other intellectual property assets.

**DOCUMENT REQUEST NO. 19:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the sales, revenue, income, profit, gross margin, costs, expenses, forecasts, projections, or budgets for any NORTEL product, system, or method that embodies any claim of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 20:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the incremental sales, revenue, income, or profit attributable to the use of the technology claimed in any of the PATENTS-IN-SUIT in any NORTEL product, system, or method.

**DOCUMENT REQUEST NO. 21:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the marketing and promotion of any NORTEL product, system, or method that embodies any claim of the PATENTS-IN-SUIT, including surveys, advertising materials, promotional or sales materials, press releases, and analyst reports.

**DOCUMENT REQUEST NO. 22:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING business plans, strategic plans, operating plans, marketing plans, financial plans, production plans, sales plans and capital or investment plans REGARDING any NORTEL product, system, or method that embodies any claim of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 23:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any competitive analysis or market analysis REGARDING any NORTEL product, system, or method that embodies any claim of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 24:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the demand for any feature(s), functionality(ies), and/or attribute(s) embodied in any claim of the PATENTS-IN-SUIT, including consumer surveys, market studies, market performance analyses, competitive analyses and assessments, outside consultant reports, and any research or study REGARDING whether the technology in any of the PATENTS-IN-SUIT drives consumer demand for any NORTEL product, system, or method.

**DOCUMENT REQUEST NO. 25:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the presence or absence of any non-infringing alternatives or substitutes for any claim of the PATENTS-IN-SUIT, including DOCUMENTS concerning any investigation REGARDING the characteristics of any non-infringing alternative, the reasons why the alternative is non-infringing, and the time and cost to develop or implement any non-infringing alternative.

**DOCUMENT REQUEST NO. 26:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING NORTEL's capacity to manufacture, market, and sell any NORTEL product, system, or method that embodies any claim of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 27:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the research, design, development or testing of the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, or the SUBJECT MATTER IN SUIT, including but not limited to all handwritten or typed notes, laboratory notebooks, inventor notebooks, computer programs, SOURCE CODE or data.

**DOCUMENT REQUEST NO. 28:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the alleged conception, any alleged diligence from conception to reduction to practice, and any actual reduction to practice of any claim in the PATENTS-IN-SUIT, including inventor notes and any COMMUNICATIONS with THIRD PARTIES concerning the technology claimed in any of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 29:**

DOCUMENTS sufficient to show the identities of the PERSONS involved in the conception and/or reduction to practice of any claim of the PATENTS-IN-SUIT, and their roles in such conception and/or reduction to practice.

**DOCUMENT REQUEST NO. 30:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the performance, advantages, disadvantages, problems, features, commercial or technical benefits, or improvements of the technology claimed in any of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 31:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any commercial success based on any of the PATENTS-IN-SUIT, any long-felt need satisfied by any of the PATENTS-IN-SUIT, or any praise or acclaim as a result of any of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 32:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the construction of any term in the claims of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 33:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any PRIOR ART, INCLUDING publications or references asserted by THIRD PARTIES to be PRIOR ART, or evaluated by YOU as potential PRIOR ART, and including NORTEL's or ANY ROCKSTAR ENTITY's awareness of PRIOR ART, the date and circumstances pursuant to which NORTEL or ANY ROCKSTAR ENTITY first learned of such PRIOR ART, and any effort by or on behalf of NORTEL or ANY ROCKSTAR ENTITY to locate PRIOR ART.

**DOCUMENT REQUEST NO. 34:**

All DOCUMENTS REGARDING PRIOR ART to the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS submitted to the U.S. Patent & Trademark Office during the prosecution of any of the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 35:**

All DOCUMENTS REGARDING any reference cited during prosecution of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 36:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any product or service offered by Bell Communications Research, Inc. ("Bellcore"), including any version of Adapt/X Advertiser.

**DOCUMENT REQUEST NO. 37:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the filing and prosecution of the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS, including but not limited to all draft and final versions of such applications, office actions, draft

and final versions of responses to office actions, and all COMMUNICATIONS REGARDING the filing and prosecution of such patent applications.

**DOCUMENT REQUEST NO. 38:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the allegations set forth in paragraphs 45-231 of GOOGLE's Answer to PLAINTIFFS' Complaint for Patent Infringement (Exhibit 2).

