# EXHIBIT 19

**quinn emanuel** trial lawyers | new york

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL: (415) 875-6600 FAX: (415) 875-6700

WRITER'S DIRECT DIAL NO.
**(415) 875-6387**

WRITER'S INTERNET ADDRESS
**samstake@quinnemanuel.com**

September 19, 2014

<u>**VIA E-MAIL AND U.S. MAIL**</u>

Mark M. Supko
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
202.624.2500 (phone)
202.628.5116 (fax)
msupko@crowell.com

Re:   Subpoena to Nortel Networks Inc. in *Rockstar Consortium US LP and NetStar Technologies LLC v. Google Inc.*

Dear Mr. Supko:

I write in response to Nortel Network Inc.'s ("NNI") August 25, 2014 objections and responses to Google's July 18, 2014 subpoena served in connection with the *Rockstar Consortium US LP and NetStar Technologies LLC v. Google Inc.* litigation, as well as to NNI's productions of August 25 and September 2, 2014.

<u>**NNI's General Objections**</u>

General Objection No. 1 objects to the subpoena "in view of the pending bankruptcy proceedings involving NNI," but NNI fails to articulate any basis for its objection. To the extent NNI's position is that participation in an ongoing bankruptcy proceeding alone shields it from discovery obligations in this case, it is mistaken. *In re Miller*, 262 B.R. 499, 503-05 (B.A.P. 9th Cir. 2001); *see also In re Alem*, No. 13-00119, 2013 WL 4840486, at *2 (Bankr. D.D.C. Sept. 10, 2013). NNI further notes in General Objection No. 1 that "NNI will seek to have any motion concerning the Subpoena heard in the Bankruptcy Court," but under Fed. R. Civ. P. 45, the United States District Court for the District of Delaware and/or the Eastern District of Texas would have jurisdiction over Google's motion to compel, should the parties reach an impasse regarding an amicable solution.

General Objection No. 2 objects to "the Subpoena because Google has failed to seek relief from any automatic stay applicable to the Subpoena under Section 362 of the Bankruptcy Code, 11 U.S.C. § 362." Section 362, however, does not provide for an automatic stay of either Google's subpoena to NNI or over a potential motion to compel. NNI fails to cite legal authority to the contrary.

General Objection No. 3 objects to "the Subpoena because it interferes with and unduly burdens NNI's ability to conduct the ongoing Bankruptcy Proceedings." But NNI does not attempt to explain why that would be so. Google's subpoena is narrowly tailored to documents relevant to the parties' claims and defenses in this litigation. Moreover, NNI's reliance on undue burden to argue that it should be shielded from discovery in this case is unfounded. Far from being an unrelated third party, NNI is one of the Nortel entities that previously held an ownership interest in the asserted patents in this case and conducted an auction of Nortel's patent portfolio, including the patents-in-suit, in July 2011 – a transaction that enabled Rockstar to bring this litigation against Google. NNI stands to profit from the sale of Nortel's patent portfolio. Indeed, one of the principal outstanding issues in connection with the Bankruptcy Proceedings is the allocation of the proceeds from the July 2011 auction among various Nortel entities, including NNI.

General Objection No. 4 objects to "the Subpoena to the extent it purports to impose obligations on NNI contrary to or inconsistent with NNI's obligations in connection with the Bankruptcy Proceedings," but NNI fails to identify any obligations imposed on NNI by the Subpoena that would be inconsistent in any respect with NNI's obligations in the Bankruptcy Proceedings.

General Objection No. 5 objects to the production of confidential or privileged information contrary to non-disclosure obligations to Rockstar, particularly in view of threats by Rockstar if NNI discloses Rockstar's confidential or privileged information without authorization. The Court has entered a Protective Order in this case which was enclosed as Exhibit 1 to the Subpoena. The Protective Order expressly provides a mechanism by which NNI can designate the confidentiality of its information to be protected under the terms of the Order. *See* Protective Order, ¶ 23 ("To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL," "RESTRICTED - ATTORNEYS' EYES ONLY – PROSECUTION BAR," or "RESTRICTED -- ATTORNEYS' EYES ONLY" any documents, information or other material, in whole or in part, produced or give by such Third Parties.) The Protective Order and subpoena instructions further provide a procedure for the protection of privileged documents otherwise responsive to the document requests. *See*, *e.g.*, Subpoena Instruction No. 6. Thus, it is improper for NNI to withhold responsive documents on the basis of confidentiality. Further, to the extent that NNI needs to obtain consent from third parties before producing responsive information, it should do so.

General Objection No. 6 further objects to the production of NNI's privileged information. Again, the Protective Order and subpoena instructions provide a procedure for the protection of privileged documents responsive to the document requests. Further, for those documents NNI maintains are privileged, Google expects that NNI will provide a privilege log that "describe[s] the nature of the documents, communications, or tangible things not produced

2

or disclosed—and do[es] so in a manner that, without revealing information itself privileged or protected, will enable [Google] to assess the claim." Fed. R. Civ. P. 26(b)(5).

