# EXHIBIT 20

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7145**

WRITER'S INTERNET ADDRESS
**robertwilson@quinnemanuel.com**

October 9, 2014

<u>VIA ELECTRONIC MAIL</u>

Mark M. Supko
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
msupko@crowell.com

Re:   Subpoena to Nortel Networks Inc. in *Rockstar Consortium US LP and NetStar Technologies LLC v. Google Inc.*, No. 13-893 (E.D. Tex.); *Google Inc. v. Rockstar Consortium US LP, et al.*, Case No. 13-5933 (N.D. Cal.); *Rockstar Consortium US LP v. ASUSTeK*, No. 13-894 (E.D. Tex.), and actions consolidated for pretrial purposes

Dear Mark:

I write to summarize our meet and confer on October 7, 2014 regarding Google's Subpoenas to Nortel Networks Inc. ("NNI") in connection with the above referenced litigations and NNI's Motion for a Protective Order in the Delaware Bankruptcy Court (D.I. 14476) in *In re Nortel Networks Inc., et al.*, Case No. 09-10138 (KG) (Bankr. D. Del.).

**1.   Deposition Designations and Trial Exhibits.**

In NNI's Response to Google's Subpoenas it stated that it is only willing to produce "designated deposition testimony and trial exhibits from the Bankruptcy Proceedings, redacted for confidentiality purposes." To date, NNI has produced eight heavily redacted transcripts and 57 pages of exhibits from the bankruptcy proceeding.

   **A.   <u>Deposition Designations</u>.**

During our discussion, NNI was unable to confirm whether all deposition designations have been produced or whether additional designations are forthcoming. Despite Google's willingness to treat the deposition transcripts under the protections provided in the Bankruptcy Protective Order, NNI reiterated that it will not agree to produce the eight deposition transcripts

**quinn emanuel urquhart & sullivan, llp**

NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG

in un-redacted form, with respect to either the confidentiality redactions or the privilege redactions. You stated that you would follow-up regarding whether NNI has completed its production of deposition designations, or whether more are forthcoming, and if so, on what timeline Google can expect to receive this production. Further, given that the deposition transcripts are responsive to Google's Subpoena, they should be produced in their entirety, and not just the designations identified in connection with the bankruptcy proceeding. We understand, however, that NNI will not agree to produce the entire transcripts, and that we are at an impasse on that issue.

### B. Trial Exhibits.

During our discussion, NNI confirmed that its September 2, 2014 production of 57-pages of what appeared to be loose ESI is in fact a small set of trial exhibits from the bankruptcy proceeding (out of a total of approximately of 2000-3000 exhibits). Again, you stated that NNI is only willing to produce the trial exhibits redacted for both confidentiality and privilege, despite Google's willingness to treat this information under the protections provided in the Bankruptcy Protective Order. In earlier discussions regarding Google's Subpoenas, NNI previously expressed doubts that it would be able to complete production of the redacted trial exhibits before the January 2015 close of fact discovery in these cases. However, during our discussion, you stated that NNI expects to produce approximately 1500-2000 of the trial exhibits (in redacted form) by the end of next week or the beginning of the following week. You were unable to confirm when the remaining trial exhibits would be produced. You were also unable to confirm whether redactions for confidentiality and privilege were being tracked separately in the course of NNI's review process. However, you agreed to follow up regarding this inquiry. We noted that the process of redacting the 2000-3000 exhibits could be avoided under Google's proposal, which would protect the confidentiality and privilege of these documents under the Bankruptcy Orders. You indicated that NNI would not agree to make these documents available for inspection under the terms of the Bankruptcy Protective Order, as Google has proposed.

You stated that it is NNI's position that after Google receives NNI's redacted production, Google must then review the redacted documents to identify which documents it is interested in receiving in un-redacted form. You noted that NNI would consider requests for unredacted copies, but if Google requests too many documents, NNI will object and require Google to move the Bankruptcy Court for this discovery. You did not specify how many documents NNI would consider before requiring Google to seek separate relief from the Court.

We also discussed two other categories of documents produced during the Bankruptcy Proceeding. First, we asked about the non-confidential trial exhibits that still have not been produced by NNI. We pointed out that pursuant to the operative Confidentiality Orders in the Bankruptcy Proceedings (D.I. 13554 and 13729), the trial exhibits excluded from Schedule A are not confidential. Yet, NNI still has not produced these exhibits. You were unable to explain why these exhibits have not been produced, but agreed to investigate this issue further. Second, we asked why the documents the Nortel estates were required to have already redacted pursuant to the Court's Orders had not been produced. *See* D.I. 13554 at Provision 7 (providing that pre-trial briefs should be redacted no later than May 10, 2014; expert reports no later than May 25, 2014; deposition designations and Additional Priority Trial Documents no later than June 27, 2014). You were also uncertain, but agreed to look into this issue as well.

2.     **Bankruptcy Database of 3-Million "Valuation" Documents.**

During our call, we also discussed the database of 3 million "valuation" documents that NNI has identified as containing information responsive to Google's Subpoena ("the bankruptcy database"). You explained that in connection with the allocation proceeding, each Nortel estate was tasked with responding to a subset of document requests that resulted in the search and compilation of this database of 3 million documents. We understand that this database includes documents that the Nortel estates collected from Global IP and Lazard. We also understand that the Nortel estates did not necessarily exclude potentially privileged/work product documents from the database, nor did they withhold documents based on confidentiality. Rather, the estates agreed that confidentiality would be protected and privilege/work product preserved pursuant to the terms of the Protective Order entered by the Bankruptcy Court (D.I. 10805).

