# EXHIBIT 27

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### Marshall Division

ROCKSTAR CONSORTIUM US LP and
NETSTAR TECHNOLOGIES LLC,

        Plaintiffs,

v.

GOOGLE, INC.,

        Defendant.

Case No.2:13-cv-00893-JRG

## SUPPLEMENTAL BRIEF IN FURTHER SUPPORT
## OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED AND
## NORTEL NETWORKS INC.'S MOTIONS FOR A PROTECTIVE ORDER
## UNDER FEDERAL RULES OF CIVIL PROCEDURE 26(c) AND 45(d)(3)

Non-parties Nortel Networks Corporation ("NNC") and Nortel Networks Limited

("NNL"), by Ernst & Young Inc. as court-appointed Monitor, and Nortel Networks Inc. ("NNI")

(collectively "Nortel") file this Supplemental Brief on the issue of non-waiver of the attorney-

client privilege relating to the "transferred" and "non-transferred" materials on certain computers

in Rockstar's possession, pursuant to this Court's Order of October 15, 2014.[1]

## PRELIMINARY STATEMENT

As the Court is aware, under its definition, the "transferred" materials are those that relate

to the patents and associated assets purchased by Rockstar.  The "non-transferred" materials, by

the Court's definition, are not relevant to those patents, and thus are not relevant to the subject

matter of this lawsuit.

As to the "transferred" materials, Rockstar purchased substantially all of the assets,

including the patents, personnel and materials that related to what is now the Rockstar licensing

business.  Having done so, it is well-settled that Rockstar now owns the attorney-client privilege

---

[1] Nortel joins in Rockstar's Supplemental Brief Regarding Privilege.

that attached to those materials while they were in Nortel's hands.  Rockstar, therefore, is fully

entitled to withhold production of any "transferred" materials on the basis of the attorney-client

privilege as if those materials were in Nortel's hands.

      As to the "non-transferred" items, although Nortel and Rockstar share a common legal

interest in those materials that arose when the transaction took place, under the Court's

definition, those materials are not relevant to this action.  Indeed, the electronic document search

terms, which Nortel understands have been agreed to by Rockstar and Google, seek only

"transferred" materials and not the "non-transferred" materials that are irrelevant to the parties'

dispute.  The issue as to whether any privilege attaches to those "non-transferred" materials is

therefore moot, and the Court need not reach that issue.

## ARGUMENT

### I.    Rockstar Owns The Transferred Materials, And No Privilege Has Been Waived

      Through the Rockstar transaction, Rockstar did not just purchase a solitary asset from

Nortel, but substantially all of the assets related to an entire patent licensing business.  This

included thousands of Nortel's patents, the services of Nortel employees, numerous documents

and records, including market studies, forecasts, and estimates, as well as necessary tangible

assets, including the relevant computers.  *See e.g.,* Transition Services Agreement between

Nortel and Rockstar, Google Inc.'s Opposition To Non-Party Nortel Networks Inc.'s Motion For

A Protective Order Regarding Privileged And Confidential Nortel Documents, Ex. N.  The

practical consequence of the purchase of these materials is the transfer from Nortel to Rockstar

of a patent licensing business.  As a result, the privilege that Nortel had on those materials also

has been transferred to Rockstar.  *See SimpleAir, Inc. v. Microsoft Corp., et al.*, No. 2:11–cv–

416–JRG, 2013 WL 4574594, at *2-3 (E.D. Tex. Aug. 27, 2013) (the practical consequences of

the sale of certain assets is the transfer of control of a business "the authority to assert or waive

the attorney-client privilege will follow as well"). The change in use of the patent portfolio from one for defensive purposes to an offensive, licensing strategy, is of no moment, particularly when that change comes through the purchase of the assets during bankruptcy proceedings. *See id.*

Nortel used its patent portfolio for defensive purposes – to discourage companies from suing it for patent infringement out of concern that they would be sued by Nortel in return – as well as for cross licensing opportunities and revenue generation. Rockstar purchased from Nortel the entire residual patent portfolio, comprising thousands of patents, the services of related employees, documents and materials, and the relevant, physical assets. This was not the purchase of merely some assets or the transfer of a single patent from one corporation to the other. Rather, through its purchase, Rockstar now owns substantially all of the assets related to the patent licensing business and continues to use them for the purpose of generating revenue. Having made that purchase, Rockstar now owns the privilege that attached to those materials while in the hands of Nortel. It, therefore, is fully entitled to assert the privilege as to those materials.

## II. Non-Transferred Materials Are Not Relevant To This Case

The Court has concluded that the "non-transferred" materials, by definition, are not relevant to this case. Indeed, those "non-transferred" materials are not responsive to any document request and are not being sought through the parties' agreed upon electronic word search list. Since none of the "non-transferred" materials are at issue in this case, whether or not there is any privilege that attaches to them is moot for the purposes of this case, and need not be reached by the Court.

Fed. R .Civ. P. 26(b) permits discovery "regarding any matter not privileged, which is relevant to the subject matter in the pending action." Fed. R. Evid. 401 provides that evidence is

relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." As noted by the Fifth Circuit in *Jones v. Metzger Dairies, Inc.*, while "[f]ull and complete discovery should be practiced and allowed, [] its processes must be kept within workable bounds on a proper and logical basis for the determination of the relevancy of that which is sought to be discovered." 334 F.2d 919, 925 (5th Cir. 1964) (cert. denied, 379 U.S. 965, 85 S. Ct. 659, 13 L. Ed. 2d 559 (1965)).

