# EXHIBIT 30

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL: (650) 801-5000 FAX: (650) 801-5100

WRITER'S DIRECT DIAL NO.
(650) 801-5023

WRITER'S INTERNET ADDRESS
andreaproberts@quinnemanuel.com

October 2, 2014

**VIA EMAIL**

Ms. Amanda Bonn
Susman Godfrey LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067

Re:     Rockstar Consortium, et al. v. Google Inc., Case No. 2:13-cv-893 (E.D. Tex.)

Dear Amanda:

I write to follow up on the issues discussed during our in-person meet and confer on September 29.

## COURT ORDERED ISSUES

Pursuant to the Court's order, we discussed ways in which the parties may be able to narrow the issues in dispute in the motions to be heard on October 9. Those are addressed in the email I sent earlier today. As we said at the meet and confer, we would like to promptly get something on file with the Court identifying what the parties have resolved so that the Court does not expend resources working on matters the parties have resolved.

## ISSUES RAISED BY GOOGLE

We discussed various issues raised by Google.

quinn emanuel urquhart & sullivan, llp
LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Bldg., 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000 FAX +49(0) 621 43298 6100

**Status of Rockstar's document production**

We sent a letter on July 30 identifying additional categories of documents we believe are relevant. Rockstar did not respond. At the meet and confer, Rockstar indicated that for many of the categories, Rockstar will agree to produce responsive documents. Rockstar, however, objects to some of the requests, which it will specify in writing. Rockstar committed to identify those requests to which it objects and the bases therefore by Wednesday, October 1. We did not receive those objections. Please promptly provide them. Rockstar has already failed to respond to this letter for over two months. The parties also agreed that the parties need not meet and confer again in person regarding those objections to the extent there is a dispute.

We asked Rockstar why it waited until the September 16 deadline to produce documents, contrary to the Docket Control Order. Rockstar simply responded that it made a reasonably diligent search and timely produced. It further noted that there were confidentiality issues it needed to deal with and it had a team of reviewers working to review the documents. This explanation is not sufficient. Many of these same issues affected Google. Google also needed to have a team of reviewers review documents for relevance and privilege, and Google also needed to obtain consent from third parties prior to production of certain documents, such as patent license agreements. Yet, Google did not wait until September 16 to produce documents. Google reserves its rights to seek relief for the prejudice suffered from Rockstar's delay.

We additionally discussed the impact Nortel's motions for a protective order had on Rockstar's document production, as described in Ms. Bonn's September 26 email. Rockstar confirmed that for the two custodians for whom it conducted a partial search (Krishnan and Vella), Rockstar only withheld documents based on privilege and those documents would be reflected on its privilege log. Otherwise, Rockstar is not withholding documents based upon confidentiality; rather, it refrained from searching transferred computers due to the Nortel motions.

We asked if Rockstar had searched any custodial data for Mr. Ciancolo. He is not listed in Ms. Bonn's September 26 email as a custodian whose non-email ESI was searched. Rockstar indicated that it would need to confirm that and whether it is because Mr. Ciancolo only had ESI on the Nortel-era laptops at issue in Nortel's motions for a protective order. Please provide a response by October 3.

Ms. Bonn's September 26 email indicated that Rockstar did limited searches for Messrs. Krishnan and Vella. We asked whether their ESI is only on the computers covered by the Nortel motions. Rockstar indicated that it would need to double-check. Please provide a response by October 3.

Ms. Bonn's September 26 email also did not indicate that Messrs. Fako or Tiegerman's ESI was searched. Rockstar indicated that it would need to check to confirm that and the reason why they were not searched. We note that Mr. Tiegerman was identified by Rockstar in opposition to Google's motion to transfer as one of the three full-time employees in Plano, Texas with relevant knowledge about the suit. Given Rockstar's representations to the Court about his relevance, we would expect Rockstar to have searched his ESI. Please provide a response by October 3.

We also asked Rockstar if it could explain the discrepancy between Mr. Supko's (counsel for Nortel's) September 26 email that did <u>not</u> list Mr. Vella as having been associated with one of the Nortel computers identified in the Transition Services Agreement, whereas Rockstar identified his computer as having been affected. Rockstar could not explain and told us to follow up with Nortel.

Rockstar confirmed that the only category of documents it is aware of that is impacted by the Nortel motions are the laptops identified in Ms. Bonn's September 26 email. As Rockstar understands it, there are no central repositories subject to the Nortel motions.

We asked Rockstar to explain when it became aware of the fact that certain computers it obtained from Nortel may contain relevant documents, but were required to have been destroyed. Rockstar responded that it began meeting and conferring with Nortel about the issue in early August. We pressed for an answer as to when Rockstar was aware this was potentially an issue. Rockstar only responded that it was aware there was a dispute with Nortel in early August. Rockstar refused to answer when it was aware that it had in its possession computers it obtained from Nortel which may contain relevant documents, but that it had been required to destroy, claiming that this was privileged and work product. Rockstar similarly would not identify which provisions of the Transition Services Agreement are at issue, saying that it is work product.

