# Exhibit B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
In re:                                         :    Chapter 11
                                               :
                                               :    Case No. 12-20000 (PJW)
Overseas Shipholding Group, Inc., *et al.*,    :
                                               :    (Jointly Administered)
                    Debtors.                   :
                                               :    **Re:  D.I. 3683, 3727**
---------------------------------------------------------X

**MEMORANDUM OF LAW OF WILMINGTON TRUST,
NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE,
REGARDING THE INTEREST ON OVERDUE INTEREST DISPUTE**

**POLSINELLI PC**

Christopher A. Ward (Del. Bar No. 3877)
Jarrett Vine (Del. Bar No. 5400)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
jvine@polsinelli.com

and

Edward M. Fox, Esq. (admitted pro hac vice)
900 Third Avenue, 21st Floor
New York, NY 10022
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
efox@polsinelli.com

Counsel for Wilmington Trust, National
Association, as indenture trustee

Dated:  August 5, 2014

48609785.1

## TABLE OF CONTENTS

                                                                           **PAGE**

INTRODUCTION..................................................................................................1

THE 7.5% NOTES INDENTURE........................................................................2

ARGUMENT.........................................................................................................2

I.     THE DEBTORS' INTERPRETATION OF THE INDENTURE AND
       NOTE IS CONTRARY TO CONTROLLING LAW........................................2

II.    THE DEBTORS' ARGUMENT RELIES ON IMPROPER PAROL
       EVIDENCE EVEN THAT THEY SOUGHT TO EXCLUDE
       FROM THIS DISPUTE.....................................................................................5

III.   NEW YORK LAW ALLOWS FOR INTEREST ON OVERDUE
       INTEREST AND PROVIDES THE INTEREST RATE IF THE
       INDENTURE DOES NOT.................................................................................6

IV.   NEW YORK LAW NOT ONLY PERMITS, BUT REQUIRES,
       PAYMENT OF INTEREST ON OVERDUE INTEREST..................................7

i

# TABLE OF AUTHORITIES

**PAGE**

In re Arcade Pub., Inc.,
    455 B.R. 373 (Bankr. S.D.N.Y. 2011)..................................................7, 8 ,9 ,10

Banks v. Gill Distrib. Ctrs, Inc.,
    263 F.3d 862, 872 (9th Cir. 2001)..............................................................9

In re Cardian Mortgage Corp.,
    122 B.R. 255, 264 (Bankr. E.D. Va. 1990)....................................................9

In re Chavez,
    381 B.R. 582, 594 (Bankr. E.D.N.Y. 2008)...................................................9

City of Scranton v. Int'l Ass'n of Machinists & Aerospace Workers Lodge 2305, AFL-CIO,
    505 A.2d 1121, 1124 (Pa. Commw. Ct. 1986)..................................................9

Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.,
    499 F. App'x 559, 564 (6th Cir. 2012).........................................................4

In re Cukierman,
    242 B.R. 486, 491 (B.A.P. 9th Cir. 1999).....................................................9

Donald v. Chaney,
    488 A.2d 971, 977 (Md. 1985)...................................................................9

Eder Elec. Co. v. United States,
    205 F. Supp. 305, 306 (E.D. Pa. 1962)........................................................5

In re Flashcom, Inc.,
    495 B.R. 490, 514 (Bankr. C.D. Cal. 2013)....................................................9

Freeman v. Pristine Indus., Inc.,
    1995 WL 102829, at *2 (S.D.N.Y. Mar. 8, 1995)..............................................6

Grosz v. Serge Sabarsky, Inc.,
    24 A.D.3d 264, 267 (N.Y. App. Div. 2005)...................................................9

Jones v. Foster,
    70 F.2d 200, 207 (4th Cir. 1934)..............................................................9

Kelly v. Redevelopment Auth. of Allegheny Cnty.,
    191 A.2d 393, 395 (Pa. 1963)..................................................................9

In re Lafferty,
    297 A.D.2d 469, 471 (N.Y. App. Div. 2002)..................................................9

Lefkowitz v. McMillen,
    394 N.Y.S.2d 107, 108 (3d Dep't 1977) ("CPLR 409 (subd. (b))………………………..9

