IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | ) |
|  | ) |
| Nortel Networks Inc., *et al*., | ) Chapter 11 |
|  | ) |
|  | ) Case No. 09-10138 (KG) |
|  | ) Jointly Administered |
| Debtors | ) |
|  | ) Ref. Nos. 14476, 14535, 14551, 14554 and, |
|  | ) 14556 |
|  | ) |
|  | ) |
|  | ) |

**BOCKSTAR TECHNOLOGIES LLC'S RESPONSE TO CISCO'S REQUEST TO
ENJOIN *BOCKSTAR v. CISCO* PATENT LITIGATION**

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Curtis J. Crowther (Bar No. 3238)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
(302) 571-1253 (facsimile)

COVINGTON & BURLING LLP
Philip Irwin (*pro hac vice* pending)
Dianne Coffino
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000
(212) 841-1010 (facsimile)

01:16271283.1

Bockstar Technologies LLC ("Bockstar") respectfully submits this brief in opposition to the alternative request of Cisco Systems Inc. ("Cisco") to enjoin the *Bockstar v. Cisco* patent litigation pending in the United States District Court for the District of Delaware (C.A. No. 13-2020-SLR).

**INTRODUCTION**

Cisco requests that this Court enjoin Bockstar's patent litigation pending before Judge Sue L. Robinson, even though Nortel is not a party to that case; the outcome will have no effect on Nortel's estate; Nortel has not requested any such injunction; Cisco has not even sought any third-party discovery from Nortel to date; and Judge Robinson rejected Cisco's attempt to stay the case on other grounds just a few weeks ago. Cisco's request to stay the *Bockstar v. Cisco* case is its ill-disguised attempt to circumvent Judge Robinson's order.

As Judge Easterbrook recognized in a similar case in which a Delaware bankruptcy court attempted to enjoin a pending patent litigation before him, an order enjoining the *Bockstar* litigation would be "extraordinary." *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 974 (N.D. Ill. 1992). Cisco's request should be rejected for three reasons.

*First*, this Court lacks subject-matter jurisdiction to enjoin the *Bockstar* litigation. The only asserted basis for jurisdiction is this Court's Order approving the Asset Sale Agreement for the sale of Nortel's patents to Rockstar Bidco, LP. But the Court could not, and did not, create subject-matter jurisdiction over the patent infringement dispute between Bockstar and Cisco in its Sale Order. Jurisdiction must be based on a statute. Here, the only conceivable basis for jurisdiction – actions "related to a case under title 11," 28 U.S.C. § 1334(b) – does not apply because the *Bockstar* litigation is not related to the Nortel bankruptcy under controlling Third Circuit law. Put simply, the Nortel estate long ago sold its interest in the patents at issue in the

*Bockstar v. Cisco* litigation; under controlling precedent, that fact defeats subject-matter jurisdiction.

*Second*, even if this Court had jurisdiction to stay the *Bockstar* litigation, there is no basis to grant a stay here. In the Third Circuit, litigation against non-debtors can be stayed only in "unusual circumstances," such as where the debtor is the real party defendant, where the debtor has an absolute obligation to indemnify the third-party defendants, or where an injunction is essential to the debtor's efforts to reorganize. No such circumstance exists in this case. Indeed, neither Cisco nor TWC even bother to address the controlling "unusual circumstances" test. As they do with subject-matter jurisdiction, they simply ignore the controlling law and invite this Court to issue a lawless order enjoining an unrelated litigation before another judge.

*Third*, as a procedural matter, this Court may only issue a stay after an adversary proceeding is initiated. It may not do so in response to Cisco's objections. This point is undisputed. *See* Objections to Nortel's Mot. for Relief Under Section 105(a) by Time Warner Cable Inc. and Time Warner Cable Enters. LLC ("TWC Br."), at 51, D.I. 14551 ("The parties . . . would need to request that the Court enjoin the Rockstar Litigation through an adversary proceeding pursuant to Fed R. Bankr. P. 7001(7).").

For these reasons, Cisco's request for an injunction should be denied.[1]

## BACKGROUND

### A.    Bockstar's Lawsuit Against Cisco

On December 11, 2013, Bockstar filed a lawsuit against Cisco in the United States District Court for the District of Delaware alleging infringement of six patents owned by Bockstar. The asserted patents had once been owned by various Nortel entities. The patents

---

[1] Bockstar does not take a position as to Nortel's motion for relief.

were purchased during the Nortel bankruptcy proceedings by Rockstar Bidco, LP, a consortium

of technology companies.  Rockstar Bidco, LP subsequently transferred the asserted patents to

Rockstar Consortium US, LP ("Rockstar"), which subsequently assigned them to Bockstar.

Cisco's Amended Answer and Counterclaims joined three additional parties as

counterclaim defendants (Rockstar, Constellation Technologies LLC, and Spherix Inc.) and

asserted 93 counterclaims relating to 23 additional patents, most of which were not owned by

Bockstar.  A number of other companies, all represented by Cisco's counsel, filed declaratory

judgment actions in district court in Delaware against Rockstar, Constellation, Bockstar, and

Spherix concerning some of the same patents at issue in Cisco's counterclaims.  Those cases are

also pending before Judge Robinson.  *See Charter Communications, Inc., et al. v. Rockstar*

*Consortium US LP, et al.*, C.A. No. 14-55-SLR (D. Del.); *ARRIS Group, Inc., et al. v.*

*Constellation Technologies LLC, et al.*, C.A. No. 14-114 SLR (D. Del.).

Bockstar and the counterclaim/declaratory judgment defendants moved for dismissal of

Cisco's counterclaims and the *Charter* and *ARRIS* declaratory judgment actions, primarily on the

grounds of lack of subject-matter jurisdiction, improper joinder, and failure to state a claim.

### B.    Judge Robinson's Rejection of Cisco's Request for a Stay in October 2014

During a scheduling conference and hearing on the motions to dismiss before Judge

Robinson on October 8, 2014, Cisco (along with the other aligned parties also represented by

Cisco's counsel) sought a stay of the claims originally asserted by Bockstar in favor of the

litigation of other issues raised by Cisco's counterclaims and the declaratory judgment actions.

By Order dated October 10, 2014, Judge Robinson rejected Cisco's effort to stay Bockstar's

claims, ruling that the lawsuit "shall proceed consistent with my case management procedures."

Exh. A ¶ 1.  Judge Robinson found Cisco's arguments to the contrary to be unpersuasive because

its "agenda is so transparent."  Exh. A ¶ 1 n.1.  With a few exceptions, Judge Robinson also

denied the pending motions to dismiss without prejudice, but only after staying the counterclaims that were the subject of those motions.

