IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re*<br><br>Nortel Networks Inc., *et al.*,<br><br>       Debtors | )<br>)<br>) Chapter 11<br>)<br>) Case No. 09-10138 (KG)<br>) Jointly Administered<br>)<br>) Re: D.I. 14551, 14553, 14556, 14558<br>) **Hearing Date: Nov. 7, 2014 at 12:00 p.m.**<br>) **Response Deadline: Nov. 4, 2014 at 4:00**<br>) **p.m.**<br>) |

## CONSTELLATION TECHNOLOGIES LLC'S AND ROCKSTAR CONSORTIUM US LP'S RESPONSE TO TIME WARNER CABLE'S REQUEST TO ENJOIN *CONSTELLATION v. TIME WARNER CABLE* PATENT LITIGATION

Constellation Technologies LLC ("Constellation") and Rockstar Consortium US LP ("RCUSLP") oppose Time Warner Cable's[1] request that this Court issue an unprecedented stay enjoining non-debtor patent litigations pending in a separate district court. D.I. 14551. This Court has no subject matter jurisdiction for such a stay. The patent litigations concern only non-debtors—no Debtor is party, the claims are purely against non-debtors, and the outcomes will have no bearing whatsoever, direct or indirect, on these bankruptcy proceedings or any Debtor estate. Time Warner Cable's requested stay should be denied.

### INTRODUCTION

Debtor Nortel Networks, Inc. ("NNI") was served with non-party discovery subpoenas from Time Warner Cable and others. The subpoenas seek broad discovery for use in patent litigation in which NNI is not a party. NNI's only alleged relationship with the litigation is that

---

[1] Time Warner Cable Inc. and Time Warner Cable Enterprises LLC.

it sold the patents-in-suit to Rockstar Bidco, L.P. long ago.  Rockstar Bidco, L.P. then transferred those patents and other assets to Constellation and RCUSLP along with all relevant patent related documentation.  As such, NNI expects that most, if not all, relevant documents have already been transferred under the Asset Sale Agreement to the parties to the patent litigations.  D.I. 14476 at 24-26.

NNI therefore filed a motion for an order from this Court that would protect NNI from burdensome discovery requests.  D.I. 14476.  NNI's proposed order would essentially require Time Warner Cable to first seek discovery from the parties to the patent litigations, which NNI expects already have most or all relevant documents.  Time Warner Cable and other litigants could still pursue their largely duplicative discovery from NNI and its former employees, but only after exhausting party discovery and meeting and conferring with Debtors.

Time Warner Cable submitted a brief opposing NNI's requested protections.  D.I. 14551. But Time Warner Cable's brief also requests in the alternative, and without a formal motion or adversarial proceeding (or even notice), that this Court enjoin the separate patent litigation that Constellation filed against Time Warner Cable in a Texas federal court (the "Texas Patent Litigation").  That request marks Time Warner Cable's sixth attempt, spanning five different venues, to derail the Texas Litigation.  This latest procedural maneuver should fair no better than the others, all of which have failed after review by seven different federal judges.  Certain of Time Warner Cable's parts suppliers and industry partners have filed briefs joining in Time Warner Cable's arguments and seeking to stay their own declaratory judgment patent litigations filed against Constellation, RCUSLP, and others.[2]

---

[2] *See* D.I. 14553, 14556, 14558.

This Court has no subject matter jurisdiction over the Constellation and RCUSLP patent litigations.  None of the Debtors is involved in those patent litigations and the outcomes will have no impact on the Debtors, the bankruptcy estate, or these chapter 11 proceedings. Constellation and RCUSLP therefore respectfully opposes the requests for an unprecedented injunction against distinct, non-debtor patent litigations that are proceeding apace under scheduling orders from separate federal district courts.

### SUMMARY OF THE ARGUMENT

Time Warner Cable requests that this Court enjoin Constellation's non-debtor Texas Patent Litigation, which has been proceeding for nearly a year.  It makes that request ostensibly so that it can mine for peripheral discovery, such as some documents Time Warner Cable hopes to find amongst Nortel's immense and disorganized document stores, all to support claims and defenses that Time Warner Cable filed just three weeks ago.  But Nortel is not a party to the Texas Patent Litigation, the claims and defenses will have no effect on Nortel's estate, Nortel has not requested any injunction against the patent litigation, Nortel long ago agreed to transfer its patent related documentation to Rockstar companies under the Asset Sale Agreement, and multiple district judges have rejected Time Warner Cable's prior attempts to derail the Texas Patent Litigation.  Time Warner Cable's request that this Delaware bankruptcy court enjoin the non-debtor Texas Patent Litigation is a last-ditch attempt to prevent Constellation's patent infringement claims from proceeding now, on the merits.

