# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOCKSTAR TECHNOLOGIES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 13-2020-SLR |
| | ) |
| CISCO SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

| | |
|---|---|
| CISCO SYSTEMS, INC., | ) |
| | ) |
| Counterclaim-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BOCKSTAR TECHNOLOGIES, LLC, et al., | ) |
| | ) |
| | ) |
| Counterclaim-Defendants. | ) |

| | |
|---|---|
| CHARTER COMMUNICATIONS INC., et al., | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. No. 14-55-SLR |
| | ) |
| ROCKSTAR CONSORTIUM US LP, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| ARRIS GROUP, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. No. 14-114-SLR |
| | ) |
| CONSTELLATION TECHNOLOGIES, LLC, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

# ORDER

At Wilmington this 10th day of October, 2014, having conferred with counsel;

IT IS ORDERED that the above captioned cases shall proceed as follows:

1. The first filed of the above captioned lawsuits, *Bockstar Technologies LLC v. Cisco Systems, Inc.*, Civ. No. 13-2020 ("*Bockstar*"), shall proceed consistent with my case management procedures.[1] A telephonic scheduling conference shall be conducted in this case on **Wednesday, October 22, 2014 at 1:00 p.m.**, with counsel for plaintiff initiating the call.

2. The remaining declaratory judgment lawsuits (and the declaratory judgment counterclaims filed by Cisco Systems, Inc. in Civ. No. 13-2020) (collectively referred to as the "DJ cases" brought by the "DJ plaintiffs") shall be stayed pending further order of the court, and all pending motions to dismiss denied without prejudice to renew,[2] with the following exceptions:

   a. The CableLabs DOCSIS and PacketCable claims brought by the DJ plaintiffs that implicate potentially dispositive licensing issues with respect to five

---

[1]Having reviewed more closely the case management proposal by the DJ plaintiffs, I find it ironic that, of the 7 proposed "technical groupings" for litigation, 4/6 patents asserted in *Bockstar* are not listed until "group 3," with the remaining 2 patents not listed until "group 7." Although the DJ plaintiffs complain that the original *Bockstar* patents involved "disparate products," the 3 additional Bockstar patents asserted by Cisco Systems, Inc. involve yet another, disparate technical group ("group 4"). While grouping patents by technologies for pretrial and trial purposes generally appeals to my sense of order, and despite the power apparently given to certain business entities by the Federal Circuit's latest foray into discretionary matters of case management, the DJ plaintiffs fail to persuade in this instance when their agenda is so transparent.

[2] D.I. Nos. 43 and 47 in Civ. No. 13-2020-SLR; D.I. 58 in Civ. No. 14-55-SLR; D.I. Nos. 28 in Civ. No. 14-114-SLR

patents asserted in the DJ cases[3] shall be addressed on a schedule to be determined at a telephonic status conference to be conducted on **Wednesday, October 22, 2014 at 2:00 p.m.**, with counsel for Cisco Systems, Inc. initiating the call.[4]

      b. I will decide in due course the motion to dismiss filed by counterclaim defendant Spherix Incorporated.

United States District Judge

---

[3]U.S. Patent Nos. 5,761,197; 6,130,893; 6,321,253; 5,471,474; and 6,128,298.

[4]Given the relationship between Cisco and ARRIS (as suppliers of the accused products) and their customers, the enforcement strategies attributed to the related group of patent owners at bar, and the argument conducted on October 8, 2014, I am satisfied that I have jurisdiction to resolve at least this specific matter in the context of these DJ cases, even in the absence of direct threats against the suppliers/DJ plaintiffs. *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 906 (Fed. Cir. 2014).

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| CONSTELLATION TECHNOLOGIES LLC,<br><br>          Plaintiff,<br><br>v.<br><br>TIME WARNER CABLE INC. and TIME WARNER CABLE ENTERPRISES LLC<br><br>          Defendants. | Civil Action No. 2:13-cv-1079-RSP<br><br>**JURY TRIAL DEMANDED** |
| TIME WARNER CABLE INC.<br><br>          Counterclaim-Plaintiff,<br><br>v.<br><br>CONSTELLATION TECHNOLOGIES LLC and ROCKSTAR CONSORTIUM US LP,<br><br>Counterclaim-Defendants. | |

## ANSWER AND COUNTERCLAIMS

Time Warner Cable Inc. and Time Warner Cable Enterprises LLC (collectively, "TWC") answers Constellation Technologies LLC's ("Constellation") First Amended Complaint ("Complaint") as follows:

### THE PARTIES

1.      TWC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 1 and on that basis denies them.

2.      TWC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 2 and on that basis denies them.

3.      TWC lacks knowledge or information sufficient to form a belief about the truth

of the allegations in Complaint paragraph 3 and on that basis denies them.

    4.      TWC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 4 and on that basis denies them.

    5.      Admitted.

    6.      Admitted.

    7.      TWC admits generally that it provides high-speed data services to certain of its customers in portions of the United States, including certain TWC customers in Texas.  To the extent that Complaint paragraph 7 contains any additional allegations, they are denied.

    8.      TWC admits generally that it provides video services to certain customers in portions of the United States, including certain customers in Texas.  To the extent that Complaint paragraph 8 contains any additional allegations, they are denied.

    9.      TWC admits generally that it provides voice services to certain customers in portions of the United States, including certain customers in Texas.  To the extent that Complaint paragraph 9 contains any additional allegations, they are denied.

    10.      TWC admits generally that it offers certain video services, high-speed data and voice services in certain regions throughout the United States, including Texas.  The remaining allegations in Paragraph 10 are vague and ambiguous and on that basis TWC denies them.

## **FACTUAL BACKGROUND**

    11.      TWC admits that prior to its dissolution in 2011, Nortel Networks Corporation was a large supplier of communications and data networking products and services.  TWC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Complaint paragraph 11 and on that basis denies them.

    12.      TWC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 12 and on that basis denies them.

13.     TWC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 13 and on that basis denies them.

14.     TWC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 14 and on that basis denies them.

15.     TWC admits that it and Rockstar had limited correspondence prior to Rockstar initiating the present lawsuit. TWC denies the remaining allegations in Complaint paragraph 15.

16.     TWC admits that Rockstar and Constellation have not engaged TWC in direct, substantive license negotiations after Constellation filed the original December 12, 2013 Complaint.  TWC denies the remaining allegations in Complaint paragraph 16.

17.     TWC admits that Constellation brought a patent infringement action on U.S. Patent Nos. 6,128,649; 6,845,389; 6,901,048; 7,154,879; 8,134,917; and 8,464,299 (collectively, the "Patents-in-Suit") on December 12, 2013.  TWC denies that it had knowledge of the Patents-in-Suit prior to the filing of the original December 12, 2013 Complaint.  TWC denies the remaining allegations in Complaint paragraph 17.

18.     TWC denies the allegations contained in Complaint paragraph 18.

## JURISDICTION AND VENUE

19.     TWC states that the allegations in Complaint paragraph 19 contain legal conclusions that require no answer.  To the extent an answer is required, TWC admits that the Court has subject matter jurisdiction over this action, but denies that any factual or legal basis exists for any of Constellation's claims against TWC in this action or that Constellation is entitled to any relief whatsoever.

20.     TWC states that the allegations in Complaint paragraph 20 contain legal conclusions that require no answer.  To the extent an answer is required, TWC denies the allegations contained in Complaint paragraph 20.

21.     TWC states that the allegations in Complaint paragraph 21 contain legal conclusions that require no answer.  To the extent an answer is required, for purposes of this action only, TWC admits that the Court has specific personal jurisdiction over TWC in this district.  TWC admits that it has transacted business in the State of Texas.  TWC denies the remaining allegations contained in Complaint paragraph 21.

**FIRST CLAIM FOR RELIEF**
**(INFRINGEMENT OF U.S. PATENT NO. 6,128,649)**

22.     TWC incorporates by reference its answers to paragraphs 1-21 as if fully set forth herein.

23.     TWC admits that, according to the records of the U.S. Patent and Trademark Office ("USPTO"), the USPTO issued U.S. Patent No. 6,128,649 (the "'649 patent") bearing the title "Dynamic Selection Of Media Streams For Display."  TWC admits that, on information and belief, Exhibit A to the Complaint appears to be a copy of the '649 patent.  To the extent Complaint paragraph 23 contains any other allegations, they are denied.

24.     TWC admits that Keith M. Smith and Russell W. Pretty are the named inventors on the face of the '649 patent.

25.     TWC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 25 and on that basis denies them

26.     TWC admits that Complaint paragraph 26 reproduces language contained in column 1, lines 6-9 of the '649 patent.  To the extent Complaint paragraph 26 contains any other allegations, they are denied.

27.     TWC admits that Complaint paragraph 27 reproduces language contained in column 27, line 59 through column 28, line 8 of the '649 patent.  To the extent Complaint paragraph 27 contains any other allegations, they are denied.

28.     TWC admits that it has deployed technology sometimes referred to as switched digital video ("SDV").  TWC denies the remaining allegations in Complaint paragraph 28 and denies that it infringes any claim of the '649 patent whatsoever.

29.     TWC admits that it advertises and markets video services.  TWC admits that that it uses SDV technology in connection with providing video services to certain customers. TWC denies the remaining allegations in Complaint paragraph 29 and denies that it infringes any claim of the '649 patent whatsoever.

30.     TWC denies the allegations contained in Complaint paragraph 30.

31.     TWC denies the allegations contained in Complaint paragraph 31.

32.     TWC denies the allegations contained in Complaint paragraph 32

33.     TWC denies the allegations contained in Complaint paragraph 33.  .  Further, TWC reasonably believes that the '649 patent is not infringed for at least the reasons set forth in TWC's response to Constellation's Interrogatory No. 4 (and supplements thereto), and that the '649 patent is invalid for at least the reasons set forth in TWC's May 23, 2014 invalidity contentions (and amendments thereto).

### SECOND CLAIM FOR RELIEF
### (INFRINGEMENT OF U.S. PATENT NO. 6,845,389)

34.     TWC incorporates by reference its answers to paragraphs 1-33 as if fully set forth herein.

35.     TWC admits that, according to the records of the USPTO, the USPTO issued U.S. Patent No. 6,845,389 ( the "'389 patent") bearing the title "System And Method For Broadband Multi-user Communication Sessions" on January 18, 2005.  TWC admits that, on information and belief, Exhibit B to the Complaint appears to be a copy of the '389 patent.  To the extent Complaint paragraph 35 contains any other allegations, they are denied.

36.     TWC admits that Sanjoy Sen, Venson Shaw, Hrishikesh Gossain, and Thinh Nguyen are the named inventors on the face of the '389 patent.

37.     TWC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 37 and on that basis denies them

38.     TWC admits that column 1, lines 16-19 of the '389 patent state "[t]his invention relates to telecommunications equipment and networks, and more particularly, to a system and method for broadband multi-user communication sessions such as e-gaming." To the extent Complaint paragraph 38 contains any other allegations, they are denied.

39.     TWC admits that Complaint paragraph 39 reproduces language contained in column 8, line 64 through column 9, line 19 of the '389 patent.  To the extent Complaint paragraph 39 contains any other allegations, they are denied.

40.     TWC admits that it provides voice, video, and data services to certain of its customers in certain regions of the United States.  TWC denies the remaining allegations in Complaint paragraph 40 and denies that it infringes any claim of the '389 patent whatsoever.

