IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
: 
*In re* : Chapter 11
: 
Nortel Networks Inc., *et al.*, : Case No. 09-10138(KG)
: Jointly Administered
: 
Debtors. :
: **Hearing Date:  Nov. 7, 2014 at 12:00 p.m.**
:
---------------------------------------------------------------x

**SUPPLEMENT TO TIME WARNER CABLE INC. AND
TIME WARNER CABLE ENTERPRISES LLC'S OBJECTIONS TO NORTEL'S
MOTION FOR RELIEF UNDER SECTION 105(a)**

Time Warner Cable Inc. and Time Warner Cable Enterprises LLC (together, "TWC"), by and through their undersigned counsel, hereby submit this supplement to TWC's objections[1] to the motion filed by Nortel Networks, Inc. ("NNI"),[2] pursuant to Sections 105(a), 107(b), 362(a), and 541 of the Bankruptcy Code and Bankruptcy Rule 9018, for the entry of an order: (a) enforcing and/or extending the automatic stay, (b) enforcing, in the context of these third-party subpoenas, provisions in the Court's previous sale orders, protective orders, and  confidentiality orders, (c) entering a protective order, and (d) granting related relief under Section 105(a) of the Bankruptcy Code.

---

[1] D.I. 14551.

[2] D.I. 14476, 14535.

Between October 27, 2014 and October 31, 2014, NNI and TWC substantially resolved their disputes concerning the *scope* of NNI's document production pursuant to the third-party subpoena that TWC served on NNI on June 9, 2014. In particular, the parties have substantially agreed on:

1. NNI's production of allocation trial exhibits;
2. NNI's production of deposition transcripts for Angela Anderson, Chris Cianciolo, Michelle Lee, Gillian McColgan, George Riedel, and John Veschi;
3. NNI's production of two "bid evaluation" documents that NNI has located;
4. NNI's search of ESI in the Allocation Database;[3]
5. NNI's search of ESI for certain custodians that was collected, but not produced, in the bankruptcy allocation proceedings; and
6. The information that NNI will provide with respect to data stored on LiveLink and at Iron Mountain.

The agreements that the parties have reached are memorialized in correspondence between the parties from October 27 through October 31.[4] In complying with NNI's requests related to those agreements, TWC has coordinated with Google, Inc., ARRIS,[5] Cisco Systems, Inc.,[6] and the MSO Declaratory Judgment Plaintiffs[7] to construct a single list of *only twenty* common search terms to be run against NNI's ESI.[8] TWC also constructed – *at NNI's request* – a list of

---

[3] As defined in D.I. 14551.

[4] Guzior Decl Exs. 1-5.

[5] D.I. 14553.

[6] D.I. 14556.

[7] D.I. 14558.

[8] Guzior Decl. Ex. 3.

technology search terms that are designed to compensate for the fact that NNI no longer has employees with sufficient technical or commercial knowledge to identify documents concerning the technology described by the Nortel patents that are now asserted against TWC.[9]

Contrary to the curious misstatement in NNI's reply brief, TWC has represented to NNI that it is prepared to discuss a reasonable cost sharing proposal.[10] Indeed, NNI concedes that it is currently running searches in order to better estimate the costs associated with responding to the subpoenas.[11] To date, NNI has not provided any of the data or cost estimates that it agreed to provide, and so the parties' discussion of cost sharing and, relatedly, a privilege review process has been on hold.[12] Although TWC believes that any costs from NNI's compliance with NNI's discovery obligations are more appropriately shifted to Rockstar,[13] if shifted at all, TWC remains willing to discuss a reasonable cost sharing proposal with NNI.

TWC respectfully submits that – in light of the substantial agreement that NNI and TWC have reached with respect to the scope of NNI's document production – there is no need for the Court to grant NNI relief with respect to its document production to TWC because there is no existing dispute between the parties. NNI's counsel has suggested, in fact, that an order from this Court could disturb the agreements that the parties have worked hard to achieve to date.[14] Indeed, in correspondence leading up to the November 7, 2014 hearing scheduled before this Court, the

---

[9] Guzior Decl. Ex. 4.

[10] D.I. 14692 ¶ 42.

[11] D.I. 14692 ¶ 42 n. 43.

[12] TWC understands that, as of November 4, 2014, that information was still forthcoming. Guzior Decl. Ex. 8.

[13] Although the Asset Sale Agreement between Nortel and Rockstar Bidco LP clearly contemplates imminent litigation, the parties appear not to have decided who would bear the cost of highly foreseeable third-party discovery requests to NNI.

[14] Guzior Decl. Exs. 7-8.

parties' communications suddenly and dramatically shifted from approaching agreement to litigation posturing that is destructive to the parties' ongoing negotiations.[15] Notwithstanding that posturing, the only outstanding dispute between TWC and NNI for the court to resolve concerns NNI's unwarranted proposal to restrict TWC's ability to depose highly relevant witnesses.[16]

Finally, NNI has essentially adopted the document production proposal that TWC outlines in its objections.[17] NNI's adoption of that proposal makes entirely implausible any argument that the Court must block third-party discovery from NNI because it is necessary to "protect" NNI's bankruptcy process. NNI's bankruptcy process is virtually over, but even if it were not, NNI's substantial agreement to TWC's proposal strongly evidences that NNI is fully capable of complying with its third-party discovery obligations at this time. NNI's sole concerns seem to be: (1) Rockstar's ongoing threats of *post-petition* liability and (2) who will pay for costs that NNI might incur due to complying with its discovery obligations, which should have been entirely foreseeable to NNI at the time of the Asset Sale Agreement. TWC continues to believe that the Court might provide helpful guidance on how NNI and TWC can manage Rockstar's ongoing threats with respect to purportedly confidential or privileged information.[18]

## CONCLUSION

TWC respectfully requests that this Court deny NNI's motion in its entirety.

---

[15] Guzior Decl. Ex. 8.

[16] D.I. 14476-2 ¶ 6.

[17] D.I. 14552 pp. 16-18.

[18] For example, TWC understands that Rockstar has identified a set of 392 trial exhibits from the bankruptcy allocation litigation that it believes are privileged. Those exhibits were not under seal and TWC does not understand them to fall under paragraph 11 of this Court's trial exhibits order. *See* D.I. 13554. Although those documents should be produced immediately, TWC understands that Rockstar has told NNI that it cannot produce them without risking post-petition liability. Guzior Decl. Ex. 6. Until recently, Rockstar was also unwilling to allow production of 1,848 trial exhibits that it *had already reviewed* and decided did not contain privileged information. Id.

4

|  |  |
|---|---|
| Dated  November 5, 2014<br>       Wilmington, Delaware | BIFFERATO LLC<br><br>*/s/ Ian Connor Bifferato*<br>Ian Connor Bifferato (No. 3273)<br>J. Zachary Haupt (No. 5344)<br>800 N. King St., First Floor<br>Wilmington, DE 19801<br>Phone: (302) 225-7600<br>Facsimile: (302) 792-7470<br><br>- and –<br><br>John M. Desmarais<br>Dustin F. Guzior<br>DESMARAIS LLP<br>230 Park Avenue<br>New York, New York 10169<br>DGuzior@desmaraisllp.com<br>*Time Warner Cable Inc. and Time Warner Cable Enterprises LLC* |