# Exhibit 1

1001 Pennsylvania Avenue, N.W., Washington, DC 20004-2595 ■ p202 624-2500 ■ f202 628-5116



**Mark M. Supko**
**(202) 624-2734**
msupko@crowell.com

105185.201

October 27, 2014

By Email: dguzior@desmaraisllp.com

Dustin F. Guzior
Desmarais LLP
230 Park Avenue
New York, NY 10006

Re:  *Constellation v. TWC*, No. 2:13-CV-1079-RSP (E.D. Tex.)

Dear Dustin:

I am writing in response to your letter of October 3, 2014 to Inna Rozenberg at Cleary Gottlieb that continued a lengthy series of correspondence and conversations regarding NNI's response to the subpoena TWC served in connection with its pending litigation with Constellation Technologies LLC.

As you know, after the date of your letter, Crowell & Moring took over responsibility for NNI's response to the subpoena, primarily in order to ensure a coordinated and efficient response to the numerous subpoenas that have been served on NNI and its former employees, lawyers and business advisors by various parties in at least five different litigations. This letter summarizes our current understanding of the positions of the parties, responds to your requests for additional information, and offers potential compromises within the framework of a global resolution of the outstanding discovery issues. Most or all of these issues are encompassed within NNI's pending motion before the Delaware Bankruptcy Court, but we are willing to continue working with TWC and the other subpoenaing parties in an effort to reach a compromise in advance of the hearing on that motion.

For ease of reference, we are tracking the structure in your letter of October 3, though that should not be interpreted as an agreement or concession that your letter fully or accurately set forth all of the outstanding issues.

I.   Allocation Trial Exhibits

We understand that TWC is willing to accept Cleary's proposal to produce the public versions of the trial exhibits from the allocation trial subject to a commitment that the documents will be produced by November 3, 2014. While the clearance process is being handled by bankruptcy counsel for the various Nortel estates, we understand that approximately 1700 out of the approximately 2250 trial exhibits have been reviewed for confidentiality and presented to Rockstar for review. Of those first 1700 exhibits, more than 93% have no redactions.

As for the remaining approximately 550 exhibits, we understand that Rockstar has identified approximately 300 exhibits that it believes should be sealed due to the inclusion of attorney-client privileged information. The balance of the exhibits are at various stages of the confidentiality review process. We are continuing to communicate with the parties involved in the review process to determine (a) when Rockstar expects to be finished with its review of the first 1700 exhibits, (b) whether, when and by whom a sealing motion will be filed, and (c) when the review of the remaining exhibits is expected to be completed. We will update you as we receive additional information.

Your proposal regarding a procedure for providing notice to interested third parties of any produced exhibits that TWC wants in unredacted form appears workable as part of a global resolution, so long as at least Google is willing to agree to this same procedure for production of the allocation trial exhibits. We do not want to be subjected to multiple, possibly conflicting sets of requirements.

II.     Allocation Trial Deposition Transcripts

We understand that Cleary proposed to produce the complete deposition transcripts for Cianciolo, Lee, Veschi, McColgan and Riedel, redacted for confidentiality (not privilege), subject to an agreement by TWC that no other full transcripts would be demanded. We further understand that TWC may be willing to accept that proposal, subject to confirmation that no other individuals on Schedule I to your October 3 letter were deposed, but TWC demands that the transcripts be redacted only for privilege.

We are advised by Cleary that no other individuals on your Schedule I were deposed for the allocation trial. NNI remains willing to produce the full deposition transcripts for Cianciolo, Lee, Veschi, McColgan and Riedel, redacted for confidentiality, but again as part of a global compromise that includes at least Google. Also, we will first need to provide notice to the interested third parties as required by the Bankruptcy Court's confidentiality orders before the redacted transcripts can be produced.

III.    Bid Evaluation Documents

We understand that Cleary proposed to produce two specified bid evaluation documents that were not allocation trial exhibits and a third that was a trial exhibit, all redacted for confidentiality (not privilege) in accordance with the procedures specified by the Bankruptcy Court. We further understand that TWC is conditionally willing to accept that proposal subject to NNI's willingness to include an additional term in the proposed ESI search (discussed below), but TWC demands that the exhibits be redacted only for privilege.

NNI remains willing to produce the three bid evaluation documents on the terms proposed by Cleary, though we would need to first provide notice of the proposed disclosure of the two documents that were not trial exhibits to the interested third-parties as required by the

Dustin F. Guzior
October 27, 2014
Page 3

Bankruptcy Court's protective order (notice of the third document is covered by the trial exhibit review process). The ESI search issue is addressed below.

