# Exhibit 2

**DESMARAIS** LLP

www.desmaraisllp.com

| | Dustin F. Guzior | |
|---|---|---|
| 230 Park Avenue | Direct: 212-808-2944 | P: 212-351-3400 |
| New York, NY 10169 | dguzior@desmaraisllp.com | F: 212-351-3401 |

October 28, 2014

**Via E-Mail: msupko@crowell.com**

Mark M. Supko
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595

     Re: *Constellation Technologies LLC v. Time Warner Cable*
       Subpoena for Documents to Nortel Networks Inc.

Dear Mark,

  I write on behalf of our client Time Warner Cable ("TWC") concerning Nortel Networks Inc.'s response to TWC's subpoena for documents, which was served on Nortel Networks Inc. ("NNI") on June 9, 2014 (the "Subpoena"). This letter responds to several of the issues discussed in your October 27, 2014 letter to me, many of which were also discussed during our October 28, 2014 teleconference.

  I. <u>Allocation Trial Exhibits</u>

  We understand that 1,700 of the 2,250 allocation trial exhibits have been fully reviewed and that only 119 exhibits from that set contain redactions. We also understand that Rockstar's review of those 1,700 documents is the only obstacle to immediate production. Please let us know a date certain by which those 1,700 trial exhibits will be produced. As I stated during our teleconference, we think it is appropriate at this juncture for NNI to notify Rockstar that the documents will be produced in one week.

  We also understand that 550 of the trial exhibits have been reviewed by Rockstar, and that Rockstar has insisted that 300 of those documents be "sealed" because they purportedly contain privileged information. As an initial matter, it is our understanding that the allocation trial exhibits were previously reviewed by NNI and/or the other Nortel estates for privileged and joint privileged material. We find Rockstar's privilege objection highly questionable in light of NNI's and/or the other Nortel estates' apparent conclusion that the documents do not contain privileged material. Please let us know Rockstar's basis for the privilege objection and whether Rockstar proposes to redact or withhold those exhibits. Please also provide us with a date certain by which those 300 documents will be produced if Rockstar does not promptly seek relief from the appropriate court. I understand that you and your firm have not been involved in that

**DESMARAIS** LLP

Mark M. Supko, Esq.
October 28, 2014
Page | 2

process, but my understanding is that we are to coordinate our requests to NNI through your firm.

We also understand that the remaining 250 exhibits are now being reviewed by the Nortel estates for "confidentiality" and that those do not currently contain redactions. Please provide a date certain by which those documents will be produced. Given the small volume, TWC does not see any reason that those documents cannot be produced in one week, if not sooner.

I would like to clarify one point with respect to redactions for confidential information. It has never been TWC's position that NNI could produce the allocation trial exhibits with redactions of *Rockstar or Nortel* confidential information. It was explained to me by Cleary Gottlieb that a number of third parties (*e.g.*, tax authorities or other purchasers of Nortel business lines) might have confidentiality interests in certain information in the trial exhibits, and that it would be burdensome for Cleary to contact each of those third parties prior to production to TWC. In order to facilitate quick production of the allocation trial exhibits, we agreed to accept "public" versions of the trial exhibits that redact confidential information of those third parties. We are still willing to accept those versions of the trial exhibits, subject to our ability to notify NNI of specific confidentiality redactions that we want lifted, but we do not expect to receive documents that contain redactions of purported *Rockstar or Nortel* confidential information.[1] There is no legitimate basis for Rockstar to object to production of that material under a protective order that it negotiated and we cannot continue to entertain that obstacle.

    II.    <u>Deposition Transcripts</u>

On October 14, 2014, NNI filed its proposed findings of fact and conclusions of law in the allocation proceedings. We have studied that document with great interest, and based on information in that document, we believe it is appropriate for NNI to produce the transcript of the deposition of Angela Anderson in addition to Cianciolo, Lee, McColgan, Riedel, and Veschi. Based on NNI's representations in your October 27 letter, we do not request any other transcripts at this time.

