# Exhibit 6

# Dustin Guzior

| | |
|---|---|
| **From:** | Supko, Mark <MSupko@crowell.com> |
| **Sent:** | Friday, October 31, 2014 2:44 PM |
| **To:** | Michelle Ernst |
| **Cc:** | Robert Wilson; Dustin Guzior; Kristin Madigan; Matthew Cannon; Cheney, Matthew; Plevin, Mark; Regan, Jim; Jackson, Darlene |
| **Subject:** | RE: Google & TWC Subpoenas to Nortel Networks Inc. |

Michelle,

Our responses to the consolidated list of questions are below:

1. Are the allocation trial exhibits being withheld or redacted as described in D.I. 13554 and 13729?  For example, has NNI redacted all information identified in Paragraph 8(a) of D.I. 13554?  Are documents identified in D.I. 13729-3 being withheld completely?

   Our understanding is that the objective of the process for preparing public versions of the trial exhibits was to redact only third-party "Confidential Information" (as defined in the court's orders), and not Nortel confidential information.  In response to the pending subpoenas, we plan to produce all of the exhibits that become part of the public trial record, in the form they are made public.  To the extent exhibits have been sealed by the court, we do not plan to produce them.   As for the exhibits listed on D.I. 13729-3, while I have not done a one-for-one comparison, at least some of those exhibits are on the list of public trial exhibits, and to the extent they are, they will be produced.

2. It is our understanding that the Plaintiff Rockstar Consortium US LP is the Rockstar entity currently reviewing Nortel documents.  Please confirm our understanding, or if other Rockstar-related entities are involved, please identify them.

   That is our understanding too.

3. For the 1,581 exhibits that have already been reviewed and that contain no redactions, when will those documents be produced?  Since Rockstar is holding up that production, we request that Rockstar be given 7 days to complete its review before production.

   We believe (but are trying to get confirmation) that Rockstar has now completed its review of all 2,250 trial exhibits.  Based on a quick count, it appears that 10 of the exhibits are currently under seal, and Rockstar is claiming privilege over 392 exhibits.  We also understand that the Canadian Revenue Authority is still reviewing a small number of exhibits.  Our plan is to produce each of the trial exhibits promptly after they are added to the public trial record by the Bankruptcy Court, but we have been unable to ascertain a date certain on which that will happen (that issue will likely be discussed during the hearing next week).  NNI is willing to produce the 1,858 exhibits that Rockstar has not flagged as privileged sooner on an attorneys' eyes only basis, but only if Rockstar will confirm that doing so does not violate any of the Nortel estates' confidentiality agreements with Rockstar.  To date, Rockstar has been unwilling to agree that the proposed public versions of those exhibits do not contain Rockstar confidential information.

4. For the 119 exhibits that have already been reviewed and that contain redactions, who made the redactions?  Were redactions made for confidentiality, or privilege, or both?  Are the redactions for confidentiality and privilege being tracked separately?  Which third-parties are implicated?  Have those parties been given notice that TWC seeks production of those documents under a protective order?  Like the 1,581

exhibits, since Rockstar is also holding up this production, we request that Rockstar be given 7 days to complete its review before production.

As we understand the process, the trial exhibits were divvied up among counsel for each of the US, Canadian and EMEA Nortel estates, each of which then made proposed redactions of third-party confidential information only, i.e., no redactions of Nortel-confidential information, and no redactions for privilege.  The "implicated" third parties were the purchasers of Nortel's assets and licensees under patents formerly owned by Nortel, including but not limited to the patents sold to Rockstar.  The proposed public versions were made available to any third parties who expressed an interest in reviewing them, each of whom had the ability to modify the redactions as to their own information.  We believe all of the relevant third parties have been given notice that the public versions of the trial exhibits may be produced to litigants, but notice has not been given that TWC seeks production of the entire collection of trial exhibits in unredacted form.

5. For the 250 exhibits that Rockstar has already reviewed that contain no redactions, when will those documents be produced?  We request that Rockstar be given 7 days to complete a review of that small set of documents before production.

   See the response to question 3.

6. For the 300 exhibits that Rockstar wants to "seal," does Rockstar propose to redact or withhold those documents?  What is the basis for *Rockstar* asserting a privilege interest?  We request that Rockstar be given 7 days to file appropriate objections before production.  If Rockstar is making redactions to those documents, we ask for production of the redacted documents immediately.

   Rockstar has now identified 392 exhibits as containing its privileged information, and it has objected to any disclosure of those exhibits.  It is unclear at this time whether Rockstar intends to file a sealing motion with the Bankruptcy Court, or whether instead Rockstar will continue to insist that the Nortel estates do so.  We anticipate that this issue will also be discussed at the hearing next week.  In view of Rockstar's objection, NNI cannot produce those documents absent authorization from Rockstar or an appropriate order of the Bankruptcy Court.

