# Exhibit 7

# Dustin Guzior

| | |
|---|---|
| **From:** | Supko, Mark <MSupko@crowell.com> |
| **Sent:** | Saturday, November 01, 2014 7:05 AM |
| **To:** | Dustin Guzior |
| **Cc:** | Robert Wilson; Kristin Madigan; Matthew Cannon; Cheney, Matthew; Plevin, Mark; Regan, Jim; Jackson, Sean; Michelle Ernst; Karim Oussayef |
| **Subject:** | RE: Google & TWC Subpoenas to Nortel Networks Inc. |

Dustin,

Alternative (3) is nothing more than the practical result of TWC opting not to go with (1) or (2) before the hearing, as the ESI issues are encompassed within the broader set of issues raised by our motion.  Without knowing whether/how the court will deal with the ESI issues, it is impossible to say how our position might be impacted.  Nevertheless, we will still be willing to discuss possible compromises with TWC after the hearing.

For (1), while we can understand why you included the terms on your case-specific lists, we're trying to strike a balance between the burden/expense on NNI and TWC's discovery interests.  In the context of a compromise, TWC will have to figure out a way to focus its requests.

For (2), I expect to be able to get a cost estimate to you sometime on Monday.

Regards,
Mark

**From:** Dustin Guzior [mailto:DGuzior@desmaraisllp.com]
**Sent:** Friday, October 31, 2014 3:56 PM
**To:** Supko, Mark
**Cc:** Robert Wilson; Kristin Madigan; Matthew Cannon; Cheney, Matthew; Plevin, Mark; Regan, Jim; Jackson, Sean; Michelle Ernst; Karim Oussayef
**Subject:** RE: Google & TWC Subpoenas to Nortel Networks Inc.


Mark,

Can you please let me know what you mean by (3)?  Is it your expectation that the progress we have made in negotiations will be altered by the bankruptcy court hearing?  TWC and NNI do not have any dispute yet and we seem close to resolution on the document production process.  Please let me know if I have misunderstood.

For (1), I do not see how we can reduce the search terms to your proposed level without entirely eliminating inventor names or patents.  We have limited ourselves to inventor names, patent numbers, and 6 tech terms per patent.  We stripped the list down as much as we can and I gave you a thoughtful explanation for why we need the search terms that we listed in light of information provided by Cleary Gottlieb.

For (2), can you please let me know a reasonable cost estimate for running the number of search terms that are above the number you proposed?

Thanks,

Dustin F. Guzior

1

**DESMARAIS LLP**
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622

---

**From:** Supko, Mark [mailto:MSupko@crowell.com]
**Sent:** Friday, October 31, 2014 3:46 PM
**To:** Dustin Guzior
**Cc:** Robert Wilson; Kristin Madigan; Matthew Cannon; Cheney, Matthew; Plevin, Mark; Regan, Jim; Jackson, Sean; Michelle Ernst; Karim Oussayef
**Subject:** RE: Google & TWC Subpoenas to Nortel Networks Inc.

Dustin,

Given the large number of case-specific search terms you've proposed, we'll give you the same alternatives we gave Google:

    1. Reduce the lists of case-specific search terms as requested in my earlier email, in which case we will have the searches run at NNI's expense;
    2. Agree to be invoiced directly for the full cost of the searches, in which case we will have the searches run as TWC has requested; or
    3. Revisit the issue after the hearing before the Bankruptcy Court next week.

I'm still working on dates for the inspection. Your questions on production of trial exhibits and deposition transcripts were addressed in my email responding to the consolidated TWC/Google questions.

Regards,
Mark

---

**From:** Dustin Guzior [mailto:DGuzior@desmaraisllp.com]
**Sent:** Friday, October 31, 2014 12:37 PM
**To:** Supko, Mark
**Cc:** Robert Wilson; Kristin Madigan; Matthew Cannon; Cheney, Matthew; Plevin, Mark; Regan, Jim; Jackson, Sean; Michelle Ernst; Karim Oussayef
**Subject:** RE: Google & TWC Subpoenas to Nortel Networks Inc.

