```
            IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE DISTRICT OF DELAWARE


IN RE:                        )     Case No. 09-10138(KG)
                              )     (Jointly Administered)
                              )
NORTEL NETWORKS, INC., et al.,)     Chapter 11
                              )
                              )     Courtroom 3
                              )     824 Market Street
          Debtors.           )     Wilmington, Delaware
                              )
                              )     November 5, 2014
                              )     8:30 a.m.
```

                  TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE JUDGE KEVIN GROSS
              UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:              Morris Nichols Arsht & Tunnell, LLP
                          BY: DEREK C. ABBOTT, ESQ.
                          BY: ANN C. CORDO, ESQ.
                          1201 North Market St., 18th Floor
                          Wilmington, DE  19899-1347
                          302-351-9200


                          Cleary Gottlieb Steen & Hamilton
                          BY: JAMES BROMLEY, ESQ.
                          BY: LISA M. SCHWEITZER, ESQ.
                          BY: RUSSELL ECKENROD, ESQ.
                          BY: MARGOT A. GIANIS, ESQ.
                          BY: BRENT TUNIS, ESQ.
                          One Liberty Plaza
                          New York, NY  10006
                          212-225-2000


ECRO:                     GINGER MACE

Transcription Service:    DIAZ DATA SERVICES, LLC
                          331 Schuylkill Street
                          Harrisburg, Pennsylvania 17110
                          (717) 233-6664
                          www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service

APPEARANCES:
(Continued)

For the Monitor:                    Buchanan Ingersoll & Rooney,PC
                                    BY: KATHLEEN A. MURPHY, ESQ.
                                    1105 N. Market St., Ste. 1900
                                    Wilmington, DE  19801-1054
                                    (302) 552-4214

                                    Allen & Overy
                                    BY: KEN COLEMAN, ESQ.
                                    BY: JACOB PULTMAN, ESQ.
                                    BY: BRADLEY PENSYL, ESQ.
                                    1221 Avenue of the Americas
                                    New York, NY  10020
                                    (212) 610-6300

For Ad Hoc Bondholder
Group:                              Milbank Tweed Hadley & McCloy
                                    BY: DENNIS DUNNE, ESQ.
                                    BY: ANDREW LEBLANC, ESQ.
                                    BY: NICK BASSETT, ESQ.
                                    One Chase Manhattan Plaza
                                    New York, NY  10005
                                    (212) 530-5000

                                    Pachulski Stang Ziehl & Jones
                                    BY: PETER KEANE, ESQ.
                                    919 N. Market St., 17th Floor
                                    Wilmington, DE  19801
                                    (302) 652-4100

For EMEA Debtors:                   Hughes Hubbard & Reed LLP
                                    BY: CHARLES HUBERTY, ESQ.
                                    One Battery Park Plaza
                                    New York, NY  10005
                                    (212) 837-6000

                                    Young Conaway Stargatt &
                                    Taylor
                                    BY: JAIME LUTON CHAPMAN, ESQ.
                                    Rodney Square
                                    1000 North King Street
                                    Wilmington, DE  19801
                                    (302) 571-6000

```
For Wilmington Trust:          Katten Muchin Rosenman, LLP
                               BY: DAVID CRICHLOW, ESQ.
                               575 Madison Avenue
                               New York, NY
                               (212) 940-8800


For Official Creditor's
Committee:                     Akin Gump Strauss Hauer & Feld
                               BY: ABID QURESHI, ESQ.
                               BY: FRED HODARA, ESQ.
                               BY: DAVID BOTTER, ESQ.
                               BY: ANNE EVANS, ESQ.
                               One Bryant Park
                               Bank of America Tower
                               New York, NY  10036
                               212-872-1000


                               Richards Layton & Finger
                               BY: CHRIS SAMIS, ESQ.
                               One Rodney Square
                               920 North King Street
                               Wilmington, DE  19801
                               (302) 651-7700


For Law Debenture:             Patterson Belknap Webb & Tyler
                               BY: DANIEL A. LOWENTHAL, ESQ.
                               1133 Avenue of the Americas
                               New York, NY  10036
                               212-336-2720


                               Morris James LLP
                               BY: STEPHEN M. MILLER, ESQ.
                               500 Delaware Avenue, Ste. 1500
                               Wilmington, DE  19801-1494
                               (302) 888-6853


For The Bank of New York
Mellon:                        Vedder Price
                               BY: MICHAEL RIELA, ESQ.
                               1633 Broadway, 47th Floor
                               New York, NY  10019
                               (212) 407-7700
```

APPEARANCES:
(Continued)

For Solus Alternative
Asset Management:                Quinn Emanuel Urquhart &
                                Sullivan
                                BY: JAMES TECCE, ESQ.
                                51 Madison Avenue, 22nd Floor
                                New York, NY  10010
                                (212) 849-7000

                                Pinckney Weidinger Urban &
                                Joyce, LLC
                                BY: JOANNE PINCKNEY, ESQ.
                                1220 N. Market St., Ste. 950
                                Wilmington, DE  19801
                                (302) 504-1497

For UK Pension Claimants:       Bayard, PA
                                BY: JUSTIN R. ALBERTO, ESQ.
                                222 Delaware Ave., Ste. 900
                                Wilmington DE  19899
                                (302) 429-4226

                                Willkie Farr & Gallagher, LLP
                                BY: BRIAN O'CONNOR, ESQ.
                                787 Seventh Avenue
                                New York, NY  10019-6099
                                (212) 728-8000

TELEPHONIC APPEARANCES:

For Nortel Networks UK
Pension Trust:                  Hogan & Lovells US LLP
                                BY: ANGELA DIMSDALE-GILL, ESQ.
                                212-728-3135

                                Thornton Grout Finnigan LLP
                                BY: D.J. MILLER, ESQ.
                                416-304-0559

                                Willkie Farr & Gallagher, LLP
                                BY: SAMEER ADVANI, ESQ.
                                (212) 728-3593

For Trustee, UK Pension
Plan:                           Hogan & Lovells US LLP
                                BY: MATTHEW BULLEN, ESQ.
                                (212) 728-8881

TELEPHONIC APPEARANCES:
(Continued)

For UK Pension Claimants:        Thornton Grout Finnigan, LLP
                                 BY: MICHAEL S. SHAKRA, ESQ.
                                 (416) 304-0332

For Monitor, Ernst & Young:      Allen & Overy, LLP
                                 BY: JOSEPH BADKE-BERKOW, ESQ.
                                 BY: DANIEL GUYDER, ESQ.
                                 BY: LAURA HALL, ESQ.
                                 BY: JOHN KIBLER, ESQ.
                                 BY: MARK NIXDORF, ESQ.
                                 212-610-6300

For Former Employees of
Nortel (Canada):                 Koskie Minsky, LLP
                                 BY: BARBARA WALANCIK, ESQ.
                                 (416) 542-6288

For Official Committee of
Unsecured Creditors:             Akin Gump Strauss Hauer & Feld
                                 BY: MATTHEW FAGEN, ESQ.
                                 212-872-1000

For Joint Administrators:        Herbert Smith
                                 BY: JOHN WHITEOAK, ESQ.
                                 302-571-6710

For Ad Hoc Committee of
Bondholders:                     Milbank Tweed Hadley & McCloy
                                 BY: THOMAS MATZ, ESQ.
                                 212-530-5000

For Michael J. Wunder:           Cassels Brock & Blackwell, LLP
                                 BY: MICHAEL J. WUNDER, ESQ.
                                 416-860-6484

For Davidson Kempner:            DK Partners
                                 BY: EPHRAIM DIAMOND
                                 (646) 282-5841

For Nortel Continuing
Employees:                       Shibley Righton, LLC
                                 BY: ARTHUR JACQUES
                                 (416) 214-5213

TELEPHONIC APPEARANCES
(Continued)

For Creditor:                    Credit Suisse
                                 BY: MANAS BABBILI
                                 (212) 538-5918

                                 Silver Point Capital
                                 BY: MATTHEW EHMER
                                 (203) 542-4219

                                 Halcyon Asset Management
                                 BY: ANDREW G. FRIEDMAN
                                 (212) 303-9444

                                 Regiment Capital Advisors
                                 BY: WEI WANG
                                 (617) 488-1647

For Interested Party:            River Birch Capital, LLC
                                 BY: BAFFOUR ABEDI
                                 (646) 699-3751

                                 Jefferies & Company
                                 BY: CHETAN BANSAL
                                 (203) 708-5992

                                 Bank of America
                                 BY: ESTHER CHUNG
                                 646-855-6705

                                 CitiGroup
                                 BY: JOSH W. BRANT
                                 212-723-1584

                                 Stone Lion Capital Partners
                                 BY: JUSTIN BRASS
                                 212-843-1246

                                 Dow Jones & Company
                                 BY: PEG A. BRICKLEY, ESQ.
                                 215-462-0953

                                 Reorg Research, Inc.
                                 BY: KENT COLLIER
                                 212-257-4383

TELEPHONIC APPEARANCES:
(Continued)

For Interested Party:           Southpaw Asset Management
                                BY: ANDREW M. THAU
                                203-862-6231

                                DebtWire
                                BY: JON R. BERKE
                                (646) 378-3108

                                HBK Capital Management
                                BY: ERIC BILMES
                                (212) 588-5115

                                Napier Park Global Capital
                                BY: JAMES J. DUPLESSIE
                                (212) 235-0735

                                GMO
                                BY: JEFFREY FRIEDMAN
                                (617) 790-50804

                                Contrarian Capital Management
                                BY: KIMBERLY B. GAINES
                                (203) 862-8250

                                Barclays, PLC
                                BY: ERIC M. MASON
                                (212) 412-6772

                                Kamunting Street Capital
                                BY: JACK MUI
                                (203) 541-4268

                                Perry Capital
                                BY: RICHARD PAIGE
                                (212) 583-4000

                                USB Securities, LLC
                                BY: DENNIS RUGGERE
                                (203) 719-7875

                                Intermarket Corporation
                                BY: WILLIAM SCHATZ
                                (212) 593-1550

TELEPHONIC APPEARANCES:
(Continued)

For Interested Party:          Candlewood Investment Group
                               BY: AADEL SHAABAN
                               (212) 491-4490

                               CRT CAPITAL GROUP, LLC
                               BY: KEVIN J. STARKE
                               (203) 569-6421

                               Deutsche Bank Securities, Inc.
                               BY: SANDEEP TICKOO
                               (212) 250-6785

                               Aurelius Capital Management LP
                               BY: MATTHEW ZLOTO
                               (646) 445-6518

For Non-Party:                 Brigade Capital Management
                               BY: DAVID YOU
                               212-745-970

WILMINGTON, DELAWARE, WEDNESDAY, NOVEMBER 5, 2014, 8:30 A.M.

1              THE CLERK:  Please rise.

2              THE COURT:  Good morning, everyone.  Please be

3    seated.  It's good to see you all back.  And Ms. Schweitzer,

4    I see you're raring to go.

5              MS. SCHWEITZER:  I'm raring to go.

6              THE COURT:  But listen, I just want to say

7    something before we being and no editorializing on my part

8    about this November 14 date.  I do not need a gun to my head

9    to act as a responsible Judge.  I think I do that and I

10   think I get the work done and I get it done as promptly as I

11   can under the circumstances.  I will expect an amendment to

12   the Settlement Agreement deleting that if you want a ruling

13   in this case, okay?

14             MR. LEBLANC:  Absolutely, Your Honor.  Your

15   Honor, as you recall, we extended it to November 15th at the

16   Court's suggestion that we do a hiatus or a standstill in

17   August --

18             THE COURT:  Yes.

19             MR. LEBLANC:  -- before we knew when we'd have a

20   hearing date.  We just haven't amended it.

21             THE COURT:  Okay.

22             MR. LEBLANC:  If Your Honor wants it deleted

23   entirely --

24             THE COURT:  I understand why the bondholders need

1   some certainty.

2               MR. LEBLANC:  Just some end date on it, and if

3   Your Honor --

4               THE COURT:  Okay.

5               MR. LEBLANC:  -- can tell me an end date?

6               THE COURT:  The end of the year.

7               MR. LEBLANC:  Okay, Your Honor.

8               THE COURT:  I think you'll have it before then

9   but that will at least give me some latitude.

10              MR. LEBLANC:  It certainly wasn't designed to be

11  a gun to your head.  We had -- because each bond that

12  trades, had trades with this Settlement Agreement --

13              THE COURT:  Absolutely.

14              MR. LEBLANC:  -- attached to it --

15              THE COURT:  Yes.

16              MR. LEBLANC:  -- for those that are signatories

17  to it, and so it does have an impact on the trading market.

18  That's why that's there but --

19              THE COURT:  That's right.

20              MR. LEBLANC:  But the end of the year we'll get

21  that done, Your Honor.

22              THE COURT:  All right.  It's an important issue

23  and a large issue, and I certainly think it would be in

24  everyone's interest for me to be able to take my time and do

25  it carefully.

1          MR. LEBLANC:  Yes, Your Honor.

2          THE COURT:  Okay.  Thank you, Mr. LeBlanc.

3          Ms. Schweitzer.

4          MS. SCHWEITZER:  Thank you, Your Honor.  And

5     thank you for making time for us this morning --

6          THE COURT:  Of course.

7          MS. SCHWEITZER:  -- and it was a long day

8     yesterday.  It's always exciting to come back, but we'll try

9     to keep it under two hours today is our goal.

10          The one housekeeping matter before we finish our

11     closing -- or start our closing is that an exhibit list we

12     gave you yesterday --

13          THE COURT:  Yes.

14          MS. SCHWEITZER:  -- one of the exhibits, which is

15     Exhibit 34, is an unredacted version of Mr. Kinrich's expert

16     report and no one -- it was originally on Appendix D but no

17     one relied on it at testimony on the unredacted version.  So

18     we would propose, and I believe everyone's in agreement,

19     that we just remove Exhibit 34.  Exhibit 35 is the redacted

20     version.

21          THE COURT:  Okay.

22          MS. SCHWEITZER:  So the report is in evidence.

23     It's just -- then if they're filed in the docket, you don't

24     have to put anything else under seal.

25          THE COURT:  I will take care of that.  Thank you,

1 Ms. Schweitzer.

2          MS. SCHWEITZER:  Thank you.  With that, we're on

3 to closings.

4          THE COURT:  Yes.

5          MS. SCHWEITZER:  I know it was a long hearing

6 yesterday.  There are five hours of witness testimony you

7 now have in front of you minus one document, over 200

8 documents in binders of evidence.  And certainly there's no

9 shortage of pleadings and briefs that were put in in this

10 case.  But when we step back, the Motion before Your Honor

11 is really rather straightforward.  It's a 9019 settlement --

12          THE COURT:  Yes.

13          MS. SCHWEITZER:  -- of a claim, a claim for post-

14 petition interest.  And yesterday you were shown calendars

15 and reenactments of chronologies and negotiations.  But the

16 settlement of the PPI issues wasn't really borne out of a

17 meeting at Cleary on July 15th or a meeting at the Ritz bar

18 or any other one-off meeting.  It really -- it's important

19 to go back to where this all came from.

20          The focus on PPI, the post-petition interest,

21 came out of the request of the Canadian interests in June of

22 2014.  And when you look through those submissions to Your

23 Honor and to the Canadian Court, which are marked as

24 exhibits, then the range Exhibit 41 is the Monitor's

25 submission; Exhibit 44, the Monitor's further reply

1  submission; the CCC submission is Exhibit 46; the UK Pension

2  is Exhibit 45.  There are other ones.  But when you look

3  back at what they say, it reminds you of why this started

4  and what the goals were in pursuing the litigation and what

5  the goals should be measured against in settling the claims.

6         To look at the Monitor pleading as of June 19,

7  2014, they've presented the issue for the Court to decide

8  would be in the U.S. if the applicable federal judgment rate

9  of interest is the standard for post-petition interest,

10  right?  So even in June 2014 we knew that was the request

11  being made should FJR be the standard.  And what they told

12  the Court at that time is so long as these common bond claim

13  issues remain unresolved, it will be virtually impossible

14  for the respective estates and their creditors to

15  meaningfully anticipate potential recoveries and therefore

16  to effectively evaluate any settlement proposal regarding

17  the current trial issues.

18         In addition, potential recoveries from the

19  Canadian estate may be materially impacted if excess funds

20  from the U.S. estate are utilized to pay claims for post-

21  petition interest instead of flowing back to the Canadian

22  parent company.  They say that the amounts in dispute, the

23  flow from the common bond claim issues and the cross-border

24  nature of the issues face a legal and a practical impediment

25  to moving the Nortel insolvency proceedings to the point of

1    the estates being in a position to make meaningful

2    distribution to creditors.

3         They go on in their reply, Exhibit 44, to point

4    out that the common bond claim issues are far from unknown

5    to either the core parties or the creditors of NNI more

6    generally.  The potential availability of post-petition

7    interest has been a live and significant issue since the

8    successful conclusion of the Rockstar transaction 2001, and

9    it's not unreasonable for them to be prepared for argument

10   on the purely legal issue in relatively short order.

11        They also, in response to the argument that why

12   should this be heard in the U.S. rather than only in Canada,

13   said that the Court shouldn't separately hear the question

14   on the interest payable.  Indeed, the amounts at issue are

15   greater than the proceeds from each of the line of business

16   sales approved by both Courts where we know the sales

17   exceeded $1 billion in the line of business for the initial

18   sales.

19        The CCCs make similar arguments, the idea being

20   that we were hoping to settle allocation.  We finished a

21   trial.  We're not settling allocation.  The time to settle

22   is now.  And the UK pension folks start saying that if the

23   bondholders are found to be entitled to post-petition

24   interest at the contract rate, the interest is accruing at

25   the rate of $27 million a month or nearly $1 million a day.

1          You have a line of Canadian interests standing up

2    telling Your Honor this is an important issue, it's a

3    material issue, and we can't figure out allocation.  We

4    can't get the economics until we know where this stands,

5    right?  And now the arguments before Your Honor are wait a

6    minute; how can you settle this contract issue, this legal

7    issue, until you know the economics?  The argument's on its

8    head.  In fact, neither of these -- the economics are the

9    sideshow.  You go back and you look at what we were charged

10   with.  It's a gating issue.  The issues were legal and well

11   known to all the parties and that this is a log jam.

12          And as a result of those arguments and with the

13   U.S. Debtors seeing the potential for more protracted

14   litigation, more appeals up to the 3rd Circuit, years of

15   litigation, Mr. Ray, as the principal officer of the U.S.

16   Debtors, took it on his shoulders to bring this to a

17   conclusion before parties entrenched in legal positions that

18   would make it harder to settle, and in consideration for a

19   settlement that brings a lot of value off of that legal

20   issue into the U.S.

21          The law on settlements is really both settled.

22   The legal standards aren't hard.  We can look at the *Martin*

23   case, the *Coram* case, *Allegheny*, *Capmark*.  You have a pile

24   of cases cited in the briefs, but the principles are pretty

25   fundamental and pretty clear.

1          The settlements are governed by Bankruptcy Rule

2   9019 and the decision whether to approve the settlement is

3   in the sound discretion of the Court, of Your Honor.  The

4   Court should exercise its discretion in light of a general

5   public policy favoring settlements, again, a mantra repeated

6   in every decision whether or not the settlements are

7   approved.

8          It's true that the Debtors do carry the burden of

9   proof on showing that the settlements should be approved,

10  but the case law tells Your Honor that the Court should

11  defer to the Debtors' business judgment or the Debtors'

12  judgment as long as there's a business justification for the

13  proposed action, again, a deferential standard in approving

14  settlements.

15         The Court, under the case law, does not need to

16  have a full evidentiary hearing or a mini-trial on the

17  merits and you're not required to make an actual judgment on

18  the merits of the dispute because that would be the reverse

19  of approving a settlement.  If, in order to approve a

20  settlement, you actually had to try the issue, there never

21  would be a settlement.  Rather, the standard put in the case

22  law is that the Court's role is to canvass the issues,

23  something I learned is spelled two different ways --

24         THE COURT:  Yes.

25         MS. SCHWEITZER:  -- depending on which decision

1 you read it in.  But either way, you're either canvas or

2 canvassing the issues to determine if the settlement falls

3 above the lowest point in the range of reasonableness.

4          Certainly people strive to hit higher than the

5 lowest point of range of reasonableness, but the standard

6 again is that the settlement is within the reasonable range

7 of litigation possibilities.  It's somewhere in the range of

8 the outcomes that could have occurred.

9          Now, the Settlement before the Court is a claims

10 Settlement.  As you remember, the first time it was

11 introduced to Your Honor was an Objection filed by

12 Wilmington Trust to the bondholder claim saying litigate

13 their entitlement to post-petition interest.  There are

14 procedural errors with that, but in the end, it's a claim.

15 It's just a claim post-petition interest rather than a claim

16 for original principal amount or another claim.

17          And it's similar to a lot of the other

18 settlements Your Honor has seen with other claims.  You've

19 approved claims for LTD settlements, for retiree

20 settlements, for settlement of EMEA claims, UK pension

21 claims.  This is just another claim.

22          The Monitor, in opposing the Settlement, has made

23 different arguments that this is a sub rosa plan, but their

24 cases that they're relying on are distinguishable.  Those

25 deal with paying junior creditors rather than senior

1   creditors, transfer control of the Debtor, terms way beyond

2   settling a claim.  The Monitor also makes different

3   arguments that Your Honor can't decide the Settlement

4   without making findings on absolute priority or going

5   through larger Plan analyses.  But if you look at the case

6   law they say, well, you don't do that when it's not a Plan.

7   The Settlement is not a Plan; it's a settlement of a claim.

8           And even the cases such as *Allegheny*, which are

9   settlements baked into the Plan, they go back to the same

10  factors that *Martin* is looking at, the complexity, the risk

11  of litigation, all these same factors they don't have to do

12  full trials because, again, you would never have

13  settlements.  And you start with the law, which says you're

14  supposed to encourage settlements in bankruptcy, you're

15  supposed to encourage resolutions, and you're supposed to

16  defer to the business judgments and the judgments of the

17  estate in the reasonableness of the settlements.

18          To go through them just so we put them out there,

19  four *Martin* factors:  likelihood of success on the merits;

20  difficulty in collection, which we all agree is not really

21  the issue in this case as it is in many cases.  It's just

22  not a predominant factor or a factor at all.  There's

23  complexity, expense, inconvenience and delay of not

24  settling; and the paramount interest of the creditors.  The

25  Monitor would say it's not just the creditors; it's the

1    equity-holders as well, but whether you call creditors,

2    estates, parties in interest, it's certainly not only the

3    interest of the Canadian debtors as equity-holders as the

4    junior-most interest holder in this case.  It's the interest

5    of the estate at large.

6          And while the Debtors are only required to show

7    that the Settlement falls in the lowest point of the range

8    of reasonableness, we think that the evidence put forward to

9    Your Honor shows that this is well beyond that range, that

10   this was a hard-bargained Settlement and that in fact --

11   that there's a substantial claim being settled and the

12   Settlement is well within the range of settlements that

13   could and should be approved.

14         Looking at the *Martin* factors individually, you

15   start obviously with the likelihood of success on the

16   merits.  And the Settlement Agreement does not propose an

17   actual finding of an actual dollar amount of post-petition

18   interest that will be paid.  It starts with a legal dispute.

19   What's the appropriate rate?  And it ends with the

20   Settlement saying the appropriate rate or the cap that will

21   be allowed, whether or not the money is there, the most

22   money is this 800 something million going up to $1.01

23   billion as a cap.

24         You had the testimony of Mr. Katzenstein

25   yesterday with a demonstrative on post-petition interest

1   that shows Your Honor and shows everyone that what the

2   contract rate looks like, that it could go up over time to

3   over $2 billion, and the federal judgment rate is lower.

4   And the settlements were at best 55 percent of the contract

5   rate measured as of today and go down after that.  And if

6   you think of this as a settlement of a legal issue and a

7   likelihood of success of the merits, the settlement measured

8   in those words is basically just better than a coin toss

9   that you're going to win as a bondholder.  If you're betting

10  on, well, if I had a 50/50 chance of winning, I settle at 50

11  percent.  Here I'm settling at 55 percent.  And over time,

12  because of the lower interest rate for the next year and

13  because of the hard cap starting June of next year, that the

14  Settlement only becomes more beneficial as a legal

15  settlement over time.

16          And certainly that, as I said, the Court's

17  obligation is not to make an ultimate finding, a

18  determination to settle the law in Delaware as to whether

19  contract interest is being paid out, but you've heard

20  arguments and you have submissions on the fact that there's

21  a real substantial argument that bondholders are entitled to

22  have their contracts argued -- honored before equity is

23  paid, that there are examples just down the hall just last

24  month of examples where not only contract rate was paid but

25  default interest rates were paid and interest on interest

1    was paid in the *OSG* case.

2           You have the example of *W.R. Grace* where there's

3    a settlement to pay above contract rate with a low default

4    rate and there was a litigation not about federal judgment

5    rate, but about whether default rate was the right rate of

6    interest.  And because that wasn't settled, that went up to

7    the 3rd Circuit and that's what we're trying to avoid here

8    is the likelihood that this is going to keep getting

9    litigated, go up, and in that case, the settlement didn't

10   wind up lower; we were in an FJR world in *W.R. Grace*.  That

11   settled at 70 percent of the difference between the original

12   settlement amount, which was over contract rate, and the

13   ultimate default rate.  So the settlement, only after

14   prolonged, protracted litigated, went higher but never went

15   below contract rate, again, evidence that within the range

16   of reasonable settlements, a settlement of 55 percent of the

17   contract rate that's not an absolute promise to pay but as a

18   cap is well within the range of reasonableness.

19           As I said, turning to the second *Martin* factor,

20   collection difficulty is a neutral factor here.  It's just

21   not at play.  And on the complexity of litigation, which

22   people instead of using a sentence, throw out a series of

23   words: expense, inconvenience, delay and uncertainty, the

24   Monitor has focused some of its arguments and some of its

25   questionings on today we consider the dollars of the cost of

1  the briefing, the cost of the litigating this issue, how

2  much it costs to write a Brief to go to the 3rd Circuit, to

3  go wherever.  I said that's not really material.

4           And there's a couple reactions to that, which is,

5  first, if you were to establish that as a law, as the

6  principle that we need to look at this case, how could we

7  ever settle allocation, a $7.5 billion claim or dispute?

8  The parties will never spend enough briefing time to make it

9  not worth -- or to make it overcome that you're saving money

10  in briefing by settling an allocation dispute.  Here, it's a

11  $1.6 billion dispute.  If you only look at cost, the cost of

12  writing a Brief, that alone would never have a window of

13  settlement that would make it worthwhile.  That's not

14  consistent with the principles of starting settlements and

15  encouraging settlements.

16           What the factor looks at is this idea of

17  prolonged litigation, inconvenience, delay, uncertainty, the

18  same morass that has been hanging over these cases for five

19  years, people telling the Courts over and over again the

20  time to litigate is now.  We need to litigate to bring

21  resolution.

22           And what we've seen again and again, and Mr. Ray

23  testified, is that when you start litigation, it opens up

24  the issues, it allows issues to come to the forefront, but

25  ultimately what brings these cases to conclusion is

1  settlement and settlement on reasonable, hard, negotiated

2  terms.  It doesn't have to be five years sitting in a room,

3  sitting in a bar, sitting exchanging drafts, whatever the

4  example is.  It's not a measure of time; it's saying that,

5  look, we're going to put the issues on the table, everyone's

6  going to have their voices heard, and then the Settlement

7  avoids the costs of leaving these estates open, of the

8  roomful of lawyers that you saw yesterday spending time

9  working on these issues, zealously advocating, but

10 ultimately waiting for this final word from the Courts

11 rather than approving reasonable settlements.  The right

12 course is to approve reasonable settlements.

13          On the factor the paramount interest of

14 creditors, I know you'll hear from Mr. Hodara on -- the

15 voice of the Creditor Committee.  But again, the arguments

16 of the Canadian interest boil down to it's my interest.  I

17 -- you have to take the paramount interest of the Canadian

18 Debtors.  And the Settlement shouldn't be approved because,

19 quite frankly, when you look at their arguments, they're

20 saying you could have extracted more; you could have done

21 better.  You still might have to litigate with other U.S.

22 creditors on post-petition interest issues.  There may be

23 not enough money in the estates at the end of the day that

24 this litigation actually gives an answer that you hit the

25 cap or don't hit the cap.  It's all "you could have done

1  better, you should have fought harder."

2          And it's in the paramount interest of the

3  Canadian Debtors to have the fight continue and there's a

4  couple responses to that again.  I think you heard from

5  Mr. Ray again that he said, look, I'm fully cognizant of

6  everyone's positions.  I accounted for everyone's positions.

7  And the fact that I couldn't necessarily settle all the

8  post-petition interest claims -- and they do ask whether

9  it's an NNC bondholder claims or other unsecured creditor

10  claims -- it's still better to settle one issue now than to

11  accept failure, to accept that you have to litigate

12  everything because everything's interconnected and you have

13  to go to the end of the world to litigate everything rather

14  than make incremental progress through settlements where you

15  can extract and negotiate honest and true settlements.

16          And the fact, quite frankly, that the Settlement

17  shouldn't be the argument, that the Settlement shouldn't be

18  approved because it's not resolving the issue for all U.S.

19  creditors, again, let's go back where we started from.

20  Where we started from in June was Canadian interests coming

21  to Your Honor saying this is a bondholder issue.  This is a

22  bondholder issue that I want resolved for the bondholders

23  because it affects my ability to settle allocation.  Only

24  after the briefing was in -- you saw a reference in

25  Wilmington Trust Brief, but you hear now it's effectively

1   what's in everyone's head, gee, I actually want this issue

2   resolved against all the U.S. creditors, against the

3   employees, against the PBGC, against people whose rights

4   haven't even been briefed, haven't even been heard, haven't

5   even been encouraged to come to court on those issues.  And

6   they're saying so the Settlement is bad because it doesn't

7   give me a judgment that I can use to knock out other people,

8   to knock out other claims in the U.S.  That puts on the head

9   of where we started from, which was the premise of settling

10  a bondholder issue and a bondholder entitlement claim, which

11  is what we've done.

12          And, quite frankly, if you look at it in those

13  eyes, the Settlement is actually beneficial because it

14  leaves those issues for another day when those individuals'

15  contracts can be considered.  Their other arguments that

16  they may or may not have to post-petition interest can be

17  considered and it separates them while resolving material

18  claim.

19          The Canadian interest also spent time and money,

20  significant time and money at this point, to try to prove

21  the economics of this Settlement, but they're wrong that

22  that's the right standard for the Court.  We're not coming

23  here arguing economics.  We're coming here arguing that this

24  is about the settlement of the open legal issue that the

25  bondholders have got a substantial legal claim to contract

1    interest.

2              THE COURT:  But it certainly has an economic

3    impact.

4              MS. SCHWEITZER:  It has an economic impact which

5    is beneficial because it says even if you're right on the

6    law, bondholders, even if you could have put in a $1.6

7    billion claim, you're going to stop; you're going to allow

8    the money to flow up to the equity.  As Mr. Ray said, the

9    economic impact is this:  If the money is not there, the

10   situation solves itself.  If the money is not there, you

11   don't need a settlement, you don't need a cap because the

12   money's not there.  And so the economic benefit of the

13   Settlement is that the money starts flowing up, that you

14   have cut it off at some point.  And if the toggles and

15   variables all fall in the direction of putting money into

16   the U.S. estates, then there is a cap, which has now created

17   a window for the Canadian interest to recover.

18              And to say that there will be an absolute

19   certainty for allocation purposes, you know the hard cap of

20   the money that will remain in the U.S. to pay bondholders.

21   And so that argument is now neutralized and the economic

22   benefit is if the money is there, it's capped, and if the

23   money's not there, then it's saving this time, cost, and

24   litigation distraction on fighting over an issue that's not

25   real.

1          THE COURT:  And I assume that's why the Debtors

2  are taking the position that Dr. Wertheim's testimony is

3  essentially not relevant?

4          MS. SCHWEITZER:  Yes.  And in fact Mr. LeBlanc --

5          THE COURT:  Okay.

6          MS. SCHWEITZER:  -- I've given him the pleasure

7  of dealing with Mr. Wertheim's arguments, we certainly --

8  he'll go through why the idea of Mr. Wertheim coming up with

9  a magic number of the top dollar is fallacious and he can

10 explain to you why.  But certainly Mr. Ray testified in the

11 same way.  I could have hired experts, I could have had

12 people run models, but there are variables.  There's all

13 sorts of outcomes here and we have to solve for one variable

14 before we can solve for the others.

15          This isn't a trial about allocation.  This isn't

16 a trial, as Mr. Pultman agreed, it's not a trial about all

17 the other claims and all the different estates.  This is a

18 trial and this is a settlement about post-petition interest

19 and a contract entitlement to post-petition interest, a

20 legal issue, as everyone told you, and a settlement that

21 brings that legal issue down and provides economic benefits

22 to the estates by stopping the litigation, and to the

23 Canadian Debtors, by potentially allowing money, if the

24 numbers get that high, to flow up.  And you can't rule out

25 that possibility that the money will flow up.

1          And again, let's go back to where we started.  If

2   the Canadian interest came to this Court to prove the money

3   will never get that high, in the best case, if everything

4   went our way, $900 plus million will come to the U.S.

5   Mr. Wertheim is trying to say, well, you can't.  This is

6   almost like Vegas.  If you pull out all the right cards,

7   maybe you'll get that high with the implicit argument that

8   we don't ever expect to get anywhere near as high.

9          And what he wanted to introduce, inappropriately

10  in light of the prior report, but he wanted to start opening

11  it up to let's go through the other theories.  Let's show

12  how we may not even get to $100 million.  Well, that's some

13  really crazy argument for the Canadian interest to make

14  because if there are no post-petition interests, what are we

15  fighting over?  When everyone came to the Court in June and

16  said it's a $1.6 billion issue, it's a gating issue.  It has

17  to be decided now.  What were they fighting over?

18          When you, Your Honor, just last month or the

19  month before in closing arguments, were shown Mr. Britvin's

20  demonstrative where people are saying $1.3 billion, post-

21  petition interest Justice Newbould asked?  Yes.  That would

22  be post-petition interest money?  Yes, it would, $1.3

23  billion.  What were people fighting over a month ago that

24  suddenly everything is turned on its head that the economics

25  now in a different situation are being argued that there's

1   not anywhere close to this money.  The Settlement is

2   vaporous because we're not really fighting over real

3   dollars.  It will never get that high.

4              This is why you can't decide the Settlement based

5   on some magic economic analysis, on this battle of the

6   experts.  You go back to where we were, the purpose of the

7   Settlement was to protect the upside.  You've heard that

8   it's a hard-fought battle there and the paramount interests

9   of the creditor is to put pins into the wall, to start

10  narrowing issues so that we can get to the end of this case

11  and we can bring forward other settlements.  Mr. Ray made

12  that very clear that was his goal and that continues to be

13  his goal, to resolve issues, bring the case to its

14  conclusion, and get money out to creditors for everyone's

15  best interest.  And the surest way to make sure that doesn't

16  happen is to just keep litigating, to keep spending money

17  fighting.  Then we'll all be assured there'll never be a

18  single dollar distributed to anyone.  That would be crazy.

19  That's not what we're here to do.  That's not what it's our

20  duty to do.

21              The Monitor in Canadian interest have also called

22  into question whether the Settlement was negotiated in good

23  faith.  It was too quick.  You guys made too many

24  concessions in the room one day.  You settled this in 10

25  days.  Blowup calendars of every meeting, every document, I

1  want to see every last email.  How long has Mr. Dunn known

2  Mr. Ray?  I mean quite frankly that's a little offensive.

3  We're all professionals.  We're all experienced

4  professionals.  We're all here to do our job.

5          But in fact there's no real question from the

6  evidence that you heard that there were several rounds of

7  negotiations, that there were drafts exchanged, there were

8  economic concessions exchanged.  You heard Mr. Ray saying

9  some of these things we demanded people were very unhappy

10  about.  Some of the things that the bondholders demanded

11  weren't his choice of where he would want to push it down

12  to, but that's what a settlement is.  Everyone's a little

13  unhappy so you've gotten to the middle.  That's what the

14  concessions are and that's what you're supposed to do.

15          In *Coram Healthcare*, there was a similar

16  Objection where someone said, look, the Equity Committee, I

17  believe, equity was complaining there that there was a note-

18  holder's settlement.  They said how can you settle without

19  filing a complaint?  That just shows you don't really try

20  hard enough, you don't really fight hard enough.  And it's

21  fundamentally unfair if you haven't even really sued them.

22  And Judge Walrath rejected that argument saying rather than

23  sue first and settle later, the Trustee sought to reach a

24  compromise with all the parties having their positions made

25  clear and before the parties' positions hardened as a result

1   of legal action.  That's what we're avoiding, further

2   entrenchment, further hardening of positions, another W.R.

3   Grace where the enemy of the good winds up being the perfect

4   and you settle at a higher rate years later having spent

5   more money with more delay.

6           We know our positions.  The Canadian Debtors told

7   you in June everyone knows everyone's positions.  Everyone

8   has thought long and hard about this.  You heard

9   Mr. Katzenstein say he wished he had collected a dollar

10  every time these issues were discussed over the last five

11  years.

12          We get to the last point of standing.  Your Honor

13  is well familiar; the U.S. Debtors are very concerned that

14  this is -- the case is being made more complex, more costly

15  by the line of people coming in to advocate for the Canadian

16  interest positions.  There is law on this.  There's Article

17  III standing.  We'll purport to the Court you don't have to

18  decide this today because, quite frankly, when you look at

19  the Objections, the CCC just said, me too.

20          THE COURT:  Um-hum.

21          MS. SCHWEITZER:  The UK Pension said, me too, if

22  I agree, but the things I don't agree, not me too.  So I'm

23  not actually quite sure which positions the UK Pension

24  parties support, but they certainly don't make arguments

25  that are different or additional or unique and they don't

1    even have an allowed claim in Canada.  So the creditor of a

2    creditor, there's a lot of "ish" to that as well.

3         The Wilmington Trust put in a substantive Brief,

4    but it really raises the same arguments as the Canadian

5    Debtors, and quite frankly, they don't express that they

6    have a different interest in kind than the Canadian Debtors

7    in bringing money to Canada or in the legal issues being

8    resolved.

9         What we are concerned about, obviously, is going

10   forward that the idea being that various Canadian interests

11   in one-off patterns are coming into this Court and coming

12   into the Debtors' cases trying to set agendas, trying to

13   affect the way these cases are being administered, trying to

14   tee up issues that they view are beneficial to them,

15   litigate this issue so I can win and extract benefits,

16   litigate this issue this way, this order, don't settle

17   because I have my agenda as a Canadian creditor and I want

18   to put pressure on what they would call U.S. creditors, the

19   bondholders, but in fact are also Canadian creditors.  The

20   bondholders are Canadian creditors guaranteed by the U.S.

21        This is a U.S. Debtor case.  The Monitor -- the

22   Canadian Debtors with standing, they have a second advocate

23   in the form of the Monitor.

24        THE COURT:  Yes.

25        MS. SCHWEITZER:  We have plenty of representation

1  here and we don't need the bogging down of additional costs.

2  Quite frankly, we're also a little bit concerned that the

3  arguments -- not everyone shows up for every argument,

4  right?  You have the CCCs putting in expert in allocations

5  saying money is big, allocation can lead to billions of

6  dollars of post-petition interest in the U.S. estates, then

7  the very next month you have an expert report submitted by

8  the Canadian Debtors who would be theoretically aligned

9  saying the money will never get that high.  All the world

10  could tumble in your favor and you'll never get close to

11  that.  This is outrageous settling at those types of

12  numbers.

13          You have people cutting back the UK pension and

14  the CCCs are still arguing this should all be pro rata.  No

15  one should be getting any post-petition interest because it

16  would all be one big pot, and allowing different people to

17  come forward at different times turns into a little whack-a-

18  mole or you question what the good faith is on that side of

19  having the ability to use different creditors to advance

20  alternative arguments, which just adds to the burdens of

21  U.S. Debtors.

22          So posit that, while we reserve our rights for

23  standing in all future cases, here you have late Objections,

24  you don't have substantive Objections, and that's really our

25  concern is looking at that strategy as against what the

1    burdens are on the U.S. Debtors to administer our case and

2    to protect the interest of all of our creditors and all

3    parties and interests.

4         There's the Settlement Motion.  I'll end where I

5    began.  There's a lot of complicated issues in this case.

6    The law is clear here.  The law is deferential to the

7    Debtors.  We've clearly satisfied the *Martin* factors.

8    You've heard a lot of testimony about hard bargaining,

9    substantial concessions, and going back to where we started,

10   that this is a gating issue and settling this issue will

11   advance the Debtors' cases and will hopefully be the start

12   of more settlements to come.  And those were the reasons the

13   Debtors pursued settlements and that's the value that we

14   believe is brought to the table by approving this

15   Settlement.

16        And with that, I'll turn the podium over to

17   Mr. LeBlanc.

18        THE COURT:  Thank you, Ms. Schweitzer.

19        Mr. LeBlanc.

20        MR. LEBLANC:  Good morning, Your Honor.  Andrew

21   LeBlanc at Milbank, Tweed on behalf of the --

22        THE COURT:  Good morning.

23        MR. LEBLANC:  -- supporting bondholders.

24        Your Honor, what I'm going to try to do is just

25   touch upon really two areas but more importantly answer any

1    questions the Court may continue to have.

2            The two topics I want to address first are

3    judicial estoppel, something we raised in our papers --

4            THE COURT:  Yes.

5            MR. LEBLANC:  -- and briefed in our papers; and

6    then secondly, as Ms. Schweitzer alluded to, I'm going to

7    talk about Dr. Wertheim and his work here.

8            But let me begin, Your Honor, with judicial

9    estoppel because I think we sort of come back to a point

10   that we actually talked about a fair amount in the

11   allocation trial.  There is a clear and unequivocal doctrine

12   about judicial estoppel.  Parties can't take positions in

13   litigation, then reverse themselves when it becomes

14   expedient to do so.

15           The seminal case on this involves New Hampshire

16   and Maine, my home state, where New Hampshire tried to, 30

17   years after winning the argument or at least making the

18   argument about where the borders should be, tried to change

19   its mind --

20           THE COURT:  Yes.

21           MR. LEBLANC:  -- about where the borders should

22   be so they could take back the Portsmouth Naval shipyard.

23   The Supreme Court, in 2000, said you can't do that.  If you

24   bring a litigation position and you prevail, you, New

25   Hampshire, can't then turn around 30 years later because

1   it's expedient for you to do so because the Naval shipyard

2   is now in private hands and you'd like to get the tax

3   dollars, change your position.

4           And we dealt with that issue in the allocation

5   trial because the Monitor came before this Court in

6   connection with the sale of the residual IP and told the

7   Court it was in the best interest of the U.S. estate for

8   this sale to go forward.  And then the Monitor turned around

9   years later and said, well, now that we're trying to

10  allocate the proceeds from that, it's no longer in the best

11  interest of the U.S. estates.  They get zero from that.

12  That is the sort of duplicitous argument that the Court

13  shouldn't have to tolerate.

14          But when you turn to this particular issue, the

15  issue about the 9019 settlement and the PPI dispute, the

16  number of inconsistent and irreconcilable arguments just

17  rises immeasurably.  And let me just go through a handful of

18  them as they relate to just this issue.

19          THE COURT:  Yes.

20          MR. LEBLANC:  First of all, Your Honor, and we've

21  talked about this when we talked about it on August 8th on

22  the status conference.  This is a $1.6 billion issue growing

23  by $1 million a day.  That argument was made to you to

24  convince you to hear an argument and to hear it quickly.  We

25  were opposed to that.  We said it doesn't need to be decided

1  this way; it shouldn't be decided this way.  And we lost

2  because you were presented with an argument at least in part

3  because you were presented with an argument that this is a

4  $1.6 billion issue growing by $1 million a day.

5          Today, they actually retained an expert, paid him

6  more than $100,000 to come in and tell you that it at best

7  is a $971 million issue, shrinking with every dollar that's

8  spent.  You cannot reconcile those two arguments.  You

9  simply can't.  They -- in the words of the cases that deal

10  with this, they were playing fast and loose with the Court.

11  They told you one thing one day to convince you to rule in

12  one way and then when the circumstances changed, they turned

13  in exactly the opposite direction.

14          Second, they argued to convince you to decide

15  that this was an issue that could be decided now.  Now when

16  it's settled they say 1129 forbids it from being settled

17  now, irreconcilable positions.

18          Your Honor, I expect Mr. Pultman is going to tell

19  you that the negotiations to resolve this were too short.

20  He may also say they occurred in the wrong place if

21  Mr. Bromley and I met in the hotel we were both staying at

22  during the allocation trial and we didn't meet in one of our

23  rooms; we met instead in the bar, and they occurred too late

24  because we met at 11 o'clock when we were all in the middle

25  of the allocation trial.

1              They'll tell you those things, but Your Honor,

2    you'll recall when they first presented this, the Monitor,

3    through its Canadian counsel, suggested that we brief it and

4    it be decided in a week, one week.  If you recall, Your

5    Honor, we had a couple days at the end of the allocation

6    trial that we expected to be free, so on the 16th of June

7    the Monitor suggested that it be heard on the 24th of June

8    or the 25th of June, some days that we had freed up.

9              So their argument is that this was sufficiently

10   clear and the parties' positions were well enough known that

11   we could litigate it, a $1.6 billion issue, over the course

12   of a week, but that it can't be settled over the course of

13   either five weeks based upon the first meeting that you

14   heard testimony about between Mr. Bromley and myself, or

15   even over the course of a two-week period, that it was too

16   complex to settle over that period of time.  I don't know

17   how you can make both of those arguments.

18             Third -- or third or fourth; I'm losing track of

19   the numbers -- they argue today that Section 9019 doesn't

20   apply.  And Your Honor may recall --

21             THE COURT:  Um-hum.

22             MR. LEBLANC:  -- on the 24th of July when we

23   announced this settlement and we were having a discussion

24   with Your Honor, I pointed the Court to footnote 15 of their

25   Brief, which is at Exhibit 61, in which they say that if

1    there is a settlement, then the *Martin* factors will apply.

2    Here's the statement:  "Even in the context of a 9019

3    settlement, the Court would need to apply the 3rd Circuit's

4    *Martin* factors."  Now they tell you 9019 doesn't apply to

5    this.

6            And, Your Honor -- and I won't dwell on this one

7    because Ms. Schweitzer just talked about it -- the Canadian

8    interest through the form of the CCC presented an expert who

9    just a few -- just literally weeks ago they used the same

10   Britvin chart to show $1.3 billion.  And I'm going to talk

11   about that a little bit when I talk about Dr. Wertheim, but

12   to show $1.3 billion in excess cash available to pay post-

13   petition interest.

14           They now retain a different expert, now

15   admittedly a different party, but also supporting the same

16   positions, supporting the same side, to opine that at most,

17   at the very best it's $971 million.  Those positions are

18   irreconcilable.  And it's important, as Mr. Bromley elicited

19   from the witness yesterday, if he had used a number of $1.3

20   billion, the only reason he said the Settlement was of no

21   value was because it was less than $1.01 billion, his

22   maximum.  If he'd simply said, well, we've already had

23   testimony from a witness on this point, look at

24   Mr. Britvin's analysis, $1.3 billion, then they don't have

25   the argument that they're trying to make here.

1           The doctrine of judicial estoppel, it's an

2    important one.  This has to be the last time that the

3    Monitor tries to do this, that the Monitor changes its

4    positions when it decides that something would be better for

5    it to argue.  This occurred over the course of just a few

6    weeks from one position to the next.  Earlier, it was over

7    the course of several years.

8           But Your Honor -- so I think the doctrine of

9    judicial estoppel is made for a case like this and Your

10   Honor could and should reject the arguments for those

11   reasons.  But I will also say the arguments have no merit so

12   Your Honor shouldn't stop there, but instead should go on to

13   conclude that even if you considered the arguments that they

14   should be estopped from making, they have no merit.

15          Now, let me turn to the other topic I wanted to

16   address and that's Dr. Wertheim.

17          THE COURT:  Please.

18          MR. LEBLANC:  And, Your Honor, I -- overnight we

19   created a quick little demonstrative.  May I approach, Your

20   Honor?

21          THE COURT:  Please.  Thank you, Mr. LeBlanc.

22   Thank you, sir.  Great.

23          MR. LEBLANC:  We entitled it "The Weeds," Your

24   Honor.

25          THE COURT:  I like that.

1          MR. LEBLANC:  I wasn't sure which of the words to

2     pick, you know, these small little issues, the little

3     things, you know, it -- anything you want to call it.  These

4     are the things that Dr. Wertheim didn't consider.

5          Let me just -- before I turn, though, to that

6     directly, let me just talk more generally about Dr.

7     Wertheim.  The first is, Your Honor -- and Ms. Schweitzer

8     alluded to this -- there is no relevance to his opinion.

9     The dispute that was settled was a dispute over what amount

10    of interest would be payable to the bonds if those dollars

11    were available.  Dr. Wertheim addresses a different

12    question.  He says what dollars would be available?

13         If the hearing had gone forward on the 25th of

14    July instead of being settled on the 24th of July, Your

15    Honor would have decided, well, it's either federal judgment

16    rate or it's contract rate.  Your Honor was not even

17    presented with evidence by any side that -- as to what

18    dollars would be available to pay post-petition interest.

19    That wasn't the dispute that was before the Court.  So

20    Dr. Wertheim's analysis just addresses an issue that isn't

21    even before the Court.  What was settled -- if Your Honor

22    had issued his decision, it would have said the contract

23    rate applies.  We believe that's what Your Honor would have

24    concluded, and Dr. Wertheim doesn't address that.  So for

25    that reason out of the gates it's not relevant.

1          And for the reasons I will talk about in a moment

2   the evidence, we believe, is overwhelming, that the task

3   that he sought to undertake to try to determine what amount

4   of PPI or what amount of dollars would be available for

5   post-petition interest, it's simply impossible to conduct

6   that analysis at this point.  But thirdly, even if that

7   analysis could be conducted, what he has done has failed

8   miserably to try to conduct that analysis.

9          So I would start, Your Honor, by just saying

10  Dr. Wertheim was an incredible witness, and I mean that in

11  every sense of the word incredible, meaning not credible and

12  just incredible to sit here and listen to somebody testify

13  as a retained expert, but at the same time show absolutely

14  no knowledge about the basic facts of this case, to ignore

15  evidence that should have been given to him.

16          And I don't -- I can't fault Dr. Wertheim

17  entirely for that, although I certainly do.  I can't fault

18  him entirely for that because it was the Monitor's decision

19  to present this evidence through a retained expert rather

20  than to have the Monitor come before the Court and say these

21  are the assets and these are the liabilities that we expect

22  will come out of the Canadian estate and then these are the

23  assumptions because we don't have it or we -- they conduct

24  the deposition of John Ray.  We can use Mr. Ray's testimony

25  to estimate from NNI and then present that to the Court.

1          The expertise here is something my seven-year-old

2   could do.  It's math.  It's on a calculator.  That's the

3   expertise.  But instead what they chose to do is to put

4   somebody who they retained to come and give evidence that he

5   -- where he could fairly say if I put my head in the sand

6   and don't know anything about these things, I can simply

7   ignore them.  That doesn't satisfy Rule 702.

8          And, Your Honor, we reserved on the question of

9   Rule 702, and Mr. Pultman, yesterday in his redirect asked

10  the question of Dr. Wertheim and when -- in the instance of

11  the *Wolf* case, which I'll talk about in a moment, where you

12  were excluded as a witness wasn't based on your

13  qualifications.  Well, we don't question his qualifications

14  in the sense of the preamble to Rule 702.  702 requires

15  somebody to be qualified by skill or experience.  We don't

16  question that.  But 702 goes on and it has additional

17  requirements for an expert to be admitted to offer opinion

18  testimony to a Court.

19          A through D he fails on each of them.  He needs

20  to be -- his knowledge needs to help the trier of fact and

21  be relevant to an issue.  That's not the case here.  His

22  evidence needs to be based on sufficient facts or data.

23  That's plainly not the case here at the Monitor's choosing.

24  His evidence needs to be the product of reliable principles

25  and methods, plainly not the case here.  And his evidence

1   has -- the expert has reliably applied the principles and

2   methods to the facts of this case.

3            And you'll recall, Your Honor, because I think

4   Your Honor elicited the best testimony on this, the method

5   he purports to use is to find a best-case scenario for NNI

6   and presumably then for PPI, but he does nothing of the

7   sort.  He doesn't apply the facts reliably to the approach

8   that he intends to take.  And I'll talk about "The Weeds" in

9   a moment.

10           Your Honor -- and let me just touch on the *Wolf*

11  case and give Your Honor the cites for that because I think

12  it's important.  The *Wolf* case is -- we attached those as

13  Exhibits 158 and 159 and what we've attached, Your Honor,

14  are actually Briefs that refer to the District Court's

15  exclusion of Dr. Wertheim in that case.  It was a 2006 case

16  and the U.S. Government sought to exclude him from

17  testifying on behalf of a criminal defendant.  And in the

18  government's initial papers -- actually, the government's

19  papers on appeal to the 9th Circuit -- when the case was

20  brought up on the 9th Circuit --

21           THE COURT:  Um-hum.

22           MR. LEBLANC:  -- this issue came up, the

23  government argues, "The substance of the proposed testimony

24  changed from report to report."  They then go on with a

25  header that says, "The Changing Wertheim Submissions."  Your

1  Honor, that may sound familiar because there were instances

2  -- numerous instances yesterday where Dr. Wertheim had to

3  say, well, I thought it was my role to continue to do

4  analysis after, and yes, I didn't know about this, and in

5  many instances trying to suggest to the Court and to us that

6  these were things he had thought about before his

7  deposition.  But only when confronted with his deposition

8  did he admit, well, no, those are things that I looked at

9  afterwards.  I thought that was the role of an expert.

10             But ultimately, the Court in -- the Court, as

11  reported by the government in their Brief, the Court in the

12  *Wolf* case excluded his testimony giving a reasoned and

13  thoughtful opinion as to why his testimony was excluded.

14  The Court found the expert testimony was not relevant to any

15  of the factual issues that were going to be before the jury

16  and was likely to confuse the jury.  We don't question his

17  qualifications.  We do, however, question every bit of his

18  analysis.

19             Now, I handed up the demonstrative just as a

20  quick sort of cheat sheet of "The Weeds."  These are, in our

21  view, a list of, but not even an exhaustive list, of the

22  things that Dr. Wertheim simply failed to consider.  And I

23  would have said that with more confidence before yesterday's

24  cross examination having taken his deposition.  I don't know

25  if he failed to consider them or if he conducted a reasoned

1  analysis in his brain and then wrote that he assigned a

2  value of zero to these things.  But in every instance on

3  each of these items on this chart that we've handed up, Your

4  Honor -- I'll go through them -- every one of them are

5  issues that are the worst-case analysis or the worst-case

6  assumption for NNI.  And these issues, what he describes as

7  "the weeds," are huge dollar amounts.

8            Now, what's important, Your Honor, is we're not

9  saying to you that we're proving that there will be more

10 than $1.6 billion available, although certainly some of the

11 numbers would seem to suggest that.  What we're saying, Your

12 Honor, is his analysis is flawed.  The task can't be done.

13 And Your Honor should exclude the testimony or even -- or,

14 at a minimum, give it absolutely no weight in your

15 consideration.

16           So just to quickly take through -- and the reason

17 -- we put NNL on the left side and NNI on the right side of

18 the chart --

19           THE COURT:  Yes.

20           MR. LEBLANC:  -- because Your Honor will recall

21 the sensitivity analysis is any claim reduction or asset

22 improvement at NNI is 100 percent sensitive, so one dollar

23 of claim reduction is one more dollar available for the

24 purpose of paying post-petition interest.

25           On the NNL side the sensitivity analysis is 65.3

1  percent sensitive to additional assets and 7.4 percent

2  sensitive to reductions in claims.  All right.  So --

3          THE COURT:  And that's because of the NNI claim

4  against NNL largely.

5          MR. LEBLANC:  It's because -- for two reasons,

6  Your Honor.  There's a dual effect.  The bonds have --

7          THE COURT:  Yes.

8          MR. LEBLANC:  -- we have our own claim against

9  it, and the way that he did his analysis the larger the bond

10  claim that is paid in Canada, the smaller bond claim that is

11  asserted against NNI.  And then in addition to that the U.S.

12  has its own $2.062 billion intercompany claim.  And so the

13  way that I think of the math, Your Honor, is the additional

14  $100 of assets go in, the U.S. estates in his analysis are

15  60 -- the U.S. estates and the bonds collectively are 65

16  percent of the Canadian claims pool.  And the claims

17  reduction, that's -- the math is a little bit hard to

18  explain than in a simple sentence like that but it's smaller

19  because it's an anti-dilution.  So the smaller claims, they

20  become a larger percentage of the claims pool than 65.3

21  percent.  That's why the sensitivity to a claims reduction

22  is smaller.

23          All right.  So just ticking through these issues,

24  Your Honor heard about all of them and I will point you to

25  some documents.

1              THE COURT:  Yes.

2              MR. LEBLANC:  I think you've heard about most of

3   them and I'll point you to some documents and some numbers.

4   The sale of the IP addresses, that was just utterly

5   remarkable to me to listen to the witness say yesterday that

6   he understood there hadn't been sales for 2-1/2 years when I

7   showed him -- I used in his deposition, he could have read

8   his deposition transcript to see that there -- the Monitor

9   got approval for one two months ago.  I just don't know --

10  it can't be anything but the Monitor being consciously --

11  trying to consciously avoid educating their expert on a

12  topic that they clearly know about.

13             There was a request to approve a sale two months

14  ago that was executed in July of this year.  I can't

15  understand that testimony at all but --

16             THE COURT:  Seventeen million of them.

17             MR. LEBLANC:  There's 17 million of them and the

18  U.S. estates, Your Honor knows because you approved it, sold

19  for 11.25 --

20             THE COURT:  Yeah.

21             MR. LEBLANC:  -- that's 190 million.  And it's

22  important.  I -- we put that in bold for the NNI and the NNL

23  column --

24             THE COURT:  Yes.

25             MR. LEBLANC:  -- because Your Honor will recall

1    the 107th Monitor report, which is Exhibit 176, the U.S.

2    estates have claimed an interest in the IP addresses and the

3    -- if you read that 107th Monitor report at paragraph 31,

4    Your Honor would note that it's been agreed already that

5    there will be a joint hearing between Your Honor and Justice

6    Newbould to determine who benefits from those IP address

7    sale proceeds.

8            So if it comes to the benefit of NNI, if that 190

9    million, if that were the right number, comes to the benefit

10   of NNI, then it benefits 100 percent sensitive to the PPI

11   number.  That's added 190 million.  If it goes to the

12   benefit of NNL, 100 percent, then it's 65 percent of that

13   and the number -- the math would be around $120 million,

14   125, or some combination thereof if it's split.

15           Cash repatriation from APAC, China and CALA, Your

16   Honor, this, too, fits in both columns because there are

17   intercompany claims and there are equity values, there are

18   dividends that could flow up, but Your Honor heard testimony

19   yesterday that there's $158 million in those entities in

20   cash accounts.  The expert has no ability and had no ability

21   at the time of his writing of his report to talk about

22   whether any of that money will come up -- will flow back up.

23           And I think, Your Honor, one thing to look at, I

24   find in this instance the 108th Monitor's report, which is

25   Exhibit 177, a read of that document is fascinating because

1  of all of the things that it elicits that the expert simply

2  ignored because one of the first things that you note from

3  the 108th Monitor's report is that the Monitor realized the

4  $13.1 million repatriation from India over the course of the

5  last reporting period, so in the last six months it got $13

6  million in from India.  It had forecast it would get zero,

7  so that was an additional 13.1.

8           The D & O Trust, Your Honor, heard about that,

9  $35 million sitting there, against which no claims have been

10  asserted and which would redound to the benefit of NNI and

11  NNL.  That's why it's in both columns.

12           THE COURT:  Right.

13           MR. LEBLANC:  On the claim side, again,

14  importantly these are 100 percent benefit if there are

15  claims reductions at NNI.  The amount of the PBGC claim --

16  and let me just make one additional point to what you heard

17  yesterday -- the Debtors estimated that in their 60th MOR at

18  $437.6 million.  But you don't even have to go to that.

19  Mr. Britvin, in his analysis, used 400 million for the PBGC

20  claim.  If you use just that assumption, that's an

21  additional 193 million below what Dr. Wertheim used.  You

22  can find that, Your Honor, at Mr. Britvan's report at

23  Schedule 6.

24           The tax claim, that was truly remarkable.  I took

25  a third of the number that was stated in opening statements,

1   no evidence whatsoever to support that.  And I'll remind the

2   Court that Dr. Britvin, in his report, uses zero for that.

3   If you simply did that, 133 million.  The U.S. General

4   Unsecured Creditor pool, you assume zero reduction in the

5   claims from the 60th MOR for those, any dollar reduction, an

6   additional dollar.  On the right-hand column you have the

7   sale of the IP addresses, the cash repatriation, and the D &

8   O Trust.

9         The dividends from Ireland and France, Your

10  Honor, we talked about the order of magnitude yesterday.  If

11  you use Kinrich's analysis, there's over $500 million

12  allocated to them.  He assumes zero dollars come out of that

13  and he offered for the first time yesterday his testimony --

14  his new testimony that, well, there is the FSD, which he

15  doesn't know what that is, a financial support directive.

16  Maybe he could be educated after his testimony.  But he

17  didn't know about that at his deposition but just assumed

18  that there would be no money flowing up.  He didn't even

19  know that they were equity -- that the equity was owned by

20  NNL.

21         Down in the bottom box, Your Honor, he uses as

22  his -- as the only numbers he uses; he does a sanity check

23  using a different number in the 108th Monitor's report but

24  he only uses the 10-Q, which numbers are consolidated for

25  NNC.  He just assumes that NNL is liable for all of NNC's

1   liabilities.  He assumes -- on the claims resolution, he

2   assumes that all of the claims that are under review will be

3   allowed by the Monitor.

4          And if Your Honor looks again at the 108th

5   Monitor's report, it reports that the Monitor has allowed

6   claims at a rate of less than 4 percent.  And what I mean by

7   that is he's allowed about $300 million of claims or

8   accepted $300 million of claims that at a stated value, face

9   value of $12.2 billion.  So he assumes that going forward

10  the Monitor's work will yield no additional reductions.

11         In the same Monitor's report, so paragraphs 50 to

12  64, the 108th Monitor report, the Monitor reports of claims

13  or payments that have been made from the Health and Welfare

14  Trust to certain creditors -- Mr. Bromley talked about this

15  in closing argument in the allocation trial -- he makes no

16  account for those payments that have already been made.

17         And then lastly, the PPI appeal that we have in

18  Canada, if post-petition interest is added to our claim in

19  Canada, I don't care what he said yesterday; it doesn't take

20  an expert, a Ph.D. in accounting, to know that that would be

21  a good thing for NNI, a good thing for this analysis because

22  we have a much larger claim in Canada relative to everybody

23  else.  Instead of getting 65.3 percent of that pool, we'd

24  have a much larger claim if instead we had an additional $2

25  billion in a year to assert against that common -- against

1  the Canadian pool.

2           These are all things that he simply just doesn't

3  think about, Your Honor, didn't consider.  So, Your Honor,

4  we think his expert report should be given absolutely no

5  weight.  It is not reliable, it is not appropriate, and it's

6  not relevant.

7           For all the reasons Ms. Schweitzer stated, Your

8  Honor, and for those that I've argued, we ask the Court to

9  approve this Settlement, this hard-fought, reasonable

10  settlement of an issue that was hoisted upon us and the

11  Court at the Monitor's urging.  We didn't bring this fight,

12  but when there was an opportunity to settle it, we did so,

13  and we'd ask the Court to approve it under the standards

14  applicable to 9019 settlements.

15           Unless the Court has any questions, I thank you

16  very much for your time.

17           THE COURT:  Thank you, Mr. LeBlanc.  Thank you,

18  sir.

19           Mr. Hodara, good morning.

20           MR. HODARA:  Good morning, Your Honor.  Thank

21  you.  Fred Hodara, Akin Gump Strauss Hauer & Feld, for the

22  Official Committee of Unsecured Creditors.

23           And, Your Honor, in that capacity I'm going to

24  limit my comments to two specific issues, the first being

25  the question raised by the fourth of the *Martin* factors, the

1  paramount interest of creditors, the creditors for whom this

2  Official Committee stands.

3          Your Honor, that's an important phrase, "the

4  paramount interest of the creditors."  It may not have the

5  poetry of "life, liberty, and the pursuit of happiness," but

6  together with the other important statement with respect to

7  settlements set out in *TMT Trailer Ferry* --

8          THE COURT:  Yes.

9          MR. HODARA:  -- whether the Settlement recognizes

10  a situation that falls above the lowest rung on the range of

11  reasonableness, these are two very important, very potent

12  sets of words about what it is that we are all doing when we

13  consider a settlement that's brought before the Court.  And

14  that is in fact exactly what the Creditors Committee has

15  done in looking at this Settlement and it's something that

16  the Creditors Committee has thought long and hard about in

17  connection with the question of post-petition interest even

18  before the Settlement was brought before it.

19          Let me digress for one moment and talk about the

20  Creditors Committee because the Monitor for some reason saw

21  fit to take a shot at the Committee in its papers impugning

22  the integrity of the Committee and the ability of the

23  Committee to view this question in a dispassionate and

24  focused way that a Creditors Committee always looks at

25  important questions.  What the Monitor said is, hmm, this is

1  Committee that's comprised of three members, two of whom are

2  representatives of bondholders.

3           Well, let's talk about exactly whose these

4  Creditors Committee members are.  We have the Pension

5  Benefit Guarantee Corporation, a quasi-governmental entity

6  who is not a bondholder.  We have two indenture trustees

7  who, by their nature, their role in the world, is to be

8  fiduciaries.  Nobody knows their fiduciary duty better than

9  an indenture trustee and particularly in bankruptcy cases

10 where they serve on Creditors Committees all the time and

11 they serve in their capacity as representative of all

12 unsecured creditors when they sit on a committee.  And in

13 this case one of those two indenture trustees, Law

14 Debenture, is the Trustee for the NNCC bonds, the bond issue

15 that's not included in this Settlement.  So even by the

16 superficial statement of the Monitor with respect to the

17 Committee, in fact two of the three members of the Committee

18 have no interests that are dealt with directly in this

19 Settlement.

20           By the way, like all unsecured creditors, they

21 have interests that are tangentially dealt with by this

22 Settlement because very unsecured creditor that has a

23 contract and others like the PBGC that has a statutory

24 entitlement has an argument -- and we, as representatives of

25 creditors, believe an extremely strong argument -- that

1    they're entitled to their contractual or statutory rate of

2    interest that's stated in their instruments and governing

3    documents.

4              So this Settlement actually deals with a question

5    that could provide a framework, a roadmap for how to deal

6    with other significant dollar amounts which come before the

7    equity-holder in this case and which are going to have to be

8    dealt with.

9              But let me come back to "paramount interest of

10   the creditors."  So when we look at the ballooning overhang

11   of interest that has been accruing in this case and on

12   everybody's radar screen since the moment in time when $4.5

13   billion was brought into the estate from the sale of the

14   intellectual property, unsecured creditors generally look at

15   the fact that the bondholders, the crossover bondholders

16   whose claims are being settled at this moment, have the

17   largest proportion of that ballooning amount.  And so,

18   because it's not at all clear, never has been, how much

19   value would be available to distribute to unsecured

20   creditors, there's always been a concern of that ballooning

21   amount.

22             Now, we all knew before the Monitor stated it in

23   -- as clear as it could that that amount at the moment was

24   $1.6 billion when this issue was joined in the summertime.

25   We had at that time just heard the sworn testimony of the

1   Monitor's expert Britvin --

2            THE COURT:  Um-hum.

3            MR. HODARA:  -- that there might be $1.3 billion

4   available in the United States when all was said and done

5   for distribution.

6            MR. PULTMAN:  Your Honor, I hate to stand during

7   Mr. Hodara's argument, but I think he misspoke when he said

8   that the Monitor's expert was Mr. Britvin.  Mr. Britvin was

9   not the Monitor's expert.

10           THE COURT:  All right.

11           MR. HODARA:  Thank you for that correction.  We

12  have the sworn testimony of Mr. Britvin that there might be

13  $1.3 billion available.  Just as with Mr. Wertheim, that's

14  all speculation at this point.  But what we do know, and

15  particularly after hearing Mr. Wertheim and then seeing what

16  I think is actually an extremely helpful demonstrative that

17  was handed up this morning by Mr. LeBlanc, all of the

18  elements that are in question that may in fact leave

19  considerable amounts available in the United States for

20  distribution in respect of post-petition interest if that

21  post-petition interest accrual on these bonds is capped

22  because if we can get that capped off at approximately $900

23  million, whatever the number will ultimately be when the

24  case gets settled over the continuum of the next year, there

25  may very well be not just dollars available for other post-

1  petition interest but considerable dollars.

2           And we still have to deal with the claim of the

3  NNCC bondholders with the 4.9 percent statutory interest

4  rate that accrues on the claim of the Pension Benefit

5  Guarantee Corporation, which we know is a large claim, and

6  on the claims of the rank-and-file General Unsecured

7  Creditors to the extent that they have contracts or other

8  arguments of entitlement.

9           And so when we look at the prospect that by

10  capping off this ballooning amount on the crossover bonds

11  claims that there may in fact be considerable dollars left

12  for interest to be paid to other unsecured creditors, we

13  believe that the paramount interest of creditors test is met

14  in spades.  And while it is not our duty to look out for the

15  equity-holder, the very same point holds true for them.  If

16  it is the case that we end up with literally hundreds of

17  millions of dollars, and from the numbers we've heard from

18  Britvin and that we've heard in other contexts here, there

19  could be 2, 3, $400 million of additional values.

20  Mr. LeBlanc said this morning maybe $600 million of

21  additional value.

22           Well, as I understand the amounts that could be

23  owing on the other unsecured creditors' claims for interest,

24  that would leave a couple of hundred million dollars of

25  value for the equity-holder.  And given what we hear and

1    know about the creditors in Canada away from the bondholders

2    and away from NNI's claim in Canada, that's money that would

3    go a very, very long way to satisfying the claims of those

4    people who have been waiting so long for their recoveries.

5            And that takes me, Your Honor, to my last point,

6    which is the issue of settlements generally.  I'm a believer

7    that settlements beget settlements.  I think that when you

8    put an important piece of the puzzle in place, there's

9    momentum to get other pieces of the puzzle locked into place

10   as well.  We had a Motion filed in the past 10 days by the

11   NNCC bondholders.  They're still claiming an entitlement to

12   100 percent of their interest accrual, and of course they

13   should because that's what their contract said.  But then

14   again we've got a settlement here at less than 60 percent of

15   all the other bondholders' interests.  If and when -- and I

16   surely hope it's only a question of when -- this Settlement

17   gets approved, we've got that roadmap of how to approach the

18   NNCC bonds.  And then we've got the question of interest on

19   all of the other claims that I've already enunciated and

20   we'll have the roadmap to deal with those.

21           We have a CRO leading this --

22           THE COURT:  I don't have to decide, do I, the

23   issue of which rate applies.  I just have to decide that

24   there's a likely probability, if you will, a reasonable

25   probability.

1          MR. HODARA:  That's part of the beauty of this

2    Settlement that Your Honor doesn't have to decide that

3    difficult question.  While as a representative of creditors

4    generally, we have in this case and consistently in our

5    cases taken the position that the creditors are entitled to

6    their contract rate.  We are aware of the case law that goes

7    both ways on this issue, so that's why this is here for

8    settlement.  And exactly, Your Honor, the determination of

9    what rate would apply is obviated by the Settlement.

10          The point I was making with respect to Mr. Ray,

11    the CRO, is that we have a very experienced person who's

12    running the company on the U.S. side, just as the Canadians

13    do in the Monitor.  Mr. Ray testified clearly about his

14    experience in settling all manner of major issues in this

15    case -- and Your Honor is aware of the ones he has done in

16    this case -- and in other cases, including the issue of

17    entitlement to post-petition interest --

18          THE COURT:  Um-hum.

19          MR. HODARA:  -- in other cases.  I think that we

20    need to keep the momentum going.  The CRO of this company

21    needs to hear that it is appropriate to enter into

22    settlements with the support of his creditor constituencies,

23    and that, we hope, will pave the way for the broader

24    settlement that everybody still aspires to.

25          Your Honor, it is publicly known because it was

1    stated on the record that there would be a negotiating

2    session on Monday leading into this hearing.  I think in

3    fairness to the parties in interest, many of whom are

4    listening in, to say that that session was held, that as

5    with all the other sessions before, it did not result in a

6    settlement or a conclusion.

7         But the last thing I will say about that is I

8    think that all of the parties came to that session in a

9    spirit of cooperation, and it's that spirit of cooperation

10   that a settlement like this will add to.

11        I will close with the Monitor's own words in its

12   papers that were filed back in June where the Monitor said,

13   "The resolution of the post-petition interest dispute would

14   assist in breaking the log jam of the settlement

15   negotiations between the Nortel estates."  We still believe

16   that that's the case and that the Settlement here of the

17   post-petition interest issue will resolve yet another

18   important issue to pave the way to get on with the attempts

19   for the global settlement.

20        Thank you, Your Honor.

21        THE COURT:  Thank you, Mr. Hodara.

22        MR. TECCE:  Good morning, Your Honor.  James

23   Tecce, Quinn Emanuel, Your Honor.

24        THE COURT:  Yes.

25        MR. TECCE:  Your Honor, I'll be very brief

1  because I know it's a long morning.  I know the Canadian

2  side of the table wants to get up so I'll be very brief,

3  but, Your Honor, we're counsel to Solus Asset -- Alternative

4  Asset Management, LP, and Macquarie Capital USA, Inc.  Your

5  Honor, between the two of them they own approximately 90

6  percent or nearly 90 percent of the NNCC bonds, and during

7  the course of these proceedings, their names have been

8  bandied about.  They are not a party to the Settlement, Your

9  Honor.

10            THE COURT:  Right.

11            MR. TECCE:  But there are -- there is a point

12  which I would like to emphasize, which is they don't object

13  to the Settlement.  They don't argue the Settlement doesn't

14  fall within the range of 9019; they don't argue the Debtors

15  have not satisfied their business judgment.  They simply are

16  not a party to the Settlement for a host of reasons which

17  they've -- which were articulated in great detail, Your

18  Honor, in a pleading which we filed nearly two months ago.

19  It's docket 14340.  And the reasons are set for in there.

20  Their -- the issue of their notes and NNC is not NNI.  This

21  is a Settlement of NNI -- of holders of bonds who have

22  claims against NNI.  The issue of their notes is NNCC.  NNCC

23  has a unique position as a subsidiary of NNI.

24            THE COURT:  Um-hum.

25            MR. TECCE:  NNCC has intercompany claims against

1   NNI.  NNCC has a Support Agreement with NNI.  There are a

2   host of unique issues that relate to NNCC.  There are

3   contractual entitlements that relate to NNCC that our note-

4   holders submit demand bespoke treatment for their notes.  So

5   they are not a party to the Settlement and I'm happy to

6   answer any questions the Court has as to why they're not a

7   party to the Settlement, but they have been discussed at

8   length today and then -- yesterday rather.

9          And the last observation I'd make, Your Honor, is

10  that while the interest -- the issue of PPI is alive still

11  in NNCC and what would happen to the PPI and NNCCs, it's not

12  the only issue that's alive at NNCC.  There are other

13  issues, specifically what to do with those intercompany

14  claims, what to do with that agreement, and our note-holders

15  have filed a Motion that's been alluded to yesterday and

16  today with the Court that will be heard on the 4th of

17  December hopefully, and that's not an issue for today, but

18  we will bring those issues to the Court's attention.  It's

19  not just a PPI issue; there are other issues that we will

20  raise in the due course.

21         But I wanted to make myself available in the

22  event that the Court did have questions as to why we weren't

23  party to the Settlement to make clear that our position has

24  been set forth in our papers as to why we weren't a party to

25  the Settlement and that's the extent of my remarks, Your

1  Honor.

2              THE COURT:  All right.  Thank you, sir.

3              MR. TECCE:  Thank you.

4              MR. RIELA:  Good morning, Your Honor.

5              THE COURT:  Good morning.

6              MR. RIELA:  Michael Riela of Vedder Price.  I'll

7  just add one -- on behalf of Bank of New York Mellon, we're

8  a signatory to the Settlement Agreement, one more voice to

9  add before we cede to the Canadians.

10             I just wanted to make really one brief point in

11 connection with the Settlement of course which the Bank of

12 New York fully supports.  There's a provision that the Bank

13 of New York asked to have put into the Settlement Agreement

14 that provided that the hearing on the Motion would be heard

15 45 or more days after the 9019 Motion was filed, and the

16 idea there was to make sure that there was a full, fair

17 process in which parties would have in -- any Objections

18 could be raised by any party, including non-settling

19 bondholders or the like.  I think as a matter of that, the

20 process that we have here is a full and fair process and

21 which I think further supports the 9019 Motion.

22             THE COURT:  All right.  Thank you, Mr. Riela.

23             MR. RIELA:  Thank you.

24             THE COURT:  Before we begin, let's take a five-

25 minute recess.  I think it might be a good idea for people

1  and you'll certainly have your full opportunity.  I know

2  that our friends on the Debtors' side, some of them have

3  some issues with travel, and Mr. LeBlanc, if you find that

4  you've got to go, please don't hesitate, no -- just leave

5  when you need to.

6          MR. LEBLANC:  As long as we can walk out the door

7  right before 11:00 I think --

8          THE COURT:  All right.  That's fine.  Five

9  minutes.  Thank you.

10 [Recess 9:46 to 9:54 a.m.]

11         THE CLERK:  Please rise.

12         THE COURT:  Thank you, everyone.  Please be

13 seated.

14         Mr. Coleman.

15         MR. COLEMAN:  Good morning, Your Honor.

16         THE COURT:  Good morning.  Mr. Coleman, you will

17 have adequate time I'm sure.

18         MR. COLEMAN:  Thank you, Your Honor.

19         THE COURT:  Yes.

20         MR. COLEMAN:  I didn't want to, you know, have a

21 two-minute drill here and try to --

22         THE COURT:  No, no, no.

23         MR. COLEMAN:  -- get the ball down the field even

24 though I'm a Giants fan.

25                     (Laughter)

1          MR. COLEMAN:  Your Honor, Ken Coleman of Allen &

2   Overy for the Canadian Monitor and the Canadian Debtors.

3   I'm going to -- with your permission, I'm going to start and

4   my partner Mr. Pultman will finish.

5          THE COURT:  That's acceptable.

6          MR. COLEMAN:  Your Honor, the point of this

7   Motion is that the Debtor and the bondholders do not want

8   you to look at the legal issue here too closely.  In fact,

9   as Mr. Hodara just put it, that's the beauty of it.  They

10  just want you to canvass the issue.  And in fact in our view

11  the issue is so clear, the legal issue is so clear that you

12  can get through this Motion on a canvassing basis only if

13  you canvass with one eye closed.

14          Now, to be clear, we never agreed that this could

15  be heard on a 9019 basis.  You know, Mr. LeBlanc is

16  exceptionally talented at presentation.  He's really, really

17  good.

18          THE COURT:  Yes, he is.

19                      (Laughter)

20          MR. COLEMAN:  He says things forcefully that your

21  first reaction is to say, oh, of course.  But yesterday, you

22  know, we should all pay attention to his admonition to the

23  witness when he was bullying the witness yesterday.  He said

24  listen to what I'm saying.  So listen to what he said.  He

25  said in footnote 15 of our Brief of July 22 we agreed that

1  this could be heard on a 9019 basis.  Well, Your Honor, I

2  just pulled out our Brief and looked at footnote 15 and we

3  say in footnote 15, "A Rule 9019 analysis should not" -- you

4  know, we acknowledge that they might try to do this, right?

5  We say, "A Rule 9019 analysis should not be used to obscure

6  the obviously pure legal nature of essential question."  And

7  that we reserve our rights in the event they do try to do

8  this.  So that's what we're doing here.  We never agreed to

9  this, okay?  So just to be clear.

10            The Debtors and the bondholders want you to view

11  this as a garden-variety 9019 settlement of a claim, no

12  different than any other settlement that sort of routinely

13  comes through this courthouse, but it is much, much more

14  than that.  First of all, it's not even a claim.  And I

15  don't mean to say that in a hyper-technical sense because

16  it's a very important point to make.  The Bankruptcy Code

17  says unambiguously in Section 502(b)(2) that interest for

18  unsecured creditors is disallowed after the filing of the

19  petition.  There is none.  Federal law takes it away.

20            There are two, a total of two provisions in the

21  Bankruptcy Code that speak specifically to interest after

22  the petition date.  One is Section 506(c), which applies to

23  secured creditors, and by the way, of the two, the only one

24  that even hints about contract rate, right?  That's not

25  applicable here.  The only other provision in the Bankruptcy

1  Code that talks about interest after the petition date is

2  Section 726(a)(5).  And that is an important principle to

3  get down before you start marching through all the rest of

4  this stuff.

5          Now, this Settlement -- and I'm going to get into

6  that in a little more detail in a minute -- this Settlement

7  would have the effect of not just resolving some garden-

8  variety claim.  This Settlement would have the effect of

9  allowing two parties to get together to bargain away a right

10  that NNL has under Section 1129(a)(7) of the Bankruptcy

11  Code, which is directly linked to 726(a)(5).  And it would

12  have the effect of sidestepping that pure legal issue, and

13  that is a pure legal issue that this Court can determine now

14  and that this Court would be required to determine at

15  confirmation of a Plan.

16          The impact of this Settlement on the NNL estate

17  is direct and material, and to try to approve this

18  arrangement under the camouflage of Rule 9019 is

19  unprecedented, and we believe as a matter of law cannot be

20  done.  As a matter of law, the Debtors and the bonds cannot

21  settle away the protection that the Bankruptcy Code gives to

22  NNL through 1129(a)(7).  At confirmation of the Plan this

23  Court would be required to find each of the elements under

24  1129(a).  And under (a)(7) Your Honor would be required to

25  find that the Plan provides NNL with at least as much as it

1    would get in a Chapter 7 liquidation.

2            In a liquidation under Chapter 7, Section

3    726(a)(5) would limit post-petition interest to "the legal

4    rate."  The legal rate.  The overwhelming majority of the

5    cases hold that the phrase "the legal rate" from Section 726

6    means the federal judgment rate.  There is not one decision

7    in this circuit that says otherwise.

8            Now, we don't believe that it is possible to look

9    a the 726(a)(5) case law, whether you do that in depth,

10   whether you canvass it, or whether you drive by it at night

11   at 100 miles an hour and honestly reach a different

12   conclusion.  So in a Chapter 7 NNL would be entitled to

13   receive surplus above the federal judgment rate.  Now, we

14   believe that that's precisely why this Settlement was done

15   precisely when it was done.

16           But in any event 726(a)(5) we think is the first

17   pillar that needs to be understood and the key legal

18   determination, and that is because this isn't a case where

19   equity would retain future value.  This isn't a

20   reorganization where a going concern emerges.  There's no

21   future value here.  In this case the only value that is

22   going to be distributed is the cash proceeds of the

23   liquidation of assets.  It is functionally indistinguishable

24   from a Chapter 7 liquidation.

25           Therefore, the analysis under 1129(a)(7) is

1   incredibly uncomplicated.  It is straightforward.  And if

2   the bondholders and other unsecured creditors are paid above

3   the federal judgment rate, like it or not as a matter of

4   conscience but as a matter of the Bankruptcy Code, like it

5   or not, if they are paid above that rate, the (a)(7) test in

6   a liquidating Chapter 11, a pure liquidation like this one,

7   the test can't be met; the Plan can't be confirmed.  So the

8   distinction between reorganization cases, classic going-

9   concern reorganizations and liquidations like this one is

10  absolutely critical to understand.

11          In non-liquidating going-concern cases there's

12  other value.  In those cases the Debtor is almost always

13  worth more on a going-concern basis than in a liquidation,

14  and that does a very important thing.  That provides a

15  cushion.  That provides extra currency to pay amounts over

16  FJR, sometimes substantially over, and still leave equity

17  with more than they would receive in a liquidation, and

18  therefore, the test under 1129(a)(7) can be satisfied.

19          In fact, each and every case where unsecured

20  creditors were paid more than federal judgment rate were

21  either reorganization cases where a going concern emerged or

22  cases where the equity consented to it.  And frankly, in

23  most cases both of those factors were present.  In this

24  case, neither fact is present.  We don't have a going

25  concern, there's no extra cushion, and obviously equity

1    hasn't consented, weren't even consulted.

2            So every dollar above FJR means the test has

3    failed, much less the nearly 900 million that's proposed in

4    this case.  The breathtaking gap created by this proposal,

5    when measured against the standard of 1129(a)(7) and the

6    benchmark of 726(a)(5) is absolutely breathtaking.  This

7    Settlement would dispose of NNL's 1129(a)(7) rights and they

8    believe that Your Honor is comfortable delegating all of

9    that to these parties.  It is not an incidental effect of

10   this Settlement.  The purpose is to foreclose the issue, to

11   lock it down right now.

12           Now, when I first read the bond's Reply Brief

13   Thursday night when we got them, there's some language in

14   there around page 20 and 21 where they say, well, you know,

15   the Settlement really doesn't restrict parties' rights,

16   including the Monitor's rights, to object to a Plan and any

17   Plan is still subject to the standards of 1129, and any Plan

18   that incorporates the terms of the Settlement is still

19   subject to the same confirmation requirements as any other

20   Plan, 1129.  I was like, really?  We thought the point of

21   this was to take one major feature away.

22           The Debtors are a bit more candid about this.

23   The Debtors made it clear that this is a one-time event and

24   the intention is to lock this Plan provision down right now.

25   At paragraph 2 of the Motion they say, "The Settlement is

1  entitled to bind all parties in interest with respect to the

2  proper amount" -- in their judgment -- "of post-petition

3  interest".  They also made it clear at the July 24th status

4  conference when they said this Settlement would foreclose

5  later litigation.

6          The Debtors were also quite candid that the

7  purpose here -- it was raised again today -- is to limit our

8  appellate rights.  At paragraph 14 of their Reply Brief when

9  they take issue with our position on litigation costs, they

10 point out that "A benefit of this arrangement is that a

11 decision approving it is reviewed under a business judgment

12 standard rather than subject to de novo review," which would

13 cost more.  And that's an extraordinary statement.

14         So the purpose here is to eliminate NNL's rights

15 under 1129(a)(7), hardwire a Plan result right now, and

16 limit the scope of appellate review.  We believe this cannot

17 be done as a matter of law.  This decision is one that the

18 Court needs to make, not delegate to two parties and then

19 sort of canvass whether or not it looks okay.

20         They can't settle this confirmation requirement

21 any more than they can settle anything else in 1129(a).

22 They can't settle, for example, whether or not a Plan to be

23 filed sometime in the future complies with the applicable

24 provisions of Title 11.  That is a determination that this

25 Court must make under 1129(a).  They can't decide among

1  themselves that the Plan should be filed sometime in the

2  future was filed in good faith.  That's a determination that

3  this Court must find at confirmation.

4         You know, if this arrangement were possible, the

5  good news for Your Honor is you can outsource the entire

6  confirmation process to a subset of the parties and then

7  just sort of casually canvass it.  It'd be nice.  You could

8  play golf more.

9                        (Laughter)

10        THE COURT:  Just the thought of it is wonderful,

11 Mr. Coleman --

12        MR. COLEMAN:  Wonderful.

13        THE COURT:  -- I'll tell you.

14        MR. COLEMAN:  It's wonderful.  Who needs a

15 Bankruptcy Code?

16        THE COURT:  That's right.

17        MR. COLEMAN:  We can have Rule 9019, solve

18 everything.

19        The relief they're seeking is truly

20 unprecedented.  This is not a plain vanilla 9019.  There

21 isn't a single case that has allowed a Debtor to craft a

22 Settlement Agreement whose admitted purpose is to take away

23 a party's rights under 1129(a)(7), not one.

24        They cite a bunch of cases; all of them are

25 easily distinguishable.  Take *Jevic*, *Capmark*, *World Health*.

1   There, there were no violations of Section 1129 because the

2   Settlement amounts at issue in those cases were not even

3   property of the estate.  Now, here obviously we're talking

4   about property of the estate.

5          They talk about *Allegheny*.  It's a 24-year-old

6   reorganization case from the Western District of

7   Pennsylvania.  Case law has moved on a bit since then, but

8   the important point there is that the confirmation order,

9   which is very helpfully appended to the published opinion --

10          THE COURT:  Yes.

11          MR. COLEMAN:  -- the confirmation order there

12  specifically includes the finding required by 1129(a)(7),

13  and importantly, that was a true reorganization of going

14  concern, not this case.

15          Now, I think they also cite today and I believe

16  in their papers as well to *Coram*.  I think if you take a

17  look at *Coram*, Your Honor, and I think Mr. Pultman will

18  address this in more detail, but if you take a look at

19  *Coram*, you'll find that there was substantially more

20  analysis behind the Settlement than there is here.  And

21  importantly in that case, the Trustee who was proposing the

22  Settlement met with the equity and the note-holders to

23  arrive at an arrangement.  That wasn't done here.

24          *W.R. Grace*, we've heard a lot about *W.R. Grace*.

25  The bondholders hold that out as -- really as a benchmark

1  for how everything ought to be done here.  Okay.  First of

2  all, it's a reorganization of going concern --

3          THE COURT:  Um-hum.

4          MR. COLEMAN:  -- equity retains future value,

5  it's not a liquidation case.  It's not this case.  The

6  interest dispute in that case was settled with every

7  affected party's consent.  That case is so far away from

8  this one that it's actually instructive.

9          The *Iridium* case, which is cited in the footnote,

10 is even less helpful.  In *Iridium*, 2nd Circuit cautioned

11 that the most important factor in evaluating the Settlement

12 is its implications on Section 1129(b).  That was the --

13 1129(b), not (a) --

14         THE COURT:  Right.

15         MR. COLEMAN:  -- was the issue that was raised

16 there.  And the Court said it would permit only "minor

17 deviations" from 1129 and only if they were very clearly

18 justified by both the proponent of the Settlement and

19 clearly set forth in the Court's findings.  And the Court

20 also said that approving Courts, reviewing Courts must be

21 certain that the parties to the Settlement have not employed

22 that Settlement as a means to avoid the priority strictures

23 of the Bankruptcy Code.

24         Now, if you agree with us on the meaning of the

25 phrase "the legal rate" in 726, and you agree with us that a

1  Chapter 11 Plan in this case is economically and

2  functionally indistinguishable from a liquidation, then I

3  think Your Honor would have to agree with us that a

4  settlement that alters the requirements of 726 does not

5  comply with the Bankruptcy Code and runs exactly contrary to

6  the 2nd Circuit's caution in *Iridium*.

7         They rely on OSG, and we heard a lot about OSG

8  yesterday.  It didn't involve a pre-Plan 9019.  The Debtors

9  did confirm a Plan that paid contract rate and a bunch of

10  other goodies for creditors.  That was also a solvent going-

11  concern reorganization.  Equity retains the upside.

12  1129(a)(7) was easily satisfied.  Mr. Ray testified

13  yesterday that the Equity Committee supported the Plan.

14  They wanted their upside.  They were happy with the Plan.

15         The OSG plan, as you also heard, also provided

16  alternative treatment, and it says that if certain classes

17  of unsecured creditors were deemed to be impaired and voted

18  against the Plan, well, they would get the federal judgment

19  rate.  Mr. Ray tried to slough that off.  He said, well,

20  yeah, I know I signed the Plan and, you know, I guess

21  implicit in that is, yes, I actually believe it's

22  confirmable.  I mean hopefully that conclusion was reached.

23  But he said it was there for leverage.  Now, that's

24  interesting because simultaneously he's negotiating with

25  these bondholders.  So does he use that leverage with these

1  bondholders?  No.  He proposes to them an amount that's

2  actually four times that amount.  So it's just -- at least

3  it's curious and we'll -- I'll let Mr. Pultman go into

4  process a bit later.

5          My point here is that the case law in this area

6  does not help them.  So when faced with this dilemma, what

7  do they do?  They go down that well-worn path that they've

8  been on for ages now, which is to criticize the Monitor,

9  call him inconsistent, use that "E" word.  We love that "E"

10 word, estoppel.

11         THE COURT:  Oh.

12                    (Laughter)

13         THE COURT:  Thank you.

14         MR. COLEMAN:  How could you -- you know, it used

15 to be -- there was a time in this case when the famous words

16 were "reservation of rights."  Estoppel has so far

17 outstripped that on the tote board since the allocation

18 litigation started that I don't think that any other word in

19 this case could possibly take first place.

20         So our position here -- and I want to be very

21 clear about this, all kidding aside -- our position here has

22 been consistent and has been straightforward.  On the law we

23 believe that this Court can determine the appropriate rate

24 of interest under Section 726 and 1129.  We believe that the

25 Court had the power to do that in July.  We believe that the

1   Court has the power to make that determination now.  We

2   believe that the Court has the power and the duty to make

3   that determination if we get to confirmation of a Plan.  We

4   believe that the Court cannot, as a matter of law -- and I

5   say that with the greatest respect, Your Honor --

6              THE COURT:  No, no.  I understand.

7              MR. COLEMAN:  -- we believe that the Court cannot

8   approve a settlement that alters NNL's statutory rights

9   under 1129(a)(7) without NNL's consent, and it can't do that

10  at any point in the case, and that is because 1129(a)(7)

11  protects NNL's rights and those rights can be waived or

12  settled by NNL.  There is no inconsistency in that position.

13             Now, on the facts, I mean this surprises me

14  frankly that this actually got airtime.  On the facts, the

15  1.6 billion-ish of PPI is an accurate mathematical

16  calculation of the maximum accrued interest under the

17  Indentures.  It was one that was most recently done by the

18  Debtors in footnote 11 of their own Brief.  There's no magic

19  to the number.  Mr. Katzenstein testified yesterday that it

20  was "pretty simple math."  That calculation was the same in

21  July as it is now.  It was only when the Debtors announced a

22  settlement that derailed the hearing on the merits that they

23  interjected the proposition of value, real value.  What's

24  the real value?  I don't -- you know, notional value and

25  mathematical calculations are one thing, but now when we're

1  asked to evaluate a settlement, obviously real value is an

2  issue, and that was interjected for the first time when they

3  filed that Motion.

4           To argue that the Monitor should be estopped

5  because it did the same calculation that everybody else did,

6  and now that real value is an issue, it can't say anything

7  about that, is absurd.  And if what they're arguing here is

8  that they should be allowed to settle on the basis of an

9  antiseptic mathematical calculation, that is reason enough

10 alone to deny the Motion.

11          You know, if the Monitor had miscalculated, done

12 the math wrong, and said it's a $10 billion issue and they

13 came in and said, well, we're settling at 55 percent of

14 that, does that work?  I don't think so.

15          It's clear that this Settlement is designed to

16 lock down Plan provisions now, dictate the terms of a Plan.

17 The very predicates -- if you look at the Motion, the very

18 predicates for the relief requested are the Plan provisions

19 of the Bankruptcy Code.  The purpose here is to fix the

20 entitlement to PPI in a Plan, and as it says, bind

21 successors in the sides, presumably including Chapter 11

22 Trustees, Chapter 7 Trustee.  We're locking all of that down

23 now.

24          So, you know, to justify this, they're not only

25 seeking to hardwire the 726(a)(5) result, you know, that's

1  the beauty of it, as Mr. Hodara would say.  We're hardwiring

2  that in the 1129(a)(7) result.  They want to distract you

3  from that by saying, well, you know, that might not be

4  relevant here because it's possible that NNL might be

5  unimpaired.  Well, there's another Plan issue whether or not

6  NNL might be impaired or unimpaired.  So their suggestion is

7  that they could leave NNL with stock in an empty shell and

8  that would be unimpairment, you know, putting aside for a

9  moment that if NNL were truly unimpaired, it could vote that

10  stock to convert the case, to make 726 directly applicable

11  rather than through the test required by 1129(a)(7), or it

12  could vote the stock to compose its own Plan through a new

13  Board.

14          So the point here, Your Honor, is that it's

15  obvious that this Settlement does not simply have incidental

16  effects.  It absolutely dictates the terms of a Plan.

17          Now, we recall that Your Honor had serious

18  concerns last summer about ripeness.  To the extent you have

19  those concerns, this proposal only exacerbates them.  And we

20  also understand and share the concern about where this case

21  sits at the moment.  We share the desire to resolve issues

22  and move on, but the desire to get done with something, to

23  get done with an issue, almost any issue does not mean that

24  we can avoid the provisions of the Bankruptcy Code.  And

25  726, again, there's a straight line between 726 and

1   1129(a)(7).  So to get something done and obliterate that,

2   Your Honor, we think is a huge mistake.

3         The only thing the Court can do now, to do

4   something now, is actually decide that discrete legal issue.

5   Don't let it hide behind this camouflage of 9019.  Get to

6   the issue.

7         THE COURT:  And if I were to decide on the merits

8   that it is the contract rate of interest that applies

9   here --

10         MR. COLEMAN:  Then we deal with that.

11         THE COURT:  -- wouldn't this cap be advantageous

12  to NNL?

13         MR. COLEMAN:  We would be unhappy with that

14  result to be sure.  We would be unhappy with that result.

15  We are -- we think that's what Your Honor can do.  And you

16  can read the case law, and if you come to that conclusion,

17  we'll deal with that conclusion.  The important thing here,

18  Your Honor, is to deal with the legal issue; don't let it

19  hide behind all this other stuff.

20         The Debtors are in effect asking you to conclude

21  each of the four following things:  First, that your duty to

22  determine whether a Plan complies with Section 1129(a) can

23  be delegated and approved under 9019 with a mere canvassing

24  of the issues; second, that NNL's rights under 726(a)(5) and

25  1129(a)(7) can be settled without NNL; third, that giving

1  the timing of all of this cursory analysis behind it on the

2  Debtors' side, the exclusion of NNL as the only adverse

3  party, the purposes and dramatic consequences to NNL of this

4  arrangement that you can conclude that, well, this was done

5  in good faith and at arm's length; and lastly, that

6  Dr. Wertheim's analysis does not at the very least raise

7  serious doubts about the value of all this to the NNI

8  estate.

9         Now, just a couple more points and then we'll

10  move on because I know we're running out of time, if Your

11  Honor disagrees with us and concludes as a matter of law

12  that this can be dealt with under 9019, we believe that you

13  must assess the value of the Settlement.  Value is not, the

14  economics are not a sideshow.  You will either conclude that

15  Dr. Wertheim has shown that there is no value here or that

16  the Debtor has made the case that there are a vast number of

17  uncertainties, so many that the Debtor didn't attempt to do

18  anything to quantify the value of a settlement.  They simply

19  applied the rate stated in the Indenture, multiplied it by

20  the principal, concluded that a settlement amount was less,

21  less is always better, there you go; we're done.

22         You know, the chart that they used with

23  Mr. Katzenstein, you know, there's three lines here.  The

24  blue line is this ever-increasing contract rate, the red

25  line is the Settlement, the green line is federal judgment

1   rate.  The line you need, Your Honor, the fourth line, which

2   they didn't even attempt to draw for you, is what's

3   available for distribution.  You know, you can't assess the

4   value of the Settlement without that fourth line.

5            So we think that you can decide the legal issue.

6   If you disagree with us on the propriety of subjecting this

7   to a 9019 analysis, then you have to take on the value

8   proposition, and because of the uncertainties here, we think

9   if you have the discretion in these circumstances, you ought

10  to exercise the discretion to deny the Motion.

11           THE COURT:  But isn't every settlement premised

12  upon uncertainties?  That's why cases settle because of

13  uncertainty.

14           MR. COLEMAN:  Well, Your Honor --

15           THE COURT:  If the facts are solid, nobody's

16  going to settle.

17           MR. COLEMAN:  You know, when you ask the question

18  in that way, the answer is, well, of course, yes.  But here

19  there's a complete lack of analysis of the relevant facts as

20  to value of the Settlement.  And again, more importantly our

21  point here is that this is not even the stuff for 9019.

22           THE COURT:  I understand that you're making a

23  distinction between the legal argument and the factual

24  premise and

25           MR. COLEMAN:  I am, Your Honor.

1           THE COURT:  Yes.

2           MR. COLEMAN:  I'm happy to try questions,

3  conscious of the time.  I'll otherwise hand it over to

4  Mr. Pultman.

5           THE COURT:  That's fine.  That's fine.  Thank

6  you.  Thank you very much.

7           Mr. Pultman.

8           MR. PULTMAN:  Good morning, Your Honor.

9           THE COURT:  Good morning.

10          MR. PULTMAN:  Jacob Pultman of Allen & Overy.

11          My colleague Mr. Coleman talked about the legal

12  issues, and as he said, I will speak to the facts that we

13  have developed through the hearing today -- yesterday.  And

14  actually Ms. Schweitzer started by saying this is a

15  straightforward 9019.  It is anything but that.  It's

16  anything but that for many reasons, first, the legal issues

17  that Mr. Coleman told you about; second, we've got myriad

18  issues growing out of the magnitude of this Settlement.

19          But before I get to that, Your Honor, platitudes

20  about settlement being good don't weigh in this matter

21  because of course settlements are by definition good.  They

22  resolve issues and take them out of the case, but not every

23  settlement is an appropriate settlement.  Not every

24  settlement is appropriate in the legal manner; not every

25  settlement is appropriate factually.

1            This one doesn't meet the test.  Well, let's

2    start with why.  The magnitude of this settlement, a

3    billion-dollar settlement, because that's what it is; it's a

4    billion-dollar settlement effective at the end of June of

5    2015 because this is not going to be paid prior to June of

6    2015.  A billion-dollar settlement requires care, it

7    requires attention, it requires far more than the parties to

8    this settlement gave it.  And I don't mean that in a

9    mechanical way in the number of days that someone needs to

10   negotiate the deal.

11            The process here, and I mean with respect to that

12   the process for the negotiating of the Settlement, because

13   Your Honor set out what the process for this hearing was.

14   Your Honor told us that the settling parties bear the burden

15   of the hearing -- at the hearing of proving that the

16   Settlement was a result of arm's-length negotiations, that

17   the terms are fair and reasonable and in the best interest

18   of the Debtors' estate.

19            Your Honor was exactly right as to the burden.

20   It is in fact the proponents who bear that burden of

21   demonstrating that the Settlement was arm's length, that it

22   employed a process that was vigorous and thoughtful, and

23   that at the end the Settlement that was produced meets the

24   standards that the 3rd Circuit set out in the *Martin* case,

25   the four-part test.  On every level the process that they

1    employed to come to the negotiation failed.

2              The word that came up yesterday probably as much

3    as any other was the word vigorous.  You heard multiple

4    times this was a vigorous process.  It went on for weeks and

5    weeks.  It went back and forth.  There was give and take.

6    There was give and take.  Mr. Ray gave and the bonds happily

7    took everything that he gave.  There was no vigorous

8    process.

9              They started by telling you that this vigorous

10   process began not in mid-July and it came up in the bonds

11   Brief and it came up yesterday when Mr. Ray testified.  And

12   for the first time Mr. Ray said, no, it went on several

13   weeks before.  Well, what was it that went on several weeks

14   before?  We know that there was a discussion.  We didn't

15   hear evidence from the parties to the discussion but we know

16   that there was a discussion between Mr. Bromley and

17   Mr. LeBlanc and that that discussion took place in a hotel

18   in Toronto, that that conversation started the process.

19              But what do we know from Mr. Ray?  He didn't know

20   whether any demand had been made.  That's what he said.  He

21   didn't know whether any response was ever given to that

22   demand.  We asked Mr. Katzenstein is there a single document

23   that took place in the intervening weeks between June 18th,

24   2014, and the 14th of July?  Is there a single document that

25   makes out a demand or a response?  Is there a single email?

1  There is not.  There is a complete absence in the record.

2         Your Honor ordered them to produce and we asked

3  for the communications back and forth and they produced

4  those communications.  And there is an absence of a single

5  document laying out a demand or a response.  There were no

6  negotiations that are documented or recalled by the

7  principal who was, as he described himself, the key person

8  leading the team for the U.S. estate.  So --

9         THE COURT:  But isn't it so that this issue of

10  post-petition interest had been discussed and discussed by

11  the parties for literally years?

12         MR. PULTMAN:  It's certainly the case that the

13  knowledge of the parties was that the PPI was an issue

14  within the case and the size of it was an issue in the case,

15  but were there vigorous negotiations?  Were there any

16  settlement negotiations?  Well, we asked for that and what

17  we were told was they really started in July.  And we turned

18  to the big calendar, July 14th, and what happens on July

19  14th?  July 14th we see a term sheet.  Now, Mr. Ray coined

20  the phrase -- he described it I call that "term sheet

21  light."  Why is it "term sheet light?"  Because it, too, has

22  no numbers.

23         And the first time we get to a number in a

24  negotiation is midday on the 15th of July in the meeting

25  that we have at the offices of Cleary Gottlieb.  It's the

1   first time that we have a meeting where the principals are

2   present.  It's the first time we have a meeting where the

3   financial team is present, where Chilmark is present and

4   Mr. Kennedy is present for the U.S. and we know that the FTI

5   people are there for the bonds.  So it's the first time that

6   we have a real discussion to talk about the proposed

7   Settlement.

8           What do we know about that meeting?  Well, we

9   know that Mr. Katzenstein said -- Mr. Ray opened the meeting

10  by saying it's your meeting; tell us what you want.  And the

11  bonds said we want 70 percent.  And what did Mr. Ray

12  respond?  Mr. Ray, who, in OSG, put in a provision in the

13  Plan that in certain circumstances the D-1 through D-5 class

14  was going to be paid at the federal judgment rate.  Does he

15  open with anything approaching the federal judgment rate?

16  The federal judgment rate at that point on the bonds was a

17  little under $100 million, something in the order of $99

18  million.

19          Does he open with anything close to that?  And

20  the answer is no.  He opens with $480 million, nearly five

21  times the size of the federal judgment rate, nearly five

22  times the size.  That's nearly half-a-billion dollars.  When

23  we talk about magnitude, Your Honor, his opening offer there

24  was of a magnitude that has no reasonable relationship to

25  what the federal judgment rate was and has no reasonable

1 relationship to what the potential outcome of the matter

2 would be if Your Honor considered it some 10 days later.

3          And that 10 days that's out there, that is a

4 ticking clock and it's a desperate effort to beat that

5 ticking clock.  And that's why within four hours of a

6 meeting, within that afternoon of the 15th of July, within

7 that one limited afternoon, Mr. Ray jumps and he jumps from

8 $480 million and he puts in another $165 million, and within

9 48 hours of that meeting, by Thursday afternoon we have an

10 oral agreement on the 55 percent, which is $907 million.  Is

11 there something to be said for a vigorous negotiation?  Yes.

12 But this was not it.

13          Now, Mr. Ray also told you that he was well aware

14 of the legal arguments with respect to whether contract rate

15 should apply or federal judgment rate.  First, he told you

16 he read the Briefs.  Well, the substantive Briefs -- I think

17 we all know the substantive Briefs on that legal issue were

18 filed on the afternoon of the 15th of July at 4:00 p.m.,

19 certainly after the fact that he started the meeting by

20 giving away $480 -- $480 million and increasing it.  So it's

21 certainly that he didn't read the Briefs that went to the

22 substance.  He said he had his own opinion.  He had formed

23 his own opinion as to the entitlement.

24          Well, his belief was not based on legal advice;

25 he told us that.  His belief, based on his own reading of

1  the Briefs, which came at some other time, helped form his

2  view.  And he took it on his shoulders.  That's what

3  Ms. Schweitzer described today.  He took it on his shoulders

4  to take this issue and see if he could fashion a settlement.

5        So what did he do?  Well, a settlement of this

6  magnitude, a settlement in the order of $1 billion requires

7  care and consideration.  The first thing it required was

8  approval of the Board of Directors of NNI because there is a

9  Board of Directors of NNI.  And that Board of Directors of

10 NNI owes fiduciary duties to the equity.  They owe fiduciary

11 duties to their parent company.  And taking this out of

12 their hands and ensuring that it wasn't considered, there

13 was no consultation, there was no approval, there is

14 absolutely no record of a presentation or communication or

15 anything with the Board of Directors of NNI.

16        THE COURT:  Well, Mr. Ray conceded he did not go

17 to the Board.

18        MR. PULTMAN:  He certainly conceded that.  And in

19 that situation, Your Honor, his duties grew because if he

20 was taking it on himself and putting it on his own shoulders

21 to make the determination as to whether this Settlement is

22 appropriate, he had a duty, and that duty was to use due

23 diligence, to go through care, to examine whether there was

24 fair value offered in this Settlement.  Was this Settlement

25 good not just for certainty and finality; was it good for

1    the estate as a whole and for its stakeholders and its

2    creditors?  And among those he needed to consider, among

3    those, was the equity.

4            So what did he do and what didn't he do?  Did he

5    get legal advice?  Did he get legal advice from the lawyers

6    telling him what the likelihood of success on the PPI matter

7    was?  Because the first of the *Martin* standard is likelihood

8    of success.

9            MS. SCHWEITZER:  Your Honor, I don't mean to

10   interrupt, but I will on this point because Mr. Pultman

11   asked a very specific question and it's now the statement of

12   testimony.  The question Mr. Pultman put to Mr. Ray about

13   legal advice was did you get legal advice on the outcome or

14   the recoveries or the amount that they're going to get?  And

15   he said no, I did not.  He did testify that he did talk to

16   lawyers and he did have legal conversations.

17           So Mr. Pultman is trying to suggest this is a

18   completely flippant, unknowledgeable opinion of Mr. Ray, and

19   I will let him proceed with his argument but I'd like him to

20   do so on the record on this point.

21           MR. PULTMAN:  Thank you.

22           Your Honor, when we get to the second statement

23   of what he did and didn't do, I think there will be less of

24   a dispute.  Did he seek financial expertise?  Did he develop

25   a model?  Did he analyze what the results would be of the

1   potential surplus cash in the estate with which to pay this

2   proposed Settlement?  No, he didn't.

3           He told you he didn't need to do so.  He said he

4   didn't want to spend the money on a financial analyst.  He

5   didn't want to waste the money doing that.  Well, it was

6   very clear he didn't need to spend any money on financial

7   analysts to do it; he had a financial analyst sitting next

8   to him in the negotiations who were perfectly capable of

9   doing it.  Chilmark is perfectly capable of doing it.

10  According to Mr. Ray, they -- I asked if they were competent

11  to do it.  He said exceedingly so.

12          I asked FTI if they had done a similar analysis.

13  Had they modeled all of those issues?  Had they modeled

14  surplus cash?  What was the answer of FTI?  It was very

15  clear.  They had done each and every one of the things that

16  we asked them to do.  Had they done the model?  They had

17  done exactly that.  Did Mr. Ray do that?  Did he hire

18  Chilmark to do it?  Did -- Chilmark was going to be paid

19  anything more because they're on the monthly retainer.  Did

20  he ask Chilmark to do it?  No, he didn't.

21          Well, what did he do?  He said he did some

22  financially orientated thinking.  When we asked what that

23  meant, he said he thought about the issues.  Well, did you

24  lay out a detailed analysis?  Did you lay out an analysis of

25  the options, of the possibilities?  Did you go through a

1    reasoned deliberation?  It was very clear again he did not.

2    Did you put pen to paper?  Did you write down anything to

3    tell us what your analysis was to determine is there value

4    in this Settlement?  And again, the answer is no, he did

5    not.  Did you sit at a computer?  Did you do anything?  I

6    think the answer is very powerful, Your Honor.  He did

7    nothing to determine whether there was value in this

8    Settlement.

9             Now, it's very easy in some ways for parties to

10   stand and to attack Dr. Wertheim.  It's easier than doing

11   the work yourself.  Rather than doing -- preparing a model,

12   rather than doing financial analysis, rather than developing

13   the particulars of what went into this proposed Settlement,

14   it's a lot easier to stand on the side and point fingers and

15   poke holes and nibble.

16            Now, I'm not here to attack Mr. LeBlanc.  I'm

17   here to attack his seven-year-old son.  I don't believe

18   that --

19                      (Laughter)

20            MR. LEBLANC:  I'll let him know.

21                      (Laughter)

22            MR. PULTMAN:  I don't believe that there's any

23   question as to the qualifications of our expert.

24   Dr. Wertheim certainly possesses specialized expertise, and

25   under the liberal requirements of the 3rd Circuit Law for

1  qualification of an expert, I think that's easy.

2            With respect to reliability and fit, what did

3  Dr. Wertheim do?  He did what Mr. Ray should have done.  He

4  did what FTI did.  He looked at public sources.  He looked

5  at reliability based on accounting standards.  He prepared a

6  model.  He did a sensitivity analysis.  His sensitivity

7  analysis, he had two different sensitivity analyses.  He

8  went through the waterfall of payments.  He looked at the

9  standards not just under GAAP but what are the accounting

10 standards and how do they apply to the particular documents,

11 issues, facts here.

12            Now, can you stand back and say but he didn't do

13 everything?  Well, you can certainly say he didn't do

14 everything.  But what did he do?  He said I'll make the

15 major assumptions.  I'll take the six major assumptions, and

16 allocation being the first one, and he determined that the

17 biggest amount that that was possible to come to the U.S.

18 having run it through the waterfall, was through the Kinrich

19 report.  He concluded that that was the only report that had

20 a chance of putting them in the ballpark.  And we talked

21 only about Kinrich.

22            He looked at the tax analysis.  Now, today he was

23 attacked for looking at the words of counsel for the U.S. in

24 opening statements to this Court estimating the range of

25 outcomes that the tax claim between 400 million and a

1  billion.  I'm not here to yell and scream estoppel.  I'm

2  here to say that a reasoned expert gets to stand up and say

3  I look at the public sources as to what the range can be.

4  And the public sources were told to you.  They were told to

5  you, Your Honor, by counsel for the U.S.  And to qualify as

6  an expert and employ judgment and rely on the statements

7  made in opening statements, of course it's not evidence.

8  It's opening statements as to what the evidence in trial is

9  going to show.

10         And what else did Dr. Wertheim point to on the

11  tax claim?  He pointed to Mr. Ray's comments saying it would

12  have to be capped at $100 million.  So there's no doubt that

13  there was going to be tax claim, that that tax claim was

14  going to have some substantial amount.  He gave the benefit

15  of the doubt by coming up to the number of 133, which was

16  1/3 of the low end of the range and that range was provided

17  by counsel for the U.S.  So this notion that somehow he

18  didn't take on board or consider the particulars of what the

19  record was I think is unfair and I think it's not true.

20         I think if you look at the sources that he used,

21  what sources did he use?  He used public sources, he used

22  the 10-Q and extensively used the 10-Q.  He used the

23  Monitor's reports.  And then he used monthly operating

24  reports.  And the monthly operating reports are reports that

25  are prepared by the Debtor.  They're supposed to be prepared

1   monthly, hence the name.  They haven't been prepared since

2   April of this year, the last one, and that covered a period

3   ending in January of this year.

4           Now, we asked for those documents and were told

5   they haven't been prepared and they haven't been submitted.

6   So Dr. Wertheim is hamstrung in the sense that what he's

7   relying on is the record that's being prepared by the U.S.

8   and by the Debtor.  And the Debtor certainly has far more

9   particularized information in order to allow a model to be

10  built, in order to analyze what the potential maximum

11  surplus would be within the estate, and they can certainly

12  do far more than Dr. Wertheim did.  But did they do it?  And

13  the answer there is they simply did not.

14          Now, I said that one word we heard a lot about

15  yesterday was vigorous --

16          THE COURT:  Yes.

17          MR. PULTMAN:  -- and how vigorous the negotiation

18  is.  The other word we heard repeatedly was the word

19  certainty.  And that's what Mr. Ray said he was obtaining

20  and achieving by this Settlement.  He said "avoiding the

21  litigation provides certainty."  And he told you that the

22  benefit comes from that certainty.  Well, there are two

23  parts to the certainty:  One, you avoid the cost of

24  litigation; and second, you avoid the risks in litigation.

25          When it came to the costs and the expense of

1  litigation, I've got two points.  First, he didn't consider

2  that; and second, what was the cost of the litigation in the

3  time that they settled this?  They settled it on the 24th of

4  September.  It was the eve of the argument.  It was the day

5  before the arguments.  So what did they save in the way of

6  cost of litigation?

7          I mean just last week the U.S. Debtors submitted

8  a 9019 involving Hewlett-Packard and in that they go through

9  the particulars of what litigation they'll -- they can save.

10 And I'm not speaking to the substance of that but the

11 particulars that they point to there are we avoid discovery,

12 we avoid retention of an expert, we avoid dispositive

13 motions, we avoid trial.  In this 9019 they avoided none of

14 those things.  What they avoided was a decision by Your

15 Honor on the merits of the PPI issue.  So there were no

16 costs that they avoided.

17         What about the substance of it?  Have they now

18 avoided this Court deciding the issue of entitlement to PPI?

19 Well, we know from the Solus opting out and choosing not to

20 be part of it that they're going to bring that issue here.

21 And we've heard from Mr. Tecce today that that's an issue

22 that will be brought back before Your Honor.  In fact it was

23 last week in the form of a Motion and then we're going to

24 have argument on the question of entitlement to contract PPI

25 versus federal judgment rate or other PPI.

1          That issue is not just with respect to the NNCC

2    bonds.  We know that the other creditors are still going to

3    claim an entitlement to contract PPI and we know it from

4    testimony yesterday.  Mr. Ray told you about Section 4.2 and

5    Mr. Katzenstein told you about that section.  That was put

6    in in order to allow the GUCs to stand back up in this Court

7    and argue for contract PPI.  So once again, have we avoided

8    that issue?  Do we have certainty on that issue?

9          We heard from Mr. Ray yesterday that there was a

10   provision that was intended to be -- to defer a fight, the

11   intra-bond issues.  That's preserved for another day as

12   well.  We have the uncertainty, as Mr. Coleman went into

13   great detail, about whether or not this is 1129 or not and

14   he pointed to the comments of Ms. Schweitzer and to their

15   Brief.  Ms. Schweitzer said on July 24th that this

16   Settlement would provide certainty, but we know in paragraph

17   47 of the bondholder's piece paragraph 47 says that we're

18   still going to have an 1129 consideration.  So the

19   uncertainty is still out there.  Do we have certainty?

20          Finally, Your Honor, with respect to the process,

21   there was a lot of discussion that Mr. Ray had with various

22   parties.  He talked to the bondholders, he talked to Solus,

23   he talked to the Official Committee, the lawyers from Cleary

24   talked to the Official Committee.  What's very clear,

25   perfectly clear, there was not a single communication with

1  the Monitor.  There was never a discussion with the Monitor

2  as to whether this proposal made any sense.  Now, Mr. Ray

3  says, oh, I knew their answer before I had the discussion.

4  Well, there was never a discussion.

5          They came to the Court on July 24th and they came

6  with a Motion.  That Motion was unsupported by an affidavit,

7  was unsupported and they came to try and ask this Court to

8  come to a conclusion that a 9019 makes sense because

9  settlements are good.  We objected on a preliminary basis

10 and asked for discovery.  We had to bring that issue to the

11 Court because the fair hearing that we're entitled to to

12 consider these issues demands that we have the ability to

13 test the facts that were put before Your Honor.

14         Giving away a billion dollars in a negotiation

15 over the course of two days in a process that is so

16 fundamentally flawed without any modeling, without any

17 financial backup, without a scrap of paper, without any

18 consideration of the equity to avoid a litigation on the eve

19 of a decision, on the eve of argument of that issue where it

20 is not a settlement, it fails at every level to meet the

21 legal standard.  We respectfully submit that the supposed

22 Settlement, giving away a billion dollars of the estate's

23 money, should be rejected.  And we're not telling Your Honor

24 that settlements by definition are bad or cannot be

25 approved.  This one cannot be approved.

1            THE COURT:  Thank you, Mr. Pultman.

2            MR. LEBLANC:  Your Honor, we -- I see

3  Mr. O'Connor is rising --

4            THE COURT:  Yes.

5            MR. LEBLANC:  -- we do object to his standing and

6  we do want to respond to the statements that were made so I

7  hope this can be quick.

8            MR. O'CONNOR:  This will be very brief.

9            THE COURT:  Mr. O'Connor is always brief.  Yes,

10 sir.

11           MR. O'CONNOR:  I am brief.

12           THE COURT:  Or appropriately brief when

13 necessary.  Yes, sir.

14           MR. O'CONNOR:  I do rise just to note, of course,

15 that we did file a joinder.

16           THE COURT:  Yes.

17           MR. O'CONNOR:  We do support the Monitor's

18 arguments.  I don't think we really have to address the

19 standing issue.  We're not making any arguments separate or

20 independent from what the Monitor has done so you will

21 decide this Motion on the basis of the Debtors and the

22 bonds' papers, as well as the Monitor's.

23           I would say, however, we recognize as the UKPI

24 that we're not a creditor of the U.S. so we don't purport to

25 have standing to address any issue in the case.  This did

1    arise in the context of the allocation trial and we were

2    core parties to that and I do think this is unique.  But

3    again, I don't think you need to actually decide the

4    standing issue.

5              THE COURT:  All right.  Thank you, Mr. O'Connor.

6              MR. O'CONNOR:  Thank you, Your Honor.

7              THE COURT:  Ms. Schweitzer or Mr. LeBlanc.

8              MS. SCHWEITZER:  Do you want to --

9              THE COURT:  They had their chance.

10             MS. SCHWEITZER:  Good.  Go ahead.

11             THE COURT:  Grab the podium.

12             MS. SCHWEITZER:  You can go.

13             THE COURT:  And really, Mr. LeBlanc, I understand

14   your --

15             MR. LEBLANC:  Your Honor, I'm not abandoning one

16   set of clients so I'm going to be here as long as it takes.

17   But there are a few things; I know Ms. Schweitzer is going

18   to address some of the legal issues Mr. Coleman touched

19   upon.

20             But let me just begin to be as clear as one can

21   be.  Just look at Rule 9019.  It does not limit itself to

22   settlements of claims.  Mr. Coleman stood here for a very

23   long period of time and gave you an argument about why this

24   was settling their rights.  He could make the same argument

25   about any settlement because if there was a claim settlement

1    here, if the PBGC came in tomorrow and the Debtors and the

2    PBGC settled a claim, the Debtor is acting in its fiduciary

3    duties to all stakeholders.  Mr. Ray is doing so when he

4    reaches that settlement.  If that comes before him,

5    Mr. Coleman could equally stand up and say I had the right

6    under 1129(a)(7) --

7              THE COURT:  Um-hum.

8              MR. LEBLANC:  -- to say the PBGC claim wouldn't

9    be that high.  So if this had converted to a Chapter 7, I

10   would have done better in that case.

11             The argument fails, Your Honor.  This was a

12   dispute that was brought to the Court as a $1.6 billion-and-

13   growing dispute, and I'll talk about that in a moment.  But

14   it is being settled and it's appropriately being settled.

15   You cannot have a dispute that is ripe for adjudication but

16   is incapable of settling.  We disputed whether it was ripe

17   for adjudication.  We explained earlier on the August 8th

18   telephone call with the Court as to why we believe it was

19   appropriate for settlement, but you can't go the other way.

20   A dispute can't be ripe for adjudication but incapable of

21   being settled, and that's what their argument is.  It simply

22   falls flat.  And I'll leave the rest of that argument to

23   Ms. Schweitzer.

24             I try -- Your Honor, I do my best to speak

25   clearly and carefully but I do another thing when I stand

1  before you.  I give you cites.  I gave you cites.  I'm

2  citing you to the exhibit and to the page where the Monitor

3  made statements about the 9019.  Mr. Coleman chose to read

4  this following sentence.  I read the exact sentence that

5  they write.  "Even in the" -- I have a very small print here

6  but "Even in the context of a 9019 settlement, the Court

7  would need to apply the 3rd Circuit's *Martin* factors to

8  determine the appropriateness of a settlement of a discrete

9  question of law that has now been briefed by the parties."

10 That was their argument.

11          And you'll recall, Your Honor, we were arguing

12 that procedurally it was improper to be heard because it

13 could come up in a variety of different contexts.

14          THE COURT:  Yes.

15          MR. LEBLANC:  It could come up in the context of

16 an 1129(a)(7).  More likely, it would come up in the context

17 of 1129(b), not -- which doesn't invoke 726(a)(5).  And even

18 a third context is it could come up in the context of a

19 9019, and their argument then was, well, it's not coming up

20 in a 9019.  Instead, you can table that and deal with it

21 later.

22          Just very briefly on Mr. Coleman's suggestion, he

23 talked about the estoppel issue and that's the new "E."

24 Your Honor, I wish it weren't the case.  I wish we weren't

25 here arguing and explaining to the Court that the Monitor

1    has taken inconsistent positions.  When they stood here

2    telling you it was a $1.6 billion issue and growing, they

3    did it for a very particular purpose.  They wanted to

4    convince you to hear it, and not just to hear it but to hear

5    it now.  They didn't tell you, well, it's not that big an

6    issue.  And then they criticize the parties for settling

7    their $1.6 billion-and-growing issue on exactly the terms

8    that were presented, in the sense that it was a claim for

9    $1.6 billion and growing, and we settled that by stopping it

10   from growing and reducing it from 1.6 billion.

11          And I think it's important to think about this

12   idea, Your Honor, because it actually goes through both of

13   their arguments.  If there was -- if we were at the end of

14   the case and there was a million dollars available of

15   excess --

16          THE COURT:  Um-hum.

17          MR. LEBLANC:  -- above the federal judgment rate,

18   their argument is that we would have to settle this for a

19   settlement that is 99.95 percent of -- the Debtors would

20   prevail 99.95 percent because we'd have to give them some

21   portion of that million dollars if there's only a million

22   dollars even though our claim, if we sit here today, is $1.6

23   billion over the federal judgment rate.  That makes no

24   sense, Your Honor.  What Mr. Ray made clear yesterday in his

25   testimony is this is an upper limit.  If there's less cash

1    available, then less cash will be paid.

2              THE COURT:  Right.

3              MR. LEBLANC:  But it -- I have set an upper

4    limit.  And what he was clear about yesterday is I've gotten

5    certainty as to one thing I could bring certainty from.

6    Yes, I couldn't resolve all of the other creditors' claims.

7    I couldn't resolve the NNCC claims.  But I'm taking issues

8    out of the case.  And he didn't just take a small one; he

9    took the issue that the Canadian Monitor told this Court in

10   chambers was the impediment to settlement.  If they lost it,

11   Your Honor, Your Honor has made this point before -- if you

12   rule that it's contract rate that applies, it doesn't bring

13   us closer to settlement or at least it's hard to see how

14   that would happen, but here's their invitation.  The door is

15   open.  This issue, the impediment to settlement, has been

16   resolved.  Let's settle the case.  If this is the

17   impediment, it's now gone.

18              Your Honor, I think you need to send a message to

19   the Monitor.  We put this in our papers.  You need to send a

20   message to the Monitor that settlements don't have to happen

21   over five years.  They don't have to happen through three

22   failed mediations.  You don't need Chief Judges of Supreme

23   Courts to sit and mediate cases for there to be an

24   appropriate negotiation to get to resolution.  Their

25   criticism of the manner in which this Settlement occurred is

1   ridiculous.  The Settlement, as Mr. Katzenstein colorfully

2   said yesterday, people have known about this issue; it's

3   been raised so many times that if you had a dollar for every

4   time, I could have paid off the bonds.

5          Your Honor, this has been the issue in the case

6   and that's the reason the Monitor said it could be done in a

7   week, because it's the issue in the case.  You didn't need

8   years.  You don't need years to settle even complicated

9   issues.  The Settlement here, the testimony you heard was

10  entirely credible about the scope of this discussion.

11          And let me deal with just one last point because

12  again I try to be careful when I speak to the Court.  And

13  Mr. Pultman said something that I thought was remarkable

14  because he criticized my criticism of Mr. Wertheim using the

15  statements of Ms. Block, the 400 to a billion-dollar range.

16  It wasn't just limited to what was said in openings.  They

17  took Mr. Ray's deposition.  They asked him a series of

18  questions and there's a cite, page 98 of his transcript,

19  which is the source that Mr. -- Dr. Wertheim used for

20  comfort on his $133 million number.  And Mr. Ray says -- and

21  this is the exact quote -- "And for that calculation, what

22  did you attribute to the tax claim, what number?"  Answer:

23  "The tax claim in that calculation would need to be under

24  $100 million."  And let me give you the context because he

25  was asked the series of questions, well, how would you come

1   up with more money than the Settlement amount?  And Mr. Ray

2   said, well, there's a number of different variables.  You

3   can see it in the transcript.  There are a number of

4   different variables, all of which would turn.  These are

5   ways that it could happen that you would end up with much

6   more than the $971 million.  I didn't need to do the

7   analysis.  I didn't need a model to tell me that.  In fact,

8   Britvin has just put it into the Court.

9          THE COURT:  Um-hum.

10          MR. LEBLANC:  It was just argued at closing just

11  a couple weeks ago.  And he says it would need to be in that

12  circumstance under $100 million.  That's actually evidence.

13  But Mr. -- Dr. Wertheim just ignored it and in favor he's

14  just picked 1/3 of the number that Sheila Block said in

15  opening statements.

16          On the same page -- you should read over the next

17  page, Your Honor, where Mr. Ray says that he doesn't think

18  the PBGC claims, the additional claims have any validity,

19  and Dr. Wertheim just chose to ignore that as well.  Your

20  Honor, it was easy to criticize Dr. Wertheim not because

21  it's just easy to criticize somebody.  He was sort of an

22  easy target here because he really didn't do an analysis,

23  and I think I fault the Monitor for that, not Dr. Wertheim.

24          Your Honor, there is -- this isn't -- it's not a

25  garden-variety 9019 in the sense that there's a lot of money

1  at stake here, but it meets every one of the standards.

2  Courts should approve settlements and compromises when

3  they're presented to the Court in the manner this one was

4  and Your Honor should approve this one.

5           Thank you again for your time.

6           THE COURT:  Thank you, Mr. LeBlanc.

7           Ms. Schweitzer.

8           MS. SCHWEITZER:  I'm so excited to be able to

9  still say good morning, Your Honor.

10          THE COURT:  It is.

11          MS. SCHWEITZER:  We're doing well on lawyer time.

12          Your Honor, I feel that you've -- despite the

13  fact that Mr. Pultman likes to say that there's not paper

14  here, paper there, I feel the one thing you have in front of

15  you is a lot of paper on the issues.  These -- the merits of

16  the post-petition interest dispute have been heavily

17  briefed, you have four binders of evidentiary documents, and

18  so I'm not going to word-for-word go against Mr. Pultman and

19  Mr. Coleman's statements about every legal issue.  If I

20  haven't addressed something, it's certainly in our papers or

21  I'm happy to address specific questions you have.

22          But I think on the law the Canadian Debtors and

23  the Canadian interest go back again to this idea that unless

24  we can prove we're right on the law, this can't be settled.

25  It shouldn't be settled unless they consent.  It's all in

1  their hands.  This is their money we're taking away.  It's a

2  faulty premise.  The law we point to says you can settle

3  claims.  You can settle post-petition interest claims.  *W.R.*

4  *Grace*, it was settled.

5          We were told two months ago, four months ago,

6  five months ago now this is all simple legal questions.

7  It's an up/down question, FJR or contract rate.  Now in

8  closing arguments of a Settlement Motion you start hearing

9  the permutations and turns of the law.  Well, sure there are

10  cases but that one is a reorganizing Debtor and this one is

11  non-consented and this -- someone there's an economic

12  analysis.  The fact is they can't point to established and

13  settled case law that FJR governs.  They can argue the

14  statute.

15          We can point to examples and the bondholders can

16  point to examples and people for five years in this case

17  have been arguing the law, have been arguing the facts, have

18  been sitting in rooms, three formal mediations, four formal

19  mediations -- I've lost track at this point -- and dozens

20  more of informal mediations where issues have been hashed

21  out, have been argued, have been argued on the facts, argued

22  on the law, and the one thing that's clear and I don't think

23  anyone in this courtroom disagrees on is that there's no

24  settled law on this issue, that there's not one case that

25  people can say there is not a legal issue that's before Your

1  Honor that's live, that's unsettled, and that people have

2  real risk on.

3          Mr. Coleman talks about drive-by lawyering.  I

4  don't do drive-by lawyering.  I sit and I roll up my sleeves

5  and I say if this was so easy, why are we sitting here in

6  June saying this is preventing conversations on allocation?

7  We can't figure out anything until we know that there's not

8  millions or billions of dollars flowing up and getting

9  parked at the U.S. estate.  It's inconsistent for them now

10 to stand up and oppose a settlement on the idea this is

11 easy; everyone's trying to be evasive.

12         In the history of days, weeks, months, years of

13 conversations, friendly and contentions with not just U.S.

14 versus Canada.  This isn't the U.N.  It's not treaty

15 conventions.  This is multiple creditors sitting at tables

16 from multiple estates around the world with outside

17 mediators, outside professionals, lawyers, financial

18 advisors arguing these issues on the law and arguing the

19 issues on the fact.

20         Surely Mr. Pultman in his Objection is not

21 intending for us to recall witnesses and start opening

22 settlement-privileged conversations.  We have no intention

23 of doing so.  We stayed away from that.  But you, Your

24 Honor, did ask questions.  This was discussed and the fact

25 is, yes, it was and no one denies that.

1          So the argument now is, no, I asked questions

2    about post-petition settlement.  This Settlement that you

3    hold here today, when did you start talking about this?  It

4    was only two days, it was a week, it was 10 days.  You have

5    to look at the context stepping back in this

6    [indiscernible].

7          *Allegheny* Mr. Coleman gives the back of the hand.

8    It's an old case.  Old cases aren't good law apparently

9    anymore because if we don't like them, they're not good law.

10   *Allegheny* does say, look -- in that case there were

11   disputes.  There were concerns about -- in the context of a

12   Plan about post-petition interest claims, and they say if

13   it's not settled, people are going to make more claims for

14   post-petition interest and we cannot settle this case.  And

15   in that case the Settlement's approved and equity opposed

16   the Settlement but the Court found it to be fair.

17          I'm sure we can sit here for another hour, we can

18   be here for another month and argue the distinctions of each

19   of these cases and put them on the scale and we could have

20   Your Honor's head spin, and the fact is if we want to, we

21   will because that is the 9019 issue being settled, uncertain

22   law, risk on both sides of the people sitting.  I am in the

23   middle now as the U.S. Debtor representative seeing

24   bondholders on one side, Canadian Debtors and Canadian

25   interest on the other side and hearing people zealously

1  advocate that they're right and that there's an issue.  And

2  I look and say we can let this go on.  We can let all the

3  assets be depleted by this or we can settle, and that's

4  where we came to settle.

5          Mr. Coleman also told you listen closely to

6  Mr. LeBlanc's statement.  When you listen closely, people

7  aren't quite telling the truth.  Well, I do think

8  Mr. LeBlanc gave you record cites for his statements.  I'd

9  also ask you to listen closely to the arguments being made

10  by the Canadian Debtors.  The one I stood up before was this

11  idea of no legal advice, no legal input anywhere.  Mr. Ray

12  is sitting in an armchair without any input figuring out all

13  on his own.  That's not the question that was put to Mr. Ray

14  by Mr. Pultman.  The record will stand on its own.

15          Mr. Pultman then says, oh, no, no, no, no.  This

16  -- I'll make another noncontroversial statement.  Mr. Ray

17  didn't do financial modeling because of the cost.  He didn't

18  want to spend the money even though Chilmark was working for

19  free.  That is not Mr. Ray's testimony.  Mr. Ray's testimony

20  says he said I could have hired some expert and spent all

21  sorts -- a lot of money figuring out all the variables of

22  assets and liabilities and circumstances under which money

23  could have flowed into this estate or that estate and what

24  that would have yielded in terms of post-petition interest

25  amount.

1          But at the end of the day there are so many

2    variables, there's so many outcomes, and it's a bit futile.

3    Not I don't want to spend the money; it's futile.   And

4    frankly, it's not the thing we're trying to settle.   In

5    another place he says that's the allocation dispute.   All

6    that variables and noise and levers, that's this other

7    dispute, and we can't settle everything at once.   We've

8    tried.   We've tried over and over again.   We've tried, we

9    can't, and that's why I wanted to get one benefit, to secure

10   something to make headway in things that would bring these

11   cases to conclusion.

12          Mr. Pultman again focuses on the number of days,

13   number of weeks, number of demands.   He's again not saying

14   exactly the accurate facts that the idea that the deal was

15   struck once the parties said 55 percent, 55 percent and the

16   discussions were over, the rest was paperwork, that's not

17   true.   There was another substantial concession after that.

18   It's not 55 percent of a number to be determined.   We -- the

19   Debtors came back and said pin it down, 55 percent not

20   accruing.   That took another several days.

21          That additional concession of stopped accrual and

22   fix it to an absolute dollar amount had two different

23   effects.   First, no one can later come and argue about a

24   dollar here, a dollar there, or 55 percent of what, right?

25   It crystallizes the number to actual hard dollars.   Second

1  of all and more importantly, in light of the type of

2  litigation you're seeing today, that number freezes for

3  eternity.  We all hope these pieces come to conclusion soon,

4  but if they do not, if people want to zealously litigate

5  every issue forever, this number is frozen for all good

6  time.  It's an absolute cap.

7           And so the benefit of a settlement, 55 percent

8  today, is an even bigger concession on the law next year, an

9  even bigger concession at the end of next year.  Every day

10  that goes by that's a bigger concession, and that's a

11  factor.  If we come to a year, God forbid in two years, we

12  would be sitting here saying they settled at 40 percent or

13  whatever the relevant number is.  But there are additional

14  concessions.  There's no right number of days to no right

15  number of meetings.  You have -- and Mr. Pultman says

16  there's not a shred of documents with [indiscernible].  If

17  you'd look at the Settlement drafts going back and forth,

18  that's where you see concessions, changes, other elements

19  being put in.

20           And again, we didn't negotiate this with the

21  expectation or the desire to make a record for the Court

22  that, look, if you say this, we better have a stenographer

23  in the middle of these settlement conferences in order to

24  show good faith.  We presume the fact of five years of

25  litigation, mediations, views expressed are enough to show

1    that when you spend, a lot of people sitting in rooms with

2    give and take at arm's length, that's enough.

3              Another fantasy that's being argued -- or fallacy

4    that's being argued here is NNL, the only adversarial party,

5    was left out of the room.  In fact, NNL is not the only

6    party whose money is potentially affected here.  There are

7    other unsecured creditors in the case, right, and so the

8    money flows up.  And what we said is the other unsecured

9    creditors' rights are left alone at this time.

10             THE COURT:  Um-hum.

11             MS. SCHWEITZER:  They weren't consulted.  They

12   weren't said, well, I think I would rather -- because no

13   one's briefed and surveyed the issues, the other unsecured

14   creditors, they -- their maximum claim could be 2 percent.

15   Maybe they want FJR to win.  Maybe their maximum rate is

16   contract rate of 18 percent, 20 percent.  I don't know.

17   Maybe they think the Settlement is harmful that it's too

18   low.  We didn't go around and survey all the people that

19   could be affected, not merely NNL for -- do you consent, do

20   you consent, do you consent.  The U.S. Debtors took all of

21   those variables into account.  They know the record, they

22   know the certainties, they know the uncertainties of all

23   these issues and said someone has to take the step forward.

24   Someone has to be the face of negotiation.

25             Another misstatement, another misdirection,

1    somehow that Mr. Ray failed by not going to the Board,

2    complete misdirection.  Mr. Ray is a principal officer of

3    the United States Debtors.  It is his job to represent the

4    Debtors in these cases, and the last time I checked, the

5    Debtors represent the estates and all of their parties in

6    interest, including but not solely the equity.

7          The Debtors look at the interest of everyone, and

8    quite frankly, the Board does, too.  Delaware law, you in

9    the insolvency look to the interest of the creditors and the

10   shareholders.  To suggest that somehow Mr. Ray failed in his

11   duties or had more people he needed approvals from is wrong,

12   it's insulting, and it's directly an attack on Mr. Ray's

13   credibility and his -- the fact that he approached this as a

14   serious professional trying to bring solutions here.

15         People don't like to say it:  This is a claim

16   settlement like every other claim settlement.  This idea of

17   plans and bigger issues, every time the U.S. Debtor spends a

18   dollar, that is money in the waterfall which life is where

19   it is, we are in a bankruptcy case, the Canadian Debtors are

20   the equity, they're the last in line.  Every dollar spent

21   takes a dollar away from them.  And it's not the case that

22   every dollar that we sought approval for in a 9019 Motion --

23   in fact we've never said, oh, and another reason this is

24   beneficial is it leaves more money for equity and -- or this

25   one would be a little harmful for equity because even though

1   there's an issue -- a legal issue or a factual issue, we

2   better throw more money down to equity.  It's not part of

3   the 9019 analysis and this, even though it's a more junior

4   claim, is not different than anything else.

5           Mr. Coleman again likes to use the "E" word.

6   Your Honor wrinkled your brow because, quite frankly, this

7   case isn't all about estoppel.  It wasn't all about

8   reservation of rights; it's not all about estoppel now.  The

9   fact is is whether you say estoppel, I don't think you have

10  to say estoppel.  You have to look at the history of the

11  parties' conduct.  They want to put good faith as an issue,

12  let's look at the good faith.  The good faith is people

13  coming to this Court saying there's a big legal issue,

14  there's a big factual issue, this is a log jam.  A lot of

15  value is at stake.  All we heard now in an hour of rebuttal

16  was, oh, well, I know we said 1.6 is a contract claim.  No

17  one addressed the statements to the Court before which said

18  this is a log jam and real legal practical money is at stake

19  and this is preventing other settlements.  That's different.

20  That's not estoppel.  That's a question of what were the

21  parties thinking of?  What was in our mind?  What were the

22  facts and the uncertainty expressed by the parties that were

23  being compromised?

24          They like to hide behind Dr. Wertheim.  We hired

25  an expert, an outside objective person to tell Your Honor

1  the math, to tell Your Honor the settlement, and then we

2  proceeded in offering that person as the Monitor to feed

3  that person selective information because our claims are

4  unsettled and they're uncertain and all that's confidential

5  because he had a limited scope of a mandate.  We wanted to

6  spend 100,000.  We didn't want to spend more or it would

7  have taken too long or whatever it is.  We're going to show

8  him some of the issues but not all of the issues.

9  Dr. Wertheim said I determined the maximum that I could come

10 up with with the assumptions that I was given and the

11 information I was given.  Sure there's more information; I

12 just wasn't given it.

13           The Canadian Debtors chose to make the argument

14 all about economics.  Well, they chose to make the argument

15 with one hand tied behind their back.  They said I want to

16 argue economics and you cannot cross examine me on my

17 claims.  I will not bring fact witnesses down.  I will not

18 let you probe the facts that are uncertain, the $8 billion

19 of Canadian claims, the assets that could be potentially

20 recovered by the Canadian Debtors, all the issues that drive

21 value in the U.S.  You are not allowed to determine those,

22 U.S.  You just have to take my assumptions as they are so

23 that I can put an expert forward and say you'll never get a

24 dollar.

25           That can't be the standard.  That again goes to

1  uncertainty.  These are the things that are being fought

2  over.  These are all the variables and levers, which is why

3  you settle issues, to turn off one lever, to capture one

4  variable in order to get the rest settled as well.

5          We think this wasn't a fly-by-night settlement.

6  This has been a long road.  Generally in these cases -- many

7  cases come to settlements after long litigation quickly

8  because parties know the issues, parties know the risks, and

9  parties know the benefits of settlement, and it's with that

10  context that we ask Your Honor to approve the Motion.

11          THE COURT:  Thank you, Ms. Schweitzer.

12          Mr. Coleman, did you want to say --

13          MR. COLEMAN:  Probably two minutes.

14          Yes, there are cases where there had been a

15  settlement, *W.R. Grace*.

16          THE COURT:  Sure.

17          MR. COLEMAN:  All those cases the affected party

18  was part of the settlement.  There's not one case that says

19  that we can do what they want to do here, okay?

20          With respect to the famous footnote, that's at --

21  that is in our Brief dated July 22.  It's at docket 14054,

22  footnote 15.  Your Honor, please read it.  I can read part

23  of it, Mr. LeBlanc can read part of it.  I think Your Honor

24  can read the whole footnote.  It won't take you long.

25          THE COURT:  I'll do that.

1          MR. COLEMAN:  Okay.

2          MR. LEBLANC:  It's also Exhibit 61 in your

3    binder, Your Honor.

4          THE COURT:  Thank you.

5          MR. COLEMAN:  726(a)(5), core part of our

6    argument --

7          THE COURT:  Yes.

8          MR. COLEMAN:  -- okay?  We invite you to look at

9    the case law.  We are confident that if you look at the case

10   law, you will conclude that it means the federal judgment

11   rate.  We are confident that if you look at this case, you

12   will conclude that it is a liquidation.  We are therefore

13   confident that if you look at 1129(a)(7), you will conclude

14   that there is no difference between that provision and

15   726(a)(5) functionally.  If you look at *Allegheny*, that was

16   a reorganization.

17         THE COURT:  Yes.

18         MR. COLEMAN:  Again, a reorganization, future

19   value --

20         THE COURT:  Um-hum.

21         MR. COLEMAN:  -- the Court there found that

22   1129(a)(7) was satisfied.

23         The Debtors want you to believe in

24   Mr. Katzenstein's blue line.  The concession only gets

25   bigger as time goes on.  Well, that is only possible if the

1  money is there to pay it.  Therefore, value, this has been

2  our point, the testimony yesterday --

3            THE COURT:  Yes.

4            MR. COLEMAN:  -- therefore, value is important to

5  understand.  And the only evidence on value is Dr. Wertheim.

6  Other people are affected by this, 1129(a)(7).  The UCC, the

7  Creditors' Committee was consulted, the Creditors' Committee

8  signed off, the Creditors' Committee has jointed.

9            MS. SCHWEITZER:  Your Honor, the Creditor

10  Committee did not sign off on the Motion.  I'm sorry to jump

11  up, but these misstatements have to stop.

12            MR. COLEMAN:  Well, I think they've joined in the

13  Motion.

14            MS. SCHWEITZER:  They did not join in the Motion.

15  If you look at the record at which the Settlement was

16  announced, they said we need to review the Motion.  We have

17  not finished reviewing the terms.  We're directionally

18  supportive, but we have not reviewed the terms.  We should

19  be arguing the record.

20            MR. COLEMAN:  Okay.  I'm sorry.

21            MR. HODARA:  It's to support the Motion.

22            MR. COLEMAN:  Okay.

23            THE COURT:  Support.

24            MS. SCHWEITZER:  As of now.

25            MR. HODARA:  Support.

1          MR. COLEMAN:  Forgive me, Your Honor.

2          THE COURT:  People have been shot for less,

3   Mr. Coleman.

4          MR. COLEMAN:  I -- really.

5                     (Laughter)

6          MR. COLEMAN:  Last point.

7          THE COURT:  Yes.

8          MR. COLEMAN:  Last point.  The fiduciary duty

9   issue.

10         THE COURT:  Yes.

11         MR. COLEMAN:  We are talking about a situation

12  where the Debtor is presumed to be robustly healthy, right?

13  I mean none of this matters, okay?  We're talking about a

14  solvent Debtor situation.  So the idea that, you know,

15  equity, we kind of think about -- equity ought to be front

16  and center here if we're talking about enough money to pay

17  everybody, PAR, plus accrued, plus post-petition interest,

18  okay?  So the idea that equity somehow is, you know, part of

19  the great unwashed is just not appropriate, okay?  It's

20  solvency, solvent Debtor situation.

21         Those are my comments.  Thank you very much.

22         THE COURT:  Thank you, Mr. Coleman.

23         MR. PULTMAN:  Your Honor, just to add the cite in

24  answer to Ms. Schweitzer's question --

25         THE COURT:  Yes.

1          MR. PULTMAN:  -- the question of legal advice is

2    on page 43 of yesterday's transcript, line 16, and it

3    carries over to line 44.  The question was, "Isn't it fair

4    to say" -- to Mr. Ray -- "you never got any advice from

5    Cleary about the likelihood of the bonds obtaining more than

6    the $1.01 billion that you agreed to in this proposed

7    Settlement?"  "Correct."  "Never got legal advice from

8    anyone else about that issue, did you?"  "No, I did not."

9          Thank you, Your Honor.

10          THE COURT:  Thank you, Mr. Pultman.

11          Well, as usual in this case, it's been a very

12    hard-fought and, you know, extremely well-presented hearing.

13    I will say this to you.  When I heard the "E" word, the

14    first word that came to my mind was endless.

15                    (Laughter)

16          MR. COLEMAN:  Sorry about that.

17          THE COURT:  And I fear that regardless of how I

18    decide the issue, the case will continue for a very long

19    time to the detriment of everyone, and there's nothing I can

20    do about that.  There's nothing that the Court can do about

21    that.  Only you can.  And there is a period of time before

22    the decision is rendered that you can continue to talk.  I

23    hope you will.  You've heard a lot and I think you all know

24    the issues very well.  And the dollars are diminishing and

25    that's to everyone's disadvantage.

1              But I thank you and I will get to work on this.

2      I appreciate your hard work.  I hope everyone makes their

3      next argument or appointment and travels safely, and we'll

4      stand in recess, all.  Thank you.  Thank you all.

5              ALL:  Thank you, Your Honor.

6          (Whereupon at 11:21 a.m., the hearing was adjourned.)

7                          CERTIFICATION

8              I certify that the foregoing is a correct

9      transcript from the electronic sound recording of the

10     proceedings in the above-entitled matter.

11

12
13     _____          6 November 2014
14     Christy Snyder, Transcriber                   Date
15     Diaz Data Services, LLC

| Word | Page:Line |
| --- | --- |

**1129(a)(7)(21)** 68:10 68:22 69:25 70:18 71:5 71:7 72:15 73:23 74:12 76:12 78:9 78:10 80:2 80:11 81:1 81:25 102:6 103:16 120:13 120:22 121:6

**24-year-old(1)** 74:5
**502(b)(2)(1)** 67:17
**726(a)(5)(11)** 68:2 68:11 69:3 69:9 69:16 71:6 79:25 81:24 103:17 120:5 120:15

**a)(7(2)** 68:24 70:5
**a.m(1)** 1:15 9:1 65:10 124:6
**aadel(1)** 8:5
**abandoning(1)** 101:15
**abbott(1)** 1:25
**abedi(1)** 6:21
**ability(6)** 24:23 33:19 49:20 49:20 54:22 99:12
**able(2)** 10:24 108:8
**about(104)** 9:9 21:4 21:5 25:24 27:15 27:16 27:18 30:10 31:8 32:9 34:8 35:7 35:10 35:12 35:18 35:21 36:15 36:21 36:21 38:14 39:7 39:11 39:11 41:6 42:1 42:14 43:6 43:11 44:8 45:4 45:6 47:24 48:2 48:12 49:21 50:8 51:10 51:17 52:7 52:14 53:3 54:12 54:16 54:19 55:3 59:1 60:13 61:7 62:8 67:24 68:1 71:22 74:4 74:5 74:24 76:7 77:21 79:7 80:18 80:20 82:7 84:11 84:17 84:20 88:6 88:8 88:23 91:12 92:23 94:21 96:14 97:17 98:4 98:5 98:13 101:23 101:25 102:13 103:3 103:23 104:11 105:4 106:2 106:10 108:19 110:3 111:2 111:3 111:11 111:12 113:23 117:7 117:17 117:8 118:14 122:11 122:13 122:16 123:5 123:8 123:16 123:20 123:20

**above(8)** 17:3 21:3 54:10 69:13 70:2 70:5 71:2
**above-entitled(1)** 124:10
**absence(2)** 87:1 87:4
**absolute(5)** 18:4 21:17 26:18 113:22 114:6
**absolutely(9)** 9:15 10:13 42:13 46:14 53:4 70:10 71:6 80:16 90:14

**absurd(1)** 79:7
**accept(2)** 24:11 24:11
**acceptable(1)** 66:5
**accepted(1)** 52:8
**according(1)** 92:10
**account(2)** 52:16 115:21
**accounted(1)** 24:6
**accounting(3)** 52:20 94:5 94:9
**accounts(1)** 49:20
**accrual(3)** 57:21 59:12 113:21
**accrue(2)** 78:16 122:17
**accrues(1)** 58:4
**accruing(3)** 14:24 56:11 113:20
**accurate(2)** 78:15 113:14
**achieving(1)** 96:20
**acknowledge(1)** 67:4
**acl(1)** 9:10
**acting(1)** 102:2
**action(2)** 16:13 31:1
**actual(4)** 16:17 19:17 19:17 113:25
**actually(20)** 16:20 23:24 25:1 25:13 31:23 35:10 37:5 44:14 44:18 56:4 57:16 75:8 76:21 77:2 78:14 81:4 84:14 101:3 104:12 107:12

**add(4)** 61:10 64:7 64:9 122:23
**added(2)** 49:11 52:18
**addition(2)** 13:18 47:11
**additional(16)** 31:25 33:1 43:16 47:1 47:13 50:7 50:16 50:21 51:6 52:10 52:24 58:19 58:22 107:18 113:21 114:13
**address(9)** 35:2 40:16 41:24 49:6 74:18 100:18 100:25 101:18 108:21

**addressed(2)** 108:20 117:17
**addresses(5)** 41:11 41:20 48:4 49:2 51:7
**adds(1)** 33:20
**adequate(1)** 65:17
**adjourned(1)** 124:6
**adjudication(3)** 102:15 102:17 102:20
**administer(1)** 34:1
**administered(2)** 1:6 32:13
**administrators(1)** 5:26
**admit(1)** 45:8
**admitted(2)** 43:17 73:22
**admittedly(1)** 39:15
**admonition(1)** 66:22
**advance(2)** 33:19 34:11
**advani(1)** 4:43
**advantageous(1)** 81:11
**adversarial(1)** 115:4
**adverse(1)** 82:2
**advice(9)** 89:24 91:5 91:5 91:13 91:13 112:11 123:1 123:4 123:7
**advisors(2)** 6:16 110:18
**advocate(3)** 31:15 32:22 112:1
**advocating(1)** 23:9
**affect(1)** 32:13
**affected(5)** 75:7 115:6 115:19 119:17 121:6
**affects(1)** 24:23
**affidavit(1)** 99:6

**after(14)** 20:5 21:13 24:24 35:17 45:4 51:16 57:15 64:15 67:18 67:21 68:1 89:19 113:17 119:7

**afternoon(4)** 89:6 89:7 89:9 89:18
**afterwards(1)** 45:9
**again(33)** 16:5 16:13 17:6 18:12 21:15 22:19 22:22 22:22 23:15 24:4 24:5 24:19 28:1 50:13 52:4 59:14 72:7 80:25 83:20 93:1 93:4 98:7 101:3 106:12 108:5 108:23 113:8 113:12 113:13 114:20 117:5 118:25 120:18

**against(17)** 13:5 25:2 25:2 25:3 25:3 33:25 47:4 47:8 47:11 50:9 52:5 52:6 62:22 62:25 71:5 76:18 108:18

**agenda(1)** 32:17
**agendas(1)** 32:22
**age(1)** 77:8
**ago(9)** 28:23 39:9 48:9 48:14 62:18 107:11 109:5 109:5 109:6

**agree(6)** 18:20 31:22 31:22 75:24 75:25 76:3
**agreed(6)** 27:16 49:4 66:14 66:25 67:8 123:6
**agreement(10)** 9:13 10:12 11:18 19:16 63:1 63:14 64:8 64:13 72:22 89:10

**ahead(1)** 101:10
**airtime(1)** 78:14
**akin(3)** 3:8 5:22 53:21
**al.(1)** 1:8
**alberto(1)** 4:20
**aligned(1)** 105:23
**alive(2)** 63:10 63:12
**all(102)** 9:4 10:22 12:19 15:11 18:11 18:20 18:22 23:25 24:7 24:18 25:2 26:15 27:12 27:17 27:17 28:6 29:17 30:3 30:3 30:4 30:24 33:9 33:14 33:16 33:23 34:2 34:2 36:20 37:24 47:2 47:23 47:24 48:15 50:11 51:25 52:2 53:2 53:7 55:10 55:11 55:20 56:18 56:22 57:4 57:10 57:14 57:17 59:15 59:19 60:14 61:5 61:8 64:2 64:22 65:8 66:22 67:14 68:3 71:18 72:1 73:24 75:2 77:21 79:22 81:19 82:7 89:17 92:13 101:5 102:3 105:6 107:4 108:25 109:6 112:2 112:12 112:20 112:21 113:5 114:1 114:3 114:15 115:18 115:25 117:7 117:17 117:8 117:25 124:4 124:4 124:5

**alleghecy(6)** 15:23 18:8 74:5 111:7 111:10 120:15
**allen(4)** 2:10 5:8 66:1 84:10
**allocate(1)** 36:10
**allocated(1)** 51:12
**allocation(20)** 14:20 14:21 15:3 22:7 22:10 24:23 26:19 27:15 33:5 35:11 36:4 37:22 37:25 38:5 52:15 77:17 94:16 101:1 110:6 113:5

**allocations(1)** 33:4
**allow(3)** 26:7 96:9 98:6
**allowed(8)** 19:21 32:1 52:3 52:5 52:7 73:21 79:8 118:21

**allowing(3)** 27:23 33:16 68:9
**allows(1)** 22:24
**alluded(3)** 35:6 41:8 63:15
**almost(3)** 28:6 70:12 80:23
**alone(3)** 22:12 70:19 115:9
**already(4)** 39:22 49:4 52:16 59:19
**also(21)** 14:11 18:2 25:19 29:21 32:19 33:2 37:20 39:15 40:11 72:3 72:6 74:15 75:20 76:10 76:15 76:15 80:20 89:13 112:5 112:9 120:2

**alternative(4)** 4:4 33:20 62:3 76:16
**alters(2)** 76:4 78:8
**although(2)** 42:17 46:10
**always(6)** 11:8 54:24 56:20 70:12 82:21 100:9
**amended(1)** 67:2
**amendment(1)** 74:8
**america(2)** 3:14 6:28
**americas(2)** 2:14 3:27
**among(3)** 72:25 91:2 91:2
**amount(22)** 11:16 19:17 21:12 35:10 41:9 42:3 42:4 50:15 56:17 56:21 56:23 58:10 72:2 77:1 77:2 82:20 91:14 94:17 95:10 112:5 115:23 120:2

**amounts(8)** 13:22 14:14 46:7 56:6 57:19 58:22 70:15 74:2

**analyses(2)** 18:5 94:7
**analysis(38)** 29:5 39:24 41:20 42:6 42:7 42:8 45:4 45:18 46:1 46:5 46:12 46:21 46:25 47:9 47:14 50:19 51:11 52:21 67:3 67:5 69:20 74:20 82:1 82:6 83:7 83:19 92:12 92:24 92:24 93:3 93:12 94:6 94:7 94:22 107:17 107:22 109:12 117:3

**analyst(2)** 92:4 92:7
**analysts(1)** 92:7
**analyze(1)** 91:25 96:10

**and(301)** 9:4 9:8 9:10 9:11 10:2 10:17 10:23 10:23 10:24 11:4 11:7 11:16 11:18 12:2 12:9 12:14 12:15 12:15 12:22 12:23 13:4 13:4 13:11 13:12 13:15 13:23 13:24 14:7 14:8 14:22 15:3 15:5 15:9 15:10 15:11 15:12 15:12 15:18 15:21 16:2 16:17 17:17 18:8 18:13 18:15 18:16 18:23 18:24 19:6 19:10 19:11 19:13 19:16 19:19 20:1 20:3 20:4 20:5 20:5 20:6 20:11 20:12 20:16 20:20 20:25 21:4 21:6 21:7 21:9 21:12 21:21 21:23 21:24 22:2 22:4 22:14 22:19 22:22 22:22 22:22 22:23 23:6 23:18 24:2 24:3 24:7 24:8 24:12 24:15 24:15 24:16 25:5 25:10 25:12 25:17 25:19 25:20 26:12 26:14 26:14 26:18 26:21 26:21 26:22 26:23 27:1 27:4 27:9 27:13 27:17 27:18 27:19 27:20 27:21 27:22 27:24 28:1 28:9 28:15 29:8 29:11 29:12 29:14 29:15 30:14 30:20 30:22 30:23 30:25 31:4 31:8 31:25 32:5 32:11 32:15 32:17 33:1 33:10 33:13 33:16 33:24 34:1 34:2 34:3 34:9 34:10 34:11 34:12 34:13 34:16 35:5 35:7 35:11 35:16 35:24 36:2 36:4 36:6 36:8 36:9 36:15 36:16 36:17 36:20 36:24 37:1 37:6 37:10 37:12 37:21 37:22 37:23 38:3 38:10 38:14 38:20 38:25 39:4 39:6 39:18 40:9 40:10 40:16 40:18 41:7 41:24 42:1 42:10 42:11 42:12 42:16 42:20 42:21 42:22 42:25 43:4 43:6 43:8 43:9 43:10 43:16 43:20 43:25 43:25 44:3 44:6 44:10 44:11 44:13 44:16 44:17 45:4 45:4 45:5 45:12 45:16 45:22 46:1 46:6 46:13 46:16 46:17 47:1 47:5 47:9 47:11 47:12 47:15 47:16 47:24 48:3 48:3 48:17 48:21 48:22 49:7 49:5 49:13 49:18 49:23 49:25 50:10 50:16 51:1 51:7 51:9 51:13 51:24 52:6 52:13 52:17 53:5 53:8 53:10 53:13 53:23 54:5 54:13 54:14 54:16 54:19 54:24 54:25 55:9 55:20 55:25 55:24 56:2 56:7 56:11 56:17 56:19 57:3 57:8 57:10 58:7 58:18 58:25 59:2 59:5 59:9 59:15 59:19 60:4 60:8 60:15 60:16 60:23

**and(301)** 61:9 61:16 62:4 62:6 62:19 62:20 63:5 63:8 63:9 63:11 63:11 63:14 63:15 63:17 63:25 64:15 64:20 64:20 65:1 65:3 65:9 65:21 66:2 66:3 66:7 66:10 67:2 67:2 67:6 67:10 67:14 67:23 68:2 68:11 68:12 68:14 68:17 68:17 68:19 68:20 68:24 69:1 69:17 69:18 70:1 70:2 70:9 70:14 70:16 70:17 70:19 70:22 70:25 71:5 71:7 71:14 71:16 71:17 71:23 72:13 72:15 72:18 73:6 74:13 74:15 74:17 74:20 74:22 75:16 75:17 75:18 75:19 75:25 76:1 76:5 76:7 76:9 76:16 76:17 76:20 77:3 77:20 77:22 77:24 78:2 78:4 78:9 78:10 78:11 78:24 79:2 79:6 79:7 79:12 79:12 79:20 80:7 80:10 80:22 80:24 80:25 81:1 81:7 81:15 81:16 81:23 81:24 82:3 82:5 82:5 82:9 82:11 83:8 83:20 83:23 84:22 84:22 85:8 85:11 85:17 85:17 85:22 85:22 86:4 86:5 86:5 86:6 86:6 86:10 86:11 86:11 86:16 86:17 86:24 87:2 87:3 87:3 87:4 87:10 87:14 87:16 87:17 87:18 87:23 88:3 88:4 88:10 88:11 88:19 88:25 89:3 89:4 89:5 89:7 89:8 89:20 89:20 90:4 90:7 90:9 90:11 90:12 90:18 90:20 90:22 90:25 91:1 91:1 91:2 91:4 91:11 91:16 91:18 91:23 92:15 93:4 93:14 93:14 93:15 93:24 94:2 94:10 94:12 94:15 94:16 94:20 94:25 95:1 95:2 95:4 95:5 95:6 95:10 95:16 95:19 95:22 95:24 96:2 96:4 96:5 96:8 96:8 96:11 96:12 96:17 96:19 96:20 96:21 96:24 96:25 97:2 97:8 97:9 97:21 97:23 98:3 98:4 98:7 100:5 100:21 101:1 101:2 101:13 101:23 102:1 102:2 102:5 102:13 102:14 102:21 102:22 102:24 104:4 104:6 104:9 104:9 104:10 104:11 104:14 105:4 105:23 106:6 106:11 106:22 106:18 106:20 106:21 106:24 107:1 107:11 107:13 107:19 107:23 108:2 108:4 108:17 108:18 108:22 109:9 109:10 109:11 109:12 109:15 109:16 109:19 109:22 110:1 110:4 110:5 110:8 110:10 110:13 110:18

**and(81)** 110:21 110:24 110:25 111:12 111:14 111:14 111:15 111:18 111:19 111:19 111:20 111:24 111:25 112:1 112:1 112:2 112:9 112:20 112:22 112:22 113:2 113:3 113:6 113:16 113:17 113:19 113:21 113:23 114:1 114:17 114:10 114:15 114:17 114:20 115:7 115:17 115:23 116:4 116:5 116:7 116:9 116:12 116:13 116:17 117:22 116:21 116:24 117:13 117:18 117:19 117:22 117:25 118:1 118:4 118:10 118:16 118:23 119:2 119:8 119:10 119:15 119:16 119:18 118:20 118:21 118:22 119:1 119:2 119:14 120:9 120:11 120:12 121:6 121:11 122:21 123:24 123:22 123:23 123:24 123:24 124:1 124:3 124:3

**andrew(4)** 2:21 6:13 7:5 34:20
**angela(1)** 4:35
**ann(1)** 1:26
**anne(1)** 3:12
**announced(3)** 38:23 78:21 121:16
**another(19)** 17:16 17:21 25:14 31:2 61:17 80:5 89:8 98:11 102:25 111:17 111:18 112:16 113:5 113:17 113:20 115:3 115:23 116:23

**answer(12)** 23:24 34:25 63:6 83:18 88:20 92:14 93:6 96:13 99:2 100:24 102:22 122:24

**anti-dilution(1)** 47:19
**anticipate(1)** 13:15
**antiseptic(1)** 79:9

**any(38)** 12:18 13:16 33:15 34:25 41:17 45:14 46:21 49:22 51:5 53:15 63:6 64:17 64:18 67:12 69:16 71:16 71:17 71:19 72:22 77:18 78:10 80:23 86:3 86:20 86:21 87:15 92:6 93:22 99:2 99:16 99:16 99:17 100:25 107:18 112:12 123:4

**anymore(1)** 111:9
**anyone(3)** 29:18 109:23 123:8
**anything(17)** 11:24 41:3 43:6 48:10 72:21 79:6 82:18 84:15 84:16 88:15 88:19 90:15 92:19 93:2 93:5 110:7 117:4
**anywhere(3)** 28:8 29:1 112:11
**apac(1)** 49:15
**apparently(1)** 111:8
**appeal(2)** 44:19 52:17
**appeals(1)** 15:14
**appearances(5)** 4:31 5:1 6:1 7:1 8:1
**appellate(2)** 72:8 72:16
**appended(1)** 74:9
**appendix(1)** 11:16
**applicable(5)** 13:8 53:14 67:25 72:23 80:10
**applied(2)** 44:1 52:19
**applies(5)** 41:23 59:23 67:22 81:8 105:12
**apply(3)** 38:20 39:1 39:3 39:4 44:7 60:9 89:15 94:10 103:7

**appointment(1)** 124:3
**appreciate(1)** 124:2
**approach(3)** 40:19 44:7 59:17
**approached(1)** 116:13
**approaching(1)** 88:15
**appropriate(12)** 19:19 19:20 53:5 60:21 77:23 84:23 84:24 84:25 90:22 102:10 105:24 122:19

**appropriately(2)** 100:12 102:14
**appropriateness(1)** 103:8
**approval(4)** 48:9 90:8 90:13 116:22
**approvals(1)** 116:11
**approve(11)** 16:2 16:19 23:12 48:13 53:9 53:13 68:17 78:8 108:2 108:4 119:10
**approved(13)** 14:16 16:7 16:9 17:19 19:13 23:18 24:18 48:18 59:17 84:22 95:23 99:25 111:15
**approving(6)** 16:13 16:19 23:11 34:14 72:11 75:20
**approximately(2)** 57:22 62:5
**april(1)** 96:2
**are(132)** 10:16 12:6 12:23 13:2 13:20 14:4 14:14 14:23 15:5 15:8 15:24 16:11 16:6 17:13 17:24 18:8 19:6 20:21 20:23 27:2 27:12 28:14 28:14 28:20 28:25 30:4 31:13 31:25 32:9 32:11 32:13 32:14 32:19 32:20 33:14 34:1 35:2 39:17 41:4 42:21 42:21 42:22 44:14 45:8 45:20 46:4 46:6 46:7 47:14 47:15 49:16 49:17 49:17 50:4 50:24 50:25 51:15 52:3 52:3 52:3 53:2 55:18 55:25 56:7 56:16 57:18 59:18 61:15 81:20 82:14 82:16 83:5 84:21 85:17 87:16 88:13 89:13 89:9 99:9 99:22 99:24 99:25 100:19 105:8 105:10 106:12 106:23 114:17 115:16 116:16 116:19 116:19 118:21 118:21 119:1 119:11 119:2 119:4 119:11 120:9 120:11 120:12 121:21 122:21 123:24

**area(1)** 77:5
**areas(1)** 34:25
**aren't(3)** 15:22 111:8 112:7
**argue(10)** 38:19 40:5 62:13 62:14 79:4 98:7 109:13 111:18 113:23 118:16

**argued(1)** 10:22 28:25 37:14 53:8 107:10 109:21
**argues(1)** 44:23
**arguing(11)** 25:23 25:23 33:14 79:7 103:11 103:25 109:17 109:17 110:18 110:18 121:19
**argument(40)** 14:9 14:11 20:21 24:17 26:21 28:7 28:13 30:22 33:3 35:17 35:18 36:12 36:23 36:24 37:2 37:3 38:9 39:25 52:15 55:24 55:25 57:7 83:12 83:19 97:24 99:19 101:23 101:24 102:11 102:22 102:25 107:10 108:10 111:1 118:13 118:14 120:6 124:3

**argument's(1)** 15:7
**arguments(30)** 14:19 15:5 15:12 17:23 18:2 30:20 21:24 23:15 23:19 25:15 25:22 27:17 28:19 31:24 32:4 33:3 33:20 36:16 37:8 38:17 40:10 40:11 40:13 58:8 89:14 97:5 100:18 100:19 104:13 109:8 112:9

**arise(1)** 101:1
**arm's(3)** 82:5 85:21 115:2
**arm's-length(1)** 85:16
**armchair(1)** 112:12
**around(6)** 35:25 36:8 49:13 71:14 110:16 115:18
**arrangement(5)** 68:18 72:10 73:4 74:23 82:4
**arrive(1)** 74:23
**arsht(1)** 1:24
**arthur(1)** 5:45
**article(1)** 31:16

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**articulated(1)** 62:17

**aside(2)** 77:21  80:8

**ask(9)** 24:8  53:8  53:13  83:17  92:20  99:7  110:24  112:9  119:10

**asked(17)** 28:21  43:9  64:13  79:1  86:22  87:2  87:16  91:11  92:10  92:12  92:13  96:4  99:10  106:17  106:25  111:1

**asking(1)** 81:20
**aspires(1)** 60:24
**assert(1)** 52:25
**asserted(2)** 47:11  50:10
**assess(2)** 82:13  83:3
**asset(6)** 4:5  6:12  7:4  46:21  62:3  62:4

**assets(7)** 42:21  47:1  47:14  69:23  112:3  112:22  118:19

**assigned(1)** 46:1
**assist(1)** 61:14
**assume(2)** 27:1  51:4
**assumed(1)** 51:17
**assumes(5)** 51:12  51:25  52:1  52:2  52:9
**assumption(2)** 46:6  50:20
**assumptions(5)** 42:23  94:15  94:15  118:10  118:22
**assured(1)** 29:17
**attached(3)** 10:14  44:12  44:13
**attack(4)** 93:10  93:16  93:17  116:12
**attacked(1)** 94:23
**attempt(2)** 82:17  83:2
**attempts(1)** 61:18
**attention(3)** 63:18  66:22  85:7
**attribute(1)** 106:22
**august(3)** 9:18  36:21  102:17
**aurelius(1)** 8:16
**availability(1)** 14:6
**available(16)** 39:12  41:11  41:12  41:18  42:4  46:10  46:23  56:19  57:4  57:13  57:19  57:25  63:21  83:3  104:14  105:1

**ave(1)** 4:21
**avenue(1)** 3:14  3:27  3:34  4:8  4:27

**avoid(11)** 21:7  48:11  75:22  80:24  96:23  96:24  97:11  97:12  97:12  97:13  99:18

**avoided(5)** 97:13  97:14  97:16  97:18  98:7
**avoiding(2)** 31:1  96:20
**avoids(1)** 23:7
**aware(3)** 60:6  60:15  89:13
**away(14)** 59:1  59:2  67:19  68:9  68:21  71:21  73:22  75:7  89:20  99:14  99:22  109:1  110:23  116:21

**babbili(1)** 6:5
**back(29)** 9:4  11:8  12:10  12:19  13:3  13:21  15:9  18:9  24:19  28:1  29:6  33:13  34:9  35:9  35:22  49:22  56:9  61:12  86:5  87:3  94:12  97:22  98:6  108:23  111:5  111:7  113:19  114:17  118:15

**backup(1)** 99:17
**bad(2)** 25:6  99:24
**badke-berkow(1)** 5:9
**baffour(1)** 6:21
**baked(1)** 1:19
**ball(1)** 65:23
**ballooning(4)** 56:10  56:17  56:20  58:10
**ballpark(1)** 94:20
**bandied(1)** 62:8
**bank(7)** 3:14  3:38  6:28  8:12  64:7  64:11  64:12
**bankruptcy(17)** 1:1  1:20  16:1  18:14  55:9  67:16  67:21  67:25  68:10  68:21  70:4  73:15  75:23  76:5  79:19  80:24  116:19

**bansal(1)** 6:25
**bar(3)** 12:17  23:3  37:23
**barbara(1)** 5:18
**barclays(1)** 7:28
**bargain(1)** 68:9
**bargaining(1)** 3:48
**based(7)** 29:4  38:13  43:12  43:22  89:24  89:25  94:5
**basic(1)** 42:14
**basically(1)** 20:8
**basis(7)** 66:12  66:15  67:1  70:13  79:8  99:9  100:21
**bassett(1)** 7:21
**battery(1)** 2:35
**battle(2)** 29:5  29:8
**bayard(1)** 4:19
**bear(2)** 85:9  85:14
**beat(1)** 89:4
**beauty(3)** 60:1  66:9  80:1
**because(40)** 10:11  16:18  18:12  20:12  20:13  21:6  23:18  24:12  24:18  24:23  25:6  25:13  26:5  26:11  28:14  29:2  31:18  32:17  33:13  35:9  35:25  36:1  36:5  37:2  37:3  37:24  39:7  39:21  42:18  42:23  44:3  44:11  45:1  46:20  47:3  47:19  48:18  49:16  49:25  50:2  52:21  54:20  55:23  57:22  59:13  60:25  62:1  67:15  69:18  74:1  76:24  78:10  79:5  80:4  82:10  83:8  83:12  84:24  85:3  85:5  85:12  87:21  90:8  90:19  91:7  91:10  92:19  99:8  99:11  101:25  103:12  104:11  104:20  106:7  106:14  106:24  107:20  107:22  110:2  116:7  116:14  116:24  117:18  118:5  118:7

**become(1)** 47:20
**becomes(2)** 20:14  35:13
**been(43)** 14:7  22:18  25:4  25:4  25:5  42:15  48:6  49:4  50:9  52:13  52:16  56:11  56:18  56:20  59:4  62:7  63:7  63:15  63:24  77:8  77:22  77:22  86:20  87:10  96:1  96:5  96:5  103:9  105:15  106:3  106:5  108:16  109:17  109:17  109:18  109:20  109:21  109:21  119:6  119:14  121:1  122:2  123:11

**before(45)** 1:19  9:8  9:20  10:8  11:10  12:10  15:5  15:17  17:9  20:22  27:14  28:19  30:25  36:5  41:5  41:19  41:21  42:20  45:6  45:15  45:23  54:13  54:18  54:18  56:6  56:22  61:5  64:9  64:24  65:7  68:3  84:19  86:13  86:14  97:5  97:22  99:3  99:13  102:4  103:1  105:11  112:10  117:17  123:21

**began(2)** 34:5  86:10
**beget(1)** 59:7
**begin(3)** 35:8  64:24  101:20
**behalf(3)** 34:21  44:17  64:7
**being(80)** 9:8  13:11  14:1  14:19  19:11  20:19  28:25  31:3  31:14  32:7  32:10  32:13  37:16  41:14  48:10  53:24  56:16  84:20  94:16  96:7  102:14  102:14  102:21  111:21  112:9  114:19  115:3  115:4  117:23  119:1

**belief(2)** 89:24  89:25
**believe(26)** 11:18  30:17  34:14  41:23  42:2  55:25  58:13  61:15  68:19  69:8  69:14  71:8  72:16  74:15  76:21  77:23  77:24  77:25  78:2  78:4  78:7  82:12  93:17  93:22  102:18  120:23

**believer(1)** 59:6
**belknap(1)** 3:25
**below(2)** 21:5  102:3
**benchmark(2)** 71:6  74:25
**beneficial(5)** 20:14  25:13  26:5  32:14  116:24
**benefit(14)** 26:12  26:22  49:8  49:9  49:12  50:10  50:14  55:5  58:4  72:10  95:14  96:22  113:9  114:7

**benefits(5)** 27:21  32:15  49:6  60:10  119:9
**berke(1)** 7:9
**bespoke(1)** 63:4
**best(10)** 20:4  28:3  29:15  36:7  36:10  37:6  39:17  44:4  85:17  102:24

**best-case(1)** 44:5
**better(10)** 20:8  23:21  24:1  24:10  40:4  55:8  82:21  102:10  114:22  117:2

**betting(1)** 20:9
**between(12)** 21:11  38:14  49:5  61:15  62:5  70:8  80:25  83:23  86:16  86:23  94:25  120:14

**beyond(2)** 18:1  19:9
**big(6)** 33:5  33:16  87:18  104:5  117:13  117:14
**bigger(5)** 114:8  114:9  114:11  116:17  120:25
**biggest(1)** 94:17
**billion(36)** 14:17  19:23  20:3  22:7  22:11  26:7  28:16  28:20  28:23  36:22  37:4  38:11  39:10  39:12  39:20  39:21  39:24  46:10  47:12  52:9  52:25  56:13  56:24  57:3  57:13  79:12  90:6  95:1  99:4  99:22  104:2  104:9  104:10  104:23  118:18  123:6

**billion-and(1)** 102:12
**billion-and-growing(1)** 104:7
**billion-dollar(4)** 85:3  85:4  85:6  116:15
**billion-ish(1)** 78:15
**billions(2)** 33:5  110:8
**bilmes(1)** 7:13
**bind(2)** 72:1  79:20
**binder(1)** 120:3
**binders(2)** 12:8  108:17
**birch(1)** 6:20
**bit(8)** 33:2  39:11  45:17  47:17  71:22  74:7  77:4  113:2
**blackwell(1)** 5:35
**block(2)** 106:15  107:14
**blowup(1)** 29:25
**blue(2)** 82:24  120:24
**board(16)** 77:17  80:13  90:8  90:9  90:9  90:15  90:17  95:18  116:1  116:8

**bogging(1)** 33:1
**boil(1)** 23:9
**boldi(1)** 48:22
**bond(7)** 10:11  13:12  13:23  14:4  47:9  47:10  55:14
**bond's(1)** 71:12
**bondholder(9)** 2:18  17:12  20:9  24:9  24:21  24:22  25:10  25:10  55:6
**bondholder's(1)** 98:17
**bondholders(29)** 5:31  9:25  14:23  20:21  24:22  25:25  26:6  26:20  30:10  32:19  32:20  34:23  55:2  56:15  56:15  58:3  59:1  59:11  59:15  64:19  66:7  67:10  70:2  75:7  75:11  76:24  77:1  98:22  109:15  110:12

**bonds(19)** 41:10  47:6  47:15  55:14  57:21  58:10  59:18  62:6  62:21  68:20  86:6  86:10  88:5  88:11  88:16  98:2  100:22  106:4  123:5

**borders(2)** 35:18  35:21
**borne(1)** 12:16
**both(11)** 14:16  15:21  37:21  38:17  49:16  50:11  60:7  70:23  75:18  104:12  111:22

**botter(1)** 3:11
**bottom(1)** 51:21
**box(1)** 51:21
**bradley(1)** 2:13
**brain(1)** 46:1
**braind(1)** 6:33
**brass(1)** 6:37
**breaking(1)** 61:14
**breathtaking(2)** 71:4  71:6
**brent(1)** 1:36
**brian(1)** 4:26
**brickley(1)** 6:41
**brief(22)** 22:2  22:12  24:25  32:3  38:3  38:25  45:11  61:25  62:2  64:10  66:25  67:2  71:12  72:8  78:18  86:11  98:15  100:8  100:9  100:11  111:14  118:16

**briefed(5)** 25:4  35:5  103:9  108:17  115:13
**briefing(4)** 22:1  22:8  22:10  24:24
**briefly(1)** 103:22
**briefs(8)** 12:9  15:24  44:14  89:16  89:16  89:17  89:21  90:1

**brigade(1)** 8:20
**bring(14)** 15:16  22:20  29:11  29:13  35:24  53:11  63:18  97:20  99:10  105:5  105:12  113:10  116:14  118:17

**bringing(1)** 32:7
**brings(3)** 15:19  22:25  27:21
**britvan's(1)** 50:22
**britvin(8)** 39:10  51:7  57:8  57:8  57:12  58:18  107:8

**britvin's(1)** 28:19
**broader(1)** 60:23
**broadway(1)** 3:41
**brock(1)** 5:35
**bromley(5)** 13:2  38:14  39:18  52:14  86:16
**brought(7)** 34:14  44:20  54:13  54:18  56:13  97:22  102:12

**brow(1)** 117:6
**bryant(1)** 3:13
**buchanan(1)** 2:4
**built(1)** 96:10
**bullen(1)** 4:48
**bullying(1)** 66:23
**bunch(2)** 73:24  76:9
**burden(4)** 16:8  85:14  85:19  85:20
**burdens(2)** 33:20  34:2
**business(7)** 14:15  14:17  16:11  16:12  18:16  62:15  72:11

**but(132)** 9:7  10:9  10:18  10:20  11:8  11:16  12:10  12:15  13:2  15:24  16:10  17:1  17:5  17:14  17:23  18:5  17:19  19:20  20:24  21:14  21:17  22:24  23:9  23:15  24:25  25:21  26:2  27:10  27:12  28:10  30:5  30:12  31:23  31:24  32:4  32:19  34:25  35:8  36:14  38:1  38:12  39:11  39:15  40:8  40:11  40:12  42:6  42:13  43:3  43:16  44:6  45:7  45:10  45:21  46:2  47:18  48:10  48:19  50:18  51:16  51:17  52:23  53:12  54:5  56:9  57:7  57:14  58:1  59:13  61:7  62:3  62:11  63:7  63:17  63:20  66:22  67:13  69:16  70:4  74:7  74:18  76:23  78:25  80:22  82:24  83:13  84:18  84:15  84:19  84:22  86:15  86:19  87:9  87:15  89:12  91:10  91:19  94:4  94:12  94:14  96:12  97:10  98:16  101:2  101:17  101:20  102:13  102:15  102:19  102:20  102:25  103:6  104:6  105:3  105:7  105:14  107:13  108:1  108:22  109:10  110:23  111:16  113:14  114:4  114:13  116:6  118:8  121:11  121:18  124:1

**cala(1)** 49:15
**calculation(6)** 78:16  78:20  79:5  79:9  106:21  106:23
**calculations(1)** 78:20
**calculator(1)** 43:2
**calendar(1)** 87:18
**calendars(2)** 12:14  29:25
**call(6)** 19:1  32:18  41:3  77:9  87:20  102:18
**called(1)** 29:21
**came(20)** 12:19  12:21  28:2  28:15  36:5  44:22  61:8  79:13  86:2  86:10  86:11  90:1  96:25  99:5  99:7  102:1  112:4  113:19  123:14

**camouflage(2)** 68:18  81:5
**can(70)** 9:12  10:5  15:6  15:22  24:15  25:7  25:15  25:16  27:9  27:14  29:10  29:11  30:18  32:15  33:5  38:17  42:24  43:6  50:22  57:22  65:6  66:12  68:13  70:18  72:21  73:5  77:3  77:23  78:11  80:24  81:3  81:15  81:16  81:22  81:25  82:4  82:23  93:3  94:12  94:13  95:17  96:11  97:10  101:12  101:20  103:20  107:3  108:24  109:2  109:5  109:13  109:15  109:25  112:17  117:7  119:22  119:23  119:24  123:19  123:20  123:21  123:22

**can't(32)** 15:3  15:4  18:3  27:24  28:5  29:4  35:12  35:23  35:25  37:9  38:12  42:16  42:17  46:12  48:10  48:14  70:7  70:7  72:20  72:22  72:25  78:9  79:6  83:3  100:20  108:24  109:12  110:7  113:7  113:9  118:25

**canada(15)** 1:17  14:12  32:1  32:7  47:10  52:18  52:19  52:22  59:1  59:2  110:14

**canadian(44)** 12:21  12:23  13:19  13:21  15:1  19:3  23:16  23:17  24:3  24:20  25:19  26:17  27:23  28:2  28:13  29:21  31:6  31:15  32:4  32:6  32:10  32:17  32:19  32:20  32:22  33:8  38:3  39:7  42:22  47:16  53:1  62:1  66:2  66:2  105:9  108:22  108:23  111:24  111:24  112:10  116:19  118:13  118:19  118:20

**canadians(2)** 61:02  64:9
**candid(2)** 71:22  72:6
**candlewood(1)** 8:4
**cannot(11)** 37:8  68:19  68:20  72:16  78:4  78:7  99:24  92:25  102:15  111:14  118:16

**canvas(1)** 17:1
**canvass(6)** 16:22  66:10  66:13  69:10  72:19  73:7
**canvassing(3)** 17:2  66:12  81:23
**cap(11)** 19:20  19:23  20:13  21:18  23:25  23:25  26:11  26:16  26:19  81:11  114:6

**capable(2)** 92:8  92:9
**capacity(2)** 53:23  55:11
**capital(13)** 6:8  6:16  6:20  6:36  7:12  7:16  7:24  7:32  7:36  8:8  8:16  8:20  62:4

**capmark(2)** 15:23  73:25
**capped(4)** 26:22  57:21  57:22  95:12
**capping(1)** 58:10
**capture(1)** 119:3
**cards(1)** 28:6
**care(5)** 11:25  52:19  85:6  90:7  90:23
**careful(1)** 106:12
**carefully(2)** 10:25  102:25
**carries(1)** 123:3
**cary(1)** 16:8
**case(100)** 1:5  9:14  12:10  15:23  15:23  16:10  16:15  16:21  18:5  18:21  19:4  21:1  21:9  22:6  28:3  29:10  29:13  31:14  32:21  34:1  34:5  35:15  40:9  42:14  43:11  43:21  43:23  43:25  44:2  44:11  44:12  44:15  44:15  44:19  45:12  55:13  56:7  56:11  57:24  58:16  60:4  60:6  60:15  60:16  61:16  69:9  69:18  69:21  70:19  70:24  71:4  73:21  74:6  74:7  74:14  74:25  75:3  75:5  75:6  75:7  75:9  76:1  77:5  77:15  77:17  78:10  80:10  80:20  81:16  82:16  84:22  85:24  87:12  87:14  87:14  100:25  102:10  103:24  104:14  105:8  105:16  106:7  109:13  109:16  109:24  111:8  111:10  111:14  111:15  115:7  116:19  116:21  117:7  119:18  120:9  120:19  120:11  123:11  123:18

**cases(35)** 15:24  17:24  18:8  18:21  22:18  22:25  32:12  32:13  33:23  34:11  37:9  55:9  60:5  60:16  60:19  69:5  70:8  70:11  70:12  70:22  70:23  73:24  74:2  83:12  105:23  109:10  111:8  111:19  113:11  116:4  119:6  119:7  119:14  119:17

**cash(9)** 39:12  49:15  49:20  51:7  69:22  92:1  92:14  104:25  105:1
**cassels(1)** 5:35
**casually(1)** 73:7
**caution(1)** 76:6
**cautioned(1)** 75:10
**cec(3)** 13:1  31:19  39:8
**cecs(3)** 14:31  33:4  33:14
**cede(1)** 64:9
**center(1)** 122:16
**certain(4)** 52:14  75:21  76:16  88:13
**certainly(22)** 10:10  10:23  12:8  17:4  19:2  20:16  26:2  27:7  27:10  31:24  42:17  46:10  65:1  87:2  89:12  89:19  90:18  93:24  94:13  96:8  96:11  108:20

**certainties(1)** 115:22
**certainty(12)** 10:1  26:19  90:25  96:19  96:21  96:22  96:23  98:8  98:16  98:19  105:5  105:5

**certification(1)** 124:7
**certify(1)** 124:8
**chambers(1)** 105:10
**chance(3)** 20:10  94:20  101:9
**change(2)** 35:18  36:3
**changed(2)** 37:12  44:24
**changes(2)** 40:3  114:18
**changing(1)** 44:25
**chapman(1)** 2:41
**chapter(8)** 1:8  69:1  69:2  69:12  69:24  70:6  76:1  79:21  79:22  102:9

**charged(1)** 15:9
**charles(1)** 2:34
**chart(4)** 39:10  46:3  46:18  82:22
**chase(1)** 2:23
**cheat(1)** 45:20
**check(1)** 51:22

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| checked(1) 116:4 | | committee(26) 3:8 5:21 5:30 23:15 30:16 53:22 54:2 54:14 54:16 54:20 54:21 54:22 54:23 54:24 55:1 55:4 55:12 55:15 55:17 76:13 98:23 98:24 121:7 121:7 121:8 121:10 | | conventions(1) 110:15 | | cutting(1) 33:13 | |
| chetan(1) 6:25 | | | | conversation(1) 86:18 | | d-1(1) 88:13 | |
| chief(1) 105:22 | | | | conversations(41) 94:16 110:6 110:13 110:22 | | d-5(1) 88:13 | |
| chilmark(6) 88:3 92:9 92:18 92:18 92:20 112:18 | | | | convert(1) 80:10 | | d.j(1) 4:39 | |
| china(1) 49:15 | | | | converted(1) 102:9 | | daniel(2) 3:26 5:10 | |
| choice(1) 30:11 | | committees(1) 55:10 | | convince(4) 36:24 37:11 37:14 104:4 | | data(2) 1:43 43:22 | |
| choosing(2) 43:23 97:19 | | common(4) 12:13 13:23 14:4 52:25 | | cooperation(2) 61:9 61:9 | | date(7) 9:9 9:21 10:2 10:5 67:22 68:1 124:14 | |
| chose(5) 43:3 103:3 107:19 118:13 118:14 | | communication(2) 90:14 98:25 | | coram(5) 15:23 30:15 74:16 74:17 74:19 | | dated(1) 119:21 | |
| chris(1) 3:19 | | communications(2) 87:3 87:4 | | cordo(1) 1:26 | | david(3) 3:2 3:11 8:21 | |
| christy(1) 124:14 | | company(6) 6:24 6:40 13:22 60:12 60:20 90:11 | | core(3) 14:5 101:2 120:5 | | davidson(1) 5:39 | |
| chronologies(1) 12:15 | | competent(1) 92:10 | | corporation(3) 7:44 55:5 58:5 | | day(12) 11:7 14:25 23:23 25:14 29:24 36:23 37:4 37:11 97:4 98:11 113:1 114:9 | |
| chung(1) 6:29 | | complaining(1) 30:17 | | correct(2) 123:7 124:8 | | | |
| circuit(9) 11:54 21:7 22:2 44:19 44:20 69:7 75:10 85:24 93:25 | | complaint(1) 30:19 | | correction(1) 57:11 | | days(15) 29:25 38:5 38:8 59:10 64:15 85:9 89:2 89:3 99:15 110:12 111:4 111:12 113:20 114:14 | |
| | | complete(3) 83:19 87:1 116:2 | | cost(10) 21:25 22:1 22:11 22:11 26:23 72:13 96:23 97:2 97:6 112:17 | | | |
| circuit's(1) 39:3 76:6 103:7 | | completely(1) 91:18 | | | | deal(12) 17:25 37:9 56:5 58:2 59:20 81:10 81:17 81:18 85:10 103:20 106:11 113:14 | |
| circumstance(1) 107:12 | | complex(2) 31:14 58:16 | | costly(1) 31:14 | | | |
| circumstances(5) 9:12 37:12 83:9 88:13 112:22 | | complexity(5) 18:10 18:23 21:21 | | costs(6) 22:2 23:7 33:1 72:9 96:25 97:16 | | | |
| cite(4) 73:24 74:15 106:18 122:23 | | complicated(2) 34:5 100:6 | | could(51) 17:8 19:13 20:2 22:6 23:20 23:20 23:25 26:6 27:11 27:11 33:10 35:2 42:1 42:10 42:7 43:2 43:5 48:7 49:18 51:16 56:5 56:23 58:19 58:22 64:18 66:14 67:1 73:7 77:14 77:19 80:7 80:9 80:12 90:4 101:24 102:5 103:13 103:15 103:18 105:5 106:4 106:6 107:5 111:19 112:20 112:23 115:14 115:19 118:9 118:19 | | dealing(1) 27:7 | |
| cited(2) 15:24 75:9 | | complies(2) 72:23 81:22 | | | | deals(1) 56:4 | |
| cites(4) 44:11 103:1 103:1 112:8 | | comply(1) 76:5 | | | | dealt(5) 36:4 55:18 55:21 56:8 82:12 | |
| citigroup(1) 6:32 | | compose(1) 80:12 | | | | debenture(2) 3:25 5:54 | |
| citing(1) 103:2 | | comprised(1) 55:1 | | | | debtor(17) 18:1 32:21 66:7 70:12 73:21 82:16 82:17 95:25 96:8 96:8 102:2 109:10 111:23 116:17 122:12 122:20 | |
| claim(58) 12:13 12:13 13:12 13:23 14:4 17:12 17:14 17:15 17:15 17:16 17:21 18:2 18:7 19:11 22:7 25:10 25:18 25:25 26:7 32:1 46:21 46:23 47:3 47:8 47:10 47:10 47:12 50:13 50:15 50:20 50:24 52:18 52:22 52:24 58:2 58:4 58:5 59:2 67:11 67:14 68:8 94:25 95:11 95:13 95:13 98:3 101:25 102:2 102:8 104:8 104:22 106:22 106:23 115:14 116:15 116:16 117:4 117:16 | | compromise(1) 30:24 | | | | | |
| | | compromised(1) 117:23 | | couldn't(3) 24:7 105:6 105:7 | | debtors(58) 1:12 1:24 2:33 15:13 15:16 16:8 16:11 16:11 19:3 19:6 23:18 24:3 27:1 27:23 31:6 31:13 32:5 32:6 32:12 32:22 33:8 33:21 34:1 34:7 34:11 34:13 50:17 62:14 65:2 66:2 67:10 68:20 71:22 71:23 72:6 76:8 78:18 78:21 81:20 82:2 85:18 97:7 100:21 102:1 104:19 108:22 111:24 112:10 113:19 115:20 116:3 116:4 116:5 116:7 116:19 118:13 118:20 120:23 | |
| | | compromises(1) 108:2 | | counsel(5) 38:3 62:3 94:23 95:5 95:17 | | | |
| | | computer(1) 93:5 | | couple(6) 24:17 38:5 58:24 82:9 107:11 | | | |
| | | conaway(1) 2:39 | | course(18) 11:6 23:12 38:11 38:12 38:15 40:5 40:7 50:4 59:12 62:7 63:20 64:11 66:21 83:18 84:21 95:7 99:15 100:14 | | | |
| class(1) 104:7 | | conceded(2) 90:16 90:18 | | | | | |
| classes(1) 76:16 | | concern(10) 33:25 56:20 69:20 70:9 70:21 70:25 74:14 75:2 76:11 80:20 | | court(196) 1:1 9:3 9:7 9:19 9:22 9:25 10:4 10:6 10:8 10:13 10:15 10:19 10:22 11:2 11:6 11:13 11:21 11:25 12:4 12:12 12:23 13:7 13:12 14:13 16:3 16:4 16:10 16:15 16:24 17:9 17:25 25:22 26:2 27:1 27:5 28:2 28:15 31:17 31:20 32:11 32:24 34:18 34:22 35:1 35:4 35:20 35:23 36:5 36:7 36:12 36:19 37:10 38:21 38:24 39:3 40:17 40:21 40:25 41:4 41:9 42:20 42:25 43:18 44:21 45:5 45:10 45:10 45:11 45:14 46:19 47:3 47:7 48:1 48:16 48:20 48:24 50:12 51:2 53:8 53:11 53:13 53:15 53:17 54:8 54:13 57:2 57:10 59:22 60:18 61:21 61:24 62:10 62:24 63:6 63:16 63:22 64:2 64:5 64:24 64:24 65:8 65:12 65:16 65:19 65:22 66:5 66:18 68:13 68:14 68:23 72:18 72:25 73:3 73:10 73:13 73:16 74:10 75:3 75:14 75:16 75:19 77:11 77:13 77:23 77:25 77:25 78:1 78:2 78:4 78:6 78:7 81:3 81:7 81:11 83:11 83:15 83:22 84:1 84:5 84:9 87:9 90:16 94:24 96:16 97:18 98:6 99:5 99:7 99:11 100:1 100:12 100:16 101:5 101:7 101:9 101:11 101:13 102:7 102:12 102:18 103:6 103:14 103:25 104:16 105:2 105:9 106:12 107:8 107:9 108:3 108:6 108:10 111:6 114:21 115:10 117:13 117:17 119:11 119:16 119:25 120:4 120:7 120:17 120:20 120:21 121:3 121:23 122:7 122:12 122:10 122:22 122:25 123:10 123:17 123:20 | | deal(12) ... | |
| classic(1) 70:8 | | concerned(3) 31:13 32:9 33:2 | | | | debtwire(1) 7:8 | |
| clear(26) 15:25 29:12 30:25 34:6 35:11 38:10 56:18 56:23 63:23 66:11 66:11 66:14 67:9 71:23 73:21 77:21 79:15 92:6 92:15 93:1 98:24 98:25 101:20 104:24 105:4 109:22 | | concerns(3) 30:18 80:19 111:11 | | | | december(1) 63:17 | |
| | | concession(6) 113:17 113:21 114:8 114:9 114:10 120:24 | | | | decide(15) 13:7 18:3 29:4 31:18 37:14 59:22 59:23 60:2 72:25 81:4 81:7 83:5 100:21 101:3 123:18 | |
| | | concessions(6) 29:24 30:8 30:14 34:9 114:14 114:18 | | | | decided(6) 28:17 36:25 37:1 37:15 38:4 41:15 | |
| clearly(6) 34:7 48:12 60:13 75:17 75:19 102:25 | | conclude(7) 40:13 81:20 82:4 82:14 120:10 120:12 120:13 | | | | decides(1) 40:4 | |
| cleary(5) 1:31 12:17 87:25 98:23 123:5 | | | | | | deciding(1) 97:18 | |
| clerk(2) 9:2 65:11 | | concluded(1) 41:24 82:20 94:19 | | | | decision(1) 16:2 16:6 16:25 41:22 42:18 69:6 72:11 72:17 97:14 99:19 123:22 | |
| clients(1) 101:16 | | concludes(1) 82:11 | | court's(6) 9:17 16:22 20:16 44:14 63:18 75:19 | | | |
| clock(2) 89:4 89:5 | | conclusion(12) 14:8 15:17 22:25 29:14 61:6 69:12 76:22 81:16 81:17 99:8 113:11 114:3 | | courthouse(1) 67:13 | | | |
| close(4) 29:1 33:10 61:11 88:19 | | | | courtroom(1) 1:10 109:23 | | deemed(1) 76:17 | |
| closed(1) 66:13 | | conduct(4) 42:5 42:8 42:23 117:11 | | courts(7) 14:16 22:19 23:10 75:20 75:20 105:23 | | default(4) 20:25 21:3 21:5 21:13 | |
| closely(4) 66:8 112:5 112:6 112:9 | | conducted(2) 42:7 45:25 | | covered(1) 96:2 | | defendant(1) 44:17 | |
| closer(1) 105:13 | | conference(2) 36:22 72:4 | | craft(1) 73:21 | | defer(3) 16:11 18:16 98:10 | |
| closing(6) 11:11 11:11 28:19 52:15 107:10 109:8 | | conferences(1) 114:23 | | crazy(2) 28:13 29:18 | | deferential(2) 16:13 34:6 | |
| closings(1) 12:3 | | confidence(1) 45:23 | | created(3) 26:16 40:19 71:4 | | definition(2) 84:21 99:24 | |
| code(11) 67:16 67:21 68:1 68:11 68:21 70:4 73:15 75:23 76:5 79:19 80:24 | | confident(3) 120:10 120:11 120:13 | | credibility(1) 116:12 | | delaware(7) 1:2 1:12 3:34 4:21 9:1 20:18 116:8 | |
| | | confidential(1) 118:4 | | credible(2) 42:11 106:10 | | delay(4) 18:23 21:23 22:17 31:5 | |
| | | confirm(1) 76:9 | | crt(1) 6:4 | | delegate(1) 72:18 | |
| cognizant(1) 24:5 | | confirmable(1) 76:22 | | creditor(12) 6:24 23:15 24:9 29:9 32:1 32:2 32:17 51:4 55:22 60:22 100:24 121:9 | | delegated(1) 81:23 | |
| coin(1) 20:8 | | confirmation(9) 68:15 68:22 71:19 72:20 73:3 73:6 74:8 74:11 78:3 | | | | delegating(1) 71:8 | |
| coined(1) 87:19 | | | | creditors(60) 5:22 13:14 14:2 14:5 17:25 18:1 18:24 18:25 19:1 23:14 23:22 24:19 25:2 29:14 32:18 32:19 32:20 33:19 34:2 52:14 53:22 54:1 54:1 54:4 54:14 54:16 54:20 54:24 55:4 55:10 55:22 55:25 56:10 56:14 56:20 58:7 58:12 58:13 58:23 59:1 60:3 60:5 67:18 67:23 70:2 70:20 76:10 76:17 91:2 98:2 105:6 110:15 115:7 115:9 115:14 116:9 121:7 121:7 121:8 | | deleted(1) 9:23 | |
| coleman(54) 2:11 65:14 65:15 65:16 65:18 65:20 65:23 66:1 66:1 66:6 66:20 73:11 73:12 73:14 73:17 74:11 75:4 75:15 77:14 78:7 81:10 81:13 83:14 83:17 83:25 84:2 84:11 84:17 98:12 101:18 101:22 103:3 110:3 112:5 117:5 119:12 119:13 119:17 120:1 120:5 120:8 120:18 120:21 121:4 121:12 121:20 121:22 122:1 122:4 122:6 122:8 122:11 122:22 123:16 | | confirmed(1) 70:7 | | | | deleting(1) 9:13 | |
| | | confronted(1) 45:7 | | | | deliberation(1) 93:1 | |
| | | confuse(1) 45:16 | | | | demand(5) 83:4 86:20 86:22 86:25 87:5 | |
| | | connection(3) 36:6 54:17 64:11 | | | | demanded(2) 30:9 30:10 | |
| | | conscience(1) 70:4 | | | | demands(2) 99:12 113:13 | |
| | | conscious(1) 84:3 | | | | demonstrating(1) 85:21 | |
| | | consciously(2) 48:10 48:11 | | | | demonstrative(5) 19:25 28:20 40:19 45:19 57:16 | |
| coleman's(2) 103:22 108:19 | | consent(6) 75:7 78:9 108:25 115:19 115:20 115:20 | | | | denies(1) 110:25 | |
| colleague(1) 84:11 | | consented(2) 70:22 71:1 | | | | dennis(2) 2:20 7:41 | |
| collected(1) 31:9 | | consequences(1) 82:3 | | | | deny(2) 79:10 83:10 | |
| collection(2) 18:20 21:20 | | consider(10) 21:25 41:4 45:22 45:25 53:3 54:13 91:2 95:18 97:1 99:12 | | crichton(1) 3:7 | | depending(1) 16:25 | |
| collectively(1) 47:15 | | | | crichlow(1) 3:2 | | depleted(1) 112:3 | |
| collier(1) 6:45 | | | | criminal(1) 44:17 | | deposition(8) 42:24 45:7 45:7 45:24 48:7 48:8 51:17 106:17 | |
| colorfully(1) 106:1 | | considerable(3) 57:19 58:1 58:1 | | critical(1) 70:10 | | | |
| column(2) 48:23 51:6 | | consideration(5) 15:18 46:15 90:7 98:18 99:18 | | criticism(2) 105:25 106:14 | | | |
| columns(2) 49:16 50:11 | | considered(5) 25:15 25:17 40:13 89:2 90:12 | | criticize(4) 77:8 104:6 107:20 107:21 | | depth(1) 69:9 | |
| combination(1) 89:4 | | consistent(2) 22:14 77:22 | | criticized(1) 106:14 | | derailed(1) 78:22 | |
| come(29) 11:8 22:24 25:5 28:4 33:17 34:12 35:9 37:6 42:20 42:22 43:4 49:22 51:12 56:6 56:9 81:16 86:1 94:17 99:8 103:3 103:16 103:18 106:25 113:23 114:3 114:11 118:9 119:7 | | consistently(1) 60:4 | | cro(3) 59:21 60:11 60:20 | | derek(1) 1:21 | |
| | | consistuency(1) 51:24 | | cross(2) 45:24 118:16 | | described(3) 87:7 87:20 90:3 | |
| | | constituencies(1) 60:22 | | cross-border(1) 13:23 | | describes(1) 46:6 | |
| | | consultation(1) 90:13 | | crossover(2) 56:15 58:10 | | designed(2) 10:10 79:15 | |
| comes(5) 49:8 49:9 67:13 96:22 102:4 | | consulted(3) 71:1 115:11 121:7 | | | | desire(3) 80:21 80:22 114:21 | |
| comfort(1) 106:20 | | contentions(1) 110:13 | | crystallizes(1) 113:25 | | desperate(1) 89:4 | |
| comfortable(1) 71:8 | | | | curious(1) 77:3 | | despite(1) 108:12 | |
| coming(10) 24:20 25:22 25:23 27:8 31:15 32:11 32:11 95:15 103:19 117:13 | | context(11) 39:2 101:1 103:6 103:15 103:16 103:18 103:18 106:24 111:5 111:11 119:10 | | currency(1) 70:15 | | detail(2) 62:17 68:6 74:18 98:13 | |
| | | | | current(1) 13:17 | | detailed(1) 92:24 | |
| | | | | cursory(1) 83:2 | | determination(8) 20:18 60:8 69:18 72:24 73:2 78:1 78:3 90:21 | |
| comments(5) 53:24 95:11 98:14 122:21 | | contexts(2) 58:18 103:13 | | cushion(2) 70:15 70:25 | | | |
| | | continue(5) 24:3 35:1 45:3 123:18 123:25 | | cut(1) 26:14 | | determine(11) 17:2 42:3 49:6 68:13 68:14 77:23 81:22 93:3 93:7 103:8 118:21 | |
| | | continued(6) 2:2 4:2 5:2 6:2 7:2 8:2 | | | | | |
| | | continues(1) 99:21 | | | | determined(3) 94:16 113:18 118:9 | |
| | | continuing(1) 5:43 | | | | detriment(1) 123:19 | |
| | | continuum(1) 57:24 | | | | deutsche(1) 8:12 | |
| | | contract(29) 14:24 15:6 20:2 20:4 20:19 20:24 21:3 21:12 21:15 21:17 25:25 27:19 41:16 41:22 55:23 59:13 60:6 67:24 76:9 81:8 82:24 89:14 97:24 98:3 98:7 105:12 109:7 115:16 117:16 | | | | develop(1) 91:24 | |
| | | | | | | developed(3) 84:13 | |
| | | | | | | developing(1) 93:12 | |
| | | contracts(3) 20:22 25:15 58:7 | | | | deviations(1) 75:17 | |
| | | contractual(2) 56:1 63:3 | | | | diamond(1) 5:40 | |
| | | contrarian(1) 7:24 | | | | diax(1) 1:43 | |
| | | contrary(1) 76:5 | | | | | |
| | | control(1) 18:1 | | | | | |

| Word | Page:Line |
|------|-----------|
| dictate(1) 79:16 | |
| dictates(1) 80:16 | |
| did(63) 45:8 47:9 51:3 53:12 61:5 63:22 76:9 79:5 79:5 88:11 90:5 90:16 91:4 91:4 91:5 91:13 91:15 91:15 91:15 91:16 91:23 91:24 91:24 91:25 92:17 92:17 92:18 92:19 92:21 92:21 92:23 92:24 92:25 93:1 93:2 93:2 93:4 93:5 93:5 93:6 94:2 94:3 94:4 94:4 94:6 94:14 95:10 95:21 96:12 96:12 96:13 97:5 100:15 100:25 104:3 106:22 110:24 111:3 119:12 121:10 121:14 123:8 123:8 | |
| didn't(38) 21:9 37:22 41:4 45:4 51:17 51:18 53:3 53:11 65:20 76:8 82:17 83:2 86:14 86:19 86:21 89:21 91:4 92:2 92:3 92:4 92:5 92:6 92:20 94:12 94:13 95:18 97:1 104:5 105:8 106:7 107:6 107:7 107:22 112:17 112:17 114:20 115:18 118:6 | |
| didn't(1) 91:23 | |
| difference(2) 21:11 120:14 | |
| different(23) 16:23 17:23 18:2 27:17 28:25 31:25 32:6 33:16 33:17 33:19 39:14 39:15 41:11 51:23 67:12 69:11 94:7 103:13 107:2 107:4 113:22 117:4 117:19 | |
| difficult(1) 60:3 | |
| difficulty(2) 18:20 21:20 | |
| digress(1) 54:19 | |
| dilemma(1) 77:6 | |
| diligence(1) 90:23 | |
| diminishing(1) 123:24 | |
| dimsdale-gill(1) 4:35 | |
| direct(1) 68:17 | |
| direction(2) 26:15 37:13 | |
| directionality(1) 121:17 | |
| directive(1) 51:15 | |
| directly(5) 41:6 55:18 68:11 80:10 116:12 | |
| directors(4) 90:8 90:9 90:9 90:15 | |
| disadvantage(1) 123:25 | |
| disagree(1) 83:6 | |
| disagrees(2) 82:11 109:23 | |
| disallowed(1) 67:18 | |
| discovery(2) 97:11 99:10 | |
| discrete(2) 81:4 103:8 | |
| discretion(4) 16:3 16:4 83:9 83:10 | |
| discussed(5) 31:10 63:7 87:10 87:10 110:24 | |
| discussion(11) 38:23 63:14 86:15 86:16 86:17 88:6 98:21 99:1 99:3 99:4 106:10 | |
| discussions(1) 113:16 | |
| dispassionate(1) 54:23 | |
| dispose(1) 71:7 | |
| dispositive(1) 97:12 | |
| dispute(20) 13:22 16:18 19:18 22:22 22:10 22:11 36:15 41:9 41:9 61:19 61:13 75:6 91:24 102:12 102:13 102:15 102:20 108:16 113:5 113:7 | |
| disputed(1) 102:16 | |
| disputes(1) 111:11 | |
| distinction(2) 70:8 83:23 | |
| distinctions(1) 111:14 | |
| distinguishable(2) 17:24 73:25 | |
| distract(1) 80:2 | |
| distribute(1) 126:24 | |
| distribute(1) 56:19 | |
| distributed(2) 29:19 64:16 | |
| distribution(4) 14:2 57:5 57:20 83:3 | |
| district(3) 1:2 44:14 74:6 | |
| dividends(2) 49:18 51:9 | |
| docket(1) 11:23 62:19 119:21 | |
| doctrine(3) 35:11 40:1 40:8 | |
| document(6) 12:7 29:25 49:25 86:22 86:24 87:5 | |
| documented(1) 87:6 | |
| documents(8) 12:8 47:25 48:3 56:3 94:10 96:4 108:17 114:16 | |
| does(18) 10:17 16:15 19:16 44:6 51:22 70:14 76:4 76:25 77:6 79:14 80:15 80:23 82:6 88:14 88:19 101:21 111:10 116:8 | |
| doesn't(19) 23:2 25:6 29:15 36:25 38:19 39:4 41:24 43:7 44:7 51:5 52:19 53:2 60:2 62:13 71:15 85:1 103:17 105:12 107:17 | |
| doing(11) 54:12 67:8 92:9 92:9 92:9 93:10 93:11 93:12 102:3 108:11 110:23 | |
| dollar(21) 19:17 27:9 29:18 31:9 37:7 46:7 46:22 46:23 51:5 51:6 56:6 71:2 106:3 113:22 113:24 113:24 113:24 116:18 116:21 116:22 118:24 | |
| dollars(23) 21:25 29:3 33:6 36:3 41:10 41:12 41:18 42:4 51:12 57:25 58:1 58:11 58:17 58:24 88:22 99:14 99:22 104:14 104:21 104:22 110:8 113:25 123:24 | |

| Word | Page:Line |
|------|-----------|
| don't(60) 11:23 18:6 18:11 23:25 26:11 26:11 28:8 30:19 30:20 31:17 31:22 31:24 31:25 32:5 32:16 33:1 33:24 38:16 39:24 42:16 42:23 43:6 43:13 43:15 45:16 45:24 48:9 50:18 52:19 59:22 62:12 62:13 62:14 64:4 67:15 69:8 77:18 78:24 79:14 81:5 81:18 84:20 85:8 91:9 93:17 93:22 100:18 100:24 101:3 105:20 105:21 105:22 106:8 109:22 110:4 111:11 115:16 116:15 117:9 | |
| done(32) 9:11 9:11 10:21 23:20 23:25 25:11 42:7 46:12 54:15 57:4 60:15 68:20 69:14 69:15 72:17 74:23 75:1 78:17 79:11 80:22 80:23 81:1 82:4 82:21 92:12 92:15 92:19 92:17 94:3 100:20 102:10 106:6 | |
| don't(1) 70:24 | |
| door(2) 65:6 105:14 | |
| doubt(2) 95:12 95:15 | |
| doubts(1) 82:7 | |
| dow(1) 6:40 | |
| down(18) 20:5 20:23 23:16 27:21 30:11 33:1 51:21 65:23 68:3 71:11 71:24 77:7 79:16 79:22 93:2 113:19 117:2 118:17 | |
| dozens(1) 109:19 | |
| dr. wertheim(4) 42:10 93:24 94:3 118:9 | |
| dr. wertheim's(2) 41:20 82:6 | |
| drafts(3) 23:3 30:7 114:17 | |
| dramatic(1) 82:3 | |
| draw(1) 83:2 | |
| drill(1) 65:21 | |
| drive(2) 69:10 118:20 | |
| drive-by(2) 110:3 110:4 | |
| dual(1) 47:6 | |
| due(2) 63:20 90:22 | |
| dunn(1) 30:1 | |
| dunne(1) 23:4 | |
| duplessie(1) 7:17 | |
| duplicitous(1) 36:12 | |
| during(3) 37:22 57:6 62:6 | |
| duties(5) 90:16 90:17 90:23 116:11 | |
| duty(8) 29:20 55:8 58:14 78:2 81:21 90:22 90:22 122:8 | |
| dwell(1) 39:6 | |
| each(9) 10:11 14:15 43:19 46:3 68:23 70:19 81:21 92:15 111:18 | |
| earlier(2) 40:6 102:17 | |
| easier(2) 93:10 93:14 | |
| easily(2) 73:25 76:12 | |
| easy(7) 93:9 94:1 107:20 107:21 107:22 110:5 110:11 | |
| eckenrod(1) 1:34 | |
| economic(9) 26:2 26:4 26:9 26:12 26:21 27:21 29:5 30:8 109:11 | |
| economically(1) 76:1 | |
| economics(9) 15:4 15:7 15:8 25:21 25:23 28:24 82:14 118:14 118:16 | |
| ecro(1) 1:41 | |
| editorializing(1) 9:8 | |
| educated(1) 51:16 | |
| educating(1) 48:11 | |
| effect(9) 47:6 68:7 68:8 68:12 71:9 81:20 | |
| effective(1) 85:4 | |
| effectively(2) 13:16 24:25 | |
| effects(2) 80:16 113:23 | |
| effort(1) 89:4 | |
| ehmer(1) 6:9 | |
| either(7) 14:5 17:1 17:1 38:13 41:15 70:21 82:14 | |
| electronic(2) 1:49 124:9 | |
| elements(3) 57:18 68:23 114:18 | |
| elicited(2) 39:18 44:4 | |
| elicits(1) 59:1 | |
| eliminate(1) 72:14 | |
| else(7) 11:24 52:23 72:21 79:5 95:10 117:4 123:8 | |
| email(2) 30:1 86:25 | |
| emanuel(2) 4:5 61:23 | |
| emea(2) 2:33 17:20 | |
| emerged(1) 70:21 | |
| emerges(1) 69:20 | |
| emphasize(1) 62:12 | |
| employ(1) 95:6 | |
| employed(3) 75:21 85:22 86:1 | |
| employees(3) 5:16 5:44 25:3 | |
| empty(1) 80:7 | |
| encourage(2) 18:14 18:15 | |
| encouraged(1) 25:5 | |
| encouraging(1) 22:15 | |
| end(18) 10:2 10:5 10:6 10:20 17:14 23:23 24:13 29:10 34:4 38:5 58:16 85:4 85:25 99:16 104:13 107:5 113:1 114:9 | |
| ending(1) 96:3 | |
| endless(1) 123:14 | |
| ends(1) 19:19 | |
| enemy(1) 31:3 | |
| enough(9) 22:8 23:23 30:20 30:20 38:10 79:9 114:25 115:2 122:16 | |

| Word | Page:Line |
|------|-----------|
| ensuring(1) 90:12 | |
| enter(1) 60:21 | |
| entire(1) 73:5 | |
| entirely(4) 42:4 42:17 42:18 106:10 | |
| entities(1) 49:19 | |
| entitled(8) 14:23 20:21 40:23 56:1 60:5 69:12 72:1 99:11 | |
| entitlement(12) 17:13 25:10 27:19 55:24 58:8 59:11 60:17 79:20 89:23 97:18 97:24 98:3 | |
| entitlements(1) 63:3 | |
| entity(1) 55:5 | |
| entrenched(1) 15:17 | |
| entrenchment(1) 51:3 | |
| enunciated(1) 59:19 | |
| ephraim(1) 5:40 | |
| equally(1) 102:5 | |
| equity(27) 25:8 30:16 30:17 49:17 51:19 51:19 69:19 70:16 70:22 70:25 74:22 75:4 76:11 76:13 90:10 91:3 99:18 111:15 116:6 116:20 116:24 116:25 117:2 122:15 122:15 122:18 | |
| equity-holder(3) 56:7 58:15 58:25 | |
| equity-holders(2) 19:1 19:3 | |
| eric(2) 7:13 7:29 | |
| ernst(1) 5:8 | |
| errors(1) 17:14 | |
| esq(46) 1:26 1:32 1:33 1:34 1:35 1:36 2:5 2:11 2:12 2:13 2:20 2:21 2:22 2:28 2:34 2:41 3:2 3:9 3:10 3:11 3:12 3:19 3:26 3:33 3:40 4:7 4:14 4:20 4:26 4:35 4:39 4:43 4:48 5:5 5:9 5:10 5:11 5:12 5:13 5:18 5:23 5:27 5:32 5:36 6:41 | |
| essential(1) 67:6 | |
| essentially(1) 27:3 | |
| establish(1) 22:5 | |
| established(1) 109:12 | |
| estate(19) 13:19 13:20 18:17 19:5 36:7 42:22 56:13 68:16 74:3 74:4 82:8 85:18 87:8 91:1 92:1 96:11 110:9 112:23 112:23 | |
| estate's(1) 99:22 | |
| estates(11) 13:14 14:1 19:2 23:7 23:23 26:16 27:17 27:22 33:6 36:11 47:14 47:15 48:18 49:2 61:15 110:16 116:5 | |
| esther(1) 6:29 | |
| estimate(1) 42:25 | |
| estimated(1) 50:17 | |
| estimating(1) 94:24 | |
| estoppel(2) 40:14 79:4 | |
| estoppel-type(4) 35:3 35:9 35:12 40:1 40:9 77:10 77:16 95:1 103:23 117:7 117:8 117:9 117:10 117:20 | |
| eternity(1) 114:3 | |
| evaluate(2) 13:16 79:1 | |
| evaluating(1) 75:11 | |
| evans(1) 3:12 | |
| evasive(1) 110:11 | |
| eve(3) 97:4 99:18 99:19 | |
| even(40) 13:10 18:8 25:4 25:4 25:5 26:6 28:12 30:21 32:1 38:15 39:2 40:13 41:16 41:21 42:6 45:21 46:13 50:18 51:18 54:17 55:15 65:23 67:14 67:24 71:1 74:2 75:10 83:2 83:21 103:5 103:6 103:17 104:22 106:8 112:18 114:8 114:9 116:25 117:3 117:22 118:18 | |
| event(4) 63:22 67:7 69:16 71:23 | |
| ever(3) 22:7 28:8 86:21 | |
| ever-increasing(1) 82:24 | |
| every(30) 16:6 29:25 29:25 30:1 31:10 33:3 37:7 42:11 45:17 46:2 46:4 70:19 71:2 75:6 83:11 84:22 84:23 84:24 85:25 92:15 99:20 106:3 108:1 108:19 114:5 114:9 116:16 116:17 116:20 116:22 | |
| everybody(4) 52:22 60:24 79:5 122:17 | |
| everybody's(1) 56:12 | |
| everyone(11) 9:3 20:1 27:20 28:15 31:7 31:7 33:3 65:12 116:7 123:19 124:2 | |
| everyone's(11) 10:24 11:18 23:5 24:6 24:6 25:1 29:14 30:12 31:7 110:11 123:25 | |
| everything(10) 24:12 24:13 28:1 28:24 73:18 75:1 86:7 94:13 94:14 113:7 | |
| everything's(1) 24:12 | |
| evidence(19) 11:22 12:8 19:8 21:15 30:6 41:17 42:2 42:15 42:19 43:4 43:22 43:24 43:25 51:1 86:15 95:7 95:8 107:12 121:5 | |
| evidentiary(1) 16:16 108:17 | |
| exacerbates(1) 80:19 | |
| exact(1) 40:4 106:21 | |
| exactly(9) 37:13 54:14 55:3 60:8 76:5 85:19 92:17 104:7 113:14 | |
| examination(1) 45:24 | |
| examine(1) 90:23 118:16 | |
| example(3) 21:2 23:4 72:22 | |

| Word | Page:Line |
|------|-----------|
| examples(4) 20:23 20:24 109:15 109:16 | |
| exceeded(1) 14:17 | |
| exceedingly(1) 92:11 | |
| exceptionally(1) 66:16 | |
| excess(2) 13:19 39:12 | |
| excess(1) 104:15 | |
| exchanged(2) 30:7 30:8 | |
| exchanging(1) 23:3 | |
| excited(1) 108:8 | |
| exciting(1) 11:8 | |
| exclude(2) 44:16 46:13 | |
| excluded(3) 43:12 45:12 45:13 | |
| exclusion(2) 44:15 82:2 | |
| executed(1) 48:14 | |
| exercise(2) 16:4 83:10 | |
| exhaustive(1) 45:21 | |
| exhibit(14) 11:11 11:15 11:19 11:19 12:24 12:25 13:1 13:2 14:3 38:25 49:1 49:25 103:2 120:2 | |
| exhibits(3) 11:14 12:24 44:13 | |
| expect(4) 9:12 38:8 37:18 42:21 | |
| expectation(1) 114:21 | |
| expected(1) 38:6 | |
| expedient(2) 35:14 36:1 | |
| expense(3) 18:23 21:23 96:25 | |
| experience(2) 43:15 60:14 | |
| experienced(2) 30:3 60:11 | |
| expert(28) 11:15 33:4 33:7 37:5 39:8 39:14 42:13 42:19 43:17 44:1 45:9 45:14 48:1 45:20 50:1 52:20 53:4 57:1 57:8 57:9 93:23 94:1 95:2 95:6 97:12 112:20 117:25 118:23 | |
| expertise(4) 43:1 43:3 91:24 93:24 | |
| experts(2) 27:11 29:6 | |
| explain(2) 27:10 47:18 | |
| explained(1) 102:17 | |
| explaining(1) 103:25 | |
| express(1) 32:5 | |
| expressed(2) 114:25 117:22 | |
| extended(1) 9:16 | |
| extensively(1) 95:22 | |
| extent(3) 58:7 63:25 80:18 | |
| extra(2) 70:15 70:25 | |
| extract(2) 24:15 32:15 | |
| extracted(1) 23:20 | |
| extraordinary(1) 72:13 | |
| extremely(3) 55:25 57:16 123:12 | |
| eye(1) 66:13 | |
| eyes(1) 25:13 | |
| face(3) 13:24 52:8 115:24 | |
| faced(1) 77:6 | |
| fact(33) 15:8 19:10 20:20 24:7 24:16 27:4 30:5 32:19 43:20 54:14 55:17 56:15 57:18 58:11 66:8 66:10 70:10 70:24 85:20 89:19 97:22 107:7 108:13 109:12 110:19 110:24 111:20 114:24 115:5 116:13 116:23 117:9 118:17 | |
| factor(8) 18:22 18:22 21:19 21:20 22:16 23:13 75:11 114:11 | |
| factors(10) 18:10 18:11 18:19 19:14 34:7 39:1 39:4 53:25 70:23 103:7 | |
| facts(16) 42:14 43:22 44:2 44:7 78:13 78:14 83:15 83:19 84:12 94:11 99:13 109:17 109:21 113:14 117:22 118:18 | |
| factual(4) 45:15 83:23 117:1 117:14 | |
| factually(1) 84:25 | |
| fagen(1) 5:23 | |
| failed(3) 42:7 45:22 45:25 71:3 86:1 105:22 116:1 116:10 | |
| fails(3) 43:19 99:20 102:11 | |
| failure(1) 24:11 | |
| fair(3) 35:10 64:16 64:20 85:17 90:24 99:11 111:11 123:3 | |
| fairly(1) 43:5 | |
| fairness(1) 61:3 | |
| faith(8) 29:23 33:18 73:2 82:5 114:24 117:11 117:12 117:12 | |
| fall(1) 26:15 62:14 | |
| fallacious(1) 27:9 | |
| fallacy(1) 115:3 | |
| falls(4) 17:2 19:7 54:10 102:22 | |
| familiar(3) 31:13 45:1 | |
| famous(2) 77:15 119:20 | |
| fan(1) 65:24 | |
| fantasy(1) 115:3 | |
| far(6) 14:4 75:7 77:16 85:7 96:8 96:12 | |
| farr(2) 4:25 4:42 | |
| fascinating(1) 49:25 | |
| fashion(1) 90:4 | |
| fast(1) 37:10 | |
| fault(3) 42:16 42:17 107:23 | |
| faulty(1) 109:2 | |
| favor(2) 33:10 107:13 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

favoring(1) 16:5
fear(1) 123:17
feature(1) 71:21
federal(21) 13:8 20:3 21:4 41:15 67:19 69:6 69:13 70:3 70:20 76:18 82:25 88:14 88:15 88:16 88:21 88:25 89:15 97:25 104:17 104:23 120:10

feed(1) 110:2
feel(2) 108:12 108:14
field(3) 3:8 5:22 53:21
ferry(1) 54:7
few(3) 39:9 40:5 101:17
fiduciaries(1) 55:8
fiduciary(5) 55:8 90:10 90:10 102:2 122:8
field(1) 65:23
fight(4) 24:3 30:20 53:11 98:10
figuring(6) 26:24 28:15 28:17 28:23 29:2 29:17
figure(2) 15:3 110:7
figuring(2) 112:12 112:21
file(1) 100:15
filed(12) 11:23 17:11 59:10 61:12 62:18 63:15 64:15 72:23 73:1 73:2 79:3 89:18

filing(2) 30:19 67:18
final(1) 23:10
finality(1) 90:25
finally(1) 98:20
financial(16) 51:15 88:3 91:24 92:4 92:6 92:7 93:12 99:17 110:17 112:17

financially(1) 92:22
find(8) 44:5 49:24 50:22 65:3 68:23 68:25 73:3 74:19
finding(3) 19:17 20:17 74:12
findings(2) 18:4 75:19
fine(3) 65:8 84:5 84:5
finger(1) 3:18
fingers(1) 19:14
finish(1) 11:10 66:4
finished(2) 14:20 121:17
finnigan(2) 4:38 5:4
first(53) 17:10 22:5 30:23 35:2 36:20 38:2 38:13 41:7 50:2 51:13 53:24 66:21 67:14 69:16 71:12 75:1 77:19 79:2 81:21 84:16 86:12 87:23 88:1 88:2 88:5 89:15 90:7 91:7 94:16 97:1 113:23 123:14

fit(2) 54:21 94:2
fits(1) 49:16
five(13) 12:6 22:18 23:2 31:10 38:13 64:24 65:8 88:20 88:21 105:21 109:6 109:16 114:24

fix(2) 79:19 113:22
fjr(7) 13:11 21:10 70:16 71:2 109:7 109:13 115:15
flat(1) 102:22
flawed(2) 46:12 99:16
flippant(1) 91:18
floor(1) 1:27 2:29 3:41 4:8
flow(6) 13:23 26:8 27:24 27:25 49:18 49:22
flowed(1) 112:23
flowing(4) 13:21 26:13 51:18 110:8
flows(1) 115:8
fly-by-night(1) 119:5
focus(1) 12:20
focused(2) 21:24 54:24
focuses(1) 113:12
folks(1) 14:22
following(2) 81:21 103:4
footnote(9) 38:24 66:2 67:3 75:9 78:18 119:20 124:1

for(191) 1:2 1:24 2:4 2:18 2:33 3:1 3:7 3:25 3:38 4:4 4:19 4:33 4:46 5:4 5:8 5:16 5:21 5:26 5:30 5:35 5:39 5:43 6:4 6:20 7:4 8:4 8:20 10:16 10:24 11:5 11:5 12:13 13:7 13:9 13:14 13:20 14:9 14:9 14:17 15:13 15:18 16:12 17:16 17:19 17:19 17:20 20:22 22:18 23:10 24:6 24:18 24:22 25:14 25:22 26:17 26:19 27:17 27:24 28:23 29:14 31:15 33:3 33:22 36:1 36:7 40:4 40:9 40:10 41:24 42:1 42:4 42:17 42:18 43:17 44:5 44:6 44:16 46:23 47:5 48:6 48:9 48:19 48:22 50:19 51:2 51:5 51:13 51:24 51:25 52:16 52:21 52:22 53:7 53:8 53:16 53:21 54:1 54:19 54:20 55:14 56:5 57:5 57:11 57:19 57:25 58:12 58:14 58:15 58:23 58:25 59:4 60:7 60:23 61:19 62:16 62:19 63:4 63:17 64:25 66:2 67:17 72:22 73:5 75:1 76:16 76:23 77:9 78:19 80:8 83:2 83:3 83:21 84:16 85:12 85:13 86:4 86:12 87:3 87:8 87:11 87:16 88:4 88:5 89:11 90:25 90:25 91:1 93:9 93:25 94:23 94:23 95:5 95:17 96:4 97:22 98:7 98:11 99:10 101:22 102:15 102:17 102:19 102:20 104:3 104:6 104:8 104:18 105:23 106:3 106:19 106:21 107:23 105:9 106:19 110:21 111:13 111:17 112:15 112:15 112:18 114:2 114:5 114:21 115:19 116:22 116:24 116:25 122:2 123:18

forbid(1) 114:11
forbids(1) 37:16
forcefully(1) 66:20
forecast(1) 50:6
foreclose(2) 71:10 72:4
forefront(1) 22:24
foregoing(1) 124:8

forever(1) 114:5
forgive(1) 122:1
form(1) 32:23 39:8 90:1 97:23
formal(2) 109:18 109:18
formed(1) 89:22
former(1) 5:16
forth(5) 63:24 75:19 86:5 87:3 114:17
forward(9) 19:8 29:11 32:10 33:17 36:8 41:13 52:9 115:23 118:23

fought(2) 24:1 119:1
found(4) 14:23 45:14 111:16 120:21
four(7) 18:19 77:2 81:21 89:5 108:17 109:5 109:18
four-part(1) 85:25
fourth(4) 38:18 53:25 83:1 83:4
framework(1) 56:5
frame(1) 51:9
frankly(12) 23:19 24:16 25:12 30:2 31:18 32:5 33:2 70:22 78:14 113:4 116:8 117:6

fred(2) 3:10 53:21
free(2) 38:6 112:19
freed(1) 38:8
freezes(1) 114:2
friedman(2) 6:13 7:21
friendly(1) 110:13
friends(1) 65:2
from(64) 12:19 13:18 13:20 13:23 14:4 14:15 23:10 23:14 24:4 24:19 24:20 25:9 30:5 36:10 36:11 37:16 39:19 39:23 40:6 40:14 42:25 44:16 44:24 49:6 49:15 50:2 50:4 50:6 51:5 51:9 52:13 56:13 58:17 58:17 59:1 59:2 69:5 69:24 74:6 75:7 75:17 76:2 80:3 86:15 86:19 87:15 96:22 97:19 97:21 98:3 98:9 98:23 100:20 104:10 104:10 105:5 110:16 110:23 116:11 116:21 123:4 123:17 124:9

front(3) 12:7 108:14 122:15
frozen(1) 114:5
fsd(1) 51:14
full(5) 16:16 18:12 64:16 64:20 65:1
fully(2) 24:5 64:12
functionally(3) 69:23 76:2 120:15
fundamental(1) 15:25
fundamentally(2) 30:21 99:16
funds(1) 13:19
further(1) 12:25 31:1 31:2 64:21
futile(2) 113:2 113:3
future(7) 23:13 29:19 69:21 72:23 73:2 75:4 120:18

gaap(1) 94:9
gaines(1) 7:25
gallagher(2) 4:25 4:42
gap(1) 71:4
garden(1) 68:7
garden-variety(2) 67:11 107:25
gates(1) 41:25
gating(3) 15:10 28:16 34:10
gave(8) 11:12 85:8 86:6 86:7 95:14 101:23 103:1 112:8

gee(1) 25:1
general(6) 16:4 51:3 58:6
generally(6) 14:6 41:6 56:14 59:6 60:4 119:6
get(46) 9:11 9:11 10:20 15:4 27:24 28:3 28:7 28:8 28:12 29:3 29:10 29:14 31:12 33:9 33:10 36:6 36:11 50:6 57:22 59:9 61:18 62:2 65:23 66:12 68:3 68:5 68:9 69:1 76:18 78:3 80:22 80:23 81:1 81:5 84:19 87:23 91:5 91:5 91:13 91:14 91:22 105:24 113:9 118:23 119:4 124:1

gets(4) 57:24 59:17 95:2 120:24
getting(4) 21:8 33:15 52:23 110:8
gianis(1) 1:35
giants(1) 65:24
ginger(1) 1:41
give(11) 10:9 24:5 37:3 43:4 44:11 46:14 86:5 86:6 103:1 104:20 106:24 115:2

given(8) 27:6 42:15 53:4 58:25 86:21 118:10 118:11 118:12

gives(3) 23:24 68:21 111:7
giving(5) 45:12 81:25 89:20 99:14 99:22
global(2) 71:6 116:19
gmo(1) 7:20
goal(3) 11:9 29:12 29:13
goals(2) 13:4 13:5
god(1) 114:11
goes(7) 43:16 49:11 60:6 104:12 114:10 118:25
going(49) 18:4 19:22 20:9 21:8 23:5 23:6 26:7 26:7 32:9 34:9 34:24 35:6 37:18 39:10 45:13 50:14 52:23 56:7 60:20 66:3 66:3 68:5 69:20 69:22 70:8 74:13 75:2 76:9 80:4 81:4 92:18 95:9 95:13 95:14 97:20 97:23 98:2 98:18 101:16 101:17 108:18 111:13 114:17 116:1 116:17 118:7

going-concern(2) 70:11 70:13
golf(1) 73:8
gone(2) 41:13 105:17

good(37) 9:3 9:4 29:22 31:3 33:18 34:20 34:22 52:21 52:21 53:19 53:20 61:22 64:4 64:5 64:25 65:15 65:16 66:17 73:2 73:5 82:5 84:8 84:9 84:20 84:21 90:25 90:25 99:9 101:10 108:9 111:8 111:9 114:5 114:24 117:11 117:12 117:12

goodies(1) 76:10
got(13) 25:25 48:9 50:5 59:14 59:17 59:18 65:4 71:13 78:14 84:17 97:1 123:4 123:7

gotten(2) 33:13 105:4
gottlieb(2) 1:31 87:25
governed(1) 16:1
governing(1) 56:2
government(3) 44:16 44:23 45:11
government's(2) 44:18 44:18
governs(1) 109:13
grab(1) 101:11
grace(7) 21:2 21:10 31:3 74:24 74:24 109:4 119:15
great(4) 40:22 62:17 98:13 122:19
greater(1) 14:15
greatest(1) 78:5
green(1) 82:25
grew(1) 90:19
gross(1) 1:19
group(3) 2:19 8:4 8:8
group(2) 4:38 5:4
growing(7) 36:22 37:4 84:18 102:13 104:2 104:9 104:10

guarantee(2) 55:5 58:5
guaranteed(1) 32:20
gucs(1) 98:6
guess(1) 76:20
gump(3) 3:8 5:22 53:21
gun(2) 9:9 10:11
guyder(1) 5:10
guys(1) 29:23
had(48) 10:11 10:12 16:20 19:24 20:10 27:11 31:9 38:5 38:8 39:19 39:22 41:13 41:22 45:2 45:6 49:20 50:6 52:24 56:25 59:10 77:25 79:11 80:17 86:20 87:10 89:22 89:22 90:22 92:7 92:12 92:13 92:13 92:15 92:16 92:19 94:7 94:19 98:21 99:3 99:10 101:9 102:5 102:9 106:6 106:3 113:2 116:11 118:5 119:14

hadley(2) 2:19 5:31
hadn't(1) 48:6
halcyon(1) 6:12
half-a-billion(1) 88:22
hall(2) 5:11 20:23
hamilton(1) 1:31
hampshire(3) 35:15 35:16 35:25
hamstrung(1) 96:6
hand(3) 84:3 111:7 118:15
handed(3) 45:19 46:3 57:17
handful(1) 86:17
hands(3) 36:2 90:12 109:1
hanging(1) 22:18
happen(6) 21:6 63:11 105:14 105:20 105:21 107:5
happens(1) 87:18
happily(1) 86:4
happiness(1) 54:5
happy(43) 63:5 76:14 84:2 108:21
hard(13) 15:22 20:13 23:1 26:19 30:20 30:20 31:8 34:8 47:17 54:16 105:13 113:25 124:2

hard-bargained(1) 19:10
hard-fought(3) 29:8 53:9 123:12
hardened(1) 30:25
hardening(1) 31:22
harder(2) 15:18 24:1
hardwire(2) 72:15 79:25
hardwiring(1) 80:1
harmful(2) 115:17 116:25
harrisburg(1) 1:45
has(61) 14:7 17:18 17:22 21:24 22:18 26:2 26:4 26:16 28:16 30:1 31:8 40:2 42:7 42:7 43:16 44:1 44:1 47:12 49:20 52:5 53:15 54:14 54:16 55:22 55:23 55:24 56:1 56:18 60:15 62:23 62:25 63:1 63:6 63:23 68:10 72:3 72:11 73:21 74:7 77:16 77:21 77:22 78:1 78:2 82:15 82:16 84:25 86:25 96:8 100:20 103:9 104:1 105:11 105:15 106:5 107:5 115:23 115:24 119:6 121:1 121:8

hashed(1) 109:20
hasn't(1) 71:1
hate(1) 57:6
hauer(3) 3:8 5:22 53:21

have(169) 9:20 10:8 10:17 11:24 12:7 15:1 15:23 16:16 17:8 18:11 18:12 20:20 20:22 21:2 22:12 23:2 23:6 23:17 23:20 23:20 23:21 23:21 23:25 24:1 24:3 24:11 24:12 25:16 25:25 26:6 26:14 27:11 27:11 27:13 29:21 31:17 32:1 32:6 32:17 32:22 32:25 33:4 33:7 33:13 33:23 33:24 35:1 36:13 39:24 40:11 40:14 41:15 41:22 41:23 42:15 42:20 42:23 45:23 47:6 47:8 48:7 49:2 50:9 50:18 51:6 52:13 52:16 52:17 52:22 52:24 54:4 55:4 55:6 55:18 55:21 56:7 56:16 57:12 58:2 58:7 59:4 59:20 59:21 59:22 59:23 60:2 60:4 60:11 62:7 62:15 62:21 63:7 63:15 63:22 64:11 64:17 64:20 65:1 65:2 65:17 65:20 68:7 68:8 68:12 70:24 73:17 75:21 76:3 80:15 80:18 83:7 83:9 84:13 87:25 88:1 88:2 88:6 89:9 91:16 94:3 95:12 95:14 97:17 97:24 98:7 98:8 98:12 98:18 98:19 99:12 100:18 100:25 102:10 102:15 103:4 104:20 105:3 105:20 105:21 106:2 106:4 107:18 108:14 108:16 108:17 108:21 109:17 109:17 109:20 109:21 109:21 110:1 110:22 111:4 111:19 112:20 112:23 112:24 114:15 114:22 117:9 117:10 118:7 118:22 121:11 121:16 121:18 122:2

haven't(9) 9:21 25:4 25:4 25:4 30:21 96:1 96:5 96:5 108:20

having(6) 30:24 31:4 33:19 38:23 45:24 94:18
hbk(1) 7:12
he'd(1) 39:22
he'll(1) 27:8
he's(6) 52:7 66:16 76:24 96:6 107:13 113:13
head(3) 9:9 10:11 15:8 25:1 25:8 28:24 43:5 111:20
header(1) 44:25
headway(1) 113:10
health(2) 52:13 73:25
healthcare(1) 30:15
healthy(1) 122:12
hear(11) 14:13 23:14 24:25 36:24 36:24 58:25 60:21 86:15 104:4 104:4 104:4

heard(37) 14:12 20:19 23:6 24:4 25:4 29:7 30:6 30:8 31:8 34:8 38:7 38:14 47:24 48:2 49:18 50:8 50:16 56:25 58:17 58:18 63:16 64:14 66:15 67:1 74:24 76:7 76:15 86:3 96:14 96:18 97:21 98:9 103:12 106:9 117:15 123:3 123:23

hearing(9) 9:21 12:5 16:16 41:13 49:5 57:15 61:2 64:14 78:22 84:13 85:13 85:15 85:15 99:11 109:8 111:25 123:12 124:6

heavily(1) 108:18
held(1) 61:4
help(2) 43:20 77:6
helped(1) 90:1
helpful(2) 57:16 75:10
helpfully(1) 74:9
hence(1) 96:1
herbert(1) 5:26
here(77) 20:11 21:20 22:10 25:23 25:23 27:13 29:19 30:4 33:1 33:23 34:6 35:7 39:25 42:12 43:1 43:23 43:23 43:25 58:18 59:14 60:7 61:16 64:20 65:21 66:8 67:25 69:21 72:17 74:3 74:20 74:23 75:1 77:5 77:20 77:22 79:1 79:19 80:4 80:14 81:17 82:15 82:23 83:8 83:18 83:21 85:11 93:16 93:17 94:11 95:1 96:22 97:20 101:16 101:22 102:1 103:5 103:25 104:1 104:22 106:9 110:8 110:11 111:1 111:17 111:18 113:24 114:12 115:4 115:6 116:14 119:19 122:16

here's(2) 39:2 105:14
here (1) 81:9
hesitate(1) 65:4
hewlett-packard(1) 97:8
hiatus(1) 9:17
hide(3) 81:5 81:19 117:24
high(7) 23:24 38:3 38:7 28:8 29:3 33:9 102:9
higher(3) 17:4 21:14 31:4
him(15) 27:6 37:5 42:15 42:18 44:16 48:7 77:9 91:6 91:19 91:19 92:8 93:22 102:4 106:17 118:8

himself(2) 87:7 90:20
hints(1) 67:24
hire(1) 92:17
hired(3) 27:11 112:20 117:24
his(42) 15:16 29:12 29:13 30:11 35:7 39:21 41:8 41:22 43:19 43:13 43:20 43:21 43:24 43:25 45:6 45:7 45:12 45:13 45:16 45:17 45:24 46:1 46:12 47:14 48:7 48:8 49:21 49:21 50:19 51:2 51:13 51:14 51:16 51:17 51:22 53:4 60:13 60:22 62:8 88:23 89:22 89:23 89:24 89:25 90:1 90:2 90:3 90:19 90:20 91:19 93:17 94:6 100:5 104:24 106:18 106:20 110:20 112:8 112:13 116:3 116:10 116:13

history(2) 110:12 117:10
hit(3) 17:4 23:24 23:25
hmm(1) 54:25
hoc(2) 2:18 5:30
hodara(15) 3:10 23:14 53:19 53:20 53:21 54:9 57:3 57:11 60:1 60:19 61:21 66:9 80:1 121:21 121:25

hodara's(1) 57:7
hogan(2) 4:34 4:47

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

hoisted(1) 53:10
hold(3) 69:5 74:25 111:3
holder(1) 19:4
holder's(1) 30:18
holders(2) 62:21 63:4
holds(1) 58:15
holes(1) 93:15
home(1) 35:16
honest(1) 24:15
honestly(1) 69:11
honor(165) 9:15 9:16 9:23 10:3 10:7 10:21 11:1 11:4
 12:10 12:23 15:2 15:5 16:6 16:10 17:11 17:18 18:3
 19:9 20:1 24:21 28:18 31:12 34:20 34:24 35:8 36:20
 37:18 38:1 38:5 38:20 38:24 39:6 40:8 40:10 40:12
 40:18 40:20 40:24 41:7 41:15 41:16 41:21 42:13
 42:9 43:8 44:3 44:4 44:10 44:11 44:13 45:1 46:4
 46:8 46:12 46:13 46:20 47:6 47:13 47:24 48:18
 48:25 49:4 49:5 49:16 49:18 49:23 50:8 50:22 51:10
 51:21 52:4 53:3 53:5 53:17 53:20 53:23 54:3 57:6
 59:5 60:2 60:8 60:15 60:25 61:20 61:22 61:23 61:25
 62:3 62:5 62:9 62:18 63:9 64:1 64:4 65:15 65:18
 66:1 66:6 67:1 68:24 71:8 73:5 74:17 76:3 78:5
 80:14 80:17 81:2 81:15 81:18 82:11 83:1 83:14
 83:25 84:8 84:19 85:13 85:14 85:19 87:12 88:23 89:2
 89:21 89:22 92:6 95:5 97:15 97:22 98:20 99:13
 99:23 100:2 101:6 101:15 102:11 102:24 103:11
 103:24 104:12 104:24 105:11 105:15 105:18 106:5
 107:17 107:20 107:24 108:4 108:9 108:12 110:1
 110:24 117:6 117:25 118:1 119:10 119:22 119:23
 120:3 121:19 122:1 122:23 123:9 124:5
honor's(1) 111:20
honorable(1) 1:19
honored(1) 20:22
hope(5) 59:16 60:23 100:7 114:3 123:23 124:2
hopefully(3) 34:11 63:17 76:22
hoping(1) 14:20
host(2) 62:16 63:2
hotel(2) 37:21 86:17
hour(3) 69:11 111:17 117:15
hours(4) 11:9 12:6 89:5 89:9
housekeeping(1) 11:10
how(17) 15:6 22:1 22:6 28:12 30:1 30:18 38:17 56:5
 56:18 59:17 75:1 77:14 94:10 96:17 105:13 106:25
 123:17
however(2) 45:17 100:23
hubbard(1) 2:33
huberty(1) 2:34
huge(2) 46:7 81:2
hughes(1) 2:33
hundred(1) 58:24
hundreds(1) 58:16
hyper-technical(1) 67:15

i'd(3) 63:9 91:19 112:8
i'll(20) 34:4 34:16 43:11 44:8 46:4 48:3 51:1 61:25
 62:2 64:6 73:13 77:3 84:3 93:20 94:14 94:15 102:2
 102:22 112:16 119:25
i'm(33) 9:6 20:11 24:5 31:22 34:24 35:6 38:18 39:10
 53:23 59:6 63:5 65:17 65:24 66:3 66:3 66:24 68:5
 84:2 93:16 93:16 95:1 95:1 97:10 101:15 101:16
 103:1 105:7 108:8 108:18 108:21 111:17 121:10
 121:20
i've(6) 27:6 53:8 59:19 97:1 105:4 109:19
idea(14) 14:19 22:16 27:8 33:20 44:16 64:25 104:12
 108:23 110:10 112:1 113:14 116:16 122:14 122:18
ignore(3) 42:14 43:7 107:19
ignored(2) 50:2 107:13
iii(1) 31:17
immeasurably(1) 36:17
impact(5) 10:17 26:3 26:4 26:9 68:16
impacted(1) 13:9
impaired(2) 76:17 80:6
impediment(3) 13:24 105:10 105:15 105:17
implications(1) 75:12
implicit(2) 28:7 76:21
important(23) 10:22 12:18 15:2 39:18 40:2 44:12
 46:8 48:22 54:3 56:6 56:14 61:11 64:25 59:8 61:18 67:16
 68:2 70:14 74:8 75:11 81:17 104:11 121:4
importantly(6) 34:25 50:14 74:13 74:21 83:20 114:1
impossible(2) 13:13 42:5
improper(1) 103:12
improvement(1) 46:22
impugning(1) 54:21
inappropriately(1) 28:9
inc(14) 1:8 6:44 8:12 62:4
incapable(2) 102:16 102:20
incidental(1) 71:9 80:15
included(1) 55:15
includes(1) 74:12
including(5) 60:16 64:18 71:16 79:21 116:6
inconsistency(1) 78:12
inconsistent(3) 34:6 77:9 104:1 110:9
inconvenience(3) 18:23 21:23 22:17
incorporates(1) 71:18
increasing(1) 89:20
incredible(3) 42:10 42:11 42:12
incredibly(1) 70:1

incremental(1) 24:14
indeed(1) 14:14
indenture(4) 55:6 55:9 55:13 82:19
indentures(1) 78:17
independent(1) 100:20
india(2) 50:4 50:6
indiscernible(2) 111:6 114:16
indistinguishable(2) 69:23 76:2
individually(1) 19:14
individuals(1) 25:14
informal(1) 109:20
information(6) 96:9 118:3 118:11 118:11
ingersoll(1) 2:4
initial(2) 14:17 44:18
input(2) 112:11 112:12
insolvency(2) 13:25 116:9
instances(3) 45:1 45:2 45:5
instead(9) 13:21 21:22 37:23 40:12 41:14 43:3 52:23
 52:24 103:20
instructive(1) 75:8
instrumental(1) 56:2
insulting(1) 116:12
integrity(1) 54:22
intellectual(1) 56:14
intended(1) 98:10
intending(1) 110:21
intends(1) 44:8
intention(2) 71:21 74:2 110:2
intercompany(4) 47:12 49:17 62:25 63:13
interconnected(1) 24:12
interest(101) 11:2 12:14 12:20 13:9 13:9 13:21 14:7
 14:14 14:24 14:24 17:3 17:15 18:24 19:2 19:18 19:24
 19:4 19:18 19:25 20:12 20:19 20:25 20:25 20:25
 21:6 23:13 23:16 23:16 23:17 23:22 24:2 24:8 25:16
 25:19 26:1 26:17 27:18 27:19 28:2 28:13 28:21
 28:22 29:15 29:21 31:16 32:6 33:6 33:15 34:2 36:7
 36:11 39:8 39:13 41:10 41:18 42:5 46:4 49:22 51:8
 54:1 54:4 54:17 56:2 56:9 56:11 57:20 57:21 58:1
 58:3 58:12 58:13 58:23 59:12 59:18 60:17 61:13
 61:15 61:17 63:10 67:17 67:21 68:1 69:3 72:1 75:6
 77:24 78:16 81:8 85:17 87:10 108:16 108:23 109:3
 111:12 111:14 111:25 116:4 116:6 116:7 116:9
 122:17
interested(3) 6:20 7:4 8:4
interesting(1) 76:24
interests(10) 12:25 15:1 14:20 28:14 29:8 32:10 34:3
 55:18 55:21 59:15
interest"(1) 72:3
interjected(2) 78:23 79:2
intermarket(1) 77:44
interrupt(1) 91:10
intervening(1) 86:23
into(20) 15:20 18:9 26:15 29:9 29:22 32:11 32:12
 33:17 56:13 59:9 60:21 61:2 64:13 68:5 77:3 93:13
 98:12 107:8 112:23 115:21
intra-bond(1) 98:11
introduce(1) 89:8
introduced(1) 17:11
invariably(1) 9:19
investment(1) 8:4
invitation(1) 105:14
invite(1) 120:8
invoke(1) 103:17
involve(1) 76:8
involves(1) 35:15
involving(1) 97:8
ireland(1) 51:9
iridium(3) 75:9 75:10 76:6
irreconcilable(3) 36:16 37:17 39:18
ish(1) 32:2
isn't(12) 27:15 27:15 41:20 69:18 69:19 73:21 83:11
 87:9 107:24 110:14 117:7 123:3
issue(120) 10:22 10:23 13:7 14:7 14:10 14:14 15:2
 15:3 15:6 15:7 15:10 15:20 16:20 18:21 20:6 22:1
 24:10 24:18 24:21 24:22 25:1 25:10 25:24 26:24
 27:20 27:21 28:16 28:16 32:15 32:16 34:10 34:10
 36:4 36:14 36:15 36:18 36:23 37:4 37:7 37:15 38:11
 41:20 43:21 44:22 53:10 55:4 56:24 59:6 59:23
 60:7 60:16 61:17 61:18 62:20 62:22 63:10 63:12
 63:17 63:19 66:8 66:10 66:11 66:11 68:12 68:13
 71:10 72:9 74:2 75:15 79:2 79:6 79:12 80:5 80:23
 80:23 81:4 81:6 81:18 83:5 87:9 87:13 87:14 89:17
 90:4 97:15 97:18 97:20 97:21 98:1 98:8 98:16 99:10
 99:19 100:19 100:25 101:4 103:23 104:2 104:6 104:7
 105:9 105:15 106:2 106:5 106:7 108:19 109:24
 109:25 111:21 112:1 114:5 117:1 117:1 117:1 117:1
 117:13 117:14 122:9 123:8 123:18
issued(1) 41:22

issues(61) 12:16 13:13 13:17 13:23 13:24 14:4 15:10
 16:22 17:2 22:24 22:24 23:5 23:9 23:22 25:5 25:14
 29:10 29:13 31:10 32:7 32:14 34:5 41:2 45:15 46:5
 46:6 47:23 53:24 60:14 63:2 63:13 63:18 63:19 65:3
 80:21 81:24 84:12 84:16 84:18 84:22 92:13 92:23
 94:11 98:11 99:12 101:18 105:7 106:9 108:15 109:20
 110:18 110:19 115:13 115:23 116:17 118:8 118:8
 118:20 119:3 119:8 123:24
it'd(1) 73:7
it's(137) 9:4 10:22 11:23 12:11 12:18 14:9 15:2
 15:10 16:8 17:7 17:14 17:15 17:17 18:6 18:7 18:21
 18:25 18:25 19:2 19:4 21:20 21:20 23:4 23:4 23:16
 23:25 24:2 24:9 24:10 24:18 24:25 24:25 26:22 26:23
 27:16 28:16 28:16 29:8 29:19 30:20 36:1 36:10
 37:16 39:17 39:18 40:1 41:5 41:16 41:25 42:5 43:2
 43:2 44:12 47:5 47:18 47:19 48:21 49:4 49:12 49:14
 50:11 53:5 54:15 56:18 59:16 61:9 62:1 62:19 63:11
 63:18 67:14 67:16 73:14 74:5 75:2 75:5 75:5 75:8
 76:21 77:2 77:3 79:12 79:15 80:4 80:14 84:15 85:3
 87:12 87:25 88:2 88:5 88:10 89:4 89:20 91:11 93:9
 93:10 93:14 95:7 95:15 95:19 102:14 103:9 104:5
 104:11 105:12 105:13 105:17 106:2 106:7 107:21
 107:24 108:20 108:25 109:1 109:7 109:9 109:21 110:9
 111:8 111:13 113:2 113:3 113:13 113:16 114:5 115:17
 116:12 116:12 116:21 117:2 117:3 117:8 119:9 119:21
 120:2 121:21 122:19 123:11
items(1) 46:3
its(18) 15:7 16:4 21:24 21:24 28:24 29:13 35:19 38:3
 40:3 47:12 54:21 61:11 75:12 80:12 91:1 91:1 102:2
 112:14
itself(2) 26:10 101:21
it's(1) 111:8
jack(1) 71:33
jacob(2) 2:12 84:10
jacques(1) 5:45
jaime(1) 2:41
jam(4) 45:11 61:14 117:14 117:18
james(5) 1:32 3:32 4:7 7:17 61:22
january(1) 96:13
jefferies(1) 6:24
jeffrey(1) 7:13
jevic(1) 73:25
joanne(1) 4:14
job(2) 30:4 116:3
john(3) 5:12 5:27 42:24
join(1) 121:14
joinder(1) 100:15
joined(2) 56:24 121:7
joint(2) 5:26 49:5
jointed(1) 121:8
jointly(1) 1:6
jon(1) 7:9
jones(2) 2:27 6:40
joseph(1) 5:9
josh(1) 6:33
joyce(1) 4:13
judge(4) 1:19 1:20 9:30 30:22
judges(1) 105:22
judgment(28) 13:8 16:11 16:12 16:17 20:3 21:4 25:7
 41:15 62:15 69:6 69:13 70:3 70:20 72:2 72:11 76:18
 82:25 88:14 88:15 88:16 88:21 88:25 89:15 95:6
 97:25 104:17 104:23 120:10
judgments(2) 18:16 18:16
judicial(5) 33:5 33:8 35:12 40:1 40:9
july(20) 12:17 38:22 41:14 41:14 46:16 56:23 72:3
 77:25 78:21 86:24 87:7 87:18 87:18 87:19 87:24
 89:6 89:18 98:15 99:5 119:21
jump(1) 121:10
jumps(2) 89:7 89:7
june(15) 12:21 13:6 13:10 20:13 24:20 28:15 31:7
 38:6 38:7 38:8 61:5 83:4 85:5 86:23 110:6
junior(2) 17:25 117:3
junior-most(1) 19:4
jury(2) 45:15 45:16
just(85) 9:7 9:21 10:2 11:9 11:23 17:15 17:21 18:20
 18:22 18:25 20:20 20:25 27:20 27:21 31:1 32:7
 36:6 36:14 36:15 36:18 36:22 37:4 37:7 37:15 38:11
 41:20 43:21 44:22 53:10 55:4 56:24 59:6 59:23
 39:7 39:9 39:9 40:5 41:5 41:16 41:20 42:9 42:12
 44:10 45:19 46:16 47:23 48:4 48:9 50:16 50:20
 51:17 51:25 53:2 56:25 57:13 57:25 59:23 60:12
 63:19 64:7 64:10 63:6 64:19 65:10 67:2 67:9 68:7
 73:7 73:10 75:22 81:9 90:25 94:9 97:7 98:1 100:14
 101:20 101:21 103:22 104:4 105:16 106:11 106:16
 107:8 107:10 107:10 107:13 107:14 107:19 107:20
 107:22 108:12 111:5 114:25 116:18 116:19 117:24
 117:24
justice(2) 28:21 49:5
justification(1) 16:12
justified(1) 75:18
justify(1) 79:24
justin(2) 4:20 6:37
kamunting(1) 7:32
kathleen(1) 2:5
katten(1) 3:11
katzenstein(6) 19:24 78:19 86:22 88:9 98:5 106:1

keane(1) 2:28
keep(5) 11:9 21:8 29:16 29:16 60:20
kempner(1) 5:39
ken(2) 2:11 66:1
kent(1) 6:45
kevin(2) 11:9 8:9
key(2) 69:17 87:7
kibler(1) 5:12
kidding(1) 77:21
kimberly(1) 7:25
kind(2) 32:6 122:15
king(2) 2:43 3:21
kinrich(2) 94:18 94:21
kinrich's(2) 11:15 51:11
knew(4) 9:20 13:10 56:22 99:3
knock(2) 25:7 25:8
know(73) 12:5 14:16 15:4 15:7 23:14 26:19 31:6
 38:16 41:2 41:3 43:6 45:4 45:24 48:9 48:12 51:15
 51:17 51:19 52:20 57:6 54:8 59:1 62:1 62:1 65:1
 65:20 66:15 66:22 67:4 71:14 73:4 76:20 76:20
 77:14 78:24 79:11 79:24 79:25 80:3 80:8 82:10
 82:22 82:23 83:3 83:17 86:14 86:15 86:19 86:19
 86:21 88:4 88:8 88:9 89:17 93:20 97:19 98:2 98:3
 98:16 101:17 107:1 115:16 115:21 115:22 115:22
 117:16 119:8 119:9 122:14 122:18 123:12 123:23
knowledge(3) 42:14 43:20 87:13
knows(3) 31:7 48:18 55:8
koskie(1) 5:17
lack(1) 83:19
language(1) 71:13
large(3) 19:3 59:7 58:5
largely(1) 47:4
larger(5) 18:5 47:9 47:20 52:22 52:24
largest(1) 56:17
last(20) 20:23 28:18 30:1 31:10 31:12 40:2 50:5 50:5
 56:1 61:7 63:9 80:18 96:2 97:7 97:23 106:11 116:4
 116:20 122:6 122:8
lastly(2) 52:17 82:5
late(2) 33:23 37:23
later(9) 30:2 31:4 35:25 36:9 72:5 77:4 89:2 103:21
 113:23
latitude(1) 10:9
laughter(8) 65:25 66:19 73:9 77:12 93:19 93:21
 122:5 123:15
laura(1) 5:11
law(44) 12:25 15:21 16:10 16:15 16:22 18:6 18:13
 20:18 22:5 26:6 31:16 34:6 34:6 55:13 60:6 67:19
 68:19 68:20 69:9 72:17 74:7 77:5 77:22 78:4 81:16
 82:11 93:25 103:9 108:22 108:24 109:2 109:9 109:13
 109:17 109:22 109:24 110:18 111:8 111:9 111:9 115:19
 115:16 116:8 120:9 120:10
lawyer(1) 108:11
lawyering(2) 110:3 110:4
lawyers(5) 23:8 91:5 91:16 98:23 110:17
lay(2) 92:24 92:24
laying(1) 87:8
layton(1) 3:18
lead(1) 33:5
leading(3) 59:21 61:2 87:8
learned(1) 16:23
least(7) 10:9 35:17 37:2 68:25 77:2 82:6 105:13
leave(6) 57:18 58:24 65:4 70:16 80:7 102:22
leaves(2) 25:14 116:24
leaving(1) 23:7
leblanc(55) 2:21 9:15 9:20 9:23 10:5 10:7 10:10
 10:14 10:16 10:20 11:1 11:2 27:4 34:19 34:20 34:21
 34:23 35:5 35:21 36:20 38:22 40:18 40:21 40:23
 41:1 44:22 46:20 47:5 47:8 48:2 48:17 48:21 48:25
 50:13 53:17 57:17 65:3 65:6 66:15 93:16 93:20
 100:2 100:5 101:7 101:13 101:15 102:8 103:15
 104:17 105:7 107:10 108:6 119:23 120:2
left(4) 46:17 58:11 115:5 115:9
legal(33) 13:24 14:10 15:6 15:10 15:17 15:19 15:22
 19:18 20:6 20:14 25:24 25:25 27:20 27:21 31:1 32:7
 66:8 66:11 67:6 68:12 68:13 69:3 69:4 69:5 69:17
 75:25 83:4 81:18 83:5 83:23 84:11 84:16 84:24
 89:14 89:17 89:24 94:15 99:21 101:18 109:6 109:25 112:11 112:11
 117:1 117:13 117:18 123:1 123:7
length(4) 63:8 82:5 85:21 115:2
less(11) 39:21 52:6 59:14 71:3 75:10 82:20 82:21
 91:23 104:25 105:1 122:2
let(20) 35:8 36:17 40:15 41:5 41:6 44:10 50:16 54:19
 56:9 77:3 81:5 81:18 91:19 93:20 101:20 106:11
 106:24 112:2 112:12 118:18
let's(9) 24:19 28:1 28:11 28:11 55:3 64:24 85:1
 105:16 117:12
level(2) 85:25 99:20
lever(1) 119:3

| Word | Page:Line |
|------|-----------|
| leverage(2) 76:23 76:25 | |
| levers(2) 113:6 119:2 | |
| liabilities(3) 42:21 52:1 112:22 | |
| liable(1) 51:25 | |
| liberal(1) 93:25 | |
| liberty(2) 137 54:5 | |
| life(3) 54:5 116:18 | |
| light(5) 16:4 28:10 87:21 87:21 114:1 | |
| like(21) 20:2 28:6 36:2 40:9 40:25 47:18 55:20 55:23 61:10 62:12 64:19 70:3 70:4 70:6 70:9 71:20 91:19 111:9 116:15 116:16 117:24 | |
| likelihood(7) 18:19 19:15 20:7 21:8 91:6 91:7 123:5 | |
| likely(3) 45:16 59:24 103:16 | |
| likes(2) 108:13 117:5 | |
| limit(7) 53:24 69:3 72:7 72:16 101:21 104:25 105:4 | |
| limited(3) 89:7 106:16 118:5 | |
| line(15) 14:15 14:17 15:1 31:15 80:25 82:24 82:25 82:25 83:1 83:1 83:4 116:20 120:24 123:2 123:3 | |
| lines(1) 82:23 | |
| linked(1) 68:11 | |
| lion(1) 6:36 | |
| liquidating(1) 70:6 | |
| liquidation(10) 69:1 69:2 69:23 69:24 70:6 70:13 70:17 75:5 76:2 120:12 | |
| liquidations(1) 70:9 | |
| lisa(1) 1:33 | |
| list(3) 11:11 45:21 45:21 | |
| listen(8) 9:7 42:12 48:5 66:24 66:24 112:5 112:6 112:9 | |
| listening(1) 61:4 | |
| literally(3) 39:9 58:16 87:11 | |
| litigate(10) 17:12 22:20 22:20 23:21 24:11 24:13 32:15 32:16 38:11 114:4 | |
| litigated(2) 21:9 21:14 | |
| litigating(2) 2:21 29:16 | |
| litigation(28) 13:4 15:14 15:15 17:7 18:11 21:4 21:21 22:17 22:23 23:24 26:24 27:22 35:3 35:24 72:5 72:9 77:18 96:21 96:24 96:24 97:1 97:2 97:6 97:9 99:18 114:2 114:25 119:7 | |
| little(12) 30:2 30:12 33:2 33:17 39:11 40:19 41:2 41:2 47:17 68:6 88:17 116:25 | |
| live(2) 14:7 110:1 | |
| llc(6) 1:43 4:13 5:44 6:20 7:40 8:8 | |
| llp(13) 1:24 2:33 3:1 3:32 4:25 4:34 4:38 4:42 4:47 5:4 5:8 5:17 5:35 | |
| lock(3) 71:11 71:24 79:16 | |
| locked(1) 59:9 | |
| locking(1) 79:22 | |
| log(4) 15:11 61:14 117:14 117:18 | |
| long(18) 11:17 12:5 13:12 16:12 30:1 31:8 54:16 59:3 59:4 62:1 65:6 101:16 101:23 118:7 119:6 119:7 119:24 123:18 | |
| longer(1) 36:10 | |
| look(43) 12:22 13:2 13:6 15:9 15:22 18:5 22:6 22:11 23:5 23:19 24:5 25:12 30:16 31:8 39:23 49:23 56:10 56:14 58:9 58:14 66:8 69:8 74:17 74:18 79:17 95:3 95:20 101:21 111:5 111:10 112:2 114:17 114:22 116:7 116:9 117:10 117:12 120:8 120:9 120:11 120:13 120:15 121:15 | |
| looked(6) 45:8 67:12 94:4 94:4 94:8 94:22 | |
| looking(5) 18:10 19:14 33:25 54:15 94:23 | |
| looks(5) 20:2 22:16 52:4 54:24 72:19 | |
| loose(1) 37:10 | |
| losing(1) 38:18 | |
| lost(3) 37:1 105:10 109:19 | |
| lot(16) 15:19 17:17 32:2 34:5 34:8 74:24 76:7 93:14 96:14 98:21 107:25 108:15 112:21 115:1 117:14 123:23 | |
| love(1) 77:9 | |
| lovells(2) 4:34 4:47 | |
| low(3) 21:3 95:16 115:18 | |
| lowenthal(1) 3:26 | |
| lower(3) 20:3 20:12 21:10 | |
| lowest(4) 17:3 17:5 19:7 54:10 | |
| ltd(1) 17:19 | |
| luton(1) 3:41 | |
| mace(1) 1:41 | |
| macquarie(1) 6:44 | |
| made(5) 13:11 17:22 29:11 29:23 30:24 31:14 36:23 40:9 52:13 56:12 63:22 66:2 86:20 95:7 99:2 100:6 103:3 104:24 105:11 112:9 | |
| madison(2) 3:3 4:8 | |
| magic(3) 27:9 29:5 78:18 | |
| magnitude(6) 51:10 84:18 85:2 88:23 88:24 90:6 | |
| maine(1) 3:5:16 | |
| major(4) 60:14 71:21 94:15 94:15 | |
| majority(1) 69:4 | |

| Word | Page:Line |
|------|-----------|
| make(35) 14:1 14:19 15:18 16:17 20:17 22:8 22:9 22:13 24:14 28:13 29:15 31:24 38:17 39:25 50:16 63:9 63:21 63:23 64:10 64:16 67:16 72:18 72:25 78:1 78:2 80:10 90:21 94:14 101:24 111:13 112:16 113:10 114:21 118:13 118:14 | |
| makes(6) 18:2 52:15 86:25 99:8 104:23 124:2 | |
| making(7) 11:5 18:4 35:17 40:14 60:10 83:22 100:19 | |
| management(8) 4:5 6:12 7:4 7:12 7:24 8:16 8:20 | |
| manas(1) 6:5 | |
| mandate(1) 118:5 | |
| manhattan(1) 2:23 | |
| manner(4) 60:14 84:24 105:25 108:3 | |
| mantra(1) 16:5 | |
| many(10) 18:21 29:23 45:5 61:3 82:17 84:16 106:3 113:1 113:2 119:6 | |
| marching(1) 68:3 | |
| margot(1) 1:35 | |
| mark(1) 5:13 | |
| marked(1) 12:23 | |
| market(6) 11:1 1:27 2:6 2:29 4:15 10:17 | |
| martin(12) 15:22 18:10 18:19 19:14 21:19 34:7 39:1 39:4 53:25 85:24 91:7 103:7 | |
| mason(1) 7:29 | |
| material(4) 15:3 22:3 25:17 68:17 | |
| materially(1) 13:19 | |
| math(7) 43:2 47:13 47:17 49:13 78:20 79:12 118:1 | |
| mathematical(3) 78:15 78:25 79:9 | |
| matter(13) 11:10 64:19 68:19 68:20 70:3 70:4 72:17 78:4 82:11 84:20 89:1 91:6 124:10 | |
| matters(1) 122:13 | |
| matthew(4) 4:48 5:23 6:9 8:17 | |
| matz(1) 5:32 | |
| maximum(6) 39:22 78:16 96:10 115:14 115:15 118:9 | |
| may(14) 13:19 23:22 25:16 25:16 28:12 35:1 37:20 38:20 40:19 45:1 54:4 57:18 57:25 58:11 | |
| maybe(6) 28:7 51:16 58:20 115:15 115:15 118:9 | |
| mccloy(2) 2:19 5:31 | |
| mean(12) 30:2 42:10 52:6 67:15 76:22 78:13 80:23 85:8 85:11 91:9 97:7 122:13 | |
| meaning(2) 42:11 75:24 | |
| meaningful(1) 14:1 | |
| meaningfully(1) 13:15 | |
| means(4) 69:6 71:2 75:22 120:10 | |
| meant(1) 92:23 | |
| measure(1) 23:14 | |
| measured(4) 13:5 20:5 20:7 71:5 | |
| mechanical(1) 85:9 | |
| mediate(1) 105:3 | |
| mediations(5) 105:22 109:18 109:19 109:20 114:5 | |
| mediators(1) 110:17 | |
| meet(3) 37:22 85:1 99:20 | |
| meeting(14) 12:17 12:17 12:18 29:25 38:13 87:24 88:1 88:2 88:8 88:8 88:9 88:10 89:6 89:9 89:19 | |
| meetings(1) 114:15 | |
| meets(3) 85:23 108:1 | |
| mellon(2) 3:39 64:7 | |
| members(3) 55:1 55:4 55:17 | |
| mere(1) 83:23 | |
| merely(1) 115:19 | |
| merit(2) 40:11 40:14 | |
| merits(9) 16:17 16:18 18:19 19:16 20:7 78:22 81:7 97:15 108:15 | |
| message(2) 105:18 105:20 | |
| met(5) 37:21 37:23 37:24 58:13 70:7 74:22 | |
| method(1) 44:4 | |
| methods(3) 43:25 44:2 | |
| michael(5) 3:40 5:5 5:35 5:36 64:6 | |
| mid-july(1) 86:10 | |
| midday(1) 87:24 | |
| middle(4) 30:13 37:24 111:23 114:23 | |
| might(3) 23:21 57:3 57:12 64:25 67:4 80:3 80:4 80:6 | |
| milbank(3) 2:19 5:31 34:21 | |
| miles(1) 69:01 | |
| miller(2) 3:33 4:39 | |
| million(47) 14:25 14:25 19:22 28:4 28:12 36:23 37:4 37:7 39:17 48:16 48:17 48:21 49:9 49:11 49:13 49:19 50:4 50:6 50:9 50:18 50:19 50:21 51:3 51:11 52:7 52:8 57:23 58:19 58:20 58:24 71:3 78:8 81:17 88:18 88:20 89:8 89:8 89:10 89:20 94:25 95:12 104:14 104:21 104:21 106:20 106:24 107:6 107:12 | |
| millions(2) 58:17 110:8 | |
| mind(3) 35:19 117:21 123:14 | |
| mini-trial(1) 16:16 | |
| minimum(1) 46:14 | |
| minor(1) 75:16 | |
| minsky(1) 5:17 | |
| minus(1) 12:7 | |
| minute(3) 15:6 64:25 68:6 | |
| minutes(2) 65:9 119:13 | |
| miscalculated(1) 79:11 | |

| Word | Page:Line |
|------|-----------|
| misdirection(2) 115:25 116:2 | |
| miserably(1) 42:8 | |
| misspoke(1) 57:7 | |
| misstatement(1) 115:25 | |
| misstatements(1) 121:11 | |
| mistake(1) 81:2 | |
| model(6) 91:25 92:16 93:11 94:6 96:9 107:7 | |
| modeled(2) 92:13 92:13 | |
| modeling(2) 99:16 112:17 | |
| models(1) 27:12 | |
| mole(1) 33:18 | |
| moment(10) 42:1 43:11 44:9 54:19 56:12 56:16 56:23 80:9 80:21 102:13 | |
| momentum(2) 59:9 60:20 | |
| monday(1) 61:2 | |
| money(46) 19:1 19:22 22:9 23:23 25:19 25:20 26:8 26:9 26:10 26:10 26:15 27:20 27:22 27:25 28:2 28:22 29:1 29:14 29:16 31:5 32:7 33:5 33:9 49:22 51:18 59:2 92:4 92:5 92:6 99:23 107:1 107:25 109:1 112:18 112:21 112:22 113:3 115:6 115:8 116:1 116:12 116:17 117:18 121:1 122:16 | |
| money's(2) 26:12 26:23 | |
| monitor(47) 2:4 5:8 13:6 17:22 18:2 18:25 21:24 29:21 32:21 32:23 36:5 36:8 38:2 38:7 40:3 40:3 42:20 48:8 48:10 48:14 53:8 53:10 53:11 62:2 52:12 54:20 54:25 55:16 56:22 60:13 61:12 66:2 77:8 79:4 79:11 99:11 99:1 100:20 103:2 103:25 105:19 105:19 105:20 106:6 107:23 118:2 | |
| monitor's(19) 12:24 12:25 42:8 43:23 49:24 50:3 51:23 52:5 52:10 52:11 53:11 57:1 57:8 57:9 61:11 71:16 95:23 100:17 100:22 | |
| month(7) 14:25 20:24 28:18 28:19 28:23 33:7 111:18 | |
| monthly(4) 92:19 95:23 95:24 96:1 | |
| months(8) 48:9 48:13 50:5 62:18 109:5 109:5 109:6 110:12 | |
| mor(2) 50:17 51:5 | |
| morass(1) 22:18 | |
| more(48) 14:5 15:13 15:14 20:14 23:20 31:5 31:5 31:14 31:14 34:12 34:25 37:6 41:6 45:23 46:9 46:23 64:8 64:15 67:13 68:6 70:13 70:17 70:20 71:22 72:13 72:21 73:8 74:18 74:19 82:9 83:20 85:7 92:19 96:8 96:12 103:16 107:1 107:6 109:20 111:13 114:1 116:11 116:24 117:2 117:3 118:6 118:11 123:5 | |
| morning(17) 9:3 11:5 34:20 34:22 53:19 53:20 57:17 58:20 61:22 62:1 64:4 64:5 65:15 65:16 84:8 84:9 108:9 | |
| morris(2) 1:24 3:32 | |
| most(6) 19:21 39:16 48:2 70:23 75:11 78:17 | |
| motion(26) 12:10 34:4 59:10 63:15 64:14 64:15 64:21 66:7 66:12 71:25 79:3 79:10 79:17 83:10 97:23 99:6 99:6 100:21 109:8 116:22 119:10 121:10 121:13 121:14 121:16 121:21 | |
| motions(1) 97:13 | |
| move(2) 80:22 82:10 | |
| moved(1) 74:7 | |
| moving(1) 34:25 | |
| mr. britvin(1) 50:19 | |
| mr. britvin's(1) 39:24 | |
| mr. bromley(1) 37:21 | |
| mr. coleman(3) 102:5 111:7 122:3 | |
| mr. katzenstein(2) 31:9 82:23 | |
| mr. katzenstein's(1) 120:24 | |
| mr. kennedy(1) 88:4 | |
| mr. leblanc(4) 34:17 58:20 86:17 112:8 | |
| mr. leblanc's(1) 112:6 | |
| mr. o'connor(1) 100:3 | |
| mr. pullman(2) 84:4 112:15 | |
| mr. ray(3) 22:22 24:5 60:10 | |
| mr. wertheim(1) 88:5 | |
| ms. schweitzer(3) 9:4 90:3 102:23 | |
| much(13) 22:2 52:22 52:8 53:16 56:18 67:13 67:13 68:25 71:3 84:6 86:2 107:5 122:21 | |
| muchin(1) 3:1 | |
| mui(1) 7:33 | |
| multiple(3) 86:3 110:15 110:16 | |
| multiplied(1) 82:19 | |
| murphy(1) 2:5 | |
| must(4) 72:25 73:3 75:20 82:13 | |
| myriad(1) 84:17 | |
| myself(2) 38:14 63:21 | |
| name(1) 96:1 | |
| names(1) 62:7 | |
| napier(1) 7:16 | |
| narrowing(1) 29:10 | |
| nature(3) 13:24 55:7 67:6 | |
| naval(2) 35:22 36:1 | |
| near(1) 28:8 | |
| nearly(4) 14:25 62:6 62:18 71:3 88:20 88:21 88:22 | |
| necessarily(1) 34:7 | |
| necessary(1) 100:13 | |

| Word | Page:Line |
|------|-----------|
| need(27) 9:9 9:25 16:15 22:6 22:20 26:11 26:11 33:1 36:25 39:3 60:20 65:5 83:1 92:3 92:16 103:3 103:7 105:18 105:19 105:22 106:7 106:8 106:23 107:6 107:7 107:11 121:16 | |
| needed(2) 91:2 116:11 | |
| needs(9) 33:22 34:20 43:22 43:24 60:21 69:17 72:18 73:14 85:9 | |
| negotiate(3) 24:15 85:10 114:20 | |
| negotiated(2) 23:1 29:22 | |
| negotiating(3) 61:1 76:24 85:12 | |
| negotiation(7) 86:1 87:24 89:11 96:17 99:14 105:24 115:24 | |
| negotiations(9) 12:15 30:7 37:19 61:15 85:16 87:6 87:15 87:16 92:8 | |
| neither(2) 15:8 70:24 | |
| networks(2) 1:8 4:33 | |
| neutral(1) 21:24 | |
| neutralized(1) 26:21 | |
| never(19) 16:20 18:12 21:14 22:8 22:12 28:3 29:3 29:17 33:9 33:10 56:18 66:14 67:8 99:1 99:4 116:23 118:23 123:22 | |
| new(20) 1:38 2:15 2:24 2:36 3:4 3:15 3:28 3:38 3:42 4:9 4:28 15:5 35:16 35:24 51:14 64:7 64:12 64:13 80:12 103:23 | |
| newbould(2) 28:21 49:6 | |
| news(1) 73:5 | |
| next(10) 20:12 20:13 33:7 40:6 57:24 92:7 107:16 114:8 114:9 124:3 | |
| nibble(1) 93:15 | |
| nice(1) 73:7 | |
| nichols(1) 1:24 | |
| nick(1) 2:22 | |
| night(2) 69:10 71:13 | |
| nixdorf(1) 5:13 | |
| nne(3) 24:9 51:25 62:20 | |
| nnc's(1) 51:14 58:3 59:11 59:18 62:6 62:22 62:22 62:25 63:1 63:2 63:3 63:11 63:12 98:1 105:7 | |
| nnccs(1) 63:11 | |
| nni(25) 14:5 42:25 44:5 46:6 46:17 46:22 47:3 47:11 48:22 49:8 49:10 50:10 50:15 52:2 62:16 62:22 62:22 62:23 63:1 63:1 82:7 90:8 90:9 90:10 90:15 | |
| nni's(1) 59:2 | |
| nnl(25) 46:17 46:25 47:4 48:22 49:12 50:11 51:20 51:25 68:10 68:16 68:22 68:25 69:12 78:12 80:4 80:6 80:7 80:9 81:12 81:25 82:2 82:3 115:4 115:5 115:19 | |
| nnl's(6) 70:17 72:14 78:8 78:9 78:11 81:24 | |
| nobody(1) 55:8 | |
| nobody's(1) 83:15 | |
| noise(1) 113:6 | |
| non-consented(1) 109:11 | |
| non-liquidating(1) 70:9 | |
| non-party(1) 8:20 | |
| non-settling(1) 64:18 | |
| noncontroversial(1) 112:16 | |
| none(3) 67:19 97:13 122:13 | |
| nortel(6) 1:8 43:17 5:43 13:25 61:15 | |
| not(182) 9:9 14:9 14:21 16:6 16:15 16:17 18:6 18:7 18:20 18:22 18:23 18:25 19:2 19:16 19:21 20:17 20:24 21:4 21:17 21:21 22:3 22:9 22:13 23:4 23:23 24:18 25:16 25:22 26:9 26:10 26:12 26:23 26:24 27:3 27:16 28:12 29:2 29:2 29:19 29:19 31:22 31:23 33:3 41:16 41:25 42:11 43:21 43:23 43:25 45:14 45:21 46:3 53:5 53:6 54:4 55:6 55:15 56:18 57:9 57:25 58:4 61:5 63:21 65:20 65:22 65:25 65:6 66:6 66:17 66:25 67:5 67:14 67:24 688:7 69:6 70:3 75:9 72:18 72:19 72:22 73:23 74:2 74:14 75:5 75:5 75:13 75:21 76:4 77:6 79:24 80:3 80:5 80:25 80:23 82:14 83:21 84:22 84:23 84:24 85:5 86:10 87:1 89:12 89:24 90:16 90:25 91:15 92:1 93:5 93:16 94:9 95:1 95:7 95:19 96:17 97:19 98:1 98:13 98:18 98:18 98:18 99:20 100:10 100:14 104:5 107:20 107:22 108:13 108:18 109:24 109:25 110:7 110:13 110:14 110:20 110:21 111:2 111:13 112:3 112:13 112:19 112:19 112:20 118:8 118:17 118:17 118:21 119:18 121:10 121:14 121:17 | |
| note(5) 30:17 49:4 50:2 63:3 100:14 | |
| note-holders(1) 63:14 74:22 | |
| notes(3) 62:20 62:22 63:4 | |
| nothing(4) 44:6 93:7 123:19 123:20 | |
| notion(1) 95:17 | |
| notional(1) 78:24 | |
| november(5) 1:14 9:1 9:9 9:16 124:13 | |
| novo(1) 72:12 | |

| Word | Page:Line |
|---|---|

now(7) 12:7 14:22 15:5 17:9 22:20 24:10 24:25 26:16 26:21 28:17 28:25 36:2 36:9 37:15 37:17 37:17 39:4 39:14 40:15 45:19 46:8 56:22 66:14 68:5 68:13 69:8 69:15 71:11 71:12 71:24 72:15 74:3 74:15 75:24 76:23 77:8 78:1 78:13 78:21 78:25 79:6 79:16 80:17 81:3 83:4 82:9 87:19 89:13 91:11 93:9 93:16 94:12 94:22 96:4 96:14 97:17 99:2 103:9 104:15 105:17 109:6 109:7 110:9 111:1 111:23 117:15 121:24

number(29) 27:9 36:16 39:19 49:9 49:11 49:13 50:25 51:23 57:23 78:19 82:16 85:9 87:23 95:15 106:20 106:22 107:2 107:3 107:14 113:12 113:13 113:13 113:18 113:25 114:2 114:5 114:13 114:14 114:15

numbers(9) 27:24 33:12 38:19 46:11 48:3 51:22 51:24 58:17 87:22

numerous(1) 45:2
o'clock(1) 37:24
o'connor(7) 100:8 100:9 100:11 100:14 100:17 101:5 101:6

object(3) 62:12 71:16 100:5
objected(1) 99:9
objection(3) 7:11 30:16 110:20
objections(4) 31:19 33:23 33:24 64:17
objective(1) 117:25
obligation(1) 20:17
obliterate(1) 81:1
obscure(1) 67:5
observation(1) 63:9
obtaining(2) 96:19 123:5
obviated(1) 60:9
obvious(1) 80:15
obviously(6) 19:15 32:9 47:6 70:25 74:3 79:1
occurred(5) 17:8 37:20 37:23 40:5 105:25
off(9) 15:19 26:14 57:22 58:10 76:19 106:4 119:3 121:8 121:10

offensive(1) 30:2
offer(2) 43:17 88:23
offered(2) 51:13 90:24
offering(1) 118:2
officer(2) 15:15 116:2
offices(1) 87:25
official(6) 3:7 5:21 53:22 54:2 98:23 98:24
okay(18) 9:14 9:22 10:4 10:7 11:2 11:21 27:5 67:9 72:19 75:1 119:19 120:1 120:8 121:20 121:22 122:13 122:18 122:19

old(2) 111:11 114:8
once(3) 98:7 113:7 113:15
one(79) 1:37 2:23 2:35 3:13 3:20 11:10 11:14 11:16 11:17 12:7 22:10 27:13 29:24 33:15 33:16 37:11 37:11 37:12 37:22 38:4 39:6 40:2 40:6 46:4 46:22 46:23 48:9 49:23 50:2 50:16 54:19 55:13 64:7 64:8 64:10 66:13 67:22 67:23 69:6 70:6 70:9 71:21 72:17 73:23 75:8 78:17 78:25 85:1 89:7 92:15 93:6 96:13 96:23 99:25 100:15 101:20 103:5 106:11 108:1 108:3 108:4 108:14 109:10 109:10 109:22 109:24 110:25 111:24 112:10 113:9 113:12 113:25 117:17 118:15 119:3 119:18

one's(1) 115:13
one-off(2) 12:18 32:11
one-time(1) 71:23
ones(2) 12:2 60:15
only(35) 14:12 19:2 19:6 20:14 20:24 21:13 22:11 24:23 39:20 45:7 51:22 51:24 59:16 63:12 66:12 67:23 67:25 69:21 75:16 75:17 78:21 79:24 80:19 81:3 82:2 94:19 94:21 104:21 111:4 115:4 115:5 120:24 120:25 121:5 123:21

open(5) 23:7 25:24 88:15 88:19 105:15
opened(1) 88:9
opening(8) 28:10 50:25 88:23 94:24 95:7 95:8 107:15 110:21

openings(1) 106:16
opens(2) 22:23 88:20
operating(2) 95:23 95:24
opine(1) 19:16
opinion(7) 31:4 41:8 43:17 45:13 74:9 89:22 89:23 91:18
opportunity(2) 53:12 65:1
oppose(1) 110:10
opposed(3) 36:25 111:15
opposing(1) 17:22
opposite(1) 17:13
opting(1) 97:19
options(1) 92:25
oral(1) 89:10
order(13) 14:10 16:19 32:16 51:10 74:8 74:11 88:17 90:6 96:9 96:10 98:6 114:23 119:4

ordered(1) 87:2
orientated(1) 92:22
original(2) 17:16 21:11
originally(1) 11:16
osg(5) 21:1 76:7 76:7 76:15 88:12

other(52) 12:18 13:2 17:17 17:18 23:21 24:9 25:7 25:8 25:15 27:17 28:11 29:11 40:15 54:6 56:6 57:25 58:7 58:12 58:18 58:23 59:9 59:15 59:19 60:16 60:19 61:5 63:12 63:19 67:12 67:25 70:2 70:12 71:19 76:10 77:18 81:19 86:3 90:1 96:18 97:25 98:2 102:19 105:6 111:25 113:6 114:18 115:7 115:8 115:13 116:16 117:19 121:6

others(2) 27:14 55:23
otherwise(2) 69:7 84:3
ought(3) 75:1 83:9 122:15
our(42) 15:13 16:11 11:11 28:4 29:19 30:4 31:6 33:22 33:24 34:1 34:2 35:3 35:5 37:22 40:23 47:8 52:18 58:14 60:4 63:3 63:14 63:23 63:24 65:2 66:10 66:25 67:2 67:7 72:7 72:9 77:20 77:21 83:20 93:23 104:22 105:19 108:20 117:21 118:3 119:21 120:5 121:2

out(40) 12:16 12:21 14:4 15:3 18:18 20:19 21:22 27:25 27:24 28:6 29:14 41:25 42:22 51:12 54:7 58:14 65:6 67:2 72:10 74:25 82:10 84:18 84:22 85:13 85:24 86:25 87:5 89:3 90:11 92:24 97:19 98:19 105:8 109:21 110:7 112:12 112:21 115:5

outcome(2) 89:1 91:13
outcomes(4) 17:8 27:13 94:25 113:2
outrageous(1) 33:11
outside(3) 110:16 110:17 117:25
outsource(1) 73:5
outstripped(1) 77:17
over(18) 12:7 20:2 20:3 20:11 20:15 21:12 22:18 22:19 22:19 26:24 28:17 28:23 29:2 31:10 34:16 38:11 38:12 38:15 38:16 40:5 40:6 50:4 50:4 51:11 57:24 70:15 70:16 84:3 99:15 104:23 105:21 107:16 113:8 113:8 113:16 119:2 123:3

overcome(1) 22:9
overhang(1) 56:10
overnight(1) 40:18
overwhelming(2) 42:2 69:4
overy(4) 2:10 5:8 66:2 84:10
owe(1) 90:10
owes(1) 90:10
owing(1) 58:23
own(12) 47:8 47:12 61:11 62:5 78:18 80:12 89:22 89:23 89:25 90:20 112:13 112:14

owned(1) 51:19
o'connor(1) 4:26
p.m(1) 89:18
pachulski(1) 2:27
page(6) 71:14 103:2 106:18 107:16 107:17 123:2
paid(18) 19:18 20:19 20:23 20:24 20:25 21:1 37:5 47:10 58:12 70:2 70:20 76:9 85:5 88:14 92:18 105:1 106:4

paige(1) 7:37
pages(1) 93:2 99:17 108:13 108:14 108:15
papers(11) 35:3 35:5 44:18 44:19 54:21 61:12 63:24 74:16 100:22 105:19 108:20

paperwork(1) 113:16
par(1) 122:17
paragraph(5) 49:3 71:25 72:8 98:16 98:17
paragraphs(1) 52:11
paramount(9) 8:24 23:13 23:17 24:2 29:8 54:1 54:7 56:9 58:13

parent(3) 13:22 90:11
park(3) 2:35 3:13 7:16
parked(1) 110:9
part(10) 9:8 37:2 60:1 97:20 117:2 119:18 119:22 119:23 120:5 122:18

particular(3) 36:14 94:10 104:3
particularized(1) 96:9
particularly(2) 55:9 57:15
particulars(4) 93:13 95:18 97:9 97:11
parties(39) 14:5 15:11 15:17 19:2 22:8 30:24 30:25 31:24 34:3 35:12 38:10 61:3 61:8 64:17 68:9 71:9 71:15 72:1 72:18 73:6 75:21 85:7 85:14 86:15 87:11 87:13 93:9 98:22 101:2 103:9 104:6 113:15 116:5 117:11 117:21 117:22 119:8 119:8 119:9

party's(2) 73:23 75:7
past(1) 59:10
path(1) 77:7
patterns(1) 32:11
patterson(1) 3:25
pave(2) 60:3 61:18
pay(11) 13:20 21:3 21:17 26:20 39:12 41:18 66:22 70:15 92:1 121:1 122:10

payable(2) 14:14 41:10
paying(2) 17:25 46:24

payments(3) 52:13 52:16 94:8
pbgc(8) 25:3 50:15 50:19 55:23 102:1 102:2 102:8 107:18

peg(1) 6:41
pen(1) 93:2
pennsylvania(2) 1:45 74:7
pension(12) 4:19 4:34 4:46 5:4 13:1 14:22 17:20 31:21 31:23 33:13 55:4 58:4

pensyl(1) 2:13
people(31) 17:4 21:22 22:19 25:3 25:7 27:12 28:20 28:23 30:9 31:15 33:13 33:16 59:4 64:25 88:5 106:2 109:16 109:25 110:1 111:13 111:22 111:25 112:6 114:4 115:1 115:18 116:11 116:15 117:12 121:6

percent(36) 20:4 20:11 20:11 21:11 21:16 46:22 47:1 47:1 47:16 47:21 49:10 49:12 49:12 50:14 52:23 52:23 58:3 59:12 59:14 62:6 79:13 88:11 89:10 104:19 104:20 113:15 113:15 113:18 113:19 113:24 114:7 114:12 115:14 115:16 115:16

percentage(1) 47:20
perfect(1) 31:3
perfectly(3) 92:8 92:9 98:25
period(6) 38:15 38:16 50:5 96:2 101:23 123:21
permission(1) 66:3
permit(1) 75:16
permutations(1) 109:9
perry(1) 7:36
person(5) 60:11 87:7 117:25 118:2 118:3
peter(1) 2:28
petition(8) 12:14 13:21 28:21 39:13 58:1 67:19 67:22 68:1

ph.d(1) 52:20
phrase(4) 54:3 69:5 75:25 87:20
pick(1) 41:2
picked(1) 107:14
piece(2) 59:8 98:17
pieces(1) 59:9 114:3
pile(1) 15:23
pillar(1) 69:17
pin(1) 113:19
pinckney(2) 4:12 4:14
pins(1) 29:9
place(7) 37:20 59:8 59:9 77:19 86:17 86:23 113:5
plain(1) 73:20
plainly(2) 43:23 43:25
plan(36) 4:47 17:23 18:5 18:6 18:7 18:9 68:15 68:22 68:25 70:7 71:16 71:17 71:17 71:20 71:24 72:15 72:22 73:1 76:1 76:9 76:13 76:14 76:15 76:18 76:20 78:3 79:16 79:16 79:18 79:20 80:5 80:12 80:16 81:22 88:13 111:12

plans(1) 116:17
platitudes(1) 84:19
play(2) 21:21 73:8
playing(1) 37:10
plaza(1) 1:37 2:23 2:35
plc(1) 7:28
pleading(2) 13:6 62:18
pleadings(1) 12:9
please(8) 9:2 9:3 40:17 40:21 65:4 65:11 65:12
pleasure(1) 27:6
plenty(1) 32:25
plus(3) 28:4 122:17 122:17
podium(2) 34:16 101:11
poetry(1) 54:5
point(46) 6:8 13:25 14:3 17:3 17:5 19:7 25:20 26:14 31:12 35:9 39:23 42:6 47:24 48:3 50:16 57:14 58:15 59:5 60:10 62:11 64:10 66:6 67:16 71:20 72:10 74:8 77:5 78:10 80:14 83:24 88:16 91:10 91:20 93:14 95:10 97:11 105:11 106:11 109:2 109:10 109:16 109:19 121:2 122:8

pointed(3) 38:24 95:11 98:14
points(2) 82:9 97:1
poke(1) 93:15
policy(1) 16:5
pool(5) 47:16 47:16 47:20 51:4 52:23 53:1
portion(1) 104:21
portsmouth(1) 35:22
posit(1) 33:22
position(12) 14:1 27:2 35:24 36:3 40:6 60:5 62:23 63:23 72:9 77:20 77:21 78:12

positions(17) 15:17 24:6 24:6 30:24 30:25 31:2 31:6 31:7 31:16 31:23 35:12 37:17 38:10 39:16 39:17 40:4 104:1

possesses(1) 93:24
possibilities(2) 17:7 92:25
possibility(1) 27:25
possible(5) 69:8 73:4 80:4 94:17 120:25
possibly(1) 77:19
post(5) 12:13 13:20 28:20 39:12 57:25

post-petition(37) 12:20 13:9 14:6 14:23 17:13 17:15 19:17 19:25 23:22 24:8 25:16 27:18 27:19 28:14 28:22 33:6 33:15 41:18 42:5 46:24 52:18 54:17 57:20 57:21 60:17 61:13 61:17 69:3 72:2 87:10 108:16 109:3 111:2 111:12 111:14 112:24 122:17

pot(1) 33:16
potent(1) 54:11
potential(7) 13:15 13:18 14:6 15:13 89:1 92:1 96:10
potentially(3) 27:23 115:6 118:19
power(3) 77:25 78:1 78:2
powerful(1) 93:6
ppearances(3) 1:22 2:1 4:1
ppi(20) 12:16 12:20 36:15 42:4 44:6 49:10 52:17 63:10 63:11 63:19 78:15 79:20 87:13 91:6 97:15 97:18 97:24 97:25 98:3 98:7

practical(2) 13:24 117:18
pre-plan(1) 76:8
preamble(1) 43:14
precisely(2) 69:14 69:15
predicates(2) 79:17 79:18
predominant(1) 18:22
preliminary(1) 99:9
premise(3) 25:9 83:24 109:2
premised(1)
prepared(7) 14:9 94:5 95:5 95:25 96:1 96:5 96:7
preparing(1) 93:11
present(8) 42:19 42:25 70:23 70:24 88:2 88:3 88:3 88:4

presentation(2) 66:16 90:14
presented(8) 13:7 37:2 37:3 38:2 39:8 41:17 104:8 108:3

preserved(1) 98:11
pressure(1) 32:18
presumably(2) 44:6 79:21
presume(1) 114:24
presuming(1) 122:12
pretty(3) 15:24 15:25 78:20
prevail(2) 35:24 104:20
preventing(2) 110:6 117:19
price(2) 3:39 64:6
principal(5) 11:17 16:22:20 87:7 116:2
principals(1) 88:1
principle(2) 22:6 68:2
principles(4) 15:24 22:14 43:24 44:1
print(1) 103:5
prior(2) 28:10 85:5
priority(2) 18:4 75:22
private(1) 36:2
pro(1) 33:14
probability(2) 59:24 59:25
probably(2) 86:2 119:13
probe(1) 118:18
procedural(1) 17:14
procedurally(1) 103:12
proceed(1) 91:19
proceeded(1) 118:2
proceedings(5) 1:48 13:49 13:25 62:7 124:10
proceeds(4) 14:15 36:10 49:7 69:22
process(16) 64:17 64:20 64:23 76:24 77:4 85:11 85:12 85:13 85:22 85:25 86:4 86:8 86:10 86:18 98:20 116:7

produce(1) 87:2
produced(3) 1:50 85:23 87:3
product(1) 43:24
professional(1) 116:14
professionals(3) 30:3 30:4 110:17
progress(1) 24:14
prolonged(2) 21:14 22:17
promise(1) 21:17
promptly(1) 9:11
proof(1) 16:9
proper(1) 72:2
property(3) 36:14 74:3 74:4
proponent(1) 75:18
proponents(1) 85:20
proportion(1) 56:17
proposal(13) 16:13 44:23 71:3 88:6 92:2 93:13 123:6
propose(2) 11:18 19:16
proposed(7) 16:13 44:23 71:3 88:6 92:2 93:13 123:6
proposes(1) 77:1
proposing(1) 74:21
proposition(2) 78:23 83:8
propriety(1) 58:9
prospect(1) 58:9
protect(2) 29:7 34:2
protection(1) 68:21
protects(1) 78:11
protracted(2) 15:13 21:14
prove(3) 25:20 28:2 108:24
provide(2) 56:5 98:16
provided(3) 64:14 76:15 95:16
provides(5) 27:21 68:25 76:12 90:15 96:21
proving(2) 46:9 85:15
provision(6) 64:12 67:25 71:24 88:12 98:10 120:14
provisions(5) 67:20 72:24 79:16 79:18 80:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| public(1) 16:5 94:4 95:3 95:4 95:21 | | really(25) 12:11 12:16 12:18 15:21 18:20 22:3 28:13 29:2 30:19 30:20 30:21 32:4 33:24 34:25 64:10 66:16 66:16 71:15 71:20 74:25 87:17 100:18 101:13 107:22 122:4 | | requirements(4) 43:17 71:19 76:4 93:25 | | sales(4) 14:16 14:16 14:18 48:6 | |
| publicly(1) 60:25 | | | | requires(5) 43:14 85:6 85:7 85:7 90:6 | | same(16) 18:9 18:11 22:18 27:11 32:4 39:9 39:15 39:16 42:13 52:11 58:15 71:19 78:20 79:5 101:24 107:16 | |
| published(1) 74:9 | | | | research(1) 6:44 | | | |
| pull(1) 28:6 | | reason(7) 39:20 41:25 46:16 54:20 79:9 106:6 116:23 | | reservation(2) 77:16 117:8 | | sameer(1) 4:43 | |
| pulled(1) 67:2 | | reasonable(10) 17:6 21:16 23:1 23:11 23:12 53:9 59:24 85:17 88:24 88:25 | | reserve(3) 32:22 67:7 | | sand(1) 13:19 | |
| pultman(31) 2:12 27:16 37:18 43:9 57:6 66:4 74:17 77:3 84:7 84:8 84:10 84:10 87:12 90:18 91:10 91:12 91:17 91:21 93:22 96:17 100:1 106:13 108:13 108:18 110:20 112:14 113:12 114:15 122:23 123:1 123:10 | | | | reserved(1) 43:8 | | sand(1) 43:5 | |
| | | | | residual(1) 36:6 | | sandeep(1) 8:13 | |
| | | reasonableness(6) 17:3 17:5 18:17 19:8 21:18 54:11 | | resolution(4) 22:21 52:1 61:13 105:24 | | sanity(1) 51:22 | |
| | | reasoned(4) 41:12 45:25 93:1 95:2 | | resolutions(1) 18:15 | | satisfied(5) 34:7 62:15 70:18 76:12 120:22 | |
| pure(4) 67:6 68:12 68:13 70:6 | | reasons(8) 34:12 40:11 42:1 47:5 53:7 62:16 62:19 84:16 | | resolve(7) 29:13 37:19 61:17 80:21 84:22 105:6 105:7 | | satisfy(1) 43:7 | |
| purely(1) 14:10 | | | | resolved(4) 24:22 25:2 32:8 105:16 | | satisfying(1) 59:3 | |
| purport(2) 31:17 100:24 | | | | resolving(3) 24:18 25:17 68:7 | | save(2) 97:5 97:9 | |
| purports(1) 44:5 | | rebuttal(1) 117:15 | | respect(12) 54:6 55:16 57:20 60:10 72:1 78:5 85:11 89:14 94:2 98:1 98:20 119:20 | | saving(2) 26:9 26:23 | |
| purpose(8) 29:6 46:24 71:10 72:7 72:14 73:22 79:19 104:3 | | recall(10) 9:16 38:2 38:4 38:20 44:3 46:20 48:25 80:17 103:11 110:21 | | | | saw(3) 23:8 24:24 54:20 | |
| | | | | respectfully(1) 99:21 | | say(49) 9:7 13:3 13:22 18:6 18:25 26:18 28:5 31:9 37:16 37:20 38:25 40:11 42:20 43:5 43:5 48:5 61:4 61:7 66:21 67:3 67:15 71:14 71:25 78:5 79:6 80:1 94:12 94:13 95:2 95:2 100:23 102:5 102:8 108:9 108:13 109:25 110:5 111:10 111:12 112:2 114:22 116:15 117:9 117:10 118:23 119:12 123:4 123:13 | |
| purposes(2) 26:19 82:3 | | recalled(1) 1:49 | | respective(1) 13:14 | | |
| pursued(1) 34:13 | | receive(2) 69:13 70:17 | | respond(2) 88:12 100:6 | | |
| pursuing(1) 13:4 | | recently(1) 78:17 | | response(4) 14:11 86:21 86:25 87:5 | | |
| pursuit(1) 54:5 | | recess(3) 64:25 65:10 124:4 | | responses(1) 21:4 | | |
| push(1) 30:11 | | recognition(1) 100:23 | | responsible(1) 9:10 | | |
| put(29) 11:24 12:9 16:21 18:18 19:8 23:5 26:6 29:9 32:3 32:18 43:3 43:5 46:17 48:22 59:8 64:13 66:9 88:12 91:12 93:2 98:15 105:19 107:8 111:19 112:13 114:19 117:11 118:23 | | recognizes(1) 54:9 | | rest(4) 68:3 68:22 102:22 113:16 119:4 | | |
| | | reconcile(1) 37:8 | | restrict(1) 71:15 | | saying(24) 14:22 17:12 19:20 23:4 23:20 24:21 25:6 28:20 30:8 30:22 33:5 33:9 42:9 46:9 46:11 66:24 80:3 84:18 88:10 95:11 110:6 113:13 114:12 117:21 | |
| | | record(12) 61:1 87:1 90:14 91:20 95:19 96:7 112:8 112:14 114:21 115:21 121:15 121:19 | | result(19) 9:12 30:25 61:5 72:15 79:25 80:2 81:14 81:14 85:16 | | |
| puts(2) 25:8 89:8 | | | | results(1) 91:25 | | |
| putting(5) 26:15 33:4 80:8 90:20 94:20 | | recorded(1) 1:49 | | retain(2) 39:14 69:19 | | |
| puzzle(2) 59:8 59:9 | | recording(2) 1:49 124:9 | | retained(4) 37:5 42:13 42:19 43:4 | | says(20) 18:13 26:5 41:12 44:25 66:20 67:17 69:7 76:16 79:20 98:17 99:3 106:20 107:11 107:17 109:2 112:15 112:20 113:5 114:15 119:18 | |
| | | recover(1) 26:17 | | retainer(1) 10:19 | | |
| qualification(1) 94:1 | | recovered(1) 118:20 | | retains(2) 75:4 76:11 | | |
| qualifications(4) 43:13 43:13 45:17 93:23 | | recoveries(2) 13:15 13:18 59:4 91:14 | | retention(1) 97:12 | | |
| qualified(1) 43:15 | | red(1) 82:24 | | retiree(1) 17:19 | | scale(1) 111:19 | |
| qualify(1) 95:5 | | redacted(1) 11:19 | | reverse(2) 16:18 35:13 | | scenario(1) 44:5 | |
| quantify(1) 82:18 | | redirect(1) 43:9 | | review(4) 52:2 72:12 72:16 121:16 | | schatz(1) 7:45 | |
| quasi-governmental(1) 55:5 | | redound(1) 50:10 | | reviewed(2) 72:11 121:18 | | schedule(1) 50:23 | |
| question(32) 14:13 29:22 30:1 33:18 41:12 43:8 43:10 43:13 43:16 45:16 45:17 53:25 54:17 54:23 56:4 57:18 59:16 59:18 60:3 67:6 83:17 91:11 91:12 93:23 97:24 103:9 109:7 112:13 117:20 122:24 123:2 123:3 | | reducing(1) 104:10 | | reviewing(2) 75:20 121:17 | | schuylkill(1) 1:44 | |
| | | reduction(6) 46:21 46:23 47:17 47:21 51:4 51:5 | | richard(1) 7:37 | | schweitzer(39) 1:33 9:6 11:3 11:4 11:7 11:14 11:22 12:1 12:2 12:5 12:13 16:25 26:4 27:4 27:6 31:21 32:25 34:18 35:6 39:7 41:7 53:7 84:14 91:9 98:14 98:15 101:7 101:8 101:10 101:12 107:17 108:7 108:8 108:11 115:11 119:11 121:9 121:24 121:24 | |
| | | redundancy(8) 47:2 50:15 52:10 | | richards(1) 3:18 | | |
| | | red(1) 2:33 | | ridiculous(1) 106:1 | | |
| questioning(1) 21:25 | | reenactments(1) 12:15 | | riela(6) 3:40 64:4 64:6 64:6 64:22 64:23 | | |
| questions(12) 35:1 53:15 54:25 63:6 63:22 84:2 106:18 106:25 108:21 109:6 110:24 111:1 | | refer(1) 44:14 | | right(40) 10:19 10:22 13:10 15:5 21:5 23:11 25:22 26:5 28:6 33:4 46:17 47:2 47:23 49:9 50:12 57:10 62:10 64:2 64:22 65:7 65:8 67:4 67:24 68:9 71:11 71:24 72:15 73:16 75:14 85:19 101:5 102:5 105:2 108:24 112:1 113:24 114:14 114:14 115:7 122:12 | | schweitzer's(1) 122:24 | |
| | | reference(1) 24:24 | | | | scope(3) 72:16 106:10 118:5 | |
| | | regarding(1) 13:16 | | | | scrap(1) 99:17 | |
| quick(4) 29:23 40:19 45:20 100:7 | | regardless(1) 123:17 | | | | scream(1) 99:1 | |
| quickly(3) 36:24 46:16 119:7 | | regiment(1) 6:16 | | | | screen(1) 56:12 | |
| quinn(2) 4:5 61:23 | | reject(1) 40:10 | | | | seal(1) 11:24 | |
| quite(12) 23:19 24:16 25:12 30:2 31:18 31:23 32:5 33:2 72:6 112:7 116:8 117:6 | | rejected(2) 30:22 99:23 | | right-hand(1) 51:6 | | seated(2) 9:4 65:13 | |
| | | relate(3) 36:18 63:2 63:3 | | righton(1) 5:44 | | second(9) 21:19 32:22 37:14 81:24 84:17 91:22 96:24 97:2 113:25 | |
| | | relationship(2) 88:24 89:1 | | rights(17) 25:3 33:22 67:7 71:7 71:15 71:16 72:8 72:14 73:23 77:16 78:8 78:11 78:11 81:24 101:24 115:9 117:8 | | |
| quote(1) 106:21 | | relative(1) 52:22 | | | | |
| qureshi(1) 3:9 | | relatively(1) 14:10 | | | | secondly(1) 38:6 | |
| radar(1) 56:12 | | relevance(1) 41:8 | | | | section(13) 38:19 67:17 67:22 68:2 68:10 69:2 69:5 74:1 75:12 77:24 81:22 98:4 98:5 | |
| raise(2) 63:20 82:6 | | relevant(8) 27:3 41:25 43:21 45:14 53:6 80:4 83:19 114:13 | | | | |
| raised(6) 35:3 53:25 64:18 72:7 75:15 106:3 | | | | ripe(3) 102:15 102:16 102:20 | | |
| raises(1) 32:4 | | | | ripeness(1) 80:18 | | secure(1) 113:9 | |
| range(17) 12:24 17:3 17:5 17:6 17:7 19:7 19:9 19:12 21:15 21:18 54:10 62:14 94:24 95:3 95:16 95:16 106:15 | | reliability(2) 94:2 94:5 | | rise(3) 9:2 65:11 100:14 | | secured(1) 67:23 | |
| | | reliable(2) 43:24 53:5 | | rises(1) 36:17 | | securities(2) 74:0 8:12 | |
| | | reliably(2) 44:1 44:7 | | rising(1) 100:3 | | see(10) 9:4 9:5 30:1 48:8 87:19 90:4 100:2 105:13 107:3 114:18 | |
| rank-and-file(1) 58:6 | | relied(1) 11:17 | | risk(3) 18:10 110:2 111:22 | | |
| raring(2) 9:5 9:6 | | relief(2) 73:19 79:18 | | risks(2) 96:24 119:8 | | |
| rata(1) 33:14 | | rely(2) 76:7 95:6 | | ritz(1) 12:17 | | seeing(4) 15:3 57:15 111:23 114:2 | |
| rate(16) 13:8 14:24 14:25 19:19 19:20 20:2 20:3 20:5 20:12 20:24 21:3 21:4 21:5 21:5 21:12 21:13 21:15 21:17 33:4 41:16 41:16 41:23 52:6 56:1 58:4 59:23 60:6 60:9 67:24 69:4 69:4 69:5 69:6 69:13 70:3 70:7 70:25 76:9 76:19 77:23 81:8 82:19 82:24 83:1 88:14 88:15 88:16 88:21 88:25 89:14 89:15 97:20 104:17 104:23 105:12 109:7 115:15 115:16 120:11 | | relying(2) 17:24 96:7 | | river(1) 6:20 | | seek(1) 91:24 | |
| | | remain(2) 13:13 26:20 | | road(1) 119:6 | | seeking(2) 73:19 79:25 | |
| | | remarkable(3) 48:5 50:24 106:13 | | roadmap(3) 56:5 59:17 59:20 | | seem(1) 46:11 | |
| | | remarks(1) 63:25 | | robustly(1) 122:12 | | seen(2) 17:18 22:22 | |
| | | remember(1) 17:10 | | rockstar(1) 14:8 | | selective(1) 118:3 | |
| | | remind(1) 51:7 | | rodney(2) 2:42 3:20 | | seminal(1) 35:15 | |
| | | reminds(1) 13:3 | | role(4) 16:22 45:3 45:9 55:7 | | send(2) 105:18 105:19 | |
| | | remove(1) 11:19 | | roll(1) 110:4 | | senior(1) 17:25 | |
| | | rendered(1) 123:2 | | room(3) 23:2 29:24 115:5 | | sense(9) 42:11 43:14 67:15 96:6 99:2 99:8 104:8 104:24 107:25 | |
| rates(1) 20:15 | | reorg(1) 6:44 | | roomful(1) 23:8 | | |
| rather(16) 12:11 14:12 16:21 17:15 17:25 23:11 24:13 30:22 42:19 63:8 72:12 80:11 93:11 93:12 93:12 115:12 | | reorganization(9) 69:20 70:8 70:21 74:6 74:13 75:2 76:11 120:16 120:18 | | rooms(3) 37:23 109:18 115:1 | | |
| | | | | rooney,pc(1) 2:4 | | sensitive(4) 46:22 47:1 47:2 49:10 | |
| | | | | rosa(1) 17:23 | | sensitivity(6) 46:21 46:25 47:21 94:6 94:6 94:7 | |
| | | reorganizations(1) 70:9 | | rosenman(1) 3:1 | | sentence(4) 21:22 47:18 103:4 103:4 | |
| ray(43) 15:15 26:8 27:10 29:11 30:2 30:8 42:24 60:13 76:12 76:19 86:6 86:11 86:12 86:19 86:21 87:19 88:9 88:11 88:12 89:7 89:13 90:16 91:12 91:18 92:10 92:17 94:3 96:19 98:4 98:9 98:21 99:2 102:3 104:24 106:20 107:1 107:17 112:11 112:13 112:16 116:1 116:2 116:10 123:8 | | repatriation(3) 49:15 50:4 51:7 | | rounds(1) 30:6 | | separate(1) 102:19 | |
| | | replaced(1) 6:5 | | routinely(1) 67:12 | | separately(1) 14:13 | |
| | | repeatedly(1) 96:18 | | ruggero(1) 7:41 | | separates(1) 25:17 | |
| | | reply(4) 12:25 14:3 71:12 72:8 | | rule(12) 16:1 27:24 37:11 43:7 43:9 43:14 67:3 67:5 68:18 73:17 101:21 105:12 | | september(1) 97:4 | |
| | | report(20) 11:16 11:22 28:10 33:7 44:24 44:24 49:1 49:3 49:21 49:24 50:3 50:22 51:2 51:23 52:5 52:11 52:12 53:4 54:19 94:19 | | | | series(3) 21:22 106:17 106:25 | |
| | | | | ruling(3) 9:13 | | serious(3) 80:17 82:7 116:14 | |
| ray's(6) 42:24 95:11 106:17 112:19 112:19 116:12 | | | | rung(1) 27:12 94:18 | | serve(2) 55:10 55:11 | |
| reach(2) 30:23 69:11 | | | | rung(1) 54:10 | | service(2) 1:43 1:50 | |
| reached(1) 76:22 | | | | running(2) 60:12 82:10 | | services(1) 1:43 | |
| reaches(1) 102:4 | | reported(1) 45:11 | | runs(1) 76:5 | | session(3) 61:2 61:4 61:8 | |
| reaction(1) 46:21 | | reporting(1) 50:5 | | russell(1) 1:34 | | sessions(1) 61:5 | |
| reactions(1) 22:4 | | reports(6) 52:5 52:12 95:23 95:24 95:24 95:24 | | safely(1) 124:3 | | set(9) 32:3 54:7 62:19 63:24 75:19 85:13 85:24 101:16 105:3 | |
| read(15) 17:1 48:7 49:3 49:25 71:12 81:16 89:16 89:21 103:3 103:4 107:16 119:22 119:22 119:23 119:24 | | represent(2) 116:3 116:5 | | said(70) 14:13 20:16 21:19 22:3 24:5 26:8 28:16 30:16 30:18 31:19 31:21 35:23 36:9 36:25 39:20 39:22 41:22 43:23 52:19 54:25 59:7 57:20 59:13 61:12 66:23 66:24 66:25 72:4 75:16 75:20 76:19 76:23 79:12 79:13 84:12 86:12 86:20 89:8 89:11 89:22 91:15 92:3 92:11 92:21 92:23 94:14 96:14 96:19 96:20 98:15 106:2 106:6 106:16 106:17 106:24 107:14 112:20 113:15 113:19 115:8 115:12 115:23 116:23 117:16 117:17 117:19 118:9 118:15 121:16 | | sets(1) 54:12 | |
| | | representation(1) 32:25 | | | | settle(34) 14:20 14:21 15:6 15:18 20:10 20:18 22:7 24:7 24:10 24:23 30:18 30:23 31:4 32:16 38:16 53:12 68:21 72:22 72:22 79:8 83:12 83:16 104:18 105:16 106:8 109:2 109:3 111:14 112:3 112:4 113:4 113:7 119:3 | |
| | | representative(3) 55:11 60:3 111:23 | | | | |
| | | representatives(2) 55:2 55:24 | | | | |
| | | request(3) 12:11 13:10 48:13 | | | | |
| | | requested(1) 79:18 | | | | |
| reading(1) 89:25 | | required(8) 16:17 19:6 68:14 68:23 68:24 74:12 80:11 90:7 | | | | |
| real(11) 20:21 26:25 29:2 30:5 78:23 78:24 79:1 79:6 88:6 110:2 117:18 | | | | | | |
| realized(1) 50:3 | | requirement(1) 72:20 | | sale(7) 36:6 36:8 48:4 48:13 49:7 51:7 56:13 | | |

| Word | Page:Line |
|---|---|
| settled(32) 15:21 19:11 21:6 21:11 29:24 37:16 37:16 38:12 41:9 41:14 41:21 56:16 57:24 75:6 78:12 81:25 97:3 97:3 102:2 102:14 102:14 102:21 104:9 108:24 108:25 109:4 109:13 109:24 111:13 111:21 114:12 119:4 | |
| settlement(191) 9:13 10:14 10:12 12:11 12:16 13:16 15:19 16:2 16:19 16:20 16:21 17:2 17:6 17:9 17:10 17:20 17:22 18:3 18:7 18:7 19:7 19:10 19:12 19:16 19:20 20:6 20:7 20:14 20:15 21:3 21:9 21:12 21:13 21:16 22:13 23:1 23:1 23:6 23:18 24:16 24:17 25:6 25:13 25:21 25:24 26:11 26:13 27:18 27:20 29:1 29:4 29:7 29:22 30:12 30:18 34:4 34:15 36:15 38:23 39:1 39:3 39:20 53:9 53:10 54:9 54:13 54:15 54:18 55:15 55:19 55:22 56:4 59:14 59:16 60:2 60:8 60:9 60:24 61:6 61:10 61:14 61:16 61:19 62:8 62:13 62:3 62:16 62:21 63:5 63:7 63:23 63:25 64:8 64:11 64:13 67:11 67:12 68:5 68:6 68:8 68:16 69:14 71:7 71:10 71:15 71:18 71:25 72:4 73:22 74:2 74:20 74:22 75:11 75:18 75:21 75:22 76:4 78:8 78:22 79:1 79:15 80:15 82:13 82:18 82:20 82:25 83:4 83:11 83:20 84:18 84:20 84:23 84:23 84:24 84:25 85:2 85:3 85:4 85:5 85:8 85:12 85:16 85:21 85:23 87:16 88:7 90:4 90:5 90:6 90:21 90:24 90:24 92:3 93:4 93:8 93:13 96:20 98:16 99:20 99:22 101:25 102:3 102:14 102:19 103:6 103:8 104:19 105:10 105:13 105:15 105:25 106:1 106:9 107:1 108:9 110:10 111:2 111:16 114:7 114:17 114:23 115:17 116:16 116:18 119:5 119:9 119:15 119:18 121:15 123:7 | |
| settlement-privileged(1) 110:22 | |
| settlements(59) 11:6 15:6 16:6 16:9 16:14 17:18 17:19 17:20 18:9 18:13 18:14 18:17 19:2 20:4 21:16 22:14 22:15 23:11 23:12 24:14 24:15 29:11 34:12 34:13 53:14 54:7 59:6 59:7 59:22 60:22 84:21 99:9 99:24 101:22 105:20 108:2 117:19 119:7 | |
| settlement's(1) 111:15 | |
| settling(15) 13:5 14:21 18:2 18:24 20:11 22:10 25:9 33:11 34:10 60:14 75:3 85:14 101:24 102:16 104:6 | |
| seven-year-old(2) 43:1 93:17 | |
| seventeen(1) 48:16 | |
| seventh(1) 4:27 | |
| several(5) 30:6 40:7 86:12 86:13 113:20 | |
| shaaban(1) 81:5 | |
| shakra(1) 5:5 | |
| share(2) 80:20 80:21 | |
| shareholders(1) 116:10 | |
| sheet(4) 45:20 87:19 87:20 87:21 | |
| sheila(1) 107:14 | |
| shell(1) 80:7 | |
| shibley(1) 5:44 | |
| shipyard(2) 35:22 36:1 | |
| short(2) 14:10 37:19 | |
| shortage(1) 12:9 | |
| shot(2) 54:21 122:2 | |
| shoulders(4) 15:16 90:2 90:20 | |
| shouldn't(8) 14:13 23:18 24:17 24:17 36:13 37:1 40:12 108:25 | |
| show(9) 19:6 28:11 39:10 39:12 42:13 95:9 114:24 114:25 118:7 | |
| showed(1) 48:7 | |
| showing(1) 16:9 | |
| shown(3) 12:14 28:19 82:15 | |
| shows(5) 19:9 20:1 20:1 30:19 33:3 | |
| shred(1) 114:16 | |
| shrinking(1) 37:7 | |
| side(14) 13:7 13:13 41:17 46:17 46:17 46:25 50:13 56:12 62:2 65:2 82:2 93:14 111:24 111:25 | |
| sides(2) 79:21 111:22 | |
| sideshow(2) 57:12 82:14 | |
| sidestepping(1) 68:12 | |
| sign(1) 121:10 | |
| signatories(1) 10:16 | |
| signatory(1) 64:8 | |
| signed(2) 76:20 121:8 | |
| significant(3) 14:17 57:20 56:6 | |
| silver(1) 6:8 | |
| similar(4) 14:19 117:7 30:15 92:12 | |
| simple(3) 47:18 78:20 109:6 | |
| simply(13) 37:9 39:22 42:5 43:6 45:22 50:1 51:3 53:2 62:15 80:15 82:18 96:13 102:21 | |
| simultaneously(1) 76:24 | |
| since(5) 14:7 56:12 74:7 77:17 96:1 | |
| single(7) 29:18 73:21 86:24 86:24 86:25 87:4 98:25 | |
| sir(5) 40:22 53:18 64:2 100:10 100:13 | |
| sir(7) 42:12 55:12 93:5 104:22 105:23 110:4 111:17 | |
| sits(1) 80:21 | |
| sitting(12) 23:2 23:3 23:3 50:9 92:7 109:18 110:5 110:11 112:12 112:12 114:12 115:1 | |

| Word | Page:Line |
|---|---|
| situation(7) 26:10 28:25 54:10 90:19 122:11 122:14 122:20 | |
| six(2) 50:5 94:15 | |
| size(3) 87:14 88:21 88:22 | |
| skill(1) 43:15 | |
| sleeves(1) 110:4 | |
| slough(1) 76:19 | |
| small(3) 42:1 103:5 105:8 | |
| smaller(4) 47:10 47:18 47:19 47:22 | |
| smith(1) 5:26 | |
| snyder(1) 124:14 | |
| sold(1) 48:18 | |
| solely(1) 116:6 | |
| solid(1) 83:15 | |
| solus(4) 4:4 62:3 97:19 98:22 | |
| solutions(1) 116:14 | |
| solve(3) 27:13 27:14 73:17 | |
| solvency(1) 122:20 | |
| solvent(3) 76:10 122:14 122:20 | |
| solves(1) 26:10 | |
| some(30) 10:1 10:2 10:9 21:24 21:24 26:14 28:12 29:5 30:9 30:10 38:8 46:10 47:25 48:3 48:3 49:14 54:20 65:2 65:8 68:5 71:13 89:2 90:1 92:21 93:9 95:14 101:18 104:20 112:20 118:8 | |
| somebody(4) 42:12 43:4 43:15 107:21 | |
| somehow(4) 95:17 116:1 116:10 122:18 | |
| someone(5) 30:16 85:9 109:11 115:23 115:24 | |
| something(15) 9:8 16:23 19:22 35:3 40:4 43:1 54:15 80:22 81:1 81:4 88:17 89:11 106:9 116:3 108:20 113:10 | |
| sometime(2) 72:23 73:1 | |
| sometimes(1) 70:16 | |
| somewhere(1) 17:7 | |
| son(1) 93:17 | |
| soon(1) 114:3 | |
| sorry(3) 121:10 121:20 123:16 | |
| sort(8) 35:9 36:12 44:5 45:20 67:12 72:19 73:7 123:3 121:13 112:21 | |
| sorts(2) 37:3 112:21 | |
| sought(4) 30:23 42:3 44:16 116:22 | |
| sound(4) 1:49 16:3 45:1 124:9 | |
| source(1) 106:19 | |
| sources(6) 94:4 95:3 95:4 95:20 95:21 95:21 | |
| southpaw(1) 7:4 | |
| spades(1) 58:14 | |
| speak(4) 67:21 84:12 102:24 106:12 | |
| speaking(1) 97:10 | |
| specialized(1) 93:24 | |
| specific(3) 53:24 91:11 108:21 | |
| specifically(3) 63:13 67:21 74:12 | |
| speculation(1) 57:14 | |
| spelled(1) 16:23 | |
| spend(5) 22:8 92:4 92:6 112:18 113:3 115:1 118:6 | |
| spending(2) 23:8 29:16 | |
| spends(1) 116:17 | |
| spent(5) 25:19 31:4 37:8 112:20 116:20 | |
| spin(1) 111:20 | |
| spirit(2) 61:9 61:9 | |
| split(1) 49:14 | |
| square(2) 2:42 3:20 | |
| stake(3) 108:1 117:15 117:18 | |
| stakeholders(2) 91:1 102:3 | |
| stand(11) 57:6 93:10 93:14 94:12 95:2 98:6 102:5 102:25 110:10 112:14 124:4 | |
| standard(11) 13:9 13:11 16:13 16:21 17:5 25:22 71:5 72:12 91:7 99:1 118:9 | |
| standards(8) 15:22 53:13 71:17 85:24 94:5 94:9 94:10 108:1 | |
| standing(9) 15:1 31:12 31:17 32:22 33:23 100:5 100:19 100:25 101:4 | |
| stands(2) 15:4 54:2 | |
| standstill(1) 9:17 | |
| stang(1) 2:27 | |
| stargate(1) 2:39 | |
| starke(1) 8:9 | |
| start(15) 11:11 14:22 18:13 19:15 22:23 30:19 29:9 34:11 42:9 66:3 66:3 85:2 109:8 110:21 111:3 | |
| started(12) 13:3 24:19 24:20 25:9 28:1 34:9 77:18 84:14 86:9 86:18 87:17 89:19 | |
| starting(2) 20:13 22:14 | |
| starts(2) 19:18 26:13 | |
| state(1) 35:16 | |
| stated(7) 50:25 52:8 53:7 56:2 56:22 61:1 82:19 112:6 112:16 | |
| statement(8) 39:2 54:6 55:16 72:13 91:11 91:22 112:6 112:16 | |
| statements(12) 50:25 94:24 95:6 95:7 95:8 100:6 103:3 106:15 107:15 108:19 112:8 117:17 | |
| states(5) 1:1 1:20 57:4 57:19 116:3 | |

| Word | Page:Line |
|---|---|
| status(2) 36:22 72:3 | |
| statute(1) 109:14 | |
| statutory(4) 55:23 56:1 58:3 78:8 | |
| stayed(1) 110:23 | |
| staying(1) 37:21 | |
| ste(4) 2:6 3:34 4:15 4:21 | |
| steen(1) 1:31 | |
| stenographer(1) 114:22 | |
| step(2) 12:10 115:23 | |
| stephen(1) 33:3 | |
| stepping(1) 111:5 | |
| still(15) 23:21 24:10 33:14 58:2 59:11 60:24 61:15 63:10 70:16 71:17 71:18 98:2 98:18 98:19 108:9 | |
| stock(3) 80:7 80:10 80:12 | |
| stone(1) 6:36 | |
| stop(2) 100:22 104:1 112:10 | |
| stop(3) 26:7 40:12 121:11 | |
| stopped(1) 113:21 | |
| stopping(2) 27:22 104:9 | |
| straight(1) 80:25 | |
| straightforward(4) 12:11 70:1 77:22 84:15 | |
| strategy(1) 33:25 | |
| strauss(3) 3:8 5:22 53:21 | |
| street(5) 1:11 1:44 2:43 3:21 7:32 | |
| strictures(1) 75:22 | |
| strive(1) 17:4 | |
| strong(1) 55:25 | |
| struck(1) 113:15 | |
| stuff(3) 68:4 81:19 83:21 | |
| sub(1) 17:23 | |
| subject(3) 71:17 71:19 72:12 | |
| subjecting(1) 83:6 | |
| submission(3) 12:25 13:1 13:1 | |
| submissions(3) 12:22 20:20 44:25 | |
| submit(2) 63:4 99:22 | |
| submitted(3) 33:7 96:5 97:7 | |
| subset(1) 73:6 | |
| subsidiary(1) 62:23 | |
| substance(4) 44:23 89:22 97:10 97:17 | |
| substantial(6) 19:11 25:25 34:9 95:14 113:17 123:13 | |
| substantially(2) 70:16 74:19 | |
| substantive(4) 32:3 33:24 86:19 89:17 | |
| success(5) 18:19 19:15 20:7 91:6 91:8 | |
| successful(1) 14:8 | |
| successors(1) 79:21 | |
| such(1) 18:8 | |
| suddenly(1) 28:24 | |
| sue(1) 30:23 | |
| sued(1) 30:24 | |
| sufficient(1) 43:22 | |
| sufficiently(1) 38:9 | |
| suggest(4) 45:5 46:11 91:17 116:10 | |
| suggested(2) 38:3 38:7 | |
| suggestion(3) 9:17 80:6 103:22 | |
| suisse(1) 6:4 | |
| sullivan(1) 4:6 | |
| summer(1) 80:18 | |
| summertime(1) 56:24 | |
| superficial(1) 70:5 | |
| support(9) 31:24 51:1 51:15 60:22 63:1 100:17 121:21 121:23 121:25 | |
| supported(1) 76:13 | |
| supporting(3) 34:23 39:15 39:16 | |
| supportive(1) 121:18 | |
| suppose(1) 64:12 64:21 | |
| supposed(6) 18:14 18:15 18:15 30:14 95:25 99:21 | |
| supreme(3) 35:23 105:22 | |
| sure(10) 29:15 31:23 41:1 64:16 65:17 81:14 109:9 111:17 118:11 119:16 | |
| surely(2) 59:16 110:20 | |
| surest(1) 18:24 | |
| surplus(4) 69:13 92:1 92:14 96:11 | |
| surprises(1) 78:13 | |
| survey(1) 115:18 | |
| surveyed(1) 115:13 | |
| sworn(2) 56:25 57:12 | |
| table(4) 23:5 34:14 62:2 103:20 | |
| tables(1) 110:15 | |
| take(29) 10:24 11:25 23:17 35:12 35:22 44:8 46:16 52:19 54:21 64:24 71:21 72:9 73:22 73:25 74:16 74:18 77:19 83:7 84:22 86:5 86:6 90:4 94:15 95:18 105:8 115:2 115:23 118:22 119:24 | |
| taken(4) 45:24 60:5 104:1 118:7 | |
| takes(4) 59:5 67:19 101:16 116:21 | |
| taking(5) 27:2 90:11 90:20 105:7 109:1 | |
| talented(1) 66:16 | |
| talk(16) 35:7 39:10 39:11 41:6 42:1 43:11 44:8 49:21 54:19 55:3 74:5 88:6 88:23 91:15 102:13 123:22 | |
| talked(13) 35:10 36:21 36:21 39:7 51:10 52:14 84:11 94:20 98:2 98:22 98:23 98:24 103:23 | |
| talking(5) 74:3 111:3 122:11 122:13 122:16 | |
| talks(2) 68:1 110:3 | |
| tangentially(1) 55:21 | |

| Word | Page:Line |
|---|---|
| target(1) 107:22 | |
| task(2) 42:2 46:12 | |
| tax(9) 36:2 50:24 94:22 94:25 95:11 95:13 95:13 106:22 106:23 | |
| taylor(1) 2:11 | |
| team(2) 87:8 88:3 | |
| tecce(8) 4:7 61:22 61:23 61:25 62:11 62:25 64:3 | |
| tee(1) 32:14 | |
| telephone(1) 102:18 | |
| telephonic(5) 4:31 5:1 6:1 7:1 8:1 | |
| tell(12) 10:5 37:6 37:18 38:1 39:4 73:13 88:10 93:3 104:5 107:7 117:25 118:1 | |
| telling(7) 15:2 22:19 86:9 91:6 99:23 104:2 112:7 | |
| tells(1) 16:10 | |
| term(3) 87:19 87:20 87:21 | |
| terms(10) 18:1 23:2 71:18 79:16 80:16 85:17 104:7 112:24 121:17 121:18 | |
| test(9) 58:13 70:5 70:7 70:18 71:2 80:11 85:1 85:25 99:13 | |
| testified(6) 22:23 27:10 60:13 76:12 78:19 86:11 | |
| testify(2) 42:12 91:15 | |
| testifying(1) 44:17 | |
| testimony(29) 11:17 12:6 19:24 27:2 34:8 38:14 39:23 42:24 43:18 44:4 44:23 45:12 45:13 45:14 46:13 48:15 49:18 51:13 51:14 51:16 56:25 57:12 91:12 98:4 104:25 106:9 112:19 112:19 121:2 | |
| than(39) 14:12 14:15 17:4 17:15 17:25 20:8 23:11 24:10 24:14 30:22 32:6 37:6 39:21 42:20 46:10 47:18 47:20 52:6 53:8 59:14 67:12 67:14 70:13 70:17 70:20 72:12 72:21 74:20 80:11 85:7 93:10 93:11 93:12 93:12 96:12 107:1 107:6 117:4 123:5 | |
| thank(41) 11:2 11:4 11:5 12:2 34:18 40:21 40:22 53:15 53:17 53:17 53:20 57:11 61:20 61:21 64:2 64:3 64:22 64:23 65:9 65:12 65:21 65:18 77:13 84:5 84:6 91:21 100:1 101:5 101:6 105:8 108:6 119:11 120:4 122:21 122:22 123:9 123:10 124:1 124:4 124:4 124:5 | |
| that(301) 9:10 9:13 9:17 10:9 10:11 10:16 10:21 11:11 11:19 11:22 12:9 13:10 13:12 13:22 14:4 14:11 14:13 14:20 14:22 15:11 15:17 15:19 15:19 16:8 16:9 16:10 16:18 16:22 17:6 17:8 17:14 17:23 17:24 18:3 18:6 18:10 19:7 19:8 19:9 19:9 19:9 19:10 19:11 19:12 19:18 19:20 20:1 20:1 20:2 20:5 20:9 20:13 20:16 20:20 20:21 20:23 21:6 21:6 21:8 21:9 21:10 21:15 22:4 22:5 22:6 22:9 22:13 22:18 22:23 23:4 23:8 23:23 23:24 24:4 24:5 24:7 24:11 24:16 24:17 24:22 25:7 25:8 25:15 25:21 25:23 25:24 26:13 26:13 26:18 26:20 26:21 27:2 27:20 27:21 27:24 27:25 27:25 28:3 28:7 28:7 28:21 28:23 28:24 28:25 29:3 29:7 29:10 29:12 29:19 30:5 30:6 30:6 30:7 30:10 30:17 30:19 30:22 31:13 31:25 32:2 32:5 32:10 32:10 32:14 33:2 33:9 33:11 33:18 33:22 33:25 34:10 34:13 34:16 35:10 35:23 36:4 36:9 36:10 36:11 36:12 36:12 36:23 36:25 37:3 37:6 37:9 37:15 37:15 37:19 38:3 38:6 38:7 38:8 38:9 38:10 38:12 38:13 38:15 38:19 38:25 39:11 39:16 39:25 40:2 40:3 40:4 40:8 40:13 40:25 41:4 41:5 41:9 41:17 41:19 41:19 41:20 41:24 41:25 42:2 42:3 42:6 42:6 42:8 42:10 42:15 42:17 42:18 42:21 42:25 43:4 43:7 43:16 44:8 44:11 44:14 44:15 44:23 45:1 45:5 45:8 45:9 45:15 45:25 45:23 46:1 46:5 46:5 46:9 46:9 46:11 47:9 47:10 47:10 47:11 47:13 47:18 48:4 48:5 48:8 48:12 48:14 48:15 48:22 49:3 49:4 49:4 49:8 49:9 49:12 49:18 49:19 49:22 49:25 50:1 50:1 50:2 50:3 50:7 50:8 50:17 50:18 50:20 50:22 50:24 50:25 51:1 51:2 51:12 51:3 51:12 51:14 51:15 51:17 51:18 51:19 51:19 51:25 52:2 52:2 52:5 52:7 52:8 52:9 52:13 52:16 52:17 52:20 52:20 52:23 52:25 53:2 53:8 53:10 53:23 54:10 54:12 54:14 54:15 54:24 55:18 55:21 55:22 55:25 55:25 56:5 56:11 56:15 56:17 56:20 56:23 56:23 56:25 57:3 57:8 57:11 57:12 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that(301)** 57:16 57:18 57:18 57:20 57:22 58:4 58:7 58:9 58:11 58:13 58:16 58:18 58:22 58:24 59:2 59:5 59:7 59:7 59:17 59:19 59:23 60:2 60:2 60:5 60:6 60:11 60:19 60:21 60:23 60:24 61:1 61:4 61:4 61:14 61:7 61:8 61:8 61:9 61:9 61:17 61:26 61:16 63:2 63:3 63:3 63:10 63:14 63:16 63:19 63:22 63:23 64:12 64:14 64:14 64:16 64:19 64:20 65:2 65:3 66:7 66:11 66:14 66:20 66:25 67:4 67:7 67:12 67:14 67:15 67:17 67:21 67:24 68:1 68:2 68:6 68:10 68:12 68:13 68:13 68:14 68:21 68:25 69:5 69:7 69:8 69:9 69:14 69:17 69:18 69:21 70:5 70:10 70:14 70:15 71:8 71:9 71:18 71:23 72:6 72:10 72:10 72:17 72:24 72:24 73:1 73:2 73:21 74:8 74:13 74:9 74:21 74:23 74:25 75:6 75:7 75:8 75:11 75:12 75:16 75:20 75:21 75:22 75:25 76:3 76:4 76:9 76:10 76:13 76:16 76:19 76:21 76:22 76:25 77:2 77:3 77:7 77:7 77:9 77:9 77:17 77:18 77:18 77:23 77:24 77:25 77:25 78:1 78:2 78:3 78:4 78:5 78:7 78:8 78:9 78:10 78:12 78:14 78:17 78:19 78:20 78:22 78:22 79:2 79:3 79:4 79:5 79:6 79:7 79:8 79:9 79:14 79:14 79:15 79:22 80:2 80:3 80:3 80:4 80:7 80:8 80:9 80:9 80:14 80:15 80:17 80:23 81:1 81:4 81:8 81:8 81:13 81:14 81:16 81:17 81:21 81:24 81:25 82:4 82:4 82:5 82:12 82:22 82:24 82:25 82:25 82:26 82:27 82:20 82:22 83:4 83:5 83:18 83:21 83:22 84:12 84:15 84:16 84:17 84:19 85:8 85:9 85:11 85:14 85:15 85:16 85:20 85:21 85:21 85:22 85:23 85:23 85:24 85:25 86:2 86:7 86:9 86:13 86:14 86:16 86:17 86:17 86:18 86:18 86:21 86:23 86:24 87:6 87:9 87:12 87:13 87:16 87:20 87:25 88:1 88:4 88:5 88:8 88:9 88:11 88:16 88:18 88:24 89:3 89:3 89:4 89:6 89:7 89:9 89:13 89:17 89:19 89:21 89:22 90:14 90:18 90:19 90:22 91:14 91:15 92:5 92:15 92:17 92:22 93:22 94:16 94:17 94:17 94:19 94:19 94:19 94:25 95:2 95:13 95:16 95:17

**that(165)** 95:20 95:24 96:2 96:6 96:14 96:21 96:22 97:2 97:3 97:8 97:10 97:11 97:14 97:20 97:20 97:21 97:22 98:1 98:2 98:5 98:5 98:8 98:8 98:9 98:10 98:15 98:17 98:21 99:6 99:8 99:10 99:11 99:12 99:13 99:15 99:19 99:21 99:24 100:6 100:15 100:24 101:2 102:4 102:4 102:9 102:10 102:12 102:13 102:15 102:22 103:4 103:10 103:12 103:20 103:25 104:5 104:8 104:8 104:9 104:18 104:19 104:21 104:23 105:9 105:12 105:12 105:14 105:20 106:3 106:13 106:19 106:21 106:23 107:5 107:5 107:7 107:11 107:14 107:17 107:19 107:22 108:12 108:13 108:13 108:23 109:10 109:13 109:23 109:24 109:24 110:1 110:7 110:23 110:25 111:10 111:15 111:21 112:1 112:11 112:13 112:19 112:23 112:24 113:6 113:10 113:14 113:14 113:17 113:20 113:21 114:2 114:10 114:22 115:1 115:17 115:18 116:1 116:10 116:13 116:18 116:21 116:22 117:22 118:2 118:3 118:9 118:10 118:18 118:18 118:20 118:23 118:25 118:25 119:1 119:9 119:10 119:18 119:19 119:19 119:21 119:25 120:9 120:10 120:11 120:12 120:13 120:14 120:14 120:15 120:21 120:25 122:4 122:18 123:6 123:8 123:14 123:16 123:17 123:20 123:20 123:21 123:21 123:22 124:8

**that's(102)** 10:18 10:18 10:19 21:7 21:17 22:3 22:13 25:22 26:24 27:1 28:12 29:19 29:19 30:2 30:12 30:13 30:14 31:1 33:24 34:13 37:7 40:16 41:23 43:2 43:21 43:23 47:3 47:17 47:21 48:21 49:11 50:11 50:20 54:3 54:13 55:1 55:15 56:2 57:13 59:2 59:13 60:1 60:7 61:16 63:12 63:15 63:17 63:25 65:8 66:5 66:9 67:8 67:24 69:14 71:3 72:13 73:2 73:16 76:23 77:1 79:25 81:15 83:12 84:5 84:5 85:3 86:20 88:22 89:3 89:5 90:2 94:1 96:7 96:19 97:18 98:11 102:21 103:23 106:6 107:12 109:22 109:25 110:1 110:1 112:3 112:13 113:5 113:6 113:9 113:16 114:10 114:10 118:18 115:2 115:3 115:4 117:19 117:20 117:20

**that** (1) 93:18
**than** (1) 7:5

**the(301)** 1:1 1:2 1:19 2:4 2:14 3:27 3:38 9:2 9:3 9:7 9:11 9:12 9:13 9:16 9:19 9:22 9:25 9:25 10:4 10:6 10:6 10:8 10:13 10:15 10:17 10:19 10:20 10:20 10:22 11:2 11:16 11:13 11:14 11:17 11:19 11:21 11:22 11:23 11:25 12:4 12:10 12:12 12:15 12:16 12:17 12:20 12:21 12:21 12:23 12:24 12:24 12:25 13:1 13:1 13:4 13:4 13:5 13:5 13:6 13:7 13:7 13:8 13:8 13:9 13:10 13:11 13:12 13:14 13:17 13:18 13:20 13:21 13:22 13:22 13:23 13:23 13:24 13:25 13:25 14:1 14:4 14:5 14:5 14:6 14:7 14:8 14:10 14:11 14:12 14:13 14:13 14:14 14:14 14:15 14:15 14:16 14:17 14:17 14:19 14:19 14:21 14:22 14:22 14:24 14:25 14:25 15:4 15:5 15:7 15:7 15:8 15:8 15:10 15:11 15:12 15:13 15:14 15:15 15:15 15:20 15:21 15:22 15:22 15:23 15:24 16:1 16:2 16:2 16:3 16:3 16:3 16:6 16:8 16:8 16:9 16:10 16:10 16:11 16:11 16:12 16:15 16:15 16:16 16:18 16:18 16:21 16:21 16:22 16:24 17:2 17:2 17:2 17:3 17:4 17:5 17:6 17:6 17:7 17:8 17:9 17:9 17:10 17:12 17:14 17:17 17:22 18:1 18:2 18:5 18:7 18:8 18:9 18:9 18:10 18:10 18:13 18:16 18:16 18:16 18:17 18:17 18:19 18:21 18:24 18:24 18:24 18:25 18:25 19:2 19:3 19:4 19:5 19:6 19:7 19:7 19:8 19:11 19:12 19:14 19:15 19:15 19:16 19:19 19:19 19:20 19:20 19:21 19:21 19:24 20:1 20:3 20:4 20:7 20:7 20:12 20:12 20:13 20:13 20:16 20:18 20:20 20:23 21:1 21:2 21:5 21:7 21:8 21:9 21:10 21:11 21:12 21:13 21:15 21:16 21:18 21:19 21:21 21:23 21:25 21:25 22:1 22:1 22:2 22:2 22:5 22:8 22:11 22:16 22:17 22:19 22:19 22:22 22:24 23:3 23:5 23:6 23:6 23:7 23:10 23:11 23:13 23:13 23:14 23:15 23:15 23:16 23:17 23:17 23:18 23:23 23:23 23:23 23:24 23:25 24:2 24:3 24:3 24:7 24:7 24:13 24:13 24:16 24:16 24:17 24:17 24:18 24:22

**the(301)** 24:24 25:2 25:2 25:3 25:6 25:8 25:8 25:9 25:13 25:19 25:21 25:22 25:22 25:24 25:24 25:24 26:2 26:5 26:8 26:8 26:8 26:9 26:9 26:10 26:11 26:12 26:12 26:13 26:14 26:15 26:16 26:17 26:19 26:20 26:20 26:21 26:22 26:22 27:1 27:1 27:2 27:5 27:6 27:8 27:9 27:10 27:14 27:17 27:17 27:22 27:22 27:27 27:23 27:25 28:2 28:2 28:3 28:4 28:6 28:24 29:1 28:10 28:11 28:13 28:15 28:18 28:24 29:1 29:4 29:5 29:6 29:6 29:7 29:8 29:9 29:10 29:13 29:15 29:21 29:22 29:24 30:5 30:10 30:10 30:13 30:13 30:16 30:23 30:24 30:25 31:1 31:3 31:3 31:6 31:10 31:12 31:13 31:14 31:15 31:15 31:17 31:19 31:19 31:20 31:21 31:22 31:23 32:1 32:3 32:4 32:4 32:6 32:7 32:10 32:12 32:13 32:19 32:20 32:21 32:21 32:22 32:23 32:24 33:1 33:2 33:4 33:6 33:7 33:8 33:9 33:9 33:13 33:14 33:18 33:19 33:20 33:25 34:1 34:2 34:4 34:6 34:6 34:7 34:11 34:11 34:12 34:12 34:13 34:14 34:16 34:18 34:21 34:22 35:1 35:2 35:4 35:10 35:15 35:17 35:17 35:18 35:20 35:21 35:22 35:23 36:1 36:2 36:4 36:5 36:6 36:6 36:14 36:7 36:8 36:10 36:10 36:11 36:12 36:12 36:14 36:15 36:15 36:19 36:22 37:9 37:9 37:10 37:12 37:13 37:19 37:20 37:22 37:23 37:24 37:25 38:2 38:5 38:5 38:6 38:7 38:7 38:8 38:10 38:11 38:12 38:13 38:20 38:22 38:24 39:1 39:2 39:3 39:3 39:7 39:8 39:8 39:9 39:15 39:16 39:17 39:19 39:20 39:20 39:25 40:1 40:2 40:2 40:3 40:5 40:6 40:7 40:8 40:10 40:11 40:13 40:15 40:17 40:23 40:25 41:1 41:2 41:4 41:7 41:9 41:10 41:13 41:13 41:14 41:19 41:19 41:21 41:22 41:25 42:1 42:2 42:2 42:11 42:13 42:14 42:18 42:20 42:20 42:21 42:21 42:22 42:22 42:24 42:25 43:1 43:2 43:5 43:8 43:10 43:10 43:11 43:14 43:14 43:20 43:21 43:23 43:23 43:24 43:25 44:1 44:1 44:2 44:4 44:4 44:6 44:7 44:7 44:8

**the(301)** 44:10 44:11 44:12 44:14 44:16 44:17 44:18 44:19 44:19 44:20 44:21 44:22 44:23 44:23 44:25 45:5 45:9 45:10 45:10 45:11 45:11 45:11 45:14 45:14 45:15 45:15 45:16 45:19 45:20 45:21 45:21 46:5 46:5 46:10 46:12 46:13 46:16 46:17 46:17 46:18 46:19 46:21 46:23 46:25 46:25 47:3 47:3 47:6 47:7 47:9 47:9 47:9 47:10 47:11 47:12 47:13 47:13 47:14 47:15 47:15 47:16 47:16 47:17 47:17 47:20 47:21 48:1 48:4 48:4 48:5 48:8 48:10 48:16 48:17 48:20 48:22 48:22 48:24 49:1 49:1 49:2 49:2 49:8 49:9 49:9 49:10 49:11 49:13 49:13 49:20 49:21 49:24 49:9 49:9 49:10 49:11 49:13 49:13 49:20 49:21 49:24 50:1 50:1 50:2 50:3 50:3 50:3 50:4 50:4 50:5 50:8 50:10 50:13 50:15 50:17 50:19 50:24 50:25 51:1 51:3 51:4 51:5 51:6 51:6 51:7 51:7 51:7 51:9 51:10 51:13 51:14 51:19 51:21 51:22 51:23 51:24 52:1 52:2 52:3 52:4 52:5 52:10 52:11 52:12 52:12 52:13 52:15 52:17 53:1 53:7 53:8 53:10 53:11 53:23 53:23 53:25 53:17 53:21 53:24 53:24 53:25 53:25 53:25 54:1 54:3 54:4 54:4 54:5 54:6 54:8 54:8 54:9 54:10 54:10 54:13 54:14 54:16 54:17 54:18 54:19 54:20 54:21 54:22 54:22 54:22 54:23 54:25 54:24 55:7 55:10 55:14 55:14 55:14 55:15 55:16 55:16 55:17 55:17 55:20 55:23 56:6 56:10 56:10 56:12 56:13 56:13 56:13 56:15 56:15 56:15 56:16 56:22 56:23 56:24 56:25 56:25 57:2 57:4 57:8 57:9 57:10 57:12 57:17 57:19 57:23 57:23 57:24 57:24 58:2 58:3 58:3 58:4 58:4 58:6 58:6 58:7 58:9 58:10 58:13 58:14 58:15 58:16 58:17 58:22 58:23 58:25 59:1 59:1 59:3 59:6 59:8 59:9 59:10 59:10 59:15 59:17 59:18 59:19 59:20 59:22 59:22 60:1 60:5 60:5 60:6 60:8 60:9 60:10 60:11 60:12 60:12 60:12 60:13 60:15 60:16 60:18 60:20 60:22 60:23 60:23 61:1 61:3 61:5 61:7 61:8 61:11 61:12 61:13 61:13 61:14 61:14 61:14 61:15 61:16 61:16 61:16 61:18 61:18 61:19 61:21 61:24 62:1 62:2 62:5 62:6 62:7 62:8 62:10 62:13

**the(301)** 62:13 62:14 62:14 62:16 62:19 62:20 62:22 62:24 63:5 63:6 63:7 63:9 63:10 63:10 63:11 63:12 63:16 63:16 63:18 63:20 63:21 63:22 63:23 63:25 63:25 64:2 64:5 64:8 64:9 64:11 64:12 64:14 64:13 64:14 64:14 64:15 64:15 64:19 64:19 64:21 64:22 64:24 65:2 65:6 65:8 65:11 65:12 65:16 65:19 65:22 65:23 65:23 66:2 66:2 66:5 66:6 66:7 66:7 66:8 66:9 66:10 66:11 66:11 66:18 66:20 66:23 67:6 67:7 67:10 67:10 67:16 67:18 67:18 67:20 67:22 67:23 67:23 67:23 67:25 67:25 68:1 68:3 68:7 68:8 68:10 68:11 68:14 68:16 68:18 68:20 68:20 68:21 68:21 68:22 68:23 68:25 69:3 69:4 69:4 69:4 69:5 69:5 69:6 69:9 69:13 69:16 69:17 69:22 69:22 69:22 69:25 70:2 70:3 70:4 70:5 70:7 70:7 70:7 70:12 70:18 70:22 71:2 71:3 71:4 71:5 71:5 71:10 71:10 71:12 71:15 71:16 71:17 71:18 71:19 71:20 71:22 71:23 71:24 71:25 71:25 72:3 72:4 72:6 72:14 72:16 72:17 72:23 72:33 72:24 72:24 72:25 73:6 73:10 73:10 73:13 73:16 73:19 74:1 74:3 74:4 74:7 74:8 74:8 74:9 74:10 74:11 74:12 74:20 74:21 74:22 74:22 74:25 75:3 75:5 75:9 75:9 75:11 75:11 75:14 75:14 75:16 75:18 75:18 75:19 75:21 75:21 75:22 75:23 75:24 75:25 76:4 76:5 76:6 76:8 76:11 76:13 76:13 76:14 76:15 76:18 76:18 76:20 77:5 77:8 77:8 77:11 77:13 77:15 77:17 77:17 77:18 77:22 77:24 78:4 78:5 78:5 78:6 78:7 78:10 78:13 78:14 78:16 78:16 78:17 78:19 78:20 78:21 78:22 78:22 78:23 78:24 79:2 79:4 79:6 79:7 79:9 79:10 79:11 79:12 79:16 79:17 79:17 79:19 79:25 79:27 79:27 80:1 80:1 80:3 80:11 80:12 80:16 80:18 80:20 80:21 80:21 80:22 80:24 80:24 81:3 81:3 81:6 81:7 81:7 81:8 81:11 81:16 81:17 81:18 81:20 81:21 81:24 82:1 82:2 82:2 82:5 82:7 82:13 82:13 82:16 82:16

**the(301)** 82:17 82:18 82:19 82:19 82:20 82:22 82:23 82:24 82:25 82:25 83:1 83:1 83:3 83:4 83:5 83:6 83:7 83:8 83:9 83:10 83:10 83:13 83:15 83:17 83:18 83:19 83:20 83:21 83:22 83:22 83:23 83:23 84:1 84:3 84:5 84:9 84:11 84:12 84:13 84:16 84:18 84:22 84:24 85:1 85:2 85:4 85:7 85:9 85:10 85:11 85:12 85:12 85:12 85:13 85:14 85:14 85:15 85:15 85:15 85:16 85:17 85:17 85:18 85:19 85:20 85:21 85:23 85:23 85:23 85:24 85:24 85:25 85:25 86:1 86:3 86:6 86:6 86:10 86:12 86:15 86:16 86:18 86:23 86:24 87:1 87:3 87:6 87:7 87:7 87:8 87:8 87:9 87:11 87:12 87:12 87:13 87:13 87:13 87:14 87:14 87:14 87:18 87:20 87:23 87:24 87:24 87:25 87:25 88:1 88:2 88:4 88:5 88:8 88:9 88:9 88:10 88:12 88:13 88:14 88:15 88:16 88:16 88:18 88:18 88:21 88:22 88:25 89:1 89:1 89:6 89:10 89:14 89:14 89:16 89:16 89:17 89:18 89:18 89:19 89:19 89:21 89:21 89:23 90:1 90:6 90:7 90:8 89:19 89:19 89:21 89:21 89:23 90:1 90:6 90:7 90:8 91:6 91:7 91:7 91:7 91:11 91:12 91:13 91:14 91:14 91:20 91:22 91:25 91:25 92:1 92:4 92:5 92:8 92:14 92:15 92:16 92:19 92:23 92:25 92:25 93:4 93:6 93:11 93:13 93:14 93:23 93:25 93:25 94:8 94:9 94:9 94:10 94:10 94:15 94:16 94:16 94:18 94:19 94:20 94:22 94:23 94:23 94:24 94:24 94:25 95:3 95:3 95:4 95:4 95:5 95:10 95:14 95:15 95:15 95:16 95:16 95:17 95:18 95:18 95:20 95:22 95:22 95:24 95:25 96:1 96:2 96:6 96:7 96:7 96:8 96:8 96:10 96:11 96:13 96:16 96:17 96:18 96:18 96:20 96:21 96:23 96:23 96:24 96:24 96:25 96:25 97:2 97:2 97:4 97:4 97:5 97:4 97:7 97:7 97:9 97:10 97:10 97:15 97:17 97:18 97:19 97:20 97:22 97:24 98:6 98:7 98:8 98:10 98:12 98:14 98:17 98:18 98:20 98:21 98:22 98:23 98:24 99:1 99:1 99:3 99:9 99:10 99:11 99:12 99:14 99:15 99:15 99:18 99:18 99:19 99:20 99:21 99:21 100:1 100:1 100:9 100:12 100:16 100:17

**the(301)** 100:18 100:20 100:21 100:21 100:22 100:23 100:24 100:25 101:1 101:1 101:3 101:5 101:7 101:9 101:10 101:11 101:13 101:18 101:21 102:2 102:3 101:12 102:1 102:2 102:4 102:5 102:7 102:8 102:12 102:12 102:17 102:18 102:19 102:22 103:2 103:2 103:3 103:3 103:4 103:5 103:6 103:10 103:7 103:8 103:9 103:14 103:15 103:16 103:18 103:19 103:25 104:1 104:5 104:5 104:7 104:8 104:13 104:14 104:16 104:17 104:19 104:23 105:2 105:6 105:7 105:8 105:9 105:9 105:10 105:14 105:15 105:16 105:16 105:19 105:20 105:25 106:1 106:4 106:5 106:5 106:6 106:6 106:7 106:7 106:9 106:9 106:10 106:12 106:14 106:15 106:19 106:21 106:22 106:23 106:24 106:25 107:1 107:3 107:6 107:6 107:8 107:9 107:14 107:16 107:18 107:18 107:23 107:25 108:1 108:3 108:5 108:6 108:10 108:12 108:14 108:15 108:16 108:22 108:22 108:23 108:24 109:2 109:9 109:9 109:12 109:12 109:14 109:16 110:10 110:12 110:14 110:16 110:16 111:1 111:1 111:5 111:7 111:7 111:11 111:15 111:16 111:16 111:18 111:19 111:20 111:21 111:22 111:22 111:25 112:2 112:5 112:7 112:9 112:12 112:13 112:14 112:17 112:18 112:21 112:21 113:1 113:1 113:3 113:5 113:5 113:12 113:13 113:14 113:14 113:15 113:15 113:16 113:18 113:25 114:1 114:7 114:8 114:9 114:11 114:17 114:20 114:21 114:24 114:24 114:25 115:5 115:5 115:7 115:9 115:15 115:10 115:13 115:13 115:15 115:18 115:20 115:21 115:22 115:22 115:23 115:24 116:1 116:3 116:3 116:4 116:4 116:4 116:5 116:7 116:7 116:8 116:13 116:14 116:17 116:17 116:19 116:20 116:20 116:21 116:21 117:1 117:5 117:7 117:10 117:12 117:15 117:17 117:17 117:20 117:22 117:22 118:1 118:1 118:2 118:8 118:18 118:18 118:19 118:19 118:21 118:25 119:1 119:2 119:4 119:8 119:8 119:9 119:10 119:10 119:11 119:16 119:17 119:18 119:19 119:24 119:25 120:4 120:7 120:9 120:24 120:25 121:2 121:3 121:5 121:6 121:16 121:17 121:24 121:25 121:9 121:14 121:15 121:15

**the(38)** 121:16 121:17 121:18 121:19 121:21 121:23 122:2 122:7 122:8 122:10 122:12 122:12 122:18 122:19 122:22 122:22 122:23 122:25 123:1 123:2 123:3 123:5 123:6 123:10 123:13 123:13 123:17 123:18 123:18 123:19 123:20 123:22 123:24 123:24 124:6 124:8 124:9 124:9 124:10

**their(57)** 13:14 14:3 17:13 17:23 22:2 23:6 23:19 35:12 37:3 42:14 43:17 48:11 50:17 55:7 55:7 55:8 55:11 56:1 56:2 59:4 59:12 59:13 60:6 62:7 62:15 62:20 62:20 62:22 63:4 72:2 72:8 74:16 76:14 78:18 80:6 90:11 90:12 98:14 99:3 101:24 102:21 103:10 103:19 104:7 104:13 104:18 105:14 105:20 109:1 109:1 115:14 115:15 115:15 116:15 116:18 124:2

**them(34)** 14:9 18:18 18:18 25:17 30:21 32:14 36:18 43:7 43:19 45:25 46:4 46:4 47:24 48:3 48:16 48:17 51:12 58:15 62:5 62:5 71:13 73:24 77:1 77:6 80:9 84:22 87:2 92:16 94:20 104:20 110:9 111:9 111:19 116:21

**themselves(2)** 35:13 73:1

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

then(42) 10:8 11:23 12:24 23:6 26:16 26:23 29:7 33:6 35:6 35:13 35:25 36:8 37:12 39:1 39:24 42:22 42:25 44:6 44:24 46:2 47:11 49:10 49:12 52:17 57:15 59:13 59:18 63:8 72:18 73:6 74:7 76:2 81:10 82:9 83:7 95:23 97:23 103:9 104:6 105:1 112:15 118:1

theoretically(1) 33:8
theories(1) 28:11
there(138) 12:6 12:6 13:2 16:20 17:13 18:18 19:21 20:23 21:4 23:22 26:9 26:10 26:12 26:16 26:18 26:22 26:23 27:12 28:14 29:8 30:6 30:7 30:15 30:17 30:17 31:16 35:11 39:1 40:12 41:8 45:1 46:9 48:6 48:8 48:13 49:5 49:16 49:17 49:17 50:9 50:14 51:14 51:18 53:12 57:3 57:12 57:24 58:11 58:18 61:1 62:11 62:11 62:19 63:1 63:2 63:12 63:19 64:16 64:16 67:19 67:20 69:6 71:14 73:20 74:1 74:1 74:8 74:11 74:19 74:20 75:16 76:23 77:15 78:12 82:15 82:16 82:21 86:5 86:6 86:7 86:14 86:16 86:22 86:24 86:25 87:1 87:1 87:4 87:5 87:15 87:15 88:5 88:23 89:3 89:11 90:8 90:12 90:13 90:13 90:23 91:23 93:3 93:7 95:13 96:13 96:22 97:11 97:15 98:9 98:19 98:21 98:25 99:1 99:4 101:17 101:25 104:13 104:14 105:23 107:3 107:24 108:14 109:9 109:25 111:10 111:11 113:1 113:17 113:24 114:13 115:6 119:14 119:19 123:20 123:21 121:1 123:21

there'll(1) 29:17
there's(55) 12:8 16:12 18:22 19:11 20:20 21:2 22:4 24:3 27:12 28:25 30:5 31:16 32:2 34:4 34:5 47:6 48:17 49:19 51:11 56:20 58:9 59:24 61:12 69:20 70:11 70:25 71:13 78:18 80:5 80:25 82:23 83:19 93:22 95:12 104:21 104:25 106:18 107:2 107:25 108:13 109:11 109:23 109:24 110:7 112:1 112:3 114:14 114:16 117:1 117:13 117:14 118:11 119:18 123:19 123:20

therefore(6) 13:15 69:25 70:18 120:12 121:1 121:4
thereof(1) 49:14
these(46) 13:5 18:8 18:11 22:18 22:25 23:7 23:9 30:9 31:10 32:13 41:2 41:3 42:20 42:21 42:22 43:6 45:6 45:20 46:2 46:6 47:23 50:14 53:2 54:11 55:3 57:21 62:7 71:9 76:25 76:25 83:9 99:12 107:4 108:15 110:18 111:19 113:10 114:3 114:23 115:23 116:4 119:11 119:12 119:6 121:11

they(164) 13:3 13:11 13:22 14:3 14:11 18:6 18:9 21:16 25:16 26:16 28:17 30:18 31:24 31:25 32:5 32:14 32:18 32:22 35:22 36:11 36:18 37:5 37:9 37:10 37:11 37:12 37:14 37:16 37:20 37:23 38:2 38:19 38:25 39:4 39:9 39:14 39:24 40:3 40:14 42:23 43:3 43:4 44:24 47:19 48:12 51:19 55:10 55:11 55:12 55:20 58:7 59:12 62:5 62:8 62:12 62:13 62:14 62:15 63:5 63:7 66:9 67:4 67:7 70:5 70:17 71:7 71:14 71:25 72:3 72:4 72:9 72:9 72:20 72:21 72:22 72:25 73:24 74:25 74:5 75:17 76:7 76:14 76:14 76:18 77:7 77:7 78:22 79:2 79:8 79:12 80:2 80:7 82:18 82:22 84:21 85:25 86:9 87:3 87:17 90:10 92:10 92:10 92:12 92:13 92:15 92:16 92:16 94:10 95:4 96:1 96:5 96:11 96:12 96:13 97:3 97:5 97:15 97:8 97:9 97:11 97:13 97:14 97:16 97:17 99:5 99:5 99:7 101:9 103:5 104:1 104:2 104:3 104:5 104:6 105:10 105:21 106:16 106:17 108:25 109:12 109:13 111:12 114:4 114:12 115:11 115:11 115:14 115:15 115:18 115:22 117:11 115:16 115:18 118:22 119:19 121:14 121:16

they'll(2) 38:1 97:9
they're(21) 11:22 17:24 23:19 25:6 25:21 39:25 56:1 59:11 63:6 73:19 79:7 79:24 91:14 92:19 95:25 97:20 108:3 119:9 121:2 116:20 118:4

they've(4) 13:7 62:17 77:7 121:12
thing(15) 37:11 49:23 52:21 52:21 61:7 70:14 78:25 81:3 81:17 90:7 102:25 105:5 108:14 109:22 113:4
things(21) 30:9 30:10 31:22 38:1 41:3 41:4 43:6 45:6 45:8 45:22 46:2 50:1 50:2 53:2 66:20 81:21 92:15 97:14 101:17 113:10 119:1
think(63) 9:10 9:11 10:8 10:23 19:8 20:6 24:4 35:9 44:11 47:13 48:2 49:23 53:3 53:4 57:7 57:16 59:7 60:19 61:2 63:6 64:19 64:21 64:25 69:6 74:15 74:16 74:17 76:3 77:18 79:14 81:2 81:15 83:5 83:8 89:16 91:23 93:6 94:1 95:19 95:19 95:20 100:18 101:24 103:11 104:11 104:11 105:18 107:17 107:23 108:22 109:22 112:7 115:12 115:17 117:9 119:15 119:21 122:15 122:15 123:23

thinking(2) 92:22 117:21
third(5) 38:18 38:18 50:25 81:25 103:18
thirdly(1) 42:6

this(301) 9:9 9:14 10:12 11:5 12:9 13:3 13:14 13:12 15:2 15:4 15:6 15:6 15:11 15:16 17:21 17:23 18:21 19:4 19:9 19:10 19:22 20:6 21:8 22:1 22:6 22:16 23:10 23:24 24:21 24:22 25:1 25:20 25:21 25:23 26:9 26:23 27:15 27:15 27:17 27:18 28:2 28:5 29:1 29:4 29:5 29:10 29:24 31:8 31:14 31:16 31:18 32:11 32:15 32:16 32:16 32:24 32:21 33:11 33:14 34:5 36:21 36:22 37:1 37:1 37:3 37:10 37:15 37:19 38:2 38:9 38:23 39:5 39:6 39:23 40:2 40:3 40:5 40:9 41:8 42:6 42:14 42:19 44:2 44:4 44:22 45:4 46:3 48:14 49:16 49:24 52:1 52:21 53:9 53:9 53:11 54:1 54:15 54:23 54:25 55:13 55:15 55:16 54:2 54:6 56:17 56:19 56:24 57:14 57:17 58:17 58:20 59:21 60:1 60:4 60:7 60:7 60:14 60:16 60:20 61:2 61:10 62:20 66:6 66:12 66:14 67:1 67:4 67:8 67:9 67:11 67:13 68:4 68:5 68:6 68:8 68:13 68:14 68:16 68:17 68:22 69:7 69:14 69:18 69:19 69:21 70:6 70:9 70:23 71:4 71:4 71:6 71:10 71:17 71:22 71:23 71:24 72:4 72:10 72:16 72:17 72:20 72:24 73:3 73:4 73:20 74:14 74:18 75:5 75:8 76:1 77:5 77:6 77:15 77:19 77:21 77:23 78:13 78:14 79:15 79:24 80:15 80:19 80:20 81:5 81:11 81:19 82:1 82:3 82:4 82:7 82:12 82:24 83:6 83:21 84:14 84:18 84:20 85:1 85:2 85:5 85:8 85:13 86:4 86:9 87:9 89:12 90:4 90:5 90:11 90:21 90:24 90:24 91:10 91:17 91:20 92:1 93:4 93:7 93:13 94:24 95:17 96:2 96:3 96:20 97:3 97:13 97:18 98:6 98:13 98:15 99:2 99:7 99:25 100:7 100:8 100:21 100:25 101:2 101:23 102:9 102:11 103:4 104:11 104:18 104:25 105:9 105:15 105:15 105:16 105:19 105:25 106:2 106:5 106:16 106:21 107:24 108:3 108:4 108:23 108:24 109:1 109:6 109:10 109:11 109:16 109:19 109:24 110:5 110:6 110:10 110:14 110:15 110:24 111:2 111:3 111:5 111:14 112:2 112:3 112:10 112:15 112:23 113:6 114:20 114:22 115:9 116:13 116:15 116:16

this(18) 116:23 116:24 117:3 117:6 117:13 117:14 117:18 117:19 119:5 119:6 120:11 121:1 121:6 122:13 123:6 123:11 123:13 124:1

thomas(1) 5:32
thornton(2) 4:38 5:4
those(44) 10:16 12:22 15:12 17:24 20:8 25:5 25:12 25:14 25:14 33:11 34:12 37:8 38:1 38:17 39:17 40:10 41:10 44:12 45:8 49:6 49:19 51:5 52:16 53:8 55:13 59:3 59:20 63:13 63:18 70:12 70:23 74:2 78:11 80:19 87:4 91:2 91:3 92:13 96:4 97:14 115:21 118:21 119:17 122:21

though(6) 41:5 65:24 104:22 112:18 116:25 117:3
thought(9) 31:8 45:3 45:9 45:9 54:16 71:20 73:10 92:23 106:13
thoughtful(2) 45:13 85:22
three(5) 55:1 55:17 82:23 105:21 109:18
through(30) 12:22 18:5 18:18 24:14 27:8 28:1 36:17 38:3 39:8 42:19 43:19 44:6 46:16 47:23 66:12 67:13 68:3 68:22 80:11 80:12 84:13 88:13 90:23 95:25 94:8 94:18 94:18 97:8 104:2 105:21

throw(2) 21:22 117:2
thursday(2) 71:13 89:9
ticking(3) 47:23 89:4 89:5
tickoo(1) 8:13
tied(1) 118:11
time(48) 10:24 11:5 13:12 14:21 17:10 20:2 20:11 20:15 22:8 22:20 23:4 23:8 25:19 25:20 26:23 31:10 38:16 40:2 42:13 49:21 51:13 53:16 55:10 56:12 56:25 65:17 77:15 79:2 82:10 84:3 86:12 87:23 88:1 88:2 88:5 90:1 97:3 101:23 106:4 108:5 108:11 114:6 115:9 116:4 116:17 122:5 123:19 123:21

times(4) 33:17 77:2 86:4 88:21 88:22 106:3
timing(1) 82:1
title(1) 72:24
tmt(1) 54:7
today(19) 9:21 10:5 21:25 31:18 37:5 38:19 63:8 63:16 63:17 72:7 74:15 84:13 90:3 94:22 97:21 104:22 111:3 114:2 114:8

together(2) 54:6 68:9
toggles(1) 21:14
told(21) 13:11 27:20 31:6 36:6 37:11 84:17 85:14 87:17 89:13 89:15 89:25 92:3 95:4 95:4 96:4 96:21 98:4 98:5 105:9 109:5 112:5

tolerate(1) 36:13
tomorrow(1) 102:1
too(14) 29:23 29:23 31:19 31:21 31:22 37:19 37:23 38:15 49:16 64:8 92:24 115:17 116:8 118:7
took(11) 15:16 50:24 86:7 86:17 86:23 90:2 90:3 105:9 106:17 113:20 115:20
top(1) 27:9
topic(2) 40:15 48:12
topics(1) 35:2
toronto(1) 86:18
toss(1) 20:8

total(1) 67:20
tote(1) 77:17
touch(2) 34:25 44:10
touched(1) 101:18
tower(1) 3:14
track(2) 38:18 109:19
trades(2) 10:12 10:12
trading(1) 10:17
trailer(1) 54:7
transaction(1) 14:8
transcriber(1) 124:14
transcript(7) 1:18 1:50 48:8 106:18 107:3 123:2
transcription(2) 1:43 1:50
transfer(1) 18:1
travel(1) 65:3
travels(1) 124:3
treatment(2) 63:4 76:16
treaty(1) 110:14
trial(15) 13:17 14:21 27:15 27:16 27:16 27:18 35:11 36:5 37:22 37:25 38:6 52:15 95:8 97:13 101:1
trials(1) 18:12
tried(6) 35:16 35:18 76:19 113:8 113:8 113:8
trier(1) 43:20
tries(1) 40:3
true(6) 16:8 24:15 58:15 74:13 95:19 113:17
truly(5) 50:24 73:19 80:9
trust(8) 3:1 4:34 17:12 24:25 32:3 50:8 51:8 52:14
trustee(6) 4:46 30:23 55:9 55:14 74:21 79:22
trustees(3) 55:6 55:13 79:22
truth(1) 112:7
try(15) 11:8 16:20 25:20 30:19 34:24 42:3 42:8 65:21 67:4 67:7 68:17 84:2 99:7 102:24 106:12

trying(13) 21:7 28:5 32:12 32:12 32:13 36:9 39:25 45:5 48:11 91:17 110:11 113:4 116:14

tumble(1) 33:10
tunis(1) 1:36
tunnell(1) 1:24
turn(7) 34:16 35:25 36:14 40:15 41:5 107:4 119:3
turned(4) 26:24 36:8 37:12 87:17
turning(1) 21:19
turns(2) 33:17 109:9
tweed(3) 2:19 5:31 34:21
two(30) 11:9 16:23 34:25 35:2 37:8 47:5 48:9 48:13 53:24 54:11 55:1 55:6 55:13 55:17 62:5 62:18 67:20 67:20 67:23 68:9 72:18 94:7 96:22 97:1 99:15 109:5 111:4 113:22 114:11 119:13

two-minute(1) 65:21
two-week(1) 38:15
tyler(1) 3:25
type(1) 114:1
types(1) 33:11
u.n(1) 110:14
u.s(46) 13:8 13:20 14:12 15:13 15:15 15:20 23:21 24:18 25:2 25:8 26:16 26:20 28:4 31:13 32:8 32:20 32:21 33:6 33:21 34:1 36:7 36:11 44:16 47:11 47:14 47:15 48:18 49:1 51:3 60:12 87:8 88:4 94:17 94:23 95:5 95:17 96:7 97:7 100:24 110:9 110:13 111:23 115:20 116:17 118:11 118:22

ucc(1) 121:6
ukpi(1) 100:23
ultimate(2) 20:17 21:13
ultimately(4) 22:25 23:10 45:10 57:23
um-hum(12) 31:20 38:21 44:21 57:2 60:18 62:24 75:3 102:7 104:16 107:9 115:10 120:20

unambiguously(1) 67:17
uncertain(3) 111:21 118:4 118:18
uncertainties(4) 82:17 83:8 83:12 115:22
uncertainty(7) 21:23 22:17 83:13 98:12 98:19 117:22 119:1

uncomplicated(1) 70:1
under(30) 9:12 11:9 11:24 16:15 52:2 53:13 68:10 68:18 68:23 68:24 69:2 69:25 70:18 72:11 72:15 72:25 73:23 77:24 78:9 78:16 81:23 84:22 88:17 93:25 94:9 102:6 106:23 107:12 112:22

understand(9) 9:25 48:15 58:22 70:10 78:6 80:20 83:22 101:13 121:5
understood(2) 48:6 69:17
undertake(1) 42:3
unequivocal(1) 35:11
unfair(2) 30:21 95:19
unhappy(4) 30:9 30:13 81:13 81:14
unimpaired(3) 80:5 80:6 80:9
unimpairment(1) 80:8
unique(4) 31:25 62:23 63:2 101:2
united(5) 1:1 1:20 57:4 57:19 116:3
unknowledgeable(1) 91:18
unknown(1) 14:4
unless(3) 53:15 108:23 108:25
unprecedented(2) 68:19 73:20
unreasonable(1) 14:9

unredacted(2) 11:15 11:17
unresolved(1) 13:13
unsecured(19) 5:22 24:9 51:4 55:22 55:12 55:20 55:22 56:14 56:19 58:6 58:12 58:23 67:18 70:2 70:19 76:17 115:7 115:8 115:13

unsettled(2) 110:1 118:4
unsupported(2) 99:6 99:7
until(3) 15:4 15:7 110:7
unwashed(1) 122:19
up(down)(1) 109:7
upon(5) 34:25 38:13 53:10 83:12 101:19
upper(2) 104:25 105:3
upside(3) 29:7 76:11 76:14
urban(1) 4:12
urging(1) 53:11
urquhart(1) 4:5
usa(1) 6:24
usb(1) 7:40
use(11) 25:7 33:19 42:24 44:5 50:20 51:11 76:25 92:22 95:21 117:5
used(15) 39:9 39:19 48:7 50:19 50:21 67:5 77:14 82:22 95:20 95:21 95:22 95:22 95:23 106:19
uses(4) 51:2 51:21 51:22 51:24
using(3) 21:22 51:23 106:14
usual(1) 123:11
utilized(1) 33:20
utterly(1) 48:4
validity(1) 107:18
value(37) 15:19 34:13 39:21 46:2 52:8 52:9 56:19 58:21 58:25 69:19 69:21 69:21 70:12 75:4 78:23 78:23 78:24 78:24 79:6 82:7 82:13 82:13 82:15 82:18 83:4 83:7 83:20 90:24 93:3 93:7 117:15 118:21 120:19 121:1 121:4 121:5

values(2) 49:17 58:19
vanilla(1) 73:20
vaporous(1) 29:2
variable(2) 27:13 119:4
variables(9) 26:15 27:12 107:2 107:4 112:1 113:2 113:6 115:21 119:2
variety(2) 68:8 103:13
various(2) 32:10 98:21
vast(1) 82:16
vedder(2) 3:39 64:6
vegas(1) 28:6
version(3) 11:15 11:17 11:20
versus(2) 97:25 110:14
very(43) 29:12 30:9 31:13 33:7 39:17 53:16 54:11 54:11 55:22 57:25 58:15 59:3 59:3 60:11 61:25 62:2 67:16 70:14 74:9 75:17 77:20 79:17 79:17 82:6 84:6 91:11 92:6 92:14 93:1 93:6 93:9 98:24 100:8 101:22 103:5 103:22 104:3 122:21 123:18 123:24

view(6) 32:14 45:21 54:23 66:10 67:10 90:2
views(1) 114:25
vigorous(9) 85:22 86:3 86:4 86:7 86:7 87:15 89:11 96:15 96:17
violations(1) 74:1
virtually(1) 13:13
voice(2) 23:15 64:8
voices(1) 23:6
vote(2) 80:9 80:12
voted(1) 76:17
w.r(7) 21:12 21:10 31:2 74:24 74:24 109:3 119:15
wait(1) 15:5
waiting(2) 23:10 59:4
waived(1) 78:11
walancik(1) 5:18
walk(1) 65:6
wall(2) 3:9 99:9
walrath(1) 30:22
wang(1) 6:17
want(32) 9:7 9:13 24:22 25:1 30:1 30:11 32:17 35:2 41:3 65:20 66:7 66:10 67:10 77:20 80:2 88:10 88:11 92:4 92:5 100:6 101:8 111:20 112:18 113:3 114:4 115:15 117:11 118:6 118:15 119:2 119:19 120:23

wanted(9) 28:9 28:10 40:15 63:21 64:10 76:14 104:3 113:9 118:5
wants(2) 9:23 62:2

| Word | Page:Line |
|---|---|

was(215) 11:7 11:16 12:5 13:10 17:10 17:11 19:10 20:24 21:1 21:4 21:5 21:12 24:20 24:24 29:7 29:12 29:22 29:23 30:15 30:17 30:17 36:7 36:23 37:15 38:9 38:15 39:20 39:21 39:21 40:6 41:9 41:9 41:16 41:19 41:21 42:10 42:18 44:15 44:19 45:5 45:9 45:13 45:14 45:16 48:4 48:13 48:14 50:7 50:24 50:25 51:19 53:10 53:12 54:18 56:13 56:23 56:24 57:4 57:8 57:8 57:17 60:10 60:25 61:4 64:15 64:16 64:16 66:23 69:14 69:15 71:20 71:21 72:7 73:2 74:13 74:19 74:21 75:6 75:12 75:15 75:16 76:10 76:12 76:22 76:23 77:15 78:17 78:17 78:20 78:20 78:21 79:2 82:4 82:20 85:13 85:16 85:19 85:21 85:22 85:23 86:3 86:4 86:5 86:6 86:7 86:13 86:14 86:16 86:21 87:7 87:13 87:13 87:14 87:17 88:14 88:16 88:24 88:25 89:12 89:13 89:24 90:7 90:13 90:13 90:20 90:22 90:23 90:24 91:5 91:7 91:13 92:5 92:14 92:18 93:1 93:3 93:7 94:17 94:18 94:19 94:22 95:13 95:13 95:15 96:5 96:19 96:15 96:18 96:19 97:2 97:4 97:14 97:22 98:5 98:9 98:10 98:21 98:25 99:1 99:4 99:6 99:7 101:24 101:25 102:11 102:12 102:18 103:10 103:12 103:19 104:2 104:8 104:13 104:14 105:4 105:10 106:9 106:13 106:16 106:25 107:10 107:20 107:21 108:3 109:4 110:5 110:24 110:25 111:14 111:14 111:14 112:10 112:13 112:18 113:14 113:16 113:17 115:5 117:16 117:21 118:10 118:11 119:18 120:15 120:22 121:7 121:15 123:3 123:14 124:6

wasn't(12) 10:10 12:16 21:6 41:1 41:19 43:12 74:23 90:12 106:16 117:7 118:12 119:5

waste(1) 92:5

waterfall(3) 94:8 94:18 116:18

way(22) 17:1 18:1 27:11 28:4 29:15 32:13 32:16 37:1 37:1 37:12 47:9 47:13 54:24 55:20 59:3 60:23 61:18 67:23 83:18 85:9 97:5 102:19

ways(4) 16:23 60:7 93:9 107:5
we'd(4) 9:20 52:23 53:13 104:20
we'll(10) 10:20 11:8 29:17 31:17 59:20 77:3 81:17 82:9 124:3

we're(40) 12:2 14:21 21:7 23:5 25:22 25:23 29:2 29:19 30:3 30:3 30:4 31:1 33:2 36:9 46:8 46:9 46:11 62:3 67:8 74:3 78:25 79:13 79:22 80:1 82:10 82:21 97:23 98:17 99:1 99:23 100:19 100:24 108:11 108:24 109:1 113:4 118:7 121:17 122:13 123:20

we've(19) 22:22 25:11 34:7 36:20 39:22 44:13 46:3 58:17 58:18 59:14 59:17 59:18 74:24 84:17 97:21 113:7 113:8 113:8 116:23

webb(1) 3:25
wednesday(1) 9:1
weeds(4) 40:23 44:8 45:20 46:7
week(7) 38:4 38:4 38:12 97:7 97:23 106:7 111:4
weeks(11) 38:13 39:9 40:6 86:4 86:5 86:13 86:13 86:23 107:11 110:12 113:13

wei(1) 6:17
weidinger(1) 4:12
weigh(1) 84:20
weight(2) 46:14 53:5
welfare(1) 52:13
well(48) 15:10 18:6 19:1 19:9 19:12 20:10 21:18 28:5 28:12 31:13 32:2 36:9 38:10 39:22 41:15 43:13 45:3 45:8 51:14 55:3 57:25 58:22 59:10 67:1 71:14 74:16 76:18 76:19 79:3 80:5 82:4 83:14 83:18 85:1 86:13 87:16 88:8 89:13 89:16 89:24 90:5 90:16 92:5 92:21 92:23 94:13 96:22 97:19 98:12 99:4 100:22 103:19 104:5 106:25 107:2 107:19 108:11 109:9 112:7 115:12 117:16 118:14 119:4 120:25 121:12 123:11 123:24

well-presented(1) 123:12
well-worn(1) 77:7
went(12) 21:6 21:14 21:14 28:4 86:4 86:5 86:12 86:13 89:21 93:13 94:8 98:12

were(75) 12:9 12:14 13:4 14:20 15:9 15:10 20:4 21:10 21:10 22:5 28:17 28:19 28:23 29:6 30:6 30:7 30:7 30:9 31:10 34:12 36:25 37:2 37:3 37:10 37:19 37:21 37:24 38:10 38:23 41:11 43:12 45:1 45:6 45:15 49:9 51:19 61:12 61:12 70:20 70:20 70:23 72:6 73:4 74:1 74:2 75:17 76:14 76:17 77:16 80:9 81:7 87:5 87:15 87:17 89:17 92:8 92:10 95:4 95:4 96:4 97:15 99:16 100:1 103:11 104:8 104:15 109:5 111:10 111:11 113:16 117:20 117:21 118:22

weren't(8) 30:11 63:12 63:24 71:1 103:24 103:24 115:11 115:12

wertheim(30) 27:8 35:7 39:11 40:16 41:4 41:7 41:11 41:24 42:16 43:10 44:10 44:15 44:25 45:2 45:22 50:21 57:13 57:15 82:13 95:10 95:16 96:2 106:14 106:16 106:19 107:13 107:19 107:20 107:23 117:24 121:5

wertheim's(2) 27:2 27:7
western(1) 74:6
we're(1) 64:7
whack-a(1) 33:17

what(116) 13:3 13:4 13:4 13:11 15:9 20:1 21:7 22:16 22:22 22:25 25:11 28:9 28:14 28:17 28:23 29:19 29:19 30:12 30:13 30:14 31:1 32:9 32:18 33:18 33:25 34:24 41:9 41:12 41:17 41:21 41:23 42:3 42:4 42:7 43:3 44:13 46:6 46:11 50:16 50:21 52:15 53:10 53:17 54:1 54:25 57:14 57:15 58:25 59:13 60:9 63:11 63:13 63:14 66:24 66:24 67:8 77:6 79:7 81:15 85:3 85:13 86:13 86:19 90:2 90:5 91:4 91:14 91:16 91:25 92:14 92:22 92:22 93:3 93:13 94:2 94:3 94:4 94:9 94:14 95:3 95:8 95:10 95:18 95:21 96:6 96:19 96:19 97:2 97:5 97:9 97:14 97:17 100:20 102:21 104:24 105:6 106:16 106:20 106:22 112:23 113:24 115:8 117:20 117:21 117:21 119:19

what's(16) 19:19 25:1 46:8 78:23 83:2 98:24
whatever(4) 23:3 57:23 114:13 118:7
whatsoever(1) 51:1
when(67) 9:20 12:10 12:22 13:2 18:6 22:23 23:19 25:14 28:15 28:18 31:18 35:13 36:14 36:21 37:12 37:15 37:24 38:2 38:22 39:21 39:41 43:10 44:19 45:7 48:6 53:12 54:12 55:12 56:10 56:12 56:24 57:4 57:7 57:23 58:9 59:7 59:15 59:16 65:5 66:23 69:15 71:5 71:12 71:13 72:4 72:8 77:6 77:15 78:21 78:25 79:2 83:17 86:11 88:22 91:2 92:22 96:25 100:12 102:3 102:25 104:1 106:12 108:2 111:3 112:6 115:1 123:13

where(44) 12:19 14:16 15:4 20:24 21:2 24:14 24:19 24:20 25:9 28:1 28:20 29:6 30:11 30:16 31:3 34:4 34:9 35:16 35:18 35:21 43:5 43:11 45:2 55:10 61:12 69:18 69:20 70:19 70:21 70:22 71:14 80:20 88:1 88:2 88:3 99:19 103:2 107:17 109:20 112:4 114:18 116:18 119:14 122:12

whereupon(1) 124:6
wherever(1) 22:3
whether(27) 16:2 16:6 19:1 19:21 20:18 21:5 24:8 29:22 49:22 54:9 69:9 69:10 69:10 72:19 72:22 80:5 81:22 86:20 86:21 89:14 90:21 90:23 93:7 98:13 99:2 102:16 117:9

which(58) 11:14 12:23 16:25 18:8 18:13 18:20 21:12 21:21 22:4 25:9 25:10 26:4 26:16 31:23 33:20 38:25 38:25 41:1 43:11 49:1 49:24 50:9 50:10 51:14 51:24 56:6 56:7 58:5 59:6 59:23 62:12 62:12 62:16 62:17 62:18 64:11 64:17 64:21 67:22 68:11 72:12 74:9 75:9 77:8 83:1 89:10 90:1 92:1 95:15 103:17 105:25 106:19 107:4 112:22 116:18 117:17 119:2 121:15

while(6) 19:6 25:17 33:22 58:14 60:3 63:0
whiteoak(1) 5:27
who(14) 33:8 39:8 43:4 49:6 55:6 55:7 59:4 62:21 73:14 74:21 85:20 87:7 88:12 92:8

who's(1) 60:11
whole(2) 91:1 119:24
whom(3) 54:1 55:1 61:3
whose(5) 23:5 33:5 56:16 73:22 115:6
why(25) 9:25 10:18 13:3 14:11 27:1 27:8 27:10 29:4 45:13 47:21 50:11 60:7 63:6 63:22 63:24 69:14 83:12 85:2 87:21 89:5 101:23 102:18 105:13 119:2

wild(2) 9:12 10:9 11:25 13:13 19:18 19:20 22:22 26:18 26:20 27:25 28:3 28:4 29:3 33:9 34:10 34:11 39:1 40:11 42:1 42:22 46:9 46:20 47:24 48:25 49:5 49:22 49:22 52:2 52:10 57:23 59:24 60:23 61:7 61:10 61:11 61:17 63:16 63:19 65:16 66:4 74:17 82:14 84:12 84:12 91:10 91:19 91:23 97:22 100:8 100:20 105:1 111:21 112:2 118:17 118:17 120:10 120:12 120:13 123:13 123:18 123:23 124:1

william(1) 7:45
willia(2) 4:25 4:42
wilmington(14) 1:12 1:28 2:7 2:30 2:44 3:1 3:22 3:35 4:16 4:22 9:1 17:12 24:25 32:3

win(3) 20:9 32:15 115:15
wind(1) 21:10
window(2) 22:12 26:17
winds(1) 31:3
winning(2) 30:10 35:17
wish(2) 103:24 103:24
wished(1) 31:9
with(123) 10:12 12:2 15:10 15:12 17:14 17:18 17:25 18:13 19:15 19:18 19:19 19:25 21:3 22:14 23:21 27:7 27:8 28:7 30:24 31:3 32:22 34:16 35:8 36:4 36:6 37:2 37:3 37:10 37:10 38:24 41:17 44:24 45:7 45:23 54:6 54:6 54:7 55:18 55:15 55:21 56:4 56:6 56:8 57:13 58:2 58:3 58:16 59:20 60:22 61:5 61:11 61:18 61:18 63:1 63:13 63:14 64:11 65:3 66:3 66:13 68:19 70:16 72:24 74:22 75:6 75:25 76:3 76:7 76:14 76:24 76:25 77:6 78:5 80:7 80:12 80:23 81:10 81:18 81:17 81:20 81:21 82:18 82:23 83:4 84:9 84:9 85:19 85:19 87:2 88:10 88:22 89:22 90:19 91:11 92:13 93:6 95:7 95:7 97:22 98:20 99:12 100:1 100:8 100:11 100:15 102:11 102:24 103:10 104:20 106:11 107:1 107:5 110:13 110:16 114:16 114:20 115:20 116:18 118:6 118:10 118:15 119:9 119:12

within(11) 17:6 19:12 21:15 21:18 62:14 87:14 89:5 89:6 89:6 89:8 96:11

without(10) 18:4 30:18 78:9 81:25 83:4 99:16 99:16 99:17 99:17 112:12

witness(8) 12:6 39:19 39:23 42:10 43:12 48:5 66:23 66:23

witnesses(2) 110:21 118:17
wolf(4) 43:11 44:10 44:12 45:12
won't(2) 39:6 119:24
wonderful(3) 73:12 73:14
word(13) 23:10 42:11 77:9 77:10 77:18 86:2 86:3 96:14 96:18 96:18 117:5 123:13 123:14

word-for-word(1) 108:18
words(8) 20:8 21:23 37:9 41:1 54:12 61:11 77:15 94:23

work(7) 9:11 35:7 52:10 79:14 93:11 124:1 124:2
working(2) 23:9 112:18
world(6) 21:10 24:13 33:9 55:7 73:25 110:16
worst-case(2) 46:5 46:5
worth(2) 22:9 70:13
worthwhile(1) 122:13
would(89) 10:23 11:18 13:8 15:18 16:18 16:21 18:12 18:25 22:12 22:13 28:21 28:22 29:18 30:11 32:8 33:8 33:16 39:3 40:4 41:10 41:12 41:15 41:18 41:22 41:23 42:4 42:9 45:23 46:11 49:4 49:13 50:6 50:10 51:18 52:20 56:19 58:24 59:2 60:9 61:1 61:2 61:12 63:11 64:14 64:17 68:7 68:8 68:11 68:14 68:23 68:24 69:1 69:3 69:12 69:19 70:17 71:7 72:4 72:12 75:16 76:3 76:18 80:1 80:8 81:13 81:14 89:2 91:25 95:11 96:11 98:16 100:23 100:25 103:4 103:8 103:11 103:11 103:11 103:19 104:4 104:5 105:11 105:18 105:19 105:22 106:3 106:7 106:8 106:9 106:24 106:25 107:2 107:5 107:16 108:5 108:14 108:15 108:17 108:21 109:2 110:23 111:2 111:23 112:14 113:1 113:14 114:23 114:22 115:1 115:20 115:20 116:8 118:5 118:8 118:11 119:3 118:18 118:21 118:22 119:3 119:11 119:12

wouldn't(2) 81:11 102:8
wrinkled(1) 117:6
write(3) 22:2 93:2 103:5
writing(2) 22:12 49:21
wrong(4) 35:21 37:20 79:12 116:11
wrote(1) 46:1
wunder(2) 5:35 5:36
www.diazdata.com(1) 1:47
yeah(2) 48:20 76:20
year(12) 10:6 10:20 20:12 20:13 48:14 52:25 57:24 96:2 96:3 114:8 114:9 114:11

years(18) 15:14 22:19 23:2 31:4 31:11 35:17 35:25 36:9 40:7 48:6 87:11 105:21 106:8 106:8 106:19 110:12 114:11 114:24

yell(1) 15:2
yes(43) 9:19 10:15 11:1 11:13 12:4 12:12 16:24 27:4 28:21 28:22 32:24 35:4 35:20 36:19 45:4 46:19 47:7 48:1 48:24 54:8 61:24 65:9 66:18 74:10 76:21 83:18 84:1 89:11 96:16 100:4 100:9 100:13 100:16 103:14 105:6 110:25 119:14 120:7 120:17 121:3 122:7 122:10 122:25

yesterday(32) 11:8 11:12 12:6 12:14 19:25 23:8 39:19 43:9 45:2 45:8 49:19 50:17 51:10 51:13 52:19 63:8 63:15 66:21 66:23 76:8 76:13 78:19 84:13 86:2 86:11 96:15 98:4 98:9 104:24 105:4 106:2 121:2

yesterday's(2) 45:23 123:2
yet(1) 61:17
yield(1) 52:10
yielded(1) 112:24
york(14) 1:38 2:15 2:24 2:36 3:4 3:15 3:28 3:38 3:42 4:9 4:28 64:7 64:12 64:13

you(301) 8:21 9:4 9:13 9:16 11:2 11:4 11:5 11:12 11:23 11:25 12:2 12:6 12:7 12:14 12:22 13:2 13:33 15:1 15:16 15:7 15:9 15:9 15:23 16:20 17:1 17:10 18:5 18:6 18:12 18:13 19:1 19:14 19:24 20:6 20:20 21:2 22:3 22:11 22:23 23:8 23:17 23:19 23:20 23:20 23:21 23:24 23:25 24:1 24:4 24:11 24:12 24:14 24:24 24:25 25:12 26:6 26:10 26:11 26:13 26:19 27:10 27:20 27:24 28:5 28:6 28:18 29:4 29:6 29:23 29:24 30:6 30:8 30:18 30:19 30:20 30:21 30:23 31:7 31:8 31:17 31:18 33:4 33:7 33:13 33:18 33:23 33:24 34:18 35:23 35:23 35:24 35:24 36:1 36:14 36:23 36:24 37:2 37:3 37:6 37:8 37:8 37:11 37:11 37:14 37:19 38:1 38:4 38:13 38:17 39:4 40:3 40:22 41:2 41:12 43:11 44:9 47:24 48:3 48:18 48:19 50:2 50:16 50:18 50:20 50:21 51:3 51:4 51:6 51:11 53:15 53:17 53:17 53:21 57:11 59:7 59:24 61:20 61:21 64:2 64:3 64:22 64:23 65:3 65:5 65:9 65:12 65:16 65:18 65:20 66:6 66:11 66:13 66:15 66:21 67:3 67:10 68:5 69:9 69:10 69:10 71:14 73:6 73:5 73:9 73:13 74:16 74:18 75:24 75:25 76:15 76:20 77:13 77:14 77:14 77:18 78:9 79:20 79:22 79:25 81:8 81:15 81:16 81:20 82:4 82:12 82:14 82:21 82:23 82:23 82:23 83:1 83:3 83:5 83:6 83:7 83:9 83:9 83:17 83:19 84:6 84:17 86:3 86:9 88:10 89:13 89:15 91:13 91:21 92:3 92:23 92:24 92:25 93:2 93:2 93:5 93:5 94:2 94:13 95:4 95:5 95:20 96:21 96:23 96:24 98:4 98:5 100:1 100:20 100:22 101:9 101:10 101:12 102:15 102:19 103:1 103:1 103:11 103:12 104:2 104:4 104:5 105:11 105:18 105:19 105:22 106:3 106:7 106:8 106:24 106:24 107:2 107:5 107:16 107:16 108:5 108:8 108:14 108:15 108:17 108:21 109:2 109:13 110:23 110:24 111:2 111:23 112:14 113:1 113:14 114:23 114:22 115:1 115:20 115:20 116:8 118:5 118:8 118:11 119:3 118:18 118:21 118:22 119:3 119:11 119:12

you(31) 119:24 120:4 120:8 120:9 120:10 120:11 120:12 120:13 120:13 120:15 121:12 122:14 122:18 122:21 122:22 123:4 123:6 123:8 123:9 123:10 123:12 123:13 123:21 123:21 123:22 123:23 123:24 124:4 124:5

you'd(2) 36:2 114:17
you'll(10) 10:8 23:14 28:7 33:10 38:2 44:3 65:1 74:19 103:11 118:23

you're(14) 9:5 16:17 17:1 18:13 18:14 18:15 20:9 20:9 22:9 26:5 26:7 30:14 114:2

you've(8) 17:18 20:19 29:7 30:13 48:2 65:4 108:12 123:23

young(2) 2:39 5:8
your(183) 9:15 9:15 9:23 10:3 10:7 10:11 10:21 11:1 11:4 12:10 12:22 15:2 15:5 16:3 16:10 17:11 17:18 18:3 19:9 20:1 24:21 28:18 31:12 33:10 34:20 34:24 35:8 36:3 36:20 37:18 38:1 38:4 38:20 38:24 39:6 40:8 40:9 40:12 40:18 40:19 40:23 41:7 41:14 41:16 41:21 41:23 42:9 43:8 43:12 44:3 44:4 44:10 44:17 44:18 44:21 48:25 49:4 49:5 49:18 49:23 50:8 50:22 51:9 51:21 52:4 53:3 53:7 53:16 53:20 53:23 54:3 57:6 59:5 60:2 60:8 60:15 60:25 61:24 62:3 62:5 62:23 62:17 63:9 63:25 64:4 65:15 65:18 66:1 66:3 66:6 66:20 67:1 68:24 71:8 73:5 74:17 76:3 78:5 80:14 80:17 81:2 81:15 81:18 81:21 82:10 83:1 83:4 83:25 84:1 84:16 84:19 84:24 85:19 87:2 88:10 88:23 89:2 90:19 91:19 92:13 93:6 93:9 93:9 95:15 97:22 98:20 99:13 99:23 100:1 100:14 100:15 102:11 102:24 103:10 103:12 104:20 106:11 105:15 105:18 106:5 107:17 107:19 107:24 108:4 108:5 108:12 108:19 108:25 109:12 116:17 117:6 117:15 118:1 119:10 119:12 119:23 120:2 120:5 120:19 121:1 123:4 124:2 124:5

yourself(1) 93:11
you're(1) 83:22
you've(1) 34:8
zealously(3) 23:9 111:25 114:4
zero(6) 36:1 46:2 50:6 51:2 51:4 51:12
ziehl(1) 2:27
zloto(1) 8:17