# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
:
*In re*                                                    :     Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                         :     Case No. 09-10138 (KG)
:
                   Debtors.  :     Jointly Administered
:
:     **Hearing date: December 16, 2014 at 10:00 a.m. (ET)**
:     **Objections due:  December 9, 2014 at 4:00 p.m. (ET)**
:
-----------------------------------------------------------X

### DEBTORS' MOTION FOR ENTRY OF AN ORDER GRANTING RELIEF FROM STAY TO EFFECTUATE A SETOFF AND APPROVING STIPULATION BETWEEN NORTEL NETWORKS INC. AND PENNSYLVANIA DEPARTMENT OF REVENUE

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 362, 363(b), 502, and 553 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing NNI's entry into and approving a stipulation attached hereto as **Exhibit B** (the "Stipulation") with the Pennsylvania Department of Revenue ("Claimant", and together with NNI, the "Parties"), (ii) granting limited relief from the automatic stay to effectuate a setoff, and (iii) granting the Debtors such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware (the "District Court") dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 362, 363(b), 502 and 553 of the Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5. On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the U.S. Debtors, "Nortel"), and certain of their

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6. Since the Petition Date, Nortel has sold its business units and other assets to various purchasers. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

7. By this Motion, the Debtors seek an order, pursuant to sections 105(a), 362, 363(b), 502 and 553 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing NNI's entry into and approving the Stipulation, (ii) granting limited relief from the automatic stay to effectuate a setoff, and (iii) granting the Debtors such other and further relief as the Court deems just and proper.

---

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

3

**Facts Relevant to this Motion**

A. **The Prepetition Claims**

8. Claimant has filed the following claims against NNI for amounts allegedly owing in respect of prepetition sales, use and foreign franchise taxes, interest and penalties:

    a. On or about March 26, 2009, Claimant filed proof of claim number 827 in the aggregate amount of $383,677.37, which was subsequently expunged and disallowed as an amended or superseded claim pursuant to the Order Granting Debtors' First Omnibus Objection (Non-Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (Amended Claims) entered on January 1, 2010 [D.I. 2324];

    b. On or about August 10, 2009, Claimant filed amended proof of claim number 1676 in the aggregate amount of $152,373.78 ("Claim No. 1676"), which was subsequently withdrawn by Claimant on January 25, 2011 in the Notice of Withdrawal of Commonwealth of Pennsylvania, Department of Revenue's Proofs of Claim Nos. 1676, 7453, 7518 [D.I. 4751] (the "First Withdrawal Notice");

    c. On or about August 4, 2009, Claimant filed amended proof of claim number 1696 in the aggregate amount of $152,373.78, which was subsequently expunged and disallowed as redundant of Claim No. 1676 pursuant to the Order Granting Debtors' Fifteenth Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. §502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No Liability Claims, Reduce and Allow Claims, Redundant Claims, Satisfied Claim, Wrong Debtor Claims and No Basis 503(b)(9) Claims) entered on November 18, 2010 [D.I. 4256];

    d. On or about October 7, 2010, Claimant filed amended proof of claim number 7453 in the aggregate amount of $6,079.49, which was subsequently withdrawn by Claimant on January 25, 2011 in the First Withdrawal Notice;

    e. On or about December 17, 2010, Claimant filed amended proof of claim number 7518 in the aggregate amount of $935,648.49, which was subsequently withdrawn by Claimant on January 25, 2011 in the First Withdrawal Notice;

    f. On or about December 23, 2010, Claimant filed amended proof of claim number 7535 in the aggregate amount of $921,198.49, which was subsequently withdrawn by Claimant on February 8, 2011 in the Notice of Withdrawal of Commonwealth of Pennsylvania, Department of Revenue's Proofs of Claim Nos. 7535 and 7559 [D.I. 4904] (the "Second Withdrawal Notice");

    g. On or about January 10, 2011, Claimant filed amended proof of claim number 7559 in the aggregate amount of $935,648.49, which was subsequently

           withdrawn by Claimant on February 8, 2011 in the Second Withdrawal Notice; and

    h.    On or about January 10, 2011, Claimant filed amended proof of claim number 7558 for interest and penalties in respect of sales and use taxes (relating to sales tax license number 99494952) for the periods of July 2004 and December 2000 respectively, and corporate net income taxes, interest and penalties (relating to corporate tax number 6078786) for the period of December 2005, in the aggregate amount of $921,198.49 (the "Claim No. 7558").

9.    Claimant owes credits to NNI in the amount of $113,510 (which includes $111,143 of principal and $2,367 of prepetition interest), relating solely to periods prior to the Petition Date, which can be setoff against the prepetition amounts purportedly owed to Claimant (the "Credit Amount").

