**Exhibit A**

**SECOND DISCOVERY PROTOCOL**

This Second Discovery Protocol supplements the First Discovery Protocol ordered by this Court on November 10, 2014.[1]

All third-party discovery of Debtors in connection with litigations involving Former Nortel Patents[2] will proceed as follows, absent either (i) agreement among Debtors, any party seeking such discovery (each a "Requesting Party"), and any party objecting to such discovery, or (ii) further Order of this Court:

Meet-and-Confer Requirement/Discovery Mediator

1.      Absent agreement, Debtors shall not be required to respond to any subpoena or other form of discovery request unless and until the Requesting Party has (i) met and conferred with counsel for Debtors in a good-faith effort to reach agreement on the scope and timing of Debtors' discovery obligations, and (ii) if no agreement is reached, sought and obtained leave of this Court to serve such subpoena or other form of discovery on Debtors.  Notwithstanding the foregoing, nothing in this Second Discovery Protocol shall restrict or modify any discovery agreements that Debtors have reached in connection with any pending litigation involving Former Nortel Patents, as discussed more fully in Paragraph 11 below, or shall require the parties with whom Debtors have already reached any discovery agreement to seek and obtain further

---

[1] To the extent there is any conflict or ambiguity between the First and Second Discovery Protocols, the provisions of the Second Discovery Protocol shall govern.

[2] "Former Nortel Patents" means the patents sold to Rockstar Bidco, LP through the Asset Sale Agreement dated June 30, 2011 (the "Nortel-Rockstar ASA"), regardless of the current owner of such patents.

leave of Court to obtain discovery pursuant to the First and Second Discovery Protocols or any further order or protocol entered by the Court.

      2.      Karen Keller of Shaw Keller LLP is hereby appointed to serve as Discovery Mediator for this case. Any interested parties shall consult with Ms. Keller regarding a Retainer Agreement that will specify, *inter alia*, the rate Ms. Keller will charge for her services and a mechanism for apportioning her fees among the parties involved in any given dispute. A signed Retainer Agreement will be submitted to the Court within 30 days of the date of this Order.

Patent Related Documentation

      3.      Debtors shall not be required to produce any documents that fall within the definition of "Patent Related Documentation" in the Nortel-Rockstar ASA absent a showing of good cause why such documents cannot be obtained from the party owning the Former Nortel Patents ("Patent Owning Party") that are at issue in the litigation for which the discovery is sought (the "Underlying Litigation") or from the party(ies) asserting a Former Nortel Patent in the Underlying Litigation (including a declaratory judgment defendant).

Cleared Allocation Trial Documents

      4.      Debtors shall produce the collection of approximately 1,850 trial exhibits, the full deposition transcripts for six specified individuals,[3] and two bid evaluation documents (collectively, the "Cleared Allocation Trial Documents") that were reviewed and approved for production in accordance with this Court's previous Protective Orders and Orders governing trial materials from the Allocation Litigation among the Nortel estates (including, without limitation, Dkt. Nos. 10805, 13554, 13729).

---

[3] The specified individuals are: Angela Anderson, Christopher Cianciolo, Michele Lee, Gillian McColgan, George Riedel, and John Veschi.

- 2 -

a.      The Cleared Allocation Trial Documents shall be treated by the Receiving Party as "Outside Counsel's Eyes Only," and all such documents shall further be given the highest level of protection under any Protective Order entered by the court in the Underlying Litigation until such time, if any, as those documents become part of the public trial record.

b.      Debtors shall not be required to provide any further notice to any third-party of a proposed production of the Cleared Allocation Trial Documents pursuant to this Order, and Debtors shall have no liability with respect to any claim allegedly arising out of or resulting from such production, including but not limited to any claim that such disclosure breached a confidentiality agreement between Debtors and any other person or entity, including but not limited to Rockstar Bidco, LP or a related Rockstar entity (collectively, "Rockstar").

c.      In the event a Requesting Party reasonably determines after review that one or more of the produced Cleared Allocation Trial Documents contain redacted information that is likely relevant to the issues in the Underlying Litigation, the Requesting Party may request that Debtors produce specified Cleared Allocation Trial Documents in unredacted form in accordance with the procedures set forth in Paragraphs 7(f) and 7(g) below.

