**<u>Exhibit A</u>**

The Tenth Amendment to the Statement of Work



Ernst & Young LLP
Suite 500
4130 ParkLake Avenue
Raleigh, NC  27612-4462

Tel: +1 919 981 2800
Fax: +1 919 981 2997
ey.com

January 5, 2015

Mr. Timothy Ross
Chief Financial Officer and Corporate Secretary
c/o Nortel Networks, Inc.
4001 East Chapel Hill Nelson Hwy
Research Triangle Park, NC 27709

Dear Tim:

This letter is the 10th amendment (the "10th Amendment") to the Statement of Work dated March 1, 2011 for tax operations outsourcing and other variable services (as amended, the "SOW") entered into pursuant to the Master Tax Services Agreement dated March 1, 2011 between Nortel Networks Inc. ("NNI"), its U.S. debtor affiliates listed in of the SOW, Nortel Networks India International Inc., and Nortel Ventures LLC (collectively, "you", the "Client", the "Company," or "Nortel") and Ernst & Young LLP ("EY" or "we") for the provision of certain tax services (the "Services") to the Client (the "Agreement"). Pursuant to this 10th Amendment, the parties agree to the following modifications in the Scope of services.

Except as modified by this 10th Amendment, all terms and conditions of the original SOW shall continue in full force and effect and be unaffected by this 10th Amendment.

**Additional Services**

As of January 1, 2015 and contingent upon this 10th Amendment taking effect pursuant to the Bankruptcy Court Order entered on July 22, 2011 (the "Order"), modifying the Agreement, EY will provide the Client with the Services described herein.  This 10th Amendment will define additional Services not heretofore covered by the SOW, which would otherwise fall into the category of "Out-of-Scope Services" as described in the SOW.

These Services (as well as any other Services covered by the SOW) may be modified from time to time by mutual written consent of the parties in accordance with the Order.

*EY Core Services*

Since March 1, 2011 EY Core Services has been billed on a fixed fee basis; beginning January 1, 2015 all services, including Core Services, will be billed based on the hourly rate card included in this 10th Amendment on a time incurred basis with no fixed fee.  These Services will consist of a continuation for calendar year 2015 of the EY Core Services described in the SOW, as amended.

In addition, and subject to mutual agreement of the parties (which may be by e-mail), EY will provide the Company with tax services in connection with any potential chapter 11 plan of reorganization and any planning and transactions related thereto, which may include Services related to the Tangible Property Regulations as set forth in Statement 1 to this 10th Amendment and valuation services ("Valuation Services") as set forth in Statement 3 to this 10th Amendment.

*Variable and Out-of-Scope*

Except as set forth in this 10th Amendment, the Variable and Out-of-Scope Services continue as stated in the SOW, as amended, subject to the fees set forth in the Fees section of this 10th Amendment.

The Out-of-Scope Services described below are, notwithstanding use of the term "will" in the descriptions set forth below, subject to written approval by the Company (which may be by e-mail) prior to proceeding. Any such approval shall also state a range of estimated fees to be incurred. All such approved Services are hereinafter referred to as "Additional Services."

**Foreign Bank and Financial Account Reporting**

EY will assist Nortel with the Financial Crimes Enforcement Network (FinCEN) Report 114, Report of Foreign Bank and Financial Account (FBAR) filings for account ownership and signature authority related to foreign bank accounts for calendar year 2014.

**IRC Section 382 Testing Associated with Limitations on Use of Attributes**

EY will perform testing, as required by applicable regulations, to assist Nortel in complying with the reporting requirement of a "loss corporation", as that term is defined in the Treasury Regulations. The analysis will provide support for information statements for tax years 2010 through 2014 and include data for all periods implicated by the analysis for those years.

