**<u>EXHIBIT 4</u>**

**EXHIBIT**

**116**

| | |
|---|---|
| **From:** | Kreller, Tom <TKreller@milbank.com> |
| **Sent:** | Monday, July 14, 2014 4:49 PM |
| **To:** | 'lschweitzer@cgsh.com' |
| **Cc:** | Dunne, Dennis <DDunne@milbank.com>; Pisa, Albert A. <APisa@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com> |
| **Subject:** | Nortel |
| **Attach:** | Nortel - Draft Settlement Term Sheet (2).docx |

CONFIDENTIAL SETTLEMENT COMMUNICATION

Lisa:

In advance of tomorrow's meeting, attached for your review is an initial draft term sheet for use in framing our settlement discussions with you and John. Please contact me if you have any questions or would like to discuss.

Best regards,

Tom

---

**Thomas R. Kreller | Milbank**
**Partner**
601 South Figueroa Street, 30th Floor | Los Angeles, CA 90017
T: +1 213 892 4463 | F: +1 213 892 4763
tkreller@milbank.com | www.milbank.com

Subject to FRE 408 & Any Other Applicable Privileges
Privileged & Highly Confidential

MTH&M DRAFT
7/14/2014

## Post-Petition Interest

## Summary of Indicative Terms

The terms set out in this Summary of Indicative Terms are indicative and for discussion purposes
only and do not constitute a commitment or an offer that may be accepted. No Party (as defined
below) may rely on any oral or written statement to the contrary by any person.  This proposed
transaction has not yet been approved by either Party.  Accordingly, the terms described below are
subject to change and/or may not be approved by the Parties. Any agreement will, if made, be
reflected in separate, definitive and mutually acceptable documentation signed by the Parties.

| Background: | The US Debtors[1] and the Ad Hoc Group of Bondholders (the "Bondholders"), among others, are parties to certain litigation (the "Allocation Litigation") currently pending in the U.S and Canadian bankruptcy proceedings of Nortel Networks Corporation ("NNC") and its direct and indirect U.S. and Canadian subsidiaries (collectively, "Nortel") that commenced on January 14, 2009 (the "Petition Date"). |
| --- | --- |
| | The purpose of the Allocation Litigation is to determine how to allocate among the US Debtors, the Canadian Debtors,[2] and the EMEA Debtors[3] the proceeds obtained from the various sales of Nortel's assets (the "Sale Proceeds"). A trial in the Allocation Litigation commenced on May 12, 2014 before the US Bankruptcy Court and the Ontario Superior Court of Justice (collectively, the "Courts"), and the evidentiary portion of that trial concluded on June 24, 2014. No decision has been issued by either Court. |
| | On or about June 30, 2014, the Courts each issued an order directing briefing on two issues relating to post-petition interest and othr contractual entitlements (collectively, "PPI") on the Guaranteed Bonds (defined *infra*) (the "PPI Dispute"): (i) whether the holders of the Guaranteed Bonds are legally entitled in each jurisdiction to claim or receive PPI, and (ii) if so, what amounts of PPI are such holders entitled to so claim and receive. The PPI Dispute involves separate issues in the United States (the "US PPI |

---

[1]      The term "US Debtors" refers to the estates of Nortel Networks Inc. ("NNI"), Nortel Networks
Capital Corporation ("NNCC") and certain of NNI's subsidiaries that are subject to chapter 11 cases before the
United States Bankruptcy Court for the District of Delaware (the "US Bankruptcy Court").

[2]      The term "EMEA Debtors" refers to the estates of Nortel Networks UK Ltd., Nortel Networks
(Ireland) Ltd., Nortel Networks S.A., and certain of their affiliates.

[3]      The term "Canadian Debtors" refers to the estates of NNC, Nortel Networks Limited ("NNL"),
and certain of their subsidiaries (together with NNC and NNL, the "Canadian Estate"), and the Monitor of the
Canadian Estate.

1

Subject to FRE 408 & Any Other Applicable Privileges
Privileged & Highly Confidential

MTH&M DRAFT
7/14/2014

| | |
|---|---|
| | Dispute") and Canada (the "Canada PPI Dispute") and will thus be decided independently in each jurisdiction.<br><br>This Summary of Indicative Terms summarizes the indicative terms of the resolution of the US PPI Dispute as between the Bondholders and the US Debtors (each a "Party" and collectively, the "Parties").<br><br>The Parties agree that the entry into any settlement of the US PPI Dispute shall not be deemed an acknowledgment or acceptance of the other Party's positions with respect to the US PPI Dispute or the Canada PPI Dispute. |
| Guaranteed Bonds: | The Guaranteed Bonds are:<br><br>• the 7.875% Notes due 2026, issued by NNL and NNCC and guaranteed by NNL;<br><br>• the 10.75% Senior Notes due 2016, issued by NNL and guaranteed by NNC and NNI;<br><br>• the 10.125% Senior Notes due 2013, issued by NNL and guaranteed by NNC and NNI;<br><br>• the Floating Rate Notes due 2011, issued by NNL and guaranteed by NNC and NNI;<br><br>• the 1.75% Convertible Senior Notes due 2012, issued by NNC and guaranteed by NNL and NNI; and,<br><br>• the 2.125% Convertible Senior Notes due 2014, issued by NNC and guaranteed by NNL and NNI. |
| PPI Settlement: | In light of the positions set forth by the various parties in their initial briefing on the PPI Dispute, subject to the other terms and conditions hereof, the US Debtors and the Bondholders agree that PPI, accruing from the Petition Date through the date of payment, is allowed on claims against the US Debtors in respect of the Guaranteed Bonds at the PPI Settlement Rate (defined *infra*). |
| PPI Settlement Rate: | The PPI Settlement Rate shall be calculated as [TBD]. |
| Allocation of PPI: | All distributions (including on account of PPI) among the holders of the Guaranteed Bonds are reserved for later determination as part of the plan of reorganization of the US Debtors in their chapter 11 cases, subject to the PPI Settlement. |

2

BHG-PPI-0000020

Subject to FRE 408 & Any Other Applicable Privileges
Privileged & Highly Confidential

MTH&M DRAFT
7/14/2014

| | |
|---|---|
| Relationship of PPI Settlement to Allocation Dispute: | The PPI Settlement is not conditioned on or affected by the outcome of the Allocation Litigation. |
| Conditions to Effectiveness: | The effective date of the PPI Settlement will be subject to certain conditions precedent to be detailed in the documentation, including approval by the US Bankruptcy Court of the PPI Settlement. |
| Miscellaneous: | The documentation with respect to the PPI Settlement shall be governed by New York law and the Parties shall submit to the jurisdiction of the US Bankruptcy Court with respect to any disputes thereunder. The documentation will contain customary representations, warranties and covenants, including that each Party shall work in good faith to obtain the necessary court approvals and that no Party shall take any action with the purpose or effect of evading the terms of the PPI Settlement. |

3

Confidential

BHG-PPI-0000021

**EXHIBIT 5**

**EXHIBIT**

**117**

| | |
|---|---|
| From: | Eckenrod, Russell D. <reckenrod@cgsh.com> |
| Sent: | Monday, July 21, 2014 12:41 PM |
| To: | Leblanc, Andrew <ALeblanc@milbank.com>; Harris, Jennifer <JHarris@milbank.com>; Dunne, Dennis <DDunne@milbank.com>; Pisa, Albert A. <APisa@milbank.com>; Kreller, Tom <TKreller@milbank.com>; Matz, Tom <TMatz@milbank.com> |
| Cc: | Schweitzer, Lisa M. <lschweitzer@cgsh.com> |
| Subject: | RE: NORTEL: revised US PPI Settlement Agreement |
| Attach: | 2925539_9(Nortel US PPI Settlement Agreement (CGSH DRAFT 7-21-14)).DOCX; Blackline v MTHM 7-18.pdf |

SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
PRIVILEGED AND CONFIDENTIAL

All:

I attach a revised draft of the settlement agreement, clean and blacklined against your Friday version. This draft remains subject to further internal and client review, but is being circulated now in the interests of time.

Russell D. Eckenrod
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpujals@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2706 | f: +1 212 225 3999
www.clearygottlieb.com | reckenrod@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Sunday, July 20, 2014 7:24 PM
**To:** Schweitzer, Lisa M.; JHarris@milbank.com
**Cc:** ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Any update on the draft review? We would like to be in a position to get signatures tomorrow, if possible, but we need a final doc before that happens.

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Friday, July 18, 2014 4:30 PM
**To:** Harris, Jennifer
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom; Matz, Tom
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Thanks Jennifer. We will review and come back to you on the draft.
Can you folks send us a summary of the holdings of your group members so we can get a ball park of how much of each series is represented if we sign? Many thanks.

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

**From:** Harris, Jennifer [mailto:JHarris@milbank.com]
**Sent:** Friday, July 18, 2014 2:59 PM
**To:** Schweitzer, Lisa M.
**Cc:** ddunne@milbank.com; apisa@milbank.com; aleblanc@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** NORTEL: revised US PPI Settlement Agreement

SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
PRIVILEGED AND CONFIDENTIAL

Lisa,

Enclosed please find a revised draft of the PPI Settlement Agreement, clean and blacklined against the version sent to you yesterday. Please note the draft remains subject to review by our clients and the indenture trustees in all respects.

Best regards,
Jennifer

---

**Jennifer P. Harris | Milbank**
601 South Figueroa Street | Los Angeles, CA 90017
T: +1 213.892.4344 | F: +1 213.892 4744
jharris@milbank.com | www.milbank.com

---

**From:** Matz, Tom
**Sent:** Thursday, July 17, 2014 8:26 AM
**To:** Schweitzer, Lisa M.
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom
**Subject:** NORTEL: US PPI Settlement Agreement

SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
PRIVILEGED AND CONFIDENTIAL

Lisa,

Further to our discussions on Tuesday, attached is a draft settlement agreement regarding PPI. This draft agreement is subject to ongoing client and internal review but in the interests of time, we wanted to get it to you for your review and consideration.

We would be pleased to continue our discussions this afternoon.

Tom

---

**Thomas J. Matz | Milbank**
One Chase Manhattan Plaza | New York, NY 10005
P: +1 212.530.5885 | F: +1 212 822.5885
tmatz@milbank.com] www.milbank.com

==================================================================

BHG-PPI-0000083

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

================================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
CGSH DRAFT
7/21/2014

## AGREEMENT SETTLING THE US POST-PETITION INTEREST DISPUTE

This agreement (the "PPI Settlement Agreement") is entered into by and among Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation ("NNCC" and, together with NNI, the "Nortel Parties"), the bondholders who are signatories hereto (each a "Supporting Bondholder" and, collectively, the "Supporting Bondholders") holding Guaranteed Bonds (defined *infra*), Law Debenture Trust Company of New York, as indenture trustee ("Law Debenture"), and The Bank of New York Mellon, as indenture trustee ("BNY" and, with the Law Debenture, the "Indenture Trustees,") (with the Nortel Parties, the Supporting Bondholders, and Indenture Trustees each being a "Party" and collectively, the "Parties").

## RECITALS

WHEREAS, on January 14, 2009 (the "Filing Date"), NNI, NNCC, and certain of their United States affiliates (the "US Debtors") other than Nortel Networks (CALA) Inc. ("NN CALA")[1] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") (together with the NN CALA Case, the "US Proceedings") before the United States Bankruptcy Court for the District of Delaware (the "US Court"). On January 22, 2009, the Office of the United States Trustee for the District of Delaware appointed the official committee of unsecured creditors in respect of the US Debtors.

WHEREAS, on the Filing Date, the US Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL"), and certain of NNC's and NNL's Canadian affiliates commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and "CCAA"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor").

WHEREAS, prior to the Filing Date, the US Debtors, the EMEA Debtors,[2] the Canadian Debtors (collectively, the "Nortel Debtors"), and certain of their non-debtor affiliates around the world were part of the Nortel group of companies (the "Nortel Group"), of which NNC was the ultimate corporate parent.

---

[1]     NN CALA filed its voluntary petition for protection under chapter 11 of the Bankruptcy Code on July 14, 2009 (the "NN CALA Case") [D.I. 1098].

[2]     The EMEA Debtors are: Nortel Networks U.K. Ltd., Nortel Networks S.A. ("NNSA"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

BHG-PPI-0000085

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
CGSH DRAFT
7/21/2014

WHEREAS, pursuant to the Indenture dated as of July 5, 2006 (the "2006 Indenture"),[3] NNL issued multiple series of senior notes guaranteed by NNC and NNI, including two series of fixed rate 10.75% senior notes in the aggregate principal amounts of $450 million and $675 million due 2016 (together, the "10.75% Notes"), a series of fixed rate 10.125% senior notes in the aggregate principal amount of $550 million due 2013 (the "10.125% Notes"), and a series of floating rate senior notes in the aggregate principal amount of $1 billion due 2011 (the "Floating Rate Notes" and, together with the 10.75% Notes and the 10.125% Notes, the "2006 Indenture Notes").

WHEREAS, on September 25, 2009, The Bank of New York Mellon, under the 2006 Indenture, filed a timely proof of claim on behalf of the holders of the 2006 Indenture Notes preserving, among others, their claim for "an unliquidated amount for the continuing post-petition (a) accrual of interest (including interest upon the overdue installments of interest). . . ."[4]

WHEREAS, as provided in Section 1001 of the 2006 Indenture, "[t]he Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities of such series in accordance with their terms and this Indenture." The 2006 Supplemental Indentures establish the applicable rate of interest for each series of 2006 Indenture Notes. Moreover, Section 312 of the 2006 Indenture provides for interest payable to noteholders and that interest not punctually paid or duly provided for on any interest payment date constitutes defaulted interest.

WHEREAS, pursuant to the Indenture dated as of March 28, 2007 (the "2007 Indenture"), NNC issued 2.125% convertible senior notes due 2014 (the "2.125% Notes") in an aggregate principal amount of $575 million and 1.75% convertible senior notes due 2012 (the "1.75% Notes" and, together with the 2.125% Notes, the "2007 Indenture Notes" and, together with the 2006 Indenture Notes, the "NNI Indenture Notes") in an aggregate principal amount of $575 million. The 2007 Indenture Notes are each guaranteed by NNI and NNL.

WHEREAS, on September 25, 2009, The Bank of New York Mellon, under the 2007 Indenture, filed a timely proof of claim on behalf of the holders of the 2007 Indenture Notes for, among others, "a claim in an unliquidated amount for the continuing post-petition (a) accrual of interest (including interest upon the overdue installments of interest). . . ."[5]

WHEREAS, pursuant to Section 4.01 of the 2007 Indenture, "[t]he Issuer shall pay the principal of and interest (including Additional Interest, if any) on the Notes on the dates and in the manner provided in the Notes . . . . To the extent lawful, the Issuer shall pay interest

---

[3]     Supplemented by the First Supplemental Indenture, dated July 5, 2006, the Second Supplemental Indenture dated May 1, 2007, and the Third Supplemental Indenture dated May 28, 2008 (collectively the "2006 Supplemental Indentures").

[4]     *See* Attachment to Claim No. 3972 ¶ 8.

[5]     *See* Attachment to Claim No. 3971 ¶ 8.

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
CGSH DRAFT
7/21/2014

(including post-petition interest in any proceeding under any bankruptcy, insolvency or other similar applicable law) on (i) overdue principal, at the rate borne by Notes; and (ii) overdue installments of interest (without regard to any applicable grace period) at the same rate." Additionally, pursuant to Section 2.11 of the 2007 Indenture, "[i]f the Issuer (and the Guarantors) fail to make a payment of interest on the Notes, it (and the Guarantors) shall pay such defaulted interest plus, to the extent lawful, any interest payable on the defaulted interest." The 2007 Indenture establishes the applicable rate of interest for each series of 2007 Indenture Notes.

WHEREAS, pursuant to the Indenture dated as of February 15, 1996 (the "1996 Indenture"), NNCC issued a series of fixed rate 7.875% senior notes guaranteed by NNL in an aggregate principal amount of $150 million due 2026 (the "7.875% Notes" and, with the 2006 Indenture Notes and the 2007 Indenture Notes, the "Guaranteed Bonds").[6]

WHEREAS, on September 28, 2009, the Law Debenture Trust Company of New York filed a timely proof of claim (the "Initial 7.875 Notes Proof of Claim") on behalf of the holders of the 7.875% Notes preserving, among others, their claim for "payment in full of all post-petition interest due and payable under the [1996] Indenture."[7]  The Initial 7.875 Notes Proof of Claim was amended on January 10, 2013 through the filing of an amended proof of claim, which indicated that the amounts owed on account of the 7.875% Notes included "all amounts due on account of all post-petition interest due and payable."[8]

WHEREAS, pursuant to Section 1001 of the 1996 Indenture, "[t]he applicable Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities in accordance with their terms and this Indenture."  The 1996 Indenture established the applicable rate of interest for the 1996 Indenture Notes.

WHEREAS, the Indenture Trustees and the Supporting Bondholders each acknowledge and agree that they have not filed any proofs of claim in the US Proceedings against any US Debtor other than the Nortel Parties and do not hold any claims against any US Debtor other than the Nortel Parties.

WHEREAS, after the Filing Date, the Nortel Debtors entered into various agreements for the coordinated sale of the Nortel Group's businesses and assets.  The various Nortel estates further agreed that all sale proceeds would be held in escrow accounts corresponding to each sale transaction, pending later agreement by the parties on allocation or a litigated resolution of any allocation dispute.  This agreement among the US Debtors, the Canadian Debtors and certain of the EMEA Debtors was memorialized in the Interim Funding and Settlement Agreement, dated

---

[6]    All holders of the Guaranteed Bonds are collectively defined as "Bondholders".

[7]    *See* Attachment to Claim No. 3946 at 5.

[8]    *See* Attachment to Claim No. 8446 at ¶ 4.

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
CGSH DRAFT
7/21/2014

as of June 9, 2009 (the "IFSA").[9]  Following a joint hearing on June 29, 2009, the IFSA was approved by each of the US Court [D.I. 993] and the Canadian Court.

WHEREAS, from 2009 to 2011, the Nortel Debtors conducted a series of court-approved sale transactions that generated in excess of $7.3 billion in sale proceeds (together with accrued interest, the "Sale Proceeds").  Each Nortel Group entity that satisfied the definition of "Nortel Seller" (as defined in the IFSA) was entitled to participate in the distribution of the Sale Proceeds.

WHEREAS, after three failed mediation attempts regarding the allocation of the Sale Proceeds among the Nortel Sellers, litigation to resolve the allocation issues (the "Allocation Litigation") was ordered by the US Court by an Order dated April 3, 2013 [D.I. 9947] (as supplemented by further orders) and directed by endorsements of the Canadian Court dated March 8, 2013 and April 3, 2013.[10]

WHEREAS, after extensive fact and expert discovery, on May 12, 2014, the parties commenced joint hearings (together, the "Allocation Trial") before the US Court and the Canadian Court (collectively, the "Courts").  The evidentiary portion of the Allocation Trial concluded on June 24, 2014, and the litigation remains pending before each of the Courts.

WHEREAS, at the request of the Monitor in the Memorandum of the Monitor Regarding Bondholder Claims Issues, dated June 19, 2014 [D.I. 13880] (the "Monitor's Request"), the Courts issued an order directing briefing and argument (the "PPI Dispute") on two issues relating to post-petition interest ("PPI") on the Guaranteed Bonds:

i)      whether the holders of the Guaranteed Bonds are legally entitled in each jurisdiction to claim or receive any amounts under the relevant indentures above and beyond the outstanding principal debt and pre-petition interest (namely, above and beyond the US $[4.092] billion); and

ii)     if determined that the holders of the Guaranteed Bonds are so entitled, what additional amounts are such holders entitled to so claim and receive.

WHEREAS, on July 15, 2014, certain of the parties to the Allocation Litigation filed and exchanged opening briefs with respect to the PPI Dispute in the US Court and the Canadian Court.  The briefs advance the parties' divergent and competing positions regarding the PPI Dispute.  Depending on the resolution of the PPI Dispute, distributions to the U.S. Debtors' creditors could be materially different.

---

[9]     *See* Exhibit B to the Motion Pursuant to 11 U.S.C. § 105(a), § 363, § 503 and Fed. R. Bankr. P. 9019 for an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 874].

[10]    *See* Exhibits C and D to Notice of Filing of Items Designated for Record on Appeal dated May 1, 2013 [D.I. 10414].

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
CGSH DRAFT
7/21/2014

WHEREAS, the PPI Dispute requires the determination of separate and distinct legal issues in the United States (the "US PPI Dispute") and Canada (the "Canada PPI Dispute"), and as such can and should be resolved independently in each jurisdiction. The PPI Settlement Agreement relates solely to the US PPI Dispute.

WHEREAS, the Parties all acknowledge and agree that the entry into any settlement of the US PPI Dispute shall not be deemed an acknowledgement or acceptance of the position of any party to the US PPI Dispute, the Canada PPI Dispute or the Allocation Litigation. The Parties also acknowledge and agree that the ultimate outcome of the US PPI Dispute is uncertain, that appeals in respect of such litigation are likely, that the cost of such litigation and associated delays may be both substantial and burdensome on the Parties and that such costs will continue to increase absent a final and binding resolution of the US PPI Dispute. The approval of the PPI Settlement Agreement would end a contentious and potentially costly litigation regarding the entitlement of Bondholders to PPI in the US Proceedings; resolve an issue which could have significantly delayed the confirmation of the US Debtors' chapter 11 plan(s) and the ultimate distribution of plan proceeds to the US Debtors' creditors; and further the efficient administration of the US Debtors' estates generally. As a result of the compromises embodied in this PPI Settlement Agreement, the US Debtors have substantially reduced the potential size of the PPI claim of the Bondholders and have mitigated the risk to their unsecured creditors and other parties in interest of a costly and protracted appeals process on these issues, thereby preserving significant value for all of the US Debtors' stakeholders.

NOW THEREFORE, IN LIGHT OF THE FOREGOING RECITALS, AND FOR GOOD AND VALUABLE CONSIDERATION, THE VALUE OF WHICH IS HEREBY AGREED, THE PARTIES HEREBY FURTHER AGREE, SUBJECT TO THE SATISFACTION OF ALL CONDITIONS SET FORTH HEREIN THAT:

## 1.    INTERPRETATION

1.1.    The Recitals set forth above form an integral part of this PPI Settlement Agreement and are incorporated fully herein.

## 2.    PPI SETTLEMENT

2.1.    Subject to Section 4.3[11], in the event that NNI at any time has more than sufficient funds to pay all of its allowed administrative, priority, secured, general unsecured and prepetition claims in full, holders of NNI Indenture Notes shall be entitled to payment from NNI of PPI in the PPI Settlement Amount corresponding to the NNI Indenture Notes and shall be paid PPI from such funds available for such distributions (together with any other creditors of NNI entitled to payments of PPI) in accordance with a confirmed chapter 11 plan until the PPI Settlement Amount, taking into account PPI payments made by NNCC to holders of the 7.875% Notes in accordance with Section 2.2 hereof, is paid in full.

---

[11] NTD: what claims are you trying to preserve through this reference in this and the next paragraph?

2.2.    Subject to Section 4.3, in the event that NNCC at any time has more than sufficient funds to pay all of its allowed administrative, priority, secured, general unsecured and prepetition claims in full, holders of 7.875% Notes shall be entitled to payment from NNCC of PPI in the PPI Settlement Amount corresponding to the 7.875% Notes and shall be paid PPI from such funds available for such distributions (together with any other creditors of NNCC entitled to payments of PPI) in accordance with a confirmed chapter 11 plan until the PPI Settlement Amount, taking into account PPI payments made by NNI to holders of NNI Indenture Notes in accordance with Section 2.1 hereof, is paid in full.

2.3.    The "PPI Settlement Amount" shall be an amount equal to[$907 million].

2.4.    The Indenture Trustees have asserted in the proofs of claim filed in the US Debtors' cases specific and varying contractual entitlements with respect to the Guaranteed Bonds, including, without limitation, entitlement to make-whole payments, no-call rights, different methods of calculating any post-petition amounts or rates (those claims and issues being referred to collectively herein as "Contractual Entitlements"). Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any such Contractual Entitlements, other than the agreements with respect to the total PPI Settlement Amount contained in this Section 2 and the establishment of the amount of the allowed claims to which the Indenture Trustees and Bondholders are entitled to as against NNI and NNCC, as provided in Section 3.1 and Schedule A hereto. All such Contractual Entitlements are expressly reserved by the Supporting Bondholders and the Indenture Trustees; *provided, however*, that to the extent that any Bondholder or the Indenture Trustees are determined to be entitled to any Contractual Entitlement against any US Debtor (whether by order of the US Court or a settlement or plan approved by the US Court) (i) the sole source of funds available for distributions on behalf of such allowed Contractual Entitlement shall be funds available to make distributions to the Bondholders under Sections 2.1 and 2.2 hereof as applicable, and (ii) such allowed Contractual Entitlements shall be subject to and not added to the limitation on the total PPI Settlement Amount as defined in this Section 2.

## 3.    RESOLUTION OF US PPI DISPUTE AND GUARANTEED BOND CLAIMS

3.1.    The PPI Settlement Agreement is intended to be a full and final settlement of (i) the US PPI Dispute with respect to the Monitor's Request currently pending before the US Court and all of the related submissions and requests for relief, and (ii) the allowed claims for outstanding principal obligations and accrued prepetition interest obligations (each as set forth on Schedule A hereto), and any entitlement to PPI (calculated pursuant to Sections 2.1 and 2.2 herein) arising under the Guaranteed Bonds. For the avoidance of doubt, any additional amounts claimed by and allowed in favor of the Indenture Trustees or any Bondholders as against any of the US Debtors shall only be eligible for allowance or the right to receive distributions in accordance with Section 2.4 hereof. Nothing in this PPI Settlement Agreement is or shall be deemed to be a settlement of the Canada PPI Dispute or any part thereof or otherwise a settlement of any claim of the Indenture Trustees or any Bondholder against any of the Canadian Debtors' estates.

## 4.    RESERVATION OF RIGHTS

4.1.    Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge (in whole or in part) of (i) any right of any Party to assert or defend against any allocation position or advance or defend against any arguments as to entitlement to Sale Proceeds in the Allocation Litigation, including in connection with any appeal(s) of any court ruling made in connection with the Allocation Litigation; or (ii) any claim, right or entitlement of any Party to Sale Proceeds in the Allocation Litigation.

4.2.    Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge (in whole or in part) of the ability of unsecured creditors of the US Debtors' estates (other than the Bondholders) to assert a claim for PPI with respect to the US Debtors' estates at the contract rate (if any) applicable to such creditor's claims or any alternative theories; *provided, however,* that if there are insufficient funds available to pay PPI to all unsecured creditors of the US Debtors' estates entitled to such amounts, then, solely for purposes of determining any allocation of available PPI among such creditors, the holders of the Guaranteed Bonds shall be deemed to have a claim for PPI equal to the amount of post-petition interest that would have accrued at the applicable contract rate of PPI set forth in the applicable indentures for each of the Guaranteed Bonds.  Further, this PPI Settlement Agreement does not settle the manner in which any funds available for distribution shall be allocated among the creditors of the applicable US Debtors in the event that less than the full amount of PPI can be paid to all creditors owed such amounts and such application shall be determined by later agreement of the parties whether as part of the chapter 11 plan(s) of the US Debtors in the chapter 11 cases or by subsequent agreement among the relevant affected creditors.

4.3.    For the avoidance of any doubt, nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any rights created under this PPI Settlement Agreement, any claim of any Party to enforce such rights, or a release of any claims for facts or events occurring or actions taken after the date of this PPI Settlement Agreement, nor shall this PPI Settlement Agreement be used, referred to or contended by any Party to have any relevance or probative value in connection with any claims not released herein.

## 5.    EFFECTIVENESS

5.1.    The agreements, acknowledgments and obligations contained herein (other than the obligations contained in Section 5.3 hereof) are expressly contingent upon, and shall become effective only upon the occurrence of all of the conditions to effectiveness below in this Section 5 (the "Effective Date").

5.2.    Approval of the Nortel Parties' entry into and performance under this PPI Settlement Agreement by an order of the US Court in the US Proceedings, substantially in the form attached as Schedule B hereto (the "Approval Order"), [which binds all Bondholders and all other parties in interest in the US Debtors' cases to the terms of this PPI Settlement

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
CGSH DRAFT
7/21/2014

Agreement][12], is a condition precedent to the effectiveness of this PPI Settlement Agreement. In the event that the US Court does not enter the Approval Order by September 15, 2014, the Parties may terminate this agreement by mutual consent.

5.3.     The Nortel Parties will move promptly for, and use their commercially reasonable best efforts to obtain, approval of this PPI Settlement Agreement under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (respectively, "Rule 9019(a)," and the "Bankruptcy Rules"). The other Parties agree to use their commercially reasonable best efforts to support the Nortel Parties in obtaining US Court approval of this PPI Settlement Agreement.

## 6.     BINDING EFFECT OF PPI SETTLEMENT AGREEMENT.

6.1.     Upon effectiveness, this PPI Settlement Agreement and the Approval Order shall be binding upon the Parties to this PPI Settlement Agreement and the Bondholders and any successors or assigns of the Parties.

6.2.     Each Supporting Bondholder represents and warrants, severally and not jointly, that, (i) as of the date hereof, such Supporting Bondholder is the legal owner, beneficial owner and/or holder of investment and voting authority over, the aggregate amount of obligations outstanding under the Guaranteed Bonds as set forth on its signature pages hereto,[13] (ii) there are no claims against the Debtor Parties in respect of the Guaranteed Bonds of which it is the holder of record that are not part of its Initial Holdings unless such Supporting Bondholder does not possess the full power to vote and dispose of such claims, and (iii) the execution and delivery of this PPI Settlement Agreement and the performance of its obligations have been duly authorized by all necessary action on its part.

6.3.     A Supporting Bondholder may (i) sell, transfer, assign, pledge, grant a participation interest in, or otherwise dispose of, directly or indirectly, its right, title, or interest in respect of any of such Supporting Bondholder's interest in a Guaranteed Bond, in whole or in part, or (ii) grant any proxies, deposit any of such Supporting Bondholder's interests in a Guaranteed Bond, into a voting trust, or enter into a voting agreement with respect to any such interest (collectively, the actions described in clauses (i) and (ii), a "Transfer"), *provided* that subject to the termination provisions contained in Section 5.2 hereof, the transferee thereof agrees in writing to be bound by the terms of this PPI Settlement Agreement.

## 7.     MISCELLANEOUS

---

[12] NTD: to discuss.
[13] NTD: must list them by series of notes on the signature pages.

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
CGSH DRAFT
7/21/2014

7.1.    **Acknowledgements**. Each Party acknowledges that that this PPI Settlement Agreement is not, and shall not be deemed to be, a solicitation of a vote for the acceptance of the Plan pursuant to section 1125 of the Bankruptcy Code.

7.2.    **Confidentiality**. Unless otherwise agreed by the Parties, the substance and existence of this PPI Settlement Agreement shall be kept strictly confidential until the filing of a motion with the US Court to seek approval of this PPI Settlement Agreement.

7.3.    **Further Assurances**. The Parties will cooperate in good faith to effectuate the terms of this PPI Settlement Agreement, including working in good faith to obtain the necessary court approvals. No Party shall take any action with the purpose or effect of evading the terms of this PPI Settlement Agreement.

7.4.    **Governing Law**. This PPI Settlement Agreement shall be governed and construed in accordance with the laws of the State of New York without giving effect to the conflict of laws principles thereof.

7.5.    **Integration**. This PPI Settlement Agreement constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof. This PPI Settlement Agreement may not be amended, supplemented or modified except by a written instrument executed by each of the Parties to this PPI Settlement Agreement.

7.6.    **Jurisdiction**. The Parties agree to the exclusive jurisdiction of the US Court and, solely to the extent the US Court does not have jurisdiction, the United States District Court for the District of Delaware, in respect of any dispute arising out of or in connection with this PPI Settlement Agreement or its subject matter or formation.

7.7.    **Manner of Execution**. The Parties may execute this PPI Settlement Agreement in counterparts, each of which shall be an original, and all executed counterparts shall collectively be deemed to be one and the same instrument. Facsimile or pdf signatures shall be deemed original signatures, and the Parties may exchange signature pages via mail, courier, facsimile or email.

7.8.    **No Admissions**. This PPI Settlement Agreement shall in no event be construed as or be deemed to be evidence of an admission or concession on the part of any Party of any claim or fault or liability or damages whatsoever. Each of the Parties denies any and all wrongdoing or liability of any kind and does not concede any infirmity in the claims or defenses which it has asserted or could assert. No Party shall have, by reason of this PPI Settlement Agreement, a fiduciary relationship in respect of any other Party or any person or entity, and nothing in this PPI Settlement Agreement, expressed or implied, is intended to or shall be so construed as to impose upon any Party any obligations in respect of this PPI Settlement Agreement except as expressly set forth herein. This PPI Settlement Agreement are part of a proposed settlement of a dispute among the Parties. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this PPI

Settlement Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding involving enforcement of the terms of this PPI Settlement Agreement.

7.9.    **No Third-Party Beneficiaries.**    The US Debtors that are not a Party to this PPI Settlement Agreement shall be beneficiaries hereof. This PPI Settlement Agreement is not intended to, and shall not, create rights in any other person or entity not a Party hereto.

7.10.    **Non-Effectiveness.**    In the event this PPI Settlement Agreement does not become effective, the Parties reserve all of their rights and defenses with respect to the US PPI Dispute resolved by this PPI Settlement Agreement and this proposed settlement shall not constitute an admission by any Party regarding the validity of the claims or defenses resolved by this PPI Settlement Agreement or that they have any liability in connection with such claims or defenses.

7.11.    **Non-Severability.**    Each of the provisions of this PPI Settlement Agreement is an integrated, essential and non-severable part of this PPI Settlement Agreement.

7.12.    **Sophisticated Party.**    Each Party represents and warrants that it has participated in preparation of this PPI Settlement Agreement and has been represented by sophisticated and experienced counsel in so doing. In any construction of this PPI Settlement Agreement, the PPI Settlement Agreement shall not be construed for or against any Party, but the same shall be construed fairly according to its plain meaning.

7.13.    **Representative Capacity.**    Each person executing this PPI Settlement Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

7.14.    **Simultaneous Occurrence.**    All material acts provided hereunder that are to occur on the Effective Date are deemed to occur simultaneously.

7.15.    **Successors and Assigns.**    This PPI Settlement Agreement shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns.

*[Signature Pages to Follow]*

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
CGSH DRAFT
7/21/2014

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Settlement Agreement.

**NORTEL NETWORKS INC.**

By: _____

Name:  John Ray

Title:  Principal Officer

**NORTEL NETWORKS CAPITAL CORPORATION**

By: _____

Name:  John Ray

Title:  Principal Officer

BHG-PPI-0000095

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
CGSH DRAFT
7/21/2014

**Aggregate Face Amounts Beneficially Owned
or Managed on Account of:**

10.75% Notes: $_____
10.125% Notes: $_____
Floating Rate Notes: $_____
2.125% Notes: $_____
1.75% Notes: $_____
7.875% Notes: $_____


Name of Institution:

_____


By _____
    Name:
    Title:


For bondholders requiring a second signature
   line:


By _____
    Name:
    Title:

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
CGSH DRAFT
7/21/2014

## SCHEDULE A

**[list of prepetition claim amounts to be added]**

Confidential

BHG-PPI-0000097

## SCHEDULE B

**[form of order to be added]**

Confidential

BHG-PPI-0000098

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
CGSH DRAFT
7/21/2014

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------- X
                   :

*In re*                   :     Chapter 11
                   :

Nortel Networks Inc., *et al.*[14]    :     Case No. 09-10138 (KG)
                   :

            Debtors.    :     Jointly Administered
                   :

                   :     **Hearing Date: [TBD]**
                   :     **Objections Due: [TBD]**
------------------------------------------------- X

## ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG NORTEL NETWORKS INC., NORTEL NETWORKS CAPITAL CORPORATION, THE SUPPORTING BONDHOLDERS, LAW DEBENTURE TRUST COMPANY OF NEW YORK, AND THE BANK OF NEW YORK MELLON WITH RESPECT TO POST-PETITION INTEREST ISSUES

**[to be inserted]**

---

[14]     The debtors in these chapter 11 cases, along with the last four digits of each US Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

BHG-PPI-0000099

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
~~MTH&M~~CGSH DRAFT
7/~~18~~21/2014

## AGREEMENT SETTLING THE US POST-PETITION INTEREST DISPUTE

This agreement (the "PPI Settlement Agreement") is entered into by and among Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation ("NNCC" and, together with NNI, the "Nortel Parties"), the bondholders who are signatories hereto (each a "Supporting Bondholder" and, collectively, the "Supporting Bondholders") holding Guaranteed Bonds (defined *infra*), Law Debenture Trust Company of New York, as indenture trustee ( "Law Debenture"), and The Bank of New York Mellon, as indenture trustee ("BNY" and, with the Law Debenture, the "Indenture Trustees,") (with the Nortel Parties, the Supporting Bondholders, and Indenture Trustees each being a "Party" and collectively, the "Parties").

## RECITALS

WHEREAS, on January 14, 2009 (the "Filing Date"), NNI, NNCC, and certain of their United States affiliates (the "US Debtors") other than Nortel Networks (CALA) Inc. ("NN CALA")[1] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") (together with the NN CALA Case, the "US Proceedings") before the United States Bankruptcy Court for the District of Delaware (the "US Court"). On January 22, 2009, the Office of the United States Trustee for the District of Delaware appointed the official committee of unsecured creditors in respect of the US Debtors.

WHEREAS, on the Filing Date, the US Debtors' ultimate corporate parent ~~NNC~~Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL"), and certain of NNC's and NNL's Canadian affiliates commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and "CCAA"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor").

WHEREAS, prior to the Filing Date, the US Debtors, the EMEA Debtors,[2] the Canadian Debtors (collectively, the "Nortel Debtors"), and certain of their non-debtor affiliates around the world were part of the Nortel group of companies (the "Nortel Group"), of which NNC was the ultimate corporate parent.

---

[1]     NN CALA filed its voluntary petition for protection under chapter 11 of the Bankruptcy Code on July 14, 2009 (the "NN CALA Case") [D.I. 1098].

[2]     The EMEA Debtors are: Nortel Networks U.K. Ltd., Nortel Networks S.A. ("NNSA"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

WHEREAS, pursuant to the Indenture dated as of July 5, 2006 (the "2006 Indenture"),[3] NNL issued multiple series of senior notes guaranteed by NNC and NNI, including two series of fixed rate 10.75% senior notes in the aggregate principal amounts of $450 million and $675 million due 2016 (together, the "10.75% Notes"), a series of fixed rate 10.125% senior notes in the aggregate principal amount of $550 million due 2013 (the "10.125% Notes"), and a series of floating rate senior notes in the aggregate principal amount of $1 billion due 2011 (the "Floating Rate Notes" and, together with the 10.75% Notes and the 10.125% Notes, the "2006 Indenture Notes").

WHEREAS, on September 25, 2009, The Bank of New York Mellon, under the 2006 Indenture, filed a timely proof of claim on behalf of the holders of the 2006 Indenture Notes preserving, among others, their claim for "an unliquidated amount for the continuing post-petition (a) accrual of interest (including interest upon the overdue installments of interest). ...."[4]

WHEREAS, as provided in Section 1001 of the 2006 Indenture, "[t]he Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities of such series in accordance with their terms and this Indenture." The 2006 Supplemental Indentures establish the applicable rate of interest for each series of 2006 Indenture Notes. Moreover, Section 312 of the 2006 Indenture provides for interest payable to noteholders and that interest not punctually paid or duly provided for on the̶a̶n̶y interest payment date constitutes defaulted interest.

WHEREAS, pursuant to the Indenture dated as of March 28, 2007 (the "2007 Indenture"), NNC issued 2.125% convertible senior notes due 2014 (the "2.125% Notes") in an aggregate principal amount of $575 million and 1.75% convertible senior notes due 2012 (the "1.75% Notes" and, together with the 2.125% Notes, the "2007 Indenture Notes" and, together with the 2006 Indenture Notes, the "NNI Indenture Notes") in an aggregate principal amount of $575 million. The 2007 Indenture Notes are each guaranteed by NNI and NNL.

WHEREAS, on September 25, 2009, The Bank of New York Mellon, under the 2007 Indenture, filed a timely proof of claim on behalf of the holders of the 2007 Indenture Notes for, among others, "a claim in an unliquidated amount for the continuing post-petition (a) accrual of interest (including interest upon the overdue installments of interest). . . ."[5]

WHEREAS, pursuant to Section 4.01 of the 2007 Indenture, "[t]he Issuer shall pay the principal of and interest (including Additional Interest, if any) on the Notes on the dates and in the manner provided in the Notes . . . . To the extent lawful, the Issuer shall pay interest (including

---

[3]     Supplemented by the First Supplemental Indenture, dated July 5, 2006, the Second Supplemental Indenture dated May 1, 2007, and the Third Supplemental Indenture dated May 28, 2008 (collectively the "2006 Supplemental Indentures").

[4]     *See* T̶R̶-̶1̶0̶0̶4̶1̶,̶ Attachment to P̶r̶o̶o̶f̶ ̶o̶f̶ Claim No. 3972 ¶ 8.

[5]     *See* T̶R̶-̶1̶0̶0̶4̶2̶.̶ Attachment to P̶r̶o̶o̶f̶ ̶o̶f̶ Claim No. 3971 ¶ 8.

Confidential

post-petition interest in any proceeding under any bankruptcy, insolvency or other similar applicable law) on (i) overdue principal, at the rate borne by Notes; and (ii) overdue installments of interest (without regard to any applicable grace period) at the same rate." Additionally, pursuant to Section 2.11 of the 2007 Indenture, "[i]f the Issuer (and the Guarantors) fail to make a payment of interest on the Notes, it (and the Guarantors) shall pay such defaulted interest plus, to the extent lawful, any interest payable on the defaulted interest." The 2007 Indenture establishes the applicable rate of interest for each series of 2007 Indenture Notes.

WHEREAS, pursuant to the Indenture dated as of February 15, 1996 (the "<u>1996 Indenture</u>"), NNCC issued a series of fixed rate 7.875% senior notes guaranteed by NNL in an aggregate principal amount of $150 million due 2026 (the "<u>7.875% Notes</u>" and, with the 2006 Indenture Notes and the 2007 Indenture Notes, the "<u>Guaranteed Bonds</u>").[6]

WHEREAS, on September 28, 2009, the Law Debenture Trust Company of New York filed a timely proof of claim <u>(the "Initial 7.875 Notes Proof of Claim")</u> on behalf of the holders of the 7.875% Notes preserving, among others, their claim for "payment in full of all post-petition interest due and payable under the [1996] Indenture."[7] <u>The Initial 7.875 Notes Proof of Claim was amended on January 10, 2013 through the filing of an amended proof of claim, which indicated that the amounts owed on account of the 7.875% Notes included "all amounts due on account of all post-petition interest due and payable."</u>[8]

WHEREAS, pursuant to Section 1001 of the 1996 Indenture, "[t]he applicable Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities in accordance with their terms and this Indenture." The 1996 Indenture established the applicable rate of interest for the 1996 Indenture Notes.

<u>WHEREAS, the Indenture Trustees and the Supporting Bondholders each acknowledge and agree that they have not filed any proofs of claim in the US Proceedings against any US Debtor other than the Nortel Parties and do not hold any claims against any US Debtor other than the Nortel Parties.</u>

WHEREAS, after the Filing Date, the Nortel Debtors ~~agreed to pursue an orderly and~~<u>entered into various agreements for the</u> coordinated sale of the Nortel Group's businesses and assets. The various Nortel estates further agreed that all sale proceeds would be held in escrow accounts corresponding to each sale transaction, pending later agreement by the parties on allocation or a litigated resolution of any allocation dispute. This agreement among the US Debtors, the Canadian Debtors and certain of the EMEA Debtors was memorialized in the Interim

---

[6]     All holders of the Guaranteed Bonds are collectively defined as "<u>Bondholders</u>".

[7]     *See* ~~TR 13729 at L~~DTCNY0000282.<u>Attachment to Claim No. 3946 at 5.</u>

[8]     *See* Attachment to Claim No. 8446 at ¶ 4.

Funding and Settlement Agreement, dated as of June 9, 2009 (the "IFSA").[82]  Following a joint hearing on June 29, 2009, the IFSA was approved by each of the US Court [D.I. 993] and the Canadian Court.

WHEREAS, from 2009 to 2011, the Nortel Debtors conducted a series of court-approved sale transactions that generated approximatelyin excess of $7.57.3 billion in sale proceeds (together with accrued interest, the "Sale Proceeds"). Each Nortel Group entity that satisfied the definition of "Nortel Seller" (as defined in the IFSA) was entitled to participate in the distribution of the Sale Proceeds.

WHEREAS, after three failed mediation attempts regarding the allocation of the Sale Proceeds among the Nortel Sellers, litigation to resolve the allocation issues (the "Allocation Litigation") was ordered by the US Court by an Order dated April 3, 2013 [D.I. 9947] (as supplemented by further orders) and directed by endorsements of the Canadian Court dated March 8, 2013 and April 3, 2013.[910]

WHEREAS, after extensive fact and expert discovery, on May 12, 2014, the parties commenced a trial (joint hearings (together, the "Allocation Trial") before the US Court and the Canadian Court (collectively, the "Courts").  The evidentiary portion of the Allocation Trial concluded on June 24, 2014 2014, and the litigation remains pending before each of the Courts.

WHEREAS, at the request of the Monitor in the Memorandum of the Monitor Regarding Bondholder Claims Issues, dated June 19, 2014 [D.I. 13880] (the "Monitor's Request"), and purportedly in connection with the Allocation Trial, on June 30, 2014, the Courts issued an order directing briefing and argument (the "PPI Dispute") on two issues relating to post-petition interest ("PPI") on the Guaranteed Bonds:

i)   whether the holders of the Guaranteed Bonds are legally entitled in each jurisdiction to claim or receive any amounts under the relevant indentures above and beyond the outstanding principal debt and pre-petition interest (namely, above and beyond the US $[4.092] billion); and

ii)  if determined that the holders of the Guaranteed Bonds are so entitled, what additional amounts are such holders entitled to so claim and receive.

WHEREAS, on July 15, 2014, certain of the parties to the Allocation Litigation filed and exchanged opening briefs with respect to the PPI Dispute in the US Court and the Canadian Court. The briefs advance the parties' divergent and competing positions regarding the PPI Dispute.

---

[82]   *See* Exhibit B to the Motion Pursuant to 11 U.S.C. § 105(a), § 363, § 503 and Fed. R. Bankr. P. 9019 for an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 874].

[910]   *See* Exhibits C and D to Notice of Filing of Items Designated for Record on Appeal dated May 1, 2013 [D.I. 10414].

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
~~MTH&M~~CGSH DRAFT
7/~~18~~21/2014

Depending on the resolution of the PPI Dispute, distributions to the U.S. Debtors' creditors could be materially different.

WHEREAS, the PPI Dispute requires the determination of separate and distinct legal issues in the United States (the "US PPI Dispute") and Canada (the "Canada PPI Dispute"), and ~~must thus~~as such can and should be ~~decided~~resolved independently in each jurisdiction. The PPI Settlement Agreement relates solely to the US PPI Dispute.

WHEREAS, the Parties all acknowledge and agree that the entry into any settlement of the US PPI Dispute shall not be deemed an acknowledgement or acceptance of the position of any party to the US PPI Dispute, the Canada PPI Dispute or the Allocation Litigation. The Parties also acknowledge and agree that the ultimate outcome of the US PPI Dispute is uncertain, that appeals in respect of such litigation are likely, that the cost of such litigation ~~is~~and associated delays may be both substantial and burdensome on ~~each of~~the Parties and that such costs will continue to increase absent a final and binding resolution of the US PPI Dispute.  The approval of the PPI Settlement Agreement ~~should~~would end a contentious and potentially costly litigation regarding the entitlement of Bondholders to PPI~~, resolving~~ in the US Proceedings; resolve an issue which could have significantly delayed ~~both~~the confirmation of the US Debtors' chapter 11 plan(s) and the ultimate distribution of plan proceeds to the US Debtors' creditors~~, as well as expedite the;~~ and further the efficient administration of the US Debtors' estates generally.  As a result of the compromises embodied in this PPI Settlement Agreement, the US Debtors have substantially reduced the potential size of the PPI claim of the Bondholders and have mitigated the risk to their unsecured creditors and other parties in interest of a costly and protracted appeals process ~~that would no doubt have followed any judicial determination of the US PPI Dispute~~on these issues, thereby preserving significant value for all of the US Debtors' stakeholders.

NOW THEREFORE, IN LIGHT OF THE FOREGOING RECITALS, AND FOR GOOD AND VALUABLE CONSIDERATION, THE VALUE OF WHICH IS HEREBY AGREED, THE PARTIES HEREBY FURTHER AGREE, SUBJECT TO THE SATISFACTION OF ALL CONDITIONS SET FORTH HEREIN THAT:

## 1.    INTERPRETATION

1.1.    The Recitals set forth above form an integral part of this PPI Settlement Agreement and are incorporated fully herein.

## 2.    PPI SETTLEMENT

2.1.    Subject to Section ~~4.3~~4.3[11] in the event that NNI at any time has more than sufficient funds to pay all of its allowed administrative, priority, secured, general unsecured and prepetition claims in full, holders of NNI Indenture Notes shall be entitled to payment from NNI of PPI in the PPI Settlement Amount corresponding to the NNI Indenture Notes and shall be paid PPI from such funds available for such distributions (together with any other

---

[11] NTD: what claims are you trying to preserve through this reference in this and the next paragraph?

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
~~MTH&~~MCGSH DRAFT
7/~~18~~21/2014

creditors of ~~the Nortel Parties~~NNI entitled to payments of PPI) in accordance with a confirmed chapter 11 plan until the PPI Settlement Amount, taking into account PPI payments made by NNCC to holders of the 7.875% Notes in accordance with Section 2.2 hereof, is paid in full.

2.2.    Subject to Section 4.3, in the event that NNCC at any time has more than sufficient funds to pay all of its allowed administrative, priority, secured, general unsecured and prepetition claims in full, holders of 7.875% Notes shall be entitled to payment from NNCC of PPI in the PPI Settlement Amount corresponding to the 7.875% Notes and shall be paid PPI from such funds available for such distributions (together with any other creditors of ~~the Nortel Parties~~NNCC entitled to payments of PPI) in accordance with a confirmed chapter 11 plan until the PPI Settlement Amount, taking into account PPI payments made by NNI to holders of NNI Indenture Notes in accordance with Section 2.1 hereof, is paid in full.

2.3.    The "PPI Settlement Amount" shall be an amount equal to ~~55% of the aggregate amount of accrued PPI in respect of the Guaranteed Bonds from the Filing Date up to and including the date or dates of distribution (the "Total PPI Amount") either to or for the benefit of the holders of the Guaranteed Bonds.~~ [$907 million].

    ~~2.3.1.    The Total PPI Amount shall be calculated in accordance with the applicable indentures and using the contract rate of PPI set forth in the applicable indentures for each of the Guaranteed Bonds (the "Contract Rate").~~

    ~~2.3.2.    By way of example, if the Total PPI Amount as of June 30, 2014 was $1.65 billion, and June 30, 2014 was the date on which all amounts were distributed by the Nortel Parties, the PPI Settlement Amount would have been $907.5 million on such date. The Parties agree that the foregoing is for illustrative purposes only and is not binding on any Party nor to be used for any other purpose under this PPI Settlement Agreement or otherwise.~~

2.4.    ~~2.3.3.~~ The ~~different series of Guaranteed Bonds provide creditors with~~Indenture Trustees have asserted in the proofs of claim filed in the US Debtors' cases specific and varying contractual entitlements with respect to the Guaranteed Bonds, including, without limitation, entitlement to make-whole payments, no-call rights, the~~different~~ methods of calculating any post-petition ~~amount or rate (except as expressly provided herein), etc.~~ (those ~~features~~amounts or rates (those claims and issues being referred to collectively herein as "Contractual Entitlements"). Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any such Contractual Entitlements, other than ~~PPI to the extent provided herein~~the agreements with respect to the total PPI Settlement Amount contained in this Section 2 and the establishment of the amount of the allowed claims to which the Indenture Trustees and Bondholders are entitled to as against NNI and NNCC, as provided in Section 3.1 and Schedule A hereto. All such Contractual Entitlements are expressly reserved by the Supporting Bondholders and the Indenture Trustees~~;~~ *provided, however,* that to the extent that any Bondholder ~~is~~or the Indenture Trustees are determined to be entitled to any Contractual Entitlement against ~~a Nortel~~

BHG-PPI-0000105

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
M̶T̶H̶&̶MCGSH DRAFT
7/1̶8̶21/2014

P̶a̶r̶t̶y̶any US Debtor (whether by order of the US Court or a settlement or plan approved by the US Court) t̶h̶e̶ ̶a̶m̶o̶u̶n̶t̶(i) the sole source of funds available for distributions on behalf of such allowed Contractual Entitlement shall be i̶n̶c̶l̶u̶d̶e̶d̶ ̶i̶n̶,̶ ̶a̶n̶d̶ ̶n̶o̶t̶ ̶a̶n̶ ̶a̶d̶d̶i̶t̶i̶o̶n̶ ̶t̶o̶.funds available to make distributions to the Bondholders under Sections 2.1 and 2.2 hereof as applicable, and (ii) such allowed Contractual Entitlements shall be subject to and not added to the limitation on the total PPI Settlement Amount as d̶e̶t̶e̶r̶m̶i̶n̶e̶d̶ ̶i̶n̶ ̶a̶c̶c̶o̶r̶d̶a̶n̶c̶e̶ ̶w̶i̶t̶h̶ ̶t̶h̶e̶ a̶p̶p̶l̶i̶c̶a̶b̶l̶e̶ ̶p̶r̶o̶v̶i̶s̶i̶o̶n̶s̶ ̶o̶fdefined in this Section 2.

## 3.    RESOLUTION OF US PPI DISPUTE AND GUARANTEED BOND CLAIMS

3.1.    The PPI Settlement Agreement is intended to be a full and final settlement of (i) the US PPI Dispute with respect to the Monitor's Request currently pending before the US Court and all of the related submissions and requests for relief, and (ii) the allowed claims for outstanding principal obligations and accrued prepetition interest obligations (each as set forth on Schedule A hereto), and any entitlement to PPI (calculated pursuant to Sections 2.1 and 2.2 herein) arising under the Guaranteed Bonds. For the avoidance of doubt, any additional amounts claimed by and allowed in favor of the Indenture Trustees or any Bondholders as against any of the US Debtors shall only be eligible for allowance or the right to receive distributions in accordance with Section 2.4 hereof. Nothing in this PPI Settlement Agreement is or shall be deemed to be a settlement of the Canada PPI Dispute or any part thereof or otherwise a settlement of any claim of the Indenture Trustees or any Bondholder against any of the Canadian Debtors' estates.

## 4.    RESERVATION OF RIGHTS

4.1.    Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge (in whole or in part) of (i) any right of any Party to assert or defend against any allocation position or advance or defend against any arguments as to entitlement to Sale Proceeds in the Allocation Litigation, including in connection with any appeal(s) of any court ruling made in connection with the Allocation Litigation; or (ii) any claim, right or entitlement of any Party to Sale Proceeds in the Allocation Litigation.

4.2.    Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge (in whole or in part) of the ability of unsecured creditors of the US Debtors' estates (other than the Bondholders) to assert a claim for PPI with respect to the US Debtors' estates at the contract rate (if any) applicable to such creditor's claims or any alternative theories; *provided, however,* that if there are insufficient funds available to pay PPI to all unsecured creditors of the US Debtors' estates d̶u̶eentitled to such amounts, then, solely for purposes of determining any allocation of available PPI among such creditors, the holders of the Guaranteed Bonds shall be deemed to have a claim for PPI equal to the amount of post-petition interest that would have accrued at the applicable contract rate of PPI set forth in the applicable indentures for each of the Guaranteed Bonds. Further, this PPI Settlement Agreement does not settle the manner in which any funds available for distribution shall be allocated among the creditors of N̶N̶Ithe applicable US Debtors in the event that less than the full amount of PPI can be paid to all creditors owed such amounts

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
~~MTH&M~~MCGSH DRAFT
7/~~18~~21/2014

and such application shall be determined by later agreement of the parties whether as part of the chapter 11 plan(s) of the US Debtors in the chapter 11 cases or by subsequent agreement among the relevant affected creditors.

4.3.    For the avoidance of any doubt, nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any rights created under this PPI Settlement Agreement, any claim of any Party to enforce such rights, or a release of any claims for facts or events occurring or actions taken after the date of this PPI Settlement Agreement, nor shall this PPI Settlement Agreement be used, referred to or contended by any Party to have any relevance or probative value in connection with any claims not released herein.

## 5.    EFFECTIVENESS

5.1.    The agreements, acknowledgments and obligations contained herein (other than the obligations contained in Section 5.3 hereof) are expressly contingent upon, and shall become effective only upon the occurrence of all of the conditions to effectiveness below in this Section 5 (the "Effective Date").

5.2.    Approval of the Nortel Parties' entry into and performance under this PPI Settlement Agreement by an order of the US Court in the US Proceedings, substantially in the form attached as Schedule B hereto (the "Approval Order"), [which binds all Bondholders and all other parties in interest in the US Debtors' cases to the terms of this PPI Settlement Agreement][12] is a condition precedent to the effectiveness of this PPI Settlement Agreement. In the event that the US Court does not enter the Approval Order by [＿＿], ~~any Supporting Bondholder and/or Indenture Trustee may, in their sole discretion,~~ September 15, 2014, the Parties may terminate ~~the PPI Settlement~~ this agreement ~~as to such Supporting Bondholder and/or Indenture Trustee~~ by mutual consent.

5.3.    The Nortel Parties will move promptly for, and use their commercially reasonable best efforts to obtain, approval of this PPI Settlement Agreement under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (respectively, "Rule 9019(a)," and the "Bankruptcy Rules"). The other Parties agree to use their commercially reasonable best efforts to support the Nortel Parties in obtaining US Court approval of this PPI Settlement Agreement.

## 6.    BINDING EFFECT OF PPI SETTLEMENT AGREEMENT.

6.1.    Upon effectiveness, this PPI Settlement Agreement and the Approval Order shall be binding upon the Parties to this PPI Settlement Agreement and the Bondholders and any successors or assigns of the Parties.

---

[12] NTD: to discuss.

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
~~MTH&M~~CGSH DRAFT
7/~~18~~21/2014

6.2.    Each Supporting Bondholder represents and warrants, severally and not jointly, that, (i) as of the date hereof, such Supporting Bondholder is the legal owner, beneficial owner and/or holder of investment and voting authority over, the aggregate amount of obligations outstanding under the Guaranteed Bonds as set forth on its signature pages hereto,[13] (ii) there are no claims against the Debtor Parties in respect of the Guaranteed Bonds of which it is the holder of record that are not part of its Initial Holdings unless such Supporting Bondholder does not possess the full power to vote and dispose of such claims, and (iii) the execution and delivery of this PPI Settlement Agreement and the performance of its obligations have been duly authorized by all necessary action on its part.

6.3.    A Supporting Bondholder may (i) sell, transfer, assign, pledge, grant a participation interest in, or otherwise dispose of, directly or indirectly, its right, title, or interest in respect of any of such Supporting Bondholder's interest in a Guaranteed Bond, in whole or in part, or (ii) grant any proxies, deposit any of such Supporting Bondholder's interests in a Guaranteed Bond, into a voting trust, or enter into a voting agreement with respect to any such interest (collectively, the actions described in clauses (i) and (ii), a "Transfer"), *provided* that ~~until the earlier of (i) the US Court's entry of the Approval Order or termination of this PPI Settlement Agreement as permitted pursuant to~~subject to the termination provisions contained in Section 5.2 hereof, the transferee thereof agrees in writing to be bound by the terms of this PPI Settlement Agreement.

## 7.    MISCELLANEOUS

7.1.    **Acknowledgements**. Each Party acknowledges that that this PPI Settlement Agreement is not, and shall not be deemed to be, a solicitation of a vote for the acceptance of the Plan pursuant to section 1125 of the Bankruptcy Code.

7.2.    **Confidentiality**. Unless otherwise agreed by the Parties, the substance and existence of this PPI Settlement Agreement shall be kept strictly confidential until the filing of a motion with the US Court to seek approval of this PPI Settlement Agreement.

7.3.    **Further Assurances**. The Parties will cooperate in good faith to effectuate the terms of this PPI Settlement Agreement, including working in good faith to obtain the necessary court approvals. No Party shall take any action with the purpose or effect of evading the terms of this PPI Settlement Agreement.

7.4.    **Governing Law**. This PPI Settlement Agreement shall be governed and construed in accordance with the laws of the State of New York without giving effect to the conflict of laws principles thereof.

7.5.    **Integration**. This PPI Settlement Agreement constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof.   This PPI

---

[13] NTD: must list them by series of notes on the signature pages.

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&MCGSH DRAFT
7/1821/2014

Settlement Agreement may not be amended, supplemented or modified except by a written instrument executed by each of the Parties to this PPI Settlement Agreement.

7.6. **Jurisdiction**. The Parties agree to the exclusive jurisdiction of the US Court and, solely to the extent the US Court does not have jurisdiction, the United States District Court for the District of Delaware, in respect of any dispute arising out of or in connection with this PPI Settlement Agreement or its subject matter or formation.

7.7. **Manner of Execution**. The Parties may execute this PPI Settlement Agreement in counterparts, each of which shall be an original, and all executed counterparts shall collectively be deemed to be one and the same instrument. Facsimile or pdf signatures shall be deemed original signatures, and the Parties may exchange signature pages via mail, courier, facsimile or email.

7.8. **No Admissions**. This PPI Settlement Agreement shall in no event be construed as or be deemed to be evidence of an admission or concession on the part of any Party of any claim or fault or liability or damages whatsoever. Each of the Parties denies any and all wrongdoing or liability of any kind and does not concede any infirmity in the claims or defenses which it has asserted or could assert. No Party shall have, by reason of this PPI Settlement Agreement, a fiduciary relationship in respect of any other Party or any person or entity, and nothing in this PPI Settlement Agreement, expressed or implied, is intended to or shall be so construed as to impose upon any Party any obligations in respect of this PPI Settlement Agreement except as expressly set forth herein. This PPI Settlement Agreement are part of a proposed settlement of a dispute among the Parties. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this PPI Settlement Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding involving enforcement of the terms of this PPI Settlement Agreement.

7.9. **No Third-Party Beneficiaries**. The US Debtors that are not a Party to this PPI Settlement Agreement shall be beneficiaries hereof. This PPI Settlement Agreement is not intended to, and shall not, create rights in any other person or entity not a Party hereto.

7.10. **Non-Effectiveness**. In the event this PPI Settlement Agreement does not become effective, the Parties reserve all of their rights and defenses with respect to the US PPI Dispute resolved by this PPI Settlement Agreement and this proposed settlement shall not constitute an admission by any Party regarding the validity of the claims or defenses resolved by this PPI Settlement Agreement or that they have any liability in connection with such claims or defenses.

7.11. **Non-Severability**. Each of the provisions of this PPI Settlement Agreement is an integrated, essential and non-severable part of this PPI Settlement Agreement.

7.12. **Sophisticated Party**. Each Party represents and warrants that it has participated in preparation of this PPI Settlement Agreement and has been represented by sophisticated

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
~~MTH&M~~CGSH DRAFT
7/~~18~~21/2014

and experienced counsel in so doing. In any construction of this PPI Settlement Agreement, the PPI Settlement Agreement shall not be construed for or against any Party, but the same shall be construed fairly according to its plain meaning.

7.13.  **Representative Capacity**. Each person executing this PPI Settlement Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

7.14.  **Simultaneous Occurrence**. All material acts provided hereunder that are to occur on the Effective Date are deemed to occur simultaneously.

7.15.  **Successors and Assigns**. This PPI Settlement Agreement shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns.

*[Signature Pages to Follow]*

BHG-PPI-0000110

SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES
PRIVILEGED & HIGHLY CONFIDENTIAL
~~MTH&M~~CGSH DRAFT
7/~~18~~21/2014

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Settlement Agreement.

**NORTEL NETWORKS INC.**

By: _____
Name: John Ray
Title: Principal Officer

**NORTEL NETWORKS CAPITAL CORPORATION**

By: _____
Name: John Ray
Title: Principal Officer

BHG-PPI-0000111

7.16.

**Aggregate Face Amounts Beneficially Owned
or Managed on Account of:**

10.75% Notes:  $_____
10.125% Notes:  $_____
Floating Rate Notes:  $_____
2.125% Notes:  $_____
1.75% Notes:  $_____
7.875% Notes:  $_____

Name of Institution:

_____

By  _____
    Name:
    Title:

For bondholders requiring a second signature
    line:

By  _____
    Name:
    Title:

BHG-PPI-0000112

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
~~MTH&M~~CGSH DRAFT
7/~~18~~21/2014

## SCHEDULE A

**[list of prepetition claim amounts to be added]**

Confidential

BHG-PPI-0000113

## SCHEDULE B

**[form of order to be added]**

Confidential

BHG-PPI-0000114

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
~~MTH&M~~CGSH DRAFT
7/~~18~~21/2014

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------- X
                              :

*In re*                           :        Chapter 11
                              :

Nortel Networks Inc., *et al.*~~10~~14       :        Case No. 09-10138 (KG)
                              :

             Debtors.      :        Jointly Administered
                              :

                              :        **Hearing Date: [TBD]**
                              :        **Objections Due: [TBD]**
------------------------------------------------- X

## ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG NORTEL NETWORKS INC., NORTEL NETWORKS CAPITAL CORPORATION, THE SUPPORTING BONDHOLDERS, LAW DEBENTURE TRUST COMPANY OF NEW YORK, AND THE BANK OF NEW YORK MELLON WITH RESPECT TO POST-PETITION INTEREST ISSUES

**[to be inserted]**

---

~~10~~14    The debtors in these chapter 11 cases, along with the last four digits of each US Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

~~£1826 5.07 6284~~

Confidential                                                    BHG-PPI-0000115

**<u>EXHIBIT 6</u>**

**EXHIBIT**

118

| | |
|---|---|
| From: | Harris, Jennifer </O=MILBANK/OU=MTHMUSA/CN=RECIPIENTS/CN=JHARRIS> |
| Sent: | Friday, July 18, 2014 2:59 PM |
| To: | 'Schweitzer, Lisa M.' <lschweitzer@cgsh.com> |
| Cc: | Dunne, Dennis <DDunne@milbank.com>; Pisa, Albert A. <APisa@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Kreller, Tom <TKreller@milbank.com>; Matz, Tom <TMatz@milbank.com> |
| Bcc: | Weiss, Eric <EWeiss@milbank.com> |
| Subject: | NORTEL: revised US PPI Settlement Agreement |
| Attach: | Change-Pro Redline – Nortel US PPI Settlement Agreement (4836-5497-6284-....pdf; Nortel US PPI Settlement Agreement (4836-5497-6284-10).docx |

SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
PRIVILEGED AND CONFIDENTIAL

Lisa,

Enclosed please find a revised draft of the PPI Settlement Agreement, clean and blacklined against the version sent to you yesterday. Please note the draft remains subject to review by our clients and the indenture trustees in all respects.

Best regards,
Jennifer

Jennifer P. Harris | **Milbank**
601 South Figueroa Street | Los Angeles, CA 90017
T: +1 213.892.4344 | F: +1 213.892.4744
jharris@milbank.com | www.milbank.com

**From:** Matz, Tom
**Sent:** Thursday, July 17, 2014 8:26 AM
**To:** Schweitzer, Lisa M.
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom
**Subject:** NORTEL: US PPI Settlement Agreement

SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
PRIVILEGED AND CONFIDENTIAL

Lisa,

Further to our discussions on Tuesday, attached is a draft settlement agreement regarding PPI. This draft agreement is subject to ongoing client and internal review but in the interests of time, we wanted to get it to you for your review and consideration.

We would be pleased to continue our discussions this afternoon.

Tom

Thomas J. Matz | **Milbank**
One Chase Manhattan Plaza | New York, NY 10005
P. +1 212.530.5885 | F: +1 212.822.5885
tmatz@milbank.com | www.milbank.com

BHG-PPI-0000116

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
**MTH&M DRAFT**
**7/18/2014**

## AGREEMENT SETTLING THE US POST-PETITION INTEREST DISPUTE

This agreement (the "PPI Settlement Agreement") is entered into by and among Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation ("NNCC" and, together with NNI, the "Nortel Parties"), the bondholders who are signatories hereto (each a "Supporting Bondholder" and, collectively, the "Supporting Bondholders") holding Guaranteed Bonds (defined *infra*), Law Debenture Trust Company of New York, as indenture trustee ( "Law Debenture"), and The Bank of New York Mellon, as indenture trustee ("BNY" and, with the Law Debenture, the "Indenture Trustees,") (with the Nortel Parties, the Supporting Bondholders, and Indenture Trustees each being a "Party" and collectively, the "Parties").

### RECITALS

WHEREAS, on January 14, 2009 (the "Filing Date"), NNI, NNCC, and certain of their United States affiliates (the "US Debtors") other than Nortel Networks (CALA) Inc. ("NN CALA")[1] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") (together with the NN CALA Case, the "US Proceedings") before the United States Bankruptcy Court for the District of Delaware (the "US Court"). On January 22, 2009, the Office of the United States Trustee for the District of Delaware appointed the official committee of unsecured creditors in respect of the US Debtors.

WHEREAS, on the Filing Date, the US Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL, and certain of NNC's and NNL's Canadian affiliates commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and "CCAA"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor").

WHEREAS, prior to the Filing Date, the US Debtors, the EMEA Debtors,[2] the Canadian Debtors (collectively, the "Nortel Debtors"), and certain of their non-debtor affiliates around the world were part of the Nortel group of companies (the "Nortel Group"), of which NNC was the ultimate corporate parent.

---

[1]       NN CALA filed its voluntary petition for protection under chapter 11 of the Bankruptcy Code on July 14, 2009 (the "NN CALA Case") [D.I. 1098].

[2]       The EMEA Debtors are: Nortel Networks U.K. Ltd., Nortel Networks S.A. ("NNSA"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH. Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft. Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

Confidential                                                                BHG-PPI-0000117

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
<u>MTH&M DRAFT</u>
<u>7/18/2014</u>

WHEREAS, pursuant to the Indenture dated as of July 5, 2006 (the "<u>2006 Indenture</u>"),[3] NNL issued multiple series of senior notes guaranteed by NNC and NNI, including two series of fixed rate 10.75% senior notes in the aggregate principal amounts of $450 million and $675 million due 2016 (together, the "<u>10.75% Notes</u>"), a series of fixed rate 10.125% senior notes in the aggregate principal amount of $550 million due 2013 (the "<u>10.125% Notes</u>"), and a series of floating rate senior notes in the aggregate principal amount of $1 billion due 2011 (the "<u>Floating Rate Notes</u>" and, together with the 10.75% Notes and the 10.125% Notes, the "<u>2006 Indenture Notes</u>").

WHEREAS, on September 25, 2009, The Bank of New York Mellon, under the 2006 Indenture, filed a timely proof of claim on behalf of the holders of the 2006 Indenture Notes preserving, among others, their claim for "an unliquidated amount for the continuing post-petition (a) accrual of interest (including interest upon the overdue installments of interest)..."[4]

WHEREAS, as provided in Section 1001 of the 2006 Indenture, "[t]he Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities of such series in accordance with their terms and this Indenture." The 2006 Supplemental Indentures establish the applicable rate of interest for each series of 2006 Indenture Notes. Moreover, Section 312 of the 2006 Indenture provides for interest payable to noteholders and that interest not punctually paid on the interest payment date constitutes defaulted interest.

WHEREAS, pursuant to the Indenture dated as of March 28, 2007 (the "<u>2007 Indenture</u>"), NNC issued 2.125% convertible senior notes due 2014 (the "<u>2.125% Notes</u>") in an aggregate principal amount of $575 million and 1.75% convertible senior notes due 2012 (the "<u>1.75% Notes</u>" and, together with the 2.125% Notes, the "<u>2007 Indenture Notes</u>" **and, together with the 2006 Indenture Notes, the "NNI Indenture Notes</u>**") in an aggregate principal amount of $575 million. The 2007 Indenture Notes are each guaranteed by NNI and NNL.

WHEREAS, on September 25, 2009, The Bank of New York Mellon, under the 2007 Indenture, filed a timely proof of claim on behalf of the holders of the 2007 Indenture Notes for, among others, "a claim in an unliquidated amount for the continuing post-petition (a) accrual of interest (including interest upon the overdue installments of interest). . . ."[5]

---

[3]    Supplemented by the First Supplemental Indenture, dated July 5, 2006, the Second Supplemental Indenture dated May 1, 2007, and the Third Supplemental Indenture dated May 28, 2008 (collectively the "<u>2006 Supplemental Indentures</u>").

[4]    *See* TR40041, Attachment to Proof of Claim ¶ 8.

[5]    *See* TR40042, Attachment to Proof of Claim ¶ 8.

Confidential

BHG-PPI-0000118

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
*MTH&M DRAFT*
*7/18/2014*

WHEREAS, pursuant to Section 4.01 of the 2007 Indenture, "[t]he Issuer shall pay the principal of and interest (including Additional Interest, if any) on the Notes on the dates and in the manner provided in the Notes . . . . To the extent lawful, the Issuer shall pay interest (including post-petition interest in any proceeding under any bankruptcy, insolvency or other similar applicable law) on (i) overdue principal, at the rate borne by Notes; and (ii) overdue installments of interest (without regard to any applicable grace period) at the same rate." Additionally, pursuant to Section 2.11 of the 2007 Indenture, "[i]f the Issuer (and the Guarantors) fail to make a payment of interest on the Notes, it (and the Guarantors) shall pay such defaulted interest plus, to the extent lawful, any interest payable on the defaulted interest." The 2007 Indenture establishes the applicable rate of interest for each series of 2007 Indenture Notes.

WHEREAS, pursuant to the Indenture dated as of February 15, 1996 (the "1996 Indenture"), NNCC issued a series of fixed rate 7.875% senior notes guaranteed by NNL in an aggregate principal amount of $150 million due 2026 (the "7.875% Notes" and, with the 2006 Indenture Notes and the 2007 Indenture Notes, the "Guaranteed Bonds").[6]

WHEREAS, on September 28, 2009, the Law Debenture Trust Company of New York filed a timely proof of claim on behalf of the holders of the 7.875% Notes preserving, among others, their claim for "payment in full of all post-petition interest due and payable under the [1996] Indenture."[7]

WHEREAS, pursuant to Section 1001 of the 1996 Indenture, "[t]he applicable Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities in accordance with their terms and this Indenture." The 1996 Indenture established the applicable rate of interest for the 1996 Indenture Notes.

WHEREAS, after the Filing Date, the Nortel Debtors agreed to pursue an orderly and coordinated sale of the Nortel Group's businesses and assets. The various Nortel estates further agreed that all sale proceeds would be held in escrow accounts corresponding to each sale transaction, pending later agreement by the parties on allocation or a litigated resolution of any allocation dispute. This agreement among the US Debtors, the Canadian Debtors and certain of the EMEA Debtors was memorialized in the Interim Funding and Settlement

---

[6]     All holders of the Guaranteed Bonds are collectively defined as "Bondholders".

[7]     *See* TR43729 at LDTCNY0000282.

[8]     *See* Exhibit B to the Motion Pursuant to 11 U.S.C. § 105(a), § 363, § 503 and Fed. R. Bankr. P. 9019 for an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 874].

Confidential

BHG-PPI-0000119

Agreement, dated as of June 9, 2009 (the "IFSA").[8]    Following a joint hearing on June 29, 2009, the IFSA was approved by each of the US Court [D.I. 993] and the Canadian Court.

WHEREAS, from 2009 to 2011, the Nortel Debtors conducted a series of court-approved sale transactions that generated approximately $7.5 billion in sale proceeds (together with accrued interest, the "Sale Proceeds").    Each Nortel Group entity that satisfied the definition of "Nortel Seller" (as defined in the IFSA) was entitled to participate in the distribution of the Sale Proceeds.

WHEREAS, after three failed mediation attempts regarding the allocation of the Sale Proceeds among the Nortel Sellers, litigation to resolve the allocation issues (the "Allocation Litigation") was ordered by the US Court by an Order dated April 3, 2013 [D.I. 9947] (as supplemented by further orders) and directed by endorsements of the Canadian Court dated March 8, 2013 and April 3, 2013.[9]

WHEREAS, after extensive fact and expert discovery, on May 12, 2014, the parties commenced a trial (the "Allocation Trial") before the US Court and the Canadian Court (collectively, the "Courts"). The evidentiary portion of the Allocation Trial concluded on June 24, 2014.

WHEREAS, at the request of the Monitor in the Memorandum of the Monitor Regarding Bondholder Claims Issues, dated June 19, 2014 [D.I. 13880] (the "Monitor's Request"), and purportedly in connection with the Allocation Trial, on June 30, 2014, the Courts issued an order directing briefing and argument (the "PPI Dispute") on two issues relating to post-petition interest ("PPI") on the Guaranteed Bonds:

i)      whether the holders of the Guaranteed Bonds are legally entitled in each jurisdiction to claim or receive any amounts under the relevant indentures above and beyond the outstanding principal debt and pre-petition interest (namely, above and beyond US $[4.092] billion); and

ii)     if determined that the holders of the Guaranteed Bonds are so entitled, what additional amounts are such holders entitled to so claim and receive.

WHEREAS, on July 15, 2014, certain of the parties to the Allocation Litigation exchanged opening briefs with respect to the PPI Dispute. The briefs advance the parties'

---

[8]      *See* Exhibit B to the Motion Pursuant to 11 U.S.C. § 105(a), § 363, § 503 and Fed. R. Bankr. P. 9019 for an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 874].

[9]      *See* Exhibits C and D to Notice of Filing of Items Designated for Record on Appeal dated May 1, 2013 [D.I. 10414].

4

divergent and competing positions regarding the PPI Dispute. Depending on the resolution of the PPI Dispute, distributions to the U.S. Debtors' creditors could be materially different.

WHEREAS, the PPI Dispute requires the determination of separate and distinct legal issues in the United States (the "US PPI Dispute") and Canada (the "Canada PPI Dispute"), and must thus be decided independently in each jurisdiction. The PPI Settlement Agreement relates solely to the US PPI Dispute.

WHEREAS, the Parties all acknowledge and agree that the entry into any settlement of the US PPI Dispute shall not be deemed an acknowledgement or acceptance of the position of any party to the US PPI Dispute, the Canada PPI Dispute or the Allocation Litigation. The Parties also acknowledge and agree that the ultimate outcome of the US PPI Dispute is uncertain, that appeals in respect of such litigation are likely, that the cost of such litigation is both substantial and burdensome on each of the Parties and that such cost will continue to increase absent a final and binding resolution of the US PPI Dispute. The approval of the PPI Settlement Agreement should end a contentious and costly litigation regarding the entitlement of Bondholders to PPI, resolving an issue which could have significantly delayed both the confirmation of the US Debtors' chapter 11 plan(s) and the ultimate distribution of plan proceeds to the US Debtors' creditors, as well as expedite the administration of the US Debtors' estates generally. As a result of the compromises embodied in this PPI Settlement Agreement, the US Debtors have substantially reduced the potential size of the PPI claim of the Bondholders and have mitigated the risk to their unsecured creditors of a costly and protracted appeals process that would no doubt have followed any judicial determination of the US PPI Dispute, thereby preserving significant value for all of the US Debtors' stakeholders.

NOW THEREFORE, IN LIGHT OF THE FOREGOING RECITALS, AND FOR GOOD AND VALUABLE CONSIDERATION, THE VALUE OF WHICH IS HEREBY AGREED, THE PARTIES HEREBY FURTHER AGREE, SUBJECT TO THE SATISFACTION OF ALL CONDITIONS SET FORTH HEREIN THAT:

1.    **INTERPRETATION**

1.1.    The Recitals set forth above form an integral part of this PPI Settlement Agreement and are incorporated fully herein.

2.    **PPI SETTLEMENT**

2.1.    Subject to Section 4.3, in the event that NNI at any time has more than sufficient funds to pay all of its allowed administrative and prepetition claims in full, holders of ~~Guaranteed Bonds~~NNI Indenture Notes shall be entitled to payment from ~~the Nortel Parties~~NNI of PPI in the PPI Settlement Amount and shall be paid PPI from such funds (together with any other creditors of the Nortel Parties entitled to payments of PPI) until the PPI Settlement Amount, taking into account PPI payments made by

5

NNCC to holders of the 7.875% Notes in accordance with Section 2.2 hereof, is paid in full.

**2.2.** Subject to Section 4.3, in the event that NNCC at any time has more than sufficient funds to pay all of its allowed administrative and prepetition claims in full, holders of 7.875% Notes shall be entitled to payment from NNCC of PPI in the PPI Settlement Amount and shall be paid PPI from such funds (together with any other creditors of the Nortel Parties entitled to payments of PPI) until the PPI Settlement Amount, taking into account PPI payments made by NNI to holders of NNI Indenture Notes in accordance with Section 2.1 hereof, is paid in full.

**2.3.** ~~2.2.~~ The "PPI Settlement Amount" shall be an amount ~~up~~equal to [60]55% of the aggregate amount of accrued PPI in respect of the Guaranteed Bonds from the Filing Date up to and including the date or dates of distribution (the "Total PPI Amount") either to or for the benefit of the holders of the Guaranteed Bonds.

**2.3.1.** ~~2.2.1.~~ The Total PPI Amount shall be calculated in accordance with the applicable indentures and using the contract rate of PPI set forth in the applicable indentures for each of the Guaranteed Bonds (the "Contract Rate").

**2.3.2.** ~~2.2.2.~~ By way of example, ~~and for the avoidance of doubt,~~if the Total PPI Amount as of June 30, 2014 was [$1.65 billion]~~.~~ ~~If, and~~ June 30, 2014 ~~had been~~was the date ~~of distribution~~on which all amounts were distributed by the Nortel Parties, the PPI Settlement Amount would have been [$990]907.5 million[.] on such date. The Parties agree that the foregoing is for illustrative purposes only and is not binding on any Party nor to be used for any other purpose under this PPI Settlement Agreement or otherwise.

**2.3.3.** The different series of Guaranteed Bonds provide creditors with specific and varying contractual entitlements, including, without limitation, entitlement to make-whole payments, no-call rights, the method of calculating any post-petition amount or rate (except as expressly provided herein), etc. (those features being referred to collectively herein as "contractual entitlements"). Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any such contractual entitlements, other than PPI to the extent provided herein. All such contractual entitlements are expressly reserved by the Supporting Bondholders and the Indenture Trustees. To the extent that any Bondholder is determined to be entitled to any contractual entitlement against a Nortel Party (whether by order of the US Court or a settlement or plan approved by the US Court) the amount of such contractual entitlement shall be included in, and not an addition to, the PPI Settlement Amount as determined in accordance with the applicable provisions of this Section 2.

6

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
*MTH&M DRAFT*
*7/18/2014*

3.    **RESOLUTION OF US PPI DISPUTE AND GUARANTEED BOND CLAIMS**

3.1.   The PPI Settlement Agreement is intended to be a full and final settlement of (i) the US PPI Dispute with respect to the Monitor's Request currently pending before the US Court and (ii) the allowed claims for outstanding principal obligations and accrued prepetition interest obligations (each as set forth on Schedule A hereto), and entitlement to PPI (calculated pursuant to Sections 2.1 and 2.2 herein) arising under the Guaranteed Bonds. Nothing in this PPI Settlement Agreement is or shall be deemed to be a settlement of the Canada PPI Dispute or any part thereof or otherwise a settlement of any claim of any Bondholder against any of the Canadian Debtors' estates.

4.    **RESERVATION OF RIGHTS**

4.1.   Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge (in whole or in part) of (i) any right of any Party to assert or defend against any allocation position or advance or defend against any arguments as to entitlement to Sale Proceeds in the Allocation Litigation, including in connection with any appeal(s) of any court ruling made in connection with the Allocation Litigation; or (ii) any claim, right or entitlement of any Party to Sale Proceeds in the Allocation Litigation.

4.2.   ~~The different series of Guaranteed Bonds provide creditors with specific and varying contractual entitlements, including, without limitation, entitlement to make whole payments, no-call rights, the method of calculating any post petition amount or rate (except as expressly provided herein), etc. (those features being referred to collectively herein as "contractual entitlements"). Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any such contractual entitlements, other than PPI to the extent provided herein. All such contractual entitlements are expressly reserved by the Supporting Bondholders and the Indenture Trustees.~~

**4.2.**   ~~4.3.~~ Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge (in whole or in part) of the ability of unsecured creditors of the US Debtors' estates (other than the Bondholders) to assert a claim for PPI with respect to the US Debtors' estates at the contract rate (if any) applicable to such creditor's claims; provided, however, that if there are insufficient funds available to pay PPI to all unsecured creditors of the US Debtors' estates due such amounts, then, solely for purposes of determining any allocation of available PPI among such creditors, the holders of the Guaranteed Bonds shall be deemed to have a claim for PPI equal to the amount of post-petition interest that would have accrued at the applicable Contract Rate. Further, this PPI Settlement Agreement does not settle the manner in which any funds available for distribution shall be allocated among the creditors of NNI in the event that less than the full amount of PPI can be paid to all creditors owed such amounts and such application shall be determined by later agreement of the parties

7

whether as part of the chapter 11 plan of the US Debtors in the chapter 11 cases or by subsequent agreement among the relevant affected creditors.

**4.3.** 4.4. For the avoidance of any doubt, nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any rights created under this PPI Settlement Agreement, any claim of any Party to enforce such rights, or a release of any claims for facts or events occurring or actions taken after the date of this PPI Settlement Agreement, nor shall this PPI Settlement Agreement be used, referred to or contended by any Party to have any relevance or probative value in connection with any claims not released herein.

## 5.    EFFECTIVENESS

5.1.    The agreements, acknowledgments and obligations contained herein (other than the obligations contained in Section 5.3 hereof) are expressly contingent upon, and shall become effective only upon the occurrence of all of the conditions to effectiveness below in this Section 5 (the "Effective Date").

5.2.    Approval of the Nortel Parties' entry into and performance under this PPI Settlement Agreement by an order of the US Court in the US Proceedings, **in the form attached as Schedule B hereto (the "Approval Order"),** is a condition precedent to the effectiveness of this PPI Settlement Agreement. **In the event that the US Court does not enter the Approval Order by [      ], any Supporting Bondholder and/or Indenture Trustee may, in their sole discretion, terminate the PPI Settlement Agreement as to such Supporting Bondholder and/or Indenture Trustee.**

5.3.    The Nortel Parties will move promptly for, and use their commercially reasonable best efforts to obtain, approval of this PPI Settlement Agreement under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (respectively, "Rule 9019(a)," and the "Bankruptcy Rules"). The other Parties agree to use their commercially reasonable best efforts to support the Nortel Parties in obtaining US Court approval of this PPI Settlement          Agreement.

## 6.    BINDING EFFECT OF PPI SETTLEMENT AGREEMENT.

**6.1.    Upon effectiveness, this** PPI Settlement Agreement and the **Approval Order** shall be binding upon the Parties to this PPI Settlement Agreement and the Bondholders and any successors or assigns of the Parties.

**6.2.    Each Supporting Bondholder represents and warrants, severally and not jointly, that, as of the date hereof, such Supporting Bondholder is the legal owner, beneficial owner and/or holder of investment and voting authority over, the**

8

<u>aggregate amount of obligations outstanding under the Guaranteed Bonds as set forth on its signature pages hereto.</u>

<u>6.3.</u>    <u>A Supporting Bondholder may (i) sell, transfer, assign, pledge, grant a participation interest in, or otherwise dispose of, directly or indirectly, its right, title, or interest in respect of any of such Supporting Bondholder's interest in a Guaranteed Bond, in whole or in part, or (ii) grant any proxies, deposit any of such Supporting Bondholder's interests in a Guaranteed Bond, into a voting trust, or enter into a voting agreement with respect to any such interest (collectively, the actions described in clauses (i) and (ii), a "Transfer"), *provided* that until the earlier of (i) the US Court's entry of the Approval Order or termination of this PPI Settlement Agreement as permitted pursuant to Section 5.2 hereof, the transferee thereof agrees in writing to be bound by the terms of this PPI Settlement Agreement.</u>

<u>7.</u>    <s>6.</s> MISCELLANEOUS

<u>7.1.</u>    <s>6.1.</s> **Acknowledgements**.   Each Party acknowledges that that this PPI Settlement Agreement is not, and shall not be deemed to be, a solicitation of a vote for the acceptance of the Plan pursuant to section 1125 of the Bankruptcy Code.

<s>6.2. **Binding Effect**.  This PPI Settlement Agreement and the order of the US Court approving the entry into and performance under this PPI Settlement Agreement shall be binding upon the Parties to this PPI Settlement Agreement and the Bondholders and any successors or assigns of the Parties.</s>

<u>7.2.</u>    <s>6.3.</s> **Confidentiality**.   Unless otherwise agreed by the Parties, the substance and existence of this PPI Settlement Agreement shall be kept strictly confidential until the filing of a motion with the US Court to seek approval of this PPI Settlement Agreement.

<u>7.3.</u>    <s>6.4.</s> **Further Assurances**.   The Parties will cooperate in good faith to effectuate the terms of this PPI Settlement Agreement, including working in good faith to obtain the necessary court approvals. No Party shall take any action with the purpose or effect of evading the terms of this PPI Settlement Agreement.

<u>7.4.</u>    <s>6.5.</s> **Governing Law**.  This PPI Settlement Agreement shall be governed and construed in accordance with the laws of the State of New York without giving effect to the conflict of laws principles thereof.

<u>7.5.</u>    <s>6.6.</s> **Integration**.   This PPI Settlement Agreement constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof.   This PPI Settlement Agreement may not be amended, supplemented or

9

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
*MTH&M DRAFT*
*7/18/2014*

modified except by a written instrument executed by each of the Parties to this PPI Settlement Agreement.

**7.6.** ~~6.7.~~ **Jurisdiction**. The Parties agree to the exclusive jurisdiction of the US Court and the United States District Court for the District of Delaware in respect of any dispute arising out of or in connection with this PPI Settlement Agreement or its subject matter or formation.

**7.7.** ~~6.8.~~ **Manner of Execution**. The Parties may execute this PPI Settlement Agreement in counterparts, each of which shall be an original, and all executed counterparts shall collectively be deemed to be one and the same instrument. Facsimile or pdf signatures shall be deemed original signatures, and the Parties may exchange signature pages via mail, courier, facsimile or email.

**7.8.** ~~6.9.~~ **No Admissions**. This PPI Settlement Agreement shall in no event be construed as or be deemed to be evidence of an admission or concession on the part of any Party of any claim or fault or liability or damages whatsoever. Each of the Parties denies any and all wrongdoing or liability of any kind and does not concede any infirmity in the claims or defenses which it has asserted or could assert. No Party shall have, by reason of this PPI Settlement Agreement, a fiduciary relationship in respect of any other Party or any person or entity, and nothing in this PPI Settlement Agreement, expressed or implied, is intended to or shall be so construed as to impose upon any Party any obligations in respect of this PPI Settlement Agreement except as expressly set forth herein. This PPI Settlement Agreement are part of a proposed settlement of a dispute among the Parties. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this PPI Settlement Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding involving enforcement of the terms of this PPI Settlement Agreement.

**7.9.** ~~6.10.~~ **No Third-Party Beneficiaries**. This PPI Settlement Agreement is not intended to, and shall not, create rights in any person or entity not a Party hereto.

**7.10.** ~~6.11.~~ **Non-Effectiveness**. In the event this PPI Settlement Agreement does not become effective, the Parties reserve all of their rights and defenses with respect to the US PPI Dispute resolved by this PPI Settlement Agreement and this proposed settlement shall not constitute an admission by any Party regarding the validity of the claims or defenses resolved by this PPI Settlement Agreement or that they have any liability in connection with such claims or defenses.

**7.11.** ~~6.12.~~ **Non-Severability**. Each of the provisions of this PPI Settlement Agreement is an integrated, essential and non-severable part of this PPI Settlement Agreement.

**7.12.** ~~6.13.~~ **Sophisticated Party**. Each Party represents and warrants that it has participated in preparation of this PPI Settlement Agreement and has been represented by sophisticated and experienced counsel in so doing. In any construction of this PPI

10

BHG-PPI-0000126

Settlement Agreement, the PPI Settlement Agreement shall not be construed for or against any Party, but the same shall be construed fairly according to its plain meaning.

**7.13.** 6.14. **Representative Capacity.** Each person executing this PPI Settlement Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

**7.14.** 6.15. **Simultaneous Occurrence.** All material acts provided hereunder that are to occur on the Effective Date are deemed to occur simultaneously.

**7.15.** 6.16. **Successors and Assigns.** This PPI Settlement Agreement shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns.

*[Signature Pages to Follow]*

H

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Settlement Agreement.

**NORTEL NETWORKS INC.**

By: _____
Name:  John Ray
Title:  Principal Officer

**NORTEL NETWORKS CAPITAL CORPORATION**

By: _____
Name:  John Ray
Title:  Principal Officer

Confidential

BHG-PPI-0000128

<u>7.16.</u> ~~6.17.~~

~~[Supporting Bondholder and Indenture Trustee signatures to be added at a later time]~~

<u>Aggregate Face Amounts Beneficially
Owned or Managed on Account of:</u>

<u>10.75% Notes:  $ _____</u>
<u>10.125% Notes:  $ _____</u>
<u>Floating Rate Notes:  $ _____</u>
<u>2.125% Notes:  $ _____</u>
<u>1.75% Notes:  $ _____</u>
<u>7.875% Notes:  $ _____</u>

<u>Name of Institution:</u>

_____

<u>B</u>    _____
  <u>y</u>
    <u>Name:</u>
    <u>Title:</u>

<u>For bondholders requiring a second
  signature line:</u>

<u>B</u>    _____
  <u>y</u>
    <u>Name:</u>
    <u>Title:</u>

                    BHG-PPI-0000129

## SCHEDULE A

**[list of prepetition claim amounts to be added]**

BHG-PPI-0000130

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
*MTH&M DRAFT*
*7/17/2014*

## SCHEDULE B

[form of order to be added]

BHG-PPI-0000131

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
**MTH&M DRAFT**
**7/18/2014**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| --------------------------------------------- X | : | |
| | : | |
| *In re* | : | **Chapter 11** |
| | : | |
| Nortel Networks Inc., *et al.*[10] | : | **Case No. 09-10138 (KG)** |
| | : | |
| Debtors. | : | **Jointly Administered** |
| | : | |
| | : | **Hearing Date:  [TBD]** |
| | : | **Objections Due:  [TBD]** |
| --------------------------------------------- X | | |

### ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG NORTEL NETWORKS INC., NORTEL NETWORKS CAPITAL CORPORATION, THE SUPPORTING BONDHOLDERS, LAW DEBENTURE TRUST COMPANY OF NEW YORK, AND THE BANK OF NEW YORK MELLON WITH RESPECT TO POST-PETITION INTEREST ISSUES

[to be inserted]

---

[10]    The debtors in these chapter 11 cases, along with the last four digits of each US Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

BHG-PPI-0000132

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

## AGREEMENT SETTLING THE US POST-PETITION INTEREST DISPUTE

This agreement (the "PPI Settlement Agreement") is entered into by and among Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation ("NNCC" and, together with NNI, the "Nortel Parties"), the bondholders who are signatories hereto (each a "Supporting Bondholder" and, collectively, the "Supporting Bondholders") holding Guaranteed Bonds (defined *infra*), Law Debenture Trust Company of New York, as indenture trustee ( "Law Debenture"), and The Bank of New York Mellon, as indenture trustee ("BNY" and, with the Law Debenture, the "Indenture Trustees,") (with the Nortel Parties, the Supporting Bondholders, and Indenture Trustees each being a "Party" and collectively, the "Parties").

## RECITALS

WHEREAS, on January 14, 2009 (the "Filing Date"), NNI, NNCC, and certain of their United States affiliates (the "US Debtors") other than Nortel Networks (CALA) Inc. ("NN CALA")[1] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") (together with the NN CALA Case, the "US Proceedings") before the United States Bankruptcy Court for the District of Delaware (the "US Court"). On January 22, 2009, the Office of the United States Trustee for the District of Delaware appointed the official committee of unsecured creditors in respect of the US Debtors.

WHEREAS, on the Filing Date, the US Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL, and certain of NNC's and NNL's Canadian affiliates commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and "CCAA"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor").

WHEREAS, prior to the Filing Date, the US Debtors, the EMEA Debtors,[2] the Canadian Debtors (collectively, the "Nortel Debtors"), and certain of their non-debtor affiliates around the world were part of the Nortel group of companies (the "Nortel Group"), of which NNC was the ultimate corporate parent.

---

[1]    NN CALA filed its voluntary petition for protection under chapter 11 of the Bankruptcy Code on July 14, 2009 (the "NN CALA Case") [D.I. 1098].

[2]    The EMEA Debtors are: Nortel Networks U.K. Ltd., Nortel Networks S.A. ("NNSA"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

WHEREAS, pursuant to the Indenture dated as of July 5, 2006 (the "2006 Indenture"),[3] NNL issued multiple series of senior notes guaranteed by NNC and NNI, including two series of fixed rate 10.75% senior notes in the aggregate principal amounts of $450 million and $675 million due 2016 (together, the "10.75% Notes"), a series of fixed rate 10.125% senior notes in the aggregate principal amount of $550 million due 2013 (the "10.125% Notes"), and a series of floating rate senior notes in the aggregate principal amount of $1 billion due 2011 (the "Floating Rate Notes" and, together with the 10.75% Notes and the 10.125% Notes, the "2006 Indenture Notes").

WHEREAS, on September 25, 2009, The Bank of New York Mellon, under the 2006 Indenture, filed a timely proof of claim on behalf of the holders of the 2006 Indenture Notes preserving, among others, their claim for "an unliquidated amount for the continuing post-petition (a) accrual of interest (including interest upon the overdue installments of interest)..."[4]

WHEREAS, as provided in Section 1001 of the 2006 Indenture, "[t]he Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities of such series in accordance with their terms and this Indenture." The 2006 Supplemental Indentures establish the applicable rate of interest for each series of 2006 Indenture Notes. Moreover, Section 312 of the 2006 Indenture provides for interest payable to noteholders and that interest not punctually paid on the interest payment date constitutes defaulted interest.

WHEREAS, pursuant to the Indenture dated as of March 28, 2007 (the "2007 Indenture"), NNC issued 2.125% convertible senior notes due 2014 (the "2.125% Notes") in an aggregate principal amount of $575 million and 1.75% convertible senior notes due 2012 (the "1.75% Notes" and, together with the 2.125% Notes, the "2007 Indenture Notes" and, together with the 2006 Indenture Notes, the "NNI Indenture Notes") in an aggregate principal amount of $575 million. The 2007 Indenture Notes are each guaranteed by NNI and NNL.

WHEREAS, on September 25, 2009, The Bank of New York Mellon, under the 2007 Indenture, filed a timely proof of claim on behalf of the holders of the 2007 Indenture Notes for, among others, "a claim in an unliquidated amount for the continuing post-petition (a) accrual of interest (including interest upon the overdue installments of interest). . . ."[5]

WHEREAS, pursuant to Section 4.01 of the 2007 Indenture, "[t]he Issuer shall pay the principal of and interest (including Additional Interest, if any) on the Notes on the dates and in the manner provided in the Notes . . . . To the extent lawful, the Issuer shall pay interest (including post-petition interest in any proceeding under any bankruptcy, insolvency or other

---

[3]    Supplemented by the First Supplemental Indenture, dated July 5, 2006, the Second Supplemental Indenture dated May 1, 2007, and the Third Supplemental Indenture dated May 28, 2008 (collectively the "2006 Supplemental Indentures").

[4]    *See* TR40041, Attachment to Proof of Claim ¶ 8.

[5]    *See* TR40042, Attachment to Proof of Claim ¶ 8.

BHG-PPI-0000134

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

similar applicable law) on (i) overdue principal, at the rate borne by Notes; and (ii) overdue installments of interest (without regard to any applicable grace period) at the same rate." Additionally, pursuant to Section 2.11 of the 2007 Indenture, "[i]f the Issuer (and the Guarantors) fail to make a payment of interest on the Notes, it (and the Guarantors) shall pay such defaulted interest plus, to the extent lawful, any interest payable on the defaulted interest." The 2007 Indenture establishes the applicable rate of interest for each series of 2007 Indenture Notes.

WHEREAS, pursuant to the Indenture dated as of February 15, 1996 (the "1996 Indenture"), NNCC issued a series of fixed rate 7.875% senior notes guaranteed by NNL in an aggregate principal amount of $150 million due 2026 (the "7.875% Notes" and, with the 2006 Indenture Notes and the 2007 Indenture Notes, the "Guaranteed Bonds").[6]

WHEREAS, on September 28, 2009, the Law Debenture Trust Company of New York filed a timely proof of claim on behalf of the holders of the 7.875% Notes preserving, among others, their claim for "payment in full of all post-petition interest due and payable under the [1996] Indenture."[7]

WHEREAS, pursuant to Section 1001 of the 1996 Indenture, "[t]he applicable Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities in accordance with their terms and this Indenture." The 1996 Indenture established the applicable rate of interest for the 1996 Indenture Notes.

WHEREAS, after the Filing Date, the Nortel Debtors agreed to pursue an orderly and coordinated sale of the Nortel Group's businesses and assets. The various Nortel estates further agreed that all sale proceeds would be held in escrow accounts corresponding to each sale transaction, pending later agreement by the parties on allocation or a litigated resolution of any allocation dispute. This agreement among the US Debtors, the Canadian Debtors and certain of the EMEA Debtors was memorialized in the Interim Funding and Settlement Agreement, dated as of June 9, 2009 (the "IFSA").[8] Following a joint hearing on June 29, 2009, the IFSA was approved by each of the US Court [D.I. 993] and the Canadian Court.

WHEREAS, from 2009 to 2011, the Nortel Debtors conducted a series of court-approved sale transactions that generated approximately $7.5 billion in sale proceeds (together with accrued interest, the "Sale Proceeds"). Each Nortel Group entity that satisfied the definition of "Nortel Seller" (as defined in the IFSA) was entitled to participate in the distribution of the Sale Proceeds.

---

[6]     All holders of the Guaranteed Bonds are collectively defined as "Bondholders".

[7]     *See* TR43729 at LDTCNY0000282.

[8]     *See* Exhibit B to the Motion Pursuant to 11 U.S.C. § 105(a), § 363, § 503 and Fed. R. Bankr. P. 9019 for an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 874].

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

WHEREAS, after three failed mediation attempts regarding the allocation of the Sale Proceeds among the Nortel Sellers, litigation to resolve the allocation issues (the "Allocation Litigation") was ordered by the US Court by an Order dated April 3, 2013 [D.I. 9947] (as supplemented by further orders) and directed by endorsements of the Canadian Court dated March 8, 2013 and April 3, 2013.[9]

WHEREAS, after extensive fact and expert discovery, on May 12, 2014, the parties commenced a trial (the "Allocation Trial") before the US Court and the Canadian Court (collectively, the "Courts"). The evidentiary portion of the Allocation Trial concluded on June 24, 2014.

WHEREAS, at the request of the Monitor in the Memorandum of the Monitor Regarding Bondholder Claims Issues, dated June 19, 2014 [D.I. 13880] (the "Monitor's Request"), and purportedly in connection with the Allocation Trial, on June 30, 2014, the Courts issued an order directing briefing and argument (the "PPI Dispute") on two issues relating to post-petition interest ("PPI") on the Guaranteed Bonds:

i)    whether the holders of the Guaranteed Bonds are legally entitled in each jurisdiction to claim or receive any amounts under the relevant indentures above and beyond the outstanding principal debt and pre-petition interest (namely, above and beyond US $[4.092] billion); and

ii)   if determined that the holders of the Guaranteed Bonds are so entitled, what additional amounts are such holders entitled to so claim and receive.

WHEREAS, on July 15, 2014, certain of the parties to the Allocation Litigation exchanged opening briefs with respect to the PPI Dispute. The briefs advance the parties' divergent and competing positions regarding the PPI Dispute. Depending on the resolution of the PPI Dispute, distributions to the U.S. Debtors' creditors could be materially different.

WHEREAS, the PPI Dispute requires the determination of separate and distinct legal issues in the United States (the "US PPI Dispute") and Canada (the "Canada PPI Dispute"), and must thus be decided independently in each jurisdiction. The PPI Settlement Agreement relates solely to the US PPI Dispute.

WHEREAS, the Parties all acknowledge and agree that the entry into any settlement of the US PPI Dispute shall not be deemed an acknowledgement or acceptance of the position of any party to the US PPI Dispute, the Canada PPI Dispute or the Allocation Litigation. The Parties also acknowledge and agree that the ultimate outcome of the US PPI Dispute is uncertain, that appeals in respect of such litigation are likely, that the cost of such litigation is both substantial and burdensome on each of the Parties and that such cost will continue to increase absent a final and binding resolution of the US PPI Dispute. The approval of the PPI Settlement

---

[9]    *See* Exhibits C and D to Notice of Filing of Items Designated for Record on Appeal dated May 1, 2013 [D.I. 10414].

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

Agreement should end a contentious and costly litigation regarding the entitlement of Bondholders to PPI, resolving an issue which could have significantly delayed both the confirmation of the US Debtors' chapter 11 plan(s) and the ultimate distribution of plan proceeds to the US Debtors' creditors, as well as expedite the administration of the US Debtors' estates generally. As a result of the compromises embodied in this PPI Settlement Agreement, the US Debtors have substantially reduced the potential size of the PPI claim of the Bondholders and have mitigated the risk to their unsecured creditors of a costly and protracted appeals process that would no doubt have followed any judicial determination of the US PPI Dispute, thereby preserving significant value for all of the US Debtors' stakeholders.

NOW THEREFORE, IN LIGHT OF THE FOREGOING RECITALS, AND FOR GOOD AND VALUABLE CONSIDERATION, THE VALUE OF WHICH IS HEREBY AGREED, THE PARTIES HEREBY FURTHER AGREE, SUBJECT TO THE SATISFACTION OF ALL CONDITIONS SET FORTH HEREIN THAT:

## 1.   INTERPRETATION

1.1.   The Recitals set forth above form an integral part of this PPI Settlement Agreement and are incorporated fully herein.

## 2.   PPI SETTLEMENT

2.1.   Subject to Section 4.3, in the event that NNI at any time has more than sufficient funds to pay all of its allowed administrative and prepetition claims in full, holders of NNI Indenture Notes shall be entitled to payment from NNI of PPI in the PPI Settlement Amount and shall be paid PPI from such funds (together with any other creditors of the Nortel Parties entitled to payments of PPI) until the PPI Settlement Amount, taking into account PPI payments made by NNCC to holders of the 7.875% Notes in accordance with Section 2.2 hereof, is paid in full.

2.2.   Subject to Section 4.3, in the event that NNCC at any time has more than sufficient funds to pay all of its allowed administrative and prepetition claims in full, holders of 7.875% Notes shall be entitled to payment from NNCC of PPI in the PPI Settlement Amount and shall be paid PPI from such funds (together with any other creditors of the Nortel Parties entitled to payments of PPI) until the PPI Settlement Amount, taking into account PPI payments made by NNI to holders of NNI Indenture Notes in accordance with Section 2.1 hereof, is paid in full.

2.3.   The "PPI Settlement Amount" shall be an amount equal to 55% of the aggregate amount of accrued PPI in respect of the Guaranteed Bonds from the Filing Date up to and including the date or dates of distribution (the "Total PPI Amount") either to or for the benefit of the holders of the Guaranteed Bonds.

2.3.1. The Total PPI Amount shall be calculated in accordance with the applicable indentures and using the contract rate of PPI set forth in the applicable indentures for each of the Guaranteed Bonds (the "<u>Contract Rate</u>").

2.3.2. By way of example, if the Total PPI Amount as of June 30, 2014 was $1.65 billion, and June 30, 2014 was the date on which all amounts were distributed by the Nortel Parties, the PPI Settlement Amount would have been $907.5 million on such date. The Parties agree that the foregoing is for illustrative purposes only and is not binding on any Party nor to be used for any other purpose under this PPI Settlement Agreement or otherwise.

2.3.3. The different series of Guaranteed Bonds provide creditors with specific and varying contractual entitlements, including, without limitation, entitlement to make-whole payments, no-call rights, the method of calculating any post-petition amount or rate (except as expressly provided herein), etc. (those features being referred to collectively herein as "contractual entitlements"). Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any such contractual entitlements, other than PPI to the extent provided herein. All such contractual entitlements are expressly reserved by the Supporting Bondholders and the Indenture Trustees. To the extent that any Bondholder is determined to be entitled to any contractual entitlement against a Nortel Party (whether by order of the US Court or a settlement or plan approved by the US Court) the amount of such contractual entitlement shall be included in, and not an addition to, the PPI Settlement Amount as determined in accordance with the applicable provisions of this Section 2.

## 3.    RESOLUTION OF US PPI DISPUTE AND GUARANTEED BOND CLAIMS

3.1.    The PPI Settlement Agreement is intended to be a full and final settlement of (i) the US PPI Dispute with respect to the Monitor's Request currently pending before the US Court and (ii) the allowed claims for outstanding principal obligations and accrued prepetition interest obligations (each as set forth on <u>Schedule A</u> hereto), and entitlement to PPI (calculated pursuant to Sections 2.1 and 2.2 herein) arising under the Guaranteed Bonds. Nothing in this PPI Settlement Agreement is or shall be deemed to be a settlement of the Canada PPI Dispute or any part thereof or otherwise a settlement of any claim of any Bondholder against any of the Canadian Debtors' estates.

## 4.    RESERVATION OF RIGHTS

4.1.    Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge (in whole or in part) of (i) any right of any Party to assert or defend against any allocation position or advance or defend against any arguments as to entitlement to Sale Proceeds in the Allocation Litigation, including in connection with any appeal(s) of any court ruling made in connection with the Allocation Litigation; or (ii) any claim, right or entitlement of any Party to Sale Proceeds in the Allocation Litigation.

4.2.    Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge (in whole or in part) of the ability of unsecured creditors of the US Debtors' estates (other than the Bondholders) to assert a claim for PPI with respect to the US Debtors' estates at the contract rate (if any) applicable to such creditor's claims; provided, however, that if there are insufficient funds available to pay PPI to all unsecured creditors of the US Debtors' estates due such amounts, then, solely for purposes of determining any allocation of available PPI among such creditors, the holders of the Guaranteed Bonds shall be deemed to have a claim for PPI equal to the amount of post-petition interest that would have accrued at the applicable Contract Rate. Further, this PPI Settlement Agreement does not settle the manner in which any funds available for distribution shall be allocated among the creditors of NNI in the event that less than the full amount of PPI can be paid to all creditors owed such amounts and such application shall be determined by later agreement of the parties whether as part of the chapter 11 plan of the US Debtors in the chapter 11 cases or by subsequent agreement among the relevant affected creditors.

4.3.    For the avoidance of any doubt, nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any rights created under this PPI Settlement Agreement, any claim of any Party to enforce such rights, or a release of any claims for facts or events occurring or actions taken after the date of this PPI Settlement Agreement, nor shall this PPI Settlement Agreement be used, referred to or contended by any Party to have any relevance or probative value in connection with any claims not released herein.

## 5.    **EFFECTIVENESS**

5.1.    The agreements, acknowledgments and obligations contained herein (other than the obligations contained in Section 5.3 hereof) are expressly contingent upon, and shall become effective only upon the occurrence of all of the conditions to effectiveness below in this Section 5 (the "Effective Date").

5.2.    Approval of the Nortel Parties' entry into and performance under this PPI Settlement Agreement by an order of the US Court in the US Proceedings, in the form attached as Schedule B hereto (the "Approval Order"), is a condition precedent to the effectiveness of this PPI Settlement Agreement. In the event that the US Court does not enter the Approval Order by [____], any Supporting Bondholder and/or Indenture Trustee may, in their sole discretion, terminate the PPI Settlement Agreement as to such Supporting Bondholder and/or Indenture Trustee.

5.3.    The Nortel Parties will move promptly for, and use their commercially reasonable best efforts to obtain, approval of this PPI Settlement Agreement under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (respectively, "Rule 9019(a)," and the "Bankruptcy Rules"). The other Parties agree to use their commercially reasonable best efforts to support the Nortel Parties in obtaining US Court approval of this PPI Settlement Agreement.

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

6.    **BINDING EFFECT OF PPI SETTLEMENT AGREEMENT.**

6.1.    Upon effectiveness, this PPI Settlement Agreement and the Approval Order shall be binding upon the Parties to this PPI Settlement Agreement and the Bondholders and any successors or assigns of the Parties.

6.2.    Each Supporting Bondholder represents and warrants, severally and not jointly, that, as of the date hereof, such Supporting Bondholder is the legal owner, beneficial owner and/or holder of investment and voting authority over, the aggregate amount of obligations outstanding under the Guaranteed Bonds as set forth on its signature pages hereto.

6.3.    A Supporting Bondholder may (i) sell, transfer, assign, pledge, grant a participation interest in, or otherwise dispose of, directly or indirectly, its right, title, or interest in respect of any of such Supporting Bondholder's interest in a Guaranteed Bond, in whole or in part, or (ii) grant any proxies, deposit any of such Supporting Bondholder's interests in a Guaranteed Bond, into a voting trust, or enter into a voting agreement with respect to any such interest (collectively, the actions described in clauses (i) and (ii), a "Transfer"), *provided* that until the earlier of (i) the US Court's entry of the Approval Order or termination of this PPI Settlement Agreement as permitted pursuant to Section 5.2 hereof, the transferee thereof agrees in writing to be bound by the terms of this PPI Settlement Agreement.

7.    **MISCELLANEOUS**

7.1.    **Acknowledgements.**  Each Party acknowledges that that this PPI Settlement Agreement is not, and shall not be deemed to be, a solicitation of a vote for the acceptance of the Plan pursuant to section 1125 of the Bankruptcy Code.

7.2.    **Confidentiality.**  Unless otherwise agreed by the Parties, the substance and existence of this PPI Settlement Agreement shall be kept strictly confidential until the filing of a motion with the US Court to seek approval of this PPI Settlement Agreement.

7.3.    **Further Assurances.**  The Parties will cooperate in good faith to effectuate the terms of this PPI Settlement Agreement, including working in good faith to obtain the necessary court approvals. No Party shall take any action with the purpose or effect of evading the terms of this PPI Settlement Agreement.

7.4.    **Governing Law.**  This PPI Settlement Agreement shall be governed and construed in accordance with the laws of the State of New York without giving effect to the conflict of laws principles thereof.

7.5.　**Integration**.  This PPI Settlement Agreement constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof. This PPI Settlement Agreement may not be amended, supplemented or modified except by a written instrument executed by each of the Parties to this PPI Settlement Agreement.

7.6.　**Jurisdiction**.  The Parties agree to the exclusive jurisdiction of the US Court and the United States District Court for the District of Delaware in respect of any dispute arising out of or in connection with this PPI Settlement Agreement or its subject matter or formation.

7.7.　**Manner of Execution**.  The Parties may execute this PPI Settlement Agreement in counterparts, each of which shall be an original, and all executed counterparts shall collectively be deemed to be one and the same instrument. Facsimile or pdf signatures shall be deemed original signatures, and the Parties may exchange signature pages via mail, courier, facsimile or email.

7.8.　**No Admissions**.  This PPI Settlement Agreement shall in no event be construed as or be deemed to be evidence of an admission or concession on the part of any Party of any claim or fault or liability or damages whatsoever. Each of the Parties denies any and all wrongdoing or liability of any kind and does not concede any infirmity in the claims or defenses which it has asserted or could assert. No Party shall have, by reason of this PPI Settlement Agreement, a fiduciary relationship in respect of any other Party or any person or entity, and nothing in this PPI Settlement Agreement, expressed or implied, is intended to or shall be so construed as to impose upon any Party any obligations in respect of this PPI Settlement Agreement except as expressly set forth herein. This PPI Settlement Agreement are part of a proposed settlement of a dispute among the Parties. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this PPI Settlement Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding involving enforcement of the terms of this PPI Settlement Agreement.

7.9.　**No Third-Party Beneficiaries**.  This PPI Settlement Agreement is not intended to, and shall not, create rights in any person or entity not a Party hereto.

7.10.　**Non-Effectiveness**.  In the event this PPI Settlement Agreement does not become effective, the Parties reserve all of their rights and defenses with respect to the US PPI Dispute resolved by this PPI Settlement Agreement and this proposed settlement shall not constitute an admission by any Party regarding the validity of the claims or defenses resolved by this PPI Settlement Agreement or that they have any liability in connection with such claims or defenses.

7.11.　**Non-Severability**.  Each of the provisions of this PPI Settlement Agreement is an integrated, essential and non-severable part of this PPI Settlement Agreement.

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

7.12.  **Sophisticated Party**. Each Party represents and warrants that it has participated in preparation of this PPI Settlement Agreement and has been represented by sophisticated and experienced counsel in so doing. In any construction of this PPI Settlement Agreement, the PPI Settlement Agreement shall not be construed for or against any Party, but the same shall be construed fairly according to its plain meaning.

7.13.  **Representative Capacity**. Each person executing this PPI Settlement Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

7.14.  **Simultaneous Occurrence**. All material acts provided hereunder that are to occur on the Effective Date are deemed to occur simultaneously.

7.15.  **Successors and Assigns**. This PPI Settlement Agreement shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns.

*[Signature Pages to Follow]*

Confidential

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Settlement Agreement.

**NORTEL NETWORKS INC.**

By: _____
Name: John Ray
Title: Principal Officer

**NORTEL NETWORKS CAPITAL CORPORATION**

By: _____
Name: John Ray
Title: Principal Officer

BHG-PPI-0000143

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

**Aggregate Face Amounts Beneficially Owned
or Managed on Account of:**

10.75% Notes:  $_____
10.125% Notes:  $_____
Floating Rate Notes:  $_____
2.125% Notes:  $_____
1.75% Notes:  $_____
7.875% Notes:  $_____

Name of Institution:

_____

By  _____
    Name:
    Title:

For bondholders requiring a second signature
    line:

By  _____
    Name:
    Title:

BHG-PPI-0000144

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

## SCHEDULE A

**[list of prepetition claim amounts to be added]**

Confidential

BHG-PPI-0000145

## <u>SCHEDULE B</u>

**[form of order to be added]**

BHG-PPI-0000146

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------ X
                         :

*In re*                       :      Chapter 11
                         :

Nortel Networks Inc., *et al.*[10]   :      Case No. 09-10138 (KG)
                         :

             Debtors.   :      Jointly Administered
                         :

                         :      **Hearing Date:  [TBD]**
                         :      **Objections Due:  [TBD]**
------------------------------------------------ X

**ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG NORTEL
NETWORKS INC., NORTEL NETWORKS CAPITAL CORPORATION, THE
SUPPORTING BONDHOLDERS, LAW DEBENTURE TRUST COMPANY OF NEW
YORK, AND THE BANK OF NEW YORK MELLON WITH  RESPECT TO POST-
PETITION INTEREST ISSUES**

**[to be inserted]**

---

[10]     The debtors in these chapter 11 cases, along with the last four digits of each US Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

#4836-5497-6284

                                 BHG-PPI-0000147

**<u>EXHIBIT 7</u>**

**EXHIBIT**

**119**

| From: | Matz, Tom <TMatz@milbank.com> |
|---|---|
| Sent: | Thursday, July 17, 2014 11:26 AM |
| To: | Schweitzer, Lisa M. <lschweitzer@cgsh.com> |
| Cc: | Dunne, Dennis <DDunne@milbank.com>; Pisa, Albert A. <APisa@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Kreller, Tom <TKreller@milbank.com> |
| Subject: | NORTEL: US PPI Settlement Agreement |
| Attach: | Nortel US PPI Settlement Agreement (4836-5497-6284-6).docx |

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

Lisa,

Further to our discussions on Tuesday, attached is a draft settlement agreement regarding PPI. This draft agreement is subject to ongoing client and internal review but in the interests of time, we wanted to get it to you for your review and consideration.

We would be pleased to continue our discussions this afternoon.

Tom

---

**Thomas J. Matz | Milbank**
One Chase Manhattan Plaza | New York, NY 10005
P: +1 212.530.5885 | F: +1 212 822.5885
tmatz@milbank.com | www.milbank.com

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/17/2014

## AGREEMENT SETTLING THE US POST-PETITION INTEREST DISPUTE

This agreement (the "PPI Settlement Agreement") is entered into by and among Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation ("NNCC" and, together with NNI, the "Nortel Parties"), the bondholders who are signatories hereto (each a "Supporting Bondholder" and, collectively, the "Supporting Bondholders") holding Guaranteed Bonds (defined *infra*), Law Debenture Trust Company of New York, as indenture trustee ( "Law Debenture"), and The Bank of New York Mellon, as indenture trustee ("BNY" and, with the Law Debenture, the "Indenture Trustees,") (with the Nortel Parties, the Supporting Bondholders, and Indenture Trustees each being a "Party" and collectively, the "Parties").

### RECITALS

WHEREAS, on January 14, 2009 (the "Filing Date"), NNI, NNCC, and certain of their United States affiliates (the "US Debtors") other than Nortel Networks (CALA) Inc. ("NN CALA")[1] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") (together with the NN CALA Case, the "US Proceedings") before the United States Bankruptcy Court for the District of Delaware (the "US Court"). On January 22, 2009, the Office of the United States Trustee for the District of Delaware appointed the official committee of unsecured creditors in respect of the US Debtors.

WHEREAS, on the Filing Date, the US Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL, and certain of NNC's and NNL's Canadian affiliates commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and "CCAA"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor").

WHEREAS, prior to the Filing Date, the US Debtors, the EMEA Debtors,[2] the Canadian Debtors (collectively, the "Nortel Debtors"), and certain of their non-debtor affiliates around the world were part of the Nortel group of companies (the "Nortel Group"), of which NNC was the ultimate corporate parent.

---

[1]     NN CALA filed its voluntary petition for protection under chapter 11 of the Bankruptcy Code on July 14, 2009 (the "NN CALA Case") [D.I. 1098].

[2]     The EMEA Debtors are: Nortel Networks U.K. Ltd., Nortel Networks S.A. ("NNSA"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

WHEREAS, pursuant to the Indenture dated as of July 5, 2006 (the "2006 Indenture"),[3] NNL issued multiple series of senior notes guaranteed by NNC and NNI, including two series of fixed rate 10.75% senior notes in the aggregate principal amounts of $450 million and $675 million due 2016 (together, the "10.75% Notes"), a series of fixed rate 10.125% senior notes in the aggregate principal amount of $550 million due 2013 (the "10.125% Notes"), and a series of floating rate senior notes in the aggregate principal amount of $1 billion due 2011 (the "Floating Rate Notes" and, together with the 10.75% Notes and the 10.125% Notes, the "2006 Indenture Notes").

WHEREAS, on September 25, 2009, The Bank of New York Mellon, under the 2006 Indenture, filed a timely proof of claim on behalf of the holders of the 2006 Indenture Notes preserving, among others, their claim for "an unliquidated amount for the continuing post-petition (a) accrual of interest (including interest upon the overdue installments of interest)..."[4]

WHEREAS, as provided in Section 1001 of the 2006 Indenture, "[t]he Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities of such series in accordance with their terms and this Indenture." The 2006 Supplemental Indentures establish the applicable rate of interest for each series of 2006 Indenture Notes. Moreover, Section 312 of the 2006 Indenture provides for interest payable to noteholders and that interest not punctually paid on the interest payment date constitutes defaulted interest.

WHEREAS, pursuant to the Indenture dated as of March 28, 2007 (the "2007 Indenture"), NNC issued 2.125% convertible senior notes due 2014 (the "2.125% Notes") in an aggregate principal amount of $575 million and 1.75% convertible senior notes due 2012 (the "1.75% Notes" and, together with the 2.125% Notes, the "2007 Indenture Notes") in an aggregate principal amount of $575 million. The 2007 Indenture Notes are each guaranteed by NNI and NNL.

WHEREAS, on September 25, 2009, The Bank of New York Mellon, under the 2007 Indenture, filed a timely proof of claim on behalf of the holders of the 2007 Indenture Notes for, among others, "a claim in an unliquidated amount for the continuing post-petition (a) accrual of interest (including interest upon the overdue installments of interest). . . ."[5]

WHEREAS, pursuant to Section 4.01 of the 2007 Indenture, "[t]he Issuer shall pay the principal of and interest (including Additional Interest, if any) on the Notes on the dates and in the manner provided in the Notes . . . . To the extent lawful, the Issuer shall pay interest (including post-petition interest in any proceeding under any bankruptcy, insolvency or other similar applicable law) on (i) overdue principal, at the rate borne by Notes; and (ii) overdue installments of interest (without regard to any applicable grace period) at the same rate."

---

[3]    Supplemented by the First Supplemental Indenture, dated July 5, 2006, the Second Supplemental Indenture dated May 1, 2007, and the Third Supplemental Indenture dated May 28, 2008 (collectively the "2006 Supplemental Indentures").

[4]    *See* TR40041, Attachment to Proof of Claim ¶ 8.

[5]    *See* TR40042, Attachment to Proof of Claim ¶ 8.

Confidential                                                    BHG-PPI-0000155

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*

Additionally, pursuant to Section 2.11 of the 2007 Indenture, "[i]f the Issuer (and the Guarantors) fail to make a payment of interest on the Notes, it (and the Guarantors) shall pay such defaulted interest plus, to the extent lawful, any interest payable on the defaulted interest." The 2007 Indenture establishes the applicable rate of interest for each series of 2007 Indenture Notes.

WHEREAS, pursuant to the Indenture dated as of February 15, 1996 (the "1996 Indenture"), NNCC issued a series of fixed rate 7.875% senior notes guaranteed by NNL in an aggregate principal amount of $150 million due 2026 (the "7.875% Notes" and, with the 2006 Indenture Notes and the 2007 Indenture Notes, the "Guaranteed Bonds").[6]

WHEREAS, on September 28, 2009, the Law Debenture Trust Company of New York filed a timely proof of claim on behalf of the holders of the 7.875% Notes preserving, among others, their claim for "payment in full of all post-petition interest due and payable under the [1996] Indenture."[7]

WHEREAS, pursuant to Section 1001 of the 1996 Indenture, "[t]he applicable Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities in accordance with their terms and this Indenture." The 1996 Indenture established the applicable rate of interest for the 1996 Indenture Notes.

WHEREAS, after the Filing Date, the Nortel Debtors agreed to pursue an orderly and coordinated sale of the Nortel Group's businesses and assets. The various Nortel estates further agreed that all sale proceeds would be held in escrow accounts corresponding to each sale transaction, pending later agreement by the parties on allocation or a litigated resolution of any allocation dispute. This agreement among the US Debtors, the Canadian Debtors and certain of the EMEA Debtors was memorialized in the Interim Funding and Settlement Agreement, dated as of June 9, 2009 (the "IFSA").[8]  Following a joint hearing on June 29, 2009, the IFSA was approved by each of the US Court [D.I. 993] and the Canadian Court.

WHEREAS, from 2009 to 2011, the Nortel Debtors conducted a series of court-approved sale transactions that generated approximately $7.5 billion in sale proceeds (together with accrued interest, the "Sale Proceeds"). Each Nortel Group entity that satisfied the definition of "Nortel Seller" (as defined in the IFSA) was entitled to participate in the distribution of the Sale Proceeds.

WHEREAS, after three failed mediation attempts regarding the allocation of the Sale Proceeds among the Nortel Sellers, litigation to resolve the allocation issues (the "Allocation Litigation") was ordered by the US Court by an Order dated April 3, 2013 [D.I. 9947] (as

---

[6]  All holders of the Guaranteed Bonds are collectively defined as "Bondholders".

[7]  *See* TR43729 at LDTCNY0000282.

[8]  *See* Exhibit B to the Motion Pursuant to 11 U.S.C. § 105(a), § 363, § 503 and Fed. R. Bankr. P. 9019 for an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 874].

supplemented by further orders) and directed by endorsements of the Canadian Court dated March 8, 2013 and April 3, 2013.[9]

WHEREAS, after extensive fact and expert discovery, on May 12, 2014, the parties commenced a trial (the "Allocation Trial") before the US Court and the Canadian Court (collectively, the "Courts"). The evidentiary portion of the Allocation Trial concluded on June 24, 2014.

WHEREAS, at the request of the Monitor in the Memorandum of the Monitor Regarding Bondholder Claims Issues, dated June 19, 2014 [D.I. 13880] (the "Monitor's Request"), and purportedly in connection with the Allocation Trial, on June 30, 2014, the Courts issued an order directing briefing and argument (the "PPI Dispute") on two issues relating to post-petition interest ("PPI") on the Guaranteed Bonds:

i)      whether the holders of the Guaranteed Bonds are legally entitled in each jurisdiction to claim or receive any amounts under the relevant indentures above and beyond the outstanding principal debt and pre-petition interest (namely, above and beyond US $[4.092] billion); and

ii)     if determined that the holders of the Guaranteed Bonds are so entitled, what additional amounts are such holders entitled to so claim and receive.

WHEREAS, on July 15, 2014, certain of the parties to the Allocation Litigation exchanged opening briefs with respect to the PPI Dispute. The briefs advance the parties' divergent and competing positions regarding the PPI Dispute. Depending on the resolution of the PPI Dispute, distributions to the U.S. Debtors' creditors could be materially different.

WHEREAS, the PPI Dispute requires the determination of separate and distinct legal issues in the United States (the "US PPI Dispute") and Canada (the "Canada PPI Dispute"), and must thus be decided independently in each jurisdiction. The PPI Settlement Agreement relates solely to the US PPI Dispute.

WHEREAS, the Parties all acknowledge and agree that the entry into any settlement of the US PPI Dispute shall not be deemed an acknowledgement or acceptance of the position of any party to the US PPI Dispute, the Canada PPI Dispute or the Allocation Litigation. The Parties also acknowledge and agree that the ultimate outcome of the US PPI Dispute is uncertain, that appeals in respect of such litigation are likely, that the cost of such litigation is both substantial and burdensome on each of the Parties and that such cost will continue to increase absent a final and binding resolution of the US PPI Dispute. The approval of the PPI Settlement Agreement should end a contentious and costly litigation regarding the entitlement of Bondholders to PPI, resolving an issue which could have significantly delayed both the confirmation of the US Debtors' chapter 11 plan(s) and the ultimate distribution of plan proceeds to the US Debtors' creditors, as well as expedite the administration of the US Debtors' estates generally. As a result of the compromises embodied in this PPI Settlement Agreement, the US

---

[9]     *See* Exhibits C and D to Notice of Filing of Items Designated for Record on Appeal dated May 1, 2013 [D.I. 10414].

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*

Debtors have substantially reduced the potential size of the PPI claim of the Bondholders and have mitigated the risk to their unsecured creditors of a costly and protracted appeals process that would no doubt have followed any judicial determination of the US PPI Dispute, thereby preserving significant value for all of the US Debtors' stakeholders.

NOW THEREFORE, IN LIGHT OF THE FOREGOING RECITALS, AND FOR GOOD AND VALUABLE CONSIDERATION, THE VALUE OF WHICH IS HEREBY AGREED, THE PARTIES HEREBY FURTHER AGREE, SUBJECT TO THE SATISFACTION OF ALL CONDITIONS SET FORTH HEREIN THAT:

1.    **INTERPRETATION**

1.1.    The Recitals set forth above form an integral part of this PPI Settlement Agreement and are incorporated fully herein.

2.    **PPI SETTLEMENT**

2.1.    Subject to Section 4.3, in the event that NNI at any time has more than sufficient funds to pay all of its allowed administrative and prepetition claims in full, holders of Guaranteed Bonds shall be entitled to payment from the Nortel Parties of PPI in the PPI Settlement Amount and shall be paid PPI from such funds (together with any other creditors of the Nortel Parties entitled to payments of PPI) until the PPI Settlement Amount is paid in full.

2.2.    The "PPI Settlement Amount" shall be an amount up to [60]% of the aggregate amount of accrued PPI in respect of the Guaranteed Bonds from the Filing Date up to and including the date or dates of distribution (the "Total PPI Amount") either to or for the benefit of the holders of the Guaranteed Bonds.

    2.2.1.    The Total PPI Amount shall be calculated using the contract rate of PPI set forth in the applicable indentures for each of the Guaranteed Bonds (the "Contract Rate").

    2.2.2.    By way of example, and for the avoidance of doubt, the Total PPI Amount as of June 30, 2014 was [$1.65 billion]. If June 30, 2014 had been the date of distribution, the PPI Settlement Amount would have been [$990 million].

3.    **RESOLUTION OF US PPI DISPUTE AND GUARANTEED BOND CLAIMS**

3.1.    The PPI Settlement Agreement is intended to be a full and final settlement of (i) the US PPI Dispute with respect to the Monitor's Request currently pending before the US Court and (ii) the allowed claims for outstanding principal obligations and accrued prepetition interest obligations (each as set forth on Schedule A hereto), and entitlement to PPI (calculated pursuant to Sections 2.1 and 2.2 herein) arising under the Guaranteed Bonds. Nothing in this PPI Settlement Agreement is or shall be deemed to be a settlement of the Canada PPI Dispute or any part thereof or otherwise a settlement of any claim of any Bondholder against any of the Canadian Debtors' estates.

5#4836-5497-6284v2

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*

**4.    RESERVATION OF RIGHTS**

4.1.    Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge (in whole or in part) of (i) any right of any Party to assert or defend against any allocation position or advance or defend against any arguments as to entitlement to Sale Proceeds in the Allocation Litigation, including in connection with any appeal(s) of any court ruling made in connection with the Allocation Litigation; or (ii) any claim, right or entitlement of any Party to Sale Proceeds in the Allocation Litigation.

4.2.    The different series of Guaranteed Bonds provide creditors with specific and varying contractual entitlements, including, without limitation, entitlement to make-whole payments, no-call rights, the method of calculating any post-petition amount or rate (except as expressly provided herein), etc. (those features being referred to collectively herein as "contractual entitlements"). Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any such contractual entitlements, other than PPI to the extent provided herein. All such contractual entitlements are expressly reserved by the Supporting Bondholders and the Indenture Trustees.

4.3.    Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge (in whole or in part) of the ability of unsecured creditors of the US Debtors' estates (other than the Bondholders) to assert a claim for PPI with respect to the US Debtors' estates at the contract rate (if any) applicable to such creditor's claims; provided, however, that if there are insufficient funds available to pay PPI to all unsecured creditors of the US Debtors' estates due such amounts, then, solely for purposes of determining any allocation of available PPI among such creditors, the holders of the Guaranteed Bonds shall be deemed to have a claim for PPI equal to the amount of post-petition interest that would have accrued at the applicable Contract Rate. Further, this PPI Settlement Agreement does not settle the manner in which any funds available for distribution shall be allocated among the creditors of NNI in the event that less than the full amount of PPI can be paid to all creditors owed such amounts and such application shall be determined by later agreement of the parties whether as part of the chapter 11 plan of the US Debtors in the chapter 11 cases or by subsequent agreement among the relevant affected creditors.

4.4.    For the avoidance of any doubt, nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any rights created under this PPI Settlement Agreement, any claim of any Party to enforce such rights, or a release of any claims for facts or events occurring or actions taken after the date of this PPI Settlement Agreement, nor shall this PPI Settlement Agreement be used, referred to or contended by any Party to have any relevance or probative value in connection with any claims not released herein.

**5.    EFFECTIVENESS**

5.1.    The agreements, acknowledgments and obligations contained herein (other than the obligations contained in Section 5.3 hereof) are expressly contingent upon, and shall become effective only upon the occurrence of all of the conditions to effectiveness below in this Section 5 (the "Effective Date").

6#4836-5497-6284v2

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*

5.2.    Approval of the Nortel Parties' entry into and performance under this PPI Settlement Agreement by an order of the US Court in the US Proceedings is a condition precedent to the effectiveness of this PPI Settlement Agreement.

5.3.    The Nortel Parties will move promptly for, and use their commercially reasonable best efforts to obtain, approval of this PPI Settlement Agreement under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (respectively, "Rule 9019(a)," and the "Bankruptcy Rules"). The other Parties agree to use their commercially reasonable best efforts to support the Nortel Parties in obtaining US Court approval of this PPI Settlement Agreement.

6.    **MISCELLANEOUS**

6.1.    **Acknowledgements**. Each Party acknowledges that that this PPI Settlement Agreement is not, and shall not be deemed to be, a solicitation of a vote for the acceptance of the Plan pursuant to section 1125 of the Bankruptcy Code.

6.2.    **Binding Effect**. This PPI Settlement Agreement and the order of the US Court approving the entry into and performance under this PPI Settlement Agreement shall be binding upon the Parties to this PPI Settlement Agreement and the Bondholders and any successors or assigns of the Parties.

6.3.    **Confidentiality**. Unless otherwise agreed by the Parties, the substance and existence of this PPI Settlement Agreement shall be kept strictly confidential until the filing of a motion with the US Court to seek approval of this PPI Settlement Agreement.

6.4.    **Further Assurances**. The Parties will cooperate in good faith to effectuate the terms of this PPI Settlement Agreement, including working in good faith to obtain the necessary court approvals. No Party shall take any action with the purpose or effect of evading the terms of this PPI Settlement Agreement.

6.5.    **Governing Law**. This PPI Settlement Agreement shall be governed and construed in accordance with the laws of the State of New York without giving effect to the conflict of laws principles thereof.

6.6.    **Integration**. This PPI Settlement Agreement constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof. This PPI Settlement Agreement may not be amended, supplemented or modified except by a written instrument executed by each of the Parties to this PPI Settlement Agreement.

6.7.    **Jurisdiction**. The Parties agree to the exclusive jurisdiction of the US Court and the United States District Court for the District of Delaware in respect of any dispute arising out of or in connection with this PPI Settlement Agreement or its subject matter or formation.

6.8.    **Manner of Execution**. The Parties may execute this PPI Settlement Agreement in counterparts, each of which shall be an original, and all executed counterparts shall

7#4836-5497-6284v2

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*

collectively be deemed to be one and the same instrument. Facsimile or pdf signatures shall be deemed original signatures, and the Parties may exchange signature pages via mail, courier, facsimile or email.

6.9. **No Admissions**. This PPI Settlement Agreement shall in no event be construed as or be deemed to be evidence of an admission or concession on the part of any Party of any claim or fault or liability or damages whatsoever. Each of the Parties denies any and all wrongdoing or liability of any kind and does not concede any infirmity in the claims or defenses which it has asserted or could assert. No Party shall have, by reason of this PPI Settlement Agreement, a fiduciary relationship in respect of any other Party or any person or entity, and nothing in this PPI Settlement Agreement, expressed or implied, is intended to or shall be so construed as to impose upon any Party any obligations in respect of this PPI Settlement Agreement except as expressly set forth herein. This PPI Settlement Agreement are part of a proposed settlement of a dispute among the Parties. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this PPI Settlement Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding involving enforcement of the terms of this PPI Settlement Agreement.

6.10. **No Third-Party Beneficiaries**. This PPI Settlement Agreement is not intended to, and shall not, create rights in any person or entity not a Party hereto.

6.11. **Non-Effectiveness**. In the event this PPI Settlement Agreement does not become effective, the Parties reserve all of their rights and defenses with respect to the US PPI Dispute resolved by this PPI Settlement Agreement and this proposed settlement shall not constitute an admission by any Party regarding the validity of the claims or defenses resolved by this PPI Settlement Agreement or that they have any liability in connection with such claims or defenses.

6.12. **Non-Severability**. Each of the provisions of this PPI Settlement Agreement is an integrated, essential and non-severable part of this PPI Settlement Agreement.

6.13. **Sophisticated Party**. Each Party represents and warrants that it has participated in preparation of this PPI Settlement Agreement and has been represented by sophisticated and experienced counsel in so doing. In any construction of this PPI Settlement Agreement, the PPI Settlement Agreement shall not be construed for or against any Party, but the same shall be construed fairly according to its plain meaning.

6.14. **Representative Capacity**. Each person executing this PPI Settlement Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

6.15. **Simultaneous Occurrence**. All material acts provided hereunder that are to occur on the Effective Date are deemed to occur simultaneously.

6.16. **Successors and Assigns**. This PPI Settlement Agreement shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns.

*[Signature Pages to Follow]*

8#4836-5497-6284v2

Confidential

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/17/2014

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Settlement Agreement.

**NORTEL NETWORKS INC.**

By: _____
Name: John Ray
Title: Principal Officer

**NORTEL NETWORKS CAPITAL CORPORATION**

By: _____
Name: John Ray
Title: Principal Officer

BHG-PPI-0000162

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*

**[Supporting Bondholder and Indenture Trustee signatures to be added at a later time]**

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/17/2014

## SCHEDULE A

[list of prepetition claim amounts to be added]

BHG-PPI-0000164

**EXHIBIT 8**

EXHIBIT

120

|   | A | B |
|---|---|---|
| 1 | In $M USD | |
| 2 | | |
| 3 | | |
| 4 | Region | |
| 5 | | |
| 6 | Canada | |
| 7 | CALA | |
| 8 | Asia PAC | |
| 9 | Greater China | |
| 10 | LG Nortel | |
| 11 | NNL Entities | |
| 12 | | |
| 13 | US | |
| 14 | NGS | |
| 15 | NNI Entities | |
| 16 | | |
| 17 | UK | |
| 18 | Europe | |
| 19 | EMEA | |
| 20 | | |
| 21 | | |
| 22 | Treasury Cash | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | CDMA - Ericsson* | |
| 27 | Enterprise - Avaya | |
| 28 | Packet Core - Hitachi | |
| 29 | Layer 4-7 - Radware | |
| 30 | MEN - Ciena* | |
| 31 | GSM - Ericsson & Kapsch* | |
| 32 | GSM CALA - Ericsson | |
| 33 | CVAS- Genband* | |
| 34 | MSS - Ericsson* | |
| 35 | IP - Rockstar | |
| 36 | Total Escrow Proceeds | |
| 37 | Cascading Directors D & O Trust | |
| 38 | Adjusted Gross Treasury Cash | |



EXHIBIT
Wertheim 5
10/22/14   MG

NNC-NNL-PPI000001

| | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **Cash Summary** | | | | | | | | | | | | | | |
| 2 | As of September 12, 2014 | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | |
| 4 | Filing Date 14-Jan-09 | Q4-10 | Q1-11 | Q2-11 | Q3-11 | Q4-11 | Q1-12 | Q2-11 | July-12 | 31-Aug | 14-Sep | 28-Sep | 12-Oct | 26-Oct | 09-Nov |
| 5 | | | | | | | | | | | | | | | |
| 6 | $159 | $564 | $541 | $629 | $553 | $558 | $536 | $530 | $525 | $541 | $539 | $541 | $538 | $536 | $534 |
| 7 | $43 | $146 | $147 | $144 | $142 | $134 | $42 | $41 | $40 | $42 | $42 | $42 | $42 | $43 | $42 |
| 8 | $150 | $288 | $279 | $279 | $252 | $225 | $159 | $141 | $141 | $145 | $142 | $146 | $145 | $145 | $143 |
| 9 | $253 | $275 | $263 | $300 | $270 | $250 | $253 | $225 | $221 | $220 | $220 | $222 | $222 | $221 | $205 |
| 10 | $297 | | | | | | | | | | | | | | |
| 11 | $903 | $1,273 | $1,229 | $1,352 | $1,216 | $1,167 | $989 | $937 | $927 | $949 | $944 | $951 | $948 | $945 | $925 |
| 12 | | | | | | | | | | | | | | | |
| 13 | $676 | $976 | $951 | $990 | $1,046 | $1,024 | | | | | | | | | |
| 14 | $44 | | | | | | | | | | | | | | |
| 15 | | | | | | | $1,143 | $1,115 | $1,113 | $1,122 | $1,120 | $1,113 | $1,111 | $1,111 | $1,106 |
| 16 | | | | | | | | | | | | | | | |
| 17 | $344 | $367 | $382 | $366 | $352 | $347 | $360 | $352 | $348 | $354 | $353 | $361 | $360 | $358 | $354 |
| 18 | $368 | $500 | $529 | $531 | $485 | $443 | $434 | $407 | $407 | $407 | $406 | $415 | $414 | $414 | $413 |
| 19 | $712 | $867 | $911 | $897 | $838 | $790 | $793 | $759 | $754 | $761 | $759 | $775 | $774 | $771 | $768 |
| 20 | | | | | | | | | | | | | | | |
| 21 | | | | | | | | | | | | | | | |
| 22 | $2,334 | $3,116 | $3,091 | $3,238 | $3,100 | $2,981 | $2,925 | $2,811 | $2,794 | $2,831 | $2,822 | $2,839 | $2,833 | $2,828 | $2,799 |
| 23 | | | | | | | | | | | | | | | |
| 24 | | | | | | | | | | | | | | | |
| 25 | | | | | | | | | | | | | | | |
| 26 | | $ 1,055 | $ 1,055 | $ 1,055 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 |
| 27 | | $ 920 | $ 920 | $ 920 | $ 857 | $ 857 | $ 857 | $ 857 | $ 857 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 |
| 28 | | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 |
| 29 | | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 |
| 30 | | $ 659 | $ 659 | $ 659 | $ 647 | $ 647 | $ 647 | $ 647 | $ 647 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 |
| 31 | | $ 111 | $ 111 | $ 111 | $ 110 | $ 113 | $ 113 | $ 113 | $ 113 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 |
| 32 | | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 |
| 33 | | $ 182 | $ 182 | $ 182 | $ 147 | $ 146 | $ 146 | $ 146 | $ 146 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 |
| 34 | | | $ 54 | $ 54 | $ 47 | $ 47 | $ 47 | $ 47 | $ 47 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 |
| 35 | | | | | $ 4,470 | $ 4,455 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 |
| 36 | | $ 2,957 | $ 3,012 | $ 3,012 | $ 7,361 | $ 7,348 | $ 7,346 | $ 7,346 | $ 7,346 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 |
| 37 | | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 |
| 38 | | $ 6,108 | $ 6,138 | $ 6,285 | $ 10,495 | $ 10,364 | $ 10,307 | $ 10,192 | $ 10,176 | $ 10,168 | $ 10,159 | $ 10,176 | $ 10,169 | $ 10,164 | $ 10,135 |

NNC-NM␣␣I000002

| | R | S | T | U | V | W | X | Y | Z | AA | AB | AC | AD | AE | AF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | |
| 4 | 30-Nov | 14-Dec | 31-Dec | 11-Jan | 25-Jan | 08-Feb | 22-Feb | 15-Mar | 29-Mar | 12-Apr | 26-Apr | 17-May | 31-May | 14-Jun | 28-Jun |
| 5 | | | | | | | | | | | | | | | |
| 6 | $551 | $536 | $532 | $531 | $529 | $523 | $521 | $514 | $513 | $511 | $515 | $513 | $508 | $500 | $507 |
| 7 | $42 | $42 | $42 | $42 | $42 | $42 | $42 | $41 | $41 | $41 | $41 | $40 | $39 | $39 | $38 |
| 8 | $139 | $138 | $136 | $136 | $136 | $138 | $130 | $130 | $130 | $131 | $129 | $132 | $129 | $129 | $125 |
| 9 | $203 | $219 | $211 | $211 | $210 | $208 | $208 | $208 | $208 | $209 | $208 | $209 | $210 | $210 | $203 |
| 10 | | | | | | | | | | | | | | | |
| 11 | $935 | $936 | $922 | $920 | $917 | $911 | $901 | $893 | $892 | $892 | $894 | $894 | $886 | $877 | $872 |
| 12 | | | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | | | |
| 15 | $1,102 | $1,099 | $1,094 | $1,091 | $1,089 | $1,082 | $1,125 | $1,122 | $1,105 | $1,085 | $1,077 | $1,070 | $1,000 | $995 | $982 |
| 16 | | | | | | | | | | | | | | | |
| 17 | $351 | $350 | $351 | $351 | $350 | $341 | $340 | $325 | $323 | $323 | $323 | $328 | $322 | $318 | $317 |
| 18 | $407 | $405 | $409 | $408 | $406 | $411 | $410 | $397 | $394 | $390 | $390 | $390 | $387 | $387 | $387 |
| 19 | $757 | $755 | $760 | $759 | $756 | $752 | $750 | $722 | $717 | $713 | $712 | $718 | $709 | $705 | $705 |
| 20 | | | | | | | | | | | | | | | |
| 21 | | | | | | | | | | | | | | | |
| 22 | $2,795 | $2,789 | $2,776 | $2,770 | $2,762 | $2,746 | $2,776 | $2,737 | $2,715 | $2,689 | $2,684 | $2,682 | $2,595 | $2,577 | $2,559 |
| 23 | | | | | | | | | | | | | | | |
| 24 | | | | | | | | | | | | | | | |
| 25 | | | | | | | | | | | | | | | |
| 26 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 |
| 27 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 |
| 28 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 |
| 29 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 |
| 30 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 |
| 31 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 |
| 32 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 |
| 33 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 |
| 34 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 |
| 35 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,455 | $ 4,455 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 |
| 36 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 |
| 37 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 |
| 38 | $ 10,132 | $ 10,126 | $ 10,121 | $ 10,106 | $ 10,099 | $ 10,082 | $ 10,113 | $ 10,073 | $ 10,051 | $ 10,027 | $ 10,021 | $ 10,020 | $ 9,932 | $ 9,914 | $ 9,896 |

NNC-NNL-PPI000003

| | AG | AH | AI | AJ | AK | AL | AM | AN | AO | AP | AQ | AR | AS | AT | AU | AV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | | |
| 4 | 12-Jul | 26-Jul | 09-Aug | 30-Aug | 13-Sep | 27-Sep | 11-Oct | 25-Oct | 08-Nov | 29-Nov | 13-Dec | 31-Dec | 17-Jan | 31-Jan | 14-Feb | 28-Feb |
| 5 | | | | | | | | | | | | | | | | |
| 6 | $503 | $501 | $499 | $490 | $487 | $479 | $474 | $471 | $465 | $450 | $441 | $436 | $497 | $486 | $479 | $480 |
| 7 | $38 | $37 | $34 | $34 | $34 | $34 | $34 | $34 | $34 | $34 | $34 | $34 | $34 | $34 | $34 | $34 |
| 8 | $128 | $128 | $126 | $122 | $122 | $122 | $125 | $126 | $128 | $127 | $127 | $128 | $128 | $127 | $127 | $11B |
| 9 | $199 | $197 | $197 | $193 | $194 | $192 | $193 | $192 | $190 | $190 | $190 | $189 | $72 | $72 | $72 | $71 |
| 10 | | | | | | | | | | | | | | | | |
| 11 | $867 | $863 | $857 | $840 | $836 | $828 | $825 | $823 | $817 | $801 | $791 | $787 | $731 | $719 | $711 | $702 |
| 12 | | | | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | | | | |
| 15 | $981 | $980 | $979 | $972 | $971 | $961 | $960 | $959 | $954 | $952 | $941 | $925 | $919 | $842 | $842 | $829 |
| 16 | | | | | | | | | | | | | | | | |
| 17 | $312 | $310 | $304 | $308 | $307 | $298 | $311 | $312 | $298 | $289 | $269 | $268 | $272 | $294 | $285 | $289 |
| 18 | $386 | $385 | $384 | $384 | $384 | $383 | $392 | $392 | $395 | $393 | $393 | $387 | $387 | $382 | $381 | $387 |
| 19 | $697 | $696 | $688 | $693 | $691 | $680 | $703 | $704 | $693 | $682 | $662 | $656 | $658 | $675 | $666 | $675 |
| 20 | | | | | | | | | | | | | | | | |
| 21 | | | | | | | | | | | | | | | | |
| 22 | $2,545 | $2,539 | $2,524 | $2,505 | $2,498 | $2,489 | $2,488 | $2,486 | $2,464 | $2,435 | $2,394 | $2,367 | $2,308 | $2,236 | $2,219 | $2,207 |
| 23 | | | | | | | | | | | | | | | | |
| 24 | | | | | | | | | | | | | | | | |
| 25 | | | | | | | | | | | | | | | | |
| 26 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 |
| 27 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 |
| 28 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 |
| 29 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 |
| 30 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 |
| 31 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 |
| 32 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 |
| 33 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 |
| 34 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 |
| 35 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 |
| 36 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 |
| 37 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 |
| 38 | $ 9,882 | $ 9,876 | $ 9,861 | $ 9,842 | $ 9,835 | $ 9,806 | $ 9,826 | $ 9,823 | $ 9,801 | $ 9,772 | $ 9,731 | $ 9,704 | $ 9,845 | $ 9,573 | $ 9,557 | $ 9,544 |

NNC-N    'PI000004

| | AW | AX | AY | AZ | BA | BB | BC | BD | BE | BF | BG | BH | BI | BJ | BK | BL | BN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | | | |
| 4 | 14-Mar | 28-Mar | 11-Apr | 25-Apr | 16-May | 30-May | 13-Jun | 11-Jul | 25-Jul | 15-Aug | 22-Aug | 12-Sep | Weekly Variance | | Variance since filing | | |
| 5 | | | | | | | | | | | | | | | | | |
| 6 | $476 | $472 | $465 | $462 | $448 | $449 | $440 | $433 | $426 | $420 | $419 | $415 | ($4) | | $256 | | |
| 7 | $34 | $34 | $33 | $33 | $33 | $33 | $33 | $32 | $32 | $32 | $32 | $32 | ($0) | | ($12) | | |
| 8 | $114 | $107 | $108 | $108 | $108 | $104 | $104 | $103 | $104 | $92 | $92 | $91 | ($1) | | ($59) | | |
| 9 | $71 | $71 | $71 | $71 | $71 | $67 | $67 | $68 | $67 | $67 | $67 | $67 | $0 | | ($186) | | |
| 10 | | | | | | | | | | | | | | | | | |
| 11 | $694 | $684 | $677 | $674 | $660 | $653 | $645 | $637 | $629 | $612 | $610 | $606 | ($4) | | $0 | | |
| 12 | | | | | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | | | | | |
| 15 | $819 | $819 | $819 | $819 | $819 | $819 | $819 | $760 | $781 | $793 | $793 | $760 | ($33) | | | | |
| 16 | | | | | | | | | | | | | | | | | |
| 17 | $272 | $261 | $258 | $250 | $252 | $241 | $241 | $232 | $224 | $212 | $208 | $209 | $1 | #REF! | ($135) | | |
| 18 | $405 | $405 | $403 | $403 | $401 | $397 | $396 | $387 | $391 | $385 | $380 | $379 | ($1) | #REF! | $11 | | |
| 19 | $677 | $666 | $662 | $653 | $653 | $638 | $637 | $619 | $615 | $597 | $588 | $588 | ($0) | | ($124) | | |
| 20 | | | | | | | | | | | | | | | | | |
| 21 | | | | | | | | | | | | | | | | | |
| 22 | $2,191 | $2,169 | $2,158 | $2,146 | $2,132 | $2,110 | $2,101 | $2,016 | $2,025 | $2,002 | $1,990 | $1,953 | ($37) | | ($124) | | |
| 23 | | | | | | | | | | | | | | | | | |
| 24 | | | | | | | | | | | | | | | | | |
| 25 | | | | | | | | | | | | | | | | | |
| 26 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | $ 1,053 | | | | | |
| 27 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | $ 843 | | | | | |
| 28 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ - | $ 10 | $ 10 | $ 10 | $ 10 | | | | | |
| 29 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | $ 18 | | | | | |
| 30 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | $ 632 | | | | | |
| 31 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | $ 104 | | | | | |
| 32 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 1 | $ 1 | $ 1 | | | | | |
| 33 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | $ 140 | | | | | |
| 34 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | $ 46 | | | | | |
| 35 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,454 | $ 4,455 | $ 4,455 | $ 4,455 | | | | | |
| 36 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,302 | $ 7,303 | $ 7,303 | $ 7,303 | | | | | |
| 37 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | $ 35 | | | | | |
| 38 | $ 9,528 | $ 9,507 | $ 9,495 | $ 9,484 | $ 9,470 | $ 9,448 | $ 9,439 | $ 9,373 | $ 9,363 | $ 9,340 | $ 9,328 | $ 9,291 | | | | | |

| | BN | BO | BP | BQ | BR | BS |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | Canada | | Available | | Restricted Cash | |
| 5 | | | | | | |
| 6 | 1003 | NNL HQ | $ 1 | | $ 243 | |
| 7 | | | | | | |
| 8 | 1002 | NNL | $ 133 | | $ - | |
| 9 | | | | | | |
| 10 | 1001 | NNC | $ 7 | | $ 20 | |
| 11 | 1101 | NNTC | $ 8 | | $ - | |
| 12 | 1102 | NNIC | $ 2 | | $ - | |
| 13 | | | | | | |
| 14 | | Total | $ 151 | | $ 264 | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | ROW | | | | | |
| 19 | | | Available | | Restricted Cash | |
| 20 | | Total | $ 1,537 | | $ 1 | |
| 21 | | | | | | |
| 22 | Total Nortel | | Available | | Restricted Cash | |
| 23 | | Total | $ 1,689 | | $ 265 | |
| 24 | | | | | | |
| 25 | | | | | | |
| 26 | | | | | | |
| 27 | | | | | | |
| 28 | | | | | | |
| 29 | | | | | | |
| 30 | | | | | | |
| 31 | | | | | | |
| 32 | | | | | | |
| 33 | | | | | | |
| 34 | | | | | | |
| 35 | | | | | | |
| 36 | | | | | | |
| 37 | | | | | | |
| 38 | | | | | | |

NNC-N    ?I000006

| | BT |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | Total |
| 5 | |
| 6 | $ 244 |
| 7 | |
| 8 | $ 133 |
| 9 | |
| 10 | $ 28 |
| 11 | $ 8 |
| 12 | $ 2 |
| 13 | |
| 14 | $ 415 |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | Total |
| 20 | $ 1,538 |
| 21 | |
| 22 | Total |
| 23 | $ 1,953 |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |
| 29 | |
| 30 | |
| 31 | |
| 32 | |
| 33 | |
| 34 | |
| 35 | |
| 36 | |
| 37 | |
| 38 | |

NNC-NNL-PPI000007

| | A | B |
|---|---|---|
| 39 | | |
| 40 | * These include proceeds in transactional escrow accounts, some of which may be distributed to purchaser based on final purchase price and other adjustments. | |
| 41 | | |
| 42 | FX Translation Summary: | |
| 43 | • Rates are updated once per month | |
| 44 | Month over month impact (preliminary estimates): | |

| | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 39 | | | | | | | | | | | | | | | |
| 40 | | | | | | | | | | | | | | | |
| 41 | | | | | | | | | | | | | | | |
| 42 | | | | | | | | | | | | | | | |
| 43 | | | | | | | | | | | | | | | |
| 44 | | | | | | | | | | | | | | | |

NNC-NNL·    )0009

|    | R | S | T | U | V | W | X | Y | Z | AA | AB | AC | AD | AE | AF |
|----|---|---|---|---|---|---|---|---|---|----|----|----|----|----|----|
| 39 |   |   |   |   |   |   |   |   |   |    |    |    |    |    |    |
| 40 |   |   |   |   |   |   |   |   |   |    |    |    |    |    |    |
| 41 |   |   |   |   |   |   |   |   |   |    |    |    |    |    |    |
| 42 |   |   |   |   |   |   |   |   |   |    |    |    |    |    |    |
| 43 |   |   |   |   |   |   |   |   |   |    |    |    |    |    |    |
| 44 |   |   |   |   |   |   |   |   |   |    |    |    |    |    |    |

NNC-N    `PI000010

| | AG | AH | AI | AJ | AK | AL | AM | AN | AO | AP | AQ | AR | AS | AT | AU | AV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 39 | | | | | | | | | | | | | | | | |
| 40 | | | | | | | | | | | | | | | | |
| 41 | | | | | | | | | | | | | | | | |
| 42 | | | | | | | | | | | | | | | | |
| 43 | | | | | | | | | | | | | | | | |
| 44 | | | | | | | | | | | | | | | | |

NNC-NNL-PPI000011

| | AW | AX | AY | AZ | BA | BB | BC | BD | BE | BF | BG | BH | BI | BJ | BK | BL | BN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 39 | | | | | | | | | | | | | | | | | |
| 40 | | | | | | | | | | | | | | | | | |
| 41 | | | | | | | | | | | | | | | | | |
| 42 | | | | | | | | | | | | | | | | | |
| 43 | | | | | | | | | | | | | | | | | |
| 44 | | | | | | | | | | | | | | | | | |

NNC-     PPI000012

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | As of September 12, 2014 | | | | | |
| 4 | | **NNL Controlled Entities** | | | | | |
| 5 | | Country | | $m | | | |
| 6 | | | | | | | |
| 7 | | Canada | | | Asia | | |
| 8 | | NNL HQ | 1003 | 244 | | | |
| 9 | | NNC | 1001 | 28 | NN Shanghai | 7121 | 5 |
| 10 | | NNL | 1002 | 133 | Hong Kong | 7100 | 21 |
| 11 | | NNTC | 1101 | 8 | Taiwan - 336 branch | 7110 | 0 |
| 12 | | NNIC | 1102 | 2 | NN China | 7120 | 41 |
| 13 | | | | 0 | | | 67 |
| 14 | | | | 415 | | | |
| 15 | | | | | | | |
| 16 | | Note: NNIC balance includes $327,878.05 from T&T, held here until dispute is resolved. | | | JV's - Represents 100% of JV's Cash | | |
| 17 | | | | | GDNT | 7124 | 0 |
| 18 | | | | | NNCE | 7125 | 0 |
| 19 | | | | | | | 0 |
| 20 | | | | | | | |
| 21 | | | | | Greater China | | 67 |
| 22 | | | | | | | |
| 23 | | | | | ASIAPAC | | |
| 24 | | | | | | | |
| 25 | | | | | India - NNL | 1003 | 0 |
| 26 | | | | | Australia | 6100 | 4 |
| 27 | | | | | India - local sub | 6111 | 51 |
| 28 | | | | | PT NN Indonesia | 6120 | 1 |
| 29 | | | | | Korea | 6140 | 0 |
| 30 | | | | | Malaysia | 6160 | 0 |
| 31 | | | | | NN Mauritius | 6170 | 0 |
| 32 | | | | | NZ | 6180 | 0 |
| 33 | | | | | NN Asia - Pakistan | 6190 | 16 |
| 34 | | | | | NN Sing - Phil office | 6200 | 0 |
| 35 | | | | | Singapore | 6210 | 15 |
| 36 | | | | | Sri Lanka | 6210 | 0 |
| 37 | | | | | Thailand | 6220 | 5 |
| 38 | | | | | Vietnam | 6231 | 0 |
| 39 | | | | | NNIL - Vietnam Office | | 0 |
| 40 | | | | | | | 91 |
| 41 | | | | | | | |

b158M

| H | I | J | K | L | M | N | O | P | Q | R |
|---|---|---|---|---|---|---|---|---|---|---|
| **Country Detail** | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | EMEA | | | | US Controlled Entities | | | LEGEND - Filed Entities |
| CALA | | | $m Country | | | | $m Country | | | $m CCAA |
| | | | | | | | | | | UK / EMEA |
| Argentina | 3100 | 13 | UK | | | | NNI | 2001 | 575 | Israel |
| Brazil* | 3110 | NA | UK | 4360 | 209 | | NN CALA INC | 2002 | 85 | |
| Chile | 3130 | 0 | NNOCL | 4361 | 0 | | Alteon Websystems International | 2107 | 56 | |
| Colombia* | 3140 | NA | | | | | NNCC | 2110 | 2 | |
| Ecuador | 3150 | 0 | | | | | NNIII | 2112 | 33 | |
| Mexico | 3170 | 9 | Europe | | | | NNII | 2115 | 6 | |
| Mexico | 3171 | 5 | | | | | NN Guatemala | 3160 | 3 | |
| Paraguay | 3190 | 0 | NNIF&H | 4002 | 97 | | NN CALA (Puerto Rico) | 3270 | 0 | |
| Peru | 3200 | 0 | Austria | 4100 | 1 | | NN Trinidad & Tobago | 3280 | 0 | |
| Uruguay | 3210 | 4 | Belgium | 4110 | 9 | | NNI (Hungary) | 4202 | 0 | |
| Venezuela* | 3220 | NA | Bulgaria | 4120 | 0 | | NN Eastern Mediterranean | 5100 | 0 | |
| | | | Czech | 4130 | 2 | | NNI (Egypt) | 5110 | 0 | |
| | | | Denmark | 4142 | 1 | | NNI (Tunisia) | 5170 | 0 | |
| | | | Finland | 4150 | 0 | | NNII (Dubai) | 5180 | 0 | |
| | | | France - NN SA | 4160 | 23 | | Tasman | 6112 | 0 | |
| | | | NT France | 4161 | 1 | | NN Japan | 6130 | 0 | |
| | | | France - NNF | 4162 | 35 | | | | | |
| | | | MCT Gmbh | 4179 | 0 | | Note: US balances are for August 31, 2014 | | | |
| | | | NN Germany | 4180 | 46 | | | | | |
| | | | Hungary | 4200 | 0 | | | | | |
| | | | Hungary HOC | 4201 | 0 | | | | | |
| | | | Ireland | 4210 | 88 | | | | | |
| | | | Italy | 4220 | 7 | | | | | |
| | | | Holland | 4240 | 18 | | | | | |
| | | | Norway | 4250 | 0 | | | | | |
| | | | Poland | 4260 | 20 | | | | | |
| | | | Portugal | 4270 | 3 | | | | | |
| | | | Romania | 4280 | 1 | | | | | |
| | | | NN OOO - Russia | 4290 | 0 | | | | | |
| | | | Slovakia | 4301 | 1 | | | | | |
| | | | Spain | 4310 | 21 | | | | | |
| | | | Sweden | 4320 | 1 | | | | | |
| | | | Switzerland | 4330 | 3 | | | | | |
| | | | NN OC Switzerland | 4331 | 0 | | | | | |
| | | | NN Israel Comms Holding | 5001 | 0 | | | | | |

| | S |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |
| 29 | |
| 30 | |
| 31 | |
| 32 | |
| 33 | |
| 34 | |
| 35 | |
| 36 | |
| 37 | |
| 38 | |
| 39 | |
| 40 | |
| 41 | |

NNC-NNL-PPI000015

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 42 | | | | | | | |
| 43 | | | | | | | |
| 44 | | | | | | | |
| 45 | | | | | | | |
| 46 | | | | | | | |
| 47 | | | | | | | |
| 48 | | | | | | | |
| 49 | | | | | | | |
| 50 | | Total | | 415 | | | 159 |
| 51 | | | | | | | |
| 52 | | * Nortel no longer has control over these entities and cannot validate bank balances | | | | | |

NNC    PPI000016

| | H | I | J | K | L | M | N | O | P | Q | R |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 42 | | | | Israel | | 5102 | 0 | | | | |
| 43 | | | | Saudi Arabia | | 5150 | 0 | | | | |
| 44 | | | | South Africa | | 5160 | 0 | | | | |
| 45 | | | | Nigeria | | 5190 | 0 | | | | |
| 46 | | | | | | | | | | | |
| 47 | | | | Europe Total | | | 379 | | | | |
| 48 | | | | | | | | | | | |
| 49 | | | | | | | | | | | |
| 50 | | | 32 | Total | | | 588 | Total | | 760 | |
| 51 | | | | | | | | | | | |
| 52 | | | | | | | | Total | 1,953 | | |

NNC-NNL-PPI000017

|   | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | | | **Restricted Cash Detail** | | |
| 2 | | | *As of September 12, 2014* | | |
| 3 | | | | | |
| 4 | North America | | | EMEA | |
| 5 | Description | | Amount | Description | |
| 6 | Canada | | | | |
| 7 | | | | France/Algeria Citibank Deposit | 4160 |
| 8 | Chubb Escrow re. litigation | 1001 | 10 | | |
| 9 | Escrow - Osler D&O Trust | 1001 | 11 | GMBH Guarantee Col. | 4180 |
| 10 | EDC Collateral | 1003 | 0 | | |
| 11 | LGN proceeds | 1003 | 230 | Ireland Citi Cash Pledge | 4210 |
| 12 | Relay proceeds | 1003 | 1 | | |
| 13 | IP Address proceeds | 1003 | 13 | | |
| 14 | | | | | |
| 15 | US | | | | |
| 16 | | | | | |
| 17 | Utilities Order | 2001 | 1 | | |
| 18 | | | | | |
| 19 | | | | | |
| 20 | | Total | 264 | Total | |
| 21 | | | | | |
| 22 | | Changes to Restricted Cash for the week ending November 5 | | | |
| 23 | | NA: | | | |
| 24 | | UK: | | | |
| 25 | | Europe: | | | |
| 26 | | Asia: | | | |
| 27 | | Cala: | | | |
| 28 | | Total $M | | | |
| 29 | | | | | |
| 30 | | | | | |
| 31 | | | | | |

NNC        :PPI000018

| | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | Asia | | | CALA | | |
| 5 | Amount | Description | | Amount | Description | | Amount |
| 6 | | | | | | | |
| 7 | 0 | India BSNL AMC | 8111 | 0 | | | |
| 8 | | | | | | | |
| 9 | 0 | PVA accounts-China | 7124 | 0 | | | |
| 10 | | | | | | | |
| 11 | 0 | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | 0 | Total | | 0 | Total | | 0 |
| 21 | | | | | | | |
| 22 | | | | | | | |
| 23 | | | | | | | |
| 24 | | | | | | | |
| 25 | | | | | | | |
| 26 | | | | | | | |
| 27 | | | | | | | |
| 28 | | | | | | | |
| 29 | | | | | | Total Restricted Cash | 265 |
| 30 | | | | | | Unused Facility | |
| 31 | | | | | | Total Unavailable | 265 |

NNC-NNL-PPI000019

Asset Sale Escrow Account Summary

| | A | B | C |
|---|---|---|---|
| 1 | | | |
| 2 | Asset | Purchaser | Account Type |
| 3 | Layer 4-7 | Radware | Escrow |
| 4 | CDMA | Ericsson | Escrow |
| 5 | Enterprise | Avaya | Escrow |
| 6 | GSM | Ericsson & Kapsch | Escrow |
| 7 | GSM-CALA | Ericsson | Escrow |
| 8 | Packet Core | Hitachi | Escrow |
| 9 | MEN | Ciena | Escrow |
| 10 | | | Escrow |
| 11 | | | Escrow |
| 12 | | | Escrow |
| 13 | | | Escrow |
| 14 | | | Escrow |
| 15 | CVAS | Genband | Escrow |
| 16 | Cascading Directors D & O Trust ** | | Escrow |
| 17 | MSS | Ericsson | Escrow |
| 18 | | | |
| 19 | IP | Rockstar | Escrow |
| 20 | | | |
| 21 | * Balances in these accounts are not reflected in total escrow proceeds | | |
| 22 | ** On May 7, 2010 the Cascading Directors D & O Trust was funded $ 35 M  from the CDMA proceeds held in escrow. | | |

Asset Sale Escrow Account Summary

|   | D | E | F | G | H |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | **Account Description** | **Escrow Agent** | **Counterparty** | **Balance ($M)** | |
| 3 | Purchase Price | JP Morgan | 104% US Treasuries Collaterized | $ 18 | |
| 4 | Purchase Price** | JP Morgan | 104% US Treasuries Collaterized | $ 1,053 | |
| 5 | Purchase Price | JP Morgan | 104% US Treasuries Collaterized | $ 843 | |
| 6 | Purchase Price | JP Morgan | 104% US Treasuries Collaterized | $ 104 | |
| 7 | Purchase Price | JP Morgan | 104% US Treasuries Collaterized | $ 1 | |
| 8 | Purchase Price | JP Morgan | 104% US Treasuries Collaterized | $ 10 | |
| 9 | Purchase Price | JP Morgan | 104% US Treasuries Collaterized | $ 610 | |
| 10 | Tax | Citibank | Citibank MDA | $ 10 | |
| 11 | EMEA Tax | Citibank | Citibank MDA | $ 3 | |
| 12 | Italian Tax | Citibank | Citibank MDA | $ 1 | |
| 13 | Poland | Citibank | Citibank MDA | $ 1 | |
| 14 | TSA | Citibank | Citibank MDA | $ 8 | |
| 15 | Purchase Price | JP Morgan | 100% US Treasuries Collaterized | $ 140 | |
| 16 | D & O Trust | John T Evans | TD Waterhouse | $ 35 | |
| 17 | Purchase Price | JP Morgan | 104% US Treasuries Collaterized | $ 46 | |
| 18 | TSA | JP Morgan | 104% US Treasuries Collaterized | $ 0 | |
| 19 | Purchase Price | JP Morgan | 104% US Treasuries Collaterized | $ 4,455 | |
| 20 | | | | | |
| 21 | | | | | |
| 22 | | | | | |

NNC-NNL-PPI000021

**EXHIBIT 9**

EXHIBIT

121

| | |
|---|---|
| **From:** | Coleman, Ken:BK (NY) |
| **Sent:** | Wednesday, October 15, 2014 2:12 PM |
| **To:** | Pultman, Jacob:LT (NY) |
| **Subject:** | FW: Call? (0017242-0000008) |
| **Categories:** | Copied to Virtual File |

**Ken Coleman | Partner**
**Allen & Overy LLP**

1221 Avenue of the Americas | New York, New York 10020 | USA
Direct +1 212 610 6434 | Mobile +1 646 662 0138
Fax +1 212 610 6399
www.allenovery.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Wednesday, July 23, 2014 9:16 PM
**To:** Coleman, Ken:BK (NY)
**Subject:** RE: Call?

Only paid from excess after creditors are paid in full.

**From:** Ken.Coleman@AllenOvery.com [mailto:Ken.Coleman@AllenOvery.com]
**Sent:** Wednesday, July 23, 2014 9:15 PM
**To:** Leblanc, Andrew
**Subject:** Re: Call?

Are those funds set aside from allocation no matter what or does there need to be a solvency determination?

Ken Coleman

On Jul 23, 2014, at 8:28 PM, "Leblanc, Andrew" <ALeblanc@milbank.com> wrote:

> Ken,
>
> Are you available this evening for a quick call?
>
> Andy
>
> **Milbank**
> **Andrew M. Leblanc**
> 1850 K Street, N.W.
> Suite 1100
> Washington, D.C. 20006
> Tel: 202-835-7574 Fax: 202-263-7574
> Cell:  202-997-5702
> aleblanc@milbank.com
> www.milbank.com

=================================================================

1

CONFIDENTIAL

NNC-NNL-PPI000025

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

--------------------------------------------------------------------------------------------------------------------------------------------------------

The foregoing e-mail may contain US tax advice. If so, please read the following carefully:

Unless otherwise expressly stated in the foregoing message, this advice was not intended or written to be used, and cannot be used, by any person for the purpose of avoiding US federal tax-related penalties that may be imposed with respect to the matters addressed. Some of this advice may have been written to support the promotion or marketing of the transactions or matters addressed to persons other than our client. For such advice, be advised that the advice was written to support the promotion or marketing of the transaction(s) or matter(s) addressed and if you are a person other than our client, you should seek advice based on your particular circumstances from an independent tax advisor. In addition, unless expressly stated to the contrary in the foregoing message, nothing herein shall be construed to impose a limitation on disclosure by any person of the tax treatment or tax structure of any transaction that is addressed herein.

This email is confidential and may also be privileged. If you are not the intended recipient please delete it and notify us immediately by telephoning or e-mailing the sender. You should not copy it or use it for any purpose nor disclose its contents to any other person.

Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: 212 610 6300
Fax: 212 610 6399
http://www.allenovery.com

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. It is authorised and regulated by the Solicitors Regulation Authority of England and Wales. Allen & Overy LLP is a multi-jurisdictional legal practice with lawyers admitted to practice in a variety of jurisdictions.
The term partner is used to refer to a member of Allen & Overy LLP or an employee or consultant with equivalent standing and qualifications. A list of the members of Allen & Overy LLP and of the non-members
who are designated as partners is open to inspection at its registered office, One Bishops Square London
E1 6AD and at the above address.

For further information about how Allen & Overy LLP is regulated, please see our website at www.allenovery.com/aoweb/legal

===============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

2

CONFIDENTIAL

NNC-NNL-PPI000026

**EXHIBIT 10**

# Produced in Native Format

**EXHIBIT**

**122**

NNC-NNL-PPI000028

**<u>EXHIBIT 11</u>**

# Produced in Native Format

EXHIBIT

123

NNC-NNL-PPI000029

August 2014 month end currency exchange rates released by NNL Finance on 2014-08-29
Source: Reuters

| August 2014 Currency | Code | CAD per Unit | USD per Unit | Units per CAD | Units per USD | Units per GBP | Units per EUR |
|---|---|---|---|---|---|---|---|
| United Arab Emirates dirham | AED | 0.29538359 | 0.27224960 | 3.38565766 | 3.67310000 | 6.09514214 | 4.84004387 |
| Argentine Peso | ARS | 0.12913170 | 0.11902636 | 7.74403171 | 8.40150000 | 13.94144910 | 11.07065655 |
| Australian dollar | AUD | 1.01394754 | 0.93460000 | 0.98624482 | 1.06991046 | 1.77651864 | 1.40999795 |
| Barbados dollar | BBD | 0.54245000 | 0.50000000 | 1.84348788 | 2.00000000 | 3.31882000 | 2.63542000 |
| Bangladeshi taka | BDT | 0.01403856 | 0.01293896 | 71.23237165 | 77.28000000 | 128.23843200 | 101.83185600 |
| Bulgarian Lev | BGN | 0.73086769 | 0.67367286 | 1.36823670 | 1.48440000 | 2.46321336 | 1.95599388 |
| Bolivian boliviano | BOB | 0.15700434 | 0.14471780 | 6.36925062 | 6.91000000 | 11.46645400 | 9.10530700 |
| Brazilian Real | BRL | 0.48433036 | 0.44642857 | 2.06470642 | 2.24000000 | 3.71705600 | 2.95164800 |
| Canadian dollar | CAD | 1.00000000 | 0.92174394 | 1.00000000 | 1.08490000 | 1.80028306 | 1.42957273 |
| Swiss franc | CHF | 1.18553499 | 1.09277675 | 0.84348788 | 0.91510000 | 1.51851694 | 1.20582727 |
| Chilean peso | CLP | 0.00182348 | 0.00168079 | 548.40077426 | 594.96000000 | 987.27662400 | 783.97879200 |
| Chinese Rinminbi yuan | CNY | 0.17659602 | 0.16277631 | 5.66264177 | 6.14340000 | 10.19435796 | 8.09515818 |
| Colombian peso | COP | 0.00056287 | 0.00051882 | 1,776.61535625 | 1,927.45000000 | 3,198.41053000 | 2,539.80086500 |
| Costa Rican colon | CRC | 0.00200907 | 0.00185185 | 497.74172735 | 540.00000000 | 896.07600000 | 711.55800000 |
| Czech Koruna | CZK | 0.05144144 | 0.04741584 | 19.43957968 | 21.09000000 | 34.99674600 | 27.79029300 |
| Danish krone | DKK | 0.19183775 | 0.17682528 | 5.21273850 | 5.65530000 | 9.38440482 | 7.45198881 |
| Dominican Peso | DOP | 0.02499770 | 0.02304147 | 40.00368698 | 43.40000000 | 72.01796000 | 57.18818000 |
| Algerian dinar | DZD | 0.01350529 | 0.01244842 | 74.04507328 | 80.33150000 | 133.30209110 | 105.85281755 |
| Estonian Kroon | EEK | NA | NA | NA | NA | NA | NA |
| Egyptian pound | EGP | 0.15173214 | 0.13985818 | 6.59056134 | 7.15010000 | 11.86487594 | 9.42168677 |
| Euro | EUR | 1.42962379 | 1.31776000 | 0.69950071 | 0.75869958 | 1.25931547 | 1.00000000 |
| Fiji dollar | FJD | 0.66541284 | 0.53900000 | 1.70919856 | 1.85322461 | 3.07524092 | 2.44149407 |
| U.K. pound sterling | GBP | 1.80028306 | 1.65940000 | 0.55546521 | 0.60262746 | 1.00000000 | 0.79409226 |
| Guatemala quetzal | GTQ | 0.13959084 | 0.12866701 | 7.16379390 | 7.77200000 | 12.89685680 | 10.24116440 |
| Hong Kong dollar | HKD | 0.13998529 | 0.12903059 | 7.14360771 | 7.75010000 | 12.86051594 | 10.21230677 |
| Hungary forint | HUF | 0.00453212 | 0.00417746 | 220.64706425 | 239.38000000 | 397.22717200 | 315.43102600 |
| Indonesia rupiah | IDR | 0.00009281 | 0.00008554 | 10,775.18665315 | 11,690.00000000 | 19,398.38600000 | 15,403.91300000 |
| New Israeli Sheqel | ILS | 0.30402130 | 0.28022979 | 3.28924325 | 3.56850000 | 5.92156890 | 4.70221245 |
| Indian rupee | INR | 0.01792334 | 0.01652073 | 55.79316066 | 60.53000000 | 100.44348200 | 79.76038100 |
| Icelandic krona | ISK | 0.00929888 | 0.00857118 | 107.53986543 | 116.67000000 | 193.60219800 | 153.73605900 |
| Jamaican dollar | JMD | 0.00963927 | 0.00888494 | 103.74228039 | 112.55000000 | 186.76547000 | 148.30713500 |
| Jordanian Dinar | JOD | 1.53147939 | 1.41163185 | 0.65296841 | 0.70840000 | 1.17551896 | 0.93345868 |
| Japanese yen | JPY | 0.01043775 | 0.00962094 | 95.80606508 | 103.94000000 | 172.47803600 | 136.96173800 |
| Korean (Republic) won | KRW | 0.00106982 | 0.00098610 | 934.74052908 | 1,014.10000000 | 1,682.79754000 | 1,336.27957000 |
| Kuwaiti dinar | KWD | 3.81268670 | 3.51432086 | 0.26228224 | 0.28455000 | 0.47218227 | 0.37495154 |
| Lebanese pound | LBP | 0.00071305 | 0.00066094 | 1,394.59858051 | 1,513.00000000 | 2,510.67220000 | 1,993.68010000 |
| Sri Lankan rupee | LKR | 0.00833257 | 0.00768049 | 120.01106093 | 130.20000000 | 216.05388000 | 171.56454000 |
| Lithuanian Litus | LTL | 0.41406817 | 0.38166482 | 2.41506130 | 2.62010000 | 4.34779394 | 3.45250577 |
| Latvian lats | LVL | 2.13436947 | 1.96734212 | 0.46852246 | 0.50830000 | 0.84347302 | 0.66978691 |
| Moroccan dirham | MAD | 0.12842245 | 0.11837261 | 7.78680063 | 8.44790000 | 14.01844526 | 11.13179783 |
| Mexican Nuevo Peso | MXN | 0.08284525 | 0.07636211 | 12.07069776 | 13.09550000 | 21.73067270 | 17.25594035 |
| Malaysian ringgit | MYR | 0.34424877 | 0.31730922 | 2.90487603 | 3.15150000 | 5.22959910 | 4.15273155 |
| Nigerian naira | NGN | 0.00669072 | 0.00616713 | 149.46077980 | 162.15000000 | 269.07711000 | 213.66505500 |
| Norwegian krone | NOK | 0.17531754 | 0.16159788 | 5.70393585 | 6.18820000 | 10.26869908 | 8.15419114 |
| New Zealand dollar | NZD | 0.90008316 | 0.82982000 | 1.09967065 | 1.19032200 | 1.97971864 | 1.57255917 |
| Omani rial | OMR | 2.81784889 | 2.59733513 | 0.35488063 | 0.38501000 | 0.63888559 | 0.50732768 |
| Peru Nuevo Sol | PEN | 0.38140271 | 0.35155563 | 2.62190064 | 2.84450000 | 4.72016330 | 3.74815765 |
| Papua New Guinea kina | PGK | 0.43691282 | 0.40169000 | 2.22882060 | 2.48900040 | 4.12691680 | 3.27656228 |
| Philippine Peso | PHP | 0.02487105 | 0.02292474 | 40.20730239 | 43.62100000 | 72.38468740 | 57.47939170 |
| Pakistan rupee | PKR | 0.01068446 | 0.00984834 | 93.59387962 | 101.54000000 | 168.49547600 | 133.79928600 |
| Poland new zloty | PLN | 0.33848122 | 0.31199301 | 2.95437367 | 3.20520000 | 5.31870888 | 4.22349204 |
| Paraguay guarani | PYG | 0.00025407 | 0.00023419 | 3,935.84662181 | 4,270.00000000 | 7,085.63800000 | 5,626.57900000 |
| Qatari riyal | QAR | 0.29795122 | 0.27463474 | 3.35625403 | 3.64120000 | 6.04220728 | 4.79800924 |
| Romanian new leu | RON | 0.32396679 | 0.29861443 | 3.08673610 | 3.34880000 | 5.55699872 | 4.41271376 |
| Russian Ruble | RUB | 0.02937922 | 0.02707459 | 34.04461241 | 36.93500000 | 61.28993900 | 48.66924950 |
| Saudi riyal | SAR | 0.28926810 | 0.26663112 | 3.45700065 | 3.75050000 | 6.22357970 | 4.94203385 |
| Swedish krona | SEK | 0.15591228 | 0.14371120 | 6.41386303 | 6.95840000 | 11.54576896 | 9.16908368 |
| Singapore dollar | SGD | 0.86917161 | 0.80115366 | 1.15052079 | 1.24820000 | 2.07126308 | 1.64475314 |
| Thailand baht | THB | 0.03396681 | 0.03130870 | 29.44050143 | 31.94000000 | 53.00123600 | 42.08733800 |
| Tunisian dinar | TND | 0.62364911 | 0.57484479 | 1.60346576 | 1.73960000 | 2.88669224 | 2.29227092 |
| New Turkish Lira | TRY | 0.50250116 | 0.46317740 | 1.99004517 | 2.15900000 | 3.58264460 | 2.84491430 |
| Trinidad and Tobago dollar | TTO | 0.17097694 | 0.15759696 | 5.84874187 | 6.34530000 | 10.52989082 | 8.36120181 |
| New Taiwan dollar | TWD | 0.03631951 | 0.03347729 | 27.53341322 | 29.87100000 | 49.56793740 | 39.36101670 |
| Ukraine Hryvnia | UAH | 0.08281679 | 0.07633588 | 12.07484561 | 13.10000000 | 21.73814000 | 17.26187000 |
| U.S. dollar | USD | 1.08490000 | 1.00000000 | 0.92174394 | 1.00000000 | 1.65940000 | 1.31770000 |
| Uruguayan Peso Uruguayo | UYU | 0.04526074 | 0.04171882 | 22.09420223 | 23.97000000 | 39.77581300 | 31.58526900 |
| Bolivar Fuerte | VEF | 0.17242256 | 0.15892945 | 5.79970504 | 6.29210000 | 10.44111074 | 8.29110017 |
| Vietnam dong | VND | 0.00005119 | 0.00004718 | 19,536.36279841 | 21,195.00000000 | 35,170.98300000 | 27,928.65150000 |
| East Caribbean dollar | XCD | 0.40181481 | 0.37037037 | 2.48870864 | 2.70000000 | 4.48038000 | 3.55779000 |
| South African rand | ZAR | 0.10223332 | 0.09423294 | 9.78154669 | 10.61200000 | 17.60955280 | 13.98343240 |
| Zambian kwacha | ZMK | NA | NA | NA | NA | NA | NA |

| CoCd Transaction | PTyp TTyp Partner | Amount | Exchange rate | USD equivalent |
|---|---|---|---|---|

New accounts pending GL set up

**Country Detail**

| Asia | | 29-Aug-14 | | 12-Sep-14 |
|---|---|---|---|---|
| Country | | SAP | | SAP |
| Greater China | | 67 | 0.10 | 67 |
| | | | | |
| Beijing Rep Office | 1102 | 0.000000 | 0.000000 | 0.000000 |
| Shanghai Rep Office | 7100 | 0.000000 | 0.000000 | 0.000000 |
| China rep office - Guangzhou | 7100 | 0.000000 | 0.000000 | 0.000000 |
| NN Shanghai | 7121 | 5.415642 | 0.030381 | 5.446024 |
| Hong Kong | 7100 | 20.596497 | -0.064453 | 20.532044 |
| Taiwan - 336 branch | 7110 | 0.000000 | 0.000000 | 0.000000 |
| Taiwan-NNL | 7111 | 0.000000 | 0.000000 | 0.000000 |
| NN China | 7120 | 41.277499 | 0.134939 | 41.412437 |
| | | 67.289637 | 0.100867 | 67.390505 |
| | | | | |
| | | | | |
| JV's - Represents 100% of JV's Cash | | | | |
| GDNT | 7124 | 0.000000 | 0.000000 | 0.000000 |
| NNCE | 7125 | 0.000000 | 0.000000 | 0.000000 |
| | | 0.000000 | 0.000000 | 0.000000 |
| | | | | |
| | | | | |
| ASIAPAC | | 40.833070 | -0.451363 | 40.381707 |
| | | | | |
| Australia | 6100 | 3.625403 | 0.019500 | 3.644903 |
| PT NN Indonesia | 6120 | 0.897084 | -0.007889 | 0.889195 |
| Korea | 6140 | 0.055486 | 0.000085 | 0.055571 |
| Malaysia | 6160 | 0.000000 | 0.000000 | 0.000000 |
| NN Mauritius | 6170 | 0.220924 | 0.000000 | 0.220924 |
| NZ | 6180 | 0.000000 | 0.000000 | 0.000000 |
| NN Asia - Pakistan | 6190 | 16.331839 | -0.440706 | 15.891133 |
| NN Sing - Phil office | 6200 | 0.000000 | 0.000000 | 0.000000 |
| Singapore | 6210 | 15.178651 | -0.022595 | 15.156056 |
| Sri Lanka | 6210 | 0.000000 | 0.000000 | 0.000000 |
| Thailand | 6220 | 4.511868 | 0.000223 | 4.512090 |
| Vietnam | 6231 | 0.011816 | 0.000020 | 0.011835 |
| NNIL - Vietnam Office | | 0.000000 | 0.000000 | 0.000000 |
| | | 40.833070 | -0.451363 | 40.381707 |
| | | | | |
| Total | | 108.1227 | -0.35 | 107.7722 |

| CoCd | Transaction | PTyp | TTyp | Partner | Trader | Portfolio | TCurr | Amount | Exchange Rate | USD equivalent |
|------|-------------|------|------|---------|--------|-----------|-------|--------|---------------|----------------|

## Restricted Cash Detail

| Asia | |
|---|---|
| Desctiption | Amount |
| | |
| HK-DB Bank | 0.0000 |
| | |
| TWN-BoTwn | 0.0000 |
| | |
| TWN-Citibank | 0.0000 |
| | |
| Securitization-China | 0.0000 |
| | |
| PVA accounts-China | 0.0000 |
| | |
| Warranty Bond | 0.0000 |
| | |
| HK | 0.0000 |
| PRC-bond related | 0.0000 |
| Total | **0.000** |

**EXHIBIT 12**

# Produced in Native Format

**EXHIBIT**

**124**

exhibitsticker.com

**CONFIDENTIAL**

August 2014 month end currency exchange rates released by NNL Finance on 2014-08-29
Source: Reuters

| August 2014 Currency | Code | CAD per Unit | USD per Unit | Units per CAD | Units per USD | Units per GBP | Units per EUR |
|---|---|---|---|---|---|---|---|
| United Arab Emirates dirham | AED | 0.29536359 | 0.27224960 | 3.38565766 | 3.67310000 | 6.09514214 | 4.84004387 |
| Argentine Peso | ARS | 0.12913170 | 0.11902636 | 7.74403171 | 8.40150000 | 13.94144910 | 11.07055655 |
| Australian dollar | AUD | 1.01394754 | 0.93400000 | 0.98624432 | 1.06857646 | 1.77351834 | 1.40897709 |
| Barbados dollar | BBD | 0.54245000 | 0.50000000 | 1.84348788 | 2.00000000 | 3.31880000 | 2.63540000 |
| Bangladeshi taka | BDT | 0.01403856 | 0.01293996 | 71.23237165 | 77.28000000 | 128.23843200 | 101.83185600 |
| Bulgarian Lev | BGN | 0.73086769 | 0.67367286 | 1.36819670 | 1.48440000 | 2.46321336 | 1.95599388 |
| Bolivian Boliviano | BOB | 0.15760434 | 0.14471780 | 6.36925062 | 6.91000000 | 11.46645400 | 9.10530700 |
| Brazilian Real | BRL | 0.48433036 | 0.44642857 | 2.06470642 | 2.24000000 | 3.71705600 | 2.95164800 |
| Canadian dollar | CAD | 1.00000000 | 0.92174354 | 1.00000000 | 1.08490000 | 1.80028306 | 1.42957273 |
| Swiss franc | CHF | 1.18555349 | 1.09277675 | 0.84348788 | 0.91510000 | 1.51851694 | 1.20582727 |
| Chilean peso | CLP | 0.00182348 | 0.00168079 | 548.40077426 | 594.96000000 | 987.27662400 | 783.97879200 |
| Chinese Rinminbi yuan | CNY | 0.17653602 | 0.16277631 | 5.66264172 | 6.14340000 | 10.19435796 | 8.09515818 |
| Colombian peso | COP | 0.00056287 | 0.00051882 | 1,776.61535625 | 1,927.45000000 | 3,198.41053000 | 2,539.80086500 |
| Costa Rican colon | CRC | 0.00200907 | 0.00185185 | 497.74172795 | 540.00000000 | 896.07600000 | 711.55800000 |
| Czech Koruna | CZK | 0.05144144 | 0.04741584 | 19.43957968 | 21.09000000 | 34.99674600 | 27.79029300 |
| Danish krone | DKK | 0.19183775 | 0.17682528 | 5.21273850 | 5.65530000 | 9.38440482 | 7.45198881 |
| Dominican Peso | DOP | 0.02499770 | 0.02304147 | 40.00368698 | 43.40000000 | 72.01796000 | 57.18818000 |
| Algerian dinar | DZD | 0.01360529 | 0.01244842 | 74.04507328 | 80.33150000 | 133.30209110 | 105.85281755 |
| Estonian Kroon | EEK | NA | NA | NA | NA | NA | NA |
| Egyptian pound | EGP | 0.15173214 | 0.13985818 | 6.59056134 | 7.15010000 | 11.86487594 | 9.42168677 |
| Euro | EUR | 1.42657273 | 1.31770000 | 0.69980871 | 0.75886938 | 1.25901647 | 1.00000000 |
| Fiji dollar | FJD | 0.60941204 | 0.53800000 | 1.70919895 | 1.85932461 | 3.07524092 | 2.44190497 |
| U.K. pound sterling | GBP | 1.80028306 | 1.65949096 | 0.55546921 | 0.60268746 | 1.00000000 | 0.79418220 |
| Guatemala quetzal | GTQ | 0.13959084 | 0.12866701 | 7.16379390 | 7.77200000 | 12.89685680 | 10.24116440 |
| Hong Kong dollar | HKD | 0.13998529 | 0.12903059 | 7.14360771 | 7.75010000 | 12.86051594 | 10.21230677 |
| Hungary forint | HUF | 0.00453212 | 0.00417746 | 220.64706425 | 239.38000000 | 397.22717200 | 315.43102600 |
| Indonesia rupiah | IDR | 0.00009281 | 0.00008554 | 10,775.18665315 | 11,690.00000000 | 19,398.38600000 | 15,403.91300000 |
| New Israeli Sheqel | ILS | 0.30402130 | 0.28022979 | 3.28924325 | 3.56850000 | 5.92156890 | 4.70221245 |
| Indian rupee | INR | 0.01792334 | 0.01652073 | 55.79310066 | 60.53000000 | 100.44348200 | 79.76038100 |
| Icelandic krona | ISK | 0.00929888 | 0.00857118 | 107.53986543 | 116.67000000 | 193.60219800 | 153.73605900 |
| Jamaican dollar | JMD | 0.00963927 | 0.00888454 | 103.74228039 | 112.55000000 | 186.76547000 | 148.30713500 |
| Jordanian Dinar | JOD | 1.53147939 | 1.41163185 | 0.65296341 | 0.70840000 | 1.17551896 | 0.93345868 |
| Japanese yen | JPY | 0.01043775 | 0.00962094 | 95.80606508 | 103.94000000 | 172.47803600 | 136.96173800 |
| Korean (Republic) won | KRW | 0.00106982 | 0.00098610 | 934.74052908 | 1,014.10000000 | 1,682.79754000 | 1,336.27957000 |
| Kuwaiti dinar | KWD | 3.81268670 | 3.51432086 | 0.26228224 | 0.28455000 | 0.47218227 | 0.37495154 |
| Lebanese pound | LBP | 0.00071705 | 0.00066094 | 1,394.59858051 | 1,513.00000000 | 2,510.67220000 | 1,993.68010000 |
| Sri Lankan rupee | LKR | 0.00833257 | 0.00768049 | 120.01106093 | 130.20000000 | 216.05388000 | 171.56454000 |
| Lithuanian Litus | LTL | 0.41406817 | 0.38166482 | 2.41506130 | 2.62010000 | 4.34779394 | 3.45250577 |
| Latvian lats | LVL | 2.13436947 | 1.96734212 | 0.46852244 | 0.50830000 | 0.84347302 | 0.66978691 |
| Moroccan dirham | MAD | 0.12842245 | 0.11837261 | 7.78680063 | 8.44790000 | 14.01844526 | 11.13179783 |
| Mexican Nuevo Peso | MXN | 0.08284525 | 0.07636211 | 12.07069776 | 13.09550000 | 21.73067270 | 17.25594035 |
| Malaysian ringgit | MYR | 0.34424877 | 0.31730922 | 2.90487603 | 3.15150000 | 5.22959910 | 4.15273155 |
| Nigerian naira | NGN | 0.00669072 | 0.00616713 | 149.46077980 | 162.15000000 | 269.07171000 | 213.66505500 |
| Norwegian krone | NOK | 0.17531754 | 0.16159788 | 5.70393585 | 6.18820000 | 10.26669908 | 8.15419114 |
| New Zealand dollar | NZD | 0.90936318 | 0.83820000 | 1.09967055 | 1.19303269 | 1.97971844 | 1.57205917 |
| Omani rial | OMR | 2.81784889 | 2.59733513 | 0.35488063 | 0.38501000 | 0.63888559 | 0.50732768 |
| Peru Nuevo Sol | PEN | 0.38140271 | 0.35155563 | 2.62190064 | 2.84450000 | 4.72016330 | 3.74819765 |
| Papua New Guinea kina | PGK | 0.43501282 | 0.40100000 | 2.29900668 | 2.48299040 | 4.12691528 | 3.27649228 |
| Philippine Peso | PHP | 0.02487105 | 0.02292474 | 40.20739239 | 43.62100000 | 72.38468740 | 57.47939170 |
| Pakistan rupee | PKR | 0.01068446 | 0.00984834 | 93.59387962 | 101.54000000 | 168.49547600 | 133.79925800 |
| Poland new zloty | PLN | 0.33848122 | 0.31199301 | 2.95437367 | 3.20520000 | 5.31870888 | 4.22349204 |
| Paraguay guarani | PYG | 0.00025407 | 0.00023419 | 3,935.84661281 | 4,270.00000000 | 7,085.63800000 | 5,626.57900000 |
| Qatari riyal | QAR | 0.29795122 | 0.27463474 | 3.35625403 | 3.64120000 | 6.04220728 | 4.79800924 |
| Romanian new leu | RON | 0.32396679 | 0.29861443 | 3.08673610 | 3.34880000 | 5.55699872 | 4.41271376 |
| Russian Ruble | RUB | 0.02937322 | 0.02707459 | 34.04461241 | 36.93500000 | 61.28993900 | 48.66924950 |
| Saudi riyal | SAR | 0.28926810 | 0.26663112 | 3.45700065 | 3.75050000 | 6.22357970 | 4.94203385 |
| Swedish krona | SEK | 0.15591228 | 0.14371120 | 6.41386303 | 6.95840000 | 11.54676896 | 9.16908368 |
| Singapore dollar | SGD | 0.86917161 | 0.80115366 | 1.15052079 | 1.24820000 | 2.07126308 | 1.64475314 |
| Thailand baht | THB | 0.03396681 | 0.03130870 | 29.44050143 | 31.94000000 | 53.00123600 | 42.08733800 |
| Tunisian dinar | TND | 0.62364911 | 0.57484479 | 1.60346576 | 1.73960000 | 2.88669224 | 2.29227092 |
| New Turkish Lira | TRY | 0.50250116 | 0.46317740 | 1.99004517 | 2.15900000 | 3.58264460 | 2.84431430 |
| Trinidad and Tobago dollar | TTD | 0.17097694 | 0.15759696 | 5.84874182 | 6.34530000 | 10.52939082 | 8.36120181 |
| New Taiwan dollar | TWD | 0.03631951 | 0.03347729 | 27.53341322 | 29.87100000 | 49.56793740 | 39.36101670 |
| Ukraine Hryvnia | UAH | 0.08281679 | 0.07633598 | 12.07484561 | 13.10000000 | 21.73814000 | 17.26187000 |
| U.S. dollar | USD | 1.08490000 | 1.00000000 | 0.92174394 | 1.00000000 | 1.65940000 | 1.31770000 |
| Uruguayan Peso Uruguayo | UYU | 0.04526074 | 0.04171882 | 22.09420223 | 23.97000000 | 39.77581800 | 31.58526900 |
| Bolivar Fuerte | VEF | 0.17242256 | 0.15892945 | 5.79970504 | 6.29210000 | 10.44111074 | 8.29110017 |
| Vietnam dong | VND | 0.00005119 | 0.00004718 | 19,536.36279841 | 21,195.00000000 | 35,170.98300000 | 27,928.65150000 |
| East Caribbean dollar | XCD | 0.40181481 | 0.37037037 | 2.48870864 | 2.70000000 | 4.48038000 | 3.55779000 |
| South African rand | ZAR | 0.10223332 | 0.09423294 | 9.78154669 | 10.61200000 | 17.60955280 | 13.98343240 |
| Zambian kwacha | ZMK | NA | NA | NA | NA | NA | NA |

| CoCd | Transaction | PTyp | TTyp | Partner | | | Exchange rate | USD equivalent |
|------|-------------|------|------|---------|---|-----------------|---------------|----------------|
| 6111 | 2000000000507 | DIN | INV | CIT31 | INR | 50,000,000.00 | 60.53000000 | 826,036.68 |
| 6111 | 2000000000508 | DIN | INV | CIT31 | INR | 50,000,000.00 | 60.53000000 | 826,036.68 |
| 6111 | 6111-2014-11 | DIN | INV | ANZ01 | INR | 200,000,000.00 | 60.53000000 | 3,304,146.70 |
| 6111 | 6111-2014-12 | DIN | INV | CIT31 | INR | 50,000.00 | 60.53000000 | 826.04 |
| 6111 | 6111-2014-13 | DIN | INV | CIT31 | INR | 50,000.00 | 60.53000000 | 826.04 |
| 6111 | 6111-2014-15 | DIN | INV | CIT31 | INR | 500,000,000.00 | 60.53000000 | 8,260,366.76 |
| 6111 | 6111-2014-16 | DIN | INV | CIT31 | INR | 500,000,000.00 | 60.53000000 | 8,260,366.76 |
| 6111 | 6111-2014-18 | DIN | INV | ANZ01 | INR | 398,000,000.00 | 60.53000000 | 6,575,251.94 |
| 6111 | 6111-2014-19 | DIN | INV | CIT31 | INR | 510,000,000.00 | 60.53000000 | 8,425,574.10 |
| 6111 | 6111-2014-20 | DIN | INV | CIT31 | INR | 510,000,000.00 | 60.53000000 | 8,425,574.10 |
| 6111 | 6111-2014-21 | DIN | INV | CIT31 | INR | 145,000,000.00 | 60.53000000 | 2,395,506.36 |
| 6111 | 6111-2013-23 | RCB | INV | ICI01 | INR | 19,200,975.00 | 60.53000000 | 317,283.75 |
| | | | | | | % | | |
| 6111 | TOTAL | | | | | 2,882,303,975.00 | | 47,617,775.90 |

| Co Code | Co Cd | INR | Exchange Rate | USD | Account Currency | MBS | total cash by co code | deposits | Total cash and deposits | Total cash and deposits ($m) | IN ASIA CASH REPORTING FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ANZ0113640 | 6111 | 5,889,782.48 | 60.53000000 | 97,303.20 | INR | | | | | | |
| ABN0513820 | 6111 | | 60.53000000 | 0.00 | INR | | | | | 0 | YES |
| CIT3113600 | 6111 | 187,160,342.75 | 60.53000000 | 3,092,025.15 | INR | | | | | 0 | YES |
| ICI0113630 | 6111 | 3164151.51 | 60.53000000 | 52,274.10 | INR | | 3,241,603.45 | 47,617,775.90 | 50,859,379.34 | 50.8594 | YES |

| CoCd | Transaction | PTyp | TTyp | Partner | Trader | Portfolio | TCurr | Amount | Exchange Rate | USD equivalent | Int.rate |
|------|-------------|------|------|---------|--------|-----------|-------|--------|---------------|----------------|----------|
| 6111 | 2000000000057 | RCB | INV | CIT31 | R GUPTA | | INR | 0.00 | 60.53000000 | 0.00 | |
| 6111 | 2000000000150 | RCB | INV | ICI01 | R GUPTA | | INR | 0.00 | 60.53000000 | 0.00 | |
| 6111 | 2000000000165 | RCB | INV | ICI01 | R GUPTA | | INR | 0.00 | 60.53000000 | 0.00 | |
| 6111 | 2000000000504 | RCB | INV | ICI01 | R GUPTA | | INR | 0.00 | 60.53000000 | 0.00 | |
| 6111 | 611-2012-18 | RCB | INV | ICI01 | R GUPTA | | INR | 19,203,975.00 | 60.53000000 | 317,263.75 | |
| 6111 | 2000000000212 | RCB | INV | ICI01 | R GUPTA | | INR | 0.00 | 60.53000000 | 0.00 | |
| 6111 | 2000000000213 | RCB | INV | ICI01 | R GUPTA | | INR | 0.00 | 60.53000000 | 0.00 | |
| 6111 | 2000000000283 | RCB | INV | ICI01 | R GUPTA | | INR | 0.00 | 60.53000000 | 0.00 | |
| 6111 | 2000000000284 | RCB | INV | ICI01 | R GUPTA | | INR | 0.00 | 60.53000000 | 0.00 | |
| 6111 | 2000000000285 | RCB | INV | ICI01 | R GUPTA | | INR | 0.00 | 60.53000000 | 0.00 | |
| 6111 | 2000000000314 | RCB | INV | ICI01 | R GUPTA | | INR | 0 | 60.53000000 | 0.00 | |

**EXHIBIT 13**

**Produced in Native Format**

EXHIBIT

125

exhibitsticker.com

CONFIDENTIAL

NNC-NNL-PPI000034

## Global Cash Summary - Information

| Go to Worksheet | Worksheet Purpose | Go to Worksheet | Worksheet Purpose |
|---|---|---|---|
| Run Macros | Access to macros to update this spreadsheet | Cash | Cash details from SAP - will be either as originally loaded from SAP or after adjustments are made |
| Checks | Checks control totals between key worksheets in this spreadsheet to check accuracy | Cash Original | Cash - Original details from SAP |
| Summary $m | Global Cash Summary Report rounded to US$M | Cash-Manual | Cash - Details from SAP after manual corrections |
| Summary $ | Global Cash Summary Report unrounded | Deposits | Deposits from SAP |
| Citibank-Summary | Report identifies differences between Citibank direct and SAP | Input Raw Cash | Cash details for loading into Corporate Report |
| CC Summary | Global Cash Summary by Company Code | Input Raw Deposits | Deposit details for loading into Corporate Report |
| FX | Current FX rates copied from Nortel Intranet | Input Raw Citibank | Raw data from Citibank Direct .csv file |
| Accounts | Lists individual accounts for "exceptional treatment" in Summary Reports | CP Compliance | Compliance Report |
| Manual | Items that have to be input manually:- Cash, Deposits, Zero Balance Accounts, FX rates, Manual Bank Accounts and User selected rounding filter for Citibank-Summary report | CP Summary | Compliance Summary Data |
| Restricted Cash | Restricted Cash Report | CP Master | Compliance Master Data |
| Available Cash | Available Cash Report | CP Cash | Compliance Cash |

| Entity | Account | Amount-Local Citibank | Currency | FX Rate | Amount-USD Citibank | Amount-Cash SAP-USD | Difference | Difference - Selective | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 1001-CIT01-00000-NNC(CITI)GEN | 30428374 | 6655443.38 | USD | 1 | 6655443.38 | 1485524.52 | 5169918.86 | 5169918.86 | |
| 1001-RBC01-00010-NNC CA(RBC) | 049808NNC 8 | 506075.39 | CAD | 1.0849 | 466471.92 | 511862.26 | -45390.34 | -45390.34 | |
| 1002-CIT01-00550-NNL (CITI) OPER | 30599931 | ######### | USD | 1 | 64336147.83 | 3452119.73 | 60884028.10 | 60884028.10 | |
| 1002-CIT02-00590-NNL(CITI)AP-CHECK | 38696445 | 1072304.12 | USD | 1 | 1072304.12 | 332578.73 | 739725.39 | 739725.39 | |
| 1002-CIT03-00660-NNL (CITI) AP CAD | 2159786028 | 1310607.89 | CAD | 1.0849 | 1208044.88 | 2285874.23 | -1077829.35 | -1077829.35 | |
| 1002-CIT03-00710-CANADA (CITI) | 2159786047 | 8478103.85 | CAD | 1.0849 | 7814640.84 | 8657310.17 | -842669.33 | -842669.33 | |
| 1002-RBC01-00610-NNL CA(RBC) | 1NTCL CONS | 1951227.86 | CAD | 1.0849 | 1798532.45 | 1467579.12 | 330953.33 | 330953.33 | |
| 1002-RBC01-00640-NNL CA(RBC) | 005401NNL 8 | 227231.17 | USD | 1 | 227231.17 | 216769.24 | 10461.93 | 10461.93 | |
| 1002-RBC01-00680-NNL CA(RBC) | 163344NNL 8 | 171363.68 | CAD | 1.0849 | 157953.43 | 123125.94 | 34827.49 | 34827.49 | |
| 1002-RBC02-00580-NNC CANADA (RBC | 60NORTEL L | ######### | CAD | 1.0849 | 15594544.83 | 11163331.71 | 4431213.12 | 4431213.12 | |
| 1002-RBC02-00600-NNL CANADA (RBC | 29NNL PAYR | 184555.16 | CAD | 1.0849 | 170112.60 | 409854.01 | -239741.41 | -239741.41 | |
| 1003-CIT01-00890-NNL (CITI) MAIN | 38545364 | 0.00 | USD | 1 | 0.00 | 11356460.45 | -11356460.45 | -11356460.45 | |
| 1003-CIT01-19290-MEN BIDS-USD | 30812771 | 369753.83 | USD | 1 | 369753.83 | 370553.83 | -800.00 | -800.00 | |
| 1003-CIT31-00800-NNL (CITI)INDIA | 2071045 | ######### | INR | 60.53 | 196655.83 | 226153.26 | -29497.43 | -29497.43 | |
| 1003-RBC01-00840-NNL CA(RBC) | 29NORTEL TE | 492833.00 | CAD | 1.0849 | 454265.83 | 0.00 | 454265.83 | 454265.83 | |
| 1101-CIT02-01180-BNR CANADA (CITI) | 38747273 | 3075342.89 | USD | 1 | 3075342.89 | 3089331.02 | -13988.13 | -13988.13 | |
| 1101-CIT03-01150-CANADA (CITI) | 2015554004 | 5576217.87 | CAD | 1.0849 | 5139845.03 | 5697674.23 | -557829.20 | -557829.20 | |
| 1102-CIT01-01240-CANADA(CITI) | 30840932 | 1583712.86 | USD | 1 | 1583712.86 | 1164134.00 | 419578.86 | 419578.86 | |
| 2002-CIT39-03640-CALA T&T(CITI) | 106586004 | 0.00 | TTD | 6.3453 | 0.00 | 525717.13 | -525717.13 | -525717.13 | |
| 3100-CIT01-04030-ARGENTINA (CITI) | 36235266 | 9301258.58 | USD | 1 | 9301258.58 | 9847824.05 | -546565.47 | -546565.47 | |
| 3100-CIT06-04000-ARGENTINA (CITI) | 815023013 | 899113.28 | ARS | 8.4015 | 107018.18 | 49944.97 | 57073.21 | 57073.21 | |
| 3100-HSB04-04040-NNDA(HSBC)ARGE | 3018086866 | 3817707.28 | USD | 1 | 3817707.28 | 3843306.94 | -25599.66 | -25599.66 | |
| 3110-CIT12-04140-BRAZ(CITI1448757) | 43652028 | 1796439.45 | BRL | 2.24 | 801981.90 | 0.00 | 801981.90 | 801981.90 | Not Found |
| 3110-CIT12-04200-BRAZ(CITI1476360) | 43652044 | 0.00 | BRL | 2.24 | 0.00 | 0.00 | 0.00 | 0.00 | Not Found |
| 3110-CIT12-18200-BRAZ(CITI1480898) | 43652052 | 0.00 | BRL | 2.24 | 0.00 | 0.00 | 0.00 | 0.00 | Not Found |
| 3130-CIT13-04400-NN CHILE (CITI) | 104598005 | 0.00 | CLP | 594.96 | 0.00 | 4488107.73 | -4488107.73 | -4488107.73 | |
| 3130-CIT13-04410-NN CHILE (CITI) | 104598501 | 0.00 | USD | 1 | 0.00 | 52564.55 | -52564.55 | -52564.55 | |
| 3140-CIT16-04450-NTD(CITI) COLOMBI | 5061406028 | 4221.71 | COP | 1927.45 | 2.19 | 0.00 | 2.19 | 0.00 | Not Found |
| 3150-CIT20-04650-ECUADOR (CITI) | 146382037 | 0.00 | USD | 1 | 0.00 | 858003.76 | -858003.76 | -858003.76 | |
| 3170-CIT01-04800-NTD(CITI)MEXICO | 36186644 | 9375855.98 | USD | 1 | 9375855.98 | 9655931.00 | -280075.02 | -280075.02 | |
| 3170-CIT41-04790-NTD MX(CITI) | 298441004 | 1255191.96 | MXN | 13.0955 | 95849.11 | 48547.97 | 47301.14 | 47301.14 | |
| 3171-CIT41-04970-MEXICO (CITI) | 36831113 | 4393895.08 | USD | 1 | 4393895.08 | 6259438.49 | -1865543.41 | -1865543.41 | |
| 3171-CIT41-04950-NTD MEXICO (CITI) | 9062009 | ######### | MXN | 13.0955 | 814800.75 | 147955.12 | 666845.63 | 666845.63 | |
| 3171-CIT41-04960-NTD MEXICO (CITI) | 9062017 | 537194.94 | MXN | 13.0955 | 41021.34 | 167618.20 | -126596.86 | -126596.86 | |
| 3190-CIT27-05050-NNL PARAGUAY(CIT | 40482008 | ######### | PYG | 4270 | 5437.00 | 5424.65 | 12.38 | 12.38 | |
| 3190-CIT27-05060-NN PARAGUAY (CITI | 5040482018 | 318685.86 | USD | 1 | 318685.86 | 393843.77 | -75157.91 | -75157.91 | |
| 3200-CIT46-05100-NN PERU (CITI) | 3194019 | 0.00 | PEN | 2.8445 | 0.00 | 244009.11 | -244009.11 | -244009.11 | |
| 3200-CIT46-05120-NN PERU (CITI) | 5003194118 | 0.00 | USD | 1 | 0.00 | 1666209.32 | -1666209.32 | -1666209.32 | |
| 3210-CIT24-05150-URUGUAY(CITI) | 56097007 | 0.00 | UYU | 23.97 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 3210-CIT24-05160-URUGUAY(CITI) | 56097619 | 0.00 | USD | 1 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 3210-CIT24-05170-URUGUAY(CITI) | 56097627 | 3589430.54 | USD | 1 | 3589430.54 | 3874714.14 | -285283.60 | -285283.60 | |

**EXHIBIT 14**

# Produced in Native Format

EXHIBIT

126

exhibitsticker.com

CONFIDENTIAL

NNC-NNL-PPI000035

| Co Code | CCY | Ericsson Previous day | Previous 2 days | Avaya Previous day | Ciena |
|---|---|---|---|---|---|
| 1002 | USD | | | | |
| 1002 | CAD | | | | |
| 2001 | USD | | | | |
| 2002 | USD | | | | |
| 3270 | USD | | | | |
| 4210 | USD | | | | |
| 4360 | USD | | | | |
| 4360 | GBP | | | | |
| 4360 | EUR | | | | |
| 4210 | EUR | | | | |
| 6210 | USD | | | | |
| 4210 | CAD | | | | |
| 4162 | USD | | | | |
| 4220 | USD | | | | |
| 4240 | EUR | | | | |
| 4110 | EUR | | | | |
| 4310 | EUR | | | | |

**Genband**

| Total | | FX rate | USD Equiv | USD in $M |
|---|---|---|---|---|
| | 0.00 | 1.00000000 | $0.00 | 0 |
| | $0.00 | 1.08490000 | $0.00 | 0 |
| | $0.00 | 1.00000000 | $0.00 | 0 |
| | $0.00 | 1.00000000 | $0.00 | 0 |
| | $0.00 | 1.00000000 | $0.00 | 0 |
| | $0.00 | 1.00000000 | $0.00 | 0 |
| | $0.00 | 1.00000000 | $0.00 | 0 |
| | $0.00 | 0.60262746 | $0.00 | 0 |
| | $0.00 | 0.75889808 | $0.00 | 0 |
| | $0.00 | 0.75889808 | $0.00 | 0 |
| | $0.00 | 1.00000000 | $0.00 | 0 |
| | $0.00 | 1.08490000 | $0.00 | 0 |
| | $0.00 | 1.00000000 | $0.00 | 0 |
| | $0.00 | 1.00000000 | $0.00 | 0 |
| | $0.00 | 0.75889808 | $0.00 | 0 |
| | $0.00 | 0.75889808 | $0.00 | 0 |
| | $0.00 | 0.75889808 | $0.00 | 0 |

August 2014 month end currency exchange rates released by NNL Finance on 2014-08-29
Source: Reuters

| August 2014 Currency | Code | CAD per Unit | USD per Unit | Units per CAD | Units per USD | Units per GBP | Units per EUR |
|---|---|---|---|---|---|---|---|
| United Arab Emirates dirham | AED | 0.29536359 | 0.27224960 | 3.38565766 | 3.67310000 | 6.09514214 | 4.84004387 |
| Argentine Peso | ARS | 0.12913170 | 0.11902636 | 7.74403171 | 8.40150000 | 13.94144910 | 11.07065655 |
| Australian collar | AUD | 1.01294254 | 0.93446080 | 0.98728442 | 1.08992346 | 1.77661694 | 1.43990756 |
| Barbados dollar | BBD | 0.54245000 | 0.50000000 | 1.84348788 | 2.00000000 | 3.31880000 | 2.63540000 |
| Bangladeshi taka | BDT | 0.01403856 | 0.01293996 | 71.23237165 | 77.28000000 | 128.23843200 | 101.83185600 |
| Bulgarian Lev | BGN | 0.73085769 | 0.67367286 | 1.36823670 | 1.48440000 | 2.46321336 | 1.95599388 |
| Bolivian boliviano | BOB | 0.15700434 | 0.14471780 | 6.36925062 | 6.91000000 | 11.46645400 | 9.10530700 |
| Brazilian Real | BRL | 0.48433036 | 0.44642857 | 2.06470642 | 2.24000000 | 3.71705600 | 2.95164800 |
| Canadian dollar | CAD | 1.00000000 | 0.92174394 | 1.00000000 | 1.08490000 | 1.80023305 | 1.42957273 |
| Swiss franc | CHF | 1.18555349 | 1.09277675 | 0.84348788 | 0.91510000 | 1.51851694 | 1.20582727 |
| Chilean peso | CLP | 0.00182348 | 0.00168079 | 548.40077426 | 594.96000000 | 987.27662400 | 783.97879200 |
| Chinese Rinminbi yuan | CNY | 0.17659602 | 0.16277631 | 5.66264172 | 6.14340000 | 10.19435796 | 8.09515818 |
| Colombian peso | COP | 0.00056287 | 0.00051882 | 1,776.61535625 | 1,927.45000000 | 3,198.61053000 | 2,539.80036500 |
| Costa Rican colon | CRC | 0.00200907 | 0.00185185 | 497.74172735 | 540.00000000 | 896.07600000 | 711.55800000 |
| Czech Koruna | CZK | 0.05144144 | 0.04741584 | 19.43957968 | 21.09000000 | 34.99674600 | 27.79029300 |
| Danish krone | DKK | 0.19183775 | 0.17682528 | 5.21273850 | 5.65530000 | 9.38440482 | 7.45198881 |
| Dominican Peso | DOP | 0.02499770 | 0.02304147 | 40.00368698 | 43.40000000 | 72.01796000 | 57.18818000 |
| Algerian dinar | DZD | 0.01350529 | 0.01244842 | 74.04507328 | 80.33150000 | 133.30209110 | 105.85281755 |
| Estonian Kroon | EEK | NA | NA | NA | NA | NA | NA |
| Egyptian pound | EGP | 0.15173214 | 0.13985818 | 6.59056134 | 7.15010000 | 11.86487594 | 9.42168677 |
| Euro | EUR | 1.42957273 | 1.31770000 | 0.69950971 | 0.75869898 | 1.25931547 | 1.00000000 |
| Fiji dollar | FJD | 0.58541204 | 0.53960069 | 1.70819955 | 1.85322461 | 3.07624042 | 2.44100487 |
| U.K. pound sterling | GBP | 1.80028305 | 1.65949069 | 0.55546921 | 0.60262746 | 1.00000000 | 0.79428220 |
| Guatemala quetzal | GTQ | 0.13959084 | 0.12866701 | 7.16379390 | 7.77200000 | 12.89685680 | 10.24116440 |
| Hong Kong dollar | HKD | 0.13998529 | 0.12903059 | 7.14360771 | 7.75010000 | 12.86051594 | 10.21730677 |
| Hungary forint | HUF | 0.00453212 | 0.00417746 | 220.64706425 | 239.38000000 | 397.22717200 | 315.43102600 |
| Indonesia rupiah | IDR | 0.00009281 | 0.00008554 | 10,775.18665315 | 11,690.00000000 | 19,398.38500000 | 15,403.91300000 |
| New Israeli Shequel | ILS | 0.30402130 | 0.28022979 | 3.28924325 | 3.56850000 | 5.92156890 | 4.70221245 |
| Indian rupee | INR | 0.01792334 | 0.01652073 | 55.79316066 | 60.53000000 | 100.44348200 | 79.76038100 |
| Icelandic krona | ISK | 0.00929888 | 0.00857118 | 107.53986543 | 116.67000000 | 193.60219800 | 153.73605900 |
| Jamaican dollar | JMD | 0.00963927 | 0.00888494 | 103.74228039 | 112.55000000 | 186.76547000 | 148.30713500 |
| Jordanian Dinar | JOD | 1.53147939 | 1.41163185 | 0.65296341 | 0.70840000 | 1.17551896 | 0.93345868 |
| Japanese yen | JPY | 0.01043775 | 0.00962094 | 95.80606508 | 103.94000000 | 172.47803600 | 136.96173800 |
| Korean (Republic) won | KRW | 0.00106982 | 0.00098610 | 934.74052908 | 1,014.10000000 | 1,682.79754000 | 1,336.27957000 |
| Kuwaiti dinar | KWD | 3.81268670 | 3.51432086 | 0.26228224 | 0.28455000 | 0.47218227 | 0.37495154 |
| Lebanese pound | LBP | 0.00071705 | 0.00066094 | 1,394.59858051 | 1,513.00000000 | 2,510.67200000 | 1,993.68010000 |
| Sri Lankan rupee | LKR | 0.00833257 | 0.00768049 | 120.01106093 | 130.20000000 | 216.05388000 | 171.56454000 |
| Lithuanian Litus | LTL | 0.41406817 | 0.38166482 | 2.41506130 | 2.62010000 | 4.34779394 | 3.45250577 |
| Latvian lats | LVL | 2.13436947 | 1.96734212 | 0.46852244 | 0.50830000 | 0.84347302 | 0.66978691 |
| Moroccan dirham | MAD | 0.12842245 | 0.11837261 | 7.78680063 | 8.44790000 | 14.01844526 | 11.13179783 |
| Mexican Nuevo Peso | MXN | 0.08284525 | 0.07636211 | 12.07069776 | 13.09550000 | 21.73067270 | 17.25594035 |
| Malaysian ringgit | MYR | 0.34424877 | 0.31730922 | 2.90487603 | 3.15150000 | 5.22959910 | 4.15273155 |
| Nigerian naira | NGN | 0.00669072 | 0.00616713 | 149.46077980 | 162.15000000 | 269.07171000 | 213.66595500 |
| Norwegian krone | NOK | 0.17531754 | 0.16159788 | 5.70393585 | 6.18820000 | 10.26869908 | 8.15419114 |
| New Zealand dollar | NZD | 0.90905018 | 0.83830000 | 1.09967065 | 1.19303269 | 1.97971244 | 1.57205917 |
| Omani rial | OMR | 2.81784889 | 2.59733513 | 0.35488063 | 0.38501000 | 0.63888559 | 0.50733768 |
| Peru Nuevo Sol | PEN | 0.38140271 | 0.35155563 | 2.62190064 | 2.84450000 | 4.72016830 | 3.74819765 |
| Papua New Guinea kina | PGK | 0.43091282 | 0.40160600 | 2.20410064 | 2.49880000 | 4.12901538 | 3.27909228 |
| Philippine Peso | PHP | 0.02487105 | 0.02292474 | 40.20739239 | 43.62100000 | 72.38468740 | 57.47939170 |
| Pakistan rupee | PKR | 0.01068446 | 0.00984834 | 93.59387962 | 101.54000000 | 168.49547600 | 133.79925800 |
| Poland new zloty | PLN | 0.33848122 | 0.31199301 | 2.95437367 | 3.20520000 | 5.31870888 | 4.22349204 |
| Paraguay guarani | PYG | 0.00025407 | 0.00023419 | 3,935.84662181 | 4,270.00000000 | 7,085.63800000 | 5,626.57900000 |
| Qatari riyal | QAR | 0.29795122 | 0.27463474 | 3.35625403 | 3.64120000 | 6.04220728 | 4.79800924 |
| Romanian new leu | RON | 0.32396679 | 0.29861443 | 3.08673610 | 3.34880000 | 5.55699872 | 4.41271376 |
| Russian Ruble | RUB | 0.02937322 | 0.02707459 | 34.04461241 | 36.93500000 | 61.28593900 | 48.66924950 |
| Saudi riyal | SAR | 0.28926816 | 0.26663112 | 3.45700065 | 3.75050000 | 6.22357970 | 4.94203385 |
| Swedish krona | SEK | 0.15591228 | 0.14371120 | 6.41386303 | 6.95840000 | 11.54676895 | 9.16908368 |
| Singapore dollar | SGD | 0.86917161 | 0.80115366 | 1.15052079 | 1.24820000 | 2.07126308 | 1.64475314 |
| Thailand baht | THB | 0.03396681 | 0.03130870 | 29.44050143 | 31.94000000 | 53.00123600 | 42.08733800 |
| Tunisian dinar | TND | 0.62364911 | 0.57484479 | 1.60346576 | 1.73960000 | 2.88669224 | 2.29227092 |
| New Turkish Lira | TRY | 0.50250116 | 0.46317740 | 1.99004517 | 2.15900000 | 3.58264460 | 2.84491430 |
| Trinidad and Tobago dollar | TTD | 0.17097694 | 0.15759696 | 5.84874182 | 6.34530000 | 10.52939082 | 8.36120181 |
| New Taiwan dollar | TWD | 0.03631951 | 0.03347729 | 27.53341322 | 29.87100000 | 49.56793740 | 39.36101670 |
| Ukraine Hryvnia | UAH | 0.08281679 | 0.07633588 | 12.07484561 | 13.10000000 | 21.73814000 | 17.26187000 |
| U.S. dollar | USD | 1.08490000 | 1.00000000 | 0.92174394 | 1.00000000 | 1.65940000 | 1.31770000 |
| Uruguayan Peso Uruguayo | UYU | 0.04526074 | 0.04171882 | 22.09420223 | 23.97000000 | 39.77581800 | 31.58526900 |
| Bolivar Fuerte | VEF | 0.17242256 | 0.15892945 | 5.79970504 | 6.29210000 | 10.44111074 | 8.29110017 |
| Vietnam dong | VND | 0.00005119 | 0.00004718 | 19,536.36279841 | 21,195.00000000 | 35,170.98300000 | 27,928.65150000 |
| East Caribbean dollar | XCD | 0.40181481 | 0.37037037 | 2.48870864 | 2.70000000 | 4.48038000 | 3.55779000 |
| South African rand | ZAR | 0.10223332 | 0.09423294 | 9.78154669 | 10.61200000 | 17.60955280 | 13.98343240 |
| Zambian kwacha | ZMK | NA | NA | NA | NA | NA | NA |

| CoCd Transaction | PTyp TTyp Partner | | Amount | Exchange rate | USD equivalent |
|---|---|---|---|---|---|
| 1001 2000000000022 | RCO INV JPT02 | USD | 9,659,556.69 | 1.00000000 | 9,659,556.69 |
| 1001 | RCO TDB01 | CAD | 11,990,234.73 | 1.08490000 | 11,051,926.20 |
| 1001 Total | | | | | 20,711,482.89 |
| 1002 2000000001287 | SFI INV JPM01 | USD | 0.00 | 1.00000000 | 0.00 |
| 1002 2000000001143 | SFI INV JPM01 | CAD | 44,371,832.04 | 1.08490000 | 40,898,730.70 |
| 1002 Total | | | | | 40,898,730.70 |
| 1003 2000000001300 | RCO INV EDC01 | USD | 540,000.00 | 1.00000000 | 540,000.00 |
| 1003 2000000001511 | RCM INV RBC02 | USD | 100,721,943.78 | 1.00000000 | 100,721,943.78 |
| 1003 2000000001512 | RCM INV JPM01 | USD | 120,000,000.00 | 1.00000000 | 120,000,000.00 |
| 1003 2000000001589 | SFI INV RBC02 | CAD | 0.00 | 1.08490000 | 0.00 |
| 1003 2000000001584 | SFI INV JPM01 | CAD | 0.00 | 1.05490000 | 0.00 |
| 1003 Total | | | | | 229,781,043.78 |
| 4002 | SFI INV BAR01 | GBP | 14,004,875.07 | 0.60262748 | 23,230,069.53 |
| 4002 | SFI INV HSB01 | GBP | 14,090,529.13 | 0.60262748 | 23,381,823.67 |
| 4002 | SFI INV SAN01 | GBP | 11,098,506.46 | 0.60262748 | 18,418,911.27 |
| 4092 | SFI INV BOS01 | USD | 15,028,951.39 | 1.00000000 | 15,028,951.39 |
| 4002 Total | | | | | 80,067,375.08 |
| 4110 2000000000030 | SFI INV SAN01 | EUR | 2,505,182.67 | 0.75680808 | 3,301,053.11 |
| 4110 | SFI INV BAR01 | EUR | 2,405,611.26 | 0.75680808 | 3,180,873.96 |
| 4110 | | | | | 8,478,937.07 |
| 4130 | SFI INV RBS04 | USD | 1,550,210.97 | 1.00000000 | 1,550,210.97 |
| 4130 | SFI INV HSB01 | CZK | 0.00 | 21.09000000 | 0.00 |
| 4130 | | | | | 1,550,210.97 |
| 4160 2000000000032 | RCO INV CIT06 | USD | 20,000.00 | | 20,000.00 |
| 4160 Total | | | | | 20,000.00 |
| 4162 | SFI INV BAR01 | EUR | 8,214,670.34 | 0.75680808 | 8,180,082.97 |
| 4162 | SFI INV HSB01 | USD | 1,041,407.73 | 1.00000000 | 1,041,407.73 |
| 4162 | SFI INV SAN01 | EUR | 5,010,325.71 | 0.75680808 | 6,602,108.10 |
| 4162 | | | | | 16,732,596.68 |
| 4180 | RCB INV DEU01 | EUR | 87,355.03 | 0.75680808 | 115,107.72 |
| 4180 | SFI INV SAN01 | EUR | 6,210,035.21 | 0.75680808 | 8,182,953.49 |
| 4180 | SFI INV BAR01 | EUR | 7,700,775.00 | 0.75680808 | 10,147,311.22 |
| 4180 | SFI INV BAR01 | EUR | 0.00 | 0.75680808 | 0.00 |
| 4180 Total | | | | | 18,445,382.34 |
| 4210 | RCB INV CIT29 | USD | 92,519.40 | 1.00000000 | 92,519.40 |
| 4210 | SFI INV BAR01 | EUR | 15,915,837.01 | 0.75680808 | 20,972,038.07 |
| 4210 | SFI INV SAN01 | EUR | 12,584,143.30 | 0.75680808 | 16,555,771.53 |
| 4210 | SFI INV RBS04 | NOK | 11,107,385.04 | 6.16520000 | 1,704,926.70 |
| 4210 | SFI INV SGS01 | USD | 17,710,553.90 | 1.00000000 | 17,710,553.90 |
| 4210 | SFI INV HSB01 | USD | 1,909,705.14 | 1.00000000 | 1,909,705.14 |
| 4210 | SFI INV HSB01 | USD | 0.00 | 1.00000000 | 0.00 |
| 4210 Total | | | | | 58,928,512.93 |
| 4220 | SFI INV SAN01 | EUR | 2,002,871.61 | 0.75680808 | 2,639,183.02 |
| 4220 | SFI INV BAR01 | EUR | 1,902,540.94 | 0.75680808 | 2,506,976.20 |
| 4220 Total | | | | | 5,146,182.42 |
| 4240 | SFI INV SAN01 | EUR | 2,002,442.74 | 0.75680808 | 2,638,016.16 |
| 4240 | SFI INV SAN01 | USD | 1,506,308.78 | 1.00000000 | 1,506,308.76 |
| 4240 | SFI INV BAR01 | EUR | 2,804,053.97 | 0.75680808 | 3,694,001.92 |
| 4240 | | | | | 7,833,826.84 |
| 4200 | SFI INV HSB01 | PLN | 16,708,260.40 | 3.20520000 | 5,212,238.49 |
| 4200 | SFI INV BOS01 | PLN | 15,738,181.44 | 3.20520000 | 4,609,575.63 |
| 4200 | SFI INV BAR01 | PLN | 16,200,060.00 | 3.20520000 | 5,054,286.78 |
| 4260 | SFI INV RBS04 | PLN | 16,518,718.71 | 3.20520000 | 5,153,724.17 |
| 4200 | SFI INV CIT42 | PLN | 73,790.32 | 3.20520000 | 72,840.48 |
| 4200 Total | | | | | 20,352,666.56 |
| 4270 | SFI INV BAR01 | EUR | 1,553,051.30 | 0.75680808 | 2,047,841.63 |
| 4270 Total | | | | | 2,047,841.63 |
| 4310 | SFI INV RBS03 | EUR | 2,503,927.85 | 0.75680808 | 3,299,425.46 |
| 4310 | SFI INV BAR01 | EUR | 3,650,060.00 | 0.75680808 | 4,880,605.00 |
| 4310 | SFI INV SAN01 | EUR | 3,004,053.86 | 0.75680808 | 3,958,441.77 |
| 4310 | | | | | 12,087,472.25 |
| 4320 | SFI INV RBS04 | SEK | 6,700,000.00 | 6.95640000 | 962,885.03 |
| 4320 | | | | | 962,885.03 |
| 4300 | SFI INV BAR01 | GBP | 30,132,194.28 | 0.60262748 | 50,001,302.50 |
| 4300 | SFI INV SAN01 | GBP | 24,101,049.02 | 0.60262748 | 30,093,261.57 |
| 4300 | SFI INV HSB01 | GBP | 14,580,025.97 | 0.60262748 | 24,161,902.58 |
| 4300 | SFI INV HSB01 | GBP | 15,192,232.06 | 0.60262748 | 25,209,073.16 |
| 4300 | SFI INV RBS04 | USD | 0.00 | 1.00000000 | 0.00 |
| 4300 Total | | | | | 139,366,520.00 |
| 6100 2000000000004 | DAN INV CIT08 | AUD | 3,000,000.00 | 1.06097840 | 3,644,940.00 |
| 6100 Total | | | | | 3,644,940.00 |
| 6111 2000000000507 | DIN INV CIT31 | INR | 50,000,000.00 | 80.53000000 | 620,030.68 |
| 6111 2000000000506 | DIN INV CIT31 | INR | 50,000,000.00 | 80.53000000 | 620,030.68 |
| 6111 6111-2013-03 | RCB INV ICI01 | INR | | 80.53000000 | - |
| 6111 6111-2013-36 | DIN INV ANZ01 | INR | | 80.53000000 | - |
| 6111 6111-2014-11 | DIN INV ANZ01 | INR | 200,000,000.00 | 80.53000000 | 3,304,148.70 |
| 6111 6111-2014-12 | DIN INV CIT31 | INR | 50,000.00 | 80.53000000 | 625.04 |
| 6111 6111-2014-13 | DIN INV CIT31 | INR | 50,000.00 | 80.53000000 | 625.04 |
| 6111 6111-2014-14 | DIN INV ANZ01 | INR | | 80.53000000 | 0.00 |
| 6111 6111-2014-15 | DIN INV CIT31 | INR | 500,000,000.00 | 80.53000000 | 8,260,366.78 |
| 6111 6111-2014-16 | DIN INV CIT31 | INR | 500,000,000.00 | 80.53000000 | 8,200,366.78 |
| 6111 6111-2014-17 | DIN INV CIT31 | INR | 0.00 | 80.53000000 | 0.00 |
| 6111 6111-2014-18 | DIN INV ANZ01 | INR | 300,000,000.00 | 80.53000000 | 6,975,291.94 |
| 6111 6111-2014-19 | DIN INV CIT31 | INR | 510,000,000.00 | 80.53000000 | 8,425,574.10 |
| 6111 6111-2014-20 | DIN INV CIT31 | INR | 510,000,000.00 | 80.53000000 | 8,425,574.10 |
| 6111 6111-2014-21 | DIN INV CIT31 | INR | 145,600,000.00 | 80.53000000 | 2,305,506.38 |
| 6111 6111-2014-22 | DIN INV ANZ01 | INR | | 80.53000000 | 0.00 |
| 6111 6111-2013-23 | RCB INV ICI01 | INR | 19,203,075.00 | 80.53000000 | 317,283.75 |
| 6111 Total | | | | | 47,817,775.90 |
| 6190 6190-2012-11 | SFI INV CIT46 | PKR | 0.00 | 101.54000000 | 0.00 |
| 6190 6190-2012-10 | SFI INV CIT46 | PKR | 0.00 | 101.54000000 | 0.00 |
| 6190 6190-2012-12 | SFI INV CIT46 | PKR | 0.00 | 101.54000000 | 0.00 |
| 6190 Total | | | | | 0.00 |
| 6210 2000000000006 | MM2 INV JPT01 | USD | 14,400,871.76 | 1.00000000 | 14,400,871.76 |
| 6210 Total | | | | | 14,400,871.76 |
| 7100 2000000000020 | MM2 INV JPT01 | USD | 9,700,000.00 | 1.00000000 | 9,700,000.00 |
| 7100 Total | | | | | 9,700,000.00 |
| 7120 7120-2012-01 | MM2 INV CIF01 | CNY | 92,629,561.55 | 6.14340000 | 15,110,453.75 |
| 7120 Total | | | | | 15,110,453.75 |
| 7124 2000000000000 | SFI INV ICB03 | CNY | 0.00 | 6.14340000 | - |
| 7124 2000000000001 | SFI INV ICB03 | CNY | 0.00 | 6.14340000 | - |
| 7124 2000000000002 | SFI INV BOC03 | CNY | 0.00 | 6.14340000 | - |
| 7124 2000000000003 | SFI INV BOC03 | CNY | 0.00 | 6.14340000 | - |
| 7124 7124-2012-02 | SFI INV ABC01 | CNY | 0.00 | 6.14340000 | - |
| 7124 2000000000005 | MM2 INV CIF01 | CNY | 0.00 | 6.14340000 | - |
| 7124 Total | | | | | 0.00 |
| **Grand Total** | | | | | **766,496,929.31** |

| | | | | |
|---|---|---|---|---|
| CIT7017410 | 5190 | 28.93 | NGN | |
| CIT0813450 | 6100 | -37.21 | AUD | |
| CIT0813460 | 6100 | 0.03 | USD | |
| CIT0819110 | 6100 | 0.00 | AUD | |
| ABN0513820 | 6111 | 0.00 | INR | |
| ANZ0113840 | 6111 | 97,303.20 | INR | |
| CIT3113800 | 6111 | 3,092,026.15 | INR | |
| ICI0113830 | 6111 | 52,274.10 | INR | |
| CIT2813850 | 6120 | 807,300.99 | IDR | |
| CIT2813860 | 6120 | 81,893.54 | USD | |
| CIT3414050 | 6140 | 6,034.26 | KRW | |
| CIT3414060 | 6140 | 49,536.54 | USD | |
| CIT3814600 | 6160 | 0.00 | MYR | |
| HSB0314650 | 6170 | 220,924.46 | USD | |
| CIT0514710 | 6180 | 0.00 | USD | |
| CIT4514700 | 6180 | 0.00 | NZD | |
| CIT4814750 | 6190 | 15,891,133.17 | PKR | |
| CIT4814760 | 6190 | 0.00 | USD | |
| CIT4714800 | 6200 | 0.00 | PHP | |
| CIT4714810 | 6200 | 0.00 | USD | |
| CIT0514920 | 6210 | 256,347.76 | SGD | |
| CIT0514930 | 6210 | 499,036.22 | USD | |
| CIT0914910 | 6210 | 0.00 | VND | |
| CIT3614940 | 6210 | 0.00 | LKR | Account Closed |
| CIT4015100 | 6220 | 39,743.52 | THB | |
| CIT4015120 | 6220 | 4,472,346.84 | USD | |
| CIT0915200 | 6231 | 11,835.37 | VND | |
| CIT0915210 | 6231 | 0.00 | USD | |
| CIT0515260 | 7100 | 0.00 | USD | |
| CIT2615290 | 7100 | 124,941.66 | HKD | |
| CIT2615300 | 7100 | 10,465,159.91 | USD | |
| CIT2615310 | 7100 | 241,942.35 | HKD | |
| BOT0115490 | 7110 | 0.00 | TWD0 | |
| CIT5915450 | 7110 | 0.00 | TWD0 | |
| CIT5915520 | 7110 | 0.00 | USD | |
| BCO0115840 | 7120 | 0.00 | CNY | |
| CIB0115730 | 7120 | 0.00 | CNY | |
| CIB0215750 | 7120 | 14,674,359.86 | CNY | |
| CIB0215830 | 7120 | 9,308,083.65 | USD | |
| CIT1415700 | 7120 | 145,639.55 | CNY | |
| CIT1415850 | 7120 | 9,035.17 | USD | |
| CIT1419230 | 7120 | 0.00 | USD | |
| ICB0115790 | 7120 | 2,164,865.13 | CNY | |
| MSB0115740 | 7120 | 0.00 | CNY | |
| MSB0119130 | 7120 | 0.00 | CNY | |
| BCO0116300 | 7121 | 0.00 | CNY | |
| CIT1416200 | 7121 | 0.00 | CNY | |
| ICB0216260 | 7121 | 4,836,976.30 | CNY | |
| ICB0216290 | 7121 | 609,047.30 | USD | |
| ABC0116540 | 7124 | 0.00 | CNY | |
| ABC0116610 | 7124 | 0.00 | USD | |
| ABC0119210 | 7124 | 0.00 | USD | |
| ABC0216630 | 7124 | 0.00 | CNY | |
| BOC0316500 | 7124 | 0.00 | CNY | |
| BOC0316510 | 7124 | 0.00 | USD | |
| BOC0319220 | 7124 | 0.00 | USD | |
| CMB0316700 | 7124 | 0.00 | CNY | |

| | | |
|---|---|---|
| IBC0116530 | 7124 | 0.00 CNY |
| ICB0316560 | 7124 | 0.00 CNY |
| ICB0316640 | 7124 | 0.00 USD |
| ICB03 | 7124 | 0.00 USD |
| ICB0416690 | 7124 | 0.00 CNY |
| ICB0516710 | 7124 | 0.00 CNY |
| BOC0117000 | 7125 | 0.00 CNY |
| CIB0217010 | 7125 | 0.00 USD |
| CIB0217050 | 7125 | 0.00 CNY |

| North America | | | | EMEA | | | | | Asia | | | | | | Cala | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Country | | | | SAP Country | | | | SAP | Country | | | | | SAP | Country | | | | SAP |
| | | | | UK | | | | | Greater China | | | 67 | 0.025976 | 67 | Argentina | 3100 | 13.202001 | 0.00 | 13.201346 |
| Canada | | | | UK | | 4360 | 208.185102 | 0.55 | 208.731758 | NN Shanghai | 7121 | 5.415642 | 0.030381 | 5.446024 | Brazil | 3110 | NA | | NA |
| NNL HQ | 1003 | 244.155231 | 0.00 | 244.155529 | UK | 4361 | 0.151712 | 0.00 | 0.151712 | Hong Kong | 7100 | 20.590497 | -0.064453 | 20.532044 | Chile | 3130 | 0.000000 | 0.00 | 0.000000 |
| NNC | 1001 | 27.833200 | 0.00 | 27.833299 | NNOCL | | | | | Taiwan - 336 branch | 7110 | 0.000000 | 0.000000 | 0.000000 | Colombia | 3140 | NA | | NA |
| NNL | 1002 | 136.818521 | -3.54 | 133.278243 | | | | | | NN China | 7120 | 41.392590 | 0.060047 | 41.412437 | Ecuador | 3150 | 0.000000 | 0.00 | 0.000000 |
| NNTC | 1101 | 8.215168 | 0.00 | 8.215168 | | | | | | | | 67.364529 | 0.025976 | 67.390505 | Mexico | 3170 | 5.472202 | -0.01 | 8.471705 |
| NNIC | 1102 | 1.583713 | 0.00 | 1.583713 | Europe | | | | | | | | | | Mexico | 3171 | 5.254834 | -0.01 | 5.249717 |
| HWT | 1113 | 0.000000 | 0.00 | 0.000000 | | | | | | | | | | | Paraguay | 3190 | 0.324123 | 0.00 | 0.324123 |
| | | 418.602853 | -3.54 | 415.086071 | NNIF&H | 4002 | 95.606773 | 0.01 | 96.620654 | | | | | | Peru | 3200 | 0.005796 | 0.00 | 0.005786 |
| US | | | | Austria | 4100 | 1.079400 | -0.02 | 1.056867 | JV's - Represents 100% of JV's Cash | | | | | | Uruguay | 3210 | 3.602313 | -0.01 | 3.589431 |
| NNI | 2001 | | 0.00 | | Belgium | 4110 | 8.990460 | -0.03 | 8.956488 | GDNT | 7124 | 0.000000 | 0.000000 | 0.000000 | Venezuela | 3220 | NA | | NA |
| NN Altenn | 2107 | | 0.00 | | Bulgaria | 4120 | 0.000000 | | 0.000000 | NNCE | 7125 | 0.000000 | 0.000000 | 0.000000 | | | | | |
| NNCC | 2110 | | 0.00 | | Czech | 4130 | 1.671182 | 0.00 | 1.671097 | | | 0.000000 | 0.000000 | 0.000000 | | | | | |
| NNII | 2115 | | 0.00 | | Denmark | 4142 | 0.572780 | 0.00 | 0.572804 | | | | | | | | | | |
| | | 0.000000 | 0.00 | 0.000000 | Finland | 4150 | 0.323998 | 0.00 | 0.323710 | | | | | | | | | | |
| | | | | | France - NN SA | 4160 | 22.784510 | -0.06 | 22.724121 | ASIAPAC | | 91.973363 | -0.536121 | 91.437742 | | | | | |
| | | | | | NT France | 4161 | 1.340437 | 0.00 | 1.340437 | | | | | | | | | | |
| | | | | | France - NNF | 4162 | 34.827855 | 0.00 | 34.827809 | India - NNL | 6003 | 0.196656 | 0.000000 | 0.196656 | | | | | |
| | | | | | MCT Gmbh | 4179 | 0.000000 | 0.00 | 0.000000 | Australia | 6100 | 3.644903 | 0.000000 | 3.644903 | | | | | |
| | | | | | NN Germany | 4180 | 46.084547 | -0.05 | 46.035914 | India - local sub | 6111 | 50.924637 | -0.065256 | 50.859279 | | | | | |
| | | | | | Hungary | 4200 | 0.018134 | 0.00 | 0.015887 | PT NN Indonesia | 6120 | 0.897084 | -0.007636 | 0.889185 | | | | | |
| | | | | | Hungary HOC | 4201 | 0.000000 | | 0.000000 | Korea | 6140 | 0.055485 | 0.000085 | 0.055571 | | | | | |
| | | | | | Ireland | 4210 | 88.302620 | -0.14 | 88.167331 | Malaysia | 6160 | 0.000000 | 0.000000 | 0.000000 | | | | | |
| | | | | | Italy | 4220 | 6.747100 | -0.01 | 6.734129 | NN Mauritius | 6170 | 0.220024 | 0.000000 | 0.220024 | | | | | |
| | | | | | Holland | 4240 | 18.693584 | -0.21 | 18.498418 | NZ | 6180 | 0.000000 | 0.000000 | 0.000000 | | | | | |
| | | | | | Norway | 4250 | 0.480660 | 0.00 | 0.480659 | NN Asia - Pakistan | 6190 | 16.331829 | -0.440706 | 15.891133 | | | | | |
| | | | | | Poland | 4260 | 20.410134 | 0.02 | 20.428241 | NN Sing - Phil office | 6200 | 0.000000 | 0.000000 | 0.000000 | | | | | |
| | | | | | Portugal | 4270 | 3.509762 | -0.03 | 3.478811 | Singapore | 6210 | 15.178651 | -0.022585 | 15.156056 | | | | | |
| | | | | | Romania | 4280 | 0.590469 | 0.00 | 0.580404 | Sri Lanka | 6210 | 0.300000 | 0.000000 | 0.000000 | | | | | |
| | | | | | NN OOO - Russia | 4290 | 0.000000 | 0.00 | 0.000000 | Thailand | 6220 | 4.511868 | 0.000223 | 4.512090 | | | | | |
| | | | | | Slovakia | 4301 | 0.855015 | -0.04 | 0.815100 | Vietnam | 6231 | 0.011816 | 0.000020 | 0.011836 | | | | | |
| | | | | | Spain | 4310 | 21.118547 | -0.02 | 21.096758 | NNIL - Vietnam Office | | 0.000000 | 0.000000 | 0.000000 | | | | | |
| | | | | | Sweden | 4320 | 1.140478 | -0.12 | 1.027722 | | | 91.973363 | -0.536121 | 91.437742 | | | | | |
| | | | | | Switzerland | 4330 | 3.401639 | 0.00 | 3.401639 | | | | | | | | | | |
| | | | | | NN OC Switzerland | 4331 | 0.000000 | | 0.000000 | | | | | | | | | | |
| | | | | | NN Israel Comms Holding | 5001 | 0.000000 | | 0.000000 | | | | | | | | | | |
| | | | | | Israel | 5102 | 0.000000 | | 0.000000 | | | | | | | | | | |
| | | | | | Saudi Arabia | 5150 | 0.007709 | 0.00 | 0.007789 | | | | | | | | | | |
| | | | | | South Africa | 5160 | 0.173969 | 0.00 | 0.173960 | | | | | | | | | | |
| | | | | | Nigeria | 5190 | 0.00 | 0.00 | 0.000029 | | | | | | | | | | |
| | | | | | Europe | | 370.63 | | 379 | | | | | | | | | | |
| Total | | | | | | 415.086071 | | | | | | | | | Total | | | | 31.902198 |
| | | | | | | | | | Total | | 587.816917 | | | | Total | | 158.878247 | | |

SAP TOTAL     1193.612454

| CoCd | Transaction | PTyp | TTyp | Partner | Trader | Portfolio | TCurr | Amount | Exchange Rate | USD equivalent |
|------|-------------|------|------|---------|--------|-----------|-------|--------|---------------|----------------|

**Restricted Cash Detail**

| North America | | | EMEA | | | Asia | | | Cala | |
|---|---|---|---|---|---|---|---|---|---|---|
| Description | | Amount | Description | | Amount | Description | | Amount | Description | Amount |
| Canada | | | Europe | | | | | | | |
| | | | France/Algeria Citibar | 4160 | 0.02000 | India BSNL AMC | 6111 | 0.3173 | | |
| Chubb Escrow re. litigation | 1001 | 9.6596 | | | | PVA accounts-China | 7124 | 0.0000 | | |
| Escrow - Osler D&O Trust | 1001 | 11.052 | GMBH Guarantee Col. | 4180 | 0.11511 | | | | | |
| EDC Collateral | 1003 | 0.000 | Ireland Citi Cash Pled- | 4210 | 0.09252 | | | | | |
| LGN Proceeds | 1003 | 229.221 | | | | | | | | |
| Relay proceeds | 1003 | 0.6015 | | | | | | | | |
| IP Sale proceeds | 1003 | 13.0364 | | | | | | | | |
| Total | | 263.570483 | Total | | 0.22763 | Total | | 0.3173 | Total | 0.000000 |
| | | | | | | | Total Restricted Cash | | | 264 |

**EXHIBIT 15**

**EXHIBIT**

**127**

| | |
|---|---|
| **From:** | Leblanc, Andrew <ALeblanc@milbank.com> |
| **Sent:** | Thursday, July 3, 2014 3:28 PM |
| **To:** | Bromley, James L. <jbromley@cgsh.com> |
| **Cc:** | ddunne@milbank.com |
| **Subject:** | Call |

Jim,

Can we do a call soon to talk about settlement issues and so we can understand what you guys are planning for the 15th. I am available anytime.

Andy

---

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**EXHIBIT 16**

**EXHIBIT**

**128**

exhibitsticker.com

| | |
|---|---|
| **From:** | Leblanc, Andrew <ALeblanc@milbank.com> |
| **Sent:** | Monday, June 16, 2014 2:42 PM |
| **To:** | Bromley, James L. <jbromley@cgsh.com> |
| **Cc:** | ddunne@milbank.com |
| **Subject:** | RE: After Court |

Would 5:30 PM work for you?

**From:** Bromley, James L. [mailto:jbromley@cgsh.com]
**Sent:** Monday, June 16, 2014 2:28 PM
**To:** Leblanc, Andrew
**Cc:** Dunne, Dennis
**Subject:** RE: After Court

Happy to discuss.  Let me know what works for you.  I will be on the 611 train back to NY tonight and prepping a witness tomorrow in NY

James L. Bromley
Cleary Gottlieb Steen & Hamilton LLP
Assistant: bamiller@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2264 | f: +1 212 225 3999 | m: +1 646 894 3014
www.clearygottlieb.com | jbromley@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Monday, June 16, 2014 2:25 PM
**To:** Bromley, James L.
**Cc:** ddunne@milbank.com
**Subject:** After Court

Jim,

Can we speak after court today to discuss the chambers' conference?  I spoke quickly to Howard, but we wanted to discuss the dispute between us on PPI that was described by Jay as a "gating issue" – we would be willing to consider alternatives to litigating that issue if the Canadian side view it as that central to their inability to come to the table in a meaningful way.

Andy

**Milbank**
**Andrew M. Leblanc**
1850 K Street, N.W.
Suite 1100
Washington, D.C. 20006
Tel: 202-835-7574 Fax: 202-263-7574
Cell: 202-997-5702
aleblanc@milbank.com
www.milbank.com

============================================================

IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank, Tweed, Hadley & McCloy

LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.
============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the

intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.


Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and

its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.


============================================================

IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank, Tweed, Hadley & McCloy LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.
============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

NNI-PPI-00000033

**EXHIBIT 17**

**EXHIBIT**

**129**

| | |
|---|---|
| **From:** | Schweitzer, Lisa M. <lisa schweitzer3b2@cgsh.com> |
| **Sent:** | Wednesday, July 16, 2014 11:25 PM |
| **To:** | 'DDunne@milbank.com'; 'ALeblanc@milbank.com' |
| **Subject:** | PPI |

Dennis and Andy

I wanted to check in how you are coming along with a proposal and draft. We're happy to meet tomorrow to go over a draft if you're ready. John has the OSG confirmation hearing so won't be around Friday.

Lisa

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999
www.clearygottlieb.com | lschweitzer@cgsh.com

NNI-PPI-00000089

**<u>EXHIBIT 18</u>**

**EXHIBIT**

**130**

| | |
|---|---|
| **From:** | Leblanc, Andrew <ALeblanc@milbank.com> |
| **Sent:** | Wednesday, July 23, 2014 3:58 PM |
| **To:** | Schweitzer, Lisa M. <lschweitzer@cgsh.com> |
| **Subject:** | RE: Proposal |

I understand we are very close to a deal. Can we reach out to chambers tonight to advise them? It will be a deal without the NNCC bonds, so there will have to be language changes.

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Wednesday, July 23, 2014 9:51 AM
**To:** Leblanc, Andrew
**Subject:** Re: Proposal

Yes

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999
www.clearygottlieb.com | lschweitzer@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Wednesday, July 23, 2014 09:47 AM Eastern Standard Time
**To:** Schweitzer, Lisa M.
**Subject:** RE: Proposal

If we get to a final agreement, do you consent?

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Tuesday, July 22, 2014 2:51 PM
**To:** Leblanc, Andrew
**Subject:** RE: Proposal

You would be sending the holders the entire agreement, not just a single number, right?

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lgiambatista@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Tuesday, July 22, 2014 1:41 PM
**To:** Schweitzer, Lisa M.
**Subject:** Proposal

Lisa,

If we get to a final number with you guys, we will need consent to disclose that proposal it to our holders so they can sign the agreement. Can you signal your consent by return email if we get to something that is final?

Regards,

Andy

**Milbank**
**Andrew M. Leblanc**
1850 K Street, N.W.
Suite 1100
Washington, D.C. 20006
Tel: 202-835-7574 Fax: 202-263-7574
Cell: 202-997-5702
aleblanc@milbank.com
www.milbank.com


============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.


============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply c-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.


============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**EXHIBIT 19**

**EXHIBIT**

**131**

| From: | Leblanc, Andrew <ALeblanc@milbank.com> |
|---|---|
| Sent: | Tuesday, July 22, 2014 3:26 PM |
| To: | Eckenrod, Russell D. <reckenrod@cgsh.com>; JHarris@milbank.com; ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com |
| Cc: | Schweitzer, Lisa M. <lschweitzer@cgsh.com> |
| Subject: | RE: NORTEL: revised US PPI Settlement Agreement |

We have some comments on this.  Let me know if you need the FA     to speak directly:

1. 7.875% Notes pre-petition interest claim amount: Difference is $35,313 in total. The US Debtors list the pre-petition interest claim as $951,562 □ the actual claim shows this to be  $984,375 plus $2,500 in fees owed to the trustee for a total of $986,875
2. 7.875% Notes unamortized OID amount: Very small difference - $2,019 total difference.  The US Debtors list the unamortized OID as $398,650, according to our calculations it is $400,669.  The difference is due to rounding as the US Debtor appears to round up the number of years since the issuance of the debt.
3. 10.75% Notes unamortized OID amount: Relatively small difference - $18,750 total difference. The US Debtors list the unamortized OID as $6,222,656, according to our calculations it is $6,203,906.

**From:** Eckenrod, Russell D. [mailto:reckenrod@cgsh.com]
**Sent:** Tuesday, July 22, 2014 9:01 AM
**To:** Leblanc, Andrew; Harris, Jennifer; Dunne, Dennis; Pisa, Albert A.; Kreller, Tom; Matz, Tom
**Cc:** Schweitzer, Lisa M.
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

All:

Further to the below, I attach a draft of Schedule A to the Agreement, indicating the claims and amounts of principal and pre-petition interest to be allowed pursuant to the settlement agreement.  This schedule remains subject to further internal review and comment.  Please let us know if you have any comments or are signed off on this schedule.

Russell D. Eckenrod
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpujals@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2706 | f: +1 212 225 3999
www.clearygottlieb.com | reckenrod@cgsh.com

**From:** Eckenrod, Russell D.
**Sent:** Monday, July 21, 2014 12:41 PM
**To:** 'ALeblanc@milbank.com'; 'JHarris@milbank.com'; 'ddunne@milbank.com'; 'apisa@milbank.com';
'tkreller@milbank.com'; 'tmatz@milbank.com'
**Cc:** Schweitzer, Lisa M.
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

All:

I attach a revised draft of the settlement agreement, clean and blacklined against your Friday version. This draft remains subject to further internal and client review, but is being circulated now in the interests of time.

Russell D. Eckenrod
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpujals@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2706 | f: +1 212 225 3999
www.clearygottlieb.com | reckenrod@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Sunday, July 20, 2014 7:24 PM
**To:** Schweitzer, Lisa M.; JHarris@milbank.com
**Cc:** ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Any update on the draft review? We would like to be in a position to get signatures tomorrow, if possible, but we need a final doc before that happens.

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Friday, July 18, 2014 4:30 PM
**To:** Harris, Jennifer
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom; Matz, Tom
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Thanks Jennifer. We will review and come back to you on the draft.
Can you folks send us a summary of the holdings of your group members so we can get a ball park of how much of each series is represented if we sign? Many thanks.

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

**From:** Harris, Jennifer [mailto:JHarris@milbank.com]
**Sent:** Friday, July 18, 2014 2:59 PM
**To:** Schweitzer, Lisa M.
**Cc:** ddunne@milbank.com; apisa@milbank.com; aleblanc@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** NORTEL: revised US PPI Settlement Agreement

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

Lisa,

Enclosed please find a revised draft of the PPI Settlement Agreement, clean and blacklined against the version sent to

you yesterday. Please note the draft remains subject to review by our clients and the indenture trustees in all respects.

Best regards,
Jennifer

**Jennifer P. Harris | Milbank**
601 South Figueroa Street | Los Angeles, CA 90017
T: +1 213.892.4344 | F: +1 213.892.4744
jharris@milbank.com | www.milbank.com

**From:** Matz, Tom
**Sent:** Thursday, July 17, 2014 8:26 AM
**To:** Schweitzer, Lisa M.
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom
**Subject:** NORTEL: US PPI Settlement Agreement

## SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
## PRIVILEGED AND CONFIDENTIAL

Lisa,

Further to our discussions on Tuesday, attached is a draft settlement agreement regarding PPI. This draft agreement is subject to ongoing client and internal review but in the interests of time, we wanted to get it to you for your review and consideration.

We would be pleased to continue our discussions this afternoon.

Tom

**Thomas J. Matz | Milbank**
One Chase Manhattan Plaza | New York, NY 10005
P: +1 212.530.5885 | F: +1 212.822.5885
tmatz@milbank.com| www.milbank.com

==============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated

entities.

=============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the

intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and

its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

=============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

NNI-PPI-00000109

**EXHIBIT 20**

**EXHIBIT**

**132**

exhibitsticker.com

| | |
|---|---|
| **From:** | Leblanc, Andrew <ALeblanc@milbank.com> |
| **Sent:** | Tuesday, July 22, 2014 1:41 PM |
| **To:** | Schweitzer, Lisa M. <lschweitzer@cgsh.com> |
| **Subject:** | Proposal |

Lisa,

If we get to a final number with you guys, we will need consent to disclose that proposal it to our holders so they can sign the agreement.  Can you signal your consent by return email if we get to something that is final?

Regards,

Andy

**Milbank**
**Andrew M. Leblanc**
1850 K Street, N.W.
Suite 1100
Washington, D.C. 20006
Tel: 202-835-7574 Fax: 202-263-7574
Cell: 202-997-5702
aleblanc@milbank.com
www.milbank.com


==============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**EXHIBIT 21**

**EXHIBIT**

**133**

| From: | Leblanc, Andrew <ALeblanc@milbank.com> |
|-------|------------------------------------------|
| Sent: | Sunday, July 20, 2014 7:24 PM |
| To: | Schweitzer, Lisa M. <lschweitzer@cgsh.com>; JHarris@milbank.com |
| Cc: | ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com |
| Subject: | RE: NORTEL: revised US PPI Settlement Agreement |

Any update on the draft review? We would like to be in a position to get signatures tomorrow, if possible, but we need a final doc before that happens.

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Friday, July 18, 2014 4:30 PM
**To:** Harris, Jennifer
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom; Matz, Tom
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Thanks Jennifer. We will review and come back to you on the draft.
Can you folks send us a summary of the holdings of your group members so we can get a ball park of how much of each series is represented if we sign? Many thanks.

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

**From:** Harris, Jennifer [mailto:JHarris@milbank.com]
**Sent:** Friday, July 18, 2014 2:59 PM
**To:** Schweitzer, Lisa M.
**Cc:** ddunne@milbank.com; apisa@milbank.com; aleblanc@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** NORTEL: revised US PPI Settlement Agreement

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

Lisa,

Enclosed please find a revised draft of the PPI Settlement Agreement, clean and blacklined against the version sent to you yesterday. Please note the draft remains subject to review by our clients and the indenture trustees in all respects.

Best regards,
Jennifer

**Jennifer P. Harris | Milbank**
601 South Figueroa Street | Los Angeles, CA 90017
T: +1 213.692.4344 | F: +1 213.892.4744
jharris@milbank.com | www.milbank.com

**From:** Matz, Tom
**Sent:** Thursday, July 17, 2014 8:26 AM
**To:** Schweitzer, Lisa M.
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom
**Subject:** NORTEL: US PPI Settlement Agreement

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

Lisa,

Further to our discussions on Tuesday, attached is a draft settlement agreement regarding PPI. This draft agreement is subject to ongoing client and internal review but in the interests of time, we wanted to get it to you for your review and consideration.

We would be pleased to continue our discussions this afternoon.

Tom

_____

**Thomas J. Matz | Milbank**
One Chase Manhattan Plaza | New York, NY 10005
P: +1 212.530.5885 | F: +1 212.822.5885
tmatz@milbank.com| www.milbank.com

============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

NNI-PPI-00000112

**EXHIBIT 22**

**EXHIBIT**

**134**

| | |
|---|---|
| **From:** | Kreller, Tom <TKreller@milbank.com> |
| **Sent:** | Saturday, July 19, 2014 2:53 PM |
| **To:** | Schweitzer, Lisa M. <lschweitzer@cgsh.com> |
| **Cc:** | aleblanc@milbank.com; apisa@milbank.com |
| **Subject:** | Nortel interest calculation |
| **Attach:** | PPI Calculations by Issue 07 11 14.pdf |

Lisa:

Per your request, attached is a worksheet showing FTI's calculation of the post-petition interest accruals on the various bonds.

**Thomas R. Kreller | Milbank**
**Partner**
601 South Figueroa Street, 30th Floor | Los Angeles, CA 90017
T: +1 213 892 4463 | F: +1 213 892 4763
tkreller@milbank.com | www.milbank.com

====================================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**EXHIBIT 23**

**EXHIBIT**

**135**

| | |
|---|---|
| **From:** | Kreller, Tom <TKreller@milbank.com> |
| **Sent:** | Saturday, July 19, 2014 2:53 PM |
| **To:** | Schweitzer, Lisa M. <lschweitzer@cgsh.com> |
| **Cc:** | aleblanc@milbank.com; apisa@milbank.com |
| **Subject:** | Nortel interest calculation |
| **Attach:** | PPI Calculations by Issue 07 11 14.pdf |

Lisa:

Per your request, attached is a worksheet showing FTI's calculation of the post-petition interest accruals on the various bonds.


**Thomas R. Kreller | Milbank**
**Partner**
601 South Figueroa Street. 30th Floor | Los Angeles, CA 90017
T: +1 213 892 4463 | F: +1 213 892 4763
tkreller@milbank.com | www.milbank.com


==================================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.



Privileged and Confidential
Common Interest Privileged
Prepared at the Request of Counsel
Prepared in Contemplation of Litigation

**Post-Petition Interest Calculations**

| | | | | | Coupon Rate | | Federal Judgment Rate of 0.44% | |
|---|---|---|---|---|---|---|---|---|
| Calculation Inputs | | Interest Rate | Period Start Date | Period End Date | Years in Period | Running Total for Compound Interest | Post-petition Interest based on full PPI | Running Total for Compounded Interest | Post-petition Interest based on full PPI |
| **Convertible Notes** | | | | | | | | | |
| Notes: | 1.75% Conv. Sr. Notes due 2012 | 1.750% | 1/14/2009 | 4/15/2009 | 0.25 | $180,014,182 | $2,524,509 | $178,122,910 | $655,156 |
| Face amount: | $179,000,000 | 1.750% | 4/15/2009 | 10/15/2009 | 0.50 | $183,089,308 | $3,073,124 | $179,394,799 | $1,271,670 |
| Pre-petition claim: | $177,487,674 | 1.750% | 10/15/2009 | 4/15/2010 | 0.50 | $180,268,838 | $5,110,531 | $580,669,449 | $1,274,668 |
| Interest Rate: | 1.750% | 1.750% | 4/15/2010 | 10/15/2010 | 0.50 | $586,373,165 | $3,164,317 | $581,945,922 | $1,277,673 |
| Last payment date: | 10/15/2008 | 1.750% | 10/15/2010 | 4/15/2011 | 0.50 | $600,562,680 | $5,299,515 | $583,777,205 | $1,780,783 |
| Payment frequency: | Semi-Ann | 1.750% | 4/15/2011 | 10/15/2011 | 0.50 | $608,837,779 | $5,255,098 | $584,510,303 | $1,283,100 |
| PPI Calculation type: | Compound, on claim | 1.750% | 10/15/2011 | 4/15/2012 | 0.50 | $611,138,859 | $5,301,081 | $585,796,118 | $1,285,203 |
| | | 1.750% | 4/15/2012 | 10/15/2012 | 0.50 | $616,406,334 | $5,347,465 | $587,084,979 | $1,288,752 |
| | | 1.750% | 10/15/2012 | 4/15/2013 | 0.50 | $631,880,580 | $5,394,155 | $589,379,546 | $1,281,567 |
| | | 1.750% | 4/15/2013 | 10/15/2013 | 0.50 | $637,313,086 | $5,441,493 | $589,670,886 | $1,204,438 |
| | | 1.750% | 10/15/2013 | 4/15/2014 | 0.50 | $632,621,102 | $5,488,008 | $590,868,171 | $1,287,276 |
| | | 1.750% | 4/15/2014 | 7/1/2014 | 0.21 | $635,140,919 | $2,529,817 | $591,515,320 | $547,049 |
| | | 1.750% | 7/1/2014 | 7/1/2014 | 0.00 | $635,140,919 | $ - | $591,515,320 | $ - |
| | | 1.750% | 7/1/2014 | 7/1/2014 | 0.00 | $635,140,919 | $ - | $591,515,320 | $ - |
| | | 1.750% | 7/1/2014 | 7/1/2014 | 0.00 | $635,140,919 | $ - | $591,515,320 | $ - |
| | | 1.750% | 7/1/2014 | 7/1/2014 | 0.00 | $635,140,919 | $ - | $591,515,320 | $ - |
| | | 1.750% | 7/1/2014 | 7/1/2014 | 0.00 | $635,140,919 | $ - | $591,515,320 | $ - |
| | | | **Total PPI - 1.75% Conv. Sr. Notes due 2012** | | | @ Contract Rate | $57,868,266 | @ Fed Judgment Rate | $14,087,247 |
| Notes: | 1.125% Conv. Sr. Notes due 2014 | 2.125% | 1/14/2009 | 4/15/2009 | 0.25 | $581,691,462 | $3,090,735 | $576,604,568 | $655,623 |
| Face amount: | $575,000,000 | 1.125% | 4/15/2009 | 10/15/2009 | 0.50 | $587,345,979 | $6,174,087 | $579,929,614 | $1,275,044 |
| Pre-petition claim: | $578,020,747 | 1.125% | 10/15/2009 | 4/15/2010 | 0.50 | $593,505,276 | $6,239,687 | $581,205,458 | $1,275,845 |
| Interest Rate: | 1.125% | 1.125% | 4/15/2010 | 10/15/2010 | 0.50 | $599,911,280 | $5,309,994 | $582,484,111 | $1,276,652 |
| Last payment date: | 10/15/2008 | 1.125% | 10/15/2010 | 4/15/2011 | 0.30 | $606,184,264 | $6,372,995 | $583,763,576 | $1,281,465 |
| Payment frequency: | Semi-Ann | 1.125% | 4/15/2011 | 10/15/2011 | 0.50 | $612,634,971 | $6,440,706 | $585,049,860 | $1,284,384 |
| PPI Calculation type: | Compound, on claim | 1.125% | 10/15/2011 | 4/15/2012 | 0.90 | $619,134,112 | $6,509,140 | $586,336,370 | $1,287,119 |
| | | 2.125% | 4/15/2012 | 10/15/2012 | 0.50 | $625,712,412 | $6,578,300 | $587,626,911 | $1,289,941 |
| | | 2.125% | 10/15/2012 | 4/15/2013 | 0.50 | $632,360,606 | $6,648,104 | $588,919,695 | $1,292,770 |
| | | 1.125% | 4/15/2013 | 10/15/2013 | 0.50 | $639,079,488 | $6,718,811 | $590,215,314 | $1,295,623 |
| | | 1.125% | 10/15/2013 | 4/15/2014 | 0.50 | $645,864,647 | $6,790,219 | $591,513,788 | $1,298,474 |
| | | 1.125% | 4/15/2014 | 7/1/2014 | 0.21 | $648,757,100 | $2,887,443 | $592,061,342 | $547,554 |
| | | 1.125% | 7/1/2014 | 7/1/2014 | 0.00 | $648,757,100 | $ - | $592,061,342 | $ - |
| | | 2.125% | 7/1/2014 | 7/1/2014 | 0.00 | $648,757,100 | $ - | $592,061,342 | $ - |
| | | 2.125% | 7/1/2014 | 7/1/2014 | 0.00 | $648,757,100 | $ - | $592,061,342 | $ - |
| | | 2.125% | 7/1/2014 | 7/1/2014 | 0.00 | $648,757,100 | $ - | $592,061,342 | $ - |
| | | 2.125% | 7/1/2014 | 7/1/2014 | 0.00 | $648,757,100 | $ - | $592,061,342 | $ - |
| | | | **Total PPI - 2.125% Conv. Sr. Notes due 2014** | | | @ Contract Rate | $70,736,353 | @ Fed Judgment Rate | $16,040,599 |

NNI-PPI-00000119

Privileged and Confidential
Common Interest Privileged
Prepared at the Request of Counsel
Prepared in Contemplation of Litigation

**High-Yield Notes**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Notes: | Floating Rate Notes due 2011 | 9.003% | 1/14/2009 | 1/15/2009 | 0.000 | | $ 250,000 | $ 12,321 |
| Face amount: | $ 1,000,000,000 | 9.003% | 1/15/2009 | 4/15/2009 | 0.25 | | $ 22,506,250 | $ 1,100,000 |
| Pre-petition claim: | $ 1,022,419,965 | 9.003% | 4/15/2009 | 7/15/2009 | 0.25 | | $ 22,756,319 | $ 1,111,222 |
| Interest Rate: | 3 Mo. LIBOR + 4.25% | 9.003% | 7/15/2009 | 10/15/2009 | 0.26 | | $ 23,006,389 | $ 1,124,444 |
| Last payment date: | 10/15/2008 | 9.003% | 10/15/2009 | 1/15/2010 | 0.26 | | $ 23,006,389 | $ 1,134,444 |
| Payment frequency: | Quarterly | 9.003% | 1/15/2010 | 4/15/2010 | 0.23 | | $ 22,506,250 | $ 1,100,000 |
| PPI Calculation type: | Simple, on face | 9.003% | 4/15/2010 | 7/15/2010 | 0.25 | | $ 22,756,319 | $ 1,112,321 |
| | | 9.003% | 7/15/2010 | 10/15/2010 | 0.26 | | $ 23,006,389 | $ 1,124,444 |
| Fixed or Floating: | Fixed | 9.003% | 10/15/2010 | 1/15/2011 | 0.26 | | $ 23,006,389 | $ 1,124,444 |
| | | 9.003% | 1/15/2011 | 4/15/2011 | 0.25 | | $ 22,506,250 | $ 1,100,000 |
| | | 9.004% | 4/15/2011 | 7/15/2011 | 0.25 | | $ 22,756,319 | $ 1,112,322 |
| | | 9.003% | 7/15/2011 | 10/15/2011 | 0.26 | | $ 23,006,389 | $ 1,124,444 |
| | | 9.003% | 10/15/2011 | 1/15/2012 | 0.26 | | $ 23,006,389 | $ 1,124,444 |
| | | 9.003% | 1/15/2012 | 4/15/2012 | 0.25 | | $ 22,756,319 | $ 1,112,322 |
| | | 9.003% | 4/15/2012 | 7/15/2012 | 0.25 | | $ 22,756,319 | $ 1,112,322 |
| | | 9.003% | 7/15/2012 | 10/15/2012 | 0.26 | | $ 23,006,389 | $ 1,124,444 |
| | | 9.003% | 10/15/2012 | 1/15/2013 | 0.26 | | $ 23,006,389 | $ 1,124,444 |
| | | 9.003% | 1/15/2013 | 4/15/2013 | 0.25 | | $ 22,506,250 | $ 1,100,000 |
| | | 9.003% | 4/15/2013 | 7/15/2013 | 0.25 | | $ 22,756,319 | $ 1,112,322 |
| | | 9.003% | 7/15/2013 | 10/15/2013 | 0.26 | | $ 23,006,389 | $ 1,124,444 |
| | | 9.003% | 10/15/2013 | 1/15/2014 | 0.26 | | $ 23,006,389 | $ 1,134,444 |
| | | 9.003% | 1/15/2014 | 4/15/2014 | 0.25 | | $ 22,506,250 | $ 1,100,000 |
| | | 9.003% | 4/15/2014 | 7/1/2014 | 0.21 | | $ 19,355,347 | $ 941,111 |
| | | 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | $ - |
| | | 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | $ - |
| | | 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | $ - |
| | | 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | $ - |
| | | 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | $ - |
| | | 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | $ - |
| | | 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | $ - |
| | | 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | $ - |
| | | 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | $ - |
| | | **Total PPI - Floating Rate Notes due 2011** | | | | @ Contract Rate (Fix) | $ 656,638,473 | @ Fed Judgment Rate $ 25,775,131 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Notes: | 10.125% Sr Notes due 2013 | 10.125% | 1/14/2009 | 1/15/2009 | 0.003 | | $ 151,125 | $ 8,576 |
| Face amount: | $ 500,000,000 | 10.125% | 1/15/2009 | 7/15/2009 | 0.50 | | $ 27,843,750 | $ 1,210,000 |
| Pre-petition claim: | $ 577,489,063 | 10.125% | 7/15/2009 | 1/15/2010 | 0.50 | | $ 27,843,750 | $ 1,210,000 |
| Interest Rate: | 10.125% | 10.125% | 1/15/2010 | 7/15/2010 | 0.50 | | $ 27,843,750 | $ 1,210,000 |
| Last payment date: | 7/15/2008 | 10.125% | 7/15/2010 | 1/15/2011 | 0.50 | | $ 27,843,750 | $ 1,210,000 |
| Payment frequency: | Semi-Ann. | 10.125% | 1/15/2011 | 7/15/2011 | 0.50 | | $ 27,843,750 | $ 1,210,000 |
| PPI Calculation type: | Simple, on face | 10.125% | 7/15/2011 | 1/15/2012 | 0.50 | | $ 27,843,750 | $ 1,210,000 |
| | | 10.125% | 1/15/2012 | 7/15/2012 | 0.50 | | $ 27,843,750 | $ 1,210,000 |
| | | 10.125% | 7/15/2012 | 1/15/2013 | 0.50 | | $ 27,843,750 | $ 1,210,000 |
| | | 10.125% | 1/15/2013 | 7/15/2013 | 0.50 | | $ 27,843,750 | $ 1,210,000 |
| | | 10.125% | 7/15/2013 | 1/15/2014 | 0.50 | | $ 27,843,750 | $ 1,210,000 |
| | | 10.125% | 1/15/2014 | 7/1/2014 | 0.46 | | $ 25,678,125 | $ 1,115,889 |
| | | 10.125% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | $ - |
| | | 10.125% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | $ - |
| | | 10.125% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | $ - |
| | | 10.125% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | $ - |
| | | 10.125% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | $ - |
| | | **Total PPI - 10.125% Sr. Notes due 2013** | | | | @ Contract Rate | $ 304,254,990 | @ Fed Judgment Rate $ 13,222,405 |

Privileged and Confidential
Common Interest Privileged
Prepared at the Request of Counsel
Prepared in Contemplation of Litigation

| Notes: | 10.75% Sr. Notes due 2016 | 10.750% | 1/14/2009 | 1/15/2009 | 0.003 | | $ 128,635 | | $ 13,451 |
|---|---|---|---|---|---|---|---|---|---|
| Face amount: | $ 1,125,000,000 | 10.750% | 1/15/2009 | 7/15/2009 | 0.50 | | $ 60,468,750 | | $ 2,475,000 |
| Pre-petition claim: | $ 1,185,172,813 | 10.750% | 7/15/2009 | 1/15/2010 | 0.50 | | $ 60,468,750 | | $ 2,475,000 |
| Interest Rate: | 10.750% | 10.750% | 1/15/2010 | 7/15/2010 | 0.50 | | $ 60,468,750 | | $ 2,475,000 |
| Last payment date: | 7/15/2008 | 10.750% | 7/15/2010 | 1/15/2011 | 0.50 | | $ 60,468,750 | | $ 2,475,000 |
| Payment frequency: | Semi-Ann | 10.750% | 1/15/2011 | 7/15/2011 | 0.50 | | $ 60,468,750 | | $ 2,475,000 |
| PPI Calculation type: | Simple, on face | 10.750% | 7/15/2011 | 1/15/2012 | 0.50 | | $ 60,468,750 | | $ 2,475,000 |
| | | 10.750% | 1/15/2012 | 7/15/2012 | 0.50 | | $ 60,468,750 | | $ 2,475,000 |
| | | 10.750% | 7/15/2012 | 1/15/2013 | 0.50 | | $ 60,468,750 | | $ 2,475,000 |
| | | 10.750% | 1/15/2013 | 7/15/2013 | 0.50 | | $ 60,468,750 | | $ 2,475,000 |
| | | 10.750% | 7/15/2013 | 1/15/2014 | 0.50 | | $ 60,468,750 | | $ 2,475,000 |
| | | 10.750% | 1/15/2014 | 7/1/2014 | 0.46 | | $ 56,101,563 | | $ 2,296,250 |
| | | 10.750% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 10.750% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 10.750% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 10.750% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 10.750% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | | Total PPI - 10.75% Sr. Notes due 2016 | | | @ Contract Rate | $ 662,317,697 | @ Fed Judgment Rate | $ 27,069,701 |

**NNCC Notes**

| Notes: | 7.875% Notes due 2026 | 7.875% | 1/14/2009 | 6/15/2009 | 0.42 | | $ 4,992,692 | | $ 275,604 |
|---|---|---|---|---|---|---|---|---|---|
| Face amount: | $ 150,000,000 | 7.875% | 6/15/2009 | 12/15/2009 | 0.50 | | $ 5,906,250 | | $ 330,000 |
| Pre-petition claim: | $ 150,988,875 | 7.875% | 12/15/2009 | 6/15/2010 | 0.50 | | $ 5,906,250 | | $ 330,000 |
| Interest Rate: | 7.875% | 7.875% | 6/15/2010 | 12/15/2010 | 0.50 | | $ 5,906,250 | | $ 330,000 |
| Last payment date: | 12/15/2008 | 7.875% | 12/15/2010 | 6/15/2011 | 0.50 | | $ 5,906,250 | | $ 330,000 |
| Payment frequency: | Semi-Ann | 7.875% | 6/15/2011 | 12/15/2011 | 0.50 | | $ 5,906,250 | | $ 330,000 |
| PPI Calculation type: | Simple, on face | 7.875% | 12/15/2011 | 6/15/2012 | 0.50 | | $ 5,906,250 | | $ 330,000 |
| | | 7.875% | 6/15/2012 | 12/15/2012 | 0.50 | | $ 5,906,250 | | $ 330,000 |
| | | 7.875% | 12/15/2012 | 6/15/2013 | 0.50 | | $ 5,906,250 | | $ 330,000 |
| | | 7.875% | 6/15/2013 | 12/15/2013 | 0.50 | | $ 5,906,250 | | $ 330,000 |
| | | 7.875% | 12/15/2013 | 6/15/2014 | 0.50 | | $ 5,906,250 | | $ 330,000 |
| | | 7.875% | 6/15/2014 | 7/1/2014 | 0.04 | | $ 516,563 | | $ 28,852 |
| | | 7.875% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 7.875% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 7.875% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 7.875% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | | Total PPI - 7.875% Notes due 2026 | | | @ Contract Rate | $ 64,911,686 | @ Fed Judgment Rate | $ 3,654,457 |

| @ Contract Rate | $ 1,686,694,904 | @ Fed Judgment Rate | $ 96,821,976 |
|---|---|---|---|

NNI-PPI-00000121

**EXHIBIT 24**

**EXHIBIT**

**136**

exhibitsticker.com

Privileged and Confidential
Common Interest Privileged
Prepared at the Request of Counsel
Prepared in Contemplation of Litigation

**Post-Petition Interest Calculations**

| Calculation Inputs | | Interest Rate | Period Start Date | Period End Date | Years In Period | Coupon Rate | | Federal Judgment Rate of 0.44% | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Running Total for Compound Interest | Post-petition Interest based on full PPI | Running Total for Compound Interest | Post-petition Interest based on full PPI |
| **Convertible Notes** | | | | | | | | | |
| Notes: | 1.75% Conv. Sr. Notes due 2012 | 1.750% | 1/14/2009 | 4/15/2009 | 0.25 | $ 580,014,182 | $ 2,526,509 | $ 578,122,910 | $ 635,236 |
| Face amount: | $ 575,000,000 | 1.750% | 4/15/2009 | 10/15/2009 | 0.50 | $ 585,089,306 | $ 5,075,124 | $ 579,394,780 | $ 1,271,870 |
| Pre-petition claim: | $ 577,487,674 | 1.750% | 10/15/2009 | 4/15/2010 | 0.50 | $ 590,208,838 | $ 5,119,511 | $ 580,669,449 | $ 1,274,669 |
| Interest Rate: | 1.750% | 1.750% | 4/15/2010 | 10/15/2010 | 0.50 | $ 595,373,165 | $ 5,164,327 | $ 581,946,922 | $ 1,277,473 |
| Last payment date: | 10/15/2008 | 1.750% | 10/15/2010 | 4/15/2011 | 0.50 | $ 600,582,680 | $ 5,209,515 | $ 583,227,205 | $ 1,280,283 |
| Payment frequency: | Semi-Ann. | 1.750% | 4/15/2011 | 10/15/2011 | 0.50 | $ 605,837,779 | $ 5,255,098 | $ 584,510,305 | $ 1,283,100 |
| PPI Calculation type: | Compound, on claim | 1.750% | 10/15/2011 | 4/15/2012 | 0.50 | $ 611,138,859 | $ 5,301,081 | $ 585,796,228 | $ 1,285,923 |
| | | 1.750% | 4/15/2012 | 10/15/2012 | 0.50 | $ 616,486,324 | $ 5,347,465 | $ 587,084,979 | $ 1,288,752 |
| | | 1.750% | 10/15/2012 | 4/15/2013 | 0.50 | $ 621,880,580 | $ 5,394,255 | $ 588,376,566 | $ 1,291,587 |
| | | 1.750% | 4/15/2013 | 10/15/2013 | 0.50 | $ 627,322,035 | $ 5,441,455 | $ 589,670,995 | $ 1,294,428 |
| | | 1.750% | 10/15/2013 | 4/15/2014 | 0.50 | $ 632,811,102 | $ 5,489,068 | $ 590,968,271 | $ 1,297,276 |
| | | 1.750% | 4/15/2014 | 7/1/2014 | 0.21 | $ 635,140,919 | $ 2,329,817 | $ 591,515,320 | $ 547,049 |
| | | 1.750% | 7/1/2014 | 7/1/2014 | 0.00 | $ 635,140,919 | $ - | $ 591,515,320 | $ - |
| | | 1.750% | 7/1/2014 | 7/1/2014 | 0.00 | $ 635,140,919 | $ - | $ 591,515,320 | $ - |
| | | 1.750% | 7/1/2014 | 7/1/2014 | 0.00 | $ 635,140,919 | $ - | $ 591,515,320 | $ - |
| | | 1.750% | 7/1/2014 | 7/1/2014 | 0.00 | $ 635,140,919 | $ - | $ 591,515,320 | $ - |
| | | | | Total PPI - 1.75% Conv. Sr. Notes 2012 | | @ Contract Rate | $ 57,653,246 | @ Fed Judgment Rate | $ 14,027,647 |
| Notes: | 2.125% Conv. Sr. Notes due 2014 | 2.125% | 1/14/2009 | 4/15/2009 | 0.25 | $ 581,091,482 | $ 3,070,735 | $ 578,156,569 | $ 635,423 |
| Face amount: | $ 575,000,000 | 2.125% | 4/15/2009 | 10/15/2009 | 0.50 | $ 587,265,579 | $ 6,174,097 | $ 579,939,614 | $ 1,273,044 |
| Pre-petition claim: | $ 578,020,747 | 2.125% | 10/15/2009 | 4/15/2010 | 0.50 | $ 593,509,276 | $ 6,239,697 | $ 581,205,499 | $ 1,275,845 |
| Interest Rate: | 2.125% | 2.125% | 4/15/2010 | 10/15/2010 | 0.50 | $ 599,811,269 | $ 6,305,994 | $ 582,484,311 | $ 1,278,652 |
| Last payment date: | 10/15/2008 | 2.125% | 10/15/2010 | 4/15/2011 | 0.50 | $ 606,184,264 | $ 6,372,995 | $ 583,765,576 | $ 1,281,465 |
| Payment frequency: | Semi-Ann. | 2.125% | 4/15/2011 | 10/15/2011 | 0.50 | $ 612,624,972 | $ 6,440,708 | $ 585,049,860 | $ 1,284,284 |
| PPI Calculation type: | Compound, on claim | 2.125% | 10/15/2011 | 4/15/2012 | 0.50 | $ 619,134,112 | $ 6,509,140 | $ 586,336,970 | $ 1,287,110 |
| | | 2.125% | 4/15/2012 | 10/15/2012 | 0.50 | $ 625,712,412 | $ 6,578,300 | $ 587,626,911 | $ 1,289,941 |
| | | 2.125% | 10/15/2012 | 4/15/2013 | 0.50 | $ 632,360,606 | $ 6,648,194 | $ 588,919,691 | $ 1,292,779 |
| | | 2.125% | 4/15/2013 | 10/15/2013 | 0.50 | $ 639,078,638 | $ 6,718,831 | $ 590,215,314 | $ 1,295,623 |
| | | 2.125% | 10/15/2013 | 4/15/2014 | 0.50 | $ 645,869,657 | $ 6,790,219 | $ 591,513,788 | $ 1,298,474 |
| | | 2.125% | 4/15/2014 | 7/1/2014 | 0.21 | $ 648,757,100 | $ 2,887,443 | $ 592,061,342 | $ 547,554 |
| | | 2.125% | 7/1/2014 | 7/1/2014 | 0.00 | $ 648,757,100 | $ - | $ 592,061,342 | $ - |
| | | 2.125% | 7/1/2014 | 7/1/2014 | 0.00 | $ 648,757,100 | $ - | $ 592,061,342 | $ - |
| | | 2.125% | 7/1/2014 | 7/1/2014 | 0.00 | $ 648,757,100 | $ - | $ 592,061,342 | $ - |
| | | 2.125% | 7/1/2014 | 7/1/2014 | 0.00 | $ 648,757,100 | $ - | $ 592,061,342 | $ - |
| | | | | Total PPI - 2.125% Conv. Sr. Notes due 2014 | | @ Contract Rate | $ 70,736,353 | @ Fed Judgment Rate | $ 14,060,595 |

NNI-PPI-00000119

Privileged and Confidential
Common Interest Privileged
Prepared at the Request of Counsel
Prepared in Contemplation of Litigation

**High-Yield Notes**

| Notes: | Floating Rate Notes due 2011 |
|---|---|
| Face amount: | $1,000,000,000 |
| Pre-petition claim: | $1,022,419,965 |
| Interest Rate: | 3 Mo. LIBOR + 4.25% |
| Last payment date: | 10/15/2008 |
| Payment frequency: | Quarterly |
| PPI Calculation type: | Simple, on face |
| Fixed or Floating: | Fixed |

| Rate | Start | End | Frac | @ Contract Rate (Fib) | @ Fed Judgment Rate |
|---|---|---|---|---|---|
| 9.003% | 1/14/2009 | 1/15/2009 | 0.003 | $350,069 | $12,222 |
| 9.003% | 1/15/2009 | 4/15/2009 | 0.25 | $22,506,250 | $1,100,000 |
| 9.003% | 4/15/2009 | 7/15/2009 | 0.25 | $22,756,319 | $1,112,222 |
| 9.003% | 7/15/2009 | 10/15/2009 | 0.26 | $23,006,389 | $1,124,444 |
| 9.003% | 10/15/2009 | 1/15/2010 | 0.26 | $23,006,389 | $1,124,444 |
| 9.003% | 1/15/2010 | 4/15/2010 | 0.25 | $22,506,250 | $1,100,000 |
| 9.003% | 4/15/2010 | 7/15/2010 | 0.25 | $22,756,319 | $1,112,222 |
| 9.003% | 7/15/2010 | 10/15/2010 | 0.26 | $23,006,389 | $1,124,444 |
| 9.003% | 10/15/2010 | 1/15/2011 | 0.26 | $23,006,389 | $1,124,444 |
| 9.003% | 1/15/2011 | 4/15/2011 | 0.25 | $22,506,250 | $1,100,000 |
| 9.003% | 4/15/2011 | 7/15/2011 | 0.25 | $22,756,319 | $1,112,222 |
| 9.003% | 7/15/2011 | 10/15/2011 | 0.26 | $23,006,389 | $1,124,444 |
| 9.003% | 10/15/2011 | 1/15/2012 | 0.26 | $23,006,389 | $1,124,444 |
| 9.003% | 1/15/2012 | 4/15/2012 | 0.25 | $22,756,319 | $1,112,222 |
| 9.003% | 4/15/2012 | 7/15/2012 | 0.25 | $22,756,319 | $1,124,444 |
| 9.003% | 7/15/2012 | 10/15/2012 | 0.26 | $23,006,389 | $1,124,444 |
| 9.003% | 10/15/2012 | 1/15/2013 | 0.26 | $23,006,389 | $1,124,444 |
| 9.003% | 1/15/2013 | 4/15/2013 | 0.25 | $22,506,250 | $1,100,000 |
| 9.003% | 4/15/2013 | 7/15/2013 | 0.25 | $22,756,319 | $1,112,222 |
| 9.003% | 7/15/2013 | 10/15/2013 | 0.26 | $23,006,389 | $1,124,444 |
| 9.003% | 10/15/2013 | 1/15/2014 | 0.26 | $23,006,389 | $1,124,444 |
| 9.003% | 1/15/2014 | 4/15/2014 | 0.25 | $22,506,250 | $1,100,000 |
| 9.003% | 4/15/2014 | 7/1/2014 | 0.21 | $19,255,347 | $941,111 |
| 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | $ - | $ - |
| 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | $ - | $ - |
| 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | $ - | $ - |
| 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | $ - | $ - |
| 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | $ - | $ - |
| 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | $ - | $ - |
| 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | $ - | $ - |
| 9.003% | 7/1/2014 | 7/1/2014 | 0.00 | $ - | $ - |
| **Total PPI - Floating Rate Notes due 2011** | | | | @ Contract Rate (Fib) $498,628,472 | @ Fed Judgment Rate $24,371,111 |

| Notes: | 10.125% Sr. Notes due 2013 |
|---|---|
| Face amount: | $550,000,000 |
| Pre-petition claim: | $577,689,063 |
| Interest Rate: | 10.125% |
| Last payment date: | 7/15/2008 |
| Payment frequency: | Semi-Ann. |
| PPI Calculation type: | Simple, on face |

| Rate | Start | End | Frac | @ Contract Rate | @ Fed Judgment Rate |
|---|---|---|---|---|---|
| 10.125% | 1/14/2009 | 1/15/2009 | 0.003 | $151,325 | $6,576 |
| 10.125% | 1/15/2009 | 7/15/2009 | 0.50 | $27,843,750 | $1,210,000 |
| 10.125% | 7/15/2009 | 1/15/2010 | 0.50 | $27,843,750 | $1,210,000 |
| 10.125% | 1/15/2010 | 7/15/2010 | 0.50 | $27,843,750 | $1,210,000 |
| 10.125% | 7/15/2010 | 1/15/2011 | 0.50 | $27,843,750 | $1,210,000 |
| 10.125% | 1/15/2011 | 7/15/2011 | 0.50 | $27,843,750 | $1,210,000 |
| 10.125% | 7/15/2011 | 1/15/2012 | 0.50 | $27,843,750 | $1,210,000 |
| 10.125% | 1/15/2012 | 7/15/2012 | 0.50 | $27,843,750 | $1,210,000 |
| 10.125% | 7/15/2012 | 1/15/2013 | 0.50 | $27,843,750 | $1,210,000 |
| 10.125% | 1/15/2013 | 7/15/2013 | 0.50 | $27,843,750 | $1,210,000 |
| 10.125% | 7/15/2013 | 1/15/2014 | 0.50 | $27,843,750 | $1,210,000 |
| 10.125% | 1/15/2014 | 7/1/2014 | 0.46 | $25,678,125 | $1,115,889 |
| 10.125% | 7/1/2014 | 7/1/2014 | 0.00 | $ - | $ - |
| 10.125% | 7/1/2014 | 7/1/2014 | 0.00 | $ - | $ - |
| 10.125% | 7/1/2014 | 7/1/2014 | 0.00 | $ - | $ - |
| 10.125% | 7/1/2014 | 7/1/2014 | 0.00 | $ - | $ - |
| 10.125% | 7/1/2014 | 7/1/2014 | 0.00 | $ - | $ - |
| **Total PPI - 10.125% Sr. Notes due 2013** | | | | @ Contract Rate $584,266,950 | @ Fed Judgment Rate $18,227,465 |

Privileged and Confidential
Common Interest Privileged
Prepared at the Request of Counsel
Prepared in Contemplation of Litigation

| Notes: | 10.75% Sr. Notes due 2016 | 10.750% | 1/14/2009 | 1/15/2009 | 0.003 | | $328,835 | | $13,451 |
|---|---|---|---|---|---|---|---|---|---|
| Face amount: | $1,125,000,000 | 10.750% | 1/15/2009 | 7/15/2009 | 0.50 | | $60,468,750 | | $2,475,000 |
| Pre-petition claim: | $1,185,132,813 | 10.750% | 7/15/2009 | 1/15/2010 | 0.50 | | $60,468,750 | | $2,475,000 |
| Interest Rate: | 10.750% | 10.750% | 1/15/2010 | 7/15/2010 | 0.50 | | $60,468,750 | | $2,475,000 |
| Last payment date: | 7/15/2008 | 10.750% | 7/15/2010 | 1/15/2011 | 0.50 | | $60,468,750 | | $2,475,000 |
| Payment frequency: | Semi-Ann. | 10.750% | 1/15/2011 | 7/15/2011 | 0.50 | | $60,468,750 | | $2,475,000 |
| PPI Calculation type: | Simple, on face | 10.750% | 7/15/2011 | 1/15/2012 | 0.50 | | $60,468,750 | | $2,475,000 |
| | | 10.750% | 1/15/2012 | 7/15/2012 | 0.50 | | $60,468,750 | | $2,475,000 |
| | | 10.750% | 7/15/2012 | 1/15/2013 | 0.50 | | $60,468,750 | | $2,475,000 |
| | | 10.750% | 1/15/2013 | 7/15/2013 | 0.50 | | $60,468,750 | | $2,475,000 |
| | | 10.750% | 7/15/2013 | 1/15/2014 | 0.50 | | $60,468,750 | | $2,475,000 |
| | | 10.750% | 1/15/2014 | 7/1/2014 | 0.46 | | $56,101,563 | | $2,296,250 |
| | | 10.750% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 10.750% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 10.750% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 10.750% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 10.750% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | | Total PPI - 10.75% Sr. Notes due 2016 | | | @ Contract Rate | $681,137,697 | @ Fed Judgment Rate | $27,059,701 |

**XNCC Notes**

| Notes: | 7.875% Notes due 2026 | 7.875% | 1/14/2009 | 6/15/2009 | 0.42 | | $4,932,692 | | $275,604 |
|---|---|---|---|---|---|---|---|---|---|
| Face amount: | $150,000,000 | 7.875% | 6/15/2009 | 12/15/2009 | 0.50 | | $5,906,250 | | $330,000 |
| Pre-petition claim: | $150,986,875 | 7.875% | 12/15/2009 | 6/15/2010 | 0.50 | | $5,906,250 | | $330,000 |
| Interest Rate: | 7.875% | 7.875% | 6/15/2010 | 12/15/2010 | 0.50 | | $5,906,250 | | $330,000 |
| Last payment date: | 12/15/2008 | 7.875% | 12/15/2010 | 6/15/2011 | 0.50 | | $5,906,250 | | $330,000 |
| Payment frequency: | Semi-Ann. | 7.875% | 6/15/2011 | 12/15/2011 | 0.50 | | $5,906,250 | | $330,000 |
| PPI Calculation type: | Simple, on face | 7.875% | 12/15/2011 | 6/15/2012 | 0.50 | | $5,906,250 | | $330,000 |
| | | 7.875% | 6/15/2012 | 12/15/2012 | 0.50 | | $5,906,250 | | $330,000 |
| | | 7.875% | 12/15/2012 | 6/15/2013 | 0.50 | | $5,906,250 | | $330,000 |
| | | 7.875% | 6/15/2013 | 12/15/2013 | 0.50 | | $5,906,250 | | $330,000 |
| | | 7.875% | 12/15/2013 | 6/15/2014 | 0.50 | | $5,906,250 | | $330,000 |
| | | 7.875% | 6/15/2014 | 7/1/2014 | 0.04 | | $516,193 | | $28,852 |
| | | 7.875% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 7.875% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 7.875% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 7.875% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | 7.875% | 7/1/2014 | 7/1/2014 | 0.00 | | $ - | | $ - |
| | | | Total PPI - 7.875% Notes due 2026 | | | @ Contract Rate | $64,513,686 | @ Fed Judgment Rate | $3,604,457 |

| | | | | | | @ Contract Rate | $1,656,924,304 | @ Fed Judgment Rate | $96,325,876 |
|---|---|---|---|---|---|---|---|---|---|

CONFIDENTIAL

**EXHIBIT 25**

**EXHIBIT**

**137**

| From: | Hodara, Fred <fhodara@AkinGump.com> |
|---|---|
| Sent: | Monday, July 21, 2014 1:41 PM |
| To: | Schweitzer, Lisa M. <lschweitzer@cgsh.com>; dbotter@akingump.com; bkahn@akingump.com; aqureshi@akingump.com |
| Subject: | RE: NORTEL: revised US PPI Settlement Agreement |

Thanks Lisa, we will review now. Brad and I spoke with Andy. Their view of a binding mechanism is that the Trustees should sign on and in so doing will effectively bind all holders. Waiting to hear from the Trustees.

**Fred S. Hodara**

**AKIN GUMP STRAUSS HAUER & FELD** LLP

One Bryant Park | New York, NY 10036-6745 | USA | Direct: +1 212.872.8040 | Internal: 38040
Fax: +1 212.872.1002 | Mobile: +1 347.933.0309 | fhodara@akingump.com | akingump.com | Bio

---

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Monday, July 21, 2014 1:16 PM
**To:** Hodara, Fred; Botter, David; Kahn, Brad
**Subject:** NORTEL: revised US PPI Settlement Agreement

### SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
### PRIVILEGED AND CONFIDENTIAL

Fred and gang –

In follow up to our earlier call, attached is a revised draft of the settlement agreement that we sent to Milbank, still subject to everyone's further comments, etc. Please let us know your comments on the draft, if any. Also, let me know if you've found a time to circle up with Milbank on the settlement.

Lisa

---

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lgiambatista@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

---

IRS Circular 230 Notice Requirement: This communication is not given in the form of a covered opinion, within the meaning of Circular 230 issued by the United States Secretary of the Treasury. Thus, we are required

to inform you that you cannot rely upon any tax advice contained in this communication for the purpose of avoiding United States federal tax penalties. In addition, any tax advice contained in this communication may not be used to promote, market or recommend a transaction to another party.

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**EXHIBIT 26**

**EXHIBIT**

**138**

| | |
|---|---|
| From: | Harris, Jennifer <JHarris@milbank.com> |
| Sent: | Friday, July 18, 2014 2:59 PM |
| To: | Schweitzer, Lisa M. <lschweitzer@cgsh.com> |
| Cc: | ddunne@milbank.com; apisa@milbank.com; aleblanc@milbank.com; tkreller@milbank.com; tmatz@milbank.com |
| Subject: | NORTEL: revised US PPI Settlement Agreement |
| Attach: | Change-Pro Redline - Nortel US PPI Settlement Agreement (4836-5497-6284-...pdf; Nortel US PPI Settlement Agreement (4836-5497-6284-10).docx |

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

Lisa,

Enclosed please find a revised draft of the PPI Settlement Agreement, clean and blacklined against the version sent to you yesterday. Please note the draft remains subject to review by our clients and the indenture trustees in all respects.

Best regards,
Jennifer

**Jennifer P. Harris | Milbank**
601 South Figueroa Street | Los Angeles, CA 90017
T: +1 213.892.4344 | F: +1 213.892.4744
jharris@milbank.com | www.milbank.com

**From:** Matz, Tom
**Sent:** Thursday, July 17, 2014 8:26 AM
**To:** Schweitzer, Lisa M.
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom
**Subject:** NORTEL: US PPI Settlement Agreement

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

Lisa,

Further to our discussions on Tuesday, attached is a draft settlement agreement regarding PPI. This draft agreement is subject to ongoing client and internal review but in the interests of time, we wanted to get it to you for your review and consideration.

We would be pleased to continue our discussions this afternoon.

Tom

**Thomas J. Matz | Milbank**
One Chase Manhattan Plaza | New York, NY 10005
P: +1 212.530.5885 | F: +1 212.822.5885

tmatz@milbank.com| www.milbank.com

===========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**EXHIBIT 27**

**EXHIBIT**

**141**

| From: | Eckenrod, Russell D. <reckenrod@cgsh.com> |
|---|---|
| Sent: | Tuesday, July 22, 2014 9:01 AM |
| To: | aleblanc@milbank.com; JHarris@milbank.com; ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com |
| Cc: | Schweitzer, Lisa M. <lschweitzer@cgsh.com> |
| Subject: | RE: NORTEL: revised US PPI Settlement Agreement |
| Attach: | 2926876_1(Schedule A to PPI Settlement Agreement – Amounts (CGSH DRAFT 7-21-14)).DOCX |

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

All:

Further to the below, I attach a draft of Schedule A to the Agreement, indicating the claims and amounts of principal and pre-petition interest to be allowed pursuant to the settlement agreement. This schedule remains subject to further internal review and comment. Please let us know if you have any comments or are signed off on this schedule.

Russell D. Eckenrod
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpujals@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2706 | f: +1 212 225 3999
www.clearygottlieb.com | reckenrod@cgsh.com

**From:** Eckenrod, Russell D.
**Sent:** Monday, July 21, 2014 12:41 PM
**To:** 'ALeblanc@milbank.com'; 'JHarris@milbank.com'; 'ddunne@milbank.com'; 'apisa@milbank.com'; 'tkreller@milbank.com'; 'tmatz@milbank.com'
**Cc:** Schweitzer, Lisa M.
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

All:

I attach a revised draft of the settlement agreement, clean and blacklined against your Friday version. This draft remains subject to further internal and client review, but is being circulated now in the interests of time.

Russell D. Eckenrod
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpujals@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2706 | f: +1 212 225 3999
www.clearygottlieb.com | reckenrod@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Sunday, July 20, 2014 7:24 PM
**To:** Schweitzer, Lisa M.; JHarris@milbank.com
**Cc:** ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com

**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Any update on the draft review? We would like to be in a position to get signatures tomorrow, if possible, but we need a final doc before that happens.

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Friday, July 18, 2014 4:30 PM
**To:** Harris, Jennifer
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom; Matz, Tom
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Thanks Jennifer. We will review and come back to you on the draft.
Can you folks send us a summary of the holdings of your group members so we can get a ball park of how much of each series is represented if we sign? Many thanks.

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant  cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f. +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

**From:** Harris, Jennifer [mailto:JHarris@milbank.com]
**Sent:** Friday, July 18, 2014 2:59 PM
**To:** Schweitzer, Lisa M.
**Cc:** ddunne@milbank.com; apisa@milbank.com; aleblanc@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** NORTEL: revised US PPI Settlement Agreement

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

Lisa,

Enclosed please find a revised draft of the PPI Settlement Agreement, clean and blacklined against the version sent to you yesterday. Please note the draft remains subject to review by our clients and the indenture trustees in all respects.

Best regards,
Jennifer

**Jennifer P. Harris | Milbank**
601 South Figueroa Street | Los Angeles, CA 90017
T: +1 213.892.4344 |  F: +1 213.892.4744
jharris@milbank.com | www.milbank.com

**From:** Matz, Tom
**Sent:** Thursday, July 17, 2014 8:26 AM
**To:** Schweitzer, Lisa M.
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom
**Subject:** NORTEL: US PPI Settlement Agreement

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**

**PRIVILEGED AND CONFIDENTIAL**

Lisa,

Further to our discussions on Tuesday, attached is a draft settlement agreement regarding PPI. This draft agreement is subject to ongoing client and internal review but in the interests of time, we wanted to get it to you for your review and consideration.

We would be pleased to continue our discussions this afternoon.

Tom

_____
**Thomas J. Matz | Milbank**
One Chase Manhattan Plaza | New York, NY 10005
P: +1 212.530.5885 | F: +1 212.822.5885
tmatz@milbank.com| www.milbank.com


===========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.


===========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**EXHIBIT 28**

**EXHIBIT**

**143**

| | |
|---|---|
| **From:** | Eckenrod, Russell D. <reckenrod@cgsh.com> |
| **Sent:** | Monday, July 21, 2014 12:41 PM |
| **To:** | aleblanc@milbank.com; JHarris@milbank.com; ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com |
| **Cc:** | Schweitzer, Lisa M. <lschweitzer@cgsh.com> |
| **Subject:** | RE: NORTEL: revised US PPI Settlement Agreement |
| **Attach:** | 2925539_9(Nortel US PPI Settlement Agreement (CGSH DRAFT 7-21-14)).DOCX; Blackline v MTHM 7-18.pdf |

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

All:

I attach a revised draft of the settlement agreement, clean and blacklined against your Friday version. This draft remains subject to further internal and client review, but is being circulated now in the interests of time.

Russell D. Eckenrod
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpujals@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2706 | f: +1 212 225 3999
www.clearygottlieb.com | reckenrod@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Sunday, July 20, 2014 7:24 PM
**To:** Schweitzer, Lisa M.; JHarris@milbank.com
**Cc:** ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Any update on the draft review? We would like to be in a position to get signatures tomorrow, if possible, but we need a final doc before that happens.

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Friday, July 18, 2014 4:30 PM
**To:** Harris, Jennifer
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom; Matz, Tom
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Thanks Jennifer. We will review and come back to you on the draft.
Can you folks send us a summary of the holdings of your group members so we can get a ball park of how much of each series is represented if we sign? Many thanks.

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

**From:** Harris, Jennifer [mailto:JHarris@milbank.com]

**Sent:** Friday, July 18, 2014 2:59 PM
**To:** Schweitzer, Lisa M.
**Cc:** ddunne@milbank.com; apisa@milbank.com; aleblanc@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** NORTEL: revised US PPI Settlement Agreement

### SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
### PRIVILEGED AND CONFIDENTIAL

Lisa,

Enclosed please find a revised draft of the PPI Settlement Agreement, clean and blacklined against the version sent to you yesterday. Please note the draft remains subject to review by our clients and the indenture trustees in all respects.

Best regards,
Jennifer

---

**Jennifer P. Harris | Milbank**
601 South Figueroa Street | Los Angeles, CA 90017
T: +1 213.892.4344 | F: +1 213.892.4744
jharris@milbank.com | www.milbank.com

---

**From:** Matz, Tom
**Sent:** Thursday, July 17, 2014 8:26 AM
**To:** Schweitzer, Lisa M.
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom
**Subject:** NORTEL: US PPI Settlement Agreement

### SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
### PRIVILEGED AND CONFIDENTIAL

Lisa,

Further to our discussions on Tuesday, attached is a draft settlement agreement regarding PPI. This draft agreement is subject to ongoing client and internal review but in the interests of time, we wanted to get it to you for your review and consideration.

We would be pleased to continue our discussions this afternoon.

Tom

---

**Thomas J. Matz | Milbank**
One Chase Manhattan Plaza | New York, NY 10005
P: +1 212.530.5885 | F: +1 212.822.5885
tmatz@milbank.com| www.milbank.com


==============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s),

or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

===============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**EXHIBIT 29**

**EXHIBIT**

**146**

exhibitsticker.com

| From: | Leblanc, Andrew <ALeblanc@milbank.com> |
|---|---|
| Sent: | Tuesday, July 22, 2014 8:15 PM |
| To: | Eckenrod, Russell D. <reckenrod@cgsh.com>; JHarris@milbank.com; ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com |
| Cc: | Schweitzer, Lisa M. <lschweitzer@cgsh.com> |
| Subject: | RE: NORTEL: revised US PPI Settlement Agreement |

Here are the numbers I understand are final:

1. 7.875% Notes pre-petition interest claim amount: After discussions and further research we agree with the US Debtor amount of $951,562
2. 7.875% Notes unamortized OID amount: The amount in Schedule A needs to change to $400,669
3. 10.75% Notes unamortized OID amount: The amount in Schedule A needs to change to $6,228,818

**From:** Eckenrod, Russell D. [mailto:reckenrod@cgsh.com]
**Sent:** Tuesday, July 22, 2014 3:51 PM
**To:** Leblanc, Andrew; Harris, Jennifer; Dunne, Dennis; Pisa, Albert A.; Kreller, Tom; Matz, Tom
**Cc:** Schweitzer, Lisa M.
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Thank you, we will check internally on whether that is necessary. In the meantime, I attach for your review a draft of the motion to approve the settlement with accompanying proposed order. This draft remains subject to further internal and client review. Please let us know of any questions or comments you may have ☐ happy to discuss.

Russell D. Eckenrod
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpujals@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2706 | f: +1 212 225 3999
www.clearygottlieb.com | reckenrod@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Tuesday, July 22, 2014 3:26 PM
**To:** Eckenrod, Russell D.; JHarris@milbank.com; ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Cc:** Schweitzer, Lisa M.
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

We have some comments on this. Let me know if you need the FA    to speak directly:

1. 7.875% Notes pre-petition interest claim amount: Difference is $35,313 in total. The US Debtors list the pre-petition interest claim as $951,562 ☐ the actual claim shows this to be $984,375 plus $2,500 in fees owed to the trustee for a total of $986,875
2. 7.875% Notes unamortized OID amount: Very small difference - $2,019 total difference. The US Debtors list the unamortized OID as $398,650, according to our calculations it is $400,669. The difference is due to rounding as the US Debtor appears to round up the number of years since the issuance of the debt.
3. 10.75% Notes unamortized OID amount: Relatively small difference - $18,750 total difference. The US Debtors list the unamortized OID as $6,222,656, according to our calculations it is $6,203,906.

**From:** Eckenrod, Russell D. [mailto:reckenrod@cgsh.com]
**Sent:** Tuesday, July 22, 2014 9:01 AM
**To:** Leblanc, Andrew; Harris, Jennifer; Dunne, Dennis; Pisa, Albert A.; Kreller, Tom; Matz, Tom
**Cc:** Schweitzer, Lisa M.
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

## SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
## PRIVILEGED AND CONFIDENTIAL

All:

Further to the below, I attach a draft of Schedule A to the Agreement, indicating the claims and amounts of principal and pre-petition interest to be allowed pursuant to the settlement agreement. This schedule remains subject to further internal review and comment. Please let us know if you have any comments or are signed off on this schedule.

Russell D. Eckenrod
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpujals@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2706 | f: +1 212 225 3999
www.clearygottlieb.com | reckenrod@cgsh.com

**From:** Eckenrod, Russell D.
**Sent:** Monday, July 21, 2014 12:41 PM
**To:** 'ALeblanc@milbank.com'; 'JHarris@milbank.com'; 'ddunne@milbank.com'; 'apisa@milbank.com';
'tkreller@milbank.com'; 'tmatz@milbank.com'
**Cc:** Schweitzer, Lisa M.
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

## SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
## PRIVILEGED AND CONFIDENTIAL

All:

I attach a revised draft of the settlement agreement, clean and blacklined against your Friday version. This draft remains subject to further internal and client review, but is being circulated now in the interests of time.

Russell D. Eckenrod
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpujals@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2706 | f: +1 212 225 3999
www.clearygottlieb.com | reckenrod@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Sunday, July 20, 2014 7:24 PM
**To:** Schweitzer, Lisa M.; JHarris@milbank.com
**Cc:** ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

NNI-PPI-00000213

Any update on the draft review? We would like to be in a position to get signatures tomorrow, if possible, but we need a final doc before that happens.

---

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Friday, July 18, 2014 4:30 PM
**To:** Harris, Jennifer
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom; Matz, Tom
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Thanks Jennifer. We will review and come back to you on the draft.
Can you folks send us a summary of the holdings of your group members so we can get a ball park of how much of each series is represented if we sign? Many thanks.

---

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

---

**From:** Harris, Jennifer [mailto:JHarris@milbank.com]
**Sent:** Friday, July 18, 2014 2:59 PM
**To:** Schweitzer, Lisa M.
**Cc:** ddunne@milbank.com; apisa@milbank.com; aleblanc@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** NORTEL: revised US PPI Settlement Agreement

## SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
## PRIVILEGED AND CONFIDENTIAL

Lisa,

Enclosed please find a revised draft of the PPI Settlement Agreement, clean and blacklined against the version sent to you yesterday. Please note the draft remains subject to review by our clients and the indenture trustees in all respects.

Best regards,
Jennifer

---

**Jennifer P. Harris | Milbank**
601 South Figueroa Street | Los Angeles, CA 90017
T: +1 213.892.4344 | F: +1 213.892.4744
jharris@milbank.com | www.milbank.com

---

**From:** Matz, Tom
**Sent:** Thursday, July 17, 2014 8:26 AM
**To:** Schweitzer, Lisa M.
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom
**Subject:** NORTEL: US PPI Settlement Agreement

## SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
## PRIVILEGED AND CONFIDENTIAL

Lisa,

Further to our discussions on Tuesday, attached is a draft settlement agreement regarding PPI. This draft agreement is subject to ongoing client and internal review but in the interests of time, we wanted to get it to you for your review and consideration.

We would be pleased to continue our discussions this afternoon.

Tom

_____

**Thomas J. Matz | Milbank**
One Chase Manhattan Plaza | New York, NY 10005
P: +1 212.530.5885 | F: +1 212.822.5885
tmatz@milbank.com| www.milbank.com

============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.


============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.


============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s),

or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.


============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**EXHIBIT 30**

**EXHIBIT**

**147**

| | |
|---|---|
| From: | Eckenrod, Russell D. <reckenrod@cgsh.com> |
| Sent: | Tuesday, July 22, 2014 9:58 PM |
| To: | aleblanc@milbank.com; JHarris@milbank.com; ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com |
| Cc: | Schweitzer, Lisa M. <lschweitzer@cgsh.com> |
| Subject: | RE: NORTEL: revised PPI Settlement Agreement |
| Attach: | 2926876_2(Schedule A to PPI Settlement Agreement – Amounts (CGSH DRAFT 7-22-14)).DOCX; Blackline v 7-21.rtf |

Thank you, Andy, that lines up with our understanding as well after consultation with our FA (subject to further internal review/comment), so I have incorporated into the attached revised Schedule A with a blackline against the prior version.

Russell D. Eckenrod
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpujals@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2706 | f: +1 212 225 3999
www.clearygottlieb.com | reckenrod@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Tuesday, July 22, 2014 8:15 PM
**To:** Eckenrod, Russell D.; JHarris@milbank.com; ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Cc:** Schweitzer, Lisa M.
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Here are the numbers I understand are final:

1. 7.875% Notes pre-petition interest claim amount: After discussions and further research we agree with the US Debtor amount of $951,562
2. 7.875% Notes unamortized OID amount: The amount in Schedule A needs to change to $400,669
3. 10.75% Notes unamortized OID amount: The amount in Schedule A needs to change to $6,228,818

**From:** Eckenrod, Russell D. [mailto:reckenrod@cgsh.com]
**Sent:** Tuesday, July 22, 2014 3:51 PM
**To:** Leblanc, Andrew; Harris, Jennifer; Dunne, Dennis; Pisa, Albert A.; Kreller, Tom; Matz, Tom
**Cc:** Schweitzer, Lisa M.
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Thank you, we will check internally on whether that is necessary. In the meantime, I attach for your review a draft of the motion to approve the settlement with accompanying proposed order. This draft remains subject to further internal and client review. Please let us know of any questions or comments you may have – happy to discuss.

Russell D. Eckenrod
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpujals@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2706 | f: +1 212 225 3999
www.clearygottlieb.com | reckenrod@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Tuesday, July 22, 2014 3:26 PM
**To:** Eckenrod, Russell D.; JHarris@milbank.com; ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Cc:** Schweitzer, Lisa M.
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

We have some comments on this. Let me know if you need the FA痴 to speak directly:

1. 7.875% Notes pre-petition interest claim amount: Difference is $35,313 in total. The US Debtors list the pre-petition interest claim as $951,562 – the actual claim shows this to be $984,375 plus $2,500 in fees owed to the trustee for a total of $986,875
2. 7.875% Notes unamortized OID amount: Very small difference - $2,019 total difference. The US Debtors list the unamortized OID as $398,650, according to our calculations it is $400,669. The difference is due to rounding as the US Debtor appears to round up the number of years since the issuance of the debt.
3. 10.75% Notes unamortized OID amount: Relatively small difference - $18,750 total difference. The US Debtors list the unamortized OID as $6,222,656, according to our calculations it is $6,203,906.

---

**From:** Eckenrod, Russell D. [mailto:reckenrod@cgsh.com]
**Sent:** Tuesday, July 22, 2014 9:01 AM
**To:** Leblanc, Andrew; Harris, Jennifer; Dunne, Dennis; Pisa, Albert A.; Kreller, Tom; Matz, Tom
**Cc:** Schweitzer, Lisa M.
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

## SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
## PRIVILEGED AND CONFIDENTIAL

All:

Further to the below, I attach a draft of Schedule A to the Agreement, indicating the claims and amounts of principal and pre-petition interest to be allowed pursuant to the settlement agreement. This schedule remains subject to further internal review and comment. Please let us know if you have any comments or are signed off on this schedule.

---

Russell D. Eckenrod
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpujals@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2706 | f: +1 212 225 3999
www.clearygottlieb.com | reckenrod@cgsh.com

---

**From:** Eckenrod, Russell D.
**Sent:** Monday, July 21, 2014 12:41 PM
**To:** 'ALeblanc@milbank.com'; 'JHarris@milbank.com'; 'ddunne@milbank.com'; 'apisa@milbank.com'; 'tkreller@milbank.com'; 'tmatz@milbank.com'
**Cc:** Schweitzer, Lisa M.
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

## SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
## PRIVILEGED AND CONFIDENTIAL

All:

I attach a revised draft of the settlement agreement, clean and blacklined against your Friday version. This draft remains subject to further internal and client review, but is being circulated now in the interests of time.

Russell D. Eckenrod
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lpujals@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2706 | f: +1 212 225 3999
www.clearygottlieb.com | reckenrod@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Sunday, July 20, 2014 7:24 PM
**To:** Schweitzer, Lisa M.; JHarris@milbank.com
**Cc:** ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Any update on the draft review? We would like to be in a position to get signatures tomorrow, if possible, but we need a final doc before that happens.

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Friday, July 18, 2014 4:30 PM
**To:** Harris, Jennifer
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom; Matz, Tom
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Thanks Jennifer. We will review and come back to you on the draft.
Can you folks send us a summary of the holdings of your group members so we can get a ball park of how much of each series is represented if we sign? Many thanks.

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

**From:** Harris, Jennifer [mailto:JHarris@milbank.com]
**Sent:** Friday, July 18, 2014 2:59 PM
**To:** Schweitzer, Lisa M.
**Cc:** ddunne@milbank.com; apisa@milbank.com; aleblanc@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** NORTEL: revised US PPI Settlement Agreement

### SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
### PRIVILEGED AND CONFIDENTIAL

Lisa,

Enclosed please find a revised draft of the PPI Settlement Agreement, clean and blacklined against the version sent to you yesterday. Please note the draft remains subject to review by our clients and the indenture trustees in all respects.

Best regards,
Jennifer

**Jennifer P. Harris | Milbank**
601 South Figueroa Street | Los Angeles, CA 90017
T: +1 213.892.4344 |  F: +1 213.892.4744
jharris@milbank.com | www.milbank.com

---

**From:** Matz, Tom
**Sent:** Thursday, July 17, 2014 8:26 AM
**To:** Schweitzer, Lisa M.
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom
**Subject:** NORTEL: US PPI Settlement Agreement

### SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
### PRIVILEGED AND CONFIDENTIAL

Lisa,

Further to our discussions on Tuesday, attached is a draft settlement agreement regarding PPI. This draft agreement is subject to ongoing client and internal review but in the interests of time, we wanted to get it to you for your review and consideration.

We would be pleased to continue our discussions this afternoon.

Tom

**Thomas J. Matz | Milbank**
One Chase Manhattan Plaza | New York, NY 10005
P: +1 212.530.5885 | F: +1 212.822.5885
tmatz@milbank.com| www.milbank.com

==========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

==========================================================

NNI-PPI-00000226

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any
attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated
entities.

================================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any
attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

================================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

NNI-PPI-00000227

**EXHIBIT 31**

**EXHIBIT**

**150**

exhibitsticker.com

| From: | Pisa, Albert A. <APisa@milbank.com> |
|---|---|
| Sent: | Thursday, July 17, 2014 12:44 PM |
| To: | Schweitzer, Lisa M. <lschweitzer@cgsh.com>; tmatz@milbank.com |
| Cc: | ddunne@milbank.com; aleblanc@milbank.com; tkreller@milbank.com |
| Subject: | RE: NORTEL: US PPI Settlement Agreement |

Works for me if good for others.

**Albert Pisa | Milbank**
Partner
One Chase Manhattan Plaza | New York, NY 10005
T: +1 212-530-5319 | F: +1 212-822-5319
apisa@milbank.com | www.milbank.com

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Thursday, July 17, 2014 12:26 PM
**To:** Matz, Tom
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom
**Subject:** Re: NORTEL: US PPI Settlement Agreement

Thanks folks. Are you free to talk at 2 pm today?

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999
www.clearygottlieb.com | lschweitzer@cgsh.com

**From:** Matz, Tom [mailto:TMatz@milbank.com]
**Sent:** Thursday, July 17, 2014 11:26 AM Eastern Standard Time
**To:** Schweitzer, Lisa M.
**Cc:** ddunne@milbank.com; apisa@milbank.com; aleblanc@milbank.com; tkreller@milbank.com
**Subject:** NORTEL: US PPI Settlement Agreement

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

Lisa,

Further to our discussions on Tuesday, attached is a draft settlement agreement regarding PPI. This draft agreement is subject to ongoing client and internal review but in the interests of time, we wanted to get it to you for your review and consideration.

We would be pleased to continue our discussions this afternoon.

Tom

**Thomas J. Matz | Milbank**
One Chase Manhattan Plaza | New York, NY 10005
P: +1 212.530.5885 | F: +1 212.822.5885

NNI-PPI-00000239

tmatz@milbank.com| www.milbank.com

=============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

=============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**EXHIBIT 32**

**EXHIBIT**

**151**

| From: | lschweitzer@cgsh.com |
|---|---|
| Sent: | Monday, July 21, 2014 10:37 PM |
| To: | aleblanc@milbank.com |
| Cc: | JHarris@milbank.com; ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com; Eckenrod, Russell D. <reckenrod@cgsh.com>; dabbott@mnat.com |
| Subject: | Re: NORTEL: revised US PPI Settlement Agreement |

Sounds good.

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m:+1 646 610 1096
www.clearygottlieb.com |lschweitzer@cgsh.com

On Jul 21, 2014, at 9:06 PM, "Leblanc, Andrew" <ALeblanc@milbank.com> wrote:

> Yes -- sorry.  Let's plan on 11 for now. May need to move that a little, but that should work.

On Jul 21, 2014, at 8:59 PM, "Schweitzer, Lisa M." <lschweitzer@cgsh.com> wrote:

> Hi folks – we didn't connect today.  It would be good if we can circle up tomorrow morning. Are you free between 10:30-11:30?  Lisa

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lgiambatista@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

**From:** Schweitzer, Lisa M.
**Sent:** Monday, July 21, 2014 11:08 AM
**To:** 'Leblanc, Andrew'; JHarris@milbank.com
**Cc:** ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Folks - We have a revised draft of the settlement agreement that we should be able to get out to you shortly.  I believe John was waiting to hear back from Dennis on one point.
The settlement motion draft will follow separately.
Have you drafted the schedule of the claims and the amounts you proposed they be allowed in (schedule A) so that we can finalize that?  I believe there may have been some questions on those numbers.

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lgiambatista@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Sunday, July 20, 2014 7:24 PM
**To:** Schweitzer, Lisa M.; JHarris@milbank.com
**Cc:** ddunne@milbank.com; apisa@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Any update on the draft review? We would like to be in a position to get signatures tomorrow, if possible, but we need a final doc before that happens.

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Friday, July 18, 2014 4:30 PM
**To:** Harris, Jennifer
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom; Matz, Tom
**Subject:** RE: NORTEL: revised US PPI Settlement Agreement

Thanks Jennifer. We will review and come back to you on the draft.
Can you folks send us a summary of the holdings of your group members so we can get a ball park of how much of each series is represented if we sign? Many thanks.

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

**From:** Harris, Jennifer [mailto:JHarris@milbank.com]
**Sent:** Friday, July 18, 2014 2:59 PM
**To:** Schweitzer, Lisa M.
**Cc:** ddunne@milbank.com; apisa@milbank.com; aleblanc@milbank.com; tkreller@milbank.com; tmatz@milbank.com
**Subject:** NORTEL: revised US PPI Settlement Agreement

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

Lisa,

Enclosed please find a revised draft of the PPI Settlement Agreement, clean and blacklined against the version sent to you yesterday. Please note the draft remains subject to review by our clients and the indenture trustees in all respects.

Best regards,
Jennifer

**Jennifer P. Harris | Milbank**
601 South Figueroa Street | Los Angeles, CA 90017
T: +1 213.892.4344 | F: +1 213.892.4744
jharris@milbank.com | www.milbank.com

**From:** Matz, Tom
**Sent:** Thursday, July 17, 2014 8:26 AM

NNI-PPI-00000251

**To:** Schweitzer, Lisa M.
**Cc:** Dunne, Dennis; Pisa, Albert A.; Leblanc, Andrew; Kreller, Tom
**Subject:** NORTEL: US PPI Settlement Agreement

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

Lisa,

Further to our discussions on Tuesday, attached is a draft settlement agreement regarding PPI. This draft agreement is subject to ongoing client and internal review but in the interests of time, we wanted to get it to you for your review and consideration.

We would be pleased to continue our discussions this afternoon.

Tom

---

**Thomas J. Matz | Milbank**
One Chase Manhattan Plaza | New York, NY 10005
P: +1 212.530.5885 | F: +1 212.822.5885
tmatz@milbank.com| www.milbank.com

================================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any
attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

================================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any
attachments without retaining a copy.

NNI-PPI-00000252

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

==============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**EXHIBIT 33**

**EXHIBIT**

152

| | |
|---|---|
| **From:** | Schweitzer, Lisa M. <lisa schweitzer3b2@cgsh.com> |
| **Sent:** | Monday, July 21, 2014 1:16 PM |
| **To:** | Fred S. Hodara , Esq. (fhodara@AkinGump.com); David H. Botter Esq. (dbotter@AkinGump.com); Brad M. Kahn , Esq. (bkahn@akingump.com) |
| **Subject:** | NORTEL: revised US PPI Settlement Agreement |
| **Attach:** | 2925539_9(Nortel US PPI Settlement Agreement (CGSH DRAFT 7-21-14)).DOCX; Blackline v MTHM 7-18.pdf |

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES
PRIVILEGED AND CONFIDENTIAL**

Fred and gang –

In follow up to our earlier call, attached is a revised draft of the settlement agreement that we sent to Milbank, still subject to everyone's further comments, etc. Please let us know your comments on the draft, if any. Also, let me know if you've found a time to circle up with Milbank on the settlement.

Lisa

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lgiambatista@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

**EXHIBIT 34**

EXHIBIT

155

From:        Schweitzer, Lisa M. <lisa schweitzer3b2@cgsh.com>
Sent:        Saturday, July 19, 2014 3:14 PM
To:          'fhodara@AkinGump.com'; 'dbotter@AkinGump.com'
Cc:          'jravidity@earthlink.net'
Subject:     Fw: NORTEL: draft US PPI Settlement Agreement
Attach:      Nortel US PPI Settlement Agreement (4836-5497-6284-10).docx

Privileged and confidential
For settlement purposes only

Fred and David –

As per Fred's call with John, the draft we got from Milbank is attached. It remains subject to our comments. You should ask Milbank before sharing with your committee members.

Lisa

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999
www.clearygottlieb.com | lschweitzer@cgsh.com

From: Schweitzer, Lisa M.
Sent: Saturday, July 19, 2014 01:52 PM Eastern Standard Time
To: Schweitzer, Lisa M.
Subject: NORTEL: draft US PPI Settlement Agreement

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

NNI-PPI-00000306

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

## AGREEMENT SETTLING THE US POST-PETITION INTEREST DISPUTE

This agreement (the "PPI Settlement Agreement") is entered into by and among Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation ("NNCC" and, together with NNI, the "Nortel Parties"), the bondholders who are signatories hereto (each a "Supporting Bondholder" and, collectively, the "Supporting Bondholders") holding Guaranteed Bonds (defined *infra*), Law Debenture Trust Company of New York, as indenture trustee ( "Law Debenture"), and The Bank of New York Mellon, as indenture trustee ("BNY" and, with the Law Debenture, the "Indenture Trustees,") (with the Nortel Parties, the Supporting Bondholders, and Indenture Trustees each being a "Party" and collectively, the "Parties").

## RECITALS

WHEREAS, on January 14, 2009 (the "Filing Date"), NNI, NNCC, and certain of their United States affiliates (the "US Debtors") other than Nortel Networks (CALA) Inc. ("NN CALA")[1] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") (together with the NN CALA Case, the "US Proceedings") before the United States Bankruptcy Court for the District of Delaware (the "US Court"). On January 22, 2009, the Office of the United States Trustee for the District of Delaware appointed the official committee of unsecured creditors in respect of the US Debtors.

WHEREAS, on the Filing Date, the US Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL, and certain of NNC's and NNL's Canadian affiliates commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and "CCAA"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor").

WHEREAS, prior to the Filing Date, the US Debtors, the EMEA Debtors,[2] the Canadian Debtors (collectively, the "Nortel Debtors"), and certain of their non-debtor affiliates around the world were part of the Nortel group of companies (the "Nortel Group"), of which NNC was the ultimate corporate parent.

---

[1]      NN CALA filed its voluntary petition for protection under chapter 11 of the Bankruptcy Code on July 14, 2009 (the "NN CALA Case") [D.I. 1098].

[2]      The EMEA Debtors are: Nortel Networks U.K. Ltd., Nortel Networks S.A. ("NNSA"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

WHEREAS, pursuant to the Indenture dated as of July 5, 2006 (the "2006 Indenture"),[3] NNL issued multiple series of senior notes guaranteed by NNC and NNI, including two series of fixed rate 10.75% senior notes in the aggregate principal amounts of $450 million and $675 million due 2016 (together, the "10.75% Notes"), a series of fixed rate 10.125% senior notes in the aggregate principal amount of $550 million due 2013 (the "10.125% Notes"), and a series of floating rate senior notes in the aggregate principal amount of $1 billion due 2011 (the "Floating Rate Notes" and, together with the 10.75% Notes and the 10.125% Notes, the "2006 Indenture Notes").

WHEREAS, on September 25, 2009, The Bank of New York Mellon, under the 2006 Indenture, filed a timely proof of claim on behalf of the holders of the 2006 Indenture Notes preserving, among others, their claim for "an unliquidated amount for the continuing post-petition (a) accrual of interest (including interest upon the overdue installments of interest)..."[4]

WHEREAS, as provided in Section 1001 of the 2006 Indenture, "[t]he Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities of such series in accordance with their terms and this Indenture." The 2006 Supplemental Indentures establish the applicable rate of interest for each series of 2006 Indenture Notes. Moreover, Section 312 of the 2006 Indenture provides for interest payable to noteholders and that interest not punctually paid on the interest payment date constitutes defaulted interest.

WHEREAS, pursuant to the Indenture dated as of March 28, 2007 (the "2007 Indenture"), NNC issued 2.125% convertible senior notes due 2014 (the "2.125% Notes") in an aggregate principal amount of $575 million and 1.75% convertible senior notes due 2012 (the "1.75% Notes" and, together with the 2.125% Notes, the "2007 Indenture Notes" and, together with the 2006 Indenture Notes, the "NNI Indenture Notes") in an aggregate principal amount of $575 million. The 2007 Indenture Notes are each guaranteed by NNI and NNL.

WHEREAS, on September 25, 2009, The Bank of New York Mellon, under the 2007 Indenture, filed a timely proof of claim on behalf of the holders of the 2007 Indenture Notes for, among others, "a claim in an unliquidated amount for the continuing post-petition (a) accrual of interest (including interest upon the overdue installments of interest). . . ."[5]

WHEREAS, pursuant to Section 4.01 of the 2007 Indenture, "[t]he Issuer shall pay the principal of and interest (including Additional Interest, if any) on the Notes on the dates and in the manner provided in the Notes . . . . To the extent lawful, the Issuer shall pay interest (including post-petition interest in any proceeding under any bankruptcy, insolvency or other

---

[3]    Supplemented by the First Supplemental Indenture, dated July 5, 2006, the Second Supplemental Indenture dated May 1, 2007, and the Third Supplemental Indenture dated May 28, 2008 (collectively the "2006 Supplemental Indentures").

[4]    *See* TR40041, Attachment to Proof of Claim ¶ 8.

[5]    *See* TR40042, Attachment to Proof of Claim ¶ 8.

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

similar applicable law) on (i) overdue principal, at the rate borne by Notes; and (ii) overdue installments of interest (without regard to any applicable grace period) at the same rate." Additionally, pursuant to Section 2.11 of the 2007 Indenture, "[i]f the Issuer (and the Guarantors) fail to make a payment of interest on the Notes, it (and the Guarantors) shall pay such defaulted interest plus, to the extent lawful, any interest payable on the defaulted interest." The 2007 Indenture establishes the applicable rate of interest for each series of 2007 Indenture Notes.

WHEREAS, pursuant to the Indenture dated as of February 15, 1996 (the "1996 Indenture"), NNCC issued a series of fixed rate 7.875% senior notes guaranteed by NNL in an aggregate principal amount of $150 million due 2026 (the "7.875% Notes" and, with the 2006 Indenture Notes and the 2007 Indenture Notes, the "Guaranteed Bonds").[6]

WHEREAS, on September 28, 2009, the Law Debenture Trust Company of New York filed a timely proof of claim on behalf of the holders of the 7.875% Notes preserving, among others, their claim for "payment in full of all post-petition interest due and payable under the [1996] Indenture."[7]

WHEREAS, pursuant to Section 1001 of the 1996 Indenture, "[t]he applicable Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities in accordance with their terms and this Indenture." The 1996 Indenture established the applicable rate of interest for the 1996 Indenture Notes.

WHEREAS, after the Filing Date, the Nortel Debtors agreed to pursue an orderly and coordinated sale of the Nortel Group's businesses and assets. The various Nortel estates further agreed that all sale proceeds would be held in escrow accounts corresponding to each sale transaction, pending later agreement by the parties on allocation or a litigated resolution of any allocation dispute. This agreement among the US Debtors, the Canadian Debtors and certain of the EMEA Debtors was memorialized in the Interim Funding and Settlement Agreement, dated as of June 9, 2009 (the "IFSA").[8] Following a joint hearing on June 29, 2009, the IFSA was approved by each of the US Court [D.I. 993] and the Canadian Court.

WHEREAS, from 2009 to 2011, the Nortel Debtors conducted a series of court-approved sale transactions that generated approximately $7.5 billion in sale proceeds (together with accrued interest, the "Sale Proceeds"). Each Nortel Group entity that satisfied the definition of "Nortel Seller" (as defined in the IFSA) was entitled to participate in the distribution of the Sale Proceeds.

---

[6]      All holders of the Guaranteed Bonds are collectively defined as "Bondholders".

[7]      *See* TR43729 at LDTCNY0000282.

[8]      *See* Exhibit B to the Motion Pursuant to 11 U.S.C. § 105(a), § 363, § 503 and Fed. R. Bankr. P. 9019 for an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 874].

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

WHEREAS, after three failed mediation attempts regarding the allocation of the Sale Proceeds among the Nortel Sellers, litigation to resolve the allocation issues (the "Allocation Litigation") was ordered by the US Court by an Order dated April 3, 2013 [D.I. 9947] (as supplemented by further orders) and directed by endorsements of the Canadian Court dated March 8, 2013 and April 3, 2013.[9]

WHEREAS, after extensive fact and expert discovery, on May 12, 2014, the parties commenced a trial (the "Allocation Trial") before the US Court and the Canadian Court (collectively, the "Courts"). The evidentiary portion of the Allocation Trial concluded on June 24, 2014.

WHEREAS, at the request of the Monitor in the Memorandum of the Monitor Regarding Bondholder Claims Issues, dated June 19, 2014 [D.I. 13880] (the "Monitor's Request"), and purportedly in connection with the Allocation Trial, on June 30, 2014, the Courts issued an order directing briefing and argument (the "PPI Dispute") on two issues relating to post-petition interest ("PPI") on the Guaranteed Bonds:

    i)     whether the holders of the Guaranteed Bonds are legally entitled in each jurisdiction to claim or receive any amounts under the relevant indentures above and beyond the outstanding principal debt and pre-petition interest (namely, above and beyond US $[4.092] billion); and

    ii)    if determined that the holders of the Guaranteed Bonds are so entitled, what additional amounts are such holders entitled to so claim and receive.

WHEREAS, on July 15, 2014, certain of the parties to the Allocation Litigation exchanged opening briefs with respect to the PPI Dispute. The briefs advance the parties' divergent and competing positions regarding the PPI Dispute. Depending on the resolution of the PPI Dispute, distributions to the U.S. Debtors' creditors could be materially different.

WHEREAS, the PPI Dispute requires the determination of separate and distinct legal issues in the United States (the "US PPI Dispute") and Canada (the "Canada PPI Dispute"), and must thus be decided independently in each jurisdiction. The PPI Settlement Agreement relates solely to the US PPI Dispute.

WHEREAS, the Parties all acknowledge and agree that the entry into any settlement of the US PPI Dispute shall not be deemed an acknowledgement or acceptance of the position of any party to the US PPI Dispute, the Canada PPI Dispute or the Allocation Litigation. The Parties also acknowledge and agree that the ultimate outcome of the US PPI Dispute is uncertain, that appeals in respect of such litigation are likely, that the cost of such litigation is both substantial and burdensome on each of the Parties and that such cost will continue to increase absent a final and binding resolution of the US PPI Dispute. The approval of the PPI Settlement

---

[9]    *See* Exhibits C and D to Notice of Filing of Items Designated for Record on Appeal dated May 1, 2013 [D.I. 10414].

Agreement should end a contentious and costly litigation regarding the entitlement of Bondholders to PPI, resolving an issue which could have significantly delayed both the confirmation of the US Debtors' chapter 11 plan(s) and the ultimate distribution of plan proceeds to the US Debtors' creditors, as well as expedite the administration of the US Debtors' estates generally. As a result of the compromises embodied in this PPI Settlement Agreement, the US Debtors have substantially reduced the potential size of the PPI claim of the Bondholders and have mitigated the risk to their unsecured creditors of a costly and protracted appeals process that would no doubt have followed any judicial determination of the US PPI Dispute, thereby preserving significant value for all of the US Debtors' stakeholders.

NOW THEREFORE, IN LIGHT OF THE FOREGOING RECITALS, AND FOR GOOD AND VALUABLE CONSIDERATION, THE VALUE OF WHICH IS HEREBY AGREED, THE PARTIES HEREBY FURTHER AGREE, SUBJECT TO THE SATISFACTION OF ALL CONDITIONS SET FORTH HEREIN THAT:

1.    **INTERPRETATION**

1.1.    The Recitals set forth above form an integral part of this PPI Settlement Agreement and are incorporated fully herein.

2.    **PPI SETTLEMENT**

2.1.    Subject to Section 4.3, in the event that NNI at any time has more than sufficient funds to pay all of its allowed administrative and prepetition claims in full, holders of NNI Indenture Notes shall be entitled to payment from NNI of PPI in the PPI Settlement Amount and shall be paid PPI from such funds (together with any other creditors of the Nortel Parties entitled to payments of PPI) until the PPI Settlement Amount, taking into account PPI payments made by NNCC to holders of the 7.875% Notes in accordance with Section 2.2 hereof, is paid in full.

2.2.    Subject to Section 4.3, in the event that NNCC at any time has more than sufficient funds to pay all of its allowed administrative and prepetition claims in full, holders of 7.875% Notes shall be entitled to payment from NNCC of PPI in the PPI Settlement Amount and shall be paid PPI from such funds (together with any other creditors of the Nortel Parties entitled to payments of PPI) until the PPI Settlement Amount, taking into account PPI payments made by NNI to holders of NNI Indenture Notes in accordance with Section 2.1 hereof, is paid in full.

2.3.    The "PPI Settlement Amount" shall be an amount equal to 55% of the aggregate amount of accrued PPI in respect of the Guaranteed Bonds from the Filing Date up to and including the date or dates of distribution (the "Total PPI Amount") either to or for the benefit of the holders of the Guaranteed Bonds.

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

2.3.1. The Total PPI Amount shall be calculated in accordance with the applicable indentures and using the contract rate of PPI set forth in the applicable indentures for each of the Guaranteed Bonds (the "Contract Rate").

2.3.2. By way of example, if the Total PPI Amount as of June 30, 2014 was $1.65 billion, and June 30, 2014 was the date on which all amounts were distributed by the Nortel Parties, the PPI Settlement Amount would have been $907.5 million on such date. The Parties agree that the foregoing is for illustrative purposes only and is not binding on any Party nor to be used for any other purpose under this PPI Settlement Agreement or otherwise.

2.3.3. The different series of Guaranteed Bonds provide creditors with specific and varying contractual entitlements, including, without limitation, entitlement to make-whole payments, no-call rights, the method of calculating any post-petition amount or rate (except as expressly provided herein), etc. (those features being referred to collectively herein as "contractual entitlements"). Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any such contractual entitlements, other than PPI to the extent provided herein. All such contractual entitlements are expressly reserved by the Supporting Bondholders and the Indenture Trustees. To the extent that any Bondholder is determined to be entitled to any contractual entitlement against a Nortel Party (whether by order of the US Court or a settlement or plan approved by the US Court) the amount of such contractual entitlement shall be included in, and not an addition to, the PPI Settlement Amount as determined in accordance with the applicable provisions of this Section 2.

3. **RESOLUTION OF US PPI DISPUTE AND GUARANTEED BOND CLAIMS**

3.1. The PPI Settlement Agreement is intended to be a full and final settlement of (i) the US PPI Dispute with respect to the Monitor's Request currently pending before the US Court and (ii) the allowed claims for outstanding principal obligations and accrued prepetition interest obligations (each as set forth on Schedule A hereto), and entitlement to PPI (calculated pursuant to Sections 2.1 and 2.2 herein) arising under the Guaranteed Bonds. Nothing in this PPI Settlement Agreement is or shall be deemed to be a settlement of the Canada PPI Dispute or any part thereof or otherwise a settlement of any claim of any Bondholder against any of the Canadian Debtors' estates.

4. **RESERVATION OF RIGHTS**

4.1. Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge (in whole or in part) of (i) any right of any Party to assert or defend against any allocation position or advance or defend against any arguments as to entitlement to Sale Proceeds in the Allocation Litigation, including in connection with any appeal(s) of any court ruling made in connection with the Allocation Litigation; or (ii) any claim, right or entitlement of any Party to Sale Proceeds in the Allocation Litigation.

4.2.   Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge (in whole or in part) of the ability of unsecured creditors of the US Debtors' estates (other than the Bondholders) to assert a claim for PPI with respect to the US Debtors' estates at the contract rate (if any) applicable to such creditor's claims; provided, however, that if there are insufficient funds available to pay PPI to all unsecured creditors of the US Debtors' estates due such amounts, then, solely for purposes of determining any allocation of available PPI among such creditors, the holders of the Guaranteed Bonds shall be deemed to have a claim for PPI equal to the amount of post-petition interest that would have accrued at the applicable Contract Rate. Further, this PPI Settlement Agreement does not settle the manner in which any funds available for distribution shall be allocated among the creditors of NNI in the event that less than the full amount of PPI can be paid to all creditors owed such amounts and such application shall be determined by later agreement of the parties whether as part of the chapter 11 plan of the US Debtors in the chapter 11 cases or by subsequent agreement among the relevant affected creditors.

4.3.   For the avoidance of any doubt, nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any rights created under this PPI Settlement Agreement, any claim of any Party to enforce such rights, or a release of any claims for facts or events occurring or actions taken after the date of this PPI Settlement Agreement, nor shall this PPI Settlement Agreement be used, referred to or contended by any Party to have any relevance or probative value in connection with any claims not released herein.

5.     **EFFECTIVENESS**

5.1.   The agreements, acknowledgments and obligations contained herein (other than the obligations contained in Section 5.3 hereof) are expressly contingent upon, and shall become effective only upon the occurrence of all of the conditions to effectiveness below in this Section 5 (the "Effective Date").

5.2.   Approval of the Nortel Parties' entry into and performance under this PPI Settlement Agreement by an order of the US Court in the US Proceedings, in the form attached as Schedule B hereto (the "Approval Order"), is a condition precedent to the effectiveness of this PPI Settlement Agreement. In the event that the US Court does not enter the Approval Order by ▨▨▨▨, any Supporting Bondholder and/or Indenture Trustee may, in their sole discretion, terminate the PPI Settlement Agreement as to such Supporting Bondholder and/or Indenture Trustee.

5.3.   The Nortel Parties will move promptly for, and use their commercially reasonable best efforts to obtain, approval of this PPI Settlement Agreement under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (respectively, "Rule 9019(a)," and the "Bankruptcy Rules"). The other Parties agree to use their commercially reasonable best efforts to support the Nortel Parties in obtaining US Court approval of this PPI Settlement Agreement.

6.    **BINDING EFFECT OF PPI SETTLEMENT AGREEMENT.**

6.1.    Upon effectiveness, this PPI Settlement Agreement and the Approval Order shall be binding upon the Parties to this PPI Settlement Agreement and the Bondholders and any successors or assigns of the Parties.

6.2.    Each Supporting Bondholder represents and warrants, severally and not jointly, that, as of the date hereof, such Supporting Bondholder is the legal owner, beneficial owner and/or holder of investment and voting authority over, the aggregate amount of obligations outstanding under the Guaranteed Bonds as set forth on its signature pages hereto.

6.3.    A Supporting Bondholder may (i) sell, transfer, assign, pledge, grant a participation interest in, or otherwise dispose of, directly or indirectly, its right, title, or interest in respect of any of such Supporting Bondholder's interest in a Guaranteed Bond, in whole or in part, or (ii) grant any proxies, deposit any of such Supporting Bondholder's interests in a Guaranteed Bond, into a voting trust, or enter into a voting agreement with respect to any such interest (collectively, the actions described in clauses (i) and (ii), a "Transfer"), *provided* that until the earlier of (i) the US Court's entry of the Approval Order or termination of this PPI Settlement Agreement as permitted pursuant to Section 5.2 hereof, the transferee thereof agrees in writing to be bound by the terms of this PPI Settlement Agreement.

7.    **MISCELLANEOUS**

7.1.    **Acknowledgements.**  Each Party acknowledges that that this PPI Settlement Agreement is not, and shall not be deemed to be, a solicitation of a vote for the acceptance of the Plan pursuant to section 1125 of the Bankruptcy Code.

7.2.    **Confidentiality.**  Unless otherwise agreed by the Parties, the substance and existence of this PPI Settlement Agreement shall be kept strictly confidential until the filing of a motion with the US Court to seek approval of this PPI Settlement Agreement.

7.3.    **Further Assurances.**  The Parties will cooperate in good faith to effectuate the terms of this PPI Settlement Agreement, including working in good faith to obtain the necessary court approvals. No Party shall take any action with the purpose or effect of evading the terms of this PPI Settlement Agreement.

7.4.    **Governing Law.**  This PPI Settlement Agreement shall be governed and construed in accordance with the laws of the State of New York without giving effect to the conflict of laws principles thereof.

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

7.5.  **Integration**.  This PPI Settlement Agreement constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof.  This PPI Settlement Agreement may not be amended, supplemented or modified except by a written instrument executed by each of the Parties to this PPI Settlement Agreement.

7.6.  **Jurisdiction**.  The Parties agree to the exclusive jurisdiction of the US Court and the United States District Court for the District of Delaware in respect of any dispute arising out of or in connection with this PPI Settlement Agreement or its subject matter or formation.

7.7.  **Manner of Execution**.  The Parties may execute this PPI Settlement Agreement in counterparts, each of which shall be an original, and all executed counterparts shall collectively be deemed to be one and the same instrument.  Facsimile or pdf signatures shall be deemed original signatures, and the Parties may exchange signature pages via mail, courier, facsimile or email.

7.8.  **No Admissions**.  This PPI Settlement Agreement shall in no event be construed as or be deemed to be evidence of an admission or concession on the part of any Party of any claim or fault or liability or damages whatsoever.  Each of the Parties denies any and all wrongdoing or liability of any kind and does not concede any infirmity in the claims or defenses which it has asserted or could assert.  No Party shall have, by reason of this PPI Settlement Agreement, a fiduciary relationship in respect of any other Party or any person or entity, and nothing in this PPI Settlement Agreement, expressed or implied, is intended to or shall be so construed as to impose upon any Party any obligations in respect of this PPI Settlement Agreement except as expressly set forth herein.  This PPI Settlement Agreement are part of a proposed settlement of a dispute among the Parties.  Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this PPI Settlement Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding involving enforcement of the terms of this PPI Settlement Agreement.

7.9.  **No Third-Party Beneficiaries**.  This PPI Settlement Agreement is not intended to, and shall not, create rights in any person or entity not a Party hereto.

7.10.  **Non-Effectiveness**.  In the event this PPI Settlement Agreement does not become effective, the Parties reserve all of their rights and defenses with respect to the US PPI Dispute resolved by this PPI Settlement Agreement and this proposed settlement shall not constitute an admission by any Party regarding the validity of the claims or defenses resolved by this PPI Settlement Agreement or that they have any liability in connection with such claims or defenses.

7.11.  **Non-Severability**.  Each of the provisions of this PPI Settlement Agreement is an integrated, essential and non-severable part of this PPI Settlement Agreement.

7.12. <u>Sophisticated Party</u>.  Each Party represents and warrants that it has participated in preparation of this PPI Settlement Agreement and has been represented by sophisticated and experienced counsel in so doing.  In any construction of this PPI Settlement Agreement, the PPI Settlement Agreement shall not be construed for or against any Party, but the same shall be construed fairly according to its plain meaning.

7.13. <u>Representative Capacity</u>.  Each person executing this PPI Settlement Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

7.14. <u>Simultaneous Occurrence</u>.  All material acts provided hereunder that are to occur on the Effective Date are deemed to occur simultaneously.

7.15. <u>Successors and Assigns</u>.  This PPI Settlement Agreement shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns.

*[Signature Pages to Follow]*

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Settlement Agreement.

NORTEL NETWORKS INC.

By: _____    _____

Name:  John Ray

Title:  Principal Officer

NORTEL NETWORKS CAPITAL CORPORATION

By: _____    _____

Name:  John Ray

Title:  Principal Officer

)NFIDENTIAL

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

**Aggregate Face Amounts Beneficially Owned
or Managed on Account of:**

10.75% Notes:  $_____
10.125% Notes:  $_____
Floating Rate Notes:  $_____
2.125% Notes:  $_____
1.75% Notes:  $_____
7.875% Notes:  $_____


Name of Institution:

_____


By  _____
    Name:
    Title:


For bondholders requiring a second signature
    line:


By  _____
    Name:
    Title:

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

## SCHEDULE A

[list of prepetition claim amounts to be added]

## SCHEDULE B

**[form of order to be added]**

CONFIDENTIAL

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/18/2014

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ———————————————— X | | |
| *In re* | : | Chapter 11 |
| Nortel Networks Inc., *et al.*[10] | : | Case No. 09-10138 (KG) |
| Debtors. | : | Jointly Administered |
| | : | **Hearing Date:** [░░░] |
| | : | **Objections Due:** [░░░] |
| ———————————————— X | | |

## ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG NORTEL NETWORKS INC., NORTEL NETWORKS CAPITAL CORPORATION, THE SUPPORTING BONDHOLDERS, LAW DEBENTURE TRUST COMPANY OF NEW YORK, AND THE BANK OF NEW YORK MELLON WITH RESPECT TO POST-PETITION INTEREST ISSUES

**[to be inserted]**

---

[10]     The debtors in these chapter 11 cases, along with the last four digits of each US Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

#4836-5497-6284

**<u>EXHIBIT 35</u>**

EXHIBIT

157

exhibitsticker.com

| From: | ddunne@milbank.com |
| Sent: | Wednesday, July 23, 2014 4:32 PM |
| To: | John J. Ray , III (jray@aviditypartners.com) (jray@aviditypartners.com) |
| Subject: | Finished with our guys |

We are there.  The sig pages are coming in already.  We just need to revise the docs to carve out Steve.

Thanks for all your help.

Calling Lisa now to tell her.


===========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

NNI-PPI-00000338