## **EXHIBIT 46**

(Part 2 of 2)

```
 1 | agreement as opposed to -- and I am not talking
 2 | about the recitals now.  I am talking about the
 3 | rest of the agreement.  Do you say there is or is
 4 | not any ambiguity?
 5 |           MR. MAGUIRE:   There is no ambiguity,
 6 | Your Honor, unless you adopt the Canadian I call it
 7 | misinterpretation of legal title.  In that case you
 8 | create an irreconcilable conflict between Article
 9 | 4's grant of legal title to NNL and Schedule A's
10 | specific reference to the parties' joint -- the
11 | participants' joint ownership.
12 |           If you create that conflict by
13 | misinterpreting the words "legal title," then you
14 | have a conflict between two contractual provisions,
15 | and we are in ambiguity.  And Schedule A, of
16 | course, is not a recital.  It is an operative
17 | provision of the contract.
18 |           THE CANADIAN COURT:   Thank you.
19 |           MR. MAGUIRE:   So the recitals here play
20 | a role simply in confirming the history, what the
21 | parties brought to their contract; part, if you
22 | like, of the factual matrix.
23 |           The third recital says that the
24 | participants bear the full entrepreneurial risks
25 | and benefits of the business.  That's what owners
```

 1   do.   And they had been doing it for years before
 2   2004, when they executed the MRDA.

 3               As my colleague Mr. Gottlieb will
 4   explain, the parties did not get their ownership
 5   from the contract.   They did not get their
 6   ownership from the MRDA.   They had already had it.
 7   They had been jointly creating Nortel IP for years.
 8   So the recitals in the contract recognize something
 9   that already exists.   It doesn't need to create
10   anything.

11               My friend Mr. Zarnett also relied on
12   Articles 2 and 3 of the MRDA, which give the
13   participants nothing more than a profit split, as
14   if that had some significance here.   But here we
15   are not talking about some annual operating profit
16   share.   We are talking about allocating the
17   proceeds of sale among owners, and owners are
18   entitled to the proceeds of what they have sold.
19   And there is nothing in Article 2 or Article 3 that
20   speaks to the allocation of sales proceeds among
21   owners, nor does the entire agreement clause help
22   the Canadian argument.

23               My friend Mr. Zarnett brought that to
24   the attention of the Courts this morning, but when
25   he did so, he omitted seven words from that

1    provision.  And they are somewhat important words,

2    so I would like to bring them to your attention.

3    The entire agreement clause of the contract says

4    that it is the entire agreement --

5                    THE CANADIAN COURT:  Just a minute.

6    Which provision is that?

7                    MR. MAGUIRE:  I believe, if I remember

8    right, it is Article 14.  We will put it up on the

9    screen.  It is on page 13, and it is at the top,

10    paragraph (d).

11                    THE CANADIAN COURT:  Yes.  Okay.  Thank

12    you.

13                    MR. MAGUIRE:  And, of course,

14    Mr. Zarnett is entirely correct, that it does

15    provide that this agreement sets forth the entire

16    agreement and understanding between the

17    participants.  But the seven words that I would

18    invite the Courts' attention to are the first seven

19    words of the provision, which say, "In respect to

20    the subject matter hereof."

21                    And if we want to see what the subject

22    matter of the MRDA was, we only have to go to the

23    first page.  The first two lines of the contract

24    say exactly what the subject matter is.  And maybe

25    we can pull that up.

1           The first two lines show that this

2    agreement is all about confirming and formalizing

3    the operating arrangements of the participants.

4    And, in fact, when you step back and think about

5    it, all of the terms of the MRDA deal with the

6    operating arrangements among the parties.  Even the

7    terms --

8           THE CANADIAN COURT:  Well, if you are

9    right about that, I mean, isn't that something that

10   could be turned against your argument?  If all it

11   is dealing with is the operational context, then is

12   Article A -- or Schedule A, I am sorry -- to be

13   read as dealing only with the operational, an

14   operational context?

15           MR. MAGUIRE:  Oh, I think absolutely.

16   But remember, that's what owners do.  They operate.

17   So it doesn't undercut or diminish in any way my

18   argument.  No question that owners have assets and

19   they use those assets.

20           And this contract reflects the

21   operating arrangements among the parties and in

22   doing so confirms that it is dealing with owners.

23   The people who are participating in this, the

24   people who are doing the operating arrangements are

25   owners.

1           THE US COURT:  The MRDA does not say,

2    for example, then, this agreement is to delineate

3    the ownership interests of the participants or the

4    various parties, does it?

5           MR. MAGUIRE:  Exactly right.  None of

6    the terms of the MRDA do that.  In fact, even the

7    terms that deal with a participant retiring or

8    dropping out assumes that the show will go on.  It

9    assumes that the operations will continue among the

10   remaining participants.  The contract absolutely

11   does not address the liquidation of Nortel.  It

12   absolutely does not address the allocation of a

13   sale of all of Nortel's IP.  That is why --

14           THE CANADIAN COURT:  Mr. Maguire, you

15   referred to a recital, and I didn't catch it.

16   Which recital did you say says what the subject

17   matter is?

18           MR. MAGUIRE:  The subject matter.  It

19   is actually -- well, maybe you could call it a

20   recital.  It is the very first two lines of the

21   contract on page 1.  And I think we still have it

22   up on the screen for you, Justice Newbould.

23           THE CANADIAN COURT:  Oh, I see.  I see.

24   Okay.

25           MR. MAGUIRE:  And specifically, it, I

1   would submit, makes clear that the purpose, the end

2   and aim of this agreement, the subject matter of it

3   is to confirm and to formalize the operating

4   arrangements of the participants, which actually

5   they had been carrying on for a number of years at

6   this point.

7                   THE CANADIAN COURT:   Thank you.

8                   MR. MAGUIRE:   The only other ownership

9   argument I think we have heard today is

10  Mr. Crichlow's suggestion, which we heard somewhat

11  through trial from the Canadian interests as well,

12  that somehow the word "ownership" or references to

13  ownership could be dismissed as some nonlegal or

14  economic or transfer pricing type of context.

15                  Well, of course, that would not work

16  for Schedule A.   Schedule A is part of the

17  contract.   And the MRDA, as our Canadian friends

18  have told us repeatedly, is a legal contract.   It

19  lays out the rights and obligations of the parties.

20                  Nortel lawyers drafted the MRDA, and

21  there is no claim here for legal malpractice or for

22  reformation.   There is no basis here to suppose

23  that the word "ownership" in the contract means

24  anything other than ownership.

25                  Bottom line:   In this proceeding, which

1   is all about the participants' ownership of NN

2   technology, if, as Mr. Coleman reminded us, it is

3   important to focus on the words that are actually

4   used in a contract, NNL simply has no basis to ask

5   the Courts to ignore the most critical words in the

6   contracts, which are participants and their

7   ownership of NN technology.

8            The parties' other contracts, as the

9   parties had other contracts concerning NN

10  technology -- the MRDA was not the only one -- but

11  they all say the same thing.  On our time line, for

12  example, under 2004, if you go to the bottom of the

13  time line, you will see the Foundry license

14  agreement, which says that Nortel and its

15  subsidiaries own the US patents.  And those, of

16  course, are patents that were sold to Rockstar.  No

17  sole ownership there.

18           And if we move to 2007 and again drop

19  to the bottom of the chart, we see the Alcatel sale

20  agreement, where Nortel represented to Alcatel that

21  the IP being sold was owned by the designated

22  sellers, who were NNL and its affiliates.  Again,

23  no sole ownership there.

24           All these contractual statements of

25  joint ownership are no accident.  They reflect what

```
 1    was going on in the real world above the line.
 2    They reflect how important it was for NNL that EMEA
 3    and the US shared ownership of NN technology.  And
 4    I think there is no question, as Justice Newbould
 5    suggested this morning, that the transfer pricing
 6    and tax considerations played an enormous role and
 7    motivation for NNL to frankly and candidly
 8    acknowledge the participants' ownership rights.
 9            The US Debtors in their main brief at
10    page 49 refer us to the OECD guidelines.  Under the
11    guidelines, if the EMEA and the US were not owners,
12    if they were mere licensees, then the $20 billion
13    that they contributed to creating NN technology
14    would have been taxable royalty income to NNL.  So
15    NNL had 20 billion reasons to keep recognizing that
16    the EMEA and the US parties were not mere licensees
17    but owners who owned the NN technology that they
18    jointly created.
19            My colleague Mr. Gottlieb will walk
20    through how jointly creating IP gave rise to
21    ownership under Ontario law and under the parties'
22    agreements with their employees.  Mr. Gottlieb will
23    show how all the evidence of ownership that we
24    presented at trial is admissible here not only as
25    part of the factual matrix but also as direct
```

```
 1    evidence of ownership.
 2              THE CANADIAN COURT:  Mr. Maguire, I was
 3    going to ask one of you.  Whether it is you or
 4    Mr. Gottlieb, I don't really care.  But you say
 5    that the issue of ownership is a question for
 6    Ontario law.  And under Ontario law, you just said
 7    that that is the principle of the employer has some
 8    equitable ownership of the patent if the inventor
 9    was employed to do that kind of work.
10              Is somebody going to explain why
11    Ontario law applies?  I read in another brief, I
12    think the reply of the Monitor, that under US law
13    that is not the case.  So I would like to
14    understand why it is Ontario law.
15              MR. GOTTLIEB:  I can do it now or I can
16    do it after.
17              THE CANADIAN COURT:  That is fine, as
18    long as somebody at some point deals with that.
19              MR. GOTTLIEB:  Sure.  I am happy to do
20    it now or Mr. Maguire can keep going.
21              THE CANADIAN COURT:  No.  I don't want
22    to interrupt, as long as --
23              MR. GOTTLIEB:  Okay.  Thank you very
24    much.
25              MR. MAGUIRE:  So that is fine.  I will
```

```
 1   defer to my colleague Mr. Gottlieb, and then when
 2   he has concluded, I will return to look at the
 3   evidence, the extrinsic evidence, what my friend
 4   Mr. Zarnett referred to as that tidal wave, that
 5   tsunami of evidence that is before the Courts.
 6                THE CANADIAN COURT:   Thank you.
 7                THE US COURT:   Thank you.
 8                THE CANADIAN COURT:   Mr. Gottlieb.
 9                MR. GOTTLIEB:   Thank you, Your Honour
10   and Judge Gross, let me just get organized for one
11   second, please.
12                THE US COURT:   You bet.
13                MR. GOTTLIEB:   Thank you.   Judge Gross,
14   as always, good to see you on the TV.   Justice
15   Newbould, good to see you here.
16                I am going to go through what
17   Mr. Maguire said I was going to touch.   As a result
18   of some of the submissions this morning, I'm going
19   to raise a couple of additional points, but I think
20   as a matter of time I'll just start off directly
21   dealing with the interpretation of the MRDA and why
22   we say Canada got nothing more than legal title
23   under the MRDA and which left and did not touch the
24   beneficial interest of the EMEA Debtors and I will
25   say NNI as well.
```

1            I want to deal with a point that
2    Justice Newbould raised in questions to Mr. Maguire
3    about the interpretation.  As we all said, we don't
4    want to go through the law of interpretation in
5    Ontario.  It is well briefed.  I don't think there
6    is much dispute about it.
7            I just want to deal with the two points
8    raised and that is recitals and schedules, if I
9    might.
10           The law is not in debate between the
11   parties that recitals can be looked at and in fact
12   should be looked at to assist the Courts in
13   arriving at the intentions of the parties.
14           And that is not surprising since
15   recitals usually are there to tell what the
16   intentions of the parties are in entering into the
17   agreement.  So they are a very important guide, and
18   what we see in Ontario at least in case law over
19   and over and over again is Courts, when
20   interpreting contractual provisions, referring to
21   recitals and saying how they help and what they
22   tell the Court.
23           And I am just going to give two
24   references so the Courts have it for their notes.
25   One is of course the Eli Lilly decision from the

```
 1   Supreme Court of Canada, and that is a well-known
 2   decision.   Mr. Zarnett took the Court to it.   It is
 3   in his brief, and just for your notes that is at
 4   our authorities Volume 1, tab 13.
 5                 And the Court there, the Supreme Court
 6   of Canada says explicitly look to recitals that
 7   assist in the interpretation and the Court --
 8                 THE CANADIAN COURT:   Can you point out
 9   where you would like me to look in that case?
10                 MR. GOTTLIEB:   I will.   I believe it is
11   at paragraph -- sorry, Your Honour, I just had
12   that.
13                 In our version of it, it is paragraphs
14   starting 57 through 63 that deals with that, where
15   the Court says:
16                      "All of this is evident on a
17                      plain reading of the recitals to the
18                      supply agreement".
19                 That is about three-quarters of the way
20   down in 57.   So the Supreme Court looks at that.
21                 But there is actually a more direct
22   case on the point which I would like to refer to,
23   which is a recent decision of Justice Newbould
24   sitting in this Court from 2012 and it is called
25   Sistem, spelled S-I-S-T-E-M, and then the Republic,
```

1    as I like to refer to it as, because it is the

2    Kyrgyz Republic --

3                    THE CANADIAN COURT:   Kyrgyzstan.

4                    MR. GOTTLIEB:   Kyrgyzstan Republic.

5    You do that obviously better than I do.

6                    That is at tab 23 of Volume 2 of our

7    brief, and I am going to come back to that case, so

8    we need not take it out now, but the only thing I

9    want to point to is Justice Newbould had the

10   opportunity to consider ownership of shares and

11   looked at the recitals and said that the recitals,

12   the preambles gave clear statement about who owned

13   what and showed a clear intention.

14                   So there is no debate about how to use

15   a recital in Ontario.  They are very important and

16   cannot be avoided.

17                   Now, the schedule actually forms part

18   of the contract and the case law again is replete

19   with examples of Courts going through entire

20   contracts starting at the recitals and going

21   through the schedule and there is a tremendous

22   amount of case law that says schedules are part of

23   the contract and there is no real issue with that.

24                   THE CANADIAN COURT:   The MRDA provides

25   in section 3, Article 3 for the schedule.

```
 1              MR. GOTTLIEB:  Yes.

 2              THE CANADIAN COURT:  And it refers to

 3   that as to the Schedule A is to determine each

 4   participant's share and the allocation will be

 5   computed pursuant to Schedule A.  So that is the

 6   purpose of Schedule A, according to this Article 3.

 7              MR. GOTTLIEB:  Yes, and that is the

 8   purpose of it, but let me put it to you slightly

 9   differently, which is this.

10              The evidence is clear that the MRDA was

11   entered into for the purpose of dealing with this

12   transfer pricing issue to make sure that it was

13   being dealt with on an arm's length basis.

14              And Schedule A was the reason for

15   entering into the entire MRDA so that the taxation

16   authorities could be satisfied.

17              So when we talk about Schedule A, and I

18   don't know how to put this, it is not just some

19   minor schedule at the back of the agreement for a

20   minor purpose.  It is the whole reason that the

21   MRDA was entered into.

22              So it is safe to assume and in my

23   respectful submission the Court ought to take it as

24   a given that Schedule A was very important to the

25   parties, and when Mr. Maguire took you to the words
```

1    of it, I think those words, with respect, have to

2    be interpreted in accordance with the plain and

3    ordinary meaning there.

4                So my point was simply that schedules

5    obviously form a part of the agreement, and

6    although probably no authority for that is needed,

7    I have got one, which is the SimEx Inc. case, and

8    that is against IMAX Corp., and that is in our

9    Volume 3, tab 48, and that is a 2005 decision of

10   our Ontario Court of Appeal.  And again, that case

11   the Court starts at the front of the document, goes

12   to the back of the document, refers to all the

13   schedules, all the recitals, to come up with the

14   intention of the parties.

15               So those are just points of contractual

16   interpretation that, in my respectful view, are

17   clear, which takes me to 4(a) of the MRDA and the

18   point we have to make about.

19               And Your Honour and Judge Gross, if you

20   have the MRDA up, what we know is that 4(a) says

21   that:

22                    "Except as otherwise

23                    specifically agreed, legal title to

24                    any and all NN Technology [...]"

25                    And then it goes on, so it is legal

1    title is vested, shall be vested in NNL.  And the

2    reason I point that out is if you go back to

3    recital 1, which is on page 2 of the document,

4    recital 1, again, intention of the parties, says:

5                    "Whereas legal title to all NN

6                    Technology is held in the name of

7                    NNL [...]"

8                    Now, we say, in our respectful

9    submission, and I'll take you to the law, that

10   legal title is a very well-known defined term that

11   means not beneficial interest.  But I point to the

12   recital that shows the intention of the parties

13   because title held in the name of, legal title held

14   in the name of is what I am going to say is the

15   hallmark of showing an intention that there is no

16   beneficial interest.

17                   When we talk about holding something in

18   the name of a company, what that means is it is for

19   someone else.  That is what "in the name of" means

20   and that is the intention of the parties that comes

21   out right from the first recital.

22                   And I'll state the obvious as well with

23   respect to 4(a), when it uses the term "legal

24   title" that Mr. Zarnett says is ownership, is

25   everything, is all the rights, we --

```
 1                  THE CANADIAN COURT:  Well, just a
 2   second, you are saying that holding something in
 3   the name of means it is being held for someone
 4   else.
 5                  MR. GOTTLIEB:  Correct.
 6                  THE CANADIAN COURT:  Is it your
 7   contention that the legal title is being held by
 8   NNL for other people?  Isn't that the logic of what
 9   you are saying?
10                  MR. GOTTLIEB:  No, I apologize, I am
11   not being clear on that.
12                  When you talk about the title being
13   held, it is in the name of NNL for sure, but it is
14   the technology is being held in the name of NNL.
15                  When you talk about it being held in
16   the name of someone, you talk about it being held
17   for the benefit of others.  That was my only point
18   there.
19                  THE CANADIAN COURT:  Well, are you
20   saying that NNL holds the legal title for the
21   benefit of others?  I thought your point is it is
22   equitable title.
23                  MR. GOTTLIEB:  It is.  My point is that
24   it is holding -- that legal title is held by NNL,
25   that is correct.
```

```
 1                And when we go to 4(a), which is the
 2    operative provision, when we go to 4(a), which is
 3    the operative provision and it refers to legal
 4    title, we have to recall that the experts for the
 5    Canadian Debtors were told to assume that legal
 6    title equals ownership.  So that is the basis of
 7    the Canadian case, legal title equals ownership.
 8                And as a matter of law, that is just
 9    not right, and I point out one.  If it was intended
10    that NNL would hold ownership, it could have said
11    that incredibly clearly and very clearly.  The
12    evidence is unequivocal that Nortel knew how to say
13    all the right, title, interest in technology, it
14    said that in the contracts.  We know that recital
15    number 2 that was referred to earlier today
16    actually refers to the language of beneficial and
17    equitable.
18                THE US COURT:  Somewhere in the back of
19    my mind, Mr. Gottlieb, there was a draft or
20    something where the word "ownership" appeared.
21                MR. GOTTLIEB:  That is correct, Judge
22    Gross.  That is correct.  There was a discussion
23    early on -- pardon me, not early.  At the time that
24    the MRDA was being drafted and there was a draft of
25    it that provided that NNL would hold ownership of
```

```
 1    the technology.
 2              And the lawyer --
 3              THE CANADIAN COURT:  So how is that
 4    admissible?
 5              THE US COURT:  Well, because I asked
 6    the question.  Other than that, I'm not sure,
 7    Justice Newbould.
 8              THE CANADIAN COURT:  Well, we have
 9    rules about whether you can look at prior drafts.
10              MR. GOTTLIEB:  I'm actually -- if you
11    don't mind, I'm going to address that question,
12    because I like Judge Gross's answer as to why I can
13    answer it better than mine.  But the answer to
14    the question is yes, there was a prior draft that
15    had --
16              THE CANADIAN COURT:  I remember it.
17              MR. GOTTLIEB:  -- ownership in it and
18    the lawyer for NNL said, no, you've got to take
19    that out.
20              Now, this is going way ahead in the
21    submissions, Your Honour, but when it comes to
22    discussion of what is admissible and not admissible
23    and subjective intention and not subjective
24    intention, the question that we have got before the
25    Court is who owned what.  That is the question
```

 1   before the Court:   Who owned what.

 2              And from your own decision in the

 3   Sistem case that I'll obviously take us to, you

 4   look at a broad range of evidence to decide who

 5   owns what, notwithstanding there is a contract.

 6              So when there is evidence of people

 7   around at the time before the MRDA is entered into,

 8   at the time before it is entered into, who talk

 9   about ownership and talk about who owned what, that

10   evidence is directly admissible for the purpose of

11   showing the Court who owned what.

12              Now, subjective --

13              THE CANADIAN COURT:   How does that

14   square with the law as to when you cannot use a

15   prior draft?

16              And secondly, so you have got a lawyer

17   saying take it out.   Is that the company?   I mean,

18   did the executives say, okay, we are going to take

19   it out?   I mean, it is a bunch of lawyers playing

20   around.

21              MR. GOTTLIEB:   Right, I'm actually not

22   arguing about that particular piece of evidence

23   right now.   I was just giving a heads-up because

24   you made the comment that there is direct evidence

25   about ownership that is highly relevant.   I'm not

1    talking about prior drafts and I am not -- clearly

2    not talking about subjective intention.

3            THE CANADIAN COURT:  Well, it is in a

4    prior draft.

5            MR. GOTTLIEB:  Yes, but it is the

6    discussion of the people at the time, but I'm going

7    to move on with that point so I can deal with 4(a)

8    and the law in 4(a), and then I'll come back to the

9    evidence point, if that is okay.

10           As you saw in the brief from the

11   Canadian Debtors, they rely on Black's Dictionary

12   to ask the Court to come to an interpretation of

13   what legal title means, but what is interesting, is

14   the way I'll put it, is they actually don't take

15   the Court to the definition of legal title in

16   Black's in their brief, they take it to title.

17           And the reason why they don't is

18   because it is actually completely contrary to what

19   their position is on it.

20           And I want to take you to the Francey

21   decision that Mr. Zarnett referred to because this

22   is the definition of legal title and how it is

23   dealt with as a matter of Canadian law.

24           And we are going to bring it up on the

25   screen, but it is referred to at tab 15, Volume 1,

```
 1    of the EMEA authorities.
 2                THE CANADIAN COURT:  Just a second.
 3    I'm looking --
 4                MR. GOTTLIEB:  You can look at it in
 5    there, obviously.
 6                THE CANADIAN COURT:  It is tab 4 of his
 7    brief.
 8                MR. GOTTLIEB:  Do you have that there?
 9    Okay, so Francey is a decision of the Alberta
10    Queen's Bench which was upheld by the Court of
11    Appeal.  It is a 1990 decision.  And I refer to it
12    because it actually takes us to the Black's Law
13    Dictionary that was actually in place at the time
14    of the MRD being drafted.
15                In this case, a fraudster, as
16    Mr. Zarnett said, had represented himself as the
17    general manager of a car dealer.  On that pretense
18    he convinced the plaintiff to deliver her motor
19    home.  He then absconded and the question was, what
20    was -- whether or not the exclusion clause would
21    apply.
22                And it is important to go to the
23    language of the case because the Court had to
24    decide what these various definitions mean, and if
25    you go to page 15 of the decision, please, so if
```

1    you have that, what the Court starts with at

2    paragraph 73 is:

3                    "What is meant by 'title' and

4                    'ownership'?  Ownership is defined

5                    in Black's Law Dictionary as:

6                    Collection of rights to use and

7                    enjoy property, including right to

8                    transmit it to others...  The

9                    complete dominion, title or

10                   proprietary right in a thing or

11                   claim.  The entirety of the powers

12                   of use and disposal allowed by law."

13                   So that is what ownership is.  And then

14   if you go down, it says:

15                   "Given the limited rights

16                   granted [...] under the consignment

17                   agreement, it cannot reasonably be

18                   argued that such rights included

19                   all, or even substantially all, of

20                   the rights which Francey enjoyed as

21                   'owner' of the motor home so as to

22                   warrant the inference that Francey

23                   parted with ownership in favour of

24                   Checknita".

25                   And then it refers to at 74 the

1    definition of "legal title" and it says:
2                    "Legal title is defined in
3              Black's at p. 807".
4              And this is the definition that is not
5    in the Canadians' brief, notwithstanding that legal
6    title is the precise phrase in the MRDA 4(a):
7                    "Legal title.  One cognizable
8              or enforceable in a court of law, or
9              one which is complete and perfect so
10             as regards the apparent right of
11             ownership and possession, but which
12             carries no beneficial interest in
13             the property, another person being
14             equitably entitled thereto..."
15             So the definition that is in Black's
16   Law Dictionary, and again, it is my friends that
17   rely on Black's Law Dictionary, goes directly
18   against their proposition of what legal title
19   means.  They see it means ownership including
20   beneficial ownership.
21             And I have handed up the full portion
22   of the Black's Law Dictionary.  And if you go to
23   807, page 807 in the top left corner, we have the
24   definition that is relied on by the Court as to
25   legal title, bottom right-hand corner where it

1  says:

2              "One cognizable or enforceable

3              in a Court of law or one which is

4              complete and perfect so far as

5              regards the apparent right of

6              ownership and possession but which

7              carries no beneficial interest in

8              the property, another person being

9              equitably entitled thereto.  In

10             either case, the antithesis of

11             equitable title."

12             Which is the beneficial interest in the

13 property.

14             So my friends say legal title means

15 ownership including beneficial interest.  They rely

16 on Black's Law Dictionary.  I have just shown you

17 the provision from Black's Law Dictionary which

18 says that legal title does not include ownership

19 and is in fact the antithesis of ownership, which

20 is where I started this discussion, which is legal

21 title clearly isn't ownership.

22             And I will just refer to another case

23 which makes the same point, which is at Volume 2,

24 tab 26 of our authorities, and it is called MacKeen

25 Estate v. Nova Scotia and it is the Appellate

1    Division of the Nova Scotia Supreme Court in 1978.

2          And this was what I will call a

3    complicated estate planning undertaken to try to

4    avoid succession tax, and the question for the

5    Court was, who was the real owner?  Who was the

6    real owner and not through the mechanism that had

7    been put in place.

8          And if we go to page 6, paragraph 22,

9    please, again the Court deals with what legal title

10   really is and what it is really not.  And what the

11   Court says in 22 is:

12               "In the modern sense of the

13               phrase, a person is 'beneficially

14               entitled' to property if he is the

15               real or beneficial owner of it, even

16               though it is in someone else's name

17               as nominal owner.  The nominal owner

18               of the property, whether real

19               property, choses in action or other

20               personal property, has legal title

21               to it."

22          Legal title does not carry with it

23   those things.  Legal title is the nominal owner,

24   according to the Court.

25               "The real owner, the person

```
 1                    'beneficially entitled' to it, can
 2                    require the nominal owner to let him
 3                    use or have possession of the
 4                    property, or to give him the income
 5                    from it, or otherwise to let him
 6                    have the benefit and enjoyment of
 7                    it."
 8                    And it goes on.
 9                    But the point there is obviously that
10      when the Court talks about legal title, it talks
11      about it in the sense of being the opposite of
12      beneficial ownership.  And what it says is, which
13      again makes perfect sense --
14                    THE CANADIAN COURT:  I mean, I
15      understand your Black's Law Dictionary.  This one
16      doesn't seem to say the same thing.  He is talking
17      about what is a nominal, quote, owner, and under
18      this quote he says you can call him a nominal owner
19      to convey or transfer its legal title.
20                    But you are not saying that your
21      clients have the right to have transferred to it
22      the legal title, you are not saying that, and that
23      is what this says.
24                    MR. GOTTLIEB:  Well, let me put this
25      differently, Your Honour.  What this says, in my
```

1   respectful submission, is the nominal owner of the

2   property, that definition where it says the nominal

3   owner of the property, whether real or choses in

4   action, has legal title to it.

5            So it is just putting the point that

6   the Francey case made in the opposite way, saying

7   if you have legal title, you are the nominal owner.

8   But I understand your point about the Black's Law

9   Dictionary one is more direct because that is

10  exactly what the Canadian Debtors --

11           THE CANADIAN COURT:  He is saying here

12  if you are the nominal owner, whatever the nominal

13  owner was in that estate, he is saying that the

14  equitable owner could call for a transfer of the

15  legal title.  Well, no one is saying that here,

16  that you could call upon for transfer of the legal

17  title.  So it is not quite apt, that is my --

18           THE US COURT:  But I think it is

19  standing for the legal proposition, the sentence:

20                "The nominal owner of the

21                property [...]" and I will skip some

22                words "has legal title to it.  The

23                real owner, the person 'beneficially

24                entitled' to it, can require the

25                nominal owner to let him use or have

```
 1                   possession [...]," et cetera.
 2                   MR. GOTTLIEB:  That is exactly correct,
 3   Judge Gross, and that is relevant here because NNL
 4   holds only legal title, but don't forget NNL also
 5   has a beneficial interest with the other RPEs, and
 6   the use that this quote is talking about makes
 7   perfect sense, because when you have legal title
 8   separated from beneficial title, the beneficial
 9   owners have to get the permission from the legal
10   title holder to use the property.  That is not a
11   novel proposition.  So that makes perfect sense
12   here.
13                   So when we talk about the separation
14   between the legal title and the beneficial title,
15   what we are talking about here is contrary to the
16   position of the Canadian Debtors, the Canadian
17   Debtors would have us read the MRDA to see they
18   mean the same things based on Black's Law
19   Dictionary, when in fact it shows that they mean
20   the opposite thing and do not include those
21   provisions.
22                   That is why, Your Honour and Judge
23   Gross, you notice the EMEA Debtors never run away
24   from the legal title.  They never try to say that
25   NNL doesn't have legal title.  What we say is legal
```

```
 1    title means something drastically different than
 2    what the Canadian Debtors say it means.
 3    Mr. Maguire took you through the agreements
 4    themselves that acknowledge that point, and
 5    therefore, the proposition put forward by the
 6    Canadian Debtors that we should read "legal title"
 7    to mean full ownership in our respectful submission
 8    just doesn't stand up on the wording of the MRDA
 9    and doesn't stand up on the law that interprets
10    those provisions.
11              So in our respectful submission, when
12    you look at 4(a), it is of no help at all to the
13    Canadian Debtors' position and in fact shows the
14    opposite.
15              Now, I want to just raise one point
16    very briefly.  The question came up as to whether
17    or not, and this was in questioning earlier today,
18    Justice Newbould, the question came up whether
19    there would have to be an ambiguity to look at and
20    rely on the provisions of the addendum.  That was
21    just a question asked.
22              You asked --
23              THE CANADIAN COURT:  I don't know if I
24    asked that.
25              MR. GOTTLIEB:  One of the counsel --
```

1   okay, I may have misheard that, whether or not

2   there would have to be an ambiguity.

3                THE CANADIAN COURT:  Whether there had

4   to be an ambiguity to look at the recital, I think.

5                MR. GOTTLIEB:  And my submission on the

6   use of recitals doesn't change.  The addendum are

7   obviously agreements entered into between the

8   parties and therefore they are agreements that must

9   be looked at by the Court, if I can go that far.

10  But I think you know that.

11               Before I move on to very quickly deal

12  with the arm's length standard that I am going to

13  deal with quickly, I want to get to the tax law

14  point that was raised directly by Mr. Crichlow and

15  in a bit of a sideways way by Mr. Zarnett where

16  they discussed ownership for tax purposes.  That

17  was actually the phrase that was used, ownership

18  for tax purposes by Mr. Crichlow.

19               And there is no such thing as ownership

20  for tax purposes.  You own it or you don't.  It

21  would be nice if you could do things like that for

22  tax purposes, but that is not the way it works.

23               When people are owners, they are owners

24  for everything.  And I would have thought that's

25  trite, but because it was raised, I'll refer the

1    Court to the Gelber case, which is a 1991 case from

2    our tax court and it is at tab 19, Volume 1.

3              And in this case, and you don't have to

4    turn to it, but in this case, and paragraph 31 is

5    the reference, in this case the taxpayer set up a

6    corporation to own condo projects.  The taxpayers

7    were shielded therefore from personal liability

8    during construction.  On completion, ownership was

9    transferred to the taxpayers and the taxpayers

10   tried to deduct all the expenses in connection with

11   the construction.

12             Not surprisingly, the Courts said I'm

13   sorry, you can't do that, you can't have it both

14   ways.  And paragraph 31 is up on the screen and in

15   the second sentence the Court -- pardon me, the

16   third sentence the Court says:

17                  "But one cannot be an owner of

18                  property for one purpose - for

19                  protection of personal liability

20                  during construction - and be an

21                  owner for another purpose - for tax

22                  purposes.  In the same way a person

23                  cannot simultaneously inhale and

24                  exhale, a person cannot

25                  simultaneously own and not own a

```
 1                    property.  An owner of a property
 2                    owns the property throughout the
 3                    time he is owner, for good and bad.
 4                    A person must decide what is more
 5                    important, protection from potential
 6                    liability and have a corporation own
 7                    the property during construction, or
 8                    potential tax deductions and have
 9                    oneself own the property during
10                    construction.  The decision is to be
11                    made prior to construction."
12                    You've got to make the decision.
13                    So the suggestions that somehow the
14      provisions that are referred to throughout the
15      evidence, in the agreements and elsewhere, mean
16      something different when they say "ownership" and
17      all of the things that Mr. Maguire took the Court
18      to, just in the written agreements, just in the
19      written agreements those mean ownership but they
20      mean a different ownership, in my respectful
21      submission there is just no possible merit to that
22      argument at all and the case law makes that clear.
23                    I want to now move just to one point
24      before I leave the MRDA and go to ownership, which
25      is the arm's length standard, because in our
```

1    respectful submission, the construction that the
2    Canadian Debtors put to the contract and ask the
3    Court to adopt would violate the arm's length
4    principle.

5                 And I will say as an aside it would
6    also violate the commercial absurdity requirement,
7    meaning a contract should be interpreted in a
8    manner that should avoid commercial absurdity.

9                 But the arm's length principle is very
10   important here, and it has to be remembered that
11   this is not some idea in the sky of arm's length
12   principle existing.  It is actually not that at
13   all.  The MRDA was drafted because Nortel as a
14   group wanted to convince the taxation authorities
15   that their arrangements complied with the arm's
16   length principle and requirements.  They had tax
17   lawyers who specialized in it.  The MRDA itself
18   refers to the arm's length principle.

19                So there can be no doubt that the arm's
20   length principle was something that surrounded the
21   MRDA and the preparation of the MRDA, and therefore
22   should be part of the interpretation of the MRDA
23   because that is what the parties intended and there
24   can be no doubt about that on the evidence and
25   there can be no doubt about it --

```
1              THE CANADIAN COURT:  Well, this
2   argument really comes down to nobody would ever
3   sign such an agreement, that is what your argument
4   comes down to, that nobody at arm's length would
5   have signed such an agreement.
6              MR. GOTTLIEB:  That the Canadian
7   Debtors say this agreement is, correct.
8              THE CANADIAN COURT:  All right, but
9   where is the evidence that nobody would sign such
10  an agreement?
11             MR. GOTTLIEB:  The evidence is in a
12  couple of places.  One, it is in Dr. Cooper's
13  testimony where he said based on his experience and
14  his view of transfer pricing and arrangements, no
15  party would enter into an agreement where all of
16  the benefit in effect went one way.  And I'll pause
17  there to make the point.
18             NNL benefitted just like the other
19  RPEs, the other IEs, because they all benefitted
20  from the pool of technology they were all creating.
21  So they all put their IP together into a large pool
22  and they all agreed to share it.  There is no doubt
23  about that on the evidence.  That is agreed by
24  everyone.
25             So NNL got a huge benefit from getting
```

1   IP from the other entities and the revenues from

2   the other entities, which as one of the witnesses

3   said, Clive Allen, that NNL couldn't have continued

4   in business if it didn't have that, those revenues.

5           So you have the entities get together

6   to figure out how to develop R&D and to pool R&D,

7   but NNL is the only party that gets to keep the

8   R&D, to get the benefit of the proceeds of a sale

9   of the very asset they are creating, and that is

10  from inception of the MRDA, according to the

11  Canadian Debtors.  That is the interpretation they

12  put on it, and that interpretation, I'll say just

13  bluntly, makes no sense because commercial parties

14  would not enter into such a deal.  They would not

15  agree, NNI and the EMEA Debtors, they would not

16  agree to spend billions and billions and billions

17  of dollars on the creation of IP, and if you take

18  the Canadians' argument for what it is, here is the

19  example.

20          EMEA and NNI spend 5 billion dollars on

21  creating a technology and NNL contributes zero in

22  the development of that technology.  This is the

23  Canadian interpretation.  The next day, because NNL

24  owns it, NNL can sell it without even asking EMEA

25  and NNI, can sell it to Ericsson for 10 billion

```
 1   dollars.  It hasn't gone into a product, so they
 2   say the other parties have no right to it
 3   whatsoever, not even a licence.
 4                  Recall the Canadians' argument, that
 5   is, if it doesn't go into a product, the EMEA
 6   Debtors and NNI have no right to it, no licence in
 7   it.
 8                  THE CANADIAN COURT:  Well, how could
 9   they sell it?
10                  MR. GOTTLIEB:  I'm sorry?
11                  THE CANADIAN COURT:  How could they
12   sell it?
13                  MR. GOTTLIEB:  It is a package of
14   technology.  They say they own it --
15                  THE CANADIAN COURT:  How can you sell
16   it without getting the permission, while the
17   contract is going on, without getting the
18   permission?
19                  MR. GOTTLIEB:  That is the Canadian
20   Debtors' argument, a hundred percent, that is a
21   hundred percent their argument.  Because what they
22   say is any technology that is developed is vested
23   in NNL.  The vesting of the legal title of NNL
24   equals the ownership.  If it does not go into a
25   product, if that technology has not gone into a
```

```
 1    product, that technology is owned outright by NNL,
 2    not even subject to a licence.
 3                 That is the argument they make, because
 4    it is not in a product.  So they can sell the
 5    package of technology made by NNI and EMEA to
 6    Ericsson the next day as a bundle of software, as a
 7    bundle of technology, and they get to keep it all,
 8    every penny of it, without giving any of it to NNI
 9    and the EMEA Debtors.
10                 THE CANADIAN COURT:  Well, are they
11    saying that while the companies were in business
12    they could do that?
13                 MR. GOTTLIEB:  Yes, that is the natural
14    flow from their argument.
15                 THE CANADIAN COURT:  Are they saying
16    that, that while the companies were in business
17    making product, Nortel products, that they could do
18    that?  I haven't heard them say that.
19                 MR. GOTTLIEB:  Let me answer it two
20    different ways, Your Honour, and that is the whole
21    point I'd say.
22                 The answer is when this happened, when
23    there was an ability to get the fruits of
24    exploitation of NN Technology, so for example, the
25    Foundry litigation where there were patents in the
```

1   Foundry litigation that were not even part of a
2   product, got transferred to Rockstar, they did not
3   say they could get it all.  They did not keep it
4   all.  And they distributed it to all of the RPEs
5   based on their R&D contribution.

6              That is not what they say today.  That
7   is against what they say today, because they say
8   that if it is not in a product, there is no licence
9   and, therefore, they own it outright subject to
10  nothing.

