**<u>EXHIBIT 72</u>**

EXHIBIT

209

exhibitsticker.com

| | |
|---|---|
| **From:** | Leblanc, Andrew <ALeblanc@milbank.com> |
| **Sent:** | Wednesday, June 18, 2014 4:44 PM |
| **To:** | Bromley, James L. <jbromley@cgsh.com> |
| **Subject:** | RE: PPI |

Sure – what time works for you?

---

**From:** Bromley, James L. [mailto:jbromley@cgsh.com]
**Sent:** Wednesday, June 18, 2014 12:27 PM
**To:** Leblanc, Andrew
**Subject:** RE: PPI

I will be flying up to Toronto later today.  Can we meet later in the Ritz bar to discuss?

---

James L. Bromley
Cleary Gottlieb Steen & Hamilton LLP
Assistant: bamiller@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2264 | f: +1 212 225 3999 | m: +1 646 894 3014
www.clearygottlieb.com | jbromley@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Wednesday, June 18, 2014 11:11 AM
**To:** Bromley, James L.
**Subject:** RE: PPI

No.  Monitor files something tomorrow.  Any opposed file something Friday morning.  If there is argument on it, it would be next week after the witnesses.

---

**From:** Bromley, James L. [mailto:jbromley@cgsh.com]
**Sent:** Wednesday, June 18, 2014 11:10 AM
**To:** Leblanc, Andrew
**Subject:** RE: PPI

Then I'm confused.  I thought the monitor would file something tomorrow morning and any responses would be oral and tomorrow as well.  What is your understanding?

---

James L. Bromley
Cleary Gottlieb Steen & Hamilton LLP
Assistant: bamiller@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2264 | f: +1 212 225 3999 | m: +1 646 894 3014
www.clearygottlieb.com | jbromley@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Wednesday, June 18, 2014 11:08 AM
**To:** Bromley, James L.
**Subject:** RE: PPI

We are not addressing the courts tomorrow.  We are to file something "short" on Friday.  Argument, if any, would be next week.

---

**From:** Bromley, James L. [mailto:jbromley@cgsh.com]

**Sent:** Wednesday, June 18, 2014 11:07 AM
**To:** Leblanc, Andrew
**Subject:** RE: PPI

Actually just heard about it as I'm in Eden prep.  I assume you will take the lead addressing the courts tomorrow.

James L. Bromley
Cleary Gottlieb Steen & Hamilton LLP
Assistant: bamiller@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2264 | f: +1 212 225 3999 | m: +1 646 894 3014
www.clearygottlieb.com | jbromley@cgsh.com

**From:** Leblanc, Andrew [mailto:ALeblanc@milbank.com]
**Sent:** Wednesday, June 18, 2014 9:36 AM
**To:** Bromley, James L.
**Subject:** PPI

I am sure you have heard by now what Newbould said to start the day.  What are your thoughts on our proposed settlement?

## Milbank

**Andrew M. Leblanc**
1850 K Street, N.W.
Suite 1100
Washington, D.C. 20006
Tel: 202-835-7574 Fax: 202-263-7574
Cell:  202-997-5702
aleblanc@milbank.com
www.milbank.com

============================================================

IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank, Tweed, Hadley & McCloy LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.
============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any
attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.


============================================================

IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank, Tweed, Hadley & McCloy LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.
============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

============================================================

IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank, Tweed, Hadley & McCloy LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.
============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

============================================================

IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank, Tweed, Hadley & McCloy LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.
============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

NNI-PPI-00000022

**<u>EXHIBIT 73</u>**

**EXHIBIT**

**210**

| | |
|---|---|
| **From:** | Bromley, James L. <james.bromleyad1@cgsh.com> |
| **Sent:** | Wednesday, June 18, 2014 10:39 PM |
| **To:** | aleblanc@milbank.com |
| **Subject:** | Re: |

Heading back now.  Be there in 15

James L. Bromley
Cleary Gottlieb Steen & Hamilton LLP
Assistant: bhouston@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2264 | f: +1 212 225 3999 | m: +1 646 894 3014
www.clearygottlieb.com | jbromley@cgsh.com

On Jun 18, 2014, at 8:54 PM, "Leblanc, Andrew" <ALeblanc@milbank.com> wrote:

You here yet?

