# EXHIBIT 111

Court File No.  09-CL-7951

## ONTARIO
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE OTHER COMPANIES LISTED ON SCHEDULE "A" HERETO WITH RESPECT TO CERTAIN PROCEEDINGS TAKEN IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

**APPLICATION UNDER Section 18.6 of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended**

### MOTION RECORD
### Recognition of various Orders
### (returnable August 14, 2009)

August 11, 2009

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

# INDEX

Court File No.  09-CL-7951

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE
OTHER COMPANIES LISTED ON SCHEDULE "A" HERETO WITH
RESPECT TO CERTAIN PROCEEDINGS TAKEN IN THE UNITED
STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

**APPLICATION UNDER Section 18.6 of the *Companies' Creditors Arrangement Act*,
R.S.C. 1985, c. C-36, as amended**

## INDEX

| Tab | Document | Page |
|-----|----------|------|
| 1. | Notice of Motion returnable August 14, 2009 | 1 - 25 |
| 2. | Affidavit of John Doolittle, sworn August 10, 2009 | 26 - 40 |
| 3. | Affidavit of Douglas Parker, sworn August 10, 2009 | 41 - 89 |
| 4. | Draft Order (Recognition of the U.S. Sale Order) | 90 - 119 |
| 5. | Draft Order (Recognition of the U.S. Bidding Procedures Order (Enterprise Solutions)) | 120 - 140 |
| 6. | Draft Order (Recognition of U.S. Claims Bar Order) | 141 - 153 |

**TAB 1**

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE OTHER COMPANIES LISTED ON SCHEDULE "A" HERETO WITH RESPECT TO CERTAIN PROCEEDINGS TAKEN IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

### APPLICATION UNDER Section 18.6 of the *Companies' Creditors Arrangement Act,* R.S.C. 1985, c. C-36, as amended

### NOTICE OF MOTION
### (returnable August 14, 2009)

Nortel Networks Inc. and the other debtors listed on Schedule "A" hereto (the "Applicants") will make a motion to Justice Morawetz of the Commercial List court on Friday, August 14, 2009 at 10:00 a.m., or as soon after that time as the motion can be heard, at 330 University Avenue, Toronto, Ontario.

PROPOSED METHOD OF HEARING: The motion is to be heard:

☐ in writing under subrule 37.12.1(1) because it is on consent or unopposed or made without notice;

☐ in writing as an opposed motion under subrule 37.12.1(4);

☒ orally.

THE MOTION IS FOR AN ORDER:

(a)    Abridging the time for service of the Notice of Motion and Motion Record in respect of this motion and dispensing with further service thereof;

(b)    Recognizing and implementing in Canada the Order of the Honourable Kevin Gross of the United States Bankruptcy Court for the District of Delaware (the

"U.S. Court") dated July 28, 2009 (the "U.S. Sale Order") authorizing and approving, *inter alia*:

(i)    the sale of certain Applicants' CDMA and LTE assets free and clear of all liens and claims, pursuant to an asset sale agreement dated July 24, 2009 (the "CDMA and LTE Sale Agreement") to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson"); and

(ii)    the assumption and assignment of certain contracts and the assumption and sublease of certain leases;

(c)    Recognizing and implementing the Order of the Honourable Kevin Gross of the of the U.S. Court dated August 4, 2009, (the "U.S. Bidding Procedures Order") authorizing and approving, *inter alia*:

(i)    the Applicants' entry into an asset and share sale agreement (the "Asset and Share Sale Agreement") with Avaya Inc. ("Avaya") which will serve as the "stalking horse" sale agreement;

(ii)    the Bidding Procedures (as defined in the U.S. Bidding Procedures Order") and deeming Avaya as the Qualified Bidder (as defined in the U.S. Bidding Procedures Order) pursuant to the Bidding Procedures for all purposes;

(iii)    the conduct of a sale of the Assets (as defined in the Bidding Procedures Order) by auction pursuant to the Bidding Procedures and the terms of the U.S. Bidding Procedures Order; and

(iv)    the terms and conditions for payment of the Break-Up Fee and Reimbursement (as both such terms are defined in the Asset and Share Sale Agreement and collectively, the "Bid Protections");

(d)    Recognizing and implementing the Order of the Honourable Kevin Gross of the of the U.S. Court dated August 4, 2009, (the "U.S. Claims Bar Order") authorizing and approving, *inter alia*:

     (i)     the deadline of September 30, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "General Bar Date") for all proofs of claims to be filed in writing with the Claims Agent (as defined in the U.S. Claims Bar Order); and

     (ii)    the procedures (as set out in the U.S. Claims Bar Order) for filing proofs of claim against the Applicants and the form and manner of service of same; and

(e)    Such further and other relief as counsel may request and this Honourable Court deem just.

THE GROUNDS FOR THE MOTION ARE:

**BACKGROUND**

(a)    On January 14, 2009, this Honourable Court made an Initial Order granting the CCAA stay of proceedings against Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "CCAA Applicants") and appointing Ernst & Young Inc. as Monitor (the "Monitor") in the CCAA proceedings;

(b)    Also on January 14, 2009, the Applicants made voluntary filings under Chapter 11 of the United States Bankruptcy Code (the "Code"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases in the U.S. as "foreign proceedings" in Canada and giving effect to the automatic stay under the Code in Canada;

(c)    Additionally, on January 15, 2009, Nortel Networks UK Limited ("NNUK") and certain subsidiaries (the "EMEA Debtors") of the Nortel group incorporated in the Europe Middle East and Africa region each obtained an administration order for the appointment of administrators (the "Joint

Administrators") from the English High Court of Justice under the Insolvency Act 1986;

(d)     On February 27, 2009, the U.S. Court granted petitions (the "Chapter 15 Proceedings") recognizing the CCAA proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Code;

(e)     On May 28, 2009, the Commercial Court of Versailles, France (the "French Court") ordered the commencement of secondary insolvency proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Counsel Regulation, the English law proceedings remain the main proceedings in respect of NNSA;

(f)     Lastly, on June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to NNUK under Chapter 15 of the Code;

(g)     References to "Nortel" herein shall be to the global enterprise as a whole;

*The Sale of the CDMA and LTE Business*

(h)     On July 28, 2009, the U.S. Court and this Court held a joint hearing to hear the motions for the approval of the sale of the CDMA and LTE business to Ericsson pursuant to the CDMA and LTE Sale Agreement;

(i)     On July 28, 2009, the U.S. Court entered the U.S. Sale Order granting such relief;

(j)     On the same day, this Court also entered an order providing similar relief (the "Canadian Sale Order");

*Avaya Inc. Bidding Procedures*

(k)     On August 4, 2009, the U.S. Court and this Court held another joint hearing for, among other things to hear motions for the approval of the Asset and Share Sale Agreement as a stalking horse sale agreement with respect to the sale of certain of Nortel's assets related to the Enterprise Solutions business;

(l)     On August 4, 2009, the U.S. Court entered the U.S. Bidding Procedures Order granting such relief;

(m)    On the same day, this Court also entered an order providing similar relief (the "Canadian Bidding Procedures Order");

*Proofs of Claim Procedures*

(n)     On August 4, 2009 the Applicants brought a motion before the U.S. Court with respect to the establishment of deadlines for the filing of proofs of claim against the Applicants and the approval of form and manner of service of same;

(o)     On August 4, 2009, the U.S. Court entered the U.S. Claims Bar Order establishing the General Bar Date for filing of proofs of claim, the procedure for filing the proofs of claim and the form and manner of service of all proofs of claim;

(p)     A motion was also brought by the CCAA Applicants before this Court returnable July 30, 2009 for similar relief;

(q)     On July 30, 2009, this Court granted an order establishing the deadline for filing proofs of claim against the CCAA Applicants and the approval of form and manner of service of same (the "Canadian Claims Bar Order");

*General*

(r)     The recognition of the U.S. Sale Order, the U.S. Bidding Procedures Order and the U.S. Claims Bar Order is fair and reasonable in the circumstances;

(s)     The Monitor, as foreign representative of the CCAA Applicants, will be seeking relief from the U.S. Court for the recognition of the Canadian Sale Order, the Canadian Bidding Procedures Order and the Canadian Claims Bar Order in the Chapter 15 Proceedings;

THE FOLLOWING DOCUMENTARY EVIDENCE will be used at the hearing of the motion:

(a)     The affidavit of John Doolittle, sworn August 10, 2009;

(b)     The affidavit of Douglas Parker, sworn August 10, 2009; and

(c)     Such further and other relief as counsel may request and this Honourable Court deem just.

August 11, 2009

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4  CANADA

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930
Lawyers for the Applicants

TO:        Attached Service List

DOCSTOR: 1742466\1

007

## SCHEDULE "A"

(List of Applicants)

## U.S. SUBSIDIARIES FILING A VOLUNTARY PETITION PURSUANT TO

## CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE, 11 U.S.C. §§ 101-1330

2001 - Nortel Networks Inc.
2110 - Nortel Networks Capital Corporation
2002 - Nortel Networks (CALA) Inc.
2107 - Nortel Altsystems, Inc.  (previously "Alteon Websystems, Inc.")
2101 - Nortel Altsystems International Inc. (previously "Alteon Websystems International, Inc.")
2102 - XROS, Inc.
2103 - Sonoma Systems
2104 - QTERA Corporation
2105 - CoreTek, Inc.
2106 - Nortel Networks Applications Management Solutions Inc.
2108 - Nortel Networks Optical Components Inc.
2113 - Nortel Networks HPOCS Inc.
2114 - Architel Systems (U.S.) Corporation
2115 - Nortel Networks International Inc.
2117 - Northern Telecom International Inc.
2121 - Nortel Networks Cable Solutions Inc.

008

Court File No. 09-CL-7951

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE
OTHER COMPANIES LISTED ON SCHEDULE "A" HERETO WITH
RESPECT TO CERTAIN PROCEEDINGS TAKEN IN THE UNITED
STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

**APPLICATION UNDER Section 18.6 of the *Companies' Creditors Arrangement Act*,
R.S.C. 1985, c. C-36, as amended**

**SERVICE LIST**

TO:       **OGILVY RENAULT LLP**
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto, Ontario M5J 2Z4

Derrick Tay
Mario Forte
Jennifer Stam

Email:    dtay@ogilvyrenault.com
mforte@ogilvyrenault.com
jstam@ogilvyrenault.com

Tel:      416.216.4000
Fax:     416.216.3930

Lawyers for the Applicants

009

TO:  **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, ON  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:   nortel.monitor@ca.ey.com

Tel:     416.943.3016
Fax:     416.943.3300

AND
TO:  **GOODMANS LLP**
250 Yonge Street
Suite 2400
Toronto, ON  M5B 2M6

Jay Carfagnini
Joseph Pasquariello
Gail Rubenstein
Chris Armstrong

Email:   jcarfagnini@goodmans.ca
          jpasquariello@goodmans.ca
          grubenstein@goodmans.ca
          carmstrong@goodmans.ca

Tel:     416.597.4107
Fax:     416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND
TO:  **OSLER HOSKIN AND HARCOURT
LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, ON  M5X 1B8

Lyndon Barnes
Rupert Chartrand
Edward Sellers
Adam Hirsh

Email:   lbarnes@osler.com
          rchartrand@osler.com
          esellers@osler.com
          ahirsh@osler.com

Tel:     416.362.2111
Fax:     416.862.6666

Lawyers for the Boards of Directors of
Nortel Networks Corporation and Nortel
Networks Limited

AND
TO:  **FASKEN MARTINEAU DUMOULIN LLP**
66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, ON  M5K 1N6

Donald E. Milner
Aubrey Kauffman
Edmond Lamek
Jon Levin

Email:   dmilner@fasken.com
          akauffman@fasken.com
          elamek@fasken.com
          jlevin@fasken.com

Tel:     416.868.3538
Fax:     416.364.7813

Lawyers for Export Development Canada

AND TO:

**EXPORT DEVELOPMENT CANADA**
151 O'Connor Street
Ottawa, ON  K1A 1K3

Jennifer Sullivan

Email:   jsullivan@edc.ca

Tel:      613.597.8651
Fax:      613.598.3113

AND TO:

**THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific Tower
Toronto, ON  M5K 1K7

Robert I. Thornton
Michael Barrack
Rachelle Moncur
Leanne M. Williams

Email:   rthornton@tgf.ca
          mbarrack@tgf.ca
          rmoncur@tgf.ca
          lwilliams@tgf.ca

Tel:      416.304.1616
Fax:      416.304.1313

Lawyers for Flextronics Telecom Systems Ltd.

AND TO:

**McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS  B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email:   john.stringer@mcinnescooper.com
          stephen.kingston@mcinnescooper.com

Tel:      902.425.6500
Fax:      902.425.6350

Lawyers for Convergys EMEA Limited

AND TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:   jcarhart@millerthomson.com
          msims@millerthomson.com

Tel:      416.595.8615/8577
Fax:      416.595.8695

Lawyers for Toronto-Dominion Bank

AND TO:

**CAW-CANADA**
Legal Department
205 Placer Court
Toronto, ON M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:   barry.wadsworth@caw.ca
          lewis.gottheil@caw.ca

Tel.:     416.495.3776
Fax:      416.495.3786

Lawyers for all active and retired Nortel employees represented by the CAW-Canada

AND TO:

**BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC  V7X 1S8

R. Hoops Harrison

Email:   hharrison@boughton.ca

Tel:      604.687.6789
Fax:      604.683.5317

Lawyers for Tonko Realty Advisors (BC) Ltd.

- 4 -

011

| | |
|---|---|
| AND TO: | **BORDEN LADNER GERVAIS LLP**<br>Scotia Plaza, 40 King Street West<br>Toronto, ON  M5H 3Y4 |

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email:   mmacnaughton@blgcanada.com
Tel:   416. 367.6646
Fax:   416. 682.2837

Email:   rjaipargas@blgcanada.com
Tel:   416.367.6266
Fax:   416.361.7067

Email:   srappos@blgcanada.com
Tel:   416.367.6033
Fax:   416.361.7306

Lawyers for Bell Canada

AND TO:   **LANG MICHNER LLP**
Brookfield Place, Suite 2500
181 Bay Street
Toronto, ON  M5J 2T7

Leslie A. Wittlin
John Contini
Aaron Rousseau

Email:   lwittlin@langmichener.ca
Tel:   416.307.4087
Fax:   416.304.3855

Email   jcontini@langmichener.ca
Tel:   416.307.4148
Fax:   416.304.3767

Email   arousseau@langmichener.ca
Tel:   416.307.4081
Fax:   416.365.1719

Lawyers for ABN AMRO Bank N.V.

AND TO:   **SISKINDS LLP**
680 Waterloo Street
London, ON  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Monique L. Radlein

Email:   ray.leach@siskinds.com
dimitri.lascaris@siskinds.com
monique.radlein@siskinds.com

Tel:   519.672.2121
Fax:   519.672.6065

Lawyers for Indiana Electrical Workers Pension
Trust Fund IBEW, Laborers Local 100 and 397
Pension Fund, and Bruce William Lapare

AND TO:   **BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, ON  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson

Email:   zychk@bennettjones.com
Tel:   416.777.5738
Fax:   416.863.1716

Email:   orzyr@bennettjones.com
Tel:   416.777.5737
Fax:   416.863.1716

Email:   finlaysong@bennettjones.com
Tel:   416.777.5762
Fax:   416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

012

| | | | | |
|---|---|---|---|---|
| AND TO: | **KOSKIE MINSKY**<br>20 Queen Street West<br>Suite 900<br>Toronto, ON  M5H 3R3 | | AND TO: | **MILLER THOMSON LLP**<br>Scotia Plaza<br>40 King Street West, Suite 5800<br>P.O. Box 1011<br>Toronto, ON  M5H 3S1 |

AND TO:

**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, ON  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon

Email:   mzigler@kmlaw.ca
Tel:     416.595.2090
Fax:     416.204.2877

Email:   sphilpott@kmlaw.ca
Tel:     416.595.2104
Fax:     416.204.2882

Email:   dyiokaris@kmlaw.ca
Tel:     416.595.2130
Fax:     416.204.2810

Email:   amckinnon@kmlaw.ca
Tel:     416.595.2150
Fax:     416.204.2874

Lawyers for the Former Employees of Nortel

AND TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:   jcarhart@millerthomson.com
Tel:     416.595.8615
Fax:     416.595.8695

Email    msims@millerthomson.com
Tel:     416.595.8577
Fax:     416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision Communication
Services, Inc.

AND TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:   jcarhart@millerthomson.com
Tel:     416.595.8615
Fax:     416.595.8695

Email:   msims@millerthomson.com
Tel:     416.595.8577
Fax:     416.595.8695

Email:   jmklotz@millerthomson.com
Tel:     416.595.4373
Fax:     416.595.8695

Lawyers for LG Electronics Inc.

AND TO:

**LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongdeungpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:   joseph.kim@lge.com

Tel:     +82.2.3777.3171
Fax:     +82.2.3777.5345

AND
TO:

**CHAITONS LLP**
185 Sheppard Avenue West
Toronto, ON  M2N 1M9

Harvey G. Chaiton

Email:   harvey@chaitons.com

Tel:      416.218.1129
Fax:     416.218.1849

Lawyers for IBM Canada Limited

AND
TO:

**FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, ON  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder

Email:   Shayne.kukulowicz@fmc-law.com
         Alex.macfarlane@fmc-law.com
         Michael.wunder@fmc-law.com

Tel:      416.863.4511
Fax:     416.863.4592

Canadian Lawyers for the Official Committee of
Unsecured Creditors

AND
TO:

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, ON  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:   ken.rosenberg@paliareroland.com
Tel:      416.646.4304
Fax:     416.646.4301

Email:   max.starnino@paliareroland.com
Tel:      416.646.7431
Fax:     416.646.4301

Email:   lily.harmer@paliareroland.com
Tel:      416.646.4326
Fax:     416.646.4301

Email:   tina.lie@paliareroland.com
Tel:      416.646.4332
Fax:     416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

E. Patrick Shea

Email:   patrick.shea@gowlings.com

Tel:      416.369.7399
Fax:     416.862.7661

Lawyers for Westcon Group

| | |
|---|---|
| AND TO: | **MINDEN GROSS LLP**<br>145 King Street West, Suite 2200<br>Toronto, ON  M5H 4G2<br><br>Raymond M. Slattery<br>David T. Ullmann<br><br>Email:  rslattery@mindengross.com<br>           dullmann@mindengross.com<br>Tel:     416.369.4149<br>Fax:    416.864.9223<br><br>Lawyers for Verizon Communications Inc. | AND TO: | **AIRD & BERLIS**<br>Brookfield Place<br>181 Bay Street, Suite 1800<br>Toronto, ON  M5J 2T9<br><br>Harry Fogul<br>Peter K. Czegledy<br><br>Email:  hfogul@airdberlis.com<br>Tel:     416.865.7773<br>Fax:    416.863.1515<br><br>Email:  pczegledy@airdberlis.com<br>Tel:     416.865.7749<br>Fax:    416.863.1515<br><br>Lawyers for Microsoft Corporation |

---

AND TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, ON  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:   rslattery@mindengross.com
         dullmann@mindengross.com
Tel:     416.369.4149
Fax:     416.864.9223

Lawyers for Verizon Communications Inc.

---

AND TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:   jwigley@gardiner-roberts.com
Tel:     416.865.6655
Fax:     416.865.6636

Email:   vdare@gardiner-roberts.com
Tel:     416.865.6641
Fax:     416.865.6636

Lawyers for Andrew, LLC

---

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Canadian Lawyers for Tellabs, Inc.

---

AND TO:

**AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:   hfogul@airdberlis.com
Tel:     416.865.7773
Fax:     416.863.1515

Email:   pczegledy@airdberlis.com
Tel:     416.865.7749
Fax:     416.863.1515

Lawyers for Microsoft Corporation

---

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:   renglish@airdberlis.com
         smitra@airdberlis.com

Tel:     416.863.1500
Fax:     416.863.1515

Lawyers for Tata Consultancy Services Limited
and Tata America International Corporation

---

AND TO:

**ALEXANDER HOLBURN BEAUDIN & LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:   surquhart@ahbl.ca
Tel:     604.484.1757
Fax:     604.484.1957

Lawyers for Algo Communication Products Ltd.

- 8 -

015

AND TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street, West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Maurice Fleming

Email:   mfleming@millerthomson.com
Tel:      416.595.8686
Fax:      416.595.8695

Lawyers for Verint Americas Inc. and Verint Systems, Inc.


AND TO:
**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Andrew F. Kent
Tushara Weerasooriya
Hilary E. Clarke

Email:   andrew.kent@mcmillan.ca
Tel:      416.865.7160
Fax:      416.865.7048

Email:   hilary.clarke@mcmillan.ca
Tel:      416.865.7286
Fax:      416.865.7048

Email:   tushara.weerasooriya@mcmillan.ca
Tel:      416.865.7262
Fax:      416.865.7048

Lawyers for Royal Bank of Canada


AND TO:
**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:   bdarlington@davis.ca
Tel:      416.365.3529
Fax:      416.369.5210

Email:   jdavissydor@davis.ca
Tel:      416.941.5397
Fax:      416.365.7886

Lawyers for Brookfield LePage Johnson Controls Facility Management Services


AND TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Lawyers for Perot Systems Corporation

AND TO:
**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Lawrence J. Crozier
Adam C. Maerov

Email:   lawrence.crozier@mcmillan.ca
Tel:     416.865.7178
Fax:     416.865.7048

Email:   adam.maerov@mcmillan.ca
Tel:     416.865.7285
Fax:     416.865.7048

Lawyers for Citibank

AND TO:
**BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario  M5C 3G5

Domenico Magisano

Email:   dmagisano@blaney.com
Tel:     416.593.2996
Fax:     416.593.5437

Lawyers for Expertech Network Installation Inc.

AND TO:
**LANG MICHENER LLP**
Brookfield Place
Suite 2500, 181 Bay Street
P.O. Box 747
Toronto, Ontario  M5J 2T7

Leslie Wittlin
Aaron Rousseau

Email:   lwittlin@langmichener.ca
Tel:     416.307.4087
Fax:     416.365.1719

Email:   arousseau@langmichener.ca
Tel:     416.307.4081
Fax:     416.365.1719

Lawyers for Right Management Inc.

AND TO:
**CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario  M5H 3C2

Deborah S. Grieve

Email:   dgrieve@casselsbrock.com
Tel:     416.860.5219
Fax:     416.350.6923

Lawyers for Alvarion Ltd.

AND TO:
**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:   jwigley@gardiner-roberts.com
Tel:     416.865.6655
Fax:     416.865.6636

Email:   vdare@gardiner-roberts.com
Tel:     416.865.6641
Fax:     416.865.6636

Lawyers for Amphenol Corporation

AND TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Sanjeev P.R. Mitra
Sandra A. Vitorovich

Email:   smitra@airdberlis.com
         svitorovich@airdberlis.com

Tel:     416.863.1500
Fax:     416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

- 10 -

<table>
<tr>
<td>AND<br>TO:</td>
<td>

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Ainslie Benedict
Steven Levitt
Christopher Rootham

Email:   janice.payne@nelligan.ca
           ainslie.benedict@nelligan.ca
           steven.levitt@nelligan.ca
           christopher.rootham@nelligan.ca

Tel:     613.231.8245
Fax:    613.788.3655

Lawyers for the Steering Committee of Recently
Severed Canadian Nortel Employees
</td>
<td>AND<br>TO:</td>
<td>

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
Harvey Garman

Email:   bleonard@casselsbrock.com
           hgarman@casselsbrock.com

Tel:     416.860.6455
Fax:    416.640.3054

Lawyers for the UK Pension Protection Fund and
Nortel Networks UK Pension Trust Limited
</td>
</tr>
<tr>
<td>AND<br>TO:</td>
<td>

**CALEYWRAY**
Labour/Employment Lawyers
1600-65 Queen Street West
Toronto, Ontario  M5H 2M5

Gail E. Misra

Email:   misrag@caleywray.com

Tel:     416.775.4680
Fax:    416.366.3293

Lawyers for the Communication, Energy and
Paperworkers Union of Canada
</td>
<td>AND<br>TO:</td>
<td>

**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario  K2P 0A2

Paul K. Lepsoe

Email:   pklepsoe@mcfarlanelaw.com

Tel:     613.233.2679
Fax:    613.233.3774

Lawyers for Iron Mountain Canada Corporation
and Iron Mountain Information Management, Inc.
</td>
</tr>
<tr>
<td>AND<br>TO:</td>
<td>

**COLBY, MONET DEMERS, DELAGE &**
**CREVIER LLP**
Tour McGill College
1501 McGill College Avenue
Suite 2900
Montreal, Quebec  H3A 3M8

David J. Dropsy

Email:   ddropsy@colby-monet.com
Tel:     514.284.3663
Fax:    514.284.1961

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.
</td>
<td>AND<br>TO:</td>
<td>

**SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec  H9S 2A5

Dan Goldstein
Marco Gaggino

Email:   dgoldstein@schneidergaggino.com
           mgaggino@schneidergaggino.com

Tel:     514.631.8787
Fax:    514.631.0220

Lawyers for the Teamsters Quebec Local 1999
</td>
</tr>
</table>

018

| | | | |
|---|---|---|---|
| AND TO: | **NELLIGAN O'BRIEN PAYNE LLP**<br>Barristers and Solicitors<br>50 O'Connor Street<br>Suite 1500<br>Ottawa, Ontario  K1P 6L2 | AND TO: | **BAKER & McKENZIE LLP**<br>Brookfield Place, P.O. Box 874<br>181 Bay Street, Suite 2100<br>Toronto, Ontario  M5J 2T3 |

AND TO:   **NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:   janice.payne@nelligan.ca
          steven.levitt@nelligan.ca
          christopher.rootham@nelligan.ca

Tel:    613.231.8245
Fax:   613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post CCAA
as at January 14, 2009

AND TO:   **BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email:   ryanbellr@bennettjones.com
          laugesenm@bennettjones.com

Tel:    416.863.1200
Fax:   416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and
Tel-e Connect Systems (Toronto) Ltd.

