# EXHIBIT 139

*In Re:*
*NORTEL NETWORKS INC., et al*

*ANTHONY LAW*
*February 3, 2014*
*Confidential*



**Ellen Grauer**
**COURT REPORTING**
Co. LLC

126 East 56th Street, Fifth Floor New York, New York 10022
PHONE: (212) 750-6434   FAX: (212) 750-1097
www.ELLENGRAUER.com

*Original File 106212B.TXT*
*Min-U-Script® with Word Index*

```
 1                LAW - CONFIDENTIAL
 2   I felt I understood it.  At the time I felt that
 3   sure, Nortel, right?  But now we are in this
 4   situation, of course now if you ask me, then I say
 5   oh my God, now I realize that it is so complicated,
 6   it's so many different entities and there are all
 7   sorts of implications.
 8              So if you ask me today, sure.  If I
 9   look back, I probably signed something that I did
10   not fully understand but at the time I thought I
11   understood it.
12              Q.   So let's take a look at the third
13   paragraph of this letter.
14              A.   Right.  Yes.
15              Q.   And it says:
16                   "As used in this letter, the
17                   term 'corporation' shall mean Nortel
18                   Networks Corporation, its
19                   subsidiaries and affiliates, their
20                   successors and assigns, and all of
21                   their past and present officers,
22                   directors, employees and agents (in
23                   their individual and representative
24                   capacities), in every case,
25                   individually and collectively."
```

```
 1                    LAW - CONFIDENTIAL
 2          A.   Yes.
 3          Q.   Was it your understanding at the
 4   time you signed the severance agreement that all of
 5   the Nortel entities were responsible to you --
 6          A.   Yes.
 7          Q.   -- for your severance?
 8          A.   Right.
 9          Q.   That was your understanding at the
10   time?
11          A.   Again, frankly, at the time I did
12   not read this carefully, okay?  I did not because
13   as soon as -- as soon as I see the term corporation
14   means Nortel Networks, great.  That's all I cared
15   about.
16          Q.   Let's put aside the letter for a
17   moment.
18          A.   Okay.
19          Q.   And let's talk about what you
20   understood, whether the letter says it or not.
21          A.   Yes.
22          Q.   At the time you were terminated
23   from Nortel, was it your understanding that all of
24   the Nortel entities were responsible to you for
25   your severance?
```

```
1            LAW - CONFIDENTIAL
2   mentions KM's website is another excellent website
3   for you to obtain information about what is going
4   on from a legal perspective.
5           A.    Right.
6           Q.    Then she gives the URL for the
7   website.
8           A.    Yes.
9           Q.    Did you ever look at KM's website
10  to get information about Nortel?
11          A.    Very rarely.
12          Q.    Why is that?
13          A.    Because a lot of times there were
14  quite a few people that really was dedicated to
15  this group and they would attend all the web ** and
16  read all the material and then they would post
17  summaries and all that.  So I thought why would I
18  be wasting my time, it's the same information
19  anyway, so, frankly, I rarely go to those websites
20  and look.
21          Q.    So basically you could save a lot
22  of time by letting Paula Klein or people like that
23  read it and then summarize it?
24          A.    Yeah, exactly.
25          Q.    And then you would read the
```

```
 1             LAW - CONFIDENTIAL
 2             I have been told to follow the Canadian
 3   process so I follow the Canadian process.
 4             Q.   When you use the term the U.S. has
 5   a claim date, you're talking about the bar date in
 6   the U.S.?
 7             A.   Yes, yes.
 8             Q.   You knew that was the deadline to
 9   file claims in the U.S.?
10             A.   That's right, that's right.
11             Q.   In fact that was posted on
12   LinkedIn?
13             A.   That's right.  So I knew about
14   that, but again I thought that it has nothing to do
15   with me.
16             Q.   And when you say that you were
17   told if you're a Canadian, follow the Canadian
18   process, is that Koskie Minsky who is telling you
19   that?
20             A.   Well, it was not only Koskie but
21   also even --
22             Q.   People on LinkedIn?
23             A.   Yeah, one of the exhibits that you
24   just referred to, Paula Klein's new members
25   message, if you read it, it's Nortel Canadian,
```

```
 1                LAW - CONFIDENTIAL
 2            So it wouldn't apply to me.  So even if
 3   I hear that and even if you are showing me now, in
 4   my mind-set that I had at the time, I would not.
 5            Q.   Your view of the world at this
 6   period of time is that it's just one big Nortel
 7   group?
 8            A.   Yes.
 9            Q.   And whether you're an employee in
10   the U.S., in Canada, in Europe, it's all -- you're
11   all sharing the same?
12            A.   Yes.
13            Q.   So I don't understand if you are
14   being told by the lawyers that you can't just --
15   some group of people cannot just file in Canada?
16            A.   Right.
17            Q.   And cover the sharing of one pool?
18            A.   Right.
19            MS. MERSKY:  Objection.
20            BY MR. ROSENTHAL:
21            Q.   Why didn't you do that --
22            THE WITNESS:  Let him finish.
23            BY MR. ROSENTHAL:
24            Q.   -- as affecting how you viewed
25   this Nortel group?
```

```
 1              LAW - CONFIDENTIAL
 2         MS. MERSKY:  Objection to the form of
 3   the question because there is no statement and
 4   there is no reference to sharing of the pool, as
 5   you defined in that question.
 6         MR. ROSENTHAL:  I am referring to his
 7   prior testimony but you have your objection as to
 8   form.
 9         BY MR. ROSENTHAL:
10         Q.   Go ahead.
11         A.   Okay.  So again, I will point to
12   my previous statements.  You cannot just pose a
13   hypothetical question like that and say if somebody
14   say you have to file, then you file.  I'm sorry, I
15   can't answer those questions.
