# EXHIBIT 143

# PROOF OF CLAIM

United States Bankruptcy Court for the District of Delaware
Nortel Networks Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5075
New York, NY 10150-5075

| In Re: | Chapter 11 |
|---|---|
| Nortel Networks Inc., et al. Debtors. | Case No. 09-10138 (KG) Jointly Administered |

| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
|---|---|
| Nortel Networks Cable Solutions, Inc. | 09-10152 |

Filed: USBC - District of Delaware
Nortel Networks Inc., Et Al.
09-10138 (KG)                0000006233

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. A separate claim form must be used for claims asserted under 11 U.S.C. § 503(b)(9).

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)

Dietmar Wendt
c/o Rachel B. Mersky, Esquire
Monzack Mersky McLaughlin and Browder, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE 19801

Telephone number: (302)656-8162  Email Address: rmersky@monlaw.com

□ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

**Name and address where payment should be sent** (if different from above)

Dietmar Martin Wendt
IM Oberen Kienle 96
Stuttgart 70184
Germany
Telephone number: 49-162-411-3248   Email Address: dietmar.wendt@gmail.com

□ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

□ Check this box if you are filing a claim against any of the Canadian Debtors for the same claim herein in their creditor protection proceedings pending in Canada.

1. **Amount of Claim as of Date Case Filed:** $ 1,418,626.58 US
   (See itemization attached hereto as Ex. "A")
   If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

   If all or part of your claim is entitled to priority, complete item 5.

   □ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

2. **Basis for Claim:** Agreement dated November 11,2008 (Attached hereto as Ex. "B" and Statement of Liability attached hereto as Ex. "C")
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff: □ Real Estate  □ Motor Vehicle  □ Other
   Describe: _____

   Value of Property: $_____  Annual Interest Rate _____%

   Amount of arrearage and other charges as of time case filed included in secured claim, if any:

   $_____  Basis for perfection: _____

   Amount of Secured Claim: $_____  Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

   Specify the priority of the claim:

   □ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

   ☒ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

   ☒ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

   □ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

   □ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

   □ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

   Amount entitled to priority:

   $ 10,950.00

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*
   DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
   If the documents are not available, please explain: _____

**FOR COURT USE ONLY**

FILED / RECEIVED
DEC 1 4 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 03.12.09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# <u>EXHIBIT A</u>

Dietmar Wendt
Im Oberen Kienle 96
70184 Stuttgart
Germany
Dietmar.wendt@gmail.com
Cell Phone: +49 162 411 3248

**Severance claim against Nortel Networks**
**Period: 1st of January 2009 – 30th of June 2010**

Date: 3rd. of December 2009

| | | |
|---|---|---|
| Base salary for 18 months: | CAD $ 765,000.00 | US $ 732,196.80 |
| 2008 AIP Bonus payment (80%) CAD $ 408,000.00 x 1,2 IPF (individual performance factor ) based on best performance (signings, revenue, operating profit) and highest achievement rates of all business units | CAD $ 489,600.00 | US $ 468,605.95 |
| Medical insurance benefits cigna plan 21,000.00 CAD $ per Person / 18 months Dietmar Wendt Vibeke Nielsen-Wendt Kristina Wendt Carl Christian Wendt | CAD $ 84,000.00 | US $ 80,398.08 |
| Pension Benefits Capital accumulation and retirement program 6% Nortel match out of 18 months base salary (CAD $ 45,900.00) as well as out of 2008 AIP Bonus (CAD $ 29,376.00) | CAD $ 75,276.00 | US $ 72,048,17 |
| Housing differential Assistance 6 months x CAD $ 3,372.00 | CAD $ 20,232.00 | US $ 19,364.45 |
| Legal advice | CAD $ 2,500.00 | US $ 2,392.80 |
| Outplacement service | CAD $ 25,000.00 | US $ 23,928.00 |
| Nortel Corporate Amex Credit Card Credit Balance | CAD $ 1,029.02 | US $ 984.90 |

| | | |
|---|---|---|
| Relocation Costs Outstanding EUR 3.369,30 | CAD $ 5,295.55 | US $ 5.068,48 |
| Flight ticket to Germany for Dietmar Wendt | CAD $ 3,750.00 | US $ 3,589.20 |
| Administrative claim | CAD $ 10,500,00 | US $ 10,049.76 |
| **Total:** | **CAD $ 1,482,182.57** | **US $ 1,418,626.58** |

Exchange rate: CAD $ → US $ from 3rd of December 2009: 0,95712

# EXHIBIT B



# N⊘RTEL

**CONFIDENTIAL-SPECIAL HANDLING**

November 11, 2008

Mr. Dietmar Wendt
195 West Mall
Toronto, Ontario
M9C 5K1

Dear Dietmar:

This letter ("Agreement") records the arrangements between you and Nortel Networks Limited concerning the cessation of your employment. The Agreement shall bind and inure to the benefit of each party and their respective heirs, successors and assigns. You acknowledge that this Agreement contains modifications to the arrangements provided to you in an earlier document on or about October 16, 2008 concerning the cessation of your employment.

1.   As used in this Agreement, the term "Corporation" shall mean Nortel Networks Corporation, its subsidiaries and affiliates, their successors and assigns, and all of their past and present officers, directors, employees and agents (in their individual and representative capacities), in every case, individually and collectively.

2.   Effective as of the close of business on December 31, 2008, your active employment relationship with the Corporation will cease (the "Employment Termination Date"). You cease to act as an officer and/or director of the Corporation and any of the Corporation's subsidiaries and affiliates on December 31, 2008, and the Corporation will take all necessary steps to remove you from all such positions.

3.   You understand and agree that your designation of Reporting Insider pursuant to Corporate Policy 320.28 of the Corporation (and under applicable Canadian/U.S. securities legislation for Reporting Insiders), shall cease effective 12:01 a.m. on January 1, 2009. Notwithstanding the fact that you no longer have this designation, if you are in possession of material non-public information relating to the Corporation, you are prohibited from trading in securities of the Corporation (or informing another person of the material non-public information) in accordance with applicable laws. You further understand that you are required to amend your insider profile within 10 days of December 31, 2008 on the Canadian System for Electronic Disclosure by Insiders (SEDI) to indicate that you are no longer a Reporting Insider of the Corporation. You should contact the Insider Reporting Department at (905) 863-1220 and fax (905) 863-8524 for assistance in amending the SEDI profile.

4.   Conditional upon your compliance with all terms and conditions of this Agreement, including, without restriction, paragraph 10 of this Agreement, the Corporation shall:



Page 2

*(Severance Allowance)*

(a)     pay you the sum of CAD$19,615.39 (Canadian dollars) bi-weekly, less applicable deductions, for the period commencing on January 1, 2009 and terminating June 30, 2010 ("Salary Continuation Period");

*(Vacation Benefit)*

(b)     pay you, on or before January 30, 2009 a lump sum amount equivalent to 28 days of base salary representing all of your current accrued but unused vacation benefit, with no further vacation accrual subsequent to December 31, 2008;

*(2008 Nortel Networks Limited Annual Incentive Plan ("AIP"))*

(c)     determine your eligibility for any AIP payment for calendar year 2008 in accordance with the terms and conditions of the 2008 AIP. Eligibility shall not be construed as a right to any payment;

*(Insurance Benefits)*

(d)     continue your participation during the Salary Continuation Period in medical, life insurance and dental insurance, subject to the provisions of the Cigna International Plan, as applicable, for you and any of the dependents currently covered; you shall continue to make any required contributions for such benefits at the rates applicable for senior executive employees occupying positions similar to that you occupied with the Corporation through the deductions authorized in paragraph 4(a);

*(Pension benefits)*       6% matched by Nortel

(e)     continue your participation in the Capital Accumulation and Retirement Program (CARP) during the Salary Continuation Period, pursuant to the terms of the Northern Telecom Managerial and Non-Negotiated Pension Plan (the "Pension Plan") and the changes to the Pension Plan which became effective January 1, 2008. Your final Pension Plan benefits will be calculated in accordance with the Pension Plan provisions that apply to you as of the date of determination;

*(Long Term Incentives)*

(f)     consider you ineligible for consideration for any future grant(s) of stock options, restricted stock units ("RSUs") and performance stock units ("PSUs"). Your rights with respect to any outstanding stock options and RSUs will be determined in accordance with the applicable Nortel equity plans and applicable Instruments of Grant and/or Instruments of Award. Subject to any applicable trading restrictions that may restrict your ability to trade Nortel securities, you will have the right to exercise any vested Nortel stock options or have any vested RSUs settled as set forth in Exhibit A in



Page 3

accordance with the terms of the applicable instruments of grant/award, equity plan(s) and any other relevant documents governing the options and RSUs. In addition, you acknowledge that, in certain circumstances, you agree that you will, if required by Nortel in its sole discretion, pay to Nortel an amount in cash equal to; (i) the amount by which the market value of the shares on the date of exercise of the options exceeds the exercise price (in the case of options); and (ii) the amount (subject to certain adjustments) equal to the number of RSUs that vested during the applicable period multiplied by the market value of the shares on the applicable settlement date (in the case of RSUs), all in accordance with the terms of the applicable instruments of award/grant and any other documents that govern. All outstanding unvested PSU's previously granted to you shall be forfeited and cancelled for no consideration in accordance with the applicable equity plan and instrument of award;

*(Investment Plan)*

(g)    following your completion of the necessary documentation, distribute your account balance in accordance with the provisions of the Nortel Networks Investment Plan. Your right to contribute to and participate in the Investment Plan will cease at the end of the Salary Continuation Period;

*(Outplacement Services)*    calculated by Nortel with 25,000.- $

(h)    make available to you, should you elect, executive outplacement services to assist you in securing new employment and pay the professional fees for such services as are reasonably incurred;

*(Income Tax Preparation)*

(i)    pay the cost of personal income tax preparation by a service provider selected by you for the tax years 2008, 2009 and 2010;

*(Taxation)*

(j)    with respect to any monies or monetary equivalents to be paid hereunder, in its reasonable discretion withhold appropriate amounts concerning any and all applicable federal and provincial taxes.

