# EXHIBIT 6



**NRPC** Nortel Retirees and former employees Protection Canada
www.nortelpensioners.ca

**SRNC** Sauvegarde des Retraités et anciens employés de Nortel Canada
www.retraitesnortel.ca

You are receiving this letter because you are one of approximately 300 former Nortel employees who had an employment contract or letter created between about January 2007 and January 2009 which included severance arrangements. Payments under these contracts (including severance payments) were suspended by Nortel upon its filing for creditor protection in January, 2009.

These contracts and letters are currently being processed under the claims process that applies to Canadian employees with claims against Nortel Networks Corporation ("Nortel Canada"). This process is still being conducted.

A review of a sample of these contracts and letters suggests that a claim for unpaid amounts may be made against the U.S. subsidiaries of Nortel Canada, namely, Nortel Networks Inc. ("Nortel U.S."). This letter sets out the background, issues and options for employees who may have a claim against the U.S. subsidiaries in addition to a claim against Nortel Canada.

---

### URGENT ACTION REQUIRED BY YOU

Please read this letter carefully. You may have a claim against Nortel U.S. This claim must be brought on an expedited basis by counsel in the U.S. on your behalf. If your claim is allowed against Nortel U.S. it should result in a greater total payment to you on account of your severance claim because you would receive a payment from both estates. Further, although it is not known at this time what the dividend payment from each estate will be, it is widely anticipated that payments on claims against Nortel U.S. will be at a higher rate than claims against Nortel Canada.

This letter explains the claim and how to contact U.S. counsel who can bring this claim on your behalf.

If you wish to file a claim against Nortel U.S., please complete and return the attached form requesting representation **BEFORE FRIDAY JANUARY 25, 2013**.

---

#### WHO IS AFFECTED?

You are being contacted because we have identified you as a Nortel employee who entered a contract of employment or a severance arrangement between about January 2007 and January 2009. Only some Nortel employees had this form of contract. Many of these employees were employed in Nortel's Calgary operations, but some were also employed in the rest of Canada and the United States.



On individual bases we must confirm that your contract with Nortel includes some key terms that may give rise to a claim against Nortel U.S., and that you did not receive any notice from Nortel U.S. about your claim. The key term to identify in your contract with Nortel contains the following text:

> As used in this Agreement the term "Corporation" shall mean Nortel Network Corporation, its subsidiaries and affiliates, their successors and assigns and all their past and present officer, directors, employees and agents (in their individual and representative capacities), in every case, individually and collectively.

### WHAT IS THE STATUS OF THE CANADIAN CLAIMS PROCESS?

On October 6, 2011 the Ontario Superior Court of Justice approved the Compensation Claims Methodology Order and the Compensation Claims Procedure Order. The purpose of the compensation claims process is to value the claims of all employees and former employees of Nortel. The Monitor (Ernst & Young LLP) has filed claims on behalf of former employees of Nortel with Nortel Canada.

The Monitor has been reviewing the claims and follow-up clarification or corrections to the claims. The process of review consists of identifying the requested corrections or claim, reviewing supporting documentation, and communicating with the claimants for additional clarification or documentation where necessary.

The Monitor has communicated to claimants for approximately half of all forms received, and will be responding to the balance as they are completed over the coming months. There is no significance to the order in which responses are being sent.

### WHAT CLAIM CAN BE MADE AGAINST NORTEL U.S.?

There is an insolvency proceeding in the U.S. brought by Nortel U.S. that is parallel to, and coordinated with, the Canadian insolvency proceeding. In that U.S. proceeding, creditors of Nortel U.S. were given notice of their right to make a claim against Nortel U.S.

However, it does not appear that any notice was provided to certain employees living or working in Canada who had potential claims under their contracts of employment against Nortel U.S. If you have a contract of employment or a severance agreement with Nortel that includes the key language set out above, AND you did not receive any notice from Nortel U.S., you may be eligible to make a claim against Nortel U.S. in addition to the claim that is already being

2



processed on your behalf against Nortel Canada. Although you cannot receive more than your total severance claim, if your claim is accepted in both jurisdictions, you will be entitled to receive a payment from both estates, thus increasing the likelihood of receiving the full amount of your claim.

