En vertu de votre convention collective, vous serez également admissible à un montant forfaitaire de retraite représentant 5.5 mois de salaire; ce montant est présentement établi à 34,346.00$; le paiement pourra être versé sous forme de montant forfaitaire ou être étalé en versements égaux au cours du congé spécial avant la retraite (tel que démontré dans le document *Estimation – Étalement de l'offre de retraite volontaire durant le congé spécial avant la retraite* ci-joint). Afin de nous signifier que vous souhaitez recevoir le paiement en versement égaux durant le congé spécial avant la retraite, vous devrez signer ce document.

Selon les règlements et les pratiques applicables, la Société vous remboursera les sommes dues au titre de la rémunération des congés annuels inutilisés que vous avez accumulés jusqu'au 22 novembre 2008.

Le 26 octobre 2010, le congé spécial avant la retraite et les avantages qui y sont associés prendront fin et vous pourrez recevoir une rente de retraite selon les dispositions du régime de retraite négocié de Nortel. Les options de retraite sont détaillées dans le document d'estimation des prestations de retraite inclus dans les présents documents.

## Option 2 : Fin d'emploi

Si vous n'acceptez pas l'option 1, votre emploi prendra fin le 22 novembre et vous recevrez une indemnité de départ de 99,094$ calculée conformément aux dispositions de votre convention collective. En vertu de vos années de service avec Nortel au 31 décembre 1995, vous pouvez effectuer un transfert direct de 32,000$ dans votre REER; de plus, si votre avis de cotisation pour l'année d'imposition en cours vous le permet, vous pourrez contribuer pour un montant additionnel, pourvu que nous ayons une copie de votre avis de cotisation démontrant que vous disposez de cet espace dans votre REER. Vous devrez compléter les formulaires ci-joints et les remettre à Maryse Chaurette d'ici le 23 octobre 2008 afin d'éviter tout délai dans le traitement de vos paiements.

Le document Estimation des prestations de retraite – Cessation d'emploi précise les modalités applicables à la retraite si vous choisissez cette option.

Il est entendu que vous demeurez lié par l'Engagement relatif à la confidentialité et à l'information protégée par des droits de propriété, et par toute autre convention que vous avez signée lors de votre embauche et dans le cadre de votre emploi. Vous attestez que vos droits de propriété intellectuelle, tels qu'ils sont généralement décrits dans les ententes de la Société, sont transférés à la Société et ce, peu importe l'existence ou les clauses exactes d'une telle entente conclue entre la Société et vous. Vous devez continuer de respecter la confidentialité des informations privées et des secrets commerciaux auxquels vous avez eu accès dans le cadre de vos activités au sein de la Société ou que vous avez acquis à propos de toute négociation, de toute transaction ou de tout marché dont vous avez pris connaissance pendant votre période d'emploi. En outre, vous convenez de vous abstenir de parler de la Société ou de ses employés, dirigeants ou représentants en termes désobligeants, ou de commenter de façon négative votre emploi au sein de la Société.

2

Veuillez indiquer laquelle des deux options vous choisissez et retourner le double de la présente lettre à Maryse Chaurette d'ici le 23 octobre 2008.

Nous tenons à vous remercier pour le dévouement dont vous faites preuve et tenterons de minimiser par tous les moyens l'impact de cette décision.

*Xlaunett* pour

Steven Thomas
Manager SAP Master Data


Je choisis l'option 1:    Congé spécial avant la retraite

Je choisis l'option 2 :    Fin d'emploi    _____


Signature : *Denis Paradis*    Date : 20 oct 2008


Cc : Claude Vachon – Teamsters
     Maryse Chaurette  514-818-3894



Pièces jointes :  Double de la présente lettre
                  Étalement de l'offre de retraite (option 1)
                  Sommaire des renseignements sur les avantages sociaux (option 1)
                  Remise de l'indemnité de cessation d'emploi (option 2)
                  Formulaire TD2 (option 2)
                  Contribution additionnelle à un REER (option 2)
                  Estimation de la rente de retraite – retraite
                  Estimation de la rente de retraite – fin d'emploi

3



Tele Contact : 416 - 518-4649

**PERSONAL & CONFIDENTIAL**

Without Prejudice

December 4, 2008

Address changed to: 10 Chadbury Place
Toronto, Ontario M1W2V8

As of June 2013: 18 Wellers Lane,
Carrying Place, Ontario
K0K 1L0

K. Raymond Pottan(n)
203-3125 Queen Frederica Dr
Mississauga ON
L4Y 3A6

Dear K. Raymond:

This letter confirms our discussion today, at which time you were advised that your employment will terminate on February 2, 2009. On the termination date, your service, employment, and all pay and benefits not expressly extended to you in this letter will end.

Henceforth, you are no longer required to attend at work, but you will continue to receive your current salary and benefits until the termination date. To assist you in finding alternate employment, the professional career transition services of Right Management will be provided to you.

As used in this letter, the term "Corporation" shall mean Nortel Networks Corporation, its subsidiaries and affiliates, their successors and assigns, and all of their past and present officers, directors, employees and agents (in their individual and representative capacities), in every case, individually and collectively.

Except to the extent disclosure may be required in connection with any professional advice you may seek or in connection with the professional outplacement services, you will treat as confidential the terms of this letter. Without limiting the generality of the foregoing, you shall not disclose directly or indirectly, the contents of this letter to any employee or former employee of the Corporation.

Conditional upon: (i) your compliance with all terms and conditions of this letter; and (ii) your not obtaining employment with the Corporation, prior to the termination date that would enable you to continue your employment with the Corporation, the Corporation shall, on or immediately following the termination date, pay you a lump sum of $186,425.00 less statutory deductions. This payment ("the termination payment") in addition to the provided period of paid notice is intended to recognize your past service with the Corporation and to compensate you in all respects for the loss of employment. It is inclusive of any severance and/or termination payment to which you may be entitled as a consequence of the termination of your employment under applicable employment standards legislation. Payment will be made to you upon receipt of an executed copy of this letter and the completed Distribution of Termination Allowance, which is attached. In accordance with the Income Tax Act, you are eligible, based on your years of service up to December 31, 1995, to make a deposit into an RRSP as a nothing allowance in the amount of $20,000.00. If you wish to direct a portion of the termination payment into an RRSP, you must also complete the attached TD2 form and return it, together with the executed second copy of this letter to Tammie Ebel.

If you recommence employment with the Corporation after the termination date but prior to May 3, 2010, you agree that you will return to the Corporation the portion of the termination payment equivalent to your gross weekly/daily salary with the Corporation multiplied by the number of weeks/days during which you were employed with the Corporation prior to May 3, 2010.

Prepared by HR Shared Services

K. Raymond Patterson
December 4, 2008
Page 3

The Corporation will also pay you all vacation you have accrued, up to and including the termination date, in accordance with the applicable policy and practice.

If by May 3, 2010, and notwithstanding your reasonable and continuous efforts to find alternate employment, you have not found or been offered alternate employment or engaged in other remunerative activity, the Corporation will provide additional bi-weekly payments based on your current wage rate (less applicable deductions) for a period of up to 13 weeks. To qualify for payment, you will be required to furnish, from time-to-time, evidence satisfactory to the Corporation of your efforts as above, which may include proof that you have remained active in accessing the services of the assigned outplacement firm, and are continuing your search to secure alternate employment or other remunerative activity. You may also be required to produce evidence of any and all income you have received subsequent to your receipt of notice of termination by the Corporation.

If you are in an Annual Incentive Plan-eligible position, your eligibility for an incentive award bonus for the current calendar year will be determined by the terms and conditions of the relevant plan in effect at the time. Eligibility shall not be construed as a right to such payment. In the event that you receive an award, it will be paid at the same time that other Annual Incentive Plan participants receive their awards.

You will not be eligible for any future or additional grant(s) of stock options or award(s) of restricted stock units (RSUs). The Corporation will allow you to vest until May 3, 2010 the end of your severance or Extension Period, any stock options and/or RSUs granted to you under the Nortel Networks Corporation 1986 Stock Option Plan as Amended and Restated ("the 1986 Plan"), the Nortel Networks Corporation 2000 Stock Option Plan ("the 2000 Plan"), and/or the Nortel 2005 Stock Incentive Plan ("the 2005 SIP Plan"), subject to the terms and conditions of those plans and in accordance with the instrument(s) of grant and/or instrument(s) of award and the vesting schedule outlined therein. Your severance or Extension Period is defined by the applicable stock option plan. The remaining portion of stock options and/or RSUs that do not vest shall be forfeited and cancelled.

