# EXHIBIT 17

NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record. The disposition will appear in tables published periodically.

# United States Court of Appeals for the Federal Circuit

97-1167,-1178,-1179

OCTEL COMMUNICATIONS CORPORATION,

                Plaintiff/Cross-Appellant,

and

NORTHERN TELECOM, INC.,

                Plaintiff/Cross-Appellant,

and

PACTEL MERIDIAN SYSTEMS, BOSTON TECHNOLOGY, INC. and DIGITAL SOUND CORPORATION,

                Plaintiffs,

v.

THEIS RESEARCH INC. and PETER F. THEIS,

                Defendant-Appellants.

DECIDED: November 6, 1997

Before SCHALL, Circuit Judge, SKELTON, Senior Circuit Judge, and BRYSON, Circuit Judge.

WestlawNext

**Octel Communications Corp. v. Theis Research**
United States Court of Appeals, Federal Circuit.   November 6, 1997   132 F.3d 51   (Approx. 11 pages)

132 F.3d 51
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTAF Rule 47.6 for rules regarding the citation of unpublished opinions.)
United States Court of Appeals, Federal Circuit.

OCTEL COMMUNICATIONS CORPORATION, Plaintiff/Cross-Appellant,
and
NORTHERN TELECOM, INC., Plaintiff/Cross-Appellant,
and
PACTEL MERIDIAN SYSTEMS, Boston Technology, Inc. and Digital Sound Corporation, Plaintiffs,
v.
THEIS RESEARCH INC. and Peter F. Theis, Defendant-Appellants.

Nos. 97-1167, 97-1178, 97-1179.   |   Nov. 6, 1997.   |   Rehearing Denied; Suggestion for Rehearing In Banc Declined Dec. 29, 1997.

Before SCHALL, Circuit Judge, SKELTON, Senior Circuit Judge, and BRYSON, Circuit Judge.

**Opinion**

BRYSON

*1 Theis Research, Inc., and Peter F. Theis (collectively, TRI) appeal from a judgment of the United States District Court for the Northern District of California following a jury trial in this patent infringement case. Octel Communications Corporation (Octel) and Northern Telecom, Inc. (NTI) cross-appeal from certain aspects of the same judgment. Although the parties have raised a multitude of issues, we conclude that the district court did not commit reversible error with regard to any of them. We therefore *affirm* the judgment in all respects.

**BACKGROUND**

At issue in this appeal are five U.S. patents owned by TRI that relate to automated telephone answering systems. U.S. Patent No. 4,539,436 (the '436 patent) describes a voice-actuated telephone answering machine sold by TRI under the name "Con Mode." U.S. Patent No. 4,692,817 (the '817 patent) contains the same written description as the '436 patent, but claims different features of the disclosed machine. U.S. Patent No. 4,719,647 (the '647 patent) describes a message retrieval system that includes a plurality of answering machines with associated message memory units. U.S. Patent No. 4,439,635 (the '635 patent) generally describes a message delivery system that includes a plurality of playback units, each of which stores a segment of a voice message. Finally, U.S. Patent No. 4,150,255 (the '255 patent) describes a call distributor and holding system that permits one or more operators to service a large number of callers. The '436 and '817 patents claim priority to an earlier patent application, the claims of which were held to be invalid under 35 U.S.C. § 102(b) due to prior sales of the Con Mode system. See *In re Theis,* 610 F.2d 786, 201 USPQ 188 (CCPA 1979).

Octel designs, manufactures, and sells voice information processing systems that operate over touch-tone telephone lines. Octel's systems include the Sierra and Aspen systems, each of which can be configured to operate in one of three different applications: a telephone answering application, a voice mail application, or a Voice Forms application.

NTI's Meridian Mail and Startalk systems are voice mail and telephone answering systems that provide multiple voice processing features accessible through a touch-tone keypad. NTI's AABS system operates within a public switched telephone network to automatically interact with a caller in order to handle credit card calls, collect calls, and third party billing calls.

**DISCUSSION**

SELECTED TOPICS

Applications and Proceedings
   Patent Described Invention of Claims

**Secondary Sources**

§ 1:15.Disclosure: Description, enablement, best mode and definiteness; means-plus-function claims
1 Holmes, Intellectual Property and Antitrust Law § 1:15
...Section 112 of the Patent Act imposes the next of the key statutory conditions for patentability, this being the requirement of adequate disclosure of the invention. As interpreted by the courts, Secti...

§ 1:35.Content of the specification—Detailed description of the preferred embodiments of the invention—Enablement, written description, and best mode
Patent Applications Handbook § 1:35
...This section of the application, referred to as "Description" in this book, is sometimes labelled "Best Mode for Practicing the Invention" so as to conform to PCT format. The description must satisfy t...

**PATENT LAW'S UNPREDICTABILITY DOCTRINE AND THE SOFTWARE ARTS**
76 Mo. L. Rev. 763
...I. Introduction. 764 II. Effort Curves in Technology Development. 767   A. The Norden Model. 767   B. Prototype in Light of Design. 769   C. Product in Light of Prototype. 773 III. Patent Disclosure & ...

