# **Exhibit B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------ x
                                                       :   Chapter 11
In re                                                  :
                                                       :   Case No. 09-10138(KG)
Nortel Networks Inc., et al.,¹                         :   Jointly Administered
                                                       :
         Debtors.                                      :   Re: D.I. ────── 15413
                                                       :
------------------------------------------------------ x
```

### [PROPOSED] ORDER ENTERING THIRD DISCOVERY PROTOCOL

WHEREAS,

A.  Nortel Networks, Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), have moved (the "Motion") for entry of an order, as more fully described in the Motion, (1) enforcing and/or extending the automatic stay pursuant to Section 362(a) of the Bankruptcy Code to third-party discovery of Debtors in connection with patent litigations involving former Nortel patents not already covered by the Second Discovery Protocol entered by the Court on December 8, 2014 [D.I. 14906], (2) enforcing the Court's previous Order Extending Automatic Stay and Regulating Third-Party Discovery [D.I. 14746] in the context of such third-party discovery, and (3) granting related relief under Section 105(a) of the Bankruptcy Code.

---

[1] Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the U.S. Debtors and their petitions are available at http://dm.epiq11.com/nortel.

B. The Court conducted a hearing on the Motion and considered the supporting Declaration of Timothy C. Ross [D.I. 14477] and Declaration of Mark M. Supko (filed herewith), and the record in these proceedings, including docket items in Case Nos. 09-10138, 09-10164, and 09-11972, as well as all papers filed in support of and in opposition to the Motion.

C. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 105(a), 107(b), 362(a) and 541, and Bankruptcy Rule 9018.

D. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

E. The Court has determined that the legal and factual bases set forth in the Motion establish just cause for the relief requested therein, and that such relief is in the best interests of the Debtors, their estates, their creditors, and the parties in interest.

F. Adequate notice under the circumstances was provided to all parties with an interest in the Motion.

IT IS HEREBY ORDERED THAT:

1. The Third Discovery Protocol, attached hereto as "**Tab 1**", is hereby approved and ordered by the Court.

2. The Court retains jurisdiction with respect to all matters and disputes arising out of or relating to this Order and the Third Discovery Protocol, including, but not limited to, the interpretation, implementation, and enforcement of this Order and the Third Discovery Protocol, and to provide any further relief that is necessary or appropriate in furtherance of this Order and the Third Discovery Protocol.

Dated: May ____, 2015

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

8532761 v1

# Tab 1

**Tab 1**

**THIRD DISCOVERY PROTOCOL**

This Third Discovery Protocol supplements the First Discovery Protocol ordered by this Court on November 10, 2014 (D.I. 14746-1) and the Second Discovery Protocol ordered by this Court on December 8, 2014 (D.I. 14906-1).

All third-party discovery of Debtors in connection with litigations involving any patent previously owned by Debtors (or any other Nortel entity) other than the patents sold to Rockstar Bidco, LP through the Asset Sale Agreement dated June 30, 2011 ("Other Former Nortel Patents") will proceed as follows, absent either (i) agreement among Debtors, any party seeking such discovery (a "Requesting Party"), and any party objecting to such discovery, or (ii) further Order of this Court:[1]

Meet-and-Confer Requirement/Discovery Mediator

1. Absent agreement, Debtors shall not be required to respond to any subpoena or other form of discovery request unless and until the Requesting Party has (i) met and conferred with counsel for Debtors in a good-faith effort to reach agreement on the scope and timing of Debtors' discovery obligations, and (ii) if no agreement is reached, sought and obtained leave of this Court to serve such subpoena or other form of discovery on Debtors.

2. Karen Keller of Shaw Keller LLP shall serve as Discovery Mediator, in accordance with the terms of the Retainer Agreement submitted to the Court on January 22, 2015

---

[1] For the avoidance of doubt, third-party discovery in litigations involving the patents sold to Rockstar Bidco, LP through the Asset Sale Agreement dated June 30, 2011 ("Former Nortel Patents") shall continue to be governed by the Second Discovery Protocol.

