IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- X
: 
*In re* : Chapter 11
: 
Nortel Networks Inc., *et al.*, : Case No. 09-10138 (KG)
: 
Debtors.[1] : Jointly Administered
: 
: Re: Docket No. 15611
: 
---------------------------------------------------------------- X

**JOINDER WITH RESERVATION OF RIGHTS
OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF NORTEL NETWORKS INC., ET AL.
TO THE U.S. DEBTORS' MOTION FOR RECONSIDERATION**

The Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc. ("NNI") and certain of its U.S. affiliates, as debtors and debtors in possession (collectively, the "U.S. Debtors"), by and through its undersigned counsel, hereby joins (the "Joinder") in the *U.S. Debtors' Motion for Clarification and/or Reconsideration of the May 12, 2015 Allocation Trial Opinion and Order* (D.I. 15611) (the "U.S. Debtors' Motion for Reconsideration"),[2] subject to an express reservation of rights to appeal the Opinion and Order, and additionally respectfully submits as follows.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226) ("NN CALA").

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the U.S. Debtors' Motion for Reconsideration or in the *Allocation Trial Opinion* (D.I. 15544) and *Order* (D.I. 15545).

1

**PRELIMINARY STATEMENT**

1.  Reconsideration of the Court's *Allocation Trial Opinion* (D.I. 15544) and *Order* (D.I. 15545) (together, the "<u>Opinion and Order</u>") is appropriate under Bankruptcy Rules 9023 and 9024 to prevent manifest injustice to U.S. general unsecured creditors ("<u>GUCs</u>") and to correct clear legal error. The Court decried the "extreme allocation proposals of the various debtors" (Op. at 92), but as shown below, the Court's methodology potentially leads to a result for U.S. GUCs that is even more "extreme" than the Canadian and EMEA Debtor Groups had advocated. One reason for this outcome may be that the Allocation Trial Protocol (D.I. 10565) provided that the trial was to be about allocation of assets, not about determination of claims, and accordingly the parties did not present the Courts with a complete factual record regarding the scope or complexities of their claims. Without further evidence or examination of the complicated and, in some cases, disputed, claims issues existing within each estate, the Court could not have apprehended that its methodology would have extreme consequences, and would not represent a middle ground approach, or that the decision potentially causes disproportionate harm to U.S. GUCs, as illustrated below. Accordingly, the Committee joins in the U.S. Debtors' motion for reconsideration. The Committee also fully reserves its rights to appeal any and all aspects of the Opinion and Order, whether or not modified on reconsideration.

**JOINDER WITH RESERVATION OF RIGHTS**

2.  The Committee hereby joins in the Debtors' motion for reconsideration, including its arguments and requests for relief. However, because the Opinion and Order suffer from numerous legal errors – including the entire premise of an allocation of Lockbox proceeds based on the amount of allowed claims against the various Debtors – the Committee expressly reserves all rights to appeal.

**ADDITIONAL ARGUMENT**

3. The U.S. Debtors have set forth multiple points regarding the ambiguities and complexities of the Opinion and Order, and the Committee refrains from repeating those points. The Court stated that its task "is to arrive at a fair and equitable mechanism to allocate the billions of dollars of Sales Proceeds …." (Op. at 91.) By this Joinder, the Committee wishes to focus the Court's attention on the manner in which the Opinion and Order may impose a result on U.S. GUCs that is not "fair and equitable."

4. Assuming, merely for illustrative purposes and without prejudice, the figures in the publicly-available Britven exhibits,[3] and that the Crossover Bond claim in the U.S. is not taken into consideration for allocation purposes – assumptions with which the Committee disagrees – the Court's methodology produces an allocation of 11% of the Lockbox proceeds to the U.S., 66% to Canada, and 23% to EMEA. As shown below, this allocation result is not "fair and equitable".



---

[3] As adjusted by the U.S. Debtors to reflect certain discrete changes with respect to cash and claims since the date of his report. Details of these adjustments are provided in Exhibit A to the U.S. Debtors' Motion for Reconsideration, including the notes thereto.

5. The Court said that "the Debtors have lost sight of the irrationality of their respective positions" (Op. at 92), and described their allocation positions as "extreme" (*Id.*) But the Court's result is even more extreme. Even the outlier position argued by the Monitor would have allocated 14% to the U.S.; the Court would allocate even less. And even the position presented by the EMEA Debtors would have taken only 18% for their estates; this Court would award them more.

6. This illustrative Lockbox allocation also would allocate less to the U.S. Debtors than even the Monitor's valuation expert, Green, said the U.S. Debtors should be allocated out of proceeds from asset sales, excluding any value related to the residual intellectual property. As this Court criticized the Monitor's approach as "narcissistic" (Op. at 62), any approach that would result in the U.S. Debtors being allocated even less than the allocation propounded by the Monitor and the Canadian Debtors cannot be fair and equitable to the U.S. Debtors and their stakeholders.

