## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NORTEL NETWORKS, INC., *et al.,*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10138 (KG)<br><br>(Jointly Administered)<br><br>**Re: D.I. 15611**<br><br>Hearing Date: June 25, 2015 at 9:00 a.m. (ET)<br>Objection Deadline: June 12, 2015 at 4:00 p.m. (ET) |

### RESPONSE OF LAW DEBENTURE TRUST COMPANY OF NEW YORK, AS INDENTURE TRUSTEE FOR THE NNCC NOTES, TO U.S. DEBTORS' MOTION FOR CLARIFICATION AND/OR RECONSIDERATION OF THE MAY 12, 2015 ALLOCATION TRIAL OPINION AND ORDER

Law Debenture Trust Company of New York ("Law Debenture"), as indenture trustee for $150 million in aggregate principal amount of 7.875% Notes Due 2026 (the "NNCC Notes") issued by Nortel Networks Capital Corporation ("NNCC"), by and through its attorneys, Patterson Belknap Webb & Tyler LLP and Morris James LLP, hereby submits this response ("Response") to the *U.S. Debtors' Motion for Clarification and/or Reconsideration of the May 12, 2015 Allocation Trial Opinion and Order*, dated May 26, 2015, Dkt. No. 15611 (the "Debtors' Reconsideration Motion" or the "Motion").[2]  Law Debenture respectfully states that:

### RESPONSE

1.     Law Debenture generally supports the relief requested in the Debtors' Reconsideration Motion, especially the request for confirmation that the Allocation Decision

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), and Nortel Networks (CALA) Inc. (4226).

[2] Capitalized terms not defined herein have the meanings ascribed to them in the Debtors' Reconsideration Motion.

7881441

provides for *pro rata* allocations of Lockbox funds to each individual debtor, *i.e.*, on a debtor-by-debtor basis. *See* Debtors' Reconsideration Mot., ¶¶ 4, 40-42. Indeed, Law Debenture filed its own motion seeking the same relief.[3]

2.      Law Debenture submits this Response to express its concerns about one issue addressed in the Motion: the U.S. Debtors' proposal to exclude intercompany claims within debtor groups from the *pro rata* allocation of Lockbox funds. *See* Debtors' Reconsideration Mot., ¶¶ 4, 37 ("[T]he U.S. Debtors seek confirmation or clarification that the 'intercompany claims' that are 'included in calculating the allocation' are claims between Debtors across different Debtor groups (*i.e.*, the U.S. Debtors, the Canadian Debtors and the EMEA Debtors) rather than within Debtor groups").

3.      The U.S. Debtors contend that excluding all intercompany claims within a debtor group "is necessary to ensure that allocation of the Lockbox proceeds would not be subjected to risk of significant distortion by claims allowed between Debtors within the same Debtor group." Debtors' Reconsideration Mot., ¶ 37. *See id.* ("[T]he fact that NNSA may have claims against NNUK (or perhaps both may have claims against each other) should not increase the net allocation to either of those EMEA Debtors. The same is true with respect to claims among members of the U.S. Debtor group and claims among members of the Canadian Debtor group. Inclusion of such intra-Debtor group claims would result in even greater portions of the Lockbox allocated both to the Debtor against whom such claim is allowed and the Debtor that holds that allowed claim, thereby incentivizing both to generously assert and allow such

---

[3] *See Motion of Law Debenture Trust Company of New York, as Indenture Trustee for the NNCC Notes, Pursuant to Fed. R. Civ. P. 52(b), 59(e) and 60, for Partial Reconsideration of the Court's Order and Allocation Trial Opinion* [Docket No. 15615], dated May 26, 2015, at ¶ 17 (requesting clarification that "consistent with the Allocation Decision's findings there will be *no* substantive consolidation—partial, geographic, or otherwise—and that intercompany claims will be recognized, (a) the corporate separateness of NNCC will be respected, and (b) NNCC is entitled to [a] separate allocation from the Lockbox funds").

7881441

claims.").

4.    The U.S. Debtors' position, however, would exclude NNCC's significant intercompany claims against Nortel Networks, Inc. ("NNI") from NNI's *pro rata* allocation calculation.[4]  If the U.S. Debtors' request is granted, then *valid* intercompany claims of one U.S. Debtor against another would not be counted for allocation purposes.  The U.S. Debtors would sacrifice these claims – for allocation purposes – to ensure that *invalid* intercompany claims do not siphon away additional funds from creditors in the United States.

