**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Nortel Networks, Inc., <u>et al</u>. | : | Case No. 09-10138 (KG) |
| Debtors. | : | (Jointly Administered) |
| | | **Related to Docket No. 15611** |

-------------------------------------------------------------------- x

### OBJECTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, AS SUCCESSOR INDENTURE TRUSTEE TO U.S. DEBTORS' MOTION FOR CLARIFICATION AND/OR RECONSIDERATION OF THE MAY 12, 2015 <u>ALLOCATION OPINION AND ORDER</u>

Wilmington Trust, National Association, exclusively in its capacity as indenture trustee for the Notes[1] (in such capacity, "<u>Wilmington Trust</u>" or the "<u>Trustee</u>"), by and through its undersigned attorneys, submits this objection (the "<u>Objection</u>") to the U.S. Debtors' Motion for Clarification and/or Reconsideration (the "<u>Reconsideration Motion</u>") of the May 12, 2015 Allocation Opinion and Order (the "Allocation Order"), and in furtherance thereof, respectfully submits as follows:

### <u>PRELIMINARY STATEMENT</u>

In its opening statement in the Allocation trial, Wilmington Trust stood before the Courts and said: "[t]hat the overwhelming evidence that the Court will receive will reveal that the pro rata [allocation] approach reflects the true nature of Nortel's business." (Tr. 495:4-8.) After the Courts presided over 21 days of trial, heard testimony from 36 witnesses, and reviewed hundreds of pages of post-trial briefing, both came to that precise conclusion. In arriving at its pro rata Allocation Order, the Court has appropriately utilized its authority under section 105(a) of the

---

[1] Nortel Networks Limited 6.875% Notes due 2023, issued pursuant to that certain Indenture, dated as of November 30, 1988 (as amended, supplemented or modified) between Nortel Networks Limited and the Trustee, as successor trustee to The Bank of New York Mellon (formerly known as The Bank of New York) as successor trustee to the Toronto-Dominion Bank Trust Company.

Bankruptcy Code in order to devise a "flexible remed[y]" to "effect the result the Code was designed to obtain." *Official Comm. Of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (en banc).

Apparently unhappy with the decision, the U.S. Debtors request that this Court "reconsider" its decision, and inappropriately offer arguments and positions that were previously advanced and considered in the Allocation Proceeding. Moreover, the U.S. Debtors attempt to rebut and/or characterize the testimony of Thomas Britven, notwithstanding their prior cross-examination of Mr. Britven in the Allocation Proceeding, and their conscious decision to not present a rebuttal expert of their own to rebut Mr. Britven's testimony during trial. The U.S. Debtors' motion is merely a vehicle for them to attempt to get a second bite at the apple and try to convince the Court to reverse its own well-reasoned decision, without pursuing the appropriate appellate process, ensuring the protections that such a process affords to Appellees.

The U.S. Debtors' "undeniabl[e] disappoint[ment]" (Mov. Br. at ¶ 2) with the Allocation Order does not satisfy the minimum requirements for reconsideration by this Court as set forth in Federal Rules of Civil Procedure 59(e) or 60. "A motion for reconsideration is not an appeal. The moving party must demonstrate more than a disagreement with the Court's decision." *Perkins v. Verma (In re Patwari)*, 2014 WL 4124256, at *3 (Bankr. D.N.J. Aug. 21, 2014) (internal citation omitted). *See also*, *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990) ("[R]econsideration requests are not a substitute for an appeal from a final judgment.") (internal citation omitted). The U.S. Debtors have failed to demonstrate more than a disagreement with the Court's decision, and the Court should deny the U.S. Debtors' Reconsideration Motion.

**OBJECTION**

1.    The U.S. Debtors fail to establish any legitimate reason for the Court to reconsider its Allocation Order.  The Third Circuit has established that a motion for reconsideration "must rely on one of three major grounds: '(1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; [or] (3) the need to correct clear error [of law] or prevent manifest injustice.'" *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).  The U.S. Debtors do not purport to offer new controlling law or newly available evidence in support of their plea for reconsideration.  In fact, the U.S. Debtors fail to specify any particular basis upon which the Court should reconsider its lengthy, meticulously reasoned opinion.

