## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------X
In re                                        :
                                             :        Chapter 11
                                             :
Nortel Networks Inc., et al.,                :        Case No. 09-10138 (KG)
                                             :
                    Debtors.                 :        Jointly Administered
                                             :
                                             :        Re: Docket Nos. 15611 & 15613
-------------------------------------------------------------X
```

## JOINDER WITH RESERVATION OF RIGHTS OF THE TRADE CLAIMS CONSORTIUM TO THE U.S. DEBTORS' MOTION FOR RECONSIDERATION

The consortium (the "Trade Claims Consortium" or the "Consortium"),[1] as holders of over $125 million in unsecured (non-funded debt) claims ("U.S. Trade Claims") against Nortel Networks Inc. ("NNI") and certain of its U.S. affiliates, as debtors and debtors-in-possession (collectively, the "U.S. Debtors")[2], by and through its undersigned counsel, hereby joins in part (the "Joinder") in the *U.S. Debtors' Motion for Clarification and/or Reconsideration of the May 12, 2015 Allocation Trial Opinion and Order* (D.I. 15611) (the "U.S. Debtors' Motion for Reconsideration")[3] subject to an express reservation of rights to appeal the Opinion and Order, and respectfully submits as follows:

---

[1]    Concurrent with this Joinder, the Consortium has filed a verified statement disclosing its membership and their individual economic interests to the extent required by Rule 2019 of the Federal Rules of Bankruptcy Procedure.

[2]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

[3]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the U.S. Debtors' Motion for Reconsideration or in the *Allocation Trial Opinion* (D.I. 15544) and *Order* (D.I. 15545) (together, the "Opinion and Order").

## PRELIMINARY STATEMENT

1.      The Consortium represents a group of creditors holding claims against the U.S. Debtors who have joined together in the wake of the Opinion and Order in response to the unexpected, unjust treatment afforded to U.S. Trade Claims (or, to be more precise, unsecured non-funded debt claims – including the claims of the U.S. Debtors' former employees).  To date, there has not been an unconflicted voice in these cases that speaks for the interests of these creditors.  This Joinder is submitted primarily in support of the arguments in the U.S. Debtors' Motion for Reconsideration pertaining to the $4 billion in claims asserted by the holders of bonds issued by NNC and/or NNL but guaranteed by NNI (the "Bond Guarantee Claims"), the treatment of which (in the Opinion and Order) is responsible for the lion's share of injustice to the holders of U.S. Trade Claims.

2.      The Consortium understands that the standards for reconsideration are not easily satisfied.[4]  But here, the manifest injustice that would result from implementation of the Court's allocation methodology justifies reconsideration.

3.      Many of the parties find fault with the Court's adoption of a modified pro rata approach, but this is not before the Court in the various reconsideration motions, and the Consortium reserves that issue for appeal.  However, once such an approach has been selected it must be applied on an even-handed basis across the board or manifest injustice is inevitable.  The Opinion and Order make just this kind of error.  By ignoring the $4 billion Bond Guarantee Claims in the U.S. claims allocation base, the Court depletes the allocation proceeds to be distributed to all other U.S. Creditors and works a particularly harsh and unanticipated injustice

---

[4]      In order to prevail on its Motion for Reconsideration, the U.S. Debtors must show: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  In re W.R. Grace & Co., 398 B.R. 368, 372 (D. Del. 2008) (alteration in original) (quoting Max's Seafood Cafe ex rel. Lou Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)).

upon the holders of U.S. Trade Claims.  The holders of Bond Guarantee Claims do not suffer in the same manner as holders of U.S. Trade Claims because, subject to an order to the contrary, they have claims against both the Canadian and the U.S. estates.  It is the distributions that may ultimately be allowed against the U.S. Debtors on behalf of the Bond Guarantee Claims coupled with the artificially reduced share of the lock box that operate to massively dilute U.S. Trade Claim recoveries.

