IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
:
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
: (Jointly Administered)
:
: Hearing Date: June 25, 2015 at 9:00 a.m. (ET)
Debtors. : Reply Deadline: June 22, 2015 at 4:00 p.m. (ET)
:
---------------------------------------------------------------- x

**REPLY OF THE *AD HOC* GROUP OF BONDHOLDERS TO THE OBJECTIONS OF (I) THE CANADIAN CREDITORS' COMMITTEE; (II) THE MONITOR AND CANADIAN DEBTORS; (III) THE JOINT ADMINISTRATORS; AND (IV) THE U.K. PENSION CLAIMANTS TO BONDHOLDERS' MOTION FOR RECONSIDERATION**

The *ad hoc* group of bondholders (the "Bondholder Group"),[2] files this reply (the "Reply") to the: (i) Canadian Creditors' Committee ("CCC") Objection to Motions for Reconsideration and/or Clarification [D.I. 15738] (the "CCC's Objection"); (ii) Monitor and the Canadian Debtors' Objection and Response to Motions for Reconsideration, Clarification or Amendment [D.I. 15739] (the "Monitor's Objection"); (iii) Joint Administrators' Objection and Response to the Motions for Reconsideration and Clarification [D.I. 15741] (the "Joint Administrators' Objection"); and (iv) Objection of the U.K. Pension Claimants (the "UKPC" and

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

[2] The Bondholder Group consists of entities that hold certain bonds issued or guaranteed by Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc., and Nortel Networks Capital Corporation.

together with the CCC, the Monitor, and the Joint Administrators, the "Objecting Parties") to the Motions for Clarification and/or Reconsideration of the May 12, 2015 Allocation Trial Opinion and Order / Reasons for Judgment [D.I. 15743] (the "UKPC's Objection" and together with the CCC's Objection, the Monitor's Objection, and the Joint Administrators' Objection, the "Objections"). In support of this Reply, the Bondholder Group respectfully represents as follows:

## PRELIMINARY STATEMENT

1. All Objecting Parties agree with the Bondholder Group that the Court did not intend to limit the size of Bondholders' allowed guarantee claims against NNI for distribution purposes when rendering the Allocation Decision.[3] With respect to the Bondholder Group's Motion, the only disagreement between the Bondholder Group and the Objecting Parties is whether or not any clarification or reconsideration of the Allocation Decision is required. The Objecting Parties believe that the Allocation Decision is clear that it does not address distribution issues. The Bondholder Group, however, believes that the Court's statement in the Allocation Order that "[a] claim for the shortfall can be recognized by the Estate that guaranteed the bond" is, at a minimum, ambiguous, and therefore requires clarification or reconsideration.

2. The clarification or, if necessary, reconsideration requested by the Bondholder Group can be accomplished in one of two ways, neither of which should be controversial to the Objecting Parties.[4] *First*, assuming the parties are correct that the Court did not intend to address

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the *Ad Hoc* Group of Bondholders' Motion for Reconsideration of Opinion and Order Allocating Proceeds from Asset Sales of Nortel Networks Inc., its Affiliates and Subsidiaries [D.I. 15612] (the "Motion").

[4] All parties agree that the size of Bondholders' allowed claims against NNI is a distribution issue unique to the NNI estate that is not properly part of the Allocation Litigation. As a result, parties to the Allocation Litigation that hold no direct interest in the NNI estate, including the CCC, the UKPC, and the Joint Administrators, have no standing to be heard on the size of Bondholders' allowed claims against NNI, or any other NNI distribution issues. *See* 11 U.S.C. § 1109(b).

DOCS_DE:200343.1 61026/001

distribution issues in its decision, the Court can simply strike the reference to the claim for the shortfall in paragraph 2(e) of its Allocation Order and make related clarifying changes to the Allocation Order and Allocation Opinion. With these changes, Bondholders will have preserved their right, pursuant to the 9019 Order and the Supreme Court's *Ivanhoe* decision, to assert the full amount of their guarantee claims against NNI. *Second*, if, contrary to the understanding of the parties, the Court did intend for its Allocation Decision to address the size of Bondholders' claims for distribution purposes, the Court must clarify and/or reconsider the decision to (i) make clear that it does not purport to overrule the 9019 Order or *Ivanhoe* and (ii) explicitly state that Bondholders may assert the full amount of their guarantee claims against NNI, not merely a "claim for the shortfall."

