**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS INC., et al.[1] | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | **Hearing Date: July 14, 2015 at 10:00 a.m. (ET)** |
| | ) | **Objection Date: July 6, 2015 at 4:00 p.m. (ET)** |

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF BERKELEY RESEARCH GROUP, LLC AS SUCCESSOR FINANCIAL ADVISOR, *NUNC PRO TUNC* TO JUNE 1, 2015**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submits this application (the "Application") to the Court pursuant to sections 328(a), 330 and 1103(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended and supplemented, the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), for the entry of an order authorizing the Committee to retain and employ Berkeley Research Group, LLC ("BRG"),[2] *nunc pro tunc* to June 1, 2015, pursuant to the terms of that certain engagement letter,

---

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

2 BRG is a global strategic advisory and expert consulting firm that provides independent expert testimony, litigation and regulatory support, authoritative studies, strategic advice, and document and data analytics

dated as of June 1, 2015, a copy of which is attached hereto as Exhibit A (the "BRG Engagement Letter"), as successor financial advisor to the Committee in the above-captioned Chapter 11 cases (the "Chapter 11 Cases"). In support of its Application, the Committee relies upon the Affidavit of Jay I. Borow (the "Borow Affidavit"), attached hereto as Exhibit B and incorporated herein by reference, and respectfully represents as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 328, 330 and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Bankruptcy Rule 2014-1.

## BACKGROUND

2. On January 14, 2009, each of the Debtors other than NN CALA[3] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

---

to major law firms, Fortune 500 corporations, government agencies, and regulatory bodies around the world. As a result of the addition of former Capstone personnel, its services will be expanded to include restructuring and turnaround, due diligence, valuation, and capital markets advisory services. BRG is headquartered in Emeryville, California, with 26 offices across the United States and in Calgary, Alberta, Canada; Bogotá, Colombia; London, United Kingdom; and Perth, Western Australia.

[3] NN CALA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009.

4. On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, Nortel Networks Inc.'s direct corporate parent, Nortel Networks Limited, and certain of their Canadian affiliates (collectively, the "Canadian Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to operate their businesses and manage their properties under the supervision of the Canadian Court and Ernst & Young Inc. as monitor.

5. On January 14, 2009, the High Court of Justice in England (the "U.K. Court") placed nineteen of the Debtors' European affiliates, (collectively, the "EMEA Debtors"), including Nortel Networks U.K. Limited into administration (the "European Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrators").

6. On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware appointed the Committee. The Committee currently consists of three members: (i) Law Debenture Trust Company of New York, as indenture trustee; (ii) Pension Benefit Guaranty Corporation; and (iii) The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed in these chapter 11 cases.

7. At a meeting of the Committee on January 26, 2009, the Committee duly voted to retain Capstone Advisory Group, LLC ("Capstone") as its financial advisor in connection with the Chapter 11 Cases.

8. On March 5, 2009, the Court entered the *Order Authorizing the Official Committee of Unsecured Creditors of Nortel Networks Inc., Et Al. to Employ and Retain Of*

*Capstone Advisory Group LLC as Financial Advisory, Nunc Pro Tunc to January 26, 2009* (the "Capstone Retention Order") [D.I. 431].

9. Effective as of June 1, 2015, many of Capstone's members and employees, including the Capstone personnel involved in these Chapter 11 Cases (the "Capstone Personnel"), joined BRG and ended their affiliation with Capstone. To ensure continuity of representation, the Committee has requested that BRG substitute for Capstone as their financial advisors in these Chapter 11 Cases, effective as of June 1, 2015, subject to this Court's approval. The terms of the proposed retention are identical in all material respects to the retention of Capstone, and no less favorable to the Debtors' estates and the Committee.

