```
                    IN THE UNITED STATES BANKRUPTCY COURT
                       FOR THE DISTRICT OF DELAWARE


IN RE:                           )    Case No.  09-10138(KG)
                                 )    (Jointly Administered)
                                 )
NORTEL NETWORKS, INC.,           )    Chapter 11
         ET AL,                  )
                                 )    Courtroom 3
                                 )    824 Market Street
         Debtors.                )    Wilmington, Delaware
                                 )
                                 )    June 25, 2015
                                 )    9:00 a.m.


                     TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JUDGE KEVIN GROSS
                 UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtors:              Morris Nichols Arsht & Tunnell, LLP
                          BY: DEREK ABBOTT, ESQ.
                          BY: ANDREW REMMY, ESQ.
                          1201 North Market St., 18th Floor
                          Wilmington, DE  19899-1347
                          302-351-9200

                          Cleary Gottlieb Steen & Hamilton
                          BY: JEFF ROSENTHAL, ESQ.
                          BY:  DARRYL STEIN, ESQ.
                          One Liberty Plaza
                          New York, NY  10006
                          212-225-2000


ECRO:                     GINGER MACE

Transcription Service:    DIAZ TRANSCRIPTION SERVICES
                          331 Schuylkill Street
                          Harrisburg, Pennsylvania 17110
                          (717) 233-6664
                          www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

APPEARANCES:
(Continued)

For Nortel Trade Claim
Consortium:                    Fox Rothschild
                               BY:  JEFFREY M. SCHLERF, ESQ.
                               919 N. Market Street, Ste. 300
                               P.O. Box 2323
                               Wilmington, DE  19899
                               302-654-7444

                               Brown Rudnick LLP
                               BY: STEVE POHL, ESQ.
                               One Financial Center, 18th Fl.
                               Boston, MA  02111
                               617-856-8594

                               BY: HUNTER SMITH, ESQ.
                               Seven Times Square
                               New York, NY  10036
                               212-209-4830

For Joint
Administrators:                Young Conaway Stargatt & Taylor
                               BY: JAIME CHAPMAN, ESQ.
                               BY: JOHN DORSEY, ESQ.
                               1000 N. King St., Rodney Sq.
                               Wilmington, DE  19801
                               302-571-6600

                               Hughes Hubbard and Reed
                               BY: DEREK ADLER, ESQ.
                               BY: NEIL OXFORD, ESQ.
                               1775 I St. NW, #600
                               Washington, DC  20006
                               202-721-4600

                               Herbert Smith Freehills
                               BY: KEVIN PULLEN, ESQ.
                               Exchange House, Primrose Street
                               London    EC2A 2EG
                               London Office DX: 28
                               +44-20-7466-2976

APPEARANCES:
(Continued)

For Monitor:                    Buchanan Ingersoll & Rooney, PC
                                BY: KATHLEEN MURPHY, ESQ.
                                1105 N. Market St., Ste. 1900
                                Wilmington, DE  19801-1054
                                302 552-4214

                                Goodmans LLP
                                BY: PETER RUBY, ESQ.
                                Bay Adelaide Centre
                                333 Bay St., Suite 3400
                                Toronto, ON, MSH 247
                                Canada
                                416-597-4184

                                Allen & Overy
                                BY: KEN COLEMAN, ESQ.
                                BY: JAY PULTMAN, ESQ.
                                BY: LAURA HALL, ESQ.
                                BY: JOE BOELTKE-BERKEW, ESQ.
                                BY: DAN GUYDER, ESQ.
                                1221 Avenue of the Americas
                                New York, NY  10020
                                212 610-6300

For JDSU:                       Meyers Law Group
                                BY: MERLE C. MEYERS, ESQ.
                                44 Montgomery St. #1010
                                San Francisco, CA  94104
                                415-362-7500

For Law Debenture,
Trustee:                        Morris James, LLP
                                BY: STEPHEN MILLER, ESQ.
                                555 Delaware Ave., #1500
                                Wilmington, DE  19801
                                302-888-6800

                                Patterson Belknap Webb & Tyler
                                BY: DANIEL A. LOWENTHAL, ESQ.
                                1133 Avenue of the Americas
                                New York, NY  10036
                                (212) 336-2720

APPEARANCES:
(Continued)

For Ad Hoc Group of
Bondholders:                    Milbank Tweed Hadley & McCloy
                                BY: ANDREW LEBANC, ESQ.

```
                                  1850 K Street, NW. Ste. 1100
                                  Washington, DC  20006
                                  202-835-7500

For The Bank of New
York, Mellon:                     Vedder Price
                                  BY: MICHAEL RIELA, ESQ.
                                  1633 Broadway, 47th Floor
                                  New York, NY  10019
                                  212-407-7766

For Official Committee
Of Unsecured Creditors:           Akin Gump Strauss Hauer & Feld, LLP
                                  BY: FRED HODARA, ESQ.
                                  BY: DAVID BOTTER, ESQ.
                                  BY: ROBERT JOHNSON, ESQ.
                                  One Bryant Park
                                  Bank of America Tower
                                  New York, NY  10036-6745
                                  212-872-1000

                                  Whiteford Taylor Preston
                                  BY: CHRISTOPHER M. SAMIS, ESQ.
                                  The Renaissance Centre, Ste. 500
                                  405 N. King Street
                                  Wilmington, DE  19801-3700
                                  302-357-3266

For Wilmington Trust:             Katten Muchin
                                  BY: DAVID CRICHLOW, ESQ.
                                  1025 Thomas Jefferson St NW,
                                  Washington, DC 20007
                                  202-625-3500
```

```
APPEARANCES:
(Continued)

For Canadian Creditors
Committee:                  DLA Piper
                            BY: SELINDA A. MELNIK, ESQ.
                            BY: TIMOTHY HOEFFNER, ESQ.
                            BY: JASON GERSTEIN, ESQ.
                            6225 Smith Avenue
                            Baltimore, MD  21209
                            410-580-3000
For Stephen Taylor,
Conflicts Administrator
For Nortel Networks SA:     Skadden Arps Slate Meagher & Flom
                            BY: SUSAN SALTZSTEIN, ESQ.
                            4 Times Square
                            New York, NY  10036
                            212-735-4132


                            BY: ROBERT A. WEBER, ESQ.
                            One Rodney Sq., 920 N. King St.
                            Wilmington, DE  19801
                            302-651-3144
For U.K. Pension
Claimants:                  Bayard
                            BY: JUSTIN ALBERTO, ESQ.
                            222 Delaware Ave., Ste. 900
                            Wilmington, DE  19801
                            302-655-5000

                            Willkie Farr & Gallagher LLP
                            BY: BRIAN O'CONNOR, ESQ.
                            BY: SAMEER ADVANI, ESQ.
                            BY: NICHOLAS W. CHIUCHIOLO, ESQ.
                            BY: WESTON T. EGUCHI, ESQ.
                            787 Seventh Avenue
                            New York, NY  10019-6099
                            212-728-8111


For Ad Hoc Group of
Bondholders:                Pachulski Stang Ziehl & Jones
                            BY: PETE
                            Citizens Bank
                            919 N. Mkt St., #1700
                            Wilmington, DE  19801
                            302-652-4100
```

TELEPHONIC APPEARANCES:

For Debtor, Nortel
Networks, Inc.:                 Cleary Gottlieb Steen & Hamilton
                                BY: LISA M. SCHWEITZER, ESQ.
                                212-225-2629

                                Young Conaway Stargatt & Taylor
                                BY: DAVID QUANE, ESQ.
                                302-571-5732

                                Tory's LLP
                                BY: ADAM M. SLAVENS, ESQ.
                                416-865-7333

For Nortel Networks SA:         Conflicts Administrator for Nortel
                                Networks SA
                                BY: STEPHEN TAYLOR
                                302-651-3273

For Stephen Taylor,
Conflicts Administrator
For Nortel Networks SA:         Skadden Arps Slate Meagher & Flom
                                BY: GEORGE ZIMMERMAN, ESQ.
                                BY: CHRIS MALLON, ESQ.
                                212-735-3000

For U.K. Pension
Claimants:                      Willkie Farr & Gallagher LLP
                                BY: MARC ABRAMS, ESQ.
                                212-728-8000

For Trustee U.K.
Pension Plan:                   Hogan Lovells U.S. LLP
                                BY: MATTHEW BULLEN, ESQ.
                                212-728-8881

For Official Committee
Of Unsecured Creditors:         Akin Gump Strauss Hauer & Feld LLP
                                BY: MATTHEW C. FAGEN, ESQ.
                                212-872-8051

For Ad Hoc Group of
Bondholders:                    Milbank Tweed Hadley & McCloy
                                BY: THOMAS MATZ, ESQ.
                                212-530-5885

TELEPHONIC APPEARANCES:
(Continued)

For Joint
Administrators:                Herbert Smith
                               BY: ALAN BLOOM, ESQ.
                               BY: HANNAH LANGLEY, ESQ.
                               BY: PHILLIP LIS, ESQ.
                               BY: SANDY SHANDRO, ESQ.
                               302-571-6710

                               Hughes Hubbard & Reed, LLP (NY)
                               BY: GRETA A. FALLS, ESQ.
                               212-837-6000

                               Young Conaway Stargatt & Taylor LLP
                               BY: SIMON FREEMANTLE, CLIENT
                               302-571-5732

                               Ernst & Young
                               BY: STEPHEN HARRIS, ESQ.
                               302-571-6710
                               BY: STEVE SANDERSON, ESQ.
                               302-571-6712
                               BY: DAN MINDEL, ESQ.
                               724-321-2961

For Creditor
Wilmington Trust:              Katten Muchin Rosenman LLP
                               BY: CRAIG BARBAROSH, ESQ.
                               714-966-6822

For Creditor, U.K.
Pension Trust, LTD:            Hogan Lovells U.S. LLP
                               BY: ANGELA DIMSDALE-GILL, ESQ.
                               212-728-3135

For Creditor, Nortel
Continuing Employees:          Shibley Righton LLC
                               BY: ARTHUR JACQUES, ESQ.
                               416-214-5213

For Creditor,
Ernst & Young:                 Allen & Overy LLP
                               BY: MARK NIXDORF, ESQ.
                               212-610-6300

TELEPHONIC APPEARANCES:
(Continued)

For Creditor,
Nortel Network:              Tannor Partners Credit Fund LP
                             BY: ROBERT J. TANNOR
                             914-509-5000


For Creditor:                Halcyon Asset Management
                             BY: ANDREW G. FRIEDMAN, ESQ.
                             212-303-9444

                             Carter Ledyard & Milburn LLP
                             BY: JAMES GADSDEN, ESQ.
                             212-238-8659

                             Silver Point Capital
                             BY: DAVID JIANG
                             203-542-4000

                             Bennett Street Partners
                             BY: ANDREW WATSON/IN PRO PER/PRO SE
                             212-588-9234

                             DE Shaw
                             BY: SHARH S. JOHNSON
                             212-478-0833

                             Onex Credit Partners
                             BY: STUART KOVENSKY
                             201-541-2121

                             Owl Creek Asset Management LP
                             BY: STEVEN C. KRAUSE
                             212-688-2550

                             Macquarie Capital (USA), Inc.
                             BY: JAVIER SCHIFFRIN
                             212-231-2372

                             King Street Capital Management LLC
                             BY: MITCHELL SOCKETT
                             434-284-4404

```
TELEPHONIC APPEARANCES:
(Continued)

For Creditor:              Regiment Capital Advisors
                           BY: WEI WANG
                           617-488-1647

For Interested Party,
Baffour Abedi:             River Birch Capital LLC
                           BY: BAFFOUR ABEDI
                           646-699-3751

For Interested Party,
Phillip Brendel:           Bloomberg LP
                           BY: PHILLIP BRENDEL
                           609-279-5671

For Interested Party,
U.K. Pension Trust
Fund:                      Bayard PA
                           BY: CHARLENE DAVIS, ESQ.
                           302-429-4212

For Solus Alternative
Asset Management:          Quinn Emanuel Urquhart & Sullivan
                           BY: JAMES TECCE, ESQ.
                           212-849-7000

For Interested Party:      Credit Suisse
                           BY: MANAS BABBILI
                           212-536-5918

                           Jeffries & Company
                           BY: CHETAN BANSAL
                           203-708-5992

                           HBK Capital Management
                           BY: ERIC BILMES
                           212-588-5115

                           Citigroup Global Markets
                           BY: JOSH W. BRANT
                           212-723-1584
```

TELEPHONIC APPEARANCES:
(Continued)

For Interested Party:       Dow Jones & Co.
                            BY: PEG A. BRICKLEY
                            215-462-0953

                            Merger Market
                            BY: JOHN BRINGARDNER
                            646-378-3143

                            Nomura Securities International
                            BY: JAE SEON CHOI
                            212-667-9387

                            Bank of America
                            BY: ESTHER CHUNG
                            646-855-6705

                            Reorg Research
                            BY: KENT COLLIER
                            212-588-8890

                            Serengeti Asset Management
                            BY: LAUREN BILZIN
                            212-672-2252

                            DK Partners/Davidson Kempner
                            BY: EPHRAIM DIAMOND
                            646-282-5841

                            Silver Point Capital
                            BY: MATTHEW EHMER
                            203-542-4219

                            Newfleet Asset Management LLC
                            BY: PATRICK FLEMING
                            860-503-1204

                            Contrarian Capital Management
                            BY: KIMBERLY B. GLANIS
                            203-862-8250

                            Barclays PLC
                            BY: ASHUFOSH HABBU
                            212-412-1316

TELEPHONIC APPEARANCES:
(Continued)

For Interested Party:    Orrick Herrington & Sutcliffe LLP
                         BY: JEFFREY D. HERMANN, ESQ.
                         213-629-2020

                         Hain Capital Group LLC
                         BY: DAVID KLYMAN
                         201-896-6100

                         Farallon Capital Management
                         BY: MICHAEL G. LINN
                         415-421-2132

                         Pachulski Stang Ziehl & Jones
                         BY: ISAAC PACHULSKI, ESQ.
                         310-277-6910

                         Silver Point Capital
                         BY: TONI P. RINNEVAARA
                         203-542-4000

                         Och-Ziff Capital Management Group
                         BY: ROSS ROSENFELT
                         212-719-7334

                         The Capitol Forum
                         BY: ANDREW SORKIN
                         202-601-2298

                         CRT Capital Group LLC
                         BY: KEVIN J. STARKE
                         203-569-6421

                         Deutsche Bank Securities, Inc.
                         BY: SANDEEP TICKOO
                         212-250-6785

                         Candlewood Investment Group
                         BY: JENNIFER WILD
                         212-257-5124

                         Cassels Brock & Blackwell LLP
                         BY: MICHAEL J. WUNDER
                          416-860-6484

1

1   WILMINGTON, DELAWARE, THURSDAY, JUNE 25, 2015, 9:04 A.M.

2              THE CLERK:  Please rise.

3              CANADIAN CLERK:  This Court is now in session.

4   Please be seated.  Please turn off cell phones.  Thank you.

5              THE COURT:  You may be seated, everyone.  Good

6   morning.  Mr. Abbott, good morning.

7              MR. ABBOTT:  Good morning, Your Honor.  Derek

8   Abbott of Morris Nichols here for the U.S. Debtors.

9              Good morning, Mr. Justice Newbould.

10             Your Honor, it's June so we must be back in a

11  Nortel hearing.

12                        (Laughter)

13             THE COURT:  That's right.  That's right.

14             MR. ABBOTT:  Today's a long Agenda, Your Honor,

15  lots of stuff on the plate, all really about one thing, so I

16  will quickly cede the podium to Mr. Rosenthal.

17             JUSTICE NEWBOULD:  Can I ask somebody somewhere

18  to turn up the volume a wee bit, please?

19             THE CLERK:  It's up as loud as it'll go.

20             THE COURT:  How's that, Justice Newbould?

21             JUSTICE NEWBOULD:  Much better, thanks, Judge

22  Gross.

23             THE COURT:  Okay.

24             MR. ABBOTT:  And is it okay from the podium,

25  Justice Newbould?

1          JUSTICE NEWBOULD:  I beg your pardon?

2                          (Laughter)

3          MR. ABBOTT:  Apparently not.  Okay.  I guess

4    we'll just have to --

5          JUSTICE NEWBOULD:  Yes, I can hear you.

6          MR. ABBOTT:  -- ask folks to get a little closer

7    to the microphones here at the podium.

8          THE COURT:  That's right.

9          MR. ABBOTT:  Thank you, Your Honor.

10         JUSTICE NEWBOULD:  No, that's fine.  I can hear

11   you.  Thanks very much.

12         THE COURT:  Thank you, Mr. Abbott.

13         Mr. Rosenthal, good morning.

14         MR. ROSENTHAL:  Good morning, Your Honors.  Good

15   morning, Justice Newbould.

16         JUSTICE NEWBOULD:  Good morning.

17         THE COURT:  You know, it's always a kind of

18   delicate argument on a Motion for Reconsideration --

19         MR. ROSENTHAL:  No doubt, Your Honor.

20         THE COURT:  -- and Clarification so don't be

21   bashful.

22         MR. ROSENTHAL:  I think you can trust me not to

23   be.

24         THE COURT:  Okay.

25         MR. ROSENTHAL:  Jeff Rosenthal, as you know, Your

1   Honor, Cleary Gottlieb Steen & Hamilton for the U.S.

2   Debtors.

3          I want to start by thanking both Courts today for

4   being so accommodating with your schedules.  I know that it

5   was a challenge finding a date that's convenient to all the

6   parties, and it did require the Courts to rearrange things

7   on your end, and we certainly do appreciate it very much.

8          THE COURT:  Absolutely.

9          MR. ROSENTHAL:  I want to start by just giving

10  the Courts a sense of what our expectations and plans are

11  for today's argument because there obviously are a lot of

12  parties here in the Court today, a lot of papers have been

13  filed; there are a lot of parties in the Court up in

14  Toronto.

15         I'll be making the principal argument for the

16  U.S. Debtors.  I expect to be relatively brief.  I think

17  that the Courts have received a great deal of paper.  I

18  think it's been extensively briefed.  The most important

19  thing that I want to do is make myself available to answer

20  any questions the Courts have.

21         After I give a brief presentation, Ms. Block up

22  in Toronto is going to make just a few short remarks with

23  regard to the Canadian law aspects.  And after that I will

24  cede the podium to the four other movants here or joinders

25  hopefully for brief, non-repetitive remarks --

1          THE COURT:  Okay.

2          MR. ROSENTHAL:  -- as well.  The Bondholders, the

3   UCC, Law Debenture, and the new Trade Claims Consortium --

4          THE COURT:  Yes.

5          MR. ROSENTHAL:  -- hopefully will speak in prompt

6   order.

7          I've had a chance to talk to Mr. Ruby on behalf

8   of the Canadian Debtors.  We agree generally with the

9   principle that time should be relatively even between the

10  movants and the opponents today.  I don't expect time to

11  become an issue again --

12         THE COURT:  I don't either.

13         MR. ROSENTHAL:  -- because my remarks should be

14  relatively brief.  I don't know to what extent they've

15  coordinated to avoid non-duplicative arguments.  Obviously,

16  to the extent that the opposition arguments go considerably

17  longer than the proponent arguments, I'll come back and need

18  some fair time for reply.

19         THE COURT:  All right.  Is that bothering you,

20  that feedback?

21         MR. ROSENTHAL:  If the Canadian microphones can

22  be turned off except for Justice Newbould's, that would be

23  helpful because we are getting a lot of feedback here.

24         THE COURT:  Yes.  It sounds like maybe they have

25  been, Mr. Rosenthal.

1              MR. ROSENTHAL:   Okay.   Thank you.

2              So one thing to start out at the outset to be

3    clear is we are not here challenging the Allocation opinions

4    themselves.  We are not here challenging the Courts'

5    adoption of a pro rata methodology, but we merely ask the

6    Courts to reconsider two particular aspects of those

7    Opinions and to clarify certain other aspects.  And we do

8    recognize, Your Honors, that border relief would need to

9    come from an appellate court.  And while the U.S. Debtors

10   disagree with the adoption of any pro rata methodology and

11   are prepared to take appeals of that and other aspects of

12   the Opinion if necessary, we want to end the litigation here

13   and now.  We want to get the relief hopefully that's sought

14   in this Motion and move the estates forward towards closure.

15              And the other thing I want to say to make no

16   mistake about is the U.S. Debtors recognize that we lost the

17   Allocation litigation despite the supposed rejection of the

18   Allocation theories of the EMEA Debtors and the Canadian

19   Debtors as well.  They are the enormous winners here and

20   their constituencies.  And while I'm not going to profess to

21   understand how the Courts got to that result, we're mindful

22   of that fact.  We are not looking, like I said, to override

23   in this Motion the allocation adoption of a pro rata

24   methodology.  And in fact then this Motion is not going to

25   significantly alter the victory that the Canadian and the

1    EMEA Debtors and their Creditors have received.

2              So I want to start today by just mentioning the

3    standards for Reconsideration --

4              THE COURT:  Okay.

5              MR. ROSENTHAL:  -- because they're not

6    controversial, Your Honor, and they shouldn't be in dispute.

7    But before I go to the specific Rule 59 and Rule 60

8    standards, again, there's one point to make perfectly clear,

9    which is it's indisputable that the ability to reconsider a

10   ruling is within the sound discretion of a Court.

11             And nobody can stand up today and I don't expect

12   anybody will stand up today and tell you that if you think,

13   Your Honor, if you think you've made a mistake, if you think

14   that you've made a ruling that wasn't sufficiently argued

15   out in the record that caused unintended injustice that you

16   can't fix it.  I don't expect anybody to make that argument,

17   that you have no discretion to do that.

18             And I'll let Ms. Block address Canadian law, but

19   there are multiple applicable grounds under Delaware law and

20   procedure for Reconsideration here.  And one was articulated

21   by the Court in the *Catholic Diocese of Wilmington* case.

22   It's 437 B.R. 488, 490, and said, "where it appears the

23   Court has overlooked or misapprehended some factual matter

24   or might reasonably have altered the result reached by the

25   Court."

1          And the second appropriate ground, Your Honor,

2   was in the *Hessinger* case, 303 B.R. 18, by the District

3   Court.  It said, "when a Court has made a decision outside

4   of the adversarial issues presented by the parties."  And as

5   I said, there's no question that a Court also has the

6   inherent power to reconsider its decision to prevent

7   manifest injustice.  And here, these grounds are all easily

8   satisfied.

9          And I'll just give a brief summary of my

10  argument, Your Honor, and then I'll go into slightly more

11  detail but not much with respect to these points.

12          So, first, if you look at the oppositions with

13  respect to the decision not to allocate proceeds to the U.S.

14  Debtors on account of allowed Bondholder claims, the

15  opponents all argue vociferously that Pro Rata Allocation

16  was thoroughly briefed and argued to the Courts, and that

17  the U.S. Debtors made a strategic decision not to respond

18  fully.  There's a very obvious reason, Your Honor, that they

19  make that argument because if the Courts' adoption of a

20  modified pro rata approach was in fact "outside" the

21  adversarial issues presented by the parties, to use the

22  *Hessinger's* Court's language, well, then Reconsideration is

23  wholly proper.  So that is the question for the Court to

24  answer.

25          JUSTICE NEWBOULD:  Mr. Rosenthal?

1           MR. ROSENTHAL:  Yes, Your Honor.

2           JUSTICE NEWBOULD:  Are you going to develop how

3   it is you say the decision was outside --

4           THE COURT:  We've lost you, Justice Newbould.

5           MR. ROSENTHAL:  I think we lost the audio feed.

6           JUSTICE NEWBOULD:  Can you hear me?

7           THE COURT:  Yes.

8           MR. ROSENTHAL:  Yes, now I can, Your Honor.

9           JUSTICE NEWBOULD:  Okay.  Are you going to

10  develop how it is you say that the result was outside of

11  what was contended?

12          MR. ROSENTHAL:  Absolutely, Your Honor.

13          JUSTICE NEWBOULD:  Okay.  Thank you.

14          MR. ROSENTHAL:  I could give you a summary of

15  that right now.  So --

16          JUSTICE NEWBOULD:  All right.

17          MR. ROSENTHAL:  -- the opponents to the Motion,

18  they trump it.  We had 21 days of testimony.  We had

19  thousands of exhibits received by the Courts.  But the one

20  thing that you will not see in any of their briefs, the one

21  thing that is not in any of the two Court Opinions, and the

22  one thing that nobody will be able to get up here today is

23  to show the Courts a single argument or a single record

24  citation to where it was asserted that the Bondholder claim

25  could be both allowed in the United States but not part of a

1  Pro Rata Allocation.

2          And that's the key issue, Your Honor, because

3  there is Distribution and there is Allocation.

4          THE COURT:  Right.

5          MR. ROSENTHAL:  And we spent a lot of time, a lot

6  of time at the Allocation trial where parties argued do not

7  give the Bondholders multiple Distributions.  Nobody ever

8  recognized a Bondholder Distribution in two estates but

9  don't give Allocations related to it.  That argument was

10  never made.  There was no evidence ever presented of it.

11          And in fact, here's where we have in our papers

12  the CCC's own expert was asked about that potential

13  hypothetical circumstance.  And, Your Honor, he scoffed at

14  it.  He said, oh, that would be a grossly inequitable

15  result.  And he also said, when I asked him about it, he

16  said that it is a court of equity and they're suggesting

17  some kind of grossly inequitable result in my view.  I have

18  much more confidence in the Courts than that.  And he

19  elaborated later and he said that on a pro rata approach, if

20  you allow the bonds to have Distributions in the U.S., you

21  would need a billion-plus-dollar adjustment in the

22  Allocation to the U.S.

23          So not only is there nothing in the record with

24  anybody arguing that there should be Distributions to the

25  Bondholders but no Allocation, but you have the CCC's own

1   expert saying that that's not only not what they're

2   advocating but it would be inequitable to do so.  And all

3   we're asking is that the Courts, in light of the fact that

4   there was no record presented or argument presented in favor

5   of that, therefore, reconsider that outcome.

6           The other issue on which Reconsideration is

7   sought -- and again, I will point the Courts to the fact

8   that the record does not have any evidence showing that this

9   was advocated before -- concerns the issue regarding NGS and

10  DiamondWare.  And I might just refer to them shorthand as

11  NGS because the argument relates to the same.

12          THE COURT:  All right.

13          MR. ROSENTHAL:  And if we look back at the

14  history of these cases, and Judge Gross, you were involved

15  in the approval of the enterprise sale and the conundrum

16  that the parties faced with the fact that the PBGC had

17  certain claims related to NGS and DiamondWare.  And what

18  Your Honor did is you gave the PBGC a lien on the NGS

19  proceeds.  And the oppositions have said, well, why did the

20  proceeds go in the lockbox if they belong to the U.S.

21  Debtors?  And the arguments have been made and it's

22  throughout their briefs, the fact that they went to the

23  lockbox shows that the parties agreed that they would be

24  subject to Allocation in the way that the other lockbox

25  assets were.

1            It's not true, Your Honor, because, as the Court

2    will also recall, after the NGS sale, not only did the Court

3    give a lien to the PBGC but NGS had $53 million in cash.

4            THE COURT:  Right.

5            MR. ROSENTHAL:  That cash was released to the

6    U.S. Debtors.  What wasn't released was the remaining value

7    of NGS not because there was a dispute over who owns it and

8    who should get the Allocation, but it needed to be valued.

9    What can be released if the parties don't know what the

10   amount of it is worth?  The cash, we know its worth.  It's

11   worth $53 million.  It went right to the U.S. Debtors.  It's

12   the value of it that was unknown, not the "whether" that was

13   unknown.

14           And the PBGC lien, we submit, the Court would

15   have to override its prior Order now to say that the U.S.

16   Debtors do not get an Allocation related to NGS and

17   DiamondWare.  And again, going back to Your Honor's point,

18   Justice Newbould, with regard to what does the record say at

19   the Allocation trial and can we confirm that this was

20   overlooked?  1) It was overlooked because of the fact that

21   it was subject to a prior Order; but 2) there was no dispute

22   at the trial as to who should get the Allocation unaccounted

23   for.  The dispute was only value.

24           Mr. Green, who was the Canadian Debtors'

25   valuation expert, credited in the appendix by the Canadian

1  Court, said this is worth $110 million and it should all go

2  to the U.S. Debtors.  Mr. Kinrich agreed it all goes to the

3  U.S. Debtors.  He said it's worth $150 million.  It's not a

4  big range for the wide gulf in their disagreements.  On the

5  value of NGS, they're actually pretty close to each other,

6  110 to 150.  No party said that the Courts should disregard

7  its prior Order with regard to NGS and DiamondWare.

8              JUSTICE NEWBOULD:  Mr. Rosenthal, may I ask you a

9  question?

10             MR. ROSENTHAL:  Yes, Your Honor.  It's difficult

11 to hear you.

12             JUSTICE NEWBOULD:  You of course objected to all

13 of Mr. Green's evidence that --

14             MR. ROSENTHAL:  I can't hear you, Your Honor.

15 I'm sorry.

16             JUSTICE NEWBOULD:  You objected at the Allocation

17 trial to Mr. Green's evidence, correct?

18             MR. ROSENTHAL:  No, Your Honor, we disagreed with

19 Mr. Green's Allocation methodology because it was based on

20 the interpretation of the MRDA that was said was faulty but

21 we never objected to his submission of evidence.

22             JUSTICE NEWBOULD:  Well, is there some reason why

23 these points about NGS were not raised by you in the Pro

24 Rata Allocation argument that had been raised by the UKPC

25 and the CCC?  Is there some reason why you didn't raise

1  these points during the Allocation trial as part of your

2  case?

3        MR. ROSENTHAL:  Yes, Your Honor.  It's because A)

4  none of the estates, as I mentioned, disputed --

5        THE COURT:  Right.

6        MR. ROSENTHAL:  -- that NGS and DiamondWare were

7  not subject to Allocation; and B) it was subject to a prior

8  Order of this Court.  And the fact that it was subject to

9  prior Order of this Court -- and there were several times

10  during the hearing when the parties discussed with the

11  Courts whether claimed data and the like should be submitted

12  to the Courts, and we were expressly told that would not be

13  helpful and we did not do so.

14        But we thought that by -- I mean, again, nobody

15  has suggested overriding the Court's Order with respect to

16  the PBGC claim.  It didn't come up by the proponents, and

17  therefore, we thought that the advocacy by us, corroborated

18  by the Canadian Debtors' own expert that its ownership was

19  ours, didn't require any further argument.

20        Now, there's been much made about what the effect

21  of the Allocation decision is and the modifications that the

22  Courts made and no party, frankly, has challenged this.  We

23  have submitted that, using Mr. Britven's own analysis, the

24  Allocation to the U.S. General Unsecured Creditors from the

25  lockbox, specifically from the lockbox, would be 14 cents on

1    the dollar; to the Canadian Unsecured Creditors, 47 cents;

2    and to the EMEA Debtors, 48 cents.

3            And we submit to the Court that regardless of

4    what label one puts on the Court's Opinion, it's not pro

5    rata.  It's not Pro Rata Allocation of the lockbox proceeds.

6    And the response that we've gotten from the other parties

7    is, well, you have an intercompany claim or you have more

8    cash.  But the Courts took great pains, and I can quote the

9    U.S. Opinion, for example, at page 63 to expressly say that

10   the Pro Rata Allocation is applying -- "it's a Pro Rata

11   Allocation of the share of the sales proceeds."  So to argue

12   that a Pro Rata Allocation of the sales proceeds, it doesn't

13   matter that it's not pro rata because you can achieve pro

14   rata through the items that are excluded.  It doesn't make

15   it pro rata.

16           And therefore, to the extent that the Court's

17   Opinion is intended to be a fair and equitable Allocation

18   based on principles of pro rata, these numbers establish

19   that it's not and that is manifest injustice.

20           So I want to go into an overview now of the

21   arguments --

22           JUSTICE NEWBOULD:  Mr. Rosenthal?

23           MR. ROSENTHAL:  Yes.

24           JUSTICE NEWBOULD:  Mr. Rosenthal?

25           MR. ROSENTHAL:  Yes, Your Honor.

1           JUSTICE NEWBOULD:  I don't quite understand what

2    you're saying there.  Is it because it's only 14 percent

3    that it's unjust?

4           MR. ROSENTHAL:  Your Honor, it's because it's 14

5    cents, not 14 percent; it's actually a lower percentage.

6    But it's 14 cents on the dollar for Creditors when the sole

7    basis for the adoption of the pro rata methodology is to

8    achieve Pro Rata Distributions or Pro Rata Allocations from

9    the lockbox.

10          If Your Honor said "I adopt the Canadian

11   Allocation approach, I think it should be ownership and this

12   is where the chips fall because they own this and we own

13   that and EMEA owns that," then the numbers are what the

14   numbers are.  Or if this Court said "in light of the

15   ownership of the U.S. interest and the licenses, the numbers

16   come out X, Y, and Z," then the numbers fall where the

17   numbers fall based upon what value the parties relinquished

18   in the sales.

19          But the Courts didn't do that.  The Courts said

20   we're going to both eschew that result and we're going to

21   design something that is intended to be pro rata.  And it is

22   unjust in the name of pro rata to then say we're going to

23   give out 14/47/48.  I mean if you called it something else,

24   then it might not be unjust, but under a pro rata

25   methodology, that's unjust.

1          In terms of clarification, the EMEA Debtors said

2  it best I think, and they cited the *Elan Pharma* case at page

3  15 of their brief saying, "Motions for clarification should

4  only be granted to the extent a Court's judgment is vague or

5  ambiguous."  The Monitor agreed; page 25 of their brief

6  said, "clarification may be given where the original

7  judgment was so expressed as to lead to uncertainty and

8  confusion or contains a latent ambiguity."

9          And it's hard to imagine better support for

10  clarification than the fact that, with respect to most of

11  our requests, the other parties can't agree as to what Your

12  Honors decided.  For example, the EMEA Debtors agree with us

13  that the Courts held that Allocations have to be made to

14  individual Debtors while the Monitor and the Canadian

15  Debtors argue that it's the groups.

16          JUSTICE NEWBOULD:  Mr. Rosenthal --

17          MR. ROSENTHAL:  Yes.

18          JUSTICE NEWBOULD:  -- I just want to --

19  Mr. Rosenthal --

20          MR. ROSENTHAL:  Yes.

21          JUSTICE NEWBOULD:  -- can I just ask another

22  question?

23          MR. ROSENTHAL:  Absolutely.

24          JUSTICE NEWBOULD:  You say it's not pro rata

25  because the U.S. Creditors are only getting 14 cents on the

1  dollar.  What is your solution to that, taking an Allocation

2  decision that has been made?  What would your solution be?

3          MR. ROSENTHAL:  I think, Your Honor, the solution

4  is a very easy fix that does not upend the pro rata, which

5  is the principle stated by both Courts -- and I'll cite at

6  the very end of --

7          JUSTICE NEWBOULD:  Well, what's the easy fix?

8          MR. ROSENTHAL:  The easy fix is if you're going

9  to take the claims against the estates and then divide the

10 lockbox proceeds on a percentage basis based on the claims

11 against the estates and you're going to say that the

12 Guaranteed Bondholders do have claims against both the U.S.

13 and the Canadian Debtors, there's no basis to say but the

14 Canadian Debtors get an Allocation to pay those bonds but

15 the U.S. Debtors don't.  So I think our fix is quite simple,

16 which is to say the amount of allowed claim of the

17 Bondholders in the United States should be part of the

18 claims that get weighed on the scale when you --

19         JUSTICE NEWBOULD:  I lost you, no sound.

20         MR. ROSENTHAL:  Oh, I'm sorry.  So, Your Honor --

21         JUSTICE NEWBOULD:  You cut out just when you're

22 giving me the easy fix.

23                      (Laughter)

24         MR. ROSENTHAL:  Sure, Your Honor.  So what I was

25 saying, Your Honor, is the easy fix is if the Court is going

1   to say that the Bondholders have an allowed claim against

2   the Canadian Debtors and against the U.S. Debtors, that in

3   order for there to be a Pro Rata Allocation of the sales

4   proceeds, the amount that the allowed claim against the

5   Canadian Debtors should count for the Canadian Debtors'

6   total claims, and the amount of the Bondholders' allowance

7   in the United States counts towards the U.S. Debtors'

8   Allocation.  And if you do that one thing, that largely

9   fixes this problem.

10              The only other reconsideration we have is to say

11  the $110-150 million that was only in the lockbox because of

12  a question over value as opposed to --

13              JUSTICE NEWBOULD:  Yes.

14              MR. ROSENTHAL:  That's the only other fix and

15  that's a modest fix.  But they're both modest.

16              JUSTICE NEWBOULD:  What would you --

17              MR. ROSENTHAL:  Yes?

18              JUSTICE NEWBOULD:  Mr. Rosenthal, what would you

19  have us do then with the claim of the Pension Administrator

20  in the U.K. --

21              MR. ROSENTHAL:  It's --

22              JUSTICE NEWBOULD:  -- if they need claims against

23  all of the EMEA Debtors?  What would you have us do with

24  that?

25              MR. ROSENTHAL:  I would do exactly what you've

1    done, Your Honor, which is you have said, Your Honor, that

2    you're going to give a claim against the EMEA Debtors in an

3    amount to be determined because their claims process is just

4    now beginning.  You have said --

5                JUSTICE NEWBOULD:  I can't hear.

6                MR. ROSENTHAL:  Is this any better, Your Honor?

7                JUSTICE NEWBOULD:  Yes.  I didn't hear the

8    beginning of it.

9                MR. ROSENTHAL:  Okay.  I would do, Your Honor,

10   exactly what you've done because you have counted it in

11   multiple places.  You have already given the UKP -- we don't

12   know what the amount is but at some point in time there will

13   be a settlement by Courts here, there, or somewhere of what

14   the amount of the UKP claim is that will count for the EMEA

15   Debtors' Distribution Allocation.  You have already said in

16   your Opinion that the UKP is going to have a close-to-$500-

17   million claim against the Canadian Debtors, and that's

18   counting for Allocation.  So the Canadian Debtors are

19   getting an Allocation on account of the UKP claim and the

20   UKP is going to dip into the Canadian pool.

21                And they've already gotten a claim in the United

22   States.  They sued us for several billion dollars.  They

23   settled with us for $37.5 million.

24                THE COURT:  Right.

25                MR. ROSENTHAL:  They've been paid.  So the UKP is

1  in fact getting what we're advocating here, which is they

2  are getting money from all three estate groups.  The estate

3  groups are getting a Distribution.  EMEA will get a

4  Distribution on account of UKP.  Canada is getting a full

5  Distribution on account of UKP.  And we say, to be

6  consistent -- and that's one of our clarification requests

7  -- we anticipate that the $37.5 million that the U.S. has

8  paid, we're going to get a Distribution on account of this.

9         So exactly what you've done with the UKP we don't

10 understand, frankly, Your Honor, why the Canadian Debtors

11 would get a $500 million Allocation to pay the UKP claim but

12 the U.S. Debtors would not get an Allocation to pay the

13 allowed Guaranteed Bondholder claim.  So we're asking for

14 those to be treated the exact way that you've done it

15 already in the Court's Order.

16         So just turning to some of the clarification

17 issues, and again, I can go through this very, very quickly

18 because I think with respect to most of them, it seems

19 rather self-evident from the oppositions that the Courts

20 need to give the parties a little bit more clarity if we're

21 to go out and implement it.

22         There's the dispute over intercompany claims.  We

23 are in agreement with the Canadian Debtors.  We are in

24 agreement with the CCC.  Intercompany claims should count

25 between groups.  That's how the parties litigated this, the

1   Canadian Debtor group, the U.S. Debtor group, the EMEA

2   Debtor group, any other result than in between groups.  If

3   you allow intragroup claims, you really allow for the

4   possibility of complete circumvention of the Courts'

5   Opinions.  Again, you know, the dispute between the

6   opponents really underscores the need for clarity.

7             With respect to settlements, this Court has

8   said --

9             JUSTICE NEWBOULD:  Mr. --

10            MR. ROSENTHAL:  Yes, Your Honor?

11            JUSTICE NEWBOULD:  Just explain how you say

12   intergroup claims would allow circumvention of the decision.

13   How could it be circumscribed?

14            MR. ROSENTHAL:  Sure, Your Honor.  So Your Honor

15   has pinpointed and it's most clear in the U.S. Court's

16   Opinion, but both Courts have pinpointed the possibility

17   that, because of the nature of these Courts' Allocation, if

18   the UKP were to assert the same claim against 20 different

19   EMEA Debtors and get credit for that in Allocation,

20   essentially they could scoop up the entire lockbox or, you

21   know, 95 percent of or it or so.

22            Intercompany claims within a group would have the

23   same effect because -- let's take NN Italy, for example, and

24   I'm just mentioning them hypothetically; I don't know NN

25   Italy's circumstance -- but right now they've got very

1  little money, they've got very little claims.  The NN UK,

2  presumably, has no interest in spending a lot of money

3  litigating what they may see as a potential claim against NN

4  Italy.  But if the UKP were told if you assert a claim

5  against NN Italy and NN Italy then says, okay, we are now

6  going to have a contribution claim over against NN UK, now

7  all of a sudden the UKP's $3 billion claim against NN Italy,

8  if it comes to pass and you've said that shouldn't count but

9  NN Italy can go make a $3 billion claim against NN UK and

10 that counts, well, then you've done the exact same thing.

11          Now, I understand that there may be certain

12 intercompany claims.  We think that they can be resolved

13 just on an intra-Debtor group -- this Court can resolve if

14 there are issues involving specific U.S. intercompany

15 claims.  The Canadian Court can resolve Canadian

16 intercompany claim issues.  The UK Court, which is

17 administering most of the EMEA proceedings, can resolve

18 that.  But the one thing that we can't do is have a blanket

19 rule that says that they count because that's where we're

20 concerned about the circumvention.

21          So with respect to settlements, the Courts said

22 settlements count, period, definitively.  Nobody has said,

23 and we've just wanted to make clear, some of our settlements

24 we went off and paid.  We're trying to wrap up this estate

25 quickly and efficiently and we've been trying to do so over

1  the last several years and we've paid off some of these

2  claims.  And we just want to be sure when you say that

3  you're not penalizing the U.S. Debtors for having paid them

4  instead of just saying you have an allowed claim and you'll

5  get paid later.

6            And nobody has disagreed, nobody has disagreed

7  with any of our examples.  The EMEA Debtors affirmatively

8  agree but they say A) it should relate only to prepetition

9  or non-administrative post-petition claims, not to post-

10 petition administrative claims.  None of those that we've

11 used as examples are post-petition administrative claims.

12 Nobody said that they are.  If the Court wants to be

13 comfortable that, you know, for example, the legal fees of

14 all the lawyers are not going to be "settled" and then

15 counted for Allocation, we have no problem with that.

16            They've also asked for a clarification that it's

17 the amount of the actual settlement, not the amount of the

18 claim.  I understand why.  EMEA asserted millions of dollars

19 of claims against us.  We settled them for $37.5 million.

20 We want credit for the $37.5 million, not the billions that

21 we were sued for.

22            Again, the Canadian Debtors, they said, well, the

23 Courts have set the principles; now the parties should go

24 implement them.  All we're asking is that you clarify that

25 this is indeed one of the principles.

1             We have the disagreement with respect to the

2    Allocation to specific Debtors.  The EMEA Debtors agree with

3    the U.S. Debtors and the UKP that the Allocation is to

4    specific Debtors, and the Canadian Debtors say, no, it's to

5    Debtor groups.  And again, the concern here is only that

6    there not be a circumvention of what the Courts have

7    announced as the primary principle, which is if there's an

8    Allocation to a Debtor or a Debtor group on account of a

9    specific claim, that that not get to be put into a general

10   pool and then be diverted to pay claims of other Debtors or

11   other claims entirely and that, you know, if a dollar gets

12   allocated because of a U.S. claim against NNL, for example,

13   we want that dollar to be available because that's part of

14   the Court's consideration in adopting this in the first

15   place.  And if there are other ways to satisfy that goal,

16   we're happy to have it.

17             Two more final things and then I'll be able to

18   sit down Your Honors.  One regards procedures for disputed

19   claims.  And it seems clear that there's a big disconnect

20   between the Motion and the oppositions.  And, Your Honor,

21   specifically the U.S. Court, you took deliberate efforts at

22   the end of your Allocation Opinion to address what you saw

23   as the primary concerns with pro rata methodology.

24   And one of the leading ones you said is that inflated claims

25   -- and you cited specifically the concern about the UKP $3

1    billion claim -- would skew the methodology and destroy the

2    Pro Rata Allocation approach.  And Your Honor said that you

3    "will resolve any disputed claims to prevent claim

4    inflation."

5           And all we've asked is can we have the procedures

6    so we could start -- we don't want to wait five years for

7    the EMEA estate to start litigating these claims and

8    wrapping things up, and then to start oversight of what

9    happened.  We want the Allocation to happen now.  We want

10   the money to get to Creditors now.  We'd like procedures to

11   be implemented now.

12          And the oppositions were largely principles of

13   comity.  You shouldn't have oversight, you know, here's what

14   we're doing.  We got 10 pages plus a supplemental submission

15   yesterday with the procedures that they're now starting to

16   implement in the UK.  But that's asking you to reconsider

17   what you've already ruled.  You said you will resolve

18   disputed claims to prevent claim inflation.  And there's

19   been no Motion for Reconsideration of that and it's

20   inappropriate in the guise of an opposition to say don't do

21   that.  So as far as

22          JUSTICE NEWBOULD:  Mr. Rosenthal?

23          MR. ROSENTHAL:  Yes.

24          JUSTICE NEWBOULD:  I'm not quite sure what you're

25   asking.  Is this a timing issue?

1              MR. ROSENTHAL:  Well, it's two things, Your

2    Honor.

3              JUSTICE NEWBOULD:  Are you asking us to decide

4    what the size of the claims in all the EMEA estates are?

5              MR. ROSENTHAL:  Well, only one --

6              JUSTICE NEWBOULD:  Are you --

7              MR. ROSENTHAL:  Only one because you said that

8    the UKP can only count once.  So with --

9              JUSTICE NEWBOULD:  Well, we've said that.

10              MR. ROSENTHAL:  So with respect to the UKP claim,

11    yes, I'd like procedures that we could have that claim

12    estimated.  Bankruptcy Courts here, at least in the United

13    States -- I'm not familiar with Canadian procedure -- but

14    you estimate claims all the time.  And I'm asking for a

15    procedure to be set up here to estimate it for purposes of

16    Allocation so that we can move the estates forward.

17              And the Canadians and other parties say, well,

18    again, let's just defer that, but when are we going to defer

19    it to?  The UKP talks about, well, only if the principles of

20    comity are forfeited, again, that seeks to overturn what the

21    Courts already decided that it will.

22              And in terms of jurisdiction, the Court -- comity

23    just isn't the right issue anyway, even had you not already

24    decided this, because it's the lockbox under your

25    jurisdiction.  You've decided it in the Pro Rata Allocation

1  how to allocate that.  And no court anywhere outside of

2  these two Courts has the jurisdiction to decide what you

3  think is the proper Allocation related to any particular

4  claim or to any particular Debtor.

5         And if you decide that the Allocation from the

6  lockbox -- not what their claim ultimately will be.  They

7  can litigate that however long it takes, but what the

8  appropriate Allocation is, whatever you decide on that is

9  the appropriate Allocation therefore, and we're just asking

10  that procedures be put in to implement that aspect of the

11  Order.

12         And the last thing is the tax claims.  It seems

13  that there's not a -- certainly the EMEA Debtors, they

14  recognize that whether the Court set an effective bar date

15  of today, December 31, the end of 2017, the likelihood is

16  going to be that there are claims that parties are going to

17  want to count for Allocation purposes that are not yet

18  resolved.  And the Courts spoke about kind of drawing a

19  line, you know, a bright line saying anything not resolved

20  after a particular date won't count.

21         And the circular problem that we have is that one

22  of the claims against the U.S. Debtors is going to be for

23  taxes arising out of the Allocation because to sell these,

24  there's going to be tax liability.  And all we're asking is

25  that, as part of that drawing a line, that you provide for

1    the estimation of claims like the tax claim that can't be

2    resolved by that particular date, whatever it is.

3              And there's no equity in the position that all of

4    these other claims would count but not a U.S. tax liability

5    associated with the sale and --

6              JUSTICE NEWBOULD:  Mr. Rosenthal?

7              MR. ROSENTHAL:  Yes.

8              JUSTICE NEWBOULD:  Can I ask you a question?

9              MR. ROSENTHAL:  Of course.

10             JUSTICE NEWBOULD:  Can I ask you a question?  If

11   we were to go down that road, would you say we have to look

12   at all of the estates, the Canadian estates, all of the EMEA

13   estates to see what their tax consequences are, too?

14             MR. ROSENTHAL:  Sure.

15             JUSTICE NEWBOULD:  All right.

16             MR. ROSENTHAL:  But I don't think that that's a

17   complicated issue because I think some of the estates have

18   significant operating losses that are going to swallow up

19   any potential tax liability.  But if an estate wants to

20   present the Court with evidence of a tax liability it will

21   face, why shouldn't it?  I mean if the idea of a Pro Rata

22   Allocation is to give equal money associated with each claim

23   that's going to have to come out of those proceeds, then why

24   wouldn't every estate that has to pay taxes be able to put

25   that claim in?

1              And certainly if the Canadian Debtors have taxes

2  or anything else that is not ascertainable as of a date that

3  the Courts set, it should be estimated.  I mean it's

4  consistent with the principle.

5              And with that, unless the Courts have any other

6  questions, I could sit down and cede the podium.  And

7  obviously to the extent that there's extensive arguments in

8  opposition, I would just reserve my time for response.

9              THE COURT:  What have you estimated, allowing the

10  $4 billion claim -- or I should say Allocation to the $4

11  billion in the U.S. estate?  What will that do to the

12  percentages?

13              MR. ROSENTHAL:  Your Honor, again, we only have

14  the Britven numbers because we have not sought to put in new

15  evidence --

16              THE COURT:  Right.

17              MR. ROSENTHAL:  -- but I do believe that -- and I

18  could ask one of my colleagues to give a more precise number

19  if he's run it.  I mean it will by and large equalize those

20  three numbers.  And the Allocation on account of Creditor

21  claims will be pretty close to equal.

22              Let me just see if one of my colleagues actually

23  might have that number.

24              THE COURT:  All right.

25              MR. ROSENTHAL:  We don't have a specific number

1  but I've confirmed that it would be equalized and it would

2  be probably under the same analysis as Mr. Britven did, in

3  the low 40s.

4          THE COURT:  All right.  All right.  Thank you,

5  Mr. Rosenthal.

6          MR. ROSENTHAL:  Thank you, Your Honor.  And I

7  think Mr. Leblanc is going to speak next.

8          MR. LEBLANC:  Do you want Sheila?

9          MR. ROSENTHAL:  Oh, Ms. Block obviously.  I'm

10  sorry, Sheila.

11          MS. BLOCK:  Thank you, Your Honors.  May it

12  please the Courts, I'm only going to address why reconsider

13  and whether you have the power to reconsider, Justice

14  Newbould.  Obviously, I don't speak about the U.S.

15  Reconsideration law.  But we're not under --

16          JUSTICE NEWBOULD:  [indiscernible].

17          MS. BLOCK:  All right.  Then I have a simple

18  point.  We're not 5906 situation.  You have the inherent

19  jurisdiction.  Of course it's done sparingly.  It's done in

20  exceptional circumstances when it's just to do so.  And I

21  just point you to two cases.  One is the *Cheema* [ph] case,

22  which you'll find -- the Canadian authorities.  You don't

23  need to turn it up but they're sort of one-stop shopping of

24  all of the law on when --

25          JUSTICE NEWBOULD:  Justice Lamer?

1            MS. BLOCK:  This is Bennett J in D.C.  My friend

2    said it and it does go through all of the cases, the catalog

3    of this unfettered --

4            JUSTICE NEWBOULD:  What was that number?

5            MS. BLOCK:  -- discretion.  It's tab G.

6            JUSTICE NEWBOULD:  G as in George?

7            MS. BLOCK:  G as in George and the Canadian

8    authorities.  I could hand you up a --

9            JUSTICE NEWBOULD:  Well, that's okay.

10            MS. BLOCK:  -- spare copy if you want.

11            JUSTICE NEWBOULD:  No, we've got enough paper.

12            MS. BLOCK:  But failure to consider material

13    evidence, misapplication of law, errors in calculation,

14    reasons ambiguous, perhaps with less certainty circumstances

15    changing.  And it quotes the *Sykes* case, another D.C. case

16    in the Court of Appeal in 1995 that says "the discretion be

17    properly exercised where the trial judge is satisfied either

18    because of the arguments of one of the parties or on the

19    basis of his own reconsideration of the record that the

20    original judgment was in error because it overlooked or

21    misconstrued material evidence or applied the law."

22            Now, obviously, as counsel we cannot probe your

23    decision-making process.  You have delivered in secrecy, as

24    the Supreme Court of Canada has made clear.  Whether it's a

25    failure to consider certain of the evidence, misapplying the

1  law, errors in calculation, how can we possibly say?  But

2  the arguments and the points we have made before you and

3  Mr. Rosenthal has made and as clearly set out in our briefs,

4  if you see that what you've done does not achieve what you

5  wanted to accomplish, you have the unfettered discretion --

6  because there is no Order entered.

7          And the other case that you will be familiar with

8  is the *Montague* case in our Court of Appeal, which is at tab

9  5 of our case book, which confirms the jurisdiction in the

10  Court to change an Order prior to entry and the Court

11  describes that as a judicial discretion having deep

12  historical roots.

13          And you and I will remember, Your Honor, we would

14  have to run up to Ms. Calendino [ph] to get the Order issued

15  and entered so that there could be no further consideration

16  of it and it would be done.  And in *Montague*, the trial

17  judge --

18          JUSTICE NEWBOULD:  You would be the one who had

19  done that because you would win all the time.  I'm sure I

20  wouldn't.

21                    (Laughter)

22          MS. BLOCK:  I know.  It wasn't much of a win to

23  go up and see Ms. Calendino, let me tell you.

24                    (Laughter)

25          MS. BLOCK:  We -- twice.  Once she said 12

1   months' severance and then she came back and said at least

2   13 months, and then later on she said, well, under the

3   Wallace factors, it's 16 months.  And of course that beat

4   the offer.  And it went to the Court of Appeal and the other

5   side was saying this can't be done, but the Court said, no,

6   it's the discretion with deep historical roots, and that's

7   what we are really talking about.

8           And why should you do it?  Well, both Courts have

9   said and the U.S. Court, Judge Gross said that these

10  discussions that you and he held were in an effort to avoid

11  the travesty of reaching contrary results, looking for an

12  Allocation approach that leads to an equitable result.  And

13  you yourself in paragraph 10 said you have come to the

14  conclusion that a consistent ruling in Canada can and should

15  be made by both Courts, consistent decisions that you

16  believe will facilitate a resolution.

17          So there's merit in having both Courts agree.  If

18  the U.S. Court is compelled under its law or deems it

19  appropriate to change, then there is merit in the interest

20  of justice for you to consider that as the Canadian Judge.

21  Both Courts may realize and accept that the original remedy

22  fashioned was not exposed to the parties for analysis.  And

23  now when you see these factors, if you come to the view that

24  there is a more perfect Allocation formula, then you have

25  the authority to do that.

1          Thank you.

2          JUSTICE NEWBOULD:  Thank you, Ms. Block.

3          Who's at bat and who's on deck?

4          THE COURT:  Oh.

5          JUSTICE NEWBOULD:  Mr. Leblanc.

6          MR. LEBLANC:  Andrew Leblanc for the Ad Hoc

7   Committee of Bondholders, Your Honor.  And on deck is

8   Mr. Hodara for the UCC in the U.S.

9          Good morning, Your Honor, and good morning --

10         THE COURT:  Good morning.

11         MR. LEBLANC:  -- Justice Newbould.  As, Your

12  Honor, you can see from our pleadings, we're here on a

13  fairly limited purpose, and it's actually one that, to our

14  astonishment, actually is something that we seem to have

15  gotten agreement from every party for what seems to be the

16  first time in this case.

17         We raised as an issue the concern we had from the

18  lack of clarity in Your Honor's Order, and this is Judge

19  Gross' Order and it's also similar language in Justice

20  Newbould's Order as to whether the Courts were making a

21  determination as to the size of the Bondholder claim allowed

22  in the United States for the purposes of Distribution.  And

23  in particular I'll point Your Honor to your Order, paragraph

24  E, the second sentence that reads, "a claim for the

25  shortfall can be recognized by the estate that guaranteed

1  the bond, but that shortfall will not be taken into account

2  in determining the claims against the Debtor estates."  And

3  it's the language, Your Honor, that refers to the claim for

4  the shortfall.

5         We didn't understand what that meant and it, in

6  our view, was inconsistent with Your Honor's prior Order in

7  the 9019, which allowed finally and fully the U.S. guarantee

8  claim for the bonds at an amount of approximately $3.9

9  billion, which is the full --

10         JUSTICE NEWBOULD:  Mr. Leblanc?

11         MR. LEBLANC:  -- amount --

12         JUSTICE NEWBOULD:  Mr. Leblanc, can I ask you a

13  question?  Did you say a minute ago that all the parties

14  agreed with your position?

15         MR. LEBLANC:  As far as we can understand, Your

16  Honor, everybody agrees that the Courts did not enter any

17  Order -- no aspect of their decision deals with the question

18  of Distributions as opposed to Allocation.  So what that

19  means, Your Honor, and just to be clear -- and I'm not going

20  to spend -- I will spend less than a couple of minutes on

21  this -- but it does merit clarification of the Court's Order

22  because the language in Your Honor's Order and Justice

23  Newbould's decision referring to a "shortfall" or in the

24  language of your Opinion as opposed to the Order referring

25  to a claim for the deficiency led to the confusion in our

1   minds as to whether that was intended to affect both the

2   Order that the Court had entered previously and to affect

3   the size of our claims for Distributions.

4           So what we've suggested, Your Honor, is a

5   clarification that simply strikes that language from the

6   Order and the corresponding language from the Opinions to

7   make clear that nothing that the Courts have done in this

8   Allocation decision has any impact whatsoever on the size of

9   the Bondholders' Claims for Distribution.

10          We sought clarification in the first instance and

11  Reconsideration in the second instance because if Your

12  Honors were to tell us that, no, we did intend to affect the

13  size of the Bondholder Claim for Distribution, and that

14  again is a position that none of the parties have suggested

15  that Your Honors did, but if the Courts were to tell us

16  that, then we would urge reconsideration of that for the

17  reasons stated in our paper, and substantially that it's

18  already been ordered by the Courts, it's inconsistent with

19  80 years of unbroken law in the United States, and it's also

20  inconsistent with what the Courts set out to do in the

21  Allocation decision.  But if the Courts agree with us and

22  with the parties that nothing in the -- sorry, I may you

23  have not had audio there for a second.

24          If the Courts agree with us and all the parties

25  that nothing in the Courts' decision affects Distribution

1   and affects the size of the Bondholders' Claims for

2   Distribution, then the Court can simply strike that language

3   and our clarification would be granted and we could move on.

4           And obviously, Your Honor, we do join with the

5   Debtors in their arguments, the arguments Mr. Rosenthal

6   made, but I'm not going to spend any time on those.

7           The last point I would make, Your Honor, is I do

8   hope the Courts can reiterate the admonition that was

9   certainly in Judge Gross' Opinion that now is the time for

10  parties to speak to one another to see if there's a way to

11  resolve this.  We have endeavored to try to have discussions

12  with parties in the time since the decisions have come out

13  in the words of the Court that utilize the Courts' rulings,

14  and we haven't had any success.  We've been told let's talk

15  about this after the Reconsideration hearings.

16          Your Honor, that's not what we should be doing at

17  this time.  We need to deal with the realities of the

18  decision, and we've tried to do that.  We made a proposal to

19  the estates that was met with "we'll talk to you later."

20  That shouldn't be the answer now.  I think the Courts'

21  admonition was clear and we're prepared to talk.  And the

22  Courts should reiterate that admonition that now is the time

23  for parties to have discussions.  It's not to wait for some

24  future event; it's not to wait to see what may turn in the

25  decisions as they move forward.

1          Now is the time to have these discussions, and

2   we'd ask the Courts to reiterate that admonition because I

3   think it's useful for everyone to hear.  I don't think we

4   need a mediation or a process that's going to take an

5   inefficient and inordinate amount of time, but the parties

6   should be talking to one another and the Court should remind

7   the parties of that.  So we'd ask for that admonition to be

8   reiterated, Your Honor.

9          But with that, I think there isn't disagreement

10  as to the clarification that we request so we just ask the

11  Court make clear in its Opinion that the Opinion has nothing

12  to do with the size of the Bondholders' Claim for

13  Distribution and Your Honor was not upsetting your prior

14  Orders or 80 years of -- or on the 80th anniversary of the

15  Ivanhoe decision you weren't upsetting that Supreme Court

16  precedent either.

17         Unless Your Honors have any questions, I'll cede

18  the podium to Mr. Hodara.  Thank you, Your Honor.

19         THE COURT:  Thank you.

20         UNIDENTIFIED SPEAKER:  Your Honor,

21  [indiscernible] direct Your Honor, we brought a Motion in

22  Canada for complementary relief to that sought in the U.S.,

23  and I just point Your Honor to the *Cheema* decision that Ms.

24  Block drew to your attention earlier.  You have the

25  discretion to -- when the Order or your reasons on their

1   face are ambiguous to correct them, and if you look at that

2   case, what happened in that case specifically is the Judge

3   used in his reasons the words "substantially completed" in

4   relation to a building, and that had particular legal effect

5   under construction law but wasn't intended by the Judge so

6   the Judge was able and had the discretion to

7   [indiscernible].  Thank you.

8          MR. HODARA:  Good morning, Judge Gross.

9          THE COURT:  Good morning, Mr. Hodara.

10         MR. HODARA:  Good morning, Justice Newbould.

11  Fred Hodara of Akin Gump Strauss Hauer & Feld for the

12  Official Committee of Unsecured Creditors in the United

13  States.

14         I'm joined today in the Toronto courtroom by

15  Shayne Kukulowicz of the Cassels firm.  Your Honors, it's

16  not our intention for Mr. Kukulowicz to make a direct

17  presentation, but if questions arise during my presentation

18  that relate to Canadian law issues, Mr. Kukulowicz will

19  answer those.

20         Your Honors, I will quickly get to the substance

21  of the Committee's support for the Debtors' Motion for

22  Reconsideration and Clarification, but first, the following

23  simply must be said as this is the first time that we are

24  before Your Honors on the issue of Allocation since the

25  rulings were made.

1          JUSTICE NEWBOULD:  If it must be said, there's a

2     Grinch trying to stop you from saying it up here.  We didn't

3     hear any of that.

4                         (Laughter)

5          MR. HODARA:  You heard the important part, which

6     is there are some things I need to say before I get to the

7     substance of our support --

8                         (Laughter)

9          MR. HODARA:  -- for the Committee's Motion.

10          These rulings, Your Honors, are in a word

11     devastating to the interests of all of the constituents of

12     the Official Committee, the 22,000 U.S. employees who share

13     in the recoveries that the PBGC will get in this case, the

14     scores of Bondholders who rely on predictability in the

15     public markets, and the holders of trade claims, the so-

16     called GUCs, of the U.S. estate.  The rulings are

17     devastating because they are so at variance with reasonable

18     expectations, expectations driven by detailed public

19     presentations of four principle methodologies in these

20     Courts.

21          Every one of those methodologies indicated

22     recoveries for the U.S. GUCs higher even under global subcon

23     or pro rata than the result that obtains under these Courts'

24     decisions and under all of those methodologies but subcon

25     and pro rata, straight pro rata that is, higher for the

1  Bondholders and the PBGC as well under every one of the

2  theories advanced by the estates.

3       And also, these decisions are at variance with

4  the expectations driven by a certainty, at least among U.S.

5  Creditors, that whatever methodology would be followed, it

6  would be a methodology driven by a determination of value,

7  what value was relinquished by each of the selling Debtors.

8       And also, with respect to expectations, taking

9  into account areas of settled law as that law applies to

10 these unusual cases such as principles of substantive

11 consolidation.  And, Judge Gross, your decision does have

12 discussion making clear the recognition that the factors for

13 the extraordinary relief of substantive consolidation simply

14 don't exist here.

15      So given these reasonable legal and commercial

16 expectations, the last thing that U.S. interests expected

17 was a decision that mirrors principles of substantive

18 consolidation but in a fractured way, a way that for GUCs

19 results in a far-worse result even than would have obtained

20 under subcon.

21      In fashioning a so-called modified pro rata

22 methodology, the Courts have stated a view that they were

23 driven in their conclusion by a desire and a goal to do

24 equity, but again, the result for U.S. GUCs is exactly the

25 opposite of doing equity.  For these parties and these

1   parties alone in these estates, except we now, as time

2   passes and we start to have the opportunity to see the other

3   unintended consequences -- and I assume they are unintended

4   -- we see that the Creditors of NNSA, the French estate, are

5   equally surprisingly impaired.  And we read in the papers

6   that perhaps that's true through the Creditors of the Irish

7   estate.  This is collateral damage.

8           Now, is that just too bad; the minority has to

9   sacrifice for the good of the greater whole?  No, clearly

10  not under the U.S. bankruptcy system, nor do I think under

11  the Canadian bankruptcy system.  That's not how it's

12  supposed to operate for the benefit of Creditors, which is

13  what a liquidation process like this is all about.

14          The unfairness flows from what many would say --

15  and I will put up my hand as one of those who firmly

16  believes this -- that as a driver of methodology, the least

17  probative, the least logical, and the most capable of

18  unexpected results of any of the potential drivers available

19  in these cases is claims aggregate claims, claims --

20          JUSTICE NEWBOULD:  I don't understand -- sir, I

21  don't know how this is helping us.  I understand you don't

22  like the decision but we're here on a Motion to do certain

23  things so I don't think this is very helpful.

24          MR. HODARA:  Well, I'm glad you interrupted --

25          JUSTICE NEWBOULD:  Excuse me for myself.

1          MR. HODARA:  -- exactly -- I'm glad you

2     interrupted exactly at the point when I got to the word

3     "claims" because claims are at the heart of the Motion for

4     Reconsideration so if you'll bear with me, Your Honor, I'm

5     getting to those points right now.

6          The Monitor says at paragraph 60 of its Objection

7     modify pro rata driven by claims recognizes "the

8     contribution of those Creditors to the value of the Nortel

9     group as a whole and thus to the assets that were sold."

10    Really?  The amount of claims tells you the value

11    contributed?  That's not what we see in the normal

12    commercial world.  It's never what would be relevant to a

13    valuation exercise.

14          Let's explore this for a moment if we can.  Why

15    are the claims bases higher in Canada and EMEA than in the

16    United States?  Why are the Canadian and EMEA cash balances

17    lower than in the United States?  The answer to both of

18    these important questions is, as we learned at the trial,

19    the U.S. estate was the healthiest of the major estates in

20    these cases.  The U.S. estate was the cash cow.  Claims of

21    22,000 U.S. employees, as well as the underfunding claim of

22    the PBGC, are lower than the claims of employees or the UKP

23    and EMEA in Canada because NNI was better able to stay

24    closer to being current on those obligations.  And the U.S.

25    estate was able to do that prepetition, to have its claims

1 | base be lower than the other estates.

2 | And, Justice Newbould, I hope now you follow me

3 | on the point about claims because claims are the driver that

4 | you and Judge Gross have chosen to use for Allocation.  It's

5 | a pure application of the relative claims bases of the three

6 | estates to the lockbox that drives how much comes out, added

7 | to the cash in those estates, provides the recovery to our

8 | respective Creditors.

9 | So looking again at these claims bases and at the

10 | cash balances, why is the U.S. cash balance what it is

11 | versus the others?  Why is the U.S. claims base low versus

12 | the others?  This was obtained even though the IRS found and

13 | this Court found, appropriate through a settlement, that at

14 | least $2 billion had been siphoned out of the U.S. to

15 | Canada, 2 billion additional dollars, whole dollars, not

16 | bankruptcy dollars, that would have been sitting in the U.S.

17 | accounts at the time of the bankruptcy and available under

18 | these decisions for distribution.  And I say at least 2

19 | billion because that was only for the period covered by the

20 | settlement, 2001 to 2005.  It doesn't include the similar

21 | problem for 2006 to 2008.

22 | So here under modified pro rata each estate gets

23 | to keep its cash, the U.S. has been allowed to keep its 2

24 | billion intercompany claim, but the U.S. doesn't get back 2

25 | billion of cash for that claim.  Conversely or by contrast,

1  Canada does get an allocation from the black box for having

2  incurred the claim.  So to us there's no objectivity.

3  There's no equity in the treatment of that issue.  That is a

4  classic lose-lose again for U.S. Creditors.

5          I want to talk about another claim because no

6  treatment of a claim in these decisions appears to be more

7  arbitrary -- if I can use that word -- and ultimately more

8  unjust to U.S. Creditors on so many levels --

9          JUSTICE NEWBOULD:  -- where this is going.

10         MR. HODARA:  I'm sorry, Your Honor, it broke up.

11         JUSTICE NEWBOULD:  I don't understand where

12  you're going.

13         MR. HODARA:  Your Honor is aware that the Motion

14  talks about two particular claims, the treatment of which we

15  asked to be reconsidered.  One is the IRS claim.  I'll be

16  getting to that in about two minutes.  One is the bond

17  guarantee claim.  Where you interrupted me, it happens again

18  to be exactly in my presentation where I was moving into the

19  discussion of the bond guarantee claim.

20         Now, I started by saying that the treatment of

21  that claim to us is unjust.  On the question of what claim

22  can be asserted by the Bondholders in the U.S. for

23  Distribution purposes, we think there is uncertainty.  We

24  heard Mr. Leblanc's presentation moments ago, indicating

25  that no other party has contested the statement of the bonds

1  that their entitled to assert the full amount of their

2  guarantee claim in the U.S. for Distribution purposes.  And

3  that in any event, that is a Distribution issue, strictly a

4  matter for the U.S. Court.  And that Distribution issues are

5  not properly part of the Allocation litigation.

6           Respectfully, Your Honors, we believe the Courts

7  have made so called Distribution issues, part of the

8  Allocation litigation by prescribing a claims driven process

9  that's founded on the view of what is equitable.

10          So let me illustrate what I'm saying in that

11 regard and why we think that we do now need, under the

12 methodology that the Courts have prescribed, to deal with

13 these major claims as part of this process now, not later.

14          I'll ask a rhetorical question.  Is 35 percent of

15 a Creditor's recovery, a large portion of that Creditor's

16 recovery?  If a Creditor's recovery moves up or down by 35

17 percent in our bankruptcy world, would we consider that to

18 be a major change?  And I ask that rhetorical question

19 because under the Britven numbers, which are the only

20 numbers that people are looking at at the moment, and under

21 the Court's modified pro rata approach, the U.S. GUC's would

22 appear to get approximately $.62 on the dollar, if only the

23 bond's shortfall claim shares in the U.S. Distributions.

24 But, if *Ivanhoe* is respected, and it is a Supreme Court,

25 uncontested 80 year precedent, then the full guarantee

1    shares in the U.S. on the Distribution side of the ledger.

2    And instead of a $.62 recovery, the U.S. GUC's get a $.40

3    recovery.  A 35 percent difference based on that one claim

4    which is in play by virtue of this Decision.

5              Now the Committee is certainly not here today to

6    say that one of its largest constituencies is not entitled

7    to the well settled expectation based on the 80 year Supreme

8    Court precedent that their full guarantee claim can be

9    asserted for Distribution purposes against a Debtor

10   Guarantor like NNI.  But we are here today to say, that a

11   Decision that even might continence inclusion in the

12   Distribution process of that claim, whether in full or just

13   a shortfall, without at the same time assuring that the

14   corresponding amount is included in the claims base for

15   Allocation purposes is manifestly unjust.  And that's the

16   standard that we're all talking about with respect to

17   propriety of Reconsideration of these Orders.

18             Now the next claim of that magnitude that the

19   Debtor raises in its Motion, and I shouldn't say of that

20   magnitude, there are very few claims in any these Estates of

21   that magnitude.  Let me use the phrase, claims that will

22   move the needle.  And we think there are basically, four or

23   five such claims.  And because they are potentially so

24   large, need to be part of this entire process, if this

25   claims driven modified program and methodology is, in fact,

1  going to stand and be used for Distributions in these cases

2  for Allocation and then for Distribution.

3           So the next one is the IRS claim.  And there's an

4  enormous difference in view amongst the parties on what kind

5  of claims get included in the claim space.

6           JUSTICE NEWBOULD:  Sir?

7           MR. HODARA:  Yes.

8           JUSTICE NEWBOULD:  You were cut off as soon as

9  you said the next one is --

10          MR. HODARA:  Yes.

11          JUSTICE NEWBOULD:  -- then you were cut off.

12          MR. HODARA:  Thank you, Your Honor.  The U.S. IRS

13  claim, the tax claim.  So the large difference that you

14  heard in the presentation from Mr. Rosenthal and seen in the

15  papers in the views of the parties of how that claim should

16  be handled.  Now certain parties say that the IRS claim

17  can't be included at all because it's a Post-Petition

18  expense like fees.  I don't think it's anything like

19  professional fees.  But if that is what the Court's believe,

20  then we have another incidence of manifest injustice to U.S.

21  Creditors.  Here's what that kind of treatment would mean.

22          Pre-Petition general unsecured claims would be

23  paid at cents on the dollar.  Those count in the claim space

24  for a percentage recovery out of the Lockbox.  A Post-

25  Petition accrual of a tax obligation based on the sale of

1  the very assets that are at the core of the Allocation

2  exercise, and which must be paid in 100 cent dollars, don't

3  count.

4          Into exactly what kind of rabbit hole have we

5  fallen if that were to be the case?  We think this is

6  exactly the kind of issue that's appropriate to look at on

7  Reconsideration.  And as Mr. Rosenthal said, we compare that

8  to the availability in Canada of massive net operating

9  losses because of the losses generated there and the Tax

10 Laws in Canada, to shelter its Allocation.  Because we have

11 flipped to a claims driven approach, these are the kinds of

12 the facts that were not developed in the record of this

13 lengthy trial, but which from a claims driven perspective --

14         JUSTICE NEWBOULD:  Sir, that's -- it's been cut

15 off again.

16         MR. HODARA:  Thank you, Your Honor.  So I said

17 that there were four or five claims of this magnitude of

18 which we are aware and that we think if we're going to

19 continue with this approach of the claims driven

20 methodology, need to be addressed with a full record.  So

21 that would be the bond guarantee claim, the U.S. tax claim

22 of the IRS, the CCC employee claims, the U.S. employee

23 claims, and the UK -- I'm sorry, the UKP employee claims and

24 FSD claims.

25         We believe the U.S. Court does not have a record,

1  a sufficient record on any of these claims.  Or for that

2  matter, any of the significant claims issues.  And we think

3  that it's error to impose a claims driven Allocation

4  Methodology without a complete record on those claims.

5      So in summary, Your Honors, the UCC urges

6  Reconsideration and Clarification on the points identified

7  by the Debtors, particularly, inclusion of the bond

8  guarantee claim or the Allocation claims base of the U.S.,

9  delivery of the NCS and DiamondWare proceeds off the top of

10 the Lockbox proceeds to the U.S. Estate.  Determination

11 after development of a proper and full record of each of

12 those major claims that I just identified.

13     Your Honors, two last points that we want to

14 reiterate.  One, the Committee, for all the reasons that I

15 belabored at the beginning of this presentation, reserves

16 all of its rights to appeal in both jurisdictions.  And with

17 respect to settlement discussions as Mr. Leblanc raised a

18 few moments ago --

19     JUSTICE NEWBOULD:  Well, I must say, I'm not too

20 -- I don't we should be hearing about settlement

21 discussions.  I didn't stop Mr. Leblanc, but I don't think

22 we want people standing up and saying someone else is

23 responsible.  I don't think we want to hear that.  I don't

24 want to hear it.

25     MR. HODARA:  I don't think --

1                JUSTICE NEWBOULD:  I don't think I should hear

2    it.

3                MR. HODARA:  -- I was going in that direction.

4    We have one sentence in our paper.  It doesn't talk about

5    who said what to whom.  It doesn't talk about the old

6    envelopes and what people put in the envelopes or any of

7    those things.  It's a simple suggestion to Your Honors which

8    is now might be an appropriate and fertile time with the

9    Court's gentle persuasion as the Courts have done in this

10   case in the past, to have parties talk in a well-structured

11   way, not necessarily with a Mediator, but in a well-defined

12   process for a period of time.

13                Do Your Honors have any questions for myself or

14   for Mr. Kukulowicz?

15                THE COURT:  I don't.

16                JUSTICE NEWBOULD:  No, thank you.

17                MR. HODARA:  Thank you.

18                THE COURT:  Mr. Lowenthal, good morning.

19                MR. LOWENTHAL:  Good morning, Judge Gross.  Good

20   morning, Justice Newbould.  Daniel Lowenthal, Patterson,

21   Belknap, Webb & Tyler.  As you know, we represent Law

22   Debenture Trust Company of New York.  We're the Trustee on

23   the NNCC Notes.  I'm joined today by our counsel in Canada,

24   Edmond Lamek who will have some remarks when I'm done.

25                As Your Honors know, Law Debenture has been a

1  core party in this case, before, during, and now after the

2  Allocation Trial.  We participated throughout both orally

3  and in writing on procedural issues and substantive issues.

4  We've now moved for Reconsideration or Clarification on just

5  two issues.

6          The first issue is a garden variety Rule 60 issue

7  that I think if I took a poll of all of the U.S. lawyers,

8  they would agree and I would get unanimity on this one, Your

9  Honor.  And I thought maybe you were just checking to make

10  sure I was going to read your Decision.  But in doing so, I

11  realized that when you defined Bondholders in a couple of

12  places, you had the acronym, NNC --

13          THE COURT:  Yes.

14          MR. LOWENTHAL:  -- twice, and you didn't put the

15  second C, or obviously as the Trustee for the NNCC Trustee,

16  we would expect to have seen it.

17          THE COURT:  Yes.

18          MR. LOWENTHAL:  That we assume was a clerical

19  typographical error.  No one objects to our request that

20  that be fixed.  And to use a phrase earlier today, that

21  really is an easy fix and we would request that.

22          Secondly, we understand your Decision to say, and

23  we seek Clarification, that it's something Mr. Rosenthal

24  addressed and we agree with the U.S. Debtors on this point,

25  that Distributions -- Your Honor, says at Page 63 of your

1    Decision, Justice Gross' Decision, that the Distributions

2    would be made to the individual -- to the Creditor Estates,

3    to the Debtor Estates.  Let me correct what I said, to the

4    Debtor Estates.  And we read that mean to the individual

5    Debtor Estates, not Debtor groups.  And Mr. Rosenthal

6    explained the basis for that.

7              As the NNC Trustee, we want to make sure that we

8    are heard and we have our say.  We don't have as large a

9    claim as many others, but it's real money to us, that Your

10   Honors' Decision says there will be no substantive

11   consolidation, separateness will be respected.  And

12   therefore, to just avoid diversion of money from one Estate

13   to another, accidentally, intentionally, or whatever, and

14   we're accusing no one of doing anything that they wouldn't

15   do, making sure that the money comes directly state --

16   Estate by Estate is important to us.  So we support the U.S.

17   Debtors and are joined with them on that.  We just need

18   Clarification on that, Your Honor.  Those are our two

19   points.

20             Now in response to the Debtors' Motion, we make

21   another point.  And that's really in response to their

22   Motion.  So I'm at your mercy.  I can address that now

23   rather briefly or I can sit down and wait until those who

24   respond to Motions address points and speak at that time.

25             THE COURT:  Why don't you address it now?

1            MR. LOWENTHAL:  Okay, fine.  So that relates to

2   the intercompany claim point.  We read your Order, Your

3   Honor, Justice Gross, to say, that with respect to

4   intercompany claims that they would count, would count

5   towards Allocation.  And again, given our role in this part

6   of the case, we're also a member of the Committee, but I'm

7   standing before you as the counsel for the Trustee.  With

8   respect to that issue, we like seeing that because at NCC,

9   where we represent the Bondholders and our Bondholders have

10  their claims against NNCC and NNCC has its claim against NNI

11  with a guarantee from NNL, we like that because we want our

12  claim to count for everything, certainly for Allocation.

13            But the Debtors came in and they made their

14  Motion and they said, and Mr. Rosenthal addressed this, so

15  I'm not going to repeat it in any detail, that their concern

16  is there would be claim inflation and there are games or

17  whatever going on in other Estates, and I have no idea what

18  goes on in those Estates or might, and I'm not suggesting

19  that there would be games playing or anything else, but the

20  Debtors raised that point.  And in reading about that and

21  thinking about that, we say that sounds like a valid point

22  that Your Honor should take note of.

23            So, therefore, and we put this -- and I'll wrap

24  up, we put this in pages -- in Paragraphs 3 through 7 of our

25  reply and so I don't need to repeat those, short pleading.

1  And we just have two concerns on this point.  We have our

2  own independent concern where there's not going to be

3  substantive consolidation, separateness must be respected.

4  We need to speak up for our holders who have their claims.

5  That as far as they are concerned, we read your Decision to

6  be very clear and your Order to be very clear, but yet at

7  the same time, hear what the Debtors are saying.

8          The Debtors responded to us in their reply, and

9  if you look at Paragraph 34 and then Footnote 17, it's tied

10  to that, they acknowledge what we are saying on behalf of

11  NNCC, which is that if in your Clarification you say, yes,

12  intercompany claims are to count, they in no way waived the

13  NNCC claim and they acknowledge the entitlement of NNCC to

14  its rights with respect to that claim vis-a-vis NNI.  And,

15  of course, our holders were here whatever, a month or so ago

16  on the fact -- on a status conference, but mentioned that

17  the Debtors have, they have amended their schedules to

18  acknowledge that that NNCC claim vis-a-vis NNI is an allowed

19  claim.  So we think we're find in that regard, but again,

20  just seeking Clarification, Your Honor.

21          So that's all that I have, unless you have any

22  questions for me or Justice Newbould has any questions for

23  me.  And otherwise, I'll turn it over to my colleague in

24  Canada, Mr. Lamek for a few comments on our Motion that we

25  made up there.

1              THE COURT:  All right, thank you, Mr. --

2              MR. LOWENTHAL:  Thank you very much, Your Honor.

3    Thank you, Justice Newbould.

4              THE COURT:  Thank you, Mr. Lowenthal.

5              MR. LAMEK:  Judge Gross and Justice Newbould, our

6    Motion in Canada is really the primary of the Ad Hoc

7    Bondholders [indiscernible], so it is different than our

8    Motion in the U.S., in that the Canadian Motion specifically

9    relates to the Canadian reasons.  And again, the use of the

10   word, shortfall which is used twice in Paragraph 258(2) and

11   once in Paragraph 251.  Simply to ask, Your Honor, and to

12   make sure there's a Motion before you, asking to strike the

13   word shortfall because that's just not a today issue.  And

14   as you said in your reason --

15             JUSTICE NEWBOULD:  Do you need the word shortfall

16   struck or do you want some clarification as to whether or

17   not we intended the neo distribution?

18             MR. LAMEK:  I will leave that to you.  I think if

19   you intended to make it a today issue, then we obviously

20   need clarification.  If you did not intend to take -- make

21   it a today issue, then simply deleting the word will make it

22   just the claim.  And as you said in your reasons, applicable

23   law will apply as and when the claims are determined and

24   that's all we're asking for.

25             JUSTICE NEWBOULD:  Thank you, Mr. Lamek.

1          MR. LAMEK:  Again, thank you, Judge Gross.

2          THE COURT:  Thank you.

3          MR. POHL:  Good morning, Judge Gross and Justice

4  Newbould.  I think, I'm probably a new face in the six years

5  or seven years of this case.  My name is Steven Pohl.  I'm

6  with Brown Rudnick.  And we represent --

7          JUSTICE NEWBOULD:  Sir, sir, I couldn't -- it cut

8  out when you were giving me your name.

9          MR. POHL:  I'm sorry.  My name is Steven Pohl,

10  I'm with Brown Rudnick and we represent the recently formed

11  Trade Claims Consortium that was referenced earlier by

12  Debtors' Counsel.  We filed a Joinder --

13          JUSTICE NEWBOULD:  Sir, you -- I'm sorry, the

14  feed coming from the U.S. is -- cuts out all the time.  You

15  represent who?

16          MR. POHL:  And I'm going to back up.  Can you

17  hear this?  Can you hear this, Your Honor?

18          JUSTICE NEWBOULD:  I can't hear a word.

19          MR. POHL:  How about from this microphone?

20          JUSTICE NEWBOULD:  That's better.

21                      (Laughter)

22          MR. POHL:  Okay.  The left side seems to be

23  better.  We represent the newly formed Trade Claims

24  Consortium.  And we filed a Joinder which is why I stand.

25  You hear me so far?

1              JUSTICE NEWBOULD:  You represent Trade Claimants?

2              MR. POHL:  Yes, Your Honor.  We represent a

3  Consortium that has approximately $125 million of U.S. non-

4  funded debt unsecured claims.  So that would be employee

5  claims.  That would be trade claims of suppliers and the

6  like.  Some held by original holders of the claims like

7  employees that are still holding their claims today.  Others

8  held by what we know to be trade claim buyers.  I see the

9  video feed is cutting out, but can you hear me in Toronto?

10             JUSTICE NEWBOULD:  Yes.  I've just been handed

11 your Joinder.

12             MR. POHL:  So we're here today just to make a

13 couple points, not to repeat what others have said, and to

14 try to put a little bit of a face on what we believe are the

15 Creditors here in the U.S. that probably took the largest

16 hit, if you will, from the Allocation Decisions.  Like I

17 said, we have former employees.  And to be specific, we only

18 have three of them in our Consortium.

19             There are three of the many former employees that

20 own claims, severance claims, pension claims, many of whom,

21 specifically those in our group, that worked for Nortel for

22 anywhere from 20 to 35 years.  And in our group

23 specifically, we have a husband and wife that both worked

24 there, the Wilson's, and we have Mr. Wilfred Cameron.  And

25 those folks, some of them, are continuing to work in their,

1   you know, retirement years in their mid-70's to late 70's

2   because of this case, largely.

3           We also represent from our 29 team statement,

4   it's obvious, we represent those that buy in the secondary

5   market.  Some that bought employee claims and some that

6   bought basic trade supplier claims.  There's probably some

7   $250,000 to $300,000 million.  The others in this room that

8   are much better at this than I, because they've been in the

9   case for six years, would be able to tell you better, but

10  there's probably some $200,000 to $300,000 million of U.S.,

11  non-funded debt, unsecured claims other than PBGC type

12  claims, IRS claims, that could have some flavor of priority

13  or administrative claim to it.  These are pure unsecured

14  claims.

15          And Judge Gross, you asked a question earlier

16  about what's the impact, I believe, of adding a $4 billion

17  U.S. claim.  And again, there's others with FA's that have

18  run models that went to the trial, but in round numbers, we

19  believe that the U.S. trade takes about a $.25 hit in their

20  recovery, $.25 on the dollar.  By excluding the $4 billion

21  bond guarantee claim from the Allocation.

22          So again, in round numbers, and these numbers

23  obviously are impacted with some assumptions based upon

24  where does the UK Pension claim come in, $3 billion, $2

25  billion, a different number, but in round numbers, and

1   including U.S. cash, and including what administrative

2   claims are pretty well known to be in the U.S., there's

3   probably a $.40 to $.45 recovery under the Decision for U.S.

4   trade, if the bond guarantee claim does not show up in the

5   Allocation.  I think that recovery probably goes up to $.65

6   or $.70, round numbers again, subject to assumptions, if you

7   add in the bond guarantee to the Allocation.  And I believe

8   that number can change quite a bit, depending on people's

9   assumptions on, again, the UK guarantee and, you know, I

10   won't get into the other things that the Masters of the

11   Universe have published over the years.

12            That recovery, obviously, can have a pretty

13   significant impact.  Some might argue less so on

14   sophisticated hedge funds, but, you know, they are entitled

15   to their legal entitlements.

16            JUSTICE NEWBOULD:  Excuse me, you cut out, I'm

17   sorry.

18            MR. POHL:  Okay.  I was -- I said, I'm sorry,

19   that that kind of a reduction in recovery, can have a very

20   significant impact, you know, more sympathetically, I would

21   say, to those who are former employees maybe living on a

22   lower lifestyle than hedge funds, but this is not about just

23   sympathy, this is about legal entitlements, which is what I

24   wanted to get to next.  I want to get to the specific points

25   that we want to make, not to repeat what's been said as to

1  the Decision.

2          And the way we read your Decisions, you wanted to

3  stay away from substantive consolidation for reasons well

4  understood.  And in my mind, I think of that as the pure pro

5  rata.  Sub con, pure pro rata, the same thing.  So you've

6  got to do something to adjust that legal treatment to go

7  away from sub con to something that you think is more

8  appropriate.  And the topic of guarantee and intercompany

9  claim --

10          JUSTICE NEWBOULD:  You're -- it's cut out again.

11          MR. POHL:  The topic of guarantee, can you hear

12  that, Your Honor?  The topic of guarantee and intercompany

13  claim are packed into sub con all the time.  Why?  Because

14  they disappear.  And in sub con, they disappear.  It's no

15  different than financial statement consolidation.  We look

16  at one set of financials, all the subsidiaries disappear.

17  Therefore, guarantees disappear, intercompany claims

18  disappear.  That's easy to understand.  It's logical.  It's

19  the commercial world.  It's the sub con world when it

20  applies.

21          However, the Court's decided that we should step

22  away from sub con and do something different.  And the

23  trouble we have with the Decision and why we think there is

24  an injustice, and because of the size of the injustice

25  manifest is the treatment differently of guarantees and

1    intercompany claims.  Because both serve the same ultimate

2    purpose when we sit in a room and we try to figure out what

3    recoveries are.  They move value from one Estate to the

4    other.  That's what intercompany claims do.  Guarantees give

5    a Creditor a shot in more than one place.  So the effect is

6    to give a Creditor a recovery from an Estate that's not its

7    primary Creditor.  Value moving around.

8              So how can it make sense?  This is what we

9    struggle with, the logic, the theory, even the legal

10   support, for including one and not the other, if the goal as

11   we read it from the Decisions is to find fairness, find a

12   middle ground between the extremes, and critically recognize

13   separateness.  How can you recognize separateness by

14   recognizing intercompanies and ignoring guarantees?  It just

15   is not square.

16             Others have talked about, you know, the low

17   Allocation to the U.S. from the Lockbox --

18             JUSTICE NEWBOULD:  You're cutting out there, too.

19             MR. POHL:  Hello, hello, can you hear?

20             JUSTICE NEWBOULD:  We can.

21             MR. POHL:  Others have talked quite a bit about

22   the low Allocation of the U.S. and have focused on the

23   massive dilution to the U.S. trade non-bonds by the

24   inclusions in the U.S. pool at plan time and -- but the

25   exclusion from the Allocation.

1         So I think it's easy to understand and I don't

2    need to repeat that any further.  I only want to highlight

3    the, sort of the overall unfairness of the notion of taking

4    a relatively healthy U.S. Debtor, letting its credit be

5    borrowed by Canada, so that it can get its bonds issued,

6    burdening the U.S. Estate with that guarantee.

7         JUSTICE NEWBOULD:  Yeah, that's not working.  We

8    can't -- I -- we can't hear.

9         MR. POHL:  How about if I move to my right?

10                        (Laughter)

11        JUSTICE NEWBOULD:  Well, it seems that back-and-

12   forth, I suppose left to right --

13                        (Laughter)

14        JUSTICE NEWBOULD:  -- I followed your argument.

15   I just read your written Brief and I assume that what you're

16   doing is just summarizing points in your Brief and if that's

17   the case, I won't keep stopping you.

18        MR. POHL:  Okay.  Then I think that's my cue to

19   kind of move it along and not repeat what I've written.

20                        (Laughter)

21        MR. POHL:  I think I've got that.

22        JUSTICE NEWBOULD:  No, no.

23        MR. POHL:  So I'm going to do that.  I'll make

24   one final point.  And that is the argument -- and this is in

25   a footnote, so it is in my Brief, but I would like to at

1  least bring it up so that it resonates.

2              The argument we're making about --

3              JUSTICE NEWBOULD:  Which footnote?  Which

4  footnote?

5              MR. POHL:  I'm sorry, I'm going to look at my

6  Brief and I'm going to tell you.

7              JUSTICE NEWBOULD:  Yeah.

8              MR. POHL:  It is Footnote #8 --

9              JUSTICE NEWBOULD:  8.

10             MR. POHL:  -- Justice Newbould.

11             JUSTICE NEWBOULD:  Thank you.  Thank you.

12             MR. POHL:  So the most vehement supporter of the

13 Decisions, because they benefit a lot, include the UK Joint

14 Administrators.  They'd love to live with the guarantee

15 Decision here, but they step into the proverbial you-know-

16 what, when they make another argument that forces them to

17 buy into exactly the argument we're making here.  And that

18 is, and I'm going to look at my footnote, and I'm now going

19 to ignore my notes, which were lousy and difficult to read

20 anyway.

21                        (Laughter)

22             MR. POHL:  And they say in addressing similar

23 context, but they're talking about intercompanies, they're

24 not talking about guarantees, they say quote -- well, before

25 the quote.  They say, how can you exclude from the

1  Allocation pool, a claim when that claim "gives rise to a

2  real liability and entitles" now I'm going to paraphrase,

3  the holder of that claim to a recovery?  That's the exact

4  same quandary that results from the Decision to exclude the

5  $4 billion guarantee.  So we're not the only ones

6  highlighting that.  The supporters of your Decisions that

7  are walking way with more funds than others, say the same

8  thing.

9      So, my final point is to just note again that

10 there's a lot of people that will be significantly impaired,

11 if you will, by a $.40 to $.45 recovery when that recovery,

12 we believe, is not supported by even the logic that the

13 Court wants to apply in the selected pro rata approach.

14     With that, I'm finished and I thank you for your

15 time.

16     THE COURT:  Thank you, Mr. Pohl.

17     JUSTICE NEWBOULD:  I read your Brief that you

18 folks haven't had a whole lot of money to spend like others

19 as to what the situation is, but are you able to speak to

20 what percentage recoveries are going to occur in the other

21 Debtor Estates other than the U.S. Estate so far as the

22 kinds of Creditors that you speak on behalf of?

23     MR. POHL:  I'd rather not speak out of turn,

24 Justice Newbould because I don't have those numbers.  I bet

25 there's probably someone in this room that could answer your

1    question, but if I took a crack at it, it might show up on

2    Reorg Research, and in the press, and that would be bad

3    because I don't know the answer, so I apologize.

4                    JUSTICE NEWBOULD:  Okay, thank you.

5                    THE COURT:  All right.  I think that is all in

6    terms of parties who are favoring the Motion for Reargument.

7    And I think it might -- would this be an appropriate time

8    for a break, Justice Newbould?

9                    JUSTICE NEWBOULD:  That's fine.  And do I

10   understand, Judge Gross, that you have a 12:15 commitment?

11                   THE COURT:  I do.

12                   JUSTICE NEWBOULD:  All right.

13                   THE COURT:  It will take from 12:15 until around

14   1:15.

15                   JUSTICE NEWBOULD:  All right.

16                   THE COURT:  So --

17                   JUSTICE NEWBOULD:  All right.  So this is fine

18   for break.  What do you want, 15 minutes, 20?  How long?

19                   THE COURT:  That would be fine, 15 minutes.

20                   JUSTICE NEWBOULD:  Fifteen minutes.

21                   THE COURT:  All right.  We're take a break.

22   Thank you, everyone.

23   (Recess from 10:39 a.m. to 11:02 a.m.)

24                   JUSTICE NEWBOULD:  Justice Newbould, Mr. Coleman,

25   good afternoon -- good morning.

1              MR. COLEMAN:  Good morning, Your Honor.  Ken

2    Coleman of Allen & Overy on behalf of the Canadian Debtors

3    and Ernst & Young, Inc., as the Monitor.  Good morning,

4    Justice Newbould.

5              Your Honor, we objected, but I've got to say, I

6    did enjoy the reunion this morning of the Nortel Trial Class

7    of 2014.

8                        (Laughter)

9              JUSTICE NEWBOULD:  Yes, yes.

10             MR. COLEMAN:  And if we keep this up, perhaps

11   someone can have a newsletter to keep us posted on --

12                        (Laughter)

13             MR. COLEMAN:  -- various events in there -- in

14   each other's lives as we march forward in this process.

15             Your Honor, our clients are interested in

16   distributing cash to Creditors as quickly as possible.  We

17   have no incentive for delay.  We believe the quickest path

18   to getting to that goal is the one the Court said they

19   preferred.  And that is establish processes now for the

20   resolution of claims in the three Estates, get on with that

21   process, resolve what the parties can resolve, bring the

22   balance to the Courts for resolution, distribute the cash,

23   close the cases.

24             The slow path, we believe, is the one that we

25   will be on if the Court's grant these Motions.  We will

1   necessarily have to deal with these issues on a piecemeal

2   basis with each party coming back with their special

3   interest, pulling at the parts of the Opinions that affect

4   them the most or favor them the most.  And at some point,

5   what these Courts accomplished, which is two consistent

6   Decisions which are vitally important to the progress of

7   these cases, at some point, after all of the pulling at the

8   various strings, as we reset the clock each time there's a

9   Reconsideration Motion, we will unravel what these two

10  Courts accomplished.

11         And EMEA has candidly told us in their papers,

12  that they will be compelled, and frankly, you couldn't blame

13  them, to do that very thing.  If the bond claim counts more

14  than once, they say, well the UKPC claim ought to count

15  multiple times.  And I think it's important to note that

16  these are not the only claims in the cases that can be

17  asserted against multiple Debtors.

18         As the UKPC noted in their objection, this case

19  is a perfect example of why the standards for

20  Reconsideration are so high.  We can't afford the time or

21  the money to relitigate these issues.  And the standards,

22  those high standards for Reconsideration should be applied

23  here to deny the Motions and we should move on.  As Your

24  Honor stated in your Opinion, it's time to implement the

25  Decisions.  And if parties want to appeal them, well then

1   appeal them.  As we urged, if there's going to be an appeal,

2   let's go for U.S. purposes directly to the Third Circuit on

3   an expedited basis and let's let the claims process continue

4   during any appeal so that --

5         THE COURT:  Isn't this an Interlocutory Opinion?

6         MR. COLEMAN:  Well, we think it is.  And we

7   think, you know, whether or not it's interlocutory or final,

8   and there is some debate about that, we think that the Third

9   Circuit can hear it.  And we think that the claims process

10  ought to continue.

11        The May 12 Decisions, they set out the principles

12  for Allocation.  The Courts took the time to carefully

13  consider the record that was established during a full year

14  before the trial and throughout the trial that occurred last

15  summer.

16        Judge Gross, in your Opinion, you were quite

17  candid.  You said that you read and re-read the parties

18  Briefs.  You carefully considered their positions.  You also

19  said that you toiled mightily to reach a conclusion that was

20  consistent with the record.

21        The U.S. Debtors' Motion and the Joinders to that

22  Motion are inconsistent with the record.  Not only do they

23  rely on Mr. Britven taken out of context and otherwise

24  modified in various ways to suit their needs, but they seem

25  to forget that in their Motion to strike his evidence, they

1  put squarely in the frame, some of the very elements that

2  the Court's identified as comprising modified pro rata.

3          An example.  If you look at the U.S. Debtors'

4  Pre-Trial Brief.  And that is at Docket Entry 13542.  They

5  tried to have Mr. Britven's evidence excluded on the basis

6  that "calculations failed to account for, among other

7  things, differences in the amount of treasury cash held by

8  Debtors within each Nortel Debtor Group", that was cash on

9  hand.  Priority claims specific to the individual Debtors,

10 inter-estate claims, including NNI's $2 billion allowed

11 claim against NNC, certain claims by the guaranteed

12 Bondholders against the U.S. Estate, claims by the IRS

13 against the U.S. Estate, and the assumed guarantee claim by

14 the UK Pension Trust against the Canadian Debtors.

15 Interesting, how many of those components wound up in the

16 modified portion of modified pro rata.

17          They're raising the very same issues now.  So in

18 the Pre-Trial Brief, they raised it.  It's fair game for

19 litigation.  They lost.  Your Honor accounted for those

20 items and now they're raising them again.  They were also

21 dealt with in the Official Committee's cross examination of

22 Mr. Bazelon.

23          Now you, Judge Gross, you concluded that modified

24 pro rata was the most acceptable.  And reading your Opinion,

25 and I read it and reread it multiple times as you read and

1  reread the parties' Briefs multiple times, you reached that

2  conclusion because you concluded it was based on the record.

3  Not because you believed it achieved a pari passu

4  Distribution.  You were very clear about that.  And not

5  because it achieved some other mathematical middle ground.

6  You were clear about that as well.  You reached that

7  Decision because it was based on the record.  And it is

8  based on the record that you took the time to understand.

9           The issues that they're now raising, the U.S.

10  Debtors and those that join in that Motion, that would

11  unravel these two consistent Opinions, were on the table

12  during the trial and should not be relitigated now.

13           The Opinions are very clear and definitive on

14  fundamental principles.  This is pro rata with very defined

15  exceptions.  One, cash on hand is excluded.  Intercompany

16  claims are included.  Claims that can be made against more

17  than one Debtor are recognized only once, specifically,

18  mentioning the bond guarantee and the UKPC claim.  Specific,

19  nothing ambiguous about those statements whatsoever.  It

20  could not be clearer.  And given the time and the attention

21  that the two Courts invested in this, we believe that these

22  statements were deliberate.  They were not inadvertent.

23  They were not unintended.  And they were not the result of

24  oversight.

25           This newly formed Committee of Bondholders and

1   Other Unsecured Creditors, they make an interesting point in

2   their papers.  They say, you know, we don't have financial

3   advisor and, frankly, and I'm paraphrasing here, you don't

4   really need a calculator to understand what happens here.

5   And today, they say it's easy to understand the effect of

6   the No Double Counting Rule.  You don't need a calculator.

7   You don't need the fuzzy math that's appended to the

8   Motions.  And at the end of the day, the result is to the

9   trade in the U.S., they say, $.40 to $.45.  Now, when you

10  look at the scheme of things and you do look at the math,

11  how can you conclude that that's manifestly unjust?  It's

12  manifestly different from what they hoped for, but it's not

13  manifestly unjust.

14          So given the time and attention, and given the

15  obvious nature of the impact here, it is just not plausible

16  to say that these Opinions are the result of oversight or

17  inadvertence, or in some way, the Court's misapprehended

18  something or other.  It was a deliberate set of conclusions

19  based on the record.

20          And by the way, this is not the first time the

21  U.S. Debtors have claimed harm and prejudice by this.

22  Again, in the --

23          UNIDENTIFIED SPEAKER:  Justice Newbould is trying

24  to -- his mike is off.

25          MR. COLEMAN:  Oh.  Sorry, Justice Newbould, my

1    lip reading capacity is non-existent.

2              UNIDENTIFIED SPEAKER:  It's his microphone --

3              UNIDENTIFIED SPEAKER:  His mike's not on.

4              MR. COLEMAN:  Your microphone is off, Justice

5    Newbould.

6              THE COURT:  We're still not hearing, Justice

7    Newbould, I'm sorry.

8              UNIDENTIFIED SPEAKER:  It's turned off.

9              JUSTICE NEWBOULD:  No, still didn't.

10             UNIDENTIFIED SPEAKER:  It's like watching a

11   silent movie.

12             THE COURT:  Try your microphone, turning on your

13   microphone.

14             MR. COLEMAN:  It looks like an early lunch.

15             THE COURT:  Yeah, it could be.

16             MR. COLEMAN:  Unless he said Motion denied.

17                       (Laughter)

18             UNIDENTIFIED SPEAKER:  An even earlier lunch.

19             UNIDENTIFIED SPEAKER:  It's clearly on the

20   system, not his physical mike.  That's why it says

21   microphone off --

22             UNIDENTIFIED SPEAKER:  The tech in Canada is

23   wondering if we're mute here instead of --

24             UNIDENTIFIED SPEAKER:  No, it says microphone off

25   at the other side.

1          UNIDENTIFIED SPEAKER:  No, I understand that, but

2    he's also wondering despite that whether --

3          UNIDENTIFIED SPEAKER:  That's fine.

4          UNIDENTIFIED SPEAKER:  -- we're on mute in terms

5    of hearing them.

6          UNIDENTIFIED SPEAKER:  Yeah, and so I've got an

7    email saying Justice Newbould is content for Mr. Coleman to

8    go ahead and he'll ask his question later.

9          THE COURT:  All right.  Go ahead, Mr. Coleman.

10          MR. COLEMAN:  Is that fine?

11          THE COURT:  Yes, that's fine with me.

12          MR. COLEMAN:  This is not the first time that the

13    U.S. Debtors have claimed prejudice as a result of this

14    formulation for Allocation. Again, in their Pre-Trial Brief,

15    they argue "further, even if a "modified" substantive

16    consolidation approach is adopted by the Courts, as

17    seemingly advocated by the UKPC and intercompany and

18    guarantee claims are recognized, General Unsecured Creditors

19    in the United States will be severely harmed."  So that,

20    too, was on the table and part of the record.

21          THE COURT:  I think you're back live, Justice

22    Newbould.

23          JUSTICE NEWBOULD:  Intermittently.

24                    (Laughter)

25          THE COURT:  Yes.

1              JUSTICE NEWBOULD:  Okay.

2              MR. COLEMAN:  Did you have a question, Justice

3   Newbould?

4              JUSTICE NEWBOULD:  Well, the -- can you hear me

5   now?

6              THE COURT:  Yes.

7              MR. COLEMAN:  I can, very well.

8              JUSTICE NEWBOULD:  All right.  The question I

9   wanted to ask was something you said a minute ago about the

10  double claims.  And it's been contended today by the U.S.

11  Debtors, that the UKPC has a claim that's been accepted in

12  Canada for 330 some odd million pounds.  If there is not to

13  be double reclaiming for the Allocation purposes, should the

14  NNUK's Allocation amount, the UKPC's claim against NNUK for

15  Allocation purposes, be reduced by that 330 some odd million

16  pounds?  That's my question.

17             MR. COLEMAN:  Well, yeah, Your Honor, I think

18  that there's -- I think there's a couple of answers to that.

19  First, in the context of these Motions for Reconsideration,

20  those exceptions to pro rata with respect to the bond

21  guarantee and the UKPC claim were specifically set out in

22  the Opinion.  So the remedy is not to try to create a new

23  record on those issues.  The remedy is to appeal it.  Right?

24             Secondly, those are separate claims.  They are

25  contractual and they are not based on the financial support

1  directive.  And I think that --

2           JUSTICE NEWBOULD:  No, that's not right.  The 300

3  -- oh, I beg your pardon.  I beg your pardon. You are right,

4  it's on a --

5           MR. COLEMAN:  I think that's my answer to that,

6  Your Honor.

7           Now, so that, again, the main point here is that

8  the Opinions on those issues, the No Double Counting Rule

9  were clear and deliberate.  And the same is true for the

10  DiamondWare and NGS issue.  Those were assets that were sold

11  in a multi-seller transaction as part of the enterprise

12  business.  The proceeds were deposited in Lockbox.  The U.S.

13  Debtors used Mr. Green's evidence to argument that these

14  were owned by the U.S. and valued separately and they should

15  be taken off the top and paid to them.

16           Now, Mr. Green's evidence was in the context of

17  supporting the ownership theory that we advocated and that

18  we are disappointed we did not prevail on.  Mr. Green also

19  separately valued, and this is important, Mr. Green also

20  separately valued other non-IP assets.

21           So again, there is like the guarantee and the

22  UKPC claim, there are other claims that might be asserted

23  against multiple Debtors.  Here, just based on Mr. Green's

24  evidence, there are other assets that were separately valued

25  in the context of the ownership theory.  So more opportunity

1  for a flood gates effect for people to come in and say,

2  well, how about my asset on Mr. Green's schedule that was

3  separately valued?

4          The fact of the matter is that both Courts

5  rejected ownership as a basis for Allocation.  And Judge

6  Gross, you said very clearly, no one Estate is entitled to

7  any particular asset.

8          Now the other item in connection with NGS is the

9  U.S. Estate points to the fact that cash was paid out after

10  that transaction, $53 million of cash was paid out to NNI.

11  And they say that establishes the "universal understanding"

12  that NGS belonged to the U.S. Estate.  Well again, the

13  record says otherwise.  That cash was paid pursuant to a

14  Settlement Agreement dated September 8, 2011.  And that

15  agreement is part of a trial record, TR-44193.  There's a

16  couple of paragraphs there that are of note.

17          One is the paragraph pursuant to which the $53

18  million was paid out.  That's Paragraph 6(a).  And that $53

19  million payment is defined as the NNI cash reimbursement.

20  Paragraph 6(a) concludes with a statement that the NNI cash

21  reimbursement shall have no precedential impact on the

22  ultimate Allocation of the enterprise escrow funds to any

23  depositor.  Now in case that wasn't clear enough that it

24  doesn't matter --

25          JUSTICE NEWBOULD:  Just -- what were those words

1   again?

2          MR. COLEMAN:  The -- this is Paragraph 6(a) of a

3   document --

4          JUSTICE NEWBOULD:  Yeah.

5          MR. COLEMAN:  -- that is at Trail Record 44193.

6          JUSTICE NEWBOULD:  Yes.

7          MR. COLEMAN:  It's a Settlement Agreement dated

8   September 8, 2011.

9          JUSTICE NEWBOULD:  But you were just quoting from

10  the last part of that sentence.

11         MR. COLEMAN:  And the last sentence of 6(a) says

12  the NNI cash reimbursement, which is the defined term

13  meaning the $53 million, shall have no precedential impact

14  on the ultimate Allocation of the enterprise escrow funds to

15  any depositor, the depositors being the parties that have

16  been before you for all these many days, weeks, months, and

17  now years.

18         Now to reinforce that, we have a more generalized

19  reservation of rights in Paragraph 4(a) which says that

20  nothing in this agreement will bar, prohibit, or in any way

21  hinder or enhance the rights of any of the parties to this

22  agreement to present any arguments, methodologies, or legal,

23  or factual theories in support of a proposed Allocation of

24  the proceeds.  It will not be deemed to determine, justify,

25  support, or have any impact whatsoever on the Allocation of

1  the sale proceeds.  So the payment of the $53 million does

2  not establish anything.  And the U.S. Debtors and all of the

3  other Debtors agreed that it would have no bearing on

4  Allocation, which the U.S. Debtors now say it does.

5          Now the other thing that is sort of amazing, but

6  it's happened.  The other thing that the U.S. does here is

7  they actually try to disconnect the component parts of

8  modified pro rata.  It's not a term that's hyphenated in

9  your Opinions.  It's not a term that's set off by any

10 punctuation whatsoever.  Modified pro rata, it's a unified

11 thing.  They try to disconnect it.  And they want you to

12 ignore the fact that you're Opinion says keep your cash,

13 keep your $2 billion claim.  Now they surely want to keep

14 those things, but they also want a larger slice of the

15 Lockbox.  Because they say this was just about the Lockbox.

16 But, of course, the record says otherwise.

17         Now, I think other parties may have more to say

18 about this, but you don't have to look any further than the

19 CCC's pro rata theory.  Their Pro Rata Allocation

20 Methodology was premised on taking into account the cash on

21 hand and using the Lockbox to top off.  Now, they were

22 advocating a strict pro rata, ultimately, which Your Honor's

23 rejected pari passu, but cash on hand was part of the

24 litigation, part of the record.  Mr. Baselon also spoke to

25 cash on hand.

1          So this morning, when Mr. Rosenthal said, look,

2    if you called it something else, we wouldn't have a problem.

3    You did call it something else, you called it modified pro

4    rata.  It's not pari passu.  It's not full substantive

5    consolidation.  You called it something else and you defined

6    what that something else is by setting out its component

7    parts.  So this is not just about the Lockbox, it never has

8    been just about the Lockbox.

9          At the end of the day, even using their numbers

10   and adjustments, and the record they're trying to create

11   now, it cannot be said that there's an injustice here, much

12   less a manifest --

13          JUSTICE NEWBOULD:  No, I can't hear you now.

14          THE COURT:  How about now?

15          MR. COLEMAN:  How about now?

16          JUSTICE NEWBOULD:  Yes.

17          MR. COLEMAN:  It cannot be said --

18          JUSTICE NEWBOULD:  You said using their figures.

19          MR. COLEMAN:  Using their figures, it cannot be

20   said that there's an injustice here, much less a manifest

21   injustice.  And the comments from Mr. Pohl on behalf of this

22   new committee that, well, the U.S. GUC's are going to get

23   under this, if we leave it alone, between $.40 and $.45.

24   How can that be manifestly unjust?  How is that possible?

25   It's again, manifestly different from the expectations that

1  some of the parties had, but it is not manifestly unjust

2  when you look at the numbers.  But more importantly, Your

3  Honor's concluded that it was the most appropriate

4  methodology for Allocation based on the record.

5         Now once again, the U.S. Debtors resort to Mr.

6  Britven with whom they seem to have this complicated and

7  somewhat ironic history.

8                   (Laughter)

9         MR. COLEMAN:  They say in their reply and they

10  said again today, that Mr. Britven even believes this is

11  inequitable and unjust.  But when you look at Mr. Britven's

12  Deposition and trial testimony, of course, the man was

13  talking about a pure, Pro Rata Distribution.  He was -- his

14  formulation of the Pro Rata Allocation Theory, called for

15  the bonds to be played -- to be paid only once.  And his

16  model had that payment coming out of Canada.  When asked,

17  well, what if it comes out of the U.S.?  Well, naturally, in

18  order to achieve the Pro Rata Distribution figure, the money

19  needed to be in the U.S.  That is what his testimony is.

20  They're re-writing the record that you took the time to

21  understand and you crafted an Allocation Methodology that

22  fits the record.

23         The other matter that is clear from these

24  Opinions is that the Courts were not dealing with all of the

25  issues.  You were not purporting to solve all of our

1    problems on May 12.  Judge Gross, you said that in effect,

2    the size and details of the claims pools are not known and

3    not knowable now.  You did not purport to determine that.

4    You did not purport to determine the issues that might be

5    relevant to making a determination of which claims are in

6    and which claims might not be in.  You directed the parties

7    to instead, submit proposals for an expedited claims

8    resolution process.  And it is through that process that

9    these issues of claims and settlements, and the rest of it,

10   can be resolved in an orderly fashion.  We do not, should

11   not, and cannot, hold up these Opinions and the process that

12   may well flow in the Appellate Courts in order to try to

13   deal with all of these things now.

14          The problem with trying to solve a few of these

15   issues now in this context of Motions for Reconsideration is

16   that you may force all of the other parties to go back and

17   try to deal with their particular claims and settlement

18   issues and come back and file another Motion because don't

19   forget, each time you do this, you reset the clock, and

20   another Motion can be filed within that period.  This will

21   delay the case, leave the Opinions in a state of limbo.

22          Now there's a few other items and then I'll turn

23   it over to Mr. Zarnett in Toronto.  Meaning of the phrase,

24   Debtor Estates.  We assumed that you meant the groups that

25   have been before you and the manner in which this whole case

1   has been presented to the Courts from the beginning.  Mr.

2   Rosenthal agreed that that's how the cases have been

3   litigated by the three Debtor Estates.  In terms of your

4   Opinion, Judge Gross, the first indication of that is on --

5           JUSTICE NEWBOULD:  Yeah, we hear silence.

6           MR. COLEMAN:  I'm sorry, Justice Newbould.  Is

7   that -- can you hear me?

8           JUSTICE NEWBOULD:  Yes.

9           MR. COLEMAN:  Okay.  The -- I'm talking about the

10  definition of Debtor Estates and whether it's --

11          JUSTICE NEWBOULD:  Right.

12          MR. COLEMAN:  -- three or 43.  The first

13  indication from Judge Gross's Opinion is at Page 3, Footnote

14  6, where you make the distinction between relevant corporate

15  entities, C and E of corporate entities, being lower case on

16  the one hand.  And the Debtor Estates, capital D, capital E,

17  to which each of those corporate entities belongs on the

18  other hand.

19          So clearly, there's a distinction between the

20  multitude of companies subject to the three insolvency

21  processes and the term, Debtor Estates.  The latter being

22  the one into which those companies are grouped and the

23  groups that have presented all of this evidence before you.

24          The next indication of what that means is on Page

25  44 of Judge Gross's Opinion, where -- and it's Page 44, it's

1  the second paragraph, where you, Judge Gross, talk about the

2  task before the Courts as an Allocation of the assets among

3  the three Estates, i.e., the U.S. Debtors, the Canadian

4  Debtors, and the EMEA Debtors.

5         Page 103, somewhat less helpful, but certainly

6  supportive of this concept, you talk about no Estate, U.S.

7  Canada, or EMEA was able to raise its position above the

8  others.

9         Page 112, Paragraphs 5 and 6, where you say, once

10  the claims are resolved, the amount in the Lockbox will be

11  divided by the total claims in each Estate with a capital E.

12  And then in Paragraph 6 you say, right after that, you say,

13  the U.S. Estate, presuming you're meaning the collection of

14  U.S. Debtors, will propose Distribution.  So again, thinking

15  about it in terms of groups.

16         Last, the Order itself.  Your Order, Judge Gross,

17  itself.  Paragraph 2(d) as in David, where you say, the

18  Debtor Estates, capital D, capital E, in parenthesis (i.e.,

19  the Canadian Debtors, the U.S. Debtors, and the EMEA

20  Debtors).  Again, fully consistent with where we started

21  which is Footnote 6 on Page 3.

22         So we think that that's what you meant.  We were

23  surprised, frankly, that there was debate about that.

24         JUSTICE NEWBOULD:  Mr. Coleman?

25         MR. COLEMAN:  Yes, sir.

1              JUSTICE NEWBOULD:  Can I ask you a question?

2              MR. COLEMAN:  Of course.

3              JUSTICE NEWBOULD:  How does an Allocation amongst

4    the three Estates as you say they are, how would that square

5    with the provisions of the IFSA under which there were 39

6    some odd, I think, companies of party, who under that

7    agreement are entitled to -- each are entitled to an

8    Allocation.

9              MR. COLEMAN:  Yeah.

10             JUSTICE NEWBOULD:  How does it square with IFSA?

11             MR. COLEMAN:  Well, I think that the -- I think

12   this is a very important question.  And I think it ties

13   Allocation and claims resolution among the -- within the

14   groups and ultimate Distribution enclosure all together in a

15   fairly neat bundle.  We think that Allocation should be to

16   the group.  And then it should be up to the Court, the

17   relevant Court with jurisdiction, principal jurisdiction

18   over that group to conduct the further Allocation, as well

19   as, resolution of the intercompany claims within that group

20   in order to effect, ultimately, a Distribution.

21             Now that is not to say, that is not to say, that

22   parties outside that group are not protected.  They will

23   have their rights and their standing to protect themselves

24   in those proceedings with respect to both the issues of

25   further Allocation and intercompany claims allowance within

1  the group --

2           JUSTICE NEWBOULD:  Lost you.

3           THE COURT:  Go back.

4           MR. COLEMAN:  The point I was trying to make,

5  Justice Newbould is that Creditors in other groups will have

6  their rights of standing and the right to be heard in those

7  other proceedings with --

8           JUSTICE NEWBOULD:  Well, are you suggesting, are

9  you suggesting that -- you say that the relevant Court can

10 make further Allocations.

11          MR. COLEMAN:  Correct.

12          JUSTICE NEWBOULD:  Are you suggesting that the UK

13 Court and the UK administration proceedings make an

14 Allocation Decision based upon the amount that you say goes

15 to EMEA?

16          MR. COLEMAN:  A further Allocation.  There's an

17 initial Allocation from the Lockbox that goes to each of the

18 three principal groups.  And from that, a Sub-Allocation, if

19 you will.  And we leave that to each of the local

20 jurisdictions.  And the principal benefit to that, and I

21 just want to add a quick footnote to this, is that Judge

22 Gross, I think everybody is mindful of what you had in your

23 Opinion with respect to looking over the shoulder of the

24 Judge presiding in the other proceeding.  That's a matter to

25 be addressed for sure.  But I think that we are talking

1    about civilized jurisdictions here.  We are not talking

2    about renegade jurisdictions who are going to steal the

3    money.  People have rights to be heard.  These are Common

4    Law jurisdictions, at least the UK proceeding is.  And I

5    think that the hysteria about this is overblown.  Now, the

6    main benefit --

7              JUSTICE NEWBOULD:  Well, can I ask you a further

8    question, Mr. Coleman?

9              MR. COLEMAN:  Sure.

10             JUSTICE NEWBOULD:  Can you hear me?

11             MR. COLEMAN:  I can.

12             JUSTICE NEWBOULD:  Thank you.  I haven't looked

13   recently at the Allocation Order that under which these

14   Courts are deciding Allocation, but would it be within the

15   terms of that Order to have a secondary Allocation made by

16   other Courts?

17             MR. COLEMAN:  It seems to me, that if we

18   understand the Courts correctly, that Debtor Estates means

19   the groups and you allocate to each of the three groups and,

20   Your Honor -- and both Courts sign off on that, I think that

21   Order is, and that procedure is respected.

22             The point I want to make about this process, both

23   in terms of the further Allocation and the intercompany

24   claims resolution within the group is it has a very

25   important benefit for the parties.  It allows the three

1 parties, the three main Estates, to separate from each other

2 at the earliest possible date.  The two obvious benefits

3 that flow from that, we save time.  And just look at this

4 hearing, we can't even hear each other.  We save time, and

5 therefore, we save potentially an enormous amount of further

6 administration expenses where we have to do things in

7 multiple Courts simultaneously or seriatim.  So it has the

8 clear benefit of letting each Estate get on with the

9 business of resolving itself.

10         And I might in that regard, that while a fair

11 amount of work has been done on intercompany claims across

12 groups, not much work has been done on intercompany claims

13 within groups.  And to hold up this process of Allocation,

14 Distribution, and closure while we wait for all of that to

15 happen in each of the Estates is a burden that I don't think

16 all of us need to sign up for.

17         I want to make a quick comment about the tax

18 claim.

19         THE COURT:  Yes.

20         MR. COLEMAN:  It is a Post-Petition expense of

21 administration.  There's no doubt about it.  It is just like

22 the legal fees that Mr. Rosenthal acknowledged are out of

23 the calculation.  It may even be less than the aggregate

24 amount of Post-Petition legal fees incurred across the

25 entire spectrum of these proceedings in these different

1    Courts.  The Opinions are based on a record which relates to

2    how the entities operated Pre-Petition, the cost and

3    expenses of the various proceedings should be excluded.  And

4    again, we can't hold up resolution of each of these Estates

5    while we wait for each Estate to resolve all of its expenses

6    of administration.

7            So, where I'd like to end, Your Honors, is the

8    Court's reached consistent results.  And for the reasons,

9    Judge Gross, that you articulated in your Opinion, it is

10   vitally important that we hang on to that consistency.  You

11   shouldn't allow the parties to pull at the pieces, build out

12   new things, and encourage people to come back and build out

13   their own new things because we'll all take a giant step

14   backwards if that were to happen.  The standard for this

15   proceeding is very high.  It hasn't been met.  We should

16   move on.  Thank you very much.

17           THE COURT:  Thank you, Mr. Coleman.

18           JUSTICE NEWBOULD:  Mr. Zarnett?

19           MR. ZARNETT:  Good morning, Justice Newbould,

20   Judge Gross.

21           THE COURT:  Good morning.

22           MR. ZARNETT:  I am going to address briefly, the

23   Canadian Legal Standard about these types of Motions and

24   some of the submissions that supplement Mr. Coleman that go

25   to the Canadian Judgment, your Judgment, Justice Newbould.

1           So, can you hear this, Judge Gross?

2           THE COURT:  Yes, very well, thank you.

3           MR. ZARNETT:  Okay.  As Ms. Block said, the

4  Reconsideration Standard under our Law, we're not used to

5  these Motions.  We're not very used to them.  They're rare.

6  They're -- it's a high standard.  And the Courts have said

7  only granted in exceptional circumstances.  That's the

8  Divisional Court in *Resordo* which is at Tab R of our Brief

9  of Authority as Paragraph 35.  Changes should be made only

10 where necessary to correct technical errors or avoid a

11 miscarriage of justice.  That's the Divisional Court in

12 *Brown*, Tab E of our Brief of Authority as Paragraph 20.

13          What underlies all the statements about how

14 strict the standard is, is the value that the Courts

15 identify in those cases (recording skips) speak about the

16 system strong interest of finality, but there shouldn't --

17 there can't be case in which parties have a more genuine

18 interest in finality than this case for the reasons that Mr.

19 Coleman gave.

20          And the cases identify some things that

21 Reconsideration is not or is not allowed to be.  And in my

22 submission they are apposite here.

23          One is the Reconsideration is not there to allow

24 litigations by installments.  It obviously, would be better

25 if we knew what the Courts were thinking and then could

1   recalibrate with more arguments.  In that sense, litigation

2   by installments is prohibited by the strictness of the

3   Doctrine.

4          The other thing that is prohibited is piecemeal

5   changes.  Where you take a Judgment that has or Judgments

6   that have an integrated analysis to them or one part makes

7   sense in light of another and you pick out one for

8   Reconsideration, specific parts.  That's a danger in that

9   approach and the Doctrine stands in the way of them.

10         Reconsideration is not there to allow parties to

11  make different tactical choices either about arguments or

12  what evidence that that should have been led earlier.  And

13  is not an alternative to appeal which is the correct forum

14  for the correctness of the Judgment to, in fact, be

15  reviewed.

16         So the standard in my submission on the Canadian

17  test is not met here and I wanted to address the two Claims

18  for Reconsideration against the Canadian Standard.  That the

19  Request for Reconsideration in respect of the inclusion of

20  claims on bond guarantees, the fact that they, under the

21  Judgments do not count for Allocation purposes, that's

22  something that's in the -- that's completely clear in both

23  Judgments, but dealing specifically with the Canadian

24  Judgment, the conclusion is reached in Paragraph 251 and

25  it's reiterated in Paragraph 258, Subparagraph 2.  And it's

1   part of a broader conclusion.  It's part of a conclusion

2   against the double inclusion of claims.  The claims only

3   count once.  And that covers a broader spectrum than just

4   the bond guarantees.

5           Now the Courts conclusion flows directly from a

6   discussion that begins at Paragraph 209 about Pro Rata

7   Allocation.  But even more directly, from a discussion that

8   begins at Paragraph 224 about the bonds.  And about how the

9   Doctrine of Pro Rata or Modified Pro Rata would interact

10  with Bondholder Claims.  So it's a conclusion that is

11  reached after a consideration of all of those factors.  And

12  it follows from the reality that Mr. Coleman referred to,

13  that that issue was in play in the proceeding.  He didn't

14  take a position on Pro Rata Allocation and we knew it was in

15  play.  Certainly, the parties who were opposed to it, knew

16  that that issue, what would -- how would Bondholder

17  Guarantee Claims interact with a Pro Rata Allocation of some

18  sort, if one were ordered, was directly on the table?

19          Now asking to change that Decision now, in my

20  submission is exactly what the Courts mean about litigation

21  by installments having contested the matter and argue it on

22  one basis, here is a further argument, having said

23  previously, Creditor recoveries are not the measure the

24  Courts should be looking at, here is an argument based on

25  Creditor recoveries.

1           (Recording skips) tactical choice made after the

2    parties know what the Judgment was, but in my submission,

3    again, not the right approach to be taken on

4    Reconsideration.  And it is impossible to distinguish

5    arguments about the correctness of the conclusion which

6    should be made if anywhere on appeal from the arguments

7    being advanced by the moving parties today.

8           And in my submission, it doesn't address any

9    miscarriage of justice, the Canadian term equivalent of

10   manifest injustice.  Under our law, miscarriage of justice

11   goes to issues that have to do with the integrity of the

12   judicial process, that's the *Robin's* Decision at Tab S,

13   Paragraph 7.

14           JUSTICE NEWBOULD:  Tab what?

15           MR. ZARNETT:  I'm sorry, it's Tab S, Paragraph 7.

16   The numbers here don't show any failure of justice.  And

17   that's so for a number of reasons.

18           First of all, the moving parties' position at

19   trial was that numbers were not the measure of justice.

20   They proposed an Allocation that would have given Canada 11

21   percent of the Lockbox.  They weren't taking the position

22   that 11 percent was per se manifestly unjust or that

23   percentages were the measure for justice.

24           Second, the Judgment has to be looked at as a

25   whole.  All sources of recovery have to be looked at.  That

1  includes the parts of the Judgment that allow each party to

2  keep their own cash and to the U.S. to have the benefit of

3  its $2 billion claim.  And once all those are wrapped up

4  together, Unsecured Creditors, other than the Bondholders,

5  recover $.40 on the dollar on the illustrative analysis that

6  the U.S. has used versus $.49 in Canada.  And that

7  difference is a difference, but it's not a difference about

8  manifest justice.

9          Now Mr. Rosenthal said there's an easy fix.  But

10 Mr. Rosenthal, in my submission, didn't actually answer your

11 question, Justice Newbould, because he spoke only about the

12 treatment of (recording skips) claim that Your Honor allowed

13 after the trial of their issues, into Canada, which the

14 Court light -- found in a paragraph that dealt with

15 intercompany claims was going to be treated, included for

16 Allocation purposes.

17         But as we say in Footnote 105 of our Doctrine,

18 the recovery on that should reduce the UK Pension Plan

19 claim, wherever else it's made.  So the claim is only being

20 made in one amount.

21         JUSTICE NEWBOULD:  So just so I can -- just say

22 that one again.

23         MR. ZARNETT:  Sure.

24         JUSTICE NEWBOULD:  There is a point I was --

25 there's a claim -- I was mistaken in my question.  It's a

1   claim on a Note.

2              MR. ZARNETT:  Right.  Right.

3              JUSTICE NEWBOULD:  Issued only by, I think the

4   two Canadian --

5              MR. ZARNETT:  Right.

6              JUSTICE NEWBOULD:  -- companies.

7              MR. ZARNETT:  Right.  And Your Honor dealt with

8   that in Paragraph 249 of your reasons.  And to the extent

9   that the UK Pension Claim Claimants have a claim there, that

10  should reduce what their claiming elsewhere on their multi-

11  billion dollar pension deficit claim.  But the question that

12  Your Honor was asking Mr. Rosenthal that he didn't answer is

13  the --

14             JUSTICE NEWBOULD:  Sir, why should it reduce

15  their other claim?

16             MR. ZARNETT:  Because they made --

17             JUSTICE NEWBOULD:  Is it a different claim?

18             MR. ZARNETT:  Because it's a recovery against the

19  pension deficit, we would say.

20             JUSTICE NEWBOULD:  No.  Then it was a claim on a

21  Note.  It wasn't a claim on a pension deficit.

22             MR. ZARNETT:  Fair enough.

23             JUSTICE NEWBOULD:  It was a straight Promissory

24  Note.  And there's no argument that we're entitled to it

25  because it's a pension deficit.  That wasn't the -- the

1    pension deficit was the Long-Arm Statute claim.

2              MR. ZARNETT:  But leaving that particular point

3    of this just for a moment.  The question that you were

4    asking Mr. Rosenthal has to do with the fact that the UKPC

5    may make their billion dollar claim against many EMEA

6    Debtors.  And how many times would that be counted?  And

7    your Judgment says once.  And Mr. Rosenthal's fix isn't an

8    easy fix, because once you count bond claims more than once,

9    what do you do with that situation?  And how does that

10   change the numbers?  And that's why pulling at one's string

11   or piecemeal by installment, attacking parts of a Judgment,

12   doesn't work.

13             The other point about the justice of the numbers

14   is I'm told, and I stress the words, I'm told, these aren't

15   my calculations, so they're per se more reliable.

16                            (Laughter)

17             That Mr. Rosenthal, what he said, if you make the

18   adjustment he's asking for, recoveries will be about equal

19   is correct, if you're talking about recoveries of cents on

20   the dollar to each of the three Estates out of the Lockbox.

21   They would be about $.37 or $.38 per Creditor, per Estate.

22             JUSTICE NEWBOULD:  How much?

23             MR. ZARNETT:  $.38 -- $.37 or $.38.  But your

24   Judgments are an integrated whole and the U.S. is allowed,

25   under the Judgment, to take the benefit of their $2 billion

1    intercompany claim and the cash on hand.  And that would

2    increase recovery for Unsecured Creditors in the U.S. to

3    $.60 on the dollar.  Canada would be $.40 on the dollar and

4    EMEA $.54.

5           Now $.40 is the number that the U.S. Creditors

6    say is unjust, but the fix that they're suggesting simply

7    moves that number to Canada.  So Canada moves down from $.49

8    to $.40, and the U.S. moves from $.40 up to $.60, and EMEA

9    moves from about $.65 to $.54.  Those movements aren't

10   movements of justice.  They are simply making relative

11   changes in the ultimate recoveries, but in my submissions,

12   they don't speak to fundamental notions of justice.

13          The Bondholders, by the way, if the U.S. change

14   were made and there was a larger Allocation, the U.S. would

15   probably recover 100 cents (recording skips) rather than in

16   the 80's where they'll be now.

17          So in my submission, the kind of tinkering, and I

18   don't mean to belittle the numbers or the importance of the

19   numbers to any particular Creditor, of course, they're

20   important, but we're talking about manifest injustice in an

21   ultimate Distribution in my submission, we're not talking

22   about that here.

23          I wanted to say something briefly about the other

24   Request for Reconsideration that has to do with DiamondWare

25   and NGS.  And that's simply to say that Justice Newbould in

1   your Decision, beginning at Paragraph 29 of Appendix A, you

2   discussed, you reviewed Mr. Green's evidence, and noted that

3   under the ownership theory on which he was proceeding, he

4   evaluated various assets on the basis of who owned them,

5   tangible assets.  And one of the things he valued, and

6   that's at Paragraph 32, were the subsidiaries of NNI that

7   we're talking about here.  You see the numbers right in your

8   Paragraph 32 of Appendix A.  And you note there, that no

9   other value and that included the U.S. value, dealt with

10  this asset.  Mr. Green did it, but only Mr. Green -- or Mr.

11  Green only did it as part of an ownership theory of a whole

12  bundle of assets, tangible assets, intangible assets, et

13  cetera.

14           Now the Courts both rejected ownership and

15  substituted different metric claims.  And once that

16  substitution is made, it has to be litigation by

17  installments, piecemeal, unraveling of a Judgment to pick

18  out one asset that has one value attached to it and say that

19  we want that.  It's my submission, that's litigation by

20  installments and it doesn't meet any notion of a miscarriage

21  of justice.

22           I want to say only a couple of things about the

23  Requests for Clarification.  And there's obviously

24  jurisdiction to clarify to solve an ambiguity or something

25  that will lead to confusion.  In your Judgment, Justice

1    Newbould, dealing with the Debtor Estates, Mr. Coleman dealt

2    with what was in Judge Gross's Decision.  If you go to

3    Paragraph 258 which has your conclusions, Paragraph 258, Sub

4    1, deals with the Allocation to each Debtor Estate.  And

5    258, Sub 3, deals with intercompany claims.  And there are

6    two requests from the U.S. about those.  The U.S. argument

7    on 258(3) is that an intercompany claim must mean claims

8    between Estates, but not by members of the same geographical

9    group.  And we say that is supportive of the idea that a

10   Debtor Estate is the grouping of corporate entities.

11          The same language is used in 258(1) and I'm not

12   suggesting that your Judgment as to be parsed like a

13   statute.  (Recording skips) is you -- and Paragraph 210 of

14   your Judgment, Justice Newbould, you'll see the reference to

15   an Allocation to each of the Canadian, U.S., and EMEA Debtor

16   Estates -- Debtors' Estates.

17          So in my -- as Mr. Rosenthal said, the way this

18   matter was conducted was the three groups.  And I don't have

19   anything more to add about that, other than what Mr. Coleman

20   has said.

21          On the other points of clarification, I would add

22   in the Canadian Judgment, like the U.S. Judgment in

23   Paragraphs 248 and 249, the Court recognized there would be

24   a claims process.  And in Paragraph 258, Sub 6, required

25   schedules for expediting remaining claims procedures to be

1  provided without delay.

2         So in my submission, piecemeal suggestions that

3  well, what about these settlements, are they in?  When even

4  the U.S. says that's not inclusive of all of them.  Or

5  issues about how will the Courts' supervise claims processes

6  elsewhere?  In my submission, there's no clarification

7  needed at this point.  Let the parties come forward with

8  their claims procedure because that will resolve those.

9  Let's identify issues.  Is it Post-Petition?  Is it Pre-

10  Petition?  Sort those things out.  And let's also see if

11  there are problems in procedures in other jurisdictions

12  which require judicial intervention and tailor that

13  intervention to whatever the problem seems to be.

14         So subject to any questions, those are my

15  submissions.

16         JUSTICE NEWBOULD:  Thank you.

17         MR. ROSENTHAL:  Your Honor?

18         THE COURT:  Yes, Mr. Rosenthal?

19         MR. ROSENTHAL:  Before we break, I know you need

20  to take the lunch break at 12:15.

21         THE COURT:  Yes.

22         MR. ROSENTHAL:  I just, you know, I hadn't been

23  concerned about the clock at all, but we argued for, I think

24  about 35 minutes, Ms. Block and myself.  The Canadian

25  Debtors have now spent an hour and 10 minutes.  And I just

1  would note that there's five other opponents to the Motion.

2  I hope and maybe they'll tell us otherwise, that they have

3  coordinated among themselves and we've heard the primary

4  arguments.  But to the extent that they have significant

5  duplicative arguments, I would become wary that after the

6  lunch break, we would have time trouble, and I'll obviously

7  need to significant time to respond to this.  And so,

8  perhaps at the lunch break --

9           JUSTICE NEWBOULD:  Mr. Rosenthal?

10          MR. ROSENTHAL:  Yes, Your Honor.

11          JUSTICE NEWBOULD:  Mr. Rosenthal?  Everybody's

12  going to get a chance to say what they have to say today.  I

13  did note that on the U.S. side, there was a great deal of

14  repetition in argument amongst the various counsel, but

15  Judge Gross and I for sure, will make sure everybody has a

16  chance to say what needs to be said.

17          MR. ROSENTHAL:  I'm not disagreeing with that,

18  Your Honor.  All I was going to ask is that if perhaps after

19  the lunch break, if the parties who -- the five who still

20  have to object, can just talk among themselves so that we

21  have a sense of what the amount of time is when we come

22  back, I think that would be helpful for everybody to be able

23  to plan and I could plan, you know, how much I should be

24  expecting to have for rebuttal.  That's all I was going to

25  ask, not to cut anybody off.

1           THE COURT:  All right, thank you.  I think that's

2    a good suggestion and I think we ought to hear from the

3    parties at the beginning how much time will be needed to

4    make argument.

5           JUSTICE NEWBOULD:  Who's next?  Ms. Mill-Smith?

6    No.

7           UNIDENTIFIED SPEAKER:  EMEA we are going to start

8    with Mr. Adler in Judge Gross' courtroom and then I will

9    pick up here.  And then, I believe, that we are going to --

10   oh, I apologize.

11          UNIDENTIFIED SPEAKER:  I'm sorry, Matt, it's the

12   CCC's turn, Matt, now.

13          UNIDENTIFIED SPEAKER:  Sorry, I apologize.  I

14   like usual, stood up too quickly.  CCC is going to start

15   where, then, here?

16          JUSTICE NEWBOULD:  In the U.S.

17          UNIDENTIFIED SPEAKER:  In the U.S. is going to

18   start before Judge Gross in the U.S.  And then before you,

19   Justice Newbould, and then Mr. Adler, and then me.

20          THE COURT:  Let me ask first, how much time you

21   think you'll need?

22          UNIDENTIFIED SPEAKER:  I think the CCC will need

23   about 20 minutes.

24          THE COURT:  All right, let's see.  That will take

25   me beyond where I wanted to be, I think.

1          UNIDENTIFIED SPEAKER:  Yes, so I don't know if

2    you want to take lunch now?

3          THE COURT:  I think we should take lunch now and

4    Justice Newbould, what time would you suggest?  I was going

5    to suggest 1:15.

6          JUSTICE NEWBOULD:  That's fine.

7          THE COURT:  All right.  We'll be back here at

8    1:15, Counsel.  And at that time, it would be appropriate to

9    know how much time the parties will be needing in total.

10   Thank you.  We'll stand in recess.

11          (Recess from 12:10 p.m. to 1:29 p.m.)

12          THE COURT:  Thank you everyone.  Please be seated.

13   Justice Newbould, I'm back on the bench.  I understand --

14          JUSTICE NEWBOULD:  Thank you, Judge Gross.

15          THE COURT:  I understand you'll be able to hear us

16   but not see us.

17          JUSTICE NEWBOULD:  Right.  We haven't got the

18   pleasure of seeing you.  What I was just about to say was,

19   Judge Gross, is that so far as I'm concerned, I'll stay as

20   late as necessary to enable all lawyers to make whatever

21   arguments they need to make, including any reply arguments.

22   So Counsel shouldn't be worried about being thrown out before

23   they've had a chance to have their say so far as I'm

24   concerned.

25          THE COURT:  And I feel the same way so that would

1  be fine.

2              JUSTICE NEWBOULD:  Thank you.

3              MR. HOEFFNER:  Proceed?

4              THE COURT:  Yes, please.

5              MR. HOEFFNER:  Okay.  Good afternoon, Judge Gross,

6  Timothy Hoeffner, of DLA Piper, on behalf of the CUC.  Good

7  afternoon, Justice Newbould, I'm sorry you can't see me, but

8  I'm the tall, skinny guy.  So at the outset, on behalf of --

9              JUSTICE NEWBOULD:  I'm sorry; and you are?

10             MR. HOEFFNER:  Timothy Hoeffner, on behalf of the

11 CUC from DLA Piper, and --

12             JUSTICE NEWBOULD:  Thank you.

13 (Attempting connection with CourtCall.)

14             THE COURT:  Can we begin without Court call?

15             THE CLERK:  That's entirely --

16             THE COURT:  All right.  Why don't we begin without

17 them?

18             THE CLERK:  Okay.

19             JUSTICE NEWBOULD:  Hello?

20             THE COURT:  Mr. Hoeffner, you may proceed, sir.

21             MR. HOEFFNER:  All right.  Take two.  Again, Tim

22 Hoeffner, of DLA Piper, on behalf of the CCC.  At the outset,

23 no one's ever said --

24 (Further attempt with CourtCall connection.)

25             JUSTICE NEWBOULD:  Is it possible to turn up your

1    volume?  If you can hear us, go ahead, Mr. Hoeffner.

2           MR. HOEFFNER:  Justice Newbould, can you hear me

3    okay?

4           JUSTICE NEWBOULD:  Yes, okay.  We'll make --

5           COURT CALL:  You can go ahead and connect the

6    parties through, please.

7           UNIDENTIFIED SPEAKER:  Jesus Christ.

8                  (Laughter)

9           THE COURT:  Mr. Hoeffner, we're ready for you now.

10          MR. HOEFFNER:  Okay.  All right.  Again, let's --

11   at the outset, no one's done this yet today but on behalf of

12   our clients, and I think a number of people in the room, we

13   want to thank both Judges for the diligence and the effort

14   that went into those two Opinions and we also want to thank

15   you both for the effort in working together to try to come to

16   a common ground, which we hope is going to get us to some

17   kind of resolution in the end.  So again, just thank you.

18          Second, we share a common interest in terms of

19   putting together an Opinion and having an Opinion that's

20   sustainable on appeal.  I'm assuming, because I've seen the

21   way this case has been litigated, that we're going to end up

22   in the Appellate Courts, unfortunately, and I think you both

23   have done a wonderful job in putting something together that

24   is sustainable.  If I thought otherwise, and if we thought

25   otherwise, we would tell you because we're in this together

1  and we don't want to have an Opinion that's going to get

2  overturned.  We like the Opinions.  We're comfortable with

3  them.  We think they should stay as they are.

4          So there's a few points that I want to go through.

5  I'm going to try not to duplicate Mr. Coleman from earlier

6  today.  But first of all, as my law professor taught me in my

7  first year of law school, let's start with the rule.  What's

8  the standard for reconsideration and Mr. Zarnett went through

9  the Canadian standard.  In the U.S., Rule 59(e) points to an

10 intervening change in controlling law.  I haven't heard

11 anything about that today.  The availability of new evidence;

12 I haven't heard anything about that today.  The need to

13 correct a clear error of law; I've not heard that, or prevent

14 manifest injustice, so manifest injustice seems to be where

15 they're putting all the chips on the table.  60(b), the other

16 standard they rely on, is even harder and it cites to fraud,

17 mistake, and newly discovered evidence.  I'm not hearing

18 anything that falls into any of those three buckets.

19          U.S. Supreme Court, in the *Exxon Shipping* case

20 that we cite in our Brief, says Rule 59(e) may not be used to

21 re-litigate old matters or to raise arguments or present

22 evidence that could have been raised prior to the entry of

23 judgment.  Quite frankly, what I've been hearing today is an

24 effort to re-litigate a lot of points and to raise arguments

25 that could have been raised prior to the judgment, prior to

1   the Decisions being issued.  So let's go to that.  Mr.

2   Rosenfeld earlier today said --

3            THE COURT:  Rosenthal.

4            MR. HOEFFNER:  Rosenthal said earlier today that

5   modified pro rata, you know, fell outside of the adversarial

6   issues that were presented at trial.  It's not true.  It's

7   just not true and I want to go through that again because the

8   CCC was clearly one of the primary advocates of pro rata and

9   I'll say it's really a modified pro rata that we presented at

10  the end of the day and that was presented to Mr. Britven and

11  it was presented through closings and otherwise so we're

12  going to focus on that a bit.

13           All the arguments were made at trial.  They had a

14  21-day trial.  They had two days of closing arguments.  It's

15  too late to make the arguments in a Reconsideration Motion

16  and on behalf of our clients, I'm going to say God forbid the

17  Courts take seriously Mr. Hodara's suggestion that we have a

18  continuation of the trial or a new trial.

19           The CCC, Wilmington Trust, and the UKPC argued for

20  pro rata allocation for an extremely long time.  The

21  positions were clearly addressed in our Position Statements

22  that came out in May 2013 and, in fact, we went back to the

23  archives and we saw that they were raised all the way back in

24  2011 in a Factum that was filed by the CCC.  The entire case

25  was structured around the Position Statements that were filed

1  in 2013.  Counsel took discovery, they prepared expert

2  reports, and the entire trial was structured around those

3  Position Statements.

4          Before, during, and after the Allocation trial,

5  the U.S. Interests elected to disregard that pro rata theory,

6  saying it should be rejected out of hand.  We briefed pro

7  rata and we introduced considerable evidence and expert

8  testimony to support that theory at trial.  The relevant

9  evidence is recounted in detail in the Courts' respective

10 Opinions.  Modified pro rata was fully bedded at trial.

11 While Mr. Britven testified about an illustrative pro rata

12 theory, he walked through a series of possibilities to modify

13 the illustrative model that he presented at trial.  There

14 were further modifications discussed in the closing arguments

15 which I delivered.  These included recognition of a single

16 claim by the Bondholders, claims by the Bondholders against

17 the primary obligor in Canada and the guarantee in the United

18 States, and there were other alternatives that were

19 presented, and just to cite a few pieces of testimony from

20 the trial, page 3373, lines 6 to 14, Mr. Britven testified it

21 is a flexible model and it can accommodate additional inputs.

22 Page 3561, lines 2 to 3, he was asked to confirm that he was

23 asked to assume that the intercompany claims and the

24 guarantees did not apply in the pro rata model and he

25 answered that the model can accommodate that, but that's not

1    part of this illustration.  The demonstratives that we used,

2    during Mr. Britven's direct examination said different inputs

3    will produce different results; however, the methodology

4    doesn't change.  That was slide 26 of his demonstratives.

5             The Court did exactly what Mr. Britven and what we

6    said they could do.  They changed some of the inputs and they

7    came up with what you have both phrased as modified pro rata.

8    The Courts decided to keep the bond guarantees in place and

9    give the Bondholders access to both pools of assets.  It's a

10   middle ground in terms of the two -- two of the illustrative

11   scenarios that were proposed by Mr. Britven and that we

12   delivered in the closings.  They made clear the guarantees

13   provided no comfort as to what level of assets will be in

14   each pool and there was evidence about that.  The Courts

15   considered the $2 billion allowed claim by the U.S. and to

16   Canada.  They modified the inputs which is again exactly what

17   Mr. Britven said he could -- you could do for a number of

18   reasons that are explained in the Decisions.  But again, the

19   Courts did the right thing and stayed away from making the

20   Determinations on the claims issues.  So again, you stayed to

21   the Allocation issues, which is exactly what the charge was.

22            Now, the important points here are the U.S.

23   Interests who are now complaining about the result, and this

24   is just complaining because they want more money; it's not

25   that they didn't have the opportunity to do this at trial,

1  they did nothing to address or rebut Mr. Britven's arguments

2  that were presented through his testimony.  They disregarded

3  the merits of pro rata and they outright ignored the

4  possibility of a pro rata allocation and told the Courts that

5  they should ignore that theory as well.  That was their trial

6  strategy and they've got to live with their trial strategy.

7  It didn't work out for them; they got to live with it.

8         The other important point, the U.S. Interests

9  never tried to change the inputs in Mr. Britven's charts at

10  trial, nor did they present alternatives to Mr. Britven's

11  scenarios.  They argued in support of the bond guarantees and

12  the finding of claims in U.S. and Canada but they never said

13  anything about the impact of increasing the Bondholder claims

14  on the U.S. Trade Creditors.  Each of the parties filling

15  what was entire right-hand side of the Courtroom here and the

16  left-hand side of the Courtroom in Toronto did the

17  Bondholders bidding.  Your focus was on the Bondholders,

18  maximizing recovery for the Bondholders.  That was again a

19  choice that they made to cast their lot with the Bondholders

20  and not to focus on the U.S. Trade Creditors.

21         Let's focus specifically on the UCC, which

22  acknowledges in its Reply that it is the fiduciary for all

23  general unsecured creditors in the U.S.  They didn't cross-

24  examine Mr. Britven.  They didn't present any evidence

25  touching on the plight of the U.S. Trade Creditors.  Mr.

1   Hodara talked today about the reasonable expectations of the

2   Trade Creditors but there was no testimony at trial.  Just

3   like the Bondholders, they didn't show up.  They didn't

4   present a witness at trial.  The CCC presented a witness at

5   trial.  They did not.  The UCC's expert witness, if you

6   recall who was presented in Canada, John O'Connell -- John

7   McConnell; I'm getting all my names wrong today, he was a

8   bond guy.  He was not a Trade Creditor guy.  His testimony

9   urged the Courts to keep the bond guarantees in place.

10            Rather than presenting the different scenarios

11  that are raised in this Motion and set forth in -- as an

12  exhibit to the U.S. Interests -- the U.S. Debtors' Brief, the

13  U.S. Interests made a number of legal arguments to seek to

14  discredit pro rata allocation.  They sought to exclude Tom

15  Britven's testimony at trial.  That was denied.  The Courts

16  rejected their arguments.  They had every opportunity.  This

17  is their choice.  They chose a strategy.  A Motion for

18  Reconsideration is not focused on saying I lost on this basis

19  so now I want to come in with a different strategy and

20  present different theories, present different schedules,

21  which they've done through Exhibit A, present testimony

22  through Mr. Hodara as to Trade Creditor expectations that's

23  unsupported by the record at the trial.  What happened at the

24  trial is what counts and the Courts should stick with that

25  and that's what the standard for reconsideration says is

1    what's relevant here.  These arguments, again, were all

2    available at trial and to say otherwise is just untrue.  Mr.

3    Coleman spoke about Mr. Britven's testimony today so I'm not

4    going to go through that again.

5            My third point I want to just touch on briefly is

6    the entry of new Counsel into the case.

7            JUSTICE NEWBOULD:  I'm sorry; the which?

8            MR. HOEFFNER:  The entry of new Counsel into the

9    case through the new Committees that have -- and  Consortiums

10   and others that have come in here.  Each of the parties in

11   this case was represented by incredibly sophisticated

12   Counsel.  That's undisputed.  Multiple lawyers represented

13   the competing interests of the different parties.  I'm

14   confident that these sophisticated lawyers thought through

15   all of the different interests, all of the different

16   potential conflicts, all of the potential scenarios, and

17   potential need for Counsel to represent individual groups.

18   Any suggestion that the interests of any constituency was not

19   fully represented at the trial should be given no weight in

20   connection with evaluating a Reconsideration Motion.  It's

21   really irrelevant.

22           The new group is the new Consortium that spoke

23   earlier today.  They bring with them a new set of lawyers and

24   God only knows we need more lawyers in this room.  The

25   Consortium could have appeared at any time but its members

1    instead relied on the UCC and the U.S. Debtors and the other

2    lawyers on this side of the Courtroom to represent their

3    interests.  The result is not to their liking so new lawyers,

4    new Consortiums, new groups show up here.  The arguments

5    don't support reconsideration of the Court's Decision under

6    the limited circumstances that are recognized in the Rules.

7    Presentation of new arguments by new parties, it's too late.

8    All the facts leading to the Court's modified pro rata

9    Decisions were in the record and were available and were

10   considered by the Courts.  They're old facts that are being

11   re-hashed here today and new arguments and that's not an

12   appropriate basis for reconsideration again.  Let's go back

13   to the standard and that's what really matters.

14            A couple of other brief points with respect to

15   manifest injustice.  Again, there's a love-hate relationship

16   with Mr. Britven and the U.S. Interests that was referred to

17   earlier today by Mr. Coleman.  The U.S. Debtors and the UCC

18   claimed to rely on Britven's analysis.  They argued that

19   Britven's data shows that the allocation to the U.S. Debtors

20   would translate to 14 cents on the dollar paid to U.S.

21   unsecured creditors from direct lockbox distributions to the

22   U.S. Debtors.  That whole argument is highly misleading

23   because it looks only to the direct lockbox contributions and

24   fails to account for valuable other considerations that are

25   directly addressed in the Court's Opinions.  They can't just

1    cherry-pick slices of data to suit their needs and try to

2    support this argument of manifest injustice.  Britven's

3    analysis and the Courts' Opinions properly did not begin and

4    end at the lockbox allocation but rather looked at other

5    factors impacting total recoveries.

6              The Courts did not disregard known information.

7    These are realities.  The Courts were very pragmatic in

8    getting to their Decision and did not disregard this known

9    information that was out there.  The $2 billion claim, we

10   knew about the $2 billion claim.  You knew about the size of

11   the Bondholder claims that were being asserted in Canada and

12   in the United States.  So you considered both of them quite

13   appropriately.

14             Schedule A, Exhibit A, to the U.S. Debtor's Brief

15   I think is fascinating and as was pointed out earlier today,

16   it's interesting.  The U.S. has three different scenarios

17   they've laid out in Exhibit A, A(2), and A(3).  None of those

18   scenarios lay out what the recoveries would be if they

19   obtained the relief that they want to obtain, which is

20   shocking to me and why not?  Why wouldn't they show that?

21   The reason obviously is if you give them the relief that they

22   want, it's going to take a whole bunch of money and a whole

23   bunch of percentage points away from Canada and it's going to

24   show that they're trying to do exactly what they're saying is

25   "manifest injustice."  It can't go that way.

1          Under the current allocation Decisions by the

2    U.S.'s own Exhibit A(3), the CCC and other Canadian unsecured

3    creditors received the lowest percentage total recovery, 49

4    percent as compared to 62 percent for the U.S. Debtor Group

5    and 65 percent for the EMEA Debtors.  We're not crying

6    manifest injustice and nor should the U.S.  Even if you look

7    at scenario A(2), the U.S. GUCs get 40 percent, which is in

8    the same range as the Canadians.  This is not manifest

9    injustice.  That is a very high standard.  There's no

10   relationship to manifest injustice.  And again, in terms of

11   showing that their positions are not credible and are

12   disingenuous, just as a last point, as the Courts will

13   recall, again, under their allocation theory presented at

14   trial, they would have provided guaranteed Bondholders in the

15   U.S. with well over 100 cents on the dollar and Canadian

16   unsecured creditors with just 11 cents.  The total recovery;

17   Mr. Zarnett had referred to the fact that it would be 11

18   percent in terms of the allocation, but in terms of the

19   actual recovery, would also be 11 cents to the Canadians and

20   this Court aptly described that as an extreme allocation

21   position.  So for them to come into this Court and into the

22   Canadian Court and say that it's manifestly unjust for them

23   to get 40 cents or something in that range; I think 40 to 45

24   cents is what the Consortiums' lawyers referred to today, is

25   just entirely incredible.

1          So again, I've tried to keep this brief and I have

2    just one point and then I'm going to turn it up to Canada,

3    again, thank you for the time and consideration you put into

4    this and we agree wholeheartedly with the views expressed in

5    the Courts' Opinions.  After many years of litigation and the

6    billion dollars spent on professional fees, we strongly

7    believe it's time to move past the allocation fees and permit

8    the Estates to promptly distribute funds to Nortel's

9    creditors and we're committed to making that go forward.

10   Otherwise, I should have mentioned at the outset, I'll adopt

11   Mr. Coleman's submissions on the clarifications issues and

12   I'll turn it -- I think I'm trying it up to Mr. Rosenberg in

13   Canada if he has anything to add.

14          THE COURT:  Thank you, Mr. Hoeffner.

15          JUSTICE NEWBOULD:  Mr. Rosenberg?

16          MR. ROSENBERG:  I will be brief.  I'm speaking to

17   the Canadian Law on the reconsideration and Mr. Zarnett's

18   arguments and case law.  I'm going to refer to just two

19   additional cases, which I think amplify the fight and were

20   instructive.  They are the *Kaye* [ph] case which is at Tab 17

21   of our material -- excuse me, Tab 18, and the [indiscernible]

22   case which is at Tab 7.  There are three issues under

23   Canadian law.  One is the discretion to exercise a

24   reconsideration and what the trigger is and how big is the

25   discretion and what type of evidence is required.

1          So dealing with the first point, the U.S. Estate

2    in their submissions referred to a particular case and it's

3    at Tab 5 and it's the *Montague* case and in referring to it,

4    Ms. Brock said that the Court in Canada has unfettered

5    jurisdiction.  That is not what the case says.  The case says

6    it's a broad jurisdiction but not unfettered at paragraph 34

7    and I'll just read the sentence.  The Judge --

8          JUSTICE NEWBOULD:  Where is this case?

9          MR. ROSENBERG:  Tab 5.  This is in the Tory's case

10   book so.

11         JUSTICE NEWBOULD:  You might move closer --

12         MR. ROSENBERG:  Closer to the microphone?  So in

13   the Tory's case book at Tab 5 is the *Montague* case and it's

14   our submission that the U.S. Estate has conflated the

15   discretion with the trigger.  This case deals with the

16   discretion and Justice Goudge, at paragraph 34, doesn't say

17   unfettered.  He says broad discretion to change it, the

18   *Cheema* [ph] case.  Ms. Brock is referring to the *Cheema* case

19   as unfettered.  My notes said the *Montague* case.  So Justice

20   Goudge refers to a broad discretion.  If it says in *Cheema*

21   unfettered, I'll have to live with that.  But the point is

22   this, Your Honor, there may be a discretion.  The question is

23   if and when you exercise it and how the *Kaye* and the *DeGroup*

24   case deal with that.

25         If you turn to the -- you don't have to turn up

1  our Factum, but if you turn to the case book and go to

2  paragraph -- well, it's paragraph 19 of our Factum, but Tab

3  18 of the *Kaye* case, it's a 1977 Alberta case and in

4  paragraph 18 of the Decision; this is the only passage that

5  I'm going to refer to and it's referred to in paragraph 19 of

6  our Factum, it's the point of whatever the discretion is,

7  whether broad or unfettered, what triggers it, what you need,

8  what's the hurdle to get up there?  The Court said, in my

9  view, one potential abuse that must be clearly kept in mind

10  is that there is a fundamental rule which requires a litigant

11  to have the facts of his case prepared at the time of trial.

12  This rule is fundamental because it is only in this way that

13  endless wrangling and never-ending re-hearings and never-

14  ending re-openings to hear new evidence can be avoided.

15          Going to the next paragraph, in quotes where he

16  refers to the *Sales and Calgary Stock Exchange* case, "It is

17  in my view a serious matter to open a trial after all the

18  evidence has been taken, and it should never be done unless

19  it seems imperative in the interests of justice that the case

20  should be reopened for further evidence."  Never is a big

21  word, Your Honor, and this underscores Mr. Zarnett's

22  submission that you don't have trials by installments.

23          I'd like to move to the *DeGroup* case which is at

24  Tab 7.  This is the last case that I'll refer to.  This is a

25  Decision of Justice Lax and at paragraph 9 of the case, she

1  sets out a five-part test for reconsideration.  For this

2  case, it is accepted, point number one, that you have the

3  discretion until your [indiscernible] because --

4           JUSTICE NEWBOULD:  Mr. Rosenberg, these cases

5  you're referring to --

6           MR. ROSENBERG:  Yes?

7           JUSTICE NEWBOULD:  -- are cases in which there

8  appear there was a Motion to Reopen to Admit Further

9  Evidence.

10          MR. ROSENBERG:  Yes.

11          JUSTICE NEWBOULD:  I haven't heard of a Motion to

12 Permit Further Evidence.

13          MR. ROSENBERG:  Your Honor, our submission is that

14 Mr. Hodara has asked for that.

15          JUSTICE NEWBOULD:  Pardon?

16          MR. ROSENBERG:  Mr. Hodara has asked for a

17 continuation of the trial, and Your Honor, this sets out the

18 principles when -- and I'd like to get -- I'll take you to

19 the end of the case.  The Court of Appeal Decision and why

20 it's --

21          JUSTICE NEWBOULD:   Isn't *Sagaz* the controlling

22 case in Canada?

23          MR. ROSENBERG:  Pardon?

24          JUSTICE NEWBOULD:  Isn't *Sagaz* the controlling

25 case in Canada, the Supreme Court of Canada, at least makes

1  it pretty clear?

2          MR. ROSENBERG:  Well, Your Honor --

3          JUSTICE NEWBOULD:  I haven't heard anybody argue

4  it.  It's in the Briefs but --

5          MR. ROSENBERG:  It's an important case, Your

6  Honor, and these are important cases, and Your Honor, *Sagaz*

7  doesn't overturn these cases.  It adopts the --

8          JUSTICE NEWBOULD:  Oh, I understand that.

9          MR. ROSENBERG:  -- theory and the reason I'm

10  citing this case is because it's very apropos and the point

11  -- if you go right to the Court of Appeal Decision, leave

12  Justice Lax's five points aside and I -- points 2, 4, and 5

13  are apropos of this case.  What's interesting about this

14  case, Your Honor, is if you look at paragraph 4, the last

15  sentence, this case the Court of Appeal said, the second to

16  last sentence, Lax, J., fully considered that issue.  She was

17  prepared to assume that the Solicitor was negligent in

18  failing and the negligence here was in failing to advance the

19  clients' interests and the client was suing the lawyer for

20  negligence, but that even if so, the circumstances were not

21  as exceptional as to warrant the exercise of discretion in

22  favor of the Appellants and they don't interfere with her

23  Decision and just above, where the test has been -- in

24  paragraph 3, second sentence, where the test that has been

25  expressed in a number of different ways, it essentially comes

1   to this, and Your Honor, the Court says the Court must

2   consider whether the evidence would probably have changed the

3   result and whether that evidence could have been discovered

4   by the exercise of reasonable diligence.  The reasonable

5   diligence requirement rule, however, be relaxed in

6   exceptional circumstances where necessary to avoid a

7   miscarriage of justice.

8           The reason I refer to these cases, Your Honor, is

9   Mr. Zarnett has set the principle at no trial by installments

10  even in a case where the Court accepts and assumes that the

11  trial lawyer was negligent in not reopening the case for

12  reconsideration.  This case, Your Honor, the facts are not

13  nearly as high and not nearly as grave and if you apply the

14  principles of this, which run through all of the

15  reconsideration cases, in Canada, the moving parties have not

16  met the threshold.  The threshold is very high.  So whatever

17  the discretion is that you have, we urge upon you that that

18  exercise of discretion has not been triggered on the facts of

19  this case and the arguments made for the simple reason that

20  Mr. Hoeffner stated to you I'm finished with this.  Pro rata

21  has been a live issue, claims-based resolution of this case

22  has been a live issue since at least 2011 on the record if

23  you audit every submission made by the moving parties against

24  the CCC's opening statement at trial, closing statement, Mr.

25  Britven's evidence.  It proves the point that none of this is

1   new and it's not appropriate for reconsideration.  Appeal is

2   a different story.  Thank you, Your Honor.

3           JUSTICE NEWBOULD:  Who's next?

4           MR. ROSENBERG:  U.S. EMEA I think.

5           JUSTICE NEWBOULD:  Beg your pardon?

6           MR. ROSENBERG:  EMEA in the U.S.

7           JUSTICE NEWBOULD:  EMEA in the U.S.?

8           MR. ADLER:  Yeah.  Good afternoon, Judge Gross,

9   and good afternoon, Justice Newbould.  It's Derek Adler, from

10  Hughes, Hubbard, & Reed, and for the first time in a long

11  while, I have to tell you who I act for in some detail

12  because today I appear before you on behalf of most of the

13  Nortel Debtors in the EMEA Region, but not all of them and

14  that fact actually pertains to a number of the issues that

15  we're talking about here today so let me just take a minute

16  to explain that.  Our clients have always been the Joint

17  Administrators for each of the various Nortel Debtors in the

18  EMEA Region, but we've always, in fact, represented 19

19  separate teams of Joint Administrators that act for 19

20  separate, legally distinct Debtor entities.  There is no such

21  thing as the EMEA Estate.  If the escrow agent, JP Morgan,

22  writes a check to the EMEA Estate, we won't be able to cash

23  it.  We have no place to put that and nothing to do with it.

24  That legal entity doesn't exist.

25           Each of the individual Nortel Debtors has actually

1    separate insolvency proceedings pending in England.  For the

2    ones other than NNUK, they're in England because we persuaded

3    the English Court that that was the center of main interest

4    for each of them but it was -- it's quite a specialized

5    thing.  They each have legal rights, separate legal rights.

6    They each have separate creditor pools, bases, who are as

7    vigilant as the creditors are in this case for their

8    individual rights and the Joint Administrators.  That term

9    Joint Administrator I think is being misunderstood by some of

10   the parties because there are multiple Administrators.  There

11   are four gentlemen, Messrs. Bloom, Hill, Hudson, and Harris,

12   who have been appointed as Joint Administrators in various

13   combinations for each of the Debtors, but they are Joint

14   Administrators in every case, in each case.  They administer

15   each case jointly.  They are the Joint Administrators for

16   NNUK.  They are the Joint Administrators for NNSA, the French

17   entity, and so on, but there is no Joint Administration.

18   There has been no substantive consolidation of the different

19   Nortel Debtors in the EMEA Region. and in fact, in a sense,

20   all they have in common, aside from the fact that the

21   gentlemen who've been appointed as the Joint Administrators

22   for each of them are the same in most cases, is having acted

23   through the same Counsel in these proceedings.  That's

24   actually the main thing they have in common as we sit here.

25   So the term "joint" should not be misinterpreted.  And as

1    Justice Newbould observed before, each of those different

2    Debtors is a signatory to the IFSA and insofar as the Courts

3    in this proceeding have been exercising the powers of the

4    dispute resolver under the IFSA, the IFSA clearly states that

5    the subject to be determined is the allocation to which each

6    of the signatory is entitled, each of the different Nortel

7    Debtors is entitled. and quite frankly, listening to Mr.

8    Coleman's comments before, if JP Morgan did suddenly hand us

9    a pile of cash, you know, from this allocation, frankly, I

10   have no idea how the decision would be made.  It would

11   require -- not only would it require a separate allocation

12   trial in the EMEA Region, it would require a preliminary step

13   to figure out who you conduct that trial in front of because

14   the relations between the individual EMEA Debtors are just

15   the same as the relations between Canada and the U.S. here.

16   There would need to be a whole separate litigation just to

17   determine how you decide, who gets to decide how to allocate

18   it.  There's not one person.  Certainly, the Joint

19   Administrators don't have any discretion or authority to

20   decide how to whack up the money between the different

21   Estates that they administer.  So -- and incidentally, it's

22   not correct, as Mr. Coleman suggested earlier and I think Mr.

23   Zarnett as well, it's not correct that we presented evidence

24   cumulatively.  On the contrary, Mr. Huffard's report broke

25   out what each of the individual Debtors was entitled to.  The

1   evidence presented by Mr. Kinrich for the U.S. also broke out

2   what each individual Debtor was entitled to.  That was

3   summarized for various purposes in our papers, but the use of

4   a defined term, a capitalized term in the papers, didn't

5   create a new legal entity and didn't abolish the rights of

6   any of the individual Nortel Debtors in the EMEA Region.

7            So the allocations, you know, we acted for Counsel

8   for this whole group whose interests have been aligned in

9   relation to allocation up until now.  They all supported the

10  theories that we put forward.  But as a result of the

11  Decisions that have recently been entered by the Court, that

12  coalition has broken up because the effects of the Decision

13  are very different for each of the individual Debtors, the

14  Nortel Debtors in the EMEA Region, and, in particular, the

15  French Estate.  NNSA is disadvantaged very much by this.  It

16  gets a lot less, or appears that it will get a lot less, as a

17  result of the modified pro rata than it would have under any

18  of the other theories that we put forward and as a result, a

19  conflict has arisen and a Conflict Administrator has been

20  appointed for NNSA, the French entity.  They've retained

21  separate Counsel, Skadden Arps, who are in the Courtroom

22  today, and Stikeman Elliott in the Canadian Courtroom.  So

23  for present purposes, for purposes of any challenge to the --

24  or any proceedings concerning a challenge to the Courts'

25  Decisions on allocation, I represent all of the Nortel

1  Debtors in the EMEA Region, aside from NNSA, the French

2  entity.  We continue to act for all of them for other

3  purposes where there's no conflict of interest.

4         Now, we submitted a letter to the Courts yesterday

5  reporting on the efforts of the Joint Administrators to move

6  forward with all deliberate speed to effectuate the Courts'

7  Decisions.  The question keeps coming up why didn't the Joint

8  Administrators have a claims process sooner and the answer is

9  simple and it's statutory.  Under the U.K. insolvency

10 legislation, Administrators are not supposed to start a

11 claims process until they literally are able to make a

12 distribution.  They actually seek permission to make a

13 distribution, which they call it dividend there and you start

14 your claims process at that time and it actually takes a bit

15 of a contortion to try and initiate any kind of a claims

16 process before you're essentially about to have -- gather the

17 assets and make a distribution of them.  Nevertheless, the

18 Joint Administrators had sought leave and they needed leave

19 to do this back in 2010 to have an informal claims process

20 and that was quite productive.  They solicited claims.  They

21 believed that they know the majority of claims as a result of

22 that process.  They have resolved and agreed about 90 percent

23 of the trade claims and essentially, the bulk of the claims

24 are likely known and will be able to be resolved very

25 quickly, addressed very quickly, once formal claims

1  procedures are initiated as a result of that.

2          Now, it's also the case that in English

3  proceedings, it's not normally -- you don't normally appoint

4  one Judge to have supervision over an entire insolvency case

5  and deal with all issues.  You would normally get judicial

6  help on an ad hoc basis.  But the Joint Administrators,

7  because of the special nature of this case, have written to

8  the Administrators of the High Court --

9          JUSTICE NEWBOULD:  We've lost sound.

10          MR. ADLER:  How about now?  Am I back now, Justice

11  Newbould?

12          JUSTICE NEWBOULD:  Yes.

13          MR. ADLER:  Thank you.  So the Joint --

14          JUSTICE NEWBOULD:  Yes.

15          MR. ADLER:  Did you miss much?

16          JUSTICE NEWBOULD:  You said that it's not normal

17  for one Judge to do everything.  I thought you were about to

18  say it's done on an ad hoc basis, but I don't know whether

19  you meant to say that or not.

20          MR. ADLER:  Yeah, those were my words exactly,

21  Your Honor.  That's pretty good.  So in this case, the Joint

22  Administrators have written to the Administration of the

23  Court System in England and have obtained an appointment of

24  one specific Judge, Justice Richard Snowden, who will have

25  jurisdiction over all further proceedings related to these

1  bankruptcies; in particular, the claims processes, any

2  challenges to the claims, and will be able to liaise with

3  Your Honors as appropriate on any issues where it's

4  appropriate to do so.  Any concerns about the claims

5  procedures --

6            JUSTICE NEWBOULD:  Liaise with?

7            MR. ADLER:  Liaise with yourself and Justice Gross

8  -- Judge Gross.  I'm sorry.

9            JUSTICE NEWBOULD:  So I'll ask you again you were

10  about to say and liaise with -- the Judge in the interim will

11  be able to liaise with -- then we lost you.

12            MR. ADLER:  He'll be able to liaise with you,

13  Justice Newbould, and with Justice Gross, as appropriate in

14  the case.  We have also made an application; it's actually 19

15  separate applications, that's been made today, to initiate

16  the claims process, and I won't -- this is the formal claims

17  process.  I mentioned the informal process earlier.  The

18  formal claims processes are different for each of the 19

19  entities.  For NNUK where you have the primary insolvency in

20  England, it's a normal type of claims procedure.  But in

21  relation to the Debtors that are in other jurisdictions where

22  England is the center of main interest, essentially, in order

23  to preserve local creditor priorities, it has to be done in

24  the form of a company voluntary arrangement, the equivalent

25  of a Chapter 11 Plan here, which will create the equivalent

1  type of a -- sort of similar to a Proof of Claim process and

2  let that go forward.  So the upshot of all this is that there

3  will be a hearing on this, and we expect to approve these

4  procedures in mid-July.  It's -- the hearing is expected to

5  be between July 14th and July 17th, a half-day hearing in

6  England, and we will report back to the Courts after that.

7  But our expectation is that the EMEA claims processes is not

8  going to take five years as Mr. Rosenthal suggested earlier.

9  In fact, we think it will be able to be resolved on the same

10  sort of timetable as the U.S. and Canada probably need in

11  order --

12           JUSTICE NEWBOULD:  We lost you again.  In fact,

13  they'll be able to be resolved what?

14           MR. ADLER:  They'll be able to complete the claims

15  process on a similar timetable to what we think the U.S. is

16  going to need and Canada is going to need to complete their

17  claims processes.

18           So we also suggest, and then we agree with the

19  Canadian Debtor about this, that our claims process will go

20  forward regardless of these Motions and regardless of any

21  appeal.  We think that it does appear that an appeal is

22  likely based on what we're seeing in the various papers here.

23  We don't think that appeal should stop the claims process.

24  We don't think that appeal is going to be successful and so

25  our intention is to move forward with our claims processes

1    with all deliberate speed so that we can effectuate Your

2    Honors' Decisions once the dust settles and as soon as we

3    can.

4              Now, moving on to the specific issues that have

5    been raised for reconsideration, first of all, the Courts

6    were very clear in their Decisions that they're addressing a

7    method of allocation and not addressing distribution.  The

8    Courts were not concerned with what the specific outcomes

9    would be.  The U.S. Debtor's arguments for reconsideration

10   are based on looking at what the outcomes would be, doing

11   what the Courts expressly didn't do.  In effect, they're

12   asking the Court not to apply principles, but to determine

13   what the resulting numbers should be in the case to tinker

14   with the outcomes.  They are not arguing that any of the

15   principles that were applied by the Courts are wrong.

16   They're asking for exceptions to those principles.  In

17   particular, cases in order to modify the outcome for them.

18             Now, one of the fundamental principles that the

19   Courts articulated in determining their modified pro rata

20   plan was that each claim for a particular dollar amount

21   should only get counted once for allocation purposes.  Claims

22   would be recognized only once you said, Justice Gross --

23   Judge Gross, and both of the Orders say that a claim that can

24   be made against more than one Debtor Estate can only be

25   calculated and recognized once.  So this is a fundamental

1    principle that duplicative claims should not be counted and

2    there's also a related point which is that the Estate that

3    should count a particular claim for allocation purposes is

4    the primary obligor.  That's from your Decision, Judge Gross.

5    Both Orders note that in the case of the Bondholders, it

6    would be the issuer of the bonds.  So this general principle

7    applies in a variety of cases and to a variety of claims in

8    the various Debtor Estates.  It applies to the Bondholder

9    guarantee claims.  It applies to the U.K. pension claims for

10   financial support directions against the other Debtors other

11   than NNUK.  NNUK is the primary obligor of the U.K. pension

12   claim and we have accepted, and I'll state again in open

13   Court, that the FSD claims clearly don't count for allocation

14   purposes.  The attempts to impose liability on other Nortel

15   entities don't count.  And similarly, the scenario has been

16   posited by the U.S. Debtor that some of the other EMEA

17   Debtors might assert claims back against NNUK for the

18   liability that results from the FSD.  We would see that as

19   being duplicative and we would not be putting forward a claim

20   that that should be counted for allocation purposes.  There

21   are probably many other claims.  Frankly, we can see a number

22   of other claims of various Debtors that are likely to be

23   duplicative and that should only be asserted against the

24   primary obligor.  In the U.S. case, the PBGC has asserted a

25   claim, and I think it was settled pursuant to the settlement

1  that Mr. Rosenthal referred to which was a claim for

2  controlled person liability.  It wasn't the primary claim for

3  an unfunded pension deficit which the NNI is obligated on.

4  It was a controlled person claim that was settled.  A

5  controlled person liability under ERISA is exactly the same

6  concept as a financial support direction.  It's a way of

7  imposing the same liability on other Debtors.  So we would

8  see that claim as being duplicative and that's pertinent to

9  the arguments that Mr. Rosenthal has made about the NGS and

10  DiamondWare claims and the lien that goes along with those

11  asset sales.

12           I would also note for the record that the claim

13  that Mr. Lowenthal referred to earlier, the claim by NNCC

14  against NNI, looks to us like it would be duplicative.  It

15  looks to us like it's for the same dollars.  So there are a

16  variety of claims that are going to need to be looked at as

17  duplicative and by the way, this also may apply to

18  settlement.  So it's possible that claims have been settled

19  and paid previously and we don't dispute that a claim that's

20  been settled and paid should be counted for allocation

21  purposes provided it meets the standards the Courts have

22  imposed, and that includes that they not be duplicative.

23           So in relation to the Bondholder claim, the

24  Bondholder guarantee claim, what the U.S. is asking for is an

25  exception to the principle of non-duplicativeness.  They're

1   asking that an exception be made for this one claim to the

2   general principle that applies to all other Debtors.  We say

3   that there's no grounds to reconsider on this point.  The

4   same principles should apply to all claims of all Debtors.

5   We intend to adhere to that principle and it would be unfair

6   and inequitable to make a single exception to the principle

7   just to adjust the outcome for the United States.

8           Now, in relation to the proceeds of the NGS and

9   DiamondWare sales, the idea is the same.  The Courts rejected

10  the principle of ownership.  They rejected that for all

11  parties.  For example, we had argued that the EMEA Debtors

12  were -- that all Debtors, in fact, were entitled to the book

13  value of the net tangible assets that they were shown as

14  owning on the books and records of Nortel as of the date of

15  insolvency.  That's also an ownership argument.  That was a

16  specific -- it was actually liquidated.  The Courts rejected

17  that.  We're not seeking an exception for that ownership

18  interest but it's the same idea.  Now, in this case, they're

19  seeking reconsideration of something where they would

20  actually need a separate finding of fact because we don't

21  even know what the specific proceeds are in relation to NGS

22  and DiamondWare.  There would need to be a separate fact

23  determination on this.

24          JUSTICE NEWBOULD:  We lost you.

25          MR. ADLER:  Can --

1              THE COURT:  I think Justice Newbould lost you.

2              JUSTICE NEWBOULD:  We lost you a minute ago.

3              MR. ADLER:  Yeah, thank you.  Can you hear me now?

4              JUSTICE NEWBOULD:  Yes.

5              MR. ADLER:  Thank you.  So in both of these cases,

6    in relation to the Bondholder guarantee claim and in relation

7    to the proceeds of the NGS and DiamondWare sales, they're

8    asking the Courts to make an exception to the general

9    principle, and if you make exceptions to your principles, you

10   wind up with something that is unprincipled, not based on any

11   principle.

12             Now, moving on to the issues that are

13   characterized as being for clarification, several of these

14   have been addressed very well but the one that I want to

15   focus on is the oversight, the type of oversight that the

16   Courts will have in relation to the claims processes and the

17   various Debtors, the claim processes that are still to take

18   place, and the first thing I have to say here with some

19   regret is that the arguments have been made by Mr. Rosenthal

20   and his clients about the Joint Administrators and what

21   they're likely to do in relation to claims within the EMEA

22   Debtors are not well-taken.  They're actually not

23   appropriate.  He -- frankly, they've accused the Joint

24   Administrators and us of dishonesty, that we would fiddle the

25   claims; that we would allow claims that are bogus back and

1  forth simply to inflate the amount of the allocation to the

2  Nortel Debtors in the EMEA Region and it's not appropriate.

3  He calls it a -- he says that the Joint Administrators are

4  known to have a propensity for claim inflation and he bases

5  that on what?  He bases that on the fact that we've taken

6  aggressive positions in the past in relation to claims, in

7  particular, in the claims that they settled for less than

8  what we demanded and he says that because we've taken those

9  aggressive positions, we should be presumed to be dishonest;

10 that we're going to make fraudulent claims in the future.

11 Now, think about that for a minute, Your Honor.  We have

12 Cleary Gottlieb on record saying that if you take aggressive

13 positions, it means you should be considered to be a crook.

14                    (Laughter)

15            MR. ADLER:  These are the people that asked for 73

16 percent of the proceeds from the lockbox.  They seem to think

17 that the Joint Administrators' function in a kind of

18 imaginary world where they can make up claims from one Debtor

19 -- this is what Mr. --

20            JUSTICE NEWBOULD:  Sir, we've lost you.

21            MR. ADLER:  Can you hear me now, Mr. Newbould --

22 Justice Newbould?

23            JUSTICE NEWBOULD:  The last word we heard was

24 lockbox.

25            MR. ADLER:  Well, I'm not sure where I am but --

1              JUSTICE NEWBOULD:    They came to -- they wanted 73

2    percent of the lockbox.

3              MR. ADLER:    Right.    Okay.    So that --

4              JUSTICE NEWBOULD:    That's the last thing we heard.

5              MR. ADLER:    -- was obviously a very aggressive

6    position.    But the arguments that Mr. Rosenthal made in Court

7    today that the Joint Administrators are likely to make up

8    intercompany claims within the EMEA Estate and allow them

9    back and forth simply to inflate the claims base that would

10   be counted for allocation purposes, that's nonsense and it's

11   really not an appropriate suggestion to make about officers

12   of the English Court.    We are officers of the U.S. Court.

13   The Joint Administrators are leaders in their field.    They

14   have the highest reputation.    They are operating under the

15   supervision of Justice Snowden.    They are fiduciaries to the

16   individual creditors and to each of the different Estates.

17   They owe duties to all of the creditors of each of the Nortel

18   Debtors.    They can't inflate the claims of any particular

19   creditor and the comments are, frankly, not appropriate.

20   They're really an abuse of the litigation privilege to be

21   accusing the Joint Administrators and us of dishonesty in

22   this context and they're asking you, Judge Gross and Justice

23   Newbould, to endorse that attack, to make a finding that the

24   proceedings in the English administrations require oversight

25   by you to prevent fraud.    We don't think that that's

1  appropriate.  In fact, reading the Decision, we understood

2  that the Courts, and this is most explicit in Judge Gross's

3  Decision, we're, in fact, respecting the foreign Court

4  processes.  We're respecting the principles of commodity and

5  we've cited the cases that show that general principle.

6  Judge Gross, you wrote that you have every confidence that

7  the tribunals overseeing the Nortel insolvency proceedings

8  across the globe will adjudicate the claims at issue therein

9  in a just and efficient manner.  You said you were prepared

10  to act if they did not.  But in any event, such a

11  hypothetical procedural hurdle did not persuade you against

12  adopting the allocation approach and as I said, it seemed to

13  us that that comment was consistent with the principle of

14  comity and with the appropriate deference and respect that we

15  would assume the Courts would have for each other in these

16  systems.  So, to us, the claims should plainly be determined,

17  in the first instance, under the relevant local law by the

18  relevant tribunals.  There will need to be some procedure and

19  some transparency for the different Debtors to compare the

20  claims registers to make sure that there are no duplicative

21  claims and there may well be disputes about whether

22  particular claims are duplicative or should be counted within

23  the standards that have been outlined by the Courts and we

24  may need to bring those disputes to you in due course for

25  resolution and joint hearings.  But that doesn't mean that

1   these two Courts should engage in supervision of every claim

2   that gets decided in the EMEA Estates or in each other's

3   Estates for that matter.  We don't think the Courts intended

4   to multiply the litigations and increase costs further by

5   having two new areas where claims are going to get contested

6   by having all Debtors participate in each other's claims

7   processes and dispute every single claim, which seems to be

8   what the U.S. Debtor is contemplating.  Frankly, they say in

9   their papers that they plan to avail themselves of the

10  standing that they have in the Canadian proceedings to

11  participate in the Canadian claims and they've asked you to

12  actually supervise -- to make a determination in relation to

13  every EMEA claim that hasn't been cited yet.  I'd like to

14  take you to the U.S. Debtor's Proposed Order if I could.

15  It's at the back of their papers.  Do you have a copy of the

16  Proposed Order?

17            THE COURT:  I do.

18            JUSTICE NEWBOULD:  Just a moment.  Yes.

19            MR. ADLER:  All right.  So the -- on page 4 of the

20  Proposed Order, paragraph number 8 --

21            JUSTICE NEWBOULD:  Just a second.  Yes.

22            MR. ADLER:  So in the Proposed Order that's been

23  submitted in the U.S. Court by the U.S. Debtors, page 4,

24  paragraph 8, the U.S. Debtor says what they're asking for in

25  relation to oversight and supervision.  They say that this

1   Court shall retain oversight of and adopt procedures as

2   necessary to measure the amount of disputed claims.  Now, the

3   term disputed claims comes from the Decision, from Judge

4   Gross's Decision.  He said that he would resolve disputed

5   claims.  And then they put in parenthesis that (for purposes

6   of this Order, disputed claims shall include any claim not

7   allowed prior to the date of the Allocation Opinion and

8   Order).  So what the U.S. Debtor is asking for here is not

9   that they could bring -- that they might identify some claim

10  and say that we think this one's inappropriate, Judge Gross,

11  Justice Newbould, please take a look at this claim.  They're

12  saying that they want you to supervise the determination of

13  every claim that hasn't yet been formally decided, which is

14  really all the claims in the various Estates of the various

15  Nortel Debtors in the EMEA area, not just, you know, anyone.

16  And by the way, 90 percent of those claims are $100,000 or

17  below.  But -- so we say this relief is not necessary or

18  appropriate.  The review should be limited to cases where the

19  parties have a disagreement in relation to duplicativeness

20  and if they really do think that they can comment, show that

21  some claim has been allowed on a fraudulent basis, of course,

22  they should come and make that claim but we say that any fear

23  of that is greatly -- it's ridiculous.  It's not going to

24  happen.  And in relation to the UKP claim, the main issue was

25  the duplication that occurs when you apply the FSD's, when

1  you apply the same liability across the different Debtors,

2  and we have stated very clearly that we will not contend that

3  that should be counted.  It's in the Courts' Decisions and in

4  any form in which that duplication occurs, we will not be

5  suggesting that that should be counted for allocation

6  purposes.

7           The core claim by the UKP, which they've discussed

8  at length in their papers, is the same kind of claim that

9  PBGC makes.  It's based on an actuarial calculation, an

10  actuarial certificate, and in their papers they discuss the

11  fact that such a certificate has been brought about.  It's

12  not some made up number that's inflated.  It's actually based

13  on actuarial calculations.

14           Now, moving on to some of the other issues, I'm

15  going to hand it over to my colleague, Mr. Gottlieb in

16  Toronto, momentarily.  The next issue that concerns us has to

17  do with the merging together of Debtor groups, you know, the

18  creation of these Debtor groups, the so-called EMEA Estate

19  and the treatment of intercompany claims within them.  Again,

20  it seemed clear to us in the Decisions that the allocation

21  was going to be to individual Debtors and not to Debtor

22  groups.  That's what the IFSA requires.  Those how we had

23  also -- always presented it in our various papers and if you

24  trace it back through, through the Allocation Protocol and so

25  on, we made it clear that the allocation needed to be per

1   Debtor and indeed, the Decisions that you've entered provide

2   a format for doing that.  There's no problem with doing that.

3          With respect to intercompany claims within the

4   Debtor groups, disallowing the intercompany claims within the

5   group between the different EMEA Debtors, the different

6   Nortel Debtors in the EMEA Region, is no more rational than

7   disallowing them between the U.S. and Canada.  As I said

8   before, the only thing those parties have in common is that

9   I'm here speaking as their Counsel today.  They are

10  independent entities and the valid claims between them are

11  entitled to be treated on the same bases as the 2 billion

12  claim from the U.S. to Canada.  In fact, I think the only --

13  in terms of what might be in those intercompany claims, I

14  think literally, the only non-duplicative ones that we know

15  about today are the ones for book debts between the different

16  companies that were known to everyone as of the date of

17  litigation.  They're somewhat significant.  Maybe don't move

18  the dial as people have been saying but they're all on the

19  books.  They're not readily contestable and then I think

20  there may be one or two claims for indemnity of one kind or

21  another that relate to pre-petition matters.  But it's not,

22  as Mr. Rosenthal suggested, some black box rule; we're going

23  to go in and make up fraudulently inflated claims just to

24  boost our allocation and, with that, I'll hand it over to Mr.

25  Gottlieb in Toronto.

1           THE COURT:  All right.  Thank you.

2           MR. ADLER:  And I'm sorry, unless there are any

3  questions.

4           THE COURT:  Any questions, Justice Newbould?

5           JUSTICE NEWBOULD:  No thank you.

6           THE COURT:  No thank you.  Thank you, Mr. Adler.

7           JUSTICE NEWBOULD:  Mr. Gottlieb?

8           MR. GOTTLIEB:  Thank you.  Thank you, Your Honor.

9  Hello, Judge Gross.  I'm just going to pick up a couple of

10 the points that Mr. Adler dealt with briefly and I'm mainly

11 going to concentrate on the Decision, the Decisions of the

12 Court, and these are the two clarification points that Mr.

13 Adler referred to.  The first one is the suggestion that the

14 Decisions need to be clarified to confirm that the allocation

15 is going to be to individual Debtor entities as opposed to en

16 masse.  As you know, we say that clarification is not

17 necessary.  It's plain in the Decision and there's no

18 principal basis upon that which would not be a case.  It has

19 to be on an individual basis and that's been consistently put

20 forward throughout.  So I am going to take the Court to the

21 Decision on that to show where that is very clear in the

22 Decisions.

23          Second, I'm going to deal with the intercompany

24 claim point that Mr. Adler just alluded to briefly also by

25 going to the Decision.  In our respectful submission, again,

1   the Decisions are clear that intercompany claims are

2   explicitly allowed through the Decisions.  There is no type

3   of restriction given.  One would have to be ready and as a

4   new clarification, this would not be a clarification but

5   would, in fact, be a reconsideration.  It would be a

6   significant amendment to the Decisions and that high

7   threshold would be made and, frankly, no one has suggested

8   that that should be the case.  It's under the guise of a

9   clarification when the Decisions are very clear on the point

10  and, two, there would be, as Mr. Adler said, no principal

11  basis for it.

12          So I'm first going to deal with the issue of that

13  the Decision is clear that the allocation is to individual

14  Debtor entities, not to groupings.  I will not go through the

15  issues that Mr. Adler already dealt with but I will go right

16  to the Decisions and I will tell Your Honor, just for your

17  notes, that he relevant parts of the Canadian Decision,

18  Justice Newbould's Decision, I referred to at paragraph 49 of

19  our Factum that we filed in Canada and the provisions of the

20  Decision that make this point clear of Judge Gross's Decision

21  are referred to in paragraph 30 of the fact filed in the

22  Court of Delaware before Judge Gross.  So just for your

23  notes, just so you (recording skips) and Justice Newbould, I

24  have your Decision that I'd like to go to just a couple of

25  points for your reference.  Paragraph 30 of your Decision,

1   and you've already alluded to the fact of the IFSA, which is

2   the whole basis upon which the allocation proceeding

3   commenced, paragraph 30 of your Decision, Your Honor, refers

4   to the fact that the IFSA was entered into and it was entered

5   into by all of the various parties and it wasn't entered into

6   by groups and what Your Honor knows, and I won't pull it up,

7   but what Your Honor knows is that each and every one of the

8   entities in the EMEA Region signed independently and when you

9   go through the paragraphs of the IFSA, it refers to the fact

10  that they are each selling Debtors (recording skips) the IFSA

11  and, therefore, are entitled to an allocation.  So paragraph

12  30 of the Decision makes that plain.  But if we can go to

13  paragraph 214 of Your Honor's Decision, 214, and Judge Gross,

14  I'm not sure if you have that up, Justice Newbould's

15  Decision, but this is explicit on the point of separateness

16  for the purposes of this Decision, this proceeding and

17  allocation.  Just so the parties that don't have it, I'll

18  just read this one paragraph.  It says a pro rata allocation

19  in this case would not constitute a substantive

20  consolidation, either actual or deemed, for a number of

21  reasons.  First and most importantly, the lockbox funds are

22  due to the sale of IP and no one Debtor Estate has any right

23  to these funds.  It cannot be said that these funds in whole

24  or in part belong to any one Estate or that they constituted

25  separate assets of two or more Estates that would be

1  (recording skips) away.  There would be no wealth transfers

2  advocated by the Bondholders and here are the key, the next

3  few sentences.  The IFSA made on behalf of 38 Nortel Debtor

4  entities in Canada, the U.S., and EMEA recognize that the

5  funds would be put into a single fund undifferentiated as to

6  the Debtor Estates and then allocated to them on some basis

7  to be agreed or determined in this litigation.  Second, the

8  various entities in the various Estates, so that in my

9  respectful submission couldn't be more clear.  The various

10 entities in the various Estates are not being treated as one

11 entity and the Creditors of each entity will not become

12 creditors of a single entity.  Each entity remains separate

13 and with its own creditors and its own cash-on-hand and will

14 be administered separately and here is obviously for the next

15 argument key, the intercompany claims are not eliminated.

16         So in my respectful submission, in our respectful

17 submission, that is clear of the separateness and that's why

18 I again say, respectfully, when we go to paragraph 258, which

19 is the conclusion about what the allocation is, in 258(1),

20 it's each Debtor Estate is to be allocated that percentage of

21 the lockbox funds that the total allowed claims against that

22 Estate bear to the total allowed claims against all Estates,

23 and one should look at (2) and (3) and (4) as it refers to

24 all of those issues regarding Debtor Estates.  Nowhere in the

25 judgment is there a suggestion that each of the Estates that

1    contributed to the lockbox funds that is referred to in the

2    IFSA would be treated en banc, en masse, and would not

3    maintain their separate identity in these proceedings.

4              The suggestion by Mr. Coleman that's been dealt

5    with already in some way that this would be a separate

6    allocation proceeding now after this one (recording skips) in

7    the United Kingdom in the EMEA Region was surprising; the

8    first time we've ever heard that there was now going to be a

9    new allocation proceeding, but it's contrary to everything

10   that's taken place to date and that's important because it's

11   contrary to the express terms of IFSA because IFSA talks

12   about the determination of allocation by the dispute

13   resolvers.  That's what this hearing was.

14             JUSTICE NEWBOULD:  Just a minute.  You're saying

15   IFSA provided for the --

16             MR. GOTTLIEB:  If there could not be an agreement

17   between the parties as to the proper allocation --

18             JUSTICE NEWBOULD:  Right.

19             MR. GOTTLIEB:  -- there would be litigation by the

20   disputes resolvers because the allocation would be determined

21   by the dispute resolvers which ended up being these two

22   Courts.

23             JUSTICE NEWBOULD:  Right.

24             MR. GOTTLIEB:  And that was going to be my second

25   point and, Your Honor, you weren't here yet but in June of

1  2011, the Canadian Debtors argued strongly before Justice

2  Molisch [ph] and Judge Gross to say that dispute resolvers

3  means the Canadian and United States Courts and that was the

4  judgment of these two Courts on that very point.

5          JUSTICE NEWBOULD:  Right.

6          MR. GOTTLIEB:  So to now suggest that what that

7  means is there would be step 1 and step 2, that, in my

8  respectful submission, goes against the IFSA and goes against

9  the Decision of these two Courts on the very point of who

10  gets to determine allocation, which would lead to the next

11  point, obviously, which is, as Mr. Adler alluded to, there's

12  really no ability in the United Kingdom to have an allocation

13  dispute amongst all these entities and that is sure not what

14  any party in this litigation should want to happen, the

15  suggestion that we're going to now start again.

16          And, Your Honor, I'll just make a couple

17  additional points of fact on that.  Like I said, it's in the

18  Decision, 214 and 258 with the subparagraphs, that's what the

19  Decision says.  I will also point out, and this is really in

20  response to Mr. Coleman's point about picking on little

21  words, phrases in the Decisions, to say well, here it says

22  Debtor Estate.  There it says (recording skips) EMEA Debtors,

23  et cetera.  When one reads the Decisions, what you see is

24  that the Court is using those, in my respectful view,

25  properly.  It's the short form for all of the entities and

1  I'll say to Judge Gross, footnote 13 of Judge Gross's

2  Decision actually makes that point clear.  It says the EMEA

3  Estates includes, and 13 lists them all, footnote 13.  And

4  Your Honor's judgment does the exact same thing in I believe

5  it's the first footnote.  EMEA is an acronym for the 19.  So

6  to suggest that those are telling and that has some bearing

7  on what the Court decided, in my respectful submission, is

8  just not of much guidance.  The Decision is clear.

9          I referred to the IFSA, Your Honor.  The

10  Allocation Protocol is the same.  The Allocation Protocol

11  deals with this point that the allocation is amongst all the

12  entities, not groups of them.

13          JUSTICE NEWBOULD:  Can you -- just for my note

14  taking -- I'm sure it's up on the top of your head.  What's

15  the exhibit number, the trial exhibit number, for the IFSA?

16          MR. GOTTLIEB:  I'm about to tell you that.

17          JUSTICE NEWBOULD:  If you haven't got it, Mr.

18  Zarnett can tell me, I'm sure.

19          MR. GOTTLIEB:  IFSA is TR40015.

20          JUSTICE NEWBOULD:  40015, is that --

21          MR. GOTTLIEB:  Yes, and off the top of my head, I

22  have some paragraph references if that will help as well.

23          JUSTICE NEWBOULD:  Sure.

24          MR. GOTTLIEB:  11(a), 11 -- 11(a) deals with the

25  rights of the parties and that's why they're entering into

1  this.  11(b), the same, refers to the individuals.  11(d)

2  refers to them as selling Debtors, each of them a selling

3  Debtor.  And 12(b), and this will be just the next factual

4  point I wanted to make, Your Honor, 12(b) refers to the

5  Escrow Agreements because as you recall, as part of the sale,

6  the monies were to be moved around pursuant to Escrow

7  Agreements.  The Escrow Agreements also provided how the

8  monies could be paid out and it's not on a group basis.  That

9  wasn't contemplated.  It refers to the selling Debtor, each

10 of the selling Debtors, and although I won't take you to it

11 now, I have a copy if Your Honor wants it, but the Escrow

12 Agreements actually have a schedule to them that lists all of

13 the individual Debtors, all of them, including all of the

14 individual EMEA Debtors, that talks about each of them were

15 given an account number where the funds are supposed to go on

16 an individual basis.  As Mr. Adler says, there's not one bank

17 account.  There's a whole list of different funds.  It's

18 Schedule E of the Escrow Agreement and I'm happy to hand up

19 if you want but that's what it is.  I can give you a TR for

20 that.  TR for that is 48110 and it's Section 5.

21            JUSTICE NEWBOULD:  481?

22            MR. GOTTLIEB:  I apologize.  48110.

23            JUSTICE NEWBOULD:  Yeah.

24            MR. GOTTLIEB:  And that's the MEN Escrow

25 Agreement.  Section 5 and Schedule E have the separate

1   accounts.  And the final point I'll make there, Your Honor,

2   is that the License Termination Agreements, obviously as

3   well, were on an individual basis.  Each individual had to

4   terminate licenses and therefore had to give up rights and

5   that is the basis upon which each of them was entitled to an

6   allocation.  And the suggestion that was made I believe by

7   Mr. Coleman and someone else that we always pitch this case

8   on a group basis, as Mr. Adler alluded to with respect,

9   that's just dead wrong.  Our original allocation paper talked

10  about the distribution had to be to each of the entities.

11  Our final paper said that.  Mr. Huffard's expert report

12  attached as a Schedule to it, the way that the allocation, in

13  his respectful view, had to be done on an entity-by-entity

14  basis, and our post-trial submission also did it on the same

15  basis.  So with respect, it's simply incorrect to suggest

16  that that was the basis upon which the trial proceeded.  So

17  in our respectful submission, there is no need for

18  clarification of the point.  It's clear in the Decision and

19  there would be no principle basis otherwise.

20          The second and final point, Your Honor and Judge

21  Gross, is with respect to the intercompany claims.  I've

22  already touched on that, as did Mr. Adler.  I say the

23  Decision is, again, clear that intercompany claims are

24  included.  In fact, I don't think anyone suggests before Your

25  Honor or Judge Gross that intercompany claims are not

1  included.  They couldn't say that because the Decision

2  explicitly says it in the conclusion that intercompany claims

3  are included.  What they -- what the Canadian Debtors and the

4  U.S. Debtors are trying to say is that intercompany claims

5  don't include intra-region claims which, of course, you can

6  comb your judgment, Your Honor.  Judge Gross, you can comb

7  your judgment.  You won't see that anywhere because that's

8  not what they say.  They don't say that.  They don't suggest

9  that anywhere.  So what is being sought there is not a

10 clarification but a reconsideration of a point that was not

11 even raised at the trial.  So it's asking for a different

12 Decision based on new submissions today.

13         And I referred Your Honor, Justice Newbould, to

14 214 and, again, it's the same point, 214, 258(2) and (3)

15 refer to the intercompany claims and they do not in any way,

16 shape, or form suggest that they are in the input.

17         JUSTICE NEWBOULD:  Paragraphs what?

18         MR. GOTTLIEB:  I apologize?

19         JUSTICE NEWBOULD:  Paragraphs what?

20         MR. GOTTLIEB:  214.

21         JUSTICE NEWBOULD:  Yeah.

22         MR. GOTTLIEB:  It's the one I referred to when I

23 was talking about separateness and you'll recall the last

24 line refers to intercompany claims being preserved.  I just

25 want to make sure I have that language.

1          JUSTICE NEWBOULD:  Yeah, you do.

2          MR. GOTTLIEB:  You got that?  Okay.

3          JUSTICE NEWBOULD:  The other one?

4          MR. GOTTLIEB:  Yeah, they're not eliminated.  And

5    258(2) and (3) refer to the intercompany claims and, again,

6    do not suggest that there is a limitation on them.

7          JUSTICE NEWBOULD:  Give Judge Gross the references

8    in his Decision to both these forms.

9          MR. GOTTLIEB:  I referred to the Factum but, Judge

10   Gross, what I can give you is the following, and this is

11   referred to in the Factum that we filed before you, Judge

12   Gross, I'll give you the paragraphs of your judgment which

13   are 91, 93, 99, 100, 106, and 7, and this deals with the

14   separateness point and, again, there is no basis to say that

15   the intercompany claims that are referred to are not

16   included.  Thank you.  Mr. Barrett just pointed out; I

17   apologize, those are page numbers for Judge Gross, not

18   paragraph numbers.

19         THE COURT:  Yes, I understood that.  Thank you.

20         MR. GOTTLIEB:  Thank you.  Yes, thank you.  So

21   like I said, the Decision, in our respectful submission, is

22   clear that there (recording skips) and, therefore, there's no

23   possible clarification that can be given.  I will just very

24   briefly touch on the point that there is no principled

25   possible basis either; that there could be such a distinction

1    in the Decisions because to do that would be to disregard

2    valid claims against Debtor Estates, and I'll just make two

3    points for that.

4              Point number one is what I'm going to suggest is

5    the obvious one, which is if NNL, the Canadian company, has a

6    claim against NNSA for a trade debt, for example, that's

7    included on this -- on the theory.  But if NNUK has a claim,

8    exact same trade debt on this theory of a difference, that

9    would be excluded for allocation purposes.  It's a trade

10   claim.  There's no basis to make a distinction between the

11   two of them and it has a serious ramification if that were

12   the case and I'll give you an example of Nortel Ireland,

13   NNIL.  NNIL has trade claims against it, against it from

14   various -- in the EMEA Regions.  They're trade claims and,

15   therefore, they have to be paid.  There's no question that

16   they will come into allocation on a distribution.  That

17   includes also there are claims of the Irish pensioners

18   against the Nortel entity.  Those have to be paid as well.

19   If, for example, Ireland is not entitled to an allocation as

20   a result of the trade claims, then it simply takes away from

21   the amount that's available to pay all the claims and will

22   lower the amount payable to the Irish pensioners; for

23   example, for no principled reason whatsoever, other than it

24   came from someone on the same side of the ocean as opposed to

25   someone across the ocean.  And, Your Honor and Judge Gross, I

1  just want to make another factual point just so we don't lose

2  sight of this.  There is not one corporate grouping in the

3  EMEA Region, and I don't want that to be lost here.  These

4  are not all companies with the same parent in this.  NNSA is

5  owned by NNL, the Canadian company.  So NNSA is, in fact,

6  owned by NNL.

7           JUSTICE NEWBOULD:  Ninety-one percent.

8           MR. GOTTLIEB:  NN Ireland --

9           JUSTICE NEWBOULD:  Ninety-one percent.

10          MR. GOTTLIEB:  And -- you have the point.  NN

11 Ireland, the same, is owned by NNL.  So it's not like there's

12 one family group over there that's separate from the rest of

13 the world.

14          The second and final point, Your Honor and Judge

15 Gross, I want to make about why on a principle basis it

16 wouldn't work is you will recall, and this is in our

17 (recording skips) that NNL had claims against various EMEA

18 Estates, trade claims and the like, and they were all on the

19 books as of the date of the filing.  The Monitor verified

20 those claims, confirmed the claims, confirmed the dollar

21 value of those claims, and as part of the settlement of the

22 EMEA claims into Canada that this Court approved, that the

23 Monitor endorsed, as part of that settlement, those claims

24 were assigned from NNL to NNUK.  So the claims that NNL had

25 against various EMEA entities, entities in the EMEA Region,

1  were assigned to NNUK.  The suggestion is that because

2  they're now held by NNUK against various entities of EMEA,

3  they don't count for allocation.  Had they stayed and were

4  not assigned, they would count for allocation and, obviously,

5  there's no principle basis to differentiate between the same

6  claim being held and then assigned pursuant to the Court

7  Order.  It just, in our respectful submission, makes no

8  sense.  So those are my submissions as to why there is no

9  clarification necessary and, in any event, there would be no

10 principle basis to grant those reliefs and subject to any

11 questions from you, Justice Newbould or Judge Gross, I'll say

12 thank you and those are my submissions.

13         JUSTICE NEWBOULD:  Thank you, Mr. Gottlieb.

14         THE COURT:  Thank you, Mr. Gottlieb.

15         MR. GOTTLIEB:  Thank you.

16         JUSTICE NEWBOULD:  Who's next?

17         MR. GOTTLIEB:  Mr. O'Connor?

18         JUSTICE NEWBOULD:  Mr. O'Connor?

19         MR. GOTTLIEB:  Yes.

20         THE COURT:  Good afternoon, Mr. O'Connor.

21         MR. O'CONNOR:  Good afternoon, Judge Gross.  Good

22 afternoon, Justice Newbould.  For the record, Brian O'Connor,

23 from Willkie, Farr & Gallagher, LLP, on behalf of the U.K.

24 Pension Claimants.  Just so you have -- I don't think we'll

25 be more -- between Mr. Barrack and I, hopefully, within a

1   half-an-hour or 35 minutes and the way I plan to proceed is I

2   will address the Court generally about where we are and try

3   to give you three points about the reconsideration standards.

4   But, understanding that you've heard a lot today --

5           JUSTICE NEWBOULD:  It's hard to hear you, Mr.

6   O'Connor.

7           MR. O'CONNOR:  I'm sorry.  Mr. -- I will address

8   the Courts initially as to a preliminary statement and some

9   statements about the standards for reconsideration.  Mr.

10  Barrack will -- I will turn the podium to him.  He will

11  address any questions the Court may have in Canada as to the

12  reconsideration statement --

13          JUSTICE NEWBOULD:  Okay.

14          MR. O'CONNOR:  And he will then address the first

15  issue on reconsideration that the Debtors request that under

16  the guarantee of the bonds.  He will turn it back to me to

17  address the issue about the proceeds of the two subsidiary

18  sales.  Mr. Barrack will address the clarifications other

19  than the clarification requested for procedures to supervise

20  the claims, which I will handle.

21          THE COURT:  Okay.

22          MR. O'CONNOR:  Having said that, you know, despite

23  I think what all would agree were monumental efforts by both

24  Courts in crafting their Allocation Opinions and the Courts

25  expectations that the parties accept and implement those

1    rulings, the litigation continues.  In fact, as you've seen,

2    even new parties have joined the fray in the form of the

3    Trade Consortium and the Conflicts Administrator for Nortel

4    France, each asking --

5              JUSTICE NEWBOULD:  Mr. O'Connor, you -- I can't

6    see you so I don't know if you're moving away from the mic or

7    what but --

8              MR. O'CONNOR:  yeah.

9              JUSTICE NEWBOULD:  -- you started --

10             MR. O'CONNOR:  I will try --

11             JUSTICE NEWBOULD:  If you could get --

12             MR. O'CONNOR:  -- Your Honor to stay fixed right

13   in front of the microphone.  Can you hear me now?

14             JUSTICE NEWBOULD:  Sounds perfect right where you

15   are.

16             MR. O'CONNOR:  Okay.

17             JUSTICE NEWBOULD:  Don't move.

18             MR. O'CONNOR:  Okay.

19                       (Laughter)

20             MR. O'CONNOR:  Each asking for reconsideration and

21   threatening to appeal.  That's unfortunate, to say the least,

22   given that the $7.3 billion in sale proceeds remains locked

23   in the lockbox and administrative expenses continue to

24   accrue.  After an unprecedented cross-border trial, the

25   Courts independently concluded that none of the keys that --

1  to the lockbox held by the U.S. Debtors, the Canadian

2  Debtors, or the EMEA Debtors fit.  Each had their own flaws.

3  Instead, the Courts crafted a key to the lockbox of their own

4  design based on a modified pro rata methodology that

5  implements certain of the toggles that the UKPC offered as an

6  alternative to its pure pro rata methodology.

7         The U.S. interests, however, stand alone in

8  seeking to re-cut that key, expressing their disappointment

9  with the Courts' Decisions and contending that the result is

10  somehow inequitable.  But the U.S. Interests Motions, I

11  submit, proceed on three fallacious predicates.  The first,

12  that the Courts' Decisions were results-driven; that the

13  Courts strove to land on a middle ground among the Estates'

14  competing allocation theories and that they intended creditor

15  recoveries across the world to be relatively comparable.

16  That's simply not the case.  The Courts made it clear that

17  none of the Estates self-serving allocation mythologies was

18  supported by the record and in their place, the Courts

19  crafted a principle-driven methodology to fill the vacuum

20  left by the absence of an agreement or statute to govern the

21  allocation of the lockbox proceeds.  That methodology was not

22  engineered to achieve a middle ground among the Debtor's

23  competing theories or to produce specific creditor

24  recoveries.

25         Second, although the U.S. Debtors -- U.S.

1  Interests decry the recoveries the U.S. Creditors will

2  receive under the modified pro rata methodology, the data

3  they present, the Britven analysis and the Britven data, as

4  adjusted unilaterally by the U.S. Debtors, demonstrate

5  nothing of the sort.

6          The third fallacy is that the allocation trial was

7  solely about allocation of the lockbox proceeds.  Now,

8  admittedly, if the Courts had determined to accept one of the

9  three competing Estate theories, it would have been solely

10  about the lockbox but it became quite apparent long before

11  the trial began and throughout the trial that once pro rata

12  was one of the methodologies being considered by the Courts,

13  it, by definition, was not only about the lockbox.  You had

14  to take into consideration, and did take into consideration,

15  what to do with the cash and other assets in the residual

16  Estates as well as intercompany claims and the big $2 billion

17  claim between NNI and Canada.

18          Now, ignoring for the moment the appropriate

19  amount of any claim that the bonds may have at NNI for

20  distribution purposes, the old Ivan Ho issue, if you look at

21  the data, the only data by the way that was before the Court,

22  the Britven analysis, and by the way, people have referred to

23  this I think quite accurately as a love-hate relationship,

24  everybody had criticisms of --

25          JUSTICE NEWBOULD:  No, you cut off.

1          MR. O'CONNOR:  I'm sorry.  Everybody had

2   criticisms of the Britven data but that was the only data

3   that was before the Court and the trial record.  If you look

4   at that, based on that unadjusted -- and you look at the full

5   recoveries that the U.S. Creditors will receive, based on the

6   lockbox, the $2 billion intercompany claim, as well as the

7   cash, the General Unsecureds will receive 75 percent and the

8   bonds 88 percent.  If you go and you look at the adjusted

9   Britven data, which, of course, again was not before the

10  Court; that the U.S. have submitted now, the General

11  Unsecureds will still receive 62 percent and the bonds 81

12  percent.

13          Now, you've heard a lot of numbers being thrown

14  around today and that's one of the problems I perceive here.

15  I think, theoretically, again, when you're talking about

16  reconsideration, you should be looking at what the facts and

17  arguments were made before Your Honor.  A lot of the data

18  that's being floated around today, of course, was not there,

19  and I'll add another bit of data that was not before Your

20  Honor and that is as we see it, if you were to cherry-pick

21  the way the Debtors want and you would allow them to have an

22  allocation claim of the full amount for the bonds for that

23  purpose, then the recovery for the General Unsecureds would

24  drive up to 98 percent and the bonds it would be 99 percent,

25  and I submit, Your Honor, that none of that information is

1  before you.  It's certainly not evidence.  And I seriously

2  wonder if the Courts were to grant reconsideration and change

3  their Opinion and appeal were then to follow, what would an

4  Appellate Court do?  How could it review what the Courts had

5  done because there's no evidence in the record for your Court

6  -- for Your Honors to change the substance of what your

7  opinion was?  Now, UKPC accept the Courts' Allocation

8  Opinions and, in our view, no basis exists for the Courts to

9  reconsider those issues presented by the U.S. Debtors either

10 as to how the bond guarantee claim ought to be treated or as

11 to the proceeds from the sale of NNI's equity in NGS and

12 DiamondWare.  And with respect to clarification, the UKPCs

13 start with the premise that clarification is certainly

14 appropriate if the Courts believe that there was something in

15 their Opinion that they intended isn't clear and you want to

16 clarify that.  Clarification is not appropriate, however, to

17 revise what the Courts had originally intended when they

18 wrote their opinions.  That's for an Appellate Court.

19        Now, we have stated in our papers what we

20 understood the Courts to have meant on the issues that the

21 U.S. Interests seek clarification on but we stand ready to

22 accept whatever the Courts say.  If the Courts believe that

23 those issues do require clarification and if your

24 clarification would be consistent with what Your Honors

25 intended, by all means, the Courts should do that and you

1  should do it irrespective of what effect those clarifications

2  may have on creditor recoveries.  We don't know what that

3  would be and, frankly, we think this should be done on a

4  principal basis and we were told throughout the case that

5  creditor recoveries don't drive this process.

6        Now, turning just briefly, Your Honor, to the

7  reconsideration standards, I think if you look at all the

8  papers, I think all the Objectors are singing from the same

9  hymnal.  I don't think there's too much to say so I won't

10  belabor that.  I will make a couple of quick points.  You

11  know, the Debtors had moved pursuant to Rule 59(e) and in

12  their reply papers, they also make reference to Rule 60(a)

13  which they quote is designed to "correct an oversight or

14  omission in a judgment or Order."  But I think if you look at

15  the cases, and I'll direct you to 11, Wright and Miller on

16  Federal Practice and Procedure at Section 2854, the Third

17  Edition, it's clear that those errors or oversights are

18  strictly clerical.  So to the extent, for example, of Mr.

19  Lowenthal's request that you correct a typo or a reference to

20  a name that's clearly incorrect, 60(a) permits you to do

21  that.  It does not permit you to change something that you

22  had otherwise deliberately done.  So I think the U.S.

23  interests are stuck with the standards under 59(e) and again,

24  there's been no reference to an intervening change of

25  controlling law.  There's certainly been no reference to any

1 new evidence that wasn't available.  No one has identified

2 either a clear error of fact or law.  So what you're left

3 with is to prevent manifest injustice and I think with

4 respect to that, that even in trying to do that, there's

5 certain things that the cases make clear that the U.S.

6 Interests cannot do.  One, they can't re-argue issues already

7 litigated.  They can't ask the Courts to re-think their

8 Decision.  They cannot argue new facts or issues that they

9 didn't present to the Court.  They can't use Reconsideration

10 Motion to second guess their own strategic litigation

11 decisions made at trial.  And they simply can't seek

12 reconsideration because they're disappointed.  If a party

13 wants to litigate issues, re-litigate issues, the proper

14 medium is an appeal, not reconsideration and, frankly, the

15 U.S. Debtors concede as much because they've now told you

16 that if the Courts grant them what they want on

17 reconsideration, they will forego an appeal.  Obviously, what

18 they're looking for is to change the Decision in a way that

19 only an Appellate Court can do.

20        Clarification, I won't spend much time on.  Again,

21 if you think that your Decision is unclear and you want to

22 clarify it to make it consistent with your original intent,

23 that's fine.  But, by the way, it's not appropriate to seek

24 additional findings or rulings by way of a Motion for

25 Clarification.  With that, I'll pass the baton to Mr. Barrack

1  to address any issues on the Canadian law on reconsideration

2  and clarification.

3          MR. BARRACK:  Good afternoon, Judge Gross, Justice

4  Newbould.  I had a speech written but most of it's been given

5  so I'm going to go to bullet points.  On the test in Canada,

6  it's in our Factum at paragraphs 14 to 23 and I adopt the

7  submissions of Mr. Zarnett and Mr. Rosenberg.  On the

8  reconsideration of the guarantee claim, the U.S. Debtors make

9  it clear at paragraph 4 of their Motion that they are asking

10 the Courts to change their mind and they're asking the Court

11 to change their minds because of the severe, depressing

12 effect of the judgment.  There's no legal basis to do that in

13 Canada.  In both jurisdictions, there's no basis to make such

14 a change.  The Courts knew what they were doing.  Judge

15 Gross, you stated at page 62 the 2.02 -- sorry, the 2.02

16 billion intercompany claim already accounts for the U.S.

17 Debtor's contributions as the primary breadwinner.  The

18 Courts' determination to recognize (recording skips) as well

19 as cash-on-hand, relegates the arguments raised against a pro

20 rata approach to concerns for the process rather than the

21 substance.  The Court recognized as well that it was not

22 equating ultimate recoveries.  Judge Gross, you stated at

23 page 63, "Further, the Court is not ordering a consolidated

24 or coordinated global distribution to ensure that each

25 creditor of the various insolvency Estates actually receives

1    a set pro rata distribution."  And at page 91, you stated "A

2    modified pro rata allocation model which recognizes both the

3    integrated approach which the CCC and the NUK -- NNUK urge

4    while maintaining, or at least recognizing, the corporate

5    integrity of the Nortel entities."  So that it is clear what

6    you're being asked to do.  You're being (recording skips) on

7    a results basis (recording skips) because of its effect on

8    one creditor and to turn it around in a way that would cause

9    unintended consequences for other creditors, and as others

10   have said, would lead to serial Motions for Reconsideration

11   and, in our submission, the Court should avoid that.

12          The basis on which Mr. Rosenthal said that he

13   could come and make those submissions is that the parties

14   were not given fair warning that the Courts would make this

15   adjustment and you have been taken through several parts of

16   the evidence that were before the Court and we adopt those

17   but I would just take you to one further place.  You'll

18   recall that there was a Motion to Strike the Pro Rata Expert

19   Reports and the UKPC filed a response to that and in that

20   response, at paragraph 205, the following was --

21          JUSTICE NEWBOULD:  Which party?

22          MR. BARRACK:  UKPC and it filed a Post-Trial Reply

23   at paragraph 205.  This was in response to the -- in response

24   to a Motion to Strike.

25          JUSTICE NEWBOULD:  So you're saying; I just want

1  to make my note, they filed -- the UKPC filed a response to a

2  Motion?

3              MR. BARRACK:  To Strike.  Remember, there's a

4  Motion to Strike --

5              JUSTICE NEWBOULD:  I do.

6              MR. BARRACK:  -- and we filed a response to it and

7  I can take you through many, many parts of the evidence.

8              JUSTICE NEWBOULD:  EPC or -- okay.

9              MR. BARRACK:  UKPC.

10             JUSTICE NEWBOULD:  Right.

11             MR. BARRACK:  Because we were calling the pro rata

12 experts.

13             JUSTICE NEWBOULD:  Right.

14             MR. BARRACK:  And we were filing a response and at

15 paragraph 205 of that response -- okay.  Sorry.  I am

16 reminded that we used this a number of times.  We did -- the

17 cut and paste feature was in frequent use.  So you will find

18 this at the UK --

19             JUSTICE NEWBOULD:  Did you charge for it twice?

20             MR. BARRACK:  Pardon?

21             JUSTICE NEWBOULD:  Did you charge for it twice?

22                         (Laughter)

23             MR. BARRACK:  We only charged for it twice in this

24 case.  You don't know how many people attempt to cut and

25 paste it.  UKPC Post-Trial Reply at 205 and the UKPC Factum

1  --

2          JUSTICE NEWBOULD:  For the Post-Trial Brief?

3          MR. BARRACK:  Reply.  So in our Reply submission

4  it was paragraph 205.

5          JUSTICE NEWBOULD:  All right.

6          MR. BARRACK:  And in the UKPC Factum on the

7  opposition to the U.S. Interests' Motion to Strike the Expert

8  Reports, it's at paragraph 96.  So it's twice.  And what was

9  stated -- and this is entirely consistent with the evidence

10  and I can take you to multiple times when Mr. Bazelon was

11  asked are the Judges mandated to do one thing or another with

12  the guarantee and you'll recall he constantly said no, that's

13  for the Court.

14          So what we wrote was although a pro rata approach

15  involving a single pool distribution would normally recognize

16  one claim against one pool of assets, it is always within the

17  Court's discretion to determine whether alternate treatment

18  of particular claims is warranted and the factual and

19  evidentiary analysis that might be relevant in determining

20  whether to craft such a solution.  An approach set out in the

21  pro rata reports can accommodate any decision that the Courts

22  may make in that regard and that was a constant theme of our

23  submissions.  We advocated a pure pro rata.  The Court did

24  not accept a pure pro rata.  The Court made significant

25  adjustments.  The Court made significant adjustments in favor

1  of the U.S. Estate.  Those two are principally the $2 billion

2  intercompany claim and by not including cash where pure pro

3  rata would have done that and the rationale for it in the

4  Decision is clear and so then on that basis, we say that

5  there was ample opportunity to address this issue at trial.

6  But rather than address it, you will recall that it was

7  really given the back of the hand.  It was given the back of

8  the hand by saying creditor recoveries are not important,

9  shouldn't be taken into account, and the experts were

10  advancing the other theories and largely ignoring pro rata.

11         Now, questions were raised about this treatment,

12  reconciling the treatment that the Court did, in fact, give

13  to the bond guarantees and the UKPC funding guarantee

14  (recording skips) claims.  As we read the judgments, UKPC

15  accepts them and it accepts the premise that if two claims

16  relate to the same debt, only the primary debt is counted for

17  allocation purposes and the guarantee falls away or the

18  ancillary claim falls away.  That is why the bond debt and

19  the guarantee debt under the same debt are not double-counted

20  and it's similarly why the Section 75 debt in multiple FSDs

21  are not counted.  It's that duplicative claim and there's a

22  further aspect to the case.

23         JUSTICE NEWBOULD:  Again?

24         MR. BARRACK:  That is why the Section 75 debt and

25  the multiple FSDs into the other European Estates are --

1            JUSTICE NEWBOULD:  Okay.

2            MR. BARRACK:  -- don't count and that's made clear

3    in your judgments and we accept the principle.  And there is

4    a further instance that was raised at -- in the U.S. Debtor's

5    Reply, and just for your note, page 32, page 17, and that

6    refers --

7            JUSTICE NEWBOULD:  Page what?

8            MR. BARRACK:  Paragraph 32, page 17.

9            JUSTICE NEWBOULD:  Of what?

10           MR. BARRACK:  Sorry.  Of the U.S. Debtor's Reply.

11   It was filed on this --

12           JUSTICE NEWBOULD:  Did you file this here or --

13           MR. BARRACK:  -- Motion.

14           JUSTICE NEWBOULD:  Okay.

15           MR. BARRACK:  On this Motion.  And that refers to

16   something that's known as the snapback claim and the snapback

17   claim is if a company has -- if there's an FSD award, is

18   there a further claim on as a result of the intercompany

19   claim as a result of it.  That is an ordinary incident of an

20   FSD and would be duplicative and again would not be included.

21   We accept that those would not be included in the claims

22   basis.  And so to the extent debts are the same, they're out.

23   To the extent they relate to different debts, they are in.

24           I had submissions on the -- that is all I'm going

25   to say on the -- there's many other points made to you on

1    these guarantee claims and why reconsideration should not be

2    given.  That's all I'm going to say.  We adopt the other

3    Objectors submissions on those.

4           I was going to make submissions on the single

5    debtor point and the intercompany claims point but Mr.

6    Gottlieb's covered that in detail and I don't think I need to

7    go through it.

8           With respect to the inclusion of U.S. settlements

9    in the claims base or settlements in the claims base, this

10   arises out of a point made at page 112 of Judge Gross's

11   Decision, point number 4, that reads "Intercompany claims and

12   settlements approved by the U.S. Court and the Canadian Court

13   will be included in calculating the allocation."  There's --

14   there has been some in the written materials before you --

15           JUSTICE NEWBOULD:  What paragraph was that you're

16   referring to?

17           MR. BARRACK:  It's at -- the paragraphs are not

18   numbered in Judge Gross's.

19           JUSTICE NEWBOULD:  What page?

20           MR. BARRACK:  It's at page 12 -- 112 and there are

21   enumerated points.  It's point number 4 and it reads

22   "Intercompany claims and settlements approved by the U.S.

23   Court and the Canadian Court will be included in calculating

24   the allocation" and there's arisen some debate within the

25   materials before you which may require clarification as to

1  what the Courts meant in the circumstances and the Court may

2  not be able to take in account all circumstances, but as we

3  read those words, we took them to be restricted to

4  settlements which have unpaid claims whereas settled and paid

5  claims aren't (recording skips) because such prior claims or

6  such amounts which were in the past claims have been

7  extinguished by payment and that is consistent, that

8  interpretation we believe is consistent with excluding cash

9  from allocation because you would either have a historic

10  claim that you traded for cash.  It would either have been

11  cash or a paid out and either way, it would be unaffected in

12  the allocation result.  And similarly, if you included those

13  claims, it would result in distortion as between the States

14  -- distortion because paid claims will not participate in the

15  allocated funds.  And in terms of in whatever way this is

16  clarified, we would urge the Court to be careful of the

17  potential (recording skips) in forensic exercises to which

18  settlements are included and it's for that reason we have

19  urged that only pre-petition claims should be included in

20  that basis, but again, on a clarification basis.  You know

21  what you meant.  You know whether you did or didn't turn your

22  mind to those nuances and intricacies and whether that's

23  today or for another day.

24            And then finally, before I turn it back over to

25  Mr. O'Connor, the inclusion of the reserves for certain

1  claims.  This really relates, and we put this out in our

2  written submission to the taxes question, and we would submit

3  that taxes should not be included in the allocation base that

4  you have some --

5          JUSTICE NEWBOULD:  What shouldn't be included?

6  The what?

7          MR. BARRACK:  The taxes, taxes that an Estate

8  (recording skips) and UKPC urges that because this is a new

9  argument, not a clarification, taxes would be paid under any

10  allocation theory and taxes like cash are a feature, an

11  individual feature of the Estate, not claims-based.

12          And finally, as I've done privately and I'd like

13  to do to Judge Gross as well, I'd like to thank both Courts

14  for the extreme amount of work that went into this Allocation

15  trial.  The diligence to the reasons is remarkable, separate

16  and apart from any outcome.  Thank you.

17          MR. O'CONNOR:  Your Honor, a few brief comments

18  on the NGS DiamondWare issue.  You know, in our Objection to

19  the U.S. Interests Motions, we made the point that -- the

20  argument that those funds should not be treated for

21  allocation purposes but should be given completely to the

22  U.S. Debtors --

23          JUSTICE NEWBOULD:  Can you repeat --

24          MR. O'CONNOR:  Yeah.

25          JUSTICE NEWBOULD:  That broke up, Mr. O'Connor.

1   Can you repeat that, please?

2           MR. O'CONNOR:  Yes, Justice Newbould.  I was

3   saying that in our Objection, we had made the argument that

4   the U.S. Debtors had never made an argument in either -- any

5   of the Pre-Trial Briefs, the Post-Trial Briefs, or any of the

6   argument before the Courts that those funds ought to not be

7   treated for allocation purposes but they should belong

8   entirely to the U.S. Debtors and in response --

9           JUSTICE NEWBOULD:  Which funds?

10          MR. O'CONNOR:  -- to that --

11          JUSTICE NEWBOULD:  Which funds are you talking

12  about?

13          MR. O'CONNOR:  The NGS and the DiamondWare, the

14  sale of NNI's equity in those two subsidiaries.

15          JUSTICE NEWBOULD:  Yes.

16          MR. O'CONNOR:  And in response to our argument,

17  the Debtors said in their Reply they don't point to any

18  argument they made in any Pre-Trial Brief.  They don't point

19  to any argument in a Post-Trial Brief or anywhere in the

20  transcript, the argument.  What they do is they refer to two

21  footnotes in Mr. Kinrich's expert report.  That was footnote

22  34 on page 9 and footnote 48 on page 14.  Now, if you look at

23  those two footnotes, all those footnotes say is that Mr.

24  Kinrich included the revenues of NGS and DiamondWare as part

25  of the revenues of NNI for purposes of his analysis based

1  upon the U.S. Debtor's revenue theory for allocation.

2  There's nothing in there to suggest anywhere that that was

3  anything more than part and parcel of the Debtor's revenue

4  theory.  They used the revenues of those two subsidiaries to

5  come up with the aggregate revenue percentage that they said

6  the U.S. Debtors had provided and at no point though did they

7  make the argument that wait a minute, you shouldn't even be

8  considering those funds for allocation purposes.  Let's take

9  those funds out and then we'll deal with the remaining funds.

10         They also point to the footnote in -- or the

11  testimony of the Canadian Debtor's expert, Phillip Green, but

12  that again doesn't demonstrate in any way an argument that

13  the U.S. Debtors made about this issue.  What Mr. Green said,

14  and this is I think consistent with what you heard from other

15  Counsel is that he included the book value of the tangible

16  assets of those subsidiaries, that $110 million, which under

17  the Canadian legal ownership methodology, he credited to the

18  U.S.  But the Courts rejected both the revenue theory of the

19  U.S. Debtors, rejected the legal ownership theory of the

20  Canadian Debtors for allocation purposes, and applied their

21  own pro rata metric and I think it's fair to say that, again,

22  and I'll point Your Honor, Judge Gross, one of the cases that

23  Mr. Rosenthal relied on this morning was the *Catholic*

24  *Dioceses of Wilmington* case.

25         THE COURT:  Right.

1          MR. O'CONNOR:  And he quoted some language.  But

2    what he omitted to say is that the Court had said that facts

3    which were presented but overlooked by the Court.  It's not

4    simply enough to say the Court overlooked something.  It's

5    got to be something that was presented; whether it's fact or

6    legal argument by the parties seeking reconsideration that

7    was overlooked by the Court, and I submit to Your Honor that

8    there is nothing in the trial records that suggest that this

9    argument, whether fact or law, was ever advanced by the U.S.

10   Interests and that the Courts overlooked it.

11          Now, let me turn finally, Your Honor, to the

12   requests that the U.S. Debtors have made that Your Honor or

13   that both Courts create some type of a mechanism to deal with

14   inflated claims and particularly what the Debtors say in

15   their papers at page 27 is that they seek clarification that

16   "Effective protections will exist to prevent undue claim

17   inflation in all Debtor's cases, including particularly the

18   EMEA Debtors cases where no procedures currently exist."

19   Now, the UKPC certainly agree that protections should exist

20   in all Debtor's cases to prevent "undue claim inflation."  In

21   fact, all claim inflation should be precluded.  But we are

22   confident, Your Honor, that Judge Gross, you will not permit

23   the U.S. Debtors to inflate claims for purposes of increasing

24   their allocation base and we're equally confident, Justice

25   Newbould, that you will not permit the Canadian Debtors to

1  inflate claims for allocation purposes and you've now heard

2  from the EMEA Debtors that they have put in place protections

3  to ensure that claim inflation does not occur in EMEA either.

4  Those protections include the appointment of a U.K. Judge who

5  will oversee the claims allowance process and who will be

6  able to liaise with you, Judge Gross, and you, Justice

7  Newbould.  And one thing I want to make really clear on this

8  is to distinguish something which I think is extremely

9  important here.  I want to distinguish between, you know,

10  claims allowance and claims -- claims allowance for

11  allocation purposes versus claims allowance for distribution

12  purposes and distinguish between what I'll call quality

13  claims versus quantity of claims.  I don't think there's any

14  dispute that you, Justice -- Judge Gross and Justice

15  Newbould, you have reserved, and rightfully so, jurisdiction

16  to ensure that the modified pro rata methodology that you

17  crafted is properly implemented and what does that mean?

18  Certainly to the extent that there's an argument that there

19  is a claim which is duplicative, that is the grist of your

20  Decision and Justice Newbould's Decisions.  You're the proper

21  Judges to decide whether, in fact, it is duplicative and

22  should or should not be included for purposes of calculating

23  an allocation from the lockbox.  On the other hand, claim

24  allowance for distribution purposes is something that seems

25  to me that's completely different.  A claim should be

1    liquidated pursuant to the laws of the local jurisdiction

2    under the supervision of the local Judge and barring some

3    reason to suggest that that should not be accorded the usual

4    deference under the principles of comity, there should be no

5    reason for either you, Judge Gross, or you, Justice Newbould,

6    to have to essentially review that claim and, again, I'm

7    making the distinction -- I can understand duplicative

8    claims, that's something you have to decide because it goes

9    to the allocation formula.  What the amount of the claim is,

10   as long as there's a Judge supervising that, it seems to me

11   that you and Justice Newbould, respectfully, don't have to be

12   as involved as the U.S. Interests would say, and let me

13   comment in particular about something that I heard for the

14   first time today.  I think it was Mr. Rosenthal who suggested

15   that you, Judge Gross, or -- and Justice Newbould should, for

16   example, estimate the UKPC's claims.  Now, he didn't say

17   estimate for what purpose.  Was it a reserve purpose?  Was it

18   a temporary estimation?  Was it for final purposes, for

19   purposes of allocation?  But let me give you an example.

20   What if Your Honor were to ascribe to that theory, you were

21   to estimate the claim, and I'm sure we would hear arguments

22   from the U.S. Debtors which have been made in other cases and

23   rejected by almost all the Courts, for example, that you

24   ought to use a prudent investor percentage to decide what the

25   deficit is as opposed to what the statutes of the ERISA

1   regulations require and as to what the U.K. pension

2   regulations require, and if you were to accept that and you

3   were to estimate the claim at $1.5 billion, and, of course,

4   they say we're not interfering with the claim being allowed

5   for distribution purposes in the U.K. for 3 billion, well,

6   they're complaining on the bond guarantee that if they have a

7   claim against them for distribution purposes, they should get

8   the full amount of whatever that claim is for allocation to

9   have the money to be able to pay it.  Well, that's -- their

10  argument on estimation is completely inconsistent with the

11  argument they're making on the guarantee.

12          Your Honor -- so -- and I think there are two

13  aspects of the threat of claim inflation that we're dealing

14  with.  I think the predominant one is the one I just

15  addressed.  I think the concern that Your Honor addressed in

16  your Opinion was claim inflation by duplication.  This

17  concern, again, that --

18          JUSTICE NEWBOULD:  We've lost you, Mr. --

19          MR. O'CONNOR:  I'm sorry.

20          JUSTICE NEWBOUILD:  We've lost you, Mr. O'Connor.

21          MR. O'CONNOR:  I'm sorry, Justice Newbould.  I

22  think the concern that Judge Gross had expressed in his

23  Opinion on claim inflation, the potential for that, was based

24  upon duplicative claims.  Again, the fear that there'd be a

25  Section 75 claim of $3 billion against NNUK and then 20 other

1  FSD claims of a similar amount against all the other EMEA

2  Debtors and I think you heard, and we fully agree with this;

3  the Courts have ruled on this, we agree, those are

4  duplicative claims.  They should not be included in EMEA's

5  claim base.  We fully agree also with the point that EMEA

6  made earlier today that on these contribution claims, to the

7  extent in theory and in France, could assert a contribution

8  claim against NNUK or any other EMEA Debtor if -- and in

9  France had an FSD allowed against it, we also agree with

10  that.

11          JUSTICE NEWBOULD:  We've lost you, Mr. O'Connor.

12          MR. O'CONNOR:  I'm sorry.  Where did -- we also

13  agree that to the extent that it would be possible for any of

14  the EMEA Debtors to assert contribution claims against

15  another EMEA Debtor, NNUK or otherwise based upon an FSD

16  claim, those two would be duplicative claims and should not

17  be included in the claim base for allocation purposes for

18  EMEA and I think, Your Honor, that's, as I understood it, the

19  real fear of claim inflation that had been bandied about

20  before.

21          Now, let me just go one point further.  To the

22  extent that there's any concern about claim inflation in the

23  amount of the Section 75 claim that the UKPC has against

24  NNUK, I don't think there should be much in the way of

25  concern about that.  That is a statutorily prescribed claim.

1   The calculation of it is done by the scheme actuary who has a

2   statutory role to perform.  He has to, as a professional,

3   certify what the amount of that claim is.  There is -- it's

4   as I think Mr. Adler said, it is very similar to the process

5   in the United States where on a distressed termination where

6   the PBGC comes in, under the PBGC regulations, they too

7   calculate that claim based upon what it would cost to go out

8   and buy annuities in the insurance market to fund those

9   future obligations to the pensioners.  There is absolutely no

10  reason to believe that there would be any ability to inflate

11  that claim and to give the parties comfort, we now know that

12  the EMEA Joint Administrators have gotten Judge --

13          JUSTICE NEWBOULD:  We've lost you again.

14          MR. O'CONNOR:  I'm sorry.  We now know that the

15  EMEA Debtors have gotten Judge Snowden on board in EMEA.  He

16  would be supervising the claim allowance process and we're

17  confident that he, just like you, Judge Gross and Justice

18  Newbould, would not allow a claim to be inflated for purposes

19  of increasing the EMEA Debtor's allocation and you and

20  Justice Newbould will have the ability to liaise with him and

21  express any concerns that you might have.  So we think this

22  is overboard.  We don't think it's appropriate at this point

23  to be having procedures where you and Justice Newbould are

24  essentially having to decide, even if you're going to say

25  it's only for allocation purposes, what the amount of all the

1    claims across the world are.  Again, duplicate claims,

2    whether they should be included in the claims base, that's a

3    different story.  But what the amount of the claim is, under

4    the local law, that seems to me to be completely different.

5         JUSTICE NEWBOULD:  Mr. O'Connor, how much longer

6    do you expect to be?  I think we should be taking an

7    afternoon break and I don't know --

8         MR. O'CONNOR:  I've got 30 seconds, Your Honor.

9         JUSTICE NEWBOULD:  Good.  Okay.

10        MR. O'CONNOR:  And just in closing then, you know,

11   it seems to the UKPC that, you know, the Courts have taken an

12   awful lot of effort and as Mr. Barrack said, we also express

13   our appreciation for the extraordinary efforts of both Courts

14   in mastering a, you know, comprehensive trial record and

15   addressing all the myriad issues that arose during the trial.

16   We don't think there's any basis for the Courts that we can

17   see that are Opinions based upon the U.S. Interests

18   arguments.  You know, we leave it up to the Courts to decide

19   whether you think there are any clarifications that are

20   consistent with your intent that should be made.  If -- other

21   than that, if parties are unhappy, as Mr. Hodara, his clients

22   seem to be, that seem to be second-guessing the entire

23   Decision; not simply seeking clarification, the proper remedy

24   is an appeal.  We certainly hope it doesn't go to that

25   extent.  We hope that the parties will heed the admissions of

1   the Courts and to use the Allocation Opinion to try to

2   resolve any remaining differences and I would just say that I

3   think it would send a very bad message to the parties if the

4   Courts were to grant reconsideration.  It would send the

5   message that you can continue to litigate and -- time after

6   time, and as people have characterized this, one thread at a

7   time.  Before you know it, the whole rug's unraveled.  So for

8   all those reasons, Your Honor, we would submit that the

9   Motion should be denied other than any clarifications that

10  Your Honors deem to be appropriate.  Thank you.

11            THE COURT:  Thank you.

12            JUSTICE NEWBOULD:  Thank you, Mr. O'Connor.  Is

13  that all there?

14            THE COURT:  I think we have one more.

15            JUSTICE NEWBOULD:  Is what?

16            THE COURT:  I think we have one more.

17            JUSTICE NEWBOULD:  The Reply from --

18            THE COURT:  Maybe two.

19            JUSTICE NEWBOULD:  -- U.S. Interests?

20            THE COURT:  Yeah.  We have two more.

21            UNIDENTIFIED SPEAKER:  We'd only have a very brief

22  submission for clarification [indiscernible].

23            THE COURT:  Do you want to take a break?

24            JUSTICE NEWBOULD:  Well, let's take the afternoon

25  break, Judge Gross.  We'll say 15 minutes?

1          THE COURT:  That will be fine.  We'll take 15

2   minutes.

3          MR. O'CONNOR:  Fifteen minutes is fine, Your

4   Honor.

5          THE COURT:  All right.  Thank you.

6              (Recess from 3:36 p.m. to 3:56 p.m.)

7          THE COURT:  Thank you everyone.  Please be seated.

8   Justice Newbould, I'm back.

9          JUSTICE NEWBOULD:  Thank you, as am I.

10          THE COURT:  Mr. Crichlow, good afternoon.

11          JUSTICE NEWBOULD:  You're looking as good as ever.

12          THE COURT:  Thank you.  Thank you.

13                  (Laughter)

14          MR. CRICHLOW:  I think I may be looking better.

15   Good afternoon, Your Honors.  Good afternoon, Judge Gross.

16   Good afternoon, Justice Newbould. It's David Crichlow,

17   Katten, Muchin & Rosenman, on behalf of Wilmington Trust as

18   the Indenture Trustee to the NNL non-guaranteed bonds.  Your

19   Honor, I'm very mindful of the time and I appreciate the

20   gracious offer that both Justice Newbould and yourself have

21   made to give everybody their fair share of time.  I don't

22   think my presentation initially was intended to be long, and

23   as I sat there at my chair and heard everybody else speak, I

24   just took my pen out and started crossing off sections that

25   have already been covered.  But as you are aware, Wilmington

1   Trust objected to the U.S. Debtor's Motion for

2   Reconsideration and joined, in whole, the Canadian Monitor's

3   Objection and today, for purposes of my oral argument, I am

4   going to join the oral argument of Mr. Coleman for all of the

5   reasons he stated in further objection to the U.S. Debtor's

6   Motion, as well as the CCC's argument with respect to the

7   threshold issues which I was prepared to talk about, but were

8   covered very, very well by CCC's Counsel under Rule 59(e) and

9   Rule 60 and why the Debtors fail to meet those standards.

10           Your Honors heard all of that and in looking

11  through and considering all of the argument, extensive and

12  well-thought out as it was today, there are really just two

13  issues that I'd like to comment on and provide the Court with

14  some perspective on from Wilmington Trust's point of view.

15  Mr. Rosenthal this morning said to Your Honor that you were

16  going to hear lots of argument today and you're not going to

17  hear anybody stand up and say one thing and that is that you

18  do not have the discretion to grant their Motion for

19  Reconsideration and as with a lot of advocacy, while Mr.

20  Rosenthal is technically right, that statement doesn't

21  provide you with the full story or the way the jurisprudence

22  works in making an assessment under a Rule 59 Motion.  While

23  you have discretion, it is absolutely clear, and the

24  jurisprudence teaches us, that that discretion should be used

25  sparingly, extremely sparingly if you look at what the cases

1    say.  That is why the Rule 59(e) standard is so high and

2    you've heard ad nauseum today where it is, what's been said

3    today, and where the U.S. Debtors fall short.  So what we

4    have here is a claim that the Decision provided some form of

5    manifest injustice, which is really the only basis that the

6    Debtors would have left to make this argument and there the

7    Courts are clear that the Courts have to use their discretion

8    to avoid what, in my observation, is precisely what has

9    happened here today.  What you heard was a lot of argument

10   and recharacterization of testimony from Britven to others.

11   The opponents felt the need to come in and show you that some

12   of that may be taken out of context today; that there are

13   other points of view.  But what I want to leave you with is

14   the good news, and the good news comes from the Rule; I feel

15   like a preacher --

16                       (Laughter)

17           MR. CHRICHLOW:  The good news comes from the Rule

18   is that you don't and you should not --

19           JUSTICE NEWBOULD:  I can't -- you got cut off.

20           MR. CHRICHLOW:  Oh my goal, Justice Newbould, was

21   to finish before the mic got cut off.  Can you hear me now?

22           JUSTICE NEWBOULD:  Yes.

23           MR. CHRICHLOW:  Okay.  I'm back with you.  But the

24   Rule provides you with the guidance that you cannot and you

25   should not under these circumstances and for these precise

1    reasons with what you have seen done it.  The jurisprudence

2    is clear.  A disgruntled litigant that is unhappy with a

3    Decision does not get a second bite of the apple under 59(e)

4    and that is true even if they are alleging manifest

5    injustice.  In fact, there's a recognition in our

6    jurisprudence that it is not unusual that a disgruntled

7    litigant would feel precisely that; that the Decision that

8    they are unhappy with; that they are dissatisfied with,

9    creates some form of manifest injustice.  So the Courts

10   caution our triers-of-fact, to be reluctant to grant these

11   type of Motions to avoid exactly what's happened here today,

12   Your Honor.  In fairness, whether the opponents are right in

13   our interpretation of what the evidence demonstrated to you

14   and whether the Debtors get to come in here and do it all

15   again, in some part, it's all irrelevant because there was

16   only one evidentiary record in this case and that's the

17   reason we try cases and that evidentiary record is closed.

18   It's an evidentiary record that in my 26 years is one of the

19   most extensive evidentiary records that I have ever seen in a

20   trial, culminating after a two-month trial where it was a

21   bench trial with two Justices sitting as the trier-of-fact,

22   and the one other point that no one has harped on today,

23   which is the only reason I'm going to speak about it, is not

24   only was all of this evidence and the potential for this type

25   of remedy known from the outset of the case to the U.S.

1  Debtors; not only did they have an opportunity as a trial

2  presents to get in sworn testimony as opposed to argument

3  that is unchecked here, opportunities to cross-examine

4  witnesses, but the one thing that has been lost in any

5  discussion here, and I sat through this trial every day as

6  Your Honors did, is as a trier-of-fact in a bench trial, you

7  Justices and Judges had the opportunity to inquire of the

8  witnesses giving the sworn testimony and my recollection,

9  Your Honor, I'm sure will dovetail with yours.  When Mr.

10  Britven gave his testimony on a pro rata form of remedy for

11  allocation and how it was going to work and how it would be

12  implemented under cross-examination, it was not without the

13  inquiry of Your Honor.

14          JUSTICE NEWBOULD:  You cut off.

15          MR. CHRICHLOW:  Can you hear me now?

16          JUSTICE NEWBOULD:  Yes.

17          MR. CHRICHLOW:  Thank you.  What I was saying,

18  Justice Newbould, is that it wasn't just that the U.S.

19  Debtors had the opportunity to cross-examine Mr. Britven; it

20  wasn't that they had the opportunity in their Post-Trial

21  Briefing and a Motion to Strike to take issue with the same

22  issues that they are bringing up now with respect to the

23  Courts' Decision, but it was that the trier-of-fact also had

24  the time and took the effort to inquire as to how would the

25  pro rata theories that were being espoused would work?  What

1  about the flaws in implementation?  How would it be

2  implemented?  I have a distinct recollection, and I'm sure

3  Judge Gross has a recollection as well, that these were areas

4  that concerned him during the trial and they were areas that

5  the trier-of-fact, in addition to the U.S. Debtors, had the

6  opportunity to inquire about.

7          If that is the case, what I would say is, as

8  everyone else has said in reading the Decision, thank you to

9  both of Your Honors because what we do know is that there is

10  a disclosure in there that you took that evidentiary record

11  quite seriously, did an exhaustive review of the same, took

12  quite a bit of time and thoughtfully --

13          JUSTICE NEWBOULD:  You cut off again.

14          MR. CHRICHLOW:  Well, I'm praising you so I want

15  to make sure that this all gets in the record.

16                      (Laughter)

17          MR. CHRICHLOW:  Took quite a bit of time and

18  effort --

19          JUSTICE NEWBOULD:  Just send me a note.

20                      (Laughter)

21          MR. CHRICHLOW:  Took quite a bit of time and

22  effort and thought in creating and crafting your Decision and

23  came out with one that I am sure, as it is stated in the

24  Opinion, the Judges felt that with all of the evidence that

25  had been considered, with the inquiry that you've been able

1   to, you know, assert yourself with respect to the witnesses,

2   came with the Decision that we have, which is a modified pro

3   rata approach.

4           Now, as someone who stood here at the beginning of

5   that allocation proceeding, and as you will recall, was one

6   of the proponents of a pro rata remedy and suggested to the

7   Court that the Court had the equitable basis.  We were not

8   asking for substantive consolidation; I said that on day one

9   in my opening statement on behalf of Wilmington Trust, and we

10  promoted the idea that the Court, based on the evidence,

11  could affect a remedy.  I did not come up with the modified

12  pro rata approach but I said equitably could affect the

13  remedy of pro rata that would be an appropriate allocation

14  remedy.  You know, it would be easy for me to say standing

15  here today and to simply state that the Court got it right

16  but that would be self-serving and I'll do it anyway.  The

17  Court got it right.

18                          (Laughter)

19          MR. CHRICHLOW:  The Decision is correct.  It is

20  well-considered.  It is well thought out and the Debtors have

21  not met their burden under 59(e) to provide any basis to

22  overturn it.  It is not enough, as Mr. Coleman eloquently

23  said, manifest injustice is not equal to the manifest

24  difference from the expected judgment that the Debtors

25  received.  That is not enough to overturn a well-considered

1  Decision and there's no basis under Rule 59(e) to grant the

2  Motion for Reconsideration.  Thank you, Your Honor.

3           THE COURT:  Thank you, Mr. Crichlow.

4           JUSTICE NEWBOULD:  Okay, Mr. Salmas.

5           MR. CHRICHLOW:  I'm sorry.  I forgot probably the

6  most important thing.  My colleague, John Salmas, of the

7  Dentons Firm is in Canada.  He has a very statement to make

8  in the Canadian proceeding.  My apologies, John, but I can

9  see you are at the podium now and with that, I'll sit.

10           MR. SALMAS:  Thank you, David.  Good afternoon,

11  Justice Newbould.  Good afternoon, Judge Gross.  John Salmas,

12  on behalf of Wilmington Trust.  I have a very brief

13  submission.  I want to start by adopting the Monitor's

14  submissions in this Courtroom as well and our response is

15  really solely geared to a clarification request on the

16  Canadian Allocation Decision; specifically paragraph 44, Your

17  Honor.

18           JUSTICE NEWBOULD:  I believe in your Factum, you

19  said [indiscernible].

20           MR. SALMAS:  That's it.  They said the request is

21  to have the reference in that paragraph and that footnote to

22  Wilmington Trust also pleading pro rata as the alternate

23  theory during the allocation trial.

24           JUSTICE NEWBOULD:  Okay.

25           MR. SALMAS:  We don't have -- we're not aware of

1    anybody objecting to either relief that we're seeking.

2                    JUSTICE NEWBOULD:  All right.  Thank you.

3                    MR. SALMAS:  Thank you, Your Honor.

4                    THE COURT:  Good afternoon.

5                    MR. WEBER:  Good afternoon, Judge Gross.  Good

6    afternoon, Justice Newbould.  My name is Robert Weber.  I'm

7    from Skadden Arps and we represent Stephen Taylor, the

8    Conflicts Administrator for Nortel Networks, S.A.  With me

9    today is my colleague, Susan Saltzstein and she'll address

10   the Court.

11                   THE COURT:  All right.  Thank you, Mr. Weber.

12                   MS. SALTZSTEIN:  Thank you, Rob.

13                   Good afternoon, Judge Gross, Justice Newbould.  As

14   Rob said, Susan Saltzstein from Skadden Arps, and I'm joined

15   today in Toronto by Dan Murdoch of the Stikeman Elliott

16   firm, and together we represent Stephen Taylor, Conflicts

17   Administrator for Nortel Networks, SA.  It's a pleasure to

18   be here.  I'm delighted to be last of the opposing motions.

19   I'm new to the party.  I don't intend to overstay our

20   welcome, so we'll make this short.

21                   But a little background about Nortel Networks SA,

22   which is NNSA for short.  It's a French company in

23   administration.  As you heard from Mr. Adler earlier, it's

24   been part of the EMEA Group and jointly represented by

25   EMEA's counsel in these proceedings.

1              NNSA was Nortel's operating company in France and

2    it was one of the five principal R&D performing companies,

3    and by all accounts was a significant contributor to the

4    value of the IP sold in this proceeding.

5              You've already heard a bit about what's happened

6    more recently with respect to Nortel NNSA.  After the Courts

7    made '12 Decision, the Joint Administrators sought the

8    appointment of Mr. Taylor as Conflicts Administrator, and

9    you've heard a little bit about why.  The request for the

10   appointment of the Conflicts Administrator was made because

11   of the real and palpable conflict, particularly with respect

12   to the pursuit of appeals and other matters involving NNSA

13   in light of the Court's order.  And specifically, Your

14   Honor, the Court's Opinion has a very disparate impact on

15   NNSA as compared to the EMEA Group as a whole.  It's

16   certainly been advanced that EMEA has fared far better with

17   this Decision, and I'll leave that debate to another time,

18   but there's no debate, I don't think in the record, that

19   NNSA has fared far worse, and it is acknowledged throughout

20   the papers that the expected Allocations for NNSA are

21   estimated to be materially below the projected Allocations

22   that would have flowed from the adoption, as far as I am

23   aware, of any other parties' methodologies that have been

24   advanced throughout these proceedings, and if you take a

25   look at the U.S. Debtors chart on A-3, it's likely that we

1  would be way down on that page if we make it to that page at

2  all.  And so --

3        JUDGE NEWBOULD:  Sorry.  What are you referring

4  to?

5        MS. SALTZSTEIN:  That was the U.S. Debtors' Motion

6  for Reconsideration at A-3, the chart that they presented to

7  the Court.

8        JUSTICE NEWBOULD:  Is there any evidence to

9  support this?

10        MS. SALTZSTEIN:  Your Honor, I'm not aware of what

11  the trial record suggested with respect to this at this

12  point.  Obviously we're going through it.  We've just been

13  retained.  But, you know, the -- so I don't have numbers to

14  provide to the Court today, but I can say that as a result

15  of these conflict issues, on June 3, 2015, the Court of High

16  Justice of England, you know, appointed Mr. Taylor as

17  Conflicts Administrator.

18        Your Honor, we believe that adding to this

19  disparate material impact here are the principal

20  modifications that have been advanced by the U.S. Debtors.

21  We don't view those proposed modifications as modest or

22  subject to a quick fix.  We believe that if they were

23  adopted, they would lead to further depletion of NNSA's

24  assets materially and significantly and to the ultimate

25  detriment of the Unsecured Creditors.

1              And it does seem as if there is a piecemeal

2    attempt here in terms of the arguments and the re-arguments

3    that attend to the U.S. Debtors' position, that considering

4    this as a whole, taking a piecemeal approach would not

5    advance the fairness and equity of the -- of all the Debtors

6    here, and we've heard -- and I won't repeat it but the

7    positions advanced with respect to the U.K. PC Claim and the

8    Bondholders' arguments, but I do think we are in a unique

9    position in that we're not opposing Reconsideration because

10   we expect it to enjoy a favorable Allocation under the

11   Court's modified pro rata methodology.  That's -- it's

12   actually quite to the contrary.  But we believe that those

13   issues are best addressed and left for appeal if there is to

14   be an appeal.  And so while we oppose the Reconsideration

15   Motions, we respectfully reserve those rights.

16              Mr. Murdoch may have additional comments to make

17   on the Canadian end.  Thank you, Your Honor.

18              THE COURT:  Thank you.

19              JUSTICE NEWBOULD:  Thank you.

20              UNIDENTIFIED SPEAKER:  Your Honor, we do rest on

21   the submissions [indiscernible].

22              JUSTICE NEWBOULD:  Thank you very much.

23              There's nobody on your feed up here in Canada now,

24   Judge Gross, so --

25              THE COURT:  All right.  Mr. Rosenthal, you're

1  back.

2        MR. ROSENTHAL:  Your Honor, with the Court's

3  indulgence, I know that we just took an afternoon break, but

4  I've been trying to synthetize about six hours of arguments

5  since I was last up here, and I think that I could present a

6  far more efficient argument if we could just have 15 more

7  minutes to prepare.

8        THE COURT:  Justice Newbould?

9        JUSTICE NEWBOULD:  Well, as long as -- as long as

10  the -- that's the old promise that we all used to make when

11  we were practicing.

12                    (Laughter)

13        JUSTICE NEWBOULD:  So as long as the promise is

14  kept and it'll be shortened, I'm all in favor of it.

15        MR. ROSENTHAL:  I will be as efficient as

16  possible, and I've also spoken to the other proponents, and

17  they will not speak, I think, for more than a minute or two

18  apiece.

19        JUSTICE NEWBOULD:  Yeah, I know.  Yeah, I'm just

20  making a little joke, Mister --

21                    (Laughter)

22        MR. ROSENTHAL:  I will do my best, Your Honor.

23        JUSTICE NEWBOULD:  I'll formally -- I formally

24  support you taking a short break.

25        MR. ROSENTHAL:  Thank you.

1          THE COURT:  All right.  So we'll be back at 4:30.

2          MR. ROSENTHAL:  Thank you, Your Honor.

3          JUSTICE NEWBOULD:  So by 4:30.  Is that right?

4          THE COURT:  Yes, that's right.

5             (Recess from 4:14 p.m. to 4:30 p.m.)

6          THE CLERK:  Please rise.

7          THE COURT:  You may be seated, everyone.

8          Justice Newbould, I'm back on the bench.  Yes.

9          MR. HODARA:  Good afternoon, Your Honor, Justice

10   Newbould.  Justice Newbould, it's Mr. Hodara for the

11   Official Committee.  Can you hear me?

12          JUSTICE NEWBOULD:  Yes.

13          MR. HODARA:  Very good.  Okay.

14          Several parties said that the Motion that's before

15   the Court is about the disgruntlement of the U.S. interests.

16   The Debtors' Motion, which the Committee supports, is not

17   about being disgruntled.  Our disgruntlement -- and I

18   described at length earlier today our disgruntlement -- can

19   be dealt with through appeals, and those rights have been

20   fully preserved.  This motion is to deal with a discrete

21   handful of issues.  Two specific issues are Reconsideration

22   and only two.

23          With respect to the standard for Reconsideration,

24   I'll briefly talk about three of those points.  First,

25   manifest injustice.  I described in some detail this morning

1    the potential 35 percent loss of value for --

2           JUSTICE NEWBOULD:  Are you going to just reply?  I

3    don't think we need repetition.

4           MR. HODARA:  Several parties, Your Honor, said

5    that the U.S. interests have to meet a certain standard for

6    Reconsideration.  There are three elements of that standard

7    that I'm going to address very briefly.  My entire comments,

8    I think, will take about three minutes.

9           So, with respect to one of those, manifest

10   injustice, from the Creditors Committee perspective -- and

11   Mr. Rosenthal will address it more fully.  From the

12   Creditors Committee perspective, the potential loss of 35

13   percent of the value to be received by U.S. General

14   Unsecured Creditors by virtue of the potential treatment of

15   just one item, and that is the Bondholder Claim, we believe

16   the ambiguity surrounding that, we believe lays the

17   groundwork for potential manifest injustice.  We think that

18   the Courts have to deal with the issues surrounding those

19   Bondholder Claims at this time so that we don't end up with

20   a situation where the full Bondholder claim were to come

21   into the U.S. Estate for Distribution purposes, and at that

22   time some effort be made to try to change the Allocation

23   because at this time under the wording of both of Your

24   Honors' Decisions, those amounts are put in at zero in the

25   Allocation proportion or formula for the U.S. Estate.

1          It may be that there are true-ups that happen at a

2     later time as various Claims are sorted out.  A true-up

3     mechanism will enable things to move more quickly and to

4     have initial Distributions.  The point is that -- and some

5     of the numbers were described to the Court -- the movement

6     of the needle on the Bondholder Claim of Treatment is too

7     big to deal with through a true-up at a later time.  That's

8     the manifest injustice point.

9          Second in the standard for Reconsideration is the

10     availability of new evidence.  When we refer to evidence,

11     whether it be new or otherwise here, what we're talking

12     about is whether the U.S. Court in particular, which did not

13     have a Claims trial, unlike the Canadian Court, has evidence

14     before it that is sufficient to make the determinations that

15     are necessary in connection with a Claims-driven modified

16     pro rata approach.  So we believe that with respect to the

17     very large Claims that I outlined earlier, a record does

18     need to be made if this Court is to have the basis for

19     making what it referred to an equity-oriented Decision.

20          And third, in terms of the grounds for

21     Reconsideration, with respect to an error of law or fact, we

22     have the NGS DiamondWare situation, which is subject to a

23     prior Order of this U.S. Court and a Lien in favor of the

24     PBGC.  That Order, that Lien are matters of record, and we

25     believe that if there is a belief on the part of other

1  parties, and it appears from their papers and statements

2  today it is the belief of several of those parties that the

3  proceeds related to the PBGC's Lien and to the prior Order

4  are not to come out of the lockbox for those purposes, then

5  there is an error in law with respect to the Decisions.

6          Finally, I'll address very briefly on the

7  Clarification issues.  The one item that I would like to

8  speak to is the question of Allocation by Debtor, not by

9  Group.  I think everyone is aware, and citations were made

10  today that the IFSA calls for each selling Debtor to get an

11  Allocation.  The Monitor's suggestion that there will be a

12  Suballocation process in the future we believe is

13  inappropriate.  That's not part of the process that was set

14  forth, and we don't -- we think that would be a major change

15  to the process.  And so we believe that as the Debtors'

16  Motion indicates, there is a basis for and should be

17  Allocation on a per-Debtor basis.

18          Thank you, Your Honors.

19          THE COURT:  Thank you, Mr. Hodara.

20          Mr. LeBlanc?

21          MR. LEBLANC:  Yes, Your Honor, good afternoon.

22  Andrew Leblanc.

23          Your Honor, I rise to make just two points.  When

24  I began this morning, Justice Newbould, you had asked me is

25  it true that nobody disputes the position that you take in

1  your Reconsideration Motion.  I think that the arguments

2  today have borne that out.  No one has suggested that Your

3  Honor's Decision actually required that the deficiency or

4  the shortfall be the only Claim that's counted against the

5  U.S. Estate for the purposes of deficiency with respect to

6  the bonds.  No one has argued that.  In fact, in their

7  papers, they conceded that they did not believe that the

8  Opinion did that.  So I think, Your Honor, it's absolutely

9  appropriate to make clear that the language in Your Honor's

10 Decision and in Justice Newbould's Decision and in the

11 Orders and the Opinions that reference the shortfall or the

12 deficiency that those be struck so that there's no ambiguity

13 in the record with respect to that.

14         Now, I will note, Mr. Rosenthal, I'm sure, will

15 talk about this, Your Honor, but the ironic thing is that

16 every party who's stood here and referred to recoveries for

17 Creditors actually referred to page A-3 of the Debtors'

18 Motion.  Page A-3 is an illustration of the effects of the

19 Decision if you assume that we only have a Claim for the

20 deficiency.  So despite not saying that the Order says that

21 and despite acknowledging that it does not do that, when

22 parties pointed the Court to the illustration of the

23 recovery levels and said well, look, the U.S. Unsecureds are

24 getting 62 cents, the bonds are getting 81 cents, that was

25 actually a reference to a page that in fact assumed what

1   they have now conceded the Orders didn't do.  You'd have to

2   look at page A-2 to get the appropriate Unsecured Creditor

3   Recovery in the United States when you make the assumption

4   that we do not have only a deficiency claim but instead

5   *Ivanhoe* is alive and well and Your Honor's 9019 Order will

6   be respected.  So I think, Your Honor, that's now a settled

7   point, and the Court should clarify their Decisions to make

8   clear that you did not intend to limit our Claim.

9           The second point -- and Your Honor, and Justice

10  Newbould in particular, I won't talk about settlement other

11  than to say this:  Mr. Coleman repeatedly referred from

12  apparent memory to Your Honor's admonition in the

13  penultimate sentence, and here I'm referring to Judge Gross,

14  to your admonition in the penultimate sentence, but he

15  referred only to two prongs of it.  He read it clearly

16  enough and often enough to say that the Court admonished

17  parties to either accept the Decision and give it effect or

18  to appeal.  There is a third prong to that admonition, Your

19  Honor, and it is, "or utilize the Court's ruling to resolve

20  any remaining differences," and I think it's remarkable that

21  the Monitor fails to acknowledge that that's part of the

22  Court's admonition as well, and I think these Courts should

23  do whatever they can to facilitate the parties coming to a

24  resolution, to move these cases to a conclusion.

25          We can -- everyone has invited us to appeal, and

1  we intend to do so if we have to, but Your Honor, everyone

2  would be better off if there was a resolution here, one

3  that's done efficiently, quickly, and we think that's what

4  the Court should do.  Whatever is in their power to cause

5  the parties to come to a resolution, I think that's what the

6  Court should do, and when you think about these Motions,

7  Your Honor, you should think about that admonition and have

8  that admonition in mind and repeat it for the parties, and

9  that's all we have, Your Honor, and I think, as I said, our

10  Motion, our Reconsideration Motion, we think at this point

11  is not contested.

12          THE COURT:  All right.

13          MR. LEBLANC:  Thank you, Your Honor.  Thank you,

14  Justice Newbould.

15          THE COURT:  Thank you, Mr. Leblanc.

16          Mr. Lowenthal?

17          MR. LOWENTHAL:  Yes.  Good afternoon, Your Honors,

18  Daniel Lowenthal for Law Debenture.

19          Your Honor, if I may approach, I'd just like to

20  hand up a proposed Order with respect to our Motion for

21  Reconsideration.  We had not attached one to our Motion.  I

22  circulated this proposed Order to all counsel in both

23  countries yesterday.

24          THE COURT:  Yes.

25          MR. LOWENTHAL:  We have our clerical issue.  I

1  think we provided a quick fix here, a roadmap for you and

2  your staff to take care of that.  We also have our other

3  issue where we seek a -- we ask that NNCC receive a direct

4  Claim from the lockbox.  I won't address that again now in

5  reply.  I did so this morning, but it's here for Your

6  Honor's consideration.  If I may approach?

7              THE COURT:  All right.  You may approach.

8              MR. LOWENTHAL:  Thank you, Your Honor.

9              THE COURT:  You certainly may.  Thank you, Mr.

10 Lowenthal.

11             UNIDENTIFIED SPEAKER:  I apologize, Your Honor.  I

12 don't have a copy of -- I'll get a copy -- it's simply the

13 typos that were made reference.

14             JUSTICE NEWBOULD:  I think I've got enough paper.

15             MR. LOWENTHAL:  Thank you.

16             JUSTICE NEWBOULD:  I think I understand the typo.

17             MR. LOWENTHAL:  Thank you.

18             MR. POHL:  Good afternoon.  Steven Pohl from Brown

19 Rudnick for the Trade Claim Consortium.

20             THE COURT:  Sir, I can't hear you.

21             MR. POHL:  I'm moving left.  Can you hear me?

22             JUSTICE NEWBOULD:  Yes.  And who is this speaking?

23             MR. POHL:  This is Steven Pohl from Brown Rudnick

24 for the Trade Claims Consortium.  I would just like to

25 correct, I think, some words that might have been unfairly

1  put in my mouth by one of the Objectors, and they have to do

2  with the standards and what we were arguing relating to the

3  standards, one being clear error and the other being

4  manifest injustice, and I believe what I heard was no one

5  argued clear error, and if all we have to hang our hat on is

6  manifest injustice, well, that's not enough because it's not

7  good enough to just say you don't like your result relative

8  to others.  That's not what I argued, so let me just

9  clarify.

10        You're right, or the Objector was right.  We

11  didn't -- we focused mostly on manifest injustice.  However,

12  if you look at our short Pleading, we focused very much on

13  why we think when the pro rata or modified pro rata or I

14  like to call it a modified subcon is used, there's no

15  support at all, whether it's logic or whether it's theory or

16  whether in the law to treat Intercompany Claims one way and

17  Guarantee Claims another.  So that's the mistake or error

18  we're identifying.  The injustice that we're identifying

19  flows from that.  We say the recovery we get goes down

20  because of the mistake or error of excluding the Guarantee

21  Claim.  We say that drops our recovery, not because our

22  recovery drops to a point where it's unjust relative to

23  others, simply unjust relative to the method this Court

24  chose and the mistake in excluding the Guarantee.  Thank

25  you.

1          THE COURT:  Thank you, Mr. Pohl.

2          Mr. Rosenthal?

3          JUSTICE NEWBOULD:  We can't hear anything.

4                    (Laughter)

5          MR. ROSENTHAL:  For good reason, Your Honor.

6                    (Laughter)

7          MR. ROSENTHAL:  I want to start by thanking the

8  Courts for giving me that little bit of time, and hopefully

9  it will make for a more efficient presentation.

10         Obviously, I had a lot to distill from having

11 listened to the numerous arguments against our position over

12 the course of today.  I also thank the Courts for their time

13 today.  You know, I know you have busy dockets and you've

14 given an entire day to hearing our Reconsideration requests,

15 and the one that I would like to just note, you know, we

16 didn't make lightly.  We recognized the standards for

17 Reconsideration.  I said them at the outset.  This was not a

18 knee-jerk opinion -- reaction but one that we thought about,

19 and we analyzed the Opinions, and out of the 113-page U.S.

20 Opinion, we selected two issues specifically, just two

21 issues that we thought met the Reconsideration standards

22 because they're high standards, and issues like should the

23 Court have adopted a pro rata approach in the first place,

24 we didn't move for Reconsideration on those.

25         While we've heard, I think, many times about the

1   standards for Reconsideration, and my esteemed adversaries

2   parsing through the words of Rules 59 and 60, we are, of

3   course, a common law jurisdiction, and in addition to us all

4   trying to interpret the words of the rule, we look to the

5   cases, and the cases -- and I set it forth at the beginning,

6   and I cited the *Hessinger* case from the District of

7   Delaware, and nobody has either disagreed that that is an

8   appropriate instance for Reconsideration or that the case

9   was wrongly decided or come up with authority that says that

10  there should be some other standard, and the *Hessinger* case

11  says very, very clearly, an appropriate ground for

12  Reconsideration is when a Court has made a Decision outside

13  of the adversarial issues presented by the parties.  And

14  I'll go into more detail in a little while, but that is

15  precisely the basis on which both of our two Reconsideration

16  requests fall.

17          They also fall under the manifest injustice prong

18  of the rule itself, but you don't need to go there.  You

19  don't need to look at Creditor recoveries.  You don't need

20  to analyze the impact of well, do you include or exclude

21  things that we think the Court very, very clearly said it

22  was excluding in its Opinion, and we'll go into that in a

23  little bit more detail in a little while.  But wholly apart

24  from manifest injustice, nobody has addressed the *Hessinger*

25  Decision and the fact that we meet that standard.

1          But I think the parties have acknowledged that

2    that's really the standard because we've heard over and over

3    and over again this was briefed, there was testimony, 21

4    days of trial, thousands of exhibits, our position statement

5    of the CCC.  We put out pro rata.  It's always been out

6    there.  We had Mr. Barrack read paragraph 205 of one of his

7    Briefs but he said he put it in lots of Briefs.  Every

8    single one of those references was advocating pro rata

9    generally, was advocating non-duplicative Distributions to

10   the bonds, or was advocating the general "you can change it

11   if you want, Your Honor."  Not one, not once in the

12   thousands and thousands of pages of trial transcripts, in

13   the thousands of exhibits or have any of the numerous

14   lawyers who have gotten up today been able to point you to a

15   single document, a single piece of testimony, a single Brief

16   that has said that anyone, anyone ever proposed the

17   modification that the Courts did, which is to say that the

18   Bondholder Claim will be allowed in the jurisdictions of two

19   different Estate Groups, U.S. and Canada, but only count for

20   Allocation in one.

21          JUSTICE NEWBOULD:  Mr. Rosenthal, this doesn't

22   strike me as reply at all.  You made that argument-in-chief.

23   I'm well aware of it.  I'm sure Judge Gross is.  You're just

24   repeating your argument before, and that's not -- in our

25   Court, that's not proper reply.

1          MR. ROSENTHAL:  Your Honor, in fact, after I made

2   that argument, we had numerous lawyers get up and say I'm

3   wrong, look at paragraph 205, I'm wrong, look at our

4   position statement, and I'm just pointing out that none of

5   those actually address the issue here in this Motion.

6          One of the arguments that the Monitor has made in

7   opposition is the concern we're going to have serial

8   Reconsideration Motions.  When does it end?  We've got to

9   get to the appeal.  We've got to get resolution.  We're

10  going to have Reconsideration on Reconsideration on

11  Reconsideration.  That argument, frankly, has no basis in

12  Third Circuit authority.  The *Gilboy v. Mellow* case, 522(f)

13  appendix 145, it's a Third Circuit case from 2013.  It says

14  that a Motion for Re-reconsideration does not toll the time

15  to appeal.  So once the Courts decide this Motion, the

16  appellate clock starts running and that's it.

17         And the second principle, Your Honor, is, there

18  was a time to file for Reconsideration or Clarification of

19  your initial Opinion, and that was May 26th, and that date

20  has passed.  Nobody gets that date revived.  Nothing you're

21  going to do -- because certainly the parties have argued

22  these issues now extensively today -- are now going to allow

23  a party to say well, now that you granted this

24  Reconsideration, I have three more that I'd like to have.

25  It can't happen under the rules, it can't happen under Third

1  Circuit precedent, and even if it could happen, it doesn't

2  delay the appeal.

3          So the Court should address these on the merits

4  and not take the concerns of any parties that you're somehow

5  opening a door to just dragging this process out further.

6          JUSTICE NEWBOULD:  We've lost the sound.

7          MR. ROSENTHAL:  Can you hear me better, Your

8  Honor?

9          JUSTICE NEWBOULD:  I can hear you now, yes.

10         MR. ROSENTHAL:  Now, let's talk for a second about

11 whether what we've asked for and what we're proposing by

12 this Clarification will delay things, because the UKP said

13 -- Mr. O'Connor said it's unfortunate that we seek

14 Reconsideration and possible appeal because the money

15 remains in the lockbox.  Well, the money is going to remain

16 in the lockbox for years, not because of appeals but because

17 the Courts adopted a pro rata methodology, which says you

18 don't know how much to allocate to each Estate until all the

19 Claims come in and all the Claims get resolved.  So that's

20 what's going to cause the money to stay in the lockbox, not

21 the fact that we have 14 days after you filed your -- came

22 out with your Opinion that we came back right away with a

23 Reconsideration Motion or even if there were an appeal,

24 which we're hoping to avoid.

25         So Mr. Adler also spoke about -- and there's

1   nothing in the record to indicate that this is true -- but

2   he said well, now that we've got a Judge in the U.K., we're

3   going to be as fast as the U.S. and the Canadian

4   proceedings.  Well, what does that mean?  I mean, we've been

5   working for five years to reconcile Claims.  Are they saying

6   that they're going to catch up?  I mean, from everything

7   we've read and submissions that have been made, the

8   litigation over the UKP Claim alone could take years.

9        So I just want the Courts not to have any

10  illusions that this Motion or the guidance the Courts give

11  in connection with this Motion will be the thing that delays

12  any Distributions whatsoever.

13       We heard a lot more from all the parties but the

14  Canadian Debtors in particular that were just cited without

15  support, without reference to a record, just stated as fact.

16  Mr. Coleman said these are not the only Claims, the Bond

17  Claims, that could be asserted against multiple Debtors.  I

18  don't know what he's talking about.  None of his papers have

19  referenced any claims against multiple Debtor groups.  He

20  said you've read -- Your Honor, you've read and reread the

21  Briefs and toiled mightily to reach the Decisions that are

22  consistent with the record.  Knowing Your Honor over the

23  past years, I have no doubt about that and about how hard

24  you worked to -- and same thing with Justice Newbould and

25  having been in his Court for the last year and a half.  But

1  it doesn't mean -- it doesn't mean that you didn't

2  necessarily overlook something or make a modification that

3  you didn't intend, and I am not -- just as no other party

4  should purport to get into your mind as to what you intended

5  with some of the words that you said and whether they

6  reconcile with the Decision, that's for the Courts to

7  decide, but we submit that the fact that you worked really

8  hard and reviewed the record many times doesn't necessarily

9  mean that there's not something that you didn't overlook

10  there, and if you did overlook it and it hadn't been fully

11  briefed out by the parties, it is absolutely appropriate for

12  Reconsideration.

13          Now, NNSA got up before you and said there's no

14  debate that the NNSA ends up far worse from this Allocation,

15  and Justice Newbould asked my colleague, well, where's the

16  support in the record for that.  I mean, there's nothing.

17  It's just a blind assertion by NNSA that they end up worse.

18  They don't cite anything.  It's new counsel.  I don't know

19  what basis they have to have made that statement.  But the

20  one thing that's uncontested is that from these Allocation

21  decisions, the EMEA Group as a whole gets more than any

22  Estate including the EMEA Group as their primary argument

23  asked for, and it's all at the expense of the U.S.

24          A couple of quick questions the Courts raised at

25  various times where other parties have asserted can the

1   Courts can allocate to groups and leave it for other Courts

2   to decide in the future, and I think Mr. Gottlieb addressed

3   it very well and other people have also addressed it, but I

4   just want to read for the Courts paragraph 12(b) of the

5   IFSA, which is the paragraph about how to release money from

6   the Escrow, and it says it has to be released either upon

7   agreement of the parties or resolution by the dispute

8   resolvers, but it says the very last two lines, "subject" --

9           JUSTICE NEWBOULD:  Mr. Rosenthal, what paragraph

10  of that are you looking at?

11          MR. ROSENTHAL:  It's 12(b), Your Honor, B as in

12  boy.

13          JUSTICE NEWBOULD:  Pardon me?

14          MR. ROSENTHAL:  12(b) as in boy of the --

15          JUSTICE NEWBOULD:  12(b).  Okay.  Thank you.

16          MR. ROSENTHAL:  And I'm looking at the last two

17  lines, and the last two lines say "any release by J.P.

18  Morgan is subject in each case to payment of the agreed or

19  determined amount of Allocation of sale proceeds to all

20  selling Debtors."  So unless there's a time that money can

21  go to all selling Debtors, money can go to no selling

22  Debtors.

23          Turning briefly to our Request for Clarification

24  with regard to whether the settlements count, again,

25  nobody's taken issue with any of our specific examples that

1    were given or the principle that paid settlements should be

2    considered.  EMEA wholeheartedly agrees.  But the UKP did

3    say that that's not how they read it.  As Mr. O'Connor said,

4    well, the alternative to settling would've been we just have

5    more cash if we didn't pay UKP in cash, if we didn't pay

6    EMEA in cash, if we didn't pay other Creditors in cash.

7    That's exactly our point, because the Courts excluded cash

8    from the Allocation.  So we would've had the same Allocation

9    and we would've had the cash.  So there's no principal

10   basis, and there's certainly nothing in the Opinions that

11   would say that you shouldn't clarify it to say that all

12   settlements are covered.

13          Before I turn to a couple of our main points, Mr.

14   O'Connor spoke about some numbers he threw around and said

15   U.S. Creditors are going to get 75 percent.  The paper said

16   this too, and I made a note to myself when I read their

17   Brief, where are they getting 75 percent from?  There's no

18   citation.  And in our analysis that we attached to ours, it

19   doesn't come close to 75 percent.  They said well, 62

20   percent, but as Mr. Leblanc pointed out, that assumes that

21   the Court disregards *Ivanhoe*.  It's 40 percent if you -- if

22   you take that into account.  He also gave you citations.  He

23   said 98 cents if you reconsider.  Again, I have no idea

24   where he comes up with that.  We were transparent.  In the

25   back of our Brief, we put our calculations, how we modified

1    Britven and how we got to these exact numbers.  I have no

2    idea and certainly they're not numbers that we've ever heard

3    of how UKP came up with them.

4           Let me turn to the Tax Claim.  There hasn't been a

5    lot of argument against the Tax Claim, and frankly, nothing

6    that was particularly principled, and the argument was that

7    well, we heard this is an expense, and I think Mr. Coleman

8    said it, it's an expense of administering the Estate, then

9    he moved on, and I said there wondering, what's his basis

10   for saying that?  Is there a legal authority for that?  It's

11   not an expense of administering the Estate.  It's a Claim of

12   a Creditor on account of the fact that we sold these assets

13   and should it make a difference whether we sold these assets

14   pre-petition or post-petition?  By selling these assets, we

15   incurred this liability.  We have to pay the Claim.  We may

16   have to claim it -- pay it, frankly, at a higher rate with

17   higher priority because it was post-petition but there's no

18   basis to say it's just like legal fees or financial advisor

19   fees, and the UKP said taxes are an individual feature of an

20   Estate, not Claims-based.  I have no idea what that means,

21   but of course it's Claims-based.  It's a Claim of the IRS

22   for taxes associated with selling these assets.  There's no

23   reason why under this opinion that should be excluded.

24           And we get to the issue of procedures for inflated

25   Claims, and it really -- it all comes down, Your Honor, to

1   page 112 of your Opinion where you discuss the concerns and

2   you say the Court will resolve any disputed Claims to

3   prevent Claim inflation.  Now, Mr. O'Connor has a theory of

4   what was going through your mind when you said that.  He

5   said well, you must have only meant duplicative Claims.

6   Only you again can answer that question.  If that's what you

7   meant, then perhaps that could be clarified.  I don't read

8   that that way.  I read that as a definitive statement, and

9   all we are asking for is for you to tell us what those

10  procedures will be.

11          And we heard a lot from EMEA about, you know,

12  really a lot of outrage from my friend, Mr. Adler, and I do

13  call him my friend.  I think over the course of these

14  proceedings, we have developed a friendship, saying that,

15  you know, shockingly I've called him crooks and dishonest

16  and fraud and all that, and he gets very worked up in the

17  Opposition Brief and makes those same statements, but if you

18  actually look at our Brief that we -- that provoked the

19  Opposition Brief, we just said if you allow Claims to

20  dictate Allocation, you reduce the incentives of Estates to

21  fight those Claims.  It's -- in fact their fiduciary duty

22  becomes in all Estates somewhat conflicted because the more

23  you fight the Claims, the lower your allocation's going to

24  be, and that's what we say, and we do note in our reply

25  that, you know, they've sued us and they've sued their

1    directors, claims that we think are rather meritless.  We

2    don't call them fraud, we don't call them dishonest, we

3    don't call them crooks.

4           And that leads to the comity question, which is,

5    you know, does comity have anything to do with Allocation.

6    I think Mr. O'Connor even conceded these Courts have

7    authority and jurisdiction over Allocation, and that's what

8    we're deciding and that's what we're asking the Courts to

9    implement procedures to oversee.

10          And then we heard from the EMEA Debtors as well.

11   Ninety percent of these Claims are $100,000 or less.  Do you

12   really think we're going to bother the Court with Claims

13   that are $100,000 or less?  I mean, obviously the Courts can

14   implement whatever procedures they want, and if Your Honor

15   wants to say it has to have a million-dollar or a ten-

16   million-dollar or some other threshold before the Court will

17   get involved, that's fine.  But it's for the inflated Claims

18   that, to use the words of the Court, can skew a pro rata

19   Allocation and destroy the equitable Allocation method.  For

20   those Claims, it's appropriate for the Court to have

21   oversight before you release Allocation.

22          But it actually leads to an interesting question,

23   because we're concerned about well, if you do the right

24   things by the Bondholders, do you open the door to EMEA --

25   or not EMEA -- to UKP Claims for FSDs against all of the

1   other EMEA Debtors, and is this Court going to have to have

2   a trial on the validity of those FSD claims.  The answer is

3   no for a very, very simple reason.  Justice Newbould has

4   already done that.

5            Last summer, we, the U.S. Debtors, were thankfully

6   released from that, but last summer Justice Newbould held a

7   trial on the UKP Claims against the Canadian Debtors, and

8   one of the things -- we heard about it today -- was allowing

9   the Guarantee Claim in the amount of some 350 million

10  British pounds, but there were other Claims involved, and

11  expert testimony was presented, and at paragraph 174,

12  Justice Newbould wrote, "After considering all the experts

13  on the subject, in the end, I do not accept his evidence" --

14  and that's Mr. Reynertson's evidence of the UKP -- "that the

15  value of the NNUK's resources was less than 50 percent of

16  the estimated Section 75 debt, and I find that the

17  insufficiently resourced test has not been met."

18           Now, that doesn't just mean that they don't have

19  an FSD claim against the Canadian Debtors because they have

20  to establish that the insufficiently resourced Claim with

21  respect to NNUK's assets are met to have a Claim against

22  any, any other EMEA Debtor.

23           So these Courts don't need to go and litigate that

24  question.  These Courts can conclude on the record today

25  that an FSD Claim against 30 other or 19 other or whatever

1 the number is of EMEA Debtors has no basis and declined to

2 give an Allocation on account of that solely based on what

3 Justice Newbould has already found as a finding of fact

4 after an --

5           JUSTICE NEWBOULD:  Mr. Rosenthal --

6           MR. ROSENTHAL:  Yes.

7           JUSTICE NEWBOULD:  -- haven't you heard counsel

8 today say they're not -- they would not be pursuing such a

9 Claim?

10           MR. ROSENTHAL:  Yes, but Your Honor, what has also

11 been argued is, if you -- if you allow the Bondholder Claim

12 to affect the NNI Allocation, well, then for consistency --

13 I mean, maybe they disavowed it, and I'm sorry I've misheard

14 that.  You know, perhaps they said regardless of what you do

15 with the Bondholders, they're not going to pursue that,

16 which is the right thing because they're already getting a

17 huge windfall by virtue of this Opinion relative to what any

18 Estate advocated that they would get.  But to the extent

19 that they would say well, opening up the Bondholder issue to

20 being fixed will open up the UKP FSD Claims to being fixed,

21 those can be disregarded.  There's no reason to not do the

22 right thing with respect to the Bondholder Claims and NNI

23 because of the threat that there's now going to be 19 FSD

24 claims that are going to try to suck up $3 billion times 19.

25           Let me turn to NGS now before I get and finish up

1  with the Bondholder issue.  So we heard about the effect of

2  the release of the $53 million.  We've heard where Justice

3  Newbould, your Opinion cited Mr. Green as the only one who

4  said that that should be allocated based upon the fact that

5  NNI owned it.  We cite in our Brief that -- I mean, that's

6  just an error.  It's an error because Mr. Kinrich said that

7  the proceeds of that should all be allocated to NNI, and Mr.

8  O'Connor got up and said oh -- but he just said he should

9  adopt a revenue approach when he spoke about NGS, but 100

10 percent of the NGS revenue was attributable to NNI, so it

11 was included in his valuation calculation for NNI.

12          You heard Mr. Coleman say well, you know, we had a

13 reservation of rights when we released this NGS cash.  Well,

14 he didn't read you the full quote.  In paragraph 6(a) of

15 that agreement, it says, "The parties further agree that the

16 NNI cash reimbursement is solely for the purpose of

17 reimbursing funds to NNI that it owned as of December 18th,

18 2009, and such NNI cash reimbursement shall have no

19 precedential impact on the ultimate Allocation of the

20 Enterprise Escrow funds to any depositor as defined in the

21 Enterprise Escrow Agreement," because it was a bigger issue.

22 We had hundreds of millions of dollars of Enterprise Escrow

23 funds that had to be allocated, and the release of this cash

24 wasn't going to affect that, but there's an acknowledgement

25 that NGS was owned exclusively by NNI and it had a right to

1    the cash.  The rest of it went through lockbox because it

2    had to be valued.  And we have heard no argument today, not

3    one peep, that the PBGC Lien should be disregarded by this

4    Court with respect to that.  Haven't heard anybody dispute

5    that, and to not allocate those proceeds to NNI would result

6    in eviscerating that prior Order of the Court.

7            But we have heard, well, doesn't giving the NGS

8    and the DiamondWare proceeds to NNI, doesn't it undermine

9    the pro rata principle that the Court espoused and didn't

10   the Court reject the ownership theory?  Yes and no.  Yes, it

11   rejected the pure ownership theory with respect to what it

12   viewed as shared assets, but it did not do that across the

13   board.  There are numerous, numerous assets that the

14   Canadian Debtors have sold that they've kept all the

15   proceeds, the EMEA Debtors have sold that they've kept all

16   the proceedings, and we look at what the Court said on page

17   90, why is the Court allocating the primary lockbox proceeds

18   on a pro rata way, and it says "The MRDA does not control

19   Allocation.  In the absence of an agreement governing

20   Allocation or a preponderance of evidence showing

21   entitlement to assets and the value of those assets, the

22   Court's task is to arrive at a fair and equitable mechanism

23   to allocate."  And we submit, Your Honor, that while that

24   rationale may apply to the assets such as the intellectual

25   property that the Court has said was really everybody

1   contributed to it, it was integrated, it wasn't owned by

2   anybody, to the shared lines of business because you found

3   that there was not a preponderance of the evidence showing

4   entitlement to those assets.  With respect to NGS and

5   DiamondWare, we submit the Court simply overlooked that they

6   were different and there was a preponderance of evidence in

7   this record starting with the Court's own Order with regard

8   to the PBGC showing an entitlement to those assets and the

9   value is within the narrow range of 110 to $150 million that

10  the experts have submitted to the Court.  So the rationale

11  for the Opinion does not apply with respect to NGS and

12  DiamondWare, and that's why we submit that it should

13  reconsidered and adjusted.

14          We finally get to the big issue that I think took

15  up most of people's time today, and that is the question of

16  what did the Court intend when it said the Bondholder Claim

17  can receive Distributions in both the U.S. Estate and the

18  Canadian Estate but not an Allocation in both, and is that

19  either manifest injustice or is that something based upon an

20  argument that was not fully presented to the Courts.  In the

21  UKP, I think Mr. O'Connor said it very well, he accused it

22  of being a fallacy, but I think that's for the Court to

23  decide.  He said that the Court's intended Creditor

24  recoveries that we -- that it's a fallacy that we are

25  arguing that the Court's intended Creditor recoveries to be

1    comparable across the world.  We are not saying that, Your

2    Honor.  But we are saying that the Court was very, very

3    clear and it states it at least twice in the Opinion, first

4    at page 63, that it was allocating "a pro rata share of the

5    sales proceeds based on the amount of Claims against each

6    Estate," and then on page 112, paragraph 5, "Once Claims are

7    resolved, the amount in the lockbox will be divided by the

8    total claims and each Estate will be allocated its

9    proportionate amount."  And this is why almost all of the

10   arguments today against this Motion were really on another

11   issue entirely.  The Court said I am not looking at the

12   other things, I am putting aside -- and Your Honor can

13   correct me obviously when you go and consider whether to

14   grant this Motion or not if I'm wrong but I submit that when

15   I read this Opinion, the Court looks like it was saying I'm

16   going to put aside the cash you have, I'm going to put aside

17   the Intercompany Claim the U.S. has against the Canadian

18   Debtors, and I want to take the $7.3 billion or perhaps 7.2

19   if you carve out NGS's result, and I want to allocate that

20   pro rata based on Claims.  And if that is what the Court

21   intended from the entirety of reading this opinion

22   holistically, well, then the fact that the U.S. has other

23   assets to get its creditors up to 40 cents is irrelevant.

24   It's completely irrelevant.  The fact that EMEA may have

25   other assets to get their Creditors up to 65 cents or the

1    Canadian Debtors may have assets to get them to 49 cents,

2    it's completely irrelevant.  It's, did the Court achieve a

3    Pro Rata Allocation of the sales proceeds, and purely by

4    excluding the Bondholders -- not the Bondholders -- by

5    excluding the U.S. Debtors from getting proceeds to pay an

6    allowed Claim -- it's an allowed Claim -- we said that means

7    the lockbox is actually being divided on a Creditor-by-

8    Creditor dollar-by-dollar basis 14 cents to the U.S.

9    Creditor dollar -- on a dollar-to-dollar basis, 47 to Canada

10   and 48 to EMEA.  Nobody's disagreed with that.  You haven't

11   heard one disagreement.  You've heard oh, forget 14/48/47.

12   It's 40 because you have to look at the other assets because

13   that's what the Courts intended to do, but if you didn't, if

14   you didn't, 14/47/48 is not pro rata, it is not modified pro

15   rata, it is inconsistent with the rest of this Court's

16   Opinion, and the simple fix is for the Court to say that

17   when you have a Claim allowed against Debtors in different

18   Estate Groups, it's not something where within a group and,

19   you know, maybe NNI and one of its subsidiaries can have,

20   you know, inflated Claims because they guaranteed Claims of

21   each other or you've got within a group like the Canadian

22   Group or the EMEA Group.  When you've got different groups,

23   why would you pick one versus the other?

24            And that's what the Court did, and it's not

25   penalizing the Bondholders by saying well, I'm going to give

1   you a Distribution in two places but I'm not going to give

2   you an Allocation.   More than anybody -- I mean, the

3   Bondholders get penalized somewhat but more than anybody,

4   it's the Non-Bondholder Creditors of the U.S., and I have a

5   simple --

6            JUSTICE NEWBOULD:  Is this reply again, Mr.

7   Rosenthal, or is this repetition?

8            MR. ROSENTHAL:  It absolutely is, Your Honor.  I

9   am pointing out that the core evidence that we have directed

10  the Courts to of the 14/47/48 has been uncontested and why

11  the numbers that have been presented to the Court are

12  inconsistent with the Court's Opinion.

13           And we've also heard well, we have a love-hate

14  relationship with Britven.  We don't need Britven for this

15  principle.  Let's just say hypothetically the Canadian

16  Debtors have $50 worth of claims, the EMEA Debtors had $50

17  worth of claims, and the U.S. Debtors had $10 worth of

18  General Unsecured Claims and $40 worth of Allowed Bondholder

19  Guarantee Claims.  So everybody's going to be responsible to

20  pay 50 cents -- or $50 out, and normally one would say okay,

21  well, I'm going to go a third, a third, a third if I want to

22  have pro rata so that they all can pay those equally and

23  equitably.  But if you don't count it because it's a

24  guarantee and you've made a qualitative Decision, you've

25  made a Decision to say I'm going to allow it up in Canada

1    but not here, even though you're both equally liable, it's

2    no primary-secondary, we have liability for that.  And if

3    you say I'm only going to count $10 as what your real Claims

4    are, well, we then get 1/11th, right, $10 50/50.  We get

5    1/11th but we have to pay $50 worth of Claims.  You see from

6    that alone the devastating impact of that.  It's going to --

7    it's not just going to reduce it by half, it's going to

8    reduce it by 75 percent or more.  So we don't need Britven

9    to illustrate that for us.

10            So when we look at the Opinions also, you have Mr.

11    Zarnett saying well, this was addressed by the Courts in the

12    Opinions, and he pointed the Canadian Court to paragraph 209

13    of the Canadian Opinion and then starting at 224 where he

14    spoke about Bondholder expectations.  But it's not about the

15    Bondholders.  You did not disallow a second Bondholder Claim

16    in the U.S.  It's allowed.  You disallowed the U.S. Debtors

17    from getting an Allocation to pay that Claim.  So the fact

18    that the Court spoke about Bondholder expectations and the

19    fact that the Courts spoke about whether the Bondholders

20    should or should not get a second Distribution has nothing

21    to do with Distribution without Allocation.  And coming back

22    to my earlier point, nobody has ever pointed you to one

23    shred of evidence, one argument, one sentence in one Brief

24    proposing that result, not one.  All they can say is, they

25    told you you could do whatever you want.  Is that really a

1    basis to say you can't reconsider it because they said you

2    could do whatever you want?

3            So I think in closing, Your Honors, I just want to

4    leave the Courts with the fact that there has been only one

5    Claim in all of these proceedings that exists in multiple

6    Estate Groups that is presumably being allowed in multiple

7    Estate Groups where only one group has been chosen to get an

8    Allocation for it, only the Bondholders.  The UKP has a

9    claim in Canada, and they're getting -- Canada's getting an

10   Allocation for it, and I know that Justice Newbould said

11   that well, that's different, it's actually not, Your Honor.

12   It is a contractual Guarantee Claim.  It is exactly like the

13   Bondholder Claim.  The FSD Claim was denied in Canada but

14   the contractual claim saying that if U.K. went insolvent,

15   there's a --and could not pay on its pension benefits,

16   there's a contractual guarantee by the Canadian Debtors, and

17   there's an Allocation for the Canadian Debtors for that as

18   well as the EMEA Debtors.  The only one who's not getting it

19   is NNI with respect to the Bond Claim.  Thank you.

20           THE COURT:  All right.  Thank you.

21           You know, I'm reluctant, Mr. Coleman, to allow you

22   to argue further because I think that the replies have been

23   in.

24           MR. COLEMAN:  Fair enough, Your Honor.  It was

25   just two statements of law that were made.

1          THE COURT:  All right.

2          MR. COLEMAN:  I'm not going to --

3          JUSTICE NEWBOULD:  It's hard for us to hear that.

4          MR. COLEMAN:  Sorry, Justice Newbould.  It was --

5   I'm not going to stand here and take the bait to reply to

6   the reply.  I don't think Your Honor's misapprehending

7   anything when you leave the record the way I this.  There

8   were just two statements that Mr. Rosenthal made that I just

9   feel compelled to correct.

10          We did not talk about the risk of Re-

11   reconsideration.  We talked about the risk of Your Honor

12   entering a new Order, okay, and that would be -- that would

13   start the period again for appeals and Motions for

14   Reconsideration.  He pointed you to a Third Circuit case

15   that had to do with a party who lost a Motion for

16   Reconsideration, so the Order was not modified.  The party

17   then filed another Motion for Reconsideration.  It was

18   denied.  That's a Re-reconsideration.

19          THE COURT:  Right.

20          MR. COLEMAN:  That opinion from the Third Circuit

21   also has in capital letters bold-faced type at the top "not

22   precedential," okay?  We would refer you instead to a

23   Decision by Judge Easterbook of the Seventh Circuit Court of

24   Appeals, Charles v. Daley, at 799 F.2d 343 --

25          MR. ROSENTHAL:  Your Honor, I would just object.

1  This does not seem appropriate for a reply to get citations

2  to case authority for the first time when I point out he

3  didn't give any case authority, I mean, unless I'm going to

4  have a chance to respond to that.

5          MR. COLEMAN:  Well, with respect, Your Honor, he

6  cited a Third Circuit case that is not precedential for the

7  first time, and I'm pointing you to a case that actually

8  sets out what the law is.

9          THE COURT:  All right.

10          MR. COLEMAN:  And that's Judge Easterbrook's

11  Decision that I just cited to you.  When there is a new

12  judgment, an alteration independently sufficient to restart

13  the time for appeal, there is also a new period in which to

14  file a Motion under Rule 59.

15          THE COURT:  Okay.

16          MR. COLEMAN:  Last point, then I'll sit down.  The

17  Tax Claim is an expense of administration.  Section 503 of

18  the Bankruptcy Code helpfully entitled "Allowance of

19  Administration Expenses," Section 503(b)(1)(B), includes any

20  tax incurred by the Estate.  I would also note that legal

21  fees are picked up under 503(b)(1) -- sorry --

22  (b)(1)(A)(ii).  Thank you very much.

23          THE COURT:  All right.  Thank you.  Well -- yes

24  Mr. Adler?

25          MR. ADLER:  I apologize, Your Honor.  Less than --

1  less than two minutes, I think.

2         There was just two points, two related points,

3  that come from Mr. Rosenthal's submissions that I really do

4  need to address.  The first is the suggestion that Justice

5  Newbould's Decision would be taken by the pensions

6  regulators in the U.K. as binding with respect to whether

7  FSDs should issue.  We don't know if that's true or not.

8  But the broader point is that Mr. Rosenthal suggested that

9  the Bondholder -- the situation with the Bondholder

10 Guarantee is unique, that there are no other Estates that

11 are in the same situation.  We've cited a number of other

12 duplicative Claims that we know.  The FSDs are one.  The FSD

13 snapback Claims are another.  There's a $2 billion claim

14 within the Canadian Estates that looks to us like a

15 duplicative claim, and so it seems clear to us that the

16 principle of non-duplicativeness should apply, and if he's

17 so confident that there aren't other situations like this

18 where people are bound with a liability for a guarantee-type

19 Claim, a duplicative-type Claim and not getting an

20 Allocation for it, then the Court should just abolish the

21 non-duplicativeness requirement and make it the same across

22 the board.  If there's really no other situation like this,

23 then that would be the solution to what he's positing, but

24 that's clearly not true.  We believe there are a number of

25 other duplicative Claims and that the principle of counting

1  each dollar of Claim once is the right principle.

2           THE COURT:  Thank you, Mr. Adler.

3           Anything further, Mr. Rosenthal?

4           MR. ROSENTHAL:  No, Your Honor, and I thank both

5  Courts for their time again today.

6           THE COURT:  All right.  Well, let me just say that

7  I've been quiet obviously through this argument --

8           JUSTICE NEWBOULD:  I can't hear you, Judge Gross.

9                        (Laughter)

10          THE COURT:  I'm sorry.  I was saying I've been

11 quiet through the argument because I've listened.  You know,

12 it's not necessarily an easy thing to listen to good lawyers

13 tell the Judge where he went wrong on an Opinion, and at the

14 same time I did have others telling me, you know, where I

15 went right, and so I've taken all that information in very

16 carefully and will consider your arguments and write an

17 opinion.

18          MR. ROSENTHAL:  Your Honor, since I didn't get a

19 chance to flatter you in the same way as my adversaries did,

20 I'll say that I think the day after this Opinion came out,

21 you had your employee claim, and I thought that that was a

22 wonderfully reasoned opinion.

23                        (Laughter)

24          THE COURT:  Thank you.  Thank you, sir.

25          Anything from you, Justice Newbould?

1          JUSTICE NEWBOULD:  No.

2                    (Laughter)

3          THE COURT:  All right.  Thank you, everyone, for a

4    good argument, and we'll stand in recess.

5          JUSTICE NEWBOULD:  Thanks, counsel.

6          THE COURT:  Thank you all.

7          THE CLERK:  The Court is in recess.

8

9       (Whereupon at 5:26 p.m., the hearing was adjourned.)

10

11                    CERTIFICATION

12          I certify that the foregoing is a correct

13    transcript from the electronic sound recording of the

14    proceedings in the above-entitled matter.

15

16
17    _____        June 29, 2014
18    Florence E. Blantz, Transcriber        Date
19    Diaz Transcription Services

| Word | Page:Line |
|---|---|

**-and**(1) 237:15
**113-page**(1) 216:19
**21-day**(1) 118:14
**503(b)(1)**(1) 239:21
**503(b)(1)(b)**(1) 239:19
**a(2)**(2) 125:17 126:7
**a(3)**(2) 125:17 126:2
**a-2**(1) 212:2
**a-3**(4) 203:25 204:6 211:17 211:18
**a.m**(4) 1:15 12:1 77:23 77:23
**abbott**(10) 1:26 12:6 12:7 12:8 12:14 12:24 13:3 13:6 13:9 13:12

**abedi**(1) 9:9 9:10
**ability**(4) 17:9 158:12 191:10 191:20
**able**(5) 19:22 35:17 39:24 50:6 54:23 54:25 70:9 76:19 95:7 112:22 114:15 133:22 137:11 137:24 139:2 139:11 139:12 140:9 140:13 140:14 182:2 187:6 189:9 199:25 218:14
**abolish**(2) 136:5 240:20
**about**(175) 12:15 16:16 20:12 20:15 23:23 24:20 33:20 35:25 37:19 38:18 41:14 44:48:15 53:13 55:3 56:5 56:14 56:16 58:16 61:20 62:4 62:5 65:20 65:21 68:19 70:16 70:19 71:22 71:23 73:16 73:21 74:9 75:2 75:23 75:24 80:8 82:4 82:6 82:19 86:9 88:2 90:15 90:18 91:7 91:8 91:14 91:15 92:13 94:9 95:1 95:6 95:15 95:23 98:1 98:2 98:5 98:22 99:17 99:21 100:23 101:13 101:15 102:11 103:6 103:8 103:8 103:20 104:5 105:11 107:13 107:18 107:19 107:21 108:9 108:20 108:23 109:7 109:22 110:6 110:19 111:3 111:5 111:23 111:24 113:23 114:18 114:22 117:11 117:12 119:11 120:14 120:23 121:13 122:1 123:3 125:10 125:10 131:13 133:15 137:16 137:22 138:10 138:17 139:4 139:10 140:19 143:9 145:20 146:11 147:11 148:21 151:11 152:15 156:19 157:12 158:20 159:16 160:14 161:10 162:23 165:15 167:2 167:3 167:9 167:17 170:7 170:10 170:13 171:15 179:11 184:12 185:13 188:13 190:19 190:22 190:25 195:7 197:23 199:1 199:6 202:21 203:5 203:9 206:4 207:15 207:17 207:24 208:8 209:12 211:15 212:10 213:6 213:7 216:18 216:25 220:10 220:25 221:18 221:23 221:23 223:5 224:14 226:11 227:23 228:8 230:1 230:9 236:14 236:14 236:18 236:19 238:10 238:11

**above**(2) 95:7 131:23
**above-entitled**(1) 242:14
**abrams**(1) 6:30
**absence**(2) 169:20 231:19
**absolutely**(6) 14:8 19:12 27:23 191:9 195:23 211:8 222:11 235:8

**abuse**(1) 129:9 147:20
**accept**(11) 44:21 167:25 170:8 172:7 172:22 178:24 180:3 180:21 189:2 212:17 228:13
**acceptable**(1) 81:24
**accepted**(3) 86:11 130:2 142:12
**accepts**(2) 132:10 179:15 179:15
**access**(1) 120:9
**accidentally**(1) 64:13
**accommodate**(3) 119:21 119:25 178:21
**accommodating**(1) 14:4
**accomplish**(1) 43:5
**accomplished**(2) 79:5 79:10
**accorded**(1) 188:3
**account**(19) 18:14 30:19 31:4 31:5 31:8 35:8 40:20 46:1 52:9 81:6 90:20 124:24 160:15 160:17 179:9 182:2 224:22 225:12 229:2
**accounted**(1) 81:19
**accounts**(4) 55:17 161:1 175:16 203:3
**accrual**(1) 59:25

**accrue**(1) 168:24
**accurately**(1) 170:23
**accused**(2) 145:23 232:21
**accusing**(2) 64:14 147:21
**achieve**(6) 25:13 26:8 43:4 92:18 169:22 234:2

**achieved**(2) 82:3 82:5
**acknowledge**(4) 66:10 66:13 66:18 212:21
**acknowledged**(3) 99:22 203:19 218:1
**acknowledgement**(1) 230:24
**acknowledges**(1) 121:22
**acknowledging**(1) 211:21
**acronym**(2) 63:12 159:5
**across**(10) 99:11 99:24 148:8 151:1 164:25 169:15 192:1 231:12 233:1 240:21

**act**(4) 133:11 133:19 137:2 148:10
**acted**(2) 134:22 136:7
**actual**(3) 34:17 126:19 155:20
**actually**(31) 23:5 26:5 40:22 45:13 45:14 90:7 105:10 133:14 133:25 134:24 137:12 137:14 139:14 144:16 144:20 145:22 149:12 151:12 159:2 160:12 175:25 205:12 211:3 211:17 211:25 219:5 226:18 227:22 234:7 237:11 239:7

**actuarial**(3) 151:9 151:10 151:13
**actuary**(1) 191:1
**adam**(1) 6:13
**add**(6) 71:7 97:21 110:19 110:21 127:13 171:19

**added**(1) 55:6
**adding**(2) 70:16 204:18
**addition**(2) 199:5 217:3
**additional**(6) 55:15 119:21 127:19 158:17 174:24 205:16

**address**(27) 17:18 35:22 41:12 64:22 64:24 64:25 100:22 102:17 104:8 121:1 167:2 167:7 167:11 167:14 167:17 167:18 175:1 175:9 179:6 202:9 208:7 208:11 210:6 214:4 219:5 220:3 240:4

**addressed**(15) 60:20 63:24 65:14 97:25 118:21 124:25 137:25 145:14 189:15 189:15 205:13 217:24 223:2 223:3 236:11

**addressing**(4) 75:22 141:6 141:7 192:15
**adelaide**(1) 3:9
**adhere**(1) 144:5
**adjourned**(1) 242:9
**adjudicate**(1) 148:8
**adjust**(2) 72:6 144:7
**adjusted**(3) 170:4 171:8 232:13
**adjustment**(3) 20:21 107:18 176:15
**adjustments**(3) 91:10 178:25 178:25
**adler**(40) 2:32 113:8 113:19 133:8 133:9 138:10 138:13 138:15 138:20 139:7 139:12 140:14 144:25 145:3 145:5 146:5 146:1 146:25 147:3 147:9 149:19 149:22 153:2 153:6 153:10 153:13 153:24 154:10 154:15 158:11 160:16 161:8 161:22 191:4 202:23 220:25 226:12 239:24 239:25 241:2

**administer**(1) 134:14 135:21
**administered**(2) 1:6 156:14
**administering**(3) 33:17 225:8 225:11
**administration**(9) 97:13 99:6 99:21 100:6 134:17 138:22 230:17 239:17 239:19

**administrations**(1) 147:24
**administrative**(5) 34:10 34:11 70:13 71:1 168:23

**administrator**(12) 5:13 6:16 6:22 29:19 134:9 136:19 168:3 202:8 202:17 203:8 203:10 204:17

**administrators**(28) 2:24 7:5 75:14 133:17 133:19 134:8 134:10 134:12 134:14 134:15 134:16 134:21 135:19 137:5 137:8 137:10 137:18 138:6 138:8 138:22 145:20 145:24 146:3 147:7 147:13 147:21 147:21 191:12 203:7

**administrators'**(1) 146:17
**admissions**(1) 192:25
**admit**(1) 130:8
**admittedly**(1) 170:8
**admonished**(1) 212:16
**admonition**(11) 48:8 48:21 48:22 49:2 49:7 212:12 212:14 212:18 212:22 213:7 213:8
**adopt**(7) 26:10 127:10 150:1 175:6 176:16 181:2 230:9

**adopted**(4) 85:16 204:23 216:23 220:17
**adopting**(1) 35:14 148:12 201:13
**adoption**(6) 16:5 16:10 16:23 18:19 26:7 203:22

**adopts**(1) 131:7
**advance**(2) 131:18 205:5
**advanced**(7) 52:2 104:7 186:9 203:16 203:24 204:20 205:7

**advancing**(1) 179:10
**advani**(1) 5:33
**adversarial**(4) 18:4 18:21 118:5 217:13
**adversaries**(2) 217:1 241:19
**advisor**(2) 83:3 225:18
**advisors**(1) 9:4
**advocacy**(2) 24:17 195:19
**advocated**(6) 21:9 85:17 87:17 156:2 178:23 229:18

**advocates**(1) 118:8
**advocating**(6) 21:2 31:1 90:22 218:8 218:9 218:10

**affect**(8) 47:1 47:2 47:12 79:3 200:11 200:12 229:12 230:24

**affects**(2) 47:25 48:1
**affirmatively**(1) 34:7
**afford**(1) 79:20
**after**(29) 14:21 14:23 22:2 38:20 48:15 61:11 63:1 79:7 88:9 95:12 103:11 104:1 105:13 112:5 112:18 119:4 127:5 129:17 140:6 157:6 168:24 193:5 197:20 203:6 219:1 220:21 228:12 229:4 241:20

**afternoon**(26) 77:25 115:5 115:7 133:8 133:9 166:20 166:21 166:22 175:3 192:7 193:24 194:10 194:15 194:15 194:16 201:10 201:11 202:4 202:5 202:6 202:13 206:3 207:9 210:21 213:17 214:18

**again**(94) 15:11 17:8 21:7 22:17 24:14 31:17 32:5 34:22 35:5 37:18 37:20 40:13 47:14 52:24 55:9 56:4 56:17 60:15 65:5 66:19 67:9 68:1 70:17 70:22 71:6 71:9 72:10 76:9 81:20 83:22 85:14 87:7 87:21 88:12 89:1 91:25 92:5 92:10 95:14 95:20 100:4 104:3 105:22 115:21 116:10 116:17 118:7 120:16 120:18 120:20 121:18 121:23 123:4 124:12 124:15 126:10 126:13 127:1 127:3 139:9 140:12 142:12 151:19 153:25 156:18 158:15 161:23 162:14 163:5 163:14 171:9 171:15 173:23 174:20 179:23 180:20 182:20 185:12 185:21 186:4 189:17 189:24 191:13 192:1 197:15 199:13 214:4 218:3 223:24 224:23 226:6 235:6 238:13 241:5

**against**(77) 28:9 28:11 28:12 29:1 29:2 29:4 29:22 30:2 30:17 32:18 33:3 33:5 33:6 33:7 33:9 34:19 34:17 35:12 38:22 46:2 58:9 65:10 65:10 79:17 81:11 81:12 81:13 81:14 82:16 86:14 87:23 102:18 103:2 106:18 107:5 119:16 132:23 141:24 142:10 142:17 142:23 143:14 148:11 156:21 156:22 158:8 158:8 164:2 164:6 164:13 164:13 164:18 165:17 165:25 166:2 175:19 178:16 189:7 189:25 190:1 190:9 190:14 190:23 211:4 216:11 221:17 221:19 225:5 227:25 228:7 228:19 228:21 228:25 233:5 233:10 233:17 234:17

**agenda**(1) 12:14
**agent**(1) 133:21
**aggregate**(3) 53:19 99:23 185:5
**aggressive**(4) 146:6 146:9 146:12 147:5
**ago**(6) 46:13 56:24 61:18 66:15 86:9 145:2
**agree**(20) 15:8 27:11 27:12 34:8 35:2 44:17 47:21 47:24 63:8 63:24 127:4 140:18 167:23 186:19 190:2 190:3 190:5 190:9 190:13 230:15

**agreed**(9) 21:23 23:2 27:5 46:14 90:3 94:2 137:22 156:7 223:18

**agreement**(17) 31:23 31:24 45:15 88:14 88:15 89:7 89:20 89:22 96:7 157:16 160:18 160:25 169:20 223:7 230:15 230:21 231:19

**agreements**(5) 160:5 160:7 160:7 160:12 161:2

**agrees**(2) 46:16 224:2
**ahead**(4) 85:8 85:9 116:1 116:5
**akin**(3) 4:13 6:39 50:11
**alan**(1) 7:6
**alberta**(1) 129:3
**alberto**(1) 5:26
**aligned**(1) 136:8
**alive**(1) 212:5
**all**(204) 12:15 14:5 15:19 18:7 18:15 19:16 21:2 21:12 23:1 23:2 23:12 29:23 31:2 33:7 34:14 34:24 36:5 37:4 37:14 38:24 39:3 39:12 39:12 39:15 40:24 41:4 41:4 41:17 41:24 42:2 43:19 46:13 47:24 51:11 51:24 53:13 58:16 59:17 61:14 61:16 63:7 66:21 67:1 67:24 68:14 72:13 72:16 77:5 77:5 77:12 77:15 77:17 77:21 79:7 85:9 86:8 89:16 90:2 92:24 93:25 93:13 93:16 94:23 96:14 99:14 99:16 100:5 100:13 101:13 103:11 104:18 104:25 105:3 111:4 111:23 112:18 112:24 113:1 113:24 114:7 114:20 115:16 115:21 116:10 117:6 117:15 118:13 118:23 121:22 122:7 123:1 123:15 123:15 123:16 124:8 129:17 132:14 133:13 134:20 136:9 136:25 137:2 137:6 138:5 138:25 140:2 141:1 141:5 144:2 144:4 144:4 144:10 144:12 147:17 149:6 149:19 150:14 152:18 153:1 155:5 156:22 156:24 158:13 158:25 159:3 159:11 160:12 160:13 160:13 164:21 165:4 165:18 167:23 172:25 173:7 173:8 178:5 180:24 181:2 182:2 184:23 186:17 186:20 186:21 188:23 190:1 191:25 192:15 193:8 193:13 194:5 195:4 195:10 195:11 197:14 197:15 197:24 199:15 199:24 202:2 202:11 203:3 204:2 205:5 205:25 206:10 206:14 207:1 213:9 213:12 213:22 214:7 215:5 215:15 217:3 218:22 220:18 220:19 221:13 222:23 223:19 223:21 224:11 225:25 226:9 226:16 226:22 227:25 228:12 230:7 231:14 231:15 233:9 235:22 236:24 237:5 237:20 238:1 239:9 239:23 241:6 241:15 242:3 242:6

**alleging**(1) 197:4
**allen**(3) 3:15 7:44 78:2

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **allocate**(9) 18:13 38:1 98:19 135:17 220:18 223:1 231:5 231:23 233:19 | | **also**(55) 18:5 20:15 22:2 34:16 45:19 47:19 52:3 52:8 65:6 70:3 80:18 81:20 85:2 87:18 87:19 90:14 90:24 111:10 116:14 126:19 136:1 138:2 139:14 140:18 142:2 143:12 143:17 144:15 151:23 153:24 158:19 160:7 161:14 164:17 173:12 185:10 190:5 190:9 190:12 192:12 198:23 201:22 206:16 214:2 216:12 217:17 220:25 223:3 224:22 229:10 235:13 236:10 238:21 239:13 239:20 | | **and**(301) 2:31 12:24 13:20 14:6 14:7 14:10 14:23 15:3 15:10 15:17 16:7 16:7 16:9 16:10 16:11 16:13 16:14 16:15 16:18 16:19 16:20 16:24 16:25 17:1 17:6 17:7 17:22 18:1 18:4 18:7 18:9 18:10 18:16 18:16 19:21 20:2 20:3 20:5 20:11 20:13 20:15 20:16 20:18 20:19 21:2 21:7 21:9 21:10 21:13 21:14 21:15 21:17 21:17 22:19 23:1 23:7 23:25 24:6 24:7 24:8 24:9 24:11 24:12 24:13 24:16 24:21 24:22 25:2 25:3 25:6 25:8 25:16 25:17 25:19 26:11 26:12 26:13 26:15 26:16 26:20 26:21 27:2 27:7 27:9 27:14 28:5 28:9 28:11 28:13 29:2 29:6 29:8 29:14 30:17 30:19 30:21 31:5 31:6 31:17 31:21 32:15 32:19 32:23 33:5 33:8 33:9 33:23 33:24 33:25 33:25 34:1 34:2 34:4 34:6 34:14 35:3 35:4 35:5 35:10 35:11 35:15 35:17 35:19 35:20 35:20 35:24 35:25 36:1 36:2 36:5 36:7 36:8 36:12 36:18 36:19 37:14 37:17 37:17 37:22 38:1 38:5 38:9 38:12 38:18 38:21 38:24 39:3 39:5 40:1 40:5 40:6 40:6 40:17 40:19 40:20 41:1 41:6 41:13 41:20 42:2 42:7 42:15 43:2 43:2 43:3 43:7 43:10 43:13 43:13 43:15 43:16 43:16 43:23 44:1 44:1 44:2 44:3 44:4 44:4 44:6 44:8 44:9 44:10 44:12 44:14 44:21 44:22 45:3 45:7 45:9 45:13 45:18 45:19 45:22 46:2 46:5 46:7 46:19 46:19 46:22 47:2 47:6 47:10 47:13 47:17 47:19 47:21 47:24 48:1 48:3 48:3 48:4 48:14 48:18 48:21 48:21 49:1 49:5 49:6 49:13 49:23 50:1 50:4 50:6 50:22 51:15 51:24 51:25 52:1 52:3 52:8 52:11 52:15 52:23 52:25 53:2 53:3 53:5 53:15 53:17 54:9 54:15 54:16 54:23 54:24 55:2 55:4 55:9 55:12 55:17 55:18 56:7 57:2 57:4 57:11 57:18 57:20 57:24 58:2 58:15 58:19 58:22 58:23 58:25 59:1 59:2 59:3 59:14 60:2 60:7 60:9 60:18 60:23 60:23 61:2 61:6 61:9 61:11 61:16 61:22 62:6 62:8 63:1 63:3 63:3 63:8 63:9 63:14 | | **and**(301) 63:20 63:21 63:22 63:24 64:4 64:5 64:8 64:11 64:13 64:17 64:21 64:23 64:24 65:5 65:9 65:10 65:13 65:14 65:14 65:16 65:17 65:18 65:20 65:20 65:23 65:23 65:25 66:1 66:6 66:8 66:9 66:13 66:14 66:23 67:5 67:9 67:10 67:11 67:13 67:22 67:23 67:23 68:3 68:6 68:10 68:16 68:24 69:5 69:13 69:17 69:22 69:23 69:24 69:24 70:5 70:15 70:17 70:22 70:25 71:1 71:7 71:9 72:2 72:4 72:8 72:8 72:12 72:14 72:22 72:22 72:23 72:24 72:25 73:2 73:10 73:12 73:14 73:22 73:24 74:1 74:15 74:16 74:19 74:24 74:24 75:6 75:17 75:18 75:18 75:19 75:22 76:2 76:14 77:2 77:2 77:7 77:9 78:3 78:10 78:19 79:4 79:11 79:12 79:15 79:21 79:23 79:25 80:3 80:6 80:8 80:9 80:14 80:17 80:21 80:23 81:4 81:13 81:20 81:24 81:25 81:25 82:5 82:24 82:7 82:10 82:12 82:13 82:18 82:20 82:20 82:23 82:25 83:3 83:3 83:5 83:8 83:10 83:14 83:14 83:20 83:21 85:6 85:8 85:17 85:17 85:20 86:10 86:21 86:25 87:1 87:9 87:9 87:10 87:14 87:14 87:15 87:17 87:19 87:21 88:1 88:5 88:11 88:14 88:18 89:11 89:16 90:2 90:2 90:11 90:21 91:5 91:10 91:10 91:21 91:23 92:6 92:9 92:11 92:12 92:15 92:21 93:2 93:2 93:6 93:8 93:9 93:9 93:11 93:11 93:16 93:17 93:18 93:18 93:19 93:22 93:25 94:10 94:15 94:16 94:21 94:22 94:25 95:4 95:9 95:12 95:19 96:12 96:13 96:14 96:16 96:23 96:25 97:6 97:13 97:18 97:19 97:20 97:20 98:4 98:19 98:19 98:20 98:21 98:23 99:3 99:4 99:10 99:13 99:14 100:2 100:3 100:4 100:12 100:12 100:23 101:6 101:20 101:21 101:25 102:7 102:9 102:12 102:17 102:24 102:25 103:3 103:8 103:11 103:14 103:21 104:4 104:8 104:16 105:2 105:3 105:6 106:7 106:8 106:24 107:6 107:6 107:7 107:9 107:10 107:14 107:24 108:1 108:1 108:3 108:8 108:8 108:14 108:17 108:25 108:25 109:2 109:5 109:5 109:8 109:9 109:14 109:15 109:18 109:20 109:23 110:4 110:5 110:9 110:11 110:13 110:15 110:18 110:23 110:24 111:10 111:12 111:24 111:25 111:25 112:2 112:3 |
| **allocated**(8) 35:12 156:6 156:20 182:15 230:4 230:7 230:23 233:8 | | **alter**(1) 16:25 | | | | | |
| | | **alteration**(1) 239:12 | | | | | |
| **allocating**(2) 231:17 233:4 | | **altered**(1) 17:24 | | | | | |
| **allocation**(248) 16:3 16:17 16:18 16:23 18:15 20:1 20:3 20:6 20:22 20:25 21:24 22:8 22:16 22:19 22:22 23:16 23:19 23:24 24:1 24:7 24:21 24:24 25:5 25:10 25:11 25:12 25:17 26:11 28:1 28:14 29:3 29:8 30:15 30:18 30:19 31:11 31:12 32:17 32:19 34:15 35:2 35:3 35:8 35:22 36:2 36:9 37:16 37:25 38:3 38:5 38:8 38:9 38:17 38:23 39:22 40:10 40:20 44:12 44:24 46:18 47:8 47:21 50:24 55:4 56:1 57:5 57:8 58:15 59:2 60:1 60:10 61:3 61:8 63:2 65:5 65:12 69:16 70:21 71:5 71:7 73:17 73:22 73:25 76:1 80:12 85:14 86:13 86:14 86:15 88:5 88:22 89:14 89:23 89:25 90:4 90:9 92:6 92:14 92:21 95:2 96:3 96:8 96:13 96:15 96:18 96:25 97:14 97:16 97:17 98:13 98:14 98:15 98:23 99:13 102:21 103:7 103:14 103:17 104:20 105:16 108:14 110:4 110:15 118:20 119:4 120:21 121:4 122:14 124:19 125:4 126:1 126:13 126:18 126:20 127:7 135:5 135:9 135:11 136:9 136:25 141:7 141:21 142:3 142:13 142:20 143:20 146:1 147:10 148:12 150:7 151:5 151:20 151:24 151:25 152:24 153:14 154:13 155:2 155:11 155:17 155:18 156:19 157:6 157:9 157:12 157:17 157:20 158:10 158:12 159:10 159:10 159:11 161:6 161:9 161:12 164:9 164:16 164:19 166:3 166:4 167:24 169:14 169:17 169:21 170:6 170:7 171:22 172:7 176:2 179:17 182:9 182:12 183:3 183:10 183:14 183:21 184:7 185:1 185:8 185:20 186:24 187:1 187:11 187:23 188:9 188:19 189:8 190:17 191:19 191:25 193:1 198:11 200:5 200:13 201:16 201:23 205:10 208:22 208:25 210:8 210:11 210:17 218:20 222:14 222:20 223:19 224:8 224:8 226:20 227:5 227:7 227:19 227:19 227:21 229:2 229:12 230:19 231:19 231:20 232:18 234:3 235:2 236:17 236:21 237:8 237:10 237:17 240:20 | | **alternate**(2) 178:17 201:22 | | | | | |
| | | **alternative**(4) 9:24 102:13 169:6 224:4 | | | | | |
| | | **alternatives**(2) 119:18 121:10 | | | | | |
| | | **although**(3) 160:10 169:25 178:14 | | | | | |
| | | **always**(7) 13:17 133:16 133:18 151:23 161:7 178:16 218:5 | | | | | |
| | | **amazing**(1) 90:5 | | | | | |
| | | **ambiguity**(4) 27:8 109:24 208:16 211:12 | | | | | |
| | | **ambiguous**(4) 27:5 42:14 50:1 82:19 | | | | | |
| | | **amended**(1) 66:17 | | | | | |
| | | **amendment**(1) 154:6 | | | | | |
| | | **america**(2) 4:18 10:16 | | | | | |
| | | **americas**(2) 3:21 3:40 | | | | | |
| | | **among**(8) 52:4 81:6 95:2 96:13 112:3 112:20 169:13 169:22 | | | | | |
| | | **amongst**(5) 59:4 96:3 112:14 158:13 | | | | | |
| | | **amount**(44) 22:10 28:16 29:4 29:6 30:3 30:12 30:14 34:17 34:17 46:8 46:11 49:5 54:10 57:1 58:14 81:7 86:14 95:10 97:14 99:5 99:11 99:24 105:20 112:21 141:20 146:1 150:2 164:21 164:22 170:19 171:22 183:14 188:9 189:8 190:1 190:23 191:3 191:25 192:3 223:19 228:9 233:5 233:7 233:9 | | | | | |
| | | **amounts**(2) 182:6 208:24 | | | | | |
| **allocation's**(1) 226:23 | | **ample**(1) 179:5 | | | | | |
| **allocation.**(1) 181:13 | | **amplify**(1) 127:19 | | | | | |
| **allocations**(7) 20:9 26:8 27:13 97:10 136:7 203:20 203:21 | | **analysis**(12) 24:23 41:2 44:22 102:6 105:5 124:18 125:3 170:3 170:22 178:19 184:25 224:18 | | | | | |
| | | **analyze**(1) 217:20 | | | | | |
| **allocation"**(1) 181:24 | | **analyzed**(1) 216:19 | | | | | |
| **allow**(17) 20:20 32:3 32:3 32:12 100:11 101:23 102:10 105:1 145:25 147:8 171:21 191:18 219:22 226:19 229:11 235:25 237:21 | | **ancillary**(1) 179:18 | | | | | |
| **allowance**(9) 29:6 96:25 187:5 187:10 187:10 187:11 187:24 191:16 239:18 | | | | | | | |
| **allowed**(30) 18:14 19:25 28:16 29:1 29:4 31:13 34:4 45:21 46:7 55:23 66:18 81:10 101:21 105:12 107:24 120:15 150:7 150:21 154:2 156:21 156:22 189:4 190:9 218:18 234:6 234:6 234:17 235:18 236:16 237:6 | | | | | | | |
| **allowing**(2) 40:9 228:8 | | | | | | | |
| **allows**(1) 98:25 | | | | | | | |
| **alluded**(4) 153:24 155:1 158:11 161:8 | | | | | | | |
| **almost**(2) 188:23 233:9 | | | | | | | |
| **alone**(5) 53:1 91:23 169:7 221:8 236:6 | | | | | | | |
| **along**(2) 74:19 143:10 | | | | | | | |
| **already**(19) 30:11 30:15 30:21 31:15 36:17 37:21 37:23 47:18 154:15 155:1 157:5 161:22 174:6 175:16 194:25 203:5 228:4 229:3 229:16 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **and**(301) 112:6 112:7 112:15 112:23 113:2 113:8 113:9 113:18 113:19 113:19 114:3 114:8 114:25 115:9 115:11 116:5 116:12 116:13 116:14 116:19 116:22 116:24 117:1 117:8 117:16 117:17 117:24 118:7 118:8 118:10 118:10 118:11 118:16 118:19 118:22 118:23 119:2 119:4 119:7 119:7 119:17 119:18 119:19 119:21 119:23 119:24 120:5 120:6 120:8 120:11 120:14 120:15 120:19 120:23 121:3 121:4 121:6 121:11 121:12 121:15 121:20 122:11 122:19 122:24 122:25 123:2 123:9 123:10 123:16 123:23 124:1 124:1 124:9 124:9 124:11 124:11 124:13 124:16 124:17 124:23 125:1 125:3 125:3 125:8 125:11 125:15 125:17 125:20 125:22 125:23 126:2 126:5 126:6 126:10 126:11 126:15 126:19 126:21 126:22 127:1 127:2 127:3 127:4 127:5 127:7 127:9 127:11 127:17 127:18 127:19 127:21 127:24 127:24 127:25 128:2 128:3 128:3 128:7 128:13 128:16 128:23 128:23 128:23 129:1 129:3 129:5 129:13 129:13 129:16 129:18 129:21 129:25 130:17 130:18 130:19 131:6 131:6 131:9 131:10 131:12 131:12 131:18 131:19 131:22 131:23 132:1 132:3 132:10 132:13 132:13 132:19 133:1 133:9 133:10 133:13 133:23 134:8 134:11 134:17 134:19 134:25 135:2 135:7 135:15 135:21 135:22 136:5 136:14 136:18 136:19 136:22 137:8 137:9 137:13 137:14 137:15 137:17 137:18 137:20 137:22 137:23 137:24 138:5 138:23 139:2 139:7 139:10 139:13 139:16 140:1 140:3 140:5 140:6 140:10 140:16 140:18 140:20 140:24 141:2 141:7 141:23 141:25 142:1 142:7 142:12 142:12 142:15 142:19 142:23 142:25 143:8 143:9 143:10 143:17 143:19 143:19 143:20 143:22 144:5 144:6 144:8 144:14 144:22 145:6 145:7 145:9 145:16 145:18 145:20 145:20 145:24 145:25 146:2 146:4 146:8 147:8 147:9 147:10 147:16 147:19 147:21 147:22 147:22 148:2 148:4 148:9 148:12 148:14 148:14 148:18 148:21 148:23 148:25 149:4 149:7 149:11 149:25 150:1 150:5 150:7 150:10 150:16 150:20 150:22 150:24 151:2 151:3 151:10 151:19 151:21 151:23 151:24 152:1 152:7 152:10 152:19 152:23 152:24 153:2 153:10 153:12 153:17 153:19 154:3 154:6 154:7 154:10 154:16 154:19 154:23 155:1 155:4 155:5 155:6 155:6 155:7 155:8 155:11 155:13 155:16 155:21 | | **and**(301) 155:22 156:2 156:4 156:6 156:11 156:13 156:13 156:13 156:14 156:17 156:23 156:23 156:23 157:2 157:10 157:24 157:25 158:2 158:3 158:3 158:7 158:8 158:13 158:16 158:18 158:19 158:25 159:3 159:3 159:6 159:21 159:25 160:3 160:3 160:8 160:10 160:18 160:20 160:24 160:25 161:1 161:4 161:4 161:6 161:7 161:14 161:18 161:20 161:20 162:3 162:13 162:14 162:14 162:15 162:23 163:4 163:5 163:5 163:10 163:13 163:13 163:14 163:22 164:2 164:11 164:12 164:14 164:21 164:25 164:25 165:3 165:10 165:14 165:14 165:16 165:18 165:18 165:21 166:3 166:4 166:6 166:9 166:10 166:12 166:25 167:1 167:2 167:8 167:14 167:24 167:25 168:3 168:20 168:23 169:9 169:14 169:18 170:3 170:11 170:14 170:15 170:16 170:17 170:22 171:3 171:4 171:7 171:8 171:11 171:14 171:16 171:19 171:20 171:21 171:24 171:25 172:1 172:2 172:3 172:8 172:11 172:12 172:15 172:23 172:25 173:3 173:4 173:11 173:15 173:15 173:16 173:23 174:3 174:11 174:14 174:21 175:2 175:6 175:7 175:10 176:1 176:3 176:8 176:9 176:11 176:13 176:15 176:16 176:19 176:19 176:22 177:6 177:8 177:14 177:14 177:17 177:24 177:25 177:8 177:8 178:9 178:10 178:12 178:18 178:18 178:22 179:2 179:3 179:4 179:9 179:20 179:13 179:15 179:17 179:18 179:20 179:21 179:24 180:2 180:3 180:3 180:5 180:5 180:16 180:24 180:20 180:20 180:22 181:1 181:5 181:6 181:11 181:12 181:20 181:21 181:22 181:23 181:24 182:1 182:4 182:7 182:11 182:12 182:15 182:18 182:22 182:22 182:24 183:1 183:2 183:8 183:10 183:12 183:16 183:18 184:3 185:6 185:9 185:14 184:22 184:25 185:5 185:9 185:10 185:20 185:21 185:22 186:1 186:7 186:10 186:14 186:24 187:1 187:5 187:6 187:7 187:10 187:12 187:14 187:15 187:17 187:20 187:21 188:2 188:6 188:11 188:12 188:15 188:21 188:22 189:1 189:2 189:2 189:3 189:12 189:25 190:2 190:2 190:7 190:8 190:16 190:18 191:8 191:11 191:16 191:17 191:19 191:19 191:20 191:23 192:7 192:10 192:12 192:14 193:1 193:2 193:5 193:6 194:19 194:20 194:22 194:23 194:24 195:2 195:3 195:8 195:9 195:10 195:11 195:11 195:15 195:16 195:17 195:17 195:19 195:23 196:1 196:3 196:6 196:10 196:11 | | **and**(290) 196:14 196:18 196:24 196:25 197:4 197:14 197:14 197:16 197:17 197:22 197:24 198:5 198:7 198:8 198:11 198:11 198:21 198:24 199:2 199:4 199:12 199:17 199:21 199:22 199:22 199:22 200:5 200:6 200:9 200:15 200:16 200:20 201:1 201:9 201:14 201:21 202:7 202:9 202:14 202:16 202:24 203:1 203:3 203:8 203:11 203:12 203:13 203:17 203:19 203:24 204:2 204:24 204:24 205:1 205:2 205:5 205:6 205:6 205:7 205:13 205:14 206:5 206:14 206:16 206:16 207:17 207:19 207:22 208:10 208:15 208:21 209:3 209:4 209:20 209:23 209:24 210:1 210:1 210:3 210:9 210:14 210:15 210:16 211:10 211:10 211:11 211:16 211:21 211:23 212:15 212:5 212:7 212:9 212:9 212:12 212:16 212:17 212:19 212:20 212:22 212:25 213:3 213:6 213:7 213:8 213:8 213:9 214:1 214:22 215:1 215:2 215:3 215:4 215:5 215:16 215:24 216:8 216:13 216:15 216:16 216:19 216:22 217:1 217:2 217:3 217:5 217:5 217:6 217:7 217:10 217:13 217:22 217:25 218:2 218:3 218:12 218:19 218:24 219:2 219:4 219:16 219:17 219:19 219:19 220:1 220:4 220:11 220:14 220:19 220:25 221:3 221:7 221:20 221:21 221:23 221:24 221:24 221:25 222:3 222:8 222:10 222:10 222:13 222:15 222:23 223:1 223:2 223:3 223:6 223:16 223:17 224:9 224:10 224:14 224:16 224:18 225:1 225:2 225:5 225:6 225:7 225:9 225:13 225:19 225:24 225:25 226:1 226:8 226:11 226:12 226:15 226:16 226:16 226:16 226:17 226:24 226:24 226:25 227:4 227:7 227:7 227:8 227:10 227:14 227:19 228:1 228:7 228:10 228:13 228:14 228:16 228:23 229:1 229:13 229:22 229:25 230:7 230:8 230:18 230:23 230:25 231:2 231:5 231:8 231:9 231:10 231:16 231:18 231:21 231:22 231:23 232:2 232:6 232:8 232:11 232:12 232:13 232:15 232:17 232:18 233:3 233:6 233:8 233:9 233:12 233:13 233:18 233:19 233:20 234:3 234:10 234:16 234:18 234:19 234:24 234:24 235:4 235:10 235:13 235:17 235:18 235:20 235:22 235:24 236:2 236:12 236:13 236:18 236:21 237:9 237:10 237:16 238:5 238:12 238:13 239:7 239:10 240:15 240:16 240:21 240:25 241:4 241:13 241:15 241:16 241:16 241:21 242:4 | |
| | | | | **andrew**(7) 1:27 3:49 8:10 8:22 11:29 45:6 210:22 | |
| | | | | **angela**(1) 7:35 | |
| | | | | **anniversary**(1) 49:14 | |
| | | | | **announced**(1) 35:7 | |
| | | | | **annuities**(1) 191:8 | |
| | | | | **another**(23) 27:21 42:15 48:10 49:6 56:5 59:20 64:13 64:21 75:16 93:18 93:20 102:7 152:21 165:1 171:19 178:11 182:23 190:15 203:17 215:17 233:10 238:17 240:13 | |
| | | | | **answer**(13) 14:19 18:24 48:20 50:19 54:17 76:25 77:3 87:5 105:10 106:12 137:8 226:6 228:2 | |
| | | | | **answered**(1) 119:25 | |
| | | | | **answers**(1) 86:18 | |
| | | | | **anticipate**(1) 31:7 | |
| | | | | | **any**(120) 14:20 16:10 19:20 19:21 21:8 24:19 30:6 32:2 34:7 36:3 38:3 38:4 39:19 40:5 46:16 47:8 48:6 48:14 49:17 51:3 53:18 57:3 58:20 61:1 61:2 62:6 62:13 65:15 66:21 66:22 74:2 80:4 88:7 88:22 89:15 89:20 89:21 89:22 89:25 90:9 90:18 104:8 104:16 108:19 109:20 111:14 114:21 117:18 121:24 123:18 123:18 123:25 135:19 136:6 136:17 136:23 136:24 137:15 139:1 139:3 139:4 140:20 141:14 145:10 147:18 148:10 150:6 150:22 151:4 153:2 153:4 155:22 155:24 158:14 162:15 166:9 166:10 167:11 170:19 173:25 175:1 178:21 183:9 183:16 184:4 184:5 184:17 184:18 184:19 185:12 187:13 190:8 190:13 190:22 191:10 191:21 192:16 192:19 193:2 193:9 193:9 198:4 200:21 203:23 204:8 212:20 218:13 220:4 221:9 221:12 221:22 222:1 222:17 223:25 226:2 228:22 228:22 229:17 230:20 239:3 239:19 |
| | | | | | | **anybody**(11) 17:12 17:16 20:24 112:25 131:3 195:17 202:1 231:4 232:2 235:2 235:3 |
| | | | | | | **anyone**(4) 150:15 161:24 218:16 218:16 |
| | | | | | | **anything**(19) 38:19 40:2 59:18 64:14 65:19 90:2 110:19 117:11 117:12 117:18 121:13 127:13 185:3 216:3 222:18 227:5 238:7 241:3 241:25 |
| | | | | | | **anyway**(3) 37:23 75:20 200:16 |
| | | | | | | **anywhere**(7) 38:1 69:22 104:6 162:7 162:9 184:19 185:2 |
| | | | | | | **apart**(2) 183:16 217:23 |
| | | | | | | **apiece**(1) 206:18 |
| | | | | | | **apologies**(1) 201:8 |
| | | | | | | **apologize**(8) 77:3 113:10 113:13 160:22 162:18 163:17 214:11 239:25 |
| | | | | | | **apparent**(2) 170:10 212:12 |
| | | | | | | **apparently**(1) 13:3 |
| | | | | | | **appeal**(35) 42:16 43:8 44:4 61:16 79:25 80:1 80:1 80:4 86:23 102:13 104:6 116:20 130:19 131:11 131:15 133:1 140:21 140:21 140:23 140:24 168:21 172:3 174:14 174:17 192:24 205:13 205:14 212:18 212:25 219:9 219:15 220:2 220:14 220:23 239:13 |
| | | | | | | **appeals**(6) 16:11 203:12 207:19 220:16 238:13 238:24 |
| | | | | | | **appear**(4) 57:22 130:8 133:12 140:21 |
| | | | | | | **appearances**(6) 6:1 7:1 8:1 9:1 10:1 11:1 |
| | | | | | | **appeared**(1) 123:25 |
| | | | | | | **appears**(4) 17:22 56:6 136:16 210:1 |
| | | | | | | **appellants**(1) 131:22 |
| | | | | | | **appellate**(7) 16:9 93:12 116:22 172:4 172:18 174:19 219:16 |
| | | | | | | **appended**(1) 83:7 |
| | | | | | | **appendix**(4) 22:25 109:1 109:8 219:13 |
| | | | | | | **apple**(1) 197:3 |
| | | | | | | **applicable**(2) 17:19 67:22 |
| | | | | | | **application**(2) 55:5 139:14 |
| | | | | | | **applications**(1) 139:15 |
| | | | | | | **applied**(4) 42:21 79:22 141:15 185:20 |
| | | | | | | **applies**(6) 52:9 72:20 142:7 142:8 142:9 144:2 |
| | | | | | | **apply**(12) 67:23 76:13 119:24 132:13 141:12 143:17 144:4 144:4 150:25 151:1 231:24 232:11 240:16 |
| | | | | | | **applying**(1) 25:10 |
| | | | | | | **appoint**(1) 138:3 |
| | | | | | | **appointed**(4) 134:12 134:21 136:20 204:16 |
| | | | | | | **appointment**(4) 138:23 187:4 203:8 203:10 |
| | | | | | | **apposite**(1) 101:22 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**appreciate**(2) 14:7 194:19

**appreciation**(1) 192:13

**approach**(26) 18:20 20:19 26:11 36:2 44:12 57:21 60:11 60:19 76:13 85:16 102:9 104:3 148:12 175:20 176:3 178:14 178:20 200:3 200:12 205:4 209:16 213:19 214:6 214:7 216:23 230:9

**appropriate**(37) 18:1 38:8 38:9 44:19 55:13 60:6 62:8 72:8 77:7 92:3 114:8 124:12 133:1 139:3 139:4 139:13 145:23 146:2 147:11 147:19 148:1 148:14 150:18 170:18 172:14 172:16 174:23 191:22 193:10 200:13 211:9 212:2 217:8 217:11 222:11 227:20 239:1

**appropriately**(1) 125:13

**approval**(1) 21:15

**approve**(1) 140:3

**approved**(3) 165:22 181:12 181:22

**approximately**(3) 46:8 57:22 69:3

**apropos**(2) 131:10 131:13

**aptly**(1) 126:20

**arbitrary**(1) 56:7

**archives**(1) 118:23

**are**(301) 14:10 14:11 14:13 15:23 16:3 16:4 16:11 16:16 16:22 17:19 18:7 19:2 19:9 25:14 26:13 26:14 27:25 30:18 31:2 31:3 31:23 31:23 33:5 33:14 34:11 34:12 34:14 35:15 37:3 37:4 37:6 37:18 37:20 38:16 38:16 38:17 39:13 39:18 44:7 50:1 50:23 51:6 51:10 51:16 51:17 52:3 53:3 53:4 54:3 54:15 54:16 54:22 55:3 57:4 57:19 57:20 58:10 58:20 58:22 58:23 60:1 60:11 60:18 64:8 64:17 64:18 65:16 66:5 66:7 66:10 66:12 67:23 69:7 69:14 69:19 69:25 70:8 70:13 70:23 71:2 71:14 71:21 72:13 73:3 76:7 76:19 76:20 77:6 78:15 79:6 79:16 79:20 80:22 82:13 82:16 82:17 83:16 85:18 86:24 86:24 86:25 87:3 87:18 87:22 87:24 88:16 91:22 93:2 93:5 94:22 95:10 96:4 96:7 96:7 96:22 97:8 97:8 97:12 97:25 98:1 98:2 98:3 98:14 99:22 100:1 101:22 103:23 105:3 107:24 108:10 110:5 111:3 111:11 111:14 113:7 113:9 115:9 117:3 120:18 120:22 120:23 122:11 124:6 124:10 124:24 125:7 126:11 126:11 127:20 127:22 130:7 131:6 131:13 132:12 134:6 134:7 134:10 134:11 134:13 134:15 134:16 134:22 135:14 136:13 136:21 137:10 137:11 137:24 138:1 139:18 139:21 141:10 141:14 141:15 142:21 142:22 143:15 143:16 144:21 145:12 145:17 145:22 145:25 146:3 146:15 147:7 147:12 147:13 147:14 147:15 147:19 148:20 148:22 149:5 150:16 152:9 152:10 152:15 153:2 153:12 154:1 154:1 154:9 154:21 155:10 155:11 155:21 156:2 156:10 156:15 159:6 160:15 161:23 161:25 162:3 162:4 162:16 163:13 163:15 163:15 163:17 164:17 165:4 166:8 166:12 167:2 168:15 173:8 173:17 173:23 175:9 178:11 179:1 179:8 179:19 179:21 179:25 180:22 180:23 181:17 182:10 182:18 183:10 184:11 186:21 189:12 190:3 191:23 192:1 192:17 192:19 192:19 192:21 194:25 195:12 196:7 196:12 197:4 197:8 197:8 197:12 198:22 201:9 203:20 204:3 204:19 205:8 205:13 207:21 208:2 208:6 208:24 209:1 209:2 209:15 209:24 210:4 211:23 211:24 217:2 219:22 221:5 221:16 221:21 223:10 224:12 224:15 224:17 225:19 226:9 227:1 227:11 227:13 228:21 229:24 231:13 232:24 233:1 233:2 233:6 235:11

**are**(8) 236:4 239:21 240:10 240:11 240:12 240:13 240:18 240:24

**area**(1) 150:15

**areas**(4) 52:9 149:5 199:3 199:4

**aren't**(3) 107:14 108:9 240:17

**aren't**(1) 182:5

**argue**(9) 18:15 25:11 27:15 71:13 85:15 103:21 131:3 174:8 237:22

**argued**(14) 17:14 18:16 20:6 111:23 118:19 121:11 124:18 144:11 158:1 211:16 215:5 215:8 219:21 229:11

**arguing**(4) 20:24 114:14 215:2 232:25

**argument**(65) 13:18 14:11 14:15 17:16 18:10 18:19 19:23 20:9 21:4 21:11 23:24 24:19 74:14 74:24 75:2 75:16 75:17 87:13 103:22 103:24 106:24 116:10 112:14 113:4 124:22 125:2 144:15 156:15 183:9 183:20 184:3 184:4 184:6 184:16 184:18 184:19 184:20 185:7 185:12 186:6 186:9 187:18 189:10 189:11 195:3 195:4 195:11 195:16 196:6 196:9 198:2 206:6 218:24 219:2 219:11 222:22 225:5 225:6 231:2 232:20 236:23 241:7 241:11 242:4

**argument-in-chief**(1) 218:22

**arguments**(50) 15:15 15:16 15:17 21:21 25:21 40:7 42:18 43:2 48:5 48:5 89:22 102:1 102:11 104:5 104:6 112:4 112:5 114:21 114:21 117:21 117:24 118:13 118:14 118:15 119:14 121:1 122:13 122:16 123:1 124:4 124:7 124:11 127:18 132:19 141:9 143:9 145:19 147:6 171:17 175:9 188:21 192:18 205:2 205:8 206:4 211:1 216:11 219:6 233:10 241:16

**arise**(1) 50:17

**arisen**(2) 136:19 181:24

**arises**(1) 181:10

**arising**(1) 38:23

**arose**(1) 192:15

**around**(9) 73:7 77:13 118:25 119:2 160:6 171:14 171:18 176:8 224:14

**arps**(5) 5:14 6:23 136:21 202:7 202:14

**arrangement**(1) 139:24

**arrive**(1) 231:22

**arsht**(1) 1:25

**arthur**(1) 7:40

**articulated**(3) 17:20 100:9 141:19

**ascertainable**(1) 40:2

**ascribe**(1) 188:20

**aside**(6) 131:12 134:20 137:1 233:12 233:16 233:16

**ask**(25) 12:17 13:6 16:5 23:8 27:21 39:8 39:10 40:18 46:12 49:2 49:7 49:10 57:14 57:18 67:11 85:8 86:9 96:1 98:7 112:25 113:20 139:9 174:7 214:3

**asked**(19) 20:12 20:15 34:16 36:5 56:15 70:15 92:16 112:9 119:23 130:14 130:16 146:15 149:11 176:6 178:11 210:24 220:11 222:15 222:23

**asking**(31) 21:3 31:13 34:24 36:16 36:25 37:3 37:14 38:9 38:24 67:12 67:24 103:19 106:12 107:4 107:18 141:12 141:16 143:24 144:1 145:8 147:22 149:24 150:8 162:11 168:4 168:20 175:9 175:10 200:8 226:9 227:8

**aspect**(3) 38:10 46:17 179:22

**aspects**(5) 14:23 16:6 16:7 16:11 189:13

**assert**(7) 32:18 33:4 57:1 142:17 190:7 190:14 200:1

**asserted**(11) 19:24 34:18 56:22 58:9 79:17 87:22 125:11 142:23 142:24 221:17 222:25

**assertion**(1) 222:17

**assessment**(1) 195:22

**asset**(10) 8:9 8:33 9:25 10:24 10:36 88:2 88:7 109:10 109:18 143:11

**assets**(37) 21:25 54:9 60:1 87:10 87:20 87:24 95:2 109:4 109:5 109:12 109:12 109:12 120:9 120:13 137:17 144:13 155:25 170:15 178:16 185:16 204:24 225:12 225:13 225:14 225:22 228:21 231:12 231:13 231:21 231:21 231:24 232:4 232:8 233:23 233:25 234:1 234:12

**assigned**(4) 165:24 166:1 166:4 166:6

**associated**(3) 39:5 39:22 225:22

**assume**(7) 53:3 63:18 74:15 119:23 131:17 148:15 211:19

**assumed**(3) 81:13 93:24 211:25

**assumes**(2) 132:10 224:20

**assuming**(1) 116:20

**assumption**(1) 212:3

**assumptions**(3) 70:23 71:6 71:9

**assuring**(1) 58:13

**astonishment**(1) 45:14

**attached**(4) 109:18 161:12 213:21 224:18

**attack**(1) 147:23

**attacking**(1) 107:11

**attempt**(3) 115:24 177:24 205:2

**attempting**(1) 115:13

**attempts**(1) 142:14

**attend**(1) 205:3

**attention**(3) 49:24 82:20 83:14

**attributable**(1) 230:10

**audio**(2) 19:5 47:23

**audit**(1) 132:23

**authorities**(2) 41:22 42:8

**authority**(10) 44:25 101:9 101:12 135:19 217:9 219:12 225:10 227:7 239:2 239:3

**avail**(1) 149:9

**availability**(2) 60:8 117:11 209:10

**available**(8) 14:19 35:13 53:18 55:17 123:2 124:9 164:21 174:1

**ave**(2) 3:34 5:27

**avenue**(4) 3:21 3:40 5:9 5:36

**avoid**(9) 15:15 44:10 64:12 101:10 132:6 176:11 196:8 197:11 220:24

**avoided**(1) 129:14

**award**(1) 180:17

**aware**(8) 56:13 60:18 194:25 201:25 203:23 204:10 210:9 218:23

**away**(11) 72:3 72:7 72:22 120:19 125:23 156:1 156:20 168:6 179:17 179:18 220:22

**awful**(1) 192:12

**b)(1)(a)(ii)(1)** 239:22

**b.r**(2) 17:22 18:2

**babbili**(1) 9:30

**back**(39) 12:10 15:17 21:13 22:17 44:1 55:24 68:16 79:2 85:21 93:16 93:18 97:3 100:12 112:22 114:7 114:13 118:22 118:23 124:12 137:19 138:10 140:6 142:17 145:25 147:9 149:15 151:24 167:16 179:7 179:7 182:24 194:8 196:23 206:1 207:1 207:8 220:22 224:25 236:21

**back-and**(1) 74:11

**background**(1) 202:21

**backwards**(1) 100:14

**bad**(3) 53:8 77:2 193:3

**baffour**(2) 9:9 9:10

**bait**(1) 238:5

**balance**(2) 55:10 78:22

**balances**(2) 54:16 55:10

**baltimore**(1) 5:10

**banc**(1) 157:2

**bandied**(1) 190:19

**bank**(6) 4:5 4:18 5:43 10:16 11:36 160:16

**bankruptcies**(1) 139:1

**bankruptcy**(9) 1:1 1:20 37:12 53:10 53:11 55:16 55:17 57:17 239:18

**bansal**(1) 9:34

**bar**(2) 38:14 89:20

**barbarosh**(1) 7:30

**barclays**(1) 10:44

**barrack**(26) 166:25 167:10 167:18 174:25 175:3 176:22 177:3 177:6 177:9 177:11 177:14 177:20 177:23 178:3 178:6 179:24 180:2 180:8 180:10 180:13 180:15 181:17 181:20 183:7 192:12 218:6

**barrett**(1) 163:16

**barring**(1) 188:2

**base**(12) 55:1 55:11 58:14 61:8 147:9 181:9 181:9 183:3 186:24 190:5 190:17 192:2

**based**(38) 23:19 25:18 26:17 28:10 58:3 58:7 59:25 70:23 82:2 82:7 82:8 83:19 86:25 87:23 92:4 97:14 100:1 103:24 140:22 141:10 145:10 151:9 151:12 162:12 169:4 171:4 171:5 184:25 189:23 190:15 191:7 192:17 200:10 229:2 230:4 232:19 233:5 233:20

**baselon**(1) 90:24

**bases**(7) 54:15 55:5 55:9 134:6 146:4 146:5 152:11

**bashful**(1) 13:21

**basic**(1) 70:6

**basically**(1) 58:22

**basis**(64) 26:7 28:10 28:13 42:19 64:6 79:2 80:3 81:5 88:5 103:22 109:4 122:18 124:12 138:6 138:18 150:21 153:18 153:19 154:11 155:2 156:6 160:8 160:16 161:3 161:5 161:8 161:14 161:15 161:16 161:19 163:14 163:25 164:10 165:15 166:5 166:10 172:8 173:4 175:12 175:3 176:7 176:12 179:4 180:22 182:20 182:20 192:16 196:5 200:7 200:21 201:1 209:18 210:16 210:17 217:15 219:11 222:19 224:10 225:9 225:18 229:1 234:8 234:9 237:1

**bat**(1) 45:3

**baton**(1) 174:25

**bay**(2) 3:9 3:10

**bayard**(2) 5:25 9:20

**bazelon**(2) 81:22 178:10

**bear**(2) 54:4 156:22

**bearing**(2) 90:3 159:6

**beat**(1) 44:3

**became**(1) 170:10

**because**(141) 14:11 15:13 15:23 17:5 18:19 20:2 21:11 22:1 22:7 22:20 23:19 24:3 25:13 26:2 26:4 26:12 27:25 29:11 30:3 30:10 31:18 32:17 32:23 33:19 35:12 35:13 37:7 37:24 38:23 39:17 40:14 42:18 42:20 43:6 43:19 46:22 47:11 49:2 51:17 54:3 54:23 55:3 55:19 56:5 57:19 58:23 59:17 60:9 60:10 65:8 65:11 67:13 70:2 70:8 72:13 72:24 73:1 75:13 76:2 77:5 82:2 82:3 82:5 82:7 90:15 93:18 100:13 105:11 106:16 106:18 106:25 107:8 111:8 116:20 116:25 118:7 120:24 124:23 129:12 130:3 131:10 133:12 134:2 134:10 135:13 136:12 138:7 144:20 146:8 157:10 157:11 157:20 160:5 162:1 162:7 164:1 166:1 172:5 174:12 174:15 175:11 176:7 177:11 182:5 182:9 182:24 183:8 188:8 197:1 199:9 203:10 205:9 208:23 215:6 215:20 215:21 216:22 218:2 219:21 220:10 220:16 220:16 224:7 225:17 226:22 227:23 228:19 229:16 229:23 230:6 230:21 231:1 232:2 234:12 234:12 234:20 235:23 237:1 237:22 241:11

| Word | Page:Line |
|---|---|

**become(3)** 15:11 112:5 156:11
**becomes(1)** 226:22
**bedded(1)** 119:10
**been(107)** 14:12 14:18 15:25 21:21 23:24 24:20 28:2 30:25 33:25 36:19 47:18 48:14 55:14 55:16 55:23 60:14 62:25 69:10 70:8 71:25 86:10 86:11 89:16 91:8 93:25 94:1 94:2 99:11 99:12 100:15 102:12 111:22 116:21 117:22 117:23 117:25 129:18 131:23 131:24 132:3 132:18 132:21 132:22 133:16 134:12 134:18 134:21 135:3 136:8 136:11 136:19 139:15 141:5 142:15 143:18 143:20 145:14 145:19 148:23 149:13 149:22 150:13 150:21 151:11 152:18 153:19 157:4 170:9 173:24 173:25 175:4 176:15 181:14 182:6 182:10 188:22 190:19 194:25 196:2 198:4 199:25 199:25 202:24 203:16 203:23 204:12 204:20 206:4 207:19 214:25 218:5 218:14 221:4 221:7 221:25 222:10 224:4 225:4 228:17 229:11 235:10 235:11 237:4 237:7 237:22 241:7 241:10
**before(52)** 1:19 17:7 21:9 43:2 50:24 51:6 63:1 65:7 67:12 75:24 80:14 89:16 93:25 94:23 95:2 111:19 113:18 113:18 114:22 119:4 133:12 135:1 135:8 137:16 152:8 154:22 158:1 161:24 163:11 170:10 170:21 171:3 171:9 171:17 171:19 172:1 176:16 181:14 181:25 182:24 184:6 190:20 193:7 196:21 207:14 209:14 218:24 222:13 224:13 227:16 227:21 229:25
**beg(4)** 13:1 87:3 87:3 133:5
**began(2)** 170:11 210:24
**begin(3)** 115:14 115:16 125:3
**beginning(8)** 30:4 30:8 61:15 94:1 109:1 113:3 200:4 217:5
**begins(2)** 103:6 103:8
**behalf(17)** 15:7 66:10 76:22 78:2 91:21 115:6 115:8 115:10 115:22 116:11 118:16 133:12 156:3 166:23 194:17 200:9 201:22
**being(35)** 14:4 54:24 89:15 94:15 94:21 104:7 105:19 114:22 118:1 124:10 125:11 134:9 142:19 143:8 145:13 156:10 157:21 162:9 162:24 166:6 170:12 171:13 171:18 176:6 176:6 189:4 198:25 207:17 215:3 215:3 229:20 229:20 232:22 234:7 237:6
**belabor(1)** 173:10
**belabored(1)** 61:15
**belief(2)** 209:25 210:2
**believe(34)** 40:17 44:16 57:6 59:19 60:25 69:14 70:16 70:19 71:7 76:12 78:17 78:24 82:21 113:9 127:7 159:4 161:6 172:14 172:22 182:8 191:10 201:18 204:18 204:22 205:12 208:15 208:16 209:16 209:25 210:12 210:15 211:7 215:4 240:24
**believed(2)** 82:3 137:21
**believes(2)** 53:16 92:10
**belittle(1)** 108:18
**belknap(2)** 3:38 62:21
**belong(3)** 21:20 155:24 184:7
**belonged(1)** 88:12
**belongs(1)** 94:17
**below(2)** 150:17 203:21
**bench(4)** 114:13 197:21 198:6 207:8
**benefit(8)** 53:12 75:13 97:20 98:6 98:25 99:8 105:2 107:25
**benefits(2)** 99:2 237:15
**bennett(2)** 8:21 42:1
**best(3)** 27:2 205:13 206:22
**bet(1)** 76:24

**better(13)** 12:21 27:9 30:6 54:23 68:20 68:23 70:8 70:9 101:24 194:14 203:16 213:2 220:7
**between(26)** 15:9 31:25 32:2 32:5 35:20 73:12 91:23 94:14 94:19 110:8 135:14 135:15 135:20 140:5 152:5 152:7 152:10 152:15 157:17 164:10 166:5 166:25 170:17 182:13 187:9 187:12
**beyond(1)** 113:25
**bidding(1)** 121:17
**big(7)** 23:4 35:19 127:24 129:20 170:16 209:7 232:14
**bigger(1)** 230:21
**billion(39)** 30:22 33:7 33:9 36:1 40:10 40:11 46:9 55:14 55:15 55:19 55:21 55:25 60:16 70:20 70:24 70:25 76:5 81:10 90:23 105:3 106:11 107:5 107:25 120:15 125:9 125:10 127:6 152:11 168:22 170:16 171:6 175:16 179:1 189:3 189:5 189:25 229:24 233:18 240:13
**billion-plus-dollar(1)** 20:21
**billions(1)** 34:20
**bilmes(1)** 9:38
**bilzin(1)** 10:25
**binding(1)** 240:6
**birch(1)** 9:9
**bit(15)** 12:18 31:20 69:14 71:8 73:21 118:12 137:14 171:19 199:12 199:17 199:21 203:5 203:9 216:8 217:23
**bite(1)** 197:3
**black(2)** 56:1 152:22
**blackwell(1)** 11:44
**blame(1)** 79:12
**blanket(1)** 33:18
**blantz(1)** 242:18
**blind(1)** 222:17
**block(16)** 14:21 17:18 41:9 41:11 41:17 42:1 42:5 42:7 42:10 42:12 43:22 43:25 45:2 49:24 101:3 111:24
**bloom(2)** 7:6 134:11
**bloomberg(1)** 9:14
**board(3)** 191:15 231:13 240:22
**boeltke-berkew(1)** 3:19
**bogus(1)** 145:25
**bold-faced(1)** 238:21
**bond(24)** 46:1 56:16 56:19 60:21 61:7 70:21 71:4 71:7 79:13 82:18 86:20 102:20 103:4 107:8 120:8 121:11 122:8 122:9 172:10 179:13 179:18 189:6 221:16 237:19
**bond's(1)** 57:23
**bondholder(31)** 18:14 19:24 20:8 31:13 45:21 47:13 103:10 103:16 121:13 125:11 142:8 143:23 143:24 145:6 208:15 208:19 208:20 209:6 218:18 221:9 229:19 229:22 230:1 232:16 235:18 236:14 236:15 236:18 237:13 240:9 240:9
**bondholders(46)** 3:48 5:41 6:44 15:2 20:7 20:25 28:12 28:17 29:1 29:6 45:7 47:9 48:1 49:12 51:11 52:1 56:22 63:11 65:9 65:9 67:7 81:12 82:25 105:4 108:13 119:16 119:16 120:17 121:17 121:17 121:18 121:19 122:3 126:14 142:5 156:2 205:8 227:24 229:15 234:4 234:4 234:25 235:3 236:15 236:19 237:8
**bonds(18)** 20:20 28:14 46:8 56:25 74:5 92:15 103:8 142:6 167:16 170:19 171:8 171:11 171:22 171:24 194:18 211:6 211:24 218:10

**book(7)** 43:9 128:10 128:13 129:1 144:12 152:15 185:15
**books(3)** 144:14 152:19 165:19
**boost(1)** 152:24
**border(1)** 16:8
**borne(1)** 211:2
**borrowed(1)** 74:5
**boston(1)** 2:15
**both(49)** 14:3 19:25 26:20 28:5 28:12 29:15 32:16 44:8 44:15 44:17 44:21 47:1 54:17 61:16 63:2 69:23 73:1 88:4 96:24 98:20 98:22 102:22 109:14 116:13 116:15 116:22 120:7 120:19 125:12 141:23 142:5 145:5 163:8 167:23 175:13 176:2 183:13 185:18 186:13 192:13 194:20 199:9 208:23 213:22 217:15 232:17 232:18 236:1 241:4
**bother(1)** 227:12
**bothering(1)** 15:19
**botter(1)** 4:15
**bought(2)** 70:5 70:6
**bound(1)** 240:18
**box(3)** 2:8 56:1 152:22
**boy(2)** 223:12 223:14
**brant(1)** 9:42
**breadwinner(1)** 175:17
**break(13)** 77:8 77:18 77:21 111:19 111:20 112:6 112:8 112:19 192:7 193:22 193:25 206:3 206:24
**brendel(2)** 9:14 9:15
**brian(2)** 5:32 166:22
**brickley(1)** 10:5
**brief(37)** 14:16 14:21 14:25 15:14 18:9 27:3 27:5 74:15 74:16 74:25 75:6 76:17 81:4 81:18 85:14 101:8 101:12 117:20 122:12 124:14 125:14 127:1 127:16 178:2 183:17 184:18 184:19 193:21 201:12 218:15 224:17 224:25 226:17 226:18 226:19 230:5 236:23
**briefed(5)** 14:18 18:16 119:6 218:3 222:11
**briefing(1)** 198:21
**briefly(12)** 64:23 100:22 108:23 123:5 153:10 153:24 163:24 173:6 207:24 208:7 210:6 223:23
**briefs(11)** 19:20 21:22 43:3 80:18 82:1 131:4 184:5 184:5 218:7 218:7 221:21
**bright(1)** 38:19
**bring(5)** 75:1 78:21 123:23 148:24 150:9
**bringardner(1)** 10:9
**bringing(1)** 198:22
**british(1)** 220:10
**britven(26)** 40:14 41:2 57:19 80:23 92:6 92:10 118:10 119:11 119:20 120:5 120:17 121:24 124:16 170:3 170:3 170:22 171:2 171:9 196:10 198:10 198:19 225:1 235:14 235:14 236:8
**britven's(3)** 24:23 81:5 92:11
**britven's(10)** 120:12 121:1 121:9 121:10 122:15 123:3 124:18 124:19 125:2 132:25
**broad(4)** 128:6 128:17 128:20 129:7
**broader(3)** 103:1 103:3 240:8
**broadway(1)** 4:8
**brock(3)** 11:44 128:4 128:18
**broke(4)** 56:14 136:1 183:25
**broken(1)** 136:12
**brought(2)** 49:21 151:11
**brown(6)** 2:12 68:6 68:10 101:12 214:18 214:23
**bryant(1)** 4:17
**buchanan(1)** 3:1
**buckets(1)** 117:18

**build(2)** 100:11 100:12
**building(1)** 50:4
**bulk(1)** 137:23
**bullen(1)** 6:35
**bullet(1)** 175:5
**bunch(2)** 125:22 125:23
**bundle(2)** 96:15 109:12
**burden(2)** 99:15 200:21
**burdening(1)** 74:6
**business(3)** 87:12 99:9 232:2
**busy(1)** 216:13
**but(260)** 16:5 17:7 17:18 18:11 19:19 19:25 20:8 20:25 20:25 21:2 22:3 22:8 22:21 23:20 24:14 25:8 26:6 26:19 26:24 28:13 28:14 29:15 30:12 31:11 32:16 32:25 33:4 33:8 33:18 34:8 36:16 37:13 37:18 38:7 39:4 39:16 39:19 40:17 41:1 41:15 41:23 42:12 43:1 44:5 44:1 46:21 47:15 47:21 48:6 49:5 49:9 50:5 50:17 50:22 52:14 52:18 52:24 53:22 55:24 57:24 58:10 59:19 60:13 61:21 62:11 63:10 64:9 65:6 65:13 65:19 66:6 66:16 66:19 69:9 70:9 70:18 70:25 71:14 71:22 73:24 74:25 75:15 75:23 76:19 77:1 78:5 80:24 83:12 85:1 89:9 90:5 90:14 90:16 90:18 90:23 92:1 92:2 92:11 95:5 97:25 98:14 101:16 102:3 103:7 104:2 105:7 105:9 105:17 106:11 107:2 107:23 108:6 108:11 108:20 109:10 110:8 111:23 112:4 112:14 114:16 115:7 116:11 117:6 119:25 120:18 121:12 122:2 123:25 125:4 126:18 128:6 128:21 129:1 129:2 131:4 131:20 133:13 133:18 134:4 134:13 134:17 136:3 136:10 136:16 138:18 139:20 140:7 141:12 144:18 145:14 146:25 147:6 148:10 148:25 150:17 150:22 152:18 152:21 154:4 154:15 155:7 155:12 155:15 157:9 157:25 160:11 160:19 162:10 163:9 164:7 168:7 169:10 170:10 171:2 172:21 173:14 174:23 175:4 176:17 179:6 181:5 182:2 182:20 183:21 184:7 185:11 185:18 186:1 186:3 186:21 188:19 192:3 194:25 195:7 196:13 196:23 198:4 198:23 200:12 200:16 201:8 202:21 203:18 204:13 204:14 205:6 205:8 205:12 206:3 211:15 212:4 212:24 213:1 214:5 216:18 217:14 217:18 217:23 218:1 218:7 218:19 220:16 221:1 221:13 221:25 222:7 222:19 223:3 223:8 224:2 224:20 225:17 225:21 226:17 227:17 227:22 228:6 228:10 229:10 229:18 230:8 230:9 230:24 231:7 231:12 232:18 232:22 233:2 233:14 234:13 235:1 235:3 235:23 236:1 236:14 236:14 237:13 240:8 240:23
**buy(3)** 70:4 75:17 191:8
**buyers(1)** 69:8
**calculate(1)** 191:7
**calculated(1)** 141:25
**calculating(2)** 181:13 181:23 187:22
**calculation(6)** 42:13 43:1 99:23 151:9 191:1 191:10
**calculations(4)** 81:6 107:15 151:13 224:25
**calculator(2)** 83:4 83:6
**calendino(2)** 43:14 43:23
**calgary(1)** 129:16
**call(10)** 91:3 115:14 116:5 137:13 187:12 215:14 226:13 227:2 227:2 227:3
**called(8)** 26:23 51:16 57:7 91:2 91:3 91:5 92:14 226:15
**calling(1)** 177:11
**calls(2)** 146:3 210:10
**came(12)** 44:1 65:13 118:22 120:7 147:1 164:24 199:23 200:2 200:21 220:22 225:3 241:20
**cameron(1)** 69:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **can**(133) 12:17 13:5 13:10 13:22 15:21 17:11 19:6 19:8 22:9 22:19 25:8 25:13 27:21 31:17 33:9 33:12 33:13 33:15 33:17 36:5 37:8 37:16 38:7 39:8 39:10 43:1 44:14 45:12 45:25 46:12 46:15 48:2 48:5 54:14 56:7 56:22 58:8 64:22 64:23 68:16 68:17 69:9 71:8 71:12 71:19 72:11 73:8 73:13 73:19 73:20 74:5 75:25 78:11 78:21 79:16 80:9 82:16 83:11 86:4 86:7 91:24 93:10 93:20 94:7 96:1 97:9 98:7 98:10 98:11 101:1 105:21 112:20 115:14 116:1 116:2 116:5 119:21 119:25 129:14 141:1 141:3 141:23 141:24 142:21 144:25 145:3 146:18 146:21 150:20 155:12 159:13 159:18 160:19 162:5 162:6 163:10 163:23 168:13 174:19 177:7 178:10 178:21 183:23 184:1 188:7 192:16 193:5 196:21 198:15 201:8 204:14 207:11 207:18 212:23 212:25 214:21 218:10 220:7 220:9 222:25 223:1 223:20 223:21 226:6 227:13 227:18 228:24 229:21 232:17 233:12 234:19 235:22 236:24 | | **case**(112) 1:5 17:21 18:2 24:2 27:2 41:21 50:2 51:13 63:15 43:7 43:8 43:9 45:16 50:2 52:2 51:13 60:5 62:10 63:1 65:6 68:5 70:2 70:9 74:17 79:18 88:23 93:21 93:25 94:15 101:17 101:18 116:21 117:19 118:24 123:6 123:9 123:11 127:18 127:20 127:22 128:2 128:3 128:5 128:5 128:8 128:9 128:13 128:13 128:15 128:18 128:18 128:19 128:24 129:1 129:3 129:3 129:11 129:16 129:19 129:23 129:24 129:25 130:2 130:19 130:22 130:25 131:5 131:10 131:13 131:14 131:15 132:10 132:11 132:12 132:19 132:21 134:7 134:14 134:14 134:15 138:2 138:4 138:7 138:21 139:14 141:13 142:5 142:24 144:18 153:18 154:8 155:19 161:7 164:12 169:16 173:4 177:24 179:22 185:24 197:16 197:25 199:7 217:6 217:8 217:10 219:12 219:13 223:18 238:14 239:2 239:3 239:6 239:7 | | **challenging**(2) 16:3 16:4 **chance**(6) 15:7 112:12 112:16 114:23 239:4 241:19 **change**(22) 43:10 44:19 57:18 71:8 103:19 107:10 108:13 117:10 120:4 121:9 127:17 172:2 172:6 173:21 173:24 174:18 175:10 175:11 175:14 208:22 210:14 218:10 **changed**(2) 120:6 132:2 **changes**(3) 101:9 102:5 108:11 **changing**(1) 42:15 **chapman**(1) 2:25 **chapter**(2) 1:8 139:25 **characterized**(2) 145:13 193:6 **charge**(3) 120:21 177:19 177:21 **charged**(1) 177:23 **charlene**(1) 9:21 **charles**(1) 238:24 **chart**(2) 203:25 204:6 **charts**(1) 121:9 **check**(1) 133:22 **checking**(1) 63:9 **cheema**(5) 41:21 49:23 128:18 128:18 128:20 **cherry-pick**(2) 125:1 171:20 **chetan**(1) 9:34 **chips**(2) 26:12 117:15 **chiuchiolo**(1) 5:34 **choi**(1) 10:13 **choice**(3) 104:1 121:19 122:17 **choices**(1) 102:11 **chose**(2) 122:17 215:24 **chosen**(2) 55:4 237:7 **chrichlow**(10) 196:17 196:20 196:23 198:15 198:17 199:14 199:17 199:21 200:19 201:5 **chris**(1) 6:25 **christ**(1) 116:7 **christopher**(1) 4:23 **chung**(1) 10:17 **circuit**(9) 80:2 80:9 219:12 219:13 220:1 238:14 238:20 238:23 239:6 **circular**(1) 38:21 **circulated**(1) 213:22 **circumscribed**(1) 32:13 **circumstance**(2) 20:13 32:25 **circumstances**(9) 41:20 42:14 101:7 124:6 131:20 132:6 182:1 182:2 196:25 **circumvention**(4) 32:4 32:12 33:20 35:6 **citation**(2) 19:24 224:18 **citations**(3) 210:9 224:22 239:1 **cite**(5) 28:5 117:20 119:19 222:18 230:5 221:14 230:3 239:6 239:11 240:11 **cites**(1) 117:16 **citigroup**(1) 9:41 **citing**(1) 131:10 **citizens**(1) 5:43 **civilized**(1) 98:1 | | **claim**(259) 2:4 19:24 24:16 25:7 28:16 29:1 29:4 29:19 30:2 30:14 30:17 30:19 30:21 31:11 31:13 32:18 33:3 33:4 33:6 33:7 33:9 33:16 34:4 34:18 35:9 35:12 36:1 36:3 36:18 37:10 37:11 38:4 38:6 39:1 39:22 39:25 40:10 45:21 45:24 46:3 46:8 46:25 47:13 49:12 54:21 55:24 55:25 56:2 56:5 56:6 56:13 56:19 56:21 56:21 57:2 57:23 58:3 58:5 58:8 58:12 58:18 59:3 59:5 59:13 59:13 59:15 59:16 59:23 60:21 60:21 61:8 64:9 65:2 65:10 65:12 65:16 66:13 66:16 66:18 66:19 67:22 69:8 70:13 70:17 70:21 70:24 71:4 72:9 72:13 76:1 76:1 76:3 79:13 79:14 81:11 81:13 82:18 86:11 86:14 86:21 87:22 90:13 99:18 105:3 105:12 105:19 105:19 105:25 106:1 106:9 106:9 106:11 106:15 106:17 106:20 106:21 107:1 107:5 108:1 110:7 119:16 120:15 125:9 125:10 140:1 141:20 141:23 142:3 142:12 142:19 142:25 143:1 143:2 143:4 143:8 143:12 143:13 143:19 143:23 143:24 144:1 145:6 145:17 146:4 149:1 149:7 149:13 150:6 150:9 150:11 150:13 150:21 150:22 150:24 151:7 151:8 152:12 153:24 164:6 164:7 164:10 166:6 170:17 170:19 171:6 171:22 172:10 175:8 175:16 178:16 179:2 179:18 179:21 180:16 180:17 180:18 180:19 182:10 186:16 186:20 186:21 187:3 187:19 187:23 187:25 188:6 188:9 188:21 189:3 189:4 189:7 189:8 189:13 189:16 189:23 189:25 190:5 190:8 190:16 190:17 190:19 190:22 190:23 190:25 191:3 191:7 191:11 191:16 191:18 192:3 196:4 205:7 208:15 208:20 209:6 211:4 211:19 212:4 212:8 214:4 214:19 215:21 218:18 221:8 225:4 225:5 225:11 225:15 225:16 225:21 226:3 228:9 228:19 228:20 228:21 228:25 229:9 229:11 232:16 233:17 234:6 234:6 234:17 236:15 236:17 237:5 237:9 237:12 237:13 237:13 237:14 237:19 239:17 240:13 240:15 240:19 240:19 241:1 241:21 | |
| **can't**(22) 17:16 23:14 27:11 30:5 33:18 39:1 44:5 59:17 68:18 74:8 74:8 79:20 91:13 99:4 100:4 101:17 214:20 216:3 219:25 219:25 237:1 241:8 | | **cases**(38) 21:14 41:21 42:2 52:10 53:19 54:20 59:1 78:23 79:7 79:16 94:2 101:15 101:20 127:19 130:4 130:7 131:6 131:7 132:8 132:15 134:22 141:17 142:7 145:5 148:5 150:18 173:15 174:5 185:22 186:17 186:18 186:20 188:22 195:25 197:17 212:24 217:5 217:5 | | | | **claimants**(5) 5:25 6:29 69:1 106:9 166:24 **claimed**(2) 24:11 83:21 85:13 124:18 **claiming**(1) 106:10 | |
| **canada**(57) 3:12 31:4 42:24 44:14 49:22 54:15 54:23 55:15 56:1 60:8 60:10 62:23 66:24 67:6 74:5 84:22 86:12 92:16 95:7 104:20 105:6 105:13 108:3 108:7 108:7 119:17 120:16 121:12 122:6 125:11 125:23 127:2 127:13 128:4 130:22 130:25 130:25 132:15 135:15 140:10 140:16 152:7 152:12 154:19 156:4 165:22 167:11 170:17 175:5 175:13 201:7 205:23 218:19 234:9 235:25 237:9 237:13 | | **cash**(50) 22:3 22:5 22:10 25:8 54:16 54:20 55:7 55:10 55:11 55:13 55:23 55:25 71:1 78:16 78:22 81:7 81:8 82:15 88:9 88:10 88:13 88:19 88:20 89:12 90:12 90:20 90:23 90:25 90:25 102:5 108:1 133:22 135:9 170:15 171:7 179:2 182:8 182:10 182:11 183:10 224:5 224:5 224:6 224:6 224:7 224:9 230:13 230:16 230:18 230:23 231:1 **cash-on-hand**(2) 156:13 175:19 **cassels**(1) 11:44 50:15 **cast**(1) 121:19 **catalog**(1) 42:2 **catch**(1) 221:6 **catholic**(2) 176:8 213:4 220:20 **cause**(3) 176:8 213:4 220:20 **caused**(1) 17:15 **caution**(1) 197:10 **ccc**(13) 23:25 31:24 60:22 113:14 113:22 115:22 118:8 118:19 118:24 122:4 126:2 176:3 218:5 **ccc's**(4) 20:12 20:25 90:19 113:12 **ccc's**(3) 132:24 195:6 195:8 **cede**(4) 12:16 14:24 40:6 49:17 **cell**(1) 12:4 **cent**(1) 60:2 **center**(3) 2:14 134:3 139:22 **centre**(2) 3:9 4:24 **cents**(23) 24:25 25:1 25:2 26:5 26:6 27:25 59:23 107:19 108:15 124:20 126:15 126:16 126:19 126:23 126:24 211:24 211:24 224:23 233:23 233:25 234:1 234:8 235:20 **certain**(11) 16:7 21:17 33:11 42:25 53:22 59:16 81:11 169:5 174:5 182:25 208:5 **certainly**(20) 14:7 38:13 40:1 48:9 58:5 65:12 95:5 103:15 135:18 172:1 172:13 173:25 186:19 187:18 192:24 203:16 214:9 219:21 224:10 225:2 **certainty**(2) 42:14 52:4 **certificate**(2) 151:10 151:11 **certification**(1) 242:11 **certify**(2) 191:3 242:12 **cetera**(2) 109:13 158:23 **chair**(1) 194:23 **challenge**(3) 14:5 136:23 136:24 **challenged**(1) 24:22 **challenges**(1) 139:2 | | | | | |
| **canada's**(1) 237:9 **canadian**(98) 5:4 12:3 14:23 15:8 15:21 16:18 16:25 17:18 22:24 22:25 24:18 25:1 26:10 27:14 28:13 28:14 29:2 29:5 29:5 30:17 30:18 30:20 31:10 31:23 32:1 33:15 33:15 34:22 35:4 37:13 39:12 40:1 41:22 42:7 44:20 50:18 53:11 54:16 67:8 67:9 78:2 81:14 95:3 95:19 100:23 100:25 102:16 102:18 102:23 104:9 106:4 110:15 110:22 111:24 117:9 126:2 126:15 126:22 127:17 127:23 136:22 140:19 149:10 149:11 154:17 158:1 158:3 162:3 164:5 165:5 169:1 175:1 181:12 181:23 185:11 185:17 185:20 186:25 195:2 201:8 201:16 205:17 209:13 221:3 221:14 228:7 228:19 231:14 232:18 233:17 234:1 234:21 235:15 236:12 236:13 237:16 237:17 240:14 **canadians**(3) 37:17 126:8 126:19 **candid**(1) 80:17 **candidly**(1) 79:11 **candlewood**(1) 11:40 **cannot**(9) 42:22 91:11 91:17 91:19 93:11 155:23 174:6 174:8 196:24 **can't**(10) 115:7 124:25 125:25 147:18 168:5 174:6 174:7 174:9 174:11 196:19 **capable**(1) 53:17 **capacity**(1) 84:1 **capital**(19) 8:17 8:37 8:41 9:4 9:9 9:37 10:32 10:40 11:8 11:12 11:20 11:24 11:32 94:16 94:16 95:11 95:18 95:18 238:21 **capitalized**(1) 136:4 **capitol**(1) 11:28 **care**(1) 214:2 **careful**(1) 182:16 **carefully**(3) 80:12 80:18 241:16 **carter**(1) 8:13 **carve**(1) 233:19 | | | | | | | |

| Word | Page:Line |
|---|---|

**claims**(301) 15:3 18:14 21:17 28:9 28:10 28:12 28:18 29:6 29:22 30:3 31:22 31:24 32:3 32:12 32:22 33:1 33:12 33:15 34:2 34:9 34:10 34:11 34:19 35:10 35:11 35:19 35:24 36:3 36:7 36:18 37:4 37:14 38:12 38:16 38:22 39:1 39:4 40:21 46:2 47:3 47:9 48:1 51:15 53:19 53:19 53:19 54:3 54:3 54:7 54:10 54:15 54:20 54:22 54:25 55:3 55:3 55:5 55:9 55:11 56:14 57:8 57:13 58:14 58:20 58:21 58:23 58:25 59:5 59:22 60:11 60:13 60:17 60:19 60:22 60:23 60:23 60:24 61:1 61:2 61:3 61:4 61:8 61:12 65:4 65:10 66:4 66:12 67:23 68:11 68:23 69:4 69:5 69:5 69:6 69:7 69:20 69:20 69:20 70:5 70:6 70:11 70:12 70:12 70:14 71:2 72:17 73:1 73:4 78:20 79:16 80:3 80:9 81:9 81:10 81:11 81:12 82:16 82:16 85:18 86:10 86:24 87:22 93:2 93:5 93:6 93:7 93:9 93:17 95:10 95:11 96:13 96:19 96:25 98:24 99:11 99:12 102:17 102:20 103:2 103:2 103:10 103:17 105:15 107:8 109:15 110:5 110:7 110:24 110:25 111:5 111:8 119:16 119:23 120:20 121:12 121:13 125:11 137:8 137:11 137:14 137:15 137:19 137:20 137:21 137:23 137:23 137:25 139:1 139:2 139:4 139:16 139:16 139:18 139:20 140:7 140:14 140:17 140:19 140:23 140:25 141:21 142:1 142:7 142:9 142:9 142:13 142:17 142:21 142:22 143:10 143:16 143:18 144:4 145:16 145:21 145:25 145:25 146:6 146:7 146:10 146:18 147:8 147:9 147:18 148:8 148:16 148:20 148:21 148:22 149:5 149:6 149:11 150:2 150:3 150:5 150:6 150:14 150:16 151:19 152:3 152:4 152:10 152:13 152:20 152:23 154:1 156:15 156:21 156:22 161:21 161:23 161:25 162:2 162:4 162:5 162:15 162:24 163:5 163:15 164:2 164:13 164:14 164:17 164:20 164:21 165:17 165:18 165:20 165:20 165:21 165:22 165:23 165:24 167:20 170:16 178:18 179:14 179:15 180:21 181:1 181:5 181:9 181:9 181:11 181:22 182:4 182:5 182:5 182:6 182:13 182:14 182:19 183:1 186:14 186:23 187:1 187:5 187:10 187:10 187:10 187:11 187:13 187:13 188:8 188:16 189:24 190:1 190:4 190:6 190:14 190:16 192:1 192:1 192:2 208:19 209:2 209:13 209:17 214:24 215:16 215:17

**claims**(39) 220:19 220:19 221:5 221:16 221:17 221:19 225:25 226:2 226:5 226:19 226:21 226:23 227:1 227:11 227:12 227:17 227:20 227:25 228:2 228:7 228:10 229:20 229:22 229:24 233:5 233:6 233:8 233:20 234:20 234:20 235:16 235:17 235:18 235:19 236:3 236:5 240:12 240:13 240:25

**claims-based**(4) 132:21 183:11 225:20 225:21

**claims-driven**(1) 209:15
**clarification**(56) 13:20 27:1 27:3 27:6 27:10 31:6 31:16 34:16 46:21 47:5 47:10 48:3 49:10 50:22 61:6 63:4 63:23 64:18 66:11 66:20 67:16 67:20 109:23 110:21 111:6 145:13 153:12 153:16 154:4 154:4 154:9 161:18 162:10 163:23 166:9 167:19 172:12 172:13 172:16 172:21 172:23 172:24 174:20 174:25 175:2 181:25 182:20 183:9 186:15 192:23 193:22 201:15 210:7 219:18 220:12 223:23

**clarifications**(5) 127:11 167:18 173:1 192:19 193:9

**clarified**(3) 153:14 182:16 226:7
**clarify**(8) 16:7 34:24 109:24 172:16 174:22 212:7 215:9 224:11

| Word | Page:Line |
|---|---|

**clarity**(3) 31:20 32:6 45:18
**class**(1) 78:6
**classic**(1) 56:4
**clear**(58) 16:3 17:8 32:15 33:23 35:19 42:24 46:19 47:7 48:21 49:11 52:12 66:6 66:6 82:4 82:6 82:13 87:9 88:23 92:23 99:8 102:22 117:13 120:12 131:1 141:6 151:20 151:25 153:21 154:1 154:9 154:13 154:20 156:9 156:17 159:2 159:8 161:18 161:23 163:22 169:16 172:15 173:17 174:2 174:5 175:9 176:5 179:4 180:2 187:7 195:23 196:7 197:2 211:9 212:8 215:3 215:5 233:3 240:15

**clearer**(1) 82:20
**clearly**(16) 43:3 53:9 84:19 88:6 94:19 118:8 118:21 129:9 135:4 142:13 151:2 173:20 212:15 217:11 217:21 240:24

**cleary**(4) 1:32 6:4 14:1 146:12
**clerical**(3) 63:18 173:18 213:25
**clerk**(7) 12:2 12:3 12:19 115:15 115:18 207:6 242:7

**client**(2) 7:17 131:19
**clients**(6) 78:15 116:12 118:16 133:16 145:20 192:21

**clients'**(1) 131:19
**clock**(4) 79:8 93:19 111:23 219:16
**close**(4) 23:5 40:21 78:23 224:19
**close-to-$500**(1) 30:16
**closed**(1) 197:17
**closer**(4) 13:6 54:24 128:11 128:12
**closing**(5) 118:14 119:14 132:24 192:10 237:3

**closings**(2) 118:11 120:12
**closure**(2) 16:14 99:14
**coalition**(1) 136:12
**code**(1) 239:18
**coleman**(69) 3:16 77:24 78:1 78:2 78:10 78:13 80:6 83:25 84:4 84:14 84:16 85:7 85:9 85:10 85:12 86:2 86:7 86:17 87:5 89:2 89:5 89:7 89:11 91:15 91:17 91:19 92:9 94:6 94:9 94:12 95:24 95:25 96:2 96:9 96:11 97:4 97:11 97:16 98:8 98:9 98:11 98:17 99:20 100:17 100:24 101:19 103:12 110:1 110:19 117:5 123:3 124:17 135:22 157:4 161:7 195:4 200:22 212:11 221:16 225:7 230:12 237:21 237:24 238:2 238:4 238:20 239:5 239:10 239:16

**coleman's**(3) 127:11 135:8 158:20
**collateral**(1) 53:7
**colleague**(5) 66:23 151:15 201:6 202:9 222:15

**colleagues**(2) 40:18 40:22
**collection**(1) 95:13
**collier**(1) 10:21
**comb**(2) 162:6 162:6
**combinations**(1) 134:13
**come**(32) 15:17 16:9 24:16 26:16 39:23 44:13 44:23 48:12 70:24 88:1 93:18 100:12 111:7 112:21 116:15 122:19 123:10 126:21 150:22 164:16 176:13 185:5 196:11 197:14 200:11 208:20 210:4 213:5 217:9 220:19 224:19 240:3

**comes**(11) 33:8 55:6 64:15 92:17 131:25 150:3 191:6 196:14 196:17 224:24 225:25

**comfort**(2) 120:13 191:11
**comfortable**(2) 34:13 117:2
**coming**(6) 68:14 79:2 92:16 137:7 212:23 236:21

| Word | Page:Line |
|---|---|

**comity**(7) 36:13 37:20 37:22 148:14 188:4 227:4 227:5

**commenced**(1) 155:3
**comment**(5) 99:17 148:13 150:20 188:13 195:13

**comments**(7) 66:24 91:21 135:8 147:19 183:17 205:16 208:7

**commercial**(3) 52:15 54:12 72:19
**commitment**(1) 77:10
**committed**(1) 127:9
**committee**(15) 4:12 5:5 6:38 45:7 50:12 51:12 58:5 61:14 65:6 82:25 91:22 207:11 207:16 208:10 208:12

**committee's**(3) 50:21 51:9 81:21
**committees**(1) 123:9
**commodity**(1) 148:4
**common**(7) 98:3 116:16 116:18 134:20 134:24 152:8 217:3

**companies**(7) 94:20 94:22 96:6 106:6 152:16 165:4 203:2

**company**(8) 9:33 62:22 139:24 164:5 165:5 180:17 202:22 203:1

**comparable**(2) 169:15 233:1
**compare**(2) 60:7 148:19
**compared**(2) 126:4 203:15
**compelled**(3) 44:18 79:12 238:9
**competing**(4) 123:13 169:14 169:23 170:9
**complaining**(3) 120:23 120:24 189:6
**complementary**(1) 49:22
**complete**(4) 32:4 61:4 140:14 140:16
**completed**(1) 50:3
**completely**(7) 102:22 183:21 187:25 189:10 192:4 233:24 234:2

**complicated**(2) 39:17 92:6
**component**(2) 90:7 91:6
**components**(1) 81:15
**comprehensive**(1) 192:14
**comprising**(1) 81:2
**con**(6) 72:5 72:7 72:13 72:14 72:19 72:22
**conaway**(3) 2:24 6:8 7:16
**concede**(1) 174:15
**conceded**(3) 211:7 212:1 227:6
**concentrate**(1) 153:11
**concept**(2) 95:6 143:6
**concern**(11) 35:5 35:25 45:17 65:15 66:2 189:15 189:17 189:22 190:22 190:25 219:7

**concerned**(8) 33:20 66:5 111:23 114:19 114:24 141:8 199:4 227:23

**concerning**(1) 136:24
**concerns**(9) 21:9 35:23 66:1 139:4 151:16 175:20 191:21 220:4 226:1

**conclude**(2) 83:11 228:24
**concluded**(4) 81:23 82:2 92:3 168:25
**concludes**(1) 88:20
**conclusion**(13) 44:14 52:23 80:19 82:2 102:24 103:1 103:1 103:5 103:10 104:5 156:19 162:2 212:24

**conclusions**(2) 83:18 110:3
**conduct**(2) 96:18 135:13
**conducted**(1) 110:18
**conference**(1) 66:16
**confidence**(2) 20:18 148:6
**confident**(5) 123:14 186:22 186:24 191:17 240:17

**confirm**(3) 22:19 119:22 153:14
**confirmed**(3) 41:1 165:20 165:20

| Word | Page:Line |
|---|---|

**confirms**(1) 43:9
**conflated**(1) 128:14
**conflict**(5) 136:19 136:19 137:3 203:11 204:15

**conflicted**(1) 226:22
**conflicts**(10) 5:13 6:16 6:22 123:16 168:3 202:8 202:16 203:8 203:10 204:17

**confusion**(3) 27:8 46:25 109:25
**connect**(1) 116:5
**connection**(6) 88:8 115:13 115:24 123:20 209:15 221:11

**consequences**(3) 39:13 53:3 176:9
**consider**(8) 42:12 42:25 44:20 57:17 80:13 132:2 233:13 241:16

**considerable**(1) 119:7
**considerably**(1) 15:16
**consideration**(7) 35:14 43:15 103:11 127:3 170:14 170:14 214:6

**considerations**(1) 124:24
**considered**(9) 80:18 120:15 124:10 125:12 131:16 146:13 170:12 199:25 224:2

**considering**(4) 185:8 195:11 205:3 228:12
**consistency**(2) 100:10 229:12
**consistent**(18) 31:6 40:4 44:14 44:15 79:5 80:20 82:11 95:20 100:8 148:13 172:24 174:22 178:9 182:7 182:8 185:14 192:20 221:22
**consistently**(1) 153:19
**consolidated**(1) 175:23
**consolidation**(12) 52:11 52:13 52:18 64:11 66:3 72:3 72:15 85:16 91:5 134:18 155:20 200:8

**consortium**(11) 2:5 15:3 68:11 68:24 69:3 69:18 123:22 123:25 168:3 214:19 214:24

**consortiums**(2) 123:9 124:4
**consortiums'**(1) 126:24
**constant**(1) 178:22
**constantly**(1) 178:12
**constituencies**(2) 16:20 58:6
**constituency**(1) 123:18
**constituents**(1) 51:11
**constitute**(1) 155:19
**constituted**(1) 155:24
**construction**(1) 50:5
**contains**(1) 27:8
**contemplated**(1) 160:9
**contemplating**(1) 149:8
**contend**(1) 151:2
**contended**(2) 19:11 86:10
**contending**(1) 169:9
**content**(1) 85:7
**contestable**(1) 152:19
**contested**(4) 56:25 103:21 149:5 213:11
**context**(8) 75:23 80:23 86:19 87:16 87:25 93:15 147:22 196:12

**continence**(1) 58:11
**continuation**(2) 118:18 130:17
**continue**(6) 60:19 80:3 80:10 137:2 168:23 193:5

**continued**(9) 2:2 2:48 3:45 5:2 7:2 8:2 9:2 10:2 11:2

**continues**(1) 168:1
**continuing**(2) 7:39 69:25
**contortion**(1) 137:15
**contractual**(4) 86:25 237:12 237:14 237:16
**contrarian**(1) 10:40

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **contrary**(5) 44:11 135:24 157:9 157:11 205:12 | | **court**(301) 1:1 12:3 12:5 12:13 12:20 12:23 13:8 13:12 13:17 13:22 14:8 14:12 14:13 15:1 15:4 15:12 15:19 15:24 16:9 17:4 17:10 17:21 17:23 17:25 18:3 18:3 18:5 18:23 19:4 19:7 19:21 20:4 20:16 21:12 22:1 22:2 22:4 22:14 23:1 24:5 24:8 24:9 25:3 26:14 28:25 30:24 32:7 33:13 33:15 33:16 34:12 35:21 37:22 38:1 38:14 39:20 40:9 40:16 40:24 41:4 42:16 42:24 43:8 43:10 43:10 44:4 44:5 44:9 44:18 45:4 45:10 47:2 48:2 48:13 49:6 49:11 49:15 49:19 50:9 55:13 57:4 57:24 58:8 60:25 62:15 62:18 63:13 63:17 64:25 67:1 67:4 68:2 76:13 76:16 77:5 77:11 77:13 77:16 77:19 77:21 78:18 80:5 84:6 84:12 84:15 85:9 85:11 85:21 85:25 86:6 91:14 96:16 96:17 97:3 97:9 97:13 99:19 100:17 100:21 101:2 101:8 101:11 105:14 110:23 111:18 111:21 113:1 113:20 113:24 114:3 114:7 114:12 114:15 114:25 115:4 115:14 115:14 115:16 115:20 116:5 116:9 117:19 118:3 120:5 126:20 126:21 126:22 127:14 128:4 129:8 130:19 130:25 131:11 131:15 132:1 132:1 132:10 134:3 136:11 138:8 138:23 141:12 142:13 145:1 145:12 147:12 147:12 148:3 149:17 149:23 150:1 153:1 153:4 153:6 153:12 153:20 154:22 158:24 159:7 163:19 165:22 166:6 166:14 166:20 167:2 167:11 167:21 170:21 171:3 171:10 172:4 172:5 172:18 174:9 174:19 175:10 175:21 175:23 176:11 176:16 178:13 178:23 178:24 178:25 179:12 181:12 181:12 181:23 181:23 182:1 182:16 185:25 186:2 186:3 186:4 186:7 193:11 193:14 193:16 193:18 193:20 193:23 194:1 194:5 194:7 194:10 194:12 195:13 200:7 200:10 200:15 200:17 201:3 202:4 202:10 202:11 204:7 204:14 204:15 205:18 205:25 206:8 207:1 207:4 207:7 207:15 209:5 209:12 209:13 209:18 209:23 210:19 211:22 212:7 212:16 213:4 213:6 213:12 213:15 213:24 214:7 214:9 214:20 215:23 216:1 216:23 217:12 217:21 218:25 220:3 221:25 224:21 226:2 227:12 227:16 227:18 227:20 228:1 231:4 231:6 231:9 231:10 231:16 231:17 231:25 232:5 232:10 232:16 232:22 233:2 233:11 233:15 234:2 234:12 234:16 234:24 235:11 236:12 236:18 | **courts**(193) 14:3 14:6 14:10 14:17 14:20 16:4 16:6 16:21 18:16 18:19 19:19 19:23 20:18 21:3 21:7 23:6 24:11 24:12 24:22 25:8 26:19 26:19 27:13 28:5 30:13 31:9 32:4 32:16 32:17 33:21 34:23 35:6 37:12 37:21 38:2 38:18 40:3 40:5 41:2 44:8 44:15 44:17 44:21 45:20 46:16 47:7 47:15 47:18 47:20 47:21 47:24 47:25 48:8 48:13 48:20 48:22 49:2 51:20 51:23 52:22 57:6 57:12 62:9 78:22 79:5 79:10 80:12 82:21 85:16 88:4 92:24 93:12 94:1 95:2 98:14 98:16 98:18 98:20 99:7 100:1 101:6 101:14 101:25 103:5 103:20 103:24 109:14 111:5 116:22 118:7 120:8 120:14 120:19 121:4 122:9 122:15 122:24 124:10 125:6 125:7 126:12 135:2 137:4 140:6 141:5 141:8 141:11 141:15 141:19 143:21 144:9 145:6 145:16 146:2 148:12 148:15 148:23 149:1 149:3 157:22 158:3 158:4 158:9 167:8 167:24 167:24 168:25 169:3 169:13 169:16 169:18 170:8 170:12 172:2 172:4 172:8 172:14 172:17 172:20 172:22 172:22 172:25 174:7 174:16 175:10 175:14 176:14 178:21 182:1 183:13 184:6 185:18 186:10 186:13 188:23 190:3 192:11 192:13 192:16 192:18 193:1 193:4 196:7 196:7 197:9 203:6 208:18 212:22 216:8 216:12 218:17 219:15 220:17 221:9 221:10 222:6 222:24 223:1 223:1 223:4 224:7 227:6 227:8 227:13 228:23 228:24 232:20 234:13 235:10 236:11 236:19 237:4 241:5 | **cross-border**(1) 168:24 |
| **contrast**(1) 55:25 | | | | | | **cross-examination**(1) 198:12 |
| | | | | | | **cross-examine**(1) 198:3 198:19 |
| **contributed**(3) 54:11 157:1 232:1 | | | | | | **cross-examine**(2) 198:3 198:19 |
| **contribution**(5) 33:6 54:8 190:6 190:7 190:14 | | | | | | **crossing**(1) 194:24 |
| | | | | | | **crt**(1) 11:32 |
| **contributions**(2) 124:23 175:17 | | | | | | **crying**(1) 126:5 |
| **contributor**(1) 203:3 | | | | | | **cue**(2) 115:6 115:11 |
| **control**(1) 231:18 | | | | | | **cue**(1) 74:18 |
| **controlled**(3) 143:2 143:4 143:5 | | | | | | **culminating**(1) 197:20 |
| **controlling**(4) 117:10 130:21 130:24 173:25 | | | | | | **cumulatively**(1) 135:24 |
| **controversial**(1) 17:6 | | | | | | **current**(2) 54:24 126:1 |
| **conundrum**(1) 21:15 | | | | | | **currently**(1) 186:18 |
| **convenient**(1) 14:5 | | | | **courts'**(11) 119:9 125:3 127:5 136:24 137:6 151:3 169:9 169:12 172:7 175:18 198:23 | | **cut**(15) 28:21 59:8 59:11 60:14 68:7 71:16 72:10 112:16 170:25 177:17 177:24 196:19 196:21 198:14 199:13 |
| **conversely**(1) 55:25 | | | | **court's**(4) 124:5 124:8 124:25 178:17 | | |
| **coordinated**(3) 15:15 112:3 175:24 | | | | **covered**(5) 55:19 181:6 194:25 195:8 | | **cuts**(1) 68:14 |
| **copy**(5) 42:10 149:15 160:11 214:12 | | | | **covers**(1) 103:3 | | **cutting**(2) 69:9 73:18 |
| **core**(4) 60:1 63:1 151:7 235:9 | | | | **cow**(1) 54:20 | | **d.c**(2) 42:1 42:15 |
| **corporate**(6) 94:14 94:15 94:17 110:10 165:2 176:4 | | | | **crack**(1) 77:1 | | **daley**(1) 238:24 |
| | | | | **craft**(1) 178:20 | | **damage**(1) 53:7 |
| **correct**(16) 23:17 50:1 64:3 97:11 101:10 102:13 107:19 117:13 135:22 135:23 173:19 200:19 214:25 233:13 238:9 242:12 | | | | **crafted**(4) 92:21 169:3 169:19 187:17 | | **dan**(3) 3:20 7:25 202:15 |
| | | | | **crafting**(2) 167:24 199:22 | | **danger**(1) 102:8 |
| | | | | **craig**(1) 7:30 | | **daniel**(3) 3:39 62:20 213:18 |
| **correctly**(1) 98:18 | | | | **create**(5) 86:22 91:10 136:5 139:25 186:13 | | **darryl**(1) 1:34 |
| **correctness**(2) 102:14 104:5 | | | | **creates**(1) 197:9 | | **data**(12) 24:11 124:19 125:1 170:2 170:3 170:21 170:21 171:2 171:2 171:9 171:17 171:19 |
| **corresponding**(2) 47:6 58:14 | | | | **creating**(1) 199:22 | | |
| **corroborated**(1) 24:17 | | | | **creation**(1) 151:18 | | **date**(14) 14:5 38:14 38:20 39:2 40:2 99:2 144:14 150:7 152:16 157:10 165:19 219:19 219:20 242:18 |
| **cost**(2) 100:2 191:7 | | | | **credible**(1) 126:11 | | |
| **costs**(1) 149:4 | | | | **credit**(6) 8:5 8:29 9:29 32:19 34:20 74:4 | | **dated**(2) 88:14 89:7 |
| **could**(44) 19:14 19:25 32:13 32:20 36:6 37:11 40:6 40:18 42:8 43:15 48:3 70:12 76:25 82:20 84:15 101:25 112:23 117:22 117:25 120:6 120:17 120:17 123:25 132:3 149:14 150:9 157:16 160:8 163:25 168:11 172:4 176:13 190:7 200:11 200:12 206:5 206:6 220:1 221:8 221:17 226:7 236:25 237:2 237:15 | | | | **credited**(2) 22:25 185:17 | | **david**(8) 4:15 4:30 6:9 8:18 11:9 95:17 194:16 201:10 |
| | | | | **creditor**(35) 7:28 7:33 7:38 7:43 8:4 8:9 9:4 40:20 64:2 73:5 73:6 73:7 103:23 103:25 107:21 108:19 122:8 122:22 134:6 139:23 147:19 169:14 169:23 173:2 173:5 175:25 176:8 179:8 212:2 217:19 225:12 232:23 232:25 234:8 234:9 | | **davis**(1) 9:21 |
| | | | | | | **day**(8) 83:8 91:9 118:10 182:23 198:5 200:8 216:14 241:20 |
| **couldn't**(2) 68:7 79:12 | | | | | | **days**(5) 19:18 89:16 118:14 218:4 220:21 |
| **couldn't**(2) 156:9 162:1 | | | | **creditor's**(3) 57:15 57:15 57:16 | | **dead**(1) 161:9 |
| **counsel**(23) 42:22 62:23 65:7 68:12 112:14 114:8 114:22 119:1 123:6 123:8 123:12 123:17 134:23 136:7 136:21 152:9 185:15 195:8 202:25 213:22 222:18 229:7 242:5 | | | | **creditor-by**(1) 234:7 | | **deal**(16) 14:17 48:17 57:12 79:1 93:13 93:17 112:13 128:24 138:5 153:23 154:12 185:9 186:13 207:20 208:18 209:7 |
| | | | | **creditors**(56) 4:13 5:4 6:39 17:1 24:24 25:1 26:6 27:25 36:10 50:12 52:5 53:4 53:6 53:12 54:8 55:8 56:4 56:8 59:21 69:15 76:22 78:16 83:1 85:18 97:5 105:4 108:2 108:5 121:14 121:20 121:23 121:25 122:2 124:21 126:3 126:16 127:9 134:7 147:14 147:17 156:11 156:12 156:13 170:1 171:5 176:9 204:25 208:10 208:12 208:14 211:17 224:6 224:15 233:23 233:25 234:4 | | **dealing**(5) 92:24 102:23 110:1 128:1 |
| | | | | | | **deals**(7) 46:17 110:4 110:5 128:15 159:11 159:24 163:13 |
| **count**(30) 29:5 30:14 31:24 33:8 33:19 33:22 37:8 38:17 38:20 39:4 59:23 60:3 65:4 65:4 65:12 66:12 79:14 102:21 103:3 107:8 142:3 142:13 142:13 146:3 166:3 166:4 180:2 218:19 223:24 235:23 236:3 | | **court**(15) 237:20 238:1 238:19 238:23 239:9 239:15 239:23 240:20 241:2 241:6 241:10 241:24 242:3 242:6 242:7 | | | | **dealt**(9) 81:21 105:14 106:7 109:9 110:1 153:10 154:15 157:4 207:19 |
| | | | | | | **debate**(6) 80:8 95:23 181:24 203:17 203:18 222:14 |
| **counted**(14) 30:10 34:15 107:6 141:21 142:1 142:20 143:20 147:10 148:22 151:3 151:5 179:16 179:21 211:4 | | **court's**(29) 18:22 24:15 25:4 25:16 27:4 31:15 32:15 35:14 46:21 57:21 59:19 62:9 72:21 78:25 81:2 83:17 100:8 203:13 203:14 205:11 206:2 212:19 212:22 231:22 237:7 232:23 232:25 234:15 235:12 | | | | **debenture**(5) 3:31 15:3 62:22 62:25 213:18 |
| | | | | | | **debt**(12) 69:4 70:11 164:6 164:8 179:16 179:16 179:18 179:19 179:19 179:20 179:24 228:16 |
| **counting**(4) 30:18 83:6 87:8 240:25 | | | | | | |
| **countries**(1) 213:23 | | | | | | **debtor**(64) 6:3 32:1 32:1 32:2 35:5 35:8 35:8 38:4 46:2 58:9 58:19 64:3 64:4 64:5 64:5 74:4 76:21 81:8 82:17 93:24 94:3 94:10 94:16 94:21 95:18 98:18 110:1 110:4 110:10 110:5 126:4 133:20 136:2 140:19 141:24 142:8 142:16 146:18 149:8 149:24 150:8 151:17 151:18 151:21 152:1 152:4 153:15 154:14 155:22 156:3 156:6 156:20 156:24 158:22 160:3 160:9 164:2 181:5 190:8 190:15 210:8 210:10 221:19 228:22 |
| **counts**(4) 29:7 33:10 79:13 122:24 | | **courtcall**(1) 115:13 115:24 | | | | |
| **couple**(13) 46:20 63:11 69:13 86:18 88:16 109:22 124:14 153:9 154:24 158:16 173:10 222:24 224:13 | | **courtroom**(9) 1:10 50:14 113:8 121:15 121:16 124:2 136:21 136:22 201:14 | | **creek**(1) 8:33 | | |
| | | | | **crichlow**(5) 4:30 194:10 194:14 194:16 201:3 | | |
| **course**(19) 23:12 39:9 41:19 44:3 66:15 90:16 92:12 96:2 108:19 148:24 150:21 162:5 171:9 171:18 189:3 216:12 217:3 225:21 226:13 | | | | **critically**(1) 73:12 | | |
| | | | | **criticisms**(2) 170:24 171:2 | | |
| | | | | **crook**(1) 146:13 | | |
| | | | | **crooks**(2) 226:15 227:3 | | |
| | | | | **cross**(2) 81:21 121:23 | | |

| Word | Page:Line |
|------|-----------|
| **debtors**(213) 1:12 1:25 12:8 14:2 14:16 15:8 16:9 16:16 16:18 16:19 17:1 18:14 18:17 21:21 22:6 22:11 22:16 22:24 23:2 23:3 24:18 25:2 27:1 27:12 27:14 27:15 28:13 28:14 28:15 29:2 29:3 29:5 29:5 29:7 29:23 30:2 30:15 30:17 30:18 31:10 31:12 31:23 32:19 34:3 34:7 34:22 35:2 35:2 35:3 35:4 35:5 35:10 38:13 38:22 40:1 48:5 50:21 52:7 61:7 63:24 64:17 64:20 65:13 65:20 66:6 66:8 66:17 68:12 78:2 79:17 80:21 81:3 81:8 81:9 81:14 82:10 83:21 85:13 86:11 87:13 87:23 90:2 90:3 90:4 92:5 95:3 95:4 95:4 95:14 95:19 95:19 95:20 107:6 110:16 111:25 124:1 124:17 124:19 124:22 126:5 133:13 133:17 133:25 134:13 134:19 135:2 135:7 135:14 135:25 136:6 136:13 136:14 137:1 139:21 142:10 142:17 142:22 143:7 144:2 144:4 144:11 144:12 145:17 145:22 146:2 147:18 148:19 149:6 149:23 150:15 151:1 151:21 152:5 152:6 155:10 158:1 158:22 160:2 160:10 160:13 160:14 162:3 162:4 167:15 169:1 169:2 169:2 169:25 170:4 171:21 172:9 173:11 174:15 175:8 183:22 184:4 184:8 184:17 185:6 185:13 185:19 185:20 186:12 186:14 186:18 186:23 186:25 187:2 188:22 190:2 190:14 191:15 195:9 196:3 196:6 197:14 198:1 198:19 199:5 200:20 200:24 203:25 204:5 204:20 205:3 205:5 207:16 210:15 211:17 221:14 221:17 223:20 223:21 223:22 227:10 228:1 228:5 228:7 228:19 229:1 231:14 231:15 233:18 234:1 234:5 234:17 235:16 235:16 235:17 236:17 236:16 237:17 237:18 |
| **debtors'**(1) 122:12 |
| **debtor's**(15) 125:14 141:9 149:14 169:22 175:17 180:4 180:10 185:1 185:3 185:11 186:17 186:20 191:19 195:1 195:5 |
| **debts**(3) 152:15 180:22 180:23 |
| **december**(2) 38:15 230:17 |
| **decide**(16) 37:3 38:2 38:5 38:8 135:17 135:17 135:20 187:21 188:8 188:24 191:24 192:18 219:15 222:7 232:3 232:23 |
| **decided**(10) 27:12 37:21 37:24 37:25 72:21 120:8 149:2 150:13 159:7 217:9 |
| **deciding**(2) 98:14 227:8 |
| **decision**(113) 18:3 18:6 18:13 18:17 19:3 24:21 28:2 32:12 46:17 46:23 47:8 47:21 47:25 48:18 49:15 49:23 52:11 52:17 53:22 58:4 58:11 63:10 63:22 64:1 64:1 64:10 66:5 71:3 72:1 72:23 75:15 76:4 82:7 97:14 103:19 104:12 109:1 110:2 124:5 125:8 129:4 129:25 130:19 131:11 131:23 135:10 136:12 142:4 148:1 148:3 150:3 150:4 153:11 153:17 153:21 153:25 154:13 154:17 154:18 154:20 154:20 154:24 154:25 155:3 155:12 155:13 155:15 155:16 158:9 158:18 158:19 159:2 159:8 161:18 161:23 162:1 162:12 163:8 163:21 174:8 174:18 174:21 178:21 179:4 181:11 187:20 192:23 196:4 197:3 197:7 198:23 199:8 199:22 200:2 200:19 201:1 201:16 203:7 203:17 209:19 211:3 211:10 211:10 211:19 212:17 217:12 217:25 222:6 235:24 235:25 238:23 239:11 240:5 |
| **decision-making**(1) 42:23 |
| **decisions**(47) 44:15 48:12 48:25 51:24 52:3 55:18 56:6 69:16 72:2 73:11 75:13 76:6 79:6 79:25 80:11 118:1 120:18 124:9 126:1 136:11 136:25 137:7 141:2 141:6 151:3 151:20 152:1 153:11 153:14 153:22 154:1 154:2 154:6 154:9 154:16 158:21 158:23 164:1 169:9 169:12 174:11 187:20 208:24 210:5 212:7 221:21 222:21 |
| **deck**(2) 45:3 45:7 |
| **declined**(1) 229:1 |
| **decry**(1) 170:1 |
| **deem**(1) 193:10 |
| **deemed**(8) 89:24 155:20 |
| **deems**(1) 44:18 |
| **deep**(2) 43:11 44:6 |
| **defer**(2) 37:18 37:18 |
| **deference**(2) 148:14 188:4 |
| **deficiency**(6) 46:25 211:3 211:5 211:12 211:20 212:4 |
| **deficit**(7) 106:11 106:19 106:21 106:25 107:1 143:3 188:25 |
| **defined**(7) 63:11 82:14 88:19 89:12 91:5 136:4 230:20 |
| **definition**(2) 94:10 170:13 |
| **definitive**(2) 82:13 226:8 |
| **definitively**(1) 33:22 |
| **degroup**(2) 128:23 129:23 |
| **delaware**(8) 1:2 1:12 3:34 5:27 12:1 17:19 154:22 217:7 |
| **delay**(5) 78:17 93:21 111:1 220:2 220:12 |
| **delays**(1) 221:11 |
| **deleting**(1) 67:21 |
| **deliberate**(6) 35:21 82:22 83:18 87:9 137:6 141:1 |
| **deliberately**(1) 173:22 |
| **delicate**(1) 13:18 |
| **delighted**(1) 202:18 |
| **delivered**(3) 42:23 119:15 120:12 |
| **delivery**(1) 61:9 |
| **demanded**(1) 146:8 |
| **demonstrate**(2) 170:4 185:12 |
| **demonstrated**(1) 197:13 |
| **demonstratives**(2) 120:1 120:4 |
| **denied**(5) 84:16 122:15 193:9 237:13 |
| **dentons**(1) 201:7 |
| **deny**(1) 79:23 |
| **depending**(1) 71:8 |
| **depletion**(1) 204:23 |
| **deposited**(1) 87:12 |
| **deposition**(1) 92:12 |
| **depositor**(3) 88:23 89:15 230:20 |
| **depositors**(1) 89:15 |
| **depressing**(1) 175:11 |
| **derek**(4) 1:26 2:32 12:7 133:9 |
| **described**(4) 126:20 207:18 207:25 209:5 |
| **describes**(1) 43:11 |
| **design**(2) 26:21 169:4 |
| **designed**(1) 173:13 |
| **desire**(1) 52:23 |
| **despite**(5) 16:17 85:2 167:22 211:20 |
| **destroy**(2) 36:1 227:19 |
| **detail**(8) 18:11 65:15 119:9 133:11 181:6 207:25 217:14 217:23 |
| **detailed**(1) 51:18 |
| **details**(1) 93:2 |
| **determination**(9) 45:21 52:6 61:10 93:5 144:23 149:12 150:12 157:12 175:18 |
| **determinations**(2) 120:20 209:14 |
| **determine**(7) 89:24 93:3 93:4 135:17 141:12 158:10 178:17 |
| **determined**(8) 30:3 67:23 135:5 148:16 156:7 157:20 170:8 223:19 |
| **determining**(3) 46:2 141:19 178:19 |
| **detriment**(1) 204:25 |
| **deutsche**(1) 11:36 |
| **devastating**(3) 51:11 51:17 236:6 |
| **develop**(2) 19:7 19:11 |
| **developed**(2) 60:12 226:14 |
| **development**(1) 61:11 |

| Word | Page:Line |
|------|-----------|
| **dial**(1) 152:18 |
| **diamond**(1) 10:29 |
| **diamondware**(20) 21:10 21:17 22:17 23:7 24:6 61:9 87:10 108:24 143:10 144:9 144:22 145:7 172:12 183:18 184:13 184:24 209:22 231:8 232:5 232:12 |
| **diaz**(1) 1:41 |
| **dictate**(1) 226:20 |
| **did**(66) 14:6 21:18 21:19 22:2 24:13 41:2 46:13 46:16 47:12 47:15 67:20 78:6 86:2 87:18 91:3 93:3 93:4 109:10 109:11 112:13 119:24 120:5 120:19 121:1 121:10 121:16 122:5 125:3 125:6 125:8 135:8 138:15 148:10 148:11 161:14 161:22 170:14 177:16 177:19 177:21 178:23 179:12 180:12 182:21 185:6 190:12 198:1 198:6 199:11 200:11 209:12 211:7 211:8 212:8 214:5 218:17 222:10 224:2 231:12 232:16 234:2 234:24 236:15 238:10 241:14 241:19 |
| **didn't**(29) 23:25 24:16 24:19 26:19 30:7 46:5 51:2 61:21 63:14 84:9 103:13 105:10 106:12 121:2 215:11 216:16 216:24 222:1 222:3 222:9 224:5 224:5 224:6 230:14 231:9 234:13 234:14 239:3 241:18 |
| **didn't**(13) 10:25 121:7 121:23 121:24 122:3 122:3 136:4 136:5 137:7 141:11 174:9 182:21 188:16 |
| **difference**(9) 58:3 59:4 59:13 105:7 105:7 105:7 164:8 200:24 225:13 |
| **differences**(3) 81:7 193:2 212:20 |
| **different**(46) 32:18 67:7 70:25 72:15 72:22 83:12 91:25 99:25 102:11 106:17 109:15 120:2 120:3 122:10 122:19 122:20 122:20 123:13 123:15 123:15 125:16 131:25 133:2 134:18 135:1 135:6 135:20 136:13 139:18 147:16 148:19 151:1 152:5 152:5 152:15 160:17 162:11 180:23 187:25 192:3 192:4 218:19 232:6 234:17 234:22 237:11 |
| **differentiate**(1) 166:5 |
| **differently**(1) 72:25 |
| **difficult**(2) 23:10 75:19 |
| **diligence**(4) 116:13 132:4 132:5 183:15 |
| **dilution**(1) 73:23 |
| **dimsdale-gill**(1) 7:35 |
| **diocese**(1) 17:21 |
| **dioceses**(1) 185:24 |
| **dip**(1) 30:20 |
| **direct**(7) 49:21 50:16 120:2 124:21 124:23 173:15 214:3 |
| **directed**(2) 93:6 235:9 |
| **direction**(2) 62:3 143:6 |
| **directions**(1) 142:10 |
| **directive**(1) 87:1 |
| **directly**(6) 64:15 80:2 103:5 103:7 103:18 124:25 |
| **directors**(1) 227:1 |
| **disadvantaged**(1) 136:15 |
| **disagree**(1) 16:10 |
| **disagreed**(5) 23:18 34:6 34:6 217:7 234:10 |
| **disagreeing**(1) 112:17 |
| **disagreement**(4) 35:1 49:9 150:19 234:11 |
| **disagreements**(1) 23:4 |
| **disallow**(1) 236:15 |
| **disallowed**(1) 236:16 |
| **disallowing**(2) 152:4 152:7 |
| **disappear**(5) 72:14 72:14 72:16 72:17 |
| **disappointed**(2) 87:18 174:12 |
| **disappointment**(1) 169:8 |
| **disavowed**(1) 229:13 |
| **disclosure**(1) 199:10 |
| **disconnect**(3) 35:19 90:7 90:11 |

| Word | Page:Line |
|------|-----------|
| **discovered**(2) 117:17 132:3 |
| **discovery**(1) 119:1 |
| **discredit**(1) 122:14 |
| **discrete**(1) 207:20 |
| **discretion**(27) 17:10 17:17 42:5 42:16 43:5 43:11 44:6 49:25 50:6 127:23 127:25 128:15 128:16 128:17 128:20 128:22 129:6 130:3 131:21 132:17 132:18 135:19 178:17 195:18 195:23 195:24 196:7 |
| **discuss**(2) 151:10 226:1 |
| **discussed**(4) 24:10 109:2 119:14 151:7 |
| **discussion**(5) 52:12 56:19 103:6 103:7 |
| **discussions**(6) 44:10 48:11 48:23 49:1 61:17 61:21 |
| **disgruntled**(3) 197:2 197:6 207:17 |
| **disgruntlement**(3) 207:15 207:17 207:18 |
| **dishonest**(3) 146:9 226:15 227:2 |
| **dishonesty**(2) 145:24 147:21 |
| **disingenuous**(1) 126:12 |
| **disparate**(2) 203:14 204:19 |
| **dispute**(16) 17:6 22:7 22:21 22:23 31:22 32:5 135:4 143:19 149:7 157:12 157:21 158:2 158:13 187:14 223:7 231:4 |
| **disputed**(9) 24:4 35:18 36:3 36:18 150:2 150:3 150:4 150:6 226:2 |
| **disputes**(4) 148:21 148:24 157:20 210:25 |
| **disregard**(5) 23:6 119:5 125:6 125:8 164:1 |
| **disregarded**(1) 121:2 229:21 231:3 |
| **disregards**(1) 224:21 |
| **dissatisfied**(1) 197:8 |
| **distill**(1) 216:10 |
| **distinct**(2) 133:20 199:2 |
| **distinction**(5) 94:14 94:19 163:25 164:10 188:7 |
| **distinguish**(4) 104:4 187:8 187:9 187:12 |
| **distortion**(2) 182:13 182:14 |
| **distressed**(1) 191:5 |
| **distribute**(2) 78:22 127:8 |
| **distributing**(1) 78:16 |
| **distribution**(49) 20:3 20:8 30:15 31:3 31:4 31:5 31:8 45:22 47:9 47:13 47:25 48:2 49:13 55:18 56:23 57:2 57:3 57:4 57:7 58:1 58:9 58:12 59:2 67:17 82:4 92:13 92:18 95:14 96:14 96:20 99:14 108:21 137:12 137:13 137:17 141:7 161:10 164:16 170:20 175:24 178:15 187:11 187:24 189:5 189:7 208:21 235:1 236:20 236:21 |
| **distribution."**(1) 176:1 |
| **distributions**(15) 20:7 20:20 20:24 26:8 46:18 47:3 57:23 59:1 63:25 64:1 124:21 209:4 218:9 221:12 232:17 |
| **district**(3) 1:2 18:2 217:6 |
| **diversion**(1) 64:12 |
| **diverted**(1) 35:10 |
| **divide**(1) 28:9 |
| **divided**(3) 95:11 233:7 234:7 |
| **dividend**(1) 137:13 |
| **divisional**(2) 101:8 101:11 |
| **dla**(4) 5:5 115:6 115:11 115:22 |
| **docket**(1) 81:4 |
| **dockets**(1) 216:13 |
| **doctrine**(4) 102:3 102:9 103:9 105:17 |
| **document**(2) 89:3 218:15 |
| **does**(33) 21:8 22:18 28:4 42:22 43:4 46:21 52:11 56:1 60:25 70:24 71:4 90:1 90:4 90:6 96:3 96:10 107:9 140:21 159:4 173:21 187:3 187:17 197:3 205:1 209:17 211:21 219:8 219:14 221:4 227:5 231:18 232:11 239:1 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| doesn't(18) 25:12 25:14 55:20 55:24 62:4 62:5 88:24 104:8 107:12 109:20 218:21 220:1 222:1 222:1 224:19 228:18 231:7 231:8 | | duplicative-type(1) 240:19 duplicativeness(1) 150:19 during(12) 24:1 24:10 50:17 63:1 80:4 80:13 82:12 119:4 120:2 192:15 199:4 201:23 | | emea(107) 16:18 17:1 25:2 26:13 27:1 27:12 29:23 30:2 30:14 31:3 32:1 32:19 33:17 34:7 34:18 35:2 36:7 37:4 38:13 39:12 54:15 54:16 54:23 79:11 95:4 95:7 95:19 97:15 107:5 108:4 108:8 110:15 113:7 126:5 133:4 133:6 133:7 133:13 133:18 133:21 133:22 134:19 135:12 | | entitlement(4) 66:13 231:21 232:4 232:8 entitlements(2) 71:15 71:23 entitles(1) 76:2 entity(10) 133:24 134:17 136:5 136:20 137:2 156:11 156:12 156:12 164:18 |
| doesn't(9) 120:4 128:16 131:7 133:24 148:25 185:12 192:24 195:20 222:8 | | dust(1) 141:2 duties(1) 147:17 duty(1) 226:21 | | | | entity-by-entity(1) 161:13 entry(5) 43:10 81:4 117:22 123:6 123:8 |
| doing(10) 36:14 48:16 52:25 63:10 64:14 74:16 141:10 152:2 152:2 175:14 | | each(74) 23:5 39:22 52:7 55:22 61:11 78:14 79:2 79:8 81:8 93:19 94:17 95:11 96:7 97:17 97:19 98:19 99:1 99:4 99:8 99:15 100:4 100:5 105:1 107:20 110:4 110:15 120:14 121:14 123:10 133:17 133:25 134:4 134:5 134:6 134:13 134:14 134:15 134:22 135:1 135:5 135:6 135:25 136:2 136:13 139:18 141:20 147:16 147:17 148:15 149:2 149:6 155:7 155:10 156:11 156:12 156:20 156:25 160:2 160:9 160:14 161:3 161:5 161:10 168:4 168:20 169:2 175:24 210:10 220:18 223:18 233:5 233:8 234:21 241:1 | | 135:14 136:6 136:14 137:1 140:7 142:16 144:11 145:21 146:2 147:8 149:2 149:13 150:15 151:18 152:5 152:6 155:8 156:4 157:7 158:22 159:2 159:5 160:14 164:14 165:3 165:17 165:22 165:25 165:25 166:2 169:2 186:18 187:2 187:3 190:1 190:7 190:8 190:14 190:15 190:18 191:12 191:15 191:15 191:19 202:24 203:15 203:16 221:22 222:22 224:2 224:6 226:11 227:10 227:24 227:25 228:1 228:22 229:1 231:15 233:24 234:10 234:22 235:16 237:18 | | enumerated(1) 181:21 envelopes(2) 62:6 62:6 epc(1) 177:8 ephraim(1) 10:29 equal(4) 39:22 40:21 107:18 200:23 equalize(1) 40:19 equalized(1) 41:1 equally(4) 53:5 186:24 235:22 236:1 equating(1) 175:22 equitable(6) 25:17 44:12 57:9 200:7 227:19 231:22 |
| dollar(20) 25:1 26:6 28:1 35:11 35:13 57:22 59:23 70:20 105:5 106:11 107:5 107:20 108:3 108:3 124:20 126:15 141:20 165:20 234:9 241:1 | | | | | | equitably(2) 200:12 235:23 equity(8) 20:16 39:3 52:24 52:25 56:3 172:11 184:14 205:5 |
| dollar-by-dollar(1) 234:8 dollar-to-dollar(1) 234:9 dollars(9) 30:22 34:18 55:15 55:15 55:16 60:2 127:6 143:15 230:22 | | | | emea's(1) 202:25 emea's(1) 190:4 employee(6) 60:22 60:22 60:23 69:4 70:5 241:21 | | equity-oriented(1) 209:19 equivalent(3) 104:9 139:24 139:25 eric(1) 9:38 erisa(2) 143:5 188:25 ernst(3) 7:20 7:44 78:3 |
| don't(78) 13:20 15:10 15:12 15:14 17:11 20:9 22:9 26:1 28:15 30:11 31:9 32:24 36:6 36:20 39:16 40:25 41:14 49:3 52:14 53:20 53:21 53:21 53:23 56:11 59:18 60:2 61:20 61:21 61:23 61:23 61:25 62:15 64:8 64:25 65:25 74:1 76:24 77:3 83:2 83:3 83:6 83:7 90:18 93:18 99:15 104:16 108:12 108:18 110:18 114:1 202:19 203:18 204:13 204:21 208:3 208:19 210:14 214:12 215:7 217:18 217:19 217:19 220:18 221:18 222:18 222:18 226:7 227:2 227:2 227:3 228:18 228:23 235:14 235:23 236:8 238:6 240:7 | | | | | | error(13) 42:20 61:3 63:19 117:13 174:2 209:21 210:5 215:3 215:5 215:17 215:20 230:6 230:6 |
| | | earlier(21) 49:24 63:20 68:11 70:15 84:18 102:12 117:5 118:2 118:4 123:23 124:17 125:15 135:22 139:17 140:8 143:13 190:6 202:23 207:18 209:17 236:22 | | employees(8) 7:39 51:12 54:21 54:22 69:7 69:17 69:19 71:21 | | errors(4) 42:13 43:1 101:10 173:17 eschew(1) 26:20 escrow(13) 88:22 89:14 133:21 160:5 160:6 160:7 160:11 160:18 160:24 223:6 230:20 230:21 230:22 |
| | | | | enable(2) 114:20 209:3 enclosure(1) 96:14 encourage(1) 100:12 end(18) 14:7 16:12 28:6 35:22 38:15 83:8 91:9 100:7 116:17 116:21 118:10 125:4 130:19 205:17 208:19 219:8 222:17 228:13 | | espoused(2) 198:25 231:9 esq(6) 1:26 1:27 1:33 1:34 2:6 2:13 2:18 2:25 2:26 2:32 2:33 2:39 3:2 3:8 3:16 3:17 3:18 3:19 3:20 3:26 3:33 3:39 3:49 4:7 4:14 4:15 4:16 4:23 4:30 5:6 5:7 5:8 5:15 5:20 5:26 5:32 5:33 5:34 5:35 6:5 6:9 6:13 6:24 6:25 6:30 6:35 6:40 6:45 7:6 7:7 7:8 7:9 7:13 7:21 7:23 7:25 7:30 7:35 7:40 7:45 8:10 8:14 9:21 9:26 11:5 11:17 |
| done(32) 30:1 30:10 31:9 31:14 33:10 41:19 41:19 43:4 43:16 43:19 44:5 47:7 62:9 62:24 99:11 99:12 116:11 116:23 122:21 129:18 138:18 139:23 161:13 172:5 173:3 173:22 179:3 183:12 191:1 197:1 213:3 228:4 | | ec2a(1) 2:41 ecro(1) 1:39 edition(1) 173:17 edmond(1) 62:24 | | endeavored(1) 48:11 ended(1) 157:21 ending(1) 129:14 endless(1) 129:13 endorse(1) 147:23 endorsed(1) 165:23 ends(1) 222:14 engage(1) 149:1 engineered(1) 169:22 england(7) 134:1 134:2 138:23 139:20 139:22 140:6 204:16 | | essentially(7) 32:20 131:25 137:16 137:23 139:22 188:6 191:24 |
| don't(48) 17:16 41:22 115:16 117:1 124:5 128:25 129:22 131:22 135:19 138:3 138:18 140:23 140:24 142:13 142:15 143:19 144:20 147:25 149:3 152:17 155:17 161:24 162:5 162:8 162:8 165:1 165:3 166:3 166:24 168:6 168:17 173:2 173:5 173:9 177:24 180:2 181:6 184:17 184:18 187:13 188:11 190:24 191:22 192:7 192:16 194:21 196:18 201:25 | | effect(14) 24:20 32:23 50:4 73:5 83:5 88:1 93:1 96:20 141:11 173:1 175:12 176:7 212:17 230:1 | | | | establish(4) 25:18 78:19 90:2 228:20 established(1) 80:13 establishes(1) 88:11 estate(72) 31:2 31:2 33:24 36:7 39:19 39:24 40:11 45:25 51:16 53:4 53:7 54:19 54:20 54:25 55:22 61:10 64:12 64:16 64:16 73:3 73:6 74:6 76:21 81:12 81:13 88:6 88:9 88:12 95:6 95:11 95:13 99:8 100:5 107:21 110:4 110:10 128:1 128:14 133:21 133:22 136:15 141:24 142:2 147:8 151:18 155:22 155:24 156:20 156:22 158:22 170:9 179:1 183:7 183:11 208:21 208:25 211:5 218:19 220:18 222:22 225:8 225:11 225:20 229:18 232:17 232:18 233:6 233:8 234:18 237:6 237:7 239:20 |
| | | effective(1) 38:14 effects(2) 136:12 211:18 effectuate(2) 137:6 141:1 efficient(4) 148:9 206:6 206:15 216:9 efficiently(2) 33:25 213:3 | | english(4) 134:3 138:2 147:12 147:24 enhance(1) 89:21 enjoy(2) 78:6 205:10 | | |
| door(2) 220:5 227:24 dorsey(1) 2:26 double(5) 83:6 86:10 86:13 87:8 103:2 double-counted(1) 179:19 doubt(3) 13:19 99:21 221:23 dovetail(1) 198:9 dow(1) 10:4 down(10) 35:18 39:11 40:6 57:16 64:23 108:7 204:1 215:19 225:25 239:16 | | effort(9) 44:10 116:13 116:15 117:24 192:12 198:24 199:18 199:22 208:22 efforts(4) 35:21 137:5 167:23 192:13 eguchi(1) 5:35 ehmer(1) 10:33 either(19) 15:12 42:17 49:16 102:11 155:20 163:25 172:9 174:2 182:9 182:10 182:11 184:4 187:3 188:5 202:1 212:17 217:7 223:6 232:19 | | enormous(3) 16:19 59:4 99:5 enough(12) 42:11 88:23 106:22 186:4 200:22 200:25 212:16 212:16 214:14 215:6 215:7 237:24 ensure(3) 175:24 187:3 187:16 enter(1) 46:16 entered(8) 43:6 43:15 47:2 136:11 152:1 155:4 155:4 155:5 | | estates(70) 16:14 20:8 24:4 28:9 28:11 37:4 37:16 39:12 39:12 39:13 39:17 46:2 48:19 52:2 53:1 54:19 55:1 55:6 55:7 58:20 64:2 64:3 64:4 64:5 65:17 65:18 76:21 78:20 93:24 94:3 94:10 94:16 94:21 95:3 95:18 96:4 98:18 99:1 99:15 100:4 107:20 110:1 110:8 110:16 110:16 127:8 135:21 142:8 147:16 149:2 149:3 150:14 155:25 156:6 156:8 156:16 156:22 156:24 156:25 159:3 164:2 165:18 168:17 175:25 179:25 226:20 226:22 240:10 240:14 |
| dragging(1) 220:5 drawing(2) 38:18 38:25 drew(1) 49:24 drive(2) 171:24 173:5 driven(11) 51:18 52:4 52:6 52:23 54:7 57:8 58:25 60:11 60:13 60:19 61:3 | | elaborated(1) 20:19 elan(1) 27:2 elected(1) 119:5 electronic(2) 1:47 242:13 elements(2) 81:1 208:6 eliminated(2) 156:15 163:4 elliott(2) 136:22 202:15 eloquently(1) 200:22 else(12) 23:5 40:2 61:22 65:19 91:2 91:3 91:5 91:6 105:19 161:7 194:23 199:8 | | entering(2) 159:25 238:12 enterprise(7) 21:15 87:11 88:22 89:14 230:20 230:21 230:22 entire(10) 32:20 58:24 99:25 118:24 119:2 121:15 138:4 192:22 208:7 216:14 entirely(6) 35:11 115:15 126:25 178:9 184:8 233:11 | | |
| driver(2) 53:16 55:3 drivers(1) 53:18 drives(1) 55:6 drops(2) 215:21 215:22 due(2) 148:24 155:22 duplicate(2) 117:5 192:1 duplication(3) 150:25 151:4 189:16 duplicative(22) 112:5 142:1 142:19 142:23 143:8 143:14 143:17 143:22 148:20 148:22 179:21 180:20 187:19 187:21 188:7 189:24 190:4 190:16 226:5 240:12 240:15 240:25 | | elsewhere(2) 106:10 111:6 email(1) 85:7 emanuel(1) 9:25 | | entirety(1) 233:21 entities(22) 94:15 94:15 94:17 100:2 110:10 133:20 139:19 142:15 152:10 153:15 154:14 155:8 156:4 156:8 156:10 158:13 158:25 159:12 161:10 165:25 165:25 166:2 entities."(1) 176:5 entitled(17) 57:1 58:6 71:14 88:6 96:7 96:7 106:24 135:16 135:17 135:25 136:2 144:12 152:11 155:11 161:5 164:19 239:18 | | |

| Word | Page:Line |
|------|-----------|

estates'(1) 169:13
esteemed(1) 217:1
esther(1) 10:17
estimate(6) 37:14 37:15 188:16 188:17 188:21 189:3

estimated(5) 37:12 40:3 40:9 203:21
estimation(3) 39:1 188:18 189:10
european(1) 179:25
evaluated(1) 109:4
evaluating(1) 123:20
even(31) 15:9 37:23 51:22 52:19 55:12 58:11 73:9 76:12 84:18 85:15 91:9 92:10 99:4 99:23 103:7 111:3 117:16 126:6 131:20 132:10 144:21 162:11 168:2 174:4 185:7 191:24 197:4 220:1 220:23 227:6 236:1
event(4) 48:24 57:3 148:10 166:9
events(1) 78:13
ever(10) 20:7 20:10 115:23 157:8 186:9 194:11 197:19 218:16 225:2 236:22

every(16) 39:24 45:15 51:21 52:1 122:16 132:23 134:14 148:6 149:1 149:7 149:13 150:13 155:7 198:5 211:16 218:7

everybody(9) 46:16 97:22 112:15 112:22 170:24 171:1 194:21 194:23 231:25

everybody's(2) 112:11 235:19
everyone(12) 12:5 49:3 77:22 114:12 152:16 194:7 199:8 207:7 210:9 212:25 213:1 242:3
everything(4) 65:12 138:17 157:9 221:6
evidence(56) 20:10 21:8 23:13 23:17 23:21 39:20 40:15 42:13 42:21 42:25 80:25 81:5 87:13 87:16 87:24 94:23 102:12 109:2 117:11 117:17 117:22 119:7 119:9 120:14 121:24 127:25 129:14 129:18 130:9 130:12 132:2 132:3 132:25 135:23 136:1 172:1 172:5 174:1 176:16 177:7 178:9 197:13 197:24 199:24 200:10 204:8 209:10 209:10 209:13 228:14 231:20 232:3 232:6 235:9 236:23

evidence."(1) 129:20
evidentiary(6) 178:19 197:16 197:17 197:18 197:19 199:10

eviscerating(1) 231:6
exact(6) 31:14 33:10 76:3 159:4 164:8 225:1

exactly(20) 29:25 30:10 31:9 52:24 54:1 54:2 56:18 60:4 60:6 75:17 103:20 120:5 120:16 120:21 125:24 138:20 143:5 197:11 224:7 237:12

examination(2) 81:21 120:2
examine(1) 121:24
example(16) 25:9 27:12 32:23 34:13 35:12 79:19 81:3 144:11 164:6 164:12 164:19 164:23 173:18 188:16 188:19 188:23

examples(3) 34:7 34:11 223:25
except(2) 15:22 53:1
exception(5) 143:25 144:1 144:6 144:17 145:8

exceptional(4) 41:20 101:7 131:21 132:6
exceptions(4) 82:15 86:20 141:16 145:9
exchange(2) 2:40 129:16
exclude(4) 75:25 76:4 122:14 217:20
excluded(7) 25:14 81:5 82:15 100:3 164:9 224:7 225:23

excluding(7) 70:20 182:8 215:20 215:24 217:22 234:4 234:5

exclusion(1) 73:25

exclusively(1) 230:25
excuse(3) 53:25 71:16 127:21
exercise(7) 54:13 60:2 127:23 128:23 131:21 132:4 132:18

exercised(1) 42:17
exercises(1) 182:17
exercising(1) 135:3
exhaustive(1) 199:11
exhibit(7) 122:12 122:21 125:14 125:17 126:2 159:15 159:15

exhibits(3) 19:19 218:4 218:13
exist(4) 52:14 133:24 186:16 186:19
exist."(1) 186:18
exists(2) 172:8 237:5
expect(8) 14:16 15:10 17:11 17:16 63:16 140:3 192:6 205:10

expectation(2) 58:7 140:7
expectations(12) 14:10 51:18 51:18 52:4 52:8 52:16 91:25 122:1 122:22 167:25 236:14 236:18

expected(4) 52:16 140:4 200:24 203:20
expecting(1) 112:24
expedited(2) 80:3 93:7
expediting(1) 110:25
expense(7) 59:18 99:20 222:23 225:7 225:8 225:11 239:17

expenses(5) 99:6 100:3 100:5 168:23
expert(13) 20:12 21:1 22:25 24:18 119:1 119:7 122:5 161:11 176:18 178:7 184:21 185:11 228:11

experts(4) 177:12 179:9 228:12 232:10
explain(2) 32:11 133:16
explained(2) 64:6 120:18
explicit(2) 148:2 155:15
explicitly(2) 154:2 162:2
explore(1) 54:14
exposed(1) 44:22
express(3) 157:11 191:21 192:12
expressed(4) 27:7 127:4 131:25 189:22
expressing(1) 169:8
expressly(3) 24:12 25:9 141:11
extensive(3) 40:7 195:11 197:19
extensively(2) 14:18 219:22
extent(16) 15:14 15:16 25:16 27:4 40:7 106:8 112:4 173:18 180:22 180:23 187:18 190:7 190:13 190:22 192:25 229:18

extinguished(1) 182:7
extraordinary(2) 52:13 192:13
extreme(2) 126:20 183:14
extremely(3) 118:20 187:8 195:25
extremes(1) 73:12
exxon(1) 117:19
f.2d(1) 238:24
fa's(1) 70:17
face(3) 39:21 50:1 68:4 69:14
faced(1) 21:16
facilitate(2) 44:16 212:23
fact(69) 16:22 16:24 18:20 20:11 21:3 21:7 21:16 21:22 22:20 24:17 30:1 31:1 58:25 66:16 88:4 88:9 90:12 102:14 102:20 107:4 118:22 126:17 133:14 133:18 134:19 134:20 140:9 140:12 144:12 144:20 144:22 146:5 148:1 148:3 151:11 152:12 154:5 154:21 155:1 155:4 155:9 158:17 161:24 165:5 168:1 174:2 179:12 186:5 186:9 186:21 187:21 197:5 209:21 211:6 211:25 217:25 219:1 220:21 221:15 222:7 225:12 226:21 229:3 230:4 233:22 233:24 236:17 236:19 237:4

factors(5) 44:3 44:23 52:12 103:11 125:5

facts(9) 60:12 124:8 124:10 129:11 132:12 132:18 171:16 174:8 186:2

factual(5) 17:23 89:23 160:3 165:1 178:18
factum(11) 118:24 129:1 129:2 129:6 154:19 163:9 163:11 175:6 177:25 178:6 201:18

fagen(1) 6:40
fail(1) 195:9
failed(1) 81:6
failing(2) 131:18 131:18
fails(2) 124:24 212:21
failure(3) 42:12 42:25 104:16
fair(10) 15:18 25:17 81:18 99:10 106:22 176:14 185:21 194:21 231:22 237:24

fairly(2) 45:13 96:15
fairness(3) 73:11 197:12 205:5
fall(6) 26:12 26:16 26:17 196:3 217:16 217:17

fallacious(1) 169:11
fallacy(3) 170:6 232:22 232:24
fallen(1) 60:5
falls(4) 7:13 117:18 179:17 179:18
familiar(3) 37:13 43:7
family(1) 116:5
far(12) 36:21 46:15 66:5 68:25 76:21 114:19 114:23 203:16 203:19 203:22 206:6 222:14

far-worse(1) 52:19
farallon(1) 11:12
fared(2) 203:16 203:19
farr(3) 5:31 6:29 166:23
fascinating(1) 125:15
fashion(1) 93:10
fashioned(1) 44:22
fashioning(1) 52:21
fast(1) 221:3
faulty(1) 23:20
favor(6) 21:4 79:4 131:22 178:25 206:14 209:23

favorable(1) 205:10
favoring(1) 77:6
fear(3) 150:22 189:24 190:19
feature(4) 177:17 183:10 183:11 225:19
federal(1) 173:16
feed(4) 19:5 68:14 69:9 205:23
feedback(2) 15:20 15:23
feel(4) 114:25 196:14 197:7 238:9
fees(6) 34:13 59:18 59:19 99:22 99:24 127:6 127:7 225:18 225:19 239:21

feld(3) 4:13 6:39 50:11
fell(1) 118:5
felt(2) 196:11 199:24
fertile(1) 62:8
few(10) 14:22 58:20 61:18 66:24 93:14 93:22 117:4 119:19 156:3 183:17

fiddle(1) 145:24
fiduciaries(1) 147:15
fiduciary(2) 121:22 226:21
field(1) 147:13
fifteen(2) 77:20 194:3
fight(3) 127:19 226:21 226:23
figure(3) 73:2 92:18 135:13
figures(2) 91:18 91:19
file(4) 93:18 180:12 219:18 239:14
filed(17) 14:13 68:12 68:24 93:20 118:24 118:25 154:19 154:21 163:11 176:19 176:22 177:1 177:1 177:6 180:11 220:21 238:17

filing(2) 165:19 177:14
fill(1) 169:19
filling(1) 121:14

final(9) 35:17 74:24 76:9 80:7 161:1 161:11 161:20 165:14 188:18

finality(2) 101:16 101:18
finally(6) 46:7 182:24 183:12 186:11 210:6 232:14

financial(7) 2:14 72:15 83:2 86:25 142:10 143:6 225:18

financials(1) 72:16
find(6) 41:22 66:19 73:11 73:11 177:17 228:16

finding(5) 14:5 121:12 144:20 147:23
findings(1) 174:24
fine(14) 13:10 65:1 77:9 77:17 77:19 85:3 85:10 85:11 114:6 115:1 174:23 194:1 194:3 227:17

finish(2) 196:21 229:25
finished(2) 76:14 132:20
firm(3) 50:15 201:7 202:16
firmly(1) 53:15
first(35) 18:12 35:14 45:16 47:10 50:22 50:23 63:6 83:20 85:12 86:19 94:4 94:12 104:18 113:20 117:6 117:7 128:1 133:10 141:5 145:18 148:17 153:13 154:12 155:21 157:8 159:5 167:14 169:11 188:14 207:24 216:23 233:3 239:2 239:7 240:4

fit(1) 169:2
fits(1) 92:19
five(9) 36:6 58:23 60:17 112:1 112:19 131:12 140:8 203:2 221:5

five-part(1) 130:1
fix(17) 17:16 24:8 28:7 28:8 28:15 28:22 28:25 29:14 29:15 63:21 105:9 107:7 107:8 108:6 204:22 214:1 234:16

fixed(4) 63:20 168:12 229:20 229:20
fixes(1) 29:9
flatter(1) 241:19
flavor(1) 70:12
flaws(2) 169:2 199:1
fleming(1) 10:37
flexible(1) 119:21
flipped(1) 60:11
floated(1) 171:18
flom(2) 5:14 6:23
flood(1) 88:1
floor(2) 1:28 4:8
florence(1) 242:18
flow(2) 93:12 99:3
flowed(1) 203:22
flows(3) 53:14 103:5 215:19
focus(5) 118:12 121:17 121:20 121:21 145:15

focused(4) 73:22 122:18 215:11 215:12
folks(3) 13:6 69:25 76:18
follow(2) 55:2 172:3
followed(2) 52:5 74:14
following(5) 50:22 163:10 176:20
follows(1) 103:12
footnote(17) 66:9 74:25 75:3 75:4 75:8 75:18 94:13 95:21 97:21 105:17 159:1 159:3 159:5 184:21 184:22 185:10 201:21

footnotes(3) 184:21 184:23 184:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**for**(301) 1:2 1:25 2:4 2:23 3:1 3:25 3:31
3:47 4:5 4:12 4:29 5:4 5:12 5:14 5:24
5:40 6:3 6:16 6:16 6:21 6:23 6:28 6:33
6:38 6:43 7:4 7:28 7:33 7:38 7:43 8:4 8:9
9:4 9:8 9:13 9:18 9:24 9:29 10:4 11:4
12:8 13:18 14:3 14:13 14:11 14:15 14:25
15:18 15:22 17:3 17:20 18:23 22:23 23:4
25:9 26:6 26:7 27:3 27:9 27:12 29:3 29:5
30:14 30:18 30:22 30:23 31:13 32:3 32:6
32:19 32:23 34:3 34:13 34:15 34:16 34:19
34:20 34:21 35:12 35:18 36:6 36:19 37:14
37:15 38:17 38:22 38:25 40:8 44:11 44:20
44:22 45:6 45:8 45:15 45:22 45:24 46:3
46:8 46:25 47:3 47:9 47:13 47:16 47:23
48:1 48:9 48:23 48:23 49:3 49:7 49:12
49:22 50:11 50:16 50:21 50:21 51:9 51:17
51:25 52:12 52:18 52:24 52:25 53:9 53:12
53:25 54:3 54:14 55:4 55:18 55:19 55:21
55:25 56:1 56:4 56:22 57:2 57:4 58:9
58:14 59:1 59:2 59:2 59:24 61:1 61:14
62:12 62:13 62:14 63:4 63:15 64:6 65:7
65:12 65:12 66:4 66:22 66:22 66:24 67:24
69:21 69:21 70:9 71:3 72:3 73:10 76:14
77:6 77:8 77:18 78:17 78:19 78:22 79:19
79:22 80:2 80:12 81:6 81:18 81:19 83:12
85:7 85:14 86:12 86:13 86:14 86:19 87:9
88:1 88:1 88:5 89:16 92:4 92:14 93:7
93:15 97:25 98:25 99:14 99:16 100:5
100:8 100:14 101:18 102:7 102:14 102:18
102:19 102:21 104:17 104:23 105:15 107:3
107:18 108:2 108:24 109:23 110:25
111:23 112:15 112:22 112:24 116:9 116:13
116:15 117:8 118:19 118:20 120:17 121:7
121:18 121:22 122:17 122:25 123:17
124:12 124:24 126:4 126:5 126:21 126:22
127:3 129:20 130:1 130:1 130:14 130:16
131:19 132:11 132:19 133:1 133:10 133:11
133:17 133:19 134:3 134:14 134:7 134:13
134:15 134:16 134:22 136:1 136:3 136:7
136:8 136:13 136:20 136:23 136:23 137:2
137:2 138:17 139:18 139:19 141:5 141:9
141:16 141:17 141:20 141:21 142:3 142:9
142:13 142:17 142:20 143:1 143:2 143:12
143:15 143:20 143:24 144:1 144:7 144:10
144:11 144:17 145:13 146:4 146:7 146:11

**for**(208) 146:15 147:10 148:15 148:19
148:24 149:3 149:24 150:5 150:8 151:5
152:2 152:15 152:20 154:11 154:16 154:22
154:25 155:16 155:20 156:14 157:15
158:25 159:15 159:13 159:15 160:19 160:20
161:17 162:11 163:17 164:3 164:6 164:6
164:9 164:19 164:22 164:23 166:3 166:4
166:22 167:9 167:19 168:3 168:20 170:18
170:19 171:22 171:22 171:23 172:5 172:6
175:20 176:9 176:10 177:19 177:21
177:23 178:2 178:13 179:3 179:16 180:5
182:10 182:18 182:23 182:25 183:14
183:20 184:7 184:25 185:1 185:8 185:20
186:23 187:1 187:10 187:11 187:22 187:24
188:5 188:13 188:15 188:17 188:18
188:18 188:23 189:5 189:5 189:7 189:8
189:23 190:13 190:17 190:17 191:18
191:25 192:13 192:16 193:7 193:22 195:1
195:3 195:4 195:18 196:25 197:24 198:10
200:8 200:14 201:2 202:8 202:17 202:22
203:9 203:20 204:6 205:13 206:17 207:10
207:23 208:1 208:5 208:17 208:21 208:25
209:9 209:18 209:20 210:4 210:10 210:16
211:5 211:16 211:19 213:8 213:18 213:20
216:9 216:12 216:16 216:24 217:1 217:8
217:11 218:19 219:14 219:18 220:10
220:11 220:16 221:5 221:25 222:6 222:11
222:16 222:23 223:1 223:4 223:23 225:10
225:10 225:22 225:24 226:9 226:9 227:17
227:19 227:20 227:25 228:3 229:12 230:11
230:16 232:11 232:22 234:16 235:14
236:2 236:9 237:8 237:10 237:17 237:17
238:3 238:13 238:13 238:15 238:17 239:1
239:2 239:6 239:13 240:18 240:20 241:5
242:3

**forbid**(1) 118:16
**force**(1) 93:16
**forces**(1) 75:16
**forego**(1) 174:17
**foregoing**(1) 242:12
**foreign**(1) 148:3
**forensic**(1) 182:17
**forfeited**(1) 37:20
**forget**(3) 80:25 93:19 234:11
**forgot**(1) 201:5
**form**(8) 139:24 151:4 158:25 162:16 168:2
196:4 197:9 198:10

**formal**(3) 137:25 139:16 139:18
**formally**(3) 150:13 206:23 206:23
**format**(1) 152:2
**formed**(3) 68:10 68:23 82:25
**former**(3) 69:17 69:19 71:21
**forms**(1) 163:8
**formula**(3) 44:24 188:9 208:25
**formulation**(2) 85:14 92:14
**forth**(6) 74:12 122:11 146:1 147:9 210:14
217:5

**forum**(2) 11:28 102:13
**forward**(14) 16:14 37:16 48:25 78:14
111:7 127:9 136:10 136:18 137:6 140:2
140:20 140:25 142:19 153:20

**found**(5) 55:12 55:13 105:14 229:3 232:2
**founded**(1) 57:9
**four**(5) 14:24 51:19 58:22 60:17 134:11
**fox**(1) 2:5
**fractured**(1) 52:18
**frame**(1) 81:1
**france**(4) 168:4 190:7 190:9 203:1
**francisco**(1) 3:28
**frankly**(18) 24:22 31:10 79:12 83:3 95:23
117:23 135:7 135:9 142:21 145:23 147:19
149:8 154:7 173:5 173:13 174:14 219:11 225:5
225:16
**fraud**(4) 117:16 147:25 226:16 227:2

**fraudulent**(2) 146:10 150:21
**fraudulently**(1) 152:23
**fray**(1) 168:2
**fred**(2) 4:14 50:11
**freehills**(1) 2:38
**freemantle**(1) 7:17
**french**(6) 53:4 134:16 136:15 136:20
137:1 202:22

**frequent**(1) 177:17
**friedman**(1) 8:10
**friend**(3) 42:1 226:12 226:13
**friendship**(1) 226:14
**from**(137) 12:24 16:9 24:24 24:25 25:6
26:3 33:4 35:8 45:12 45:15 45:17
47:5 47:6 51:2 53:14 56:1 59:14 60:13
64:12 65:11 68:14 68:19 69:16 69:22 70:3
70:21 72:3 72:7 72:22 73:3 73:6 73:11
73:17 73:25 75:25 76:4 77:13 77:23 83:12
89:9 91:21 91:25 92:23 94:1 94:13 97:17
97:18 99:1 99:3 103:5 103:7 103:12 104:6
108:7 108:8 108:9 110:6 113:2 114:11
115:11 117:5 119:12 120:19 124:21 125:23
133:9 134:20 135:9 137:1 142:4 142:18
146:16 146:18 150:3 150:3 152:12 164:13
164:20 164:24 165:12 165:24 166:11
166:23 168:6 172:11 173:8 182:9 183:16
185:14 187:2 187:23 188:22 193:17 194:6
195:14 196:10 196:14 196:17 197:25
200:24 202:7 202:14 202:23 203:22 207:5
208:10 208:11 210:1 212:11 214:4 214:18
214:23 215:19 216:10 217:6 217:24 219:13
221:6 221:23 222:14 222:20 225:3 224:8
224:17 226:11 226:12 227:10 228:6 233:21
234:5 236:5 236:17 238:20 240:3 241:25
242:13

**front**(2) 135:13 168:13
**fsd**(15) 60:24 142:13 142:18 180:17
180:20 190:1 190:9 190:15 228:2 228:19
228:25 229:20 229:23 237:13 240:12
**fsds**(5) 179:20 179:25 227:25 240:7 240:12
**fsd's**(1) 150:25
**full**(16) 31:4 46:9 57:1 57:25 58:8 58:12
60:20 61:11 80:13 91:4 171:4 171:22
189:8 195:21 208:20 230:14
**fully**(12) 18:18 46:7 95:20 119:10 123:19
131:16 190:2 190:5 207:20 208:11 222:10
232:20
**function**(1) 146:17
**fund**(4) 8:5 9:20 156:5 191:8
**fundamental**(6) 82:14 108:12 129:10
129:12 141:18 141:25
**funded**(1) 69:4
**funding**(1) 179:13
**funds**(25) 71:14 71:22 76:7 88:22 89:14
127:8 155:21 155:23 155:23 156:5 156:21
157:1 160:15 160:17 162:15 183:20 184:6
184:9 184:11 185:8 185:9 185:9 230:17
230:20 230:23

**further**(31) 24:19 43:15 74:2 85:15 90:18
96:18 96:25 97:10 97:16 98:7 98:23 99:5
103:22 115:24 119:14 129:20 130:8 130:12
138:25 149:4 176:17 179:22 180:4 180:18
190:21 195:5 204:23 220:5 230:15 237:22
241:3

**future**(5) 48:24 146:10 191:9 210:12 223:2
**fuzzy**(1) 83:7
**gadsden**(1) 8:14
**gallagher**(3) 5:31 6:29 166:23
**game**(1) 81:18
**games**(2) 65:16 65:19
**garden**(1) 63:6
**gates**(1) 88:1
**gather**(1) 137:16

**gave**(4) 21:18 101:19 198:10 224:22
**geared**(1) 201:15
**general**(15) 24:24 35:9 59:22 85:18 121:23
142:6 144:2 145:8 148:5 171:7 171:10
171:23 208:13 218:10 235:18

**generalized**(1) 89:18
**generally**(3) 15:8 167:2 218:9
**generated**(1) 60:9
**gentle**(1) 62:9
**gentlemen**(2) 134:11 134:21
**genuine**(1) 101:17
**geographical**(1) 110:8
**george**(3) 6:24 42:6 42:7

**get**(74) 13:6 16:13 19:22 22:8 22:16 22:22
28:14 28:18 31:3 31:8 31:11 31:12 32:19
34:5 35:9 36:10 43:14 50:20 51:6 51:13
55:24 56:1 57:22 58:2 59:5 63:8 71:10
71:24 71:24 74:5 78:20 91:22 99:8 112:12
116:16 117:1 126:7 126:23 129:8 130:18
136:16 138:5 141:21 149:5 168:11 189:7
197:3 197:14 198:2 210:10 212:2 214:12
215:19 219:2 219:9 219:9 220:19 222:4
224:15 225:24 227:17 229:18 229:25
232:14 233:23 233:25 234:1 235:3 236:4
236:4 236:20 237:7 239:1 241:18

**gets**(10) 35:11 55:22 135:17 136:16 149:2
158:10 199:15 219:20 222:21 226:16

**getting**(22) 15:23 27:25 30:19 31:1 31:2
31:3 31:4 54:5 56:16 78:18 122:7 125:8
211:24 211:24 224:17 229:16 234:5 236:17
237:9 237:9 237:18 240:19

**giant**(1) 100:13
**gilboy**(1) 219:12
**ginger**(1) 1:39
**give**(32) 14:21 18:9 19:14 20:7 20:9 22:3
26:23 30:2 31:20 39:22 40:18 73:4 73:6
120:9 125:21 160:19 161:4 163:7 163:10
163:12 164:12 167:3 179:12 188:19 191:11
194:21 212:17 221:10 229:2 234:25 235:1
239:3

**given**(21) 27:6 30:11 52:15 65:5 82:20
83:14 83:14 104:20 123:19 154:3 160:15
163:23 168:22 175:4 176:14 179:6 179:7
181:2 183:21 216:14 224:1

**gives**(1) 76:1
**giving**(6) 14:9 28:22 68:8 198:8 216:8
231:7

**glad**(2) 53:24 54:1
**glanis**(1) 10:41
**global**(3) 9:41 51:22 175:24
**globe**(1) 148:8
**goal**(5) 35:15 52:23 73:10 78:18 196:20
**god**(2) 118:16 123:24
**goes**(11) 23:2 65:18 71:5 97:14 97:17
104:11 143:10 158:8 158:8 188:8 215:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**going**(139) 14:22 16:20 16:24 19:2 19:9 22:17 26:20 26:20 26:22 28:8 28:11 28:25 30:2 30:16 30:20 31:8 33:6 34:14 37:18 38:16 38:16 38:22 38:24 39:18 39:23 41:7 41:12 46:19 48:6 49:4 56:9 56:12 59:1 60:18 62:3 63:10 65:15 66:17 66:2 68:16 74:23 75:6 75:18 75:18 76:2 76:20 80:1 91:22 98:2 100:22 105:15 112:12 112:18 112:24 113:7 113:9 113:14 113:17 114:4 116:16 116:21 117:1 117:5 118:12 118:16 123:4 125:22 125:23 127:2 127:18 129:5 129:15 140:8 140:16 140:16 140:24 143:16 146:10 149:5 150:23 151:15 151:21 152:22 153:9 153:11 153:15 153:20 153:23 153:25 154:12 157:8 157:24 158:15 164:4 175:5 180:24 181:2 181:4 191:24 195:4 195:16 195:16 197:23 198:11 204:12 208:2 208:7 219:7 219:10 219:21 219:22 220:15 220:20 221:3 221:6 224:15 226:4 226:23 227:12 228:1 229:15 229:23 229:24 230:24 233:16 233:16 234:25 235:1 235:19 235:21 235:25 236:3 236:6 236:7 236:7 238:2 238:5 239:3

**good**(59) 12:5 12:6 12:7 12:9 13:13 13:14 13:14 13:16 45:9 45:9 45:10 50:8 50:9 50:10 53:9 62:18 62:19 62:19 68:3 77:25 77:25 78:1 78:3 100:19 100:21 113:2 115:5 115:6 133:8 133:9 138:21 166:20 166:21 166:21 175:3 192:9 194:10 194:11 194:15 194:15 194:16 196:14 196:14 196:17 201:10 201:11 202:4 202:5 202:5 202:13 207:9 207:13 210:21 213:17 214:18 215:7 216:5 241:12 242:4

**goodmans**(1) 3:7
**got**(30) 16:21 32:25 33:1 36:14 42:11 54:2 72:6 74:21 78:5 85:6 114:17 121:6 121:7 159:17 163:2 186:5 192:8 196:19 196:21 200:15 200:17 214:14 219:8 219:9 221:2 222:13 225:1 230:8 234:21 234:22

**gotten**(6) 25:6 30:21 45:15 191:12 191:15 218:14

**gottlieb**(33) 1:32 6:4 14:1 146:12 151:15 152:25 153:7 153:8 157:16 157:19 157:24 158:6 159:16 159:19 159:21 159:24 160:22 160:24 162:18 162:20 162:22 163:2 163:4 163:9 163:20 165:8 165:10 166:13 166:14 166:15 166:17 166:19 223:2

**gottlieb's**(1) 181:6
**goudge**(2) 128:16 128:20
**govern**(1) 169:20
**governing**(1) 231:19
**gracious**(1) 194:20
**grant**(9) 78:25 166:10 172:2 174:16 193:4 195:18 197:10 201:1 233:14
**granted**(4) 27:4 48:3 101:7 219:23
**grave**(1) 132:13
**great**(3) 14:17 25:8 112:13
**greater**(1) 53:9
**greatly**(1) 150:23
**green**(9) 22:24 87:18 87:19 109:10 109:10 109:11 185:11 185:13 230:3

**green's**(8) 23:13 23:17 23:19 87:13 87:16 87:23 88:2 109:2

**greta**(1) 7:13
**grinch**(1) 51:2
**grist**(1) 187:19

**gross**(82) 1:19 12:22 21:14 44:9 45:19 48:9 50:8 52:11 55:4 62:19 64:1 65:3 67:5 68:1 68:3 70:15 77:10 80:16 81:23 88:6 93:1 94:4 95:1 95:16 97:22 100:9 100:20 101:1 112:15 113:8 113:18 114:14 114:19 115:5 133:8 139:7 139:8 139:13 141:22 141:23 142:4 147:22 148:6 150:10 153:9 154:22 155:13 158:2 159:1 161:21 161:25 162:6 163:7 163:10 163:12 163:17 164:25 165:15 166:11 166:21 175:3 175:15 175:22 183:13 185:22 186:22 187:6 187:14 188:5 188:15 189:22 191:17 193:25 194:15 199:3 201:11 202:5 202:13 205:24 212:13 218:23 241:8

**gross's**(3) 94:13 94:25 110:2
**grossly**(2) 20:14 20:17
**gross's**(6) 148:2 150:4 154:20 159:1 181:10 181:18

**ground**(8) 18:1 73:12 82:5 116:16 120:10 169:13 169:22 217:11

**grounds**(4) 17:19 18:7 144:3 209:20
**groundwork**(1) 208:17
**group**(42) 3:25 3:47 5:40 6:43 11:8 11:24 11:32 11:40 32:1 32:2 32:22 33:13 35:8 54:9 69:21 69:22 81:8 96:16 96:18 96:19 96:22 97:1 98:24 110:9 123:22 126:4 136:8 152:5 160:8 161:8 165:12 202:24 203:15 210:9 222:21 222:22 234:18 234:21 234:22 234:22 237:7

**grouped**(1) 94:22
**grouping**(2) 110:10 165:2
**groupings**(1) 154:14
**groups**(33) 27:15 31:2 31:3 31:25 32:2 35:5 64:5 93:24 94:23 95:15 96:14 97:5 97:18 98:19 98:19 99:12 99:13 110:18 123:17 124:4 151:17 151:18 151:22 152:4 155:6 159:12 218:19 221:19 223:1 234:18 234:22 237:6 237:7

**guarantee**(48) 46:7 56:17 56:19 57:2 57:25 58:8 60:21 61:8 65:11 70:21 71:4 71:7 71:9 72:8 72:11 72:12 74:6 75:14 76:5 81:13 82:18 85:18 86:21 87:21 103:17 119:17 142:9 143:24 145:6 167:16 172:10 175:8 178:12 179:17 179:17 179:19 181:1 189:6 189:11 215:17 215:20 215:24 228:9 235:19 237:12 237:16 240:10

**guarantee-type**(1) 240:18
**guaranteed**(6) 28:12 31:13 45:25 81:11 126:14 234:20
**guarantees**(13) 72:17 72:25 73:4 73:14 75:24 102:20 103:4 119:24 120:18 120:12 121:11 122:9 179:13

**guarantor**(1) 58:10
**gue's**(3) 57:21 58:2 91:22
**gues**(5) 51:16 51:22 52:18 52:24 126:7
**guess**(2) 13:3 174:10
**guidance**(3) 159:8 196:24 221:10
**guise**(2) 36:20 154:8
**gulf**(1) 23:4
**gump**(3) 4:13 6:39 50:11
**guy**(3) 115:8 122:8 122:8
**guyder**(1) 3:20
**habbu**(1) 10:45

**had**(76) 15:7 19:18 19:18 21:16 22:3 23:24 37:23 43:18 45:17 47:2 47:23 48:14 50:4 50:6 55:14 63:12 76:18 92:1 92:16 97:22 114:23 118:13 118:14 122:16 126:17 137:18 144:11 151:22 161:3 161:4 161:10 161:13 165:17 165:24 166:3 169:2 170:8 170:13 170:24 171:1 172:4 172:17 173:11 173:22 175:4 180:24 184:3 184:4 185:6 186:2 189:22 190:9 190:19 198:7 198:19 198:20 198:23 199:5 199:25 200:7 210:24 230:12 230:22 230:23 230:25 231:2 235:16 235:17 238:15 241:21

**hadley**(2) 3:48 6:44
**hadn't**(2) 111:22 222:10
**hain**(1) 11:8
**halcyon**(1) 8:9
**half**(2) 221:25 236:7
**half-an-hour**(1) 167:1
**half-day**(1) 140:5
**hall**(1) 3:18
**hamilton**(3) 1:32 6:4 14:1
**hand**(19) 42:8 53:15 81:9 82:15 90:21 90:23 90:25 94:16 94:18 108:1 119:6 135:8 151:15 152:24 160:18 179:7 179:8 187:23 213:20
**handed**(1) 69:10
**handful**(1) 207:21
**handle**(1) 167:20
**handled**(1) 59:16
**hang**(2) 100:10 215:5
**hannah**(1) 7:7
**happen**(9) 36:9 99:15 100:14 150:24 158:14 209:1 219:25 219:25 220:1

**happened**(7) 36:9 50:2 90:6 122:23 196:9 197:11 203:5

**happens**(2) 56:17 83:4
**happy**(2) 35:16 160:18
**hard**(5) 27:9 167:5 221:23 222:8 238:3
**harder**(1) 117:16
**harm**(1) 83:21
**harmed**(1) 85:19
**harped**(1) 197:22
**harris**(2) 7:21 134:11
**harrisburg**(1) 1:43
**has**(122) 17:23 18:3 18:5 24:15 24:22 28:2 31:7 32:7 32:15 33:2 33:22 34:6 34:6 38:2 39:24 42:24 43:3 47:8 49:11 53:8 55:23 56:25 62:25 65:10 66:22 69:3 79:11 86:11 91:7 94:1 98:24 99:7 99:11 99:12 102:5 104:24 105:6 107:4 108:24 109:16 109:18 110:3 110:20 112:15 116:21 125:16 127:13 128:4 128:14 129:18 130:14 130:16 131:23 131:24 132:9 132:18 132:21 132:22 133:25 134:18 136:12 136:19 136:19 139:23 142:15 142:24 143:9 150:21 151:11 151:16 153:18 154:7 155:22 159:6 164:5 164:7 164:11 164:13 174:1 180:17 181:14 190:23 191:1 191:2 196:8 197:22 198:4 199:3 199:8 201:7 203:14 203:16 203:19 209:13 211:2 211:6 212:25 217:7 217:12 217:24 218:16 219:6 219:11 219:20 223:6 226:3 227:15 228:3 228:17 229:1 229:3 229:10 231:25 233:17 233:22 235:10 236:20 236:22 237:4 237:7 237:8 238:21

**hasn't**(2) 100:15 225:4
**hasn't**(2) 149:13 150:13
**hat**(1) 215:5
**hauer**(3) 4:13 6:39 50:11

**have**(301) 13:4 14:12 14:17 14:20 15:24 17:1 17:17 17:24 20:11 20:17 20:20 20:25 21:8 21:19 21:21 22:15 24:23 25:7 25:7 27:13 28:12 29:1 29:10 29:19 29:23 30:1 30:4 30:10 30:11 30:15 30:16 32:16 32:22 33:6 33:18 34:4 34:15 34:23 35:1 35:6 35:16 36:5 36:13 37:11 38:21 39:11 39:17 39:23 40:1 40:5 40:9 40:13 40:14 40:23 40:25 41:13 41:17 41:18 42:23 43:2 43:5 43:14 44:8 44:13 44:24 45:14 47:7 47:14 47:23 48:11 48:11 48:12 48:23 49:1 49:17 49:24 52:11 52:19 52:22 53:2 54:25 55:4 55:16 57:7 57:12 59:20 60:4 60:10 60:25 62:4 62:9 62:10 62:13 62:24 63:16 64:8 64:8 65:9 65:17 66:1 66:1 66:4 66:17 66:17 66:21 66:21 69:13 69:17 69:18 69:23 69:24 70:12 70:17 71:11 71:12 71:19 72:23 73:16 73:21 73:22 76:24 77:10 78:11 78:17 79:1 81:5 83:2 83:21 85:13 86:2 88:21 89:13 89:15 89:18 89:25 90:3 90:17 90:18 91:2 92:6 93:25 94:2 94:23 96:23 97:5 98:3 98:15 99:6 101:6 101:17 102:6 102:12 104:11 104:20 104:25 105:2 106:9 110:18 111:25 112:2 112:4 112:6 112:12 112:20 112:21 112:24 114:23 116:23 117:1 117:22 117:25 118:17 120:7 120:25 123:9 123:10 123:25 126:14 127:1 127:10 128:21 128:25 129:11 129:22 130:2 132:2 132:3 132:15 132:17 133:11 133:16 133:23 134:5 134:6 134:12 134:20 134:24 135:3 135:10 135:19 136:8 136:11 136:17 137:8 137:16 137:19 137:22 138:4 138:7 138:22 138:23 138:24 139:14 139:19 141:4 142:12 143:18 143:21 145:14 145:16 145:18 145:19 146:14 146:11 147:14 148:6 148:15 148:23 149:10 149:15 150:19 151:2 152:8 152:18 154:3 154:24 155:14 155:17 158:12 159:22 160:11 160:12 160:25 162:25 164:15 164:18 165:10 166:24 167:11 168:2 170:9 170:19 172:02 171:10 171:21 172:19 172:20 173:2 176:10 176:15 179:3 182:4 182:6 182:9 182:10 182:18 183:4 186:12 187:2 187:15 188:6 188:8 188:11 188:22 189:6 189:9 190:3 191:12 191:15 191:20 191:21 192:11 193:6 193:14 193:16 193:20 193:21 194:20 195:24 195:18 195:23 196:4 196:6 196:7 197:1 197:19 198:1 199:2 200:2 200:20 201:12

**have**(89) 201:21 201:25 203:22 203:23 204:13 204:20 205:16 206:6 207:19 208:5 208:18 209:4 209:13 209:18 209:22 211:2 211:19 212:1 212:1 212:4 213:1 213:7 213:9 213:25 214:2 214:12 214:25 215:1 215:5 216:13 216:23 218:1 218:13 218:14 219:7 219:10 219:21 219:24 219:24 220:21 221:7 221:9 221:18 221:23 222:19 222:22 222:25 223:3 224:4 224:23 225:1 225:15 225:16 225:20 226:5 226:14 227:5 227:6 227:15 227:20 228:1 228:1 228:18 228:19 228:21 230:18 231:2 231:7 231:14 231:15 232:10 233:16 233:24 234:1 234:12 234:17 234:19 235:4 235:9 235:11 235:13 235:16 235:22 236:2 236:5 236:10 237:22 239:4 241:14

**haven't**(6) 48:14 76:18 98:12 229:7 231:4 234:10

**haven't**(6) 114:17 117:10 117:12 130:11 131:3 159:17

**having**(15) 34:3 43:11 44:17 56:1 103:21 103:22 116:19 134:22 149:5 149:6 167:22 191:23 191:24 216:10 221:25

**hbk**(1) 9:37
**he'll**(1) 85:8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| he's(6) 40:19 85:2 107:18 221:18 240:16 240:23 | | his(29) 23:21 42:19 50:3 80:25 83:24 84:2 84:3 84:20 85:8 92:13 92:15 92:19 120:4 121:2 122:8 129:11 145:20 161:13 163:8 184:25 189:22 192:21 198:10 218:6 221:18 221:25 225:9 228:13 230:11 | | hoped(1) 83:12 hopefully(5) 14:25 15:5 16:13 166:25 hoping(1) 220:24 hour(1) 111:25 hours(1) 206:4 house(1) 2:40 | | illustrative(4) 105:5 119:11 119:13 120:10 imaginary(1) 146:18 imagine(1) 27:9 impact(47) 4:8 70:16 71:13 71:20 83:15 88:21 89:13 89:25 121:13 203:14 204:19 217:20 230:19 236:6 |
| head(2) 159:14 159:21 healthiest(1) 54:19 healthy(1) 74:4 hear(51) 13:5 13:10 19:6 23:11 23:14 30:5 30:7 49:3 51:3 61:23 61:24 62:5 66:7 68:17 68:17 68:18 68:18 68:25 69:9 72:11 73:19 74:8 80:9 86:4 91:13 94:5 94:7 98:10 99:4 101:1 113:2 114:15 116:1 116:2 129:14 145:3 146:21 167:5 168:13 188:21 195:16 195:17 196:21 198:15 207:11 214:20 214:21 216:3 220:7 220:9 238:3 241:8 | | | | how(65) 16:21 19:2 19:10 31:25 32:11 32:13 38:1 43:1 53:11 53:21 55:6 59:15 68:19 73:8 73:13 74:9 75:25 77:18 81:15 83:11 88:2 91:14 91:15 91:24 91:24 94:2 96:3 96:4 96:10 100:2 101:13 103:8 103:16 107:6 107:9 107:22 111:5 112:23 113:3 113:20 114:9 127:24 128:23 135:10 135:17 135:17 135:20 138:10 151:22 160:7 172:4 172:10 177:24 192:5 198:11 198:11 198:24 199:1 220:18 221:23 223:5 224:3 224:25 225:1 225:3 | | impacted(1) 70:23 impacting(1) 125:5 impaired(2) 53:5 76:10 imperative(1) 129:19 implement(8) 31:21 34:24 36:16 38:10 79:24 167:25 227:9 227:14 implementation(1) 199:1 implemented(4) 36:11 187:17 198:12 199:2 implements(1) 169:5 importance(1) 108:18 important(19) 14:18 51:5 54:18 64:16 79:6 79:15 87:19 96:12 98:25 100:10 108:20 120:22 121:8 131:5 131:6 157:10 179:8 187:9 201:6 |
| heard(48) 51:5 56:24 59:14 64:8 97:6 98:3 112:3 117:10 117:12 117:13 130:11 131:3 146:23 147:4 157:8 167:4 171:13 185:14 187:1 188:13 190:2 194:23 195:10 196:2 196:9 202:23 203:5 203:9 205:6 215:4 216:25 218:2 221:13 225:2 225:7 226:11 227:10 228:8 229:7 230:1 230:2 230:12 231:2 231:4 231:7 234:11 234:11 235:13 | | historic(1) 182:9 historical(1) 43:12 44:6 history(2) 21:14 92:7 hit(2) 69:16 70:19 hoc(7) 3:47 5:40 6:43 45:6 67:6 138:6 138:18 | | how's(1) 12:20 however(7) 38:7 72:21 120:3 132:5 169:7 172:16 215:11 | | importantly(2) 92:2 155:21 impose(2) 61:3 142:14 imposed(1) 143:22 imposing(1) 143:7 impossible(1) 104:4 inadvertence(1) 83:17 inadvertent(1) 82:22 inappropriate(3) 36:20 150:10 210:13 inc(5) 1:8 6:4 8:37 11:36 78:3 incentive(1) 78:17 incentives(1) 226:20 incidence(1) 59:20 incident(1) 180:19 incidentally(1) 135:21 |
| hearing(14) 12:11 24:10 61:20 84:6 85:5 99:4 117:17 117:23 140:3 140:4 140:5 157:13 216:14 242:9 | | hodara(29) 4:14 49:18 50:8 50:9 50:10 50:11 51:5 51:9 53:24 54:1 56:10 56:13 59:7 59:10 59:12 60:16 61:25 62:3 62:17 122:1 122:22 130:14 130:16 192:21 207:9 207:10 207:13 208:4 210:19 | | hubbard(3) 2:31 7:12 133:10 hudson(1) 134:11 huffard's(2) 135:24 161:11 huge(1) 229:17 hughes(3) 2:31 7:12 133:10 hundreds(1) 230:22 hunter(1) 2:18 hurdle(2) 129:8 148:11 husband(1) 69:23 hymnal(1) 173:9 hyphenated(1) 90:8 hypothetical(2) 20:13 148:11 hypothetically(2) 32:24 235:15 hysteria(1) 98:5 | | include(6) 55:20 75:13 150:6 162:5 187:4 217:20 |
| hearings(2) 48:15 148:25 heart(1) 54:3 hedge(2) 71:14 71:22 heed(1) 192:25 held(9) 27:13 44:10 69:6 69:8 81:7 166:2 166:6 169:1 228:6 | | hodara's(1) 118:17 hoeffner(17) 5:7 115:3 115:5 115:6 115:10 115:10 115:20 115:21 115:22 116:1 116:2 116:9 116:10 118:4 123:8 127:14 132:20 | | | | included(28) 58:14 59:5 59:17 82:16 105:15 109:9 119:15 161:24 162:1 162:3 163:16 164:7 180:20 180:21 181:13 181:23 182:12 182:18 182:19 183:3 183:5 184:24 185:15 187:22 190:4 190:17 192:2 230:11 |
| hello(4) 73:19 73:19 115:19 153:9 help(2) 138:6 159:22 helpful(5) 15:23 24:13 53:23 95:5 112:22 helpfully(1) 239:18 helping(1) 53:21 her(1) 131:22 | | hogan(1) 6:34 7:34 hold(3) 93:11 99:13 100:4 holder(1) 76:3 holders(4) 51:15 66:4 66:15 69:6 holding(1) 69:7 hole(1) 60:4 | | i'd(5) 37:11 76:23 100:7 213:19 219:24 i'll(24) 14:15 15:17 17:18 18:9 18:10 28:5 35:17 45:23 49:17 56:15 57:14 65:23 66:23 74:23 93:22 112:6 203:17 206:23 207:24 210:6 214:12 217:14 239:16 241:20 | | includes(5) 105:1 143:22 159:3 164:17 239:19 |
| herbert(2) 2:38 7:5 here(96) 12:8 13:7 14:12 14:24 15:23 16:3 16:4 16:12 16:19 17:20 18:7 19:22 30:13 31:1 35:5 37:12 37:15 45:12 51:2 52:14 53:22 55:2 58:5 58:10 66:15 67:19 69:15 75:15 75:17 79:23 83:3 83:4 83:15 84:23 87:7 87:23 90:6 91:11 91:20 98:1 101:22 102:17 103:22 103:24 104:16 108:22 109:7 113:9 113:15 114:7 120:22 121:15 123:1 123:10 124:4 124:11 131:18 133:15 134:24 135:15 139:25 140:22 145:18 150:8 152:9 156:2 156:14 157:25 158:21 165:3 171:14 180:12 187:9 196:4 196:9 197:11 197:14 198:3 198:5 200:4 200:15 202:18 204:18 205:2 205:6 205:23 206:5 209:11 211:16 212:13 213:2 214:1 214:5 219:5 236:1 238:5 | | holistically(1) 233:22 honor(194) 12:7 12:10 12:14 13:9 13:19 14:1 17:6 17:13 18:1 18:10 18:18 19:1 19:8 19:12 20:2 20:13 21:18 22:1 23:10 23:14 23:18 24:3 25:25 26:4 26:10 28:3 28:20 28:24 28:25 30:1 30:1 30:6 30:9 31:10 32:10 32:14 32:14 35:20 36:2 37:22 40:13 41:6 43:13 45:7 45:9 45:9 46:2 45:23 46:3 46:16 46:19 47:4 48:4 48:7 48:16 49:8 49:13 49:18 49:20 49:21 49:23 54:4 56:10 56:13 59:12 60:16 63:9 63:25 64:8 65:3 65:22 66:20 67:2 67:11 68:17 69:2 72:12 78:1 78:5 78:15 79:24 81:19 86:17 87:6 98:20 105:12 106:7 106:12 111:17 112:10 112:18 128:22 129:21 130:13 130:7 131:2 131:6 131:6 131:14 132:1 132:8 132:12 133:2 138:21 146:11 153:8 154:16 155:3 155:6 155:7 157:25 158:16 162:6 162:13 164:25 165:14 168:12 171:17 171:20 171:25 173:6 183:17 185:22 186:7 186:11 186:12 186:22 188:20 189:12 189:18 190:18 192:8 193:8 194:4 194:19 195:15 197:12 198:19 198:13 201:2 201:17 202:3 203:14 204:10 204:18 205:17 205:20 206:2 206:22 207:2 207:9 208:4 210:21 210:23 211:8 211:15 212:6 212:9 212:19 213:1 213:7 213:9 213:13 213:19 214:8 214:11 216:5 218:11 219:1 219:17 220:8 221:20 221:22 223:11 225:25 227:14 229:10 231:23 233:2 235:8 237:11 237:24 238:11 238:25 239:5 239:25 241:4 241:18 | | i'm(84) 16:20 23:15 28:20 32:24 36:24 37:13 37:14 41:9 41:12 43:19 46:19 48:6 50:14 53:24 54:1 54:4 56:6 57:10 60:23 61:19 62:23 62:24 64:22 65:6 65:15 65:18 68:4 68:5 68:9 68:10 68:13 68:16 71:16 71:18 74:23 75:5 75:7 75:6 75:18 76:2 76:14 83:4 84:7 94:6 94:9 104:15 107:14 107:14 110:11 112:17 113:11 202:14 202:18 202:19 204:10 206:14 206:19 207:8 208:7 211:14 212:13 214:21 218:23 218:23 219:2 219:3 219:4 223:16 229:13 233:14 233:15 233:16 234:25 235:1 235:21 235:25 236:3 237:21 238:2 238:5 239:3 239:7 241:10 | | including(9) 71:1 71:1 73:10 81:10 114:21 160:13 179:2 186:17 222:22 inclusion(6) 58:11 61:7 102:19 103:2 181:8 182:25 inclusions(1) 73:24 inclusive(1) 111:4 inconsistent(7) 46:6 47:18 47:20 80:22 189:10 234:15 235:12 incorrect(2) 161:15 173:20 |
| here's(3) 20:11 36:13 59:21 hermann(1) 11:5 herrington(1) 11:4 hessinger(4) 18:2 217:6 217:10 217:24 hessinger's(1) 18:22 he'll(1) 139:12 | | | | i've(16) 15:7 41:1 69:10 74:19 74:21 78:5 85:6 206:4 206:16 214:14 226:15 229:13 241:7 241:10 241:11 241:15 | | increase(2) 108:2 149:4 increasing(3) 121:13 186:23 191:19 incredible(1) 126:25 incredibly(1) 123:11 incurred(4) 56:2 99:24 225:15 239:20 indeed(2) 34:25 152:1 indemnity(1) 152:20 |
| high(12) 79:20 79:22 100:15 101:6 126:9 132:13 132:16 138:8 154:6 196:1 204:15 216:22 higher(5) 51:22 51:25 54:15 225:16 225:17 highest(1) 147:14 highlight(1) 74:2 highlighting(1) 76:6 highly(1) 124:22 hill(1) 134:11 him(6) 20:15 167:10 191:20 199:4 226:13 226:15 hinder(1) 89:21 | | honorable(1) 1:19 honors(32) 13:14 16:8 27:12 35:18 41:11 47:12 47:15 49:17 50:15 50:20 50:24 51:10 57:6 61:5 61:13 62:7 62:13 62:25 64:10 100:7 136:13 172:6 172:24 193:10 194:15 195:10 198:6 199:9 208:24 210:18 213:17 237:3 honors'(1) 141:2 honor's(2) 155:13 159:4 hope(6) 48:8 55:2 112:2 116:16 192:24 192:25 | | i.e(2) 95:3 95:18 idea(10) 39:21 65:17 110:9 135:10 144:9 144:18 200:10 224:23 225:2 225:20 identified(4) 61:6 61:12 81:2 174:1 identify(4) 101:15 101:20 111:9 150:9 identifying(2) 215:18 215:18 identity(1) 157:3 ifsa(21) 96:5 96:10 135:2 135:4 135:4 151:22 155:1 155:4 155:9 155:10 156:3 157:2 157:11 157:11 157:15 158:8 159:9 159:15 159:19 210:10 223:5 ignore(3) 75:19 90:12 121:5 ignored(1) 121:3 ignoring(3) 73:14 170:18 179:10 illusions(1) 221:10 illustrate(3) 57:10 236:9 illustration(3) 120:1 211:18 211:22 | | indenture(1) 194:18 independent(2) 66:2 152:10 independently(3) 155:8 168:25 239:12 indicate(1) 221:1 indicated(1) 51:21 indicates(1) 210:16 indicating(1) 56:24 indication(3) 94:4 94:13 94:24 indiscernible(9) 41:16 49:21 50:7 67:7 127:21 130:3 193:22 201:19 205:21 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**indisputable**(1) 17:9

**individual**(24) 27:14 64:2 64:4 81:9 123:17 133:25 134:8 135:14 135:25 136:2 136:6 136:13 147:16 151:21 153:15 153:19 154:13 160:13 160:14 160:16 161:3 161:3 183:11 225:19

**individuals**(1) 160:1

**indulgence**(1) 206:3

**inefficient**(1) 49:5

**inequitable**(6) 20:14 20:17 21:2 92:11 144:6 169:10

**inflate**(6) 146:1 147:9 147:18 186:23 187:1 191:10

**inflated**(8) 35:24 151:12 152:23 186:14 191:18 225:24 227:17 234:20

**inflation**(13) 36:4 36:18 65:16 146:4 186:17 186:21 187:3 189:13 189:16 189:23 190:19 190:22 226:3

**inflation."**(1) 186:20

**informal**(2) 137:19 139:17

**information**(4) 125:6 125:9 171:25 241:15

**ingersoll**(1) 3:1

**inherent**(2) 18:6 41:18

**initial**(3) 97:17 209:4 219:19

**initially**(2) 167:8 194:22

**initiate**(2) 137:15 139:15

**initiated**(1) 138:1

**injustice**(34) 17:15 18:7 25:19 59:20 72:24 72:24 91:11 91:20 91:21 104:10 108:20 117:14 117:14 124:15 125:2 126:6 126:9 126:10 174:3 196:5 197:5 197:9 200:23 207:25 208:10 208:17 209:8 215:4 215:6 215:11 215:18 217:17 217:24 232:19

**injustice."**(1) 125:25

**inordinate**(1) 49:5

**input**(1) 162:16

**inputs**(5) 119:21 120:2 120:6 120:16 121:9

**inquire**(3) 198:7 198:24 199:6

**inquiry**(2) 198:13 199:25

**insofar**(1) 135:2

**insolvency**(8) 94:20 134:1 137:9 138:4 139:19 144:15 148:7 175:25

**insolvent**(1) 237:14

**installment**(1) 107:11

**installments**(7) 101:24 102:2 103:21 109:17 109:20 129:22 132:9

**instance**(5) 47:10 47:11 148:17 180:4

**instead**(6) 34:4 58:2 84:23 93:7 124:1 169:3 212:4 238:22

**instructive**(1) 127:20

**insufficiently**(2) 228:17 228:20

**insurance**(1) 191:8

**intangible**(1) 109:12

**integrated**(4) 102:6 107:24 176:3 232:1

**integrity**(2) 104:11 176:5

**intellectual**(1) 231:24

**intend**(8) 47:12 67:20 144:5 202:19 212:8 213:1 222:3 232:16

**intended**(17) 25:17 26:21 47:1 50:5 67:17 67:19 149:3 169:14 172:15 172:17 172:25 194:22 222:4 232:23 232:25 233:21 234:13

**intent**(3) 174:22 192:20

**intention**(2) 50:16 140:25

**intentionally**(1) 64:13

**inter-estate**(1) 193:16

**interact**(2) 103:9 103:17

**intercompanies**(2) 73:14 75:23

**intercompany**(53) 25:7 31:22 31:24 32:22 33:12 33:14 33:16 55:24 65:2 65:4 66:12 72:8 72:12 72:17 73:1 73:4 82:15 85:17 96:19 96:25 98:23 99:11 99:12 105:15 108:1 110:5 110:7 119:23 147:8 151:19 152:3 152:4 152:13 153:23 154:1 156:15 161:21 161:23 161:25 162:2 162:4 162:15 162:24 163:5 163:15 170:16 171:6 175:16 179:2 180:18 181:5 215:16 233:17

**interest**(11) 26:15 33:2 44:19 79:3 101:16 101:18 116:18 134:3 137:3 139:22 144:18

**interested**(7) 9:8 9:13 9:18 9:29 10:4 11:4 78:15

**interesting**(5) 81:15 83:1 125:16 131:13 227:22

**interests**(28) 51:11 52:16 119:5 120:23 121:8 122:12 122:13 123:13 123:15 123:18 124:3 124:16 129:19 131:19 136:8 169:7 169:10 170:1 172:21 173:23 174:6 183:19 186:10 188:12 192:17 193:19 207:15 208:5

**interests'**(1) 178:7

**interfere**(1) 131:22

**interfering**(1) 189:4

**intergroup**(1) 32:12

**interim**(1) 139:10

**interlocutory**(1) 10:12

**intermittently**(1) 85:23

**interpret**(1) 217:4

**interpretation**(3) 23:20 182:8 197:13

**interrupted**(1) 53:24 54:2 56:17

**intervening**(2) 117:10 173:24

**intervention**(2) 111:12 111:13

**into**(39) 18:10 25:20 30:20 39:7 56:18 60:4 71:10 72:13 75:15 75:17 90:20 94:22 105:13 116:14 117:18 123:6 123:8 126:21 126:21 127:3 155:4 155:5 155:5 156:5 159:25 164:16 165:22 170:14 170:14 179:9 179:25 183:14 208:21 217:14 217:22 222:4 224:22

**intra-debtor**(1) 33:13

**intra-region**(1) 162:5

**intragroup**(1) 32:3

**intricacies**(1) 182:22

**introduced**(1) 119:7

**invested**(1) 82:21

**investment**(1) 11:40

**investor**(1) 188:24

**invited**(1) 212:25

**involved**(4) 21:14 188:12 227:17 228:10

**involving**(3) 33:14 178:15 203:12

**ireland**(4) 164:12 164:19 165:8 165:11

**irish**(3) 53:6 164:17 164:22

**ironic**(2) 92:7 211:15

**irrelevant**(5) 123:21 197:15 233:23 233:24 234:2

**irrespective**(1) 173:1

**irs**(9) 55:12 56:15 59:3 59:12 59:16 60:22 70:12 81:12 225:21

**isaac**(1) 11:17

**isn't**(4) 37:23 49:9 80:5 107:7

**issue**(46) 15:11 20:2 21:6 21:9 36:25 37:23 39:17 45:17 50:24 56:3 57:3 60:6 63:6 63:6 65:8 67:13 67:19 67:21 87:10 103:13 103:16 131:16 132:21 132:22 148:8 150:24 151:16 154:12 167:15 167:17 170:20 179:5 183:18 185:13 198:21 213:25 214:3 219:5 223:25 225:24 229:19 230:1 230:21 232:14 233:11 240:7

**issued**(4) 43:14 74:5 106:3 118:1

**issuer**(1) 142:6

**issues**(64) 18:4 18:21 31:17 33:14 33:16 50:18 57:4 57:7 61:2 63:3 63:3 63:5 79:1 79:21 81:17 82:9 86:23 87:8 92:25 93:4 93:9 93:15 93:18 96:24 104:11 105:13 111:5 111:9 118:6 120:20 120:21 127:11 127:22 133:14 138:5 139:3 141:4 145:12 151:14 154:15 156:24 172:9 172:20 172:23 174:6 174:8 174:13 174:13 175:1 192:15 195:7 195:13 198:22 204:15 205:13 207:21 207:21 208:18 210:7 216:20 216:21 216:22 217:13 219:22

**it'll**(2) 12:19 206:14

**it's**(160) 12:10 12:19 13:17 14:18 17:9 17:22 21:21 22:1 22:10 22:11 23:3 23:3 23:10 24:3 25:4 25:5 25:10 25:13 25:19 26:2 26:3 26:4 26:4 26:5 26:6 27:9 27:15 27:24 29:21 32:15 34:16 35:4 36:19 37:1 37:24 40:3 41:19 41:19 41:20 42:3 42:22 44:3 44:6 45:13 45:19 46:3 47:17 47:18 47:19 48:23 48:24 49:3 50:15 53:11 54:12 55:4 59:17 59:18 60:14 61:3 62:7 63:23 64:9 66:9 70:4 70:7 74:1 79:15 79:24 80:7 81:18 83:5 83:11 83:12 84:2 84:8 84:10 84:19 86:10 87:4 89:7 90:6 90:8 90:7 90:10 91:4 91:4 91:25 94:10 94:25 94:25 101:6 102:25 102:25 103:1 103:10 104:15 105:7 105:19 105:25 106:18 106:25 109:19 111:3 202:17 202:22 202:23 203:15 203:25 205:11 207:10 211:8 212:20 214:5 214:12 215:6 215:15 215:15 215:22 218:5 219:13 220:13 222:17 222:18 222:23 223:11 224:21 225:8 225:10 225:11 225:18 225:21 225:21 226:21 227:17 227:20 230:6 232:24 233:24 234:2 234:2 234:6 234:12 234:18 234:24 235:4 235:23 236:1 236:6 236:7 236:7 236:14 236:16 237:11 238:3 241:12

**italy**(6) 32:23 33:4 33:5 33:5 33:7 33:9

**italy's**(1) 32:25

**item**(3) 88:8 208:15 210:7

**items**(5) 25:14 81:20 93:22

**its**(35) 18:6 22:10 22:15 23:7 24:18 44:18 49:11 54:6 54:25 55:23 55:23 58:6 58:19 60:10 61:16 65:10 66:14 73:6 74:4 74:5 91:6 95:7 100:5 105:3 121:22 123:25 156:13 156:13 169:6 176:7 217:22 233:8 233:23 234:19 237:15

**itself**(4) 95:16 95:17 99:9 217:18

**it's**(96) 118:6 118:6 118:9 118:14 120:9 120:24 123:20 124:7 125:16 125:22 125:23 129:2 129:3 129:5 129:6 130:20 131:4 131:5 131:10 133:1 133:9 134:4 135:21 135:23 137:9 138:3 138:16 138:18 139:3 139:14 139:20 140:4 143:6 143:15 143:18 144:18 146:2 147:10 149:15 150:23 151:9 151:11 151:12 152:21 153:7 154:8 156:20 157:9 157:10 158:17 158:25 159:5 159:14 160:8 160:17 160:20 165:11 165:7 167:5 172:1 173:17 174:23 175:4 175:6 178:8 178:8 179:20 179:21 181:17 181:20 181:21 182:18 185:21 186:3 186:4 186:5 186:5 191:3 191:22 191:25 194:16 197:15 197:18

**ivan**(1) 170:20

**ivanhoe**(4) 49:15 57:24 212:5 224:21

**i'd**(7) 129:23 130:18 149:13 154:24 183:12 183:13 195:13

**i'll**(26) 114:19 118:9 127:10 127:12 128:7 128:21 129:24 130:18 139:9 142:12 152:24 155:17 158:16 159:1 161:1 163:12 164:2 164:12 166:11 171:19 173:15 174:25 185:22 187:12 200:16 201:9

**i'm**(56) 114:13 114:19 114:23 115:7 115:8 115:9 116:20 117:5 117:17 118:16 122:7 123:3 123:7 123:13 127:2 127:12 127:16 127:18 129:5 131:9 132:20 139:8 146:25 151:14 152:9 153:2 153:9 153:10 153:23 154:12 155:14 159:14 159:16 159:18 160:18 164:4 167:7 171:1 175:5 180:24 181:2 188:16 188:21 189:19 189:21 190:12 191:14 194:8 194:19 196:23 197:23 198:9 199:2 199:14 201:5 202:6

**i've**(7) 116:20 117:13 117:23 127:1 161:21 183:12 192:8

**j.p**(1) 223:17

**jacques**(1) 7:40

**jae**(1) 10:13

**jaime**(1) 2:25

**james**(3) 3:32 8:14 9:26

**jason**(1) 5:8

**javier**(1) 4:31

**jay**(1) 3:17

**jdsu**(1) 3:15

**jeff**(2) 1:33 13:25

**jefferson**(1) 4:31

**jeffrey**(2) 2:6 11:5

**jeffries**(1) 9:33

**jennifer**(1) 11:41

**jesus**(1) 116:7

**jiang**(1) 8:18

**job**(1) 116:23

**joe**(1) 3:19

**john**(7) 2:26 10:9 122:6 122:6 201:6 201:8 201:11

**johnson**(2) 4:16 8:26

**join**(3) 48:4 82:10 195:4

**joinder**(3) 68:12 68:24 69:11

**joinders**(2) 14:24 80:21

**joined**(6) 50:14 62:23 64:17 168:2 195:2 202:14

**joint**(30) 2:23 7:4 75:13 133:16 133:19 134:8 134:9 134:12 134:13 134:15 134:16 134:17 134:21 135:18 137:5 137:7 137:18 138:6 138:13 138:21 145:20 145:23 146:3 146:17 147:7 147:13 147:21 148:25 191:12 203:7

**jointly**(3) 1:6 134:15 202:24

**joke**(1) 206:20

**jones**(3) 5:41 10:4 11:16

**josh**(1) 9:42

**judge**(109) 1:19 1:20 12:21 21:14 42:17 43:17 44:9 44:20 45:18 48:9 50:2 50:5 50:6 50:8 52:11 55:4 62:6 65:5 68:1 68:3 70:15 77:10 80:16 81:23 88:5 93:1 94:4 94:13 94:25 95:1 95:16 97:21 97:24 100:9 100:20 101:1 110:2 112:15 113:8 113:18 114:14 114:19 115:5 128:7 133:8 138:4 138:17 138:24 139:8 139:10 141:23 142:4 147:22 148:2 148:6 150:3 150:10 153:9 154:20 154:22 155:13 158:2 159:1 159:1 161:20 161:25 162:6 163:7 163:9 163:11 163:17 164:25 165:14 166:11 166:21 175:3 175:14 175:22 181:10 181:18 183:13 185:22 186:22 187:4 187:16 188:2 188:5 188:10 188:15 189:22 191:12 191:15 191:17 193:25 194:15 199:23 201:11 202:5 202:13 204:3 205:24 212:13 218:23 239:10 241:8 241:13

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**judges**(5) 116:13 178:11 187:21 198:7 199:24

**judgment**(32) 27:4 27:7 42:20 100:25 100:25 102:5 102:14 102:24 104:2 104:24 105:1 107:7 107:11 107:25 109:17 109:25 110:12 110:14 110:22 110:22 117:23 117:25 156:25 158:4 159:4 162:6 162:7 163:12 173:14 175:12 200:24 239:12

**judgments**(6) 102:5 102:21 102:23 107:24 179:14 180:3

**judicial**(4) 43:11 104:12 111:12 138:5

**july**(2) 140:5 140:5

**june**(6) 1:14 12:1 12:10 157:25 204:15 242:17

**jurisdiction**(15) 37:22 37:25 38:2 41:19 43:9 96:17 96:17 109:24 124:2 128:5 128:6 138:25 187:15 188:1 217:3 227:7

**jurisdictions**(9) 61:16 97:20 98:1 98:2 98:4 111:11 139:21 175:13 218:18

**jurisprudence**(4) 195:21 195:24 197:1

**just**(161) 13:4 14:9 14:22 17:2 18:9 21:10 27:18 27:21 28:21 30:3 31:16 32:11 32:24 33:13 33:23 34:2 34:4 37:18 37:23 38:9 40:8 40:22 41:20 41:21 46:19 49:10 49:23 53:8 58:12 61:12 63:4 63:9 64:12 64:17 66:1 66:20 67:13 67:22 69:10 69:12 71:22 73:14 74:15 74:16 76:9 83:15 87:23 88:25 89:9 90:15 91:7 91:8 97:21 99:3 99:21 103:3 105:21 105:21 107:3 111:22 111:25 112:20 114:18 116:17 118:7 119:19 120:24 122:2 123:2 123:5 124:25 126:12 126:16 126:25 127:2 127:18 128:7 131:23 133:15 135:14 135:16 144:7 148:9 149:18 149:21 150:15 152:23 153:9 153:24 154:16 154:22 154:23 154:24 155:17 155:18 157:14 158:16 159:8 159:13 160:3 161:9 162:24 161:13 163:23 164:2 165:1 165:1 166:7 166:24 173:6 176:17 176:25 180:5 189:14 190:21 191:17 192:10 193:2 194:24 195:12 198:18 199:19 204:12 206:6 206:19 208:2 208:15 210:23 213:19 214:24 215:7 215:8 216:15 216:20 218:23 219:4 220:5 221:9 221:14 221:15 222:3 222:17 223:4 224:4 225:18 226:19 228:18 230:6 230:8 235:15 236:7 237:3 237:25 238:8 238:8 238:25 239:11 240:2 240:20 241:6

**justice**(301) 12:9 12:17 12:20 12:21 12:25 13:1 13:5 13:10 13:15 13:16 15:22 18:25 19:2 19:4 19:6 19:9 19:13 19:16 22:18 23:8 23:12 23:16 23:22 25:22 25:24 26:1 27:16 27:18 27:21 27:24 28:7 28:19 28:21 29:16 29:18 29:28 29:22 30:5 30:9 32:2 32:11 36:22 36:24 37:3 37:6 37:9 39:6 39:8 39:10 39:15 41:13 41:16 41:25 41:25 42:4 42:6 42:9 42:11 43:18 44:20 45:2 45:5 45:11 45:19 46:10 46:12 46:22 50:10 51:1 53:20 53:25 55:2 56:9 56:11 59:6 59:8 59:11 60:14 61:19 62:1 62:16 62:20 64:1 65:3 66:22 67:3 67:5 67:15 67:25 68:3 68:7 68:13 68:18 68:20 69:1 69:10 71:16 72:10 73:18 73:20 74:7 74:11 74:14 74:22 75:3 75:7 75:9 75:10 75:11 76:17 76:24 77:4 77:8 77:9 77:12 77:15 77:17 77:20 77:24 77:24 78:4 78:9 83:23 83:25 84:4 84:6 84:9 85:7 85:21 85:23 86:1 86:2 86:4 86:8 87:2 88:25 89:4 89:6 89:9 91:13 91:16 91:18 94:5 94:6 94:8 94:11 95:24 96:1 96:3 96:10 97:2 97:5 97:8 97:12 98:7 98:10 98:12 100:18 100:19 100:25 101:11 104:9 104:10 104:14 104:16 104:19 104:23 105:8 105:11 105:21 105:24 106:3 106:6 106:14 106:17 106:20 106:23 107:13 107:22 108:10 108:12 108:25 109:21 109:25 110:14 111:16 112:9 112:11 113:5 113:16 113:19 114:4 114:6 114:13 114:14 114:17 115:2 115:7 115:9 115:12 115:19 115:25 116:2 116:4 123:7 127:15 128:8 128:11 128:16 128:19 129:19 129:25 130:4 130:7 130:11 130:15 130:21 130:24 131:13 131:8 131:12 132:7 133:3 133:5 133:7 133:9 135:1 138:9 138:10 138:12 138:14 138:16 138:24 139:6 139:7 139:9 139:13 139:16 140:12 141:22 144:24 145:1 145:22 145:24 146:20 146:22 146:23 147:1 147:4 147:15 147:22 149:18 149:21 150:11 153:4 153:5 153:7 154:18 154:23 155:14 157:14 157:18 157:23 158:1 158:5 159:13 159:17 159:20 159:23 160:21 160:23 162:13 162:17 162:19 162:21 163:1 163:3 163:7 165:7 165:9 166:11 166:13 166:16 166:18 166:22 167:5 167:13 168:5 168:9 168:11 168:14 168:17 170:25 175:3 176:21 176:25 177:5 177:8 177:10 177:13 177:19

**justices**(2) 177:21 198:7

**justify**(1) 89:24

**justin**(1) 5:26

**kathleen**(1) 3:2

**katten**(3) 4:29 7:29 194:17

**kaye**(3) 127:20 128:23 129:3

**keep**(12) 55:23 55:23 74:17 78:10 78:11 90:12 90:13 90:13 105:2 120:8 122:9 127:1

**keeps**(1) 137:7

**kempner**(1) 10:28

**ken**(2) 3:16 78:1

**kent**(1) 10:21

**kept**(4) 129:9 206:14 231:14 231:15

**kevin**(3) 1:19 2:39 11:33

**key**(5) 20:2 156:2 156:15 156:15 169:3 169:8

**keys**(1) 168:25

**kimberly**(1) 10:41

**kind**(15) 13:17 20:17 38:18 59:4 59:21 60:4 60:6 71:19 74:19 108:17 116:17 137:15 146:17 151:8 152:20

**kinds**(2) 60:11 76:22

**king**(4) 2:27 4:25 5:21 8:41

**kingdom**(2) 157:7 158:12

**kinrich**(4) 23:2 136:1 184:24 230:6

**kinrich's**(1) 184:21

**klyman**(1) 11:19

**knee-jerk**(1) 216:18

**knew**(6) 101:25 103:14 103:15 125:10 125:10 175:14

**know**(87) 13:17 13:25 14:4 15:14 22:9 22:10 30:12 32:5 32:21 32:24 34:13 35:11 36:13 38:19 43:22 53:21 62:21 62:25 69:8 70:1 71:9 71:14 71:20 73:16 77:3 80:7 83:2 104:2 111:19 111:22 112:23 114:1 114:9 118:5 135:9 136:7 137:21 138:18 144:21 150:15 151:17 152:14 153:16 167:22 168:6 173:2 173:11 177:24 182:20 182:21 183:18 187:9 191:11 191:14 192:7 192:10 192:11 192:14 192:18 193:7 199:9 200:1 200:14 204:13 204:16 206:3 206:19 222:18 226:11 226:15 226:25 227:5 229:14 230:12 234:19 234:20 237:10 237:21 240:7 240:12 241:11 241:14

**knowable**(1) 93:3

**knowing**(1) 221:22

**known**(9) 71:2 93:2 125:6 125:8 137:24 146:4 152:16 180:16 197:25

**knows**(3) 123:24 155:6 155:7

**kovensky**(1) 8:30

**krause**(1) 8:34

**kukulowicz**(4) 50:15 50:16 50:18 62:14

**label**(1) 25:4

**lack**(1) 45:18

**laid**(1) 151:17

**lamek**(6) 62:24 66:24 67:5 67:18 67:25 68:1

**lamer**(1) 41:25

**land**(1) 169:13

**langley**(1) 7:7

**language**(12) 18:22 45:19 46:3 46:22 46:24 47:5 47:6 48:2 110:11 162:25 186:1 211:9

**large**(6) 40:19 57:15 58:24 59:13 64:8 209:17

**largely**(4) 29:8 36:12 70:2 179:10

**larger**(2) 90:14 100:14

**largest**(2) 58:6 69:15

**last**(25) 34:1 38:12 48:7 52:16 61:13 80:14 89:10 89:11 95:16 126:12 129:24 131:14 131:16 146:23 147:4 162:23 202:18 206:5 221:25 223:8 223:16 223:17 228:5 228:6 239:16

**late**(4) 70:1 114:20 118:15 124:7

**latent**(1) 27:8

**later**(8) 20:19 34:5 44:2 48:19 57:13 85:8 209:2 209:7

**latter**(1) 94:21

**laughter**(34) 12:12 13:2 28:23 43:21 43:24 51:4 51:8 68:21 74:10 74:13 74:20 75:21 78:8 78:12 84:17 85:24 92:8 107:16 116:8 146:14 168:19 177:22 194:13 196:16 199:16 199:20 200:18 206:12 206:21 216:4 216:6 241:9 241:23 242:2

**laura**(1) 3:18

**lauren**(1) 10:25

**law**(43) 3:25 3:31 14:23 15:3 17:18 17:19 41:15 41:24 42:13 42:21 43:1 44:18 47:19 50:5 50:18 52:9 52:9 62:21 62:25 67:23 98:4 101:4 104:10 117:6 117:7 117:10 117:13 127:17 127:18 127:23 148:17 173:25 174:2 175:1 186:9 192:4 209:21 210:5 213:18 215:16 217:3 237:25 239:8

**laws**(2) 60:10 188:1

**lawyer**(2) 131:19 132:11

**lawyers**(13) 34:14 63:7 114:20 123:12 123:14 123:23 123:24 124:2 124:3 126:24 218:14 219:2 241:12

**lax**(2) 129:25 131:16

**lax's**(1) 131:12

**lay**(1) 125:18

**lays**(1) 208:16

**lead**(5) 27:7 109:25 158:10 176:10 204:23

**leaders**(1) 147:13

**leading**(2) 35:24 124:8

**leads**(3) 44:12 227:4 227:22

**learned**(1) 54:18

**least**(14) 37:12 44:1 52:4 53:16 53:17 55:14 55:18 75:1 98:4 130:25 132:22 168:21 176:4 233:3

**leave**(13) 67:18 91:23 93:21 97:19 131:11 137:18 137:18 192:18 196:13 203:17 223:1 237:4 238:7

**leaving**(1) 107:2

**lebanc**(1) 3:49

**leblanc**(18) 41:7 41:8 45:5 45:6 45:6 45:11 46:10 46:11 46:12 46:15 61:17 61:21 210:20 210:21 210:22 213:13 213:15 224:20

**leblanc's**(1) 56:24

**led**(2) 46:25 102:12

**ledger**(1) 58:1

**ledyard**(1) 8:13

**left**(7) 68:22 72:12 74:12 169:20 174:2 196:6 205:13 214:21

**left-hand**(1) 121:16

**legal**(23) 34:13 50:4 52:15 71:15 71:23 72:6 73:9 89:22 99:22 99:24 100:23 122:13 133:24 134:5 134:5 136:5 175:12 185:17 185:19 186:6 225:10 225:18 239:20

**legally**(1) 133:20

**legislation**(1) 137:10

**length**(2) 151:8 207:18

**lengthy**(1) 60:13

**less**(15) 42:14 46:20 71:13 91:12 91:20 95:5 99:23 136:16 136:16 146:7 227:11 227:13 228:15 239:25 240:1

**let**(19) 17:18 40:22 43:23 57:10 58:21 64:3 80:3 111:7 113:20 133:15 140:2 186:11 188:12 188:19 190:21 215:8 225:4 229:25 241:6

**let's**(11) 32:23 37:18 48:14 54:14 80:2 80:3 111:9 111:10 113:24 220:10 235:15

**letter**(1) 137:4

**letters**(1) 238:21

**letting**(2) 74:4 99:8

**let's**(7) 116:10 117:7 118:1 121:21 124:12 185:8 193:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| level(1) 120:13 | | local(6) 97:19 139:23 148:17 188:1 188:2 192:4 | | made(85) 17:13 17:14 18:3 18:17 20:10 21:21 24:20 24:22 27:13 28:2 42:24 43:2 43:3 44:15 48:6 48:18 50:25 57:7 64:2 65:13 66:25 82:16 98:15 101:9 104:1 104:6 105:19 105:20 106:16 108:14 109:16 118:13 120:12 121:19 122:13 122:19 132:23 135:10 139:14 139:15 141:24 143:9 144:1 145:19 147:6 151:12 151:25 154:7 156:3 161:6 169:16 171:17 174:11 178:24 178:25 180:2 180:25 181:10 183:19 184:3 184:4 184:18 185:13 186:12 188:22 190:6 192:20 194:21 203:7 203:10 208:22 209:18 210:9 214:13 217:12 218:22 219:1 219:6 221:7 222:19 224:16 235:24 235:25 237:25 238:8 | | mastering(1) 192:14 |  |
| levels(2) 56:8 211:23 | | | | | | masters(1) 71:10 | |
| liability(14) 38:24 39:4 39:19 39:20 76:2 142:14 142:18 143:2 143:5 143:7 151:1 225:15 236:2 240:18 | | lockbox(53) 21:20 21:23 21:24 24:25 24:25 25:5 26:9 28:10 29:11 32:20 37:24 38:6 55:6 59:24 61:10 73:17 87:12 90:15 90:15 90:21 91:7 91:8 95:10 97:17 104:21 107:20 124:21 124:23 125:4 146:16 146:24 147:2 155:21 156:21 157:1 168:23 169:1 169:3 169:21 170:7 170:10 170:13 171:6 187:23 210:4 214:4 220:15 220:16 220:20 231:1 231:17 233:7 234:7 | | | | material(4) 42:12 42:21 127:21 204:19 | |
| | | | | | | materially(2) 203:21 204:24 | |
| | | | | | | materials(2) 181:14 181:25 | |
| | | | | | | math(2) 83:7 83:10 | |
| liable(1) 236:1 | | | | | | mathematical(1) 82:5 | |
| liaise(8) 139:2 139:6 139:7 139:10 139:11 139:12 187:6 191:20 | | | | | | matt(2) 113:11 113:12 | |
| | | | | | | matter(13) 17:23 25:13 57:4 61:2 88:4 88:24 92:23 97:24 103:21 110:18 129:17 149:3 242:14 | |
| liberty(1) 1:35 | | | | | | | |
| license(1) 161:2 | | locked(1) 168:22 | | | | matters(5) 117:21 124:13 152:21 203:12 209:24 | |
| licenses(2) 26:15 161:4 | | logic(3) 73:9 76:12 215:15 | | | | | |
| lien(8) 21:18 22:3 22:14 143:10 209:23 209:24 210:3 231:3 | | logical(2) 53:17 72:18 | | magnitude(4) 58:18 58:20 58:21 60:17 | | | |
| | | london(2) 2:41 2:42 | | main(8) 87:7 98:6 99:1 134:3 134:24 139:22 150:24 224:13 | | matthew(3) 6:35 6:40 10:33 | |
| lifestyle(1) 71:22 | | long(11) 12:14 38:7 77:18 118:20 133:10 170:10 188:10 194:22 206:9 206:9 206:13 | | | | matz(1) 6:45 | |
| light(5) 21:3 26:14 102:7 105:14 203:13 | | | | | | maximizing(1) 121:18 | |
| lightly(1) 216:16 | | | | mainly(1) 153:10 | | may(44) 12:5 23:8 27:6 33:3 33:11 41:11 44:21 47:22 48:24 80:11 90:17 93:1 93:12 93:16 99:23 107:5 115:20 117:20 118:22 128:22 143:17 148:21 148:24 152:20 167:11 170:19 173:2 178:22 181:25 182:1 194:14 196:12 205:16 207:7 209:1 213:19 214:6 214:7 214:9 219:19 225:15 231:24 233:24 234:1 | |
| like(60) 15:24 16:22 24:11 36:10 37:11 39:1 53:13 53:22 58:10 59:18 59:18 65:8 65:11 65:21 69:6 69:6 69:16 74:25 76:18 84:10 84:14 87:21 99:21 100:7 110:12 110:22 113:14 117:2 122:3 129:23 130:18 143:14 143:15 149:13 154:24 158:17 163:21 165:11 165:18 183:10 183:12 183:13 191:17 195:13 196:15 210:7 213:19 214:24 215:7 215:14 216:15 216:22 219:24 225:18 233:15 234:21 237:12 240:14 240:17 240:22 | | long-arm(1) 107:1 | | maintain(1) 157:3 | | | |
| | | longer(2) 15:17 192:5 | | maintaining(1) 176:4 | | | |
| | | look(41) 18:12 21:13 39:11 50:1 60:6 66:9 72:15 75:5 75:18 81:3 83:10 83:10 90:18 91:1 92:2 92:11 99:3 126:6 131:14 150:11 156:23 170:20 171:3 171:4 171:8 173:7 173:14 184:22 195:25 203:25 211:23 212:2 215:12 217:14 217:19 219:3 219:3 226:18 231:16 234:12 236:10 | | major(5) 54:19 57:13 57:18 61:12 210:14 | | | |
| | | | | majority(1) 137:21 | | | |
| | | | | make(95) 14:19 14:22 16:15 17:8 17:16 18:19 25:14 33:9 33:23 47:7 48:7 49:11 50:16 63:9 64:7 64:20 67:12 67:19 67:20 67:21 69:12 71:25 73:8 74:23 75:16 83:1 84:14 97:4 97:10 97:13 98:22 99:17 102:11 107:5 107:17 112:15 113:4 114:20 114:21 116:4 118:5 137:11 137:12 137:17 144:6 145:8 145:9 146:10 146:18 147:7 147:11 147:23 148:20 149:12 150:22 152:23 154:20 158:16 160:4 161:1 162:25 164:2 164:10 165:1 165:15 173:10 173:12 174:5 174:22 175:8 175:13 176:13 176:14 177:1 178:22 181:4 185:7 187:7 196:6 199:15 201:7 202:20 204:1 205:16 206:10 209:14 210:23 211:9 212:3 212:7 216:9 216:16 222:2 225:13 240:21 | | maybe(8) 15:24 63:9 71:21 112:2 152:17 193:18 229:13 234:19 | |
| | | | | | | mccloy(3) 3:48 6:44 | |
| | | looked(5) 98:12 104:24 104:25 125:4 | | | | mcconnell(1) 122:7 | |
| likelihood(1) 38:15 | | looking(15) 16:22 44:11 55:9 57:20 97:23 103:24 141:10 171:16 174:18 194:11 194:15 195:10 223:10 223:16 233:11 | | | | meagher(2) 5:14 6:23 | |
| likely(6) 137:24 140:22 142:22 145:21 147:7 203:25 | | | | | | mean(25) 24:14 26:23 39:21 40:3 40:19 59:21 64:4 103:20 108:18 110:7 148:25 187:17 221:4 221:4 221:6 222:1 222:1 222:9 222:16 227:13 228:18 229:13 230:5 235:2 239:3 | |
| | | | | | | | |
| liking(1) 124:3 | | looks(6) 84:14 124:23 143:14 143:15 233:15 240:14 | | makes(7) 102:6 130:25 151:9 155:12 159:2 166:7 226:17 | | | |
| limbo(1) 93:21 | | | | | | | |
| limit(1) 212:8 | | | | | | meaning(3) 89:13 93:23 95:13 | |
| limitation(1) 163:6 | | lose(1) 165:1 | | making(15) 14:15 45:20 52:12 64:15 75:2 75:17 93:5 108:10 120:19 127:9 188:7 189:11 195:22 206:20 209:19 | | means(9) 46:19 94:24 98:18 146:13 158:3 158:7 172:25 225:20 234:6 | |
| limited(3) 45:13 124:6 150:18 | | lose-lose(1) 56:4 | | | | | |
| line(4) 38:19 38:19 38:25 162:24 | | loss(2) 208:1 208:12 | | | | | |
| lines(6) 119:20 119:22 223:8 223:17 223:17 232:2 | | losses(3) 39:18 60:9 60:9 | | | | meant(9) 46:5 93:24 95:22 138:19 172:20 182:1 182:21 226:5 226:7 | |
| | | lost(22) 16:16 19:4 19:5 28:19 81:19 97:2 122:18 138:9 139:11 140:12 144:24 145:1 145:2 146:20 165:3 189:18 189:20 190:11 191:13 198:4 220:6 238:15 | | | | | |
| linn(1) 11:13 | | | | | | measure(4) 103:23 104:19 104:23 150:2 | |
| lip(1) 84:1 | | | | | | mechanism(3) 186:13 209:3 231:22 | |
| liquidated(2) 144:16 188:1 | | | | mallon(1) 6:25 | | mediation(1) 49:4 | |
| liquidation(1) 53:13 | | lot(25) 14:11 14:12 14:13 15:23 20:5 20:5 33:2 75:13 76:10 76:18 117:24 121:19 136:16 136:16 167:4 171:13 171:17 192:12 195:19 196:9 216:10 221:13 225:5 226:11 226:12 | | man(1) 92:12 | | mediator(1) 62:11 | |
| lis(1) 7:8 | | | | management(10) 8:9 8:33 8:41 9:25 9:37 10:24 10:36 10:40 11:12 11:24 | | medium(1) 174:14 | |
| lisa(1) 6:5 | | | | | | meet(4) 109:20 195:9 208:5 217:25 | |
| list(1) 160:17 | | | | | | meets(1) 143:21 | |
| listen(1) 241:12 | | | | manas(1) 9:30 | | mellon(1) 4:6 | |
| listened(2) 116:11 241:11 | | lots(3) 12:15 195:16 218:7 | | mandated(1) 178:11 | | mellow(1) 219:12 | |
| listening(1) 135:7 | | loud(1) 12:19 | | manifest(32) 18:7 25:19 59:20 72:25 91:12 91:20 104:10 105:8 108:20 117:14 117:14 124:15 125:2 126:6 126:8 126:10 174:3 196:5 197:4 197:9 200:23 200:23 207:25 208:9 208:17 209:8 215:4 215:6 215:11 217:17 217:24 232:19 | | melnik(1) 5:6 | |
| lists(2) 159:3 160:12 | | lousy(1) 75:19 | | | | member(1) 65:6 | |
| literally(2) 137:11 152:14 | | love(1) 75:14 | | | | members(2) 110:8 123:25 | |
| litigant(3) 129:10 197:2 197:7 | | love-hate(3) 124:15 170:23 235:13 | | | | memory(1) 212:12 | |
| litigate(4) 38:7 174:13 193:5 228:23 | | lovells(2) 6:34 7:34 | | | | men(1) 160:24 | |
| litigated(4) 31:25 94:3 116:21 174:7 | | low(4) 41:3 55:11 73:16 73:22 | | | | mentioned(4) 24:4 66:16 127:10 139:17 | |
| litigating(2) 33:3 36:7 | | lowenthal(18) 3:39 62:18 62:19 62:20 63:14 63:18 65:1 67:2 67:4 143:13 213:16 213:17 213:18 213:25 214:8 214:10 214:15 214:17 | | manifestly(9) 58:15 83:11 83:12 83:13 91:24 91:25 92:1 104:22 126:22 | | mentioning(3) 17:2 32:24 82:18 | |
| litigation(20) 16:12 16:17 57:5 57:8 81:19 90:24 102:1 103:20 109:16 109:19 127:5 135:16 147:20 152:17 156:7 157:19 158:14 168:1 174:10 221:8 | | | | | | mercy(1) 64:22 | |
| | | | | | | merely(1) 16:5 | |
| | | | | | | merger(1) 10:8 | |
| | | lowenthal's(1) 173:19 | | manner(2) 93:25 148:9 | | merging(1) 151:17 | |
| litigations(2) 101:24 149:4 | | lower(8) 26:5 54:17 54:22 55:1 71:22 94:15 164:22 226:23 | | many(17) 53:14 56:8 64:9 69:19 69:20 81:15 89:16 107:5 107:6 127:5 142:21 177:7 177:7 177:24 180:25 216:25 222:8 | | merit(3) 44:17 44:19 46:21 | |
| little(13) 13:6 31:20 33:1 33:1 69:14 158:20 202:21 203:9 206:20 216:8 217:14 217:23 217:23 | | | | | | meritless(1) 227:1 | |
| | | | | | | merits(2) 121:3 220:3 | |
| live(7) 75:14 85:21 121:6 121:7 128:21 132:21 132:22 | | lowest(1) 126:3 | | | | merle(1) 3:26 | |
| | | ltd(1) 7:34 | | marc(1) 6:30 | | message(2) 193:3 193:5 | |
| | | lunch(8) 84:14 84:18 111:20 112:6 112:8 112:19 114:2 114:3 | | march(1) 178:14 | | messrs(1) 134:11 | |
| lives(1) 78:14 | | | | mark(1) 7:45 | | met(8) 48:19 100:15 102:17 132:16 200:21 216:21 228:17 228:21 | |
| living(1) 71:21 | | | | market(7) 1:11 1:28 2:7 3:3 10:8 70:5 191:8 | | | |
| llc(6) 7:39 8:41 9:9 10:36 11:8 11:32 | | mace(1) 1:39 | | | | | |
| llp(19) 1:25 2:12 3:7 3:32 4:13 5:31 6:12 6:29 6:34 6:39 7:12 7:16 7:29 7:34 7:44 8:13 11:4 11:44 166:23 | | macquarie(1) 8:37 | | | | method(3) 141:7 215:23 227:19 | |
| | | | | markets(2) 9:41 51:15 | | methodologies(6) 51:19 51:21 51:24 89:22 170:12 203:23 | |
| | | | | masse(2) 153:16 157:2 | | | |
| | | | | massive(2) 60:8 73:23 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**methodology**(29) 16:5 16:10 16:24 23:19 26:7 26:25 35:23 36:1 52:5 52:6 52:22 53:16 57:12 58:25 60:20 61:4 90:20 92:4 92:21 120:3 169:4 169:6 169:19 169:21 170:2 185:17 187:16 205:11 220:17

**metric**(2) 109:15 185:21

**meyers**(2) 3:25 3:26

**mic**(2) 168:6 196:21

**michael**(3) 4:7 11:13 11:45

**microphone**(9) 68:19 84:2 84:4 84:12 84:13 84:21 84:24 128:12 168:13

**microphones**(2) 13:7 15:21

**mid-70's**(1) 70:1

**mid-july**(1) 140:4

**middle**(5) 73:12 82:5 120:10 169:13 62:8 65:18 71:13 77:1 77:7 87:22 93:4 93:6 99:10 128:11 142:17 150:9 152:13 178:19 191:21 214:25

**mightily**(1) 80:19 221:21

**mike**(2) 83:24 84:20

**mike's**(1) 84:3

**milbank**(3) 3:48 6:44

**milburn**(1) 8:13

**mill-smith**(1) 113:5

**miller**(2) 3:33 173:15

**million**(22) 22:3 22:11 23:1 23:3 29:11 30:17 30:23 31:7 31:11 34:19 34:20 69:3 70:7 70:10 86:12 86:15 88:10 88:18 88:19 89:13 90:1 185:16 228:9 230:2 232:9

**million-dollar**(2) 227:15 227:16

**millions**(2) 34:18 230:22

**mind**(7) 72:4 129:9 175:10 182:22 213:8 222:4 226:4

**mindel**(1) 7:25

**mindful**(3) 16:21 97:22 194:19

**minds**(2) 47:1 175:11

**minority**(1) 153:8

**minute**(8) 46:13 86:9 133:15 145:2 146:11 157:14 185:7 206:17

**minutes**(15) 46:20 56:16 77:18 77:19 77:20 111:24 111:25 113:23 167:1 193:25 194:2 194:3 206:7 208:8 240:1

**mirrors**(1) 52:17

**misapplication**(1) 42:13

**misapplying**(1) 42:25

**misapprehended**(2) 17:23 83:17

**misapprehending**(1) 238:6

**miscarriage**(5) 101:11 104:9 104:10 109:20 132:7

**misconstrued**(1) 42:21

**misheard**(1) 229:13

**misinterpreted**(1) 134:25

**misleading**(1) 124:22

**miss**(1) 138:15

**mistake**(6) 16:16 17:13 117:17 215:17 215:20 215:24

**mistaken**(1) 105:25

**mister**(1) 206:20

**misunderstood**(1) 134:9

**mitchell**(1) 8:42

**mkt**(1) 5:44

**model**(6) 92:16 119:13 119:21 119:24 119:25 176:2

**models**(1) 70:18

**modest**(3) 29:15 29:15 204:21

**modification**(2) 218:17 222:2

**modifications**(4) 24:21 119:14 204:20 204:21

**modified**(36) 18:20 52:21 55:22 57:21 58:25 80:24 81:2 81:16 81:16 81:23 85:15 90:8 90:10 91:3 103:9 118:5 118:9 119:10 120:7 120:16 124:8 136:17 141:19 169:4 170:2 176:2 187:16 200:2 200:11 205:11 209:15 215:13 215:14 224:25 234:14 238:16

**modify**(3) 54:7 119:12 141:17

**molisch**(1) 158:2

**moment**(5) 54:14 57:20 107:3 149:18 170:18

**momentarily**(1) 151:16

**moments**(2) 56:24 61:18

**money**(22) 31:2 33:1 33:2 36:10 39:22 64:9 64:12 64:15 76:18 79:21 92:18 98:3 120:24 125:22 135:20 189:9 220:14 220:15 220:20 223:5 223:20 223:21

**monies**(2) 160:6 160:8

**monitor**(9) 3:1 27:5 27:14 54:6 78:3 165:19 165:23 212:21 219:6

**monitor's**(1) 210:11

**monitor's**(2) 195:2 201:13

**montague**(5) 43:8 43:16 128:3 128:13 128:19

**montgomery**(1) 3:27

**month**(1) 66:15

**months**(4) 44:1 44:2 44:3 89:16

**monumental**(1) 167:23

**more**(53) 18:10 20:18 25:7 31:20 35:17 40:18 44:24 56:6 56:7 71:20 72:7 73:5 76:7 79:13 82:16 87:25 89:18 90:17 92:2 101:17 102:1 103:7 107:8 107:15 110:19 120:24 123:24 141:24 152:6 155:25 156:9 166:25 185:3 193:14 193:16 193:20 203:6 206:6 206:6 206:17 208:11 209:3 216:9 217:14 217:23 219:24 221:13 222:21 224:5 226:22 235:2 235:3 236:8

**morgan**(3) 133:21 135:8 223:18

**morning**(30) 12:6 12:6 12:7 12:9 13:13 13:14 13:16 13:16 45:9 45:9 45:10 50:8 50:9 50:10 62:18 62:19 62:20 68:3 77:25 78:1 78:3 78:6 91:1 100:19 100:25 185:23 195:15 207:25 210:24 214:5

**morris**(3) 1:25 3:32 12:8

**most**(19) 14:18 27:10 31:18 32:15 33:17 53:17 75:12 79:4 79:4 81:24 92:3 133:12 134:22 148:2 155:21 175:4 197:19 201:6 232:15

**mostly**(1) 215:11

**motion**(77) 13:18 16:14 16:23 16:24 19:17 35:20 36:19 49:21 50:21 51:9 53:22 54:3 56:13 58:19 64:20 64:22 65:14 66:24 67:6 67:8 67:8 67:12 77:6 79:9 80:21 80:22 80:25 82:10 84:16 93:18 93:20 112:1 118:15 122:11 122:17 123:20 130:8 130:11 174:10 174:24 175:9 176:18 176:24 177:2 177:4 178:7 180:13 180:15 193:9 195:1 195:6 195:18 195:22 198:21 201:2 204:5 207:14 207:16 207:20 210:16 211:1 211:18 213:10 213:10 213:20 213:21 219:5 219:14 219:15 220:23 221:10 221:11 233:10 233:14 238:15 238:17 239:14

**motions**(19) 27:3 64:24 78:25 79:23 83:8 86:19 93:15 100:23 101:5 140:20 169:10 176:10 183:19 197:11 202:18 205:15 213:6 219:8 238:13

**mouth**(1) 215:11

**movants**(2) 14:24 15:10

**move**(20) 16:14 37:16 48:3 48:25 58:22 73:3 74:9 74:19 79:23 100:16 127:7 128:11 129:23 137:5 140:25 152:17 168:17 209:3 212:24 216:24

**moved**(4) 63:4 160:6 173:11 225:9

**movement**(1) 209:5

**movements**(2) 108:9 108:10

**moves**(5) 57:16 108:7 108:7 108:8 108:9

**movie**(1) 84:11

**moving**(5) 56:18 73:7 104:7 104:18 132:15 132:23 141:4 145:12 151:14 168:6 214:21

**mr. hodara**(1) 45:8

**mr. rosenthal**(2) 27:19 43:3

**mrda**(2) 23:20 231:18

**msh**(1) 3:11

**much**(31) 12:21 13:11 14:7 18:11 20:18 24:20 43:22 55:6 67:2 70:8 91:11 91:20 99:12 100:16 107:22 112:23 113:3 113:20 114:9 136:15 138:15 159:8 173:9 174:15 174:20 190:24 192:5 205:22 215:12 220:18 239:22

**muchin**(3) 4:29 7:29 194:17

**multi**(1) 106:10

**multi-seller**(1) 87:11

**multiple**(18) 17:19 20:7 30:11 79:15 79:17 81:25 82:1 87:23 99:7 123:12 134:10 178:10 179:20 179:25 221:17 221:19 237:5 237:6

**multiply**(1) 149:4

**multitude**(1) 94:20

**murdoch**(2) 202:15 205:16

**murphy**(1) 3:2

**must**(10) 12:10 50:23 51:1 60:2 61:19 66:3 110:7 129:9 132:1 226:5

**mute**(2) 84:23 85:4

**myriad**(1) 192:15

**myself**(5) 14:19 53:25 62:13 111:24 224:16

**mythologies**(1) 169:17

**name**(6) 26:22 68:5 68:8 68:9 173:20

**names**(1) 122:7

**narrow**(1) 232:9

**naturally**(1) 92:17

**nature**(3) 32:17 83:15 138:7

**nauseum**(1) 196:2

**ncc**(1) 65:8

**ncs**(1) 65:9

**nearly**(2) 132:13 132:13

**neat**(1) 96:15

**necessarily**(5) 62:11 79:1 222:2 222:8 241:12

**necessary**(9) 16:12 101:10 114:20 132:6 150:2 150:17 153:17 166:9 209:15

**need**(54) 15:17 16:8 20:21 29:22 31:20 32:6 41:23 48:17 49:4 51:6 57:11 58:24 60:20 64:17 65:25 66:4 67:15 67:20 74:2 83:4 83:6 83:7 99:16 111:19 112:7 113:21 113:22 114:21 117:12 123:17 123:24 129:7 135:16 140:10 140:16 140:16 143:16 144:20 144:22 148:18 148:24 153:14 161:17 181:16 196:11 208:3 209:18 217:18 217:19 217:19 228:23 235:14 236:8 240:4

**needed**(6) 22:8 92:19 111:7 113:3 137:18 151:25

**needing**(1) 114:9

**needle**(2) 58:22 209:6

**needs**(3) 80:24 112:16 125:1

**negligence**(2) 131:18 131:20

**negligent**(2) 131:17 132:11

**neil**(1) 2:33

**neo**(1) 67:17

**net**(2) 60:8 144:13

**network**(1) 8:5

**networks**(9) 1:8 5:14 6:4 6:16 6:17 6:23 202:8 202:17 202:21

**never**(10) 20:10 23:21 54:12 91:7 121:9 121:12 129:13 129:18 129:20 184:4

**never-ending**(1) 129:13

**nevertheless**(1) 137:17

**new**(49) 1:36 2:20 3:22 3:41 4:5 4:9 4:19 5:17 5:37 15:3 40:14 62:22 68:4 86:22 91:22 100:12 100:13 117:11 118:18 123:6 123:8 123:9 123:22 123:22 123:23 124:3 124:4 124:7 124:7 124:7 124:11 129:14 133:1 136:5 149:5 154:4 157:9 162:12 168:2 174:1 174:8 183:8 202:19 209:10 209:11 222:18 238:12 239:11 239:13

**newbouild**(1) 189:20

**newbould**(301) 12:9 12:17 12:20 12:21 12:25 13:1 13:5 13:10 13:15 13:16 18:25 19:2 19:4 19:6 19:9 19:13 19:16 22:18 23:8 23:12 23:16 23:22 25:22 25:24 26:1 27:16 27:18 27:21 27:24 28:7 28:19 28:21 29:13 29:16 29:18 29:22 30:5 30:7 32:9 32:11 36:22 36:24 37:3 37:6 37:9 39:6 39:8 39:10 39:15 41:14 41:16 41:25 42:4 42:6 42:9 42:11 43:18 45:2 45:5 45:11 46:10 46:12 50:10 51:1 53:20 53:25 55:2 56:9 56:11 59:6 59:8 59:11 60:14 61:19 62:1 62:16 62:20 66:22 67:3 67:5 67:15 67:25 68:4 68:7 68:13 68:18 68:20 69:1 69:10 71:16 72:10 73:18 73:20 74:7 74:11 74:14 74:22 75:3 75:7 75:9 75:10 75:11 76:17 76:24 77:4 77:8 77:9 77:12 77:15 77:17 77:20 77:24 77:24 78:4 78:9 83:23 83:25 84:5 84:7 84:9 85:7 85:22 85:23 86:1 86:3 86:4 86:8 87:2 88:25 89:4 89:6 89:9 91:13 91:16 91:18 94:5 94:6 94:8 94:11 95:24 96:1 96:3 96:10 97:2 97:5 97:8 97:12 98:7 98:10 98:12 100:18 100:19 100:25 104:14 105:11 105:21 105:24 106:3 106:6 106:14 106:17 106:20 106:23 107:22 108:25 110:1 110:4 111:16 112:9 112:11 113:5 113:16 113:19 114:4 114:6 114:13 114:14 114:17 115:2 115:7 115:9 115:12 115:19 115:25 116:2 116:4 123:7 127:15 128:8 128:11 130:4 130:7 130:11 130:15 130:21 130:24 131:3 131:8 133:3 133:5 133:7 133:9 135:1 138:9 138:11 138:12 138:14 138:16 138:16 138:19 139:13 140:12 144:24 145:1 145:2 145:4 146:20 146:21 146:22 146:23 147:1 147:4 147:23 149:18 149:21 150:11 153:4 153:5 153:7 154:23 157:14 157:18 157:23 158:5 159:13 159:17 159:20 159:23 160:21 160:23 162:13 162:17 162:19 162:21 163:1 163:3 163:7 165:7 165:9 166:11 166:13 166:16 166:18 166:22 167:5 167:13 168:5 168:9 168:11 168:14 168:17 170:15 175:4 176:21 176:25 177:5 177:8 177:10 177:13 177:19 177:21 178:2 178:5 179:23 180:1 180:7 180:9 180:12 180:14 181:15 181:19 183:5 183:23 183:25 184:2 184:9 184:11 184:15 186:25 187:7 187:15 188:5 188:11 188:15 189:18 189:21 190:11 191:13 191:18 191:20 191:23

**needed**(6) 22:8 92:19 111:7 113:3 137:18 151:25

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **newbould**(72) 192:5 192:9 193:12 193:15 193:17 193:19 193:24 194:8 194:9 194:11 194:16 194:20 196:19 196:20 196:22 198:14 198:16 198:18 199:13 199:19 201:4 201:11 201:18 201:24 202:2 202:6 202:13 204:3 204:8 205:19 205:22 206:8 206:9 206:13 206:19 206:23 207:3 207:8 207:10 207:10 207:12 208:2 210:24 212:10 213:14 214:14 214:16 214:22 216:3 218:21 220:6 220:9 221:24 222:15 223:9 223:13 223:15 228:3 228:6 228:12 229:3 229:5 229:7 230:3 235:6 237:10 238:3 238:4 241:8 241:25 242:1 242:5 | | **non-existent**(1) 84:1 **non-funded**(1) 70:11 **non-guaranteed**(1) 194:18 **non-ip**(1) 87:20 **non-repetitive**(1) 14:25 **none**(10) 24:4 34:10 47:14 125:17 132:25 168:25 169:17 171:25 219:4 221:18 | | **not**(105) 187:3 187:22 188:3 189:4 190:4 190:16 191:18 192:23 195:16 195:18 196:18 196:25 197:3 197:6 197:22 198:1 198:12 200:7 200:11 200:21 200:22 200:23 200:25 201:25 204:10 205:4 205:9 206:17 207:16 209:12 210:4 210:8 210:13 211:7 211:20 211:21 212:4 212:8 213:11 213:21 215:6 215:6 215:8 215:21 216:17 218:11 218:11 218:24 218:25 219:14 220:4 220:16 220:20 221:9 221:16 222:3 222:9 224:3 225:2 225:11 225:20 227:25 228:13 228:17 229:8 229:8 229:15 229:21 231:2 231:5 231:12 231:18 232:3 232:11 232:18 232:20 233:1 233:11 233:14 234:4 234:14 234:14 234:18 234:24 235:1 236:1 236:7 236:14 236:15 236:20 236:24 237:11 237:15 237:18 238:2 238:5 238:10 238:16 238:21 239:1 239:6 240:7 240:19 240:24 241:12 | | **object**(2) 112:20 238:25 **objected**(5) 23:12 23:16 23:21 78:5 195:1 **objecting**(1) 202:1 **objection**(6) 54:6 79:18 183:18 184:3 195:3 195:5 |
| **newbould's**(5) 15:22 45:20 46:23 211:10 240:5 | | **nonsense**(1) 147:10 **nor**(3) 53:10 121:10 126:6 **normal**(3) 54:11 138:16 139:20 **normally**(5) 138:3 138:3 138:5 178:15 235:20 | | | | **objectivity**(1) 56:2 **objector**(1) 215:10 **objectors**(3) 173:8 181:3 215:1 **objects**(1) 63:19 **obligated**(1) 143:3 **obligation**(1) 59:25 **obligations**(2) 54:24 191:9 **obligor**(4) 119:17 142:4 142:11 142:24 **observation**(1) 196:8 **observed**(1) 135:1 **obtain**(1) 125:19 **obtained**(4) 52:19 55:12 125:19 138:23 **obtains**(1) 51:23 |
| **newbould's**(3) 154:18 155:14 187:20 **newfleet**(1) 10:36 **newly**(3) 68:23 82:25 117:17 **news**(3) 196:14 196:14 196:17 **newsletter**(1) 78:11 **next**(15) 41:17 58:18 59:3 59:9 71:24 94:24 113:5 129:15 133:3 151:16 156:2 156:14 158:10 160:3 166:16 | | **nortel**(38) 1:8 2:4 5:14 6:3 6:16 6:13 7:38 8:5 12:11 54:8 69:21 78:6 81:8 133:13 133:17 133:25 134:19 135:6 136:6 136:14 136:25 142:14 144:14 146:2 147:17 148:7 150:15 152:6 156:3 162:14 164:18 168:3 176:5 202:8 202:17 202:21 203:6 | | | | **obvious**(5) 18:18 70:4 83:15 99:2 164:5 **obviously**(26) 14:11 15:15 40:7 41:9 41:14 42:22 48:4 63:15 67:19 70:23 71:12 101:24 109:23 112:6 125:21 147:5 156:14 158:11 161:2 164:4 174:17 204:12 216:10 227:13 233:13 241:7 |
| | | **nortel's**(1) 203:1 **nortel's**(1) 127:8 **north**(1) 1:28 **not**(301) 13:3 13:22 16:3 16:4 16:20 16:22 16:24 17:5 18:11 18:13 18:17 19:20 19:21 19:25 20:6 20:23 21:1 21:1 21:8 22:1 22:2 22:7 22:12 22:16 23:3 23:23 24:7 24:12 24:13 25:4 25:5 25:13 25:19 26:5 26:24 27:24 28:4 31:12 34:3 34:9 34:14 34:17 34:20 35:6 35:9 36:24 37:13 37:23 38:6 38:13 38:17 38:19 39:4 40:2 40:14 41:15 41:18 43:4 44:22 46:1 46:16 46:19 47:23 48:6 48:16 48:23 48:24 49:13 50:16 53:10 53:11 54:11 55:15 57:5 57:13 58:5 58:6 60:12 60:25 61:19 62:11 64:5 65:15 65:18 66:2 67:13 67:17 67:20 69:13 71:4 71:22 71:25 73:6 73:10 73:15 74:7 74:19 75:24 76:5 76:12 76:23 79:16 80:7 80:22 82:3 82:14 82:12 82:20 82:22 82:23 82:23 83:12 83:15 83:20 84:3 84:6 84:20 85:12 86:12 86:22 86:25 87:2 87:18 89:24 90:2 90:8 90:9 91:4 91:4 91:7 92:1 92:24 92:25 93:2 93:3 93:7 93:16 93:10 93:11 96:21 96:21 96:22 98:1 99:12 101:4 101:5 101:21 101:21 101:23 102:10 102:13 102:17 102:21 103:23 104:3 104:19 105:7 108:21 110:8 110:11 111:4 112:17 112:25 114:16 117:5 117:13 117:17 117:20 118:6 118:7 119:24 119:25 120:24 121:20 122:5 122:8 122:18 123:3 123:18 124:3 124:11 125:3 125:6 125:8 125:20 126:5 126:8 126:11 128:5 128:6 131:20 132:11 132:12 132:13 132:15 132:18 133:1 133:13 134:25 135:11 135:18 135:22 135:23 137:10 138:3 138:16 138:19 140:7 141:7 141:8 141:12 141:14 142:1 142:19 143:22 144:17 145:10 145:22 145:22 146:2 146:25 147:11 147:19 148:10 148:11 150:6 150:8 150:15 150:23 151:2 151:4 151:12 151:21 152:19 152:21 153:16 153:18 154:4 154:14 154:14 155:14 155:19 156:10 156:11 156:15 157:2 157:16 158:13 159:8 159:12 160:8 160:16 161:25 162:8 162:9 162:10 162:15 163:4 163:6 163:15 163:17 164:19 165:2 165:4 165:11 166:4 169:16 169:21 170:13 171:9 171:18 171:19 172:1 172:16 173:21 174:14 174:23 175:21 175:23 176:14 178:24 179:2 179:8 179:19 179:21 180:20 180:21 181:1 181:17 182:2 182:14 183:3 183:9 183:11 183:20 184:6 186:3 186:22 186:25 | | **note**(21) 65:22 76:9 79:15 88:16 106:1 106:21 106:24 109:8 112:1 112:13 142:5 143:12 159:13 177:1 180:5 199:19 211:14 216:15 224:16 226:24 239:20 **noted**(2) 79:18 109:2 **notes**(5) 62:23 75:19 128:19 154:17 154:23 **nothing**(18) 20:23 47:7 47:22 47:25 49:11 82:19 89:20 121:1 133:23 170:5 185:2 186:8 219:20 221:1 222:16 224:10 225:5 236:20 **notice**(3) 74:3 109:20 **notions**(1) 108:12 **now**(146) 12:3 16:13 19:8 19:15 22:15 24:20 25:20 30:4 32:25 33:5 33:6 33:11 34:23 36:9 36:10 36:11 36:15 42:22 44:23 48:9 48:20 48:22 49:1 53:1 53:8 54:5 55:2 56:20 57:11 57:13 58:5 58:18 59:6 62:8 63:1 63:4 64:20 64:22 64:25 75:18 79:8 80:1 81:10 81:20 81:23 82:9 82:12 83:9 86:5 87:7 87:16 88:8 88:23 89:17 89:18 90:4 90:5 90:13 90:17 90:21 91:11 91:13 91:14 91:15 92:5 93:3 93:13 93:15 93:22 96:21 98:5 103:5 103:19 103:19 105:9 108:5 108:16 109:14 111:25 113:12 114:2 114:3 116:9 120:22 120:23 122:19 136:9 137:4 138:2 138:10 138:10 141:4 141:18 144:8 144:18 145:3 145:12 146:11 146:21 150:2 151:14 157:6 157:8 158:6 158:15 160:11 166:2 168:13 170:7 170:18 171:10 172:7 172:19 173:6 174:15 179:11 184:22 186:13 186:19 187:1 188:16 190:21 191:11 191:14 196:21 198:15 198:22 200:4 200:9 205:23 211:14 212:1 212:6 214:4 219:22 219:22 219:23 220:9 220:10 221:2 222:13 226:3 228:18 229:23 229:25 | | **occur**(2) 76:20 187:3 **occurred**(1) 80:14 **occurs**(2) 150:25 151:4 **ocean**(2) 164:24 164:25 **och-ziff**(1) 11:24 **odd**(3) 86:12 86:15 96:6 **off**(26) 12:4 15:22 33:24 34:1 59:8 59:11 60:15 61:19 83:24 84:4 84:8 84:21 84:24 87:15 90:9 90:21 98:20 112:25 159:21 170:25 194:24 196:19 196:21 198:14 199:13 213:2 |
| **ngs**(33) 21:9 21:11 21:17 21:18 22:2 22:3 22:7 22:16 22:25 23:7 23:23 24:6 87:10 88:8 88:12 108:25 143:9 144:8 144:21 145:7 172:11 183:18 184:13 184:23 209:22 229:25 230:9 230:10 230:13 230:25 231:7 232:4 232:11 | | | | | | **offer**(2) 44:4 194:20 **offered**(1) 169:5 **office**(1) 2:42 **officers**(2) 147:11 147:12 **official**(6) 4:12 6:38 50:12 51:12 81:21 207:11 |
| **ngs's**(1) 233:19 **nicholas**(1) 5:34 **nichols**(2) 1:25 12:8 **ninety**(1) 227:11 **ninety-one**(2) 165:7 165:9 **nixdorf**(1) 7:45 **nnc**(3) 63:12 64:7 81:11 **nncc**(10) 62:23 63:15 65:10 65:10 66:11 66:13 66:13 66:18 143:13 214:3 | | | | **nowhere**(1) 156:24 **nuances**(1) 182:22 **nuk**(1) 176:3 **number**(29) 40:18 40:23 40:25 42:4 70:25 71:8 104:17 108:5 108:7 116:12 120:17 122:13 130:2 131:25 133:14 142:21 149:20 151:12 155:20 159:15 159:15 160:15 144:4 177:16 181:11 181:21 229:1 240:11 240:24 | | **often**(1) 212:16 **okay**(45) 12:23 12:24 13:3 13:24 15:1 16:1 17:4 19:9 19:13 30:9 33:5 42:9 65:1 68:22 71:18 74:18 77:4 86:1 94:9 101:3 115:5 115:18 116:3 116:4 116:10 147:3 163:2 167:13 167:21 168:16 168:18 177:8 177:15 180:1 180:14 192:9 196:23 201:4 201:24 207:13 223:15 235:20 238:12 238:22 239:15 |
| **nni**(29) 54:23 58:10 65:10 66:14 66:18 88:10 88:19 88:20 89:12 109:6 143:3 143:14 170:17 170:19 184:25 229:12 229:22 230:5 230:7 230:10 230:11 230:16 230:17 230:18 230:25 231:5 231:8 234:19 237:19 | | | | | | **old**(5) 62:5 117:21 124:10 170:20 206:10 **omission**(1) 173:14 **omitted**(1) 186:2 **once**(24) 37:8 43:25 67:11 79:14 82:17 92:5 92:15 95:9 103:3 105:3 107:7 107:8 107:8 109:15 137:25 141:2 141:21 141:22 141:25 170:11 218:11 219:15 233:6 241:1 |
| **nni's**(1) 81:10 **nnil**(2) 164:13 164:13 **nni's**(2) 172:11 184:14 **nnl**(10) 35:12 65:11 164:5 165:5 165:6 165:11 165:17 165:24 165:24 194:18 | | | | **numbered**(1) 181:18 **numbers**(35) 25:16 26:14 26:15 26:16 26:17 40:14 40:20 57:19 57:20 70:18 70:22 70:22 70:25 71:6 76:24 91:9 92:2 104:16 104:19 107:10 107:13 108:18 108:19 109:7 141:13 163:17 163:18 177:13 204:13 209:5 224:14 225:1 225:2 235:11 | | |
| **nnsa**(18) 53:4 134:16 136:15 136:20 137:1 164:6 165:4 165:5 202:22 203:1 203:6 203:12 203:15 203:19 203:20 203:23 222:14 222:17 | | | | **numerous**(5) 216:11 218:13 219:2 231:13 231:13 | | |
| **nnsa's**(1) 204:23 **nnuk**(16) 86:14 134:2 134:16 139:19 142:11 142:11 142:17 164:7 165:24 166:1 166:2 176:3 189:25 190:8 190:15 190:24 | | | | **o'connor**(7) 220:13 224:3 224:14 226:3 227:6 230:8 232:21 | | |
| **nnuk's**(3) 86:14 228:15 228:21 **nobody**(14) 17:11 19:22 20:7 24:14 33:22 34:6 34:6 34:12 205:23 210:25 217:7 217:24 219:20 236:22 | | | | | | |
| **nobody's**(2) 223:25 234:10 **nomura**(1) 10:12 **non**(1) 69:3 **non-administrative**(1) 34:9 **non-bondholder**(1) 235:4 **non-bonds**(1) 73:23 **non-duplicative**(3) 15:15 152:14 218:9 **non-duplicativeness**(3) 143:25 240:16 240:21 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**one**(164) 1:35 2:14 4:17 5:21 12:15 16:2 17:8 17:20 19:19 19:20 19:22 25:4 29:8 31:6 33:18 34:25 35:18 35:24 37:5 37:7 38:21 40:18 40:22 41:21 42:18 43:18 45:13 48:10 49:6 51:21 52:1 53:15 56:15 56:16 58:3 58:6 59:3 59:9 61:14 62:4 63:8 63:19 64:12 64:14 72:16 73:3 73:5 73:10 74:24 78:18 78:24 82:15 82:17 88:6 88:17 94:16 94:22 101:23 102:6 102:7 103:18 103:22 105:20 105:22 109:5 109:18 109:18 118:8 127:2 127:23 129:9 130:2 135:18 138:4 138:17 138:24 141:18 141:24 144:1 145:14 146:18 152:20 152:20 153:13 154:3 154:7 155:7 155:18 155:22 155:24 156:10 156:23 157:6 158:23 160:2 162:22 163:3 164:4 164:5 165:2 165:12 170:8 170:12 171:14 174:1 174:6 176:8 176:17 178:11 178:16 178:16 185:22 187:7 189:14 189:14 190:21 193:6 193:14 193:16 195:17 197:16 197:18 197:22 197:22 198:4 199:23 200:5 200:8 203:2 208:9 208:15 210:7 211:2 211:6 213:2 213:21 215:1 215:3 215:4 215:16 216:15 216:18 218:6 218:8 218:11 218:20 222:20 228:8 230:3 231:3 234:11 234:19 234:23 235:20 236:22 236:23 236:23 236:23 236:24 237:4 237:7 237:18 240:12

**one's**(1) 107:10
**one-stop**(1) 41:23
**ones**(5) 35:24 76:5 134:2 152:14 152:15
**onex**(1) 8:29
**one's**(3) 115:23 116:11 150:10
**only**(78) 20:23 21:1 22:2 22:23 26:2 27:4 27:25 29:10 29:11 29:14 34:8 35:5 37:5 37:7 37:8 37:19 40:13 41:12 55:19 57:19 57:22 69:17 74:2 76:5 79:16 80:22 82:17 92:15 101:17 101:9 103:2 105:11 105:19 106:3 109:10 109:11 109:22 123:24 124:23 129:4 129:12 135:11 141:21 141:22 141:24 142:23 152:8 152:12 152:14 170:13 170:21 171:2 174:19 177:23 179:16 182:19 191:25 193:21 196:5 197:16 197:23 197:24 198:1 207:22 211:4 211:19 212:4 212:15 218:19 221:16 226:5 226:3 230:3 236:3 237:4 237:7 237:8 237:18

**open**(4) 129:17 142:12 227:24 229:20
**opening**(4) 132:24 200:9 220:5 229:19
**operate**(1) 53:12
**operated**(1) 100:2
**operating**(4) 39:18 60:8 147:14 203:1
**opinion**(56) 16:12 25:4 25:9 25:17 30:16 32:16 35:22 46:24 48:9 49:11 49:11 79:24 80:5 80:16 81:24 86:22 90:12 94:4 94:13 94:25 97:23 100:9 116:19 116:19 117:1 150:7 172:3 172:7 172:15 189:16 189:23 193:1 199:24 203:14 211:8 216:18 216:20 217:22 219:19 220:22 225:23 226:1 229:17 230:3 232:11 233:3 233:15 233:21 234:16 235:12 236:13 238:20 241:13 241:17 241:20 241:22

**opinions**(30) 16:3 16:7 19:21 32:5 47:6 79:3 82:11 82:13 83:16 87:8 90:9 92:24 93:11 93:21 100:1 116:14 117:2 119:10 124:25 125:3 127:5 167:24 172:8 172:18 192:17 211:11 216:19 224:10 236:10 236:12
**opponents**(7) 15:10 18:15 19:17 32:6 112:1 196:11 197:12

**opportunities**(1) 198:3
**opportunity**(10) 53:2 87:25 120:25 122:16 179:5 198:1 198:7 198:19 198:20 199:6

**oppose**(1) 205:14
**opposed**(6) 29:12 46:18 46:24 103:15 153:15 164:24 188:25 198:2

**opposing**(2) 202:18 205:9
**opposite**(1) 52:25
**opposition**(7) 15:16 36:20 40:8 178:7 219:7 226:17 226:19

**oppositions**(5) 18:12 21:19 31:19 35:20 36:12

**oral**(2) 195:3 195:4
**orally**(1) 63:2
**order**(57) 15:6 22:15 22:21 23:7 24:8 24:9 24:15 29:3 31:15 38:11 43:6 43:10 45:14 45:18 45:19 45:20 45:23 46:6 46:17 46:21 46:22 46:24 47:2 47:6 49:25 65:2 66:6 92:18 93:12 95:16 95:16 96:20 98:13 98:15 98:21 139:22 140:11 141:17 149:14 149:16 149:20 149:22 150:6 150:8 166:7 203:13 209:23 209:24 210:3 211:20 212:5 213:20 213:22 231:6 232:7 238:12 238:16

**order."**(1) 173:14
**ordered**(2) 47:18 103:18
**ordering**(1) 175:23
**orderly**(1) 93:10
**orders**(6) 49:14 58:17 141:23 142:5 211:11 212:1

**ordinary**(1) 180:19
**original**(6) 27:6 42:20 44:21 69:6 161:9 174:22

**originally**(1) 172:17
**orrick**(1) 11:4
**other**(134) 14:24 16:7 16:11 16:15 21:6 21:24 23:5 25:6 27:11 29:10 29:14 32:2 35:10 35:11 35:15 37:17 39:4 40:5 43:7 44:4 53:2 55:1 56:25 65:17 70:11 71:10 73:4 73:10 76:20 76:21 81:6 82:5 83:1 83:18 84:25 87:20 87:22 87:24 88:8 90:3 90:5 90:6 90:17 92:23 93:16 93:22 94:18 95:7 97:7 97:24 98:16 99:1 99:4 102:4 105:4 106:15 107:13 108:23 109:9 110:19 110:21 111:11 112:1 117:15 119:18 121:8 124:1 124:14 124:24 125:4 126:2 134:2 136:18 137:2 139:21 142:10 142:10 142:14 142:16 142:21 142:22 143:7 144:2 148:15 151:14 163:3 164:23 167:18 170:15 176:9 179:10 179:25 180:25 181:2 185:14 187:23 188:22 189:25 190:1 190:8 192:20 193:9 196:13 197:22 203:12 203:23 206:16 209:25 212:10 214:2 215:3 217:10 222:3 222:25 223:1 223:3 224:6 227:16 228:1 228:10 228:22 228:25 228:25 233:12 233:22 233:25 234:12 234:21 234:23 240:10 240:11 240:17 240:22 240:25

**other's**(1) 78:14
**others**(18) 55:11 55:12 64:9 69:7 69:13 70:7 70:17 73:16 73:21 76:7 76:18 95:8 123:10 176:9 176:10 215:8 215:23 241:14

**otherwise**(14) 66:23 80:23 88:13 90:16 112:2 116:24 116:25 118:11 123:2 127:10 161:19 173:22 190:15 209:11

**other's**(2) 142:9 149:6
**ought**(6) 79:14 80:10 113:2 172:10 184:6 188:24

**our**(120) 14:10 20:11 27:11 28:15 31:6 33:23 34:7 43:3 43:8 43:9 45:12 45:13 46:6 46:25 47:3 47:17 48:3 50:16 51:7 55:7 57:17 62:4 62:23 63:19 64:8 64:18 65:5 65:9 65:11 65:24 66:1 66:4 66:15 66:24 67:5 67:7 69:18 69:21 69:22 70:3 78:15 92:25 101:4 101:8 101:12 104:10 105:17 116:12 117:20 118:16 118:21 127:21 128:14 129:1 129:2 129:6 130:13 133:16 136:3 140:7 140:19 140:25 140:25 151:23 152:24 153:25 154:19 156:16 161:19 161:11 161:14 161:17 163:21 165:16 166:7 172:8 172:19 175:6 176:11 178:3 178:22 183:1 183:18 184:3 184:16 192:13 197:5 197:10 197:13 201:14 202:19 207:17 207:18 212:8 213:9 213:10 213:20 213:21 213:25 214:2 215:5 215:12 215:21 215:21 216:11 216:14 217:15 218:4 218:24 219:3 223:23 223:25 224:7 224:13 224:18 224:25 224:25 226:18 226:24 230:5

**ours**(2) 24:19 224:18
**out**(83) 16:2 17:15 26:16 26:23 28:21 31:21 38:23 39:23 43:3 47:20 48:12 55:6 55:14 59:24 68:8 68:14 69:9 71:16 72:10 73:2 73:18 76:23 80:11 80:23 86:21 88:9 88:10 88:18 91:6 92:16 92:17 99:22 100:11 100:12 102:7 107:20 109:18 110:10 114:22 118:22 119:6 121:7 125:9 125:15 125:17 125:18 130:1 130:17 135:13 135:25 136:1 158:19 160:3 163:16 178:20 180:22 181:10 182:11 183:1 185:9 191:7 194:24 195:12 196:12 199:23 200:20 209:2 210:4 211:2 216:19 218:5 218:5 219:4 220:5 220:22 222:11 224:20 233:19 235:9 235:20 239:2 239:8 241:20

**outcome**(4) 21:5 141:17 144:7 183:16
**outcomes**(3) 141:8 141:10 141:14
**outlined**(2) 148:23 209:17
**outrage**(1) 226:12
**outright**(1) 121:3
**outset**(7) 16:2 115:8 115:22 116:11 127:10 175:25 216:17

**outside**(8) 18:3 18:20 19:3 19:10 38:1 96:22 118:5 217:12

**over**(25) 22:7 29:12 31:22 33:6 33:25 66:23 71:11 93:23 96:18 97:23 126:15 138:4 138:25 151:15 152:24 165:12 182:24 216:11 218:2 218:2 218:3 221:8 221:22 226:13 227:7

**overall**(1) 74:3
**overblown**(1) 98:5
**overboard**(1) 191:22
**overlook**(3) 222:2 222:9 222:10
**overlooked**(9) 17:23 22:20 22:20 42:20 186:3 186:4 186:7 186:10 232:5

**override**(2) 16:22 22:15
**overriding**(1) 24:15
**oversee**(2) 187:5 227:9
**overseeing**(1) 148:7
**oversight**(11) 36:8 36:13 82:24 83:16 145:15 145:15 147:24 149:25 150:1 173:13 227:21

**oversights**(1) 173:17
**overstay**(1) 202:19
**overturn**(4) 37:20 131:7 200:22 200:25
**overturned**(1) 117:2
**overview**(1) 25:20
**overy**(3) 3:15 7:44 78:2
**owe**(1) 147:17
**owl**(1) 8:33

**own**(19) 20:12 20:25 24:18 24:23 26:12 26:12 42:19 66:2 69:20 100:13 105:2 126:2 156:13 156:13 169:2 169:3 174:10 185:21 232:7

**owned**(9) 87:14 109:4 165:5 165:6 165:11 230:5 230:17 230:25 232:1

**ownership**(16) 24:18 26:11 26:15 87:17 87:25 88:5 109:3 109:11 109:14 140:10 144:15 144:17 185:17 185:19 231:10 231:11
**owning**(1) 144:14
**owns**(2) 22:7 26:13
**oxford**(1) 2:33
**o'connell**(1) 122:6
**o'connor**(38) 5:32 166:17 166:18 166:20 166:21 166:22 167:6 167:7 167:14 167:22 168:5 168:8 168:10 168:12 168:16 168:18 168:20 171:1 182:25 183:17 183:24 183:25 184:2 184:10 184:13 184:16 186:1 189:19 189:20 189:21 190:11 190:12 191:14 192:5 192:8 192:10 193:12 193:13 194:3

**p.m**(7) 114:11 114:11 194:6 194:6 207:5 207:5 242:9

**p.o**(1) 2:8
**pachulski**(3) 5:41 11:16 11:17
**packed**(1) 72:13
**page**(38) 25:9 27:2 27:5 63:25 94:13 94:24 94:25 95:5 95:9 95:21 119:20 119:22 149:19 149:23 163:17 175:15 175:23 176:1 180:5 180:5 180:7 180:8 181:10 181:19 181:20 184:22 184:22 186:15 204:1 204:1 211:17 211:18 211:25 212:2 226:1 231:16 233:4 233:6

**pages**(3) 36:14 65:24 218:12
**paid**(25) 30:25 31:8 33:24 34:1 34:3 34:5 59:23 60:2 87:15 88:9 88:10 88:13 88:18 92:15 124:20 143:19 143:20 160:8 164:15 164:18 182:4 182:11 182:14 183:9 224:1

**pains**(1) 25:8
**palpable**(1) 203:11
**paper**(8) 14:17 42:11 47:17 62:4 161:9 161:11 214:14 224:15

**papers**(22) 14:12 20:11 53:5 59:15 79:11 83:2 136:3 136:4 140:22 149:9 149:15 151:8 151:10 151:23 172:19 173:8 173:12 186:15 203:20 210:1 211:7 221:18

**paragraph**(72) 44:13 45:23 54:6 66:9 67:10 67:11 88:17 88:18 88:20 89:2 89:19 95:1 95:12 95:17 101:9 101:12 102:24 102:25 103:6 103:8 104:13 104:15 105:14 106:8 109:1 109:6 109:8 110:3 110:3 110:13 110:24 128:6 128:16 129:2 129:2 129:4 129:5 129:15 129:25 131:14 131:24 149:20 149:24 154:18 154:21 154:25 155:3 155:11 155:13 155:18 156:18 159:22 163:18 175:9 176:20 176:23 177:15 178:4 178:8 180:8 181:15 201:16 201:21 218:6 219:3 223:4 223:5 223:9 228:11 230:14 233:6 236:12

**paragraphs**(10) 65:24 88:16 95:9 110:23 155:9 162:17 162:19 163:12 175:6 181:17

**paraphrase**(1) 76:2
**paraphrasing**(1) 83:3
**parcel**(1) 185:3
**pardon**(8) 13:1 87:3 87:3 130:15 130:23 133:5 177:20 223:13

**parent**(1) 165:4
**parenthesis**(2) 95:18 150:5
**pari**(3) 82:3 90:23 91:4

| Word | Page:Line |
|------|-----------|
| park(1) 4:17 | |
| parsed(1) 110:12 | |
| parsing(1) 217:2 | |
| part(33) 19:25 24:1 28:17 35:13 38:25 51:5 57:5 57:7 57:13 58:24 65:5 85:20 87:11 88:15 89:10 90:23 90:24 102:6 103:1 103:1 109:11 120:1 155:24 160:5 165:21 165:23 184:24 185:3 197:15 202:24 209:25 210:13 212:21 | |
| participate(3) 149:6 149:11 182:14 | |
| participated(1) 63:2 | |
| particular(26) 16:6 38:3 38:4 38:20 39:2 45:23 50:4 56:14 88:7 93:17 107:2 108:19 128:2 136:14 139:1 141:17 141:20 142:3 146:7 147:18 148:22 178:18 188:13 209:12 212:10 221:14 | |
| particularly(5) 61:7 186:14 186:17 203:11 225:6 | |
| parties(102) 14:6 14:12 14:13 18:4 18:21 20:6 21:16 21:23 22:9 24:10 25:6 26:17 27:11 31:20 31:25 34:23 37:17 38:16 42:18 44:22 46:13 47:14 47:22 47:24 48:10 48:12 48:23 49:5 49:7 52:25 53:1 59:4 59:15 59:16 62:10 77:6 78:21 79:25 80:17 82:1 89:15 89:21 90:17 92:1 93:6 93:16 96:22 98:25 99:1 100:11 101:17 102:10 103:15 104:2 104:7 104:18 111:7 112:19 113:3 114:9 116:6 121:14 123:10 123:13 124:7 132:15 132:23 134:10 144:11 150:19 152:8 155:5 155:17 157:17 159:25 167:25 168:2 176:13 186:6 191:11 192:21 192:25 193:3 203:23 207:14 208:4 210:1 210:2 211:22 212:17 212:23 213:5 213:8 217:13 218:1 219:21 220:4 221:13 222:11 222:25 223:7 230:15 | |
| partners(3) 8:5 8:21 8:29 | |
| partners/davidson(1) 10:28 | |
| parts(9) 79:3 90:7 91:7 102:8 105:1 107:11 154:17 176:15 177:7 | |
| party(23) 9:8 9:13 9:18 9:29 10:4 11:4 23:6 24:22 45:15 56:25 63:1 79:2 96:6 105:1 158:14 174:12 176:21 202:19 211:16 219:23 222:3 238:15 238:16 | |
| pass(2) 33:8 174:25 | |
| passage(1) 129:4 | |
| passed(1) 219:20 | |
| passes(1) 53:2 | |
| passu(3) 86:23 90:23 91:4 | |
| past(5) 62:10 127:7 146:6 182:6 221:23 | |
| paste(2) 177:17 177:25 | |
| path(2) 78:17 78:24 | |
| patrick(1) 10:37 | |
| patterson(2) 3:38 62:20 | |
| pay(18) 28:14 31:11 31:12 35:10 39:24 164:21 189:9 224:5 224:5 224:6 225:15 225:16 234:5 235:20 235:22 236:5 236:17 237:15 | |
| payable(1) 164:22 | |
| payment(5) 88:19 90:1 92:16 182:7 223:18 | |
| pbgc(16) 21:16 21:18 22:3 22:14 24:16 51:13 52:1 54:22 70:11 142:24 151:9 191:6 191:6 209:24 231:3 232:8 | |
| pbgc's(1) 210:3 | |
| peep(1) 231:3 | |
| peg(1) 10:5 | |
| pen(1) 194:24 | |
| penalized(1) 235:3 | |
| penalizing(2) 34:3 234:25 | |
| pending(1) 134:1 | |
| pennsylvania(1) 1:43 | |
| pension(22) 5:24 6:28 6:34 7:34 9:19 29:19 69:20 70:24 81:14 105:18 106:9 106:11 106:19 106:21 106:25 107:1 142:9 142:11 143:3 166:24 189:1 237:15 | |
| pensioners(3) 164:17 164:22 191:9 | |
| pensions(1) 240:5 | |
| penultimate(2) 212:13 212:14 | |
| people(15) 57:20 61:22 62:6 76:10 88:1 98:3 100:12 116:12 146:15 152:18 170:22 177:24 193:6 223:3 240:18 | |
| people's(2) 71:8 232:15 | |
| per(5) 104:22 107:15 107:21 107:21 | |
| per-debtor(1) 210:17 | |
| per/pro(1) 8:22 | |
| perceive(1) 171:14 | |
| percent(36) 26:2 26:5 32:21 57:14 57:17 58:3 104:21 104:22 126:4 126:4 126:5 126:7 126:18 137:22 146:16 147:2 150:16 165:7 165:9 171:7 171:8 171:11 171:12 171:24 208:1 208:13 224:15 224:17 224:19 224:20 224:21 227:11 228:15 230:10 236:8 | |
| percentage(9) 26:5 28:10 59:24 76:20 125:23 126:3 156:20 185:5 188:24 | |
| percentages(2) 40:12 104:23 | |
| perfect(3) 44:24 79:19 168:14 | |
| perfectly(1) 17:8 | |
| perform(1) 191:2 | |
| performing(1) 203:2 | |
| perhaps(8) 42:14 53:6 78:10 112:8 112:18 226:7 229:14 233:18 | |
| period(6) 33:22 55:19 62:12 93:20 238:13 239:13 | |
| permission(1) 137:12 | |
| permit(5) 127:7 130:12 173:21 186:22 186:25 | |
| permits(1) 173:20 | |
| person(4) 135:18 143:2 143:4 143:5 | |
| perspective(4) 60:13 195:14 208:10 208:12 | |
| persuade(1) 148:11 | |
| persuaded(1) 134:2 | |
| persuasion(1) 62:9 | |
| pertains(1) 133:14 | |
| pertinent(1) 143:8 | |
| pete(1) 5:42 | |
| peter(1) 3:8 | |
| petition(3) 34:10 59:25 111:10 | |
| pharma(1) 27:2 | |
| phillip(4) 7:8 9:14 9:15 185:11 | |
| phones(1) 12:4 | |
| phrase(3) 58:21 63:20 93:23 | |
| phrased(1) 120:7 | |
| phrases(1) 158:21 | |
| physical(1) 84:20 | |
| pick(5) 102:7 109:17 113:9 153:9 234:23 | |
| picked(1) 239:21 | |
| picking(1) 158:20 | |
| piece(1) 218:15 | |
| piecemeal(7) 79:1 102:4 107:11 109:17 111:2 205:1 205:4 | |
| pieces(2) 100:11 119:19 | |
| pile(1) 135:9 | |
| pinpointed(2) 32:15 32:16 | |
| piper(4) 5:5 115:6 115:11 115:22 | |
| pitch(1) 161:7 | |
| place(11) 35:15 73:5 120:8 122:9 133:23 145:18 157:10 169:18 176:17 187:2 216:23 | |
| places(3) 30:11 63:12 235:1 | |
| plain(2) 153:17 155:12 | |
| plainly(1) 148:16 | |
| plan(9) 6:34 73:24 105:18 112:23 112:23 139:25 141:20 149:9 167:1 | |
| plans(1) 14:10 | |
| plate(1) 12:15 | |
| plausible(1) 83:15 | |
| play(3) 58:4 103:13 103:15 | |
| played(1) 92:15 | |
| playing(1) 65:19 | |
| plaza(1) 1:35 | |
| plc(1) 10:44 | |
| pleading(3) 65:25 201:22 215:12 | |
| pleadings(1) 45:12 | |
| please(12) 12:2 12:4 12:4 12:18 41:12 114:12 115:4 116:6 150:11 184:1 194:7 207:6 | |
| pleasure(2) 114:18 202:17 | |
| plight(1) 121:25 | |
| plus(1) 36:14 | |
| podium(8) 12:16 12:24 13:7 14:24 40:6 49:18 167:10 201:9 | |
| pohl(32) 2:13 68:3 68:5 68:9 68:9 68:16 68:19 68:22 69:2 69:12 71:18 72:11 73:19 73:21 74:9 74:18 74:21 74:23 75:5 75:8 75:10 75:12 75:22 76:16 76:23 91:21 214:18 214:18 214:21 214:23 214:23 216:1 | |
| point(97) 8:17 10:32 11:20 17:8 21:7 22:17 30:12 41:18 41:21 45:23 48:7 49:23 54:2 55:3 63:24 64:21 65:2 65:20 65:21 66:1 74:24 76:9 79:4 79:7 83:1 87:7 97:4 98:22 105:24 107:2 107:13 111:7 121:8 123:5 126:12 127:2 128:1 128:21 129:6 130:2 131:10 132:25 142:2 144:3 153:24 154:9 154:20 155:15 157:25 158:4 158:9 158:11 158:19 158:20 159:2 159:11 160:7 161:1 161:18 161:20 162:10 162:14 163:14 163:24 164:4 165:1 165:10 165:14 167:3 181:5 181:10 181:11 181:21 183:19 184:17 184:18 185:6 185:10 185:22 190:5 190:21 191:22 195:14 197:22 204:12 209:4 209:8 212:7 212:9 213:10 215:22 218:14 224:7 236:22 239:2 239:16 240:8 | |
| pointed(7) 125:15 163:16 211:22 224:20 236:12 236:22 238:14 | |
| pointing(3) 219:4 235:9 239:7 | |
| points(38) 18:11 23:23 24:1 43:2 54:5 61:6 61:13 64:19 64:24 69:13 71:24 74:16 88:9 110:21 117:4 117:9 117:24 120:22 124:14 125:23 131:12 131:12 153:10 153:12 154:25 158:17 164:3 167:3 173:10 175:5 180:25 181:21 196:13 207:24 210:23 224:13 240:2 240:2 | |
| poll(1) 63:7 | |
| pool(7) 30:20 35:10 73:24 76:1 120:14 178:15 178:16 | |
| pools(3) 93:2 120:9 134:6 | |
| portion(2) 57:15 81:16 | |
| posited(1) 142:16 | |
| positing(1) 240:23 | |
| position(18) 39:3 46:14 47:14 95:7 103:14 104:18 104:21 118:21 118:25 119:3 126:21 147:6 205:3 205:9 210:25 216:11 218:4 219:4 | |
| positions(7) 80:18 118:21 126:11 146:6 146:9 146:13 205:7 | |
| possibilities(1) 119:12 | |
| possibility(3) 32:4 32:16 121:4 | |
| possible(10) 78:16 91:24 99:2 115:25 143:18 163:23 163:25 190:13 206:16 220:14 | |
| possibly(1) 43:1 | |
| post(2) 34:9 59:24 | |
| post-petition(8) 34:9 34:11 59:17 99:20 99:24 111:9 225:14 225:17 | |
| post-trial(7) 161:14 176:22 177:25 178:2 184:5 184:19 198:20 | |
| posted(1) 78:11 | |
| potential(15) 20:12 33:3 39:19 53:18 123:16 123:16 123:17 129:9 182:17 189:23 197:24 208:1 208:12 208:14 208:17 | |
| potentially(2) 58:23 99:5 | |
| pounds(2) 86:12 86:16 228:10 | |
| power(3) 18:6 41:13 213:4 | |
| powers(1) 135:3 | |
| ppearances(5) 1:23 2:1 2:47 3:44 5:1 | |
| practice(1) 173:16 | |
| practicing(1) 206:11 | |
| pragmatic(1) 125:7 | |
| praising(1) 199:14 | |
| pre(1) 11:9 | |
| pre-petition(5) 59:22 100:2 152:21 182:19 225:14 | |
| pre-trial(5) 81:4 81:18 85:14 184:5 184:18 | |
| preacher(1) 196:15 | |
| precedent(4) 49:16 57:25 58:8 220:1 | |
| precedential(5) 88:21 89:13 230:19 238:22 239:6 | |
| precise(2) 40:18 196:25 | |
| precisely(3) 196:8 197:7 217:15 | |
| precluded(1) 186:21 | |
| predicates(1) 169:11 | |
| predictability(1) 51:14 | |
| predominant(1) 189:14 | |
| preferred(1) 78:19 | |
| prejudice(2) 83:21 85:13 | |
| preliminary(2) 135:12 167:8 | |
| premise(2) 172:13 179:15 | |
| premised(1) 90:20 | |
| prepare(1) 206:7 | |
| prepared(7) 16:11 48:21 119:1 129:11 131:17 148:9 195:7 | |
| prepetition(2) 34:8 54:25 | |
| preponderance(3) 231:20 232:3 232:6 | |
| prescribed(2) 57:12 190:25 | |
| prescribing(1) 57:8 | |
| present(13) 39:20 89:22 117:21 121:10 121:24 122:4 122:20 122:20 122:21 136:23 170:3 174:9 206:5 | |
| presentation(10) 14:21 50:17 50:17 56:18 56:24 59:14 61:15 124:7 194:22 216:9 | |
| presentations(1) 51:19 | |
| presented(28) 18:4 18:21 20:10 21:4 21:4 94:1 94:23 118:6 118:9 118:10 118:11 119:13 119:19 121:2 122:4 122:4 122:6 126:13 135:23 136:1 151:23 172:9 186:3 186:5 204:6 217:13 228:11 232:20 235:11 | |
| presenting(1) 122:10 | |
| presents(1) 198:2 | |
| preserve(1) 139:23 | |
| preserved(2) 162:24 207:20 | |
| presiding(1) 97:24 | |
| press(1) 77:2 | |
| preston(1) 4:22 | |
| presumably(2) 33:2 237:6 | |
| presumed(1) 146:9 | |
| presuming(1) 95:13 | |
| pretty(6) 23:5 40:21 71:2 71:12 131:21 138:21 | |
| prevail(1) 87:18 | |

| Word | Page:Line |
|------|-----------|
| **prevent**(9) 18:6 36:3 36:18 117:13 147:25 174:3 186:16 186:20 226:3 | |
| **previously**(3) 47:2 103:23 143:19 | |
| **price**(1) 4:6 | |
| **primary**(16) 35:7 35:23 67:6 73:7 112:3 118:8 119:17 139:19 142:4 142:11 142:24 143:2 175:17 179:16 222:22 231:17 | |
| **primary-secondary**(1) 236:2 | |
| **primrose**(1) 2:40 | |
| **principal**(10) 14:15 96:17 97:18 97:20 153:18 154:10 173:4 203:2 204:19 224:9 | |
| **principally**(1) 179:1 | |
| **principle**(29) 15:9 28:5 35:7 40:4 51:19 132:9 142:1 142:6 143:25 144:2 144:5 144:6 144:10 145:9 145:11 148:5 148:13 161:19 165:15 166:5 166:10 180:3 219:17 224:1 231:9 235:15 240:16 240:25 241:1 | |
| **principle-driven**(1) 169:19 | |
| **principled**(3) 163:24 164:23 225:6 | |
| **principles**(19) 25:18 34:23 34:25 36:12 37:19 52:10 52:17 80:11 82:14 130:18 132:14 141:12 141:15 141:16 141:18 144:4 145:9 148:4 188:4 | |
| **prior**(16) 22:15 22:21 23:7 24:7 24:9 43:10 46:6 49:13 117:22 117:25 117:25 150:7 182:5 209:23 210:3 231:6 | |
| **priorities**(1) 139:23 | |
| **priority**(3) 70:12 81:9 225:17 | |
| **privately**(1) 183:12 | |
| **privilege**(1) 147:20 | |
| **pro**(119) 8:22 16:5 16:10 16:23 18:15 18:20 20:1 20:19 23:23 25:4 25:5 25:10 25:10 25:12 25:13 25:15 25:18 26:7 26:8 26:8 26:21 26:22 26:24 27:24 28:4 29:3 35:23 36:2 37:25 39:21 51:23 51:25 51:25 52:21 54:7 55:22 57:21 72:4 72:5 76:13 81:2 81:16 81:24 82:14 86:20 90:8 90:10 90:19 90:19 90:22 91:3 92:13 92:14 92:18 103:6 103:9 103:9 103:14 103:17 118:5 118:8 118:9 118:9 118:20 119:5 119:6 119:10 119:11 119:24 120:7 121:3 121:4 122:14 124:8 132:20 136:17 141:19 155:18 169:4 169:6 170:2 170:11 175:20 176:1 176:2 198:10 198:25 200:2 200:6 200:12 200:13 201:22 205:11 209:16 215:13 215:13 216:23 218:5 218:8 220:17 227:18 231:9 231:18 233:4 233:20 234:3 234:14 234:14 235:22 | |
| **probably**(13) 41:2 68:4 69:15 70:6 70:10 71:3 71:5 76:25 108:15 132:2 140:10 142:21 201:5 | |
| **probative**(1) 53:17 | |
| **probe**(1) 42:22 | |
| **problem**(8) 29:9 34:15 38:21 55:21 91:2 93:14 111:13 152:2 | |
| **problems**(3) 93:1 111:11 171:14 | |
| **procedural**(2) 63:3 148:11 | |
| **procedure**(8) 17:20 37:13 37:15 98:21 111:8 139:20 148:18 173:16 | |
| **procedures**(19) 35:18 36:5 36:10 36:15 37:11 38:10 110:25 111:11 138:1 139:5 140:4 150:1 167:19 186:18 191:23 225:24 226:10 227:9 227:14 | |
| **proceed**(4) 115:3 115:20 167:1 169:11 | |
| **proceeded**(1) 161:16 | |
| **proceeding**(13) 97:24 98:4 100:15 103:13 109:3 135:3 155:2 155:16 157:6 157:9 200:5 201:8 203:4 | |
| **proceedings**(24) 1:18 1:47 33:17 96:24 97:7 97:13 99:25 100:3 134:1 134:23 136:24 138:3 138:25 147:24 148:7 149:10 157:3 202:25 203:24 221:4 226:14 231:16 237:5 242:14 | |
| **proceeds**(3) 18:13 21:19 21:20 25:5 25:11 25:12 28:10 29:4 39:23 61:9 61:10 87:12 89:24 90:1 144:8 144:21 145:7 146:16 167:17 168:22 169:21 170:7 172:11 210:3 223:19 230:7 231:5 231:8 231:15 231:17 233:5 234:3 234:5 | |
| **process**(42) 30:3 42:23 49:4 53:13 57:8 58:13 58:12 58:24 62:12 78:14 78:21 80:3 80:9 93:8 93:8 93:11 98:22 99:13 104:12 110:24 137:8 137:11 137:14 137:16 137:19 137:22 139:16 139:17 139:17 140:1 140:15 140:19 140:23 173:5 175:20 187:5 191:4 191:16 210:12 210:13 210:15 220:5 | |
| **processes**(12) 78:19 94:21 111:5 139:1 139:18 140:7 140:17 140:25 145:16 145:17 148:4 149:7 | |
| **produce**(2) 120:3 169:23 | |
| **produced**(1) 1:48 | |
| **productive**(1) 137:20 | |
| **profess**(1) 16:20 | |
| **professional**(3) 59:19 127:6 191:2 | |
| **professor**(1) 117:6 | |
| **program**(1) 58:25 | |
| **progress**(1) 79:6 | |
| **prohibit**(1) 89:20 | |
| **prohibited**(2) 102:2 102:4 | |
| **projected**(1) 203:21 | |
| **promise**(2) 206:10 206:13 | |
| **promissory**(1) 106:23 | |
| **promoted**(1) 200:10 | |
| **prompt**(1) 15:5 | |
| **promptly**(1) 127:8 | |
| **prong**(2) 212:18 217:17 | |
| **prongs**(1) 212:15 | |
| **proof**(1) 140:1 | |
| **propensity**(1) 146:4 | |
| **proper**(8) 18:23 38:3 61:11 157:17 174:13 187:20 192:23 218:25 | |
| **properly**(5) 42:17 57:5 125:3 158:25 | |
| **property**(1) 231:25 | |
| **proponent**(1) 15:17 | |
| **proponents**(3) 24:16 200:6 206:16 | |
| **proportion**(1) 208:25 | |
| **proportionate**(1) 233:9 | |
| **proposal**(1) 48:18 | |
| **proposals**(1) 93:7 | |
| **propose**(1) 95:14 | |
| **proposed**(11) 89:23 104:20 120:11 149:14 149:16 149:20 149:22 204:21 213:20 213:22 218:16 | |
| **proposing**(2) 220:11 236:24 | |
| **propriety**(1) 58:17 | |
| **protect**(1) 96:23 | |
| **protected**(1) 96:22 | |
| **protections**(4) 186:16 186:19 187:2 187:4 | |
| **protocol**(3) 151:24 159:10 159:10 | |
| **proverbial**(1) 75:15 | |
| **proves**(1) 132:25 | |
| **provide**(6) 38:25 152:1 195:13 195:21 200:21 204:14 | |
| **provided**(9) 111:1 120:13 126:14 143:21 157:15 160:7 185:6 196:4 214:1 | |
| **provides**(2) 55:7 196:24 | |
| **provisions**(2) 96:5 154:19 | |
| **provoked**(1) 226:18 | |
| **prudent**(1) 188:24 | |
| **public**(2) 51:15 51:18 | |
| **published**(1) 71:11 | |
| **pull**(2) 100:11 155:6 | |
| **pullen**(1) 2:39 | |
| **pulling**(3) 79:3 79:7 107:10 | |
| **pultman**(1) 3:17 | |
| **punctuation**(1) 90:10 | |
| **pure**(10) 55:5 70:13 72:4 72:5 92:13 169:6 178:23 178:24 179:2 231:11 | |
| **purely**(1) 234:3 | |
| **purport**(3) 93:3 93:4 222:4 | |
| **purporting**(1) 92:25 | |
| **purpose**(6) 45:13 73:2 171:23 188:17 188:17 230:16 | |
| **purposes**(50) 37:15 38:17 45:22 56:23 57:2 58:9 58:15 80:2 86:13 86:15 102:21 105:16 136:3 136:23 136:23 137:3 141:21 142:3 142:14 142:20 143:21 147:10 150:5 151:6 155:16 164:9 170:20 179:17 183:21 184:7 184:25 185:8 185:20 186:23 187:1 187:11 187:12 187:22 187:24 188:18 188:19 189:5 189:7 190:17 191:18 191:25 195:3 208:21 210:4 211:5 | |
| **pursuant**(7) 88:13 88:17 142:25 160:6 166:6 173:11 188:1 | |
| **pursue**(1) 229:15 | |
| **pursuing**(1) 229:8 | |
| **pursuit**(1) 203:12 | |
| **put**(27) 35:9 38:10 39:24 40:14 53:15 62:6 63:14 65:23 65:24 69:14 81:1 127:3 133:23 136:10 136:18 150:5 153:19 156:5 183:1 187:2 208:24 215:1 218:5 218:7 224:25 233:16 233:16 | |
| **puts**(1) 25:4 | |
| **putting**(5) 116:19 116:23 117:15 142:19 233:12 | |
| **qualitative**(1) 235:24 | |
| **quality**(1) 187:12 | |
| **quandary**(1) 76:4 | |
| **quane**(1) 6:9 | |
| **quantity**(1) 187:13 | |
| **question**(35) 18:5 18:23 23:9 27:22 29:12 39:8 39:10 46:13 46:17 56:21 57:14 57:18 70:15 77:1 85:8 86:2 86:8 86:16 96:1 96:12 98:8 105:11 105:25 106:11 107:3 128:22 137:7 164:15 183:2 210:8 226:6 227:4 227:22 228:24 232:15 | |
| **questions**(15) 14:20 40:6 49:17 50:17 54:18 62:13 66:22 66:22 111:14 153:3 153:4 166:11 167:11 179:11 222:24 | |
| **quick**(6) 97:21 99:17 173:10 204:22 214:1 222:24 | |
| **quickest**(1) 78:17 | |
| **quickly**(10) 12:16 31:17 33:25 50:20 78:16 113:14 137:25 137:25 209:3 213:3 | |
| **quiet**(2) 241:7 241:11 | |
| **quinn**(1) 9:25 | |
| **quite**(18) 26:1 28:15 36:24 71:8 73:21 80:16 117:23 125:12 134:4 135:7 137:20 170:10 170:23 199:11 199:12 199:17 199:21 205:12 | |
| **quote**(5) 25:8 75:24 75:25 173:13 230:14 | |
| **quoted**(1) 186:1 | |
| **quotes**(2) 42:15 129:15 | |
| **quoting**(1) 89:9 | |
| **rd**  (1) 203:2 | |
| **rabbit**(1) 60:4 | |
| **raise**(4) 23:25 95:7 117:21 117:24 | |
| **raised**(16) 23:23 23:24 45:17 61:17 65:20 81:18 117:22 117:25 118:23 122:11 141:5 162:11 175:19 179:11 179:11 180:4 222:24 | |
| **raises**(1) 58:19 | |
| **raising**(3) 81:17 81:20 82:9 | |
| **ramification**(1) 164:11 | |
| **range**(4) 23:4 126:8 126:23 232:9 | |
| **rare**(1) 101:5 | |
| **rata**(118) 16:5 16:10 16:23 18:15 18:20 20:1 20:19 23:24 25:5 25:5 25:10 25:12 25:13 25:14 25:15 25:18 26:7 26:8 26:8 26:21 26:22 26:24 27:24 28:4 29:3 35:23 36:2 37:25 39:21 51:23 51:25 52:21 54:7 55:22 57:21 72:5 72:5 76:13 81:2 81:16 81:24 82:14 86:20 90:8 90:10 90:19 90:19 90:22 91:4 92:13 92:14 92:18 103:6 103:9 103:14 103:17 118:5 118:8 118:9 118:20 119:5 119:6 119:11 119:24 120:7 121:3 121:4 122:14 124:8 132:20 136:17 141:19 155:18 169:4 169:6 170:2 170:11 175:20 176:1 176:2 176:18 177:11 178:14 178:21 178:23 178:24 179:3 179:10 185:21 187:16 198:10 198:25 200:3 200:6 200:12 200:12 201:22 205:11 209:16 215:13 215:13 216:23 218:5 218:8 220:17 227:18 231:9 231:18 233:4 233:20 234:3 234:14 234:15 235:22 | |
| **rate**(1) 225:16 | |
| **rather**(9) 31:19 64:23 76:23 108:15 122:10 125:4 175:20 179:6 227:1 | |
| **rational**(1) 152:6 | |
| **rationale**(3) 179:3 231:24 232:10 | |
| **re-argue**(1) 174:6 | |
| **re-arguments**(1) 205:2 | |
| **re-cut**(1) 169:8 | |
| **re-hashed**(1) 124:11 | |
| **re-hearings**(1) 129:13 | |
| **re-litigate**(3) 117:21 117:24 174:13 | |
| **re-openings**(1) 129:14 | |
| **re-read**(1) 80:17 | |
| **re-reconsideration**(2) 219:14 238:18 | |
| **re-think**(1) 174:7 | |
| **re-writing**(1) 92:20 | |
| **reach**(2) 80:19 221:21 | |
| **reached**(6) 17:24 82:1 82:6 100:8 102:24 103:11 | |
| **reaching**(1) 44:11 | |
| **reaction**(1) 216:18 | |
| **read**(29) 53:5 63:10 64:4 65:2 66:5 72:2 73:11 74:15 75:19 76:17 80:17 81:25 81:25 128:7 155:18 179:14 182:3 212:15 218:6 221:7 221:20 221:20 223:4 224:3 224:16 226:7 226:8 230:14 233:15 | |
| **readily**(1) 152:19 | |
| **reading**(6) 65:20 81:24 84:1 148:1 199:8 233:21 | |
| **reads**(4) 45:24 158:23 181:11 181:21 | |
| **ready**(3) 116:9 154:3 172:21 | |
| **real**(5) 64:9 76:2 190:19 203:11 236:3 | |
| **realities**(2) 48:17 125:7 | |
| **reality**(1) 103:12 | |
| **realize**(1) 44:21 | |
| **realized**(1) 63:11 | |
| **really**(34) 12:15 32:3 32:6 44:7 54:10 63:21 64:21 67:6 83:4 118:9 123:21 124:13 147:11 147:20 150:14 150:20 158:12 158:19 179:7 183:1 187:7 195:12 196:5 201:15 218:2 222:7 225:25 226:12 227:12 231:25 233:10 236:25 240:3 240:22 | |
| **reargument**(1) 77:6 | |
| **rearrange**(1) 14:6 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**reason**(19) 18:18 23:22 23:25 67:14 125:21 131:9 132:8 132:19 164:23 182:18 188:3 188:5 191:10 197:17 197:23 216:5 225:23 228:3 229:21

**reasonable**(5) 51:17 52:15 122:1 132:4 132:4

**reasonably**(1) 17:24

**reasoned**(1) 241:22

**reasons**(18) 42:14 44:17 47:17 49:25 50:3 61:14 67:9 67:22 72:3 100:8 101:18 104:17 106:8 120:18 155:21 183:15 193:8 195:5 197:1

**rebut**(1) 121:1

**rebuttal**(1) 112:24

**recalibrate**(1) 102:1

**recall**(10) 22:2 122:6 126:13 160:5 162:23 165:16 176:18 178:12 179:6 200:5

**receive**(3) 170:2 171:5 171:7 171:11 214:3 232:17

**received**(6) 14:17 17:1 19:19 126:3 200:25 208:13

**receives**(1) 175:25

**recently**(4) 68:10 98:13 136:11 203:6

**recess**(3) 77:23 114:10 114:11 194:6 207:5 242:4 242:7

**recharacterization**(1) 196:10

**reclaiming**(1) 86:13

**recognition**(3) 52:12 119:15 197:5

**recognize**(8) 16:8 16:16 38:14 73:12 73:13 156:4 175:18 178:15

**recognized**(10) 20:8 45:25 82:17 85:18 110:23 124:6 141:22 145:25 175:21 216:16

**recognizes**(2) 54:7 176:2

**recognizing**(2) 73:14 176:4

**recollection**(3) 198:8 199:2 199:3

**reconcile**(2) 221:5 222:6

**reconciling**(1) 179:12

**reconsider**(11) 16:6 17:9 18:6 21:5 36:16 41:12 41:13 144:3 172:9 224:23 237:1

**reconsideration**(103) 13:18 17:3 17:20 18:22 21:6 29:10 36:19 41:15 42:19 47:11 47:16 48:15 50:22 54:4 58:17 60:7 61:6 63:4 79:9 79:20 79:22 86:19 93:15 101:4 101:21 101:23 102:8 102:10 102:18 102:19 104:4 108:24 117:8 118:15 122:18 122:25 123:20 124:5 124:12 127:17 127:24 130:1 132:12 132:15 133:1 141:5 141:9 144:19 154:5 162:10 167:3 167:9 167:12 167:15 168:20 171:16 172:2 173:7 174:9 174:12 174:14 174:17 175:1 175:8 176:10 181:1 186:6 193:4 195:2 195:19 201:2 204:6 205:9 205:14 207:21 207:23 208:9 209:16 209:21 211:1 213:10 213:21 216:14 216:17 216:21 216:24 217:1 217:8 217:12 217:15 219:8 219:10 219:11 219:11 219:18 219:24 220:14 220:23 222:12 238:11 238:14 238:16 238:17

**reconsidered**(2) 56:15 232:13

**record**(60) 17:15 19:23 20:3 21:4 21:8 22:18 42:19 60:12 60:20 60:25 61:1 61:4 61:11 80:13 80:20 80:22 82:2 82:7 82:8 83:19 85:20 86:23 88:13 88:15 89:5 90:16 90:24 91:10 92:4 92:20 92:22 100:1 122:23 124:9 132:22 142:13 146:12 166:22 169:18 171:3 172:5 172:14 197:16 197:17 197:18 199:10 199:15 203:18 204:11 209:17 209:24 211:13 221:1 221:15 221:22 222:8 222:16 228:24 232:7 238:7

**recorded**(1) 1:47

**recording**(21) 1:47 101:15 104:1 105:12 108:15 110:13 154:23 155:10 156:1 157:6 158:22 163:22 165:17 175:18 176:6 176:7 179:14 182:5 182:17 183:8 242:13

**records**(3) 144:14 186:8 197:19

**recounted**(1) 119:9

**recover**(2) 105:5 108:15

**recoveries**(5) 51:13 51:22 73:3 76:20 103:23 103:25 107:18 107:19 108:11 125:18 169:15 169:24 170:1 171:5 173:2 173:5 175:22 179:8 211:16 217:19 232:24 232:25

**recovery**(30) 55:7 57:15 57:16 57:16 58:2 58:3 59:24 70:20 71:3 71:5 71:12 71:19 73:6 76:3 76:11 76:11 104:25 105:18 106:18 108:2 121:18 126:3 126:16 126:19 171:23 211:23 212:3 215:19 215:21 215:22

**reduce**(6) 105:18 106:10 106:14 226:20 236:7 236:8

**reduced**(1) 86:15

**reduction**(1) 71:19

**reed**(3) 2:31 7:12 133:10

**refer**(10) 21:10 127:18 129:5 129:24 132:8 162:15 163:5 184:20 209:10 238:22

**reference**(11) 110:14 154:25 173:12 173:19 173:24 173:25 201:21 211:11 211:25 214:13 221:15

**referenced**(2) 68:11 221:19

**references**(3) 159:22 163:7 218:8

**referred**(20) 103:12 124:16 126:17 126:24 128:2 129:5 143:1 143:13 153:13 154:18 154:21 157:1 159:9 162:13 162:22 163:9 163:11 163:15 170:22 209:19 211:16 211:17 212:11 212:15

**referring**(8) 46:23 46:24 128:3 128:18 130:5 181:16 204:3 212:13

**refers**(13) 46:3 128:20 129:16 155:3 155:9 156:23 160:1 160:2 160:4 160:9 162:24 180:6 180:15

**regard**(9) 14:23 22:18 23:7 57:11 66:19 99:10 178:22 223:24 232:7

**regarding**(2) 21:9 156:24

**regardless**(4) 25:3 140:20 140:20 229:14

**regards**(1) 9:4

**regiment**(1) 9:4

**region**(13) 133:13 133:18 134:19 135:12 136:6 136:14 137:11 146:2 152:6 155:8 157:7 165:3 165:25

**regions**(1) 164:14

**registers**(1) 148:20

**regret**(1) 145:19

**regulations**(3) 189:1 189:2 191:6

**regulators**(1) 240:6

**reimbursement**(5) 88:19 88:21 89:12 230:16 230:18

**reimbursing**(1) 230:17

**reinforce**(1) 89:18

**reiterate**(4) 48:8 48:22 49:2 61:14

**reiterated**(2) 49:8 102:25

**reject**(1) 231:10

**rejected**(12) 88:5 90:23 109:14 119:6 122:16 144:9 144:10 144:16 185:18 185:19 188:23 231:11

**rejection**(1) 16:17

**relate**(5) 34:8 50:18 152:21 179:16 180:23

**related**(8) 20:9 21:17 22:16 38:3 138:25 142:2 210:3 240:2

**relates**(5) 21:11 65:1 67:9 100:1 183:1

**relating**(1) 215:2

**relation**(15) 50:4 136:9 139:21 143:23 144:8 144:21 145:6 145:6 145:16 145:21 146:6 149:12 149:25 150:19 150:24

**relations**(2) 135:14 135:15

**relationship**(4) 124:15 126:10 170:23

**relative**(6) 55:5 108:10 215:7 215:22 215:23 229:17

**relatively**(5) 14:16 15:9 15:14 74:4 169:15

**relaxed**(1) 132:5

**release**(5) 223:5 223:17 227:21 230:2 230:23

**released**(6) 22:5 22:6 22:9 223:6 228:6 230:13

**relegates**(1) 175:19

**relevant**(11) 54:12 93:5 94:14 96:17 97:9 119:8 123:1 148:17 148:18 154:17 178:19

**reliable**(1) 107:15

**relied**(2) 124:1 185:23

**relief**(8) 16:8 16:13 49:22 52:13 125:19 125:21 150:17 202:1

**reliefs**(1) 166:10

**relinquished**(2) 26:17 52:7

**relitigate**(1) 79:21

**relitigated**(1) 82:12

**reluctant**(2) 197:10 237:21

**rely**(4) 51:14 80:23 117:16 124:18

**remain**(1) 220:15

**remaining**(5) 22:6 110:25 185:9 193:2 212:20

**remains**(3) 156:12 168:22 220:15

**remarkable**(2) 183:15 212:20

**remarks**(4) 14:22 14:25 15:13 62:24

**remedy**(10) 44:21 86:22 86:23 192:23 192:25 198:10 200:6 200:11 200:13 200:14

**remember**(2) 43:13 177:3

**remind**(1) 49:6

**reminded**(1) 177:16

**remmy**(1) 1:27

**renaissance**(1) 4:24

**renegade**(1) 98:2

**reopen**(1) 130:8

**reopened**(1) 129:20

**reopening**(1) 132:11

**reorg**(2) 10:20 77:2

**repeat**(10) 65:15 65:25 69:13 71:25 74:2 74:19 183:23 184:1 205:6 213:8

**repeatedly**(1) 212:11

**repeating**(1) 218:24

**repetition**(3) 112:14 208:3 235:7

**replies**(1) 237:22

**reply**(24) 15:18 65:25 66:8 92:9 114:21 121:22 173:12 176:22 177:25 178:3 178:3 180:5 180:10 184:17 193:17 208:2 214:5 218:22 218:25 226:24 235:6 238:5 238:6 239:1

**report**(4) 135:24 140:6 161:11 184:21

**reporting**(1) 137:5

**reports**(4) 119:2 176:19 178:8 178:21

**represent**(5) 62:21 65:9 66:8 68:10 68:15 68:23 69:1 69:2 70:3 70:4 123:17 124:2 136:25 202:7 202:16

**represented**(5) 123:11 123:12 123:19 133:18 202:24

**reputation**(1) 147:14

**request**(11) 49:10 63:19 63:21 102:19 108:24 167:15 173:19 201:15 201:20 203:9 223:23

**requested**(1) 167:19

**requests**(7) 27:11 31:6 109:23 110:6 186:12 216:14 217:16

**require**(11) 14:6 24:19 111:12 135:11 135:11 135:12 147:24 172:23 181:25 189:1 189:2

**required**(3) 110:24 127:25 211:3

**requirement**(2) 132:5 240:21

**requires**(2) 129:10 151:22

**reread**(3) 81:25 82:1 221:20

**research**(2) 10:20 77:2

**reservation**(2) 89:19 230:13

**reserve**(3) 40:8 188:17 205:15

**reserved**(1) 187:15

**reserves**(2) 61:15 182:25

**reset**(2) 79:8 93:19

**residual**(1) 170:15

**resolution**(16) 44:16 78:20 78:22 93:8 96:13 96:19 98:24 100:4 116:17 132:21 148:25 212:24 213:2 213:5 219:9 223:7

**resolve**(14) 33:13 33:15 33:15 33:17 36:3 36:15 48:11 78:21 78:21 100:5 111:8 150:4 193:2 212:19 226:2

**resolved**(12) 33:12 33:16 38:19 39:2 93:10 95:10 137:22 137:24 140:9 140:13 220:19 233:7

**resolver**(1) 135:4

**resolvers**(5) 157:13 157:20 157:21 158:2 223:8

**resolving**(1) 99:9

**resonates**(1) 75:1

**resordo**(1) 101:8

**resort**(1) 92:5

**resourced**(2) 228:17 228:20

**resources**(1) 228:15

**respect**(52) 18:11 18:13 24:15 27:10 31:18 32:7 33:21 35:1 37:10 52:8 58:16 61:17 65:3 65:8 66:14 86:20 96:24 97:23 102:19 124:14 148:14 152:3 161:8 161:15 161:21 172:12 174:4 181:8 195:6 198:22 200:1 203:6 203:11 204:11 205:7 207:23 208:9 209:16 209:21 210:5 211:5 211:13 213:20 228:21 229:22 231:4 231:11 232:4 232:1 237:19 239:5 240:6

**respected**(5) 57:24 64:11 66:3 98:21 212:6

**respectful**(1) 153:25 156:9 156:16 156:16 158:8 158:24 159:7 161:13 161:17 163:21 166:7

**respectfully**(4) 57:6 156:18 188:11 205:15

**respecting**(2) 148:3 148:4

**respective**(1) 55:8 119:9

**respond**(4) 18:17 64:24 112:7 239:4

**responded**(1) 66:8

**response**(16) 25:6 40:8 64:20 64:21 158:20 176:19 176:20 176:23 177:17 177:6 177:14 177:15 184:8 184:16 201:14

**responsible**(2) 61:23 235:19

**rest**(5) 93:9 165:12 205:20 231:1 234:15

**restart**(1) 239:12

**restricted**(1) 182:3

**restriction**(1) 154:3

**result**(34) 16:21 17:24 19:10 20:15 20:17 26:20 32:2 44:12 51:23 52:19 52:24 82:23 83:8 83:16 85:13 120:23 124:3 132:3 136:10 136:17 136:18 137:21 138:1 164:20 169:9 180:18 180:19 182:12 182:13 204:14 215:7 231:5 231:9 236:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**resulting**(1) 141:13
**results**(8) 44:11 52:19 53:18 76:4 100:8 120:3 142:18 176:7

**results-driven**(1) 169:12
**retain**(1) 150:1
**retained**(2) 136:20 204:13
**retirement**(1) 70:1
**reunion**(1) 78:6
**revenue**(6) 185:1 185:3 185:5 185:18 230:9 230:10

**revenues**(3) 184:24 184:25 185:4
**review**(4) 150:18 172:4 188:6 199:11
**reviewed**(3) 102:15 109:2 222:8
**revise**(1) 172:17
**revised**(1) 219:20
**reynertson's**(1) 228:14
**rhetorical**(2) 57:14 57:18
**richard**(1) 138:24
**ridiculous**(1) 150:23
**riela**(1) 4:7

**right**(96) 12:13 12:13 13:8 15:19 19:15 19:16 20:4 21:12 22:4 22:11 24:5 30:24 32:25 37:23 39:15 40:16 40:24 41:4 41:4 41:17 54:5 67:1 74:9 74:12 77:5 77:12 77:15 77:17 77:21 85:9 86:8 86:23 87:2 87:3 94:11 95:12 97:6 104:3 106:2 106:5 106:7 109:7 113:1 113:24 114:7 114:17 115:16 115:21 116:10 120:19 131:11 147:3 149:19 153:1 154:15 155:22 157:18 157:23 158:5 168:12 168:14 177:10 177:13 178:5 185:25 194:5 195:9 197:12 200:15 200:17 202:2 202:11 205:25 207:1 207:3 207:4 213:12 214:7 215:10 215:10 220:22 227:23 229:16 229:22 230:25 236:4 237:20 238:1 238:19 239:9 239:23 241:1 241:6 241:15 242:3

**right-hand**(1) 121:15
**rightfully**(1) 187:15
**righton**(1) 7:39
**rights**(16) 61:16 66:14 89:19 89:21 96:23 97:6 98:3 134:5 134:5 134:8 136:5 159:25 161:4 205:15 207:19 230:13

**rinnevaara**(1) 11:21
**rise**(4) 12:2 76:1 207:6 210:23
**risk**(2) 238:10 238:11
**river**(1) 9:9
**road**(1) 39:11
**roadmap**(1) 214:1
**rob**(2) 202:12 202:14
**robert**(4) 4:16 5:20 8:6 202:6
**robin's**(1) 104:12
**rodney**(2) 2:27 5:21
**role**(2) 65:5 191:2
**room**(5) 70:7 73:2 76:25 116:12 123:24
**rooney**(1) 3:1
**roots**(2) 43:12 44:6
**rosenberg**(17) 127:12 127:15 127:16 128:9 128:12 130:4 130:6 130:10 130:13 130:16 130:23 131:2 131:5 131:9 133:4 133:6 175:7
**rosenfeld**(1) 118:2
**rosenfelt**(1) 11:25
**rosenman**(2) 7:29 194:17

**rosenthal**(138) 1:33 12:16 13:13 13:14 13:19 13:22 13:25 13:25 14:9 15:12 15:5 15:13 15:21 15:25 16:1 17:5 18:25 19:1 19:5 19:8 19:12 19:14 19:17 20:5 21:13 22:5 23:8 23:10 23:14 23:18 24:3 24:6 25:22 25:23 25:24 25:25 26:4 27:16 27:17 27:20 27:23 28:3 28:8 28:20 28:24 29:14 29:17 29:18 29:21 29:25 30:6 30:9 30:25 32:10 32:14 36:22 36:23 37:1 37:5 37:7 37:10 39:6 39:7 39:9 39:14 39:16 40:13 40:17 40:25 41:5 41:6 41:9 48:5 59:14 60:7 63:23 64:5 65:14 91:1 94:2 99:22 105:9 105:10 106:12 107:4 107:17 110:17 111:17 111:18 111:19 111:22 112:9 112:10 112:11 112:17 118:3 118:4 140:8 143:1 143:9 145:19 147:6 152:22 176:12 185:23 188:14 195:15 195:20 205:25 206:2 206:15 206:22 206:25 207:2 208:4 211:14 216:2 216:5 216:7 218:21 219:1 220:7 220:10 223:9 223:11 223:14 223:16 229:5 229:6 229:10 235:7 235:8 238:8 238:25 240:8 241:3 241:4 241:18

**rosenthal's**(2) 107:7 240:3
**ross**(1) 11:25
**rothschild**(1) 2:5
**round**(4) 70:18 70:22 70:25 71:6
**ruby**(2) 3:8 15:7
**rudnick**(5) 2:12 68:6 68:10 214:19 214:23
**rug's**(1) 193:7
**rule**(26) 17:7 17:7 33:19 63:6 83:6 87:8 117:7 117:9 117:20 129:10 129:12 132:5 152:22 173:11 173:12 195:8 195:9 195:22 196:1 196:14 196:17 196:24 201:1 217:4 217:18 239:14
**ruled**(2) 36:17 190:3
**rules**(3) 124:6 217:2 219:25
**ruling**(4) 17:10 17:14 44:14 212:19
**rulings**(6) 48:13 50:25 51:10 51:16 168:1 174:24

**run**(4) 40:19 43:14 70:18 132:14
**running**(1) 219:16
**s.a**(1) 202:8

**sagaz**(3) 130:21 130:24 131:6
**said**(156) 16:22 17:22 18:3 18:5 20:14 20:15 20:16 20:19 21:19 23:1 23:3 23:6 23:20 26:10 26:14 26:19 27:1 27:6 30:1 30:4 30:15 32:8 33:8 33:21 33:22 34:12 34:22 35:24 36:2 36:17 37:7 37:9 42:2 43:25 44:1 44:2 44:5 44:9 44:9 44:13 50:23 51:1 59:9 60:7 60:16 62:5 64:3 65:14 67:14 67:22 69:13 69:17 71:18 71:25 78:18 80:17 80:19 84:16 86:9 88:6 91:1 91:11 91:17 91:18 91:20 92:10 93:1 101:3 101:6 103:22 105:9 107:17 110:17 110:20 112:16 115:23 118:2 118:4 120:2 120:6 120:17 121:12 128:4 128:19 128:8 135:13 138:16 141:22 148:9 148:12 150:4 152:7 154:10 155:23 158:17 161:11 163:21 167:22 176:10 176:12 178:12 184:17 188:5 185:13 186:2 191:4 192:12 195:15 196:2 199:8 200:8 200:12 200:23 201:19 201:20 202:14 207:14 208:4 211:23 213:9 216:17 217:21 218:7 218:16 220:12 220:13 221:2 221:16 221:20 222:5 222:13 224:3 224:14 224:15 224:19 224:23 225:8 225:9 225:19 226:4 226:5 226:19 229:14 230:4 230:6 230:8 230:8 231:16 231:25 232:16 232:21 232:23 233:11 234:6 237:1 237:10

**sale**(11) 21:15 22:2 39:5 59:25 90:1 155:22 160:5 168:22 172:11 184:14 223:19
**sales**(11) 25:11 25:12 26:18 29:3 129:16 143:11 144:9 145:7 167:18 233:5 234:3

**salmas**(7) 201:4 201:6 201:10 201:11 201:20 201:25 202:3
**saltzstein**(6) 5:15 202:9 202:12 202:14 204:5 204:10

**same**(53) 21:11 32:18 32:23 33:10 41:2 58:13 66:7 72:5 73:1 76:4 76:7 81:17 87:9 110:8 110:11 114:25 126:8 134:22 134:23 135:15 140:9 143:5 143:7 143:15 144:4 144:9 144:18 151:1 151:8 152:11 159:4 159:10 160:1 161:14 162:14 164:8 164:24 165:4 165:11 166:5 173:8 179:16 179:19 180:22 198:21 199:11 221:24 224:8 226:17 240:11 240:21 241:14 241:19

**sameer**(1) 5:33
**samis**(1) 4:23
**san**(1) 3:28
**sandeep**(1) 11:37
**sanderson**(1) 7:23
**sandy**(1) 7:9
**sat**(2) 194:23 198:5
**satisfied**(2) 18:8 42:17
**satisfy**(1) 35:15
**save**(3) 99:3 99:4 99:5
**saw**(2) 23:12 118:23
**say**(155) 16:15 19:3 19:10 22:15 22:18 25:9 26:22 27:24 28:11 28:13 28:16 29:1 29:10 31:5 32:11 34:2 34:8 35:4 36:20 37:17 39:11 40:10 43:1 46:13 51:6 53:14 53:18 58:6 58:10 58:19 59:16 61:19 63:22 64:8 65:3 65:21 66:11 71:21 75:22 75:24 75:25 76:7 78:5 79:14 83:2 83:5 83:9 83:16 88:1 88:11 90:4 90:15 90:17 92:9 95:9 95:12 95:17 96:4 96:21 96:21 97:9 97:14 105:17 105:21 106:19 108:6 108:23 108:25 109:18 109:22 110:9 112:12 112:12 112:16 114:18 114:23 118:9 118:16 123:2 126:22 128:16 138:18 138:19 139:10 141:23 144:2 145:18 149:8 149:25 150:10 150:17 150:22 153:16 156:18 158:2 158:21 159:1 161:22 162:1 162:4 162:8 162:8 163:14 166:11 168:21 172:22 173:9 179:4 180:25 181:2 184:23 185:21 186:2 186:4 186:14 188:12 188:16 189:4 191:24 193:2 193:25 195:17 196:1 199:7 200:2 204:14 212:11 212:16 215:7 215:19 215:21 218:17 219:2 219:23 223:17 224:3 224:11 224:11 225:18 226:2 226:24 227:15 229:8 229:19 230:12 234:16 235:15 235:20 235:25 236:3 236:24 237:1 241:6 241:20

**saying**(36) 21:1 26:2 27:3 28:25 34:4 38:19 44:5 51:2 56:20 57:10 61:22 66:7 66:10 85:7 119:6 122:18 125:24 146:12 150:12 152:18 157:14 176:25 179:8 184:3 198:17 211:20 221:25 225:10 226:14 233:1 233:2 233:15 234:25 236:11 237:14 241:10

**says**(41) 33:5 33:19 42:16 54:6 63:25 64:10 84:20 84:24 88:13 89:11 89:19 90:12 90:16 107:7 111:4 117:20 122:25 128:5 128:5 128:17 128:20 132:1 146:3 146:8 149:24 155:18 158:19 158:21 158:22 159:2 160:16 162:2 211:20 217:9 217:11 219:13 220:17 223:6 223:8 230:15 231:18

**scale**(1) 28:18
**scenario**(2) 126:7 142:15
**scenarios**(6) 120:11 121:11 122:10 123:16 125:16 125:18
**schedule**(6) 88:2 125:14 160:12 160:18 160:25 161:12

**schedules**(4) 14:4 66:17 110:25 122:20
**scheme**(2) 83:10 191:1
**schiffrin**(1) 8:38

**schlerf**(1) 2:6
**school**(1) 117:7
**schuylkill**(1) 1:42
**schweitzer**(1) 6:5
**scoffed**(1) 20:13
**scoop**(1) 32:20
**scores**(1) 51:14
**seated**(5) 12:4 12:5 114:12 194:7 207:7
**second**(25) 18:1 45:24 47:11 47:23 63:15 95:1 104:24 116:18 131:15 131:24 149:21 153:23 156:7 157:24 161:20 165:14 169:25 174:10 197:3 209:9 212:9 219:17 220:10 236:15 236:20

**second-guessing**(1) 192:22
**secondary**(2) 70:4 98:15
**secondly**(2) 63:22 86:24
**seconds**(1) 192:8
**secrecy**(1) 42:23
**section**(10) 160:20 160:25 173:16 179:20 179:24 189:25 190:23 228:16 239:17 239:19
**sections**(2) 194:24
**securities**(2) 10:12 11:36
**see**(30) 19:20 33:3 39:13 40:22 43:4 43:23 44:23 45:12 48:10 48:24 53:2 53:4 54:11 69:8 109:7 110:14 111:10 113:24 114:16 115:7 142:18 142:21 143:8 158:23 162:7 168:6 171:20 192:17 201:9 236:5

**seeing**(3) 65:8 114:18 140:22
**seek**(9) 63:23 122:13 137:12 172:21 174:11 174:23 186:15 214:3 220:13

**seeking**(7) 66:20 144:17 144:19 169:8 186:6 192:23 202:1

**seeks**(1) 37:20
**seem**(8) 45:14 80:24 92:6 146:16 192:22 192:22 205:1 239:1
**seemed**(2) 148:12 151:20
**seemingly**(1) 85:17
**seems**(16) 31:18 35:19 38:12 45:15 68:22 74:11 98:17 111:13 117:14 129:19 149:7 187:24 188:10 192:4 192:11 240:15

**seen**(6) 59:14 63:16 116:20 168:1 197:1 197:19

**selected**(2) 76:13 216:20
**self-evident**(1) 31:19
**self-serving**(2) 169:17 200:16
**selina**(1) 5:6
**sell**(1) 38:23
**selling**(12) 52:7 155:10 160:2 160:2 160:9 160:10 210:10 223:20 223:21 223:21 225:14 225:22

**send**(3) 193:3 193:4 199:19
**sense**(7) 14:10 73:8 102:1 102:7 112:21 134:19 166:8
**sentence**(11) 45:24 62:4 89:10 89:11 128:7 131:15 131:16 131:24 212:13 212:14 236:23
**sentences**(1) 156:3
**seon**(1) 10:13
**separate**(20) 86:24 99:1 133:19 133:20 134:1 134:5 134:6 135:11 135:16 136:21 139:15 144:20 144:22 155:25 156:12 157:3 157:5 160:25 165:12 183:15

**separately**(6) 87:14 87:19 87:20 87:24 88:3 156:14
**separateness**(8) 64:11 66:3 73:13 73:13 155:15 156:17 162:23 163:14

**september**(2) 88:14 89:8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**serengeti**(1) 10:24
**serial**(2) 176:10 219:7
**seriatim**(1) 99:7
**series**(1) 119:12
**serious**(2) 129:17 164:11
**seriously**(3) 118:17 172:1 199:11
**serve**(1) 73:1
**service**(2) 1:41 1:48
**services**(1) 1:41
**session**(1) 12:3
**set**(18) 34:23 37:15 38:14 40:3 43:3 47:20 72:16 80:11 83:18 86:21 90:9 122:11 123:23 132:9 176:1 178:20 210:13 217:5
**sets**(3) 130:1 130:17 239:8
**setting**(1) 91:6
**settled**(12) 30:23 34:14 34:19 52:9 58:7 142:25 143:4 143:18 143:20 146:7 182:4 212:6
**settlement**(14) 30:13 34:17 55:13 55:20 61:17 61:20 88:14 89:7 93:17 142:25 143:18 165:21 165:23 212:10
**settlements**(15) 32:7 33:21 33:22 33:23 93:9 111:3 181:8 181:9 181:12 181:22 182:4 182:18 223:24 224:1 224:12
**settles**(1) 141:2
**settling**(1) 224:4
**seven**(2) 2:19 68:5
**seventh**(2) 5:36 238:23
**several**(8) 24:9 30:22 34:1 145:13 176:15 207:14 208:4 210:2
**severance**(2) 44:1 69:20
**severe**(1) 175:11
**severely**(1) 85:19
**shall**(5) 88:21 89:13 150:1 150:6 230:18
**shandro**(1) 7:9
**shape**(1) 162:16
**share**(5) 25:11 51:12 116:18 194:21 233:4
**shared**(2) 231:12 232:2
**shares**(2) 57:23 58:1
**sharh**(1) 8:26
**shaw**(1) 8:25
**shayne**(1) 50:15
**she**(5) 43:25 44:1 44:2 129:25 131:16
**sheila**(2) 41:8 41:10
**shelter**(1) 60:10
**she'll**(1) 202:9
**shibley**(1) 7:39
**shipping**(1) 117:19
**shocking**(1) 125:20
**shockingly**(1) 226:15
**shopping**(1) 41:23
**short**(14) 12:42 65:25 158:25 196:3 202:20 202:22 206:24 215:12
**shortened**(1) 206:14
**shortfall**(15) 45:25 46:1 46:4 46:23 57:23 58:13 67:10 67:13 67:15 211:4 211:11
**shorthand**(1) 21:10
**shot**(1) 73:5

**should**(131) 15:9 15:13 20:24 22:8 22:22 23:1 23:6 24:11 26:11 27:3 28:17 29:5 31:24 34:8 34:23 40:3 40:10 44:8 44:14 48:16 48:22 49:6 49:6 59:15 61:20 62:1 65:22 72:21 79:22 79:23 79:23 82:12 86:13 87:14 93:10 96:15 96:16 100:3 100:15 101:9 102:12 103:24 104:6 105:18 106:10 106:14 112:23 114:3 117:3 119:6 121:5 122:24 123:19 126:6 127:10 129:18 129:20 134:25 140:23 141:11 141:21 142:1 142:3 142:20 142:23 143:20 144:4 146:9 146:13 148:16 148:22 149:1 150:18 150:22 151:3 151:5 154:8 156:23 158:14 171:16 172:25 173:1 173:3 176:11 181:1 182:19 183:3 183:20 183:21 184:7 186:19 186:21 187:22 187:22 187:25 188:3 188:4 188:15 189:7 190:4 190:16 190:24 192:2 192:6 192:20 193:9 195:24 196:18 196:25 210:16 212:7 212:22 213:4 213:6 213:7 216:22 217:10 220:3 222:4 224:1 225:13 225:23 230:4 230:7 230:8 231:3 232:12 236:20 236:20 240:7 240:16 240:20
**shoulder**(1) 97:23
**shouldn't**(6) 33:8 48:20 58:19 100:11 101:16 224:11
**shouldn't**(7) 17:6 36:13 39:21 114:22 179:9 183:5 185:7
**show**(12) 19:23 71:4 77:1 104:16 122:3 124:4 125:20 125:24 148:5 150:20 153:21 196:11
**showing**(5) 21:8 126:11 231:20 232:3
**shown**(1) 144:13
**shows**(2) 21:23 124:19
**shred**(1) 236:23
**side**(9) 44:5 58:1 68:22 84:25 112:13 121:15 121:16 124:2 164:24
**sight**(1) 165:2
**sign**(2) 98:20 99:16
**signatory**(2) 135:2 135:6
**signed**(1) 155:8
**significant**(11) 39:18 61:2 71:13 71:20 112:4 112:7 152:17 154:6 178:24 178:25 203:3
**significantly**(3) 16:25 76:10 204:24
**silence**(1) 94:5
**silent**(1) 84:11
**silver**(3) 8:17 10:32 11:20
**similar**(7) 45:19 55:20 75:22 140:1 140:15 190:1 191:4
**similarly**(3) 142:15 179:20 182:12
**simon**(1) 7:17
**simple**(8) 28:15 41:17 62:7 132:19 137:9 228:3 234:16 235:5
**simply**(21) 47:5 48:2 50:23 52:13 67:11 67:21 108:6 108:10 108:25 146:1 147:9 161:15 164:20 169:16 174:11 186:4 192:23 200:15 214:12 215:23 232:5
**simultaneously**(1) 99:7
**since**(5) 48:12 50:24 132:22 206:5 241:18
**singing**(1) 173:8
**single**(13) 19:23 19:23 119:15 144:6 149:7 156:5 156:12 178:15 181:4 218:8 218:15 218:15 218:18
**siphoned**(1) 55:14
**sir**(12) 53:20 59:6 60:14 68:7 68:7 68:13 95:25 106:14 115:20 146:20 214:20 241:24
**sit**(7) 35:18 40:6 64:23 73:2 134:24 201:9 239:16
**sitting**(2) 55:16 197:21

**situation**(8) 41:18 76:19 107:9 208:20 209:22 240:9 240:11 240:22
**situations**(1) 240:17
**six**(3) 68:4 70:9 206:4
**size**(10) 37:4 45:21 47:3 47:8 47:13 48:1 49:12 72:24 93:2 125:10
**skadden**(5) 5:14 6:23 136:21 202:7 202:14
**skew**(2) 36:1 227:18
**skinny**(1) 115:8
**skips**(19) 101:15 104:1 105:12 108:15 110:13 154:23 155:10 156:1 157:6 158:22 163:22 165:17 175:18 176:6 176:7 179:14 182:5 182:17 183:8
**slate**(2) 5:14 6:23
**slavens**(1) 6:13
**slice**(1) 90:14
**slices**(1) 125:1
**slide**(1) 120:4
**slightly**(1) 18:10
**slow**(1) 78:24
**smith**(4) 2:18 2:38 5:9 7:5
**snapback**(3) 180:16 180:16 240:13
**snowden**(3) 138:24 147:15 191:15
**so-called**(2) 52:21 151:18
**sockett**(1) 8:42
**sold**(7) 54:9 87:10 203:4 225:12 225:13 231:14 231:15
**sole**(1) 26:6
**solely**(5) 170:7 170:9 201:15 229:2 230:16
**solicited**(1) 137:20
**solicitor**(1) 131:17
**solus**(1) 9:24
**solution**(5) 28:1 28:2 28:3 178:20 240:23
**solve**(3) 92:25 93:14 109:24
**some**(74) 15:18 17:23 20:17 23:22 23:25 30:12 31:16 33:23 34:1 39:17 48:23 51:6 62:24 67:16 69:6 69:25 70:5 70:5 70:6 70:10 70:12 70:23 71:13 79:4 79:7 80:8 81:1 82:5 83:17 86:12 86:15 92:1 96:6 100:24 101:20 103:17 116:16 120:6 133:11 134:9 142:16 145:8 148:18 148:19 150:9 150:21 151:12 151:14 152:22 156:6 157:5 159:6 159:22 167:8 181:14 181:24 183:4 186:1 186:13 188:2 195:14 196:4 196:11 197:9 197:15 207:25 208:22 209:4 214:25 217:10 222:5 224:14 227:16 228:9
**somebody**(1) 12:17
**somehow**(2) 169:10 220:4
**someone**(7) 61:22 76:25 78:11 161:7 164:24 164:25 200:4
**something**(33) 26:21 26:23 45:14 63:23 72:6 72:7 72:22 83:18 86:9 91:2 91:3 91:5 91:6 102:22 108:23 109:24 116:23 126:23 144:19 145:10 172:14 173:21 180:16 186:4 186:5 187:8 187:24 188:8 188:13 222:2 222:9 232:19 234:18
**somewhat**(5) 92:7 95:5 152:17 226:22
**somewhere**(2) 12:17 30:13
**soon**(2) 59:8 141:2
**sooner**(1) 137:8
**sophisticated**(3) 71:14 123:11 123:14
**sorkin**(1) 11:29
**sorry**(37) 23:15 28:20 41:10 47:22 56:10 60:23 68:9 68:13 71:17 71:18 75:5 83:25 84:7 94:6 104:15 113:11 113:13 115:7 115:9 123:7 139:8 153:2 167:7 171:1 175:15 177:15 180:10 189:19 189:21 190:12 191:14 201:5 204:3 229:13 238:4 239:21 241:10

**sort**(8) 41:23 74:3 90:5 103:18 111:10 140:1 140:10 170:5
**sorted**(1) 209:2
**sought**(9) 16:13 21:7 40:14 47:10 49:22 122:14 137:18 162:9 203:7
**sound**(6) 1:47 17:10 28:19 138:9 220:6 242:13
**sounds**(3) 15:24 65:21 168:14
**sources**(1) 104:25
**space**(2) 59:5 59:23
**spare**(1) 42:10
**sparingly**(3) 41:19 195:25 195:25
**speak**(15) 15:5 41:7 41:14 48:10 64:24 66:4 76:19 76:22 76:23 101:15 108:12 194:23 197:23 206:17 210:8
**speaker**(24) 49:20 83:23 84:2 84:3 84:8 84:10 84:18 84:19 84:22 84:24 85:1 85:3 85:4 85:6 113:7 113:11 113:13 113:17 113:22 114:1 116:7 193:21 205:20 214:11
**speaking**(3) 127:16 152:9 214:22
**special**(2) 79:2 138:7
**specialized**(1) 134:4
**specific**(19) 17:7 33:14 35:2 35:4 35:9 40:25 69:17 71:24 81:9 82:18 102:8 138:24 141:4 141:8 144:16 144:21 169:23 207:21 223:25
**specifically**(14) 24:25 35:21 35:25 50:2 67:8 69:21 69:23 82:17 86:21 102:23 121:21 201:16 203:13 216:20
**spectrum**(2) 99:25 103:3
**speech**(1) 175:4
**speed**(2) 137:6 141:1
**spend**(5) 46:20 46:20 48:6 76:18 174:20
**spending**(1) 33:2
**spent**(3) 20:5 111:25 127:6
**spoke**(11) 38:18 90:24 105:11 123:3 123:22 220:25 224:14 230:9 236:14 236:18 236:19
**spoken**(1) 206:16
**square**(5) 2:19 5:16 73:15 96:4 96:10
**squarely**(1) 81:1
**staff**(1) 214:2
**stand**(10) 17:11 17:12 59:1 68:24 114:10 169:7 172:21 195:17 238:5 242:4
**standard**(22) 58:16 100:14 100:23 101:4 101:6 101:14 102:16 102:18 117:8 117:9 117:16 122:25 124:13 126:9 196:1 207:23 208:5 208:6 209:9 217:10 217:25 218:2
**standards**(18) 17:3 17:8 79:19 79:21 79:22 143:21 148:23 167:3 167:9 173:7 173:23 195:9 215:2 215:3 216:16 216:21 216:22 217:1
**standing**(6) 61:22 65:7 96:23 97:6 149:10 200:14
**stands**(1) 102:9
**stang**(2) 5:41 11:16
**stargatt**(3) 2:24 6:8 7:16
**starke**(1) 11:33
**start**(19) 14:3 14:9 16:2 17:2 36:6 36:7 36:8 53:2 113:7 113:14 113:18 117:7 137:10 137:13 158:15 172:13 201:13 216:7 238:13
**started**(4) 56:20 95:20 168:9 194:24
**starting**(3) 36:15 232:7 236:13
**starts**(1) 219:16
**state**(4) 64:15 93:21 142:12 200:15
**stated**(14) 28:5 47:17 52:22 79:24 132:20 151:2 172:19 175:15 175:22 176:1 178:9 195:5 199:23 221:15

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **statement**(15) 56:25 70:3 72:15 88:20 132:24 132:24 167:8 167:12 195:20 200:9 201:7 218:4 219:4 222:19 226:8 | | **submission**(32) 23:21 36:14 101:22 102:16 103:20 104:2 104:8 105:10 108:17 108:21 109:19 111:2 111:6 128:14 129:22 130:13 132:23 153:25 156:9 156:16 156:17 158:8 159:7 161:14 161:17 163:21 166:7 176:11 178:3 183:2 193:22 201:13 | | **support**(19) 27:9 50:21 51:7 64:16 73:10 86:25 89:23 89:25 119:8 121:11 124:5 125:22 142:10 143:6 204:9 206:24 215:15 221:15 222:16 | | **tax**(16) 38:12 38:24 39:1 39:4 39:13 39:19 39:20 59:13 59:25 60:9 60:21 99:17 225:4 225:5 239:17 239:20 | |
| **statements**(11) 82:19 82:22 101:13 118:21 118:25 119:3 167:9 210:1 226:17 237:25 238:8 | | | | **supported**(3) 76:12 136:9 169:18 | | **taxes**(11) 38:23 39:24 40:1 183:2 183:3 183:7 183:7 183:9 183:10 225:19 225:22 | |
| **states**(22) 1:1 1:20 19:25 28:17 29:7 30:22 37:13 45:22 47:19 50:13 54:16 54:17 85:19 119:18 125:12 135:4 144:7 158:3 182:13 191:5 212:3 233:3 | | **submissions**(18) 100:24 108:11 111:15 127:11 128:2 162:12 166:8 166:12 175:7 176:13 178:23 180:24 181:3 181:4 201:14 205:21 221:7 240:3 | | **supporter**(1) 75:12 | | **taylor**(11) 2:24 4:22 5:12 6:8 6:18 6:21 7:16 202:7 202:16 203:8 204:16 | |
| | | | | **supporters**(1) 76:6 | | **teaches**(1) 195:24 | |
| **status**(1) 66:16 | | | | **supporting**(1) 87:17 | | **team**(1) 70:3 | |
| **statute**(3) 107:1 110:13 169:20 | | **submit**(13) 22:14 25:3 93:7 169:11 171:25 183:2 186:7 193:8 222:7 231:23 232:5 232:12 233:14 | | **supportive**(2) 95:6 110:9 | | **teams**(1) 133:19 | |
| **statutes**(1) 188:25 | | | | **supports**(1) 207:16 | | **tecce**(1) 9:26 | |
| **statutorily**(1) 190:25 | | | | **suppose**(1) 74:12 | | **tech**(1) 84:22 | |
| **statutory**(2) 137:9 191:2 | | **submitted**(6) 24:11 24:23 137:4 149:23 171:10 232:10 | | **supposed**(4) 16:17 53:12 137:10 160:15 | | **technical**(1) 101:10 | |
| **stay**(6) 54:23 72:3 114:19 117:3 168:12 220:20 | | | | **supreme**(6) 42:24 49:15 57:24 58:7 117:19 130:25 | | **technically**(1) 195:20 | |
| | | **subparagraph**(1) 102:25 | | | | **telephonic**(6) 6:1 7:1 8:1 9:1 10:1 11:1 | |
| **stayed**(3) 120:19 120:20 166:3 | | **subparagraphs**(1) 158:18 | | **sure**(30) 28:24 32:14 34:2 36:24 39:14 43:19 63:10 64:7 64:15 67:12 97:25 98:9 105:23 112:15 112:15 146:25 148:20 155:14 158:13 159:14 159:18 159:23 162:25 188:21 198:9 199:2 199:15 199:23 211:14 218:23 | | **tell**(14) 17:12 43:23 47:12 47:15 70:9 75:6 112:2 116:25 133:11 154:16 159:16 159:18 226:9 241:13 | |
| **ste**(5) 2:7 3:3 4:1 4:24 5:27 | | **subsidiaries**(6) 72:16 109:6 184:14 185:4 185:16 234:19 | | | | | |
| **steal**(1) 98:2 | | | | | | **telling**(3) 159:6 241:14 | |
| **steen**(3) 1:32 6:4 14:1 | | **subsidiary**(1) 167:17 | | | | **tells**(1) 54:10 | |
| **stein**(1) 1:34 | | **substance**(4) 50:20 51:7 172:6 175:21 | | | | **temporary**(1) 188:18 | |
| **step**(6) 72:21 75:15 100:13 135:12 158:7 158:7 | | **substantially**(2) 47:17 50:3 | | **surely**(1) 90:13 | | **ten**(1) 227:15 | |
| | | **substantive**(12) 52:10 52:13 52:17 63:3 64:10 66:3 72:3 85:15 91:4 134:18 155:19 200:8 | | **surprised**(1) 95:23 | | **term**(10) 89:12 90:8 90:9 94:21 104:9 134:8 134:25 136:4 136:4 150:3 | |
| **stephen**(7) 3:33 5:12 6:18 6:21 7:21 202:7 202:16 | | | | **surprising**(1) 157:7 | | | |
| | | | | **surprisingly**(1) 53:5 | | **terminate**(1) 161:4 | |
| **steve**(2) 2:13 7:23 | | **substituted**(1) 109:15 | | **surrounding**(2) 208:16 208:18 | | **termination**(2) 161:2 191:5 | |
| **steven**(5) 8:34 68:5 68:9 214:18 214:23 | | **substitution**(1) 109:16 | | **susan**(3) 5:15 202:9 202:14 | | **terms**(18) 27:1 37:22 77:6 85:4 94:3 95:15 98:15 98:23 116:18 120:10 126:10 126:18 126:18 152:13 157:11 182:15 205:2 209:20 | |
| **stick**(1) 122:24 | | **success**(1) 48:14 | | **sustainable**(3) 116:20 116:24 | | | |
| **stikeman**(2) 136:22 202:15 | | **successful**(1) 140:24 | | **sutcliffe**(1) 11:4 | | | |
| **still**(6) 69:7 84:6 84:9 112:19 145:17 | | **such**(13) 52:10 58:23 133:20 148:10 151:11 163:25 175:13 178:20 182:6 229:8 230:18 231:24 | | **swallow**(1) 39:18 | | **test**(6) 102:17 130:1 131:23 131:24 175:5 228:17 | |
| **stock**(1) 129:16 | | | | **sworn**(2) 198:2 198:8 | | | |
| **stood**(3) 113:14 200:4 211:16 | | | | **sykes**(1) 42:15 | | **testified**(2) 119:11 119:20 | |
| **stop**(3) 51:2 61:21 140:23 | | **suck**(1) 229:24 | | **sympathetically**(1) 71:20 | | **testimony**(19) 19:18 92:12 92:19 119:8 119:19 121:2 122:2 122:8 122:15 122:21 123:3 185:11 196:10 198:2 198:8 198:10 218:3 218:15 228:11 | |
| **stopping**(1) 74:17 | | **sudden**(1) 33:7 | | **sympathy**(1) 71:23 | | | |
| **story**(3) 133:2 192:3 195:21 | | **suddenly**(1) 135:8 | | **synthetize**(1) 206:4 | | | |
| **straight**(1) 51:25 106:23 | | **sued**(5) 30:22 34:21 226:25 226:25 | | **system**(5) 53:10 53:11 84:20 101:16 138:23 | | | |
| **strategic**(2) 18:17 174:10 | | **sufficient**(3) 61:1 209:14 239:12 | | **systems**(1) 148:16 | | **table**(4) 82:11 85:20 103:18 117:15 | |
| **strategy**(4) 121:6 121:6 122:17 122:19 | | **sufficiently**(1) 17:14 | | **tab**(15) 42:5 43:8 101:8 101:12 104:12 104:14 104:15 127:20 127:21 127:22 128:3 128:9 128:13 129:2 129:24 | | **tactical**(2) 102:11 104:1 | |
| **strauss**(3) 4:13 6:39 50:11 | | **suggest**(13) 114:4 114:5 140:18 158:6 159:6 161:15 162:8 162:16 163:6 164:4 185:2 186:8 188:3 | | | | **tailor**(1) 111:12 | |
| **street**(8) 1:11 1:42 2:7 2:40 4:1 4:25 8:21 8:41 | | | | | | **take**(48) 16:11 28:9 32:23 49:4 65:22 67:20 77:13 77:21 100:13 102:5 103:14 107:25 111:20 113:24 114:2 114:3 115:21 118:17 125:22 130:18 133:15 140:8 145:17 142:12 149:14 150:11 153:20 160:10 170:14 174:14 176:17 177:7 178:10 182:5 185:8 193:23 193:24 194:1 198:21 203:24 208:8 210:25 214:2 220:4 224:22 233:18 238:5 | |
| **stress**(1) 107:14 | | | | **table**(4) 82:11 85:20 103:18 117:15 | | | |
| **strict**(2) 90:22 101:14 | | **suggested**(12) 24:15 47:4 47:14 135:22 140:8 152:22 154:7 188:14 200:6 204:11 211:2 240:8 | | | | | |
| **strictly**(2) 57:3 173:18 | | | | | | | |
| **strictness**(1) 122:22 | | | | **than**(51) 15:17 20:18 27:10 32:2 46:20 51:23 52:19 54:15 54:17 54:22 55:1 67:7 70:8 70:11 71:22 72:15 73:5 76:7 76:21 79:14 82:17 90:18 99:23 101:18 103:3 105:4 107:8 108:15 110:19 122:10 134:2 136:17 141:24 142:11 146:7 152:6 164:23 167:19 175:20 179:6 185:3 192:21 193:9 206:17 212:11 222:21 228:15 235:3 239:25 240:1 | | |
| **strike**(10) 48:2 67:12 80:25 176:16 176:24 177:3 177:14 178:7 198:21 218:22 | | **suggesting**(8) 20:16 65:18 97:8 97:9 97:12 108:6 110:12 151:5 | | | | | |
| **strikes**(1) 47:5 | | | | | | | |
| **string**(1) 107:10 | | **suggestion**(13) 62:7 113:2 118:17 123:18 147:11 153:13 156:25 157:4 158:15 161:16 166:1 210:11 240:4 | | | | **thank**(112) 12:4 13:9 13:12 16:1 19:13 41:4 41:6 41:11 45:1 45:2 49:18 49:19 50:7 59:12 60:16 62:16 62:17 67:1 67:2 67:3 67:4 67:25 68:1 68:2 75:11 75:11 76:14 76:16 77:4 77:22 98:12 100:16 100:17 101:2 111:16 113:1 114:10 114:12 114:14 115:2 115:12 116:13 116:14 116:17 127:3 127:14 133:2 138:13 145:3 145:5 153:1 153:5 153:6 153:6 153:8 153:8 163:16 163:19 163:20 163:20 166:12 166:13 166:14 166:15 183:13 183:16 193:10 193:11 193:12 194:5 194:7 194:9 194:12 194:12 198:17 199:8 201:21 201:21 201:10 202:2 202:3 202:11 202:12 205:17 205:18 205:19 205:22 206:25 207:2 210:18 210:19 213:13 213:13 213:15 214:8 214:9 214:15 214:17 215:24 216:1 216:12 223:15 237:19 237:20 239:22 239:23 241:2 241:4 241:24 241:24 242:3 242:6 | |
| **strong**(1) 101:16 | | | | | | | |
| **strongly**(2) 127:6 158:1 | | **suggestions**(1) 111:2 | | **taken**(15) 46:1 80:23 87:15 104:3 129:18 146:5 146:8 157:10 176:15 179:9 192:11 196:12 223:25 240:5 241:15 | | | |
| **strove**(1) 169:13 | | **suggests**(1) 161:24 | | | | | |
| **struck**(2) 67:16 211:12 | | **suing**(1) 131:19 | | | | | |
| **structured**(2) 118:25 119:2 | | **suisse**(1) 9:29 | | **takes**(4) 38:7 70:19 137:14 164:20 | | | |
| **struggle**(1) 73:9 | | **suit**(2) 80:24 125:1 | | **taking**(9) 28:1 52:8 74:3 90:20 104:21 159:14 192:6 205:4 206:24 | | | |
| **stuart**(1) 8:30 | | **suite**(1) 3:10 | | | | | |
| **stuck**(1) 173:23 | | **sullivan**(1) 9:25 | | | | **thankfully**(1) 228:5 | |
| **stuff**(1) 12:15 | | **summarized**(1) 136:3 | | **talk**(17) 15:7 48:14 48:19 48:21 56:5 62:4 62:5 62:10 95:1 95:6 112:20 195:7 207:24 211:15 212:10 220:10 238:10 | | **thanking**(1) 14:3 216:7 | |
| **sub**(9) 72:5 72:7 72:13 72:14 72:19 72:22 110:3 110:5 110:24 | | **summarizing**(1) 74:16 | | | | **thanks**(3) 12:21 13:11 242:5 | |
| | | **summary**(3) 18:9 19:14 61:5 | | | | | |
| **sub-allocation**(1) 97:18 | | **summer**(3) 80:15 228:5 228:6 | | **talked**(5) 73:16 73:21 122:1 161:9 238:11 | | | |
| **suballocation**(1) 210:12 | | | | **talking**(19) 44:7 49:6 58:16 75:23 75:24 92:13 94:9 97:25 98:1 107:19 108:20 108:21 109:7 133:15 162:23 171:15 184:11 209:11 221:18 | | | |
| **subcon**(4) 51:22 52:14 52:20 215:14 | | **supervise**(4) 111:5 149:12 150:12 167:19 | | | | | |
| **subject**(15) 21:24 22:21 24:7 24:7 24:8 71:6 94:20 111:14 135:5 166:10 204:22 209:22 223:8 223:18 228:13 | | **supervising**(2) 188:10 191:16 | | | | | |
| | | **supervision**(5) 138:4 147:15 149:1 149:25 188:2 | | **talks**(4) 37:19 56:14 157:11 160:14 | | | |
| | | | | **tall**(1) 115:8 | | | |
| | | **supplement**(1) 100:24 | | **tangible**(4) 109:5 109:12 144:13 185:15 | | | |
| | | **supplemental**(1) 36:14 | | **tannor**(2) 8:5 8:6 | | | |
| | | **supplier**(1) 70:6 | | **task**(2) 95:2 231:22 | | | |
| | | **suppliers**(1) 69:5 | | **taught**(1) 117:6 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that**(301) 12:20 14:4 14:17 14:19 14:23 15:9 15:16 15:19 15:20 15:22 16:8 16:11 16:16 16:21 16:22 16:25 17:9 17:12 17:14 17:14 17:15 17:15 17:16 17:17 17:17 18:5 18:15 18:16 18:18 18:19 18:23 19:10 19:15 19:20 19:21 19:22 19:24 20:9 20:12 20:14 20:16 20:18 20:19 20:24 21:1 21:3 21:3 21:5 21:5 21:8 21:8 21:16 21:16 21:22 21:23 21:23 21:24 22:5 22:12 22:12 22:15 22:19 22:20 23:6 23:13 23:20 23:24 24:6 24:8 24:12 24:14 24:17 24:18 24:21 24:23 25:3 25:6 25:9 25:12 25:13 25:14 25:16 25:19 25:19 26:3 26:13 26:13 26:19 26:20 26:21 27:10 27:13 27:13 27:15 28:1 28:2 28:4 28:11 28:18 29:1 29:2 29:4 29:8 29:8 29:11 29:24 30:1 30:14 30:16 31:7 31:7 31:14 31:19 32:17 32:19 33:8 33:10 33:11 33:12 33:18 33:18 33:19 33:19 34:2 34:10 34:12 34:13 34:15 34:16 34:20 34:24 34:24 35:3 35:5 35:9 35:9 35:11 35:13 35:15 35:19 35:24 36:2 36:15 36:19 36:21 37:7 37:9 37:11 37:11 37:16 37:18 37:20 37:21 38:1 38:5 38:7 38:8 38:10 38:10 38:13 38:14 38:16 38:16 38:17 38:21 38:21 38:25 38:25 38:25 39:1 39:2 39:3 39:11 39:16 39:18 39:24 39:25 40:2 40:2 40:5 40:7 40:11 40:17 40:23 41:1 42:4 42:16 42:19 43:4 43:7 43:11 43:15 43:19 44:3 44:9 44:10 44:12 44:14 44:15 44:20 44:21 44:23 44:25 45:13 45:14 45:24 45:25 46:1 46:3 46:5 46:13 46:16 46:18 47:1 47:2 47:5 47:5 47:7 47:7 47:12 47:13 47:14 47:15 47:16 47:16 47:17 47:22 47:25 48:2 48:8 48:9 48:13 48:18 48:19 48:20 48:22 48:22 49:2 49:7 49:7 49:9 49:10 49:11 49:15 49:22 49:23 50:1 50:2 50:4 50:18 50:23 51:3 51:13 51:23 51:25 52:5 52:9 52:12 52:16 52:17 52:18 52:22 53:4 53:6 53:8 53:16 54:9 54:25 55:3 55:6 55:13 55:16 55:19 55:25 56:3 56:3 56:7 56:13 56:16 56:20 56:21 56:25 57:1 57:3 57:3 57:4 57:10 57:11 57:12 57:15 57:17 57:18 57:20 58:3 58:6 58:8 58:10 58:11 58:12 58:13 58:16

**that**(301) 58:18 58:18 58:19 58:21 58:21 59:13 59:15 59:16 59:19 59:21 60:1 60:5 60:7 60:12 60:17 60:18 60:21 61:1 61:3 61:12 61:13 61:14 61:23 62:3 63:7 63:11 63:18 63:19 63:20 63:20 63:21 63:23 63:25 64:1 64:4 64:6 64:7 64:9 64:14 64:15 64:17 64:18 64:22 64:24 65:1 65:3 65:4 65:8 65:8 65:11 65:15 65:19 65:20 65:20 65:21 65:21 65:22 66:5 66:10 66:11 66:14 66:16 66:18 66:18 66:19 66:21 66:24 67:8 67:18 68:11 69:3 69:4 69:5 69:7 69:15 69:19 69:21 69:23 70:4 70:5 70:5 70:7 70:12 70:17 70:18 70:19 71:5 71:8 71:10 71:12 71:19 71:19 71:25 72:4 72:6 72:7 72:12 72:21 74:2 74:5 74:6 74:11 74:15 74:21 74:23 74:24 75:1 75:16 75:17 76:1 76:3 76:4 76:6 76:6 76:9 76:10 76:11 76:12 76:14 76:17 76:22 76:25 77:2 77:5 77:10 77:19 78:18 78:19 78:20 78:24 79:3 79:12 79:13 79:15 79:16 80:4 80:8 80:8 80:9 80:13 80:14 80:17 80:19 80:19 80:21 80:25 81:1 81:4 81:6 81:8 81:23 82:1 82:4 82:6 82:6 82:8 82:9 82:10 82:10 82:10 82:16 82:21 82:21 83:11 83:16 85:1 85:2 85:10 85:12 85:19 86:11 86:15 86:18 86:18 87:1 87:5 87:7 87:7 87:10 87:13 87:17 87:17 87:22 87:24 88:2 88:4 88:9 88:10 88:11 88:12 88:13 88:14 88:16 88:18 88:20 88:23 88:23 89:5 89:10 89:15 89:18 89:19 90:3 90:5 90:6 90:12 91:6 91:11 91:20 91:22 91:24 91:24 91:25 92:3 92:10 92:16 92:19 92:20 92:21 92:23 92:24 93:1 93:3 93:4 93:8 93:8 93:11 93:16 93:20 93:24 94:2 94:4 94:7 94:23 94:24 95:12 95:22 95:23 95:23 96:4 96:6 96:11 96:15 96:18 96:19 96:21 96:21 96:21 96:22 97:5 97:9 97:9 97:12 97:14 97:17 97:18 97:19 97:20 97:21 97:25 98:5 98:13 98:15 98:17 98:18 98:20 98:20 98:21 99:3 99:3 99:10 99:10 99:14 99:15 99:22 100:9 100:10 100:10 100:14 100:24 100:24 101:14 101:18 101:20 102:1 102:4 102:5 102:6 102:8 102:12 102:12 102:18 102:20 103:3 103:6 103:7 103:10 103:12 103:13 103:13

**that**(301) 103:16 103:16 103:19 104:11 104:19 104:20 104:22 104:22 104:25 105:1 105:5 105:6 105:12 105:14 105:18 105:22 106:8 106:9 106:9 106:11 106:12 106:24 106:25 107:2 107:3 107:4 107:6 107:9 107:9 107:17 108:1 108:5 108:6 108:7 108:22 108:24 108:25 109:2 109:6 109:8 109:9 109:15 109:18 109:18 109:19 109:25 110:7 110:9 110:9 110:12 110:19 111:2 111:8 111:12 112:1 112:2 112:4 112:5 112:13 112:17 112:18 112:20 112:22 113:9 113:24 114:8 114:19 114:25 116:14 116:21 116:23 117:4 117:11 117:12 117:13 117:18 117:20 117:22 117:25 118:1 118:4 118:6 118:7 118:9 118:10 118:12 118:17 118:22 118:23 118:24 118:25 119:5 119:8 119:13 119:18 119:22 119:23 119:25 119:25 120:1 120:4 120:11 120:11 120:14 120:18 120:25 121:2 121:4 121:5 121:5 121:18 121:19 121:22 122:1 122:15 122:24 123:4 123:9 123:10 123:14 123:18 123:22 124:6 124:10 124:16 124:18 124:19 124:22 124:24 125:9 125:11 125:19 125:20 125:21 125:24 125:25 126:9 126:11 126:17 126:20 126:22 126:23 127:9 128:4 128:5 128:14 128:21 128:24 129:4 129:9 129:10 129:12 129:19 129:22 129:24 130:2 130:13 130:14 131:8 131:16 131:17 131:20 131:24 132:3 132:10 132:17 132:17 132:17 132:19 132:25 133:14 133:14 133:16 133:19 133:23 133:24 134:3 134:3 134:8 134:20 135:4 135:13 135:21 135:23 136:2 136:10 136:11 136:11 136:16 136:18 137:14 137:20 137:21 137:22 138:1 138:2 138:16 138:19 139:21 140:2 140:2 140:6 140:7 140:19 140:21 140:21 140:23 140:24 141:1 141:4 141:6 141:14 141:15 141:18 141:20 141:23 141:23 142:1 142:2 142:2 142:5 142:13 142:16 142:18 142:18 142:20 142:20 142:22 142:23 143:1 143:4 143:8 143:9 143:10 143:12 143:13 143:16 143:18 143:19 143:22 143:22 144:1 144:2 144:5 144:5 144:10 144:11 144:12 144:13 144:15 144:17 144:17 145:10 145:12 145:14 145:15 145:17 145:19 145:24 145:25 145:25 146:3 146:5 146:5 146:5 146:7 146:8 146:10 146:11 146:12 146:15 146:17 147:3 147:6 147:7 147:9 147:23 147:23 147:25 148:2 148:5 148:5 148:6 148:6 148:13 148:13 148:14 148:20 148:23 148:25 148:25 149:2 149:3 149:9 149:10 149:13 149:25 150:4 150:5 150:9 150:9

**that**(301) 150:10 150:12 150:13 150:20 150:20 150:22 150:22 150:23 150:25 151:2 151:2 151:3 151:4 151:5 151:5 151:8 151:11 151:16 151:20 151:25 152:1 152:2 152:2 152:8 152:14 152:16 152:21 152:24 153:10 153:12 153:13 153:14 153:16 153:18 153:21 153:21 153:24 154:1 154:6 154:8 154:8 154:12 154:13 154:15 154:17 154:19 154:20 154:24 154:4 155:7 155:10 155:12 155:14 155:17 155:23 155:24 155:25 156:4 156:8 156:17 156:20 156:21 156:21 156:25 156:25 157:1 157:5 157:8 157:24 158:2 158:3 158:4 158:6 158:6 158:7 158:13 158:15 158:17 158:24 159:2 159:6 159:6 159:11 159:16 159:20 159:22 160:8 160:12 160:14 160:20 160:20 161:2 161:5 161:6 161:7 161:11 161:12 161:16 161:16 161:22 161:23 161:25 162:1 162:2 162:4 162:7 162:8 162:9 162:10 162:16 162:25 163:2 163:6 163:11 163:14 163:15 163:19 163:22 163:23 163:24 163:25 164:1 164:3 164:8 164:11 164:15 164:16 165:3 165:17 165:22 165:22 165:23 165:24 166:1 167:4 167:15 167:15 167:22 167:25 168:22 168:25 168:25 169:4 169:5 169:8 169:9 169:12 169:12 169:14 169:16 169:21 170:6 170:11 170:19 170:21 171:2 171:3 171:4 171:4 171:5 171:10 171:19 171:20 171:22 171:25 171:25 172:13 172:14 172:15 172:16 172:20 172:22 172:25 173:2 173:4 173:10 173:17 173:19 173:21 173:21 174:1 174:4 174:4 174:4 174:5 174:5 174:8 174:16 174:18 174:21 174:25 175:9 175:12 175:21 175:24 176:5 176:8 176:11 176:12 176:13 176:14 176:16 176:18 176:19 176:19 177:15 177:16 178:19 178:21 178:22 178:22 179:3 179:4 179:4 179:6 179:12 179:15 179:18 179:21 179:24 180:4 180:5 180:15 180:19 180:21 180:24 181:6 181:11 181:15 182:7 182:7 182:10 182:18 182:19 182:20 183:3 183:3 183:7 183:8 183:14 183:19 183:20 183:23 184:1 184:3 184:3 184:6 184:10 184:21 184:23 185:2 185:2 185:5 185:7 185:12 185:12 185:15 185:16 185:21 185:22 186:2 186:2 186:5 186:6 186:7 186:8 186:8 186:10 186:12 186:12 186:13 186:15 186:15 186:19 186:22 186:25 187:2 187:3 187:14 187:16 187:16 187:17 187:18 187:18 187:19 187:24 188:3 188:3 188:6 188:10 188:11 188:13 188:15 188:20 188:23 189:2 189:6 189:8 189:13 189:15 189:17

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that**(301) 189:22 189:23 189:24 190:5 190:6 190:10 190:13 190:13 190:19 190:22 190:23 190:25 190:25 191:3 191:7 191:10 191:11 191:11 191:14 191:17 191:21 192:4 192:11 192:15 192:16 192:17 192:19 192:20 192:21 192:22 192:24 192:25 193:2 193:5 193:8 193:9 193:13 194:1 194:20 194:24 195:10 195:13 195:15 195:17 195:17 195:20 195:24 195:24 196:1 196:4 196:5 196:7 196:11 196:12 196:12 196:18 196:24 197:2 197:4 197:6 197:6 197:7 197:7 197:7 197:8 197:17 197:18 197:19 197:22 198:3 198:4 198:18 198:18 198:20 198:22 198:23 198:25 199:3 199:4 199:4 199:7 199:9 199:10 199:10 199:15 199:23 199:24 199:24 199:25 200:2 200:5 200:7 200:8 200:10 200:13 200:15 200:16 200:24 200:25 201:9 201:21 201:21 202:1 203:16 203:17 203:18 203:20 203:22 203:23 203:25 204:1 204:1 204:5 204:6 204:14 204:18 204:20 204:22 205:3 205:3 205:9 205:12 206:3 206:5 206:10 207:3 207:14 208:5 208:6 208:7 208:15 208:16 208:17 208:19 208:21 209:1 209:1 209:4 209:14 209:14 209:16 209:17 209:24 209:24 209:25 210:2 210:7 210:10 210:11 210:13 210:14 210:15 210:25 210:25 211:1 211:2 211:2 211:3 211:6 211:7 211:7 211:8 211:9 211:11 211:12 211:12 211:13 211:15 211:19 211:20 211:20 211:21 211:21 211:24 211:25 212:4 212:8 212:16 212:18 212:20 212:21 213:7 213:8 214:2 214:3 214:4 214:13 214:25 215:18 215:19 215:21 216:8 216:15 216:18 216:21 217:7 217:7 217:8 217:9 217:9 217:14 217:21 217:22 217:25 217:25 218:1 218:16 218:16 218:17 218:17 218:22 219:2 219:4 219:6 219:11 219:14 219:19 219:19 219:20 219:23 219:24 220:4 220:13 220:21 220:22 221:1 221:2 221:4 221:6 221:7 221:10 221:11 221:14 221:17 221:21 221:23 222:1 222:2 222:5 222:7 222:7 222:9 222:9 222:14 222:16 222:17 222:19 222:20 223:10 223:20 223:25 224:1 224:3 224:10 224:11 224:11 224:18 224:20 224:20 224:22 224:24 224:25 225:6 225:6 225:10 225:10 225:12 225:20 225:23 226:4 226:6 226:7 226:8 226:8 226:8 226:14 226:16 226:18 226:18 226:25 227:1 227:4 227:13 227:18 228:4 228:6 228:14 228:16 228:18 228:18 228:20 228:23 228:25 229:2 229:14 229:15 229:18 229:19 229:23 229:24 230:4

**that**(101) 230:4 230:4 230:5 230:6 230:7 230:15 230:15 230:17 230:23 230:24 230:25 231:3 231:4 231:5 231:6 231:9 231:12 231:13 231:14 231:15 231:23 231:23 231:25 232:3 232:5 232:9 232:12 232:14 232:15 232:18 232:19 232:20 232:23 232:24 232:24 232:25 233:1 233:2 233:4 233:14 233:19 233:20 233:22 233:24 234:6 234:10 234:16 235:9 235:11 235:22 236:2 236:6 236:6 236:9 236:17 236:18 236:19 236:24 236:25 237:4 237:5 237:6 237:10 237:11 237:14 237:17 237:22 237:25 238:3 238:8 238:8 238:12 238:12 238:15 238:20 239:4 239:6 239:7 239:11 239:20 240:3 240:3 240:4 240:8 240:8 240:10 240:10 240:12 240:14 240:15 240:17 240:23 240:25 241:6 241:15 241:20 241:21 241:21 242:12

**that's**(115) 12:13 12:13 13:8 13:10 14:5 16:13 20:2 21:1 26:25 29:14 29:15 30:17 31:6 31:25 33:19 35:13 36:16 39:16 39:23 42:9 44:6 48:16 49:4 53:6 53:11 54:11 57:9 58:15 60:6 60:14 64:21 66:21 67:13 67:24 68:20 72:18 73:4 73:6 74:7 74:16 74:18 76:3 77:9 83:7 83:11 84:20 85:3 85:11 86:11 86:16 87:2 87:5 88:18 90:8 90:9 94:2 95:22 97:24 101:7 101:11 102:8 102:21 102:22 102:22 104:12 104:17 107:10 108:25 109:6 109:19 111:4 112:24 113:1 114:6 205:11 206:10 207:4 207:14 209:7 210:13 211:4 212:6 212:21 213:3 213:3 213:5 213:9 215:6 215:8 215:17 218:2 218:24 218:25 219:16 220:19 222:6 222:20 224:3 224:7 226:6 226:24 227:7 227:8 227:17 228:14 230:5 232:12 232:22 234:13 234:24 237:11 238:18 239:10 240:7 240:24

**that's**(56) 115:15 116:19 117:1 119:25 122:22 122:25 123:12 124:11 124:13 134:23 138:21 139:15 142:4 143:8 143:19 144:15 147:4 147:10 147:25 149:22 151:12 151:22 153:19 156:17 157:4 157:10 157:10 157:13 158:18 159:25 160:19 160:24 161:9 162:7 164:6 164:21 165:12 168:21 169:16 171:14 171:18 172:18 173:20 174:23 178:12 180:2 180:16 181:2 182:22 187:25 188:8 189:9 190:18 192:2 197:16 201:20

**the**(301) 1:1 1:2 1:19 3:21 3:40 4:5 4:24 11:28 12:2 12:5 12:8 12:13 12:15 12:16 12:18 12:19 12:20 12:23 12:24 13:7 13:7 13:8 13:12 13:17 13:20 13:24 14:1 14:5 14:6 14:8 14:10 14:12 14:13 14:15 14:15 14:17 14:18 14:20 14:23 14:24 14:24 15:1 15:2 15:2 15:3 15:4 15:8 15:8 15:9 15:10 15:12 15:16 15:16 15:17 15:19 15:21 15:24 16:2 16:3 16:4 16:5 16:9 16:10 16:12 16:12 16:13 16:14 16:15 16:16 16:16 16:17 16:17 16:18 16:18 16:19 17:7 17:9 17:10 17:15 17:21 17:21 17:22 17:24 17:24 18:1 18:2 18:2 18:4 18:4 18:5 18:12 18:13 18:13 18:14 18:16 18:17 18:18 18:18 18:21 18:21 18:23 18:23 19:3 19:4 19:5 19:7 19:10 19:17 19:17 19:19 19:19 19:20 19:21 19:21 19:23 19:24 19:25 20:2 20:4 20:6 20:7 20:12 20:18 20:20 20:20 20:21 20:22 20:23 20:24 20:25 21:3 21:6 21:7 21:7 21:8 21:9 21:11 21:11 21:12 21:13 21:15 21:18 21:15 21:16 21:16 21:16 21:18 21:18 21:19 21:19 21:20 21:20 21:21 21:22 21:22 21:23 21:24 21:24 22:1 22:2 22:2 22:3 22:4 22:5 22:6 22:8 22:9 22:9 22:10 22:11 22:12 22:12 22:14 22:14 22:15 22:18 22:19 22:20 22:22 22:22 22:23 22:24 22:25 22:25 23:2 23:2 23:4 23:4 23:6 23:16 23:20 23:23 23:23 23:24 23:25 24:1 24:4 24:5 24:8 24:10 24:10 24:10 24:11 24:12 24:15 24:16 24:16 24:17 24:18 24:20 24:21 24:21 24:21 24:23 24:24 24:24 24:24 24:25 25:1 25:1 25:2 25:3 25:4 25:5 25:6 25:6 25:8 25:10 25:11 25:11 25:12 25:14 25:16 25:16 25:20 26:6 26:6 26:7 26:7 26:9 26:10 26:12 26:13 26:13 26:14 26:15 26:15 26:16 26:16 26:16 26:17 26:18 26:19 26:19 26:22 27:1 27:2 27:4 27:5 27:6 27:10 27:11 27:12 27:13 27:14 27:14 27:15 27:25 27:25 28:3 28:4 28:5 28:6 28:7 28:8 28:9 28:9 28:10 28:11 28:12 28:13 28:13 28:15 28:16 28:16 28:17 28:17 28:18 28:22 28:25 28:25

**the**(301) 29:1 29:2 29:2 29:3 29:4 29:4 29:4 29:5 29:6 29:6 29:7 29:7 29:10 29:11 29:11 29:14 29:19 29:19 29:20 29:23 30:2 30:7 30:11 30:12 30:14 30:14 30:14 30:16 30:17 30:18 30:19 30:19 30:20 30:21 30:24 30:25 31:2 31:7 31:7 31:9 31:10 31:11 31:12 31:12 31:14 31:15 31:16 31:19 31:19 31:20 31:22 31:23 31:24 31:25 31:25 32:1 32:1 32:3 32:4 32:5 32:5 32:6 32:12 32:15 32:16 32:17 32:18 32:20 32:22 32:22 33:1 33:4 33:7 33:10 33:15 33:16 33:19 33:17 33:18 33:20 33:21 34:1 34:3 34:7 34:12 34:13 34:14 34:17 34:17 34:17 34:20 34:20 34:22 34:22 34:23 34:23 34:25 35:1 35:1 35:2 35:3 35:3 35:3 35:4 35:5 35:6 35:7 35:14 35:20 35:20 35:21 35:22 35:25 35:24 35:25 35:25 36:1 36:5 36:7 36:9 36:10 36:12 36:15 36:16 36:20 37:4 37:4 37:4 37:8 37:10 37:12 37:14 37:16 37:17 37:19 37:19 37:20 37:22 37:23 37:24 37:25 38:2 38:3 38:5 38:5 38:7 38:9 38:10 38:12 38:12 38:13 38:14 38:15 38:15 38:18 38:21 38:22 38:22 38:23 39:1 39:1 39:3 39:5 39:12 39:12 39:12 39:17 39:20 39:21 40:1 40:3 40:4 40:5 40:6 40:7 40:9 40:9 40:10 40:11 40:11 40:14 40:16 40:20 40:24 41:3 41:4 41:4 41:12 41:13 41:14 41:18 41:21 41:22 41:24 42:2 42:2 42:7 42:15 42:16 42:16 42:17 42:18 42:18 42:18 42:19 42:19 42:21 42:24 42:25 42:25 43:2 43:2 43:5 43:7 43:8 43:9 43:9 43:10 43:14 43:16 43:18 43:19 44:2 44:4 44:4 44:4 44:5 44:6 44:9 44:11 44:13 44:18 44:19 44:20 44:21 44:22 44:23 44:25 45:4 45:6 45:8 45:8 45:10 45:15 45:17 45:17 45:20 45:21 45:21 45:22 45:22 45:24 45:24 45:25 46:1 46:2 46:2 46:3 46:3 46:4 46:7 46:7 46:8 46:9 46:13 46:16 46:17 46:21 46:22 46:23 46:24 46:25 46:25 47:1 47:2 47:3 47:5 47:6 47:6 47:7 47:8 47:9 47:10 47:11 47:12 47:13 47:14 47:15 47:16 47:18 47:19 47:20 47:21 47:22 47:22 47:24 47:24 47:25

**the**(301) 48:1 48:1 48:2 48:4 48:5 48:7 48:8 48:8 48:9 48:12 48:12 48:13 48:13 48:13 48:15 48:17 48:17 48:19 48:20 48:20 48:21 48:22 48:24 49:1 49:2 49:5 49:6 49:7 49:10 49:10 49:11 49:12 49:12 49:14 49:14 49:18 49:19 49:22 49:23 49:24 49:25 50:2 50:3 50:5 50:6 50:6 50:9 50:11 50:12 50:14 50:15 50:20 50:21 50:21 50:22 50:23 50:24 50:24 51:5 51:6 51:9 51:11 51:11 51:12 51:12 51:13 51:13 51:13 51:14 51:15 51:15 51:16 51:16 51:22 51:23 51:25 52:1 52:1 52:2 52:4 52:7 52:12 52:12 52:13 52:16 52:22 52:24 52:24 53:2 53:2 53:3 53:4 53:5 53:6 53:6 53:8 53:9 53:9 53:10 53:11 53:12 53:14 53:16 53:17 53:17 53:18 53:22 54:2 54:2 54:3 54:3 54:6 54:7 54:8 54:8 54:9 54:10 54:10 54:11 54:15 54:15 54:16 54:17 54:17 54:18 54:19 54:19 54:19 54:20 54:20 54:21 54:22 54:22 54:22 54:24 55:1 55:3 55:3 55:5 55:5 55:6 55:7 55:7 55:9 55:10 55:11 55:11 55:12 55:12 55:14 55:16 55:17 55:17 55:19 55:19 55:20 55:23 55:24 56:1 56:2 56:3 56:13 56:14 56:15 56:16 56:18 56:19 56:20 56:21 56:22 56:22 56:25 56:25 57:1 57:2 57:4 57:5 57:6 57:7 57:9 57:11 57:12 57:19 57:19 57:20 57:21 57:21 57:22 57:22 57:23 57:25 58:1 58:1 58:2 58:5 58:7 58:7 58:11 58:13 58:13 58:14 58:15 58:18 58:18 58:21 58:22 59:3 59:3 59:4 59:5 59:9 59:12 59:13 59:14 59:14 59:15 59:15 59:16 59:19 59:23 59:23 59:24 59:25 60:1 60:1 60:10 60:6 60:8 60:9 60:9 60:11 60:12 60:12 60:19 60:21 60:21 60:22 60:22 60:22 60:23 60:25 61:2 61:5 61:6 61:7 61:7 61:8 61:8 61:9 61:9 61:10 61:10 61:14 61:14 61:15 62:5 62:6 62:8 62:9 62:10 62:15 62:18 62:22 62:23 63:1 63:6 63:7 63:12 63:13 63:14 63:15 63:15 63:17 63:24 64:1 64:2 64:3 64:3 64:4 64:6 64:7 64:15 64:16 64:20 64:25 65:2 65:6 65:6 65:7 65:7 65:9 65:13 65:19 66:7 66:7 66:8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) 66:12 66:13 66:16 66:17 67:1 67:4 67:6 67:6 67:8 67:8 67:9 67:9 67:9 67:12 67:15 67:17 67:21 67:22 67:23 68:2 68:4 68:10 68:13 68:14 68:14 68:22 68:23 69:5 69:6 69:8 69:14 69:15 69:15 69:16 69:19 69:24 70:4 70:7 70:8 70:16 70:18 70:19 70:20 70:20 70:21 70:24 71:2 71:3 71:4 71:4 71:7 71:7 71:9 71:10 71:10 71:10 71:11 71:24 72:1 72:2 72:4 72:5 72:8 72:11 72:12 72:13 72:16 72:19 72:19 72:21 72:22 72:23 72:24 72:24 72:25 73:1 73:3 73:5 73:9 73:9 73:9 73:10 73:10 73:11 73:12 73:16 73:17 73:17 73:22 73:22 73:22 73:23 73:23 73:24 73:24 73:25 74:3 74:3 74:3 74:6 74:17 74:24 75:2 75:12 75:12 75:13 75:14 75:15 75:17 75:25 75:25 76:3 76:3 76:4 76:4 76:5 76:6 76:7 76:12 76:12 76:13 76:16 76:19 76:20 76:21 76:21 77:2 77:3 77:5 77:6 77:11 77:13 77:16 77:19 77:21 78:2 78:3 78:6 78:6 78:17 78:18 78:18 78:19 78:20 78:21 78:21 78:22 78:22 78:23 78:24 78:24 78:25 79:3 79:3 79:4 79:4 79:6 79:7 79:7 79:8 79:13 79:14 79:16 79:16 79:18 79:19 79:20 79:21 79:21 79:23 79:24 80:2 80:3 80:5 80:8 80:9 80:11 80:11 80:12 80:12 80:13 80:14 80:14 80:17 80:20 80:21 80:21 80:22 81:1 81:1 81:2 81:3 81:5 81:7 81:9 81:11 81:12 81:12 81:13 81:13 81:14 81:14 81:15 81:17 81:18 81:21 81:24 82:1 82:2 82:7 82:8 82:8 82:9 82:9 82:11 82:12 82:13 82:18 82:18 82:20 82:20 82:21 82:23 83:5 83:6 83:7 83:7 83:8 83:8 83:8 83:8 83:9 83:10 83:10 83:14 83:14 83:15 83:16 83:17 83:19 83:20 83:20 83:20 83:22 84:6 84:12 84:15 84:19 84:22 84:25 85:9 85:11 85:12 85:12 85:16 85:17 85:19 85:20 85:20 85:21 85:25 86:4 86:6 86:6 86:9 86:10 86:11 86:13 86:13 86:14 86:19 86:20 86:21 86:22 86:22 86:23 86:25 87:2 87:7 87:8 87:8 87:9 87:9 87:11 87:12 87:14 87:15 87:16 87:17 87:21 87:21 87:25 87:25 88:4 88:4 88:8 88:8 88:9 88:11 88:12 | | **the**(301) 88:12 88:17 88:17 88:19 88:20 88:21 88:22 89:2 89:10 89:11 89:12 89:12 89:13 89:14 89:14 89:15 89:15 89:21 89:21 89:24 89:25 90:1 90:1 90:1 90:2 90:2 90:4 90:5 90:6 90:6 90:7 90:12 90:14 90:15 90:16 90:18 90:20 90:21 90:23 90:24 91:7 91:8 91:9 91:9 91:10 91:14 91:21 91:22 91:25 92:1 92:2 92:3 92:4 92:5 92:12 92:14 92:15 92:17 92:18 92:18 92:19 92:20 92:20 92:22 92:23 92:24 92:24 93:2 93:2 93:4 93:6 93:9 93:11 93:12 93:14 93:16 93:19 93:21 93:21 93:23 93:24 93:25 94:1 94:1 94:2 94:3 94:4 94:9 94:9 94:12 94:14 94:16 94:16 94:17 94:19 94:20 94:21 94:21 94:22 94:24 95:1 95:1 95:2 95:2 95:3 95:3 95:3 95:4 95:7 95:10 95:10 95:10 95:11 95:13 95:13 95:16 95:17 95:19 95:19 95:19 96:4 96:5 96:5 96:11 96:19 96:24 97:1 97:3 97:4 97:6 97:9 97:12 97:13 97:14 97:17 97:17 97:19 97:20 97:23 97:23 97:24 98:2 98:4 98:5 98:5 98:13 98:14 98:18 98:19 98:19 98:22 98:23 98:23 98:24 98:25 98:25 99:1 99:2 99:2 99:7 99:8 99:15 99:17 99:19 99:22 99:23 99:23 99:24 100:1 100:2 100:2 100:3 100:7 100:8 100:11 100:11 100:14 100:17 100:21 100:22 100:24 100:25 101:2 101:3 101:6 101:7 101:11 101:13 101:14 101:14 101:14 101:15 101:16 101:20 101:23 101:25 102:2 102:2 102:4 102:9 102:9 102:13 102:14 102:14 102:16 102:16 102:17 102:18 102:18 102:19 102:20 102:20 102:22 102:23 102:24 103:2 103:2 103:4 103:5 103:8 103:8 103:12 103:13 103:15 103:18 103:20 103:21 103:23 103:23 104:1 104:2 104:3 104:5 104:5 104:6 104:7 104:9 104:11 104:11 104:12 104:16 104:18 104:19 104:21 104:21 104:23 104:24 105:1 105:1 105:2 105:2 105:4 105:5 105:5 105:6 105:11 105:13 105:13 105:18 105:18 105:19 106:3 106:8 106:9 106:11 106:13 106:18 106:26 106:25 107:1 107:3 107:4 107:4 107:10 107:13 107:13 107:13 107:14 107:17 107:20 107:20 107:20 107:24 107:25 107:25 108:1 108:2 108:3 108:3 108:5 108:5 108:6 108:8 108:11 | | **the**(301) 108:13 108:13 108:14 108:16 108:17 108:18 108:18 108:18 108:23 109:3 109:4 109:5 109:6 109:7 109:9 109:14 109:22 110:1 110:4 110:6 110:6 110:8 110:9 110:10 110:11 110:14 110:15 110:17 110:18 110:21 110:22 110:22 110:23 111:4 111:5 111:7 111:13 111:18 111:20 111:21 111:23 111:24 112:1 112:3 112:4 112:5 112:8 112:13 112:14 112:19 112:19 112:19 112:21 113:1 113:2 113:3 113:11 113:16 113:17 113:18 113:20 113:22 113:24 114:3 114:7 114:9 114:12 114:13 114:15 114:17 114:25 114:25 115:4 115:6 115:8 115:8 115:10 115:14 115:15 115:16 115:18 115:20 115:22 115:22 116:5 116:9 116:11 116:12 116:13 116:13 116:15 116:17 116:20 116:22 117:2 117:7 117:8 117:9 117:9 117:11 117:12 117:15 117:15 117:15 117:19 117:22 117:25 118:1 118:3 118:5 118:7 118:8 118:10 118:10 118:13 118:18 118:16 118:18 118:19 118:19 118:20 118:22 118:23 118:24 118:24 118:25 119:2 119:4 119:5 119:8 119:9 119:13 119:14 119:16 119:16 119:17 119:17 119:17 119:20 119:23 119:23 119:24 119:25 120:1 120:3 120:5 120:6 120:8 120:8 120:9 120:10 120:10 120:12 120:12 120:14 120:15 120:15 120:16 120:18 120:18 120:19 120:19 120:20 120:21 120:21 120:22 120:22 120:23 120:25 121:3 121:3 121:4 121:8 121:8 121:9 121:11 121:12 121:13 121:13 121:14 121:14 121:15 121:15 121:16 121:16 121:17 121:18 121:19 121:20 121:21 121:22 121:23 121:25 121:25 122:1 122:1 122:3 122:4 122:5 122:9 122:9 122:10 122:12 122:12 122:12 122:15 122:23 122:23 122:23 122:24 122:25 123:6 123:6 123:7 123:8 123:8 123:9 123:10 123:13 123:13 123:15 123:15 123:16 123:18 123:19 123:22 123:22 123:24 124:1 124:1 124:1 124:2 124:3 124:4 124:5 124:6 124:6 124:8 124:8 124:9 124:10 124:13 124:16 124:17 124:17 124:19 124:19 124:20 124:21 124:23 124:25 125:3 125:4 125:6 125:7 125:9 125:10 125:10 125:11 125:12 125:14 125:16 125:18 125:19 125:21 125:21 126:1 126:1 126:2 126:3 126:4 126:5 126:6 126:7 126:8 126:8 126:12 126:14 126:15 126:16 126:17 126:18 126:18 126:19 126:21 126:24 127:3 127:4 127:5 127:7 127:8 127:10 127:11 127:14 127:17 127:17 127:19 127:20 127:21 | | **the**(301) 127:23 127:24 127:24 128:1 128:1 128:3 128:4 128:5 128:5 128:7 128:7 128:9 128:12 128:13 128:13 128:14 128:14 128:15 128:15 128:17 128:18 128:19 128:21 128:22 128:23 128:25 128:25 129:1 129:3 129:4 129:4 129:6 129:6 129:8 129:8 129:11 129:15 129:16 129:17 129:19 129:19 129:23 129:24 129:25 130:2 130:17 130:17 130:19 130:19 130:19 130:21 130:24 130:25 131:4 131:7 131:9 131:10 131:11 131:14 131:15 131:15 131:17 131:18 131:18 131:19 131:19 131:20 131:21 131:22 131:23 131:24 132:1 132:1 132:2 132:2 132:4 132:4 132:8 132:9 132:10 132:10 132:11 132:12 132:13 132:14 132:15 132:16 132:16 132:17 132:18 132:19 132:19 132:22 132:23 132:24 132:25 133:6 133:7 133:10 133:12 133:13 133:14 133:16 133:17 133:17 133:21 133:21 133:22 133:25 134:1 134:3 134:3 134:7 134:8 134:10 134:13 134:15 134:16 134:16 134:18 134:19 134:20 134:20 134:21 134:22 134:23 134:24 134:25 135:2 135:2 135:3 135:3 135:4 135:4 135:5 135:5 135:6 135:6 135:10 135:12 135:14 135:14 135:15 135:15 135:15 135:18 135:20 135:20 135:24 135:25 135:25 136:1 136:3 136:4 136:5 136:6 136:6 136:7 136:9 136:10 136:11 136:12 136:12 136:13 136:13 136:14 136:14 136:17 136:18 136:20 136:21 136:22 136:23 136:24 136:25 137:1 137:1 137:4 137:5 137:5 137:6 137:7 137:7 137:8 137:9 137:16 137:17 137:21 137:23 137:23 137:23 138:2 138:6 138:7 138:8 138:8 138:8 138:13 138:21 138:22 138:22 139:1 139:2 139:4 139:10 139:10 139:14 139:16 139:16 139:17 139:17 139:18 139:19 139:19 139:21 139:22 139:24 139:24 139:25 140:2 140:4 140:6 140:7 140:9 140:10 140:14 140:15 140:18 140:22 140:23 141:2 141:4 141:5 141:7 141:8 141:9 141:10 141:11 141:12 141:13 141:13 141:14 141:14 141:15 141:17 141:18 141:18 141:23 142:2 142:4 142:5 142:5 142:6 142:6 142:8 142:8 142:9 142:10 142:11 142:11 142:13 142:14 142:15 142:16 142:16 142:17 142:18 142:23 142:24 142:24 142:25 143:2 143:3 143:5 143:7 143:9 143:9 143:10 143:12 143:12 143:13 143:15 143:17 143:21 143:21 143:23 143:23 143:24 143:25 144:1 144:3 144:6 144:7 144:7 144:8 144:8 144:9 144:9 144:9 144:10 144:11 144:12 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

the(301) 144:13 144:14 144:14 144:16
144:18 144:21 145:1 145:6 145:7 145:7
145:8 145:8 145:12 145:14 145:15 145:15
145:15 145:16 145:16 145:17 145:18
145:19 145:20 145:21 145:23 145:24 146:1
146:1 146:1 146:2 146:3 146:5 146:6
146:7 146:10 146:15 146:16 146:16 146:17
146:23 147:2 147:4 147:6 147:7 147:8
147:9 147:12 147:12 147:13 147:14 147:14
147:15 147:16 147:17 147:17 147:18
147:19 147:20 147:21 147:23 147:24 148:1
148:2 148:3 148:4 148:5 148:7 148:7
148:8 148:8 148:12 148:13 148:14 148:15
148:16 148:17 148:17 148:17 148:19
148:19 148:23 148:23 149:2 149:3 149:4
149:8 149:9 149:10 149:11 149:14 149:15
149:15 149:17 149:19 149:19 149:22
149:23 149:23 149:24 150:2 150:2 150:3
150:7 150:7 150:8 150:12 150:14 150:14
150:14 150:15 150:16 150:18 150:18
150:24 150:24 150:25 150:25 151:1 151:1
151:3 151:7 151:7 151:8 151:10 151:14
151:16 151:17 151:17 151:18 151:19
151:20 151:20 151:22 151:24 151:25 152:1
152:3 152:4 152:4 152:5 152:5 152:6
152:7 152:8 152:10 152:11 152:11 152:12
152:12 152:14 152:15 152:15 152:16
152:18 152:18 153:1 153:4 153:6 153:10
153:11 153:11 153:11 153:12 153:13
153:13 153:13 153:14 153:17 153:20
153:20 153:21 153:23 153:25 154:1 154:2
154:6 154:8 154:8 154:9 154:9 154:12
154:13 154:13 154:14 154:16 154:17
154:19 154:19 154:21 154:21 155:1 155:1
155:2 155:2 155:4 155:4 155:5 155:7
155:8 155:9 155:9 155:9 155:10 155:12
155:15 155:16 155:17 155:21 155:22 156:2
156:2 156:2 156:3 156:4 156:4 156:6
156:7 156:8 156:9 156:10 156:11 156:14
156:15 156:17 156:19 156:19 156:21
156:21 156:22 156:24 156:25 157:1 157:1
157:4 157:7 157:7 157:7 157:11 157:12
157:12 157:15 157:17 157:17 157:19
157:20 157:21 158:1 158:3 158:3 158:8
158:9 158:9 158:10 158:12 158:14 158:17
158:18 158:18 158:21 158:23 158:24
158:25 158:25 159:2 159:4 159:5 159:5
159:7 159:8 159:9 159:9 159:10 159:10
159:11 159:11 159:14 159:15 159:15
159:15 159:21 159:24 159:25 160:1 160:1
160:3 160:4 160:5 160:6 160:7 160:7
160:9 160:10 160:11 160:13 160:13 160:15
160:18 160:24 160:25 161:1 161:2

the(301) 161:5 161:6 161:10 161:10
161:12 161:12 161:14 161:16 161:16
161:18 161:18 161:20 161:21 161:22 162:1
162:2 162:3 162:3 162:11 162:14 162:15
162:16 162:22 162:23 163:3 163:5 163:7
163:9 163:10 163:11 163:12 163:13 163:15
163:19 163:21 163:24 164:1 164:5 164:5
164:7 164:10 164:12 164:14 164:17 164:18
164:20 164:21 164:21 164:22 164:22
164:24 164:24 164:25 165:2 165:4 165:5
165:10 165:11 165:12 165:13 165:14
165:18 165:18 165:19 165:19 165:19
165:20 165:20 165:21 165:21 165:22
165:24 165:25 166:1 166:5 166:6 166:14
166:20 166:22 166:23 167:1 167:2 167:3
167:8 167:16 167:16 167:17 167:17
167:17 167:18 167:19 167:20 167:21
167:24 167:25 168:1 168:2 168:2 168:2
168:3 168:6 168:13 168:21 168:22 168:23
168:24 168:25 169:1 169:1 169:1 169:2
169:3 169:3 169:5 169:5 169:7 169:9
169:9 169:10 169:11 169:12 169:12 169:13
169:15 169:16 169:16 169:17 169:18
169:18 169:19 169:20 169:20 169:21
169:22 169:25 170:1 170:1 170:2 170:2
170:3 170:3 170:4 170:5 170:6 170:6
170:7 170:8 170:8 170:10 170:11 170:11
170:12 170:12 170:13 170:15 170:15
170:16 170:18 170:18 170:19 170:20
170:21 170:21 170:21 170:21 170:22
170:22 171:2 171:2 171:3 171:3 171:4
171:5 171:5 171:6 171:6 171:7 171:7
171:8 171:9 171:10 171:10 171:11 171:14
171:16 171:17 171:21 171:21 171:22
171:22 171:23 171:23 171:24 172:2 172:4
172:5 172:6 172:7 172:8 172:9 172:10
172:11 172:12 172:12 172:13 172:14
172:17 172:20 172:20 172:20 172:22
172:22 172:25 173:4 173:6 173:7 173:8
173:8 173:11 173:15 173:16 173:18 173:22
173:23 174:5 174:5 174:7 174:9 174:13
174:14 174:16 174:18 174:23 174:25 175:1
175:5 175:6 175:7 175:8 175:8 175:10
175:10 175:11 175:12 175:14 175:15
175:15 175:16 175:17 175:17 175:19
175:20 175:20 175:21 175:23 175:25 176:2
176:3 176:3 176:4 176:5 176:11 176:12
176:13 176:14 176:16 176:16 176:18
176:19 176:20 176:23 177:1 177:7 177:11
177:16 177:18 177:25 178:2 178:6 178:6
178:7 178:7 178:9 178:11 178:12 178:13
178:24 178:25 179:1 179:1

the(301) 179:3 179:3 179:7 179:7 179:7
179:8 179:9 179:10 179:12 179:12 179:13
179:13 179:14 179:15 179:16 179:16
179:17 179:17 179:18 179:19 179:19
179:20 179:22 179:24 179:25 179:25 180:3
180:4 180:10 180:16 180:16 180:18
180:21 180:22 180:22 180:23 180:24
180:25 181:2 181:4 181:5 181:8 181:9
181:9 181:12 181:12 181:13 181:14 181:17
181:22 181:23 181:24 181:24 182:1 182:1
182:1 182:6 182:12 182:13 182:14 182:16
182:16 182:25 182:25 183:2 183:3 183:6
183:7 183:11 183:14 183:15 183:15 183:18
183:19 183:19 183:19 183:21 184:3 184:4
184:5 184:5 184:5 184:6 184:8 184:13
184:13 184:13 184:17 184:19 184:20
184:24 184:25 185:1 185:3 185:4 185:5
185:6 185:7 185:9 185:10 185:10 185:11
185:18 185:18 185:18 185:19 185:19
185:22 185:23 185:25 186:2 186:3 186:4
186:6 186:7 186:8 186:9 186:10 186:11
186:12 186:14 186:17 186:19 186:23
186:25 187:2 187:4 187:5 187:16 187:18
187:19 187:20 187:23 187:23 188:1 188:1
188:2 188:2 188:3 188:4 188:7 188:9
188:9 188:9 188:12 188:13 188:16 188:21
188:22 188:23 188:25 188:25 189:1 189:1
189:3 189:4 189:5 189:6 189:8 189:9
189:10 189:11 189:13 189:14 189:14
189:15 189:22 189:23 189:24 190:1 190:3
190:5 190:6 190:13 190:14 190:17 190:18
190:21 190:22 190:23 190:23 190:24 191:1
191:1 191:3 191:4 191:5 191:6 191:6
191:9 191:10 191:11 191:12 191:14 191:16
191:19 191:20 191:25 191:25 192:1 192:2
192:3 192:3 192:4 192:11 192:11 192:13
192:15 192:15 192:16 192:17 192:18
192:22 192:23 192:25 192:25 193:1 193:1
193:3 193:3 193:4 193:7 193:8 193:11
193:14 193:16 193:17 193:18 193:20
193:23 193:24 194:1 194:5 194:7 194:10
194:12 194:18 194:18 194:19 194:19 195:1
195:2 195:4 195:4 195:5 195:6 195:6
195:9 195:11 195:13 195:18 195:21 195:21
195:21 195:23 195:25 196:1 196:3 196:4
196:5 196:5 196:6 196:7 196:11 196:11
196:14 196:14 196:14 196:17 196:17
196:21 196:23 196:24 197:1 197:3 197:7
197:9 197:12 197:13 197:14 197:16 197:18
197:21 197:22 197:23 197:24 197:25
197:25 197:25 198:4 198:7 198:7 198:8
198:12 198:18 198:19

the(301) 198:20 198:21 198:22 198:23
198:24 198:24 198:24 199:1 199:4 199:5
199:5 199:5 199:7 199:8 199:11 199:15
199:23 199:24 199:24 199:25 200:1 200:2
200:4 200:6 200:6 200:7 200:7 200:10
200:10 200:10 200:11 200:12 200:15
200:16 200:19 200:20 200:23 200:24
200:24 201:1 201:3 201:5 201:6 201:8
201:9 201:13 201:15 201:20 201:21 201:22
201:23 202:4 202:7 202:10 202:11 202:15
202:18 202:19 202:24 203:2 203:3 203:4
203:6 203:7 203:7 203:9 203:9 203:10
203:11 203:12 203:13 203:14 203:15
203:18 203:20 203:20 203:21 203:22
203:25 204:5 204:6 204:7 204:11 204:13
204:14 204:15 204:19 204:20 204:24
204:25 205:2 205:2 205:3 205:5 205:5
205:5 205:6 205:7 205:7 205:10 205:12
205:14 205:17 205:18 205:21 205:25 206:2
206:8 206:10 206:10 206:13 206:16 207:1
207:4 207:6 207:7 207:8 207:10 207:14
207:15 207:15 207:15 207:16 207:16
207:23 208:1 208:5 208:10 208:11 208:12
208:13 208:14 208:15 208:16 208:16
208:18 208:18 208:20 208:21 208:22
208:23 208:24 208:25 209:4 209:5 209:5
209:5 209:6 209:6 209:8 209:9 209:9
209:12 209:13 209:14 209:16 209:18
209:20 209:22 209:23 209:25 210:2 210:2
210:3 210:3 210:4 210:5 210:6 210:7
210:8 210:10 210:11 210:12 210:13 210:15
210:15 210:19 210:25 211:1 211:3 211:4
211:4 211:4 211:5 211:6 211:7 211:9
211:10 211:11 211:11 211:11 211:13
211:15 211:17 211:18 211:18 211:19
211:20 211:22 211:22 211:22 211:23
211:24 212:1 212:2 212:3 212:3 212:7
212:9 212:12 212:14 212:16 212:17 212:19
212:21 212:21 212:23 213:4 213:5 213:5
213:8 213:12 213:15 213:24 214:4 214:7
214:9 214:12 214:16 214:19 214:20 214:24
215:1 215:2 215:2 215:3 215:10 215:13
215:16 215:17 215:18 215:19 215:20
215:20 215:23 215:24 215:24 216:1 216:7
216:11 216:12 216:12 216:15 216:16
216:17 216:19 216:19 216:21 216:23
216:23 216:25 217:2 217:4 217:4 217:4
217:5 217:5 217:6 217:6 217:8 217:10
217:13 217:13 217:15 217:17 217:18
217:20 217:21 217:24 217:25 218:1 218:2
218:5 218:10 218:10 218:11 218:13 218:13
218:16 218:17 218:17 218:18 219:5 219:6
219:6 219:7 219:9 219:12 219:14 219:15
219:15

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the(301)** 219:17 219:21 219:25 220:2 220:3 220:3 220:4 220:6 220:12 220:14 220:15 220:15 220:16 220:17 220:18 220:19 220:20 220:20 220:20 220:21 221:1 221:2 221:3 221:3 221:7 221:8 221:9 221:10 221:10 221:11 221:13 221:13 221:16 221:16 221:20 221:21 221:22 221:22 221:25 222:5 222:6 222:6 222:7 222:8 222:11 222:14 222:15 222:16 222:19 222:21 222:22 222:23 222:23 222:24 222:25 223:2 223:4 223:4 223:5 223:6 223:7 223:7 223:8 223:14 223:16 223:17 223:18 223:24 224:1 224:2 224:4 224:7 224:8 224:8 224:9 224:10 224:15 224:21 224:24 225:4 225:5 225:6 225:8 225:11 225:12 225:15 225:19 225:21 225:24 226:1 226:2 226:13 226:16 226:18 226:20 226:22 226:23 226:23 227:4 227:8 227:10 227:12 227:13 227:16 227:17 227:18 227:18 227:19 227:20 227:23 227:24 227:24 227:25 228:2 228:2 228:5 228:7 228:7 228:8 228:9 228:9 228:12 228:13 228:13 228:14 228:14 228:15 228:16 228:16 228:19 228:20 228:24 229:1 229:11 229:12 229:15 229:16 229:18 229:19 229:20 229:21 229:22 229:23 230:1 230:1 230:2 230:2 230:3 230:4 230:7 230:10 230:14 230:15 230:15 230:16 230:19 230:19 230:20 230:23 231:1 231:1 231:3 231:6 231:7 231:8 231:9 231:9 231:10 231:10 231:11 231:12 231:13 231:14 231:15 231:16 231:16 231:17 231:17 231:18 231:19 231:21 231:21 231:24 231:24 231:25 232:2 232:3 232:5 232:7 232:8 232:8 232:9 232:10 232:10 232:10 232:11 232:14 232:15 232:16 232:16 232:17 232:17 232:20 232:20 232:22 232:23 232:25 233:1 233:2 233:3 233:3 233:5 233:7 233:7 233:7 233:9 233:11 233:11 233:15 233:16 233:17 233:17 233:17 233:18 233:20 233:21 233:22 233:22 233:24 233:25 234:2 234:3 234:3 234:4 234:5 234:7 234:8 234:12 234:13 234:15 234:16 234:16 234:21 234:22 234:23 234:24 234:25 235:2 235:4 235:4 235:9 235:10 235:10 235:11 235:11 235:12 235:15 235:16 235:17 236:6 236:10 236:11 236:11 236:12 236:13 236:14 236:16 236:16 236:17 236:18 236:18 236:19 236:19 237:4 237:4 237:8 237:8 237:12 237:13 237:14 237:16 237:17 237:18 237:18 237:19 237:20 237:22 238:1 238:5 238:6 238:7 238:7 238:10 238:11 238:13 238:16 238:16 238:19 238:20 238:21 238:23 239:2

**the(47)** 239:6 239:8 239:9 239:13 239:15 239:16 239:18 239:20 239:23 240:4 240:4 240:5 240:6 240:8 240:9 240:9 240:11 240:12 240:12 240:14 240:15 240:20 240:20 240:21 240:22 240:23 240:25 241:1 241:2 241:6 241:10 241:11 241:13 241:13 241:19 241:20 241:24 242:3 242:6 242:7 242:7 242:9 242:12 242:13 242:13 242:14

**their(114)** 16:20 17:1 19:20 21:22 23:4 27:3 27:5 30:3 38:6 39:13 46:17 48:5 49:25 52:23 57:1 57:1 58:8 64:21 65:10 66:13 66:15 66:16 66:16 66:17 69:7 69:25 70:1 70:19 71:15 79:2 79:11 79:18 80:18 80:24 80:25 83:2 85:14 90:19 91:9 91:18 91:19 92:9 93:17 96:23 96:23 97:6 100:13 105:2 105:13 106:10 106:10 106:15 107:5 107:25 111:8 114:23 121:5 121:6 121:19 122:16 122:17 124:2 124:3 125:1 125:8 126:11 126:13 128:2 134:7 140:16 141:6 141:19 147:13 149:9 149:15 151:8 151:10 152:9 157:3 167:24 169:2 169:3 169:8 169:18 172:3 172:15 172:18 173:12 174:7 174:10 175:9 175:10 175:11 184:17 185:20 186:15 186:24 189:9 194:21 195:18 196:7 198:20 200:21 210:1 211:6 212:7 213:4 216:12 222:22 224:16 226:21 226:25 233:25 241:5

**them(64)** 21:10 31:18 32:24 34:3 34:19 34:24 50:1 64:17 69:18 69:25 75:16 79:4 79:4 79:13 79:25 80:1 81:20 85:5 87:15 101:5 102:6 102:9 109:4 111:4 115:17 117:3 121:7 123:23 125:12 125:21 126:21 126:22 133:13 134:4 134:22 137:2 137:17 141:17 147:8 151:19 152:7 152:10 156:6 159:3 159:12 160:2 160:2 160:12 160:13 160:14 161:5 163:6 164:11 171:21 174:16 179:15 182:3 189:7 216:17 225:3 227:2 227:2 227:3 234:1

**theme(1)** 178:22

**themselves(5)** 16:4 96:23 112:3 112:20 149:9

**then(72)** 16:24 18:10 18:22 26:13 26:16 26:22 26:24 28:9 29:19 33:5 33:10 34:14 35:10 35:17 36:8 39:23 41:17 44:1 44:2 44:19 44:24 47:16 48:2 57:25 59:2 59:11 59:20 66:9 67:19 67:21 74:18 79:25 93:22 95:12 96:16 101:25 106:20 113:8 113:9 113:15 113:18 113:19 113:19 127:2 139:11 140:18 150:5 152:19 156:6 164:20 166:6 167:14 171:23 172:3 179:4 182:24 185:9 189:25 192:10 210:4 225:8 226:7 227:10 229:12 233:6 233:22 236:4 236:13 238:17 239:16 240:20 240:23

**theoretically(1)** 171:15

**theories(11)** 16:18 52:2 89:23 122:20 136:10 136:18 169:14 169:23 170:9 179:10 198:25

**theory(27)** 73:9 87:17 87:25 90:19 92:14 109:3 109:11 119:5 119:8 119:12 121:5 126:13 131:9 164:7 164:8 183:10 185:1 185:15 185:18 185:19 188:20 190:7 201:23 215:15 226:3 231:10 231:11

**there(174)** 14:11 14:13 17:19 20:3 20:3 20:10 20:23 20:24 21:4 22:7 22:21 23:22 23:25 24:9 26:2 29:3 30:12 30:13 33:11 33:14 35:6 35:15 38:16 43:6 43:15 44:19 44:24 47:23 49:9 51:6 56:23 58:20 58:22 60:9 60:17 64:10 65:16 65:16 65:19 66:25 69:19 69:24 72:23 73:18 78:13 80:8 86:12 87:21 87:22 87:24 88:16 95:23 96:5 101:16 101:17 101:23 102:10 105:24 106:9 108:14 109:8 110:5 110:23 111:11 112:13 119:13 119:18 120:14 122:2 125:9 127:22 128:22 129:8 129:10 130:7 130:8 133:20 134:10 134:10 134:17 134:18 135:16 137:13 140:2 142:20 143:15 144:22 148:18 148:20 148:21 152:20 153:2 154:2 154:10 156:1 156:25 157:8 157:16 157:19 158:7 158:22 161:1 161:17 161:19 162:9 163:6 163:14 163:22 163:24 163:25 164:17 165:22 165:12 166:8 166:9 171:18 172:14 176:18 179:5 180:3 180:18 181:14 181:20 185:2 186:8 187:18 188:4 189:12 190:24 191:3 191:9 191:10 192:19 193:13 194:23 195:12 196:6 196:12 197:15 199:9 199:10 204:8 205:1 205:13 208:6 209:1 209:25 210:5 210:11 210:16 212:18 212:3 217:10 217:18 218:3 218:6 219:17 220:23 222:10 225:5 225:9 225:10 228:10 231:13 232:3 232:6 237:4 238:7 239:11 239:13 240:2 240:10 240:17 240:24

**there's(66)** 17:8 18:5 18:18 24:20 28:13 31:22 35:7 35:19 36:18 38:13 38:24 39:3 40:7 44:17 48:10 51:1 56:2 56:3 59:3 66:2 67:12 70:6 70:10 70:17 71:2 76:10 76:25 79:8 80:1 86:18 86:18 88:15 91:11 91:20 93:22 94:19 97:16 99:21 105:9 105:25 106:24 109:23 111:6 112:1 203:18 205:23 211:12 215:14 220:25 222:9 222:13 222:16 223:20 224:9 224:10 224:17 225:17 225:22 229:21 229:23 230:24 237:15 237:16 237:17 240:13 240:22

**therefore(12)** 21:5 24:17 25:16 38:9 64:12 65:23 72:17 99:5 155:11 161:4 163:22 164:15

**therein(1)** 148:8

**there'd(1)** 189:24

**there's(38)** 117:4 124:15 126:9 135:18 137:3 142:2 144:3 152:2 153:17 158:11 160:16 160:17 163:22 164:10 164:15 165:11 166:5 172:5 173:9 173:24 173:25 174:4 175:12 175:13 177:3 179:21 180:17 180:25 181:13 181:24 185:2 187:13 187:18 188:10 190:22 192:16 197:5 201:1

**these(120)** 18:7 18:11 21:14 23:23 24:1 25:18 32:17 34:1 36:7 38:2 38:23 39:4 44:9 44:23 49:1 51:10 51:19 51:23 52:3 52:10 52:15 52:25 52:25 53:1 53:19 54:18 54:20 55:9 55:18 56:6 57:13 58:17 58:20 59:1 60:11 61:1 70:13 70:22 78:25 79:1 79:5 79:7 79:9 79:16 79:21 82:11 82:21 83:16 86:19 87:13 89:16 92:23 93:9 93:11 93:13 93:14 98:3 98:13 99:25 99:25 100:4 100:23 101:5 107:14 111:3 119:15 123:1 123:14 125:7 130:4 131:6 131:7 132:8 134:23 138:25 140:3 140:20 145:5 145:13 146:15 148:15 149:1 151:18 153:12 155:23 155:23 157:3 157:21 158:4 158:9 158:13 163:8 165:3 181:1 190:6 196:25 196:25 197:10 199:3 202:25 203:24 204:15 212:22 212:24 213:6 219:22 220:3 221:16 222:20 225:1 225:12 225:14 225:22 226:13 227:6 227:11 228:23 228:24 237:5

**they(277)** 15:24 16:19 17:6 18:18 19:18 21:20 21:22 21:23 26:12 27:2 29:22 30:22 30:22 31:1 32:20 33:3 33:12 33:19 34:8 34:12 34:22 38:6 38:13 48:25 51:17 52:22 53:3 58:23 63:8 64:14 65:4 65:13 65:14 66:5 66:10 66:12 66:13 66:17 71:14 72:14 72:14 73:3 75:13 75:15 75:16 75:22 75:24 75:25 78:18 79:12 79:14 80:11 80:22 80:24 80:25 81:4 81:18 81:19 81:20 82:22 82:23 82:23 83:1 83:2 83:5 83:9 83:12 85:15 86:24 86:25 87:14 88:11 90:7 90:11 90:11 90:13 90:14 90:15 90:21 92:6 92:9 92:9 96:4 96:22 101:22 102:20 104:20 104:21 106:16 107:21 108:10 108:12 111:3 112:2 112:4 112:12 114:21 117:3 117:16 118:13 118:14 118:23 119:1 120:6 120:6 120:6 120:12 120:16 120:24 120:25 121:1 121:2 121:3 121:5 121:7 121:10 121:11 121:12 121:19 121:23 121:24 122:3 122:5 122:5 122:14 122:16 122:17 123:23 124:18 124:25 125:18 125:19 125:20 125:21 126:14 127:20 131:22 134:5 134:6 134:13 134:14 134:15 134:16 134:20 134:24 135:21 136:9 137:11 137:12 137:13 137:18 137:20 137:20 137:21 137:22 141:14 143:22 144:10 144:13 144:19 146:7 146:16 146:18 147:1 147:1 147:13 147:14 147:15 147:17 147:18 148:10 149:8 149:9 149:10 149:25 150:5 150:9 150:9 150:12 150:20 150:20 150:22 151:10 152:9 155:10 155:24 162:1 162:3 162:8 162:8 162:8 162:15 162:16 164:15 164:16 165:18 166:3 166:3 166:4 169:14 170:3 172:15 172:17 173:12 173:13 174:6 174:7 174:8 174:8 174:9 174:11 174:16 174:17 175:9 175:14 177:1 180:23 180:23 184:7 184:17 184:18 184:18 184:20 184:24 184:25 185:6 185:10 186:15 187:2 189:4 189:6 189:7 190:4 191:6 192:2 197:4 197:8 197:8 198:1 198:20 198:22 199:4 201:20 204:6 204:22 204:23 206:17 211:7 211:7 212:1 212:23 215:1 217:17 221:5 222:5 222:17 222:18 222:19 224:3 224:17 224:19 227:14 228:18 228:19 229:8 229:13 229:14 229:18 229:19 229:25 234:20 235:22 236:24 236:24 237:1

**they'd(1)** 75:14

**they'll(2)** 108:16 112:2

**they're(26)** 17:5 20:16 21:1 23:5 29:15 36:15 41:23 75:23 75:23 81:17 81:20 82:9 91:10 92:20 101:5 101:6 107:15 108:6 108:19 216:22 221:6 225:2 229:8 229:15 229:16 237:9

**they've(11)** 15:14 30:21 30:25 32:25 33:1 34:16 70:8 226:25 226:25 231:14 231:15

**they'll(2)** 140:13 140:14

**they're(30)** 117:15 124:10 125:24 125:24 134:2 141:6 141:11 141:16 143:25 144:18 145:7 145:21 145:22 147:20 147:22 149:24 150:11 152:17 152:18 152:19 159:25 163:4 164:14 166:2 174:12 174:18 175:10 180:22 189:6 189:11

**they've(9)** 114:23 121:6 122:21 125:17 136:20 145:23 149:11 151:7 174:15

**thing(39)** 12:15 14:19 16:2 16:15 19:20 19:21 19:22 29:8 33:10 33:18 38:12 52:16 72:5 76:8 79:13 90:5 90:6 90:11 102:4 120:19 133:21 134:5 134:24 145:18 147:4 152:8 159:4 178:11 187:7 195:17 198:4 201:6 211:15 221:11 221:24 222:20 229:16 229:22 241:12

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **things**(26) 14:6 35:17 36:8 37:1 51:6 53:23 62:7 71:10 81:7 83:10 90:14 93:13 99:6 100:12 100:13 101:20 109:5 109:22 111:10 174:5 209:3 217:21 220:12 227:24 228:8 233:12 | | **this**(301) 12:3 16:14 16:23 16:24 21:8 22:19 23:1 24:8 24:9 24:22 26:11 26:12 26:14 29:9 30:6 31:8 31:17 31:25 32:7 33:13 33:24 34:25 35:14 36:25 37:24 42:1 42:3 44:5 45:16 45:18 46:21 47:7 48:11 48:15 48:17 50:23 51:13 53:7 53:13 53:16 53:21 53:23 54:14 55:12 55:13 56:9 57:13 58:4 58:24 58:24 60:5 60:12 60:17 60:19 61:15 62:9 63:1 63:8 63:24 65:5 65:14 65:23 65:24 66:1 68:5 68:17 68:17 68:19 70:2 70:7 70:8 71:22 71:23 73:8 74:24 76:25 77:7 77:17 78:6 78:10 78:14 79:18 80:5 82:14 82:21 82:25 83:20 83:21 85:12 85:13 87:19 89:2 89:20 89:21 90:15 90:18 91:1 91:7 91:21 91:23 92:6 92:10 93:15 93:15 93:22 93:25 94:23 95:6 96:12 97:21 98:5 98:22 99:3 99:13 100:14 101:1 101:18 107:3 109:10 110:17 111:7 112:7 116:11 116:21 116:25 120:1 120:23 120:25 122:11 122:16 122:18 123:11 123:24 124:2 125:2 125:8 126:8 126:20 126:21 127:1 127:4 128:8 128:9 128:15 128:22 129:4 129:12 129:12 129:21 129:24 129:24 130:1 130:17 131:10 131:13 131:13 131:15 132:1 132:12 132:14 132:19 133:20 133:21 133:25 134:7 135:5 135:9 136:8 136:15 137:19 138:7 138:21 139:16 140:2 141:9 141:10 141:25 142:6 143:17 144:1 144:3 144:18 144:23 146:19 147:22 148:2 149:25 150:6 150:10 150:11 150:17 154:4 154:20 155:15 155:16 155:16 155:18 155:19 156:7 157:5 157:6 157:13 158:14 158:19 159:11 160:1 160:3 161:7 163:10 163:13 164:7 164:8 165:2 165:4 165:16 165:22 170:23 173:3 173:5 176:14 176:23 177:16 177:18 177:23 178:9 179:5 179:11 180:11 180:12 180:15 181:9 182:15 183:1 183:1 183:8 183:14 185:13 185:14 185:23 186:8 187:7 189:16 190:2 190:3 191:21 191:22 193:6 195:15 196:6 197:16 197:24 197:24 198:5 199:15 201:14 202:20 203:4 203:17 204:9 204:11 204:11 204:18 205:4 207:20 207:25 208:19 208:23 209:18 209:23 210:24 211:15 212:11 213:10 213:22 214:5 214:22 214:23 215:23 216:17 218:3 218:21 219:5 219:15 219:23 220:5 220:12 221:1 221:10 221:11 222:14 224:16 225:7 225:15 225:23 228:1 229:17 230:13 230:23 231:3 232:7 233:9 | | **thought**(12) 24:14 24:17 63:9 116:24 116:24 123:14 138:17 199:22 200:20 216:18 216:21 241:21 | | **together**(8) 96:14 105:4 116:15 116:19 116:23 116:25 151:17 202:16 |
| | | | | **thoughtfully**(1) 199:12 | | **toggles**(1) 169:5 |
| | | | | **thousands**(5) 19:19 218:4 218:12 218:12 218:13 | | **toiled**(2) 80:19 221:21 |
| **think**(183) 13:22 14:16 14:18 17:12 17:13 17:13 19:5 26:11 27:2 28:3 28:15 31:18 33:12 38:3 39:16 39:17 41:7 48:20 49:3 49:3 49:9 53:10 53:23 56:23 57:11 58:22 59:18 60:5 60:18 61:2 61:21 61:23 61:25 62:1 63:7 66:19 67:18 68:4 71:5 72:4 72:7 72:23 74:1 74:18 74:21 77:5 77:7 79:15 80:6 80:7 80:8 80:9 85:21 86:17 86:18 87:1 87:5 90:17 95:22 96:6 96:11 96:11 96:12 96:15 97:22 97:25 98:5 98:20 99:15 106:3 111:23 112:22 113:1 113:2 113:21 113:22 113:25 114:3 116:12 116:22 117:3 125:15 126:23 127:12 127:19 133:4 134:9 135:22 140:9 140:15 140:21 140:23 140:24 142:25 145:1 146:11 146:16 147:25 149:3 150:10 150:20 152:12 152:14 152:19 161:24 166:24 167:23 170:23 171:15 173:3 173:7 173:8 173:9 173:14 173:22 174:3 174:21 181:6 185:14 185:21 187:8 187:13 188:14 189:12 189:14 189:15 189:22 190:2 190:18 190:24 191:4 191:21 191:22 192:6 192:16 192:19 193:3 193:14 193:16 194:14 194:22 203:18 205:8 206:5 206:17 208:3 208:8 208:17 210:9 210:14 211:1 211:8 212:6 212:20 212:22 213:3 213:5 213:6 213:7 213:9 213:10 214:1 214:14 214:16 214:25 215:13 216:25 217:21 218:1 223:2 225:7 226:13 227:1 227:6 227:12 232:14 232:21 232:22 237:3 237:22 238:6 240:1 241:20 | | | | **thread**(1) 193:6 | | **told**(10) 24:12 33:4 48:14 79:11 107:14 107:14 121:4 173:4 174:15 236:25 |
| | | | | **threat**(2) 189:13 229:23 | | **toll**(1) 219:14 |
| | | | | **threatening**(1) 168:21 | | **tom**(1) 122:14 |
| | | | | **three**(27) 31:2 40:20 55:5 69:18 69:19 78:20 94:3 94:12 94:20 95:3 96:4 97:18 98:19 98:25 99:1 107:20 110:18 117:18 125:16 127:22 167:3 169:11 170:9 207:24 208:6 208:8 219:24 | | **toni**(1) 11:21 |
| | | | | | | **too**(12) 39:13 53:8 61:19 73:18 85:20 113:14 118:15 124:7 173:9 191:6 209:6 224:16 |
| | | | | **threshold**(5) 132:16 132:16 154:7 195:7 227:16 | | **took**(18) 25:8 35:21 63:7 69:15 77:1 80:12 82:8 92:20 119:1 182:3 194:24 198:24 199:10 199:11 199:17 199:21 206:3 232:14 |
| | | | | | | **top**(6) 61:9 87:15 90:21 159:14 159:21 238:21 |
| | | | | **threw**(1) 224:14 | | |
| | | | | **through**(39) 25:14 31:17 42:2 53:6 55:13 65:24 93:8 116:6 117:4 117:8 118:7 118:11 119:12 121:2 122:21 122:22 123:4 123:9 123:14 132:14 134:23 151:24 151:24 154:2 154:14 155:9 176:15 177:7 181:7 195:11 198:5 204:12 207:19 209:7 217:2 226:4 231:1 241:7 241:11 | | **topic**(3) 72:8 72:11 72:12 |
| | | | | | | **toronto**(10) 3:11 14:14 14:22 50:14 69:9 93:23 121:16 151:16 152:25 202:15 |
| | | | | | | **tory's**(3) 6:12 128:9 128:13 |
| **thinking**(3) 65:21 95:14 101:25 | | | | **throughout**(8) 21:22 63:2 80:14 153:20 170:11 173:4 203:19 203:24 | | **total**(9) 29:6 95:11 114:9 125:5 126:3 126:16 156:21 156:22 233:8 |
| **third**(16) 80:2 80:8 123:5 170:6 173:16 209:20 212:18 219:12 219:13 219:25 235:21 235:21 235:21 238:14 238:20 239:6 | | | | **thrown**(2) 114:22 171:13 | | **touch**(2) 123:5 163:24 |
| | | | | **thursday**(1) 12:1 | | **touched**(1) 161:22 |
| | | | | **thus**(1) 54:9 | | **touching**(1) 121:25 |
| | | | | **tickoo**(1) 11:37 | | **towards**(3) 16:14 29:7 65:5 |
| | | | | **tied**(1) 66:9 | | **tower**(1) 4:18 |
| | | | | **ties**(1) 96:12 | | **tr-44193**(1) 88:15 |
| | | | | **tim**(1) 115:21 | | **tr40015**(1) 159:19 |
| | | **this**(15) 233:10 233:14 233:15 233:21 234:15 235:6 235:7 235:14 236:11 238:7 239:1 240:17 240:22 241:7 241:20 | | **time**(87) 15:9 15:10 15:18 20:5 20:6 30:12 37:14 40:8 43:19 45:16 48:6 48:9 48:12 48:17 48:22 49:1 49:5 50:23 53:1 55:17 58:13 62:8 62:12 64:24 66:7 68:14 72:13 73:24 76:15 77:7 79:8 79:20 79:24 80:12 82:8 82:20 83:14 83:20 85:12 92:20 93:19 99:3 99:4 112:6 112:7 112:21 113:3 113:20 114:4 114:8 114:9 118:20 123:25 127:3 127:7 129:11 133:10 137:14 157:8 174:20 188:14 193:5 193:6 193:7 194:19 194:21 198:24 199:12 199:17 199:21 200:15 208:19 208:22 208:23 209:2 209:7 216:8 216:12 219:14 219:18 223:20 232:15 239:2 239:7 239:13 241:5 241:14 | | **trace**(1) 151:24 |
| | | | | | | **trade**(30) 2:4 15:3 51:15 68:11 68:23 69:1 69:5 69:8 70:6 70:19 71:4 73:23 83:9 121:14 121:20 121:25 122:2 122:8 122:22 137:23 164:6 164:8 164:9 164:13 164:14 164:20 165:18 168:3 214:19 214:24 |
| | | **thomas**(2) 4:31 6:45 | | | | **traded**(1) 182:10 |
| | | **thoroughly**(1) 18:16 | | **times**(13) 22:19 5:16 24:9 79:15 81:25 82:1 107:6 177:16 178:10 216:25 222:8 222:25 229:24 | | **trail**(1) 89:5 |
| | | **those**(130) 16:6 28:14 31:14 34:10 39:23 40:19 48:6 50:19 51:21 51:24 53:15 54:5 54:8 54:24 55:7 59:23 61:4 61:12 62:7 64:18 64:23 65:18 65:25 69:21 69:25 70:4 71:21 76:24 79:22 81:15 81:19 82:10 82:19 86:20 86:23 86:24 87:8 87:10 88:25 90:14 94:17 94:22 96:24 97:6 101:15 103:11 105:3 108:9 110:6 111:8 111:10 111:14 116:14 117:18 119:2 125:17 135:1 138:20 141:16 143:10 146:8 148:24 150:16 151:22 152:8 152:13 156:24 158:24 159:6 163:17 164:18 165:20 165:21 165:23 166:8 166:10 166:12 167:25 172:9 172:23 173:1 173:17 176:13 176:16 179:1 180:21 181:3 182:3 182:12 182:22 183:20 184:6 184:14 184:23 184:23 185:4 185:8 185:9 185:16 187:4 190:3 190:16 191:8 193:8 195:9 204:21 205:12 205:15 207:19 207:24 208:9 208:18 208:24 210:22 211:12 216:24 218:8 219:5 226:9 226:17 226:21 227:20 228:2 229:21 231:5 231:21 232:4 232:8 235:22 | | **timetable**(2) 140:10 140:15 | | **transaction**(2) 87:11 88:10 |
| | | | | **timing**(1) 36:25 | | **transcriber**(1) 242:18 |
| | | | | **timothy**(3) 5:7 115:6 115:10 | | **transcript**(4) 1:18 1:48 184:20 242:13 |
| | | | | **tinker**(1) 141:13 | | **transcription**(3) 1:41 1:41 1:48 |
| | | | | **tinkering**(1) 108:17 | | **transcripts**(1) 218:12 |
| | | | | **today**(80) 14:3 14:12 15:10 17:2 17:11 17:12 19:22 38:15 50:14 58:5 58:10 62:23 63:20 67:13 67:19 67:21 69:7 69:12 83:5 86:10 92:10 104:7 112:12 116:11 117:6 117:11 117:12 117:23 118:2 118:4 122:1 122:7 123:3 123:23 124:11 124:17 125:15 126:24 133:12 133:15 136:22 139:15 147:7 152:9 152:15 162:12 167:4 171:14 171:18 182:23 188:14 190:6 195:3 195:12 195:16 196:2 196:3 196:9 196:12 197:11 197:22 200:15 202:9 202:15 204:14 207:18 210:2 210:10 211:2 216:12 216:13 218:14 219:22 228:8 228:24 229:8 231:2 232:15 233:10 241:5 | | **transfers**(1) 156:1 |
| | | | | | | **translate**(1) 124:20 |
| | | | | | | **transparency**(1) 148:19 |
| | | | | | | **transparent**(1) 224:24 |
| | | | | | | **travesty**(1) 44:11 |
| | | | | | | **treasury**(1) 81:7 |
| | | | | | | **treat**(1) 215:16 |
| | | | | | | **treated**(8) 31:14 105:15 152:11 156:10 157:2 172:10 183:20 184:7 |
| | | | | | | **treatment**(14) 56:3 56:6 56:14 56:20 59:21 72:6 72:25 105:12 151:19 178:17 179:11 179:12 208:14 209:6 |
| | | | | **today's**(2) 12:14 14:11 | | **trial**(79) 20:6 22:19 22:22 23:17 24:1 42:17 43:16 54:18 60:13 63:2 70:18 78:6 80:14 80:14 82:12 88:15 92:12 104:19 105:13 118:6 118:13 118:14 118:18 118:18 119:2 119:4 119:8 119:10 119:13 119:20 120:25 121:5 121:6 121:10 122:2 122:4 122:5 122:15 122:23 122:24 123:2 123:19 126:14 129:11 129:17 130:17 132:9 132:11 132:24 135:12 135:13 159:15 161:16 162:11 168:24 170:6 170:11 170:11 171:3 174:11 179:5 183:15 186:8 192:14 192:15 197:20 197:20 197:21 198:1 198:5 198:6 199:4 201:23 204:11 209:13 218:4 218:12 228:2 228:7 |
| | | **though**(3) 55:12 185:6 236:1 | | | | **trials**(1) 129:22 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| tribunals(2) 148:7 148:18 | | u.s(263) 6:34 7:34 12:8 14:1 14:16 16:9 | | under(66) 17:19 26:24 37:24 41:2 41:15 | | untrue(1) 123:2 | |

tribunals(2) 148:7 148:18
tried(4) 48:18 81:5 121:9 127:1
trier-of-fact(4) 197:21 198:6 198:23 199:5
triers-of-fact(1) 197:10
trigger(2) 127:24 128:15
triggered(1) 132:18
triggers(1) 129:7
trouble(2) 72:23 112:6
true(10) 22:1 53:6 87:9 118:6 118:7 197:4 210:25 221:1 240:7 240:24

true-up(2) 209:2 209:7
true-ups(1) 209:1
trump(1) 19:18
trust(13) 4:29 7:29 7:34 9:19 13:22 62:22 81:14 118:19 194:17 195:1 200:9 201:12 201:22
trustee(8) 3:32 6:33 62:22 63:15 63:15 64:7 65:7 194:18

trust's(1) 195:14
try(19) 48:11 69:14 73:2 84:12 86:22 90:7 90:11 93:12 93:17 116:15 117:5 125:1 137:15 167:2 168:10 193:1 197:17 208:22 229:24
trying(13) 33:24 33:25 51:2 83:23 91:10 93:14 97:4 125:24 127:12 162:4 174:4 206:4 217:4

tunnell(1) 1:25
turn(23) 12:4 12:18 41:23 48:24 66:23 76:23 93:22 113:12 115:25 127:2 127:12 128:25 128:25 129:1 167:10 167:16 176:8 182:21 182:24 186:11 224:13 225:4 229:25

turned(2) 15:22 84:8
turning(4) 31:16 84:12 173:6 223:23
tweed(2) 3:48 6:44
twice(8) 43:25 63:14 67:10 177:19 177:21 177:23 178:8 233:3

two(69) 16:6 19:21 20:8 35:17 37:1 38:2 41:21 56:14 56:16 61:13 63:5 64:18 66:1 79:5 79:9 82:11 82:21 99:2 102:17 106:4 110:6 115:21 116:14 118:14 120:10 120:10 127:18 149:1 149:5 152:20 153:12 154:10 155:25 157:21 158:4 158:9 164:2 164:11 167:17 179:1 179:15 184:14 184:20 184:23 185:4 189:12 190:16 193:18 193:20 195:12 197:21 206:17 207:21 207:22 210:23 212:15 216:20 216:20 217:15 218:18 223:8 223:16 223:17 235:1 237:25 238:8 240:1 240:2 240:2

two-month(1) 197:20
tyler(2) 3:38 62:21
type(10) 70:11 127:25 139:20 140:1 145:15 154:2 186:13 197:11 197:24 238:21

types(1) 100:23
typo(2) 193:19 214:16
typographical(1) 63:19
typos(1) 214:13
u.k(17) 5:24 6:28 6:33 7:33 9:19 29:20 137:9 142:9 142:11 166:23 187:4 189:1 189:5 205:7 221:2 237:14 240:6

u.s(263) 6:34 7:34 12:8 14:1 14:16 16:9 16:16 18:13 18:17 20:20 20:22 21:20 22:6 22:11 22:15 23:2 23:3 24:24 25:9 26:15 27:25 28:12 28:15 29:2 29:7 31:7 31:12 32:1 32:15 33:14 34:3 35:3 35:12 35:21 38:22 39:4 40:11 41:14 44:9 44:18 45:8 46:7 49:22 51:12 51:16 51:22 52:4 52:16 52:24 53:10 54:19 54:20 54:21 54:24 55:10 55:11 55:14 55:16 55:23 55:24 56:4 56:8 56:22 57:2 57:4 57:21 57:23 58:1 58:2 59:12 59:20 60:21 60:22 60:25 61:8 61:10 63:7 63:24 64:16 67:8 68:14 69:3 69:15 70:10 70:17 70:19 71:1 71:2 71:3 73:17 73:22 73:23 73:24 74:4 74:6 76:21 80:2 80:21 81:3 81:12 81:13 82:9 83:9 83:21 85:13 86:10 87:12 87:14 88:9 88:12 90:2 90:4 90:6 91:22 92:5 92:17 92:19 95:3 95:6 95:13 95:14 95:19 105:2 105:6 107:24 108:2 108:5 108:8 108:13 108:14 109:9 110:6 110:6 110:15 110:22 111:4 112:13 113:16 113:17 113:18 117:9 117:19 119:5 120:15 120:22 121:8 121:12 121:14 121:20 121:23 121:25 122:12 122:12 122:13 124:1 124:16 124:17 124:19 124:20 124:22 125:14 125:16 126:4 126:6 126:7 126:15 128:1 128:14 133:4 133:6 133:7 135:15 136:1 140:10 140:15 141:9 142:16 144:24 143:24 147:12 149:8 149:14 149:23 149:23 149:24 150:8 152:7 152:12 156:4 162:4 169:1 169:7 169:10 169:25 169:25 170:1 170:4 171:5 171:10 172:9 172:21 173:22 174:5 174:15 175:8 175:16 178:7 179:1 180:4 180:10 181:8 181:12 181:22 183:19 183:22 184:4 184:8 185:1 185:6 185:13 185:18 185:19 186:9 186:12 186:23 188:12 188:22 192:17 193:19 195:1 195:5 196:3 197:25 198:18 199:5 203:25 204:5 204:20 205:3 207:15 208:5 208:13 208:21 208:25 209:12 209:23 211:5 211:23 216:19 218:19 221:3 222:23 224:15 228:5 232:17 233:17 233:22 234:5 234:8 235:4 235:17 236:16 236:16

u.s.'s(1) 126:2

ucc(6) 15:3 45:8 61:5 121:21 124:1 124:17
ucc's(1) 122:5
ukp(33) 30:11 30:14 30:16 30:19 30:20 30:25 31:4 31:5 31:9 31:11 32:18 33:4 35:3 35:25 37:8 37:10 37:19 54:22 60:23 150:24 151:7 220:12 221:8 224:2 224:5 225:3 225:19 227:25 228:7 228:14 229:20 232:21 237:8

ukp's(1) 33:7
ukpc(25) 23:24 79:14 79:18 82:18 85:17 86:11 86:21 87:22 107:4 118:19 169:5 172:7 176:19 176:22 177:1 177:9 177:25 177:25 178:6 179:13 179:14 183:8 186:19 190:23 192:11

ukpc's(1) 86:14
ukpcs(1) 172:12
ukpc's(1) 188:16
ultimate(9) 73:1 88:22 89:14 96:14 108:11 108:21 175:22 204:24 230:19

ultimately(4) 38:6 56:7 90:22 96:20
unaccounted(1) 22:22
unadjusted(1) 171:4
unaffected(1) 182:11
unanimity(1) 63:8
unbroken(1) 47:19
uncertainty(2) 27:7 56:23
unchecked(1) 198:3
unclear(1) 174:21
uncontested(3) 57:25 222:20 235:10

under(66) 17:19 26:24 37:24 41:2 41:15 44:2 44:18 50:5 51:22 51:23 51:24 52:1 52:20 53:10 53:10 55:17 55:22 57:11 57:19 57:20 71:3 91:23 96:5 96:6 98:13 101:4 102:20 104:10 107:25 109:3 124:5 126:1 126:13 127:22 135:4 136:17 137:9 143:5 147:14 148:17 154:8 167:15 170:2 173:23 179:19 183:9 185:16 188:2 188:4 191:6 192:3 195:8 195:22 196:25 197:3 198:12 200:21 201:1 205:10 208:23 217:17 219:25 219:25 225:23 239:14 239:21

underfunding(1) 54:21
underlies(1) 101:13
undermine(1) 231:8
underscores(2) 32:6 129:21
understand(25) 16:21 26:1 31:10 33:11 34:18 46:5 46:15 53:20 53:21 56:11 63:22 72:18 74:1 77:10 82:8 83:4 83:5 85:1 92:21 98:18 114:13 114:15 131:8 188:7 214:16

understanding(2) 88:11 167:4
understood(5) 72:4 148:1 163:19 172:20 190:18

undifferentiated(1) 156:5
undisputed(1) 123:12
undue(1) 186:16
unexpected(1) 53:18
unfair(1) 144:5
unfairly(1) 214:25
unfairness(2) 53:14 74:3
unfettered(8) 42:3 43:5 128:4 128:6 128:17 128:19 128:21 129:7

unfortunate(2) 168:21 220:13
unfortunately(1) 116:22
unfunded(1) 143:3
unhappy(3) 190:7 197:2 197:8
unidentified(24) 49:20 83:23 84:2 84:3 84:8 84:10 84:18 84:19 84:22 84:24 85:1 85:3 85:4 85:6 113:7 113:11 113:13 113:17 113:22 114:1 116:7 193:21 205:20 214:11

unified(1) 90:10
unilaterally(1) 170:4
unintended(5) 17:15 53:3 53:3 82:23 176:9
unique(2) 205:8 240:10
united(21) 1:1 1:20 19:25 28:17 29:7 30:21 37:12 45:22 47:19 50:12 54:16 54:17 85:19 119:17 125:12 144:7 157:7 158:3 158:12 191:5 212:3

universal(1) 88:11
universe(1) 71:11
unjust(17) 26:3 26:22 26:24 26:25 56:8 56:21 58:15 83:11 83:13 91:24 92:1 92:11 104:22 108:6 126:22 215:22 215:23

unknown(2) 22:12 22:13
unless(8) 40:5 49:17 66:21 84:16 129:18 153:2 223:20 239:3

unlike(1) 209:13
unpaid(1) 182:4
unprecedented(1) 168:24
unprincipled(1) 145:10
unravel(2) 79:9 82:11
unraveled(1) 193:7
unraveling(1) 109:17
unsecured(21) 4:13 6:39 24:24 25:1 50:12 59:22 69:4 70:11 70:13 83:1 85:18 105:4 108:2 121:23 124:21 126:2 126:16 204:25 208:14 212:2 235:18

unsecureds(4) 171:7 171:11 171:23 211:23
unsupported(1) 122:23
until(6) 64:23 77:13 130:3 136:9 137:11 220:18

untrue(1) 123:2
unusual(2) 52:10 197:6
upend(1) 28:4
upon(16) 26:17 70:23 97:14 132:17 153:18 155:2 161:5 161:16 185:1 189:24 190:15 191:7 192:17 223:6 230:4 232:19

upsetting(2) 49:13 49:15
upshot(1) 140:2
urge(4) 47:16 132:17 176:3 182:16
urged(3) 80:1 122:9 182:19
urges(2) 61:5 183:8
urquhart(1) 9:25
usa(1) 8:37
use(13) 18:21 55:4 56:7 58:21 63:20 67:9 136:3 174:9 177:17 188:24 193:1 196:7 227:18
used(16) 34:11 50:3 59:1 67:10 87:13 101:4 101:5 105:6 110:11 117:20 120:1 177:16 185:4 195:24 206:10 215:14

useful(1) 49:3
using(6) 24:23 90:21 91:9 91:18 91:19 158:24

usual(2) 113:14 188:3
utilize(2) 48:13 212:19
vacuum(1) 169:19
vague(1) 27:4
valid(3) 65:21 152:10 164:2
validity(1) 228:2
valuable(1) 124:24
valuation(3) 22:25 54:13 230:11
value(25) 22:6 22:12 22:23 23:5 26:17 29:12 52:6 52:7 54:8 54:10 73:3 73:7 101:14 109:9 109:9 109:18 144:13 165:21 185:15 203:4 208:1 208:13 228:15 231:21 232:9
valued(8) 22:8 87:14 87:19 87:20 87:24 88:3 109:5 231:2

variance(2) 51:17 52:3
variety(4) 63:6 142:7 142:7 143:16
various(28) 78:13 79:8 80:24 100:3 109:4 112:14 133:17 134:12 136:3 140:22 142:8 142:22 145:17 150:14 150:14 151:23 155:5 156:8 156:8 156:9 156:10 164:14 165:17 165:25 166:2 175:25 209:2 222:25

vedder(1) 4:6
vehement(1) 75:12
verified(1) 165:19
versus(6) 55:11 55:11 105:6 187:11 187:13 234:23

very(76) 13:11 14:7 18:18 28:4 28:6 31:17 31:17 32:25 33:1 53:25 58:20 60:1 66:6 66:6 67:2 71:19 79:13 81:1 81:17 82:4 82:13 82:14 86:7 88:6 94:22 98:24 100:15 100:16 101:2 101:5 125:7 126:9 131:10 132:16 136:13 136:15 137:24 137:25 141:6 145:14 147:5 151:2 153:21 154:9 158:4 158:9 163:23 191:4 193:3 193:21 194:19 195:8 195:8 201:7 201:12 203:14 205:22 207:13 208:7 209:17 210:6 215:12 217:11 217:11 217:21 217:21 223:3 223:8 226:16 228:3 228:3 232:21 232:2 233:2 239:22 241:15

victory(1) 16:25
video(1) 69:9
view(14) 20:17 44:23 46:6 52:22 57:9 59:4 129:9 129:17 158:24 161:13 172:8 195:14 196:13 204:21

viewed(1) 231:12
views(2) 59:15 127:4
vigilant(1) 134:7
virtue(3) 58:4 208:14 229:17
vis-a-vis(2) 66:14 66:18

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**vitally**(2) 79:6 100:10

**vociferously**(1) 18:15

**volume**(2) 12:18 116:1

**voluntary**(1) 139:24

**wait**(7) 36:6 48:23 48:24 64:23 99:14 100:5 185:7

**waived**(1) 66:12

**walked**(1) 119:12

**walking**(1) 76:7

**wallace**(1) 44:3

**wang**(1) 9:5

**want**(80) 14:3 14:9 14:19 16:12 16:13 16:15 17:2 25:20 27:18 34:2 34:20 35:13 36:6 36:9 36:9 38:17 41:8 42:10 56:5 61:13 61:22 61:23 61:24 64:7 65:11 67:16 71:24 71:25 74:2 77:18 79:25 90:11 90:13 90:14 97:21 98:22 99:17 109:19 109:22 114:2 116:13 116:14 117:1 117:4 118:7 120:24 122:19 123:5 125:19 125:22 145:14 150:12 158:14 160:19 162:25 165:1 165:3 165:15 171:21 172:15 174:16 174:21 176:25 187:7 187:9 193:23 196:13 199:14 201:13 216:7 218:11 221:9 223:4 227:14 233:18 233:19 235:21 236:25 237:2 237:3

**wanted**(10) 33:23 43:5 71:24 72:2 86:9 102:17 108:23 113:25 147:1 160:4

**wants**(6) 34:12 39:19 76:13 160:11 174:13 227:15

**warning**(1) 176:14

**warrant**(1) 131:21

**warranted**(1) 178:18

**wary**(1) 112:5

**was**(275) 14:5 17:20 18:2 18:16 18:20 19:3 19:10 19:11 19:24 20:9 20:10 20:12 21:4 21:9 22:5 22:6 22:7 22:12 22:12 22:19 22:20 22:21 22:21 22:23 22:24 23:19 23:20 23:20 24:7 24:8 24:18 27:7 28:24 29:11 42:4 42:20 44:5 44:22 46:6 47:1 48:8 48:19 48:21 49:13 50:6 52:7 52:17 54:19 54:20 54:23 54:25 55:12 55:19 56:18 62:3 63:10 63:18 68:11 71:18 80:13 80:19 81:8 81:24 82:2 82:7 83:18 85:20 86:9 87:16 88:2 88:9 88:10 88:13 88:18 90:15 90:20 90:23 92:3 92:12 92:13 95:7 95:23 97:4 103:13 103:14 103:18 104:2 104:19 104:22 105:15 105:24 105:25 106:12 106:20 106:23 107:1 108:14 109:3 110:2 110:18 110:18 112:13 112:18 112:24 114:4 114:18 114:18 118:8 118:10 118:11 118:24 118:25 119:2 119:10 119:22 119:22 120:4 120:14 120:21 121:5 121:15 121:17 121:18 122:2 122:6 122:7 122:8 122:15 123:11 123:18 124:16 125:9 125:15 130:8 131:16 131:17 131:18 131:19 132:11 134:3 134:4 135:25 136:2 136:2 137:20 141:20 142:25 143:1 143:4 143:4 144:15 144:16 146:23 147:5 148:13 150:24 151:21 155:4 155:4 157:7 157:8 157:13 157:24 158:3 161:5 161:6 161:16 162:10 162:23 169:17 169:21 170:6 170:12 170:13 170:21 171:2 171:3 171:9 171:18 171:19 172:7 172:14 175:21 176:18 176:20 176:23 177:17 178:4 178:8 178:10 178:14 178:22 179:5 179:6 179:7 180:4 180:11 181:4 181:15 184:2 184:21 185:2 185:23 186:5 186:7 186:9 188:14 188:17 188:17 188:18 189:16 189:23 194:22 195:7 195:12 196:9 196:20 197:15 197:20 197:24 198:11 198:12 198:17 198:23 200:5 203:1 203:2 203:3 203:10 204:5 206:5 210:13 211:24 213:2 215:4 215:10 216:17 217:9 217:22 218:3 218:3 218:8 218:9 218:10 219:18 219:19 225:6 225:6 225:17 226:4 228:8 228:11 228:15 230:10 230:11 230:21 230:25 231:25 232:1 232:3 232:6 232:20 233:2 233:4 233:15 236:11 237:13 237:24 238:4 238:16 238:17 240:2 241:10 241:21 242:9

**washington**(3) 2:35 4:2 4:32

**wasn't**(9) 17:14 22:6 43:22 50:5 88:23 106:21 106:25 230:24 232:1

**wasn't**(6) 143:2 155:5 160:9 174:1 198:18 198:20

**watching**(1) 84:10

**watson/in**(1) 8:22

**way**(45) 21:24 31:14 48:10 52:18 52:18 62:11 66:12 72:2 76:7 83:17 83:20 89:20 102:9 108:13 110:17 114:25 116:21 118:23 125:25 129:12 143:6 143:17 150:16 157:5 161:12 162:15 167:1 170:21 170:22 171:21 174:18 174:23 174:24 176:8 182:11 182:15 185:12 190:24 195:21 204:1 215:16 226:8 231:18 238:7 241:19

**ways**(3) 35:15 80:24 131:25

**we'd**(3) 36:10 49:2 49:7

**we'll**(9) 13:4 48:19 100:13 114:7 114:10 202:20 207:1 217:22 242:4

**we're**(56) 16:21 21:3 26:20 26:20 26:22 31:1 31:8 31:13 31:20 33:19 33:24 34:24 35:16 36:14 38:9 38:24 41:15 41:18 45:12 48:21 53:22 58:16 60:18 62:22 64:14 65:6 66:19 67:24 69:12 75:2 75:17 76:5 77:21 84:6 84:23 85:4 101:4 101:5 106:24 108:20 108:21 109:7 204:12 205:9 209:11 215:18 215:18 218:23 162:22 233:10 237:25 238:8

**we're**(29) 19:4 25:6 33:23 33:25 34:1 34:10 36:5 37:9 42:11 47:4 48:14 48:18 63:4 112:3 204:12 205:6 216:25 218:2 219:8 219:9 220:6 220:11 221:2 221:4 221:7 225:2 230:2 235:13 240:11

**wealth**(1) 156:1

**webb**(2) 3:38 62:21

**weber**(4) 5:20 202:5 202:6 202:11

**wee**(1) 12:18

**weeks**(1) 89:16

**wei**(1) 9:5

**weighed**(1) 28:18

**weight**(1) 123:19

**welcome**(1) 202:20

**well**(107) 15:2 16:19 18:22 21:19 23:22 25:7 28:7 33:10 34:22 37:1 37:5 37:9 37:17 37:19 42:9 44:2 44:8 52:1 53:24 54:21 58:7 61:19 71:2 72:3 74:11 75:24 79:14 79:25 80:6 82:6 86:4 86:7 86:17 88:2 88:12 91:7 92:17 93:12 96:11 96:18 97:8 98:7 101:2 111:3 121:5 126:15 129:2 131:2 135:23 145:14 146:25 148:21 158:21 159:22 161:3 164:18 170:16 171:6 175:18 175:21 183:13 189:5 189:9 193:24 195:6 195:18 199:3 199:14 200:20 201:14 206:9 211:23 212:22 215:6 217:20 218:23 219:23 220:15 221:2 221:4 222:15 227:23 229:12 229:19 230:12 230:13 231:7 232:21 233:22 234:23 235:13 235:21 236:4 236:11 237:11 237:18 239:5 239:23 241:6

**well-considered**(2) 200:20 200:25

**well-defined**(1) 62:11

**well-structured**(1) 62:10

**well-taken**(1) 145:22

**well-thought**(1) 195:12

**went**(13) 21:22 22:11 33:24 44:4 70:18 116:14 117:8 118:22 183:14 231:1 237:14 241:13 241:15

**were**(140) 21:14 21:25 23:23 24:6 24:9 24:12 32:18 33:4 34:21 36:12 39:11 44:10 45:20 47:12 47:15 50:25 52:22 54:9 59:8 59:11 60:5 60:12 60:17 63:9 66:15 68:8 75:19 80:16 81:20 82:4 82:8 82:11 82:22 82:22 82:23 82:23 86:21 87:9 87:10 87:10 87:12 87:14 87:24 88:25 89:9 90:21 92:24 92:25 95:22 96:5 100:14 101:25 103:15 103:18 104:19 104:23 107:3 108:14 109:6 118:6 118:13 118:21 118:23 118:25 119:14 119:18 119:18 120:11 121:2 123:1 124:9 124:9 124:9 125:7 125:11 127:19 131:20 138:17 138:20 139:9 141:6 141:8 141:15 144:12 144:12 144:13 148:9 152:16 160:6 160:14 161:3 164:11 165:18 165:24 166:1 166:3 167:23 169:12 171:17 171:20 172:2 172:3 173:4 175:14 176:14 176:16 177:11 177:14 179:9 179:11 182:6 186:3 188:20 188:20 189:2 189:3 193:4 195:7 195:15 198:25 199:3 199:4 200:7 204:22 206:11 208:20 209:5 210:9 214:13 215:2 220:23 221:14 224:1 224:24 228:5 228:10 232:6 233:10 237:25 238:8

**weren't**(2) 49:15 104:21

**weren't**(1) 157:25

**weston**(1) 5:35

**we'd**(1) 193:21

**we'll**(5) 116:4 166:24 185:9 193:25 194:1

**we're**(21) 116:9 116:21 116:25 117:2 118:11 126:5 127:9 133:15 140:22 144:17 146:10 148:3 148:4 152:22 158:15 186:24 189:4 189:13 191:16 201:25 202:1

**we've**(11) 133:18 138:9 146:5 146:8 146:20 148:5 157:8 189:18 189:20 190:11 191:13

**whack**(1) 135:20

**what**(269) 14:10 15:14 19:11 21:1 21:17 22:6 22:9 22:22 22:18 24:20 25:4 26:1 26:13 26:17 27:11 28:1 28:2 28:24 29:16 29:18 29:23 29:25 30:10 30:12 30:13 31:1 31:9 33:3 35:6 35:22 36:8 36:13 36:17 36:24 37:4 37:20 38:2 38:6 38:7 39:13 40:9 40:11 42:4 43:4 43:4 44:7 45:15 46:5 46:18 47:4 47:20 48:16 48:24 50:2 52:7 53:13 53:14 54:11 54:12 55:10 56:21 57:9 57:10 59:4 59:19 59:21 60:4 62:5 62:6 64:3 65:17 66:7 66:10 69:8 69:13 69:14 71:1 71:23 73:2 73:4 73:8 74:15 74:19 75:16 76:19 76:20 77:18 78:21 79:5 79:9 83:4 83:12 88:25 91:6 92:17 92:19 94:24 95:22 97:22 101:13 101:25 102:12 103:16 103:20 104:2 104:14 106:10 107:9 107:17 110:2 110:19 111:3 112:12 112:16 112:21 114:4 114:18 117:23 120:5 120:5 120:7 120:13 120:16 120:21 121:15 122:23 122:24 122:25 124:13 125:18 125:24 126:24 127:24 127:25 128:5 129:7 129:7 135:25 136:2 140:13 140:15 140:22 141:8 141:10 141:11 141:13 143:24 144:21 145:20 146:5 146:8 146:19 149:8 149:24 150:8 151:22 152:13 155:6 155:7 156:19 157:13 158:6 158:13 158:18 158:23 159:7 160:19 162:3 162:3 162:8 162:9 162:17 162:16 163:10 164:4 167:23 168:7 170:15 171:16 172:3 172:4 172:6 172:17 172:17 172:24 173:1 173:2 174:2 174:16 174:17 175:14 176:5 178:8 178:14 180:7 180:9 181:15 181:19 182:1 182:21 183:5 183:6 184:20 185:13 185:14 186:2 186:14 187:12 187:17 188:9 188:17 188:20 188:24 188:25 189:1 191:3 191:7 191:25 192:3 193:15 195:25 196:3 196:8 196:8 196:9 196:13 197:1 197:13 198:17 198:25 199:7 199:9 204:3 204:10 209:11 209:19 211:25 213:3 213:5 215:2 215:4 215:8 220:11 220:11 221:4 221:18 222:4 222:19 223:9 225:20 226:4 226:6 226:9 226:24 227:7 227:8 229:2 229:10 229:14 229:17 231:11 231:16 232:16 233:20 234:13 234:24 236:3 239:8 240:23

**what's**(6) 28:7 70:16 71:25 203:5 220:20 225:9

**whatever**(19) 38:8 39:2 52:5 64:13 65:17 66:15 111:13 114:20 129:6 132:16 172:22 182:15 189:8 212:23 213:4 227:14 228:25 236:25 237:2

**whatsoever**(6) 47:8 82:19 89:25 90:10 164:23 221:12

**what's**(7) 117:7 123:1 129:8 131:13 159:14 196:2 197:11

**when**(64) 18:3 20:15 24:10 26:6 28:18 28:21 34:2 37:18 41:20 41:24 44:23 49:25 54:2 62:24 63:11 67:23 68:8 72:19 73:2 75:16 76:11 76:11 83:9 91:1 92:2 92:11 92:16 111:3 112:21 128:23 130:18 150:25 150:25 154:9 155:8 156:18 158:23 162:22 171:15 172:17 178:10 198:9 206:10 209:10 210:23 211:21 212:3 213:6 215:13 217:12 219:8 224:16 226:4 230:9 230:13 232:16 233:13 233:14 234:17 234:22 236:10 238:7 239:2 239:11

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **where**(72) 17:22 19:24 20:6 20:11 26:12 26:16 27:16 33:19 42:17 56:9 56:11 56:17 56:18 65:9 66:2 70:24 94:14 94:25 95:1 95:9 95:15 95:20 99:6 100:7 101:10 102:5 108:16 113:15 113:25 117:14 128:8 129:15 131:23 131:24 132:6 132:10 137:3 139:3 139:19 139:21 144:19 146:18 146:25 149:5 150:18 153:21 160:15 167:2 168:14 179:2 186:18 190:12 191:5 191:5 191:23 196:2 196:3 197:20 208:20 214:3 215:22 222:25 224:17 224:24 226:1 230:2 234:18 236:13 237:7 240:18 241:13 241:14 | | **wide**(1) 23:4<br>**wife**(1) 69:23<br>**wild**(1) 11:41<br>**wilfred**(1) 69:24<br>**will**(145) 12:16 14:23 15:5 17:12 19:20 19:22 21:7 22:2 30:12 30:14 31:3 36:3 36:17 37:21 38:6 39:20 40:11 40:19 40:21 43:7 43:13 44:16 46:1 46:20 50:18 50:20 51:13 53:15 58:21 62:24 64:10 64:11 67:18 67:21 67:23 69:16 76:10 76:11 77:13 78:25 78:25 79:9 79:12 85:19 89:20 89:24 93:20 95:10 95:14 96:22 97:5 97:19 107:18 109:25 111:5 111:8 112:15 113:3 113:8 113:22 113:24 114:9 120:3 120:13 126:12 127:16 136:16 137:24 138:24 139:7 139:10 139:25 140:3 140:6 140:9 140:19 145:16 148:8 148:18 151:2 151:4 154:14 155:13 154:16 156:11 156:13 158:19 159:22 160:3 163:23 164:16 164:21 165:16 167:2 167:7 167:10 167:10 167:10 167:14 167:16 167:18 167:20 168:10 170:1 171:5 171:7 171:11 173:10 174:17 177:17 179:6 181:13 181:23 182:14 186:16 186:22 187:5 187:5 187:15 191:20 192:25 194:1 198:9 200:5 206:15 206:17 206:22 208:8 208:11 209:3 210:11 211:14 211:14 212:5 216:9 218:18 220:12 221:11 226:2 226:10 227:16 229:20 233:7 233:8 241:16 | | **with**(297) 14:4 14:22 15:8 16:10 18:11 18:12 20:23 21:16 22:18 23:7 23:18 24:10 24:15 27:10 27:12 29:19 29:23 30:23 31:9 31:18 31:23 31:24 32:7 33:21 34:7 34:15 35:1 35:2 35:23 36:15 37:8 37:10 37:13 39:5 39:20 39:22 40:4 40:5 42:14 43:7 44:6 46:6 46:14 46:17 47:18 47:20 47:21 47:22 47:24 48:4 48:12 48:17 48:19 49:9 49:12 51:17 52:3 52:8 54:4 57:12 58:16 60:9 60:20 61:16 62:8 62:11 63:24 64:17 65:3 65:7 65:11 66:14 68:6 68:10 70:17 70:23 72:23 73:9 74:6 75:14 76:7 76:14 78:20 79:1 79:2 79:2 80:20 80:22 81:21 82:14 85:11 86:20 88:8 88:20 92:6 92:24 93:13 93:14 93:17 95:11 95:20 96:5 96:10 96:17 96:24 97:7 97:23 99:8 102:1 102:23 103:10 103:17 104:11 105:14 106:7 107:4 107:9 108:24 109:9 110:1 110:2 110:4 110:5 111:7 112:17 113:8 115:13 115:24 117:2 117:7 120:7 121:6 121:7 121:19 122:19 122:24 123:20 123:23 124:14 124:16 126:15 126:16 127:4 128:1 128:15 128:15 128:21 128:24 131:22 132:20 133:23 137:6 138:5 139:2 139:6 139:7 139:10 139:11 139:12 139:13 140:18 140:25 141:1 141:8 141:14 143:10 145:10 145:18 148:13 148:14 151:17 152:2 152:3 152:24 153:10 153:23 154:12 154:15 156:13 157:5 158:18 159:11 159:24 161:8 161:15 161:21 163:13 165:4 169:9 170:15 172:12 172:13 172:24 173:23 174:3 174:3 174:22 174:25 178:9 178:11 181:8 182:8 185:5 185:9 185:14 186:13 187:6 189:4 189:10 189:14 190:2 190:5 190:9 191:20 192:20 195:6 195:13 195:19 195:21 196:13 196:23 196:24 197:1 197:2 197:8 197:8 197:21 198:9 198:21 198:22 199:23 199:24 199:25 200:1 200:2 200:11 201:9 202:8 203:6 203:11 203:16 204:11 205:7 206:2 207:19 207:20 207:23 208:9 208:18 208:19 209:7 209:15 209:16 209:21 210:5 211:5 211:13 213:20 215:2 217:9 220:22 222:2 221:11 221:22 221:24 222:5 222:6 223:24 223:25 224:24 225:3 225:16 225:22 227:5 227:12 228:20 229:15 229:22 230:1 231:4 231:11 232:4 232:7 232:7 232:11 234:10 234:15 235:12 235:14 236:21 237:4 237:19 238:15 239:5 240:6 240:9 240:18 | | **working**(3) 74:7 116:15 221:5<br>**works**(1) 195:22<br>**world**(9) 54:12 57:17 72:19 72:19 146:18 165:13 169:15 192:1 233:1<br><br>**worried**(1) 114:22<br>**worse**(3) 203:19 222:14 222:17<br>**worth**(10) 22:10 22:10 22:11 23:1 23:3 235:16 235:17 235:17 235:18 236:5<br><br>**would**(208) 15:22 16:8 20:14 20:21 21:2 21:23 22:14 24:12 26:6 28:10 28:22 29:16 29:18 29:23 29:25 30:9 31:11 31:12 32:12 32:22 36:1 39:4 39:10 40:8 41:1 41:1 43:13 43:16 43:18 43:19 47:16 48:3 48:7 52:5 52:6 52:15 53:14 54:12 55:16 57:17 57:21 59:21 59:22 60:21 63:8 63:9 63:16 63:21 64:2 65:4 65:4 65:6 65:16 65:19 69:4 69:5 70:9 71:20 74:25 77:2 77:7 77:19 82:10 90:3 96:4 98:14 101:24 103:9 103:16 103:16 104:20 106:19 107:6 107:21 108:1 108:3 108:14 110:21 110:23 112:1 112:5 112:6 112:22 114:4 114:8 114:25 116:25 124:20 125:18 126:14 126:17 126:19 132:2 135:10 135:10 135:11 135:12 135:16 136:17 138:5 141:9 141:10 141:22 142:6 142:18 142:19 143:7 143:12 143:14 144:5 144:19 144:22 145:24 145:25 147:9 148:19 148:15 150:4 153:18 154:3 154:4 154:5 154:5 154:7 154:10 155:19 155:25 156:1 156:5 157:2 157:2 157:5 157:19 157:20 158:7 158:10 161:19 164:1 164:9 164:4 166:9 167:23 170:9 171:21 171:23 171:24 172:3 172:24 173:3 176:8 176:10 176:14 176:17 178:15 179:3 180:20 180:20 180:21 182:9 182:10 182:11 182:13 182:16 183:2 183:9 188:12 188:21 190:13 190:16 191:7 191:10 191:16 191:18 193:2 193:3 193:4 193:8 196:6 197:7 198:11 198:24 198:25 199:1 199:7 200:14 200:16 200:23 202:1 204:1 204:23 205:4 210:7 210:14 213:2 214:24 216:15 224:11 229:8 229:18 229:19 231:5 234:23 235:20 238:12 238:12 238:22 238:25 239:20 240:5 240:23 |
| | | | | | | | |
| **where's**(1) 222:15<br>**whereas**(1) 182:4<br>**whereupon**(1) 242:9<br>**wherever**(1) 105:19<br>**whether**(40) 22:12 24:11 38:14 41:13 42:24 45:20 47:1 58:12 67:16 80:7 85:2 94:10 129:7 132:2 132:3 138:18 148:21 178:17 178:20 182:21 182:22 186:5 186:9 187:21 192:2 192:19 197:12 197:14 209:11 209:12 215:15 215:15 215:16 220:11 222:5 223:24 225:13 233:13 236:19 240:6 | | | | | | | |
| | | **willkie**(3) 5:31 6:29 166:23<br>**wilmington**(22) 1:12 1:29 2:9 2:28 3:4 3:35 4:26 4:29 5:22 5:28 5:45 7:29 12:1 17:21 18:19 185:24 194:17 194:25 195:14 200:9 201:12 201:22 | | | | | |
| **which**(125) 17:9 21:6 28:4 28:16 30:1 31:1 33:16 35:7 41:22 43:8 43:9 46:7 46:9 51:5 53:12 56:14 57:19 58:4 60:2 60:13 60:18 62:7 66:11 67:10 68:24 71:23 75:3 75:3 75:19 79:5 79:6 88:17 89:12 89:19 90:4 90:22 93:5 93:6 93:25 94:17 94:22 95:21 96:5 98:13 100:1 101:8 101:17 102:13 104:5 105:13 109:3 110:3 111:12 116:16 119:15 120:16 120:21 121:21 122:21 123:7 125:19 126:7 127:19 127:20 127:22 129:10 129:23 130:7 132:14 135:5 137:13 139:25 142:2 143:1 143:3 149:7 150:13 151:4 151:7 153:18 155:1 155:2 156:18 157:21 158:10 158:11 161:5 161:16 162:5 163:12 164:5 167:20 171:9 173:13 176:2 176:3 176:12 176:21 181:25 182:4 182:6 187:8 187:19 188:22 195:7 196:5 197:23 200:2 202:22 207:16 209:12 209:22 217:15 218:17 220:17 220:24 223:5 227:4 229:16 239:13 | | **wilson's**(1) 69:24<br>**win**(2) 43:19 43:22<br>**wind**(1) 145:10<br>**windfall**(1) 229:17<br>**winners**(1) 16:19 | | | | | |
| | | | | | | | |
| **while**(16) 16:9 16:20 27:14 90:10 99:14 100:5 119:11 133:11 176:4 195:19 195:22 205:14 216:25 217:14 217:23 231:23 | | | | **within**(23) 17:10 32:22 81:8 93:20 96:13 96:19 96:25 98:14 98:24 99:13 145:21 147:8 148:22 151:19 152:3 152:4 166:25 178:16 181:24 232:9 234:18 234:21 240:14 | | **would've**(3) 224:4 224:8 224:9<br>**wouldn't**(4) 39:24 43:20 64:14 91:2<br>**wouldn't**(2) 125:20 165:16<br>**wound**(1) 81:15<br>**wrangling**(1) 129:13<br>**wrap**(2) 33:24 65:23<br>**wrapped**(1) 105:3<br>**wrapping**(1) 36:8<br>**wright**(1) 173:15<br>**write**(1) 241:16<br>**writes**(1) 133:22<br>**writing**(1) 63:3<br>**written**(7) 74:15 74:19 138:7 138:22 175:4 181:14 183:2 |
| **whiteford**(1) 4:22<br>**who**(40) 22:7 22:8 22:22 22:24 43:18 51:12 51:14 53:15 62:5 62:24 64:23 66:4 68:15 71:21 77:6 96:6 98:2 103:15 109:4 112:19 112:19 120:23 122:6 133:11 134:6 134:12 135:13 135:17 136:21 138:24 158:9 187:4 187:5 188:14 191:1 200:4 214:22 218:14 230:3 238:15 | | **without**(9) 58:13 61:4 111:1 115:14 115:16 198:12 221:14 221:15 236:21 | | | | | |
| **who's**(5) 45:3 45:3 113:5 211:16 237:18<br>**whole**(21) 53:9 54:9 55:15 76:18 93:25 104:25 107:24 109:11 124:22 125:22 125:22 135:16 136:8 155:2 155:23 160:17 193:7 195:2 203:15 205:4 222:2 | | **witness**(3) 122:4 122:4 122:5<br>**witnesses**(3) 198:4 198:8 200:1<br>**won't**(5) 38:20 71:10 74:17 205:6 212:10 214:4 | | | | | |
| | | | | **wonder**(1) 172:2<br>**wonderful**(1) 116:23<br>**wonderfully**(1) 241:22<br>**wondering**(3) 84:23 85:2 225:9<br>**won't**(7) 133:22 139:16 155:6 160:10 162:7 173:9 174:20 | | **wrong**(7) 122:7 141:15 161:9 219:3 219:3 233:14 241:13 |
| **wholeheartedly**(2) 127:4 224:2<br>**wholly**(2) 18:23 217:23<br>**whom**(3) 62:5 69:20 92:6<br>**whose**(1) 136:8 | | | | | | **wrongly**(1) 217:9<br>**wrote**(4) 148:6 172:18 178:14 228:12<br>**wunder**(1) 11:45<br>**www.diazdata.com**(1) 1:45 |
| **who's**(2) 133:3 166:16<br>**who've**(1) 134:21 | | | | **word**(10) 51:10 54:2 56:7 67:10 67:13 67:15 67:21 68:18 129:21 146:23 | | **yeah**(20) 74:7 75:7 84:15 85:6 86:17 89:4 94:5 96:9 133:8 138:20 145:3 160:23 162:21 163:1 163:4 168:8 183:24 193:20 206:19 206:19 |
| **why**(45) 21:19 23:22 23:25 31:10 34:18 39:21 39:23 41:12 44:8 54:14 54:16 55:10 55:11 57:11 64:25 68:24 72:13 72:23 79:19 84:20 106:14 107:10 115:16 125:20 125:20 130:19 137:7 156:17 159:25 165:15 166:8 179:18 179:20 179:24 181:1 195:9 196:1 203:9 215:13 225:23 231:17 232:12 233:9 234:23 235:10 | | | | **wording**(1) 208:23<br>**words**(12) 48:13 50:3 88:25 107:14 138:20 158:21 182:3 214:25 217:2 217:4 222:5 227:18<br>**work**(9) 69:25 99:11 99:12 107:12 121:7 165:16 183:14 198:11 198:25<br><br>**worked**(5) 69:21 69:23 221:24 222:7 | | **year**(5) 57:25 58:7 80:13 117:7 221:25<br>**years**(18) 34:1 36:6 47:19 49:14 68:4 68:5 69:22 70:9 71:11 89:17 127:5 148:6 197:18 220:16 221:5 221:8 221:23 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**yes(71)** 13:5 15:4 15:24 19:1 19:7 19:8 23:10 24:3 25:23 25:25 27:17 27:20 29:13 29:17 30:7 32:10 36:23 37:11 39:7 59:7 59:10 63:13 63:17 66:11 69:2 69:10 78:9 78:9 85:11 85:25 86:6 89:6 91:16 94:8 95:25 99:19 101:2 111:18 111:21 112:10 114:1 115:4 116:4 130:6 130:10 138:12 138:14 145:4 149:18 149:21 159:21 163:19 163:20 166:19 184:2 184:15 196:22 198:16 207:4 207:8 207:12 210:21 213:17 213:24 214:22 220:9 229:6 229:10 231:10 231:10 239:23

**yesterday(3)** 36:15 137:4 213:23

**yet(6)** 38:17 66:6 116:11 149:13 150:13 157:25

**york(10)** 1:36 2:20 3:22 3:41 4:6 4:9 4:19 5:17 5:37 62:22

**you(301)** 12:4 12:5 13:5 13:9 13:11 13:12 13:17 13:22 13:25 15:19 16:1 17:12 17:12 17:13 17:13 17:15 17:17 18:12 19:2 19:3 19:4 19:6 19:9 19:10 19:13 19:14 19:17 20:20 20:20 20:25 21:14 21:18 23:8 23:11 23:12 23:14 23:16 23:23 23:25 25:7 25:7 25:13 26:23 27:24 28:18 28:19 28:21 29:8 29:16 29:18 29:20 30:1 30:4 30:10 30:11 30:15 32:3 32:3 32:5 32:11 32:20 33:4 34:2 34:4 34:13 34:24 35:11 35:21 35:22 35:24 35:25 36:2 36:13 36:13 36:16 36:17 36:17 37:3 37:6 37:7 37:14 37:23 38:2 38:5 38:8 38:19 38:25 39:8 39:10 39:11 40:9 41:4 41:6 41:8 41:11 41:13 41:18 41:21 41:22 42:8 42:10 42:23 43:2 43:4 43:4 43:5 43:7 43:13 43:18 43:19 43:23 44:8 44:10 44:13 44:13 44:15 44:20 44:23 44:23 44:24 45:1 45:2 45:12 46:12 46:13 47:22 48:19 49:15 49:18 49:19 49:24 50:1 50:7 51:2 51:5 53:21 53:24 54:1 54:10 55:2 55:4 56:17 59:8 59:9 59:11 59:12 59:13 60:16 62:16 62:17 62:21 63:9 63:11 63:12 63:14 64:25 65:7 66:9 66:11 66:21 67:1 67:2 67:3 67:4 67:12 67:14 67:15 67:16 67:18 67:19 67:20 67:22 67:25 68:1 68:2 68:8 68:14 68:16 68:17 68:25 69:1 69:9 69:16 70:1 70:9 70:15 71:6 71:9 71:14 71:16 71:20 72:2 72:7 72:11 73:13 73:16 73:19 74:17 75:6 75:11 75:11 75:25 76:11 76:14 76:16 76:17 76:19 76:22 77:4 77:10 77:18 77:22 79:12 80:7 80:16 80:17 80:17 80:18 80:18 81:9 81:13 81:23 81:23 81:25 82:1 82:2 82:3 82:4 82:6 82:6 82:8 83:2 83:3 83:6 83:7 83:9 83:10 83:11 86:2 86:4 86:9 87:3 88:6 89:9 89:16 90:11 90:18 91:2 91:3 91:3 91:5 91:5 91:13 91:18 92:2 92:11 92:20 92:21 92:25 93:1 93:4 93:4 93:6 93:16 93:19 93:19 93:24 93:25 94:7 94:14 94:23 95:1 95:6 95:9 95:12 95:15 95:17 95:22 96:1 96:4 97:2 97:8 97:9 97:9 97:12 97:14 97:19 97:22 98:7 98:10 98:12 98:19 100:9 100:10 100:16 100:17 101:1 101:2 102:5 102:7

**you(301)** 107:3 107:8 107:9 107:17 109:1 109:2 109:7 109:9 109:8 110:2 110:13 111:16 111:19 111:22 112:23 113:1 113:18 113:20 114:2 114:4 114:10 114:12 114:14 114:18 115:2 115:7 115:9 115:12 115:20 116:1 116:2 116:5 116:6 116:15 116:17 116:22 116:25 118:5 120:7 120:17 120:20 122:5 125:10 125:12 125:21 126:6 127:3 127:3 127:14 128:11 128:23 128:25 128:25 129:1 129:7 129:22 130:2 130:18 131:11 131:14 132:13 132:17 132:17 132:20 132:23 133:22 133:11 133:12 135:9 135:13 135:17 136:7 137:13 138:3 138:5 138:13 138:15 138:16 138:17 138:19 139:9 139:9 139:11 139:12 139:19 140:12 141:22 144:24 145:1 145:2 145:3 145:3 145:5 145:9 145:9 146:12 146:10 146:20 146:21 147:22 147:25 148:6 148:8 148:9 148:9 148:11 148:24 149:11 149:14 149:15 150:12 150:15 150:25 151:1 151:17 151:23 153:1 153:5 153:6 153:6 153:8 153:8 153:16 154:23 155:8 155:14 155:17 158:23 159:13 159:16 159:17 160:5 160:10 160:19 160:19 162:5 162:6 162:7 163:1 163:2 163:10 163:11 163:12 163:16 163:19 163:20 163:20 164:12 165:10 165:16 166:11 166:12 166:13 166:14 166:15 166:24 167:3 167:5 167:22 168:5 168:6 168:9 168:11 168:13 168:14 170:13 170:20 170:25 171:3 171:4 171:8 171:8 171:16 171:20 171:21 172:1 172:15 172:25 173:7 173:10 173:14 173:15 173:19 173:20 173:21 173:21 174:15 174:21 174:21 174:15 175:22 176:1 176:15 176:17 177:7 177:17 177:19 177:21 177:24 178:10 179:6 180:12 180:25 181:14 181:25 182:9 182:10 182:12 182:20 182:21 182:21 182:21 183:4 183:16 183:18 183:23 184:1 184:11 184:22 185:7 185:14 186:22 186:25 187:6 187:6 187:9 187:14 187:15 187:16 188:5 188:5 188:8 188:11 188:15 188:19 188:20 188:23 189:2 189:2 189:18 189:20 190:2 190:11 191:3 191:17 191:19 191:21 191:23 192:6 192:10 192:11 192:14 192:18 192:19 193:5 193:7 193:10 193:11 193:12 193:23 194:5 194:7 194:9 194:12 194:12 194:25 195:15 195:17 195:21 195:23 195:25 196:9 196:11 196:13 196:18 196:19 196:21 196:23 196:24 196:24 196:24 197:1 197:13 198:6 198:14 198:15 198:17 199:8 199:10 199:13 199:14 200:1 200:5 200:14 201:2 201:3 201:9 201:10 201:18 202:2 202:3

**you(150)** 202:11 202:12 202:23 203:24 204:3 204:13 204:16 205:17 205:18 205:19 205:22 206:24 206:25 207:2 207:7 207:11 208:2 210:18 210:19 210:24 210:25 211:19 212:3 212:8 213:6 213:7 213:13 213:13 213:15 214:1 214:7 214:8 214:9 214:9 214:15 214:17 214:20 214:21 215:7 215:12 215:25 216:1 216:13 216:13 216:15 217:18 217:18 217:19 217:20 218:10 218:14 218:22 219:23 220:7 220:9 220:17 220:21 221:24 222:1 222:3 222:4 222:5 222:7 222:9 222:10 222:13 223:10 223:15 224:11 224:21 224:22 224:22 224:23 226:1 226:2 226:4 226:5 226:6 226:20 226:23 226:11 226:15 226:17 226:19 227:23 227:24 229:7 229:11 229:11 229:14 229:14 230:12 230:12 230:14 232:2 233:13 233:16 233:19 234:10 234:12 234:13 234:14 234:17 234:19 234:20 234:23 235:1 235:2 235:23 236:3 236:5 236:10 236:16 236:16 236:22 236:25 236:25 236:25 237:1 237:1 237:2 237:19 237:20 237:21 237:21 238:7 238:14 238:22 239:7 239:11 239:22 239:23 241:2 241:8 241:11 241:14 241:19 241:21 241:24 241:24 241:25 242:3 242:6

**you'd(1)** 212:1

**you'll(5)** 34:4 41:22 54:4 110:14 113:21

**you're(21)** 26:2 28:8 28:11 28:21 30:2 34:3 36:24 56:12 72:10 73:18 74:15 85:25 90:12 95:13 107:19 205:25 215:10 218:23 219:20 220:4 236:1

**you've(22)** 17:13 17:14 29:25 30:10 31:9 31:14 33:8 33:10 36:17 37:25 43:4 72:5 203:5 203:9 216:13 221:20 221:20 234:11 234:21 234:22 235:24 235:24

**you-know(1)** 75:15

**young(6)** 2:24 6:8 7:16 7:20 7:44 78:3

**your(301)** 12:7 12:10 12:14 13:1 13:9 13:14 13:19 13:25 14:4 14:7 16:8 17:6 17:13 18:1 18:10 18:18 19:1 19:8 19:12 20:2 20:13 21:18 22:1 22:17 23:10 23:14 23:18 24:1 24:3 25:25 26:4 26:10 27:11 28:1 28:2 28:3 28:20 28:24 28:25 30:1 30:1 30:6 30:9 30:16 31:10 32:10 32:14 32:14 35:18 35:20 35:22 36:2 37:1 37:24 40:13 41:6 41:11 42:22 43:13 45:7 45:9 45:11 45:18 45:23 45:23 46:3 46:6 46:14 46:15 46:19 46:22 46:24 47:4 47:11 47:15 48:4 48:7 48:16 49:8 49:13 49:13 49:17 49:18 49:20 49:21 49:23 49:24 49:25 50:15 50:20 50:24 51:10 52:11 54:4 56:10 56:13 57:6 59:12 60:16 61:5 61:13 62:7 62:13 62:25 63:8 63:10 63:22 63:25 63:25 64:9 64:18 64:22 65:2 65:2 65:22 66:5 66:6 66:11 66:20 67:2 67:11 67:14 67:22 68:8 68:17 69:11 72:2 72:12 74:14 74:15 74:16 76:6 76:17 76:25 78:1 78:5 78:15 79:23 79:24 80:16 81:19 81:24 84:4 84:12 84:12 86:17 87:3 87:3 87:6 90:9 90:12 90:13 90:22 92:2 94:3 95:16 97:22 98:20 100:7 100:9 100:25 105:10 105:12 106:7 106:8 106:12 107:7 107:23 109:1 109:7 109:25 110:3 110:12 110:14 111:17 112:10 112:18 115:25 121:17 128:22 129:21 130:3 130:13 130:17 131:2 131:5 131:6 131:14 132:1 132:8 132:12 133:2 133:5 137:14 138:21 139:3 141:1 142:4 145:9 146:11 153:8 154:16 154:16 154:22 154:24 154:25 154:25 155:3 155:6 155:7 155:13 157:25 158:16 159:4 159:9 159:14 160:4 160:11 161:1 161:20 161:24 162:6 162:6 162:7 162:13 163:12 164:25 165:14 168:12 171:17 171:19 171:25 172:5 172:6 172:6 172:23 172:24 173:6 174:21 174:22 180:3 180:5 182:21 183:17 185:22 186:7 186:11 186:12 186:22 187:19 188:20 189:12 189:15 189:16 190:18 192:8 192:20 193:8 193:10 194:3 194:15 194:18 195:10 195:15 197:12 198:6 198:9 198:13 199:9 199:22 201:2 201:16 201:18 202:3 203:13 204:10 204:18 205:17 205:20 205:23 206:2 206:22 207:2 207:9 208:4 208:23 210:18 210:21 210:23 211:1 211:2 211:8 211:9 211:15 212:5 212:6 212:9 212:12

**your(50)** 212:14 212:18 213:1 213:7 213:9 213:13 213:17 213:19 214:2 214:5 214:8 214:11 215:7 216:5 218:11 218:24 219:1 219:17 219:19 220:7 220:21 220:22 221:20 221:22 222:4 223:11 225:25 226:1 226:4 226:23 227:14 229:10 230:3 231:23 233:1 233:12 235:8 236:3 237:3 237:11 237:24 238:6 238:11 238:25 239:5 239:25 241:4 241:16 241:18 241:21

**yours(2)** 198:9

**yourself(4)** 44:13 139:7 194:20 200:1

**you'll(4)** 114:15 162:23 176:17 178:12

**you're(14)** 130:5 137:16 157:14 168:6 171:15 174:2 176:6 176:6 176:25 181:15 187:20 191:24 194:11 195:16

**you've(8)** 152:1 155:1 167:4 168:1 171:13 187:1 196:2 199:25

**zarnett(22)** 93:23 100:18 100:19 100:22 101:3 104:15 105:23 106:2 106:5 106:7 106:16 106:16 106:22 107:2 107:23 117:8 126:17 132:9 135:23 159:18 175:7 236:11

**zarnett's(2)** 127:17 129:21

**zero(1)** 208:24

**ziehl(2)** 5:41 11:16

**zimmerman(1)** 6:24

**"correct(1)** 173:13

**"effective(1)** 186:16

**"further(1)** 175:23

| Word | Page:Line |
|------|-----------|
| "**intercompany**(2) 181:11  181:22 | |
| "**joint**"(1) 134:25 | |
| "**manifest**(1) 125:25 | |
| "**undue**(1) 186:20 | |