## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | (Jointly Administered) |
| | **Re: Dkt. Nos. 15544, 15545, 15830, 15846, 15878, 15888, 15890, 15893, 15894** |

## THE MONITOR AND THE CANADIAN DEBTORS' MOTION FOR DETERMINATION THAT ALLOCATION ORDER IS INTERLOCUTORY AND FOR LEAVE TO APPEAL

Ernst & Young Inc., the court-appointed Monitor (the "**Monitor**") and foreign representative of Nortel Networks Corporation, Nortel Networks Limited, and certain of their direct and indirect Canadian subsidiaries (collectively, the "**Canadian Debtors**,") in proceedings (the "**Canadian Proceedings**") under *Canada's Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**"), on behalf of itself and the Canadian Debtors, respectfully submits this motion (the "**Motion**"), pursuant to Bankruptcy Rule 8004 and 28 U.S.C. § 158(a), for an order (i) determining that the May 12, 2015 Order [D.I. 15545] (the "**Allocation Order**") of the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") adopting a "modified *pro rata*" allocation methodology, for the reasons set forth in its Allocation Trial Opinion [D.I. 15544] (the "**Allocation Opinion**,"[2] and, together with the Allocation Order,

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226) (the "**U.S. Debtors**").

[2] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Allocation Opinion.

the "**Allocation Decision**")[3] is an interlocutory order, (ii) construing all parties' notices of appeal or cross-appeal as motions for leave to appeal, and (iii) granting such motions and this Motion for leave to appeal.

In support of the Motion, the Monitor respectfully states as follows:

## PRELIMINARY STATEMENT

The years of litigation over the allocation of proceeds from joint sales of the Nortel group's assets culminated in an unprecedented joint trial before the Bankruptcy Court and the Canadian Court.  After a two-month trial in the summer of 2014, on May 12, 2015, those courts issued their individual decisions, both adopting a "modified *pro rata*" approach to allocation on the basis of the allowed and settled claims against each debtor estate, with certain exceptions.  The amount that each debtor will ultimately receive is not knowable currently and cannot be finally known until all claims processes are completed and disputes over the inclusion of particular claims in the allocation calculation are resolved.  However, the allocation of sales proceeds is undoubtedly the single largest source of funds for distribution to creditors for most of the participating debtors.

Given the magnitude of the sales proceeds, and in keeping with the history of the Nortel proceedings, appeals from the decisions were inevitable, and explicitly anticipated in the Bankruptcy Court in its Allocation Opinion.  The U.S. Debtors and several groups of their creditors have already filed notices of appeal of the Allocation Decision, as subsequently clarified, and more notices of appeal or cross-appeal will be filed today.  While any notices purporting to appeal from a "final order" are improper, because the vast amount of work to be done before the total amounts to be distributed to each debtor's estate can be known renders the

---

[3] Citations to docket items are to the docket of *In re Nortel Networks, Inc.*, Case No. 09-10138 (KG) (Bankr. D. Del.), unless otherwise indicated.

Allocation Order interlocutory, all such notices of appeal should be construed as motions for leave to appeal an interlocutory order and should be granted for the reasons set forth in this Motion. Permitting all parties to the Allocation Litigation to appeal now, in parallel with the claims processes being carried out by each debtor, will speed the ultimate resolution of the Nortel proceedings and final distributions to creditors.

## BACKGROUND

The Nortel group commenced insolvency proceedings in multiple jurisdictions in January 2009, including the Canadian Proceedings before the Canadian Court with respect to the Canadian Debtors, the chapter 11 proceedings before the Bankruptcy Court with respect to the U.S. Debtors and administration proceedings in England with respect to the EMEA Debtors.[4] Shortly after the commencement of the various insolvency proceedings, the Nortel group began liquidating assets. In order to consummate the sales expeditiously and maximize value for their respective estates, various Nortel entities entered into the Interim Funding and Settlement Agreement [D.I. 874] (the "**IFSA**") on June 9, 2009, pursuant to which the parties agreed, *inter alia*, to go forward with asset sales while reserving all rights to assert theories with respect to how the sale proceeds should be allocated among the U.S., Canadian and EMEA Debtors for a later date (the "**Allocation Dispute**"). Between mid-2009 and March 2011, substantially all of the Nortel worldwide business lines were sold for a net total of $2.8 billion (the "**Business Line Sales**").[5] Following the Business Line sales, the residual patent portfolio was sold at auction for $4.5 billion (the "**Residual Patent Portfolio Sale**").[6] The Business Line and Residual Patent Portfolio Sales generated approximately $7.3 billion in proceeds (the "**Sales Proceeds**"), which have been escrowed pursuant to the IFSA pending a determination by the Courts on the

