## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| | (Jointly Administered) |
| Debtors. | **Re: Dkt. Nos. 15544, 15545, 15830, 15846, 15878, 15888, 15890, 15893, 15894** |

## MOTION OF THE MONITOR AND CANADIAN DEBTORS FOR AN ORDER PURSUANT TO 28 U.S.C. § 158(d)(2)  CERTIFYING THE ALLOCATION DECISION FOR DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

Ernst & Young Inc., the court-appointed Monitor (the "**Monitor**") and foreign representative of Nortel Networks Corporation, Nortel Networks Limited, and certain of their direct and indirect Canadian subsidiaries (collectively, the "**Canadian Debtors**,") in proceedings under *Canada's Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, (as amended, the "**CCAA Proceedings**"), pending before the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**", and together with this Court, the "**Courts**"), on behalf of itself and the Canadian Debtors, hereby respectfully requests that the Court enter an order pursuant to 28 U.S.C. § 158(d)(2) certifying the *Allocation Trial Opinion* [Dkt. No. 15544] (the "**Allocation Opinion**")[2] and accompanying *Order* [Dkt. No. 15545] (the "**Allocation Order**") as modified by the *Memorandum Order on Motions for Reconsideration* [Dkt. No. 15830] (the "**Reconsideration Order**," and together with the Allocation Opinion and the Allocation Order,

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226) (the "**U.S. Debtors**").

[2] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Allocation Opinion.

the "**Allocation Decision**") for direct appeal to the United States Court of Appeals for the Third

Circuit (the "**Motion**").[3]

In support of the Motion, the Monitor respectfully states as follows:

## PRELIMINARY STATEMENT

1.     These bankruptcy cases have been on-going since January 2009 and involve complex and fact-intensive issues that have given rise to several previous appeals in both Canada and the United States.  The Allocation Decision was issued after a landmark cross-border trial involving multiple parties and held simultaneously before the Courts over 21 days in May and June of 2014.  Just a short time after their release, the Allocation Opinion and Allocation Order were met with numerous motions for reconsideration and/or clarification requiring yet another full day of argument and this Court to enter the Reconsideration Order, all of which have already been appealed and will be cross-appealed.  The crux of all this litigation is the allocation of approximately $7.3 billion in sales proceeds among the various Nortel entities.  Without resolution from the Third Circuit, it is likely to continue *ad infinitum*.  As such, the Allocation Decision epitomizes the type of decision that should be certified for immediate appeal to the Third Circuit.

## BACKGROUND

2.     The Nortel group commenced insolvency proceedings in multiple jurisdictions in January 2009, including the CCAA Proceedings before the Canadian Court with respect to the Canadian Debtors, the chapter 11 cases before this Court with respect to the U.S. Debtors and administration proceedings in England with respect to the EMEA Debtors.[4]  Shortly after the commencement of the various insolvency proceedings, the Nortel group began

---

[3] The Allocation Opinion, Allocation Order, and Reconsideration Order are annexed hereto as <u>Exhibit B</u>, <u>Exhibit C</u>, and <u>Exhibit D</u>, respectively.
[4] Allocation Op. at 3-5.

liquidating assets.  In order to consummate the asset sales expeditiously and to maximize value for their respective estates, certain Nortel entities entered into the Interim Funding and Settlement Agreement [Dkt. No. 874] (the "**IFSA**") on June 9, 2009, pursuant to which the parties agreed, *inter alia*, to go forward with the asset sales while reserving all rights to assert theories with respect to how the sale proceeds should be allocated among the U.S., Canadian and EMEA Debtors for a later date (the "**Allocation Dispute**").  Between mid-2009 and March 2011, substantially all of the Nortel worldwide businesses were sold for a net total of $2.8 billion (the "**Business Line Sales**").[5]  Following the Business Line Sales, the residual patent portfolio was sold at auction for $4.5 billion (the "**Residual Patent Portfolio Sale**").[6]  The approximately $7.3 billion in Sales Proceeds have been escrowed pursuant to the IFSA pending a determination by the Courts on the Allocation Dispute.[7]

3.  In the years following the asset sales, the U.S., Canadian and EMEA Debtors, and various creditor constituencies of each estate, engaged in settlement discussions and multiple formal mediations to attempt to resolve the Allocation Dispute, without success.[8]  On April 3, 2013 and May 17, 2013, respectively, the Canadian Court and this Court entered orders approving an allocation protocol [Dkt. No. 10565] (the "**Allocation Protocol**") that established procedures for the resolution of the Allocation Dispute in a joint trial before both Courts.  In May and June 2014, the Courts presided over a 21-day joint trial (the "**Allocation Trial**").[9]  The Courts heard from 21 fact witnesses and 15 expert witnesses and admitted over 2,000 exhibits and designations from depositions into evidence, following which the parties prepared extensive

