IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
                                                               :
*In re*                                                        :   Chapter 11
                                                               :
Nortel Networks Inc., *et al.*,[1]                             :   Case No. 09-10138 (KG)
                                                               :
                                    Debtors.                   :   Jointly Administered
                                                               :
                                                               :   Re: D.I. 15924, 15940
                                                               :
                                                               :   Hearing Date: July 29,
                                                               :   2015 at 10:00 a.m. (ET)
                                                               :
---------------------------------------------------------------X

### OPPOSITION OF U.S. DEBTORS TO THE
### MOTION OF THE MONITOR AND CANADIAN DEBTORS FOR AN
### ORDER PURSUANT TO 28 U.S.C. § 158(d)(2) CERTIFYING THE
### ALLOCATION DECISION FOR DIRECT APPEAL TO THE
### UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "U.S. Debtors"), by and through their undersigned counsel, hereby respond in opposition (the "Opposition") to the motion of the Monitor and Canadian Debtors (together, the "Movants") for an order certifying this Court's May 12, 2015 Allocation Trial Opinion [D.I. 15544] (the "Allocation Opinion" or "U.S. Allocation Opinion") and accompanying Order [D.I. 15545] (the "U.S. Allocation Order")[2] and the July 6, 2015 Memorandum Order on Motions for Reconsideration [D.I. 15830] ("Reconsideration Order," and

---

[1] In addition to Nortel Networks Inc. ("NNI"), the U.S. Debtors in the Chapter 11 cases are: Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc.  Additional information regarding the U.S. Debtors can be found in their respective Chapter 11 petitions, which are available at http://dm.epiq11.com/nortel.

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed in the U.S. Allocation Opinion.

together with the Allocation Opinion and Allocation Order, the "Decisions") for immediate appeal to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C. § 158(d)(2) (the "Motion"). For its Opposition to the Motion, the U.S. Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1. Moving on shortened notice[3] without any basis or attempt to coordinate a briefing schedule with the other parties, Movants seek an order certifying the Decisions for direct appeal to the Third Circuit.[4] This manufactured urgency is based purely upon rhetoric, as is the Movants' suggestion that "confusion reigns over the appellate process," which had – up until the moment they filed their Motion – been proceeding smoothly and in accordance with the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and the negotiated agreement of the parties, as reflected in the stipulation on record designations ordered by this Court on July 23, 2015 [D.I. 15917].

2. Now, Movants ask this Court to decide immediately and without a sufficient record to rush the Appeals (as defined below) to the Third Circuit, even before the appellants have submitted their statements of issues to be presented for appeal. This illusory exigency belies the fact that, regardless of whether the Appeals begin in the District Court or the Third Circuit, substantial work wholly unrelated to the U.S. appeals process remains to be done before the Sales Proceeds can be divided amongst the Estates pursuant to the Decisions' allocation

---

[3] Motion for Entry of an Order Under 11 U.S.C. §§ 102(1) and 105(a), Fed. R. Bankr. P. 9006 and Bankr. D. Del. L.R. 9006-1(e) Shortening Notice for the Motion [D.I. 15925] ("Motion to Shorten Notice").

[4] Not only did Movants never notify U.S. Debtors' counsel of their intent to move on shortened notice after business hours last Thursday or seek to negotiate a reasonable briefing schedule, but when the U.S. Debtors, UCC and Bondholder Group requested a mere one-week extension of their time to respond on Friday afternoon, the Monitor's counsel refused to consider such request until it would be able to confirm the Court's availability the following Monday, by which time U.S. Debtors' counsel would have had to (and did) work through the weekend on this response, thereby largely mooting the purpose of granting a reasonable extension. Of course, this unnecessary fire drill could have been obviated with the courtesy of communication and notice from Movants.

methodology and in turn distributed to the Estates' creditors.  Direct certification to the Court of Appeals is an extraordinary departure from the standard appellate process, and where the allocation of Sales Proceeds is so fundamental to creditor recoveries in the U.S. Debtors' bankruptcy cases, it is essential that the U.S. Debtors be entitled to a fair opportunity to pursue their full appellate remedies.  Movants identify nothing in the Decisions (and certainly nothing in the notices of appeal) that would satisfy the statutory requirements for certification, or indeed any way in which the Appeals materially differ from any other appeal from a bankruptcy court.  Because Movants fail to satisfy either of the two standards for direct certification identified in the Motion, Movants' request for certification directly to the Third Circuit should be denied.

