**Exhibit A**

Court File No.  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**MOTION RECORD OF**
**THE MONITOR AND CANADIAN DEBTORS**
**(Disposal of Records)**
**(returnable August 5, 2015)**

| | |
|---|---|
| **Goodmans LLP** | **Gowling Lafleur Henderson LLP** |
| Barristers & Solicitors | Barristers & Solicitors |
| Bay Adelaide Centre | 1 First Canadian Place |
| 333 Bay Street, Suite 3400 | 100 King Street West, Suite 1600 |
| Toronto, ON  M5H 2S7 | Toronto, ON  M5X 1G5 |
| | |
| **Jay Carfagnini** LSUC#: 22293T | **Derrick Tay**  LSUC#: 21152A |
| **Joseph Pasquariello**  LSUC#: 38390C | **Jennifer Stam**  LSUC#: 46735J |
| **Christopher G. Armstrong**  LSUC#: 55148B | |
| | |
| Tel:    416.979.2211 | Tel:  416.862.5697 |
| Fax:    416.979.1234 | Fax:  416.862.7661 |
| | |
| Lawyers for the Monitor, | Lawyers for the Canadian Debtors |
| Ernst & Young Inc. | |

# INDEX

Court File No.  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT**
**OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**INDEX**

| **Document** | **Tab** |
|---|---|
| Notice of Motion (Disposal of Records) dated July 14, 2015 | 1 |
| One Hundred and Eighteenth Report of the Monitor dated July 14, 2015 | 2 |
| Draft Order (Disposal of Records) | 3 |

# TAB 1

Court File No.  09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### NOTICE OF MOTION
### (Disposal of Records)
### (returnable August 5, 2015)

Nortel Networks Corporation ("**NNC**" and collectively with all its subsidiaries "**Nortel**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "**Canadian Debtors**") jointly with Ernst & Young Inc. in its capacity as monitor (the "**Monitor**") of the Canadian Debtors will make a motion to Justice Newbould of the Commercial List court on **August 5, 2015, at 10:00 am**, or as soon after that time as the motion can be heard, **at 330 University Avenue, Toronto, Ontario.**

**PROPOSED METHOD OF HEARING:** The motion is to be heard:

☐   in writing under subrule 37.12.1(1) because it is on consent or unopposed or made without notice;

☐   in writing as an opposed motion under subrule 37.12.1(4);

☒   orally.

**THIS MOTION IS FOR AN ORDER:**

(a)     validating service of this Notice of Motion, the Motion Record and the One Hundred and Eighteenth Report of the Monitor dated July 14, 2015 (the "**One Hundred and Eighteenth Report**") and dispensing with further service thereof;

(b)     approving procedures to permit the disposal of certain of the Canadian Debtors' hard copy and electronic records and the media on which such electronic records are stored; and

(c)     such further and other relief as counsel may request and this Court deems just.

**THE GROUNDS FOR THE MOTION ARE:**

*Status of CCAA Proceedings*

(a)     On January 14, 2009 (the "**Filing Date**"), this Court made an initial order (as amended and restated from time to time, the "**Initial Order**") granting, among other things, a stay of proceedings in favour of the Canadian Debtors pursuant to the *Companies' Creditors Arrangement Act*, (Canada) R.S.C. 1985, c. C-36 (as amended to January 14, 2009, the "**CCAA**"), and appointing Ernst & Young Inc. as Monitor in the CCAA proceedings;

(b)     Nortel Networks Inc. ("**NNI**") and certain of its U.S. subsidiaries and affiliates concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the "**Code**") in the United States Bankruptcy Court for the District of Delaware (the "**U.S. Court**") on the Filing Date;

(c)     Nortel Networks (CALA) Inc. (together with NNI and certain of its subsidiaries and affiliates that filed on January 14, 2009, the "**U.S. Debtors**") filed a voluntary petition under Chapter 11 of the Code in the U.S. Court on July 14, 2009;

(d)     Nortel Networks UK and certain of its affiliates located in Europe, the Middle East and Asia (collectively the "**EMEA Debtors**") were granted administration orders by the High Court of England and Wales on the Filing Date;

- 3 -

(e)      Following the Filing Date, the Canadian Debtors and certain of their affiliates completed the sale of Nortel's operating lines of business ("**LOB**") and approximately 7,000 patents and patent applications (the "**Residual IP**") and the Canadian Debtors have otherwise sold substantially all of their other remaining assets. The Canadian Debtors and the Monitor continue to work to realize on the Canadian Debtors' remaining assets and wind-up the Canadian Debtors and their controlled subsidiaries;

(f)      On March 8, 2013 this Court issued an order providing for a joint trial with the U.S. Court in respect of the allocation of the proceeds of the sale of the LOBs and Residual IP (the "**Allocation Dispute**") and a Canadian only trial for the resolution of the claims of the Trustee of the Nortel Networks UK Pension Trust Limited, the Board of the UK Pension Protection Fund and the EMEA Debtors against, among others, the Canadian Debtors (collectively, with the Allocation Dispute, the "**Allocation and Claims Litigation**");

(g)      The various claims filed by the EMEA Debtors against the Canadian Debtors were settled and resolved pursuant to the Agreement Settling EMEA Canadian Claims and Related Claims among, *inter alia*, the Canadian Debtors, Monitor and EMEA Debtors dated July 9, 2014, which settlement was approved by this Court on July 16, 2014. This Court issued its Reasons for Judgment in respect of the claims of the UK Pension Claimants on December 9, 2014. The UK Pension Claimants have been granted leave to appeal this judgment. A date for the hearing of the Appeal has yet to be fixed;

(h)      The trial phase of the Allocation and Claims Litigation concluded in October 2014 and this Court and the U.S. Court released their respective decisions in respect of the Allocation Dispute on May 12, 2015;

(i)      Pursuant to prior orders of this Court or agreements approved by this Court substantially all classes of claims against the Canadian Debtors have been called for and barred or otherwise resolved;

- 4 -

(j)    In the course of reviewing and considering the remaining unresolved claims, the Monitor and the Canadian Debtors have conducted a review of the Canadian Debtors' files in an attempt to identify records that may be relevant to the remaining unresolved claims, which records will be preserved pending final resolution of the claim in question;

*Nortel's Records Retention and IT Infrastructure*

(k)    NNC and NNL, as the holding company and primary operating company of the Nortel group, respectively, maintained records relating not only to the business and operations of the Canadian Debtors, but also to the Nortel group as a whole and various other worldwide Nortel entities;

(l)    Subsequent to the Filing Date the Canadian Debtors' normal course process of records destruction was suspended and as a result the Canadian Debtors continue to retain significant amounts of pre-2009 hard copy and electronic records that would have been disposed of in the normal course but for the commencement of these CCAA proceedings;

(m)    With respect to electronic records, the Canadian Debtors are currently storing electronic records on approximately 234 servers as well as on hard drives and media tapes, most of which are located at a portion of the Carling campus in Ottawa leased by NNL (the "**Carling Campus**");

(n)    In total, the Canadian Debtors are storing more than 58,000 boxes of hard copy records and media tapes at the Carling Campus and various Iron Mountain Canada storage sites across Canada;

(o)    The significant majority of these records pre-date the CCAA proceedings and the Monitor has little information describing their content;

(p)    The Canadian Debtors presently incur costs of approximately $1.8 million per annum in connection with maintaining these records, including lease costs, IT personnel costs and third-party storage costs;

(q)     NNL's lease of its remaining premises at the Carling Campus has been extended for a one-year period until December 31, 2015. NNL has no right of renewal under the lease and no guarantee that the Government of Canada will agree to extend the lease beyond the end of 2015. As a result of this uncertainty, the Canadian Debtors and the Monitor have been exploring and considering the options available to the Canadian Debtors in terms of housing and supporting their continuing IT infrastructure requirements. Implementation of the Disposal Procedures (as defined below) and the associated reduction in the Canadian Debtors' IT infrastructure will assist in providing the Canadian Debtors with maximum flexibility with respect to these matters moving forward;

*Disposal of Records*

(r)     The Monitor and the Canadian Debtors believe they no longer have a need for a significant amount of the hardcopy and electronic records and associated media (collectively, the "**Records**") currently maintained by the Canadian Debtors;

(s)     Further, given the advanced stage of the CCAA proceedings and the wind-down of the Canadian Debtors' business, the cost of maintaining the Records is no longer justified in the circumstances of these proceedings;

(t)     In light of the foregoing, the Monitor and the Canadian Debtors' are proposing procedures (the "**Disposal Procedures**") for the disposal of a significant portion of the Canadian Debtors' remaining Records and related information technology infrastructure;

(u)     The Disposal Procedures are designed to establish efficient procedures to: (i) permit stakeholders to request and access further information in respect of the Records proposed to be disposed of, subject to the execution of a confidentiality undertaking; (ii) permit stakeholders to object to the disposal of specified Records; (iii) permit the Monitor to resolve objections without further notice or hearing, or to bring unresolved objections to this Court for resolution; and (iv) permit the Canadian Debtors to dispose of the Records specified to be disposed of;

(v)     The Disposal Procedures also provide that persons seeking to access or receive copies of the Records proposed to be disposed of, or seeking to cause the Canadian Debtors to continue to retain such Records, shall bear any costs incurred by the Canadian Debtors as a result of any of the foregoing;

(w)     The Monitor and Canadian Debtors intend to retain certain Records that they believe may have continuing relevance to the Canadian Debtors and their stakeholders in the CCAA proceedings, including Records identified as potentially relevant to the remaining unresolved claims in the Canadian Debtors' claims processes. Further, the Monitor is not proposing to destroy any of its own records;

(x)     The Monitor estimates implementation of the Disposal Procedures will result an estimated initial costs savings for the Canadian Debtors of approximately $600,000 per annum;

(y)     The proposed Disposal Procedures will provide the Canadian Debtors with flexibility to manage their remaining IT infrastructure and potentially further reduce IT related costs on a go forward basis;

*Miscellaneous*

(z)     Section 11 of the CCAA; and

(aa)    Such further and other grounds as counsel may advise and this Court permit.

