**Exhibit A**

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**FACTUM OF NORTEL NETWORKS INC.**
**AND THE OTHER U.S. DEBTORS**
**(Records Disposal Motion)**

Date:  August 25, 2015

**TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, ON  M5K 1N2

Fax:  416.865.7380

**Sheila Block** (LSUC#: 14089N)
Tel: 416.865.7319
Email: sblock@torys.com

**Scott A. Bomhof** (LSUC#: 37006F)
Tel: 416.865.7370
Email: sbomhof@torys.com

**Andrew Gray** (LSUC#: 46626V)
Tel: 416.865.7630
Email: agray@torys.com

**Adam M. Slavens** (LSUC#: 54433J)
Tel: 416.865.7333
Email: aslavens@torys.com

Lawyers for Nortel Networks Inc.
and the other U.S. Debtors

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**FACTUM OF NORTEL NETWORKS INC.
AND THE OTHER U.S. DEBTORS
(Records Disposal Motion)**

**Overview**

1.      This Factum is filed by Nortel Networks Inc. and its affiliated debtors[1] (collectively, the "U.S. Debtors") in connection with the motion filed jointly by the Canadian Debtors[2] and the Monitor[3] for an order, among other things, approving procedures to permit the disposal of certain hard copy and electronic records and the media on which such electronic records are stored (such motion, the "Records Disposal Motion", and such procedures, the "Records Disposal Procedures").

---

[1] The U.S. Debtors are Nortel Networks Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc.

[2] The Canadian Debtors are Nortel Networks Corporation,  Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3] The Monitor is Ernst & Young Inc., in its capacity as monitor of the Canadian Debtors.

2.      The purpose of this Factum is to:

    (1)      provide an update on the discussions regarding the Records Disposal Procedures that have been held among the U.S. Debtors, the Monitor and other interested parties; and

    (2)      reserve certain of the rights of the U.S. Debtors with respect to the subject matter of the Records Disposal Motion, as described below.

**Records Disposal Motion and Notice of Joint Hearing Dispute**

3.      On July 14, 2015, the Canadian Debtors and the Monitor filed the Records Disposal Motion solely with this Court.[4]  Given the provisions of the Cross-Border Insolvency Protocol[5], including, *inter alia*, sections 12 and 15 thereof, and the subject matter of the Records Disposal Motion that, *inter alia*, implicates the automatic stay in the U.S. Debtors' cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, it is the position of the U.S. Debtors that the Records Disposal Motion should properly proceed by way of a joint hearing of this Court and the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court", and, together with this Court, the "Courts").[6]  The Monitor, at paragraph 10 of the One Hundred and Eighteenth Report of the Monitor, dated July 14, 2015, has acknowledged that the records that are the subject to the Records Disposal Motion include records belonging not just to the Canadian Debtors, but to all of the Nortel entities, including the U.S. Debtors.[7]

4.      On July 24, 2015, and July 27, 2015, the U.S. Debtors made formal requests pursuant to the Cross-Border Insolvency Protocol that the Records Disposal Motion proceed by way of a joint hearing of the Courts.[8]  The Monitor did not consent to these requests.

5.      Therefore, pursuant to the Cross-Border Insolvency Protocol, the U.S. Debtors filed Notices of Joint Hearing Dispute in connection with the Records Disposal Motion on July 29, 2015, with the Courts.[9]

---

[4] Motion Record of the Monitor and Canadian Debtors (Disposal of Records) dated July 14, 2015.

[5] A copy of the Cross-Border Insolvency Protocol is attached hereto at Schedule "A".

[6] Cross-Border Insolvency Protocol, ss. 12 and 15, Schedule "A".

[7] One Hundred and Eighteenth Report of the Monitor dated July 14, 2015, para. 10, Motion Record of the Monitor and Canadian Debtors (Disposal of Records) dated July 14, 2015, at Tab 2.

[8] Cross-Border Insolvency Protocol, s. 15(b), Schedule "A".

[9] Cross-Border Insolvency Protocol, s. 15(d), Schedule "A".

- 3 -

**Discussions Regarding Records Disposal Procedures and Reservation of Rights**

6.    Beginning on August 4, 2015, the U.S. Debtors, the Monitor and other interested parties engaged in constructive discussions regarding the Records Disposal Procedures.  These discussions have culminated in an agreement among the Canadian Debtors, the Monitor and the U.S. Debtors that addresses the concerns of the U.S. Debtors in respect of the Records Disposal Procedures, which agreement is described below.  On the basis of the following points of agreement (and subject to their reflection in either the access agreement and/or the Court order, as the case may be), the U.S. Debtors do not oppose the approval of the Records Disposal Procedures:

