**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>NORTEL NETWORKS INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 09-10138 (KG)<br><br>Jointly Administered<br><br>**Re Docket Nos. 14633, 14636, 14772** |

**JOINT ADMINISTRATORS' PRELIMINARY RESPONSE AND**
**OBJECTION TO DEBTORS' AMENDED MOTION PURSUANT TO**
**11 U.S.C. §§ 105 AND 363 FOR ENTRY OF AN ORDER APPROVING THE**
<u>**SHARING OF COSTS RELATED TO THIRD-PARTY DISCOVERY**</u>

The court-appointed administrators and authorized foreign representatives (collectively, the "<u>Joint Administrators</u>")[2] for nineteen Nortel entities located in Europe, the Middle East, and Africa (collectively, the "<u>EMEA Debtors</u>")[3] in proceedings under the *Insolvency Act 1986*, pending before the High Court of Justice of England and Wales, respectfully submit this preliminary response and objection (the "<u>Response</u>") to Debtors'

---

[1] The debtors in these chapter 11 cases (the "<u>U.S. Debtors</u>"), along with the last four digits of each debtor's tax identification number, are: Nortel Networks Inc. (6332) ("<u>NNI</u>"); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); Nortel Networks (CALA) Inc. (4226).

[2] The Joint Administrators for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited ("<u>NNIR</u>"), are: Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris. The Joint Administrators for NNIR are: Alan Robert Bloom and David Martin Hughes. Stephen Taylor has been appointed as a Joint Administrator for Nortel Networks S.A. ("<u>NNSA</u>") to act in relation to certain conflict matters. The present motion falls outside those conflict matters.

[3] The EMEA Debtors are: Nortel Networks UK Limited ("<u>NNUK</u>"); NNIR; NNSA; Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V.; Nortel Networks N.V.; Nortel Networks Oy; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks, s.r.o.

Amended Motion Pursuant to 11 U.S.C. §§ 105 and 363 for Entry of an Order Approving the Sharing of Costs Related to Third-Party Discovery [D.I. 14633] (the "Cost-Sharing Motion"). In support of the Response, the Joint Administrators respectfully state as follows:

## PRELIMINARY STATEMENT

1.     This Response relates to motion practice that took place nearly a year ago, at a time when the U.S. Debtors were faced with a number of substantial discovery requests served by third parties who were defendants in U.S. litigations regarding the former Nortel patent portfolio, most of which were initiated by Rockstar. To protect themselves, the U.S. Debtors sought to reduce the expense of responding to these third-party requests by limiting their scope, streamlining the process for responding, and seeking indemnification for costs and fees from Rockstar and the parties requesting discovery, efforts the Joint Administrators fully support. In the intervening period, (i) Rockstar sold its interest in the Nortel patents, (ii) dismissed the pending lawsuits, and (iii) the defendants in the Rockstar actions withdrew the discovery requests they had served on the U.S. Debtors.

2.     In connection with these discovery requests, the U.S. Debtors asked the Court to compel other Nortel debtors – namely, NNL and NNUK – to share the costs that the U.S. Debtors would incur in responding to the discovery requests. The Canadian Debtors filed a preliminary objection on November 17, 2014. The EMEA Debtors have engaged in periodic discussions with the U.S. Debtors in an effort to resolve this dispute while the time for filing this Response was extended.[4] Although those discussions have been cordial and productive, and may continue, they have not led to a resolution of the cost-sharing dispute.

3.     Accordingly, the Joint Administrators are filing this Response in order to reserve all of the EMEA Debtors' rights to object to the Cost-Sharing Motion on any appropriate ground.

---

[4] The Joint Administrators' response deadline was extended by agreement of the parties to September 18, 2015.

