## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
             :

*In re*             :     Chapter 11

Nortel Networks Inc., *et al.*,[1]  :     Case No. 09-10138 (KG)

        Debtors.  :     (Jointly Administered)

--------------------------------------------------------- X
             :

Nortel Networks Inc.,      :

        Plaintiff,  :

             :     Adv. Proc. No. 10-55903 (KG)

v.            :     **Hearing date: December 2, 2015 at 10:00 a.m. (ET)**

Sterling Mets, L.P.,      :     **Objections due: November 24, 2015 at 4:00 p.m. (ET)**

and             :

Queens Ballpark Company, L.L.C.  :

        Defendants.  :
----------------------------------------------------------X

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION RESOLVING CLAIMS BY AND AMONG THE DEBTORS, STERLING METS, L.P. AND QUEENS BALLPARK COMPANY, L.L.C.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 502,

---

[1]    In addition to Nortel Networks Inc. ("NNI"), the Debtors in the Chapter 11 cases are:  Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA").  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

547, 550, and 551 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors

to enter into and approving a stipulation (the "Stipulation") with Sterling Mets, L.P. ("Sterling

Mets") and Queens Ballpark Company, L.L.C. ("QBC", and together with Sterling Mets, the

"Mets Parties," and together with the Debtors, the "Parties"), in the form attached hereto as

**Exhibit B**, (i) dismissing the Debtors' avoidance action against the Mets Parties and resolving

the Adversary Proceeding entitled Nortel Networks Inc. v. Sterling Mets, L.P. and Queens

Ballpark Company, L.L.C., Adv. Proc. No. 10-55903 (KG) (the "Adversary Proceeding"); (ii)

deeming QBC's proofs of claim filed against NNI as allowed up to a certain agreed-upon

amount, as discussed below, and resolving the related Contested Matter (defined below); and (iii)

granting such other and further relief as the Court (the "Court" or the "Bankruptcy Court")

deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 502, 547,

550, and 551 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code
on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases
for procedural purposes [Main D.I. 1098].

Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [Main D.I.s 141, 142],[3] and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors and a monitor, Ernst & Young Inc., was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration under the control of individuals from Ernst & Young LLP.  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

---

[3]      Citations herein to the main bankruptcy case (Case No. 09-10138) are in the form "Main D.I. __." Citations herein to the docket in the Adversary Proceeding are in the form "Adv. D.I. __."

[4]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

6.    Since the Petition Date, Nortel has sold its business units and assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Facts Relevant to this Motion**

7.    NNI and QBC signed an agreement dated March 24, 2008 (the "Advertising Agreement"), which provided NNI with the exclusive right to serve as the "Official Converged Network/Unified Communications Systems, Applications and Services Partner of the Mets," and other benefits, including, *inter alia*, certain advertising rights and tickets at Citi Field, the home ballpark of the New York Mets, during seven baseball seasons from 2009 through 2015.

8.    NNI's books and records indicate that within ninety (90) days prior to the Petition Date (the "Preference Period"), NNI made payments in the amount of $19,134.50 on December 5, 2008 and $500,000 on January 13, 2009 to Sterling Mets and QBC, respectively, with an aggregate amount of $519,134.50 (the "Subject Transfers").

9.    On or about December 17, 2009, NNI filed its Twenty-Second Notice of Rejection of Executory Contract(s) and/or Nonresidential Real Property Lease(s) by Debtors and Debtors in Possession [Main D.I. 2178] effecting a rejection of the Advertising Agreement.

10.    On or about January 11, 2010, QBC timely filed proof of claim No. 6673 in the asserted amount of $536,874.96 ("Claim No. 6673"), claiming purported administrative expenses for the second installment payment owed under the Advertising Agreement for the 2009 baseball season.

11.    On or about January 14, 2010, QBC timely filed proof of claim No. 6709 in the asserted amount of $6,898,294.20 ("Claim No. 6709", and together with Claim No. 6673, the "QBC Claims"), asserting a general unsecured claim for payments for the remaining baseball seasons covered by the Advertising Agreement.

12.     On September 16, 2010, the Court entered an Order Authorizing and Approving Settlement Procedures to Settle Certain Prepetition Claims (the "Prepetition Claims Settlement Procedures Order") which requires the Debtors to obtain Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 before they settle certain disputed Proofs of Claim that were originally filed in an amount equal to or greater than $1,000,000 [Main D.I. 3953].

13.     On December 6, 2010, NNI filed its Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims pursuant to sections 547, 550, 551 and 502(d) of the Bankruptcy Code (Adv. Pro. No. 10-55903) [Adv. D.I. 1] (the "Complaint") against the Mets Parties in this Court, pursuant to which NNI sought to avoid and recover the Subject Transfers (the "Debtors' Avoidance Claim"), and instituting the Adversary Proceeding.

14.     On February 25, 2011, the Mets Parties filed an Answer to the Complaint [Adv. D.I. 4], denying certain allegations and asserting various defenses.

15.     On May 10, 2013, the Debtors filed the Debtors' Objection to Proofs of Claim Nos. 6673 and 6709 Filed by Queens Ballpark Company, L.L.C. [Main D.I. 10485] (the "Claim Objection") seeking to disallow, reduce, and/or reclassify the QBC Claims, and creating a contested matter as to the QBC Claims (the "Contested Matter").

