**EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| In re | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | (Jointly Administered) |
| Nortel Networks Inc., | |
| Plaintiff, | |
| v. | Adv. Proc. No. 10-55903 (KG) |
| Sterling Mets, L.P., | |
| and | |
| Queens Ballpark Company, L.L.C. | |
| Defendants. | |

**STIPULATION RESOLVING CLAIMS BY AND AMONG THE
DEBTORS, STERLING METS, L.P. AND QUEENS BALLPARK COMPANY, L.L.C.**

This stipulation (the "Stipulation") is entered into by and between Nortel Networks Inc.

("NNI") and the above-captioned debtors and debtors in possession (collectively, the "Debtors")

and Sterling Mets, L.P. ("Sterling Mets") and Queens Ballpark Company, L.L.C. ("QBC," and

---

[1] In addition to Nortel Networks Inc. ("NNI"), the Debtors in the Chapter 11 cases are: Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA"). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

together with Sterling Mets, the "Mets Parties," and together with the Debtors, the "Parties"). The Parties hereby stipulate and agree as follows:

WHEREAS, NNI and QBC signed an agreement dated March 24, 2008 (the "Advertising Agreement"), which provided NNI with the exclusive right to serve as the "Official Converged Network/Unified Communications Systems, Applications and Services Partner of the Mets," and other benefits, including, *inter alia*, certain advertising rights and tickets at Citi Field, the home ballpark of the New York Mets, during seven baseball seasons from 2009 through 2015; and

WHEREAS, on January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

WHEREAS, the Bankruptcy Court established the general bar dates of September 30, 2009 (other than for claims against Nortel Networks (CALA) Inc.) and January 25, 2010 (for claims against Nortel Networks (CALA) Inc.) for filing proofs of claim in these cases; and

WHEREAS, NNI's books and records indicate that within ninety (90) days prior to the Petition Date, NNI made payments in the amount of $19,134.50 on December 5, 2008 and $500,000 on January 13, 2009 to Sterling Mets and QBC, respectively, in the aggregate amount of $519,134.50 (the "Subject Transfers"); and

WHEREAS, on or about December 17, 2009, Plaintiff filed its Twenty-Second Notice of Rejection of Executory Contract(s) and/or Nonresidential Real Property Lease(s) by Debtors and Debtors in Possession [D.I. 2178], effecting a rejection of the Advertising Agreement; and

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

WHEREAS, on or about January 11, 2010, QBC timely filed proof of claim No. 6673 in the asserted amount of $536,874.96 ("Claim No. 6673"), claiming purported administrative expenses for the second installment payment owed under the Advertising Agreement for the 2009 baseball season; and

WHEREAS, on or about January 14, 2010, QBC timely filed proof of claim No. 6709 in the asserted amount of $6,898,294.20 ("Claim No. 6709", and together with Claim No. 6673, the "QBC Claims"), asserting a general unsecured claim for payments for the remaining baseball seasons covered by the Advertising Agreement; and

WHEREAS, on September 16, 2010, the Court entered an Order Authorizing and Approving Settlement Procedures to Settle Certain Prepetition Claims (the "Prepetition Claims Settlement Procedures Order") which requires the Debtors to obtain Bankruptcy Court approval pursuant to Bankruptcy Rule 9019 before they settle certain disputed Claims that were originally filed in an amount equal to or greater than $1,000,000 [Main D.I. 3953]; and

WHEREAS, on December 6, 2010, NNI instituted this Adversary Proceeding, Adv. Proc. No. 10-55903 (the "Adversary Proceeding") by filing a Complaint to Avoid and Recover Preferential Transfers and to Disallow Claims (the "Complaint") (Adv. D.I. 1)[3] against the Mets Parties pursuant to sections 547, 550, 551 and 502(d) of the Bankruptcy Code, in which NNI sought to avoid and recover the Subject Transfers (the "Debtors' Avoidance Claim"); and

WHEREAS, on February 25, 2011, the Mets Parties filed an Answer to the Complaint [Adv. D.I. 4], denying certain allegations and asserting various defenses; and

WHEREAS, on May 10, 2013, the Debtors filed the Debtors' Objection to Proofs of Claim Nos. 6673 and 6709 Filed by Queens Ballpark Company, L.L.C. [Main D.I. 10485] (the

---

[3] Citations herein to the main bankruptcy case (Case No. 09-10138) are in the form "Main D.I. __." Citations herein to the docket in this adversary proceeding (Adv. Pro. No. 10-55903) are in the form "Adv. D.I. __."

