# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
|   | **Hearing Date: December 15, 2015 at 10 a.m. (ET)**<br>**Objections due: November 30, 2015 at 4 p.m. (ET)** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING PROCEDURES FOR THE ABANDONMENT, DISPOSAL, OR DESTRUCTION OF SPECIFIED HARD COPY DOCUMENTS AND ELECTRONIC DATA; (II) WAIVING COMPLIANCE WITH CERTAIN RETENTION LAWS AND ORDINANCES; AND (III) GRANTING RELATED RELIEF

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105, 363, 541 and 554 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving procedures for the Debtors to abandon or dispose of specified hard copy documents and specified Electronic Data (as defined below); (ii) waiving compliance with certain federal, state or local records retention laws, rules and/or ordinances ("Retention Laws", as further defined herein); and (iii) granting the Debtors such other and further relief as the Court deems

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

just and proper. In support of this Motion, the Debtors submit the *Declaration of Kathryn Schultea in Support of the Debtors' Motion for Entry of an Order (I) Approving Procedures for the Abandonment, Disposal, or Destruction of Specified Hard Copy Documents and Electronic Data; (II) Waiving Compliance with Certain Retention Laws and Ordinances; and (III) Granting Related Relief* (the "Objection"), attached hereto as Exhibit B and incorporated by reference, and respectfully represent as follows:

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105, 363, 541 and 554 of the Bankruptcy Code, as supplemented by Rule 6007 of the Bankruptcy Rules.

**Background**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. ("NN CALA"),[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' cases.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

---

[2] NN CALA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098] (collectively, the "Chapter 11 Cases").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates, including Nortel Networks UK Limited ("NNUK") and certain of its affiliated located in Europe, the Middle East and Africa (collectively, the "EMEA Debtors")[4] into administration under the control of court-appointed administrators and foreign representatives (the "Joint Administrators").  On July 29, 2011, Nortel Networks Optical Components Limited ("NNOCL") commenced a creditors' voluntary liquidation, represented by Kerry Trigg (the "Liquidator").

6.      On May 28, 2009, NNSA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings in the Republic of France (the "French Secondary Proceedings," and together with the Chapter 11 Cases, the Canadian Proceedings and the U.K. Proceedings, the "Insolvency Proceedings") pursuant to which a liquidator, Maître Cosme Rogeau (the "French

---

[3]     The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]     The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

Liquidator"), and an administrator were appointed by the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) for NNSA. NTF is in voluntary liquidation and the French Liquidator has been appointed Liquidateur amiable of NTF.

**Facts Relevant to this Motion**

**A.     Description of the Records**

7.      Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers. Nortel's technologies spanned access and core networks and supported multimedia and business-critical applications. Nortel's networking solutions consisted of hardware, software and services. Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

8.      Prior to the Petition Date, NNC instituted a single records retention policy relating to the retention of hard copy documents and certain types of electronic data for its subsidiaries and global businesses, including NNI and the other Debtors, titled the Worldwide Records Management Program (the "Nortel Records Management Procedures"). The Nortel Records Management Procedures provided for the retention and disposal of various categories of hard copy documents and electronic data based upon many criteria, including the type of hard copy document or electronic data, its date, its relevancy or lack thereof to ongoing businesses or litigation, as well as the periods of time such hard copy documents and electronic data must be maintained pursuant to relevant Retention Laws.

9.      Since the Petition Date, while additional materials relevant to the ongoing chapter 11 cases have been created, the Debtors' normal course process of records destruction has been suspended. As a result, the Debtors continue to retain significant amounts of pre-2009 hard copy

and electronic records that would have been disposed of in the normal course but for the commencement of these cases. See Schultea Decl. ¶ 2.[5]

10. The Debtors are currently preserving and storing electronic data on servers and in the form of hard drives, disks and preserved backup tapes ("Electronic Data"). See Appendix A (listing Electronic Data). The Electronic Data is currently stored at the Debtors' facilities at Research Triangle Park, North Carolina ("Research Triangle Park"), with certain preserved backup tapes also residing at off-site storage facilities managed by Iron Mountain, Inc. ("Iron Mountain"),[6] Archive America and DataSafe (Iron Mountain, Archive America and Data Safe together, the "Off-Site Facilities"). See Schultea Decl. ¶ 7.

