# **EXHIBIT B**

# OBJECTION FORM

| Objector[1] Identification | | |
|---|---|---|
| Name of Objector: | Name of Contact: | |
| VTech Telcommunications Ltd. and VTech Communications, Inc. | John Abramic | |
| Address: Steptoe & Johnson LLP, 115 S. LaSalle | Phone #: 312-577-1264 | |
| Suite 3100 | Fax #: 312-577-1370 | |
| City: Chicago | State: IL | Zip Code: 60603 | E-mail: jabramic@steptoe.com |

**Description of Disputed Records:[2]**

Documents responsive to the subpoena (attached as Exhibit A to this form) from the U.S. District Court for the Northern District of Texas served on Nortel Networks Inc. by Objector on November 26, 2014.

**Basis for Objection (including, without limitation, the legal basis for the Debtors being required to preserve the Disputed Records and/or the legal basis for the Objector to be given access to the Disputed Records):**

The documents are responsive to a valid subpoena, duly and legally issued, and served upon Nortel Networks Inc.  Objectors are defendants in a patent infringement lawsuit pending in the Northern District of Texas.  The patents at issue in the suit were formerly owned by Nortel and discovery of Nortel is necessary for objectors' defense of the suit.

**Objector's proposal to resolve the Objection:**

Objector proposes that the parties complete the procedures of the Discovery Protocol entered by the Court for the production of documents responsive to subpoenas served upon Nortel Networks Inc. Objector also proposes that the Debtor review the documents proposed to be destroyed for any documents that are responsive to the attached subpoena and produce and/or preserve those documents.

| Signature: | Name: John L. Abramic |
|---|---|
| *[signature]* | Title: Partner, Steptoe & Johnson |
| Date: 1/13/2016 | Signed at: 115 S. LaSalle, Chicago, IL |

**Delivery of Objection Form**

This Request Form must be received by the Debtors by no later than <u>4:00 p.m. (E.T.) on January 13, 2016</u>, by prepaid ordinary mail, courier, personal delivery, facsimile or electronic or digital transmission at the following address:

Kathryn Schultea
RLKS Executive Solutions LLC
P.O. Box 131726
Houston, TX 77219-1726
E-mail: kschultea@rlks.net

With a
copy to:

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006

Attention: Lisa M. Schweitzer
E-mail: lschweitzer@cgsh.com
Fax: 212-225-3999

---

[1]     Capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Order of the United States Bankruptcy Court for the District of Delaware dated December 15, 2015 (the "Order").

[2]     If additional space is required, please provide additional information as a schedule attached to this form.

# Exhibit A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Northern District of Texas

| | |
|---|---|
| Spherix Incorporated | ) |
| _Plaintiff_ | ) |
| v. | )  Civil Action No.  3:13-cv-3494-M |
| VTech Telecommunications Ltd. and | ) |
| VTech Communications, Inc. | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                Nortel Networks Inc.
           c/o The Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801
_____
_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:      See Attachment A, attached

| Place: Stat Office Solutions<br>           1201 Orange Street, 7th Floor<br>           Wilmington, DE 19801 | Date and Time:<br><br>           12/15/2014 9:00 am |
|---|---|

❏ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   11/26/2014

|  _CLERK OF COURT_ | | |
|---|---|---|
| | OR | |
| _____ | | /s/ James R. Nuttall |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_      VTech
Telecommunications Ltd. and VTech Communications Inc. _____ , who issues or requests this subpoena, are:

James R. Nuttall, 115 S. LaSalle, Suite 3100 Chicago, IL 60603, jnuttall@steptoe.com, 312-577-1260

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Affidavit of Process Server

SPHERIX INCORPORATED          VS   VTECH TELECOMMUNICATIONS LTD          3:13-CV-3494-M

PLAINTIFF/PETITIONER          DEFENDANT/RESPONDENT          CASE NUMBER

KEVIN S. DUNN _____ being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.    RECEIVED 11/26/14

