## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------- X
                                                       :
*In re*                                                :    Chapter 11
                                                       :
Nortel Networks Inc., *et al.,*[1]                     :    Case No. 09-10138(KG)
                                                       :
                                      Debtors.         :    Jointly Administered
                                                       :
                                                       :
                                                       :    Hearing date: March 22, 2016 at 10:00 a.m. (ET)
                                                       :    Responses due: March 11, 2016 at 4:00 p.m. (ET)
----------------------------------------------------- X

## DEBTORS' THIRTY-NINTH OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR. P. 3007 AND DEL. L.R. 3007-1 (NO-BASIS CLAIMS, INSUFFICIENT DOCUMENTATION CLAIMS, NO-BASIS 503(b)(9) CLAIMS, NO-BASIS DEFERRED COMPENSATION CLAIMS, NO-BASIS PENSION CLAIMS, NO-BASIS RETIREE CLAIMS, NO-BASIS 401(k) CLAIMS, NO-BASIS EQUITY CLAIMS AND REDUNDANT CLAIMS)

**TO THE CLAIMANTS LISTED IN <u>EXHIBIT A</u> ATTACHED TO THIS OBJECTION:**

- **CLAIMANTS' RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND BY ANY FUTURE OBJECTION(S) THAT MAY BE FILED BY THE DEBTORS.**

- **THE RELIEF SOUGHT HEREIN IS WITHOUT PREJUDICE TO THE DEBTORS' RIGHTS TO PURSUE FURTHER SUBSTANTIVE OR NON-SUBSTANTIVE OBJECTIONS AGAINST THE CLAIMS LISTED IN <u>EXHIBIT A</u>.**

- **CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS IN <u>EXHIBIT A</u>.**

- **BY THIS OBJECTION, THE DEBTORS ARE NOT SEEKING TO AFFECT ANY RIGHTS THAT CLAIMANTS HOLDING CLAIMS**

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

**LISTED IN <u>EXHIBIT A</u> MAY HAVE TO PARTICIPATE IN
DISTRIBUTIONS FROM THE PENSION BENEFIT GUARANTY
CORPORATION WITH REGARDS TO THE NORTEL NETWORKS
RETIREMENT INCOME PLAN.**

- **BY THIS OBJECTION, THE DEBTORS ARE NOT SEEKING TO
AFFECT ANY RIGHTS THAT CLAIMANTS HOLDING CLAIMS
LISTED IN <u>EXHIBIT A</u> MAY HAVE TO DISTRIBUTIONS UNDER THE
DEFERRED COMPENSATION SETTLEMENT AGREEMENT OR THE
RETIREE WELFARE SETTLEMENT AGREEMENT (AS DEFINED
BELOW).**

Nortel Networks Inc. ("<u>NNI</u>") and certain of its affiliates, as debtors and

debtors-in-possession (collectively, the "<u>Debtors</u>"), hereby object (this "<u>Objection</u>"), pursuant to

section 502 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 3007 of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 3007-1 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "<u>Local Rules</u>"), to those certain claims listed in **Exhibit A** attached

hereto and incorporated by reference.  In support of this Objection, the Debtors submit the

Declaration of John J. Ray, III in Support of Debtors' Thirty-Ninth Omnibus Objection

(Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and

Del. L.R. 3007-1 (No-Basis Claims, Insufficient Documentation Claims, No-Basis 503(b)(9)

Claims, No-Basis Deferred Compensation Claims, No-Basis Pension Claims, No-Basis Retiree

Claims, No-Basis 401(k) Claims, No-Basis Equity Claims and Redundant Claims) (the "<u>Ray</u>

<u>Declaration</u>"), attached hereto as **Exhibit B** and incorporated by reference, and respectfully state

as follows:

<u>**Jurisdiction**</u>

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 502 and 503 of the

Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

**Background**

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc. ("NN CALA"),[2] filed voluntary petitions for relief under chapter 11 of

the Bankruptcy Code, which cases are consolidated for procedural purposes only [D.I. 36].  The

Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by

the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**B.      Bar Date and Schedules**

7.      On April 20, 2009 and May 29, 2009, the Debtors (other than NN CALA) filed their Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Original Schedules") [D.I.s 616-627, 801-810].  On September 11, 2009, the Debtors filed Schedules of Assets and Liabilities and Statements of Financial Affairs for NN CALA (the "NN CALA Schedules") [D.I. 1477, 1478].  On November 4, 2009, the Debtors (other than NN CALA) filed their Amended Schedules of Assets and Liabilities and Amended Statements of Financial Affairs (together with the NN CALA Schedules, referred to as the "Amended Schedules") [D.I.s 1811-1825].

