## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------- X
                                                   :
In re                                              :      Chapter 11
                                                   :
Nortel Networks Inc., et al.,¹                     :      Case No. 09-10138(KG)
                                                   :
                              Debtors.             :      Jointly Administered
                                                   :
                                                   :
                                                   :      Hearing date: March 22, 2016 at 10:00 a.m. (ET)
                                                   :      Responses due: March 11, 2016 at 4:00 p.m. (ET)
-------------------------------------------------- X
```

## DEBTORS' FORTY-FIRST OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR. P. 3007 AND DEL. L.R. 3007-1 (NO-BASIS DEFERRED COMPENSATION CLAIMS, NO-BASIS PENSION CLAIMS, MODIFYAND ALLOW CLAIMS, RECLASSIFY AND ALLOW CLAIMS, <u>WRONG DEBTOR CLAIMS AND REDUNDANT CLAIMS</u>)

**TO THE CLAIMANTS LISTED IN <u>EXHIBIT A</u> ATTACHED TO THIS OBJECTION:**

- **CLAIMANTS' RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND BY ANY FUTURE OBJECTION(S) THAT MAY BE FILED BY THE DEBTORS.**

- **THE RELIEF SOUGHT HEREIN IS WITHOUT PREJUDICE TO THE DEBTORS' RIGHTS TO PURSUE FURTHER SUBSTANTIVE OR NON-SUBSTANTIVE OBJECTIONS AGAINST THE CLAIMS LISTED IN <u>EXHIBIT A</u>.**

- **CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS IN <u>EXHIBIT A</u>.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available athttp://dm.epiq11.com/nortel.

- **BY THIS OBJECTION, THE DEBTORS ARE NOT SEEKING TO AFFECT ANY RIGHTS THAT CLAIMANTS HOLDING CLAIMS LISTED IN <u>EXHIBIT A</u> MAY HAVE TO PARTICIPATE IN DISTRIBUTIONS FROM THE PENSION BENEFIT GUARANTY CORPORATION WITH REGARDS TO THE NORTEL NETWORKS RETIREMENT INCOME PLAN.**

- **BY THIS OBJECTION, THE DEBTORS ARE NOT SEEKING TO AFFECT ANY RIGHTS THAT CLAIMANTS HOLDING CLAIMS LISTED IN <u>EXHIBIT A</u> MAY HAVE TO DISTRIBUTIONS UNDER THE DEFERRED COMPENSATION SETTLEMENT AGREEMENT (AS DEFINED BELOW).**

Nortel Networks Inc. ("<u>NNI</u>") and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), hereby object (this "<u>Objection</u>"), pursuant to section 502 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), to those certain claims listed in **Exhibit A** attached hereto and incorporated by reference.  In support of this Objection, the Debtors submit the Declaration of John J. Ray, III in Support of Debtors' Forty-First Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No-Basis Deferred Compensation Claims, No-Basis Pension Claims, Modify and Allow Claims, Reclassify and Allow Claims, Wrong Debtor Claims and Redundant Claims) (the "<u>Ray Declaration</u>"), attached hereto as **Exhibit B** and incorporated by reference, and respectfully state as follows:

## Jurisdiction

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 502 and 503 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

**Background**

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. ("NN CALA"),[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only [D.I. 36].  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.     Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**B.     Bar Date and Schedules**

7.     On April 20, 2009 and May 29, 2009, the Debtors (other than NN CALA) filed their Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Original Schedules") [D.I.s 616-627, 801-810].  On September 11, 2009, the Debtors filed Schedules of Assets and Liabilities and Statements of Financial Affairs for NN CALA (the "NN CALA Schedules") [D.I. 1477, 1478].  On November 4, 2009, the Debtors (other than NN CALA) filed their Amended Schedules of Assets and Liabilities and Amended Statements of Financial Affairs (together with the NN CALA Schedules, referred to as the "Amended Schedules") [D.I.s 1811-1825].

