## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X

*In re*

Nortel Networks Inc., *et al.,*[1]

                     Debtors.

-------------------------------------------------------- X

:    Chapter 11

:    Case No. 09-10138 (KG)

:    Jointly Administered

:    **Hearing date: March 22, 2016 at 10:00 a.m. (ET)**
:    **RE: D.I.s 16554, 16556, 16611, 16614, 16617**

## DEBTORS' OMNIBUS REPLY TO RESPONSES TO DEBTORS' FORTIETH AND FORTY-FIRST OMNIBUS OBJECTIONS (SUBSTANTIVE) TO CERTAIN CLAIMS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby respectfully submit this Omnibus Reply (the "Reply") to (i) the Response [D.I. 16614] filed by Robert Paul Smith (the "Smith Response") to the *Debtors' Fortieth Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No-Basis Claims, Insufficient Documentation Claims, No-Basis 503(b)(9) Claims, No-Basis Deferred Compensation Claims, No-Basis Pension Claims, No-Basis Retiree Claims, No-Basis 401(k) Claims, No-Basis Equity Claims, Redundant Claims, Modify and Allow Claims, Reclassify and Allow Claims and Wrong Debtor Claims)* [D.I. 16554] (the "Fortieth Omnibus Objection")[2]; and the responses filed by Geoffrey O. Thompson

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]       Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Fortieth Omnibus Objection.

[D.I. 16611] (the "Thompson Response") and Ethan K. Kim [D.I. 16617] (the "Kim Response") to the *Debtors' Forty-First Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No-Basis Deferred Compensation Claims, No-Basis Pension Claims, Modify and Allow Claims, Reclassify and Allow Claims, Wrong Debtor Claims and Redundant Claims)* [D.I. 16556] (the "Forty-First Omnibus Objection").  In support of this Reply, the Debtors rely on the Declaration of Mary Cilia, dated March 17, 2016, attached hereto as Exhibit A (the "Cilia Declaration").  In further support of this Reply, the Debtors respectfully represent as follows:

### Reply to the Smith Response

1.      The Debtors, through the Fortieth Omnibus Objection, seek, among other things, the disallowance of Mr. Smith's asserted claim in the amount of $89,939.20 (claim number 4062) (the "Smith Claim").[3]  Mr. Smith is not entitled to a claim for severance because he affirmatively waived such a claim to make himself eligible to receive benefits under the terms of the Nortel Networks Retirement Income Plan[4] and the Retiree Life Insurance and Long-Term Care Plan.[5] While the Debtors acknowledge that the period during which Mr. Smith waived his claim for severance was a difficult one for him as well as for many of the Debtors' other former employees, awarding Mr. Smith a claim for severance now would be inconsistent with the Debtors' duty to preserve and manage their estates for the benefit of all of their creditors.

2.      The Debtors' books and records unambiguously show that Mr. Smith waived his entitlement to receive severance payments or make a claim for such severance payments.  See

---

[3]        The proof of claim corresponding to the Smith Claim  is attached hereto as Exhibit B.

[4]        A copy of the Nortel Networks Retirement Income Plan (the "Pension Plan") is attached to the  Cilia Declaration as Exhibit 1.

[5]        A copy of the Nortel Networks Retiree Medical Plan and Retiree Life Insurance and Long-Term Care Plan (the "Retiree Insurance Plan", and, together with the Pension Plan, the "Retirement Plans") is attached to the Cilia Declaration as Exhibit 2.

Severance Waiver Form, dated April 1, 2009 attached as Exhibit 5 to the Cilia Declaration (the

"Severance Waiver").  The Severance Waiver clearly provides that by signing such waiver, Mr.

Smith forfeited all rights to make a claim for severance benefits in the Debtors' chapter 11 cases.

See Severance Waiver at 2, 8.  The Severance Waiver also highlights a number of factors a

former employee should consider before deciding whether to sign the waiver. See id., at 2, 4-5,

8.

