# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
|  | Hearing date: April 19, 2016 at 10:00 a.m. (ET) |
|  | RE: D.I.s 16556, 16618 |

## DEBTORS' REPLY TO RESPONSE TO DEBTORS' FORTY-FIRST OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby respectfully submit this Reply (the "Reply") to (i) the Response [D.I. 16618] filed by Leith Tessy (the "Response") to the *Debtors' Forty-First Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No-Basis Deferred Compensation Claims, No-Basis Pension Claims, Modify and Allow Claims, Reclassify and Allow Claims, Wrong Debtor Claims and Redundant Claims)* [D.I. 16556] (the "Objection"). In support of this Reply, the Debtors rely on the Declaration of Mary Cilia, dated April 14, 2016, attached hereto as Exhibit A (the "Cilia Declaration"). In further support of this Reply, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

**Reply**

1.      The Debtors, through the Objection, seek, among other things, the modification of the claim asserted in the amount of $412,835.00 (claim number 7294) (the "Claim")[2] by Mr. Leith Tessy (the "Claimant").  The Debtors submit that the Claimant is entitled solely to a priority claim of $3,115.38 and an unsecured claim of $5,633.62.[3]  The Claimant left his role at Nortel upon the closing of the sale of Nortel Network Limited's stake in LG-Nortel Co. Ltd. (Joint Venture Company), the company's Korean joint venture with LG Electronics Inc. ("LGE"), to Telefonaktiebolaget LM Ericsson (Publ) ("Ericsson") in June of 2010, and at that time began full-time employment with Ericsson.  He is not entitled to any claim for severance under his employment agreement, which required an involuntary departure and a written separation agreement containing a release of claims and restrictive covenants as conditions to such an entitlement.  He also is not entitled to a claim for severance under the Nortel Networks Enhanced Severance Allowance Plan (the "Severance Plan"),[4] in part because he accepted an offer for full-time employment with Ericsson.  Awarding the Claimant a claim for severance now would be inconsistent with the Debtors' duty to preserve and manage their estates for the benefit of all of their creditors.

**A.      The Employment Contract**

2.      The Response indicates that Claimant is relying on his employee contract with Nortel, as attached to the proof of claim corresponding to his Claim, for his entitlement to

---

[2]     The proof of claim corresponding to the Claim is attached hereto as Exhibit B.

[3]     These amounts correspond to Claimant's entitlement under the Nortel Networks Long-Term Investment Restoration Plan ("LTIP-R").  This amount is based on the Debtors' books and records and is greater than the $7,835 claim that Claimant asserted under the LTIP-R.

[4]A true and correct copy of the Severance Plan is attached to the Cilia Declaration as Exhibit 1.  The description of the Severance Plan in this Reply is for background purposes only and is subject in all respects to the terms of the Severance Plan.

severance.[5]  That contract, dated as of October 7, 2008 (the "Employment Agreement"), provides for the equivalent of eighteen months' base salary in severance on two conditions: first, the Debtors must initiate a separation of employment; and second, Claimant and the Debtors must execute a separation agreement containing a release of claims and restrictive covenants.  The Claimant has met neither of these conditions, and so is not entitled to severance under the Employment Agreement.

3. The Claimant's separation from his employment with the Debtors was not the result of a Debtor-initiated termination as required by the Employment Agreement for severance eligibility.  Rather, Nortel Networks Limited had come to an agreement with Ericsson as to the sale of its interest in LGE, and the Claimant accepted an offer to continue his employment within that business unit following the transaction.  It was the Claimant's decision as to whether he would continue his employment, in which case he would not be eligible for severance.  This decision, and the implications for his severance, were outlined to him in advance of his June 29, 2010 transition to Ericsson.  For example, on June 22, 2010, John Doolittle, Chief Financial Officer of Nortel Networks Limited, responded to a question from the Claimant regarding whether he would be entitled to severance if he accepted the position with Ericsson.  The Claimant stated that he believed that, if he were to agree with Ericsson on the terms being offered to him, he "should be treated as 'involuntarily terminated' from Nortel, given the nature of the contract, and also given the fact that I have not been offered 'like for like' employment with them (i.e., overall pay level, terms, etc.)."  See Cilia Declaration at Exhibit 2 (the "June 22 Correspondence").  Doolittle responded in no uncertain terms to say "if you take the deal that has been offered, you will not be entitled to a severance claim.  Unfortunately, I cannot influence a

---

[5]  See Exhibit B at 2.

3

change in the US severance policy." Id.[6] As Doolittle's email response suggests, and as will be discussed in further detail below, the fact that severance is not available when an employee accepts an offer of employment with a purchase of business unit is consistent with provisions governing entitlement to severance benefits under the Nortel Severance Plan.

