IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> NORTEL NETWORKS INC., *et al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No. 09-10138 (KG) <br> (Jointly Administered) <br><br> **Re: D.I. 16759** |

**STATEMENT AND RESERVATION OF RIGHTS OF LAW DEBENTURE TRUST COMPANY OF NEW YORK, AS INDENTURE TRUSTEE FOR THE NNCC NOTES, WITH RESPECT TO SUPPLEMENT TO MOTION OF LIQUIDITY SOLUTIONS, INC. FOR ENTRY OF ORDER (A) AUTHORIZING AND DIRECTING DEBTOR, NORTEL NETWORKS INC., TO MAKE INTERIM DISTRIBUTIONS ON ALLOWED ADMINISTRATIVE, PRIORITY AND UNSECURED CLAIMS OR (B) CONVERTING CASES TO CHAPTER 7 PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE**

Law Debenture Trust Company of New York ("Law Debenture"), as indenture trustee for the NNCC Notes (defined below), by and through its attorneys, Patterson Belknap Webb & Tyler LLP and Morris James LLP, hereby submits this statement and reservation of rights in response to the *Supplement to Motion of Liquidity Solutions, Inc. for Entry of Order (A) Authorizing and Directing Debtor, Nortel Networks Inc., to Make Interim Distributions on Allowed Administrative, Priority and Unsecured Claims or (B) Converting Cases to Chapter 7 Pursuant to Section 1112(b) of the Bankruptcy Code*, dated April 25, 2016 (D.I. 16759) ("Supplement").[1]

---

[1] The Supplement relates to the underlying *Motion of Liquidity Solutions, Inc. for Entry of Order (A) Authorizing and Directing Debtor, Nortel Networks Inc., to Make Interim Distributions on Allowed Administrative, Priority and Unsecured Claims or (B) Converting Cases to Chapter 7 Pursuant to Section 1112(b) of the Bankruptcy Code*, dated March 21, 2016 (D.I. 16638) ("Motion"). However, pursuant to the direction of this Court at an April 19 status conference, the reservation of rights contained within this Statement is limited to the Supplement. Law Debenture reserves the right to file a separate pleading with respect to the Motion at the appropriate time.

8562869

**PRELIMINARY STATEMENT**

1.  The Supplement seeks an Order directing NNI to "to make an interim distribution of a portion of its approximately $591 million of cash-on-hand" in order to "(a) pay in full all allowed administrative and priority claims against NNI, and (b) pay not less than $318 million to holders of allowed unsecured claims against NNI (*other than the Bond guarantee claims*)." Supplement at 3, 7 (emphasis added).

2.  The use of the term "Bonds" in the Motion and the Supplement to refer to *all* of Nortel's funded debt ignores critical distinctions between the NNCC Notes (as defined below) and the other so-called "crossover bonds." Unlike the majority of the so-called "crossover bonds," which were issued by a Canadian Debtor and guaranteed by a U.S. Debtor, the NNCC Notes were issued by a U.S. Debtor and guaranteed by a Canadian Debtor.

3.  NNI's treatment of Bond *guarantee* claims is not applicable to Law Debenture because the guarantor of Law Debenture's claim is the Canadian Debtor, NNL. In the United States, Law Debenture has *direct* claims against NNCC (as defined below), the issuer of the NNCC Notes, which in turn has direct claims against NNI. Those claims must share *pari passu* in any distribution to holders of unsecured claims against NNI.

4.  Accordingly, Law Debenture respectfully submits that the Supplement and the underlying Motion, if granted by this Court, require clarification. There is no justification to exclude holders of direct claims against NNI from participating in an interim distribution of NNI's cash on hand, and movant has offered none. All such unsecured claims rank *pari passu* and must be treated similarly. For these reasons and the reasons set forth below, any Order approving the Motion and/or the Supplement should expressly provide that the intercompany claims pertaining to the NNCC Notes are entitled to participate in the interim distribution.

**BACKGROUND FACTS PERTINENT TO LAW DEBENTURE**

5. Pursuant to: (a) an indenture, dated as of February 15, 1996 (the "Indenture"), by and among Nortel Networks Limited (f/k/a Northern Telecom Limited) ("NNL"), as issuer and guarantor, Nortel Networks Capital Corporation (f/k/a Northern Telecom Capital Corporation) ("NNCC"), as issuer, and The Bank of New York, as trustee, (b) the Prospectus for Northern Telecom Capital Corporation's $150,000,000 7.40% Notes Due 2006 and $150,000,000 7.875% Notes due 2026, dated May 2, 1996, and (c) the Prospectus Supplement for Northern Telecom Capital Corporation's $150,000,000 7.40% Notes Due 2006 and $150,000,000 7.875% Notes due 2026, dated June 12, 1996, NNCC issued $150 million in aggregate principal amount of 7.875% Notes Due 2026 (the "NNCC Notes").[2]

