# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
               Debtors. : Jointly Administered
:
: **RE: D.I. 16638, 16759**
:
---------------------------------------------------------X

## RESPONSE OF THE DEBTORS
## TO MOTION OF LIQUIDITY SOLUTIONS, INC. FOR ENTRY OF AN ORDER
## AUTHORIZING AND DIRECTING INTERIM DISTRIBUTIONS OR
## CONVERTING CASES TO CHAPTER 7 [D.I. 16638] AND SUPPLEMENT [D.I. 16759]

---

[1] The Debtors (or "U.S. Debtors") in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

The Debtors respectfully submit this response (the "Response") to the Motion of Liquidity Solutions, Inc. For Entry of Order (A) Authorizing and Directing Debtor, Nortel Networks Inc., to Make Interim Distributions on Allowed Administrative, Priority and Unsecured Claims or (B) Converting Cases to Chapter 7 Pursuant to Section 1112(b) of the Bankruptcy Code [D.I. 16638] (the "Motion") and the Supplement to Motion [D.I.16759] (the "Supplement").[2]

In support thereof, the Debtors respectfully respond as follows:

## INTRODUCTION

1. The Debtors are pleased to report that based on discussions with Liquidity Solutions, Inc. ("LSI") following the filing of the Motion, and the Debtors' own further internal review of their books and records and discussions with the other certain constituents in their cases, the Debtors have developed a proposal that would consensually resolve the Motion brought by LSI and obviate the need for the Court to consider or resolve other potentially thornier issues raised by the Motion and the various objections and responses filed thereto.

2. The Debtors had concerns about the original scope of relief sought in the Motion – including to the extent LSI sought to have unsecured creditor distributions made from cash on hand before an administrative bar date has been set, or to have various claims allowance and distribution issues (such as LSI's proposals with respect to the payment of bondholder claims) presented to and potentially resolved by the Court in the guise of a general motion seeking payment of interim distributions. The resolution proposed by the Debtors and agreed to by LSI, as reflected in the proposed order attached hereto as Exhibit A, avoids the need to litigate these issues by seeking approval of more narrow relief including:

---

[2] Capitalized terms not defined herein are defined in the Motion.

- NNI's payment from cash on hand, subject to compliance with applicable legal requirements, of administrative, priority and secured claims against NNI that are either scheduled as undisputed, non-contingent and liquidated (where no subsequent claim has been filed) or that are claims that have been allowed by Court order or under a Court-approved claims procedure;

- Express confirmation in the Court order that such payments will not prejudice NNI's right to an allocation of sale proceeds or result in other prejudice;

- Withdrawal of the remainder of LSI's motion with prejudice (subject to LSI's right to seek future relief upon a showing of cause as a result of a substantial change in facts and circumstances after a significant passage of time); and

- In furtherance of the consensual resolution of the Motion, NNI's payment of LSI's reasonable documented attorneys' fees, in an amount not to exceed $30,000, in full resolution of LSI's request for payment of counsel fees incurred in connection with the filing and prosecution of the Motion.

3. The Debtors posit that the proposed Order and the more narrow relief contemplated therein is warranted under the record in these cases and because it strikes a balance between the relief sought by LSI and the need to avoid potential prejudice to NNI's other creditors or avoid undue waste of estate resources through avoidable litigation. Among other things, approval of the more limited relief proposed by the Debtors would eliminate the need for the Court to consider whether distributions to general unsecured creditors from cash on hand are feasible or appropriate where no administrative bar date has been set, whether sale proceeds can or should be released to make the additional interim distributions originally sought by LSI, or whether prior settlements and orders of the Court preclude the additional findings sought by LSI with respect to the entitlement of bondholders to receive distributions on a *pari passu* basis with other general unsecured creditors, among other issues. Accordingly, for these reasons and for the reasons discussed more fully below, the Debtors respectfully request that the Motion be resolved through the granting of the relief set forth in the attached proposed order.

**ARGUMENT**

4. The Debtors' proposed resolution of the Motion, which has been vetted with and is supported by LSI, strikes an appropriate balance between the Debtors' interest in advancing these cases and making distributions to their creditors and the goal of avoiding wasteful litigation creating a risk of undue prejudice to other estate creditors. Additionally, the official committee of unsecured creditors has been actively involved in discussions with the Debtors and LSI regarding the proposed resolution of the Motion.

5. As a general rule, a debtor's claims, including administrative and priority claims, are paid at the end of a bankruptcy case. *See, e.g., CIT Commc'ns Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229, 242 (4th Cir. 2005) ("In most situations the courts prefer to postpone payment of the administrative claims[s] until confirmation of a plan or the distribution in a liquidation."); 3 Norton Bankr. L. & Prac. 3d § 49:16. While courts have discretion to determine when claims will be paid, one of the primary considerations for a court is "bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets." *In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (Gross, J.); *See also In re NE Opco, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) (same); *In re HQ Glob. Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (same). The court in *In re Garden Ridge* identified three factors that guide the decision whether early payment of a claim is appropriate: (1) prejudice to the debtor, (2) hardship to the claimant and (3) potential detriment to other creditors. *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005).

