## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------- **X**
    **:**
*In re*    **:**    Chapter 11
    **:**
Nortel Networks Inc., *et al.,*[1]    **:**    Case No. 09-10138(KG)
    **:**
    Debtors.    **:**    Jointly Administered
    **:**
    **:**
    **:**    **Hearing date: August 16,  2016  at 11:00 a.m. (ET)**
                 **Responses due: August 5, 2016 at 4:00 p.m. (ET)**
---------------------------------------------------- **X**


### DEBTORS' FORTY-SECOND OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR.P. 3007 AND DEL. L.R. 3007-1 (NO-BASIS CLAIMS, MODIFY AND ALLOW CLAIMS, RECLASSIFY AND ALLOW CLAIMS, NO-BASIS EQUITY CLAIMS, WRONG DEBTOR CLAIMS AND REDUNDANT CLAIMS)

**TO THE CLAIMANTS LISTED IN <u>EXHIBIT A</u> AND <u>EXHIBIT B</u> ATTACHED TO THIS OBJECTION:**

- **CLAIMANTS' RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND BY ANY FUTURE OBJECTION(S) THAT MAY BE FILED BY THE DEBTORS.**

- **THE RELIEF SOUGHT HEREIN IS WITHOUT PREJUDICE TO THE DEBTORS' RIGHTS TO PURSUE FURTHER SUBSTANTIVE OR NON-SUBSTANTIVE OBJECTIONS AGAINST THE CLAIMS LISTED IN <u>EXHIBIT A</u> AND <u>EXHIBIT B</u>.**

- **CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS IN <u>EXHIBIT A</u> AND <u>EXHIBIT B</u>.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), hereby object (this "Objection"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to those certain claims listed in **Exhibit A** and **Exhibit B** attached hereto and incorporated by reference.  In support of this Objection, the Debtors submit the Declaration of John J. Ray, III in Support of Debtors' Forty-Second Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del.  L.R. 3007-1 (No-Basis Claims, Modify and Allow Claims, Reclassify and Allow Claims, No-Basis Equity Claims, Wrong Debtor Claims and Redundant Claims) (the "Ray Declaration"), attached hereto as **Exhibit C** and incorporated by reference, and respectfully state as follows:

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 502 and 503 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## Background

### A.    Procedural History

3.        On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc. ("NN CALA"),[2] filed voluntary petitions for relief under chapter 11 of

the Bankruptcy Code, which cases are consolidated for procedural purposes only [D.I. 36].  The

Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

4.        The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

5.        On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by

the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

---

[2]        Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]        The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration

(the "English Proceedings") under the control of individuals from Ernst & Young LLP

(collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the

future may commence additional creditor protection, insolvency and dissolution proceedings

around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to

various purchasers.  For further information regarding these chapter 11 cases, reference may be

made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**B.      Bar Date and Schedules**

7.      On April 20, 2009 and May 29, 2009, the Debtors (other than NN CALA) filed

their Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Original

Schedules") [D.I.s 616-627, 801-810].  On September 11, 2009, the Debtors filed Schedules of

Assets and Liabilities and Statements of Financial Affairs for NN CALA (the "NN CALA

Schedules") [D.I. 1477, 1478].  On November 4, 2009, the Debtors (other than NN CALA) filed

their Amended Schedules of Assets and Liabilities and Amended Statements of Financial Affairs

(together with the NN CALA Schedules, referred to as the "Amended Schedules") [D.I.s

1811-1825].

8.      On August 4, 2009, the Court entered an order (the "Bar Date Order")

establishing September 30, 2009 at 4:00 p.m. (Eastern Time) (the "General Bar Date") as the last

date for all creditors holding a "claim" against the Debtors (other than NN CALA) to file and

---

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel
Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks
Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel
Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks,
s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and
Nortel Networks International Finance & Holding B.V.

serve a written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date

Order [D.I. 1280].  On December 3, 2009, the Court entered an order establishing January 25,

2010 at 4:00 p.m. (Eastern Time) (the "CALA Bar Date") as the general claims bar date for all

creditors holding a claim against NN CALA to file and serve written proofs of claim [D.I. 2059].

