## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- X
                                          :

*In re*                                     :      Chapter 11
                                            :

Nortel Networks Inc., *et al.*,[1]       :      Case No. 09-10138 (KG)
                                            :

                        Debtors.     :      Jointly Administered
                                            :

                                            :      **Hearing date: August 16, 2016 at 11:00 a.m. (ET)**
                                            :      **RE: D.I.s 17048, 17049**
                                            :

------------------------------------------------------- X

### DEBTORS' OMNIBUS REPLY IN FURTHER SUPPORT OF DEBTORS' FORTY-THIRD OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby respectfully submit this Omnibus Reply (the "Reply") to (i) the Response [D.I. 17049] filed by Douglas McGregor (the "McGregor Response") and (ii) the Response [D.I. 17048] filed by Lee Derry (the "Derry Response") to the *Debtors' Forty-Third Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No-Basis Claims, No-Basis 503(b)(9) Claims, No-Basis Deferred Compensation Claims, No-Basis Pension Claims, No-Basis Retiree Claims, No-Basis 401(k) Claims, Redundant Claims, Modify and Allow Claims, Reclassify and Allow Claims and Wrong Debtor Claims)* [D.I. 16997] (the "Objection"). In support of this Reply, the Debtors rely on the Declaration of Mary Cilia, dated August 11, 2016, attached hereto

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

as Exhibit A (the "Cilia Declaration").  In further support of this Reply, the Debtors respectfully

represent as follows:

**Reply to the McGregor Response**

1.     Through the Objection, the Debtors seek the disallowance of the claim asserted in

the amount of $511,945.38 (claim number 8772) by Mr. Douglas McGregor (the "McGregor

Claim"), relating to certain benefits Mr. McGregor claims he is entitled to relating to the Nortel

Retirement Income Plan (the "Pension Plan").[2]  The Debtors submit that the McGregor Claim,

which asserts liability for defined benefit pension benefits under the Pension Plan, is not validly

asserted against the Debtors because, to the extent such liability exists, it would have to be

asserted against the Pension Benefit Guaranty Corporation ("PBGC"), which assumed such

liabilities pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and the

terms of a trusteeship agreement (the "Trusteeship Agreement") entered into between the

Debtors and the PBGC.  Moreover, Mr. McGregor released NNI and its affiliates from all claims

related to his employment with NNI and its affiliates, including any disputes related to the

Pension Plan, as part of a settlement agreement (the "McGregor Settlement") entered on October

3, 2007.  A copy of the McGregor Settlement is attached as Exhibit 4 to the Declaration of Mary

Cilia.

**A.     Mr. McGregor's Employment With the Nortel Group**

2.     Mr. McGregor is a Canadian citizen and former employee of various affiliates

within the global Nortel group.  A complaint filed by Mr. McGregor in 2006 (the "Statement of

Claim") provides a roadmap of his employment with various Nortel affiliates. Cilia Decl., Ex.3

¶¶ 26-28.  Mr. McGregor commenced employment with Northern Telecom (Canada) in 1976 and

---

[2]      The proof of claim corresponding to the McGregor Claim  is attached hereto as Exhibit B (the "McGregor
Proof of Claim").

2

worked for Northern Telecom (Canada) for nearly 20 years, until January 2, 1995.  Mr.

McGregor then transferred to Richardson, Texas on January 3, 1995 and worked in Richardson

through August of 1998, where he was on NNI's payroll.  In August of 1998, just over three

years later, Mr. McGregor transferred to work at a Nortel-affiliate facility in France and was

removed from NNI's payroll.   Mr. McGregor subsequently transferred to work at another

facility in Great Britain in May, 2001.  Mr. McGregor was finally transferred to work at Nortel's

Ottawa facility in July of 2003, where he would remain through the remainder of his career.

3.        On or shortly after April 2, 2005, Mr. McGregor allegedly became disabled and

applied for short term and long term disability benefits from certain of the Debtors and the

Prudential Insurance Company of America ("Prudential").  The Debtors initially paid Mr.

McGregor short-term disability benefits, but did not pay Mr. McGregor long-term disability

benefits.

