## Exhibit A

**Cilia Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X

*In re*

Nortel Networks Inc., *et al.*,[1]

                    Debtors.

-------------------------------------------------------- X

:
:
:
:
:
:
:
:
:
:
:

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: August 16, 2016 at 11:00 a.m. (ET)**
**RE: D.I.s 17048, 17049**

## DECLARATION OF MARY CILIA IN SUPPORT OF
## DEBTORS' OMNIBUS REPLY TO RESPONSES TO DEBTORS'
## FORTY-THIRD OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS

I, Mary Cilia, do hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a Senior Director at RLKS Executive Solutions LLC ("RLKS"), the claims consultant retained by the Debtors to assist the Debtors in resolving all claims against the Debtors' estates.

2.      I respectfully submit this declaration in support of the *Debtors' Omnibus Reply to Responses to Debtors' Forty-Third Omnibus Objections (Substantive) to Certain Claims* (the "Reply").[2] Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, information supplied to me by former employees retained by the Debtors or their affiliates and professionals retained by the Debtors, or learned from my review of relevant

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Reply.

documents.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.

3.   In order to place before the court certain documents relevant to the Reply, annexed to this declaration are true and correct copies of the following documents:

**Exhibit 1:** Derry Payment Record

**Exhibit 2:** 2005 Ineligibility Letter

**Exhibit 3:** Statement of Claim

**Exhibit 4:** McGregor Settlement

**Exhibit 5:** Minutes of McGregor Settlement

**Exhibit 6:** McGregor Wire Transfer Confirmation

**Exhibit 7:** Canadian Action Dismissal Order

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Houston, Texas
       August 11, 2016

_____
                  Mary Cilia

**Exhibit 1**

```
NORTHERN TRUST
BENEFIT PAYMENTS                    ANNUAL STATEMENT OF PAYMENTS REPORT BY ALPHA LAST NAME              DATE      01/08/2010
REPORT ID  BPP425-ASP                            *NORTEL NETWORKS*                                      PROGRAM ID BPPB250R
CLIENT     0001                               NORTEL NETWORKS - NQ                                      PAGE            14
PLAN       NNQ1                           FROM 01/01/2009 - 12/31/2009

PARTICIPANT NAME              SSN                                            PAYMT REF#
HOME ADDRESS                  PART ID             PAYMT DATE    PAYMT TYPE   W/H & DED
PAYMENT/ADVICE ADDRESS        RETIRE DATE         FUNDING SOURCE  AMOUNT     TAXATION      AMOUNT
─────────────────────────────────────────────────────────────────────────────────────────────────────────────────────
DERRY, LEE                                        01/02/2009    CHECK        32550838
1144 GILBERT                  (MFW)               RESTORATION        9.21    FEDERAL           .00 NET AMOUNT          8.93
DOWNERS GROVE   IL   60515    (MFW)               GROSS AMOUNT       9.21    IL STATE          .28
                              (MFW)                                          TOTAL             .28

                                                                            TAXABLE          9.21 TAXABLE             9.21
                                                                                                  NONTAXABLE           .00
─────────────────────────────────────────────────────────────────────────────────────────────────────────────────────
```

(MFW)

NTAC:2SE-18

**Exhibit 2**

Attachment # 1

NOR001179

N**O**RTEL



July 14, 2005

Mr. Douglas McGregor
5791 Queenscourt Crescent
Manotick, ON  K4M  1K3
Canada

Re: Nortel Networks Long Term Investment Plan and Nortel Networks Retirement Income Plan

Dear Mr. McGregor:

As we mentioned in our letter last year, in reviewing the records for the Nortel Networks Long-Term Investment Plan ("the LTIP") and the Nortel Networks Retirement Income Plan ("the pension plan"), we discovered you have been permitted to participate in these plans for a period that you were not eligible.  The terms of both plans specifically exclude from participation non-resident aliens of the United States who have no US-source income.  As a result, you should not have been permitted to participate in either of these plans during that time.

United States law requires that the LTIP refund to you the amount you contributed, as adjusted for earnings or losses, since the date your ineligible international assignment began on January 1, 1999.  The LTIP trustee is sending you a check in the gross amount of $48,831.11 that represents your employee contributions and associated earnings/losses during your ineligible assignment period.  As Hewitt has communicated to you, they need to get a W-8 form from you so that you can minimize the tax withholding on this payment if you choose to.

In addition, any LTIP company matching contributions made by Nortel Networks and allocated to your account during your ineligible assignment period has been forfeited and returned to the LTIP.  However, Nortel Networks will compensate you for the amount of this company matching contribution, and associated earnings or losses, with a payment from the company.  A check in the gross amount of $23,796.97, which equals the amount of your forfeiture, is being prepared by Nortel's Accounts Payable department and will be mailed to your address in the near future.   Please understand that this is a one-time payment that the

documents provided in confidence

NOR001180



company has agreed to make and will not be paid again in the future. If you choose to return to your assignment, you will not be eligible for this payment in the future.

Your employee contributions and company matching contributions and associated earnings/losses made prior to your assignment have been left in your Plan account since you met the requirements for participation during this period. This amount totaled $59,395.87 as of June 10, 2005.

