## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

|  |  |  |
|---|---|---|
| *In re* | : | Chapter 11 |
|  | : |  |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |
|  | : | **Hearing date: October 27, 2016  10:00 AM (EST)** |
|  | : | **Objections due: October 20, 2016 4:00 PM (EST)** |

-------------------------------------------------------X

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER (I) APPROVING THE SETTLEMENT OF PROOF OF CLAIM NO. 3911 FILED BY WANLAND & ASSOCIATES INC. AND (II) MODIFYING THE AUTOMATIC STAY AS NECESSARY IN CONNECTION WITH SUCH SETTLEMENT

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 362 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving the stipulation of settlement  (the "Stipulation of Settlement"), attached hereto as **Exhibit B**, between NNI, Nortel Networks Limited ("NNL" and together with NNI, "Nortel") and plaintiffs in the case Wanland & Associates Inc. v. Nortel Networks Limited et al., [No. 3:05-cv-01191 (D.N.J.)] ("Plaintiffs");

(ii) modifying the automatic stay as necessary to allow the United States Bankruptcy Court for

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International Inc. (8667).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

the District of New Jersey (the "New Jersey Court") to approve the Stipulation of Settlement and to conduct such other proceedings and issue such orders as may be necessary to approve the Stipulation of Settlement; and (iii) granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rule 9019.

### Background

1.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. and Nortel Networks India International Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group"). A consortium of creditors holding trade claims (the "Trade Claims Consortium") has also been organized.

---

[2]    Nortel Networks (CALA) Inc. and Nortel Networks India International Inc. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on July 14, 2009 and July 26, 2016, respectively, each of which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098; D.I. 17090].

3.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, the "Nortel Group"), and certain of

their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with

the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by

the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

nineteen of the Nortel Group's European affiliates (collectively, the "EMEA Debtors")[4] into

administration (the "English Proceedings") under the control of individuals from Ernst & Young

LLP (collectively, the "Joint Administrators").  Other Nortel Group affiliates have commenced

and in the future may commence additional creditor protection, insolvency and dissolution

proceedings around the world.

3.      Since the Petition Date, the Nortel Group has sold its business units and other

assets to various purchasers.  For further information regarding these chapter 11 cases, reference

may be made to the Monthly Operating Reports filed by the Debtors and

http://dm.epiq11.com/nortel.

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

## Relief Requested

4.      By this Motion, the Debtors seek the entry of an order, pursuant to sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the proposed Stipulation of Settlement between Nortel and Plaintiffs in the case Wanland & Associates Inc. v. Nortel Networks Limited et al., [No. 3:05-cv-01191 (D.N.J.)] (the "Wanland Litigation"), which is currently pending in the New Jersey Court; (ii)  modifying the automatic stay as necessary to allow the New Jersey Court to approve the Stipulation of Settlement and to conduct such other proceedings and issue such orders as may be necessary to approve the Stipulation of Settlement; and (iii) granting them such other and further relief as the Court deems just and proper.   The Debtors further request that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.

## Facts Relevant to this Motion

### A.      Background of Current Dispute Between the Parties

5.      On September 27, 2004, Plaintiffs commenced the Wanland Litigation as a purported class action against NNC et al. in the Superior Court of the State of New Jersey for the County of Ocean. NNC timely removed the action to the United States District Court for the District of New Jersey ("New Jersey District Court") on February 8, 2005. Soon after, Plaintiffs filed an amended complaint substituting NNL and NNI as defendants in place of NNC and added additional defendants.

6.      On June 20, 2005, the New Jersey District Court entered an order determining the Wanland Litigation related to the Chapter 7 bankruptcy case In re NORVERGENCE, Inc., Case No. 04-32079 (the "Norvergence Bankruptcy Case") pending in the United States Bankruptcy Court for the District of New Jersey (the "New Jersey Court") and referred the action to the New Jersey Court as Adversary Proceeding Case No. 05-02439-RG. The Debtors' voluntary filing of

petitions for relief under chapter 11 of the Bankruptcy Code on January 14, 2009, resulted in an automatic stay of the Wanland Litigation with respect to NNI and NNL.

7.      On or about September 28, 2009, Plaintiffs filed a proof of claim against NNI, which is listed on the Debtors' claim register as Claim No. 3911 (the "Wanland Proof of Claim"). The Wanland Proof of Claim is based on the Wanland Litigation and seeks the same relief sought in the Wanland Litigation.

