Douglas E. Spelfogel
Richard J. Bernard
Derek L. Wright
**FOLEY & LARDNER LLP**
90 Park Avenue
New York, NY 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-2329
Email: dspelfogel@foley.com
      rbernard@foley.com
      dlwright@foley.com

*Counsel to Coface North America Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Nortel Networks Inc., *et al.,*[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |

**RESPONSE TO DEBTORS' TWENTY-SECOND OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR. P. 3007 AND DEL. L.R. 3007-1 (NO LIABILITY CLAIMS, REDUCE AND ALLOW CLAIMS, REDUNDANT CLAIMS, WRONG DEBTOR CLAIMS AND NO-BASIS 503(b)(9) CLAIMS)**

Coface North America Insurance Company (the "Claimant"), as assignee of creditor Jaco Electronics, Inc. ("Jaco"), by and through undersigned counsel, hereby responds to the *Debtors' Twenty-Second Omnibus Objection (Substantive) to Certain Claims Pursuant to 11*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226) (collectively, the "Debtors").

*U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No Liability Claims, Reduce and*

*Allow Claims, Redundant Claims, Wrong Debtor Claims and No-Basis 503(b)(9) Claims)* [Dkt.

No. 7183] (the "Claim Objection"), objecting to proofs of claim filed by Jaco and assigned to the

Claimant, and, in support hereof, Claimant alleges as follows:

### PRELIMINARY STATEMENT

1.      Jaco is a distributor of electronic components for commercial use.  Prior to the

Debtors' Chapter filings on January 14, 2009 (the "Petition Date"), Jaco supplied various

components to the Debtors, all of which were invoiced in the normal course, but certain invoices

went unpaid.  Subsequent to the Petition Date, the Debtors notified Jaco of the instant filings,

and directed that Jaco file a proof of claim in the Debtors' bankruptcy in order to receive

payment.

2.      Thereafter, on February 13, 2009, Jaco timely filed proof of claim number 392

("Claim No. 392") as a general unsecured claim in the amount of $479,290.00 representing

amounts due for certain electronic components (the "Goods") sold to the Debtor, Nortel

Networks Inc. ("Nortel" or the "U.S. Debtor").  Subsequently, on January 21, 2010, Jaco filed

proof of claim number 6820 ("Claim No. 6820") asserting the same underlying claim for the

Goods sold but also asserting administrative priority under § 503(b)(9) of the Bankruptcy Code

(after determining that Claim No. 6820 was inadvertently filed against the incorrect Debtor, on

February 5, 2010, Jaco filed proof of claim number 7076 asserting an identical claim against

Nortel ("Claim No. 7076" and together with Claim No. 392 and Claim No. 6820, the "Claims")).

The Claims each assert the same underlying liability for the Goods sold and Claim No. 7076

clearly indicates that it amended Claim No. 392 (by asserting administrative priority) and

replaced Claim No. 6820 (against the proper Debtor, Nortel).  Accordingly, Claim No. 7076 is

the operative claim asserted against Nortel and assigned to the Claimant by Jaco.

3.        Claim No. 7076 asserts an administrative priority claim under Bankruptcy Code § 503(b)(9) in the amount of $479,290.00 for the Goods sold to Nortel.  Attached to Claim No. 7076 are invoice numbers 2027466 and 2027465 (the "Invoices") evidencing, among other things, the total amount due for the Goods sold and identifying Nortel as the "Bill To" entity in Nashville, Tennessee liable for payment.  In addition to the Invoices, Claim No. 7076 includes certain correspondence from Nortel dated February 25, 2010 establishing that the Goods were delivered on January 6, 2009, which was within 20 days of the Petition Date.  Also attached to Claim No. 7076 is correspondence between Jaco and Nortel dated February 4, 2009 through which Nortel advised Jaco, among other things, that it had filed for Chapter 11 bankruptcy protection and in order for the Invoices to be paid, Jaco would have to follow certain procedures in Nortel's bankruptcy case.

4.        Through the Claim Objection, the Debtors fail to address, *let alone rebut*, the *prima facie* evidence put forth in the Claims.  As described below, the Debtors have the burden to produce sufficient evidence to negate one or more facts in the filed Claims.  Here, however, the Debtors raise three general objections that do not address or refute any of the evidence submitted by Jaco in support of the Claims.  Specifically, the Debtors assert that (i) they have no liability for Claim No. 6820; (ii) Claim Nos. 392 and 7076 are redundant of Claim No. 6820; and (iii) the requirements of Bankruptcy Code § 503(b)(9) have not been met.  Claim Objection ¶¶ 18, 31 and 38.  Without more, standing alone, such objections *cannot* rebut the *prima facie* validity of the Claims and the Debtors fail to meet their burden of proof and the Claim Objection should be dismissed with prejudice.

