# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
: 
*In re*                           :     Chapter 11
: 
Nortel Networks Inc., *et al.*,[1]      :     Case No. 09-10138 (KG)
: 
               Debtors.     :     Jointly Administered
: 
:     **Hearing date: November 8, 2016 at 10:00 a.m. (ET)**
:     **RE: D.I. 17279**
: 
: 
-------------------------------------------------------X

## DEBTORS' REPLY IN FURTHER SUPPORT OF ITS
## FORTY-FIFTH OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby respectfully submit this Reply (the "Reply") in further support of the *Debtors' Forty-Fifth Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (Amended or Superseded Claims, Insufficient Documentation Claims, Non-Debtor Liability Claims, No-Basis Claims, No-Basis 503(b)(9) Claims, No-Basis Deferred Compensation Claims, No-Basis Pension Claims, No-Basis Retiree Claims, No-Basis Equity Claims, Redundant Claims, Modified, Reclassified and Allowed Claims and Wrong Debtor Claims)*, Sept. 27, 2016  [D.I. 17205] (the "Objection") and in reply to the Response Opposing the Motion for an Entry of an Order

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International Inc. (8667). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

Approving the Objection, Oct. 19, 2016 [D.I. 17279] filed by Bogdan Wislocki (the "Wislocki

Response").[2]  In further support of this Reply, the Debtors respectfully represent as follows:

**Reply**

1.      Through the Objection, the Debtors seek the disallowance of the claim asserted in

the amount of $333,153.61 (claim number 5352) by Mr. Bogdan Wislocki relating to ownership

of common shares of Nortel Networks Corporation ("NNC"), the ultimate Canadian corporate

parent of the Debtors (the "Wislocki Claim").[3]  Specifically, Mr. Wislocki seeks allowance of a

claim against NNI for the loss of value of the NNC stock during the few years prior to the

commencement of creditor protection proceedings by various Nortel affiliates, including NNC.

The Debtors continue to assert that the Wislocki Claim lacks merit and should be disallowed.

Mr. Wislocki fails to state a claim against NNI on the facts or the law.

2.      By way of background, during his employment with NNI, Mr. Wislocki

participated in the Nortel Networks Long-Term Investment Plan (the "LTIP"), which provided

sixteen investment options to employees for their 401(k) accounts.  One such option was the

Nortel Networks Stock Fund (the "Nortel Stock Fund"), which invested primarily in common

shares of NNC.

3.      According to his proof of claim, Mr. Wislocki transferred almost the entire value

of his 401(k) account—$316,991.53—from the Fixed Income Investment Fund to the Stock

Fund on December 28, 2007.  See Wislocki Proof of Claim, at 5 (Ex. A).  The Fixed Income

Fund is described in the 2007 Summary Plan Description that Mr. Wislocki included in his proof

---

[2]      The Debtors have consensually resolved each of the other responses to the Objection, including the Response and Objection to Disallowing Claim No. 3732 of John H. Yoakum, Oct. 12, 2016 [D.I. 17244], the Response to Forty-Fifth Omnibus Objection to Claims of William J. LaSalle, Oct. 14, 2016 [D.I. 17258] and the Response and Objection to Notice of Debtors' Forty-Fifth Omnibus Objection of Adam Kahn, Oct. 18, 2016 [D.I. 17298] and therefore will only address the response of Mr. Wislocki in the Reply.

[3]      The proof of claim corresponding to the Wislocki Claim is attached hereto as Exhibit A (the "Wislocki Proof of Claim").

of claim as a "well-diversified portfolio" with the objective "[t]o provide stability of principal," and appealing to individuals looking for a "conservative investment."  Wislocki Proof of Claim, at 45 (Ex. A).

4.      By contrast, the Nortel Stock Fund that he transferred his investments to was described as appealing to "[i]ndividuals comfortable with fluctuations in value that can accompany a single stock investment."  Wislocki Proof of Claim, at 58 (Ex. A).  The description of the Nortel Stock Fund included returns for recent years, which demonstrated these broad fluctuations in value: stretching back to 2000, the Fund had had negative returns in the double digits for six out of the seven prior years, with losses as high as -78.11 % in one year.  Id. Moreover, on November 26, 2007 — approximately one month prior to the time Mr. Wislocki transferred his assets into the Nortel Stock Fund — Mr. Wislocki received notice that the Nortel Stock Fund would be closed to new contributions as of January 1, 2008.  Wislocki Proof of Claim, at 14-15 (Ex. A).

5.      Notwithstanding the ample disclosure regarding the risks of investing in a single stock fund, and the actual historic performance of the Nortel Stock Fund, Mr. Wislocki chose to place his assets in the more volatile Nortel Stock Fund.  While the value of NNC common shares continued to drop in 2008, this is a risk of which Mr. Wislocki was well aware and that was clearly disclosed.  Ultimately, the NNC common shares were trading at less than $1 per share when the Stock Fund was liquidated on January 16, 2009.

