## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------- X
                                                :
In re                                           :    Chapter 11
                                                :
Nortel Networks Inc., et al.,¹                  :    Case No. 09-10138(KG)
                                                :
                            Debtors.            :    Jointly Administered
                                                :
                                                :
                                                :    Hearing date: December 6, 2016 at 10 a.m. (ET)
                                                :    Responses due: November 18, 2016 at 4:00 p.m. (ET)
----------------------------------------------- X
```

### DEBTORS' FORTY-SIXTH OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR. P. 3007 AND DEL. L.R. 3007-1 (NO-LIABILITY CLAIMS)

**TO THE CLAIMANTS LISTED IN <u>EXHIBIT A</u> ATTACHED TO THIS OBJECTION:**

- **CLAIMANTS' RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND BY ANY FUTURE OBJECTION(S) THAT MAY BE FILED BY THE DEBTORS.**

- **THE RELIEF SOUGHT HEREIN IS WITHOUT PREJUDICE TO THE DEBTORS' RIGHTS TO PURSUE FURTHER SUBSTANTIVE OR NON-SUBSTANTIVE OBJECTIONS AGAINST THE CLAIMS LISTED IN <u>EXHIBIT A</u>.**

- **CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS IN <u>EXHIBIT A</u>.**

Nortel Networks Inc. ("<u>NNI</u>") and certain of its affiliates, as debtors and

debtors-in-possession (collectively, the "<u>Debtors</u>"), hereby object (this "<u>Objection</u>"), pursuant to

section 502 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 3007 of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available athttp://dm.epiq11.com/nortel.

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3007-1 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"), to (i) the Proofs of Claim filed by Dietmar Wendt on

December 14, 2009 against the Debtors in the amount of $1,418,626.58, which are listed on the

Debtors' claim register as Claim Nos. 6233-6247[2] (the "Wendt Claims"); (ii) the Proofs of Claim

filed by John Roese on December 15, 2009 against the Debtors in the amount of $1,247,145.60,

which are listed on the Debtors' claim register as Claim Nos. 6249-6262 and 6281[3] (the "Roese

Claims") and (iii) the Proofs of Claim filed by Lauren Flaherty (together with Wendt and Roese,

the "Canadian Claimants") on December 15, 2009 against the Debtors in the amount of

$1,228,433.00, which are listed on the Debtors' claim register as Claim Nos. 6263-6277[4] (the

"Flaherty Claims", and together with the Wendt Claims and the Roese Claims, the "Canadian

Severance Claims", see Exhibit A).  In Support of this Objection, the Debtors submit the

Declaration of John J. Ray, III in Support of Debtors' Forty-Sixth Omnibus Objection

(Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P 3007 and

Del. L.R. 3007-1 (No-Liability Claims), attached hereto as Exhibit B and incorporated by

reference and respectfully state as follows:

  There is no valid basis upon which the Canadian Claimants, who lived and worked in

Canada and were employed exclusively by the Canadian Debtors, can assert severance related

claims against the Debtors.  The Canadian Claimants' reliance upon severance agreements that

each entered into with the Canadian Debtors (by whom they were employed), and to which the

---

[2]  On January 20, 2010, Wendt filed claim no. 6806 in the same amount against Nortel Networks (CALA) Inc.

[3]  On January 20, 2010, Roese filed claim no. 6807 in the same amount against Nortel Networks (CALA) Inc.

[4]  On January 20, 2010, Flaherty filed claim no. 6808 in the same amount against Nortel Networks (CALA) Inc.

Debtors were not a party, as the sole basis for their claim is inapposite.  As such, the Debtors respectfully request that the Canadian Severance Claims be disallowed in full.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 502 and 503 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## Background

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. ("NN CALA"),[5] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only [D.I. 36].  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

---

[5]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

Canadian affiliates (collectively, the "Canadian Debtors")[6] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[7] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

7.      On December 14, 2009, the Court entered an order granting the Debtors relief from the requirements of Bankruptcy Rule 3007(e)(6) and Local Rule 3007-1(f) (the "Original Rule 3007 Order") [D.I. 2125].

