# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------

|  |  |  |
|---|---|---|
| *In re* | ) | Chapter 11 |
|  | ) |  |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Proposed Hearing date: December 1, 2016 at 9:00 a.m. (ET)** |
|  | ) | **Proposed Objections due: November 18, 2016 4:00 p.m (ET)** |

---------------------------------------------------------

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING ADEQUACY OF INFORMATION CONTAINED IN DISCLOSURE STATEMENT, (II) ESTABLISHING VOTING RECORD DATE, (III) APPROVING PROCEDURES FOR SOLICITING, RECEIVING AND TABULATING VOTES ON THE PLAN, AND (IV) SCHEDULING CONFIRMATION HEARING DATE AND ESTABLISHING NOTICE AND OBJECTION PROCEDURES

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 502, 1125, 1126, 1128, and 1129 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 3016, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 3017-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) approving the adequacy of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226), and Nortel Networks India International Inc. (8667). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

the information contained in the *[Proposed] Disclosure Statement for the First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of its Affiliated Debtors* filed contemporaneously herewith (the "<u>Proposed Disclosure Statement</u>")[2] for the *First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of its Affiliated Debtors*, also filed contemporaneously herewith (as it has and may be further modified, the "<u>Proposed Plan</u>") and the form and manner of the notice of the hearing to consider the Proposed Disclosure Statement; (ii) establishing a voting record date; (iii) approving procedures for soliciting, receiving and tabulating votes on the Proposed Plan, including setting a deadline for filing motions to estimate claims for voting purposes, and approving the forms of ballots; (iv) setting the hearing date and objection deadline for confirmation of the Proposed Plan, and establishing the form and manner of notice of the confirmation hearing; and (v) granting such other and further relief as the Court deems just and proper.[3]  In support of this Motion, the Debtors respectfully represent as follows:

## <u>JURISDICTION</u>

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The Debtors consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement and Plan.

[3]     For the avoidance of doubt, the Plan and Disclosure Statement do not include a Plan for Nortel Networks India International ("<u>NNIII</u>").  NNIII will file a separate Chapter 11 Plan in its case.

3.     The statutory bases for the relief requested herein are sections 105(a), 502, 1125,

1126,  1128, and 1129 of the Bankruptcy Code, as supplemented by Rules 2002, 3016, 3017,

3018 and 3020 of the Bankruptcy Rules and Rules 2002-1 and 3017-1 of the Local Rules.

## BACKGROUND

4.     On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc. and Nortel Networks India International Inc. ("NNIII"),[4] filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for

procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

5.     The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

6.     On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[5] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by

---

[4]     Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].  NNIII filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 26, 2016, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 17090]

[5]     The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[6] into administration

(the "English Proceedings") under the control of individuals from Ernst & Young LLP

(collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the

future may commence additional creditor protection, insolvency and dissolution proceedings

around the world.

      7.      Since the Petition Date, Nortel has sold its business units and other assets to

various purchasers.  For further information regarding these chapter 11 cases, reference may be

made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## RELEVANT FACTS

      8.      In 2009 and 2010, the Debtors, the Canadian Debtors, the EMEA Debtors, the

Committee, the Bondholder Group, and certain other interested parties held discussions in an

attempt to agree upon an allocation of the proceeds from the sales of Nortel's assets, currently

held in escrow, and to reach resolution of all inter-estate matters.

      9.      Despite efforts at joint mediation, the parties were unable to reach an agreement

as to the distribution of assets, and proceeded to trial in both Bankruptcy Court and Canadian

Court simultaneously on May 12, 2014.

      10.      On May 14, 2015, the Bankruptcy Court and the Canadian Court simultaneously

issued opinions deciding the Allocation Trial.  The U.S. Debtors, the Committee, the Bondholder

Group, and certain other parties sought reconsideration and/or clarification of the decisions

---

[6]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A.,
Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel
Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks
B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel
Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks
Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

before both the Bankruptcy Court and the Canadian Court, and those motions were largely denied on July 6, 2015.

11.     Numerous parties appealed the decision to the United States District Court for the District of Delaware.  After further unsuccessful attempts at mediation, the District Court entered an order on May 24, 2016 certifying all appeals directly to the United States Court of Appeals for the Third Circuit, and the parties petitioned the Third Circuit to accept the appeal.  The Third Circuit granted the parties' petitions for leave to appeal on August 9, 2016.  An appeal also was sought from the Canadian Court ruling.

12.     On October 12, 2016, following a mediation process, the Debtors filed with the Court their Notice of Execution of Settlement and Plans Support Agreement [D.I. 17249] (the "SPSA").  The SPSA provides for the full and final resolution of the litigation between its signatories relating to the allocation of sale proceeds and certain other claims between the Nortel Affiliates, subject to various terms and conditions contained therein, and is overwhelmingly supported by the key parties to that dispute.

13.     As contemplated by the SPSA, contemporaneously with the filing of this Motion, the Debtors filed the Proposed Plan and Proposed Disclosure Statement with the Court.  In accordance with sections 1122 and 1123 of the Bankruptcy Code, the Proposed Plan contemplates classifying Holders of Claims and Interests into various Classes for all purposes, including with respect to voting on the Proposed Plan.  For each Debtor, Holders of Claims and Interests will be classified as follows:

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims | Unimpaired | No (deemed to accept) |
| 3A | General Unsecured Claims (including NNCC Bonds Claims) | Impaired | Yes |
| 3B | Crossover Bonds Claims and EDC Claims (NNI/NNCC only) | Impaired | Yes |
| 3C | Convenience Claims (NNI/NNCC, NNCALA, and Altsystems only) | Impaired | Yes |
| 4 | Subordinated Claims | Impaired | No (deemed to reject) |
| 5A | Interests | Impaired | No (deemed to reject) |
| 5B | Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

14.     As stated in the Proposed Plan, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to alter, amend, modify, revoke, or withdraw the Proposed Plan at any time prior to the entry of the order confirming the Proposed Plan, which includes, without limitation, the right to propose new classes  The Debtors also reserve the right to propose new classes of Claims or Interests or to merge or redefine existing classes of Claims or Interests in consultation with their various creditor constituencies.

