IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS INC., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | | **Related Docket Nos.: 17348, 17350** |

**OBJECTION OF PENSION BENEFIT GUARANTY CORPORATION
TO THE PROPOSED DISCLOSURE STATEMENT FOR THE
FIRST AMENDED JOINT PLAN OF REORGANIZATION OF
NORTEL NETWORKS INC. AND CERTAIN OF ITS AFFILIATED DEBTORS**

The Pension Benefit Guaranty Corporation ("PBGC") hereby objects (this "Objection") to the relief sought in Debtors' Motion for Entry of an Order (i) Approving Adequacy of Information Contained in Disclosure Statement, (ii) Establishing Voting Record Date, (iii) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan, and (iv) Scheduling Confirmation Hearing Date and Establishing Notice and Objection Procedures [D.I. 17350] (the "Motion"), and to approval of the Debtors' *Proposed Disclosure Statement for the First Amended Joint Plan of Reorganization of Nortel Networks Inc. and Certain of Its Affiliated Debtors* [D.I. 17348] (the "Disclosure Statement").[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International, Inc. (8667).

[2] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the Motion, the Disclosure Statement or the *First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of Its Affiliated Debtors* [D.I. 17347] (the "Plan") , as applicable.

**PRELIMINARY STATEMENT**

The Disclosure Statement should not be approved. According to its terms, the Plan provides for substantive consolidation of Debtors Nortel Networks Inc. ("NNI") and Nortel Networks Capital Corporation ("NNCC").[3] This proposed substantive consolidation of two of seventeen Debtors is "for all purposes associated with confirmation of the Plan (including voting) and the effectiveness of the Plan." *Id*. However, the Disclosure Statement fails to provide "adequate information", as defined under 11 U.S.C. § 1125(a), about the purpose behind substantively consolidating those two entities, its effect on the PBGC Claims (as defined herein) and other claims, including the NNCC Bonds Claims, and the significant risks associated with seeking this extraordinary remedy.

As the Debtors have observed elsewhere, the PBGC Claims are "among the largest against the Debtors."[4] Thus, the consolidation of NNI and NNCC will have a material impact on PBGC's and other claims. It is incumbent upon the Debtors to quantify specifically what the impact will be, so that affected creditors will have "adequate information" to assess the Plan.

The Debtors must also provide their creditors with a clear explanation of why they are seeking what the Third Circuit called the "extraordinary" and "last-resort remedy" of substantive consolidation,[5] and why it is limited to NNI and NNCC only. This Court's own conclusion that

---

[3]   Disclosure Statement, I.B.1, at 6.

[4]   Debtors' Objection to Proofs of Claim Filed by Pension Benefit Guaranty Corporation [D.I. 17325] at 5.

[5]   *In re Owens Corning*, 491 F.3d 195, 199, 200 (3d Cir. 2007).

"substantive consolidation cannot be applied in this case,"[6] is further reason to insist that the Debtors be more transparent.

Finally, the Disclosure Statement should be amended to include substantive consolidation among the enumerated risk factors to be considered regarding the Plan and its implementation.

PBGC does not ask the Court to decide at this time whether substantive consolidation as proposed by the Debtors is permissible under the Bankruptcy Code. That is an issue for another day. Rather, PBGC asks that the Debtors be required to amend their Disclosure Statement: (i) to quantify the financial effect it will have on PBGC and other affected creditors; (ii) to articulate their rationale for requesting substantive consolidation of NNI and NNCC, and (iii) to describe in plain terms the downsides of proceeding with a plan so predicated, given the risk that it cannot be confirmed.

## STATUTORY BACKGROUND

1. PBGC is a wholly owned United States government corporation that administers the nation's termination insurance program for defined benefit pension plans under Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").[7] If a pension plan covered by the insurance program terminates and lacks sufficient assets to pay all promised benefits, PBGC becomes its statutory trustee and pays benefits subject to the statutory limitations in 29 U.S.C. § 1322(b).[8]

2. PBGC is required by ERISA to protect the interests of nearly 40 million workers and retirees covered by such plans, as well as the plan sponsors who support the program with

---

[6] Allocation Trial Opinion [D.I. 15544], at 104.

[7] 29 U.S.C. §§ 1301-1461 (2012 & Supp. II 2014).

