# EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## (ALEXANDRIA)

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| US AIRWAYS GROUP, INC. et al., | ) | Case No. 02-83984-SSM |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### THE PENSION BENEFIT GUARANTY CORPORATION'S MOTION TO QUASH OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

The Pension Benefit Guaranty Corporation ("PBGC") respectfully moves the Court

pursuant to Federal Bankruptcy Rule 9016 and Fed. R. Civ. P. 45(c)(3) to quash the September

15, 2003 subpoena *duces tecum* and the September 26, 2003 subpoena issued by U.S. Airways

Group, Inc., *et. al*, to the American Council of Life Insurers ("ACLI") to the extent the

subpoenas seek the identity of or information leading to the identity of respondents to the Survey

of Annuity Prices on the grounds that such information constitutes trade secrets or confidential

commercial information and/or is privileged.  Alternatively, PBGC moves pursuant to Federal

Bankruptcy Rule 7026, 9018, Bankruptcy Code §§ 107(b), 105(a), and Fed. R. Civ. P. 26(c) for a

protective order preventing the disclosure of the identity of or information leading to the identity

of respondents to the Survey of Annuity Prices on the same grounds.  This motion is supported

by the Declaration of Steven A. Kandarian, Declaration of Marc A. Ness and Affidavit of Gary

Hughes, as well as a memorandum and exhibits contemporaneously filed herewith.

### HEARING REQUESTED

Dated:  October 6, 2003

/s/ Susan E. Birenbaum
JAMES J. KEIGHTLEY
General Counsel
WILLIAM G. BEYER
Deputy General Counsel
SUSAN E. BIRENBAUM
Assistant General Counsel
JEAN MARIE BREEN
JOSEPH R. HOUSE
ROGER REIERSEN
ROBERT SIDMAN
Attorneys
Office of the General Counsel
Pension Benefit Guaranty Corporation
1200 K Street N.W., Suite 340
Washington, D.C.  20005
Phone: (202) 326-4020 ext. 3400
FAX: (202) 326-4112
E-mail: birenbaum.susan@pbgc.gov,
efile@pbgc.gov

Of Counsel:
RAYMOND C. FAY
Bell, Boyd & Lloyd
1615 L Street, N.W.
Suite 1200

Washington, D.C.  20036
(202) 466-6300

Attorneys for the Pension Benefit Guaranty
Corporation

### Certification of Good Faith Effort to Resolve Discovery Dispute

Pursuant to Fed. R. Bankr. P. 7026, Fed. R. Civ. P. 26(c), and L.R. 7026-1(H), the

undersigned counsel certifies that she conferred with Janet Dhillion of Skadden Arps, counsel for

the Reorganized Debtors, by telephone on September 30, 2003 in a good faith effort to resolve

the matters in controversy covered by this motion.

/s/ Susan Birenbaum
Susan Birenbaum

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## (ALEXANDRIA)

|  |  |  |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **US AIRWAYS GROUP, INC. et al.,** | ) | **Case No. 02-83984-SSM** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |
| | ) | |

### THE PENSION BENEFIT GUARANTY CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

The Pension Benefit Guaranty Corporation ("PBGC") respectfully moves the Court pursuant to Federal Bankruptcy Rule 9016 and Fed. R. Civ. P. 45(c)(3) to quash the September 15, 2003 subpoena *duces tecum* and the September 26, 2003 subpoena issued by U.S. Airways Group, Inc., *et al.*, to the American Council of Life Insurers ("ACLI") to the extent the subpoenas seek the identity of or information leading to the identity of respondents to the Survey of Annuity Prices (the "Survey") on the grounds that such information constitutes trade secrets or confidential commercial information and/or is privileged. Alternatively, PBGC moves pursuant to Federal Bankruptcy Rule 7026, 9018, Bankruptcy Code §§ 107(b), 105(a) and Fed. R. Civ. P. 26(c) for a protective order preventing the disclosure of the same confidential and/or privileged information.

PBGC seeks this Court's protection in order to keep confidential and privileged the identities of annuity providers who participate in the Survey. Almost 28 years ago, PBGC asked ACLI to conduct a double blind voluntary survey on annuity prices. For over a quarter of a century, PBGC has used the results derived from the Survey in its regulation for valuing benefit liabilities in all underfunded pension plans that terminate. *See* 29 C.F.R. Part 4044 (the

"Valuation Regulation.") Disclosing the identities of the Survey participants, from any source, will have a chilling effect that could jeopardize the annuity providers' continued voluntary participation in the Survey. In turn, the continued viability of the regulation itself could be at risk. In fact, the United States General Accounting Office has reported to Congress that this Survey is the only way to get accurate annuity pricing information. *Process Needed to Monitor the Mandated Interest Rate for Pension Calculations*, GAO Rep. to Congressional Requestors, GAO-03-313 at 31, 2003 WL 687114 (Feb. 27, 2003) ("To the extent that policymakers continue to want the interest rate tied to group annuity purchase rates, the PBGC interest rate factors have the most direct connection to the group annuity market. Other than the survey conducted for PBGC, no mechanism exists to collect information on actual group annuity purchase rates.")

