# **EXHIBIT G**

Because the amendments are either of a technical nature and do not change the substance of the regulation, because the regulation interprets section 4044 of the Act, because the section allowing subclasses removes the restriction on subclasses that existed under the Interim Regulation, and because of the need for immediate guidance, the PBGC finds that good cause exists for making these amendments effective immediately.

In consideration of the foregoing Part 2608 of Chapter XXVI, Title 29, is amended as follows:

1. Sections 2608.7(b) (1) (i) (C) and (b) (2) (i) (A) are revised to read:

§ 2608.7 Priority category 2 benefits.

* * * * *

(b) * * *
(1) * * *
(i) * * *

"(C) Interest, if any, on the sum of the of the amounts determined under paragraphs (b)(1)(i) (A) and (B) of this section compounded annually at the applicable rate under section 204(c) (2) (C) (iii) of the Act, from the beginning of the first plan year to which section 204 (c) of the Act applies to the earlier of the participant's retirement date or the date of plan termination."

* * * * *

"Add accumulated employee contributions computed under paragraph (b)(1) of this section and interest at the applicable rate on such contributions under section 204(c) (2) (C) (iii) of the Act from the date of plan termination to the date on which the participant would attain normal retirement age."

3. Section 2608.10(a) is revised to read:

§ 2608.10 Priority category 5 benefits.

"Priority category 5 benefits consist of all nonforfeitable benefits payable with respect to a participant in a plan, other than benefits derived from voluntary employee contributions assigned to priority category 1 and all benefits assigned to priority categories 2, 3 or 4. The only benefits payable as annuities contained in this section are those benefits payable as annuities to which a participant is entitled under § 2605.5 of this chapter.

* * * * *

4. A new § 2608.12 is added to read as follows:

§ 2608.12 Subclasses.

(a) *General*—A plan may establish one or more subclasses (which do not result in discrimination prohibited by the Internal Revenue Code of 1954, as amended, and regulations thereunder), within any priority category other than priority categories 1 and 2, based specifically on greater length of service, older age or disability (or any combination thereof) of a participant. Assets of a plan allocable to a priority category may be allocated in accordance with the provisions of the subclasses established by the plan for that priority category to the extent that such allocation does not increase or decrease the assets which otherwise would be allocated to the guaranteed benefits in such priority categories.

(b) *Exception*—(1) *General*. Notwithstanding the provisions of paragraph (a) of this section, a plan that on September 2, 1974, provided for allocation of plan assets to benefits upon termination of the plan based specifically on greater length of service, older age or disability (or any combination thereof) of a participant may adopt an amendment establishing subclasses (which do not result in discrimination prohibited by the Internal Revenue Code of 1954, as amended, and regulations thereunder) within a priority category, other than priority categories 1 or 2, under which the subclasses are the same as the allocation priorities based specifically on greater length of service, older age or disability (or any combination thereof) that were in effect on September 2, 1974.

(2) *Limitation*. The exception contained in this paragraph only applies to subclasses which are adopted before the one hundred and eighty-first day after publication in the FEDERAL REGISTER], except for modifications that may be required by the Internal Revenue Service as a condition of qualification. If the allocation provisions of a plan were amended after September 2, 1974, the plan may establish subclasses under this paragraph only if the allocation provisions were amended as part of a good faith effort to comply with section 4044 of the Act.

These amendments are effective January 13, 1977.

(Sec. 4002(b)(3), 4044, Pub. L. 93-406, 88 Stat. 1004, 1026-27 (29 U.S.C. 1302(b)(3), 1344).)

Issued at Washington, D.C. on this 30th day of December, 1976.

Issued on the date set forth above, pursuant to a resolution of the Board of Directors authorizing the Chairman to issue same.

W. J. USERY, Jr.,
*Chairman, Board of Directors, Pension Benefit Guaranty Corporation.*

HENRY ROSE,
*Secretary, Pension Benefit Guaranty Corporation.*

[FR Doc.77-1132 Filed 1-12-77;8:45 am]

---

## PART 2610—INTERIM REGULATION ON VALUATION OF PLAN BENEFITS

### Amendment Adopting Additional PBGC Rates

On November 3, 1976, the Pension Benefit Guaranty Corporation ("PBGC") published in the FEDERAL REGISTER an Interim Regulation on the Valuation of Benefits for plans that do not receive a notice from the PBGC that after allocation of assets in accordance with section 4044 of the Employee Retirement Income Security Act of 1974 ("Act") the plan has sufficient assets to pay all benefits guaranteed under Title IV of the Act. (41 FR 48484 et seq.) On that same date the PBGC also published in the FEDERAL REGISTER a Supplemental Notice of Proposed Rulemaking on the Valuation of Plan Benefits that contained rules for valuing the benefits in plans that receive a Notice of Sufficiency from the PBGC ("sufficient plans"). (41 FR 48498 et seq.) The supplemental proposal also contained rates to be used for valuing annuities provided by the PBGC for plans that terminated after September 30, 1975 and before September 1, 1976.

