# EXHIBIT J

## PENSION BENEFIT GUARANTY CORPORATION

**29 CFR Parts 2619 and 2676**

**RIN 1212–AA61**

**Valuation of Plan Benefits in Single-Employer Plans; Valuation of Plan Benefits and Plan Assets Following Mass Withdrawal**

**AGENCY:** Pension Benefit Guaranty Corporation.

**ACTION:** Proposed rule.

**SUMMARY:** The Pension Benefit Guaranty Corporation ("PBGC") proposes to amend its regulation governing valuation of plan benefits in terminated single-employer plans that are trusteed by the PBGC. The proposed amendment would revise the methods of valuing annuity benefits (1) to update the regulation's mortality assumptions to reflect recent actuarial practice, (2) to uncouple the regulation's administrative expense ("loading") assumptions from its interest assumptions, and (3) to clarify the valuation of annuity benefits by prescribing a new interest rate structure format that bases valuations on the length of time between the valuation date and the presumed date of each payment. Although the amendment would continue the regulation's historical approach of assigning values to annuity benefits that are in line with private sector group annuity prices, and the PBGC anticipates that, for most plans, this amendment would not significantly affect the valuations produced, the new assumptions and format would greatly enhance public understanding of the PBGC'S valuations. In addition, the PBGC proposes to adopt unisex mortality assumptions when it is calculating de minimis lump sums (i.e., those of $3,500 or less) to be paid to a participant; the PBGC would otherwise continue to use its historical mortality assumptions and its current interest rate structure in the calculation of lump sums.

At the same time, the PBGC proposes to amend its regulation governing valuation of annuity benefits in multiemployer plans following mass withdrawal, so as to adopt the same mortality, loading, and interest assumptions as does the modified single-employer regulation. This change will result in simplification of calculations under the multiemployer regulation as well as greater consistency of annuity valuations between the two programs.

**DATES:** Comments must be received on or before March 22, 1993.

**ADDRESSES:** Comments should be addressed to Office of the General Counsel (22500), Pension Benefit Guaranty Corporation, 2020 K Street NW., Washington, DC 20006. Comments may be hand-delivered to Suite 7200 at the above address between 9 a.m. and 5 p.m. Written comments will be available for public inspection at the PBGC's Communications and Public Affairs Department, suite 7100 at the above address, between 9 a.m. and 4 p.m.

**FOR FURTHER INFORMATION CONTACT:** Peter H. Gould, Senior Counsel, Office of the General Counsel, at the above address or at (202) 778–8850 ((202) 778–8859 for TTY and TDD). These are not toll-free numbers.

**SUPPLEMENTARY INFORMATION:**

### Background

The Pension Benefit Guaranty Corporation ("PBGC") published a final regulation Valuation of Plan Benefits in Non-Multiemployer Plans (the "single-employer regulation") on January 28, 1981 (46 FR 9492). On March 14, 1986, the title of the regulation was changed to Valuation of Plan Benefits in Single-Employer Plans. The regulation is codified at 29 CFR part 2619.

As explained in the PBGC's initial proposed rulemaking on Valuation of Plan Benefits, published December 12, 1975: "The value of a benefit as of the date of termination is the current value of the cost that the PBGC normally should incur as of the date of termination, in providing the benefit under reasonable assumptions as to mortality, rates of retirement when early retirement is possible, administrative expenses that will be incurred, and investment return assumptions reflecting current and longer term investment opportunities. The PBGC's assumptions will be adjusted from time to time to reflect changes in market conditions and mortality experience." 40 FR at 57982. As explained in the PBGC's Interim Regulation on Valuation of Plan Benefits, published November 3, 1976, the PBGC has set its interest rates for valuation purposes by examining a survey of private sector annuity prices, using those prices as a starting point, and selecting a valuation interest rate (or rates) which when combined with the PBGC mortality table would accurately replicate the price structure reflected in single-premium, nonparticipating group annuity contract prices from the survey. 41 FR at 48485.

On March 25, 1986, the PBGC published a proposed single-employer regulation that would have replaced the current interest rate format structure based on the presumed date a

participant is to enter pay status with one based on the length of time that has passed since the valuation date. The 1986 proposed regulation called for as many as fifteen different "select" rates, each of which would apply for a period of one year after the valuation date. To value payments that would occur over fifteen years after the valuation date, the 1986 proposed regulation provided for a single "ultimate" rate. This interest rate format was the one used in the PBGC's multiemployer plan regulation, Multiemployer Pension Plans; Valuation of Plan Assets and Plan Benefits Following Mass Withdrawal, 29 CFR Part 2676, published as a proposed rule on February 19, 1985, and as a final rule on March 25, 1986.

The proposed 1986 single-employer regulation attracted several comments. A number of comments expressed concern about the complexity associated with the use of a "select and ultimate" interest rate format structure calling for the use of up to 15 different "select" rates. In addition, the American Academy of Actuaries suggested that the PBGC might obtain more precise simulation of private sector annuity contract prices if it allowed for the possibility of changing its assumed interest rates after a period exceeding fifteen years. The Academy also suggested that the PBGC begin use of the 1983 Group Annuity Mortality Table ("1983 GAM Table"). In part as a result of these comments, the PBGC decided to study the subject further and withdrew the proposed regulation on February 19, 1987.

The PBGC has now concluded that it can better and more clearly approximate private sector group annuity costs by (1) adopting the more current 1983 GAM table, (2) uncoupling its administrative expense ("loading") assumptions from its interest assumptions, and (3) replacing the current interest rate format, which is based on the length of time between the valuation date and the presumed date a participant is to enter pay status, with one based on the length of time between the valuation date and the date of each presumed monthly payment. Accordingly, the proposed amendment sets forth new mortality, loading, and interest assumptions for the valuation of annuity benefits. The PBGC will select an interest rate (or rates, normally no more than three) which, when combined with the PBGC mortality table and loading assumptions, will accurately approximate the cost of private sector group annuity contracts.

In addition, the PBGC proposes to adopt unisex mortality assumptions when it is calculating de minimis lump

sums (i.e., those of $3,500 or less) to be paid to a participant; the PBGC would otherwise continue to use its historical mortality assumptions and interest rate structure in valuing benefits in trusteed plans that are to be paid as lump sums.

The PBGC intends to apply the approach of the proposed amendment, including the new loading and mortality assumptions, to multiemployer plans as well. The interest assumptions in the multiemployer regulation, consistent with the single-employer annuity valuation amendments discussed below, would be modified to remove the 15-year limitation on the commencement of an "ultimate" rate and would ordinarily provide for no more than three interest rates. Thus, the single-employer and multiemployer annuity valuation rules would conform to each other.

The PBGC notes that this proposed regulation is narrowly focused, and thus that it does not address certain other modifications to Part 2619 that may be appropriate; for example, the proposed regulation does not address portions of Part 2619 that have been superseded by legislative action. The PBGC intends to make additional modifications to Part 2619, as appropriate, by subsequent regulatory action.

## Mortality

The mortality tables now used by the PBGC to value benefits in trusteed plans were derived from the Unisex Pension-1984 ("UP–1984") table, and were first proposed for adoption by the PBGC in 1975. The UP–1984 table was developed with 1965–1969 data on non-insured plans, covering employees in a wide range of industries, and at that time, it was judged to be the table most likely to be representative of PBGC's experience. 40 FR at 57982, 41 FR at 48485. More germane to the purposes of this proposed amendment, it also was very well suited for the format PBGC adopted to express its interest rates.

Specifically, the interest rates implicit in private sector prices for immediate annuities based on UP–1984 were nearly level, i.e., almost constant, over most ages surveyed, thereby facilitating the use of the same "immediate annuity rate" for all retired lives. The PBGC believes the UP–1984 table was as effective as it was because of its similarity to the table used by most insurers for pricing group annuities at that time, the 1971 GAM mortality table.

Since the UP–1984 table was proposed for adoption in 1975, many private sector insurers have shifted to the 1983 GAM Table when setting group annuity prices. In recent years, the interest rates implicit in the survey prices for immediate annuities based on the UP–1984 table have become progressively less constant, and it has therefore become progressively more difficult to approximate private sector prices for retired life annuities commencing at various ages with a single immediate annuity rate.

Moreover, continued use of the older mortality assumptions has resulted in the PBGC's interest rate assumptions being set lower than they would be under more current mortality assumptions, to ensure that the PBGC's valuations conform to private sector prices. Even though the combination of mortality and interest assumptions accurately replicates private sector group annuity prices, the disparity between the PBGC's low interest rates and familiar private sector rates has resulted in public confusion over the PBGC's interest rate assumptions. The PBGC therefore wishes to adopt new mortality assumptions that will (1) themselves better conform to those used by private sector insurers and (2) permit the PBGC to employ interest rate assumptions that also better conform to those used by private sector insurers, thereby making the annuity valuation process clearer to the public.

The PBGC accordingly proposes to adopt the 1983 GAM Table for annuity valuations. Pursuant to the recommendation of the Committee on Annuities of the Society of Actuaries, the PBGC is adopting a mortality table for healthy female participants that is obtained from the table for healthy males by increasing all age indexes by six years, i.e., a 6-year age setback for females (so that, for example, a 55 year old healthy female would be treated as if she were a 49 year old under the mortality table for healthy males). In addition, the PBGC's mortality tables for participants disabled under their plans' terms but not receiving Social Security disability payments will be obtained from the corresponding tables for healthy participants by decreasing all age indexes by three years, i.e., a 3-year setforward from the healthy lives tables for both males and females (so that, for example, a 55 year old disabled participant who is not receiving Social Security disability payments would be treated as if he or she were a 58-year old under the corresponding mortality table for healthy lives). Mortality tables for participants below age 65 receiving Social Security disability benefits will be determined on the basis of information obtained from the Social Security Administration blended into the 1983 GAM tables at higher ages. These tables will parallel the mortality tables for disabled participants not receiving Social Security disability

payments at higher ages. The Tables added to appendix A under the proposed regulation would incorporate the new mortality assumptions to be used in valuing annuity benefits.

The PBGC intends to keep each of its individual valuation assumptions in line with those of private sector insurers, and to modify its mortality assumptions whenever it is necessary in the future to do so to achieve consistency with private insurer assumptions. For example, if the PBGC determines that the mortality assumptions of the 1993 GAM Table have attained significant acceptance among private sector insurers, the PBGC would consider adopting those assumptions by regulation. The PBGC anticipates that it would generally publish any such changes, without further proposed rulemaking, at least 30 days in advance of their effective dates. We note that such changes would not be expected to affect the PBGC's annuity benefit valuations, because the PBGC's interest rates are selected so that, in conjunction with all other assumptions, they will provide annuity prices that are in line with those in the survey.

## Loading Assumptions

Certain expenses of administration are incurred by an insurer in connection with the payment of benefits under terminated plans. These "loading" expenses include establishing plan files and studying plan terms to determine benefit entitlements, setting up and updating records, as well as processing pension applications, cutting and mailing checks, etc. Under the present regulation, the PBGC interest assumptions include a downward adjustment so as to incorporate a loading charge. As explained in the preamble to the initial proposed regulation on Valuation of Plan Benefits, "[f]or purposes of benefit valuation normal expenses directly associated with providing a benefit have been estimated and an appropriate adjustment has been made in the applicable assumed rate of investment returns in order to account for those costs. This adjustment [was] made to avoid calculating the effect of the expenses upon the value of a benefit separately which would unnecessarily complicate the calculations required to value a benefit." 40 FR at 57983. The PBGC has concluded that it is now feasible to state explicit loading charges when valuing annuity benefits, without sacrificing simplicity of calculation. Thus, the PBGC has decided to add these costs on directly, rather than through a reduction in interest rates as it now does.

Under the proposed regulation, the PBGC will more clearly simulate the private sector process of annuity benefit valuation by stating explicit loading charges that should approximate the loading charges inherent in private sector annuity prices. The PBGC has decided that it can best approximate private insurer prices by charging loading expenses that are based in part on the total value of plan benefits, thereby recognizing (1) that the computation of benefit valuations entails certain expenses that are roughly proportional to the number of a plan's participants, (2) that private insurers' loading charges, expressed as a percentage of plan benefits, are somewhat lower for larger plans, and (3) that the percentage of a plan's annuity benefits to be assessed as a loading charge should vary slightly as a function of the interest assumptions in effect. Appendix C to the proposed regulation illustrates the form in which explicit loading charges would be stated. The PBGC invites comment on its approach to the specification of "loading" costs in annuity valuations. The PBGC anticipates that it would generally publish any changes to appendix C, without further proposed rulemaking, at least 30 days in advance of their effective dates.

**Interest Rates**

In adopting the current single-employer regulation, the PBGC, in the interest of administrative efficiency, adopted certain interest assumptions for the valuation of benefits. Benefits in pay status on the valuation date ("immediate annuities") would be valued on the basis that a single interest rate (the "immediate annuity rate") would apply throughout the life (lives) of the participant (and beneficiary). Benefits not in pay status on the valuation date ("deferred annuities") were valued on the basis of up to three additional, lower, interest rates ("deferred rates") assumed to be in effect for various portions of the period preceding the date when the participant was presumed to enter pay status; thereafter, the immediate annuity rate would apply.