**DOCUMENT REQUEST NO. 39:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any affirmative steps taken by the APPLICANTS to meet their duty of candor and good faith to the United States Patent and Trademark Office REGARDING the allegations set forth in paragraphs 45-231 of Exhibit 2.

**DOCUMENT REQUEST NO. 40:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, kept by any prosecuting attorneys REGARDING the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 41:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any errors or potential errors in any of the PATENTS-IN-SUIT, including DOCUMENTS REGARDING any awareness of such errors or potential errors prior to the issuance of each of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 42:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any NORTEL practice or policy in connection with the preparation and filing of patent applications,

including any policies or procedures REGARDING invention disclosures, when to file patent applications, patent prosecution, and the citation of PRIOR ART.

**DOCUMENT REQUEST NO. 43:**

All DOCUMENTS published or submitted for publication REGARDING the subject matter disclosed in any of the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, or the SUBJECT MATTER IN SUIT, including papers, speeches, abstracts, publications or drafts of such DOCUMENTS.

**DOCUMENT REQUEST NO. 44:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING patents, publications, abstracts, papers, articles, presentations, or speeches invented, authored or given, in whole or in part, by the NAMED INVENTORS that relate to the SUBJECT MATTER IN SUIT.

**DOCUMENT REQUEST NO. 45:**

DOCUMENTS sufficient to identify every attempt by NORTEL to enforce any of the PATENTS-IN-SUIT, either in the United States or abroad.

**DOCUMENT REQUEST NO. 46:**

DOCUMENTS sufficient to identify every attempt by any party acting on NORTEL's behalf to enforce any of the PATENTS-IN-SUIT, either in the United States or abroad.

**DOCUMENT REQUEST NO. 47:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any damage or harm NORTEL or ANY ROCKSTAR ENTITY allegedly suffered as a result of the sale, offer for sale, or use of any GOOGLE product or service.

**DOCUMENT REQUEST NO. 48:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING licensing any of the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, or any patent related to the SUBJECT MATTER IN SUIT, including, but not limited to, all license agreements, cross licenses, covenants not to sue, or non-assertion agreements that cover any of the PATENTS-IN-SUIT, all offers to license any of the PATENTS-IN-SUIT to ANY ROCKSTAR ENTITY or any THIRD PARTY, all draft agreements, and all DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the negotiation of any agreement or royalties paid.

**DOCUMENT REQUEST NO. 49:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING licenses for comparable patents or technology that would assist in determining a reasonable royalty for the PATENTS-IN-SUIT, including license agreements that pertain to the SUBJECT MATTER IN SUIT, search services, search, ads, internet, and electronic commerce.

**DOCUMENT REQUEST NO. 50:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, sufficient to show NORTEL's or ANY ROCKSTAR ENTITY's first awareness of GOOGLE's activities that form the basis of any allegation that GOOGLE infringes any of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 51:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the timing or delay of potential legal claims based on any of the PATENTS-IN-SUIT, including the circumstances REGARDING that timing or delay, and any actual or potential prejudice REGARDING that timing or delay.

**DOCUMENT REQUEST NO. 52:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING

NORTEL's formal or informal policies, procedures, practices, or guidelines for licensing,

sublicensing or assigning rights to patents, including the PATENTS-IN-SUIT, RELATED

PATENTS/APPLICATIONS, or any patent related to the SUBJECT MATTER IN SUIT.

**DOCUMENT REQUEST NO. 53:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any

settlement, whether executed or considered, relating to any adversarial proceeding in the United

States or abroad involving the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, or

any patent related to the SUBJECT MATTER IN SUIT.

**DOCUMENT REQUEST NO. 54:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any

accusation of INFRINGEMENT of any of the claims of any of the PATENTS-IN-SUIT by any

PERSON.

**DOCUMENT REQUEST NO. 55:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any

claim by YOU that GOOGLE INFRINGES or has INFRINGED the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 56:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any

GOOGLE product or service that relates to search or search-based advertising technology,

including any investigations conducted by YOU or on YOUR behalf of any GOOGLE product or

service, and the results thereof.

**DOCUMENT REQUEST NO. 57:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any inspection, testing, evaluation, or analysis of any product or service of GOOGLE for any purpose by or on behalf of ANY ROCKSTAR ENTITY or NORTEL, INCLUDING but not limited to all DOCUMENTS showing how any product or service of GOOGLE compares to one or more claims of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 58:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any claim by YOU that GOOGLE copied the technology claimed in any of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 59:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the commercialization of any of the PATENTS-IN-SUIT, including marketing plans, analyses of market demand or market share (either projected or actual), or other market studies, reports, memoranda, or opinions.