General Objection Nos. 7 and 23 object to the Subpoena to the extent that the Subpoena seeks information that is attainable from the parties to the present action, or that is publicly available or not otherwise in the "exclusive control" of NNI. Google does not expect NNI to produce information not within its possession, custody, or control. However, to the extent NNI has in its possession, custody, or control information responsive to Google's subpoena, NNI should produce that information. NNI's objections on this basis are particularly unfounded in light of its motion for a protective order, filed in this case on September 12, 2014, to block the production of documents that NNI contends are now in the possession of Rockstar.

Further, even if some responsive documents or things may be publicly available or obtained from parties to this action, it does not necessarily follow that Google will be able to obtain all such documents through other means, nor does it exonerate NNI from searching for documents responsive to the requests. Indeed, Google has sought the production of documents from the Plaintiffs in this litigation, including Rockstar Consortium US LP. However, Plaintiffs have only recently produced documents responsive to Google's requests, despite Google's repeated efforts over the last several weeks to follow up with Plaintiffs concerning their incomplete production. Moreover, NNI has objected to the production of various categories of responsive documents in its motion for a protective order, which has further compounded the delay. Given the compressed schedule, Google cannot wait until the Plaintiffs complete their production before seeking discovery from third parties. Moreover, Plaintiffs have represented that neither Rockstar Consortium US LP nor Netstar Technologies LLC participated in the 2011 auction for Nortel's intellectual property assets, and thus, do not possess information sought by many of the subpoena requests to NNI. Accordingly, Google seeks information that is uniquely within NNI's possession, custody, and control, and cannot otherwise be obtained from third parties, including the parties to this litigation.

General Objection No. 9 objects to the Subpoena because it "fails to allow a reasonable time for NNI to comply given the exceptionally large number of document requests and their extraordinary breadth." However, upon NNI's request, Google agreed to a three-week extension for NNI's written responses to the Subpoena. Likewise, Google is willing to work with NNI to arrange a reasonable schedule for its production of documents.

General Objection No. 15 objects to the production of the confidential information of NNI, its former customers or asset purchasers, its current or former employees, or third parties. Again, the Court has entered a Protective Order that provides a mechanism for protection of information designated confidential by NNI or any other producing party. *See* Protective Order, ¶ 23. Thus, it is improper for NNI to withhold responsive documents on the basis of confidentiality.

General Objection No. 16 objects to "searching for or producing email in response to any of the requests in the subpoena absent a specific request for email production, consistent with the parties' own obligations in the Litigation as reflected in the Joint Stipulation and Order Regarding Discovery of Electronically Stored Information" But the Order Regarding E-Discovery is a stipulation between Plaintiffs and Google as to production of ESI to each other.

3

The Order does not apply to subpoenas issued by the Court to third parties. Pursuant to Rules 34(c) and 45, NNI is required to conduct a reasonable investigation for documents responsive to the Subpoena, including emails responsive to Google's requests. Nevertheless, Google is willing to confer with NNI on the production of emails.

General Objection No. 20 objects that the Subpoena imposes under burden and expense on NNI because "persons with knowledge of the subjects addressed in the Subpoena are no longer employed by NNI," but NNI's belief that any knowledgeable persons have left NNI, even if true, does not excuse NNI from conducting a reasonable investigation into responsive documents. Google is willing to confer with NNI on an acceptable scope for this investigation.

General Objection No. 21 objects to "Google's phrasing, definitions and instructions" as "unclear, vague, overly broad, or unduly burdensome," without identifying any specific definitions or instructions that it contends are the subject of this objection. The definitions and requests in the Subpoena are narrowly tailored with sufficient specificity to identify the information sought within NNI's possession, custody, and control. To the extent NNI has specific questions regarding the definitions and instructions, Google is willing to address them during a meet and confer.

General Objection No. 25 objects "because Google has not offered or agreed to compensate NNI" for its time in responding to the subpoena. Reimbursement is not appropriate here, where NNI has been served with a subpoena directed to specifically tailored requests for information. Moreover, NNI's reliance on Rule 45 to argue that it should be reimbursed as a third party in this case is unfounded. Far from being an unrelated third party, NNI stands to profit from the auction of Nortel's patent portfolio, including the patents-in-suit, in July 2011 – a transaction that resulted directly in the filing of this litigation.

### **NNI's Specific Objections**

As the majority of NNI's specific objections overlap for various requests, Google incorporates its responses to NNI's general and specific objections by reference to each request as if fully set forth herein. However, the omission of any express response to any objection (general or specific) made by NNI is not intended to be and should not be construed as an admission with respect to the validity of the objection. While Google aims to address all of NNI's objections, Google believes that a discussion between the parties with respect to the subpoena requests and NNI's responses would be the most productive approach.