You indicated that it is your understanding that the database still exists, is searchable, and contains information concerning nine different Nortel transactions – the sale of eight Nortel business units and the 2011 auction of Nortel's intellectual property portfolio. We asked whether the database was segregated based on transaction, such that documents relating to the 2011 auction could be segregated from other transactions. You agreed to follow up on our inquiry. You also stated that while you were uncertain who had access to this database during the bankruptcy proceedings, you indicated that, at a minimum, outside counsel accessed these documents in connection with identifying approximately 2,000-3,000 trial exhibits, and other documents used during depositions and for expert reports. Finally, we asked whether this database includes the "Allocation Dataroom Documents" identified in Provision 20 of the Protective Order (D.I. 10805). While you were uncertain, you committed to looking into this.

Nortel objects to producing documents from the electronic database on two grounds – confidentiality and privilege/work product (and the alleged burdens associated with that review). In order to address these objections, Google proposed that NNI make the database documents available for inspection under the same confidentiality and privilege/work product protections provided by the Protective Order entered by the Bankruptcy Court. It is our understanding that NNI is unwilling to do so. Alternatively, Google asked whether NNI would be willing to consider running search terms on this database. You indicated that Time Warner Cable had also made a similar proposal. You stated that NNI might be amenable to running proposed search terms. But even if it agreed to do so, NNI objects to reviewing the results without reimbursement.

You stated that Google's proposal would likely be "workable" if the database only included confidential and privileged information of the Nortel estates. But you represented that the database also contains confidential and privileged information of third party purchasers of the various business units. You stated that it would be unduly burdensome for NNI to provide notice to these third parties. Google suggested that NNI could minimize this burden by providing notice regarding the database information as a whole, rather than by on a document-by-document basis. And Google pointed out that for the documents that are responsive to Google's subpoenas, NNI would only be required to provide notice to a limited number of third parties – Rockstar and potentially, some of the Rockstar shareholders. NNI confirmed that it has not attempted to provide notice or obtain consent from any third parties, and has only provided notice of receipt of Google's Subpoenas.

3

Finally, you stated that many of the "valuation" documents are protected by a privilege/work product that was acquired by Rockstar in connection with the patent asset transfer. We disagree with the merits of this privilege/work product claim. But setting that aside, a straightforward solution would be to run search terms on the database documents and review for privilege/work product prior to production, regardless of whether the privilege/work product is allegedly held by Nortel or Rockstar. Presumably, outside counsel for NNI in the bankruptcy proceeding would be able to expedite this review, having been involved in the ongoing confidentiality/privilege review of the bankruptcy deposition transcripts and trial exhibits. This would minimize, if not eliminate, any burden on NNI's remaining in-house employees. Likewise, to the extent NNI believes that cost-sharing is warranted, it should move the Bankruptcy Court for reimbursement from Rockstar – the party that brought these litigations in the first place and who has the principal interest in maintaining the confidential and privileged/work product nature of the information that NNI seeks to protect.

**3.     Documents Purportedly Transferred to Rockstar.**

NNI continues to maintain that all "patent-related" documents were transferred to and can be obtained from Rockstar. You confirmed, however, that NNI has no record of what documents were actually transferred to Rockstar, and therefore, no way of knowing for sure what documents Rockstar has and what documents it does not.

**4.     Outstanding Items.**

During our discussion, you committed to investigating several issues in response to Google's inquiries, which we list separately below for the sake of clarity:

a. Whether NNI has completed its production of deposition designations, or whether more are forthcoming, and if so, on what timeline Google can expect to receive this production;

b. Whether NNI's outside counsel is tracking the confidentiality and privilege redactions separately in connection with its preparation of the redacted trial exhibits for production;

c. When NNI expects to produce the remainder of the trial exhibits after its production of the 1500-2000 exhibits at the end of next week or the beginning of the following week;

d. Whether NNI will agree to produce versions of the deposition designations and bankruptcy trial exhibits with the redactions for confidentiality removed;

e. Why NNI has not yet produced the non-confidential trial exhibits as defined by the operative Court Orders, and when Google can expect this production;

f. Why NNI has not yet produced the bankruptcy documentation that was required to be redacted by May and June 2014 by the Court's Order (D.I. 13554 at Provision 7), and when Google can expect this production;

g. Whether the bankruptcy database contains the "Allocation Dataroom Documents" identified in Provision 20 of the Protective Order (D.I. 10805);

h. Whether the bankruptcy database is segregated by transaction;

i. Who had access to the bankruptcy database during the course of the bankruptcy proceedings; and

4

j. Whether NNI is amenable to running search terms on the bankruptcy database.

**5.    Proposed Search Terms.**

With respect to this last item, Google proposes the following search terms:

1. Rockstar
2. Google
3. Microsoft
4. Apple
5. "IPCo" or "IP Co" or "IP Steering Committee"
6. Veschi
7. Cianciolo
8. "Global IP"
9. Lazard
10. Berten
11. Descoteaux
12. Iceberg or Iceburg
13. auction
14. Skillen
15. 065 or 6098065 or 6,098,065
16. 969 or 7236969 or 7,236,969
17. 245 or 7469245 or 7,469,245
18. 178 or 7895178 or 7,895,178
19. 183 or 7895183 or 7,895,183
20. 883 or 7933883 or 7,933,883
21. 970 or 7672970 or 7,672,970
22. 551 or 5838551 or 5,838,551
23. 973 or 6333973 or 6,333,973
24. 937 or 6037937 or 6,037,937
25. 298 or 6128298 or 6,128,298
26. 131 or 6463131 or 6,463,131
27. 591 or 6765591 or 6,765,591
28. 572 or 6937572 or 6,937,572

As we stated during our call, Google is willing to discuss these search terms with NNI and next steps after NNI has determined the volume of the results.

Very truly yours,

*/s Robert Wilson*

Robert Wilson

5