By the Court's definition, the non-transferred items are not relevant in this action. As this is a patent infringement action based on alleged infringement of patents purchased by Rockstar, requests for materials not relating to those patents – the non-transferred materials – do not "make a fact more or less probable" that is "of consequence in determining the action." There is, therefore, no relevance of the non-transferred materials to the case.[2]

The parties' agreed upon list of search terms demonstrates that non-transferred materials are not relevant to this case. A copy of the search terms is attached hereto as Ex. A. Not surprisingly, the search terms proposed by the parties are focused on uncovering transferred materials that are relevant to the issues in this case, and avoid non-transferred materials.

---

[2] Given the various regulatory issues facing the parties at the time as well as potential and threatened litigation, Nortel and Rockstar did (and do) share an identical legal interest with respect to the treatment of the non-transferred materials. To evidence that interest, they entered into a common interest agreement. That common legal interest remains firmly in place. *See DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72, 2007 U.S. Dist. LEXIS 97801, at *11-12 (E.D. Tex. June 26, 2007).

## CONCLUSION

For the foregoing reasons, Nortel respectfully requests that the Court find that non-transferred materials are not relevant to this case, and are therefore not subject to discovery, and that neither Nortel nor Rockstar has waived its privilege over transferred or non-transferred materials.

Dated: October 20, 2014

/s/ Deron R. Dacus
Deron R. Dacus
State Bar No. 00790553
THE DACUS FIRM
821 ESE Loop 323
Suite 430
Tyler, TX 75701
903-705-1117 (telephone)
ddacus@dacusfirm.com


**ALLEN & OVERY LLP**

Jacob S. Pultman
Paul B. Keller
Bradley S. Pensyl
1221 Avenue of the Americas
New York, NY 10020
(212) 610-6300 (telephone)
(212) 610-6399 (facsimile)
jacob.pultman@allenovery.com
paul.keller@allenovery.com
bradley.pensyl@allenovery.com

*Attorneys for Ernst & Young Inc., as Monitor of Nortel Networks Corporation and Nortel Networks Limited*

**CROWELL & MORING LLP**

 /s/  Mark M. Supko
Mark M. Supko
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624.2500 (telephone)
(202) 628-5116 (facsimile)
msupko@crowell.com

*Attorneys for Nortel Networks Inc.*

Case 09-10138-MFW    Doc 14615-27    Filed 10/20/14    Page 7 of 7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have consented to

electronic service are being served with a copy of this document via the Court's CM/ECF system

per Local Rule CV-5(a)(3) on this 20th day of October, 2014.


   **/s/ Deron R. Dacus**
   Deron R. Dacus

# Exhibit A

"Adapt/X" or Adaptx
(178 w/5 (patent or app*)) or 7895178 or 7,895,178
(183 w/5 (patent or app*)) or 7895183 or 7,895,183
(245 w/5 (patent or app*)) or 7469245 or 7,469,245
(883 w/5 (patent or app*)) or 7933883 or 7,933,883
(969 w/5 (patent or app*)) or 7236969 or 7,236,969
*767563 or *767,563
*767584 or *767,584
*767632 or *767,632
"Global IP"
"IPCo" or "IP Co"
"IP Steering Committee"
"winter catalog" or "winter catalogue"
"road show" or "roadshow"

(Microsoft or MSFT or MSN or Apple or EMC or Ericsson or Sony or Blackberry or RIM or "Research in Motion" or
Rockstar or Bidco) w/10  (bid or auction or interest or "IP" or "intellectual property" or patent or portfolio or bucket
or "cross-license" or licens* or sale or assign* or notice or infringe* or "claim chart" or litig*)

(Veschi or Cianciolo or McColgan) and (bid or auction or interest or "IP" or "intellectual property" or patent or
portfolio or bucket or "cross-license" or licens* or sale or assign* or notice or infringe* or "claim chart" or litig*)
(valu* or evalu* or analy* or Nortel) w/10 ("IP" or "intellectual property" or patent or portfolio or bucket or licens*
or sale or assign* or notice or infringe* or "claim chart" or litig*)
"Inequitable conduct"
"Open Text"
"PR News"
"Prior art"
"Submit-It"
065 or 6098065 or 6,098,065
5,727,129 or (129 w/3 patent) or (Barrett w/3 patent)
5,901,287 or (287 w/3 patent) or (Bull w/3 patent)
563 w/3 (patent or app*)
584 w/3 (patent or app*)
6,119,101 or (101 w/3 patent) or (Peckover w/3 patent)
632 w/3 (patent or app*)
7,136,853 or (853 w/3 patent)
Advertis*
AltaVista
Apple and (bid or auction or "IP" or patent or "cross-license" or licens*)
Associative or "search engine"
Auction
Barrett
Bellcore
Berten
Bucket
Database
Descoteaux

DoubleClick
Fortin
Garlick
Google
HealthGate
HotBot
HQ0045*
Iceburg or Iceberg
InfoSeek
Kohda
LaBarre
Lazard
Livermore
Lycos
NetGravity
Ranger
Skillen
Whealan
Williams