We asked Rockstar about the volume of material on the Nortel computers that have not been searched. Rockstar did not have any answer. It indicated that it could try to get a raw count of files, but cannot even look at the files and so cannot get the information Google requested without Nortel's permission.

We additionally asked Rockstar to confirm that it has completed its production of documents from the Nortel electronic data room. As we explained, multiple third parties have indicated that they turned over these materials to Rockstar, such that we should get them from Rockstar. Rockstar indicated that it would confirm in writing, but that it believed it produced the whole data room with the exception of 14 documents. Please provide that confirmation by October 3 so that we know whether there is a need to follow up with third parties for these documents. Additionally, please explain the basis for withholding the 14 documents referenced at the meet and confer.

**Garlick Production**

We followed up on my August 7 and 20, and September 17 and 22 emails on this issue. Ms. Bonn indicated that Mr. Garlick's production is complete, with the exception of a set of documents that had initially been withheld as privileged. Those documents will be produced by October 14, as will Mr. Garlick's privilege log.

We also followed up on our outstanding request for deposition dates in October for Mr. Garlick and Mr. Williams. With respect to Mr. Garlick, Ms. Bonn indicated that he is traveling and visiting family in October and November, and is available for deposition on November 12. She will get back to us regarding the location. We will get back to you on our availability on that date. With respect to Mr. Williams, Ms. Bonn indicated that she is working on a date and will hopefully get back to us this week. If we do not receive a date this week, then we will have no

choice to but to pick a date and serve a deposition subpoena.  We have patiently waited for a date since August 20 and Susman has provided no explanation for why it delayed in providing these dates.  Given the case schedule, we cannot wait any longer.

**Rockstar's Deficient Responses to Google's Second Set of Interrogatories**

We discussed the deficiencies identified in my August 19 letter.  Rockstar confirmed that it is not withholding responsive information based upon General Objection Nos. 3, 5, 8, and 12.  With respect to General Objection No. 12, that the interrogatories are compound, Rockstar did not identify which interrogatories it believes are compound.  It confirmed that it will not later come back and claim that an interrogatory to which it responded should be counted as more than one.

With respect to Interrogatory No. 14, Rockstar indicated that it is only withholding responsive information based upon its privilege objection.  Rockstar will supplement its response to this interrogatory.

With respect to Interrogatory No. 15, Rockstar confirmed it is not withholding responsive information based on its objections.  Rockstar will supplement its response to this interrogatory.

With respect to Interrogatory No. 16, Rockstar confirmed that it is not withholding responsive information based on its objections.  It is our understanding that Rockstar is not planning to supplement its response to this interrogatory.  If this is incorrect, please let us know.

We asked Rockstar when it would supplement its responses to Interrogatory Nos. 14 and 15.  Rockstar responded that it would likely rely on Rule 33(d) and suggested that the parties agree to a date by which both parties supplement their interrogatories citing to Rule 33(d) to cite to specific documents.  We propose that the parties agree to Friday, October 17.

**Deficient Responses to Witcher and Jensen Subpoenas**

We raised the issues discussed in my August 18 letter regarding Messrs. Witcher and Jensen's deficient responses to Google's document subpoena.

We noted that although Messrs. Witcher and Jensen responded to several requests saying that they would search for and produce documents located in a reasonably diligent search, and made that representation on August 5, we have not received a single document from either witness.  Susman responded that the main concern is that these two witnesses have done recent prosecution work as Rockstar's current prosecuting attorneys, and so it is very burdensome to review their materials for privilege.  The parties discussed these issues and, in the end, Google agreed to think about which responsive documents it really needs, whether Messrs. Witcher and Jensen must search emails, and whether Google will require them to log all or a portion of privileged documents.  We will get back to you shortly with responses to those issues.  In the meantime, Susman confirmed that the witnesses will produce the public and non-public, clearly not privileged responsive documents that they agreed to produce.  Susman also indicated that the witnesses could do so in short order, which we expect given that the subpoena responses were served on August 5, and we raised our concerns on August 18.  Please produce those documents by Friday, October 10.

4

We additionally asked if Messrs. Witcher and Jensen were withholding documents based on any of their objections. Ms. Bonn indicated that she did not think so, but would confirm, citing an example of requests relating to attorney time records. Please provide this confirmation by Friday, October 3. Ms. Bonn also confirmed that Messrs. Witcher and Jensen are not refusing to search for documents in response to any of Google's requests.