MGA Entm't, Inc. v. Hartford Ins. Grp.,
    869 F. Supp. 2d 1117, 1136 (C.D. Cal. 2012)……………………………………………9

N.Y. Marine & Gen. Ins. Co. v. S/S Ming Prosperity,
    920 F. Supp. 416, 428 (S.D.N.Y. 1996)…………………………………………………10

NML Capital v. Republic of Argentina,
    17 N.Y.3d 250 (N.Y. 2011)……………………………………………………...6, 7, 8, 10

Orion Refining Corp. v. Fluor Enters., Inc., (In re Orion Corp.),
    372 B.R. 688, 694, 703-04 (Bankr. D. Del. 2007)……………………………………….7

In re Sabre Shipping Corp.,
    299 F. Supp. 97, 101 (S.D.N.Y. 1969)…………………………………………………...8

Safway Steel Scaffolds of Va., Inc. v. Coulter,
    94 S.E.2d 541, 548 (Va. 1956)…………………………………………………………...9

Shackelford v. Shackelford,
    571 S.E.2d 917, 922 (Va. Ct. App. 2002)………………………………………………..9

In re Smurfit-Stone Container Corp.,
    444 B.R. 111, 126 (Bankr. D. Del. 2011)………………………………………………..4

Stepnowski v. C.I.R.,
    456 F.3d 320, 324 (3d Cir. 2006)………………………………………………………..4

In re Tender Loving Care Health Care Servs., Inc.,
    No. 02-88020-AST, 2009 WL 5218598, at
    *1, *9-11 (Bankr. E.D.N.Y. Dec. 31, 2009)……………………………………………..8

Tisch Family Found., Inc. v. Tex. Nat. Petroleum Co.,
    336 F. Supp. 441, 443-45 (D. Del. 1972)………………………………………………..7

In re Welty,
    355 B.R. 177, 181 (Bankr. N.D. Cal. 2006)……………………………………………..9

# INTRODUCTION

Wilmington Trust, National Association, as indenture trustee ("**Wilmington Trust**") for the $150 million of 7.5% Senior Notes due 2024 (the "**7.5% Notes**") issued by Overseas Shipholding Group, Inc. ("**OSG**") submits this Memorandum of Law in support of the payment of interest on interest owing to Holders of 7.5% Notes.[1]

On July 18, 2014, this Court confirmed the Plan.[2] The Plan became effective on August 5, 2014. Although the Plan treats the 7.5% Notes as unimpaired, and provides recoveries for junior classes of creditors and interest holders, the Plan does not provide for the payment of "interest on overdue interest" to the holders of the 7.5% Notes, see Plan § 3.2(h), as required pursuant to the 7.5% Notes Indenture (as herein defined), New York Law and 11 U.S.C. § 1123(d), which provides that "the amount necessary to cure [a] default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law".

## The 7.5% Notes Indenture

The 7.5% Notes were issued pursuant to an indenture dated March 7, 2003 (the "**Base Indenture**"), as amended and supplemented by a First Supplemental Indenture dated February 19, 2004 (the "**First Supplemental Indenture**," together with the Base Indenture, the "**7.5% Notes Indenture**"), each between OSG and Wilmington Trust.

---

[1] As a result of elections by Holders of 7.5% Notes for the 7.50% Notes Alternative Distribution available under the Plan (as hereinafter defined) Holders of $7,292,000 in principal amount of 7.5% Notes remain eligible to receive interest on overdue interest to the extent awarded by the Court. The fact that other holders may have waived their right to seek interest on overdue interest is irrelevant to this dispute, as is any issue relating to the payment of Wilmington Trust's fees and expenses, including the fees and disbursements of its counsel.

[2] *First Amended Joint Plan of Reorganization of Overseas Shipholding Group, Inc., et al., Under Chapter 11 of the Bankruptcy Code* (the "**Plan**") [D.I. 3663]. See *Findings of Fact, Conclusions of Law and Order Confirming First Amended Joint Plan of Reorganization of Overseas Shipholding Group, Inc., et al., Under Chapter 11 of the Bankruptcy Code* [D.I. 3683].