The transparency of Cisco's tactic of delay and avoidance of litigation of the six Bockstar patents was underscored during the October 8 hearing when Cisco's counsel alluded to a *second* basis for a stay that it would seek, *i.e.*, that Cisco has filed for *inter partes* review ("IPR") by the Patent and Trademark Office of four of the six Bockstar patents. In response, Judge Robinson indicated that she disfavored such motions. Exh. B at 68:20-24.

The Court subsequently held a further scheduling conference to set a case schedule. On October 29, 2014, the Court "so ordered" the parties' joint proposed schedule. Exh. C. Discovery has begun pursuant to that schedule.

### C.     Cisco's Request for a Stay from This Court

Having failed in its bid to win a stay from Judge Robinson on October 10, Cisco requested a stay from this Court just four days later on October 14. The pretext for this latest request is Nortel's motion seeking relief concerning certain third-party discovery requests served in *other* lawsuits. Time Warner Cable Inc. and Time Warner Cable Enterprises LLC (together, "TWC") objected to Nortel's request, but argued in the alternative that this Court should stay the litigation against TWC in the Eastern District of Texas. *See* TWC Br. at 7. Google also filed objections to Nortel's motion, but did *not* seek a stay of the patent litigation pending against it.

Cisco, which is represented by the same counsel as TWC, joined in TWC's request for a stay. As Cisco acknowledges, however, *neither Cisco nor any other party has sought discovery from Nortel* in the *Bockstar* litigation or in any other litigation pending before Judge Robinson. Instead, Cisco asserts that it "will" serve a subpoena on Nortel "in the coming months" and "anticipates" deposing several former Nortel employees. *See* Objections to Nortel's Mot. for Relief Under Section 105(a) by Cisco Sys., Inc. ("Cisco Br."), at 3, D.I. 14556.

To date, Cisco has not raised any of these issues with Judge Robinson.  In fact, Cisco has not even informed her of its request that a different court stay a matter pending before her.

ARGUMENT

I.      **This Court Lacks Subject-Matter Jurisdiction to Enjoin the *Bockstar* Litigation.**

To enjoin Bockstar from pursuing litigation against Cisco, this Court must have subject-matter jurisdiction over the patent infringement claims that are the subject of those litigations. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 224-25 (3d Cir. 2004) (requiring independent jurisdiction over non-derivative claims against non-debtors).  It does not.  Cisco's request for a stay must be directed to the Court having jurisdiction:  Judge Robinson.  Cisco's decision not to bring this request to Judge Robinson is not surprising, given that she rejected Cisco's "transparent" efforts to obtain a stay on other grounds just a few weeks ago.  This Court should not reach a different result on the flimsy, pretextual basis asserted by Cisco here.

A.      **The Asset Sale Agreement Does Not Confer Jurisdiction on This Court.**

The only jurisdictional basis for the injunction cited by TWC/Cisco is "the Court's authority to enforce its own orders and its express reservation of jurisdiction over and power to provide remedies to the Asset Sale Agreement . . . ."  TWC Br. at 49.  The Court's Order approving the Asset Sale Agreement does not give the Court the necessary jurisdiction.

*First*, an order of the court cannot not serve as a predicate for subject-matter jurisdiction; only a congressional statute can do so.  *See Resorts Int'l, Inc. v. Price Waterhouse & Co.*, 372 F.3d 154, 161 (3d Cir. 2004) ("Retention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction.  But neither the bankruptcy court nor the parties can write their own jurisdictional ticket.  Subject matter jurisdiction 'cannot be conferred by consent' of the parties.") (quoting *Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 854 (3d Cir. 1996)).

*Second*, TWC/Cisco stretch the retention of jurisdiction provision in the Sale Order well beyond its plain meaning.  The Court retained jurisdiction only for matters relating to implementation of the Sale Order and Sale Agreement—*e.g.*, to interpret the Sale Order and/or the Sale Agreement, to compel performance under the Sale Agreement, and to resolve disputes arising under the Sale Agreement.  *See* Order Authorizing & Approving the Sale of Patent & Related Assets ¶ 39, D.I. 5935.  The Court did not retain jurisdiction over disputes between the owner of the patents and third parties that infringe them.

### B.    The Court Does Not Have "Related To" Jurisdiction Under Section 1334(b).

Congress has conferred subject-matter jurisdiction on bankruptcy courts for four types of cases or proceedings:  (1) cases under title 11; (2) civil proceedings arising under title 11; (3) civil proceedings arising in a case under title 11; and (4) civil proceedings "related to" a case under title 11.  *See* 28 U.S.C. § 1334(a)-(b).  The patent infringement claims at issue here obviously are not a case under the Bankruptcy Code; they do not arise under the Bankruptcy Code or in a case under the Bankruptcy Code; and, as discussed below, they are not "related to" a proceeding under title 11.

While "related to" jurisdiction is broad, it has its limits.  *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995).  Under Third Circuit precedent, for a bankruptcy court to exercise "related to" jurisdiction over a non-bankruptcy civil proceeding, it must conclude that "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  *CIT Commc'ns Fin. Corp. v. Level 3 Commc'ns, LLC*, 483 F. Supp. 2d 380, 385-86 (D. Del. 2007) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)); *see also In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991) (stating that "related to" jurisdiction requires possibility that the proceeding "may impact on the debtor's rights,

liabilities, options or freedom of action or the handling and administration of the bankrupt estate") (citation and internal quotation marks omitted).

Although it is their burden to do so,[2] TWC/Cisco fail even to argue that this Court has "related to" jurisdiction over the pending patent litigations.  To the contrary, TWC acknowledges that the action in which it is a named defendant is "an *unrelated* patent litigation."  TWC Br. at 5 (emphasis added).  The outcome of the patent litigations will have no impact on this bankruptcy estate:  the Debtors sold their interests in the patents in issue; the Debtors are not parties to the litigations, and the Debtors cannot be characterized as the real parties in interest (*e.g.* the third-party defendant's liability is derivative of that of the debtor's).  In such cases, the Third Circuit has held that there is no subject-matter jurisdiction over the third-party litigation.  *See W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 591 F.3d 164, 171-73 (3d Cir. 2009) (potential indemnification claims against the debtor did not trigger related to jurisdiction for purposes of extending stay to non-debtor actions); *Combustion Eng'g*, 391 F.3d at 227-38 (finding that there was no subject-matter jurisdiction over actions against non-debtor affiliates); *see also Adams v. Prudential Sec., Inc. (In re Found. for New Era Philanthropy)*, 201 B.R. 382, 394-97 (Bankr. E.D. Pa. 1996) (holding that potential indemnification claim against debtor insufficient for exercise of related to jurisdiction over non-debtor action).