Time Warner Cable's latest maneuver should fail like all the rest.  As Judge Easterbrook recognized in a similar case in which a Delaware bankruptcy court attempted to enjoin a patent litigation pending before him in Illinois, an order enjoining the Texas Patent Litigation would be "extraordinary."  *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 974 (N.D. Ill. 1992).  Time Warner Cable's request should be rejected for three reasons.

*First*, this Court lacks subject-matter jurisdiction to enjoin the Texas Patent Litigation. The only asserted basis for jurisdiction is this Court's Order approving the Asset Sale Agreement for the sale of Nortel's patents to Rockstar Bidco, LP. But the Court could not, and did not, create subject-matter jurisdiction over the patent infringement dispute between Constellation and Time Warner Cable in its Sale Order.

Jurisdiction must be based on a statute. For subject matter jurisdiction to exist here, this Court would need to find, contrary to all facts and precedent, that the non-debtor Texas Patent Ligation is somehow "related to a case under title 11," 28 U.S.C. § 1334(b). But even that statutory provision could not even conceivably apply here because the Texas Patent Litigation is <u>not</u> related to the Nortel bankruptcy under controlling Third Circuit law. The Nortel estate long ago transferred its interest in the patents at issue in the Texas Patent Litigation (along with all patent related documentation). Under controlling precedent, that fact defeats subject matter jurisdiction. Further, contrary to Time Warner Cable's arguments, there is no pending threat of liability against NNI for improper disclosure under the Sale Agreement because both NNI and Time Warner Cable have agreed to protect confidential information belonging to Constellation and RCUSLP, prevent the production of privileged materials, and permit Constellation and RCUSLP to claw back any privileged materials that are somehow produced.

*Second*, even if, contrary to law and fact, this Court had subject matter jurisdiction sufficient to enjoin an unrelated, non-debtor patent litigation pending in a sister court, Time Warner Cable has failed to meet its burden to justify any such stay. In the Third Circuit, litigation against non-debtors may be stayed only in "unusual circumstances," such as where the debtor is the real party defendant, where the debtor has an absolute obligation to indemnify the third-party defendants, or where an injunction is essential to the debtor's efforts to reorganize.

No such circumstance exists here. Indeed, Time Warner Cable and its industry partners have failed to even address the controlling "unusual circumstances" test. As they do with subject-matter jurisdiction, they simply ignore the controlling law and invite this Court to issue a lawless order enjoining an unrelated patent litigation pending before another judge.

*Third*, as a procedural matter, this Court may issue a stay only after an adversary proceeding is initiated against all relevant parties in the pending patent litigations. It may not do so merely in response to Time Warner Cable's objections. This point is undisputed. *See* Objections to Nortel's Mot. for Relief Under Section 105(a) by Time Warner Cable [D.I. 14551] ("TWC Br."), at 51 ("The parties . . . would need to request that the Court enjoin the Rockstar Litigation through an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(7).").

For these reasons, this Court should deny Time Warner Cable's request that this Court take control of the patent docket in the Eastern District of Texas, override that Court's Scheduling Order, and enjoin non-debtor patent litigation that has no bearing on the Debtor estate.[3]

## BACKGROUND

### A.    Constellation's Patent Litigation Against Time Warner Cable

In December 2013, Constellation filed a patent infringement lawsuit against Time Warner Cable in the United States District Court for the Eastern District of Texas asserting six Constellation patents. *Constellation Technologies LLC v. Time Warner Cable Inc., et al.*, Nos. 2:13-CV-1079-RSP, 2:13-CV-180-RSP (consolidated) (E.D. Tex.). The asserted patents had once been owned by various Nortel entities. A consortium of leading technology companies

---

[3] Constellation and RCUSLP take no position as to Nortel's proposed order.

formed Rockstar Bidco LP to purchase the patents during Nortel's bankruptcy.  Rockstar Bidco, LP subsequently transferred the patents to RCUSLP, which assigned them to Constellation.

**B.      Time Warner Cable's Multiple Failed Attempts To Derail And Delay The Texas Patent Litigation**

From the day Constellation filed the Texas Patent Litigation, Time Warner Cable has tried to exploit every conceivable procedural mechanism, whether colorable or not, to burden Constellation and prevent its patent infringement claims from proceeding to the merits.  Time Warner Cable's new request for an unprecedented injunction from this Court is only its latest tactic.