41.     TWC denies the allegations contained in Complaint paragraph 41.

42.     TWC admits that it advertises and markets voice services, including Voice over IP ("VoIP") services, to certain customers.  TWC denies the remaining allegations in Complaint paragraph 42 and denies that it infringes any claim of the '389 patent whatsoever.

43.     TWC denies the allegations contained in Complaint paragraph 43.

44.     TWC denies the allegations contained in Complaint paragraph 44.

45.     TWC denies the allegations contained in Complaint paragraph 45.

46.     TWC denies the allegations contained in Complaint paragraph 46.  Further, TWC reasonably believes that the '389 patent is not infringed for at least the reasons set forth in

TWC's response to Constellation's Interrogatory No. 4 (and supplements thereto), and that the '389 patent is invalid for at least the reasons set forth in TWC's May 23, 2014 invalidity contentions (and amendments thereto).

### THIRD CLAIM FOR RELIEF
### (INFRINGEMENT OF U.S. PATENT NO. 6,901,048)

47.     TWC incorporates by reference its answers to paragraphs 1-46 as if fully set forth herein.

48.     TWC admits that, according to the records of the USPTO, the USPTO issued U.S. Patent No. 6,901,048 (the "'048 patent") bearing the title "Link-Level Protection Of Traffic In A Packet-Switched Network" on May 31, 2005.  TWC admits that, on information and belief, Exhibit C to the Complaint appears to be a copy of the '048 patent.  To the extent Complaint paragraph 48 contains any other allegations, they are denied.

49.     TWC admits that Guo Qiang Q. Wang, Kent E. Felske, Wenfeng Chen, Chenjiang Hu, and Liangyu L. Jia are the named inventors on the face of the '048 patent.

50.     TWC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 50 and on that basis denies them.

51.     TWC admits that column 1, lines 15-18 of the '048 patent state "[t]he present invention relates to compute networks, and more specifically to a computer network that provides automatic protection switching to re-route data packets in the event of a network link failure."  To the extent Complaint paragraph 51 contains any other allegations, they are denied.

52.     TWC admits that Complaint paragraph 52 reproduces language contained in column 2, lines 47-51 of the '048 patent.  To the extent Complaint paragraph 52 contains any other allegations, they are denied.

53.     TWC admits that Complaint paragraph 53 reproduces language contained in

column 18, lines 39-50 of the '048 patent.  To the extent Complaint paragraph 53 contains any other allegations, they are denied.

54.     TWC denies the allegations in Complaint paragraph 54 and denies that it infringes any claim of the '048 patent whatsoever.

55.     TWC denies the allegations contained in Complaint paragraph 55.

56.     TWC denies the allegations contained in Complaint paragraph 56.

57.     TWC denies the allegations contained in Complaint paragraph 57.

58.     TWC denies the allegations contained in Complaint paragraph 58.  Further, TWC reasonably believes that the '048 patent is not infringed for at least the reasons set forth in TWC's response to Constellation's Interrogatory No. 4 (and supplements thereto), and that the '048 patent is invalid for at least the reasons set forth in TWC's May 23, 2014 invalidity contentions (and amendments thereto).

**FOURTH CLAIM FOR RELIEF**
**(INFRINGEMENT OF U.S. PATENT NO. 7,154,879)**

59.     TWC incorporates by reference its answers to paragraphs 1-58 as if fully set forth herein.

60.     TWC admits that, according to the records of the USPTO, the USPTO issued U.S. Patent No. 7,154,879 (the "'879 patent") bearing the title "Point To Multipoint Network" on December 26, 2006.  TWC admits that, on information and belief, Exhibit D to the Complaint appears to be a copy of the '879 patent.  To the extent Complaint paragraph 60 contains any other allegations, they are denied.

61.     TWC admits that Robert Pfeffer, David mann [*sic*], and Brian Unitt are the named inventors on the face of the '879 patent.

62.     TWC lacks knowledge or information sufficient to form a belief about the truth

of the allegations in Complaint paragraph 62 and on that basis denies them.

63.     TWC admits that column 1, lines 13-18 of the '879 patent state "[t]he present invention relates to a method and apparatus for providing a high capacity point-to-multipoint network, a system incorporating the same, and signals generated by such a system.  This invention is particularly related to, but in no way limited to, point-to-multipoint networks, known as fibre to the user (FTTU)."  To the extent Complaint paragraph 63 contains any other allegations, they are denied.

64.     TWC admits that Complaint paragraph 64 reproduces language contained in column 2, lines 14-16 of the '879 patent.  To the extent Complaint paragraph 64 contains any other allegations, they are denied.

65.     TWC admits that Complaint paragraph 65 reproduces language contained in column 6, lines 21-39 of the '879 patent.  To the extent Complaint paragraph 65 contains any other allegations, they are denied.

66.     TWC admits that it uses technology sometimes referred to as Ethernet passive optical networks.  TWC denies the remaining allegations contained in Complaint paragraph 66 and denies that it infringes any claim of the '879 patent whatsoever.

67.     TWC admits that it advertises and markets a service to some of its customers sometimes referred to as whole house DVR.  TWC denies the remaining allegations contained in Complaint paragraph 67 and denies that it infringes any claim of the '879 patent whatsoever.

68.     TWC denies the allegations contained in Complaint paragraph 68.

69.     TWC denies the allegations contained in Complaint paragraph 69.

70.     TWC denies the allegations contained in Complaint paragraph 70.

71.     TWC denies the allegations contained in Complaint paragraph 71.  Further,

9

TWC reasonably believes that the '879 patent is not infringed for at least the reasons set forth in TWC's response to Constellation's Interrogatory No. 4 (and supplements thereto), and that the '048 patent is invalid for at least the reasons set forth in TWC's May 23, 2014 invalidity contentions (and amendments thereto).

## FIFTH CLAIM FOR RELIEF
### (INFRINGEMENT OF U.S. PATENT NO. 8,134,917)

72.    TWC incorporates by reference its answers to paragraphs 1-71 as if fully set forth herein.

73.    TWC admits that, according to the records of the USPTO, the USPTO issued U.S. Patent No. 8,134,917 (the "'917 patent") bearing the title "Automatic Protection Switching Using Link-Level Redundancy Supporting Multi-Protocol Label Switching" on March 13, 2012. TWC admits that, on information and belief, Exhibit E to the Complaint appears to be a copy of the '917 patent.  To the extent Complaint paragraph 73 contains any other allegations, they are denied.

74.    TWC admits that Andre N. Fredette, Loa Andersson, Naganand Doraswamy, and Anoop Ghanwani are the named inventors on the face of the '917 patent.

75.    TWC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 75 and on that basis denies them.

76.    TWC admits that column 1, lines 13-16 of the '917 patent states "[t]he present invention relates to computer networks, and more specifically to a computer network that provides protection switching to reroute data packets in the event of a network link failure."  To the extent Complaint paragraph 76 contains any other allegations, they are denied.

77.    TWC admits that column 3, lines 37-40 of the '917 patent states "[r]epresentative embodiments of the present invention use a label switching protocol to

establish backup paths with explicit routing for use in the event of a link failure in a computer network." To the extent Complaint paragraph 77 contains any other allegations, they are denied.

78.     TWC admits that Complaint paragraph 78 reproduces language contained in column 7, lines 5-16 of the '917 patent. To the extent Complaint paragraph 78 contains any other allegations, they are denied.

79.     TWC denies the allegations in Complaint paragraph 79, and denies that it infringes any claim of the '917 patent whatsoever.

80.     TWC denies the allegations contained in Complaint paragraph 80.

81.     TWC denies the allegations contained in Complaint paragraph 81.

82.     TWC denies the allegations contained in Complaint paragraph 82.

83.     TWC denies the allegations contained in Complaint paragraph 83. Further, TWC reasonably believes that the '917 patent is not infringed for at least the reasons set forth in TWC's response to Constellation's Interrogatory No. 4 (and supplements thereto), and that the '048 patent is invalid for at least the reasons set forth in TWC's May 23, 2014 invalidity contentions (and amendments thereto).

## SIXTH CLAIM FOR RELIEF
## (INFRINGEMENT OF U.S. PATENT NO. 8,464,299)

84.     TWC incorporates by reference its answers to paragraphs 1-83 as if fully set forth herein.

85.     TWC admits that, according to the USPTO, the USPTO issued U.S. Patent No. 8,464,299 (the "'299 patent") bearing the title "Resource Conservation For Packet Television Services" issued on June 11, 2013. TWC admits that, on information and belief, Exhibit F to the Complaint appears to be a copy of the '299 patent. To the extent Complaint paragraph 85 contains any other allegations, they are denied.

11

86.     TWC admits that Rolf G. Meier and Tim J. Rahrer are the named inventors on the face of the '299 patent.

87.     TWC lacks knowledge or information sufficient to form a belief about the truth of the allegations in Complaint paragraph 87 and on that basis denies them

88.     TWC admits that Complaint paragraph 88 reproduces language contained in column 1, lines 12-15 of the '299 patent.  To the extent Complaint paragraph 88 contains any other allegations, they are denied.

89.     TWC admits that Complaint paragraph 89 reproduces language contained in column 1, lines 37-39 of the '299 patent.  To the extent Complaint paragraph 88 contains any other allegations, they are denied.

90.     TWC admits that column 1, lines 40-42 of the '299 patent states "[a] significant waste of network resources occurs when television content is delivered to a television monitor that is not being viewed" and that column 1, lines 55-57 of the '299 patent states "[a]s such, there is a need for a technique to control delivery of the television content to conserve network resources when the television content is not being viewed."  To the extent Complaint paragraph 90 contains any other allegations, they are denied.

91.     TWC admits that Complaint paragraph 91 reproduces language contained in column 8, lines 11-30 of the '299 patent.  To the extent Complaint paragraph 91 contains any other allegations, they are denied.

92.     TWC admits that it has deployed technology sometimes referred to as SDV. TWC denies the remaining allegations in Complaint paragraph 92 and denies that it infringes any claim of the '299 patent whatsoever.

93.     TWC admits that it advertises and markets video services to its customers.

TWC admits that that it uses technology called SDV in connection with providing video services to certain customers.  TWC denies the remaining allegations in Complaint paragraph 93 and denies that it infringes any claim of the '299 patent whatsoever.

94.     TWC denies the allegations contained in Complaint paragraph 94.

95.     TWC denies the allegations contained in Complaint paragraph 95.

96.     TWC denies the allegations contained in Complaint paragraph 96.

97.     TWC denies the allegations contained in Complaint paragraph 97.

98.     TWC denies the allegations contained in Complaint paragraph 98.  Further, TWC reasonably believes that the '299 patent is not infringed for at least the reasons set forth in TWC's response to Constellation's Interrogatory No. 4 (and supplements thereto), and that the '048 patent is invalid for at least the reasons set forth in TWC's May 23, 2014 invalidity contentions (and amendments thereto).

## PRAYER FOR RELIEF

TWC denies that Constellation is entitled to any relief, either as prayed for in its Complaint or otherwise.

## GENERAL DENIAL

99.     TWC further denies each and every allegation contained in the Complaint to which TWC has not specifically admitted, denied, or otherwise responded to herein.