IV.     Patent Enforcement and Valuation Documents

   A.   ESI Custodians

With respect to your representations regarding the various categories of custodians you apparently discussed with Ms. Rozenberg, based on the best information available to us: (1) we can confirm that NNI collected documents for the allocation litigation from everyone on List A in Schedule I to your letter; (2) none of the individuals on List B were document custodians for the allocation litigation; (3) Hrishikesh Gossain should be on List C, not List D; (4) NNI does not have access to information necessary to confirm the accuracy of List E; (5) we believe that Loa Andersson was employed by the Swedish Nortel entity, not Nortel Networks S.A.; and (6) NNI remains unable to ascertain which Nortel entity employed the List C custodians. Finally, we do not have access to information that would readily identify the employer for all of the custodians on your List G, but we note that Don Powers provided testimony during the recent 30(b)(6) deposition of Constellation regarding many of those individuals. Please identify any of the individuals on that list about which you still have a question. As for your summary of NNI's proposal, we are advised by Cleary that they offered to extend the search to all data only for Veschi, and not for Riedel.

In response to your eight enumerated requests for additional information regarding the documents collected and produced in connection with the allocation litigation, based on the best information reasonably available to us:

1.  John Mark Hearn is the only person on your Lists B-G from whom NNI collected documents.

2.  The date ranges for the documents NNI collected for the allocation litigation are as follows:

| Custodian | Start Date | End Date |
|---|---|---|
| Chris Cianciolo | 03/31/04 | 12/19/09 |
| Art Fisher | 12/17/97 | 06/12/13 |
| John Mark Hearn | 03/20/92 | 12/02/11 |
| Gillian McColgan | 08/08/00 | 04/23/13 |
| Don Powers | 02/01/96 | 04/08/11 |
| George Riedel | 01/15/04 | 08/05/11 |
| John Veschi | 04/15/99 | 10/28/11 |
| Richard Weiss | 05/25/00 | 12/07/07 |

NNI does not have access to any earlier documents for these custodians.

Dustin F. Guzior
October 27, 2014
Page 4

    3.     Not all of the documents collected by NNI for the allocation litigation are included in the allocation litigation database, as more than half of the collected documents were determined to be not responsive. Of the responsive documents, NNI produced roughly 266,000 non-privileged documents and about 105,000 joint privileged documents, and withheld approximately 85,000 documents as privileged only to NNI. Our understanding is that the entire set of approximately 1 million documents collected by NNI has been retained in electronic form by Cleary.

    4.     Based on the information available to us, the other Nortel estates did not collect documents from any of the custodians on your Lists A-G that were not identified in response to item 1 above.

    5.     See response to item 4.

    6.     See response to item 4.

    7.     The approximately 3 million documents in the allocation litigation database include documents produced by NNI, the Nortel Canadian and EMEA estates, Nortel's business and legal advisors (including Lazard and Global IP), and the other "Core Parties" to the allocation litigation.

    8.     The allocation litigation database includes approximately 3,500 documents produced by Lazard and approximately 24,000 documents produced by Global IP.

With regard to searching for and producing documents maintained in the allocation litigation database, NNI would be willing to undertake that burden as part of a global resolution in accordance with the procedure set forth below, subject to the following conditions:

- TWC, Google, Verizon, and any other party interested in receiving documents produced from the allocation litigation database ("Requesting Parties") must agree *in advance* to fully reimburse NNI for its costs and attorneys' fees incurred in searching for, reviewing and producing the documents;

- the Requesting Parties must coordinate with one another in order to present NNI with a single, agreed-upon list of search terms so that NNI need only go through this process once;

- NNI will not be required to search the documents that were collected but not produced in the allocation litigation (*i.e.*, because they were deemed non-responsive or subject to a privilege claim by NNI); and

- NNI will not be required to manually prepare a privilege log identifying documents withheld on the basis of attorney-client privilege and/or work

Crowell & Moring LLP  ■  www.crowell.com  ■  Washington, DC  ■  New York  ■  San Francisco  ■  Los Angeles  ■  Orange County  ■  Anchorage  ■  London  ■  Brussels

Dustin F. Guzior
October 27, 2014
Page 5

      product immunity, but instead may rely on an automatically generated privilege log.