TWC expects to receive the full deposition transcripts for each individual listed above, but we do not expect to receive transcripts that contain redactions of *Rockstar or Nortel* confidential information. If it is determined that those documents contain confidential information of other third parties, TWC is willing to accept transcripts that redact that information, subject to our ability to notify NNI of specific confidentiality redactions that we want lifted. Please provide us with a date certain by which those transcripts will be produced. At this juncture, we believe it is appropriate for NNI to notify interested parties that those

---

[1] From time-to-time, Cleary Gottlieb conflated privileged material and confidential material. It is not now, nor has it ever been, TWC's position that Rockstar or Nortel cannot redact attorney-client privileged information or work product. We are concerned with and object to the broader redaction by Rockstar and/or Nortel of non-privileged confidential material.

**DESMARAIS**LLP

Mark M. Supko, Esq.
October 28, 2014
Page | 3

transcripts will be produced within fourteen days. That type of notice is entirely consistent with the bankruptcy court's orders, especially paragraph 9 of the bankruptcy court's protective order.

      III.    <u>Bid Evaluation Documents</u>

TWC welcomes NNI's production of the three relevant documents that NNI has identified, but we do not expect to receive documents that contain redactions of *Rockstar or Nortel* confidential information. If it is determined that those documents contain confidential information of other third parties, TWC is willing to accept documents that redact that information, subject to our ability to notify NNI of specific confidentiality redactions that we want lifted. Please provide us with a date certain by which those documents will be produced. At this juncture, we believe it is appropriate for NNI to notify interested parties that those documents will be produced within fourteen days. That type of notice is entirely consistent with the bankruptcy court's orders, especially paragraph 9 of the bankruptcy court's protective order.

      IV.    <u>Patent Enforcement and Valuation Documents</u>

          A.  <u>ESI Custodians</u>

As discussed during our October 28, 2014 teleconference, TWC believes the appropriate data set against which to run search terms consists of: (1) the approximately 3 million documents in the allocation litigation database and (2) the set of approximately 629,000 documents that NNI collected for the custodians listed in the table on page 3 of your October 27 letter that was not produced in the allocation litigation (together, the "ESI Data Set").

As discussed during our October 28, 2014 teleconference, TWC will work with Google to construct a joint list of core search terms that NNI will run against the ESI Data Set. TWC will additionally submit technology search terms that are specific to the issues in its case. NNI will run those search terms against the ESI Data Set to determine the volume of "hits" for each term. After the parties review that data, they will have an informed discussion about the remaining issues, including any narrowing of search terms and an efficient solution for privilege log creation. TWC agrees that any document "hits" that were previously determined to be joint privileged or privileged to NNI in the allocation proceedings will be treated as presumptively privileged.

          B.  <u>Iron Mountain, LiveLink System, and Technical Documents</u>

As discussed on our October 28, 2014 teleconference, TWC believes that NNI presents a reasonable proposal with respect to the set of data stored with Iron Mountain and on LiveLink.

With respect to Iron Mountain, TWC is interested in conducting the proposed inspection of the Iron Mountain online catalogs to understand what information is available and how it is presented. Please let us know when and where NNI proposes to host that inspection.

DESMARAIS LLP

Mark M. Supko, Esq.
October 28, 2014
Page | 4


      With respect to LiveLink, TWC will propose a list of patent and technology search terms to be run against the system. TWC requests that NNI provide the number of "hits" for each search term before it decides whether it is necessary to review the "hits." We understand that the LiveLink system does not allow for proximity search strings, and we will modify our search terms appropriately. We also will consider the best way to incorporate date restrictions, as appropriate.

*    *    *

      I understand that the next step is for TWC and Google to send NNI a list of core search terms. We will do so promptly and then we look forward to receiving the search term "hit" data from NNI and continuing our conversation. We are glad that the parties have been able to work together to construct a potentially workable solution.

                                                                     Regards,


                                                                    */s/ Dustin F. Guzior*
                                                                    Dustin F. Guzior