7. With respect to Rockstar's review of NNI's documents, is Rockstar reviewing for privilege, confidentiality, or both?  Will Rockstar provide a privilege log for documents withheld or redacted on the basis of privilege?

   It is our understanding that Rockstar reviewed the trial exhibits for both privilege and confidentiality.  Rockstar is not "withholding" documents based on privilege, but instead has objected to any disclosure of them by Nortel, suggesting that doing so would be a breach of Nortel's confidentiality obligations to Rockstar.  It is unclear whether Rockstar redacted documents for privilege in addition to confidentiality.  We do not believe there is any provision in the Bankruptcy Court's confidentiality orders for withholding or redacting trial exhibits on the basis of privilege, so any requirement for providing a privilege log would have to be part of a sealing order.

8. If the parties come to an agreement for providing notice to third parties, will NNI produce un-redacted trial exhibits and deposition transcripts under the Protective Orders entered in the underlying actions or pursuant to the Protective Order entered in the Bankruptcy Court?

   If the parties can reach an agreement on a procedure for providing notice to third parties (including Rockstar) that is consistent with the Bankruptcy Court's confidentiality and protective orders, NNI would have no objection to producing unredacted trial exhibits and deposition transcripts pursuant to the protective orders entered in the district court cases and/or in the bankruptcy case.

9. Will NNI be producing additional deposition transcripts?  If so, when?  Is NNI willing to entertain requests for additional deposition transcripts?

NNI is willing to produce the full deposition transcripts for Cianciolo, Lee, McColgan, Riedel, Veschi, and Angela Anderson (which TWC recently requested), subject to redactions for third-party confidential information and notice to interested third parties in accordance with the same procedure that was followed with respect to the trial exhibits. We expect to receive the Anderson transcript with any necessary redactions by early next week, after which we will send the required notices.

10. Why has NNI not yet produced the bankruptcy documentation that was required to be redacted by May and June 2014 by the Court's Order (D.I. 13554 at Provision 7), and when can we expect this production?

    We are advised by bankruptcy counsel that with the exception of designated portions of deposition transcripts, the Additional Priority Trial Documents referenced in Provision 7 of D.I. 13554 are available from the docket, some with agreed upon confidentiality redactions pursuant to the order (not all of the documents required redactions). In addition, the designated portions of the transcripts for 8 deponents requested by TWC were produced with confidentiality redactions.

11. Does the bankruptcy database contain the "Allocation Dataroom Documents" identified in Provision 20 of the Protective Order (D.I. 10805)?

    Those documents are stored as a collection on a separate hard drive, so technically they are not contained as an identifiable collection in what we've been referring to as the allocation litigation database. We further understand that the documents are not currently in a text searchable format.

We're happy to discuss these issues further, but another call might be more efficient than continued email exchanges.

Regards,
Mark

Mark M. Supko
msupko@crowell.com
Direct 1.202.624.2734 | Mobile: 1.703.980.4695

**Crowell & Moring LLP** | www.crowell.com
1001 Pennsylvania Avenue NW
Washington, DC 20004

This message may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

============================================================

**From:** Michelle Ernst [mailto:MichelleErnst@quinnemanuel.com]
**Sent:** Wednesday, October 29, 2014 4:20 PM
**To:** Supko, Mark; Cheney, Matthew; Plevin, Mark; Regan, Jim
**Cc:** Robert Wilson; Dustin Guzior; Kristin Madigan; Matthew Cannon
**Subject:** Google & TWC Subpoenas to Nortel Networks Inc.

Mark,

Following up on our meet and confer yesterday, please find attached, at your request: (1) a consolidated list of questions from Google and TWC; and (2) a common list of search terms for Google and TWC to be run against Nortel's ESI data set, as defined in the attached document.

As discussed during our October 28, 2014 teleconference, each party will also submit a list of search terms that are specific to each case. To that end, please find attached Google's case-specific search terms.

TWC anticipates sending its case-specific search terms by the end of this week. Each of the parties in the Delaware cases (Cisco, ARRIS, and the MSOs) will submit case-specific search terms as soon as possible. Those cases are at a very early stage, and those parties cannot formulate case-specific terms now. Cisco, ARRIS, and the MSOs, however, will not request any additional common search terms absent good cause. It is our intention that the common search terms will generate the "core" set of material for NNI to produce and that the case-specific search terms will capture *specific* parties, patents, and technologies at issue in each case.

Regards,
Michelle
**Michelle Ernst**
*Associate*
**Quinn Emanuel Urquhart & Sullivan, LLP**

51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7531 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
michelleernst@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.