Mark,

TWC's case-specific search terms are attached. I am attaching a Word document so that your vendor can more easily copy/paste the terms. For LiveLink, any proximity modifiers can be replaced with "AND". For Iron Mountain, I would like to see what type of information is available on the online catalog during NNI's proposed inspection before we do any searches for TWC. From your description, it sounds like the information available on the online catalog is relatively bare bones (e.g., "Box 22"). When can we do that inspection?

Separately, do you have any update on the date by which trial exhibits and deposition transcripts will be produced? The parties have agreed on production of at least that material for multiple months now, and I think it is fair to have a near-term production schedule at this point.

Thanks,

2

Dustin F. Guzior
**DESMARAIS LLP**
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622

---

**From:** Supko, Mark [mailto:MSupko@crowell.com]
**Sent:** Friday, October 31, 2014 7:05 AM
**To:** Dustin Guzior
**Cc:** Robert Wilson; Kristin Madigan; Matthew Cannon; Cheney, Matthew; Plevin, Mark; Regan, Jim; Jackson, Sean; Michelle Ernst
**Subject:** RE: Google & TWC Subpoenas to Nortel Networks Inc.

Dustin,

We appreciate your willingness to try to work within the limits we proposed for case-specific searches. There is likely room for compromise, but we want to see the number of search terms significantly closer to the number we proposed than the number on which Google is insisting for their case-specific searches (unless, as we advised Google, TWC will incur the cost of having the searches run, in which case we would not be concerned about the number of terms).

Regards,
Mark

---

**From:** Dustin Guzior [mailto:DGuzior@desmaraisllp.com]
**Sent:** Thursday, October 30, 2014 8:04 PM
**To:** Supko, Mark; Michelle Ernst
**Cc:** Robert Wilson; Kristin Madigan; Matthew Cannon; Cheney, Matthew; Plevin, Mark; Regan, Jim; Jackson, Sean
**Subject:** RE: Google & TWC Subpoenas to Nortel Networks Inc.


Mark,

I am glad to hear that NNI will agree to the common search terms. Please understand, however, that the list represents a significant compromise on our side as well. I have agreed that those common search terms will apply for my other clients (Cisco, ARRIS, and the MSOs) that are engaged in separate litigations with Rockstar in DE. Each of those cases will have an e-discovery order with its own budget for search terms. We also hope the common search terms will lead to a "core" set of material that NNI can produce at marginal cost in other Rockstar litigations. After all is said and done, that list might represent 1-2 terms, or less, per party.

With respect to the case-specific search terms, TWC intends to submit its list tomorrow. As explained in my October 3 letter to Inna Rozenberg, the idea of "technology" search terms originated with NNI. The topic arose because Cleary Gottlieb explained to me that NNI no longer has employees with sufficient technical or commercial knowledge to identify documents related to the technologies described by the patents-in-suit. Cleary Gottlieb also explained that NNI does not have a manageable way to determine if any documents have been preserved for the inventors of the patents-in-suit. Accordingly, the idea behind "technology" search terms was that we could provide a list of terms relevant to each patent that would allow NNI to identify potentially relevant documents that – in an ideal world – would have been identified by relevant Nortel employees or IT personnel. The goal is different than with the e-mail ESI search terms contemplated by Judge Payne's ESI Orders. With that goal in mind, I believe we might need more case-specific search terms than you propose below, although we will do our best to limit the list.

3

In particular, Constellation has asserted 6 Nortel patents against TWC that have 20 unique inventors.  We need to have a search term for those patents and each inventor, and it would be useful information on its own to know the volume of document "hits" for those terms.  We also will need 5-10 terms per patent in order to appropriately capture relevant technology and prior art documents.  Constellation identified <u>72 technology categories</u> related to the patents-in-suit, and we are doing our best to reduce that list to a manageable number of search terms.  It is our hope that those terms are specific enough that there will be a small volume of documents "hit" for each string or term.  We will review the results of the searches and determine which results actually warrant review, with an eye toward eliminating any unreasonable review burden.