B.    **The Post-Petition Claims**

10.    On or about September 28, 2011, Claimant filed amended proof of claim number 8007 against NNI, asserting post-petition claims for: (a) corporate net income taxes, interest and penalties in the amount of $29,431 for the period of December 2009; (b) corporate net income taxes, interest and penalties in the amount of $914,037 for the period of December 2010; and (c) corporate net income taxes in the amount of $892,822 for the period from January 1, 2011 to September 23, 2011 ("Claim No. 8007").

11.    Additionally, on or about January 13, 2012, Claimant filed amended proof of claim number 8165 against NNI, asserting post-petition claims for: (a) corporate net income tax, interest and penalties in the amount of $29,431 for the period of December 2009 and (b) corporate net income taxes in the amount of $892,822 for the period from January 1, 2011 to September 23, 2011 ("Claim No. 8165," and together with Claim No. 8007, the "Post-Petition Claims").

C.     **The Proposed Settlement**

12.    In order to avoid the cost and risk inherent in litigating Claim No. 7558 and the Post-Petition Claims, the Parties engaged in arm's-length negotiation to resolve the amounts asserted in the claims and, subject to the approval of this Court, have agreed on the compromise memorialized in the Stipulation.

13.    The Stipulation provides that, subject to this Court's approval:[5]

    a.    Upon the Effective Date of the Stipulation, Claim No. 7558 shall be allowed in the aggregate amount of $807,688.49 against NNI, with $799,386.02 allowed as a priority claim under section 507(a)(8) of the Bankruptcy Code and $8,301.87 as a general unsecured claim ("Amended Claim No. 7558") in full and final satisfaction of any and all claims that have been or could have been asserted in Claim No. 7558. The aggregate allowed amount of Amended Claim No. 7558 includes a reduction of Claim No. 7558 by the Credit Amount, which the Parties have agreed to setoff against the amount asserted by Claimant in Claim No. 7558. Stipulation ¶ 3(a).

    b.    Within fifteen business days of the Effective Date, NNI shall pay to Claimant $29,431 (the "Settlement Amount") in full and final satisfaction of any and all claims that have been or could have been asserted in the Post-Petition Claims with respect to the 2009 tax year. Stipulation ¶ 3(b).

    c.    Upon the Effective Date, the Parties will release and forever discharge each other and their respective current and former affiliates, subsidiaries, shareholders, directors, officers, employees, agents, attorneys, and their personal representatives, successors and assigns, from any and all liability from any claims that the Parties now have, had, may have had or hereinafter may have arising from or related to the period prior to the Petition Date (including, without limitation, Claim No. 7558) and/or the 2009 tax year (including, without limitation, those portions of the Post-Petition Claims relating to the 2009 tax year). This release will not affect Claimant's rights with respect to tax liabilities, if any, arising from or related to NNI's 2010, 2011 and 2012 corporate income tax returns or for tax periods thereafter ("Future Claims"). The Debtors reserve all rights and defenses with respect to any and all Future Claims, including, without limitation, the right to challenge and/or pursue any appeal of any Future Claims and the right to setoff any and all refunds, credits and/or

---

[5]    This discussion is intended as a summary of the terms of the Stipulation. To the extent that the summary and the terms of the Stipulation are inconsistent, the terms of the Stipulation shall control. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Stipulation.

6

    overpayments that may arise as part of any Future Claims. Stipulation ¶¶ 8, 9.

  d. On the Payment Date, the Post-Petition Claims shall be deemed withdrawn with prejudice, and Claimant shall be forever barred from (i) amending Amended Claim No. 7558 or (ii) filing or otherwise asserting any further claims arising from or related to the period prior to the Petition Date and/or the 2009 tax year against any of the Debtors in the Debtors' chapter 11 cases.  Stipulation ¶¶ 4, 7.

## Basis for Relief

14. The Debtors seek authorization for NNI to enter into the Stipulation under sections 105(a), 362, 363(b), 502 and 553 of the Bankruptcy Code and Bankruptcy Rule 9019.

A. **NNI Should be Authorized to Enter into the Stipulation with Claimant**

15. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease the property of the estate outside of the ordinary course of business after notice and a hearing.  11 U.S.C. § 363(b).  Section 363 applies when an agreement involves the disposition of the estate's assets in such a way that it ventures beyond an ordinary course transaction.  <u>Myers v. Martin (In re Martin)</u>, 91 F.3d 389, 394-95 (3d Cir. 1996).