5.      With respect to any of the approximately 390 trial exhibits that a Patent Owning Party contends are privileged, the Patent Owning Party shall provide a privilege log to Debtors within 14 days of the date this Second Discovery Protocol is adopted by the Court or the date it receives unredacted copies of the trial exhibits as referenced in Paragraph 5(a) below, whichever is later, and Debtors shall produce that privilege log to any Requesting Party.  The Patent Owning Party shall also file a sealing motion within 30 days of the date this Second Discovery Protocol is adopted by the Court or of the date it receives unredacted copies of the trial exhibits as referenced in Paragraph 5(a) below, whichever is later, with respect to any documents

- 3 -

identified on the privilege log. Any of the approximately 390 trial exhibits not identified on a Patent Owning Party's privilege log will be produced pursuant to Paragraphs 4(a) and 4(b).

       a.      To assist the Patent Owning Party in creating the privilege log and filing the sealing motion, the Patent Owning Party's outside counsel shall be given an opportunity to inspect unredacted versions of those trial exhibits so that it may assess whether any redactions include potentially privileged information. The Patent Owning Party's outside counsel shall also be given an opportunity to inspect unredacted versions of the six deposition transcripts referenced in Paragraph 4 above in order to assess whether any redactions include potentially privileged information. The Patent Owning Party's outside counsel shall treat any unredacted information observed during such inspections as "Outside Counsel's Eyes Only" and shall not use such information for any purpose other than the aforementioned sealing motion.

       b.      Debtors shall have no liability with respect to any claim allegedly arising out of or resulting from such disclosure to the Patent Owning Party's outside counsel, including but not limited to any claim that such disclosure breached a confidentiality agreement between Debtors and any other person or entity.

Supplemental Document Discovery

      6.      In the event a Requesting Party reasonably believes that the above-referenced Patent Related Documentation and Cleared Allocation Trial Documents are insufficient to meet its legitimate discovery needs, any further document discovery from Debtors, whether by agreement or Court order, shall be limited to one or more of the following document repositories: (i) the collection of approximately 3 million electronic documents produced by the Nortel estates for purposes of the Allocation Litigation (the "Allocation Litigation Database"); (ii) the collection of approximately 600,000 electronic documents collected by Debtors for purposes of the Allocation Litigation but not produced due to non-responsiveness and/or privilege (the

- 4 -

"Unproduced Allocation Litigation Documents"); (iii) the LiveLink document management system maintained by Debtors ("LiveLink Database"); (iv) the collection of paper documents and other physical items maintained for Debtors by Iron Mountain ("Iron Mountain Physical Items"); (v) the custodial laptop data collected by Debtors for the Allocation Litigation (the "Allocation Laptop Data");[4] (vi) the set of deposition transcripts created in the Allocation Litigation; and (vii) any document repository identified by Debtors subsequent to the date of this Second Discovery Protocol that Debtors believe contains responsive, non-duplicative documents.

      a.      Absent agreement or Court order, Debtors shall not be required to search or produce documents located in the following repositories: (i) a hard drive containing copies of the electronic data rooms ("EDRs") made available to bidders in connection with various Nortel asset auctions, including a copy of the EDR relating to the sale of the Former Nortel Patents that was transferred to Rockstar; and (ii) the archives of digital media (*e.g.*, magnetic tapes), now maintained for Debtors by Iron Mountain, primarily comprising disaster recovery back-ups made in the ordinary course of Debtors' business.

      7.      The following procedures shall govern any request that Debtors search and produce documents from one or more of the Allocation Litigation Database, Unproduced Allocation Litigation Documents, LiveLink Database, Iron Mountain Physical Items, and/or the Allocation Laptop Data (collectively, the "Data Repositories"):

      a.      Debtors shall provide, at Debtors' expense, any Requesting Party with the number of documents (the "Hit Counts") returned by a search of the Data Repositories using the Common Search Terms, attached as Exhibit A.

---

[4] The custodians from whom Debtors collected data are: Chris Cianciolo, Art Fisher, John Mark Hearn, Gillian McColgan, Don Powers, George Riedel, John Veschi, and Richard Weiss.

b.      A Requesting Party may provide Debtors with a reasonable number of additional case-specific search terms to be run against one or more of the Data Repositories. Debtors shall provide the Requesting Party, at Debtors' expense, Hit Counts returned by a search of the Data Repositories using the case-specific search terms.  If the parties cannot reach agreement on a reasonable number of case-specific search terms after consultation with the Discovery Mediator, the Court shall determine a reasonable number of case-specific search terms.

c.      After reviewing the Hit Counts, the Requesting Party and Debtors shall meet and confer in good faith to modify any search terms.  The Requesting Party may propose a reasonable number of modified terms to be run against the Data Repositories, at Debtor's expense, for purposes of constructing optimal search terms that return a reasonable number of Hit Counts.  If the parties cannot reach agreement on a reasonable number of modified search terms after consultation with the Discovery Mediator, the Court shall make this determination.