**Earnings and Profits ("E&P")**

EY will provide E&P calculations for the tax years ending December 31, 2014, for Nortel Networks Japan and Nortel Technology Excellence Centre Private Limited and December 31, 2015, for Company and for Nortel Networks Japan and Nortel Technology Excellence Centre Private Limited. This will include cumulative E&P at those dates based on support made available or otherwise provided by Nortel. The report will be based on the Company's transaction history, information contained in the 2014 and 2015 pro-forma tax returns and adjustments made or proposed by the IRS to historic returns.

EY will provide a report detailing E&P calculations for Nortel Networks Inc., Nortel Altsystems Inc., Xros, Inc., Sonoma Systems, Coretek, Inc., NN Applications Management Solutions Inc., Architel Systems (U.S.) Corporation, Nortel Networks Japan and Nortel Technology Excellence Centre Private Limited. Additionally, the report will include general descriptions of the law, methodologies and significant assumptions incorporated into the E&P analysis. The list of significant assumptions will constitute an integral part of the final report and will need to be read in conjunction with a review of the E&P calculations in order to fully understand the potential adjustment to E&P that would occur if one or more of the assumptions were changed. Prior to issuing the final report these assumptions will be reviewed and agreed with Company representatives.

**Financial Reporting Assistance and Accounting Support ("FRAAS Services")**

As set forth in more detail in Statement 2 to this 10th Amendment, EY will; (1) provide a general interpretation of accounting standards, including general provisions and high-level application to an illustrative fact pattern; (2) identify relevant existing authoritative guidance or literature; (3) assist, at the request of the Client's management ("management"), in data compilation for the sample journal entries; and (4) co-develop technical accounting white papers in relation to income recognition and entity reorganizations.

**Payroll Services**

As set forth in more detail in Statement 4 of this 10th Amendment, EY will provide payroll processing compliance and advisory assistance as requested by Client related to Client's 2015 annual employment tax return process and the 2015 payroll and employment tax processing ("Payroll Services"). EY will

rely on information provided by the Company and the Company's outside payroll and payroll tax processor (currently ADP) to perform the Payroll Services.

**FEES**

The General Terms of the Agreement address our fees and expenses generally.

Client shall pay EY's fees for the Services described in this 10th Amendment and reimburse reasonable expenses incurred in connection with the Services described in this 10th Amendment, subject to and in accordance with Bankruptcy Court approval. These fees will be billed on a monthly basis using the rates set forth below:

| Professional | Rate per Hour |
|---|---|
| Partner / Principal/ Executive Director – National | $725 |
| Partner / Principal/ Executive Director – Other | $660 |
| Senior Manager | $570 |
| Manager | $470 |
| Senior | $340 |
| Staff | $210 |

You shall also pay any value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the above Services, including any such taxes and related administrative costs that result from billing arrangements specifically requested by you.

This letter does not modify any portion of the SOW or Agreement not specifically addressed herein, and all other provisions of the SOW and Agreement are applicable hereto.

We appreciate the opportunity to be of continued service to you. If you have any questions regarding the matters discussed in this letter, please contact James E. Scott at (919) 981-2886.

Please indicate your acceptance of the above arrangements by signing and returning the enclosed copy of this letter.

Very truly yours,

*Ernst & Young LLP*

**Nortel Networks Inc. and its U.S. debtor affiliates listed in Appendix A of the SOW**
**Nortel Networks India International Inc.**
**Nortel Ventures LLC**

By: _____
Mr. Timothy Ross
CFO and Corporate Secretary

**STATEMENT 1:**
**Tangible Property Regulations**

Nortel may be required to file one or more Forms 3115 ("Application for Change in Accounting Method") and/or election statements with its federal tax return beginning with the 2014 tax year in order to implement the accounting method changes and elections required and/or provided by the final set of regulations commonly referred to as the "tangible property regulations." EY will assist Nortel with evaluating the impact the regulations have on current tax accounting methods including identifying what accounting methods can or must be changed and which elections may be available for Nortel.