11             So to put it this way, it is a great
12  question, but that is why we say that the Canadian
13  Debtors' approach to allocation flies in the face
14  and is contrary to the way the companies operated
15  throughout the life up until insolvency, and in
16  fact, frankly, after insolvency.

17             Alcatel, that you have heard so much
18  about as well, it was allocated in accordance with
19  R&D contribution, not based on the legal title
20  theory that they now put forward.

21             Mr. Britven, you'll recall, expert for
22  the CCC, in answer to your question, Mr. Britven in
23  his cross-examination acknowledged that Foundry and
24  Alcatel were inconsistent with the position put
25  forward by NNL in this litigation that it gets to

```
 1    sell that IP.
 2              THE CANADIAN COURT:  Let me ask you, I
 3    was going to ask you at some point and I might as
 4    well ask you now, Article 3, 3(a).
 5              MR. GOTTLIEB:  Yes.
 6              THE CANADIAN COURT:  When we turn to
 7    performing the R&D activity, each participant gets
 8    their RPSM.
 9              MR. GOTTLIEB:  Yes.
10              THE CANADIAN COURT:  It is put to you
11    by the Monitor that that's the deal.
12              MR. GOTTLIEB:  Right.
13              THE CANADIAN COURT:  That they paid all
14    this money for R&D activity, but the deal was that
15    each person got their RPSM.
16              MR. GOTTLIEB:  Right, okay, so I'll
17    deal with that directly now.  And there are a few
18    different answers to that.
19              One is this agreement was, as
20    Mr. Maguire said, about operating.  This was an
21    operating agreement.
22              What 3 talks about is the payment that
23    they are going to receive as a result of their
24    contributions to that operating.
25              So it would be fully expected that that
```

```
 1    would be what the parties would get as a result of
 2    this.  Section 3 sets out the parties' entitlement.
 3    And, Your Honour, I'll point out, very important,
 4    if you read 3 closely, it is the participants and
 5    that includes NNL.  So all of the participants,
 6    including NNL, what they are entitled to receive
 7    for their R&D activity is the allocation, the
 8    adjustments calculated in Schedule A, but that
 9    includes NNL.
10                So if NNL is right, if that is the
11    only, if that is the only part of the compensation,
12    then NNL doesn't get any more either.
13                And the Canadian argument, Your Honour,
14    hinges on the word "the" when it says "the
15    compensation".  Let me just pull up the language.
16    It says:
17                     "Each participant", and I point
18                     out again that includes NNL "shall
19                     be entitled to receive a payment in
20                     an amount equal to the allocation
21                     determined under the RPSM as the
22                     measure of the benefit [...]"
23                So the Canadian Debtors put a lot of
24    weight on the word "the" as being the only benefit
25    you get from doing R&D, because the Canadians say
```

1    that they get a way bigger benefit than that as a
2    result of doing R&D.  They say they get to sell it
3    and keep all the proceeds and no one else gets it.
4              That is the benefit that they say they
5    get.  So again, when we talk about the proper
6    interpretation of the agreement and questions of
7    commercial absurdity and whether or not any arm's
8    length parties would enter into such an agreement,
9    it all deals with the same point.  The Canadians'
10   interpretation, with respect, doesn't make sense.
11             THE CANADIAN COURT:  Which of the
12   "the's" in that provision do you say they rely on?
13             MR. GOTTLIEB:  They say right after the
14   definition of R&D allocation, they say you are
15   "entitled to receive a payment as the measure of
16   the benefit."
17             It is "the measure", as opposed to a
18   measure, as opposed to the measure of the benefit
19   with respect to operating profits.  But this whole
20   section deals with operating profits.  Everybody
21   agrees that this provision says nothing about how
22   to allocate the proceeds of sale, everybody agrees
23   that the MRDA doesn't do that.
24             So on the one hand the Canadian Debtors
25   say this shows that you are not entitled to any

```
 1    allocation of the proceeds of sale of IP, that is
 2    what they say out one side, and then out of the
 3    other side of their mouth they say but everybody
 4    acknowledges that the MRDA doesn't deal with the
 5    allocation of proceeds of sale of IP.
 6                     So this provision 3 makes perfect sense
 7    in this context, which is in an operating agreement
 8    to set out the profits and losses on an ongoing
 9    basis, that is what it deals with and that is why
10    it makes sense on there.
11                     So, Your Honour, I was back at the
12    arm's length principle, and I am going to leave
13    that very quickly to move on.
14                     The only thing I wanted to put up on
15    the screen, if I could, was everyone relies on
16    jointly the OECD guidelines.  All the experts
17    referred to these OECD guidelines, and I want to go
18    to page 25 because, again, the entire discussions
19    were based on the MRDA being in compliance with
20    transfer pricing principles.
21                     And at 25, if we just blow up the
22    summary section at 89, and really 90 is the key,
23    because it talks about the benefits that parties
24    who are obliged to comply with legal transfer
25    pricing principles must comply with.  And it says:
```

1                    "The legal owner", and that is

2                NNL "of an intangible is entitled to

3                all returns attributable to the

4                intangibles only if, in substance

5                [...]"

6            And what all those bullet points say is

7    if it does everything.  This is in an MNE context

8    where you have multinational entities, you have

9    various entities in various countries.  And 90

10   says:

11                   "To the extent that one or more

12                members of the MNE group other than

13                the legal owner performs functions,

14                uses or contributes assets, or

15                assumes risks or costs related to

16                the development, enhancement,

17                maintenance and protection [...]" et

18                cetera, et cetera "returns

19                attributable to the intangible must

20                accrue to such other members through

21                arm's length compensation reflecting

22                their anticipated contribution to

23                intangible value.  This may,

24                depending on the facts and

25                circumstances, constitute all or

```
 1                    substantially all or part of the
 2                    return attributable to the
 3                    intangible".
 4              So it is saying that the legal title
 5     isn't entitled to anything as a result of it being
 6     the legal title holder.  It is entitled to what it
 7     does, but if any of the other entities around the
 8     world carry on these functions, they are going to
 9     get the benefits and in fact they may get all the
10     benefits and the legal title holder may get none.
11              THE CANADIAN COURT:  One of the things
12     about this case that can be a puzzle or a conundrum
13     or whatever one wants to call it that we have to
14     think about is that this agreement was clearly
15     driven by transfer pricing issues.
16              Dr. Eden I think said it is all about
17     transfer pricing, that is all it is, the way she
18     put it.
19              And transfer pricing deals with the
20     allocation of profit of an operating business year
21     to year, and so far as selling an asset is
22     concerned, eventually they put in this schedule
23     that you don't take into account the sale of an
24     asset.
25              THE US COURT:  You see, that leads me
```

```
 1    to something that concerns me, and Mr. Gottlieb
 2    being a nice man will not embarrass me with the
 3    question.
 4            Because it may be a dumb question, but
 5    you know, as you have pointed out and as I was
 6    thinking over the weekend, the MRDA does not speak
 7    about the sale of assets, what happens in the event
 8    of an insolvency or anything of that nature.
 9            So if I found that the MRDA simply does
10    not apply to the issues before me, would we not go
11    back to the course of dealing and all of that
12    extrinsic evidence?
13            MR. GOTTLIEB:  Yes, and yes.  The first
14    yes is my answer to the question is you would go
15    back and you would look at what I am about to turn
16    to, which is how do you own IP.  How does a party
17    become the owner of the IP?  And the answer is
18    through the inventive process and no one can
19    disagree with that.  That is consistent law around
20    the world.  You invent it, you own it.
21            So you would look at the rights of the
22    party, Judge Gross, and what you would see is the
23    parties who develop it own it.  So I agree with
24    that fully.
25            That would be the way you would have to
```

1    approach the ownership issue as well.

2              Now, as you know, Judge Gross, we say,

3    and it is the same right here because there is

4    nothing that takes away the ownership rights in the

5    MRDA, but yes, you would look at the rights of the

6    parties as they existed, how they treated it, how

7    they agreed upon it, how they discussed it.  You

8    would use all of that to determine the rights of

9    the parties, which you are going to hear shortly, I

10   hope I get to it, is that we say you get to look at

11   and must look at all of that now as well.

12             So yes, course of dealing of the

13   parties, what they said about it, and how they

14   owned it is the critical part.

15             Now we say the MRDA doesn't change

16   that, Judge Gross, but it gets to the same point.

17             THE CANADIAN COURT:  And Judge Gross

18   asked the same -- is really asking the same

19   question as what I was positing, and my experience

20   in life is no question is a dumb question.

21             THE US COURT:  I have had a few.

22             THE CANADIAN COURT:  But when you start

23   thinking about this agreement and what was behind

24   it and the purpose of it as an operating agreement

25   and a year-to-year, how the tax authorities are

```
 1    going to deal with your income statements every
 2    year, whether you are off-side or not, all of these
 3    provisions in some respects can be said, on one
 4    interpretation, none of this matters after the
 5    companies go under and we are now dealing with an
 6    insolvency.
 7               MR. GOTTLIEB:  Right.
 8               THE CANADIAN COURT:  And that is one
 9    way of looking at it.
10               That is really what Dr. Eden, the US
11    expert, said, it is all about transfer pricing,
12    that is from the beginning to the end.
13               MR. GOTTLIEB:  Right.
14               THE CANADIAN COURT:  The other -- your
15    protagonists on each side of you are saying no, you
16    have got to look at the agreement.  It does more
17    than just transfer pricing.  It deals more with how
18    you split up the baby every year.  It deals with
19    sort of legal rights, whatever those legal rights
20    are, and there is huge variance on what they say
21    those legal rights are.
22               So I'm really throwing out the same
23    thing Judge Gross was throwing out:  What are we
24    looking at this agreement for, and I'm certainly
25    interested in all the argument, because that is not
```

1    something I have landed on yet.

2                MR. GOTTLIEB:  Well, I mean, our

3    argument runs, if I can put it this way, right up

4    the middle.

5                THE CANADIAN COURT:  I understand.

6                MR. GOTTLIEB:  As you know from our

7    brief, we say that ownership of IP comes from

8    inventorship and we have taken you through and my

9    friend Mr. Maguire took you through the parts why

10   we say that wasn't impacted.

11               So from our point of view the operating

12   agreement that was the MRDA to deal with the

13   day-to-day operations and the profits and losses on

14   an ongoing basis doesn't change that at all.  It

15   has no impact on the rights of the parties with

16   respect to their ownership interest.

17               So to answer the question this way,

18   Judge Gross, if there was no MRDA at all, if the

19   MRDA got wiped out, if the parties agreed that the

20   MRDA was not in existence as at the date of filing,

21   that that was a disclaimed or non-existent

22   agreement, wouldn't have an impact, we would have

23   to go back exactly where we say we go back in any

24   event, which is the rights of the parties in the IP

25   because all of the parties agree that we have to

1   | get to who owned what.
2   |           And we say who owned what comes from
3   | ownership and that the MRDA -- ownership from
4   | invention and the MRDA doesn't impact that.
5   |           And, Justice Newbould, just to deal
6   | with one point you raised.  The one thing I wanted
7   | to let you know, and I don't have the time to bring
8   | you to it, but in the transfer pricing guidelines,
9   | although they do deal with the operations, there is
10  | no doubt, and I would ask you to make note of this,
11  | if you don't mind, at page 52 and 53 of the very
12  | same guidelines, this is why it is so important,
13  | they actually deal with the sale of assets and it
14  | is the exact same principle, which is you can't
15  | just take the assets from the other multinational
16  | parties in the other jurisdictions, sell them and
17  | keep the money.
18  |           So I don't have time to go through it,
19  | but that is what it deals with.
20  |           THE CANADIAN COURT:  Again, that is
21  | dealing with annual tax issues, it is presumably
22  | not dealing with what we are dealing with here.
23  |           MR. GOTTLIEB:  Okay, again, I'm going
24  | to put it slightly differently, which is this.  The
25  | MRDA was negotiated in this exact, I'm going to use

1   this terminology which isn't precise but you'll get
2   it, regulated environment.
3                THE CANADIAN COURT:  Just while I make
4   a note here, what is the exhibit number of the
5   guidelines on transfer pricing?
6                MR. GOTTLIEB:  50471.
7                Now I'm going to jump, if I might, to
8   ownership of invention, and I have a few tasks
9   ahead of me that I am going to have to go through
10  rather quickly just because of the time.
11               And you asked this question of
12  Mr. Maguire.  There is no question that as a matter
13  of law, ownership of IP, of any IP comes through
14  invention.
15               That is the law and nobody debates
16  that.  And then the question becomes, does the
17  inventor as a matter of law or contract transfer to
18  his or her employer so that the employer becomes
19  the beneficial owner?  And the answer is yes.
20               And the reason I would have thought is
21  rather obvious, but when NNL, NNUK and the other
22  groups pay for their employees to invent, it makes
23  sense that the inventions go upstream to the parent
24  because they are paying for it.  They are paying
25  for the labour, they are paying for the equipment,

1    they are paying for the cost of the material.   So
2    as a matter of law in Ontario, there is no debate
3    about that at all.

4                I'm going to come now, Justice
5    Newbould, to your question, but I'm going to avoid
6    it for one second by saying there are also
7    contracts, and they are all in the record and I'll
8    give you the document numbers where the employees
9    of the RPEs sign as part of their employment
10   agreement, they agree that anything they create,
11   anything they invent is their employer's.  And that
12   is the case with NNI and that is important here
13   because of the points the Canadians are raising,
14   that is the case with NNL, that is the case with
15   NNUK, that is what the documents show.

16               So as a matter of contract, once
17   someone is sitting at their desk and has a eureka,
18   has an invention, that becomes the property of
19   their employer automatically.  And the reason
20   obviously why that is so important is because the
21   Canadian Debtors take the position that when the
22   employees sign the patent assignments so as to
23   allow NNL to register a patent, because as part of
24   the patent process NNL has to have the
25   inventor/employee sign it, so when it is assigned

```
 1    to NNL, the Canadian Debtors say, well, that is
 2    where NNL got all of its right, title and interest
 3    in the invention, in the patent.
 4               But the problem with that is the
 5    employee didn't have it because the employee as a
 6    matter of his or her employment had already granted
 7    it to his or her employer, and the contracts make
 8    that clear.
 9               THE CANADIAN COURT:  Okay, you have
10    said that.  Where do I find them?
11               MR. GOTTLIEB:  I'll give you the
12    document numbers and I can bring a couple of them
13    up.
14               So one is at, and this is TR48819, and
15    this is an employment agreement for an NNI
16    employee, that had to be blacked out because of the
17    confidentiality issues.
18               And the company, you can't see it, but
19    the company here is not shown but the employee is
20    an NNI employee, it is a document produced by NNI,
21    and I can tell you, without telling too many
22    secrets --
23               THE CANADIAN COURT:  That's all right,
24    we'll take your word for it, and if you are wrong,
25    somebody is going to tell us.
```

1           MR. GOTTLIEB:  And there is a SIN

2    number on it, so that is a SIN number, so we know

3    that.

4           So as you can see, I further

5    acknowledge the company has notified me -- oh, I

6    apologize, right at the top there:

7                    "I acknowledge that by signing

8                the Employment Agreement to which

9                this Acknowledgment of Notification

10               is attached and specifically that

11               under the terms of paragraph 3 of

12               that agreement, I have agreed that

13               inventions, discoveries and

14               improvements developed by me during

15               my employment shall be the sole

16               property of Company and are thereby

17               assigned to Company".

18           So that is a term of the employment

19    agreement.

20           For your notes, there is one for NNUK

21    at TR21500.  And do we have an NNL number?  And

22    Your Honour, I'm happy to take you to the

23    paragraphs here if you want on the screen in front

24    of you, this is the NNUK one.

25           THE CANADIAN COURT:  I'll take your

1   word for it.  It says the same thing.

2              MR. GOTTLIEB:  Well, it says something

3   different, but paragraph 18 we can go to on the

4   document.  We can blow that up.  You know it is

5   from the UK when it starts with "whilst" and I am

6   sure I didn't pronounce that well.

7              THE CANADIAN COURT:  Well, it says

8   essentially the same thing.

9              MR. GOTTLIEB:  Yeah, it is the same

10  point.  And the NNL one is the same.  I'll just

11  give you the number, it is TR45736.  Yes, TR45736.

12             THE CANADIAN COURT:  Now, is the

13  evidence that all the employees signed this form?

14  You haven't got all the employees obviously, but is

15  there any disagreement about that, that all the

16  employees signed this?

17             MR. GOTTLIEB:  If there is any

18  disagreement, I don't know about it.  I think we

19  can take it as a given that when employees were

20  employed, they signed.  The database is filled with

21  employee agreements.  Mercifully, we didn't deal

22  with them all.

23             So the fact of the law of Ontario is

24  very interesting, but it is unnecessary because the

25  contracts did exactly this.

```
 1              But I want to take you -- I apologize,
 2    our brief sets out why we say Ontario law applies
 3    regardless.  We didn't prove any other law, so in
 4    the Ontario Court, Ontario law is assumed to be the
 5    same as the other jurisdictions.  Again, that is
 6    not a controversial point.
 7              And in our brief we set out why we say
 8    Ontario law applies as a matter of conflict of laws
 9    in connection with the US and we set out those
10    cases and explain why that Ontario law is the
11    proper law of the question to be answered with
12    respect to ownership.
13              And again, that is set out in the
14    brief.
15              So I want to take you quickly, if I
16    could, to a case --
17              THE CANADIAN COURT:  Actually, looking
18    at the US, at least the Monitor's reply or rebuttal
19    brief, it is at page 93, footnote 294, it says:
20                   "Under US law, absent an
21                   enforceable agreement to the
22                   contrary, it is the inventor (not
23                   the employer) who is the owner
24                   [...]"
25              And you would say well, there is an
```

 1   enforceable agreement.

 2              MR. GOTTLIEB:   There is an enforceable

 3   agreement, and you will see in our brief that we

 4   say Ontario law applies anyhow, so it is belt and

 5   suspenders on that point.

 6              And I want to take you to a case, a

 7   recent decision of our Court, 2000, of the

 8   commercial list called C.I. Covington Fund v.

 9   White, and it is Volume 1, tab 6 of our brief of

10   authorities.

11              Now, we'll bring it up on the screen,

12   but this is a 2000 decision of the commercial list

13   Court, affirmed by the Divisional Court, and what

14   this dealt with was a gentleman named White was the

15   president and CEO of the company Delta.  He was

16   also the inventor and invented valuable patents

17   used by Delta in the business.  And Covington, C.I.

18   Covington, a financial institution, had loaned

19   money to Delta and taken a security agreement and

20   Delta ultimately went insolvent, and the issue was

21   whether White or Delta owned the patent.  If Delta

22   owned it, Covington could seize it; if White owned

23   it, they couldn't.

24              White was the registered patent holder

25   and White had entered into a licence agreement with

1    Delta allowing Delta all rights to use the patent.

2                So we have a situation where there is a

3    licence and the question -- and it is very similar

4    here, obviously.  The patents here are registered

5    to NNL and the patents were licensed by NNL to EMEA

6    and US, same as here.

7                Nonetheless, the Court here held that

8    on the evidence Delta was the beneficial owner of

9    the patents and, therefore, they could be seized by

10   Covington when enforcing.

11               And I want to go, please, to paragraph

12   38 of this decision on page 11.  Now, that's the

13   provision, just if we go to the very last sentence

14   in particular:

15                     "[...] Courts will find that

16                     the employer is the owner of an

17                     invention where an employee is hired

18                     precisely to design or develop a

19                     product".

20               But the reason I'm going to this case

21   is actually a different reason because that is,

22   again, in my respectful submission, trite, and

23   we'll see this when I come and finish up on the

24   evidence point.

25               The Court examined in coming to this

1    conclusion all facts in order to answer the

2    question of who owns the patent.  Just like here,

3    the question was, who owns the patent?

4              And the Court didn't just look at the

5    licence agreement that set out White was the owner

6    and that White was the licensor.  On the contrary,

7    it went much further than that and looked at all of

8    the evidence, including the patent applications

9    that were put in, the investment agreements, and

10   representations made by the company in its dealings

11   with Covington.  It looked at those representations

12   that were made after the licence agreement was

13   entered into.

14             They also looked at statements in the

15   audited financial statements about who owned the

16   IP, again, both before and after the licence

17   agreement.

18             And based on that and the testimony of

19   executives as to their understanding of the issue

20   of ownership, not of the issue of interpretation of

21   the agreement, the issue of ownership, the Court

22   concluded that when all of the relevant evidence

23   was considered, including the licence agreement, of

24   course, but when all of the relevant evidence was

25   considered, it was Delta that was the beneficial

1     owner and that White was just the legal title

2     holder and therefore it could be seized.

3              Now, that is obviously critical here

4     because, in our respectful submission, when it

5     comes to what evidence is admissible and not

6     admissible, that is exactly the type of evidence

7     that the Court should look at, all the evidence

8     that will assist in the determination of the

9     question before it, who owned.  And that is what

10    the Court did there, and the Court in fact found

11    the opposite of what the agreement said in that

12    case, the opposite of what the agreement said.

13             So if we just flip to paragraph 39,

14    right below, of that paragraph, so it just refers

15    to this is a case where at common law the employer

16    here, Delta, could assert that it was the

17    beneficial owner.  No one said any of this evidence

18    was parol evidence or inadmissible, it was direct

19    evidence regarding the issue of ownership.

20             In our brief we refer to several other

21    cases with respect to the ownership/inventorship

22    point, so I won't go to that.

23             The point obviously is, is that the

24    RPEs each owned the IP as a matter of law and as a

25    matter of contract and that was not taken away from

```
 1   them by the MRDA.
 2                   And when we come to the question of who
 3   owned what, in our respectful submission it really
 4   doesn't matter how the Courts look at what the RPEs
 5   owned in this sense, and that was a confusing
 6   statement, but in this sense. As you know from our
 7   submissions, from our briefs, we say that the
 8   evidence is unequivocal that the IP created was an
 9   indivisible pool and that all the RPEs owned a
10   beneficial interest in that indivisible pool.
11                   And that how do you value that
12   interest? Well, you value it exactly the way
13   Nortel valued it, which is to look at R&D
14   contributions, so you have to look at R&D
15   contribution.
16                   That is the proxy, because it is
17   impossible to know exactly who did what, so you
18   need a proxy, and the proxy that Nortel used was
19   R&D contribution. So we say they all owned a piece
20   of the entire pool, but the Canadians have, put it
21   this way, taken a shot at that and said well, you
22   couldn't have owned a piece of the entire pool, and
23   we say, well, based on the evidence, that is
24   accurate. Based on the indivisible nature. But if
25   you want to take the position that we just own what
```

1   our own employees are referred to on the patents

2   of, that is fine, so we have a beneficial interest

3   in some part of that pool but you still have to

4   value it exactly the same way.

5              How do you value it?  Well, you value

6   it exactly the way Nortel historically valued it

7   based on R&D contribution.  You look at the R&D

8   contribution over the appropriate period of time

9   for the assets sold and that is how you come to the

10  question that you have before you.

11             THE CANADIAN COURT:  I suppose you

12  would say, in answer to the question Judge Gross

13  asked one day, what if you spend a billion dollars

14  and you drill a hole and there is nothing there and

15  you still get your contribution.  I suppose you

16  would say to that, well, what you lose in the

17  corners you gain in the straights and vice versa.

18             MR. GOTTLIEB:  Yes.  So, for example,

19  what we know is that the CTO office, the Chief

20  Technology Office assigned the various tasks to

21  this group, and it was done for some purpose, some

22  people to work on very innovative material that may

23  give you nothing for a long time.  Some may work on

24  a correction or, as we say, a ring tone, something

25  that fixed something that really wasn't that

1    tremendously valuable.

2            You don't penalize parties or benefit

3    parties by what they were assigned to do, and that

4    wasn't the way at Nortel, which is why when you

5    looked at the proxy, the proxy was based on the

6    total R&D spend, and that, in our respectful

7    submission, as Mr. Maguire will deal with it, is

8    the way to look at it, so that you don't penalize,

9    one dollar is no better than another dollar,

10   notwithstanding what some might say in this

11   courtroom.  That wasn't the way Nortel operated.

12           And before I get a little bit of a dart

13   in the back of my head, I'm going to quickly go to

14   the issue and close out on the evidence.

15           There has been a huge fuss made about

16   the evidence, and in our respectful submission,

17   there is no merit to it.  The evidence that we have

18   put in, that Mr. Maguire will take you to after the

19   break -- pardon me, after I sit down, is all

20   admissible and it is admissible under three

21   different categories.

22           One is it is admissible as direct

23   evidence --

24           THE CANADIAN COURT:  Sorry, what

25   evidence are you talking about?

1           MR. GOTTLIEB:   The evidence that starts

2    with, for example, the APA kickoff meeting in 2002

3    where it was discussed at the meeting and it was

4    discussed before the meeting what answer would be

5    given to the taxation authorities when they asked

6    how are you going to divvy up the proceeds of a

7    future sale of IP.   They give an answer there.

8                  There is a whole bunch of

9    representations made to the taxation authorities

10   about ownership.   It is all of the statements about

11   ownership and all of the evidence about the way the

12   parties dealt with it.   So that is the evidence I'm

13   talking about, both before and after.   So before

14   and after the MRDA.

15                 And in our respectful submission, it is

16   all admissible as direct evidence and I am going to

17   take you to one case for that, a tremendous amount

18   is admissible as factual matrix evidence because

19   who owned what they brought into the MRDA is the

20   most important factual matrix.   Like all

21   agreements, the most important thing, the most

22   important part of the factual matrix is what are

23   the parties' rights before they come into the

24   agreement, what are they bringing to the agreement.

25                 So the factual matrix includes all of

1   the evidence where there is a discussion about what

2   the rights of the parties are.

3                  THE CANADIAN COURT:  You say you have

4   to go -- you don't have to go back to 1992, because

5   the MRDA sort of continues with rights under the

6   1992 agreement, doesn't it?

7                  MR. GOTTLIEB:  Right, so --

8                  THE CANADIAN COURT:  So what time do

9   you look at to say it is part of the factual

10  matrix?

11                 MR. GOTTLIEB:  Well, obviously you can

12  go back as far as there is significant evidence as

13  to the ownership rights of the parties as they

14  existed at the relevant time period.

15                 So what we know is and what we have put

16  a tremendous amount of evidence in, which is all

17  consistent that all of the RPEs, all of the R&D

18  parties owned IP, is around the relevant period of

19  time starting after the RPSM methodology was put in

20  place.  That is where the evidence really begins

21  and goes to, in fact, post-filing, because that

22  deals with ownership and how the parties dealt with

23  what the rights of the parties were.

24                 So we say that is all admissible there.

25  We say it is all admissible under factual matrix

1  and that the Canadians, in our respectful

2  submission, are reading down Sattva and factual

3  matrix in a manner that it just doesn't lend itself

4  to.

5           THE CANADIAN COURT:  Can I ask you a

6  question.  Do you say that post-agreement conduct

7  is admissible?

8           MR. GOTTLIEB:  Yes.

9           THE CANADIAN COURT:  If there is no

10 ambiguity?

11          MR. GOTTLIEB:  Yes.

12          THE CANADIAN COURT:  Is that what the

13 law says?

14          MR. GOTTLIEB:  Yes.

15          THE CANADIAN COURT:  I thought the law

16 said if there is an ambiguity, you can look at

17 joint post-agreement conduct.

18          MR. GOTTLIEB:  So I'm going to take you

19 to a case right now which I say deals with that

20 square on, because I referred, you'll recall, to

21 direct evidence of ownership.

22          So I'm going to take you back to, Your

23 Honour, I just referred to the Covington case, so

24 please recall that.  The Covington case was a case

25 where the Court looked at a significant amount of

1   evidence post-agreement, notwithstanding the terms

2   of the agreement, to answer the question before the

3   Court, which is who owns.

4              The question before the Court isn't

5   what is the interpretation of the MRDA.  The

6   question before this Court is who owns the IP.

7   That is the question before the Court.

8              And I just want to go back to your

9   decision, Your Honour, in the Sistem case, and the

10  Sistem case is at tab - and then I will sit down -

11  the Sistem case is at tab 23 of our brief -- in our

12  reply brief of authorities, I apologize, and it is

13  a 2012 decision of yours, Justice Newbould, and you

14  know the history.

15             Judge Gross I'm going to take a guess

16  you haven't read this decision, but there was an

17  enforcement of a foreign award and there was an

18  attempt to enforce the award against shares held by

19  a company, not the Republic, and the question was,

20  was the company holding the shares on behalf of the

21  Republic.

22             That was really the issue before the

23  Court, and there was in fact an agreement in place

24  that dealt with some of the shares and referred to

25  the company being the beneficial owner of those

```
 1    shares.
 2                 So the question before me now, the
 3    question before the Court, and the question before
 4    the Court on the Sistem case was, what can you look
 5    at?
 6                 And I would like to turn, if we could,
 7    please, to page 5 of that decision.  And we go down
 8    to paragraph 23.  And again, the question before
 9    the Court here, Judge Gross, was who owns the
10    shares.  I know they are in the name of the company
11    that I can't pronounce, I know it says the company
12    beneficially owns those shares, but are they really
13    held for the Republic.
14                 And so paragraph 23 says that:
15                      "Kyrgyzaltyn relies on an
16                      agreement [...]"
17                 And if you see that if you go about
18    five or six lines down, it says:
19                      "The agreement provided
20                      expressly in section 2.2 that the
21                      treasury shares would be issued to
22                      [them] so that [they] will
23                      beneficially own such shares and be
24                      entitled to all the benefits arising
25                      from such shares.  [The company]
```

```
 1                    asserts that that is the end of the
 2                    matter and that it is [them] and not
 3                    the Republic that beneficially owns
 4                    the shares [...]"
 5                    If you flip over the page, here is
 6      where the Court goes on to analyze the evidence,
 7      and it is not just the agreement, because it
 8      shouldn't just be the agreement, to answer the
 9      question of who owns what.  So we start with the
10      preamble and paragraph 26 says:
11                        "This is a clear statement that
12                    Kyrgyzaltyn holds its shares of
13                    Centerra on behalf of the Republic."
14                    So that is the recital that is looked
15      at for the clear intention, and it goes on further.
16                    But if we go down now to paragraph 27,
17      it says:
18                        "There are other indications
19                    that the shares of Centerra held by
20                    Kyrgyzaltyn are held for the
21                    Republic."
22                    And then it refers to a press release
23      that is made, and this is obviously made after the
24      agreement, and then it refers to a newswire
25      referring to ownership, and then paragraph 28 says
```

neesons  WF                                    www.neesonsreporting.com
                                                        www.wilfet.com

```
 1   that there are statements from Centerra, not a

 2   party to the agreement, that it is holding the

 3   shares for the Republic.

 4               And then there is an MD&A, a management

 5   discussion and analysis that refers to ownership,

 6   and then there is a reference in another agreement.

 7               So I'll stop there --

 8               THE CANADIAN COURT:  I think it is fair

 9   to say, is it not, there was never any argument as

10   to whether any of this stuff could be looked at in

11   that case?

12               MR. GOTTLIEB:  I obviously can't

13   answer --

14               THE CANADIAN COURT:  There was no

15   discussion in the reasons.

16               MR. GOTTLIEB:  Yes, there was no

17   discussion in the reasons, but in our view, in the

18   Covington case, the question before the Court is

19   who owns what, and therefore you have to look at

20   all the evidence as to who owns what.

21               And I'll just again say I haven't said

22   Alcatel yet, so I'm going to say Alcatel before I

23   sit down.  But when you look at what the evidence

24   is, it would make, in my respectful submission, no

25   sense whatsoever if there was some argument that
```

1    the Court couldn't look at Alcatel to determine

2    what the rights of the parties were because that

3    was a central way, a central way to look at what

4    the parties believed they owned and what they did

5    in fact own.

6              THE CANADIAN COURT:  That is why I

7    asked you, unless you can point me to some new

8    case, it is my understanding that the law in

9    Ontario is you don't look at post-agreement conduct

10   unless there is some ambiguity and that the joint

11   conduct of the parties can help resolve that.

12             MR. GOTTLIEB:  You don't look at

13   post-agreement conduct if you are trying to

14   interpret or vary the contract unless there is an

15   ambiguity.  But the question here isn't what does

16   that contract say.  The question here is what is

17   owned by the parties.

18             THE CANADIAN COURT:  But you are saying

19   that because of your position that it is owned not

20   by the contract but because of the law that the --

21             MR. GOTTLIEB:  Well, that is correct

22   and I will add on to that, the parties say that the

23   MRDA doesn't govern the sale of the proceeds.

24             So I apologize for taking so long,

25   subject to questions.

```
1                  THE CANADIAN COURT:  That is all right,
2    we are going to need to take a few minutes break.
3    Is this a convenient time, is this a convenient
4    time, Judge Gross?
5                  THE US COURT:  Yes, it is.
6                  THE CANADIAN COURT:  We'll take 15
7    minutes.
8                  -- RECESSED AT 3:55 P.M.
9                  -- RESUMED AT 4:17 P.M.
10                 THE US COURT:  Please be seated,
11   everyone.  Thank you.
12                 THE CANADIAN COURT:  Mr. Gottlieb.
13                 THE US COURT:  Mr. Maguire, we are
14   ready for you.
15                 MR. MAGUIRE:  Good afternoon.  Good
16   afternoon, Judges.
17                 THE CANADIAN COURT:  Good afternoon,
18   Mr. Maguire.
19                 MR. MAGUIRE:  Yes, Justice Newbould.  I
20   would like to follow up on the discussion we were
21   just having about the various ways in which
22   extrinsic evidence comes before the Courts.
23                 THE US COURT:  Yes.
24                 MR. MAGUIRE:  Ownership, ambiguity,
25   matrix.  Just one small point on that.
```

```
 1              Justice Newbould, I believe you
 2   referred once or twice to the general rule that
 3   post-contractual conduct is not admissible.  And
 4   there is a rub here, and that is that in this case
 5   the parties kept amending their contract over the
 6   course of our time line.  So every time they
 7   engaged in post-contractual conduct, that was post
 8   the original contractual conduct, but it was pre
 9   the amendment.
10              So you say post-contractual.  I say
11   pre-contractual.  And so we can dance through the
12   entire time line showing that our extrinsic
13   evidence is, in fact, pre-contractual, where the
14   parties amended and reenacted, and specifically my
15   favorite language, which is that in Schedule A,
16   recognizing the participants' ownership of NN
17   technology.
18              So that brings me to the extrinsic
19   evidence itself, the evidence that my friend
20   Mr. Zarnett referred to as the tsunami or the tidal
21   wave.  And it is a testament to his wisdom that he
22   tried to exclude this from the trial.  King Kanute
23   tried to hold back the tide, but even he didn't
24   take on a tsunami.
25              We have, in the interests of saving
```

neesons  WF

1    time, put this forward in a graphic form above the

2    time line, so I will try to roll through that

3    reasonably quickly.

4                My colleague Mr. Gottlieb already

5    described the APA kickoff Q&A, if we start at the

6    time line back in 2002.  And that's what Nortel

7    Networks Limited had prepared to tell the tax

8    authorities if the question were asked what are you

9    going to do in a sale of proceeds.  And, of course,

10   the answer was to allocate it according to the

11   ownership of the participants.

12               Then if we move forward in the time

13   line, we have various representations to tax

14   authorities.  In 2003 we have Nortel's APA

15   responses which say that the residual entities, it

16   treats them as owners of intangible property; very

17   explicit.

18               If we stick with tax authorities and

19   just book-end the time line by going to 2009, we

20   see the report that NNL prepared for the tax

21   authorities, was required to in case of inspection.

22   And it reports that NNL -- this is 2010 -- NNL and

23   other integrated entities are the primary owners of

24   intangibles.  Again, it doesn't leave anything to

25   the imagination.

```
 1             If we go back, leave aside the
 2   representations to the tax authorities, take on
 3   some other themes throughout the time line, we see
 4   in 2003 the parties had occasion to examine an IP
 5   migration analysis.  What was at issue there was
 6   Nortel was considering a transfer of IP from the UK
 7   company and the French company to NNL.  And in
 8   doing that analysis it measured the respective
 9   ownership of the French and the UK company based on
10   their contribution to R&D.
11             If we go to the following year, we have
12   the Foundry settlement, where Nortel settled its
13   patent litigation and shared the proceeds, the
14   royalty income, among the licensed participants
15   according to their contributions.
16             If we move forward to 2006, we have the
17   impairment analysis for the French company.  The
18   company was struggling.  The issue was should there
19   be a write-off, a write-down of assets on its
20   balance sheet?  Was it insolvent?  And in doing
21   that, the conclusion that it did not need to write
22   down, that NNL did not need to write down the value
23   of the French company on its financial statements
24   was because NNSA, the French company, owns a
25   significant IP asset and, with the other Nortel R&D
```

1    participants across the world, owns a share in the

2    IP that has been generated over years of R&D.

3                The evidence continues, only gets more

4    compelling as we move to 2007.  We go to the

5    Alcatel sale.  And here again we have the sale, the

6    only major sale of IP by Nortel pre-insolvency.

7    NNL was not treated as the sole owner.  The

8    proceeds were allocated based on contribution, all

9    provided to the auditors.  NNL, if its theory here

10   is correct, was making a gift of millions of

11   dollars of the proceeds of IP of which it was the

12   sole owner.  Well, that's not how the parties saw

13   it at the time.  That's not how they represented it

14   to the auditors.  That's simply not what happened.

15   The reality above the line reflects the reality

16   below the line, which is that there was a shared

17   ownership of Nortel technology.

18                THE CANADIAN COURT:  Mr. Maguire, do we

19   put in above the line the statements made in the

20   briefs filed with the Court on the approval of IFSA

21   and I think another one that NNL owned the IP?

22                MR. MAGUIRE:  I think it is entirely

23   appropriate to say that at all relevant times the

24   parties completely agreed that NNL was the owner of

25   the IP.  I think that is absolutely a true

1    statement.  I think it is completely consistent

2    with all aspects of dealing with outside third

3    parties, NNL was the legal owner.  It had legal

4    title.  It was the one that registered the patents.

5              So I see no distinction there, quite

6    frankly, between that and what we are saying here,

7    which is among the family there was a shared

8    ownership, a beneficial interest which was

9    acknowledged, it was contractually recognized, and

10   it was repeatedly confirmed both contractually and

11   extra-contractually.

12             We have on the same year as the Alcatel

13   sale, 2007, we have Project Swift, and there we

14   have a transfer of NNL's subsidiaries to the UK.

15   And in connection with that, Nortel recognized that

16   whilst legal ownership -- that's the ownership that

17   we talk about, legal ownership or legal title, if

18   you want -- of the NN technology is with NNL,

19   beneficial ownership is shared across various group

20   companies.  Again, the same fundamental distinction

21   that we have had from the beginning of this case.

22             There is a pattern here, and the

23   pattern is one of shared ownership.  And we

24   highlight that in yellow, and it runs right across

25   the time line.

1           All of this evidence is also consistent
2    with contribution. The parties owned the
3    technology that they created, that they invented,
4    commensurate with their contributions. And that is
5    also a consistent throughout the time line, and we
6    mark it in green.

7           And it is interesting to note that
8    nowhere in all this record did NNL ever get or even
9    claim sole ownership rights that it seeks here.
10   Never happened. And that's why you won't get this
11   chart from the Canadian interests. If they were to
12   give you this chart, it would be a blank sheet.
13   How could it be otherwise when we are discussing a
14   position that wasn't landed on until after the
15   failure of the third mediation?