**Milbank**

**Andrew M. Leblanc**
1850 K Street, N.W.
Suite 1100
Washington, D.C. 20006
Tel: 202-835-7574 Fax: 202-263-7574
Cell:  202-997-5702
aleblanc@milbank.com
www.milbank.com

============================================================
IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank, Tweed, Hadley & McCloy LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.
============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**EXHIBIT 74**

EXHIBIT

211

exhibitsticker.com

**From:**      Bromley, James L. <jbromley@cgsh.com>
**Sent:**      Friday, July 4, 2014 1:06 AM
**To:**        aleblanc@milbank.com
**Cc:**        ddunne@milbank.com
**Subject:**   Re: Call

Andy,

John and I are both on vacation this week.  I will schedule something for next week once John is back in the country

Jim

---

James L. Bromley
Cleary Gottlieb Steen & Hamilton LLP
Assistant: bhouston@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2264 | f: +1 212 225 3999 | m: +1 646 894 3014
www.clearygottlieb.com | jbromley@cgsh.com

> On Jul 3, 2014, at 12:27 PM, "Leblanc, Andrew" <ALeblanc@milbank.com> wrote:
>
> Jim,
>
> Can we do a call soon to talk about settlement issues and so we can understand what you guys are planning for the 15th.  I am available anytime.
>
> Andy
>
>
> =========================================================
>
> This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
>
>

**EXHIBIT 75**

EXHIBIT

212

exhibitsticker.com

| | |
|---|---|
| **From:** | Dunne, Dennis <DDunne@milbank.com> |
| **Sent:** | Tuesday, July 8, 2014 7:38 AM |
| **To:** | aleblanc@milbank.com; Bromley, James L. <jbromley@cgsh.com> |
| **Subject:** | RE: Call |

It would be great if we could start discussing settlement sooner rather than later.  There really is no reason to force JGross to decide something he doesn't have to.


-----Original Message-----
From: Leblanc, Andrew
Sent: Monday, July 07, 2014 11:33 AM
To: 'Bromley, James L.'
Cc: Dunne, Dennis
Subject: RE: Call


Jim,

Any chance we can do something today or tomorrow?


Andy

-----Original Message-----
From: Bromley, James L. [mailto:jbromley@cgsh.com]
Sent: Friday, July 04, 2014 1:06 AM
To: Leblanc, Andrew
Cc: Dunne, Dennis
Subject: Re: Call


Andy,

John and I are both on vacation this week.  I will schedule something for next week once John is back in the country


Jim




_____
James L. Bromley
Cleary Gottlieb Steen & Hamilton LLP
Assistant: bhouston@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2264 | f: +1 212 225 3999 | m: +1 646 894 3014 www.clearygottlieb.com | jbromley@cgsh.com


> On Jul 3, 2014, at 12:27 PM, "Leblanc, Andrew" <ALeblanc@milbank.com> wrote:
>
> Jim,
>
> Can we do a call soon to talk about settlement issues and so we can understand what you guys are planning for the 15th.  I am available anytime.

NNI-PPI-00000042

>
> Andy
>
>
> ==========================================================
>
> This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

>

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.


==========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

NNI-PPI-00000043

**EXHIBIT 76**

| From: | Dunne, Dennis </O=MILBANK/OU=MTHMUSA/CN=RECIPIENTS/CN=DDUNNE> |
|---|---|
| Sent: | Monday, July 14, 2014 2:54 PM |
| To: | 'Schweitzer, Lisa M.' <lschweitzer@cgsh.com> |
| Cc: | Giambatista, Lisa <lgiambatista@cgsh.com>; John J. Ray , III (jray@avidityparters.com) |
| Subject: | RE: tomorrow |

**EXHIBIT**

**213**

We will get you something shortly.

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Monday, July 14, 2014 2:35 PM
**To:** Dunne, Dennis
**Cc:** Giambatista, Lisa; John J. Ray , III (jray@avidityparters.com)
**Subject:** RE: tomorrow

Thanks Dennis.  Do you expect to send a proposal over today?

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lgiambatista@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

**From:** Dunne, Dennis [mailto:DDunne@milbank.com]
**Sent:** Monday, July 14, 2014 2:30 PM
**To:** Schweitzer, Lisa M.
**Cc:** Giambatista, Lisa; John J. Ray , III (jray@avidityparters.com)
**Subject:** RE: tomorrow

Here is the list:

Dennis Dunne
Andy Leblanc
Al Pisa
Mike Katzenstein
Melker Sandberg

See you tomorrow.

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Monday, July 14, 2014 9:55 AM
**To:** Dunne, Dennis
**Cc:** Giambatista, Lisa; John J. Ray , III (jray@avidityparters.com)
**Subject:** tomorrow



Dennis –

We have conference room 3802 reserved at our One Liberty office.  Can you let Lisa G., copied on this email, know who is coming so we can get everyone's name on security?  Thanks.

Lisa

---

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: lgiambatista@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999 | m: +1 646 610 1096
www.clearygottlieb.com | lschweitzer@cgsh.com

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any
attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.
This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any
attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

**EXHIBIT 77**

EXHIBIT

214

| | |
|---|---|
| **From:** | Kreller, Tom <TKreller@milbank.com> |
| **Sent:** | Monday, July 14, 2014 4:49 PM |
| **To:** | 'lschweitzer@cgsh.com' |
| **Cc:** | Dunne, Dennis <DDunne@milbank.com>; Pisa, Albert A. <APisa@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com> |
| **Subject:** | Nortel |
| **Attach:** | Nortel - Draft Settlement Term Sheet (2).docx |

---

CONFIDENTIAL SETTLEMENT COMMUNICATION

Lisa:

In advance of tomorrow's meeting, attached for your review is an initial draft term sheet for use in framing our settlement discussions with you and John.  Please contact me if you have any questions or would like to discuss.