AND TO:   **MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Timothy R. Dunn

Email:   tdunn@mindengross.com
Tel:    416.369.4335
Fax:   416.864.9223

Lawyers for 2748355 Canada Inc.

AND TO:   **BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Chris Besant
Lydia Salvi

Email:   chris.besant@bakernet.com

Tel:    416.865.2318
Fax:   416.863.6275

Email:   lydia.salvi@bakernet.com

Tel:    416.865.6944
Fax:   416.863.6275

Lawyers for Jabil Circuit Inc.

AND TO:   **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:   theintzm@mccarthy.ca
Tel:    416.601.7627
Fax:   416.868.0673

Email:   jsirivar@mccarthy.ca
Tel:    416.601.7750
Fax:   416.868.0673

Lawyers for Frank Andrew Dunn

AND TO:   **EURODATA**
2574 Sheffield Road
Ottawa, Ontario  K1B 3V7

Nanci Shore

Email:   nanci@eurodata.ca
Tel:    613.745.0921
Fax:   613.745.1172

| | |
|---|---|
| AND TO: | **BALDWIN LAW PROFESSIONAL CORPORATION**<br>54 Victoria Avenue<br>Belleville, Ontario K8N 5J2 |

Ian W. Brady

Email:   lbrady@baldwinlaw.ca
Tel:      613.771.9991
Fax:      613.771.9998

Lawyers for Sydney Street Properties Corp.

AND TO:   **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND TO:   **SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthur.jacques@shibleyrighton.com
Tel:      416.214.5213
Fax:      416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :     416.214.5400

Co-Counsel for the Steering Committee of
Nortel Canadian Continuing Employees – Post
CCAA as at January 14, 2009

AND TO:   **AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Cynthia R. Maher

Email:   cynthia.maher@ntscorp.com
Tel:      714.998.4351
Fax:      714.998.7142

Lawyers for AETL Testing, Inc.

AND TO:   **SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthur.jacques@shibleyrighton.com
Tel:      416.214.5213
Fax:      416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :     416.214.5400

Lawyers for The Recently Severed Canadian
Nortel Employees Committee

AND TO:   **LAVERY, DE BILLY, LLP**
Barristers & Solicitors
Suite 2400, 600 de la Gauchetière West
Montreal, Quebec H3B 4L8

Jean-Yves Simard

Email:   jysimard@lavery.ca
Tel :     514.871.1522
Fax :     514.871.8977

Lawyers for Texas Landlords to Nortel Networks
Inc.

AND TO: **NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Cynthia Maher

Email: cynthia.maher@nt scorp.com
Tel: 714.998.4351

AND TO: **GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email: david.cohen@gowlings.com

Tel: 416.369.6667
Fax: 416.862.7661

Lawyers for General Electric Canada Equipment
Finance G.P. and GE Capital Canada Leasing
Services Inc.

AND TO: **DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email: bdarlington@davis.ca
Tel: 416.365.3529
Fax: 416.369.5210

Email: jdavissydor@davis.ca
Tel: 416.941.5397
Fax: 416.365.7886

Lawyers for Computershare Trust Company of
Canada

AND TO: **DAVIES WARD PHILLIPS & VINEBERG LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email: rschwill@dwpv.com
Tel: 416.863.0900
Fax: 416.863.0871

Email: mgottlieb@dwpv.com
Tel: 416.863.0900
Fax: 416.863.0871

Lawyers for Nortel Networks UK Limited (In
Administration

AND TO: **LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail: tosullivan@counsel-toronto.com
Tel: 416.598.1744
Fax: 416.598.3730

Email: slaubman@counsel-toronto.com
Tel: 416.598.1744
Fax: 416.598.3730

Lawyers for William A. Owens

AND TO: **BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Lydia Salvi

Email: lydia.salvi@bakernet.com

Tel: 416.865.6944
Fax: 416.863.6275

Lawyers for Wipro Limited

DOCSTOR: 1600901\2A

- 14 -

021

| | | | |
|---|---|---|---|
| AND TO: | **AIRD & BERLIS LLP**<br>Barristers & Solicitors<br>Brookfield Place, P.O. Box 754<br>181 Bay Street, Suite 1800<br>Toronto, ON  M5J 2T9 | AND TO: | **McCARTHY TETRAULT LLP**<br>Suite 5300, TD Bank Tower<br>Toronto Dominion Centre<br>Toronto, Ontario  M5K 1E6 |

AIRD & BERLIS LLP

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Lawyers for the Current and Former Employees of
Nortel Networks Inc. who are or were Participants
in the Long-Term Investment Plan Sponsored by
Nortel Networks Inc.

McCARTHY TETRAULT LLP

Heather Meredith

Email:   hmeredith@mccarthy.ca
Tel:     416.601.8342
Fax:     416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND TO: **TORYS LLP**
79 Wellington Street West, Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Scott Bomhof

Email:   sbomhof@torys.com
Tel:     416.865.7370
Fax:     416.865.7380

Lawyers for Nokia Siemens Networks B.V.

AND TO: **DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email:   dwinters@justice.gc.ca
Tel:     416.973.3172
Fax:     416.973.0810

DOCSTOR: 1600901\2A

AND TO: **BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:  pamela.huff@blakes.com
Tel:     416.863.2958
Fax:    416.863.2653

Email:  milly.chow@blakes.com
Tel:     416.863.2594
Fax:    416.863.2653

Email:  hugh.desbrisay@blakes.com
Tel:     416.863.2426
Fax:    416.863.2653

Email:  craig.thorburn@blakes.com
Tel:     416.863.2965
Fax:    416.863.2653

Lawyers for MatlinPatterson Global Advisers LLC,
MatlinPatterson Global Opportunities Partners III
L.P. and MatlinPatterson Opportunities Partners
(Cayman) III L.P.

AND TO: **BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Susan M. Grundy
Marc Flynn

Email:  susan.grundy@blakes.com
Tel:     416.863.2572
Fax:    416.863.2653

Email:  marc.flynn@blakes.com
Tel:     416.863.2685
Fax:    416.863.2653

Lawyers for Telefonaktiebolaget L M Ericsson
(publ)

AND TO: **LANG MICHENER LLP**
Brookfield Place
181 Bay Street, Suite 2500
Toronto, Ontario, M5J 2T7

Sheryl E. Seigel

Email:  sseigel@langmichener.ca
Tel:     416.307.4063
Fax:    416.365.1719

Lawyers for The Bank of New York Mellon

AND TO: **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran
Ryan Stabile

Email:  kmcelcheran@mccarthy.ca
Tel:     416.601.7730
Fax:    416.868.0673

Email:  rstabile@mccarthy.ca
Tel:     416.601.8335
Fax:    416.868.0673

Lawyers for Avaya Inc.

**COURTESY COPIES:**

~ **023**

| | | | |
|---|---|---|---|
| AND TO: | **LEWIS AND ROCA**<br>40 North Central Avenue<br>Phoenix, Arizona<br>USA 85004-4429 | AND TO: | **AKIN GUMP STRAUSS HAUER &**<br>**FELD LLP**<br>One Bryant Park<br>New York, NY 10036 |

AND TO:

**LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA 85004-4429

Scott K. Brown

Email:   sbrown@lrlaw.com

Tel:      602.262.5321
Fax:     602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND TO:

**AKIN GUMP STRAUSS HAUER &**
**FELD LLP**
One Bryant Park
New York, NY 10036

Fred S. Hodara
Ryan C. Jacobs

Email:   fhodara@akingump.com
             rjacobs@akingump.com

Tel:      212.872.1000
Fax:     212.872.1002

U.S. Lawyers for the Official Committee of
Unsecured Creditors

AND TO:

**CURTIS, MALLET-PREVOST, COLT &**
**MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail:  sreisman@curtis.com
             jdrew@curtis.com

Tel:      212.696.6000
Fax:     212-697-1559

Lawyers for Flextronics International

AND TO:

**MILBANK, TWEED, HADLEY**
**McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005

Dennis F. Dunne
Andrew M. Leblanc
Albert A. Pisa

Email:   DDunne@milbank.com
Tel:      212.530.5770
Fax:     212.530.5219

Email:   ALeblanc@milbank.com
Tel:      212.835.7574
Fax:     212.530.5219

Email:   APisa@milbank.com
Tel:      212.530.5319
Fax:     212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

AND     **VEDDER PRICE P.C.**
TO:     1633 Broadway, 47th Floor
        New York, New York  10019

        Michael L. Schein

        Email:   mschein@vedderprice.com

        Tel:     212.407.6920
        Fax:     212.407.7799

        U.S. Lawyers for Telmar Network Technology,
        Inc. and Precision Communication Services, Inc.

AND     **MACLEOD DIXON LLP**
TO:     3700 Canterra Tower
        400, 3rd Avenue N.W.
        Calgary, Alberta  T2P 4H2

        Andrew Robertson
        Caylee M. Rieger

        Email :  andrew.robertson@macleoddixon.com
                 caylee.rieger@macleoddixon.com

        Tel :    403.267.8222
        Fax :    403.264.5973

        Agent for Nelligan O'Brien Payne LLP, lawyers
        for the Steering Committee of Recently Severed
        Canadian Nortel Employees and lawyers for the
        Steering Committee of Nortel Canadian
        Continuing Employees – Post CCAA as at
        January 14, 2009

AND     **BRYAN CAVE LLP**
TO:     161 North Clark Street, Suite 4300
        Chicago, Illinois  60601

        Eric S. Prezant

        Email:   eric.prezant@bryancave.com
        Tel:     312.602.5033
        Fax:     312.602.5050

        U.S. Lawyers for Tellabs, Inc.

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE OTHER COMPANIES LISTED
ON SCHEDULE "A" HERETO WITH RESPECT TO CERTAIN PROCEEDINGS TAKEN IN THE
UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

Court File No: 09-CL-7951

---

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

Proceeding commenced at Toronto

---

### NOTICE OF MOTION
(returnable August 14, 2009)

---

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com


Fax: (416) 216-3930

Lawyers for the Applicants

**TAB 2**

026

Court File No: 09-CL-7951

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE** *COMPANIES' CREDITORS ARRANGEMENT ACT,*
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE**
**OTHER COMPANIES LISTED ON SCHEDULE "A" HERETO WITH**
**RESPECT TO CERTAIN PROCEEDINGS TAKEN IN THE UNITED**
**STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

**APPLICATION UNDER Section 18.6 of the** *Companies' Creditors Arrangement Act,*
**R.S.C. 1985, c. C-36, as amended**

**AFFIDAVIT OF JOHN DOOLITTLE**
**(sworn August 10, 2009)**

1.      I, John Doolittle, of the city of Oakville in the Province of Ontario, MAKE OATH AND
SAY:

2.      I am the vice-president of Nortel Networks Inc. ("NNI") and have held that position since
January 7, 2009.   I am also the Treasurer of Nortel Networks Corporation ("NNC") and Nortel
Networks Limited ("NNL") and have held those positions since June 23, 2008. From October 14,
2002 to June 12, 2006 I was the Vice-President, Tax for NNC and NNL.   Effective at 11:59 p.m.
on August 10, 2009, I will be appointed as the Senior Vice-President, Finance and Corporate
Services of NNC and NNL.   As such, I have personal knowledge of the matters to which I
hereinafter depose in this Affidavit.   Where I do not possess personal knowledge, I have stated
the source of my information and, in all such cases, believe it to be true.

3.      I swear this affidavit in support of the motion to recognize an order (the "U.S. Claims Bar
Order") of the United States Bankruptcy Court for the District of Delaware (the "U.S. Court")
granted on August 4, 2009 authorizing, *inter alia,*

(a)    the deadline of September 30, 2009 at 4:00 p.m. (prevailing Eastern Time) for all proofs of claim to be filed in writing with the Claims Agent (as defined in the U.S. Claims Bar Order); and

(b)    the procedures (as set out in the U.S. Claims Bar Order) for filing proofs of claim against the Applicants (as defined below) and the form and manner of service of same.

4.    References to "Nortel" herein are references to the global enterprise as a whole.

**BACKGROUND**

5.    On January 14, 2009, Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "CCAA Applicants") were granted protection under the *Companies' Creditors Arrangement Act*, (Canada) R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order (the "Initial Order") of this Honourable Court and Ernst & Young Inc. was appointed as monitor (the "Monitor") in the CCAA proceedings.

6.    Also on January 14, 2009, the NNI and certain of its U.S. affiliates (the "Applicants") made voluntary filings under Chapter 11 of the United States Bankruptcy Code (the "Code"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases as "foreign proceedings" in Canada and giving effect in Canada to the automatic stay under the Code.

7.    Additionally, on January 15, 2009, Nortel Networks UK Limited ("NNUK") and certain subsidiaries (the "EMEA Debtors") of the Nortel group incorporated in Europe, the Middle East or Africa each obtained an administration order for the appointment of administrators (the "Joint Administrators" from the English High Court of Justice under the Insolvency Act 1986.

8.    On February 27, 2009, the U.S. Court entered an order recognizing the CCAA proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Code.

9.    On May 28, 2009, the Commercial Court of Versailles, France (the "French Court") ordered the commencement of secondary insolvency proceedings in respect of Nortel Networks

-  028

S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Counsel Regulation, the English law proceedings remain the main proceedings in respect of NNSA.

10.     Lastly, on June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to NNUK under Chapter 15 of the Code.

## RECOGNITION OF THE ORDERS IN CANADA

11.     On August 4, 2009 the Applicants brought a motion before the U.S. Court with respect to the establishment of deadlines for the filing of proofs of claim against the Applicants and the approval of form and manner of service of same. On the same day, the U.S. Court entered an order granting such relief. A copy of the U.S. Claims Bar Order is attached as Exhibit "A" hereto.

12.     A motion was also brought by the CCAA Applicants before this Court and on July 30, 2009, this Court also entered an order providing similar relief (the "Canadian Claims Bar Order").

13.     Given the global nature of Nortel's business, it is inevitable that there will be cross border claim issues to be addressed. As such, the Applicants are seeking recognition of the U.S. Claims Bar Order in these proceedings. I believe that such relief is fair and reasonable in the circumstances.

14.     I understand that the Monitor, as foreign representative of the CCAA Applicants, will be seeking relief from the U.S. Court for the recognition of the Canadian Claims Bar Order in the Chapter 15 Proceedings.

029

- 4 -

SWORN before me at the City of
Toronto in the Province of Ontario, on
the 10th day of August, 2009.

_____
Commissioner for Taking Affidavits
Samantha Graff

_____
John Doolittle

- 5 -

030

**SCHEDULE "A"**

(List of Applicants)

**U.S. SUBSIDIARIES FILING A VOLUNTARY PETITION PURSUANT TO**

**CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE, 11 U.S.C. §§ 101-1330**

2001 - Nortel Networks Inc.
2110 - Nortel Networks Capital Corporation
2002 - Nortel Networks (CALA) Inc.
2107 - Nortel Altsystems, Inc.  (previously "Alteon Websystems, Inc.")
2101 - Nortel Altsystems International Inc. (previously "Alteon Websystems International, Inc.")
2102 - XROS, Inc.
2103 - Sonoma Systems
2104 - QTERA Corporation
2105 - CoreTek, Inc.
2106 - Nortel Networks Applications Management Solutions Inc.
2108 - Nortel Networks Optical Components Inc.
2113 - Nortel Networks HPOCS Inc.
2114 - Architel Systems (U.S.) Corporation
2115 - Nortel Networks International Inc.
2117 - Northern Telecom International Inc.
2121 - Nortel Networks Cable Solutions Inc.

**TAB A**

031

This is Exhibit _____ A _____ referred to in the
affidavit of ...John Doolittle...
sworn before me, this ......10th
day of ...August........ 20.09