16              But if you put it back into the context
17   that I have been emphasizing through my several
18   previous statements, everything has to be put in
19   the context, right?
20              At the state of mind at the time my
21   head was, if you ever work in the U.S., then it
22   applies to you.  But I never work in the U.S.  My
23   whole employment in Nortel, as far as I am
24   concerned, because nobody ever told me that I have
25   ever been on the U.S. payroll, I am a Canadian on
```

```
 1              LAW - CONFIDENTIAL
 2   the Canadian payroll so I follow the Canadian
 3   process.  So why would I go and file in the U.S.?
 4   What's my basis?  I have absolutely no basis to
 5   file.
 6           Q.   So going back, in front of you you
 7   have Exhibit 13.
 8           A.   Yes.
 9           Q.   Where Ms. Klein writes at the
10   bottom of the first page, if you are on U.S.
11   payroll for Nortel or if you believe you have a
12   claim, is it fair to say you just ignored the "or"
13   and just considered the U.S. payroll?
14           A.   Yes, as I mentioned before, again,
15   I don't know about any -- I don't know about other
16   people, whether they will read all the posting in
17   LinkedIn word for word top to bottom to read
18   everything, the way I read it is, I read the
19   headline, then I read the key points.
20                As soon as I deduct in my mind that it
21   doesn't impact me at all, I don't read the details.
22                So as soon as I read well, I didn't get
23   a letter; secondly, oh, you work in the U.S.
24   before?  No.  Oh, the Canadian wait for process,
25   it's not defined yet.  There's three very key piece
```

```
 1            LAW - CONFIDENTIAL
 2   counsel would be -- would be notifying me and
 3   that's why the court appointed them, to look after
 4   my interest, right?
 5            Q.   Take a look at page 31 of Exhibit
 6   18.
 7            A.   Yes.
 8            Q.   Let's look at number 206.  See
 9   where it says:
10                "The webcast presentation
11                contents are applicable only to
12                Canada and do not address the issues
13                associated with the potential or
14                actual loss of U.S. health or other
15                benefits.  Koskie Minsky's
16                representation for pensioners and
17                former employees is limited to the
18                Canadian courts.  To the best of our
19                knowledge, there is no law firm
20                performing a similar function in the
21                U.S. courts."
22                Were you aware in 2009 that Koskie
23   Minsky was not representing you with respect to the
24   United States?
25            A.   I was aware, but I didn't -- I
```

```
1                  LAW - CONFIDENTIAL
2    didn't find it relevant because I didn't know that
3    I have to submit a claim in the U.S.
4              Q.   But you were --
5              A.   So as far as I am concerned, as
6    long as I submit a claim in Canada, everything is
7    going to be taken care of because -- and I know
8    you're trying to keep saying -- asking me why I'm
9    not filing in the U.S.  Because I haven't had the
10   knowledge that I have to do so.  My assumption is
11   there is only one -- there is one place that I have
12   to claim, based on all the information that I hear,
13   and that's to follow the Canadian process, and as
14   long as I do that, the courts and the lawyers and
15   all these other people that have been involved,
16   assuming they protect my interest, will sort things
17   out for me.
18             Q.   So you talk about you expected the
19   lawyers to let you know if you should file a claim
20   in the U.S.?
21             A.   No, that's not what I said.
22             Q.   You said it two questions ago.
23             A.   Right.  So I pay my lawyers to let
24   me know if I have to file in the U.S.  I did not
25   say that if I had a claim in the U.S.  I said if I
```

```
 1                   LAW - CONFIDENTIAL
 2             A.    Yes, but again, I did not -- I did
 3   not know at the time that I have to file in the
 4   U.S.  I thought that one filing is enough.  I
 5   thought that the Canadian process will take care of
 6   all the -- I don't know how they are allocating
 7   assets or where the money is, the courts are going
 8   to sort it out themselves.
 9             And that was why we hear in the news of
10   all this court liaison and all that going on
11   between the U.S. and Canada.  Why would I have to
12   get involved in that?
13             Q.    Is there any advice that Koskie
14   Minsky ever gave you that said the U.S. and the
15   Canadian courts are going to sort it out between
16   each other?
17             A.    No, no.  That's the assumption
18   that I have based on what I'm reading.
19             Q.    And knowing that Koskie Minsky was
20   not advising you as to anything other than the
21   Canadian court process --
22             A.    Right.
23             Q.    -- did you ever consider getting a
24   lawyer to help advise you with respect to the U.S.
25   court process?
```

```
 1              LAW - CONFIDENTIAL
 2   information came from Koskie Minsky, right?
 3          A.   If she said that's what KM is
 4   telling people, yes, because she talk about all
 5   sorts of other things also, right?
 6          Q.   Did Paula Klein ever post anything
 7   that you can think of today that reflected advice
 8   about the U.S. court process?
 9          A.   No.
10          Q.   Did anybody else on LinkedIn ever
11   post any advice that you read about the U.S. court
12   process?
13          A.   Okay.  Again, I'll put it into
14   perspective.  I cannot absolutely say yes or no to
15   those answers, even the previous question, because
16   I do not profess that I remember everything that
17   people post.
18          Q.   I'm just asking if you remember
19   anything.
20          A.   And the fact that again, as soon
21   as I read U.S., my mind turn off.  It's none of my
22   business.  Right?  As soon as -- I see U.S. court
23   proceedings, forget it, right?  I'm waiting for my
24   Canadian process.  That's it.
25               THE REPORTER:  Could we take a break
```