*(Certain Relocation Related Expenses)*

(k)    arrange and pay for the shipment of your household goods from Toronto to your place of residence in Germany, by Nortel's vendor for international moves, up to an amount not to exceed CAD$36,000;

arrange and pay for the air transportation for you and your family, up to an amount not to exceed CAD$15,000;

The payment of the aforementioned expenses are conditioned upon any new employer not having any policy/procedure that would cover such expenses, or for good reason not agreeing to pay for such expenses, and finally any payment sought from Nortel is subject to such expenses being incurred within 8 months from the Employment Termination Date and that upon request that you provide any documentation/receipts concerning such expenses that are satisfactory to the Corporation.; and

*(Housing Differential Assistance ("HDA"))*    6 month

(l)    continue HDA through the Salary Continuation Period, provided you continue to reside in your current Toronto residence pursuant to the HDA policy.

*(Independent Legal Advice)*      •

(m)    pay the cost of independent legal advice relating to this agreement to a maximum of $2,500.

*(School Assistance)*

(n)    the sum of up to $10,000 (grossed up) for boarding fees associated with your daughter's continued attendance of her current school for the completion of the 2008 – 2009 school year, subject to the receipt of appropriate invoice with respect thereto with sufficient detail as determined by the Corporation, in its sole discretion.

5.    You currently hold a work permit which authorizes you to work for the Corporation; however, it is understood and agreed that on Employment Termination Date, you will no longer be in an active employment relationship with the Corporation. Further, you have been advised that it may be appropriate for you to change your status in Canada to that of a visitor and obtain a Visitor Record and any other appropriate immigration documentation as may be required such as study permits for your children. We recommend that you seek the assistance of a lawyer to clarify your immigration status for you and your family members for the duration of your stay to Canada. Nortel's immigration lawyer is available to you for advice and assistance.

6.    All of the Corporation's compensation, benefits and perquisites not expressly extended to or preserved for you pursuant to this Agreement shall be terminated effective 12:01 a.m., January 1, 2009.

7.    It is agreed and understood that for the purposes of the Nortel Networks Corporation Change in Control Plan ("CIC Plan"), "Termination Date" as defined in the CIC Plan is December 31, 2008. In the event that in the 30 day period after December 31, 2008, you become eligible for



the Entitlements (as defined under the CIC Plan) provided under the CIC Plan, this Agreement shall cease and be replaced by the terms and conditions of the CIC Plan.

8.   The Corporation shall indemnify you, and advance any reasonable legal fees and expenses, to the extent permitted by, and in accordance with, section 124 of the Canada Business Corporations Act (the "CBCA") and the Corporation's By-Laws (the "By-Laws"). You shall repay such fees and expenses if and to the extent it is determined that you do not fulfill the conditions set forth in subsection 124(3) of the CBCA or the By-Laws. Subject to and without limiting the foregoing, the Corporation's legal counsel will represent you in respect of any civil, criminal, administrative, investigative (including any internal investigation or independent review being conducted by the Corporation's Board of Directors or a Committee thereof) or other proceeding in Canada, the United States or other applicable jurisdiction in which you are involved (including as a witness) because of your association with the Corporation (hereinafter, the "Matter"). However, in the event that the Corporation's counsel cannot represent you in the Matter because of a conflict, the Corporation agrees to advance monies to pay your reasonable and actual legal expenses in the Matter provided that you will not settle the Matter, retain defense counsel or expert witnesses or consultants, or incur any defense costs without obtaining the prior written consent of the Deputy General Counsel and Corporate Secretary, which consent will not be unreasonably withheld.

9.   You shall reconcile and settle your employee expense account, and any advances made to you by the Corporation, as soon as possible, but in any event no later than January 30, 2009 and the Corporation shall in the normal course reimburse you for any business expenses incurred by you through the Employment Termination Date.

10.   You shall continue to maintain the confidentiality of all of the Corporation's trade secrets and confidential or proprietary commercial, technical or other information; and specifically you agree that you shall not at any time during or following your employment with the Corporation, disclose, other than to the Corporation's authorized personnel, or otherwise use for non-Corporation purposes, any confidential or proprietary information (whether or not a trade secret) relating to an activity of the Corporation. You shall also continue to maintain the confidentiality of any dealings, transactions or affairs of the Corporation which may have come to your knowledge in any manner during your employment.

Further, you agree not to reveal, disclose, or cause to be revealed or disclosed, anything with respect to the Corporation that is injurious or harmful of any of its interests, or the interests of its employees, officers or directors. In addition, during the period January 1, 2009 through to the end of the Salary Continuation Period, you:

(i)   shall issue no public statement on the business affairs, policies or the like of the Corporation without the prior written consent of the Deputy General Counsel and Corporate Secretary and, without limiting the foregoing, you shall not in any way disparage the Corporation or any director, officer and/or employee of the Corporation from the date of receipt of this Agreement to and including the last day of the Salary Continuation Period; and



(ii)     shall not, on behalf of yourself or others, directly or indirectly, recruit, induce or solicit or attempt to recruit, induce or solicit any individual who is supplying services to the Corporation, whether as an employee, contractor, consultant or otherwise, to terminate their employment or contractual arrangements with the Corporation; and

(iii)    shall not become and employee, contractor, consultant, representative or in any manner or capacity accept any assignment, project or work for a company in competition with the Corporation, including but not limited to any of the companies identified on the Corporation's competitor list which was reviewed with you on November 5, 2008 (the "Competitor List"), without the prior written approval of the Deputy General Counsel and Corporate Secretary, provided that such approval shall not be unreasonably withheld.

The Corporation, on its own behalf and on behalf of its employees, officers and directors agrees not to reveal, disclose or cause to be revealed or disclosed, anything with respect to you that is injurious or harmful to any of your interests and, without limiting the foregoing, shall not in any way disparage you.

Nothing in this Agreement or otherwise shall prevent you or the Corporation from (x) responding to incorrect, disparaging or derogatory statements to the extent reasonably necessary to correct or refute such statement or (y) making any truthful statement to the extent necessary in connection with the circumstances covered by clauses (i), (ii) and (iii) of the next paragraph.

Notwithstanding any of the foregoing, the provisions of this paragraph 10 shall not apply (i) when disclosure is required by law or by any court, or administrative or legislative body (including any committee thereof) with actual or apparent jurisdiction to order you or the Corporation to disclose or make accessible any such information, (ii) with respect to any litigation involving this Agreement or any other agreement between you and the Corporation, (iii) in connection with any assistance provided by you pursuant to paragraph 13 hereof or (iv) as to information that becomes generally known to the public or within the relevant trade or industry other than due to a violation of this paragraph 10.

Also, you hereby acknowledge and agree that until your Employment Termination Date you, as a senior executive of Nortel, are expected to continue to perform your responsibilities at an exemplar level while displaying the highest professional standards.

11.     The Corporation's obligations under paragraphs 4 (a), (c), (d), (e), (f), (g), (h), (i), (k) and (l) will terminate forthwith if you become an employee, consultant, contractor or representative or any direct competitor of the Corporation unless the Deputy General Counsel and Corporate Secretary provides prior written approval of such engagement.

12.     Upon the occurrence of any contingency which may affect your rights in or to any subsequent payment or benefit, or affects the Corporation's rights under this Agreement, including without limitation, your obtaining new employment, you shall, within ten (10) days of such



occurrence, provide written notice to the Corporation of that event. Such notice shall be sent in writing to the Deputy General Counsel and Corporate Secretary

13.   You shall make available to the Corporation, upon reasonable notice and at a time convenient to you, advice, assistance and information that shall include, but not be limited to, offering and explaining evidence, providing sworn statements, participation in discovery, and trial preparation testimony as may be deemed necessary by the Corporation concerning the Corporation's position in any legal proceedings involving issues brought against or initiated by the Corporation of which you have knowledge. In the event it is necessary for you to provide the aforementioned services, then the Corporation shall reimburse you for authorized, reasonable and documented travel expenses, including, but not limited to, transportation, lodging and meals. The Corporation acknowledges that attorneys' fees and associated expenses are reimbursable if the assistance you provide is related to any Matter, as set forth in paragraph 8 hereof.

14.   You have returned to the Corporation any and all property of the Corporation that was in your possession and/or subject to your control, whether such material shall be written instruments or tapes in electronic and/or recorded format.

Nortel Networks Corporate Procedure 206.01 states that "all documents, messages or data composed, sent, or received through the network of Nortel Networks in any form are and remain at all times the property of Nortel Networks". In addition, all work product that you have produced during your employment with the Corporation is the property of the Corporation. Therefore, all information, (however recorded or stored) ("Information") in your possession and/or that you have created in the course of your employment with the Corporation (whether or not currently in your possession or control) is the property of the Corporation. Information does not include copies in your possession of your records of employment and/or financial dealings between you and the Corporation.

The Corporation is a party to certain civil lawsuits and other investigations and may need access to certain Information for those matters as well. Therefore, you took affirmative steps to preserve all applicable information in your possession, custody and control (including information controlled by your assistant, if any), have left all such information in the possession and custody of the Corporation, and do not have any Information in your possession or custody.

The Information will be used by the Corporation for general business purposes and may also be provided to regulatory authorities in response to their requests or disclosed in any relevant private litigation to which the Corporation is a party. Also, the Information may be used by and provided to entities within the Corporation's group of companies and/or the Corporation's external advisors. In some instances, the recipients of this Information will be located outside your geographic area. To the extent that the information contains any personal information, you consent to the collection, transfer and disclosure of that information by the Corporation to subsidiaries and affiliates of the Corporation, third parties and regulatory authorities within



Page 8

and outside of your geographic area for the purposes set out above, and the Corporation shall advise you of any such transmittal.