## HOW ARE THE CANADIAN AND U.S. CLAIMS COORDINATED?

There are a number of issues among various Nortel related estates, the major one being the allocation of the global sales proceeds. The Canadian and U.S. courts appointed the Honourable Warren K. Winkler, Chief Justice of Ontario, to serve as mediator. Mediation discussions are confidential and ongoing.

The timing and amount of distributions from the Nortel Canada estate cannot therefore be predicted at this time.

## HOW CAN A CLAIM BE MADE AGAINST NORTEL U.S.?

In order to bring a claim in the U.S., two steps are necessary, filing the claim and proving the claim.

In the U.S. proceeding, a "bar date" was imposed, after which no claims could be made without leave of the U.S. courts. The general bar date was September 30, 2009 at 4:00 p.m. (EST). In order to make a claim in the U.S. proceeding, an application must be brought before the U.S. court seeking to extend the time to file a claim after the "bar date" to permit the claim to be processed in accordance with the claims process in the U.S. proceeding.

If the U.S. court lifts the bar date and permits the claim to be filed, then Nortel U.S. must process the claim by seeking to clarify the claim, and ultimately, accepting or rejecting the claim. If the claim is rejected by Nortel U.S. without sufficient justification, then the claimant may seek an order of the U.S. court that the claim be accepted.

The retention of U.S. counsel will be for the purpose of allowing the filing of a claim and monitoring the U.S. docket to determine if Nortel U.S. files an objection to the claim. In reality, we fully expect that Nortel U.S. will both object to the court permitting the claim to be filed, and will attempt to reject the claim, and that it will be necessary to seek a court order in the U.S. in both cases.



**NRPC SRNC**
Nortel Retirees and former employees Protection Canada
Sauvegarde des Retraités et anciens employés de Nortel Canada
www.nortelpensioners.ca | www.retraitesnortel.ca

### CAN KOSKIE MINSKY LLP REPRESENT ME IN MAKING A U.S. CLAIM?

No. Koskie Minsky LLP was appointed by the Canadian court to represent former Nortel employees in Canadian courts only. In order to bring a claim in the U.S., it is necessary to engage U.S. counsel.

### HOW WOULD U.S. COUNSEL BE COMPENSATED?

There is no court order providing compensation to U.S. counsel for representing Canadian employees in the U.S. proceeding. At this stage, it would be necessary to retain U.S. counsel directly.

In order to understand the scope and cost of retaining U.S. counsel, Koskie Minsky LLP contacted two law firms in the U.S. Following consultation, Koskie Minsky LLP and the terminated employees' court-appointed representative, Michael Campbell, determined that Ms. Rachel Mersky of the law firm Monzack Mersky McLaughlin and Browder P.A. would be appropriate counsel to advise potential claimants. Ms. Mersky is already familiar with the file as she is currently representing four U.S. employees with substantially similar claims.

Ms. Mersky has advised that she expects Nortel U.S. to object to the claim being permitted to be filed and to deny the claim once it is filed, and to have to seek orders of the U.S. court on both issues. Ms. Mersky advised that she can make an application to file the claim on behalf of the entire group within a relatively short time, and that litigating the issues may take several months, although it may be possible to expedite the claim process in this case.

We have been advised that Ms. Mersky would be willing to take on this case on a retainer basis, with future installments made based on agreement with the client and advice about the likelihood of success. In order to retain Ms. Mersky it would be necessary to provide a retainer to commence work on the file.

The Nortel Retirees and former employees Protection Canada (NRPC) has already provided an amount to pay for the initial retainer, however, as a result of the nature of the claims further funds are necessary from those that wish to participate.

Ms. Mersky has estimated that the initial retainer would need to be about $50,000, and a very rough estimate of the total cost of litigating the allowance of filing the claim could be as high as $100,000. This is a good faith estimate and actions by Nortel U.S. could result in lesser or greater costs.