All vested stock options granted to you under the 1986 Plan on or prior to May 15, 2000 must be exercised prior to the end of your severance period, but not in any case after the expiry date for the applicable award. You will have a further ninety (90) calendar day period following the end of your severance or Extension Period to exercise any vested stock options granted to you after May 15, 2000 under the 1986 Plan, under the 2000 Plan or under the 2005 SIP Plan, but not in any case after the expiry date for the applicable award.

With respect to RSUs, vested RSUs will be settled in accordance with the terms and conditions of the 2005 SIP Plan and the applicable instrument(s) of award.

Should you be considered a retiree in accordance with the 1986 Plan, the 2000 Plan, or the 2005 SIP Plan, the vesting and exercising/settlement of your stock options/RSUs shall be subject to the terms and conditions of the applicable plan and the applicable instrument(s) of grant and/or instrument(s) of award.

Your rights with respect to stock options awarded under a stock option plan previously assumed by Nortel in connection with certain past merger and acquisition transactions shall be determined in accordance with the applicable plan and instrument of grant.

You understand and agree that if you have the designation of either "Reporting" or "Non-Reporting" Insider pursuant to Corporate Policy 320.28 of Nortel Networks Corporation (and under applicable Canadian/US securities legislation for Reporting Insiders), you will cease to have this designation effective 12:01 a.m. the day following your termination date. Notwithstanding the fact that you will no longer have this designation, if you are in possession of material non-public information relating to Nortel Networks, you are prohibited from trading in Nortel Networks securities (or informing another person of the material non-public information) in accordance with applicable laws. If you are a "Reporting" Insider, you understand that you are required to amend your insider profile within 10 days of your termination date on the Canadian System for Electronic Disclosure by Insiders (SEDI) to indicate that you are no longer a "Reporting" Insider of Nortel Networks. You should contact the Insider Reporting Department at (905) 863-1229 and fax (905) 863-8324 for assistance in amending the SEDI profile.

K. Raymond Patterson
December 4, 2008
Page 3

Please find attached a pension estimate, and a Benefit Information Summary.

You hereby confirm that you have accounted for and returned to Nortel Networks all property (including but not limited to documents and disks, any Nortel Networks car, mobile telephone, credit cards, equipment, keys and passes, including the Nortel Networks ID badge), belonging to Nortel Networks which is or has been in your possession or under your control. Documents and disks shall include but not be limited to (i) correspondence, files, e-mails, annual reports, minutes, plans, records, surveys, software, diagrams, computer print-outs, floppy disks, manuals, customer documentation or any other medium for storing information, and (ii) the information as described in the documents attached to this letter identified as DATA PRESERVATION INSTRUCTIONS (the "Instructions"). Your signature at the end of this letter confirms that you have read, do understand, agree, and give consent concerning the statements in the Instructions.

You acknowledge that you continue to be bound by the terms of the Agreement Relating to Intellectual Property and Confidentiality, and any related agreements, which you executed in the course of your hiring and employment by the Corporation. You confirm that your entire right, title and interest in all intellectual property as generally described in such agreements with the Corporation, are assigned to the Corporation regardless of the exact terms in, or the substance of, such an agreement between you and the Corporation. You shall continue to treat in a confidential manner any proprietary information or trade secrets acquired by you in respect of any business of the Corporation or relating to any other dealings, transactions or affairs, which may have come to your knowledge in any manner during your employment. Further, you will not speak of the Corporation or any of its employees, officers or representatives in disparaging terms nor in any other negative way communicate about your employment with the Corporation.

In consideration of the foregoing, and by accepting these arrangements, you hereby release and forever discharge the Corporation, its directors, officers, employees, and representatives of and from all manner of actions, causes of actions, suits, debts, accounts, covenants, contracts, claims, including, without limitation, claims under applicable employment standards and human rights legislation, and demands whatsoever which you have had, now have or which your heirs, executors, administrators, or assigns or any of them, hereafter can, shall or may have against the Corporation, its employees and representatives, for or by reasons of any cause, matter or thing whatsoever in connection with your employment with the Corporation, including without limitation the termination of such employment; and agree that, until your termination date, and for one year following the termination of your employment with the Corporation, you shall not, on behalf of yourself or others, directly or indirectly, recruit, induce or solicit or attempt to recruit, induce or solicit any individual who is supplying services to the Corporation, whether as an employee, contractor, consultant or otherwise, to terminate their employment or contractual arrangements with the Corporation or to accept engagement with another person or entity unrelated to the Corporation.

You acknowledge that the payment and other arrangements offered herein do not represent an admission or recognition of liability on the part of the Corporation and they shall not be referred to, directly or indirectly, as such an admission or recognition of liability.

This letter constitutes the entire agreement of the parties with respect to the termination of your employment. There are no promises, understandings or representations other than those set forth herein. Further, this letter supersedes any other arrangements, written or otherwise, relating to your employment and the cessation of your employment. This letter may be modified only with a written instrument duly executed by you and an authorized representative of the Corporation.

The terms and conditions of this letter will be open for your review and consideration through the close of business on January 2009. If you have not returned an executed copy of this letter by that time, the terms and conditions set forth in this letter shall be withdrawn as of that time and date.

You acknowledge that you have read this letter, and that you understand all of its terms, and have executed it voluntarily, with full knowledge of its significance. Finally, you acknowledge that you understand you are hereby granting to the Corporation a full and final release as set forth above.

K. Raymond Paterson
October 30, 2008
Page 4

Please acknowledge that the foregoing correctly and completely sets forth your understanding of the arrangements, and your acceptance hereof, by signing, dating and returning to Tannette Ebel the attached second copy of this letter.

We wish to express our appreciation for your efforts during your employment with the Corporation.

Sincerely,

*Jammie Ebel on behalf of*

Gayle Lesley
Manager, Nortel Networks

Attachments:      Second copy of this letter
                  Distribution of Termination Allowance
                  /TD2 form
                  Source Deduction Relief Form
                  Benefit Information Summary
                  Pension Information
                  Data Preservation Instructions

c.c: Tannette Ebel

Signature:    *KRattur*

Date:    05/01/09.

*Signed agreement was returned
to me on Jan 8/09.
Tannette Ebel
ER prints*



**PERSONAL & CONFIDENTIAL**

**Without Prejudice**

December 11, 2008

Susan Petrella
212 4th Ave N.E.
Calgary AB
T2E 0J1

Dear Susan:

This letter confirms our discussion today, at which time you were advised that your employment will terminate on February 9, 2009. On the termination date, your service, employment, and all pay and benefits not expressly extended to you in this letter will end.

Henceforth, you are no longer required to attend at work, but you will continue to receive your current salary and benefits until the termination date. To assist you in finding alternate employment, the professional career transition services of Right Management will be provided to you.

As used in this letter, the term "Corporation" shall mean Nortel Networks Corporation, its subsidiaries and affiliates, their successors and assigns, and all of their past and present officers, directors, employees and agents (in their individual and representative capacities), in every case, individually and collectively.

Except to the extent disclosure may be required in connection with any professional advice you may seek or in connection with the professional outplacement services, you will treat as confidential the terms of this letter. Without limiting the generality of the foregoing, you shall not disclose directly or indirectly, the contents of this letter to any employees or former employees of the Corporation.

Conditional upon: (i) your compliance with all terms and conditions of this letter; and (ii) your not obtaining employment with the Corporation, prior to the termination date that would enable you to continue your employment with the Corporation, the Corporation shall, on or immediately following the termination date, pay you a lump sum of $81,510.00 less statutory deductions. This payment ("the termination payment") in addition to the provided period of paid notice is intended to recognize your past service with the Corporation and to compensate you in all respects for the loss of employment. It is inclusive of any severance and/or termination payment to which you may be entitled as a consequence of the termination of your employment under applicable employment standards legislation. Payment will be made to you upon receipt of an executed copy of this letter and the completed Distribution of Termination Allowance, which is attached. In accordance with the Income Tax Act, you are eligible, based on your years of service up to December 31, 1995, to make a deposit into an RRSP as a retiring allowance in the amount of $16,000.00. If you wish to direct a portion of the termination payment into an RRSP, you must also complete the attached TD2 form and return it, together with the executed second copy of this letter to the HR Shared Services Center.