See More Secondary Sources

**Briefs**

**Petition for Writ of Certiorari**

1991 WL 11177178
GENETICS INSTITUTE, INC., and Chugai Pharmaceutical Co., Inc., Petitioners, v. AMGEN, INC., Respondent.
Supreme Court of the United States.
July 01, 1991
...The names of all parties appear in the caption. Neither Genetics Institute nor Chugai Pharmaceutical has a parent company or any non-wholly-owned subsidiaries. The opinion of the United States Court of...

**Respondent's Brief In Opposition**

1991 WL 11178444
GENETICS INSTITUTE, INC., and Chugai Pharmaceutical Co., Inc., Petitioners, v. AMGEN, INC., Respondent.
Supreme Court of the United States.
August 21, 1991
...FN* Counsel of Record Amgen, Inc. does not have a parent company. Its only non-wholly owned subsidiaries are Kirin-Amgen, Inc. and Amgen Clinical Partners, L.P. Respondent Amgen, Inc. ("Amgen") hereby ...

**JOINT APPENDIX, VOL. III**
2014 WL 2737845
Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.
Supreme Court of the United States.
June 13, 2014
...FN* Entries that appear on the dockets of both Teva Pharmaceuticals USA, Inc. v. Sandoz Inc., S.D.N.Y. Case No. 08-cv-7611, and Teva Pharmaceuticals USA, Inc. v. Mylan Pharmaceuticals Inc., S.D.N.Y. Ca...

Octel and NTI sued TRI, seeking a declaratory judgment that their products do not infringe TRI's patents and that TRI's patents are invalid and unenforceable. TRI counterclaimed, alleging that various Octel and NTI products infringe the TRI patents.

After the district court granted summary judgment on several issues, and after the court conducted a bench trial on Octel's and NTI's claim of inequitable conduct, the remaining issues were tried to a jury. The jury found a number of TRI's patent claims invalid and found that Octel and NTI did not infringe those claims that were not invalidated. Having lost on most of the contested issues at trial, TRI raises a large number of points on appeal to this court.

## I. *The '436 Patent*

*2 The parties appeal seven issues concerning the '436 patent. The jury found claims 1 and 10 of TRI's patent to be invalid for obviousness and, with one exception, not infringed by Octel and NTI. TRI appeals the district court's denial of its motion for judgment as a matter of law (JMOL) on the validity and infringement issues. Octel appeals the district court's denial of its motion for JMOL with respect to the one system that the jury found to infringe. NTI appeals the denial of its motion for JMOL on its claim that the '436 patent is invalid for failure to disclose the best mode.

### A. *Validity*

#### 1. *Obviousness*

The jury found claims 1 and 10 of the '436 patent invalid under 35 U.S.C. § 103 as being obvious in light of U.S. Patent No. 3,300,586 (the Shepard patent) and Con Mode I, a device that was on sale more than one year before the application filing date. The district court denied TRI's motion for JMOL on this issue.

Claim 1 covers an apparatus for carrying on a programmed telephone conversation with a respondent. Among other things, the recited apparatus requires an "interface means for coupling said apparatus to the telephone line"; "a speech detector coupled to the interface means"; and "detecting means, coupled to said speech detector, for detecting a pause in said voice communication of the respondent." Claim 10 is similar to claim 1, but it contains additional limitations requiring that the claimed device be able to operate in both an incoming mode and an outgoing mode, and requiring "means ... for substantially instantaneously switching said system to said incoming mode."

TRI argues that that there is no substantial evidence that the prior art discloses or suggests either the recited "speech detector" or the recited "interface means." We have reviewed the record carefully, and we conclude that the jury's verdict is supported by substantial evidence.

The '436 patent specification describes the recited speech detector as "a conventional voice actuation circuit, which is for sensing silence (absence of speech) intervals." NTI's expert, Dr. Larky, testified that the prior art Con Mode I device included a type of speech detector and that Shepard showed the recited speech detector. Mr. Prentice, one of TRI's witnesses, admitted that the noise threshold circuit included in the prior art Con Mode I device was intended to detect speech. Another TRI witness, Dr. Gibson, agreed that speech detectors were well known before the patent application was filed, and that the Shepard patent disclosed a "multiple syllable detector to distinguish between yes or no." In addition, Mr. Theis, the inventor, swore in a 1978 affidavit that the Con Mode I device contained a "voice recognition circuit to identify when a caller is talking," although he contended that the circuit failed to perform properly.

Mr. Theis stated in a 1984 affidavit to the PTO that "speech detectors" were well known in the art as of 1974 (the filing date of the '436 patent application) and were even included in the RDM-ZR telephone interface commonly available at that time. At trial, Mr. Theis testified that the recited speech detector design was taken from the "widely distributed, widely used, well-known" RDM-ZR interface.

*3 Regarding TRI's argument that the claimed invention could not have been obvious over the allegedly inoperative Con Mode I, Mr. Theis at trial downplayed the innovation involved in the replacement of the allegedly inoperative voice actuation circuit with the recited speech detector. According to Mr. Theis, the replacement was accomplished simply by "look[ing] to see what was available in the marketplace." As the Supreme Court long ago stated, "reading a list and selecting a known [element] to meet known requirements is no more ingenious than selecting the last piece to put into the last opening in a jig-saw puzzle. It is not invention." *Sinclair Co. v. Interchemical Corp.*, 325 U.S. 327, 335, 65 USPQ 297, 301

See More Briefs

**Trial Court Documents**

In re Charter Communications, Inc.