8532745 v1

(D.I. 10852-1). The Requesting Party shall sign onto the Retainer Agreement before being entitled to receive any discovery pursuant to this Third Discovery Protocol.

Cleared Allocation Trial Documents

3.  If requested by the Requesting Party, Debtors shall produce the collection of approximately 1,850 trial exhibits, the full deposition transcripts for six specified individuals,[2] and two bid evaluation documents (collectively, the "Cleared Allocation Trial Documents") that were reviewed and approved for production in accordance with this Court's previous Protective Orders and Orders governing trial materials from the Allocation Litigation among the Nortel estates (including, without limitation, D.I. 10805, 13554, 13729).

a.  The Cleared Allocation Trial Documents shall be treated by the Receiving Party as "Outside Counsel's Eyes Only," and all such documents shall further be given the highest level of protection under any Protective Order entered by the court in the litigation for which discovery is sought (the "Underlying Litigation") until such time, if any, as those documents become part of the public trial record.

b.  Debtors shall not be required to provide any further notice to any third-party of a proposed production of the Cleared Allocation Trial Documents pursuant to this Third Discovery Protocol, and Debtors shall have no liability with respect to any claim allegedly arising out of or resulting from such production, including but not limited to any claim that such disclosure breached a confidentiality agreement between Debtors and any other person or entity.

c.  In the event a Requesting Party reasonably determines after review that one or more of the produced Cleared Allocation Trial Documents contain redacted information

---

[2] The specified individuals are: Angela Anderson, Christopher Cianciolo, Michele Lee, Gillian McColgan, George Riedel, and John Veschi.

that is likely relevant to the issues in the Underlying Litigation, the Requesting Party may request that Debtors produce specified Cleared Allocation Trial Documents in unredacted form in accordance with the procedures set forth in Paragraphs 5(f) and 5(g) below.

Supplemental Document Discovery

4.  In the event a Requesting Party reasonably believes that the Cleared Allocation Trial Documents are insufficient to meet its legitimate discovery needs, any further document discovery from Debtors, whether by agreement or Court order, shall be limited to one or more of the following document repositories: (i) the collection of approximately 3 million electronic documents produced by the Nortel estates for purposes of the Allocation Litigation (the "Allocation Litigation Database"); (ii) the collection of approximately 600,000 electronic documents collected by Debtors for purposes of the Allocation Litigation but not produced due to non-responsiveness and/or privilege (the "Unproduced Allocation Litigation Documents"); (iii) the LiveLink document management system maintained by Debtors (the "LiveLink Database"); (iv) the collection of paper documents and other physical items maintained for Debtors by Iron Mountain ("Iron Mountain Physical Items"); (v) the custodial laptop data collected by Debtors for the Allocation Litigation (the "Allocation Laptop Data");[3] and (vi) the set of deposition transcripts created in the Allocation Litigation.

   a.  Absent agreement or Court order, Debtors shall not be required to search or produce documents located in the following repositories: (i) the hard drive containing copies of the electronic data rooms ("EDRs") made available to bidders in connection with various Nortel asset auctions; and (ii) the archives of digital media (*e.g.*, magnetic tapes) now maintained

---

[3] The custodians from whom Debtors collected data are: Chris Cianciolo, Art Fisher, John Mark Hearn, Gillian McColgan, Don Powers, George Riedel, John Veschi, and Richard Weiss.

for Debtors by Iron Mountain, primarily comprising disaster recovery back-ups made in the ordinary course of Debtors' business.

5. The following procedures shall govern any request that Debtors search and produce documents from one or more of the Allocation Litigation Database, Unproduced Allocation Litigation Documents, LiveLink Database, Iron Mountain Physical Items, and/or the Allocation Laptop Data (collectively, the "Data Repositories"):[4]

a. Debtors and the Requesting Party shall meet and confer on a single list of no more than 25 electronic search terms (the "Agreed Search Terms") to be run against each of the Data Repositories. If the parties cannot reach agreement on the search terms, the dispute shall be submitted first to the Discovery Mediator for mediation. If no agreement is reached, the Requesting Party may file a motion with the Court seeking resolution of the dispute. Until such dispute is resolved, Debtors shall have no obligation to search any of the Data Repositories.