7. The Court relied in its allocation methodology on the claims in each Debtor estate, despite the fact that the trial was not a trial of claims. As the Court stated: "The allocation each Debtor Estate will be entitled to receive from the Lockbox funds is the percentage that all allowed claims against that Estate bear to the total allowed claims against all Debtor Estates." (Order at 2(a).) The Court also stated: "The Court's adoption of pro rata allocation is the only outcome that reflects uncontroverted evidence and leads to a just result." (Op. at 99.) But the Court was presented with very limited evidence at the allocation trial regarding the claims. The Canadian Creditors Committee's expert, Britven, provided an "illustrative" set of exhibits regarding assets of the various Nortel debtors, their purported cash on hand, and the claims asserted against them. Many parties did indeed controvert the Britven

assumptions, but a full record on claims was not developed during the allocation trial.[4] Additionally, there is public information regarding cash and claims in the U.S. Debtors' Monthly Operating Reports, but far less public information from the Monitor and from the administrators of the EMEA Debtors. It cannot be said that the Court had "uncontroverted evidence" of claims worldwide while crafting a methodology based on those claims.

8. As the U.S. Debtors have stated in their motion, there are also certain ambiguities inherent in the Court's methodology. One significant ambiguity arises from the Court's reference to the "shortfall" that the holders of Crossover Bonds will have, for purposes of calculating the amount of claims against the U.S. Debtors and then calculating allocation. The Committee assumes that the Opinion and Order cannot be construed to violate *Ivanhoe* and its progeny. Pursuant to *Ivanhoe*, the Committee respectfully submits that the U.S. Debtors must be given credit for such claims in the allocation of the Lockbox proceeds. Any other result would be so manifestly inequitable to U.S. GUCs as to defy any possible argument that the modified pro rata allocation was fair and equitable to all constituencies. Using the Britven assumptions, the amount of the Bondholders' guarantee claims will greatly exceed the amount of ordinary U.S. GUC claims. The result is an overwhelming dilution of recoveries to the GUC creditors, including former employees with pension-related claims. As shown in the U.S. Debtors' Exhibit A, the Britven assumptions produce a recovery from the Lockbox allocation of as little as 14% for ordinary GUC claims under certain scenarios.

9. Finally, the Opinion and Order must clarify, as the U.S. Debtors request, that settled claims are included when calculating the amount of "allowed claims" against each Debtor. As the Court is aware, the U.S. Debtors settled the EMEA and UKPC claims prior to

---

[4] Indeed, because the U.S. Debtors reached a settlement with the EMEA Debtors and the U.K. Pension Claimants earlier in 2014, the planned claims portion of the trial was considered moot and did not proceed in the U.S.

trial, but paid for that settlement with cash rather than an allowed claim.  It could not have been the intent of this Court, with its emphasis in the Opinion on fairness and the equitable authority provided under section 105 of the Bankruptcy Code, to allocate less of the Lockbox to the U.S. because those claims were settled with cash before trial.  (Indeed, the issue calls into question how the settlement could have been in the best interests of the U.S. Debtors' estates and approved under Bankruptcy Rule 9019.)

## CONCLUSION

10. The allocation methodology set by the Court results in particularly acute, and respectfully, unreasonable and inequitable damage to U.S. GUCs.  The Court's methodology would give extremely little to the U.S. Debtors, which magnifies the harm to ordinary U.S. GUCs after the payment of priority and administrative claims, the significant erosion of treasury cash during these proceedings, and the massive dilution from the Crossover Bonds' guarantee claims.  The result is that ordinary U.S. GUCs would recover far less than the GUCs in Canada and EMEA.  The Opinion and Order should be reconsidered to prevent manifest injustice to those U.S. creditors.  For all of the foregoing reasons, the Committee respectfully requests that the Court reconsider its Allocation Trial Opinion (D.I. 15544) and Order (D.I. 15545), and grant the Committee such other and further relief as the Court deems just, proper and equitable.

|  |  |
|---|---|
| Dated: May 26, 2015<br>Wilmington, Delaware | Respectfully submitted,<br><br>By:    */s/ Christopher M. Samis*<br>   Christopher M. Samis (No. 4909)<br>   Whiteford, Taylor & Preston LLC<br>   The Renaissance Centre<br>   405 North King Street, Suite 500<br>   Wilmington, Delaware 19801<br>   Tel.:  (302) 353-4144<br><br>   and<br><br>   Fred S. Hodara (*pro hac vice*)<br>   David H. Botter (*pro hac vice*)<br>   Abid Qureshi (*pro hac vice*)<br>   Brad M. Kahn (*pro hac vice*)<br>   Akin Gump Strauss Hauer & Feld LLP<br>   One Bryant Park<br>   New York, NY  10036<br>   Tel.:  (212) 872-1000<br><br>   *Co-counsel to the Committee* |

110326833