5.    This sacrifice is troubling to Law Debenture because of the adverse impact it could have on NNCC's creditors.  The U.S. Debtors speculate that eliminating intercompany claims might benefit the U.S. Debtors as a whole.  But the evidentiary record before the Court does not show how excluding intercompany claims from allocation calculations will benefit NNCC.  The U.S. Debtors must exercise an appropriate level of fiduciary rigor for *each* U.S. Debtor.  Their collective response to the Allocation Decision and the pending motions for reconsideration should not prejudice NNCC individually or advocate a form of geographic consolidation that is inconsistent with the Allocation Decision.[5]

6.    Nevertheless, Law Debenture submits that the U.S. Debtors' concerns

---

[4] NNCC has an approximate $148 million against NNI arising from an intercompany loan agreement.  This claim is undisputed.  *See* Amendment of Schedules of Nortel Networks Inc., dated December 10, 2014 [Docket No. 14918]. And NNI executed a Support Agreement with NNCC, dated February 15, 1996 (the "Support Agreement"), in connection with the issuance of the NNCC Notes.  NNCC has an intercompany claim against NNI for any and all amounts owing under the Support Agreement, including amounts necessary to cause NNCC to have and maintain a net worth equal to $1.00 based on the value of NNCC's tangible assets and liabilities as measured in accordance with generally accepted accounting principles.

[5] This Court has ruled that the corporate separateness of each U.S. Debtor must be respected and that no form of substantive consolidation is appropriate in this case.  The Allocation Decision states specifically that "the Court is not ordering cross-border, global substantive consolidation."  *Id.* at 63.  *See id.* at 104 ("The record of Nortel's operations does not satisfy the legal and factual requirements for substantive consolidation.  While Nortel operated as a highly integrated multinational enterprise, the evidence establishes that the Nortel affiliates respected corporate formalities and did not commingle their distinct assets or liabilities.  Given that Nortel respected and maintained corporate separateness among its distinct legal entities both before and during its insolvency, substantive consolidation cannot be applied in this case.").

7881441

regarding the potential for claim distortion may be valid and justify protecting creditors of the U.S. Debtors from unfair dilution as a result of overstated intercompany claims in other jurisdictions.  Thus, it is important to (i) ensure that *valid* intercompany claims – including the claims of NNCC – are included in the allocation to NNI (*i.e.*, nothing in the Debtors' Reconsideration Motion should be construed as a waiver by NNI of such claims), and (ii) implement procedures to ferret out any intercompany claims that would improperly inflate a particular debtor group's allocation.

7.    The Court has observed that it can "resolve any disputed claims to prevent claim inflation."  Allocation Decision at 112.  And the Debtors' Reconsideration Motion appropriately asks the Court to implement such reconciliation procedures.  *See* Debtors' Reconsideration Mot., ¶ 4 (requesting the Court "oversee the measurement of the amount of large disputed claims of all Debtors, particularly that of the U.K. Pension Claimants and other claims filed against the EMEA Debtors, and adopt prompt procedures detailing such oversight for purposes of determining how much of the Lockbox should be allocated on account of such claims."); ¶¶ 43-47 (same).  Law Debenture supports the U.S. Debtors' proposal to implement reconciliation procedures and considers it a more surgical and appropriate alternative.  *See id.* ("The Court Should Establish Procedures At This Time To Enable The U.S. Debtors To Promptly Challenge Inflated Claims Asserted Against Other Estates, Including Particularly The U.K. Pension Claimants' $3 Billion Claim.").

7881441

4

## RESERVATION OF RIGHTS

8.     Law Debenture reserves all rights (a) to file additional pleadings and to appear and be heard either in support of or in opposition to any other motions to reconsider the Allocation Decision and the Allocation Order, and (b) in connection with any appeal of the Allocation Decision and the Allocation Order.

Dated:  Wilmington, Delaware
        June 12, 2015

Respectfully submitted,

**MORRIS JAMES LLP**

By: Stephen M. Miller (DE Bar No. 2610)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware  19899-2306
Telephone:  (302) 888-6800
Facsimile:  (302) 571-1750
Email:  smiller@morrisjames.com

– and –

PATTERSON BELKNAP WEBB & TYLER LLP
Daniel A. Lowenthal
Brian P. Guiney
1133 Avenue of the Americas
New York, New York  10036-6710
Telephone:  (212) 336-2000
Facsimile:  (212) 336-2222
Email:  dalowenthal@pbwt.com
        bguiney@pbwt.com

*Counsel for Law Debenture Trust Company of New York, as Indenture Trustee*

7881441