2.    Federal courts are highly resistant to granting motions for reconsideration, favoring instead the certainty that derives from ensuring the finality of court rulings.  "[A]s a rule courts should be loathe to [grant reconsideration] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." *Cf.*, *Lesende v. Borrero,* 752 F.3d 324, 339 (3d Cir. 2014) (quoting *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 816 (1988)).  The U.S. Debtors have identified no such error or injustice, and thus their Reconsideration Motion should be denied.

   A.    The U.S. Debtors' Reconsideration Motion is an Improper Attempt to Introduce Evidence that Could and Should Have Been Introduced at Trial.

3.    The U.S. Debtors' Reconsideration Motion is a thinly veiled attempt to offer unsworn, unexamined testimony and argument about the alleged faults in a pro rata allocation that they failed to raise at trial.  They have no excuse for such failure that could justify introduction of new evidence at this time; the prospect of a pro rata allocation was not a surprise to the U.S. Debtors, rather it was a theory advanced by each of the CCC, UKPC, and Wilmington

Trust.  It was the subject of expert reports and testimony at trial, as well as extensive briefing. While the U.S. Debtors lament that "the Court did not have the benefit of briefing by the parties or expert analysis to confirm the critical assumptions underlying the Court's decision," (Mov. Br. at ¶ 6), the truth is that the Court did have the benefit of briefing of parties and expert analysis on these precise issues.  The U.S. Debtors' disappointment stems from their own determination not to submit such briefing or evidence, and instead rely solely on their criticisms of the approach.

4.      The U.S. Debtors had the opportunity to offer their own expert testimony to rebut the testimony proffered by the pro rata advocates, and they actually spent time cross-examining Thomas Britven at trial.  Their failure to establish a record on which the Court might have ruled in their favor on the question of pro rata allocation cannot be corrected through this Reconsideration Motion.  "Litigants who fail in their 'first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one .... [or] to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided.'"  *In re W.R. Grace & Co.*, 398 B.R. 368, 372 (D. Del. 2008) (internal citation omitted).  *See also*, *Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron Inc.,* No. CIV A 08-959, 2009 WL 2059084, at *2 (D. Del. July 10, 2009) ("A motion for reconsideration may not be used as a vehicle for presenting new arguments that could have been advanced earlier and may not be used to ask a court to simply re-think its prior decision.").

5.      While the U.S. Debtors did not put forth their own expert to create a factual basis for the alleged inequity worked by pro rata allocation, they did devote significant argument to the topic in their post-trial briefing.  Ignoring the fact that the Court had a sufficient record to reach its conclusion, the U.S. Debtors bring this Reconsideration Motion as "a classic attempt at a

'second bite at the apple.'" *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995).  The Court should deny the U.S. Debtors' improper motion.

   B.  <u>The U.S. Debtors' Claim of Injustice is Irrelevant and Factually Incorrect.</u>

   6.  The U.S. Debtors' claim of inequity rests on their conclusion (based on misleading calculations, *see, e.g.*, Monitor's Objection at ¶¶ 35-38, incorporated by reference as if fully set forth herein) that the "Allocation Order will provide as little as 11% of the Lockbox proceeds to the U.S. Debtors."  (Mov. Br. at ¶ 11.)  This argument is, in the first instance, irrelevant.  The question of equity is invoked not by each Debtors' allocation of the Lockbox proceeds, but by the eventual recoveries by the creditors.  The Allocation Order is just that – "the Court [] directing an allocation among the Estates for the Estates to distribute in an appropriate manner." (Allocation Order at 102.)

   7.  The argument is also misleading, because it implies that U.S. unsecured creditors will eventually receive disproportionately small distributions.  However, based on the U.S. Debtors' own calculations set forth in their motion, the eventual distribution that will result from the Court's order will  "yield total creditor recoveries of approximately 40% for U.S. Unsecured Creditors, 49% for Canadian Unsecured Creditors, 65% for EMEA Unsecured Creditors and 89% for the Guaranteed Bondholders."  (Mov. Br. at ¶ 13.)  Such a result simply does not reveal a situation replete with "manifest injustice."  The Court never intended its Allocation Order to ensure that creditors would each receive the exact same recovery, and, in fact, explicitly rejected the notion that its Order would ensure that "creditors receive a common dividend on a pro rata, *pari passu* basis." (Allocation Order at 106.)