4.      This injustice is evident even without resort to detailed calculations that the U.S. Debtors have submitted, and others have attacked, to show how U.S. unsecured creditors fare under the Opinion and Order compared to creditors in other jurisdictions, or how the treatment compares to positions taken by the various parties at the allocation trial.  Rather, the Court needs only to look at the *relative* result for the holders of U.S. Trade Claims: (i) without the guarantee in the allocation pool; versus (ii) with the guarantee in the allocation pool.

5.      The Consortium does not have access to financial advisors that can run an array of recovery scenarios.  However, using the information provided by the U.S. Debtors, the Consortium calculates that the inclusion of the full amount of the Bond Guarantee Claims in the allocation calculation would yield the U.S. Debtors approximately $1.3 billion in additional lockbox proceeds.  As a result, and using the same assumptions as the U.S. Debtors, recoveries for U.S. Trade Claims would increase by approximately 25% of the face amount of the claims.[5]

---

[5]      This calculation assumes that Bond Guarantee Claims will be asserted and allowed in full in determining recoveries under a U.S. plan.  However, the Consortium  reserves all rights as to whether <u>Ivanhoe Building & Loan Ass'n of Newark v. Orr</u>, 295 U.S. 243 (1935) requires that the full amount of the Bond Guarantee Claims may be asserted against the U.S. Debtors for distribution purposes.  While the Bond Guarantee Claims were allowed by the Court (albeit in connection with what now may be a completely irrelevant deal on post-petition interest), in light of the current state of affairs and the equities of these cases there may be reason to revisit the claim under Bankruptcy Code §502(j).  Moreover, these Chapter 11 cases involve cross-border guarantee claims in a global bankruptcy spanning multiple bankruptcy estates - circumstances highly distinguishable from those underlying the <u>Ivanhoe</u> decision.

6.      This result is the equivalent of taking assets that belong to the holders of U.S. Trade Claims and handing them to Canadian and UK/EMEA creditors.  As further described below, this is especially unjust given that the U.S. Debtors have a relatively low level of primary debt, lent their good credit to support the issuance of the bonds by Nortel Canada (but never received any benefit from the issuance of the guaranteed bond debt), and now suffer a double penalty under the Opinion and Order: share the U.S. cash pool with the bondholders but lose the benefit of the known value of the U.S. operations (that were sufficient to be able to afford a $4 billion guarantee).

7.      Accordingly, reconsideration of the Opinion and Order in accordance with the Debtors Motion for Reconsideration is appropriate under Bankruptcy Rules 9023 and 9024.

## ARGUMENT

A.      The Trade Claims Consortium.

8.      The Consortium represents the interests of certain U.S. creditors holding, in the aggregate, unsecured non-funded debt claims of over $125 million against the U.S. Debtors.[6]  Its membership consists of both institutional investors and former Nortel employees (who have combined pension claims of approximately $2.3 million).  In accordance with the Opinion and Order, the U.S. Debtors estimate that U.S. unsecured creditors now stand to recover only 40%[7] of their claims, a figure that stands in stark contrast to the 95-100% recoveries under each of the allocation methodologies proposed to the Court (including by the Canadian Debtors, EMEA, and the CCC).  See Exhibit A to U.S. Debtors' Motion for Reconsideration at A-2.

---

[6]      As of March 2015, approximately $192.5 million of "Trade and other accounts payable" and $26.2 million of "Postretirement obligations other than pensions" have been asserted against the U.S. Debtors. See *Monthly Operating Report No. 75* (D.I. 15687).

[7]      Separate and apart from the increase to this distribution, should the relief sought herein be granted, the distribution also is dependent on the amount of the UK Pension claim and will benefit further if that pension claim is allowed at less than the amount asserted.

9.      This injustice will have a heightened impact on former Nortel employee members of the Consortium, each of whom dedicated over 20 years to working at the U.S. Debtors.  These individuals have waited more than six years to receive a distribution, which has diminished their quality of life and threatened their ability to support themselves and their families.  One such former employee has been forced to continue working despite his advanced age of 76 years old.  Another has encountered difficulty providing for her daughter's continued education.  That they now will get less than any party ever proposed to the Court only highlights the manifest injustice.