## REPLY

3. The Motion addresses only a single, discrete issue: whether the Court intended to limit the amount of Bondholders' guarantee claims against NNI for distribution purposes, after the allocation of the Sale Proceeds to the Nortel Debtors' estates has occurred.[5] (Motion ¶ 1.) The Motion argues that the Court could not have intended to so limit Bondholders' claims for three reasons, each of which is independently sufficient to support the relief sought: (i) such a limitation conflicts with the 9019 Order, which previously granted Supporting Bondholders an allowed claim against NNI in an amount equal to the full outstanding principal amount of their bonds, plus accrued prepetition interest; (ii) such a limitation is inconsistent with *Ivanhoe* and its

---

[5] Certain of the Objecting Parties seem confused as to whether or not the Bondholder Group supports the U.S. Debtors' request for reconsideration of the Court's decision that Bondholders' guarantee claims do not count toward the allocation of Sale Proceeds to NNI. (*Compare* UKPC Objection ¶ 36 (characterizing the request for recognition of the guarantee claims for allocation purposes as "the Bondholders' argument") *with* Monitor's Objection ¶ 60 (stating that Bondholders "have not sought reconsideration of the Decisions on the basis that their guarantee claims do not count toward allocation").) To be clear, the Bondholder Group agrees with the U.S. Debtors that Bondholders' guarantee claims should count for allocation purposes even though it did not file a separate motion for reconsideration of this issue. The Bondholder Group reserves the right to present argument on the issue, and any other issues raised by the U.S. Debtors' motion, at the upcoming hearing. The Bondholder Group further reserves its right to appeal all aspects of the Allocation Decision.

progeny, which establish that a creditor is entitled to assert the full amount of its claim against a debtor-guarantor, regardless of any recovery received from the primary obligor; and (iii) the Allocation Decision is not intended to, and does not, address distribution issues, including the size of allowed claims against each estate.

4. Although none of the Objecting Parties addresses either of the Bondholder Group's first two arguments,[6] they all uniformly agree with the third. Specifically, the Objecting Parties each state clearly that they believe the Allocation Decision addresses only the allocation of Sale Proceeds to each Nortel Debtor's estate, and not subsequent distributions to creditors within each estate:

- **CCC.** "*Ivanhoe* has nothing to do with allocation. Neither it nor its progeny are violated by the Courts' Allocation Decisions. *Ivanhoe* deals only with the allowance of multi-obligor claims within individual debtor entities, *which the Courts expressly decline to address in their Allocation Decisions along with the extent of an allowed multi-obligor claim on which a debtor is authorized to make a distribution*." (CCC Objection ¶ 26 (emphasis added).)

- **Monitor and Canadian Debtors.** "*The Canadian Debtors and the Monitor agree that the Decisions extend only to allocation.* Statements made by the Courts about what the ultimate distribution may be, when read fairly, *have nothing to do with the quantum of the Bondholders' allowed claims*, but merely acknowledge the bedrock