**REQUESTED RELIEF AND REASONS THEREFOR**

10. The Committee respectfully requests entry of an order pursuant to sections 328(a), 330, and 1103(a) of the Bankruptcy Code authorizing BRG to perform financial advisory services that will be necessary during these Chapter 11 Cases. The Debtors' Chapter 11 Cases are large and complex, and come with a history of their own developed over the past 6 years. The Committee requires the services of an experienced financial advisor such as BRG, and the Capstone Personnel who are familiar with the circumstances surrounding these Chapter 11 Cases and the Debtors' financial affairs. The Committee believes the Capstone Personnel have successfully represented the Committee's interests in these Chapter 11 Cases by, among other things, keeping the Committee apprised of all relevant issues in the Chapter 11 Cases, anticipating and responding to the needs of the Committee and providing invaluable expertise and strategy related to the recovery of value from the Debtors' estates. In order to allow BRG to be compensated for work performed prior to and after the submission of this Application, the Committee seeks to employ and retain BRG as its financial advisor *nunc pro tunc* to June 1, 2015.

11. The Committee believes BRG is both well-qualified and able to successfully represent the Committee in these Chapter 11 Cases. Were the Committee required to engage financial advisors other than BRG in connection with these cases, the Committee, the Debtors and their estates would be unduly prejudiced by the time and expense necessarily attendant to new financial advisor's familiarization with the intricacies of these cases, particularly considering the over six years of time already invested in these cases by the Capstone Personnel.

**A. Qualifications of Professionals**

12. BRG has significant qualifications and experience in providing the services contemplated herein. BRG's practice consists of senior financial, management consulting, accounting, and other professionals who specialize in providing financial, business, and strategic assistance typically in distressed business settings. BRG serves troubled companies, debtors, secured and unsecured creditors, equity holders, and other parties in both in-court and out-of-court engagements. In particular, given their prior experience representing the Committee, the Capstone Personnel now employed by BRG are uniquely qualified to represent the Committee and assist the Committee in acquitting its duties to unsecured creditors.

**B. Services to be Rendered**

13. BRG will continue to provide such financial advisory services to the Committee and its legal advisors as they deem appropriate and necessary in order to advise the Committee during the course of these Chapter 11 Cases. BRG intends to communicate regularly with the Committee and its legal advisors to insure that the actual financial advisory services performed are appropriate based on the status of the case and needs of the Committee.

14. The services to be rendered by BRG (which are similar in scope to the services the Capstone Personnel have already been retained to provide), which services may be subject to

modification at the Committee's request, are necessary to enable the Committee to faithfully execute its statutory duties to unsecured creditors. In order to perform these services in a cost-effective manner, BRG has represented to the Committee that it will endeavor to coordinate all of its services to the Committee with the other professionals retained by the Committee in these cases, so as to minimize (and, wherever possible, avoid) any unnecessary duplication of services and lessen any potential burden on the Debtors' estates and their professional advisors. As such, the Committee submits that the services of BRG will complement, and not duplicate, the services of the Committee's other professionals, agents or advisors. Subject to further order of this Court, the Committee has requested that BRG render the following financial advisory services:

(i) advise and assist the Committee in its analysis and monitoring of the Debtors' financial affairs, including without limitation, schedules of assets and liabilities, statement of financial affairs, periodic operating reports, analyses of cash receipts and disbursements, analyses of cash flow forecasts, analyses of intercompany transactions, analyses of trust accounting, analyses of various asset and liability accounts, analyses of cost-reduction programs, analyses of any unusual or significant transactions between the Debtors and any other entities, and analyses of proposed restructuring transactions;

(ii) monitor and analyze the Debtors' cash position, liquidity, intercompany charges, and financial results versus forecast and budget;

(iii) assist and advise the Committee and counsel in reviewing and evaluating any court motions, applications or other forms of relief filed or to be filed by the Debtors, Canadian Debtors or any other parties-in-interest;

(iv) monitor Debtors' claims management process, analyze claims, analyze guarantees, and summarize claims by entity;

(v) analyze the Debtors' assets and analyze possible recovery to the various creditor constituencies under various scenarios;

(vi) analyze alternative plan distribution scenarios;

(vii) assist and advise the Committee in evaluating and analyzing plan and distribution proposals of the Debtors and assist counsel and the Committee in developing negotiation strategies to support the Committee's position;

(viii) advise and assist the Committee in its assessment of proposed bonus, incentive and retention plans;

(ix) advise and assist the Committee in reviewing any proposed sales of assets;

(x) advise and assist the Committee in its review of intercompany transactions between the Debtors' and non-debtor subsidiaries and affiliates;

(xi) render expert testimony as requested from time to time by the Committee and counsel, regarding matters arising in the Chapter 11 Cases;

(xii) attend Committee meetings and court hearings as may be required in the role of advisors to the Committee; and

(xiii) provide other services that are consistent with the Committee's role and duties as may be requested from time to time.