---

[4] Allocation Opinion at 3-5.
[5] *Id*. at 24.
[6] *Id*. at 37.

Allocation Dispute.[7]

In the years following the asset sales, the U.S., Canadian and EMEA Debtors, and various creditor constituencies of each estate engaged in multiple settlement discussions and formal mediations to attempt to resolve the Allocation Dispute on a consensual basis, without success.[8]  On April 3, 2013 and May 17, 2013, respectively, the Canadian Court and the Bankruptcy Court entered orders approving an allocation protocol (the "**Allocation Protocol**") [D.I. No. 10565] that established procedures for the resolution of the Allocation Dispute in a joint trial to be held by both courts.  In May and June 2014, the Bankruptcy Court and the Canadian Court simultaneously presided over a 21-day joint trial.[9]  The Bankruptcy Court and the Canadian Court heard from 21 fact witnesses and 15 expert witnesses and admitted over 2,000 exhibits and designations from depositions into evidence, following which the parties prepared extensive written briefs exceeding 1,000 pages and made oral closing submissions over three days in September 2014.[10]

On May 12, 2015, after almost seven months of deliberation, the Bankruptcy Court issued the Allocation Decision, and the Canadian Court issued its Reasons for Judgment [D.I. 15555] (the "**Canadian Allocation Opinion**," together with the Allocation Decision, the "**Allocation Decisions**"), each rejecting, on different grounds, the allocation methodologies advanced by the Monitor and Canadian Debtors, the U.S. Debtors and the EMEA Debtors and adopting, with modifications, the *pro rata* allocation approach advocated by the UK Pension Claimants, the Canadian Creditors Committee and Wilmington Trust.  As clarified following half a dozen motions for clarification and reconsideration filed by the U.S. Debtors and their creditors

---

[7] *Id*. at 47.
[8] *Id*. at 6.
[9] *Id*. at 1-2.
[10] *Id*.

(and parallel motions filed in the Canadian Court),[11] the "modified *pro rata*" approach requires the Sales Proceeds to be allocated among the various debtor estates *pro rata* based on the ratio of allowed or settled claims against a given debtor estate to the total of all allowed or settled claims against all debtors entitled to participate in the allocation.[12]  The approach is not pure *pro rata* allocation because, *inter alia*, intercompany claims and cash on hand are respected and certain allowed or settled claims made against multiple debtors, including claims on guaranteed bonds, are recognized only once for allocation purposes (against the bond issuer, in the case of the guaranteed bonds).[13]  Thus, before the final percentages of the Sales Proceeds to be distributed to each debtor can be calculated, each of the debtor estates must complete their claims processes.[14] The EMEA Debtors' claims process only formally commenced following the Allocation Decision, and the claims processes of the Canadian Debtors and the U.S. Debtors are ongoing.[15] The Bankruptcy Court therefore denied the motions for reconsideration and clarification, as premature, with respect to the request that it set procedures for determining the amount of the UKPC claim against the EMEA Debtors to be included in the allocation claims pool.[16]

On July 9, 2015, the Official Committee of Unsecured Creditors appointed in the U.S. Debtors' chapter 11 cases (the "**UCC**") filed a notice of appeal from the Allocation Decision and the Reconsideration Order [D.I. 15846], asserting that the Allocation Order is a final and immediately appealable order.  On July 17, 2015, the Nortel Trade Creditors Consortium (newly formed following the issuance of the Allocation Decision) filed a cross-appeal [D.I. 15878], and on July 20, 2015, the Bank of New York Mellon, as Indenture Trustee,