---

[5] *Id*. at 24.
[6] *Id*. at 37.
[7] *Id*. at 47.
[8] *Id*. at 6.
[9] *Id*. at 1-2.

written briefs exceeding 1,000 pages and made oral closing submissions over three days in September 2014.[10]

4.       On May 12, 2015, after almost seven months of deliberation, this Court issued the Allocation Decision, and the Canadian Court issued its *Reasons for Judgment* [Dkt. No. 15555] (the "**Canadian Allocation Opinion**," and together with the Allocation Decision, the "**Allocation Decisions**"), each adopting a "modified pro rata" approach to allocation of the $7.3 billion of escrowed Sale Proceeds, and reserving jurisdiction to deal with matters of claims allowance and distributions independently and at an appropriate time in the future.  Pursuant to the "modified pro rata" approach outlined in the Allocation Decisions, the Sales Proceeds are to be allocated among the various Nortel debtor estates *pro rata* based on total allowed and settled claims, with certain deliberate modifications, including with respect to certain intercompany claims, guarantees and cash on hand.  Thus, the final allocations each debtor estate will receive currently cannot be known and the Allocation Decision is therefore interlocutory.

5.       Following the Allocation Decision, the U.S. Debtors, the Committee, the Bondholders and the Law Debenture Trust Company of New York as Indenture Trustee for the NNCC Notes all filed motions for reconsideration and/or clarification of the Allocation Decisions.[11]  The Monitor and the Canadian Debtors, the Joint Administrators, the U.K. Pension Claimants, Stephen Taylor as Conflicts Administrator for Nortel Networks S.A. and the Canadian Creditors' Committee filed objections.[12]

6.       After a day-long argument on the competing motions on June 25, 2015, the Court entered the Reconsideration Order on July 6, 2015, providing certain clarifications in

---

[10] *Id.*
[11] Reconsideration Order at 1.
[12] *Id.*

respect of the Allocation Opinion and Allocation Order,[13] but denying all requests for reconsideration, and preserving the essential elements of the "modified pro rata" allocation methodology.[14]  Three days later, on July 9, 2015, the Committee filed the first notice of appeal from the Allocation Decision [Dkt. No. 15846], on July 17, 2015, the Nortel Trade Claims Consortium filed a notice of cross-appeal [Dkt. No. 15878], and on July 20, 2015, each of the Bank of New York Mellon, as Indenture Trustee, the U.S. Debtors, Stephen Taylor, Conflicts Administrator for Nortel Networks S.A. (In Administration), and the Bondholders filed four additional notices of appeal [Dkt. Nos. 15888, 15890, 15893, 15894].[15]  Contemporaneously herewith, the Monitor has filed (i) a notice of contingent cross-appeal of the Allocation Decision (the "**Notice of Contingent Cross-Appeal**"), which is contingent on an appeal going forward, and for the sole purpose of preserving arguments that may be relevant in the event the applicable appellate court modifies the Allocation Decision, and (ii) a motion for leave to appeal from the Allocation Decision (the "**Motion for Leave**") on the basis that it is interlocutory but appeal should be permitted because it will advance the final resolution of the Allocation Dispute and conclusion of these bankruptcy cases.  It is anticipated that additional notices of cross-appeal will also be filed by various parties.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[13] The Court also entered the *Order on Motion of Law Debenture Trust Company of New York, as Indenture Trustee for the NNCC Notes, Pursuant to Fed. R. Civ. P. 52(b), 59(e), and 60 for Partial Reconsideration of the Court's Order and Allocation Trial Opinion* [Dkt. No. 15831] on July 6, 2015 fixing certain typographical errors.

[14] *Id.* at 3.  The Canadian Court similarly entered its *Ruling on Reconsideration/Clarification Motion* on July 6, 2015 upholding the "modified pro-rata" allocation methodology [Dkt. No. 15842].

[15] The U.S. Debtors, Stephen Taylor as the conflicts administrator for Nortel Networks S.A., the Committee, the Nortel Trade Creditors Consortium and the Ad Hoc Group of Bondholders have also filed notices of motions for leave to appeal the Canadian Allocation Opinion with the Ontario Court of Appeals which are annexed hereto as Exhibit E through Exhibit I.

## QUESTIONS PRESENTED

8.      Whether the Court correctly concluded that the "modified pro rata" allocation methodology is "a fair and equitable mechanism to allocate the billions of dollars of Sales Proceeds to numerous international entities for the benefit of their creditors who have now waited years for their recoveries."