3. *First*, while none of the appellants have submitted their statements of issues to be presented on appeal and thus notwithstanding Movants' novel effort to define for themselves the issues on appeal, there exists governing legal authority regarding dispositive issues actually contemplated by the U.S. Debtors.  Indeed, as Movants recognized in their own submissions at trial, well-settled principles of law govern this dispute.  Even the strawman questions for appeal posed by Movants (who are not direct appellants) in the Motion – whether this Court erred in adopting its allocation methodology on the basis that it was "fair and equitable" (which Movants seemingly proclaim will be the sole basis for appellants' appeal) and whether this Court erred in construing a contract and rejecting ownership under that contract as a basis for allocation (the grounds for Movants' conditional cross-appeal) – would not justify such extraordinary relief.  Other potential issues expected to be raised in the Appeals are similarly governed by well-settled principles of law.

4. *Second*, Movants suggest that direct certification of the Appeals will "materially advance" the progress of the case, but they tellingly fail to cite any Third Circuit precedent in

support of this point.  This is not surprising; courts in the Third Circuit have repeatedly rejected requests for certification sought simply to resolve an appeal more quickly.  Even if the Appeals could magically be resolved tomorrow, however, the Sales Proceeds would still not be distributed until (i) the Canadian Court's order implementing its May 12, 2015 opinion (the "Canadian Allocation Opinion") is likewise final and non-appealable *and*, (ii) if the Decisions are affirmed on appeal, all of the Estates have completed their respective claims processes.  Given that the Canadian appellate process is only just beginning – a process that, antithetical to the Motion, Movants are seeking to drag out rather than to expedite – and the EMEA Debtors have only just commenced their claims process that will proceed for an unknown duration, there is no basis for this Court to conclude that these Appeals would delay distributions even if first heard by the District Court.  Accordingly, the Motion should be denied.

5.      *Finally*, a few words are necessary on Movants' unilaterally proclaimed procedural morass warranting extremely expedited consideration of this important issue of certification.  Rather than waiting for a hearing until after the development of a record that includes appellants' issues on appeal and the anticipated timing of the other necessary prerequisites to allocation – Movants argue for expedition based on nothing more than the alleged "confusion reign[ing] over the appellate process."  Motion to Shorten Notice ¶ 10.  This complaint is pure nonsense.  Movants express concern that "[s]ome parties are appealing the Allocation Decision as a final order, and others are requesting leave for an interlocutory appeal of the Allocation Decision."  *Id.*  However, *no appellant requested leave for an interlocutory appeal*.  Movants themselves are the only parties to have done so.  Movants also worry that "[s]ome parties are appealing to the United States District Court for the District of Delaware . . . and others are seeking certification for direct appeal to the Third Circuit."  *Id.*  Once again, *every*

*appellant has appealed to the District Court*. Only Movants have sought certification. Movants' third complaint is that "submissions are currently being made in this Court and the District Court, and each appeal has been separately docketed in the District Court." *Id.* What Movants describe is not "confusion," but rather the standard procedure applicable *in every case*. Movants next express alarm that "the parties have already been referred to Chief Magistrate Judge Thynge to determine the appropriateness of mediation . . . and will continue to be directed to additional mediations under this standing order on behalf of each other appeal . . . ." *Id.* Once again, this is the standard procedure applicable *in every case* and hardly a source of confusion, a basis for certification or unique justification to shorten notice. The fifth and final reason offered by Movants for such extremely shortened notice without advance disclosure or discussion is that "the parties are working diligently on scheduling the designation of the record and the filing of competing statements of the issues on appeal to the District Court. All of these efforts will be rendered moot if this Court grants the Certification Motion and the Third Circuit accepts these appeals." *Id.* Yet again, Movants have described the procedure applicable to *every* appeal without any explanation as to how or why these procedures could cause confusion, warrant certification or justify shortened notice. These five complaints are all that Movants offer and not one of them presents an even arguably valid – let alone unique relative to every other bankruptcy appeal – basis for shortened notice or consideration of the Motion without the record this Court needs to grant the relief requested by Movants.[5]