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the motion:

(a)     One Hundred and Eighteenth Report of the Monitor dated July 14, 2015; and

(b)     Such further and other material as counsel may advise and this Court may permit.

July 14, 2015

**GOODMANS LLP**
333 Bay Street, Suite 3400
Toronto, Ontario M5H 2S7

Jay Carfagnini  LSUC# 22293T
Joseph Pasquariello  LSUC# 38390C
Christopher G. Armstrong  LSUC# 55148B

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON M5X 1G5

Derrick Tay  LSUC# 21152A
Jennifer Stam  LSUC# 46735J

Tel:  416.862.5697
Fax:  416.862.7661

Lawyers for the Canadian Debtors

**TO**:      Main Service List

**AND TO**: Supplemental Service List attached as Schedule A hereto

## SCHEDULE A

**Supplemental Service List**

Court File No.  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**


IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
**R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL
CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL
NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED**


**SUPPLEMENTAL SERVICE LIST**
**(DISPOSAL OF RECORDS MOTION)**


**TO:**        **ROYAL CANADIAN MOUNTED POLICE**
               RCMP National Headquarters, Legal Services Division
               Headquarters Building
               73 Leikin Drive
               Ottawa ON K1A 0R2
               Tel:      613.825.1391
               Fax:      613.993.0260

**AND TO:**    **U.S. SECURITIES AND EXCHANGE COMMISSION**
               Office of the General Counsel
               100 F Street, NE
               Washington, DC  20549
               Tel:      202.942.8088

**AND TO:**    **ONTARIO SECURITIES COMMISSION**
               General Counsel's Office
               20 Queen Street West, 22nd Floor
               Toronto, ON  M5H 3S8
               Tel:      416.593.8314

**AND TO:**    **OFFICE OF THE SUPERINTENDENT OF BANKRUPTCY CANADA**
               Heritage Place
               155 Queen Street, 4th Floor
               Ottawa, Ontario  K1A 0H5

**AND TO:**     **CANADA REVENUE AGENCY**
Office of the Commissioner of Revenue
7th Floor, 555 MacKenzie Avenue
Ottawa ON  K1A 0L5

**AND TO:**     **MINISTRY OF FINANCE (ONTARIO)**
Office of Legal Services
33 King Street West, 6th Floor
Oshawa, ON  L1H 8H5
Fax:     905.436.4510

**AND TO:**     **MINISTRY OF FINANCE (BRITISH COLUMBIA)**
P.O. Box 9445 Stn Prov Govt
Victoria, BC  V8W 9V5
Tel:     250.387.3751
Fax:     250.387.5594

**AND TO:**     **ALBERTA FINANCE AND ENTERPRISE**
Tax and Revenue Administration
9811 – 109 Street
Edmonton, AB  T5K 2L5
Tel:     780.427.3044
Fax:     780.427.0348

**AND TO:**     **SASKATCHEWAN FINANCE**
Revenue Division
2350 Albert Street
Regina, SK  S4P 4A6
Tel:     306.787.6768
Fax:     306.787.0241

**AND TO:**     **MANITOBA FINANCE**
Taxation Division
101 - 401 York Avenue
Winnipeg, MB  R3C 0P8
Tel:     204.945.5603
Fax:     204.945.0896

**AND TO:**     **REVENU QUÉBEC**
Direction principale des relations avec la clientèle des entreprises
3800, rue de Marly, secteur 5-2-8
Québec, QC  G1X 4A5
Tel:     418.652.4270
Fax:     418.577.5327

**AND TO:**     **DEPARTMENT OF FINANCE (NEW BRUNSWICK)**
Chancery Place
675 King Street
Fredericton, NB  E3B 1E9
Tel:     506.453.2451
Fax:     506.457.4989

- 3 -

**AND TO:**   **NOVA SCOTIA DEPARTMENT OF FINANCE**
P.O. Box 187
1723 Hollis Street
Halifax, NS  B3J 2N3
Fax:      902.424.0635

**AND TO:**   **DEPARTMENT OF FINANCE (NEWFOUNDLAND AND LABRADOR)**
Taxation and Fiscal Policy Branch
P.O. Box 8700
East Block Confederation Building, Main Floor
St. John's, NL  A1B 4J6
Tel:      709.729.3166
Fax:      709.729.2070

**AND TO:**   **DEPARTMENT OF FINANCE AND ENERGY (PRINCE EDWARD ISLAND)**
Tax Administration and Compliance Services Section
Shaw Building, 1st Floor
95 Rochford Street
P.O. Box 2000
Charlottetown, PE  C1A 7N8
Tel:      902.368.4070
Fax:      902.368.6164

**AND TO:**   **DEPARTMENT OF FINANCE (YUKON TERRITORY)**
Government of Yukon
P.O Box 2703
Whitehorse, YT,  Y1A 2C6

**AND TO:**   **DEPARTMENT OF FINANCE (NORTHWEST TERRITORIES)**
Government of the Northwest Territories
P.O. Box 1320
Yellowknife, NT  X1A 2L9

**AND TO:**   **DEPARTMENT OF FINANCE (NORTHWEST TERRITORIES)**
Government of Nunavut
P.O. Box 1000, Station 200
Iqaluit, NU  X0A 0H0

**AND TO:**   **MONSIEUR DAVID METIN – ADVOCAT**
67 avenue de Paris
78000 Versailles
France

         **Counsel to the French Employees**
**AND TO:**   **EARL JOSEPH BENETEAU**
6716 Virgilia Ct
Raleigh, NC  USA  27616

- 4 -

| | |
|---|---|
| **AND TO:** | **WILLIAM KENNETH GARDENER**<br>15 Ennismore Mews<br>London, United Kingdom  5W7 1AP |
| **AND TO:** | **KIEN CHEN**<br>c/o Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ USA  07068<br>**Attention:**    **Michael S. Etkin, Esq.** |
| **AND TO:** | **DAVID LUCESCU**<br>c/o Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ USA  07068<br>**Attention:**    **Michael S. Etkin, Esq.** |
| **AND TO:** | **MORENO MINTO**<br>c/o Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ USA  07068<br>**Attention:**    **Michael S. Etkin, Esq.** |
| **AND TO:** | **ALTER DOMUS S.a.r.l.**<br>5 rue Guillaume Kroll, L1822<br>Luxembourg, Luxembourg 1822<br>**Attention:**    **Pierre Mertons** |
| **AND TO:** | **ANDERSON, WILLIAM STUART**<br>225 Cross Street<br>Belmont, MA  USA  02478 |
| **AND TO:** | **APPLEBY (CAYMAN) LTD.**<br>P.O. Box 190<br>75 Fort Street<br>George Town, Grand Cayman  KY1 1104<br>**Attention:**    **Sheryl Harris** |
| **AND TO:** | **APPLIED DISCOVERY INC.**<br>#200, 13427 NE 16th Street<br>Bellevue, WA  USA  98034<br>**Attention:**    **Rodrigo Cucalon** |
| **AND TO:** | **AVERNA TECHNOLOGIES**<br>Suite 140, 87 Rue Prince<br>Montreal, QC  H3C 2M7<br>**Attention:**    **Pierre-Yves Pilon** |

- 5 -

**AND TO:**   **BOYD CORPORATION**
600 South McClure Road
Modesto, CA  USA  95357
**Attention:**   **Anjela Nand**

**AND TO:**   **CITY OF OTTAWA**
PO Box 3441
Ottawa, ON  K1P 1J5
**Attention:**   **Lonnie Lacroix**

**AND TO:**   **CONSTELLATION NEWENERGY CANADA INC.**
c/o Macleod Dixon LLP
3700 Canterrra Tower 400
Third Avenue SW
Calgary, AB  T2P 4H2
**Attention:**   **Kyle D. Kashuba**

**AND TO:**   **DAVID A. DAGG PATENT ATTORNEY PC**
44 Chapin Road
Newton Centre, MA  USA  02459
**Attention:**   **David Dagg**