(1)    *Access Agreement*.  The Canadian Debtors and Monitor are in the process of negotiating an access agreement with Morneau Sheppell Ltd., the administrator of the Canadian Nortel registered pension plans, to ensure their continuing access to the 4,000 boxes stored at Iron Mountain that are to be transferred from the Canadian Debtors to Morneau Sheppell Ltd.  The Monitor has agreed to make the U.S. Debtors parties to such agreement and the U.S. Debtors will be provided with access to the stored boxes by requesting such access from the Canadian Debtors and Monitor, with the Canadian Debtors and Monitor, in turn, coordinating such requests with Morneau Sheppell Ltd. pursuant to the proposed access agreement.  The access agreement will:  (a) provide the U.S. Debtors with access to, and copies of, records of former U.S. Debtor employees and any Nortel employee asserting a claim against a U.S. Debtor; and (b) neither prejudice the rights of other parties, including, *inter alia*, the UCC, to receive access to such records in the same manner that they currently receive access to such records nor limit or restrict the ability of any party, including, *inter alia*, the UCC, to request such transferred documents.  The Monitor has also agreed to the following additional procedures that are to be reflected in the provisions of the Court order in respect of the Records Disposal Motion: (a) the transfer of the employee files to Morneau Sheppell Ltd. is subject to the execution of the access agreement in a form that is satisfactory to the U.S. Debtors; (b) in the event that the access agreement is not executed prior to the objection hearing to be held in respect of the Document Disposal Motion, the U.S. Debtors reserve their rights to seek relief on this point at such hearing; and (c) the transfer of the stored boxes to Morneau Sheppell Ltd. is without prejudice to the rights of the U.S. Debtors to obtain such documents for any litigation in these proceedings (where such rights and defenses of the Canadian Debtors shall continue as they exist today).

(2)    *Cut-off Date for Hard Copy Documents*.  The Canadian Debtors and Monitor have agreed to extend the retention cut-off date for hard copy records stored at Iron Mountain to January 1, 2003, and retain hard copy documents through the earlier of December 31, 2017, or the termination of these proceedings.  The U.S. Debtors hereby reserve their rights to make future arguments on this point prior to such date.

- 4 -

7.      On the basis of the points of agreement described above, the U.S. Debtors have agreed to withdraw their request that the August 26, 2015, hearing on the Records Disposal Procedures be heard as a joint hearing with the Bankruptcy Court.  The U.S. Debtors hope that further recourse to the Courts will be unnecessary (except as otherwise provided for in the points of agreement described above).  However, to the extent required, the U.S. Debtors hereby reserve the rights to seek relief from the Courts with respect to any issues that may arise in connection with the points of agreement described above and the Records Disposal Procedures.  Furthermore, the U.S. Debtors reserve the right to request a joint hearing of the Courts, as permitted by the Cross-Border Insolvency Protocol, in respect of any such issues.

ALL OF WHICH IS RESPECTFULLY SUBMITTED

_____

Lawyers for Nortel Networks Inc. and the other U.S. Debtors

## SCHEDULE A

## CROSS-BORDER INSOLVENCY PROTOCOL

## CROSS-BORDER INSOLVENCY PROTOCOL

This cross-border insolvency protocol (the "Protocol") shall govern the conduct of all parties in interest in the Insolvency Proceedings (as such term is defined herein).

The Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases (the "Guidelines") attached as Schedule "A" hereto, shall be incorporated by reference and form part of this Protocol. Where there is any discrepancy between the Protocol and the Guidelines, this Protocol shall prevail.

A.    Background

1.    Nortel Networks Inc. ("NNI") is the wholly owned U.S. subsidiary of Nortel Networks Limited ("NNL"), the principal Canadian operating subsidiary of Nortel Networks Corporation ("NNC"). NNC is a telecommunications company headquartered in Toronto, Ontario, Canada. NNI is incorporated under Delaware law and is headquartered in Richardson, Texas.

2.    NNI and certain of its affiliates (collectively, the "U.S. Debtors"),[1] have commenced reorganization proceedings (the "U.S. Proceedings") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court"), and such cases have been consolidated (for procedural purposes only) under Case No. 09-10138 (KG). The U.S. Debtors are continuing in possession of their respective properties and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the U.S. Proceedings. On January 22, 2009,

---

[1]    The Debtors in the U.S. Proceedings (as defined herein) are: NNI, Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., XROS, Inc., Sonoma Systems, QTERA Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc. and Nortel Networks Cable Solutions Inc.

the Office of United States Trustee (the "U.S. Trustee") appointed an official committee of

unsecured creditors (the "Creditors Committee") in the U.S. Proceeding. An ad hoc committee

of bondholders (the "Bondholders Committee") has also been organized.

       3.      On January 14, 2009, the U.S. Debtors' ultimate corporate parent NNC,

NNI's direct corporate parent NNL (together with NNC and their affiliates, including the U.S.

Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian

Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court")

under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from

their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors have obtained

an initial order of the Canadian Court (as amended and restated, the "Canadian Order"), under

which, inter alia: (a) the Canadian Debtors have been determined to be entitled to relief under

the CCAA; (b) Ernst & Young Inc. has been appointed as monitor (the "Monitor") of the

Canadian Debtors, with the rights, powers, duties and limitations upon liabilities set forth in the

CCAA and the Canadian Order; and (c) a stay of proceedings in respect of the Canadian Debtors

has been granted.

       4.      The Monitor filed petitions and obtained an order in the U.S. Court

granting recognition of the Canadian Proceedings under chapter 15 of the Bankruptcy Code (the

"Chapter 15 Proceedings"). NNI also filed an application and obtained an order in the Canadian

Court pursuant to section 18.6 of the CCAA recognizing the U.S. Proceedings as "foreign

proceedings" in Canada and giving effect to the automatic stay thereunder in Canada. None of

the U.S. Debtors or Canadian Debtors are applicants in both the U.S. Proceedings and Canadian

Proceedings.

---

[2]   The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

5.      For convenience, (a) the U.S. Debtors and the Canadian Debtors shall be referred to herein collectively as the "Debtors," (b) the U.S. Proceedings and the Canadian Proceedings shall be referred to herein collectively as the "Insolvency Proceedings," and (c) the U.S. Court and the Canadian Court shall be referred to herein collectively as the "Courts", and each individually as a "Court."

**B.      Purpose and Goals**

6.      Though full and separate plenary proceedings are pending in the United States for the U.S. Debtors and in Canada for the Canadian Debtors, the implementation of administrative procedures and cross-border guidelines is both necessary and desirable to coordinate certain activities in the Insolvency Proceedings, protect the rights of parties thereto, ensure the maintenance of the Courts' respective independent jurisdiction and give effect to the doctrines of comity.  Accordingly, this Protocol has been developed to promote the following mutually desirable goals and objectives in the Insolvency Proceedings:

a.      harmonize and coordinate activities in the Insolvency Proceedings before the Courts;

b.      promote the orderly and efficient administration of the Insolvency Proceedings to, among other things, maximize the efficiency of the Insolvency Proceedings, reduce the costs associated therewith and avoid duplication of effort;

c.      honor the independence and integrity of the Courts and other courts and tribunals of the United States and Canada, respectively;

d.      promote international cooperation and respect for comity among the Courts, the Debtors, the Creditors Committee, the Estate Representatives (which include the Chapter 11 Representatives and the Canadian Representatives as such terms are defined below) and other creditors and interested parties in the Insolvency Proceedings;

e.      facilitate the fair, open and efficient administration of the Insolvency Proceedings for the benefit of all of the Debtors' creditors and other interested parties, wherever located; and

4

      f.      implement a framework of general principles to address basic administrative issues arising out of the cross-border nature of the Insolvency Proceedings.

As the Insolvency Proceedings progress, the Courts may also jointly determine that other cross-border matters that may arise in the Insolvency Proceedings should be dealt with under and in accordance with the principles of this Protocol. Subject to the provisions of this Protocol, including, without limitation, those included in paragraph 15 hereof, where an issue is to be addressed only to one Court, in rendering a determination in any cross-border matter, such Court may: (a) to the extent practical or advisable, consult with the other Court; and (b) in its sole discretion and bearing in mind the principles of comity, either (i) render a binding decision after such consultation; (ii) defer to the determination of the other Court by transferring the matter, in whole or in part to the other Court; or (iii) seek a joint hearing of both Courts.

**C.    Comity and Independence of the Courts**

      7.      The approval and implementation of this Protocol shall not divest nor diminish the U.S. Court's and the Canadian Court's respective independent jurisdiction over the subject matter of the U.S. Proceedings and the Canadian Proceedings, respectively. By approving and implementing this Protocol, neither the U.S. Court, the Canadian Court, the Debtors nor any creditors or interested parties shall be deemed to have approved or engaged in any infringement on the sovereignty of the United States of America or Canada.

      8.      The U.S. Court shall have sole and exclusive jurisdiction and power over the conduct of the U.S. Proceedings and the hearing and determination of matters arising in the U.S. Proceedings. The Canadian Court shall have sole and exclusive jurisdiction and power over the conduct of the Canadian Proceedings and the hearing and determination of matters arising in the Canadian Proceedings.