Further, the Joint Administrators contend that it is premature to address the Cost-Sharing Motion at this time because the actual costs incurred by the U.S. Debtors in response to third-party discovery requests, and the success of the U.S. Debtors' efforts to recover full indemnity from Rockstar, Genband, and the parties seeking discovery, are not known. Moreover, any cost-sharing between the Nortel debtors out of the sale proceeds in escrow should include the Canadian Debtors and any other relevant selling debtors, and must be ordered by both the U.S. and Canadian Courts following joint hearings as provided for under the IFSA.[5] Such cost-sharing cannot be addressed or effectuated until after allocations have been calculated under the modified pro rata approach and the allocation dispute has concluded.

## BACKGROUND

4.  The Court is fully familiar with the history of Nortel's worldwide insolvency proceedings. What follows are facts relevant to the Cost-Sharing Motion and subsequent events.

5.  On July 11, 2011, the Court approved the sale of more than 7,000 patents and patent applications (the "Residual Patent Sale") by certain Nortel debtors to Rockstar Bidco, LP ("Rockstar").[6] The Residual Patent Sale was one of nine postpetition sales and followed the divestiture of Nortel's business lines, including its carrier voice over internet protocol business to GENBAND US LLC ("Genband"), approved on March 4, 2010 (the "CVAS Sale").[7]

---

[5] (*See* Motion Pursuant to 11 U.S.C. § 105(A), § 363, § 503 and Fed. R. Bankr. P. 9019 for an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief, Ex. B [D.I. 874].)

[6] (*See* Order Authorizing and Approving (A) the Sale of Certain Patent and Related Assets Free and Clear of All Claims and Interests, (B) the Assumption and Assignment of Certain Executory Contracts, (C) the Rejection of Certain Patent Licenses and (D) the License Non-Assignment and Non-Renewal Protections [D.I. 5935].)

[7] (*See* Order Authorizing and Approving (A) the Sale of Certain Assets of the Debtors' Carrier Voice Over IP and Communications Solutions Business Free and Clear of All Liens, Claims and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts [D.I. 2632].)

6.      In 2013, Rockstar, through its affiliates, began asserting the patents acquired in the Residual Patent Sale against a number of targets, including Google, Samsung, and Time Warner, via patent infringement lawsuits initiated in various U.S. jurisdictions.  Many of the defendant companies, in turn, began serving the U.S. Debtors, the Canadian Debtors, and others with subpoenas seeking documents and deposition testimony related to the former Nortel patents at issue (the "Third-Party Discovery Requests").

7.      On September 26, 2014, the U.S. Debtors filed a motion (the "Third-Party Subpoenas Motion") to enforce the automatic stay and limit the Third-Party Discovery Requests.[8]  At the same time, the U.S. Debtors filed a motion (the "Initial Cost-Sharing Motion"), asking the Court to order three Nortel debtors – NNI, NNL, and NNUK – to share costs arising from the U.S. Debtors' responses to the Third-Party Discovery Requests (the "Discovery Costs") in equal one-third shares.  (Initial Cost-Sharing Motion ¶ 35.)[9]  The U.S. Debtors asserted that the Discovery Costs ultimately should be deducted from the Residual Patent Sale proceeds held in escrow.

8.      Although the U.S. Debtors filed the Initial Cost-Sharing Motion in this Court, they did not file a corresponding motion in the Canadian Court pursuant to the IFSA and the Cross-Border Protocol.  To correct this error, the U.S. Debtors filed the Cost-Sharing Motion, seeking materially the same relief, on October 23, 2014, and a corresponding motion in the Canadian Court on October 24, 2014 (the "Canadian Cost-Sharing Motion").[10]

---

[8]  (Debtors' Mot. for (A) an Order Enforcing and/or Extending the Automatic Stay, (B) an Order Enforcing the Court's Prior Orders, (C) a Protective Order, and (D) Related Relief Under Section 105(a) [D.I. 14476].)

[9]  (*See* Debtors' Mot. Pursuant to 11 U.S.C. §§ 105 and 363 for Entry of an Order Approving the Sharing of Costs Related to Third-Party Discovery [D.I. 14478].)