16.     Since the Complaint, Answer, and Claim Objection were filed, the Parties conducted discovery and, in an effort to resolve the disputes between the Debtors and the Claimant, engaged in extensive arm's-length settlement discussions.  As a result of these negotiations, subject to this Court's approval, the Parties have agreed that (i) the Debtors' Avoidance Claim should be dismissed with prejudice; (ii) Claim No. 6673, which was asserted as an administrative claim in the amount of $536,874.96, should be allowed as an administrative claim by QBC against NNI in the amount of $200,000, to be paid within ten (10) business days

5

of the Effective Date (as defined in the Stipulation); and (iii) Claim No. 6709, which was asserted as a general unsecured claim in the amount of $6,898,294.20, should be allowed as a general unsecured claim by QBC against NNI in the amount of $4,700,000.  In consideration for the allowance of the QBC Claims in the foregoing amounts against NNI, the Mets Parties have agreed, subject to this Court's approval, to release and forever discharge the Debtors from any and all liability they now have or hereafter may have arising from or related to the QBC Claims other than for the allowed amount of such QBC Claims.  The Mets Parties further have agreed that they will not amend or re-file the QBC Claims.

17.    The Debtors believe that the resolution of the Debtors' Avoidance Claim and the QBC Claims through the Stipulation is in an exercise of their reasonable business judgment and appropriate and in the best interest of both their estates and their creditors, as it will avoid the potentially substantial and burdensome continued costs and risks associated with litigating the Debtors' Avoidance Claim and the QBC Claims, reduce the potential size of claims asserted against the estates and preserve value of the Debtors' estates for the benefit of all of their stakeholders, and meaningfully advance the Debtors' claims reconciliation and resolution process.

18.    In consideration of the mutual promises and covenants set forth in the Stipulation and good and valuable consideration, the Mets Parties have agreed, subject to the Bankruptcy Court's approval, to, *inter alia*, release the Debtors, their past and present parents, affiliates, subsidiaries, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their personal representatives, predecessors, successors and assigns (collectively, the "Debtor Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, setoffs, recoupments,

6

costs and expenses (including, without limitation, attorney's fees) whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the Mets Parties now have, had, may have had, or hereafter may have against any of the Debtor Releasees arising from or relating to the Debtors' Avoidance Claim, the Adversary Proceeding, the QBC Claims, the Contested Matter, and any transactions or events described or referred to in the Complaint, the Adversary Proceeding, the QBC Claims, or the Contested Matter, *provided that*, the Mets Parties do not waive, release or discharge the Debtor Releasees from any of their obligations under the Stipulation.

19.     In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration, the Debtors have agreed, subject to the Bankruptcy Court's approval, to, *inter alia*, release the Mets Parties, their past and present parents, affiliates, subsidiaries, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their personal representatives, predecessors, successors and assigns (collectively, the "Mets Parties Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, setoffs, recoupments, costs, and expenses (including, without limitation, attorneys' fees), whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the Debtors now have, had, may have had, or hereafter may have against any of the Mets Parties Releasees arising from or relating to the Debtors' Avoidance Claim, the Adversary Proceeding, the QBC Claims, the Contested Matter, and any transactions or events described or referred to in the Complaint, the Adversary Proceeding, the QBC Claims, or the Contested Matter, *provided that*, the Debtors do not waive,

7

release or discharge the Mets Parties Releasees from any of their obligations under the Stipulation.

## Relief Requested

20.      By this Motion, the Debtors seek an order, pursuant to sections 105(a), 502, 547, 550, and 551 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing the Debtors' entry into and approving the Stipulation, and (ii) granting them such other and further relief as the Court deems just and proper.

## Basis for Relief

21.      The Debtors seek authorization to enter into the Stipulation under sections 105(a), 502, 547, 550, and 551 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.

22.      Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'"  In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  Courts in this District also have recognized that the approval of a proposed compromise and settlement

8

is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Coram Healthcare

Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

23.     Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re

Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211

B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the

need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer

Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best

possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.

Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below

the lowest point in a range of reasonableness."  Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of

Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at

330.

24.     The Third Circuit has set out four criteria for a bankruptcy court to consider when

evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62

B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.),

283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

25.     The Debtors respectfully submit that the Martin Factors weigh in favor of

approving the Stipulation, and request that the Debtors' entry into the Stipulation be authorized

under Bankruptcy Rule 9019. The Stipulation provides the Debtors with necessary certainty with respect to the Debtors' Avoidance Claim and the QBC Claims and results in a decrease in claims against the Debtors' estates of over $2.5 million dollars. Settlement of the Debtors' Avoidance Claim and QBC Claims will permit the Debtors to allocate their resources efficiently and direct their attention toward other matters relating to their Chapter 11 cases. Such a resolution will bring valuable and significant reductions in cost, time and uncertainty on account of the Debtors' Avoidance Claim and QBC Claims and represents the valid, fair and reasonable business judgment of the Debtors.

26.      Finally, the interests of the creditors militate in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Debtors' Avoidance Claim and QBC Claims and the avoidance of legal expenses that would be incurred if the Debtors' Avoidance Claim and QBC Claims were to be litigated or if other causes of action related to or arising from the Debtors' Avoidance Claim or QBC Claims were asserted.

27.      In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

## Notice

28.      Notice of the Motion has been given via first class mail to (i) the Mets Parties; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

29.      No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  November 10, 2015
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted pro hac vice)
Lisa M. Schweitzer (admitted pro hac vice)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


   */s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

11