3

"Claim Objection") seeking to disallow, reduce, and/or reclassify the QBC Claims, and creating a contested matter as to the QBC Claims (the "Contested Matter"); and

WHEREAS, since the Complaint and Answer were filed, the Parties have conducted discovery and engaged in extensive arm's-length negotiations. The Parties disagree regarding the merits of and desire to avoid the potentially substantial and burdensome continued costs and risks associated with further litigation of the Debtors' Avoidance Claim and the QBC Claims, where the Parties acknowledge and agree that the outcome is uncertain. Accordingly, the Parties have agreed to this Stipulation to resolve their disputes and settle the Adversary Proceeding and the Contested Matter on the terms set forth herein; and

WHEREAS, the Parties have agreed that the Debtors will voluntarily dismiss the Debtors' Avoidance Claim, that Claim No. 6673 will be allowed as an administrative claim against NNI in the amount of $200,000, to be paid within ten (10) business days of the Effective Date (as defined herein), and that Claim No. 6709 will be allowed as a general unsecured claim against NNI in the amount of $4,700,000.

NOW, THEREFORE, the Parties agree and stipulate as follows:

1. Resolution of the Debtors' Avoidance Claim and Adversary Proceeding. Upon the Effective Date (defined below) this Stipulation shall be effective and binding, by its terms, upon the Parties, and their respective successors and assigns, including, without limitation, any trustee or receiver that may hereafter be appointed in the Debtors' Chapter 11 cases. Within five (5) business days after the entry of the Bankruptcy Court order approving this Stipulation, and the settlement reflected herein pursuant to Bankruptcy Rule 9019 becoming a Final Order (defined below) (hereinafter, the "Effective Date"), the Debtors will file with the Bankruptcy Court a notice of dismissal with prejudice of the Debtors' Avoidance Claim. The Bankruptcy Court

4

Order approving this Stipulation and the settlement reflected herein shall become a "Final Order" upon the occurrence of: (i) the entry by the Bankruptcy Court of a final order approving this Stipulation, without modification of its terms, pursuant to Bankruptcy Rule 9019; and (ii) the expiration of the time for appeal or to seek permission to appeal from the Bankruptcy Court's final order approving this Stipulation, or if an appeal from a final order is taken, the affirmance of such order in its entirety, without modification, by the court of last resort to which an appeal of such order may be taken.

2. Resolution of the QBC Claims and Contested Matter. Upon the Effective Date:

(a) Claim No. 6673 shall be allowed as an administrative claim in the amount of $200,000 against NNI and paid within ten (10) business days of the Effective Date.

(b) Claim No. 6709 shall be allowed as a general unsecured claim in the amount of $4,700,000 against NNI.

(c) The allowance of the Claims as described in paragraph 2(a) and 2(b) shall be granted in full satisfaction of any and all claims that have been or could have been asserted in the QBC Claims against the Debtors and shall amend and supersede any and all claim amounts the Debtors list in their Schedules arising from or related to the facts underlying the QBC Claims. The Mets Parties shall not have any further claims against the Debtors, including based on the Debtors' scheduling of the Claims.

3. Release of Debtors.

(a) Upon the Effective Date, the Mets Parties release and forever discharge the Debtors and their respective current and former parents, affiliates, subsidiaries, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their personal representatives, predecessors, successors and assigns (collectively, the "Debtor

5

Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorneys' fees), whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the Mets Parties now have, had, may have had, or hereafter may have against any of the Debtor Releasees arising from or related to the Debtors' Avoidance Claim, the Adversary Proceeding, the QBC Claims, the Contested Matter, and any transactions or events described or referred to in the Complaint, the Adversary Proceeding, the QBC Claims, or the Contested Matter, *provided that*, the Mets Parties do not waive, release or discharge the Debtor Releasees from any of their obligations under the Stipulation.

(b)     **WITH RESPECT TO THE RELEASES PROVIDED HEREIN, THE METS PARTIES FURTHER ACKNOWLEDGE AND EXPRESSLY WAIVE THE BENEFIT OF ANY STATUTORY PROVISION OR COMMON LAW RULE THAT PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH A PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTION, INCLUDING, WITHOUT LIMITATION, THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542.**

4.  Release of Mets Parties.

(a)     Upon the Effective Date, the Debtors hereby release and forever discharge the Mets Parties, their past and present parents, affiliates, subsidiaries, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their personal representatives, predecessors, successors and assigns (collectively, the "Mets Parties Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages,

6

actions, suits, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorneys' fees), whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the Debtors now have, had, may have had, or hereafter may have against any of the Mets Parties Releasees arising from or related to the Debtors' Avoidance Claim, the Adversary Proceeding, the QBC Claims, the Contested Matter, and any transactions or events described or referred to in the Complaint, the Adversary Proceeding, the QBC Claims, or the Contested Matter, *provided that*, the Debtors do not waive, release or discharge the Mets Parties Releasees from any of their obligations under the Stipulation.