11. The Debtors' lease for their facility at Research Triangle Park (the "Lease") terminates on July 31, 2016 (the "Lease Termination Date"). Id. ¶ 9. The Debtors do not have a right of renewal under the Lease, and they must remove all equipment from the premises, including the servers, hard drives, disks and preserved backup tapes that make up the Electronic Data, in order to restore the facility to its pre-Lease conditions before moving out. Id. The failure to do so carries significant financial penalties. During the first 90 days after the Lease Termination Date, the Lease provides for a monthly penalty (a "Holdover Penalty") of 125% of

---

[5] In one limited instance, the Debtors sought and received permission from the Court to dispose of certain hard copy product shipping and storage documentation that was water-logged and otherwise damaged. See Debtors' Motion for Entry of an Order Approving the Disposal of Certain Product Shipping and Storage Documentation [D.I. 6701]. Relatedly, nearly two years into these cases, on September 17, 2010, as Record preservation costs mounted, the Debtors believed that they no longer needed a large majority of their stored hard copy documents and electronic data. To implement an orderly disposal process, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving Procedures for the Abandonment, Disposal, or Destruction of Specified Hard Copy Documents and Electronic Data; (II) Waiving Compliance with Certain Retention Laws and Ordinances; and (III) Granting Related Relief* [D.I. 3965] (the "Document Disposal Motion"). In light of the stage of the proceedings, and after certain parties expressed reservations about abandoning documents at that time, the Debtors adjourned consideration of the Document Disposal Motion without prejudice. The Debtors never requested that the Court rule on the Document Disposal Motion.

[6] The Off-Site Facilities include sites in Atlanta, Georgia; Baltimore, Maryland; Boston, Massachusetts; Chicago, Illinois; Dallas, Texas; Denver, Colorado; Kansas City, Missouri; Memphis, Tennessee; Minneapolis, Minnesota; Nashville, Tennessee; San Jose/Santa Clara, California; Raleigh, North Carolina; San Francisco, California; South Florida and Toronto, Canada. See Schultea Decl. ¶ 7

the Lease's monthly costs if the Debtors have not departed from the Lease premises on the Lease Termination Date. This Holdover Penalty would cost the Debtors approximately $1.2 million each month. Id. If the Debtors remain in the Lease premises beyond the 90-day period after the Lease Termination Date, the Holdover Penalty jumps to 150% of the Lease's monthly costs—an amount estimated at approximately $1.35 million per month. Id. The Debtors anticipate that they will require six months to complete the move-out and premises restoration process. Id. ¶ 9.

12. Allowing the Debtors to dispose of the Records also minimizes the costs associated with the Debtors' transition from the facility at Research Triangle Park when the Lease terminates. See Schultea Decl. ¶ 10. At that time, requiring the Debtors to retain and transport all of their Records—including over 420 servers the Debtors no longer need or are unlikely to be able to access—to storage or a new facility would force them to incur increased moving costs and expenses that could be avoided if the Motion were approved. Id.

13. Since the Petition Date, the Debtors also have continued to pay to store and otherwise retain at the Off-Site Facilities approximately 141,300 boxes of hard copy documents created prior to the bankruptcy filing (the "Hard Copy Documents" together with Electronic Data, the "Records"). See Appendix B (listing Hard Copy Documents). When the Debtors must access Hard Copy Documents, the Debtors request Hard Copy Documents from the Off-Site Facilities by reviewing indices of documents provided by each Off-Site Facility. Schultea Decl. ¶ 7. The monthly cost to the Debtors of maintaining the Hard Copy documents at the Off-Site Facilities is approximately $70,000. Id. Granting the Motion would reduce the Debtors' Hard Copy Document storage costs by approximately $48,000 per month, resulting in an estimated savings of over $576,000 annually. Id.

**B.     Accessing The Records**

14.     The Debtors' work force continues to dwindle. At the Petition Date, the Debtors' work force totaled approximately 8,911 employees. When the Debtors filed the Document Disposal Motion in 2010, approximately 830 employees remained. Now, over five years after filing the Document Disposal Motion, the Debtors have no direct employees and rather pay for the services of just three former Nortel employees through a third-party staffing agency. See Schultea Decl. ¶ 3.

15.     Over a year and a half after the Petition Date, to assist the Debtors with their wind-down efforts and the "preservation, organization, management and destruction of records," the Debtors requested permission to retain RLKS Executive Solutions LLC ("RLKS") as a consultant. See *Debtors' Application for Entry of an Order Authorizing Employment and Retention of RLKS Executive Solutions LLC as Consultants to the Debtors Nunc Pro Tunc to July 9, 2010* ¶ 21 [D.I. 3741]; *Order Authorizing Employment and Retention of RLKS Executive Solutions LLC as Consultants to the Debtors Nunc Pro Tunc to July 9, 2010* [D.I. 3800].