Service: I served NORTEL NETWORKS, INC.
                  NAME OF PERSON / ENTITY BEING SERVED

with (list documents) SUBPOENA TO PRODUCE

by leaving with AMY MCLAREN                    (AUTHORIZED PERSON)          At
                NAME                            RELATIONSHIP

☐ Residence _____
                ADDRESS                    CITY / STATE

☒ Business  C/O THE CORPORATION TRUST COMPANY (registered agent) 1209 ORANGE ST. WILMINGTON, DE 19801
                ADDRESS                    CITY / STATE

On 11/26/14 _____ AT 3:10 PM
            DATE                    TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on _____
                                                                        DATE

from _____
        CITY            STATE            ZIP

**Manner of Service:**
☒ CORPORATE SERVICE
☐ **Personal:** By personally delivering copies to the person being served.
☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.
☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

☐ **Non-Service:** After due search, careful inquiry and diligent attempts at the address (es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address  ☐ Moved, Left no Forwarding  ☐ Service Cancelled by Litigant  ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist  ☐ Other _____

**Service Attempts:** Service was attempted on: (1) _____ (2) _____
                                                DATE      TIME          DATE      TIME

(3) _____ (4) _____ (5) _____
    DATE      TIME        DATE      TIME        DATE      TIME

AGE    35    Sex F    Race W    Height 5'6    Weight 130    HAIR BROWN

                                                SIGNATURE OF PROCESS SERVER

SUBSCRIBED AND SWORN to before me this 26TH day of NOVEMBER ,2014.

                                                SIGNATURE OF NOTARY PUBLIC

MELISSA HARMON
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires 12/29/2015

NOTARY PUBLIC for the state of DELAWARE

NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

## ATTACHMENT A

## DEFINITIONS

1.      "YOU," "YOUR," and "NORTEL" means Nortel Networks Corporation and

Nortel Networks Inc., their officers, directors, current and former employees, counsel, agents,

consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing,

and their affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors

and successors in interest, and any other legal entities, whether foreign or domestic, that are

owned or controlled by Nortel Networks Corporation or Nortel Networks Inc., and all

predecessors and successors in interest to such entities, including Alteon WebSystems, Inc.,

Alteon WebSystems International, Inc., Architel Systems (U.S.) Corporation, Bay Networks,

Inc., CoreTek, Inc., New Oak Communications, Inc., Nortel Altsystems Inc., Nortel Altsystems

International Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks

Cable Solutions Inc., Nortel Networks (CALA) Inc., Nortel Networks Capital Corporation,

Nortel Networks Global Corporation, Nortel Networks HPOCS Inc., Nortel Networks

International Corporation, Nortel Networks International Inc., Nortel Networks Limited, Nortel

Networks Optical Components Inc., Nortel Networks Technology Corporation, Northern

Telecom International Inc., Qtera Corporation, Sonoma Systems, and Xros, Inc.

2.      "ROCKSTAR" means Rockstar Consortium US LP; their officers, directors,

current and former employees, counsel, agents, consultants, representatives, and any other

PERSONS acting on behalf of any of the foregoing, their affiliates, parents, divisions, joint

ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other

legal entities, whether foreign or domestic, that own or control them, are owned or controlled by

them, or share with them common ownership or control, as well as predecessors and successors

1

in interest to such entities, including Bockstar Technologies LLC, Constellation Technologies LLC, MobileStar Technologies LLC, NetStar Technologies LLC, Rockstar Bidco GP, Rockstar Bidco LLC, Rockstar Bidco LP, Rockstar Consortium Inc., Rockstar Consortium LLC, or Rockstar Consortium US LP.