8.      On August 4, 2009, the Court entered an order (the "Bar Date Order") establishing September 30, 2009 at 4:00 p.m. (Eastern Time) (the "General Bar Date") as the last date for all creditors holding a "claim" against the Debtors (other than NN CALA) to file and

---

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

serve a written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date

Order [D.I. 1280].  On December 3, 2009, the Court entered an order establishing January 25,

2010 at 4:00 p.m. (Eastern Time) (the "CALA Bar Date") as the general claims bar date for all

creditors holding a claim against NN CALA to file and serve written proofs of claim [D.I. 2059].

The Court also entered an order fixing November 15, 2011 at 4:00 p.m. (Eastern Time) as the bar

date for filing proofs of claim in respect of certain Non-Canadian intercompany and director and

officer claims [D.I. 6464] .

9.      On each of October 31, 2011, November 7, 2011, November 15, 2011 and

November 21, 2011, the Debtors filed amended versions of Schedules E and F of the Original

Schedules and Amended Schedules of NNI, Nortel Altsystems Inc. ("Nortel Altsystems") and

NN CALA [D.I. 6702, 6719, 6780, 6827] (collectively, the "Second Amended Schedules

through the Fifth Amended Schedules").[5]  The Second Amended Schedules through the Fifth

Amended Schedules amend previously filed Schedules E and F to modify the priority and

amount of the scheduled severance claims for certain individuals terminated prior to the

applicable Petition Date.

10.     On December 10, 2014, NNI and Nortel Networks Capital Corporation

("NNCC") filed amended versions of Schedules F of their Original Schedules, Amended

Schedules, Second Amended Schedules through Fifth Amended Schedules and Sixth Amended

Schedules (collectively, the "Seventh Amended Schedules" and together with the Original

Schedules, the Amended Schedules, the Second Amended Schedules through the Fifth Amended

Schedules and the Sixth Amended Schedules, the "Schedules").  The Seventh Amended

---

[5]      Additionally, on February 21, 2012, the Debtors filed an amended version of NNI's Schedule F (the "Sixth Amended Schedules") [D.I. 7240].  The Sixth Amended Schedules amend NNI's previously filed Schedule F to modify the amount of certain scheduled trade payable claims.

Schedules amend previously filed Schedules F to modify the amount and  characterization of certain scheduled intercompany payable claims.

**C.      The Employee Claims Resolution Process**

11.      In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors.

12.      The Debtors' claims, notice and balloting agent, Epiq Bankruptcy Solutions, LLC, has prepared and maintains a register (the "Claims Register") of all proofs of claim filed against the Debtors in these chapter 11 cases.  The Debtors and their advisors are comprehensively reviewing and reconciling all claims, including both the claims listed on the Schedules and the claims asserted in the proofs of claim (including any supporting documentation).  The Debtors are also comparing the claims asserted in the proofs of claim with the Books and Records to determine the validity of the asserted claims.

13.      This reconciliation process includes identifying particular categories of claims that may be targeted for disallowance, reduction and allowance or reclassification and allowance. To reduce the number of claims, and to avoid possible double recovery or otherwise improper recovery by claimants, the Debtors continue to file omnibus objections to such categories of claims if and where warranted.  This Objection is one such omnibus objection.

14.      On December 14, 2009, the Court entered an order granting the Debtors relief from the requirements of Bankruptcy Rule 3007(e)(6) and Local Rule 3007-1(f) (the "Original Rule 3007 Order") [D.I. 2125].

15.      On September 16, 2010, the Court entered an order authorizing and approving omnibus settlement procedures to settle certain prepetition claims (the "Settlement Procedures") [D.I. 3953].

16.     Also on September 16, 2010, the Court entered an order approving a cross-border claims protocol (the "Claims Protocol") establishing procedures to promote coordination and cooperation between the Debtors and the Canadian Debtors in the resolution of certain claims filed in these chapter 11 cases and the Canadian Proceedings that raise cross-border issues [D.I. 3956].

17.     On February 7, 2012, the Court entered an order modifying the application of Local Rule 3007-1 and the Original Rule 3007 Order [D.I. 7178].