8.     On August 4, 2009, the Court entered an order (the "Bar Date Order") establishing September 30, 2009 at 4:00 p.m. (Eastern Time) (the "General Bar Date") as the last date for all creditors holding a "claim" against the Debtors (other than NN CALA) to file and

---

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

serve a written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date Order [D.I. 1280]. On December 3, 2009, the Court entered an order establishing January 25, 2010 at 4:00 p.m. (Eastern Time) (the "CALA Bar Date") as the general claims bar date for all creditors holding a claim against NN CALA to file and serve written proofs of claim [D.I. 2059]. The Court also entered an order fixing November 15, 2011 at 4:00 p.m. (Eastern Time) as the bar date for filing proofs of claim in respect of certain Non-Canadian intercompany and director and officer claims [D.I. 6464] .

9.    On each of October 31, 2011, November 7, 2011, November 15, 2011 and November 21, 2011, the Debtors filed amended versions of Schedules E and F of the Original Schedules and Amended Schedules of NNI, Nortel Altsystems Inc. ("Nortel Altsystems") and NN CALA [D.I. 6702, 6719, 6780, 6827] (collectively, the "Second Amended Schedules through the Fifth Amended Schedules").[5] The Second Amended Schedules through the Fifth Amended Schedules amend previously filed Schedules E and F to modify the priority and amount of the scheduled severance claims for certain individuals terminated prior to the applicable Petition Date.

10.    On December 10, 2014, NNI and Nortel Networks Capital Corporation ("NNCC") filed amended versions of Schedules F of their Original Schedules, Amended Schedules, Second Amended Schedules through Fifth Amended Schedules and Sixth Amended Schedules (collectively, the "Seventh Amended Schedules" and together with the Original Schedules, the Amended Schedules, the Second Amended Schedules through the Fifth Amended Schedules and the Sixth Amended Schedules, the "Schedules"). The Seventh Amended

---

[5]    Additionally, on February 21, 2012, the Debtors filed an amended version of NNI's Schedule F (the "Sixth Amended Schedules") [D.I. 7240]. The Sixth Amended Schedules amend NNI's previously filed Schedule F to modify the amount of certain scheduled trade payable claims.

Schedules amend previously filed Schedules F to modify the amount and characterization of certain scheduled intercompany payable claims.

**C.    The Employee Claims Resolution Process**

11.    In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors.

12.    The Debtors' claims, notice and balloting agent, Epiq Bankruptcy Solutions, LLC, has prepared and maintains a register (the "Claims Register") of all proofs of claim filed against the Debtors in these chapter 11 cases.  The Debtors and their advisors are comprehensively reviewing and reconciling all claims, including both the claims listed on the Schedules and the claims asserted in the proofs of claim (including any supporting documentation).  The Debtors are also comparing the claims asserted in the proofs of claim with the Books and Records to determine the validity of the asserted claims.

13.    This reconciliation process includes identifying particular categories of claims that may be targeted for disallowance, reduction and allowance or reclassification and allowance. To reduce the number of claims, and to avoid possible double recovery or otherwise improper recovery by claimants, the Debtors continue to file omnibus objections to such categories of claims if and where warranted.  This Objection is one such omnibus objection.

14.    On December 14, 2009, the Court entered an order granting the Debtors relief from the requirements of Bankruptcy Rule 3007(e)(6) and Local Rule 3007-1(f) (the "Original Rule 3007 Order") [D.I. 2125].

15.    On September 16, 2010, the Court entered an order authorizing and approving omnibus settlement procedures to settle certain prepetition claims (the "Settlement Procedures") [D.I. 3953].

16.     Also on September 16, 2010, the Court entered an order approving a cross-border claims protocol (the "Claims Protocol") establishing procedures to promote coordination and cooperation between the Debtors and the Canadian Debtors in the resolution of certain claims filed in these chapter 11 cases and the Canadian Proceedings that raise cross-border issues [D.I. 3956].

17.     On February 7, 2012, the Court entered an order modifying the application of Local Rule 3007-1 and the Original Rule 3007 Order [D.I. 7178].

**D.     Nortel Networks U.S. Deferred Compensation Plan**

18.     Prior to the Petition Date, on or about January 1, 2000, NNI established the Nortel Networks U.S. Deferred Compensation Plan (as amended, supplemented or modified, the "Deferred Compensation Plan").[6]  In connection with the establishment of the Deferred Compensation Plan, NNI as guarantor and U.S. Bank, National Association as trustee established an irrevocable trust (the "Plan Trust") pursuant to the Nortel Networks U.S. Deferred Compensation Plan Trust Agreement dated January 1, 2000 (as amended, the "Trust Agreement").