     3.    As explained in the Severance Waiver, the Retirement Plans preclude terminated

employees from receiving retiree benefits until the end of the "severance period," the time during

which, prior to the Debtors' chapter 11 cases, a terminated employee would have been receiving

salary continuation and other severance benefits pursuant to the Severance Plan. [6]  See Severance

Waiver at 2, 6; Pension Plan, §§ 4.1, 4.2, 4.3.[7]  These provisions of the Retirement Plans

continued to apply after the Petition Date, even though the Debtors were no longer able to pay

severance benefits due to the pendency of the chapter 11 cases.  Accordingly, under the terms of

the Retirement Plans, Mr. Smith was ineligible to receive retirement benefits until the first day of

the month following the end of his "severance period" on December 9, 2009 (i.e., January 1,

2010).  Because the Debtors recognized that these plan provisions, together with their inability to

pay severance during the pendency of the chapter 11 cases, may have created challenges for their

terminated employees, the Debtors offered Mr. Smith, and all other employees who were

participants in the Retirement Plans and who were of retirement age, the option to waive their

---

[6]     A copy of the Nortel Networks Severance Allowance Plan, as Amended and Restated Effective January 1, 2008, as further Amended and Restated as of February 13, 2009 (the "Severance Plan") is attached to the Cilia Declaration as Exhibit 3.  A copy of the Board Action Amending section 2.7 of the Severance Plan, dated February 13, 2009 (the "Board Amendment") is attached to the Cilia Declaration as Exhibit 4.

[7]     The Retiree Insurance Plan precludes retired employees from receiving benefits until the end of their severance period by making only those employees that are eligible to receive retirement benefits under the Pension Plan eligible for benefits under the Retiree Insurance Plan.  See Retiree Insurance Plan, §§ 1.1, 2.1, 3.3; Pension Plan, Introduction.

claims to severance payments in order to truncate the "severance period" and qualify to receive retirement benefits early.  Like Mr. Smith, many employees who were offered this option did elect to waive their claims for severance in return for receiving retirement benefits at an earlier time.

4.    Mr. Smith's decision to sign the Severance Waiver and accelerate his entitlement to retirement benefits, rather than take a risk on a recovery for his severance claim in the Debtors' chapter 11 cases, was voluntary and resulted in a clear benefit to Mr. Smith.  Had he not decided to waive his entitlement to severance, Mr. Smith would not have been eligible to receive retirement benefits until January 1, 2010; instead, as a result of the waiver, he began receiving retirement benefits as of May 1, 2009.  In exchange for his waiver, Mr. Smith received eight additional months of retirement benefits, including retiree life insurance coverage and pension payments under the Pension Plan that he otherwise would not have received during that period.  In light of this benefit and the express terms of the Severance Waiver, Mr. Smith, and the other similarly situated employees who signed severance waivers, cannot assert claims for forgone severance in these cases, and there is no principled basis or reason, consistent with the Debtors' duties to their entire creditor body, to allow them to do so.  Accordingly, Mr. Smith's Claim lacks sufficient basis, and should be disallowed.

5.    This Court has previously addressed a similar situation involving Mr. Peter S. Budihardjo, a former employee of the Debtors who filed a claim for severance benefits notwithstanding the existence of a signed severance waiver.  <u>See</u> Transcript of Hearing on June 30, 2015 [D.I. 15836] at 23-27.[8]  This Court enforced the signed severance waiver and entered an Order approving the Debtors' objection to Mr. Budihardjo's claim for severance.  <u>See</u> *Order*

---

[8]    A copy of the Transcript of Hearing on June 30, 2015 is attached hereto as <u>Exhibit E</u>.

*Granting Debtors Thirty-Eighth Omnibus Objection (Substantive) to Certain Claims* [D.I. 15811]. The Debtors request that this Court rule in the same manner and enforce Mr. Smith's severance waiver.

## Reply to the Kim and Thompson Responses

6.      *Kim Response*.  The Debtors, through the Forty-First Omnibus Objection, seek, among other things, the modification and reclassification of Mr. Kim's asserted claim in the amount of $29,188.43 (claim number 7307) (the "Kim Claim").[9]  Although the Debtors do not contest that Mr. Kim is entitled to a claim for severance benefits, he is not entitled to the full amount of his claim for severance benefits as filed because the Debtors' books and records indicate that he received three weeks of non-working payments pursuant to the Worker Adjustment and Retraining Notification Act of 1988 (the "WARN Act")[10] and the Debtors' Severance Plan states that payments made pursuant to the WARN Act are to be offset against the employee's severance allowance.  See Severance Plan at §2.7; Board Amendment at 1-2[11]; Cilia Decl. ¶ **Error! Reference source not found.**.  During his WARN Act notice period, which began on April 22, 2010, Mr. Kim received $5,168.94 in non-working WARN Act payments, Cilia Decl. ¶ **Error! Reference source not found.**, which the Debtors have set off against Mr. Kim's asserted $25,844.70 severance benefits claim – resulting in a net severance entitlement of $20,675.77.  Using this adjusted net severance entitlement amount, plus an additional $2,542.62

---

[9]      The proof of claim  corresponding to the Kim Claim is attached hereto as Exhibit C.