4.  It is telling that, while the Debtors' books and records show a series of correspondence between Claimant and the Debtors in the weeks leading up to his transition where Claimant requests clarification on a range of benefits, they do not have any record of him requesting clarification as to treatment of severance after the June 22 Correspondence other than general requests for the Severance Plan and background on laws relating to severance. Cilia Declaration at ¶¶ 4-5. On June 28, 2010, Claimant informed Nortel that he had "now just closed on all terms with Ericsson" and asked for a few details regarding health coverage without making any inquiry regarding his severance entitlement. See Cilia Declaration at Exhibit 4 (the "June 28 Correspondence") Within hours of receiving the June 28 Correspondence, which confirmed Claimant's transition to Ericsson and therefore his status as not being entitled to severance, Nortel sent him final termination paperwork (the "Termination Package").[7] The Termination Package had no indication that Claimant was entitled to severance of any kind,

---

[6]  Prior to this exchange, in an email sent June 10, 2010, a representative of Nortel's human resources department forwarded the Claimant correspondence that the representative had with an employee in a similar situation, indicating to Claimant that Claimant's situation "is no different" from that other employee. See Cilia Declaration at Exhibit 3 (the "June 10 Correspondence"). That forwarded correspondence outlines two scenarios: scenario one, involving " a mutually agreeable continuation of your role with [Ericsson]" in which "severance would not be applicable", or scenario two, where the employee does not reach such an agreement with Ericsson, Nortel likely would have taken action to terminate his employment, and in that case, and "appropriate termination payments would apply." Id.

[7]  A true and correct copy of the Termination Package as sent to Claimant is attached to the Cilia Declaration as Exhibit 5. The accounting code in that document stating "Mutual Agreement – Company Initiated" has no bearing on the Claimant's entitlement to severance. It was the Debtors' regular practice to not provide severance to those employees with any termination code beginning with "Mutual Agreement", regardless of whether the termination was coded as company or employee initiated. Likewise, the reference to "Involuntary Termination" in the footers of the document were purely for filing purposes and the use of the word "involuntary" did not automatically entitle the terminated employee to severance benefits (e.g., termination for cause would have a similar footer but would not ordinarily entitle a terminated employee to severance). See Cilia Declaration at ¶ 9.

4

unlike the package sent to individuals who were in fact entitled to severance. Cilia Declaration at ¶ 8. Claimant's silence on this point was not surprising, given that his separation from the Debtors was the product of a mutual agreement between him and the Debtors that resulted in full-time employment and a continuation of his role at LGE. It was also understandable in light of the fact that the implications of his separation on his severance were made clear to him weeks in advance of that separation.

5. Even if the termination of the Claimant's employment from the Debtors had been initiated by the Debtors – which it was not – he still would not have been entitled to receive severance benefits under his Employment Agreement unless and until he signed a separation agreement with the Debtors containing a full release of claims and restrictive covenants. Employment Agreement at 3. The Debtors' books and records show no evidence that the Debtors set about to prepare such an agreement, which is consistent with fact that the Employment Agreement's severance provision was inapplicable so long as he accepted his offer of continued employment with Ericsson, and would have applied only if Nortel had taken steps to terminate his employment in the event that he did not continue employment with Ericsson. Cilia Declaration at ¶ 6. In that case, the Debtors would have prepared such an agreement, requiring that the Claimant fully release all claims or potential claims against the Debtors based on his employment, and holding the Claimant to standard restrictive covenants for a period of time following the termination of his employment. There is likewise no evidence in the Debtors' books and records that the Claimant requested a separation agreement, even as he attached the three-page Employment Agreement to the severance claim he filed on June 15, 2010. Cilia Declaration at ¶ 6.

**B.     The Severance Plan**

6.      Just as Claimant is not entitled to severance benefits under the Employment Agreement, he likewise has no entitlement to severance under the Severance Plan. In the first instance, Claimant is not eligible for benefits under the Severance Plan, because the definition of an "Employee" who may receive benefits under the Severance Plan excludes individuals "whose severance benefits are set for in a separate writing" (in this case, the Employment Agreement). See Severance Plan § 1.3(g). Even if Claimant qualified as an "Employee" as defined in the Severance Plan, he would not be entitled to severance under the plan because he transferred to Ericsson on June 29, 2010 in connection with the closing of the sale of LGE to Ericsson. The Claimant argues that he should be entitled to termination benefits from the Debtors because he is displeased with the ultimate length of his employment at Ericsson. However, the Severance Plan expressly provides that employees who accept employment with a buyer in connection with a "Business Transaction" as defined in the Severance Plan, which included the sale of LGE to Ericsson, are not entitled to severance.