6. Section 1001 of the Indenture provides, in pertinent part, that NNCC, as issuer, "covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities in accordance with their terms and this Indenture." Accordingly, on September 28, 2009, Law Debenture timely filed a proof of claim against NNCC (as amended on January 10, 2013, the "Primary Claim"), demanding payment of "the principal of (and premium, if any) and interest on" the NNCC Notes.[3]

---

[2] Pursuant to an Agreement of Resignation, Appointment and Acceptance, dated as of February 12, 2009, by and among NNCC, NNL, BNY, and Law Debenture, Law Debenture became successor indenture trustee under the Indenture.

[3] Section 203 of the Indenture provides that NNL, as guarantor, "unconditionally guarantees to the Holder[s] of the Guaranteed Debt Security . . . and to the Trustee . . . the due and punctual payment of the principal of, premium, if any, and interest on such Guaranteed Debt Security . . . when and as the same shall become due and payable." Accordingly, on September 28, 2009, Law Debenture timely filed a proof of claim against NNL in Canada (as amended on January 10, 2013, the "Guarantee Claim"), demanding payment "of the principal of, premium, if any, and interest on" the NNCC Notes from NNL in its capacity as guarantor.

7. NNCC is a direct and wholly-owned subsidiary of NNI that acted as a financing vehicle for its affiliates. NNCC issued the NNCC Notes and loaned the proceeds to NNI in exchange for a Promissory Note, which was subsequently replaced by certain Revolving Loan Agreements, dated as of February 14, 2006, June 15, 2006, and June 15, 2008 (the "<u>Revolving Loan Agreement</u>"). The Revolving Loan Agreement provides that "[NNCC] desires to make periodic loan advances to [NNI] to support on-going working capital funding for general corporate purposes in exchange for an interest bearing obligation payable to [NNCC] at a future date." It also states that as of June 15, 2008, NNI had fully drawn against the credit facility in the amount of $146,671,383.90. Thus, NNCC has a claim against NNI for amounts owing under the Revolving Loan Agreement, which claim is listed on NNI's schedules in the amount of $147,634,914.66 ("<u>Intercompany Claim</u>").[4]

8. Finally, pursuant to an agreement dated as of February 15, 1996 (the "<u>Support Agreement</u>"), NNI and NNCC agreed that "[a]t all times prior to the termination of this Agreement, [NNI] shall cause [NNCC] to have and to maintain a net worth of at least $1.00." Under the Support Agreement, NNI must continually maintain NNCC's solvency and provide any and all funds needed to ensure that any and all of NNCC's liabilities can be satisfied in full. The Support Agreement thus gives rise to a separate claim in favor of NNCC against NNI for all amounts due to the holders of the NNCC Notes under the Indenture, including principal, interest (including post-petition interest at the contract rate), and all other amounts due to the holders of the NNCC Notes (including for any breach of the Indenture's "no-call" provision) (collectively, the "<u>Support Agreement Claim</u>").

---

[4] *See Amended Schedules of Nortel Networks Inc.*, dated December 10, 2014 [D.I. 14918].

8562869

4

**STATEMENT AND RESERVATION OF RIGHTS**

9.     The Intercompany Claim is an allowed general unsecured claim of NNCC against NNI that ranks *pari passu* with the claims of NNI's trade creditors. Accordingly, any distribution to holders of allowed unsecured claims against NNI must include a distribution to NNCC in its capacity as an unsecured creditor of NNI. Any such distribution must also account for the Support Agreement Claim, either by allowing and making a distribution on account of this claim, or by establishing a disputed claims reserve to ensure that sufficient funds are available when the Support Agreement Claim becomes an allowed claim.

[*Remainder of page intentionally left blank*]

10. Law Debenture reserves all rights in connection with the Motion and the Supplement, including, but not limited to, (a) the right to demand that NNCC participate in any interim distribution in its capacity as an unsecured creditor of NNI, (b) the right to seek an interim distribution from NNCC of any amount it receives from NNI, and (c) the right to appear and be heard at all hearings.

Dated: May 13, 2016

MORRIS JAMES LLP

_/s/ Stephen M. Miller_

Stephen M. Miller (DE Bar No. 2610)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: smiller@morrisjames.com

- and -

Daniel A. Lowenthal
Brian P. Guiney
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: (212) 336-2000
Facsimile: (212) 336-2222
Email: dalowenthal@pbwt.com
　　　　bguiney@pbwt.com

*Attorneys for Law Debenture Trust Company of New York, as Indenture Trustee*