6. In this case, the Debtors had concerns regarding the original scope of relief sought by LSI in the Motion. In particular, the Debtors were concerned at NNI being subjected to a

4

direction from the Court to pay all administrative and priority claims without limitation or itemization of such claims, including because an administrative bar date has not been set in these cases. For the same reason, NNI was concerned that a request to pay general unsecured creditors from cash on hand would require it to calculate reserves for all administrative claims that have been and could be filed in its case and potentially could have the effect of triggering expedited and potentially otherwise unnecessary litigation to determine such reserves at this time, or otherwise to make distributions from cash on hand without a clear ability to predict the potential prejudice that could result to NNI's other creditors.

7. Moreover, while such issues do not need to be resolved in the context of considering the more narrow relief proposed by the Debtors in the attached order, the Debtors do not agree with all the purported facts included by LSI in the Motion. Without dissecting the Motion in its entirety (and without conceding the validity of other allegations contained therein), the Debtors note that NNI's cash on hand is approximately $493.3 million, not $ 594.1 million as stated in the Motion.[3] *See* Debtor's Monthly Operating Report No. 86 [D.I 16769], filed April 27, 2016. With respect to the potential universe of administrative or priority claims, while an administrative bar date has not been established in the Debtors' cases, the Debtors note that various significant claims have been filed against NNI such as SNMP's litigation claim asserting at least $200 million in damages. *See* Letter dated July 17, 2015 from R.S. Busch to M. Gurgel (CGSH), *SNMP Research Inc. v. Nortel Networks Inc.*, No. 11-53454 (KG) (Bankr. D. Del.)

---

[3] In this Response, the Debtors address only their ability to pay enumerated administrative and priority claims from the cash-on-hand and make no representations as to their ability to pay such claims after receiving a share of the Lockbox funds (the "Lockbox Funds") pursuant to the allocation method (the "Judges' Allocation") prescribed in the U.S. Allocation Trial Opinion [D.I. 15544] and Order [D.I. 15545] dated May 12, 2015 and the Canadian Allocation Trial Decision dated May 12, 2015 [D.I. 15555 at Ex. A] and corresponding order dated April 26, 2016 (collectively, the "Allocation Decisions") or any alternative allocation method that may be applied. However, the Debtors also should not be deemed to adopt LSI's assertion that their minimum entitlement to a share of the lockbox sale proceeds can be determined with certainty at this time, much less than that it would be $1.9 billion. See Motion at 3.

5

[D.I. 315-34]. While the Debtors dispute the priority and amount of this and various other claims, such claims would need to be considered and possibly accounted for if broader requests to pay claims were entertained by the Court. By narrowing the relief sought at this time to the payment of an enumerated list of already allowed claims, the Debtors have obviated the need to delve into these various factual inquiries or to engage in potentially wasteful and distracting litigation about the existence, validity and amount of these various known and potential claims.

8. Mindful of these concerns, and of the goal of avoiding prejudice to NNI's estate or its other creditors, as required under applicable law where pre-plan distributions are made on claims, the Debtors developed a proposal that NNI pay from cash on hand a more limited and known set of claims consisting of the allowed administrative, priority and secured claims listed on Exhibit 1 to the proposed order, which total approximately $14.2 million, as well as any additional administrative, priority and secured claims allowed against NNI on or before June 1, 2016 (collectively, the "Allowed Administrative, Priority and Secured Claims"). Such payments would be made net of any withholdings for applicable taxes, in full satisfaction of such claims (collectively, the "Allowed Claim Payments"), and would be conditioned on the receipt of properly completed tax forms and any additional documentation NNI determines to be necessary or appropriate to make such payments and NNI's right to withhold any and all applicable federal, state, or local tax from such distributions. NNI would use its reasonable efforts to make such payments as soon as administratively feasible in compliance with applicable law. NNI asserts that allowing the payment of this more well-defined and narrow set of allowed claims properly weighs and addresses the considerations under applicable caselaw where such interim payments are requested and authorized prior to a plan.[4]

---

[4] Given that NNI proposes to pay the administrative and priority claims allowed to date, as listed on Exhibit 1, it has not undertaken a separate analysis of the hardship faced by each creditor for whom a payment is proposed.

9. In accordance with the legal requirement that such interim distributions should not prejudice the Debtors' estates or other creditors, the Debtors have included in the proposed order and conditioned their resolution of the Motion and the relief sought by LSI upon the inclusion in the order of certain provisions confirming that prejudice will not result to the Debtors from making such payments. In particular, the proposed order contains the following terms which are essential to NNI's agreement to make such distributions at this time:

- Nothing in the order "shall obligate any of the Debtors to make distributions or any other interim payments, set aside reserves or take any other action in respect of any claims other than to make the Allowed Claim Payments for the Allowed Administrative, Priority and Secured Claims in accordance with the terms of this Order."