The Court also entered an order fixing November 15, 2011 at 4:00 p.m. (Eastern Time) as the bar

date for filing proofs of claim in respect of certain Non-Canadian intercompany and director and

officer claims [D.I. 6464] .

      9.      On each of October 31, 2011, November 7, 2011, November 15, 2011 and

November 21, 2011, the Debtors filed amended versions of Schedules E and F of the Original

Schedules and Amended Schedules of NNI, Nortel Altsystems Inc. ("Nortel Altsystems") and

NN CALA [D.I. 6702, 6719, 6780, 6827] (collectively, the "Second Amended Schedules

through the Fifth Amended Schedules").[5]  The Second Amended Schedules through the Fifth

Amended Schedules amend previously filed Schedules E and F to modify the priority and

amount of the scheduled severance claims for certain individuals terminated prior to the

applicable Petition Date.

      10.     On December 10, 2014, NNI and Nortel Networks Capital Corporation

("NNCC") filed amended versions of Schedules F of their Original Schedules, Amended

Schedules, Second Amended Schedules through Fifth Amended Schedules and Sixth Amended

Schedules (collectively, the "Seventh Amended Schedules" and together with the Original

Schedules, the Amended Schedules, the Second Amended Schedules through the Fifth Amended

Schedules and the Sixth Amended Schedules, the "Schedules").  The Seventh Amended

---

[5]     Additionally, on February 21, 2012, the Debtors filed an amended version of NNI's Schedule F (the "Sixth Amended Schedules") [D.I. 7240].  The Sixth Amended Schedules amend NNI's previously filed Schedule F to modify the amount of certain scheduled trade payable claims.

Schedules amend previously filed Schedules F to modify the amount and characterization of certain scheduled intercompany payable claims.

**C.      The Claims Resolution Process**

11.      In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors.

12.      The Debtors' claims, notice and balloting agent, Epiq Bankruptcy Solutions, LLC, has prepared and maintains a register (the "Claims Register") of all proofs of claim filed against the Debtors in these chapter 11 cases.  The Debtors and their advisors are comprehensively reviewing and reconciling all claims, including both the claims listed on the Schedules and the claims asserted in the proofs of claim (including any supporting documentation).  The Debtors are also comparing the claims asserted in the proofs of claim with the Books and Records to determine the validity of the asserted claims.

13.      This reconciliation process includes identifying particular categories of claims that may be targeted for disallowance, reduction and allowance or reclassification and allowance. To reduce the number of claims, and to avoid possible double recovery or otherwise improper recovery by claimants, the Debtors continue to file omnibus objections to such categories of claims if and where warranted.  This Objection is one such omnibus objection.

14.      On December 14, 2009, the Court entered an order granting the Debtors relief from the requirements of Bankruptcy Rule 3007(e)(6) and Local Rule 3007-1(f) (the "Original Rule 3007 Order") [D.I. 2125].

15.      On September 16, 2010, the Court entered an order authorizing and approving omnibus settlement procedures to settle certain prepetition claims (the "Original Settlement Procedures") [D.I. 3953].

16.     Also on September 16, 2010, the Court entered an order approving a cross-border claims protocol (the "Claims Protocol") establishing procedures to promote coordination and cooperation between the Debtors and the Canadian Debtors in the resolution of certain claims filed in these chapter 11 cases and the Canadian Proceedings that raise cross-border issues [D.I. 3956].

17.     On February 7, 2012, the Court entered an order modifying the application of Local Rule 3007-1 and the Original Rule 3007 Order [D.I. 7178].

18.     On  February 19, 2016, the Court entered an order authorizing and approving procedures to resolve or otherwise settle all disputed proofs of claims or interest (the "Omnibus Settlement Procedures").  The Omnibus Settlement Procedures superseded the Original Settlement Procedures.