**B.    The Nortel Networks Retirement Income Plan**

4.        Mr. McGregor's proof of claim against NNI asserts a claim for certain pension

related benefits.  The Debtors assert that they have no liability to Mr. McGregor for such

amounts.[3]  By way of background, during portions of his employment within the Nortel group,

Mr. McGregor participated in the Nortel Networks Retirement Income Plan (the "Pension Plan")

and the Nortel Networks Long-Term Investment Plan (the "401(k) Plan").[4]

5.        NNI sponsored the Pension Plan, a tax-qualified, single-employer, defined benefit

pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974 (as

---

[3]        Mr. McGregor's Proof of Claim states as the basis for his claim that "US pension not payable by PBGC."
McGregor Proof of Claim at 1.

[4]        Although Mr. McGregor's Proof of Claim does not assert a claim related to the 401(k) Plan, Mr. McGregor
has previously asserted claims related to alleged obligations of the Debtors related to both the 401(k) Plan and the
Pension Plan and litigation in Canada relevant to this the McGregor Reply between Mr. McGregor and certain
Nortel Debtors, as described in additional detail herein, contained claims related to both 401(k) Plan claims and
Pension Plan claims.

amended, "ERISA"), to provide retirement benefits for certain of its employees.  See 29 U.S.C.

§§ 1301(a)(13), 1321(a).

6.      The Pension Plan was terminated under § 4042(c) of ERISA, effective July 17,

2009, pursuant to an agreement between the Pension Benefit Guaranty Corporation (the

"PBGC") and the Retirement Plan Committee of the Defined Benefit Pension Plan as the plan

administrator (the "Trusteeship Agreement").  The Trusteeship Agreement also appointed the

PBGC as statutory trustee of the Pension Plan.  Pursuant to ERISA and the terms of the

Trusteeship Agreement, the PBGC is the sole source of recovery for participants of a terminated

single-employer pension plan and the PBGC itself is the sole entity entitled to recover pension

termination liabilities directly from the Debtors.  29 U.S.C. §§ 1322, 1344 (describing

distributions from the PBGC with respect to terminated single-employer pension plans); 29

U.S.C. § 1362 (stating that in any case in which a single-employer pension plan is terminated,

the plan sponsor or member of such plan sponsor's controlled group shall be liable to the

PBGC).

7.      As such, Mr. McGregor is apparently currently receiving certain benefits

payments from the PBGC. Even if Mr. McGregor held a valid claim for additional pension

benefits – a fact that the Debtors do not concede – the Debtors are not liable for Mr. McGregor's

claims related to the Pension Plan and Mr. McGregor must seek any recovery for alleged

obligations pursuant to the Pension Plan from the PBGC, not the Debtors.[5]

---

[5]      The Debtors further note that the Pension Plan provides that only "Employees" are eligible to participate in
and receive benefits under the Pension Plan.  Pension Plan §1.1; §1.22.  Importantly, the Pension Plan *excludes* from
the definition of "Employee" individuals who are non-resident aliens and who earn no earned income within the
United States.  Pension Plan §1.16.3.  As such, the Debtors further dispute Mr. McGregor's entitlement to pension
benefits.  See Excerpt of Pension Plan at McGregor Response at 20-34.

**C.      Mr. McGregor is Ineligible for the Pension Plan Because of his Work Abroad**

8.      In 2004, Nortel discovered that Mr. McGregor had been participating in the

Pension Plan (and the 401(k) Plan) during periods when he was not eligible to participate due to

the fact that he was non-resident alien and had no earned income in the United States.  On July

14, 2005, NNI sent a notification regarding Mr. McGregor's ineligibility period for the 401(k)

Plan and the Pension Plan (the "2005 Ineligibility Letter").[6]  In the 2005 Ineligibility Letter, NNI

offered as a settlement to pay Mr. McGregor a lump sum of  $297,190.93, representing the value

of the pension payments that Mr. McGregor would have received during his period of

ineligibility (the "NNI Pension Plan Offer").   Mr. McGregor declined to accept the NNI Pension

Plan Offer and the issue remained unresolved.

**D.      The Canadian Action & Settlement Agreement**

9.      The McGregor Response attaches the 2005 Ineligibility Letter, but fails to

mention that all of his employment-related issues were resolved following a settlement in 2007.