As mentioned above, you were not eligible to participate in the pension plan after the period you went on your international assignment. However, Nortel Networks will compensate you for the value of the pension payments that you would have received for this period. The amount of your payment is $297,190.93 and a check will be prepared by Nortel's Accounts Payable department and mailed to your address soon.

| This was never done. Nortel arbitrarily took this offer off the table when I was unwilling to sign off on the offer without answers to some questions. |
| --- |

You will receive a United States Internal Revenue Service Form 1099s from the 401(k) trustee and W-2s from Nortel for the two Accounts Payable payments. Since the Global Tax Equalization Policy does not apply to these payments, any tax due on these payments, whether US, host country or third country, will be entirely your responsibility. Our outside counsel has stated that because you were not subject to United States tax at the time you made contributions to the LTIP, these payments may not be subject to U.S. tax, however, they may be taxable in another country in which you paid taxes during these years. We strongly recommend that you consult with a tax advisor to discuss these issues.

Please let me know if you have questions.

Sincerely,


Daniel Ray
Global Benefits
Nortel Networks Inc.


Cc: Paula Holden
    Angie Lannom


*documents provided in confidence*

**Exhibit 3**

# DOUCET McBRIDE

### LAWYERS     AVOCAT(E)S

MARC C. DOUCET *†
JOHN HOLLANDER
J. ALDEN CHRISTIAN
COLLEEN L. BURN
LAURIE A. TUCKER
JOHN GOWSELL
ÉLIANE LACHAÎNE

IAN B. McBRIDE *
ROGER J. RAMONAT
PERCY OSTROFF **
CHRISTINE M. LA CASSE
STÉPHANE BOND
TIMOTHY F. BURKE
JENNINFER ALLINGHAM

*Certified by the Law Society as a Specialist in
Construction Law

**Certified by the Law Society as a Specialist in
Bankruptcy and Insolvency Law

†Member of the Bar of the Province of Québec

Email: jhollander@doucetmcbride.com
Web: www.doucetmcbride.com

August 22, 2006

William H. Knapp
Senior Counsel, Employment and Labor
Nortel Networks
200 Athens Way
Nashville, TN
U.S.A. 37228

**RECEIVED**
**AUG 2 2 2006**

By FAX: 1-615-432-5901

Mr. Knapp

**Re:        Claims of Douglas McGregor employee number 0119055**
**Our File:   10126**

In your correspondence dated June 9, 2006 you indicated that any further correspondence concerning this matter should be sent to you. We have caused to be issued in the Superior Court of Justice at Ottawa a Statement of Claim against Nortel Networks and The Prudential Insurance Company of America. Enclosed please find a copy of the same. Would you kindly confirm, in writing, that you are prepared to accept service of the statement of claim on behalf of Nortel.

Yours truly,

John Hollander

Doucet McBride LLP/s.r.l.  100-85, rue Plymouth Street, Ottawa, Ontario  K1S 3E2
Telephone: (613) 233-4474        Facsimile: (613) 233-8868

Court File No.: *06-CV - 35486*



# ONTARIO
# SUPERIOR COURT OF JUSTICE

### DOUGLAS McGREGOR

Plaintiff

- and -

### NORTEL NETWORKS and THE PRUDENTIAL
### INSURANCE COMPANY OF AMERICA

Defendants

### STATEMENT OF CLAIM

## TO THE DEFENDANT(S)

A LEGAL PROCEEDING HAS BEEN COMMENCED AGAINST YOU by the plaintiff(s). The claim made against you is set out in the following pages.

IF YOU WISH TO DEFEND THIS PROCEEDING, you or an Ontario lawyer acting for you must prepare a statement of defence in Form 18A prescribed by the Rules of Civil Procedure, serve it on the plaintiff(s) lawyer(s) or, where the plaintiff(s) do(es) not have a lawyer, serve it on the plaintiff(s), and file it, with proof of service, in this court office, WITHIN TWENTY DAYS after this statement of claim is served on you, if you are served in Ontario.

If you are served in another province or territory of Canada or in the United States of America, the period for serving and filing your statement of defence is forty days. If you are served outside Canada and the United States of America, the period is sixty days.

Instead of serving and filing a statement of defence, you may serve and file a notice of intent to defend in Form 18B prescribed by the Rules of Civil Procedure. This will entitle you to ten more days within which to serve and file your statement of defence.

IF YOU FAIL TO DEFEND THIS PROCEEDING, JUDGMENT MAY BE GIVEN AGAINST YOU IN YOUR ABSENCE AND WITHOUT FURTHER NOTICE TO YOU. IF YOU WISH TO DEFEND THIS PROCEEDING BUT ARE UNABLE TO PAY LEGAL FEES, LEGAL AID MAY BE AVAILABLE TO YOU BY CONTACTING A LOCAL LEGAL AID OFFICE.

DATE: August 1st , 2006

Issued by :

Ottawa Courthouse
161 Elgin St.
Ottawa, Ontario
K2P 2K1

**TO:**
Nortel Networks Corporation
8200 Dixie Road,
Suite 100
Brampton, ON L6T 5P6

**AND TO:**
The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480
Philadelphia, PA 19101

CLAIM

**Relief Sought**

1. The Plaintiff, Douglas McGregor ("Douglas"), claims from the Defendants:

    a. Payment of all disability benefits due and owing to the date of trial;

    b. A declaration and order that Douglas is entitled to recover from the Defendants monthly and other disability benefits in an amount not yet known, the particulars of which shall be provided prior to the trial of this action, for such period as Douglas is, as a result of illness or injury, totally disabled within the meaning of the policy, more particularly described below, such payments to continue until Douglas attains the age of sixty-five (65) years as provided in the policy;

    c. An order that the defendants shall waive the payment of premiums as provided in the policy and return the premium payments made, along with interest in accordance with the terms of the policy;

    d. Damages for mental distress in the sum of $500,000;

    e. Pre-judgment and post-judgment interest in accordance with the *Courts of Justice Act* and amendments thereto;

    f. Aggravated and punitive damages in the sum of $1,000,000.00;

    g. His costs of the action on a full indemnity basis, along with G.S.T.; and

    h. Such further and other relief as to this Honourable Court may seem just.