8.      Plaintiffs and Debtors have engaged in extensive negotiations and have reached a Class Settlement Agreement to resolve the Wanland Litigation. Accordingly, Plaintiffs served a subpoena on the Chapter 7 Trustee in the NorVergence Bankruptcy Case on June 24, 2016, requesting that the Chapter 7 Trustee produce a customer list that would assist the Debtors and Plaintiffs in identifying the putative class members necessary for the notice and administration of the Class Settlement Agreement. The Trustee provided the customer list on August 24, 2016.

**B.      The Proposed Settlement**

9.      As a result of extensive negotiations, the Debtors have determined that it is in their best interest to settle the Wanland Litigation for $400,000, with an agreement not to oppose an attorney's fees award of up to $100,000. The Plaintiffs and Nortel propose to settle all claims and counterclaims that are or could be asserted in the Wanland Litigation pursuant to the Stipulation of Settlement, which includes the following substantive components:[5]

- Settlement Consideration. Subject to this Court's approval, the Wanland Proof of Claim shall be reduced and allowed as a non-priority general unsecured claim in the amount of $400,000 plus the amount of the Class counsel Fees and Costs Claim.

---

[5]      This overview is intended to provide a general summary of the Stipulation of Settlement. To the extent that it conflicts with the Stipulation of Settlement, the Stipulation of Settlement shall control. Defined terms not otherwise defined herein shall have the meaning ascribed to them in the Stipulation of Settlement.

- <u>Attorney's Fees</u>.  Nortel shall not oppose Plaintiffs' motion for attorney's fees of up to $100,000, which amount, if awarded, shall be paid from amounts distributed on the U.S. Wanland Proof of Claim.

- <u>New Jersey Court Approval</u>.  After this Court's Order approving the Stipulation of Settlement has been entered, Nortel and Plaintiff shall file a joint motion before the New Jersey Court for preliminary approval of the Stipulation of Settlement and for an order establishing class notice procedures and a date for a hearing for final approval of the Stipulation of Settlement.

- <u>Releases</u>. Plaintiff and all members of the Settlement Class, including their predecessors, heirs, executors, administrators, legal representatives (not including Class Counsel), successors and assigns shall forever release and discharge NNI and NNL and each of their present and former parents, subsidiaries, division subsidiaries, divisions and affiliates, and each of their respective current and former officers, directors, employees, agents, insurers, and attorneys  from all causes of action, claims, judgments, liens, indebtedness, costs, damages, obligations, attorney's fees, losses, liabilities, and demands including but not limited to the Plaintiff's claims under the New Jersey Consumer Protection Act, any other state consumer protection statutes, claims for restitution, disgorgement and unjust enrichment, and claims for negligent misrepresentation, all of which are, were, or could have been asserted against NNI or NNL by reason of, or arising out of, or otherwise related or connected to the alleged written lease agreements entered into by the Settlement Class Members with NorVergence, Inc. for the lease of one or more Matrix boxes, Matrix SoHo boxes, or other network equipment provided by NorVergence, Inc. between January 1, 2001 and June 30, 2004, whether or not any such claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other persons or entities in the New Jersey Federal Action, the New Jersey State Action, the Adversary Proceeding or any other proceeding.

## Basis for Relief

**A.    Approval of the Stipulation of Settlement**

10.    The Debtors seek an order pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 approving the Stipulation of Settlement.

**(i)    Standards for Approval**

11.    Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).  This is consistent with the broad equitable authority of the bankruptcy courts.  <u>See, e.g.</u>, <u>United States v. Energy Res. Co.</u>, 495 U.S. 545, 549 (1990); <u>In re Kaiser</u>

Aluminum Corp., 456 F.3d 328, 340 (3d Cir. 2006) ("[B[ankruptcy courts have broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates.").