5.        Further, even assuming, *arguendo*, that the Claim Objection goes forward as to Claimant notwithstanding such failure (which it should not), there is no basis to disallow the Claims as asserted.  Without coming forward with any specific evidence to refute the Claims as

3

filed, the Debtors assert that the subject liabilities appear to relate to a transaction with a non-debtor entity.  As established through the Claims, however, and described further below, Nortel is the party liable for payment of the Invoices as evidenced by the Invoices and related correspondence attached to the Claims (which includes a direction that Jaco file its claim(s) in the within case in the first instance), as well as pursuant to the economic realities and totality of the circumstances surrounding the subject transactions, as detailed below.  The Debtors do not (*and cannot*) argue otherwise and the Claim Objection should be dismissed with prejudice for this additional reason.

## RESPONSE

I.      **The Claim Objection Does Not Sufficiently Rebut the *Prima Facie* Evidence of the Validity and Amount of  the Claims**

6.      A timely-filed proof of claim "shall constitute prima facie evidence of the validity and amount of the claim."  Fed. R. Bankr. P. 3001(f); *see also In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("A proof of claim is prima facie evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion").  To prevail on an objection to a proof of claim, any party objecting to the claim "must produce evidence equal in force to the *prima facie* case…which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."  *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173-174 (3d Cir. 1992); *see also, In re St. Johnsbury Trucking Co., Inc.*, 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997) (to prevail on an objection to a proof of claim, any party objecting to the claim "has the burden of putting forth evidence sufficient to negate the *prima facie* validity of the claim by refuting one or more of the facts in the filed claim").

7.      Here, the Claims are based on the Goods sold to Nortel, delivered within twenty days of the Petition Date and duly invoiced, but which remain unpaid and constitute *prima facie*

4

evidence of the validity and amount of the Claims.   Specifically, attached to the Claims are, among other things, the Invoices billed to Nortel in Nashville, Tennessee.   Attached to Claim No. 7076 is proof of delivery of the goods on January 6, 2009, which was within 20 days of the Petition Date.   Further, attached to Claim No. 7076 is correspondence from the Debtor to Jaco on February 4, 2009 stating that payment of the Invoices cannot be processed or expedited due to the Debtors' Chapter 11 bankruptcy filing and informing Jaco that it "must now follow the steps and procedures outlined at [the Debtors' restructuring website] in regard to receiving payment for any and all invoices that were (1) billed/dated before the [Petition Date]…"

8.      Rather than address such *prima facie* evidence, through the Claim Objection, the Debtors make only general, blanket objections that do not address, *let alone rebut*, the specific evidence presented through the Claims.

A.      **The Debtor Nortel is Liable for Payment of the Invoices**

9.      The Debtors first object to Claim No. 6820 by stating that it does not represent a liability of the Debtor identified in the corresponding proof of claim or any of the affiliate Debtors.   Claim Objection ¶ 19.   Claim No. 6820 was filed as a § 503(b)(9) claim based on the Goods delivered within 20 days of the Petition Date.   As noted above, Claim No. 6820 was inadvertently filed against the wrong debtor entity, Nortel Networks (CALA) Inc., and was subsequently replaced by Claim No. 7076 against Nortel.

10.      Notwithstanding, the Debtors do not address the documentation supporting Claim No. 6820 or its replacement, Claim No. 7076.   Specifically, the Claim Objection completely ignores the attached Invoices for the subject Goods that were duly billed to the U.S. Debtor, Nortel, in Nashville, Tennessee.   Nor do the Debtors address the correspondence from the Debtors confirming receipt of the Goods on January 6, 2009 and instructing Jaco that it must follow certain steps outlined on *Nortel's* restructuring website in order to receive payment for the

5

open Invoices.  Rather, the Debtors generally state that Claim No. 6820 "appear[s] to relate to transactions with an affiliate which is not a Debtor in these chapter 11 cases," without identifying that purported affiliate[2] or otherwise refuting a single fact put forth by the Claimant.  Claim Objection, Ex. A at p. 1.  Indeed, to the contrary, the Invoices and resulting Claims relate to Nortel – the only entity with which Jaco did business and which Jaco billed directly in Nashville.

11.    Accordingly, the Debtors fail to address any of the *prima facie* evidence put forth by Jaco as to the underlying amount due in Claim No. 6820 or its replacement Claim No. 7076 and cannot meet their burden of rebutting the Claims as filed.