6.      Mr. Wislocki's allegation that Nortel "paint[ed] a rosy picture" of its financial health in 2007 and 2008 "while at the same time thinking about bankruptcy and not disclosing this to the [LTIP participants]" is not consistent with the public record during that period.  NNC's public filings disclosed net losses in 2007 and 2008, significant levels of debt,

cost reductions, workforce cutbacks, competitive pressures, a volatile industry and a challenging business environment, but also restructuring plans, a business transformation plan and even an increase in revenue in the first quarter of 2008.  See Nortel Networks Corp., Quarterly Report Q3 2007 (Form 10-Q) (Nov. 6, 2007) at 70; Nortel Networks Corp., Annual Report FY 2007 (Form 10-K) (Feb. 27, 2008) at 1-2, 44; Nortel Networks Corp., Quarterly Report Q1 2008 (Form 10-Q) (May 2, 2008) at 41; Nortel Networks Corp., Quarterly Report Q3 2008 (Form 10-Q) (Nov. 10, 2008) at 57-59.  During 2008, the Nortel group explored all possible alternatives to commencing creditor protection proceedings, including implementing a restructuring plan and new operating model and these efforts were publicly disclosed in detail in NCC's financial filings.  See Decl. of John Doolittle, Vice President of Nortel Networks Inc. In Supp. Of Ch. 11 Pets. and First Day Mots., Jan. 14, 2009 [D.I. 3] ("Doolittle Affidavit"); Nortel Networks Corp., Quarterly Report (Form 10-Q) (Nov. 10, 2008); Nortel Networks Corp., Annual Report FY 2008 (Form 10-K) (Mar. 2, 2009).  The combination of Nortel's disclosed struggle to reduce costs with decreased customer spending and massive global uncertainty in the wake of the economic crisis placed substantial pressure on NNI, leading to the bankruptcy filings of NNI, and NNC and its other affiliates seeking similar protections, as a last resort in January 2009.  See Doolittle Affidavit.

7.    Mr. Wislocki argues that Nortel should have taken additional steps in 2007, such as that the Nortel Stock Fund should have been removed from the LTIP in late 2007 instead of merely closed to new investment, based on his conclusory and unsubstantiated argument that NNI allegedly was contemplating bankruptcy in December 2007 and failed to disclose its plans to Nortel Stock Fund participants, and that December 31, 2007 is "the date that NNI breached its fiduciary duty."  See Wislocki Proof of Claim, at 2 (Ex. A); Wislocki Response.  Such conclusory allegations do not suffice to make out a claim against NNI related to the LTIP, where

the Nortel group had made ample disclosures about the corporate group's financial situation, and there is no evidence that bankruptcy was inevitable in early 2008.  Indeed, the public record shows otherwise.  See generally Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. _____ (2014); 134 S. Ct. 2459, 2471-73 (2014) (explaining dismissals of actions are permitted to "weed[] out meritless claims," and finding claims subject to dismissal if plaintiff cannot show a fiduciary could not have concluded that an alleged alternative legal action would do "more harm than good to the fund.").

8.     Aside from these fatal infirmities, Mr. Wislocki's claim must be disallowed as well because while he has asserted the claim against NNI, the named plan administrator responsible for investment decisions is the Retirement Plan Committee ("RPC").  Mr. Wislocki has not brought a claim against the RPC, nor could he given any applicable statute of limitations has run at this time.[4]  See 29 U.S.C. § 1113.

9.     The Debtors therefore submit that Mr. Wislocki's claim, proof of claim number 5352, for $333,153.61 against the NNI should be disallowed.  The Debtors respectfully request that this Court grant the Objection and disallow the Wislocki Claim in its entirety.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

---

[4]     Finally, even if the Wislocki Claim had any valid basis (which it does not), it would be subject to subordination to the level of a common equity claim against NNI, under section 510(b) of the Bankruptcy Code. See 11 U.S.C. § 510(b); In re VF Brands, Inc., 275 B.R. 725, 728-29 (Bankr. D. Del. 2002); Lernout & Hauspie Speech Prods., N.V. v. Baker (In re Lernout & Hauspie Speech Prods. N.V.), 264 B.R. 336, 344 (Bankr. D. Del. 2001).

## Conclusion

For the reasons set forth above, the Debtors respectfully request that the Court overrule the Wislocki Response, approve the Objection with respect to the Wislocki Claim and grant such other relief as the Court deems just and proper.

Dated:  November 3, 2016
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


_____*/s/ Tamara K. Minott*_____
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*