8.      On September 16, 2010, the Court entered an order authorizing and approving omnibus settlement procedures to settle certain prepetition claims (the "Settlement Procedures") [D.I. 3953].

---

[6]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[7]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

9.      On February 7, 2012, the Court entered an order modifying the application of Local Rule 3007-1 and the Original Rule 3007 Order [D.I. 7178].

**B.      Facts Relevant to this Objection**

10.     The Canadian Claimants, former officers and directors of the Canadian Debtors, seek to have claims allowed against each of the Debtors based on severance agreements they entered into with the Canadian Debtors.  Such claims have no valid basis under law and should be disallowed.  Specifically, the Canadian Claimants each individually entered into substantively similar letter agreements (the "Agreements", and each, an "Agreement"[8]), between themselves and NNL, the lead Canadian Debtor, and/or NNC, another Canadian Debtor,  dated November 28, 2008 (Roese), December 9, 2008 (Wendt) and December 12, 2008 (Flaherty), that recorded the arrangements concerning the cessation of their employment with the Canadian Debtor companies.  See e.g., Agreement at 1, 11 (True and correct copies of their Proofs of Claims are attached as Exhibits C, D and E hereto.).  The Agreements were executed by Mike S. Zafirovski for and on behalf of Nortel Networks Limited, in the case of Dietmar Wendt and John Roese, and for and on behalf of Nortel Networks Corporation, in the case of Lauren Flaherty.

11.     Each of the Agreements is governed by the laws of Ontario, Canada.  See e.g., Agreement at 9, ¶ 16.

12.     Each of the Agreements states that effective on the close of business on December 31, 2008, the Canadian Claimant's "active employment relationship with the Corporation will cease," on which date he or she would "cease to act as an officer and/or director of the Corporation and any of the Corporation's subsidiaries and affiliates."  See e.g., Agreement at 1, ¶ 2.

---

[8]      For purposes of this Objection, all citations to an Agreement are to the agreement attached to Flaherty's Claim No. 6263, available at Exhibit E.  The corresponding agreements for Wendt and Roese are attached to their respective proofs of claim (Claim Nos. 6233-6247, 6249-6262, 6281, 6806 and 6807).

13.     Each of the Agreements further provides that, conditional upon the Canadian

Claimants' compliance with all terms and conditions of the Agreements, "the Corporation shall"

make certain payments and provide certain benefits, including severance allowance, vacation

benefits, 2008 Annual Incentive Plan ("AIP") payments,[9] insurance benefits, pension benefits,

long term incentives, investment plan distributions, outplacement services, income tax

preparation, taxation withholding and remittance, certain relocation related expenses, local

equalization payments, school assistance, and independent legal advice.  See e.g., Agreement at

2-4, ¶ 4

14.     Under the Agreements, the term "Corporation" appears to be defined as "Nortel

Networks Corporation, its subsidiaries and affiliates, their successors and assigns, and all of their

past and present officers, directors, employees and agents (in their individual and representative

capacities), in every case, individually and collectively," though elsewhere the Agreements make

conflicting references to, for example, "the Corporation and any of the Corporation's subsidiaries

and affiliates."  See e.g., Agreement at1, ¶¶ 1, 2.

15.     The Debtors understand that prior to the time the Canadian Claimants entered into

the Agreements each of the Canadian Claimants was an officer or director of the Canadian

Debtors who lived and worked exclusively in Canada.  Specifically, Dietmar Wendt was

employed by NNC and NNL from May 1, 2006 through December 31, 2008; John Roese was

employed by NNC and NNL from June 16, 2006 through December 31, 2008; and Lauren

Flaherty was employed by NNC and NNL from April 4, 2006 through December 31, 2008.

16.     The Debtors further understand that all three of the claimants lived and worked

exclusively in Canada while employed by NNC and NNL.