## RELIEF REQUESTED

15.     By this Motion, the Debtors seek entry of an order: (i) approving the adequacy of the information contained in the Proposed Disclosure Statement and the form and manner of the notice of the hearing on the Proposed Disclosure Statement; (ii) establishing a voting record date; (iii) approving procedures for soliciting, receiving and tabulating votes on the Proposed Plan, including setting a deadline for filing motions to estimate claims for voting purposes, and approving the forms of ballots;  (iv) setting the hearing date and objection deadline for confirmation of the Proposed Plan, and establishing the form and manner of notice of the confirmation hearing; and (v) granting such other and further relief as the Court deems just and proper.

16.     Specifically, the Order contemplates the following proposed dates and deadlines

for the relief requested[7]:

| Event | Date/Deadline |
|---|---|
| Filing and Service of Proposed Disclosure Statement | November 4, 2016 |
| Objection Deadline for Disclosure Statement Hearing | November 18, 2016 |
| Voting Record Date | November 21, 2016 |
| Disclosure Statement Hearing Date | December 1, 2016 |
| Complete Solicitation Material Mailings | Not later than December [9], 2016 |
| Deadline to Publish Notice of Confirmation Hearing | December 9, 2016 |
| Rule 3018(a) Motion Deadline | December 16, 2016 |
| Rule 3018(a) Response Deadline | December 30, 2016 |
| Rule 3018(a) Hearing Date | January 5, 2017 |
| Voting Deadline | January 9, 2017 |
| Plan Objection Deadline | January 9, 2017 |
| Confirmation Hearing Date | January 24, 2017 |

**BASIS FOR RELIEF**

I.      **ADEQUACY OF PROPOSED DISCLOSURE STATEMENT**
        **AND NOTICE OF THE DISCLOSURE STATEMENT HEARING**

   A.      **The Proposed Disclosure Statement Contains Adequate Information**

17.     By this Motion, the Debtors seek entry of an Order approving the adequacy of the

information contained in the Proposed Disclosure Statement in accordance with section 1125 of

the Bankruptcy Code.  Section 1125 requires that a plan proponent provide a disclosure

---

[7]      To the extent of any conflict between the dates in this chart and those in the Disclosure Statement Order,
the dates in the Disclosure Statement Order shall control.

statement that contains "adequate information" regarding the proposed plan. 11 U.S.C. §

1125(b).  Section 1125(a)(1) defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtor and the condition of the debtor's books and records,
> including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the debtor,
> and a hypothetical investor typical of the holders of claims or
> interests in the case, that would enable such a hypothetical investor
> of the relevant class to make an informed judgment about the plan .
> . . .

11 U.S.C. § 1125(a)(1).

18.    The primary purpose of a disclosure statement is to provide all material

information that creditors and interest holders affected by a proposed plan need to make an

informed decision whether to vote for the plan.  See Century Glove, Inc. v. First Am. Bank of

New York, 860 F.2d 94, 100 (3d Cir. 1988) ("§ 1125 seeks to guarantee a minimum amount of

information to the creditor asked for its vote"); see also In re Monnier Bros., 755 F.2d 1336,

1341 (8th Cir. 1985); In re Phoenix Petroleum, Co., 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001); In

re Unichem Corp., 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987).

19.    The Third Circuit has acknowledged that "adequate information will be

determined by the facts and circumstances of each case."  Oneida Motor Freight, Inc. v. United

Jersey Bank, 848 F.2d 414, 417 (3rd Cir. 1988) ; see also First Am. Bank of New York v.

Century Glove, Inc., 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a

particular debtor will be determined based on how much information is available from outside

sources;  In re RiverVillage Associates, 181 B.R. 795, 804 (E.D. Pa. 1995); In re Phoenix

Petroleum Co., 278 B.R. 385, 393, (Bankr. E.D. Pa. 2001); In re Lisanti Foods, Inc., 329 B.R.

491, 507 (Bankr. D.N.J. 2005); In re Galerie Des Monnaies of Geneva, Ltd., 55 B.R. 253, 259

(Bankr. S.D.N.Y. 1985); accord H.R. Rep. No. 95-595, 95th Cong., 2nd Sess. 408-09 (1978)

("Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection."). The determination is "largely within the discretion of the bankruptcy court." In re A.H. Robins. Inc., 880 F.2d 694, 696 (4th Cir. 1989) (citing Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1998)).

20.    The Proposed Disclosure Statement is the product of the Debtors' extensive review and analysis of the circumstances leading to these Chapter 11 Cases, the Chapter 11 Cases themselves and the Proposed Plan. In drafting their Proposed Disclosure Statement, the Debtors sought the assistance and input of their financial and legal advisors, as well as the Committee and its members, the Bondholder Group and certain other Creditors and constituencies. Each of the foregoing was represented by counsel who either (a) participated in the formulation and documentation of or (b) was afforded the opportunity to review and provide comments on, the Proposed Plan, the Proposed Disclosure Statement, and the documents ancillary thereto.

21.    The Debtors believe that the Proposed Disclosure Statement contains more than sufficient information for a hypothetical reasonable investor to make an informed judgment about the Proposed Plan, including, without limitation, a description of each of the following topics:

     i.     the Debtors' history and businesses;

     ii.    historical information about the Debtors' finances and capital structure;

     iii.   the Debtors' restructuring efforts, including a description of the factors preceding the Chapter 11 Cases and significant asset sales;

iv.     the disposition of assets related to the Debtors' businesses and the subsequent disputes regarding the allocation of sale proceeds;

v.      the proposed settlement of the allocation of sale proceeds and other matters, as contained in the SPSA;

vi.     the current status of the Chapter 11 Cases;

vii.    a summary and analysis of the Proposed Plan;

viii.   the purposes of the Proposed Plan;

ix.     the classification and treatment of Claims and Interests;

x.      the provisions governing distributions under the Proposed Plan;

xi.     the means for implementing and administering the Proposed Plan;

xii.    the treatment of executory contracts and unexpired leases;

xiii.   the confirmation and effectiveness of the Proposed Plan;

xiv.    the voting and confirmation procedures;

xv.     the federal income tax consequences for Holders of Claims and Interests.

xvi.    the treatment of litigation and other legal proceedings; and

xvii.   the procedures for resolving disputed, contingent and unliquidated Claims or Interests.