[8] *See* 29 U.S.C. §§ 1322, 1341(c), 1342, 1361; *PBGC v. LTV Corp.*, 496 U.S. 633, 637-638 (1990); *Nachman Corp. v. PBGC*, 446 U.S. 359, 375 (1980).

their premiums.[9] PBGC is essentially self-financing, and receives no funds from general tax revenues.[10]

3. Any person who is, on the plan termination date, a contributing sponsor or a member of a contributing sponsor's controlled group may be liable to PBGC for various amounts prescribed by ERISA. Of relevance here are two claims. One is PBGC's claim for the unfunded benefit liabilities of the pension plan.[11] This amount is the shortfall between the plan's benefit liabilities and the plan's assets on its termination date. The other is PBGC's claim for termination premiums of $1,250 per pension plan participant per year for three years.[12] All liabilities of the plan sponsor and controlled group members with regard to the pension plan are joint and several.[13]

## FACTS

4. On January 14, 2009, the Debtors filed bankruptcy petitions under Chapter 11, and other Nortel affiliates brought insolvency proceedings in Canada and Europe. PBGC was subsequently appointed to, and continues to serve on, the Official Committee of Unsecured Creditors.

5. On the petition date, NNI was a contributing sponsor of the Nortel Networks Retirement Income Plan ("Pension Plan"), a plan covered by the Title IV termination insurance program.

---

[9] *See* 29 U.S.C. § 1302(a); PBGC Ann. Rep. (2016) at 25, http://www.pbgc.gove/documents/2016-Annual-Report.pdf.

[10] *See id.*

[11] 29 U.S.C. § 1362(b)(1)(A).

[12] See 29 U.S.C. § 1306(a)(7)(A).

[13] *See* 29 U.S.C. §§ 1307(e)(2), 1362(a).

6. Early in the proceedings, various Nortel Debtor entities agreed to joint sales of their assets. These sales occurred in a number of transactions, resulting in the Sale Proceeds of approximately $7.3 billion.

7. In July 2009, PBGC filed a complaint in the United States District Court for the Middle District of Tennessee seeking to terminate the underfunded Pension Plan, because it would be unable to pay benefits when due.[14] The litigation ended by an agreement between PBGC and the Pension Plan administrator that terminated the Pension Plan, effective July 17, 2009, and named PBGC as the Pension Plan's statutory trustee.[15] At termination, the Pension Plan had approximately 22,000 participants, to whom PBGC will pay lifetime benefits.

8. On September 29, 2009, PBGC filed proofs of claim, asserting joint-and-several liability against each of the Debtors.[16] As amended on July 7, 2014, the PBGC Claims assert total liability of approximately $708 million. For purposes of this discussion, the PBGC Claims consist of the following: (a) unfunded benefit liabilities: approximately $625 million, and (b) termination premium: approximately $83 million.

9. After completion of the joint sales, disagreement over how to allocate the Sale Proceeds among the U.S., Canadian, and EMEA estates led to the Allocation Dispute, and eventually a trial. On May 12, 2015, the Court issued the Allocation Decision, adopting a "modified pro rata" allocation.[17]

---

[14] Case No. 09-cv-00657; Bankr. D.I. 1313, ¶ 12; 29 U.S.C. § 1342.

[15] 29 U.S.C. §§ 1301(a)(1), 1342(b)(3); Bankr. D.I. 1313, ¶ 12; Bankr. D.I. 1313-3, ¶ 2; Bankr. D.I. 1406; Bankr. D.I. 1639, ¶ 10.

[16] Bankr. D.I. 1639, ¶ 11.

[17] D.I. 15544.

5

10. A total of twelve parties filed appeals or cross-appeals to the district court.[18] In its briefs to the district court, PBGC joined in key arguments advanced by the Debtors and others in appealing the Allocation Decision. After the case was briefed and argued, the district court certified it to the Third Circuit. The Third Circuit authorized a direct appeal, which remains pending.[19]

11. The Debtors, on October 12, 2016, filed their Notice of Execution of Settlement and Plans Support Agreement [D.I. 17249].