In discovery, PBGC has already disclosed the information requested by the Reorganized Debtors relating to the Survey, except for the identifying codes -- which can only be unlocked by ACLI, not PBGC. PBGC's disclosure of the confidential redacted Survey forms was done in the spirit of compromise, pursuant to section 2 (vii) of the September 16, 2003 Stipulation and Protective Order approved by this Court. Additionally, in response to the Reorganized Debtors' 30(b)(6) deposition notice, PBGC has agreed to make witnesses available to testify on the Survey.

By improperly attempting to obtain the identities of the Survey participants, the Reorganized Debtors are jeopardizing the continued existence of the Survey, and with it, the way that the PBGC currently carries out its implementing regulations. This Court should not allow the Reorganized Debtors to pierce the shield of confidentiality that is so critical to the Survey participants' continued willingness to provide PBGC with their highly sensitive annuity pricing information. Piercing this shield will put PBGC's Valuation Regulation at risk.

-The Reorganized Debtors' discovery request is improper for the following reasons: (1) the Bankruptcy Code, the Bankruptcy Rules, and the Federal Rules of Civil Procedure all protect the identities of the Survey participants from disclosure, (2) the Reorganized Debtors may not challenge the propriety of 29 C.F.R. § 4044 using information that was not before the agency such as the identities of the Survey participants, and (3) the identities of the Survey respondents must be withheld pursuant to the Law Enforcement Privilege.

## I.    FACTS

PBGC is a wholly-owned United States government corporation, created under Title IV of ERISA. 29 U.S.C. § 1302(a). PBGC administers the federal insurance program for defined benefit plans under Title IV of ERISA. Subject to statutory limits, PBGC guarantees pension benefits when a defined benefit pension plan terminates. 29 U.S.C. § 1322. When, as here, a plan terminates without sufficient assets to pay benefits, PBGC typically becomes trustee of the plan, takes over the plans assets and liabilities, and pays guaranteed benefits to plan participants and their surviving beneficiaries. 29 U.S.C. §§1322, 1342, 1344, 1361.

ERISA directs PBGC to prescribe the assumptions for valuing benefit liabilities. 29 U.S.C.§ 1301(a)(18). Pursuant to this statutory directive, PBGC promulgated a regulation setting out the assumptions for determining the value of the benefit liabilities PBGC must pay and the amount of a terminated pension plan's unfunded benefit liabilities. An employer and its controlled group are jointly and severally liable to PBGC for the amount of a pension plan's unfunded benefit liabilities. 29 U.S.C. § 1362 (a),(b). In implementing the regulation 28 years ago, PBGC decided that the best method for determining the interest factors to use in this calculation would be to use those that, when combined with PBGC's mortality assumptions, "are in line with the private sector group annuity prices." Valuation of Plan Benefits, Proposed Rule,

Background, 58 F.R. 5128, 5128 (Jan. 19, 1993); *see also* Interim Regulation on Valuation of

Plan Benefits, 41 F.R. 48484, 48485 (Nov. 3, 1976)("The initial interest rates used are derived

from annuity price data obtained by PBGC from the private insurance industry"). The regulation

seeks to "select an interest rate (or rates, normally no more than three) which, when combined

with the PBGC mortality table ... will accurately approximate the cost of private sector group

annuity contracts." 58 F.R. 5128. To accomplish this goal, PBGC "examin[es] a survey of

private sector annuity prices, using those prices as a starting point" to select a valuation interest

rate or rates. *Id.* The "survey" to which the regulation refers is the Annuity Price Survey at issue

here.

      The Annuity Price Survey questionnaire is designed by PBGC. In order to conduct the

Survey, PBGC forwards blank Survey questionnaires to ACLI, and ACLI mails the Survey to

various annuity providers. Declaration of Marc A. Ness In Support of PBGC's Motion for a

Protective Order Regarding Survey of Annuity Prices ("Ness. Decl.") ¶ 5. The list of companies

to whom the Survey is sent is known only to ACLI; PBGC never learns the identities of the

companies who participate in the Survey. *Id.*; Affidavit of Gary Hughes ¶ 3. When the Survey

is completed, the respondents send their pricing information to ACLI in sealed coded envelopes

to conceal their identity. Ness Decl. ¶ 5. ACLI then forwards these sealed, unopened envelopes

to PBGC without knowledge of their contents. *Id.*

      The Survey responses show what annuity providers in the marketplace use as prices for

both immediate and deferred annuities. This information is highly confidential and

competitively sensitive because it is the essence of an annuity provider's business to accurately

calculate its pricing. Participation in the Survey is encouraged through explicit guarantees of

confidentiality by PBGC to responding companies; each Survey form specifically advises