A number of comments were received regarding the rules on valuation of benefits in sufficient plans. Those rules are intimately related to the regulation on determination of plan sufficiency on which the PBGC has received many conflicting comments. Therefore, PBGC has decided not to issue final rules on the valuation of benefits in sufficient plans until the determination of sufficiency regulation is finalized.

### GENERAL

One commentator objected to the issuance of any regulations by PBGC on the valuation of plan benefits. The commentator expresses concern that the actuarial basis for valuing benefits in terminating plans promulgated by PBGC might be extended to on-going plans. The valuation rates prescribed by the PBGC are designed to reflect PBGC's cost of providing benefits in terminating plans. Those costs do not reflect in any manner the reasonable actuarial assumptions which on-going plans should use. On-going plans must take into account projected benefit levels and other factors which are not relevant in determining costs of a terminated plan because no more benefits will accrue after termination. Therefore, PBGC actuarial factors should not be applied to on-going plan situations unless the plan's actuary determines them to be the most reasonable factors. However, PBGC believes it should inform plan administrators, plan sponsors, and plan participants of the basis on which benefit values are determined when PBGC provides the benefits since those values determine the appropriate allocation of assets to benefits and whether there is any employer liability.

### EARLY RETIREMENT BENEFITS

One comment suggested that participants who were entitled to retire early be required to irrevocably elect a retirement date when the plan terminates to eliminate the guesswork involved in estimating rates of early retirement. PBGC disagrees with this suggestion because it would deprive a participant of a vested right under the plan; the flexibility to decide when to retire, and such an election might be unenforceable because it requires the participant to make an irrevocable advance commitment to give up his primary means of support on a given date even though subsequent events may lead the participant to decide not to retire.

### PBGC RATES

One comment suggested that PBGC rates on deferred annuities appeared too

conservative (i.e. the benefit values under the rates would be too high) and should reflect the rates currently being paid on long term government securities. The commentator also "believed" that the rates for disabled lives not receiving Social Security benefits and the early retirement rates and resulting assumed retirement ages may very well prove to be too conservative. With respect to the first comment, the reason why the discount rates for deferred annuities appear lower is primarily because of two factors.

First, the rates must take into account the rates at which earnings from the initial investments made to fund such annuities can be reinvested. Secondly, PBGC rates contain loading factors for the anticipated expenses associated with providing the annuities. Since annuity payments associated with deferred annuities are generally less than for immediate annuities, recurring administrative costs tend to be a larger percentage of the total cost of providing the annuity. Also, any fixed charges incurred at the time of a commitment are also a larger factor for deferred annuities than for immediate annuities. It is these expenses which account for a large share of the apparent lower yield on deferred annuities.

Regarding the comments on early retirement rates and rates for disabled lives not eligible for Social Security, PBGC has not discovered any accurate tables or valid studies on those types of annuities, and therefore, will as the comment implies monitor its experience to develop such tables and rates. The current rates represent PBGC's best estimate, based on currently available data, of its expected experience in these areas.

Accordingly, PBGC has decided to amend the Interim Regulation to add the additional interest rates and factors published in the supplemental proposal covering the period from October 1, 1975 through August 31, 1976.

Because of the need to provide immediate guidance for the valuation of benefits in plans that terminated before September 1, 1976, and because no adjustment by on-going plans is required by this amendment, PBGC finds that good cause exists for making the amendment effective immediately.

In consideration of the foregoing, Part 2610 of Chapter XXVI, Code of Federal Regulations is amended as follows:

Appendix B—Interest Rates and Quantities Used to Value Annuities is revised to read as follows:

APPENDIX B—INTEREST RATES AND QUANTITIES USED TO VALUE DEFERRED ANNUITIES

I. The following interest rates and quantities used to value benefits shall be effective for plans which terminate on or after September 2, 1974 and on or before September 30, 1975:

Table I.—Interest rate for valuing immediate annuities. An interest rate of 8% shall be used to value immediate annuities, to compute the quality "G" in § 2610.6, and for valuing both portions of a cash refund annuity.

Table II.—Interest rate for valuing death benefits. An interest rate of 5% shall be used to value death benefits other than the decreasing term insurance portion of a cash refund annuity pursuant to § 2610.8.

Table III.—Interest rates and quantities used to value deferred annuities. The following factors shall be used to value deferred annuities pursuant to § 2610.6:

(1) $k_1 = 1.0725$
(2) $k_2 = 1.0575$
(3) $k_3 = 1.0425$
(4) $n_1 = 7$
(5) $n_2 = 8$

II. The following interest rates and quantities used to value benefits shall be effective for plans which terminate on or after October 1, 1975 and on or before December 31, 1975:

Table I.—Interest rate for valuing immediate annuities. An interest rate of 7¾ percent shall be used to value immediate annuities, to compute the quantity "G" in § 2610.6, and for valuing both portions of a cash refund annuity.