Under the proposed amendment, the PBGC will, when valuing annuity benefits, employ one or more (usually no more than three) interest rates for one or more specified time periods following the date of valuation. They will not be based on the presumed date of pay status. The PBGC expects that the rates will be progressively lower for each succeeding time period. The amendment will thus employ an interest rate format similar to that in use for

valuing benefits pursuant to the PBGC's multiemployer regulation. The PBGC anticipates that by extending the period during which it may vary its "select" interest rates beyond the 15-year range used under the multiemployer regulation, we may achieve even greater accuracy in replicating private sector annuity charges. The Tables to be added to appendix B under the proposed regulation would set out the format for expressing the interest assumptions to be used in valuing annuity benefits.

The PBGC's historical mortality assumptions and interest rate structure, in addition to applying to the valuation of lump sum payments to living persons, would apply to the calculation of all death benefits. The 5% assumption that under the present single-employer regulation applies to certain death benefits (e.g., the return of accumulated employee contributions upon death) would be abandoned. Because the Pension Protection Act of 1987 (as amended by the Omnibus Budget Reconciliation Act of 1989) requires that employee contributions be credited with interest after the determination date at a rate not less than the applicable PBGC valuation rate, most plans provide for accumulation at that rate. Thus, the use of the usually lower 5% rate for valuing the payment of death benefits increases the value of the death benefit as of the valuation date. The PBGC is therefore changing the interest assumptions under which these death benefits are valued so that they will in most cases produce a value reflecting plan amendments adopted in response to the Pension Protection Act. The 5% assumption had previously been removed from the death benefit valuation rates under the multiemployer regulation. The proposed regulation also adopts the benefit valuation formulas employed by the multiemployer regulation.

As in the past, interest rates under the amendment would be derived from price data obtained from the private insurance industry. Since November 1980, the PBGC has announced its valuation interest rates prospectively, i.e., in advance of the period of time to which they apply. If the PBGC is to continue its practice of announcing its interest rates prospectively, it will be necessary to continue estimating, on the basis of data available some time before the time of publication, the annuity prices that will be proffered in the private sector. In view of the techniques and data available for effecting such estimates, the PBGC has concluded in the past that any imprecision in approximating those future prices is outweighed by the value of permitting private parties to be able

to estimate benefit values earlier. The PBGC invites comment on whether this conclusion remains valid.

Several comments submitted in response to the 1986 proposed regulation stated that private parties frequently rely on the PBGC's "immediate annuity" rate for valuing pension entitlements in, inter alia, divorce cases. (The PBGC notes that use of the PBGC interest rates for valuing pension entitlements in divorce cases, or for any other purposes beyond those for which they were intended, may or may not be appropriate.) The comments stated that the complexity of the proposed format would create substantial difficulties for small family law practices and administrators of small plans. The PBGC believes that, inasmuch as the PBGC will continue to value lump sum entitlements on the basis of its historical mortality assumptions and interest structure, any such difficulties would be self-imposed, and that even for any person who uses the new interest structure, the reduction of the expected number of interest rates to two or three and the increased availability of computer software should alleviate these concerns.

The availability of computer software, together with the proposed regulation, will also eliminate the need for a distorting simplification used under the current regulation. As pointed out in the preamble to the current regulation, 46 FR at 9495, the adjustment factor for deferred joint and survivor benefits ignores the possibility of the death of the spouse between the date of valuation and the pay status date. The proposed regulation takes that possibility into account, in a case where no optional form may be elected.

Internal Revenue Code section 417(e) and ERISA section 205(g) incorporate the interest rates that the PBGC uses to value lump sum benefits in PBGC-trusteed plans in determining the ceiling on the interest rates that private sector plans may use to calculate lump sum distributions. Though many plans have chosen to use interest rates for lump sum purposes that are lower than PBGC interest rates, other plans have complied with the Code and ERISA by adopting provisions that are based explicitly on the PBGC's rate format under the existing regulation.

Were the PBGC to apply the new mortality and loading assumptions and the new interest rate structure to the valuation of lump sum benefits in PBGC-trusteed plans, there would be, for ongoing plans and terminations in the private sector, increases in PBGC-determined interest rate ceilings of about 1.5 to 2 percentage points for

retired participants and more for younger participants. If plan provisions were not modified to use lower interest rates for lump sums than interest rates under the proposed regulation, participants in ongoing plans and plans terminating in the private sector would receive lower lump sum payments. Further, because more benefits would be calculated as having present values under $3500, plans would be able to increase the number of participants they involuntarily cash out.

If the new mortality and loading assumptions and the new interest rate structures were used to value PBGC lump sum entitlements, they would also have an effect on lump sum amounts paid to participants in PBGC-trusteed plans, although that effect would be more limited. PBGC pays lump sums only to participants whose total benefit values do not exceed $3500, and adoption of the 1983 GAM Table would offset the higher interest rates. Nonetheless, the new interest rate format, along with elimination of the loading component from PBGC's interest assumptions, would result in a greater number of lower-valued lump sum payments to younger participants in PBGC-trusteed plans. (The effect of the PBGC's adoption of unisex mortality assumptions in determining lump sums in underfunded plans trusteed by the PBGC is discussed below.) Because such younger participants generally have much smaller benefits than do other participants, and because the greater deferral periods further decrease the costs of these lower benefits, the reductions would not be large in absolute terms. For some younger participants, however, the reductions in their lump sum amounts under the proposed regulation's assumptions could exceed 50 per cent of the amounts calculated under the current regulation.

Because the PBGC's use of the new mortality and loading assumptions and the new interest rate structure in valuing lump sum entitlements could substantially reduce participants' benefits, both in ongoing and terminated plans, the PBGC believes that it should not at this time apply the proposed annuity valuation system to the valuation of lump sum entitlements. Participant lump sum expectations, under both ongoing and terminated plans, that are based on the PBGC's existing valuation structure were created by Congress, and the PBGC believes that it should not alter those expectations without providing for a period of public discussion and the opportunity to obtain Congressional guidance.

However, the PBGC does not anticipate that the historical mortality assumptions and interest rate structure for lump sum valuations should remain in effect indefinitely, and the PBGC will be seeking guidance in this area from Congress, other administrative agencies, and the public. One possibility is that Congress will decide to modify Code and ERISA provisions so that they would no longer base the requirements for private sector lump sum assumptions on the PBGC's lump sum assumptions. In that event, the PBGC could adopt appropriate lump sum valuation assumptions without its current concern over the impact of its choice of assumptions on private sector lump sums. A second possibility is that public discussion will lead to the conclusion that the current statutory linkage will remain but that the PBGC should revise its lump sum valuation assumptions nonetheless. In either case, the PBGC invites comments as to what those assumptions should be.

In such circumstances, one issue likely to arise would be the mechanism of any transition from the current lump sum valuation assumptions to the new ones. If new assumptions tended to yield substantially different lump sum amounts, it might be appropriate for the PBGC to adopt a new lump sum valuation structure gradually, so as not to disrupt participant expectations based on the current statutory requirements. For example, the PBGC might adopt new regulations providing that PBGC lump sum obligations would be valued on the basis of the rate for 30-year obligations of the United States Treasury. The PBGC might at that time, for example, provide for a 5-year transition to the new rates, with the lump sum entitlement under the present system being modified each year by 20% of the difference between the amounts that would be due under the old and new approaches.

If a substantial change in private sector lump sum valuations would result from changes in permitted assumptions, it might also be appropriate to reconsider the appropriateness of permitting increased interest rate assumptions in the valuation of large private-sector lump sum entitlements. Section 417(e) of the Code and section 205(g) of ERISA now permit private sector plan administrators to employ interest rates that are 20% higher than the PBGC's rates in valuing lump sums in excess of $25,000.

The PBGC intends in any event that if it eventually adopts a lump sum valuation system based on the proposed annuity valuation system, it will not pay to participants receiving lump sums from the PBGC the amount of the loading charge included in the annuity valuation and charged to the plan's sponsor(s) and the members of their controlled group, if any, under section 4062(b) of ERISA. The elimination of the loading component from lump sums paid by the PBGC would be a change in present practice. The change would be justified because the cost of determining participant benefits is a substantial portion of the loading charge, and in the case of a small benefit may approach or even exceed the portion of the loading charge attributable to payment of the participant's benefits.

The PBGC also invites comments on any effects the proposed amendment could have in other contexts where PBGC interest rates are used, such as the merger and spinoff calculations prescribed by Treas. Reg. 1.414(l)–1(b)(5)(ii), or the determination of the accrued benefit derived from the contributions made by an employee under ERISA section 204(c)(2)(B) and Internal Revenue Code section 411(c)(2)(B).

The PBGC's own regulation on Benefit Reductions in Terminated Single-Employer Pension Plans and Recoupment of Benefit Overpayments, 29 CFR part 2623, specifies that "[t]he PBGC will compute interest on overpayments and underpayments using the interest rate established for valuing immediate annuities as set forth in part 2619 * * *." 29 CFR 2623.11(d). The PBGC intends that the immediate annuity rate to be used in lump sum valuations would continue to be used in this context. The PBGC invites comment on this intended approach. For instance, the PBGC might wish to consider paying interest on lump sum entitlements either on the basis of all the rates used to calculate a lump sum or on the basis of a standard short-term interest rate.

**Unisex Lump Sum Calculations**

Additionally, the proposed regulation will provide that when the PBGC discharges its obligations to a participant in a trusteed plan through a de minimis lump sum payment (i.e., one that does not exceed $3,500; see 29 CFR 2613.8(b)(1)), the value of the participant's benefit will be calculated on the basis of a unisex mortality table; i.e., the PBGC would calculate lump sum payments to men and women using the same mortality assumptions. The PBGC is proposing this change in its current practice to conform to the unisex mortality assumptions ordinarily employed in lump sum calculations by private pension plans; such plans shifted from sex distinct to unisex

assumptions to provide equal benefits to males and females in response to court decisions requiring such treatment in certain circumstances. Lump sum payments to women are somewhat lower and lump sum payments to men are somewhat higher under unisex mortality assumptions than they are under mortality assumptions that distinguish participants on the basis of sex, such as those now used by the PBGC.

The PBGC believes that its unisex tables should take into account its experience, i.e., the tables should recognize the historical high percentages of male participants in trusteed plans. The desired mix of male and female participants can be reasonably simulated by increasing the age indexes in male tables by one year, i.e., a 1-year setback from the male table; the same result would be achieved by decreasing the age indexes in female tables by four years. Because the unisex tables thus entail modifications of female mortality assumptions that are greater than the modifications of male mortality assumptions, the decreases in lump sum entitlements for women will be greater than the increases for men. The lump sum amounts paid to female participants will be reduced, while the amounts paid to male participants will be increased. The PBGC anticipates that the amount of the decrease for females would average approximately 8% at age 65 (and up to approximately 16% at younger ages) and the amount of the increase for males would average approximately 2% at age 65 (and up to approximately 4% at younger ages). However, because the maximum de minimis lump sum amount is $3500, the amounts of the changes will not be great.

**The Amendment**

The major changes made by the amendment would be in subpart C of the single-employer regulation (existing §§ 2619.41 through 2619.48). However, §§ 2619.3(a) and 2619.25(b)(2), which refer to subpart C provisions, would be amended to reflect the correct references. The new appendix A would be enlarged to include new mortality tables that incorporate the recommendations of the Committee on Annuities of the Society of Actuaries. Appendix B would be enlarged to include for each month the new interest rates and the periods during which they would apply to the valuation of annuity benefits. Tables of lives, like those contained in current appendix C, are unnecessary and thus would not be published under the proposed

regulation. The new appendix C would set forth expense loading assumptions.

The amendment would have no effect on the first section (§ 2619.41, Purpose and scope) or the last section (existing § 2619.48, Withdrawal of employee contributions) of subpart C, except to renumber the latter as § 2619.44. New § 2619.42(a) restates the rule from existing § 2619.43(b) regarding the form of benefit to be valued. New § 2619.42(b) restates the rule regarding the timing of benefits from existing § 2619.46(b). Most of the other sections of subpart C would be deleted and replaced by slightly reworded versions of §§ 2676.13 through 2676.14 from the multiemployer regulation.

New § 2619.43(a) carries over the substance of existing §§ 2619.43(a) and (c) and 2619.44(a). Like existing § 2619.43(a) (and unlike § 2676.13 in the multiemployer regulation), the new section makes clear that the actuarial formulas set forth in the regulation are to be regarded as standards of accuracy, not as absolute requirements.

Paragraphs (b) through (i) of new § 2619.43 contain actuarial formulas that would replace the formulas now set forth in existing §§ 2619.44, 2619.45, and 2619.47. The new formulas in paragraphs (b) through (i) are identical with those in §§ 2676.13(b) through (i) of the multiemployer regulation. Paragraphs (j) and (k) of new § 2619.43 restate the rules regarding single life cash refund annuities and installment refund annuities from existing §§ 2619.44 (m) and (n).