**DOCUMENT REQUEST NO. 60:**

A copy of any SOURCE CODE or software that embodies or reflects any of the systems or methods claimed in the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 61:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the following United States Patents:

- U.S. Patent No. 5,727,129 to Barrett et al.

- U.S. Patent No. 5,901,287 to Bull et al.

- U.S. Patent No. 6,119,101 to Peckover et al.

- U.S. Patent No. 7,136,853 to Kohda et al.

**DOCUMENT REQUEST NO. 62:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the article by Youji Kohda and Sesumu Endo entitled "Ubiquitous Advertising on the WWW: Merging Advertisements on the Browser," published in the *Computer Networks and ISDN Systems* journal (Vol. 28, issues 7-11, pp. 1493-1499), attached as Exhibit 3.

**DOCUMENT REQUEST NO. 63:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the article entitled "Make Sure Search Engines Find Your Site; options include buying words, advertising, and careful page design," published by PR News, attached as Exhibit 4.

**DOCUMENT REQUEST NO. 64:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the search engines of any of the following entities:  Open Text, InfoSeek, Digital Equipment Corporation (AltaVista), Yahoo!, HealthGate, Lycos, Excite, DoubleClick, Inktomi (HotBot), Bellcore, Snag-It, or WebCrawler, dated on or before July 8, 1999.

**DOCUMENT REQUEST NO. 65:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING search engine advertising involving any of the following entities:  Open Text, InfoSeek, Digital Equipment Corporation (AltaVista), Yahoo!, NetGravity, FireFly Network,  DoubleClick, Bellcore, Snag-It, Aptex, Inktomi (HotBot), HealthGate, Lycos, Excite, or WebCrawler, dated on or before July 8, 1999.

**DOCUMENT REQUEST NO. 66:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any and all versions of Adapt/X, AltaVista Search Engine, Aptex, DoubleClick, Excite Search Engine, Firefly Source Code, Healthgate Website, Hotbot Search Engine, InfoSeek Search Engine, Inktomi Search Engine, Lycos Search Engine, Magellan Search Engine, Netgravity, Open Text Search Engine, Submit-It Website, Webcrawler Search Engine, or Yahoo Search Engine, dated on or before July 8, 1999.

**REQUEST FOR PRODUCTION NO. 67:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of software or services known or marketed as Adapt/X Advertiser or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING Adapt/X Advertiser, as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 68:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of software or services offered by AdForce, or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING AdForce, as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 69:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of the Alta Vista search engine or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING the Alta Vista search engine, as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 70:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of advertising software or services offered by Aptex or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING advertising software or services offered by Aptex, as they existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 71:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of software or services offered by DoubleClick Inc., otherwise known as the Internet Advertising Federation or Internet Advertising Network, or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING DoubleClick Inc., as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 72:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of the Excite! search engine or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING the Excite! search engine, as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 73:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of advertising software or services offered by Firefly Network, Inc., or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING advertising software or services offered by Firefly Network, Inc., as they existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 74:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of advertising software or services offered by FocaLink Media Services, Inc., or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING advertising software or services offered by FocaLink Media Services, Inc., as they existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 75:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of software or services known or marketed as Healthgate, or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING Healthgate, as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 76:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of the Hotbot search engine or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING the Hotbot search engine, as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 77:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of software or services offered by Inktomi, or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING software or services offered by Inktomi, as they existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 78:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of the Infoseek search engine or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING the Infoseek search engine, as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 79:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of the Lycos search engine or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING the Lycos search engine, as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 80:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of the Magellan search engine or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING the Magellan search engine, as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 81:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of NETGRAVITY or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING NETGRAVITY, as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 82:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of the Open Text search engine or any

DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING the Open Text search engine, as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 83:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of the System for the Mechanical Analysis and Retrieval of Text ("SMART") or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING the System for the Mechanical Analysis and Retrieval of Text ("SMART"), as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 84:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of the Submit-It search engine or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING the Submit-It search engine, as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 85:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of the WebCrawler search engine or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE related to the WebCrawler search engine, as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 86:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of the Yahoo! search engine or any DOCUMENTS, SOURCE CODE, or EXECUTABLE SOFTWARE REGARDING the Yahoo! search engine, as it existed prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 87:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR business relationship with Netgravity, Inc. or Netvertiser, Inc., including but not limited to DOCUMENTS, COMMUNICATIONS, or THINGS relating to any customer relationship between YOU and Netgravity Inc. as described, by way of example only, at http://www.nasdaq.com/markets/ipos/filing.ashx?filingid=654438 and http://www.sec.gov/Archives/edgar/data/1036419/0001047469-98-023984.txt.