As an initial matter, NNI fails to explain the basis for its objections, contrary to Fed. R. Civ. P. 34(c) and 45. For example, NNI has objected to numerous document requests as "overly broad and unduly burdensome, encompassing documents that are neither relevant to the claims or defenses in the Litigation nor reasonably calculated to lead to the discovery of admissible evidence." Yet, NNI fails to explain exactly why these requests suffer any of these alleged deficiencies. As a result, Google cannot ascertain the merits of these objections. Nonetheless, there is no basis for these objections in that the requests as propounded are narrowly tailored with appropriate specificity.

4

NNI objects to numerous requests as seeking privileged information, yet Google's requests do not seek production of privileged documents. Further, NNI's concern does not justify refusing to search for responsive documents. It is highly likely that responsive, non-privileged documents also exist. Moreover, even if responsive documents are privileged, they should be included on a privilege log.

NNI objects to numerous requests as seeking "documents subject to nondisclosure agreements between NNI and one or more other parties," but the Court has entered a Protective Order in this case which protects the confidentiality of any information designated as confidential by NNI. *See* Protective Order, ¶ 23. Thus, it is improper for NNI to withhold responsive documents on the basis of confidentiality. Further, to the extent that NNI needs to obtain consent from third parties before producing responsive information, it should do so.

NNI objects to numerous requests "as imposing undue burden and expense on NNI because, on information and belief, the requested documents, to the extent they were previously in NNI's possession, custody or control, were transferred to Rockstar pursuant to the Asset Sale Agreement dated June 30, 2011." Again, NNI's refusal to conduct a diligent investigation for responsive documents to these requests is unreasonable, particularly in light of its attempt to block production of certain documents now in the possession of Rockstar with its recently-filed motion for protective order. Google expects NNI to search for and produce all responsive information in its possession, custody, or control.

NNI objects to several requests to "producing any documents created after July 18, 2014, the date the Subpoena was served on NNI," but NNI is incorrect that documents responsive to these requests created after July 18, 2014 are exempt from NNI's discovery obligations under FRCP 34 and 45. The service date of Google's subpoena is an arbitrary and unacceptable cutoff, especially here where Google believes there to be responsive documents created after that date in light of NNI's recent motion for a protective order.

NNI objects to several requests as "imposing undue burden and expense on NNI because the requested documents should be in Rockstar's possession, custody or control" or as "unduly burdensome to the extent it seeks documents and information generated by any Rockstar-related entity or any third-party, as such documents can more readily be obtained from such other parties." Again, even if some responsive documents may be available from Rockstar or a third party, it does not necessarily follow that Google will be able to obtain all such documents, nor does it exonerate NNI from searching for documents responsive to the requests. Indeed, Global IP Law Group has represented that it provided responsive information to NNI and that it was authorized by NNI to direct Google to NNI for this information. *See* Ex. A at 3, Global IP Law Group's September 3, 2014 Response to Google's Subpoena ("Global IP produced to the Nortel entities essentially all documents (including electronic documents and emails) in Global IP's possession, custody, or control that related to its representation of Nortel. . . . Our former clients have authorized us to inform you of this production and to direct you to them (instead of Global IP) for the clients' response to Google's subpoenas."). Similarly, Lazard Freres & Co. LLC has also indicated that it provided responsive information to NNI that Google should obtain from NNI. *See* Ex. B at 2-3, Lazard Freres & Co. LLC's September 16, 2014 Response to Google's Subpoena (providing that "its former clients, the Nortel-related entities, possess the majority of

5

Lazard's documents related to the Nortel-related entities' patent assets. Indeed, in addition to the other responsive documents in the Nortel-related entities files, in 2013, in response to requests for documents (including those related to the patent assets) from the U.S. Nortel Debtors' counsel, Cleary Gottlieb, and with the consent of the Canadian Debtors and their European Debtor affiliates, Lazard provided the Nortel-related entities with over 40,000 pages of documents (including emails) related to Lazard's" and that these documents "could be obtained from the Nortel-related entities").