**Skillen Privilege Log**

The parties agreed that they are at an impasse regarding the disputes arising from Mr. Skillen's privilege log. Rockstar will not remove the redactions to the inventors' consulting agreements. Rockstar maintains its privilege assertion for the documents with handwritten notes identified in Mr. Stake's September 3 email. Rockstar offered to provide a declaration saying these documents were privileged, but would not agree to include in the declaration the information necessary to evaluate the privilege claims - such as the date and identification of those involved in the communication the notes reportedly "reflect." Finally, Rockstar will not confirm that it will not rely on withheld attorney-client communications as proof of diligence. Rockstar indicated that it will rely on the fact the communications took place, but not the substance of the communications. As we've previously indicated in correspondence and during multiple meet and confers, this is an improper use of the attorney-client privilege as a sword and shield.

**Motion for Leave to Amend Invalidity Contentions**

The parties also agreed that they are at an impasse regarding this dispute. Rockstar will oppose Google's request for leave to amend its invalidity contentions to identify ten additional prior art references which Google identified to Rockstar. When asked what the prejudice is to Google's supplementation, Rockstar noted it was late and that claim construction already commenced. Rockstar had no response to Google's point that the newly discovered materials relate to references and systems already disclosed.

**Custodial Information**

In response to our request for an explanation of what "business analytics relevant to damages" means, as used in Rockstar's initial disclosures with respect to Mr. de Laat, Rockstar explained that he does damages analyses for lawyers.

**Google's Email Requests**

We asked Rockstar to identify which search terms Rockstar has not proceeded to run and why. Rockstar explained that it believes that, based on hit counts "Microsoft" is returning a lot of false positives. Rockstar also mentioned concerns with "Google," and the names of prosecuting attorneys Fortin and Williams un-tethered to the patents-in-suit. Rockstar further mentioned that for some custodians, it believes it is getting false positives for search terms that are the last three digits of a patent number. We asked that Rockstar identify specifically which search terms and for which custodians it has an objection. Rockstar committed to do so by Friday, October 3.

5

**Rockstar's Email Requests**

Google identified issues with Rockstar's proposed search terms on August 29. Rockstar never served revised search terms on Google. At our meet and confer, Rockstar asked whether Google had run or tested any search terms. We explained that we had not done so because Rockstar served more than 20 search terms per custodian, contrary to the E-Discovery Order, and Rockstar had not corrected this error—which we identified for Rockstar promptly after Rockstar served the non-compliant email requests. Since Rockstar gets to propose search terms to Google, Google needs to know which search terms Rockstar actually wants Google to run, given that Google is not required to run all that Rockstar identified. Rockstar asked that Google identify which of the search terms Google believes violate the E-Discovery Order based on use of the word "or." We believe the following proposed search terms have this problem:

*(7,236,969 or (969 w/5 patent)) or (7,469,245 or (245 w/5 patent)) or (7,672,970 or (970 w/5 patent))or (7,895,183 or (183 w/5 patent) or (767,563) or (563 w/5 (patent or app!)) or (7,985,178 or (178 w/5 patent) or (767,584 or (584 w/5 (patent or app!))) or (7,933,883 or (883 w/5 patent) or (767,632) or (632 w/5 (patent or app!)))*

*Quality /3 (score or ad!)*

*((content or context! or correlat! or associat! or custom! or personal!or profile or prioritize! or order or relevan!) w/5 (target! or ad! or search or query or argument or request))*

*((Overture or Yahoo or Kleiner or Sequoia or Bechtolsheim or Stanford) and (ad! or auction or target! or patent or licens! or strat! or search or paid or "IP"))*

*((paid or local or personal! or instant) w/3 (search))*

*("intellectual property" or patent or "ip") and (strateg! or licens! or acqui! or valu!)*

*(paid or instant or local or personal!) w/3 search*

*user /3 (profile or data or history or previous or results)*

*Quality /2 (score or ads)*

*(gps or gbs or omg or emg or vip or vips or fmg) and ((adsense w/5 (search or mobile) or afs or afm or aw or search)*

*((adsense or afs or or am or aw) and (market! or licens! or strateg! or innov! or leverag! or target! or monetiz! or grow! or opportunity or revenue or profit)*

Each of these search strings counts as more than one search term under the E-Discovery Order, and thus, along with the other search terms proposed for each custodian, Rockstar has proposed more than twenty search terms per custodian.

6

Additionally, we pointed out on August 29 that Rockstar had used broad terms like AdWords and AdSense for Search as search terms, which is also contrary to the E-Discovery Order. Additional terms that fall into this category are:

*("User Based Ads Quality") or UBAQ*

*("Personalized Ads Quality") or PAQ*

*Instant*

*IBA or (interest /2 based /2 ad!)*

*Kansas*

*(Smartass or (smart /2 ass) or Smartads or (smart /2 ads))*

*Kaltix*

*Happy /2 Hour*

Rockstar suggested that these could be narrowed by adding code names to the string. In particular, Rockstar is interested in the code name(s) used for AdWords when it was being developed. We are looking into this request.