1

48609785.1

Pursuant to the Base Indenture, securities could be issued in an unlimited aggregate principal amount pursuant to one or more supplemental indentures. Section 301 of the Base Indenture further provides that:

> There shall be established in or pursuant to a Board Resolution and . . . established in one or more indentures supplemental hereto, prior to the issuance of Securities of any series, . . .
>
> (19) any other terms of the series . . . .

Base Indenture § 301. Although the First Supplemental Indenture modified certain terms of the Base Indenture, including covenants in Sections 1007, 1009, 1010 and 1011,[3] the First Supplement Indenture made no changes to Section 503 of the Base Indenture.

Section 503 of the 7.5% Notes Indenture provides:

> The Company covenants that if [it defaults under the Indenture] the Company will, upon demand of the Trustee, pay to it, for the benefit of Holders of such Securities, the whole amount then due and payable on such Securities for principal and any premium and interest and, to the extent that payment of such interest shall be legally enforceable, interest on any overdue principal and premium and on any overdue interest, at the rate or rates prescribed therefor in such Securities . . . .

7.5% Notes Indenture § 503.

## ARGUMENT

I. **The Debtors' Interpretation of the 7.5% Notes Indenture and 7.5% Note is Contrary to Controlling Law.**

  a) <u>The First Supplemental Indenture Did Not Change Section 503.</u>

The First Supplemental Indenture did not vary the terms of Section 503 of the Base Indenture, which provides for the payment of interest on overdue interest. Consequently, OSG and its affiliated debtors (the "Debtors") concoct an argument that Section 503 merely gives

---

[3] Concerning maintenance of insurance, limitation on liens, limiting sale and leaseback transactions and limitations on incurrence of indebtedness by restricted subsidiaries, respectively.

OSG the "option" to agree to pay interest on interest, if the "option" was exercised in the 7.5% Note issued pursuant to the First Supplemental Indenture.

First and foremost, the "option" to pay interest on interest, if there is one at all, existed in Section 301 of the Base Indenture, which permitted Section 503, and all of the other provisions of Base Indenture, to be amended pursuant to the terms of the First Supplemental Indenture. The First Supplemental Indenture does not amend Section 503 of the Base Indenture, however, so Section 503 of the 7.5% Notes Indenture requires OSG, by its terms, to pay interest on overdue interest.

    b) <u>The Indenture Governs the Note</u>.

The Debtors' argument that any obligation it may have to pay interest on overdue interest is governed by the terms of the 7.5% Note, rather than by the terms of the 7.5% Notes Indenture, is contrary to law and must be rejected. An indenture governs the security issued under that indenture; the security does not govern the indenture.[4] Moreover, the 7.5% Note here specifically provides that it is governed by the terms of the 7.5% Notes Indenture. The reverse of the 7.5% Note states,

> "[R]eference is hereby made to the Indenture for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Company, the Trustee and the Holders of the Securities."

7.5% Note, Joint Appendix, Ex. G. Consequently, the Debtors' argument that the 7.5% Note determines whether an alleged "option" to require the payment of interest on interest was exercised is nonsensical because the 7.5% Note immediately and unequivocally refers the reader right back to the 7.5% Notes Indenture for a statement of the Holders' rights, which include the

---

[4]The Trust Indenture Act of 1939, 15 U.S.C.§ 77aaa, et seq., specifically requires that any securities covered by the Trust Indenture Act, such as the 7.5% Notes, must be issued pursuant to an indenture. If they are not, they may not be registered for sale. 15 U.S.C. § 77eee(b)(1). Nor may they be sold as unregistered securities not issued under an indenture. <u>Id.</u> § 77fff(a).

48609785.1

right to receive interest on overdue interest pursuant to Section 503 of the 7.5% Notes Indenture. In re Smurfit-Stone Container Corp., 444 B.R. 111, 126 (Bankr. D. Del. 2011) ("[N]either Wedlake nor the Indenture Trustee has cited case law indicating that New York law requires a court to look solely to a note provision . . . when the note indicates that the indenture controls."). Consequently, the only "option" in Section 503 is whether interest on overdue interest should accrue at the same rate as interest on the principal balance of the 7.5% Notes or at a different rate. In the case of the 7.5% Notes, the same rate applies.