Nor has Cisco demonstrated that third-party discovery of Nortel will significantly impact "the handling and administration" of the estate, as required for the exercise of "related to" jurisdiction.  In the *Bockstar* case, no third-party discovery requests have been propounded to the Debtors.  And TWC has gone to great lengths to demonstrate that the third-party discovery it

---

[2] *CIT Commc'ns*, 483 F. Supp. 2d at 387.

seeks of the Debtors is narrowly tailored to not burden the estate and will not impede any reorganization efforts. *See* TWC Br. at 19, 36, 38.

Finally, the Debtors' prior ownership of the patents at issue in the infringement suits also does not confer "related to" jurisdiction over the Bockstar action pending before Judge Robinson, as TWC/Cisco incorrectly suggest. *See* TWC Br. at 51 ("Given [that] . . . Nortel was the origination point of the patents-in-suit and the steward of the patents for many years-the Court should extend the automatic stay to the Rockstar litigation . . . ."). Courts have concluded that a bankruptcy court does not have "related to" jurisdiction over non-debtor litigation involving assets sold by a debtor to a third party. *See In re Hall's Motor Transit Co.*, 889 F.2d 520, 522-23 (3d Cir. 1989) ("The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate."); *CIT Commc'ns*, 483 F. Supp. 2d at 388-89 (finding that the ties between the estate and a state court action seeking to enforce the post-sale obligations of the buyer of a lease previously owned by the debtor were too attenuated to confer related-to jurisdiction over the litigation); *accord In re Lemco Gypsum, Inc.*, 910 F.2d 784, 789 (11th Cir. 1990) ("The fact that property was once owned by a bankrupt does not supply federal jurisdiction of all future disputes concerning the property."); *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1186 (7th Cir. 1986) ("That some land was once owned by a bankrupt does not supply federal jurisdiction of disputes concerning that land."). Otherwise, as the Third Circuit has noted, "anyone who could trace his title to a bankrupt would invoke federal jurisdiction to settle disputes affecting that property." *Hall's Motor Transit Co.*, 889 F.2d at 523 (citations and internal quotation marks omitted).

The sale of the Debtors' patents removed these assets from the bankruptcy estate and bankruptcy court jurisdiction.

## II.    There Is No Basis To Extend the Automatic Stay to Bockstar's Action Against Cisco.

Even if this Court were to conclude that it has subject-matter jurisdiction to entertain Cisco's request that the *Bockstar* action be enjoined, there is no basis for issuance of the requested injunction.  As Judge Easterbrook recognized, "[f]or one federal court to issue an injunction forbidding litigation in another is extraordinary, given principles of comity among coordinate tribunals." *Mahurkar Patent Litig.*, 140 B.R. at 974.  Cisco's request for a stay here fails because (1) there are no "unusual circumstances" present to justify such extraordinary relief under the bankruptcy statutes; and (2) Cisco fails to demonstrate the requirements for a preliminary injunction.

### A.    No "Unusual Circumstances" Exist To Justify Extension of the Automatic Stay to Bockstar's Action Against Cisco.

TWC/Cisco argue that a stay of the *Bockstar* litigation is authorized by Sections 362(a) and/or 105(a) of the Bankruptcy Code.  *See* TWC Br. at 51.  The automatic stay of Section 362(a) does not apply to non-debtor third parties.  *See McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997) ("[T]he clear language of section 362(a) stays actions only against a 'debtor.'").  To enjoin the prosecution of claims against non-debtor third parties, courts rely upon the equitable powers granted them under section 105(a) of the Bankruptcy Code.  *See, e.g.*, *In re Residential Capital*, 480 B.R. 529, 534 (Bankr. S.D.N.Y. 2012); *Mother African Union Methodist Church v. Conference of AUCMP Church (In re Conference of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207, 214-15 (Bankr. D. Del. 1995).  But in the Third Circuit, stays of claims against non-debtor third parties are granted only in "unusual circumstances." *McCartney*, 106 F.3d at 510.

Unusual circumstances exist where "there is such an identity between the debtor and the third party defendant that the debtor may be said to be the real party defendant and that a

judgment against the third-party defendant will in effect be a judgment . . . against the debtor" or

where an injunction "is essential to the debtor's efforts of reorganization." *Id.* (citations

omitted); *Gillman v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 171 B.R. 475,

479 (D. Del. 1993). Unusual circumstances have been found where (a) the debtor was the real

party defendant;[3] (b) there was a risk that the debtor would be bound by a judgment under

collateral estoppel principles;[4] (c) the debtor had an absolute obligation to indemnify the third-

party defendants;[5] or (d) the third-party defendants were essential to the debtor's reorganization

efforts.[6]

    In the absence of a showing of at least one of these unusual circumstances, courts have

had no difficulty denying requests for extension of the automatic stay to non-debtor litigation.

*See, e.g.*, *Stanford v. Foamex L.P.*, No. 07-4225, 2009 WL 1033607, at *2-3 (E.D. Pa. Apr. 15,

2009) (refusing to extend the stay because third-party defendants' liability was independent, not

derivative, of the debtor's and defendants were not essential to debtor's reorganization efforts);

*Hess Corp. v. Performance Texaco, Inc.*, No. 3:08-CV-1426, 2008 WL 4960203, at *3-4 (M.D.

Pa. Nov. 19, 2008) (finding, in the absence of the debtor's request for a stay extension, that no

unusual circumstances existed for extension of stay to actions against non-debtor defendants).

---

[3] *See, e.g.*, *Continental Airlines*, 177 B.R. at 479-81 (debtor was "the real party defendant to those actions and . . . this class action litigation was commenced against parties other than [debtor] solely in an effort to circumvent the automatic stay"); *In re Midway Games, Inc.*, 428 B.R. 327, 334 (Bankr. D. Del. 2010) (debtors were the real target of the litigation).

[4] *See, e.g.*, *SN Liquidation, Inc. v. Icon Int'l, Inc. (In re SN Liquidation, Inc.)*, 388 B.R. 579, 585 (Bankr. D. Del. 2008) (finding of liability against non-debtor management could have a preclusive effect against the debtors); *Am. Film Techs., Inc. v. Taritero (In re Am. Film Techs., Inc.)*, 175 B.R. 847, 855 (Bankr. D. Del. 1994) (same).

[5] *See, e.g.*, *In re Phila. Newspapers, LLC*, 407 B.R. 606, 616 (E.D. Pa. 2009) (debtors had indemnification obligations to officer defendants); *Midway Games*, 428 B.R. at 334 (same).

[6] *See, e.g.*, *Phila. Newspapers*, 407 B.R. at 616 (suit against directors, officers and employees impeded debtors' reorganization efforts).

TWC/Cisco have not made (and cannot make) a showing of "unusual circumstances" here. The Debtors are not the real parties in interest in the suit; there is no risk that a judgment in the *Bockstar* action will have collateral estoppel effect or will result in indemnity claims against the Debtors; and Cisco is not essential or even relevant to administration of the estate (which is being liquidated, not reorganized).