First, Time Warner Cable enlisted its industry colleagues and parts suppliers (Cisco, Arris, and various cable companies) to bring a second-filed series of dubious declaratory judgment claims in Delaware for the express purpose of stripping the Eastern District of Texas of venue.  Those cases are pending before Judge Robinson.  *See Charter Communications, Inc., et al. v. Rockstar Consortium US LP, et al.*, C.A. No. 14-55-SLR; *ARRIS Group, Inc., et al. v. Constellation Technologies LLC, et al.*, C.A. No. 14-114 SLR; and counterclaims filed in *Bockstar Technologies LLC v. Cisco Systems Inc.*, C.A. No. 13-2020-SLR.  Once those pre-textual lawsuits and claims were filed, Time Warner Cable attempted to use them as leverage to support a transfer motion.

The plaintiffs in the Delaware cases are all represented by Time Warner Cable's counsel, and they have all been stalling those cases from moving forward, confirming that the Delaware cases are not good faith disputes but were instead pretexts to assist in Time Warner Cable's since-failed transfer arguments.  Indeed, the Delaware parties have all now joined in Time Warner Cable's dubious request that this Court enjoin multiple, non-debtor patent litigations.  D.I. 14553, 14556, 14558.

6

Constellation and other counterclaim/declaratory judgment defendants (including RCUSLP) moved to dismiss the Delaware claims against them, primarily due to lack of subject-matter jurisdiction over the declaratory judgment claims, improper joinder, and failure to state a claim.  The Delaware cable companies and parts suppliers then received over 100 days of extensions, and the cases remained in the motion to dismiss stage for months.

Meanwhile, in Texas, Constellation's patent litigation proceeded.  But Time Warner Cable never answered the Complaint until three weeks ago, on October 14, 2014—the very same day that it first requested a stay from this Court.  Exh. B.  It was not until that October 14 pleading that Time Warner Cable filed many of the counterclaims and defenses that it now asserts justify its broad-ranging discovery expedition against NNI.  *See* TWC Br. at 13.

Rather than file a timely Answer in the Texas Patent Litigation, Time Warner had initially filed for an extension of time followed by a motion to dismiss certain of Constellation's claims.  Time Warner Cable then filed a transfer motion on February 11, 2014, two months after the case began.  Windstream, Time Warner Cable's co-defendant in the consolidated Texas Patent Litigation, then waited another two weeks before adding its own transfer motion.  Neither defendant sought any expedited briefing or ruling.  Instead, both sought and agreed to extensions such that the transfer briefing was not complete until mid-April, 2014.  On April 4, 2014 TWC filed yet another motion, this time to sever its case from Windstream's, which had been consolidated for all pre-trial purposes.

Curiously, after burdening the district court with its motion for ***severance*** on the grounds that "the cases have limited overlap and can more efficiently proceed separately," TWC completely abandoned that position.  On May 23, while its original transfer motion was still pending in Texas, TWC filed a new motion with the Judicial Panel on Multidistrict Litigation

("MDL Panel") to transfer the consolidated case to Delaware and further **consolidate** it with the three Delaware litigations pursuant to 28 U.S.C. § 1407.  The five district judges on the MDL Panel unanimously denied the motion, thus ensuring, contrary to Time Warner Cable's machinations, that the Texas Patent Litigation would proceed apace in its original venue.

Three weeks later, Time Warner Cable filed a mandamus petition with the United States Court of Appeals for the Federal Circuit.  In that petition, Time Warner Cable recklessly accused the veteran Magistrate Judge in the Eastern District of Texas, who has over 20 years on the bench across two separate judicial districts, of intentionally using a "pocket veto" to avoid appellate review of the transfer motion (which Time Warner Cable had never made any effort to expedite).  That petition became moot when the Texas court denied Time Warner Cable's transfer motion.  Time Warner Cable has not sought mandamus regarding that transfer ruling and, to the contrary, has since filed its own claims against Constellation in the Eastern District of Texas thus confirming that it is a proper venue after all.

Notably, the presently requested stay is also not Time Warner Cable's first attempt to delay the Texas Patent Litigation.  It sought a stay from the Texas court while its transfer motion was pending and a stay from the Federal Circuit to accompany its moot mandamus petition.  Both requests failed and Time Warner Cable's third bite at the apple should fair no better.

Bockstar Technologies LLC ("Bockstar") is concurrently filing a brief that opposes Cisco's analogous request that this Court enjoin Bockstar's non-debtor patent litigation against Cisco pending before Judge Robinson in the District of Delaware.  Like Time Warner Cable, Cisco has also attempted to stay the patent claims pending against it on multiple grounds.  By Order dated October 10, 2014, Judge Robinson rejected Cisco's effort to stay Bockstar's claims, ruling that the lawsuit "shall proceed consistent with my case management procedures."  Exh.