## DEFENSES

100.     TWC asserts the following defenses in response to the Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.

## FIRST DEFENSE – FAILURE TO STATE A CLAIM

101.     Constellation has failed to state a claim upon which relief may be granted.

## SECOND DEFENSE – PATENT INVALIDITY

102.     Constellation's purported claims for infringement of the Patents-in-Suit are barred because the claims of those patents are invalid for failure to comply with the requirements of Title 35, United States Code, including at least §§ 101, 102, 103, and/or 112.

## THIRD DEFENSE – NON-INFRINGEMENT

103.     TWC does not infringe and has not infringed, directly or indirectly, any valid and enforceable claim of the Patents-in-Suit.

## FOURTH DEFENSE – MARKING

104.     Constellation is barred in whole or in part from recovering damages under 35 U.S.C. § 287, including because Nortel failed to mark patented articles.

## FIFTH DEFENSE – GOVERNMENT SALES

105.     Constellation's claims for relief and prayer for damages are limited by 28 U.S.C. § 1498(a).

## SIXTH DEFENSE – EQUITABLE DOCTRINES

106.     Some or all of Constellation's claims are barred by one or more of the doctrines of waiver, acquiescence, laches, estoppel (including without limitation equitable estoppel, prosecution history estoppel, and implied license by estoppel), unclean hands and/or other equitable doctrines, including because Nortel declined to enforce the Patents-In-Suit.

## SEVENTH DEFENSE – EXHAUSTION/EXPRESS OR IMPLIED LICENSE

107.     Constellation's claims are barred, in whole or in part, by the doctrines of exhaustion, express or implied license and/or other authorization, including because Nortel granted express or implied licenses to the Patents-In-Suit.

## EIGHTH DEFENSE – LACK OF STANDING

108.     To the extent applicable, Constellation lacks standing to enforce one or more of

the Patents-In-Suit.

## NINTH DEFENSE – LACK OF OWNERSHIP

109.    To the extent applicable, Constellation does not own one or more of the Patents-In-Suit.

## TENTH DEFENSE – NO WILLFUL INFRINGEMENT

110.    TWC had no actual knowledge of the Patents-in-Suit prior to December 11, 2013, when Constellation filed this action.

111.    TWC reasonably believes that it does not infringe any of the Patents-in-Suit for at least the reasons set forth in its responses to Constellation's Interrogatory No. 4 and supplements thereto.

112.    TWC reasonably believes that each of the Patents-in-Suit is invalid for at least the reasons set forth in its invalidity contentions and amendments thereto.

113.    TWC does not know and cannot reasonably have known of any risk that TWC infringed the Patents-in-Suit.

## ELEVENTH DEFENSE — LIMITATION ON DAMAGES

114.    Constellation's ability to recover damages is limited by Nortel's participation in such industry standard setting organizations and/or through promises or statements made about the terms under which such patents would be made available for license.

## COUNTERCLAIMS

For its Counterclaims, Time Warner Cable Inc. ("TWC") alleges the following against Constellation Technologies LLC ("Constellation") and Rockstar Consortium US LP ("Rockstar"):

### PARTIES

1.      Time Warner Cable is a Delaware corporation with its principal place of business located at 60 Columbus Circle, New York, NY 10023.

2.      Constellation is a Delaware limited liability company that purports to have its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway Suite 250, Plano, TX 75024.

3.      Constellation is a wholly owned-subsidiary of Rockstar Consortium LP ("Rockstar"), which is a Delaware limited partnership that also purports to have its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway, Suite No. 250, Plano, TX 75024.

4.      John Garland is the Vice President of patent licensing at Rockstar and the president of Constellation.

### NATURE OF THE ACTION AND JURISDICTIONAL STATEMENT

5.      This action arises under the Declaratory Judgment Act (28 U.S.C. § 2201 *et seq.*) and under the patent laws of the United States (35 U.S.C. § 1 *et seq*).

6.      Constellation has asserted that TWC infringes U.S. Patent Nos. 6,128,649; 6,845,389; 6,901,048; 7,154,879; 8,134,917; and 8,464,299 (collectively, the "Patents-in-Suit").

7.      The Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, 2201(a), and 2202.

16

8.      This Court has personal jurisdiction over Constellation because its purported

principal place of business is in this district and by virtue of filing patent infringement claims

against TWC in this district.

9.      TWC contests that venue is proper in this district.  But to the extent that the

Court finds that venue is proper for Constellation's action, venue is also proper in this district

pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b) for TWC's counterclaims.

## FACTS

10.     Prior to its dissolution in 2011, Nortel Networks Corporation was a large

supplier of communications and data networking products and services.  Nortel Networks

Corporation and its subsidiaries (collectively, "Nortel") sold communications and data

networking products and services to a host of commercial and governmental customers,

including cable operators, wireline and wireless telecommunications service providers, Internet

service providers, and educational institutions.

11.     By the time Nortel filed for bankruptcy in 2009, it had amassed approximately

8,500 U.S. and foreign patents and patent applications.  During its liquidation in 2011, Nortel

packaged the vast majority of its patents and patent applications (approximately 6,000) for

auction as a stand-alone patent portfolio (the "Nortel Patent Portfolio").  Nortel described the

Nortel Patent Portfolio as covering, among many other things, "nearly every aspect of

telecommunications."  (Ex. 1 at 1.)

## NORTEL'S PARTICIPATION IN
## SETTING COMMUNICATIONS AND DATA NETWORKING STANDARDS

### THE STANDARD SETTING PROCESS

12.     Technical standards for communications and data networking technologies are

usually developed through the efforts of standard development organizations ("SDOs"), whose

membership includes industry participants, such as hardware manufacturers, software designers, and service providers.  The standards established by SDOs play a significant role in the development of communications and data networking technologies because they facilitate, for example, adoption of new technologies and the development of interoperable hardware.

13.     SDOs promulgate policies and procedures that control the disclosure and licensing of patents held by standard setting participants that may read on standards under consideration.  Those policies and procedures are typically set out in each SDO's bylaws or intellectual property rights policies ("IPR policies").

14.     IPR policies generally require participants to disclose patents that relate to the standards being considered by the SDO.  Those disclosures allow the SDO and its members to evaluate technologies with full knowledge of patent rights that may affect the industry-wide cost of adopting that technology as part of a new standard.

15.     In the event the patent holder will not commit to those licensing terms, participants in the standards development process have the option to design around the disclosed patent or select a different standard that does not read on the disclosed patent.

NORTEL'S PARTICIPATION IN SDOs AND
F/RAND AND/OR ROYALTY-FREE LICENSING COMMITMENTS

16.     Before its bankruptcy, Nortel stated that it participated in "85 global, regional, and national standards organizations, forums and consortia, spanning IT and telecom," including many organizations in which Nortel held a leadership position.  (Ex. 2 at 14.)

17.     The SDOs in which Nortel participated included the Institute of Electrical and Electronics Engineers ("IEEE"), the International Telecommunications Union ("ITU"), the Internet Engineering Task Force ("IETF"), the 3rd Generation Partnership Project ("3GPP"), the Alliance for Telecommunication Industry Solutions ("ATIS"), the European

18

Telecommunications Standard Institute ("ETSI"), the World Wide Web Consortium ("W3C"),

the Telecommunications Industry Association ("TIA"), and the Broadband Forum.

18.     In accordance with the established policies of at least the above-mentioned

SDOs in which Nortel participated, Nortel bound several of the patents from the Nortel Patent

Portfolio to be licensed on F/RAND and/or royalty-free terms.

19.     In accordance with the established policies of at least the above-mentioned

SDOs in which Nortel participated, Nortel irrevocably committed to license on F/RAND and/or

royalty-free terms any patents from the Nortel Patent Portfolio essential to SDO standards.

20.     Eleven versions of the Standards Board Bylaws for the IEEE, dated December

1999 through February 2013, are attached as Exhibits 3-13.  Each version of those bylaws

provides that:  (1) "IEEE standards may include the known use of essential patents and patent

applications provided the IEEE receives assurance[s] from the patent holder," and (2) the

assurance provided by the patent holder should be either a disclaimer of enforcement against the

standard or a commitment to provide a license on F/RAND terms to "an unrestricted number of

applicants."  (Exs. 6-13 at Bylaw 6.)  The IEEE bylaws also provide that assurances are

"irrevocable" until "the date of the standard's withdrawal."  (*Id.*).  The IEEE bylaws state that

"[t]he Submitter [of any assurances] and all Affiliates (other than those Affiliates excluded in a

Letter of Assurance) shall not assign or otherwise transfer any rights in any Essential Patent

Claims that are the subject of such Letter of Assurance that they hold, control, or have the ability

to license with the intent of circumventing or negating any of the representations and

commitments made in such Letter of Assurance."  (*Id.*)

21.     Seven versions of the Guidelines for Implementation of the Common Patent

Policy for ITU-T/ITU-R/ISO/IEC, dated July 1999 through April 2012, are attached as Exhibits

14-20.  Each version of those guidelines generally provides that participants are:  (1) required to disclose known patents and patent applications that relate to standards under consideration and (2) encouraged to commit, by declaration, to license standard essential patents on F/RAND and/or royalty-free terms.  (*See* Ex. 14 [1999] at §§ 2.4 and 2.5; Ex. 41 [2007] at §§ 3 and 4.) Those guidelines attach two forms to allow participants to file licensing declarations: (1) a specific licensing declaration with respect to specific standards and patents and (2) a general licensing declaration with respect to any of the participant's patents and patent applications that are covered by the participant's standard submissions.  (*See* Ex. 20 at Annexes 2 and 3.)  Both licensing declarations allow for "an unrestricted number of applicants."  (*See id.*).

22.     The Common Patent Policy also states that "[i]n the event a Patent Holder participating in the work of the Organizations assigns or transfers ownership or control of Patents for which the Patent Holder reasonably believes it has made a license undertaking to the ITU/ISO/IEC, the Patent Holder shall make reasonable efforts to notify such assignee or transferee of the existence of such license undertaking. In addition, if the Patent Holder specifically identified patents to ITU/ISO/IEC, then the Patent Holder shall have the assignee or transferee agree to be bound by the same licensing commitment as the Patent Holder for the same patent." (*See id.* at 5).

23.     Five versions of the IPR policy for the IETF, dated March 1992 through March 2005, are attached as Exhibits 21-25.  Each version of that policy provides that participants are: (1) required to disclose known patents and patent applications that they own, directly or indirectly, and that relate to standards under consideration and (2) encouraged to commit to license standard essential patents on F/RAND and/or royalty-free terms.  (*See* Exs. 21 and 25 [1992 and 2005] at § 6.)

20

24.     Four versions of the IPR policy for the 3GPP, dated July 1999 through October 2007, are attached as Exhibits 26-29.  Two versions of the IPR policy for ATIS, dated January 2006 through February 2012, are attached as Exhibits 30-31.  Five versions of the IPR policy for ETSI, dated November 2000 through April 2013, are attached as Exhibits 32-36.

25.     Nortel and its subsidiaries participated in drafting portions of the 3GPP specification concerning IP Multimedia Subsystems ("IMS"), including, for example, section 7.2 "IMS Multimedia Telephony and Supplementary Services (IMSTSS)" of 3GPP Release 8.  (See Exhibit 37).  The 3GPP IPR policies require that participant companies, such as Nortel, be members of certain member organizations, such as ATIS and ETSI, which obligate members to disclose certain patents related to specifications and standards to which they have contributed.  Nortel made representations to ATIS and/or ETSI committing to license any of its patents that read on 3GPP IMS standards on F/RAND and/or royalty-free terms in connection with its participation in drafting the 3GPP IMS specifications.