If agreement can be reached on the foregoing conditions, NNI proposes the following procedure for the production of documents from the allocation litigation database:

(1) the Requesting Parties will present NNI with a single, agreed-upon list of ESI search terms they want run against the allocation litigation database;

(2) NNI will have the proposed search terms run against the database and will provide the Requesting Parties with the number of hits for each search term;

(3) NNI will work with the Requesting Parties to narrow any searches that appear to be returning an unreasonable number of hits, ultimately resulting in a final set of search terms;

(4) NNI will have the final set of search terms run against the allocation litigation database to identify an initial set of potentially responsive documents, after which NNI will have privilege filters run against the initial set of responsive documents to produce a final set of potentially responsive, non-privileged documents (NNI will have full claw-back rights with respect to any privileged documents that are produced, consistent with the protective orders in the respective cases and Fed. R. Evid. 502(b));

(5) with respect to the documents captured by the privilege filters, NNI will not be required to undertake a document-by-document review, but instead will be permitted to withhold those documents as presumptively privileged and to provide the Requesting Parties with an automatically generated privilege log identifying the withheld documents;

(6) with respect to the final set of potentially responsive, non-privileged documents, NNI will provide any required notices to interested third parties informing them that NNI intends to produce the documents on an "Outside Counsel's Eyes Only" basis pursuant to the protective orders in the respective litigation unless a written objection is received within 21 days of such notice;

(7) for any written objection received pursuant to item (6) above, the Requesting Parties will file an appropriate motion with the Bankruptcy Court seeking authorization for NNI to produce any objected-to documents that the Requesting Parties believe should be produced, and unless and until a final order is issued and all rights of appeal are exhausted, NNI shall have no obligation to produce the objected-to documents;

(8) with respect to all documents for which an objection is not received pursuant to item (6) above, NNI will produce such documents within 14 days of the end of the objection period.

Dustin F. Guzior
October 27, 2014
Page 6

IV.	Iron Mountain and LiveLink Documents

In response to your inquiry, NNI support personnel believe that documents and/or data stored with Iron Mountain goes back to 1981, and documents in the LiveLink database go back to 1997.  We are attempting to locate documents describing Nortel's document retention policies both before and after the bankruptcy.

Regarding the online catalog of materials stored with Iron Mountain, due to its structure and size, it is not practical to print out the entire catalog for you.  However, NNI is willing to provide you with an opportunity to observe the online catalog at NNI's offices in Research Triangle Park, NC, including a demonstration of its search capabilities.  We would also be willing to have NNI support personnel run requested searches against the catalog during that visit so that you can see the type of information returned.  During that same visit, we would be willing to provide you with an opportunity to observe the LiveLink system, again including a demonstration of the system's search capabilities, and again with an opportunity to have NNI support personnel run searches for the purpose of determining the number of hits returned.  We would not provide access to any documents returned in such searches at that time due to privilege and confidentiality concerns.  Also, in the interest of efficiency, we would want to coordinate with the other Requesting Parties in case they want to attend as well.

V.	Technical Documents

Regarding the technical documents that TWC is seeking, we are unable to readily determine whether any such documents exist at NNI, whether stored with Iron Mountain in electronic of paper form, or stored in the LiveLink system.  However, in lieu of the on-site inspections suggested above, we would be willing to have specified searches run against either or both of the Iron Mountain online catalog and the LiveLink system in an effort to help determine whether such documents exist in either repository.

To that end, with reference to the "Technology Search Terms" in your Schedule IV, neither the Iron Mountain online catalog nor the LiveLink system support proximity searches, so we would ask that you revise the search strings accordingly.  Also, we suggest including date limitations at least for the searches to be run against LiveLink.

To the extent TWC determines from the results of the foregoing searches that it has a need for NNI to search for and produce responsive, non-privileged documents, NNI would be willing to do so on the following conditions:

- TWC must agree *in advance* to fully reimburse NNI for its costs and attorneys' fees incurred in searching for, reviewing and producing the requested documents; and

Dustin F. Guzior
October 27, 2014
Page 7

- NNI will not be required to manually prepare a privilege log identifying documents withheld on the basis of attorney-client privilege and/or work product immunity.

Also, before any potentially responsive documents can be produced, NNI will need to determine whether the documents are covered by NNI's confidentiality obligations to one or more third parties. If so, NNI will be required to provide appropriate notice and an opportunity to object before any such documents are produced to TWC.

VI.     Conclusion

We have attempted to address the numerous issues raised in your letter of October 3 in a good-faith effort to provide TWC with an opportunity to obtain the discovery it believes it needs, but without imposing undue burden and expense on NNI. We will be happy to discuss any of these issues with you further in advance of the hearing before the Bankruptcy Court on November 7.

Sincerely,

*[signature: Mark Supko]*

Mark Supko

29548245