Please let me know if that sounds workable to you.  If the issue is the cost of *running* search terms in excess of the number you suggest below, please let me know a reasonable cost estimate for running additional terms so that I can discuss it with TWC.  We do not want to send you an excessive list, but we are struggling with how to pare the list down without eliminating entire aspects of the case.

Thank you,

Dustin F. Guzior
**DESMARAIS LLP**
230 Park Avenue
New York, New York 10169
O: (212) 808-2944
M: (347) 924-3622

---

**From:** Supko, Mark [mailto:MSupko@crowell.com]
**Sent:** Thursday, October 30, 2014 8:11 AM
**To:** Michelle Ernst
**Cc:** Robert Wilson; Dustin Guzior; Kristin Madigan; Matthew Cannon; Cheney, Matthew; Plevin, Mark; Regan, Jim; Jackson, Sean
**Subject:** RE: Google & TWC Subpoenas to Nortel Networks Inc.

Michelle,

In furtherance of the compromise that we have been trying to reach with Google and TWC, we are agreeable to running the proposed "Google & TWC Common Search Terms" against the so-called Nortel ESI Data Set, notwithstanding that the number of actual search *terms* appears to be substantially in excess of the 20 term-per-custodian limit imposed by the Order Regarding E-Discovery entered in the '893 litigation.  However, Google's case-specific lists of search terms for the Nortel ESI Data Set (which is really two separate data sets), LiveLink and Iron Mountain are unacceptable.  Google has requested 43 distinct searches for the '893 case and 75 distinct searches for the '5933 case to be run against each of the four repositories, and many of those requested searches actually comprise multiple search terms under the court's counting guidelines.  Google's request is excessive.

For each of the '893 and '5933 litigations, we are willing to run a maximum of 10 case-specific searches against the Nortel ESI Data Set (i.e., in addition to the 20 common searches Google and TWC have requested), and a maximum of 20 case-specific searches against each of the LiveLink database and the Iron Mountain online catalog (note that for this purpose, in the spirit of compromise, we are willing to count only the number of searches rather than the number of search terms).  Please revise your lists of proposed case-specific search terms accordingly.

Regards,
Mark

Mark M. Supko

msupko@crowell.com
Direct 1.202.624.2734 | Mobile: 1.703.980.4695

**Crowell & Moring LLP** | www.crowell.com
1001 Pennsylvania Avenue NW
Washington, DC 20004

This message may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

===========================================================

**From:** Michelle Ernst [mailto:MichelleErnst@quinnemanuel.com]
**Sent:** Wednesday, October 29, 2014 4:20 PM
**To:** Supko, Mark; Cheney, Matthew; Plevin, Mark; Regan, Jim
**Cc:** Robert Wilson; Dustin Guzior; Kristin Madigan; Matthew Cannon
**Subject:** Google & TWC Subpoenas to Nortel Networks Inc.

Mark,

Following up on our meet and confer yesterday, please find attached, at your request: (1) a consolidated list of questions from Google and TWC; and (2) a common list of search terms for Google and TWC to be run against Nortel's ESI data set, as defined in the attached document.

As discussed during our October 28, 2014 teleconference, each party will also submit a list of search terms that are specific to each case. To that end, please find attached Google's case-specific search terms.

TWC anticipates sending its case-specific search terms by the end of this week. Each of the parties in the Delaware cases (Cisco, ARRIS, and the MSOs) will submit case-specific search terms as soon as possible. Those cases are at a very early stage, and those parties cannot formulate case-specific terms now. Cisco, ARRIS, and the MSOs, however, will not request any additional common search terms absent good cause. It is our intention that the common search terms will generate the "core" set of material for NNI to produce and that the case-specific search terms will capture *specific* parties, patents, and technologies at issue in each case.

Regards,
Michelle

**Michelle Ernst**
*Associate*
**Quinn Emanuel Urquhart & Sullivan, LLP**

51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7531 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
michelleernst@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.