16. The use or transfer of estate property under this provision must be supported by a sound business purpose.  <u>Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 722 F.2d 1063, 1070-71 (2d Cir. 1983); <u>In re Decora Indus., Inc.</u>, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002); <u>Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)</u>, 242 B.R. 147, 153 (D. Del. 1999); <u>In re Del. & Hudson Ry. Co.</u>, 124 B.R. 169, 175-76 (D. Del. 1991); <u>Travelers Cas. & Sur. Co. v. Future Claimants Representative</u>, Civil Action No. 07-2785 (FLW), 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008).  A court determining whether a sound business purpose justifies the

7

transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." <u>In re Montgomery Ward Holding Corp.</u>, 242 B.R. at 153-54 & n.1 (quoting <u>In re Lionel Corp.</u>, 722 F.2d at 1071).  In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided and that it is receiving fair and reasonable value in exchange.  See <u>In re Decora Indus., Inc.</u>, 2002 WL 32332749, at *2; <u>In re Del. & Hudson Ry. Co.</u>, 124 B.R. at 176.

17. Furthermore, Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019.  Citing this authority, the Third Circuit has emphasized that "'[c]ompromises are favored in bankruptcy.'" <u>In re Martin</u>, 91 F.3d at 393 (quoting 9 <u>Collier on Bankruptcy</u> ¶ 9019.03[1] (15th ed. 1993)); see also <u>In re World Health Alts., Inc.</u>, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" <u>In re Penn Cent. Transp. Co.</u>, 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968)).  And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  See, e.g., <u>In re Coram Healthcare Corp.</u>, 315 B.R. 321, 329 (Bankr. D. Del. 2004).

18. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "'the compromise is fair, reasonable, and in the interest of the estate.'" <u>In re</u>

8

Marvel Entm't Grp., Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968). The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Travelers Cas. & Sur. Co., 2008 WL 821088, at *5 (citing Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.), 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

19. The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

20. The Debtors respectfully submit that the Stipulation meets the requirements under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019. As required by section 363, the Stipulation was negotiated and entered into by the Parties in good faith as means of resolving Claim No. 7558 and outstanding issues relating to the Post-Petition Claims. Pursuant to the settlement reflected in the Stipulation, Claimant has agreed to release the Debtors from prepetition liabilities and liabilities arising from the Post-Petition Claims in the 2009 tax year in

exchange for allowance of Amended Claim No. 7558 and payment of the Settlement Amount. The compromise embodied by the Stipulation rises well above the necessary threshold of reasonableness and serves the sound business purpose of resolving Claimant's claims, securing payment of certain obligations owed by Claimant to the Debtors without further collection efforts and reducing the amount of priority claims allowed against the Debtors in these chapter 11 cases.

21. Finally, the interests of the creditors militate in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of Claimant's claims and the avoidance of further legal expenses.

22. In light of the foregoing, the Debtors respectfully seek authorization for NNI to enter into the Stipulation and approval of the Stipulation.

B. **Claimant Should Be Permitted to Setoff a Portion of its Prepetition Claim**

23. In order to establish a right to setoff under section 553 of the Bankruptcy Code, the party asserting the right must show: (1) a debt exists from the creditor to the debtor and that the debt arose prior to the commencement of the bankruptcy case; (2) the creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case; and (3) the debt must be owed by and to the same parties. Pardo v. Nylcare Health Plans (In re APF Co.), 274 B.R. 408, 421 (Bankr. D. Del. 2001).

24. As set forth above, the Debtors have determined that Claimant holds a prepetition claim against and owes a prepetition debt to NNI. Further, the Parties have agreed as to the correct amount of the setoff. Accordingly, the setoff satisfies the requirements of section 553 of the Bankruptcy Code.

25. Notwithstanding that a right of setoff exists pursuant to section 553 of the Bankruptcy Code, the Court must grant relief from the automatic stay in order for the Parties to

exercise their right of setoff, as the setoff is stayed pursuant to section 362(a)(7) of the Bankruptcy Code. The Debtors submit that cause for limited relief from the automatic stay exists to permit Claimant and NNI to effectuate the setoff, as relief from the stay will allow the Debtors to reduce the amount of prepetition claims asserted against their estates at a minimum of expense and with as little delay as possible. Accordingly, the Debtors believe that the limited relief from the automatic stay will maximize value for the benefit of the Debtors' estates and their stakeholders.

## Notice

26.     Notice of the Motion has been given via first class mail to (i) Claimant; (ii) counsel to the Claimant; (iii) the U.S. Trustee; (iv) counsel to the Committee; (v) counsel to the Bondholder Group; and (vi) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

27.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: November 25, 2014  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)  
Lisa M. Schweitzer (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone:  (212) 225-2000  
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

   */s/ Tamara K. Minott*  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
Tamara K. Minott (No. 5643)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone:  (302) 658-9200  
Facsimile:  (302) 658-3989

*Counsel for the Debtors  
and Debtors in Possession*