d.      Once the Requesting Party and Debtors agree on a set of search terms ("the Final ESI Searches"), Debtors will have the Final ESI Searches run against the selected repositories to identify a collection of responsive documents, after which an electronic privilege filter will be run against the responsive documents in order to produce a collection of "Responsive/Non-Privileged Documents."   The electronic privilege filters applied to the collection of responsive documents shall be developed in consultation with the Requesting Party. To the extent Debtors intend to seek reimbursement of some or all of the costs associated with performing the Final ESI Searches and electronic privilege filter, Debtors will provide the Requesting Party with an estimate of the expense required to perform these activities before undertaking any of these steps.  The expense for these activities may be allocated in accordance

- 6 -

with the Cost Sharing Procedure.  If no agreement can be reached by the parties with respect to the Final ESI Searches or electronic privilege filter after consultation with the Discovery Mediator, those issues shall be resolved by the Court.

        e.      With respect to potentially privileged documents identified by the electronic privilege filter, Debtors shall prepare and serve an electronically generated privilege log.  Debtors and the Requesting Party shall meet and confer on the data to be provided by the electronically generated privilege log (*e.g.*, custodian, To, From, Cc, Bcc, Date, Subject, and privilege filter terms "hit" by the document).  Debtors shall not be obligated to undertake a document-by-document review of these presumptively privileged documents as an initial matter, but Debtors shall provide reasonable cooperation with respect to confirming the privileged status of any documents challenged by the Requesting Party.  To the extent Debtors intend to seek reimbursement of some or all of the costs associated with preparation of the privilege log and/or performing any privilege review, Debtors will provide the Requesting Party with an estimate of the expense before performing these activities.  The expense for Debtors' efforts in preparation of the privilege log, performing any privilege review, and/or addressing any challenges may be allocated in accordance with the Cost Sharing Procedure.

        f.      Prior to producing any of the Responsive/Non-Privileged Documents to the Requesting Party or Parties, Debtors shall provide notice of the proposed disclosure to all third-parties that Debtors reasonably believe may have a confidentiality and/or privilege interest in such documents.  The notice shall inform all such third-parties that Debtors intend to produce the documents to the Requesting Party 14 days from the date of the notice unless an objection is filed with this Court and served on Debtors, and Debtors shall serve a copy of any objections on the Requesting Party (or Parties).  Upon request, an electronic copy of the entire collection of

Responsive/Non-Privileged Documents shall be made available for review by such noticed third parties, on an "Outside Counsel's Eyes Only" basis, to enable such third-parties to determine whether or not they wish to object. Any such review will be entirely at the third-party's expense, but may include the use of electronic search facilities to be made available by Debtors and/or their e-discovery vendor. Any expense incurred by Debtors in responding to or otherwise addressing such objections may be allocated in accordance with the Cost Sharing Procedure.

        g.     At the conclusion of the 14-day notice period, Debtors shall produce all of the documents within the collection of Responsive/Non-Privileged Documents for which no objection was filed with the Court. Debtors' e-discovery vendor shall produce the documents in any format and in any manner reasonably specified by the Requesting Party. To the extent Debtors intend to seek reimbursement of some or all of the costs associated with the production of documents, Debtors will provide the Requesting Party with an estimate of the expense before performing these activities. The expense for Debtors' efforts may be allocated in accordance with the Cost Sharing Procedure.

        h.     To the extent documents identified by the Common Search Terms are requested by multiple Requesting Parties, Debtors shall make reasonable efforts to coordinate any request for the allocation of costs among Debtors, the Requesting Parties that request the same document set, and/or the Patent Owning Party.

        i.     Debtors and all noticed third-parties shall have clawback rights with respect to the produced documents no less than those afforded them as if they were the producing party under any protective order entered in the litigation for which the documents are sought, but at a minimum Debtors and all noticed third-parties will have clawback rights that comport with

- 8 -

the protections afforded by Federal Rule of Evidence 502(b) and Federal Rule of Civil Procedure 26(b)(5)(B).

    j.  So long as Debtors take reasonable steps to ensure compliance with the provisions of this Order, (i) Debtors shall have no liability with respect to any claim allegedly arising out of or resulting from such production of documents, including but not limited to any claim that such production breached a confidentiality agreement between Debtors and any other person or entity, including but not limited to Rockstar, and (ii) pursuant to Federal Rule of Evidence 502(d), any production of documents by Debtors pursuant to this Order shall not waive the privilege interests of Debtor or any noticed third-parties in any produced documents.

    k.  Cost Sharing Procedure.  The expenses for the referenced activities may be allocated among Debtors, the Requesting Party (or Parties), the Patent Owning Party, and/or any objecting third party in a proportion to be agreed upon by the parties.  If no agreement can be reached by the parties with respect to the expense allocation for the referenced activities after consultation with the Discovery Mediator, those issues shall be resolved by the Court.