If one or more Forms 3115 and/or elections are to be filed with Nortel's 2014 tax return, EY will prepare the Form(s) 3115 based on information provided by Client and file the duplicate form(s) with the IRS according to the instructions provided in the relevant revenue procedure and/or prepare such election statements based on information provided by Client.

Any services to be provided under this 10th Amendment to assist Nortel with evaluating whether a Form 3115 or TPR election statement is needed or available and/or the preparation and processing of these forms and elections are in addition to the Core Services for the calendar year 2015.

## STATEMENT 2:
### Financial Reporting Assistance and Accounting Support
### ("FRAAS Services")

As part of the FRAAS Services, we may engage in discussions with your outside consultants, as determined by you. We may also read documentation, including contracts and memoranda, as specified by you. Further, we may identify factors or considerations that are relevant to your analysis of identified accounting and reporting matters.

We may assist you in interpreting the relevant accounting and reporting literature based on your general circumstances, and provide our views on what factors, including your characteristics and structure, are likely to influence the choice of your accounting policy. We will not conclude on the appropriate accounting treatment based on specific facts or recommend which accounting policy/treatment you should select/adopt. Any observations we provide are intended to assist you as you reach, document and implement your own conclusions and will not constitute our concurrence with or support of your proposed accounting or reporting.

We will provide you with the following written Reports[1]:

> Examples of the application of accounting standards, financial statement presentations or disclosure practices in public filings or other materials
> Co-developed examples of calculations and journal entries specific to your transactions based on accounting treatments you selected
> Co-developed technical accounting white papers in connection with income recognition under your particular fact patterns and entries related to entity reorganizations.

We may, at your request, assist you in documenting the conclusions you have reached or positions you have taken on accounting and reporting matters, including the accounting policies you select. You will direct us specifically in writing to provide such assistance.

You will be responsible for implementing and further customizing these Reports, and for your use thereof and their effectiveness.  We will have no obligation with respect thereto.

You alone are responsible for any decisions to implement actions identified in the FRAAS Services, including as necessary to apply generally accepted accounting principles ("GAAP") appropriately and for compliance with applicable regulatory requirements, including the determination of your accounting policies. You are solely responsible for the preparation of your financial statements, including making all of the judgments inherent in preparing them.

EY will not render an assurance report or opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation, as those terms are identified by the American Institute of Certified Public Accountants ("AICPA") or by the Public Company Accounting Oversight Board. Accordingly, we will not express any form of assurance on accounting matters, financial statements, any financial or other information or internal controls as part of the Services.

We will not provide a professional opinion on the application of accounting principles pursuant to the AICPA's Standards for Reports on the Application of Accounting Principles (as amended and

---

[1] "Reports" is defined in the General Terms and Conditions as including all information, advice, recommendations or other content of any reports, presentations or other communications we provide to you.

interpreted). None of the Services or any Reports will constitute any legal opinion or legal advice. We will not conduct a review to detect fraud or illegal acts.

Any observations or comments with respect to your internal control matters will provide no assurance with respect to their effectiveness or their compliance with applicable laws and regulations. You alone are responsible for establishing and maintaining adequate internal control over financial reporting and the Services do not replace your responsibility for establishing the effectiveness of internal controls. In addition, you may not rely on us to draw to your attention matters that may be relevant as to whether or not your system of internal control is effective.

**STATEMENT 3:**
**Valuation Services**

The Valuation Services will consist of the following:

*Standard, Premise and Definition of Value*

The standard of value for purposes of the Valuation Services is fair market value. For tax purposes, the standard of value to be used is fair market value. According to IRS Revenue Ruling 59-60, fair market value is defined as:

> *... the price at which property would change hands between a willing buyer and a willing seller, neither being under compulsion to buy or sell and both having reasonable knowledge of all relevant facts as of the applicable valuation date.*

*Objective*

EY will value certain assets, or net assets, ("Applicable Assets") of the Nortel Debtors as requested by management.