16          As our chart shows, and as all that
17   evidence that came in at trial proved, on every
18   occasion that the Nortel parties allocated or even
19   talked about allocating IP, they respected their
20   shared ownership, and they did so in accordance
21   with their respective contributions to R&D.

22          I would like now to turn to some issues
23   concerning the experts and IP and customers and
24   goodwill. And for reference, I would invite the
25   Courts to turn in our binder to the back of the

1   binder.   We have two little charts.   The first of

2   those is valuation and allocation of IP.   And I

3   would like to start with that, if I may.

4                   The Court heard in the course of trial

5   from the expert we presented, Ocean Tomo's Jim

6   Malackowski.   He was a -- he is a supremely

7   qualified expert, I might say, and his

8   presentation, I think, was in part so compelling

9   because of his mastery of the objective data and

10   the fact that he rooted his opinions on the

11   contemporaneous analysis and information that was

12   available to Nortel.   We have all that, and he used

13   it.

14                   We have the Lazard analysis, and we

15   have the Global IP data.   And we have the actual

16   R&D contributions that the participants made by

17   year and by participant.   And Mr. Malackowski

18   mastered and used all of that objective data, all

19   of those facts.

20                   And we have here -- we reproduce a

21   chart -- I think it is almost iconic -- from the

22   trial, which shows where the real value of the IP

23   was.   And it takes the residual patent portfolio

24   and takes the priority dates and shows when those

25   patents were created.   And, of course, the pattern

1   is a fascinating one, because it gives you a sense
2   of the chronology here.  It shows in a bump the
3   golden years of creating value and technology at
4   Nortel.  And it is the late 1990s and it is the
5   early 2000s.  And then we have it tailing off as
6   the company goes into terminal decline.

7                 And also represented on this chart is
8   what we refer to as the Canadian look-back period,
9   the five-year look-back period from 2009 back.  And
10  all of this is helpful to show how discordant that
11  is compared with the actual facts on the ground.
12  We have a look-back period here that begins after
13  99 percent of all of the high-interest patents were
14  created.  We have no reason to use a sample of five
15  years, and we have every reason not to use the
16  wrong sample that we know will give us the wrong
17  answer.

18                 We have 100 percent of the data.  We
19  know all of the patents.  We know when they were
20  created.  We know the R&D spending that each
21  participant put into each of those years.  Why
22  would we exclude 99 percent of the evidence?  Why
23  would we exclude any of the evidence?  Why don't we
24  use all of the evidence?  Mustn't we use all of the
25  evidence?  And that's what Mr. Malackowski did.

```
 1                  The particular problems of using a
 2   five-year period that goes from 2005 to 2009 is
 3   represented here, because as the company went into
 4   terminal decline, the relative expenditures became
 5   skewed, and that leads the Courts to the wrong
 6   answer if they use the wrong data.
 7                  2009 the company is insolvent.  It is
 8   post-insolvency.  Nortel was winding down its
 9   business.  There was no high-interest patent that
10   was created in 2009 or 2008.  The last
11   high-interest patents were registered in 2007, and
12   that's from spending in 2006.
13                  If we look under the five-year
14   look-back column at the bottom of our page here,
15   you will see the number of high-interest patents
16   sold within that period, that five years of 2005 to
17   2009, is only 20 out of a population of 2600; less
18   than 1 percent.  And if we go to the table next to
19   it, we see what happens when we use a five-year
20   period that includes 2009 and excludes 2004.  2009,
21   zero high-interest patents; 2004, 22.
22                  And as we go back on the time line, you
23   see 2003 we have 77 high-interest patents; 2002,
24   133.  The further we go back, the more
25   representative we become with respect to the golden
```

```
 1   age of when all the high-interest patents were
 2   created.
 3               And so that's the problem with using a
 4   sample and a particular problem of using the wrong
 5   sample, which will only give us the wrong
 6   conclusion.
 7               THE CANADIAN COURT:  Mr. Maguire,
 8   before you leave that document, under the five-year
 9   look-back, your last bullet says the tax
10   authorities could not accept five years.  We don't
11   have that evidence, do we, what the tax authorities
12   did or didn't accept?
13               MR. MAGUIRE:  No.  I think we know that
14   the tax authorities didn't accept anything.  We
15   know for sure that the Internal Revenue Service
16   recharacterized some $2 billion of R&D activity --
17               THE CANADIAN COURT:  Right.
18               MR. MAGUIRE:  -- as dividends.  So I
19   think we know for sure they didn't accept anything.
20   And frankly, with respect to the proceeding we are
21   talking about here, it is hard to imagine any
22   circumstances in which tax authorities could
23   possibly accept a conclusion based on the wrong
24   data.  How would one ever justify to anyone a
25   conclusion that is based on an unrepresentative
```

```
1    sample?
2                    THE CANADIAN COURT:  No.  I understand
3    all that.  My understanding was that nobody was
4    giving -- we don't know the reason why the tax
5    authorities came up with 2 billion.
6                    MR. MAGUIRE:  That's exactly right,
7    Your Honor.
8                    THE CANADIAN COURT:  Right.
9                    MR. MAGUIRE:  Unless there are any
10   further questions on the IP point, I will move to
11   our customers, and that is on our next
12   demonstrative, customer-related assets and
13   goodwill.  This is a $2 billion asset.  It
14   represents about 29 percent of the total sales
15   proceeds that are before the Courts.  We have in
16   all $7.3 billion.  Of that, about 2 billion is
17   customer-related assets and goodwill.
18                    Now, among all the experts, everyone
19   recognizes that customer-related assets have value.
20   And the facts showed that the purchasers, Nortel
21   itself, everybody at the time has always recognized
22   even within a high-tech company like Nortel that
23   customer-related assets have value.  The CCC's
24   expert, Mr. Britven, recognized that.  The only
25   expert who failed to separately allocate value for
```

1   customer-related assets was the Monitor's expert,

2   Mr. Green, and he was criticized for that by his

3   colleague for the CCC, Mr. Britven.

4            The main criticism we have heard with

5   respect to these assets is, well, you have heard

6   how IP drove the value for Nortel.  So if IP was so

7   important, and we have heard that it was, how can

8   you have most of the value of the business sales

9   being for assets other than IP?  And the answer to

10  that is Mr. John Veschi, because as you may recall,

11  Mr. Veschi undertook a major project in which he

12  stripped as much value, IP value, out of the

13  business sales to put in the residual patent

14  portfolio.  And he was so successful at that that

15  the Rockstar sale was $4-1/2 billion.  He left as

16  little IP in the business sales as he could get

17  away with.

18            Now, if we undo his good work -- not

19  that we give the 4-1/2 billion back to anybody.

20  But if we undo his work and put all of the IP from

21  the business sales together with Rockstar, then we

22  get the pie charts at the bottom of our graph.  And

23  we have --

24            THE CANADIAN COURT:  It is hard to put

25  a quantification on what Veschi did.  I mean, there

1   was a definition -- I forgot -- what's reasonably
2   necessary or something for the line of business
3   that was sold?  Whatever the definition was.  And
4   obviously, he would have fought to make it as tight
5   as possible, and the other people would want to
6   make it broad as possible.  But they ended up with
7   some definition of what they would keep in the
8   lines of business sold.
9                  But it is hard -- the fact that he did
10  that, it is hard for us to quantify what that comes
11  to, whether it is 29 percent or 10 percent or
12  45 percent.  It is hard to quantify that evidence,
13  isn't it?
14                  MR. MAGUIRE:  I think that's very fair,
15  and I would completely agree with that.  And my
16  only point really here is that when people come in
17  and say, oh, most of the value in the business
18  sales had to be IP, that's simply not right.  And
19  Mr. Britven himself, the CCC's own expert, finds
20  that that's not the case.  Mr. Britven in his
21  report finds that most of the value in the business
22  sales was for customers and goodwill.  That's
23  54 percent.  He says there is only 40 percent of
24  the business sales was IP.
25                  So yes, you have to -- this obviously

```
 1   is an expert issue.  Mr. Malackowski followed his
 2   approach.  Mr. Britven followed his approach.  All
 3   I am saying is, when we hear the criticism -- and
 4   there has been a drumbeat of criticism that, oh,
 5   there must be something wrong with
 6   Mr. Malackowski's approach.  We can't tell you what
 7   it is, but there must be something wrong because
 8   you can't land on more than 50 percent of the value
 9   of the business sales being non-IP, because IP was
10   so important to Nortel.  That's simply not the
11   case, and Mr. Britven's own conclusion is
12   consistent at least with that 50-yard goal line.
13              Goodwill, everyone recognizes, it is an
14   asset class.  And Mr. Britven again recognizes
15   goodwill was transferred in the asset sales.
16              Mr. Green is the outlier again.  He
17   claimed that there was no goodwill that was
18   transferred to the business sales, but he made a
19   little exception for workforce.  He acknowledged
20   that workforce is part of goodwill.  So if there
21   was no goodwill, there should be no value for
22   workforce, but workforce he said was valuable to
23   Canada, and he kept a little exception for that.
24              Again, I think the compelling weight of
25   the evidence is that goodwill is clearly an asset
```

1   class.  Its value is the value that it generates

2   from historical sales, and therefore, it is

3   entirely appropriate for Mr. Huffard and Blackstone

4   to value it on a revenue basis.

5               And if we go all the way to the right

6   of our sheet, you see we have the LREs, the

7   limited-risk entities, and the AREs, the at-risk

8   entities.  There are 16 limited-risk entities, all

9   European, and they didn't sell IP.  They weren't

10  party to the MRDA.  All they sold was their

11  distribution networks, their customer rights and

12  their goodwill.

13              We have here Italy, Poland, Spain and

14  13 other European countries.  Blackstone reports

15  that the value of that is $135 million.  Mr. Green

16  gives precisely zero, zero for all of that.

17              If we go down to France and Germany,

18  the two at-risk entities, we have a French

19  subsidiary, Nortel France SAS, and we have Nortel

20  Germany.  Blackstone values the German market, the

21  goodwill, the customer-related assets of the Nortel

22  France SAS at $35 million.  And Mr. Malackowski has

23  $21 million for IP.  Mr. Green gives these entities

24  zero for everything.

25              It is of particular interest with

1    respect to the IP, because you will recall

2    Mr. Green went -- the whole basis of his theory was

3    legal ownership.  His view was that legal title was

4    everything.  Well, these are two companies who were

5    not party to the MRDA.  Their patents they owned

6    the legal title to and the beneficial ownership.

7    There was no one else who had any interest at all

8    in their patents.  Their patents were included in

9    the sale, and they are entitled to 100 percent of

10   the proceeds for their patents, and Mr. Green gives

11   them exactly nothing.

12            If the Courts have no questions for me

13   at this point, I will reserve our remaining time

14   for rebuttal.

15            THE US COURT:  Thank you.  Thank you

16   very much, Mr. Maguire.

17            Where does that leave us as far as

18   arguments are concerned and how we are doing on

19   time at this point?  I know we certainly have the

20   US interests to hear from.

21            THE CANADIAN COURT:  Mr. Barrack is

22   slowly walking up to the podium.

23            THE US COURT:  Oh, I am sorry.  I

24   wasn't looking.

25            MR. BARRACK:  No, don't look, Your

```
 1   Honour.   I would prefer to start in the morning.   I
 2   think we are doing fine for time.
 3                 THE CANADIAN COURT:  Are we?
 4                 MR. BROMLEY:  Your Honours.
 5                 THE US COURT:  Yes, Mr. Bromley, good
 6   to see you.
 7                 MR. BROMLEY:  You too.  Quite
 8   unexpectedly I rise to disagree with Mr. Barrack.
 9                 MR. BARRACK:  I said to Mr. Qureshi on
10   the break, I said why don't you get Bromley to do
11   it, and so he did.
12                 MR. BROMLEY:  If I can just go over the
13   timelines that we have, Your Honour, and where I
14   think we stand, there was an exchange of emails
15   last week amongst the parties and I believe Ms.
16   Cordo forwarded that timeline to the Courts.
17                 THE US COURT:  She did.
18                 MR. BROMLEY:  The time that the US
19   Interests have is 3 hours and 45 minutes.  That
20   would include any time for rebuttal.
21                 The UK pension parties have an hour and
22   15 minutes.
23                 So if we deferred until the morning,
24   that would be five hours of total time before we
25   get to rebuttals, which would, according to the way
```

1    that we paced ourselves today, I think put us in

2    the 4 o'clock range or so, perhaps later, by the

3    time we got to rebuttals.

4              We have, as far as we can tell, about

5    35 minutes reserved for the Canadian Debtors and

6    Monitor, 20 minutes or so reserved for the CCC,

7    EMEA seems to have 30 minutes reserved for

8    rebuttal, with Law Debenture having 15 minutes and

9    Bank of New York Mellon having 15 minutes.

10             So in other words, if we don't go any

11   further today, I think we have at least seven hours

12   tomorrow and that would probably mean we would be

13   finishing, if we start at 9:00 and kept to the pace

14   that we have been at, somewhere around 8 o'clock at

15   night.

16             So I think, at least from my

17   perspective, and I have consulted with at least the

18   US interests, that it would seem to make sense to

19   try to get some more in today so that tomorrow is

20   not overleveraged, so to speak.

21             THE US COURT:  And that would then

22   sensibly mean we would hear from the UK at this

23   point; is that right?

24             MR. BROMLEY:  The UK pension parties I

25   believe are next.

```
 1              THE US COURT:   The UK pension parties,
 2   and that would take us until roughly 6 o'clock or
 3   so.
 4              MR. BARRACK:   Well, Your Honours, in
 5   this jurisdiction the Court of Appeal sits a
 6   shorter day, because they listen to submissions,
 7   and in my view, even if we don't get done tomorrow
 8   and we do need another day, it has been a very long
 9   day and I'm loathe to start now.
10              But I will if you ask me to.
11              THE CANADIAN COURT:   That is what I
12   have been worrying about.  I don't know what your
13   schedule is like, Judge Gross, but if we went into
14   Wednesday, I think I probably could move stuff
15   away.  I have got sympathy for what both
16   Mr. Bromley is saying and what Mr. Barrack is
17   saying.
18              THE US COURT:   My only concern is we
19   are butting up against the Jewish holiday that
20   evening.
21              THE CANADIAN COURT:   Which evening?
22              THE US COURT:   Wednesday evening.   So
23   parties are travelling, and I don't know who would
24   be, you know, affected by that if we went Wednesday
25   or -- I'm available -- I'll make myself available
```

```
 1  Wednesday morning.
 2              THE CANADIAN COURT:  Mr. Barrack, what
 3  if we went to 5 o'clock today and stopped?
 4              MR. BARRACK:  You know, that is going
 5  to get me halfway through.  Three of us are going
 6  to make presentations.  You know, you can
 7  appreciate my concern coming at the very end of the
 8  day with a fresh area.
 9              THE CANADIAN COURT:  Right.
10              THE US COURT:  Well, you have two
11  lively judges.
12              MR. BROMLEY:  Your Honours, I would
13  note that the UK pension parties have a maximum of
14  an hour and 15 minutes, so even if they used the
15  entire hour and 15 minutes, we would be at 6
16  o'clock.  If they reserve any time, I'm thinking it
17  is more like 5:30 or 6:00.  You know, our office
18  doesn't even close until 5:30, so, you know, I
19  would think that it would make sense to try to
20  squeeze something in, but obviously it is up to the
21  Courts to decide.
22              THE US COURT:  I am certainly in
23  favour, personally in favour of proceeding.  But I
24  don't know if there are rules and procedures in
25  Canada.
```

```
 1                    THE CANADIAN COURT:  No, there aren't.
 2   I'm going to suggest Mr. Barrack go to 5 o'clock.
 3   I had people in my office at 8:30 this morning, so
 4   I would suggest you go to 5 o'clock, and then we
 5   come back tomorrow, Mr. Barrack.  That is my
 6   suggestion.  And then if we go into Wednesday
 7   morning, we go into Wednesday morning.
 8                    MR. BROMLEY:  I would note Mr. Abbott
 9   had told me the teamsters will be arriving to
10   disassemble your courtroom on Wednesday morning,
11   Your Honour, so...
12                    THE US COURT:  We'll lock the door,
13   we'll lock the door.
14                    MR. BROMLEY:  That usually doesn't work
15   with them.
16                    THE CANADIAN COURT:  Let's do that, go
17   to 5 o'clock and then we'll come back in the
18   morning.
19                    THE US COURT:  May I suggest, Justice
20   Newbould, how would you feel about starting
21   tomorrow at 8:30, would that help a little bit?
22                    THE CANADIAN COURT:  Sure.  I have
23   got --
24                    THE US COURT:  We can talk about this
25   off the record.
```

```
1                THE CANADIAN COURT:  That is fine.

2                THE US COURT:  Is that all right with

3    the parties, to start at 8:30?

4                THE CANADIAN COURT:  I have people

5    coming at 8:30, but they'll be quick, I'll make

6    sure they are quick.  Okay, why don't you go ahead,

7    Mr. Barrack.

8                MR. BARRACK:  Okay, Your Honours, you

9    know that we appear on behalf of the UK Pension

10   Claimants, 36,000 involuntary creditors of Nortel.

11   You heard from some of them during the evidence, if

12   you think of Simon Brueckheimer.  Sorry, I should

13   have handed up, we have demonstratives.

14                I'll be addressing some of the

15   threshold issues, the fundamental task of the Court

16   in this allocation proceeding.  Ms. Miller will

17   address some of the broader questions relating to

18   pro rata and why it should be applied in this

19   proceeding.  And Mr. O'Connor will address how pro

20   rata intersects with Owens Corning.

21                And, Your Honours, you have been fairly

22   silent throughout this, but if you have specific

23   issues you would like us to address, we would be

24   pleased to address them.

25                And it may be that we'll turn the
```

1   specific question to one of the team members.

2              We would prefer, very much prefer to

3   deal with the issues which are engaging you rather

4   than take up time on issues you have no interest

5   in.

6              It goes without saying that the UKPC

7   considers it important for these Courts in this

8   case to have the opportunity to rule on the

9   appropriateness of the pro rata allocation.  It

10  would be most unfortunate if these Courts did not

11  have the opportunity to consider it.

12             As we know, this case will be

13  exhaustively analyzed.  We had an eminent academic

14  in the courtroom this morning observing the

15  proceedings.  You know this is going to be closely

16  scrutinized.

17             It would be irresponsible for the

18  parties to leave the Court without the ability to

19  assess the merits of the only method which can

20  provide a precedent which will avoid the wasteful

21  excesses of this proceeding.  These Courts on this

22  record not only have the jurisdiction and authority

23  to order the pro rata allocation, it is, I

24  sincerely believe, the most appropriate method of

25  allocation in the unique circumstances of Nortel's

1   global insolvency.

2              The other methods, especially the

3   Canadian and American methods, are deeply flawed.

4              So what is the jurisdiction of these

5   Courts?  When we started these submissions, we

6   thought to sit back and say, so what is the

7   jurisdiction?  Your jurisdiction has been found,

8   and it has been found by the Courts, to flow from

9   the consensual submission to these Courts through

10  the IFSA and the cross-border protocol.

11             That has been decided by other Courts.

12  Despite the fact that there are three estates, you

13  are well aware there are only two Courts.  There is

14  no UK Court or representative adjudicator in this

15  proceeding.  And that places a heavy burden on each

16  of you.

17             While the IFSA has been held to provide

18  the necessary jurisdiction to these Courts to

19  allocate the funds in the lockbox, it is important

20  that the IFSA provides little guidance to you on

21  the method of allocation to be employed.  The fact

22  that the playing field is wide open was a key

23  feature of the IFSA, and we have up on the screen

24  section 12(f) which reads:

25                   "Nothing in Section 12 shall

```
 1                      prejudice the rights of any Party,
 2                      or otherwise constitute an
 3                      amendment, modification or waiver of
 4                      the rights of any Party, to seek
 5                      entitlement to Sale Proceeds from
 6                      any Sale Transaction".
 7                 And I would note that the word is "any
 8      party", not any selling debtor.
 9                 So what then, against that
10      jurisdiction, is the actual role of the Courts?
11                 We submit the role of the Courts is
12      first to determine if there was an agreement, but
13      it is important as to what the agreement is.  An
14      agreement between the relevant parties prior to the
15      Nortel insolvency as to how in a global liquidating
16      insolvency the proceeds of a joint sale of the
17      Nortel assets generally, and the patents
18      specifically, were to be allocated.
19                 If the Court finds, as all parties
20      agree, there was no prior agreement on this point,
21      then in our submission what the Courts should do is
22      exercise its broad discretionary jurisdiction it is
23      given under the bankruptcy laws of each
24      jurisdiction.
25                 But those broad discretionary
```

```
 1   principles are not unfettered or unlimited.  It
 2   should determine, in exercising that jurisdiction,
 3   what are the relevant legal principles and
 4   determine the most appropriate allocation method.
 5              The Bankruptcy Code, as each of you
 6   know, in section 105A and the CCAA in section 11
 7   provides broad discretionary powers to these
 8   Courts.  But these discretionary powers are not
 9   limitless.  When exercised, the Court must ask
10   itself two fundamental questions.
11              First, is there a legal basis either
12   directly on point or by analogy which supports the
13   exercise of the discretion?
14              And second, and importantly, are there
15   any limiting legal constraints which would prevent
16   the exercise of the discretion in a particular way?
17              In our submission, the answer to the
18   first question is that there are several legal
19   bases for the adoption of pro rata.  We have dealt
20   with these in our written submissions.  The most
21   fundamental legal principle the Courts should
22   adhere to in an insolvency case is, is the
23   principle of pro rata pari passu treatment of
24   unsecured creditors.
25              And we don't stop there.  The fact is
```

1    the bedrock, and we know your task is not as simple
2    as simply to take a broad discretion and to take
3    that broad principle and to stop there.  We are not
4    that naive and that is not what we are suggesting
5    to you.
6              The manner in which the Nortel
7    Enterprise operated prior to insolvency as a single
8    Nortel rather than separate entities provides the
9    Court with several specific legal bases to support
10   a pro rata allocation.  You don't exercise that
11   discretion in a vacuum.  You exercise that
12   discretion against the record before you.
13             While Ms. Miller and Mr. O'Connor will
14   refer to the facts in more detail, a single line
15   from paragraph 306 of the Monitor and Canadian
16   Debtors' submission in the Canadian claims case is
17   instructive, and it reads as follows:
18                   "The fact that an entity in the
19                   Nortel Group had cash on its balance
20                   sheet did not necessarily mean that
21                   cash was available to be used at
22                   that point in time.  It had to be
23                   deployed in reference to an overall
24                   cash management plan designed to
25                   ensure the ongoing liquidity and

```
 1                    viability of the entire Nortel
 2                    Group."
 3                    Just stopping there, think about that.
 4       Think about what the Monitor is saying.  And that
 5       is in the context of a claims case.  Why couldn't
 6       we pay down the UK pension debt?  And if you go to
 7       that and you look, and it is part of the evidence
 8       in this case as well, the point was made time and
 9       time again --
10                    THE CANADIAN COURT:  You said this was
11       in paragraph 306 of their brief.  Was this their
12       brief --
13                    MR. BARRACK:  In the claims.
14                    THE CANADIAN COURT:  In your claim, not
15       in the --
16                    MR. BARRACK:  No, in the Monitor's
17       claim.  In our claims case.
18                    THE CANADIAN COURT:  In your claims
19       case, right.
20                    MR. BARRACK:  In the claims case, the
21       Monitor's submission in the claims case, and they
22       refer to evidence that is joint evidence.
23                    THE CANADIAN COURT:  I understand.  I
24       just want to make a note.
25                    MR. BARRACK:  Yes, and the point that
```

1  is being made, and it is a point that was made time
2  and time again, what was good for one entity was
3  good for all of Nortel, and we have spent a lot of
4  time on the patents and we are going to come to
5  that and how they were hopelessly entangled and you
6  couldn't separate the ownership.  You just heard a
7  very passionate, eloquent dissertation on that
8  point.
9           But it wasn't only the patents, it was
10 the cash.  When you go to your pensioners and you
11 say, no, you can't have the cash in your company
12 because we need it throughout the organization
13 before insolvency and then when the music stops,
14 you go, hey, something very different.  It is that
15 fact pattern.  It is that fact pattern that gives
16 rise to the legal bases that support a pro rata
17 distribution.  It is those unique facts in this
18 case.
19           So what are those legal bases?
20           They are joint venture law.  They are
21 the law relating to the imposition of a
22 constructive trust based on unjust enrichment.
23 They are equitable receivership principles applied
24 in the context of the relevant insolvency statutes.
25 And we say the law relating to substantive or

1     substantive consolidation.

2                And it is this last area, this law

3     relating to substantive or substantive

4     consolidation that has generated a great deal of

5     debate.  The UKPC is not seeking substantive or

6     substantive consolidation, but it does submit that

7     the law relating to that area of the law which on

8     the specific facts of this case would support the

9     pro rata allocation method.

10                And using my formulation before, what

11     the Courts are about, the Courts are about a broad

12     jurisdiction, applying broad legal principles,

13     determining are there applicable legal principles

14     or are there constraints.  And coming back, Judge

15     Gross, to the question you asked earlier in the day

16     and what is the effect of this proceeding, is is

17     that law relating to substantive consolidation a

18     restraint on you from ordering pro rata?

19                And we will take you to the cases and

20     show you strongly that it is not only not a

21     restraint, in fact it is an accelerating factor

22     towards the pro rata methodology.  But it is clear

23     we have joined issue with the Bondholders on this

24     point and it is a point you will have to decide.

25                Mr. O'Connor will be dealing with that

1   debate directly.

2                Ms. Miller will be addressing in more

3   detail the support for pro rata within the

4   insolvency law context.

5                So the Courts should begin with the

6   threshold question that I have identified:  Was

7   there a prior agreement on the method to allocate

8   the lockbox proceeds?

9                Well, I couldn't be standing up at a

10  better time in one sense after you having listened

11  to the debate today, because 1.3 billion dollars in

12  costs spent by only two of the estates over the

13  past five years on multiple depositions, expert

14  reports, opening submissions, trial testimony and

15  thousands of pages of closing submissions are all

16  testament to the simple fact that there was no

17  agreement prior to the insolvency about how these

18  proceeds were to be allocated as between the Nortel

19  entities.

20               Those costs, that 1.3 by two estates,

21  don't include parties such as my client, UKPC, who

22  have been bearing their own costs.

23               There is absolutely no dispute on the

24  record before you that allocating the proceeds of a

25  worldwide asset sale was simply a future event that

1   the various entities within the one Nortel never

2   dealt with before insolvency.  The evidence of

3   every single witness was clear on that point.  As

4   we pointed out in paragraph 36 of our written

5   submission, and you may recall some of these

6   witnesses, the plain speaking Clive Allen, the

7   general counsel Walter Henderson, the outside

8   lawyer Michael Orlando, the Director of transfer

9   pricing, and Mark Weisz the former Director of

10  international tax, all testified that consideration

11  was never given to the rights of the various

12  entities in the event of a global insolvency.

13            Those involved in drafting the MRDA

14  were unanimous in their evidence that the MRDA was

15  not intended to address an Enterprise-wide

16  insolvency.  The terms of the MRDA confirm this.

17            Had any party believed there was a

18  prior agreement on this point, it would have been

19  raised in the IFSA or at the time of the IFSA.

20  Indeed, instead, the IFSA was clear that all

21  allocation methods were on the table.  In the

22  submissions this morning from Wilmington Trust, you

23  heard that the ownership concepts in the MRDA were

24  for tax purposes only.

25            So in the absence of an agreement, then

```
 1    how do the American and Canadian estates proceed?

 2                 In the absence of the parties reaching

 3    an agreement on an allocation method to be used in

 4    a worldwide liquidating insolvency, the Canadian

 5    and American estates attempt to infer or imply a

 6    prior agreement arising out of the MRDA.  They turn

 7    in that direction rather than turning to

 8    fundamental insolvency legal principles.

 9                 In essence, the reasoning of the

10    American and the Canadian estates is premised on

11    the assumption that the MRDA, which was a transfer

12    pricing document, which did not contemplate the

13    events now before the Courts, can stand in the

14    place of such an agreement.

15                 There are several basic flaws in this

16    line of reasoning.

17                 The first is that the basic purpose of

18    the transfer pricing document was different than

19    the task before the Court.  As you pointed out

20    earlier today, Justice Newbould, on one level the

21    purpose was to allocate periodic income.  On

22    another, more practical, fundamental level, it was

23    to move as much profit as possible to Canada,

24    something that was an entirely noble goal when

25    there is one Nortel, a purpose, which as you have
```

1   just noted, was not achieved in the eyes of the

2   Canadian and the American competent tax

3   authorities, given the deemed dividend of 2 billion

4   dollars resulting in a claim for that amount being

5   accepted.

6            Therefore, the American and Canadian

7   approach is attempt to take a document, the MRDA,

8   which was drafted for a single purpose, and attempt

9   to use it for a completely foreign purpose.

10           And just stopping on that point, if you

11  think about -- I have said one of the basic legal

12  principles that you could use is constructive trust

13  for unjust enrichment, and you think -- I'm sorry,

14  Judge Gross, you may not know this case and I don't

15  have it, but Justice Newbould will.  It is our

16  foundational constructive trust case, arose in a

17  common law family situation where the working

18  spouse of a farmer, it was a beekeeper actually, a

19  beekeeping operation, alleged a constructive trust

20  for all of the work she had done over the years.

21           Well, in that case there was no

22  question about who the legal title owner was of the

23  farm and who the legal title owner was of the

24  beehives, so it is a misdirection.  Well, who owned

25  it, who owned it, who owned it?  Who owned it on

1   the facts of this case, when you come to all of

2   those relevant legal principles that we come to,

3   doesn't really matter.  They didn't allocate this

4   specific risk in these circumstances.

5              The second basic flaw in both the

6   Canadian and American allocation approaches ignore

7   a different fundamental economic premise of the

8   MRDA, and as a consequence each is economically

9   irrational when viewed from the other estates'

10  perspective.

11             The Canadian approach ignores the

12  fundamental agreement contained in the MRDA that

13  the value created by the Nortel entities was to be

14  shared among.  The MRDA applied this fundamental

15  agreement to periodic income, but the Canadian

16  approach ignores this fundamental approach in

17  allocating the proceeds of asset sales.

18             The Canadian approach, unlike what

19  Mr. Zigler tried to urge upon you today, is not a

20  proxy for a pro rata result.  It seeks to take all

21  of the proceeds of the sale and limit the claims

22  that can benefit from those proceeds.  It would

23  only be the equivalent if both the assets and the

24  worldwide liabilities were both migrated to Canada.

25             And I see I have gone on past 5 o'clock

```
 1    and I will --
 2                    THE CANADIAN COURT:  You can go ahead.
 3                    MR. BARRACK:  I'll just stop here.
 4                    Pro rata is not the economic equivalent
 5    of the Canadian ownership theory.  And, Justice
 6    Newbould, you may recall that in Mr. Britven's
 7    numbers there is full allowance of the guarantee
 8    claims at 880 million dollars.  You know that that
 9    is an issue that the Monitor to this day is
10    fighting tooth and nail.
11                    So I'm prepared to stop there, or go
12    on.  I'm in your hands.
13                    THE CANADIAN COURT:  All right, let's
14    come back tomorrow morning.
15                    MR. BARRACK:  Okay.
16                    Thank you, Judge Gross.
17                    THE US COURT:  Thank you.
18                    THE CANADIAN COURT:  We'll come back at
19    8:30 tomorrow morning.
20                    THE US COURT:  Yes.
21
22    -- Adjourned at 5:05 p.m.
23
24
25
```

```
1                     REPORTERS' CERTIFICATE

2

3              I, DEANA SANTEDICOLA, RPR, CRR, CSR,

4     and I, LORRAINE MARINO, RMR, CRR, CSR, certify;

5                   That the foregoing proceedings were

6     taken before us at the time and place therein set

7     forth;

8                   That the entire proceedings of the

9     hearing date were recorded stenographically

10    individually by each of us and were thereafter

11    transcribed;

12                  That the foregoing is a true and

13    correct transcript of our shorthand notes so taken.

14

15                  Dated this 22nd day of September, 2014.

16

17    PER:                    PER:

18    Lorraine Marino    Deana Santedicola

19    LORRAINE MARINO         DEANA SANTEDICOLA

20    WILCOX & FETZER         NEESONS

21    WILMINGTON, DE   USA  TORONTO, ON   CANADA

22

23

24

25
```

neesons    WF                          www.neesonsreporting.com
                                        www.wilfet.com

## $

**$1**
5265:17

**$1.3**
5247:17,21

**$125**
5241:25

**$135**
5373:15

**$2**
5241:25 5368:16
5369:13

**$20**
5294:12

**$21**
5373:23

**$35**
5373:22

**$4-1/2**
5370:15

**$536**
5248:18

**$7.3**
5369:16

## (

**(d)**
5289:10

## 1

**1**
5163:6 5245:5,7,23
5283:11 5291:21
5298:4 5302:3,4
5307:25 5318:2 5343:9
5367:18

**1.3**
5248:1 5265:17
5389:11,20

**10**
5322:25 5371:11

**100**
5231:5 5243:17

5244:23 5253:7,10,24
5254:7 5261:4 5264:17,
18,19 5265:14, 5275:19
5366:18 5374:9

**105A**
5384:6

**10:36**
5203:10

**11**
5177:23 5199:9
5246:25 5248:15
5255:13 5263:14
5344:12 5384:6

**11:00**
5203:9

**11:04**
5203:11

**11:59**
5239:20

**12**
5177:20 5218:15
5382:25

**12(f)**
5213:13 5382:24

**125**
5239:11

**12:45**
5278:9

**13**
5172:3 5187:19
5191:18 5289:9 5298:4
5373:14

**133**
5367:24

**14**
5149:12 5191:13
5205:18 5264:15
5289:8

**15**
5196:5 5308:25 5358:6
5375:22 5376:8,9
5378:14,15

**16**
5373:8

**163**
5254:14

**18**
5341:3

**19**
5318:2

**1978**
5312:1

**1990**
5308:11

**1990s**
5366:4

**1991**
5318:1

**1992**
5175:19 5351:4,6

## 2

**2**
5182:10,24 5190:5
5230:13 5238:14
5239:10 5245:5,8,23
5288:12,19 5299:6
5302:3 5304:15
5311:23 5369:5,16
5392:3

**2(c)**
5190:12

**2.2**
5354:20

**20**
5203:7 5294:15
5367:17 5376:6

**20,000**
5226:2

**2000**
5343:7,12

**2000s**
5366:5

**2001**
5238:16

**2002**
5350:2 5360:6 5367:23

**2003**
5360:14 5361:4
5367:23

**2004**
5281:14 5288:2

**2005**
5293:12 5367:20,21

**2005**
5238:16 5301:9 5367:2,
16

**2006**
5361:16 5367:12

**2007**
5282:19 5293:18
5362:4 5363:13
5367:11

**2008**
5283:19 5367:10

**2009**
5283:24 5360:19
5366:9 5367:2,7,10,17,
20

**2010**
5360:22

**2012**
5298:24 5353:13

**2013**
5212:14 5213:1,6
5214:1 5216:22
5219:15

**2014**
5395:15

**206**
5192:9

**208**
5254:14

**20s**
5231:1

**22**
5196:5 5312:8,11
5367:21

**22-2**
5159:3

**22nd**
5395:15

**23**
5204:23 5231:11,16,18
5299:6 5353:11 5354:8,
14

**25**
5231:2 5248:16
5263:14 5329:18,21

**26**
5311:24 5355:10

**2600**
5367:17

**27**
5355:16

**28**
5201:11,21,22 5355:25

**29**
5369:14 5371:11

**294**
5342:19

**2:00**
5277:25 5278:4,8

**2:16**
5278:10

---

**3**

**3**
5159:18 5184:25
5188:4,12 5190:5
5264:18 5265:3
5288:12,19 5299:25
5300:6 5301:9 5326:4,
22 5327:2,4 5329:6
5340:11 5375:19

**3(a)**
5326:4

**30**
5376:7

**306**
5385:15 5386:11

**31**
5231:17,21 5318:4,14

**318**
5196:4

**32**
5165:5

**35**
5376:5

**350**
5196:4

**356**
5200:19

**359**
5200:19

**36**
5390:4

**36,000**
5380:10

**362**
5200:20

**38**
5344:12

**39**
5346:13

**3:55**
5358:8

---

**4**

**4**
5163:24 5173:3 5180:8,
24 5181:20 5183:10,22
5187:8,10 5188:4,10
5230:14 5285:1 5308:6
5376:2

**4's**
5284:11 5287:9

**4(a)**
5154:24 5155:1
5165:24 5166:2
5175:20,21 5188:6,14,
16 5194:24 5301:17,20
5302:23 5304:1,2
5307:7,8 5310:6
5316:12