Best regards,

Tom

---

**Thomas R. Kreller | Milbank**
Partner
601 South Figueroa Street, 30th Floor | Los Angeles, CA 90017
T: +1 213 892 4463 | F: +1 213 892 4763
tkreller@milbank.com | www.milbank.com



EXHIBIT
Ray - 2
7/15/14    MG
PENGAD 800-631-6989

Subject to FRE 408 & Any Other Applicable Privileges
Privileged & Highly Confidential

MTH&M DRAFT
7/14/2014

### Post-Petition Interest

### Summary of Indicative Terms

The terms set out in this Summary of Indicative Terms are indicative and for discussion purposes only and do not constitute a commitment or an offer that may be accepted. No Party (as defined below) may rely on any oral or written statement to the contrary by any person. This proposed transaction has not yet been approved by either Party. Accordingly, the terms described below are subject to change and/or may not be approved by the Parties. Any agreement will, if made, be reflected in separate, definitive and mutually acceptable documentation signed by the Parties.

| | |
|---|---|
| Background: | The US Debtors[1] and the Ad Hoc Group of Bondholders (the "Bondholders"), among others, are parties to certain litigation (the "Allocation Litigation") currently pending in the U.S and Canadian bankruptcy proceedings of Nortel Networks Corporation ("NNC") and its direct and indirect U.S. and Canadian subsidiaries (collectively, "Nortel") that commenced on January 14, 2009 (the "Petition Date"). |
| | The purpose of the Allocation Litigation is to determine how to allocate among the US Debtors, the Canadian Debtors,[2] and the EMEA Debtors[3] the proceeds obtained from the various sales of Nortel's assets (the "Sale Proceeds"). A trial in the Allocation Litigation commenced on May 12, 2014 before the US Bankruptcy Court and the Ontario Superior Court of Justice (collectively, the "Courts"), and the evidentiary portion of that trial concluded on June 24, 2014. No decision has been issued by either Court. |
| | On or about June 30, 2014, the Courts each issued an order directing briefing on two issues relating to post-petition interest and othr contractual entitlements (collectively, "PPI") on the Guaranteed Bonds (defined *infra*) (the "PPI Dispute"): (i) whether the holders of the Guaranteed Bonds are legally entitled in each jurisdiction to claim or receive PPI, and (ii) if so, what amounts of PPI are such holders entitled to so claim and receive. The PPI Dispute involves separate issues in the United States (the "US PPI |

---

[1] The term "US Debtors" refers to the estates of Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation ("NNCC") and certain of NNI's subsidiaries that are subject to chapter 11 cases before the United States Bankruptcy Court for the District of Delaware (the "US Bankruptcy Court").

[2] The term "EMEA Debtors" refers to the estates of Nortel Networks UK Ltd., Nortel Networks (Ireland) Ltd., Nortel Networks S.A., and certain of their affiliates.

[3] The term "Canadian Debtors" refers to the estates of NNC, Nortel Networks Limited ("NNL"), and certain of their subsidiaries (together with NNC and NNL, the "Canadian Estate"), and the Monitor of the Canadian Estate.

1

BHG-PPI-0000019

Subject to FRE 408 & Any Other Applicable Privileges
Privileged & Highly Confidential

MTH&M DRAFT
7/14/2014

| | |
|---|---|
| | Dispute") and Canada (the "<u>Canada PPI Dispute</u>") and will thus be decided independently in each jurisdiction.<br><br>This Summary of Indicative Terms summarizes the indicative terms of the resolution of the US PPI Dispute as between the Bondholders and the US Debtors (each a "<u>Party</u>" and collectively, the "<u>Parties</u>").<br><br>The Parties agree that the entry into any settlement of the US PPI Dispute shall not be deemed an acknowledgment or acceptance of the other Party's positions with respect to the US PPI Dispute or the Canada PPI Dispute. |
| Guaranteed Bonds: | The Guaranteed Bonds are:<br><br>• the 7.875% Notes due 2026, issued by NNL and NNCC and guaranteed by NNL;<br><br>• the 10.75% Senior Notes due 2016, issued by NNL and guaranteed by NNC and NNI;<br><br>• the 10.125% Senior Notes due 2013, issued by NNL and guaranteed by NNC and NNI;<br><br>• the Floating Rate Notes due 2011, issued by NNL and guaranteed by NNC and NNI;<br><br>• the 1.75% Convertible Senior Notes due 2012, issued by NNC and guaranteed by NNL and NNI; and,<br><br>• the 2.125% Convertible Senior Notes due 2014, issued by NNC and guaranteed by NNL and NNI. |
| PPI Settlement: | In light of the positions set forth by the various parties in their initial briefing on the PPI Dispute, subject to the other terms and conditions hereof, the US Debtors and the Bondholders agree that PPI, accruing from the Petition Date through the date of payment, is allowed on claims against the US Debtors in respect of the Guaranteed Bonds at the PPI Settlement Rate (defined *infra*). |
| PPI Settlement Rate: | The PPI Settlement Rate shall be calculated as [TBD]. |
| Allocation of PPI: | All distributions (including on account of PPI) among the holders of the Guaranteed Bonds are reserved for later determination as part of the plan of reorganization of the US Debtors in their chapter 11 cases, subject to the PPI Settlement. |