_____
A COMMISSIONER FOR TAKING AFFIDAVITS

Samantha Graff

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
----------------------------------------X
                                        :
                                        :    Chapter 11
                                        :
In re                                   :    Case No. 09-10138 (KG)
                                        :
Nortel Networks Inc., et al.,[1]        :    Jointly Administered
                                        :
                        Debtors.        :
                                        :    RE: D.I. 1084
                                        :
----------------------------------------X
```

**ORDER ESTABLISHING DEADLINES FOR FILING PROOFS OF CLAIM AND
APPROVING FORM AND MANNER OF NOTICE THEREOF**

Upon the motion dated, July 15, 2009 (the "Motion"),[2] of Nortel Networks Inc. and its

affiliated debtors, as debtors and debtors in possession in the above-captioned cases (the

"Debtors"), for entry of an order, as more fully described in the Motion, fixing deadlines (the

"Bar Dates") and establishing procedures for filing proofs of claim against the Debtors and

approving the form and manner of service thereof;[3] and adequate notice of the Motion having

been given as set forth in the Motion; and it appearing that no other or further notice is

necessary; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having determined that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number,
are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769),
Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251),
CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical
Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel
Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable
Solutions Inc. (0567).   Addresses for the Debtors can be found in the Debtors' petitions, which are available at
http://chapter11.epiqsystems.com/nortel.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

[3] For the avoidance of doubt, this Order does not establish a bar date for the filing of claims in the jointly
administered chapter 11 case commenced by Nortel Networks (CALA) Inc., Case No. 09-12515.

1

032

consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief requested in the Motion, and that such relief is in the best interests of the Debtors, their estates, their creditors and the parties in interest; and upon the record in these proceedings; and after due deliberation;

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED.

2.    Except as otherwise provided herein, all Entities (including, without limitation, individuals, partnerships, corporations, joint ventures, trusts and governmental units) that assert a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtors which arose prior to the filing of the chapter 11 petitions on January 14, 2009 (the "Petition Date"), shall file a proof of such claim in writing so that it is received on or before September 30, 2009, at 4:00 p.m. (prevailing Eastern Time) (the "General Bar Date").

3.    Subject to paragraph 21 of this Order, all claims against the Debtors shall be filed in, and only in, these chapter 11 cases with the Claims Agent (as defined herein) in accordance with the procedures set forth in this Order.

4.    Subject to paragraph 21 of this Order, all claims against the Canadian Debtors shall be filed in, and only in, the Canadian Proceedings with the court-appointed Monitor pursuant to the procedures approved by the Canadian Court.

5.    The following procedures for the filing of proofs of claim shall apply:

(a)    Proofs of claim must conform substantially to the Proof of Claim Form;

(b)    However, claims asserted under Section 503(b)(9) of the Bankruptcy Code must conform to the Section 503(b)(9) Claim Form approved in this

2

033

Court's *Order Establishing and Implementing Uniform Procedures Regarding Section 503(b)(9) Claims* [D.I. 590] (the "503(b)(9) Procedures Order");

(c)   Proof of claim forms must be filed by delivery of the original either by first class U.S. mail, postage prepaid to Epiq Bankruptcy Solutions, LLC (the "Claims Agent") at the following address:

>    Nortel Networks Inc. Claims Processing Center
>    c/o Epiq Bankruptcy Solutions, LLC
>    FDR Station, P.O. Box 5075
>    New York, NY 10150-5075

or, if sent by hand delivery or overnight courier, to:

>    Nortel Networks Inc. Claims Processing Center
>    c/o Epiq Bankruptcy Solutions, LLC
>    757 Third Avenue, 3rd Floor
>    New York, NY 10017

(d)   Proofs of claim sent by facsimile, telecopy or electronic mail shall not be accepted;

(e)   Proof of claim forms will be deemed filed only if actually received by the Claims Agent on or before 4:00 p.m. (prevailing Eastern Time) on the applicable Bar Date;

(f)   Proof of claim forms must (i) be signed by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant; (ii) include supporting documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available; (iii) be in the English language; and (iv) be denominated in lawful United States currency; provided, however, that the Debtors shall have the right to convert a claim denominated in non-U.S. currency into U.S. currency using the Reuters closing rate as of the Petition Date, unless the Debtors deem another date more appropriate; and

(g)   Proof of claim forms must specify by name and case number the Debtor against which the claim is filed; if the holder asserts a claim against more than one Debtor or has claims against different Debtors, a separate proof of claim form must be filed with respect to each Debtor.

3

6.    The following Entities need not file a proof of claim on or prior to the General

Bar Date:

(a)    Any Entity that has already filed a proof of claim against the correct Debtors with the Clerk of the Bankruptcy Court for the District of Delaware or the Claims Agent in a form substantially similar to Official Form No. 10 and/or the 503(b)(9) Claim Form;

(b)    Any person or entity whose claim is listed on the Schedules filed by the Debtors, provided that (i) the claim is not scheduled as "disputed," "contingent" or "unliquidated"; and (ii) the claimant does not disagree with the amount, nature and priority of the claim as set forth in the Schedules; and (iii) the claimant does not dispute that the claim is an obligation of the specific Debtor against which the claim is listed in the Schedules;

(c)    Any holder of a claim against the Debtors that heretofore has been allowed by order of this Court;

(d)    Any person or entity whose claim against the Debtors has been paid in full by any of the Debtors pursuant to an order of this Court;

(e)    Any holder of a claim against the Debtors for which specific deadlines have previously been fixed by this Court;

(f)    Any Debtor, nondebtor affiliate of the Debtors or Canadian Debtor, or any of their direct or indirect subsidiaries holding a claim, whether liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present, future, known or unknown, against any of the Debtors, other than claims by any joint venture;

(g)    Any Entity having a claim against any of the nondebtor affiliates or subsidiaries of the Debtors;

(h)    Any holder of a claim against the Debtors allowable under section 503(b) and section 507(a)(2) of the Bankruptcy Code as an expense of administration (other than any claim allowable under Section 503(b)(9) of the Bankruptcy Code, which claim holders shall be required to file a proof of claim pursuant to the 503(b)(9) Procedures Order);

(i)    Any claims of officers and/or directors, who are officers and/or directors as of August 1, 2009, for indemnification and/or contribution arising from such officer's and/or director's service to the Debtors or any of the Debtors' non-debtor affiliates; provided, however, that such officers and/or directors must file proofs of claims so as to be actually received by

4

the applicable Bar Date for all other claims arising before the Petition Date against the Debtors;

(j)  Any Entity (a "Noteholder") whose claim is limited exclusively to the repayment of principal, interest and other fees and expenses (the "Note Claims") in connection with such Noteholders holding or ownership of such notes under the note indentures[4] ("Note Indentures"); provided, however, that (i) the foregoing exclusion in this subparagraph shall not apply to the indenture trustees under the Note Indentures (the "Indenture Trustees"), (ii) the Indenture Trustees shall each be authorized and required to file a single proof of claim pursuant to section 501(a) of the Bankruptcy Code, on or before the General Bar Date, on account of the Note Claims against the Debtors under their respective Note Indentures and (iii) any Noteholder wishing to assert a claim, other than a Notes Claim, arising out of or relating to the Notes Indentures, shall be required to file a proof of claim with respect to such claim on or before the General Bar Date, unless another exception identified herein applies; and

(k)  Holders of equity security interests in the Debtors need not file proofs of interest with respect to the ownership of such equity interests, provided, however, that if any such holder asserts a claim against the Debtors that arises out of or relates to the ownership (including a claim relating to the purchase or sale) of such equity interest, a proof of such claim must be filed on or prior to the General Bar Date.

7.  Any person or entity that holds a claim that arises from the rejection of an executory contract or unexpired lease by the Debtors must file a proof of claim by the date (the "Rejection Bar Date") that is the later of (i) the General Bar Date, (ii) 30 days after entry of an order authorizing such rejection, and (iii) 35 days after the Debtors file and serve by e-mail or overnight courier a notice of the rejection of such executory contract or unexpired lease pursuant

---

[4] The Note Indentures are: (i) the Indenture dated as of March 28, 2007 governing the 1.75% Convertible Senior Notes due 2012 and the 2.125% Convertible Senior Notes due 2014 issued by Nortel Networks Corporation and guaranteed by Nortel Networks Limited and Nortel Networks Inc.; (ii) the Indenture dated as of July 5, 2006, as supplemented by the First Supplemental Indenture dated as of July 5, 2006 and the Second Supplemental Indenture dated as of May 1, 2007, governing the Floating Rate Senior Notes due 2011, the 10.125% Senior Notes due 2013 and the 10.750% Senior Notes due 2016 issued by Nortel Networks Limited and guaranteed by Nortel Networks Corporation and Nortel Networks Inc.; and (iii) the Indenture dated as of February 15, 1996, as supplemented by the First Supplemental Indenture dated as of February 15, 1996, governing the issue of 7.875% Notes due 2026 of Northern Telecom Capital Corporation (now Nortel Networks Capital Corporation) and guaranteed by Northern Telecom Limited (now Nortel Networks Limited).

5

036

to the *Order Approving Procedures for Rejection of Executory Contracts and Unexpired Leases and the Abandonment of Certain Assets Related Thereto* (D.I. 510)

8.      If the Debtors amend or supplement the Schedules subsequent to the date hereof, the Debtors shall give notice of any amendment or supplement to the holders of claims affected thereby, and such holders shall be afforded 20 days from the date of such notice to file proofs of claim in respect of their claims or be barred from doing so, and shall be given notice of such deadline (the "Amended Schedule Bar Date").

9.      Nothing in this Order shall prejudice the right of the Debtors or any other party in interest to dispute or assert offsets or defenses to any claim reflected in the Schedules.

10.     Pursuant to Bankruptcy Rule 3003(c)(2), all holders of claims against the Debtors that fail to comply with this Order by filing a proof of claim by the applicable Bar Date in appropriate form (i) shall be forever barred and estopped from asserting such claim (or filing a proof of claim with respect thereto) against the Debtors and their estates, (ii) shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution under a plan of reorganization or liquidation in these cases, (iii) the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such claim, and (iv) such creditor shall not be entitled to any further notices in these chapter 11 cases with respect to such claim.

11.     A copy of the notice substantially in the form attached hereto as Exhibit B (the "Bar Date Notice") along with a Proof of Claim Form and a 503(b)(9) Claim Form (collectively, the "Bar Date Package") is approved and shall be deemed adequate and sufficient if served by first-class mail at least 50 days prior to the General Bar Date on:

(a)      the United States trustee;

6

037

(b)     counsel to the Committee;

(c)     all Entities that have requested notice of the proceedings in the chapter 11 cases as of the date of this Order;

(d)     counsel to the Bondholder Group;

(e)     counsel to any other official committee that may be appointed in these chapter 11 cases;

(f)     the Indenture Trustee for each of the Note Indentures;

(g)     all Entities that have filed claims against the Debtors as of the date of this Order;

(h)     all known creditors of the Debtors and other known holders of claims against the Debtors as of the date of this Order, including all Entities listed in the Schedules as holding claims;

(i)     all parties to executory contracts and unexpired leases with any Debtor, using the last known address;

(j)     all parties to litigation with the Debtors using the last known address;

(k)     the Internal Revenue Service for the district in which the case is pending and, if required by Bankruptcy Rule 2002(j), the Securities and Exchange Commission and any other required governmental units; and

(l)     such additional Entities as deemed appropriate by the Debtors.

12.     With regard to those holders of claims listed on the Schedules, the Debtors shall mail one or more proof of claim forms (as appropriate) substantially similar to the Proof of Claim form attached hereto as Exhibit A, indicating on the form how the Debtors have scheduled such creditor's claim in the Schedules (including the identity of the Debtor, the amount of the claim and whether the claim has been scheduled as contingent, unliquidated or disputed).

7

038

13.    The Debtors are herby authorized to provide supplemental mailings of the Bar Date Package at any time up to 20 days in advance of the applicable Bar Date as may be necessary in situations, including without limitation, where: (a) Bar Date Packages are returned by the post office with forwarding addresses; (b) certain parties acting on behalf of other parties in interest decline to pass along Bar Date Packages to these parties and instead return their names and addresses to the Debtors for direct mailing), and (c) additional potential claimants become known as a result of the Bar Date Notice process.  Notwithstanding the foregoing, the Debtors shall not be required to provide any additional notice to any claimant to whom the Debtors mailed a Bar Date Package in accordance with the terms of this Order and such Bar Date Package was returned to the Debtors as undeliverable without a forwarding address.

14.    The Debtors are permitted to establish supplemental bar dates, upon written consent of the Committee, and the Debtors shall advise the Court of any supplemental bar date by filing a supplemental bar date notice, which identifies the supplemental bar date and the claimants that are subject thereto, and provides 20 days notice of any supplemental bar date.

15.    Pursuant to Bankruptcy Rule 2002(l), the Debtors shall publish notice of the General Bar Date in substantially the form attached hereto as Exhibit C (the "Publication Notice") no later than 45 days before the General Bar Date in The Globe and Mail and The Wall Street Journal (national and global editions) and shall also post a copy of the Publication Notice, the Proof of Claim Form, and the Section 503(b)(9) Claim Form on the independent website maintained by the Claims Agent at http://chapter11.epiqsystems.com/nortel, which Publication Notice is hereby approved and shall be deemed good, adequate and sufficient publication notice of the General Bar Date.

8

039

16.     Any Entity that desires to rely on the Schedules will have the responsibility for determining that the claim is accurately listed in the Schedules.

17.     The Debtors and their Claims Agent are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Order.

18.     Notice provided by this Order to foreign creditors is sufficient under Bankruptcy Rule 2002(p).

19.     Entry of this Order is without prejudice to the right of the Debtors to seek a further order of this Court fixing a date by which holders of claims or interests not subject to the General Bar Date established herein must file such proofs of claim or interest or be barred from doing so.

20.     Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

21.     This Order is without prejudice to the Debtors' right to seek further orders of this Court to implement specific procedures for the reconciliation and/or resolution of claims against the Debtors including, without limitation, pursuant to the Cross-Border Claims Protocol.

22.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: August 4, 2009
       Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

9

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE OTHER COMPANIES
LISTED ON SCHEDULE "A" HERETO WITH RESPECT TO CERTAIN PROCEEDINGS
TAKEN IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF
DELAWARE

Court File No:  09-CL-7951

---

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

Proceeding commenced at Toronto

---

### AFFIDAVIT OF JOHN DOOLITTLE
### (sworn August 10, 2009)

---

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

040

**TAB 3**

Court File No: 09-CL-7951

### ONTARIO
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE
OTHER COMPANIES LISTED ON SCHEDULE "A" HERETO WITH
RESPECT TO CERTAIN PROCEEDINGS TAKEN IN THE UNITED
STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

APPLICATION UNDER Section 18.6 of the *Companies' Creditors Arrangement Act,*
R.S.C. 1985, c. C-36, as amended

### AFFIDAVIT OF DOUGLAS PARKER
### (sworn August 10, 2009)

I, Douglas Parker, of the City of Burlington in the Province of Ontario, MAKE OATH
AND SAY:

1.      I am the Associate General Counsel - Corporate and Managing Attorney of Nortel
Networks Limited ("NNL") and have held the position of Associate General Counsel since May
2006. As such, I have personal knowledge of the matters to which I hereinafter depose in this
Affidavit. Where I do not possess personal knowledge, I have stated the source of my
information and, in all such cases, believe it to be true.

2.      I swear this affidavit in support of the motion to recognize:

   a) the order (the "U.S. Sale Order") of the United States Bankruptcy Court for the
   District of Delaware (the "U.S. Court") granted on July 28, 2009 authorizing, *inter
   alia,*

      i.   the sale of certain Applicants' CDMA and LTE assets free and clear of all
           liens and claims, pursuant to an asset sale agreement dated July 24, 2009 (the
           "CDMA and LTE Sale Agreement") to Telefonakteibolaget LM Ericsson
           (publ) ("Ericsson"); and

- 2 -                                                                                                    042

    ii.   the assumption and assignment of certain contracts and the assumption and sublease of certain leases; and

b)  an order (the "U.S. Bidding Procedures Order") of the U.S. Court granted on August 4, 2009 authorizing and approving, *inter alia*:

    i.   the Applicants' entry into an asset and share sale agreement (the "Asset and Share Sale Agreement") with Avaya Inc. ("Avaya") which will serve as the "stalking horse" sale agreement;

    ii.   the Bidding Procedures (as defined in the U.S. Bidding Procedures Order) and deeming Avaya as the Qualified Bidder (as defined in the U.S. Bidding Procedures Order) pursuant to the Bidding Procedures for all purposes;

    iii.   the conduct of a sale of the Assets (as defined in the Bidding Procedures Order) by auction pursuant to the Bidding Procedures and the terms of the U.S. Bidding Procedures Order; and

    iv.   the terms and conditions for payment of the Break-Up Fee and Reimbursement (as both such terms are defined in the Asset Sale Agreement and collectively, the "Bid Protections").

3.     References to "Nortel" herein are references to the global enterprise as a whole.

**BACKGROUND**

4.     On January 14, 2009, Nortel Networks Corporation, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "CCAA Applicants") were granted protection under the *Companies' Creditors Arrangement Act*, (Canada) R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order (the "Initial Order") of this Honourable Court and Ernst & Young Inc. was appointed as monitor (the "Monitor") in the CCAA proceedings.

5.     Also on January 14, 2009, Nortel Networks Inc. ("NNI") and certain of its U.S. affiliates (the "Applicants") made voluntary filings under Chapter 11 of the United States Bankruptcy Code (the "Code"). On the same date, this Honourable Court granted an Order pursuant to

Section 18.6(4) of the CCAA recognizing the Chapter 11 cases as "foreign proceedings" in Canada and giving effect in Canada to the automatic stay under the Code.

6.    Additionally, on January 15, 2009, Nortel Networks UK Limited ("NNUK") and certain subsidiaries (the "EMEA Debtors") of the Nortel group incorporated in Europe, the Middle East or Africa each obtained an administration order for the appointment of administrators (the "Joint Administrators") from the English High Court of Justice under the Insolvency Act 1986.

7.    On February 27, 2009, the U.S. Court entered an order recognizing the CCAA proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Code.

8.    On May 28, 2009, the Commercial Court of Versailles, France (the "French Court") ordered the commencement of secondary insolvency proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months.   In accordance with the European Union's Counsel Regulation, the English law proceedings remain the main proceedings in respect of NNSA.

9.    On June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to NNUK under Chapter 15 of the Code.

10.    Most recently, on July 15, 2009 Nortel Networks (CALA) Inc. ("NNCALA") filed a voluntary petition for relief under Chapter 11 of the Code.

**RECOGNITION OF THE ORDERS IN CANADA**

11.    On July 28, 2009, the U.S. Court and the Canadian Court held a joint hearing for, among other things, to hear motions for the approval of the sale of the CDMA and LTE business to Ericsson pursuant to the CDMA and LTE Sale Agreement.   On the same day the U.S. Court entered the U.S. Sale Order granting such relief.   A copy of the U.S. Sale Order is attached as Exhibit "A" hereto.

12.    On the same day, this Court also granted an order providing similar relief (the "Canadian Sale Order") in the CCAA proceedings.

- 4 -                                                                    -  **044**

13.     On August 4, 2009, the U.S. Court and the Canadian Court held another joint hearing for, among other things to hear motions for the approval of the Asset and Share Sale Agreement as a stalking horse sale agreement with respect to the sale of certain of Nortel assets related to the Enterprise Solution business.   On the same day the U.S. Court entered the U.S. Bidding Procedures Order granting such relief.  A copy of the U.S. Bidding Procedures Order is attached as Exhibit "B" hereto.

14.     One the same day, this Court also entered an order providing similar relief (the "Canadian Bidding Procedures Order") in the CCAA proceedings.

15.     Given the global nature of Nortel's business, the Applicants are seeking recognition of the U.S. Sale Order and the U.S. Bidding Procedures Order in these proceedings. In the case of the U.S. Bidding Procedures Order, such recognition will help facilitate that conduct of the stalking horse bid process and the ultimate completion of the sale.  I believe that such relief is fair and reasonable in the circumstances.

16.     I understand that the Monitor, as foreign representative of the CCAA Applicants, will be seeking relief from the U.S. Court for the recognition of the Canadian Sale Order and the Canadian Bidding Procedures Order in the Chapter 15 Proceedings.


SWORN before me at the City of
Toronto in the Province of Ontario, on
the 10th day of August, 2009.


_____
Commissioner for Taking Affidavits
Samantha Graff

_____
Douglas Parker

- 5 -

**SCHEDULE "A"**

045

(List of Applicants)


**U.S. SUBSIDIARIES FILING A VOLUNTARY PETITION PURSUANT TO**

**CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE, 11 U.S.C. §§ 101-1330**

2001 - Nortel Networks Inc.
2110 - Nortel Networks Capital Corporation
2002 - Nortel Networks (CALA) Inc.
2107 - Nortel Altsystems, Inc.  (previously "Alteon Websystems, Inc.")
2101 - Nortel Altsystems International Inc. (previously "Alteon Websystems International, Inc.")
2102 - XROS, Inc.
2103 - Sonoma Systems
2104 - QTERA Corporation
2105 - CoreTek, Inc.
2106 - Nortel Networks Applications Management Solutions Inc.
2108 - Nortel Networks Optical Components Inc.
2113 - Nortel Networks HPOCS Inc.
2114 - Architel Systems (U.S.) Corporation
2115 - Nortel Networks International Inc.
2117 - Northern Telecom International Inc.
2121 - Nortel Networks Cable Solutions Inc.

# TAB A

This is Exhibit _____ _A_____ referred to in the
affidavit of ___Douglas Parker_____
sworn before me, this _____10th_____
day of __August__ _____ 20_09_

_____
A COMMISSIONER FOR TAKING AFFIDAVITS

Samantha Graff

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
----------------------------------X
                                  :
In re                             :
                                  :
Nortel Networks Inc., et al.,¹    :
                                  :
                  Debtors.        :
                                  :
                                  :
----------------------------------X
```

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

RE: D.I. 931, 1012, 1106, 1129

**ORDER AUTHORIZING AND APPROVING (A) THE SALE OF
CERTAIN ASSETS OF THE DEBTORS' CDMA AND LTE BUSINESS
FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES,
(B) THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS
AND (C) THE ASSUMPTION AND SUBLEASE OF CERTAIN LEASES**

Upon the motion (the "Motion")² of Nortel Networks Inc. ("NNI") and its affiliated

debtors, as debtors and debtors in possession in the above-captioned (collectively, the

"Debtors"), for entry of orders under Bankruptcy Code sections 105, 107(b)(1), 363 and 365,

Bankruptcy Rules 6004, 6006, 9014 and 9018 and Local Rules 6004-1 and 9018-1 Orders (I)(A)

Authorizing Debtors' Entry into the Asset Sale Agreement, (B) Authorizing and Approving the

Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number,
are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769),
Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251),
CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical
Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel
Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions
Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors'
petitions, which are available at http://chapter11.epiqsystems.com/nortel.

² Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or
if not defined in the Motion, shall have the meanings ascribed to such terms in the Sale Agreement (as defined
herein).

Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and

Assignment Procedures, (F) Authorizing the Filing of Certain Documents under Seal, and

(G) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of

Certain of Debtors' CDMA and LTE Assets Free and Clear of All Liens, Claims and

Encumbrances, (B) the Assumption and Assignment of Certain Contracts, and (C) the

Assumption and Sublease of Certain Leases [D.I. 931]; and the Court having entered an order

approving, among other things, the Bidding Procedures (the "Bidding Procedures Order") based

upon the evidence presented at the bidding procedures hearing held on June 29, 2009 (the

"Bidding Procedures Hearing") [D.I. 1012]; and a supplemental order having been entered

joining Nortel Networks (CALA) Inc. ("NN CALA") as a debtor party to the Motion, extending

the relief in the Bidding Procedures Order to NN CALA and establishing further procedures in

furtherance of the proposed sale [D.I. 1129]; and the Auction (as defined below) having been

held in accordance with the Bid Procedures Order; and at the conclusion of said Auction

Telefonaktiebolaget LM Ericsson (publ) (the "Purchaser") was chosen as the Successful Bidder

in accordance with the Bid Procedures; and the Court having conducted a hearing on the Motion

on [July 28], 2009 (the "Sale Hearing"); and all parties in interest having been heard, or having

had the opportunity to be heard, regarding the asset sale agreement attached hereto as Exhibit A

(the "Sale Agreement"), by and among certain of the Debtors, certain foreign debtor affiliates

and certain non-debtor affiliates (collectively, the "Sellers") and the Purchaser and the

transactions contemplated thereby (the "Transactions"); and the Court having reviewed and

considered the Motion, and the arguments of counsel made, and the evidence adduced, at the

Bidding Procedures Hearing and the Sale Hearing; and upon the record of the Bidding

Procedures Hearing and the Sale Hearing and these chapter 11 cases, and after due deliberation

thereon, and good cause appearing therefore it is hereby

FOUND AND DETERMINED THAT:[3]

      A.     The Court has jurisdiction to hear and determine the Motion and to grant

the relief requested in the Motion pursuant to 28 U.S.C. § 157(b)(1) and 1334(b).

      B.     Venue of these cases and the Motion in this district is proper under 28

U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. §

157(b)(2).

      C.     The statutory predicates for the relief requested in the Motion are

Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 6004, 6006, 9014 and

9018, and Local Rules 6004-1 and 9018-1.

      D.     Notice of the Motion and the Sale Hearing has been provided to (A) (i) all

entities reasonably known to have expressed an interest in a transaction with respect to the

Assets (as defined in the NSN Agreements referred to below) during the past nine (9) months,

(ii) all entities reasonably known to have asserted any interest in the Assets, (iii) the attorneys

general for all states in which Purchased Assets (as defined below) are located, all federal and

state taxing authorities, the SEC, the EPA, state environmental protection agencies, the IRS, and

the Department of Labor and similar state labor or employment agencies, (iv) all parties entitled

to notice pursuant to Local Rule 2002-1(b), (v) all counterparties to the Assumed and Assigned

Contracts and the Assumed and Subleased Real Estate Leases (together, the "Assumed

Agreements"), (vi) all known or potential creditors of the Debtors and (viii) the Official

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate. See Fed. R. Bankr. P. 7052.

049

Committee of Unsecured Creditors (the "Committee"); and (B) other parties through publication of the Sale Notice, all in accordance with and as provided by the Bidding Procedures Order.

E.    As evidenced by affidavit of publication filed with the Court, notice of the Sale Hearing was published in The Wall Street Journal and The Globe and Mail on July 6, 2009.

F.    Based upon the affidavits of service and publication filed with the Court: (a) notice of the Motion and the Sale Hearing was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Bidding Procedures Order; and (b) a reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons and entities.

G.    The Assets (as defined in the Sale Agreement) sought to be transferred and/or assigned by the Debtors to the Purchaser pursuant to the Sale Agreement (the "Purchased Assets") are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

H.    The Debtors and their professionals marketed the Purchased Assets and conducted the marketing and sale process as set forth in and in accordance with the Motion. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

I.    On June 19, 2009, the Debtors entered into an Asset Sale Agreement (the "NSN Agreement") with respect to the "Assets" provided for therein by and among the Sellers and Nokia Siemens Networks B.V., as the purchaser, subject to higher and better offers.

050

J.     The Bidding Procedures were substantively and procedurally fair to all parties. The Debtors conducted the sale process (including the Auction) in accordance with the Bidding Procedures.

K.     After the conclusion of the auction held on July 24, 2009 (the "Auction"), the Debtors determined that the highest and best Qualified Bid (as defined in the Bid Procedures Order) was that of the Purchaser and the next highest and best Qualified Bid (the "Alternate Bid") was that of Nokia Siemens Networks B.V. (the "Alternate Bidder").

L.     Subject to the entry of this Order, each Debtor that is a Seller (i) has full power and authority to execute the Sale Agreement, the Ancillary Agreements (as defined in the Sale Agreement) and all other documents contemplated thereby, (ii) has all of the power and authority necessary to consummate the Transactions contemplated by the Sale Agreement and (iii) has taken all company action necessary to authorize and approve the Sale Agreement, the Ancillary Agreements, the sale of the Purchased Assets (the "Sale") and the consummation by the Debtors of the Transactions. No consents or approvals, other than those expressly provided for in the Sale Agreement or this Order, are required for the Debtors to close the Sale and consummate the Transactions.

M.     The Sale Agreement and the Transactions were negotiated and have been and are undertaken by the Debtors and the Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m). As a result of the foregoing, the Debtors and the Purchaser are entitled to the protections of section 363(m) of the Bankruptcy Code.

N.     The total consideration provided by the Purchaser for the Purchased Assets is the highest and best offer received by the Debtors, and the Purchase Price (as defined in

the Sale Agreement) constitutes (a) reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

O.    The Purchaser would not have entered into the Sale Agreement and would not consummate the Transactions if the sale of the Purchased Assets to the Purchaser was not free and clear of all liens, claims and interests pursuant to Bankruptcy Code section 363(f), or if the Purchaser would, or in the future could, be liable for any of such liens, claims and interest. A sale of the Purchased Assets other than one free and clear of all Claims and Interests (each as defined herein) would yield substantially less value for the Debtors' estates, with less certainty, than the Sale. Therefore, the Sale contemplated by the Sale Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

P.    The Debtors may sell the Purchased Assets free and clear of all Interests, because, with respect to each creditor asserting a Claim or Interest, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of Claims and Interests who did not object or who withdrew their objections to the Sale or the Motion are deemed to have consented to the Motion and Sale pursuant to Bankruptcy Code § 363(f)(2). Those holders of Claims or Interests who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f).

Q.    Neither the Debtors nor the Purchaser engaged in any conduct that would cause or permit the Sale Agreement or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

R.      The Purchaser is not holding itself out to the public as a continuation of the Debtors and is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between the Purchaser and any of the Debtors.  Pursuant to the Sale Agreement, the Purchaser is not purchasing all of the Debtors' assets in that Purchaser is not purchasing any of the Excluded Assets (as defined in the Sale Agreement), and Purchaser is not holding itself out to the public as a continuation of the Debtors.  The conveyance of the Assets pursuant to the Transactions does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates.  Upon the Closing (as defined in the Sale Agreement), the Purchaser shall be deemed to have assumed only the Assumed Liabilities (as defined in the Sale Agreement).  Except for the Assumed Liabilities, the Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing.  The Purchaser's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Assets purchased.  The Court finds that the Purchaser would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

S.      The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed and Assigned Contracts to the Purchaser and to assume the Assumed and Subleased Real Estate Leases and Sublease the same to the

053

Purchaser, in each case, in connection with the consummation of the Sale, and (i) the assumption, assignment, and sale of Assumed and Assigned Contracts to the Purchaser and (ii) the assumption of the Assumed and Subleased Real Estate Leases and the Sublease of the same to the Purchaser, in each case, is in the best interests of the Debtors, their estates, their creditors, and all parties in interest. The Assumed and Assigned Contracts being assigned to the Purchaser and the Assumed and Subleased Real Estate Leases being assumed by the Debtors and subleased to the Purchaser are an integral part of the Purchased Assets being purchased by the Purchaser, and accordingly, such assumption, assignment, and sale of the Assumed and Assigned Contracts and such assumption and sublease of the Assumed and Subleased Real Estate Leases are reasonable and enhance the value of the Debtors' estates. The cure amounts required to be paid by the Debtors pursuant to section 365(b) that are mutually agreed to be paid by the Debtors and the counterparty to the applicable Assumed and Assigned Contract or, as applicable, the Assumed and Subleased Real Estate Lease or as ordered to be paid by this Court pursuant to a final order (the "Cure Amounts") are deemed the entire cure obligation due and owing under the Assumed Agreements under Bankruptcy Code section 365.

T.       Each and every provision of the Assumed and Assigned Contracts or, as applicable, the Assumed and Subleased Real Estate Leases or applicable non-bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Assumed and Assigned Contract or, as applicable, the Assumed and Subleased Real Estate Leases have been satisfied or are otherwise unenforceable under Bankruptcy Code section 365.

U.    Upon the payment of the Cure Amount, there are no outstanding defaults of the Debtors and their estates under the Assumed and Assigned Contracts or, as applicable, the Assumed and Subleased Real Estate Leases.

V.    The Purchaser has demonstrated adequate assurance of future performance of all Assumed and Assigned Contracts within the meaning of Bankruptcy Code section 365.

W.    Upon the assignment and sale to the Purchaser, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

X.    Entry into the Sale Agreement and consummation of the Transactions constitute the exercise by the Debtors of sound business judgment, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest. The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale of the Purchased Assets to the Purchaser. Additionally, (i) the Sale Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Sale Agreement and the closing thereon will present the best opportunity to realize the value of the Purchased Assets and avoid further decline and devaluation of the Purchased Assets; (iii) there is risk of deterioration of the value of the Purchased Assets if the Sale is not consummated promptly; and (iv) the Sale Agreement and the closing thereon will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative.

Y.    The transfer of the Purchased Assets to the Purchaser will be a legal, valid and effective transfer of the Purchased Assets, and will vest the Purchaser with all of the Debtors' right, title and interest of, in and to the Purchased Assets, free and clear of (i) all Claims and Interests of any kind or nature whatsoever (other than the Assumed Liabilities and the Permitted

Encumbrances (as defined in the Sale Agreement)), and (ii) all Excluded Liabilities (as defined in the Sale Agreement), claims as defined in 11 U.S.C. § 101(5), rights or causes of action (whether in law or in equity), obligations, demands, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise , including any "Claims" as defined in the Sale Agreement (collectively, the "Claims"), other than Assumed Liabilities and the Permitted Encumbrances.

Z.    The Sale does not constitute a *sub rosa* chapter 11 plan.

AA.    Time is of the essence in consummating the Sale.  In order to maximize the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Sale Agreement.  Accordingly, there is a cause to lift the stay contemplated by the Bankruptcy Rules 6004(h) and 6006(d).

BB.    The Sale contemplated by the Sale Agreement is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest; and it is therefore:

ORDERED, ADJUDGED AND DECREED THAT:

1.    The relief requested in the Motion is GRANTED.

2.    All objections with regard to the relief sought in the Motion that have not been withdrawn, waived, settled or otherwise dealt with as expressly provided herein, are hereby overruled on the merits.