15.   In consideration of the monies and other benefits to be provided to you as set forth herein, you hereby fully and completely release the Corporation, its subsidiaries and affiliates, and their respective directors, officers and employees, to the extent permitted by law, from any and all real or pretended claims, causes of actions, rights, damages or injuries of any nature whatsoever you may have had or now have, whether known or unknown, (except for promises and commitments contained or preserved herein), arising from or connected with your employment with the Corporation or the termination thereof, including any and all such claims, causes of action, rights, damages or injuries arising under any statute, including, without limitation, the applicable labour legislation in Ontario or at common law. Furthermore, you understand that this release shall be binding upon you and your heirs, administrators, representatives, executors, successors, and assigns and its enforceability shall not be challenged.

You acknowledge that you have read this letter and that you understand all of its terms and have executed it voluntarily with full knowledge of its significance. Further, you acknowledge that you have had an adequate opportunity to review and consider the arrangements, including at your discretion, the right to discuss this Agreement with legal counsel of your choice. Also, you acknowledge that you understand you are hereby granting to the Corporation a full and final release as set forth above. In addition, you agree that your receipt of payments and benefits described in this Agreement are contingent upon you executing on or promptly following the Employment Termination Date, and returning to Deputy General Counsel and Corporate Secretary, a release in the Form of Exhibit B, which is attached and made a part of this Agreement.

16.   This Agreement constitutes the entire understanding of the parties with respect to your employment, including the cessation of your employment, and there are no promises, understandings or representations other than those expressly set forth or preserved herein. This Agreement may be modified only with a written instrument duly executed by you and the Corporation.

17.   This Agreement shall be governed by the laws of Ontario, Canada without regard to any provisions concerning conflict of laws. This Agreement may be delivered by facsimile and executed in counterparts, all of which, taken together, shall constitute one and the same original instrument.

18.   The parties agree that should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

19.   If you have not returned an executed copy of this Agreement, by facsimile or the original, to Deputy General Counsel and Corporate Secretary by the close of business on December 12,

Page 9



2008, then the terms and conditions set forth in this Agreement shall be withdrawn as of that time and date.

20. References to the Deputy General Counsel and Corporate Secretary contained herein shall mean, as applicable, the Deputy General Counsel and Corporate Secretary prior to December 31, 2008 and the Chief Legal Officer after December 31, 2008.

Please acknowledge that the foregoing correctly and completely sets forth your understanding of the arrangements, and your acceptance hereof, by signing, dating and returning to the Deputy General Counsel and Corporate Secretary, the attached second copy of this Agreement.

Yours truly,

Mike S. Zafirovski

For and on behalf of Nortel Networks Limited

_____
Gordon A. Davies
Deputy General Counsel and Corporate Secretary

_____
Dietmar Wendt

9 . 12 . 2008
Date

Attach. Second copy of this Agreement

**DRAFT – SUBJECT TO CHRC APPROVAL**

**Severance Arrangements**

**Date:**          October 9, 2008
**Name:**       Dietmar Wendt (German citizen; Canadian employee)
                   GID #5082537

**Personal Information:**
Date of Birth:                        December 17, 1959
Date of Hire:                         May 1, 2006
Notice Date:                          November 1, 2008
Cease Performing Duties:              December 31, 2008
Employment Termination Date:         December 31, 2008
Severance Period:                     January 1, 2009 to June 30, 2010 (18 months)
Base Salary:                          CAD$510,000

Severance Pay and Benefits
- 18 months severance payments, paid bi-weekly for an aggregate total amount of  CAD$765,000.
  - 1st payment begins on first payroll after termination date.
- 18 months continued life insurance & health coverage (Cigna health plan).
- Pay out CAD$54,923 for 28 days outstanding vacation.

2008 Annual Incentive Plan
- Payout of 2008 AIP as per plan.

Long Term Incentives
- Stock Options – Stock Options continue to vest through severance period, and can be exercised up to and including 90 days after the end of the severance period.  All unexercised (vested & unvested) stock options will expire 90 days after the end of the severance period.
- Restricted Stock Units – Restricted Stock Units continue to vest through severance period.
- Performance Stock Units –forfeits all outstanding and unvested performance stock units as at employment termination date.
- Equity vest schedule – (attached)

Relocation Benefits
- Within 6 months, relocation benefit – provided your new employer does not provide relocation assistance.
- All reimbursed expenses for relocation are considered taxable income to the employee and will be reimbursed net of taxes.
  - Relocate household goods back to Germany ~CAD$25K
  - Flight for self & family to Germany~CAD$15K
  - Housing Differential Assistance payments as per agreement will continue throughout the severance period if you remain at your current residence in Toronto.
  - School assistance of CAD$11,500 per year for your 2 children will stop after the completion of the 2008/09 school year.

Capital Accumulation & Retirement Plan (CARP)
- You participate in the Defined Contribution Pension Plan and the Investment Plan.
- Both plans are administered through Sun Life Financial.  The contact is 416-496-7310 or 1-800-771-7940
- SunNet Website:  www.sunlife.ca/member

Immigration / Work Permit:
- Work Permit valid until December 31, 2008.
- By Jan 1, 2009, you and your wife must receive a visitor's permit and your 2 children each a school permit to be able to remain in Canada.

Outplacement Services
- Eligible for outplacement services.

Other Terms & Conditions
- Tax preparation for 2009 to 2010 will be provided to you through a tax preparer as designated by the Corporation.
- Non-solicit / Non-compete

# EXHIBIT C

## STATEMENT OF LIABILITY

To the extent that the Debtor is a subsidiary or affiliate of Nortel Networks Corporation or a successor or assign of a subsidiary or affiliate of Nortel Networks Corporation the Debtor is liable to the claimant for all damages asserted in the claim.

**FedEx Express**

The World On Time ®

MON - 14 DEC A11
STANDARD OVERNIGHT
10017
NY-US
EWR
Part # 156297-436 RIT 08/09

RECEIVED
DEC 1 4 2009

Large

fedex.com 1.800.GoFedEx 1.800.463.3339

**FedEx US Airbill**

Express

**RECIPIENT: PEEL HERE**

FedEx Tracking Number  8651 8157 4711

**1 From** This portion can be removed for Recipient's records.

Date 12/11/09

Sender's Name  Rachel B. Mersky

Company  MONZACK MERSKY MCLAUGHLIN ET AL

Phone 302-456-8162

Address 1201 N ORANGE ST STE 400

City WILMINGTON  State DE  ZIP 19801-1167

**2 Your Internal Billing Reference** 5736-1

**3 To**

Recipient's Name  Nikki Networks Inc Claims

Phone

Company  Chris S Jenkins Bankruptcy Solutions LLC

Address 757 Third Ave

Address 3rd Flr

City  State NY  ZIP 10017

8651 8157 4711

0277038639

0215

5733

51.9

United States Bankruptcy Court for the District of Delaware
Nortel Networks Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5075
New York, NY 10150-5075

# PROOF OF CLAIM

Filed: USBC - District of Delaware
Nortel Networks Inc., Et Al.
09-10138 (KG)                    0000006277

| In Re: | Chapter 11 |
|---|---|
| Nortel Networks Inc., et al. | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Alteon WebSystems, Inc. | 09-10140 |

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

Lauren Flaherty
c/o Rachel B. Mersky, Esquire
Monzack Mersky McLaughlin and Browder, P.A.
Wilmington, DE 19801

Telephone number (302) 656-8162  Email Address: rmersky@monlaw.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim
Number:_____
      (If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Lauren Flaherty
2019 Pacific Avenue
San Francisco, CA 94109

Telephone number:          Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ 1,228,433.00
(See Summary of Claim attached hereto as Ex. A)
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete Item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

2. Basis for Claim: Agreement (Attached hereto as Ex. B)
(See instruction #2 on reverse side.)  (Statement of Liability attached hereto as Ex. C)

3. Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____

Value of Property: $_____ Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any:

$_____ Basis for perfection: _____

Amount of Secured Claim: $_____ Amount Unsecured: $_____

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☒ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

Amount entitled to priority:

$ 10,950.00

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

FILED / RECEIVED

DEC 15 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 12-11-09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. Lauren Flaherty |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Exhibit A

SUMMARY OF CLAIM

| | |
|---|---|
| Severance Allowance | $ 772,615 |
| AIP for 2008 | $ 446,400 |
| Insurance Benefits | TBD |
| Pension Benefits | TBD |
| Outplacement Services | TBD |
| Income Tax Preparation Claim for 2010 | TBD. |
| Local Equalization Payments | $    42,439. |
| School Assistance | $    22,988. |

| | |
|---|---|
| Non Equity Claim Value | $1, 284,439  CAD |
| US Equivalent (Based on December average of 0.9564 rate) | $1, 228,433 |

# __Exhibit B__



# N✪RTEL

**CONFIDENTIAL-SPECIAL HANDLING**

November 6, 2008

Lauren Flaherty
45 Elm St.
Toronto, Ontario
M4W 1N6

Dear Lauren:

This letter ("Agreement") records the arrangements between you and Nortel Networks Limited concerning the cessation of your employment. The Agreement shall bind and inure to the benefit of each party and their respective heirs, successors and assigns.

1.      As used in this Agreement, the term "Corporation" shall mean Nortel Networks Corporation, its subsidiaries and affiliates, their successors and assigns, and all of their past and present officers, directors, employees and agents (in their individual and representative capacities), in every case, individually and collectively.

2.      Effective as of the close of business on December 31, 2008, your active employment relationship with the Corporation will cease (the "Employment Termination Date"). You cease to act as an officer and/or director of the Corporation and any of the Corporation's subsidiaries and affiliates on December 31, 2008, and the Corporation will take all necessary steps to remove you from all such positions. From the date of this Agreement to December 31, 2008, we acknowledge that you may require a reasonable amount of time away from the office in connection with your search for new employment.