Ms. Mersky would be willing to proceed on the basis of a group retainer, with individuals "pooling" the cost of the litigation. In order to commence the process, each claimant who wishes to retain Ms. Mersky to proceed with his or her claim must pay a retainer fee of $475.00 If the funds collected exceed the fees incurred, a pro rata amount would be refunded to each claimant. If a smaller number of employees participate in the group, the individual cost will be proportionally higher and those participating will have to pay additional amounts.

## HOW WILL U.S. COUNSEL RECEIVE INSTRUCTIONS?

In order to create an efficient process for retaining and instructing U.S. counsel, an Ad Hoc Committee of Former Canadian Employees has been created with Paula Klein and Mike Campbell serving as representatives. Instructions on proceedings will be provided to U.S. Counsel by the Ad Hoc Committee in order to keep the costs of administering the claims in the U.S. Bankruptcy Court at a minimum.

## SOME ADVANTAGES AND DISADVANTAGES OF BRINGING A U.S. CLAIM

Nortel Canada is not expected to pay the full amount of employee compensation claims. The advantage to bringing a claim against Nortel U.S. is that, if the claim is successful, it is believed that there is a greater likelihood that the full amount of the claim will be paid.

The disadvantages are the cost of bringing the claim, and a material risk that the claim wi l not succeed. There may also be a possible delay in settling your overall claim while the U.S. proceeding is resolved.

## WHAT HAPPENS IF I DO NOT FILE A CLAIM AGAINST NORTEL U.S.?

If you do not join this group and seek to file a claim against Nortel U.S., then you will only have a claim against Nortel Canada (currently being processed by the Monitor).

<u>In the absence of a separate filed and accepted claim against Nortel U.S., you will not receive any payment from Nortel U.S. If you do not join this group and take advantage of this group approach to file a claim in the Nortel U.S. process, no claim will be made on your behalf, and you will only receive a payment on your severance claim from the Canadian estate.</u>

5



## WHERE CAN I GET MORE INFORMATION?

We strongly advise that you check the LinkedIn group created for "Recently Severed Canadian Nortel Employees" and join the group if you haven't already. The Group can be found online at the following link:

http://www.linkedin.com/groups?gid=1770226&trk=hb_side_g

## NEXT STEPS

Your court-appointed representatives wish to determine: (1) whether a sufficient number of employees have a claim; (2) whether a sufficient number of employees with a claim wish to proceed on the basis of a group retainer of U.S. counsel.

If you wish to proceed with a U.S. claim and believe you have a claim please complete the two documents attached and return them, and your retainer payment of $475.00 to Monzack Mersky McLaughlin and Browder P.A., c/o Koskie Minsky LLP **BEFORE FRIDAY JANUARY 25, 2013**.

The first document is the Retainer of Ms. Rachel B. Mersky. It requires you to confirm that you have not received notice from Nortel U.S. of your potential claim against Nortel U.S. It also requires you to send to Ms. Mersky a copy of your contract or letter with Nortel that contains the severance arrangement you had with Nortel.

The second form is an authorization for Koskie Minsky LLP to charge your VISA a retainer amount to be held in trust on your account by Koskie Minsky LLP and Monzack Mersky McLaughlin and Browder P.A. If you wish to pay your retainer by VISA, you may authorize Koskie Minsky LLP to charge $475.00 to your VISA account.

You may also send Koskie Minsky LLP a certified cheque or money order for the amount of $475.00, payable to "Koskie Minsky LLP in trust for Monzack Mersky McLaughlin and Browder P.A."

Please send your signed Retainer together with the $475 retainer fee to Koskie Minsky LLP by Friday January 25, 2013. If you are sending the retainer fee by VISA Authorization please send it by fax or email to:

<u>By fax:</u>     416-204-2906

<u>By email:</u>   nortel@kmlaw.ca

00006
TP



If you are sending the retainer fee by certified cheque or money order, please mail the Retainer together with the retainer fee and send it to:

Koskie Minsky LLP
Attention: Monzack Mersky McLaughlin and Browder P.A.
20 Queen Street West, Suite 900
Toronto, ON M5H 3R3

7

00007
TP