If you recommence employment with the Corporation after the termination date but prior to February 8, 2010, you agree that you will return to the Corporation the portion of the termination payment equivalent to your gross weekly/daily salary with the Corporation multiplied by the number of weeks/days during which you were employed with the Corporation prior to February 8, 2010.

Prepared by HR Shared Services

Susan Petrella
December 11, 2008
Page 2

The Corporation will also pay unused vacation you have accrued, up to and including the termination date, in accordance with the applicable policy and practice.

If by February 8, 2010, and notwithstanding your reasonable and continuous efforts to find alternate employment, you have not found or been offered alternate employment or engaged in other remunerative activity, the Corporation will provide additional bi-weekly payments based on your current wage rate (less applicable deductions) for a period of up to 8 weeks. To qualify for payment, you will be required to furnish, from time-to-time, evidence satisfactory to the Corporation of your efforts as above, which may include proof that you have remained active in accessing the services of the assigned outplacement firm, and are continuing your search to secure alternate employment or other remunerative activity. You may also be required to produce evidence of any and all income you have received subsequent to your receipt of notice of termination by the Corporation.

If you are in an Annual Incentive Plan-eligible position, your eligibility for an incentive award bonus for the current calendar year will be determined by the terms and conditions of the relevant plan in effect at the time. Eligibility shall not be construed as a right to such payment. In the event that you receive an award, it will be paid at the same time that other Annual Incentive Plan participants receive their awards.

You will not be eligible for any future or additional grant(s) of stock options or award(s) of restricted stock units (RSUs). The Corporation will allow you to vest until **February 8, 2010** the end of your severance or Extension Period, any stock options and/or RSUs granted to you under the Nortel Networks Corporation 1985 Stock Option Plan as Amended and Restated ("the 1986 Plan"), the Nortel Networks Corporation 2000 Stock Option Plan ("the 2000 Plan"), and/or the Nortel 2005 Stock Incentive Plan ("the 2005 SIP Plan"), subject to the terms and conditions of those plans and in accordance with the instrument(s) of grant and/or instrument(s) of award and the vesting schedule outlined therein. Your severance or Extension Period is defined by the applicable stock option plan. The remaining portion of stock options and/or RSUs that do not vest shall be forfeited and cancelled.

All vested stock options granted to you under the 1986 Plan on or prior to May 15, 2000 must be exercised prior to the end of your severance period, but not in any case after the expiry date for the applicable award.    You will have a further ninety (90) calendar day period following the end of your severance or Extension Period to exercise any vested stock options granted to you after May 15, 2000 under the 1986 Plan, under the 2000 Plan or under the 2005 SIP Plan, but not in any case after the expiry date for the applicable award.

With respect to RSUs, vested RSUs will be settled in accordance with the terms and conditions of the 2005 SIP Plan and the applicable instrument(s) of award.

Should you be considered a retiree in accordance with the 1986 Plan, the 2000 Plan, or the 2005 SIP Plan, the vesting and exercising/settlement of your stock options/RSUs shall be subject to the terms and conditions of the applicable plan and the applicable instrument(s) of grant and/or instrument(s) of award.

Your rights with respect to stock options awarded under a stock option plan previously assumed by Nortel in connection with certain past merger and acquisition transactions shall be determined in accordance with the applicable plan and instrument of grant.

You understand and agree that if you have the designation of either "Reporting" or "Non-Reporting" Insider pursuant to Corporate Policy 320.28 of Nortel Networks Corporation (and under applicable Canadian/US securities legislation for Reporting Insiders), you will cease to have this designation effective 12:01 a.m. the day following your termination date. Notwithstanding the fact that you will no longer have this designation, if you are in possession of material non-public information relating to Nortel Networks, you are prohibited from trading in Nortel Networks securities (or informing another person of the material non-public information) in accordance with applicable laws. If you are a "Reporting" Insider, you understand that you are required to amend your insider profile within 10 days of your termination date on the Canadian System for Electronic Disclosure by Insiders (SEDI) to indicate that you are no longer a "Reporting" Insider of Nortel Networks. You should contact the Insider Reporting Department at (905) 863-1220 and fax (905) 863-8524 for assistance in amending the SEDI profile.

Prepared by HR Shared Services

Susan Petrella
December 11, 2008
Page 3

Please find attached a pension estimate, and a Benefit Information Summary.

You hereby confirm that you have accounted for and returned to Nortel Networks all property (including but not limited to documents and disks, any Nortel Networks car, mobile telephone, credit cards, equipment, keys and passes, including the Nortel Networks ID badge), belonging to Nortel Networks which is or has been in your possession or under your control. Documents and disks shall include but not be limited to (i) correspondence, files, e-mails, memos, reports, minutes, plans, records, surveys, software, diagrams, computer print-outs, floppy disks, manuals, customer documentation or any other medium for storing information, and (ii) the Information as described in the documents attached to this letter identified as **DATA PRESERVATION INSTRUCTIONS (the "Instructions")**. Your signature at the end of this letter confirms that you have read, do understand, agree, and give consent concerning the statements in the Instructions.

You acknowledge that you continue to be bound by the terms of the Agreement Relating to Intellectual Property and Confidentiality, and any related agreements, which you executed in the course of your hiring and employment by the Corporation. You confirm that your entire right, title and interest to all intellectual property as generally described in such agreements with the Corporation, are assigned to the Corporation regardless of the exact terms in, or the existence of, such an agreement between you and the Corporation. You shall continue to treat in a confidential manner any proprietary information or trade secrets acquired by you in respect of any business of the Corporation or relating to any other dealings, transactions or affairs, which may have come to your knowledge in any manner during your employment. Further, you will not speak of the Corporation or any of its employees, officers or representatives in disparaging terms nor in any other negative way communicate about your employment with the Corporation.

In consideration of the foregoing, and by accepting these arrangements, you hereby: release and forever discharge the Corporation, its directors, officers, employees, and representatives of and from all manner of actions, causes of actions, suits, debts, accounts, covenants, contracts, claims, including, without limitation, claims under applicable employment standards and human rights legislation, and demands whatsoever which you have had, now have or which your heirs, executors, administrators, or assigns or any of them, hereafter can, shall or may have against the Corporation, its employees and representatives, for or by reasons of any cause, matter or thing whatsoever in connection with your employment with the Corporation, including without limitation the termination of such employment; and agree that , until your termination date, and for one year following the termination of your employment with the Corporation, you shall not, on behalf of yourself or others, directly or indirectly, recruit, induce or solicit or attempt to recruit, induce or solicit any individual who is supplying services to the Corporation, whether as an employee, contractor, consultant or otherwise, to terminate their employment or contractual arrangements with the Corporation or to accept engagement with another person or entity unrelated to the Corporation.

You acknowledge that the payment and other arrangements offered herein do not represent an admission or recognition of liability on the part of the Corporation and they shall not be referred to, directly or indirectly, as such an admission or recognition of liability.

This letter constitutes the entire agreement of the parties with respect to the termination of your employment. There are no promises, understandings or representations other than those set forth herein. Further, this letter supersedes any other arrangements, written or otherwise, relating to your employment and the cessation of your employment. This letter may be modified only with a written instrument duly executed by you and an authorized representative of the Corporation.

The terms and conditions of this letter will be open for your review and consideration through the close of business on January 10, 2009. If you have not returned an executed copy of this letter by that time, the terms and conditions set forth in this letter shall be withdrawn as of that time and date.

You acknowledge that you have read this letter, and that you understand all of its terms, and have executed it voluntarily, with full knowledge of its significance. Finally, you acknowledge that you understand you are hereby granting to the Corporation a full and final release as set forth above.

Prepared by HR Shared Services

Susan Petrella
December 11, 2008
Page 4

Please acknowledge that the foregoing correctly and completely sets forth your understanding of the arrangements, and your acceptance hereof, by signing, dating and returning to the HR Shared Services Center the attached second copy of this letter.