2009 WL 8189486
In re Charter Communications, Inc.
United States Bankruptcy Court, S.D. New York.
March 27, 2009

...Chapter 11 Charter Communications, Inc., its direct and indirect subsidiaries and debtor affiliate, as debtors and debtors in possession (collectively, the "Debtors"), having: FN1. Unless otherwise not...

In re Eastman Kodak Co.

2013 WL 588965
In re Eastman Kodak Co.
United States Bankruptcy Court, S.D. New York.
February 13, 2013

...FN1. The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Eastman Kodak Company (7150); Creo Manufacturing America LLC (4412);...

In re Nortel Networks Inc.

2011 WL 6013124
In re Nortel Networks Inc.
United States Bankruptcy Court, D. Delaware.
October 12, 2011

...FN1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nor...

See More Trial Court Documents

(1944). Accordingly, it was reasonable for the jury to conclude that the claimed "speech detector" was either disclosed or suggested by the prior art.

As for the "interface means" limitation, TRI argues that the phrase "interface means for coupling said apparatus to the telephone line" should be interpreted as "an apparatus coupled to the telephone line and the speech detector which can detect an incoming call, seize the line, transmit the signals on the line to the system, determine when the caller has hung up, and hang up." We decline TRI's invitation to read such limitations into the claim language, and we also reject TRI's suggestion that the recited phrase should be read without regard to 35 U.S.C. § 112, ¶ 6.

TRI admits that the prior art Con Mode I unit included "a line control card that interfaced with the telephone line and recognized a ring signal, seized the telephone line, and released the line when the apparatus finished its cycle." Other evidence in the record shows that this limitation (or obvious variations) was in the prior art. For example, Dr. Larky testified that the Shepard patent disclosed the recited interface means. Mr. Theis's affidavit, submitted to the PTO to secure allowance of the patent, acknowledged that an RDM-ZR-the structure corresponding to the recited "interface means" in the '436 patent-"was a known prior art device." Concerning TRI's assertions that the prior art Con Mode I was inoperative over telephone lines, the Court of Customs and Patent Appeals remarked as to that very device: "We find it difficult to imagine that appellant would demonstrate an inoperative system at a trade show and elsewhere in an attempt to drum up business." *In re Theis,* 610 F.2d at 794, 204 USPQ at 195.

TRI mentions in passing two other limitations in the '436 patent-the "means ... for detecting a pause in [the] voice communication of the respondent" and, in claim 10, the "means for substantially instantaneously switching [the] system" to the outgoing or incoming modes. Contrary to TRI's suggestion, there was substantial evidence that both of those limitations were found in the prior art, as Dr. Larky testified that the Shepard patent disclosed both limitations.

TRI's arguments do not overcome its heavy burden of demonstrating that there is no substantial evidence from which a reasonable jury could conclude that the claimed invention would have been obvious from the prior art. Instead, TRI invites us to reweigh the evidence presented to the jury, which is not our task in reviewing a jury verdict.

### 2. Best Mode

*4 The jury found that the '436 patent was not invalid under 35 U.S.C. § 112 for failing to disclose the best mode. NTI appeals the district court's denial of its motion for JMOL on this issue, arguing that the patent failed to disclose sufficient details of the recited "speech detector." In support of its position, NTI points to the terse reference to the recited speech detector in the written description, which merely notes that the speech detector "may be a conventional voice actuation circuit," and to various statements made by Mr. Theis, which suggest that he expended considerable effort in identifying the type of speech detector needed to overcome inoperability problems.

Although the speech detector is mentioned only briefly in the '436 patent, the evidence shows that speech detectors were well known in 1973, and Dr. Gibson testified that one of ordinary skill in the art would be able to determine the structure of a speech detector from reading the specification, even though no schematic diagram was included. In view of that evidence, NTI has failed to persuade us that the jury was obliged to conclude that the best mode was effectively concealed. *See Spectra-Physics, Inc. v. Coherent, Inc.,* 827 F.2d 1524, 3 USPQ2d 1737 (Fed.Cir.1987).

### B. *Infringement*

TRI alleges that five Octel and NTI systems infringe claims 1 and 10 of the '436 patent. We discuss each system separately.

#### 1. *Octel's Telephone Answering Application*

The jury found that Octel's telephone answering application does not infringe claims 1 and 10 of the '436 patent. TRI appeals the district court's denial of its motion for JMOL on that issue, arguing that (a) the district court incorrectly defined the term "speech detector"; (b) the district court erred in interpreting the claims to require multiple voice responses from a caller; and (c) there is no substantial evidence to support the jury's verdict that claims 1 and 10 are not infringed by Octel's telephone answering application.

As to point (a), the definition of "speech detector" that TRI proposes is not significantly different from the definition that the district court adopted. TRI's objection to the court's

definition focuses on the court's use of the term "goal" ("The goal of a speech detector is to sense and respond to speech-like signals and not to be triggered by non-speech signals"), which TRI argues is misleading. The court's language, however, is merely a rephrasing of another portion of the court's definition, which TRI does not contend is inaccurate ("speech detector" is "a specialized type of noise filter which is designed to respond preferentially to speech, as opposed to other noises"). Mr. Theis himself testified during trial that a speech detector detects "speech-like characteristics" and ignores non-speech signals such as background noise and line noise. Moreover, TRI's own expert admitted during trial that devices that recognize dial tones, busy signals, and ring signals are not "speech detectors." In view of that evidence, we find no error in the district court's definition.