b. Debtors shall provide the Requesting Party with the number of documents (the "Hit Counts") returned by a search of each of the Data Repositories using the Agreed Search Terms.

c. After reviewing the Hit Counts, the Requesting Party and Debtors shall meet and confer in good faith to modify any search terms. The Requesting Party may propose a reasonable number of modified terms to be run against the Data Repositories for purposes of constructing optimal searches that return reasonable Hit Counts. If the parties cannot reach agreement on the modified search terms after consultation with the Discovery Mediator, the Court shall make this determination.

---

[4] These same procedures shall apply to any agreed or ordered production from the repositories described in Paragraph 4.a.

d.  Once the Requesting Party and Debtors agree on a final set of search terms ("the Final ESI Searches"), Debtors will have the Final ESI Searches run against the selected repositories to identify a collection of responsive documents, after which an electronic privilege filter will be run against the responsive documents in order to produce a collection of "Responsive/Non-Privileged Documents." The electronic privilege filter applied to the collection of responsive documents shall be developed in consultation with the Requesting Party. To the extent Debtors intend to seek reimbursement of some or all of the costs associated with performing the Final ESI Searches and application of the electronic privilege filter, Debtors will provide the Requesting Party with an estimate of the expense required to perform these activities before undertaking them. The expense for these activities may be allocated in accordance with the Cost Sharing Procedure (as defined in Paragraph 5(k) below). If no agreement can be reached by the parties with respect to allocation of the cost of the Final ESI Searches or application of the electronic privilege filter after consultation with the Discovery Mediator, those issues shall be resolved by the Court.

e.  With respect to potentially privileged documents identified by the electronic privilege filter, Debtors shall prepare and serve an electronically generated privilege log. Debtors and the Requesting Party shall meet and confer on the data to be provided by the electronically generated privilege log (*e.g.*, Custodian, To, From, Cc, Bcc, Date, Subject, and privilege filter terms "hit" by the document). Debtors shall not be obligated to undertake a document-by-document review of these presumptively privileged documents as an initial matter, but Debtors shall provide reasonable cooperation with respect to confirming the privileged status of any documents challenged by the Requesting Party. To the extent Debtors intend to seek reimbursement of some or all of the costs associated with preparation of the privilege log and/or

performing any privilege review, Debtors will provide the Requesting Party with an estimate of the expense before performing these activities. The expense for Debtors' efforts in preparation of the privilege log, performing any privilege review, and/or addressing any challenges may be allocated in accordance with the Cost Sharing Procedure.

    f. Prior to producing any of the Responsive/Non-Privileged Documents to the Requesting Party or Parties, Debtors shall provide notice of the proposed disclosure to all third-parties that Debtors reasonably believe may have a confidentiality and/or privilege interest in such documents. The notice shall inform all such third-parties that Debtors intend to produce the documents to the Requesting Party as soon as 14 days from the date of the notice unless an objection is filed with this Court and served on Debtors. Debtors shall serve a copy of any such objections on the Requesting Party. Upon request, an electronic copy of the entire collection of Responsive/Non-Privileged Documents shall be made available for review by such noticed third parties, on an "Outside Counsel's Eyes Only" basis, to enable such third-parties to determine whether they wish to object. Any such review will be entirely at the third-party's expense, but may include the use of electronic search facilities to be made available by Debtors and/or Debtors' e-discovery vendor. Any expense incurred by Debtors in responding to or otherwise addressing such objections may be allocated in accordance with the Cost Sharing Procedure.