   8.  Finally, the Court should reject the calculations advanced by the U.S. Debtors as unreliable.  The U.S. Debtors have premised their allegations of inequity on unsworn, unproven calculations, based on an expert opinion whose accuracy they dispute.  (Mov. Br. at ¶ 7.)  The

evidentiary record in the Allocation Proceeding is closed and the Court's decision has been rendered.  The U.S. Debtors provide no sustainable basis for reconsideration.

       C.    <u>The Allocation Order as Propounded by the Court is Clear and Fair.</u>

      9.    The U.S. Debtors also challenge the Court's decision that "for allocation purposes the [Guaranteed Bondholder claims] will be included only against the primary obligor."  (Mov. Br. at ¶ 28.)  The U.S. Debtors have no legitimate argument that the Court made this ruling inadvertently – the Court's thorough opinion well reflects the fact that it "has toiled mightily to reach a correct and equitable result, consistent with the evidence adduced at trial." (Allocation Order at 99.)  Neither can the U.S. Debtors argue that the Court's decision was ill-considered, as the very determination which the U.S. Debtors protest was included by the Court in order to address the U.S. and EMEA Debtors' argument that pro rata allocation is "unadministrable." (*Id.* at 111.)

      10.    Moreover, the Court's ruling is based on the eminently fair and reasonable basis that "[c]laims will be recognized only once." (*Id.* at 112.)   A contrary ruling, one in which the Guaranteed Bondholders' and, by logical extension, UKPC's claims may be counted against each Debtor against whom they might be asserted would work an absurdity of the Court's decision – artificially inflating the claims against certain estates and hopelessly distorting the allocation process.  The danger of such an outcome was raised by the U.S. Debtors in their post-trial brief where they raised the specter that "that the UKPC would potentially be able to participate in the pro rata distribution 20 times on account of their guarantee claims against the EMEA Debtors' estates, which would result in a recovery far in excess of similarly situated creditor groups…." (U.S. Interests' Post-Trial Brief at 139.)   Apparently, the U.S. Debtors' concern that a constituency might recover far in excess of similarly situated creditor groups is only an issue where creditors of *other* estates may be privileged.

## CONCLUSION

For the forgoing reasons, Wilmington Trust respectfully requests that the Court deny the U.S. Debtors' Reconsideration Motion. Wilmington Trust also joins in the Monitor's Objection with respect to the U.S. Debtors' Reconsideration Motion, and incorporates by reference, as if fully set forth herein, the bases set forth in the Monitors' Objection to the Reconsideration Motion.

Dated:    June 12, 2015                          **CHIPMAN BROWN CICERO & COLE, LLP**
          Wilmington, Delaware

                                                 _____*William E. Chipman, Jr.*_____
                                                 William E. Chipman, Jr. (No. 3818)
                                                 Mark D. Olivere (No. 4291)
                                                 1007 North Orange Street, Suite 1110
                                                 Wilmington, Delaware 19801
                                                 Telephone:    (302) 295-0191
                                                 Facsimile:    (302) 295-0199
                                                 Email:        chipman@chipmanbrown.com
                                                               olivere@chipmanbrown.com

                                                 – and –

                                                 Craig A. Barbarosh
                                                 David A. Crichlow
                                                 Karen B. Dine
                                                 KATTEN MUCHIN ROSENMAN LLP
                                                 575 Madison Avenue
                                                 New York, New York 10022-2585
                                                 Telephone:    (212) 940-8800
                                                 Facsimile:    (212) 940-8776
                                                 Email:        craig.barbarosh@kattenlaw.com
                                                               david.crichlow@kattenlaw.com
                                                               karen.dine@kattenlaw.com

                                                 – and –

Kenneth Kraft
John Salmas
DENTONS CANADA LLP
77 King Street West, Suite 400
Toronto, Ontario M5K 0A1
Canada
Telephone:     (416) 863-4511
Facsimile:      (416) 863-4592
Email:            kenneth.kraft@dentons.com
                       john.salmas@dentons.com

*Attorneys for Wilmington Trust, National
Association, solely in its capacity as Successor
Indenture Trustee and not in its individual capacity*