B.      The Modified Pro Rata Allocation.

10.      The Court's stated objective in its Allocation Opinion was to arrive at a "fair and equitable mechanism" constituting a "middle ground" between the "extreme" allocation methodologies proposed by the parties in interest.  Op. at 91-92.  Achieving this objective required an allocation method that "comport[s] with the manner in which Nortel operated" by respecting Nortel's "carefully maintained separate corporate identifications." Id. at 93.

11.      Accordingly, the Court explicitly rejected proposals to substantively consolidate the Nortel debtors and apply a pure pro rata distribution scheme (as proposed by the NNUK and to a lesser extent by the CCC).  Id. at 102.   Pro rata distribution through substantive consolidation, the Court held, would result in substantial prejudice to creditors.  Id. at 105.

12.      With an eye towards respecting entity "separateness," the Court instead adopted a "modified pro rata allocation" which it sought to distinguish from pure substantive consolidation and pure pro rata distribution.  The key distinction, identified numerous times by the Court is that "intercompany claims, settlements, [and] cash on hand" would all be honored in an estate's modified pro rata allocation.   Id. at 93, 100, 102, 105, 107, 112.

C.    Flaws In The Allocation Methodology Result In Manifest Injustice.

i.    The Allocation Methodology.

13.    Unfortunately, by failing to incorporate the Bond Guarantee Claims in the allocation calculation, as described below, the Court has effectively achieved the exact result it had strived to avoid: substantial prejudice to holders of U.S. Trade Claims

14.    There should be no debate that when estates are substantively consolidated *both* guarantees and intercompany claims are ignored.   This is so because when substantive consolidation is applied all estates are deemed to be merged into one – thereby:  (i) rendering guarantees ineffective (because there is no longer a separate (second) entity against which to assert a guarantee); and (ii) causing intercompany claims to cancel out (because there are no affiliates against which to assert such claims), similar to when affiliates are consolidated for financial accounting purposes.   See, e.g., In re Heartland Publ'ns, LLC, No. 09-14459, 2010 WL 2745973, at *14 (Bankr. D. Del. April 16, 2010) (intercompany claims extinguished between substantively consolidated debtors); In re Panolam Holdings, Co., No. 09-13889, 2009 WL 7226968, at *13 (Bankr. D. Del. Dec. 10, 2009) (guarantee claims eliminated and canceled at time of substantive consolidation).

15.    Likewise, there should be no debate that intercompany claims and guarantees have the *same* effect in a multi-debtor insolvency proceeding:  they both permit the creditors of one debtor to access the assets of another debtor.   In a typical non-substantively consolidated multi-debtor insolvency proceeding, these claims (intercompany claims and guarantees) can and do drive recoveries in material ways.

16.    The Court, in adopting its allocation methodology, sought to avoid the results of substantive consolidation.  As noted above, the Court did so by, among other things, providing

that intercompany claims *will* factor in to the allocation calculations but guarantee claims *will not*.

17.     This is illogical and unjust for at least two reasons.  First, intercompany clams and guarantee claims ultimately have the same effect – they drive recoveries to specific creditors given their respective legal entitlements.  To modify a pure pro rata allocation (again, a pure pro rata allocation is no different than substantive consolidation) by recognizing one legal entitlement but not the other must, by definition, artificially inflate the recoveries of some creditors to the detriment of others.  This would be akin to ordering intercompany claims to be permitted in a substantive consolidation but not guarantees.  That would be completely antithetical to the notion of substantive consolidation.  That antithetical result is no different here.