---

[6] The only potential exception is footnote 9 of the CCC's Objection, in which the CCC appears to challenge the applicability of *Ivanhoe*, stating that "*Ivanhoe* does not address whether the allowed full amount of a multi-obligor claim may be the basis for determining the distribution a debtor is authorized to make on such claim." (CCC's Objection at ¶ 26, n.9.) According to the CCC, that issue was addressed by the Fourth Circuit's decision in *In re National Energy & Gas Transmission, Inc.*, 492 F.3d 297 (4th Cir. 2007), which stated that, under a New York statute, "where the Primary Obligor has partially satisfied the claim, the debtors' distribution is restricted to the unsatisfied portion of the claim." (*Id.*) The CCC fails to mention, however, that this Court has already allowed Bondholders' claims for principal and prepetition interest in full in the 9019 Order, rendering both *Ivanhoe* and *National Energy* unnecessary to the Court's analysis. (Motion ¶¶ 13, 20, 21.) In any event, the CCC is incorrect in suggesting that either the *National Energy* case or New York law somehow undermines the well-settled principles of *Ivanhoe*, for at least two reasons. *First*, the *National Energy* court did ***not*** conclude that the creditor in that case was unable to assert its full claim against the debtor in accordance with *Ivanhoe*. *National Energy*, 492 F.3d at 301. Indeed, the Bondholder Group is not aware of any court that has ever reached such a conclusion. *Second*, to the extent the Fourth Circuit suggested that the ***non-bankruptcy*** New York statute at issue could potentially limit a creditor's claim in accordance with *Ivanhoe* under other circumstances, it was wrong. In a more recent decision, a California bankruptcy court, applying an analogous California statute, reached the opposite (and correct) conclusion that only *Ivanhoe*, and not the statute, applies in bankruptcy. *See In re Del Biaggio*, 496 B.R. 600, 601-02 (Bankr. N.D. Cal. 2012) (holding that a "claim is not reduced by a partial recovery from a co-obligor even if state law requires that the claim be reduced in a non-bankruptcy setting").

- 4 -

principle that even when claiming on both a principal and a guarantor, a claimant can recover no more than 100 cents on the dollar. . . . The ultimate distribution on [Bondholders' claims], like any other claim, from the Debtor Estates *remains to be determined in accordance with applicable law and are unaffected by the Decisions regarding the allocation issues*." (Monitor's Objection ¶¶ 73-74 (emphasis added) (internal citations omitted).)

- **Joint Administrators.** "[T]he debate about which creditors do better than others misses one of the main points of the U.S. Allocation Decisions, *i.e.*, *that it addresses allocation, not distribution*." (Joint Administrators' Objection ¶ 5 (emphasis added).)

- **UKPC.** "[A]s the courts took pains to emphasize, the modified pro rata methodology adopted by the Courts relates only to *allocation*. *Distribution* issues—which relate to a Debtor's relationship with its creditors—are reserved for future judicial determinations in the appropriate jurisdictions, as governed by local insolvency laws." (UKPC Objection ¶ 38 (emphasis in original).)

5.  Because all parties agree that the Court did not intend to impact the size of any party's claims for distribution purposes, including Bondholders' guarantee claims against NNI, the Court should strike from the Allocation Decision any language concerning Bondholders' "shortfall" claims and otherwise clarify the Allocation Decision to eliminate any uncertainty on the issue.

6.  On the other hand, if the Court did purport to issue a decision on the size of Bondholders' allowed claims against NNI for distribution purposes, the decision must be clarified or, if necessary, reconsidered to explicitly provide that Bondholders may assert the full amount of their guarantee claims against NNI, not merely a claim for whatever shortfall remains after Bondholders receive distributions from their primary obligor. As discussed in the Motion, and not disputed by the Objecting Parties, this result is compelled by both: (i) the law of case as established by the 9019 Order, which previously allowed the guarantee claims against NNI in their full amount; and (ii) the Supreme Court's decision in *Ivanhoe* and its progeny. (Motion ¶¶ 20-24.)

## CONCLUSION

For the reasons set forth herein and in the Motion, the Bondholder Group respectfully requests that the Court grant the relief requested in the Motion and grant such other and further relief as it deems just and proper.

Dated: June 22, 2015

PACHULSKI STANG ZIEHL & JONES LLP

/s/ *Peter J. Keane*
Laura Davis Jones (No. 2436)
Peter J. Keane (No. 5503)
919 N. Market Street, 17th Floor
PO Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

-and-

MILBANK, TWEED, HADLEY & M$^C$CLOY LLP
Dennis F. Dunne
Albert A. Pisa
Andrew M. Leblanc
Atara Miller
28 Liberty Street
New York, New York 10005-1413
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

-and-

Thomas R. Kreller
601 S. Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone: (213) 892-4463
Facsimile: (213) 629-5063

*Attorneys for Ad Hoc Group of Bondholders*

DOCS_DE:200343.1 61026/001