15. In light of the Capstone Personnel joining BRG, the Committee believes it is necessary to retain BRG as its financial advisors to continue to render the foregoing professional services.

16. Notwithstanding anything in this Application to the contrary, BRG shall (i) to the extent that it uses the services of independent contractors or subcontractors (the "Contractors") in these cases, pass-through the cost of Contractors to the Debtors at the same rate that BRG pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks as required for BRG; and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

**C. Disinterestedness of Professionals**

17. To the best of the Committee's knowledge and based upon and subject to disclosures made in the Borow Affidavit filed contemporaneously herewith, BRG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and the Committee is satisfied that (i) BRG represents no interest adverse to the Committee, the Debtors, their estates, or any other party in interest in the matters upon which it is to be engaged and that

its employment is in the best interest of the estates; (ii) BRG and no members of BRG have any financial interest or business with the Debtors; (iii) BRG has no connection with the U.S. Trustee or any other person employed in the office of the U.S. Trustee; and (iv) BRG has no connection with the bankruptcy judge approving the employment of BRG as the Committee's financial advisor. BRG has not provided, and will not provide, any professional services to the Debtors, any other creditors, other parties in interest, or their respective attorneys and accountants with regard to any matter related to these Chapter 11 Cases.

**D. Professional Compensation**

18. BRG has advised the Committee that it will charge its standard hourly rates for professional services rendered, plus reimbursement of actual and necessary expenses incurred by BRG. The rates charged by BRG for this engagement will be the same as those formerly charged by the Capstone Personnel, subject to the same periodic adjustments. The professional fees shall be calculated by multiplying the hours worked by the standard hourly billing rates in effect for the specific personnel involved. The hourly rates charged by BRG for the services provided by its personnel differ based upon, among other things, each professional's level of experience, geographic differentials, and types of services being provided. In the ordinary course of business, BRG periodically revises its hourly rates to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business.

19. BRG has advised the Committee that its fees will be commensurate with the fees charged to its other clients and in other cases of this size (provided such clients are billed hourly). BRG has also advised the Committee that it intends to make application to the Court for allowance of its fees. BRG's compensation for services rendered on behalf of the Committee

shall be fixed by the Court after due application. BRG intends to apply to the Court for compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the terms of the *Administrative Order Establishing Procedures for Interim Compensation of Fees and Reimbursement of Expenses of Professionals and Official Committee Members* [D.I. 222] and the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [D.I. 11082] entered in this case.

20. For professional services, fees are based on BRG's standard hourly rates. The proposed rates of compensation, subject to final Court approval, are the customary hourly rates in effect when services are performed by the professionals and paraprofessionals who provide services to the Committee. The current standard hourly rates for BRG are as follows:

| | 2015 |
|---|---|
| Managing Director | $350 - $1,250[4] |
| Director | $475 - $640 |
| Staff | $250 - $475 |
| Support staff | $125 - $325 |

These hourly rates are subject to periodic adjustment, which shall be noted on the invoices for the first time period in which the revised rates become effective. The current standard hourly rates for the BRG professional staff anticipated to be assigned to this engagement are as follows: Christopher J. Kearns ($895), Jay Borow ($895), Jeff Hyland ($675) and Andrew Cowie ($625).

4 While BRG's rates encompass a wide range, the Capstone Personnel will continue to charge the same hourly rates as they did when Capstone was retained pursuant to the Capstone Retention Order, subject to periodic adjustments.

21.     Consistent with the firm's policy with respect to its other clients, BRG will continue to charge the Committee for all other services provided and for other charges and disbursements incurred in rendering services to the Committee. These customary items include, among other things, photocopying, facsimiles, travel, business meals, computerized research, postage, witness fees, and other fees related to trials, hearings or legal, regulatory or other proceedings. Internal costs or overhead cost and document production services (including regular secretarial and word processing time) will not be charged for separately.