---

[11] Memorandum Order on Motions for Reconsideration [D.I. 15830] (the "**Reconsideration Order**"); Order on Motion of Law Debenture Trust Company of New York, as Indenture Trustee for the NNCC Notes, Pursuant to Fed. R. Civ. P. 52(b), 59(e), and 60 for Partial Reconsideration of the Court's Order and Allocation Trial Opinion [D.I. 15831]; Canadian Court's Ruling on Reconsideration/Clarification Motion [D.I. 15842].

[12] Allocation Opinion at 112.

[13] *Id*. at 107, 112.

[14] Allocation Order at 1-2; Allocation Opinion at 112 ("The Court will resolve any disputed claims to prevent claim inflation.").

[15] The Joint Administrators' Objection and Response to the Motions for Reconsideration and Clarification [D.I. 15741] at 6; Notice of Filing of Letter Regarding EMEA Insolvency Proceedings and Claims Procedures [D.I. 15795].

[16] Memorandum Order on Motions for Reconsideration [D.I. 15830] at 5 ("The request for clarification comes too soon for the Court to grant.").

the U.S. Debtors, Stephen Taylor, Conflicts Administrator for Nortel Networks S.A. (In Administration), and the Bondholders filed notices of appeal [Dkt. Nos. 15888, 15890, 15893, 15894].   Further appeals and/or cross-appeals are expected to be filed on July 23, 2015. Simultaneously with the filing of this Motion, the Monitor and Canadian Debtors are filing a notice of contingent cross-appeal (the "**Notice of Contingent Cross-Appeal**") to preserve rights to appeal in the event that (i) this Motion for leave to appeal is granted or there is a determination that the Allocation Order is a final order, and (ii) the Allocation Decision is modified on appeal. The Monitor and the Canadian Debtors also are simultaneously filing a motion requesting that the Bankruptcy Court certify the Allocation Decision and the Reconsideration Order for direct appeal to the United States Court of Appeals for the Third Circuit on the basis that they are interlocutory orders whose immediate appeal to that court will materially advance the progress of these bankruptcy cases.

## JURISDICTION AND VENUE

The United States District Court for the District of Delaware has jurisdiction to hear this Motion pursuant to 28 U.S.C. § 158(a).   The relief requested in the Motion is properly before this District Court pursuant to Rule 8004 of the Bankruptcy Rules.   Venue in this district is appropriate under 28 U.S.C. §§ 1408-1409.

## QUESTIONS PRESENTED

Whether the Bankruptcy Court correctly concluded that the "modified *pro rata*" allocation methodology is "a fair and equitable mechanism to allocate the billions of dollars of Sales Proceeds to numerous international entities for the benefit of their creditors who have now waited years for their recoveries."

Whether, if the Bankruptcy Court's adoption of the "modified *pro rata*" allocation

methodology is not affirmed, the Bankruptcy Court erred in its construction of an agreement governed by Ontario law and in rejecting legal ownership as the basis for allocation.

## RELIEF REQUESTED

By this Motion, the Monitor requests that the District Court (i) hold that the Allocation Order is a non-final order, (ii) construe all parties' notices of appeal or cross-appeal as motions for leave to appeal and (iii) grant such motions and this Motion for leave to appeal.

## ARGUMENT

## I.      THE ALLOCATION ORDER IS NOT A FINAL ORDER

Where a bankruptcy order concerns a specific adversary proceeding, the Third Circuit determines whether it is final using "'the same concepts of appealability as those used in general civil litigation.'" *Natale v. French & Pickering Creeks Conservancy Trust, Inc. (In re Natale)*, 295 F.3d 375, 378-79 (3d Cir. 2002) (quoting *Clark v. First State Bank (In re White Beauty View, Inc.)*, 841 F.2d 524, 526 (3d Cir. 1988)).  In the context of non-bankruptcy civil litigation, the need for further proceedings to determine the amount to be awarded to each party is a hallmark of an interlocutory order—an order in an adversary proceeding that leaves damages to be calculated later is not final.  *See Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996) (An order in an individual adversary proceeding is not final unless it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.") (internal quotation and citation omitted); *United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988) (holding that "[o]rders that do not fully adjudicate a specific adversary proceeding or that require further factual development are governed by the ordinary finality precepts of routine civil litigation" and citing cases in which orders that determined liability but did not calculate damages or sanctions were held to be non-final); *see also In re Fugazy Exp., Inc.*, 982 F.2d 769,