9.      Whether, if the Court's adoption of the "modified pro rata" allocation methodology is not affirmed, the Court erred in its construction of an agreement governed by Ontario law and in rejecting legal ownership as the basis for allocation.

## RELIEF REQUESTED

10.      Pursuant to 28 U.S.C. § 158(d)(2) and Rule 8006(f) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Monitor hereby requests that this Court certify the Allocation Decision for direct appeal to the Third Circuit.  A proposed form of order granting the Motion is attached hereto as Exhibit A.

## BASIS FOR RELIEF

11.      Pursuant to 28 U.S.C. § 158(d)(2), a bankruptcy court may certify an interlocutory order for direct appeal to a federal court of appeals.[16]  In accordance with sections 158(d)(2)(A) and (B), certification of an order for direct appeal is mandatory if the Court either (i) "receives a request made by a majority of the appellants and a majority of appellees (if any) to make the certification," or (ii) acting "on its own motion or on the request of a party," determines that:

---

[16] In accordance with Bankruptcy Rules 8004(a)-(c), the Monitor is simultaneously filing the *Motion for Leave* with the *Notice of Contingent Cross-Appeal* which shall be transmitted to, and decided by, the United States District Court for the District of Delaware (the "**District Court**").  However, Bankruptcy Rule 8004(e) provides that authorization of a direct appeal by the Court of Appeals satisfies the jurisdictional predicate for leave to appeal an interlocutory order.  *See* 10-8004 COLLIER ON BANKRUPTCY P 8004.11.  A certification motion under 28 U.S.C. § 158(d)(2) must be filed in the court where the matter is pending.  A matter remains pending in the bankruptcy court for 30 days after the effective date of the first notice of appeal from the order from which direct review is sought and is thereafter pending in the district court.  Fed. R. Bankr. P. 8006(b).

1. the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

2. the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

3. an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

11 U.S.C. §§ 158(d)(2)(A)(i)-(iii).  If any of these tests are satisfied, the Court "*shall* make the certification."  28 U.S.C. § 158(d)(2)(B) (emphasis added); *see also Reorganized Debtors ex rel. Goody's Family Clothing, Inc. v. Blue Dog Props. Trust (In re Goody's Family Clothing, Inc.)*, No. 09-409, 2009 WL 2355705, at *2 (D. Del. July 31, 2009).  Congress enacted this procedure to address problems related to the "time and cost factors attendant to the [prior] appellate system . . . ."  House Rep. No. 109-31, Pt. 1, 109th Cong. 1st Sess. 148-49 (2005).

12.    Counsel for the Monitor has consulted with counsel for all of the parties that participated in the Allocation Trial, as well as those parties who first appeared separately in connection with the motions for reconsideration in an effort to obtain consent from the majority of appellants and appellees for certification of the Allocation Decision for direct appeal to the Third Circuit.  Counsel for the Monitor understands that each of the Canadian Creditors Committee, the EMEA Debtors, and Wilmington Trust, N.A. supports a direct appeal to the Third Circuit.  Counsel for the Monitor also understands that the Committee, the Bondholders, and Law Debenture Trust Company of New York oppose the direct appeal, and that the U.S. Debtors and Bank of New York Mellon have been consulted and do not support the certification but have not yet decided whether they oppose this request.  Counsel for the Monitor has contacted counsel for the UK Pension Claimants, the Nortel Trade Claims Consortium and for Stephen Taylor as Conflicts Administrator for Nortel Networks S.A. but has not received a view from these parties on the request.

13.     The Monitor respectfully submits that the Allocation Decision satisfies two independent statutory bases for certification and that granting certification is otherwise consistent with the legislative intent of 28 U.S.C. § 158(d)(2) to expeditiously and economically resolve what has been a long and costly bankruptcy case.

## A.     This Court Found No Controlling Precedent for the Allocation Decision

14.     The "controlling precedent" prong of 28 U.S.C. § 158(d)(2)(A)(i) is satisfied when there is "no governing law on the issue before the court." *See, e.g.*, *Mull Drilling Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 407 B.R. 82, 111 (Bankr. D. Del. 2009); *In re Nortel Networks Corp.*, 2010 WL 1172642, *1 (Bankr. D. Del. Mar. 18, 2010).   In the instant matter, this Court dismissed the competing views of the parties that their allocation theories govern and concluded there is no controlling precedent to determine the allocation of the $7.3 billion of sales proceeds among the Nortel entities, stating explicitly it was "incumbent upon the Court to determine a presumptive baseline allocation approach which leads to an equitable result *in the absence of some guiding law or agreement*."   Allocation Opinion at 60 (emphasis added). Indeed, the Court added, "*there is nothing in the law or facts*" providing a basis to ascertain allocation to any specific entity.   *Id.* (emphasis added).   Accordingly, the Court's Allocation Decision represents precisely the kind of decision that should be certified to the Third Circuit pursuant to 28 U.S.C. § 158(d)(2)(A)(i).