**PROCEDURAL HISTORY**

6.  On May 13, 2013 and May 17, 2013, respectively, the Canadian Court and this Court entered orders approving an allocation protocol (the "Allocation Protocol"), which

---

[5]  Moreover, it is hard to square Movants' demand to expedite consideration of this Motion on just a few days' notice with the requests of certain appellees to delay the submission of counter-designations of the record until September 18, 2015 – more than two months after the first notice of appeal.

established procedures for the resolution of the parties' dispute regarding the allocation of the Sales Proceeds in a joint trial held by both Courts. *See* TR50025 (Canadian Order Entering Allocation Protocol); TR50102 (Order Entering Allocation Protocol [D.I. 10565]). The joint trial was held between May 12, 2014 and June 24, 2014, and closing arguments were held between September 22, 2014 and September 24, 2014.

7. On May 12, 2015, the U.S. Court issued the Allocation Opinion and accompanying U.S. Allocation Order [D.I.s 15544 and 15545], and the Canadian Court issued the Canadian Allocation Opinion [*Nortel Networks Corporation (Re)*, 2015 ONSC 2987].

8. On May 26, 2015, the U.S. Debtors, the Committee, the Bondholders, and the Law Debenture Trust Company as Indenture Trustee for the NNCC Notes each timely moved for reconsideration and/or clarification of the U.S. Allocation Opinion and U.S. Allocation Order and the Canadian Allocation Opinion [D.I.s 15615, 15613, 15612, 15611] (collectively, the "Reconsideration Motions"). Following a joint hearing of this Court and Canadian Court on June 25, 2015, the Reconsideration Motions were granted in part and denied in part in the Reconsideration Order on July 6, 2015.

9. Following the Reconsideration Order, numerous parties have filed notices of appeals of the Decisions (the "Appeals"): on July 9, the Committee filed a notice of appeal [D.I. 15846]; on July 17, a group calling itself the Nortel Trade Claims Consortium filed a notice of cross-appeal [D.I. 15878]; on July 20, notices of appeal were filed by Bank of New York Mellon as Indenture Trustee [D.I. 15888], the U.S. Debtors [D.I. 15890], Stephen Taylor, as Conflicts Administrator for Nortel Networks, S.A. (In Administration) [D.I. 15894], and the Bondholders [D.I. 15893]; and on July 23, the Pension Benefit Guaranty Corporation filed a notice of appeal [D.I. 15916]. Also on July 23, the Joint Administrators submitted a notice of conditional cross-

appeal [D.I. 15919], Movants submitted a notice of contingent cross-appeal [D.I. 15921], and the Canadian Creditors Committee ("CCC") submitted a notice of contingent cross-appeal [D.I. 15926].

10. On the evening of July 23, 2015, along with Movants' notice of contingent cross-appeal, Movants filed and served the Motion along with a Motion to Shorten Notice. Movants also filed and served a Motion for Determination That Allocation Order Is Interlocutory and for Leave to Appeal [D.I. 15922] ("Motion for Leave"). The CCC submitted joinders to each of these motions [D.I.s 15928, 15929].

11. As the U.S. Debtors were preparing to respond to the Motion to Shorten Notice, on July 24, 2015, this Court granted the Motion to Shorten Notice [D.I. 15943], and Movants noticed the Motion accordingly [D.I. 15949]. The Monitor also filed a corrected version of the Motion, which made certain corrections to the list of parties who opposed or took no position on direct certification [D.I. 15940].

## ARGUMENT

12. In merely three paragraphs, the Motion proffers two arguments in favor of certification: (i) that there is no governing law on the issue before the court and (ii) that certification will materially advance the case. Motion ¶¶ 14-16. Neither assertion is supported and both are incorrect.