**AND TO:**   **DIGICOM, INCORPORATED**
829 Towlston Road
McLean, VA  USA  22102
**Attention:**   **John S. Edwards**

**AND TO:**   **DIRECT ENERGY REGULATED SERVICES**
P.O. Box 2425
Edmonton, AB  T5J 2R4
**Attention:**   **Debbie Scott**

**AND TO:**   **ENABLENCE TECHNOLOGIES, INC.**
2933 Bayview Drive
Fremont, CA  USA  94538
**Attention:**   **Andrew Spector**

**AND TO:**   **F. R. KELLY & CO.**
27 Clyde Rd Dublin 4
Ireland
**Attention:**   **Kate Cahill**

**AND TO:**   **FIRSTHAND TECHNOLOGIES, INC.**
Suite 300, One Bentall Centre
505 Burrard Street, Box 95
Vancouver, BC  V7X 1M3
**Attention:**   **Jake Weglewski**

- 6 -

**AND TO:**    **FREEDOM CAD SERVICES, INC.**
Suite 201
20 Cotton Road
Nashuaa, NH  USA  03063
**Attention:**   **Nicole Motika**

**AND TO:**    **GXS INC.**
100 Edison Park Drive
Gaithersburg, MD  USA  20878
**Attention:**   **Arthur Gans**

**AND TO:**    **IMPULSE TECHNOLOGIES LIMITED**
920 Gana Court
Mississauga, ON  L5S 1Z4
**Attention:**   **Marco Caravaggio**

**AND TO:**    **INDUSTRIAL DEVELOPMENT AGENCY IRELAND**
c/o Matheson Ormsby Prentice
70 Sir John Rogerson's Quay
Dublin 2, Ireland
DX: 2 Dublin
**Attention:**   **Gearoid Carey**

**AND TO:**    **INDUSTRIAL DEVELOPMENT AGENCY IRELAND**
c/o Oliver Murphy
Wilton Park House
Wilton Place
Dublin 2, Ireland
2 Dublin
**Attention:**   **Oliver Murphy**

**AND TO:**    **INDUSTRIES MITACOR, INC.**
c/o Longacre Institutional Opportunity Fund, L.P.
28th Floor, 1325 Avenue of the Americas
New York, NY  USA  100149
**Attention:**   **Lisa Belo**

**AND TO:**    **MOBILENET SERVICES, INC.**
c/o Hain Capital Group
7th Floor, 301 Route 17 North
Rutherford, NJ  USA  707
**Attention:**   **Rachel Yamnik**

**AND TO:**    **R.G.C. JENKINS & CO.**
26 Caxton Street
London, United Kingdom  SW1H 0RJ
**Attention:**   **Adrian Burgess**

**AND TO:**   **SIMBOL TEST SYSTEMS**
c/o Dover Master Fund II, L.P,
28th Floor
1325 Avenue of the Americas
New York, NY  USA  100149
**Attention:    Lisa Belo**

**AND TO:**   **SOURCE PHOTONICS (MACAO COMMERCIAL OFFSH0RE) LIMITED**
6th Floor, Eyang Building,
No3 of Qimin Road, Langshan 2nd Street
North Area of Hi-Tech Industrial Zone, Nanshan District
Shenzhen, Guangdong  China  51805
**Attention:    William Liang**

**AND TO:**   **THE LAN WIREWERKS RESEARCH LAB INC.**
c/o Compagnie Francaise d'Assurance pour le Commerce Exterieur (Coface)
151 O'Connor Street
Ottawa, ON  K1A 1K3
**Attention:    Jo-Ann Keech-Barker**

**AND TO:**   **TRAN, VUI**
118B Tran Phu Street, South
District 5
Ho Chi Minh City, Vietnam 0
**Attention:    Vui Tran**

**AND TO:**   **Trapeze Networks, Inc.**
5753 W. Las Positas Boulevard.
Pleasanton, CA  USA  94588
**Attention:    Sue Brent**

**AND TO:**   **GOLLOGLY, MICHAEL**
c/o Weir Foulds LLP
4100-66 Wellington Street W
PO Box 35 TD Centre
Toronto, ON  M5K 1B
**Attention:    Marie-Andree Vermette**

**AND TO:**   **ON BEHALF OF THE CLASS (LUCESCU V ZAFIROVSKI ET AL)**
c/o Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ  USA  07068
**Attention:    Michael S. Etkin, Esq.**

**AND TO:**   **UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
100 F Street, NE
Washington, DC  USA  20549
**Attention:    Vincente L. Martinex**

- 8 -

**AND TO:**    **UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
100 F Street, NE
Washington, DC  USA  20549
**Attention:**    **Nancy Burton**

**AND TO:**    **APEX LOGISTICS INC.**
Suite 100
100 Strowger Blvd
Brockville, ON  K6V 5J9
**Attention:**    **Jagmohan S. Chawla**

**AND TO:**    **GIE LES JEUNES BOIS**
c/o Lavery, de Billy LLP
1 Place Ville-Marie
Suite 4000
Montreal, QC  H3B 4M4
**Attention:**    **Jean-Yves Simard**

**AND TO:**    **ALBERTA FINANCE AND ENTERPRISE**
9811 109th Street
Edmonton, AB  T5K 2L5
**Attention:**    **Patti Hysert**

**AND TO:**    **CANADA REVENUE AGENCY**
5800 Hurontario Street
P.O. Box 6000
Mississauga, ON  L5A 4E9
**Attention:**    **Joan Henry**

**AND TO:**    **HER MAJESTY THE QUEEN IN RIGHT OF CANADA, AS
REPRESENTED BY THE MINISTER OF NATIONAL REVENUE**
c/o Department of Justice
Suite 3400, 130 King Street West
Toronto, ON  M5X 1K6
**Attention:**    **Diane Winters/Christopher Lee**

**AND TO:**    **MINISTERE DU REVENU DU QUEBEC**
1600, Rene-Levesque Ouest  3e estage, Secteur R23CPF
Montreal, QC  H3H 2V2
**Attention:**    **Josee Robillard**

**AND TO:**    **ONTARIO MINISTRY OF REVENUE**
33 King Street W.
6th Floor - Insolvency Unit
Oshawa, ON  L1H 8H5
**Attention:**    **Matt Nichols**

AND TO:   **CONTINUOUS COMPUTING CORPORATION**
9450 Carroll Park Drive
San Diego, CA  USA  92121
**Attention:   William R. Dow**

AND TO:   **CONVERGYS EMEA LIMITED**
c/o McInnes Cooper
P.O. Box 730
Halifax, NS  B3J 2V1
**Attention:   Stephen Kingston**

AND TO:   **CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, DC  USA  20004
**Attention:   James J. Regan**

AND TO:   **FRANCE TELECOM S.A.**
Direction Jurisdique/Contentieux-4G09
6 place d'Alleray
Paris Cedex 15, France  75505
**Attention:   Christian Augustin**

AND TO:   **MICROSOFT LICENSING, GP**
1001 Fourth Avenue
Suite 4500
Seattle, WA  USA  98154
**Attention:   Joseph E. Shickich, Jr**

AND TO:   **ORACLE CANADA ULC**
10 Van De Graaff
Burlington, MA  USA  01803
**Attention:   Michael Czulada**

AND TO:   **PEROT SYSTEMS CORPORATION**
2300 West Plano Parkway
Plano, Texas  USA  75075
**Attention:   Vicki Trogdon**

AND TO:   **QUALCOMM INCORPORATED**
5775 Morehouse Drive
San Diego, CA  USA  92121
**Attention:   Louis Racke**

AND TO:   **SANMINA-SCI CORPORATION**
2700 North First Street
San Jose, CA  USA  95134
**Attention:   Michael Tyler**

- 10 -

**AND TO:**     **SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY  USA  10022
**Attention:**     **William J.F. Roll, Esq.**

**AND TO:**     **SUN MICROSYSTEMS OF CANADA, INC.**
c/o Cassels Brock
2100 Scotia Plaza
40 King Street W
Toronto, ON  M5H 3C2
**Attention:**     **Michael Casey**

**AND TO:**     **SUN MICROSYSTEMS, INC.**
c/o Cassels Brock
2100 Scotia Plaza
40 King Street W
Toronto, ON  M5H 3C2
**Attention:**     **Michael Casey**

**AND TO:**     **SUN MICROSYSTEMS OF CANADA, INC.**
15 Network Circle
Menlo Park, CA  USA  94025
**Attention:**     **Cynthia Zamora**

**AND TO:**     **SUN MICROSYSTEMS, INC.**
15 Network Circle
Menlo Park, CA  USA  94025
**Attention:**     **Cynthia Zamora**

**AND TO:**     **TROP, PRUNER & HU, PC**
Suite 750
1616 S Voss Road
Houston, TX  USA  77057-2631
**Attention:**     **Dan C. Hu**

**AND TO:**     **VERINT AMERICAS INC.**
Suite 600
300 Colonial Center Parkway Roswell
GA, USA  30076
**Attention:**     **David Bertolino**

6472895

19

Court File No. 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION et al.

---

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

NOTICE OF MOTION
(Disposal of Records)
(returnable August 5, 2015)

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7
**Jay A. Carfagnini** LSUC# 22293T
jcarfagnini@goodmans.ca
**Joseph Pasquariello** LSUC# 38390C
jpasquariello@goodmans.ca
**Christopher G. Armstrong** LSUC# 55148B
carmstrong@goodmans.ca
Tel: 416.979.2211
Fax: 416.979.1234
Lawyers for the Monitor, Ernst & Young Inc.