5

9.     In accordance with the principles of comity and independence recognized herein, nothing contained herein shall be construed to:

a.     increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the U.S. Court, the Canadian Court or any other court or tribunal in the United States or Canada, including the ability of any such court or tribunal to provide appropriate relief on an ex parte or "limited notice" basis to the extent permitted under applicable law;

b.     require the U.S. Court to take any action that is inconsistent with its obligations under the laws of the United States;

c.     require the Canadian Court to take any action that is inconsistent with its obligations under the laws of Canada;

d.     require the Debtors, the Creditors Committee, the Estate Representatives or the U.S. Trustee to take any action or refrain from taking any action that would result in a breach of any duty imposed on them by any applicable law;

e.     authorize any action that requires the specific approval of one or both of the Courts under the Bankruptcy Code or the CCAA after appropriate notice and a hearing (except to the extent that such action is specifically described in this Protocol); or

f.     preclude the Debtors, the Creditors Committee, the Monitor, the U.S. Trustee, any creditor or other interested party from asserting such party's substantive rights under the applicable laws of the United States, Canada or any other relevant jurisdiction including, without limitation, the rights of parties in interest to appeal from the decisions taken by one or both of the Courts.

10.    The Debtors, the Creditors Committee, the Estate Representatives and their respective employees, members, agents and professionals shall respect and comply with the independent, non-delegable duties imposed upon them, if any, by the Bankruptcy Code, the CCAA, the Canadian Order and other applicable laws.

**D.     Cooperation**

11.    To assist in the efficient administration of the Insolvency Proceedings and in recognizing that the U.S. Debtors and Canadian Debtors may be creditors of the others'

6

estates, the Debtors and their respective Estate Representatives shall, where appropriate:  (a) cooperate with each other in connection with actions taken in both the U.S. Court and the Canadian Court and (b) take any other appropriate steps to coordinate the administration of the Insolvency Proceedings for the benefit of the Debtors' respective estates.

12.      To harmonize and coordinate the administration of the Insolvency Proceedings, the U.S. Court and the Canadian Court each may coordinate activities and consider whether it is appropriate to defer to the judgment of the other Court.  In furtherance of the foregoing:

a.      The U.S. Court and the Canadian Court may communicate with one another, with or without counsel present, with respect to any procedural matter relating to the Insolvency Proceedings.

b.      Where the issue of the proper jurisdiction of either Court to determine an issue is raised by an interested party in either of the Insolvency Proceedings with respect to a motion or application filed in either Court, the Court before which such motion or application was initially filed may contact the other Court to determine an appropriate process by which the issue of jurisdiction will be determined; which process shall be subject to submissions by the Debtors, the Creditors Committee, the Monitor, the Bondholders Committee (collectively the "Core Parties"), the U.S. Trustee and any interested party prior to a determination on the issue of jurisdiction being made by either Court.

c.      The Courts may, but are not obligated to, coordinate activities in the Insolvency Proceedings such that the subject matter of any particular action, suit, request, application, contested matter or other proceeding is determined in a single Court.

d.      The U.S. Court and the Canadian Court may conduct joint hearings (each a "Joint Hearing") with respect to any cross-border matter or the interpretation or implementation of this Protocol where both the U.S. Court and the Canadian Court consider such a Joint Hearing to be necessary or advisable, or as otherwise provided herein, to, among other things, facilitate or coordinate proper and efficient conduct of the Insolvency Proceedings or the resolution of any particular issue in the Insolvency Proceedings.  With respect to any Joint Hearing, unless otherwise ordered, the following procedures will be followed:

(i)    A telephone or video link shall be established so that both the U.S. Court and the Canadian Court shall be able to simultaneously hear and/or view the proceedings in the other Court.

(ii)    Submissions or applications by any party that are or become the subject of a Joint Hearing (collectively, "Pleadings") shall be made or filed initially only to the Court in which such party is appearing and seeking relief.  Promptly after the scheduling of any Joint Hearing, the party submitting such Pleadings to one Court shall file courtesy copies with the other Court.  In any event, Pleadings seeking relief from both Courts shall be filed in advance of the Joint Hearing with both Courts.

(iii)    Any party intending to rely on any written evidentiary materials in support of a submission to the U.S. Court or the Canadian Court in connection with any Joint Hearing (collectively, "Evidentiary Materials") shall file or otherwise submit such materials to both Courts in advance of the Joint Hearing.  To the fullest extent possible, the Evidentiary Materials filed in each Court shall be identical and shall be consistent with the procedural and evidentiary rules and requirements of each Court.

(iv)    If a party has not previously appeared in or attorned or does not wish to attorn to the jurisdiction of a Court, it shall be entitled to file Pleadings or Evidentiary Materials in connection with the Joint Hearing without, by the mere act of such filings, being deemed to have appeared in or attorned to the jurisdiction of such Court in which such material is filed, so long as such party does not request any affirmative relief from such Court.

(v)    The Judge of the U.S. Court and the Justice of the Canadian Court who will preside over the Joint Hearing shall be entitled to communicate with each other in advance of any Joint Hearing, with or without counsel being present, (1) to establish guidelines for the orderly submission of Pleadings, Evidentiary Materials and other papers and for the rendering of decisions by the Courts; and (2) to address any related procedural, administrative or preliminary matters.