[10]  The U.S. Debtors filed a request for a joint hearing to address the Cost-Sharing Motion and the Canadian Cost-Sharing Motion.  (*See* Notice of Request for Joint Hearing Pursuant to Section 15 of the Cross-Border

9.     The Canadian Debtors filed a preliminary objection to the Cost-Sharing Motion (the "Canadian Debtors' Preliminary Objection") on November 17, 2014, asserting that (i) the Cost-Sharing Motion violates the stay applicable in the Canadian proceedings, (ii) the Canadian Debtors never agreed, and cannot be compelled, to share expenses related to the Third-Party Discovery Requests, and (iii) the Cost-Sharing Motion is premature, as the U.S. Debtors should first obtain reimbursement from Rockstar and the requesting parties.[11]

10.    In November 2014, the Court granted the Third-Party Subpoenas Motion in order to limit the scope of the Third-Party Discovery Requests and streamline the process for responding.[12]  The Court subsequently approved a series of discovery protocols to achieve these goals.[13]  The "Second Discovery Protocol" relates to Third-Party Discovery Requests arising from Rockstar patent litigations.  The "Third Discovery Protocol" relates to Third-Party Discovery Requests made in connection with litigations involving patents sold to purchasers other than Rockstar, including Genband in the CVAS Sale.  (Third Discovery Protocol at 1.)

11.    The Second Discovery Protocol and the Third Discovery Protocol provide, among other things, that Discovery Costs arising from the Third-Party Discovery Requests may be allocated among the U.S. Debtors, the requesting party, the entity asserting the patents at issue, and any objecting third party.  (Second Discovery Protocol ¶ 7(k); Third Discovery Protocol ¶ 5(k).)  If the parties are unable to reach agreement on the appropriate allocation of Discovery

---

Insolvency Protocol with Respect to the Debtors' Am. Mot. Pursuant to 11 U.S.C. §§ 105 and 363 for Entry of an Order Approving the Sharing of Costs Related to Third-Party Discovery [D.I. 14636].)  However, a joint hearing has not yet been scheduled.  The Joint Administrators reserve the right to respond to the Canadian Cost-Sharing Motion and to supplement this Response once a return date is fixed.

[11] (Preliminary Obj. of Monitor and Can. Debtors to Debtors' Am. Mot. Pursuant to 11 U.S.C. §§ 105 and 363 for Entry of an Order Approving the Sharing of Costs Related to Third-Party Discovery [D.I. 14772].)

[12] (*See* Order Extending Automatic Stay and Regulating Third-Party Discovery [D.I. 14746].)

[13] (*See, e.g.*, Order Approving Second Discovery Protocol In Connection With Order Extending Automatic Stay and Regulating Third-Party Discovery [D.I. 14906]; Order Entering Third Discovery Protocol [D.I. 15527].)

Costs, they are directed to consult a discovery mediator or, if necessary, submit the issue to the Court. (Second Discovery Protocol ¶ 7(k); Third Discovery Protocol ¶ 5(k).)

12. At the time the Cost-Sharing Motion was filed, the Rockstar lawsuits were multiplying and the number of Third-Party Discovery Requests was expected to grow. However, in November 2014, Rockstar began entering into a series of standstill agreements with defendants to stay its pending patent infringement litigations.[14] These stays were necessitated by Rockstar's decision to sell its remaining interest in the Nortel patent portfolio to RPX Clearinghouse LLC ("RPX"),[15] which resulted in the dismissal of the Rockstar-related lawsuits and, accordingly, the withdrawal of many of the Third-Party Discovery Requests.[16]

13. Although the Joint Administrators are not aware of the precise number of Third-Party Discovery Requests to which the U.S. Debtors may currently be responding, it seems that the number has been drastically reduced by Rockstar's transfer of Nortel's residual patent portfolio to RPX – greatly reducing the Discovery Costs at issue here as well. The amount of Discovery Costs incurred by the U.S. Debtors is unknown, as is the success of their efforts to collect reimbursement from Rockstar, Genband, and the parties seeking discovery.