(b) **WITH RESPECT TO THE RELEASES PROVIDED HEREIN, THE DEBTORS FURTHER ACKNOWLEDGE AND EXPRESSLY WAIVE THE BENEFIT OF ANY STATUTORY PROVISION OR COMMON LAW RULE THAT PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH A PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTION, INCLUDING, WITHOUT LIMITATION, THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542.**

5. <u>No Further Claims</u>.  Upon the Effective Date, the Mets Parties shall be forever barred from (i) amending the QBC Claims or (ii) filing or otherwise asserting any further claim arising from or relating to the QBC Claims, or the facts underlying the QBC Claims, against any of the Debtors in the Debtors' chapter 11 cases.

6. <u>Entire Claim</u>.  The Mets Parties represent that, with respect to the QBC Claims, QBC owns the entirety of the claims (as "claim" is defined in section 101(5) of the Bankruptcy Code)

asserted in such QBC Claims, including any claims listed in the Schedules arising from or related to the facts underlying such QBC Claims.

7. <u>Binding Effect</u>.  This Stipulation and the Order approving the Stipulation shall be binding upon any successors or assigns of the Parties, including any trustee or receiver subsequently appointed in the Debtors' chapter 11 cases.

8. <u>Entire Agreement</u>.  This Stipulation constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof and this Stipulation cannot be amended except by an authorized written agreement between the Parties.

9. <u>No Transfer to a Third Party</u>.  The Mets Parties represent that they have not sold, assigned or otherwise transferred the QBC Claims or any of the claims being released pursuant to this Stipulation to a third party.  Notwithstanding the foregoing, nothing herein shall preclude the Mets Parties, in their sole discretion, from selling, assigning or transferring the QBC Claims, as allowed by the Stipulation, to a third party after the Effective Date.

10. <u>No Admissions</u>.  Each Party acknowledges and agrees that nothing in this Stipulation constitutes an admission or concession of any legal issue raised in or relating to the Debtors' Avoidance Claim and the QBC Claims.

11. <u>Costs and Expenses</u>.  Each Party agrees to bear its own costs, expenses and attorneys' fees incurred in connection with the negotiations related to and in preparation of this Stipulation and to not seek from each other reimbursement of any such costs, expenses or attorneys' fees.

12. <u>Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction over the implementation of this Stipulation and any disputes arising hereunder.

13. <u>Manner of Execution</u>. This Stipulation may be executed in counterparts, each of which shall be an original, and such counterparts shall be construed together as one instrument. Facsimile or pdf signatures shall be deemed original signatures.

14. <u>Court Approval</u>. All provisions of this Stipulation are subject to the approval of the Bankruptcy Court. In the event this Stipulation is not approved, the Parties reserve all of their rights and defenses with respect to the Debtors' Avoidance Claim and the QBC Claims and this proposed settlement shall not constitute an admission by the Debtors or their affiliates regarding the validity of the QBC Claims or that they have any liability thereunder, or by the Mets Parties regarding the validity of the Debtors' Avoidance Claim or that they have any liability thereunder.

15. <u>Claims Register</u>. The Debtors, the Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to this Stipulation.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated: October 26, 2015

| The Debtors | Sterling Mets, L.P. |
|---|---|
| By: _[signature]_<br>Name: John J. Ray III<br>Title: Principal Officer | By: _____<br>Name:<br>Title: |

Queens Ballpark Company, L.L.C.

By: _____
Name:
Title:

13. <u>Manner of Execution</u>.  This Stipulation may be executed in counterparts, each of which shall be an original, and such counterparts shall be construed together as one instrument. Facsimile or pdf signatures shall be deemed original signatures.

14. <u>Court Approval</u>.  All provisions of this Stipulation are subject to the approval of the Bankruptcy Court.  In the event this Stipulation is not approved, the Parties reserve all of their rights and defenses with respect to the Debtors' Avoidance Claim and the QBC Claims and this proposed settlement shall not constitute an admission by the Debtors or their affiliates regarding the validity of the QBC Claims or that they have any liability thereunder, or by the Mets Parties regarding the validity of the Debtors' Avoidance Claim or that they have any liability thereunder.

15. <u>Claims Register</u>.  The Debtors, the Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to this Stipulation.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated:  October _____, 2015

The Debtors

By: _____
Name: John J. Ray III
Title: Principal Officer

Sterling Mets, L.P.

By: _____
Name:  David P. Cohen
Title:  EVP/CLO
November 10, 2015

Queens Ballpark Company, L.L.C.

By: _____
Name:  David P. Cohen
Title:  EVP/CLO
November 10, 2015