16.     Although RLKS is now familiar with maintaining the Debtors' Records in their current postpetition form, RLKS lacks comprehensive substantive knowledge about the contents of the Records. See Schultea Decl. ¶ 4. Aside from the knowledge of the Debtors' few remaining former employees still working for the Debtors and RLKS's and the Debtors' ability to review the limited indices available to them, the Debtors' ability to locate, access and maintain their aging hard copy and Electronic Data is severely limited. Id. ¶ 5. There exist large quantities of both Hard Copy Documents and Electronic Data where the Debtors and RLKS have little if any information available regarding the contents or location of relevant data. Id.

7

**C.     The Canadian Records Disposal Order**

17.     On August 5, 2015, the Canadian Debtors moved for authorization to dispose of their hard copy documents and electronic data.  On August 26, 2015, the Canadian Court entered an order (the "Canadian Document Disposal Order"), attached hereto as Exhibit C, which enabled the Canadian Debtors to dispose or transfer custody of the following records:

- a.    Hard Copy Documents—

    - (i)    Employee files transferred to Morneau Shepell Ltd., the administrator of Nortel Canadian registered pension plans, subject to a separate agreement with the Debtors to allow certain access rights to the employee files transferred to Morneau Shepell Ltd.; and

    - (ii)   All other hard copy documents stored at Iron Mountain from on or before December 31, 2002.

- b.    Electronic Data—

    - (i)    Media tapes relating to the Canadian Debtors' point in time backups of their financial reporting system and daily backups after the year 2000; and

    - (ii)   Servers, electronic records, applications and programs including the Canadian Debtors' document management system, Livelink.

See Ex. C at 4 ¶ 10.  The Canadian Document Disposal Order also approved the Canadian Debtors' proposed retention of the following records:

- a.    Hard Copy Documents—

    - (i)    Hard copy documents received at Iron Mountain from the Canadian Debtors on or after January 1, 2003;

    - (ii)   All hard copy records stored at Iron Mountain and coded to the legal and tax departments;

    - (iii)  Additional hard copy records, selected following a review of the Canadian Debtors' Iron Mountain indices, related to employees, intellectual property and other legal and tax information that may be of ongoing relevance to the proceedings in the Canadian Court;

  b. <u>Electronic Data</u>—

    (i) Historical and current financial reporting systems (Oracle, SAP and Nav);

    (ii) Employee and human resources related information;

    (iii) Employee hard drives and hard drive backups;

    (iv) Legal file index (Law Record Management System);

    (v) Media back-up tapes relating to the post-Petition Date period necessary to restore current system capabilities; and

    (vi) the database of documents collected and/or received by the Canadian Debtors in connection with the ongoing allocation and claims litigation.

See id. In addition, the Canadian Document Disposal Order approved a process for parties in interest to request additional information about documents proposed to be destroyed, to object to the destruction of certain documents, to allow the Monitor and the Canadian Debtors to resolve any objections without further involving the Canadian Court and to enable the Canadian Court to finally resolve any ongoing retention disputes. Id.

**D. The Debtors' Proposed Document Retention**

18. Following a review of the available indices for the Records, a review of the Debtors' remaining document retention obligations stemming from certain post-petition sale agreements and litigation document retention obligations, and based upon a review with the Debtors' consultants at RLKS of the Hard Copy Documents and the Electronic Data, including the remaining applications, programs and databases on the Debtors' servers and the Debtors' capabilities to maintain the information technology infrastructure to support such Electronic Data, the Debtors, by this Motion, request authorization to preserve the following classes of Records:[7]

---

[7] The Debtors reserve the right to seek permission to dispose of some or all of these classes of records at a subsequent time.

I. **Hard Copy Documents—**

    a. All hard copy records stored at Iron Mountain with a receipt date, or a last accessed date, on or after January 1, 2003, regardless of the type of document or subject matter concerned; and

    b. All Hard Copy Documents stored at Iron Mountain, regardless of date, contained in boxes coded to the legal or tax departments or otherwise coded as environmental, employee human resources, employee medical, employee pension and employee payroll data and certain additional records that may have continuing relevance to the issues before the Court (the "Designated Documents").