3.      "ROCKSTAR CONSORTIUM" means Rockstar Consortium US LP; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

4.      "NETSTAR" means NetStar Technologies LLC; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

5.      "ROCKSTAR BIDCO GP" means Rockstar Bidco GP, LLC; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it,

2

or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

6.      "ROCKSTAR BIDCO LLC" means Rockstar Bidco LLC; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

7.      "ROCKSTAR BIDCO LP" means Rockstar Bidco LP; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

8.      "ROCKSTAR CONSORTIUM INC." means Rockstar Consortium Inc.; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

9. "ROCKSTAR CONSORTIUM LLC" means Rockstar Consortium LLC; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing; its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

10. "APPLE" means Apple Inc.; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

11. "EMC" means EMC Corporation; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

12. "MICROSOFT" means Microsoft Corporation; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint

ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other

legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it,

or share with it common ownership or control, as well as predecessors and successors in interest

to such entities.

13.    "SONY" means Sony Corporation of America; its officers, directors, current and

former employees, counsel, agents, consultants, representatives, and any other PERSONS acting

on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint

ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other

legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it,

or share with it common ownership or control, as well as predecessors and successors in interest

to such entities.

14.    "ERICSSON" means Ericsson; its officers, directors, current and former

employees, counsel, agents, consultants, representatives, and any other PERSONS acting on

behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures,

licensees, franchisees, assigns, predecessors and successors in interest, and any other legal

entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or

share with it common ownership or control, as well as predecessors and successors in interest to

such entities.

15.    "BLACKBERRY" means Blackberry Ltd. and its predecessors, including without

limitation Research In Motion Ltd.; its officers, directors, current and former employees,

counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of

the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees,

franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether

foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

16.    "ANY ROCKSTAR ENTITY" means any of ROCKSTAR, ROCKSTAR CONSORTIUM, NETSTAR, ROCKSTAR BIDCO GP, ROCKSTAR BIDCO LLC, ROCKSTAR BIDCO LP, ROCKSTAR CONSORTIUM INC., and ROCKSTAR CONSORTIUM LLC.

17.    "ANY ROCKSTAR SHAREHOLDER" means any current or former shareholder, member, owner, partner, or other equity owners of ANY ROCKSTAR ENTITY, including APPLE, EMC, MICROSOFT, SONY, ERICSSON, and BLACKBERRY.

18.    "NORTEL ADVISOR" means any THIRD PARTY or ANY ROCKSTAR ENTITY from whom NORTEL sought or received advice REGARDING the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, NORTEL'S patents, or other intellectual property, and the auction therefor, including, but not limited to, David Descoteaux, Lazard Freres & Co. LLC, Global IP Law Group, Justin Lux, Portfolio Advisors LLC, Colin Keenan, Brightwood Capital Advisors, LLC, Edouard Gueyffier, Estin & Co., Kshitij Bhatia, or Warburg Pincus India Pvt. Ltd.

19.    "SPHERIX" means Plaintiff, Spherix Incorporated; its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other PERSONS acting on behalf of any of the foregoing, and its affiliates, parents, subsidiaries, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that own or control it, are owned or controlled by it, or share with it common ownership or control, as well as predecessors and successors in interest to such entities.

20.     "VTECH" means Defendants VTech Telecommunications Ltd and VTech Communications, Inc.

21.     "UNIDEN" means Uniden Corporation and Uniden America Corporation; their officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other Persons acting on behalf of any of the foregoing, and their affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest; and any other legal entities, whether foreign or domestic, that are owned or controlled by Uniden Corporation, and all predecessors and successors in interest to such entities.

22.     "PANASONIC" means Panasonic Corporation, Panasonic Corporation of North America and Panasonic AVC Networks Company; their officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other Persons acting on behalf of any of the foregoing, and their affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest; and any other legal entities, whether foreign or domestic, that are owned or controlled by Panasonic Corporation, and all predecessors and successors in interest to such entities.

23.     "THIS LITIGATION" means the litigation referred to by the caption Spherix Incorporated v. VTech Telecommunications Ltd and VTech Communications, Inc., No. 3:13-cv-3494, filed in the Northern District of Texas.