**D.     Nortel Networks U.S. Deferred Compensation Plan**

18.     Prior to the Petition Date, on or about January 1, 2000, NNI established the Nortel Networks U.S. Deferred Compensation Plan (as amended, supplemented or modified, the "Deferred Compensation Plan").[6]  In connection with the establishment of the Deferred Compensation Plan, NNI as guarantor and U.S. Bank, National Association as trustee established an irrevocable trust (the "Plan Trust") pursuant to the Nortel Networks U.S. Deferred Compensation Plan Trust Agreement dated January 1, 2000 (as amended, the "Trust Agreement").

19.     From late 2010 through late 2012, the Debtors and various participants and beneficiaries of the Deferred Compensation Plan (all of the participants in or beneficiaries of such Plan, collectively, the "Participants") litigated the disposition of the assets held by the Plan Trust pursuant to the Trust Agreement (the "Trust Assets").  Such litigation resulted in a negotiated settlement (the "Deferred Compensation Settlement Agreement")[7] of all Participants' claims against the Debtors under the Deferred Compensation Plan.  Among other things,

---

[6]     The description of the Deferred Compensation Plan is for background purposes only and is subject in all respects to the terms of the Deferred Compensation Plan.

[7]     The description of the Deferred Compensation Settlement Agreement is for background purposes only and is subject in all respects to the terms of the Deferred Compensation Settlement Agreement.

pursuant to the Deferred Compensation Settlement Agreement, an aggregate of $31,166,369.13 was paid to Participants or their transferees in satisfaction of their claims against the Debtors and other third parties with respect to the Deferred Compensation Plan (the "Deferred Compensation Claims") and such Participants released all of their Deferred Compensation Claims.

20.     The Deferred Compensation Settlement Agreement was proposed to the Bankruptcy Court pursuant to the Joint Motion For Order:  (I) Approving Compromise Among The Debtors, The Official Committee Of Unsecured Creditors, And The Ad Hoc Group Of Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan (For Themselves And All Similarly Situated Participants In And Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan) Pursuant To Rule 9019 Of The Federal Rules Of Bankruptcy Procedure; (II) Directing Payments Pursuant To 11 U.S.C. § 503(B)(1)(A) And Rule 9019; (III) Directing U.S. Bank National Association To Turn Over Assets To The Debtors; And (IV) Releasing And Settling Claims Of The Deferred Compensation Plan Participants [D.I. 9127] (the "Deferred Compensation Settlement Motion"), and was approved by the Bankruptcy Court pursuant to the Order (I) Approving Compromise Among The Debtors, The Official Committee Of Unsecured Creditors, And The Ad Hoc Group Of Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan (For Themselves And All Similarly Situated Participants In And Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan) Pursuant To Rule 9019 Of The Federal Rules Of Bankruptcy Procedure; (II) Directing Payments Pursuant To 11 U.S.C. § 503(B)(1)(A) And Rule 9019; (III) Directing U.S. Bank National Association To Turn Over Assets To The Debtors; And (IV) Releasing And Settling Claims Of The Deferred Compensation Plan Participants [D.I. 9323].  More information about the Deferred

Compensation Plan and the Deferred Compensation Settlement Agreement is available in the Deferred Compensation Settlement Motion [D.I. 9127].

21.     Because claims under the Deferred Compensation Plan have been released pursuant to the Deferred Compensation Settlement Agreement, the Debtors now seek the disallowance of such claims.

**E.     Nortel Networks Retirement Income Plan**

22.     NNI sponsored the Nortel Networks Retirement Income Plan (the "Defined Benefit Pension Plan"), a tax-qualified, single-employer, defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA"), to provide retirement benefits for certain of its employees.  See 29 U.S.C. §§ 1301(a)(13), 1321(a). As of January 1, 2009, there were approximately 22,220 present and former employees of the Debtors (and their beneficiaries) that were entitled to receive pension benefits under the terms of the Defined Benefit Pension Plan.