19.     From late 2010 through late 2012, the Debtors and various participants and beneficiaries of the Deferred Compensation Plan (all of the participants in or beneficiaries of such Plan, collectively, the "Participants") litigated the disposition of the assets held by the Plan Trust pursuant to the Trust Agreement (the "Trust Assets").  Such litigation resulted in a negotiated settlement (the "Deferred Compensation Settlement Agreement")[7] of all Participants' claims against the Debtors under the Deferred Compensation Plan.  Among other things,

---

[6]     The description of the Deferred Compensation Plan is for background purposes only and is subject in all respects to the terms of the Deferred Compensation Plan.

[7]     The description of the Deferred Compensation Settlement Agreement is for background purposes only and is subject in all respects to the terms of the Deferred Compensation Settlement Agreement.

pursuant to the Deferred Compensation Settlement Agreement, an aggregate of $31,166,369.13 was paid to Participants or their transferees in satisfaction of their claims against the Debtors and other third parties with respect to the Deferred Compensation Plan (the "Deferred Compensation Claims") and such Participants released all of their Deferred Compensation Claims.

20.     The Deferred Compensation Settlement Agreement was proposed to the Bankruptcy Court pursuant to the Joint Motion For Order:  (I) Approving Compromise Among The Debtors, The Official Committee Of Unsecured Creditors, And The Ad Hoc Group Of Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan (For Themselves And All Similarly Situated Participants In And Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan) Pursuant To Rule 9019 Of The Federal Rules Of Bankruptcy Procedure; (II) Directing Payments Pursuant To 11 U.S.C. § 503(B)(1)(A) And Rule 9019; (III) Directing U.S. Bank National Association To Turn Over Assets To The Debtors; And (IV) Releasing And Settling Claims Of The Deferred Compensation Plan Participants [D.I. 9127] (the "Deferred Compensation Settlement Motion"), and was approved by the Bankruptcy Court pursuant to the Order (I) Approving Compromise Among The Debtors, The Official Committee Of Unsecured Creditors, And The Ad Hoc Group Of Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan (For Themselves And All Similarly Situated Participants In And Beneficiaries Of The Nortel Networks U.S. Deferred Compensation Plan) Pursuant To Rule 9019 Of The Federal Rules Of Bankruptcy Procedure; (II) Directing Payments Pursuant To 11 U.S.C. § 503(B)(1)(A) And Rule 9019; (III) Directing U.S. Bank National Association To Turn Over Assets To The Debtors; And (IV) Releasing And Settling Claims Of The Deferred Compensation Plan Participants [D.I. 9323].  More information about the Deferred

Compensation Plan and the Deferred Compensation Settlement Agreement is available in the Deferred Compensation Settlement Motion [D.I. 9127].

21. Because claims under the Deferred Compensation Plan have been released pursuant to the Deferred Compensation Settlement Agreement, the Debtors now seek the disallowance of such claims.

**E.     Nortel Networks Severance Plans**

22. <u>Nortel Networks Severance Allowance Plan</u>. The Nortel Networks Severance Allowance Plan (the "<u>Severance Plan</u>")[8] provided a severance allowance to employees whose employment was terminated in the context of a workforce reduction, a reclassification of the employee's current position, or termination by the employer without cause. Severance benefits were available to employees with six months or more of service with NNI, or any NNI subsidiary that adopted the Severance Plan ("the <u>Employer</u>"), who were not parties to a separate severance agreement. The Severance Plan provided for a benefit of four weeks of base salary, plus one week of base salary for every year of service, and continued medical, dental, and life insurance benefits, with additional periods of base salary payable at the Employer's discretion, up to a maximum of two times the employee's total annual compensation for the prior year. Additional severance benefits accrued on the anniversary of the date on which each eligible employee accrued an additional year of service under the plan (the "<u>Severance Eligibility Date</u>"), as determined by the Employer. As of the applicable Petition Dates, no further benefits have been paid under the plan.

---

[8]     The description of the Severance Plan is for background purposes only and is subject in all respects to the terms of the Severance Plan.