[10]      29 U.S.C. §§ 2101-09.

[11]      Severance Plan at §2.7, as amended as of February 13, 2009 ("[A]ny severance allowance payable to an Employee under this Plan shall be offset by any other severance, redundancy, pay in lieu of notice or termination payment made by an Employer to an Employee other than pursuant to this Plan, including, but not limited to, any amounts paid pursuant to federal, state, local or foreign government worker notification (e.g., U.S. Worker Adjustment and Retraining Notification Act) or office closing requirements . . . .").

of lost employee benefits to which the Debtors determined that Mr. Kim was entitled, Mr. Kim's

total allowed claim should be $23,218.39.

       7.     *Thompson Response*.  The Debtors, through the Forty-First Omnibus Objection,

seek, among other things, the modification and reclassification of Mr. Thompson's asserted

claim in the amount of $40,425.00 (claim number 1454) (the "Thompson Claim").[12]  Although

the Debtors do not contest that Mr. Thompson is entitled to a claim for severance benefits, he is

not entitled to the full amount of his claim for severance benefits as filed because the Debtors'

books and records indicate that he received eight weeks of non-working cash payments pursuant

to the WARN Act, totaling $12,936.00, beginning on April 1, 2009.  See Cilia Decl. ¶ **Error!**

**Reference source not found.**.  The Debtors have set off these payments against Mr.

Thompson's filed claim for severance benefits in the amount of $40,425.00, resulting in a net

severance entitlement of $27,489.00.  Using this adjusted net severance entitlement amount, plus

an additional $1,305.80 of lost employee benefits to which the Debtors determined that Mr.

Thompson was entitled, Mr. Thompson's total allowed claim should be $28,794.80.

       8.     The terms of the Severance Plan in effect when Mr. Thompson and Mr. Kim were

terminated make clear that their severance claims must be offset by any:

> other severance, redundancy, pay in lieu of notice or termination payment made
> by an Employer to an Employee other than pursuant to this Plan, including, but
> not limited to, any amounts paid pursuant to federal, state, local or foreign
> government worker notification (e.g., U.S. Worker Adjustment and Retraining
> Notification Act) or office closing requirements.

See Board Amendment at 1-2; Severance Plan § 2.7.  As described above, Mr. Kim and Mr.

Thompson received $5,168.94 and $12,936.00, respectively, in non-working payments pursuant

to the WARN Act.  These non-working WARN Act payments are "amounts paid pursuant to

---

[12]     The proof of claim corresponding to the Thompson Claim  is attached hereto as Exhibit D.

federal . . . government . . . or office closing requirements," id., and the U.S. Debtors accordingly seek to reduce the Thompson Claim and the Kim Claim by the portion that the U.S. Debtors have already "satisfied . . . in accordance with the Code." Fed. R. Bankr. P. 3007(d)(5).

9.    Finally, the Debtors believe that the fact that Mr. Thompson and Mr. Kim received their respective non-working WARN payments in cash instead of receiving slightly larger claims for severance in fact puts them in a better position than other former Nortel employees who did not receive non-working WARN payments in cash.  While it is understandable that Mr. Kim and Mr. Thompson would each prefer to receive their maximum severance amount *in addition* to the cash non-working WARN payments that they have already received, this inequitable result would contravene the express terms of the Severance Plan and give these particular creditors a double recovery, to the detriment of the remaining creditors of the estate.

## Conclusion

For the reasons set forth above, the Debtors respectfully request that the Court overrule the Smith Response, overrule the Thompson Response, overrule the Kim Response, enter the proposed orders approving the Fortieth Objection and Forty-First Objection, as attached to the Objection as Exhibits D and E, respectively, and grant such other relief as the Court deems just and proper.

Dated:  March 17, 2016                CLEARY GOTTLIEB STEEN & HAMILTON LLP
         Wilmington, Delaware

                                      James L. Bromley (admitted *pro hac vice*)
                                      Lisa M. Schweitzer (admitted *pro hac vice*)
                                      One Liberty Plaza
                                      New York, New York 10006
                                      Telephone:  (212) 225-2000
                                      Facsimile:  (212) 225-3999

                                      - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


_____*/s/ Tamara K. Minott*_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*