7.      Under the terms of the Severance Plan, employees who accept offers of continued employment with the buyers of their business units are not entitled to receive severance benefits. As more fully described and subject to the conditions set forth therein, NNI and certain of its subsidiary Debtors that adopted the Severance Plan agreed to pay termination benefits upon certain qualified termination events, including certain workforce reductions. However, the Severance Plan provides that severance benefits are not payable in connection with a "Business Transaction,"[8] including the divestiture of a business, if: (a) such employee accepts an offer of

---

[8]     The Severance Plan defines "Business Transaction" as "an agreement entered into by or on behalf of Employer and a Company(ies) (e.g., divestiture or a spin-off of a business, creation of a joint venture, an outsourcing transaction or any transaction similar to the foregoing) and as a result thereof the Employer determines that the services of an Employee(s) are no longer required by Employer." Severance Plan § 1.3(d).

6

employment with the buyer of the business (i.e., Ericsson, in this case), irrespective of any differences between the new position and the former position, including without limitation, location, compensation, work schedule, or otherwise or (b) the terminated employee is offered and refuses a position as an employee at the buyer, which position (i) is at a location that is no more than 25 miles from the location of such employee's position prior to the Business Transaction and (ii) includes a base weekly salary not less than 80% of the employee's base weekly salary at such employee's former position.  See Severance Plan § 2.3.  This common exception in the Severance Plan ensures that the participating companies are not responsible for severance in situations where the affected employees do not actually experience a termination of employment, since their job continues with the buyer, or in cases where the employee could have continued employment after the transaction in a similar role, but simply chose not to.

8. Here, the Claimant accepted a position with Ericsson in connection with the sale of LGE, so even if he were an "Employee" covered by the Severance Plan, he would not have been entitled to a claim for severance benefits under that plan.  Claimant argues in his Response that the offer he received from Ericsson did not disqualify him from receiving severance benefits because he did not receive guaranteed employment, transferred seniority or unspecified job protections.  See Exhibit B at 2.  The Severance Plan does not require terms of employment with Ericsson to match those previously offered by the Debtors in order for the Business Transaction exception to apply – provided that the employee accepts any part-time or full-time offer of employment with Ericsson, then the exception applies, in the words of the Severance Plan, "irrespective of any differences between the new position and the former position."  See Severance Plan § 2.3.  While the Debtors are sympathetic to the fact that the Claimant hoped for longer employment with and/or more generous protections from Ericsson, that alone does not

7

create a claim against the Debtors.  Once an employee accepts an offer in connection with a Business Transaction, the employee is no longer eligible for benefits under the Severance Plan.

9. The Court has previously considered, and rejected, similar arguments put forward by claimants arguing that they were entitled to severance under the Nortel Networks Severance Allowance Plan, which contained identical provisions to the Severance Plan provisions described in this Reply.  See *Order Addressing Debtors' Thirty-First and Thirty-Second Omnibus Objections (Substantive) to Three Claims* [D.I. 12745]. [9]  In that case, this Court considered the arguments of three claimants that, because they were terminated by the purchaser of the Debtors' Enterprise Solutions Business within three to nine months of being hired, they should receive severance benefits from the Debtors.  Id. at 1-2.  The Court, in sustaining the Debtors' objections to their claims, pointed to the terms of the applicable severance plan and held that "by accepting the Avaya positions, the Claimants were not eligible for severance."  Id. at 4.  The Debtors submit that, if the Severance Plan did cover the Claimant, the same result should hold here.

[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

---

[9] See also *Order Granting Debtors' Twenty-Ninth Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No-Basis Claims, Modify and Allow Claims, Reclassify and Allow Claims, Wrong Debtor Claims, Redundant Claims, Amended or Superseded Claims, No-Basis 503(b)(9) Claims and No-Basis Pension Claims)* [D.I. 9585] (overruling objection of claimant Randall Scott Clay to Debtors' objection denying claimant severance benefits, because (i) claimant had most recently been employed by non-debtor Avaya Government Solutions, a successor to non-debtor Nortel Government Solutions Inc. ("NGS"), and not a Debtor and (ii) claimant's prior transfer from employment at a Debtor to employment for NGS would not have qualified him for severance benefits in accordance with the terms of the applicable severance plan); see also Transcript of Hearing on March 5, 2013 [D.I. 9592] at 9-10 (discussion of same at hearing); see also *Kotrosits v. Gatx Corp. Non-Contributory Pension Plan for Salaried Employees*, 970 F.2d 1165, 1174 (3d Cir. 1992) (holding that a former employer is not responsible for changes made to benefit plans post-closing over which such former employer had no control).

**Conclusion**

For the reasons set forth above, the Debtors respectfully request that the Court overrule the Response approve the Objection with respect to the Claim, and grant such other relief as the Court deems just and proper.

Dated:  April 14, 2016
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

      */s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*