- The making of the "Allowed Claim Payments shall not prejudice or otherwise affect the Debtors' entitlement to receive an allocation from the escrowed Lockbox funds under the U.S. Allocation Trial Opinion [D.I. 15544] and Order [D.I. 15545] dated May 12, 2015 (the "<u>Allocation Decision</u>") and the Canadian Allocation Trial Decision dated May 12, 2015 [D.I. 15555 at Ex. A] and corresponding order dated April 26, 2016 (or any alternative allocation method that may be adopted or applied). For the avoidance of doubt, the Allowed Administrative, Priority and Secured Claims that are satisfied by Allowed Claim Payments shall be treated as claims against the Debtors for allocation purposes to the same extent that such claims would have been treated had such Allowed Claims Payments not been made."

- The granting of the Order "shall not constitute and shall not be construed as a determination that any of the Allowed Administrative, Priority and Secured Claims are not a "pre-filing claim" for purposes of the Allocation Decision or the Memorandum Order on Motions for Reconsideration dated July 6, 2015 [D.I. 15830]."

- "The Allowed Claim Payments shall not prejudice any right of the Debtors to assert claims for payment or reimbursement against any other Nortel affiliates' estate that arise from the same facts and circumstances underlying the Allowed Administrative, Priority and Secured Claims or their right to subrogation based on any payments made pursuant to this Order."

---

However, to the extent other creditors were to seek relief, the Debtors note that applicable caselaw requires a showing that such payments would be necessary, not merely desired by the claimant, *see, e.g., In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *5 (Bankr. D. Del. Dec. 21, 2006), and reserves its rights in this and all other regards with respect to any such potential future request.

- Nothing set forth in the order "shall obligate NNI to make any payment to the Pension Benefit Guaranty Corporation, including with respect to any obligation arising in connection with the sale of the shares of Nortel Government Solutions Inc., and specifically with respect to any cash held at NNI attributable to the $53 million release of funds from the Enterprise Escrow Account in connection therewith."

Moreover, the Debtors would reserve the right of all parties in interest to object to other claims on any basis. As part of the resolution of these matters with LSI, the Debtors also have reached a larger agreement with LSI regarding the remainder of the relief sought in the Motion. In particular, as a key component of the proposed consensual resolution of the Motion, LSI has agreed that the remainder of the relief sought by LSI in the Motion would be withdrawn with prejudice (although without prejudice to LSI's right to seek future relief based on a showing of cause as a result of a substantial change in facts and circumstances after a significant passage of time), and NNI agrees to reimburse LSI for reasonable documented attorneys' fees and expenses associated with its preparation, filing and prosecution of the Motion, in a total amount not to exceed $30,000.00 (the "LSI Fee Payment") in full satisfaction of any claims LSI otherwise may have related to fees or expenses it has incurred or may incur relating to the Motion.[5]

10. The payment of identified administrative, priority and secured claims proposed in the attached Order strikes a balance between LSI's desire that such claims be paid, and the avoidance of risks or prejudice that could result from the consideration of broader requests for relief. Accordingly, NNI is prepared to make payments of the claims enumerated in Exhibit 1 and in accordance with the terms of its proposed order, in furtherance of the interests of its creditors and based on its determination that such payments will not unduly prejudice the rights or interests of its larger creditor body.

---

[5] For the avoidance of doubt, if the Debtors were not able to reach this consensual resolution with LSI, they would vigorously dispute the remainder of the relief sought in the Motion, including without limitation that the requisite cause has not and could not be shown that would justify conversion of the case pursuant to 11 U.S.C. § 1112(b).

8

## RESERVATION OF RIGHTS

11. The Debtors reserve their rights to amend and/or supplement this Response, including to the extent the relief set forth in the proposed order were not granted or any party in interest were to seek alternative relief from the Court.[6]

## CONCLUSION

WHEREFORE, the Respondents respectfully request that the Court (i) grant the relief proposed in the Debtors' proposed order attached hereto as Exhibit A in full resolution of the Motion and the relief sought therein, and (ii) grant such other and further relief as the Court deems just and proper.

Dated: June 1, 2016  
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP  
James L. Bromley (admitted *pro hac vice*)  
Jeffrey A. Rosenthal (admitted *pro hac vice*)  
Lisa M. Schweitzer (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone: (212) 225-2000  
Facsimile: (212) 225-3999  

– and –

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*  
Derek C. Abbott (No. 3376)  
Andrew R. Remming (No. 5120)  
Tamara K. Minott (No. 5643)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone: (302) 658-9200  
Facsimile: (302) 658-3989  

*Counsel for the Debtors  
and Debtors in Possession*

---

[6] In light of this resolution, the Debtors have not expressly responded to all of the various additional arguments and allegations contained in the plethora of responses, objections and reservations of rights filed to the Motion. However, the Debtors reserve their rights with respect to all such matters.