<strong>Relief Requested</strong>

19.     For the reasons set forth below, the Debtors object to each of the claims identified in **Exhibit A** and **Exhibit B**.  By this Objection, the Debtors respectfully request that the Court enter an order pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1 reducing, modifying, reclassifying or disallowing in full, as applicable, the claims identified in **Exhibit A** and **Exhibit B**:

a.      Certain of the claims identified in **Exhibit A** should be disallowed in full as a claim for which the Debtors are not liable because (i) the claim asserts a liability that is not a liability of the Debtor identified in the proof of claim or a liability of any other Debtor and (ii) the claim is supported neither by documentation and information provided by the claimant, if any, nor by the Debtors' Books and Records (the "No-Basis Claims"). The particular grounds for objection applicable to a claim are listed next to such claim in **Exhibit A**.

b.      Certain of the claims identified in **Exhibit A** should be reduced and allowed, adjusted and allowed, and/or reclassified and allowed in the amount identified under the column labeled "Modified Claim Amount" for one or more of the following reasons: (i) part of the claimed amount is

neither supported by the documentation or other evidence provided by the claimant, if any, nor by the Debtors' Books and Records; (ii) the claimed amount exceeds the cap imposed by Section 502(b)(6) of the Bankruptcy Code; or (iii) some portion of the claimed amount has been previously satisfied by the Debtors (the "Modified, Reclassified and Allowed Claims"). The particular grounds for objection applicable to a claim are listed next to such claim in **Exhibit A**.

    c.    Certain of the claims identified in **Exhibit B** failed to identify or incorrectly identified the Debtor that is liable for such claim (the "Wrong Debtor Claims") and should be modified and allowed to clarify that the claim is asserted against the Identified Debtor (as defined below).

    d.    Certain of the claims identified in **Exhibit B** should be disallowed in full as a claim for which the Debtors are not liable because the claim is redundant of another claim filed asserting the same purported liability (the "Redundant Claims").

    e.    Certain of the claims identified in **Exhibit B** should be disallowed in full as a claim for which the Debtors are not liable because the claim does not meet the requirements of section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 (the "No-Basis Equity Claims").

### Basis for Relief

20.    Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable.  11 U.S.C. §§ 101(5) and 101(10).

21.    When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.  See In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); In re Int'l Match Corp., 69 F. 2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist).  Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity.  In re Allegheny Int'l, Inc., 954 F.2d at 173.  A party wishing to dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie* validity.  Id.  In practice, the objecting party must produce evidence that would refute at least one

of the allegations essential to the claim's legal sufficiency. Id. at 173-74. Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence. Id. The burden of persuasion is always on the claimant. Id.

**A.    No-Basis Claims**

22.    The Debtors object to the No-Basis Claims identified in **Exhibit A** because each asserts a claim for which there is no amount due and owing by any Debtor to the claimant.

23.    With respect to each of the No-Basis Claims, the Debtors and/or their advisors have carefully reviewed the Books and Records, the Schedules, and the proofs of claim, including supporting documentation provided by the claimants, if any, and have determined that the No-Basis Claims are claims for which none of the Debtors is liable.

24.    Further, the No-Basis Claims should be disallowed in full because, based on a careful review of the Books and Records, the Schedules, and the proofs of claim, including supporting documentation provided by the claimants, if any, the Debtors have determined that there is no amount due and owing by any of the Debtors to the claimants with respect to such claims.

25.    For the reasons stated above, the No-Basis Claims do not meet the standards for *prima facie* validity, and the Debtors seek entry of an order disallowing and expunging the No-Basis Claims in their entirety.