On August 22, 2006, Mr. McGregor filed a Statement of Claim, initiating a lawsuit (the

"Canadian Action") against Nortel and the Prudential Insurance Company of America

("Prudential") in the Ontario Superior Court of Justice (the "Canadian Court"), seeking, *inter*

*alia*, damages for a host of employment-related causes of action, including wrongful dismissal,

payment of certain disability benefits, and entry of orders by the Canadian Court directing Nortel

to make alleged corrections to Mr. McGregor's 401(k) and Pension Plans with Nortel. Statement

of Claim ¶¶ 2-3.  The Complaint was served on Bill Knapp, an NNI employee, at NNI's

Tennessee office.

---

[6]      See McGregor Response at 7.  A copy of the 2005 Ineligibility Letter is attached as Exhibit 2 to the
Declaration of Mary Cilia.

10.     In Mr. McGregor's Statement of Claim in the Canadian Action, attached as

Exhibit 3 to the Declaration of Mary Cilia, Mr. McGregor demanded, *inter alia*, the following

relief, which is of particular relevance to the assertions made again in McGregor Response:

- An order that Nortel account for all sums paid or payable in connection with Douglas' employment-related pension plan (the "Pension") and an order directing that Nortel make appropriate corrections to the Pension in accordance with US law; and

- Damages for breach of Nortel's fiduciary and contractual obligations to honestly, correctly and faithfully administer both the 401K and the Pension Plan, in the sum of $10,000,000.00.

Statement of Claim ¶2.

11.     While NNI did not concede that it had any liability or obligation to Mr.

McGregor's alleged employment claims, following the commencement of the action, NNI,

Prudential and Mr. McGregor entered into settlement negotiations that resulted in a settlement

among the parties in October of 2007.[7]  The McGregor Settlement, stylized as an agreement

between Douglas McGregor and Nortel Networks Inc. and the Prudential Insurance Company of

America and which was entered into to "finally settle the Action as well as all matters relating to

Mr. McGregor's employment with Nortel Networks Inc., Nortel Networks Limited, or any

associated, related or predecessor companies, and the cessation of such employment,"[8] resolved

*all* of the claims raised by Mr. McGregor in the Statement of Claim, including any claims against

NNI related to Nortel's Pension Plan.  To effectuate the parties' intentions, the McGregor

Settlement contained the following release language:

Mr. McGregor, on his own behalf and on behalf of his heirs, executors, administrators and assigns, hereby releases and forever discharges Nortel, its

---

[7]     The McGregor Settlement was executed contemporaneously with a Minutes of Settlement, a document describing in additional detail the terms of the McGregor Settlement (the "Minutes of McGregor Settlement").  The Minutes of the McGregor Settlement is attached to the Declaration Mary Cilia as Exhibit 5.

[8]     See Minutes of McGregor Settlement at 1.

directors, officers, employees, agents, including Prudential, successors and assigns of and <u>from all manner of actions</u>, causes of actions, debts, accounts, covenants, contracts, claims, complaints or demands including, without limitation, claims under the *Employment Standards Act* and the *Human Rights Code*, <u>in any way related to or arising from Mr. McGregor's employment with Nortel</u> and the cessation of such employment, save and except for the entitlements under these Minutes or accrued under pension plans applicable to Mr. McGregor. Without restricting the generality of the foregoing, Mr. McGregor specifically releases Nortel from all claims made in the Action."[9]

Minutes of McGregor Settlement ¶13 (emphasis added).

12.     On November 1, 2007, $965,000.00 was wired to Mr. McGregor at the direction of NNI pursuant to the terms and in full satisfaction of NNI"s obligations under the McGregor Settlement Agreement. Confirmation of the wire transfer payment (the "<u>McGregor Wire Transfer Confirmation</u>") is attached as <u>Exhibit 6</u> to the Declaration of Mary Cilia. Mr. McGregor does not dispute he received the payment.

13.     On November 28, 2007, the Canadian Court entered an order dismissing the Canadian Action in accordance with the terms of the McGregor Settlement (the "<u>Canadian Action Dismissal Order</u>"). A copy of the Canadian Action Dismissal Order is attached as <u>Exhibit 7</u> to the Declaration of Mary Cilia.