2. Douglas claims from the Defendant Nortel Networks ("Nortel"):

    a. Damages for wrongful dismissal, in the sum of $2,000,000.00;

    b. Damages for wrongly reporting Douglas to be an "insider", governed by restrictions on the trading of common shares of Nortel;

    c. An order that Nortel account for all sums paid or payable in connection with Douglas' 401K Plan (the "401K") and an order directing that Nortel make appropriate corrections to the 401K in accordance with United States of America ("US") law.

    d. An order that Nortel account for all sums paid or payable in connection with

- 2 -

Douglas' employment-related pension plan (the "Pension") and an order directing that Nortel make appropriate corrections to the Pension in accordance with US law.

e.  Damages for breach of Nortel's fiduciary and contractual obligations to honestly, correctly and faithfully administer both the 401K and the Pension Plan, in the sum of $10,000,000.00;

f.  Pre-judgment and post-judgment interest in accordance with the *Courts of Justice Act* and amendments thereto;

g.  Aggravated and punitive damages in the sum of $1,000,000.00;

h.  His costs of the action on a full indemnity basis, along with G.S.T.; and

i.  Such further and other relief as to this Honourable Court may seem just.

## Summary of Claims

3.  Douglas was (and remains) employed with Nortel. As a Canadian resident, Nortel transferred him to work in the U S. From there he was again transferred to work for Nortel in Europe. After his return to Canada, Douglas became disabled. Nortel disclosed that it has made substantial errors in the treatment of his 401K and Pension Plan (together, the "Plans"), arising from his continued participation in US plans while employed in Europe and his return to Canada.

4.  Douglas' claims arise from three separate issues. First, he claims disability benefits, which both Defendants have refused to pay. Second, Nortel has failed to adequately account for the impact of its errors in connection with both of the Plans. Third, Nortel's conduct has abrogated the employment contract and rendered continued employment with Nortel intolerable.

## The Parties

5.  Douglas lives in Ottawa, Ontario.

6.  Nortel consists of a group of companies with offices in Canada and the US. It has

- 3 -

offices in Ottawa and Brampton, Ontario, as well as in Nashville, Tennessee and near Dallas, Texas. It has operations in Great Britain and France relevant to this action.

7.    The Defendant, the Prudential Insurance Company of America is licensed to carry on the business of disability income insurance, among other things, in the Province of Ontario and in the US. It contracts with Nortel to provide and/or to administer group disability insurance plans for employees of Nortel, including Douglas.

8.    Douglas was at all material times employed by one or more of the Nortel companies as an engineering executive.

**Disability Claim**

9.    Douglas was, at all material times, insured under a group policy of insurance with Prudential, more particularly described as policy number BR: 39900/0B055 (the "Policy"). The Policy was, at all material times, offered by Nortel to its employees, providing, among others, long term disability benefits.

10.    Douglas pleads that the policy between Douglas and Prudential was, at all material times, and continues to be, in full force and effect.

11.    Douglas states that in or about Easter weekend, 2005, he developed symptoms of, and was diagnosed as suffering from Chronic Fatigue, sleep disorders, and other illnesses (generally, the "Condition"). Douglas states that the Condition was ultimately diagnosed in January, 2006.

12.    On or about April 2, 2005, Douglas became disabled from his employment and was unable to work. Shortly following the onset of disability, Douglas applied for short and long term disability benefits from the Defendants. Short term disability benefits and vacation entitlements were paid until September, 2005.

- 4 -

13.     Prudential administers the Policy, and participates with Nortel in deciding to pay or deny claims, and in administering the claims process.  Nortel administers its own appeals process.

14.     The Policy provides that an insured is entitled to long term disability benefits in the event the insured becomes totally disabled and meets the entitlement criteria.  At all material times, Douglas was and remains totally disabled.

15.     The Defendants have refused, and continue to refuse, to pay Douglas the long term disability benefits to which he is entitled.

16.     Douglas states that he has provided notice and proof of claim and otherwise complied with all requirements under the Policy.  In particular, but without limiting the generality of the foregoing, the Defendants have received on a timely basis full particulars of Douglas' symptoms, treatment, functional restrictions and long-term prognosis.  In the event that it is determined that Douglas has not complied with all requirements under the Policy, the Defendants have waived such requirements.

17.     The contract of insurance entered into between Douglas, Nortel and Prudential is one of utmost good faith and, as such, the Defendants have a duty to act in good faith by acting fairly and expeditiously in the assessment, evaluation and processing of Douglas' claim, and with a view to promoting the interests of Douglas, particularly where they have knowledge of Douglas' vulnerable position.

18.     The Defendants each serve as agent for the other in respect to the administration of the Policy and claims made thereunder.

19.     At all material times, the Defendants were fully aware of the Condition suffered by Douglas, and its disabling impact.  Douglas further states that the Defendants were

- 5 -

fully aware, or ought to have been aware, of Douglas' financial circumstances and the extent to which his Condition would be exacerbated by threats of denial and/or actual denial of benefits.