12.     Bankruptcy Rule 9019 provides, in pertinent part, that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  Citing this authority, the Third Circuit has emphasized that "'[c]ompromises are favored in bankruptcy.'"  Martin v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re W.R. Grace & Co., 475 B.R. 34, 77 (D. Del. 2012) (noting that "[c]ompromises are favored in bankruptcy proceedings because they minimize litigation and expedite the administration of the bankruptcy estate."); In re World Health Alts., Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'"  In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  See In re Washington Mut., Inc., 442 B.R. 314, 327 (Bankr. D. Del. 2011); In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

13.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re Marvel Entm't Grp., Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211

B.R. 798, 801 (D. Del. 1997)); In re Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. Coram Healthcare Corp., 315 B.R. at 330; see also Washington Mut., Inc., 442 B.R. at 328. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785 (FLW), 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing In re Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also Coram Healthcare Corp., 315 B.R. at 330.

14.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"):   "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re W.R. Grace & Co., 475 B.R. at 77; In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

**(ii)     Approval of the Stipulation of Settlement**

15.     Applying the standards set forth above, including the Martin Factors, to the instant matter, the Debtors submit that approval of the Stipulation of Settlement is in the best interest of the Debtors' estates and their creditors. The Stipulation of Settlement was reached after thorough analysis of the legal issues by the Debtors' bankruptcy and litigation counsel and

extensive negotiations between all parties concerned, and it falls well within the range of reasonableness.

16.     While the Debtors believe that they have strong defenses to the Plaintiffs' claims in the Wanland Litigation, the issues are complex and would likely be the subject of costly and protracted further litigation.  The Debtors have determined that settlement of the Wanland Litigation on the terms set forth in the Stipulation of Settlement spares the Debtors' estates considerable defense and potentially crippling liability costs, as pursuant to the Stipulation's terms, the District Court's final order of approval shall provide for the dismissal with prejudice of all claims and counterclaims asserted in the Wanland Litigation.

17.     In the event the Stipulation of Settlement is not approved, the Parties will continue to pursue the Wanland Litigation with no assurance as to how the courts will ultimately rule on the various litigation issues at stake or the ultimate length of time of such proceedings. Settlement of the Wanland Litigation provides the Debtors with necessary certainty and would allow the Debtors to allocate their resources efficiently towards other matters relating to their Chapter 11 estates.

18.     Finally, the interests of the Debtors' creditors strongly militate in favor of approval of the Stipulation of Settlement.  The Debtors believe that their creditors would be benefited by the efficient and economical resolution of the Wanland Litigation, as the proposed settlement will considerably reduce the pool of unsecured claims against the Debtors' estates. [The Debtors consulted the Creditors' Committee with regard to the Stipulation of Settlement prior to its execution, and the Creditors' Committee supports the proposed settlement.]

19.     In light of the foregoing, the Debtors believe that the settlement set forth in the Stipulation of Settlement falls comfortably within the range of reasonableness and is in the best interests of the Debtors' estates and their creditors.  Accordingly, it should be approved.

**B.      Modifying the Automatic Stay**

20.     The automatic stay provision of section 362(a) of the Bankruptcy Code constitutes a fundamental debtor protection designed to allow debtors to make a smooth and orderly transition into bankruptcy.   See, e.g., Mar. Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991) ("The automatic stay . . . gives a bankrupt a breathing spell from creditors by stopping all collection efforts, all harassment, and all foreclosure actions.  The stay permits a bankrupt to attempt a repayment or reorganization plan") (citation omitted).  The scope of the automatic stay is broad, encompassing and temporarily enjoining, among other things, attempts to obtain property of the debtor's bankruptcy estate and prepetition judicial proceedings against the debtor.  See 11 U.S.C. § 362(a)(1), (3).

21.     Section 362(d)(1) of the Bankruptcy Code provides that after notice and a hearing, the court shall grant relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1). The Bankruptcy Code "does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case."  Wilson v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997) (citation omitted).  Where sufficient cause is found, the court grants relief from the automatic stay "by terminating, annulling, modifying or conditioning the stay."  11 U.S.C. § 362(d).

22.     It is well established that the automatic stay suspends any court's authority to continue judicial proceedings pending against a debtor at the time the debtor files a bankruptcy petition, other than the court in which the debtor's bankruptcy proceedings are pending.  See, e.g., Mar. Elec., 959 F.2d at 1206.  Therefore, the debtors seek an order modifying the automatic

10

stay to permit the New Jersey Court to oversee the approval process of the Stipulation of

Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23(e)"),

including proceedings to determine whether preliminary and/or final approval of the Stipulation

of Settlement should be granted, supervision of class notice procedures, and other related

proceedings.