**B.    Claim No. 7076 Amends and Replaces Previously Filed Claims Based on the Same Underlying Transactions**

12.    The Debtors next object to Claim  Nos. 392 and 7076 as redundant of Claim No. 6820 because each claim asserts the same purported liability against the Debtors.  Claim Objection ¶ 31, Ex. C at p. 4-5.  While Claimant is not looking for more than a single satisfaction/claim on account of the underlying Claims, Claim No. 7076 explicitly states that it amends Claim No. 392 to assert administrative liability under § 503(b)(9) and replaces Claim No. 6820 that was inadvertently filed against the wrong Debtor.  As such, none of the Claims are redundant, *per se*, but each is related and Claim No. 7076 survives as the operative claim leaving no chance of double recovery, as the Debtors assert.[3]  Irrespective, the Debtors fail to address the *prima facie* validity of Claim No. 7076 as evidenced by the attached Invoices and correspondence, as described above.

---

[2] Local Rule 3007-1 provides that the exhibit to an omnibus objection identifying the claims objected to must give sufficient detail as to why the claim should be disallowed including, among other things, a non-debtor entity against which the claim is properly asserted.

[3] Claim No. 7076 amended Claim No. 392 in order to assert administrative priority under § 503(b)(9).  As described further below, to the extent the Court determines that Claim No. 7076 is not entitled to administrative priority, the Claimant reserves all rights to assert a general unsecured claim for the Goods sold and specifically reserves Claim No. 392 for that purpose.  In the event Claim No. 7076 is allowed, Claim No. 392 will be withdrawn.

C.    **Claim No. 7076 is Entitled to Administrative Priority Under § 503(b)(9)**

13.    The Debtors further object to Claim No. 7076 as failing to meet the statutory requirements of Bankruptcy Code § 503(b)(9) and redundant of Claim No. 6820, asserting the same liability.  Claim Objection Ex. E at p. 2.  As an initial matter, Claim No. 7076 is not redundant or duplicative.  As described above, Claim No. 7076 amended the general unsecured Claim No. 392 and replaced the § 503(b)(9) Claim No. 6820.  Accordingly, there is no risk of double recovery, as the Debtors assert, where Claim No. 7076 is the operative claim asserted by the Claimant.[4]  Further, the Debtors fail to rebut the *prima facie* evidence establishing that Claim No. 7076 is entitled to administrative priority under § 503(b)(9).  The attached Invoices and correspondence from the Debtors confirm that the Goods were delivered within 20 days of the Petition Date.  The Debtors do not address, *much less rebut*, such evidence and such objection must fail.[5]

14.    In sum, through the Claim Objection, the Debtors do not specifically address, distinguish or otherwise provide any facts, arguments or legal bases to refute or negate the *prima facie* validity of any allegation set forth in the Claims, including, among other things, that the Claimant's assignor, Jaco, furnished the Goods to the Debtors within twenty days of the Petition Date without receiving payment.  Such a vague, conclusory and unsupported Claim Objection *cannot* rebut the *prima facie* validity of the Claims.  Accordingly, the Debtors fail to meet their burden of proof and the Claim Objection should be dismissed with prejudice.

---

[4] *See* reservation in footnote 3, *supra*.

[5] To the extent that the Claim Objection is allowed to go forward, Claimant reserves all rights to assert administrative status under § 503(b)(9).

## II.     The Claims Are Properly Asserted Against the U.S. Debtor

15.     Notwithstanding the Debtors' failure to rebut the *prima facie* validity of the Claims, even assuming, *arguendo*, that the Claim Objection goes forward against Claimant, there is no basis to disallow the Claims, as asserted against the U.S. Debtor.

16.     While not specifically addressed in the Claim Objection, it appears that the Debtors' sole argument with respect to their underlying liability for payment of the Invoices, is that this is a liability of Nortel Networks Limited (the "Canadian Debtor"), a Canadian affiliate of the Debtors subject to a separate insolvency proceeding in Canada. However, as described above and further below, while the Goods were drop shipped to Canada, that fact is not controlling. Here, at all relevant times, among other things, Jaco dealt with the U.S Debtor (in, among other things, setting up credit, delivery and billings), billed the U.S. Debtor in Nashville, Tennessee and communicated solely with the U.S. Debtor's employees regarding all invoicing and payment for goods sold for which it always understood to be liabilities of the U.S. Debtor. Such circumstances and economic realities, among other things, dictate that it is the U.S. Debtor – not the affiliated Canadian Debtor – that is responsible for payment of the Invoices and liable for the Claims as asserted.