---

[9]     Wendt's and Roese's agreements specify that it is the "2008 Nortel Networks Limited Annual Incentive Plan ("AIP")"
payments for which the Corporation will determine their eligibility.  See Exhibits C and D.

17.     On December 14, 2009, and shortly thereafter on January 20, 2010 for NN CALA, Dietmar Wendt filed a proof of claim against each of the Debtors (sixteen in total) asserting that each Debtor is liable for $1,418,626.58 of base salary for 18 months, AIP bonus payments for 2008, medical insurance benefits, pension benefits, housing differential assistance, legal advice, outplacement service, Nortel corporate credit card credit balance, relocation costs and a flight ticket to Germany.  Claim Nos. 6233-6247, 6806.

18.     On December 15, 2009, and shortly thereafter on January 20, 2010 for NN CALA, John Roese filed a proof of claim against each of the Debtors (sixteen in total) asserting that each Debtor is liable for $1,247,145.60 of severance pay, AIP for 2008, insurance, deferred compensation, outplacement, relocation, tax preparation and RSU/PSU value.  Claim Nos. 6249-6262, 6281, 6807.

19.     Also on December 15, 2009, and shortly thereafter on January 20, 2010 for NN CALA, Lauren Flaherty filed a proof of claim against each of the Debtors (sixteen in total) asserting that each Debtor is liable for $1,228,433.00 of severance allowance, AIP for 2008, local equalization payments and school Assistance.  Flaherty's claims also include insurance benefits, pension benefits, outplacement service and an income tax preparation claim for 2010 in amounts to be determined.  Claim Nos. 6263-6277, 6808.

<u>**Relief Requested and Basis for Relief**</u>

20.     For the reasons set forth below, the Debtors object to the Canadian Severance Claims and respectfully request that the Court enter an order pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing the Canadian Claimants' claims against the Debtors:

21.     Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable.  11 U.S.C. §§ 101(5) and 101(10).

22.     When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.  See In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); In re Int'l Match Corp., 69 F. 2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist).  Where the claimant alleges sufficient facts to support its claim, its claim is afforded prima facie validity.  In re Allegheny Int'l, Inc., 954 F.2d at 173.  A party wishing to dispute such a claim must produce evidence in sufficient force to negate the claim's prima facie validity.  Id.  In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency.  Id. at 173-74.  Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence.  Id.  The burden of persuasion is always on the claimant.  Id.

23.     The Debtors, in consultation with their advisors, have carefully reviewed their books and records, their bankruptcy schedules and the Canadian Severance Claims, including supporting documentation provided by the Canadian Claimants regarding the Canadian Severance Claims, and have determined that the Canadian Severance Claims assert liabilities for which the Debtors have no obligation.

24.     Specifically, none of the Canadian Claimants were ever employed by any of the Debtors, none of the Canadian Claimants lived in the United States while employed by NNC and

NNL, and the Canadian Claimants rely solely on the Agreements – to which the Debtors are not a party – to assert claims for unpaid Canadian benefits against the Debtors.

25.    The Canadian Severance Claims should be disallowed in full for failure to state a valid claim.  However, to the extent such claims are not wholly disallowed, the Debtors reserve their right to assert further objections and further address the particular components of the Canadian Severance Claims and amounts being sought, including to seek discovery with respect to such claims.  The Canadian Claimants have not provided any evidence as to the accuracy of the amounts set forth in their claims, making it impossible for the Debtors to take a position on those amounts at this time.

26.    The Agreements cannot be read to create such an obligation for the Debtors to pay these amounts; rather any such reading would strain credulity.  Moreover, to provide the Canadian Claimants with sixteen joint and several liability claims against the Debtors based on the Canadian Claimants' Agreements with the Canadian Debtors would create an unfair inconsistency with respect to the treatment of the U.S. employees, who only have allowed severance claims against their respective employers.

27.    For the reasons stated above, the Canadian Severance Claims should be disallowed in full.  Unless the Canadian Severance Claims are disallowed as requested herein, the Canadian Claimants may receive distributions based on employment claims against Debtors by whom they were never employed in contravention of the provisions and policies of the Bankruptcy Code and to the direct detriment of the Debtors' estates and their rightful creditors.