22.     Accordingly, the Debtors respectfully submit that the Proposed Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and, on that basis, should be approved.

**B.      Notice Of Disclosure Statement Hearing**

23.     Bankruptcy Rule 3017(a) provides, in relevant part:

[A]fter a disclosure statement is filed in accordance with Rule 3016(b), the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest as provided in Rule 2002 to consider the disclosure statement and any objections or modifications thereto.  The plan and the disclosure statement shall be mailed with the notice of the hearing only to the debtor, any trustee or committee appointed

under the [Bankruptcy] Code, the Securities and Exchange Commission and any party in interest who requests in writing a copy of the statement or plan.

Fed. R. Bankr. P. 3017(a).  In addition, Bankruptcy Rule 2002(b) requires notice by mail to the debtors, the trustee, all creditors and all indenture trustees of the time set for filing objections to, and hearing to consider, a disclosure statement.  Bankruptcy Rule 2002(d) requires that equity security holders be given notice of the foregoing in the manner and form directed by the Court.

24.     In accordance with these requirements, the Debtors have concurrently filed a *Motion for the Entry of an Order Shortening the Objection Deadline and Notice of the Hearing to Consider Approval of the Disclosure Statement* to modify the timeframe regarding considering approval of the Proposed Disclosure Statement (the "Disclosure Statement Hearing"), such that the Disclosure Statement hearing will be held on **December 1, 2016 at 9:00 a.m. (Eastern Time)**.  The Debtors with the assistance of their Voting Agent (as defined herein) filed or will file and cause copies of a notice in the form attached to the Debtors' Debtors' *Motion for the Entry of an Order Shortening the Objection Deadline and Notice of the Hearing to Consider Approval of the Disclosure Statement* [D.I. •] as Exhibit B and incorporated herein by reference (the "Disclosure Statement Notice") to be served by first class U.S. mail, postage prepaid, or hand delivery, as appropriate, on the following parties: (a) all persons or entities that have filed proofs of Claim and/or requests for payment of Administrative Claims; (b) all persons or entities listed in the Debtors' schedules of assets, liabilities, executory contracts and unexpired leases, filed from time to time and available on the Debtors' online Docket at http://dm.epiq11.com/Nortel/docket (collectively, the "Schedules"), as holding liquidated, non-contingent and undisputed claims against the Debtors or being party to an executory contract or unexpired lease with the Debtors; (c) any other known holders of Claims against or Interests in

11

the Debtors; (d) counsel for the Committee; (e) counsel for the Bondholder Group; (f) the

Indenture Trustee; (g) the United States Trustee; and (h) the Internal Revenue Service; (i) the

United States Attorney for the District of Delaware; and (j) all other parties in interest that have

filed requests for notice pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases (the

"General Service List").

25.     The Debtors caused a copy of the Proposed Disclosure Statement, with a copy of

the Plan attached as an exhibit thereto, to be served by first class U.S. mail, postage prepaid, or

hand delivery, as appropriate, upon (a) counsel for the Committee, (b) the U.S. Trustee, (c) the

Securities and Exchange Commission, and (d) the General Service List and will provide copies

of the Proposed Disclosure Statement and Proposed Plan to any additional party in interest that

makes a request for those documents in the manner specified in the Disclosure Statement Notice

and Bankruptcy Rule 3017(a).  In addition, the Debtors:  (a) will make copies of the Proposed

Disclosure Statement, the Proposed Plan and this Motion available for parties in interest upon

reasonable e-mail or facsimile request to the Debtors' counsel, and (b) have made copies of the

Proposed Disclosure Statement, the Proposed Plan, the Disclosure Statement Notice and this

Motion available for free download at http://dm.epiq11.com/nortel.

**C.      Disclosure Statement Objection Procedures**

26.     Among other things, the Disclosure Statement Notice identifies the date, time and

place of the Disclosure Statement Hearing; how to obtain copies of the Proposed Plan and

Proposed Disclosure Statement; and the deadline and procedures for asserting objections to the

approval of the Proposed Disclosure Statement.   In particular, the Disclosure Statement Notice

indicates that responses or objections to the Proposed Disclosure Statement, if any, shall:  (a) be

in writing; (b) state the name and address of the objector and its interest in the Debtors' cases; (c)

state, if appropriate, the amount and nature of the objector's Claim or Interest; (d) state the

grounds for the responses or objections and the legal basis therefore; (e) reference with

specificity the text of the Proposed Plan to which the responses or objections are made, and

provide proposed language changes or insertions to the Proposed Plan to resolve the responses or

objections; and (f) be filed with the Court and served on (i) counsel to the Debtor, (ii) counsel to

the Committee, (iii) counsel to the Bondholder Group, and (iv) the U.S. Trustee, so that the

response or objection is **received no later than November 18, 2016 at 4:00 p.m. (Prevailing**

**Eastern Time) (the "Disclosure Statement Objection Deadline").**

27.     The Debtors submit that the foregoing notice and objection procedures provide

adequate notice of the Disclosure Statement Hearing and, accordingly, request that the Court

deem such notice as appropriate and in compliance with Bankruptcy Rule 3017.

## II.     ESTABLISHMENT OF THE RECORD DATE

28.     Bankruptcy Rule 3017(d) provides that, for purposes of determining which

holders of claims or interests shall receive notice of the confirmation hearing and/or who shall be

entitled to vote on the plan, "creditors and equity security holders shall include holders of stock,

bonds, debentures, notes and other securities of record on the date the order approving the

disclosure statement is entered or another date fixed by the court, for cause, after notice and a

hearing." Bankruptcy Rule 3018(a) further provides that "an equity security holder or creditor

whose claim is based on a security of record shall not be entitled to accept or reject a Proposed

Plan unless the equity security holder or creditor is the holder of record of the security on the

date the order approving the disclosure statement is entered or on another date fixed by the court,

for cause, after notice and a hearing."