12. On October 12, 2016, the Debtors filed their Motion for an Order Authorizing Entry into Canadian Escrow Agreement to Facilitate Global Settlement ("Escrow Motion") [D.I. 17250]. The Debtors declared that the Settlement and Plans Support Agreement ("SPSA") "provides terms and conditions for the full and final settlement of the Allocation Dispute," and characterized the SPSA as a "global" settlement.[20]

13. In a response filed on October 18, 2016 [D.I. 17270], PBGC did not oppose the specific relief requested by the Escrow Motion. Instead, it brought to this Court's attention the Debtors' omission of any reference to PBGC, to PBGC's status as a non-signatory to the SPSA, and to PBGC's separate appeal still pending. PBGC also flagged the issue of substantive consolidation of NNCC and NNI, a condition of the SPSA not mentioned by the Debtors in the Escrow Motion.

14. On November 4, 2016, the Debtors filed the Disclosure Statement and the Plan. The Plan, in accordance with the SPSA, calls for substantive consolidation of NNI and NNCC.[21]

---

[18]   Case No. 15-624.

[19]   Case No. 16-3444.

[20]   Motion at 8; *Id.* at 1, 12

[21]   Plan, §§ 3.2 and 6.2.

## APPLICABLE LEGAL STANDARD

15. The primary purpose of a disclosure statement is to provide creditors with information necessary to understand and accept, or reject, the proposed plan of reorganization. A disclosure statement must contain "adequate information," or "information of a kind, and in sufficient detail . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan[.]"[22] At minimum, a "disclosure statement should provide the . . . creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distributions."[23] In determining whether a disclosure statement contains adequate information, the court must consider "the complexity of the case, the benefit of additional information to creditors . . . and the cost of providing additional information."[24]

16. The "adequate information" requirement is designed to help creditors in their negotiations with debtors over the plan.[25] To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan.[26] Although the adequacy of the disclosure is determined on a case-by-case basis, the disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives . . . ."[27]

---

[22]  11 U.S.C. § 1125(a)(1).

[23]  *In re Radco Props., Inc.*, 402 B.R. 666, 683 (Bankr. E.D.N.C. 2009) (citations omitted).

[24]  11 U.S.C. § 1125(a)(1).

[25]  *See Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94 (3d Cir. 1988).

[26]  *See In re McLean Indus.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).

[27]  *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

**ARGUMENT**

17.  The Disclosure Statement should not be approved, because it fails to provide adequate information about the proposed substantive consolidation of NNI and NNCC.  At minimum, the Disclosure Statement should (i) set forth the Debtors' estimate of the effect of substantive consolidation on the PBGC Claims, and the impact (positive or negative) on the claims of any other creditors, including the NNCC Bonds Claims; (ii) provide the rationale for why substantive consolidation is being sought for NNI and NNCC only; and (iii) detail the risks of seeking substantive consolidation.  This information is necessary for creditors to make an informed decision about whether to accept or reject the Plan.

18.  Substantive consolidation is an "extraordinary" and "last-resort remedy."[28]  In the words of *Owens Corning*:

> It "treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities . . . .  The result is that claims of creditors against separate debtors morph to claims against the consolidated survivor."  Consolidation restructures (and thus revalues) rights of creditors and *for certain creditors this may result in significantly less recovery*.[29]

The Disclosure Statement must explain that the courts permit substantive consolidation only in extraordinary situations and as a last-resort remedy.  It should lay out the difficult factors the Third Circuit requires to approve substantive consolidation.

19.  Substantive consolidation will materially impact PBGC's recovery on the PBGC Claims.  As stated above, PBGC asserts joint-and-several claims under ERISA totaling approximately $708 million against NNI and each member of NNI's controlled group, including

---

[28]  *Owens Corning*, 419 F.3d at 199, 200.

[29]  *Id*. at 205 (citation omitted) (emphasis added).

NNCC.  Substantive consolidation of NNI and NNCC will eliminate PBGC's ability under ERISA to obtain separate recoveries against each of these Debtors.