4

responding companies that "The ACLI will not disclose to the PBGC the identity of the

insurance company responding to this Survey. The PBGC regards the information gathered

through the Survey as confidential under 5 U.S.C. § 552(b) and 29 CFR Part 4901." *See* Exhibit

1 (Redacted Survey Form -- filed under seal pursuant to the September 16, 2003 Stipulation and

Protective Order, ¶ 5); Affidavit of Gary Hughes ¶ 4.

Since participation in this blind Survey is entirely voluntary, if disclosure is mandated, a

"chilling effect" most likely will result. Ness Decl., ¶ 7; Affidavit of Gary Hughes ¶ 5. Annuity

providers will cease to voluntarily provide this information, Affidavit of Gary Hughes ¶ 5, and

PBGC will be left without a viable way to develop its discount rates used to calculate unfunded

benefit liabilities for plan terminations. Ness Decl. ¶¶ 7, 9.

On September 12, 2003, in the spirit of compromise, PBGC produced redacted copies of

the completed Survey forms, with the identifying codes of the respondents removed. These

documents were produced pursuant to the terms of the September 16, 2003 Stipulation and

Protective Order, As made explicit by the parties and the Court:

> The production of [redacted] discovery under Paragraph 1 above by the PBGC
> does not constitute a waiver of any objection by the PBGC or any third party as to
> any additional discovery responses or productions relating to the annuity pricing
> Surveys or PBGC's regulatory process relating to such Surveys, or the
> Reorganized Debtors' right to dispute and oppose any such objections.

September 16, 2003 Stipulation and Protective Order at ¶2(vii)(2). Hence, PBGC has properly

preserved its objections to the Reorganized Debtor's subpoena seeking the identity and

identifying information for the Survey respondents.

On September 22, 2003, the Reorganized Debtors served ACLI with a subpoena *duces*

*tecum* asking for information which could lead to the identities of Survey participants. *See*

Exhibit 2 (Reorganized Debtor's September 15, 2003 subpoena duces tecum to ACLI). Pursuant

to the procedures outlined in the Stipulation and Protective Order dated September 16, 2003,

notice of the subpoena was provided on September 15, 2003. On September 26, 2003 the

Reorganized Debtors served an additional subpoena on ACLI without giving proper notice to

PBGC as required by paragraph 2(vii)(2). *See* Exhibit 3 (Reorganized Debtor's September 26,

2003 deposition subpoena to ACLI). Further, according to the Protective Order, "[r]egardless of

whether any such motion is filed, a third party's production of documents responsive to such

subpoena will be due 20 days after the Reorganized Debtors provide notice of such subpoena,

unless otherwise ordered by the Court."

## II.     ARGUMENT

### A.     Standard for Motion to Quash

"On timely motion, the court by which a subpoena was issued *shall* quash or modify the

subpoena if it . . . (iii) requires disclosure of privileged or other protected matter and no

exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)[1] (emphasis added); *see also* Fed. R.

Civ. P. 26(b)(1) (A party may only "obtain discovery regarding any matter, *not privileged*, that is

relevant to the claim or defense of any party.") (emphasis added); Fed. R. Bankr. P. 7026.

Similarly, "[i]f a subpoena (i) requires disclosure of a trade secret or other confidential research,

development, or commercial information . . . the court may, to protect a person subject to or

*affected* by the subpoena, quash or modify the subpoena." Fed. R. Civ. P. 45(c)(3)(B) (emphasis

added).[2]

---

[1]     Rule 45 is made applicable to Bankruptcy proceedings pursuant to Fed. R. Bankr. P. 9016.

[2]     PBGC has standing to quash the Reorganized Debtors' two subpoenas, or in the alternative,
move to protect the Survey participants identities pursuant to the September 16, 2003
Stipulation approved by this Court which states: "If the Reorganized Debtors, PBGC and/or
any third party, as appropriate, cannot reach agreement, then the PBGC (and third party, as
appropriate) may oppose such a motion to compel and/or seek a protective order." Order ¶
2(vii)(2).