Table II.—Interest rate for valuing death benefits. An interest rate of 5 percent shall be used to value death benefits other than the decreasing term insurance portion of a cash refund annuity pursuant to § 2610.8.

Table III.—Interest rates and quantities used to value deferred annuities. The following factors shall be used to value deferred annuities pursuant to § 2610.6:

(1) $k_1 = 1.0725$
(2) $k_2 = 1.0575$
(3) $k_3 = 1.0425$
(4) $n_1 = 7$
(5) $n_2 = 7$

III. The following interest rates and quantities used to value benefits shall be effective for plans which terminate on or after January 1, 1976 and on or before February 29, 1976:

Table I.—Interest rate for valuing immediate annuities. An interest rate of 8 percent shall be used to value immediate annuities, to compute the quantity "G" in § 2610.6, and for valuing both portions of a cash refund annuity.

Table II.—Interest rate for valuing death benefits. An interest rate of 5 percent shall be used to value death benefits other than the decreasing term insurance portion of a cash refund annuity pursuant to § 2610.8.

Table III.—Interest rates and quantities used to value deferred annuities. The following factors shall be used to value deferred annuities pursuant to § 2610.6:

(1) $k_1 = 1.0725$
(2) $k_2 = 1.0525$
(3) $k_3 = 1.04$
(4) $n_1 = 7$
(5) $n_2 = 10$

IV. The following interest rates and quantities used to value benefits shall be effective for plans which terminate on or after March 1, 1976 and on or before May 31, 1976:

Table I.—Interest rate for valuing immediate annuities. An interest rate of 7¼ percent shall be used to value immediate annuities, to compute the quantity "G" in § 2610.6, and for valuing both portions of a cash refund annuity.

Table II.—Interest rate for valuing death benefits. An interest rate of 5 percent shall be used to value death benefits other than the decreasing term insurance portion of a cash refund annuity pursuant to § 2610.8.

Table III.—Interest rates and quantities used to value deferred annuities. The following factors shall be used to value deferred annuities pursuant to § 2610.6:

(1) $k_1 = 1.07$
(2) $k_2 = 1.05$
(3) $k_3 = 1.04$
(4) $n_1 = 7$
(5) $n_2 = 10$

V. The following interest rates and quantities used to value benefits shall be effective for plans which terminate on or after June 1, 1976 and on or before August 31, 1976:

Table I.—Interest rate for valuing immediate annuities. An interest rate of 7¼ percent shall be used to value immediate annuities, to compute the quantity "G" in § 2610.6, and for valuing both portions of a cash refund annuity.

Table II.—Interest rate for valuing death benefits. An interest rate of 5 percent shall be used to value death benefits other than the decreasing term insurance portion of a cash refund annuity pursuant to § 2610.8.

Table III.—Interest rates and quantities used to value deferred annuities. The following factors shall be used to value deferred annuities pursuant to § 2610.6:

(1) $k_1 = 1.0675$
(2) $k_2 = 1.0475$
(3) $k_3 = 1.035$
(4) $n_1 = 7$
(5) $n_2 = 10$

These amendments are effective January 13, 1977.

(Secs. 4002(b)(3), 4044, 4062(b)(1)(A), Pub. L. 93-406, 88 Stat. 1004, 1025-27, 1029 (29 U.S.C. 1302(b)(3), 1344, 1362(b)(1)(A)).)

Issued at Washington, D.C. on this 30th day of December 1976.

Issued on the date set forth above, pursuant to a resolution of the Board of Directors authorizing the Chairman to issue same.

W. J. USERY, Jr.,
Chairman, Board of Directors,
Pension Benefit Guaranty Corporation.

HENRY ROSE,
Secretary, Pension Benefit Guaranty Corporation.

[FR Doc.77-1133 Filed 1-12-77;8:45 am]

---

Title 32—National Defense

CHAPTER XX—INTERAGENCY CLASSIFICATION REVIEW COMMITTEE

PART 2000—ADMINISTRATIVE PROCEDURES

Submission of Reports and Appeals Procedures

The Interagency Classification Review Committee (ICRC) is revising Chapter XX, Part 2000 of its Rules and Regulations to require semiannual rather than quarterly submission of most reports described in Subpart B and to distinguish between classification abuses and administrative security violations for reporting purposes.

The table of contents for Part 2000 is revised as follows:

Subpart A—General
Sec.
2000.1  Purpose.
2000.2  Scope.
2000.3  Jurisdiction.

Subpart B—National Security Information or Material Reports
2000.10  Original classification authorities.
2000.11  Classification abuses/administrative security violations.
2000.12  Unauthorized disclosures.
2000.13  Mandatory declassification review actions.