The following table shows the location of the proposed new formula corresponding to each valuation provision in the existing single-employer regulation.

| Existing provision | Proposed provision |
|---|---|
| 2619.44(c) | 2619.43(c)(2). |
| 2619.44(d) | 2619.43(c)(1). |
| 2619.44(e) | 2619.43(g)(2). |
| 2619.44(f) | 2619.43(g)(1). |
| 2619.44(g) | 2619.43(c)(3). |
| 2619.44(h) | 2619.43(e)(2). |
| 2619.44(i) | 2619.43(e)(1). |
| 2619.44(j) | 2619.43(e)(4). |
| 2619.44(k) | 2619.43(e)(4). |
| 2619.44(l) | 2619.43(e)(3). |
| 2619.44(m) | 2619.43(j). |
| 2619.44(n) | 2619.43(k). |
| 2619.45 | 2619.43(b), (d), (f), (g)(3), (g)(4). |
| 2619.47(b) | 2619.43(h)(1). |
| 2619.47(c) | 2619.43(h)(2). |
| 2619.47(d) | 2619.43(i)(1). |
| 2619.47(e) | 2619.43(i)(1). |
| 2619.47(f) | 2619.43(i)(2). |

The deletion of the formulas in prior § 2619.44 may cause some inconvenience for practitioners wishing to use them to calculate lump sum entitlements using the PBGC's historical

interest assumptions, because the new formulas, though yielding the same results, were developed for ease of application with "select and ultimate" assumptions. The PBGC expects that this inconvenience will be minimal in view of the formulas' ready availability in prior publications.

To avoid uncertainty among persons attempting to remain informed of changes in PBGC's assumptions, the PBGC will promulgate a new series of interest assumptions each month as necessary to respond to changes in current rates of investment return and consequent expectations regarding private sector annuity prices. The rate series would be constructed so as to produce values the total of which, for a typical plan, will be in line with the cost of commercial annuities covering the plan's annuity benefits—the same criterion used in setting rates under the existing single-employer regulation.

The multiemployer regulation will be simultaneously amended so that the same mortality, loading, and interest assumptions will be employed to determine the values of benefits under multiemployer plans after a mass withdrawal.

Because the mortality, loading, and interest assumptions will be set out in appendixes to the multiemployer regulation, §§ 2676.14 and 2676.15 will be deleted, and § 2676.16 will be redesignated as § 2676.14.

**E.O. 12291 and the Regulatory Flexibility Act**

The PBGC has determined that this proposed regulation is not a "major rule" for the purposes of Executive Order 12291, because it will not have an annual effect on the economy of $100 million or more, or create a major increase in costs or prices for consumers, individual industries, or geographic regions, or have significant adverse effects on competition, employment, investment, innovation, or the ability of United States-based enterprises to compete with foreign-based enterprises in domestic or export markets.

Under section 605(b) of the Regulatory Flexibility Act, the PBGC certifies that this rule will not have a significant economic impact on a substantial number of small entities. Pension plans with fewer than 100 participants have traditionally been treated as small plans. Such plans typically contract with actuarial firms, insurance companies, and other service providers for actuarial services. The larger providers of actuarial services perform valuations by computer, and such providers serve the great majority

of small plans. For such service providers, the proposed amendment would necessitate a one-time programming expense that would be amortized over a period of time and spread among not only small plan clients but larger plan clients as well. The economic impact of the amendment on each such small plan would thus be insignificant. Accordingly, compliance with sections 603 and 604 of the Regulatory Flexibility Act is waived.

List of Subjects

*29 CFR Part 2619*

Employee benefit plans, Pension insurance, Pensions.

*29 CFR Part 2676*

Employee benefit plans, Pensions.

In consideration of the foregoing, the PBGC proposes to amend parts 2619 and 2676 of chapter XXVI of title 29, Code of Federal Regulations, as follows:

**PART 2619—VALUATION OF PLAN BENEFITS IN SINGLE-EMPLOYER PLANS**

1. The authority citation for part 2619 is revised to read as follows:

**Authority:** 29 U.S.C. 1301(a), 1302(b)(3), 1341, 1344, and 1362.

**§ 2619.3    [Amended]**

2. In § 2619.3, the first sentence of paragraph (a) is amended by removing the words "§ 2619.46 of".

**§ 2619.25    [Amended]**

3. In § 2619.25, the second sentence of paragraph (b)(2) is amended by removing the words "§ 2619.46(c)" and adding in their place "subpart C of this part".

4. Sections 2619.42 and 2619.43 are revised to read as follows:

**§ 2619.42    Benefits to be valued.**

(a) *Form of benefit.* The plan administrator shall determine the form of each benefit to be valued, without regard to the form of benefit valued in any prior year, in accordance with the following rules:

(1) If a benefit is in pay status as of the valuation date, the plan administrator shall value the form of the benefit being paid.

(2) If a benefit is not in pay status as of the valuation date but a valid election with respect to the form of benefit has been made on or before the valuation date, the plan administrator shall value the form of benefit so elected.

(3) If a benefit is not in pay status as of the valuation date and no valid election with respect to the form of benefit has been made on or before the valuation date, the plan administrator shall value the form of benefit that, under the terms of the plan, is payable in the absence of a valid election.

(b) *Timing of benefit.* The plan administrator shall value benefits whose starting date is subject to election using the assumption specified in paragraph (b)(1) or (b)(2) of this section.

(1) *Where election made.* If a valid election of the starting date of a benefit has been made on or before the valuation date, the plan administrator shall assume that the starting date of the benefit is the starting date so elected.

(2) *Where no election made.* If no valid election of the starting date of a benefit has been made on or before the valuation date, the plan administrator shall assume that the starting date of the benefit is the later of—

(i) The expected retirement age, as determined under subpart D of this part, of the participant with respect to whom the benefit is payable, or

(ii) The valuation date.

**§ 2619.43    Valuation methods.**

(a) *General rule.* The plan administrator shall value annuity benefits as of the valuation date by—

(1) using the mortality assumptions prescribed by Tables VII through XII of appendix A to this part and the interest assumptions prescribed by Table II of appendix B to this part,

(2) using interpolation methods, where necessary, at least as accurate as linear interpolation,

(3) using formulas that are at least as accurate as the formulas set forth in paragraphs (b) through (k) of this section, and

(4) adjusting the values to reflect loading expenses in accordance with appendix C to this part.

For valuing benefits to be paid as lump sums, and for determining whether the lump sum value of a benefit exceeds $3,500, the plan administrator shall value benefits in the same manner as benefits to be paid as annuities except that the mortality assumptions set forth in Tables I through VI of appendix A to this part and the interest assumptions set forth in Table I of appendix B to this part shall apply, and there shall be no adjustment to reflect loading expenses.

(b) *Single-sum payments (other than death benefits).* The present value of a single-sum payment of 1 to be made $n$ years after the valuation date is as follows:

(1) If the payment is not contingent on the survival of any person:

$$v^{0:n} = \left( \frac{1}{1+i_{k+1}} \right)^{j} \cdot \prod_{t=1}^{k} \frac{1}{1+i_{t}} \quad ,$$

where $k$ is the greatest integer such that $k \le n$, $j = n-k$ (hence $0 \le j < 1$), $v^{0:0} = 1$, and $i_t$ is the interest rate determined under appendix B applicable to the year ending on the $t$th anniversary of the valuation date.

(2) If the payment is contingent on the survival of a person aged $x$ on the valuation date:

$$_n p_x \cdot v^{0:n} = v^{0:n} \cdot \prod_{t=0}^{n-1} (1 - q_{x+t}) \quad ,$$

where $q_x$ is the probability that a person living at age $x$ will not survive to age $x+1$, as determined under appendix A to this part.

(3) If the payment is contingent on the survival of two persons aged $x$ and $y$ respectively on the valuation date:

$$_np_x \cdot {_np_y} \cdot v^{0:n} \ .$$

(c) *Basic annuities in pay status.* The present value of an annuity due providing payments of $1/m$, $m$ times per year, starting on the valuation date, is as follows:

(1) If the annuity is for a term certain of $r$ years after the valuation date and is not contingent on the survival of any person:

$$\ddot{a}_{\overline{r}|}^{(m)} = \frac{1}{m} \sum_{t=0}^{r-1} \frac{v^{0:t}(v^{0:t} - v^{0:t+1})}{v^{0:t} - v^{0:t+1/m}} \ .$$

(2) If the annuity is for the life of a person aged $x$ on the valuation date:

$$\ddot{a}_x^{(m)} = \sum_{t=0}^{\infty} (v^{0:t} \cdot {_tp_x}) - \frac{m-1}{2m} \ .$$

(3) If the annuity is for the joint lives of two persons aged $x$ and $y$ on the valuation date:

$$\ddot{a}_{x:y}^{(m)} = \sum_{t=0}^{\infty} (v^{0:t} \cdot {_tp_x} \cdot {_tp_y}) - \frac{m-1}{2m} \ .$$

(d) *Basic deferred annuities.* The present value of an annuity due providing payments of $1/m$, $m$ times per year, starting $n$ years after the valuation date, is as follows:

(1) If the annuity is for a term certain of $r$ years and is not contingent on the survival of any person:

$$_n|\ddot{a}_{\overline{r}|}^{(m)} = \ddot{a}_{\overline{n+r}|}^{(m)} - \ddot{a}_{\overline{n}|}^{(m)} \ .$$

(2) If the annuity is for a term certain of $r$ years and is contingent on the survival for $n$ years of a person aged $x$ on the valuation date:

$$_np_x \cdot {_n|\ddot{a}_{\overline{r}|}^{(m)}} \ .$$

(3) If the annuity is for the life of a person aged $x$ on the valuation date:

$$_n|\ddot{a}_x^{(m)} = \sum_{t=n}^{\infty} (v^{0:t} \cdot {_tp_x}) - v^{0:n} \cdot {_np_x} \cdot \frac{m-1}{2m} \ .$$

(4) If the annuity is for the life of a person aged $y$ on the valuation date and is contingent on the survival for $n$ years of a person aged $x$ on the valuation date:

$$_n p_x \cdot {}_{n|}\ddot{a}_{\overline{r}|}^{(m)}$$

(5) If the annuity is for the joint lives of two persons aged $x$ and $y$ on the valuation date (if upon the death of the person aged $y$ the person aged $x$ may elect an actuarially increased single life annuity or if a new person may succeed to the survivor benefit, the mortality of the person aged $y$ during the deferral period should be ignored; i.e., $_n p_y = 1$):

$$_{n|}\ddot{a}_{x:y}^{(m)} = \sum_{t=n}^{\infty} (v^{0:t} \cdot {}_t p_x \cdot {}_t p_y) - v^{0:n} \cdot {}_n p_x \cdot {}_n p_y \cdot \frac{m-1}{2m}$$

(e) *Joint and survivor annuities in pay status.* The present value of an annuity due providing payments $m$ times per year, starting on the valuation date, in an initial amount of $1/m$ per payment, and in an ultimate amount of $s/m$ per payment, is as follows:

(1) If the annuity is payable in the initial amount for the life of a person aged $x$ on the valuation date and, after the death of that person, in the ultimate amount for the life of a person aged $y$ on the valuation date:

$$\ddot{a}_x^{(m)} + s(\ddot{a}_y^{(m)} - \ddot{a}_{x:y}^{(m)})$$

(2) If the annuity is payable in the initial amount for the joint lives of two persons aged $x$ and $y$ on the valuation date and, after the death of either of those persons, in the ultimate amount for the life of the survivor:

$$\ddot{a}_{x:y}^{(m)} + s(\ddot{a}_x^{(m)} + \ddot{a}_y^{(m)} - 2 \cdot \ddot{a}_{x:y}^{(m)})$$

(3) If the annuity is payable in the initial amount for a term certain of $r$ years after the valuation date or for the life of person aged $x$ on the valuation date (whichever of those two periods is longer) and, after the expiration of the term certain and the death of that person, in the ultimate amount for the life of a person aged $y$ on the valuation date:

$$\ddot{a}_{\overline{r}|}^{(m)} + {}_{r|}\ddot{a}_x^{(m)} + s({}_{r|}\ddot{a}_y^{(m)} - {}_{r|}\ddot{a}_{x:y}^{(m)})$$

(4) If the annuity is payable in the initial amount for a term certain of $r$ years after the valuation date or for the joint lives of two persons aged $x$ and $y$ on the valuation date (whichever of those two periods is longer) and, after the expiration of the term certain and the death of either of the persons, in the ultimate amount for the life of the survivor:

$$\ddot{a}_{\overline{r}|}^{(m)} + {}_{r|}\ddot{a}_{x:y}^{(m)} + s({}_{r|}\ddot{a}_x^{(m)} + {}_{r|}\ddot{a}_y^{(m)} - 2 \cdot {}_{r|}\ddot{a}_{x:y}^{(m)})$$

(f) *Deferred joint and survivor annuities.* The present value of an annuity due providing payments $m$ times per year, starting after the valuation date, in an initial amount of $1/m$ per payment, and in an ultimate amount of $s/m$ per payment, contingent on the survival for $n$ years of person aged $x$ on the valuation date, is as follows:

(1) If the annuity is payable in the initial amount for the life of the person and, after the death of that person, in the ultimate amount for the life of a person aged $y$ on the valuation date:

$$ {}_{n|}\ddot{a}_x^{(m)} + S\left({}_n p_x \cdot {}_{n|}\ddot{a}_y^{(m)} - {}_{n|}\ddot{a}_{x:y}^{(m)}\right) . $$

(2) If the annuity is payable in the initial amount for the joint lives of the person and a person aged $y$ on the valuation date and, after the death of either of those persons, in the ultimate amount for the life of the survivor:

$$ {}_{n|}\ddot{a}_{x:y}^{(m)} + S\left({}_{n|}\ddot{a}_x^{(m)} + {}_n p_x \cdot {}_{n|}\ddot{a}_y^{(m)} - 2\,{}_{n|}\ddot{a}_{x:y}^{(m)}\right) . $$