**REQUEST FOR PRODUCTION NO. 88:**

All DOCUMENTS, THINGS, SOURCE CODE, or EXECUTABLE SOFTWARE, including presentations, instructions, technical plans, diagrams, workbooks, manuals, published articles, publications, and user guides, REGARDING any and all versions of NETGRAVITY licensed, purchased, or used by YOU prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 89:**

DOCUMENTS sufficient to identify any persons knowledgeable about YOUR licensing, purchase, or use of NETGRAVITY prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 90:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR efforts to market any software of service related to NETGRAVITY prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 91:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING YOUR awareness, knowledge, or analysis of any software or service that displayed or incorporated advertisements on a website prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 92:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING

YOUR awareness, knowledge, or analysis of any software or service that returned search results

or advertisements based, in part, upon information about the user requesting the search results,

prior to July 8, 1999.

**REQUEST FOR PRODUCTION NO. 93:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING

YOUR awareness, knowledge, or analysis of any software or service that tracked the

performance of advertisements displayed or incorporated on a website, including determining

whether the advertisement was clicked by a visitor to the website and tracking the amount of

advertising fees generated by the advertisement, prior to July 8, 1999.

**DOCUMENT REQUEST NO. 94:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the

marking under 35 U.S.C. § 287 of any products, services, systems, or methods with any of the

PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 95:**

DOCUMENTS REGARDING YOUR document retention policies and practices,

including all DOCUMENTS REGARDING any destruction of any DOCUMENTS otherwise

responsive to these document requests.

**DOCUMENT REQUEST NO. 96:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING

YOUR efforts to preserve, retain or destroy DOCUMENTS, including practices or policies

REGARDING schematic diagrams, technical specifications, source code, invention disclosures,

DOCUMENTS REGARDING inventions, patents and patent applications, and electronic mail.

**DOCUMENT REQUEST NO. 97:**

All DOCUMENTS REGARDING any COMMUNICATIONS between ANY

ROCKSTAR ENTITY and any other THIRD PARTY, PERSON, or entity.

**DOCUMENT REQUEST NO. 98:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING

APPLE's decision to join ANY ROCKSTAR ENTITY during the July 2011 auction for YOUR

intellectual property assets.

**DOCUMENT REQUEST NO. 99:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any

decision, by NORTEL or ANY ROCKSTAR ENTITY, to file or decline to file any potential or

actual litigation or other claim REGARDING any of the PATENTS-IN-SUIT or RELATED

PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 100:**

All DOCUMENTS REGARDING any COMMUNICATIONS between ANY

ROCKSTAR ENTITY and any THIRD PARTY or ANY ROCKSTAR ENTITY REGARDING

the PATENTS-IN-SUIT, the RELATED PATENTS/APPLICATIONS, the SUBJECT MATTER

IN SUIT, or any potential or actual litigation including THIS LITIGATION.

**DOCUMENT REQUEST NO. 101:**

All DOCUMENTS REGARDING any COMMUNICATIONS between YOU and any

NORTEL ADVISOR REGARDING the PATENTS-IN-SUIT, the RELATED

PATENTS/APPLICATIONS, the SUBJECT MATTER IN SUIT, or any potential or actual

litigation involving NORTEL or ANY ROCKSTAR ENTITY including THIS LITIGATION.

34

**DOCUMENT REQUEST NO. 102:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any proposed, considered or actual transaction REGARDING any of the NORTEL intellectual property assets auctioned in 2011, the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, or the SUBJECT MATTER IN SUIT, including any COMMUNICATIONS, presentations, mailings, meeting minutes, license negotiations, sales negotiations, claim charts, infringement analyses, validity analyses, notice letters, cease and desist letters, draft license agreements, and term sheets.

**DOCUMENT REQUEST NO. 103:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any revenue, income, costs or expenses, whether actual or projected, from any of the NORTEL intellectual property assets auctioned in 2011, the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, or the SUBJECT MATTER IN SUIT.