Finally, NNI has objected to numerous requests as "overly broad and unduly burdensome, seeking documents that are neither relevant to the claims or defenses in the Litigation nor reasonably calculated to lead to the discovery of admissible evidence." As described below, each request seeks information relevant to the parties' claims and defenses, or reasonably calculated to lead to the discovery of admissible evidence. Specifically, Request No. 1 seeks information regarding the Patents-in-Suit, and therefore seeks documents related to Google's invalidity and non-infringement defenses, Google's inequitable conduct allegations, and the value of the patents-in-suit. Request Nos. 36, 43, 44, 61-93 specifically relate to Google's invalidity defense. Request Nos. 9 and 10 are relevant to Google's affirmative defense that Plaintiffs' claims are barred, in whole or in part, by laches. Request Nos. 7-18, 98, 101-103 seek information regarding the July 2011 auction for Nortel's intellectual property assets and related assets, including due diligence regarding the patentability and value of Nortel's patent assets, including the patents-in-suit. Rockstar itself first put the auction at issue in the Complaint, alleging that "Google placed an initial bid of $900,000,000 for the patents-in-suit and the rest of the Nortel portfolio," and "subsequently increased its bid multiple times, ultimately bidding as high as $4.4 billion." *Rockstar Consortium US LP v. Google Inc.*, Case No. 13-cv-00893, Dkt. No. 1 at ¶ 8 (E.D. Tex.). Rockstar also sought documents from Google regarding the auction. Information regarding the 2011 auction and the valuation of the patents-in-suit may be relevant to the determination of any damages and to rebut Rockstar's allegations on these issues. Request Nos. 110-116 seek information regarding the Nortel bankruptcy action(s), which may be relevant to the value of the patents-in-suit, and thus may also be relevant to the calculation of any damages. Request Nos. 4-5, 13-16, 47, 52, 95-98, 101, 104-109, 115-117 seek information regarding NNI and Rockstar's governance, including litigation and licensing strategy, and the valuation and monetization of the Nortel patents, including the patents-in-suit. These requests are relevant at least to the calculation of any damages, including the *Georgia-Pacific* factors underlying a reasonable royalty analysis. Finally, Request Nos. 19-24 seek information regarding commercialization and marking of the patents-in-suit, which is also relevant to any alleged damages.

### NNI's Responses and Productions

NNI responds to numerous requests in the Subpoena that it will "produce a copy of the designated deposition testimony and trial exhibits from the Bankruptcy Proceedings, redacted for confidentiality purposes in accordance with the Bankruptcy Court's Confidentiality Order." To date, the only documents produced by NNI are redacted transcripts and what appears to be a single exhibit from the bankruptcy proceedings. NNI should produce unredacted transcripts and all responsive exhibits from these proceedings. The withheld information is likely relevant to, among other issues, the ownership, validity, and valuation of the patents-in-suit. Further, the Court in this case has already entered a Protective Order that expressly provides a mechanism

6

fully compliant with the Bankruptcy Court's Confidentiality Order by which NNI can designate as confidential any information to be protected under the terms of the Protective Order. *See* Protective Order, ¶ 23. Please let us know whether NNI agrees to produce unredacted transcripts from the Bankruptcy Proceedings and all responsive exhibits.

NNI responds to numerous requests that, "on information and belief, there is no one remaining at NNI with sufficient knowledge of Nortel's prior business to determine with a reasonable degree of effort whether NNI has any responsive documents in its possession, custody or control." For these requests, Google expects that NNI will conduct a reasonable investigation for responsive documents, and is willing to confer with Nortel on an appropriate scope of this investigation. NNI's belief that employees with pertinent knowledge have left NNI does not excuse it from its obligations to conduct a reasonable investigation. Please let us know whether NNI agrees to conduct a reasonable investigation.

Finally, Google references the telephonic conversations between Ms. Ernst and Mr. Supko on, at least, August 6, 2014, and August 15, 2014 regarding NNI's investigation in connection with Google's Subpoena. It is our understanding that NNI is still investigating whether NNI retained copies of the data rooms that were provided to bidders in connection with the auction of the Nortel patents. *See* August 6, 2014 email from M. Supko to M. Ernst. NNI also advised that Nortel's electronic document repositories were successfully recovered and that NNI's initial searches of these databases produced a manageable number of results potentially responsive to Google's Subpoena. Further, NNI indicated a willingness to run search terms against the online catalog Iron Mountain maintains of the hard copy documents NNI is storing offsite for potentially responsive information. We look forward to discussing the status of these issues and NNI's continued investigation.

We are happy to discuss any questions NNI has regarding the subpoena requests, NNI's responses, or NNI's production, and appreciate NNI's willingness to meet and confer with Google. Please let me know when you are available for this discussion.

Best regards,

Sam Stake

# EXHIBIT A



GLOBAL IP LAW GROUP, LLC
233 S. WACKER DRIVE
92nd FLOOR
CHICAGO, IL 60606

312.241.1500

GIPLG.COM

ekoehn@giplg.com
312.241.1506 (Direct)
312.241.1526 (Fax)

September 3, 2014

VIA: Email & First Class Mail

Mr. Matthew Warren  
Quinn Emanuel Urquhart & Sullivan  
50 California Street  
22nd Floor  
San Francisco, CA 94111

Ms. Michelle Ernst  
Quinn Emanuel Urquhart & Sullivan  
51 Madison Avenue  
22nd Floor  
New York, NY 10010