We additionally noted that Rockstar has yet to provide proposed date cut-offs for the majority of the custodians for which it asked for emails, as it is required to do. We provided additional information Rockstar requested about the custodians on September 22. Rockstar indicated that it would follow up on this issue.

Lastly, the executives' email requests are already part of Rockstar's pending motion to compel.

**Instructions to Skillen Not to Answer**

At the September 25 deposition and in Mr. Stake's September 26 email, we raised concerns regarding counsel's instruction to Mr. Skillen not to answer questions regarding the named inventors' proposal to Skillen and the inventors' meeting with Microsoft. As to the former, Rockstar indicated that it had investigated and the "proposal" was not a business proposal; it was legal and related to patents unrelated to the patents-in-suit. We asked that Rockstar provide an explanation in writing, and Rockstar said it would do so by the end of the week.

As for the Microsoft meeting, Rockstar explained that it has a written common interest agreement with Microsoft. Rockstar's position is that Rockstar and Microsoft have a common interest relating to the patents-in-suit, and Skillen had an attorney-client and consulting relationship with Rockstar, which is under the umbrella of Rockstar's common interest agreement. Rockstar indicated that it needed to figure out what information it is willing to disclose regarding the nature of the common interest and will provide a response by the end of the week.

**Fisher and Weiss Subpoenas**

Following up on Ms. Ernst's September 8 email, Rockstar committed to supplementing its Initial Disclosures to provide correct contact information for those witnesses for which it has contact information. And, for those that Susman does not represent, it will correct the indication that the witnesses should be contacted through Susman. Given that we asked that this be done weeks ago, please provide this supplementation by October 10.

**ROCKSTAR'S ISSUES**

Rockstar did not propose any issues to be discussed at the September 29 meet and confer until the evening of Friday, September 26. Accordingly, we informed Rockstar that we were still investigating Rockstar's lengthy requests. Nevertheless, we were able to address some of the issues raised in Ms. Bonn's September 26 email.

First, we made clear that Google's document productions did include custodial documents. We provided .DAT files on September 30 that include the custodian metadata field. Our discovery vendor inadvertently did not include them with the original productions.

Second, Rockstar asked Google to make a Rule 30(b)(6) witness on its document production available for deposition within the next 30 days. We responded that Rockstar should serve a deposition notice and then we will discuss. Rockstar similarly asked if Google is refusing to make any Google executives or managers available for deposition. We responded that Rockstar, again, has not served any deposition notices or even identified who specifically it wants to depose. We further suggested that the parties should see what happens at the upcoming discovery hearing as it is unlikely the parties will reach agreement on depositions for executives from whom Google is not ordered to produce documents.

Third, Rockstar asked about the additional categories of metadata that it requested be provided on July 16, which we responded to on July 29. We previously explained that metadata is not particularly useful for wikis and sites because it reflects collection data, such as the date of collection rather than the date the document was actually created or modified. Rockstar asked if this applies to both the date created and date modified fields. We will check on this. We will also check to see if the author, type/extension, and file name fields are useful for wikis and sites.

Fourth, Rockstar repeatedly raised concerns regarding the sufficiency of Google's document collection and asked for information regarding how Google searched for relevant documents. We are considering Rockstar's request for search terms and will get back to you. As we explained at the meet and confer, however, we expect that this would be mutual given that Google has little to no information regarding how Rockstar searched for documents either.

Fifth, there are a number of very specific issues Rockstar raised in Ms. Bonn's September 26 email regarding purported technical problems with Google's document production, and Google's source code production. We are investigating those issues and will respond in separate correspondence.

Sixth, Rockstar raised concerns about several of Google's interrogatory responses. We made clear that the parties had not previously met and conferred in person regarding Interrogatory Nos.

14, 15, and 16.  Rockstar first raised complaints about these responses on September 26.  We indicated that we had not had the opportunity to analyze Rockstar's complaints and would respond separately.  We did note, however, that Google raised several objections to Interrogatory Nos. 15 and 16, which Rockstar has yet to address.  Rockstar indicated that it would do so.

Finally, Ms. Bonn's September 26 email asked for permission for foreign experts to view AEP material other than source code outside of the United States, which is precluded by the Protective Order.  Ms. Bonn's email only mentions Lillian Dai.  Can you please advise whether Dr. Dai is the only expert Rockstar's request applies to?  If there are others, please specifically identify them and where they are located.

We look forward to your responses.  As always we remain willing to meet and confer to resolve disputes without Court intervention.


Very truly yours,

*Andrea Pallios Roberts*

Andrea Pallios Roberts


01980.00010/6260253.3

01980.00010/6260253.3