Although the Debtors assert that the phrase, "at the rate or rates prescribed therefor in such Securities," (the "Rate Clause") refers only to the interest "on any overdue interest," the Debtors are clearly mistaken. The Rate Clause is set off by commas. Consequently, the Rate Clause modifies the entire list of items preceding it,[5] consisting of

> the whole amount then due and payable on such Securities for principal and any premium and interest and, to the extent that payment of such interest shall be legally enforceable, interest on any overdue principal and premium and on any overdue interest . . . .

7.5% Notes Indenture § 503. Moreover, the use of the phrase "rate or rates" in the Rate Clause also makes clear that the Rate Clause applies to the entire list of items preceding it, not just "interest . . . on any overdue interest." Indeed, there would not be a "rate or rates" for interest on interest. There would only be a single rate.

The Rate Clause provides that there could be a single interest rate for each of the items in the list preceding the Rate Clause, or there could be different interest rates for different items in the list. If there were to be different interest rates for different items in the list, the 7.5% Note

---

[5] "[W]here there is a comma before a modifying phrase, that phrase modifies all of the items in a series and not just the immediately preceding item." Stepnowski v. C.I.R., 456 F.3d 320, 324 (3d Cir. 2006); see Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co., 499 F. App'x 559, 564 (6th Cir. 2012) ("The presence of a comma separating a modifying clause . . . from the clause immediately preceding it is an indication that the modifying clause was intended to modify all the preceding clauses and not only the last antecedent one.").

4

48609785.1

would have to specify what interest rate applied to each item in the list. The form of note set forth in Section 202 of the Base Indenture was drafted to allow for the inclusion of different interest rates for different items in the list on which interest may accrue. Because the form of note attached as Exhibit A to the First Supplemental Indenture applies the same 7.5% interest rate to all of the items on the list in Section 503 of the 7.5% Notes Indenture, however, there was no need to list the same rate numerous times for each item in the Section 503 list and those multiple rate references were obviously eliminated in favor of the single 7.5% rate set forth in the 7.5% Note for all of the items in the Section 503 list.

## II. The Debtors' Argument Relies on Improper Parol Evidence Even That They Sought to Exclude From this Dispute

The Debtors previously sought to exclude parol evidence from this dispute, at least until this Court first determined whether there was an ambiguity in the Indenture. See Ltr. from D. Abbott to J. Walsh (June 9, 2014) at 4. [D.I. 3367]. Accordingly, over the objections of the Committee and the Indenture Trustees, the Court stayed discovery and agreed to limit its initial ruling to whether the four corners of the relevant indentures require the payment of interest on overdue interest. See Tr. of Discovery Hr'g, June 13, 2014 at 36:9-38:4. Now, however, the Debtors rely on parol evidence by comparing the indenture for the 8.125% Notes (the "8.125% Indenture") entered into in 2010 with the Bank of New York Mellon, as indenture trustee, with the indenture entered into in 2004 with Wilmington Trust. Debtors' Mem.[6] at 9, 11-13. Such a comparison is not only procedurally improper, but it has absolutely no relevance to whether the 7.5% Notes Indenture, on its face, requires payment of interest on overdue interest. See, e.g., Eder Elec. Co. v. United States, 205 F. Supp. 305, 306 (E.D. Pa. 1962) ("We agree with the

---

[6] *Debtors' Memorandum of Law Regarding Certain Noteholders' Alleged Entitlement to Interest on Overdue Interest* [D.I. 3727] (the "**Debtors' Mem.**").

Board that the contract is not ambiguous: therefore, the prior contracts between the parties are not relevant to the interpretation of the present contract.").

Although the Debtors assert that no party to this dispute has asserted that there is any ambiguity in the Indentures which requires discovery and resort to parol evidence, Wilmington Trust made precisely that argument at the July 18 hearing in response to the Debtors' argument that Section 503 of the Indenture provides an "option" to be exercised by the manner in which the Note is drafted. There is nothing in Section 503 of the Indenture which even remotely refers to any "option" concerning the payment of interest on overdue interest, and it would be truly remarkable that the existence of an "option" in an indenture which never even mentions the word "option" would be exercised by the issuance of a note, the form of which is determined by, and attached as Exhibit A, to that very indenture.[7] Accordingly, if the Court is inclined to accept the Debtors' "option" argument, there is clearly an ambiguity and the Court must first allow discovery and schedule an evidentiary hearing.