The sole basis provided by TWC/Cisco for the injunctive relief is their need for discovery from Nortel. But courts have held this *not* to be a basis for a stay of non-debtor litigation. *See Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (reversing stay extension order, notwithstanding arguments that defendants would have difficulty obtaining discovery from debtor); *Stanford*, 2009 WL 1033607, at *4 ("The need for discovery [from the debtor] has not been recognized as an 'unusual circumstance.' Indeed, if the alleged need for discovery was sufficient to justify extending the stay to non-bankrupt parties, courts would need to extend the stay in most multi-party actions, which is contrary to the limited nature of the 'unusual circumstances' exception."); *cf. Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, No. 13 Civ. 4650, 2014 WL 4783008, at *4-5 (S.D.N.Y. Sept. 25, 2014) (denying defendant's request to extend the stay in the absence of unusual circumstances but leaving it to the bankruptcy court to decide whether to stay or limit third-party discovery of the debtor).[7]

B.     **Cisco Cannot Demonstrate That It Is Entitled To a Preliminary Injunction.**

In addition to demonstrating "unusual circumstances," which are not present here, Cisco bears the burden of showing that a preliminary injunction should be issued under Section 105(a)

---

[7] In the *Residential Capital* case, upon which both Nortel and TWC rely heavily, the debtors had sought to enjoin the non-debtor litigation because of the burden of discovery in a separate adversary proceeding. That request was denied by the district court following withdrawal of the reference. A copy of the district court's unpublished decision in *Residential Capital* is annexed as Exhibit D hereto.

of the Bankruptcy Code.  *See In re Phila. Newspapers, LLC*, 407 B.R. 606, 616 (E.D. Pa. 2009) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997))).  Cisco has not met this burden.

To obtain injunctive relief under section 105(a), Cisco must demonstrate (1) a reasonable likelihood of success, which, in the bankruptcy context, means the debtor's ability to successfully reorganize; and (2) that it is likely to suffer irreparable harm if an injunction does not issue.  *Phila. Newspapers*, 407 B.R. at 617.  If these two threshold prerequisites are met, courts will weigh the harm an injunction poses to the plaintiff against any harm caused to the third-party defendant by denial of injunctive relief, and consider whether granting the relief would serve the public interest.  *Id.*

Here, reorganization of the Debtors is not a possibility, and the Debtors' assets have been substantially liquidated.  All that remains is allocation of the proceeds of those assets among the Debtors and their creditor constituencies.  Thus, the first requirement for the issuance of an injunction cannot be met.

As to the second requirement, neither Nortel nor Cisco will suffer irreparable harm.  As discussed above, Nortel will not suffer any direct consequences from the outcome of this litigation—no judgment against it, no collateral estoppel consequences, and no indemnity obligations.  Nor is a stay essential to Nortel's reorganization efforts—Nortel is in liquidation proceedings.  Moreover, Cisco has not even served a third-party subpoena on Nortel.  If and when it does, there may be any number of less draconian measures available to address any issues of scope and burden that such a subpoena would raise.  Without those events even having occurred yet, irreparable harm to either Nortel or Cisco is purely speculative.

01:16271283.1

13

Even if Cisco could satisfy these two threshold requirements for the issuance of an injunction, the harm to Bockstar from an injunction far outweighs any harm to Nortel or to Cisco from the denial of injunctive relief.  Given that Cisco has not served any subpoena on Nortel yet, denial of an injunction now causes no harm whatsoever.  Even after Cisco serves a subpoena, Nortel and Cisco are not harmed because, as described above, there are any number of avenues for Cisco to obtain the discovery it needs to defend the litigation, including discovery from Bockstar and appropriate court orders concerning the scope and timing of discovery from Nortel. On the other hand, an injunction will significantly harm Bockstar by delaying the prosecution of its claims.  This case has already been pending for almost a year, during which time Cisco has engaged in numerous dilatory tactics.  Bockstar is entitled to a prompt resolution of its patent infringement claims pursuant to the schedule ordered just last week by Judge Robinson.  Finally, the public interest in promoting market interest in asset sales in bankruptcy will not be served by allowing a third-party litigant to interfere with the buyer's realization and protection of the value of the assets acquired through a stay of the buyer's enforcement action.

III.    **Cisco's Request for an Injunction is Procedurally Defective.**

As TWC concedes, a stay of the Bockstar litigation must be made "through an adversary proceeding pursuant to Fed R. Bankr. P. 7001(7)."  TWC Br. at 51.  Cisco's extraordinary request appears for the first time in the oppositions filed to the Debtors' motion, and it has not filed an adversary proceeding.  Its request should therefore be denied as procedurally defective.

As explained above, a stay of an action against a non-debtor third party must rest on Section 105(a).  The law is clear, as TWC concedes, that such an injunction under section 105(a) must be sought by the filing of a complaint, commencing an adversary proceeding.  *See* Fed. R. Bank. P. 7001(7) ("The following are adversary proceedings: . . . (7) a proceeding to obtain an injunction or other equitable relief . . . .");  *Residential Capital*, 480 B.R. at 538 ("Where an

injunction is sought by a debtor under section 105 to stay actions against non-debtors, the relief must be sought through an adversary proceeding under Fed. R. Bankr. P. 7001."); *All Seasons Resorts, Inc. v. Milner (In re All Seasons Resorts, Inc.)*, 79 B.R. 901, 903-04 (Bankr. C.D. Cal. 1987) ("[T]he extension of § 362 . . . requires the filing of an appropriate adversary proceeding under § 105 and § 362 to achieve the desired result.").

Cisco has not filed a motion, much less commenced an adversary proceeding, seeking an injunction.  This Court should not entertain its improper request for injunctive relief.

Finally, even if the Court were to agree with Cisco's request for an injunction, it should issue proposed findings of fact and conclusions of law, because jurisdiction (if the Court concludes that it exists) can only be premised on "related to" jurisdiction, as explained above. *See* 28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 9033(d).

## CONCLUSION

For the foregoing reasons, Cisco's request for an injunction of the *Bockstar* litigation should be denied.  Bockstar does not take a position concerning the relief requested by Nortel in its motion.