A ¶ 1.  Judge Robinson found Cisco's arguments to the contrary to be unpersuasive because its "agenda is so transparent."  Exh. A ¶ 1 n.1.

###### C.    Time Warner Cable's Request for a Stay from This Court

Having failed in its multiple bids to delay and derail the Texas Patent Litigation, Time Warner Cable requested a stay from this Court.  The pretext for this latest request is NNI's motion seeking relief from certain overly broad and burdensome third-party discovery requests.  Time Warner Cable objects to NNI's request, but also argues in the alternative that this Court should stay the Texas Patent Litigation until Time Warner Cable gets discovery from NNI to support the claims and defenses that Time Warner Cable waited to file in Texas until the very same day it filed its stay request with this Court.  *See* TWC Br. at 7.  To date, Time Warner has not raised any of these issues with the presiding district or magistrate judges in Texas.  In fact, Time Warner Cable has not even informed them of its request for an injunction preventing the Texas federal court from proceeding under its own Scheduling and Docket Control Orders.

Time Warner Cable's industry colleagues, which are all represented by the same counsel, have joined its request and seek analogous injunctions as to their separate litigations.  Those requests should all be denied for the same reasons discussed herein.  Notably, Google also filed objections to Nortel's motion, but did *not* seek a stay of the patent litigation pending against it.

###### ARGUMENT

###### I.    This Court Lacks Subject Matter Jurisdiction to Enjoin the Texas Patent Litigation.

This Court cannot stay Constellation's patent infringement litigation against Time Warner Cable because it lacks subject matter jurisdiction over those claims.  *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 224-25 (3d Cir. 2004) (requiring independent jurisdiction over non-derivative claims against non-debtors).  Time Warner Cable's request for a stay must be directed to the Court having jurisdiction:  the Eastern District of Texas.  Time Warner Cable's decision

not to bring this request to the Texas Court is not surprising because that Court has repeatedly rejected Time Warner Cable's attempts to delay and derail the Texas Patent Litigation.  This Court should not reach a different result on the flimsy, pretextual basis that Time Warner Cable asserts here.

### A.      The Asset Sale Agreement Does Not Confer Jurisdiction on This Court.

Time Warner Cable's only asserted jurisdictional basis for its unprecedented injunction is "the Court's authority to enforce its own orders and its express reservation of jurisdiction over and power to provide remedies to the Asset Sale Agreement . . . ."  TWC Br. at 49.  But the Court's Order approving the Asset Sale Agreement does not give the Court the necessary jurisdiction.

*First*, neither party agreement nor a court order can serve as a predicate for subject matter jurisdiction; only a congressional statute can do so.  *See Resorts Int'l, Inc. v. Price Waterhouse & Co.*, 372 F.3d 154, 161 (3d Cir. 2004) ("Retention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction.  But neither the bankruptcy court nor the parties can write their own jurisdictional ticket.  Subject matter jurisdiction 'cannot be conferred by consent' of the parties.") (quoting *Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 854 (3d Cir. 1996)).

*Second*, Time Warner Cable stretches the retention of jurisdiction provision in the Sale Order well beyond its plain meaning.  The Court retained jurisdiction only for matters relating to implementation of the Sale Order and Sale Agreement—such as to interpret the Sale Order or Sale Agreement, to compel performance under the Sale Agreement, and to resolve disputes arising under the Sale Agreement.  *See* Order Authorizing & Approving the Sale of Patent & Related Assets ¶ 39, D.I. 5935.  The Court did not retain jurisdiction over disputes between the owner of the patents and independent third parties that infringe them.

10

*Third,* Time Warner Cable's attempt to concoct jurisdiction through the Sale Agreement is based on a speculative assertion that Nortel may someday have some liability for breaching its obligations to maintain confidentiality and privilege regarding the information and documents that concern the assets Nortel transferred under the Agreement.  But Time Warner Cable has already agreed to orders and procedures that:  (1) any materials that NNI produces will be designated Outside Attorneys' Eyes Only, (2) NNI will undertake a reasonable privilege review before producing documents, and (3) NNI, Constellation, and RCUSLP may each employ the claw back procedures available in the Federal Rules and the protective orders entered in the underlying patent litigations to the extent any potentially privileged materials are somehow produced.  *See* TWC Br. at 9, 21.  Further, after collecting the requested materials NNI can provide them to Constellation and RCUSLP for review prior to production to further help ensure no materials are improperly produced.  In light of these and other simple, and largely agreed and previously ordered, procedures to protect confidential and privileged information, Time Warner Cable's attempt to base jurisdiction on NNI's speculative, future breach of the Sale Agreement though some incurable disclosure of protected information lacks merit.