26.     By specific Letters of Assurance ("LOAs") to each of the IEEE, ITU, and IETF, Nortel made at least 57 commitments to license SEPs on F/RAND and/or royalty-free terms that were later transferred to Rockstar.  Nortel disclosed and auctioned the Nortel patent subject to commitments made to SDOs and which Nortel committed to license on F/RAND and/or royalty-free terms.

27.     By general LOAs to each of the SDOs, Nortel made general commitments to license on F/RAND and/or royalty-free terms all of its patents that are essential to implement particular standards or, in the case of the IETF, all of its patents that are essential to implement any IETF standard to which Nortel contributed.  Exhibit 38 lists the SDOs to which Nortel made a general licensing commitment, the standard(s) for which Nortel made the general licensing

commitment, an excerpt of the licensing commitment language, and the Web address at which

Nortel's LOAs can be found.

28.     As documented in Exhibit 39, Nortel Networks made a commitment to "grant a

nonexclusive license to Nortel patent claims that are essential for implementation of an existing

IEEE 802.3 Standard on a nondiscriminatory basis and on reasonable terms and conditions . . . ."

The technology for Ethernet Passive Optical Networks ("EPON") is an existing 802.3 Standard.

29.     As documented in Exhibit 40, Nortel Networks made the following commitment

to the IETF:  "Nortel Networks may seek patent rights on technology described in a document

which Nortel Networks contributes for use in IETF standards discussions or standards track

specifications.  If such patented technology is essential for the implementation, use, and

distribution, of an IETF standard, Nortel Networks is willing to make available nonexclusive

licenses on fair, reasonable, and non-discriminatory terms and conditions, to such patent rights it

owns, solely to the extent such technology is essential to comply with such IETF standard."

30.     Nortel employees had leadership roles in the IETF and, Nortel contributed to at

least the IETF standards for RFC 3209, RFC 4090, "Fast Reroute Extensions to RSVP-TE for

LSP Tunnels," and RFC 4364, "BGP/MPLS IP Virtual Private Networks (VPNs)."  (Ex. 2 at 14.)

31.     Nortel benefitted in numerous ways from having its technologies adopted by

SDOs for inclusion in standards.  For example, standardization of Nortel's technologies by SDOs

led to wide adoption of those technologies in the communications industry—with the use of

those technologies required by all manufacturers and service providers that implement that

standard.  Standardization also increased the size of the market available to Nortel as a developer

of telecommunications equipment.

32.     Industry participants, such as TWC, who use equipment that complies with an

industry standard set by an SDO are intended third-party beneficiaries of F/RAND and/or royalty-free licensing commitments that a patent holder makes to the SDO.

### ROCKSTAR ACQUIRES THE NORTEL PATENTS AND, THROUGH CONSTELLATION, ASSERTS THEM AGAINST TWC

33. On January 14, 2009, Nortel filed for bankruptcy protection in the United States, Canada, and the United Kingdom.

34. During bankruptcy proceedings, Nortel auctioned various business units and other assets. The last major asset to be liquidated in the bankruptcy proceedings was the Nortel Patent Portfolio.

35. The Nortel Patent Portfolio consisted of approximately 6,000 U.S. patents, foreign patents, and patent applications, and related to a wide range of technologies including wireless, wireless 4G, data networking, optical, voice, Internet, and semiconductors.

36. A consortium of companies, including Apple, Microsoft, Sony, Ericsson, and Research in Motion, acquired the Nortel Patent Portfolio via auction. The Nortel Patent Portfolio includes the Patents-in-Suit.

37. When the consortium of companies acquired the Nortel Patent Portfolio from the Nortel bankruptcy estate, based on the terms of the bankruptcy sale order, the consortium assumed certain encumbrances that included commitments made to SDO and industry groups. As a result, they were obligated to offer licenses in accordance with Nortel's F/RAND and royalty-free licensing commitments to SDOs.

38. After the consortium of companies won the auction for the Nortel Patent Portfolio, some of the patents from the Nortel patent portfolio were transferred to Rockstar.

39. Rockstar and Constellation are successors-in-interest to some of the patents from the Nortel Patent Portfolio.

23

40.     In an interview with *Wired* magazine, published on May 21, 2012, John Veschi, the CEO of Rockstar, stated that Rockstar was a "separate" company from Apple, Microsoft, and the other member companies of the consortium, and that promises and commitments made by those member companies did "not apply" to Rockstar.  (Ex. 41.)

41.     In the same interview, Mr. Veschi stated that "[p]retty much anybody out there is infringing, I would think.  It would be hard for me to envision that there are high-tech companies out there that don't use some of the patents in our portfolio."  (*Id.*)  At the time of the *Wired* interview, Rockstar owned the Patents-in-Suit.

## WHILE ASSERTING PATENTS AGAINST TWC, ROCKSTAR AND CONSTELLATION BREACHED F/RAND AND ROYALTY-FREE LICENSING OBLIGATIONS

42.     In January 2013, John Garland, purporting to be a representative of Rockstar, contacted a TWC in-house attorney and asked to discuss a possible business venture.

43.     In March 2013, Mr. Garland forwarded a non-legal TWC employee "a brief overview of Rockstar and out current patent asset/estate," including an attached PowerPoint presentation.  The presentation claimed that Rockstar's patent portfolio contained technologies required for many "notable standards," including standards for MPLS, MPLS Fast Re-Route, EPON, VoIP, and various IETF RFCs, as detailed above, Rockstar never identified any patents, let alone the patents-in-suit (out of the thousands of patents in its portfolio), and Rockstar never offered to license any patents on a F/RAND and/or royalty-free basis.

44.     Neither Rockstar nor Constellation communicated any specific infringement contentions to TWC, whether standards-based or otherwise, prior to filing suit against TWC on December 12, 2013.

45.     Rockstar's and Constellation's failure to identify a complete list of SEP patents and failure to identify a complete list of allegedly-infringed patents constituted a bad-faith

attempt to circumvent the obligations of Nortel's F/RAND and/or royalty-free commitments and to prevent TWC from enjoying the third-party benefit of those commitments. That tactic frustrated TWC's ability to negotiate a license to the unidentified patents Rockstar alleged were necessary to comply with many "notable standards."

46.     On March 25, 2014, TWC wrote Mr. Garland and asked Constellation to "please also provide a licensing proposal that Time Warner Cable and its vendors can consider, including your proposed fair, reasonable and nondiscriminatory (FRAND) royalty rate." Constellation has not proposed a F/RAND proposal and royalty rate.

47.     Constellation's failure to provide a straight-forward licensing proposal for SEP patents after alleging that TWC needed a license to practice "notable standards," including MPLS, MPLS Fast Re-Route, EPON, VoIP, and various IETF RFCs was a breach of its F/RAND and/or royalty-free licensing obligations.

48.     Constellation and Rockstar asserted their patents against several other cable-related companies based on their alleged use of standards. *See generally Charter et al. v. Rockstar Consortium et al.*, No. 14-055, Dkt. 53 (D. Del.) (Ex. 42); *ARRIS Group et. al. v. Constellation Tech.*, No. 14-114, Dkt. 24 (D. Del.); *Bockstar Tech. v. Cisco Systems*, No. 13-2020, Dkt. 37 (D. Del.).

49.     Rockstar and Constellation similarly refused to identify the full list of patents that other multi-service cable companies in the industry purportedly infringed.  Instead, Rockstar provided only what it deemed "exemplary" patents from its portfolio for evaluation, similarly leaving accused infringers with no way to meaningfully evaluate Rockstar's infringement allegations, to refute its allegations of infringement, or to determine the actual value of the relevant patents within Rockstar's portfolio.  (Ex. 42 ¶ 172.)

50.     Since October 2013, Rockstar and its wholly-owned subsidiaries have filed

multiple lawsuits in which they accuse various technology companies of infringing patents

within the portfolio.

51.     Constellation and Rockstar use restrictive non-disclosure agreements to prohibit

communications between various participants in the communications industries.  Rockstar and

Constellation affirmatively require that assertion and/or litigation targets enter into non-

disclosure agreements ("NDAs") before disclosing infringement allegations or licensing

demands.  Those bad-faith NDAs are intended to prevent its assertion and/or litigation targets,

like TWC, from ensuring that any license negotiated would be on F/RAND terms, facilitating

Constellation and Rockstar's efforts to extract fees in excess of those it was entitled to pursuant

to its royalty-free or F/RAND licensing obligations.  (*See, e.g.*, Ex. 42 ¶ 178.)

52.     Based on the foregoing, Constellation and Rockstar require parties to execute

non-disclosure agreements, not in a good-faith attempt to protect both parties during negotiation,

but rather, to erect a wall that would allow Constellation and Rockstar to leverage an alleged

competitive advantage and conduct its improper licensing campaign with less risk of exposure—

to other targets, or antitrust authorities—and therefore less chance of being held accountable for

violating its royalty-free and/or F/RAND obligations.  For example, Rockstar's and

Constellation's NDAs prevent assertion and/or litigation targets from comparing infringement

allegation and license demands to ensure that they are "non-discriminatory."

53.     Using its inappropriate licensing strategy, Rockstar has refused to engage in good

faith negotiation as required pursuant to its obligations to license its patents on royalty-free or

F/RAND terms.

## OWNERSHIP OF THE PATENTS-IN-SUIT

54.     Rockstar represented that it was the owner and/or had the authority to negotiate

licenses in connection with all of the patents in its portfolio, including the Patents-in-Suit.
Rockstar, to this day, continues to communicate with the assertion and/or litigation targets in an
effort to license the entire portfolio of patents.

55.     Constellation alleges that it is now the assignee of the Patents-in-Suit that were
originally included in the Rockstar portfolio, and that it owns all rights title, and interest in those
patents.

56.     By engaging in negotiations to license not only its own patents but also those it
has apparently assigned to Constellation, at all times Rockstar representatives were purporting to
act not only on behalf of itself, but also on behalf of Constellation.

57.     Rockstar purports to have assigned the Patents-in-Suit to Constellation on
November 13, 2013.  Rockstar did not inform TWC before transferring those patents to
Constellation.  Based on Constellation's failure to abide by F/RAND obligations, Rockstar
transferred the Patents-In-Suit to Constellation in a bad-faith attempt to obfuscate the assignee of
the Patents-In-Suit and subvert the F/RAND encumbrances on those patents.

58.     Less than one month later, Rockstar, having not spoken to TWC for over five
months, filed suit in this district through its wholly-owned subsidiary, Constellation, accusing
TWC of infringing the Patents-in-Suit.

59.     Constellation is a shell entity that is merely a front for Rockstar and its agents.
For example, as described above, John Garland is the Vice President of patent licensing at
Rockstar and the president of Constellation.  Furthermore, Rockstar formed Constellation one
month before Constellation initiated two patent infringement lawsuits in the Eastern District of
Texas.  The Northern District of California has ruled that Rockstar's formation of another entity
under similar circumstances (MobileStar Technologies, LLC) "strongly suggest[s] that Rockstar

formed Mobilestar as a sham entity. . . ." *Google Inc. v. Rockstar Consortium U.S. LP*, 2014 WL

1571807, at *4 (N.D. Cal. Apr. 17, 2014).