   Discovery from Former Nortel Employees/Advisors

   8.  Depositions of Debtors, former employees of Debtors or any other Nortel entity ("Former Nortel Employees"), or Nortel's former counsel, consultants or advisors (collectively, "Former Nortel Advisors") may proceed without consultation with the Discovery Mediator or further order of the Court.

   9.  In the event any Former Nortel Employee or any Former Nortel Advisor is the subject of discovery in litigation involving Former Nortel Patents, including any request for the production of documents or deposition testimony, Debtors shall have no obligation to seek to prevent any such document production or attend any such deposition or in any other manner seek to prevent such Former Nortel Employee or Former Nortel Advisor from disclosing any

information as to which Debtors are, were, or may be entitled to assert the protections of the attorney-client privilege, the attorney work product immunity, the common interest privilege, or any other applicable privilege or immunity, or any information as to which Debtors have, had, or may have confidentiality or privacy obligations (collectively, "Potentially Protected Information").

a.     Debtors shall have no liability with respect to any claim allegedly arising out of or resulting from any disclosure of Potentially Protected Information by any Former Nortel Employee or Former Nortel Advisor, whether or not Debtors have notice of discovery being sought from such Former Nortel Employee or Former Nortel Advisor.

b.     Nothing in this Paragraph 9 shall be deemed to restrict any other person or entity from asserting any rights it claims to have to prevent or limit the disclosure of Potentially Protected Information or the production of documents or deposition testimony from a Former Nortel Employee or Former Nortel Advisor.

Apportionment of Costs Among Nortel Estates

10.     Nothing in this Second Discovery Protocol, including Debtors' agreement to bear some or all costs pursuant to Paragraphs 7.a, 7.b or 7.c hereof, nor any Order by this Court requiring Debtors to bear some or all of such costs, is intended to or shall (unless otherwise stated in such Order) restrict or otherwise prejudice Debtors' rights with respect to seeking to apportion among the various Nortel estates any costs incurred by Debtors in responding to third-party discovery.

8378207 v1

<u>Existing Discovery Agreements</u>

11.    Nothing in this Second Discovery Protocol shall restrict or modify any discovery agreements that Debtors have reached with Cisco Systems, Inc., Time Warner Cable, Google Inc., the Charter Communications plaintiffs, or the Arris Group plaintiffs.  For the avoidance of doubt, Debtors have already agreed with those parties that – in any pending litigation involving Former Nortel Patents – Debtors will run the Common Search Terms against the Data Repositories and will run a reasonable number of case-specific search terms against the Data Repositories in order to provide those parties with Hit Counts.  Debtors have agreed to cover the expense of providing those Hit Counts, but the parties have not otherwise discussed or reached agreement on the production of documents resulting from those searches or the allocation of any additional costs.

8378207 v1

**Exhibit 1**

## COMMON SEARCH TERMS

1. "Global IP" or *giplg.com

2. *Lazard*

3. Berten

4. Descoteaux

5. Rockstar

6. Iceberg or Iceburg

7. "IPCo" or "IP Co"

8. Harvest or "Litigation Light" or "Litigation Heavy"

9. "IP Steering Committee"

10. "winter catalog" or "winter catalogue" or "road show" or "roadshow"

11. (Microsoft or MSFT or MSN or Apple or EMC or Ericsson or Sony or Blackberry or RIM or "Research in Motion" or Rockstar or Bidco or Norpax or RPX or Intel or Oracle) and (bid or auction or interest or "IP" or "intellectual property" or patent or portfolio or bucket or sale or assign* or notice or infringe* or "claim chart" or litig*)

12. (Veschi or Cianciolo or McColgan or Riedel) and (bid or auction or interest or "IP" or "intellectual property" or patent or portfolio or bucket or "cross-license" or licens* or sale or assign* or notice or infringe* or "claim chart" or litig* or assert*)

13. (valu* or evalu* or analy* or residu* or target* or enforce* or assert* or royalt* or monetize*) and ("IP" or "intellectual property" or patent or portfolio or bucket or sale or assign* or notice or infringe* or "claim chart" or litig*)

14. "licens*" or cross-licens* or "cross licens*" or crosslicens*or sublicens* or "sub-licens*

15. Auction and (patent* or portfolio)

16. "Inequitable conduct" or "prior art"

17. Laches or estoppel or "time bar"

18. IETF or IEEE or ITU or ATIS or ETSI or W3C or TIA or "broadband forum" or

- 12 -

CableLabs or "Cable Labs" or PacketCable or "Packet Cable" or "standard-essential" or "standard essential" or SEP or F/RAND or FRAND or RAND or "royalty-free" or "royalty free"

19. Ranger

20. "stalking horse"

8378207 v1