*Scope*

EY will perform the Valuation Services in accordance with applicable standards established by the American Institute of Certified Public Accountants ("AICPA"), and the relevant U.S. tax rules and regulations. The Valuation Services may also be subject to the requirements of the Principles of Appraisal Practice and Code of Ethics and the Business Valuation Standards of the American Society of Appraisers; the Code of Professional Ethics of the Appraisal Institute; the Code of Ethics and Standards of Professional Conduct of the DFA Institute; and the Uniform Standards of Professional Appraisal Practice ("USPAP") as set forth by the Appraisal Standards Board of the Appraisal Foundation, with which we will comply as applicable.

Based on our understanding of the overall objective of the Valuation Services and our experience with similar valuation services, the scope of the Valuation Services will include:

- Discussions with management regarding the terms/characteristics of the Applicable Assets;
- Estimation of the fair market value of the Applicable Assets using an approach appropriate for the analysis;
- Considerations related to the credit risk of the counterparties and other market related inputs as necessary, and
- Preparation of a narrative report with summary schedules outlining our value calculations, the methodologies employed, and the key assumptions utilized in our analysis.

We will deliver to you electronic or hard copies of a written valuation Report (the "Report") discussing our methodologies and recommendations and including supporting exhibits. The Report will be based on methods and techniques that we consider appropriate under the circumstances.

Our Reports are not fairness opinions, investment, or transaction advice. You will not rely on any of them as such. EY assumes no responsibility to any buyer or seller to negotiate a purchase or sale at the value set forth in the written Report.

The Report will include a Statement of Limiting Conditions ("SLC"), a draft of which is attached hereto as Attachment 1. If we determine that modifications or additions to the SLC will be required, we will notify you.

*Limitation on scope*

We will not, in connection with the performance of the Valuation Services or otherwise, (i) act as a broker for the sale of any securities, (ii) solicit any potential buyer or seller (including you) to engage in any transaction, or (iii) act as a negotiator of a transaction.

These Valuation Services do not include any property appraisal in accordance with the Uniform Standards of Professional Appraisal Practice.

*Your specific obligations*

You will not, and you will not permit others to, quote or refer to the Reports, any portion, summary or abstract thereof, or to EY or any other EY Firm, in any document filed or distributed in connection with (i) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. You will not contend that any provisions of Securities Laws could invalidate any provision of this Agreement.

*Specific additional terms and conditions relating to the Valuation Services*

The Valuation Services are advisory in nature. EY will not render an assurance report or assurance opinion under the Agreement, nor will the Valuation Services constitute an audit, review or examination of any entity's financial statements or prospective financial statements in accordance with generally accepted auditing standards or other applicable professional standards. None of the Valuation Services or any Reports will constitute any legal opinion or advice. We will not conduct a review to detect fraud or illegal acts, nor will we render any opinion as to the fairness or advisability of the proposed transaction or any other transaction.

Our Reports may contain advice or communications that may be privileged under Internal Revenue Code Section 7525. If such information is provided to persons other than your management, directors, or your legal counsel involved in its preparation or responsible for determining whether to implement it, you may waive such privilege.

Notwithstanding anything to the contrary in the Agreement or this SOW, we do not assume any responsibility for any third-party products, programs or services, their performance or compliance with your specifications or otherwise.

Where our written consent under the Agreement is required for you to disclose to a third party any of our Reports (other than Tax Advice), we will also require that third party to execute a non-reliance and release letter acceptable to us in form and substance.

**Attachment 1:**
**Statement of Limiting Conditions**

1.     Nothing has come to our attention to cause us to believe that the facts and data set forth in this Report are not correct.

2.     Provision of valuation recommendations and considerations of the issues described herein are areas of regular valuation practice for which we believe that we have, and hold ourselves out to the public as having, substantial knowledge and experience. The services provided are limited to such knowledge and experience and do not represent audit, advisory or tax-related services that may otherwise be provided by Ernst & Young LLP. Notwithstanding this limitation, the advice contained herein was not intended or written by EY to be used, and cannot be used, by the recipient or any other taxpayer for the purposes of avoiding penalties that may be imposed under the Internal Revenue Code or applicable state or local tax laws.