**4(e)**
5189:2

**4-1/2**
5370:19

**4.2**
5237:22

**40**
5371:23

**45**
5220:5 5371:12
5375:19

**48**
5301:9

**49**

5294:10

**4:17**
5358:9

---

**5**

**5**
5164:2 5165:1 5166:6
5180:8,25 5181:20
5187:11 5195:9,16,23
5322:20 5354:7 5378:3
5379:2,4,17 5393:25

**5(a)**
5171:24,25 5197:3

**5(c)**
5199:23

**50**
5238:6, 5258:7 5372:8

**50-yard**
5372:12

**50471**
5337:6

**508**
5208:4

**52**
5336:11

**53**
5336:11

**54**
5371:23

**540**
5208:4

**57**
5205:20 5298:14,20

**59**
5207:9 5244:2

**5:05**
5394:22

**5:30**
5378:17,18

---

**6**

**6**
5167:7 5183:11
5194:12 5312:8 5343:9

5377:2 5378:15

**63**
5254:10 5298:14

**69**
5267:4

**6:00**
5378:17

---

**7**

**7**
5170:9

**70**
5267:4

**706**
5160:7,19

**71**
5254:5

**73**
5309:2

**74**
5309:25

**77**
5367:23

---

**8**

**8**
5170:10 5376:14

**807**
5310:3,23

**880**
5394:8

**89**
5329:22

**8:30**
5379:3,21 5380:3,5
5394:19

---

**9**

**90**
5329:22 5330:9

**93**
5342:19

95
5243:19 5275:21

99
5366.13,22

9:00
5376:13

9:11
5149:1

---

**A**

A's
5287:9

a.m.
5149:1 5203:10,11

Abbott
5149:8,9,17 5379:8

ability
5176:8 5196:11
5213:20 5324:23
5381:18

absconded
5164:8 5308:19

absence
5155:9 5390:25 5391:2

absent
5159:13 5250:21
5342:20

absolutely
5207:11 5275:13
5290:15 5291:10,12
5362:25 5389:23

absurd
5212:19

absurdity
5320:6,8 5328:7

abundantly
5219:23

academic
5381:13

accelerating
5388:21

accept
5154:15 5243:13
5368:10,12,14,19,23

acceptance
5250:21

accepted
5208:11 5392:5

accepts
5174:2

accident
5293:25

accommodation
5254:6

accord
5227:21 5228:4,5
5261:24 5263:12

accordance
5220:7 5226:19 5286:5
5301:2 5325:18
5364:20

accords
5179:15 5226:12
5262:3

account
5152:2 5187:25 5197:1
5211:5 5242:13 5286:1
5331:23

accounting
5233:16

accrue
5330:20

accurate
5268:20 5276:13
5347:24

accurately
5206:20

accusations
5222:20

achieve
5263:25

achieved
5219:11 5220:13
5392:1

acknowledge
5179:3 5294:8 5316:4
5340:5,7

acknowledged
5236:9 5258:20
5325:23 5363:9
5372:19

acknowledges
5172:15 5329:4

Acknowledgment
5340:9

acquired
5188:18 5195:1 5267:5
5269:19

acronym
5268:19

act
5167:23 5168:12

action
5312:19 5314:4

activities
5234:23 5248:6

activity
5171:8 5181:5 5190:8,
11 5191:1 5199:11
5232:16 5266:15
5326:7,14 5327:7
5368:16

actual
5182:3 5184:18 5266:4
5270:13,23 5365:15
5366:11 5383:10

add
5214:20 5229:5
5269:16 5357:22

addendum
5184:25 5187:7,8
5188:11,12,13 5282:21
5283:25 5285:7
5316:20 5317:6

addition
5209:5 5273:13

additional
5193:11 5266:22
5283:3 5296:19

address
5162:13 5212:23
5258:2 5261:13
5264:24 5277:14
5279:17 5280:22
5291:11,12 5305:11
5380:17,19,23,24
5390:15

addressed
5255:11 5272:22,23

addresses
5281:12

addressing
5279.4 5380:14 5389:2

adhere
5384:22

Adjourned
5394:22

adjudicator
5382:14

adjustment
5254:4

adjustments
5327:8

administrative
5207:2 5236.14

admissible
5235:19 5279:23
5294:24 5305:4,22
5306:10 5346:5,6
5349:20,22 5350:16,18
5351:24,25 5352:7
5359:3

admissions
5285:9

adopt
5225:17 5268:8,9
5287:6 5320:3

adopted
5178:23 5209:21
5275:16

adopting
5167:11 5254:18

adoption
5254:25 5255:6
5384:19

advance
5213:20

advanced
5159:23 5174:19

advancing
5172:19

advisedly
5174:25

advocate
5239:15

**affect**
5154:8 5181:6 5208:12
5252:2

**affected**
5153:7 5154:11
5163:21 5286:19
5377:24

**affecting**
5181:17

**affects**
5151:11 5169:14
5262:15

**affiliate**
5199:13

**affiliated**
5255:14

**affiliates**
5293:22

**affirmed**
5343:13

**afternoon**
5267:13,14,15 5278:13,
15,18,20,22 5358:15,
16,17

**age**
5368:1

**agenda**
5174:22

**agree**
5175:5 5211:1 5212:10
5229:3 5235:19
5261:12 5268:3 5276:1
5279:11 5322:15,16
5332:23 5335:25
5338:10 5371:15
5383:20

**agreed**
5155:3 5213:6, 5220:9
5271:20 5274:3,16
5301:23 5321:22,23
5333:7 5335:19
5340:12 5362:24

**agreeing**
5166:4

**agreement**
5162:16 5171:23
5173:18 5175:11,12,14,
19, 5177:25 5178:6
5181:7 5182:6 5183:8

5185:1,6,21,22 5186:1,
6,7,9,13,17 5187:2
5190:12 5191:13,21,23,
24 5195:2 5199:11
5206:1,16 5207:4
5212:7 5213:16 5216:2
5218:14 5223:10
5256:11 5269:7,11,20,
22 5271:8,9 5274:10
5275:1 5283:4 5287:1,3
5288:21 5289:3,4,15,16
5292:2 5293:14,20
5297:17 5298:18
5300:19 5301:5
5309:17 5321:3,5,7,10,
15 5326:19,21 5328:6,8
5329:7 5331:14
5333:23,24 5334:16,24
5335:12,22 5338:10
5339:15 5340:8,12,19
5342:21 5343:1,3,19,25
5345:5,12,17,21,23
5346:11,12 5350:24
5351:6 5353:2,23
5354:16,19 5355:7,8,24
5356:2,6 5383:12,13,
14,20 5389:7,17
5390:18,25 5391:3,6,14
5393:12,15

**agreements**
5191:16 5192:7
5214:15 5216:16
5218:6 5221:10
5222:25 5271:22
5274:19 5281:5
5294:22 5316:3 5317:7,
8 5319:15,18,19
5341:21 5345:9
5350:21

**agrees**
5188:21 5236:23
5328:21,22

**ahead**
5223:16 5225:4
5305:20 5337:9 5380:8
5394:2

**aim**
5292:2

**air**
5250:18

**Alberta**
5308:9

**Alcatel**
5183:4 5293:19,20
5325:17,24 5356:22
5357:1 5362:5 5363:12

**allegation**
5217:11 5223:2

**allegations**
5201:2

**allege**
5215:11 5258:2

**alleged**
5392:19

**Allen**
5211:23 5234:6
5235:10 5237:8
5272:23 5273:12
5322:3 5390:6

**allocate**
5230:18 5253:10
5263:24 5328:22
5360:10 5369:25
5382:19 5389:7
5391:21 5393:3

**allocated**
5242:5,22 5244:12
5249:1 5252:24
5253:18 5261:17
5267:24 5274:13
5325:18 5362:8
5389:18

**allocating**
5288:16 5364:19
5389:24 5393:17

**allocation**
5150:19 5151:11
5202:21 5207:20
5212:18 5213:3,8,18,21
5214:4,11 5216:1,20
5218:9,11,20 5219:1,
17,19 5220:8 5226:23,
24 5227:8 5228:14,23
5229:16 5230:7,11
5233:19 5239:8 5244:6
5246:20,25 5248:22
5249:18 5251:10,11
5252:2 5254:13 5255:6,
9 5256:4,14,19 5258:3
5260:1,7,9 5261:8,10,
15 5263:11 5264:2
5268:19 5275:9,14,15
5276:2,18 5288:20

5291:12 5300:4
5325:13 5327:7,20
5328:14 5329:1,5
5331:20 5365:2
5380:16 5381:9,23,25
5382:21 5384:4
5385:10 5388:9
5390:21 5391:3 5393:6

**allocations**
5211:3 5241:15,21

**allowance**
5256:20 5394:7

**allowed**
5205:24 5252:22
5309:12

**allowing**
5344:1

**alter**
5203:17

**alternative**
5228:11,23 5244:9
5249:25 5276:24

**alternatives**
5223:14

**ambiguity**
5186:9,10,12,20,23
5285:4 5286:25 5287:4,
5,15 5316:19 5317:2,4
5352:10,16 5357:10,15
5358:24

**amend**
5186:2

**amended**
5284:6 5359:14

**amending**
5359:5

**amendment**
5359:9 5383:3

**amendments**
5187:9 5269:21 5270:1

**American**
5382:3 5391:1,5,10
5392:2, 5393:6

**amount**
5244:20 5248:25
5249:15 5254:8
5265:17 5299:22
5327:20 5350:17

5351:16 5352:25
5392:4

**amounts**
5254:4

**analogy**
5272:16 5384:12

**analysis**
5209:3 5238:6 5361:5,
8,17 5365:11,14

**analyze**
5355:6

**analyzed**
5381:13

**and/or**
5192:14

**Anderson**
5236:16

**annual**
5288:15 5336:21

**answers**
5192:6 5326:18

**anticipate**
5274:11

**anticipated**
5330:22

**antithesis**
5311:10,19

**APA**
5350:2 5360:5,14

**apologize**
5249:7 5303:10 5340:6
5342:1 5353:12
5357:24

**apparent**
5163:11 5310:10
5311:5

**appeal**
5240:16 5244:6
5301:10 5308:11
5377:5

**Appeals**
5255:15

**appeared**
5259:14,22 5304:20

**appears**
5257:20 5271:2

**appellate**
5241:11 5254:15
5311:25

**Appendix**
5201:25 5228:12

**appetite**
5149:15

**applicable**
5232:7 5388:13

**applications**
5192:13 5345:8

**applied**
5380:18 5387:23
5393:14

**applies**
5156:8 5255:4 5295:11
5342:2,8 5343:4

**apply**
5164:19 5250:16
5272:13 5308:21
5332:10

**applying**
5388:12

**approach**
5234:16 5246:15
5248:12,15,16,17
5262:2,4,6 5325:13
5333:1 5372:2,6 5392:7
5393:11,16,18

**approached**
5210:21,23

**approaches**
5227:19 5248:13
5393:6

**appropriately**
5249:11 5251:19

**appropriateness**
5381:9

**approval**
5362:20

**approve**
5255:12

**approved**
5213:24 5220:1
5221:11

**approving**
5220:3

**approximately**
5247:16

**apt**
5314:17

**arduous**
5225:24

**area**
5378:8 5388:2,7

**areas**
5233:15 5237:4

**ARES**
5373:7

**argue**
5171:18 5212:9
5218:10 5222:3
5235:16 5254:25
5269:1 5270:9

**argued**
5212:2 5280:20
5309:18

**arguing**
5160:8 5169:19
5306:22

**argument**
5156:16 5160:22
5162:24 5166:16,19
5167:3 5169:1,2,15
5170:1,21 5173:22
5174:11 5175:2
5180:21 5184:8 5186:6
5189:7,9,15 5192:8
5212:7,18,20 5226:16
5268:8 5276:15,23
5284:10 5286:5
5288:22 5290:10,18
5292:9 5319:22 5321:2,
3 5322:18 5323:4,20,21
5324:3,14 5327:13
5334:25 5335:3 5356:9,
25

**arguments**
5195:13 5213:8
5218:18 5240:17
5241:6 5374:18

**arise**
5162:21 5226:23

**arising**
5150:3 5258:23
5354:24 5391:6

**arm**
5195:23,25

**arm's**
5179:1 5300:13
5317:12 5319:25
5320:3,9,11,15,18,19
5321:4 5328:7 5329:12
5330:21

**Armstrong**
5170:9

**arose**
5161:17 5392:16

**arrangement**
5155:15 5159:24
5172:21 5178:9,10
5181:1 5183:18
5191:11 5207:3

**arrangements**
5199:1 5290:3,6,21,24
5292:4 5320:15
5321:14

**arrive**
5152:2

**arriving**
5297:13 5379:9

**article**
5154:24 5155:1
5165:24 5166:2,6
5167:25 5171:24,25
5173:3 5175:20,21
5180:8,24,25 5181:20
5187:10,11,19 5188:4,
6,10,14 5194:24
5195:9,16,23 5197:3
5199:9,23,25 5284:11
5285:1 5287:8 5288:19
5289:8 5290:12
5299:25 5300:6 5326:4

**Articles**
5190:5 5288:12

**ascribe**
5165:6

**ascribed**
5228:9

**aspects**
5363:2

**assert**
5212:13 5219:7
5346:16

**asserted**
5242:1 5256:21

**assertions**
5150:4

**asserts**
5355:1

**assess**
5381:19

**asset**
5151:10 5238:25
5239:3 5261:8 5322:9
5331:21,24 5361:25
5369:13 5372:14,15,
5389:25 5393:17

**assets**
5208:22 5212:16
5216:10,12 5241:10,17
5242:7 5247:6,8,11
5248:24 5249:12,23
5250:22,23,24 5251:7,
19 5252:10,11 5255:22
5257:14 5263:8,24
5290:18,19 5330:14
5332:7 5336:13,15
5348:9 5361:19
5369:12,17,19,23
5370:1,5,9 5373:21
5383:17 5393:23

**assigned**
5192:13 5338:25
5340:17 5348:20
5349:3

**assigning**
5193:9

**assignment**
5192:17,23,24 5193:4

**assignments**
5192:19 5193:11,23,24
5194:2 5237:1 5338:22

**assist**
5297:12 5298:7 5346:8

**assume**
5169:2 5300:22 5304:5

**assumed**
5342:4

**assumes**
5291:8,9 5330:15

**assuming**
5209:8 5253:23

**assumption**
5208:6,9 5391:11

**assumptions**
5210:8

**at-risk**
5373:7,18

**attached**
5201:24 5340:10

**attempt**
5212:2 5353:18 5391:5
5392:7,8

**attendant**
5179:11 5180:16

**attention**
5149:19 5199:8
5262:14 5276:11
5288:24 5289:2,18

**attorneys**
5259:21

**attributable**
5330:3,19 5331:2

**attributed**
5250:11

**audited**
5345:15

**auditors**
5362:9,14

**authoritatively**
5159:17

**authorities**
5150:23,24 5155:21
5163:24 5167:8
5177:20 5178:24
5182:1 5227:25 5249:4
5271:6 5298:4 5300:16
5308:1 5311:24
5320:14 5333:25
5343:10 5350:5,9
5353:12 5360:8,14,18,
21 5361:2 5368:10,11,
14,22 5369:5 5392:3

**authority**
5159:23,24 5161:16
5254:12 5260:5 5301:6
5381:22

**automatically**
5338:19

**automobiles**
5272:1

**autonomous**
5257:4

**autonomy**
5246:13

**avenue**
5227:7

**avoid**
5229:13 5230:21
5240:11,13 5246:19
5262:11 5312:4 5320:8
5338:5 5381:20

**avoided**
5299:16

**avoiding**
5229:12

**award**
5353:17,18

**aware**
5255:10 5259:5
5382:13

───────────

**B**

**baby**
5334:18

**back**
5149:4,5,13 5157:6
5160:2 5163:5 5170:14
5194:12 5195:5 5200:4
5203:9 5206:18,22
5221:23 5240:4
5242:25 5246:11
5248:4 5277:25 5290:4
5299:7 5300:19
5301:12 5302:2
5304:18 5307:6
5332:11,15 5335:23
5349:13 5351:4,12
5352:22 5353:8
5359:23 5360:6 5361:1
5364:25 5366:9
5367:22,24 5370:19
5379:5,17 5382:6
5394:14,18

**backdrop**
5165:20

**background**
5163:22

5184:22

**bad**
5222:21 5319:3

**badges**
5252:4

**bag**
5242:6

**balance**
5361:20 5385:19

**balances**
5249:12 5251:19

**bank**
5159:20,22 5160:1,8
5161:10 5170:25
5175:8 5191:19 5376:9

**bankruptcy**
5249:22 5255:12
5258:9,22 5261:15,17
5263:18 5266:12
5383:23 5384:5

**banks**
5259:21,22

**bare**
5152:22 5153:10,21
5154:19 5169:21
5170:13 5173:3

**bargain**
5224:3

**Barrack**
5374:21,25 5375:8,9
5377:4,16 5378:2,4
5379:2,5 5380:7,8
5386:13,16,20,25
5394:3,15

**base**
5230:18

**based**
5204:1 5208:14
5209:22 5211:7
5212:15 5214:17
5227:9,18 5229:9
5237:5,9 5239:13
5250:7 5251:13 5261:9,
16, 5263:17 5315:18
5321:13 5325:5,
5329:19 5345:18
5347:23,24 5348:7
5349:5 5361:9 5362:8
5368:23,25 5387:22

**bases**
5384:19 5385:9
5387:16,19

**basic**
5266:19 5391:15,17
5392:11 5393:5

**basically**
5183:22 5246:9,18
5254:4 5266:8

**basis**
5208:1 5210:23 5244:5
5292:22 5293:4
5300:13 5304:6 5329:9
5335:14 5373:4 5374:2
5384:11

**baton**
5279:15

**Bauer**
5191:19

**Bazelon**
5238:7

**bear**
5179:9 5180:14
5181:12 5190:14
5242:2 5256:9 5287:24

**bearing**
5194:19 5389:22

**bears**
5251:18 5252:3

**bedrock**
5385:1

**beehives**
5392:24

**beekeeper**
5392:18

**beekeeping**
5392:19

**beg**
5182:25 5184:1

**begin**
5155:1 5389:5

**beginning**
5197:3 5268:13 5277:2
5334:12 5363:21

**begins**
5167:10 5351:20
5366:12

**behalf**
5166:10 5172:4,7
5236:16 5264:6
5267:16,17 5268:7
5353:20 5355:13
5380:9

**believed**
5217:23 5357:4
5390:17

**belongs**
5192:4,5

**belt**
5343:4

**Bench**
5308:10

**beneficial**
5152:11,14 5154:20,21
5155:10,17 5160:16,
5161:24 5162:1,10
5163:13,17 5165:12,14,
17,19 5166:2,9,11,18
5168:13,22 5169:21,24
5170:2 5173:3,12,18
5174:19 5175:15,23
5176:2,12 5177:9
5178:11 5185:4,8,24
5187:13,16 5194:9
5205:5 5270:6,20,24
5271:1 5272:5,11
5274:1 5279:19
5282:23,25 5283:5,16
5284:14,19 5285:3,6,18
5286:19 5296:24
5302:11, 5304:16
5310:12,20 5311:7,12,
5312:15 5313:12
5315:5,8,14 5337:19
5344:8 5345:25
5346:17 5347:10
5348:2 5353:25 5363:8,
19 5374:6

**beneficially**
5165:8 5183:5 5312:13
5313:1 5314:23
5354:12,23 5355:3

**benefit**
5212:12 5258:11
5263:5 5303:17,21
5313:6 5321:16,25
5322:8 5327:22,24
5328:1,4,16,18 5349:2
5393:22

**benefiting**
5274:7

**benefits**
5151:25 5242:11,12
5263:7 5287:25
5329:23 5331:9,10
5354:24

**benefitted**
5321:18,19

**Benjamin**
5149:23

**Berenblut**
5210:22

**bet**
5263:17 5266:24
5296:12

**big**
5234:13

**bigger**
5328:1

**Bill**
5278:24

**billion**
5230:13,14 5237:22
5238:14 5239:10
5241:25 5247:17,21
5248:1 5250:10 5265:3,
6,9 5294:12,15
5322:20,25 5348:13
5368:16 5369:5,13,16
5370:15,19 5389:11
5392:3

**billions**
5322:16

**bind**
5172:5

**binder**
5364:25 5365:1

**binding**
5283:22

**Binning**
5234:1 5235:15

**bit**
5184:21 5206:20
5240:19 5244:11
5254:19 5272:23
5317:15 5349:12
5379:21

**black**
5230:12

**Black's**
5155:22 5157:14
5163:4,6 5164:14
5307:11,16 5308:12
5309:5 5310:3,15,17,22
5311:16,17 5313:15
5314:8 5315:18

**blacked**
5339:16

**Blackstone**
5373:3,14,20

**blank**
5364:12

**blow**
5329:21 5341:4

**bluntly**
5322:13

**boats**
5272:2

**body**
5216:24

**bond**
5165:3 5258:13 5266:5

**bond-trading**
5259:15

**Bondholder**
5239:10 5243:2
5252:17 5253:20
5255:3 5257:18 5258:1,
6 5259:4,10,13,14,17
5260:4,19,20

**bondholders**
5233:5 5243:17
5244:19,21 5247:23
5253:10,18 5254:6
5258:4,18 5260:2,11
5261:4,6 5264:17
5265:9,21 5266:1,3
5275:19 5276:6
5388:23

**Bondholders'**
5261:1

**bonds**
5258:8,12,16 5265:10
5266:1,13 5267:5,17

**book**
5156:15 5158:4
5159:19 5163:24
5182:8 5273:9

**book-end**
5360:19

**booked**
5235:5

**books**
5150:25

**borders**
5251:2 5257:9

**bore**
5249:13 5251:20

**borrowers**
5237:22,23

**bother**
5170:10

**bottom**
5158:15 5196:6
5247:15 5265:2,22
5292:25 5293:12,19
5310:25 5367:14
5370:22

**bought**
5253:3

**bound**
5256:12

**bounds**
5218:4,5

**box**
5230:12

**branch**
5189:7

**breach**
5199:11 5214:21

**break**
5202:24 5233:16
5349:19 5358:2
5375:10

**breathtaking**
5220:15

**briefed**
5297:5

**briefings**
5150:6

**briefly**
5163:22 5190:5
5200:13 5241:1
5269:25 5316:16

**briefs**
5149:13 5195:14
5207:24 5217:19
5252:1 5254:14 5347:7
5362:20

**bring**
5204:20 5289:2
5307:24 5336:7
5339:12 5343:11

**bringing**
5350:24

**brings**
5359:18

**Britven**
5210:20 5241:14
5243:4 5245:12 5248:3
5253:13 5275:22
5325:21,22 5369:24
5370:3 5371:19,20
5372:2,14

**Britven's**
5372:11 5394:6

**broad**
5169:19,23 5170:3
5195:7 5230:6 5283:12
5306:4 5371:6 5383:22,
25 5384:7 5385:2,3
5388:11,12

**broader**
5190:1 5209:8 5380:17

**brochure**
5280:11

**Bromley**
5375:4,5,7,10,12,18
5376:24 5377:16
5378:12 5379:8,14

**brought**
5281:10 5287:21
5288:23 5350:19

**Brown**
5160:20

**Brueckheimer**
5380:12

**built**
5242:15 5263:1

**bullet**
5330:6 5368:9

**bump**
5366:2

**bunch**
5306:19 5350:8

**bundle**
5324:6,7

**burden**
5237:24 5238:2,16
5242:10 5382:15

**burdened**
5274:21

**burdens**
5237:17 5238:10
5242:2,18 5249:15

**burn**
5247:19 5265:18

**burned**
5265:4,5

**business**
5179:11,17,18 5180:3,
15,23 5181:8 5183:5,7
5196:16,18 5205:2
5208:18 5209:4,12
5228:8 5229:21
5232:12,13,14,15,17
5233:1,2,12,23 5234:4
5236:3,13,17 5237:10
5239:1 5241:12,13,18
5257:5,8 5263:1 5273:2
5277:10 5283:14
5287:25 5322:4
5324:11,16 5331:20
5343:17 5367:9 5370:8,
13,16,21 5371:2,8,17,
21,24 5372:9,18

**butting**
5377:19

**buy**
5266:9 5276:10

---

**C**

---

**C.I.**
5343:8,17

**calculate**
5208:14

**calculated**
5190:16 5327:8

**calculating**
5248:25 5249:2

**calculation**
5178:17 5238:1
5252:24

**call**
5151:2,16 5152:5
5246:9 5278:6 5280:23
5281:1,3 5287:6
5291:19 5312:2
5313:18 5314:14,16
5331:13

**called**
5158:4 5233:19 5280:9
5311:24 5343:8

**Canada**
5149:19 5152:22
5167:9 5172:16,23,24
5173:5 5174:1,2,3
5204:6 5205:17 5208:7
5225:13 5230:6 5235:3,
6,8 5237:6,9,15
5238:17,21,24 5239:2,8
5241:24 5242:8,10,11,
18,23,24 5243:23
5244:3,20 5262:14
5265:12 5274:24
5276:4 5278:3 5296:22
5298:1,6 5372:23
5378:25 5391:23
5393:24 5395:21

**Canada's**
5191:18 5226:20

**Canada-issued**
5267:17

**Canadian**
5149:5,14,21,24
5150:10 5151:4,13,14,
20 5155:25 5156:10,17
5166:15,21 5168:25
5169:5 5173:9 5174:5,
9,24 5175:4 5176:10,21
5177:2,6 5180:11
5181:21 5182:11,15,18,
21,25 5183:21 5184:1
5186:4,16,21,24
5187:5,24 5189:8
5190:3 5191:25 5192:3,
22 5193:2,6,12 5194:1
5197:24 5198:4,10,15

5199:2,21 5200:10
5201:18,22 5202:2,5,8,
14,20 5203:3,6,12
5207:8 5209:19,25
5210:12,25 5211:24
5212:11,22 5215:18
5216:4,7,11 5217:4,23
5220:19,20 5221:4
5222:8 5223:5 5224:15,
18 5225:4,10 5228:16
5229:22 5230:24
5231:10,20 5233:3
5237:17,19 5238:5,9
5239:18 5240:2
5243:10,21 5245:1,4,5,
7,16,18,22,25 5246:3
5247:1,25 5248:7,14
5252:25 5253:14,22
5263:14 5264:11,14,22,
25 5265:8,23 5267:2,11
5268:2 5271:9 5275:10,
14 5276:20 5277:19,23
5278:5,13,23 5280:5,19
5281:6,18,25 5284:17
5285:8,13,23 5286:6,
21,24 5287:6,18
5288:22 5289:5,11
5290:8 5291:14,23
5292:7,11,17 5295:2,
17,21 5296:6, 5298:8
5299:3,24 5300:2
5303:1,6,19 5304:5,7
5305:3,8,16 5306:13
5307:3,11,23 5308:2,6
5313:14 5314:10,11
5315:16 5316:2,6,13,23
5317:3 5320:2 5321:1,
6,8 5322:11,23 5323:8,
11,15,19 5324:10,15
5325:12 5326:2,6,10,
5327:13,23 5328:11,24
5331:11 5333:17,22
5334:8,14 5335:5
5336:20 5337:3
5338:21 5339:1,9,23
5340:25 5341:7,12
5342:17 5348:11
5349:24 5351:3,8
5352:5,9,12,15 5356:8,
14 5357:6,18 5358:1,6,
12,17 5362:18 5364:11
5366:8 5368:7,17
5369:2,8 5370:24
5374:21 5375:3 5376:5
5377:11,21 5378:2,9
5379:1,16,22 5380:1,4

5382:3 5385.15,16
5386:10,14,18,23
5391:1,4,10 5392:2,
5393:6,11,15,18
5394:2,5,13,18

**Canadians**
5327:25 5338:13
5347:20 5352:1

**Canadians'**
5310:5 5322:18 5323:4
5328:9

**candidly**
5294:7

**candor**
5214:22

**capable**
5259:1

**capital**
5196:1

**car**
5272:4 5308:17

**cardinal**
5203:24

**cards**
5220:21

**care**
5295:4

**careful**
5173:24 5269:15

**carried**
5207:19

**carries**
5161:3,5 5310:12
5311:7

**carry**
5312:22 5331:8

**carrying**
5292:5

**case**
5150:25 5156:15
5159:19,22 5163:24
5164:2,4,20 5165:1,2
5167:8 5170:9,10,25
5175:8 5176:17
5177:20 5189:16
5193:20 5194:12
5200:25 5202:19
5203:16 5204:4,18

5208:21 5211:25
5212:9,16 5214:7,18
5219:15 5220:5 5231:7
5233:18 5238:14
5240:18 5242:23
5248:6 5254:24 5256:6
5257:15,24 5258:22
5259:6 5261:12
5262:13,19 5263:3
5264:6 5268:13,16
5270:12 5277:3 5287:7
5295:13 5297:18
5298:9,22 5299:7,18,22
5301:7,10 5304:7
5306:3 5308:15,23
5311:10,22 5314:6
5318:1,3,4,5 5319:22
5338:12,14 5342:16
5343:6 5344:20
5346:12,15 5350:17
5352:19,23,24 5353:9,
10,11 5354:4 5356:11,
18 5357:8 5359:4
5363:21 5371:20
5372:11 5381:8,12
5384:22 5385:16
5386:5,8,17,19,20,21
5387:18 5388:8
5392:14,16,21 5393:1

**cases**
5163:21 5170:6,9
5274:22 5342:10
5346:21 5388:19

**cash**
5224:4 5247:15
5248:18 5385:19,21,24
5387:10,11

**catalog**
5215:3

**catastrophic**
5212:21

**catch**
5291:15

**categories**
5349:21

**caused**
5269:24

**CCAA**
5384:6

**CCC**
5176:17 5195:14

5201:19, 5210:20
5224:10 5241:12
5243:11 5245:5,7,17
5249:10 5252:1 5255:5
5256:4,14,19 5258:2
5260:1,6 5262:2,4,7
5277:1 5325:22 5370:3
5376:6

**CCC'S**
5201:10 5226:17,24
5244:9 5246:6 5248:20
5251:23 5261:9
5369:23 5371:19

**ceased**
5165:8

**Centerra**
5355:13,19 5356:1

**central**
5212:15 5220:4
5236:18 5357:3

**centrality**
5150:21

**cents**
5243:17,19 5253:4,7,
10,24 5254:5 5261:4
5275:19,21

**CEO**
5343:15

**CEO'S**
5233:14

**certainty**
5249:19

**CERTIFICATE**
5395:1

**certify**
5395:4

**cetera**
5159:19 5174:14
5315:1 5330:18

**change**
5165:4,6,12,15 5175:1
5177:24 5178:4
5183:16 5184:21
5186:2 5220:16,17
5258:20,21, 5269:25
5285:11 5317:6
5333:15 5335:14

**changed**
5165:13 5258:19,22

5266:11 5269:23

**changing**
5181:17 5184:22

**Chapter**
5255:13

**characterizations**
5151:9

**characterizes**
5167:5

**chart**
5231:14 5243:4,8,11
5245:4 5247:16
5264:15,23 5265:15
5266:6 5275:18
5280:25 5261:13
5284:5 5293:19
5364:11,12,16 5365:21
5366:7

**charts**
5365:1 5370:22

**check**
5193:10 5246:16

**Checknita**
5309:24

**cherry-picked**
5261:18

**Chief**
5234:2,5,7 5348:19

**choses**
5312:19 5314:3

**chronology**
5366:2

**Circuit**
5240:16 5255:11
5256:6 5257:13

**Circuit's**
5255:4 5257:21

**circumstances**
5161:13 5205:22
5206:11 5258:15,21,22
5330:25 5368:22
5381:25 5393:4

**cite**
5216:3

**cited**
5163:21 5174:12
*5176:17*

**citing**
5227:25

**claim**
5184:4 5190:23 5201:2
5217:1 5230:13,14,
5238:15 5239:10
5242:1 5265:20
5292:21 5309:11
5364:9 5386:14,17
5392:4

**Claimants**
5380:10

**claimed**
5259:24 5372:17

**claims**
5227:9 5229:20 5230:5,
23 5236:19 5238:24
5239:11 5241:24
5242:3,6,7,16,17
5244:15,20,23 5246:13
5247:7,10 5249:3,5,13,
15 5251:13,20 5252:17,
21 5253:19,20 5255:25
5258:1,19,20,21,23
5260:4 5263:25
5385:16 5386:5,13,17,
18,20, 5393:21 5394:8

**clarifying**
5286:15

**class**
5372:14 5373:1

**classic**
5205:7 5274:10

**clause**
5165:4,5,11 5192:7
5223:10 5288:21
5289:3 5308:20

**clear**
5205:15 5212:25
5213:5, 5218:15
5219:23 5233:11,25
5234:3,5,14 5235:11,23
5236:17 5240:7,20
5249:24 5250:21
5268:24 5275:13
5282:3 5292:1 5299:12,
13 5300:10 5301:17
5303:11 5319:22
5339:8 5355:11,15
5388:22 5390:3,20

**clearer**
5219:2

**client**
5389:21

**clients**
5226:7 5313:21

**cling**
5260:11

**Clive**
5272:23 5273:12
5322:3 5390:6

**close**
5270:11 5349:14
5378:18

**closely**
5327:4 5381:15

**closing**
5156:15 5279:4
5389:15

**co-counsel**
5225:11

**Code**
5384:5

**cognizable**
5310:7 5311:2

**Coleman**
5150:2 5211:13,17,19,
21,23 5217:4,7 5221:8
5222:6 5224:8,9,14,17,
20 5293:2

**collaborative**
5236:23 5251:7

**collaboratively**
5251:1

**collateral**
5207:3

**colleague**
5150:2 5226:21
5279:16 5284:13
5288:3 5294:19 5296:1
5360:4 5370:3

**colleagues**
5274:24 5284:18

*Collection*
5309:6

**collective**
5219:13

**collectively**
5212:16 5219:5

**column**
5245:5,7,8 5264:16
5265:3 5367:14

**commenced**
5216:14 5263:17

**commencing**
5149:1

**commensurate**
5364:4

**comment**
5308:24

**comments**
5216:24

**commercial**
5274:10,17 5320:6,8
5322:13 5328:7 5343:8,
12

**commercially**
5229:9 5247:8 5274:4

**commit**
5274:5

**committee**
5216:4 5217:5 5225:10

**common**
5158:8 5191:6,8
5255:17 5346:15
5392:17

**commonly**
5157:23

**companies**
5250:5 5263:23
5324:11,16 5325:14
5334:5 5363:20 5374:4

**company**
5233:11 5237:6,9
5249:14 5250:4,8
5251:21 5261:15
5272:6,8 5274:12
5277:9 5302:18
5306:17 5339:18,19
5340:5,16,17 5343:15
5345:10 5353:19,20,25
5354:10,11,25 5361:7,
9,17,18,23,24 5366:6
5367:3,7 5369:22
5387:11

comparative
5208:18

compared
5366:11

compelling
5362:4 5365:8 5372:24

compendium
5150:22 5155:21
5156:1

compensated
5181:9 5263:8

compensating
5182:4

compensation
5179:2,6 5180:12
5190:10,16 5263:5
5282:7 5327:11,15
5330:21

competent
5392:2

competing
5151:9 5153:16
5262:11

competitor's
5198:21

competitors
5198:20

complete
5163:13 5170:5 5310:9
5311:4

completely
5211:10 5286:5
5307:18 5362:24
5363:1 5371:15 5392:9

completion
5318:8

compliance
5329:19

complicated
5271:23 5312:3

complied
5320:15

comply
5329:24,25

compound
5160:2,4

computed
5300:5

Computershare
5164:2 5165:1

concept
5229:15

concepts
5390:23

concern
5377:18 5378:7

concerned
5151:5 5271:9 5331:22
5374:18

concerns
5270:19 5332:1

concession
5216:19

conclude
5211:6 5226:25 5237:3
5249:18 5257:13

concluded
5296:2 5345:22

concludes
5264:9

conclusion
5246:18 5261:20
5267:21 5345:1
5361:21 5368:6,23,25
5372:11

conclusions
5203:17 5245:14
5268:10

condition
5158:12 5213:19

condo
5318:6

conduct
5150:4 5186:14,17
5352:6,17 5357:9,11,13
5359:3,7,8

confer
5157:20

conferring
5157:24

confers
5190:2

confidentiality
5174:14 5198:23
5339:17

confirm
5285:21 5292:3
5390:16

confirmed
5284:22 5363:10

confirming
5287:20 5290:2

confirms
5283:23 5285:2
5290:22

conflict
5187:1 5217:17
5284:20,24 5285:4
5287:8,12,14 5342:8

confront
5258:18

confusing
5158:2 5347:5

confusion
5269:24

connection
5170:12 5195:24
5218:12,24 5242:13
5266:6 5318:10 5342:9
5363:15

connote
5155:15

consensual
5220:10 5382:9

consensually
5219:8

consent
5167:17

consequence
5393:8

consequences
5165:6 5271:10

consideration
5152:18 5166:4
5188:20 5255:5 5264:3
5271:13 5273:23
5390:10

consideration-
making
5259:16

considerations
5240:8 5294:6

considered
5205:22 5345:23,25

considers
5196:15 5381:7

consignment
5309:16

consistency
5174:13

consistent
5174:15 5177:16
5201:6,14 5206:21
5228:3,25 5233:1
5332:19 5351:17
5364:1,5 5372:12

consolidated
5256:2

consolidation
5240:23 5252:3,4
5255:14,16 5256:8
5257:23,25 5388:1,4,6,
17

constitute
5330:25 5383:2

constitutes
5190:9 5217:16

constituting
5156:24

constraints
5384:15 5388:14

construct
5255:16

construction
5285:24 5318:8,11,20
5319:7,10,11 5320:1

constructive
5387:22 5392:12,16,19

consulted
5376:17

consummation
5219:12

contained

5213:13,15 5393:12

**contemplate**
5391:12

**contemplated**
5166:12

**contemplates**
5166:3

**contemporaneous**
5365:11

**contends**
5185:9,10

**content**
5170:2

**contention**
5255:2 5303:7

**context**
5151:8 5184:5 5205:13
5209:11 5217:14
5230:12,16 5231.6,24
5237:11 5239:6
5240:18 5270:17
5290:11, 5292:14
5330:7 5386:5 5387:24
5389:4

**continents**
5262:17

**continuation**
5199:19

**continue**
5199:9,10 5229:21
5291:9

**continued**
5322:3

**continues**
5351:5 5362:3

**continuous**
5179:12 5180:17

**contra-distinction**
5155:17

**contract**
5172:4 5205:24 5206:6,
10 5229:8 5258:24
5260:18 5274:25
5281:7,8 5282:11
5284:18,25 5286:11,16
5287:17,21 5288:5,8
5289:3,23 5290:20
5291:10,21 5292:17,18,

23 5293:4 5299:18,23
5306:5 5320:2,7
5337:17 5338:16
5346:25 5357:14,16,20
5359:5

**contracting**
5205:14

**contracts**
5285:10 5293:6,8,9
5299:20 5304:14
5339:7 5341:25

**contractual**
5169:19 5177:14
5181:1 5203:22,24
5204:4 5241:8,22
5243:1,16 5244:4
5245:19 5246:8
5258:25 5260:12,25
5281:4 5282:20
5287:14 5293:24
5297:20 5301.15
5359:8

**contractually**
5242:5 5279:12 5363:9,
10

**contradict**
5177:24

**contradicted**
5275:22

**contradicts**
5191:22

**contrary**
5180:7 5261:5 5307:18
5315:15 5325:14
5342:22 5345:6

**contrast**
5175:20 5222:4 5231:2
5235:17 5243:11
5246:20

**contributed**
5250:12 5294:13

**contributes**
5322:21 5330:14

**contribution**
5153:14 5154:4 5210:6
5229:4 5243:14
5248:16,17 5250:6
5251:7 5261:18,22
5273:24 5280:17
5325:5,19 5330:22

5347:15,19 5348:7,8,15
5361:10 5362:8 5364:2

**contributions**
5326:24 5347:14
5361:15 5364:4,21
5365:16

**control**
5156:25 5165:7
5236:18

**controversial**
5342:6

**controverted**
5275:14

**conundrum**
5331:12

**convenience**
5207:2 5236:14

**convenient**
5202:25 5358:3

**convention**
5223:4

**convey**
5313:19

**conveyed**
5158:11

**convince**
5320:14

**convinced**
5308:18

**Cooper's**
5321:12

**cooperation**
5262:16,18

**copy**
5182:17

**Cordo**
5375:16

**core**
5213:20 5243:4

**Cork**
5170:9

**corner**
5310:23,25

**corners**
5348:17

**Coming**
5254:20,24 5255:4,11
5266:5,7,9 5257:22
5259:7,21,24 5380:20

**Corp**
5301:8

**corporate**
5251:2 5252:5 5256:12,
16 5257:1,9

**corporation**
5165:8 5319:6

**correct**
5156:3 5183:24
5187:22 5188:2
5190:19 5207:15
5216:8 5217:7 5221:9
5231:13 5245:20
5264:21 5265:13
5289:14 5303:5,25
5304:21,22 5315:2
5321:7 5357:21
5362:10 5395:13

**correction**
5348:24

**cost**
5175:24,25 5199:17
5262:21 5273:18
5338:1

**costs**
5151:23 5152:18
5207:6,19 5208:25
5247:7,10 5273:7
5330:15 5389:12,20,22

**counsel**
5203:8 5227:23
5316:25 5390:7

**countries**
5330:9 5373:14

**couple**
5151:3 5170:20 5199:3
5296:19 5339:12

**court**
5149:3,5,7,11,14,16,21
5150:17 5151:4
5155:18,25 5156:2,6,
10,12,17 5162:5,8,18
5164:13 5165:10,14,16
5166:15,21 5167:9,10
5168:25 5169:5 5170:7
5173:9 5174:5,9,24