Confidential

Subject to FRE 408 & Any Other Applicable Privileges
Privileged & Highly Confidential

MTH&M DRAFT
7/14/2014

| | |
|---|---|
| Relationship of PPI Settlement to Allocation Dispute: | The PPI Settlement is not conditioned on or affected by the outcome of the Allocation Litigation. |
| Conditions to Effectiveness: | The effective date of the PPI Settlement will be subject to certain conditions precedent to be detailed in the documentation, including approval by the US Bankruptcy Court of the PPI Settlement. |
| Miscellaneous: | The documentation with respect to the PPI Settlement shall be governed by New York law and the Parties shall submit to the jurisdiction of the US Bankruptcy Court with respect to any disputes thereunder. The documentation will contain customary representations, warranties and covenants, including that each Party shall work in good faith to obtain the necessary court approvals and that no Party shall take any action with the purpose or effect of evading the terms of the PPI Settlement. |

3

Confidential

**EXHIBIT 78**

EXHIBIT

215

exhibitsticker.com

| From: | Matz, Tom <TMatz@milbank.com> |
|---|---|
| Sent: | Thursday, July 17, 2014 11:26 AM |
| To: | Schweitzer, Lisa M. <lschweitzer@cgsh.com> |
| Cc: | Dunne, Dennis <DDunne@milbank.com>; Pisa, Albert A. <APisa@milbank.com>; Leblanc, Andrew <ALeblanc@milbank.com>; Kreller, Tom <TKreller@milbank.com> |
| Subject: | NORTEL: US PPI Settlement Agreement |
| Attach: | Nortel US PPI Settlement Agreement (4836-5497-6284-6).docx |

**SUBJECT TO FRE 408 AND ANY OTHER APPLICABLE PRIVILEGES**
**PRIVILEGED AND CONFIDENTIAL**

Lisa,

Further to our discussions on Tuesday, attached is a draft settlement agreement regarding PPI. This draft agreement is subject to ongoing client and internal review but in the interests of time, we wanted to get it to you for your review and consideration.

We would be pleased to continue our discussions this afternoon.

Tom

---

Thomas J. Matz | **Milbank**
One Chase Manhattan Plaza | New York, NY 10005
P: +1 212.530.5885 | F: +1 212.822.5885
tmatz@milbank.com| www.milbank.com



EXHIBIT
Ray-3
9/15/14 mG
PENGAD 800-631-6989

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/17/2014

## AGREEMENT SETTLING THE US POST-PETITION INTEREST DISPUTE

This agreement (the "<u>PPI Settlement Agreement</u>") is entered into by and among Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation ("NNCC" and, together with NNI, the "Nortel Parties"), the bondholders who are signatories hereto (each a "Supporting Bondholder" and, collectively, the "Supporting Bondholders") holding Guaranteed Bonds (defined *infra*), Law Debenture Trust Company of New York, as indenture trustee ( "Law Debenture"), and The Bank of New York Mellon, as indenture trustee ("BNY" and, with the Law Debenture, the "Indenture Trustees,") (with the Nortel Parties, the Supporting Bondholders, and Indenture Trustees each being a "Party" and collectively, the "Parties").

## RECITALS

WHEREAS, on January 14, 2009 (the "Filing Date"), NNI, NNCC, and certain of their United States affiliates (the "US Debtors") other than Nortel Networks (CALA) Inc. ("NN CALA")[1] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") (together with the NN CALA Case, the "US Proceedings") before the United States Bankruptcy Court for the District of Delaware (the "US Court"). On January 22, 2009, the Office of the United States Trustee for the District of Delaware appointed the official committee of unsecured creditors in respect of the US Debtors.

WHEREAS, on the Filing Date, the US Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL, and certain of NNC's and NNL's Canadian affiliates commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and "CCAA"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor").

WHEREAS, prior to the Filing Date, the US Debtors, the EMEA Debtors,[2] the Canadian Debtors (collectively, the "Nortel Debtors"), and certain of their non-debtor affiliates around the world were part of the Nortel group of companies (the "Nortel Group"), of which NNC was the ultimate corporate parent.

---

[1]    NN CALA filed its voluntary petition for protection under chapter 11 of the Bankruptcy Code on July 14, 2009 (the "NN CALA Case") [D.I. 1098].