3.    Pursuant to Bankruptcy Code sections 105 and 363, the Sale Agreement, the Ancillary Agreements, the Sale of the Purchased Assets, and consummation of the Transactions are hereby approved and authorized, and the Alternate Bid submitted by the

056

Alternate Bidder is hereby approved and authorized as an Alternate Bid and shall remain binding

as an Alternate Bid pursuant to the terms of the Bidding Procedures Order and the bid terms

submitted at the Auction. In the event that the Transactions contemplated by the Sale Agreement

cannot be consummated, the Alternate Bid shall be and is hereby approved, and the execution of

the asset sale agreement pursuant to the Alternate Bid by the Debtors is approved and the

Debtors are authorized to take such additional steps and execute such additional documents,

including without limitation the ancillary agreements contemplated by the Alternate Bid, as may

be necessary or desirable for the completion of the Transactions and for the conveyance of the

Debtors' right, title and interest in and to the Assets to the Alternative Bidder.

4.    Pursuant to section 365 of the Bankruptcy Code, notwithstanding any

provision of any Assumed Agreement or applicable non-bankruptcy law that prohibits, restricts,

or conditions the assignment of the Assumed and Assigned Contracts, under section 365 of the

Bankruptcy Code, the Debtors are authorized to assume the Assumed Agreements and to assign

the Assumed and Assigned Contracts to the Purchaser, which assignment shall take place on and

be effective as of the Closing.

5.    The Debtors' assumption of the Assumed Agreements is subject to Court

approval and consummation of the sale of the Assets to the Purchaser, and, solely as it relates to

the Assumed and Subleased Real Estate Leases, the Debtors' and Purchaser's entry into

Subleases pursuant to section 5.27 of the Sale Agreement. To the extent that an objection by a

Counterparty to any Assumed Agreement is not resolved prior to the Closing Date (as defined in

the Sale Agreement) or Debtors and Purchasers have failed to enter into a Sublease regarding

any Assumed and Subleased Real Estate Lease pursuant to section 5.27 of the Sale Agreement,

the Debtors, in consultation with the Purchaser, may elect to (i) not assume such Assumed

Agreement, (ii) postpone the assumption of such Assumed Agreement until the resolution of such objection or (iii) if the dispute relates solely to the amount of the Cure Amount, at the time of the assumption, Debtors may pay to the Counterparty any undisputed portion of the proposed Cure Amount and place any disputed portion into a segregated interest-bearing account such that, upon any resolution by the Court of the Cure Amount dispute, or other agreement between the Debtors and the Counterparty, the Counterparty will be entitled to payment from the segregated account of any disputed portion and interest earned thereon to which the Court finds, or the Debtors and Counterparty agree, it is entitled. Any Cure Amounts outstanding on the Closing Date shall be paid to the appropriate Counterparty as a condition subsequent to such assumption and/or assumption and assignment of the relevant Assumed Agreement.

6.      Upon the Closing, (a) the Debtors are hereby authorized and directed to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of the Purchased Assets to the Purchaser free and clear of any and all interests pursuant to section 363 of the Bankruptcy Code, including (without limitation) all liens, including any lien (statutory or otherwise), mortgage, pledge, security interest, charge, right of first refusal, hypothecation, encumbrance on real property, easement, encroachment, right-of-way, restrictive covenant on real property, real property license, lease or conditional sale arrangement (collectively, including "Liens" as defined in the Sale Agreement, the "Liens") and debts, liabilities and obligations, whether accrued or fixed, direct or indirect, liquidated or unliquidated, absolute or contingent, matured or unmatured or determined or undeterminable, known or unknown, including those arising under any Law or Action and those arising under any Contract or otherwise, including any Tax liability (other than Assumed Liabilities and the Permitted Encumbrances) (collectively, the "Liabilities" and together with the Liens, the

"Interests"), with such Interests to attach to the sale proceeds in the same validity, extent and priority as immediately prior to the sale transactions, subject to any rights, claims and defenses of the Debtors and other parties in interest, and (b) except as otherwise expressly provided in the Sale Agreement, all such Interests (other than Assumed Liabilities and the Permitted Encumbrances) shall be and hereby are released, terminated and discharged as to the Purchaser and the Purchased Assets.

   7. The transfer of the Purchased Assets to the Purchaser pursuant to the Agreement shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Purchased Assets, and vests with or will vest in the Purchaser all right, title and interest of the Debtors in the Purchased Assets, free and clear of all Claims and Interests of any kind or nature whatsoever (other than the Permitted Encumbrances and the Assumed Liabilities), with any Interests (including, but not limited to, the Interests, if any, of Fairfax County, Virginia asserted in its objection to the Motion) attaching to the sale proceeds in the same validity, extent and priority as immediately prior to the transaction, subject to any rights, claims and defenses of the Debtors and other parties in interest.

   8. Upon the Closing, and except as otherwise expressly provided in the Sale Agreement, the Purchaser shall not be liable for any claims against, and Liabilities and obligations of, the Debtors or any of the Debtors' predecessors or affiliates. Without limiting the generality of the foregoing, and except as otherwise provided in the Sale Agreement, (a) the Purchaser shall have no liability or obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans) or make any other payment to employees of the Debtors, (b) the Purchaser, shall have no liability or obligation in respect of any employee pension plan,

employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which any Debtors are a party (including, without limitation, liabilities or obligations arising from or related to the rejection or other termination of any such plan, program agreement or benefit), (c) the Purchaser shall in no way be deemed a party to or assignee of any such employee benefit, agreement, plan or program, and (d) all parties to any such employee benefit, agreement, plan or program are enjoined from asserting against the Purchaser any Claims arising from or relating to such employee benefit, agreement, plan or program.

9.      As of the Closing, subject to the provisions of this Order, the Purchaser shall succeed to the entirety of Debtors' rights and obligations in the Assumed and Assigned Contracts first arising and attributable to the time period occurring on or after the Closing and shall have all rights thereunder.

10.     Upon the entry of this Order, (i) all defaults (monetary and non-monetary) under the Assumed Agreements through the Closing shall be deemed cured through the payment of the Cure Amounts; with respect to the Assumed and Assigned Contracts to which Airvana, Inc. is the Counterparty, which Assumed and Assigned Contracts are identified on Schedule 1 attached hereto, the Cure Amounts for each such Assumed and Assigned Contracts shall be as set forth on Schedule 1,  (ii) no other amounts will be owed by the Debtors, their estates or the Purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period before Closing with respect to the Assumed Agreements, (iii) any and all persons or entities shall be forever barred and estopped from asserting a claim against the Debtors, their estates, or the Purchaser that any additional amounts are due or defaults exist under the Assumed Agreements that arose or accrued, or relate to or are attributable to the period before the Closing.

11.     Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision to the contrary in the Assumed and Assigned Contracts, or in applicable non-bankruptcy law, that prohibits, restricts, or conditions the assignment of the Assumed and Assigned Contracts, the Debtors may assign the Assumed and Assigned Contracts to the Purchaser.

12.     Upon assumption of the Assumed and Assigned Contracts by the Debtors and assignment to the Purchaser, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

13.     Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision to the contrary in the Subleased Real Estate Leases, or in applicable non-bankruptcy law, that prohibits, restricts, or conditions the assumption and Sublease of the Assumed and Subleased Real Estate Leases, the Debtors may assume the Assumed and Subleased Real Estate Leases and Sublease the Assumed and Subleased Real Estate Leases to the Purchaser.

14.     Upon the assumption of the Assumed and Subleased Real Estate Leases by the Debtors and the sublease of same to the Purchaser, the Assumed and Subleased Real Estate Leases shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

15.     The Transactions have been undertaken by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Purchased Assets as that term is used in Bankruptcy Code section 363(m). The Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

16.     Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors and

the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to: (i) consummate the Sale of the Purchased Assets to the Purchaser and the Closing of the Sale in accordance with the Motion, the Agreement and this Order; (ii) assume and assign the Assumed and Assigned Contracts; (iii) assume and sublease the Assumed and Subleased Real Estate Leases; and (iv) perform, consummate, implement and close fully the Sale Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale Agreement.

17.    The Purchaser is hereby authorized in connection with the consummation of the Sale to allocate the Purchased Assets, including the Assumed Agreements, among its affiliates, designees, assignees, and/or successors, including any Designated Purchaser (as defined in the Sale Agreement), in a manner as it in its sole discretion deems appropriate and to assign, lease, sublease, license, sublicense, transfer or otherwise dispose of any of the Purchased Assets, including the Assumed Agreements, to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded to the Purchaser under this Order and the Sale Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing; provided, however the Debtors shall be reimbursed by the Purchaser for any reasonable expenses in connection therewith.

18.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Transactions. Except as provided in the Sale Agreement, no brokers were involved in consummation of the Sale or the Transactions, and no brokers' commissions are due to any Person in connection with the Sale or the Transactions.

19.    The consideration provided by the Purchaser for the Purchased Assets under the Agreement shall be deemed for all purposes to constitute value and fair consideration

962

under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision, of the Bankruptcy Code.

20.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Purchaser on the Closing Date pursuant to the terms of the Agreement, free and clear of all Liens, Claims and Interests (other than Assumed Liabilities).

21.     Except as otherwise provided in the Sale Agreement, any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any vendor, supplier or employee of the Debtors shall be transferred to the Purchaser free and clear of all Liens, Claims and Interests (other than Assumed Liabilities) and shall be delivered at the time of Closing to the Purchaser.

22.     Upon the Closing, all creditors, employees and equity holders of the Debtors are permanently and forever barred, restrained and enjoined from asserting any Liens, Claims or Interests or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against the Purchaser or the Purchased Assets on account of any of the Liens, Claims, Interests, Excluded Liabilities or Excluded Assets (other than Assumed Liabilities and Permitted Encumbrances).

23.     The Transactions do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the

Debtors' estates, and the Purchaser does not constitute a successor to the Debtor or the Debtors' estates. Upon the Closing, the Purchaser shall be deemed to have assumed only the Assumed Liabilities. Except for the Assumed Liabilities and Permitted Encumbrances, the Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the time of Closing. The Purchaser's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Assets purchased.

24.    This Order (a) is and shall be effective as a determination that other than Permitted Encumbrances and Assumed Liabilities, all Liens, Claims and Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) is and shall be binding upon and shall authorize all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to the Purchaser. All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Interests against the Purchased Assets from their records, official and otherwise.

25.    If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or Interests in, the Purchased Assets shall not have delivered to

064

the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to the Purchased Assets, the Debtors and the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

26.    All counterparties to the Assumed and Assigned Contracts and, as applicable, the Assumed and Subleased Real Estate Leases shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transactions.

27.    Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Transactions contemplated by the Agreement.

28.    No governmental unit may revoke or suspend any right, license, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

29.    To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern. To the extent there is any inconsistency between the terms of this Order and the terms of the Sale

Agreement (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

30.    This Order applies only to assets owned by the Debtors. Consequently, notwithstanding any other provision of this Order or the Sale Agreement to the contrary, the portions of this Order that approve the transfer of assets to the Purchaser free and clear of all liens and other encumbrances, or that modify, enjoin, release or otherwise limit the rights of creditors of entities transferring assets, apply only to assets owned by the Debtors and do not apply to any assets owned by non-debtor entities.

31.    In full and final resolution and settlement of the informal comments received from the Pension Benefit Guaranty Corporation (the "PBGC"), the Debtors are authorized to enter into the Stipulation attached as Exhibit B hereto with the PBGC and perform all obligations thereunder.

32.    Nothing in this Order shall be deemed to waive, release or extinguish any valid claim with respect to setoff that Verizon (as defined in the Sale Agreement) or the wholly owned subsidiaries of Verizon Communications Inc. may have against the Debtors.

33.    Conditioned upon and subject to the consent by iStar CTL North Glenville – Richardson LLC ("iStar") to the sublease of the Assumed and Subleased Real Estate Lease under which iStar is the landlord, Purchaser shall pay iStar $5000 in full satisfaction of iStar's claim (pursuant to section 365 of the Bankruptcy Code or otherwise) for payment of attorneys' fees and expenses.

34.    Nothing in this Order provides for the assumption and assignment of any contract or license with OSS Noklava, Inc., successor to Open Systems Solutions, Inc. ("OSS") pursuant to section 365 of the Bankruptcy Code. To the extent that the Purchaser elects to have

the Debtors assign to the Purchaser any contract with OSS relating to the Assets, in whole or in part, the Debtors and Purchaser will do so in accordance with the terms of such contract or license, which terms include, *inter alia*, the written consent of OSS.

35.     Nothing in this Order authorizes or provides for the assumption and assignment of any contract or license to which Motorola, Inc. ("Motorola") is a party, whether pursuant to section 365 of the Bankruptcy Code or otherwise. Motorola shall provide a list of its affiliates (the "Motorola Affiliates") that it believes have contracts with the Debtors on or before August 3, 2009. Within three business days of receiving such list, the Debtors shall notify Motorola, with a copy to Motorola's counsel of record in this proceeding, whether there are any contracts with any of the Motorola Affiliates that are proposed to be Assumed and Assigned Contracts. Motorola and/or the Motorola Affiliates shall have five business days after Motorola and its counsel have received such notification to file and serve a supplemental objection to the assumption and assignment of any such proposed Assumed and Assigned Contracts, which supplemental objection shall be heard at the next scheduled omnibus hearing. Notwithstanding the entry of this Order, any and all objections of Motorola and the Motorola Affiliates to the proposed assignment of the Motorola Affiliates' agreements are expressly preserved. If no such supplemental objection is filed and served in a timely manner, all Assumed and Assigned Contracts to which any Motorola Affiliate is a counterparty shall be deemed to be assumed and assigned pursuant to the terms of this Order (the "Deemed Assigned Affiliate Contracts"). To the extent that the Purchaser elects, subsequent to the date of this Order, to have the Sellers assign to the Purchaser any agreement or license with Motorola, Inc. or any of the Motorola Affiliates relating to the Assets, in whole or in part, other than the Deemed Assigned Affiliate Contracts, such assignment will be subject to Motorola's consent, to the extent required by the

terms of such contract and applicable law.

36.    To the extent that Sprint Nextel Corporation ("Sprint") and its affiliates, respective partners, directors, officers, agents and employees (the "Sprint Indemnitees") have a valid indemnification claim against the Sellers under the Fourth Amended and Restated PCS CDMA Product Supply Contract (the "Fourth Amended Supply Contract") between Sprint and NNI, Purchaser shall be responsible for indemnifying and holding harmless the Sprint Indemnitees from and against all Liabilities due after the Closing Date and Sellers shall be responsible for (a) attorneys fees and expenses arising before the Closing Date; and (b) those finally determined Liabilities (settlements and final judgments) due between the date of entry of this Order and the Closing Date, in each case pursuant to the terms of and solely to the extent such Liabilities are entitled to indemnification under the Fourth Amended Supply Contract. Any such claim by Sprint against NNI arising under this section shall be allowed and paid as an administrative claim pursuant to section 503(b) of the Bankruptcy Code.

37.    Nothing in this Order or in the Sale Agreement or Ancillary Agreements provides for the assumption and/or assignment, whether under section 365 of the Bankruptcy Code or otherwise, by the Debtors, of any contract with SNMP Research International, Inc. ("SNMP"), and no intellectual property rights or intellectual property licensed via contracts with SNMP and Nortel are being conveyed or otherwise transferred by the Debtors pursuant to the Order, Sale Agreement or Ancillary Agreements. To the extent that the Purchaser elects to have the Debtors assign to the Purchaser any contract with or intellectual property right of SNMP relating to the Assets, the Debtors and Purchaser will do so in accordance with the terms of such contract or applicable license, which terms, may include, inter alia, the written consent of SNMP.

38.    The Main Sellers have agreed that (i) NNI, on the one hand, and NNL, on

the other hand, each shall pay 50% of the Bid Protections, if, as and when such Bid Protections

become due and payable to Nokia Siemens Networks B.V. pursuant to and in accordance with

the terms of the NSN Agreement and the Bidding Procedures Order; (ii) in the event the Closing

occurs, amounts paid to the Sellers in accordance with Section 2.3.2(b)(i) of the Sale Agreement

shall be applied first to reimburse NNI and NNL for any amounts paid to NSN pursuant to (i)

above and the remainder of such Sales Proceeds (as defined in the Interim Funding and

Settlement Agreement, dated as of June 9, 2009 (the "IFSA"), entry into and performance under

which was approved by this Court's Order dated June 29, 2009 [D.I. 874]) arising out of the Sale

shall be, in accordance with Section 12.g. of the IFSA, (a) deposited into an Escrow Account (as

defined in the IFSA); (b) not be distributed in advance of either (1) agreement of all of the Main

Sellers as to the distribution of such Sale Proceeds (subject to the prior consent of the Committee

and the Bondholder Group acting in good faith), or (2) in the case where the Main Sellers fail to

reach agreement, determination by the relevant dispute resolver(s) in accordance with the terms

of the Interim Sales Protocol (as defined in the IFSA and in such form as approved by this

Court); and (iii) in the event the Closing does not occur and the Sale Agreement is terminated as

a result of the breach thereof by one or more of the Sellers, the Main Sellers reserve their rights

with respect to the allocation of the liability for payment of the Bid Protections.  The Main

Sellers have agreed that this agreement in respect of the Bid Protections is being made only with

respect to the initial allocation of the Bid Protections among the Main Sellers, and that nothing

herein (a) shall, or be deemed to, determine, ratify, or adopt, or have any impact whatsoever on,

the allocation or distribution of Sale Proceeds (other than reimbursement of the Bid Protections

contemplated in (ii) above), or (b) shall be precedental for any other sale transaction that has

occurred or may occur in the future.  Other than with respect to the payment and reimbursement

Case 09-10138-MFW    Doc 15231-18    Filed 02/25/15    Page 78 of 167

069

of amounts in respect of the Bid Protections, nothing this Order is meant to modify or vary any of the Selling Debtors' (as such term is defined in the IFSA) rights and obligations under the IFSA.

39.    In connection with the Sale Agreement, the Debtors are authorized to enter into and execute the nondisturbance agreement attached hereto as Exhibit C.

40.    Except as expressly provided in the Sale Agreement or the Ancillary Agreements, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

41.    Any amounts that become payable by the Debtors to the Purchaser pursuant to the Sale Agreement or any of the documents delivered by the Debtors pursuant to or in connection with the Sale Agreement shall (a) constitute administrative expenses of the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, and (b) be paid by the Debtors in the time and manner as provided in the Sale Agreement without further order of this Court.

42.    This Order shall not be modified by any chapter 11 plan confirmed in these chapter 11 cases or subsequent order of this Court unless expressly consented to in writing by the Purchaser.

43.    This Order and the Sale Agreement shall be binding in all respects upon all creditors and interest holders of any of the Debtors, all non-debtor parties to the Assumed Agreements, the Committee, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in

the Debtors' bankruptcy chapter 11 cases or upon a conversion to chapter 7 under the

Bankruptcy Code, and the Sale Agreement shall not be subject to rejection or avoidance under

any circumstances.

44.     The failure specifically to include or make reference to any particular

provisions of the Sale Agreement or any Ancillary Agreement in this Order shall not diminish or

impair the effectiveness of such provision, it being the intent of the Court that the Sale

Agreement and the Ancillary Agreements are authorized and approved in their entirety.

45.     The Court retains jurisdiction with respect to all matters arising from or

related to the implementation of this Order, including, without limitation, the authority to:  (1)

interpret, implement and enforce the terms and provisions of this Order (including the injunctive

relief provided in this Order) and the terms of the Sale Agreement, the Ancillary Agreements, all

amendments thereto and any waivers and consents thereunder; (2) protect the Purchaser, or the

Purchased Assets, from and against any of the Claims or Interests; (3) compel delivery of all

Purchased Assets to the Purchaser; and (4) resolve any disputes arising under or related to the

Sale Agreement, the Ancillary Agreements, the Sale or the Transactions.

46.     The Sale Agreement, the Ancillary Agreements and any related

agreements, documents or other instruments may be modified, amended, or supplemented

through a written document signed by the parties in accordance with the terms thereof without

further order of the Court; provided, however, that any such modification, amendment or

supplement is neither material nor materially changes the economic substance of the transactions

contemplated hereby (it being understood, for the sake of clarity, that no such modification,

amendment or supplement shall be deemed to be material or shall be deemed to materially

change the economic substance of the transactions to the extent that the impact does not exceed

two percent of the Purchase Price (as defined in the Sale Agreement); and provided further that no such modifications, amendments, or supplements may be made except following two (2) days written notice to, or with the prior consent of, the Committee, c/o Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Fred S. Hodara, Stephen Kuhn, and Kenneth Davis).

47.    The Debtors are hereby authorized to perform each of their covenants and undertakings as provided in the Sale Agreement, the Assumed and Subleased Real Estate Leases and the Ancillary Agreements prior to or after closing without further order of the Court.

48.    This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

49.    Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

50.    The provisions of this order are nonseverable and mutually dependent.

Dated: _____, 2009
         Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

**TAB B**

This is Exhibit ........*B*........ referred to in the
affidavit of ...*Douglas Parker*.............
sworn before me, this ............*10th*.......
day of ....*August*............... 20*09*

............*A. Lott*............
A COMMISSIONER FOR TAKING AFFIDAVITS
*Samantha Graff*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

—————————————————————X
:
*In re*                                            :     Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                 :     Case No. 09-10138 (KG)
:
           Debtors.            :     Jointly Administered
:
:     RE: D.I. 1131
:
—————————————————————X

### ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363 AND 365 (A) AUTHORIZING DEBTORS' ENTRY INTO THE ASSET AND SHARE SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES, (C) AUTHORIZING AND APPROVING A BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (D) APPROVING THE NOTICE PROCEDURES, (E) APPROVING THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (F) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL, AND (G) SETTING A DATE FOR THE SALE HEARING

Upon the motion, dated July 20, 2009, of Nortel Networks Inc. ("NNI") and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for orders pursuant to

sections 105, 107(b)(1), 363 and 365 of chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002, 6004, 6006, 9014 and 9018 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 9018-1 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"), as more fully described in the Motion, (I)(A)

Authorizing Debtors' Entry into the Asset and Share Sale Agreement, (B) Authorizing and

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Approving the Bidding Procedures,[2] (C) Authorizing and Approving a Break-Up Fee and

Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption

and Assignment Procedures, (F) Authorizing the Filing of Certain Documents Under Seal, and

(G) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of

Certain Assets of, and Equity Interests in, Debtors' Enterprise Solutions Business, (B) the

Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and

Sublease of Certain Leases [D.I. 1131] (the "Motion"); and the Court having reviewed the

Motion; and the Court having determined that the relief requested in the Motion is in the best

interests of the Debtors, their estates, their creditors and other parties in interest; and it appearing

that proper and adequate notice of the Motion has been given and that no other or further notice

is necessary; and a hearing having been held on August 4, 2009 (the "Hearing"); and upon the

evidence adduced at, the arguments of counsel at, and the entire record of the Hearing; and after

due deliberation thereon; and the objections filed having been considered; and good and

sufficient cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**

A.    The court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334, and this

matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue of these cases

and the Motion in this district is proper under 28 U.S.C. § 1408 and 1409.

B.    The statutory and legal predicates for the relief requested in the Motion are Bankruptcy

Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 6004, 6006, 9014 and

9018, and Local Rules 6004-1 and 9018-1.  Pursuant to Bankruptcy Rule 7052, findings

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

of fact shall be construed as conclusions of law and conclusions of law shall be construed

as findings of fact to the fullest extent of the law.

C.    Good and sufficient notice of the relief granted by this Order has been given and no

further notice is required.  A reasonable opportunity to object or be heard regarding the

relief granted by this Order (including, without limitation, with respect to the proposed

Bidding Procedures and Bid Protections, as defined below) has been afforded to those

parties entitled to notice pursuant to Local Rule 2002-1(b).

D.    The Debtors' proposed sale notice, substantially in the form attached to the Motion as

Exhibit E (the "Sale Notice"), and the Debtors' proposed publication notice, substantially

in the form attached to the Motion as Exhibit F (the "Publication Notice"), are

appropriate and reasonably calculated to provide all interested parties with timely and

proper notice of the Bidding Procedures, the Auction and the Sale Hearing, and no other

or further notice is required.

E.    The Bidding Procedures, substantially in the form attached hereto as Exhibit 1, are fair,

reasonable and appropriate, and are designed to maximize recovery with respect to the

sale of the Assets.

F.    The Debtors have demonstrated compelling and sound business justifications for

authorizing the sale of the Debtors' Assets, entry into the Asset and Share Sale

Agreement (the "Agreement") as a "stalking horse" sale agreement and the payment of

the Bid Protections (as defined below) under the circumstances, timing, and procedures

set forth herein, in the Motion and in the Agreement.

G.    Entry into the Agreement with Avaya Inc. (the "Purchaser"), a copy of which is attached

to the Motion as Exhibit A, as a "stalking-horse" sale agreement is in the best interest of

the Debtors and the Debtors' estates and creditors. The Agreement, along with the EMEA Agreement, will enable the Debtors to secure an adequate floor for the Auction and will provide a clear benefit to the Debtors' estates.

H.      The Break-up Fee and Expense Reimbursement (each as defined below) are fair and reasonable, and provide a benefit to the Debtors' estates and creditors.

I.      The Debtors' payment of the Bid Protections is, to the extent due and owed by the Debtors under Section 9.2 of the Agreement, under the conditions set forth in, and in accordance with the terms of, the Agreement, the Motion and this Order, (a) an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (c) reasonable and appropriate, and (d) necessary to ensure that the Purchaser will continue to pursue the proposed Agreement to undertake the sale of the Debtors' Assets.

J.      The entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and it is therefore

ORDERED, ADJUDGED AND DECREED THAT:

1.      Those portions of the Motion seeking approval of the Debtors' entry into the Agreement, the Bidding Procedures, the Bid Protections, the Notice Procedures, the Assignment Procedures, authorizing the Debtors to file certain documents under seal, and setting the time, date and place of the Sale Hearing are GRANTED.