3.      You understand and agree that your designation of Reporting Insider pursuant to Corporate Policy 320.28 of the Corporation (and under applicable Canadian/U.S. securities legislation for Reporting Insiders), shall cease effective 12:01 a.m. on January 1, 2009. Notwithstanding the fact that you no longer have this designation, if you are in possession of material non-public information relating to the Corporation, you are prohibited from trading in securities of the Corporation (or informing another person of the material non-public information) in accordance with applicable laws. You further understand that you are required to amend your insider profile within 10 days of December 31, 2008 on the Canadian System for Electronic Disclosure by Insiders (SEDI) to indicate that you are no longer a Reporting Insider of the Corporation. You should contact the Insider Reporting Department at (905) 863-1220 and fax (905) 863-8524 for assistance in amending the SEDI profile.

4.      Conditional upon your compliance with all terms and conditions of this Agreement, including, without restriction, paragraph 10 of this Agreement, the Corporation shall:

Page 2



*(Severance Allowance)*

(a)    pay you the sum of CAD$21,461.53 (Canadian dollars) bi-weekly, less applicable deductions, for the period commencing on January 1, 2009 and terminating June 30, 2010 ("Salary Continuation Period");

Notwithstanding anything to the contrary in this paragraph (a), in the event that you are a "specified employee" (within the meaning of Section 409A(2)(B) of the U.S. Internal Revenue Code) on the Employment Termination Date, then (i) any portion of the payments to be made during the Salary Continuation Period that is a "short-term deferral" within the meaning of Treas. Regs. Section 1.409A-1(b)(4)(i) shall be paid at the times set forth above; (ii) any portion of the payments during the Salary Continuation Period that is not a "short-term deferral" (and would otherwise have been payable during the six months following the Employment Termination date) shall be paid on the first business day of the first calendar month that begins after the six-month anniversary of the Employment Termination Date or, if earlier, on the date of death; and (iii) any portion of the payments during the Salary Continuation Period that is payable after the six-month anniversary of the Employment Termination Date shall be paid at the times set forth in this paragraph (a).

*(Vacation Benefit)*

(b)    pay you, on or before January 16, 2009 a lump sum amount equivalent to 50 number of days of base salary representing all of your current accrued but unused vacation benefit, with no further vacation accrual subsequent to December 31, 2008;

*(2008 Annual Incentive Plan (AIP))*

(c)    determine your eligibility for any AIP payment for calendar year 2008 in accordance with the terms and conditions of the 2008 AIP. Eligibility shall not be construed as a right to any payment. For the purpose of this clause, the quantum of the payment for the year ended December 31, 2008 shall not be affected in any manner or to any degree by the fact your employment will come to an end on the Employment Termination Date. Payment of the eligible amount will be made at the same time as payment of AIP would have been made had your employment continued;

Page 3



*(Insurance Benefits)*

(d)    continue your participation during the Salary Continuation Period in medical, life insurance and dental insurance, subject to the provisions of the applicable plans, including the CIGNA International Plan, as applicable, for you and any of the dependents currently covered; you shall continue to make any required contributions for such benefits at the rates applicable for senior executive employees occupying positions similar to that you occupied with the Corporation through the deductions authorized in paragraph 4(a);

*(Pension benefits)*

(e)    continue your participation in the Capital Accumulation and Retirement Program (CARP) during the Salary Continuation Period, pursuant to the terms of the Northern Telecom Managerial and Non-Negotiated Pension Plan (the "Pension Plan") and the changes to the Pension Plan which became effective January 1, 2008;   Your final Pension Plan benefits will be calculated in accordance with the Pension Plan provisions that apply to you as of the date of determination;

*(Long Term Incentives)*

(f)    consider you ineligible for consideration for any future grant(s) of stock options, restricted stock units ("RSUs") and performance stock units ("PSUs"). Your rights with respect to any outstanding stock options and RSUs will be determined in accordance with the applicable Nortel equity plans and applicable Instruments of Grant and/or Instruments of Award. Stock options and RSUs previously granted to you will continue to vest during the Salary Continuation Period in accordance with the provisions of such plans, including the 40,000 RSUs awarded to you on June 14, 2006.    Subject to any applicable trading restrictions that may restrict your ability to trade Nortel securities and the terms of this Agreement, you will have the right to exercise any vested Nortel stock options or have any vested RSUs settled as set forth in Exhibit A in accordance with the terms of the applicable instruments of grant/award, equity plan(s) and any other relevant documents governing the options and RSUs. In addition, you acknowledge that, in certain circumstances, you agree that you will, if required by Nortel in its sole discretion, pay to Nortel an amount in cash equal to; (i) the amount by which the market value of the shares on the date of exercise of the options exceeds the exercise price (in the case of options); and (ii) the amount (subject to certain adjustments) equal to the number of RSUs that vested during the applicable period multiplied by the market value of the shares on the applicable settlement date (in the case of RSUs), all in accordance with the terms of the applicable instruments of award/grant and any other

Page 4



documents that govern. All outstanding unvested PSU's previously granted to you shall be forfeited and cancelled for no consideration in accordance with the applicable equity plan and instrument of award. Notwithstanding the foregoing, any vesting and/or settlement, as applicable, pursuant to this paragraph shall be delayed until six months after your Employment Termination Date to the extent necessary to avoid adverse tax treatment under Section 409A of the US Internal Revenue Code;

*(Investment Plan)*

(g)     following your completion of the necessary documentation, distribute your account balance in accordance with the provisions of the Nortel Networks Investment Plan. Your right to contribute to and participate in the Investment Plan will cease at the end of the Salary Continuation Period;

*(Outplacement Services)*

(h)     make available to you, should you elect, executive outplacement services to assist you in securing new employment and pay the professional fees for such services as are reasonably incurred. All expenses with respect thereto must be submitted for reimbursement on or prior to September 30, 2010;

*(Income Tax Preparation)*

(i)     pay the cost of personal income tax preparation by a service provider selected by you for the tax years 2008, 2009 and 2010;

*(Taxation)*

(j)     with respect to any monies or monetary equivalents to be paid hereunder, in its reasonable discretion withhold and remit to the appropriate tax authorities on your behalf, appropriate amounts concerning any and all applicable federal and provincial taxes required to be remitted and withheld by the Corporation;

*(Certain Relocation Related Expenses)*

(k)     arrange and pay for the shipment of your household goods from Toronto to your place of residence in the US, by Nortel's vendor for international moves, up to an amount not to exceed $20,000;



reimburse you for certain real estate closing expenses, limited to real estate fees arising from the sale of your principal residence in Toronto, Ontario Canada, up to an amount not to exceed $120,000;

arrange and pay for the air transportation for you and your family, up to and not to exceed $3,000;

The payment of the aforementioned expenses are conditioned upon any new employer not having any policy/procedure that would cover such expenses, or for good reason not agreeing to pay for such expenses, and finally any payment sought from Nortel is subject to such expenses being incurred within 12 months from the Employment Termination Date and that upon request that you provide any documentation/receipts concerning such expenses that are satisfactory to the Corporation. All expenses with respect thereto must be submitted for reimbursement on or prior to December 31, 2009 and for greater certainty none of the aforementioned expenses will be grossed up for tax purposes;

*(Local Equalization Payments ("LEP"))*

(l)     continue LEP through July 1, 2009 provided you or your spouse and child continue to reside in your current Toronto residence pursuant to LEP policy;

*(School Assistance)*

(m)     the sum of up to $13,000 on account of school assistance for your child for the 2009 – 2010 school year, subject to the receipt of appropriate invoice with respect thereto with sufficient detail as determined by the Corporation, in its sole discretion; and

*(Independent Legal Advice)*

(n)     pay the cost of independent legal advice relating to this agreement up to a maximum of $5,000, upon receipt of appropriate invoice with respect thereto with sufficient detail as determined by the Corporation, in its sole discretion, with respect to the services performed .

5.     You currently hold a work permit which authorizes you to work for the Corporation; however, it is understood and agreed that on Employment Termination Date, you will no longer be in an active employment relationship with the Corporation. Further, you have been advised that it may be appropriate for you to change your status in Canada to that of a visitor and obtain a Visitor Record and any other appropriate immigration documentation



as may be required. We recommend that you seek the assistance of a lawyer to clarify your immigration status for you and your family members for the duration of your stay to Canada. The Corporation's immigration lawyer is available to you for advice and assistance.

6.  All Corporation compensation, benefits and perquisites not expressly extended to or preserved for you pursuant to this Agreement shall be terminated effective 12:01 a.m., January 1, 2009.

7.  The Corporation shall indemnify you, and advance any reasonable legal fees and expenses, to the extent permitted by, and in accordance with, section 124 of the Canada Business Corporations Act (the "CBCA") and the Corporation's By-Laws (the "By-Laws"). You shall repay such fees and expenses if and to the extent it is determined that you do not fulfill the conditions set forth in subsection 124(3) of the CBCA or the By-Laws. Subject to and without limiting the foregoing, the Corporation's legal counsel will represent you in respect of any civil, criminal, administrative, investigative (including any internal investigation or independent review being conducted by the Corporation's Board of Directors or a Committee thereof) or other proceeding in Canada, the United States or other applicable jurisdiction in which you are involved (including as a witness) because of your association with the Corporation (hereinafter, the "Matter"). However, in the event that the Corporation's counsel cannot represent you in the Matter because of a conflict, the Corporation agrees to advance monies to pay your reasonable and actual legal expenses in the Matter provided that you will not settle the Matter, retain defense counsel or expert witnesses or consultants, or incur any defense costs without obtaining the prior written consent of the Deputy General Counsel and Corporate's Secretary, which consent will not be unreasonably withheld.

8.  It is agreed and understood that for the purposes of the Nortel Networks Corporation Change in Control Plan ("CIC Plan"), "Termination Date" as defined in the CIC Plan is December 31, 2008. In the event that in the 30 day period after December 31, 2008, you become eligible for the Entitlements (as defined under the "CIC Plan") provided under the CIC Plan, this Agreement shall cease and be replaced by the terms and conditions of the CIC Plan.