We wish to express our appreciation for your efforts during your employment with the Corporation.

Sincerely,

George Munson
Manager, Nortel Networks

Attachments:     Second copy of this letter
                 Distribution of Termination Allowance
                 TD2 form
                 Source Deduction Relief Form
                 Benefit Information Summary
                 Pension Information (if applicable)
                 Data Preservation Instructions

Signature:

Date:            Dec 23, 2008.

Prepared by HR Shared Services

**00735**

 

**N⊘RTEL**

<u>CONFIDENTIAL-SPECIAL HANDLING</u>

April 30, 2008

Alex Pierson
2298 Moira Road,
RR#2,
Roslin, ON
K0K 2Y0

Dear Alex:

This letter ("Agreement") records the arrangements between you and Nortel Networks Corporation, concerning the cessation of your responsibilities as General Manager,  LG-Nortel . The arrangements are as follows:

<u>Cessation of Employment</u>

1.  As used in this Agreement, the term "Corporation" shall mean Nortel Networks Corporation, its subsidiaries and affiliates, their successors and assigns, and all of their past and present officers, directors, employees and agents (in their individual and representative capacities), in every case, individually and collectively.

2.  Effective as of the close of business on May 30, 2008, your employment relationship with the Corporation shall cease.  Effective May 31, 2008,  all previous external responsibilities which you had as General Manager,  LG-Nortel will be assumed by a person designated by the Corporation, including any participation in industry or other associations representing the Corporation.

3.  You understand and agree that if you have the designation of either "Reporting" or "Non-Reporting" Insider pursuant to Corporate Policy 320.28 of Nortel Networks Corporation (and under applicable Canadian/US securities legislation for Reporting Insiders), you will cease to have this designation effective 12:01 a.m. the day following your termination date (i.e. May 31, 2008 ).  Notwithstanding the fact that you will no longer have this designation, if you are in possession of material non-public information relating to Nortel Networks, you are prohibited from trading in Nortel Networks securities (or informing another person of the material non-public information) in accordance with applicable laws. If you are a "Reporting" Insider, you understand that you are required to amend your insider profile within ten (10) days of your termination date on the Canadian System for Electronic Disclosure by Insiders (SEDI) to indicate that you are no longer a "Reporting" Insider of Nortel Networks.  You should contact the Insider Reporting Department at (905) 863-1220 and fax (905) 863-8524 for assistance in amending the SEDI profile.

- 2 -

<u>Compensation, Benefits & Perquisites</u>

4.      Conditional upon (i) your compliance with all terms and conditions of this Agreement, and (ii) you not obtaining employment with the Corporation, the Corporation shall:

*(Salary continuation)*

(a)      pay you the sum of $10,769.23 bi-weekly, less appropriate deductions, commencing on June 02, 2008 and terminating on the earlier of the effective date of your re-employment or November 27, 2009 ("Salary Continuation Period");  if the effective date of your re-employment is prior to November 27, 2009, you will be paid a lump sum amount, less appropriate deductions, equal to the balance of salary you would have received between the effective date of re-employment and November 27, 2009;

*(Vacation benefit)*

(b)      pay you, on or before June 30, 2008 a lump sum amount equivalent to your current accrued but unused vacation benefit with no further vacation accrual subsequent to May 30, 2008;

*(Incentive award)*

(c)      your eligibility for an incentive award payment for the current calendar year will be determined by the Corporation based on the terms and conditions of the plan in effect at the relevant time, with no further entitlement during the Salary Continuance Period.  Eligibility shall not be construed as a right to such payment;

*(Insurance benefits)*

(d)      continue your participation during the Salary Continuation Period, subject to the provisions of the applicable plans, in group medical, life insurance and dental insurance, for you and any of the dependents currently covered;  continue your participation in Short Term Disability, Long Term Disability and Accidental Death and Dismemberment insurance at your present levels of coverage through to June 30, 2008;  you shall continue to make any required contributions for such benefits described in this section at the rates applicable for employees through the deductions authorized in paragraph 4(a);

*(Career transition services)*

(e)      make available to you executive career transition services through Right Management Consultants to assist you in securing new employment, and pay the professional fees for such services as are reasonably incurred;

*(Pension benefits)*

(f)      subject to paragraphs 7 and 4(a), continue your participation in the Capital Accumulation and Retirement Program (CARP) during the Salary Continuation Period, pursuant to the terms of the Northern Telecom Managerial and Non-Negotiated Pension Plan (the "Pension Plan") and the changes to the Pension Plan which will become effective January 1, 2008;  your final CARP benefits will be calculated based on pensionable service you have accrued to the conclusion of the Salary Continuation Period;

- 3 -

*(Stock options, Restricted Stock Units and Performance Stock Units)*

(g) consider you not eligible for any future or additional grant(s) of stock options or award(s) of restricted stock units (RSUs) or performance stock units (PSU's) . The Corporation will allow you to vest until November 27, 2009, the end of your Salary Continuance Period, any stock options and/or RSUs granted to you under the Nortel Networks Corporation 1986 Stock Option Plan as Amended and Restated ("the 1986 Plan"), the Nortel Networks Corporation 2000 Stock Option Plan ("the 2000 Plan"), and/or the Nortel 2005 Stock Incentive Plan ("the 2005 SIP Plan"), subject to the terms and conditions of those plans and in accordance with the instrument(s) of grant and/or instrument(s) of award and the vesting schedule outlined therein. Your Salary Continuance Period is defined by the applicable stock option plan. The remaining portion of stock options and/or RSUs that do not vest shall be forfeited and cancelled. All PSU's that have not vested as of the date of termination (May 30, 2008) shall be forfeited.

All vested stock options granted to you under the 1986 Plan on or prior to May 15, 2000 must be exercised prior to the end of your Salary Continuance Period, but not in any case after the expiry date for the applicable award. You will have a further ninety (90) calendar day period following the end of your Salary Continuance Period to exercise any vested stock options granted to you after May 15, 2000 under the 1986 Plan, under the 2000 Plan or under the 2005 SIP Plan, but not in any case after the expiry date for the applicable award.

With respect to RSUs, vested RSUs will be settled in accordance with the terms and conditions of the 2005 SIP Plan and the applicable instrument(s) of award.

Should you be considered a retiree in accordance with the 1986 Plan, the 2000 Plan, or the 2005 SIP Plan, the vesting and exercising/settlement of your stock options/RSUs shall be subject to the terms and conditions of the applicable plan and the applicable instrument(s) of grant and/or instrument(s) of award.

Your rights with respect to stock options awarded under a stock option plan previously assumed by Nortel in connection with certain past merger and acquisition transactions shall be determined in accordance with the applicable plan and instrument of grant.

*(Investment Plan)*

(h) following your completion of the necessary documentation, distribute your account balance in accordance with the provisions of the Nortel Networks Investment Plan. Your right to contribute to and participate in the Investment Plan will cease at the end of the Salary Continuation Period;

*(Withholdings)*

(i) with respect to any monies or monetary equivalents to be paid hereunder, in its sole discretion withhold appropriate amounts concerning any and all applicable federal and provincial taxes.

## Cessation of Compensation, Benefits and Perquisites

5. All Corporation compensation, benefits and perquisites not expressly extended to you pursuant to this Agreement shall be terminated effective 12:01 a.m. May 31, 2008.

## Expense Accounts

6. You shall reconcile and settle your employee expense account, and any advances made to you by the Corporation, as soon as possible but not later than June 30, 2008.

## Lump Sum Payment Option

- 4 -

7.  Notwithstanding the foregoing, you will have the right at any time on written notice to the Corporation, to require the Corporation to pay to you within a period of 15 business days, as a lump sum, the balance remaining of the payments referred to in paragraph 4(a).  In the event of such lump payment being requested and paid:

   (a)   all benefits referred to in paragraphs 4 (c), (d), (e), and (h) and future accruals referred to in paragraphs 4(f) will cease at the end of the month in which such notice is given to the Corporation, in which event your final retirement benefits will be re-calculated and communicated to you in a separate letter; and

   (b)   the exercise and vesting of stock options will continue to be subject to the provisions of the Nortel Networks Corporation 1986 Stock Option Plan as Amended and Restated ("the 1986 Plan"), the Nortel Networks Corporation 2000 Stock Option Plan ("the 2000 Plan"), and the Nortel 2005 Stock Incentive Plan ("the 2005 SIP Plan"), as applicable.