*5 As to point (b), TRI argues that the district court improperly added limitations to the claims by requiring voice responses instead of responses in non-vocal forms such as touch-tone signals. Mr. Theis, however, admitted that in *In re Theis* he lost patent rights to nonspeech responses, including touch-tone signals. The district court was therefore justified in concluding that touch-tone signals do not qualify as "responses" within the meaning of the '436 patent claims.

As to point (c), there was substantial evidence before the jury that Octel's telephone answering application lacks the "speech detector" recited in claims 1 and 10 of the '436 patent. Mr. Olson testified that the Octel systems do not include the recited "speech detector"; the Octel systems, he testified, would even respond to music and modem signals. Mr. Prentice, TRI's own witness, testified that Octel's systems recognize special tones, unlike speech detectors, which do not.

Finally, TRI contends that because the jury found that Octel's Voice Forms application infringed the claims under the doctrine of equivalents, Octel's telephone answering application must also be held to infringe because of evidence suggesting that the same hardware and software are used in both the Voice Forms and the telephone answering applications. Contrary to TRI's assertion, there was substantial evidence from which the jury could conclude that the Voice Forms application operated in an entirely different manner from the telephone answering application. Moreover, the evidence showed that the Voice Forms application was supplied as a separately purchased item and therefore would not necessarily contain the same functions as the telephone answering application.

### 2. *Octel's Voice Forms Application*

The jury found that **Octel's** Voice Forms application infringes claims 1 and 10 of the '436 patent under the doctrine of equivalents. The district court denied **Octel's** motion for JMOL, and **Octel** appeals.

The crux of **Octel's** argument is that the only evidence offered at trial on infringement under the doctrine of equivalents was a series of conclusory responses by TRI's expert, Mr. Prentice. **Octel** also argues that its Voice Forms application was never identified by name during the testimony on infringement.

As **Octel** notes, a finding of infringement under the doctrine of equivalents requires particularized testimony showing equivalence on a limitation-by-limitation basis. *See, e.g., Texas Instruments, Inc. v. Cypress Semiconductor Corp.,* 90 F.3d 1558, 1567, 39 USPQ2d 1492, 1499 (Fed.Cir.1996). **Octel's** position is undercut, however, by the testimony of **Octel's** founder, Mr. Olson, who admitted that if **Octel's** systems were determined to have the recited "speech detector," they would infringe claims 1 and 10 of the '436 patent both literally and under the doctrine of equivalents. Consequently, particularized testimony was required only as to the recited speech detector. That testimony was provided by Dr. Gibson, who testified that **Octel's** Aspen and Sierra systems include components that operate in much the same way as the speech detector claimed in the patent.

*6 **Octel's** objection that the Voice Forms application was never identified by name is answered by the following testimony from Mr. Olson:

> QUESTION: What options on the system under claim 10 would be both literally and-would both literally and under the doctrine of equivalents infringe if **Octel's** systems had a speech detector?
>
> ANSWER: Voice Forms would be the one I would pick.

### 3. *NTI's Startalk System*

The jury found that NTI's Startalk system does not infringe claims 1 and 10 of the '436 patent. The district court denied TRI's motion for JMOL to overturn the jury's verdict. On

appeal, TRI urges that the evidence was insufficient to support the verdict. In fact, however, there was substantial evidence from which a reasonable jury could find that NTI's Startalk system did not infringe. At trial, Mr. Mundy, an NTI engineer who helped design the Startalk system, testified that the system does not have the recited "speech detector." Furthermore, Dr. Larky testified that Startalk is not preferential to speech and lacks several of the other claimed limitations. The jury's verdict therefore must be upheld.

#### 4. *NTI's Meridian Mail System*

The jury found that NTI's Meridian Mail system does not infringe claims 1 and 10 of the '436 patent. The district court denied TRI's motion for JMOL on this issue, and TRI appeals. We conclude that substantial evidence supports the jury's finding of non-infringement. Dr. Larky testified that Meridian Mail does not have a speech detector, but instead records everything other than touch tones. He also testified that Meridian Mail lacks the recited interface means for coupling to a telephone line.

#### 5. *NTI's AABS System*

The jury found that NTI's AABS system does not infringe claims 1 and 10 of the '436 patent. In denying TRI's motion for JMOL on this issue, the district court concluded that there was substantial evidence to support the jury's verdict.

We agree with the district court that substantial evidence supports the jury's verdict. For example, Mr. Solpietro, an NTI engineer, testified that the AABS system does not discriminate between speech and non-speech, thus negating the recited "speech detector" limitation. In addition, Dr. Larky testified that the AABS system includes neither the recited speech detector nor the recited means for interfacing to a telephone line.

### II. *The '817 Patent*

As a preliminary matter, **Octel** argues that this court lacks subject matter jurisdiction to review TRI's appeal of the validity of the '817 patent because TRI failed to appeal the district court's finding of non-infringement. **Octel** asserts that there is no remaining case or controversy concerning the '817 patent since infringement is no longer in issue. That argument, however, was rejected by the Supreme Court in *Cardinal Chemical Co. v. Morton International, Inc.*, 508 U.S. 83 (1993), and we therefore reject **Octel's** jurisdictional argument.