    g. As soon as reasonably practical after the conclusion of the 14-day notice period, Debtors shall produce all of the documents within the collection of Responsive/Non-Privileged Documents for which no objection was filed with the Court. To the extent practicable, Debtors' e-discovery vendor shall produce the documents in any format and in any manner reasonably specified by the Requesting Party. To the extent Debtors intend to seek reimbursement of some or all of the costs associated with the production of documents, Debtors

will provide the Requesting Party with an estimate of the expense before performing these activities. The expense for Debtors' efforts may be allocated in accordance with the Cost Sharing Procedure.

      h.    To the extent documents identified by the Agreed Search Terms are requested by multiple Requesting Parties concurrently, Debtors shall make reasonable efforts to coordinate any request for the allocation of costs among Debtors, the Requesting Parties that request the same document set, and/or the party asserting the Other Former Nortel Patent in the Underlying Litigation (the "Patent Asserting Party").

      i.    Debtors and all noticed third-parties shall have clawback rights with respect to the produced documents no less than those afforded them if they were the producing party under any protective order entered in the Underlying Litigation, but at a minimum Debtors and all noticed third-parties will have clawback rights that comport with the protections afforded by Federal Rule of Evidence 502(b) and Federal Rule of Civil Procedure 26(b)(5)(B).

      j.    So long as Debtors take reasonable steps to ensure compliance with the provisions of this Order, (i) Debtors shall have no liability with respect to any claim allegedly arising out of or resulting from such production of documents, including but not limited to any claim that such production breached a confidentiality agreement between Debtors and any other person or entity, and (ii) pursuant to Federal Rule of Evidence 502(d), any production of documents by Debtors pursuant to this Order shall not waive the privilege interests of Debtor or any noticed third-parties in any produced documents.

      k.    Cost Sharing Procedure. The expenses for any and all discovery efforts by Debtors pursuant to this Third Discovery Protocol may be allocated among Debtors, the Requesting Party, the Patent Asserting Party, and/or any objecting third party in a proportion to

be agreed upon by the parties.  If no agreement can be reached with respect to the expense allocation for the referenced activities after consultation with the Discovery Mediator, those issues shall be resolved by the Court.

<u>Discovery from Former Nortel Employees/Advisors</u>

6.  Depositions of Debtors, former employees of Debtors or any other Nortel entity ("Former Nortel Employees"), or Nortel's former counsel, consultants or advisors (collectively, "Former Nortel Advisors") may proceed without further order of the Court.

7.  In the event any Former Nortel Employee or any Former Nortel Advisor is the subject of discovery in litigation involving Other Former Nortel Patents, including any request for the production of documents or deposition testimony, Debtors shall have no obligation to seek to prevent any such document production or attend any such deposition or in any other manner seek to prevent such Former Nortel Employee or Former Nortel Advisor from disclosing any information as to which Debtors are, were, or may be entitled to assert the protections of the attorney-client privilege, the attorney work product immunity, the common interest privilege, or any other applicable privilege or immunity, or any information as to which Debtors have, had, or may have confidentiality or privacy obligations (collectively, "Potentially Protected Information").

    a.  Debtors shall have no liability with respect to any claim allegedly arising out of or resulting from any disclosure of Potentially Protected Information by any Former Nortel Employee or Former Nortel Advisor, whether or not Debtors have notice of discovery being sought from such Former Nortel Employee or Former Nortel Advisor.

    b.  Nothing in this Paragraph 7 shall be deemed to restrict any other person or entity from asserting any rights it claims to have to prevent or limit the disclosure of Potentially

- 9 -

Protected Information or the production of documents or deposition testimony from a Former Nortel Employee or Former Nortel Advisor.

<u>Apportionment of Costs Among Nortel Estates</u>

8.      Nothing in this Third Discovery Protocol, including Debtors' agreement to bear some or all of the costs of discovery efforts pursuant to this Third Discovery Protocol, nor any Order by this Court requiring Debtors to bear some or all of such costs, is intended to or shall (unless otherwise stated in such Order) restrict or otherwise prejudice Debtors' rights with respect to seeking to apportion among the various Nortel estates any costs incurred by Debtors in responding to third-party discovery.

END OF DOCUMENT