18.     Second, if the Bond Guarantee Claims are allowed as claims that participate in a U.S. plan, they get the two "bites" accorded per their asserted legal entitlements.  However, their second "bite" comes from a U.S. estate that never got its fair share of the entire pot due to exclusion of the Bond Guarantee Claims.  This massively dilutes the U.S. Trade Claims recovery.  Given that the Court chose a modified pro rata methodology *but* chose to *only* permit intercompany claims to be asserted while ignoring guarantee claims it *must* follow that an "injustice" has been foisted upon trade creditors of the U.S. estates.  Put another way, from the perspective of the U.S. Trade, the selected allocation methodology is a double whammy - akin to heads the other creditors win, tails the U.S. Trade Claim holders lose.[8]

---

[8]     Notably, the Joint Administrators admit to this exact injustice.  The Joint Administrators highlight that there is no principled basis to exclude an intercompany claim from the allocation pool because intercompany claims "give rise to real liability and entitle [the affiliate claim holder] to a distribution."  See The Joint Administrators' Objection and Response to the Motions for Reconsideration (D.I. 15741) at 37.  This is exactly the point made herein with respect to the Bond Guarantee Claims:  the guarantee gives rise to a real liability against (and a distribution from) the U.S. estates, yet the claim is excluded for allocation purposes.

19.     The only question, then, is whether the "injustice" is manifest.  The answer here *must* be that it is manifest.  Why?  Because unlike some other guarantee claims in these cases that might not impact recoveries in a material manner, the $4 billion Bond Guarantee Claims are among *the* claims that drive recoveries in these cases more than virtually any others.[9]  There is an injustice and it is manifest.

ii.     The Guarantee Claims Stand To Unjustly Dilute Other U.S.
        Creditor Claims Without Having Provided Any Benefit To The U.S. Estate.

20.      In addition to the issues addressed herein, the allowance of the Bond Guarantee Claims against the U.S. Debtors, while still depriving the U.S. Debtors of any allocation on account of such guarantee, serves to compound pre-existing inequity with respect to those claims.

21.     By the issuance of the guaranteed bonds, NNC and NNL foisted $4 billion of liabilities on the U.S. Debtors.  The U.S Debtors received no value in exchange for taking on these liabilities, as the capital raised from the bond issuances was retained by the Canadian Debtors.  Accordingly, the issuance of these guarantees served to significantly inflate the U.S. Debtors' liabilities with no equivalent benefit to the U.S. Debtors' assets.

22.     Having already had their obligor burdened by the bond guarantees, it is manifestly unjust for the holders of U.S. Trade Claims to now have their recoveries further reduced through the Court's allocation methodology.  Not only are U.S. unsecured recoveries burdened by the bond guarantees that undermined the overall value of the U.S. Debtors (for the benefit of Canada), but they now receive no benefit for the guarantee in the allocation.  Instead Canada - for whose benefit the guarantees were provided - makes out like a bandit by being the only jurisdiction that gets to count the $4 billion of bond debt in its claims pool.

---

[9]     The Consortium reserves all of its rights regarding the amount and impact of the UK pension claims on the allocation of the lock box funds.

## CONCLUSION

23.     The modified pro rata allocation methodology, as adopted by the Court in the Opinion and Order, does not fairly and equitably treat U.S. Trade Claims.  For this reason, and to prevent manifest injustice to holders of U.S. Trade Claims, the Court should reconsider its Allocation Trial Opinion (D.I. 15544) and Order (D.I. 15545), as set forth in the Debtors' Motion for Reconsideration, and grant the Consortium such other and further relief as the Court deems just, proper and equitable.

Dated:  June 22, 2015                              FOX ROTHSCHILD LLP

                                                   By:   */s/ Jeffrey M. Schlerf*
                                                   Jeffrey M. Schlerf (DE No. 3047)
                                                   Citizens Bank Center
                                                   919 North Market Street, Suite 300
                                                   Wilmington, DE 19801
                                                   Telephone: (302) 654-7444
                                                   Facsimile: (302) 656-8920

                                                        -and-

                                                   Steven D. Pohl, Esq.
                                                   BROWN RUDNICK LLP
                                                   One Financial Center
                                                   Boston, MA 02111
                                                   Telephone: (617) 856-8200
                                                   Facsimile: (617) 856-8201

                                                        -and-

                                                   Edward S. Weisfelner, Esq.
                                                   Bennett S. Silverberg, Esq.
                                                   BROWN RUDNICK LLP
                                                   Seven Times Square
                                                   New York, NY 10036
                                                   Telephone: (212) 209-4800
                                                   Facsimile: (212) 209-4801

                                                   *Counsel to the Nortel Trade Claim*
                                                   *Consortium*