22.     BRG will also request compensation for any time and expenses (including, without limitation, reasonable legal fees and expenses) that may be incurred in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings, including, without limitation, those other than the instant matter, as a result of BRG's performance of these services.

23.     The Committee respectfully submits that such rates and policies are no less favorable than the rates approved in the Capstone Retention Order, and are reasonable and market-based.

24.     Regardless of the time and manner of interim compensation, BRG understands that, subject to this Court's orders, BRG will be required to follow the procedures for final allowance of fees at the end of the bankruptcy cases.

25.     From time to time BRG may be asked to value and manage the liquidation of assets of investment funds. Such investment funds could, from time to time, take positions in debt or equity of the Debtors, without BRG's knowledge or consent. BRG has no pecuniary interest in such investment funds, nor will BRG profit from the value realized from the sale of

their assets. To the extent any employee of BRG is utilized for valuation expertise on behalf of the Committee (and accordingly given access to such confidential information) that employee will not perform any valuation work on any debt or equity securities of the Debtors for any investment fund for the duration of this engagement. Under such circumstances, if BRG is providing valuation work on any debt or equity securities of the Debtors for any investment fund for the duration of this engagement, then the BRG employee undertaking such work will be restricted and have no access to the confidential information of the Debtors.

26. No promises have been received by BRG nor any member or employee thereof as to payment or compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. Except for internal agreements among the members, employees and independent contractors of BRG regarding the sharing of revenue or compensation, neither BRG nor any of its members, employees, or independent contractors has entered into an agreement or understanding to share compensation with any other entity as described in Bankruptcy Rule 2016.

**E. Indemnification Provision**

27. The BRG Engagement Letter provides that BRG's engagement on this matter shall be identical in all material respects as those reflected in the engagement letter between the Committee and Capstone dated as of January 26, 2009 (the "Capstone Engagement Letter,"[5] and together with the BRG Engagement Letter, the "Engagement Letters"). The Engagement Letters provide that as a condition to its employment, the Court will have entered an order providing BRG with an indemnity as detailed in the Engagement Letters (the "Indemnity").

[5] A copy of the Capstone Engagement Letter is attached hereto as Exhibit A-1.

28. The Indemnity includes qualifications and limitations on the indemnifications and limitation on liability provisions that are customary in chapter 11 cases in Delaware. Accordingly, the Committee and BRG believe that the Indemnity is customary and reasonable for engagements of this type and should be approved.

**NOTICE**

29. This Application has been served on (i) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2313, Lockbox 35, Wilmington, Delaware 19801; (ii) counsel to the Debtors, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 1006; (iii) counsel to the Debtors, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE, 19899-1347; and (iv) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Committee respectfully requests that no further notice is necessary.

30. No prior application for the relief requested herein has been presented to this or any other court.

31. The Committee submits that this Application does not present novel issues of law requiring the citation to any authority, other than the statutes and rules cited above and, accordingly, submits that no brief is necessary.

**WHEREFORE**, the Committee respectfully requests that it be authorized to retain and employ BRG as its financial advisor *nunc pro tunc* to June 1, 2015, and that BRG be paid such compensation as may be allowed by this Court, and for such other further relief as is just.

(iv) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Committee respectfully requests that no further notice is necessary.

30. No prior application for the relief requested herein has been presented to this or any other court.

31. The Committee submits that this Application does not present novel issues of law requiring the citation to any authority, other than the statutes and rules cited above and, accordingly, submits that no brief is necessary.

**WHEREFORE**, the Committee respectfully requests that it be authorized to retain and employ BRG as its financial advisor *nunc pro tunc* to June 1, 2015, and that BRG be paid such compensation as may be allowed by this Court, and for such other further relief as is just.

Dated: June 17, 2015
Wilmington, Delaware

Respectfully submitted,

The Official Committee of Unsecured Creditors of Nortel Networks Inc., *et al.*

Akin Gump Strauss Hauer & Feld LLP, solely in its capacity as authorized signatory for the Committee, and not in its individual capacity

By: ______________________

Name: Fred S. Hodara
Title: Partner