776 (2d Cir. 1992) ("In sum, for a bankruptcy court order to be final within the meaning of § 158(d), the order need not resolve all of the issues raised by the bankruptcy; but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief.") (citations omitted).

The Allocation Order is not a final order because it does not set forth the amount of Sale Proceeds each debtor estate will receive and therefore does not resolve all of the issues presented in the Allocation Litigation.  Further factual development—and in particular the completion of each debtor estate's claims process—is required before the final allocation percentages can be calculated and the Sales Proceeds fully distributed.  Allocation Opinion at 112; Allocation Order at 1-2.  The U.S. Debtors, Stephen Taylor as the conflicts administrator appointed to represent Nortel Networks S.A. (an EMEA Debtor), the UCC and the Nortel Trade Creditors Consortium have recognized the necessity for further proceedings, and the importance of carrying out those proceedings during the pendency of appeal, citing them to the Ontario Court of Appeal in support of their motions for leave to appeal the Canadian Allocation Decision and arguing that appeal will not delay the ultimate conclusion of the Canadian proceedings.  U.S. Debtors' Notice of Motion for Leave to Appeal (attached as Exhibit B) at 7; Taylor Notice of Motion for Leave to Appeal (attached as Exhibit C) at 18; UCC Notice of Motion for Leave to Appeal (attached as Exhibit D) at 14 ("The process to determine the level of claims for each Nortel Entity in accordance with the Order is expected to take a significant amount of time and can progress in tandem with this appeal, should leave to appeal be granted."); Nortel Trade Creditors Consortium (attached as Exhibit E) at 15-16 (same).

Thus, both the Allocation Decision itself and the admissions of these parties

establish that the Allocation Order is interlocutory.[17]

II.     **THE COURT SHOULD CONSTRUE THE NOTICES OF APPEAL AS MOTIONS FOR LEAVE AND GRANT LEAVE TO APPEAL THE ALLOCATION ORDER**

A.     **Notices of Appeal Should Be Construed as Motions for Leave to Appeal**

This Court may construe notices of appeal from an interlocutory order as motions for leave and grant or deny such motions.  Fed. R. Bankr. P. 8004(b).  Because leave to appeal should be granted for the reasons set forth in this Motion, the considerations of expediency and avoidance of piecemeal consideration of the Allocation Decision support treating all parties' notices of appeal as motions for leave and granting them.

B.     **Leave to Appeal Should Be Granted**

In determining whether to grant leave to appeal an interlocutory order in accordance with 28 U.S.C. § 158(a)(3), courts in this District "have typically borrowed the standard found in 28 U.S.C. § 1292(b), which governs whether an appeal of a district court's interlocutory order to a court of appeals is warranted."  *In re W.R. Grace & Co.*, No. 08-246, 2008 WL 3522453, at *2 (D. Del. Aug. 12, 2008) (citations omitted).  Under § 1292(b), leave may be granted when (i) the proposed appeal concerns a controlling question of law; (ii) there is a substantial ground for difference of opinion; and (iii) an immediate appeal may materially advance the ultimate termination of the litigation, and leave to appeal is warranted when, in addition to these factors, "'exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment.'"  *W.R. Grace*, 2008 WL 3522453, at *2 (quoting *In re Delaware & Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del.), *aff'd*, 884 F.2d 1383 (3d Cir. 1989)).  Each of these factors is met here.

---

[17] *See also* June 25, 2015 Hr'g Tr. 80:5 ("THE COURT: Isn't this an Interlocutory Opinion?").