## B.     Certification Will Materially Advance the Case

15.     A direct appeal materially advances the progress of a bankruptcy case "where a bankruptcy court has made a ruling which, if correct, will essentially determine the result of future litigation." *Weber v. U.S. Trustee*, 484 F.3d 154, 158 (2d Cir. 2007).   In such a case, "the parties adversely affected by the ruling might very well fold up their tents if convinced that the ruling has the approval of the court of appeals, but will not give up until that becomes

clear." *Id*. at 158.  A decision from the Third Circuit on the Allocation Dispute will resolve what is at bottom, the key remaining dispute in these bankruptcy cases, and facilitate the return of funds to creditors after over six years of protracted litigation.  The Third Circuit has already recognized the importance of a prompt determination of the Allocation Dispute because any delay in resolution postpones creditor recoveries and further depletes assets available for creditor distribution.  *See In re Nortel Networks, Inc.*, 669 F.3d 128, 143-44 (3d Cir. 2011), *cert. denied*, 133 S. Ct. 34 (2012); *see also* Allocation Op. at 113.  Consistent with the concerns expressed by this Court and the Third Circuit, the Monitor's overriding objective with this Motion is to expedite the appellate process to avoid further depletion of the remaining estate assets and make final distributions to creditors as soon as possible.

16.     In addition, given the magnitude of the issues resolved by the Allocation Decision and the near certainty that any decision of the District Court will be further appealed, certification will materially advance these cases.  A direct appeal will streamline what is in all likelihood an inevitable path to the Third Circuit.  *See In re MPF Holding U.S. LLC*, 444 B.R. 719, 727 (Bankr. S.D. Tex. 2011) (certifying an appeal under 158(d)(2)(A)(iii) because the parties would inevitably appeal to the court of appeals); *Official Comm. of Unsecured Creditors of Motors Liq. Comp. v. JPMorgan Chase Bank, N.A. (In re Motor Liq. Co.)*, 486 B.R. 596, 647 (Bankr. S.D.N.Y. 2013) ("A second level of appeal (which would otherwise be likely, given the stakes of the controversy) would have a foreseeable adverse effect on the timing and finality of creditor distributions.").  Accordingly, the Monitor respectfully submits the Motion must be granted pursuant to 28 U.S.C. § 158(d)(2)(A)(iii).

## NO PRIOR REQUEST

17.     No prior request for relief sought herein has been made to this or any other court.

## **NOTICE**

18.     Notice of this Motion has been given via electronic mail, facsimile, or overnight mail to (i) the U.S. Trustee, (ii) the parties to the appeal,[17] and (iii) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Monitor submits that no other or further notice is necessary.

## **CONCLUSION**

19.     For the foregoing reasons, the Monitor respectfully requests that the Court certify the Allocation Decision for direct appeal to the Third Circuit and grant such other and further relief as it deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

---

[17] The parties to the appeal include: the Committee, the U.S. Debtors, the Bondholders, Law Debenture Trust Company of New York as Indenture Trustee for the NNCC Notes, the Bank of New York Mellon, as Indenture Trustee, Stephen Taylor as Conflicts Administrator for Nortel Networks S.A., the Canadian Creditors Committee, the Monitor and the Canadian Debtors, the Joint Administrators, Wilmington Trust, National Association, as Indenture Trustee for the Nortel Networks Limited 6.875% Notes Due 2023, the UK Pension Claimants, the Pension Benefit Guaranty Corporaton, and the Nortel Trade Claims Consortium.

Dated: July 23, 2015
Wilmington, Delaware

**BUCHANAN INGERSOLL & ROONEY PC**

/s/   Kathleen A. Murphy
Mary F. Caloway (No. 3059)
Kathleen A Murphy (No. 5215)
919 North Market Street, Suite 1500
Wilmington, Delaware 19801
(302) 552-4200 (telephone)
(302) 552-4295 (facsimile)
mary.caloway@bipc.com
kathleen.murphy@bipc.com

-and-

**ALLEN & OVERY LLP**

Jacob S. Pultman
Laura R. Hall
1221 Avenue of the Americas
New York, New York  10020
(212) 610-6300 (telephone)
(212) 610-6399 (facsimile)
jacob.pultman@allenovery.com
laura.hall@allenovery.com

*Attorneys for Ernst & Young Inc., as Monitor
and Foreign Representative of the Canadian
Debtors*