### I. There Is No Unresolved Question of Law Justifying Direct Certification

13. Putting the cart before the horse, Movants claim – based on their own "questions presented," Motion ¶¶ 8-9, as *appellees* – that the Appeals present unresolved questions of law. But these are not the questions presented on appeal – those will be defined by appellants as required under Bankruptcy Rule 8009(a)(1)(A). Until the Court knows the grounds chosen for

the appeals, it cannot satisfy itself that some, all, or none of these will involve "a question of law as to which there is no controlling decision."  28 U.S.C. § 158(d)(2)(A)(i).  The Motion is plainly premature as Movants' own need to craft the appellants' "questions presented" plainly demonstrates.

14.     There are numerous issues ripe for appellate consideration on which governing law exists, including principles of contract interpretation, the scope and validity of patent licenses, 11 U.S.C. § 363, and substantive consolidation.  Indeed, before desiring certification, Movants themselves argued "that allocation derives from a legal basis (recognition of each seller's rights and assets sold or relinquished)" and the MRDA, "provided they are correctly applied."  Resp. of the Monitor and Canadian Debtors to the Opening Allocation Pleadings of the Other Core Parties at ¶ 5(i), May 29, 2013 [D.I. 10696-1]  Thereafter, in their Initial Post-Trial Brief, Movants asserted repeatedly that Ontario law is "clear" about the introduction and interpretation of factual matrix evidence and the scope of contractual sublicense grants. Monitor's Initial Post-Trial Brief at 57, 58, 59, 62, 76, 77-78, 92 [D.I. 14256]  *See also* Allocation Opinion at 47, Aug. 25, 2014 (noting Movants' position that "proceeds should be allocated based upon the value of the property rights transferred or surrendered by each Debtor in connection with the Business Line Sales and the Rockstar Transaction"); U.S. Interests' Post-Trial Brief at 19-20, Aug. 25, 2014 [D.I. 14263] ("It is a foundational principle of the insolvency regimes in the US and Canada that a debtor's assets must be made available to fully satisfy the creditors of that debtor before equity may recover.").

15.     Performing an abrupt about-face when it meets their tactical needs, Movants now cast the appellants' *sole* appellate issue as whether the modified pro rata allocation methodology is "a fair and equitable mechanism," Motion ¶ 8, despite the existence of numerous potentially

dispositive issues that could obviate the need for an appellate court to ever address this question, if it even is one ultimately presented by the appellants in their forthcoming statement of issues under Bankruptcy Rule 8009(a)(1)(A). Indeed, even as to the single issue Movants claim the appellants will raise, it cannot be said that no controlling precedent exists. Whether the Court even had the legal right to adopt a "modified pro rata" methodology (a threshold question Movants conspicuously avoid presenting) and secondarily whether such methodology was "fair and equitable," Motion ¶ 6, are issues decided by the Court pursuant to 11 U.S.C. § 105(a). Allocation Op. at 98-100. Whether or not the Court correctly applied § 105(a), there is undoubtedly extensive law in the Third Circuit (and elsewhere) addressing the Court's scope of authority under this statute. *See, e.g.*, Allocation Op. at 98 (citing *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 224-25, 235-36 (3d Cir. 2004) (detailing the scope of courts' § 105(a) powers)). However Movants wish to define for themselves the U.S. Debtors' appeal in order to advance this Motion, the U.S. Debtors expect to "dispute[] the application of existing controlling law to specific facts." *In re Nortel Networks Corp.*, No. 09–10138(KG), 2010 WL 1172642, at *1 (Bankr. D. Del. Mar. 18, 2010). Thus, even if the Court ignores that fact that the appellants have not yet defined *their* questions presented and presumes that the Appeals center exclusively on the issue framed by Movants, certification should be denied.[6]

16.   As to the Motion's second question presented – whether the Court "erred in its construction of an agreement governed by Ontario law and in rejecting legal ownership as the basis for allocation" – it appears based entirely on what Movants will contend to be the

---

[6] To the extent Movants suggest that the appeal requires a wide-ranging, fact-intensive inquiry as to whether the proposed allocation is fair (it does not), this is hardly an issue where "uncertainty in the bankruptcy courts (either due to the absence of a controlling legal decision or because conflicting decisions have created confusion)" merits certification to the circuit court. Rather, in such cases, "percolation through the district court would cast more light on the issue[s] and facilitate a wise and well-informed decision" by the circuit court. *Weber v. U.S. Trustee*, 484 F.3d 154, 161 (2d Cir. 2007).