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON M5X 1G5
**Derrick Tay** LSUC# 21152A
derrick.tay@gowlings.com
**Jennifer Stam** LSUC# 46735J
jennifer.stam@gowlings.com
Tel: 416.862.5697
Fax: 416.862.7661
Lawyers for the Canadian Debtors

6467828

# TAB 2

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**ONE HUNDRED AND EIGHTEENTH REPORT OF THE MONITOR**
**DATED JULY 14, 2015**

**INTRODUCTION**

1.  On January 14, 2009 (the **"Filing Date"**), Nortel Networks Corporation (**"NNC"** and collectively with all its subsidiaries **"Nortel"**), Nortel Networks Limited (**"NNL"**), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the **"Canadian Debtors"**) filed for and obtained protection under the *Companies' Creditors Arrangement Act* (**"CCAA"**). Pursuant to the Order of this Court dated January 14, 2009, as amended and restated (the **"Initial Order"**), Ernst & Young Inc. was appointed as the Monitor of the Canadian Debtors (the **"Monitor"**) in the CCAA proceedings.  The stay of proceedings was extended to October 2, 2015 by this Court in its Order dated March 11, 2015.

2.  Nortel Networks Inc. (**"NNI"**) and certain of its U.S. subsidiaries and affiliates concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the **"Code"**) in the United States Bankruptcy Court for the District of Delaware (the **"U.S. Court"**) on January 14, 2009 (the **"Chapter 11 Proceedings"**).  As required by U.S. law, an official committee of unsecured creditors (the **"Committee"**) was established in January, 2009.

3.    An ad hoc group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized and is participating in these proceedings as well as the Chapter 11 Proceedings (the "**Bondholder Group**").  In addition, pursuant to Orders of this Court, representative counsel was appointed on behalf of the former employees of the Canadian Debtors, the continuing employees of the Canadian Debtors and the LTD Beneficiaries (collectively, "**Representative Counsel**") and each of these groups is participating in the CCAA proceedings.

4.    Nortel Networks (CALA) Inc. ("**NN CALA**" and together with NNI and certain of its subsidiaries and affiliates that filed on January 14, 2009, the "**U.S. Debtors**") filed a voluntary petition under Chapter 11 of the Code in the U.S. Court on July 14, 2009.

5.    Nortel Networks UK Limited ("**NNUK**") and certain of its affiliates located in EMEA were granted administration orders (the "**UK Administration Orders**") by the High Court of England and Wales on January 14, 2009 (collectively the "**EMEA Debtors**").  The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as administrators of the various EMEA Applicants, except for Nortel Networks (Ireland) Limited, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively, the "**Joint Administrators**").

6.    Subsequent to the filing date, Nortel Networks S.A. ("**NNSA**") commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator and an administrator were appointed by the Versailles Commercial Court (the "**French Court**").

7.    The CCAA proceedings and the UK Administration proceedings of NNUK and the other EMEA Applicants have been recognized by the U.S. Court as foreign main proceedings under Chapter 15 of the Code.

8.    Subsequent to the Filing Date, certain other Nortel subsidiaries have filed for creditor protection or bankruptcy proceedings in the local jurisdiction in which they are located.

**PURPOSE**

9.    The purpose of this One Hundred and Eighteenth Report of the Monitor (the "**One Hundred and Eighteenth Report**") is to provide this Court with information in respect of the Monitor and Canadian Debtors' motion seeking approval of procedures relating to the disposal of certain of the Canadian Debtors' hard copy and electronic records and the media on which such electronic records are stored.

10.    NNC and NNL, as the holding company and primary operating company of the Nortel group, respectively, maintained records relating not only to the business and operations of the Canadian Debtors, but also to the Nortel group as a whole and its more than 100 subsidiary entities and joint ventures that existed as at the Filing Date.

11.    At present, the Canadian Debtors continue to maintain approximately 234 servers containing more than 100 terabytes of information together with more than 58,000 boxes of hardcopy records. In addition, the Canadian Debtors maintain thousands of media tapes and hard drives. The significant majority of these records pre-date the CCAA proceedings. For the most part, the Monitor has little information describing the content of these records and would be unable to identify and/or restore any specific information it was searching for without undue burden and expense (assuming such identification and restoration were even possible). The total cost to the Canadian Debtors incurred in connection with maintaining these records at present is approximately $1.8 million per annum.

12.    Given the advanced stage of these CCAA proceedings, including the wind-down of the Canadian Debtors' business operations, the sale of substantially all their assets, the completion of the trial phase of the Allocation and Claims Litigation (as defined below) and the resolution of most claims filed against the Canadian Debtors (by number), the Monitor is of the view that these costs are no longer justified in the circumstances of these proceedings and is proposing a procedure that would permit the Canadian Debtors to dispose of a significant portion of their hardcopy and electronic records and related information technology ("**IT**") infrastructure. Assuming such procedures are approved, the Monitor estimates initial cost savings to the Canadian Debtors to be approximately

$600,000 per annum. Approval of the procedures will also provide the Canadian Debtors with flexibility to manage their remaining IT infrastructure and potentially further reduce IT related costs on a go forward basis.

13.   Although the proposed procedures would result in the disposal of a significant portion of the Canadian Debtors' records, the Monitor has identified, and intends for the Canadian Debtors to maintain, certain records (both in hardcopy and electronic format) that may have continuing relevance to the Canadian Debtors and their stakeholders in the CCAA proceedings, including the Canadian Debtors' legal and tax files as well as their hard copy records placed in storage from and after January 1, 2008. Further, the Monitor is not proposing to destroy any of its own records, including copies of the Canadian Debtors records that are contained in its files. Finally, the more than five million documents collected or received by the Canadian Debtors in the Allocation and Claims Litigation will remain accessible. Accordingly, notwithstanding the proposed disposal procedures, a significant body of the Canadian Debtors' records will remain available to the Canadian Debtors and Monitor.

**TERMS OF REFERENCE**

14.   In preparing this One Hundred and Eighteenth Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with the Company.  The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of this information.  Unless otherwise stated, all monetary amounts contained herein are expressed in Canadian dollars.

15.   Capitalized terms not defined in this One Hundred and Eighteenth  Report are as defined in the Affidavit of John Doolittle sworn on January 14, 2009, the Pre-Filing Report or previous reports of the Monitor.  Capitalized terms relating to the Compensation Claims Process are as defined in the Compensation Claims Procedure Order.

16.   The Monitor has made various materials relating to the CCAA proceedings available on its website at www.ey.com/ca/nortel.  The Monitor's website also contains a dynamic link to

Epiq Bankruptcy LLC's website where materials relating to the Chapter 11 Proceedings are posted.

## STATUS OF THE CCAA PROCEEDINGS

*Asset Sales and Remaining Assets and Operations of the Canadian Debtors*

17. In June 2009, Nortel announced it was proceeding with discussions with various parties to sell its businesses and assess alternatives to maximize value to stakeholders. In the period from early 2009 through March 2011, the Canadian Debtors and certain of their affiliates entered into and completed the sale of all of Nortel's operating lines of business ("**LOB**") to various third party purchasers. In connection with the closing of the LOB sales, the relevant purchasers acquired and received much of the Nortel business information pertaining to such LOBs and the majority of Nortel's employees transferred to the purchasers.

18. Subsequent to the closing of each of the LOB sales, the Canadian Debtors and certain of their affiliates entered into transition services agreements ("**TSA**") with most of the purchasers to provide services to assist in transferring LOBs from Nortel to the particular purchasers. The services required to be performed by the Canadian Debtors' pursuant to the TSAs were substantially completed by September 2011.

19. In June 2011, NNC, NNL and certain of their affiliates completed the sale of the approximately 7,000 patents and patent applications (the "**Residual IP**") remaining following the conclusion of the LOB sales to Rockstar Bidco, LP.

20. In addition, in the period from mid-2009 through 2011, the Canadian Debtors completed the sale of substantially all of their other remaining assets, including NNL's interest in the LG-Nortel Co. Ltd. joint venture, the Carling campus in Ottawa (the "**Carling Campus**") and the Westwinds facility in Calgary.

21. At present, the remaining assets of the Canadian Debtors include a portion of the approximately 17 million legacy IPv4 addresses they have been marketing for sale pursuant

to an Order of this Court dated March 25, 2011. The Canadian Debtors have completed eight IP address transactions to date and continue to market their remaining IP addresses.

22.   The Canadian Debtors and Monitor also continue to work to wind-up the Canadian Debtors' controlled subsidiaries such that any intercompany receivables or equity value can be received by the Canadian Debtors for the benefit of their creditors.

23.   The LOB sales and the completion of TSA services resulted in the Canadian Debtors workforce being significantly reduced. At present, the Canadian Debtors employ only eight employees, most of whom are employed in connection with operating and maintaining the Canadian Debtors' remaining IT infrastructure.