(vi)    The Judge of the U.S. Court and the Justice of the Canadian Court, shall be entitled to communicate with each other during or after any joint hearing, with or without counsel present, for the purposes of (1) determining whether consistent rulings can be made by both Courts; (2) coordinating the terms upon of the Courts' respective rulings; and (3) addressing any other procedural or administrative matters.

8

13.     Notwithstanding the terms of the paragraph 12 above, this Protocol recognizes that the U.S. Court and the Canadian Court are independent courts. Accordingly, although the Courts will seek to cooperate and coordinate with each other in good faith, each of the Courts shall be entitled at all times to exercise its independent jurisdiction and authority with respect to: (a) the conduct of the parties appearing in matters presented to such Court; and (b) matters presented to such Court, including, without limitation, the right to determine if matters are properly before such Court.

14.     Where one Court has jurisdiction over a matter which requires the application of the law of the jurisdiction of the other Court, such Court may, without limitation, hear expert evidence of such law or, subject to paragraph 15 herein, seek the written advice and direction of the other Court which advice may in the discretion of the receiving Court, be made available to parties in interest.

15.     Notwithstanding anything to the contrary herein contained, to the extent any motion is filed or relief is sought (collectively, "Requested Relief") in either Court relating to: (i) the proposed sale of assets for gross proceeds in excess of U.S. $30 million and where at least one U.S. Debtor and one Canadian Debtor are parties to the related sale agreement or that involves assets owned by at least one U.S. Debtor and one Canadian Debtor; (ii) any motion to allocate sale proceeds which are in the aggregate more than U.S. $30 million and where at least one U.S. Debtor and one Canadian Debtor are parties to the related sale agreement or that involves assets owned by at least one U.S. Debtor and one Canadian Debtor; (iii) matters relating to the advanced pricing agreement involving both the United States and Canadian taxing authorities; (iv) matters regarding transfer pricing methodology relating to an obligation for the transfer of goods and services between one or more U.S. Debtors and one or more Canadian

9

Debtors; (v) any matter relating to alleged fraudulent conveyance or preference claims in excess

of U.S. $30 million and which may have a material impact on both one or more U.S. Debtors and

one or more Canadian Debtors; (vi) matters relating to any proposal or approval of a disclosure

statement, information circular, plan of reorganization or plan of compromise and arrangements

in either the U.S. Proceedings or the Canadian Proceedings; (vii) any motion to appoint a Trustee

or Examiner in the U.S. Proceedings, any motion to convert the U.S. Proceedings to a Chapter 7

proceeding, any motion to appoint a Receiver in the Canadian Proceedings, or any motion to

convert the Canadian Proceedings to a bankruptcy or proposal proceeding under the Bankruptcy

and Insolvency Act (Canada); (viii) any motion to substantively consolidate the Debtors' estates;

(ix) matters impacting the material tax attributes of the U.S. Debtors, including the net operating

losses of the U.S. Debtors in any prior fiscal year; (x) any motion to amend the terms of any of

the Debtors' registered pension plans the effect of which would increase the liability of any

Debtor thereunder; (xi) any motion to assume, ratify, reject, repudiate, modify or assign

executory contracts having a material impact on the assets, operations, obligations, rights,

property or business of both the U.S. and Canadian estates and accounting for annual gross

revenue in excess of U.S. $30 million ("Material Contracts"); (xii) any motion seeking relief

from the automatic stay in the U.S. Proceedings and/or the stay of proceedings in the Canadian

Proceedings (1) involving any Material Contract or (2) to pursue actions having a material

impact on the assets, operations, obligations, rights, property or business of at least one U.S.

Debtor and one Canadian Debtor and involving damages in excess of U.S. $30 million; (xiii) any

motion seeking to create or extend any program, plan, proposal or scheme relating to or

authorizing payments to employees where the consideration relates to non-ordinary course

incentive performance, retention, severance, termination or such like payments; and (xiv) any

10

motion regarding any program, plan proposal, scheme or similar course of action related to the

wind-down of one or more of the Debtors' businesses;

Then the following procedures shall be followed:

a. unless otherwise consented to by the Core Parties, any and all documents, other than any Monitor's report related to the Requested Relief, shall be filed (as applicable) and served on the Core Parties on not less than seven days notice prior to the proposed hearing date for such Requested Relief in the Court of the forum country where the party seeking the Requested Relief intends the Requested Relief to be heard; *provided, however,* that to the extent the Requested Relief is necessary to avoid irreparable harm to the Debtors and/or the Debtors' bankruptcy estates, as may be determined by the Court of the forum country where the Requested Relief is being sought or such Court otherwise determines, such documents related to the Requested Relief shall be served on the Core Parties on such reasonable notice as such Court may determine;

b. upon notice of such Requested Relief being provided to the Core Parties, each of the Core Parties will have not less than two business days from receipt of such notice (or such shorter period as the Court of the forum country where the Requested Relief is being sought shall determine, as set forth in paragraph 15(a) herein) to request, in writing, that the filing party seek a Joint Hearing for the Requested Relief;