**PRELIMINARY RESPONSE AND OBJECTION**

14. Although the Joint Administrators are open to continuing discussions with the U.S. Debtors to try to resolve the present motion without involving the Courts, they file this

---

[14] (*See* Mot. of Third Party Rockstar for Partial Stay of Discovery Protocol [D.I. 15019]; Notice of Withdrawal of Mot. of Third Party Rockstar for Partial Stay of Discovery Protocol [D.I. 15249].)

[15] (*See* Mot. of Third Party Rockstar for Partial Stay of Discovery Protocol [D.I. 15019]; Notice of Withdrawal of Mot. of Third Party Rockstar for Partial Stay of Discovery Protocol [D.I. 15249].)

[16] (*See, e.g.*, Order of Dismissal with Prejudice, *Rockstar Consortium US LP v. Google Inc.*, No. 2:13-cv-00893-JRG-RSP (E.D. Tex.) [D.I. 309]; Order of Dismissal with Prejudice, *Constellation Techs. LLC v. Time Warner Cable, Inc.*, No. 2:13-cv-01079-RSP (E.D. Tex.) [D.I. 164]; *see also* Google's Resp. to Mot. of Third Party Rockstar for Partial Stay of Discovery Protocol ¶ 7 [D.I. 15058].)

Response in order to reserve all applicable grounds for objection to the Cost-Sharing Motion, including that they have no legal obligation, by contract or otherwise, to share the relevant costs. In addition, it is premature to address the Cost-Sharing Motion at this time. The Joint Administrators' specific objections to the Cost-Sharing Motion include, without limitation:

15. The amount of Discovery Costs sought to be recovered is not yet known and, as far as the Joint Administrators are aware, the U.S. Debtors have yet to seek reimbursement for any Discovery Costs from third parties, as previously ordered by the Court or pursuant to Federal Rule of Civil Procedure 45. (*See* Second Discovery Protocol ¶ 7(k); Third Discovery Protocol ¶ 5(k).) This includes the parties that made the Third-Party Discovery Requests and the parties that owned the patents at issue in the underlying lawsuits (Rockstar and Genband), among others. As the Canadian Debtors noted months ago, the Cost-Sharing Motion is therefore premature. (*See* Canadian Debtors' Preliminary Objection ¶ 9.) Reimbursement from Rockstar, Genband, and nondebtor third parties must be sought (and resolved) before the creditors of the EMEA Debtors or the Canadian Debtors are asked to bear any portion of the Discovery Costs incurred. The EMEA Debtors should not be asked to share in these Discovery Costs until efforts to recover from other sources have been exhausted.

16. Further, any determination regarding cost-sharing among the Nortel debtors must include the Canadian Debtors and be made pursuant to orders by both the U.S. and Canadian Courts, following a joint hearing, as set forth under the IFSA – not the Court's equitable powers conferred by the Bankruptcy Code. In the IFSA, the parties agreed that the sale proceeds held in escrow could only be distributed in accordance with (i) the "agreement of all Selling Debtors," or (ii) "determination by the relevant dispute resolver(s)." (IFSA § 12(b).)

17.     The first option requires the "agreement of all Selling Debtors," which appears unlikely here given the Canadian Debtors' objection to the relief sought.  (*See* Canadian Debtors' Preliminary Objection ¶ 6.)  This triggers the second option, which requires "determination by the relevant dispute resolver(s)."  In 2013, this Court and the Canadian Court found that they are the relevant dispute resolvers.[17]  Thus, in the absence of agreement by the relevant selling debtors, sale proceeds may only be released from escrow – whether to reimburse the parties for Discovery Costs or otherwise – as determined by both Courts.  This fact is reiterated in the jurisdiction clause of the IFSA, which requires "a joint hearing of both the Canadian and US Courts conducted under the Cross-Border Protocol" for "any relief whatsoever" regarding matters agreed in the IFSA that "would affect the Canadian Debtors and the US Debtors or the EMEA Debtors."  (IFSA § 16(b)(ii).)  The U.S. Debtors recognized the necessity of obtaining a determination from both Courts when they refiled the Cost-Sharing Motion and filed the Canadian Cost-Sharing Motion in order to seek relief in both jurisdictions.