II. **Electronic Data—**

    a. historical and current financial reporting systems (Oracle, SAP and Nav);

    b. the Debtors' current document management systems (Livelink and IDA);

    c. the Debtors' Clearcase SNMP servers;

    d. employee and human resources related information;

    e. employee hard drives and hard drive backups;

    f. legal file index and law record management system;

    g. Media back-up tapes relating to the post-Petition Date period necessary to restore current system capabilities; and

    h. the database of documents held by the Debtors in connection with the ongoing allocation and claims litigation.

See apps. A–B. The Debtors propose to dispose of all other Hard Copy Documents and Electronic Data, which include, without limitation, the following types of Records:

I. Hard Copy Documents—

    a. All Hard Copy Records stored at Iron Mountain with a receipt date, or a last accessed date, before January 1, 2003, other than the Designated Documents;

II. Electronic Records—

        a.        All Electronic Data specified on "Appendix B" hereto, under the heading "Non-Retained Servers," including any electronic records, applications and programs stored on such servers; and

        b.        All media tapes that do not relate to restoration of current system capabilities.

19.     The Debtors also propose that the Court approve the document disposal procedures attached as Exhibit 1 to the Order (the "<u>Document Disposal Procedures</u>"), which, similar to the procedures approved in the Canadian Document Disposal Order, would permit stakeholders in the Debtors' cases to request and access further information regarding the Records proposed to be disposed of, to permit stakeholders to object to the disposal of certain Records by a specified objection bar date and to permit the Debtors to resolve objections, if any, to the disposal of Records without further hearing or notice or, alternatively, to bring any unresolved objections to the Court for final resolution.

## **Relief Requested**

20.     By this Motion, the Debtors seek (i) approval of (a) their request to abandon or dispose of hard copy documents and Electronic Data listed on Appendix A and Appendix B, respectively, attached hereto and (b) the Document Disposal Procedures; (ii) waiving the Debtors' compliance with certain Retention Laws[8]; and (iii) granting related relief.

21.     Approval of this Motion and the Document Disposal Procedures would bring significant cost savings to the Debtors' estates, enable the Debtors to end their Lease at Research Triangle Park on time and without penalty and ensure consistency by granting the Debtors the same authority that the Canadian Court has provided to the Canadian Debtors. Accordingly, the

---

[8] While the Debtors believe that section 554 of the Bankruptcy Code provides sufficient authority to abandon, dispose of and/or destroy a debtor's documents regardless of any generally applicable Retention Laws (including, for example and without limitation, the Health Insurance Portability and Accountability Act of 1996 and the Sarbanes-Oxley Act of 2002), the Debtors seek this additional relief in an abundance of caution. See <u>In re Penn Traffic</u>, Order Authorizing Abandonment, Disposal, and/or Destruction of Certain Documents, Books and Records and Waiving Compliance with Certain Retention Laws and Ordinances. May 23, 2010, PJW [D.I. 926] and related Motions [D.I. 543, 919].

Debtors seek an order approving the Motion and the Document Disposal Procedures attached to the Proposed Order as Exhibit 1.

**Basis for Relief**

**A.    Abandonment, Disposal of and/or Destruction of Hard Copy Documents and Electronic Data Under Sections 105, 363, and 554 of the Bankruptcy Code**

22.    The Bankruptcy Court has "exclusive jurisdiction of all the property wherever located, of the debtor as of the commencement of [its] case, and of property of the estate." 28 U.S.C. § 1334(e); 28 U.S.C. § 157(a). The Bankruptcy Court may implement this broad jurisdiction through the use of section 105 of the Bankruptcy Code, which permits Bankruptcy Courts to "issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

23.    Pursuant to section 554 of the Bankruptcy Code: "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."

24.    Courts use the business judgment standard when reviewing the Debtors' decision to abandon property that is either of inconsequential value or burdensome to the estate. See In re Slack, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) ("The trustee's power to abandon property is discretionary . . . . The court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority.").

25.    Indeed, Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b)(1) of the Bankruptcy Code, courts should generally approve a non-ordinary course transaction if the proposed use of estate assets is within the debtor's reasonable business judgment. See e.g., In re Martin, 91 F.3d 389,

395 (3d Cir. 1996) (stating that the court generally defers to the trustee's judgment so long as there is a legitimate business justification); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); In re Delaware & Hudson R.R. Co., 124 B.R. 169, 175-76 (D. Del. 1991).