24.     "UNIDEN LITIGATION" means the litigation referred to by the caption Spherix Incorporated v. Uniden Corporation, et al., No. 3:13-cv-3496, filed in the Northern District of Texas.

25.     "'599 PATENT" means U.S. Patent No. 5,581,599, entitled "Cordless Telephone Terminal," all underlying patent applications, all continuations, continuations-in-part,

divisionals, reissues, all parent applications, sibling applications, any other patent applications in the '599 PATENT family, as well as any patents that have issued or may issue from any of the foregoing.

26.    "'195 PATENT" means U.S. Patent No. 5,752,195, entitled "Cordless Telephone Terminal," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, all parent applications, sibling applications, any other patent applications in the '195 PATENT family, as well as any patents that have issued or may issue from any of the foregoing.

27.    "'814 PATENT" means U.S. Patent No. 5,892,814, entitled "Flexible, Tapeless, Personalized Auto-Attendant Telephone," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, all parent applications, sibling applications, any other patent applications in the '814 PATENT family, as well as any patents that have issued or may issue from any of the foregoing.

28.    "'899 PATENT" means U.S. Patent No. 6,614,899, entitled "Method and Apparatus for Providing Advanced IP Telephony Services in an Intelligent Endpoint," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, all parent applications, sibling applications, any other patent applications in the '899 PATENT family, as well as any patents that have issued or may issue from any of the foregoing.

29.    "'614 PATENT" means U.S. Patent No. 6,965,614, entitled "Method and System for Communications Between Different types of Devices," all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, all parent applications, sibling applications, any other patent applications in the '614 PATENT family, as well as any patents that have issued or may issue from any of the foregoing.

30.     "PATENTS-IN-SUIT" refers to the '599 PATENT, , '814 PATENT, '899 PATENT, and the '614 PATENT, individually and collectively, including all underlying patent applications, all continuations, continuations-in-part, divisionals, reissues, parents and siblings.

31.     "PRIOR ART" shall mean the subject matter described in 35 U.S.C. §§ 102 and 103, including but not limited to publications, articles, posters, abstracts, chapters, displays, slides, patents, physical devices, prototypes, uses, sales, and offers for sale, and any DOCUMENTS or THINGS evidencing any of the foregoing.

32.     The term "RELATED PATENTS/APPLICATIONS" shall mean (1) any United States or foreign patent or patent application related to the PATENTS-IN-SUIT by way of subject matter or claimed priority date, (2) all parent, grandparent or earlier, divisional, continuation, continuation-in-part, provisional, reissue, reexamination, and foreign counterpart patents and applications thereof, and/or (3) any patent or patent application filed by one of more of the same applicant(s) (or his or her assignees) that refers to any of (1) or (2) herein.

33.     "NAMED INVENTORS" refers to Bruce H. Tsuji, Susan J. McGarry, Steven W. Sparksman, Michel Joseph A. Brisebois, Robert Barrie Turnbull, Patrick Sollee, Christopher Jessen, Robert Barretto, Gregory T. Osterhout, James A. McAlear, Mark A. Sosebee, the named inventors of the PATENTS-IN-SUIT.

34.     The phrase "THE APPLICANTS" shall refer to the NAMED INVENTORS of the PATENTS-IN-SUIT, the prosecuting attorneys of the PATENTS-IN-SUIT, and/or other PERSONS owing a duty of candor to the U.S. Patent & Trademark Office in connection with the prosecution of the PATENTS-IN-SUIT, individually and collectively.

35.     "DOCUMENT" includes, without limitation, all written, graphic or otherwise recorded material, including without limitation, microfilms or other film records or impressions,

electronically stored information regardless of the form of storage medium, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electronic recording device, including email, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original. The foregoing specifically includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

36.     "THING" as used herein means any physical object other than a "DOCUMENT."

37.     "COMMUNICATION" means, without limitation, any transmission, conveyance or exchange of a word, statement, fact, THING, idea, DOCUMENT, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail.