23.     The Defined Benefit Pension Plan was terminated under § 4042(c) of ERISA, effective July 17, 2009, pursuant to an agreement between the Pension Benefit Guaranty Corporation (the "PBGC") and the Retirement Plan Committee of the Defined Benefit Pension Plan as the plan administrator (the "Trusteeship Agreement").  The Trusteeship Agreement also appointed the PBGC as statutory trustee of the Defined Benefit Pension Plan.  On August 31, 2009, this Court entered an order authorizing the Debtors to take all necessary or appropriate actions in furtherance of the implementation of the Trusteeship Agreement [D.I. 1406].[8]

---

[8]     By Order dated September 24, 2009, this Court approved a Stipulation Regarding Filing Claims By Pension Benefit Guaranty Corporation, pursuant to which each proof of claim filed by the PBGC shall be deemed to be filed in each of the sixteen Debtors' chapter 11 cases [D.I. 1540]. On September 29, 2009, the PBGC filed four proofs of claim against each of the Debtors, as either sponsor or a controlled group member of a sponsor of the Defined Benefit Pension Plan, with respect to the Defined Benefit Pension Plan. The PBGC asserted claims for (i) the unfunded benefit liabilities of the Defined Benefit Pension Plan; (ii) contributions necessary to satisfy the minimum funding standards of the Defined Benefit Pension Plan; (iii) insurance premiums, interest and penalties with respect to the Defined Benefit Pension Plan;

**F.    Nortel Networks Retiree Welfare Plans**

24.    On June 21, 2011, an Official Committee of Retired Employees (the "Retiree
Committee") was appointed in the Debtors' chapter 11 cases relating to the potential
modification or termination of certain retiree benefits the Debtors historically provided to their
retired employees through various retiree welfare plans and other programs [D.I 5783] (the
"Retiree Welfare Plans").[9]  After more than a year of negotiations with the Retiree Committee,
including negotiations under the supervision of a Bankruptcy Court-appointed mediator, the
parties reached a settlement agreement (the "Retiree Welfare Settlement Agreement") providing
for the termination of the Retiree Welfare Plans and the discontinuance of the benefits provided
thereunder and a release of the Debtors and other third parties from liability related to Retiree
Claims (as defined in the Retiree Welfare Settlement Agreement) in exchange for a settlement
payment to the Retiree Committee.

25.    The Retiree Welfare Settlement Agreement was proposed to the Bankruptcy
Court on December 31, 2012 pursuant to the Debtors' Motion for Entry of Orders Pursuant to
11 U.S.C. § § 105, 363 and 1114 and Fed. R. Bankr. P. 9019 (A) Approving Settlement
Notification Procedures and, Subsequently (B) Approving a Settlement Agreement with the
Official Committee of Retired Employees [D.I. 9224] (the "Retiree Welfare Settlement
Motion"), and was approved by the Bankruptcy Court on April 2, 2013 [D.I. 9938].  By
agreement of the Debtors and the Retiree Committee, and as authorized by the Retiree Welfare
Settlement Agreement, the Retiree Welfare Plans were terminated in their entirety as of June 30,
2013, and a payment was made to the Retiree Committee in the amount of $66,172,000 [D.I.

---

and (iv) shortfall and waiver amortization charges.  The respective proofs of claim have been assigned numbers 4735,
4736, 4737 and 4738 in the Debtors' Claims Register (collectively, the "PBGC Claims").

[9]    The description of the Retiree Welfare Plans is for background purposes only and is subject in all respects to the terms
of the Retiree Welfare Plans.

9962].  More information about the Retiree Welfare Settlement Agreement is available in the

Retiree Welfare Settlement Motion.

**G.      Nortel Networks 401(k) Plan**

26.      NNI sponsored the Nortel Networks Long-Term Investment Plan (the "401(k)

Plan"), a 401(k) savings plan pursuant to the Internal Revenue Code.  Participating employees

elected to contribute up to the annual IRS limits on contributions and eligible compensation, and

prior to the Petition Date, NNI made matching employer contributions.   The 401(k) Plan was

terminated by NNI effective as of June 30, 2012.  All employee and employer contributions

pursuant to the 401(k) Plan, and earnings related thereto, were held in separate trust and were not

property of the Debtors' estates.

**Relief Requested**

27.      For the reasons set forth below, the Debtors object to each of the claims identified

in **Exhibit A**.  By this Objection, the Debtors respectfully request that the Court enter an order

pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local

Rule 3007-1 reducing, modifying, reclassifying or disallowing in full, as applicable, the claims

identified in **Exhibit A**:

   a.      Certain of the claims identified in **Exhibit A** should be disallowed in full
           as a claim for which the Debtors are not liable because (i) the claim asserts
           a liability that is not a liability of the Debtor identified in the proof of
           claim or a liability of any other Debtor and (ii) the claim is supported
           neither by the documentation and information provided by the claimant, if
           any, nor by the Debtors' Books and Records (the "No-Basis Claims")

   b.      Certain of the claims identified in **Exhibit A** should be disallowed in full
           as a claim for which the Debtors are not liable because the claims contain
           insufficient documentation regarding the basis for the claim and the claim
           is not supported by the Debtors' Books and Records (the "Insufficient
           Documentation Claims")

c.    Certain of the claims identified in **Exhibit A** should be disallowed in full because the claim does not meet the requirements of section 503(b)(9) of the Bankruptcy Code (the "No-Basis 503(b)(9) Claims").