23.     <u>Nortel Networks Enhanced Severance Allowance Plan</u>.  The Nortel Networks Enhanced Severance Allowance Plan (the "<u>Enhanced Severance Plan</u>")[9] provided a severance allowance to certain terminated employees who had three months or more of service with the Employer and were not parties to a separate severance agreement with the Employer, and whose employment was terminated as part of a workforce reduction, due to a reclassification of the employee's current position, or by the employer without cause.  The Enhanced Severance Plan provided for a benefit of twelve months' of continued base salary, plus additional amounts of base salary payable at the Employer's discretion up to a maximum of two times the employee's total annual compensation, and medical, dental, and life insurance benefits.

24.     <u>Other Termination Benefits</u>.  Prior to the applicable Petition Date, certain employees of NNI were provided with 60 days' non-working notice prior to their date of termination of employment, during which time such employees were eligible to receive salary, medical, dental, and life insurance benefits, and matching contributions to NNI's 401(k) plan.  In the case where employees were then terminated on the applicable Petition Date prior to the end of the 60-day period, they have asserted claims for the remaining salary and benefits.

25.     In connection with the claims reconciliation process described above, the Debtors reviewed their Books and Records to determine the amount and priority classification of employees' termination-related benefits, including those described above.  The Second Amended Schedules through the Fifth Amended Schedules amended the scheduled priority and amount of the claims of several employees relating to such severance and other termination-related benefits to reflect the Debtors' Books and Records.  The Debtors now object to certain claims filed with

---

[9]     The description of the Enhanced Severance Plan is for background purposes only and is subject in all respects to the terms of the Enhanced Severance Plan.

respect to severance and other termination-related benefits, which claims were filed prior to and following the filing of the Second Amended Schedules through the Fifth Amended Schedules.

**F.      Nortel Networks Retirement Income Plan**

26.      NNI sponsored the Nortel Networks Retirement Income Plan (the "Defined Benefit Pension Plan"), a tax-qualified, single-employer, defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA"), to provide retirement benefits for certain of its employees.  See 29 U.S.C. §§ 1301(a)(13), 1321(a). As of January 1, 2009, there were approximately 22,220 present and former employees of the Debtors (and their beneficiaries) that were entitled to receive pension benefits under the terms of the Defined Benefit Pension Plan.

27.      The Defined Benefit Pension Plan was terminated under § 4042(c) of ERISA, effective July 17, 2009, pursuant to an agreement between the Pension Benefit Guaranty Corporation (the "PBGC") and the Retirement Plan Committee of the Defined Benefit Pension Plan as the plan administrator (the "Trusteeship Agreement").  The Trusteeship Agreement also appointed the PBGC as statutory trustee of the Defined Benefit Pension Plan.  On August 31, 2009, this Court entered an order authorizing the Debtors to take all necessary or appropriate actions in furtherance of the implementation of the Trusteeship Agreement [D.I. 1406].[10]

---

[10]      By Order dated September 24, 2009, this Court approved a Stipulation Regarding Filing Claims By Pension Benefit Guaranty Corporation, pursuant to which each proof of claim filed by the PBGC shall be deemed to be filed in each of the sixteen Debtors' chapter 11 cases [D.I. 1540]. On September 29, 2009, the PBGC filed four proofs of claim against each of the Debtors, as either sponsor or a controlled group member of a sponsor of the Defined Benefit Pension Plan, with respect to the Defined Benefit Pension Plan. The PBGC asserted claims for (i) the unfunded benefit liabilities of the Defined Benefit Pension Plan; (ii) contributions necessary to satisfy the minimum funding standards of the Defined Benefit Pension Plan; (iii) insurance premiums, interest and penalties with respect to the Defined Benefit Pension Plan; and (iv) shortfall and waiver amortization charges.  The respective proofs of claim have been assigned numbers 4735, 4736, 4737 and 4738 in the Debtors' Claims Register (collectively, the "PBGC Claims").