**B.    Modified, Reclassified, and/or Wrong Debtor and Allowed Claims**

26.    The Debtors object to certain of the claims identified in **Exhibit A** because the amounts asserted in these claims include amounts that (i) are not liabilities of the Debtors or their estates, and/or (ii) are amounts that were higher or lower than the liability reflected in the Debtors' Books and Records, and/or (iii) the claims assert an entitlement to administrative,

secured or priority status that the Debtors believe is unwarranted, either in part or in full, and/or (iv) the claims failed to identify or correctly identify the Debtor liable for such claims. Therefore, the priority status should be adjusted accordingly and the claims and priority amounts identified in **Exhibit A** should be reduced or increased to the amounts identified in the column labeled "Modified Claim Amount" for the reasons set forth in the column labeled "Reason for Modification." Furthermore, the Wrong Debtor Claims should be asserted against the Debtor identified in the column labeled "New Case Info and Identified Debtor" in **Exhibit A** (the "Identified Debtor").

27.     With respect to each of the claims in **Exhibit A** that are not liabilities of the Debtors' estates or that indicate an amount that is not reflected in the Debtors' Books and Records, the Debtors and/or their advisors have carefully reviewed the Books and Records, the Schedules and the proof of claim, including supporting documentation, if any, provided by the claimant and have determined that these claims overstate the Debtors' liability by an amount that is not supported by any documentation or other evidence provided by the claimants, if any. Nor is such overstated portion of each of these claims supported by the Debtors' Books and Records. To the extent that any claimant is permitted to amend a proof of claim or otherwise provides documentation or other evidence supporting the overstated portion of a claim, the Debtors respectfully request relief from the requirements of Local Rule 3007-1(f)(iii), and the Court's permission to submit a supplemental objection, as necessary.

28.     Based on a careful review of their Books and Records, the Debtors have determined that certain claimants identified in **Exhibit A** asserted a claim amount that was lower than the liability reflected in the Debtors' Books and Records.

29.     Therefore, the Debtors seek to adjust such claims to the Modified Claim Amounts identified in **Exhibit A** and allow such claims for the Modified Claim Amounts.  The Debtors also seek to disallow the overstated amounts asserted in **Exhibit A** and to reduce and allow such claims for the Modified Claim Amounts.  If the overstated or understated claim amounts are not revised as requested herein, many of the claimants will receive a disproportionately large distribution, while others will receive a disproportionately smaller distribution in these chapter 11 cases in contravention of the provisions and policies of the Bankruptcy Code and to the direct detriment of the Debtors' estates and other creditors.

30.     With respect to each of the claims identified in **Exhibit A** that asserts an entitlement to administrative, secured or priority status that the Debtors believe is unwarranted, either in part or in full, the Debtors and/or their advisors have carefully reviewed the Books and Records and the proof of claim, including supporting documentation provided by the claimant, if any.  Based on this review, the Debtors have determined that the affected claims (i) were filed on a section 503(b)(9) claim form but do not meet the statutory requirements of section 503(b)(9) of the Bankruptcy Code, and instead relate to claims that are unsecured according to the Books and Records, (ii) failed to provide any information or documentation in support of a security interest, pursuant to section 506 of the Bankruptcy Code, and instead relate to claims that are unsecured according to the Books and Records, or (iii) asserted incorrect or improper priority status classification in part or in whole, pursuant to sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code.  Consequently, the Debtors believe the secured status, priority and/or priority amount of these claims should be modified by reclassifying and/or reducing or adjusting the secured status, priority and/or priority amount listed under the column entitled "Modified Claim Amount" in **Exhibit A**.

31.     Section 503(b)(9) of the Bankruptcy Code provides administrative expense priority to claims for the value of any goods received by a debtor within 20 days before the commencement of a chapter 11 case to the extent that such goods have been sold to the debtor in the debtor's ordinary course of business.  11 U.S.C. § 503(b)(9).

32.     Section 506 of the Bankruptcy Code provides secured status to an allowed claim secured by a lien on property in which the debtor's estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code. 11 U.S.C. § 506(a)(1).

33.     By revising the aforementioned claims as set forth herein, the Debtors will be better positioned to ensure that the claimants ultimately entitled to receive distributions from the Debtors' estates receive the appropriate treatment and distribution.

34.     The Debtors also object to certain claims identified in **Exhibit B** because the claims fail to identify or incorrectly identify the Debtor that is liable for the claim.