14.     Notwithstanding the fact that Mr. McGregor received a payment of $965,000 pursuant to the McGregor Settlement, a settlement which unequivocally provided for a global release of all current and future employment-related claims by Mr. McGregor against NNI, Mr. McGregor filed a proof of claim that seeks to recover an additional $511,945.38 from the Debtors on account of a claim for disputed pension obligations. According to the McGregor

---

[9]     The Debtors note that the release language stating that "entitlements under these Minutes or accrued under pension plans applicable to Mr. McGregor" was intended to ensure that the release language did not release NNI from its obligations pursuant to the McGregor Settlement (including the $950,000 payment) and to ensure that Mr. McGregor would continue to receive his regular pension payments (i.e., the $950,000 settlement payment was not a lump sum payment intended to replace his monthly entitlement to pension payments, but was  intended to finally settle all disputes related to the claims made in the Canadian Action,  including Mr. McGregor's claims for additional entitlements under the Pension Plan and 401(k) Plan).

Proof of Claim, this $511,945.38 amount consists of two parts: a "principal" amount of $297,190.93, which is an amount taken *directly* from the Nortel settlement offer in the 2005 Ineligibility Letter that was addressed and resolved in the McGregor Settlement, and interest of $214,754.45 that purportedly accrued on that settlement offer at 6%, over a period of 9.33 years from 2005 through 2014.[10]  See Exhibit B at 2.  Accordingly, the claim for $511,945.38 is a claim covered by the general release language provided in the McGregor Settlement.

E.    **The PBGC Eligibility Letters**

15.    According to July 25, 2016 letter written from the PBGC to Mr. McGregor (the "2016 PBGC Letter"),[11] on  April 11, 2010, Mr. McGregor completed a PBGC *Participant Application for Pension Benefits*, requesting that he receive monthly PBGC benefits effective January 1, 2010.  On May 11, 2010, PBGC advised Mr. McGregor that he would be paid an estimated monthly benefit of $1,738.35 commencing on June 1, 2010.

16.    On September 24, 2014, PBGC issued a benefit determination letter stating that the estimated monthly pension of $1,738.35 was more than the monthly benefit of $217.99 to which Mr. McGregor was actually entitled under the terms of the Pension Plan and noting that Mr. McGregor had been overpaid $89,792.321 through November 30, 2014 and that such overpayment would be collected through a reduction in future monthly payments to Mr. McGregor such that his monthly payment would be $196.19 until the overpayment was repaid. The PBGC subsequently found that this amount was in error and corrected the future monthly payment amount to $200.41.

---

[10]    Even if the McGregor Settlement had not fully resolved the claims Mr. McGregor now asserts in his proof of claim (which it did), and even if the settlement offer extended in the 2005 Ineligibility Letter were found to be a debt owed by the U.S. Debtors on which interest accrued (which it was not) the McGregor Proof of Claim appears to incorrectly calculate interest on an alleged prepetition amount after the Petition Date.  The U.S. Debtors reserve all of their rights on this subject.

[11]    A copy of the 2016 PBGC Letter was attached by Mr. McGregor as an exhibit to the McGregor Response.

17.     Mr. McGregor appears to assert that the Debtors should be held liable for the difference between the PBGC's initial calculation of Mr. McGregor's pension benefit claim and its adjusted benefit amount, i.e. the amount the PBGC had determined it overpaid Mr. McGregor plus the reduction in any payments he is entitled to receive from that time forward.  Specifically, the McGregor Response suggests that the PBGC originally was making monthly payments to Mr. McGregor in a manner that indicated to Mr. McGregor that the dispute over the amount of Mr. McGregor's Pension Plan account had been resolved, but that the PBGC subsequently reviewed his file in the fall of 2014 and revised his payment amount, thereby "re-exposing Mr. McGregor to the Nortel error" and that "the PBGC asserts they can take no responsibility for this issue." McGregor Response ¶4 (3-4).