20.   The Defendants have been in a sufficiently proximate relationship with Douglas that injury to Douglas is a reasonably foreseeable result of negligent and unreasonable conduct in assessing and administering his claim for benefits.

21.   The contract for insurance was one to provide peace of mind to Douglas. Failure to pay the benefits as and when they came due, and requiring Douglas to undergo extensive testing, examination, applications and appeals, have all caused substantial financial and mental distress to Douglas.

22.   The Defendants owe to Douglas the duty to observe a reasonable standard of care and due diligence in fairly, impartially and expeditiously investigating, assessing, administering and paying Douglas' claim for benefits.

23.   The Defendants have acted in breach of their duty of care, in breach of the contract and in breach of their duty of utmost good faith to Douglas. The Defendants negotiated with him in bad faith and sought to avoid payment of the disability benefits when they knew, or ought to have known, that Douglas was totally disabled within the meaning of the Policy. Further, the Defendants behaved with arrogance and high-handedness and have shown a callous disregard for Douglas and his rights. Douglas pleads that he is therefore entitled to aggravated and punitive damages from the Defendants.

24.   By reason of the failure of the Defendants to pay disability benefits, Douglas will suffer a substantial reduction in the Nortel pension to which he would otherwise be qualified at the time of his retirement.

- 6 -

## 401K and Nortel Pension Plan

25.    Similar to a Registered Retirement Savings Plan ("RRSP") in Canada, US tax law permits tax deductions and tax-free growth in connection with certain investments made in anticipation of retirement. One of these programs is the 401K Plan. Nortel maintained a 401K for its US employees, and contributed sums matching the employee's contributions. Nortel further maintained a defined-benefits employee pension plan, to which both employer and employee contributed.

26.    Douglas participated in both the Nortel-sponsored 401K and its US pension plan while he was living and working at Nortel's facility in Richardson, near Dallas, Texas, from and after December 1994.

27.    Nortel then transferred Douglas to work at Nortel's facility in France in early August 1998. From there, Nortel transferred Douglas to work in Great Britain in May 2001. While in France, Nortel treated Douglas as if he were an ex-patriate Canadian resident, participating in a savings plan resembling a Canadian-style RRSP as well as the Canadian pension. While in Great Britain, however, Nortel treated Douglas as if he were an ex-patriate US resident, and Nortel and Douglas continued to contribute to the 401K and the US Pension that had commenced while Douglas worked near Dallas.

28.    Nortel next transferred Douglas to work at Nortel's Ottawa facility from and after July 2003. He was still treated as an ex-patriate US resident. In November 2004, more than a year after he returned to Ottawa, Nortel disclosed to Douglas that US tax law prohibited people with Douglas' status from participating in either a 401K or a US pension plan while posted to work and live outside the US.

29.    Effectively, Douglas has lost both his own contributions and Nortel's contributions to both the 401K and the Pension during the period of his employment in Great Britain and thereafter, in Canada. Nortel has failed and refused to account for the

- 7 -

impact of this loss. In the case of the Pension, the impact is greater than the nominal dollar value of contributions, as Douglas' pension benefits are directly related to the number of years worked while participating in the pension plan and the level of salary earned while so working.

30.    By reason of the failure of Nortel to correctly administer the Pension, Douglas will suffer a substantial reduction to which he would otherwise be qualified at the time of his retirement.

31.    Nortel owed to Douglas a duty of care to ensure that Douglas' participation in the 401K and Pension complied and continued to comply with applicable law and to fully advise Douglas of his rights and obligations in respect of the 401K and the Pension.  Where Douglas was ineligible, either in respect of the 401K or the Pension, Nortel owed Douglas the duty to warn him of this and to make available reasonable alternatives.  Throughout, Nortel owed to Douglas the duty to account for the use and operation of the 401K and the Pension.

**Wrongful Dismissal**

32.    Douglas has continuous service with Nortel and its affiliated companies from November 1976. He remained so employed continuously until Nortel terminated his salary in September, 2005.  Through promotions, Douglas became vice-president and general manager, MCS. His salary from employment was, as of summer 2005, $300,000 CDN per annum. In addition, Douglas was entitled to extensive collateral benefits, including bonuses that reached 40% of his salary. · Bonuses counted towards pension contributions and entitlements.

33.    Douglas is 51 years old, and planned to retire from Nortel when qualified to do so, likely at an age between 55 and 60.  By reason of the termination of his salary, and the failure of the Defendants to pay disability benefits, Douglas will suffer a substantial reduction in the pension to which he would otherwise be qualified.

- 8 -

34.   Nortel has abrogated the employment contract in that:

    a.    It has wrongfully refused disability benefits.

    b.    It has terminated his salary and benefits without cause.

    c.    It has failed to make appropriate accommodations to him for his disability, as required by the *Ontario Human Rights Code*.

35.   As a result of Nortel's termination of Douglas' employment, Douglas has lost and will continue to lose substantial pension and other collateral benefits, which loss will reduce his income and expose him and his family to substantial medical and other expenses.

36.   Douglas received short-term disability benefits at a rate less than his salary and other benefits. Douglas claims the shortfall as a component of his loss.

37.   Included in Douglas' benefits from employment was participation in an equity options program, by which Nortel granted to Douglas the option to purchase Nortel common shares at fixed prices, and which options lasted for 10 years. By reason of the termination of Douglas' salary and benefits, the value of such options as Douglas received has reduced to nil. The value of such options and the value of options Douglas would have received but for the termination, have yet to be determined.