23.    In the context of a request for relief from the automatic stay to continue

proceedings elsewhere, courts in this District generally consider three factors to determine

whether "cause" to modify the stay exists:  "(1) whether any great prejudice to either the

bankrupt estate or the debtor will result from continuation of the civil suit; (2) whether the

hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the

hardship to the debtor, and (3) whether the creditor has a probability of prevailing on the merits."

Tribune Media Servs., Inc. v. Warren Beatty (In re Tribune Co.), 418 B.R. 116, 126 (Bankr. D.

Del. 2009) (citing Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 576

(Bankr. D. Del. 1992).  In addition, courts have identified a variety of other factors relevant to

the analysis, including:  "(a) whether relief would result in a partial or complete resolution of the

issues; (b) lack of any connection or interference with the bankruptcy case; (c) whether the other

proceeding involves the debtor as a fiduciary; (d) whether a specialized tribunal with the

necessary expertise has been established to hear the cause of action; (e) whether the action

primarily involves third parties; and (f) the interest in judicial economy and the expeditious and

economic resolution of litigation."  In re Cooke, No. 07-10192(BLS), 2007 WL 2102687, at *1

(Bankr. D. Del. July 13, 2007).

24.    Further, the legislative history of section 362(d) discusses circumstances under

which the automatic stay may be lifted to permit proceedings in another tribunal.  "It will often

be more appropriate to permit proceedings to continue in their place of origin, when no great

prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum

and to relieve the bankruptcy court from any duties that may be handled elsewhere." H. R. Rep.

No. 595, 95th Cong., 1st Sess., 341 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787,

6297, cited in In re The SCO Group, Inc., 395 B.R. 852, 856 (Bankr. D. Del. 2007).

25.    Application of the standards cited above to the circumstances present here

warrants a finding that sufficient cause exists to modify the automatic stay. Under the first prong

of this District's three-factor test, no prejudice will result to the Debtors or their estates from

permitting the New Jersey Court to oversee the Rule 23(e) class settlement procedures relating to

the Stipulation of Settlement. Second, the hardship to both the Debtors and the Plaintiffs in the

Wanland Litigation should this Court retain jurisdiction over the Rule 23(e) procedures is greater

than if the New Jersey Court is permitted to oversee such procedures. Both the Debtors and the

Plaintiffs are represented by local counsel before the New Jersey Court, and both local counsel

and the New Jersey Court are more familiar with the issues at stake in the Wanland Litigation

than are the Debtors' bankruptcy counsel and this Court. Therefore, requiring the Rule 23(e)

settlement approval process to take place in this Court would burden the Plaintiffs, the Debtors,

and this Court alike. Finally, because, in this case, the Debtors seek an order modifying the

automatic stay to permit the New Jersey Court to oversee approval of a settlement, whether

Plaintiffs have a probability of prevailing on the merits of the Wanland Litigation is irrelevant to

the cause analysis.

26.    Other relevant factors similarly militate in favor of modifying the automatic stay.

The New Jersey Court's final approval of the Stipulation of Settlement would result in complete

resolution of the issues involved in the Wanland Litigation, as the action itself would be

dismissed.  Further, NNI is the only Debtor party to the Wanland Litigation, which also involves

non-Debtor parties such as Plaintiffs and NNL, a Canadian Debtor.  Permitting Rule 23(e)

settlement approval to proceed in the New Jersey Court would not interfere with these cases, and

in fact would preserve judicial economy and encourage expeditious resolution of the Wanland

Litigation.

27.     In light of the foregoing, and because no prejudice to the Debtors' estates would

result, the Debtors request an Order authorizing the New Jersey Court to oversee the Rule 23(e)

approval process with regard to the Stipulation of Settlement.

### Notice

28.     Notice of the Motion has been given via first class mail, facsimile, electronic

transmission, hand delivery or overnight mail to the (i) U.S. Trustee; (ii) counsel to the

Committee; (iii) counsel to the Bondholder Group; (iv) Lead Counsel to Plaintiffs; and (v) the

general service list established in these chapter 11 cases.  The Debtors submit that under the

circumstances no other or further notice is necessary.

### No Prior Request

29.     No prior request for the relief sought herein has been made to this or any other

court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto as **Exhibit A**; and (iii) grant such other and further relief as it deems just and proper.

Dated:  October 6, 2016
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS NICHOLS, ARSHT & TUNNELL LLP

   */s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

14