17.     Indeed, under similar factual settings, courts have considered the totality of circumstances, looking to the economic realities of a transaction, in determining ownership of, and liability for, goods sold and shipped. *See. e.g., In re PSINet Inc.,* 268 B.R. 358, 374-75 (Bankr. S.D.N.Y. 2001) (holding that equipment shipped to a Canadian subsidiary but billed to the U.S. parent/debtor, remained property of the U.S. debtor); *Elly & Walker v. Dux-Mixture Hardware Co.,* 732 F.2d 821, 827 (11th Cir. 1984) (holding that goods billed to one entity but shipped to a related entity, were the obligation of the entity billed). In *PSINet,* the debtor ordered equipment from the supplier and the supplier, pursuant to the debtor's instructions, drop shipped

8

the equipment to the debtor's Canadian subsidiary, which also subsequently filed an insolvency proceeding in Canada. *In re PSINet Inc.,* 268 B.R. at 363. The court, in looking at the economic realities of the transactions in view of the totality of the circumstances, held that the U.S. debtor retained ownership of the equipment. *Id.* at 363-74. Indeed, even though the Canadian subsidiary had possession of the goods, the lease schedules and agreements were between the supplier and the debtor; the debtor bore the risk of loss with regard to the goods shipped; the intent of the parties was for the supplier to deal with the debtor, not the Canadian subsidiary; and the supplier relied on the creditworthiness of the debtor, not its Canadian subsidiary, when doing business. *Id.* Therefore, the U.S. debtor, not its Canadian subsidiary who merely received the drop shipped goods as the end customer, was the owner of the equipment sold. *Id.* at 374-75.

18.    Meanwhile, in *Elly & Walker,* the court held that, after looking at the totality of the circumstances, the company that was billed – not the company that was shipped the goods – was the party responsible for payment. 732 F.2d at 825. Specifically, the court looked at the record keeping practices, the credit worthiness and the intent of the parties to determine that the "bill to" company was the primary obligor and none of the "bill to" company's defenses "relieve[d] it of its obligation to pay [plaintiff] for the goods billed to [the "bill to" company] and shipped to [a third party]." *Id.* at 827.

19.    Similarly here, the Goods were drop shipped to the Canadian Debtor but the Invoices were billed to the U.S. Debtor. In addition, the totality of circumstances, and the economic realities of the subject transactions, dictate that it is the U.S. Debtor, not the Canadian Debtor, that is responsible for paying the Invoices for the Goods sold. Indeed, it was always Jaco's understanding and intent that it was doing business solely with the U.S. Debtor which was the entity liable for payment, as illustrated by, among other things, the following:

9

- The operative Invoices attached to the Claims clearly indicate that the "Bill To" entity was the U.S. Debtor located in Nashville, Tennessee.

- The emails attached to the Claims indicate that the Debtors had filed for bankruptcy and directed Jaco to file a proof of claim in the Debtors' bankruptcy if it wanted to receive payment – this correspondence is not simply suggestive – it clearly indicates that if Jaco wants to be paid, it must file a proof of claim in the *Debtors'* (not the Canadian Debtor's) bankruptcy proceeding.

- The Debtors sent Jaco the claims bar date notice and the proof of claim form and the Declaration of Service Regarding Bar Date Notice and Proof of Claim Form [Dkt. No. 1354, page 749] from their Chapter 11 cases, showing service was made on Jaco Electronics Inc. in Hauppauge, New York.

- Jaco set up a customer account for the U.S. Debtor, not the Canadian Debtor, the only customer account for any Nortel entity in Jaco's system.

- Jaco relied on the U.S. Debtor's D&B rating and credit code in establishing this account with the U.S. Debtor.  The U.S. Debtor's information is also what was relied upon when obtaining liability insurance.

- The payments Jaco received for shipments other than those referenced in the Claims were in U.S. funds and originated from Citibank out of area code 302, in Delaware.

- Since Jaco started its relationship with the U.S. Debtor in November, 2006, Jaco has always dealt with the U.S. Debtor with regard to the details of all orders, not the Canadian Debtor.

- The customer number on the Invoices is assigned to the U.S. Debtor.

- The terms of the Invoices were negotiated between Jaco and the U.S. Debtor.

- The funds received for the transactions giving rise to the Claims were to be paid in U.S. dollars.

- Jaco had always been paid by the U.S. Debtor, not the Canadian Debtor, in the past.

20.     Accordingly, while through the Claim Objection the Debtors do not even identify a non-debtor entity they believe is the actual party liable for the subject Claims, the facts put forth through the Claims, in addition to the economic realities and totality of circumstances,

firmly establish that the U.S. Debtor is liable and any such objection should be dismissed with prejudice. However, to the extent the Court determines that the Claim Objection may go forward, the Claimant reserves all rights, including the right to take discovery, to further support its position that the U.S. Debtor is liable for the Claims.

## CONCLUSION

21.    For all of the foregoing reasons, Claimant contests the Claim Objection and respectfully requests that this Court enter an order overruling the Claim Objection, allowing the Claims against the U.S. Debtor, and granting Claimant such other and further relief this Court deems just and proper.


Dated: New York, New York
          October 7, 2016

FOLEY & LARDNER LLP

*/s/ Richard J. Bernard*
Douglas E. Spelfogel
Richard J. Bernard
Derek L. Wright
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-2329
Email: dspelfogel@foley.com
          rbernard@foley.com
          dlwright@foley.com

*Counsel for Claimant*

4811-5791-8266.3