## Separate Contested Matters

28.    To the extent that a response is filed regarding any Claim and the Debtors are unable to resolve the response, such claim, and the objection to such claim asserted by the Debtors herein, shall constitute a separate contested matter as contemplated by Bankruptcy Rule

9014.  Any order entered by the Court regarding an objection asserted in this Objection shall be

deemed a separate order with respect to each claim.

### Responses to Omnibus Objection

29.     To contest this Objection, a claimant must file and serve a written response to this

Objection (a "Response") so that it is received no later than **4:00 p.m. (prevailing Eastern**

**Time) on November 18, 2016** (the "Response Deadline").  Every Response must be filed with:

> The Office of the Clerk
> The United States Bankruptcy Court for the District of Delaware
> 824 Market Street
> Wilmington, Delaware  19801

and served upon the following entities so that the Response is received no later than the

Response Deadline, at the following addresses:

> Cleary Gottlieb Steen & Hamilton LLP
> One Liberty Plaza
> New York, New York  10006
> Attn:  Lisa M. Schweitzer
>
> -and-
>
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 North Market Street, P.O. Box 1347
> Wilmington, Delaware  19899-1347
> Attn:  Derek C. Abbott

30.     Every Response to this Objection must contain, at a minimum, the following

information:

> a.     A caption setting forth the name of the Court, the name of the Debtors, the
>        case number, and the title of this Objection;
>
> b.     The name of the claimant, the claim number, and a description of the basis
>        for the amount of the claim;
>
> c.     The specific factual basis and supporting legal argument upon which the
>        party will rely in opposing this Objection;
>
> d.     Any supporting documentation, to the extent that it was not included in the
>        proof of claim previously filed with the clerk or claims agent, upon which

the claimant intends to rely to support the basis for and amounts asserted in the proof of claim; and

e.  The name, address, telephone number and fax number of the person(s) (which may be the claimant or the claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the claim or this Objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the disputed claim on behalf of the claimant.

31.  If a claimant fails to file and serve a timely Response by the Response Deadline, the Debtors may present to the Court an appropriate order modifying, reclassifying or disallowing the claim, without further notice to the claimant or a hearing.

## Replies to Responses

32.  The Debtors may, at their option, file and serve a reply to any Response so that it is received by the claimant (or the claimant's counsel, if represented) no later than three (3) days prior to the hearing.

## Adjournment of Hearing

33.  The Debtors reserve the right to seek an adjournment of the hearing on any Responses to this Objection.  In the event that the Debtors seek such an adjournment, it will be noted on the notice of agenda for the hearing, and such agenda will be served on the affected claimant by serving the person designated in the Response.

## Reservation of Rights

34.  The Debtors expressly reserve the right to amend, modify or supplement this Objection.  Should one or more of the grounds of objection stated in this Objection be dismissed or overruled, the Debtors reserve the right to object to each of the claims on any other grounds that the Debtors discover or elect to pursue.  This Objection sets out substantive and non-substantive objections to the Canadian Severance Claims.  The Debtors reserve their right to assert one or more other legal, factual, procedural, substantive and non-substantive objections to

the Canadian Severance Claims at a later time.  The Debtors also reserve the right to withhold all applicable federal, state and local withholding taxes from distributions (if any) that would be made with respect to the claims addressed in this Objection.

## No Prior Request

35.     No prior request for the relief sought herein has been made to this or any other court.

## Notice

36.     Notice of this Objection has been given via first class mail or overnight delivery to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) each of the Canadian Claimants and (v) the general service list established in these chapter 11 cases.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

*[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]*

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit F, sustaining this Objection in all respects and granting such other and further relief as the Court deems just and proper.

Dated:  November 4, 2016
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York  10006
Telephone:  (212) 225-3505
Facsimile:  (212) 225-3999

- and –

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

   */s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors-in-Possession*