29.     In accordance with Bankruptcy Rules 3017 and 3018, the Debtors request that this

Court establish November 21, 2016 as the record date (the "Voting Record Date") for purposes

13

of determining which Holders of Claims against or Interests in the Debtors' estates are eligible to

vote on the Proposed Plan and to receive the Confirmation Hearing Notice (as defined below).

Holders of Claims that purchased such Claims after the Voting Record Date or whose purchase

of such Claims was recorded or registered after the Voting Record Date that wish to vote on the

Proposed Plan must arrange with their respective seller(s) to receive a proxy from the record

holder as of the Voting Record Date.

## III.    PROPOSED SOLICITATION PROCEDURES

### A.    General Solicitation Procedures

30.    After the Proposed Disclosure Statement is approved, unless the Court orders

otherwise, Bankruptcy Rule 3017(d) requires the Debtors to provide all creditors and equity

security holders of the Debtors with materials and notices including the Proposed Plan or a court-

approved summary of the Proposed Plan, the Proposed Disclosure Statement, notice of the time

within which acceptances and rejections of the Proposed Plan may be filed, notice of the time

fixed for filing objections to, and the hearing to consider the confirmation of the Proposed Plan,

and to Holders of Claims or Interests entitled to vote on the Proposed Plan, ballots substantially

conforming to the Official Form.

31.    In compliance with Bankruptcy Rule 3017(d), the Debtors propose to distribute

the solicitation materials (collectively, a "Solicitation Package") as provided herein.  The

Debtors request that they be deemed to satisfy their obligations under Bankruptcy Rules 2002(b)

and 3017 with respect to the solicitation of votes and the provision of notice of the hearing on,

and the time for objecting to, confirmation of the Proposed Plan if the following procedures are

utilized (the "Solicitation Procedures"):

> (a)    A notice of approval of the Proposed Disclosure Statement and of
> the date fixed by the Court as the Voting Deadline (as defined herein), and
> the date of the hearing regarding, and the time for filing objections to, the

14

confirmation of the Debtors' Proposed Plan (the "Confirmation Hearing Notice"), substantially in the form annexed hereto as Exhibit B, is to be served by regular mail on or before the date that is five (5) business days after the entry of the order approving the Proposed Disclosure Statement, or as soon as practicable thereafter, upon:  (i) all creditors of the Debtors identified on the Debtors' schedules of assets and liabilities dated on or about April 20, 2009 [D.I 801-807, 810], and any later amendment or supplement thereto (the "Schedules") or in a proof of claim filed in these chapter 11 cases; (ii) all persons known to hold Interests; (iii) the Office of the United States Trustee for the District of Delaware; (iv) the Bank of New York Mellon in its capacity as indenture trustee under the NNC Notes Indenture and NNL Notes Indenture, or any successor thereto, and Law Debenture Trust Company of New York, in its capacity as indenture trustee under the NNCC Bonds Indenture, or any successor thereto (together, the "Indenture Trustees"); (v) the Committee; (vi) the Bondholder Group; (vii) the Securities and Exchange Commission; (viii) the Internal Revenue Service; (ix) the transfer agent(s) and registered holders of any claims against the Debtors arising from public securities; and (x) all known parties to executory contracts that have not been assumed or rejected.

(b)      On or before the date that is five (5) business days after the entry of the order approving the Proposed Disclosure Statement, or as soon as practicable thereafter, or such other date that the Court may direct, to the extent that current versions of such documents have not already been distributed to such persons, the Proposed Disclosure Statement and the Proposed Plan (in either hard copy or in .pdf format) will be served by regular mail upon: (i) for each Debtor, the Holders of Claims in Classes 3A, 3B, and 3C that are entitled to vote pursuant to the Proposed Plan and the relevant provisions of the Bankruptcy Code and the Bankruptcy Rules (the "Voting Creditors"); (ii) the Office of the United States Trustee for the District of Delaware; (iii) the Indenture Trustees;  (iv) the Committee; (v) the Bondholder Group; (vi) the Securities and Exchange Commission; and (vii) any party in interest who requests in writing a copy of such documents.

(c)      On or before the date that is five (5) business days after the entry of the order approving the Proposed Disclosure Statement, or as soon as practicable thereafter, or such other date that the Court may direct, appropriate Ballots, and as applicable, Beneficial Owner Ballots or Master Ballots[8] (each as defined below), voting instructions and a pre-addressed return envelope will be sent to all Voting Creditors.

---

[8]      In accordance with customary practice, the Voting Agent shall distribute copies of Master Ballots to each Nominee after the initial distribution of Solicitation Packages.  The forms of the Master Ballots are attached to this Motion as Exhibit E-2 for the NNCC Bonds Claims and E-4 for the Crossover Bonds Claims (together, the "Master Ballots").

(d)    On or before the date that is five (5) business days after the entry of the order approving the Proposed Disclosure Statement, or as soon as practicable thereafter, or such other date that the Court may direct, a notice of nonvoting status (the "Notice of Non-Voting Status") is served, with the Confirmation Hearing Notice, by regular mail on all Holders of Claims and Interests in Classes 1, 2, 4, 5A and 5B of each Debtor.  Holders of Claims in Classes 1 and 2 of each Debtor will be sent a notice substantially in the form annexed hereto as Exhibit C and Holders of Claims and Interests in Classes 4, 5A and 5B of each Debtor will be sent a notice substantially in the form annexed hereto as Exhibit D.

(e)    The Debtors will post copies of the Proposed Disclosure Statement, the Proposed Plan, and the Confirmation Hearing Notice on the Debtors' case information website at http://dm.epiq11.com/nortel and indicate in the Confirmation Hearing Notice that such materials are available on such website.

(f)    The Debtors will not be required to mail any Solicitation Packages to any individual or entity at an address from which the Proposed Disclosure Statement Hearing Notice was returned by the United States Postal Office as undeliverable unless the Debtors are also provided with a more accurate address by the United States Postal Office.