20. The Disclosure Statement provides no information on what the effect will be on the PBGC Claims of denying PBGC a separate recovery against NNCC.  "Adequate information" requires the Debtors to quantify the impact of substantive consolidation on the PBGC Claims.  At the same time, upon information and belief, the NNCC Bonds Claims will benefit significantly from substantive consolidation, by virtue of being able to recover from the combined estates of NNI and NNCC, instead of NNCC alone.  The Disclosure Statement should set forth the extent to which substantive consolidation will enhance recovery on the NNCC Bonds Claims, at the expense of PBGC.  It should discuss the effect, if any, on other significant creditors.

21. The Disclosure Statement must also explain in plain terms the reason for seeking substantive consolidation of NNI and NNCC only.  As this Court is well aware:

> what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they disregarded separateness so significantly that their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors.[30]

The only rationale given in the Disclosure Statement for substantive consolidation is that it "is a significant component of the SPSA and is therefore a key component of the global resolution of the insolvency proceedings of the Debtors and the Debtors' affiliates."[31]  This is not "adequate information."

---

[30] *Owens Corning*, 419 F.3d at 211.

[31] Disclosure Statement, IV.B.

9

22. The Debtors' support for substantive consolidation rings hollow after their previous insistence in the district court that the stringent factual predicates were absent: "Unless the strict requirement for substantive consolidation under *Owens Corning* were met—and the Bankruptcy Court found they were not—separate ownership interests remain separate in bankruptcy."[32] More transparency from the Debtors is in order.

23. The Debtors also should warn creditors about the possibility that substantive consolidation will not be permitted here, if this Court were to hold that the *Owens Corning* standards are not satisfied. The Disclosure Statement should be amended to include substantive consolidation among the enumerated risk factors to be considered regarding the Plan and its implementation. This is particularly so where this Court has determined: "The record of Nortel's operations does not satisfy the legal and factual requirements for substantive consolidation."[33]

24. The Disclosure Statement should state that PBGC has expressed its intent to object to the proposed liquidating plan of reorganization on the grounds that the requirements for substantive consolidation have not been met. Otherwise, creditors cannot adequately determine the significance of the risk presented by substantive consolidation of NNI and NNCC.

25. In determining whether a disclosure statement contains adequate information, the court must consider "the complexity of the case, the benefit of additional information to creditors . . . and the cost of providing additional information."[34] The Debtors' bankruptcy cases are extremely complex. Therefore, circumstances warrant sufficient information and explanation of all factors that could potentially affect the feasibility of the Plan. Disclosure of additional

---

[32] Reply Brief of Debtors-Appellants Nortel Networks Inc. [Dist. D.I. 67], at 22.
[33] Allocation Decision at 104.
[34] 11 U.S.C. § 1125(a)(1).

information on the purpose, effect, and risks of substantive consolidation would materially benefit all creditors in making an informed decision about whether to accept or reject the Plan. Without the information, they lack the ability to make an informed decision. Upon information and belief, the cost of providing that information, in proportion to the size of this case, would be negligible for the Debtors.

## CONCLUSION

26. The Court should sustain this Objection, and disapprove the Disclosure Statement. Any adequate Disclosure Statement must include adequate information concerning (i) the financial impact of substantive consolidation on the PBGC Claims and claims of other affected creditors, including the NNCC Bonds Claims, (ii) the rationale for why substantive consolidation is being sought, and for NNI and NNCC only, and (iii) the risks to the Debtors' estates of seeking substantive consolidation, including the difficult legal standard to meet and PBGC's expressed opposition.

Dated: November 18, 2016               Respectfully Submitted,

/s/ Vicente Matias Murrell
ISRAEL GOLDOWITZ
Chief Counsel
CHARLES L. FINKE
Deputy Chief Counsel
PAULA J. CONNELLY
GARTH D. WILSON
Assistant Chief Counsels
ELISABETH B. FRY
MELISSA M. HARCLERODE
VICENTE MATIAS MURRELL
Attorney
(MD Bar No. 9806240098)
MARC S. PFEUFFER
SIMON J. TORRES
Attorneys

PENSION BENEFIT GUARANTY
CORPORATION
Office of the Chief Counsel
1200 K Street, N.W., Suite 340
Washington, D.C. 20005-4026
Telephone: (202) 326-4020, ext. 3580
Facsimile: (202) 326-4112

SARAH L. REID
ERIC R. WILSON
BENJAMIN D. FEDER
GILBERT R. SAYDAH JR.
(DE Bar No. 4304)

KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897