**B.    The Bankruptcy Code, The Bankruptcy Rules, And The Federal Rules Of Civil Procedure All Protect The Identifying Information From Disclosure**

Bankruptcy Code §107(b), Bankruptcy Rule 9018, Federal Rule 26(c)(7)[3] and Federal Rule 45(c)(3) each protect the identities of the Survey participants from disclosure. Bankruptcy Code §107(b) provides that "[o]n request of a party in interest, the bankruptcy court shall ... (1) protect an entity with respect to a trade secret *or confidential research, development, or commercial information....*" (Emphasis added). Similarly, Bankruptcy Rule 9018 provides that "[o]n motion ... the court may make any order which justice requires (1) to protect the estate or *any entity in respect of a trade secret or other confidential information ...* or (3) *to protect governmental matters that are made confidential by statute or regulation.*" (Emphasis added). Additionally, Federal Rule 26(c) provides that "upon motion by a party . . . for good cause shown, the court where the action is pending . . . may make any order which justice requires to protect a party or person . . . including . . . (7) that a *trade secret or other confidential research, development, or commercial information not be revealed.*" (Emphasis added). Thus, under these four separate rules and statutes, there are two grounds under which the identities of the Survey participants deserves this Court's protection in a motion to quash or a motion for protective order: (1) the information sought is confidential research, development, and commercial information; and (2) the information is a governmental matter that is made confidential by statute or regulation.

---

[3]    This Fed. R. Civ. P. is made applicable to contested matters such at this one through Fed. R. Bankr. P. 7026 and 9014.

1.    **The Information Sought is Confidential Research,**
     **Development, and Commercial Information**

Although Fed. R. Civ. P. 26(c)(7) & 45(c), Fed. R. Bankr. P. 9018(1), and Bankruptcy

Code §107(b) state the basis for issuing a protective order slightly differently, the underlying

considerations are the same — a court should protect confidential research, development, and

commercial information.  11 U.S.C. § 107(b); *In re 50-Off Stores, Inc.*, 213 B.R. 646, 650

(Bankr. W.D. Tex. 1997) ("Both the statute [§107(b)] and the rule [9018(1)] are similar to the

provisions of Rule 26(c)").  Moreover, the Bankruptcy Rules' and the Bankruptcy Code's

articulations of the protections do not have the "good cause" requirement that the Federal Rules

of Civil Procedure appear to require.[4]

The company identifying information underlying the Survey which would allow the

Reorganized Debtors to obtain the corresponding sensitive pricing information of each

responding annuity provider is exactly the type of confidential research, development, and

information that these Rules and Code sections were designed to protect.  Indeed, at least one

court within this district granted and upheld a protective order issued to keep confidential the

identities of various savings institutions as "confidential information" under Code § 107(b)

because disclosure would cause a loss of public confidence in the institutions.  *In re EPIC*

---

[4]    In other areas of the law, courts have relied on showings of "compelling reasons," or
balancing the interests of privacy and public right to know, when reviewing a request for
judicial non-disclosure. *See, e.g., In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474, 476
(6th Cir. 1983). "The mandatory language of § 107(b) negates the need for such inquiries."
*In re Orion Pictures Corp*, 21 F.3d 24, 28 (2d Cir. 1994).  "Thus, if the information fits any
of the specified categories, the court is required to protect a requesting interested party and
has no discretion to deny the application." *Id.* at 27. Instead, "the discretion lies not in
whether a court may protect an interested party, but in whether the matters complained of
fall within the exception and in what type of protective remedy is necessary under the facts
of each case." *In re Phar-Mor, Inc.*, 191 B.R. 675, 679 (Bankr. N.D. Ohio 1995).  However,
(Cont'd)

*Associates V*, 54 B.R. 445, 447,449-50 (Bankr. E.D. Va. 1985); *see also Duplan Corp. v. Deering Milliken, Inc.* 397 F. Supp. 1146, 1186 (D.S.C. 1975) (finding that names of licensees were to be protected under Fed. R. Civ. P. 26(c)(7) in litigation challenging the validity of a patent). Similar to *EPIC Associates*, disclosure here would cause harm to PBGC because it would destroy the entire process by which PBGC obtains, and has obtained for approximately 28 years, annuity information that forms the basis for its validly promulgated regulation for valuing benefit liabilities, 29 C.F.R. Part 4044.

This identifying information is highly sensitive because it concerns the very essence of an annuity provider's businesses. Because participation in this blind Survey is entirely voluntary, a "chilling effect" will result if disclosure is mandated, and annuity providers will cease to voluntarily cooperate with PBGC and ACLI. Ness Decl. ¶ 7; Affidavit of Gary Hughes ¶ 5. As a result, PBGC's Valuation Regulation which has been used to value the benefit liabilities of pension plans that have terminated over the past 28 years, will be at risk. The agency may be forced to devise an entirely new way of achieving its statutory and regulatory objectives and to even promulgate new regulations. *See* 29 C.F.R. Part 4044; Valuation of Plan Benefits, Proposed Rule, Background, 58 F.R. 5128, 5128 (January 19, 1993) ("As explained in the PBGC's Interim Regulations on Valuation of Plan Benefits, published November 3, 1976, the PBGC has set its interest rates for valuation purposes by examining *a Survey of private sector annuity prices...*" (emphasis added). Certainly, the law does not require PBGC to change the entire process by which it establishes its interest rates in its implementing regulations to comply with a discovery request in claims objection litigation.