(3) If the annuity is payable in the initial amount for a term certain of $r$ years or for the life of the person (whichever of those two periods is longer) and, after the expiration of the term certain and the death of that person, in the ultimate amount for the life of a person aged $y$ on the valuation date:

$$ {}_n p_x \cdot {}_{n|}\ddot{a}_{\overline{r|}}^{(m)} + {}_{n+r|}\ddot{a}_x^{(m)} + S\left({}_n p_x \cdot {}_{n+r|}\ddot{a}_y^{(m)} - {}_{n+r|}\ddot{a}_{x:y}^{(m)}\right) . $$

(4) If the annuity is payable in the initial amount for a term certain of $r$ years or for the joint lives of the person and a person aged $y$ on the valuation date (whichever of those two periods is longer) and, after the expiration of the term certain and the death of either of those persons, in the ultimate amount for the life of the survivor:

$$ {}_n p_x \cdot {}_{n|}\ddot{a}_{\overline{r|}}^{(m)} + {}_{n+r|}\ddot{a}_{x:y}^{(m)} + S\left({}_{n+r|}\ddot{a}_x^{(m)} + {}_n p_x \cdot {}_{n+r|}\ddot{a}_y^{(m)} - 2 \cdot {}_{n+r|}\ddot{a}_{x:y}^{(m)}\right) . $$

(g) *Temporary life annuities and certain and life annuities.* The present value of an annuity due providing payments of $1/m$, $m$ times per year, for the life of a person aged $x$ on the valuation date or a term certain of $r$ years, is as follows:

(1) if the annuity starts on the valuation date and is for the shorter of those two periods:

$$ \ddot{a}_x^{(m)} - {}_{r|}\ddot{a}_x^{(m)} . $$

(2) If the annuity starts on the valuation date and is for the longer of those two periods:

$$ \ddot{a}_{\overline{r|}}^{(m)} + {}_{r|}\ddot{a}_x^{(m)} . $$

(3) If, contingent on the survival of the person for $n$ years, the annuity starts $n$ years after the valuation date and is for the shorter of those two periods:

$$ {}_{n|}\ddot{a}_x^{(m)} - {}_{n+r|}\ddot{a}_x^{(m)} . $$

(4) If, contingent on the survival of the person for $n$ years, the annuity starts $n$ years after the valuation date and is for the longer of those two periods:

$$_{n}p_{x} \cdot {_{n|}\ddot{a}_{\overline{r}|}^{(m)}} + {_{n+r|}\ddot{a}_{x}^{(m)}} \quad .$$

(h) *Fixed single-sum death benefits.* The present value of a fixed single-sum payment of *1* to be made upon the death of a person aged *x* on the valuation date is as follows:

(1) If the payment is to be made whenever death occurs:

$$\overline{A}_{x} = \sum_{t=0}^{\infty} v^{0:t+1/2} ({_{t}p_{x}} - {_{t+1}p_{x}}) \quad .$$

(2) If the payment is to be made only if the person dies within *r* years after the valuation date:

$$\overline{A}_{x:\overline{r}|}^{1} = \sum_{t=0}^{r-1} v^{0:t+1/2} ({_{t}p_{x}} - {_{t+1}p_{x}}) \quad .$$

(3) If the payment is to be made only if the person dies at least *n* years after the valuation date:

$$\overline{A}_{x} - \overline{A}_{x:\overline{n}|}^{1} \quad .$$

(4) If the payment is to be made only if the person dies at least *n* years, but within *n+r* years, after the valuation date:

$$\overline{A}_{x:\overline{n+r}|}^{1} - \overline{A}_{x:\overline{n}|}^{1} \quad .$$

(i) *Variable single-sum death benefits.* The present value of a single-sum payment to be made upon the death of a person aged *x* on the valuation date, if the person dies within *r* years after the valuation date, is as follows:

(1) If the amount payable is initially *r–1/m* and decreases by *1/m*, *m* times per year:

$$\sum_{t=0}^{r-1} \left( r - t - \frac{m+1}{2m} \right) \cdot v^{0:t+1/2} \cdot ({_{t}p_{x}} - {_{t+1}p_{x}}) \quad .$$

(2) If the amount payable is initially *1* and increases at an effective interest rate of *j*, compounded annually:

$$\sum_{t=0}^{r-1} (1+j)^{t+1/2} \cdot v^{0:t+1/2} \cdot ({_{t}p_{x}} - {_{t+1}p_{x}}) \quad .$$

(j) *Single life cash refund annuity.* A cash refund annuity is an annuity under which if the participant dies after retirement and before the time when he or she has received annuity payments equal to a fixed sum (usually the amount of his or her mandatory employee contributions, with or without interest), then the balance of the fixed sum is paid as a lump-sum death benefit. The plan administrator shall determine the value of a cash refund annuity by adding the values of—

(1) A life annuity payable periodically, valued in accordance with § 2619.43(c)(2), and

(2) A death benefit in the form of decreasing term insurance decreasing periodically, valued in accordance with § 2619.43(i)(1).

(k) *Installment refund annuity.* An installment refund annuity is an annuity under which if the participant dies after retirement and before the time he or she has received annuity payments equal to a fixed amount (usually the amount of his or her mandatory employee contributions, with or without interest), then the balance is paid as a death benefit in periodic installments, each (except possibly the last) equal in amount to the participant's annuity payments. The plan administrator shall compute the value of an installment refund annuity by valuing it as an annuity certain and continuous in accordance with § 2619.43(g)(2). The period certain shall be determined by dividing the fixed amount by the amount of the periodic annuity payment.

**§§ 2619.44 through 2619.47  [Removed]**

**§ 2619.48  [Redesignated as § 2619.44]**

5. Sections 2619.44 through 2619.47 are removed, and § 2619.48 is redesignated as § 2619.44.

6. The heading of appendix A to part 2619 and the introductory material preceding Table I of appendix A is revised to read as follows:

**Appendix A to Part 2619—Mortality Rate Tables**

To determine the value of mortality factors of the form $_np_x$ (as defined in § 2619.43(b)(2)) for purposes of applying the formulas set forth in § 2619.43 (b) through (k), and in determining the value of any mortality factor used in valuing annuity benefits under this subpart, the plan administrator shall use the values of $q_x$ prescribed in Tables VII through XII of this appendix.

If an annuity for one person is in pay status on the valuation date, and if the payment of a death benefit after the valuation date to another person, who need not be identifiable on the valuation date, depends in whole or in part on the death of the pay status annuitant, then the mortality factors involved in the valuation of the death benefit shall be determined as follows. In the case of factors that represent the mortality of the pay status annuitant, the plan administrator shall apply the mortality rates that are applicable to the annuity in pay status under appendix A. In the case of factors that represent the mortality of the death beneficiary, the plan administrator shall apply the mortality rates applicable to annuities not in pay status and to deferred benefits other than annuities, under Table VII or VIII of this appendix.

For determining whether the value of a participant's benefit is $3,500 or less under § 2613.8(b)(1) and, if so, for calculating the value of the benefit, the PBGC will employ the mortality assumptions obtained from Tables I through VI of this appendix by substituting $x+1$ for $x$ throughout the male mortality table associated with the participant's health status. For example, a healthy female participant's lump sum would be determined using Table I (healthy male participants), modified so that all entries $x$ in the table are increased by 1 ($q_{16}$=.001437; $q_{17}$=.001414; etc.). The Tables provide, for each age (denoted by $x$), the probability that a person assumed to be living at that age will not survive to attain age $x+1$. (The sample tables for healthy participants are based on data obtained by the Committee on Annuities of the Society of Actuaries from mortality experience through 1983.)

7. Appendix A to part 2619 is amended by adding Tables VII through XII as follows:

**Tables VII and VIII—Mortality Tables for Healthy Lives**

The values of $q_x$ applicable to annuities in pay status on the valuation date that are not being received as disability benefits, to annuities not in pay status on the valuation date, and to deferred benefits other than annuities or lump sums, are as follows:

TABLE VII.—MORTALITY TABLE FOR HEALTHY MALE PARTICIPANTS

| Age x | $q_x$ |
| --- | --- |
| 5 | 0.000342 |
| 6 | 0.000318 |
| 7 | 0.000302 |
| 8 | 0.000294 |
| 9 | 0.000292 |
| 10 | 0.000293 |
| 11 | 0.000298 |
| 12 | 0.000304 |
| 13 | 0.000310 |
| 14 | 0.000317 |
| 15 | 0.000325 |
| 16 | 0.000333 |
| 17 | 0.000343 |
| 18 | 0.000353 |
| 19 | 0.000365 |
| 20 | 0.000377 |
| 21 | 0.000392 |
| 22 | 0.000408 |
| 23 | 0.000424 |
| 24 | 0.000444 |
| 25 | 0.000464 |
| 26 | 0.000488 |
| 27 | 0.000513 |
| 28 | 0.000542 |
| 29 | 0.000572 |
| 30 | 0.000607 |
| 31 | 0.000645 |
| 32 | 0.000687 |

TABLE VII.—MORTALITY TABLE FOR HEALTHY MALE PARTICIPANTS—Continued

| Age x | $q_x$ |
| --- | --- |
| 33 | 0.000734 |
| 34 | 0.000785 |
| 35 | 0.000860 |
| 36 | 0.000907 |
| 37 | 0.000966 |
| 38 | 0.001039 |
| 39 | 0.001128 |
| 40 | 0.001228 |
| 41 | 0.001370 |
| 42 | 0.001527 |
| 43 | 0.001715 |
| 44 | 0.001932 |
| 45 | 0.002183 |
| 46 | 0.002471 |
| 47 | 0.002790 |
| 48 | 0.003138 |
| 49 | 0.003513 |
| 50 | 0.003909 |
| 51 | 0.004324 |
| 52 | 0.004755 |
| 53 | 0.005200 |
| 54 | 0.005660 |
| 55 | 0.006131 |
| 56 | 0.006618 |
| 57 | 0.007139 |
| 58 | 0.007719 |
| 59 | 0.008384 |
| 60 | 0.009158 |
| 61 | 0.010064 |
| 62 | 0.011133 |
| 63 | 0.012391 |
| 64 | 0.013868 |
| 65 | 0.015592 |
| 66 | 0.017579 |
| 67 | 0.019804 |
| 68 | 0.022229 |
| 69 | 0.024817 |
| 70 | 0.027530 |
| 71 | 0.030354 |
| 72 | 0.033370 |
| 73 | 0.036680 |
| 74 | 0.040388 |
| 75 | 0.044567 |
| 76 | 0.049388 |
| 77 | 0.054758 |
| 78 | 0.060678 |
| 79 | 0.067125 |
| 80 | 0.074070 |
| 81 | 0.081484 |
| 82 | 0.089320 |
| 83 | 0.097525 |
| 84 | 0.106047 |
| 85 | 0.114836 |
| 86 | 0.124170 |
| 87 | 0.133870 |
| 88 | 0.144073 |
| 89 | 0.154859 |
| 90 | 0.166307 |
| 91 | 0.178214 |
| 92 | 0.190480 |
| 93 | 0.203007 |
| 94 | 0.217304 |
| 95 | 0.234086 |
| 96 | 0.248436 |
| 97 | 0.263954 |
| 98 | 0.280803 |
| 99 | 0.299154 |
| 100 | 0.319185 |
| 101 | 0.341086 |
| 102 | 0.365062 |
| 103 | 0.383102 |
| 104 | 0.427255 |
| 105 | 0.469531 |
| 106 | 0.521945 |
| 107 | 0.586518 |
| 108 | 0.665268 |
| 109 | 0.760215 |
| 110 | 1.000000 |

### TABLE VIII.—MORTALITY TABLE FOR HEALTHY FEMALE PARTICIPANTS

| Age x | qx |
|---|---|
| 11 | 0.000342 |
| 12 | 0.000318 |
| 13 | 0.000300 |
| 14 | 0.000294 |
| 15 | 0.000292 |
| 16 | 0.000293 |
| 17 | 0.000296 |
| 18 | 0.000304 |
| 19 | 0.000310 |
| 20 | 0.000317 |
| 21 | 0.000325 |
| 22 | 0.000333 |
| 23 | 0.000343 |
| 24 | 0.000353 |
| 25 | 0.000365 |
| 26 | 0.000377 |
| 27 | 0.000392 |
| 28 | 0.000408 |
| 29 | 0.000424 |
| 30 | 0.000444 |
| 31 | 0.000464 |
| 32 | 0.000488 |
| 33 | 0.000513 |
| 34 | 0.000542 |
| 35 | 0.000572 |
| 36 | 0.000607 |
| 37 | 0.000645 |
| 38 | 0.000687 |
| 39 | 0.000734 |
| 40 | 0.000785 |
| 41 | 0.000860 |
| 42 | 0.000907 |
| 43 | 0.000966 |
| 44 | 0.001039 |
| 45 | 0.001128 |
| 46 | 0.001238 |
| 47 | 0.001370 |
| 48 | 0.001527 |
| 49 | 0.001715 |
| 50 | 0.001932 |
| 51 | 0.002183 |
| 52 | 0.002471 |
| 53 | 0.002790 |
| 54 | 0.003138 |
| 55 | 0.003513 |
| 56 | 0.003909 |
| 57 | 0.004324 |
| 58 | 0.004755 |
| 59 | 0.005200 |
| 60 | 0.005660 |
| 61 | 0.006131 |
| 62 | 0.006618 |
| 63 | 0.007139 |
| 64 | 0.007719 |
| 65 | 0.008384 |
| 66 | 0.009158 |
| 67 | 0.010064 |
| 68 | 0.011133 |
| 69 | 0.012391 |
| 70 | 0.013868 |
| 71 | 0.015592 |
| 72 | 0.017579 |
| 73 | 0.019804 |
| 74 | 0.022229 |
| 75 | 0.024817 |
| 76 | 0.027530 |
| 77 | 0.030354 |
| 78 | 0.033370 |
| 79 | 0.036680 |
| 80 | 0.040388 |
| 81 | 0.044597 |
| 82 | 0.049388 |
| 83 | 0.054758 |
| 84 | 0.060678 |
| 85 | 0.067125 |
| 86 | 0.074070 |
| 87 | 0.081484 |
| 88 | 0.089320 |
| 89 | 0.097525 |
| 90 | 0.106047 |