**DOCUMENT REQUEST NO. 104:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any agreements between YOU and ANY ROCKSTAR ENTITY.

**DOCUMENT REQUEST NO. 105:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the formation of ANY ROCKSTAR ENTITY, including all DOCUMENTS REGARDING any purpose, reason or motivation REGARDING such formation.

**DOCUMENT REQUEST NO. 106:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING ANY ROCKSTAR ENTITY's structure, including organizational charts REGARDING ANY ROCKSTAR ENTITY.

**DOCUMENT REQUEST NO. 107:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the ownership or control of ANY ROCKSTAR ENTITY, including all DOCUMENTS REGARDING current or former agreements REGARDING the ownership or control of ANY ROCKSTAR ENTITY, all DOCUMENTS REGARDING any changes in the ownership or control of ANY ROCKSTAR ENTITY, all DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the identity of any PERSON or entity with a financial interest in ANY ROCKSTAR ENTITY, and all DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the size of such interests.

**DOCUMENT REQUEST NO. 108:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the governance or operation of ANY ROCKSTAR ENTITY, including but not limited to all DOCUMENTS REGARDING current or former shareholders, other equity owners, officers, directors, members, partners, or board members, all DOCUMENTS REGARDING current or former agreements REGARDING the governance of ANY ROCKSTAR ENTITY, all DOCUMENTS REGARDING any changes in the governance of ANY ROCKSTAR ENTITY, all DOCUMENTS REGARDING minutes from meetings of the board, and all DOCUMENTS REGARDING who or what entities or PERSONS control day-to-day operations and are responsible for business decisions.

**DOCUMENT REQUEST NO. 109:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any capital, monetary or non-monetary contribution to ANY ROCKSTAR ENTITY from any owner, officer, director, or partner, whether a limited or general partner, of ANY ROCKSTAR ENTITY.

**DOCUMENT REQUEST NO. 110:**

All transcripts of and exhibits to any deposition or hearing in any bankruptcy action REGARDING NORTEL, including *In re Nortel Networks Inc., et al.*, No. 09-10138-KG (Bankr. D. Del.).

**DOCUMENT REQUEST NO. 111:**

All DOCUMENTS, including unredacted DOCUMENTS, subject to sealing or redaction in any NORTEL bankruptcy action, including the DOCUMENTS in Schedule A1 (Dkt. No. 13554-1) and Schedule B (Dkt. No. 13554-2) to the Order Providing Directions and Establishing Procedures for Sealing Trial Exhibits, Redacting Pretrial Submissions, and Protecting Confidential Information from Public Disclosure During Trial (Dkt. Nos. 13554) and Schedule A (Dkt. No. 13729-1), Schedule A1 (Dkt. No. 13729-2), Schedule A2 (Dkt. No. 13729-3), and Schedule A4 (Dkt. No. 13729-4) to the Supplementary Order Providing Directions and Establishing Procedures for Sealing Trial Exhibits, Redacting Pretrial Submissions, and Protecting Confidential Information from Public Disclosure During Trial (Dkt. No. 13729) in *In re Nortel Networks Inc., et al.*, No. 09-10138-KG (Bankr. D. Del.).

**DOCUMENT REQUEST NO. 112**:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any analysis, report, spreadsheet, study or work product prepared by ANY NORTEL ADVISOR for YOU.

**DOCUMENT REQUEST NO. 113:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the licensing model described in the expert report of James E. Malackowski (Dkt. No. 13655 at 25-26) in *In re Nortel Networks Inc., et al.*, No. 09-10138-KG (Bankr. D. Del.), including the DOCUMENT produced in that action at GIP_Nortel_00227898.

**DOCUMENT REQUEST NO. 114:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the study referenced in the expert report of James E. Malackowski (Dkt. No. 13655 at 33-34) in *In re Nortel Networks Inc., et al.*, No. 09-10138-KG (Bankr. D. Del.).

**DOCUMENT REQUEST NO. 115:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING Project Copperhead.

**DOCUMENT REQUEST NO. 116:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING NNI_ICEBERG_00000057, produced in *In re Nortel Networks Inc., et al.*, No. 09-10138-KG (Bankr. D. Del.).

**DOCUMENT REQUEST NO. 117:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any government inquiry or investigation REGARDING ANY ROCKSTAR ENTITY or the NORTEL intellectual property assets auctioned in 2011.