Re: *Rockstar Consortium US LP et al v. ASUSTeK Computer, Inc. et al* (Case No. 2:13-cv-00894) & *Rockstar Consortium US LP and NetStar Technologies LLC v. Google, Inc.* (Case No. 2:13-cv-00893) (the "Texas Actions"); *Google Inc. v. Rockstar Consortium US LP and MobileStar Technologies, LLC* (Case No. 4:13-cv-5933) (the "California Action") —Subpoenas directed to Global IP Law Group, LLC

Dear Mr. Warren and Ms. Ernst:

On August 6th and 14th, your client, Google, Inc. ("Google") served a total of three subpoenas seeking the production of documents from our law firm, Global IP Law Group, LLC ("Global IP"). By agreement, Google provided Global IP an extension until September 3, 2014 to respond to the subpoenas. The subpoenas each include a total of 80 separate requests for the production of documents and are essentially identical, except that one subpoena was served in each of three pending cases between Google (or companies that make devices running the Android operating system supplied by Google) and Rockstar Consortium US LLP ("Rockstar"). Global IP is not a party to any of the pending actions and is not representing or otherwise advising any of the companies involved in the lawsuits.

In general, the subpoenas seek production of documents stemming from Global IP's representation of certain Nortel-related entities (defined below) during the Nortel companies' bankruptcy proceedings in the United States and foreign jurisdictions. As you know, the bankruptcy proceedings included an auction of patent assets held by Nortel, which culminated in the sale of those assets to an affiliate of Rockstar. Global IP provided legal advice to Nortel regarding the sale of Nortel's patent assets. Through its subpoenas Google is seeking the production of documents from Nortel's attorneys (Global IP) relating to the attorneys' work representing Nortel, a request that is both objectionable on its face and unduly burdensome on Global IP. On behalf of itself and its Nortel-related former clients, Global IP objects to the subpoenas for at least the reasons set forth below. In the event the subpoenas are not withdrawn, Global IP reserves the right to move the quash them. Global IP further reserves all rights to object to the subpoenas in the event Google brings a motion to enforce them or otherwise compel production of documents from Global IP. As also explained below, however, we believe that Google can obtain non-privileged documents responsive to the subpoena directly from Nortel

and/or Rockstar entities as they (1) possess the documents; and (2) are in a superior position to assert or waive any privilege from production. We further note that many of the requested documents are subject to non-disclosure obligations to at least the Nortel entities, but likely also various purchasers of Nortel's business assets, including Rockstar. Again, the Nortel entities and Rockstar are in a superior position to identify and address such confidentiality issues.

**Nortel's Bankruptcy Proceedings and Retention of Global IP**

Nortel's bankruptcy proceeding has not concluded and is one of the longest and most complex such proceedings in history. It involves many jurisdictions and multiple estates. While the estates cooperated during early phases of the proceedings, they are now involved in cross-border disputes about how proceeds obtained in liquidation should be divided among the estates. The complexity is important because it underscores the challenges Global IP faces responding to Google's subpoenas.

On January 14, 2009, Nortel Networks, Inc. ("NNI") and certain of its U.S. affiliates (the "Nortel US Debtors") filed voluntary petitions for relief under chapter 11 of the U.S. Bankruptcy Code.[1] On the same date, NNI's corporate parents Nortel Networks Limited ("NNL") and Nortel Networks Corporation ("NNC"), together with certain of their Canadian affiliates (the "Nortel Canadian Debtors"), filed an application pursuant to the Companies' Creditors Arrangement Act (Canada) in the Ontario Superior Court of Justice.[2] Also on January 14, 2009, the High Court of England placed Nortel and its European affiliates, including Nortel Networks UK Limited ("NNUK") and Nortel Networks Ireland ("NN Ireland") (the "Nortel EMEA Debtors") under joint administration and control of the court-appointed monitor for the Nortel Canadian Debtors. The collective Nortel entities seeking bankruptcy protection under their respective jurisdictions constitute the Nortel Debtors.[3]

In connection with the bankruptcy proceedings, certain of Nortel's affiliates, including NNL, NNI, NNUK, and NN Ireland retained Global IP to advise the Nortel entities regarding the marketability of Nortel's patents and the best manner in which to maximize their value. The selection of Global IP, background about our firm and related matters, are set forth in the Application for an Order Authorizing Employment and Retention of Global IP Law Group, LLC *nunc pro tunc* to October 13, 2009 as Intellectual Property Consultant to the Debtors and Debtors in Possession, *In re Nortel Networks, Inc.* (Bankr. D. Del. 2009) (Dkt. 1796). The Bankruptcy Court approved the Application, and Global IP represented the Nortel entities from

---

[1] The Nortel U.S. affiliates include: Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks CableSolutions Inc. and Nortel Networks (CALA) Inc.