### III. New York Law Allows for Interest on Overdue Interest and Provides the Interest Rate Even if the Indenture Does Not.

New York Law provides for the payment of interest on overdue interest at New York's statutory rate of 9% if an indenture fails to so provide or fails to specify the rate of such interest.[8] CPLR 5004. The 7.5% Notes Indenture, like virtually all indentures, is governed by New York law. See Indenture § 112. In <u>NML Capital v. Republic of Argentina</u>, 17 N.Y.3d 250, 952 N.E.2d 482, 928 N.Y.S.2d 666 (2011), the New York Court of Appeals expressly held that "bondholders are entitled to prejudgment interest under CPLR 5001 on the unpaid biannual

---

[7] See First Supplemental Indenture and Exhibit A thereto.

[8] Although Article 3 of the N.Y. UCC may not apply to the 7.5% Notes to the extent they are considered "investment securities," pursuant to NY UCC 3-118(d), where the rate of interest on a note is not specified, New York Law applies the judgment rate at the place where the note is payable, which, in this case, is New York City. N.Y. UCC 3-118(d). Thus, the rate under the UCC for the payment of interest on overdue interest would be the New York judgment rate of 9%. <u>Freeman v. Pristine Indus., Inc.</u>, 1995 WL 102829, at *2 (S.D.N.Y. Mar. 8, 1995).

interest payments that were due – but were not paid – after the loans were either accelerated or matured on the due date." NML Capital, 17 N.Y.3d at 266.

### IV. New York Law Not Only Permits, But Requires, Payment of Interest on Overdue Interest

The Debtors argue that New York Law strongly disfavors payment of interest on overdue interest. Debtors' Mem. at 6. The Debtors are clearly wrong. New York law, expressly permits the payment of interest on overdue interest. N.Y. GEN. OBLIG. § 5-527(1) (2014). N.Y. CPLR 5001 also provides for the payment of interest on overdue interest, as New York's highest court so held in NML Capital v. Republic of Argentina.

Because the 7.5% Indenture is governed by, and construed in accordance with, New York law, prejudgment interest is payable in accordance with New York law even though the claim is enforced in Delaware. See, e.g., Tisch Family Found., Inc. v. Tex. Nat. Petroleum Co., 336 F. Supp. 441, 443-45 (D. Del. 1972) (applying Texas prejudgment interest to breach of contract claim where contract governed by Texas law); Orion Refining Corp. v. Fluor Enters., Inc., (In re Orion Corp.), 372 B.R. 688, 694, 703-04 (Bankr. D. Del. 2007) (applying Louisiana prejudgment interest to breach of contract claim where contract governed by Louisiana law); see also RESTATEMENT (Second) OF CONFLICT OF LAWS § 207 cmt. e (1971) ("The local law of the state selected by [the parties] determines whether plaintiff can recover interest, and if so, the rate . . .").

The Debtors attempt to skirt the decision in NML Capital v. Republic of Argentina by arguing that CPLR 5001 only grants New York statutory interest for a "sum awarded." See In re Arcade Pub., Inc., 455 B.R. 373 (Bankr. S.D.N.Y. 2011). The Arcade decision, however, involved different facts than are present here, and the Arcade court reached some questionable legal conclusions in its effort to reach a particular result.

48609785.1

In Arcade, a trade creditor with a claim for publishing royalties sought to add prejudgment interest to its disputed, pre-petition claim in a partial payment case. Citing several state court cases, the Arcade court concluded that "N.Y. CPLR § 5001(a) requires that a verdict, judgment or decision be rendered in favor of the plaintiff in a breach of contract action before plaintiff is entitled to statutory interest under N.Y. CPLR § 5001(a)." Id. at 379-80. It is no surprise, however, that in the plenary state court actions for breach of contract cited by the Arcade court, those courts concluded that a verdict or judgment was required before interest on overdue interest could be awarded. After all, absent a finding of liability on the contracts in those plenary actions, those courts would have had no basis to issue any award at all.