Dated:  November 4, 2014

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


By: _____/s/  Curtis J. Crowther_____
   Curtis J. Crowther (Bar No. 3238)
   Rodney Square
   1000 North King Street
   Wilmington, DE 19801
   (302) 571-6600
   (302) 571-1253 (facsimile)

   - and -

   COVINGTON & BURLING LLP
   Philip Irwin (*pro hac vice* pending)
   Dianne Coffino
   The New York Times Building
   620 Eighth Avenue
   New York, NY 10018-1405
   (212) 841-1000
   (212) 841-1010 (facsimile)

   Attorneys for Bockstar Technologies, LLC

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOCKSTAR TECHNOLOGIES, | ) |
| Plaintiff, | ) |
| v. | ) Civ. No. 13-2020-SLR |
| CISCO SYSTEMS, INC., | ) |
| Defendant. | ) |
| CISCO SYSTEMS, INC., | ) |
| Counterclaim-Plaintiff, | ) |
| v. | ) |
| BOCKSTAR TECHNOLOGIES, LLC, et al., | ) |
| Counterclaim-Defendants. | ) |
| CHARTER COMMUNICATIONS INC., et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civ. No. 14-55-SLR |
| ROCKSTAR CONSORTIUM US LP, et al., | ) |
| Defendants. | ) |
| ARRIS GROUP, INC., et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civ. No. 14-114-SLR |
| CONSTELLATION TECHNOLOGIES, LLC, et al., | ) |
| Defendants. | ) |

## ORDER

At Wilmington this 10th day of October, 2014, having conferred with counsel;

IT IS ORDERED that the above captioned cases shall proceed as follows:

1. The first filed of the above captioned lawsuits, *Bockstar Technologies LLC v. Cisco Systems, Inc.*, Civ. No. 13-2020 ("*Bockstar*"), shall proceed consistent with my case management procedures.[1] A telephonic scheduling conference shall be conducted in this case on **Wednesday, October 22, 2014 at 1:00 p.m.**, with counsel for plaintiff initiating the call.

2. The remaining declaratory judgment lawsuits (and the declaratory judgment counterclaims filed by Cisco Systems, Inc. in Civ. No. 13-2020) (collectively referred to as the "DJ cases" brought by the "DJ plaintiffs") shall be stayed pending further order of the court, and all pending motions to dismiss denied without prejudice to renew,[2] with the following exceptions:

a. The CableLabs DOCSIS and PacketCable claims brought by the DJ plaintiffs that implicate potentially dispositive licensing issues with respect to five

---

[1] Having reviewed more closely the case management proposal by the DJ plaintiffs, I find it ironic that, of the 7 proposed "technical groupings" for litigation, 4/6 patents asserted in *Bockstar* are not listed until "group 3," with the remaining 2 patents not listed until "group 7." Although the DJ plaintiffs complain that the original *Bockstar* patents involved "disparate products," the 3 additional Bockstar patents asserted by Cisco Systems, Inc. involve yet another, disparate technical group ("group 4"). While grouping patents by technologies for pretrial and trial purposes generally appeals to my sense of order, and despite the power apparently given to certain business entities by the Federal Circuit's latest foray into discretionary matters of case management, the DJ plaintiffs fail to persuade in this instance when their agenda is so transparent.

[2] D.I. Nos. 43 and 47 in Civ. No. 13-2020-SLR; D.I. 58 in Civ. No. 14-55-SLR; D.I. Nos. 28 in Civ. No. 14-114-SLR

patents asserted in the DJ cases[3] shall be addressed on a schedule to be determined

at a telephonic status conference to be conducted on **Wednesday, October 22, 2014**

**at 2:00 p.m.**, with counsel for Cisco Systems, Inc. initiating the call.[4]

         b. I will decide in due course the motion to dismiss filed by counterclaim

defendant Spherix Incorporated.

United States District Judge

---

[3]U.S. Patent Nos. 5,761,197; 6,130,893; 6,321,253; 5,471,474; and 6,128,298.

[4]Given the relationship between Cisco and ARRIS (as suppliers of the accused products) and their customers, the enforcement strategies attributed to the related group of patent owners at bar, and the argument conducted on October 8, 2014, I am satisfied that I have jurisdiction to resolve at least this specific matter in the context of these DJ cases, even in the absence of direct threats against the suppliers/DJ plaintiffs. See Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 906 (Fed. Cir. 2014).

EXHIBIT B

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             IN AND FOR THE DISTRICT OF DELAWARE
                             - - -
 3    BOCKSTAR TECHNOLOGIES LLC,     :   CIVIL ACTION
                       Plaintiff,    :
 4                                   :
          vs.                        :
 5                                   :
      CISCO SYSTEMS, INC.,           :
 6                   Defendant.      :   NO. 13-2020 (SLR)
      ---------------------------    :
 7    CISCO SYSTEMS, INC.,           :
                       Plaintiff,    :
 8                                   :
          vs.                        :
 9                                   :
      BOCKSTAR TECHNOLOGIES LLC,     :
10    CONSTELLATION TECHNOLOGIES,    :
      LLC, ROCKSTAR CONSORTIUM US    :
11    LP, AND SPHERIX                :
      INCORPORATED,                  :
12                   Defendants.     :
      ---------------------------    :
13    CHARTER COMMUNICATIONS,        :   CIVIL ACTION
      INC., et al.,                  :
14                   Plaintiffs,     :
                                     :
15        vs.                        :
                                     :
16    ROCKSTAR CONSORTIUM US LP,     :
      et al.,                        :
17                   Defendants.     :   NO. 14-055 (SLR)
18

19

20                            - - -

21                     Wilmington, Delaware
                       Wednesday, October 8, 2014
22                     3:00 o'clock, p.m.

23                            - - -

24    BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J.

25                            Valerie J. Gunning
                              Official Court Reporter
```

1

**ARRIS GROUP, INC., ARRIS**    :    **CIVIL ACTION**

2    **ENTERPRISES, INC., ARRIS**    :
     **SOLUTIONS, INC., AND**        :

3    **GENERAL INSTRUMENT**         :
     **CORPORATION,**             :

4                           :
              **Plaintiffs,**   :

5                           :
        **vs.**               :

6                           :
     **CONSTELLATION TECHNOLOGIES**  :

7    **LLC, and ROCKSTAR**         :
     **CONSORTIUM US LP,**       :

8                           :
            **Defendants.**   :    **NO. 14-114 (SLR)**

9

10                        **- - -**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    APPEARANCES:

2

3                    YOUNG CONAWAY STARGATT & TAYLOR LLP
                     BY:  ADAM W. POFF, ESQ.

4
                              -and-
5

6                    COVINGTON & BURLING
                     BY:  ROBERT FRAM, ESQ.,
7                         WINSLOW TAUB, ESQ. and
                          PHILLIP IRWIN, ESQ.
8

9                         Counsel for Plaintiff
                          Bockstar Technologies, LLC
10

11
                     FARNAN LLP
12                   BY:  BRIAN FARNAN, ESQ.

13
                              -and-
14

15                   IRELL & MANELLA
                     BY:   JASON SHEASBY, ESQ.
16

17                        Counsel for Defendants
                          Rockstar Technologies LLC and
18                        Constellation Technologies LLC

19

20                   COZEN & O'CONNOR
                     BY:  DAMIEN TANCREDI, ESQ.
21

22                            -and-

23

24

25