**B.    This Court Does Not Have "Related To" Jurisdiction Under Section 1334(b).**

Congress has conferred subject-matter jurisdiction on bankruptcy courts for four types of cases or proceedings:  (1) cases under title 11; (2) civil proceedings arising under title 11; (3) civil proceedings arising in a case under title 11; and (4) civil proceedings "related to" a case under title 11.  *See* 28 U.S.C. § 1334(a)-(b).  Constellation's patent infringement claims against Time Warner arise under the patent statute (title 35) and are not in any way a case under the Bankruptcy Code; they do not arise under the Bankruptcy Code or in a case under the Bankruptcy Code; and, as discussed below, they are not "related to" a proceeding under title 11.

While "related to" jurisdiction is broad, it has its limits.  *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995).  Under Third Circuit precedent, for a bankruptcy court to exercise "related to" jurisdiction over a non-bankruptcy civil proceeding, it must conclude that "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  *CIT Commc'ns Fin. Corp. v. Level 3 Commc'ns, LLC*, 483 F. Supp. 2d 380, 385-86 (D. Del. 2007) (quoting *Pacor, Inc. v. Higgins*, F.2d 984, 994 (3d Cir. 1984)); *see also In re Marcus Hook Dev. Park, Inc*., 943 F.2d 261, 264 (3d Cir. 1991) (stating that "related to" jurisdiction requires possibility that the proceeding "may impact on the debtor's rights, liabilities, options or freedom of action or the handling and administration of the bankrupt estate") (citation and internal quotation marks omitted).

Although it is Time Warner Cable's burden to do so,[4] it fails even to argue that this Court has "related to" jurisdiction over the pending patent litigations[5] and with good reason—there is none.  The outcome of Constellation's patent litigation will have no impact on this bankruptcy estate:  the Debtors sold their interests in the patents in issue; the Debtors are not parties to the litigations, and the Debtors cannot be characterized as the real parties in interest (*e.g.* the third-party defendant's liability is derivative of that of the debtor's).  In such cases, the Third Circuit has held that there is no subject-matter jurisdiction over the third-party litigation.  *See W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 591 F.3d 164, 171-73 (3d Cir. 2009) (potential indemnification claims against the debtor did not trigger related to jurisdiction for purposes of extending stay to non-debtor actions); *Combustion Eng'g*, 391 F.3d at 227-38

---

[4]      *CIT Commc'ns*, 483 F. Supp. 2d at 387.

[5]      To the contrary, TWC acknowledges that the action in which it is a named defendant is "an *unrelated patent litigation* in the Eastern District of Texas."  *See* TWC Br. at 5 (emphasis added).

(finding that there was no subject-matter jurisdiction over actions against non-debtor affiliates); *see also Adams v. Prudential Sec., Inc. (In re Found. for New Era Philanthropy)*, 201 B.R. 382, 394-97 (Bankr. E.D. Pa. 1996) (holding that potential indemnification claim against debtor insufficient for exercise of related to jurisdiction over non-debtor action).

Nor has Time Warner Cable demonstrated that third-party discovery of the Debtors will significantly impact the estate such that the relationship between the estate and the non-debtor litigation necessary for the exercise of "related to" jurisdiction exists.  The Texas Patent Litigation concerns only six of the thousands of patents transferred to Rockstar Bidco, LP, and NNI already committed to transfer all patent related documentation under the Asset Sale Agreement.  Further, Time Warner Cable has gone to great lengths to demonstrate that the third-party discovery it seeks of the Debtors is narrowly tailored to not burden the estate and will not impede any reorganization efforts.  *See* TWC Br. at 19, 36, 38.

Finally, the Debtors' prior ownership of the patents at issue in the infringement suits also does not confer "related to" jurisdiction over the Texas Patent Litigation, as Time Warner Cable incorrectly suggests.  *See* TWC Br. at 51 ("Given [that] . . . Nortel was the origination point of the patents-in-suit and the steward of the patents for many years-the Court should extend the automatic stay to the Rockstar litigation . . . .").  Courts have concluded that a bankruptcy court does not have "related to" jurisdiction over non-debtor litigation involving assets sold by a debtor to a third party.  *See In re Hall's Motor Transit Co.*, 889 F.2d 520, 522-23 (3d Cir. 1989) ("The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate."); *CIT Commc'ns*, 483 F. Supp. 2d at 388-89 (finding that the ties between the estate and a state court action seeking to enforce the post-sale obligations of the buyer of a lease previously owned by the debtor were too attenuated to confer related-to

jurisdiction over the litigation); *accord In re Lemco Gypsum, Inc.*, 910 F.2d 784, 789 (11th Cir. 1990) ("The fact that property was once owned by a bankrupt does not supply federal jurisdiction of all future disputes concerning the property."); *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1186 (7th Cir. 1986) ("That some land was once owned by a bankrupt does not supply federal jurisdiction of disputes concerning that land.").  Otherwise, as the Third Circuit has noted, "anyone who could trace his title to a bankrupt would invoke federal jurisdiction to settle disputes affecting that property."  *Hall's Motor Transit Co.*, 889 F.2d at 523 (citations and internal quotation marks omitted).