## FIRST CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,128,649 (AGAINST CONSTELLATION)

60.     TWC incorporates by reference the allegations set forth in the other sections of

its Counterclaims.

61.     Constellation claims to own all rights, title, and interest in the '649 Patent.

62.     Constellation has brought suit against TWC, alleging that TWC's "switched

digital video ("SDV") services and systems, TWC's video on demand ("VOD") services and

systems, TWC's IP cable television services (including TWC TV App) and systems, and TWC's

videoconferencing services and systems" infringe certain claims of the '649 Patent.

63.     Absent a declaration that TWC's SDV services and systems, TWC's VOD

services and systems, TWC's IP cable television services (including TWC TV App) and systems,

and TWC's videoconferencing  services and systems do not infringe the '649 Patent,

Constellation will continue to wrongfully assert the '649 Patent against TWC and thereby cause

TWC irreparable harm and injury.

64.     A substantial, immediate, and real controversy therefore exists between TWC

and Constellation as to whether TWC's products infringe the '649 Patent.

65.     Based on the foregoing, TWC hereby requests a declaration from the Court that

TWC's services and systems (and/or their use by TWC and its customers), do not directly or

indirectly infringe any claim of the '649 Patent.

## SECOND CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,128,649 (AGAINST CONSTELLATION)

66.     TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

67.     Constellation claims to own all rights, title, and interest in the '649 Patent.

68.     Constellation has accused TWC of infringing the '649 Patent in this litigation.

69.     The claims of the '649 Patent are invalid under the provisions of Title 35, United States Code, including but not limited to, §§ 101, 102, 103 and/or 112, at least for the reasons stated and references cited in TWC's May 23, 2014 invalidity contentions.

70.     Absent a declaration that the claims of the '649 Patent are invalid, Constellation will continue to wrongfully assert the '649 Patent against TWC and thereby cause TWC irreparable harm and injury.

71.     A substantial, immediate, and real controversy therefore exists between Constellation and TWC as to whether the claims of the '649 Patent are invalid.

72.     Based on the foregoing, TWC hereby requests a declaration from the Court that the claims of the '649 Patent are invalid.

## THIRD CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,845,389 (AGAINST CONSTELLATION)

73.     TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

74.     Constellation claims to own all rights, title, and interest in the '389 Patent.

75.     Constellation has brought suit against TWC, alleging that one or more TWC services infringe certain claims of the '389 Patent.

76.     Absent a declaration that TWC's IP Multimedia Subsystem networks, TWC's operation and maintenance of its IP Multimedia Subsystem networks, and services that TWC

offers over IP Multimedia Subsystem networks, including IP voices, video, gaming and data services do not infringe the '389 Patent, Constellation will continue to wrongfully assert the '389 Patent against TWC and thereby cause TWC irreparable harm and injury.

77.     A substantial, immediate, and real controversy therefore exists between TWC and Constellation as to whether TWC's products infringe the '389 Patent.

78.     Based on the foregoing, TWC hereby requests a declaration from the Court that TWC's services and systems (and/or their use by TWC and its customers), do not directly or indirectly infringe any claim of the '389 Patent.

**FOURTH CLAIM FOR RELIEF**

<u>DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,845,389
(AGAINST CONSTELLATION)</u>

79.     TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

80.     Constellation claims to own all rights, title, and interest in the '389 Patent.

81.     Constellation has accused TWC of infringing the '389 Patent in this litigation.

82.     The claims of the '389 Patent are invalid under the provisions of Title 35, United States Code, including but not limited to, §§ 101, 102, 103 and/or 112, at least for the reasons stated and references cited in TWC's May 23, 2014 invalidity contentions

83.     Absent a declaration that the claims of the '389 Patent are invalid, Constellation will continue to wrongfully assert the '389 Patent against TWC and thereby cause TWC irreparable harm and injury.

84.     A substantial, immediate, and real controversy therefore exists between Constellation and TWC as to whether the claims of the '389 Patent are invalid.

85.     Based on the foregoing, TWC hereby requests a declaration from the Court that

the claims of the '389 Patent are invalid.

## FIFTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,901,048 (AGAINST CONSTELLATION)

86.     TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

87.     Constellation claims to own all rights, title, and interest in the '048 Patent.

88.     Constellation has brought suit against TWC, alleging that "services that TWC provides over its networks running Multi-Protocol Label Switching ("MPLS") protocol, TWC's maintenance and operation of its MPLS networks, and TWC's MPLS networks" infringe certain claims of the '048 Patent.

89.     Absent a declaration that TWC's services that TWC provides over its networks running Multi-Protocol Label Switching ("MPLS") protocol, TWC's maintenance and operation of its MPLS networks, and TWC's MPLS networks do not infringe the '048 Patent, Constellation will continue to wrongfully assert the '048 Patent against TWC and thereby cause TWC irreparable harm and injury.

90.     A substantial, immediate, and real controversy therefore exists between TWC and Constellation as to whether TWC's products infringe the '048 Patent.

91.     Based on the foregoing, TWC hereby requests a declaration from the Court that TWC's services and systems (and/or their use by TWC and its customers), do not directly or indirectly infringe any claim of the '048 Patent.

## SIXTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,901,048 (AGAINST CONSTELLATION)

92.     TWC incorporates by reference the allegations set forth in the other sections of

its Counterclaims.

93.     Constellation claims to own all rights, title, and interest in the '048 Patent.

94.     Constellation has accused TWC of infringing the '048 Patent in this litigation.

95.     The claims of the '048 Patent are invalid under the provisions of Title 35,

United States Code, including but not limited to, §§ 101, 102, 103 and/or 112, at least for the

reasons stated and references cited in TWC's May 23, 2014 invalidity contentions.

96.     Absent a declaration that the claims of the '048 Patent are invalid, Constellation

will continue to wrongfully assert the '048 Patent against TWC and thereby cause TWC

irreparable harm and injury.

97.     A substantial, immediate, and real controversy therefore exists between

Constellation and TWC as to whether the claims of the '048 Patent are invalid.

98.     Based on the foregoing, TWC hereby requests a declaration from the Court that

the claims of the '048 Patent are invalid.

## SEVENTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,154,879 (AGAINST CONSTELLATION)

99.     TWC incorporates by reference the allegations set forth in the other sections of

its Counterclaims.

100.     Constellation claims to own all rights, title, and interest in the '879 Patent.

101.     Constellation has brought suit against TWC, alleging that TWC's point to

multipoint access networks (such as Ethernet Passive Optical Networks), TWC's operation and

maintenance of its point-to-multipoint access networks, TWC's provision of services over such

point-to-multipoint access networks, TWC's whole-house entertainment networks, TWC's

maintenance and operation of its point-to-multipoint whole-house entertainment networks, and

TWC's whole-house entertainment services infringe certain claims of the '879 Patent.

102.     Absent a declaration that TWC's point to multipoint access networks (such as Ethernet Passive Optical Networks ("EPON")), TWC's operation and maintenance of its point-to-multipoint access networks, TWC's provision of services over such point-to-multipoint access networks, TWC's whole-house entertainment networks, TWC's maintenance and operation of its point-to-multipoint whole-house entertainment networks, and TWC's whole-house entertainment services do not infringe the '879 Patent, Constellation will continue to wrongfully assert the '879 Patent against TWC and thereby cause TWC irreparable harm and injury.

103.     A substantial, immediate, and real controversy therefore exists between TWC and Constellation as to whether TWC's products infringe the '879 Patent.

104.     Based on the foregoing, TWC hereby requests a declaration from the Court that TWC's services and systems (and/or their use by TWC and its customers), do not directly or indirectly infringe any claim of the '879 Patent.

## EIGHTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 7,154,879 (AGAINST CONSTELLATION)

105.     TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

106.     Constellation claims to own all rights, title, and interest in the '879 Patent.

107.     Constellation has accused TWC of infringing the '879 Patent in this litigation.

108.     The claims of the '879 Patent are invalid under the provisions of Title 35, United States Code, including but not limited to, §§ 101, 102, 103 and/or 112, at least for the reasons stated and references cited in TWC's May 23, 2014 invalidity contentions.

109.     Absent a declaration that the claims of the '879 Patent are invalid, Constellation

will continue to wrongfully assert the '879 Patent against TWC and thereby cause TWC irreparable harm and injury.

110.     A substantial, immediate, and real controversy therefore exists between Constellation and TWC as to whether the claims of the '879 Patent are invalid.

111.     Based on the foregoing, TWC hereby requests a declaration from the Court that the claims of the '879 Patent are invalid.

## NINTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 8,134,917 (AGAINST CONSTELLATION)

112.     TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

113.     Constellation claims to own all rights, title, and interest in the '917 Patent.

114.     Constellation has brought suit against TWC, alleging that TWC's "services that TWC provides over its networks running MPLS protocol, TWC's maintenance and operation of its MPLS networks, and TWC's MPLS networks" infringe certain claims of the '917 Patent.

115.     Absent a declaration that TWC's services that TWC provides over its networks running MPLS protocol, TWC's maintenance and operation of its MPLS networks, and TWC's MPLS networks do not infringe the '917 Patent, Constellation will continue to wrongfully assert the '917 Patent against TWC and thereby cause TWC irreparable harm and injury.

116.     A substantial, immediate, and real controversy therefore exists between TWC and Constellation as to whether TWC's products infringe the '917 Patent.

117.     Based on the foregoing, TWC hereby requests a declaration from the Court that TWC's services and systems (and/or their use by TWC and its customers), do not directly or indirectly infringe any claim of the '917 Patent.

## TENTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 8,134,917 (AGAINST CONSTELLATION)

118.     TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

119.     Constellation claims to own all rights, title, and interest in the '917 Patent.

120.     Constellation has accused TWC of infringing the '917 Patent in this litigation.

121.     The claims of the '917 Patent are invalid under the provisions of Title 35, United States Code, including but not limited to, §§ 101, 102, 103 and/or 112, at least for the reasons stated and references cited in TWC's May 23, 2014 invalidity contentions.

122.     Absent a declaration that the claims of the '917 Patent are invalid, Constellation will continue to wrongfully assert the '917 Patent against TWC and thereby cause TWC irreparable harm and injury.

123.     A substantial, immediate, and real controversy therefore exists between Constellation and TWC as to whether the claims of the '917 Patent are invalid.

124.     Based on the foregoing, TWC hereby requests a declaration from the Court that the claims of the '917 Patent are invalid.

## ELEVENTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 8,464,299 (AGAINST CONSTELLATION)

125.     TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

126.     Constellation claims to own all rights, title, and interest in the '299 Patent.

127.     Constellation has brought suit against TWC, alleging that TWC's "switched digital video ("SDV") services and systems, TWC's video on demand ("VOD") services and

systems, TWC's IP cable television services (including TWC TV App) and systems, and TWC's

videoconferencing services and systems" infringe certain claims of the '299 Patent.

128.     Absent a declaration that TWC's switched digital video ("SDV") services and

systems, TWC's video on demand ("VOD") services and systems, TWC's IP cable television

services (including TWC TV App) and systems, and TWC's videoconferencing services and

systems do not infringe the '299 Patent, Constellation will continue to wrongfully assert the '299

Patent against TWC and thereby cause TWC irreparable harm and injury.

129.     A substantial, immediate, and real controversy therefore exists between TWC

and Constellation as to whether TWC's products infringe the '299 Patent.