3.     No investigation of the title to the subject company and subject assets has been made, and the owner's claim to the subject company and subject assets is assumed to be valid. To the extent that Ernst & Young LLP's services include any analysis of assets, properties or business interests, Ernst & Young LLP assumes no responsibility for matters of legal description or title, and Ernst & Young LLP shall be entitled to make the following assumptions: (i) title is good and marketable, (ii) there exist no liens or encumbrances, (iii) there is full compliance with all applicable Federal, state, local and national regulations and laws (including, without limitation, usage, environmental, zoning and similar laws and/or regulations), and (iv) all required licenses, certificates of occupancy, consents, or legislative or administrative authority from any Federal, state, local, or national government, private entity or organization have been or can be obtained or renewed for any use on which Ernst & Young LLP services are to be based.

4.     This Report has been prepared solely for the purpose stated, and may not be used for any other purpose. Neither this Report nor any portions hereof may be copied or disseminated through advertising, public relations, news, sales, Securities and Exchange Commission disclosure documents or any other public (or private) media without the express prior written approval of Ernst & Young LLP.

       Notwithstanding anything contained herein to the contrary, the Company and its officers, directors, employees, representatives, agents and advisers may freely disclose to any and all persons (without limitation) any tax advice, including the tax treatment and tax structure of any transaction, provided to the Company by Ernst & Young LLP, together with all facts that may be relevant to understanding the proposed tax treatment of any transaction and any materials provided by Ernst & Young LLP related to such tax treatment and tax structure. In any event, because all such tax advice is provided solely for the benefit of the Company, the Company shall inform those to whom it discloses such information that they may not rely upon such tax advice for any purpose without the prior written consent of Ernst & Young LLP.

5.     The recommendations of fair market value contained herein are not intended to represent the values of the subject assets at any time other than the effective date that is specifically stated in this Report. Changes in market conditions could result in recommendations of value substantially different than those presented at the stated effective date. We assume no responsibility for changes in market conditions or for the inability of the owner to locate a purchaser of the subject assets at the values stated herein.

6.     No responsibility is assumed for information furnished by others, including management, and such information is believed to be reliable.

7.   In the course of our analysis, we were provided with written information, oral information, and/or data in electronic form, related to the structure, operation, and financial performance of the subject company and subject assets. We have relied upon this information in our analyses and in the preparation of this Report and have not independently verified its accuracy or completeness.

8.   In the event that historical financial data derived from audited and/or unaudited financial statements is used in our valuation analysis, it is understood that they are the responsibility of management. Such financial statements may include disclosures required by generally accepted accounting principles. We have not independently verified the accuracy or completeness of this data provided and do not express an opinion or offer any form of assurance regarding its accuracy or completeness.

9.   In the event that prospective estimates of cash flow data are utilized in the valuation analysis, it is understood that they are solely for use in the valuation analysis and are not intended for use as forecasts or projections of future operations. We will not perform an examination or compilation, nor will we perform an agreed-upon procedures engagement with regard to the accompanying cash flow data in accordance with standards prescribed by the American Institute of Certified Public Accountants, and, accordingly, do not express an opinion or offer any form of assurance on the accompanying cash flow data or their underlying assumptions. Furthermore, there will usually be differences between estimated and actual results because events and circumstances frequently do not occur as expected, and those differences may be material.

10.  We assume no responsibility for any financial and tax reporting judgments, which are appropriately those of management. It is our understanding that management accepts responsibility for any financial statement and tax reporting issues with respect to the assets covered by our analysis, and for the ultimate use of our Report.