5175:4 5176:10,21
5177:2,6 5180:11
5181:21 5182:11,15,18,
21,25 5183:21 5184:1,9
5186:4,16,21,24
5187:5,24 5188:3,12
5189:1,5,8 5190:3,19
5191:18,25 5192:3,22
5193:2,6,12 5194:1
5197:2,7,24 5196:4,10,
15 5199:2,21 5200:10,
15 5201:18,22 5202:2,
5,8,14,20 5203:2,3,6,8,
12,18 5204:5,8
5205:17,20 5206:15
5207:8 5209:19,25
5210:1,12,15,24,25
5211:3,19 5214:15
5217:4 5218:1,7 5221:4
5222:3,25 5224:8,11,
15,18,20,24 5225:2,4,8
5226:20 5228:16
5229:22 5231:10,20
5232:19 5233:3
5239:18,19,21 5240:1,
2,11,16,22 5241:23
5242:8 5245:1,4,16,22,
25 5246:3 5247:25
5248:7 5252:25 5253:7,
14,22 5254:21 5255:12,
15 5256:24 5259:22
5260:14 5261:7,12,14,
16 5264:8,10,11,14,22,
25 5265:8,23,24
5266:10,16,24 5267:1,
2,9,11,13 5268:14
5270:10 5274:14,22
5276:11 5277:6,16,19,
22,23 5278:2,5,7,11,13,
15,20,23 5279:1,8
5280:2,5,10,14 5285:23
5286:6,21,24 5287:18
5289:5,11 5290:8
5291:1,14,23 5292:7
5295:2,17,21 5296:6,7,
8,12 5297:22 5298:1,2,
5,7,8,15,20,24 5299:3,
24 5300:2,23 5301:10,
11 5303:1,6,19 5304:18
5305:3,5,8,16,25
5306:1,11,13 5307:3,
12,15 5308:2,6,10,23
5309:1 5310:8,24
5311:3 5312:1,5,9,11,
24 5313:10,14 5314:11,
18 5316:23 5317:3,9

5318:1,2,15,16 5319:17
5320:3 5321:1, 5323:8,
11,15 5324:10,15
5326:2,6,10,13
5331:11,25 5333:17,21,
22 5334:8,14 5335:5
5336:20 5337:3 5339:9,
23 5340:25 5341:7,12
5342:4,17 5343:7,13
5344:7,25 5345:4,21
5346:7,10 5348:11
5349:24 5351:3,8
5352:5,9,12,15,25
5353:3,4,6,7,23 5354:3,
4,9 5355:6 5356:8,14,
18 5357:1,6,18 5358:1,
5,6,10,12,13,17,23
5362:18,20 5365:4
5368:7,17 5369:2,8
5370:24 5374:15,21,23
5375:3,5,17 5376:21
5377:1,5,11,18,21,22
5378:2,9,10,22 5379:1,
12,16,19,22,24 5380:1,
2,4,15 5381:18 5382:14
5383:19 5385:9
5386:10,14,18,23
5391:19 5394:2,13,17,
18,20

**Court's**
5187:20 5168:11
5220:3

**courtroom**
5240:4 5257:16
5349:11 5379:10
5381:14

**courtrooms**
5225:7

**courts**
5150:6,22 5153:18
5154:15 5176:18
5194:7 5195:12
5202:16 5205:9,
5206:13 5207:20
5211:16 5212:5,8,10,11
5213:6,12,14,17,22,24
5214:2,23 5216:2
5219:25 5220:12
5221:11,16 5225:22
5227:2 5229:1 5231:5
5233:18 5240:13
5243:12 5244:17
5246:12 5249:17,18,25
5250:14 5251:12,22

5252:8,21,22 5254:15
5259:11 5260:3,24
5261:14 5262:7,9,10,19
5263:23 5264:1,5
5274:18 5275:16
5279:3 5281:11
5282:12 5285:9
5288:24 5296:5
5297:12,19,24 5299:19
5318:12 5344:15
5347:4 5358:22
5364:25 5367:5
5369:15 5374:12
5375:16 5378:21
5381:7,10,21 5382:5,8,
9,11,13,18 5383:10,11,
21 5364:8,21 5388:11
5389:5 5391:13

**Courts'**
5191:17 5229:1
5289:18

**coverage**
5164:12

**covered**
5272:20

**covering**
5241:5

**covers**
5280:16

**Covington**
5343:8,17,18,22
5344:10 5345:11
5352:23,24 5356:18

**Cox**
5210:22

**create**
5160:12 5163:3
5174:20,25 5177:21,23
5178:8 5180:7 5181:19
5185:7 5186:22 5191:8
5196:11 5207:2 5219:6
5247:8 5284:20 5287:8,
12 5288:9 5338:10

**created**
5153:7 5159:15
5165:17 5175:9,11
5294:18 5347:8 5364:3
5365:25 5366:14,20
5367:10 5368:2
5393:13

**creates**
5206:15

**creating**
5180:4 5279:21 5288:7
5294:13, 5321:20
5322:9,21 5366:3

**creation**
5155:9 5159:13
5161:23 5162:13
5170:17 5191:2
5322:17

**credible**
5246:19 5271:15

**creditor**
5226:9 5229:20
5252:12 5257:19

**creditors**
5212:12,21 5222:8
5225:10 5230:20,24
5232:20,23 5242:4,25
5243:2,18,19,21
5244:14,16 5249:3
5251:8,13 5252:9,11,15
5254:1,5,9 5255:25
5256:20 5257:23
5258:12,14 5262:8,22
5264:4,16 5275:17,20
5380:10 5384:24

**Crichlow**
5267:14, 5277:16,20,21
5317:14,18

**Crichlow's**
5292:10

**critical**
5212:7 5215:20 5240:7
5251:15 5259:3 5284:8
5293:5 5333:14 5346:3

**critically**
5153:23

**criticism**
5370:4 5372:3,4

**criticisms**
5229:4

**criticized**
5370:2

**cross-border**
5382:10

**cross-examination**
5275:25 5325:23

**cross-examined**
5235:11

**cross-licensing**
5236:19

**crossover**
5244:19,21 5258:3

**CRR**
5395:3,4

**crystal**
5218:15

**CSA**
5192:21

**CSAS**
5193:15

**CSFB**
5259:21

**CSR**
5395:3,4

**CTO**
5348:19

**cumulative**
5255:22

**curing**
5199:12

**current**
5178:20 5258:11,17,18

**Currie**
5233:24 5238:1

**Currie's**
5234:14

**custody**
5156:23

**customer**
5373:11

**customer-related**
5369:12,17,19,23
5370:1 5373:21

**customers**
5364:23 5369:11
5371:22

---

**D**

**damages**
5201:4

**dance**
5359:11

**dart**
5349:12

**data**
5365:9,15, 5366:18
5367:6 5368:24

**database**
5341:20

**date**
5213:2,4 5220:21
5247:25 5248:2
5335:20 5395:9

**Dated**
5395:15

**dates**
5365:24

**David**
5267:16

**day**
5223:2 5238:19
5268:15 5274:21
5322:23 5324:6
5348:13 5377:6,8,9
5378:8 5388:15 5394:9
5395:15

**day-to-day**
5335:13

**De**
5236:15 5395:21

**dead**
5229:20

**deal**
5163:22 5164:3
5200:12 5214:6
5216:12 5219:14
5224:3 5226:17,22
5229:15 5231:23
5236:18 5237:14
5246:13 5290:5 5291:7
5297:1, 5307:7
5317:11,13 5322:14
5326:11,14,17 5329:4
5334:1 5335:12 5336:5,
9,13 5341:21 5349:7
5381:3 5388:4

**dealer**
5308:17

**dealing**
5165:10 5169:1
5173:20 5221:23
5227:3, 5236:20
5237:10 5290:11,13,22
5296:21 5332:11
5333:12 5334:5
5336:21,22 5363:2
5388:25

**dealings**
5345:10

**deals**
5160:20 5190:22,24
5191:1,2,3 5201:21,23
5229:11 5267:4
5295:18 5298:14
5328:9,20 5329:9
5331:19 5334:17,18
5336:19 5351:22
5352:19

**dealt**
5186:11 5257:2
5300:13 5307:23
5343:14 5350:12
5351:22 5353:24
5384:19 5390:2

**DEANA**
5395:3,19

**dearly**
5260:11

**debate**
5155:6 5231:4 5297:10
5299:14 5338:2 5388:5
5389:1,11

**debates**
5206:18 5337:15

**Debenture**
5376:8

**debt**
5237:23,25 5259:4
5263:25 5386:6

**debtor**
5249:23 5250:24
5255:14 5383:8

**debtors**
5149:24 5151:15,17
5153:6 5161:22,23
5189:10 5191:1
5206:23, 5211:24
5213:11,14 5215:18

5216:7,11 5217:20,25
5220:18,19,20,22
5221:15 5222:24
5237:17 5238:15
5243:10 5245:6,8,18
5248:14 5256:1,7,11
5258:12 5278:25
5285:13 5294:9
5296:24 5304:5
5307:11 5314:10
5315:16,17,23 5316:2,6
5320:2 5321:7 5322:11,
15 5323:6 5324:9
5327:23 5328:24
5338:21 5339:1 5376:5

**debtors'**
5154:9 5259:25
5316:13 5323:20
5325:13 5385:16

**decade**
5280:18

**decide**
5150:9 5164:20,22
5306:4 5308:24 5319:4
5378:21 5388:24

**decided**
5150:17 5153:12
5221:19 5382:11

**decidedly**
5179:19

**decides**
5250:15

**decision**
5159:18 5160:6 5162:2
5163:23 5164:1 5165:5
5167:10 5170:7
5205:18 5226:10,20
5250:2,6 5255:4
5297:25 5298:2,23
5301:9 5306:2 5307:21
5308:9,11,25 5319:10,
12 5343:7, 5344:12
5353:9,13,16 5354:7

**decision-maker's**
5206:3

**decisions**
5240:17

**declaration**
5204:22

**declaratory**

5223:15

**decline**
5366:6 5367:4

**declined**
5266:3,14

**dedicated**
5262:25

**dedication**
5264:6,8

**deduct**
5318:10

**deductions**
5319:8

**deemed**
5221:18 5392:3

**deepen**
5206:2

**deeper**
5250:13

**deeply**
5382:3

**defamatory**
5223:3

**defending**
5236:19

**defensible**
5230:9

**defer**
5296:1

**deferred**
5215:20 5216:1
5375:23

**define**
5186:7

**defined**
5157:8 5180:2 5183:8
5185:6,20 5186:6
5190:9 5283:4,9,
5302:10 5309:4 5310:2

**defines**
5156:21

**defining**
5195:20

**definition**
5156:19,20 5157:15,16
5283:11 5307:15,22

5310:1,4,15,24 5314:2
5328:14 5371:1,3,7

**definitions**
5157:22 5164:14
5187:10 5308:24

**Delaware**
5150:3 5224:22 5225:6,
14 5239:16

**deletes**
5188:5

**delineate**
5291:2

**deliver**
5308:18

**Delta**
5343:15,17,19,20,21
5344:1,8 5345:25
5346:16

**deluding**
5230:10

**demonstrate**
5155:12 5227:13

**demonstrated**
5217:13

**demonstrates**
5243:11

**demonstrative**
5225:1 5228:17
5264:15 5280:8,15
5369:12

**demonstratives**
5225:6 5280:7 5380:13

**denote**
5270:13

**denude**
5169:25

**deny**
5260:1 5281:7

**depending**
5330:24

**deployed**
5385:23

**deposition**
5234:25

**depositions**
5389:13

**deprive**
5212:11

**deprived**
5160:5

**deriving**
5151:24

**describe**
5158:24 5238:23

**describes**
5158:9 5182:3 5255:15

**describing**
5180:4 5246:6

**design**
5344:18

**designated**
5293:21

**designed**
5196:7 5274:11
5385:24

**desk**
5338:17

**detail**
5200:22 5269:15
5385:14 5389:3

**detailed**
5195:12

**determination**
5253:20 5277:7 5346:8

**determinations**
5150:8,11 5154:10
5260:8

**determine**
5153:13,18 5165:16
5182:2 5232:6 5233:19
5244:18 5252:15
5260:5 5300:3 5333:8
5357:1 5383:12 5384:2,
4

**determined**
5203:25 5230:16
5251:15 5252:13
5327:21

**determining**
5179:1 5220:8 5388:13

**develop**
5180:23 5181:13
5247:11 5250:9,10,12

5322:6 5332:23
5344:18

**developed**
5171:16 5195:2 5196:7
5236:22 5250:25
5269:19 5323:22
5340:14

**development**
5179:4,13 5180:17
5232:15,16 5235:4,7
5272:17 5274:6,7
5282:9 5322:22
5330:16

**deviate**
5206:14

**dictate**
5252:12 5260:7
5271:15

**Dictionary**
5155:22 5163:5,7
5164:14 5307:11
5308:13 5309:5
5310:16,17,22 5311:16,
17 5313:15 5314:9
5315:19

**difference**
5245:6,22

**differences**
5245:14

**differently**
5208:12,13 5210:18
5300:9 5313:25
5336:24

**differs**
5240:22

**difficulty**
5159:11

**diminish**
5290:17

**direct**
5194:19 5279:24
5294:25 5298:21
5306:24 5314:9
5346:18 5349:22
5350:16 5352:21

**direction**
5391:7

**directly**
5296:20 5306:10

5310:17 5317:14
5326:17 5384:12
5389:1

**Director**
5390:8,9

**disability**
5263:4,7

**disabled**
5230:19 5243:22

**disagree**
5233:7 5269:12,13
5332:19 5375:6

**disagreement**
5341:15,18

**disassemble**
5379:10

**disclaimed**
5335:21

**disclaims**
5171:23

**discordant**
5366:10

**discount**
5209:6

**discoveries**
5340:13

**discovery**
5213:24 5222:13

**discretion**
5384:13,16 5385:2,11,
12

**discretionary**
5383:22,25 5384:7,8

**discuss**
5240:9

**discussed**
5164:15 5177:19
5181:6 5196:3 5200:21
5221:1,2 5317:16
5333:7 5350:3,4

**discussing**
5257:19 5364:13

**discussion**
5271:3 5305:22 5307:6
5311:20 5351:1 5356:5,
15,17 5358:20

**discussions**
5329:18

**disingenuous**
5276:17

**dismissed**
5292:13

**disposal**
5309:12

**dispose**
5156:25

**disposed**
5184:10,16

**disposition**
5183:5

**dispute**
5150:18 5229:16
5230:7 5239:8 5240:7
5268:19 5276:12
5297:6 5389:23

**disputed**
5215:18 5269:3,16

**disregard**
5212:8 5213:17

**disregarded**
5280:21

**disregarding**
5253:8

**disrespectful**
5234:21,22

**dissertation**
5387:7

**distinction**
5177:15 5259:7 5363:5,
20

**distract**
5212:4

**distraction**
5194:9

**distressed**
5259:3 5263:16

**distribute**
5244:13

**distributed**
5220:7 5325:4

**distributes**
5181:5

**distribution**
5277:9 5373:11
5387:17

**distributions**
5230:22

**dividend**
5392:3

**dividends**
5368:18

**Division**
5312:1

**Divisional**
5343:13

**divvy**
5350:6

**doctrine**
5154:12 5223:5

**document**
5150:21 5184:24
5204:16 5220:9
5301:11,12 5302:3
5338:8 5339:12,20
5341:4 5368:3 5391:12,
18 5392:7

**documentation**
5259:15

**documents**
5182:8 5227:5 5239:3
5338:15

**dollar**
5230:13 5238:15
5239:7,10,11 5243:18,
19 5253:4,8,10,24
5261:4 5275:20,21
5349:9

**dollars**
5230:14 5237:22
5250:9,10 5265:6,9
5322:17,20 5323:1
5346:13 5389:11
5392:4 5394:8

**dominion**
5309:9

**Doolittle**
5220:25

**door**
5379:12,13

**double-dip**
5246:9

**doubt**
5181:22,24 5219:10
5320:19,24,25 5321:22
5336:10

**downside**
5179:17 5180:1,3,5
5181:13 5182:4 5274:8

**draft**
5304:19,24 5305:14
5306:15 5307:4

**drafted**
5181:25 5292:20
5304:24 5308:14
5320:13 5392:8

**drafting**
5390:13

**drafts**
5305:9 5307:1

**dramatically**
5258:19

**drastically**
5316:1

**draw**
5199:8

**dress**
5214:19

**drill**
5348:14

**driven**
5181:22 5331:15

**driver**
5179:5 5232:17

**drop**
5265:2 5293:18

**dropping**
5291:8

**drove**
5370:6

**drumbeat**
5372:4

**due**
5235:21 5247:19
5249:22



**dumb**
5332:4 5333:20

**dumping**
5238:23

**duty**
5160:9 5171:24
5187:19 5214:22

**E**

**earlier**
5173:16 5186:1 5187:2,
14 5220:21 5246:22
5270:7 5279:5 5304:15
5316:17 5388:15
5391:20

**early**
5304:23 5366:5

**earn**
5209:2

**easier**
5151:1

**easy**
5257:13

**economic**
5205:4 5217:10,16
5270:24 5292:14
5393:7 5394:4

**economically**
5393:8

**Eden**
5235:25 5331:16
5334:10

**effect**
5158:9 5165:18 5169:9
5177:18 5184:8,17
5194:3 5209:16
5210:19 5216:5
5388:16

**effective**
5170:24 5171:13

**effectively**
5169:24 5206:15

**efficient**
5267:25

**effort**
5247:6 5257:21

**efforts**
5263:1

**elegant**
5278:3,5

**element**
5190:23 5236:3

**elements**
5156:22 5186:14
5232:12

**Eli**
5167:8 5170:6 5194:12,
20 5297:25

**eliminate**
5256:20

**eliminated**
5256:18

**elimination**
5263:6

**Elliott**
5177:19

**eloquent**
5241:3 5276:23 5387:7

**else's**
5168:23 5312:16

**emails**
5375:14

**emanating**
5255:17

**embarrass**
5332:2

**emblazoned**
5154:22

**embodies**
5248:23

**embodying**
5195:18

**EMEA**
5150:10 5151:15,17
5152:6 5153:1,5,25
5154:9,18 5161:23
5169:3,13,15 5171:19
5185:9 5190:25 5191:5
5192:1 5193:7 5206:23
5220:22 5227:16
5231:1 5236:16,17
5237:20 5239:11
5241:25 5243:13,19

5248:12,14 5254:18
5261:22 5278:25
5294:2,11,16 5296:24
5308:1 5315:23
5322:15,20,24 5324:5,9
5344:5 5376:7

**EMEA'S**
5190:20 5286:5

**eminent**
5381:13

**employed**
5237:6 5295:9 5341:20
5382:21

**employee**
5193:22 5339:5,16,19,
20 5341:21 5344:17

**employees**
5193:18 5230:19
5232:25 5238:17,18
5243:22 5262:23
5337:22 5338:8,22
5341:13,14,16,19
5348:1

**employer**
5192:14 5193:21
5295:7 5337:18
5338:19 5339:7
5342:23 5344:16
5346:15

**employer's**
5338:11

**employment**
5338:9 5339:6,15
5340:8,15,18

**enable**
5244:13

**encapsulate**
5196:23

**encapsulation**
5152:24

**encounter**
5188:8

**encourage**
5263:21

**end**
5155:24 5162:20
5209:25 5223:2
5238:19 5246:15
5250:19 5265:9

5268:15 5276:22
5283:3 5292:1 5334:12
5355:1 5378:7

**ended**
5371:6

**ends**
5185:19,20

**enforce**
5353:18

**enforceability**
5252:16 5260:6

**enforceable**
5252:8,22 5310:8
5311:2 5342:21 5343:1,
2

**enforcement**
5256:21 5353:17

**enforcing**
5207:7 5344:10

**engaged**
5359:7

**engaging**
5381:3

**English**
5159:24

**enhancement**
5330:16

**enhancements**
5252:18

**enjoy**
5161:1 5168:2 5309:7

**enjoyed**
5162:10 5309:20

**enjoying**
5175:15 5282:22

**enjoyment**
5313:6

**enjoys**
5185:4

**enormous**
5264:7 5294:6

**enrichment**
5387:22 5392:13

**ensure**
5385:25

**entailed**
5216:17

**entangled**
5387:5

**enter**
5159:25 5160:12
5181:7 5188:21 5274:4
5321:15 5322:14
5328:8

**entered**
5286:14 5300:11,21
5306:7,8 5317:7
5343:25 5345:13

**entering**
5297:16 5300:15

**enterprise**
5251:2 5272:18 5385:7

**Enterprise-wide**
5390:15

**entire**
5175:10 5185:9
5189:24 5191:13,24
5192:7 5206:10 5207:4
5215:2 5219:15 5234:9
5238:12 5288:21
5289:3,4,15 5299:19
5300:15 5329:18
5347:20,22 5359:12
5378:15 5386:1 5395:8

**entirety**
5188:5 5309:11

**entities**
5153:3 5255:19
5256:25 5257:10
5274:2 5322:1,2,5
5330:8,9 5331:7
5360:15,23 5373:7,8,
18,23 5385:8 5389:19
5390:1,12 5393:13

**entitled**
5160:24 5221:25
5253:7 5260:2 5271:12
5272:9 5288:18
5310:14 5311:9 5313:1
5327:6,19 5328:15,25
5330:2 5331:5,6
5354:24 5374:9

**entitled'**
5312:14 5314:24

**entitlement**
5219:7 5221:3 5327:2
5383:5

**entitlements**
5189:23

**entity**
5152:6 5247:9 5251:3
5252:6 5256:17
5257:14 5275:10
5385:18 5387:2

**entity's**
5252:7

**entrepreneurial**
5179:10 5180:15
5271:4 5287:24

**environment**
5337:2

**equal**
5189:22 5327:20

**equally**
5204:12

**equals**
5304:6,7 5323:24

**equating**
5159:11

**equipment**
5337:25

**equitable**
5159:14 5161:2,8,9,11,
17,24 5162:10 5164:17,
21,23 5170:17,22
5174:20 5175:6,15,22
5176:2,12,25 5177:9,11
5178:2,11 5179:21
5181:19 5183:18
5184:7 5185:4,8,24
5186:5,8 5187:13,16
5189:17 5222:22
5226:24 5227:7,15
5241:20 5243:8
5244:12 5249:10
5262:3 5270:5,25
5272:5 5282:22 5295:8
5303:22 5304:17
5311:11 5314:14
5387:23

**equitably**
5264:4 5310:14 5311:9

**equity**

5158:22 5161:1,15
5229:2 5255:17
5261:24 5265:11

**equivalence**
5159:5

**equivalent**
5157:14 5168:4,16
5194:13,16,17 5393:23
5394:4

**erased**
5255:24

**Ericsson**
5322:25 5324:6

**escrow**
5224:4

**essence**
5391:9

**essential**
5153:17

**essentially**
5209:20 5227:10
5243:3 5245:12,13
5247:22 5341:8

**establish**
5160:3

**established**
5213:2 5257:7

**estate**
5212:22 5217:23
5219:3 5222:8 5244:12
5249:1,11,12,16
5251:15,20 5253:15,16
5256:22 5276:20
5311:25 5312:3
5314:13

**estate's**
5252:20 5256:24

**estates**
5150:10 5161:8 5212:1,
12 5216:10 5219:5,13
5220:15 5227:8
5230:22 5242:4 5243:1
5244:16,18,22 5246:12,
14 5247:1 5251:8,12,14
5252:12,23,24 5253:19
5254:2 5255:14
5263:15 5276:9
5389:12,20 5391:1,5,10

**estates'**
5249:3 5393:9

**estimate**
5265:19

**estimates**
5248:10

**estoppel**
5215:3 5222:9,17,22
5223:4

**euphemism**
5238:22

**eureka**
5338:17

**Euro-excellence**
5170:10

**European**
5373:9,14

**evening**
5377:20,21,22

**event**
5165:3 5215:6 5220:24
5222:15 5332:7
5335:24 5389:25
5390:12

**events**
5238:15 5391:13

**eventually**
5331:22

**evidence**
5176:6 5192:17
5198:16,18 5202:17,18
5203:15,16 5204:13,15
5205:8,11,12 5206:2
5207:10 5212:3
5217:13 5221:5
5222:18,19,20,23
5226:14 5232:1,2,18,
23,24,25 5233:9,24
5234:1,3,6,15,18
5235:11,14,18,23
5236:16,25 5242:21
5248:11 5251:4 5253:2
5257:6 5258:9 5259:8,
11, 5260:17,18 5265:24
5267:5 5268:6,15
5275:13 5279:22,24
5280:17,20,24 5281:4
5283:22 5294:23
5295:1 5296:3,5
5300:10 5304:12

5306:4,6,10,22,24
5307:9 5319:15
5320:24 5321:9,11,23
5332:12 5341:13
5344:8,24 5345:8,22,24
5346:5,6,7,17,18,19
5347:8,23 5349:14,16,
17,23,25 5350:1,11,12,
16,18 5351:1,12,16,20
5352:21 5353:1 5355:6
5356:20,23 5358:22
5359:13,19 5362:3
5364:1,17 5366:22,23,
24,25 5368:11 5371:12
5372:25 5380:11
5386:7,22 5390:2,14

**evidenced**
5158:2 5238:1

**evidences**
5163:10

**evidencing**
5169:22

**evident**
5215:16 5231:3
5298:18

**exact**
5214:3 5336:14,25

**examination**
5266:7

**examine**
5361:4

**examined**
5176:1 5344:25

**examining**
5206:1

**examples**
5299:19

**exception**
5152:16 5372:19,23

**exceptions**
5234:10

**excerpt**
5157:17 5158:3,7,8,16,
18,21,24 5159:3 5163:9

**excess**
5211:8 5265:19

**excesses**
5381:21

**exchange**
5198:20 5375:14

**exclude**
5366:22,23

**excluded**
5173:23

**excludes**
5284:18 5367:20

**exclusion**
5164:9,16,18 5308:20

**exclusive**
5152:8,10 5172:16,24
5173:5 5174:3 5175:17,
24 5176:3,13 5177:3
5183:11 5187:12
5188:21,25 5205:6
5285:19

**exclusively**
5195:8 5236:2

**executed**
5288:2

**executives**
5308:18 5345:19

**exercise**
5199:8,20 5209:18
5383:22 5384:13,16
5385:10,11

**exercised**
5384:9

**exercising**
5151:24 5384:2

**exhale**
5318:24

**exhaustively**
5381:13

**exhibit**
5337:4

**exist**
5256:13 5285:22

**existed**
5188:24 5215:21
5333:6 5351:14

**existence**
5170:21 5188:17
5195:1 5216:6 5260:23
5269:18 5335:20

**existing**
5285:11 5320:12

**exists**
5164:23 5288:9

**expect**
5166:9,16,17,22,24
5180:8 5195:5 5219:4

**expectation**
5258:25

**expectations**
5253:3 5258:20,23
5259:9,12,23 5260:15,
17

**expected**
5263:3 5326:25

**expects**
5260:20

**expenditures**
5235:8 5367:4

**expenses**
5250:5 5318:10

**expensive**
5226:2 5263:22 5272:1

**experience**
5321:13 5333:19

**expert**
5241:14 5245:10
5258:20 5259:17
5266:7 5325:21
5334:11 5365:5,7
5369:24,25 5370:1
5371:19 5372:1
5389:13

**experts**
5232:2 5235:24
5245:23 5304:4
5329:16 5364:23
5369:18

**explain**
5158:21 5284:13
5288:4 5342:10

**explained**
5251:4 5257:24

**explicit**
5360:17

**explicitly**
5298:6

**exploitation**
5217:16 5324:24

**exploiting**
5207:7

**express**
5168:6 5194:15,18
5286:10

**expressed**
5190:18 5191:23
5206:5

**expressly**
5155:2 5173:23
5213:18 5256:12
5354:20

**extend**
5196:7 5275:12

**extensive**
5150:6 5214:15

**extensively**
5273:13 5275:11

**extent**
5153:24 5169:16
5172:1,2 5181:16
5197:4,12,13,18,25
5198:5,11 5200:6,23
5227:5 5330:11

**extra**
5182:17

**extra-contractual**
5227:12

**extra-contractually**
5363:11

**extraordinary**
5261:12 5262:16

**extreme**
5229:7,12,13,24 5230:3
5231:7 5240:11,14
5241:21 5243:12
5244:7 5246:19,24
5247:2,14 5248:13
5261:25 5263:19

**extremely**
5273:8,22

**extrinsic**
5202:17,18 5203:14,15,
16 5235:18 5280:20
5296:3 5332:12
5358:22 5359:12,18

**eyes**
5392:1

---

**F**

---

**face**
5215:17 5263:6
5325:13

**faced**
5209:19

**facetious**
5234:19

**fact**
5164:25 5173:14,15
5179:8,21 5181:15,19
5190:2 5215:25 5218:6
5225:16,18 5232:6,8
5233:21 5236:5,12
5237:15 5238:21
5239:9 5268:10 5271:8,
12 5272:10 5284:5
5290:4 5291:6 5297:11
5315:19 5316:13
5325:16 5331:9
5341:23 5346:10
5351:21 5353:23
5357:5 5359:13
5365:10 5371:9
5382:12,21 5384:25
5385:18 5387:15
5388:21 5389:16

**factor**
5388:21

**factored**
5242:15

**facts**
5225:20 5227:17
5228:2,3 5231:7,9,24
5233:7,8 5235:16
5237:2 5256:6,9,10
5330:24 5345:1
5365:19 5366:11
5369:20 5385:14
5387:17 5388:8 5393:1

**factual**
5205:11 5206:18
5207:12 5218:19
5227:6 5230:4 5231:25
5239:13 5287:22
5294:25 5350:18,20,22,
25 5351:9,25 5352:2

**failed**
5389:25

**failure**
5364:15

**fair**
5202:21 5226:10
5243:24 5244:1 5251:9
5262:5 5276:21 5356:8
5371:14

**fairest**
5272:13 5274:20
5277:11

**fairly**
5194:25 5230:21
5247:19 5263:7,10
5264:4 5380:21

**faith**
5222:21 5274:14

**Falconbridge**
5158:4,5 5171:1

**fallacious**
5160:23

**false**
5216:17

**familiar**
5189:5 5191:19

**family**
5363:7 5392:17

**famous**
5183:4

**fancy**
5262:20

**farm**
5392:23

**farmer**
5392:18

**fascinating**
5366:1

**fatal**
5223:9,10

**favorite**
5359:15

**favour**
5189:25 5378:23

**favourite**
5150:15

**feasible**
5221:18,22

**feature**
5382:23

**federal**
5255:17

**feel**
5220:22 5379:20

**FETZER**
5395:20

**fiduciary**
5160:5,9 5171:24
5187:19

**field**
5151:22 5152:15
5189:10 5196:2 5207:5
5208:9 5382:22

**fields**
5234:11

**fight**
5221:19

**fighting**
5214:11 5394:10

**figure**
5322:6

**filed**
5150:15 5215:11
5362:20

**filing**
5225:25 5235:14
5237:24 5258:9
5335:20

**filings**
5236:9 5266:10 5267:8

**filled**
5341:20

**finally**
5261:5 5275:7 5276:22

**finance**
5233:13

**financial**
5234:2 5343:18
5345:15 5361:23

**find**
5210:24 5339:10
5344:15

**findings**
5225:16,18 5232:5
5268:10

**finds**
5253:7 5371:19,21
5383:19

**fine**
5162:25 5248:8 5278:2
5295:17,25 5375:2
5380:1

**finish**
5344:23

**finishing**
5376:13

**firm**
5280:11

**firms**
5262:17

**five-year**
5366:9 5367:2,13,19
5368:8

**fixed**
5348:25

**flap**
5280:7

**flaw**
5393:5

**flawed**
5261:25 5382:3

**flaws**
5391:15

**flexibility**
5250:20

**flies**
5325:13

**flip**
5346:13 5355:5

**flow**
5203:21 5324:14
5382:8

**flows**
5210:6,8 5242:23

**focus**
5150:5 5207:24
5241:23 5242:19
5243:15 5293:3

**focused**
5240:15 5260:22

**focuses**
5211:25 5241:9

**focusing**
5242:16 5249:14

**folks**
5149:20 5224:22

**follow**
5150:13 5168:11
5358:20

**footnote**
5342:19

**foregoing**
5395:5,12

**foreign**
5353:17 5392:9

**forever**
5191:10

**forget**
5315:4

**forgive**
5156:7

**forgot**
5371:1

**form**
5256:15 5280:16
5301:5 5341:13 5360:1

**formality**
5236:13

**formalize**
5292:3

**formalizing**
5290:2

**forms**
5299:17

**formula**
5188:23

**formulation**
5194:20 5388:10

**fortified**
5187:6

**fortifies**
5176:23

**forward**
5207:21 5212:3
5227:22 5228:11
5229:5 5243:9 5316:5
5325:20,25 5360:1,12
5361:16

**forwarded**
5375:16

**fought**
5371:4

**found**
5163:23 5178:15
5252:22 5256:6 5332:9
5346:10 5382:7,8

**foundational**
5392:16

**Foundry**
5293:13 5324:25
5325:1,23 5361:12

**fourth**
5154:7

**France**
5151:16 5373:17,19,22

**Francey**
5163:24,25 5164:3
5307:20 5308:9
5309:20,22 5314:6

**frankly**
5219:22 5220:14
5241:4 5294:7 5325:16
5363:6 5368:20

**fraudster**
5164:7 5308:15

**French**
5361:7,9,17,23,24
5373:18

**frequently**
5274:17

**fresh**
5378:8

**friend**
5279:5 5281:9 5288:11,
23 5296:3 5335:9
5359:19

**friends**
5257:18 5280:8,20
5281:1 5285:8 5292:17
5310:16 5311:14

**front**
5301:11 5340:23

**fruits**
5324:23

**full**
5160:24 5163:12
5179:9 5180:15
5184:13,14 5223:8
5244:20 5263:15
5268:8 5276:18
5287:24 5310:21
5394:7

**fully**
5218:4 5241:7 5326:25
5332:24

**functions**
5233:15 5257:2
5330:13 5331:8

**fund**
5263:16 5343:8

**fundamental**
5213:1 5363:20
5380:15 5384:10,21
5391:8,22 5393:7,12,
14,16

**funding**
5191:3

**funds**
5244:13 5250:12
5251:11 5252:24
5253:17 5382:19

**fuss**
5349:15

**future**
5209:2 5220:10
5263:22 5350:7
5389:25

**G**

**gain**
5348:17

**gained**
5149:12

**game**
5222:10

**garnered**
5262:13

**gauge**
5208:20

**gave**
5160:15 5172:19
5177:14 5198:22
5208:25 5211:9
5223:19,20,24,25
5232:24 5235:10,11
5272:16,17 5275:4
5294:20 5299:12

**Gelber**
5318:1

**general**
5155:8 5244:14,15
5308:17 5359:2 5390:7

**generally**
5159:11 5383:17

**generate**
5249:10

**generated**
5248:24 5362:2 5388:4

**generates**
5373:1

**genesis**
5235:12

**genius**
5223:24

**gentleman**
5343:14

**geographic**
5233:15 5257:9

**German**
5159:20 5170:25
5175:8 5373:20

**Germany**
5373:17,20

**get all**
5331:9

**gift**
5362:10

**give**
5161:20 5166:9
5171:19 5172:22,23
5174:8 5181:10
5204:19 5209:14,16
5223:18 5224:22
5226:15,16 5237:2
5250:17,19 5265:18

5284:24 5288:12
5297:23 5313:4 5338:8
5341:11 5348:23
5350:7 5364:12
5366:16 6368:5
5370:19

**giving**
5157:19 5158:23
5181:11 5306:23
5324:8 5369:4

**global**
5227:9 5233:12 5235:9
5237:10,18 5238:25
5242:3 5249:14
5251:21 5252:3 5261:8
5365:15 5382:1
5383:15 5390:12

**goal**
5206:1 5372:12
5391:24

**going-concern**
5217:14 5270:17

**golden**
5366:3 5367:25

**good**
5149:5,7,9,22 5155:23
5211:19,20,21,22
5239:23 5240:2
5267:13,14,15,19
5268:1 5274:14
5278:13,15,16,18,20,21
5296:14,15 5319:3
5358:15,17 5370:18
5375:5 5387:2,3

**goodwill**
5364:24 5369:13,17
5371:22 5372:13,15,17,
20,21,25 5373:12,21

**Gottlieb**
5279:16 5284:13
5288:3 5294:19,22
5295:4,15,19,23
5296:1,8,9,13 5298:10
5299:4 5300:1,7
5303:5,10,23 5304:19,
21 5305:10,17 5306:21
5307:5 5308:4,8
5313:24 5315:2
5316:25 5317:5 5321:6,
11 5323:10,13,19
5324:13,19 5326:5,9,
12,16 5328:13 5332:1,

13 5334:7,13 5335:2,6
5336:23 5337:6
5339:11 5340:1 5341:2,
9,17 5343:2 5348:18
5350:1 5351:7,11
5352:8,11,14,18
5356:12,16 5357:12,21
5358:12 5360:4

**govern**
5357:23

**governs**
5156:4 5269:7

**grant**
5166:4,7 5167:1,3,21
5171:3 5172:9,25
5177:22,23,24 5178:2,
11 5183:10 5185:12,23
5187:13,15 5194:21
5284:17 5286:10,17
5287:9

**granted**
5151:18 5168:12,15
5171:10,25 5178:3
5196:13, 5199:24
5309:16 5339:6

**granting**
5158:9,11 5171:9
5183:15 5184:5
5187:12

**grantor**
5167:4

**grants**
5167:22 5176:3
5185:16

**graph**
5370:22

**graphic**
5360:1

**gratuitously**
5214:20

**great**
5158:5 5159:23 5241:5
5325:11 5388:4

**greater**
5168:17 5231:15

**green**
5210:20 5211:4
5245:11 5364:6 5370:2
5372:16 5373:15,23

5374:2,10

**Green's**
5228:12

**Gross**
5149:6,23 5156:11
5163:1 5174:23
5184:13 5203:1 5210:3
5211:22 5224:21
5225:9 5239:24 5250:8
5254:20 5266:6
5267:15 5268:18
5270:6 5278:1,14,19
5279:5 5280:1 5296:10,
13 5301:19 5304:22
5315:3,23 5332:22
5333:2,16,17 5334:23
5335:18 5348:12
5353:15 5354:9 5358:4
5377:13 5388:15
5392:14 5394:16