[2]    The EMEA Debtors are: Nortel Networks U.K. Ltd., Nortel Networks S.A. ("NNSA"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*

WHEREAS, pursuant to the Indenture dated as of July 5, 2006 (the "2006 Indenture"),[3] NNL issued multiple series of senior notes guaranteed by NNC and NNI, including two series of fixed rate 10.75% senior notes in the aggregate principal amounts of $450 million and $675 million due 2016 (together, the "10.75% Notes"), a series of fixed rate 10.125% senior notes in the aggregate principal amount of $550 million due 2013 (the "10.125% Notes"), and a series of floating rate senior notes in the aggregate principal amount of $1 billion due 2011 (the "Floating Rate Notes" and, together with the 10.75% Notes and the 10.125% Notes, the "2006 Indenture Notes").

WHEREAS, on September 25, 2009, The Bank of New York Mellon, under the 2006 Indenture, filed a timely proof of claim on behalf of the holders of the 2006 Indenture Notes preserving, among others, their claim for "an unliquidated amount for the continuing post-petition (a) accrual of interest (including interest upon the overdue installments of interest)..."[4]

WHEREAS, as provided in Section 1001 of the 2006 Indenture, "[t]he Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities of such series in accordance with their terms and this Indenture." The 2006 Supplemental Indentures establish the applicable rate of interest for each series of 2006 Indenture Notes. Moreover, Section 312 of the 2006 Indenture provides for interest payable to noteholders and that interest not punctually paid on the interest payment date constitutes defaulted interest.

WHEREAS, pursuant to the Indenture dated as of March 28, 2007 (the "2007 Indenture"), NNC issued 2.125% convertible senior notes due 2014 (the "2.125% Notes") in an aggregate principal amount of $575 million and 1.75% convertible senior notes due 2012 (the "1.75% Notes" and, together with the 2.125% Notes, the "2007 Indenture Notes") in an aggregate principal amount of $575 million. The 2007 Indenture Notes are each guaranteed by NNI and NNL.

WHEREAS, on September 25, 2009, The Bank of New York Mellon, under the 2007 Indenture, filed a timely proof of claim on behalf of the holders of the 2007 Indenture Notes for, among others, "a claim in an unliquidated amount for the continuing post-petition (a) accrual of interest (including interest upon the overdue installments of interest). . . ."[5]

WHEREAS, pursuant to Section 4.01 of the 2007 Indenture, "[t]he Issuer shall pay the principal of and interest (including Additional Interest, if any) on the Notes on the dates and in the manner provided in the Notes . . . . To the extent lawful, the Issuer shall pay interest (including post-petition interest in any proceeding under any bankruptcy, insolvency or other similar applicable law) on (i) overdue principal, at the rate borne by Notes; and (ii) overdue installments of interest (without regard to any applicable grace period) at the same rate."

---

[3]    Supplemented by the First Supplemental Indenture, dated July 5, 2006, the Second Supplemental Indenture dated May 1, 2007, and the Third Supplemental Indenture dated May 28, 2008 (collectively the "2006 Supplemental Indentures").

[4]    *See* TR40041, Attachment to Proof of Claim ¶ 8.

[5]    *See* TR40042, Attachment to Proof of Claim ¶ 8.

Confidential

BHG-PPI-0000155

Additionally, pursuant to Section 2.11 of the 2007 Indenture, "[i]f the Issuer (and the Guarantors) fail to make a payment of interest on the Notes, it (and the Guarantors) shall pay such defaulted interest plus, to the extent lawful, any interest payable on the defaulted interest." The 2007 Indenture establishes the applicable rate of interest for each series of 2007 Indenture Notes.

WHEREAS, pursuant to the Indenture dated as of February 15, 1996 (the "1996 Indenture"), NNCC issued a series of fixed rate 7.875% senior notes guaranteed by NNL in an aggregate principal amount of $150 million due 2026 (the "7.875% Notes" and, with the 2006 Indenture Notes and the 2007 Indenture Notes, the "Guaranteed Bonds").[6]

WHEREAS, on September 28, 2009, the Law Debenture Trust Company of New York filed a timely proof of claim on behalf of the holders of the 7.875% Notes preserving, among others, their claim for "payment in full of all post-petition interest due and payable under the [1996] Indenture."[7]

WHEREAS, pursuant to Section 1001 of the 1996 Indenture, "[t]he applicable Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities in accordance with their terms and this Indenture." The 1996 Indenture established the applicable rate of interest for the 1996 Indenture Notes.

WHEREAS, after the Filing Date, the Nortel Debtors agreed to pursue an orderly and coordinated sale of the Nortel Group's businesses and assets. The various Nortel estates further agreed that all sale proceeds would be held in escrow accounts corresponding to each sale transaction, pending later agreement by the parties on allocation or a litigated resolution of any allocation dispute. This agreement among the US Debtors, the Canadian Debtors and certain of the EMEA Debtors was memorialized in the Interim Funding and Settlement Agreement, dated as of June 9, 2009 (the "IFSA").[8]  Following a joint hearing on June 29, 2009, the IFSA was approved by each of the US Court [D.I. 993] and the Canadian Court.