2.      Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these chapter 11 cases.

### The Bidding Procedures

3.      The Bidding Procedures attached hereto as Exhibit 1 are hereby APPROVED. Subject to the approval of the Bidding Procedures by the Ontario Superior Court of Justice in the Canadian Proceedings regarding the Canadian Debtors, the Debtors are hereby authorized to conduct a sale by auction of the Assets pursuant to the Bidding Procedures and the terms of this Order.

4.      The Purchaser shall be deemed a Qualified Bidder pursuant to the Bidding Procedures for all purposes.

5.      The Bidding Procedures shall apply to Qualified Bidders, the conduct of the sale of the Assets and the Auction.

### The Assignment Procedures

6.      The Assignment Procedures attached hereto as Exhibit 2 are hereby authorized, approved and made part of this Order as if fully set forth herein.

7.      The Court recognizes that the identities of the Customer Contract Counterparties (as defined in the Motion) and any affidavits of service that identify such parties constitute confidential commercial information, and therefore authorizes that any lists disclosing the identities of the Customer Contract Counterparties and affidavits to be filed in connection with the Motion and the procedures approved herein may be filed under seal.

8.      The Debtors shall provide unredacted lists of Designated Customer Contracts and affidavits of service that identify the Debtors' customers to the Clerk's Office of the United States Bankruptcy Court for the District of Delaware in a prominently marked envelope with a cover sheet attached containing (i) the caption, (ii) the docket number of the Motion, (iii) the docket number of this Order, (iv) the title of the list of Designated Customer Contracts and

affidavits of service that identify the Debtors' customers and (v) the legend "DOCUMENTS TO BE KEPT UNDER SEAL" in bold print.

9.   Recognizing that providing individual notice to each Customer Contract Counterparty and each Lease Counterparty will ensure that such parties will receive adequate notice, the Court hereby waives the requirements of Bankruptcy Rule 6006(f)(6).

10.   To facilitate the assumption and assignment of the Designated Agreements, the anti-assignment provisions of the Designated Agreements, if any, are hereby deemed unenforceable pursuant to section 365(f) of the Bankruptcy Code.

11.   Pursuant to Bankruptcy Rule 6006(f)(6), the Court hereby authorizes the Debtors to file one or more omnibus notices, pursuant to the Assignment Procedures, incorporating all the Executory Contracts and unexpired leases to be either assumed and assigned or assumed and subleased.

12.   The Debtors recognize that the United States, and certain of its departments, agencies and instrumentalities, other than the Pension Benefit Guaranty Corporation (collectively, the "United States Government"), may be a counterparty to certain Enterprise Agreements.  To the extent that any Enterprise Agreement with the United States Government is designated for assumption and assignment pursuant to the Assignment Procedures, the Debtors will seek the consent of the applicable governmental counterparty in compliance with 41 U.S.C. § 15 and 31 U.S.C. § 3727 and comply with the applicable laws, regulations and novation procedures.

13.   The Debtors shall use commercially reasonable efforts to provide Flextronics Corporation and Flextronics Telecom Systems Ltd (together, "Flextronics") with notice prior to the Sale Hearing of the proposed treatment by the Purchaser under the Agreement (as defined in

the Motion) of executory contracts between one or more of the Debtors and Flextronics, provided, however, that the disclosure of the treatment of such executory contracts by the Purchaser or any other Qualified Bidder is not a prerequisite to a determination of Qualified Bidder status, participation in the Auction, the selection of a Successful Bidder or the collaboration of the Debtors with the Successful Bidder to close the Transaction.

### Break-Up Fee and Expense Reimbursement

14.     To the extent due and owed by the Debtors under Section 9.2 of the Agreement, the Debtors are authorized to pay to the Purchaser:  (i) two-thirds (2/3) of an amount in cash equaling $14.25 million minus one-half of any Expense Reimbursement (as defined below) paid by the Sellers (the "Break-Up Fee") and (ii) two-thirds (2/3) of an amount in cash equal to the total amount of all reasonable and documented fees, costs and expenses incurred by the Purchaser in connection with the preparation, execution and performance of the Agreement and the transactions contemplated thereby, including all filing and notification fees, and all fees and expenses of the Purchaser's representatives (the "Expense Reimbursement, and together with the Break-Up Fee, the "Bid Protections"), provided that the Expense Reimbursement will be capped at $9.5 million.

15.     The Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement, under the conditions set forth in, and in accordance with the terms of, Section 9.2 of the Agreement, shall survive termination of the Agreement and shall constitute an administrative expense of the Debtors under section 503(b) of the Bankruptcy Code.

16.     Except as provided in Section 5.36 of the Agreement, the Break-Up Fee and/or the Expense Reimbursement, if payable, will be the sole and exclusive remedy of the Purchaser as a result of the failure of the transactions contemplated by the Purchase Agreements to be

consummated, or in respect of any Liabilities arising under, or relating to, the Purchase

Agreements or the transactions contemplated thereby prior to the Closing, including as a result of

an intentional breach of the Purchase Agreements prior to the Closing.

17.     Under no circumstances shall any party to the Agreement be liable for punitive

damages (including multiple damages assessed as a punitive measure) or special damages arising

out of, or in connection with, the Agreement or the transactions contemplated thereby or any

breach or alleged breach of any of the terms thereof or of the EMEA Agreement or any other

Transaction Document (as defined in the Agreement), including damages alleged as a result of

tortious conduct, or for specific performance of the obligations it is to perform thereunder at or

prior to the Closing nor shall any Nortel Party (as defined in the Agreement) be liable for tortious

interference with the Purchaser's rights under the Agreement nor shall any Avaya Party (as

defined in the Agreement) be liable for tortious interference with the Sellers' rights under the

Agreement.

### The Notice Procedures

18.     The notices, in substantially the same forms as annexed to the Motion as Exhibits

E (Form of Sale Notice), F (Form of Publication Notice), G (Form of Initial Customer Notice), H

(Form of Final Customer Notice), I (Form of Lease Notice), J (Form of Initial Omnibus Notice)

and K (Form of Final Omnibus Notice) are sufficient to provide effective notice to all interested

parties of the Bidding Procedures, the Auction, the Sale Hearing and the Assignment Procedures,

pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and are hereby approved.

19.     Immediately after entry of this Order (or as soon thereafter as reasonably

practicable) the Debtors (or their agent) shall serve the Sale Notice, in substantially the form

attached as Exhibit E to the Motion, by first-class mail upon (i) the U.S. Trustee, (ii) counsel to

the Purchaser, (iii) counsel to the Committee, (iv) counsel to the Bondholder Group, (v) all

entities known to have a claim, lien, interest or encumbrance against the Debtors' interest in the
Assets, the Shares, the Assumed and Assigned Contracts and the Assumed and Subleased Real
Estate Leases, (vi) all counterparties to the Assumed and Assigned Contracts and Assumed and
Subleased Real Estate Leases, (vii) the Monitor, (viii) the Administrators, (ix) the Internal
Revenue Service and applicable federal and state taxing authorities, (x) the Securities and
Exchange Commission, (xi) the Pension Benefit Guaranty Corporation and all regulatory
authorities of the Sellers' pension plans in Canada and the United Kingdom, (xii) the attorneys
general for all states in which the Assets are located, (xiii) the EPA and relevant state
environmental protection agencies, (xiv) the Department of Labor and similar state labor or
employment agencies, (xv) the United States Department of Justice, (xvi) each of the entities that
had received an invitation from the Sellers to acquire or had expressed an interest in acquiring
the Assets (which shall be filed under seal), and (xvii) the general service list established in these
chapter 11 cases pursuant to Bankruptcy Rule 2002.

20.    The Court recognizes that the identities of the entities that received an invitation
from the Sellers to acquire, or that previously expressed an interest in acquiring, the Assets and
affidavits of service that identify such parties, constitute confidential commercial information,
and therefore authorizes that any such affidavits to be filed in connection with the Motion may
be filed under seal in accordance with the procedures set forth above for lists and affidavits of
service that identify the Debtors' customers.

21.    As soon as reasonably practicable after entry of this Order and the Canadian Sales
Process Order, but in any event no more than three (3) Business Days after the entry of such
orders, the Sellers (including the Debtors) shall publish notice of the Bidding Procedures, the
time and place of the Auction, the time and place of the Sale Hearing, and the objection deadline

for the Sale Hearing, substantially in the form attached to the Motion as Exhibit F, in The Wall Street Journal (National Edition), The Globe & Mail (National Edition) and The Financial Times (International Edition).

      22.    As the Purchaser designates the Designated Customer Contracts to be assumed by the relevant Debtor and assigned to the Purchaser as of the Closing Date, the Debtors will, from time to time, serve an Initial Customer Notice on each Customer Contract Counterparty by first class mail.  The Debtors will also send a Final Customer Notice to each Customer Contract Counterparty by first class mail.  The Debtors will file under seal with the Court and deliver a full, alphabetized list of Customer Contract Counterparties, along with an affidavit or declaration confirming that each of the Initial Customer Notice and the Final Customer Notice have been sent to each Customer Contract Counterparty, to (i) counsel to the Purchaser, (ii) the U.S. Trustee, (iii) the Monitor, (iv) counsel to the Committee and (v) counsel to the Bondholder Group.

      23.    As the Purchaser designates Other Designated Contracts, the Debtors will, from time to time file with the Court one or more Initial Omnibus Notices, and serve each omnibus notice on each Other Contract Counterparty whose Other Designated Contract appears on such omnibus notice.  The Debtors will also send one or more Final Omnibus Notices to each Other Contract Counterparty by first class mail.

      24.    As the Purchaser designates the Designated Leases, the Debtors will, from time to time but no later than fifty (50) days following the Signing Date, serve a Lease Notice on each Lease Counterparty by first class mail.

      25.    The Initial Notices, the Final Notices and the Lease Notice, in substantially the same forms as annexed to the Motion as Exhibits G, H, I, J and K, are sufficient to provide

effective notice pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6006(c) to all

Counterparties of the Debtors' intent to assume and assign the Designated Agreements, and are

hereby approved.

<u>**Objection Procedures**</u>

**A.    Objections to Sale**

26.    All objections to the relief requested in the Motion pertaining to approval of the

sale of the Assets, shall file a formal objection that complies with the objection procedures as set

forth in the Motion.  Each objection shall state the legal and factual basis of such objection and

may be orally supplemented at the Sale Hearing.  All objections must also be:  (i) in writing; (ii)

signed by counsel or attested to by the objecting party; (iii) in conformity with the Bankruptcy

Rules and the Local Rules, (iv) filed with the Clerk of the Bankruptcy Court, 824 Market Street,

Wilmington, Delaware 19801 by <u>4:00 p.m. (ET) on September 4, 2009</u> (the "<u>General Objection

Deadline</u>"); and (v) served in accordance with the Local Rules so as to be received on or before

the General Objection Deadline by the following:  (a) counsel to the Debtors:  Cleary Gottlieb

Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Fax:  (212) 225-3999

(Attention:  James L. Bromley and Lisa M. Schweitzer) and Morris, Nichols, Arsht & Tunnell

LLP, 1201 North Market Street, Wilmington, Delaware 19801, Fax:  (302) 658-3989 (Attention:

Derek C. Abbott); (b) counsel to the Purchaser:  Ropes & Gray LLP, 1211 Avenue of the

Americas, New York, New York 10036, Fax:  (646) 728-1662 (Attention:  Mark I. Bane, and

Anne H. Pak); (c) counsel to the Committee:  Akin Gump Strauss Hauer & Feld LLP, One

Bryant Park, New York, New York 10036, Fax:  (212) 872-1002 (Attention:  Fred S. Hodara,

Stephen Kuhn, and Kenneth Davis) and Richards, Layton & Finger, P.A., One Rodney Square,

920 North King Street, Wilmington, Delaware 19801 (Attention:  Christopher M. Samis); (d)

counsel to the Bondholder Group:  Milbank, Tweed, Hadley & McCloy LLP, One Chase

Manhattan Plaza, New York, New York 10005, Fax: (212) 822-5735 (Attention: Roland Hlawaty); and (e) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801.

27.     Failure to object to the relief requested in the Motion shall be deemed to be "consent" for purposes of Bankruptcy Code section 363(f).

28.     Supplemental objections to issues arising from and in connection with the Auction and/or the Debtors' selection of a Successful Bidder other than the Purchaser must be filed by 12:00 p.m. (ET) on September 14, 2009.

29.     The foregoing requirements are collectively referred to herein as the "General Objection Procedures." Only those objections made in compliance with the General Objection Procedures will be considered by the Court at the Sale Hearing. The failure of any objecting person or entity to file its objections by the General Objection Deadline and in accordance with the General Objection Procedures will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection pertaining to the Auction or the Sale Transaction (excluding, however, objections relating to the assumption and assignment of any Designated Agreement, which must be filed in accordance with the Assignment Procedures).

**B.      Objections to Assumption and Assignment or Assumption and Sublease**

*Initial Objections*

30.     Any Customer Contract Counterparty or Other Contract Counterparty that wishes to object to any matter set forth in the Initial Notices with regards to the proposed assumption and assignment of a Designated Agreement, including without limitation the adequate assurance of future performance by the Purchaser under the applicable Designated Agreement or the Interim Cure Amount, if any, must file a written objection with the Court no later than ten (10) days following service of the Initial Notice, and serve notice of such objection on (a) counsel to

the Debtors, (b) counsel to the Purchaser, (c) counsel to the Committee and (d) counsel to the Bondholder Group, each at the addresses set forth in the Assignment Procedures.

31.    To the extent that any Customer Contract Counterparty or Other Contract Counterparty does not timely serve an objection as set forth above, such Counterparty will be deemed to have (i) consented to the assumption and assignment of the applicable Designated Agreement; (ii) agreed that the Purchaser has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iii) consented to the Interim Cure Amount, if any; and (iv) agreed that the terms of this Order and the Sale Order shall apply to the assignment, subject only to the resolution of the Tail Cure Amount, if any.

**Final Objections**

32.    Any Customer Contract Counterparty or Other Contract Counterparty that wishes to object to the Tail Cure Amount in the Final Notice must file a Final Cure Objection with the Court no later than ten (10) days following service of the Final Notice, and serve notice of such objection on (a) counsel to the Debtors, (b) counsel to the Purchaser, (c) counsel to the Committee and (d) counsel to the Bondholder Group, each at the addresses set forth in the Assignment Procedures.

33.    To the extent that any Customer Contract Counterparty or Other Contract Counterparty does not timely serve an objection as set forth directly above, such Counterparty will be deemed to have (i) consented to such Tail Cure Amount, if any, and to the assumption and assignment of the Designated Agreement; (ii) agreed that all defaults under the Designated Agreement arising or continuing prior to the effective date of the assignment have been cured such that the Purchaser or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the effective date of the assignment, and from and after the effective date of the assignment, the Designated Agreement shall remain in full force and

effect for the benefit of the Purchaser and the Counterparty in accordance with its terms; and (iii) waived any right to terminate the Designated Agreement or designate an early termination date under the applicable Designated Agreement as a result of any default that occurred or was continuing prior to the effective date of the assignment.

***Lease Objections***

34.    Any Lease Counterparty that wishes to object to any matter pertaining to the proposed assumption and assignment or assumption and sublease of a Designated Lease, including without limitation the adequate assurance of future performance by the Purchaser under the applicable Designated Lease or the Cure Amount, if any, then such Lease Counterparty must file a written objection with the Court no later than ten (10) days following service of the Lease Notice, and serve notice of such objection on (a) counsel to the Debtors, (b) counsel to the Purchaser, (c) counsel to the Committee and (d) counsel to the Bondholder Group, each at the addresses set forth in the Assignment Procedures.

35.    To the extent that any Lease Counterparty does not timely serve an objection as set forth directly above, such Counterparty will be deemed to have (i) consented to the assumption and assignment or assumption and sublease of the applicable Designated Lease; (ii) agreed that the Purchaser has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iii) consented to the Cure Amount, if any; and (iv) agreed that the terms of this Order and the Sale Order shall apply to the assignment or sublease.

*Certain Exceptions to Objection Deadlines*

36.    Notwithstanding anything to the contrary in the Assignment Procedures, the United States Government must file a written objection with the Court no later than forty-five (45) days following the service of any Initial or Final Notice.

37.    Notwithstanding anything to the contrary in the Assignment Procedures, Flextronics must file a written objection with the Court no later than thirty (30) days following the service of any Initial or Final Notice.

*Resolution of Objections to Assumption and Assignment or Assumption and Sublease*

38.    Upon filing of an objection by a Counterparty, the Debtors will initiate a meeting or teleconference with the objecting Counterparty and the Purchaser to consensually resolve any timely served objection. If the Debtors, the Purchaser and the Counterparty are unable to consensually resolve any timely served objection within fifteen (15) days ("Consensual Resolution Deadline"), the Debtors shall be required to respond to such objection within thirty (30) days after the Consensual Resolution Deadline.

39.    To the extent that an objection by a Counterparty is not resolved prior to the Closing Date, the Debtors, in consultation with the Purchaser, may elect to (i) not assume and assign or assume and sublease such Designated Agreement, (ii) postpone the assumption and assignment or assumption and sublease of such Designated Agreement until the resolution or adjudication of such objection or (iii) in the case of a Cure Objection, the relevant party responsible for payment of the Cure Amount under Section 2.1.7 of the Agreement shall segregate any disputed Cure Amount pending the resolution or adjudication of any such objection, in which case the Debtors shall be permitted to assume and assign or assume and sublease such Designated Agreement as of the Closing Date. Any Cure Amounts outstanding on the Closing Date shall be paid to the appropriate Counterparty as a condition subsequent to such

assumption and assignment or assumption and sublease by the relevant party responsible for payment of the Cure Amount under Section 2.1.7 of the Agreement.

### The Sale Hearing

40.    The Sale Hearing shall be held on September 15, 2009 at 9:00 a.m. (ET) before the Honorable Kevin Gross, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, to consider the issuance and entry of an order, inter alia, approving the sale of the Debtors' rights, title and interests in and to the Assets as set forth in the Agreement. In accordance with the terms of the Agreement, the Debtors may adjourn the Sale Hearing one or more times without further notice by making an announcement in open court or by the filing of a hearing agenda announcing the adjournment.

### Other Relief Granted

41.    In the event there is a conflict between this Order and the Motion or the Agreement, this Order shall control and govern.

42.    Nothing in this Order, the Agreement or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

43.    The Debtors are authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements established by this Order.

44.    The Debtors are hereby authorized to conduct the Sale (as defined in the Bidding Procedures) without the necessity of complying with any state or local bulk transfer laws or requirements.

45.    Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its

entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

46.     All objections to the Motion or the relief requested therein (and all reservations of rights included therein), as they pertain to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

47.     The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Order for ten (10) days are hereby waived, and this Order shall be effective immediately upon entry of this Order.

48.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: August 4, 2009
Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE OTHER COMPANIES
LISTED ON SCHEDULE "A" HERETO WITH RESPECT TO CERTAIN PROCEEDINGS
TAKEN IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF
DELAWARE

Court File No: 09-CL-7951

---

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

Proceeding commenced at Toronto

---

### AFFIDAVIT OF DOUGLAS PARKER
### (sworn August 10, 2009)

---

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

689

**TAB 4**

090

Court File No.:  09-CL-7951

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | FRIDAY, THE 14th |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF AUGUST, 2009 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE**
**OTHER COMPANIES LISTED ON SCHEDULE "A" HERETO WITH**
**RESPECT TO CERTAIN PROCEEDINGS TAKEN IN THE UNITED**
**STATES BANKRUPTCY COURT FOR THE DISTRICT OF**
**DELAWARE**

**APPLICATION UNDER Section 18.6 of the *Companies' Creditors Arrangement***
***Act*, R.S.C. 1985, c. C-36, as amended**

**O R D E R**
**(Recognition of the U.S. Sale Order)**

**THIS MOTION**, made Nortel Networks Inc. and the other debtors listed on Schedule "A"

hereto (collectively, the "Applicants") for the relief set out in the Applicants' notice of motion

dated August 11, 2009 was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of Douglas Parker sworn August 10, 2009 and on hearing

submissions of counsel for the Applicants and those other parties present,  no one appearing

for any other person on the service list, although served as appears from the Affidavit of

Service of Katie Legree sworn August ●, 2009, filed.

DOCSTOR: 1743082\1

091

1.   **THIS COURT ORDERS** that the time for the service of the Notice of Motion and

Motion Record is hereby abridged so that this Motion is properly returnable today and

hereby dispenses with further service thereof.

2.   **THIS COURT ORDERS** that the Order of the Honourable Kevin Gross of the

United States Bankruptcy Court for the District of Delaware dated July 28, 2009,

attached hereto as Schedule "B", authorizing and approving, *inter alia*:

(a)   the sale of certain Applicants' CDMA and LTE assets free and clear of all liens

claims and encumbrances, pursuant to an asset sale agreement dated July 24,

2009 to Telefonakteibolaget LM Ericsson (publ) (the "Sale Agreement"), as

more particularly set out in the Sale Agreement; and

(b)   the assumption and assignment of certain contracts and the assumption and

sublease of certain leases, as more particularly set out in the Sale Agreement;

is hereby recognized and shall be implemented and be effective in Canada in accordance with

its terms.

SCHEDULE "A"                                    -    092

(List of Applicants)


## U.S. SUBSIDIARIES FILING A VOLUNTARY PETITION PURSUANT TO

## CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE, 11 U.S.C. §§ 101-1330

2001 - Nortel Networks Inc.
2110 - Nortel Networks Capital Corporation
2002 - Nortel Networks (CALA) Inc.
2107 - Nortel Altsystems, Inc.  (previously "Alteon Websystems, Inc.")
2101 - Nortel Altsystems International Inc. (previously "Alteon Websystems International, Inc.")
2102 - XROS, Inc.
2103 - Sonoma Systems
2104 - QTERA Corporation
2105 - CoreTek, Inc.
2106 - Nortel Networks Applications Management Solutions Inc.
2108 - Nortel Networks Optical Components Inc.
2113 - Nortel Networks HPOCS Inc.
2114 - Architel Systems (U.S.) Corporation
2115 - Nortel Networks International Inc.
2117 - Northern Telecom International Inc.
2121 - Nortel Networks Cable Solutions Inc.

Schedule "B"

- 093

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

|  |  |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*, [1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
|  | **RE: D.I. 931, 1012, 1106, 1129** |

-------------------------------------------------------X

## ORDER AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF THE DEBTORS' CDMA AND LTE BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, (B) THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND (C) THE ASSUMPTION AND SUBLEASE OF CERTAIN LEASES

Upon the motion (the "Motion")[2] of Nortel Networks Inc. ("NNI") and its affiliated debtors, as debtors and debtors in possession in the above-captioned (collectively, the "Debtors"), for entry of orders under Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 6004, 6006, 9014 and 9018 and Local Rules 6004-1 and 9018-1 Orders (I)(A) Authorizing Debtors' Entry into the Asset Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or if not defined in the Motion, shall have the meanings ascribed to such terms in the Sale Agreement (as defined herein).

Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and

Assignment Procedures, (F) Authorizing the Filing of Certain Documents under Seal, and

(G) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of

Certain of Debtors' CDMA and LTE Assets Free and Clear of All Liens, Claims and

Encumbrances, (B) the Assumption and Assignment of Certain Contracts, and (C) the

Assumption and Sublease of Certain Leases [D.I. 931]; and the Court having entered an order

approving, among other things, the Bidding Procedures (the "Bidding Procedures Order") based

upon the evidence presented at the bidding procedures hearing held on June 29, 2009 (the

"Bidding Procedures Hearing") [D.I. 1012]; and a supplemental order having been entered

joining Nortel Networks (CALA) Inc. ("NN CALA") as a debtor party to the Motion, extending

the relief in the Bidding Procedures Order to NN CALA and establishing further procedures in

furtherance of the proposed sale [D.I. 1129]; and the Auction (as defined below) having been

held in accordance with the Bid Procedures Order; and at the conclusion of said Auction

Telefonaktiebolaget LM Ericsson (publ) (the "Purchaser") was chosen as the Successful Bidder

in accordance with the Bid Procedures; and the Court having conducted a hearing on the Motion

on [July 28], 2009 (the "Sale Hearing"); and all parties in interest having been heard, or having

had the opportunity to be heard, regarding the asset sale agreement attached hereto as Exhibit A

(the "Sale Agreement"), by and among certain of the Debtors, certain foreign debtor affiliates

and certain non-debtor affiliates (collectively, the "Sellers") and the Purchaser and the

transactions contemplated thereby (the "Transactions"); and the Court having reviewed and

considered the Motion, and the arguments of counsel made, and the evidence adduced, at the

Bidding Procedures Hearing and the Sale Hearing; and upon the record of the Bidding

Procedures Hearing and the Sale Hearing and these chapter 11 cases, and after due deliberation thereon, and good cause appearing therefore it is hereby

FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 157(b)(1) and 1334(b).

B.    Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.    The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 6004, 6006, 9014 and 9018, and Local Rules 6004-1 and 9018-1.