9.  You shall reconcile and settle your employee expense account, and any advances made to you by the Corporation, as soon as possible, but no later than January 30, 2009 and the Corporation shall in the normal course reimburse you for any business expenses incurred by you through the Employment Termination Date.

10. You shall continue to maintain the confidentiality of all of the Corporation's trade secrets and confidential or proprietary commercial, technical or other information; and



specifically you agree that you shall not at any time during or following your employment with the Corporation, disclose, other than to the Corporation's authorized personnel, or otherwise use for non-Corporation purposes, any confidential or proprietary information (whether or not a trade secret) relating to an activity of the Corporation. You shall also continue to maintain the confidentiality of any dealings, transactions or affairs of the Corporation which may have come to your knowledge in any manner during your employment.

Further, you agree not to reveal, disclose, or cause to be revealed or disclosed, anything with respect to the Corporation that is injurious or harmful of any of its interests, or the interests of its employees, officers or directors. In addition, during the period January 01, 2009 through to the end of the Salary Continuation Period, you:

(i)     shall issue no public statement on the business affairs, policies or the like of the Corporation without the prior written consent of the Deputy General Counsel and Corporate Secretary and, without limiting the foregoing, you shall not in any way disparage the Corporation or any director, officer and/or employee of the Corporation from the date of receipt of this Agreement to and including the last day of the Salary Continuation Period; and

(ii)    shall not, on behalf of yourself or others, directly or indirectly, recruit, induce or solicit or attempt to recruit, induce or solicit any individual who is supplying services to the Corporation, whether as an employee, contractor, consultant or otherwise, to terminate their employment or contractual arrangements with the Corporation; and

(iii)   shall not become an employee, contractor, consultant, representative or in any manner or capacity accept any assignment, project or work for a company in competition with the Corporation, including but not limited to any of the companies identified on the Corporation's competitor list which was reviewed with you on November 6, 2008 (the "Competitor List"), without the prior written approval of the Deputy General Counsel and Corporate Secretary, provided that such approval shall not be unreasonably withheld.

The Corporation, on its own behalf and on behalf of its employees, officers and directors agrees not to reveal, disclose or cause to be revealed or disclosed, anything with respect to you that is injurious or harmful to any of your interests and, without limiting the foregoing, shall not in any way disparage you.

Nothing in this Agreement or otherwise shall prevent you or the Corporation from (x) responding to incorrect, disparaging or derogatory statements to the extent reasonably necessary to correct or refute such statement or (y) making any truthful statement to the

Page 8



extent necessary in connection with the circumstances covered by clauses (i), (ii) and (iii) of the next paragraph.

Notwithstanding any of the foregoing, the provisions of this paragraph 10 shall not apply (i) when disclosure is required by law or by any court, or administrative or legislative body (including any committee thereof) with actual or apparent jurisdiction to order you or the Corporation to disclose or make accessible any such information, (ii) with respect to any litigation involving this Agreement or any other agreement between you and the Corporation, (iii) in connection with any assistance provided by you pursuant to paragraph 13 hereof or (iv) as to information that becomes generally known to the public or within the relevant trade or industry other than due to a violation of this paragraph 10.

Also, you hereby acknowledge and agree that until your Employment Termination Date you, as a senior executive of Nortel, are expected to continue to perform your responsibilities at an exemplar level while displaying the highest professional standards.

11. The Corporation's obligations under paragraphs 4(a), (c), (d), (e), (f), (g), (h), (i), (k) and (l) will terminate forthwith if you become an employee, consultant, contractor or representative of any competitor of the Corporation unless the Deputy General Counsel and Corporate Secretary provides prior written approval of such engagement. For greater certainty, your severance allowance payments during the Salary Continuation Period will continue provided you are otherwise in compliance with this Agreement and you do not become an employee, consultant, contractor or representative of any competitor of the Corporation.

12. Upon the occurrence of any contingency which may affect your rights in or to any subsequent payment or benefit, or affects the Corporation's rights under this Agreement, including without limitation, your obtaining new employment, you shall, within ten (10) days of such occurrence, provide written notice to the Corporation of that event. Such notice shall be sent in writing to the Deputy General Counsel and Corporate Secretary.

13. You shall make available to the Corporation, upon reasonable notice and at a time convenient to you, advice, assistance and information that shall include, but not be limited to, offering and explaining evidence, providing sworn statements, participation in discovery, and trial preparation testimony as may be deemed necessary by the Corporation concerning the Corporation's position in any legal proceedings involving issues brought against or initiated by the Corporation of which you have knowledge. In the event it is necessary for you to provide the aforementioned services, then the Corporation shall reimburse you for authorized, reasonable and documented travel expenses, including, but not limited to, transportation, lodging and meals. The Corporation acknowledges that attorneys' fees and associated expenses are reimbursable if the assistance you provide is related to any Matter, as set forth in paragraph 8 hereof.



14.     You have returned to Nortel Networks any and all property of Nortel Networks that was in your possession and/or subject to your control, whether such material shall be written instruments or tapes in electronic and/or recorded format.

Nortel Networks Corporate Procedure 206.01 states that "all documents, messages or data composed, sent, or received through the network of Nortel Networks in any form are and remain at all times the property of Nortel Networks". In addition, all work product that you have produced during your employment with the Corporation is the property of the Corporation. Therefore, all information, (however recorded or stored) ("Information") in your possession and/or that you have created in the course of your employment with the Corporation (whether or not currently in your possession or control) is the property of the Corporation. Information does not include copies in your possession of your records of employment and/or financial dealings between you and the Corporation.

The Corporation is a party to certain civil lawsuits and other investigations and may need access to certain Information for those matters as well. Therefore, you took affirmative steps to preserve all applicable information in your possession, custody and control (including information controlled by your assistant, if any), have left all such information in the possession and custody of the Corporation, and do not have any Information in your possession or custody.

The Information will be used by the Corporation for general business purposes and may also be provided to regulatory authorities in response to their requests or disclosed in any relevant private litigation to which the Corporation is a party. Also, the Information may be used by and provided to entities within the Corporation's group of companies and/or the Corporation's external advisors. In some instances, the recipients of this Information will be located outside your geographic area. To the extent that the information contains any personal information, you consent to the collection, transfer and disclosure of that information by the Corporation to subsidiaries and affiliates of the Corporation, third parties and regulatory authorities within and outside of your geographic area for the purposes set out above, and the Corporation shall advise you of any such transmittal.

15.     In consideration of the monies and other benefits to be provided to you as set forth herein, you hereby fully and completely release the Corporation, its subsidiaries and affiliates, and their respective directors, officers and employees, to the extent permitted by law, from any and all real or pretended claims, causes of actions, rights, damages or injuries of any nature whatsoever you may have had or now have, whether known or unknown, (except for promises and commitments contained or preserved herein), arising from or connected with your employment with the Corporation or the termination thereof, including any and all such claims, causes of action, rights, damages or injuries arising under any statute, including, without limitation, the applicable labour legislation in Ontario or at common law. Furthermore, you understand that this release shall be binding upon you and your



heirs, administrators, representatives, executors, successors, and assigns and its enforceability shall not be challenged.

You acknowledge that you have read this letter and that you understand all of its terms and have executed it voluntarily with full knowledge of its significance. Further, you acknowledge that you have had an adequate opportunity to review and consider the arrangements, including at your discretion, the right to discuss this Agreement with legal counsel of your choice. Also, you acknowledge that you understand you are hereby granting to the Corporation a full and final release as set forth above. In addition, you agree that your receipt of payments and benefits described in this Agreement are contingent upon you executing on or promptly following the Employment Termination Date, and returning to Deputy General Counsel and Corporate Secretary, a release in the Form of Exhibit B, which is attached and made a part of this Agreement

16.     This Agreement constitutes the entire understanding of the parties with respect to your employment, including the cessation of your employment, and there are no promises, understandings or representations other than those expressly set forth or preserved herein. This Agreement may be modified only with a written instrument duly executed by you and the Corporation.

17.     This Agreement shall be governed by the laws of Ontario, Canada without regard to any provisions concerning conflict of laws. This Agreement may be delivered by facsimile and executed in counterparts, all of which, taken together, shall constitute one and the same original instrument.

18.     The parties agree that should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

19.     The terms and conditions of this Agreement will be open for your review and consideration through the close of business on December 12, 2008. If you have not returned an executed copy of this Agreement, by facsimile or the original, to Deputy General Counsel and Corporate Secretary by the close of business on December 12, 2008, then the terms and conditions set forth in this Agreement shall be withdrawn as of that time and date.

20.     References to the Deputy General Counsel and Corporate Secretary contained herein shall mean, as applicable, the Deputy General Counsel and Corporate Secretary prior to December 31, 2008 and the Chief Legal Officer after December 31, 2008.

Page 11



Please acknowledge that the foregoing correctly and completely sets forth your understanding of the arrangements, and your acceptance hereof, by signing, dating and returning to Deputy General Counsel and Corporate Secretary, the attached second copy of this Agreement.