<u>Confidentiality</u>

8.  You acknowledge that you continue to be bound by the terms of the Agreement Relating to Intellectual Property and Confidentiality and any related agreements which you executed in the course of your hiring and employment by the Corporation.  You confirm that your entire right, title, and interest to all intellectual property as generally described in such agreements with the Corporation are assigned to the Corporation regardless of the exact terms in, or the existence of, such an agreement between you and the Corporation.

   With respect to inventions, discoveries, improvements and designs as covered by the above paragraph, you have disclosed or will promptly disclose them in writing to the Corporation, and you will, on the Corporation's request, promptly execute a specific assignment of title to the Corporation or its designee, and do anything else reasonably necessary to enable the Corporation to secure a patent or other form of protection in Canada, the United States, and other countries.  Any information pertaining to such inventions, discoveries, improvements and designs is considered the confidential information of the Corporation until and unless patented or published by the Corporation.

   Further, you agree that this Agreement is a confidential document as are all the terms and conditions expressed herein.  Accordingly, you agree that you will not directly or indirectly disclose, publicize or discuss this Agreement, including the terms and/or conditions, with any employee and/or former employee of the Corporation or any other person except your spouse, your lawyer and/or accountant, financial advisor and/or outplacement counsellor.  In the event that you discuss this Agreement with any of the aforementioned individuals, it shall be your duty, responsibility and obligation to advise said individual(s) of the confidential nature of this Agreement and direct them not to discuss the terms and/or conditions of this Agreement with any person.

   Also, you shall continue to maintain the confidentiality of all trade secrets and confidential, proprietary, commercial, technical or other information;  and specifically you agree that you shall not at any time during or following your employment with the Corporation, disclose, other than to the Corporation's authorized personnel, or otherwise use for non-Corporation purposes, any confidential or proprietary information or know-how of any nature (whether or not a trade secret) relating to an activity of the Corporation to any invention, which is owned or licensed by the Corporation.  You shall continue to maintain the confidentiality of any dealings, transactions or affairs of the Corporation which may have come to your knowledge in any manner during your employment.  Further, you agree not to reveal, disclose, or cause to be revealed or disclosed, anything with respect to the Corporation that is injurious or harmful to any of its interests, or the interests of its employees, officers or directors.  In addition, during the period May 30, 2008 through to November 27, 2009 inclusive you:

- 5 -

(i)     shall issue no public statement on the business affairs, policies or the like of the Corporation without the prior written consent of the Corporation and, without limiting the foregoing, you shall not disparage the Corporation;

(ii)     shall not, on behalf of yourself or others, directly or indirectly, recruit, induce or solicit or attempt to recruit, induce or solicit any individual who is supplying services to the Corporation, whether as an employee, contractor, consultant or otherwise, to terminate their employment or contractual arrangements with the Corporation or to accept engagement with another person or entity unrelated to the Corporation; and,

(iii)     shall not become an employee, a consultant, contractor, representative, or in any manner or capacity accept any assignment, project or work for a competitor of the Corporation, without prior written approval by the Senior Vice President, Human Resources, provided that such approval shall not be unreasonably withheld.

Other

9.     Absent prior approval by the Senior Vice President, Human Resources, following your notification to the Corporation pursuant to paragraph 10, not to be unreasonably withheld, the Corporation's obligations under paragraphs 4 (a), (c), (d), (e), (f), (g), (h) and 7 will terminate forthwith if you become an employee, consultant, contractor or representative of any competitor of the Corporation. Furthermore, you agree that if any of the commitments in paragraph 8 are breached, the Corporation has the right to recover, in addition to any other remedy or entitlement the Corporation may have as a result of the breach, an amount equal to the difference between the Market Value of the shares, as of the date of exercise, which you purchased during the Salary Continuation Period as a result of the exercise of your options, and the Subscription Price of those shares covered by such options.

Notice

10.     Upon the occurrence of any contingency which affects your rights in or to any subsequent payment or benefit, or affects the Corporation's rights under this Agreement, including without limitation, your obtaining new employment, you shall, within ten (10) days of such occurrence, provide written notice to the Corporation of that event. Such notice shall be sent in writing to the Senior Vice President, Human Resources.

Advice and Assistance

11.     You shall make available to the Corporation advice, assistance and information that shall include, but not be limited to, offering and explaining evidence, providing sworn statements, participation in discovery, and trial preparation testimony as may be deemed necessary by the Corporation concerning the Corporation's position in any legal proceedings involving issues brought against or initiated by the Corporation of which you have knowledge. In the event it is necessary for you to provide the aforementioned services, then the Corporation shall reimburse you for authorized, reasonable and documented travel expenses, including, but not limited to, transportation, lodging and meals.

Company Property and Information Preservation

12.     Prior to your termination date, and before receiving any monies pursuant to this Agreement, you shall return to Nortel Networks any and all property of Nortel Networks currently in your possession and/or subject to your control, whether such material shall be written instruments or tapes in electronic and/or recorded format.

Nortel Networks' Corporate Procedure 206.01 states, "All data, including personal documents and messages, stored on or transmitted through Nortel Technology Resources are, and remain at all times, the property of Nortel." In addition, all work product that you have produced during your employment with Nortel Networks is the property of Nortel Networks. Therefore, all information, (however recorded or

- 6 -

stored) ("Information") in your possession and/or that you have created in the course of your employment with Nortel Networks (whether or not currently in your possession or control) is the property of Nortel Networks.

You are aware that as a result of ongoing investigations and civil litigation, Nortel Networks is required to collect and preserve certain information. Therefore, you agree to take affirmative steps to preserve all Information in your possession, custody and control (including information controlled by your assistant, if any).

As a result, you have the responsibility to secure relevant Information.

You shall gather (including from on-site and off-site storage) and return to Nortel Networks all physical copies of Information (for example and without limitation, computer discs, Jaz Drive tapes, paper copies) and arrange for this information to be provided to your manager. In addition, Nortel Networks will take possession of your computer and preserve all electronic Information on your computer, as well as any related servers on which you have Information stored, at the time your computer is turned into Nortel Networks. You should provide your manager with all document-level passwords that are necessary to review any of the electronic documents. Any Information located in your home, including on a home personal computer, must be returned to Nortel Networks and deleted from your home computer.

Compliance with this requirement is not optional. Given the penalties which the law provides, it is in everyone's interest to comply as quickly and completely as possible. None of these materials should be destroyed, even if they are a printout of something on a hard drive, until the investigations and all of the ongoing litigation is concluded. Should you have any questions regarding the implementation of these preservation instructions, please contact your HR prime, without delay.

The Information will be used by Nortel Networks for general business purposes and may also be provided to governmental authorities in response to their requests or disclosed in any relevant private litigation to which Nortel Networks is a party. Also, the Information may be used by and provided to entities within the Nortel Networks group of companies and/or Nortel Networks external advisors. In some instances, the recipients of this Information will be located outside your geographic area. To the extent that the Information contains any personal information, you consent to the collection, transfer and disclosure of that information by Nortel Networks to Nortel Networks entities, third parties and governmental authorities within and outside of your geographic area for the purposes set out above.

<u>Review Period</u>

13.    The terms and conditions of this Agreement will be open for your review and consideration through the close of business May 23, 2008. If you have not returned an executed copy of this Agreement, by facsimile or the original, to the undersigned, by the close of business on May 23, 2008, then the terms and conditions set forth in this Agreement shall be withdrawn as of that time and date.

- 7 -

Release

14.  In consideration of the monies and other benefits to be provided to you as set forth herein, you hereby fully and completely release the Corporation, its subsidiaries and affiliates, and their respective directors, officers and employees, to the extent permitted by law, from any and all real or pretended claims, causes of actions, rights, damages or injuries of any nature whatsoever you may have had or now have, whether known or unknown, (except for promises and commitments contained herein), including, without limitation, any and all such claims, causes of action, rights, damages or injuries arising out of, or related to, your employment by the said companies and/or the termination thereof, your ceasing to hold office in the said companies, or arising under any statute, including, without limitation, the Employment Standards Act (Ontario), or at common law. Furthermore, you understand that this release shall be binding upon you and your heirs, administrators, representatives, executors, successors, and assigns and its enforceability shall not be challenged.