On the merits, TRI appeals the portion of the judgment holding claim 1 of the '817 patent invalid as anticipated or obvious over the prior art. NTI appeals the district court's refusal to set aside the jury's verdict that the best mode was disclosed in the '817 patent.

#### A. *Obviousness*

\*7 The jury found claim 1 of the '817 patent invalid because it was (a) anticipated by Shepard; (b) anticipated by Con Mode I; and (c) obvious in light of the prior art. On TRI's motion to overturn the verdict, the district court agreed that Shepard did not disclose all of the recited elements. The court ruled, however, that there was substantial evidence that claim 1 was anticipated or rendered obvious by Con Mode I.

The '817 patent is a continuation of the '436 patent, but it claims different features of the disclosed invention. Unlike the claims of the '436 patent, claim 1 of the '817 patent does not include a speech detector or interface means, and it is not limited to telephone applications. In summary, claim 1 recites an apparatus for carrying on a programmed conversation with a respondent, which includes a message storage unit, a response recorder unit, a pause detector, an alternate message storage unit, and means for activating the alternate message storage unit. The claimed invention permits a programmed conversation to be altered by playing an alternative audio message rather than the next audio message in a sequence if the duration of the respondent's response is shorter than a specified time.

On appeal, TRI argues that there is no substantial evidence to support the finding that the prior art renders obvious the recited "alternate message storage unit" limitation or the recited "means for activating the alternate message storage unit" limitation. TRI also flatly states that "no other prior art in evidence discloses or suggests any such structure," although TRI elsewhere concedes that "Shepard does have alternate message storage units."

There is substantial evidence from which the jury could find that claim 1 was anticipated by or obvious over the prior art. Dr. Larky explained to the jury with the aid of detailed exhibits that claim 1 of the '817 patent is nearly identical to claim 17 of Mr. Theis's 1975 patent application, a claim that was previously held to be invalid based on the sale of Con Mode I. *See In re Theis, supra.* Dr. Larky further explained how the recited elements, including both

the "alternate message storage unit" limitation and the "means for activating that storage unit" limitation, were contained in Con Mode I.

Mr. Theis himself admitted that the "general concept" claimed in the '817 patent was also claimed in the 1975 application, and he acknowledged that the claims of that application were held to be invalid in *In re Theis.* We reject TRI's suggestion that the features of Con Mode I, which was held to be on sale, are identified exclusively by the claims of that rejected application. The jury had before it affidavits and testimony from various witnesses concerning what was contained in the Con Mode I units, evidence from which it could reasonably draw inferences and conclusions. In view of the evidence in the record, TRI has failed to establish reversible error with respect to the jury's verdict on the validity of claim 1 of the '817 patent.

### B. *Best Mode*

**\*8** The jury found that claim 1 of the '817 patent was not invalid for failure to disclose the best mode, and the district court denied NTI's motion for JMOL. Although the '817 patent does not recite a speech detector, NTI argues that the recited "pause detector" is the same circuit as the speech detector, and that the '817 patent suffers from the same "best mode" deficiency as the '436 patent.

Our conclusion that the district court properly upheld the jury's verdict on best mode for the '436 patent disposes of the issue with respect to the '817 patent. NTI has failed to establish that the speech detector/pause detector was concealed or otherwise inadequately disclosed to allow one of ordinary skill in the art to practice the best mode.

### III. *The '647 Patent*

The '647 patent describes a message retrieval system that includes a plurality of answering machines, message memory units (MMUs), and retrieval consoles. Incoming telephone calls are automatically answered and information from callers is recorded on MMUs for later playback and transcription by operators. Alternatively, the operators can conduct interactive dialogue with callers and can switch back and forth between dialogue mode and transcription mode as needed.

Claim 1 of the '647 patent, the only claim at issue, recites a message retrieval system including a retrieval console coupled to a plurality of MMUs, means for determining the age of messages stored in the MMUs and generating an alarm signal indicating excessive delays between storage and playback, and means for automatically modifying the system in response to the alarm signal.

The jury found that claim 1 was either anticipated or rendered obvious by the prior art Con Mode 3020. The district court, however, granted TRI's motion for JMOL on that issue, holding that there was insufficient evidence that the prior art disclosed or suggested the recited "means for automatically modifying the system."

The jury also found that none of the **Octel** or NTI products infringe claim 1 of the '647 patent. The district court denied TRI's motion for JMOL, refusing to disturb the verdict of non-infringement. **Octel** appeals the district court's ruling on validity, and TRI appeals the district court's ruling on infringement.

### A. *Validity*

The jury found that claim 1 of the '647 patent was anticipated or rendered obvious by Con Mode 3020, a system that was on sale more than one year prior to the filing date of the application. The district court instructed the jury that of the three limitations in the claim, the first two were included in Con Mode 3020. Thus, the only issue for the jury was whether the third limitation ("means for automatically modifying the system in response to the alarm signal to adapt the system to excessive delays between message storage and playback") was disclosed or obvious over Con Mode 3020. **Octel** contends that there was substantial evidence from which the jury could reasonably have concluded that the recited "means for automatically modifying the system" was disclosed in the prior art, and that the district court therefore erred in granting TRI's motion for JMOL on this issue.