The core issue on appeal from the Allocation Decision will be whether the Bankruptcy Court erred in adopting the "modified *pro rata*" allocation methodology.  *See* U.S. Debtors' Notice of Motion for Leave to Appeal (Ex. B) at 8-11; Taylor Notice of Motion for Leave to Appeal (Ex. C) at 2-3, 10-12; UCC Notice of Motion for Leave to Appeal (Ex. D) at 2-3; Nortel Trade Creditors Consortium (Ex. E) at 2-3.  The Bankruptcy Court itself acknowledged that the issue of "who owns Nortel's assets and is entitled to receive the Sales Proceeds . . . is unsettled because there is no pre-determined answer," and conceded that "[p]ro rata is, to say the least, an extraordinary result." Allocation Op. at 105, 111.

There is no doubt that, if leave to appeal is not granted now, appeals attacking the Bankruptcy Court's reasoning are inevitable when the Bankruptcy Court issues a final order fully distributing the Sales Proceeds.  In light of the significance of the Allocation Decision to the debtor estates and their creditors, and the ability to continue with claims processes and determination of the composition of each debtor estate's claims pool for purposes of allocation during the pendency of the appeal, granting leave to appeal now will hasten the conclusion of the debtors' insolvency cases.  Because each of the required factors has been met, and because all issues presented in an interlocutory order will be within the jurisdiction of this Court if leave to appeal is granted,[18] the grant of leave should extend to all parties who have filed a notice of appeal or moved to appeal the Allocation Decision.

## NOTICE

Notice of this Motion has been given via electronic mail, facsimile, or overnight mail to (i) the U.S. Trustee, (ii) the parties to the appeal,[19] and (iii) the general service list

---

[18] Section 158(a)(3) grants this Court appellate jurisdiction over "interlocutory orders."  In the context of interlocutory appeals under Section 1292(b), which also speaks of appealing from "orders," the United States Supreme Court has held that the appellate court's jurisdiction following grant of leave to appeal extends to all issues in the order, not just issues as to which the 1292(b) test is met. *Yamaha Motor Corp, U.S.A.. v. Calhoun*, 516 U.S. 199, 204-05 (1996).

[19] The parties to the appeal include: the Committee, the U.S. Debtors, the Bondholders, Law Debenture Trust Company of New York as Indenture Trustee for the NNCC Notes, the Bank of New York Mellon, as Indenture Trustee, Stephen Taylor as Conflicts Administrator for Nortel

established in the U.S. Debtors' bankruptcy cases pursuant to Bankruptcy Rule 2002.  In light of

the nature of the relief requested, the Monitor submits that no other or further notice is necessary.

## **CONCLUSION**

For the foregoing reasons, the Monitor respectfully requests that the Court hold

that the Allocation Order is an interlocutory order, construe all notices of appeal therefrom as

motions for leave to appeal, grant leave to appeal to all parties to the Allocation Litigation and

grant such other relief as the Court considers necessary and proper.

*[Remainder of Page Intentionally Left Blank]*

---

Networks S.A., the Canadian Creditors Committee, the Monitor and the Canadian Debtors, the Joint Administrators, Wilmington Trust, National Association, as Indenture Trustee for the Nortel Networks Limited 6.875% Notes Due 2023, the UK Pension Claimants, the Pension Benefit Guaranty Corporation, and the Nortel Trade Claims Consortium.

Dated: July 23, 2015
       Wilmington, Delaware

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ Kathleen A. Murphy
Mary F. Caloway (No. 3059)
Kathleen A Murphy (No. 5215)
919 North Market Street, Suite 1500
Wilmington, Delaware 19801
(302) 552-4200 (telephone)
(302) 552-4295 (facsimile)
mary.caloway@bipc.com
kathleen.murphy@bipc.com

-and-

**ALLEN & OVERY LLP**

Jacob S. Pultman
Laura R. Hall
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300 (telephone)
(212) 610-6399 (facsimile)
jacob.pultman@allenovery.com
laura.hall@allenovery.com

*Attorneys for Ernst & Young Inc., as Monitor and*
*Foreign Representative of the Canadian Debtors*