9

application of controlling Ontario contract and property law and thus supports denial of the Motion, not a basis to grant it.

17. Additionally, while not adopting the Movants' questions presented, the U.S. Debtors note that Movants' characterization of the Appeals as "fact-intensive," Motion ¶ 1, itself defeats certification. *See, e.g.*, *In re Am. Home Mortgage Inv. Corp.*, 408 B.R. 42, 44 (D. Del. 2009) (denying certification where appeal raised "mixed questions that implicate[d] the particular circumstances of [the] case" rather than "pure legal questions warranting direct certification"); *In re Tribune Co.*, 477 B.R. 465, 472 (Bankr. D. Del. 2012) (denying certification where appellate issue was "not a pure legal issue" and thus "not appropriate for direct appeal") (citation omitted).

## II. Direct Certification Will Not "Materially Advance" The Proceedings

18. Despite Movants' overheated rhetoric, "[t]here is nothing extraordinary or urgent about this situation that recommends departing from the standard appellate process." *In re Conex Holdings, LLC*, Bankr. Case No. 11-10501-CSS, 2015 WL 1383113, at *3 (D. Del. March 23, 2015) (denying motion for certification). To the contrary, Movants' argument regarding the "materially advances" prong of the certification statute, 28 U.S.C. § 158(d)(2)(A)(iii), would apply to *any* appeal from *any* significant bankruptcy order and must be rejected.

19. Movants' improper reading of the statute is illustrated by the very authority on which they rely. *Weber v. U.S. Trustee*, 484 F.3d 154 (2d Cir. 2007). In that case, the Court of Appeals for the Second Circuit *declined* to grant direct certification, holding that "prior consideration by the district court would be beneficial and there is no compelling reason for this court to address the issue in the first instance." *Id.* at 161-62. In so deciding, the Second Circuit recognized Congress's awareness of the "dangers of leapfrogging the district court in the appeals

process" and noted its reluctance "to accept cases for direct appeal when . . . percolation through the district court would cast more light on the issue and facilitate a wise and well-informed decision." *Id.* at 160, 161.  Not only is there no reason to depart from the standard appellate procedure, but such "percolation" may be particularly beneficial here given the voluminous trial record and the number of appellants, cross-appellants, and conditional- or contingent-appellants.  The U.S. Debtors' right to appeal to the District Court particularly should be preserved in this case, given the monumental importance of the allocation of sale proceeds to creditor recoveries in their bankruptcy cases, such that the U.S. Debtors should be given an adequate opportunity to pursue all of their ordinary appellate remedies with respect to the Court's decision.  While the U.S. Debtors desire to bring these cases to prompt conclusion, the desire to resolve these cases cannot and should not be used as an excuse to ride roughshod over the procedural protections afforded to the U.S. Debtors' estates and their creditors by a review of the ruling by the District Court and, if necessary, the Third Circuit.

20.    Movants' suggestion that the District Court's decision on these Appeals may be in turn appealed to the Third Circuit is of no moment.  That is true of any appeal, and the statute does not provide for certification on that basis.  Instead, § 158(d)(2)(A)'s factors serve a "gate-keeping function" to keep all but a certain category of appeals with the District Court.  *In re Fisker Auto. Holdings, Inc.*, No. 13-13087-KG, Adv. No. 14-CV-99 (GMS), 2014 WL 576370, at *4 n.3 (D. Del. Feb. 12, 2014) (denying motion for certification and stating that potential future appeals, even if inevitable, fail to satisfy 158(d)(2)(A)'s requirements); *see also In re Seven Ctys. Servs., Inc.*, Case No. 13-31442(1)(11), Adv. No. 13-03019, 2014 WL 4792202 (Bankr. W.D. Ky. Sept. 24, 2014) (finding material advancement test not met despite "all parties acknowledg[ing] that this case is inevitably bound" for circuit court); *In re Waczewski*, No. 6:06-

BK-00620-KSJ, 2006 WL 1594141 (Bankr. M.D. Fla. May 5, 2006) (noting that material advancement "requires more than arguing that the appeal will proceed faster if it goes directly to" circuit court).