*Allocation and Claims Litigation*

24.   By agreement of the relevant Nortel selling parties and as approved by this Court and the U.S. Court, the proceeds of sale of the LOBs and the Residual IP were placed into escrow pending agreement or determination of the allocation of such proceeds. Beginning in November 2010, the various Nortel estates attempted to resolve their disputes in respect of the allocation of the sale proceeds and also to resolve certain claims being advanced by the Trustee of the Nortel Networks UK Pension Trust Limited and the Board of the UK Pension Protection Fund (collectively, the "**UK Pension Claimants**") and the EMEA Debtors against, among others, the Canadian Debtors. After three formal mediation attempts, including a court ordered mediation, no resolution had been reached and the Canadian Debtors and U.S. Debtors sought court approval of a protocol to resolve the allocation dispute and the claims of the EMEA Debtors and the UK Pension Claimants (the "**Allocation Protocol**"). On March 8, 2013, this Court issued an order providing for a joint trial with the U.S. Court in respect of the allocation of the $7.3 billion of sale proceeds from the LOB and Residual IP sales (the "**Allocation Dispute**") and a Canadian only trial for the resolution of the claims of the UK Pension Claimants and the EMEA Debtors against the Canadian Debtors (collectively, with the Allocation Dispute, the "**Allocation and Claims Litigation**").

25. Through most of 2013 and 2014, the Allocation and Claims Litigation was the central focus of the Canadian Debtors and Monitor with the discovery process and trial preparation phase taking place during the period of April 2013 through April 2014, hearings taking place during the period of May through July 2014 and closing arguments being heard in late September and early October 2014.

26. The various claims filed by the EMEA Debtors against the Canadian Debtors were settled and resolved pursuant to the Agreement Settling EMEA Canadian Claims and Related Claims among, *inter alia*, the Canadian Debtors, Monitor and EMEA Debtors dated July 9, 2014, which settlement was approved by this Court on July 16, 2014. This Court issued its Reasons for Judgement in respect of the claims of the UK Pension Claimants on December 9, 2014. The UK Pension Claimants have been granted leave to appeal this judgement. A date for the hearing of the appeal has yet to be fixed.

27. On May 12, 2015, this Court and the U.S. Court released their respective decisions in respect of the Allocation Dispute, and on July 6, 2015, this Court and the U.S. Court issued their respective rulings in respect of certain reconsideration and clarification motions filed in respect of their Allocation Dispute decisions. As at the writing of this One Hundred and Eighteenth Report, one appeal had been taken from the U.S. Court's decisions in respect of the Allocation Dispute.

*Status of Claims Processes*

28. Pursuant to prior orders of this Court, various types of claims against the Canadian Debtors have been called for and barred and mechanisms established to resolve disputed claims.[1] Further, pursuant to prior Court-approved agreements, various other types of claims have been resolved.[2] In light of these orders and agreements, substantially all types of claims against the Canadian Debtors have been called for and barred or otherwise resolved except

---

[1] See: (i) Amended and Restated Claims Procedure Order dated July 30, 2009 (the "**Claims Procedure Order**"); (ii) Claims Resolution Order dated September 16, 2010; (iii) Compensation Claims Procedure Order dated October 6, 2011 (the "**Compensation Claims Procedure Order**"); (iv) EMEA Claims Procedure Order dated January 14, 2011; and (v) Intercompany Claims Procedure Order dated July 27, 2012.

[2] See: (i) Final Canadian Funding and Settlement Agreement dated December 23, 2009, approved January 21, 2010; (ii) Allocation Settlement Agreement (APAC/CALA) dated June 19, 2012, approved July 11, 2012; and (iii) Agreement Settling EMEA Canadian Claims and Related Claims dated July 9, 2014 and approved July 16, 2014.

- 8 -

for claims by Canadian Nortel entities (including the Canadian Debtors) against the Canadian Debtors.

29.    In the course of reviewing and considering the remaining unresolved claims, the Monitor and Canadian Debtors have conducted a   review of the Canadian Debtors' files in an attempt to identify records potentially relevant to the remaining unresolved claims. Such review has included a review of the Canadian Debtors' hard copy and electronic records that appear to relate to a particular claim based on the indices available.  Records identified in this review as potentially relevant will be preserved pending final resolution of the claim in question. The Canadian Debtors and Monitor have not conducted, and do not intend to conduct, a discovery-style review of the Canadian Debtors' records in an attempt to identify all records that may be relevant to a particular unresolved claim.[3]

## OVERVIEW OF CANADIAN DEBTORS' RECORDS RETENTION AND IT INFRASTRUCTURE

30.    Prior to the Filing Date, Nortel had established records management procedures relating to the retention of hard copy records and certain types of electronic records for the Canadian Debtors and their subsidiaries (the "**Nortel Records Management Procedures**"). The Nortel Records Management Procedures provided for the retention and disposal of various categories of hard copy and electronic records based upon many criteria, including the type of hard copy or electronic record, its date, its relevancy or lack thereof to ongoing business operations or litigation, as well as the period of time such record must be retained pursuant to relevant records retention laws.

31.    Subsequent to the Filing Date, the Canadian Debtors' normal course process of records destruction was suspended and destruction of records has only been done on a case by case basis. As a result, the Canadian Debtors continue to retain significant amounts of pre-2009 hard copy and electronic records that would have been disposed of in the normal course but for the commencement of these CCAA proceedings.

---

[3] The Canadian Debtors have conducted a fulsome discovery review and production process in respect of certain claims that are currently the subject of active litigation, including the claims of SNMPRI.

- 9 -

32.  With respect to electronic records, the Canadian Debtors are currently storing electronic records on approximately 234 servers as well as on hard drives and media tapes, most of which are located at a portion of the Carling Campus leased by NNL. The Canadian Debtors are also storing more than 58,000 boxes of hard copy records and media tapes at the Carling Campus and various Iron Mountain Canada storage sites across Canada. Further details in respect of the Canadian Debtors hardcopy records and servers are provided on Appendix "A" and "B" hereto.[4]

33.  The cost to the Canadian Debtors to maintain their servers and IT infrastructure, including but not limited to IT personnel and lease costs, together with third party records storage costs is approximately $1.8 million per annum.

34.  The substantial post–filing reduction in the Canadian Debtors' work force and office space has made it more difficult to organize, preserve and store their records. In particular, as a result of the work force reduction and loss of associated knowledge base of where particular records are located, the Monitor has little information to assist it in locating or identifying particular records aside from reviewing the limited indices available to it, including offsite storage records, computer directory listings and hardcopy file listings. As a result, there exists large quantities of both hard copy and electronic records where the Monitor has little if any information available to it in respect of the contents of such records, leaving no way to identify the contents of such records aside from a manual review or, in the case of certain electronic records, limited computer-run searches.

35.  As previously reported to the Court, NNL's lease of its remaining premises at the Carling Campus (where most of the Canadian Debtors' servers are located) has been extended for a one-year period until December 31, 2015 (which is already two years longer than the lease term originally agreed with the Government of Canada, the purchaser of the Carling Campus). NNL has no right of renewal under the lease and no guarantee the Government of Canada will agree to extend the lease beyond the end of 2015.[5] As a result of the

---

[4] Appendices "A" and "B" also indicate whether the Canadian Debtors propose to preserve or dispose of various types of records, as discussed in further detail below.
[5] As has been widely reported in the media, the Monitor understands the Government of Canada intends to consolidate a large part of the Department of National Defence's headquarters function at the Carling Campus and has being working to retrofit the Carling Campus to that end. Public Works and Government Services Canada has

uncertainty regarding the status of the Carling Campus lease as well as its cost (approximately $500,000 per annum), the Canadian Debtors and Monitor have been exploring and considering the options available to the Canadian Debtors in terms of housing and supporting their continuing IT infrastructure requirements. Implementation of the Disposal Procedures (as defined and discussed below) and the associated reduction in the Canadian Debtors' IT infrastructure will assist in providing the Canadian Debtors with maximum flexibility with respect to these matters moving forward.

## PROPOSED DISPOSAL OF CERTAIN RECORDS

### *Records to be Disposed of and Records to be Retained*

36.   In connection with considering ways to decrease the Canadian Debtors' ongoing expenses associated with records retention and storage, the Monitor has:

    a)   reviewed the available indices for the records and other items in storage at Iron Mountain Canada; and

    b)   reviewed with the Canadian Debtors' remaining IT personnel the remaining applications, programs and databases on the Canadian Debtors' servers and the required IT infrastructure to support them.

37.   Based on this review, the Canadian Debtors and Monitor believe they no longer have a need for a significant amount of the hardcopy and electronic records and associated media (collectively, the "**Records**") currently maintained by the Canadian Debtors for one or more of the following reasons:

    a)   the Records do not have any apparent relevance to unresolved matters in these CCAA proceedings;

    b)   the Records related to the pre-2008 timeframe;

    c)   the content of the Records is unascertainable based on the information reasonably available to the Monitor; and/or

---

previously announced a targeted first phase migration of personnel to the Carling Campus in late 2015.

d) based on discussions with the Canadian Debtors' IT personnel, it is unlikely the Records could be successfully searched or retrieved given the Canadian Debtors' current IT infrastructure.