c. if the filing party agrees to seek a Joint Hearing, the Requested Relief shall be heard at a Joint Hearing conducted by the Courts in accordance with the procedures set forth in paragraph 12 herein; and

d. if the filing party does not agree to seek a Joint Hearing, the party seeking to have the Requested Relief heard at a Joint Hearing may file a notice of Joint Hearing dispute in both the Court of the forum country and the Court of the non-forum country and serve notice thereof on the remaining Core Parties, whereupon the respective Courts of the forum country and the non-forum country may consult with one another in accordance with paragraphs 6 and 12 hereof, in order to determine whether a Joint Hearing is necessary or may otherwise consult with the Core Parties prior to any party proceeding with the underlying Requested Relief in the original proposed forum country.

E.    **Recognition of Stays of Proceedings**

16.    The Canadian Court hereby recognizes the validity of the stay of

proceedings and actions against the U.S. Debtors and their property under section 362 of the

Bankruptcy Code (the "U.S. Stay"). In implementing the terms of this paragraph, the Canadian Court may consult with the U.S. Court regarding: (i) the interpretation, extent, scope and applicability of the U.S. Stay and any orders of the U.S. Court modifying or granting relief from the U.S. Stay; and (ii) the enforcement of the U.S. Stay in Canada.

17.     The U.S. Court hereby recognizes the validity of the stay of proceedings and actions against the Canadian Debtors and their property under the Canadian Order (the "Canadian Stay"). In implementing the terms of this paragraph, the U.S. Court may consult with the Canadian Court regarding: (i) the interpretation, extent, scope and applicability of the Canadian Stay and any orders of the Canadian Court modifying or granting relief from the Canadian Stay; and (ii) the enforcement of the Canadian Stay in the United States.

18.     Nothing contained herein shall affect or limit the Debtors' or other parties' rights to assert the applicability or nonapplicability of the U.S. Stay or the Canadian Stay to any particular proceeding, property, asset, activity or other matter, wherever pending or located. Subject to paragraph 15, herein, motions brought respecting the application of the stay of proceedings with respect to assets or operations of the Canadian Debtors shall be heard and determined by the Canadian Court. Subject to paragraph 15 herein, motions brought respecting the application of the stay of proceedings with respect to assets or operations of the U.S. Debtors shall be heard and determined by the U.S. Court.

F.     **Rights to Appear and Be Heard**

19.     The Debtors, the Core Parties, and any other committee that may be appointed by the U.S. Trustee, and the professionals and advisors for each of the foregoing, shall have the right and standing: (i) to appear and to be heard in either the U.S. Court or Canadian Court in the U.S. Proceedings or Canadian Proceedings, respectively, to the same extent as creditors and other interested parties domiciled in the forum country, subject to any local rules or

12

regulations generally applicable to all parties appearing in the forum; and (ii) to file notices of appearance or other papers with the clerk of the U.S. Court or the Canadian Court in respect of the U.S. Proceedings or Canadian Proceedings, respectively; provided, however, that any appearance or filing may subject a creditor or interested party to the jurisdiction of the Court in which the appearance or filing occurs; provided further, that an appearance by the Creditors Committee in the Canadian Proceedings shall not form a basis for personal jurisdiction in Canada over the members of the Creditors Committee. Notwithstanding the foregoing, and in accordance with the policies set forth above, including, inter alia, paragraph 12 above; (i) the Canadian Court shall have jurisdiction over the Chapter 11 Representatives (as defined below) solely with respect to the particular matters as to which the Chapter 11 Representatives appear before the Canadian Court; and (ii) the U.S. Court shall have jurisdiction over the Canadian Representatives (as defined below) solely with respect to the particular matters as to which the Canadian Representatives appear before the U.S. Court.

20.    In connection with any matter in the Canadian Proceedings in which the Creditors Committee seeks to become involved and which would otherwise require the Creditors Committee to execute a confidentiality agreement, the Creditors Committee, its individual members and professionals shall not be required to execute confidentiality agreements but instead the Creditors Committee and its members shall be bound by the confidentiality provisions contained in the Creditors Committee bylaws, and the Creditors Committee's professionals shall be bound by the terms of the confidentiality agreement with the Debtors dated February 2, 2009.

G.    **Claims Protocol**

21.    The Debtors anticipate that it will be necessary to implement a specific claims protocol to address, among other things and without limitation, the timing, process,

13

jurisdiction and applicable governing law to be applied to the resolution of intercompany claims filed by the Debtors' creditors in the Canadian Proceedings and the U.S. Proceedings. In such event, and in recognition of the inherent complexities of the inter-company claims that may be asserted in the Insolvency Proceedings, the Debtors shall use commercially reasonable efforts to negotiate a specific claims protocol, in form and substance satisfactory to the Debtors, the Monitor, and the Creditors Committee, which protocol shall be submitted to the Canadian Court and the U.S. Court for approval. In the event that the Debtors fail to reach agreement among such parties, the Debtors shall file a motion in both the Canadian Court and the U.S. Court seeking approval of such claims protocol as the Debtors shall determine to be in the best interest of the Debtors and their creditors.