18.     Despite this, the U.S. Debtors suggest that the Court may be authorized under section 105 of the Bankruptcy Code to issue a unilateral order compelling NNUK or other EMEA Debtors to pay a portion of the Discovery Costs.  In the only case cited by the U.S. Debtors as authority for this proposition, *In re Residential Capital, LLC*, 480 B.R. 529 (Bankr. S.D.N.Y. 2012), the court concluded that "someone other than the Debtors must bear the entire expense of production," but left "to the district court the issue of who (other than the Debtors) pays."  *Id.* at 545.  Notably, the *ResCap* court reasoned that a "method for regulating discovery requests that infringe on the limitations of Rule 26(b)(2) is to condition orders that such

---

[17]     (*See, e.g.*, Order Entering Allocation Protocol, Ex. 1 ¶ 1, May 17, 2013 [D.I. 10565] ("The purpose of this Allocation Protocol is for the U.S. and Canadian Courts to set forth binding procedures for determining the allocation of the Sale Proceeds among the Selling Debtors.").)

discovery go forward <u>on the payment by the party seeking discovery</u> of part or all of the resulting expense incurred by the responding party." *Id.* at 543 (emphasis added).

19. This statement supports relief that was sought by the U.S. Debtors in the Third-Party Subpoenas Motion, not the cost-sharing at issue here. The EMEA Debtors, like the Canadian Debtors (*see* Canadian Debtors' Preliminary Objection ¶ 5), support the U.S. Debtors' efforts to limit the scope of the Third-Party Discovery Requests and reduce the attendant Discovery Costs; however, they agree with the Canadian Debtors that this Court does not have unilateral authority to order discovery cost-sharing among the estates (*see id.* ¶ 7).

20. In addition, insofar as the U.S. Debtors have taken the position that the Discovery Costs are related to the Residual Patent Sale and the CVAS Sale and should be reimbursed directly out of those sale proceeds currently held in escrow, the Cost-Sharing Motion cannot be resolved until after the allocation dispute has concluded. The U.S. and Canadian Courts must first determine the proportional entitlement of each of the Nortel debtors to the proceeds of the Residual Patent Sale and CVAS Sale under the modified pro rata allocation approach.

21. Moreover, to the extent cost-sharing is ordered, there must be a process in place by which all parties can review the Discovery Costs claimed by other Nortel entities prior to the release of any sale proceeds. The U.S. Debtors' proposed order provides for the parties to exchange costs statements (Proposed Cost-Sharing Order ¶¶ 3, 5) – but no process exists for the parties to examine or challenge these costs.

22. Finally, the Joint Administrators hereby adopt and incorporate the objections of the Canadian Debtors set forth in the Canadian Debtors' Preliminary Objection.

**CONCLUSION**

For the foregoing reasons, the Joint Administrators respectfully request that the Court (i) deny the Cost-Sharing Motion, and (ii) grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
September 18, 2015

YOUNG CONAWAY STARGATT & TAYLOR, LLP

By:  /s/ *Jaime Luton Chapman*
James L. Patton (No. 2202)
Edwin J. Harron (No. 3396)
John T. Dorsey (No. 2988)
Jaime Luton Chapman (No. 4936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  302-571-6600
Fax:  302-571-1253

– and –

HUGHES HUBBARD & REED LLP

Derek J.T. Adler (admitted *pro hac vice*)
Gabrielle Glemann (admitted *pro hac vice*)
Charles H. Huberty (admitted *pro hac vice*)

One Battery Park Plaza
New York, New York 10004
Telephone:  212-837-6000
Fax:  212-422-4726

*Counsel for the Joint Administrators*