### B. Approving the Motion and the Document Disposal Procedures is in the Best Interests of the Debtors' Estates and All of Their Stakeholders

26.  Approval of the Motion and the Document Disposal Procedures is necessary and appropriate because it is no longer imperative that all of the Hard Copy Documents and Electronic Data within the Debtors' possession, custody and control be retained. The burden of storing this unneeded information far outweighs any benefit of continuing to expend the Debtors' resources to maintain it. Indeed, in light of the orderly sales of the Debtors' assets and the continuing wind-down of the Debtors' affairs, there is no business reason to continue to retain many categories of Hard Copy Documents and Electronic Data; abandoning or disposing of the Hard Copy Documents and Electronic Data is simply another aspect of the Debtors' wind down processes. Therefore, it is in the best interests of the Debtors' estates to reduce the continuous accrual of off-site storage fees as this reduces the costs associated with the administration of the estate.

27.  To start, the Debtors have reviewed their ongoing document retention obligations stemming from the various post-petition business line sales.[9] The Debtors are obligated to preserve certain pre-business line sale closing tax documents until the expiration of the relevant statute of limitations. In addition to these tax-related obligations, as of the filing of this Motion,

---

[9] The information in this summary is for general context and is qualified in its entirety by the specific terms of each sale agreement.

the Debtors are under continuing obligations to retain certain documents related to the sales of certain businesses to Ericsson and Genband.  Therefore, the Debtors have proposed retaining all Hard Copy Documents coded to the tax department, in addition to the Electronic Data consisting of the Debtors' document management systems and historical and current financial reporting systems.  Moreover, all of the purchasers in these business line sales—including Ericsson and Genband—will receive notice of this Motion and will have the opportunity to contact the Debtors regarding the relief sought in this Motion and/or avail themselves of the Document Disposal Procedures, if necessary.

28.     Additionally, in formulating this proposal and deciding what Records should and should not be retained, the Debtors considered ongoing litigations and proceedings—including ongoing adversary proceedings and the continuing allocation dispute between the Debtors, the Canadian Debtors and the EMEA Debtors.  Accordingly, the Debtors currently intend to continue to maintain all Hard Copy Documents, regardless of subject, entered into or accessed at an Off-Site Storage Facility after January 1, 2003—over six years before the Petition Date.  Moreover, the Debtors are not seeking authority through this Motion to dispose of any document coded to the legal or tax departments.  The Debtors also currently intend to maintain certain categories of Electronic Data, including historical and current financial reporting systems, the Debtors' document management systems, the Debtors' Clearcase SNMP servers, employee and human resources related information, employee hard drives and hard drive backups, the legal file index and law record management system, and the database of documents held by the Debtors in connection with the ongoing allocation and claims litigation.

29.     Granting the Motion also promises sizeable cost savings for the Debtors' estates.  Currently, the Debtors spend approximately $70,000 per month to store the Hard Copy

Documents at the Off-Site Facilities.  Granting the Motion would reduce the Debtors' Hard Copy Document storage costs by approximately $48,000 per month, saving over $576,000 annually.  If the Debtors are unable to begin the process of timely transitioning from their premises at Research Triangle Park, the Debtors also face significant financial penalties.  Granting the Motion alleviates these financial concerns.

30.     As a general matter, the Debtors' proposal is similar to the document disposal process proposed by the Canadian Debtors and approved by the Canadian Court.  Like the relief granted to the Canadian Debtors, the Debtors' process takes care to retain categories of Hard Copy Documents and Electronic Data that are likely to be of ongoing relevance to these proceedings, while also, at this stage of these cases, enabling the Debtors to further their wind-down efforts and avoid unnecessary expenditures, to the benefit of the Debtors' estates and their stakeholders.

31.     Moreover, approving the Motion would approve the Document Disposal Procedures, enabling a cost-effective process through which interested parties would be able to request further information regarding the types of Records proposed to be disposed of, stakeholders would be able to object to the disposal of certain Records by a specified objection bar date and would permit the Debtors to resolve objections, if any, to the disposal of Records without further hearing or notice.  Alternatively, any unresolved objections would be brought to the Court for final resolution.

32.     Accordingly, in light of the steps taken to preserve relevant Hard Copy Documents and Electronic Data, the ongoing costs to the Debtors of maintaining the Records, the impending termination of the Lease, the parallel relief granted to the Canadian Debtors by the Canadian Court and the ability of parties in interest to request further information and object, if

necessary, the Debtors seek authority, pursuant to 11 U.S.C. §§ 105, 363 and 544 to abandon or destroy those records as set forth on Appendix A and B, in accordance with this Motion, which are of "inconsequential value and benefit to the estate."