38.     The term "PERSON" refers to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

39.     "THIRD PARTY" or "THIRD PARTIES" means any PERSON other than NORTEL, ANY ROCKSTAR ENTITY or SPHERIX.

40.     "INFRINGE" and "INFRINGEMENT" means direct infringement, contributory infringement, infringement by inducement, literal infringement, and infringement under the doctrine of equivalents.

41.     "REGARDING" means relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

42.     "SUBJECT MATTER IN SUIT" means the PATENTS-IN-SUIT, references in the PATENTS-IN-SUIT, and any technology NORTEL, ROCKSTAR or SPHERIX contends, contended, believes, or believed is covered by or the subject of the PATENTS-IN-SUIT.

43.     "Include" and "including" shall mean including without limitation.

44.     Use of the singular also includes the plural and vice-versa.

45.     The words "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Document Requests.

46.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

## INSTRUCTIONS

The following instructions shall apply to each of the Document Requests herein:

1.      In answering the following Document Requests, furnish all available information, including information in the possession, custody, or control of YOU or any of YOUR attorneys, directors, officers, agents, employees, representatives, associates, investigators or division affiliates, partnerships, parents or subsidiaries, and PERSONS under YOUR control, who have the best knowledge, not merely information known to YOU based on YOUR own personal knowledge. If YOU cannot fully respond to the following Document Requests after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each Document Request that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the Document Request cannot be answered fully and completely; and state what knowledge, information or belief YOU have concerning the unanswered portion of any such Document Requests.

2.      Electronic records and computerized information must be produced in an intelligible format.

3.      Selection of DOCUMENTS from the files and other sources and the numbering of such DOCUMENTS shall be performed in such a manner as to ensure that the source of each DOCUMENT may be determined, if necessary.

4.      File folders with tabs or labels or directories of files identifying DOCUMENTS must be produced intact with such DOCUMENTS.

5.      Documents attached to each other shall not be separated.

12

6.      If any information requested is claimed to be privileged or otherwise immune from discovery, please provide all information falling within the scope of the Document Request which is not privileged, and for each item of information contained in a DOCUMENT to which a claim of privilege is made, identify such DOCUMENT with sufficient particularity for purposes of a motion to compel, such identification to include at least the following:

(a)      the basis on which the privilege is claimed;

(b)      the name(s) of the author(s) of the DOCUMENT;

(c)      the name of each individual or other PERSON to whom the DOCUMENT, or a copy thereof, was sent; and

(d)      the date of the DOCUMENT

7.      If YOUR response to a particular Document Request is a statement that YOU lack the ability to comply with that Document Request, YOU must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in YOUR possession, custody, or control, in which case the name and address of any PERSON or entity known or believed by YOU to have possession, custody, or control of that information or category of information must be identified.

8.      YOUR obligation to respond to these Document Requests is continuing and its responses are to be supplemented to include subsequently acquired information in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION

### DOCUMENT REQUEST NO. 1:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS, including (a) files of the NAMED INVENTORS, (b) DOCUMENTS and THINGS REGARDING the conception, reduction to practice, research, design, development or testing of the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, or the SUBJECT MATTER IN SUIT, and (c) DOCUMENTS and THINGS REGARDING any review, valuation, or assessment of the PATENTS-IN-SUIT, or RELATED PATENTS/APPLICATIONS.

### DOCUMENT REQUEST NO. 2:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING NORTEL's relationship with ANY ROCKSTAR ENTITY, including any agreements between them and any associated due diligence, and ANY ROCKSTAR ENTITY'S acquisition of the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS, including all DOCUMENTS and THINGS, including COMMUNICATIONS, provided by NORTEL to ANY ROCKSTAR ENTITY or ANY ROCKSTAR SHAREHOLDER, REGARDING the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS as part of, in advance of, or following, any conveyance of ownership or interest in the PATENTS-IN-SUIT to ANY ROCKSTAR ENTITY.