d.    Certain of the claims identified in **Exhibit A** should be disallowed in full as claims for which the Debtors are not liable because the claim asserts liability under the Deferred Compensation Plan and was released pursuant to the Deferred Compensation Settlement Agreement (the "No-Basis Deferred Compensation Claims").

e.    Certain of the claims identified in **Exhibit A** should be disallowed in full as a claim for which the Debtors are not liable because (i) each such claim is a claim for benefits under the Defined Benefit Pension Plan, (ii) following the termination of such plan the PBGC is the sole source of such benefits for such claimants and (iii) only the PBGC may recover unfunded pension benefits directly from a plan sponsor or a member of a plan sponsor's controlled group in the event of a pension plan termination (the "No-Basis Pension Claims").  The particular grounds for objection applicable to a claim are listed next to such claim in **Exhibit A**.[10]

f.    Certain of the claims identified in **Exhibit A** should be disallowed in full as claims for which the Debtors are not liable because the claim asserts liability (i) under the Retiree Welfare Plan and was released and satisfied pursuant to the Retiree Welfare Settlement Agreement (the "No-Basis Retiree Claims").

g.    Certain of the claims identified in **Exhibit A** should be disallowed in full as claims for which the Debtors are not liable because the claim asserts liability related to the Debtors' 401(k) Plan which is not part of the Debtors' estates (the "No-Basis 401(k) Claims").

h.    Certain of the claims identified in **Exhibit A** should be disallowed in full because the claim does not meet the requirements of section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 (the "No-Basis Equity Claims").

i.    Certain of the claims identified in **Exhibit A** should be disallowed in full as a claim for which the Debtors are not liable because the claim is redundant of another claim filed asserting the same purported liability (the "Redundant Claims").

---

[10]    Certain of the claims listed in **Exhibit A** of this Objection were submitted to the Debtors blank or contained cursory descriptions of the asserted claims, e.g., asserted claims for "services performed". The Debtors have determined, based on their Books and Records and the supporting documentation submitted with such claims, if any, what claims, if any, such claimants hold against the Debtors.  The Debtors are objecting to those claims held by claimants who the Debtors have determined do not hold any valid claims against any of the Debtors (including because the only claims that such claimants held were under the Deferred Compensation Plan and/or the Defined Benefit Pension Plan, which claims are not valid claims against the Debtors estates, including in light of the settlement and release of such Deferred Compensation Claims).

**Basis for Relief**

28.     Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a

bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities

and (b) the claim is otherwise allowable.  11 U.S.C. §§ 101(5) and 101(10).

29.     When asserting a claim against a bankrupt estate, a claimant must allege facts

that, if true, would support a finding that the debtor is legally liable to the claimant.  See In re

Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); In re Int'l Match Corp., 69 F. 2d 73, 76

(2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability

can be seen to exist).  Where the claimant alleges sufficient facts to support its claim, its claim is

afforded *prima facie* validity.  In re Allegheny Int'l, Inc., 954 F.2d at 173.  A party wishing to

dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie*

validity.  Id.  In practice, the objecting party must produce evidence that would refute at least one

of the allegations essential to the claim's legal sufficiency.  Id. at 173-74.  Once the objecting

party produces such evidence, the burden shifts back to the claimant to prove the validity of his

or her claim by a preponderance of the evidence.  Id.  The burden of persuasion is always on the

claimant.  Id.

A.     **No-Basis Claims**

30.     The Debtors object to the No-Basis Claims identified in **Exhibit A** because each

asserts a claim for which there is no amount due and owing by any Debtor to the claimant.

31.     With respect to each of the No-Basis Claims, the Debtors and/or their advisors

have carefully reviewed the Books and Records, the Schedules, and the proofs of claim,

including supporting documentation provided by the claimants, if any, and have determined that

the No-Basis Claims are claims for which none of the Debtors is liable.

32.    Further, the No-Basis Claims should be disallowed in full because, based on a careful review of the Books and Records, the Schedules, and the proofs of claim, including supporting documentation provided by the claimants, if any, the Debtors have determined that there is no amount due and owing by any of the Debtors to the claimants with respect to such claims.