## Relief Requested

28.     For the reasons set forth below, the Debtors object to each of the claims identified in **Exhibit A**.  By this Objection, the Debtors respectfully request that the Court enter an order pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1 reducing, modifying, reclassifying or disallowing in full, as applicable, the claims identified in **Exhibit A**:

    a.    Certain of the claims identified in **Exhibit A** should be disallowed in full as claims for which the Debtors are not liable because the claim asserts liability under the Deferred Compensation Plan and was released pursuant to the Deferred Compensation Settlement Agreement (the "No-Basis Deferred Compensation Claims").

    b.    Certain of the claims identified in **Exhibit A** should be disallowed in full as a claim for which the Debtors are not liable because (i) each such claim is a claim for benefits under the Defined Benefit Pension Plan, (ii) following the termination of such plan the PBGC is the sole source of such benefits for such claimants and (iii) only the PBGC may recover unfunded pension benefits directly from a plan sponsor or a member of a plan sponsor's controlled group in the event of a pension plan termination (the "No-Basis Pension Claims").  The particular grounds for objection applicable to a claim are listed next to such claim in **Exhibit A**.[11]

    c.    Certain of the claims identified in **Exhibit A** should be reduced and allowed, adjusted and allowed, and/or reclassified and allowed in the amount identified under the column labeled "Modified Claim Amount or Disallowed Claim"  for one or more of the following reasons: (i) part of the claimed amount is neither supported by the documentation or other evidence provided by the claimant, if any, nor by the Debtors' Books and Records, (ii) part of the claimed amount relates to benefits or assertions for which the Debtors' Books and Records indicate that no amounts are due and owing, (iii) the claimed amount is lower than the amount supported by the Debtors' Books and Records, (iv) the claim asserts a liability that is not a liability of any of the Debtors and the Books and

---

[11]     Certain of the claims listed in **Exhibit A** of this Objection were submitted to the Debtors blank or contained cursory descriptions of the asserted claims, e.g., asserted claims for "services performed". The Debtors have determined, based on their Books and Records and the supporting documentation submitted with such claims, if any, what claims, if any, such claimants hold against the Debtors.  The Debtors are objecting to those claims held by claimants who the Debtors have determined do not hold any valid claims against any of the Debtors (including because the only claims that such claimants held were under the Deferred Compensation Plan and/or the Defined Benefit Pension Plan, which claims are not valid claims against the Debtors estates, including in light of the settlement and release of such Deferred Compensation Claims).

Records indicate a different liability owed to the claimant, (v) the claimed amount asserts an unsupported secured claim pursuant to section 506 of the Bankruptcy Code, and/or (vi) the claimed amount asserts an incorrect or improper classification, in part or in full pursuant to sections 503(b)(9), 507(a)(4) or 507(a)(5) of the Bankruptcy Code (the "<u>Modified, Reclassified, and Allowed Claims</u>").

d.      Certain of the claims identified in **Exhibit A** failed to identify or incorrectly identified the Debtor that is liable for such claim (the "<u>Wrong Debtor Claims</u>") and should be modified and allowed to clarify that the claim is asserted against the Identified Debtor (as defined below).

e.      Certain of the claims identified in **Exhibit A** should be disallowed in full as a claim for which the Debtors are not liable because the claim is redundant of another claim filed asserting the same purported liability (the "<u>Redundant Claims</u>").

### <u>Basis for Relief</u>

29.     Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable.  11 U.S.C. §§ 101(5) and 101(10).

30.     When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.  <u>See In re Allegheny Int'l, Inc.</u>, 954 F.2d 167, 173 (3d Cir. 1992); <u>In re Int'l Match Corp.</u>, 69 F. 2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist).  Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity.  <u>In re Allegheny Int'l, Inc.</u>, 954 F.2d at 173.  A party wishing to dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie* validity.  <u>Id.</u>  In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency.  <u>Id.</u> at 173-74.  Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his

or her claim by a preponderance of the evidence. Id. The burden of persuasion is always on the claimant. Id.