35.     With respect to each of the Wrong Debtor Claims, the Debtors and/or their advisors have carefully reviewed the Debtors' Books and Records, their Schedules and the proof of claim, including supporting documentation provided by the claimant, if any.  Based on this review, the Debtors have determined that the claims should be asserted against the Identified Debtor.

36.     The Debtors hereby seek entry of an order to correct the Debtor against which the Wrong Debtor Claims are asserted and to allow such claims as modified.  If the relief sought in this Objection is granted, the claimant that filed the Wrong Debtor Claim will have an allowed claim against the Identified Debtor for the amount stated under the column entitled "Modified Claim Amount" in **Exhibit A**.

37.     Each of the allowed claims reflected in **Exhibit A** shall supersede any obligation of the Debtors to such claimant that may be reflected in the Schedules.

**C.     No-Basis Equity Claims**

38.     The Debtors object to the No-Basis Equity Claims identified in **Exhibit B** because they should not be allowed either as claims or interests under section 502 of the Bankruptcy Code.  11 U.S.C. § 502.

39.     The Equity Claims do not constitute claims for purposes of section 502 of the Bankruptcy Code.  Although the term "claim" is broadly defined under section 101(5) of the Bankruptcy Code, it is well settled that a claim is distinguishable from an ownership interest in the debtor, and the holder of an equity security, without more, is not the holder of a claim.  In re Insilco Tech., Inc., 480 F.3d 212, 218 (3d Cir. 2007) ("Equity investment brings not a right to payment, but a share of ownership in the debtor's assets – a share that is subject to all of the debtor's payment obligations."); Crocker v. Namer (In re AVN Corp.), 235 B.R. 417, 423 (Bankr. W.D. Tenn. 1999) ("[T]he filing of a proof of interest, which applies only in Chapter 11 cases, is not recognized in the claims process and becomes significant only when the remaining assets of the solvent corporate debtor are being distributed to shareholders.").  Indeed, under section 501(a) of the Bankruptcy Code, an equity security holder may file a proof of interest. 11 U.S.C. § 501(a).  See Crocker, 235 B.R. at 423.Bankruptcy Rule 3007(d)(7) provides for omnibus claims objections based on the ground that the claims should be disallowed because "they are interests, rather than claims."  Fed. R. Bankr. P. 3007(d)(7).

40.     The Debtors and/or their advisors have reviewed the Claims Register and each of the Equity Interest Claims, including supporting documents attached thereto, if any.  Based on this review, the Debtors have determined that the Equity Interest Claims are based solely on the Claimants' purported ownership of equity interests in the Canadian Debtors and, therefore, do

not constitute "claims."  Rather, each of the Equity Interest Claims would be, if anything, an "equity interest," as the term is used in the Bankruptcy Code.

41.     However, even if the Court were to reclassify the Equity Interest Claims as equity interests, there can be no valid equity interests against the Debtors because all of the equity interests in the Debtors are owned directly and indirectly by NNC, a Canadian Debtor that is the ultimate corporate parent of the Debtors.  In fact, certain Claimants of the Equity Interest Claims listed their purported ownership of equity interest in NNC as the sole basis for their Claim. Accordingly, such Equity Interest Claims are not properly asserted against any of the Debtors in these chapter 11 cases.[6]

42.     For the reasons set forth above, the Debtors respectfully submit that each of the Equity Interest Claims does not meet the standards for *prima facie* validity.  Each of the Equity Interest Claims therefore should be disallowed in full.

**D.     Redundant Claims**

43.     The Debtors object to the Redundant Claims identified in **Exhibit B** because each Redundant Claim relates to a claim that is redundant of another claim filed in this case. **Exhibit B** also lists the claim number for such Redundant Claims and notes that such claims will be disallowed as redundant of the remaining claim.  The disallowance of the Redundant Claims is necessary to prevent double recovery by a claimant or a successor thereof for the same claim.