18.     Mr. McGregor fails to articulate a valid basis for asserting this claim against the Debtors.  The Debtors always deny any liability to Mr. McGregor for such pension benefits.  Mr. McGregor is receiving those benefits from the PBGC, and it is up to the PBGC – not the Debtors – to determine the appropriate amount of any payment for any such remaining benefits. Moreover, Mr. McGregor settled any claims he may have against the Debtors for any employment-related causes of action and alleged pension and benefit irregularities in 2007 and received a substantial payment under that settlement.  Mr. McGregor cannot reopen or avoid the agreements in that settlement to revisit these claims.  He is not entitled to a claim against the Debtors for pension benefits that the PBGC has determined are not owing to him.  The Debtors therefore submit that Mr. McGregor's argument that he is entitled to a claim for $511,945.38 against the Debtors because the PBGC recently recalculated the amount of his Pension Plan benefit must be rejected.  For this additional reason, the Debtors respectfully request that this Court grant the Objection and disallow the McGregor Claim in its entirety.

**Reply to the Derry Response**

19.     The Debtors, through the Objection, seek, among other things, the modification of the claim asserted in the amount of $10,779.85 (claim number 3905) by Mr. Lee Derry relating to certain pension benefits (the "Derry Claim").[12]  The Debtors' books and records support their Objection that Mr. Derry is entitled solely to an unsecured claim of $1,279.00, which represents the proper calculation, as of the Petition Date, of the present value of the lifetime $9.21 monthly payment stream that Mr. Derry, aged 60 on the Petition Date, elected to receive from NNI when he retired in 2004.

20.     Upon his retirement from NNI in 2004, Mr. Derry had the opportunity to elect to receive one of several payment options pursuant to the Nortel Networks Retirement Income Plan – Restoration Plan (the "Non-Qualified Plan").  His options included a monthly payment of $9.21 that he would receive over the remainder of his life, or he could accept a lump sum estimated at $10,779.85.  See Derry Response Ex. A (identifying, among others, a "Life Only Amount: $9.21" and a "Lump Sum: $10.779.85") (the "Derry Benefits Projection").  The stream of payments would commence or the lump sum would be paid beginning around his retirement date of September 1, 2004.  Id.  Mr. Derry chose the monthly $9.21 payment, which payments he does not dispute he received from the date of his retirement through the Petition Date.[13]

21.     As a result of the Debtors' bankruptcy filings, following the Petition Date, NNI stopped making the monthly payments to Mr. Derry and to all other similarly situated NNI employees under the Non-Qualified Plan.  Based on a review of the Debtors' books and records, and employing an analysis consistent with the Debtors' and the Debtors' professionals'

---

[12]     The proof of claim corresponding to the Derry Claim  is attached hereto as Exhibit C.

[13]     The Debtors' record evidencing this monthly payment being received on the Petition Date by Mr. Derry (the "Derry Payment Record") is attached to the Declaration of Mary Cilia as Exhibit 1.

calculations of other similarly situated former employees' benefit claims under the Non-Qualified Plan, the Debtors and their professionals calculated the value of the claim that Mr. Derry, who was 60 years old on the Petition Date, is entitled to in lieu of a lifetime stream of $9.21 monthly payments at $1,279.00.

22.     Mr. Derry's objection is not founded on the Debtors' calculation of his claim; rather he asserts that because he has not received his $9.21 stream of monthly payments since 2009, that he should be awarded the "$10,779.85 lump sum upon which it was based." Derry Response at 4 ¶ 4. In fact, Mr. Derry originally had, and declined, the option to receive a lump sum benefit payment amount rather than a monthly payment. Legally, having declined that option, Mr. Derry is only entitled to the present value of his remaining monthly benefits as of the Petition Date, which the Debtors calculate to be $1,279.00.

23.     Accordingly, the Debtors respectfully request that the court reduced and allow the Derry Claim as a general unsecured claim in the amount of $1,279.00.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

## Conclusion

For the reasons set forth above, the Debtors respectfully request that the Court overrule the Derry Response and the McGregor Response, approve the Objection with respect to the Derry Claim and McGregor Claim, and grant such other relief as the Court deems just and proper.


Dated: August 11, 2016       CLEARY GOTTLIEB STEEN & HAMILTON LLP
       Wilmington, Delaware

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


_____*/s/ Tamara K. Minott*_____
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*