38.   By reason of Douglas' position as an executive of Nortel, Nortel prohibited or restricted Douglas from selling his Nortel common shares or exercising the stock option. Such prohibition or restriction caused Douglas to hold shares he would have sold, notwithstanding that his actual position as an executive appears to have been terminated in 2005. Both the shares and options have declined in value since then.

39.   Douglas proposes that this action be tried at the City of Ottawa.

- 9 -

Date of Issue:    August    1st    2006

**Doucet McBride**
Lawyers / Avocat(e)s
100-85 Plymouth Street
Ottawa, Ontario
K1S 3E2

**John A. Hollander**
**LSUC#: 18185E**
(613) 233-4474
(613) 233-8868 (fax)

Solicitors for the Plaintiff

**DOUGLAS McGREGOR**          - and -          **NORTEL  NETWORKS  and THE PRUDENTIAL INSURANCE COMPANY OF AMERICA CANADA INC. et al.**

Court File No. 06-CV- 3*J* 486

**SUPERIOR COURT OF JUSTICE**

Proceedings commenced at Ottawa

**STATEMENT OF CLAIM**

**DOUCET McBRIDE LLP**
Lawyers / Avocat(e)s
100-85 Plymouth Street
Ottawa, Ontario K1S 3E2

**Laurie Tucker (LSUC #044845R)**
T: 613-233-4474
F: 613-233-8868

Solicitors for the Plaintiff

File No. 10126
Court House Box No. 106

**Exhibit 4**

Court File No. 06-CV-35486

**ONTARIO**

**SUPERIOR COURT OF JUSTICE**

Between:

**Douglas McGregor**

-and-

**Nortel Networks Inc. and the Prudential Insurance Company of America**

## SETTLEMENT AGREEMENT

1.  Nortel Networks Inc. shall pay the Plaintiff the all-inclusive amount of $950,000.00 USD, less any amounts required by law to be deducted from this sum. The $950,000.00 shall be allocated as follows:

    (a)  $100,000.00 (or such amount as may be advised by counsel for the Plaintiff represents the Plaintiff's actual legal fees, disbursements and GST) on account of the Plaintiff's costs;

    (b)  15% of the balance to past Long Term Disability ("LTD") payments in respect of which Nortel Networks shall issue a T4 or other appropriate taxation documentation and effect such withholdings as may be required by law;

    (c)  85% of the balance to future LTD payments, with respect to which Nortel Networks shall not issue any T4.

2.  Nortel Networks Inc. shall afford the Plaintiff continued coverage under its IHSP Plan until December 31,2007.  Nortel Networks Inc. shall afford the plaintiff coverage under its employee benefit plans (other than the Retirement Income Plan (RIP), the Long Term Incentive Plan (LTIP), and the Disability Plan) on the same basis as is afforded to other of its employees who are in receipt of LTD benefits from January 1,2008 to December 31, 2008. The Plaintiff shall be responsible for paying all applicable employee premiums for such coverage, which shall be deducted from the $950,000.00 settlement amount.

3.  Effective January 1, 2009, the Plaintiff shall retire from Nortel Networks Inc. and commence receipt of his pension under the Canadian Pension Plan, and at the same time may access the funds in the RIP in accordance with its terms.

4.  Effective January 1, 2009, the Plaintiff shall be entitled to participate in the Nortel Networks Ltd. retiree medical and life insurance benefits plan, in accordance with its terms. He will also be entitled to stock option treatment as a retiree in accordance with

the terms of the applicable Stock Option Plans, with respect to the options presently held by the Plaintiff.

5.  The full and final release the Plaintiff shall sign will not affect any claim the Plaintiff might have to seek reimbursement for taxes, penalties, interest, or other costs associated with defending any tax claims that may arise as a result of tax filings made by Nortel Networks Inc. or its agents on behalf of the Plaintiff. In accordance with its existing ex-pat practice, Nortel Networks Inc. shall cause the company that prepared the Plaintiff's tax returns for years prior to 2004 (or their successor) to respond to any inquiries made by tax authorities, without cost to the Plaintiff, *and to pay such amounts as it normally would pay under its policy.* 🖊 🖊

6.  At the Plaintiff's option, he may elect to have some or all of the 15% of the settlement monies allocated to past LTD benefits, paid to him in 2008.

7.  While it is the intention of the Parties that the present Settlement Agreement creates legally enforceable rights, the Parties shall sign Minutes of Settlement, in a form mutually acceptable to the reasonable satisfaction of counsel for the parties, incorporating the above terms as well as the following:

    (a)  a full and final release of all claims the Plaintiff might have against Nortel Networks Inc., any associated or related corporations and their agents, insurers, administrators (including Prudential), employees, assigns and all companies' pension plans, for all matters related to the Plaintiff's employment, cessation of employment, disability, or claimed in the action, with the exception of entitlements under the Minutes or accrued under the pension plans and the LTIP;

    (b)  a provision providing for the dismissal of the action without costs. (The Defendant shall take out the Order.);

    (c)  confidentiality provisions, barring the plaintiff and his immediate family from revealing the terms and fact of settlement to anyone other than the Plaintiff's legal or financial advisors, or as may be required by law; and

    (d)  a provision requiring the Plaintiff to return all Company property and documents within 30 days of the execution of the Minutes of Settlement.

8.  This settlement is conditional on the parties obtaining tax advice confirming that the Plaintiff will not ultimately pay tax on the 85% of the settlement monies allocated to future LTD benefits. Unless either party provides the other with the written opinion of a qualified Canadian tax lawyer by 5:00pm on October 15, 2007, negativing the foregoing anticipated tax treatment of these monies, this condition shall be deemed to have been waived.