32.    Notwithstanding Bankruptcy Rule 3017, the Debtors request a waiver of the requirement that the Debtors mail a copy of the Proposed Plan and Proposed Disclosure Statement to all Holders of Claims and Interests in Classes 1, 2, 4, 5A and 5B of each Debtor, which are deemed to accept or to reject the Proposed Plan under sections 1126(f) and (g) of the Bankruptcy Code.  As described above, the Debtors will make the Proposed Plan and Proposed Disclosure Statement available to such Holders, and any other party in interest, at no cost on their case information website: http://dm.epiq11.com/nortel, and the Debtors will disclose that these materials are available on such website in the Confirmation Hearing Notice, which will be distributed to the Holders in Classes 1, 2, 4, 5A and 5B of each Debtor.  Thus, Holders of Claims and Interests deemed to accept or reject the Proposed Plan will have free access to these materials.  Given that these persons will have free access to these materials, and that it would be

an unnecessary and expensive administrative burden on the Debtors to transmit the Proposed

Disclosure Statement and Proposed Plan to Holders of Claims and Interests deemed to accept or

to reject the Proposed Plan, the Debtors respectfully request that the Court waive the requirement

that the Debtors transmit a copy of the Proposed Plan and the Proposed Disclosure Statement to

such persons.

### B.    Solicitation Procedures For Holders Of Bonds

33.    The Debtors propose the following procedures for distributing Solicitation

Packages to the banks, brokers, dealers or other intermediaries, or their mailing agents (each, a

"Nominee") for Beneficial Owners of the Crossover Bonds and NNCC Bonds (together, the

"Bonds").  Epiq Bankruptcy Solutions, LLC (the "Voting Agent")[9] will transmit a reasonably

sufficient number of Solicitation Packages, including beneficial ballots substantially in the form

of the Beneficial Ballots appended hereto in Exhibit E-3 for the NNCC Bonds Claims and E-5

for the Crossover Bonds Claims (together, the "Beneficial Owner Ballots"), to each Nominee, as

appropriate, that is identified by the Voting Agent as a Nominee for Beneficial Owners of the

Bonds as the Voting Record Date.

34.    The Nominees will be instructed to promptly distribute the Solicitation Packages

which will include a Beneficial Owner Ballot, to each Beneficial Owner for voting and the votes

will be obtained in a manner customary in the securities industry for obtaining votes of Bonds

held in "street name" in one of the following two ways:

> (a)    Master Ballots:  A Nominee may obtain the votes of Beneficial
> Owners by forwarding to the Beneficial Owners the applicable unsigned
> Beneficial Owner Ballot, together with the Solicitation Package, a return
> envelope provided by, and addressed to the Nominee and any other
> materials.  Each such Beneficial Owner may then indicate his/her or its

---

[9]    Epiq Bankruptcy Solutions, LLC was appointed as claims, noticing and balloting agent pursuant to the Court's order of January 15, 2009 [D.I. 38] and, consistent with that order, the Debtors propose to utilize the Voting Agent to provide the balloting and solicitation services outlined herein.

vote on the Beneficial Owner Ballot, complete the information requested in the Beneficial Owner Ballot, review the certifications contained in the Beneficial Owner Ballot, execute the Beneficial Owner Ballot, and return the Beneficial Owner Ballot to the Nominee.  After collecting the Ballots, the Nominee shall, in turn, complete the applicable Master Ballot provided to such Nominee by the Voting Agent, and compile the votes and other information from the Beneficial Owner Ballot, execute the Master Ballot, and deliver the Master Ballot to the Voting Agent so that it is received by the Voting Agent before the Voting Deadline.  All Beneficial Owner Ballots returned by Beneficial Owners must be retained by Nominees for inspection for at least one year from the Voting Deadline.

> (b)     <u>Pre-Validated Ballots</u>:  A Nominee may pre-validate a Beneficial Owner Ballot, by: (i) signing the applicable Beneficial Owner Ballot and including the Nominee's DTC Participant number; (ii) indicating on the Beneficial Owner Ballot the account number of the Beneficial Owner, and amount of the securities held by the Nominee for such Beneficial Owner; and then (iii) forwarding such Beneficial Owner Ballot, the Solicitation Package, and a return envelope addressed to the Voting Agent, and any other materials to the Beneficial Owner for voting.  The Beneficial Owner may then complete the information requested in the Ballot, review the certifications contained in the Ballot, and return the Ballot directly to the Voting Agent in the pre-addressed, postage paid envelope included with the Solicitation Package so that it is received by the Voting Agent before the Voting Deadline.  A list of the Beneficial Owners to whom "pre-validated" Ballots were delivered should be maintained by the Nominee for inspection for at least one year from the Voting Deadline.

35.     The Debtors submit this procedure outlined above enables the Debtors to appropriately transmit materials to the Beneficial Owners and afford such Beneficial Owners a fair and reasonable opportunity to vote on the Proposed Plan.

36.     The Debtors respectfully request the Court to enter an Order approving the adequacy of such notice to Beneficial Owners.

**C.**     <u>**Proposed Form of Ballots**</u>

37.     Bankruptcy Rule 3018(c) provides, in relevant part, as follows:

> An acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form.

18

Fed. R. Bankr. P. 3018(c).  All votes must be cast by using the appropriate ballot.

38.     By this Motion, the Debtors seek approval of the forms of Ballots[10] and, when

applicable, the Master Ballots and Beneficial Owner Ballots, intended for the solicitation of

votes by the Classes of Claims entitled to vote under the Proposed Plan.  Attached hereto are the

forms of Ballots for Holders of Allowed Claims[11] in the Classes entitled to vote on the Proposed

Plan including, for each Debtor, Class 3A (General Unsecured Claims); for NNI/NNCC Class

3B (Crossover Bonds Claims); and for NNI/NNCC, NNCALA and Altsystems, Class 3C

(Convenience Claims).  Holders of Class 3A General Unsecured Claims against NNI/NNCC,

NNCALA and Altsystems will receive a Ballot that allows such Holders, through an election on

this Ballot, to choose to have such Claim treated as a Convenience Claim within Class 3C.

Convenience Claims under $25,000 will be allowed at the full amount of the Claim, while

Claims above $25,000 will be allowed at $25,000.  If such holder does not select this option,

such claim will receive the same treatment as an ordinary General Unsecured Claim within Class

3.

39.     The Debtors propose to use a separate form of Ballot, and when applicable,

Master Ballot, for each Class of Impaired Claims entitled to vote under the Proposed Plan.