---

even if this Court determines that "good cause" is the proper standard under Fed. R. Civ. P. 26(c), PBGC has met that burden.

Moreover, if the Court orders disclosure in this case, due process requires that the identities of Survey participants must be revealed not only to the Reorganized Debtors, but also to PBGC so it may adequate protect its interests. This will undermine PBGC's express promise of confidentiality for the Survey respondents' identities.

### 2. The Information is a Governmental Matter Made Confidential by Statute or Regulation

The information sought by the Reorganized Debtors is confidential by regulation, and is protected from disclosure. The Bankruptcy Rules provide that the Court may "protect governmental matters that are made confidential by statute or regulation." Fed. R. Bankr. P. 9018(3); *In re Global Crossing Ltd.*, 295 B.R. 720, 724-25 (Bankr. S.D.N.Y. 2003) (refusing to allow certain parties in interest access to information communicated to a government entity under Fed. R. Bankr. P. 9018(3) where a regulation makes that information confidential). The Survey explicitly states, "ACLI will not disclose to the PBGC the identity of the insurance company responding to this Survey. The PBGC regards the information gathered through the Survey *as confidential under 5 U.S.C. § 552(b) and 29 C.F.R. Part 4901*." *See* Exhibit 1 (Redacted Survey form-- filed under seal pursuant to the September 16, 2003 Stipulation and Protective Order ¶ 5) (emphasis added); Affidavit of Gary Hughes ¶ 4. The provisions of 29 C.F.R. § 4901.24 protect information that either the submitter designates or PBGC believes contains confidential business information. The face of the Survey questionnaire plainly demonstrates that PBGC believes the information is confidential. Thus, because the information requested by the Reorganized Debtors is confidential by regulation, the Court should protect this information under Fed. R. Bankr. P. 9018(3).

**C.      The Discovery Sought Here Is Improper Because The Reorganized Debtors Have Not Challenged 29 C.F.R. § 4044 As Arbitrary and Capricious, And Even If They Did, They Could Not Rely On Material That Was Never Before The Agency.**

Nowhere in their objection to the PBGC Proof of Claim do the Reorganized Debtors purport to challenge the Valuation Regulation under the Administrative Procedures Act, 5 U.S.C. § 706, (the "APA") as arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.  If the Reorganized Debtors were to attempt such a challenge to the regulation that has been in effect for over a quarter of a century, it is well settled that an administrative agency's action may only be challenged based upon the materials that were before the agency.  *Camp v. Pitts*, 411 U.S. 138 (1973); *Trinity Am. Corp. v. EPA*, 150 F.3d 389, 401 (4th Cir. 1998) (holding that since review of agency action is limited to the information before the agency when it makes its decision, the court would not consider internal memoranda which were not available to the EPA when it issued its emergency order).  The Reorganized Debtors do not assert any APA challenges before this Court, nor could they.  *See* 5 U.S.C. § 703; *see also Int'l Brotherhood of Teamsters v. Pena*, 17 F.3d 1478, 1481 (D.C. Cir. 1994) (APA challenges are presumptively brought in U.S. District Courts).  Instead, they are attempting to collaterally attack the regulation and circumvent well established APA procedures.  It is improper for them to seek discovery of information that was not before the agency such as the identities of the Survey respondents.

The Reorganized Debtors claim that they need the identities of the Survey respondents (information that PBGC never obtained or considered) in order to challenge the way PBGC itself determines the interest factors it uses in the regulation.  *See* Exhibit 4 (October 1, 2003 letters from Alexander Powell to Lon A. Berk and Raymond C. Fay).  This does not meet the test for

"discoverable" (or relevant) evidence under Fed. R. Civ. P. 26(b)(1)[5] since material outside the realm of information PBGC took into account when it promulgated the regulation may not be considered. Since the information that the Reorganized Debtors seek was not before the agency and is not reasonably calculated to lead to the discovery of admissible evidence, this Court should deny the Reorganized Debtors' access to the identities of the Survey participants.