### TABLE VIII.—MORTALITY TABLE FOR HEALTHY FEMALE PARTICIPANTS—Continued

| Age x | qx |
|---|---|
| 91 | 0.114836 |
| 92 | 0.124170 |
| 93 | 0.133870 |
| 94 | 0.144073 |
| 95 | 0.154859 |
| 96 | 0.166307 |
| 97 | 0.178214 |
| 98 | 0.190460 |
| 99 | 0.203007 |
| 100 | 0.217904 |
| 101 | 0.234098 |
| 102 | 0.248436 |
| 103 | 0.263954 |
| 104 | 0.280803 |
| 105 | 0.299154 |
| 106 | 0.319185 |
| 107 | 0.341086 |
| 108 | 0.365052 |
| 109 | 0.393102 |
| 110 | 0.427255 |
| 111 | 0.469531 |
| 112 | 0.521945 |
| 113 | 0.586518 |
| 114 | 0.665268 |
| 115 | 0.760215 |
| 116 | 1.000000 |

**Tables IX and X—Mortality Tables for Disabled Lives (Other Than Social Security Disability)**

The values of $q_x$ applicable to annuities in pay status on the valuation date that are being received as disability benefits and for which neither eligibility for, nor receipt of, Social Security disability benefits is a prerequisite, are as follows:

### TABLE IX.—MORTALITY TABLE FOR DISABLED MALE PARTICIPANTS NOT RECEIVING SOCIAL SECURITY DISABILITY BENEFIT PAYMENTS

| Age x | qx |
|---|---|
| 2 | 0.000342 |
| 3 | 0.000318 |
| 4 | 0.000300 |
| 5 | 0.000294 |
| 6 | 0.000292 |
| 7 | 0.000293 |
| 8 | 0.000298 |
| 9 | 0.000304 |
| 10 | 0.000310 |
| 11 | 0.000317 |
| 12 | 0.000325 |
| 13 | 0.000333 |
| 14 | 0.000343 |
| 15 | 0.000353 |
| 16 | 0.000365 |
| 17 | 0.000377 |
| 18 | 0.000392 |
| 19 | 0.000408 |
| 20 | 0.000424 |
| 21 | 0.000444 |
| 22 | 0.000464 |
| 23 | 0.000488 |
| 24 | 0.000513 |
| 25 | 0.000542 |
| 26 | 0.000572 |
| 27 | 0.000607 |
| 28 | 0.000645 |
| 29 | 0.000687 |
| 30 | 0.000734 |
| 31 | 0.000785 |
| 32 | 0.000860 |

### TABLE IX.—MORTALITY TABLE FOR DISABLED MALE PARTICIPANTS NOT RECEIVING SOCIAL SECURITY DISABILITY BENEFIT PAYMENTS—Continued

| Age x | qx |
|---|---|
| 33 | 0.000907 |
| 34 | 0.000966 |
| 35 | 0.001039 |
| 36 | 0.001128 |
| 37 | 0.001238 |
| 38 | 0.001370 |
| 39 | 0.001527 |
| 40 | 0.001715 |
| 41 | 0.001932 |
| 42 | 0.002183 |
| 43 | 0.002471 |
| 44 | 0.002790 |
| 45 | 0.003138 |
| 46 | 0.003513 |
| 47 | 0.003909 |
| 48 | 0.004324 |
| 49 | 0.004755 |
| 50 | 0.005200 |
| 51 | 0.005660 |
| 52 | 0.006131 |
| 53 | 0.006618 |
| 54 | 0.007139 |
| 55 | 0.007719 |
| 56 | 0.008384 |
| 57 | 0.009158 |
| 58 | 0.010064 |
| 59 | 0.011133 |
| 60 | 0.012391 |
| 61 | 0.013868 |
| 62 | 0.015592 |
| 63 | 0.017579 |
| 64 | 0.019804 |
| 65 | 0.022229 |
| 66 | 0.024817 |
| 67 | 0.027530 |
| 68 | 0.030354 |
| 69 | 0.033370 |
| 70 | 0.036680 |
| 71 | 0.040388 |
| 72 | 0.044597 |
| 73 | 0.049388 |
| 74 | 0.054758 |
| 75 | 0.060678 |
| 76 | 0.067125 |
| 77 | 0.074070 |
| 78 | 0.081484 |
| 79 | 0.089320 |
| 80 | 0.097525 |
| 81 | 0.106047 |
| 82 | 0.114836 |
| 83 | 0.124170 |
| 84 | 0.133870 |
| 85 | 0.144073 |
| 86 | 0.154859 |
| 87 | 0.166307 |
| 88 | 0.178214 |
| 89 | 0.190460 |
| 90 | 0.203007 |
| 91 | 0.217904 |
| 92 | 0.234098 |
| 93 | 0.248436 |
| 94 | 0.263954 |
| 95 | 0.280803 |
| 96 | 0.299154 |
| 97 | 0.319185 |
| 98 | 0.341086 |
| 99 | 0.365052 |
| 100 | 0.393102 |
| 101 | 0.427255 |
| 102 | 0.469531 |
| 103 | 0.521945 |
| 104 | 0.586518 |
| 105 | 0.665268 |
| 106 | 0.760215 |
| 107 | 1.000000 |

**5140**    **Federal Register** / Vol. 58, No. 11 / Tuesday, January 19, 1993 / Proposed Rules

### TABLE X.—MORTALITY TABLE FOR DISABLED FEMALE PARTICIPANTS NOT RECEIVING SOCIAL SECURITY DISABILITY BENEFIT PAYMENTS

| Age x | qx |
| --- | --- |
| 8 | 0.000342 |
| 9 | 0.000318 |
| 10 | 0.000302 |
| 11 | 0.000294 |
| 12 | 0.000292 |
| 13 | 0.000293 |
| 14 | 0.000298 |
| 15 | 0.000304 |
| 16 | 0.000310 |
| 17 | 0.000317 |
| 18 | 0.000325 |
| 19 | 0.000333 |
| 20 | 0.000343 |
| 21 | 0.000353 |
| 22 | 0.000365 |
| 23 | 0.000377 |
| 24 | 0.000392 |
| 25 | 0.000408 |
| 26 | 0.000424 |
| 27 | 0.000444 |
| 28 | 0.000464 |
| 29 | 0.000488 |
| 30 | 0.000513 |
| 31 | 0.000542 |
| 32 | 0.000572 |
| 33 | 0.000607 |
| 34 | 0.000645 |
| 35 | 0.000687 |
| 36 | 0.000734 |
| 37 | 0.000785 |
| 38 | 0.000860 |
| 39 | 0.000907 |
| 40 | 0.000966 |
| 41 | 0.001039 |
| 42 | 0.001128 |
| 43 | 0.001238 |
| 44 | 0.001370 |
| 45 | 0.001527 |
| 46 | 0.001715 |
| 47 | 0.001932 |
| 48 | 0.002163 |
| 49 | 0.002471 |
| 50 | 0.002790 |
| 51 | 0.003138 |
| 52 | 0.003513 |
| 53 | 0.003909 |
| 54 | 0.004324 |
| 55 | 0.004755 |
| 56 | 0.005200 |
| 57 | 0.005660 |
| 58 | 0.006131 |
| 59 | 0.006618 |
| 60 | 0.007139 |
| 61 | 0.007719 |
| 62 | 0.008384 |
| 63 | 0.009158 |
| 64 | 0.010064 |
| 65 | 0.011133 |
| 66 | 0.012391 |
| 67 | 0.013868 |
| 68 | 0.015592 |
| 69 | 0.017575 |
| 70 | 0.019804 |
| 71 | 0.022229 |
| 72 | 0.024817 |
| 73 | 0.027530 |
| 74 | 0.030354 |
| 75 | 0.033370 |
| 76 | 0.036680 |
| 77 | 0.040388 |
| 78 | 0.044597 |
| 79 | 0.049388 |
| 80 | 0.054758 |
| 81 | 0.060678 |
| 82 | 0.067125 |
| 83 | 0.074070 |
| 84 | 0.081484 |
| 85 | 0.089320 |
| 86 | 0.097525 |
| 87 | 0.106047 |
| 88 | 0.114836 |
| 89 | 0.124170 |
| 90 | 0.133870 |
| 91 | 0.144073 |
| 92 | 0.154859 |
| 93 | 0.166307 |
| 94 | 0.178214 |
| 95 | 0.190460 |
| 96 | 0.203007 |
| 97 | 0.217904 |
| 98 | 0.234086 |
| 99 | 0.248436 |
| 100 | 0.263954 |
| 101 | 0.280803 |
| 102 | 0.299154 |
| 103 | 0.319185 |
| 104 | 0.341086 |
| 105 | 0.365052 |
| 106 | 0.393102 |
| 107 | 0.427255 |
| 108 | 0.469531 |
| 109 | 0.521945 |
| 110 | 0.586518 |
| 111 | 0.665268 |
| 112 | 0.760215 |
| 113 | 1.000000 |

### Tables XI and XII—Mortality Tables for Disabled Lives (Social Security Disability)

The values of $q_x$ applicable to annuities in pay status on the valuation date that are being received as disability benefits and for which either eligibility for, or receipt of, Social Security disability benefits is a prerequisite, are as follows:

### TABLE XI.—MORTALITY TABLE FOR DISABLED MALE PARTICIPANTS RECEIVING SOCIAL SECURITY DISABILITY BENEFIT PAYMENTS

| Age x | qx |
| --- | --- |
| 5 | 0.000000 |
| 6 | 0.000000 |
| 7 | 0.000000 |
| 8 | 0.000000 |
| 9 | 0.000000 |
| 10 | 0.000000 |
| 11 | 0.000000 |
| 12 | 0.000000 |
| 13 | 0.000000 |
| 14 | 0.000000 |
| 15 | 0.000000 |
| 16 | 0.000000 |
| 17 | 0.000000 |
| 18 | 0.000000 |
| 19 | 0.000000 |
| 20 | 0.048300 |
| 21 | 0.048300 |
| 22 | 0.048300 |
| 23 | 0.048300 |
| 24 | 0.048300 |
| 25 | 0.048300 |
| 26 | 0.045100 |
| 27 | 0.043600 |
| 28 | 0.041100 |
| 29 | 0.038600 |
| 30 | 0.036200 |
| 31 | 0.033900 |
| 32 | 0.032000 |
| 33 | 0.030200 |
| 34 | 0.028800 |
| 35 | 0.027800 |
| 36 | 0.027200 |
| 37 | 0.027100 |
| 38 | 0.027300 |
| 39 | 0.027600 |
| 40 | 0.028200 |
| 41 | 0.028800 |
| 42 | 0.029700 |
| 43 | 0.030500 |
| 44 | 0.031400 |
| 45 | 0.032200 |
| 46 | 0.033000 |
| 47 | 0.034000 |
| 48 | 0.035300 |
| 49 | 0.036700 |
| 50 | 0.038300 |
| 51 | 0.040100 |
| 52 | 0.042000 |
| 53 | 0.043900 |
| 54 | 0.046000 |
| 55 | 0.048200 |
| 56 | 0.050600 |
| 57 | 0.053100 |
| 58 | 0.055500 |
| 59 | 0.058100 |
| 60 | 0.060300 |
| 61 | 0.062400 |
| 62 | 0.064300 |
| 63 | 0.065700 |
| 64 | 0.066800 |
| 65 | 0.069225 |
| 66 | 0.071813 |
| 67 | 0.074526 |
| 68 | 0.077350 |
| 69 | 0.080366 |
| 70 | 0.083676 |
| 71 | 0.087384 |
| 72 | 0.091593 |
| 73 | 0.096384 |
| 74 | 0.101754 |
| 75 | 0.107674 |
| 76 | 0.114121 |
| 77 | 0.121066 |
| 78 | 0.128480 |
| 79 | 0.136316 |
| 80 | 0.144521 |
| 81 | 0.153043 |
| 82 | 0.161832 |
| 83 | 0.171166 |
| 84 | 0.180866 |
| 85 | 0.191069 |
| 86 | 0.201855 |
| 87 | 0.213303 |
| 88 | 0.225210 |
| 89 | 0.237456 |
| 90 | 0.250003 |
| 91 | 0.264900 |
| 92 | 0.281082 |
| 93 | 0.295432 |
| 94 | 0.310950 |
| 95 | 0.327799 |
| 96 | 0.346150 |
| 97 | 0.366181 |
| 98 | 0.388082 |
| 99 | 0.412048 |
| 100 | 0.440098 |
| 101 | 0.474251 |
| 102 | 0.568941 |
| 103 | 0.568941 |
| 104 | 0.633514 |
| 105 | 0.712264 |
| 106 | 0.807211 |
| 107 | 1.000000 |