[2] The Nortel Canadian affiliates include: Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3] The Nortel EMEA Affiliates include: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks.
B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.


approximately October 13, 2009 until late 2011. Global IP's representation included providing legal advice to the estates on selling the patents, a process that ended when the patents where sold after an auction for $4.5 billion.

After the liquidation of Nortel's assets had been largely completed, the estates were unable to agree on how funds held by the companies should be allocated among the estates. In connection with resolving that dispute, the estates sought documents from Global IP relating to Global IP's representation of the Nortel entities. Once all of Global IP's clients had consented to the production, Global IP produced to the Nortel entities essentially all documents (including electronic documents and emails) in Global IP's possession, custody, or control that related to its representation of Nortel.

### Global IP's Responses and Objections to the Subpoenas

Pursuant to Rule 45(d)(2)(B) of the Federal Rules of Civil Procedure, Global IP submits the following general objections and responses to the subpoenas. Global IP reserves the right to supplement and/or amend these objections.

### Nortel Possesses Documents Related to Global IP's Representation of Nortel & Google Should Look to Nortel, Not Global IP, to Produce Responsive Documents

In many jurisdictions, including Illinois, many of the documents or things attorneys possess relating to their representation of clients are the property of the client, not the law firm. *See, e.g. Currie, McGhee & Hiers v. Henry, 581 S.E.2d 37, 39-40 (Ga. 2003)* ("A majority of courts have ruled that a document created by an attorney belongs to the client who retained him.") In addition, many of the documents created or possessed by attorneys are protected from disclosure under the attorney-client privilege, the attorney work product doctrine, or both. At least with regard to the attorney-client privilege, the client (Nortel in this case) is the holder of the privilege and determines whether and to what extent it might be waived. *See, e.g.*, Cal. Evid. Code §§ 950-962. In short, even where Global IP could be inclined to produce documents responsive to Google's subpoenas, it could not do so without the express approval of the clients who own the documents, the Nortel entities. As explained above, Global IP has already provided copies of documents related to its representation of Nortel to its former clients. Our former clients have authorized us to inform you of this production and to direct you to them (instead of Global IP) for the clients' response to Google's subpoenas.

Seeking non-privileged, responsive documents appears all the more appropriate in this case because we understand that Google has also served substantially similar, if not broader, subpoenas and discovery requests on various Nortel entities seeking the same documents sought from Global IP. It is objectionable and unduly burdensome to force multiple parties to search for, review, and produce the same set of documents.

Global IP further objects to the subpoenas as they seek highly sensitive, confidential, proprietary information of its former clients, the Nortel entities, and information and communications that constitute attorney work-product, mental impressions, conclusions, opinions or legal theories of attorneys, contains privileged attorney-client communications, and/or contains information



protected by the joint-defense privilege or a common interest agreement. As counsel to the Nortel entities, the vast majority of Global IP's work constituted either attorney work product or privileged attorney-client communication. Global IP does not have the right to waive privilege or surrender its duty of confidentiality to its clients without their consent. The Nortel entities, however, are in a position to both assert the privilege to the extent they wish to do so and to produced responsive documents to the extent they are either (1) not privileged; or (2) they wish to waive the privilege.

**Responsive Documents Are Available Through Rockstar**

Global IP objects to the subpoenas as they seek documents that are more readily available through, or are duplicative of document requests that have been served upon Rockstar. A court must limit discovery if what is sought is unreasonably cumulative or duplicative, or can be obtained from another source that is more convenient, less burdensome, or less expensive. Fed.R.Civ.P. 26(b)(2)(C). As a nonparty to the litigations, it would be highly inconvenient, burdensome and expensive for Global IP to respond to requests that could be answered more readily and conveniently by Rockstar.

Without limitation, Global IP has a good faith basis to believe that Rockstar is in possession of documents that would be responsive to Request Nos. 2-6, 12, 13, 39, 41, 42, 43, and 46, for example. As a party to the pending litigation, Rockstar's resources should be fully exhausted before seeking documents from third parties. *See, Chevron Corp. v. Donziger,* No. 13-MC-80038, 2013 WL 1402727, at *6 (N.D. Cal. Apr. 5, 2013) (granting a motion to quash where the subpoenaing party had not shown that the information sought was unavailable from parties to the underlying action or other sources).

**The Requests Are Overly Broad And Unduly Burdensome**

Global IP further objects to the subpoenas as they are overly broad and unduly burdensome. A court must protect a nonparty subject to a subpoena if the subpoena subjects a person to undue burden or expense. Fed.R.Civ.P. 45(d)(1). The scope of the subpoenas, containing 80 requests each, seek practically every document and piece of communication that Global IP prepared and/or produced relating to Nortel over a period of several years. The pending litigation relates to a handful of patent assets, while Global IP's representation of Nortel concerned thousands of patent assets and years of preparation, evaluation, and marketing of the patent portfolio, the vast majority of which did not concern the patents at issue in the pending litigation. Moreover, Global IP could not sort through years' worth of documents to find and produce copies of the few materials that are properly requested without incurring significant time and expense.