Numerous courts, including bankruptcy courts, however, have applied CPLR 5001 to award interest in situations not involving plenary actions.[9] In addition, other states with similar judgment interest statutes permit the payment of interest in non-plenary actions.[10] Accordingly,

---

[9] See, e.g., In re Tender Loving Care Health Care Servs., Inc., No. 02-88020-AST, 2009 WL 5218598, at *1, *9-11 (Bankr. E.D.N.Y. Dec. 31, 2009) (awarding a claimant interest pursuant to CPLR 5001 for the liquidating trustee's failure to pay the consensually resolved unsecured claim under the confirmation plan). In re Sabre Shipping Corp., 299 F. Supp. 97, 101 (S.D.N.Y. 1969) (stating a bankruptcy referee could award New York statutory interest on a claim); In re Chavez, 381 B.R. 582, 594 (Bankr. E.D.N.Y. 2008) (awarding New York statutory interest on a claim estimation motion); Grosz v. Serge Sabarsky, Inc., 24 A.D.3d 264, 267 (N.Y. App. Div. 2005) (granting statutory interest on an arbitration award); In re Lafferty, 297 A.D.2d 469, 471 (N.Y. App. Div. 2002) (awarding statutory interest in an estate accounting proceeding).

[10] See Banks v. Gill Distrib. Ctrs., Inc., 263 F.3d 862, 872 (9th Cir. 2001); Jones v. Foster, 70 F.2d 200, 207 (4th Cir. 1934) (stating that Virginia statutory interest may be allowed for unliquidated damages); MGA Entm't, Inc. v. Hartford Ins. Grp., 869 F. Supp. 2d 1117, 1136 (C.D. Cal. 2012) (applying statutory judgment interest to equitable contribution claim); In re Cukierman, 242 B.R. 486, 491 (B.A.P. 9th Cir. 1999) (granting California statutory interest to unperformed lease obligations prior to rejection), rev'd in part, 265 F.3d 846 (9th Cir. 2001) (ruling that statutory interest was allowable but not entitled to priority); In re Flashcom, Inc., 495 B.R. 490, 514 (Bankr. C.D. Cal. 2013) (applying California statutory interest to a breach of a preference settlement); In re Welty, 355 B.R. 177, 181 (Bankr. N.D. Cal. 2006) (applying state statutory interest to claim); In re Cardian Mortgage Corp., 122 B.R. 255, 264 (Bankr. E.D. Va. 1990) (applying statutory interest in a constructive trust action); Kelly v. Redevelopment Auth. of Allegheny Cnty., 191 A.2d 393, 395 (Pa. 1963) (awarding interest in a condemnation action); Safway Steel Scaffolds of Va., Inc. v. Coulter, 94 S.E.2d 541, 548 (Va. 1956) (applying Virginia's judgment interest statute to an accounting action); Shackelford v. Shackelford, 571 S.E.2d 917, 922 (Va. Ct. App. 2002) (ruling that statutory interest applies to divorce decrees); City of Scranton v. Int'l Ass'n of Machinists & Aerospace Workers Lodge 2305, AFL-CIO, 505 A.2d 1121, 1124 (Pa. Commw. Ct. 1986) (affirming the grant of statutory interest on an arbitration award); Donald v. Chaney, 488 A.2d 971, 977 (Md. 1985) (ruling statutory interest applied to missed payment by purchasers at a foreclosure sale).

8

awarding the 7.5% Notes interest on overdue interest at the New York statutory rate is entirely appropriate.

The Arcade court also concluded that

> "[a]llowance of a claim under Section 502 is not the same as a verdict or judgment in a plenary action in state court or bankruptcy court. The procedure for allowance of claims is intended to be summary, not involving the more protracted procedures applicable in a plenary action.