```
 1    APPEARANCES (Continued):

 2
                KENYON & KENYON
 3              BY:  LEWIS V. POPOVSKI, ESQ. and
                     KSENIA TAKHISTOA, ESQ.
 4

 5                   Counsel for Defendant
                     Spherix
 6

 7
                MORRIS, NICHOLS, ARSHT & TUNNELL LLP
 8              BY:  JACK B. BLUMENFELD, ESQ. and
                     RODGER D. SMITH II, ESQ.
 9

10                     -and-

11
                DESMARAIS LLP
12              BY:  JOHN M. DESMARAIS, ESQ.,
                     JONAS R. McDAVIT, ESQ.,
13                   AMEET MODI, ESQ. and
                     KARIM OUSSAYEF, ESQ.
14                   (New York, New York)

15
                     Counsel for Defendants
16                   Cisco Systems, Inc., ARRIS and
                     Charter Communications, Inc.
17

18
                KING & SPALDING.
19              BY:  SCOTT T. WEINGAERTNER, ESQ. and
                     ALEX YACOUB, ESQ.
20

21                   Counsel for Defendant
                     ARRIS
22

23

24

25
```

1    APPEARANCES (Continued):

2

                MARSHALL, GERSTEIN & BORUN
3               BY:   THOMAS L. DUSTIN, ESQ.

4
                        Counsel for Charter Communications, Inc.
5

6                           -  -  -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    PacketCable and CableLabs."

2              So then just to jump ahead, just to remind you

3    of something you saw earlier, here's an assertion from

4    Rockstar against the Cisco and ARRIS customers.  This is the

5    WOW! case, for instance.  They're asserting these three

6    patents against DOCSIS and PacketCable.  These are Nortel

7    patents.  Nortel was a part of the royalty-free patent pool.

8    And I could show you time and again like this.  Right?

9              THE COURT:  Well, actually, you have.

10             MR. DESMARAIS:  I know, but I could do even

11   more, but I won't.

12             So it's a simple issue.  It's a contract issue.

13   Do these patents, these five patents that I've articulated,

14   are they captured by these license agreements?  If they are,

15   they are zero royalty.  We can take those five out of the

16   case.  It has nothing do with the Texas case.  That issue

17   will not be resolved in the Texas case.  It's impossible for

18   it to be resolved in the Texas case.

19             So that's what I would propose.  So I would stay

20   the rest of the case, take this up.  We'll get to the bottom

21   of it.  And then when we're done, we can have another

22   scheduling conference.  We'll see what happened in Texas.

23             Another thing your Honor should be aware of.  We

24   filed a lot of IPRs in the Patent Office on a lot of these

25   patents.  Not on these.

```
1              THE COURT:  What a surprise.

2              MR. DESMARAIS:  Yes.  Not on these.

3              THE COURT:  What a surprise.

4              MR. DESMARAIS:  So the proposal here is if you

5    stay -- you know, when we finish with this, the IPRs will

6    have moved along, Texas will have moved along.  We should

7    have a scheduling conference at the end of the resolution of

8    this issue and say, okay.  What's left?  What has Texas

9    done?  Have you guys worked it out yet, et cetera.

10             THE COURT:  And when you say stay -- when I said

11   stay, I meant stay all the DJ actions except for the

12   original scope of the Bockstar case.  Are you meaning that

13   Bockstar shouldn't have the opportunity to go forward on its

14   initial patents when, in fact, they don't seem to be

15   included in this whole group of other patents?

16             MR. DESMARAIS:  Yes.  So for that question, I

17   would like to step back a little bit in the binder I gave

18   you and tell you why that does not make sense.

19             If you turn back --

20             THE COURT:  Why what doesn't make sense?  For us

21   to go forward?