The sale of the Debtors' patents removed these assets from the bankruptcy estate and bankruptcy court jurisdiction.

## II.     There Is No Basis To Extend the Automatic Stay to Constellation's Patent Litigation Against Time Warner.

Even if, contrary to law and fact, this Court had subject matter jurisdiction to entertain Time Warner Cable's request to enjoin the non-debtor Texas Patent Litigation, Time Warner Cable has failed to even attempt to meets its burden to show a basis for any such injunction.  As Judge Easterbrook recognized, "[f]or one federal court to issue an injunction forbidding litigation in another is extraordinary, given principles of comity among coordinate tribunals."  *Mahurkar Patent Litig.*, 140 B.R. at 974.  Time Warner Cable's request for a stay here fails because (1) there are no "unusual circumstances" present to justify such extraordinary relief under the bankruptcy statutes; and (2) it fails to demonstrate the requirements for a preliminary injunction.

### A.     No "Unusual Circumstances" Exist To Justify Extending The Automatic Stay To The Non-Debtor Texas Patent Litigation.

Time Warner Cable argues that a stay of the non-debtor Texas Patent Litigation is somehow authorized by Sections 362(a) and/or 105(a).  *See* TWC Br. at 51.  But the automatic stay under Section 362(a) of the Bankruptcy Code does not apply to non-debtor third parties.

14

*See McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997) ("[T]he clear language of section 362(a) stays actions only against a 'debtor.'").  To enjoin claims pending against non-debtor third parties, a bankruptcy court would need rely upon the equitable powers granted it under section 105(a) of the Bankruptcy Code.  *See, e.g.*, *In re Residential Capital,* 480 B.R. 529, 534 (Bankr. S.D.N.Y. 2012); *Mother African Union Methodist Church v. Conference of AUCMP Church (In re Conference of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207, 214-15 (Bankr. D. Del. 1995).  But in the Third Circuit, stays of claims against non-debtor third parties are granted only in "unusual circumstances."  *McCartney*, 106 F.3d at 510.

Unusual circumstances exist where "there is such an identity between the debtor and the third party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment . . . against the debtor" or where an injunction "is essential to the debtor's efforts of reorganization."  *Id.* (citations omitted); *Gillman v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 171 B.R. 475, 479 (D. Del. 1993).  Unusual circumstances have been found where (a) the debtor was the real party defendant;[6] (b) there was a risk that the debtor would be bound by a judgment under collateral estoppel principles;[7] (c) the debtor had an absolute obligation to indemnify the third-

---

[6]     *See, e.g.*, *Continental Airlines*, 177 B.R. at 479-81 (debtor was "the real party defendant to those actions and . . . this class action litigation was commenced against parties other than [debtor] solely in an effort to circumvent the automatic stay"); *In re Midway Games, Inc.*, 428 B.R. 327, 334 (Bankr. D. Del. 2010) (debtors were the real target of the litigation).

[7]     *See, e.g.*, *SN Liquidation, Inc. v. Icon Int'l, Inc. (In re SN Liquidation, Inc.)*, 388 B.R. 579, 585 (Bankr. D. Del. 2008) (finding of liability against non-debtor management could have a preclusive effect against the debtors); *Am. Film Techs., Inc. v. Taritero (In re Am. Film Techs., Inc.)*, 175 B.R. 847, 855 (Bankr. D. Del. 1994) (same).

party defendants;[8] or (d) the third-party defendants were essential to the debtor's reorganization efforts.[9]

In the absence of a showing of at least one of these unusual circumstances, courts have had no difficulty denying requests for extension of the automatic stay to non-debtor litigation. *See, e.g., Stanford v. Foamex L.P.*, No. 07-4225, 2009 WL 1033607, at *2-3 (E.D. Pa. Apr. 15, 2009) (refusing to extend the stay because third-party defendants' liability was independent, not derivative, of the debtor's and defendants were not essential to debtor's reorganization efforts); *Hess Corp. v. Performance Texaco, Inc.*, No. 3:08-CV-1426, 2008 WL 4960203, at *3-4 (M.D. Pa. Nov. 19, 2008) (finding, in the absence of the debtor's request for a stay extension, that no unusual circumstances existed for extension of stay to actions against non-debtor defendants).