130.     Based on the foregoing, TWC hereby requests a declaration from the Court that

TWC's services and systems (and/or their use by TWC and its customers), do not directly or

indirectly infringe any claim of the '299 Patent.

## TWELFTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 8,464,299 (AGAINST CONSTELLATION)

131.     TWC incorporates by reference the allegations set forth in the other sections of

its Counterclaims.

132.     Constellation claims to own all rights, title, and interest in the '299 Patent.

133.     Constellation has accused TWC of infringing the '299 Patent in this litigation.

134.     The claims of the '299 Patent are invalid under the provisions of Title 35,

United States Code, including but not limited to, §§ 101, 102, 103 and/or 112, at least for the

reasons stated and references cited in TWC's May 23, 2014 invalidity contentions.

135.     Absent a declaration that the claims of the '299 Patent are invalid, Constellation

will continue to wrongfully assert the '299 Patent against TWC and thereby cause TWC

irreparable harm and injury.

136.    A substantial, immediate, and real controversy therefore exists between Constellation and TWC as to whether the claims of the '299 Patent are invalid.

137.    Based on the foregoing, TWC hereby requests a declaration from the Court that the claims of the '299 Patent are invalid.

### THIRTEENTH CLAIM FOR RELIEF

BREACH OF CONTRACT WITH THE IEEE TO LICENSE THE '879 PATENT ON F/RAND AND/OR ROYALTY-FREE TERMS
(AGAINST CONSTELLATION AND ROCKSTAR)

138.    TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

139.    Nortel provided a letter of assurance to the IEEE agreeing to "grant a nonexclusive license to Nortel patent claims that are essential for implementation of an existing IEEE 802.3 Standard on a nondiscriminatory basis and on reasonable terms and conditions . . . ." (*See* Exhibit 39).

140.    The IEEE standard for "Ethernet-based Passive Optical Networks" ("EPON") is an existing IEEE 802.3 Standard.

141.    Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the above LOA submitted to the IEEE and in accordance with IEEE's IPR policies.

142.    IEEE's IPR policies, as amended over time, constitute a contractual commitment to offer licenses to SEPs in accordance with the terms of those policies.  By participating in the IEEE, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer licenses to SEPs on F/RAND and/or royalty-free terms.

143.    As industry participants that would potentially implement the standards

established by the IEEE, TWC is an intended beneficiary of Nortel's and other entities'
contractual commitments to the IEEE.

144.    F/RAND and royalty-free encumbrances are irrevocable and run with the
patents and, as successors in interest to the Nortel Patent Portfolio, Rockstar and Constellation
are obligated to honor Nortel's F/RAND and/or royalty-free licensing commitments with respect
to SEPs.

145.    As a result, Rockstar and Constellation are obligated to offer F/RAND and/or
royalty-free licenses to TWC for the '879 patent to the extent necessary to practice EPON, as an
existing IEEE 802.3 standard.

146.    Based on Constellation's infringement contentions, Constellation has accused
TWC of infringing the '879 Patent based on TWC's alleged use of features and/or functionality
essential to EPON technology standardized in IEEE 802.3.

147.    By accusing TWC of infringing the '879 Patent based on the use of EPON
technology standardized in IEEE 802.3, Constellation has alleged that the '879 Patent is essential
to the use of IEEE 802.3 standards.

148.    Rockstar and Constellation have breached their express and implied F/RAND
and royalty-free licensing commitments to license the '879 patent on F/RAND and/or royalty-
free terms by engaging in at least the following acts:

    a.    Making or having made public statements to the effect that Nortel's
F/RAND and/or royalty-free licensing commitments would not be honored; and

    b.    Refusing to offer to license alleged SEPs to TWC on F/RAND
and/or royalty-free terms.

149.    Through the foregoing acts, Rockstar and Constellation breached the express

and implied commitments Nortel and other entities made to the IEEE to license the '879 patent

on F/RAND and/or royalty-free terms.

150.     As a result of those breaches, TWC has been injured in its business or property,

and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

151.     As a remedy for those breaches, TWC respectfully requests the equitable

remedy of specific performance by Rockstar and Constellation of their obligation to provide

licenses to the '879 patent on F/RAND and/or royalty-free licensing terms.

152.     As an additional remedy for Rockstar's and Constellation's breaches, TWC

respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## FOURTEENTH CLAIM FOR RELIEF

### BREACH OF CONTRACT WITH IETF, THE 3GPP, ATIS, AND/OR ETSI TO LICENSE THE '389 PATENT ON F/RAND AND/OR ROYALTY-FREE TERMS (AGAINST CONSTELLATION AND ROCKSTAR)

153.     TWC incorporates by reference the allegations set forth in the other sections of

its Counterclaims.

154.     Nortel and its subsidiaries participated in drafting portions of the 3GPP

specification, including, for example, section 7.2 "IMS Multimedia Telephony and

Supplementary Services (IMSTSS)" of 3GPP Release 8.  (*See, e.g.*, Ex. 37.)  The 3GPP IPR

policies require that participant companies, such as Nortel, be members of certain member

organizations, such as ATIS and ETSI, which obligate members to disclose certain patents

related to specifications and standards to which they have contributed.  Nortel made

representations to ATIS and/or ETSI committing to license any of its patents that read on 3GPP

IMS standards on F/RAND and/or royalty-free terms in connection with its participation in

drafting the 3GPP IMS specifications.

155.     Nortel was contractually obligated to offer a license to its SEPs in a manner

consistent with the representations it made to the 3GPP, ATIS and/or ETSI and in accordance with the 3GPP, ATIS, and ETSI IPR policies.

156.     The policies of the 3GPP, ATIS, and ETSI, as amended over time, constitute a contractual commitment on the part of participants in standards development at 3GPP to offer licenses to SEPs in accordance with the terms of those policies.  By participating in the 3GPP, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer licenses to SEPs on F/RAND and/or royalty-free terms.

157.     As an industry participant that would potentially implement the standards established by 3GPP, TWC is an intended beneficiary of Nortel's and other entities' contractual commitments to the 3GPP, ATIS, and ETSI.

158.     Moreover, IMS as specified by the 3GPP relies upon and incorporates standards promulgated by the IETF.

159.     As documented in Exhibit 40, Nortel Networks made the following commitment to the IETF:  "Nortel Networks may seek patent rights on technology described in a document which Nortel Networks contributes for use in IETF standards discussions or standards track specifications.  If such patented technology is essential for the implementation, use, and distribution, of an IETF standard, Nortel Networks is willing to make available nonexclusive licenses on fair, reasonable, and non-discriminatory terms and conditions, to such patent rights it owns, solely to the extent such technology is essential to comply with such IETF standard."

160.     Nortel contributed to IETF standards relied upon and incorporated by IMS.

161.     F/RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND and/or royalty-free licensing commitments with respect

40

to SEPs.

162.     As a result, Rockstar and Constellation are obligated to offer F/RAND and/or royalty-free licenses to TWC for the '389 patent to the extent necessary to practice IMS technology, as standardized in various 3GPP Releases.

163.     Based on Constellation's infringement contentions, Constellation accuses TWC of infringing the '389 patent based on TWC's alleged use of features and/or functionality essential to IMS technology standardized in 3GPP Releases, including the standardized session initiation protocol ("SIP").

164.     By accusing TWC of infringing the '389 patent based on the use of IMS technology standardized in 3GPP Releases, Constellation has alleged that the '389 patent is essential to the use of IMS technology standardized in 3GPP Releases.

165.     Rockstar and Constellation have breached their express and implied F/RAND and royalty-free licensing commitments to license the '389 patent on F/RAND and/or royalty-free terms by engaging in at least the following acts:

     a.     Making or having made public statements to the effect that Nortel's F/RAND and/or royalty-free licensing commitments would not be honored; and

     b.     Refusing to offer to license alleged SEPs to TWC on F/RAND and/or royalty-free terms.

166.     Through the foregoing acts, Rockstar and Constellation have breached the express and implied commitments Nortel and other entities made to IETF, the 3GPP, ATIS, and ETSI to license the '389 patent on F/RAND and/or royalty-free terms.

167.     As a result of those breaches, TWC has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

168.     As a remedy for those breaches, TWC respectfully requests the equitable

remedy of specific performance by Rockstar and Constellation of their obligation to provide

licenses to the '389 patent on F/RAND and/or royalty-free licensing terms.

169.     As an additional remedy for those breaches, TWC respectfully requests

restitution and/or expectancy damages in an amount to be proven at trial.

## FIFTEENTH CLAIM FOR RELIEF

### BREACH OF CONTRACT WITH THE IETF TO LICENSE THE '048 PATENT ON F/RAND AND/OR ROYALTY-FREE TERMS (AGAINST CONSTELLATION AND ROCKSTAR)

170.     TWC incorporates by reference the allegations set forth in the other sections of

its Counterclaims.

171.     As documented in Exhibit 40, Nortel provided a letter of assurance to the IETF

agreeing to grant licenses to patents essential to any IETF standard, including RFC 4090, titled

"Fast Reroute Extensions to RSVP-TE for LSP Tunnels."

172.     Moreover, Nortel affirmed that it would make patents essential for the

implementation, use, and distribution of an IETF standard, available under F/RAND terms and

conditions.

173.     Nortel was contractually obligated to offer a license to its SEPs in a manner

consistent with the representations contained in the above general assurances submitted to the

IETF and in accordance with IETF's IPR policies.

174.     IETF's policies, as amended over time, constitute a contractual commitment to

offer licenses to SEPs in accordance with the terms of those policies.  By participating in the

IETF, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies

and to offer licenses to SEPs on F/RAND and/or royalty-free terms.

175.     As an industry participant that would potentially implement the standards

established by the IETF, TWC is an intended beneficiary of Nortel's and other entities' contractual commitments to the IETF.

176.    F/RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND and/or royalty-free licensing commitments with respect to SEPs.

177.    As a result, Rockstar and Constellation are obligated to offer F/RAND and/or royalty-free licenses to TWC for the '048 patent to the extent necessary to practice IETF standards, including the MPLS technology standardized in at least IETF RFCs 4090, 3209, and/or 3031 ("IETF MPLS standards").

178.    Based on Constellation's infringement contentions, Constellation has accused TWC of infringing the '048 patent based on TWC's alleged use of features and/or functionality essential IETF MPLS standards, including the IETF MPLS standards.

179.    By accusing TWC of infringing the '048 patent based on the use of technologies standardized in IETF MPLS standards, Constellation has alleged that the '048 patent is essential to the use of the IETF MPLS standards.

180.    Rockstar and Constellation have breached their express and implied F/RAND and royalty-free licensing commitments to license the '048 patent on F/RAND and/or royalty-free terms by engaging in at least the following acts:

      a.    Making or having made public statements to the effect that Nortel's F/RAND and/or royalty-free licensing commitments would not be honored; and

      b.    Refusing to offer to license alleged SEPs to TWC on F/RAND and/or royalty-free terms.

181.     Through the foregoing acts, Rockstar and Constellation breached the express and implied commitments Nortel and other entities made to the ITU to license the '048 patent on F/RAND and/or royalty-free terms.

182.     As a result, TWC has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

183.     As a remedy, TWC respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligation to provide licenses to the '048 patent on F/RAND and/or royalty-free licensing terms.