11.  Ernst & Young LLP is not required to furnish additional work or services, or to give testimony, or be in attendance in court with reference to the assets, properties, or business interest in question or to update any Report, recommendation, analysis, conclusion or other document relating to its services for any events or circumstances unless arrangements acceptable to Ernst & Young LLP have been separately agreed with the Company.

12.  This Report does not comprise a Comprehensive Written Business Valuation Report as described in BVS-VIII, by the Business Valuation Committee of the American Society of Appraisers ("ASA") and approved by the ASA Board of Governors. Sections consisting of descriptions concerning the history and nature of the business, industry and economic outlook and historical financial analysis may have been omitted from this Report. Where applicable, the data underlying these sections will be retained in our working papers.

4838-7469-2383.2

**STATEMENT 4:**
**Payroll Services**

EY will provide the following Payroll Services related to the 2015 annual employment tax return process and the 2015 payroll and employment tax processing in the following three phases:

*Phase I*

- EY will co-develop and prepare with Client an employment tax calendar to determine all required employment tax returns and filing deadlines;
- Prepare and assist Client in filing required monthly, quarterly, and annual employment tax returns (federal, state and local) for each applicable timeframe related to calendar year 2015;
- Assist in review of and sign-off by Client representative:  i) any payroll production files which will include the analysis of wages and gross-to-net tax calculation(s) by employee; and  ii) payroll production jurisdiction invoice summary by taxing authority;
- Assist Client in the preparation of Forms W-2 file for 2015 for final review and sign-off by Client representative;
- Prepare Forms W-2 file and Form W-3 file for submission to the Social Security Administration ("SSA") to be reviewed and approved by Client representative;
- Assist Client with preparation of Client's state income tax withholding annual reconciliation(s) for each state withholding tax jurisdiction (approximately 41) which may or may not include Forms W-2 as dictated by each taxing authority;
- Assist Client in the preparation of the Quarterly Forms 941 employment tax returns for each quarter of 2015 (four per entity in total);
- Assist Client in the preparation of the Quarterly Forms 940 employment tax returns for each quarter of 2015 (four per entity in total);
- Assist Client with the preparation of Monthly State Income Tax Withholding employment tax returns for each month of, as required;
- Assist Client with preparation of Quarterly State Income Tax Withholding employment tax returns for each state withholding tax jurisdiction for each quarter of 2015;
- Assist Client with the preparation of  Quarterly State Unemployment Insurance ("SUI") tax returns;
- Prepare the necessary SITW and SUI account closure forms for Client's review and signature at the point in time during calendar year 2015 when there is no future payroll and the Client chooses to end the obligation to file additional quarterly reports.

*Phase II: Compliance Management*

- Develop tracking protocols with scheduled status updates with Client to review conclusions for notice responses;
- Review initial notices and conduct research to address inquiries by the taxing authorities;
- Assist in responding to taxing authority inquiries;
- Assist in responding to employment tax notices as needed where ADP (or other third-party payroll vendor) is no longer providing these services and/ or has been nonresponsive to taxing authorities, including zero payroll returns as required; and
- Update notice tracking mechanism and provide quarterly update to Client as to status and anticipated reconciliation of issues.

***Phase III:  Record Retention and Notice Correspondence (if applicable)***
- Assist in determining whether any stale dated checks which were reissued (2nd time) have become unclaimed property and therefore escheatable to the state;
- Coordinate with the Client's bankruptcy attorney to ensure escheat procedures are in place;
- Address those taxing jurisdiction inquiries regarding the 2015 distributions and create/maintain files necessary to close out each issue;
- Serve as contact for record retention of Forms W-2 and for state tax jurisdiction questions for 2015.
- Prepare the forms for Client's review and signature necessary to close all State income tax withholding accounts once final returns are filed by NNI;
- Prepare the forms for Client's review and signature necessary to close all Local income tax withholding accounts once final returns are filed by NNI;  and
- Prepare the forms for Client's review and signature necessary to close all State Unemployment Insurance accounts once final returns are filed by NNI.

4838-7469-2383.2