**Gross's**
5165:22 5233:4
5305:12

**ground**
5238:24 5366:11

**grounded**
5206:9 5244:10
5260:25

**groundwork**
5239:14

**group**
5185:9 5198:20 5255:3
5257:1,18 5258:1,6
5259:5,10,13,14
5260:19 5262:8
5320:14 5330:12
5348:21 5385:19
5386:2

**group's**
5259:17

**groups**
5337:22

**grow**
5273:1

**guarantee**
5230:15 5242:1
5252:21 5256:22
5394:7

**guaranteed**
5219:19

**guaranteeing**
5238:11

**guarantees**
5252:16 5256:16
5260:13,23

**guess**
5207:8 5353:15

**guidance**
5382:20

**guide**
5297:17

**guidelines**
5270:15 5294:10,11
5329:16,17 5336:8,12
5337:5

---

**H**

**half**
5225:25 5238:20

**halfway**
5378:5

**hallmark**
5302:15

**Hamburger**
5280:21 5281:2

**Hamilton**
5220:24

**hand**
5279:15 5285:6
5328:24

**handed**
5279:25 5310:21
5380:13

**hands**
5160:9, 5250:18
5394:12

**Hang**
5182:15

**happen**
5262:21

**happened**
5164:18 5324:22
5362:14 5364:10

**happy**
5277:14,15 5295:19
5340:22

**hard**
5368:21 5370:24
5371:9,10,12

**harm**
5257:22 5258:2,4

**Harmer**
5225:12

**head**
5233:12 5235:7
5238:18 5349:13

**heads-up**
5306:23

**health**
5263:4,7

**hear**
5224:12 5227:24,25
5228:2 5268:14
5284:10 5333:9 5372:3
5374:20 5376:22

**heard**
5242:9,11 5270:18
5271:5 5275:8 5281:23
5285:8 5292:9,10
5324:18 5325:17
5370:4,5,7 5380:11
5387:6 5390:23

**hearing**
5217:19,20 5218:8
5219:2,21 5395:9

**hearings**
5220:1

**heart**
5229:17 5230:7

**heartily**
5279:11

**hearts**
5274:15

**heavy**
5382:15

**held**
5152:7 5154:19,25
5162:9 5166:18
5176:12 5302:6,13
5303:3,7,13,14,15,16,
24 5344:7 5353:18
5354:13 5355:19,20
5382:17

**helped**
5238:18

**Helper**
5280:21 5281:2

**helpful**
5177:21 5232:4
5366:10

**Henderson**
5390:7

**hereof**
5289:20

**hey**
5387:14

**high**
5262:21

**high-cost**
5237:15

**high-interest**
5366:13 5367:9,11,15,
21,23 5368:1

**high-tech**
5369:22

**higher**
5263:25 5264:1

**highest**
5214:8

**highlight**
5189:6 5363:24

**highlighted**
5157:16 5247:1

**highlights**
5202:15

**highly**
5257:7 5306:25

**hindsight**
5274:20

**hinges**
5327:14

**hired**
5344:17

**historical**
5178:6 5184:14 5373:2

**historically**
5348:6

**history**
5158:6 5200:13,16
5201:11 5206:20
5218:22 5287:20
5353:14

**hit**
5270:22

**Hoeffner**
5225:12 5226:21
5229:5 5239:16,19,20,
23 5240 3,24 5242:12
5245:2,3,9,21,24
5246:2,5 5248:2,9
5253:12,17,23 5254:22
5260:16 5264:10,11,13,
21,23 5265:7,13,25
5266:3,17,21,25
5267:3,7 5277:5

**Hoeffner's**
5276:23

**hold**
5165:15 5166:10
5186:5 5187:3 5304:10,
25 5359:23

**holder**
5168:18 5187:21
5265:11 5315:10
5331:6,10 5343:24
5346:2

**holders**
5258:11

**holding**
5175:15 5187:21
5242:6 5280:13
5282:22 5302:17
5303:2,24 5353:20
5356:2

**holds**
5185:3 5272:6 5303:20
5315:4 5355:12

**holdup**
5223:19

**hole**
5348:14

**holes**
5280:22 5281:2

**holiday**
5377:19

**home**

**history**
5164:5 5308:19
5309:21

**Honor**
5214.13 5217:22
5221:9 5222:8 5224.17
5255:10 5277:21
5286:4 5287:6 5369:7

**Honor's**
5220:5

**Honors**
5211:25 5254:11
5267:19 5268:7
5274:16 5277:12

**Honors'**
5255:5

**Honour**
5149:9,17 5169:12
5182:17 5198:14
5200:9 5211:18
5224:21 5225:9 5230:1,
16 5231:24 5232:22
5296:9 5298:11
5301:19 5305:21
5313:25 5315:22
5324:20 5327:3,13
5329:11 5340:22
5352:23 5353:9 5375:1,
13 5379:11

**Honours**
5204:19 5377:4
5378:12 5380:8,21

**Honours'**
5154:23

**hope**
5214:24 5225:5 5280:1
5333:10

**hopelessly**
5387:5

**hoping**
5210:15

**hour**
5375:21 5378:14,15

**hours**
5375:19,24 5376:11

**House**
5159:18 5162:2 5175:7

**Huffard**
5207:21 5210:5 5373:3

**huge**
5237:9 5259:7 5321:25
5334:20 5349:15

**hundred**
5323:20,21

**I**

**iconic**
5365:21

**idea**
5157:5 5162:3,4 5166:1
5169:20 5172:12
5173:2 5184:6 5187:20
5320:11

**identified**
5221:15 5227:11
5247:16 5265:14
5389:6

**IES**
5166:18 5205:4
5321:19

**IFSA**
5213:13 5220:8,13
5223:25 5236:10
5362:20 5382:10,17,20,
23 5390:19,20

**ignore**
5213:22 5271:2
5282:12,14 5285:9
5293:5 5393:6

**ignores**
5255:8 5393:11,16

**illustrates**
5159:12

**illustration**
5243:5

**imagination**
5244:1 5360:25

**imagine**
5368:21

**IMAX**
5301:8

**immediately**
5157:4 5166:3

**impact**
5190:19 5212:21
5335:15,22 5336:4

**impacted**
5335:10

**impaired**
5259:24

**impairment**
5361:17

**impinge**
5173:15

**implementation**
5254:13

**implementing**
5213:17

**implicated**
5212:23

**implication**
5154:18 5167:2

**implications**
5150:11 5221:1

**implies**
5167:4 5172:8

**imply**
5391:5

**importance**
5196:15

**important**
5151:10 5167:2
5169:11,25 5171:5
5175:16 5178:13
5205:11 5226:7 5237:4
5240:10 5244:17,25
5246:17 5251:22
5289:1 5293:3 5294:2
5297:17 5299:15
5300:24 5308:22
5319:5 5320:10 5327:3
5338:12, 5350:20,21,22
5370:7 5372:10 5381:7
5382:19 5383:13

**importantly**
5207:5 5222:7 5226:11
5245:13 5246:23
5384:14

**impose**
5161:15

**imposition**
5387:21

**impossible**
5347:17

**improvements**
5340:14

**in-chief**
5224:16

**inadmissible**
5204:14 5205:8
5346:18

**inapt**
5272:16

**incentive**
5267:25

**inception**
5214:7 5322:10

**Incidentally**
5156:2

**incidents**
5171:2

**include**
5216:7 5311:18
5375:20 5389:21

**included**
5191:17 5233:13
5249:9 5267:10
5309:18 5374:8

**includes**
5167:11 5283:12
5327:5,9,18 5350:25
5367:20

**including**
5160:4 5256:22
5279:24 5309:7
5310:19 5311:15
5327:6 5345:8,23

**income**
5294:14 5313:4 5334:1
5361:14 5391:21
5393:15

**inconsistency**
5181:15

**inconsistent**
5166:1 5168:8 5172:12
5178:3 5183:18 5184:6
5187:17,20 5191:12,16,
21 5217:11 5222:18
5325:24

**incorporate**
5187:14

**increasingly**
5240:6

**incredibly**
5262:21 5304:11

**incurred**
5209:1 5247:7,11

**indentures**
5256:14 5258:24
5260:3

**independent**
5154:5 5257:4

**independently**
5245:10 5277:1

**indications**
5355:18

**indices**
5159:2

**individual**
5236:21 5252:20

**individually**
5395:10

**indivisible**
5347:9,10,24

**inequitable**
5229:7 5241:20 5243:6
5246:22 5262:1,12
5263:19

**infer**
5391:5

**inference**
5309:22

**infirmities**
5223:7

**information**
5266:4,15 5267:7,9
5365:11

**inhale**
5318:23

**initial**
5150:14 5200:18
5208:3 5215:4 5222:12
5248:3 5258:13,16

**initially**
5272:25

**injury**
5223:1

innovative
  5348:22

inquiry
  5163:19

inside
  5280:7

insignificant
  5233:22

insolvencies
  5263:22

insolvency
  5216:13 5229:18
  5230:8 5235:14
  5237:13 5238:20
  5270:16 5325:15,16
  5332:8 5334:6 5382:1
  5383:15,16 5384:22
  5385:7 5387:13,24
  5389:4,17 5390:2,12,16
  5391:4,8

insolvent
  5361:20 5367:7

inspection
  5360:21

instance
  5276:19

instances
  5272:10

institution
  5343:18

instructive
  5385:17

insurance
  5163:25 5164:4,9

insurer
  5164:8

intangible
  5250:24 5330:2,19,23
  5331:3 5360:16

intangibles
  5330:4 5360:24

integrated
  5152:5 5232:11 5251:1
  5257:7 5360:23

intellectual
  5154:17 5179:4
  5184:10,16,19 5215:12

5238:3 5239:1 5241:17
5263:2

intend
  5228:20 5285:16

intended
  5204:17 5205:3 5212:4
  5214:23 5274:15
  5275:1 5304:9 5320:23
  5390:15

intent
  5203:25

intention
  5160:10 5204:1,13,15
  5205:7 5285.19
  5299:13 5301:14
  5302:4,12,15,20
  5305:23,24 5307:2
  5355:15

intentions
  5206:4 5297:13,16

inter-entity
  5252:16 5255:23
  5256:18

intercompany
  5230:13 5252:17,21
  5256:22

interest
  5153:20,25 5160:2,4
  5161:2,11,17,19,24
  5163:14,17 5165:9
  5166:2 5170:8,15,22
  5176:25 5178:2,11
  5207:1 5218:2 5220:18
  5231:4,6 5247:23
  5252:18 5253:8
  5263:15 5264:20,24
  5265:10 5296:24
  5302:11,16 5304:13
  5310:12 5311:7,12,15
  5315:5 5335:16 5339:2
  5347:10,12 5348:2
  5353:8 5373:25 5374:7
  5381:4

interested
  5334:25

interesting
  5307:13 5341:24
  5364:7

interests
  5151:10 5190:24,25

5215:19 5219:13
5227:16 5252:9 5255:3
5261:6 5262:11 5268:2
5270:3,16 5271:20
5272:15 5273:4 5275:8
5276:16 5281:7,18,25
5283:21 5286:13
5291:3 5292:11
5359:25 5364:11
5374:20 5375:19
5376:18

interfere
  5197:17

Internal
  5368:15

international
  5390:10

interpret
  5232:6 5357:14

interpretation
  5172:18 5173:7
  5194:23 5203:22
  5204:4 5206:7 5211:10
  5227:22 5228:4,5
  5245:19 5268:5,17
  5269:1 5296:21 5297:3,
  4 5298:7 5301:16
  5307:12 5320:22
  5322:11,12,23 5328:6,
  10 5334:4 5345:20
  5353:5

interpreted
  5154:16 5178:5 5301:2
  5320:7

interpreting
  5205:23 5297:20

interpretive
  5206:12

interprets
  5316:9

interrupt
  5162:6,23 5295:22

interrupted
  5200:11

intersects
  5380:20

interweaves
  5169:16

invent
  5332:20 5337:22
  5338:11

invented
  5343:16 5364:3

inventing
  5234:12

invention
  5336:4 5337:8,14
  5338:18 5339:3
  5344:17

inventions
  5192:11 5337:23
  5340:13

inventive
  5332:18

inventor
  5192:14,18 5193:1,5
  5295:8 5337:17
  5342:22 5343:16

inventor/employee
  5338:25

inventors
  5192:20 5193:23
  5238:8,9

inventorship
  5238:5 5335:8

invest
  5191:7

investment
  5345:9

investors
  5258:13, 5263:16,24

invite
  5289:18 5364:24

involuntary
  5230:20 5262:22
  5380:10

involve
  5257:24

involved
  5219:25 5238:2
  5262:17 5271:7
  5390:13

involvement
  5217:9 5219:24

**IP**
5151:11,14 5152:7,10,
12 5153:2,10,20,25
5176:2 5177:13,15
5178:12 5180:23
5183:9 5189:17
5190:25 5191:2 5192:4
5205:5 5213:16 5216:6
5217:16 5218:13,14,17,
20 5236:6,12,20
5241:10 5249:14
5251:21 5270:2 5273:1
5283:13,17 5288:7
5291:13 5293:21
5294:20 5321:21
5322:1,17 5329:1,5
5332:16,17 5335:7,24
5337:13 5345:16
5346:24 5347:8 5350:7
5351:18 5353:6 5361:4,
6,25 5362:2,6,11,21,25
5364:19,23 5365:2,15,
22 5369:10 5370:6,9,
12,16,20 5371:18,24
5373:9,23 5374:1

**IPCO**
5196:19 5221:17,21,25
5223:15

**iphone**
5250:9

**Ireland**
5151:16

**ironic**
5261:3

**irony**
5281:6

**irrational**
5272:19 5273:25
5393:9

**irrationality**
5272:22

**irreconcilable**
5284:20 5287:8

**irreconcilably**
5222:18

**irrelevant**
5261:7

**irresponsible**
5381:17

**issue**
5170:4 5173:17,20,21
5198:23 5209:10
5214:14 5216:1,20
5223:13 5227:1,19
5236:7 5237:14
5240:12 5241:22
5258:1 5263:2 5264:24
5270:23 5271:18
5295:5 5299:23
5300:12 5333:1
5343:20 5345:19,20,21
5346:19 5349:14
5353:22 5361:5,18
5372:1 5388:23 5394:9

**issued**
5354:21

**issues**
5150:3,12 5153:17
5207:23 5209:20
5221:15,20 5222:1
5224:13 5227:11
5228:8 5229:18
5252:19 5261:13
5268:5 5270:19
5271:14 5331:15
5332:10 5336:21
5339:17 5364:22
5380:15,23 5381:3,4

**Italy**
5373:13

**iterations**
5270:1

---

**J**

**Jewish**
5377:19

**Jim**
5365:5

**job**
5241:5 5268:4

**John**
5220:25 5370:10

**join**
5276:22

**joined**
5277:1 5388:23

**joint**
5153:6,9 5154:3,

5190:20 5191:5,9
5210:7,9 5279:13,22
5285:3,16 5287:10,11
5293:25 5352:17
5357:10 5383:16
5386:22 5387:20

**jointly**
5153:3,6 5288:7
5294:18,20 5329:16

**Judge**
5149:6,22 5156:11
5162:25 5165:21
5174:23 5184:13
5203:1 5210:3 5211:22
5224:21 5225:9 5233:4
5239:24 5250:8
5254:20 5266:6
5267:14 5268:18
5270:6 5278:1,14,18
5279:5 5280:1 5296:10,
13 5301:19 5304:21
5305:12 5315:3,
5332:22 5333:2,16,17
5334:23 5335:18
5348:12 5353:15
5354:9 5358:4 5377:13
5392:14 5394:16

**judges**
5358:16 5378:11

**judgment**
5223:16

**Judicial**
5222:17

**jump**
5283:24 5337:7

**jurisdiction**
5193:19 5237:16
5247:12 5249:5
5251:16 5252:7
5254:12 5256:23
5260:4 5271:25 5377:5
5381:22 5382:4,7,18
5383:10,22,24 5384:2
5388:12

**jurisdictions**
5193:19 5216:15
5229:1 5230:15
5252:20 5253:21
5254:16 5271:11
5336:16 5342:5

**jury**

5271:13

**Justice**
5149:3,23 5156:14
5162:21 5164:1
5191:20 5211:22
5221:6 5239:24
5267:15 5269:2
5277:18 5278:16,22
5280:3 5281:17 5283:2
5291:22 5294:4
5296:14 5297:2
5298:23 5299:9 5305:7
5316:18 5336:5 5338:4
5353:13 5358:19
5359:1 5379:19
5391:20 5392:15
5394:5

**justifications**
5261:9

**justify**
5368:24

---

**K**

**Kanute**
5359:22

**Ken**
5211:23

**key**
5150:7 5179:4 5232:17
5238:25 5280:16
5382:22

**kick**
5279:3

**kickoff**
5350:2 5360:5

**Kilimnik**
5259:18

**kind**
5168:9 5189:18
5198:25 5205:12
5223:15 5295:9

**King**
5359:22

**Kinrich**
5207:21 5208:2,5
5210:7

**knew**
5263:13 5304:12

**knowingly**
5223:25

**Kruger**
5217:9

**Kyrgyz**
5299:2

**Kyrgyzaltyn**
5354:15 5355:12,20

**Kyrgyzstan**
5299:3,4

---

L

---

**labelled**
5156:15

**labels**
5214:20,22 5215:1,9
5222:20

**labour**
5337:25

**lack**
5253:2

**laid**
5277:5

**land**
5210:2,3 5221:5 5372:8

**landed**
5335:1 5364:14

**Landesbank**
5159:19

**lands**
5210:3

**language**
5176:22 5180:9
5183:22 5186:3
5188:15 5197:24
5203:25 5205:15,19
5269:22,23 5270:20,24
5286:25 5304:16
5308:23 5359:15

**large**
5150:25 5321:21

**largely**
5273:5

**largest**
5235:5

**late**
5222:10 5366:4

**lateral**
5191:21

**launched**
5202:18 5216:21

**law**
5155:22 5156:3,5,6,11
5158:8 5161:1 5163:4,6
5164:14 5167:5
5177:17,18 5191:15
5192:4,5 5222:11
5223:5 5229:1 5241:7
5269:1 5279:17
5294:21 5295:6,11,12,
14 5297:4,10, 5299:18,
22 5302:9 5304:8
5306:14 5307:8,23
5308:12 5309:5,12
5310:8,16,17,22
5311:3,16,17 5313:15
5314:8 5315:18 5316:9
5317:13 5319:22
5332:19 5337:13,15,17
5338:2 5341:23 5342:2,
3,4,8,10,11,20 5343:4
5346:15,24 5352:13,15
5357:8,20 5376:8
5387:20,21,25 5388:2,
7,17 5389:4 5392:17

**laws**
5251:16 5252:7,21
5342:8 5383:23

**lawsuits**
5200:17,18

**lawyer**
5305:2,18 5306:16
5390:8

**lawyers**
5292:20 5306:19
5320:17

**lays**
5292:19

**Lazard**
5365:14

**lead**
5207:19 5244:7
5248:12 5251:9

**leadership**

5237:5

**leading**
5149:25 5204:4

**leads**
5152:21 5244:11
5331:25 5367:5

**leaps**
5229:8

**learn**
5272:3

**lease**
5272:4

**leasing**
5272:6,8

**leave**
5210:1 5265:10
5319:24 5329:12
5360:24 5361:1 5368:8
5374:17 5381:18

**leaves**
5187:18

**leaving**
5195:17

**led**
5241:24

**left**
5149:10 5227:6
5228:15 5242:6
5246:12 5255:21
5310:23 5370:15

**legal**
5150:7 5151:8 5153:22
5154:12,19,24 5155:3,
7,10,15,16 5156:24
5157:1,4,12,13,19
5158:1,5,11,14,19,20
5159:1,6,7,9,13,15
5160:16 5161:3,5,7,19,
20,21 5162:1 5163:7
5164:17,21,22 5165:13,
18,20 5166:3,10,12,17
5168:9 5169:8,20
5172:1,2 5173:3,13,18
5175:8,21 5183:9,14
5184:4 5187:11,21
5188:15,16 5190:19
5197:4,18,25 5198:12
5200:6,14 5207:1,25
5208:6 5209:21 5210:2
5218:19 5227:18,19

5233:13 5234:7 5236:4
5255:19 5269:2,17
5270:15 5279:18,19
5284:12,14,16 5285:1,
2,5 5286:17,18 5287:7,
9,13 5292:18,21
5296:22 5301:23,25
5302:5,10,13,23
5303:7,20,24 5304:3,5,
7 5307:13,15,22
5310:1,2,5,7,18,25
5311:14,18,20 5312:9,
20,22,23 5313:10,19,22
5314:4,7,15,16,19,22
5315:4,7,9,14,24,25
5316:6 5323:23
5325:19 5329:24
5330:1,13 5331:4,6,10
5334:19,21 5346:1
5363:3,16,17 5374:3,6
5384:3,11,15,18,21
5385:9 5387:16,19
5388:12,13 5391:8
5392:11,22,23 5393:2

**legally**
5154:5 5228:23
5263:11

**legislative**
5216:4,24 5217:5

**legitimate**
5169:17,18 5244:5

**legitimately**
5244:10

**lend**
5277:8 5352:3

**length**
5179:1 5300:13
5317:12 5319:25
5320:3,9,11,16,18,20
5321:4 5328:8 5329:12
5330:21

**lengthy**
5257:19

**lens**
5194:10

**lessee**
5272:10

**level**
5230:18 5241:11
5254:9 5391:20,22

**levels**
5238:3 5262:18

**leveraged**
5223:23

**liabilities**
5255:22,23 5393:24

**liability**
5318:7,19 5319:6

**licence**
5151:18,21 5152:3
5153:25 5162:15,17
5166:5,7,13 5167:1,2,4,
6,14,16,22 5168:1,7,16,
18,19 5169:9,16,19,22
5170:3,8,14,24
5171:10,24 5172:1,20,
23,25 5174:1 5176:3,5,
9,23 5177:9,10,14
5178:9 5183:12
5188:22,24,25 5189:24,
25 5190:2 5194:8,15,
18,21 5195:4,11
5196:22 5198:21
5199:14,17,18 5201:3
5202:1 5206:25 5207:7,
17 5208:16,23 5209:2,
8,11,13 5211:5 5323:3,
6 5324:2 5325:8
5343:25 5344:3 5345:5,
12,16,23

**licences**
5180:20 5183:10,15
5184:6 5187:12 5188:1
5198:22 5201:24
5202:6,7 5227:21
5228:7,10 5236:8,11

**license**
5197:20 5215:22
5216:15 5243:13
5248:15 5293:13

**licensed**
5162:9 5175:14
5180:25 5188:6 5195:8
5198:9 5237:7 5272:25
5344:5 5361:14

**licensee**
5167:23 5168:1
5189:12, 5194:13

**licensee's**
5168:2 5176:18

**licensees**
5174:16,21 5195:8
5196:10,24 5197:12,19,
23 5211:9 5294:12,16

**licenses**
5153:21 5172:6
5215:13,19,21 5216:6,9
5218:16 5269:9
5270:25 5273:8,11,19

**licensing**
5184:18,23 5185:25
5195:5 5196:18
5197:14 5200:16
5201:12,24 5236:19

**licensor**
5345:6

**life**
5280:18 5325:15
5333:20

**lifestyle**
5278:3

**light**
5206:10 5217:21

**likening**
5234:20

**likewise**
5223:10

**Lilly**
5167:8 5170:6 5194:12,
20 5297:25

**limb**
5159:21

**limit**
5205:11,16 5393:21

**limitations**
5213:10

**limited**
5168:5, 5177:18
5184:10 5185:14
5189:10 5194:14
5235:18 5309:15
5360:7

**limited-risk**
5373:7,8

**limiting**
5384:15

**limitless**
5384:9

**limits**
5205:15

**lines**
5227:4 5232:13
5233:12 5234:4 5257:8
5281:20 5283:13
5289:23 5290:1
5291:20 5354:18
5371:8

**link**
5157:1

**liquidating**
5383:15 5391:4

**liquidation**
5291:11

**liquidity**
5385:25

**list**
5193:1 5201:24 5202:3,
9 5343:8,12

**listen**
5377:6

**listened**
5389:10

**litigated**
5220:11

**litigation**
5200:23,25 5213:23,25
5215:5 5219:9 5223:16
5225:23 5229:13
5324:25 5325:1,25
5361:13

**live**
5278:2

**lively**
5378:11

**lives**
5262:25

**living**
5271:24

**loan**
5256:11

**loaned**
5343:18

**loathe**
5377:9

**local**
5159:23,24 5161:16

**lock**
5379:12,13

**lockbox**
5251:11 5382:19
5389:8

**logic**
5303:8

**logos**
5257:5

**long**
5225:23 5249:7
5295:18,22 5348:23
5357:24 5377:8

**longer**
5195:10 5202:23
5258:14 5259:2

**look-back**
5366:8,9,12 5367:14
5368:9

**looked**
5186:10 5297:11,12
5299:11 5317:9 5345:7,
11,14 5349:5 5352:25
5355:14 5356:10

**lopsided**
5230:21

**Lord**
5160:19

**Lords**
5159:18 5162:2 5175:8

**LORRAINE**
5395:4,19

**lose**
5181:11 5212:19
5348:16

**loss**
5226:5

**losses**
5329:8 5335:13

**lost**
5149:12 5199:15

**lot**
5150:24 5210:1
5242:10 5267:24
5327:23 5387:3

  5231:1

low-revenue
  5237:15

lowly
  5232:25

LRES
  5373:6

lucrative
  5273:8

lunch
  5267:23 5277:24

LUNCHEON
  5278:9

luxury
  5272:1

M

Mackeen
  5311:24

made
  5150:9 5178:14
  5187:25 5199:15
  5204:3 5214:6 5215:24
  5218:15 5243:3 5250:6
  5257:12 5306:24
  5314:6 5319:11 5324:5
  5345:10,12 5349:15
  5350:9 5355:23
  5362:19 5365:16
  5372:18 5386:8 5387:1

magnitude
  5277:3

Maguire
  5278:16,18,21,23,24
  5279:2,10 5280:3,6,12,
  15 5285:23 5286:3,8,23
  5287:5,19 5289:7,13
  5290:15 5291:5,14,18,
  25 5292:8 5295:2,20,25
  5296:17 5297:2
  5300:25 5316:3
  5319:17 5326:20
  5335:9 5337:12 5349:7,
  18 5358:13,15,18,19,24
  5362:18,22 5368:7,13,
  18 5369:6,9 5371:14
  5374:16

main
  5281:24 5294:9 5370:4

maintain
  5209:1 5256.12 5273:6

maintained
  5172:15

maintenance
  5330:17

major
  5150:11,18 5207:16
  5229:18 5268:19
  5362:6 5370:11

majority
  5154:13 5165:9
  5276:18

make
  5168:21 5173:12
  5181:3,9 5189:12,13
  5195:17,18 5196:17,20
  5209:14 5213:8
  5214:17 5238:12
  5250.1 5260.7 5262:20
  5267:25 5273:15
  5274:19 5277:6
  5300:12 5301:18
  5319:12 5321:17
  5324:3 5336:10 5337:3
  5339:7 5356:24 5371:4,
  6 5376:18 5377:25
  5378:6,19 5380:5
  5386:24

makes
  5170:15,18 5187:8
  5189:24 5191:13
  5247:6 5286.12 5292:1
  5311:23 5313:13
  5315:6,11 5319:22
  5322:13 5329:6,10
  5337:22

making
  5195:25 5249:13
  5251:21 5253:20
  5286:15 5324:17
  5362:10

Malackowski
  5207:22 5210:5 5365:6,
  17 5366:25 5372:1
  5373:22

Malackowski's
  5372:6

malpractice
  5292:21

man
  5332:2

managed
  5250:25

management
  5356:4 5385:24

manager
  5308:17

manner
  5185:9 5320:8 5352:3
  5385:6

manufactured
  5196:8

map
  5232:3

MARINO
  5395:4,19

mark
  5225:10 5364:6 5390:9

market
  5234:22 5235:1,5,6,9
  5237:16,19 5238:5
  5246:15 5258:10
  5266:13 5267:6, 5273:9
  5373:20

marketed
  5196:8 5250:25

marketing
  5232:15

markets
  5237:20

Marques
  5225:13

marshaling
  5268:4,6

massive
  5235:2

Master
  5185:1

mastered
  5365:18

mastery
  5365:9

match
  5247:6

material
  5338:1 5348:22

Mathematically
  5179:14

matrix
  5205:11,12 5206:19
  5207:12 5226:18
  5227:6 5230:4 5231:25
  5232:11,12 5233:25
  5239:13 5257:7
  5287:22 5294:25
  5350:18,20,22,25
  5351:10,25 5352:3
  5358:25

matter
  5155:8 5174:25
  5190:22 5192:5 5193:7
  5218:4,6 5226:4 5276:1
  5289:20,22,24 5291:17,
  18 5292:2 5296:20
  5304:8 5307:23
  5337:12,17 5338:2,16
  5339:6 5342:8 5346:24,
  25 5347:4 5355:2
  5393:3

matters
  5152:1 5194:17
  5208:11 5221:13,14
  5334:4

Matthew
  5279:16

maximize
  5212:17

maximized
  5219:6

maximizes
  5247:5

maximum
  5378:13

Mcconnell
  5266:7

Mcdonald
  5220:25

Mcfadden
  5234:3

MD&A
  5356:4



**meaning**
5169:8 5285:1 5301:3
5320:7

**meaningless**
5161:12

**means**
5152:15 5154:16
5155:10 5157:25
5161:21 5180:23
5184:5 5204:16
5248:25 5249:2 5262:7
5292:23 5302:11,18,19
5303:3 5307:13
5310:19 5311:14
5316:1,2

**meant**
5165:7 5184:15
5205:14 5309:3

**measure**
5180:13 5181:2
5241:16 5327:22
5328:15,17,18

**measured**
5152:17 5154:4 5361:8

**measuring**
5190:10 5208:15,16

**mechanism**
5312:6

**mediation**
5221:6 5364:15

**meeting**
5350:2,3,4

**Mellon**
5376:9

**Melnick**
5225:13

**member**
5259:13 5260:19

**members**
5258:6 5259:4,9,
5330:12,20 5381:1

**memorandum**
5222:11

**mentioned**
5241:2 5269:5 5270:7

**menu**
5280:9

**Mercifully**
5341:21

**mere**
5294:12,16

**merged**
5255:20

**merit**
5319:21 5349:17

**merits**
5224:6 5381:19

**method**
5178:22, 5179:25
5242:17 5251:9 5260:7
5381:19,24 5382:21
5384:4 5388:9 5389:7
5391:3

**methodologies**
5218:19 5260:9

**methodology**
5153:15 5178:21
5190:10 5248:22
5261:10 5351:19
5388:22

**methods**
5243:7 5382:2,3
5390:21

**Michael**
5390:8

**middle**
5335:4

**migrated**
5393:24

**migration**
5361:5

**Miller**
5380:16 5385:13
5389:2

**million**
5239:11 5241:25
5248:18 5250:9
5265:17,19 5373:15,22,
23 5394:8

**millions**
5362:10

**mind**
5188:3 5204:20
5304:19 5336:11

**minds**
5154:23

**mine**
5305:13

**minimum**
5219:18

**minor**
5200:25 5300:19,20

**minute**
5202:2 5224:22
5259:19 5289:5

**minutes**
5203:7 5215:8 5268:21
5358:2,7 5375:19,22
5376:5,6,7,8,9 5378:14,
15

**mirror**
5183:17

**mirrored**
5184:19

**mirroring**
5183:22

**mischaracterizatio
ns**
5251:25

**misconceptions**
5240:20

**misdirection**
5392:24

**misguided**
5255:7

**misheard**
5317:1

**misinterpretation**
5284:19 5287:7

**misinterpreting**
5284:15 5287:13

**misleading**
5216:17

**misled**
5251:24

**misplaced**
5257:20

**misread**
5189:1

**misreading**
5188:9

**misrepresentation**
5214:21

**misses**
5285:12

**MNE**
5330:7,12

**model**
5181:16 5208:17,18
5233:2

**modern**
5312:12

**modest**
5245:14 5254:3

**modification**
5383:3

**modify**
5254:4

**moment**
5162:6 5175:21 5201:6
5253:8 5265:6

**money**
5159:23 5160:2,4,8,15,
17,25 5161:14 5181:9,
10,11 5191:7 5220:14
5230:2 5242:22 5249:1
5265:11 5326:14
5336:17 5343:19

**Monitor**
5149:24 5150:15
5211:23 5212:13
5215:11,17 5216:11
5217:22 5220:18,19
5222:5,7,19 5225:16,18
5228:11 5229:23
5243:10 5245:6,8,18
5281:25 5295:12
5326:11 5376:6
5385:15 5386:4 5394:9

**Monitor's**
5150:4 5212:8 5215:10,
23 5216:25 5217:12,17
5227:23 5229:3
5342:18 5370:1
5386:16,21

**months**
5257:17

**Montreal**
5191:19

**morning**
5149:6,7,9,22 5150:1
5164:15 5202:24
5211:20,21,22 5227:12,
25 5239:22,24 5268:2
5288:24 5294:5
5296:18 5375:1,23
5378:1 5379:3,7,10,18
5381:14 5390:22
5394:14,19

**morph**
5256:1

**mortgage**
5158:9,11,12

**mortgagee**
5158:12,16,19,25

**mortgages**
5158:4 5171:19

**motivation**
5294:7

**motor**
5164:5 5308:18
5309:21

**MOU**
5283:19,21 5285:8

**mouth**
5329:3

**move**
5165:21 5189:6
5252:10,11 5293:18
5307:7 5317:11
5319:23 5329:13
5360:12 5361:16
5362:4 5369:10
5377:14 5391:23

**moved**
5219:16

**MRD**
5308:14

**MRDA**
5150:16 5151:14,
5152:19 5153:7,15
5154:5,7,15,23 5156:4
5157:18 5162:8,12
5163:2 5165:23,24
5171:25 5172:11,14,25
5174:12,18 5175:10

5176:4 5178:7,10
5182:9 5183:14,16,17,
23 5184:19 5185:22
5187:9 5189:5 5190:6,
22,24 5191:12 5192:20
5193:14,16 5194:3,5
5199:4,16 5203:19
5207:3 5212:1,3,5
5215:17 5221:24
5223:10 5227:4,17,24
5232:6 5237:11 5238:1
5239:5 5241:7 5242:14
5250:22 5261:1,24
5262:3 5268:5,17,18
5269:4,6 5279:14,18
5281:11,13,14,22
5283:10 5284:6
5286:14 5288:2,6,12
5289:22 5290:5 5291:1,
6 5292:17,20 5293:10
5296:21,23 5299:24
5300:10,15,21 5301:17,
20 5304:24 5306:7
5310:6 5315:17 5316:8
5319:24 5320:13,17,21,
22 5322:10 5328:23
5329:4,19 5332:6,9
5333:5,15 5335:12,18,
19,20 5336:3,4,25
5347:1 5350:14,19
5353:5 5357:23
5373:10 5374:5
5390:13,14,16,23
5391:6,11 5392:7
5393:8,12,14

**multinational**
5251:1 5263:23
5271:24 5330:8
5336:15

**multiple**
5262:17 5389:13

**Murray**
5220:24

**music**
5387:13

**Mustn't**
5366:24

**mutual**
5206:4

---

**N**

**nail**
5394:10

**naive**
5385:4

**named**
5343:14

**names**
5257:6

**natural**
5284:25 5324:13

**nature**
5153:19,23,24 5163:18
5228:25 5230:5
5237:18 5251:5,6
5332:8 5347:24

**necessarily**
5163:12,15 5168:3,16
5194:13,17 5385:20

**necessity**
5258:24

**needed**
5218:25 5222:11
5273:1 5301:6

**NEESONS**
5395:20

**negotiate**
5189:18

**negotiated**
5336:25

**negotiation**
5219:9

**networks**
5360:7 5373:11

**Newbould**
5149:3,23 5156:14
5162:21 5164:1
5191:20 5211:22
5239:24 5267:15
5269:2 5277:18
5278:16,22 5280:4
5281:17 5283:2
5291:22 5294:4
5296:15 5297:2
5298:23 5299:9 5305:7
5316:18 5338:5

5353:13 5358:19
5359:1 5391:20
5392:15 5394:6

**news**
5267:19 5268:1

**newswire**
5355:24

**nice**
5317:21 5332:2

**night**
5376:15

**NN**
5151:16 5154:25
5155:4 5175:18,22
5179:13,21 5182:6
5185:5 5188:17
5194:25 5195:1,7,18
5196:22 5234:20
5269:18 5279:21
5281:23 5282:2,4,9,11,
13,17,23 5283:1,9,21
5284:3,9,23 5285:3
5293:1,7,9 5294:3,13,
17 5301:24 5302:5
5324:24 5359:16
5363:18

**NNC**
5237:22

**NNI**
5151:15 5152:6,9
5153:5,25 5154:8
5171:6,11 5185:10
5190:25 5201:1,3,13
5202:12 5209:17
5234:16 5235:1,5
5241:25 5247:15,17
5248:19 5296:25
5322:15,20,25 5323:6
5324:5,8 5338:12
5339:15,20

**NNI-ONLY**
5202:1

**NNL**
5151:13,18 5152:6
5153:5 5154:16,19,25
5155:5 5166:4,17
5168:10 5170:14
5171:4,12,22 5172:1,7,
12,15,19 5173:1,2,5
5174:13,15 5183:10
5188:18,20 5190:25

5192:15,18,24 5193:5,9
5195:3,6 5197:13,18
5199:13 5200:24
5201:3,12,16 5202:10
5216:6 5221:1 5236:6,
12 5237:17,21 5242:2,
6,23 5267:17 5269:20
5270:4 5273:6 5275:4
5279:18 5284:12
5285 2,20 5287:9
5293:4,22 5294:2,7,14,
15 5302:1,7 5303:8,13,
14,20,24 5304:10,25
5305:18 5315:3,4,25
5321:18,25 5322:3,7,
21,23,24 5323:23
5324:1 5325:25 5327:5,
6,9,10,12,18 5330:2
5337:21 5338:14,23,24
5339:1,2 5340:21
5341:10 5344:5
5360:20,22 5361:7,22
5362:7,9,21,24 5363:3,
18 5364:8

**NNL'S**
5152:22 5153:10,19
5197:9,12 5201:8
5208:24 5215:12,18
5218:2 5236:24
5363:14

**NNSA**
5361:24

**NNUK**
5151:15 5171:9,16
5173:25 5337:21
5338:15 5340:20,24

**noble**
5391:24

**nominal**
5152:23 5168:10,22
5169:20 5208:6
5312:17,23 5313:2,17,
18 5314:1,2,7,12,20,25

**non-exclusive**
5183:12 5187:25
5188:22,24

**non-existent**
5335:21

**non-ip**
5372:9

**non-transferability**

5199:5

**noncontractual**
5280:24

**nonetheless**
5212:11 5344:7

**nonguaranteed**
5267:18

**nonlegal**
5292:13

**Nortel**
5152:9 5179:10,16
5180:3,15 5189:14
5196:9,18 5198:19,20,
22 5205:2 5226:12
5229:10,20 5232:10
5233:7,21,25 5234:17
5237:16,21 5248:23
5249:14 5251:21
5252:6 5256:10,14,17,
22 5257:7,10, 5258:11,
12,15 5262:25 5263:8,
13 5273:16 5280:18
5288:7 5291:11
5292:20 5293:14,20
5304:12 5320:13
5324:17 5347:13,18
5348:6 5349:4,11
5361:6,12,25 5362:6,17
5363:15 5364:18
5365:12 5366:4 5367:8
5369:20,22 5370:6
5372:10 5373:19,21
5380:10 5383:15,17
5385:6,8,19 5386:1
5387:3 5389:18 5390:1
5391:25 5393:13