WHEREAS, from 2009 to 2011, the Nortel Debtors conducted a series of court-approved sale transactions that generated approximately $7.5 billion in sale proceeds (together with accrued interest, the "Sale Proceeds"). Each Nortel Group entity that satisfied the definition of "Nortel Seller" (as defined in the IFSA) was entitled to participate in the distribution of the Sale Proceeds.

WHEREAS, after three failed mediation attempts regarding the allocation of the Sale Proceeds among the Nortel Sellers, litigation to resolve the allocation issues (the "Allocation Litigation") was ordered by the US Court by an Order dated April 3, 2013 [D.I. 9947] (as

---

[6]    All holders of the Guaranteed Bonds are collectively defined as "Bondholders".

[7]    *See* TR43729 at LDTCNY0000282.

[8]    *See* Exhibit B to the Motion Pursuant to 11 U.S.C. § 105(a), § 363, § 503 and Fed. R. Bankr. P. 9019 for an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 874].

Confidential

BHG-PPI-0000156

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*

supplemented by further orders) and directed by endorsements of the Canadian Court dated March 8, 2013 and April 3, 2013.[9]

WHEREAS, after extensive fact and expert discovery, on May 12, 2014, the parties commenced a trial (the "Allocation Trial") before the US Court and the Canadian Court (collectively, the "Courts"). The evidentiary portion of the Allocation Trial concluded on June 24, 2014.

WHEREAS, at the request of the Monitor in the Memorandum of the Monitor Regarding Bondholder Claims Issues, dated June 19, 2014 [D.I. 13880] (the "Monitor's Request"), and purportedly in connection with the Allocation Trial, on June 30, 2014, the Courts issued an order directing briefing and argument (the "PPI Dispute") on two issues relating to post-petition interest ("PPI") on the Guaranteed Bonds:

i)    whether the holders of the Guaranteed Bonds are legally entitled in each jurisdiction to claim or receive any amounts under the relevant indentures above and beyond the outstanding principal debt and pre-petition interest (namely, above and beyond US $[4.092] billion); and

ii)   if determined that the holders of the Guaranteed Bonds are so entitled, what additional amounts are such holders entitled to so claim and receive.

WHEREAS, on July 15, 2014, certain of the parties to the Allocation Litigation exchanged opening briefs with respect to the PPI Dispute. The briefs advance the parties' divergent and competing positions regarding the PPI Dispute. Depending on the resolution of the PPI Dispute, distributions to the U.S. Debtors' creditors could be materially different.

WHEREAS, the PPI Dispute requires the determination of separate and distinct legal issues in the United States (the "US PPI Dispute") and Canada (the "Canada PPI Dispute"), and must thus be decided independently in each jurisdiction. The PPI Settlement Agreement relates solely to the US PPI Dispute.

WHEREAS, the Parties all acknowledge and agree that the entry into any settlement of the US PPI Dispute shall not be deemed an acknowledgement or acceptance of the position of any party to the US PPI Dispute, the Canada PPI Dispute or the Allocation Litigation. The Parties also acknowledge and agree that the ultimate outcome of the US PPI Dispute is uncertain, that appeals in respect of such litigation are likely, that the cost of such litigation is both substantial and burdensome on each of the Parties and that such cost will continue to increase absent a final and binding resolution of the US PPI Dispute. The approval of the PPI Settlement Agreement should end a contentious and costly litigation regarding the entitlement of Bondholders to PPI, resolving an issue which could have significantly delayed both the confirmation of the US Debtors' chapter 11 plan(s) and the ultimate distribution of plan proceeds to the US Debtors' creditors, as well as expedite the administration of the US Debtors' estates generally. As a result of the compromises embodied in this PPI Settlement Agreement, the US

---

[9]    *See* Exhibits C and D to Notice of Filing of Items Designated for Record on Appeal dated May 1, 2013 [D.I. 10414].

4#4836-5497-6284v2

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*

Debtors have substantially reduced the potential size of the PPI claim of the Bondholders and have mitigated the risk to their unsecured creditors of a costly and protracted appeals process that would no doubt have followed any judicial determination of the US PPI Dispute, thereby preserving significant value for all of the US Debtors' stakeholders.

NOW THEREFORE, IN LIGHT OF THE FOREGOING RECITALS, AND FOR GOOD AND VALUABLE CONSIDERATION, THE VALUE OF WHICH IS HEREBY AGREED, THE PARTIES HEREBY FURTHER AGREE, SUBJECT TO THE SATISFACTION OF ALL CONDITIONS SET FORTH HEREIN THAT:

1.    **INTERPRETATION**

1.1.    The Recitals set forth above form an integral part of this PPI Settlement Agreement and are incorporated fully herein.

2.    **PPI SETTLEMENT**

2.1.    Subject to Section 4.3, in the event that NNI at any time has more than sufficient funds to pay all of its allowed administrative and prepetition claims in full, holders of Guaranteed Bonds shall be entitled to payment from the Nortel Parties in the PPI Settlement Amount and shall be paid PPI from such funds (together with any other creditors of the Nortel Parties entitled to payments of PPI) until the PPI Settlement Amount is paid in full.