D.    Notice of the Motion and the Sale Hearing has been provided to (A) (i) all entities reasonably known to have expressed an interest in a transaction with respect to the Assets (as defined in the NSN Agreements referred to below) during the past nine (9) months, (ii) all entities reasonably known to have asserted any interest in the Assets, (iii) the attorneys general for all states in which Purchased Assets (as defined below) are located, all federal and state taxing authorities, the SEC, the EPA, state environmental protection agencies, the IRS, and the Department of Labor and similar state labor or employment agencies, (iv) all parties entitled to notice pursuant to Local Rule 2002-1(b), (v) all counterparties to the Assumed and Assigned Contracts and the Assumed and Subleased Real Estate Leases (together, the "Assumed Agreements"), (vi) all known or potential creditors of the Debtors and (viii) the Official

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

096

Committee of Unsecured Creditors (the "Committee"); and (B) other parties through publication of the Sale Notice, all in accordance with and as provided by the Bidding Procedures Order.

E.    As evidenced by affidavit of publication filed with the Court, notice of the Sale Hearing was published in The Wall Street Journal and The Globe and Mail on July 6, 2009.

F.    Based upon the affidavits of service and publication filed with the Court: (a) notice of the Motion and the Sale Hearing was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Bidding Procedures Order; and (b) a reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons and entities.

G.    The Assets (as defined in the Sale Agreement) sought to be transferred and/or assigned by the Debtors to the Purchaser pursuant to the Sale Agreement (the "Purchased Assets") are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

H.    The Debtors and their professionals marketed the Purchased Assets and conducted the marketing and sale process as set forth in and in accordance with the Motion. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

I.    On June 19, 2009, the Debtors entered into an Asset Sale Agreement (the "NSN Agreement") with respect to the "Assets" provided for therein by and among the Sellers and Nokia Siemens Networks B.V., as the purchaser, subject to higher and better offers.

J.       The Bidding Procedures were substantively and procedurally fair to all parties. The Debtors conducted the sale process (including the Auction) in accordance with the Bidding Procedures.

K.       After the conclusion of the auction held on July 24, 2009 (the "Auction"), the Debtors determined that the highest and best Qualified Bid (as defined in the Bid Procedures Order) was that of the Purchaser and the next highest and best Qualified Bid (the "Alternate Bid") was that of Nokia Siemens Networks B.V. (the "Alternate Bidder").

L.       Subject to the entry of this Order, each Debtor that is a Seller (i) has full power and authority to execute the Sale Agreement, the Ancillary Agreements (as defined in the Sale Agreement) and all other documents contemplated thereby, (ii) has all of the power and authority necessary to consummate the Transactions contemplated by the Sale Agreement and (iii) has taken all company action necessary to authorize and approve the Sale Agreement, the Ancillary Agreements, the sale of the Purchased Assets (the "Sale") and the consummation by the Debtors of the Transactions. No consents or approvals, other than those expressly provided for in the Sale Agreement or this Order, are required for the Debtors to close the Sale and consummate the Transactions.

M.       The Sale Agreement and the Transactions were negotiated and have been and are undertaken by the Debtors and the Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m). As a result of the foregoing, the Debtors and the Purchaser are entitled to the protections of section 363(m) of the Bankruptcy Code.

N.       The total consideration provided by the Purchaser for the Purchased Assets is the highest and best offer received by the Debtors, and the Purchase Price (as defined in

the Sale Agreement) constitutes (a) reasonably equivalent value under the Bankruptcy Code and

Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent

Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any

other applicable laws of the United States, any state, territory or possession, or the District of

Columbia, for the Purchased Assets.

        O.     The Purchaser would not have entered into the Sale Agreement and would

not consummate the Transactions if the sale of the Purchased Assets to the Purchaser was not

free and clear of all liens, claims and interests pursuant to Bankruptcy Code section 363(f), or if

the Purchaser would, or in the future could, be liable for any of such liens, claims and interest. A

sale of the Purchased Assets other than one free and clear of all Claims and Interests (each as

defined herein) would yield substantially less value for the Debtors' estates, with less certainty,

than the Sale. Therefore, the Sale contemplated by the Sale Agreement is in the best interests of

the Debtors, their estates and creditors, and all other parties in interest.

        P.     The Debtors may sell the Purchased Assets free and clear of all Interests,

because, with respect to each creditor asserting a Claim or Interest, one or more of the standards

set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of Claims and

Interests who did not object or who withdrew their objections to the Sale or the Motion are

deemed to have consented to the Motion and Sale pursuant to Bankruptcy Code § 363(f)(2).

Those holders of Claims or Interests who did object fall within one or more of the other

subsections of Bankruptcy Code section 363(f).

        Q.     Neither the Debtors nor the Purchaser engaged in any conduct that would

cause or permit the Sale Agreement or the consummation of the Transactions to be avoided, or

costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

R.    The Purchaser is not holding itself out to the public as a continuation of the Debtors and is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between the Purchaser and any of the Debtors.  Pursuant to the Sale Agreement, the Purchaser is not purchasing all of the Debtors' assets in that Purchaser is not purchasing any of the Excluded Assets (as defined in the Sale Agreement), and Purchaser is not holding itself out to the public as a continuation of the Debtors.  The conveyance of the Assets pursuant to the Transactions does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates.  Upon the Closing (as defined in the Sale Agreement), the Purchaser shall be deemed to have assumed only the Assumed Liabilities (as defined in the Sale Agreement).  Except for the Assumed Liabilities, the Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing.  The Purchaser's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Assets purchased.  The Court finds that the Purchaser would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

S.    The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed and Assigned Contracts to the Purchaser and to assume the Assumed and Subleased Real Estate Leases and Sublease the same to the

Purchaser, in each case, in connection with the consummation of the Sale, and (i) the assumption, assignment, and sale of Assumed and Assigned Contracts to the Purchaser and (ii) the assumption of the Assumed and Subleased Real Estate Leases and the Sublease of the same to the Purchaser, in each case, is in the best interests of the Debtors, their estates, their creditors, and all parties in interest. The Assumed and Assigned Contracts being assigned to the Purchaser and the Assumed and Subleased Real Estate Leases being assumed by the Debtors and subleased to the Purchaser are an integral part of the Purchased Assets being purchased by the Purchaser, and accordingly, such assumption, assignment, and sale of the Assumed and Assigned Contracts and such assumption and sublease of the Assumed and Subleased Real Estate Leases are reasonable and enhance the value of the Debtors' estates. The cure amounts required to be paid by the Debtors pursuant to section 365(b) that are mutually agreed to be paid by the Debtors and the counterparty to the applicable Assumed and Assigned Contract or, as applicable, the Assumed and Subleased Real Estate Lease or as ordered to be paid by this Court pursuant to a final order (the "Cure Amounts") are deemed the entire cure obligation due and owing under the Assumed Agreements under Bankruptcy Code section 365.

T.    Each and every provision of the Assumed and Assigned Contracts or, as applicable, the Assumed and Subleased Real Estate Leases or applicable non-bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Assumed and Assigned Contract or, as applicable, the Assumed and Subleased Real Estate Leases have been satisfied or are otherwise unenforceable under Bankruptcy Code section 365.

U.      Upon the payment of the Cure Amount, there are no outstanding defaults of the Debtors and their estates under the Assumed and Assigned Contracts or, as applicable, the Assumed and Subleased Real Estate Leases.

V.      The Purchaser has demonstrated adequate assurance of future performance of all Assumed and Assigned Contracts within the meaning of Bankruptcy Code section 365.

W.      Upon the assignment and sale to the Purchaser, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

X.      Entry into the Sale Agreement and consummation of the Transactions constitute the exercise by the Debtors of sound business judgment, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest. The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale of the Purchased Assets to the Purchaser. Additionally, (i) the Sale Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Sale Agreement and the closing thereon will present the best opportunity to realize the value of the Purchased Assets and avoid further decline and devaluation of the Purchased Assets; (iii) there is risk of deterioration of the value of the Purchased Assets if the Sale is not consummated promptly; and (iv) the Sale Agreement and the closing thereon will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative.

Y.      The transfer of the Purchased Assets to the Purchaser will be a legal, valid and effective transfer of the Purchased Assets, and will vest the Purchaser with all of the Debtors' right, title and interest of, in and to the Purchased Assets, free and clear of (i) all Claims and Interests of any kind or nature whatsoever (other than the Assumed Liabilities and the Permitted

Encumbrances (as defined in the Sale Agreement)), and (ii) all Excluded Liabilities (as defined

in the Sale Agreement), claims as defined in 11 U.S.C. § 101(5), rights or causes of action

(whether in law or in equity), obligations, demands, restrictions, interests and matters of any kind

or nature whatsoever, whether arising prior to or subsequent to the commencement of these

cases, and whether imposed by agreement, understanding, law, equity or otherwise , including

any "Claims" as defined in the Sale Agreement (collectively, the "Claims"), other than Assumed

Liabilities and the Permitted Encumbrances.

   Z.  The Sale does not constitute a *sub rosa* chapter 11 plan.

   AA.  Time is of the essence in consummating the Sale. In order to maximize

the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within

the time constraints set forth in the Sale Agreement. Accordingly, there is a cause to lift the stay

contemplated by the Bankruptcy Rules 6004(h) and 6006(d).

   BB.  The Sale contemplated by the Sale Agreement is in the best interests of the

Debtors and their estates, creditors, interest holders and all other parties in interest; and it is

therefore:

   ORDERED, ADJUDGED AND DECREED THAT:

   1.  The relief requested in the Motion is GRANTED.

   2.  All objections with regard to the relief sought in the Motion that have not

been withdrawn, waived, settled or otherwise dealt with as expressly provided herein, are hereby

overruled on the merits.

   3.  Pursuant to Bankruptcy Code sections 105 and 363, the Sale Agreement,

the Ancillary Agreements, the Sale of the Purchased Assets, and consummation of the

Transactions are hereby approved and authorized, and the Alternate Bid submitted by the

Alternate Bidder is hereby approved and authorized as an Alternate Bid and shall remain binding

as an Alternate Bid pursuant to the terms of the Bidding Procedures Order and the bid terms

submitted at the Auction. In the event that the Transactions contemplated by the Sale Agreement

cannot be consummated, the Alternate Bid shall be and is hereby approved, and the execution of

the asset sale agreement pursuant to the Alternate Bid by the Debtors is approved and the

Debtors are authorized to take such additional steps and execute such additional documents,

including without limitation the ancillary agreements contemplated by the Alternate Bid, as may

be necessary or desirable for the completion of the Transactions and for the conveyance of the

Debtors' right, title and interest in and to the Assets to the Alternative Bidder.

      4.    Pursuant to section 365 of the Bankruptcy Code, notwithstanding any

provision of any Assumed Agreement or applicable non-bankruptcy law that prohibits, restricts,

or conditions the assignment of the Assumed and Assigned Contracts, under section 365 of the

Bankruptcy Code, the Debtors are authorized to assume the Assumed Agreements and to assign

the Assumed and Assigned Contracts to the Purchaser, which assignment shall take place on and

be effective as of the Closing.

      5.    The Debtors' assumption of the Assumed Agreements is subject to Court

approval and consummation of the sale of the Assets to the Purchaser, and, solely as it relates to

the Assumed and Subleased Real Estate Leases, the Debtors' and Purchaser's entry into

Subleases pursuant to section 5.27 of the Sale Agreement. To the extent that an objection by a

Counterparty to any Assumed Agreement is not resolved prior to the Closing Date (as defined in

the Sale Agreement) or Debtors and Purchasers have failed to enter into a Sublease regarding

any Assumed and Subleased Real Estate Lease pursuant to section 5.27 of the Sale Agreement,

the Debtors, in consultation with the Purchaser, may elect to (i) not assume such Assumed

Agreement, (ii) postpone the assumption of such Assumed Agreement until the resolution of

such objection or (iii) if the dispute relates solely to the amount of the Cure Amount, at the time

of the assumption, Debtors may pay to the Counterparty any undisputed portion of the proposed

Cure Amount and place any disputed portion into a segregated interest-bearing account such that,

upon any resolution by the Court of the Cure Amount dispute, or other agreement between the

Debtors and the Counterparty, the Counterparty will be entitled to payment from the segregated

account of any disputed portion and interest earned thereon to which the Court finds, or the

Debtors and Counterparty agree, it is entitled.  Any Cure Amounts outstanding on the Closing

Date shall be paid to the appropriate Counterparty as a condition subsequent to such assumption

and/or assumption and assignment of the relevant Assumed Agreement.

      6.    Upon the Closing, (a) the Debtors are hereby authorized and directed to

consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and

assignment of the Purchased Assets to the Purchaser free and clear of any and all interests

pursuant to section 363 of the Bankruptcy Code, including (without limitation) all liens,

including any lien (statutory or otherwise), mortgage, pledge, security interest, charge, right of

first refusal, hypothecation, encumbrance on real property, easement, encroachment, right-of-

way, restrictive covenant on real property, real property license, lease or conditional sale

arrangement (collectively, including "Liens" as defined in the Sale Agreement, the "Liens") and

debts, liabilities and obligations, whether accrued or fixed, direct or indirect, liquidated or

unliquidated, absolute or contingent, matured or unmatured or determined or undeterminable,

known or unknown, including those arising under any Law or Action and those arising under any

Contract or otherwise, including any Tax liability (other than Assumed Liabilities and the

Permitted Encumbrances) (collectively, the "Liabilities" and together with the Liens, the

"Interests"), with such Interests to attach to the sale proceeds in the same validity, extent and

priority as immediately prior to the sale transactions, subject to any rights, claims and defenses

of the Debtors and other parties in interest, and (b) except as otherwise expressly provided in the

Sale Agreement, all such Interests (other than Assumed Liabilities and the Permitted

Encumbrances) shall be and hereby are released, terminated and discharged as to the Purchaser

and the Purchased Assets.

       7.     The transfer of the Purchased Assets to the Purchaser pursuant to the

Agreement shall be, and hereby is deemed to be, a legal, valid and effective transfer of the

Purchased Assets, and vests with or will vest in the Purchaser all right, title and interest of the

Debtors in the Purchased Assets, free and clear of all Claims and Interests of any kind or nature

whatsoever (other than the Permitted Encumbrances and the Assumed Liabilities), with any

Interests (including, but not limited to, the Interests, if any, of Fairfax County, Virginia asserted

in its objection to the Motion) attaching to the sale proceeds in the same validity, extent and

priority as immediately prior to the transaction, subject to any rights, claims and defenses of the

Debtors and other parties in interest.

       8.     Upon the Closing, and except as otherwise expressly provided in the Sale

Agreement, the Purchaser shall not be liable for any claims against, and Liabilities and

obligations of, the Debtors or any of the Debtors' predecessors or affiliates. Without limiting the

generality of the foregoing, and except as otherwise provided in the Sale Agreement, (a) the

Purchaser shall have no liability or obligation to pay wages, bonuses, severance pay, benefits

(including, without limitation, contributions or payments on account of any under-funding with

respect to any pension plans) or make any other payment to employees of the Debtors, (b) the

Purchaser, shall have no liability or obligation in respect of any employee pension plan,

employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which any Debtors are a party (including, without limitation, liabilities or obligations arising from or related to the rejection or other termination of any such plan, program agreement or benefit), (c) the Purchaser shall in no way be deemed a party to or assignee of any such employee benefit, agreement, plan or program, and (d) all parties to any such employee benefit, agreement, plan or program are enjoined from asserting against the Purchaser any Claims arising from or relating to such employee benefit, agreement, plan or program.

9.      As of the Closing, subject to the provisions of this Order, the Purchaser shall succeed to the entirety of Debtors' rights and obligations in the Assumed and Assigned Contracts first arising and attributable to the time period occurring on or after the Closing and shall have all rights thereunder.

10.     Upon the entry of this Order, (i) all defaults (monetary and non-monetary) under the Assumed Agreements through the Closing shall be deemed cured through the payment of the Cure Amounts; with respect to the Assumed and Assigned Contracts to which Airvana, Inc. is the Counterparty, which Assumed and Assigned Contracts are identified on Schedule 1 attached hereto, the Cure Amounts for each such Assumed and Assigned Contracts shall be as set forth on Schedule 1, (ii) no other amounts will be owed by the Debtors, their estates or the Purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period before Closing with respect to the Assumed Agreements, (iii) any and all persons or entities shall be forever barred and estopped from asserting a claim against the Debtors, their estates, or the Purchaser that any additional amounts are due or defaults exist under the Assumed Agreements that arose or accrued, or relate to or are attributable to the period before the Closing.

11.     Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision to the contrary in the Assumed and Assigned Contracts, or in applicable non-bankruptcy law, that prohibits, restricts, or conditions the assignment of the Assumed and Assigned Contracts, the Debtors may assign the Assumed and Assigned Contracts to the Purchaser.

12.     Upon assumption of the Assumed and Assigned Contracts by the Debtors and assignment to the Purchaser, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

13.     Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision to the contrary in the Subleased Real Estate Leases, or in applicable non-bankruptcy law, that prohibits, restricts, or conditions the assumption and Sublease of the Assumed and Subleased Real Estate Leases, the Debtors may assume the Assumed and Subleased Real Estate Leases and Sublease the Assumed and Subleased Real Estate Leases to the Purchaser.

14.     Upon the assumption of the Assumed and Subleased Real Estate Leases by the Debtors and the sublease of same to the Purchaser, the Assumed and Subleased Real Estate Leases shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

15.     The Transactions have been undertaken by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Purchased Assets as that term is used in Bankruptcy Code section 363(m). The Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

16.     Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors and

the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to:
(i) consummate the Sale of the Purchased Assets to the Purchaser and the Closing of the Sale in
accordance with the Motion, the Agreement and this Order; (ii) assume and assign the Assumed
and Assigned Contracts; (iii) assume and sublease the Assumed and Subleased Real Estate
Leases; and (iv) perform, consummate, implement and close fully the Sale Agreement together
with all additional instruments and documents that may be reasonably necessary or desirable to
implement the Sale Agreement.

17.    The Purchaser is hereby authorized in connection with the consummation
of the Sale to allocate the Purchased Assets, including the Assumed Agreements, among its
affiliates, designees, assignees, and/or successors, including any Designated Purchaser (as
defined in the Sale Agreement), in a manner as it in its sole discretion deems appropriate and to
assign, lease, sublease, license, sublicense, transfer or otherwise dispose of any of the Purchased
Assets, including the Assumed Agreements, to its affiliates, designees, assignees, and/or
successors with all of the rights and protections accorded to the Purchaser under this Order and
the Sale Agreement, and the Debtors shall cooperate with and take all actions reasonably
requested by the Purchaser to effectuate any of the foregoing; provided, however the Debtors
shall be reimbursed by the Purchaser for any reasonable expenses in connection therewith.

18.    No bulk sales law or any similar law of any state or other jurisdiction shall
apply in any way to the Sale and the Transactions. Except as provided in the Sale Agreement, no
brokers were involved in consummation of the Sale or the Transactions, and no brokers'
commissions are due to any Person in connection with the Sale or the Transactions.

19.    The consideration provided by the Purchaser for the Purchased Assets
under the Agreement shall be deemed for all purposes to constitute value and fair consideration

under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision, of the Bankruptcy Code.

20.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Purchaser on the Closing Date pursuant to the terms of the Agreement, free and clear of all Liens, Claims and Interests (other than Assumed Liabilities).

21.     Except as otherwise provided in the Sale Agreement, any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any vendor, supplier or employee of the Debtors shall be transferred to the Purchaser free and clear of all Liens, Claims and Interests (other than Assumed Liabilities) and shall be delivered at the time of Closing to the Purchaser.

22.     Upon the Closing, all creditors, employees and equity holders of the Debtors are permanently and forever barred, restrained and enjoined from asserting any Liens, Claims or Interests or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against the Purchaser or the Purchased Assets on account of any of the Liens, Claims, Interests, Excluded Liabilities or Excluded Assets (other than Assumed Liabilities and Permitted Encumbrances).

23.     The Transactions do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the

Debtors' estates, and the Purchaser does not constitute a successor to the Debtor or the Debtors'

estates. Upon the Closing, the Purchaser shall be deemed to have assumed only the Assumed

Liabilities. Except for the Assumed Liabilities and Permitted Encumbrances, the Purchaser's

acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of

any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the

time of Closing. The Purchaser's operations shall not be deemed a continuation of the Debtors'

business as a result of the acquisition of the Assets purchased.

    24.  This Order (a) is and shall be effective as a determination that other than

Permitted Encumbrances and Assumed Liabilities, all Liens, Claims and Interests of any kind or

nature whatsoever existing as to the Purchased Assets prior to the Closing have been

unconditionally released, discharged and terminated, and that the conveyances described herein

have been effected, and (b) is and shall be binding upon and shall authorize all entities,

including, all filing agents, filing officers, title agents, title companies, recorders of mortgages,

recorders of deeds, registrars of deeds, administrative agencies or units, governmental

departments or units, secretaries of state, federal, state and local officials and all other persons

and entities who may be required by operation of law, the duties of their office, or contract, to

accept, file, register or otherwise record or release any documents or instruments, or who may be

required to report or insure any title or state of title in or to the Purchased Assets conveyed to the

Purchaser. All such entities described above in this paragraph are authorized and specifically

directed to strike all recorded Interests against the Purchased Assets from their records, official

and otherwise.

    25.  If any person or entity which has filed statements or other documents or

agreements evidencing Liens on, or Interests in, the Purchased Assets shall not have delivered to

the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to the Purchased Assets, the Debtors and the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

26.     All counterparties to the Assumed and Assigned Contracts and, as applicable, the Assumed and Subleased Real Estate Leases shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transactions.

27.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Transactions contemplated by the Agreement.

28.     No governmental unit may revoke or suspend any right, license, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

29.     To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the Sale

Agreement (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

30.    This Order applies only to assets owned by the Debtors. Consequently, notwithstanding any other provision of this Order or the Sale Agreement to the contrary, the portions of this Order that approve the transfer of assets to the Purchaser free and clear of all liens and other encumbrances, or that modify, enjoin, release or otherwise limit the rights of creditors of entities transferring assets, apply only to assets owned by the Debtors and do not apply to any assets owned by non-debtor entities.

31.    In full and final resolution and settlement of the informal comments received from the Pension Benefit Guaranty Corporation (the "PBGC"), the Debtors are authorized to enter into the Stipulation attached as Exhibit B hereto with the PBGC and perform all obligations thereunder.

32.    Nothing in this Order shall be deemed to waive, release or extinguish any valid claim with respect to setoff that Verizon (as defined in the Sale Agreement) or the wholly owned subsidiaries of Verizon Communications Inc. may have against the Debtors.

33.    Conditioned upon and subject to the consent by iStar CTL North Glenville – Richardson LLC ("iStar") to the sublease of the Assumed and Subleased Real Estate Lease under which iStar is the landlord, Purchaser shall pay iStar $5000 in full satisfaction of iStar's claim (pursuant to section 365 of the Bankruptcy Code or otherwise) for payment of attorneys' fees and expenses.

34.    Nothing in this Order provides for the assumption and assignment of any contract or license with OSS Noklava, Inc., successor to Open Systems Solutions, Inc. ("OSS") pursuant to section 365 of the Bankruptcy Code. To the extent that the Purchaser elects to have

the Debtors assign to the Purchaser any contract with OSS relating to the Assets, in whole or in part, the Debtors and Purchaser will do so in accordance with the terms of such contract or license, which terms include, *inter alia*, the written consent of OSS.

      35.    Nothing in this Order authorizes or provides for the assumption and assignment of any contract or license to which Motorola, Inc. ("Motorola") is a party, whether pursuant to section 365 of the Bankruptcy Code or otherwise. Motorola shall provide a list of its affiliates (the "Motorola Affiliates") that it believes have contracts with the Debtors on or before August 3, 2009. Within three business days of receiving such list, the Debtors shall notify Motorola, with a copy to Motorola's counsel of record in this proceeding, whether there are any contracts with any of the Motorola Affiliates that are proposed to be Assumed and Assigned Contracts. Motorola and/or the Motorola Affiliates shall have five business days after Motorola and its counsel have received such notification to file and serve a supplemental objection to the assumption and assignment of any such proposed Assumed and Assigned Contracts, which supplemental objection shall be heard at the next scheduled omnibus hearing. Notwithstanding the entry of this Order, any and all objections of Motorola and the Motorola Affiliates to the proposed assignment of the Motorola Affiliates' agreements are expressly preserved. If no such supplemental objection is filed and served in a timely manner, all Assumed and Assigned Contracts to which any Motorola Affiliate is a counterparty shall be deemed to be assumed and assigned pursuant to the terms of this Order (the "Deemed Assigned Affiliate Contracts"). To the extent that the Purchaser elects, subsequent to the date of this Order, to have the Sellers assign to the Purchaser any agreement or license with Motorola, Inc. or any of the Motorola Affiliates relating to the Assets, in whole or in part, other than the Deemed Assigned Affiliate Contracts, such assignment will be subject to Motorola's consent, to the extent required by the

**114**

terms of such contract and applicable law.

36.     To the extent that Sprint Nextel Corporation ("Sprint") and its affiliates, respective partners, directors, officers, agents and employees (the "Sprint Indemnitees") have a valid indemnification claim against the Sellers under the Fourth Amended and Restated PCS CDMA Product Supply Contract (the "Fourth Amended Supply Contract") between Sprint and NNI, Purchaser shall be responsible for indemnifying and holding harmless the Sprint Indemnitees from and against all Liabilities due after the Closing Date and Sellers shall be responsible for (a) attorneys fees and expenses arising before the Closing Date; and (b) those finally determined Liabilities (settlements and final judgments) due between the date of entry of this Order and the Closing Date, in each case pursuant to the terms of and solely to the extent such Liabilities are entitled to indemnification under the Fourth Amended Supply Contract. Any such claim by Sprint against NNI arising under this section shall be allowed and paid as an administrative claim pursuant to section 503(b) of the Bankruptcy Code.