Yours truly,

Mike S. Zafirovski

For and on behalf of Nortel Networks Corporation

_____
Gordon A. Davies
Deputy General Counsel and Corporate Secretary

_____
Lauren Flaherty

_12 . 12 . 08_____
Date

Attach. Second copy of this Agreement

Page 12



## EXHIBIT A

Lauren Flaherty - Outstanding Equity as of December 31, 2008

| | | | | | | Vesting | | Termination Treatment | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Award | Grant Date | Plan | Number of Units Granted | Number of Units (Outstanding as of Dec 31, 2008) | Strike Price (SCAD) | Date | Amount | Date | Vested | Forfeit | Expiry |
| PSU-SRs | 14-Jun-06 | 2005 SIP | 10,000 | 10,000 | n/a | 1-Jan-09 | 10,000 | 14-Feb-09 [1] | | 10,000 | |
| | 21-Mar-07 | 2005 SIP | 13,500 | 13,500 | n/a | 1-Jan-10 | 13,500 | 14-Feb-09 [1] | | 13,500 | |
| | 3-Mar-08 | 2005 SIP | 22,975 | 22,975 | n/a | 31-Jan-11 | 22,975 | 14-Feb-09 [1] | | 22,975 | |
| PSU-OMs | 3-Mar-08 | 2005 SIP | 22,975 | 22,975 | n/a | 1-Jan-11 | 22,975 | 14-Feb-09 [1] | | 22,975 | |
| RSU | 14-Jun-06 | 2005 SIP | 40,000 | 13,334 | n/a | 14-Jun-09 | 13,334 | 14-Jun-09 | 13,334 | | n/a |
| | 21-Mar-07 | 2005 SIP | 13,500 | 9,000 | n/a | 21-Mar-09 | 4,500 | 21-Mar-09 | 4,500 | | n/a |
| | | | | | | 21-Mar-10 | 4,500 | 21-Mar-10 | 4,500 | | n/a |
| | 3-Mar-08 | 2005 SIP | 15,600 | 15,600 | n/a | 3-Mar-09 | 5,200 | 3-Mar-09 | 5,200 | | n/a |
| | | | | | | 3-Mar-10 | 5,200 | 3-Mar-10 | 5,200 | | n/a |
| | | | | | | 3-Mar-11 | 5,200 | 30-Jun-10 | | 5,200 | |
| Options | 14-Jun-06 | 2005 SIP | 15,000 | 15,000 | 23.60 | vested | 7,500 | vested | 7,500 | | 28-Sep-10 |
| | | | | | | 14-Jun-09 | 3,750 | 14-Jun-09 | 3,750 | | 28-Sep-10 |
| | | | | | | 14-Jun-10 | 3,750 | 14-Jun-10 | 3,750 | | 28-Sep-10 |
| | 21-Mar-07 | 2005 SIP | 27,100 | 27,100 | 29.90 | vested | 6,775 | vested | 6,775 | | 28-Sep-10 |
| | | | | | | 21-Mar-09 | 6,775 | 21-Mar-09 | 6,775 | | 28-Sep-10 |
| | | | | | | 21-Mar-10 | 6,775 | 21-Mar-10 | 6,775 | | 28-Sep-10 |
| | | | | | | 21-Mar-11 | 6,775 | 30-Jun-10 | | 6,775 | |
| | 3-Mar-08 | 2005 SIP | 62,550 | 62,550 | 8.21 | 3-Mar-09 | 15,637 | 3-Mar-09 | 15,637 | | 28-Sep-10 |
| | | | | | | 3-Mar-10 | 15,638 | 3-Mar-10 | 15,638 | | 28-Sep-10 |
| | | | | | | 3-Mar-11 | 15,637 | 30-Jun-10 | | 15,637 | |
| | | | | | | 3-Mar-12 | 15,638 | 30-Jun-10 | | 15,638 | |
| Total | | | 243,200 | 212,034 | | | | | 99,334 | 112,700 | |

Notes:
(1)    Upon termination, unvested PSUs remain outstanding and do not forfeit until February 14, 2009 to address the change in control 30 day look back

Page 13



## EXHIBIT B

## RELEASE

In consideration of your continued employment through the Employment Termination Date and the payments and benefits as set forth in the letter Agreement between Nortel Networks Limited. and you dated November 6, 2008, none of which are released or waived hereby, you hereby you hereby fully and completely release the Corporation, its subsidiaries and affiliates, and their respective directors, officers and employees, to the extent permitted by law, from any and all real or pretended claims, causes of actions, rights, damages or injuries of any nature whatsoever you may have had or now have, whether known or unknown, (except for promises and commitments contained or preserved herein), arising from or connected with your employment with the Corporation or the termination thereof, including any and all such claims, causes of action, rights, damages or injuries arising under any statute, including, without limitation, the applicable labour legislation in Ontario or at common law. Furthermore, you understand that this release shall be binding upon you and your heirs, administrators, representatives, executors, successors, and assigns and its enforceability shall not be challenged.

Furthermore, you specifically acknowledge that you have read this Exhibit B to the Agreement and that you understand all of its terms and have executed it voluntarily with full knowledge of its significance. Further, you acknowledge that you have had an adequate opportunity to review and consider the arrangements, including at your discretion, the right to discuss this Exhibit with legal counsel of your choice. Also, you acknowledge that you understand you are hereby granting to the Corporation a full and final release as set forth above

(Signature)_____

Lauren Flaherty

(Date)_____12 , 12 .08_____

# EXHIBIT C

## STATEMENT OF LIABILITY

To the extent that the Debtor is a subsidiary or affiliate of Nortel Networks Corporation or a successor or assign of a subsidiary or affiliate of Nortel Networks Corporation the Debtor is liable to the claimant for all damages asserted in the claim.

# MONZACK MERSKY MCLAUGHLIN AND BROWDER, P.A.

ATTORNEYS AT LAW
1201 NORTH ORANGE STREET
SUITE 400
WILMINGTON, DE 19801-1155

(302) 656-8162
FACSIMILE: (302) 656-2769

WWW.MONLAW.COM

MELVYN I. MONZACK
RACHEL B. MERSKY
BRIAN J. MCLAUGHLIN
MARY ELIZABETH M. BROWDER
MICHAEL C. HOCHMAN

December 14, 2009

**VIA OVERNIGHT MAIL**
Nortel Networks Inc. Claims Processing Center
c/o Equip Bankruptcy Solutions, LLC
757 Third Ave 3rd Floor
New York, NY 10017

     **Re:**    **Nortel Networks Proof of Claim**

Dear Sir or Madam:

     Enclosed please find 15 proof of claim forms, one for each separate corporate entity. Please file the proof of claim in each of the debtors cases as indicated on the proof of claim form AND return a stamped copy of the duplicate of each claim in the enclosed return prepaid envelope.

     Very truly yours,

*Rachel B. Mersky*

Rachel B. Mersky
For Monzack Mersky McLaughlin
and Browder, P.A.

RBM/jms
Enclosures



United States Bankruptcy Court for the District of Delaware

Nortel Networks Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5075
New York, NY 10150-5075

**PROOF OF CLAIM**

Filed: USBC - District of Delaware
Nortel Networks Inc., Et Al.
09-10138 (KG)        0000006253

| In Re: Nortel Networks Inc., et al. Debtors. | Chapter 11 Case No. 09-10138 (KG) Jointly Administered |
|---|---|

| Name of Debtor Against Which Claim is Held Sonoma Systems | Case No. of Debtor 09-10143 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**THIS SPACE IS FOR COURT USE ONLY**

| Name and address of Creditor : (and name and address where notices should be sent if different from Creditor) John Roese c/o Rachel B. Mersky, Esquire Monzack Mersky McLaughlin and Browder, P.A. 1201 N. Orange Street Suite 400 Wilmington, DE 19801 Telephone number( 302 ) 656-8162  Email Address: rmersky@monlaw.com | ☐ Check this box to indicate that this claim amends a previously filed claim. Court Claim Number: _____ (if known) Filed on: _____ |

| Name and address where payment should be sent (if different from above) John Roese 21 Moody Point, Drive Newmarket, NH 03857 Telephone number:                    Email Address: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. ☐ Check this box if you are the debtor or trustee in this case. |

| 1.  Amount of Claim as of Date Case Filed: $   1,247,145.60 ("SEE Summary of Claim attached hereto as Ex. "A") If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. 2.  Basis for Claim: Agreement (a copy of the Agreement is attached hereto (See instruction #2 on reverse side.) as Ex. "B" & Statement of Liability as Ex. "C" 3.  Last four digits of any number by which creditor identifies debtor: _____ 3a. Debtor may have scheduled account as: _____ (See instruction #3a on reverse side.) 4.  Secured Claim (See instruction #4 on reverse side.) Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other Describe: _____ Value of Property: $ _____  Annual Interest Rate _____% Amount of arrearage and other charges as of time case filed included in secured claim, if any: $ _____  Basis for perfection: _____ Amount of Secured Claim: $ _____  Amount Unsecured: $ _____ | 5.  Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. Specify the priority of the claim: ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). ☒ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4). ☒ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7). ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8). ☐ Other - Specify applicable paragraph of U.S.C. § 507(a)(___). Amount entitled to priority: $ 10,950.00 |

| 6.  Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. 7.  Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.) DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. If the documents are not available, please explain: | FOR COURT USE ONLY **FILED / RECEIVED** DEC 15 2009 EPIQ BANKRUPTCY SOLUTIONS, LLC |

| Date: 12/11/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# **<u>Exhibit A</u>**

## SUMMARY OF CLAIM

| | |
|---|---|
| Severance Pay | $ 705,000 |
| AIP for 2008 | $ 488,000 |
| Insurance | $ 30,000 |
| Deferred Compensation | $ 56,000 |
| Outplacement | $ 10,000 |
| Relocation | $ 5,000 |
| Tax Preparation | $ 10,000 |
| RSU/PSU Value | TBD |

| | |
|---|---|
| Non Equity Claim Value | $1,304,000 CAD |
| US Equivalent (Based on December average of 0.9564 rate) | $1,247,145.60 |

# **Exhibit B**



# N✪RTEL

**CONFIDENTIAL-SPECIAL HANDLING**

November 11, 2008

Mr. John Roese
700 Sussex, Unit 307
Ottawa, Ontario
K1N 1K4

Dear John:

This letter ("Agreement") records the arrangements between you and Nortel Networks Limited ("NNL") concerning the cessation of your employment. The Agreement shall bind and inure to the benefit of each party and their respective heirs, successors and assigns. You acknowledge that this Agreement contains modifications to the arrangements provided to you in an earlier document on or about October 16, 2008 concerning the cessation of your employment.

1.     As used in this Agreement, the term "Corporation" shall mean Nortel Networks Corporation, its subsidiaries and affiliates, their successors and assigns, and all of their past and present officers, directors, employees and agents (in their individual and representative capacities), in every case, individually and collectively.