You acknowledge that you have read this letter and that you understand all of its terms and have executed it voluntarily with full knowledge of its significance. Further, you acknowledge that you have had an adequate opportunity to review and consider the arrangements, including at your discretion, the right to discuss this Agreement with legal counsel of your choice. Finally, you acknowledge that you understand you are hereby granting to the Corporation a full and final release as set forth above.

15.  This Agreement constitutes the entire understanding of the parties with respect to your employment, including the cessation of your employment, and there are no promises, understandings or representations other than those set forth herein. This Agreement may be modified only with a written instrument duly executed by you and the Corporation.

Please acknowledge that the foregoing correctly and completely sets forth your understanding of the arrangements, and your acceptance hereof, by signing, dating and returning to me, the attached second copy of this Agreement.

Yours truly,

Larry Schruder
Director, Employee Relations
Nortel Networks

Employee Signature

May 15/08

Date

Attach.   Second copy of this Agreement
          Pension Estimate(s)
          Stock Option Summary



**PERSONAL & CONFIDENTIAL**

**Without Prejudice**

December 3, 2008 – revised January 13, 2009

Julia Piggott
10 Lauderfield Crescent
Brampton ON
L6S 2R2

Dear Julia:

This letter confirms our discussion today, at which time you were advised that as of December 11, 2008, you will no longer be required to attend at work and will commence a 60 day non-working notice period with continuing entitlement to your current salary and benefits. Your employment will terminate on February 9, 2009. On the termination date, your service, employment, and all pay and benefits not expressly extended to you in this letter will end.

To assist you in finding alternate employment, the professional career transition services of Right Management Consultants will be provided to you.

As used in this letter, the term "Corporation" shall mean Nortel Networks Corporation, its subsidiaries and affiliates, their successors and assigns, and all of their past and present officers, directors, employees and agents (in their individual and representative capacities), in every case, individually and collectively.

Except to the extent disclosure may be required in connection with any professional advice you may seek or in connection with the professional outplacement services, you will treat as confidential the terms of this letter. Without limiting the generality of the foregoing, you shall not disclose directly or indirectly, the contents of this letter to any employee or former employee of the Corporation.

Conditional upon: (i) your compliance with all terms and conditions of this letter; and (ii) your not obtaining employment with the Corporation, prior to the termination date, that would enable you to continue your employment with the Corporation, the Corporation shall, on or immediately following the termination date, pay you a lump sum of $282,392.50 less statutory deductions and any amounts that you must repay the Corporation pursuant to the Sales Incentive Compensation Plan. This payment ("the termination payment") is addition to the provided period of paid notice, is intended to recognize your past service with the Corporation and to compensate you in all respects for the loss of employment. It is inclusive of any severance and/or termination payment to which you may be entitled as a consequence of the termination of your employment under applicable employment standards legislation. Payment will be made to you upon receipt of an executed copy of this letter and the completed Distribution of Termination Allowance, which is attached. In accordance with the Income Tax Act, you are eligible, based on your years of service up to December 31, 1995, to make a deposit into an RRSP as a retiring allowance in the amount of $34,000.00. If you wish to direct a portion off the termination payment into an RRSP, you must also complete the attached TD2 form and return it, together with the executed second copy of this letter to Tammie Ebel.

If by May 10, 2010, and notwithstanding your reasonable and continuous efforts to find alternate employment, you have not found or been offered alternate employment or engaged in other remunerative activity, the Corporation will provide additional bi-weekly payments based on your current wage rate (less applicable deductions) for a period of up to 13 weeks. To qualify for payment, you will be required to furnish, from time-to-time, evidence satisfactory to the Corporation of your efforts as above, which may include proof that you have remained active in accessing the services of the assigned outplacement firm, and are continuing your search to secure alternate employment or other remunerative activity. You may also be required to produce evidence of any and all income you have received subsequent to your notice of termination by the Corporation.

Prepared by HR Shared Services

Julie Piggott
December 3, 2008 – *revised January 13, 2009*.
Page 2

If you recommence employment with the Corporation after the termination date but prior to May 10, 2010, you agree that you will return to the Corporation the portion of the termination payment equivalent to your gross weekly/daily salary with the Corporation multiplied by the number of weeks/days during which you were employed with the Corporation prior to May 10, 2010.

The Corporation will also pay unused vacation you have accrued, up to and including the termination date, in accordance with the applicable policy and practice.

If you are in an Annual Incentive Plan-eligible position, your eligibility for an incentive award bonus for the current calendar year will be determined by the terms and conditions of the relevant plan in effect at the time. Eligibility shall not be construed as a right to such payment. In the event that you receive an award, it will be paid at the same time that other Annual Incentive Plan participants receive their awards.

You will not be eligible for any future or additional grant(s) of stock options or award(s) of restricted stock units (RSUs). The Corporation will allow you to vest until May 10, 2010 the end of your severance or Extension Period, any stock options and/or RSUs granted to you under the Nortel Networks Corporation 1986 Stock Option Plan as Amended and Restated ("the 1986 Plan"), the Nortel Networks Corporation 2000 Stock Option Plan ("the 2000 Plan"), and/or the Nortel 2005 Stock Incentive Plan ("the 2005 SIP Plan"), subject to the terms and conditions of those plans and in accordance with the instrument(s) of grant and/or instrument(s) of award and the vesting schedule outlined therein. Your severance or Extension Period is defined by the applicable stock option plan. The remaining portion of stock options and/or RSUs that do not vest shall be forfeited and cancelled.

All vested stock options granted to you under the 1986 Plan on or prior to May 15, 2000 must be exercised prior to the end of your severance period, but not in any case after the expiry date for the applicable award. You will have a further ninety (90) calendar day period following the end of your severance or Extension Period to exercise any vested stock options granted to you after May 15, 2000 under the 1986 Plan, under the 2000 Plan or under the 2005 SIP Plan, but not in any case after the expiry date for the applicable award.

With respect to RSUs, vested RSUs will be settled in accordance with the terms and conditions of the 2005 SIP Plan and the applicable instrument(s) of award.

Should you be considered a retiree in accordance with the 1986 Plan, the 2000 Plan, or the 2005 SIP Plan, the vesting and exercising/settlement of your stock options/RSUs shall be subject to the terms and conditions of the applicable plan and the applicable instrument(s) of grant and/or instrument(s) of award.

Your rights with respect to stock options awarded under a stock option plan previously assumed by Nortel in connection with certain past merger and acquisition transactions shall be determined in accordance with the applicable plan and instrument of grant.

You understand and agree that if you have the designation of either "Reporting" or "Non-Reporting" Insider pursuant to Corporate Policy 320.28 of Nortel Networks Corporation (and under applicable Canadian/US securities legislation for Reporting Insiders), you will cease to have this designation effective 12:01 a.m. the day following your termination date. Notwithstanding the fact that you will no longer have this designation, if you are in possession of material non-public information relating to Nortel Networks, you are prohibited from trading in Nortel Networks securities (or informing another person of the material non-public information) in accordance with applicable laws. If you are a "Reporting" Insider, you understand that you are required to amend your Insider profile within 10 days of your termination date on the Canadian System for Electronic Disclosure by Insiders (SEDI) to indicate that you are no longer a "Reporting" Insider of Nortel Networks. You should contact the Insider Reporting Department at (905) 863-1220 and fax (905) 863-8524 for assistance in amending the SEDI profile.

Julie Piggott
December 2, 2008 – revised January 13, 2009
Page 3

Please find attached a pension estimate, and a Benefit Information Summary.

If you have a Corporation-leased automobile and/or cellular phone, the Corporation shall allow you to elect either Option 1 or Option 2 set forth below. Please indicate your election of Option 1 or Option 2 in the space provided at the end of this letter.

Option 1:  You may purchase, on or before the earlier of February 9, 2009 or the expiry of the lease, the Corporation-leased automobile (the "Vehicle"), including the cellular phone ("Telephone"), if any, in the Vehicle, currently in your possession. For additional information please contact your fleet administrator.