**\*9** The written description in the '647 patent describes the way the system adapts to excessive delays between the recording and transcription of calls. It states that the system includes

> means for monitoring a parameter indicative of the age of messages stored in message memory units and for automatically generating an alarm signal in the event the parameter exceeds a threshold indicative of excessive delays

between the time of recording and the time of playback of messages stored in the message memory unit. In addition, means are provided for modifying the system in response to the alarm signal to adapt the system to excessive delays between message recording and playback. For example, in the preferred embodiment described below, the modifying means operates to prevent further messages from being recorded on a message memory unit until the excessively old messages have been transcribed. In this way, excessive callback delays are avoided.

Octel notes that its expert, Mr. Gafford, presented evidence showing that (a) the "means for modifying" disclosed in the '647 patent is a software switch that is the same switch used to flash a light when message delays exceed a predetermined time limit; (b) Con Mode 3020 included such a switch for flashing a light; (c) the recited switch performed a function that was the same as or equivalent to the function performed by the Con Mode 3020 delay alarm; and (d) based on the level of skill in the art, any differences between the indicators provided in Con Mode 3020 and the recited "means for modifying" would have been obvious to one of ordinary skill in the art. Octel argues that the switch constitutes the structure for performing the recited "means for automatically modifying the system," and that the actual modification (e.g., disabling an MMU) is not part of the claim. TRI argues, and the district court agreed, that Mr. Gafford's testimony merely established that Con Mode 3020 had a switch that enabled the system to extend its notification of excessive delay, but that the switch did not constitute "means for automatically modifying" the system, as required by the claim.

We conclude that the district court's analysis is correct. Mr. Gafford testified, in essence, that the recited "means for automatically modifying the system" should be interpreted to include a switch that can perform any of various notification functions that might permit an operator to take some action. His testimony, however, was premised on an unduly broad interpretation of the term "automatically modifying the system." That term connotes a change in the structure or properties of the claimed system without human intervention. The written description provides three examples of "automatically modifying the system": (1) disabling the MMU from receiving more calls; (2) changing the prerecorded message in the answering machine to indicate a longer callback time to callers; and (3) connecting additional retrieval consoles. Mr. Gafford testified that the required "means for automatically modifying the system" would be provided by any means that provoked something or someone to "respond to the alert signal ... and to take some action," such as "a light that flashes twice a second that an operator can see, an alert tone or horn that makes a sound when this alarm occurs." In his examples, however, the "means" do not result in any automatic change in the structure or properties of the claimed system, but merely provide a human operator notice that a change needs to be made. The jury was thus presented with an incorrect yardstick with which to measure the prior art Con Mode 3020 system.

*10 Moreover, Mr. Gafford testified that the structure disclosed in the '647 patent for performing the recited "automatic modifying" was nothing more than a software switch contained in software running in a microprocessor. That testimony is inconsistent with the patent specification itself. For example, in order to perform the function of disabling the MMU in the '647 patent, a separate "disable MMU" signal is generated through decoding logic, latches, and an output buffer on a unit interface card. Mr. Gafford's testimony similarly fails to account for the structure required to perform the "automatically modifying" functions of changing the prerecorded message or automatically interconnecting additional retrieval consoles as described in the '647 patent. By limiting the "means for modifying" to a single switch, Mr. Gafford's testimony disregards those alternative embodiments. Accordingly, Mr. Gafford's conclusion that the Con Mode 3020 system included the recited "means for automatically modifying" its system to adapt to excessive delays between message storage and playback was based on incorrect claim interpretation and did not provide the substantial evidence from which a reasonable jury could have concluded that claim 1 was anticipated or rendered obvious by Con Mode 3020. The district court therefore did not err in granting TRI's motion for JMOL on this issue.

### B. *Infringement*

The jury found that Octel's Sierra and Aspen systems did not infringe claim 1 of the '647 patent, either literally or under the doctrine of equivalents. The district court denied TRI's motion for JMOL.

Substantial evidence supports the jury's verdict. Mr. Olson testified that Octel's systems do not use a retrieval console and do not distinguish between played and unplayed messages,

as is required by claim 1. Moreover, TRI's own expert, Mr. Prentice, admitted that where no effort is made to distinguish between played and unplayed messages for the purpose of automatic deletion, "such a system would not infringe claim 1 of the '647 patent."

### IV. *The '635 Patent*

The '635 patent describes a message delivery system that includes a plurality of playback units, each of which stores a segment of an audio message. The segments are played in sequence and broadcast over multiple telephone lines. The district court granted **Octel's** motion for summary judgment that its systems do not infringe claims 1 and 7 of the '635 patent.

The district court's non-infringement ruling was based on its conclusion that claims 1 and 7 require that message segments be supplied simultaneously to a plurality of telephone lines, while **Octel's** system sends message segments to different lines at different times. On appeal, TRI argues that the district court erroneously added to the asserted claims the requirement that messages be transmitted simultaneously. TRI contends that the claims should be interpreted to cover systems in which an audio signal is supplied to different interface units at different times.