21. By comparison, those rare cases finding that certification would materially advance the proceedings do so when the issue at appeal is among the last barriers to resolving the case. *See, e.g.*, *In re Semcrude LP*, 407 B.R. 140, 158 (Bankr. D. Del. 2009) (certifying appeal and noting that debtors had recently filed a plan of reorganization and expressed intention to seek confirmation in several months). Here, by contrast, there are two profound impediments to ultimate distribution to creditors of the Sales Proceeds and the current record offers no basis for the Court to conclude that they will be resolved prior to the resolution of the Appeals in their normal course. *See, e.g.*, *In re Tribune Co.*, 477 B.R. at 473 (denying certification where "there [were] still a number of issues on appeal challenging confirmation" of Plan).

22. First, not only must appeals in this jurisdiction be resolved, but the Canadian appeal process must be resolved as well. At the same time Movants are urging this Court to move at breakneck speed to certify a direct appeal to the Third Circuit on shortened notice and bypass an important step in the U.S. appellate process, they take the opposite approach in Canada. Yesterday, the parties appeared at a case conference before the Canadian appellate court during which Movants (and other appellees) indicated that they intend to oppose leave to appeal, a decision at odds with their efforts to proceed with all haste in this jurisdiction.

23. Second, as the Court is aware, unless reversed, the Allocation Decision prevents the determination of the Estates' respective shares of the lockbox proceeds – and thus distribution of those funds – until the completion of the claims process for all Nortel debtors worldwide. As the EMEA Debtors informed the Court on June 24, 2015, the EMEA Estates

only recently started the process of commencing the claims determination process in the U.K. proceedings with the appointment of a supervisory judge.  Notice of Filing Letter Regarding EMEA Insolvency Proceedings, June 24, 2015 [D.I. 15795].  Movants readily recognize this reality:  "Thus, before the final percentages of the Sales Proceeds to be distributed to each debtor can be calculated, each of the debtor estates must *complete* their claims processes.  The EMEA Debtors' claims process only formally commenced following the Allocation Decision, and the claims processes of the Canadian Debtors and the U.S. Debtors are ongoing."  Motion for Leave at 5 (emphasis added) (footnotes omitted).  *See also id.* at 2 (noting "vast amounts of work to be done before the total amounts to be distributed to each debtors' estate can be known").

24. In light of these acknowledgements, the record is utterly devoid of any basis for the Court even to conclude that this nascent EMEA claims process will be completed before the final conclusion of an appeal through ordinary channels without burdening the Third Circuit with direct certification.  Without such a basis, this Court cannot conclude that certification will advance the conclusion of these proceedings at all, let alone materially so.[7]  Accordingly, there is no extraordinary or urgent need to depart from the ordinary appellate process.

[*Remainder of Page Left Intentionally Blank*]

---

[7] There is a critical distinction between whether commencing an appeal at this time (as opposed to waiting until the claim processes are concluded and payments are ready even to begin an appeal) is necessary to the advancement of this case – which all parties seemingly agree is indisputably so – and whether bypassing the District Court through certification will materially advance this case given the other external processes, which the record does not support.

**CONCLUSION**

For the foregoing reasons, the Motion should be dismissed with prejudice. At a minimum, the Motion should dismissed with leave to re-file after (i) August 28, 2015, by which time all appellants will have filed their statements of issues on appeal, and (ii) the EMEA and Canadian Debtors have filed declarations concerning their anticipated timetable for the conclusion of their respective claims processes (and the Canadian appellate process), so that the Court will have an appropriate record on which to base any decision in favor of certification.

Dated: July 28, 2015
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the U.S. Debtors
and Debtors in Possession*