38. In light of the foregoing, the Monitor believes it is fair and reasonable to implement procedures for the Canadian Debtors to dispose of certain Records such that the Canadian Debtors, and by extension their creditors, no longer have to bear a portion of the substantial costs associated with the preservation of such Records and have maximum flexibility moving forward to further reduce costs relating to their remaining IT infrastructure.

39. In particular, the Canadian Debtors propose to dispose of the following classes of Records:

a) *Remaining Media Tapes* – Based on discussion with the Canadian Debtors' IT personnel, the Monitor understands the remaining media tapes maintained by the Canadian Debtors (the "**Media Tapes**") consist primarily of a point in time system wide "snapshot" of Nortel's daily financial reporting system circa 2003 and regular daily system back-ups for the period from and after the year 2000. The Monitor understands these tapes have not been retrieved or accessed since the Filing Date and that it is highly unlikely the Canadian Debtors' remaining IT infrastructure could successfully restore the information contained on these tapes.

b) *Pre-2008 Hard Copy Documents* – the Canadian Debtors intend to dispose of all hard copy records stored at Iron Mountain with a receipt date prior to January 1, 2008, excluding records in boxes coded to the legal or tax departments and certain other records specified in paragraph 40.b), below.

c) *Electronic Records* – the Canadian Debtors intend to decommission the servers specified on Appendix "B" hereto under the heading "Servers to be Decommissioned" thereby disposing of the electronic records, applications and programs stored on such servers. The electronic records, applications and programs proposed to be disposed of include the Canadian Debtors' Livelink, Global Web and Shared Folders applications which functioned as the Canadian Debtors' main shared document management system, represent the Canadian

- 12 -

Debtors' largest electronic repositories of records and were the primary source for document production by the Canadian Debtors for the Allocation and Claims Litigation.

40.    The Canadian Debtors intend to preserve the following classes of Records:

a)    *Post-2008 Hard Copy Records and all Legal and Tax Hard Copy Records* – all hard copy records stored at Iron Mountain with a receipt date on or after January 1, 2008, and all hard copy records stored at Iron Mountain contained in boxes coded to the legal and tax departments.

b)    *Certain Additional Hard Copy Records* - the Monitor has reviewed a listing of the remaining boxes currently stored at Iron Mountain and has identified boxes containing records related to employees (including employee medical information), intellectual property and additional tax and legal information that may have ongoing relevance to matters at issue in the CCAA proceedings and will be retained. In addition, the records identified and retrieved in the Monitor's review described above at paragraph 29 will be maintained pending resolution of the claim in question. Further, approximately 4,000 boxes of hardcopy employee records will be transferred to Morneau Sheppell Ltd., the administrator of the Nortel Canadian registered pension plans.

c)    *Electronic Data* - The Canadian Debtors also propose to retain certain electronic records as summarized below:

(i)    Historical and current financial reporting systems (Oracle, SAP and Nav);

(ii)   Employee and human resources related information;

(iii)  Employee hard drives and hard drive backups;

(iv)   Legal file index (Law Record Management System);

(v)    media back-up tapes relating to the post-Filing Date period necessary in the event a system restoration of current information is required; and

- 13 -

> (vi)  the database of approximately five million documents collected and/or received by the Canadian Debtors in connection with the Allocation and Claims Litigation.

41.  In addition, as noted above, the Monitor is not proposing to dispose of any of its own records, including copies of the Canadian Debtors records that are in its files.

*Proposed Disposal Procedures*

42.  The Records disposal procedures proposed by the Canadian Debtors and Monitor (the "**Disposal Procedures**")[6] are designed to establish efficient procedures to:

> a)  permit stakeholders to request and access further information in respect of the Records proposed to be disposed of, subject to the execution of a confidentiality undertaking;

> b)  permit stakeholders to object to the disposal of Records by the Canadian Debtors by a specified objection bar date;

> c)  permit the Monitor to resolve objections without further hearing or notice, or to bring any unresolved objections to this Court for prompt resolution; and

> d)  permit the Canadian Debtors to dispose of the Records specified to be disposed of herein.

43.  The Disposal Procedures also provide that persons seeking to access or receive copies of the Records proposed to be disposed of, or seeking to cause the Canadian Debtors' to continue to retain such Records, shall bear any costs incurred by the Canadian Debtors as a result of any of the foregoing.

44.  Based on the Monitor's initial assessment, the proposed Disposal Procedures will enable the Canadian Debtors to:

---

[6] The following paragraphs provide a summary overview of the Disposal Procedures only. Reference should be made directly to the form of Order (Disposal of Documents and Other Records) included in the Canadian Debtors' and Monitor's motion record dated July 14, 2015 for a complete understanding of the Disposal Procedures.

    a)   reduce the number of boxes currently stored at Iron Mountain from more than 58,000 to approximately 12,000; and

    b)   reduce the Canadian Debtors' server footprint from approximately 234 servers to approximately 42 servers.

45. This in turn will assist the Canadian Debtors in their efforts to reduce ongoing costs associated with the retention of records and their IT infrastructure. As noted above, assuming approval of the Disposal Procedures and that substantially all of the Records proposed to be disposed of are disposed, the Monitor expects initial resulting cost savings for the Canadian Debtors of approximately $600,000 per annum. The reduction in the number of servers maintained by the Canadian Debtors will also provide them with greater optionality in managing their remaining IT infrastructure moving forward and potentially create the opportunity for further costs savings.

## MONITOR'S RECOMMENDATIONS

46. The Monitor has and continues to assist the Canadian Debtors in their efforts to efficiently realize maximum value from their remaining assets, advance the interests of the Canadian estate in the Allocation and Claims Litigation, wind down the Canadian Debtors' corporate, operational and IT infrastructure and conclude the claims processes for the purpose of preparing for a distribution to creditors.

47. The Monitor believes the proposed Disposal Procedures as outlined herein fairly balance the interests of the Canadian Debtors and their stakeholders in ensuring continued access to records potentially relevant to unresolved matters in these CCAA proceedings, while also permitting the Canadian Debtors to reduce their ongoing expenses associated with the retention and storage of records that have no apparent relevance to unresolved matters in these CCAA proceedings and/or the content of which cannot be readily ascertained. In addition, the proposed Disposal Procedures will provide the Canadian Debtors with flexibility to potentially reduce costs relating to their remaining IT infrastructure moving forward.

48. Accordingly, the Monitor supports approval of the proposed Disposal Procedures.

- 15 -

All of which is respectfully submitted this 14th day of July, 2015.


**ERNST & YOUNG INC.**
**in its capacity as Monitor of Nortel Networks Corporation et al.**
**and not its personal capacity**

Per:


Murray McDonald
President
6455163

**APPENDIX "A"**

**[ATTACHED]**

37

## Summary of Boxes

| | Boxes to Retain | Boxes to Dispose | To Be sent to Pension Administrator | Total Boxes at Iron Mountain / Carling |
|---|---|---|---|---|
| Legal Department | 6,806 | - | - | 6,806 |
| Tax | 1,068 | - | - | 1,068 |
| Media Tapes | - | 500 | - | 500 |
| Environmental | 88 | - | - | 88 |
| Medical Records / LTD / WCB | 1,508 | - | - | 1,508 |
| Employee / Pension Files | - | - | 4,084 | 4,084 |
| Other (CALA / China / M&A etc) | 208 | - | - | 208 |
| Post 1/1/2008 (not captured above) | 2,227 | - | - | 2,227 |
| Pre 1/1/2008 (not captured above) | 872 | 41,311 | - | 42,183 |
| | 12,777 | 41,811 | 4,084 | 58,672 |

**APPENDIX "B"**

**[ATTACHED]**

**Servers to be Retained**

| Department | Application | # Server | Content |
|---|---|---|---|
| Common / Shared | Shared folders (vault, others) | 6 | 1 Data files of various groups and departments<br>2 Departmental and personal files<br>3 Application data archives (*treasury, NAV invoices and backup, HR files, etc*) |
|  | DBR | 4 | Employee PC backups |
|  | NetID | 4 | IP address information |
|  | Physical servers for virtual machines | 5 |  |
| Finance | 1 Oracle 10 7<br>2 Oracle 11i | 2 | 10 7: Accounting system for for Asia South Pacific legal entities from 2000 - 2007<br><br>11i: Accounting sytem for Canada, US, Mexico, Colombia, and Brazil from 2001-2007 |
|  | ECMS |  | 1 Project accounting subledger between 1998-2011 for Canada, CALA, US, and certain APAC entities<br>2 Backup to transactions in Oracle |
|  | SAP BW, FT (incl Sabrix) | 4 | 1 Consolidated financials for 2007-2011<br>2 Business line reporting from 2000-2011<br>3 Accounting system for 2007-2011 for most company codes |
|  | AccuImage | 4 | Backup AP (invoices), AR (deposited cheque images), GL (journal entry), Tax, interco (invoices) from the early 2000's to 2011 |
|  | NAV | 3 | 1 Current accounting system for the Canadian estate<br>2 AP processing in Canada and Mexico |
|  | Gemini | 1 | 1 Intercompany subledger (2012-present)<br>2 SAP invoices that were unpaid at end of 2011 and pre-SAP balances |
|  | Navision Russia | 1 | Accounting records for NNL & UKA Russian legal entities |
|  | Restatement DB | 1 | Documentation related to restatement #2 |
| HR | BOXI (boxi front end + DARE, FIND, GPS) | 2 | HR Data (mainly 2007 - 2011, some pre-2007) |
|  | TAPPS | 1 | Canadian Payroll and Pension system 1990- 2007 |
| Legal | Electronic Minute Book | 1 | Corporate minute book/records for Nortel and all subsidiaries |
|  | Law Record Management System |  | Legal file index |
|  | LIT |  | Information about non-patent litigation |
| EMEA | Livelink & Vault | 2 | Data files and Livelink clone that relates to EMEA entities |
| **Total Servers to be Retained** |  | **41** |  |