H.    **Retention and Compensation of Estate Representative and Professionals**

22.    The Monitor, its officers, directors, employees, counsel and agents, wherever located, (collectively the "Monitor Parties") and any other estate representatives appointed in the Canadian Proceedings (collectively, the "Canadian Representatives") shall (subject to paragraph 19) be subject to the sole and exclusive jurisdiction of the Canadian Court with respect to all matters, including: (a) the Canadian Representatives' tenure in office; (b) the retention and compensation of the Canadian Representatives; (c) the Canadian Representatives' liability, if any, to any person or entity, including the Canadian Debtors and any third parties, in connection with the Insolvency Proceedings; and (d) the hearing and determination of any other matters relating to the Canadian Representatives arising in the Canadian Proceedings under the CCAA or other applicable Canadian law. The Canadian Representatives shall not be required to seek approval of their retention in the U.S. Court for services rendered to the Debtors. Additionally, the Canadian Representatives: (a) shall be compensated for their services to the Canadian Debtors solely in accordance with the CCAA, the Canadian Order and other applicable

14

Canadian law or orders of the Canadian Court; and (b) shall not be required to seek approval of their compensation in the U.S Court.

23.    The Monitor Parties shall be entitled to the same protections and immunities in the United States as those granted to them under the CCAA and the Canadian Order.  In particular, except as otherwise provided in any subsequent order entered in the Canadian Proceedings, the Monitor Parties shall incur no liability or obligations as a result of the Canadian Order, the appointment of the Monitor, the carrying out of its duties or the provisions of the CCAA and the Canadian Order by the Monitor Parties, except any such liability arising from actions of the Monitor Parties constituting gross negligence or willful misconduct.

24.    Any estate representative appointed in the U.S. Proceedings, including without limitation any examiners or trustees appointed in accordance with section 1104 of the Bankruptcy Code (collectively, the "Chapter 11 Representatives") shall (subject to paragraph 19) be subject to the sole and exclusive jurisdiction of the U.S. Court with respect to all matters, including:  (a) the Chapter 11 Representatives' tenure in office; (b) the retention and compensation of the Chapter 11 Representatives; (c) the Chapter 11 Representatives' liability, if any, to any person or entity, including the U.S. Debtors and any third parties, in connection with the Insolvency Proceedings; and (d) the hearing and determination of any other matters relating to the Chapter 11 Representatives arising in the U.S. Proceedings under the Bankruptcy Code or other applicable laws of the United States.  The Chapter 11 Representatives shall not be required to seek approval of their retention in the Canadian Court and (a) shall be compensated for their services to the U.S. Debtors solely in accordance with the Bankruptcy Code and other applicable laws of the United States or orders of the U.S. Court; and (b) shall not be required to seek

15

approval of their compensation for services performed for the U.S. Debtors in the Canadian Court.

25.    Any professionals (i) retained by and being compensated solely by, or (ii) being compensated solely by, the Canadian Debtors including in each case, without limitation, counsel and financial advisors (collectively, the "Canadian Professionals"), shall be subject to the sole and exclusive jurisdiction of the Canadian Court. Such Canadian Professionals: (a) shall be subject to the procedures and standards for retention and compensation applicable in the Canadian Court under the CCAA, the Canadian Order and any other applicable Canadian law or orders of the Canadian Court with respect to services performed on behalf of the Canadian Debtors; and (b) shall not be required to seek approval of their retention or compensation in the U.S. Court.

26.    Any professionals (i) retained by, or (ii) being compensated by, the U.S. Debtors including in each case, without limitation, counsel and financial advisors (collectively, the "U.S. Professionals") shall be subject to the sole and exclusive jurisdiction of the U.S. Court. Such U.S. Professionals: (a) shall be subject to the procedures and standards for retention and compensation applicable in the U.S. Court under the Bankruptcy Code and any other applicable laws of the United States or orders of the U.S. Court; and (b) shall not be required to seek approval of their retention or compensation in the Canadian Court.

27.    Subject to paragraph 19 herein, any professional retained by the Creditors Committee, including in each case, without limitation, counsel and financial advisors (collectively, the "Committee Professionals") shall be subject to the sole and exclusive jurisdiction of the U.S. Court. Such Committee Professionals: (a) shall be subject to the procedures and standards for retention and compensation applicable in the U.S. Court under the

16

Bankruptcy Code and any other applicable laws of the United States or orders of the U.S. Court;

and (b) shall not be required to seek approval of their retention or compensation in the Canadian

Court or any other court.