**C.   Waiver of Local, State and Federal Statutes, Rules and Ordinances Restricting the Abandonment, Disposal or Destruction of Records**

33.   In the context of bankruptcy cases where hard copy documents and Electronic Data to be abandoned do not implicate any imminent or identifiable risk to the public welfare, enforcement of such Retention Laws can be waived.  See In re Unidigital, Inc., 262 B.R. 283, 286 (Bankr. D. Del. 2001).

34.   Therefore, the Debtors seek authority to abandon or dispose of hard copy documents and Electronic Data without complying with applicable Retention Laws governing the retention and preservation of certain types of hard copy documents and Electronic Data, including, without limitation, Retention Laws related to employee and medical records and business records in hard copy form; provided, however, that the Debtors will continue to comply with such Retention Laws to the extent that compliance is necessary to ensure the government's interest in public health and safety.  However, in the context of bankruptcy cases where the documents and records to be abandoned do not implicate any imminent or identifiable risk to the public welfare, enforcement of such Retention Laws can be waived.[10]

35.   Here, any requirement that the Debtors retain and preserve all of the Hard Copy Documents and Electronic Data in their possession, custody or control hinders the Debtors'

---

[10]   The Supreme Court recognized a limitation to a debtor's ability to abandon property pursuant to section 554 of the Bankruptcy Code in Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection, 474 U.S. 494 (1986). In response to this so-called public health exception, however, this Court has held that "the majority of courts have read the exception to abandonment narrowly by disallowing abandonment only where there is an imminent harm to the public health or safety." In re Unidigital, Inc., 262 B.R. at 286. Consequently, debtors should be permitted to abandon property, absent an imminent harm to the public health or safety, when the decision to do so is made pursuant to the exercise of the debtor's reasonable business judgment.

16

winding down efforts and creates unnecessary expense for the Debtors' estates, contrary to federal bankruptcy policy. As noted above, a substantial portion of the Hard Copy Documents and Electronic Data currently within the Debtors' possession, custody or control predates the years before the Petition Date and any requirement to retain them further is "not reasonably calculated to protect the public health or safety from imminent and identifiable harm." <u>Midlantic Nat'l Bank</u>, 474 U.S. at 507.

36. Accordingly, the Court may permit the Debtors to abandon, dispose of and/or destroy the hard copy documents and Electronic Data that the Debtors would otherwise be required to keep. *Cf.* <u>N.L.R.B. v. Bildisco and Bildisco</u>, 465 U.S. 513, 523-24 (1984) (permitting a debtor-in-possession to reject contracts where rejection would otherwise cause a violation of the National Labor Relations Act).

37. For the reasons discussed above, the Debtors request that the Court waive compliance with any Retention Laws restricting the Debtors' abandonment, disposal and/or destruction of the hard copy documents and Electronic Data.

**Notice**

38. Notice of this Motion has been given via first class mail to (i) the affiliates listed on the Affiliate List; (ii) counsel to the Creditors' Committee; (iii) counsel to the Bondholder Group; (iv) the U.S. Trustee; (v) the Internal Revenue Service; (vi) applicable state and local taxing and governmental authorities; (vii) the Securities and Exchange Committee; (viii) counterparties to the 363 Sales; (ix) the Monitor; (x) the Joint Administrators; (xi) the Rule 2002 list established in these chapter 11 cases; and (xii) all other creditors and indenture trustees in accordance with Rule 6007. The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

39.     As described above, the Debtors filed a motion seeking approval of procedures to notify parties in interest of potential Record destruction, but such motion was never heard by the Court.  Accordingly, no prior request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  November 11, 2015         CLEARY GOTTLIEB STEEN & HAMILTON LLP
       Wilmington, Delaware

                                   Lisa M. Schweitzer (admitted *pro hac vice*)
                                   One Liberty Plaza
                                   New York, New York 10006
                                   Telephone:  (212) 225-2000
                                   Facsimile:  (212) 225-3999

                                   - and -

                                   MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                     */s/ Andrew R. Remming*
                                   Derek C. Abbott (No. 3376)
                                   Eric D. Schwartz (No. 3134)
                                   Andrew R. Remming (No. 5120)
                                   1201 North Market Street
                                   P.O. Box 1347
                                   Wilmington, Delaware 19801
                                   Telephone:  (302) 658-9200
                                   Facsimile:  (302) 658-3989

                                   *Counsel for the Debtors*
                                   *and Debtors in Possession*