### DOCUMENT REQUEST NO. 3:

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any attempts by NORTEL, ANY NORTEL ADVISOR, ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER, SPHERIX, or any THIRD PARTY to enforce, license, sell,

14

monetize, or otherwise generate revenue from, the PATENTS-IN-SUIT or RELATED

PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 4:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any

agreement including a conveyance, license, assignment or transfer of any rights in the

PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS, or technology or intellectual

property comparable or related to the PATENTS-IN-SUIT, RELATED

PATENTS/APPLICATIONS or the SUBJECT MATTER IN SUIT.

**DOCUMENT REQUEST NO. 5:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any

analysis or due diligence conducted by, or on behalf of, NORTEL, ANY NORTEL ADVISOR,

ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER, SPHERIX, or any THIRD

PARTY REGARDING the patentability, novelty, non-obviousness, scope, validity, invalidity,

enforceability or unenforceability of any claim in any of the PATENTS-IN-SUIT or RELATED

PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 6:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any

analysis or due diligence conducted by, or on behalf of, NORTEL, ANY NORTEL ADVISOR,

ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER, SPHERIX, or any THIRD

PARTY REGARDING the infringement or potential infringement of the PATENTS-IN-SUIT or

RELATED PATENTS/APPLICATIONS, including the identification of any potential infringers

and any analyses comparing the claims of any of the PATENTS-IN-SUIT or RELATED

PATENTS/APPLICATIONS to any product, method, or system, or any related inspection, testing, evaluation, or analysis conducted by any PERSON of any product, system, or method.

**DOCUMENT REQUEST NO. 7:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the policies, practices, and strategies of NORTEL, ANY NORTEL ADVISOR, ANY ROCKSTAR ENTITY, ANY ROCKSTAR SHAREHOLDER, or SPHERIX REGARDING the enforcement or licensing of patents.

**DOCUMENT REQUEST NO. 8:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any product, system, or method, including the commercialization of any product system, or method, that embodies any claim of the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 9:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the marking under 35 U.S.C. § 287 of any products, services, systems, or methods with the numbers of any of the PATENTS-IN-SUIT or RELATED PATENTS.

**DOCUMENT REQUEST NO. 10:**

DOCUMENTS and THINGS sufficient to identify, on an annual basis, financial information, including sales, revenue, income, profit, gross margin, costs, expenses, forecasts, projections, or budgets, for any product, system, or method that embodies any claim of the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS.

**DOCUMENT REQUEST NO. 11:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the

value of the technology claimed in any of the PATENTS-IN-SUIT, including the incremental

sales, revenue, income, or profit attributable to the use of the technology claimed in any of the

PATENTS-IN-SUIT, and the marketing, promotion, benefit, advantages, or demand of the

features embodied in the technology claimed in any of the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 12:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any

commercial success based on any of the PATENTS-IN-SUIT, any long-felt need satisfied by any

of the PATENTS-IN-SUIT, or any praise or acclaim as a result of any of the PATENTS-IN-

SUIT.

**DOCUMENT REQUEST NO. 13:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING

VTECH or any VTECH product, system or method, including NORTEL'S, ANY ROCKSTAR

ENTITY'S or SPHERIX'S awareness of any of VTECH'S activities that form the basis of any

allegation that VTECH infringes any of the PATENTS-IN-SUIT, including VTECH's marketing

and selling of cordless telephone systems and products in the United States.

**DOCUMENT REQUEST NO. 14:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING

NORTEL's practices and policies of monitoring competitors' products and technology, including

the practices and policies regarding cordless telephone products and systems.

**DOCUMENT REQUEST NO. 15:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the financial or pecuniary interest in the outcome of this THIS LITIGATION or the enforcement of the PATENTS-IN-SUIT, by NORTEL, ANY ROCKSTAR ENTITY, SPHERIX, any employee of ANY ROCKSTAR ENTITY, and former employees of NORTEL, or any THIRD PARTY, as well as the amount, percentage, or share of each such interest.