33.    For the reasons stated above, the No-Basis Claims do not meet the standards for *prima facie* validity, and the Debtors seek entry of an order disallowing and expunging the No-Basis Claims in their entirety.

**B.    Insufficient Documentation Claims**

34.    The Debtors object to the Insufficient Documentation Claims identified in **Exhibit A** and respectfully request that the Insufficient Documentation Claims be disallowed in full.  The Debtors and/or their advisors have reviewed the Books and Records, the Schedules, the Proofs of Claim, including the alleged underlying liabilities, and the related supporting documentation provided by each Claimant, if any, and have found no basis for the liability alleged in the Insufficient Documentation Claims.  (See Ray Decl. ¶ 4.)  Accordingly, the Insufficient Documentation Claims are inadequate under Bankruptcy Rule 3001 and should be disallowed.  See, e.g., Zolfo, Cooper, 50 F.3d 253.

**C.    No-Basis 503(b)(9) Claims**

35.    Based on a careful review of the Debtors' Books and Records, their Schedules and the proof of claim, including any supporting documentation provided by each claimant, none of the No-Basis 503(b)(9) Claims establishes, nor do the Debtors' Books and Records or their Schedules indicate, in whole or in part, the claimant's right to payment for the value of goods sold to the Debtors in the Debtors' ordinary course of business that were received by the Debtors within 20 days before either of the applicable Petition Dates.  Accordingly, the Debtors seek to

disallow and expunge each No-Basis 503(b)(9) Claim in its entirety.  If the No-Basis 503(b)(9)

Claims are not disallowed, the claimants may obtain double recovery and/or distributions at a

higher priority than the distributions from the Debtors' estates to which they would otherwise be

entitled.

**D.     No-Basis Deferred Compensation Claims**

36.     The Debtors object to the No-Basis Deferred Compensation Claims identified in

**Exhibit A** because each asserts a claim for benefits under the Deferred Compensation Plan,

which claims were released pursuant to the Deferred Compensation Settlement Agreement.

Accordingly, each No-Basis Deferred Compensation Claim should be disallowed in its entirety

and expunged.  The disallowance of the No-Basis Deferred Compensation Claims is necessary to

prevent double recovery by a claimant or a successor thereof for the same claim— once under

the Deferred Compensation Settlement Agreement and once under the filed No-Basis Deferred

Compensation Claim.  **By this Objection, the Debtors are not seeking to affect any rights**

**that claimants holding No-Basis Deferred Compensation Claims were given, if any, to**

**participate in distributions under the Deferred Compensation Settlement Agreement.**

**E.     No-Basis Pension Claims**

37.     The Debtors object to certain of the claims identified in **Exhibit A** because the

amounts asserted for pension benefits owing in connection with the terminated Defined Benefit

Pension Plan are not liabilities of the Debtors or their estates.  The No-Basis Pension Claims

identified in **Exhibit A** should be disallowed in full, and the claimants holding No-Basis Pension

Claims shall not be entitled to any distribution from the Debtors' estates with respect to such

claims.  **By this Objection, the Debtors are not seeking to affect any rights that claimants**

**holding No-Basis Pension Claims may have to participate in distributions from the PBGC**

**with regards to the Defined Benefit Pension Plan.**

38.    The No-Basis Pension Claims cannot properly be asserted against the Debtors'

estates because, pursuant to ERISA, (i) the PBGC is the sole source of recovery for participants

of a terminated single-employer pension plan, and (ii) the PBGC is the sole entity entitled to

recover pension termination liabilities directly from a plan sponsor in the event of a pension plan

termination.  See, e.g., 29 U.S.C. §§ 1322, 1344 (describing distributions from the PBGC with

respect to terminated single-employer pension plans); 29 U.S.C. § 1362 (stating that in any case

in which a single-employer pension plan is terminated, the plan sponsor or member of such plan

sponsor's controlled group shall be liable to the PBGC).  Courts routinely dismiss pension plan

participants' claims seeking payment of terminated pension benefits directly from the plan

sponsor.  See, e.g., United Steelworkers, Am., AFL-CIO, CLC v. United Eng'g, Inc., 52 F.3d

1386, 1394 (6th Cir. 1995) (concluding that permitting plan participants to sue an employer

directly for payment of ERISA benefits would render the priority scheme set forth in ERISA

meaningless); In re Adams Hard Facing Co., 129 B.R. 662, 663 (Bankr. W.D. Okla. 1991)

(disallowing direct claims of plan participants against the debtors).