## A.    No-Basis Deferred Compensation Claims

31.    The Debtors object to the No-Basis Deferred Compensation Claims identified in **Exhibit A** because each asserts a claim for benefits under the Deferred Compensation Plan, which claims were released pursuant to the Deferred Compensation Settlement Agreement. Accordingly, each No-Basis Deferred Compensation Claim should be disallowed in its entirety and expunged. The disallowance of the No-Basis Deferred Compensation Claims is necessary to prevent double recovery by a claimant or a successor thereof for the same claim— once under the Deferred Compensation Settlement Agreement and once under the filed No-Basis Deferred Compensation Claim. **By this Objection, the Debtors are not seeking to affect any rights that claimants holding No-Basis Deferred Compensation Claims were given, if any, to participate in distributions under the Deferred Compensation Settlement Agreement.**

## B.    No-Basis Pension Claims

32.    The Debtors object to certain of the claims identified in **Exhibit A** because the amounts asserted for pension benefits owing in connection with the terminated Defined Benefit Pension Plan are not liabilities of the Debtors or their estates. The No-Basis Pension Claims identified in **Exhibit A** should be disallowed in full, and the claimants holding No-Basis Pension Claims shall not be entitled to any distribution from the Debtors' estates with respect to such claims. **By this Objection, the Debtors are not seeking to affect any rights that claimants holding No-Basis Pension Claims may have to participate in distributions from the PBGC with regards to the Defined Benefit Pension Plan.**

33.    The No-Basis Pension Claims cannot properly be asserted against the Debtors' estates because, pursuant to ERISA, (i) the PBGC is the sole source of recovery for participants

of a terminated single-employer pension plan, and (ii) the PBGC is the sole entity entitled to

recover pension termination liabilities directly from a plan sponsor in the event of a pension plan

termination.  See, e.g., 29 U.S.C. §§ 1322, 1344 (describing distributions from the PBGC with

respect to terminated single-employer pension plans); 29 U.S.C. § 1362 (stating that in any case

in which a single-employer pension plan is terminated, the plan sponsor or member of such plan

sponsor's controlled group shall be liable to the PBGC).  Courts routinely dismiss pension plan

participants' claims seeking payment of terminated pension benefits directly from the plan

sponsor.  See, e.g., United Steelworkers, Am., AFL-CIO, CLC v. United Eng'g, Inc., 52 F.3d

1386, 1394 (6th Cir. 1995) (concluding that permitting plan participants to sue an employer

directly for payment of ERISA benefits would render the priority scheme set forth in ERISA

meaningless); In re Adams Hard Facing Co., 129 B.R. 662, 663 (Bankr. W.D. Okla. 1991)

(disallowing direct claims of plan participants against the debtors).

34.     Based on careful review of the Books and Records, the Schedules and the proofs

of claim, including supporting documentation provided by the claimants, if any, the Debtors have

determined that there are no amounts due and owing to the claimants with respect to the

No-Basis Pension Claims.  The disallowance of the No-Basis Pension Claims is necessary to

prevent claimants from receiving an unwarranted recovery in contravention of applicable law.

Accordingly, the Debtors seek to disallow and expunge each No-Basis Pension Claim in its

entirety as set forth in **Exhibit A.**

**C.     Modified, Reclassified, and/or Wrong Debtor and Allowed Claims**

35.     The Debtors object to certain of the claims identified in **Exhibit A** because the

amounts asserted in these claims include amounts that (i) are not liabilities of the Debtors or their

estates, and/or (ii) are amounts that were higher or lower than the liability reflected in the

Debtors' Books and Records, and/or (iii) the claims assert an entitlement to administrative,

secured or priority status that the Debtors believe is unwarranted, either in part or in full, and/or (iv) the claims failed to identify or correctly identify the Debtor liable for such claims. Therefore, the priority status should be adjusted accordingly and the claims and priority amounts identified in **Exhibit A** should be reduced or increased to the amounts identified in the column labeled "Modified Claim Amount or Disallowed Claim" for the reasons set forth in the column labeled "Reason for Modification or Disallowance."   Furthermore, the Wrong Debtor Claims should be asserted against the Debtor identified in the column labeled "New Case Info and Identified Debtor" in **Exhibit A** (the "Identified Debtor").