<u>Separate Contested Matters</u>

44.     To the extent that a response is filed regarding any claim identified in **Exhibit A** or **Exhibit B** and the Debtors are unable to resolve the response, such claim, and the objection to such claim asserted by the Debtors herein, shall constitute a separate contested matter as

---

[6]     To the extent the Claimants assert any claims based on their equity ownership, such as misrepresentation, such allegations are conclusory and do not allege any particularized claim against the Debtors and therefore must be disallowed.

contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection

asserted in this Objection shall be deemed a separate order with respect to each claim.

**Responses to Omnibus Objection**

45.     To contest this Objection, a claimant must file and serve a written response to this

Objection (a "Response") so that it is received no later than **4:00 p.m. (prevailing Eastern**

**Time) on August 5, 2016** (the "Response Deadline").  Every Response must be filed with:

> The Office of the Clerk
> The United States Bankruptcy Court for the District of Delaware
> 824 Market Street
> Wilmington, Delaware  19801

and served upon the following entities so that the Response is received no later than the

Response Deadline, at the following addresses:

> Cleary Gottlieb Steen & Hamilton LLP
> One Liberty Plaza
> New York, New York  10006
> Attn:  Lisa M. Schweitzer
>
> -and-
>
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 North Market Street, P.O. Box 1347
> Wilmington, Delaware  19899-1347
> Attn:  Derek C. Abbott

46.     Every Response to this Objection must contain, at a minimum, the following

information:

    a.     A caption setting forth the name of the Court, the name of the Debtors, the case number, and the title of this Objection;

    b.     The name of the claimant, the claim number, and a description of the basis for the amount of the claim;

    c.     The specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;

    d.     Any supporting documentation, to the extent that it was not included in the proof of claim previously filed with the clerk or claims agent, upon which

the claimant intends to rely to support the basis for and amounts asserted in the proof of claim; and

e.      The name, address, telephone number and fax number of the person(s) (which may be the claimant or the claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the claim or this Objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the disputed claim on behalf of the claimant.

47.      If a claimant fails to file and serve a timely Response by the Response Deadline, the Debtors may present to the Court an appropriate order modifying, reclassifying or disallowing the claim, without further notice to the claimant or a hearing.

## Replies to Responses

48.      The Debtors may, at their option, file and serve a reply to any Response so that it is received by the claimant (or the claimant's counsel, if represented) no later than three (3) days prior to the hearing.

## Adjournment of Hearing

49.      The Debtors reserve the right to seek an adjournment of the hearing on any Responses to this Objection.  In the event that the Debtors seek such an adjournment, it will be noted on the notice of agenda for the hearing, and such agenda will be served on the affected claimant by serving the person designated in the Response.

## Reservation of Rights

50.      The Debtors expressly reserve the right to amend, modify or supplement this Objection.  Should one or more of the grounds of objection stated in this Objection be dismissed or overruled, the Debtors reserve the right to object to each of the claims on any other grounds that the Debtors discover or elect to pursue.  This Objection sets out substantive and non-substantive objections to the claims identified in **Exhibit A** and **Exhibit B**.  The Debtors reserve their right to assert one or more other legal, factual, procedural, substantive and

non-substantive objections to claims identified in **Exhibit A** and **Exhibit B** at a later time.  The

Debtors also reserve the right to withhold all applicable federal, state and local withholding taxes

from distributions (if any) that would be made with respect to the claims addressed in this

Objection.

## No Prior Request

51.      No prior request for the relief sought herein has been made to this or any other

court.

## Notice

52.      Notice of this Objection has been given via first class mail or overnight delivery

to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group;

(iv) each of the parties listed in **Exhibit A** and **Exhibit B** and (v) the general service list

established in these chapter 11 cases.  In light of the nature of the relief requested, the Debtors

submit that no other or further notice is necessary.

*[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]*

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as **Exhibit D**, sustaining this Objection in all respects and granting such other and further relief as the Court deems just and proper.

Dated:  July 15, 2016
            Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York  10006
Telephone:  (212) 225-3505
Facsimile:  (212) 225-3999


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

___*/s/ Tamara K. Minott*_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors-in-Possession*