Signed at the City of Ottawa this 3ʳᵈ day of October, 2007.

_____
Douglas McGregor

_____
Nortel Networks Inc., per Dick Petree

**Exhibit 5**

**URGENT**

# DOUCET McBRIDE LLP
## LAWYERS  AVOCAT(E)S

100-85 Plymouth Street
Ottawa, Ontario   K1S 3E2

Tel: (613) 233-4474                               Fax: (613) 233-8868

### FACSIMILE TRANSMISSION

TO:          Daphne Fedoruk

FAX NO:      613-230-5459

FILE NO:     10126

FROM:        Mary Neill, Law Clerk

SENT BY:     Mary

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET:        6

DATE:        October 31, 2007

MESSAGES:        Attached is a copy of the Minutes of Settlement that have been
signed by our client.

SHOULD YOU HAVE ANY PROBLEMS WITH THIS TRANSMISSION, PLEASE CONTACT THE SENDER AT
(613) 233-4474

NOTICE:        This communication is intended to be received only by the individual or entity to whom or to which
it is addressed and contains information that is privileged, confidential and subject to copyright. Any unauthorized
use, copy, review or disclosure is prohibited. Please notify the sender immediately if you have received this
communication in error (by calling collect if necessary) so that we can arrange for its return at our expense. Thank
you for your cooperation

Court File No. 06-CV-35486

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE

B E T W E E N :

#### DOUGLAS McGREGOR

Plaintiff

- and -

#### NORTEL NETWORKS and THE PRUDENTIAL
#### INSURANCE COMPANY OF AMERICA

Defendants

## MINUTES OF SETTLEMENT

WHEREAS the plaintiff, Douglas McGregor ("Mr. McGregor"), commenced a wrongful dismissal action in the Ontario Superior Court of Justice on August 1, 2006 (Court file No. 06-CV-35486) (the "Action") against "Nortel Networks" and the Prudential Insurance Company of America ("Prudential");

WHEREAS, Mr. McGregor and Nortel Networks Inc. wish to finally settle the Action as well as all matters relating to Mr. McGregor's employment with Nortel Networks Inc., Nortel Networks Limited, or any associated, related or predecessor companies, and the cessation of such employment;

NOW, THEREFORE, the parties agree as follows:

1.      Nortel Networks Limited, Nortel Networks Inc., their predecessor and associated or related companies are referred to in these Minutes as "Nortel";

2.      On or before November 4, 2007, Nortel shall pay Mr. McGregor the all-inclusive amount of $965,000.00 USD, less any amounts required by law to be deducted from this sum.

3.  The $965,000.00 USD shall be paid to Doucet McBride LLP in trust and shall be allocated as follows:

    (a)  $150,000.00, on account of Mr. McGregor's costs, disbursements and GST on such amounts, incurred in connection with advancing his claim for a retiring allowance;

    (b)  $122,250.00, on account of past Long Term Disability ("LTD") payments in respect of which Nortel shall issue a T-4 or other appropriate taxation documentation and effect such withholdings as may be required by law;

    (c)  the balance of $692,750.00, on account of future LTD payments, with respect to which Nortel shall not issue any T-4.

4.  Nortel shall afford Mr. McGregor continued coverage under the Nortel Networks Inc. IHSP Plan until December 31, 2007. Nortel shall afford Mr. McGregor coverage from January 1, 2008 to December 31, 2009 under the Nortel Networks Inc. employee benefit plans (other than the Retirement Income Plan (RIP), the Long Term Incentive Plan (LTIP), and the Disability Plan) on the same basis as is afforded to other of its employees who are in receipt of LTD benefits. Mr. McGregor shall be responsible for paying all applicable employee premiums for such coverage for 2008. Nortel shall bear the cost of premiums for such coverage for 2009 for the same benefits as Mr. McGregor elects in 2008. In the event Mr. McGregor elects to expand his coverage in 2009 beyond that elected in 2008, he shall bear the costs associated with the expansion.

5.  Effective January 1, 2010, Mr. McGregor shall retire from Nortel Networks Inc. and commence receipt of a pension under the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan, and at the same time may access the funds in the RIP in accordance with its terms.

6.  Effective January 1, 2010, Mr. McGregor shall be entitled to participate in the Nortel Networks Limited. retiree medical and retiree life insurance benefits plans, in accordance with the terms of the applicable plans. Effective January 1, 2010 Mr. McGregor shall be entitled to stock option treatment as a retiree in accordance with the terms of the applicable stock option plans, with respect to the stock options presently held by him.

- 3 -

7.    Mr. McGregor hereby consents to an order dismissing the Action without costs, and instructs his solicitors, Doucet McBride LLP, to execute a consent to dismissal and approve the order dismissing the action.   Nortel Networks hereby instructs counsel, Ogilvy Renault, LLP, to prepare and file the documentation required to effect the dismissal of the Action, without costs.

8.    Except as required by law, or as permitted in paragraph 10, below, Mr. McGregor shall keep confidential and not disclose to anyone, apart from his immediate family, counsel or his financial advisors, the nature, extent, content or details of the settlement between him and Nortel. Mr. McGregor acknowledges that if he breaches this confidentiality provision, he may be liable to Nortel for damages.

9.    Mr. McGregor shall ensure that his immediate family and financial advisors are told they must not reveal to anyone the nature, extent, content or details of the settlement between him and Nortel.