Separate voting instructions will accompany each form of Ballot and Master Ballot.  The forms

of Ballot and, when applicable, Master Ballot, are attached to this Motion as follows:

---

[10]     The defined terms "Ballot," "Master Ballot" and "Beneficial Owner Ballot" shall include all ancillary and related information and any amendments or supplements thereto necessary for completing the Ballot, Master Ballot or Beneficial Owner Ballot, as appropriate.  The Debtors reserve the right to amend the Ballots, Beneficial Owner Ballots and Master Ballots prior to or at the Disclosure Statement Hearing and to create new Ballots, Beneficial Owner Ballots or Master Ballots substantially in the form of the Ballots, Beneficial Owner Ballots and Master Ballots attached hereto in the event that new Classes of Claims or Interests are created or that existing Classes of Claims or Interests are merged or redefined.

[11]     All such ballots relating to the Plan shall be referred to herein as the "Ballots."  These forms comply with Official Form 14.  The Debtors reserve the right to amend the Ballots and Master Ballots prior to or at the Disclosure Statement Hearing and to create new Ballots or Master Ballots substantially in the form of the Ballots and Master Ballots attached hereto in the event that new classes of Claims or Interests are created or that existing classes of Claims or Interests are merged or redefined.

| Exhibit | Ballot |
|---------|--------|
| E-1 | NNI/NNCC Class 3A (General Unsecured Claims) and 3C (Convenience Claims) |
| E-2 | NNI/NNCC Class 3A (NNCC Bonds Claims) Master Ballot |
| E-3 | NNI/NNCC Class 3A (NNCC Bonds Claims) Beneficial Ballot |
| E-4 | NNI/NNCC Class 3B (Crossover Bonds Claims) Master Ballot |
| E-5 | NNI/NNCC Class 3B (Crossover Bonds Claims) Beneficial Ballot |
| E-6 | NNI/NNCC Class 3B (EDC Claims) |
| F | NNCALA/Altsystems Class 3A (General Unsecured Claims) and 3C (Convenience Claims) |
| G | Other Debtors Class 3A (General Unsecured Claims) |

40.     By this Motion, the Debtors seek approval of the forms of Ballots and, when applicable, the Master Ballots and Beneficial Owner Ballots, intended for the solicitation of votes by the Classes of Claims entitled to vote under the Proposed Plan.  The forms of the Ballots, Master Ballots and Beneficial Owner Ballots comply with Bankruptcy Rule 3018(c) and are based substantially on Official Form No. 14, as modified to address the particular needs of the Debtors' Chapter 11 cases.

**D.     Procedures For Vote Tabulation And Temporary Allowance Of Claims**

i.     Temporary Allowance Of Claims

41.     Section 1126(c) of the Bankruptcy Code provides that:

A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

20

11 U.S.C. § 1126(c). Bankruptcy Rule 3018(a) further provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."

42.     Solely for the purpose of voting to accept or reject the Proposed Plan, and not for purposes of the allowance of, or distribution on account of, any Claim, and without prejudice to the rights of the Debtors in any other context (including, without limitation, a Debtor's right to also move to estimate, reduce, disallow or expunge a claim), the Debtors propose that each Claim within a Class of Claims entitled to vote to accept or reject the Proposed Plan be temporarily allowed in accordance with the following procedures (the "Temporary Allowance Procedures"):

(a)     If a claim is deemed "Allowed" pursuant to an agreement with the Debtors or an order of the Court, such claim shall be allowed for voting purposes in the "Allowed" amount set forth in the Court's order;

(b)     Claims that are listed on the Debtors' Schedules as undisputed, non-contingent and liquidated, for which a proof of Claim has not been filed properly will be temporarily allowed, for voting purposes only, in an amount equal to that listed in the Debtors' Schedules;

(c)     If the Debtors have served an objection or request for estimation as to a Claim at least ten (10) days before the Voting Deadline, such Claim is temporarily disallowed for voting purposes only and not for the purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court before the Voting Deadline; *provided* that Claims that amend previously filed Claims to which the Debtors have objected or requested estimation and which such objection or estimation request remains pending or unresolved also shall be deemed to be subject to a pending objection or request for estimation for purposes of this provision;

(d)     Claims for which a proof of Claim has been timely filed in an amount that is undisputed, non-contingent and liquidated will be temporarily allowed, for voting purposes only, in the amount set forth on the relevant proof of Claim;

(e)     Claims that are listed on the Debtors' Schedules as disputed, contingent or unliquidated and for which no proof of claim has been timely filed shall not be entitled to vote to accept or reject the Proposed Plan unless temporarily allowed by the Court, after notice and a hearing, as described below;

(f)     Claims for which a proof of Claim has been timely filed for unknown or undetermined amounts, or that are wholly contingent, unliquidated or disputed (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Debtor or the Voting Agent), shall be temporarily allowed for one dollar ($1.00) for voting purposes only, and not for purpose of allowance or distribution;

(g)     Holders of Claims in Classes 3A, 3B, and 3C whose claims are subject to these Temporary Allowance Procedures, including those whose Claims have not been formally allowed by the Court and that (1) wish (i) to have their vote counted other than in accordance with the Temporary Allowance Procedures, (ii) to vote a Claim that is listed on the Debtors' Schedules as disputed, contingent or unliquidated or (iii) to have their Claims counted in accordance with a proof of claim filed before the applicable bar date (and not in accordance with the Debtors' Schedules as described in (b) above), and (2) fail to resolve such Claims by mutual consent with the Debtors, shall be required to file a motion with the Court, with evidence in support thereof, seeking temporary allowance of such Claim pursuant to Bankruptcy Rule 3018(a) (a "Rule 3018(a) Motion") **on or before December 15, 2016 at 4:00 p.m. (Prevailing Eastern Time) (the "Rule 3018(a) Motion Deadline")**.  A Rule 3018(a) Motion must be served on the Debtors so as to be received by the Rule 3018(a) Motion Deadline.  With regard to any timely Rule 3018(a) Motion, the Debtors request that the Debtor be permitted to file a response **no later than December 30, 2016 at 4:00 p.m. (Prevailing Eastern Time)**.  The Debtors further request that the Court set January 5, 2017, at a time that is convenient for the Court as the date and time for a hearing regarding timely filed Rule 3018(a) Motions, if any;