### D.   The Identities of the Survey Respondents Must Be Withheld Pursuant to the Law Enforcement Privilege

The identity of the Survey participants is also protected by the law enforcement evidentiary privilege. The law enforcement privilege prohibits the disclosure of identities of persons and private institutions that provide information to government agencies under an explicit promise of confidentiality. *See e.g. Dole v. Local 1942, IBEW*, 870 F.2d 368 (7th Cir. 1989)(The Department of Labor successfully invoked the law enforcement/informant privilege to withhold the identity of employees reporting violations of the Labor Management Reporting and Disclosure Act); *Wirtz v. Continental Finance & Loan Co. of West End*, 326 F.2d 561, 563-64 (3rd Cir. 1964)(The Department of Labor successfully invoked the law enforcement privilege to withhold the identity of employees reporting violations of the Fair Labor Standards Act).

### 1.   The Court must look to Freedom of Information Act Exemption 7 to determine the scope of the law enforcement privilege.

"In order to determine the scope of the [law enforcement] privilege in civil litigation, case law examining the privilege and construing Exemption (7) of the Freedom of Information Act . . . relating to the exemption from disclosure of records or information compiled for law enforcement purposes must be consulted." Weinstein's Federal Evidence, § 509.24[1] (2003

---

[5]   In order for information to be "discoverable" or "relevant," it must be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

ed.); *see* Christopher B. Mueller, *Modern Evidence*, § 5.48 (1995 ed.) at 659-60 ("Because the

Freedom of Information Act (FOIA) recognizes as exemptions from disclosure the primary

categories of information protected by the official information privilege, case law interpreting

the FOIA is frequently cited in defining the contours of the privilege."); McCormick on

Evidence, (4th ed. 1992) § 108 at 401-02; *see also* 26A Charles A. Wright and Kenneth W.

Graham, *Federal Practice and Procedure: Evidence* ¶ 5681 (1992 ed.) at 175-76 ("However,

continued protection was thought justified with respect to confidential informants along the lines

of the informer privilege; that is, not only the identity of the informant but also any information

in the file that would provide circumstantial evidence of the informer's identity.  The 1974 FOIA

amendments codified these rulings....") (footnote omitted).

> Exemption 7 of the Freedom of Information Act prohibits disclosure of:

> records or information compiled for law enforcement purposes, but only to the
> extent that the production of such law enforcement records or information . . . (D)
> could reasonably be expected to disclose the identity of a confidential source,
> including a State, local, or foreign agency or authority *or any private institution
> which furnished information on a confidential basis*, and, in the case of a record
> or information compiled by criminal law enforcement authority in the course of a
> criminal investigation or by an agency conducting a lawful national security
> intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7) (emphasis added).  Hence, in order to properly analyze the law enforcement

privilege, there are two requirements.[6]  First, the information must be compiled for law

enforcement purposes.  Second, the information must have been provided by a confidential

---

[6]    The PBGC has properly invoked the law enforcement privilege through (1) a formal claim
of privilege, (2) based on personal consideration, and (3) providing a detailed specification
of the information claimed to be privileged by its Executive Director, Steven A. Kandarian.
*See* Declaration of Steven A. Kandarian Asserting the Law Enforcement Privilege on Behalf
of the Pension Benefit Guaranty Corporation; *see also U.S. v. Reynolds*, 345 U.S. 1, 7-8
(1953); *Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C. Cir. 1996).

source that spoke to the government with an understanding that the communication would remain confidential.

    **a)**    **The Survey is used by the PBGC to compile information for a civil law enforcement purpose**

FOIA Exemption 7 encompasses information compiled for civil law enforcement purposes. *See e.g. Cooper Cameron v. U.S. Dept. of Labor,* 280 F.3d 539, 545 (5th Cir. 2002)(OSHA's "civil law-enforcement records fall under exemption 7"); *Rural Hous. Alliance v. U.S. Dept. of Agriculture,* 498 F.2d 73, 81 n.46 (D.C. Cir. 1974); U.S. Dept. Of Justice, *Freedom of Information Act Guide & Privacy Overview* (2002 ed.) at 390-93; *see also Michelson v. Daly,* 590 F. Supp. 261-264 (N.D.N.Y. 1984). The PBGC interest factors and Valuation Regulation, which are based on information derived from the Survey, are used to determine an employer's liability under ERISA. *See e.g.* 29 U.S.C. § 1362 (employer's liability for an underfunded plan). Thus, the Survey information constitutes "information compiled for law enforcement purposes" within the meaning of FOIA Exemption 7, and therefore, the law enforcement privilege.

    **b)**    **The Survey respondents provided information to the PBGC based on an express promise of confidentiality**

Under case law interpreting FOIA Exemption 7(D),

> the question is not whether the requested *document* is the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential. According to the conference report on the 1974 amendment, a source is confidential within the meaning of Exemption 7(D) if the source "provided information under either an express promise of confidentiality or in circumstances from which such an assurance could reasonably be inferred."