TABLE XII.—MORTALITY TABLE FOR DIS-
ABLED FEMALE PARTICIPANTS RECEIVING
SOCIAL SECURITY DISABILITY BENEFIT
PAYMENTS

| Age x | $q_x$ |
|-------|-------|
| 5 | 0.000000 |
| 6 | 0.000000 |
| 7 | 0.000000 |
| 8 | 0.000000 |
| 9 | 0.000000 |
| 10 | 0.000000 |
| 11 | 0.000000 |
| 12 | 0.000000 |
| 13 | 0.000000 |
| 14 | 0.000000 |
| 15 | 0.000000 |
| 16 | 0.000000 |
| 17 | 0.000000 |
| 18 | 0.000000 |
| 19 | 0.000000 |
| 20 | 0.026300 |
| 21 | 0.026300 |
| 22 | 0.026300 |
| 23 | 0.026300 |
| 24 | 0.026300 |
| 25 | 0.026300 |
| 26 | 0.025700 |
| 27 | 0.025300 |
| 28 | 0.024700 |
| 29 | 0.024200 |
| 30 | 0.023700 |
| 31 | 0.023200 |
| 32 | 0.022700 |
| 33 | 0.022200 |
| 34 | 0.021800 |
| 35 | 0.021400 |
| 36 | 0.021200 |
| 37 | 0.021000 |
| 38 | 0.020800 |
| 39 | 0.020800 |
| 40 | 0.020900 |
| 41 | 0.021000 |
| 42 | 0.021300 |
| 43 | 0.021600 |
| 44 | 0.021900 |
| 45 | 0.022400 |
| 46 | 0.022900 |
| 47 | 0.023500 |
| 48 | 0.024200 |
| 49 | 0.024900 |
| 50 | 0.025700 |
| 51 | 0.026400 |
| 52 | 0.027200 |
| 53 | 0.028100 |
| 54 | 0.028800 |
| 55 | 0.029500 |
| 56 | 0.030100 |
| 57 | 0.030700 |

TABLE XII.—MORTALITY TABLE FOR DIS-
ABLED FEMALE PARTICIPANTS RECEIVING
SOCIAL SECURITY DISABILITY BENEFIT
PAYMENTS—Continued

| Age x | $q_x$ |
|-------|-------|
| 58 | 0.031500 |
| 59 | 0.032300 |
| 60 | 0.033100 |
| 61 | 0.033900 |
| 62 | 0.034700 |
| 63 | 0.035500 |
| 64 | 0.036200 |
| 65 | 0.037269 |
| 66 | 0.038527 |
| 67 | 0.040004 |
| 68 | 0.041728 |
| 69 | 0.043715 |
| 70 | 0.045945 |
| 71 | 0.048365 |
| 72 | 0.050953 |
| 73 | 0.053666 |
| 74 | 0.056490 |
| 75 | 0.059506 |
| 76 | 0.062816 |
| 77 | 0.066524 |
| 78 | 0.070733 |
| 79 | 0.075524 |
| 80 | 0.080894 |
| 81 | 0.086814 |
| 82 | 0.093261 |
| 83 | 0.100206 |
| 84 | 0.107620 |
| 85 | 0.115456 |
| 86 | 0.123661 |
| 87 | 0.132183 |
| 88 | 0.140972 |
| 89 | 0.150306 |
| 90 | 0.160006 |
| 91 | 0.170209 |
| 92 | 0.180995 |
| 93 | 0.192453 |
| 94 | 0.204350 |
| 95 | 0.216596 |
| 96 | 0.229143 |
| 97 | 0.244040 |
| 98 | 0.260222 |
| 99 | 0.274572 |
| 100 | 0.290090 |
| 101 | 0.306939 |
| 102 | 0.325290 |
| 103 | 0.345321 |
| 104 | 0.367222 |
| 105 | 0.391188 |
| 106 | 0.419238 |
| 107 | 0.453391 |
| 108 | 0.495667 |
| 109 | 0.548061 |
| 110 | 0.612654 |

TABLE XII.—MORTALITY TABLE FOR DIS-
ABLED FEMALE PARTICIPANTS RECEIVING
SOCIAL SECURITY DISABILITY · BENEFIT
PAYMENTS—Continued

| Age x | $q_x$ |
|-------|-------|
| 111 | 0.691404 |
| 112 | 0.786351 |
| 113 | 1.000000 |

8. Appendix B to Part 2619 is revised to read as follows:

### Appendix B to Part 2619—Interest Rates Used to Value Lump Sums and Annuities

*Lump Sum Valuations*

In determining the value of interest factors of the form $v^{o't}$ (as defined in § 2619.43(b)(1)) for purposes of applying the formulas set forth in § 2619.43 (b) through (i) and in determining the value of any interest factor used in valuing benefits under this subpart to be paid as lump sums, the PBGC shall employ the values of $i_t$ set out in Table I hereof as follows:

(1) For benefits for which the participant or beneficiary is entitled to be in pay status on the valuation date, the immediate annuity rate shall apply.

(2) For benefits for which the deferral period is y years (y is an integer and $o < y \leq n_1$), interest rate $i_1$ shall apply from the valuation date for a period of y years; thereafter the immediate annuity rate shall apply.

(3) For benefits for which the deferral period is y years (y is an integer and $n_1 < y \leq n_1 + n_2$), interest rate $i_2$ shall apply from the valuation date for a period of $y - n_1$ years, interest rate $i_1$ shall apply for the following $n_1$ years; thereafter the immediate annuity rate shall apply.

(4) For benefits for which the deferral period is y years (y is an integer and $y > n_1 + n_2$), interest rate $i_3$ shall apply from the valuation date for a period of $y - n_1 - n_2$ years, interest rate $i_2$ shall apply for the following $n_2$ years, interest rate $i_1$ shall apply for the following $n_1$ years; thereafter the immediate annuity rate shall apply.

#### TABLE I (SAMPLE RATES)
[Lump Sum Valuations]

| Rate set | For plans with a valuation date | | Immediate annuity rate (percent) | Deferred annuities (percent) | | | | |
|----------|---------------------------------|--|----------------------------------|------|------|------|------|------|
| | On or after | Before | | $i_1$ | $i_2$ | $i_3$ | $n_1$ | $n_2$ |
| 1 | 3-1-93 | 4-1-93 | 6.25 | 5.50 | 4.25 | 4.00 | 7 | 8 |
| 2 | 4-1-93 | 6-1-93 | 6.50 | 5.75 | 4.50 | 4.00 | 7 | 8 |

*Annuity Valuations*

In determining the value of interest factors of the form $v^{o't}$ (as defined in § 2619.43(b)(1)) for purposes of applying the formulas set forth in § 2619.43(b)(i) and in determining the value of any interest factor used in valuing annuity benefits under this subpart, the plan administrator shall use the values of $i_t$ prescribed in Table II hereof.

The following table tabulates, for each calendar month of valuation ending after the effective date of this part, the interest rates (denoted by $i_1, i_2, * * *$, and referred to generally as $i_t$) assumed to be in effect

between specified anniversaries of a valuation date that occurs within that calendar month; those anniversaries are specified in the columns adjacent to the rates. The last listed rate is assumed to be in effect after the last listed anniversary date. (In the sample table printed below, the interest rates to be used for January 1995 valuation dates are 8.50% for the first 20 years and 5.75% thereafter.)

### TABLE II (SAMPLE RATES)
[Annuity Valuations]

| For valuation dates occurring in the month— | The values of $i_t$ are: | | |
|---|---|---|---|
| | $i_t$ for $t =$ | $i_t$ for $t =$ | $i_t$ for $t =$ |
| January 1995 ............................................ | .0850 1–20 | .0575 >20 | N/A N/A |
| February 1995 ........................................... | .0825 1–15 | .0600 16–25 | .0550 >25 |

9. Appendix C to Part 2619 is revised to read as follows:

### Appendix C to Part 2619—Loading Assumptions

The following tables of loading expenses are in effect for the indicated periods and are to be used to adjust annuity benefit values pursuant to § 2619.43(a)(4).

| If the total value of the plan's benefit liabilities (as defined in 29 U.S.C. § 1301(a)(16)), exclusive of the loading charge, is— | | The loading charge pursuant to § 2619.43(a)(4) equals— |
|---|---|---|
| Greater than | But less than or equal to | |
| $0 ...................................... | $200,000 | 5% of the total value of the plan's benefits, plus $200 for each plan participant. |
| 200,000 ............................... | | $10,000, plus a percentage of the excess of the total value over $200,000, plus $200 for each plan participant; the percentage is equal to 1% + ($i_1$%—7.50%)/10, where $i_1$ is the initial rate set forth in Table II of Appendix B for the valuation of annuities. |

## PART 2676—VALUATION OF PLAN BENEFITS AND PLAN ASSETS FOLLOWING MASS WITHDRAWAL

10. The authority citation for part 2676 continues to read as follows:

**Authority:** 29 U.S.C. 1302(b)(3), 1399(c)(1)(D), and 1441(b)(1). 11. Section 2676.13 is amended by revising paragraphs (a) and (b)(2) to read as follows:

### § 2676.13   Valuation methods.

(a) *General rule.* Except as otherwise provided in § 2676.14 (pertaining to plans that are closing out), the plan sponsor shall value annuity benefits as of the valuation date by—

(1) Using the mortality and interest assumptions prescribed by Tables VII through XII of appendix A to this part and Table II of appendix B to this part,

(2) Using interpolation methods, where necessary, at least as accurate as linear interpolation;

(3) In the case of a benefit described in paragraphs (b) through (i) of this section, applying the formula set forth therein for the present value of that benefit,

(4) In the case of a benefit not described in paragraphs (b) through (i) of this section, applying formulas derived from generally accepted actuarial principles in a manner consistent with the formulas set forth in paragraphs (b) through (i) of this section, and

(5) Adjusting the values to reflect loading expenses in accordance with appendix C to this part.

If the PBGC is trustee of a multiemployer plan, for determining whether the value of a participant's benefit is $3,500 or less under § 2613.8(b)(1) and, if so, for calculating the value of the benefit, the PBGC shall value benefits to be paid as lump sums in the same manner as benefits to be paid as annuities except that the mortality assumptions set forth in Tables I through VI of appendix A to this part and the interest assumptions set forth in Table I of appendix B to this part shall apply, and there shall be no adjustment to reflect loading expenses.

(b) * * *

(2) If the payment is contingent on the survival of a person aged $x$ on the valuation date:

$$_np_x \cdot v^{0:n} = v^{0:n} \cdot \prod_{t=0}^{n-1} (1 - q_{x+t}) \quad ,$$

where $q_x$ is the probability that a person living at age $x$ will not survive to age $x + 1$, as determined under appendix A.

* * * * *

### §§ 2676.14 and 2676.15   [Removed]

### § 2676.16   [Redesignated as § 2676.14]

12. Sections 2676.14 and 2676.15 are removed and § 2676.16 is redesignated as § 2676.14.

13. Appendixes A, B, and C to part 2676 are added to read as follows:

## Appendix A to Part 2676—Mortality Rate Tables

In determining the value of mortality factors of the form $_np_x$ (as defined in § 2676.13(b)(2)) for purposes of applying the formulas set forth in § 2676.13 (b) through (k), and in determining the value of any mortality factor used in valuing annuity benefits under this subpart, the plan administrator shall use the values of $q_x$ prescribed in Tables VII through XII of this appendix.

If an annuity for one person is in pay status on the valuation date, and if the payment of a death benefit after the valuation date to another person, who need not be identifiable on the valuation date, depends in whole or in part on the death of the pay status annuitant, then the mortality factors involved in the valuation of the death benefit shall be determined as follows. In the case of factors that represent the mortality of the pay status annuitant, the plan administrator shall apply the mortality rates that are applicable to the annuity in pay status under this appendix. In the case of factors that represent the mortality of the death beneficiary, the plan administrator shall apply the mortality rates applicable to annuities not in pay status and to deferred benefits other than annuities, under Table VII or VIII of this appendix.

If the PBGC is trustee of a multiemployer plan, for determining whether the value of a participant's benefit is $3,500 or less under § 2613.8(b)(1) and, if so, for calculating the value of the benefit, the PBGC will employ the mortality assumptions obtained by substituting $x+1$ for $x$ throughout the male mortality table associated with the participant's health status. For example, a healthy female participant's lump sum would be determined using Table I (healthy male participants), modified so that all entries $x$ in the table are increased by 1 ($q_{16}$=.001437; $q_{17}$=.001414; etc.).

The Tables provide, for each age (denoted by $x$), the probability that a person assumed to be living at that age will not survive to attain age $x+1$. (The sample tables for healthy participants are based on data obtained by the Committee on Annuities of the Society of Actuaries from mortality experience through 1983.)

### Tables I Through VI

See Tables I through VI of appendix A to part 2619.