Especially as a nonparty, Global IP should not be required to pay the costs of searching for and copying documents, and excluding and logging privileged communications and work product, particularly where the production of such documents would be far less burdensome if requested from Rockstar and/or Nortel. Further, in view of the objections set forth herein, Global IP shall not be obligated to produce any documents unless ordered by the Court. *See* Fed.R.Civ.P. 45(d)(2)(B)(ii) ("These acts may be required only as directed in the [Court] order").

For all of the reasons outlined above, Global IP respectfully submits this response and objects to the subpoenas and seeks protection from such subpoenas. Without assuming any obligation to do so, and without waiving the objections asserted herein, Global IP reserves the right to amend and/or supplement these objections. Further, Global IP's objections and responses to these requests do not necessarily reflect the existence of requested documents or things. This letter is written without waiver of any of Global IP's rights, remedies and/or objections to the subpoenas, all of which are expressly reserved.

Please contact me at your earliest convenience to discuss the issues and objections raised so that can work towards resolving the above and Global IP's involvement.

Kind regards,

*Elizabeth Koehn*

Elizabeth Koehn

# EXHIBIT B

**DENTONS**

Arthur H. Ruegger
Partner

arthur.ruegger@dentons.com
D +1 212 768 6881

Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020-1089 USA

T +1 212 768 6700
F +1 212 768 6800

Salans FMC SNR Denton
dentons.com

September 16, 2014

**VIA: Email & First Class Mail**

Michelle Ernst, Esq.
Quinn Emanuel Urquhart & Sullivan
51 Madison Avenue
New York, NY 10010
michelleernst@quinnemanuel.com

Matthew S. Warren, Esq.
Quinn Emanuel Urquhart & Sullivan
50 California Street, 22nd Floor
San Francisco, CA 94111
matthewwarren@quinnemanuel.com

Re:   *Rockstar Consortium US LP, et al. v.
      ASUSTeK Computer, Inc. et al.*
      Case No. 13-cv-00894 (JRG) (E.D. Tex.) (the "ASUSTeK Case")

   *Rockstar Consortium US LP and NetStar Technologies LLC v.
   Google, Inc.*
   Case No. 13-cv-00893 (RG) (E.D. Tex.) (the "NetStar Case")

   *Google Inc. v. Rockstar Consortium US LP
   and MobileStar Technologies, LLC*
   Case No. 13-cv-5933 (CW) (N.D. Cal.) (the "California Case")

   August 6, 2014 Subpoena to Lazard Frères & Co. LLC, in the NetStar Case

   August 7, 2014 Subpoena to Lazard Frères & Co. LLC, in the California Case

   August 14, 2014 Subpoena to Lazard Frères & Co. LLC in the ASUSTeK Case

   August 6, 2014 Subpoena to Colin Keenan in the NetStar Case

   August 6, 2014 Subpoena to David Descoteaux in the NetStar Case

   August 6, 2014 Subpoena to Justin Lux in the NetStar Case

Dear Michelle and Matt:

As you know, this firm represents Lazard Frères & Co. LLC ("Lazard") and three former Lazard employees -- Colin Keenan, David Descoteaux and Justin Lux -- in connection with the listed subpoenas you served in the above cases, on behalf of your client, Google Inc. ("Google"). Those subpoenas, which are essentially identical in substance,

Case 09-10138-MFW    Doc 14615-19    Filed 10/21/14    Page 17 of 19



MICHELLE ERNST, ESQ.
MATTHEW S. WARREN, ESQ.
September 16, 2014
Page 2

Salans FMC SNR Denton
dentons.com

seek 80 separate categories of documents from Lazard and the three individuals and purport to require the production of all documents related to Lazard's work for the Nortel-related entities and their counsel during a period spanning approximately two and a half years. Neither Lazard nor any of the three individuals is a party to any of the pending actions or otherwise engaged in any role in the lawsuits.

As a preliminary matter, the three individuals (Messrs. Keenan, Descoteaux and Lux) each confirmed to us that they do not possess any responsive documents. This is consistent with Lazard's policies prohibiting employees from taking any such materials upon departure from Lazard. We assume this representation is sufficient to resolve the individuals' responses to their respective subpoenas. The individuals hereby reserve all of their rights with respect to the subpoenas.

Pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure, Lazard submits the general objections and responses to the subpoenas discussed below. Lazard reserves the right to supplement and/or amend these objections.