Arcade, 455 B.R. at 373. By its terms, however, N.Y. CPLR 5001(a) does not require the existence of a plenary action in order to apply. CPLR 5001(a) simply refers to "Actions in which recoverable," and CPLR § 105(b) defines "action" to include a "special proceeding," which, in New York, is a summary proceeding. Lefkowitz v. McMillen, 394 N.Y.S.2d 107, 108 (3d Dep't 1977) ("CPLR 409 (subd. (b)) requires the court to make a summary determination of a special proceeding."). Consequently, the fact that a claims allowance procedure is summary, not plenary, does not prohibit the award of interest on overdue interest pursuant to CPLR 5001 in a bankruptcy case.[11]

Moreover, N.Y. CPLR § 104 provides that:

> the civil practice law and rules shall be liberally construed to secure the just, speedy and inexpensive determination of every civil judicial proceeding.

As a result, CPLR 5001 "has been interpreted generously." N.Y. Marine & Gen. Ins. Co. v. S/S Ming Prosperity, 920 F. Supp. 416, 428 (S.D.N.Y. 1996). Accordingly, CPLR 5001 should be liberally construed to effectuate its purpose as described by the Court of Appeals in NML Capital v. Republic of Argentina.

---

[11] The Plan specifically determined Wilmington Trust's right to the payment of principal and interest owing under the 7.5% Notes Indenture and the 7.5% Notes. Plan § 1.1; 3.2(h)(ii).

Finally, the Arcade court made clear its true concern that allowance of pre-judgment interest to creditors who had not obtained a judgment "would distort equality of treatment of otherwise similarly situated creditors; equity certainly does not counsel that result." Arcade, 455 B.R. at 383. Here, however, creditors are being paid in full under the Plan so the allowance of pre-judgment interest in this case fosters, rather than detracts, from the policies of the Bankruptcy Code. See 11 U.S.C. § 1124(2).[12]

Here, the 7.5% Notes and the 7.5% Notes Indenture have been reinstated under the Plan pursuant to 11 U.S.C. § 1124(2). Accordingly, Holders of the 7.5% Notes are entitled to be compensated for any actual pecuniary loss they have suffered in order to be rendered unimpaired. NML Capital v. Republic of Argentina, 17 N.Y.3d at 266.[13] Consequently, an award of interest on overdue interest fosters the purpose of N.Y. CPLR § 5001 as well as 11 U.S.C. § 1124(2) and clearly complies with 11 U.S.C. § 1123(d).

---

[12] The Debtors' argument that payment of interest on overdue interest will somehow result in a disparity of treatment among creditors is truly ridiculous. The Plan, which the Debtors proposed, and which has been confirmed, provides for the payment of interest on overdue interest to all holders of claims in Class D3 to the extent allowed by the Court. If the Debtors believed the payment of interest on overdue interest would result in a disparity of treatment, they should not have proposed the Plan. Now that the Plan has been confirmed, however, its provisions must be followed and the interest on interest claims cannot be denied because the Debtors now feign concern over disparity of treatment of creditors who had different contractual or legal rights or chose not to assert them.

[13] The imposition of statutory interest on the unpaid interest payments compensates the bondholders for a different loss – the failure of the issuer to timely make the interest-only payments. If those interest payments had been made, the bondholders could have invested those funds, generating income. As a consequence of this default, plaintiffs are entitled to be compensated for the loss of the time value of that money – which can be accomplished only by awarding them statutory interest on the unpaid interest-only payments. Absent this component of damages, plaintiffs would be reimbursed only for their loss of use of the periodic interest payments, a separate injury.

Dated: August 5, 2014
       Wilmington, Delaware

                                      **POLSINELLI PC**

                                      /s/ *Christopher A. Ward*
                                      Christopher A. Ward (Del. Bar No. 3877)
                                      Jarrett Vine (Del. Bar. No. 5400)
                                      222 Delaware Avenue, Suite 1101
                                      Wilmington, Delaware 19801
                                      Telephone: (302) 252-0920
                                      Facsimile: (302) 252-0921
                                      cward@polsinelli.com
                                      jvine@polsinelli.com

                                      and

                                      Edward M. Fox, Esq.
                                      900 Third Avenue, 21st Floor
                                      New York, NY 10022
                                      Telephone: (212) 684-0199
                                      Facsimile: (212) 684-0197
                                      efox@polsinelli.com

                                      Counsel for Wilmington Trust, National
                                      Association, as indenture trustee