22             MR. DESMARAIS:  Exactly.  Right.

23             So if you go back to slide 11 in the little, the

24   little binder I gave you --

25             THE COURT:  Yes.  I am still in the little
```

1    binder.

2              MR. DESMARAIS:  So is that the one that starts

3    the original Bockstar patents.

4              It's not up on the screen.  Can you switch over

5    to it?

6              THE COURT:  I have it.

7              MR. DESMARAIS:  We'll switch over to it.

8              So here are the original Bockstar patents.  It's

9    page 11.  And if you look at them, they involve disparate

10   products that overlap with the other patents in the case.

11   Right?  So they involve, for instance, Cisco switches, but

12   also Cisco routers and also Cisco telephone equipment.  That

13   same equipment is involved in the Constellation case in

14   Texas.

15             THE COURT:  Equipment.  Not the same patent, the

16   same equipment?

17             MR. DESMARAIS:  Yes.  Not the same patents.

18             THE COURT:  All right.

19             MR. DESMARAIS:  But it's the same equipment.

20   So, moreover, on those patents, four of those have pending

21   IPRs at the Patent Office, so we were going to ask you for a

22   stay for independent reasons.

23             THE COURT:  Well, you know how I love those, how

24   often I grant them.

25             MR. DESMARAIS:  Yes.  So when you look at that,

1    so I would suggest, your Honor, that is not a good use of

2    our resources because this mess, if you want to call it

3    that, is one dispute between on the one side, how do Cisco

4    and ARRIS products work, and on the other side, how do they

5    work vis-a-vis the Nortel patents.  The fact that Rockstar

6    has decided days before the litigation to break up and give

7    some to Bockstar and some to Spherix and some to

8    Constellation doesn't change the scope of the dispute.

9                    THE COURT:  Right.  I mean, I agree.  It does

10   not change the scope of the dispute, but the scope of the

11   dispute is still, as far as I see it, is as follows.  I

12   frankly don't care who the plaintiff is.  The plaintiff has

13   patents that are not being asserted in another jurisdiction

14   and are being asserted against a supplier as opposed to a

15   cable company, and everyone agrees that suppliers should be

16   taking the laboring oar in infringement cases anyway.  But

17   just the fact that they're different patents, in my years, I

18   wouldn't necessarily stay or transfer anything else when

19   there's a different patent.

20                    MR. DESMARAIS:  I totally get that.  Let me

21   explain why you might do it here.  I understand your point.

22   It's well-taken and it's normal, but I do have one

23   suggestion why you might do it here.

24                    THE COURT:  All right.  Someone is standing

25   up.

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOCKSTAR TECHNOLOGIES LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 13-2020 (SLR) |
| | ) |
| CISCO SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |
| CISCO SYSTEMS, INC., | ) |
| | ) |
| Counterclaim-Plaintiff, | ) |
| | ) |
| v. | ) |
| BOCKSTAR TECHNOLOGIES LLC, | ) |
| CONSTELLATION TECHNOLOGIES LLC, | ) |
| ROCKSTAR CONSORTIUM US LP and | ) |
| SPHERIX INCORPORATED, | ) |
| | ) |
| Counterclaim-Defendants. | ) |

## REVISED [PROPOSED] CASE SCHEDULING ORDER

At Wilmington this __ day of _____ 2014, the parties having satisfied their obligations under Fed. R. Civ. P. 26, as described in the Court's order for a scheduling conference; and the Court having conducted its case management conference pursuant to Fed. R. Civ. P. 16 and D. Del. LR 16.1(a) and (b);

IT IS ORDERED that:

On October 10, 2014, this Court ordered that the above-captioned case would proceed at this time on two sets of claims: (1) Counts 1-6 of Bockstar Technologies LLC's ("Bockstar") Complaint, Cisco Systems, Inc.'s ("Cisco") defenses thereto, Cisco's Counterclaims 1-6 and 30-35, and Bockstar's defenses thereto (such claims, defenses,

counterclaims and counter-defenses hereinafter referred to as the "**Original Case**"); and (2) licensing issues raised in counterclaims against Constellation Technologies LLC and Rockstar Consortium US LP relating to the DOCSIS and PacketCable patents and the accused products with respect to five patents owned by those counterclaim-defendants (such claims, defenses, counterclaims, and counter-defenses hereinafter referred to as the "**Licensing Case**"). (D.I. 94) The schedule below pertains only to the **Original Case**.

      **1.**     **Fact Discovery.**

      a)     Completion of fact discovery:  All fact discovery shall be commenced in time to be completed by **November 9, 2015**.

      b)     **Management.**  Consistent with this order and the Court's order for a scheduling conference, all discovery disputes, and the overall management of discovery, are referred to a Magistrate Judge, pursuant to 28 U.S.C. § 636.

      c)     **Initial Disclosures.**

      (1)     The parties shall exchange the following information identified at the Rule 26(f) conference in the **Original Case** by **October 29, 2014**:  **The information required in Fed. R. Civ. P. 26(a)(1)**.  The parties shall exchange initial disclosures pursuant to paragraph 3 of the Delaware Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI") on **December 14, 2014**, unless prior to that time the parties agree to an alternative stipulation regarding discovery, including ESI, in which case the requirements and deadline(s) in the alternative stipulation shall apply**.**

      (2)     In the **Original Case**, on or before **November 21, 2014**, Bockstar shall identify the accused product(s) and its damages model, as well as the asserted patent(s) the

accused product(s)[1] allegedly infringe(s), and shall produce the file history for each asserted patent;

(3)     In the **Original Case**, on or before **January 14, 2015**, Cisco shall produce to Bockstar the core technical documents related to the accused product(s) identified on November 7, 2014, sufficient to show how the accused product(s) work(s), including but not limited to non-publicity available operation manuals, product literature, schematics, and specifications.  Cisco shall also produce sales figures for such accused product(s).

(4)     The Magistrate Judge shall thereafter conduct a status conference or conferences to ensure that the initial exchanges have been meaningful.

(5)     In the **Original Case**, Bockstar shall produce an initial claim chart relating each known accused product to the asserted claims each such product allegedly infringes on or before **February 27, 2015**.

(6)     In the **Original Case**, Cisco shall produce its initial invalidity contentions for each asserted claim, as well as the known related invalidating references, on or before **April 10, 2015**.

d)     **Document production.**

(1)     In the **Original Case**, a maximum of **100** requests for production by each party to any other party.

(2)     Discovery of paper and electronic documents shall be completed on or before **July 30, 2015.**

---

[1]     Including accused methods and systems.

e)     **Depositions.**

(1)     No deposition in the **Original Case** (other than those noticed under Fed. R. Civ. P. 30(b)(6)) shall be scheduled prior to the completion of document production in the Original Case; and no deposition relating to remaining litigation on any additional counterclaims (other than those noticed under Fed. R. Civ. P. 30(b)(6)) shall be scheduled prior to the completion of document production relating to such counterclaims.

(2)     For each case, the number of depositions (and any other issues related to depositions) shall be addressed by the Magistrate Judge no later than the completion of document production in that case.

f)     **Written Discovery.**

(1)     In the **Original Case**, a maximum of **30** interrogatories by each party to any other party.

(2)     In the **Original Case**, final infringement contentions[2] shall be due no later than **December 7, 2015**.

(3)     In the **Original Case**, final invalidity contentions shall be due no later than **December 21, 2015.**

(4)     In the **Original Case**, a maximum of **75** requests for admission by each party to any other party, on matters other than the authenticity of documents.

---

[2]     The adequacy of all such contentions shall be judged by the level of detail each party provides; i.e., the more detail a party provides, the more detail a party shall receive.

- 4 -

g)      **Supplementation.**   In the **Original Case**, no later than **November 9, 2015**, the parties must finally supplement, inter alia, the identification of all accused products and of all invalidity references.

2.      **Joinder of Other Parties and Amendment of Pleadings.**   In the **Original Case**, all motions to join other parties and/or to amend pleadings shall be filed on or before **August 28, 2015**.

3.      **Willfulness.**   If willfulness has been asserted in the **Original Case**, Cisco must inform Bockstar that it intends to rely on the opinion of counsel no later than **[N/A]**.   Bockstar has not alleged willful infringement; if a willfulness claim is properly asserted in this case, Bockstar and Cisco agree to meet-and-confer in good faith at such time to determine a date by which Cisco must inform Bockstar that it intends to rely on the opinion of counsel.