Time Warner Cable has not made (and cannot make) a showing of "unusual circumstances" here.  The Debtors are not the real parties in interest in the non-debtor Texas Patent Litigation; there is no risk that a judgment in that non-debtor litigation will have any collateral estoppel effect (or any effect whatsoever on the Debtors) or will result in indemnity claims against the Debtors; and Time Warner Cable is not essential or even relevant to administration of the estate (which is being liquidated, not reorganized).

The sole basis provided by Time Warner Cable for the injunctive relief is its purported need for discovery from the Debtors, largely to support the eleventh-hour defenses and counterclaims that Time Warner Cable raised in the Texas court on the same day that it requested its stay here.  But courts have held such discovery demands are *not* to be a basis for a stay of

---

[8]      *See, e.g.*, *In re Phila. Newspapers, LLC*, 407 B.R. 606, 616 (E.D. Pa. 2009) (debtors had indemnification obligations to officer defendants); *Midway Games*, 428 B.R. at 334  (same).

[9]      *See, e.g.*, *Phila. Newspapers*, 407 B.R. at 616 (suit against directors, officers and employees impeded debtors' reorganization efforts).

non-debtor litigation.  *See Wedgeworth v. Fibreboard Corp.*, 706 F.2d  541, 545 (5th Cir. 1983)

(reversing stay extension order, notwithstanding arguments that defendants would have difficulty

obtaining discovery from debtor); *Stanford*, 2009 WL 1033607, at *4 ("The need for discovery

[from the debtor] has not been recognized as an 'unusual circumstance.'  Indeed, if the alleged

need for discovery was sufficient to justify extending the stay to non-bankrupt parties, courts

would need to extend the stay in most multi-party actions, which is contrary to the limited nature

of the 'unusual circumstances' exception."); *cf. Le Metier Beauty Inv. Partners LLC v. Metier

Tribeca, LLC*, No. 13 Civ. 4650, 2014 WL 4783008, at *4-5 (S.D.N.Y. Sept. 25, 2014) (denying

defendant's request to extend the stay in the absence of unusual circumstances but leaving it to

the bankruptcy court to decide whether to stay or limit third-party discovery of the debtor).[10]

### B.    Time Warner Cable Cannot Demonstrate That It Is Entitled To a Preliminary Injunction.

In addition to demonstrating "unusual circumstances," which are not present here, Time

Warner Cable bears the burden of showing that a preliminary injunction should be issued under

Section 105(a) of the Bankruptcy Code.  *See Phila. Newspapers*, 407 B.R. at 616 ("[A]

preliminary injunction is an extraordinary and drastic remedy, one that should not be granted

unless the movant, *by a clear showing*, carries the burden of persuasion." (quoting *Mazurek v.

Armstrong*, 520 U.S. 968, 972 (1997))).  Time Warner Cable has not met this burden.

To obtain injunctive relief under section 105(a), Time Warner Cable must demonstrate (1)

a reasonable likelihood of success, which, in the bankruptcy context, means the debtor's ability

---

[10]    In the *Residential Capital* case, upon which both Nortel and Time Warner Cable rely heavily, the debtors had sought to enjoin the non-debtor litigation because of the burden of discovery in a separate adversary proceeding.  That request was denied by the district court following withdrawal of the reference.  A copy of the district court's unpublished decision in *Residential Capital* is annexed as Exhibit C hereto.

to successfully reorganize; and (2) that irreparable harm is likely if an injunction does not issue. *Phila. Newspapers*, 407 B.R. at 617.  If these two threshold prerequisites are met, courts will weigh the harms to the impacted parties if the injunction is either granted or denied.  *Id.*

Here, reorganization of the Debtors is not a possibility, and the Debtors' assets have been substantially liquidated.  All that remains is allocation of the proceeds of those assets among the Debtors and their creditor constituencies.  Thus, the first requirement for the issuance of an injunction cannot be met.