184.     As an additional remedy for Rockstar's and Constellation's breach, TWC respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

<u>**SIXTEENTH CLAIM FOR RELIEF**</u>

<u>BREACH OF CONTRACT WITH THE IETF TO LICENSE THE '917 PATENT ON F/RAND AND/OR ROYALTY-FREE TERMS
(AGAINST CONSTELLATION AND ROCKSTAR)</u>

185.     TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

186.     As documented in Exhibit 40, Nortel provided a letter of assurance to the IETF agreeing to grant licenses to patents essential to any IETF standard, including RFC 4090, titled "Fast Reroute Extensions to RSVP-TE for LSP Tunnels."

187.     Moreover, Nortel affirmed that it would make patents essential for the implementation, use, and distribution of an IETF standard, available under F/RAND terms and conditions.

188.     Nortel was contractually obligated to offer a license to its SEPs in a manner consistent with the representations contained in the above general assurances submitted to the IETF and in accordance with IETF's IPR policies.

44

189.     IETF's policies, as amended over time, constitute a contractual commitment to offer licenses to SEPs in accordance with the terms of those policies. By participating in the IETF, Nortel and other entities whose patents Nortel acquired promised to adhere to the policies and to offer licenses to SEPs on F/RAND and/or royalty-free terms.

190.     As an industry participant that would potentially implement the standards established by the IETF, TWC is an intended beneficiary of Nortel's and other entities' contractual commitments to the IETF.

191.     F/RAND and royalty-free encumbrances are irrevocable and run with the patents and, as successors in interest to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's F/RAND and/or royalty-free licensing commitments with respect to SEPs.

192.     As a result, Rockstar and Constellation are obligated to offer F/RAND and/or royalty-free licenses to TWC for the '917 patent to the extent necessary to practice IETF standards, including the MPLS technology standardized in at least IETF RFCs 4090, 3209, and/or 3031.

193.     Based on Constellation's infringement contentions, Constellation has accused TWC of infringing the '917 patent based on TWC's alleged use of features and/or functionality essential IETF MPLS standards, including the IETF MPLS standards.

194.     By accusing TWC of infringing the '917 patent based on the use of technologies standardized in IETF MPLS standards, Constellation has alleged that the '917 patent is essential to the use of the IETF MPLS standards.

195.     Rockstar and Constellation have breached their express and implied F/RAND and royalty-free licensing commitments to license the '917 patent on F/RAND and/or royalty-free

terms by engaging in at least the following acts:

           a.      Making or having made public statements to the effect that Nortel's F/RAND and/or royalty-free licensing commitments would not be honored; and

           b.      Refusing to offer to license alleged SEPs to TWC on F/RAND and/or royalty-free terms.

196.      Through the foregoing acts, Rockstar and Constellation have breached the express and implied commitments Nortel and other entities made to the IETF to license the '917 patent on F/RAND and/or royalty-free terms.

197.      As a result, TWC has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

198.      As a remedy, TWC respectfully requests the equitable remedy of specific performance by Rockstar and Constellation of their obligation to provide licenses to the '917 patent on F/RAND and/or royalty-free licensing terms.

199.      As an additional remedy for Rockstar's and Constellation's breach, TWC respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

## SEVENTEENTH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE IEEE TO LICENSE THE '879 PATENT ON F/RAND AND/OR ROYALTY-FREE TERMS
### (AGAINST CONSTELLATION AND ROCKSTAR)

200.      TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

201.      As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '879 patent, on F/RAND and/or royalty-free terms.

202.     Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with TWC in good faith and with fair dealing, would take no action that would deprive TWC of its benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect TWC's enjoyment of its rights under Nortel's contractual commitments.

203.     At all relevant times, TWC has duly performed all material conditions, covenants, and promises on its part to be performed under Nortel's contractual commitments.

204.     As successors in interest to the Nortel Patent Portfolio, Rockstar and Constellation were obligated to honor F/RAND and/or royalty-free licensing commitments with respect to the '879 patent and any other SEPs in the Nortel Patent Portfolio.

205.     Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in the agreement with the IEEE to license the '879 patent on F/RAND terms by engaging in at least the following acts:

a.     Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions;

b.     Requiring that companies enter into non-disclosure agreements before disclosing the basis for infringement allegation or licensing demands for SEP patents;

c.     Refusing to identify patents subject to F/RAND and/or royalty-free encumbrances;

d.     Refusing to identify a complete list of SEP patents that Rockstar and Constellation believed TWC infringed;

47

e.      Transferring the Patents-In-Suit to Constellation in a bad-faith attempt to subvert F/RAND and/or royalty-free encumbrances; and

f.      Bringing suit against TWC in an attempt to circumvent Rockstar's and Constellation's obligations to license SEPs on F/RAND and/or royalty-free terms.

206.      Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the rights of TWC under these F/RAND and/or royalty-free licensing commitments, prevented TWC from receiving the benefits it was entitled to receive under commitments to license the '879 patent on F/RAND and/or royalty-free terms.

207.      As a result of the foregoing breaches, TWC has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

208.      As a remedy for the breaches, TWC respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

209.      As a further remedy, TWC respectfully requests an injunction requiring Rockstar and Constellation to honor F/RAND and/or royalty-free commitments attached to the '879 patent from the Nortel Patent Portfolio.

## EIGHTEENTH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE 3GPP, ATIS, AND/OR ETSI TO LICENSE THE '389 PATENT ON F/RAND AND/OR ROYALTY-FREE TERMS (AGAINST CONSTELLATION AND ROCKSTAR)

210.      TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

211.      As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to

48

certain patents, including the '389 patent, on F/RAND and/or royalty-free terms.

212.    Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with TWC in good faith and with fair dealing, would take no action that would deprive TWC of its benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect TWC's enjoyment of its rights under Nortel's contractual commitments.

213.    At all relevant times, TWC has duly performed all material conditions, covenants, and promises on its part to be performed under Nortel's contractual commitments.

214.    As successors in interest to the Nortel Patent Portfolio, Rockstar and Constellation were obligated to honor F/RAND and/or royalty-free licensing commitments with respect to the '389 patent and any other SEPs in the Nortel Patent Portfolio.

215.    Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in the agreement with the IEEE to license the '389 patent on F/RAND terms by engaging in at least the following acts:

    a.    Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions;

    b.    Requiring that companies enter into non-disclosure agreements before disclosing the basis for infringement allegation or licensing demands for SEP patents;

    c.    Refusing to identify patents subject to F/RAND and/or royalty-free encumbrances;

    d.    Refusing to identify a complete list of SEP patents that Rockstar and

Constellation believed TWC infringed;

e.     Bringing suit against TWC in an attempt to circumvent Rockstar's

and Constellation's obligations to license SEPs on F/RAND and/or royalty-free terms; and

f.     Transferring the Patents-In-Suit to Constellation in a bad-faith

attempt to subvert F/RAND and/or royalty-free encumbrances.

216.     Through the foregoing acts, Rockstar and Constellation unfairly and in bad

faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the rights of TWC

under these F/RAND and/or royalty-free licensing commitments, prevented TWC from receiving

the benefits it was entitled to receive under commitments to license the '389 patent on F/RAND

and/or royalty-free terms.

217.     As a result of the foregoing breaches, TWC has been injured in its business or

property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

218.     As a remedy for the breaches, TWC respectfully requests restitution and/or

expectancy damages in an amount to be proven at trial.

219.     As a further remedy, TWC respectfully requests an injunction requiring

Rockstar and Constellation to honor F/RAND and/or royalty-free commitments attached to the

'389 patent from the Nortel Patent Portfolio.

## NINETEENTH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE IETF TO LICENSE THE '048 PATENT ON F/RAND AND/OR ROYALTY-FREE TERMS (AGAINST CONSTELLATION AND ROCKSTAR)

220.     TWC incorporates by reference the allegations set forth in the other sections of

its Counterclaims.

221.     As discussed above, Nortel entered several specific licensing commitments and

general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '048 patent, on F/RAND and/or royalty-free terms.

222.     Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with TWC in good faith and with fair dealing, would take no action that would deprive TWC of its benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect TWC's enjoyment of its rights under Nortel's contractual commitments.

223.     At all relevant times, TWC has duly performed all material conditions, covenants, and promises on its part to be performed under Nortel's contractual commitments.

224.     As successors in interest to the Nortel Patent Portfolio, Rockstar and Constellation were obligated to honor F/RAND and/or royalty-free licensing commitments with respect to the '048 patent and any other SEPs in the Nortel Patent Portfolio.

225.     Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in the agreement with the IETF to license the '048 patent on F/RAND terms by engaging in at least the following acts:

a.     Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions;

b.     Requiring that companies enter into non-disclosure agreements before disclosing the basis for infringement allegation or licensing demands for SEP patents;

c.     Refusing to identify patents subject to F/RAND and/or royalty-free encumbrances;

       d.       Refusing to identify a complete list of SEP patents that Rockstar and Constellation believed TWC infringed;

       e.       Bringing suit against TWC in an attempt to circumvent Rockstar's and Constellation's obligations to license SEPs on F/RAND and/or royalty-free terms; and

       f.       Transferring the Patents-In-Suit to Constellation in a bad-faith attempt to subvert F/RAND and/or royalty-free encumbrances.

226.      Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the rights of TWC under these F/RAND and/or royalty-free licensing commitments, prevented TWC from receiving the benefits it was entitled to receive under commitments to license the '048 patent on F/RAND and/or royalty-free terms.

227.      As a result of the foregoing breaches, TWC has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

228.      As a remedy for the breaches, TWC respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

229.      As a further remedy, TWC respectfully requests an injunction requiring Rockstar and Constellation to honor F/RAND and/or royalty-free commitments attached to the '048 patent from the Nortel Patent Portfolio.

## TWENTIETH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN CONTRACT WITH THE IETF TO LICENSE THE '917 PATENT ON F/RAND AND/OR ROYALTY-FREE TERMS
### (AGAINST CONSTELLATION AND ROCKSTAR)

230.      TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

231.     As discussed above, Nortel entered several specific licensing commitments and general licensing commitments that obligated Nortel and its successors to provide licenses to certain patents, including the '917 patent, on F/RAND and/or royalty-free terms.

232.     Nortel's contractual commitments contain a covenant implied by law that Nortel, and its successors in interest, would deal with TWC in good faith and with fair dealing, would take no action that would deprive TWC of its benefits under Nortel's contractual commitments, and would take such actions as were necessary to protect TWC's enjoyment of its rights under Nortel's contractual commitments.

233.     At all relevant times, TWC has duly performed all material conditions, covenants, and promises on its part to be performed under Nortel's contractual commitments.

234.     As successors in interest to the Nortel Patent Portfolio, Rockstar and Constellation were obligated to honor F/RAND and/or royalty-free licensing commitments with respect to the '917 patent and any other SEPs in the Nortel Patent Portfolio.

235.     Rockstar and Constellation have breached the covenant of good faith and fair dealing implied in the agreement with the IETF to license the '917 patent on F/RAND terms by engaging in at least the following acts:

   a.     Refusing to make the terms of existing license agreements and commitments publicly available or to offer such arrangements to all industry participants on nondiscriminatory terms and conditions;

   b.     Requiring that companies enter into non-disclosure agreements before disclosing the basis for infringement allegation or licensing demands for SEP patents;

   c.     Refusing to identify patents subject to F/RAND and/or royalty-free

encumbrances;

        d.      Refusing to identify a complete list of SEP patents that Rockstar and Constellation believed TWC infringed;

        e.      Bringing suit against TWC in an attempt to circumvent Rockstar's and Constellation's obligations to license SEPs on F/RAND and/or royalty-free terms; and

        f.      Transferring the Patents-In-Suit to Constellation in a bad-faith attempt to subvert F/RAND and/or royalty-free encumbrances.