**Nortel's**
5205:5 5228:25
5234:23 5237:5
5241:23 5242:3 5251:5
5291:13 5360:14
5381:25

**north**
5281:1

**notable**
5259:6

**notably**
5220:22

**note**
5247:18 5336:10
5337:4 5364:7 5378:13

5379:8 5383:7 5386:24

**noted**
5392:1

**noteholders**
5230:14

**notes**
5297:24 5298:3
5340:20 5395:13

**notice**
5315:23

**Notification**
5340:9

**notified**
5340:5

**notional**
5170:12

**notions**
5194:8

**notwithstanding**
5310:5 5349:10 5353:1

**Nova**
5311:25 5312:1

**number**
5162:20 5247:18,22
5292:5 5304:15 5337:4
5340:2,21 5341:11
5367:15

**numbers**
5230:12 5338:8
5339:12 5394:7

**numerous**
5218:11

---

**O**

**O'connor**
5380:19 5385:13
5388:25

**objective**
5204:1 5206:4 5228:3
5229:19 5232:1
5241:16 5365:9,18

**obligated**
5216:6 5220:23

**obligation**
5220:20

**obligations**
5199:6,16 5200:1
5238:11 5269:8
5292:19

**obliged**
5329:24

**observing**
5381:14

**obtain**
5216:15 5243:20
5267:8

**obtained**
5273:15

**obtaining**
5273:17

**obvious**
5196:15 5236:7
5284:25 5285:5
5302:22 5337:21

**occasion**
5361:4 5364:18

**occasioned**
5257:23

**occur**
5241:21 5243:9

**occurred**
5165:15

**occurring**
5228:3

**Ocean**
5365:5

**odds**
5189:9

**OEC**
5176:7

**OECD**
5294:10 5329:16,17

**off-side**
5334:2

**offensive**
5214:20

**offered**
5259:16

**offerings**
5258:13

**office**
5233:10,12,14 5235:8
5238:18 5348:19,20
5378:17 5379:3

**Officer**
5234:2,5,7

**officers**
5232:25 5233:10

**omitted**
5288:25

**oneself**
5319:9

**ongoing**
5329:8 5335:14
5385:25

**Ontario**
5156:5, 5158:6,10
5204:4 5240:16 5269:2
5279:17 5294:21
5295:6,11,14 5297:5,18
5299:15 5301:10
5338:2 5341:23 5342:2,
4,8,10 5343:4 5357:9

**Ontario's**
5203:21

**open**
5382:22

**opening**
5236:9 5267:22 5273:4
5281:17 5389:14

**openings**
5182:10 5267:20

**operate**
5271:11 5290:16

**operated**
5232:10 5235:17
5248:23 5257:4,8
5277:10 5325:14
5349:11 5385:7

**operates**
5250:4

**operating**
5288:15 5290:3,6,21,24
5292:3 5326:20,21,24
5328:19,20 5329:7
5331:20 5333:24
5335:11

**operation**
5226:13 5234:9,17
5238:12,18 5257:12
5392:19

**operational**
5290:11,13,14

**operations**
5228:25 5233:21
5241:24 5242:3 5273:6
5291:9 5335:13 5336:9

**operative**
5172:11 5177:25
5178:1 5183:16,25
5184:2 5185:12,13,17
5187:2 5286:10
5287:16 5304:2,3

**opinion**
5232:1,2 5236:15
5268:16

**opinions**
5365:10

**opportunity**
5222:14 5299:10
5381:8,11

**oppose**
5213:20

**opposed**
5287:1 5328:17,18

**opposite**
5256:5 5262:10
5313:11 5314:6
5315:20 5316:14
5346:11,12

**order**
5214:9 5220:3,5
5238:11 5254:12
5345:1 5381:23

**ordered**
5213:7,9 5261:8

**ordering**
5388:18

**orders**
5213:17 5214:15
5218:7 5222:25
5254:17

**ordinary**
5285:1 5301:3

**organization**
5232:11 5257:8
5387:12

**organized**
5296:10

**original**
5182:8 5188:16
5258:23 5359:8

**Orlando**
5204:22 5390:8

**others'**
5274:7

**Ottawa**
5156:3,9,11

**outcome**
5220:11 5231:8 5240:7
5249:11 5262:4,5
5263:11,18 5276:2

**outcomes**
5226:22 5227:18
5230:8 5243:9

**outlier**
5372:16

**outline**
5226:15

**outright**
5324:1 5325:9

**outset**
5249:20

**outstanding**
5258:7

**overleveraged**
5376:20

**override**
5185:17 5213:12,14
5286:10

**overview**
5226:16 5227:1
5229:11

**overwhelm**
5205:25 5286:9

**overwhelming**
5276:18

**Overy**
5211:23

**Owens**
5254:19,24 5255:4,10
5256:5,7,9,10,18,25
5257:22 5259:7,20,24
5380:20

**Owens'**
5257:12

**owned**
5151:13 5153:3,6
5172:19 5177:8
5180:24 5183:5
5208:19 5211:11
5217:23 5236:12
5293:21 5294:17
5299:12 5305:25
5306:1,9,11 5324:1
5333:14 5336:1,2
5343:21,22 5345:15
5346:9,24 5347:3,5,9,
19,22 5350:19 5351:18
5357:4,17,19 5362:21
5364:2 5374:5 5392:24,
25

**owner**
5153:20,21 5154:16
5166:11 5168:17,21,22
5172:13,21 5174:13,15
5196:12 5201:3 5211:7
5272:5,11 5309:21
5312:5,6,15,17,23,25
5313:2,17,18 5314:1,3,
7,12,13,14,20,23,25
5318:17,21 5319:1,3
5330:1,13 5332:17
5337:19 5342:23
5344:8,16 5345:5
5346:1,17 5353:25
5362:7,12,24 5363:3
5392:22,23

**owners**
5153:5 5168:13
5179:20,21 5189:17
5287:25 5288:17,21
5290:16,18,22,25
5294:11,17 5315:9
5317:23 5360:16,23

**ownership**
5152:12,14 5153:7,10,
12 5154:2,4,21
5155:10,14 5156:23
5157:5,20,24 5158:1,
17,20 5159:2,7,8,10
5160:11,25 5162:10,14



5163:11 5164:10,11
5167:4 5169:21,24
5171:2,13 5173:4,13,18
5175:16,23 5176:2,13
5177:4,10, 5179:13
5180:4,7,17 5181:12,
17,19 5182:3 5184:5,22
5185:5,8,24 5186:8
5187:13,16 5188:8
5189:22 5190:20
5191:6 5194:9 5197:8,
9,12,22 5205:5 5207:1,
3 5208:24 5210:7,9
5215:12,19 5217:10,16
5218:2 5220:25
5226:23 5227:4,11,18,
19,20 5228:7,24 5236:6
5241:3,8,22 5243:1,16
5244:4 5245:5,7,17,18,
19 5246:8, 5250:16,21
5251:10 5260:24,25
5262:2,6 5269:10
5270:2,6,13,14,21,24
5271:1,2 5274:1
5275:15 5277:7
5279:13,19,22,24
5280:17,20 5281:8,9,
12,19,23 5282:4,9,13,
15,16,23,25 5283:6,16,
20 5284:3,8,15,17,19,
22 5285:3,6,16,18,19
5286:13,19 5287:11
5288:4,6 5291:3
5292:8,12,13,23,24
5293:1,7,17,23,25
5294:3,8,21,23 5295:1,
5,8 5299:10 5302:24
5304:6,7,10,20,25
5305:17 5306:9,25
5309:4,13,23 5310:11,
19,20 5311:6,15,18,19,
21 5313:12 5316:7
5317:16,17,19 5318:8
5319:16,19,20, 5323:24
5333:1,4 5335:7,16
5336:3 5337:8,13
5342:12 5345:20,21
5346:19 5350:10,11
5351:13,22 5352:21
5355:25 5356:5
5358:24 5359:16
5360:11 5361:9
5362:17 5363:8,16,17,
19,23 5364:9,20
5374:3, 5387:6 5390:23
5394:5

**ownership'**
5309:4

**ownership/
inventoryion**
5346:21

**ownerships**
5191:10

**owns**
5157:2 5179:23 5181:6
5190:1 5193:21
5221:24 5242:5
5257:14 5282:2,11
5306:5 5319:2 5322:24
5345:2, 5353:3,6
5354:9,12 5355:3,9
5356:19,20 5361:24
5362:1

---

**P**

**p.m.**
5278:9,10 5358:8,9
5394:22

**pace**
5376:13

**paced**
5376:1

**package**
5323:13 5324:5

**pages**
5389:15

**paid**
5158:13,14,16 5161:14
5239:8 5249:21
5253:25 5254:8
5326:13

**painstakingly**
5269:15

**papers**
5268:9

**par**
5275:17

**paradigm**
5207:16

**paragraph**
5167:10 5177:22
5178:19 5180:21
5183:10,11,21 5190:12

5191:13 5192:9
5201:11,21,22 5204:23
5205:20 5207:9
5213:13 5220:5
5231:11,16,17,18,21
5289:10 5298:11
5309:2 5312:8 5318:4,
14 5340:11 5341:3
5344:11 5346:13,14
5354:8,14 5355:10,16,
25 5385:15 5386:11
5390:4

**paragraphs**
5196:4 5200:19 5208:4
5254:14 5298:13
5340:23

**pardon**
5182:25 5184:1 5202:5
5304:23 5318:15
5349:19

**parent**
5237:6 5274:2 5337:23

**pari**
5384:23

**Parliamentary**
5216:4

**parol**
5207:10 5346:18

**parsed**
5228:1

**parsing**
5227:24

**part**
5155:6 5157:5 5167:12
5171:8 5187:10
5218:16 5226:18
5228:10 5229:11
5237:25 5287:21
5292:16 5294:25
5299:17,22 5301:5
5320:22 5325:1
5327:11 5331:1
5333:14 5338:9,23
5348:3 5350:22 5351:9
5365:8 5372:20 5386:7

**parted**
5309:23

**participant**
5162:9 5172:4 5175:14
5179:23 5185:3 5200:1

5282:22,24 5283:15
5326:7 5365:17
5366:21

**participant's**
5273:20 5300:4

**participants**
5178:23 5179:7,9,15,
20,25 5180:14 5183:6
5188:7 5189:13 5190:8
5191:14 5195:22
5279:14 5281:21
5282:5,7,13, 5285:14
5287:24 5288:13
5289:17 5291:3,10
5292:4 5293:6 5327:4,5
5360:11 5361:14
5362:1 5365:16

**participants'**
5282:16 5284:3,8
5287:11 5293:1 5294:8
5359:16

**participating**
5290:23

**parties**
5170:23 5173:24
5189:21 5197:15
5198:2,5,16 5200:3,7
5205:14 5206:5 5213:2,
4,6,25 5214:2,6 5220:9
5221:11 5224:13
5231:5 5247:4 5260:10
5266:18,19 5269:8
5271:7 5274:13 5275:1
5279:12,20,21 5281:4,
22 5282:21 5283:14,20,
25 5284:6 5286:12
5287:21 5288:4 5290:6,
21 5291:4 5292:19
5293:9 5294:16
5297:11,13,16 5300:25
5301:14 5302:4,12,20
5317:8 5320:23
5322:13 5323:2 5327:1
5328:8 5332:23 5333:6,
9,13 5335:15,19,24,25
5336:16 5349:2,3
5350:12 5351:2,13,18,
22,23 5357:2,4,11,17,
22 5359:5,14 5361:4
5362:12,24 5363:3
5364:2,18 5375:15,21
5376:24 5377:1,23

5378:13 5380:3
5381:18 5383:14,19
5389:21 5391:2

**parties'**
5203:25 5284:22
5285:3 5287:10 5293:8
5294:21 5327:2
5350:23

**partly**
5169:2

**parts**
5335:9

**party**
5200:24 5201:12
5202:10,13 5213:7,20
5219:19 5232:9 5244:8
5269:10 5321:15
5322:7 5332:16,22
5356:2 5373:10 5374:5
5383:1,4,8 5390:17

**party's**
5206:21,22 5218:18

**passages**
5170:11

**passing**
5225:2

**passionate**
5387:7

**passu**
5384:23

**past**
5227:10 5389:13
5393:25

**patent**
5188:8 5192:12 5193:1,
2 5295:8 5338:22,23,24
5339:3 5343:21,24
5344:1 5345:2,3,8
5361:13 5365:23
5367:9 5370:13

**patented**
5167:24

**patentee**
5167:22 5168:4,17
5194:14,21

**patents**
5173:11 5192:12
5195:23 5236:22
5238:8 5283:12,16

5293:15,16 5324:25
5343:16 5344:4,5,9
5348:1 5363:4 5365:25
5366:13,19 5367:11,15,
21,23 5368:1 5374:5,8,
10 5383:17 5387:4,9

**pattern**
5164:25 5363:22,23
5365:25 5387:15

**pause**
5321:16

**pay**
5149:19 5181:10
5190:13,14 5196:16
5242:7,17 5247:22
5261:3 5270:10
5273:12 5276:11
5337:22 5386:6

**paying**
5273:7 5337:24,25
5338:1

**payment**
5326:22 5327:19
5328:15

**payments**
5180:2 5181:3 5199:15
5249:2 5251:14

**penalize**
5349:2,8

**penny**
5324:8

**pension**
5238:11 5242:1
5375:21 5376:24
5377:1 5378:13 5380:9
5386:6

**pensioners**
5230:19 5243:22
5262:23 5387:10

**pensions**
5263:6

**people**
5173:9 5181:23
5196:20 5197:14
5198:22 5205:2
5208:19 5209:14
5232:24 5234:8,12
5235:20 5254:23
5262:15,24 5271:18
5285:21 5290:23,24

5303:8 5307:6 5317:23
5348:22 5371:5,16
5379:3 5380:4

**percent**
5230:25 5238:6,7
5244:2,23 5246:25
5248:15,16 5254:7,10
5258:7 5263:14
5264:17,18,19 5265:14
5323:20,21 5366:13,18,
22 5367:18 5369:14
5371:11,12,23 5372:8
5374:9

**perfect**
5286:12 5310:9 5311:4
5313:13 5315:7,11
5329:6

**perform**
5190:8

**performed**
5257:1

**performing**
5190:11 5199:10
5326:7

**performs**
5330:13

**period**
5273:5 5348:8 5351:14,
18 5366:8,9,12 5367:2,
16,20

**periodic**
5391:21 5393:15

**periods**
5266:8

**permissible**
5154:6

**permission**
5315:9 5323:16,18

**permit**
5244:19

**permitted**
5273:6

**perpetual**
5199:14

**person**
5157:1,21 5160:23
5196:12 5198:24
5204:16 5267:21,22

5310:13 5311:8
5312:13,25 5314:23
5318:22,24 5319:4
5326:15

**personal**
5312:20 5318:7,19

**personally**
5378:23

**personnel**
5205:1

**perspective**
5227:2 5376:17
5393:10

**pertains**
5225:20 5236:2

**phase**
5219:16

**phrase**
5310:6 5312:13
5317:17

**picture**
5230:6,17 5234:13

**pie**
5370:22

**piece**
5198:14 5306:22
5347:19,22

**pile**
5282:18

**place**
5155:23 5166:8
5168:14 5171:8
5179:25 5181:19
5187:18 5201:10
5218:7 5222:25
5308:13 5312:7
5351:20 5353:23
5391:14 5395:6

**places**
5271:14 5321:12
5382:15

**plain**
5298:17 5301:2 5390:6

**plainly**
5170:3

**plaintiff**
5164:6 5308:18

**plan**
5213:24 5255:13
5256:18 5259:25
5279:3 5385:24

**plane**
5169:18

**plank**
5169:11

**planning**
5232:14 5312:3

**platform**
5236:23

**play**
5287:19

**played**
5294:6

**playing**
5306:19 5382:22

**plays**
5234:15

**pleadings**
5215:4 5222:12

**pleased**
5380:24

**pleasure**
5240:3

**pled**
5215:4

**podium**
5374:22

**point**
5166:15 5170:5
5173:22 5174:19
5177:7 5200:13,21
5202:10 5204:3
5210:17 5215:10,23
5216:21 5218:23
5228:6 5237:12
5239:15 5244:17,25
5248:4 5280:22
5285:12,13 5292:6
5295:18 5297:1 5298:8,
22 5299:9 5301:4,18
5302:2,11 5303:17,21,
23 5304:9 5307:7,9
5311:23 5313:9 5314:5,
8 5316:4,15 5317:14
5319:23 5321:17
5324:21 5327:3,17

5328:9 5333:16
5335:11 5336:6
5341:10 5342:6 5343:5
5344:24 5346:22,23
5357:7 5358:25
5369:10 5371:16
5374:13,19 5376:23
5383:20 5384:12
5385:22 5386:8,25
5387:1,8 5388:24
5390:3,18 5392:10

**pointed**
5232:3 5332:5 5390:4
5391:19

**pointing**
5231:24 5269:10

**points**
5208:1 5234:6 5249:9
5259:3 5266:11
5296:19 5297:7
5301:15 5330:6
5338:13

**Poland**
5234:20 5373:13

**polar**
5262:10

**policy**
5164:5,9

**pool**
5321:20,21 5322:6
5347:9,10,20,22 5348:3

**population**
5367:17

**portfolio**
5365:23 5370:14

**portion**
5167:13 5310:21

**portrayed**
5206:20

**posed**
5249:20

**posited**
5227:16

**positing**
5333:19

**position**
5151:13,14,20 5152:4,
25 5153:1 5169:3,6,7,

10,11,13,15 5192:1
5201:6,15 5206:21,22
5207:13 5209:21
5210:2 5212:8,10,
5214:14 5217:12,17,21
5218:1,5 5219:18
5221:1,2,5 5223:12,21
5226:17 5229:14
5230:24 5231:1
5307:19 5315:16
5316:13 5325:24
5338:21 5347:25
5357:19 5364:14

**positions**
5150:9 5153:16
5171:20 5213:3 5214:1
5239:14 5266:11

**possess**
5157:9

**possession**
5156:23 5158:25
5159:2,8 5310:11
5311:6 5313:3 5315:1

**possibly**
5368:23

**post**
5359:7

**post-agreement**
5352:6,17 5353:1
5357:9,13

**post-contractual**
5359:3,7,10

**post-filing**
5351:21

**post-insolvency**
5367:8

**post-petition**
5217:3,8 5220:16
5231:3 5247:23
5252:18 5264:24

**post-trial**
5223:6

**pot**
5212:17 5219:6
5253:11,15,25

**potential**
5319:5,8

**pounds**
5149:12

**power**
5159:25 5160:12
5172:7 5256:24 5260:5

**powers**
5309:11 5384:7,8

**PPAS**
5241:15

**practical**
5391:22

**pragmatic**
5277:5,7

**pre**
5359:8

**pre-allocation**
5247:15 5248:18

**pre-contractual**
5359:11,13

**pre-insolvency**
5362:6

**pre-petition**
5244:23

**preamble**
5225:21 5355:10

**preambles**
5299:12

**precedent**
5381:20

**preceding**
5248:5

**precise**
5310:6 5337:1

**precisely**
5237:13 5344:18
5373:16

**precludes**
5191:15 5254:25
5255:6

**predicted**
5268:14

**preexisted**
5175:6

**prefer**
5262:8 5375:1 5381:2

**prejudice**
5218:17 5221:12,14
5222:2,5 5224:2 5383:1

premise
5393:7

premised
5391:10

preparation
5320:21

prepared
5149:18 5150:22
5360:7,20 5394:11

present
5218:18

presentation
5365:8

presentations
5378:6

presented
5241:14 5279:23
5294:24 5365:5

presenting
5249:24

preserve
5184:15 5214:9

preserved
5175:7

president
5234:4 5343:15

press
5355:22

presumption
5203:24

pretense
5308:17

pretrial
5222:10

pretty
5233:11,24 5234:2
5246:7 5262:19

prevent
5384:15

prevents
5167:14

previously
5188:23

price
5214:9 5241:15
5249:21 5266:1,13

prices
5266:4,8

pricing
5176:7 5178:20
5181:23 5217:3,9,14
5234:11 5235:20,22,23
5236:2 5237:8 5238:13
5270:14 5271:10
5292:14 5294:5
5300:12 5321:14
5329:20,25 5331:15,17,
19 5334:11,17 5336:8
5337:5 5390:9 5391:12,
18

primacy
5203:24

primarily
5152:19 5233:15

primary
5360:23

principal
5264:19

principle
5204:12 5205:10
5295:7 5320:4,9,12,16,
18,20 5329:12 5336:14
5384:21,23 5385:3

principled
5248:21

principles
5203:21 5269:3 5286:1,
4 5329:20,25 5384:1,3
5387:23 5388:12,13
5391:8 5392:12 5393:2

prior
5185:6,20,22 5186:6,7,
9,13 5212:14 5213:5
5283:4 5305:9,14
5306:15 5307:1,4
5319:11 5383:14,20
5389:7,17 5390:18
5391:6

priority
5365:24

prisoner
5210:8,13

privilege
5225:22

pro

5226:24 5227:7,14
5228:5,22 5240:19
5244:9 5246:7,15
5248:20,21 5249:10,25
5251:18,23 5252:1,2
5253:9 5254:12 5255:1,
5,8 5256:4,14 5258:3
5260:1,7 5261:10
5262:4 5276:24 5277:8
5380:18,19 5381:9,23
5384:19,23 5385:10
5387:16 5388:9,18,22
5389:3 5393:20 5394:4

problem
5274:18 5339:4 5368:3,
4

problems
5209:6 5367:1

procedures
5378:24

proceed
5149:18,19 5151:1
5244:19 5391:1

proceeded
5208:5,8

proceeding
5247:20 5248:5
5250:19 5263:17,18
5266:12 5276:3
5292:25 5368:20
5378:23 5380:16,19
5381:21 5382:15
5388:16

proceedings
5240:5 5244:18
5381:15 5395:5,8

proceeds
5217:24 5218:20,21
5219:7 5220:6 5221:3
5261:8,15,17 5272:9
5274:12 5275:6 5276:3,
19 5288:17,18,20
5322:8 5328:3,22
5329:1,5 5350:6
5357:23 5360:9
5361:13 5362:8,11
5369:15 5374:10
5383:5,16 5389:8,18,24
5393:17,21,22

process
5206:13 5216:8,16

5219:9 5220:7,13
5226:2 5259:16
5275:15 5277:4
5332:18 5338:24

processes
5216:14 5251:17

produce
5229:7,9

produced
5231:14 5263:8
5339:20

produces
5230:8 5262:3,5

producing
5238:3

product
5193:21 5250:10,12
5323:1,5,25 5324:1,4,
17 5325:2,8 5344:19

products
5189:12,14 5195:18,21
5196:1,7,17,21 5209:15
5257:3 5273:9,16,21
5324:17

Professor
5235:25

profit
5178:21 5179:5 5181:2
5221:25 5288:13,15
5331:20 5391:23

profits
5273:10 5328:19,20
5329:8 5335:13

program
5191:8

prohibited
5165:4,5 5256:7

project
5165:9 5363:13
5370:11

projects
5318:6

promised
5263:5

promising
5197:13

**prompt**
5162:22 5226:10

**promptly**
5214:9

**prong**
5257:22

**pronounce**
5341:6 5354:11

**proper**
5208:20 5328:5
5342:11

**properly**
5154:15 5176:18
5178:5

**property**
5154:17 5156:25
5157:2,10 5158:17
5159:1,8,16 5160:25
5161:3 5170:8,15
5171:20 5177:14
5179:4 5184:11,16,20
5215:13 5238:3 5239:1
5241:17 5263:2 5270:3,
16 5275:4 5309:7
5310:13 5311:8,13
5312:14,18,19,20
5313:4 5314:2,3,21
5315:10 5318:18
5319:1,2,7,9 5338:18
5360:16

**proportions**
5153:11

**proposals**
5254:18

**proposed**
5196:8 5209:12
5218:20 5247:3,13,24
5260:9 5268:10

**proposing**
5243:7

**proposition**
5154:14 5155:11
5170:16,18 5191:20
5200:14 5203:15
5310:18 5314:19
5315:11 5316:5

**proprietary**
5309:10

**prospect**
5208:8

**protagonists**
5334:15

**protection**
5318:19 5319:5
5330:17

**protestations**
5261:5

**protocol**
5213:18 5382:10

**prove**
5342:3

**proved**
5364:17

**provide**
5205:3,13 5213:18
5241:16 5246:23
5266:14 5275:16,20
5276:17 5289:15
5381:20 5382:17

**provided**
5151:14 5152:19
5179:7 5220:8 5221:24
5258:10 5266:5
5276:16 5304:25
5354:19 5362:9

**provision**
5179:19 5180:6 5182:5
5183:25 5184:3
5185:13 5186:4
5187:19 5199:5,7
5206:8 5281:11,16,21
5282:1,3,15 5283:23
5286:11 5287:17
5289:1,6,19 5304:2,3
5311:17 5328:12,21
5329:6 5344:13

**provisions**
5172:11 5174:12,14,17,
18 5183:17 5185:18,25
5187:23 5189:4
5242:14 5256:13
5259:1 5268:24,25
5279:12 5287:14
5297:20 5315:21
5316:10,20 5319:14
5334:3

**proxy**
5347:16,18 5349:5
5393:20

**public**
5262:13 5266:12
5267:9

**publicly**
5215:11

**pull**
5289:25 5327:15

**pulled**
5259:18

**purchase**
5241:15 5249:21

**purchased**
5258:8, 5263:16
5266:1,5

**purchaser**
5196:16 5219:23

**purchasers**
5259:4 5369:20

**purchases**
5258:10

**pure**
5207:23

**purport**
5270:15 5285:11

**purpose**
5180:6 5220:14
5234:17 5292:1 5300:6,
8,11,20 5306:10
5318:18,21 5333:24
5348:21 5391:17,21,25
5392:8,9

**purposes**
5178:17 5217:15
5237:8 5257:1 5270:13
5271:21 5272:6,11
5274:1 5317:16,18,20,
5318:22 5390:24

**pursuant**
5151:18 5175:19
5195:2 5199:15
5213:23 5227:4
5250:22 5269:19
5273:10 5300:5

**pursued**
5221:18,23 5223:14

**purview**
5252:20

**put**
5151:8 5168:10 5170:1,
16 5171:12,20 5200:15
5207:21 5210:18
5212:3,9 5220:20
5227:22 5228:11
5229:5 5237:9 5241:22
5243:9 5258:1 5261:19
5280:23 5300:8,18
5307:14 5312:7
5313:24 5316:5 5320:2
5321:21 5322:12
5325:11,20,24 5326:10
5327:23 5329:14
5331:18,22 5335:3
5336:24 5345:9
5347:20 5349:18
5351:15,19 5360:1
5362:19 5366:21
5370:13,20,24 5376:1

**puts**
5232:2

**putting**
5168:22 5314:5

**puzzle**
5331:12

**Q**

**Q&a**
5360:5

**qualified**
5168:6,19 5195:15,16,
20,22 5365:7

**qualify**
5195:11

**quantification**
5370:25

**quantify**
5371:10,12

**Queen's**
5308:10

**question**
5161:12 5163:2
5165:21,22 5191:25
5192:4 5193:13 5194:3,
6,22 5197:8 5200:5
5207:16 5210:23
5215:20 5233:4
5236:15 5245:2

5249:20 5250:7
5254:20 5257:14
5264:12 5275:24
5279:4,7 5286:22
5290:18 5294:4 5295:5
5305:6,11,14,24,25
5308:19 5312:4
5316:16,18,21 5325:12,
22 5332:3,4,14
5333:19,20 5335:17
5337:11,12,16 5338:5
5342:11 5344:3 5345:2,
3 5346:9 5347:2
5348:10,12 5352:6
5353:2,4,6,7,19 5354:2,
3,8 5355:9 5356:18
5357:15,16 5360:8
5381:1 5384:18
5388:15 5389:6
5392.22

**questioned**
5232:9 5234:1

**questioning**
5316:17

**questions**
5162:19,20 5211:15
5224:10,12 5266:17,19
5277:14,17,20 5297:2
5328:6 5357:25
5369:10 5374:12
5380:17 5384:10

**quick**
5222:9 5380:5,6

**quickly**
5317:11, 5329:13
5337:10 5342:15
5349:13 5360:3

**quietly**
5240:4

**quote**
5167:11 5217:10
5249:8 5255:18
5313:17,18 5315:6

**quote/unquote**
5265:16

**Qureshi**
5375:9

---

## R

---

**R&d**
5153:14 5171:8 5179:3
5185:1 5190:8,12,13,14
5191:2,8 5199:10
5273:20,24 5322:6,8
5325:5,19 5326:7,14
5327:7,25 5328:2,14
5347:13,14,19 5348:7
5349:6 5351:17
5361:10,25 5362:2
5364:21 5365:16
5366:20 5368:16

**rabbit**
5280:22 5281:2

**raise**
5222:10 5224:13
5296:19 5316:15

**raised**
5165:21 5174:18
5222:11 5223:5
5281:17 5283:3 5297:2,
8 5317:14,25 5336:6
5390:19

**raising**
5338:13

**ran**
5233:1,7,11,21,25
5234:3 5277:10

**range**
5231:1 5267:6 5306:4
5376:2

**rata**
5226:24 5227:7,14
5228:5,22 5240:19
5244:9 5246:7,15
5248:20,21 5249:10,25
5251:18,23 5252:1,2
5253:9 5254:12 5255:1,
5,8 5256:4,14 5258:3
5260:1,7 5261:10
5262:4 5276:24 5277:8
5380:18,20 5381:9,23
5384:19,23 5385:10
5387:16 5388:9,18,22
5389:3 5393:20 5394:4

**rate**
5247:19 5265:18

**rates**
5209:6

**rational**
5229:14 5271:19

**Ray**
5275:23

**reach**
5203:18

**reaching**
5391:2

**read**
5151:5 5162:15
5180:19 5186:17
5193:8 5197:21
5198:11 5199:22,23
5206:9 5216:18,23,24
5237:11 5239:5 5253:1
5255:18 5265:12
5283:5 5290:13
5295:11 5315:17
5316:6 5327:4 5353:16

**reader**
5286:16

**reading**
5149:13 5170:11
5192:23 5265:4 5283:7,
8 5298:17 5352:2

**reads**
5382:24 5385:17

**ready**
5358:14

**reaffirmed**
5204:5 5205:17

**real**
5168:21 5173:20
5194:6 5294:1 5299:23
5312:5,6,15,18,25
5314:3,23 5365:22

**reality**
5214:17 5219:14
5263:12 5362:15

**realize**
5219:3,4 5223:13,17,19
5239:7

**realized**
5251:9 5262:6

**reason**
5150:18 5158:7,24

5173:7 5197:10 5218:3,
5 5221:17 5250:14
5268:19 5274:25
5300:14,20 5302:2
5307:17 5337:20
5338:19 5344:20,21
5366:14,15 5369:4

**reasonable**
5226:10 5230:9 5259:2

**reasoning**
5391:9,16

**reasons**
5170:21 5209:5
5236:13,18 5244:10
5246:21 5256:3
5261:21 5270:20
5274:2 5277:6 5356:15,
17

**rebuttal**
5150:14 5192:6,9
5196:4 5201:25
5266:23 5342:18
5374:14 5375:20
5376:8

**rebuttals**
5375:25 5376:3

**recall**
5323:4 5325:21
5352:20,24 5370:10
5374:1 5390:5 5394:6

**receive**
5214:4 5242:9 5243:17,
19,24,25 5244:1,22
5248:15 5249:3 5263:4
5265:14,15 5275:5,19
5326:23 5327:6,19
5328:15

**received**
5244:15 5273:1,8,23

**receivership**
5387:23

**recent**
5298:23 5343:7

**recently**
5204:5 5205:17

**recess**
5277:24 5278:8,9

**RECESSED**
5203:10 5358:8

**recharacterized**
5368:16

**recital**
5154:23 5162:14,
5172:15 5175:13,22
5177:17,18 5178:4
5182:14 5183:2,3,6,15
5184:3,8,20 5185:1,14,
19,20 5186:5,9,23
5187:1,14 5285:15
5287:16,23 5291:15,16,
20 5299:15 5302:3,4,
12,21 5304:14 5317:4
5355:14

**recitals**
5185:15 5285:10,25
5286:2,9 5287:2,19
5297:8,11,15,21
5298:6,17 5299:11,20
5301:13 5317:6

**recitation**
5215:25

**recite**
5202:1

**recited**
5286:13

**reciting**
5178:7

**recognition**
5208:25

**recognize**
5155:19 5185:8
5285:15,18 5288:8

**recognized**
5252:23 5279:13
5363:9,15 5369:21,24

**recognizes**
5185:15 5188:24
5281:8 5282:16
5369:19 5372:13,14

**recognizing**
5242:17 5284:3
5294:15 5359:16

**reconcile**
5214:14

**record**
5212:25 5213:5
5214:15 5219:18
5259:8,11 5265:25

5338:7 5364:8 5379:25
5381:22 5385:12
5389:24

**recorded**
5395:9

**recoveries**
5230:23 5243:20
5244:22 5252:13
5258:23 5263:14

**recovery**
5244:14 5260:6
5263:15 5275:16
5276:5,8,14

**recreate**
5178:9

**redemption**
5158:22,23

**reduce**
5253:25 5254:8
5265:17

**reduced**
5247:19

**reduces**
5253:11

**reductions**
5263:6

**reenacted**
5284:1 5359:14

**refer**
5150:23 5159:20
5281:21 5283:20
5294:10 5298:22
5299:1 5308:11
5311:22 5317:25
5346:20 5366:8
5385:14 5386:22

**reference**
5162:16 5176:23
5178:14 5180:10
5192:16 5217:2,8
5283:5,8 5287:10
5318:5 5356:6 5364:24
5385:23

**references**
5176:7 5292:12
5297:24

**referred**
5183:7 5241:16
5282:21 5291:15

5296:4 5304:15
5307:21,25 5319:14
5329:17 5348:1
5352:20,23 5353:24
5359:2,20

**referring**
5178:5 5195:22 5217:6,
10 5225:15 5231:11
5297:20 5355:25

**refers**
5159:15 5182:13
5183:4 5267:3 5282:4
5300:2 5301:12 5304:3,
16 5309:25 5320:18
5346:14 5355:22,24
5356:5

**reflect**
5175:1 5180:20
5185:25 5264:20
5293:25 5294:2

**reflecting**
5180:5 5330:21

**reflects**
5179:8 5180:14
5264:19 5290:20
5362:15

**reformation**
5292:22

**regard**
5251:2

**regime**
5184:23

**regional**
5233:14

**regions**
5233:17

**register**
5338:23

**registered**
5236:24 5238:8
5343:24 5363:4
5367:11

**Regrettably**
5226:1

**regulated**
5337:2

**regulations**
5270:14

**Reichert**
5176:6 5235:25 5270:9
5271:5 5272:22
5273:14

**Reichert's**
5270:11,17 5271:16

**reject**
5207:20 5210:10
5260:24

**rejection**
5261:2

**rejects**
5162:4

**related**
5233:4 5273:16
5330:15

**relating**
5265:25 5380:17
5387:21,25 5388:3,7,17

**relationship**
5256:10

**relative**
5153:13 5154:4
5273:18 5367:4

**release**
5355:22

**relevant**
5151:10,15 5198:2,5,16
5200:7 5268:6 5306:25
5315:3 5345:22,24
5351:14,18 5362:23
5383:14 5384:3
5387:24 5393:2

**relied**
5206:12 5288:11
5310:24

**relies**
5354:15

**relieve**
5199:25

**rely**
5164:8 5207:9 5222:24
5281:7 5307:11
5310:17 5311:15
5316:20 5328:12

**remain**
5252:19 5256:23
5270:3

**remained**
5216:10

**remaining**
5199:12 5254:1
5291:10 5374:13

**remarked**
5170:7

**remember**
5190:23 5281:17
5289:7 5305:16

**remembered**
5320:10

**reminded**
5293:2

**remove**
5207:5,6

**repay**
5158:23

**repeat**
5214:23 5241:6

**repeated**
5178:15

**repeatedly**
5284:21 5285:14,
5292:18 5363:10

**repeating**
5251:18

**repeats**
5187:9 5188:15

**replete**
5299:18

**reply**
5201:11,19,20 5225:19
5295:12 5342:18
5353:12

**report**
5216:25 5217:9
5245:11,12 5248:3
5360:20 5371:21

**REPORTERS'**
5395:1

**reports**
5215:10,11,23 5245:10
5360:22 5389:14

**represent**
5226:3 5258:7

**representations**
5215:24 5222:23
5345:10,11 5350:9
5360:13 5361:2

**representative**
5367:25 5382:14

**represented**
5293:20 5308:16
5362:13 5366:7 5367:3

**represents**
5369:14

**reproduce**
5365:20

**Republic**
5298:25 5299:2,4
5353:19,21 5354:13
5355:3,13,21 5356:3

**reputations**
5212:22

**request**
5178:24

**require**
5229:8 5277:4 5313:2
5314:24

**required**
5160:3 5199:9 5214:1
5216:13 5221:10
5360:21

**requirement**
5190:7 5320:6

**requirements**
5320:16

**requires**
5282:12

**research**
5232:16 5235:4,7
5272:17 5274:6,7

**reservation**
5166:9 5213:10,12,15
5214:16 5219:22
5223:8

**reserve**
5211:12,13 5220:10
5266:22 5277:17
5374:13 5378:16

**reserved**
5213:7 5376:5,6,7

**reserving**
5224:11

**reside**
5247:11

**residual**
5178:21 5196:25
5218:13,17 5241:10
5360:15 5365:23
5370:13

**resolution**
5216:2 5219:16
5220:11

**resolve**
5219:8 5221:20 5227:2
5229:19 5249:5
5357:11

**resolving**
5229:17

**resonate**
5271:6

**resources**
5235:7 5237:10

**respect**
5182:6 5200:2 5227:21
5234:20 5235:21
5243:16 5269:3,8,9
5273:19 5285:7,12
5289:19 5301:1
5302:23 5328:10,19
5335:16 5342:12
5346:21 5367:25
5368:20 5370:5 5374:1

**respected**
5364:19

**respectful**
5268:16 5300:23
5301:16 5302:8 5314:1
5316:7,11 5319:20
5320:1 5344:22 5346:4
5347:3 5349:6,16
5350:15 5352:1
5356:24

**respectfully**
5257:15 5264:2
5270:10 5286:3

**respective**
5152:8 5283:20
5286:13 5361:8
5364:21

**respects**
5213:1 5252:5 5268:25
5334:3

**respond**
5211:14

**response**
5279:10

**responses**
5360:15

**responsibility**
5190:14

**responsible**
5273:20

**responsive**
5215:4 5222:12

**rest**
5151:17 5287:3

**restates**
5187:10

**restraint**
5388:18,21

**restricted**
5234:11

**restriction**
5151:22 5152:15
5196:3 5207:6,18
5208:10 5209:9 5211:6
5213:19

**restrictions**
5154:1

**restructure**
5252:14

**result**
5165:7 5171:8 5181:3
5184:7 5223:23
5229:24 5230:3
5238:13 5244:12
5247:2,13 5255:24
5262:12 5263:13,19
5273:18 5274:20
5277:11 5296:17
5326:23 5327:1 5328:2
5331:5 5393:20