2.2.    The "PPI Settlement Amount" shall be an amount up to [60]% of the aggregate amount of accrued PPI in respect of the Guaranteed Bonds from the Filing Date up to and including the date or dates of distribution (the "Total PPI Amount") either to or for the benefit of the holders of the Guaranteed Bonds.

  2.2.1.    The Total PPI Amount shall be calculated using the contract rate of PPI set forth in the applicable indentures for each of the Guaranteed Bonds (the "Contract Rate").

  2.2.2.    By way of example, and for the avoidance of doubt, the Total PPI Amount as of June 30, 2014 was [$1.65 billion]. If June 30, 2014 had been the date of distribution, the PPI Settlement Amount would have been [$990 million].

3.    **RESOLUTION OF US PPI DISPUTE AND GUARANTEED BOND CLAIMS**

3.1.    The PPI Settlement Agreement is intended to be a full and final settlement of (i) the US PPI Dispute with respect to the Monitor's Request currently pending before the US Court and (ii) the allowed claims for outstanding principal obligations and accrued prepetition interest obligations (each as set forth on Schedule A hereto), and entitlement to PPI (calculated pursuant to Sections 2.1 and 2.2 herein) arising under the Guaranteed Bonds. Nothing in this PPI Settlement Agreement is or shall be deemed to be a settlement of the Canada PPI Dispute or any part thereof or otherwise a settlement of any claim of any Bondholder against any of the Canadian Debtors' estates.

5#4836-5497-6284v2

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*

## 4.   RESERVATION OF RIGHTS

4.1.   Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge (in whole or in part) of (i) any right of any Party to assert or defend against any allocation position or advance or defend against any arguments as to entitlement to Sale Proceeds in the Allocation Litigation, including in connection with any appeal(s) of any court ruling made in connection with the Allocation Litigation; or (ii) any claim, right or entitlement of any Party to Sale Proceeds in the Allocation Litigation.

4.2.   The different series of Guaranteed Bonds provide creditors with specific and varying contractual entitlements, including, without limitation, entitlement to make-whole payments, no-call rights, the method of calculating any post-petition amount or rate (except as expressly provided herein), etc. (those features being referred to collectively herein as "contractual entitlements"). Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any such contractual entitlements, other than PPI to the extent provided herein. All such contractual entitlements are expressly reserved by the Supporting Bondholders and the Indenture Trustees.

4.3.   Nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge (in whole or in part) of the ability of unsecured creditors of the US Debtors' estates (other than the Bondholders) to assert a claim for PPI with respect to the US Debtors' estates at the contract rate (if any) applicable to such creditor's claims; provided, however, that if there are insufficient funds available to pay PPI to all unsecured creditors of the US Debtors' estates due such amounts, then, solely for purposes of determining any allocation of available PPI among such creditors, the holders of the Guaranteed Bonds shall be deemed to have a claim for PPI equal to the amount of post-petition interest that would have accrued at the applicable Contract Rate. Further, this PPI Settlement Agreement does not settle the manner in which any funds available for distribution shall be allocated among the creditors of NNI in the event that less than the full amount of PPI can be paid to all creditors owed such amounts and such application shall be determined by later agreement of the parties whether as part of the chapter 11 plan of the US Debtors in the chapter 11 cases or by subsequent agreement among the relevant affected creditors.

4.4.   For the avoidance of any doubt, nothing in this PPI Settlement Agreement shall constitute a release or waiver or discharge of any rights created under this PPI Settlement Agreement, any claim of any Party to enforce such rights, or a release of any claims for facts or events occurring or actions taken after the date of this PPI Settlement Agreement, nor shall this PPI Settlement Agreement be used, referred to or contended by any Party to have any relevance or probative value in connection with any claims not released herein.

## 5.   EFFECTIVENESS

5.1.   The agreements, acknowledgments and obligations contained herein (other than the obligations contained in Section 5.3 hereof) are expressly contingent upon, and shall become effective only upon the occurrence of all of the conditions to effectiveness below in this Section 5 (the "Effective Date").

6#4836-5497-6284v2

BHG-PPI-0000159

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*

5.2.    Approval of the Nortel Parties' entry into and performance under this PPI Settlement Agreement by an order of the US Court in the US Proceedings is a condition precedent to the effectiveness of this PPI Settlement Agreement.

5.3.    The Nortel Parties will move promptly for, and use their commercially reasonable best efforts to obtain, approval of this PPI Settlement Agreement under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (respectively, "Rule 9019(a)," and the "Bankruptcy Rules"). The other Parties agree to use their commercially reasonable best efforts to support the Nortel Parties in obtaining US Court approval of this PPI Settlement Agreement.