37.     Nothing in this Order or in the Sale Agreement or Ancillary Agreements provides for the assumption and/or assignment, whether under section 365 of the Bankruptcy Code or otherwise, by the Debtors, of any contract with SNMP Research International, Inc. ("SNMP"), and no intellectual property rights or intellectual property licensed via contracts with SNMP and Nortel are being conveyed or otherwise transferred by the Debtors pursuant to the Order, Sale Agreement or Ancillary Agreements. To the extent that the Purchaser elects to have the Debtors assign to the Purchaser any contract with or intellectual property right of SNMP relating to the Assets, the Debtors and Purchaser will do so in accordance with the terms of such contract or applicable license, which terms, may include, inter alia, the written consent of SNMP.

38.     The Main Sellers have agreed that (i) NNI, on the one hand, and NNL, on

the other hand, each shall pay 50% of the Bid Protections, if, as and when such Bid Protections

become due and payable to Nokia Siemens Networks B.V. pursuant to and in accordance with

the terms of the NSN Agreement and the Bidding Procedures Order; (ii) in the event the Closing

occurs, amounts paid to the Sellers in accordance with Section 2.3.2(b)(i) of the Sale Agreement

shall be applied first to reimburse NNI and NNL for any amounts paid to NSN pursuant to (i)

above and the remainder of such Sales Proceeds (as defined in the Interim Funding and

Settlement Agreement, dated as of June 9, 2009 (the "IFSA"), entry into and performance under

which was approved by this Court's Order dated June 29, 2009 [D.I. 874]) arising out of the Sale

shall be, in accordance with Section 12.g. of the IFSA, (a) deposited into an Escrow Account (as

defined in the IFSA); (b) not be distributed in advance of either (1) agreement of all of the Main

Sellers as to the distribution of such Sale Proceeds (subject to the prior consent of the Committee

and the Bondholder Group acting in good faith), or (2) in the case where the Main Sellers fail to

reach agreement, determination by the relevant dispute resolver(s) in accordance with the terms

of the Interim Sales Protocol (as defined in the IFSA and in such form as approved by this

Court); and (iii) in the event the Closing does not occur and the Sale Agreement is terminated as

a result of the breach thereof by one or more of the Sellers, the Main Sellers reserve their rights

with respect to the allocation of the liability for payment of the Bid Protections. The Main

Sellers have agreed that this agreement in respect of the Bid Protections is being made only with

respect to the initial allocation of the Bid Protections among the Main Sellers, and that nothing

herein (a) shall, or be deemed to, determine, ratify, or adopt, or have any impact whatsoever on,

the allocation or distribution of Sale Proceeds (other than reimbursement of the Bid Protections

contemplated in (ii) above), or (b) shall be precedental for any other sale transaction that has

occurred or may occur in the future. Other than with respect to the payment and reimbursement

of amounts in respect of the Bid Protections, nothing this Order is meant to modify or vary any of the Selling Debtors' (as such term is defined in the IFSA) rights and obligations under the IFSA.

39.    In connection with the Sale Agreement, the Debtors are authorized to enter into and execute the nondisturbance agreement attached hereto as Exhibit C.

40.    Except as expressly provided in the Sale Agreement or the Ancillary Agreements, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

41.    Any amounts that become payable by the Debtors to the Purchaser pursuant to the Sale Agreement or any of the documents delivered by the Debtors pursuant to or in connection with the Sale Agreement shall (a) constitute administrative expenses of the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, and (b) be paid by the Debtors in the time and manner as provided in the Sale Agreement without further order of this Court.

42.    This Order shall not be modified by any chapter 11 plan confirmed in these chapter 11 cases or subsequent order of this Court unless expressly consented to in writing by the Purchaser.

43.    This Order and the Sale Agreement shall be binding in all respects upon all creditors and interest holders of any of the Debtors, all non-debtor parties to the Assumed Agreements, the Committee, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in

the Debtors' bankruptcy chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and the Sale Agreement shall not be subject to rejection or avoidance under any circumstances.

44.     The failure specifically to include or make reference to any particular provisions of the Sale Agreement or any Ancillary Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreement and the Ancillary Agreements are authorized and approved in their entirety.

45.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, including, without limitation, the authority to: (1) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the terms of the Sale Agreement, the Ancillary Agreements, all amendments thereto and any waivers and consents thereunder; (2) protect the Purchaser, or the Purchased Assets, from and against any of the Claims or Interests; (3) compel delivery of all Purchased Assets to the Purchaser; and (4) resolve any disputes arising under or related to the Sale Agreement, the Ancillary Agreements, the Sale or the Transactions.

46.     The Sale Agreement, the Ancillary Agreements and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of the Court; provided, however, that any such modification, amendment or supplement is neither material nor materially changes the economic substance of the transactions contemplated hereby (it being understood, for the sake of clarity, that no such modification, amendment or supplement shall be deemed to be material or shall be deemed to materially change the economic substance of the transactions to the extent that the impact does not exceed

~    **118**

two percent of the Purchase Price (as defined in the Sale Agreement); and provided further that

no such modifications, amendments, or supplements may be made except following two (2) days

written notice to, or with the prior consent of, the Committee, c/o Akin Gump Strauss Hauer &

Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Fred S. Hodara, Stephen Kuhn,

and Kenneth Davis).

　　　　　　47.　　　The Debtors are hereby authorized to perform each of their covenants and

undertakings as provided in the Sale Agreement, the Assumed and Subleased Real Estate Leases

and the Ancillary Agreements prior to or after closing without further order of the Court.

　　　　　　48.　　　This Order shall be effective immediately upon entry, and any stay of

orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy

Code or Bankruptcy Rules is expressly lifted.

　　　　　　49.　　　Notwithstanding any provision in the Bankruptcy Rules to the contrary,

(i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the

Debtors are not subject to any stay in the implementation, enforcement or realization of the relief

granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take

any action and perform any act authorized under this Order.

　　　　　　50.　　　The provisions of this order are nonseverable and mutually dependent.

Dated: _____, 2009
　　　Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE OTHER
COMPANIES LISTED ON SCHEDULE "A" HERETO WITH RESPECT TO CERTAIN
PROCEEDINGS TAKEN IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF DELAWARE

Court File No:  09-CL-7951

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**ORDER**
**(Recognition of the U.S. Sale Order)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

119

**TAB 5**

Court File No.: 09-CL-7951

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | FRIDAY, THE 14th |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF AUGUST, 2009 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE OTHER COMPANIES LISTED ON SCHEDULE "A" HERETO WITH RESPECT TO CERTAIN PROCEEDINGS TAKEN IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

**APPLICATION UNDER Section 18.6 of the *Companies' Creditors Arrangement Act,* R.S.C. 1985, c. C-36, as amended**

**O R D E R**
**(Recognition of the U.S. Bidding Procedures Order (Enterprise Solutions))**

**THIS MOTION**, made Nortel Networks Inc. and the other debtors listed on Schedule "A" hereto (collectively, the "Applicants") for the relief set out in the Applicants' notice of motion dated August 11, 2009 was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of Douglas Parker sworn August 10, 2009 and on hearing submissions of counsel for the Applicants and those other parties present, no one appearing for any other person on the service list, although served as appears from the Affidavit of Service of Katie Legree sworn August ●, 2009, filed.

1.   **THIS COURT ORDERS** that the time for the service of the Notice of Motion and
     Motion Record is hereby abridged so that this Motion is properly returnable today and
     hereby dispenses with further service thereof.

2.   **THIS COURT ORDERS** that the Order of the Honourable Kevin Gross of the
     United States Bankruptcy Court for the District of Delaware dated August 4, 2009 (the
     "U.S. Bidding Procedures Order"), attached hereto as Schedule "B", authorizing and
     approving, *inter alia*:

     (a)    the Applicants entry into an asset and share sale agreement with Avaya Inc.
            ("Avaya") which will serve as the "stalking horse" sale agreement;

     (b)    the Bidding Procedures (as defined in the U.S. Bidding Procedures Order) and
            deeming Avaya as the Qualified Bidder (as defined in the U.S. Bidding
            Procedures Order) pursuant to the Bidding Procedures for all purposes; and

     (c)    the terms and conditions for payment of the Break-up Fee and Expense
            Reimbursement (as such terms are defined in the U.S. Bidding Procedures
            Order);

is hereby recognized and shall be implemented and be effective in Canada in accordance with
its terms.

_____

## SCHEDULE "A"

(List of Applicants)

### U.S. SUBSIDIARIES FILING A VOLUNTARY PETITION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE, 11 U.S.C. §§ 101-1330

2001 - Nortel Networks Inc.
2110 - Nortel Networks Capital Corporation
2002 - Nortel Networks (CALA) Inc.
2107 - Nortel Altsystems, Inc.  (previously "Alteon Websystems, Inc.")
2101 - Nortel Altsystems International Inc. (previously "Alteon Websystems International, Inc.")
2102 - XROS, Inc.
2103 - Sonoma Systems
2104 - QTERA Corporation
2105 - CoreTek, Inc.
2106 - Nortel Networks Applications Management Solutions Inc.
2108 - Nortel Networks Optical Components Inc.
2113 - Nortel Networks HPOCS Inc.
2114 - Architel Systems (U.S.) Corporation
2115 - Nortel Networks International Inc.
2117 - Northern Telecom International Inc.
2121 - Nortel Networks Cable Solutions Inc.

123

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

----------------------------------------------------X
                                    :
*In re*                             :   Chapter 11
                                    :
Nortel Networks Inc., *et al.*,[1]  :   Case No. 09-10138 (KG)
                                    :
                        Debtors.    :   Jointly Administered
                                    :
                                    :   RE: D.I. 1131
                                    :
----------------------------------------------------X

## ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363 AND 365 (A) AUTHORIZING DEBTORS' ENTRY INTO THE ASSET AND SHARE SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES, (C) AUTHORIZING AND APPROVING A BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (D) APPROVING THE NOTICE PROCEDURES, (E) APPROVING THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (F) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL, AND (G) SETTING A DATE FOR THE SALE HEARING

Upon the motion, dated July 20, 2009, of Nortel Networks Inc. ("NNI") and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for orders pursuant to

sections 105, 107(b)(1), 363 and 365 of chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002, 6004, 6006, 9014 and 9018 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 9018-1 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"), as more fully described in the Motion, (I)(A)

Authorizing Debtors' Entry into the Asset and Share Sale Agreement, (B) Authorizing and

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Approving the Bidding Procedures,[2] (C) Authorizing and Approving a Break-Up Fee and

Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption

and Assignment Procedures, (F) Authorizing the Filing of Certain Documents Under Seal, and

(G) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of

Certain Assets of, and Equity Interests in, Debtors' Enterprise Solutions Business, (B) the

Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and

Sublease of Certain Leases [D.I. 1131] (the "Motion"); and the Court having reviewed the

Motion; and the Court having determined that the relief requested in the Motion is in the best

interests of the Debtors, their estates, their creditors and other parties in interest; and it appearing

that proper and adequate notice of the Motion has been given and that no other or further notice

is necessary; and a hearing having been held on August 4, 2009 (the "Hearing"); and upon the

evidence adduced at, the arguments of counsel at, and the entire record of the Hearing; and after

due deliberation thereon; and the objections filed having been considered; and good and

sufficient cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**

A.    The court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334, and this

matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue of these cases

and the Motion in this district is proper under 28 U.S.C. § 1408 and 1409.

B.    The statutory and legal predicates for the relief requested in the Motion are Bankruptcy

Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 6004, 6006, 9014 and

9018, and Local Rules 6004-1 and 9018-1.  Pursuant to Bankruptcy Rule 7052, findings

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.

C.       Good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order (including, without limitation, with respect to the proposed Bidding Procedures and Bid Protections, as defined below) has been afforded to those parties entitled to notice pursuant to Local Rule 2002-1(b).

D.       The Debtors' proposed sale notice, substantially in the form attached to the Motion as Exhibit E (the "Sale Notice"), and the Debtors' proposed publication notice, substantially in the form attached to the Motion as Exhibit F (the "Publication Notice"), are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction and the Sale Hearing, and no other or further notice is required.

E.       The Bidding Procedures, substantially in the form attached hereto as Exhibit 1, are fair, reasonable and appropriate, and are designed to maximize recovery with respect to the sale of the Assets.

F.       The Debtors have demonstrated compelling and sound business justifications for authorizing the sale of the Debtors' Assets, entry into the Asset and Share Sale Agreement (the "Agreement") as a "stalking horse" sale agreement and the payment of the Bid Protections (as defined below) under the circumstances, timing, and procedures set forth herein, in the Motion and in the Agreement.

G.       Entry into the Agreement with Avaya Inc. (the "Purchaser"), a copy of which is attached to the Motion as Exhibit A, as a "stalking-horse" sale agreement is in the best interest of

the Debtors and the Debtors' estates and creditors. The Agreement, along with the

EMEA Agreement, will enable the Debtors to secure an adequate floor for the Auction

and will provide a clear benefit to the Debtors' estates.

**H.**     The Break-up Fee and Expense Reimbursement (each as defined below) are fair and

reasonable, and provide a benefit to the Debtors' estates and creditors.

**I.**     The Debtors' payment of the Bid Protections is, to the extent due and owed by the

Debtors under Section 9.2 of the Agreement, under the conditions set forth in, and in

accordance with the terms of, the Agreement, the Motion and this Order, (a) an actual and

necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of

the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and

all parties in interest herein, (c) reasonable and appropriate, and (d) necessary to ensure

that the Purchaser will continue to pursue the proposed Agreement to undertake the sale

of the Debtors' Assets.

**J.**     The entry of this Order is in the best interests of the Debtors and their estates, creditors,

and interest holders and all other parties in interest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.     Those portions of the Motion seeking approval of the Debtors' entry into the

Agreement, the Bidding Procedures, the Bid Protections, the Notice Procedures, the Assignment

Procedures, authorizing the Debtors to file certain documents under seal, and setting the time,

date and place of the Sale Hearing are GRANTED.

2.     Except as expressly provided herein, nothing herein shall be construed as a

determination of the rights of any party in interest in these chapter 11 cases.

## The Bidding Procedures

3.      The Bidding Procedures attached hereto as Exhibit 1 are hereby APPROVED.

Subject to the approval of the Bidding Procedures by the Ontario Superior Court of Justice in the

Canadian Proceedings regarding the Canadian Debtors, the Debtors are hereby authorized to

conduct a sale by auction of the Assets pursuant to the Bidding Procedures and the terms of this

Order.

4.      The Purchaser shall be deemed a Qualified Bidder pursuant to the Bidding

Procedures for all purposes.

5.      The Bidding Procedures shall apply to Qualified Bidders, the conduct of the sale

of the Assets and the Auction.

## The Assignment Procedures

6.      The Assignment Procedures attached hereto as Exhibit 2 are hereby authorized,

approved and made part of this Order as if fully set forth herein.

7.      The Court recognizes that the identities of the Customer Contract Counterparties

(as defined in the Motion) and any affidavits of service that identify such parties constitute

confidential commercial information, and therefore authorizes that any lists disclosing the

identities of the Customer Contract Counterparties and affidavits to be filed in connection with

the Motion and the procedures approved herein may be filed under seal.

8.      The Debtors shall provide unredacted lists of Designated Customer Contracts and

affidavits of service that identify the Debtors' customers to the Clerk's Office of the United

States Bankruptcy Court for the District of Delaware in a prominently marked envelope with a

cover sheet attached containing (i) the caption, (ii) the docket number of the Motion, (iii) the

docket number of this Order, (iv) the title of the list of Designated Customer Contracts and

affidavits of service that identify the Debtors' customers and (v) the legend "DOCUMENTS TO BE KEPT UNDER SEAL" in bold print.

9.    Recognizing that providing individual notice to each Customer Contract Counterparty and each Lease Counterparty will ensure that such parties will receive adequate notice, the Court hereby waives the requirements of Bankruptcy Rule 6006(f)(6).

10.    To facilitate the assumption and assignment of the Designated Agreements, the anti-assignment provisions of the Designated Agreements, if any, are hereby deemed unenforceable pursuant to section 365(f) of the Bankruptcy Code.

11.    Pursuant to Bankruptcy Rule 6006(f)(6), the Court hereby authorizes the Debtors to file one or more omnibus notices, pursuant to the Assignment Procedures, incorporating all the Executory Contracts and unexpired leases to be either assumed and assigned or assumed and subleased.

12.    The Debtors recognize that the United States, and certain of its departments, agencies and instrumentalities, other than the Pension Benefit Guaranty Corporation (collectively, the "United States Government"), may be a counterparty to certain Enterprise Agreements.  To the extent that any Enterprise Agreement with the United States Government is designated for assumption and assignment pursuant to the Assignment Procedures, the Debtors will seek the consent of the applicable governmental counterparty in compliance with 41 U.S.C. § 15 and 31 U.S.C. § 3727 and comply with the applicable laws, regulations and novation procedures.

13.    The Debtors shall use commercially reasonable efforts to provide Flextronics Corporation and Flextronics Telecom Systems Ltd (together, "Flextronics") with notice prior to the Sale Hearing of the proposed treatment by the Purchaser under the Agreement (as defined in

the Motion) of executory contracts between one or more of the Debtors and Flextronics,
provided, however, that the disclosure of the treatment of such executory contracts by the
Purchaser or any other Qualified Bidder is not a prerequisite to a determination of Qualified
Bidder status, participation in the Auction, the selection of a Successful Bidder or the
collaboration of the Debtors with the Successful Bidder to close the Transaction.

### Break-Up Fee and Expense Reimbursement

14.     To the extent due and owed by the Debtors under Section 9.2 of the Agreement,
the Debtors are authorized to pay to the Purchaser:  (i) two-thirds (2/3) of an amount in cash
equaling $14.25 million minus one-half of any Expense Reimbursement (as defined below) paid
by the Sellers (the "Break-Up Fee") and (ii) two-thirds (2/3) of an amount in cash equal to the
total amount of all reasonable and documented fees, costs and expenses incurred by the
Purchaser in connection with the preparation, execution and performance of the Agreement and
the transactions contemplated thereby, including all filing and notification fees, and all fees and
expenses of the Purchaser's representatives (the "Expense Reimbursement, and together with the
Break-Up Fee, the "Bid Protections"), provided that the Expense Reimbursement will be capped
at $9.5 million.

15.     The Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement,
under the conditions set forth in, and in accordance with the terms of, Section 9.2 of the
Agreement, shall survive termination of the Agreement and shall constitute an administrative
expense of the Debtors under section 503(b) of the Bankruptcy Code.

16.     Except as provided in Section 5.36 of the Agreement, the Break-Up Fee and/or
the Expense Reimbursement, if payable, will be the sole and exclusive remedy of the Purchaser
as a result of the failure of the transactions contemplated by the Purchase Agreements to be

consummated, or in respect of any Liabilities arising under, or relating to, the Purchase Agreements or the transactions contemplated thereby prior to the Closing, including as a result of an intentional breach of the Purchase Agreements prior to the Closing.

17.     Under no circumstances shall any party to the Agreement be liable for punitive damages (including multiple damages assessed as a punitive measure) or special damages arising out of, or in connection with, the Agreement or the transactions contemplated thereby or any breach or alleged breach of any of the terms thereof or of the EMEA Agreement or any other Transaction Document (as defined in the Agreement), including damages alleged as a result of tortious conduct, or for specific performance of the obligations it is to perform thereunder at or prior to the Closing nor shall any Nortel Party (as defined in the Agreement) be liable for tortious interference with the Purchaser's rights under the Agreement nor shall any Avaya Party (as defined in the Agreement) be liable for tortious interference with the Sellers' rights under the Agreement.

### The Notice Procedures

18.     The notices, in substantially the same forms as annexed to the Motion as Exhibits E (Form of Sale Notice), F (Form of Publication Notice), G (Form of Initial Customer Notice), H (Form of Final Customer Notice), I (Form of Lease Notice), J (Form of Initial Omnibus Notice) and K (Form of Final Omnibus Notice) are sufficient to provide effective notice to all interested parties of the Bidding Procedures, the Auction, the Sale Hearing and the Assignment Procedures, pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and are hereby approved.

19.     Immediately after entry of this Order (or as soon thereafter as reasonably practicable) the Debtors (or their agent) shall serve the Sale Notice, in substantially the form attached as Exhibit E to the Motion, by first-class mail upon (i) the U.S. Trustee, (ii) counsel to the Purchaser, (iii) counsel to the Committee, (iv) counsel to the Bondholder Group, (v) all

entities known to have a claim, lien, interest or encumbrance against the Debtors' interest in the Assets, the Shares, the Assumed and Assigned Contracts and the Assumed and Subleased Real Estate Leases, (vi) all counterparties to the Assumed and Assigned Contracts and Assumed and Subleased Real Estate Leases, (vii) the Monitor, (viii) the Administrators, (ix) the Internal Revenue Service and applicable federal and state taxing authorities, (x) the Securities and Exchange Commission, (xi) the Pension Benefit Guaranty Corporation and all regulatory authorities of the Sellers' pension plans in Canada and the United Kingdom, (xii) the attorneys general for all states in which the Assets are located, (xiii) the EPA and relevant state environmental protection agencies, (xiv) the Department of Labor and similar state labor or employment agencies, (xv) the United States Department of Justice, (xvi) each of the entities that had received an invitation from the Sellers to acquire or had expressed an interest in acquiring the Assets (which shall be filed under seal), and (xvii) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

20.    The Court recognizes that the identities of the entities that received an invitation from the Sellers to acquire, or that previously expressed an interest in acquiring, the Assets and affidavits of service that identify such parties, constitute confidential commercial information, and therefore authorizes that any such affidavits to be filed in connection with the Motion may be filed under seal in accordance with the procedures set forth above for lists and affidavits of service that identify the Debtors' customers.

21.    As soon as reasonably practicable after entry of this Order and the Canadian Sales Process Order, but in any event no more than three (3) Business Days after the entry of such orders, the Sellers (including the Debtors) shall publish notice of the Bidding Procedures, the time and place of the Auction, the time and place of the Sale Hearing, and the objection deadline

for the Sale Hearing, substantially in the form attached to the Motion as Exhibit F, in <u>The Wall Street Journal</u> (National Edition), <u>The Globe & Mail</u> (National Edition) and <u>The Financial Times</u> (International Edition).

22.     As the Purchaser designates the Designated Customer Contracts to be assumed by the relevant Debtor and assigned to the Purchaser as of the Closing Date, the Debtors will, from time to time, serve an Initial Customer Notice on each Customer Contract Counterparty by first class mail. The Debtors will also send a Final Customer Notice to each Customer Contract Counterparty by first class mail. The Debtors will file under seal with the Court and deliver a full, alphabetized list of Customer Contract Counterparties, along with an affidavit or declaration confirming that each of the Initial Customer Notice and the Final Customer Notice have been sent to each Customer Contract Counterparty, to (i) counsel to the Purchaser, (ii) the U.S. Trustee, (iii) the Monitor, (iv) counsel to the Committee and (v) counsel to the Bondholder Group.

23.     As the Purchaser designates Other Designated Contracts, the Debtors will, from time to time file with the Court one or more Initial Omnibus Notices, and serve each omnibus notice on each Other Contract Counterparty whose Other Designated Contract appears on such omnibus notice. The Debtors will also send one or more Final Omnibus Notices to each Other Contract Counterparty by first class mail.

24.     As the Purchaser designates the Designated Leases, the Debtors will, from time to time but no later than fifty (50) days following the Signing Date, serve a Lease Notice on each Lease Counterparty by first class mail.

25.     The Initial Notices, the Final Notices and the Lease Notice, in substantially the same forms as annexed to the Motion as Exhibits G, H, I, J and K, are sufficient to provide

effective notice pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6006(c) to all

Counterparties of the Debtors' intent to assume and assign the Designated Agreements, and are

hereby approved.

**Objection Procedures**

**A.    Objections to Sale**

26.    All objections to the relief requested in the Motion pertaining to approval of the

sale of the Assets, shall file a formal objection that complies with the objection procedures as set

forth in the Motion.  Each objection shall state the legal and factual basis of such objection and

may be orally supplemented at the Sale Hearing.  All objections must also be: (i) in writing; (ii)

signed by counsel or attested to by the objecting party; (iii) in conformity with the Bankruptcy

Rules and the Local Rules, (iv) filed with the Clerk of the Bankruptcy Court, 824 Market Street,

Wilmington, Delaware 19801 by **4:00 p.m. (ET) on September 4, 2009** (the "General Objection

Deadline"); and (v) served in accordance with the Local Rules so as to be received on or before

the General Objection Deadline by the following: (a) counsel to the Debtors:  Cleary Gottlieb

Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Fax:  (212) 225-3999

(Attention:  James L. Bromley and Lisa M. Schweitzer) and Morris, Nichols, Arsht & Tunnell

LLP, 1201 North Market Street, Wilmington, Delaware 19801, Fax:  (302) 658-3989 (Attention:

Derek C. Abbott); (b) counsel to the Purchaser:  Ropes & Gray LLP, 1211 Avenue of the

Americas, New York, New York 10036, Fax:  (646) 728-1662 (Attention:  Mark I. Bane, and

Anne H. Pak); (c) counsel to the Committee:  Akin Gump Strauss Hauer & Feld LLP, One

Bryant Park, New York, New York 10036, Fax:  (212) 872-1002 (Attention:  Fred S. Hodara,

Stephen Kuhn, and Kenneth Davis) and Richards, Layton & Finger, P.A., One Rodney Square,

920 North King Street, Wilmington, Delaware 19801 (Attention:  Christopher M. Samis); (d)

counsel to the Bondholder Group:  Milbank, Tweed, Hadley & McCloy LLP, One Chase

Manhattan Plaza, New York, New York 10005, Fax: (212) 822-5735 (Attention: Roland

Hlawaty); and (e) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801.