2.     Effective as of the close of business on December 31, 2008, your active employment relationship with the Corporation will cease (the "Employment Termination Date"). You cease to act as an officer and/or director of the Corporation and any of the Corporation's subsidiaries and affiliates on December 31, 2008, and the Corporation will take all necessary steps to remove you from all such positions.

3.     You understand and agree that your designation of Reporting Insider pursuant to Corporate Policy 320.28 of the Corporation (and under applicable Canadian/U.S. securities legislation for Reporting Insiders), shall cease effective 12:01 a.m. on January 1, 2009. Notwithstanding the fact that you no longer have this designation, if you are in possession of material non-public information relating to the Corporation, you are prohibited from trading in securities of the Corporation (or informing another person of the material non-public information) in accordance with applicable laws. You further understand that you are required to amend your insider profile within 10 days of December 31, 2008 on the Canadian System for Electronic Disclosure by Insiders (SEDI) to indicate that you are no longer a Reporting Insider of the Corporation. You should contact the Insider Reporting Department at (905) 863-1220 and fax (905) 863-8524 for assistance in amending the SEDI profile.

Page 2



4.  Conditional upon your compliance with all terms and conditions of this Agreement, including, without restriction, paragraph 10 of this Agreement, the Corporation shall:

*(Severance Allowance)*

(a)     pay you the sum of CAD$19,000.00 (Canadian dollars) bi-weekly, less applicable deductions, for the period commencing on January 1, 2009 and terminating June 30, 2010 ("Salary Continuation Period");

        Notwithstanding anything to the contrary in this paragraph (a), in the event that you are a "specified employee" (within the meaning of Section 409A(2)(B) of the U.S. Internal Revenue Code) on the Employment Termination Date, then (i) any portion of the payments to be made during the Salary Continuation Period that is a "short-term deferral" within the meaning of Treas. Regs. Section 1.409A-1(b)(4)(i) shall be paid at the times set forth above; (ii) any portion of the payments during the Salary Continuation Period that is not a "short-term deferral" (and would otherwise have been payable during the six months following the Employment Termination date) shall be paid on the first business day of the first calendar month that begins after the six-month anniversary of the Employment Termination Date or, if earlier, on the date of death; and (iii) any portion of the payments during the Salary Continuation Period that is payable after the six-month anniversary of the Employment Termination Date shall be paid at the times set forth in this paragraph (a);

*(Vacation Benefit)*

(b)     pay you, on or before January 30, 2009 a lump sum amount equivalent to 28 days of base salary representing all of your current accrued but unused vacation benefit, with no further vacation accrual subsequent to December 31, 2008;

*(2008 Nortel Networks Limited Annual Incentive Plan ("AIP"))*

(c)     determine your eligibility for any AIP payment for calendar year 2008 in accordance with the terms and conditions of the 2008 AIP. Eligibility shall not be construed as a right to any payment;

*(Insurance Benefits)*

(d)     continue your participation during the Salary Continuation Period, subject to the provisions of the applicable plans, in medical, life insurance and dental insurance, for you and any of the dependents currently covered; you shall



Page 3

continue to make any required contributions for such benefits at the rates applicable for senior executive employees occupying positions similar to that you occupied with the Corporation through the deductions authorized in paragraph 4(a);

*(Pension benefits)*

(e)     continue your participation in the Capital Accumulation and Retirement Program (CARP) during the Salary Continuation Period, pursuant to the terms of the Northern Telecom Managerial and Non-Negotiated Pension Plan (the "Pension Plan") and the changes to the Pension Plan which became effective January 1, 2008. Your final Pension Plan benefits will be calculated in accordance with the Pension Plan provisions that apply to you as of the date of determination;

*(Long Term Incentives)*

(f)     consider you ineligible for consideration for any future grant(s) of stock options, restricted stock units ("RSUs") and performance stock units ("PSUs"). Your rights with respect to any outstanding stock options and RSUs will be determined in accordance with the applicable Nortel equity plans and applicable Instruments of Grant and/or Instruments of Award. Subject to any applicable trading restrictions that may restrict your ability to trade Nortel securities, you will have the right to exercise any vested Nortel stock options or have any vested RSUs settled as set forth in Exhibit A in accordance with the terms of the applicable instruments of grant/award, equity plan(s) and any other relevant documents governing the options and RSUs. In addition, you acknowledge that, in certain circumstances, you agree that you will, if required by Nortel in its sole discretion, pay to Nortel an amount in cash equal to; (i) the amount by which the market value of the shares on the date of exercise of the options exceeds the exercise price (in the case of options); and (ii) the amount (subject to certain adjustments) equal to the number of RSUs that vested during the applicable period multiplied by the market value of the shares on the applicable settlement date (in the case of RSUs), all in accordance with the terms of the applicable instruments of award/grant and any other documents that govern. All outstanding unvested PSU's previously granted to you shall be forfeited and cancelled for no consideration in accordance with the applicable equity plan and instrument of award. Notwithstanding the foregoing, any vesting and/or settlement, as applicable, pursuant to this paragraph shall be delayed until six months after your Employment Termination Date to the extent necessary to avoid adverse tax treatment under Section 409A of the US Internal Revenue Code;

Page 4



*(Investment Plan)*

(g)    following your completion of the necessary documentation, distribute your account balance in accordance with the provisions of the Nortel Networks Investment Plan. Your right to contribute to and participate in the Investment Plan will cease at the end of the Salary Continuation Period;

*(Outplacement Services)*

(h)    make available to you, should you elect, executive outplacement services to assist you in securing new employment and pay the professional fees for such services as are reasonably incurred. All expenses with respect thereto must be submitted for reimbursement on or prior to September 30, 2010;

*(Canadian Deferred Compensation Plan (CDCP))*

(i)    provide you the opportunity to elect, by the filing of appropriate documentation, to withdraw applicable monies from the CDCP in accordance with the terms of the CDCP effective as December 31, 2008. Notwithstanding the foregoing, the payment of such monies to you, pursuant to this paragraph shall be delayed until six months after your Employment Termination Date to the extent necessary to avoid adverse tax treatment under Section 409A of the US Internal Revenue Code;

*(Income Tax Preparation)*

(j)    pay the cost of personal income tax preparation by a service provider selected by you for the tax years 2008, 2009 and 2010;

*(Taxation)*

(k)    with respect to any monies or monetary equivalents to be paid hereunder, in its reasonable discretion withhold and remit to the appropriate tax authorities on your behalf, appropriate amounts concerning any and all applicable federal and provincial taxes required to be remitted and withheld by the Corporation;

*(Certain Relocation Related Expenses)*

(l)    arrange and pay for (i) the shipment of your household goods from Ottawa to your place of residence in the US, by Nortel's vendor for international moves, up



to an amount not to exceed CAD$5,000; and (ii) one way air transportation for you up to and not to exceed CAD$800.  The payment of the aforementioned expenses are conditioned upon any new employer not having any policy/procedure that would cover such expenses, or for good reason not agreeing to pay for such expenses, and finally any payment sought from Nortel is subject to such expenses being incurred within 8 months from the Employment Termination Date and that upon request that you provide any documentation/receipts concerning such expenses that are satisfactory to the Corporation.   All expenses with respect thereto must be submitted for reimbursement on or prior to December 31, 2009.

5.   You currently hold a work permit which authorizes you to work for the Corporation; however, it is understood and agreed that on Employment Termination Date, you will no longer be in an active employment relationship with the Corporation.  Further, you have been advised that it may be appropriate for you to change your status in Canada to that of a visitor and obtain a Visitor Record and any other appropriate immigration documentation as may be required. We recommend that you seek the assistance of a lawyer to clarify your immigration status for you and your family members, if applicable for the duration of your stay to Canada. Nortel's immigration lawyer is available to you for advice and assistance.

6.   All of the Corporation's compensation, benefits and perquisites not expressly extended to or preserved for you pursuant to this Agreement shall be terminated effective 12:01 a.m., January 1, 2009.

7.   It is agreed and understood that for the purposes of the Nortel Networks Corporation Change in Control Plan ("CIC Plan"), "Termination Date" as defined in the CIC Plan is December 31, 2008.  In the event that in the 30 day period after December 31, 2008, you become eligible for the Entitlements (as defined under the CIC Plan) provided under the CIC Plan, this Agreement shall cease and be replaced by the terms and conditions of the CIC Plan.

8.   The Corporation shall indemnify you, and advance any reasonable legal fees and expenses, to the extent permitted by, and in accordance with, section 124 of the Canada Business Corporations Act (the "CBCA") and the Corporation's By-Laws (the "By-Laws").  You shall repay such fees and expenses if and to the extent it is determined that you do not fulfill the conditions set forth in subsection 124(3) of the CBCA or the By-Laws.  Subject to and without limiting the foregoing, the Corporation's legal counsel will represent you in respect of any civil, criminal, administrative, investigative (including any internal investigation or independent review being conducted by the Corporation's Board of Directors or a Committee thereof) or other proceeding in

Page 6



Canada, the United States or other applicable jurisdiction in which you are involved (including as a witness) because of your association with the Corporation (hereinafter, the "Matter"). However, in the event that the Corporation's counsel cannot represent you in the Matter because of a conflict, the Corporation agrees to advance monies to pay your reasonable and actual legal expenses in the Matter provided that you will not settle the Matter, retain defense counsel or expert witnesses or consultants, or incur any defense costs without obtaining the prior written consent of the Deputy General Counsel and Corporate Secretary, which consent will not be unreasonably withheld.

9.    You shall reconcile and settle your employee expense account, and any advances made to you by the Corporation, as soon as possible, but in any event no later than January 30, 2009 and the Corporation shall in the normal course reimburse you for any business expenses incurred by you through the Employment Termination Date.

10.    You shall continue to maintain the confidentiality of all of the Corporation's trade secrets and confidential or proprietary commercial, technical or other information; and specifically you agree that you shall not at any time during or following your employment with the Corporation, disclose, other than to the Corporation's authorized personnel, or otherwise use for non-Corporation purposes, any confidential or proprietary information (whether or not a trade secret) relating to an activity of the Corporation. You shall also continue to maintain the confidentiality of any dealings, transactions or affairs of the Corporation which may have come to your knowledge in any manner during your employment.

Further, you agree not to reveal, disclose, or cause to be revealed or disclosed, anything with respect to the Corporation that is injurious or harmful of any of its interests, or the interests of its employees, officers or directors. In addition, during the period January 1, 2009 through to the end of the Salary Continuation Period, you:

(i)    shall issue no public statement on the business affairs, policies or the like of the Corporation without the prior written consent of the Deputy General Counsel and Corporate Secretary and, without limiting the foregoing, you shall not in any way disparage the Corporation or any director, officer and/or employee of the Corporation from the date of receipt of this Agreement to and including the last day of the Salary Continuation Period; and

(ii)    shall not, on behalf of yourself or others, directly or indirectly, recruit, induce or solicit or attempt to recruit, induce or solicit any individual who is supplying services to the Corporation, whether as an employee, contractor, consultant or otherwise, to terminate their employment or contractual arrangements with the Corporation; and



(iii)    shall not become an employee, contractor, consultant, representative or in any manner or capacity accept any assignment, project or work for a company in competition with the Corporation, including but not limited to any of the companies identified on the Corporation's competitor list which was reviewed with you on November 6, 2008 (the "Competitor List"), without the prior written approval of the Deputy General Counsel and Corporate Secretary, provided that such approval shall not be unreasonably withheld.

The Corporation, on its own behalf and on behalf of its employees, officers and directors agrees not to reveal, disclose or cause to be revealed or disclosed, anything with respect to you that is injurious or harmful to any of your interests and, without limiting the foregoing, shall not in any way disparage you.

Nothing in this Agreement or otherwise shall prevent you or the Corporation from (x) responding to incorrect, disparaging or derogatory statements to the extent reasonably necessary to correct or refute such statement or (y) making any truthful statement to the extent necessary in connection with the circumstances covered by clauses (i), (ii) and (iii) of the next paragraph.

Notwithstanding any of the foregoing, the provisions of this paragraph 10 shall not apply (i) when disclosure is required by law or by any court, or administrative or legislative body (including any committee thereof) with actual or apparent jurisdiction to order you or the Corporation to disclose or make accessible any such information, (ii) with respect to any litigation involving this Agreement or any other agreement between you and the Corporation, (iii) in connection with any assistance provided by you pursuant to paragraph 13 hereof or (iv) as to information that becomes generally known to the public or within the relevant trade or industry other than due to a violation of this paragraph 10.

Also, you hereby acknowledge and agree that until your Employment Termination Date you, as a senior executive of Nortel, are expected to continue to perform your responsibilities at an exemplar level while displaying the highest professional standards.

11.    The Corporation's obligations under paragraphs 4(a), (c), (d), (e), (f), (g), (h), (i) and (l) will terminate forthwith if you become an employee, consultant, contractor or representative or any direct competitor of the Corporation unless the Deputy General Counsel and Corporate Secretary provides prior written approval of such engagement.

12.    Upon the occurrence of any contingency which may affect your rights in or to any subsequent payment or benefit, or affects the Corporation's rights under this Agreement, including without limitation, your obtaining new employment, you shall, within ten (10)

Page 8



days of such occurrence, provide written notice to the Corporation of that event. Such notice shall be sent in writing to the Deputy General Counsel and Corporate Secretary.

13.    You shall make available to the Corporation, upon reasonable notice and at a time convenient to you, advice, assistance and information that shall include, but not be limited to, offering and explaining evidence, providing sworn statements, participation in discovery, and trial preparation testimony as may be deemed necessary by the Corporation concerning the Corporation's position in any legal proceedings involving issues brought against or initiated by the Corporation of which you have knowledge. In the event it is necessary for you to provide the aforementioned services, then the Corporation shall reimburse you for authorized, reasonable and documented travel expenses, including, but not limited to, transportation, lodging and meals. The Corporation acknowledges that attorneys' fees and associated expenses are reimbursable if the assistance you provide is related to any Matter, as set forth in paragraph 8 hereof.

14.    You have returned to the Corporation any and all property of the Corporation that was in your possession and/or subject to your control, whether such material shall be written instruments or tapes in electronic and/or recorded format.

Nortel Networks Corporate Procedure 206.01 states that "all documents, messages or data composed, sent, or received through the network of Nortel Networks in any form are and remain at all times the property of Nortel Networks". In addition, all work product that you have produced during your employment with the Corporation is the property of the Corporation. Therefore, all information, (however recorded or stored) ("Information") in your possession and/or that you have created in the course of your employment with the Corporation (whether or not currently in your possession or control) is the property of the Corporation. Information does not include copies in your possession of your records of employment and/or financial dealings between you and the Corporation.

The Corporation is a party to certain civil lawsuits and other investigations and may need access to certain Information for those matters as well. Therefore, you took affirmative steps to preserve all applicable information in your possession, custody and control (including information controlled by your assistant, if any), have left all such information in the possession and custody of the Corporation, and do not have any Information in your possession or custody.

The Information will be used by the Corporation for general business purposes and may also be provided to regulatory authorities in response to their requests or disclosed in any relevant private litigation to which the Corporation is a party. Also, the Information may be used by and provided to entities within the Corporation's group of companies and/or the Corporation's external advisors. In some instances, the recipients of this

Page 9



Information will be located outside your geographic area. To the extent that the information contains any personal information, you consent to the collection, transfer and disclosure of that information by the Corporation to subsidiaries and affiliates of the Corporation, third parties and regulatory authorities within and outside of your geographic area for the purposes set out above, and the Corporation shall advise you of any such transmittal.

15. In consideration of the monies and other benefits to be provided to you as set forth herein, you hereby fully and completely release the Corporation, its subsidiaries and affiliates, and their respective directors, officers and employees, to the extent permitted by law, from any and all real or pretended claims, causes of actions, rights, damages or injuries of any nature whatsoever you may have had or now have, whether known or unknown, (except for promises and commitments contained or preserved herein), arising from or connected with your employment with the Corporation or the termination thereof, including any and all such claims, causes of action, rights, damages or injuries arising under any statute, including, without limitation, the applicable labour legislation in Ontario or at common law. Furthermore, you understand that this release shall be binding upon you and your heirs, administrators, representatives, executors, successors, and assigns and its enforceability shall not be challenged.

You acknowledge that you have read this letter and that you understand all of its terms and have executed it voluntarily with full knowledge of its significance. Further, you acknowledge that you have had an adequate opportunity to review and consider the arrangements, including at your discretion, the right to discuss this Agreement with legal counsel of your choice. Also, you acknowledge that you understand you are hereby granting to the Corporation a full and final release as set forth above. In addition, you agree that your receipt of payments and benefits described in this Agreement are contingent upon you executing on or promptly following the Employment Termination Date, and returning to Deputy General Counsel and Corporate Secretary, a release in the Form of Exhibit B, which is attached and made a part of this Agreement.

16. This Agreement constitutes the entire understanding of the parties with respect to your employment, including the cessation of your employment, and there are no promises, understandings or representations other than those expressly set forth or preserved herein. This Agreement may be modified only with a written instrument duly executed by you and the Corporation.

17. This Agreement shall be governed by the laws of Ontario, Canada without regard to any provisions concerning conflict of laws. This Agreement may be delivered by facsimile and executed in counterparts, all of which, taken together, shall constitute one and the same original instrument.



18. The parties agree that should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

19. If you have not returned an executed copy of this Agreement, by facsimile or the original, to Deputy General Counsel and Corporate Secretary by the close of business on November 28, 2008, then the terms and conditions set forth in this Agreement shall be withdrawn as of that time and date.

20. References to the Deputy General Counsel and Corporate Secretary contained herein shall mean, as applicable, the Deputy General Counsel and Corporate Secretary prior to December 31, 2008 and the Chief Legal Officer after December 31, 2008.

Please acknowledge that the foregoing correctly and completely sets forth your understanding of the arrangements, and your acceptance hereof, by signing, dating and returning to Deputy General Counsel and Corporate Secretary, the attached second copy of this Agreement.

Yours truly,


Mike S. Zafirovski
For and on behalf of Nortel Networks Limited


Gordon A. Davies
Deputy General Counsel and Corporate Secretary

John Roese

28 | 11 | 08
Date
Attach.  Second copy of this Agreement

# **<u>EXHIBIT C</u>**

## STATEMENT OF LIABILITY

To the extent that the Debtor is a subsidiary or affiliate of Nortel Networks Corporation or a successor or assign of a subsidiary or affiliate of Nortel Networks Corporation the Debtor is liable to the claimant for all damages asserted in the claim.

## MONZACK MERSKY MCLAUGHLIN AND BROWDER, P.A.
### ATTORNEYS AT LAW
1201 NORTH ORANGE STREET
SUITE 400
WILMINGTON, DE 19801-1155

(302) 656-8162
FACSIMILE: (302) 656-2769

WWW.MONLAW.COM

MELVYN I. MONZACK
RACHEL B. MERSKY
BRIAN J. MCLAUGHLIN
MARY ELIZABETH M. BROWDER
MICHAEL C. HOCHMAN

December 14, 2009

**VIA OVERNIGHT MAIL**
Nortel Networks Inc. Claims Processing Center
c/o Equip Bankruptcy Solutions, LLC
757 Third Ave 3rd Floor
New York, NY 10017

Re:    **Nortel Networks Proof of Claim**

Dear Sir or Madam:

Enclosed please find 15 proof of claim forms, one for each separate corporate entity. Please file the proof of claim in each of the debtors cases as indicated on the proof of claim form AND return a stamped copy of the duplicate of each claim in the enclosed return prepaid envelope.

Very truly yours,

Rachel B. Mersky
For Monzack Mersky McLaughlin
and Browder, P.A.

RBM/jms
Enclosures