Option 2:  You may continue to use the Vehicle and Telephone, if any in the vehicle, currently in your possession, as long as such Vehicle is operational, until the earlier of: February 9, 2009 the date you commence new employment, or the expiry of the lease. During this period, insurance within the limits of current coverage shall be provided by the Corporation; provided, however, that the Corporation shall have the right to change such coverage to the extent that the Corporation is generally changing this coverage. Any additional coverage shall be at your sole expense. However, it is agreed that the Corporation has no obligation to replace the Vehicle should it become non-operational or not available for your use due to circumstances including, but not limited to, theft, damage or mechanical failure. You shall return the Vehicle and Telephone to the Corporation in the same condition they were in as of December 11, 2008 (normal use excepted), on the earliest of: the date you commence new employment, February 9, 2009 or the expiry of the lease. In addition, thirty (30) days prior to your commencement of new employment or the date of termination or the expiry of the lease, whichever occurs first, you may elect to purchase the Vehicle by contacting your fleet administrator.

If you do not have a Corporation-leased automobile and/or telephone, but instead receive a vehicle allowance, the Corporation shall continue to provide until February 9, 2009 , the vehicle allowance. If you become re-employed, and the effective date of your re-employment is prior to February 9, 2009 you will be paid a lump sum amount, less applicable deductions, equal to the balance of the car allowance amount you would have received between the effective date of your re-employment and February 9, 2009. Furthermore, it is understood, and you agree, that you are responsible for all maintenance, repairs and operational expenses associated with the vehicle.

You hereby confirm that you have accounted for and returned to Nortel Networks all property (including but not limited to documents and disks, any Nortel Networks car, mobile telephone, credit cards, equipment, keys and passes, including the Nortel Networks ID badge), belonging to Nortel Networks which is or has been in your possession or under your control. Documents and disks shall include but not be limited to (I) correspondence, files, e-mails, memos, reports, minutes, plans, records, surveys, software, diagrams, computer print-outs, floppy disks, manuals, customer documentation or any other medium for storing information, and (II) the information as described in the documents attached to this letter identified as DATA PRESERVATION INSTRUCTIONS (the "Instructions"). Your signature at the end of this letter confirms that you have read, do understand, agree, and give consent concerning the statements in the Instructions.

You acknowledge that you continue to be bound by the terms of the Agreement Relating to Intellectual Property and Confidentiality, and any related agreements, which you executed in the course of your hiring and employment by the Corporation. You confirm that your entire right, title and interest to all intellectual property as generally described in such agreements with the Corporation, are assigned to the Corporation regardless of the exact terms in, or the existence of, such an agreement between you and the Corporation. You shall continue to treat in a confidential manner any proprietary information or trade secrets acquired by you in respect of any business of the Corporation or relating to any other dealings, transactions or affairs, which may have come to your knowledge in any manner during your employment. Further, you will not speak of the Corporation or any of its employees, officers or representatives in disparaging terms nor in any other negative way communicate about your employment with the Corporation.

In consideration of the foregoing, and by accepting these arrangements, you hereby: release and forever discharge the Corporation, its directors, officers, employees, and representatives of and from all manner of actions, causes of actions, suits, debts, accounts, covenants, contracts, claims, including, without limitation, claims under applicable employment standards and human rights legislation, and demands whatsoever which you have had, now have or which your heirs, executors, administrators, or assigns or any of them, hereafter can, shall or may have against the Corporation, its employees and representatives, for or by reasons of any cause, matter or thing whatsoever in connection with your employment with the Corporation, including without limitation the termination of such employment; and agree that , until your termination date, and for one year following the termination of your employment with the Corporation, you shall not, on behalf of yourself or others, directly or indirectly, recruit, induce or solicit or attempt to recruit, induce or solicit any individual who is supplying services to the Corporation, whether as an employee, contractor, consultant or otherwise, to terminate their employment or contractual arrangements with the Corporation or to accept engagement with another person or entity unrelated to the Corporation.

Prepared by HR Shared Services

Julia Piggott
December 3, 2008 – revised January 13, 2009
Page 4

You acknowledge that the payment and other arrangements offered herein do not represent an admission or recognition of liability on the part of the Corporation and they shall not be referred to, directly or indirectly, as such an admission or recognition of liability.

This letter constitutes the entire agreement of the parties with respect to the termination of your employment. There are no promises, understandings or representations other than those set forth herein. Further, this letter supersedes any other arrangements, written or otherwise, relating to your employment and the cessation of your employment. This letter may be modified only with a written instrument duly executed by you and an authorized representative of the Corporation.

The terms and conditions of this letter will be open for your review and consideration through the close of business on January 15, 2009. If you have not returned an executed copy of this letter by this time, the terms and conditions set forth in this letter shall be withdrawn as of that time and date.   *January 15 OE*

You acknowledge that you have read this letter, and that you understand all of its terms, and have executed it voluntarily, with full knowledge of its significance. Finally, you acknowledge that you understand you are hereby granting to the Corporation a full and final release as set forth above.

Please acknowledge that the foregoing correctly and completely sets forth your understanding of the arrangements, and your acceptance hereof, by signing, dating and returning to the HR Shared Services Center the attached second copy of this letter.

We wish to express our appreciation for your efforts during your employment with the Corporation.

Sincerely,

*[signature]* Chil on behalf of

Patrick Lewis
Manager, Nortel Networks

Attachments:     Second copy of this letter
                 Distribution of Termination Allowance
                 TD2 form
                 Source Deduction Relief Form
                 Benefit Information Summary
                 Pension Information (if applicable)
                 Data Preservation Instructions


**IF YOU HAVE A LEASED CORPORATION VEHICLE AND TELEPHONE:**

I elect the provisions of _____ Option 1     OR  ✓ Option 2

Signature:  *[signature: Julia Piggott]*

Date:  *[handwritten: January 13, 2009]*


Prepared by HR Shared Services



**PERSONAL & CONFIDENTIAL**

**Without Prejudice**

December 2, 2008

Thomas Pintwala
2166 Deer Run Avenue
Burlington ON
L7M 2W6

Dear Thomas:

This letter confirms our discussion today, at which time you were advised that your employment will terminate on February 21, 2009. This will also confirm that you will continue to work until December 23, 2008, at which time you will commence a 60 day non-working notice period. On the termination date, your service, employment, and all pay and benefits not expressly extended to you in this letter will end.

You will continue to receive your current salary and benefits until the termination date. To assist you in finding alternate employment, the professional career transition services of Right Management will be provided to you.

As used in this letter, the term "Corporation" shall mean Nortel Networks Corporation, its subsidiaries and affiliates, their successors and assigns, and all of their past and present officers, directors, employees and agents (in their individual and representative capacities), in every case, individually and collectively.

**Except to the extent disclosure may be required in connection with any professional advice you may seek or in connection with the professional outplacement services, you will treat as confidential the terms of this letter. Without limiting the generality of the foregoing, you shall not disclose directly or indirectly, the contents of this letter to any employees or former employees of the Corporation.**

Conditional upon: (i) your compliance with all terms and conditions of this letter; and (ii) your not obtaining employment with the Corporation, prior to the termination date that would enable you to continue your employment with the Corporation, the Corporation shall, on or immediately following the termination date, pay you a lump sum of $102,505.00 less statutory deductions. This payment ("the termination payment") in addition to the provided period of paid notice is intended to recognize your past service with the Corporation and to compensate you in all respects for the loss of employment. It is inclusive of any severance and/or termination payment to which you may be entitled as a consequence of the termination of your employment under applicable employment standards legislation. Payment will be made to you upon receipt of an executed copy of this letter and the completed Distribution of Termination Allowance, which is attached. In accordance with the Income Tax Act, you are eligible, based on your years of service up to December 31, 1995, to make a deposit into an RRSP as a retiring allowance in the amount of $34,000.00. If you wish to direct a portion of the termination payment into an RRSP, you must also complete the attached TD2 form and return it, together with the executed second copy of this letter to Tammie Ebel.

If you recommence employment with the Corporation after the termination date but prior to May 22, 2010, you agree that you will return to the Corporation the portion of the termination payment equivalent to your gross weekly/daily salary with the Corporation multiplied by the number of weeks/days during which you were employed with the Corporation prior to May 22, 2010.

Prepared by HR Shared Services

Thomas Pintwala
December 2, 2008
Page 2

The Corporation will also pay unused vacation you have accrued, up to and including the termination date, in accordance with the applicable policy and practice.

If by May 22, 2010, and notwithstanding your reasonable and continuous efforts to find alternate employment, you have not found or been offered alternate employment or engaged in other remunerative activity, the Corporation will provide additional bi-weekly payments based on your current wage rate (less applicable deductions) for a period of up to 13 weeks. To qualify for payment, you will be required to furnish, from time-to-time, evidence satisfactory to the Corporation of your efforts as above, which may include proof that you have remained active in accessing the services of the assigned outplacement firm, and are continuing your search to secure alternate employment or other remunerative activity. You may also be required to produce evidence of any and all income you have received subsequent to your receipt of notice of termination by the Corporation.

If you are in an Annual Incentive Plan-eligible position, your eligibility for an incentive award bonus for the current calendar year will be determined by the terms and conditions of the relevant plan in effect at the time. Eligibility shall not be construed as a right to such payment. In the event that you receive an award, it will be paid at the same time that other Annual Incentive Plan participants receive their awards.

You will not be eligible for any future or additional grant(s) of stock options or award(s) of restricted stock units (RSUs). The Corporation will allow you to vest until May 22, 2010 the end of your severance or Extension Period, any stock options and/or RSUs granted to you under the Nortel Networks Corporation 1986 Stock Option Plan as Amended and Restated ("the 1986 Plan"), the Nortel Networks Corporation 2000 Stock Option Plan ("the 2000 Plan"), and/or the Nortel 2005 Stock Incentive Plan ("the 2005 SIP Plan"), subject to the terms and conditions of those plans and in accordance with the instrument(s) of grant and/or instrument(s) of award and the vesting schedule outlined therein. Your severance or Extension Period is defined by the applicable stock option plan. The remaining portion of stock options and/or RSUs that do not vest shall be forfeited and cancelled.

All vested stock options granted to you under the 1986 Plan on or prior to May 15, 2000 must be exercised prior to the end of your severance period, but not in any case after the expiry date for the applicable award.    You will have a further ninety (90) calendar day period following the end of your severance or Extension Period to exercise any vested stock options granted to you after May 15, 2000 under the 1986 Plan, under the 2000 Plan or under the 2005 SIP Plan, but not in any case after the expiry date for the applicable award.

With respect to RSUs, vested RSUs will be settled in accordance with the terms and conditions of the 2005 SIP Plan and the applicable instrument(s) of award.

Should you be considered a retiree in accordance with the 1986 Plan, the 2000 Plan, or the 2005 SIP Plan, the vesting and exercising/settlement of your stock options/RSUs shall be subject to the terms and conditions of the applicable plan and the applicable instrument(s) of grant and/or instrument(s) of award.

Your rights with respect to stock options awarded under a stock option plan previously assumed by Nortel in connection with certain past merger and acquisition transactions shall be determined in accordance with the applicable plan and instrument of grant.

You understand and agree that if you have the designation of either "Reporting" or "Non-Reporting" Insider pursuant to Corporate Policy 320.28 of Nortel Networks Corporation (and under applicable Canadian/US securities legislation for Reporting Insiders), you will cease to have this designation effective 12:01 a.m. the day following your termination date. Notwithstanding the fact that you will no longer have this designation, if you are in possession of material non-public information relating to Nortel Networks, you are prohibited from trading in Nortel Networks securities (or informing another person of the material non-public information) in accordance with applicable laws. If you are a "Reporting" Insider, you understand that you are required to amend your insider profile within 10 days of your termination date on the Canadian System for Electronic Disclosure by Insiders (SEDI) to indicate that you are no longer a "Reporting" Insider of Nortel Networks. You should contact the Insider Reporting Department at (905) 863-1220 and fax (905) 863-8524 for assistance in amending the SEDI profile.

Prepared by HR Shared Services

Thomas Pintwala
December 2, 2008
Page 3

Please find attached a pension estimate, and a Benefit Information Summary.

You hereby confirm that you have accounted for and returned to Nortel Networks all property (including but not limited to documents and disks, any Nortel Networks car, mobile telephone, credit cards, equipment, keys and passes, including the Nortel Networks ID badge), belonging to Nortel Networks which is or has been in your possession or under your control.  Documents and disks shall include but not be limited to (i) correspondence, files, e-mails, memos, reports, minutes, plans, records, surveys, software, diagrams, computer print-outs, floppy disks, manuals, customer documentation or any other medium for storing information, and (ii) the Information as described in the documents attached to this letter identified as **DATA PRESERVATION INSTRUCTIONS (the "Instructions")**.  Your signature at the end of this letter confirms that you have read, do understand, agree, and give consent concerning the statements in the Instructions.

You acknowledge that you continue to be bound by the terms of the Agreement Relating to Intellectual Property and Confidentiality, and any related agreements, which you executed in the course of your hiring and employment by the Corporation.  You confirm that your entire right, title and interest to all intellectual property as generally described in such agreements with the Corporation, are assigned to the Corporation regardless of the exact terms in, or the existence of, such an agreement between you and the Corporation. You shall continue to treat in a confidential manner any proprietary information or trade secrets acquired by you in respect of any business of the Corporation or relating to any other dealings, transactions or affairs, which may have come to your knowledge in any manner during your employment.  Further, you will not speak of the Corporation or any of its employees, officers or representatives in disparaging terms nor in any other negative way communicate about your employment with the Corporation.

In consideration of the foregoing, and by accepting these arrangements, you hereby:  release and forever discharge the Corporation, its directors, officers, employees, and representatives of and from all manner of actions, causes of actions, suits, debts, accounts, covenants, contracts, claims, including, without limitation, claims under applicable employment standards and human rights legislation, and demands whatsoever which you have had, now have or which your heirs, executors, administrators, or assigns or any of them, hereafter can, shall or may have against the Corporation, its employees and representatives, for or by reasons of any cause, matter or thing whatsoever in connection with your employment with the Corporation, including without limitation the termination of such employment;  and agree that , until your termination date, and  for one year following the termination of your employment with the Corporation, you shall not, on behalf of yourself or others, directly or indirectly, recruit, induce or solicit or attempt to recruit, induce or solicit any individual who is supplying services to the Corporation, whether as an employee, contractor, consultant or otherwise, to terminate their employment or contractual arrangements with the Corporation or to accept engagement with another person or entity unrelated to the Corporation.

You acknowledge that the payment and other arrangements offered herein do not represent an admission or recognition of liability on the part of the Corporation and they shall not be referred to, directly or indirectly, as such an admission or recognition of liability.

This letter constitutes the entire agreement of the parties with respect to the termination of your employment.  There are no promises, understandings or representations other than those set forth herein.  Further, this letter supersedes any other arrangements, written or otherwise, relating to your employment and the cessation of your employment.  This letter may be modified only with a written instrument duly executed by you and an authorized representative of the Corporation.

The terms and conditions of this letter will be open for your review and consideration through the close of business on January 22, 2009.  If you have not returned an executed copy of this letter by that time, the terms and conditions set forth in this letter shall be withdrawn as of that time and date.

You acknowledge that you have read this letter, and that you understand all of its terms, and have executed it voluntarily, with full knowledge of its significance.  Finally, you acknowledge that you understand you are hereby granting to the Corporation a full and final release as set forth above.

Prepared by HR Shared Services

Thomas Pintwala
December 2, 2008
Page 4

Please acknowledge that the foregoing correctly and completely sets forth your understanding of the arrangements, and your acceptance hereof, by signing, dating and returning to Tammie Ebel the attached second copy of this letter.

We wish to express our appreciation for your efforts during your employment with the Corporation.

Sincerely,

*Tammie Ebel on behalf of*

Cecil Hudgins
Manager, Nortel Networks

Attachments:    Second copy of this letter
                Distribution of Termination Allowance
                TD2 form
                Source Deduction Relief Form
                Benefit Information Summary
                Pension Information
                Data Preservation Instructions

c.c.:  Tammie Ebel

Signature:    *Thomas Pintwala*

Date:    *Jan. 15, 2009*

Prepared by HR Shared Services

**00756**