*\*11* We discern no error in the district court's interpretation of the claims. Claims 1 and 7 require "a plurality of line interface units, each of which is coupled to a respective telephone line." Claim 1 requires "means ... for supplying the audio signals of the activated playback units to the plurality of line interface units." Claim 7 further requires "means for ... supplying the audio signals of the activated playback units to the interface units." The specification makes it clear that the invention contemplates that the same signal is supplied simultaneously to multiple telephone lines, and the disclosed structure for performing the recited function of the means-plus-function limitations operates in that manner. *See* Abstract ("in order to broadcast *a message* made up of a plurality of message segments *to a number of line interface units* "); Fig. 2a (showing audio lines from multiple announce units converging at audio analog mux 21 and fed to a single audio output line through amplifier 2); Figs. 2b and 3 (showing multiple audio lines to the interface units tied together); col. 1 at lines 40-42 ("in order *simultaneously* to broadcast the same message to each of the interface units"); col. 4 at lines 51-54 ("The output of this audio amplifier 2 is connected via line 2a *to each of the line interface units 60* for broadcast to the respective telephone lines 50"); col. 7 at lines 50-54 ("The audio signal is generated by the amplifier 2 on line 2a and contains the audio message which is passed by the line interface units 60 to *the respective telephone lines*."); and col. 8 at lines 56-59 ("This announce unit 90 replays its recorded message segment, which is passed via the audio analog multiplexer 21 to the amplifier 2, and from the amplifier 2 *to each of the line interface units 60.*").

TRI's assertion that the claims should be interpreted in a manner that merely requires that "overlapping" message segments be sent to different telephone lines is not persuasive. **Octel** presented undisputed evidence that its systems combine a series of phrases into a prompt, then convert the prompt into an audio signal that is transmitted over a single telephone line to a single caller. Because **Octel's** systems do not transmit the same signal to more than one telephone line, the district court properly held that those systems do not infringe TRI's rights under the '635 patent.

### V. *The '255 Patent*

The '255 patent, which issued from an application filed on December 29, 1977, describes a call distributor system that automatically answers telephone calls and records an initial message from each caller. The district court granted NTI's motion for summary judgment, holding claims 1-4 of the '255 patent invalid based on an offer to sell the invention more than one year before the filing date of the application.

The district court granted NTI's motion on the basis of the following evidence: (a) a signed letter dated October 29, 1974, that appeared to offer to sell the claimed invention to the Ann Arbor Transportation Company (AATA); (b) evidence that an officer of CVTC, a company associated with TRI, worked with a CVTC sales representative to prepare a response to a Request for Quotation received from AATA and that the author of the letter was "dealing with the [AATA]"; and (c) evidence that the invention of the '255 patent was reduced to practice before the date of the letter. TRI appeals the summary judgment ruling, arguing that there is no direct evidence that the letter was actually received by AATA and that the invention had never been embodied in physical form.

*\*12* We reject each of TRI's challenges to the district court's ruling. As to TRI's contention that there was no direct evidence that the letter was received, the district court had before it

proof that the letter was signed and contained a detailed offer, and that the author of the letter was "dealing with the [AATA]," indicating communication with the recipient. Moreover, the court properly concluded that statements from Theis and a CVTC officer to the effect that they did not recall sending the letter to AATA did not rebut the evidence that an offer was made. Nor is there any force to TRI's argument that the letter was not found in AATA's files, since there was evidence that the letter would have been discarded when AATA moved to new quarters in the 1980s.

TRI's argument that the invention was not "embodied in physical form" at the time of the alleged offer is directly contradicted by its own admission in a separate action and does not create a genuine issue of fact precluding summary judgment. Moreover, a reduction to practice is not a requirement for application of the on-sale bar. *UMC Elecs. Co. v. United States,* 816 F.2d 647, 656, 2 USPQ2d 1465, 1472 (Fed.Cir.1987). Accordingly, the district court's ruling on invalidity is affirmed.

### VI. *Motion for a New Trial*

TRI argues that it is entitled to a new trial because the trial judge failed to instruct the jury on the meaning of disputed terms in the '436 and '647 patents and because the great weight of the evidence is contrary to the verdict.

Regarding the jury instructions, TRI insisted throughout the trial that the meaning of disputed claim terms was a question of fact that should be left to the jury. Having urged the district court to submit the issues of claim construction to the jury, TRI cannot now argue for a new trial on the ground that the district court did what TRI asked. Under the doctrine of "invited error," a party may not seek reversal based on an act that the party itself requested. *See Weinar v. Rollform, Inc.,* 744 F.2d 797, 809, 223 USPQ 369, 376 (Fed.Cir.1984).

As to TRI's assertion that the verdicts are against the great weight of the evidence, we have concluded that the verdicts are fully supported by the evidence. Consequently, we affirm the denial of the request for a new trial.

### VII. *Inequitable Conduct*

NTI and **Octel** allege that TRI's patents are unenforceable due to inequitable conduct by Mr. Theis before the PTO over a period of several years. Following a bench trial on the issue, the district court carefully considered all of the alleged misconduct by Mr. Theis and concluded that NTI and Octet had failed to prove by clear and convincing evidence that Mr. Theis intended to deceive the PTO. As the district court noted, the facts present a close case. Nonetheless, we conclude that the court did not abuse its discretion in ruling against NTI and **Octel** on this issue.

The facts surrounding the prosecution of TRI's patents are set forth in detail in the district court's findings. The district court concluded that some of Mr. Theis's activities over a period of years raised questions about his candor before the PTO. The court, however, pointed to other actions by Mr. Theis that were inconsistent with an intent to deceive the PTO, such as his abandonment of allowed claims in one application, his requests for extensions in two instances to investigate a possible "on sale bar," his advice to the examiner that the outcome of his 1975 patent application (in which the claims were eventually held invalid) could be dispositive of his 1977 application, and his narrowing of certain claims in view of the shipment of devices.

**\*13** On appeal, NTI and **Octel** argue that the district court improperly applied the materiality and intent elements of inequitable conduct to the circumstances surrounding each patent separately, instead of considering all the circumstances together. NTI also argues that the district court omitted from its final conclusions certain facts that were included in its tentative conclusions, including Mr. Theis's alleged awareness of the importance of disclosing his prior Con Mode system sales activity. Finally, NTI argues that the district court failed to conduct the required balancing of materiality and intent.

NTI and **Octel** have the burden of showing that the district court abused its discretion in holding that inequitable conduct was not proved by clear and convincing evidence. On the present record, we cannot say that the district court abused its discretion. We do not agree, as NTI and **Octel** urge, that the district court applied a "piecemeal" analysis to TRI's patents. To the contrary, the district court's findings of fact and application of the law to the facts were thorough and took into account Mr. Theis's entire course of conduct before the PTO. The district court likewise did not abuse its discretion by omitting some of its tentative findings in its final ruling. Tentative findings are just that-tentative-and are subject to revision or omission upon further consideration. In the end, the district court's ruling was based on its

conclusion that **Octel** and NTI had failed to prove by clear and convincing evidence that Mr. Theis intended to deceive the patent examiner. That conclusion is highly factual and thus is largely immune from appellate review. Finding no error in the district court's legal or factual analysis, we affirm the court's ruling on inequitable conduct.

### VIII. *Cost Award*

The district court found that **Octel** and NTI were the prevailing parties in the case and awarded costs against TRI totaling $385,737.79. TRI appeals the cost award on the basis that (a) the award is premature and fails to account for the fact that TRI partly prevailed; (b) certain portions of the costs are not recoverable; and (c) there is insufficient evidence to support the award.

As to point (a), TRI argues that because it prevailed on the issue of inequitable conduct, it was an abuse of discretion to award costs against it for that part of the lawsuit. Moreover, TRI notes that it has claims against NTI arising from two other TRI patents, which the district court severed from this case before trial. TRI argues that the prevailing party cannot be determined until after those claims are resolved.

Our disposition of the validity and infringement issues resolves any question about whether **Octel** and NTI are the prevailing parties. **Octel** and NTI have succeeded in invalidating the only asserted claims of the '436 patent, the '817 patent, and the '255 patent, thus entirely defeating TRI's claim for damages. TRI also failed to prove infringement with respect to the '647 and '635 patents. That **Octel** and NTI did not succeed in having all of the patents in suit declared unenforceable-an alternative ground of defense-does not lessen the extent to which they prevailed on the merits. *See Manildra Milling Corp. v. Ogilvie Mills, Inc.,* 76 F.3d 1178, 1183, 37 USPQ2d 1701, 1711 (Fed.Cir.1996) ("as a matter of law, a party who has a competitor's patent declared invalid meets the definition of 'prevailing party.' "). Moreover, the resolution of the severed action by TRI against NTI is a separate matter for purposes of the assessment of costs. A final judgment was issued in this case, and it is with respect to the judgment in this case that the prevailing party determination must be made.

**\*14** The only remaining question is whether, under Ninth Circuit law, the district court abused its discretion in awarding costs. *See Manildra,* 76 F.3d at 1183, 37 USPQ2d at 1712. We hold that it did not. *See, e.g., Cornwell Quality Tools Co. v. C.T.S. Co.,* 446 F.2d 825, 833 (9th Cir.1971) (if neither party completely prevails, district court has broad discretion to apportion and tax costs); *K-2 Ski Co. v. Head Ski Co.,* 506 F.2d 471, 182 USPQ 724 (9th Cir.1974) (no abuse of discretion to award full costs to plaintiff who prevailed on only 2 of 12 asserted trade secret claims).

As to point (b), the only specific objection advanced by TRI is that **Octel** included costs for audio visual presentations. The Ninth Circuit allows the costs of visual aids to be awarded under 28 U.S.C. § 1920. *See Maxwell v. Hapag-Lloyd Aktiengesellschaft Hamburg,* 862 F.2d 767, 770 (9th Cir.1988) ( "exemplification and copies of papers" also covers illustrative materials); *Little Oil Co. v. Atlantic Richfield Co.,* 852 F.2d 441, 448 (9th Cir.1988).

Finally, as to the contention that copying expenses were unsubstantiated, TRI has failed to point out any specific deficiencies. Moreover, the district court reduced the amount originally requested by **Octel** and NTI in order to ensure that TRI would not have to pay more than was reasonably necessary for trial. The amount allowed in costs is a matter within the district court's broad discretion, and we find no abuse of that discretion in this case.

Each party shall bear its own costs for this appeal.

**Parallel Citations**

1997 WL 697288 (C.A.Fed.)

---

**End of Document**               © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2015 Thomson Reuters | Privacy Statement | Accessibility | Supplier Terms | Contact Us | 1-800-REF-ATTY (1-800-733-2889)
Improve WestlawNext

 THOMSON REUTERS