**Servers to be Decommissioned**

| Department | Application | # Server | Content |
|---|---|---|---|
| Common / Shared | Global Web (incl search, imds, iweb etc) | 17 | Historical information from various departments |
|  | Livelink | 7 | Document management system used globally since early 2000's through 2012 Used to store/share documents |
| SNMP | Various Applications | 24 | Data related to SNMP searches per search protocol |
| IT Infrastructure | Various Applications | 81 | IT infrastructure applications required for operations at Carling |
| Various | Various Applications | 64 | Various redundant / obsolete applications |
| **Total Servers to be Decommissioned** |  | **193** |  |

| **Total Number of Servers** |  | **234** |  |

Court File No:  09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

40

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

ONE HUNDRED AND EIGHTEENTH REPORT
OF THE MONITOR DATED
JULY 14, 2015

GOODMANS LLP
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

Jay A. Carfagnini  (LSUC#: 22293T)
jcarfagnini@goodmans.ca
Joseph Pasquariello (LSUC# 38390C)
jpasquariello@goodmans.ca
Christopher G. Armstrong (LSUC# 55148B)
carmstrong@goodmans.ca

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

# TAB 3

File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE  HONOURABLE  MR.  JUSTICE | ) | WEDNESDAY, THE 5th DAY OF |
| | ) | |
| NEWBOULD | ) | AUGUST, 2015 |
| | ) | |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**ORDER**
**(Disposal of Records)**

**THIS MOTION** made by Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "**Canadian Debtors**") jointly with Ernst & Young Inc. in its capacity as monitor (the "**Monitor**") of the Canadian Debtors for the relief set out in the Notice of Motion dated July 14, 2015, was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the One Hundred and Eighteenth Report of the Monitor dated July 14, 2015 (the "**One Hundred and Eighteenth Report**"), and on hearing submissions of counsel for the Monitor, no one appearing for any other person on the service list or the other persons served with this motion although duly served as appears from the affidavit of ● sworn July ●, 2015, filed.

- 2 -

## SERVICE

1.    **THIS COURT ORDERS** that the time for the service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this motion is properly returnable today and hereby dispenses with further service thereof.

## DEFINITIONS

2.    **THIS COURT ORDERS** that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the One Hundred and Eighteenth Report.

3.    **THIS COURT ORDERS** that "**Persons**" as used herein includes any individual, sole proprietorship, limited or unlimited liability corporation, partnership, unincorporated association, unincorporated syndicate, unincorporated organization, body corporate, joint venture, trust, pension fund, union, governmental, regulatory or administrative authority, body, department, agency or ministry and any other juridical entity howsoever designated or constituted, including in any such person's capacity as trustee, heir, beneficiary, executor, administrator or other legal representative.

## DISPOSAL OF REMAINING MEDIA TAPES

4.    **THIS COURT ORDER** that, notwithstanding any Records Retention Laws (as such term is defined on Schedule "A" hereto) or any other provision hereof, the Canadian Debtors are authorized to dispose of all their remaining Media Tapes immediately upon issuance of this Order.

## REQUEST FOR FURTHER INFORMATION

5.    **THIS COURT ORDERS** that any Person (a "**Requesting Party**") may, by notice in writing to the Monitor in the form attached as Schedule "B" hereto received by the Monitor prior to the Objection Bar Date (as defined below), request further information in respect of any of the Records proposed to be disposed of, it being understood that neither the Canadian Debtors nor the Monitor shall have any obligation to conduct any review of the Records in responding to such request. Subject to the delivery to the Monitor of an executed confidentiality undertaking by the Requesting Party in the form

- 3 -

included in Schedule "B" hereto, the Monitor may provide the Requesting Party with such further information in respect of the relevant Records as it considers appropriate in the circumstances.

**OBJECTIONS**

6.  **THIS COURT ORDERS** that if any Person (an "**Objector**") objects to the Canadian Debtors' disposal of any of the Records, they must deliver an objection meeting the requirements of this paragraph 6 and paragraph 7 (an "**Objection**") to the Monitor in the form attached as Schedule "C" hereto by no later than 4:00 pm (Toronto time) on August 28, 2015 (the "**Objection Bar Date**").

7.  **THIS COURT ORDERS** that in order for an Objection to be considered by the Monitor it must: (i) be in writing; (ii) identify the Records subject to the Objection (the "**Disputed Records**") with sufficient particularity such that they can reasonably be isolated and accessed or copied by the Monitor; (iii) state the basis for the Objection, including, without limitation, the legal basis for the Canadian Debtors being required to preserve the Disputed Records and/or the legal basis for the Objector to be given access to the Disputed Records; (iv) provide a proposal to resolve the Objection to the satisfaction of the Objector; and (v) be received by the Monitor by the Objection Bar Date.

8.  **THIS COURT ORDERS** that any Person who does not deliver an Objection meeting the requirements of paragraphs 6 and 7 hereof to the Monitor on or before the Objection Bar Date shall be and is hereby forever barred from objecting to the disposal of any Records by the Canadian Debtors.

9.  **THIS COURT ORDERS** that that the Monitor shall review all Objections served that meet the requirements of paragraphs 6 and 7 hereof and may, in its sole discretion, resolve any Objection without further hearing or notice to any Person, including, without limitation, by: (i) providing an Objector with an opportunity to review the Disputed Records and/or to obtain copies of the Disputed Records; or (ii) the Canadian Debtors agreeing to preserve the Disputed Records on such terms as may be agreed among the Canadian Debtors, the Monitor and the Objector.

- 4 -

10.  **THIS COURT ORDERS** that in connection with the resolution of any Objection pursuant to paragraph 9 hereof the Objector shall, prior to receiving access to or copies of the Disputed Records (or any portion thereof) or prior to the implementation of any other resolution as may be agreed, and prior to the Canadian Debtors incurring any costs in connection with any of the foregoing, pay to the Canadian Debtors in full, as applicable: (i) all costs associated with providing the Objector with access to the Disputed Records or any portion thereof, including, without limitation, any cost associated with providing access at a particular location or through a particular electronic platform and any costs, including professional fees, incurred in connection with the Canadian Debtors or Monitor reviewing the Disputed Records or any portion thereof (including for privilege) prior to them being accessed by or provided to the Objector; (ii) all costs associated with making copies of the Disputed Records or any portion thereof; and (iii) all costs associated with preserving the Disputed Records or any portion thereof, including, without limitation, any physical or electronic storage costs. In the absence of the actual costs of the Canadian Debtors incurred or to be incurred in connection with the foregoing being known, the Monitor shall make a reasonable estimate of such costs and the Objector shall pay such estimated amount to the Canadian Debtors prior to receiving access to or copies of the Disputed Records (or any portion thereof) or prior to the implementation of any other resolution as may be agreed, and prior to the Canadian Debtors incurring any costs in connection with any of the foregoing.

**COURT RESOLUTION OF UNRESOLVED OBJECTIONS**

11.  **THIS COURT ORDERS** that any Objections that are unresolved as at September 18, 2015 shall be resolved by this Court at a hearing on October 5, 2015. In connection with such hearing, the Objector shall serve and file the materials it relies upon in support of its Objection (including its affidavit evidence, factum and book of authorities) by no later than 4:00 pm (Toronto time) on September 23, 2015.

- 5 -

**RECORDS DISPOSAL**

12.    **THIS COURT ORDERS** that, notwithstanding any Records Retention Laws:

    (a)    the Canadian Debtors and Monitor are authorized to dispose of all Records specified in paragraph 39 of the One Hundred and Eighteenth Report that are not Disputed Records immediately after the Objection Bar Date without further Order of this Court or notice to any Person; and

    (b)    the Canadian Debtors and Monitor are authorized to dispose of all Disputed Records following the implementation of any resolution(s) in respect of any Objection(s) relating to such Disputed Records without further Order of this Court or notice to any Person.

13.    **THIS COURT ORDERS** that the Canadian Debtors, the Monitor and their respective current and former directors, officers, employees, agents, lawyers, personal representatives and authorized representatives shall have no liability whatsoever arising from or relating to the disposal of the Media Tapes or any other Records pursuant to the terms of this Order.

**PIPEDA**

14.    **THIS COURT ORDERS** that, pursuant to clause 7(3)(c) of the *Canada Personal Information Protection and Electronic Documents Act*, the Canadian Debtors and Monitor are: (i) solely to the extent appropriate in the circumstances, authorized and permitted to disclose and transfer to an Objecting Party any personal information pertaining to the Canadian Debtors' past and current employees; and (ii) authorized and permitted to disclose and transfer to Morneau Shepell Ltd. any personal information pertaining to the Canadian Debtors' past and current employees. Any party receiving such information shall maintain and protect the privacy of such information and shall only be entitled to use the personal information provided to it in a manner permitted by law.

- 6 -

**MISCELLANEOUS**

15.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Canadian Debtors, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Canadian Debtors and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Canadian Debtors and the Monitor and their respective agents in carrying out the terms of this Order.

16.    **THIS COURT ORDERS** that each of the Canadian Debtors and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

_____

## SCHEDULE "A"

## RECORDS RETENTION LAWS

**"Records Retention Laws"** means:

1.  *Income Tax Act* (R.S.C., 1985, c. 1 (5th Supp));

2.  *Excise Tax Act* (R.S.C. 1985, c. E-15);

3.  *Corporations Tax Act* (R.S.O. 1990, Chapter C.40);

4.  *Retail Sales Tax Act* (R.S.O. 1990, Chapter R. 31);

5.  *Canada Business Corporations Act* (R.S.C., 1985, c. C-44);

6.  *Securities Act* (R.S.O. 1990, c. S.5);

7.  *Employment Insurance Act* (S.C. 1996, c. 23);

8.  *Employment Standards Act* (S.O. 2000, Chapter 41);

9.  *Canada Pension Plan* (R.S.C., 1985, c. C-8);

10. *Pension Benefits Act* (R.S.O. 1990, Chapter P.8);

11. *Bankruptcy and Insolvency Act* (R.S.C. 1985, c. B-3);

12. *Personal Health Information Protection Act* (S.O. 2004, Chapter 3, Schedule A);

13. *Workplace Safety and Insurance Act* (S.O. 1997, c. 16, Schedule A);

14. *Medicine Act* (S.O. 1991, c. 30);

15. *Personal Information Protection and Electronic Documents Act* (S.C. 2000, c. 5); and

16. Any other law, common law, statute, legislation, regulation, by-law, rule, decree, order, ordinance, protocol, code, guideline, policy, notice, direction, directive, bulletin, judgment or other requirement of any governmental, regulatory or administrative authority, department, agency, commission, board, panel, tribunal, Crown corporation, Crown ministry or court or other law, rule or regulation-making or enforcing entity having or purporting to have jurisdiction on behalf of any nation, or province, territory or state or other subdivision thereof or any municipality, district or other subdivision thereof (collectively, **"Legislation"**) that requires the preservation of records, documents, information or data, in whatever form, including, without limitation, the regulations promulgated under the Legislation specified in items 1 through 15 hereof and any Legislation of any jurisdiction, province, territory or municipality of Canada similar to the Legislation specified in items 1 through 15 hereof.

## SCHEDULE "B"

## FORM OF FURTHER INFORMATION REQUEST FORM

## [ATTACHED]

# FURTHER INFORMATION REQUEST FORM

| Requesting Party[1] Identification | | | |
|---|---|---|---|
| Name of Requesting Party: | | | Name of Contact: |
| Address: | | | Phone #: |
| | | | Fax #: |
| City: | Prov / State: | Postal / Zip Code | E-mail: |

**Description of Records proposed to be disposed of that Requesting Party seeks further information in respect of:[2]**

<br><br>

**Reason for requesting such further information:**

<br><br>

**Confidentiality Undertaking**

In consideration of the Canadian Debtors and the Monitor agreeing to provide any information in respect of the further information requested hereby, the Requesting Party hereby agrees with the Canadian Debtors and the Monitor to keep any and all information (whether in written, electronic or other form and whether or not identified as confidential at the time of disclosure) provided to it pursuant to the terms of the Order (collectively, the "**Provided Information**") strictly confidential and the Requesting Party further agrees not to: (i) disclose any Provided Information to any other person or otherwise make such Provided Information available to any other person; and (ii) use the Provided Information for any purpose or in any manner other than in connection with considering the Requesting Party's position in respect of the Disposal Procedures or any other matter contemplated by the Order, in each case without the prior written consent of the Canadian Debtors and the Monitor.

| Signature | Name: |
|---|---|
| | Title: |
| Date: | Signed at: |

**Delivery of Request Form**

**This Request Form must be received by the Monitor by no later than <u>4:00 p.m. (Toronto time) on August 28, 2015</u>, by prepaid ordinary mail, courier, personal delivery, facsimile or electronic or digital transmission at the following address:**

| | | |
|---|---|---|
| Ernst & Young Inc. in its capacity as Court appointed Monitor of Nortel Networks Corporation *et al.*<br>222 Bay Street, Suite 1600<br>Toronto-Dominion Centre<br>Toronto, ON<br>Canada  M5K 1J7 | **With a copy to:** | Goodmans LLP<br>Bay Adelaide Centre<br>333 Bay Street, Suite 3400<br>Toronto, Ontario<br>Canada M5H 2S7 |
| Attention: Edmund Yau<br>E-mail: Nortel.monitor@ca.ey.com<br>Fax: 416-943-2808 | | Attention: Ryan Baulke<br>E-mail: rbaulke@goodmans.ca<br>Fax: 416-979-1234 |

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Order of the Ontario Superior Court of Justice (Commercial List) dated August 5, 2015 (the "**Order**").

[2] If additional space is required, please provide additional information as a schedule attached to this form.

**SCHEDULE "C"**

**FORM OF OBJECTION**

**[ATTACHED]**

# OBJECTION FORM

| Objector[1] Identification | | | |
|---|---|---|---|
| Name of Objector: | | | Name of Contact: |
| Address: | | | Phone #: |
| | | | Fax #: |
| City: | Prov / State: | Postal / Zip Code | E-mail: |

**Description of Disputed Records:[2]**

**Basis for Objection (including, without limitation, the legal basis for the Canadian Debtors being required to preserve the Disputed Records and/or the legal basis for the Objector to be given access to the Disputed Records):**

**Objector's proposal to resolve the Objection:**

| Signature | Name: |
|---|---|
| | Title: |
| Date: | Signed at: |

**Delivery of Objection Form**

**This Objection Form must be received by the Monitor by no later than <u>4:00 p.m. (Toronto time) on August 28, 2015</u>, by prepaid ordinary mail, courier, personal delivery, facsimile or electronic or digital transmission at the following address:**

| | | |
|---|---|---|
| Ernst & Young Inc. in its capacity as Court appointed Monitor of Nortel Networks Corporation *et al.*<br>222 Bay Street, Suite 1600<br>Toronto-Dominion Centre<br>Toronto, ON<br>Canada  M5K 1J7<br><br>Attention: Edmund Yau<br>E-mail: Nortel.monitor@ca.ey.com<br>Fax: 416-943-2808 | **With a copy to:** | Goodmans LLP<br>Bay Adelaide Centre<br>333 Bay Street, Suite 3400<br>Toronto, Ontario<br>Canada M5H 2S7<br><br>Attention: Ryan Baulke<br>E-mail: rbaulke@goodmans.ca<br>Fax: 416-979-1234 |

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Order of the Ontario Superior Court of Justice (Commercial List) dated August 5, 2015 (the "**Order**").

[2] If additional space is required, please provide additional information as a schedule attached to this form.

Court File No. 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED*
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION et al.

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

---

**ORDER**
**(Disposal of Records)**

---

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7
**Jay A. Carfagnini** LSUC#: 22293T
**Joseph Pasquariello** LSUC# 38390C
**Christopher G. Armstrong** LSUC# 55148B
Tel: 416.979.2211
Fax: 416.979.1234
Lawyers for the Monitor, Ernst & Young Inc.

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON  M5X 1G5
**Derrick Tay**  (LSUC#: 21152A)
**Jennifer Stam**  (LSUC#: 46735J)
Tel:  416.862.5697
Fax:  416.862.7661
Lawyers for the Canadian Debtors

6472511

Court File No. 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION *et al.*

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

MOTION RECORD OF THE MONITOR AND
CANADIAN DEBTORS
(Disposal of Records)
(returnable August 5, 2015)

**GOODMANS LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7
**Jay A. Carfagnini** LSUC#: 22293T
jcarfagnini@goodmans.ca
**Joseph Pasquariello** LSUC#: 38390C
jpasquariello@goodmans.ca
**Christopher G. Armstrong** LSUC#: 55148B
carmstrong@goodmans.ca
Tel: 416.979.2211
Fax: 416.979.1234
Lawyers for the Monitor, Ernst & Young Inc.

**GOWLING LAFLEUR HENDERSON LLP**
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON  M5X 1G5
**Derrick Tay** LSUC#: 21152A
derrick.tay@gowlings.com
**Jennifer Stam** LSUC#: 46735J
jennifer.stam@gowlings.com
Tel:  416.862.5697
Fax:  416.862.7661
Lawyers for the Canadian Debtors

6472617