**I.    Notice**

28.    Notice of any motion, application or other Pleading or paper (collectively

the "Court Documents") filed in one or both of the Insolvency Proceedings involving or relating

to matters addressed by this Protocol and notice of any related hearings or other proceedings

shall be given by appropriate means (including, where circumstances warrant, by courier,

telecopier or other electronic forms of communication) to the following: (a) all creditors and

interested parties, in accordance with the practice of the jurisdiction where the papers are filed or

the proceedings are to occur; and (b) to the extent not otherwise entitled to receive notice under

clause (a) of this sentence, counsel to the Debtors; the U.S. Trustee; the Monitor; the Creditors

Committee; the Bondholders Committee and any other statutory committees appointed in the

Insolvency Proceedings and such other parties as may be designated by either of the Courts from

time to time. Notice in accordance with this paragraph shall be given by the party otherwise

responsible for effecting notice in the jurisdiction where the underlying papers are filed or the

proceedings are to occur. In addition to the foregoing, upon request, the U.S. Debtors or the

Canadian Debtors shall provide the U.S. Court or the Canadian Court, as the case may be, with

copies of any orders, decisions, opinions or similar papers issued by the other Court in the

Insolvency Proceedings.

29.    When any cross-border issues or matters addressed by this Protocol are to

be addressed before a Court, notices shall be provided in the manner and to the parties referred to

in paragraph 28 above.

17

**J.**    **Effectiveness; Modification**

      30.     This Protocol shall become effective only upon its approval by both the U.S. Court and the Canadian Court.

      31.     This Protocol may not be supplemented, modified, terminated, or replaced in any manner except upon the approval of both the U.S. Court and the Canadian Court after notice and a hearing. Notice of any legal proceeding to supplement, modify, terminate or replace this Protocol shall be given in accordance with the notice provisions set forth above.

**K.**    **Procedure for Resolving Disputes Under this Protocol**

      32.     Disputes relating to the terms, intent or application of this Protocol may be addressed by interested parties to the U.S. Court, the Canadian Court or both Courts upon notice in accordance with the notice provisions outlined in paragraph 28 above. In rendering a determination in any such dispute, the Court to which the issue is addressed: (a) shall consult with the other Court; and (b) may, in its sole and exclusive discretion, either: (i) render a binding decision after such consultation; (ii) defer to the determination of the other Court by transferring the matter, in whole or in part, to such other Court; or (iii) seek a Joint Hearing of both Courts in accordance with paragraph 12 above. Notwithstanding the foregoing, in making a determination under this paragraph, each Court shall give due consideration to the independence, comity and inherent jurisdiction of the other Court established under existing law.

      33.     In implementing the terms of this Protocol, the U.S. Court and the Canadian Court may, in their sole, respective discretion, provide advice or guidance to each other with respect to legal issues in accordance with the following procedures:

      a.     the U.S. Court or the Canadian Court, as applicable, may determine that such advice or guidance is appropriate under the circumstances;

      b.     the Court issuing such advice or guidance shall provide it to the non-issuing Court in writing;

c.  copies of such written advice or guidance shall be served by the applicable Court in accordance with paragraph 28 hereof;

d.  the Courts may jointly decide to invite the Debtors, the Creditors Committee, the Estate Representatives, the U.S. Trustee and any other affected or interested party to make submissions to the appropriate Court in response to or in connection with any written advice or guidance received from the other Court; and

e.  for clarity, the provisions of this paragraph shall not be construed to restrict the ability of either Court to confer as provided in paragraph 12 above whenever it deems it appropriate to do so.

**L.    Preservation of Rights**

34.    Except as specifically provided herein, neither the terms of this Protocol nor any actions taken under the terms of this Protocol shall:  (a) prejudice or affect the powers, rights, claims and defenses of the Debtors and their estates, the Creditors Committee, the Estate Representatives, the U.S. Trustee or any of the Debtors' creditors under applicable law, including, without limitation, the Bankruptcy Code the CCAA, and the orders of the Courts; or (b) preclude or prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of Canada or the United States.

19

Court File No. 09-CL-7950

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**
Proceeding commenced at TORONTO

---

**FACTUM OF NORTEL NETWORKS INC.**
**AND THE OTHER U.S. DEBTORS**
**(Records Disposal Motion)**

---

**TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, ON M5K 1N2
Tel:  416.865.0040
Fax:  416.865.7380

**Sheila Block** (LSUC#: 14089N)
Email: sblock@torys.com

**Scott A. Bomhof** (LSUC#: 37006F)
Email: sbomhof@torys.com

**Andrew Gray** (LSUC#: 46626V)
Email: agray@torys.com

**Adam M. Slavens** (LSUC#: 54433J)
Email: aslavens@torys.com

Lawyers for Nortel Networks Inc.
and the other U.S. Debtors

20148145.2