**DOCUMENT REQUEST NO. 16:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any PRIOR ART to the PATENTS-IN-SUIT, including publications or references asserted by THIRD PARTIES to be PRIOR ART to the PATENTS-IN-SUIT, or evaluated by or on behalf of NORTEL, ANY ROCKSTAR ENTITY or SPHERIX, as potential PRIOR ART to the PATENTS-IN-SUIT, and including NORTEL'S, ANY ROCKSTAR ENTITY'S, or SPHERIX'S awareness of PRIOR ART to the PATENTS-IN-SUIT, the date and circumstances pursuant to which NORTEL, ANY ROCKSTAR ENTITY or SPHERIX first learned of such PRIOR ART, and any effort by or on behalf of NORTEL, ANY ROCKSTAR ENTITY, or SPHERIX to locate PRIOR ART to the PATENTS-IN-SUIT.

**DOCUMENT REQUEST NO. 17:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any NORTEL practice or policy in connection with the preparation and filing of patent applications, including any policies or procedures REGARDING invention disclosures, when to file patent applications, patent prosecution, and the citation of PRIOR ART.

**DOCUMENT REQUEST NO. 18:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING (a) NORTEL'S efforts and ability to comply with this subpoena; (b) NORTEL'S document retention policy; (c) the existence, location and custody of documents responsive to VTECH's document requests; and (d) NORTEL's efforts to preserve, retain or destroy DOCUMENTS and THINGS.

**DOCUMENT REQUEST NO. 19:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any agreement between NORTEL and VTECH or any VTECH affiliate that includes a license to technology or intellectual property, including patent rights.

**DOCUMENT REQUEST NO. 20:**

DOCUMENTS and THINGS sufficient to show the amount of revenue, on an annual basis, received by NORTEL through the marketing and/or sale of cordless telephone systems, products, and technology.

**DOCUMENT REQUEST NO. 21:**

DOCUMENTS and THINGS sufficient to show NORTEL's annual revenue, during the time period that NORTEL was involved in the design, development, marketing, or sale of cordless telephone products, systems, or technology.

**DOCUMENT REQUEST NO. 22:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the impact on NORTEL of competition from foreign manufacturers of cordless telephone systems and products, including all DOCUMENTS and THINGS, including COMMUNICATIONS, that support or refute an assertion that competition from foreign manufacturers of cordless telephone systems and products caused or had an impact on the bankruptcy of NORTEL.

**DOCUMENT REQUEST NO. 23:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING (a) any correspondence to any standard setting organization referring or relating to the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS and (b) whether the PATENTS-IN-SUIT or RELATED PATENTS/APPLICATIONS are essential to the practice of any standard.

**DOCUMENT REQUEST NO. 24:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the September 1, 1997 License Agreement between Northern Telecom Limited, Northern Telecom Inc., and VTech Holdings Ltd., as well as any amendments or supplements thereto, including but not limited to all DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING any evaluation of any VTECH products , systems, or methods, evaluations of any NORTEL patents or applications as they might relate to any VTECH products , systems, or methods, patent claim charts, infringement or invalidity evaluations, or comparisons between any NORTEL patents and any VTECH products , systems, or methods, all draft agreements, and all DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the negotiation of any agreement or royalties paid.

**DOCUMENT REQUEST NO. 25:**

All DOCUMENTS and THINGS, including COMMUNICATIONS, REGARDING the marketing, promotion, sale, features, and patent marking of each product referenced at page 23 of the November 28, 1995 Response to the July 28, 1995 Office Action in the prosecution history of Patent Application No. 175,534:

> "As a further comment in this matter, it is brought to the Examiner's attention that the telephone company AMERITECH, which is a large and well known Midwest firm, currently has an outstanding purchase requirement with applicant for an ongoing monthly supply of 100,000 cordless telephone units that embody the present

invention.  Furthermore, for the years 1994 and 1995 to date, applicant has, without competition, supplied the marketplace with cordless caller identification telephones operating in the 46-49 MHz Consumer Electronics Band."