39.    Based on careful review of the Books and Records, the Schedules and the proofs

of claim, including supporting documentation provided by the claimants, if any, the Debtors have

determined that there are no amounts due and owing to the claimants with respect to the

No-Basis Pension Claims.  The disallowance of the No-Basis Pension Claims is necessary to

prevent claimants from receiving an unwarranted recovery in contravention of applicable law.

Accordingly, the Debtors seek to disallow and expunge each No-Basis Pension Claim in its

entirety as set forth in **Exhibit A.**

F.    **No-Basis Retiree Claims**

40.    The Debtors object to the No-Basis Retiree Claims identified in **Exhibit A**

because each asserts a claim for benefits under the Retiree Welfare Plan which claims were

released and satisfied pursuant to the Retiree Welfare Settlement Agreement. Accordingly, each No-Basis Retiree Claim should be disallowed in its entirety and expunged. The disallowance of the No-Basis Retiree Claims is necessary to prevent double recovery by a claimant or a successor thereof for the same claim— once under Retiree Welfare Settlement Agreement and once under the filed No-Basis Retiree Claims. **By this Objection, the Debtors are not seeking to affect any rights that claimants holding No-Basis Retiree Claims were given, if any, to participate in distributions under the Retiree Welfare Settlement Agreement.**

**G.      No-Basis 401(k) Claims**

41.      The Debtors object to the No-Basis 401(k) Claims identified in **Exhibit A** because each asserts a claim related to the Debtors' 401(k) Plan. Assets related to the 401(k) Plan were held in separate trust and did not form a part of the Debtors' estates, and therefore the Debtors have no liability for claims asserted under the 401(k) Plan. The No-Basis 401(k) Claims identified in **Exhibit A** should be disallowed in full, and the claimants holding No-Basis 401(k) Claims shall not be entitled to any distribution from the Debtors' estates with respect to such claims.

**H.      No-Basis Equity Claims**

42.      The Debtors object to the No-Basis Equity Claims identified in **Exhibit A** because they should not be allowed either as claims or interests under section 502 of the Bankruptcy Code. 11 U.S.C. § 502.

43.      The Equity Claims do not constitute claims for purposes of section 502 of the Bankruptcy Code. Although the term "claim" is broadly defined under section 101(5) of the Bankruptcy Code, it is well settled that a claim is distinguishable from an ownership interest in the debtor, and the holder of an equity security, without more, is not the holder of a claim. In re Insilco Tech., Inc., 480 F.3d 212, 218 (3d Cir. 2007) ("Equity investment brings not a right to

payment, but a share of ownership in the debtor's assets – a share that is subject to all of the debtor's payment obligations."); Crocker v. Namer (In re AVN Corp.), 235 B.R. 417, 423 (Bankr. W.D. Tenn. 1999) ("[T]he filing of a proof of interest, which applies only in Chapter 11 cases, is not recognized in the claims process and becomes significant only when the remaining assets of the solvent corporate debtor are being distributed to shareholders.").  Indeed, under section 501(a) of the Bankruptcy Code, an equity security holder may file a proof of interest.  11 U.S.C. § 501(a).  See Crocker, 235 B.R. at 423.Bankruptcy Rule 3007(d)(7) provides for omnibus claims objections based on the ground that the claims should be disallowed because "they are interests, rather than claims."  Fed. R. Bankr. P. 3007(d)(7).

44.     The Debtors and/or their advisors have reviewed the Claims Register and each of the Equity Interest Claims, including supporting documents attached thereto, if any.  Based on this review, the Debtors have determined that the Equity Interest Claims are based solely on the Claimants' purported ownership of equity interests in the Canadian Debtors and, therefore, do not constitute "claims."  Rather, each of the Equity Interest Claims would be, if anything, an "equity interest," as the term is used in the Bankruptcy Code.

45.     However, even if the Court were to reclassify the Equity Interest Claims as equity interests, there can be no valid equity interests against the Debtors because all of the equity interests in the Debtors are owned directly and indirectly by NNC, a Canadian Debtor that is the ultimate corporate parent of the Debtors.  In fact, certain Claimants of the Equity Interest Claims listed their purported ownership of equity interest in NNC as the sole basis for their Claim.

Accordingly, such Equity Interest Claims are not properly asserted against any of the Debtors in these chapter 11 cases.[11]

46.    For the reasons set forth above, the Debtors respectfully submit that each of the Equity Interest Claims does not meet the standards for *prima facie* validity.  Each of the Equity Interest Claims therefore should be disallowed in full.

## I.    Redundant Claims

47.    The Debtors object to the Redundant Claims identified in **Exhibit A** because each Redundant Claim relates to a claim that is redundant of another claim filed in this case. **Exhibit A** also lists the claim number for such Redundant Claims and notes that such claims will be disallowed as redundant of the remaining claim.  The disallowance of the Redundant Claims is necessary to prevent double recovery by a claimant or a successor thereof for the same claim.

## Separate Contested Matters

48.    To the extent that a response is filed regarding any claim identified in **Exhibit A** and the Debtors are unable to resolve the response, such claim, and the objection to such claim asserted by the Debtors herein, shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection asserted in this Objection shall be deemed a separate order with respect to each claim.

## Responses to Omnibus Objection

49.    To contest this Objection, a claimant must file and serve a written response to this Objection (a "Response") so that it is received no later than **4:00 p.m. (prevailing Eastern Time) on March 11, 2016** (the "Response Deadline").  Every Response must be filed with:

---

[11]    To the extent the Claimants assert any claims based on their equity ownership, such as misrepresentation, such allegations are conclusory and do not allege any particularized claim against the Debtors and therefore must be disallowed.

The Office of the Clerk
The United States Bankruptcy Court for the District of Delaware
824 Market Street
Wilmington, Delaware 19801

and served upon the following entities so that the Response is received no later than the

Response Deadline, at the following addresses:

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Attn:  Lisa M. Schweitzer

-and-

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, P.O. Box 1347
Wilmington, Delaware 19899-1347
Attn:  Derek C. Abbott

50.    Every Response to this Objection must contain, at a minimum, the following

information:

a.    A caption setting forth the name of the Court, the name of the Debtors, the case number, and the title of this Objection;

b.    The name of the claimant, the claim number, and a description of the basis for the amount of the claim;

c.    The specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;

d.    Any supporting documentation, to the extent that it was not included in the proof of claim previously filed with the clerk or claims agent, upon which the claimant intends to rely to support the basis for and amounts asserted in the proof of claim; and

e.    The name, address, telephone number and fax number of the person(s) (which may be the claimant or the claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the claim or this Objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the disputed claim on behalf of the claimant.

51.     If a claimant fails to file and serve a timely Response by the Response Deadline, the Debtors may present to the Court an appropriate order modifying, reclassifying or disallowing the claim, without further notice to the claimant or a hearing.

### Replies to Responses

52.     The Debtors may, at their option, file and serve a reply to any Response so that it is received by the claimant (or the claimant's counsel, if represented) no later than three (3) days prior to the hearing.

### Adjournment of Hearing

53.     The Debtors reserve the right to seek an adjournment of the hearing on any Responses to this Objection.  In the event that the Debtors seek such an adjournment, it will be noted on the notice of agenda for the hearing, and such agenda will be served on the affected claimant by serving the person designated in the Response.

### Reservation of Rights

54.     The Debtors expressly reserve the right to amend, modify or supplement this Objection.  Should one or more of the grounds of objection stated in this Objection be dismissed or overruled, the Debtors reserve the right to object to each of the claims on any other grounds that the Debtors discover or elect to pursue.  This Objection sets out substantive and non-substantive objections to the claims identified in **Exhibit A**.  The Debtors reserve their right to assert one or more other legal, factual, procedural, substantive and non-substantive objections to claims identified in **Exhibit A** at a later time.  The Debtors also reserve the right to withhold all applicable federal, state and local withholding taxes from distributions (if any) that would be made with respect to the claims addressed in this Objection.

### No Prior Request

55.    No prior request for the relief sought herein has been made to this or any other court.

**<u>Notice</u>**

56.    Notice of this Objection has been given via first class mail or overnight delivery to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) each of the parties listed in **Exhibit A** and (v) the general service list established in these chapter 11 cases.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

*[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]*

WHEREFORE, the Debtors respectfully request that the Court enter an order

substantially in the form attached hereto as **Exhibit C**, sustaining this Objection in all respects

and granting such other and further relief as the Court deems just and proper.

Dated:  February 19, 2016
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York  10006
Telephone:  (212) 225-3505
Facsimile:  (212) 225-3999

and

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Andrew R. Remming*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors-in-Possession*