36.    With respect to each of the claims in **Exhibit A** that are not liabilities of the Debtors' estates or that indicate an amount that is not reflected in the Debtors' Books and Records, the Debtors and/or their advisors have carefully reviewed the Books and Records, the Schedules and the proof of claim, including supporting documentation, if any, provided by the claimant and have determined that these claims overstate the Debtors' liability by an amount that is not supported by any documentation or other evidence provided by the claimants, if any.  Nor is such overstated portion of each of these claims supported by the Debtors' Books and Records. To the extent that any claimant is permitted to amend a proof of claim or otherwise provides documentation or other evidence supporting the overstated portion of a claim, the Debtors respectfully request relief from the requirements of Local Rule 3007-1(f)(iii), and the Court's permission to submit a supplemental objection, as necessary.

37.    Based on a careful review of their Books and Records, the Debtors have determined that certain claimants identified in **Exhibit A** asserted a claim amount that was lower than the liability reflected in the Debtors' Books and Records.

38.     Therefore, the Debtors seek to adjust such claims to the Modified Claim Amounts identified in **Exhibit A** and allow such claims for the Modified Claim Amounts.  The Debtors also seek to disallow the overstated amounts asserted in **Exhibit A** and to reduce and allow such claims for the Modified Claim Amounts.  If the overstated or understated claim amounts are not revised as requested herein, many of the claimants will receive a disproportionately large distribution, while others will receive a disproportionately smaller distribution in these chapter 11 cases in contravention of the provisions and policies of the Bankruptcy Code and to the direct detriment of the Debtors' estates and other creditors.

39.     With respect to each of the claims identified in **Exhibit A** that asserts an entitlement to administrative, secured or priority status that the Debtors believe is unwarranted, either in part or in full, the Debtors and/or their advisors have carefully reviewed the Books and Records and the proof of claim, including supporting documentation provided by the claimant, if any.  Based on this review, the Debtors have determined that the affected claims (i) were filed on a section 503(b)(9) claim form but do not meet the statutory requirements of section 503(b)(9) of the Bankruptcy Code, and instead relate to claims that are unsecured according to the Books and Records, (ii) failed to provide any information or documentation in support of a security interest, pursuant to section 506 of the Bankruptcy Code, and instead relate to claims that are unsecured according to the Books and Records, or (iii) asserted incorrect or improper priority status classification in part or in whole, pursuant to sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code.  Consequently, the Debtors believe the secured status, priority and/or priority amount of these claims should be modified by reclassifying and/or reducing or adjusting the secured status, priority and/or priority amount listed under the column entitled "Modified Claim Amount or Disallowed Claim" in **Exhibit A**.

40.     Section 503(b)(9) of the Bankruptcy Code provides administrative expense priority to claims for the value of any goods received by a debtor within 20 days before the commencement of a chapter 11 case to the extent that such goods have been sold to the debtor in the debtor's ordinary course of business.  11 U.S.C. § 503(b)(9).

41.     Section 506 of the Bankruptcy Code provides secured status to an allowed claim secured by a lien on property in which the debtor's estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code. 11 U.S.C. § 506(a)(1).

42.     Section 507(a)(4) of the Bankruptcy Code provides priority to claims asserted by individual employees of a debtor for unpaid wages, salaries and commissions that were earned within 180 days of the bankruptcy filing.  Section 507(a)(5) of the Bankruptcy Code provides priority to certain claims related to contributions to employee benefit plans arising from services rendered within 180 days of the bankruptcy filing.  11 U.S.C. §§ 507(a)(4), (a)(5).

43.     By revising the aforementioned claims as set forth herein, the Debtors will be better positioned to ensure that the claimants ultimately entitled to receive distributions from the Debtors' estates receive the appropriate treatment and distribution.

44.     The Debtors also object to certain claims identified in **Exhibit A** because the claims fail to identify or incorrectly identify the Debtor that is liable for the claim.

45.     With respect to each of the Wrong Debtor Claims, the Debtors and/or their advisors have carefully reviewed the Debtors' Books and Records, their Schedules and the proof of claim, including supporting documentation provided by the claimant, if any.  Based on this review, the Debtors have determined that the claims should be asserted against the Identified Debtor.

46.    The Debtors hereby seek entry of an order to correct the Debtor against which the Wrong Debtor Claims are asserted and to allow such claims as modified.  If the relief sought in this Objection is granted, the claimant that filed the Wrong Debtor Claim will have an allowed claim against the Identified Debtor for the amount stated under the column entitled "Modified Claim Amount or Disallowed Claim" in **Exhibit A**.

47.    Each of the allowed claims reflected in **Exhibit A** shall supersede any obligation of the Debtors to such claimant that may be reflected in the Schedules.

**D.    Redundant Claims**

48.    The Debtors object to certain of the claims identified in **Exhibit A** and seek to disallow any Redundant Claims filed by a claimant or a successor thereof related to the same liability.  In addition to listing the modified claim, **Exhibit A** also list the claim number for such Redundant Claims, and note that such claims will be disallowed as redundant of the remaining claim.  The disallowance of the Redundant Claims is necessary to prevent double recovery by a claimant or a successor thereof for the same claim.

## Separate Contested Matters

49.    To the extent that a response is filed regarding any claim identified in **Exhibit A** and the Debtors are unable to resolve the response, such claim, and the objection to such claim asserted by the Debtors herein, shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection asserted in this Objection shall be deemed a separate order with respect to each claim.

## Responses to Omnibus Objection

50.    To contest this Objection, a claimant must file and serve a written response to this Objection (a "Response") so that it is received no later than **4:00 p.m. (prevailing Eastern Time) on March 11, 2016** (the "Response Deadline").  Every Response must be filed with:

The Office of the Clerk
The United States Bankruptcy Court for the District of Delaware
824 Market Street
Wilmington, Delaware  19801

and served upon the following entities so that the Response is received no later than the

Response Deadline, at the following addresses:

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York  10006
Attn:  Lisa M. Schweitzer

-and-

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, P.O. Box 1347
Wilmington, Delaware  19899-1347
Attn:  Derek C. Abbott

51.     Every Response to this Objection must contain, at a minimum, the following

information:

a.     A caption setting forth the name of the Court, the name of the Debtors, the case number, and the title of this Objection;

b.     The name of the claimant, the claim number, and a description of the basis for the amount of the claim;

c.     The specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;

d.     Any supporting documentation, to the extent that it was not included in the proof of claim previously filed with the clerk or claims agent, upon which the claimant intends to rely to support the basis for and amounts asserted in the proof of claim; and

e.     The name, address, telephone number and fax number of the person(s) (which may be the claimant or the claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the claim or this Objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the disputed claim on behalf of the claimant.

52.     If a claimant fails to file and serve a timely Response by the Response Deadline, the Debtors may present to the Court an appropriate order modifying, reclassifying or disallowing the claim, without further notice to the claimant or a hearing.

### Replies to Responses

53.     The Debtors may, at their option, file and serve a reply to any Response so that it is received by the claimant (or the claimant's counsel, if represented) no later than three (3) days prior to the hearing.

### Adjournment of Hearing

54.     The Debtors reserve the right to seek an adjournment of the hearing on any Responses to this Objection.  In the event that the Debtors seek such an adjournment, it will be noted on the notice of agenda for the hearing, and such agenda will be served on the affected claimant by serving the person designated in the Response.

### Reservation of Rights

55.     The Debtors expressly reserve the right to amend, modify or supplement this Objection.  Should one or more of the grounds of objection stated in this Objection be dismissed or overruled, the Debtors reserve the right to object to each of the claims on any other grounds that the Debtors discover or elect to pursue.  This Objection sets out substantive and non-substantive objections to the claims identified in **Exhibit A**.  The Debtors reserve their right to assert one or more other legal, factual, procedural, substantive and non-substantive objections to claims identified in **Exhibit A** at a later time.  The Debtors also reserve the right to withhold all applicable federal, state and local withholding taxes from distributions (if any) that would be made with respect to the claims addressed in this Objection.

**No Prior Request**

56.    No prior request for the relief sought herein has been made to this or any other court.

**Notice**

57.    Notice of this Objection has been given via first class mail or overnight delivery to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) each of the parties listed in **Exhibit A** and (v) the general service list established in these chapter 11 cases.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

*[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]*

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as **Exhibit C**, sustaining this Objection in all respects and granting such other and further relief as the Court deems just and proper.

Dated: February 19, 2016
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York  10006
Telephone:  (212) 225-3505
Facsimile:  (212) 225-3999

and

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Andrew R. Remming*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors-in-Possession*