10.   Notwithstanding the foregoing, if questioned by anyone regarding the outcome of the Action, Mr. McGregor may state only that the proceeding was resolved to the satisfaction of all parties concerned.

11.   Mr. McGregor acknowledges and agrees that he continues to be bound by the terms of the Employment Agreement and Acknowledgement of Notification Regarding Limits on Assignment of Inventions, dated June 3, 2003, and any related agreements he executed in the course of his hiring or employment with Nortel.   Mr. McGregor confirms that his entire right, title and interest to all intellectual property as generally described in such agreements with Nortel are assigned to Nortel regardless of the exact terms in, or the existence of, such an agreement between him and Nortel.   Mr. McGregor shall continue to treat in a confidential manner any proprietary information or trade secrets acquired by him in respect of any business of Nortel or relating to any other dealings, transactions or affairs which may have come to his knowledge in any manner during his employment with Nortel.

- 4 -

12.    Mr. McGregor will not speak of Nortel or any of its employees, officers or representatives in disparaging terms nor in any other negative way communicate about his employment with Nortel.

13.    Mr. McGregor, on his own behalf and on behalf of his heirs, executors, administrators and assigns, hereby releases and forever discharges Nortel, its directors, officers, employees, agents, including Prudential, successors and assigns of and from all manner of actions, causes of actions, debts, accounts, covenants, contracts, claims, complaints or demands including, without limitation, claims under the *Employment Standards Act* and the *Human Rights Code*, in any way related to or arising from Mr. McGregor's employment with Nortel and the cessation of such employment, save and except for entitlements under these Minutes or accrued under pension plans applicable to Mr. McGregor. Without restricting the generality of the foregoing, Mr. McGregor specifically releases Nortel from all claims made in the Action.

14.    The above full and final release shall not affect any claim Mr. McGregor might have to seek reimbursement for taxes, penalties, interest, or other costs associated with defending any tax claims that may arise as a result of tax filings made by Nortel or its agents on behalf of Mr. McGregor for years prior to 2004. In accordance with its existing ex-pat practice, Nortel shall cause the company that prepared the Plaintiff's tax returns for years prior to 2004 (or their successors) to respond to any inquiries made by tax authorities, without cost to Mr. McGregor.

15.    Mr. McGregor shall return to Nortel all company property and documents within 30 days of the execution of the Minutes of Settlement.

16.    Mr. McGregor confirms that he has not received any benefits under the *Employment Insurance Act* and confirms he will not make any application to receive such benefits prior to November 4, 2007.

17.    Mr. McGregor confirms he has received independent legal advice prior to signing these Minutes.

- 5 -

18.    This Agreement may be executed in counterparts and each counterpart when executed shall have the effect of a signed original. Copies of any such signed counterparts may be used in lieu of the original for any purpose.

Signed at the City of _____Ottawa_____ this _31_ day of _October_, 2007.

_____            _____
Douglas McGregor                                              Nortel Networks Inc., per Dick Petree

**Exhibit 6**

**Mary Cilia**

| | |
|---|---|
| **From:** | Williamson, Pamela (NASHF:8414) |
| **Sent:** | Friday, April 18, 2008 12:24 PM |
| **To:** | Puch, Denine (NASHF:9791) |
| **Subject:** | FW: McGregor Settlement Wire Transfer |

Thanks,
Pamela Williamson
Accounting Specialist
Nortel Networks
615-432-4748 (ESN) 222
615-432-4948 (ESN) 222
Customer Service Line 1-800-684-2228 (ESN 222-4729)
pamjw@nortel.com
view invoice status anytime at www.nortel.com/apinquiry

---

**From:** Schofield, Bonnie (NASHF:8414)
**Sent:** Thursday, November 01, 2007 3:11 PM
**To:** Williamson, Pamela (NASHF:8414)
**Cc:** Puch, Denine (NASHF:9791)
**Subject:** RE: McGregor Settlement Wire Transfer



https://us.citidirect.citicorp.com - CitiDirect - Online Banking - Microsoft Internet Explorer

**citi**

CitiDirect® Online Banking

**Account Statement Inquiry**

| Criteria | Summary | Details |

Inbox

- Payments
- Payments Services
- Export Data
- Match Pay
- US Disbursements Se...
- Image - Delaware and ...
- Same Day Reconcilem...
- Favorite Reports
- All Reports
- Inquiries
  - Cash Statement Inquiries
    - Balance Summary Inqu...
    - Account Statement Inq...
    - Transaction Summary I...
    - Transaction Detail Adv...
    - Incremental Account S...
  - US Disbursement Inquiries
  - SDR Inquiries
  - Access Management Inq...
- Investigations
- Event Notification
- Maintenance
- Access Management

**Legal Text**

We have Debited your Account.

| Account Number | Account Name | Amount |
|---|---|---|
| | 2001- 501-NNI US (CITI) AP | 965,000.00 |

**IBAN Number**

| Branch Number | Customer Number | Value Date | Currency |
|---|---|---|---|
| 930 | 2833111 | 11/01/2007 | USD |

| Branch Name | Customer Name | Statement Date | Entry Date |
|---|---|---|---|
| NEW YORK CITIBANK - CORPORATE | NORTEL NETWORKS LTD. | 11/01/2007 | 11/01/2007 |

| Bank Name | Customer Reference | Bank Reference | Branch Tax Id Number |
|---|---|---|---|
| CITIBANK | D30570790606 | LCT73050935100 | |

**Transaction Details**

| (1) Field Name | Value |
|---|---|
| Product Type | Funds Transfer |
| Payment Details | MCGREGOR SETTLEMENT |
| Ordering Party Account/ID | |
| Ordering Party Name/Address | NNI AP EFT |
| Ordering Party Name/Address | 4001 E.CHAPEL HILL_NELSON HWY |
| Ordering Party Name/Address | P.O.BOX 13010M MAILSTOP 570_02_2P2 |
| Beneficiary Account/ID | |
| Beneficiary Name/Address | DOUCET MCBRIDE LLP |
| Beneficiary Bank Account/ID | |
| Beneficiary Bank Name/Address | TORONTO DOMINION BANK |
| Beneficiary Bank Name/Address | 55 KING STREET WEST AND BAY STREET |

**From:** Williamson, Pamela (NASHF:8414)
**Sent:** Wednesday, October 31, 2007 1:38 PM
**To:** Schofield, Bonnie (NASHF:8414)
**Cc:** Puch, Denine (NASHF:9791)
**Subject:** FW: McGregor Settlement Wire Transfer

Bonnie,

Once this wire payment for Doucet McBride has been sent could you please if anyway possible email Denine with a conformation number I will be out of the office the rest of the week and will not be back into the office until Wednesday.


Thanks,

Pamela Williamson

Accounting Specialist
Nortel Networks
615-432-4748 (ESN) 222
615-432-4948 (ESN) 222 Fax
Customer Service Line 1-800-684-2228 (ESN 222-4729)
pamjw@nortel.com
view invoice status anytime at www.nortel.com/naapinquiry


**From:** Puch, Denine (NASHF:9791)
**Sent:** Wednesday, October 31, 2007 1:31 PM
**To:** Williamson, Pamela (NASHF:8414)
**Subject:** McGregor Settlement Wire Transfer

Pam, one more thing, not sure if it is standard practice for you to provide confirmation of the wire, but can you please have Judy or someone send that to me when it is completed tomorrow.  Thanks!

**REGARDS,**

*Denine Puch, Legal Assistant*
NORTEL Law Dept.
U.S. Corporate Secretarial / U.S. Labor and Employment
Email Address:  deninep@nortel.com
**Telephone**: (615) 432 4787 / ESN 222 4787

**Facsimile**: (615) 432-4067 / ESN 222 4067



**Confidentiality Notice:** This message and any attachments may contain information that is privileged and confidential. If you have reason to believe that you are not the intended recipient or a person responsible for delivering this message to an intended recipient, you are hereby notified that any review, dissemination, distribution, or copying of this message is strictly prohibited. Please contact the sender immediately by reply email and destroy all copies of the original message.

**Exhibit 7**



**OGILVY
RENAULT**

LLP / S.E.N.C.R.L., s.r.l.

Telephone: (613) 780-8635
Fax: (613) 230-5459
mgleason@ogilvyrenault.com

**RECEIVED**

**DEC 1 1 2007**

BY COURIER

Ottawa, December 7, 2007

Mr. William H. Knapp
Senior Counsel Labor & Employment
Nortel Networks Inc.
220 Athens Way
Nashville, TH    37228
U.S.A.

Dear Mr. Knapp:

RE:     **Douglas McGregor v. Nortel Networks and the Prudential Insurance
            Company of America**

Please find attached a copy of the Order as issued and entered, dismissing the above action
without costs.  You will also find enclosed, for your file, the Minutes of Settlement signed by
Mr. McGregor.

As this matter is now finished, we will proceed to close our file.  Trusting everything to be
satisfactory, I remain.

Yours very truly,

Mary J. Gleason
MJG/dp

Enclosures:  (2)

Barristers & Solicitors,
Patent Agents & Trade-mark Agents

Suite 1500
45 O'Connor Street
Ottawa, Ontario  K1P 1A4
Canada

Telephone (613) 780-8661
Fax (613) 230-5459

ogilvyrenault.com

DOCSOTT: 611899\1

Ottawa    ·    Montréal    ·    Québec    ·    Toronto    ·    London

RECEIVED

DEC 1 1 2007

Court File No.  06-CV-35486

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

BEFORE *Registrar*

) Wednes, THE 28th
)
) DAY OF November, 2007

B E T W E E N:

DOUGLAS McGREGOR

Plaintiff

- and -

NORTEL NETWORKS and
THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Defendants

**ORDER**

**THIS MOTION** made by the Defendant Nortel Networks for an Order dismissing the within claim without costs was read this day at the City of Ottawa.

**ON READING** the consent, filed:

1.    **THIS COURT ORDERS** that the within claim be and the same is hereby dismissed without costs.

ENTERED AT OTTAWA
INSCRIT A OTTAWA

ON/LE  NOV  2 8 2007
DOCUMENT # 3489
IN BOOK NO. 73-13
AU REGISTRE NO. 73-13

| DOUGLAS McGREGOR | | NORTEL NETWORKS and THE PRUDENTIAL | Court File No: 06-CV-35486 |
| Plaintiff | and | INSURANCE COMPANY OF AMERICA | |
| | | Defendants | |

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Ottawa

**ORDER**

Ogilvy Renault LLP
Suite 1500
45 O'Connor Street
Ottawa, Ontario  K1P 1A4
Canada

Mary Gleason  LSUC#: 26494Q
Tel: (613) 780-8635
Fax: (613) 230-5459

Solicitors for the Defendant
Nortel Networks

DOCSOTT: 604691\1