(h)     If a Holder of a Claim timely files a Rule 3018(a) Motion, the Debtors shall send to such Holder a Ballot for the appropriate Class, together with the appropriate Solicitation Package, to the address listed in the Rule 3018(a) motion with instructions to submit a completed Ballot so as to be received on or prior to the Voting Deadline, provided that the votes cast by such Ballots shall only be counted if the relevant Rule 3018(a) Motion has been granted; and

(i)     If a Claim is listed on a timely filed proof of claim as contingent, unliquidated, or disputed in part, such Claim is temporarily allowed in the

amount that is liquidated, non-contingent, and undisputed for voting purposes only, and not for purposes of allowance or distribution.

      ii.    <u>Tabulation of Votes</u>

43.      The Debtors propose the following procedures for tabulation of votes for and

against the Proposed Plan (the "<u>Vote Tabulation Procedures</u>"):

      (a)      All votes to accept or reject the Proposed Plan must be cast by completing the appropriate Ballot or Master Ballot. Votes that are cast in any other manner will not be counted;

      (b)      Except as provided for in the Order granting this Motion, for purposes of tabulating votes, the amount of a Claim shall be calculated on the basis of the amount of the Allowed Claim on the Record Date;

      (c)      Delivery of a Ballot or Master to the Voting Agent by facsimile, email, or any other electronic means will not be valid; only original executed Ballots or Master Ballots will be counted;

      (d)      Ballots should not be sent to any of the Debtors, the Debtors' agents (other than the Voting Agent), any administrative agent or indenture trustee (unless specifically instructed to do so), or the Debtors' financial or legal advisors, and, unless received by the Voting Agent, if so sent will not be counted;

      (e)      All Ballots and Master Ballots must be properly completed, executed and ACTUALLY RECEIVED by the Voting Agent on or before 4:00 p.m. (Prevailing Eastern Time) on January 9, 2017 (the "<u>Voting Deadline</u>");

      (f)      Pursuant to section 1126(e) of the Bankruptcy Code, a vote may be disregarded if the Court determines, after notice and a hearing, that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code;

      (g)      A Holder of Claims in more than one Class must use separate Ballots for each Class of Claims;

      (h)      Votes cast by Holders of Claims in each Class under the Proposed Plan will be tabulated separately by Class;

      (i)      Except to the extent determined by the Debtors in their reasonable discretion or as otherwise permitted by the Court, the Debtors will not accept or count any Ballots or Master Ballots received after the Voting Deadline;

(j)    Whenever a voter submits more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly completed Ballot received shall be deemed to reflect the voter's intent and thus supersede any prior Ballots;

(k)    If a Ballot is signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations, or others acting in a fiduciary or representative capacity, each such person should indicate such capacity when signing its Ballot and, if so requested by the Debtor or the Voting Agent, must submit proper evidence satisfactory to the Debtor of its authority to so act;

(l)    The Debtors and/or their agents shall have discretion to determine if a Ballot properly complies with these Vote Tabulation Procedures and the voting instructions accompanying the Ballots and Master Ballots;

(m)    Any entity entitled to vote to accept or reject the Proposed Plan may change its vote before the Voting Deadline by completing and casting a superseding Ballot or Master Ballot so that it is actually received on or before such deadline.

(n)    A creditor may not split their vote(s), they must vote all of their Claims to either to accept the Proposed Plan or to reject the Proposed Plan, or their votes will not be counted;

(o)    If no votes to accept or reject the Proposed Plan are received with respect to a particular Class, such Class is deemed to have voted to accept the Proposed Plan.

(p)    Proofs of Claim filed for $0.00 are not entitled to vote;

(q)    If a proof of claim has been amended by a later filed proof of claim, only the later filed amending Claim will be entitled to vote, regardless of whether the Debtors have objected to such earlier filed Claim;

(r)    Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims (whether against the same or multiple Debtors) shall be provided with only one Solicitation Package and one ballot and be permitted to vote only a single Claim, regardless of whether the Debtors have objected to such duplicate Claims; and

(s)    For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code and based on a reasonable review by the

24

Solicitation Agent, separate Claims held by a single creditor in a particular class shall be aggregated as if such creditor held one Claim against the Debtors in such class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan.

44.     The Debtors further propose the following Ballots not be counted or considered for any purpose in determining whether the Proposed Plan has been accepted or rejected, unless otherwise agreed to by the Debtors:  (i) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant; (ii) any Ballot cast by a person or entity that does not hold a Claim in a Class entitled to vote to accept or reject the Proposed Plan; (iii) any unsigned Ballot; (iv) any Ballot without an original signature; (v) any Ballot (other than a Master Ballot) marked both to accept and reject the Proposed Plan, or not marked to either accept or to reject the Proposed Plan; and (vi) any Ballot transmitted to the Voting Agent by facsimile, electronic mail, or other means not specifically approved by this Court.  None of the Debtors, the Voting Agent or any other person or entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots, nor will any of them incur any liability for failure to provide such notification.

45.     With respect to the tabulation of Master Ballots and Ballots cast by Nominees and Beneficial Owners, the following additional rules shall apply:

>    (a)     For purposes of tabulating votes, each Beneficial Owner will be deemed to have voted the principal amount relating to such security;

>    (b)     Votes cast by Beneficial Owners through a Nominee will be applied against the positions held by such entities as of the Voting Record Date, as evidenced by the record and depository listings;

>    (c)     Votes submitted by a Nominee pursuant to a Master Ballot shall not be counted in excess of the amount held by such Nominee as of the Voting Record Date; provided, however, that any principal amounts may be adjusted by the Voting Agent to reflect the amount of the Claim actually voted, including any prepetition interest;

25

(d)     To the extent that conflicting votes or "overvotes" are submitted by a Nominee pursuant to a Master Ballot, Epiq will attempt to reconcile discrepancies with the Nominees; and

(e)     To the extent that overvotes on a Master Ballot are not reconciled prior to the preparation of the voting report, Epiq will apply the votes to accept and to reject the Proposed Plan in the same proportion as the votes to accept and reject the Proposed Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the Nominee's Voting Record Date position in the Bond.

46.     The Debtors further propose that, subject to any contrary order of the Court and except as otherwise set forth herein, they may waive any defects or irregularities as to any particular Ballot at any time, either before or after Voting Deadline, and any such waivers shall be documented in the vote tabulation certification prepared by the Voting Agent.

## IV.     CONFIRMATION HEARING

47.     Pursuant to Bankruptcy Rule 3017(c)), the Debtors hereby request that this Court enter an order scheduling the hearing on the Confirmation of the Proposed Plan for January 24, 2017 at a time convenient for the Court (the "Confirmation Hearing"), and that the Court establish January 9, 2017 at 4:00 p.m. (Prevailing Eastern Time) as the last date and time for filing and serving objections to confirmation of the Proposed Plan (the "Confirmation Objection Deadline").

48.     Bankruptcy Rule 2002(b) provides that the Court shall hold a hearing on not less than 28-days' notice by mail to creditors, equity security holders and certain other parties in interest of such hearing to consider approval of the time fixed for filing objections to and the hearing to consider the confirmation of a chapter 11 plan.  In accordance with Bankruptcy Rules 2002 and 3017(d) and as described above, the Debtors propose to distribute the Confirmation Hearing Notice to all creditors and interest holders as part of the Solicitation Package, setting forth (i) the date of approval of the Proposed Disclosure Statement, (ii) the Record Date, (iii) the

26

Voting Deadline, (iv) the Confirmation Objection Deadline, and (v) the time, date and place for

the Confirmation Hearing.  Because it is included in the Solicitation Package, such notice will be

sent on or prior to the date that is twenty-eight (28) days prior to the Confirmation Objection

Deadline, as required by Bankruptcy Rule 2002(b).

49.    Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it

finds that notice by mail is impracticable or that it is desirable to supplement the notice."  Fed. R.

Bankr. P. 2002(l).  As discussed above, in addition to mailing the Confirmation Hearing Notice,

the Debtors propose to publish the Confirmation Hearing Notice, not less than twenty-eight (28)

days prior to the Confirmation Hearing, once in each of the *Wall Street Journal* (National

Edition) and *The Globe and Mail*.  Additionally, the Debtors will publish the Confirmation

Hearing Notice electronically at http://dm.epiq11.com/nortel.

50.    By this Motion, the Debtors also specifically request approval of the provision in

the Confirmation Hearing Notice requiring that responses or objections, if any, to confirmation

of the Proposed Plan, including the assumption and/or assignment of certain executory contracts

and unexpired leases under the Proposed Plan, the establishment of cure amounts related to any

contracts or leases to be assumed under the Proposed Plan as identified on Exhibit C to the

Proposed Plan:  (a) shall be in writing; (b) shall state the name and address of the objector and its

interest in the Debtors' cases; (c) shall state, if appropriate, the amount and nature of the

objector's Claim or Interest; (d) shall state the grounds for the responses or objections and the

legal basis therefore; (e) shall reference with specificity the text of the Proposed Plan to which

the responses or objections are made, and shall provide proposed language changes or insertions

to the Proposed Plan to resolve the responses or objections; and (f) shall be filed, together with

proof of service, with the Clerk of the United States Bankruptcy Court, District of Delaware, 824

North Market Street, 3rd Floor, Wilmington, Delaware 19801, with one copy to chambers, such

that the responses or objections are actually received no later than the Confirmation Objection

Deadline by (i) counsel to the Debtors, (ii) counsel to the Committee, and (iii) the U.S. Trustee,

at the following addresses:

Counsel for the Debtors

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
(212) 225-3999 (facsimile)
Attention:  James L. Bromley, Esq.
                    Lisa M. Schweitzer, Esq.

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, 18th Floor
P.O. Box 1347
Wilmington, Delaware 19899
(302) 658-3989 (facsimile)
Attention:  Derek C. Abbott, Esq.
                    Andrew R. Remming, Esq.

Counsel for the Creditors' Committee

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
(212) 872-1002 (facsimile)
Attention:  Fred S. Hodara, Esq.
                    David H. Botter, Esq.
                    Brad M. Kahn, Esq.

Whiteford, Taylor and Preston LLP
The Renaissance Centre, Suite 500
405 North King Street
Wilmington, Delaware 19801
(302) 357-3288 (facsimile)
Attention:  Christopher M. Samis, Esq.

Counsel for the Bondholder Group

Milbank, Tweed, Hadley & McCloy
LLP
28 Liberty Street
New York, New York 10005
(212) 530-5219 (facsimile)
Attention:  Albert A. Pisa, Esq.

United States Trustee

Office of the United States Trustee
J. Caleb Boggs Federal Building,
Room 2207, 844 N. King Street,
Wilmington, DE 19801
Attention: Mark S. Kenney, Esq.

51.    The Debtors further request approval of the provision in the Confirmation Hearing Notice that if a response or objection is not timely filed and served before the Confirmation Objection Deadline, the responding or objecting party shall be barred from objecting to confirmation of the Proposed Plan and be precluded from being heard at the Confirmation Hearing.

## CONCLUSION

52.    The Debtors believe that approval of the foregoing notice, voting and balloting procedures, and the Proposed Disclosure Statement is in the best interest of the Debtors and their estates.  Obtaining such prior approval will minimize the risk that voting, balloting procedures and voting tabulations will be subject to challenge at the Confirmation Hearing, and will provide a sound framework for the solicitation process.  Accordingly, the Debtors ask this Court to approve these procedures and the attached forms of Ballots and Master Ballots and to declare that such procedures, if followed, constitute compliance with the plan solicitation provisions of the Bankruptcy Code and Bankruptcy Rules.

## NOTICE

53.    Notice of the Motion has been given via first class mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## NO PRIOR REQUEST

54.    No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  November 4, 2016  
         Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)  
Lisa M. Schweitzer (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone:  (212) 225-2000  
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*  
Derek C. Abbott (No. 3376)  
Andrew R. Remming (No. 5120)  
Tamara K. Minott (No. 5643)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone:  (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors*  
*and Debtors in Possession*