*U.S. Dept. of Justice v. Landano,* 508 U.S. 165, 172 (1993) (*quoting* S. Conf. Rep. No. 93-1200, at 13); *see Cooper Cameron,* 280 F.3d at 550; U.S. Dept. of Justice, *Freedom of Information Act Guide & Privacy Act Overview* (2002 ed.) at 476. As noted above, the annuity providers responding to the Survey were expressly promised that ACLI will not disclose to the PBGC the

identity of the insurance company responding to this Survey and that PBGC regards the

information gathered through the Survey as confidential under 5 U.S.C. § 552(b) and 29 CFR

Part 4901."). Exhibit 1 (Redacted Survey form– filed under seal pursuant to the September 16,

2003 Stipulation and Protective Order ¶ 5); Affidavit of Gary Hughes ¶ 4. Since the Survey

respondents participated with an express understanding that their identity and their Survey

responses would remain confidential, this Court should protect their identities.

Because of the express promises of confidentiality by PBGC on the face of the Survey,

Exemption 7(D) "safeguards not only such obviously identifying information as an informant's

name and address, but also all information which would 'tend to reveal' the source's identity."

U.S. Dept. of Justice, *Freedom of Information Act Guide & Privacy Act Overview* (2002 ed.) at

496 (*citing Pollard v. FBI*, 705 F.2d 1151, 1155 (9th Cir. 1983) and *Billington v. Dept. of Justice*,

69 F.Supp.2d 128, 138 (D.D.C. 1999), *vacated and remanded on other grounds*, 233 F.3d 581

(D.C. Cir. 2000)). Exemption 7(D) is broadly construed to "protect sources and prevent critical

information from 'drying up.'" *Id.* at 508, n. 121 (*quoting Givner v. Executive Office for United

States Attorneys*, No. 99-3454, slip op. at 15 (D.D.C. March 1, 2001). Hence, any information

that could lead the Reorganized Debtors to the identities of the Survey respondents must be

protected from disclosure by FOIA Exemption 7 and the law enforcement privilege.

**2.      The Reorganized Debtors cannot overcome the law enforcement
          privilege.**

The Reorganized Debtors have no basis to overcome the law enforcement privilege in

this case. The U.S. Court of Appeals for the District of Columbia has articulated the factors to

be considered when assessing a party's subpoena for information otherwise protected by the law

enforcement privilege. In particular, a court should consider:

> (1) the extent to which disclosure will thwart governmental processes by
> discouraging citizens from giving the government information; (2) the impact

upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C. Cir. 1996); *see also Roviaro v. United States*, 353 U.S. 53, 62 (1957) (Court must employ a balancing test to determine whether the party seeking disclosure has overcome the government's privilege).

A review of the *Tuite* factors demonstrates that the Reorganized Debtors cannot overcome the law enforcement privilege that protects the identities of the Survey respondents. As explained above, disclosure of the identity of the Survey respondents would have a severe chilling effect on PBGC's ability to collect the information it needs for its regulation and thus, its law enforcement functions. Ness Decl. ¶ 7; Affidavit of Gary Hughes ¶ 5. Thus, factors one, two, three, and four of the *Tuite* test heavily favor PBGC. Factors five, six, and seven are inapplicable here because the information was gathered pursuant to PBGC's civil law enforcement authority, not any criminal law enforcement authority. Finally, factor ten weighs in PBGC's favor since, as discussed above, the identities of the Survey respondents are irrelevant to the merits of this case, and the Reorganized Debtors' efforts to obtain this information constitute nothing more than an improper collateral attack on the validity of PBGC's regulations. *See supra; see also Wirtz*, 326 F.2d at 563 (Identities of confidential sources withheld because "[i]t is perfectly plain that the names of informers are utterly irrelevant to the issues to be tried by the trial court."). Hence, the balance of the *Tuite* factors is solidly in favor of allowing PBGC to

invoke the law enforcement privilege to prevent disclosure of the Survey respondents' identities or any information that could lead to the discovery of their identities.

## III.    CONCLUSION

Based on the foregoing statutes and rules prohibiting the disclosure of trade secrets or confidential business information and the law enforcement privilege, and the lack of any waiver of these objections or privileges, the Court should quash the Reorganized Debtor's subpoenas or, alternatively, grant PBGC a protective order preventing the Reorganized Debtors from receiving any documents containing the identity of or information leading to the identity of respondents to the Survey of Annuity Prices.  Furthermore, the Court should stay the production of these materials or any deposition questioning of ACLI or PBGC regarding the identities of the Survey respondents until it resolves this dispute.

Dated:  October 6, 2003

     _/s/ Susan E. Birenbaum_
     JAMES J. KEIGHTLEY
     General Counsel
     WILLIAM G. BEYER
     Deputy General Counsel

Of Counsel:
     SUSAN E. BIRENBAUM
RAYMOND C. FAY
     Assistant General Counsel
Bell, Boyd & Lloyd
     JEAN MARIE BREEN
1615 L Street, N.W.
     JOSEPH R. HOUSE
Suite 1200
     ROGER REIERSEN
     ROBERT SIDMAN
Washington, D.C.  20036
     Attorneys
(202) 466-6300
     Office of the General Counsel
     Pension Benefit Guaranty Corporation
     1200 K Street N.W., Suite 340
     Washington, D.C.  20005
     Phone: (202) 326-4020 ext. 3400
     FAX: (202) 326-4112
     E-mail: birenbaum.susan@pbgc.gov,
     efile@pbgc.gov

     Attorneys for the Pension Benefit Guaranty
     Corporation

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## (ALEXANDRIA)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| US AIRWAYS GROUP, INC. et al., | ) | Case No. 02-83984-SSM |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER

Upon consideration of the Pension Benefit Guaranty Corporation's Motion To Quash Or, In The Alternative, For Protective Order, the argument of counsel, and the entire record herein, it is this _____ day of _____, 2003.

ORDERED, that the Pension Benefit Guaranty Corporation's Motion to Quash and/or for Protective Order is GRANTED; and it is

FURTHER ORDERED, that the American Council of Life Insurers may produce documents or answer deposition questions of the Reorganized Debtors in this case, but shall not provide any documents or deposition responses which reveal or could be used to discover the identity of the entities responding to the Survey. Any responsive documents that are to be produced shall be redacted to eliminate any reference to the identity of the respondents.

Dated: _____    _____

U.S. Bankruptcy Judge

63526/F/1  1TYF01_

WE ASK FOR THIS:

Dated:  October 6, 2003

Of Counsel:
RAYMOND C. FAY
Bell, Boyd & Lloyd
1615 L Street, N.W.
Suite 1200

Washington, D.C.  20036
(202) 466-6300

         /s/ Susan E. Birenbaum
JAMES J. KEIGHTLEY
General Counsel
WILLIAM G. BEYER
Deputy General Counsel
SUSAN E. BIRENBAUM
Assistant General Counsel
JEAN MARIE BREEN
JOSEPH R. HOUSE
ROGER REIERSEN
ROBERT SIDMAN
Attorneys
Office of the General Counsel
Pension Benefit Guaranty Corporation
1200 K Street N.W., Suite 340
Washington, D.C.  20005
Phone: (202) 326-4020 ext. 3400
FAX: (202) 326-4112
E-mail: birenbaum.susan@pbgc.gov,
efile@pbgc.gov

Attorneys for the Pension Benefit Guaranty
Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of The Pension Benefit Guaranty Corporation's Motion To

Quash Or, In The Alternative, For Protective Order (with Exhibits), a Declaration of Marc A.

Ness in Support of PBGC's Motion for a Protective Order Regarding Survey of Annuity Prices, a

Declaration of Steven A. Kandarian Asserting the Law Enforcement Privilege on Behalf of the

Pension Benefit Guaranty Corporation, and Affidavit of Gary Hughes, and proposed order were

sent this 6th day of October, 2003, to each of the following by the means indicated:

> Janet L. Dhillon, Esq.
> Alexander Williamson Powell, Jr., Esq.
> Skadden, Arps, Slate, Meagher & Flom
> 1440 New York Ave., NW
> Washington, DC  20005-2111
> E-mail: jdhillon@skadden.com, alpowell@skadden.com
> Attorneys for Reorganized Debtors
> (by electronic mail)

> Lonie A. Hassel, Esq.
> Thomas S. Gigot, Esq.
> Michael J. Prame, Esq.
> Groom Law Group, Chtd.
> 1701 Pennsylvania Ave., N.W.
> Washington, DC 20006
> E-mail: lhassel@groom.com, tgigot@groom.com, mprame@groom.com
> Attorneys for Reorganized Debtors
> (by electronic mail)

> Lon A. Berk, Esq.
> Shaw Pittman, LLP
> 1650 Tysons Boulevard
> McLean, VA  22102-4859
> E-mail: Lon.Berk@shawpittman.com

63526/F/1  1TYF01_

20

Victoria E. Fimea, Esq.
Senior Counsel, Litigation
American Council of Life Insurers
101 Constitution Avenue, N.W.
Suite 700
Washington, D.C. 20001-2133
E-mail: victoriafimea@acli.com

Attorneys for American Council of Life Insurers
(by electronic mail)

                                        /s/ Joseph R. House
                                    Joseph R. House
                                    Attorney