### Tables VII and VIII—Mortality Tables for Healthy Lives

The values of $q_x$ applicable to annuities in pay status on the valuation date that are not being received as disability benefits, to annuities not in pay status on the valuation date, and to deferred benefits other than annuities, are as follows:

#### TABLE VII.—MORTALITY TABLE FOR HEALTHY MALE PARTICIPANTS

| Age x | $q_x$ |
|---|---|
| 5 | 0.000342 |
| 6 | .000318 |
| 7 | .000302 |
| 8 | .000294 |

#### TABLE VII.—MORTALITY TABLE FOR HEALTHY MALE PARTICIPANTS—Continued

| Age x | $q_x$ |
|---|---|
| 9 | .000292 |
| 10 | .000293 |
| 11 | .000298 |
| 12 | .000304 |
| 13 | .000310 |
| 14 | .000317 |
| 15 | .000325 |
| 16 | .000333 |
| 17 | .000343 |
| 18 | .000353 |
| 19 | .000365 |
| 20 | .000377 |
| 21 | .000392 |
| 22 | .000408 |
| 23 | .000424 |
| 24 | .000444 |
| 25 | .000464 |
| 26 | .000488 |
| 27 | .000513 |
| 28 | .000542 |
| 29 | .000572 |
| 30 | .000607 |
| 31 | .000645 |
| 32 | .000687 |
| 33 | .000734 |
| 34 | .000785 |
| 35 | .000860 |
| 36 | .000907 |
| 37 | .000966 |
| 38 | .001039 |
| 39 | .001128 |
| 40 | .001238 |
| 41 | .001370 |
| 42 | .001527 |
| 43 | .001715 |
| 44 | .001932 |
| 45 | .002183 |
| 46 | .002471 |
| 47 | .002790 |
| 48 | .003138 |
| 49 | .003513 |
| 50 | .003909 |
| 51 | .004324 |
| 52 | .004755 |
| 53 | .005200 |
| 54 | .005660 |
| 55 | .006131 |
| 56 | .006618 |
| 57 | .007139 |
| 58 | .007719 |
| 59 | .008384 |
| 60 | .009158 |
| 61 | .010064 |
| 62 | .011133 |
| 63 | .012391 |
| 64 | .013868 |
| 65 | .015592 |
| 66 | .017579 |
| 67 | .019804 |
| 68 | .022229 |
| 69 | .024817 |
| 70 | .027530 |
| 71 | .030354 |
| 72 | .033370 |
| 73 | .036680 |
| 74 | .040388 |
| 75 | .044597 |
| 76 | .049388 |
| 77 | .054758 |
| 78 | .060678 |
| 79 | .067125 |
| 80 | .074070 |
| 81 | .081484 |
| 82 | .089320 |
| 83 | .097525 |
| 84 | .106047 |
| 85 | .114836 |
| 86 | .124170 |
| 87 | .133870 |
| 88 | .144073 |

#### TABLE VII.—MORTALITY TABLE FOR HEALTHY MALE PARTICIPANTS—Continued

| Age x | $q_x$ |
|---|---|
| 89 | .154859 |
| 90 | .166307 |
| 91 | .178214 |
| 92 | .190460 |
| 93 | .203007 |
| 94 | .217904 |
| 95 | .234086 |
| 96 | .248436 |
| 97 | .263954 |
| 98 | .280803 |
| 99 | .299154 |
| 100 | .319185 |
| 101 | .341086 |
| 102 | .365052 |
| 103 | .393102 |
| 104 | .427255 |
| 105 | .469531 |
| 106 | .521945 |
| 107 | .586518 |
| 108 | .665268 |
| 109 | .760215 |
| 110 | 1.000000 |

#### TABLE VIII.—MORTALITY TABLE FOR HEALTHY FEMALE PARTICIPANTS

| Age x | $q_x$ |
|---|---|
| 11 | 0.000342 |
| 12 | .000318 |
| 13 | .000302 |
| 14 | .000294 |
| 15 | .000292 |
| 16 | .000293 |
| 17 | .000298 |
| 18 | .000304 |
| 19 | .000310 |
| 20 | .000317 |
| 21 | .000325 |
| 22 | .000333 |
| 23 | .000343 |
| 24 | .000353 |
| 25 | .000365 |
| 26 | .000377 |
| 27 | .000392 |
| 28 | .000408 |
| 29 | .000424 |
| 30 | .000444 |
| 31 | .000464 |
| 32 | .000488 |
| 33 | .000513 |
| 34 | .000542 |
| 35 | .000572 |
| 36 | .000607 |
| 37 | .000645 |
| 38 | .000687 |
| 39 | .000734 |
| 40 | .000785 |
| 41 | .000860 |
| 42 | .000907 |
| 43 | .000966 |
| 44 | .001039 |
| 45 | .001128 |
| 46 | .001238 |
| 47 | .001370 |
| 48 | .001527 |
| 49 | .001715 |
| 50 | .001932 |
| 51 | .002183 |
| 52 | .002471 |
| 53 | .002790 |
| 54 | .003138 |
| 55 | .003513 |
| 56 | .003909 |
| 57 | .004324 |
| 58 | .004755 |
| 59 | .005200 |
| 60 | .005660 |
| 61 | .006131 |

## Table VIII.—Mortality Table for Healthy Female Participants—Continued

| Age x | qx |
| --- | --- |
| 62 | .006618 |
| 63 | .007139 |
| 64 | .007719 |
| 65 | .008384 |
| 66 | .009158 |
| 67 | .010064 |
| 68 | .011133 |
| 69 | .012391 |
| 70 | .013868 |
| 71 | .015592 |
| 72 | .017579 |
| 73 | .019804 |
| 74 | .022229 |
| 75 | .024817 |
| 76 | .027530 |
| 77 | .030354 |
| 78 | .033370 |
| 79 | .036680 |
| 80 | .040388 |
| 81 | .044597 |
| 82 | .049388 |
| 83 | .054758 |
| 84 | .060678 |
| 85 | .067125 |
| 86 | .074070 |
| 87 | .081484 |
| 88 | .089320 |
| 89 | .097525 |
| 90 | .106947 |
| 91 | .114836 |
| 92 | .124170 |
| 93 | .133870 |
| 94 | .144073 |
| 95 | .154859 |
| 96 | .166307 |
| 97 | .178214 |
| 98 | .190460 |
| 99 | .203007 |
| 100 | .217904 |
| 101 | .234086 |
| 102 | .248436 |
| 103 | .263954 |
| 104 | .280803 |
| 105 | .299154 |
| 106 | .319185 |
| 107 | .341086 |
| 108 | .365052 |
| 109 | .393102 |
| 110 | .427255 |
| 111 | .469531 |
| 112 | .521945 |
| 113 | .586518 |
| 114 | .665268 |
| 115 | .760215 |
| 116 | 1.000000 |

### Tables IX AND X—Mortality Tables for Disabled Lives (Other Than Social Security Disability)

The values of $q_x$ applicable to annuities in pay status on the valuation date that are being received as disability benefits and for which neither eligibility for, nor receipt of, Social Security disability benefits is a prerequisite, are as follows:

## Table IX.—Mortality Table for Disabled Male Participants Not Receiving Social Security Disability Benefit Payments

| Age x | qx |
| --- | --- |
| 2 | 0.000342 |
| 3 | 0.000318 |
| 4 | 0.000302 |

## Table IX.—Mortality Table for Disabled Male Participants Not Receiving Social Security Disability Benefit Payments—Continued

| Age x | qx |
| --- | --- |
| 5 | 0.000294 |
| 6 | 0.000292 |
| 7 | 0.000293 |
| 8 | 0.000298 |
| 9 | 0.000304 |
| 10 | 0.000310 |
| 11 | 0.000317 |
| 12 | 0.000325 |
| 13 | 0.000333 |
| 14 | 0.000343 |
| 15 | 0.000353 |
| 16 | 0.000365 |
| 17 | 0.000377 |
| 18 | 0.000392 |
| 19 | 0.000408 |
| 20 | 0.000424 |
| 21 | 0.000444 |
| 22 | 0.000464 |
| 23 | 0.000488 |
| 24 | 0.000513 |
| 25 | 0.000542 |
| 26 | 0.000572 |
| 27 | 0.000607 |
| 28 | 0.000645 |
| 29 | 0.000687 |
| 30 | 0.000734 |
| 31 | 0.000785 |
| 32 | 0.000840 |
| 33 | 0.000907 |
| 34 | 0.000966 |
| 35 | 0.001039 |
| 36 | 0.001128 |
| 37 | 0.001230 |
| 38 | 0.001370 |
| 39 | 0.001527 |
| 40 | 0.001715 |
| 41 | 0.001932 |
| 42 | 0.002183 |
| 43 | 0.002471 |
| 44 | 0.002790 |
| 45 | 0.003136 |
| 46 | 0.003513 |
| 47 | 0.003909 |
| 48 | 0.004324 |
| 49 | 0.004755 |
| 50 | 0.005200 |
| 51 | 0.005660 |
| 52 | 0.006131 |
| 53 | 0.006618 |
| 54 | 0.007139 |
| 55 | 0.007719 |
| 56 | 0.008384 |
| 57 | 0.009158 |
| 58 | 0.010064 |
| 59 | 0.011133 |
| 60 | 0.012391 |
| 61 | 0.013868 |
| 62 | 0.015592 |
| 63 | 0.017579 |
| 64 | 0.019804 |
| 65 | 0.022229 |
| 66 | 0.024817 |
| 67 | 0.027530 |
| 68 | 0.030354 |
| 69 | 0.033370 |
| 70 | 0.036680 |
| 71 | 0.040388 |
| 72 | 0.044597 |
| 73 | 0.049388 |
| 74 | 0.054758 |
| 75 | 0.060678 |
| 76 | 0.067125 |
| 77 | 0.074070 |
| 78 | 0.081484 |
| 79 | 0.089320 |
| 80 | 0.097525 |
| 81 | 0.106047 |

## Table IX.—Mortality Table for Disabled Male Participants Not Receiving Social Security Disability Benefit Payments—Continued

| Age x | qx |
| --- | --- |
| 82 | 0.114836 |
| 83 | 0.124170 |
| 84 | 0.133870 |
| 85 | 0.144073 |
| 86 | 0.154859 |
| 87 | 0.166307 |
| 88 | 0.178214 |
| 89 | 0.190460 |
| 90 | 0.203007 |
| 91 | 0.217904 |
| 92 | 0.234086 |
| 93 | 0.248436 |
| 94 | 0.263954 |
| 95 | 0.280803 |
| 96 | 0.299154 |
| 97 | 0.319185 |
| 98 | 0.341086 |
| 99 | 0.365052 |
| 100 | 0.393102 |
| 101 | 0.427255 |
| 102 | 0.469531 |
| 103 | 0.521945 |
| 104 | 0.586518 |
| 105 | 0.665268 |
| 106 | 0.760215 |
| 107 | 1.000000 |

## Table X.—Mortality Table for Disabled Female Participants Not Receiving Social Security Disability Benefit Payments

| Age x | qx |
| --- | --- |
| 8 | 0.000342 |
| 9 | 0.000318 |
| 10 | 0.000302 |
| 11 | 0.000294 |
| 12 | 0.000292 |
| 13 | 0.000293 |
| 14 | 0.000298 |
| 15 | 0.000304 |
| 16 | 0.000310 |
| 17 | 0.000317 |
| 18 | 0.000325 |
| 19 | 0.000333 |
| 20 | 0.000343 |
| 21 | 0.000353 |
| 22 | 0.000365 |
| 23 | 0.000377 |
| 24 | 0.000392 |
| 25 | 0.000408 |
| 26 | 0.000424 |
| 27 | 0.000444 |
| 28 | 0.000466 |
| 29 | 0.000488 |
| 30 | 0.000513 |
| 31 | 0.000542 |
| 32 | 0.000572 |
| 33 | 0.000607 |
| 34 | 0.000645 |
| 35 | 0.000687 |
| 36 | 0.000734 |
| 37 | 0.000785 |
| 38 | 0.000840 |
| 39 | 0.000907 |
| 40 | 0.000966 |
| 41 | 0.001039 |
| 42 | 0.001128 |
| 43 | 0.001230 |
| 44 | 0.001370 |
| 45 | 0.001527 |
| 46 | 0.001715 |
| 47 | 0.001932 |
| 48 | 0.002183 |

**Federal Register** / Vol. 58, No. 11 / Tuesday, January 19, 1993 / Proposed Rules    5145

TABLE X.—MORTALITY TABLE FOR DISABLED FEMALE PARTICIPANTS NOT RECEIVING SOCIAL SECURITY DISABILITY BENEFIT PAYMENTS—Continued

| Age $x$ | $q_x$ |
|---|---|
| 49 | 0.002471 |
| 50 | 0.002790 |
| 51 | 0.003138 |
| 52 | 0.003513 |
| 53 | 0.003909 |
| 54 | 0.004324 |
| 55 | 0.004755 |
| 56 | 0.005200 |
| 57 | 0.005660 |
| 58 | 0.006131 |
| 59 | 0.006618 |
| 60 | 0.007139 |
| 61 | 0.007719 |
| 62 | 0.008384 |
| 63 | 0.009158 |
| 64 | 0.010064 |
| 65 | 0.011133 |
| 66 | 0.012391 |
| 67 | 0.013868 |
| 68 | 0.015592 |
| 69 | 0.017579 |
| 70 | 0.019804 |
| 71 | 0.022229 |
| 72 | 0.024817 |
| 73 | 0.027530 |
| 74 | 0.030354 |
| 75 | 0.033370 |
| 76 | 0.036680 |
| 77 | 0.040388 |
| 78 | 0.044597 |
| 79 | 0.049388 |
| 80 | 0.054758 |
| 81 | 0.060678 |
| 82 | 0.067125 |
| 83 | 0.074070 |
| 84 | 0.081484 |
| 85 | 0.089320 |
| 86 | 0.097525 |
| 87 | 0.106047 |
| 88 | 0.114836 |
| 89 | 0.124170 |
| 90 | 0.133870 |
| 91 | 0.144073 |
| 92 | 0.154859 |
| 93 | 0.166307 |
| 94 | 0.178214 |
| 95 | 0.190460 |
| 96 | 0.203007 |
| 97 | 0.217904 |
| 98 | 0.234086 |
| 99 | 0.248436 |
| 100 | 0.263954 |
| 101 | 0.280803 |
| 102 | 0.299154 |
| 103 | 0.319185 |
| 104 | 0.341086 |
| 105 | 0.365052 |
| 106 | 0.393102 |
| 107 | 0.427255 |
| 108 | 0.469531 |
| 109 | 0.521945 |
| 110 | 0.586518 |
| 111 | 0.665268 |
| 112 | 0.760215 |
| 113 | 1.000000 |

**Tables XI and XII—Mortality Tables for Disabled Lives (Social Security Disability)**

The values of $q_x$ applicable to annuities in pay status on the valuation date that are being received as disability benefits and for which either eligibility for, or receipt of, Social Security disability benefits is a prerequisite, are as follows:

TABLE XI—MORTALITY TABLE FOR DISABLED MALE PARTICIPANTS RECEIVING SOCIAL SECURITY DISABILITY BENEFIT PAYMENTS

| Age $x$ | $q_x$ |
|---|---|
| 5 | 0.000000 |
| 6 | 0.000000 |
| 7 | 0.000000 |
| 8 | 0.000000 |
| 9 | 0.000000 |
| 10 | 0.000000 |
| 11 | 0.000000 |
| 12 | 0.000000 |
| 13 | 0.000000 |
| 14 | 0.000000 |
| 15 | 0.000000 |
| 16 | 0.000000 |
| 17 | 0.000000 |
| 18 | 0.000000 |
| 19 | 0.000000 |
| 20 | 0.000000 |
| 21 | 0.048300 |
| 22 | 0.048300 |
| 23 | 0.048300 |
| 24 | 0.048300 |
| 25 | 0.048300 |
| 26 | 0.046100 |
| 27 | 0.043600 |
| 28 | 0.041100 |
| 29 | 0.038600 |
| 30 | 0.036200 |
| 31 | 0.033900 |
| 32 | 0.032000 |
| 33 | 0.030200 |
| 34 | 0.028800 |
| 35 | 0.027900 |
| 36 | 0.027200 |
| 37 | 0.027100 |
| 38 | 0.027300 |
| 39 | 0.027600 |
| 40 | 0.028200 |
| 41 | 0.028800 |
| 42 | 0.029700 |
| 43 | 0.030500 |
| 44 | 0.031400 |
| 45 | 0.032200 |
| 46 | 0.033000 |
| 47 | 0.034000 |
| 48 | 0.035300 |
| 49 | 0.036700 |
| 50 | 0.038300 |
| 51 | 0.040100 |
| 52 | 0.042000 |
| 53 | 0.043900 |
| 54 | 0.046000 |
| 55 | 0.048200 |
| 56 | 0.050600 |
| 57 | 0.053100 |
| 58 | 0.055500 |
| 59 | 0.058100 |
| 60 | 0.060300 |
| 61 | 0.062400 |
| 62 | 0.064300 |
| 63 | 0.065700 |
| 64 | 0.066800 |
| 65 | 0.069225 |
| 66 | 0.071613 |
| 67 | 0.074526 |
| 68 | 0.077350 |
| 69 | 0.080366 |
| 70 | 0.083676 |
| 71 | 0.087384 |
| 72 | 0.091593 |
| 73 | 0.096384 |
| 74 | 0.101754 |
| 75 | 0.107674 |
| 76 | 0.114121 |
| 77 | 0.121066 |
| 78 | 0.128480 |
| 79 | 0.136316 |
| 80 | 0.144521 |
| 81 | 0.153043 |

TABLE XI—MORTALITY TABLE FOR DISABLED MALE PARTICIPANTS RECEIVING SOCIAL SECURITY DISABILITY BENEFIT PAYMENTS—Continued

| Age $x$ | $q_x$ |
|---|---|
| 82 | 0.161832 |
| 83 | 0.171166 |
| 84 | 0.180866 |
| 85 | 0.191069 |
| 86 | 0.201855 |
| 87 | 0.213303 |
| 88 | 0.225210 |
| 89 | 0.237456 |
| 90 | 0.250003 |
| 91 | 0.264900 |
| 92 | 0.281082 |
| 93 | 0.295432 |
| 94 | 0.310950 |
| 95 | 0.327799 |
| 96 | 0.346150 |
| 97 | 0.366181 |
| 98 | 0.388082 |
| 99 | 0.412048 |
| 100 | 0.440098 |
| 101 | 0.474251 |
| 102 | 0.568941 |
| 103 | 0.568941 |
| 104 | 0.633514 |
| 105 | 0.712264 |
| 106 | 0.807211 |
| 107 | 1.000000 |

TABLE XII—MORTALITY TABLE FOR DISABLED FEMALE PARTICIPANTS RECEIVING SOCIAL SECURITY DISABILITY BENEFIT PAYMENTS

| Age $x$ | $q_x$ |
|---|---|
| 5 | 0.000000 |
| 6 | 0.000000 |
| 7 | 0.000000 |
| 8 | 0.000000 |
| 9 | 0.000000 |
| 10 | 0.000000 |
| 11 | 0.000000 |
| 12 | 0.000000 |
| 13 | 0.000000 |
| 14 | 0.000000 |
| 15 | 0.000000 |
| 16 | 0.000000 |
| 17 | 0.000000 |
| 18 | 0.000000 |
| 19 | 0.000000 |
| 20 | 0.026300 |
| 21 | 0.026300 |
| 22 | 0.026300 |
| 23 | 0.026300 |
| 24 | 0.026300 |
| 25 | 0.026300 |
| 26 | 0.025700 |
| 27 | 0.025300 |
| 28 | 0.024700 |
| 29 | 0.024200 |
| 30 | 0.023700 |
| 31 | 0.023200 |
| 32 | 0.022700 |
| 33 | 0.022200 |
| 34 | 0.021800 |
| 35 | 0.021400 |
| 36 | 0.021200 |
| 37 | 0.021000 |
| 38 | 0.020800 |
| 39 | 0.020800 |
| 40 | 0.020900 |
| 41 | 0.021000 |
| 42 | 0.021300 |
| 43 | 0.021600 |
| 44 | 0.021900 |
| 45 | 0.022400 |

| TABLE XII—MORTALITY TABLE FOR DISABLED FEMALE PARTICIPANTS RECEIVING SOCIAL SECURITY DISABILITY BENEFIT PAYMENTS—Continued | |
|---|---|
| Age x | $q_x$ |
| 46 | 0.022900 |
| 47 | 0.023500 |
| 48 | 0.024200 |
| 49 | 0.024900 |
| 50 | 0.025700 |
| 51 | 0.026400 |
| 52 | 0.027200 |
| 53 | 0.028100 |
| 54 | 0.028800 |
| 55 | 0.029500 |
| 56 | 0.030100 |
| 57 | 0.030700 |
| 58 | 0.031500 |
| 59 | 0.032300 |
| 60 | 0.033100 |
| 61 | 0.033900 |
| 62 | 0.034700 |
| 63 | 0.035500 |
| 64 | 0.036200 |
| 65 | 0.037889 |
| 66 | 0.038527 |
| 67 | 0.040004 |
| 68 | 0.041726 |
| 69 | 0.043715 |
| 70 | 0.045946 |
| 71 | 0.048365 |
| 72 | 0.050953 |
| 73 | 0.053666 |
| 74 | 0.056490 |
| 75 | 0.059506 |
| 76 | 0.062816 |
| 77 | 0.066524 |
| 78 | 0.070733 |
| 79 | 0.075524 |
| 80 | 0.080894 |
| 81 | 0.086814 |
| 82 | 0.093261 |
| 83 | 0.100206 |
| 84 | 0.107620 |

| TABLE XII—MORTALITY TABLE FOR DISABLED FEMALE PARTICIPANTS RECEIVING SOCIAL SECURITY DISABILITY BENEFIT PAYMENTS—Continued | |
|---|---|
| Age x | $q_x$ |
| 85 | 0.115456 |
| 86 | 0.123661 |
| 87 | 0.132183 |
| 88 | 0.140972 |
| 89 | 0.150306 |
| 90 | 0.160006 |
| 91 | 0.170209 |
| 92 | 0.180995 |
| 93 | 0.192453 |
| 94 | 0.204350 |
| 95 | 0.216596 |
| 96 | 0.229143 |
| 97 | 0.244040 |
| 98 | 0.260222 |
| 99 | 0.274572 |
| 100 | 0.290090 |
| 101 | 0.306939 |
| 102 | 0.325290 |
| 103 | 0.345321 |
| 104 | 0.367222 |
| 105 | 0.391188 |
| 106 | 0.419238 |
| 107 | 0.453391 |
| 108 | 0.495667 |
| 109 | 0.548081 |
| 110 | 0.612654 |
| 111 | 0.691404 |
| 112 | 0.786351 |
| 113 | 1.000000 |

## Appendix B to Part 2676—Interest Rates Used to Value Lump Sums and Annuities

*Lump Sum Valuations*

In determining the value of interest factors of the form $v^{c|n}$ (as defined in § 2676.13(b)(1)) for purposes of applying the formulas set forth in § 2676.13(b) through (i) and in determining the value of any interest factor used in valuing benefits under this subpart to be paid as lump sums, the PBGC shall use the values of $i_t$ prescribed in Table I hereof. The interest rates set forth in Table I shall be used by the PBGC to calculate benefits payable as lump sum benefits as follows:

(1) For benefits for which the participant or beneficiary is entitled to be in pay status on the valuation date, the immediate annuity rate shall apply.

(2) For benefits for which the deferral period is $y$ years ($y$ is an integer and $0 < y \leq n_1$), interest rate $i_1$ shall apply from the valuation date for a period of $y$ years; thereafter the immediate annuity rate shall apply.

(3) For benefits for which the deferral period is $y$ years ($y$ is an integer and $n_1 < y \leq n_1 + n_2$), interest rate $i_2$ shall apply from the valuation date for a period of $y - n_1$ years, interest rate $i_1$ shall apply for the following $n_1$ years; thereafter the immediate annuity rate shall apply.

(4) For benefits for which the deferral period is $y$ years ($y$ is an integer and $y > n_1 + n_2$), interest rate $i_3$ shall apply from the valuation date for a period of $y - n_1 - n_2$ years, interest rate $i_2$ shall apply for the following $n_2$ years, interest rate $i_1$ shall apply for the following $n_1$ years; thereafter the immediate annuity rate shall apply.

### TABLE I.—(SAMPLE RATES)
[Lump Sum Valuations]

| Rate set | For plans with a valuation date | | Immediate annuity rate (percent) | Deferred annuities (percent) | | | | |
|---|---|---|---|---|---|---|---|---|
| | On or after | Before | | $i_1$ | $i_2$ | $i_3$ | $n_1$ | $n_2$ |
| 1 | 3-1-93 | 4-1-93 | 6.25 | 5.50 | 4.25 | 4.00 | 7 | 8 |
| 2 | 4-1-93 | 5-1-93 | 6.50 | 5.75 | 4.50 | 4.00 | 7 | 8 |

*Annuity Valuations*

In determining the value of interest factors of the form $v^{c|n}$ (as defined in § 2676.13(b)(1)) for purposes of applying the formulas set forth in § 2676.13(b) through (i) and in determining the value of any interest factor used in valuing annuity benefits under this subpart, the plan administrator shall use the values of $i_t$ prescribed in the table below.

The following table tabulates, for each calendar month of valuation ending after the effective date of this part, the interest rates (denoted by $i_1, i_2, \ldots$, and referred to generally as $i_t$) assumed to be in effect between specified anniversaries of a valuation date that occurs within that calendar month; those anniversaries are specified in the columns adjacent to the rates. The last listed rate is assumed to be in effect after the last listed anniversary date. (In the sample table printed below, the interest rates to be used for January 1995 valuation dates are 8.50% for the first 20 years and 5.75% thereafter.)

### TABLE II.—(SAMPLE RATES)
[Annuity Valuations]

| For valuation dates occurring in the month— | The values of $i_t$ are: | | | | | |
|---|---|---|---|---|---|---|
| | $i_t$ for $t=$ | | $i_t$ for $t=$ | | $i_t$ for $t=$ | |
| January 1995 | .0850 | 1–20 | .0575 | >20 | N/A | N/A |
| February 1995 | .0825 | 1–15 | .0600 | 16–25 | .0590 | >25 |

**Appendix C to Part 2676—Loading Assumptions**

The following tables of loading expenses are in effect for the indicated periods and are to be used to adjust annuity benefit values pursuant to § 2676.13(a)(5).

| If the total value of the plan's benefits, exclusive of the loading charge, is— | | The loading charge pursuant to § 2676.13(a)(5) equals— |
|---|---|---|
| Greater than | But less than or equal to | |
| $0 | $200,000 | 5% of the total value of the plan's benefits, plus $200 for each plan participant. |
| $200,000 | | $10,000, plus a percentage of the excess of the total value over $200,000, plus $200 for each plan participant; the percentage is equal to 1% + ($i$%−7.50%)/ 10, where $i$ is the initial rate set forth in appendix B for the valuation of annuities. |

Issued in Washington, DC, this 12th day of January 1993.

**James B. Lockhart III,**

*Executive Director, Pension Benefit Guaranty Corporation.*

[FR Doc. 93–1114 Filed 1–15–93; 8:45 am]

**BILLING CODE 7708-01-P**