*First*, Lazard objects to the subpoenas because many of the categories of documents sought from Lazard, a non-party, could be obtained from Rockstar, a party to the litigation, and thus could be obtained from a source that is more convenient, and in a manner that is less burdensome and less expensive. Fed. R. Civ. P. 26(b)(2)(C). Lazard has a good faith basis to believe that Rockstar is in possession of copies of documents in Lazard's files that would be responsive to a substantial number of the requests. As a party to the pending litigation, Rockstar's files should be fully exhausted before seeking documents from a third party such as Lazard. *See In re Agent Orange Product Liability Litigation*, 517 F.3d 76, 103 (2d Cir. 2008) (upholding district court ruling limiting document requests on grounds that information was not sought from the "best source"). Indeed, Lazard expects that the requests in the subpoenas are duplicative of document requests that have already been served upon Rockstar and are thus unreasonably cumulative and duplicative. *Id.*

*Second*, Lazard objects to the subpoenas because its former clients, the Nortel-related entities, possess the majority of Lazard's documents related to the Nortel-related entities' patent assets. Indeed, in addition to the other responsive documents in the Nortel-related entities' files, in 2013, in response to requests for documents (including those related to the patent assets) from the U.S. Nortel Debtors' counsel, Cleary Gottlieb, and with the consent of the Canadian Debtors and their European Debtor affiliates, Lazard provided the Nortel-related entities with over 40,000 pages of documents (including emails) related to Lazard's. Lazard understands that Google has



MICHELLE ERNST, ESQ.
MATTHEW S. WARREN, ESQ.
September 16, 2014
Page 3

Salans FMC SNR Denton
dentons.com

served substantially similar, if not broader, subpoenas on those Nortel entities. It would be unduly burdensome, cumulative and duplicative to require Lazard, a non-party, to search for, review, and produce the same set of documents that could be obtained from the Nortel-related entities. This is especially true given that the Nortel-related entities are already involved in litigation involving the production of significant volumes of documents, including documents that would likely be responsive to the categories of documents sought by Google here. Any request for documents from Lazard should follow Nortel's and Rockstar's production of their copies of Lazard records, and should only seek whatever relevant records Lazard possesses beyond those produced by Nortel or Rockstar.

*Third*, Lazard objects to the subpoenas because the vast majority of the documents requested implicate the attorney work-product privilege and/or the attorney-client privilege. Lazard's work related to the auction of the patent assets was performed in close consultation with and with direction from the US Nortel entities' restructuring counsel, Cleary Gottlieb, and their intellectual property counsel, Global IP Law Group. Thus, many of the communications and related documents requested in the subpoenas are subject to the attorney-client privilege and/or the work product doctrine. The privileges and sensitivities associated with the requested documents belong to the Nortel entities and/or Rockstar (as the purchaser of the patent portfolio), and not to Lazard. Lazard does not have the right to waive Nortel's privilege or Rockstar's privilege. This privilege issue further highlights why Google should obtain the same documents from Rockstar and/or Nortel before seeking any documents from Lazard. In any event, given how pervasive the privilege issues will be in the documents in Lazard's possession, any responsive documents gathered by Lazard will need to be reviewed by counsel for Nortel and/or Rockstar before Lazard can produce them to Google.

*Fourth*, Lazard objects to the subpoenas because they are overly broad and unduly burdensome and would subject Lazard, a non-party, to undue expense. Fed. R. Civ. P. 45(d)(l). The pending litigation relates to a handful of patent assets. The subpoenas, on the other hand, contain 80 requests each, seeking virtually every document and communication that Lazard created or received relating to Nortel over the period of more than two years during which Lazard was assisting Nortel and its counsel, even though much of that work was unrelated to the patent assets. As a non-party, Lazard should not be required to pay the costs of searching for and producing documents, and excluding and logging privileged communications and work product, particularly where the search for and production of such documents would be far more efficiently undertaken by Rockstar and/or Nortel, as discussed above.


---



MICHELLE ERNST, ESQ.
MATTHEW S. WARREN, ESQ.
September 16, 2014
Page 4

Salans FMC SNR Denton
dentons.com

Notwithstanding these objections, as noted above, Lazard has already made a substantial production of responsive documents to the Nortel estates in connection with litigation among those estates. While that 2013 production includes documents over which Nortel and/or Rockstar might wish to assert a privilege, subject to that privilege review Lazard would be willing to produce those documents to Google in an effort to be cooperative.

For all of the reasons outlined above, Lazard respectfully submits this response and objects to the subpoenas. Without assuming any obligation to do so, and without waiving the objections asserted herein, Lazard reserves the right to amend and/or supplement these objections. Further, Lazard's objections and responses to these requests do not necessarily reflect the existence of requested documents or things. This letter is written without waiver of any of Lazard's rights, remedies and/or objections to the subpoenas (including the right to move to quash the subpoenas), all of which are expressly reserved.

Please contact me at your earliest convenience to discuss these issues so that we can work toward resolving them.

Sincerely,

Arthur H. Ruegger