4.      **Settlement Conference.**   Pursuant to 28 U.S.C. § 636, this matter is referred to a Magistrate Judge[3] for the purposes of exploring ADR.

5.      **Claim Construction in the Original Case.[4]**

a)      The parties shall exchange lists of those claim terms in need of construction (along with their respective proposed constructions) on or before **September 25, 2015.**

b)      The parties shall agree upon and file a Joint Claim Construction Statement on **October 7, 2015**.   For any contested claim limitation, each party must submit a proposed construction.[5]

---

[3]      The court may also refer ADR to a Special Master.

[4]      The parties must identify, during the claim construction phase of the case, any claim language that will have a meaning to a person of ordinary skill in the art that differs from the ordinary meaning.   Any language not so identified will be construed according to its ordinary meaning.

c)      Bockstar shall serve and file its opening claim construction brief on **October 23, 2015**.

d)      Cisco shall serve and file its answering claim construction brief on **November 13, 2015**.

e)      Bockstar shall serve and file its reply claim construction brief on **November 23, 2015**.

f)      Cisco shall serve and file its surreply claim construction brief on **December 7, 2015**.

g)      The Court shall conduct a hearing on claim construction on **January 8, 2016 at 9:30 a.m.**[6]

h)      The Court shall issue its decision on claim construction on or before **March 11, 2016**.

i)      The Court shall thereafter conduct a status conference on **March 23, 2016 at 4:30 p.m.**, the purpose of which is to discuss the scope of the case (vis-à-vis the number of patents, claims, products, prior art references, etc.) and determine whether any limits need to be imposed to focus the case prior to expert discovery.

**6.      Expert Discovery.**

a)      All expert discovery in the **Original Case** shall be commenced in time to be completed before **June 20, 2016**.

---

[5]      Resorting to "plain and ordinary" meaning is not sufficient, as it effectively leaves claim construction in the hands of the experts rather than the court.

[6]      Unless otherwise directed, the court shall conduct its proceedings in courtroom 4B, fourth floor United States Courthouse, 844 King Street, Wilmington, Delaware.

b) Expert reports in the **Original Case** on issues for which the parties have the burden of proof shall be served on or before **April 6, 2016**. Rebuttal expert reports shall be served on or before **May 6, 2016**. Supplemental reports, limited to secondary considerations of nonobviousness, shall be served on or before **May 20, 2016**.

c) Expert depositions in the **Original Case** are limited to a maximum of **7** hours per opening or rebuttal report, absent agreement of the parties or order of the Court.

d) The Court shall conduct an in-person status conference on **June 23, 2016 at 4:30 p.m.** if the parties have any issues regarding expert discovery in the **Original Case**. No *Daubert* motions or motions to strike expert testimony shall be filed unless discussed with the Court at this conference and the Court deems a motion practice appropriate.

7. **Fact Witnesses to be Called at Trial.** Within one (1) month following the close of expert discovery, each party shall serve on the other parties a list of each fact witness (including any expert witness who is also expected to give fact testimony), who has previously been disclosed during discovery and that it intends to call at trial. Within one (1) month of receipt of such fact witness list, each party shall serve a list of each rebuttal fact witness disclosed during fact discovery that it intends to call at trial. The parties shall have the right to depose any such fact witnesses who have not previously been deposed in this case. Such deposition shall be held within one (1) month after service of the list of rebuttal fact witnesses and shall be limited to twenty (20) hours per side in the aggregate absent agreement of the parties or order of the Court upon good cause shown.

8. **Motion Practice.**

a)     All motions to dismiss, to amend, and to transfer (and any discovery motions permitted by a Magistrate Judge) shall be resolved by a Magistrate Judge, pursuant to 28 U.S.C. § 636.

b)     All other motions, including motions to stay and for summary judgment, shall be referred, if at all, on an individualized basis.

c)     **Summary Judgment Motions in the Original Case:**

(1)     All summary judgment motions shall be served and filed on or before **July 29, 2016**.  Absent order of the Court, no summary judgment motion may be filed earlier than said date, and no such motion may be filed in the absence of a jury demand.

(a)     Opening briefs on infringement and invalidity shall be served and filed on **July 8, 2016**.

(b)     Opening briefs or combined opening-answering briefs on noninfringement and validity shall be served and filed on **July 29, 2016**.

(c)     Where cross-motions are presented:

(i)     Combined answering-reply briefs on infringement and invalidity in response to the briefs filed pursuant to (b) above shall be served and filed no later than **August 19, 2016**.

(ii)     Reply briefs on noninfringement and validity shall be served and filed no later than **September 2, 2016**.

(d)     Where cross-motions are not presented:

(i)      Answering briefs on infringement and invalidity shall be served and filed on **July 29, 2016**.  Answering briefs on noninfringement and validity shall be served and filed on **August 19, 2016.**

(ii)      Reply briefs on infringement and invalidity shall be served and filed no later than **August 12, 2016**.  Reply briefs on noninfringement and validity shall be served and filed no later than **September 2, 2016**.

(iii)      The Court shall hear oral argument on said motion(s) **September 16, 2016 at 9:30 a.m.**

9.      **Communications with the Court.**

a)      Absent express approval by the Court, any application to the Court for relief shall be by written motion filed with the clerk.  The Court will not consider applications and requests submitted by letter or in a form other than a motion.

b)      No telephone calls shall be made to chambers.

c)      Any party with an **emergency** matter requiring the assistance of the Court shall e-mail chambers utilizing the "E-mail Request for Emergency Relief" and "Opposing Counsel's Response" forms posted on the Court's website and e-mail the completed forms to slr civil@ded.usCourts.gov.  The e-mail shall provide a short statement describing the emergency. **NO ATTACHMENTS** shall be submitted in connection with said e-mails.

d)      To be considered timely filed, all papers shall be electronically filed on or before 11:59 p.m. Eastern Time.

10.      **Motions in Limine.**  No motions in limine shall be filed.  Instead, the parties shall be prepared to address their evidentiary issues at the pretrial conference and during trial (before and after the trial day).

11.     **Pretrial Conference.**  A pretrial conference in the **Original Case** shall be held **November 15, 2016 at 4:30 p.m.**  The Federal Rules of Civil Procedure and D. Del. LR 16.3 shall govern the pretrial conference.  The Court shall set a pretrial conference or conferences for remaining litigation on any additional counterclaims at a later date.

12.     **Trial.**  The **Original Case** is scheduled for an eight-day jury trial, commencing on **December 5, 2016.**  The Court shall set trial dates for remaining litigation on any additional counterclaims at a later date.

_____

United States District Judge

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
RESIDENTIAL CAPITAL, LLC, et al.,        :
                                         :      12 Civ. 5116 (DLC)
                    Debtors-Plaintiffs,  :
                                         :          ORDER
          -v-                            :
                                         :
FEDERAL HOUSING FINANCE AGENCY,          :        Also filed in
                                         :     11 Civ. 5201 (DLC)
                    Defendant.           :
                                         :
-----------------------------------------X


DENISE COTE, District Judge:

     Plaintiffs Residential Capital, LLC and related debtor

entities (collectively, "ResCap") have moved pursuant to 11

U.S.C. § 105 to enjoin the defendant from pursuing litigation

against ResCap's non-debtor corporate affiliates, including Ally

Financial, Ally Securities and GMACM Group (the "Ally

Defendants").  In the alternative, ResCap seeks a judicial order

bringing the Ally Defendants within the coverage of the

Bankruptcy Code's Automatic Stay.  See 11 U.S.C. § 360(a).  For

the reasons stated on the record during a conference with the

parties on July 17, 2012, it is hereby

ORDERED that the motion is denied.  The Clerk of Court is directed to close this case.


SO ORDERED:

Dated:     New York, New York
           July 17, 2012


                                    _____
                                         DENISE COTE
                              United States District Judge

2