As to the second requirement, neither Nortel nor Time Warner Cable (to the extent harm to Time Warner Cable is even a relevant consideration) will suffer irreparable harm.  As discussed above, Nortel will not suffer any direct consequences from the outcome of the Texas Patent Litigation—no judgment against it, no collateral estoppel consequences, and no indemnity obligations.  Nor is a stay essential to Nortel's reorganization efforts—Nortel is in liquidation proceedings.  Moreover, Time Warner Cable will likely be able obtain the discovery it seeks from the parties and the materials NNI has already agreed to produce.  To the extent that Time Warner Cable finds that it purportedly needs additional discovery to support its new counterclaims and defenses filed just three weeks ago, NNI's proposed order provides a mechanism for Time Warner Cable and other litigants to seek that discovery after exhausting other sources.  If and when that occurs, there may be any number of less draconian measures available to address any issues of scope and burden that such discovery might cause.  Without those events even having yet occurred, irreparable harm to either Nortel or Time Warner Cable is purely speculative.

Finally, even if Time Warner Cable could satisfy these two threshold requirements for the issuance of an injunction, the harm to Constellation from an injunction far outweighs any harm

to Nortel or to Time Warner Cable from the denial of injunctive relief.  Given that Time Warner

Cable only recently filed its counterclaims and defenses, and has yet to identify any specific

discovery that it actually needs and will not ultimately be able to timely obtain, denial of an

injunction now causes no harm whatsoever.  Nortel and Time Warner Cable are not harmed

because, as described above, there are any number of avenues for Time Warner Cable to obtain

the discovery it needs to defend the litigation, including discovery from Constellation and

RCUSLP (which Time Warner Cable is already obtaining) and appropriate court orders

concerning the scope and timing of discovery from Nortel.

On the other hand, an injunction will significantly harm Constellation by delaying the

prosecution of its claims that have no impact on the Debtor estate.  The Texas Litigation has

already been pending for almost a year, during which time Time Warner Cable has engaged in

numerous dilatory tactics.  Constellation is entitled to a prompt resolution of its patent

infringement claims pursuant to the Texas court's Scheduling and Docket Control Orders.

Finally, the public interest in promoting market interest in asset sales in bankruptcy will not be

served by allowing a third-party litigant to interfere with the buyer's realization and protection of

the value of the assets acquired through a stay of the buyer's enforcement action.

## III.    Time Warner Cable's Request for an Injunction is Procedurally Defective.

As Time Warner Cable concedes, a stay of the Texas Patent Litigation must be made

"through an adversary proceeding pursuant to Fed R. Bankr. P. 7001(7)."  TWC Br. at 51.  Time

Warner  Cable's extraordinary request appears for the first time in the opposition it filed to the

Debtors' motion, and it has not filed any adversary proceeding.[11]  Its request should therefore be

denied as procedurally defective.

---

[11]        *See* TWC Br. at 48-52.

As explained above, a stay of an action against a non-debtor third party must rest on

Section 105(a).  As Time Warner Cable concedes, such an injunction under section 105(a) must

be sought by the filing of a complaint that commences an adversary proceeding.  *See* Fed. R.

Bank. P. 7001(7) ("The following are adversary proceedings: . . . (7) a proceeding to obtain an

injunction or other equitable relief . . . ."); *Residential Capital*, 480 B.R. at 538 ("Where an

injunction is sought by a debtor under section 105 to stay actions against non-debtors, the relief

must be sought through an adversary proceeding under Fed. R. Bankr. P. 7001."); *All Seasons*

*Resorts, Inc. v. Milner (In re All Seasons Resorts, Inc.)*, 79 B.R. 901, 903-04 (Bankr. C.D. Cal.

1987) ("[T]he extension of § 362 . . . requires the filing of an appropriate adversary proceeding

under § 105 and § 362 to achieve the desired result.").

Time Warner Cable has not filed a motion, much less commenced an adversary

proceeding, seeking an injunction.  This Court should not entertain its improper request for

injunctive relief.

Finally, even if the Court were to agree with Time Warner Cable's request for a stay, it

should issue proposed findings of fact and conclusions of law, because jurisdiction (if the Court

concludes that it exists) can only be premised on "related to" jurisdiction, as explained above.

*See* 28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 9033(d).

## CONCLUSION

For the foregoing reasons, Constellation and RCUSLP request that Time Warner Cable's

request for a stay of the non-debtor Texas Patent litigation be denied.  Constellation and

RCUSLP do not take a position concerning the proposed order requested by Nortel in its motion.

Dated: November 4, 2014

Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*
Joseph J. Farnan, Jr. (#100245)
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 North Market Street, 12th Floor
Wilmington, DE  19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301

IRELL & MANELLA LLP
Ellisen S. Turner (*pro hac vice* pending)
1800 Avenue of the Stars, Suite 900
Los Angeles, California  90067
Telephone: (310) 277-1010
Facsimile:  (310) 203-7199

farnan@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Rockstar Consortium US LP and*
*Constellation Technologies LLC*