236.     Through the foregoing acts, Rockstar and Constellation unfairly and in bad faith, arbitrarily and unreasonably, with a motive to intentionally frustrate the rights of TWC under these F/RAND and/or royalty-free licensing commitments, prevented TWC from receiving the benefits it was entitled to receive under commitments to license the '917 patent on F/RAND and/or royalty-free terms.

237.     As a result of the foregoing breaches, TWC has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers, and loss of goodwill.

238.     As a remedy for the breaches, TWC respectfully requests restitution and/or expectancy damages in an amount to be proven at trial.

239.     As a further remedy, TWC respectfully requests an injunction requiring Rockstar and Constellation to honor F/RAND and/or royalty-free commitments attached to the '917 patent from the Nortel Patent Portfolio.

## **TWENTY-FIRST CLAIM FOR RELIEF**

### DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '879 PATENT ON F/RAND AND/OR ROYALTY-FREE TERMS (AGAINST CONSTELLATION AND ROCKSTAR)

240.     TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

54

241. As discussed above, Nortel voluntarily agreed to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to make, use and sell implementations of IEEE 802.3 standards.

242. As successors in interest to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND and/or royalty-free licensing commitments with respect to the '879 patent.

243. Rockstar and Constellation have publicly repudiated their duty to honor their F/RAND and/or royalty-free licensing commitments with respect to the '879 patent by, among other things, asserting its patents against EPON networks as standardized by IEEE 802.3.

244. A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '879 patent on F/RAND and/or royalty-free terms.

245. The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

246. TWC seeks a declaratory judgment that Rockstar and Constellation have not offered licenses to TWC on terms consistent with F/RAND and/or royalty-free terms.

247. TWC further seeks a declaratory judgment setting forth the F/RAND and/or royalty-free terms for the '879 patent.

248. TWC further seeks a declaratory judgment that if Rockstar and Constellation refuse to offer a license to the '879 patent to TWC on F/RAND and/or royalty-free terms, the '879 patent shall be unenforceable as to TWC.

## TWENTY-SECOND CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '389 PATENT ON F/RAND AND/OR ROYALTY-FREE TERMS (AGAINST CONSTELLATION AND ROCKSTAR)

249.    TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

250.    As discussed above, Nortel voluntarily agreed to make available nonexclusive licenses on fair, reasonable, and non-discriminatory terms and conditions, to such patent rights it owns, to the extent such technology is essential to comply with IETF, 3GPP, ATIS, and/or ETIS standards, such as IMS.

251.    As successors in interest to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND and/or royalty-free licensing commitments with respect to the '389 patent.

252.    Rockstar and Constellation have publicly repudiated their duty to honor their F/RAND and/or royalty-free licensing commitments with respect to the '389 patent by, among other things, asserting their patents against IMS networks as standardized in various 3GPP Releases.

253.    A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '389 patent on F/RAND and/or royalty-free terms.

254.    The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

255.    TWC seeks a declaratory judgment that Rockstar and Constellation have not offered licenses to TWC on terms consistent with F/RAND and/or royalty-free terms.

256.    TWC further seeks a declaratory judgment setting forth the F/RAND and/or royalty-free terms for the '389 patent.

257.    TWC further seeks a declaratory judgment that if Rockstar and Constellation

56

refuse to offer a license to the '389 patent to TWC on F/RAND and/or royalty-free terms, the

'389 patent shall be unenforceable as to TWC.

### TWENTY-THIRD CLAIM FOR RELIEF

DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '048 PATENT ON
F/RAND AND/OR ROYALTY-FREE TERMS
(AGAINST CONSTELLATION AND ROCKSTAR)

258.    TWC incorporates by reference the allegations set forth in the other sections of

its Counterclaims.

259.    As discussed above, Nortel voluntarily agreed to make available nonexclusive

licenses on fair, reasonable, and non-discriminatory terms and conditions, to such patent rights it

owns, to the extent such technology is essential to comply with such IETF standard.

260.    As successors in interest to the Nortel Patent Portfolio, Rockstar and

Constellation are obligated to honor Nortel's express and implied F/RAND and/or royalty-free

licensing commitments with respect to the '048 patent.

261.    Rockstar and Constellation have publicly repudiated their duty to honor their

F/RAND and/or royalty-free licensing commitments with respect to the '048 patent by, among

other things, asserting their patents against MPLS networks as standardized by IETF.

262.    A dispute therefore exists between the parties concerning whether Rockstar and

Constellation is obligated to offer licenses for the '048 patent.

263.    The dispute is of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment.

264.    TWC seeks a declaratory judgment that Rockstar and Constellation have not

offered licenses to TWC on terms consistent with F/RAND and/or royalty-free terms.

265.    TWC further seeks a declaratory judgment setting forth the F/RAND and/or

royalty-free terms for the '048 patent.

266.     TWC further seeks a declaratory judgment that if Rockstar and Constellation refuse to offer a license to the '048 patent to TWC on F/RAND and/or royalty-free terms, the '048 patent shall be unenforceable as to TWC.

## TWENTY-FOURTH CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF OBLIGATION TO LICENSE THE '917 PATENT ON F/RAND AND/OR ROYALTY-FREE TERMS (AGAINST CONSTELLATION AND ROCKSTAR)

267.     TWC incorporates by reference the allegations set forth in the other sections of its Counterclaims.

268.     As discussed above, Nortel voluntarily agreed to make available nonexclusive licenses on fair, reasonable, and non-discriminatory terms and conditions, to such patent rights it owns, to the extent such technology is essential to comply with such IETF standard.

269.     As a successor in interest to the Nortel Patent Portfolio, Rockstar and Constellation are obligated to honor Nortel's express and implied F/RAND and/or royalty-free licensing commitments with respect to the '917 patent.

270.     Rockstar and Constellation have publicly repudiated their duty to honor their F/RAND and/or royalty-free licensing commitments with respect to the '917 patent by, among other things, asserting their patents against MPLS networks as standardized by IETF.

271.     A dispute therefore exists between the parties concerning whether Rockstar and Constellation are obligated to offer licenses for the '917 patent.

272.     The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

273.     TWC seeks a declaratory judgment that Rockstar and Constellation have not offered licenses to TWC on terms consistent with F/RAND and/or royalty-free terms.

274.     TWC further seeks a declaratory judgment setting forth the F/RAND and/or

58

royalty-free terms for the '917 patent.

275.     TWC further seeks a declaratory judgment that if Rockstar and Constellation refuse to offer a license to the '917 patent to TWC on F/RAND and/or royalty-free terms, the '917 patent shall be unenforceable as to TWC.

## PRAYER FOR RELIEF

WHEREFORE, TWC seeks the following relief:

A.     A declaration from the Court that TWC's products do not directly or indirectly infringe any claim of the '649 patent.

B.     A declaration from the Court that TWC's products do not directly or indirectly infringe any claim of the '389 patent.

C.     A declaration from the Court that TWC's products do not directly or indirectly infringe any claim of the '048 patent.

D.     A declaration from the Court that TWC's products do not directly or indirectly infringe any claim of the '879 patent.

E.     A declaration from the Court that TWC's products do not directly or indirectly infringe any claim of the '917 patent.

F.     A declaration from the Court that TWC's products do not directly or indirectly infringe any claim of the '299 patent.

G.     A declaration from the Court that the claims of the '649, '389, '048, '879, '917, and '299 patents are invalid.

H.      Specific performance by Rockstar and Constellation to provide licenses on F/RAND and/or royalty-free licensing terms to alleged SEPs including the '389, '048, '879, and '917 patents.

I.      Restitution and/or expectancy damages from Rockstar and Constellation for

breaches of F/RAND and/or royalty-free licensing commitments.

J.      Restitution and/or expectancy damages from Rockstar and Constellation in an amount to be proven at trial for breaches of their obligations to deal fairly and act in good faith under F/RAND licensing commitments.

K.      An injunction requiring Rockstar and Constellation to honor F/RAND and/or royalty-free commitments attached to patents from the Nortel Patent Portfolio.

L.      A declaration setting forth the F/RAND and/or royalty-free terms for the '389, '048, '879, and '917 patents.  TWC agrees to be bound by and final, non-appealable judgment determining F/RAND or royalty-free licensing terms for any SEP that is valid, enforceable, and infringed by TWC, provided such license fully protects TWC's direct and indirect customers.

M.      A declaration that if Rockstar or Constellation refuse to offer licenses to the '389, '048, '879, and '917 patents to TWC on F/RAND and/or royalty-free terms, they shall be unenforceable as to TWC and its customers.

N.      A declaration that judgment be entered in favor of TWC and against Rockstar and Constellation on each of TWC's claims.

O.      Finding that this case is an exceptional case under 35 U.S.C. § 285.

P.      Awarding TWC its costs and attorneys' fees in connection with this action.

Q.      Such further and additional relief as the Court deems just and proper.

## JURY DEMAND

TWC hereby demands a trial by jury on all issues properly triable before a jury.

Dated: October 14, 2014

Respectfully submitted:

By:*/s/ Jonas R. McDavit*
*(w/permission by Allen F. Gardner)*

John M. Desmarais
jdesmarais@desmaraisllp.com
Jonas R. McDavit
jmcdavit@desmaraisllp.com
Karim Z. Oussayef
koussayef@desmaraisllp.com
Ameet A. Modi
amodi@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400

Michael E. Jones
Texas State Bar No. 10929400
Allen F. Gardner
Texas State Bar No. 24043679
POTTER MINTON PC
110 N. College Avenue, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846
mikejones@potterminton.com
allengardner@potterminton.com

*Attorneys for Defendants Time*
*Warner Cable Inc. and Time Warner*
*Cable Enterprises LLC*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 14th day of October, 2014.

*/s/Allen F. Gardner*

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
RESIDENTIAL CAPITAL, LLC, et al.,       :
                                        :    12 Civ. 5116 (DLC)
                 Debtors-Plaintiffs,    :
                                        :         ORDER
          -v-                           :
                                        :
FEDERAL HOUSING FINANCE AGENCY,         :     Also filed in
                                        :    11 Civ. 5201 (DLC)
                 Defendant.             :
                                        :
----------------------------------------X

DENISE COTE, District Judge:

     Plaintiffs Residential Capital, LLC and related debtor

entities (collectively, "ResCap") have moved pursuant to 11

U.S.C. § 105 to enjoin the defendant from pursuing litigation

against ResCap's non-debtor corporate affiliates, including Ally

Financial, Ally Securities and GMACM Group (the "Ally

Defendants").  In the alternative, ResCap seeks a judicial order

bringing the Ally Defendants within the coverage of the

Bankruptcy Code's Automatic Stay.  See 11 U.S.C. § 360(a).  For

the reasons stated on the record during a conference with the

parties on July 17, 2012, it is hereby

ORDERED that the motion is denied. The Clerk of Court is directed to close this case.


SO ORDERED:

Dated:    New York, New York
          July 17, 2012

                              _____
                              DENISE COTE
                              United States District Judge