**resulted**
5262:16

**resulting**
5392:4

**results**
5229:7,9,12,14
5240:11,14 5241:20
5243:6,12 5244:7
5246:6,8,19,24 5248:13
5262:1

**RESUMED**
5203:11 5278:10
5358:9

**retain**
5247:17,21 5248:17

**retained**
5196:13,14 5197:22
5208:7, 5211:8 5249:4

**retaining**
5161:11

**retains**
5194:22

**retention**
5174:4 5184:7

**retirement**
5263:4

**retiring**
5291:7

**return**
5191:4 5263:25 5331:2

**returns**
5330:3,18

**revalue**
5252:14

**revenue**
5152:20 5208:17,18,20
5217:15 5229:4
5243:13 5246:20
5247:5 5250:3 5261:16,
22 5273:18 5368:15
5373:4

**revenues**
5242:9 5250:5 5322:1,4

**review**
5228:21 5240:17

**revolves**
5155:6

**rewrite**
5212:2 5274:19

**ridiculous**
5250:3,7

**right-hand**
5310:25

**rightful**
5155:18

**rightfully**
5157:9

**rights**
5151:18,21,24 5152:3,
7,9,16 5154:9 5159:16
5160:3 5161:4,6
5162:15,17 5168:2,15,
17,18 5169:22 5171:1,
3,6,7,11,13,16 5172:7,
9,16,19,21,24 5173:25
5174:3 5175:18,24
5176:3,4,6,13,24
5177:3,4,9,10,15
5178:6,8 5184:15
5188:7 5190:1 5193:8,
9,18 5194:13,19
5195:7,15,23,24
5196:6,23 5197:19
5198:1,6,23 5199:9,20,
24 5201:7,14,15
5208:23 5209:2
5210:24 5211:7
5212:13 5213:7,10,13,
15 5214:16 5215:22
5218:10,23 5219:22
5220:10 5223:8 5236:4
5252:8,14 5260:2,12
5261:1 5269:7,11
5270:25 5271:1
5273:22 5275:4,5
5285:11,21 5292:19
5294:8 5302:25 5309:6,
15,18,20 5332:21
5333:4,5,8 5334:19,21
5335:15,24 5344:1
5350:23 5351:2,5,13,23
5357:2 5364:9 5373:11
5383:1,4 5390:11

**ring**
5348:24

**rise**
5153:17 5191:2
5294:20 5375:8
5387:16

**risk**
5179:10,16,18 5180:1,
5,15 5181:13 5214:3
5249:13 5251:20
5271:4 5282:8 5393:4

**risks**
5179:11 5180:16
5181:4 5287:24
5330:15

**risky**
5263:17

**RMR**
5395:4

**road**
5225:24

**Rockstar**
5196:19 5209:7
5217:18,20,24 5218:8
5219:10 5220:4
5228:10 5283:12
5293:16 5325:2
5370:15,21

**role**
5249:4 5287:20 5294:6
5383:10,11

**roll**
5360:2

**room**
5182:19 5189:18
5254:23 5261:11
5264:7 5282:25

**rooted**
5365:10

**roughly**
5377:2

**royalties**
5273:7

**royalty**
5200:2 5361:14

**royalty-free**
5199:19

**RPE**
5192:5,17,24 5193:7,9

**RPES**
5191:6 5193:17,24
5194:2 5315:5 5321:19
5325:4 5338:9 5346:24
5347:4,9 5351:17

**RPR**
5395:3

**RPSM**
5152:18 5154:8
5178:22 5179:8,15,24

5180:5 5181:16,25
5182:4 5190:9,17
5191:4 5199:6 5209:17
5242:14 5273:10
5326:8,15 5327:21
5351:19

**rub**
5359:4

**Ruby**
5181:8

**rule**
5207:11 5359:2 5381:8

**rules**
5203:21 5220:17
5285:24 5305:9
5378:24

**run**
5233:23 5236:3
5238:12,18 5315:23

**runs**
5335:3 5363:24

---

**S**

**S-i-s-t-e-m**
5298:25

**safe**
5300:22

**sale**
5153:13 5216:8,16
5218:13,16,20 5220:6
5228:10 5233:16
5288:17 5291:13
5293:19 5322:8
5328:22 5329:1,5
5331:23 5332:7
5336:13 5350:7
5357:23 5360:9 5362:5,
6 5363:13 5370:15
5374:9 5383:5,6,16
5389:25 5393:21

**sales**
5208:18 5209:4 5214:8
5223:16,21 5235:4
5241:13,18 5249:22
5261:8 5273:9 5283:14
5288:20 5369:14
5370:8,13,16,21
5371:18,22,24 5372:9,
15,18 5373:2 5393:17

**sample**
5366:14,16 5368:4,5
5369:1

**SANTEDICOLA**
5395:3, 19

**SAS**
5373:19,22

**satisfied**
5259:1 5300:16

**satisfy**
5257:21

**Sattva**
5205:18 5226:20
5352:2

**save**
5255:23

**saving**
5359:25

**scenario**
5242:22 5243:23
5244:24 5246:5,10

**scenarios**
5247:3

**schedule**
5178:15,16,18 5281:15
5282:1,10,15 5283:23
5284:2,11,21 5285:2,16
5287:9,15 5290:12
5292:16 5299:17,21,25
5300:3,5,6,14,17,19,24
5327:8 5331:22
5359:15 5377:13

**schedules**
5297:8 5299:22 5301:4,
13

**scholarly**
5159:6

**scholars**
5158:5

**scope**
5151:22 5152:14
5189:19,21 5194:7
5196:2 5207:5,18
5209:9,13 5211:5
5277:3

**scotches**
5162:3

**Scotia**
5311:25 5312:1

**screen**
5281:16 5289:9
5291:22 5307:25
5318:14 5329:15
5340:23 5343:11
5382:23

**scrutinized**
5381:16

**scrutiny**
5215:7

**Sean**
5217:9

**seated**
5278:11 5358:10

**second-last**
5158:18 5163:8

**secondary**
5258:10

**secretary**
5234:7

**secrets**
5339:22

**section**
5218:15 5299:25
5327:2 5328:20
5329:22 5354:20
5382:24,25 5384:6

**security**
5343:19

**seek**
5226:8 5383:4

**seeking**
5388:5

**seeks**
5364:9 5393:20

**segue**
5201:17

**seize**
5343:22

**seized**
5344:9 5346:2

**self-determination**
5252:6 5256:16

**sell**
5164:6 5195:18
5212:16 5221:19
5272:7,8 5273:16
5275:5 5322:24,25
5323:9,12,15 5324:4
5326:1 5328:2 5336:16
5373:9

**sellers**
5293:22

**selling**
5196:1 5250:23
5331:21 5383:8

**senior**
5232:24 5233:10
5234:8

**sense**
5157:14 5163:4,6
5168:21 5189:24
5214:17 5312:12
5313:11,13 5315:7,11
5322:13 5328:10
5329:6,10 5337:23
5347:5,6 5356:25
5366:1 5376:18
5378:19 5389:10

**sensibilities**
5277:5,8

**sensibly**
5158:1 5376:22

**sentence**
5314:19 5318:15,16
5344:13

**separate**
5155:9 5159:13 5161:9,
24 5163:3, 5165:17,19
5166:1 5170:17
5174:20 5175:8
5192:24 5251:11
5255:19 5256:1
5286:19 5385:8 5387:6

**separated**
5315:8

**separately**
5159:15 5223:9
5369:25

**separateness**
5252:5 5256:13,16

**separation**
5161:7 5164:21

5173:17 5183:19
5315:13

**September**
5395:15

**series**
5170:6

**serve**
5264:1

**serves**
5246:15

**service**
5238:4 5368:15

**serviced**
5235:9 5237:21

**services**
5233:13 5257:3

**servicing**
5237:25

**set**
5178:6 5184:19 5192:6
5194:25 5213:3
5224:23 5225:1,5,18
5251:25 5254:13
5281:3 5318:5 5329:8
5342:7,9,13 5345:5
5395:6

**sets**
5153:15 5194:20
5289:15 5342:2

**setting**
5191:11

**settled**
5361:12

**settlement**
5239:12 5247:24
5265:16 5361:12

**shape**
5256:15

**share**
5190:16 5191:4
5221:25 5288:16
5300:4 5321:22 5362:1

**shared**
5173:4 5279:20 5281:7,
9,12 5284:22 5294:3
5361:13 5362:16
5363:7,19,23 5364:20
5393:14



**shares**
5181:5 5299:10
5353:18,20,24 5354:1,
10,12,21,23,25 5355:4,
12,19 5356:3

**sharing**
5152:18 5154:8
5175:24,25 5180:2
5199:6 5209:17
5217:15

**Sharon**
5220:24

**sheet**
5361:20 5364:12
5373:6 5385:20

**shield**
5247:9

**shielded**
5318:7

**shock**
5214:23

**short**
5214:16 5244:4

**shortage**
5204:18

**shorter**
5377:6

**shorthand**
5395:13

**shortly**
5333:9

**shot**
5347:21

**show**
5161:23 5174:19
5260:21 5266:10
5290:1 5291:8 5294:23
5338:15 5366:10
5388:20

**showed**
5238:6 5299:13
5369:20

**showing**
5266:4 5286:11
5302:15 5306:11
5359:12

**shown**
5221:21 5264:16,17

5311:16 5339:19

**shows**
5220:25 5242:21
5243:8 5284:5 5302:12
5315:19 5316:13
5328:25 5364:16
5365:22,24 5366:2

**side**
5213:16 5218:14
5254:23 5329:2,3
5334:15

**sideways**
5317:15

**sign**
5321:3, 5338:9,22,25

**signed**
5321:5 5341:13,16,20

**significance**
5288:14

**significant**
5241:24 5243:20
5248:6 5276:5,10,13
5351:12 5361:25

**significantly**
5247:19 5248:23

**signify**
5163:12,15,16

**signing**
5340:7

**silent**
5380:22

**Simex**
5301:7

**similar**
5164:24 5176:3 5209:5
5210:19 5262:5 5344:3

**similarly**
5220:23

**Simon**
5380:12

**simple**
5385:1 5389:16

**simply**
5169:16 5182:3
5192:18 5207:25
5214:13 5245:23
5247:5 5262:10

5268:12 5274:19
5275:8 5276:25
5286:15 5287:20
5301:4 5332:9 5362:14
5371:18 5372:10
5385:2 5389:25

**simultaneously**
5318:23,25

**SIN**
5340:1,2

**sincerely**
5381:24

**single**
5219:3 5247:9 5255:20
5385:7,14 5390:3
5392:8

**sir**
5211:20 5245:21,24
5246:2 5254:21 5267:1
5278:17,21

**Sistem**
5298:25 5306:3 5353:9,
10,11 5354:4

**sit**
5202:22,23 5277:15,
5349:19 5353:10
5356:23 5382:6

**sits**
5377:5

**sitting**
5240:4 5298:24
5338:17

**situated**
5262:24

**situation**
5235:13 5344:2
5392:17

**six-year-long**
5229:18

**size**
5253:15

**skewed**
5367:5

**skip**
5314:21

**sky**
5320:11

**slide**
5249:6

**slides**
5225:1

**slightly**
5203:9 5210:18 5300:8
5336:24

**slowly**
5374:22

**small**
5235:6,9 5236:2
5237:20 5358:25

**snazzy**
5262:20

**software**
5324:6

**sold**
5241:10,18 5248:24,25
5250:23,25 5270:4
5273:21 5283:13
5288:18 5293:16,21
5348:9 5367:16 5371:3,
8 5373:10

**sole**
5172:7 5202:12
5267:21,22 5284:17
5285:19 5293:17,23
5340:15 5362:7,12
5364:9

**solely**
5160:23 5250:11
5256:23 5261:16,18

**solution**
5249:18 5250:17

**solutions**
5240:12

**sophisticated**
5259:3

**sort**
5209:6 5212:17 5216:5
5219:24 5334:19
5351:5

**source**
5173:6

**sovereignty**
5252:7

**Spain**
5373:13

**spanned**
5257:9

**speak**
5154:24 5240:19
5284:1 5332:6 5376:20

**speaking**
5163:7 5176:18 5390:6

**speaks**
5175:14,21,22 5182:14
5288:20

**special**
5226:8 5280:12

**specialized**
5320:17

**specific**
5180:7 5185:21,23
5266:14,15 5275:24
5287:10 5380:22
5381:1 5385:9 5388:8
5393:4

**specifically**
5154:11 5218:12,24
5255:15 5279:11
5281:12,14 5282:4
5283:15 5286:8
5291:25 5301:23
5340:10 5359:14
5383:18

**specifics**
5226:22 5243:15

**spelled**
5298:25

**spend**
5154:12 5189:21
5322:16,20 5348:13
5349:6

**spending**
5366:20 5367:12

**spends**
5250:8,9

**spent**
5387:3 5389:12

**split**
5178:22 5273:10
5288:13 5334:18

**spoke**
5275:11

**spouse**
5392:18

**square**
5306:14 5352:20

**squeeze**
5378:20

**stage**
5229:19

**stakeholders**
5226:3

**stand**
5191:21 5209:4 5316:8,
9 5375:14 5391:13

**standard**
5172:20 5187:3
5317:12 5319:25

**standing**
5267:21,23 5314:19
5389:9

**stands**
5150:18 5191:20
5215:6

**start**
5155:13,23 5208:2
5214:25 5224:23
5225:17 5268:3,12
5273:1 5296:20
5333:22 5355:9 5360:5
5365:3 5375:1 5376:13
5377:9 5380:3

**started**
5311:20 5382:5

**starting**
5298:14 5299:20
5351:19 5379:20

**starts**
5301:11 5309:1 5341:5
5350:1

**state**
5268:25 5302:22

**stated**
5268:9 5281:5

**statement**
5167:12 5194:11
5215:15 5221:8 5273:4
5299:12 5347:6
5355:11 5363:1

**statements**
5216:18, 5222:19
5281:18 5282:20
5293:24 5334:1
5345:14,15 5350:10
5356:1 5361:23
5362:19

**States**
5171:17 5193:21
5200:24 5201:7
5234:21,23 5244:21
5247:14 5271:25
5274:23 5276:4

**stating**
5268:12 5275:7

**statutes**
5387:24

**statutory**
5158:10

**stay**
5239:9 5242:24

**Steep**
5225:11

**stenographically**
5395:9

**step**
5206:17,22 5231:18,22
5290:4

**stick**
5360:18

**sticking**
5282:20

**stood**
5208:16 5268:13

**stop**
5356:7 5384:25 5394:3,
11

**stopped**
5230:11 5378:3

**stopping**
5386:3 5392:10

**stops**
5387:13

**straights**
5348:17

**strange**
5181:18

**strategic**
5232:14 5234:17

**stress**
5205:16

**stretch**
5243:25

**strictly**
5271:21

**stripped**
5370:12

**strongly**
5388:20

**structure**
5183:13 5187:15

**structured**
5240:13

**struggling**
5361:18

**stuff**
5356:10 5377:14

**subcommittee**
5216:5

**subject**
5151:22 5152:14
5153:20 5190:22
5198:1 5200:6 5211:15
5215:13,19 5256:11
5281:19 5289:20,21,24
5291:16,18 5324:2
5325:9 5357:25

**subjective**
5204:13,15 5205:7
5232:4 5305:23
5306:12 5307:2

**sublicences**
5202:6

**sublicense**
5189:12

**sublicenses**
5202:3

**sublicensing**
5200:16 5201:9

**submission**
5150:8,14 5151:8,17
5154:11 5170:15
5180:22 5181:14
5182:1 5184:4,20

neesons    WF
www.neesonsreporting.com
www.wilfet.com

5186:3 5206:17 5209:3
5211:9 5300:23 5302:9
5314:1 5316:7,11
5317:5 5319:21 5320:1
5344:22 5346:4 5347:3
5349:7,16 5350:15
5352:2 5356:24 5382:9
5383:21 5384:17
5385:16 5386:21
5390:5

**submissions**
5150:1,2,5 5231:15
5264:9 5296:18
5305:21 5347:7 5377:6
5382:5 5384:20
5389:14,15 5390:22

**submit**
5212:18 5214:1 5264:2
5266:4 5270:10 5283:7
5286:4 5292:1 5383:11
5388:6

**submitted**
5245:10 5248:3
5257:19

**subsequent**
5186:14

**subsidiaries**
5215:14 5216:7,9
5233:17,20 5234:15
5236:21 5293:15
5363:14

**subsidiary**
5235:1 5373:19

**substance**
5217:1 5222:16 5330:4

**substantial**
5179:12 5180:16
5224:4,13 5242:9
5273:17

**substantially**
5309:19 5331:1

**substantiate**
5260:15

**substantive**
5240:23 5252:3,4
5255:13,16 5256:8
5257:23 5387:25
5388:1,3,5,6,17

**substantively**
5261:25

**successful**
5273:2,3,5 5370:14

**succession**
5312:4

**suffer**
5226:5

**suffered**
5201:4

**suffers**
5223:7

**sufficient**
5185:7 5244:13

**suggest**
5217:20 5271:18
5379:2,4,19

**suggested**
5248:14 5294:5

**suggesting**
5286:9 5385:4

**suggestion**
5292:10 5379:6

**suggestions**
5319:13

**summarized**
5151:12

**summary**
5207:12 5208:3
5329:22

**sums**
5220:15

**supervision**
5251:12

**supply**
5298:18

**support**
5218:19 5219:18
5227:6,18,22 5228:13
5235:3 5385:9 5387:16
5388:8 5389:3

**supported**
5158:22 5210:21
5241:7

**supporting**
5227:5 5229:23 5242:3
5273:21

**supports**
5384:12

**suppose**
5180:14 5189:8,15
5283:4 5292:22
5348:11,15

**Supreme**
5167:9,20 5168:11
5170:7 5191:18 5204:5
5205:17 5226:20
5298:1,5,20 5312:1

**supremely**
5365:6

**surprising**
5297:14

**surprisingly**
5316:12

**surrender**
5249:23

**surrendered**
5152:3 5208:17

**surrounded**
5320:20

**surrounding**
5205:21 5206:11
5227:17

**survivor**
5255:21 5256:2

**suspenders**
5343:5

**sustain**
5254:16,17

**sustainable**
5228:24 5241:11
5244:6 5248:22 5259:2
5262:5 5263:12,20

**Swift**
5363:13

**swirl**
5223:1

**sympathy**
5377:15

---

**T**

---

**tab**
5155:20 5156:19

5158:3 5159:18 5163:6,
24 5164:2 5165:1
5167:7 5170:9,10
5177:20 5182:10,23
5184:25 5187:8
5191:18 5194:12
5205:18 5298:4 5299:6
5301:9 5307:25 5308:6
5311:24 5318:2 5343:9
5353:10,11

**table**
5220:21 5367:18
5390:21

**tabs**
5182:9

**tailing**
5366:5

**takes**
5170:14 5230:4
5231:21 5270:5
5301:17 5308:12
5333:4 5365:23,24

**taking**
5234:16 5262:9 5271:4
5285:25 5357:24

**talk**
5158:1 5161:10
5240:12 5242:10,19
5244:11 5248:20
5254:19, 5269:24
5282:6 5302:17
5303:12,15,16 5306:8,9
5315:13 5328:5
5363:17 5379:24

**talked**
5176:8 5199:4,5
5261:21 5273:4
5364:19

**talking**
5153:4 5177:12
5189:19,25 5208:1
5220:15 5256:4 5284:2
5287:1,2 5288:15,16
5307:1,2 5313:16
5315:6,15 5349:25
5350:13 5368:21

**talks**
5157:18 5158:8
5162:14 5253:2 5282:5,
6,7,8 5313:10 5326:22
5329:23

**task**
5380:15 5385:1
5391:19

**tasks**
5337:8 5348:20

**tax**
5178:24 5181:23
5205:1 5265:20
5270:13,19 5271:6,9,
10,21 5272:5,11 5274:1
5294:6 5312:4 5317:13,
16,18,20,22 5318:2,21
5319:8 5320:16
5333:25 5336:21
5360:7,13,18,20 5361:2
5368:9,11,14,22 5369:4
5390:10,24 5392:2

**taxable**
5294:14

**taxation**
5233:14 5236:3
5300:15 5320:14
5350:5,9

**taxes**
5272:1

**taxing**
5182:1

**taxpayer**
5318:5

**taxpayers**
5318:6,9

**Tay**
5217:5

**team**
5264:7 5381:1

**teamsters**
5379:9

**technology**
5154:25 5155:4
5175:18,22,23 5176:19,
20 5177:11 5179:14,21
5180:18 5182:7 5185:5
5188:17 5194:25
5195:1,7,19 5196:22
5198:21 5232:11
5234:5 5262:20
5269:18 5273:16,17,
5279:21 5281:23
5282:2,5,9,11,14,17,23
5283:1,9,21 5284:4,9,
23 5285:4 5293:2,7,10
5294:3,13,17 5301:24
5302:6 5303:14
5304:13 5305:1
5321:20 5322:21,22
5323:14,22,25 5324:1,
5,7,24 5348:20 5362:17
5363:18 5366:3

**telling**
5339:21

**tens**
5226:3 5262:15

**term**
5155:15 5190:9
5227:13 5230:2
5260:18 5283:9,
5302:10,23 5340:18

**terminal**
5366:6 5367:4

**terminated**
5221:7

**termination**
5216:15 5218:16

**terminology**
5337:1

**terms**
5154:8 5162:12 5168:6,
19 5187:2 5191:22
5194:15,18 5195:2,4
5197:20 5199:4
5205:23 5221:2
5227:14 5233:22
5234:15 5235:3,22
5246:17 5269:20
5271:6 5290:5,7
5291:6,7 5340:11
5353:1 5390:16

**territories**
5152:8 5153:4 5205:6

**territory**
5152:10,12 5175:19
5227:12

**test**
5257:22

**testament**
5359:21 5389:16

**tested**
5222:13

**testified**
5237:8 5259:23 5269:6
5273:12 5275:21
5390:10

**testifying**
5259:18

**testimonies**
5271:17

**testimony**
5216:3 5220:24
5234:25 5241:14
5270:7,8,12,18 5271:7,
15,16 5321:13 5345:18
5389:14

**text**
5167:11 5188:6 5206:9,
14

**the's**
5328:12

**theft**
5164:5

**theme**
5219:15 5220:4

**themes**
5361:3

**theories**
5212:2 5215:3 5218:19
5222:15 5226:23
5228:19 5229:4 5241:5
5243:9,14 5245:11
5246:17 5250:1,2
5261:23

**theory**
5154:3, 5210:6,7,8,
5213:21 5223:9,11
5227:14,15,20 5240:19,
21 5241:3,9,22 5243:1,
13,17 5244:5,9 5246:7,
8,16 5247:5 5248:21
5249:10,25 5250:3,6,16
5251:23 5255:1,6,9
5260:24,25 5261:2,16,
18,24 5269:10 5275:15
5276:24 5277:2
5325:20 5362:9 5374:2
5394:5

**thereto**
5310:14 5311:9

**thing**
5165:25 5172:10

**testified**
5209:6 5269:25
5285:17 5293:11
5299:8 5309:10
5313:16 5315:20
5317:19 5329:14
5334:23 5336:6 5341:1,
8 5350:21

**things**
5171:16 5185:22
5199:10 5258:19
5279:17 5312:23
5315:18 5317:21
5319:17 5331:11

**thinking**
5235:25 5332:6
5333:23 5378:16

**thinks**
5204:16

**thought**
5150:25 5214:5
5230:11 5268:16
5275:12 5280:10
5303:21 5317:24
5337:20 5352:15
5382:6

**thousands**
5226:4 5389:15

**three-quarters**
5298:19

**threshold**
5270:22 5380:15
5389:6

**throw**
5215:2 5250:18

**throwing**
5334:22,23

**tick**
5195:14

**tidal**
5202:17 5296:4
5359:20

**tide**
5359:23

**tied**
5238:14

**tier**
5233:20

**ties**
5200:4, 13

**tight**
5371:4

**time**
5154:13 5158:23
5161:18 5163:5
5178:16 5183:4
5189:21 5198:17
5199:22 5202:9,21,25
5203:2 5204:9,11
5211:12,13,16 5213:23
5219:20 5223:6 5228:4
5247:20 5248:4 5250:8
5258:16 5260:23
5266:11,22 5267 6,20,
24 5273:5 5275:1
5277:13,20,24 5280:16,
24 5281:3 5283:19
5284:7,21 5293:11,13
5296:20 5304:23
5306:7,8 5307:6
5308:13 5319:3 5336:7,
18 5337:10 5348:8,23
5351:8,14,19 5358:3,4
5359:6,12 5360:1,2,6,
12,19 5361:3 5362:13
5363:25 5364:5
5367:22 5369:21
5374:13,19 5375:2,18,
20,24 5376:3 5378:16
5381:4 5385:22 5386:8,
9 5387:1,2,4 5389:10
5390:19 5395:6

**timeline**
5375:16

**timelines**
5375:13

**times**
5213:5 5218:11 5284:6
5362:23

**title**
5152:22 5153:10,22
5154:19,24 5155:3,7,
10,14 5156:20,21
5157:5,12,13,19
5158:1,11,14,19,20
5159:1,6,7,10,14,15
5160:16,17 5161:3,5,9,
20,21 5162:1 5163:3,7,
10,13 5164:10,11,17,
21,22,23 5165:12,13,
14,17,18,19 5166:3,9,

10,12,17,18 5168:9,22
5169:8,20 5170:14,18
5173:3,13 5174:19,21
5175:6,9,21 5177:11
5183:9,14,19 5184:4,7,
18 5186:5,8 5187:11,21
5188:15,16 5207:1
5208:6 5269:17 5270:2
5272:4,6 5275:4
5279:18,19 5284.12,14,
16 5285:1,2,5 5286:17,
18 5287:7,9,13 5296:22
5301:23 5302:1,5,10,
13,24 5303:7,12,20,22,
24 5304:4,6,7, 5307:13,
15,16,22 5309:3,9
5310:1,2,6,7,18,25
5311:11,14,18,21
5312:9,20,22,23
5313:10,19,22 5314:4,
7,15,17,22 5315:4,7,8,
10,14,24,25 5316:1,6
5323:23 5325:19
5331:4,6,10 5339:2
5346:1 5363:4,17
5374:3,6 5392:22,23

**today**
5246:22 5258:19
5261:14 5269:5,15
5270:7 5279:5 5292:9
5304:15 5316:17
5325:6,7 5376:1,11,19
5378:3 5389:11
5391:20 5393:19

**told**
5196:21 5198:23
5202:13 5217:22
5292:18 5304:5 5379:9

**Tomo's**
5365:5

**tomorrow**
5376:12,19 5377:7
5379:5,21 5394:14,19

**tone**
5348:24

**tools**
5211:2

**tooth**
5394:10

**top**
5265:15 5289:9
5310:23 5340:6

**topic**
5203:15

**Toronto**
5225:12 5279:16
5395:21

**total**
5349:6 5369:14
5375:24

**totally**
5232:5

**touch**
5228:22 5296:17,23

**TR21500**
5340:21

**TR45736**
5341:11

**TR46984**
5182:7

**TR48819**
5339:14

**trace**
5250:23

**tracked**
5266:8

**trade**
5257:5

**trading**
5266:15

**trailblazing**
5262:18

**transaction**
5160:1,12 5165:7
5166:12,13 5168:9,20
5170:13 5183:4
5192:21 5209:7
5213:16 5217:24
5218:3,14,21,24
5219:4,11,12,24 5220:4
5271:24 5274:5 5383:6

**transactions**
5274:18

**transcribed**
5395:11

**transcript**
5395:13

**transfer**
5157:24 5159:9,10

5160:11 5161:20,21
5164:11,17 5176:7
5178:20 5181:22
5217:3,8,14 5234:11
5235:20,22,23 5236:1
5237:7 5238:13
5249:22 5270:14,19
5271:10 5292:14
5294:5 5300:12
5313:19 5314:14,16
5321:14 5329:20,24
5331:15,17,19 5334:11,
17 5336:8 5337:5,17
5361:6 5363:14 5390:8
5391:11,18

**transferable**
5151:23

**transferred**
5313:21 5318:9 5325:2
5372:15,18

**transferring**
5164:10

**translate**
5236:1

**transmit**
5309:8

**travelling**
5377:23

**treasury**
5233:13 5354:21

**treat**
5208:13 5264:3
5280:12

**treated**
5185:14,15 5208:12
5230:20 5263:10
5333:6 5362:7

**treatment**
5226:8 5243:24 5244:2
5384:23

**treats**
5255:19 5360:16

**tremendous**
5299:21 5350:17
5351:16

**tremendously**
5349:1

**trial**
5149:12 5176:1 5212:4,

14 5216:21 5217:13,21
5221:16 5223:18,22
5226:14 5240:6 5248:5
5249:20 5259:14
5272:21 5279:23
5280:19 5292:11
5294:24 5359:22
5364:17 5365:4,22
5389:14

**triers**
5271:12

**triggered**
5164:16 5165:3,12,13

**triggering**
5165:2

**trite**
5317:25 5344:22

**true**
5155:13 5215:15
5232:19, 5258:21
5272:14 5362:25
5395:12

**trust**
5161:15,18 5171:20
5187:21 5267:16
5268:7 5276:25
5390:22 5392:12,16,19

**Trustee**
5171:22

**Trustees**
5171:19

**tsunami**
5202:17 5296:5
5359:20,24

**turn**
5174:10,17 5203:14
5206:25 5207:1
5239:16 5263:3
5264:14 5318:4 5326:6
5332:15 5354:6
5364:22, 5380:25
5391:6

**turned**
5159:24 5164:7
5268:16 5290:10

**turning**
5391:7

**turns**
5274:9

**TV**
5296:14

**type**
5168:10 5226:12
5292:14 5346:6

**types**
5261:13 5271:14,22

————————————

**U**

**UCC'S**
5258:20

**UK**
5171:9 5173:25 5235:3
5238:11 5341:5 5361:6,
9 5363:14 5375:21
5376:22,24 5377:1
5378:13 5380:9
5382:14 5386:6

**UKP**
5230:15 5239:11
5242:1

**UKPC**
5381:6 5388:5 5389:21

**ultimate**
5249:2

**ultimately**
5214:3 5219:7 5228:8
5343:20

**unaffected**
5194:8

**unambiguous**
5275:2,3

**unanimous**
5390:14

**unclear**
5282:24

**uncontroverted**
5226:18 5232:8
5271:17

**undercut**
5290:17

**underlined**
5167:12

**underlying**
5207:25

**underpinning**
5261:9

**underscore**
5227:8

**understand**
5174:6,9 5180:11
5186:24 5192:7
5193:20 5205:13
5210:25 5228:19
5245:17 5249:7
5250:15 5253:4
5264:25 5265:1
5274:24 5286:16
5295:14 5313:15
5314:8 5335:5 5369:2
5386:23

**understanding**
5191:7,8,14 5204:25
5205:1 5206:3 5289:16
5345:19 5357:8 5369:3

**understandings**
5191:16

**understood**
5204:17 5214:10
5226:13

**undertaken**
5166:14 5312:3

**undertook**
5238:10 5370:11

**undisputed**
5251:6

**undistributed**
5248:18

**undo**
5370:18,20

**unequivocal**
5304:12 5347:8

**unexpectedly**
5375:8

**unfair**
5275:9

**unfettered**
5384:1

**unfolded**
5223:22

**unfortunate**
5272:3 5381:10

**unilaterally**
5216:12

**unintegrated**
5257:12

**union**
5156:22

**unique**
5381:25 5387:17

**United**
5171:17 5193:20
5200:24 5201:7
5234:21,23 5244:21
5247:13 5271:25
5274:23 5276:4

**units**
5257:5

**unjust**
5387:22 5392:13

**unkindly**
5280:8

**unlawful**
5167:15,16

**unlike**
5393:18

**unlimited**
5151:21 5384:1

**unnecessary**
5341:24

**unprecedented**
5225:23 5277:3

**unreasonable**
5274:4

**unrepresentative**
5368:25

**unrestricted**
5154:1

**unsecured**
5229:19 5243:2,18
5244:14,16 5264:3
5384:24

**unsuccessful**
5250:10

**unsustainable**
5250:3 5261:23

**untenable**
5170:19

**unusual**
5168:20

**updated**
5178:16

**upfront**
5273:7

**upheld**
5261:14 5308:10

**upside**
5179:16 5180:1,3,5
5181:4,12 5182:4
5274:8

**upstream**
5337:23

**urge**
5211:2 5393:19

**USA**
5395:21

**V**

**vacuum**
5229:16,17 5385:11

**valid**
5251:13

**validity**
5260:5

**valuable**
5273:22 5343:16
5349:1 5372:22

**valuation**
5207:20,22,23 5209:5,
20 5210:13 5228:7,8
5241:13 5365:2

**value-destructive**
5214:12 5224:1

**valued**
5347:13 5348:6

**valueless**
5152:23 5153:11,22
5154:19 5168:10

**valuers**
5209:20

**values**
5242:5 5373:20

**valuing**
5208:19 5236:11

**variance**
5334:20

**varies**
5193:19

**vary**
5357:14

**vastly**
5258:17

**venture**
5387:20

**verb**
5174:25

**versa**
5171:15 5348:17

**version**
5150:15,16 5178:18
5182:20 5298:13

**Veschi**
5370:10,11,25

**vest**
5157:16,17,20 5161:22
5183:9 5285:19

**vested**
5155:4 5170:13
5188:18 5195:3 5236:6
5269:20 5270:3 5275:4
5279:18 5302:1
5323:22

**vesting**
5166:3,17 5183:14
5187:11 5193:15
5284:12,16 5323:23

**vests**
5188:15 5285:1

**viability**
5386:1

**viable**
5262:4

**vice**
5171:15 5348:17

**view**
5187:22 5190:18
5234:9 5235:18
5301:16 5321:14
5335:11 5356:17

5374:3 5377:7

**viewed**
5229:16 5246:14
5393:9

**views**
5232:4

**violate**
5320:3,6

**virtually**
5265:11

**vis-à-vis**
5167:24 5197:12

**visit**
5163:5 5181:4

**Volume**
5298:4 5299:6 5301:9
5307:25 5311:23
5318:2 5343:9

**volumes**
5151:6

**voluntarily**
5164:11

**W**

**wait**
5225:3

**waived**
5215:6 5222:15

**waiver**
5383:3

**Walancik**
5225:11

**walk**
5215:9 5294:19

**walking**
5374:22

**Walter**
5390:7

**wanted**
5156:19 5160:2 5182:5
5184:24 5189:6 5190:4
5200:12,14 5207:24
5329:14 5336:6

**warning**
5156:13

**warrant**
5309:22

**warranting**
5197:14

**wasteful**
5381:20

**waterfall**
5230:1 5231:10,19
5237:14 5239:6

**wave**
5202:17 5296:4
5359:21

**Wawanesa**
5163:25

**ways**
5160:7 5185:23
5195:14 5227:3
5279:23 5318:14
5324:20 5358:21

**wealth**
5204:20

**Wednesday**
5377:14,22,24 5378:1
5379:6,7,10

**week**
5375:15

**weekend**
5332:6

**weight**
5372:24

**Weisz**
5390:9

**well-known**
5298:1 5302:10

**well-stated**
5276:23

**well-thumbed**
5150:16

**Westdeutsche**
5159:19

**whatsoever**
5323:3 5356:25

**whilst**
5341:5 5363:16

**White**
5343:9,14,21,22,24,25

5345:5,6 5346:1

**Whitley-sebti**
5225:14

**wide**
5382:22

**WILCOX**
5395:20

**Wilkinson**
5160:20

**Wilmington**
5267:16 5268:7
5276:25 5390:22
5395:21

**Wilton**
5236:15

**winding**
5367:8

**Winkler**
5221:6

**wiped**
5335:19

**wisdom**
5359:21

**withhold**
5162:19

**witnesses**
5322:2 5390:6

**wonderful**
5268:4

**word**
5157:4,7,17,23 5159:15
5176:11,14 5221:12
5222:9 5271:2 5276:10
5292:12,23 5304:20
5327:14, 5339:24
5341:1 5383:7

**worded**
5169:17

**wording**
5177:16 5203:18
5227:24 5228:1 5316:8

**words**
5152:8 5153:5 5155:1,7
5159:6 5161:19
5164:22 5167:20,21
5168:11 5177:25
5180:1 5195:6,9,10,17,

21 5197:3,7 5204:1,2
5205:25 5206:6 5208:7
5209:13 5235:1 5249:6
5282:12,13,24,25
5283:3 5284:1,8,25
5287:13 5288:25
5289:1,17,19 5293:3,5
5300:25 5301:1
5314:22 5376:10

**work**
5159:6 5170:22
5193:21 5216:13
5235:22 5243:5 5253:1
5292:15 5295:9
5348:22,23 5370:18,20
5379:14 5392:20

**worked**
5235:13

**workforce**
5372:19,20,22

**working**
5392:17

**works**
5171:15 5317:22

**world**
5197:17 5236:2 5294:1
5331:8 5332:20 5362:1

**worldwide**
5236:22 5238:24
5262:14 5389:25
5391:4 5393:24

**worrying**
5377:12

**worse**
5285:15

**worth**
5237:23

**worthless**
5218:2

**wrap**
5261:20

**wrestling**
5209:10

**wriggle**
5282:25

**write**
5173:12 5361:21,22

**write-down**
5361:19

**write-off**
5361:19

**written**
5150:6 5174:11
5191:22 5206:7 5281:5
5319:18,19 5384:20
5390:4

**wrong**
5154:18,20 5208:1
5339:24 5366:16
5367:5,6 5368:4,5,23
5372:5,7

———————

Y

**year**
5225:24 5281:13
5282:19 5283:18
5331:20,21 5334:2,18
5361:11 5363:12
5365:17

**year-to-year**
5333:25

**years**
5225:25 5238:20
5280:25 5284:7 5288:1,
7 5292:5 5362:2
5366:3,15,21 5367:16
5368:10 5389:13
5392:20

**yellow**
5363:24

**yield**
5261:25

**York**
5376:9

———————

Z

**Zarnett**
5149:21,22,23 5150:20
5151:7 5156:3,5,8,14,
18 5162:5,7,11,25
5166:20,23 5169:4,
5173:10,21 5174:7,10
5175:2,5 5176:16,22
5177:5,8 5180:22
5181:24 5182:13,16,20,

23 5183:2,24 5184:2,
5186:12,19,22,25
5187:6 5188:2,4,10,14
5189:3,20 5190:4
5192:2,19,25 5193:4,
10,14 5194:4 5197:2,6,
10 5198:3,8,13,18
5199:3 5200:8,12
5201:20,23 5202:4,6,
12,15 5203:4,5,12,13
5207:10 5209:24
5210:4,14,17 5211:1
5215:16 5226:19
5227:11 5228:15,22
5232:3 5235:20 5241:2
5246:22 5268:4
5269:14 5270:22
5279:6 5281:10,24
5288:11,23 5289:14
5296:4 5298:2 5302:24
5307:21 5308:16
5317:15 5359:20

**Zigler**
5224:19,21,25 5225:5,
9,10 5228:20 5229:25
5231:13,21 5232:20,21
5233:6 5241:1 5251:4
5275:11 5393:19