## 6.    MISCELLANEOUS

6.1.    **Acknowledgements**. Each Party acknowledges that that this PPI Settlement Agreement is not, and shall not be deemed to be, a solicitation of a vote for the acceptance of the Plan pursuant to section 1125 of the Bankruptcy Code.

6.2.    **Binding Effect**.  This PPI Settlement Agreement and the order of the US Court approving the entry into and performance under this PPI Settlement Agreement shall be binding upon the Parties to this PPI Settlement Agreement and the Bondholders and any successors or assigns of the Parties.

6.3.    **Confidentiality**. Unless otherwise agreed by the Parties, the substance and existence of this PPI Settlement Agreement shall be kept strictly confidential until the filing of a motion with the US Court to seek approval of this PPI Settlement Agreement.

6.4.    **Further Assurances**. The Parties will cooperate in good faith to effectuate the terms of this PPI Settlement Agreement, including working in good faith to obtain the necessary court approvals. No Party shall take any action with the purpose or effect of evading the terms of this PPI Settlement Agreement.

6.5.    **Governing Law**. This PPI Settlement Agreement shall be governed and construed in accordance with the laws of the State of New York without giving effect to the conflict of laws principles thereof.

6.6.    **Integration**. This PPI Settlement Agreement constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof. This PPI Settlement Agreement may not be amended, supplemented or modified except by a written instrument executed by each of the Parties to this PPI Settlement Agreement.

6.7.    **Jurisdiction**. The Parties agree to the exclusive jurisdiction of the US Court and the United States District Court for the District of Delaware in respect of any dispute arising out of or in connection with this PPI Settlement Agreement or its subject matter or formation.

6.8.    **Manner of Execution**.  The Parties may execute this PPI Settlement Agreement in counterparts, each of which shall be an original, and all executed counterparts shall

7#4836-5497-6284v2

collectively be deemed to be one and the same instrument. Facsimile or pdf signatures shall be deemed original signatures, and the Parties may exchange signature pages via mail, courier, facsimile or email.

6.9.  **No Admissions**. This PPI Settlement Agreement shall in no event be construed as or be deemed to be evidence of an admission or concession on the part of any Party of any claim or fault or liability or damages whatsoever. Each of the Parties denies any and all wrongdoing or liability of any kind and does not concede any infirmity in the claims or defenses which it has asserted or could assert. No Party shall have, by reason of this PPI Settlement Agreement, a fiduciary relationship in respect of any other Party or any person or entity, and nothing in this PPI Settlement Agreement, expressed or implied, is intended to or shall be so construed as to impose upon any Party any obligations in respect of this PPI Settlement Agreement except as expressly set forth herein. This PPI Settlement Agreement are part of a proposed settlement of a dispute among the Parties. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this PPI Settlement Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding involving enforcement of the terms of this PPI Settlement Agreement.

6.10.  **No Third-Party Beneficiaries**. This PPI Settlement Agreement is not intended to, and shall not, create rights in any person or entity not a Party hereto.

6.11.  **Non-Effectiveness**. In the event this PPI Settlement Agreement does not become effective, the Parties reserve all of their rights and defenses with respect to the US PPI Dispute resolved by this PPI Settlement Agreement and this proposed settlement shall not constitute an admission by any Party regarding the validity of the claims or defenses resolved by this PPI Settlement Agreement or that they have any liability in connection with such claims or defenses.

6.12.  **Non-Severability**. Each of the provisions of this PPI Settlement Agreement is an integrated, essential and non-severable part of this PPI Settlement Agreement.

6.13.  **Sophisticated Party**. Each Party represents and warrants that it has participated in preparation of this PPI Settlement Agreement and has been represented by sophisticated and experienced counsel in so doing. In any construction of this PPI Settlement Agreement, the PPI Settlement Agreement shall not be construed for or against any Party, but the same shall be construed fairly according to its plain meaning.

6.14.  **Representative Capacity**. Each person executing this PPI Settlement Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

6.15.  **Simultaneous Occurrence**. All material acts provided hereunder that are to occur on the Effective Date are deemed to occur simultaneously.

6.16.  **Successors and Assigns**. This PPI Settlement Agreement shall inure to the benefit of, and shall be binding upon, each Party and its respective agents, successors and assigns.

*[Signature Pages to Follow]*

8#4836-5497-6284v2

Confidential

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/17/2014

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Settlement Agreement.

**NORTEL NETWORKS INC.**


By:  _____
Name:  John Ray
Title:  Principal Officer


**NORTEL NETWORKS CAPITAL CORPORATION**


By:  _____
Name:  John Ray
Title:  Principal Officer

BHG-PPI-0000162

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*

[Supporting Bondholder and Indenture Trustee signatures to be added at a later time]

BHG-PPI-0000163

*SUBJECT TO FRE 408 & ANY OTHER APPLICABLE PRIVILEGES*
*PRIVILEGED & HIGHLY CONFIDENTIAL*
MTH&M DRAFT
7/17/2014

## SCHEDULE A

[list of prepetition claim amounts to be added]

BHG-PPI-0000164