27.     Failure to object to the relief requested in the Motion shall be deemed to be

"consent" for purposes of Bankruptcy Code section 363(f).

28.     Supplemental objections to issues arising from and in connection with the

Auction and/or the Debtors' selection of a Successful Bidder other than the Purchaser must be

filed by **12:00 p.m. (ET) on September 14, 2009**.

29.     The foregoing requirements are collectively referred to herein as the "General

Objection Procedures." Only those objections made in compliance with the General Objection

Procedures will be considered by the Court at the Sale Hearing. The failure of any objecting

person or entity to file its objections by the General Objection Deadline and in accordance with

the General Objection Procedures will be a bar to the assertion, at the Sale Hearing or thereafter,

of any objection pertaining to the Auction or the Sale Transaction (excluding, however,

objections relating to the assumption and assignment of any Designated Agreement, which must

be filed in accordance with the Assignment Procedures).

**B.     Objections to Assumption and Assignment or Assumption and Sublease**
*Initial Objections*

30.     Any Customer Contract Counterparty or Other Contract Counterparty that wishes

to object to any matter set forth in the Initial Notices with regards to the proposed assumption

and assignment of a Designated Agreement, including without limitation the adequate assurance

of future performance by the Purchaser under the applicable Designated Agreement or the

Interim Cure Amount, if any, must file a written objection with the Court no later than ten (10)

days following service of the Initial Notice, and serve notice of such objection on (a) counsel to

the Debtors, (b) counsel to the Purchaser, (c) counsel to the Committee and (d) counsel to the Bondholder Group, each at the addresses set forth in the Assignment Procedures.

31.    To the extent that any Customer Contract Counterparty or Other Contract Counterparty does not timely serve an objection as set forth above, such Counterparty will be deemed to have (i) consented to the assumption and assignment of the applicable Designated Agreement; (ii) agreed that the Purchaser has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iii) consented to the Interim Cure Amount, if any; and (iv) agreed that the terms of this Order and the Sale Order shall apply to the assignment, subject only to the resolution of the Tail Cure Amount, if any.

*Final Objections*

32.    Any Customer Contract Counterparty or Other Contract Counterparty that wishes to object to the Tail Cure Amount in the Final Notice must file a Final Cure Objection with the Court no later than ten (10) days following service of the Final Notice, and serve notice of such objection on (a) counsel to the Debtors, (b) counsel to the Purchaser, (c) counsel to the Committee and (d) counsel to the Bondholder Group, each at the addresses set forth in the Assignment Procedures.

33.    To the extent that any Customer Contract Counterparty or Other Contract Counterparty does not timely serve an objection as set forth directly above, such Counterparty will be deemed to have (i) consented to such Tail Cure Amount, if any, and to the assumption and assignment of the Designated Agreement; (ii) agreed that all defaults under the Designated Agreement arising or continuing prior to the effective date of the assignment have been cured such that the Purchaser or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the effective date of the assignment, and from and after the effective date of the assignment, the Designated Agreement shall remain in full force and

effect for the benefit of the Purchaser and the Counterparty in accordance with its terms; and (iii) waived any right to terminate the Designated Agreement or designate an early termination date under the applicable Designated Agreement as a result of any default that occurred or was continuing prior to the effective date of the assignment.

***Lease Objections***

34.     Any Lease Counterparty that wishes to object to any matter pertaining to the proposed assumption and assignment or assumption and sublease of a Designated Lease, including without limitation the adequate assurance of future performance by the Purchaser under the applicable Designated Lease or the Cure Amount, if any, then such Lease Counterparty must file a written objection with the Court no later than ten (10) days following service of the Lease Notice, and serve notice of such objection on (a) counsel to the Debtors, (b) counsel to the Purchaser, (c) counsel to the Committee and (d) counsel to the Bondholder Group, each at the addresses set forth in the Assignment Procedures.

35.     To the extent that any Lease Counterparty does not timely serve an objection as set forth directly above, such Counterparty will be deemed to have (i) consented to the assumption and assignment or assumption and sublease of the applicable Designated Lease; (ii) agreed that the Purchaser has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iii) consented to the Cure Amount, if any; and (iv) agreed that the terms of this Order and the Sale Order shall apply to the assignment or sublease.

*Certain Exceptions to Objection Deadlines*

36.    Notwithstanding anything to the contrary in the Assignment Procedures, the United States Government must file a written objection with the Court no later than forty-five (45) days following the service of any Initial or Final Notice.

37.    Notwithstanding anything to the contrary in the Assignment Procedures, Flextronics must file a written objection with the Court no later than thirty (30) days following the service of any Initial or Final Notice.

*Resolution of Objections to Assumption and Assignment or Assumption and Sublease*

38.    Upon filing of an objection by a Counterparty, the Debtors will initiate a meeting or teleconference with the objecting Counterparty and the Purchaser to consensually resolve any timely served objection.  If the Debtors, the Purchaser and the Counterparty are unable to consensually resolve any timely served objection within fifteen (15) days ("Consensual Resolution Deadline"), the Debtors shall be required to respond to such objection within thirty (30) days after the Consensual Resolution Deadline.

39.    To the extent that an objection by a Counterparty is not resolved prior to the Closing Date, the Debtors, in consultation with the Purchaser, may elect to (i) not assume and assign or assume and sublease such Designated Agreement, (ii) postpone the assumption and assignment or assumption and sublease of such Designated Agreement until the resolution or adjudication of such objection or (iii) in the case of a Cure Objection, the relevant party responsible for payment of the Cure Amount under Section 2.1.7 of the Agreement shall segregate any disputed Cure Amount pending the resolution or adjudication of any such objection, in which case the Debtors shall be permitted to assume and assign or assume and sublease such Designated Agreement as of the Closing Date.  Any Cure Amounts outstanding on the Closing Date shall be paid to the appropriate Counterparty as a condition subsequent to such

assumption and assignment or assumption and sublease by the relevant party responsible for

payment of the Cure Amount under Section 2.1.7 of the Agreement.

### The Sale Hearing

40.     The Sale Hearing shall be held on September 15, 2009 at 9:00 a.m. (ET) before

the Honorable Kevin Gross, United States Bankruptcy Judge, in the United States Bankruptcy

Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, to consider

the issuance and entry of an order, inter alia, approving the sale of the Debtors' rights, title and

interests in and to the Assets as set forth in the Agreement. In accordance with the terms of the

Agreement, the Debtors may adjourn the Sale Hearing one or more times without further notice

by making an announcement in open court or by the filing of a hearing agenda announcing the

adjournment.

### Other Relief Granted

41.     In the event there is a conflict between this Order and the Motion or the

Agreement, this Order shall control and govern.

42.     Nothing in this Order, the Agreement or the Motion shall be deemed to or

constitute the assumption or assignment of an executory contract or unexpired lease.

43.     The Debtors are authorized and empowered to take such steps, expend such sums

of money, and do such other things as may be necessary to implement and effect the terms and

requirements established by this Order.

44.     The Debtors are hereby authorized to conduct the Sale (as defined in the Bidding

Procedures) without the necessity of complying with any state or local bulk transfer laws or

requirements.

45.     Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to

the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its

139

entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or

realization of the relief granted in this Order and (iii) the Debtors may, in their discretion and

without further delay, take any action and perform any act authorized under this Order.

46.    All objections to the Motion or the relief requested therein (and all reservations of

rights included therein), as they pertain to the entry of this Order, are overruled to the extent they

have not been withdrawn, waived or otherwise resolved.

47.    The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the

effectiveness of this Order for ten (10) days are hereby waived, and this Order shall be effective

immediately upon entry of this Order.

48.    The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated: August 4, 2009
Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE OTHER
COMPANIES LISTED ON SCHEDULE "A" HERETO WITH RESPECT TO CERTAIN
PROCEEDINGS TAKEN IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF DELAWARE

Court File No:  09-CL-7951

---

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

---

**ORDER**
**(Recognition of the U.S. Bidding Procedures Order**
**(Enterprise Solutions))**

---

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com


Fax: (416) 216-3930

Lawyers for the Applicants

140

**TAB 6**

Court File No.:  09-CL-7951

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | FRIDAY, THE 14th |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF AUGUST, 2009 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE**
**OTHER COMPANIES LISTED ON SCHEDULE "A" HERETO WITH**
**RESPECT TO CERTAIN PROCEEDINGS TAKEN IN THE UNITED**
**STATES BANKRUPTCY COURT FOR THE DISTRICT OF**
**DELAWARE**

**APPLICATION UNDER Section 18.6 of the *Companies' Creditors Arrangement***
***Act,* R.S.C. 1985, c. C-36, as amended**

**O R D E R**
**(Recognition of the U.S. Claims Bar Order)**

**THIS MOTION**, made Nortel Networks Inc. and the other debtors listed on Schedule "A"

hereto (collectively, the "Applicants") for the relief set out in the Applicants' notice of motion

dated August 11, 2009 was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of John Doolittle sworn August 10, 2009 and on hearing

submissions of counsel for the Applicants and those other parties present,  no one appearing

for any other person on the service list, although served as appears from the Affidavit of

Service of Katie Legree sworn August ●, 2009, filed.

1.     **THIS COURT ORDERS** that the time for the service of the Notice of Motion and

Motion Record is hereby abridged so that this Motion is properly returnable today and

hereby dispenses with further service thereof.

2.     **THIS COURT ORDERS** that the Order of the Honourable Kevin Gross of the

United States Bankruptcy Court for the District of Delaware dated August 4, 2009 (the

"U.S. Claims Bar Order"), attached hereto as Schedule "B", authorizing and

approving, *inter alia*:

    (a)    the deadline of September 30, 2009 at 4:00 p.m. (prevailing Eastern Time) for

all proofs of claim to be filed in writing with the Claims Agent (as defined in

the U.S. Claims Bar Order); and

    (b)    the procedures (as set out in the U.S. Claims Bar Order) for filing proofs of

claim against all Applicants and the form and manner of service of same;

is hereby recognized and shall be implemented and be effective in Canada in accordance with

its terms.

_____

## SCHEDULE "A"

~ **143**

(List of Applicants)

**U.S. SUBSIDIARIES FILING A VOLUNTARY PETITION PURSUANT TO**

**CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE, 11 U.S.C. §§ 101-1330**

2001 - Nortel Networks Inc.
2110 - Nortel Networks Capital Corporation
2002 - Nortel Networks (CALA) Inc.
2107 - Nortel Altsystems, Inc.  (previously "Alteon Websystems, Inc.")
2101 - Nortel Altsystems International Inc. (previously "Alteon Websystems International, Inc.")
2102 - XROS, Inc.
2103 - Sonoma Systems
2104 - QTERA Corporation
2105 - CoreTek, Inc.
2106 - Nortel Networks Applications Management Solutions Inc.
2108 - Nortel Networks Optical Components Inc.
2113 - Nortel Networks HPOCS Inc.
2114 - Architel Systems (U.S.) Corporation
2115 - Nortel Networks International Inc.
2117 - Northern Telecom International Inc.
2121 - Nortel Networks Cable Solutions Inc.

**144**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------X
                                           :
                                           :   Chapter 11
In re                                      :
                                           :   Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,¹             :
                                           :   Jointly Administered
                      Debtors.             :
                                           :
                                           :   RE: D.I. 1084
                                           :
-------------------------------------------X
```

**ORDER ESTABLISHING DEADLINES FOR FILING PROOFS OF CLAIM AND**
**APPROVING FORM AND MANNER OF NOTICE THEREOF**

Upon the motion dated, July 15, 2009 (the "Motion"),[2] of Nortel Networks Inc. and its

affiliated debtors, as debtors and debtors in possession in the above-captioned cases (the

"Debtors"), for entry of an order, as more fully described in the Motion, fixing deadlines (the

"Bar Dates") and establishing procedures for filing proofs of claim against the Debtors and

approving the form and manner of service thereof;[3] and adequate notice of the Motion having

been given as set forth in the Motion; and it appearing that no other or further notice is

necessary; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having determined that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

[3] For the avoidance of doubt, this Order does not establish a bar date for the filing of claims in the jointly administered chapter 11 case commenced by Nortel Networks (CALA) Inc., Case No. 09-12515.

1

consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the

Court having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief requested in the Motion, and that such relief is in the best interests of the

Debtors, their estates, their creditors and the parties in interest; and upon the record in these

proceedings; and after due deliberation;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      Except as otherwise provided herein, all Entities (including, without limitation,

individuals, partnerships, corporations, joint ventures, trusts and governmental units) that assert a

claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtors which arose

prior to the filing of the chapter 11 petitions on January 14, 2009 (the "Petition Date"), shall file

a proof of such claim in writing so that it is received on or before September 30, 2009, at 4:00

p.m. (prevailing Eastern Time) (the "General Bar Date").

3.      Subject to paragraph 21 of this Order, all claims against the Debtors shall be filed

in, and only in, these chapter 11 cases with the Claims Agent (as defined herein) in accordance

with the procedures set forth in this Order.

4.      Subject to paragraph 21 of this Order, all claims against the Canadian Debtors

shall be filed in, and only in, the Canadian Proceedings with the court-appointed Monitor

pursuant to the procedures approved by the Canadian Court.

5.      The following procedures for the filing of proofs of claim shall apply:

(a)     Proofs of claim must conform substantially to the Proof of Claim Form;

(b)     However, claims asserted under Section 503(b)(9) of the Bankruptcy Code

must conform to the Section 503(b)(9) Claim Form approved in this

2

Court's *Order Establishing and Implementing Uniform Procedures Regarding Section 503(b)(9) Claims* [D.I. 590] (the "503(b)(9) Procedures Order");

(c)    Proof of claim forms must be filed by delivery of the original either by first class U.S. mail, postage prepaid to Epiq Bankruptcy Solutions, LLC (the "Claims Agent") at the following address:

> Nortel Networks Inc. Claims Processing Center
> c/o Epiq Bankruptcy Solutions, LLC
> FDR Station, P.O. Box 5075
> New York, NY 10150-5075

or, if sent by hand delivery or overnight courier, to:

> Nortel Networks Inc. Claims Processing Center
> c/o Epiq Bankruptcy Solutions, LLC
> 757 Third Avenue, 3rd Floor
> New York, NY 10017

(d)    Proofs of claim sent by facsimile, telecopy or electronic mail shall not be accepted;

(e)    Proof of claim forms will be deemed filed only if actually received by the Claims Agent on or before 4:00 p.m. (prevailing Eastern Time) on the applicable Bar Date;

(f)    Proof of claim forms must (i) be signed by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant; (ii) include supporting documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available; (iii) be in the English language; and (iv) be denominated in lawful United States currency; provided, however, that the Debtors shall have the right to convert a claim denominated in non-U.S. currency into U.S. currency using the Reuters closing rate as of the Petition Date, unless the Debtors deem another date more appropriate; and

(g)    Proof of claim forms must specify by name and case number the Debtor against which the claim is filed; if the holder asserts a claim against more than one Debtor or has claims against different Debtors, a separate proof of claim form must be filed with respect to each Debtor.

3

6.     The following Entities need not file a proof of claim on or prior to the General Bar Date:

    (a)     Any Entity that has already filed a proof of claim against the correct Debtors with the Clerk of the Bankruptcy Court for the District of Delaware or the Claims Agent in a form substantially similar to Official Form No. 10 and/or the 503(b)(9) Claim Form;

    (b)     Any person or entity whose claim is listed on the Schedules filed by the Debtors, provided that (i) the claim is not scheduled as "disputed," "contingent" or "unliquidated"; and (ii) the claimant does not disagree with the amount, nature and priority of the claim as set forth in the Schedules; and (iii) the claimant does not dispute that the claim is an obligation of the specific Debtor against which the claim is listed in the Schedules;

    (c)     Any holder of a claim against the Debtors that heretofore has been allowed by order of this Court;

    (d)     Any person or entity whose claim against the Debtors has been paid in full by any of the Debtors pursuant to an order of this Court;

    (e)     Any holder of a claim against the Debtors for which specific deadlines have previously been fixed by this Court;

    (f)     Any Debtor, nondebtor affiliate of the Debtors or Canadian Debtor, or any of their direct or indirect subsidiaries holding a claim, whether liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present, future, known or unknown, against any of the Debtors, other than claims by any joint venture;

    (g)     Any Entity having a claim against any of the nondebtor affiliates or subsidiaries of the Debtors;

    (h)     Any holder of a claim against the Debtors allowable under section 503(b) and section 507(a)(2) of the Bankruptcy Code as an expense of administration (other than any claim allowable under Section 503(b)(9) of the Bankruptcy Code, which claim holders shall be required to file a proof of claim pursuant to the 503(b)(9) Procedures Order);

    (i)     Any claims of officers and/or directors, who are officers and/or directors as of August 1, 2009, for indemnification and/or contribution arising from such officer's and/or director's service to the Debtors or any of the Debtors' non-debtor affiliates; provided, however, that such officers and/or directors must file proofs of claims so as to be actually received by

the applicable Bar Date for all other claims arising before the Petition Date against the Debtors;

(j)    Any Entity (a "Noteholder") whose claim is limited exclusively to the repayment of principal, interest and other fees and expenses (the "Note Claims") in connection with such Noteholders holding or ownership of such notes under the note indentures[4] ("Note Indentures"); provided, however, that (i) the foregoing exclusion in this subparagraph shall not apply to the indenture trustees under the Note Indentures (the "Indenture Trustees"), (ii) the Indenture Trustees shall each be authorized and required to file a single proof of claim pursuant to section 501(a) of the Bankruptcy Code, on or before the General Bar Date, on account of the Note Claims against the Debtors under their respective Note Indentures and (iii) any Noteholder wishing to assert a claim, other than a Notes Claim, arising out of or relating to the Notes Indentures, shall be required to file a proof of claim with respect to such claim on or before the General Bar Date, unless another exception identified herein applies; and

(k)    Holders of equity security interests in the Debtors need not file proofs of interest with respect to the ownership of such equity interests, provided, however, that if any such holder asserts a claim against the Debtors that arises out of or relates to the ownership (including a claim relating to the purchase or sale) of such equity interest, a proof of such claim must be filed on or prior to the General Bar Date.

7.    Any person or entity that holds a claim that arises from the rejection of an executory contract or unexpired lease by the Debtors must file a proof of claim by the date (the "Rejection Bar Date") that is the later of (i) the General Bar Date, (ii) 30 days after entry of an order authorizing such rejection, and (iii) 35 days after the Debtors file and serve by e-mail or overnight courier a notice of the rejection of such executory contract or unexpired lease pursuant

---

[4] The Note Indentures are: (i) the Indenture dated as of March 28, 2007 governing the 1.75% Convertible Senior Notes due 2012 and the 2.125% Convertible Senior Notes due 2014 issued by Nortel Networks Corporation and guaranteed by Nortel Networks Limited and Nortel Networks Inc.; (ii) the Indenture dated as of July 5, 2006, as supplemented by the First Supplemental Indenture dated as of July 5, 2006 and the Second Supplemental Indenture dated as of May 1, 2007, governing the Floating Rate Senior Notes due 2011, the 10.125% Senior Notes due 2013 and the 10.750% Senior Notes due 2016 issued by Nortel Networks Limited and guaranteed by Nortel Networks Corporation and Nortel Networks Inc.; and (iii) the Indenture dated as of February 15, 1996, as supplemented by the First Supplemental Indenture dated as of February 15, 1996, governing the issue of 7.875% Notes due 2026 of Northern Telecom Capital Corporation (now Nortel Networks Capital Corporation) and guaranteed by Northern Telecom Limited (now Nortel Networks Limited).

5

to the *Order Approving Procedures for Rejection of Executory Contracts and Unexpired Leases and the Abandonment of Certain Assets Related Thereto* (D.I. 510)

8.    If the Debtors amend or supplement the Schedules subsequent to the date hereof, the Debtors shall give notice of any amendment or supplement to the holders of claims affected thereby, and such holders shall be afforded 20 days from the date of such notice to file proofs of claim in respect of their claims or be barred from doing so, and shall be given notice of such deadline (the "Amended Schedule Bar Date").

9.    Nothing in this Order shall prejudice the right of the Debtors or any other party in interest to dispute or assert offsets or defenses to any claim reflected in the Schedules.

10.    Pursuant to Bankruptcy Rule 3003(c)(2), all holders of claims against the Debtors that fail to comply with this Order by filing a proof of claim by the applicable Bar Date in appropriate form (i) shall be forever barred and estopped from asserting such claim (or filing a proof of claim with respect thereto) against the Debtors and their estates, (ii) shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution under a plan of reorganization or liquidation in these cases, (iii) the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such claim, and (iv) such creditor shall not be entitled to any further notices in these chapter 11 cases with respect to such claim.

11.    A copy of the notice substantially in the form attached hereto as Exhibit B (the "Bar Date Notice") along with a Proof of Claim Form and a 503(b)(9) Claim Form (collectively, the "Bar Date Package") is approved and shall be deemed adequate and sufficient if served by first-class mail at least 50 days prior to the General Bar Date on:

(a)    the United States trustee;

6

(b)     counsel to the Committee;

(c)     all Entities that have requested notice of the proceedings in the chapter 11 cases as of the date of this Order;

(d)     counsel to the Bondholder Group;

(e)     counsel to any other official committee that may be appointed in these chapter 11 cases;

(f)     the Indenture Trustee for each of the Note Indentures;

(g)     all Entities that have filed claims against the Debtors as of the date of this Order;

(h)     all known creditors of the Debtors and other known holders of claims against the Debtors as of the date of this Order, including all Entities listed in the Schedules as holding claims;

(i)     all parties to executory contracts and unexpired leases with any Debtor, using the last known address;

(j)     all parties to litigation with the Debtors using the last known address;

(k)     the Internal Revenue Service for the district in which the case is pending and, if required by Bankruptcy Rule 2002(j), the Securities and Exchange Commission and any other required governmental units; and

(l)     such additional Entities as deemed appropriate by the Debtors.

12.     With regard to those holders of claims listed on the Schedules, the Debtors shall mail one or more proof of claim forms (as appropriate) substantially similar to the Proof of Claim form attached hereto as Exhibit A, indicating on the form how the Debtors have scheduled such creditor's claim in the Schedules (including the identity of the Debtor, the amount of the claim and whether the claim has been scheduled as contingent, unliquidated or disputed).

7

13.    The Debtors are hereby authorized to provide supplemental mailings of the Bar Date Package at any time up to 20 days in advance of the applicable Bar Date as may be necessary in situations, including without limitation, where: (a) Bar Date Packages are returned by the post office with forwarding addresses; (b) certain parties acting on behalf of other parties in interest decline to pass along Bar Date Packages to these parties and instead return their names and addresses to the Debtors for direct mailing), and (c) additional potential claimants become known as a result of the Bar Date Notice process.  Notwithstanding the foregoing, the Debtors shall not be required to provide any additional notice to any claimant to whom the Debtors mailed a Bar Date Package in accordance with the terms of this Order and such Bar Date Package was returned to the Debtors as undeliverable without a forwarding address.

14.    The Debtors are permitted to establish supplemental bar dates, upon written consent of the Committee, and the Debtors shall advise the Court of any supplemental bar date by filing a supplemental bar date notice, which identifies the supplemental bar date and the claimants that are subject thereto, and provides 20 days notice of any supplemental bar date.

15.    Pursuant to Bankruptcy Rule 2002(l), the Debtors shall publish notice of the General Bar Date in substantially the form attached hereto as Exhibit C (the "Publication Notice") no later than 45 days before the General Bar Date in The Globe and Mail and The Wall Street Journal (national and global editions) and shall also post a copy of the Publication Notice, the Proof of Claim Form, and the Section 503(b)(9) Claim Form on the independent website maintained by the Claims Agent at http://chapter11.epiqsystems.com/nortel, which Publication Notice is hereby approved and shall be deemed good, adequate and sufficient publication notice of the General Bar Date.

16.   Any Entity that desires to rely on the Schedules will have the responsibility for determining that the claim is accurately listed in the Schedules.

17.   The Debtors and their Claims Agent are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Order.

18.   Notice provided by this Order to foreign creditors is sufficient under Bankruptcy Rule 2002(p).

19.   Entry of this Order is without prejudice to the right of the Debtors to seek a further order of this Court fixing a date by which holders of claims or interests not subject to the General Bar Date established herein must file such proofs of claim or interest or be barred from doing so.

20.   Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

21.   This Order is without prejudice to the Debtors' right to seek further orders of this Court to implement specific procedures for the reconciliation and/or resolution of claims against the Debtors including, without limitation, pursuant to the Cross-Border Claims Protocol.

22.   The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: August 4, 2009
      Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

9

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE OTHER
COMPANIES LISTED ON SCHEDULE "A" HERETO WITH RESPECT TO CERTAIN
PROCEEDINGS TAKEN IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF DELAWARE

Court File No: 09-CL-7951

---

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

Proceeding commenced at Toronto

---

### ORDER
### (Recognition of the U.S. Claims Bar Order)

---

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

153

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF NORTEL NETWORKS INC. AND THE OTHER COMPANIES LISTED
ON SCHEDULE "A" HERETO WITH RESPECT TO CERTAIN PROCEEDINGS TAKEN IN THE
UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

Court File No:  09-CL-7951

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

---

**MOTION RECORD**
**Recognition of various Orders**
**(returnable August 14, 2009)**

---

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants