# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re Nortel Networks Inc., *et al.*,[1] | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | 09-10138 (KG) |
| | ) | (Jointly Administered) |
| | ) | **Obj. Deadline:  December 7, 2016 at 4:00 p.m.** |
| | ) | **Hearing Date:  December 20, 2016 at 10:00 a.m.** |

---

## MOTION OF SNMP RESEARCH, INC. AND
## SNMP RESEARCH INTERNATIONAL, INC. TO AMEND
## <u>PROOFS OF CLAIM AND ADD SNMP RESEARCH, INC. AS CLAIMANT</u>

**OF COUNSEL**
Richard S. Busch, Esq.
**King & Ballow Law Offices**
315 Union Street, Suite 1100
Nashville, TN 37201
(615) 259-3456 (Phone)
(615) 726-5417 (Fax)
rbusch@kingballow.com

-and-

John L. Wood, Esq.
**Egerton, McAfee, Armistead &
Davis, P.C.**
900 S. Gay Street
Knoxville, TN 37902
(865) 546-0500 (Phone)
(865) 525-5293 (Fax)
jwood@emlaw.com


**COLE SCHOTZ P.C.**
Norman L. Pernick (No. 2290)
Nicholas J. Brannick (No. 5721)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 651-2002 (Phone)
(302) 652-3117 (Fax)
npernick@coleschotz.com
nbrannick@coleschotz.com

-and-

G. David Dean, Esq.
300 E. Lombard Street, Suite 1450
Baltimore, MD 21202
(410) 230-0660 (Phone)
(410) 230-0667 (Fax)
ddean@coleschotz.com

*Counsel for Plaintiffs SNMP Research, Inc. and
SNMP Research International, Inc.*


Dated: November 23, 2016

---

[1] Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Component Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) ("NNCALA"), and Nortel Networks India International Inc. (8667) ("NNIII") (collectively, the "U.S. Debtors").

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................1

RELEVANT FACTS ...........................................................................4

    A.    Introductory Background Regarding SNMP Research...............................4

    B.    The Software, SNMPRI License and Nortel License ..................................4

    C.    The Bankruptcy Filings and Bar Date ........................................5

    D.    The Original Claims and Omnibus Claim Objection................................5

    E.    The First through Third Amended Proofs of Claim...................................7

    F.    Execution of the SNMPRI/SNMP License and SNMP Research's Practices ....................................................................10

    G.    The Adversary Proceeding........................................................11

    H.    The Fourth and Fifth Amended Proofs of Claim .......................................12

    I.    The Limited Consolidation Stipulation......................................13

    J.    SNMP Research's Expert Report on Pre-Petition Damages.....................14

ARGUMENT ...................................................................................15

    I.    SNMPRI Should be Permitted to File the Proposed Claims. ................15

        A.    SNMPRI was Not Required to File a Motion Prior to Filing the Previously Amended Claims.....................................................15

        B.    The Proposed Claims are Proper Amendments to the Original Claims and Previously Amended Claims. ....................................18

        C.    Alternatively, Excusable Neglect is Present to Permit SNMPRI to File the Proposed Claims as New Claims after the Bar Date. ...................23

    II.    SNMPR Should be Permitted to File the Proposed Claims...................29

        A.    It is Important for SNMPR's Claims to be Added.....................29

        B.    If the Proposed Claims Relate Back to the Original Claims under Federal Rule 15(c)(1)(B), then SNMPR Should Be Added as a Claimant in the Proposed Claims under Federal Rule 15(c)(1)(C)............31

53651/0001-13833330v3

C.     If the Proposed Claims are New Claims, then SNMPR Should be
       Joined as a Real Party in Interest under Federal Rule 17(a)(3). ................38

CONCLUSION ...........................................................................................................................40

53651/0001-13833330v3

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Fluid Sys. v. Huber*, 28 F. Supp. 306 (M.D. Pa. 2014) ...................................30

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997) .....................34

*Agassi v. Planet Hollywood Int'l, Inc.*, 269 B.R. 543 (D. Del. 2001) ...........................................20

*Agilent Tech., Inc. v. Kirkland*, 2010 WL 610725 (Del. Ch. Feb. 18, 2010)................................30

*Allied Int'l, Inc. v. Int'l Longshoremen's Ass'n, AFL-CIO,*
   814 F.2d 32 (1st Cir. 1987)................................................................................................34

*Arthur v. Maersk, Inc.*, 434 F.3d 196 (3d Cir. 2006) ......................................................................33

*Brauer v. Republic Steel Corp.*, 460 F.2d 801 (10th Cir. 1972) .....................................................34

*Brooks v. Bates*, 781 F. Supp. 202 (S.D.N.Y. 1991).......................................................................31

*In re Caritas Health Care, Inc.*, 435 B.R. 111 (Bankr. E.D. N.Y. 2010) ......................................25

*Chemetron Corp. v. Jones*, 72 F.3d 341 (3d Cir. 1995).............................................................23, 26

*Crowder v. Gordons Transports, Inc.*, 387 F.2d 413 (8th Cir. 1967)..............................................35

*Dix v. Johnson (In re Dix)*, 95 B.R. 134 (9th Cir. B.A.P. 1988)....................................................26

*DTM Research, LLC v. AT&T Corp.*, 245 F.3d 327 (4th Cir. 2001) ..............................................29

*Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.,*
   307 F.3d 197 (3d Cir. 2002)...............................................................................................30

*In re Eagle Bus Mfg., Inc.*, 62 F.3d 730 (5th Cir. 1995)................................................................29

*Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2d Cir. 1982) ................................31

*In re Edison Bros. Stores, Inc.,*
   2002 WL 999260 (Bankr. D. Del. May 15, 2002).............................................18, 19, 21, 22

*Gabelli v. S.E.C.*, 133 S. Ct. 1216 (2013).......................................................................................27

*In re Garden Ridge Corp.*, 348 B.R. 642 (Bankr. D. Del. 2006)........................................24, 25, 29

*In re Gulf States Long Term Acute Care of Covington, LLC*,
  2010 WL 4809338 (Bankr. E.D. La. Nov. 19, 2010) .......................................25

*In re Inacom Corp.*, 2004 WL 2283599 (D. Del. Oct. 4, 2004) .......................24

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010) .......................33, 37

*Le v. City of Wilmington*, 2010 WL 2754253 (D. Del. July 12, 2010) .......................18

*Metro. Paving Co. v. Int'l Union of Operating Eng'rs*,
  439 F.2d 300 (10th Cir. 1971) .......................34

*Mo., K. & T. Ry. Co. v. Wulf*, 226 U.S. 570 (1913) .......................34

*Monahan v. City of Wilmington*, 2004 WL 758342 (D. Del. Jan. 30, 2004) .......................33

*Nelson v. Cnty. of Allegheny*, 60 F.3d 1010 (3d Cir. 1995) .......................32, 33, 38

*In re Nortel Networks, Inc.*, 531 B.R. 53 (Bankr. D. Del. 2015) .......................27

*Pepper v. Litton*, 308 U.S. 295 (1939) .......................40

*Pioneer Inv. Servs. B. Brunswick Assoc. Ltd. P'Ship*, 507 U.S. 380 (1993) .......................23

*In re PT-1 Commc'ns*, 292 B.R. 482 (Bankr E.D.N.Y. 2003) .......................26

*Raynor Bros. v. Am. Cyanimid Co.*, 695 F.2d 382 (9th Cir. 1982) .......................34

*In re SemCrude, L.P.*, 443 B.R. 472 (Bankr. D. Del. 2011) .......................21

*In re Sitzberger*, 65 B.R. 256 (Bankr. S.D. Cal. 1986) .......................26

*Staren v. Am. Nat. Bank & Trust Co. of Chicago*, 529 F.2d 1257 (7th Cir. 1976) .......................33, 38

*In re Stone & Webster, Inc.*, 547 B.R. 588 (Bankr. D. Del. 2016) .......................20

*Synygy, Inc. v. ZS Assocs.*, No. 07-3536,
  2015 U.S. Dist. LEXIS 26006 (E.D. Pa. Feb. 11, 2015) .......................30

*Tate v. Rest. Techs., Inc.*, 2011 WL 3609417 (D. Minn. July 25, 2011) .......................29

*UD Tech. Corp. v. Phenomenex, Inc.*, 2007 WL 28295 (D. Del. Jan. 4, 2007) .......................29

*In re W.R. Grace & Co.*, 281 B.R. 852 (Bankr. D. Del. 2002) .......................27

*In re Washington*, 420 B.R. 643 (Bankr. W.D. Pa. 2009) .......................18, 19

*William A. Graham Co. v. Haughey*, 568 F.3d 425 (3d Cir. 2009) .......................26

53651/0001-13833330v3

**RULES**

Bankruptcy Rule 7015 ..............................................................................................16

Fed. R. Bankr. P. 9006(b)(1)......................................................................................23

Fed. R. Civ. P. 15(c)(1)(C) .........................................................................................32

Fed. R. Civ. P. 15(c)(2)...............................................................................................19

Fed. R. Civ. P. 17 ........................................................................................................38

Fed. R. Civ. P. 17(a)(3)...............................................................................................38

Fed. R. Civ. P. 52(a) (1995).........................................................................................31

Local Rule 3007-1(d)(i), (ii), (vi) ...............................................................................17

**STATUTES**

17 U.S.C. § 204(a) .......................................................................................................31

17 U.S.C. § 501(b) .......................................................................................................31

**OTHER AUTHORITIES**

http://www.txs.uscourts.gov/page/notice-and-order-federal-rule-15-made-
    applicable-bankruptcy-rule-7015-shall-apply-whenever.........................................16

MELVILLE B. NIMMER & DAVID NIMMER, 3 NIMMER ON COPYRIGHT § 10.03[A]
    (1991)......................................................................................................................31

53651/0001-13833330v3

SNMP Research International, Inc. ("SNMPRI") and SNMP Research, Inc. ("SNMPR," and together with SNMPRI, "SNMP Research"), by their undersigned counsel, hereby move for (i) authority for SNMPRI to file amended proofs of claim against certain U.S. Debtors, collectively attached hereto as **Exhibit A** (the "Proposed Claims") [1] and (ii) entry of an order adding SNMPR as a claimant in the Proposed Claims.  In support of this Motion, SNMP Research relies on the Declaration of Dr. Jeffrey D. Case (the "Case Declaration"), filed contemporaneously herewith.  In further support of this Motion, SNMP Research respectfully submits as follows:

## PRELIMINARY STATEMENT

1.    The U.S. Debtors recently objected to the ability of the Pension Benefit Guaranty Corp (the "PBGC") to amend its timely-filed proofs of claim without an advance order of the Court.  While SNMP Research disagrees with the U.S. Debtors' position, the legal theory advanced by the U.S. Debtors in the PBGC objection (the "PBGC Objection") prompts SNMP Research to bring this Motion in an abundance of caution prior to amending the claims further.

2.    Prior to the bar date for filing proofs of claim, SNMPRI filed timely claims against the U.S. Debtors for unpaid royalties and other fees under its license agreement with certain Nortel[2] entities, expressly preserving the right to amend the claims to assert additional amounts as they may be uncovered.  Upon discovering multiple unlicensed uses of the Software[3] after the bar date, SNMPRI amended the original proofs of claim several times, each time adding

---

[1] The Proposed Claims include a single statement of claim, which will be attached to each Proposed Claim, for the purpose of brevity.

[2] "Nortel" refers to the U.S. Debtors and its affiliates.

[3] The "Software" refers to certain valuable and unique software implementing the Simple Network Management Protocol and related standards (the "Protocol").

newly discovered products containing the Software and/or increasing the known claim amount, as appropriate, estimated based on the best information SNMPRI had at the time.

3.      In the pending adversary proceeding in which SNMP Research asserts the post-petition portions of its claims, after finally receiving financial information in discovery, SNMP Research's expert reached conclusions as to SNMP Research's pre-petition and post-petition damages. That report was finalized and served on November 2, 2016. It concludes that SNMP Research's pre-petition damages exceed $81 million and that its post-petition damages exceed $47 million. The parties recently agreed to a limited consolidation of the proofs of claim with the adversary proceeding. SNMP Research anticipates that the contested hearing on allowance of the claims (including the Proposed Claims, if this Motion is granted) will be consolidated with the trial on the merits in the adversary proceeding.

4.      Through this Motion, SNMPRI seeks permission to file the Proposed Claims to increase the amount of pre-petition damages based on the conclusions recently reached by SNMP Research's financial expert and to incorporate the record in these bankruptcy cases and the adversary proceeding, in which SNMP Research has obtained discovery relating to Nortel's pre- and post-petition wrongful conduct that straddled the bankruptcy filings.

5.      Permitting SNMPRI to file the Proposed Claims is appropriate because they relate back to the original claims and subsequent amendments. The original, timely-filed claims assert damages for unpaid royalties and other fees, expressly preserving the right to amend the original claims to assert any additional claims as they may arise. Once it was discovered, after the bar date, that Nortel had been using the Software in unlicensed products without paying royalties and other fees for those products, SNMPRI amended the claims to assert resulting damages for copyright infringement and trade secret violations for use of the Software outside the scope of

2

the license agreement and failing to pay resulting royalties and other fees.  This is the quintessential circumstance in which amendments relate back to the filing of timely claims before the bar date.  Any other result would improperly reward the U.S. Debtors for failing to disclose Nortel's unauthorized use of the Software prior to the bar date for filing proofs of claim.

6.    If the Court were to conclude that the Proposed Claims do not relate back, however, permitting them to be filed as new claims under excusable negligent principles is clearly warranted, given Nortel's pre-bar date failure to disclose its improper use of the Software prior to bankruptcy, as well as the lack of any financial information until recently to enable calculation of damages with any degree of relative precision.

7.    In the pending adversary proceeding, both SNMPR *and* SNMPRI assert the same claims (except the time period they occurred) covered by SNMPRI's pre-petition claims for Nortel's *continued* post-petition unauthorized use of the Software prior to the business line sales. While SNMPRI can assert its own independent and distinct pre-petition copyright infringement claims, in hindsight, SNMPR recognizes that it should have also filed pre-petition claims to ensure that its independent and distinct copyright infringement claims relating to Nortel's pre-petition wrongdoing could be prosecuted.  The Software at issue, however, is the same Software that has always been involved in these proceedings, and other claims that SNMPRI can assert afford the same relief.  There is, therefore, zero prejudice to Nortel by allowing SNMPR to be added to the pre-petition claims.

8.    Specifically, SNMPRI can surely pursue claims for breach of contract (as the party to the license agreement with Nortel), and trade secret violations for the same reason, and also because it is the party that possessed and transferred the trade secrets to Nortel.  SNMPRI's trade secret claim rights independently allow for the recovery of actual damages and profits

similar, if not identical, to claims under the United States Copyright Act. Trade secret and copyright infringement laws contain different elements of proof, however, which makes SNMPR's request to be added as a claimant important for the preservation of SNMP Research's collective pre-petition claims, including its copyright infringement claims. In addition, SNMPRI's own copyrights are distinct from those of SNMPR, and thus it is possible that SNMPRI's copyright claims could fail under the facts while SNMPR's copyright claims could succeed. In these circumstances, where the adversary proceeding contains identical post-petition claims by SNMPR *and* SNMPRI that will be adjudicated on the same set of facts regardless of the outcome of this Motion, and the both sets of claims involve the same Software, SNMPR should be added as a claimant in the Proposed Claims under relation-back or joinder principles.

## RELEVANT FACTS

### A.   *Introductory Background Regarding SNMP Research*

9.     Dr. Jeffrey Case is the founder and Chief Technology Officer of SNMPR. Case Dec. at ¶ 1. Dr. Case owns 100% of SNMPR and is a contractor consultant to SNMPRI. *Id.* Dr. Case's wife, Mrs. Mary Case, acts as CEO and owns 100% of SNMPRI. *Id.* SNMPRI and SNMPR are both Tennessee corporations that operate in offices located on the Cases' farm in Knoxville, Tennessee, where the Cases also reside. *Id.*

### B.   *The Software, SNMPRI License and Nortel License*

10.     SNMPR is the owner of certain valuable and unique Software implementing the Protocol.[4] Dr. Case helped develop and co-authorized the Protocol and the Software. SNMPR and SNMPRI are parties to a license agreement (the "SNMPR/SNMPRI License"), under which

---

[4] The Protocol is a standardized protocol that is generally used for collecting information from, and configuring, network devices, such as servers, printers, hubs, switches, and routers on an Internet Protocol (IP) network.

SNMPR granted to SNMPRI a non-exclusive license of the Software. *Id.* at ¶ 4. SNMPRI, in turn, is responsible for the sales, marketing, and licensing of the Software to customers. *Id.*

11.    SNMPR owns copyrights in the underlying Software files, and SNMPRI owns copyrights in various collections and compilations of the Software that SNMPRI licenses to customers. *Id.* SNMPRI and Nortel Networks Corporation (now Nortel Networks Limited), a Canadian debtor, on behalf of itself and its subsidiaries, executed a license agreement dated December 23, 1999 (the "Nortel License"). *Id.* at ¶ 5.

### C.    *The Bankruptcy Filings and Bar Date*

12.    On January 14, 2009 (the "Petition Date"), the U.S. Debtors, other than NNCALA and NNIII, filed voluntary petitions for relief in this Court under Chapter 11 of the United States Bankruptcy Code. By an Order entered on August 4, 2009, this Court established 4:00 p.m. (prevailing Eastern time) on September 30, 2009 (the "Bar Date") as the deadline for filing proofs of claim against the Debtors, except NNCALA and NNIIII.

### D.    *The Original Claims and Omnibus Claim Objection*

13.    Prior to the Bar Date, on September 29, 2009, SNMPRI timely filed proofs of claim against the U.S. Debtors, except NNCALA and NNIII (the "Original Claims"). Case Dec. at ¶ 6. In the Original Claims, SNMPRI asserted a general unsecured claim against the U.S. Debtors, other than NNCALA and NNIII, for $22,281.00 for unpaid royalties and other fees under the Nortel License, "plus any and all additional amounts associated with royalties that have not been reported by the Debtors to date and are owed to SNMP[RI]." *Id.* The Original Claims further state that SNMPRI "reserves the right to modify or amend this proof of claim to assert additional claims as they arise." *Id.*

14.    At the time the Original Claims were filed, Dr. Case was not aware that Nortel was using the Software outside the scope of the Nortel License or that Nortel was committing

copyright infringement and violating trade secrets prior to the U.S. Debtors' bankruptcy filings in 2009. *Id.* at ¶ 7. Dr. Case had a suspicion, however, that it was possible that Nortel was using the Software in unauthorized ways prior to the bankruptcy filings, which was why the Original Claims preserved the right to assert other amounts and amend. *Id.*

15.    On July 9, 2010, the U.S. Debtors filed their twelfth omnibus objection to certain claims (the "Omnibus Objection"). *See* D.I. 3507. The Omnibus Objection included two separate objections to the Original Claims. The first objection was that the proof of claim originally filed against NNI (the "NNI Claim") should be reduced and allowed in the amount of $11,781.00. *See id.* at Exhibit B, p. 1 of 2. In support of that objection, the U.S. Debtors stated as follows:

> Non-Debtor Invoice and No Supporting Documentation Claim. Claim should be modified to remove $2,500 in invoices due from Nortel Networks Technology Corp. Nortel Networks Technology Corp. is not a Debtor in these chapter 11 cases. In addition, the claim should be modified to remove the portions containing an unsubstantiated claim for royalties and $10,500 in maintenance fees for which no supporting documentation has been provided. None of the Debtors in these chapter 11 cases are liable for the overstated portions of the claim and the Debtors' Books and Records do not indicate any such liability.

*Id.* The second objection was that the remaining Original Claims should be disallowed as duplicate claims. *Id.* at Exhibit C, pp. 1-3 of 4.

16.    On August 4, 2010, SNMPRI filed a response to the Omnibus Objection [D.I. 3759] (the "Response"). In the Response, SNMPRI stated that it had recently learned of the unauthorized use of the Software and subsequent unauthorized transfer of the Software to GENBAND, Inc. ("GENBAND").[5] SNMPRI also pointed to the reservation language in its Original Claims covering any and all additional amounts associated with unreported royalties

---

[5] In certain portions of this Motion, GENBAND is referenced to mean GENBAND and its affiliated entities including GENBAND USA LLC.

and objected to the removal of other so-called "unsubstantiated" claims. *See id.* at ¶ 7. The Response included e-mail communications confirming Nortel's unauthorized use of a product family Nortel sold to GENBAND known as the MG9000. Those e-mails ranged from May 25 through August 4, 2010, the day the Response was filed (the "MG9000 E-mails"). Following the Response, the parties engaged in discovery on the Omnibus Objection. The hearing on the Omnibus Objection, as it relates to the Original Claims, was ultimately continued to a date to be determined and remains pending to date.

E.    *The First through Third Amended Proofs of Claim*

17.    On October 14, 2010, SNMPRI filed its first amendment to the NNI Claim (the "First Amended NNI Claim"). Case Dec. at ¶ 8. In the First Amended NNI Claim, SNMPRI asserted a total general unsecured claim for $1,517,038.00, consisting of the amounts asserted in the Original Claims, plus an additional $1,494,946.00 due to licensing fees, royalties and maintenance fees, plus interest, associated with the unauthorized use of the Software in the MG9000. *Id.* SNMPRI calculated the estimated damages based on a hypothetical royalty buyout for use of a Software product called EMANATE/Lite, plus interest at the contract rate of 18 percent per annum. *Id.* At the time, SNMPRI lacked any data on Nortel's profits made on the product. *Id.* The First Amended NNI Claim was filed based on the information about the MG9000 learned from the MG9000 E-mails, which confirmed for the first time in writing (to SNMPRI's knowledge) that the MG9000 product contained the Software. *Id.*

18.    In hindsight, Dr. Case recognizes that he should have asked to file separate proofs of claim for SNMPR when the First Amended NNI Claim was filed by SNMPRI in October 2010 asserting unlicensed uses of the Software, shortly after it was first discovered that the Software was being used outside the scope of the Nortel License. *Id.* at ¶ 9. Dr. Case's failure to seek to file separate proofs of claim for SNMPR in October 2010 was based on his

7

mistaken belief at the time that SNMPRI's proofs of claim were sufficient to cover violations of both SNMPRI's and SNMPR's rights in the Software, given that SNMPRI was the party to the Nortel License. *Id.*

19.     On May 5, 2011, SNMPRI filed its second amendment to the NNI Claim (the "Second Amended NNI Claim"). *Id.* at ¶ 10. In the Second Amended NNI Claim, SNMPRI asserted a general unsecured claim for $5,370,594.00, consisting of the amounts asserted in the First Amended NNI Claim, plus an additional $3,853,309 due for license fees and royalties, plus interest at the contract rate of 18% per annum, associated with the unauthorized use of the Software in a line of products defined as the "Bay Products," which are otherwise referred to in this dispute as the ES and ERS products. *Id.* These product families were sold by Nortel to Avaya Inc. ("Avaya") as part of the Enterprise Solutions sale. *Id.* SNMPRI did not have any unit shipping or sales data at the time for these products to calculate the amounts due based on actual usage. *Id.* SNMPRI also lacked, at the time, any data on Nortel's profits made on these products. In support of the Second Amended NNI Claim, SNMPRI attached Exhibit 3, which is an e-mail dated April 14, 2011 from Roy Weldon at Avaya confirming that Bay Products contained the Software (i.e., ES, ERS, WLAN and VSP7000) (the "Weldon E-mail"). *Id.* Prior to the Weldon E-mail, SNMPRI did not know what specific Bay Products contained the Software. *Id.*

20.     The Second Amended NNI Claim also asserts a claim for $247, plus interest, for unpaid royalties for the use of the Software in the Universal Signaling Point product. *Id.* at ¶ 11. SNMPRI added a claim for the unpaid USP royalties after the Original Claims as a result of a subsequent review of SNMPRI's records, which uncovered that this amount was due and owing under the Nortel License. *Id.* The Second Amended NNI Claim also identified the SP2000 and

8

VSS products, which SNMPRI discovered contained the Software based on the U.S. Debtors' responses to interrogatories dated April 1, 2011, served in connection with the pending Claim Objection. *Id.*

21.    The Second Amended NNI Claim further asserts claims for unknown amounts to be determined under the U.S. Copyright Act, applicable trade secret and other laws, and any additional amounts associated with licensing fees, royalties, and maintenance fees for the Bay Products and any other products that have not been reported to date and are owed to SNMPRI. *Id.* at ¶ 12.  SNMPRI further reserved the right to modify or amend the Second Amended NNI Claim and to assert additional claims as SNMPRI learns of such claims through discovery or otherwise. *Id.*

22.    On September 9, 2011, SNMPRI filed its third amendment to the NNI Claim (the "Third Amended NNI Claim").  *Id.* at ¶ 13.  In the Third Amended NNI Claim, SNMPRI asserted a general unsecured claim for $7,549,323.00, consisting of the same amounts asserted in the Second Amended NNI Claim, except that the amounts due for the unlicensed use of the MG9000 product was increased from $1,494,946.00 to $3,673,675.00.  *Id.*  As noted in the Third Amended NNI Claim, that amount was increased due to representations GENBAND made to SNMPRI after the filing of the Second Amended NNI Claim concerning the Software product contained in the MG9000.  *Id.*  Specifically, SNMPRI learned that the MG9000 contained a product called EMANATE, instead of EMANATE/Lite.  These products are priced differently, leading to the increased claim amount.  *Id.* SNMPRI confirmed that the MG9000 contained EMANATE on August 15, 2011, when SNMPRI received an e-mail from a representative of GENBAND on the subject.  *Id.*

9

F.    *Execution of the SNMPRI/SNMP License and SNMP Research's Practices*

23.    Prior to bringing the Adversary Proceeding (discussed and defined below), Dr. Case reviewed SNMP Research's files for signed copies of internal license agreements between and among Dr. Case and SNMP Research and between SNMPR and SNMPRI. *Id.* at ¶ 14. Dr. Case was unable to find a signed copy of a license agreement between SNMPR and SNMPRI, although he recalled that one was prepared when SNMPRI was formed in 1994. *Id.* Dr. Case was able to locate an electronic copy of a license agreement between SNMPR and SNMPRI that was prepared in 1994, which appeared to be the most recent version of the document. *Id.* Dr. Case was not able to locate a signed version of the agreement and is therefore not able to confirm conclusively whether it was ever signed. *Id.* Because Dr. Case was not able to locate a signed copy of the license agreement between SNMPR and SNMPRI, in late September 2011, SNMP Research approved the signing of the SNMPR/SNMPRI License, and it was executed shortly thereafter, effective as of April 20, 1994. *Id.*

24.    Once SNMPRI became operational in 1995, with two exceptions Dr. Case can specifically recall in which SNMPR and SNMPRI jointly granted licenses, SNMPRI exclusively licensed the Software to customers. *Id.* at ¶ 15. Although SNMPR had the right to license the Software directly, it was not SNMP Research's common practice to do so once SNMPRI began operations. *Id.* The common practice of SNMP Research was to operate as if SNMPRI had an exclusive license to the Software. *Id.* Based on the way SNMP Research functioned practically, Dr. Case believed that SNMPRI, as the party to the Nortel License and based on SNMP Research's common licensing practices, was the proper party to enforce the Software rights of SNMP Research and to file the proofs of claim before the Adversary Proceeding (defined below) was filed. *Id.*

10

25.    Prior to this dispute with Nortel, neither SNMP Research entity had ever been a plaintiff or defendant in any lawsuit, including but not limited to any copyright infringement or trade secret lawsuit. *Id.* at ¶ 16.

### G.    *The Adversary Proceeding*

26.    On November 2, 2011, more than two years after the Bar Date, SNMP Research filed an adversary complaint (the "Initial Adversary Complaint") in this Court against the U.S. Debtors, except NNIII (and other non-debtors) (Adv. No. 11-53454) (the "Adversary Proceeding"). *Id.* at ¶ 17.

27.    In the Adversary Proceeding, SNMP Research currently seeks (i) actual damages and profits against the U.S. Debtors relating to Nortel's improper post-petition, pre-business line sale use of the Software (the "Post-Petition, Pre-Sale Use Claims"), (ii) Nortel's profits from the Avaya and GENBAND business line sales, (iii) damages relating to Avaya's and Hitachi Ltd.'s post-business line sale use of the Software, for which the U.S. Debtors are contributorily liable and (iv) allowable pre-judgment interest, fees and costs. The Post-Petition, Pre-Sale Use Claims assert claims based on conduct that began pre-petition and continued post-petition.[6] The proofs of claim assert damages for the same conduct subject to the Post-Petition, Pre-Sale Use Claims that occurred prior to the Petition Date (the "Pre-Petition Use Claims"). *Id.* at ¶ 18. The same Software is also at issue in the Pre-Petition Use Claims and the Post-Petition, Pre-Sale Use Claims. *Id.*

---

[6] There may be a couple of minor exceptions with respect to Nortel's unauthorized use that did not begin until after the Petition Date for which SNMP Research is seeking nominal damages in the Adversary Proceeding. Nortel also may have discontinued products prior to the Petition Date, so it is possible that not every unauthorized use that occurred pre-petition continued post-petition, but the factual and legal issues are materially the same.

11

**H.** *The Fourth and Fifth Amended Proofs of Claim*

28.     On December 20, 2012, SNMPRI amended its proofs of claim against each of the U.S. Debtors, except NNCALA and NNIII (the "Fourth Amended Claims").[7]  Case Dec. at ¶ 19. In the Fourth Amended Claims, SNMPRI asserted a general unsecured claim for $8,414,695.00, consisting of the same amounts asserted in the Third Amended NNI Claim, as well as a claim for $865,372.00 relating to Nortel's improper use of the Software in a product family referred to as "GEM," which was sold by Nortel to GENBAND during these bankruptcy cases. *Id.* The Fourth Amended Claims state that GENBAND discovered that the GEM product contained the Software in the summer of 2012.  *Id.*  To be more precise, GENBAND performed a search for the presence of the Software in GENBAND products purchased from Nortel, and shared those results with SNMPRI by e-mail dated March 7, 2012.  *Id.*  As a result of this search, GENBAND and SNMPRI amended its existing license agreement with GENBAND, which was executed by SNMPRI on June 13, 2012.  *Id.*

29.     On October 7, 2015, SNMPRI again amended its proofs of claim against all of the U.S. Debtors, except NNCALA and NNIII (the "Fifth Amended Claims," and together with the First Amended NNI Claim, Second Amended NNI Claim, Third Amended NNI Claim and Fourth Amended Claims, the "Previously Amended Claims").[8]  *Id.* at ¶ 20.  In the Fifth Amended Claims, SNMPRI asserted a general unsecured claim for $8,414,695.00, the same amount asserted in the Fourth Amended Claims.  *Id.*  The purpose of the Fifth Amended Claims was to add claims for unknown amounts due relating to the unauthorized use of the SMC 2450

---

[7] The Fourth Amended Claims consisted of the fourth amended claim against NNI and the second amended claims against the remaining U.S. Debtors, except NNCALA and NNIII.

[8] The Fifth Amended Claims consisted of the fifth amended claim against NNI and the third amended claims against the remaining U.S. Debtors, except NNCALA and NNIII.

and PP8600 products.[9]  *Id.*  SNMPRI discovered that these products were unlicensed by reviewing post-petition royalty reports prepared by Nortel which reported the products as if they were licensed.  *Id.*  No license for these products, however, existed.  SNMPRI discovered that these two additional products contained the Software prior to December 2013, when SNMPRI amended the Initial Adversary Complaint for the first time and added these products to that version of the lawsuit.  *Id.*

## I.      *The Limited Consolidation Stipulation*

30.      SNMP Research recently requested that the U.S. Debtors enter into a stipulation that would allow the Court to hear matters relating to the post-petition claims in the Adversary Proceeding and the pre-petition proofs of claim together.   Following that request, the parties agreed to a stipulation which was subsequently approved by Order of this Court.  *See* Adv. D.I. 502 (the "Limited Consolidation Order").  The Limited Consolidation Order provides that:

> All claims asserted by SNMP Research against the Debtors in the Proofs of Claim and any pending and subsequent objections to the Proofs of Claim, are procedurally consolidated with the Adversary Proceeding for administration so as to proceed according to the same schedule and, to the extent appropriate, joined for hearings and/or trial in this Adversary Proceeding.

*Id.* at ¶ 2.  The Limited Consolidation Order further provides that, "[e]ntry into this Stipulation will not affect the rights, claims, or defenses of any of the Parties." *Id.* at ¶ 3.

31.      The Limited Consolidation Order further provides that:

> To the extent that SNMP Research is permitted to amend any Proof of Claim, such amended Proof of Claim and any objections thereto shall be consolidated with this Adversary Proceeding on the same terms as set forth herein, subject to the U.S. Debtors' reservation of their objections and defenses to any such claim. Nothing herein shall waive or impair any defenses or objections the U.S. Debtors would have to any such requested amendment.

---

[9] The Fifth Amended Claims also mentioned the VSS product, which was already identified in the Second Amended NNI Claim.

*Id.* at ¶ 5.

32.     This provision was added by the U.S. Debtors because SNMP Research advised

the U.S. Debtors that SNMP Research intended to amend its proofs of claim after its damages

expert report was submitted in early November 2016 in the Adversary Proceeding, since the

report would cover both the pre- and post-petition periods.  The U.S. Debtors did not advise

SNMP Research then (or at any time previously) of the position that SNMP Research was not

authorized to amend its proofs of claim absent Court order.  Indeed, SNMP Research learned of

the U.S. Debtors' position by reading the recently filed objection to the PBGC's amended proofs

of claim, in which the U.S. Debtors make a similarly incorrect argument with respect to the

PBGC's ability to amend a proof of claim without an advanced order.  *See* D.I. 17325.[10]

**J.     *SNMP Research's Expert Report on Pre-Petition Damages***

33.     As the Court is aware, discovery in the adversary proceeding is ongoing.   On

November 2, 2016, SNMP Research served five expert reports on the U.S. Debtors, including an

expert report by SNMP Research's damages expert, Mr. Ian Ratner of GlassRatner (which was

subsequently amended/corrected on November 11, 2016).  Case Dec. at ¶ 21.   Mr. Ratner

concluded in his report that SNMP Research suffered pre-petition damages of **$81.08 million**,

consisting of actual damages of at least $33.12 million, profits attributable to the Software net of

assumed actual damages of at least $39.27 million (for a total of at least $72.39 million), plus

pre-judgment interest through the Petition Date of at least $8.69 million (at the prime rate,

compounded quarterly, a substantially *reduced* rate rather than the contract rate of 18% asserted

in the proofs of claim).  *Id.*

---

[10] The U.S. Debtors have previously suggested that they would challenge the timeliness of the claim amendments, but SNMP Research always understood that to mean that the U.S. Debtors anticipated making a substantive challenge to whether the amendments "related back" to the Original Claims.

14

34.     The pre-petition damages are largely based on the ES and ERS product families (i.e., Bay Products), and to a lesser extent, the MG9000. *Id.* at ¶ 22. All of Mr. Ratner's reported pre-petition damages are premised on the same products identified in the previously filed proofs of claim, except one product family, for which Mr. Ratner concluded SNMP Research suffered nominal damages (i.e., less than $20,000.00 before interest).[11] *Id.* Mr. Ratner's conclusions on pre-petition damages were based on unit sale and profit information obtained over the last several months in discovery in the Adversary Proceeding, which was not available at the time any of the prior proofs of claim were filed.[12] *Id.*

## ARGUMENT

### I.     SNMPRI Should be Permitted to File the Proposed Claims.

#### A.     *SNMPRI was Not Required to File a Motion Prior to Filing the Previously Amended Claims.*

35.     In the PBGC Objection filed on November 2, 2016, the U.S. Debtors take the position that Bankruptcy Rule 7015 requires a creditor to file a motion prior to amend a timely-filed proof of claim. *See* PBGC Objection at 17-18. As a result of this recent position, SNMPRI files this Motion, in an abundance of caution, seeking advanced leave to file the Proposed Claims.

36.     The U.S. Debtors' recent interpretation of Bankruptcy Rule 7015 in the PBGC Objection is inconsistent with the plain language of the Bankruptcy Rules. Bankruptcy Rule

---

[11] The PP8600 product identified in the proofs of claim is referred to by Mr. Ratner as the PP8660. With respect to the GEM product identified in the proofs of claim, Mr. Ratner identifies the GEM and GM2 (a/k/a GEM2), which was a later version of the GEM. The Bay Products, as defined by the proofs of claim, include ES and ERS products families.

[12] The one exception to this is the unit shipments for the MG9000 product cards. This information was contained in the e-mails attached to the First Amended NNI Claim and all subsequent proofs of claim filed against the U.S. Debtors. Like the other products, the profit information for the MG9000 was not available to SNMP Research until recently, through discovery in the Adversary Proceeding.

9014(c), governing contested matters, provides that unless otherwise ordered by the Court, certain adversary proceeding rules automatically apply to contested matters. Bankruptcy Rule 7015 is expressly excluded from this list. Consequently, absent an order of the Court (either in a specific case or by generally applicable local rule or order), Bankruptcy Rule 7015 and its requirement that pleadings cannot be amended without leave do not apply.

37. Recognizing that Rule 7015 generally does not apply to amendments to proofs of claims, one judge of the Bankruptcy Court for the Southern District of Texas entered an administrative order providing that, "[p]ursuant to Bankruptcy Rule 9014(c), this Court *may* elect to apply Federal Rule of Bankruptcy Procedure (Bankruptcy Rule 7015) in contested matters concerning proofs of claim." (emphasis added).[13] Under this Texas local order, only if this permissive authority under Bankruptcy Rule 9014(c) to apply Bankruptcy Rule 7015 is invoked, when an objection to a proof of claim is filed, creating a contested matter, is it necessary for the claimant to obtain leave to amend the claim pursuant to Federal Rule 15.

38. Unlike the Texas administrative order providing for the option of more generally applying Bankruptcy Rule 7015 in contested matters involving objections to proofs of claim, Local Rule 3007-1 of this Court applies Bankruptcy Rule 7015 in a more limited way. Local Rule 3007-1(f)(iv) provides, in relevant part, that Bankruptcy Rule 7015 "shall apply to any substantive Objection and upon the filing of a response to such substantive Objection, the *objector may only amend* such Objection upon leave of court *or written consent of the claimant*" (emphasis added).

39. As a threshold matter, the Local Rule protects the *creditor* by not allowing an *objector* to amend its substantive *objection* to a claim. The rule says nothing affirmative about

---

[13] *See* http://www.txs.uscourts.gov/page/notice-and-order-federal-rule-15-made-applicable-bankruptcy-rule-7015-shall-apply-whenever

16

53651/0001-13833330v3

requiring the claimant to obtain leave as a condition to amending its claim once a substantive objection is filed. Consistent with the clear wording of Local Rule 3007-1, the Court should reject the Debtors' argument and hold that Local Rule 3007-1(f)(iv) does not impose a requirement on the claimant to seek leave to amend a claim upon the filing of a substantive objection to the claim, but instead is limited to the obligations of the objector to seek leave to amend an omnibus substantive claim objection.

40.    If the Court were to expand Local Rule 3007-1(f)(iv) by imposing an affirmative duty to seek leave to amend on the claimant despite the absence of such a requirement in the current Local Rule, the Court then would need to decide whether the U.S. Debtors' objections to the Original Claims were substantive or non-substantive, as the rule unequivocally only applies to substantive claim objections. Local Rule 3007-1(d) defines substantive objections as any objections not listed in subsection (d). The list of non-substantive objections includes books and records objections, claims filed in the wrong case, and duplicate claim objections. *See* Local Rule 3007-1(d)(i), (ii), (vi).

41.    Here, the U.S. Debtors objected to the NNI Claim on the basis that the NNI Claim included amounts owed to a Canadian debtor and were not consistent with the U.S. Debtors' books and records. This objection to the NNI Claim was clearly a non-substantive books and records objection. The statement that $2,500.00 was owed by a Canadian debtor was nothing more than an explanation of why the amount claimed did not comport with the U.S. Debtors' books and records. In addition, the portion allegedly owed to a Canadian debtor was a non-substantive objection regarding a claim filed in the wrong case. Accordingly, even if the Local Rule were to be interpreted to require a claimant to file a motion to amend a proof of claim after

a substantive objection is filed, SNMPRI still would not be required to file a motion to amend

any of its claims against NNI, because no substantive objection has been filed to date.[14]

**B.**     *The Proposed Claims are Proper Amendments to the Original Claims and Previously Amended Claims.*

42.     The Court should permit SNMPRI to file the Proposed Claims as amendments to

the Original Claims and Previously Amended Claims.   Although Federal Rule 15 does not

automatically apply in contested matters, as discussed above, courts routinely rely on principles

of relation-back enunciated in Federal Rule 15 in deciding whether to allow a proof of claim to

be amended after the bar date.[15]

43.     Federal Rule 15(a)(2) provides, in part, that "[t]he court should freely give leave

when justice so requires."   Whether an amendment to a timely proof of claim should be allowed

"is committed to the 'court's sound discretion.'"   *In re Washington*, 420 B.R. 643, 645 (Bankr.

W.D. Pa. 2009) (quoting in part *Interface Group-Nevada v. Trans World Airlines, Inc. (In re

Trans World Airlines, Inc.)*, 145 F.3d 124, 141 (3d Cir. 1998)).   "It is a well settled principle that,

absent contrary equitable considerations or prejudice to the opposing party, amendments to

proofs of claim should be freely given."   *In re Edison Bros. Stores, Inc.*, 2002 WL 999260, at *3

(Bankr. D. Del. May 15, 2002) (citations and quotations omitted). The Third Circuit has

recognized a liberal approach to amending pleadings under Federal Rule 15(a)(2).   *See Le v. City

of Wilmington*, 2010 WL 2754253, at *2 (D. Del. July 12, 2010) (citing *Dole v. Arco*, 921 F.2d

---

[14] Local Rule 3007-1(d)(i) defines duplicate claim objections as non-substantive, but excludes from the definition of duplicate an objection to claims being filed against different debtors.  The U.S. Debtors' objections to the Original Claims, other than NNI, were duplicate claim objections based on the same claim being filed against multiple debtors.  Notwithstanding the apparent substantive nature of the duplicate claim objections regarding the non-NNI debtor claims, as discussed above, SNMPPRI does not believe Local Rule 3007(f)(iv) places an affirmative obligation on a claimant to seek leave to amend upon the filing of a substantive objection.

[15] These disputes ordinarily are raised in objections to claims, but in light of the U.S. Debtors' recent position in the PBGC Objection that the claimant must move for approval of an amendment, SNMPRI is raising them in this Motion.

484, 487 (3d Cir. 1990)).   Pursuant to Federal Rule 15(a)(2), "[i]n the absence of dilatory

motives on the part of the moving party, the amendment should be freely granted, unless it is

futile or unfairly prejudicial to the non-moving party." *Id.* (citations omitted).

44.     Because futility is a consideration under Federal Rule 15(a)(2), when an

amendment to a proof of claim is made after the bar date, courts must analyze whether the

amendment relates back to the filing of the timely-filed original proof of claim.   The relation-

back principle is governed by Federal Rule 15(c), which provides, in relevant part, that the

amendment relates back to the original pleading when "the amendment asserts a claim or defense

that arose out of the conduct, transaction, or occurrence – or attempted to be set out – in the

original pleading."  Fed. R. Civ. P. 15(c)(2).   Applying this relation-back concept to amending

proofs of claim after the bar date, this Court has held that an amendment should be allowed if the

original claim gives fair notice of the conduct, transaction or occurrence that forms the basis of

the amended claim.  *See In re Edison Bros. Stores, Inc.*, 2002 WL 999260, at *4 (quotations

omitted); *see also In re Washington*, 420 B.R. at 646 ("[I]f the amendment simply cures a defect

in the original claim, sets it forth in more detail, pleads a new theory of recovery on the same

facts, or increases damages, it will not constitute a new claim and relation back may be

allowed.") (citing *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 309 (3d Cir. 1999)).

45.     In the present case, the Proposed Claims meet the requirements to relate back to

the proofs of claim they amend.  As a threshold matter, there is no dilatory motivation on the part

of SNMPRI in filing this Motion or unfair prejudice to the U.S. Debtors or any other creditor.

As the record clearly demonstrates, SNMPRI has been diligent in consistently amending its

claims when facts came to light demonstrating new unauthorized uses of the Software originally

provided to Nortel under the Nortel License.  The purpose of the Proposed Claims is to increase

the damages reflected based on Mr. Ratner's recent conclusions and to incorporate the record in this case and the Adversary Proceeding, in which discovery on the Nortel's pre- and post-petition conduct has been obtained.

46.    SNMPRI simply did not have the requisite data to perform a complete damages calculation until the U.S. Debtors and Avaya recently produced such data in discovery in the Adversary Proceeding.[16] After the relevant information was received, SNMP Research shared it with its damages expert, who calculated the pre-petition portion of damages based on the same unlicensed products identified in the Previously Amended Claims (with one minor exception, for which less than $20,000.00 in damages is being sought prior to interest, as discussed above). The expert's report was not completed until November 2, 2016. There is thus nothing dilatory or unfairly prejudicial here.

47.    The remaining issue, therefore, is whether the Proposed Claims would be futile. This requires an analysis of whether the Proposed Claims relate back to the Original Claims. The facts and applicable case law demonstrate that the Proposed Claims undoubtedly relate back to the Original Claims.

48.    This Court has repeatedly held that, when a contract is part of a timely-filed proof of claim, amendments to that claim arising out of that contract relate back to the filing of the original claim. *See Agassi v. Planet Hollywood Int'l, Inc.*, 269 B.R. 543, 549-50 (D. Del. 2001) (amendment asserting indemnification claim under contract included in original proof of claim related-back to original claim, which sought damages for breach of contract and all other claims under the agreement); *In re Stone & Webster, Inc.*, 547 B.R. 588, 606 (Bankr. D. Del. 2016) (allowing insurer that filed a timely proof of claim for amounts due under the policy to amend

---

[16] GENBAND also produced a valuation report that is being relied upon in Mr. Ratner's report.

53651/0001-13833330v3

claim to increase amount of claim to reflect more accurately amounts due under the policy); *In re SemCrude, L.P.*, 443 B.R. 472 (Bankr. D. Del. 2011) (amendment to timely-filed proof of claim under purchase and netting agreements to assert indemnity and breach of warranty related back to original claim when contract was attached and original claim contained a reservation of rights to assert other claims arising under applicable law); *Edison Bros.*, 2002 WL 999260, at *4 (landlord's amendment to original claim which attached lease and sought unpaid taxes related back to original claim, when amendment sought to add rejection damages, finding that "courts have generally held that a post-bar date proof of claim seeking to increase the amount of a timely-filed claim is not the assertion of a new claim").

49.     The Court should reach a similar conclusion here.  As detailed in the Relevant Facts above and in the Case Declaration, the Original Claims sought damages for failure to pay royalties and other fees under the Nortel License in the amount of approximately $22,000.00, "plus any and all additional amounts associated with royalties that have not been reported by the Debtors to date and are owed to SNMP[RI]."  The Original Claims further state that SNMPRI "reserves the right to amend this proof of claim and to assert additional claims as they arise."  The subject of the Original Claims is Nortel's use of the Software.  While Dr. Case did not have facts to confirm Nortel's unauthorized use of the Software when the Original Claims were filed, his suspicion (which turned out to be correct) prompted him to include the reservation language in the Original Claims to make clear of SNMPRI's intentions to amend the Original Claims later if such wrongful conduct was found to have occurred.

50.     After the Bar Date, SNMPRI became aware of certain unlicensed uses of the Software outside the scope of the Nortel License which gave SNMPRI the right to additional royalties, fees, profits and other amounts under the Nortel License and copyright and trade secret

21

laws. The Previously Amended Claims identify those products and attempted to calculate damages without any financial information from the U.S. Debtors or the benefit of a financial expert, incrementally increasing the known estimated amounts asserted when appropriate. The Original Claims put the U.S. Debtors on more than fair notice of SNMPRI's claims for additional amounts that may come due based on Nortel's authorized *or* unauthorized use of the Software, including claims for copyright infringement and trade secret misappropriation stemming directly from Nortel's breach of the Nortel License. Moreover, Nortel itself controlled the information and thus knew or should have known of the potential extent of their unauthorized use and potential damage to SNMPRI *and* SNMPR. Accordingly, all of the Previously Amended Claims relate back to the Original Claims.

51.    The Proposed Claims SNMPRI seeks permission to file now simply modify SNMPRI's claim amount based on financial information provided in discovery in the Adversary Proceeding and its expert's damages report, which was not completed until November 2, 2016. If the Previously Amended Claims relate back to the Original Claims, the Proposed Claims must also relate back to the Original Claims, as it is undisputed that amended claims filed to increase the amount of a timely-filed claim should be allowed, so long as they do not change the nature of the claim. *See Edison Bros.*, 2002 WL 999260, at *4 ("Courts have generally held that a post-bar date proof of claim seeking to increase the amount of a timely-filed claim is not the assertion of a new claim."). For the foregoing reasons, the Court should permit SNMPRI to file the Proposed Claims as proper amendments to the Original Claims.

53651/0001-13833330v3

C.      ***Alternatively, Excusable Neglect is Present to Permit SNMPRI to File the Proposed Claims as New Claims after the Bar Date.***

52.     If the Court were to conclude that the Proposed Claims do not relate back to the Original Claims, despite the compelling case that they do, then the Court should still allow their filing as late-filed new claims under excusable neglect principles.

53.     Federal Rule of Bankruptcy Procedure 9006(b)(1) provides that:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done when the failure to act was the result of **excusable neglect**.

Fed. R. Bankr. P. 9006(b)(1) (emphasis added).

54.     In *Pioneer Inv. Servs. B. Brunswick Assoc. Ltd. P'Ship*, 507 U.S. 380 (1993), the Supreme Court stated that when analyzing excusable neglect under Bankruptcy Rule 9006(b)(1), courts should take into "account [] all relevant circumstances surrounding the party's omission" in failing to timely file its proof of claim. *Id.* at 395; *see also Chemetron Corp. v. Jones*, 72 F.3d 341, 349 (3d Cir. 1995) (stating whether the failure to comply with a bar date order is excusable "is essentially an equitable one, in which courts are to take into account all relevant circumstances surrounding a party's failure to file").

55.     In evaluating these circumstances, *Pioneer* established the following four factors: "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395. Each of these factors weighs heavily in favor of allowing the Proposed Claims to be filed here.

23

56.     *First*, no prejudice (factor 1) will be suffered by allowing the Proposed Claims. In considering prejudice, "[t]he relevant factors ... include: [1] whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; [2] whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect the distribution to creditors; [3] whether payment of the claim would jeopardize the success of the debtor's reorganization; [4] whether allowance of the claim would adversely impact the debtor actually or legally; and [5] whether allowance of the claim would open the floodgates to other future claims." *In re Inacom Corp.*, 2004 WL 2283599, at *4 (D. Del. Oct. 4, 2004) (citing *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999)). The Court should balance these factors in determining whether prejudice weighs for or against a finding of "excusable neglect." *See In re Garden Ridge Corp.*, 348 B.R. 642, 646 (Bankr. D. Del. 2006).

57.     Here, there can be no doubt that the U.S. Debtors are not caught off guard by the Proposed Claims. The Original Claims contained a reservation of rights and a statement making clear that SNMPRI would amend its claims to include additional amounts owed for royalties that have not been reported.[17]   Moreover, SNMPRI consistently amended the Original Claims to identify products subject to its pre-petition claim, but has not been able to calculate its damages with greater precision until recently, when SNMPRI's damages report was served on November 2, 2016. Permitting the Proposed Claims also will not force the return of any amounts paid under a plan (no plan has been confirmed) or jeopardize the success of the U.S. Debtors' reorganization, which is premised on a liquidation plan with more than sufficient money to fund it and make a substantial distribution to unsecured creditors, even if the Proposed Claims are

---

[17] As discussed above, this reservation of rights language supports the relation-back of the Previously Amended Claims and the Proposed Claims to the Original Claims. If the Court does not find that the Proposed Claims are proper amendments under relation-back principles, however, the reservation of rights language also supports the fact that the U.S. Debtors were not caught off guard under excusable neglect standards.

ultimately allowed in full.  The Proposed Claims also would not have an unfair adverse impact on the U.S. Debtors.  The claims would be subject to a full hearing on the merits, and none of the U.S. Debtors' rights to contest the actual merits of the claims asserted in the Proposed Claims will be impacted by allowing them to be filed.  SNMPRI also sees no reason why granting this Motion on these facts could possibly open the floodgates to allowing other amended claims in this case or any other.  For these reasons, factor 1 of the *Pioneer* test favors allowing the Proposed Claims to be filed as late-filed new claims, to the extent they do not relate back to the Original Claims.

58.     *Second*, analysis of the length of delay (factor 2) strongly favors SNMPRI.  When analyzing delay, the Court should evaluate it from the date of the filing of the late-filed claims, not when a motion is filed or the issue is otherwise litigated through a claim objection or other contested matter.  *See In re Garden Ridge Corp.*, 348 B.R. at 646 (considering delay factor from bar date to date of filing late proof of claim, instead of when excusable neglect issue was actually litigated); *see also In re Gulf States Long Term Acute Care of Covington, LLC*, 2010 WL 4809338, at *2 (Bankr. E.D. La. Nov. 19, 2010) (same); *In re Caritas Health Care, Inc.*, 435 B.R. 111, 116 (Bankr. E.D. N.Y. 2010) ("In this case, the length of delay between the Bar Date and the filing of the Claims is not substantial.").  "To treat otherwise would reward a debtor or committee for delaying … the bringing of an objection to claims."  *In re Garden Ridge Corp.*, 348 B.R. at 646.  The record here demonstrates that SNMPRI diligently amended its claims when it learned of new products or other significant information relating to its pre-petition damages after the Bar Date and increased the estimated amounts owed when appropriate.  With respect to the Proposed Claims, they could not have been filed until SNMRPI's damages expert

completed his report, which was done on November 2, 2016. Factor 2 of the *Pioneer* test, thus, favors SNMPRI.

59.     *Third,* any delay in filing the Proposed Claims had nothing to do with SNMPRI. In analyzing the reason for delay, courts should take into account "the role that [the debtor] might have played in contributing to the delay." *Chemetron Corp.*, 72 F.3d at 350. In cases where the facts were unknown on the bar date, this is a straightforward analysis. *See In re PT-1 Commc'ns*, 292 B.R. 482, 489 (Bankr E.D.N.Y. 2003) ("Although conscious disregard of the bar date is not excusable neglect, [the creditor] had no reason on the basis of the facts known to it prior to the Bar Date to conclude that it had a claim against [the debtor].") (citations omitted); *see also Dix v. Johnson (In re Dix)*, 95 B.R. 134, 139 (9th Cir. B.A.P. 1988) (finding excusable neglect where creditor was not aware of claim prior to the bar date); *In re Sitzberger*, 65 B.R. 256, 261 (Bankr. S.D. Cal. 1986) ("What impresses this court most is that in the cases cited by the trustee and others reviewed by this court, where an amendment to a claim or a late filed claim was not allowed, the creditor was sufficiently aware of the claim to enable it to timely file a proof of claim and the creditor was negligent or careless in not timely filing.").

60.     In the context of this case, application of the third *Pioneer* factor is, in essence, an analysis of the discovery rule. In applying the discovery rule in the copyright context, the Third Circuit has held that "[w]e have rejected the proposition that the discovery rule places a duty on prospective plaintiffs to inquire into possible future wrongful conduct." *William A. Graham Co. v. Haughey*, 568 F.3d 425, 439 (3d Cir. 2009). The Supreme Court has said the following about the discovery rule:

> When the injury is self-concealing, private parties may be unaware that they have been harmed. Most of us do not live in a state of constant investigation; absent any reason to think we have been injured, we do not typically spend our days looking for evidence that we were lied to or defrauded. And the law does not

26

require that we do so. Instead, courts have developed the discovery rule, providing that the statute of limitations in fraud cases should typically begin to run only when the injury is or reasonably could have been discovered.

*Gabelli v. S.E.C.*, 133 S. Ct. 1216, 1222 (2013).

61.     This Court has borrowed the concepts of the discovery rule in other litigation contexts in deciding whether a claimant should be charged with knowledge of their claim prior to the bar date. *See In re W.R. Grace & Co.*, 281 B.R. 852, 861 (Bankr. D. Del. 2002) ("*Chemetron* deal with whether the claimants should have been charged with knowledge of their claim such that the claims bar date set by the bankruptcy court would bar their claims. Application of a state-law discovery rule borrowed from the state statute of limitations jurisprudence makes perfect sense in that context.").

62.     Unlike another ruling by this Court on excusable neglect in the Nortel case, SNMP Research did not have "all the necessary information to discover any potential claims they had against the U.S. Debtors well before the Bar Date." *Cf. In re Nortel Networks, Inc.*, 531 B.R. 53, 66 (Bankr. D. Del. 2015) (holding that creditors did not show excusable neglect where their reasons for not timely filing proofs of claim, including they were confused by the multi-jurisdiction nature of the proceedings, applied to many potential claimants and could open the floodgates to similar claims, they had all the information necessary to discover their claims prior to the bar date, and they waited six months to seek approval to file late claims after they claim to have "discovered" their claims). Instead, SNMP Research indisputably lacked the facts regarding Nortel's unauthorized use of its Software until *after* the Bar Date. SNMP Research made several diligent attempts to obtain information from the U.S. Debtors during the business line sales. It was not until recently that SNMP Research received the necessary financial information to calculate its pre-petition damages with precision through its damages expert in the

Adversary Proceeding.  As set forth in the Case Declaration, SNMP Research had to uncover Nortel's wrongful conduct by obtaining information from the buyers of Nortel's business lines. The U.S. Debtors should not be rewarded by failing to disclose unauthorized uses of the Software until after the Bar Date.  This would violate the discovery rule and all notions of equity. Accordingly, any delay in filing any of the prior amendments (or the Proposed Claims) cannot be placed on the shoulders of SNMPRI.  Factor 3 of the *Pioneer* test, therefore, also favors SNMPRI.

63.    *Fourth*, there should be no question that SNMPRI is acting in good faith.  In evaluating SNMPRI's good faith, the Court should consider the history of this case.  SNMPRI filed objections to the U.S. Debtors' business line sale motions, asking this Court for protection by stopping the U.S. Debtors from transferring or disclosing its valuable source code to buyers without its consent.  As this Court previously held on partial summary judgment, the Court did not authorize the Debtors to sell or otherwise transfer or disclose the Software to buyers.  The U.S. Debtors did it anyway, committing copyright infringement in the process.[18]

64.    During these sales, SNMPRI investigated the U.S. Debtors' unauthorized transfer or disclosure of its Software to business line buyers.  During that investigation, SNMPRI discovered that, not only did Nortel improperly transfer or disclose the Software to business line buyers, Nortel also was using the Software outside the scope of the Nortel License prior to the sales (including during the pre-petition period, giving rise to additional pre-petition claims that were not known until after the Bar Date).  When SNMPRI learned of specific unlicensed products, SNMPRI routinely amended its proofs of claim.  At present, SNMPRI is bringing this Motion for the purpose of disclosing the extent of its claims prior to confirmation proceedings,

---

[18] Such conduct also constitutes violation of trade secret laws and breach of contract.

28

on the heels of its damages report being finalized.  There is no basis to suggest that SNMPRI is acting in a nefarious way in attempting to amend its claims to reflect its true estimated damages. In the absence of evidence of bad faith, factor 4 of *Pioneer* should be found to weigh in favor of SNMPRI.  *See In re Garden Ridge Corp.*, 348 B.R. at 647 (holding that good faith factor weighed in favor of creditor where "[t]he record is void of anything that suggests [the creditor] did not act in good faith."); *see also In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 737 (5th Cir. 1995) ("[T]he record is devoid of anything to suggest that the parties acted in any way other than in good faith."); *Tate v. Rest. Techs., Inc.*, 2011 WL 3609417, at * 6 (D. Minn. July 25, 2011) ("[T]here has been no suggestion that the [proof of claim] filing delay and even the Trust bringing its motion [for finding of excusable neglect] are acts of bad faith.").

65.      For these reasons, if the Court finds that the Previously Amended Claims or the Proposed Claims constitute new claims that do not relate back to the Original Claims, the Court should allow them as late-filed new claims under *Pioneer* and its progeny.

## II.     SNMPR Should be Permitted to File the Proposed Claims.

### A.     *It is Important for SNMPR's Claims to be Added.*

66.      As discussed in detail in the sections above, the Pre-Petition Use Claims subject to SNMPRI's proofs of claim involve claims for breach of contract, copyright infringement and trade secret misappropriation.  SNMPRI is certainly permitted to pursue claims for breach of contract in its own name, as a party to the Nortel License, including any trade secret claims resulting from Nortel's breach of contract.  *See UD Tech. Corp. v. Phenomenex, Inc.*, 2007 WL 28295, at *8 (D. Del. Jan. 4, 2007) ("Where the duty to keep a divulged trade secret arises from a contract, it follows that only those parties to the contract have standing to pursue a claim of trade secret misappropriation based on a breach of that contract.").  This result is no different even as it relates to trade secrets owned by third parties such as SNMPR.  *See DTM Research, LLC v.*

29

*AT&T Corp.*, 245 F.3d 327, 330-33 (4th Cir. 2001) (holding "fee simple ownership is not an element of statutory misappropriation claims under the Maryland Trade Secrets Act, the language of which mirrors Delaware's act and the Uniform Trade Secret Act."); *Advanced Fluid Sys. v. Huber*, 28 F. Supp. 306, 318 (M.D. Pa. 2014) ("Neither the commentary to the uniform law nor PUTSA's legislative history include any specific reference to legal ownership of the trade secrets as a prerequisite to a cause of action."). Moreover, this Circuit has held that a breach of a confidentiality clause in a contract claim is not preempted by the Copyright Act because of that additional required element. *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 218-19 (3d Cir. 2002); *Synygy, Inc. v. ZS Assocs.*, No. 07-3536, 2015 U.S. Dist. LEXIS 26006, at *121 (E.D. Pa. Feb. 11, 2015). The same is true for SNMP Research's related but independent claim under the Delaware Uniform Trade Secrets Act ("DUSTA"). *Dun & Bradstreet Software Servs.*, 307 F.3d at 218.

67.    There is also no debate that the DUTSA would allow SNMPRI to recover actual damages and profits from the U.S. Debtors, similar to Section 504(b) of the Copyright Act, without having to enforce SNMPR's copyright infringement claims. *See Agilent Tech., Inc. v. Kirkland*, 2010 WL 610725, at *30-31 (Del. Ch. Feb. 18, 2010) (holding that plaintiff was entitled to defendant's profits under Section 2003(a) of the DUTSA).

68.    SNMPRI can also certainly pursue its own copyright infringement claims, as the owner of copyrights in compilations of the Software. Importantly, however, SNMPRI's copyrights are distinct from those of SNMPR, and thus it is possible that SNMPRI's pre-petition copyright claims could fail and SNMPR's pre-petition copyright claims could succeed. The possibility that SNMPR's pre-petition copyright claims could succeed, while SNMPRI's pre-petition copyright claims may not, was recently confirmed when SNMP Research's technical

experts reviewed the source code shipped by Nortel prior to the Petition Date. Those reports demonstrate that the copyrighted material owned by SNMPR was what Nortel shipped.

69.    While SNMPRI can pursue its own copyright claims, there is less certainty that SNMPRI can enforce SNMPR's distinct pre-petition copyright infringement claims. Generally, the owner or exclusive licensee of a copyright has standing to sue to enforce that copyright, and that the right to sue for copyright infringement can only be assigned to an exclusive licensee. *See, e.g., Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982), *superseded on other grounds by* Fed. R. Civ. P. 52(a) (1995) ("The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted <u>exclusive licenses</u> by owners of copyrights.) (citing 17 U.S.C. § 501(b); 3 M. Nimmer, Nimmer on Copyright § 12.02, at 12-25 (1982)) (emphasis added). Ownership can be transferred in writing or by operation of law. 17 U.S.C. § 204(a).[19]

70.    Because the DUTSA and Copyright Act have separate elements of proof and SNMPR's copyrights are distinct from SNMPRI's copyright claims, however, it is important for SNMPR to be added to ensure that SNMPR's independent and distinct pre-petition copyright infringement claims can be pursued.

**B.    *If the Proposed Claims Relate Back to the Original Claims under Federal Rule 15(c)(1)(B), then SNMPR Should Be Added as a Claimant in the Proposed Claims under Federal Rule 15(c)(1)(C).***

71.    In addition to allowing SNMPRI to file the Proposed Claims as proper amended claims that relate back to the Original Claims, SNMP Research requests that SNMPR be added as a claimant in those Proposed Claims.

---

[19] The phrase "operation of law" is not defined in the Copyright Act. In *Brooks v. Bates*, the court held that the phrase means transfers by bequest, bankruptcy, mortgage foreclosures, and the like. 781 F. Supp. 202, 205 (S.D.N.Y. 1991) (citing MELVILLE B. NIMMER & DAVID NIMMER, 3 NIMMER ON COPYRIGHT § 10.03[A] at 10-42 (1991)).

31

72.     The guidepost for this request is Federal Rule 15(c)(1)(C) (formerly Rule 15(c)(3)). That rule provides that an amendment to a pleading relates back when:

> [T]he amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending in the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

73.     The Third Circuit has recognized that Federal Rule 15(c)(1)(C) does not apply only to a plaintiff's attempt to add new defendants, it also permits relation-back in the circumstance where a new plaintiff is added to a suit. *See Nelson v. Cnty. of Allegheny*, 60 F.3d 1010, 1014 (3d Cir. 1995) (holding that a plaintiff can utilize Federal Rule 15(c)(1)(C)'s relation-back provisions).  When attempting to add a new plaintiff under Federal Rule 15(c)(1)(C) after the deadline for commencing an action, the Third Circuit has adopted a two-part test.  The proposed plaintiff must show that the defendants: "(A) received such notice that they will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of a proper party, the action would have been brought with the original claims."  60 F.3d at 1014.

74.     In applying this test to the facts before it, the Third Circuit in *Nelson* found that the first prong was satisfied because the proposed new plaintiffs "alleged injury by the same conduct described in the original pleading, [and thus] the evidence relevant to a defense against these new claims would be the same as the evidence relevant to a defense against the original claims." *Id.* at 1015.  The court found, however, that unlike this case, the second prong was not

met because there was no demonstration that the failure of the proposed plaintiffs to be added to the suit was a mistake. *Id.*[20]

75.    In a subsequent decision, the Third Circuit, in a case involving the addition of a defendant under the rule, rejected the view that mistake under Rule 15(c)(1)(C) should be limited to a misnomer and found that mistake must have broader application. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 209 (3d Cir. 2006) (holding that mistakes in knowledge of liability and identity are both covered by Federal Rule 15(c)(1)(C)).    The Supreme Court subsequently also adopted a broad view of "mistake" under the rule. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 539 (2010) (holding that a mistake under Federal Rule 15(c)(1)(C) as to a party's role could be made, even if the plaintiff had full knowledge of the identity of the party).    In that same case, the Supreme Court also held that the timeliness of a Rule 15(c)(1)(C) motion has no bearing on whether the rule has been satisfied, thereby reversing the lower court's denial of the motion on timeliness grounds. *See id.* at 541.

76.    When related plaintiffs are involved, like we have here, numerous courts have allowed the addition or substitution of plaintiffs under Federal Rule 15(c)(1)(C) (or its predecessor, 15(c)(3)), "when the new and old parties have such an identity of interest that it can be assumed, or proved, that relation back is not prejudicial." *Staren v. Am. Nat. Bank & Trust Co. of Chicago*, 529 F.2d 1257, 1263-65 (7th Cir. 1976) (addition was warranted because (i) individual plaintiffs wholly owned the corporation and therefore had complete identity of interest, (ii) the securities central to the dispute were originally held in individual plaintiffs'

---

[20] The District Court held that two plaintiffs could be added to assert Title VII claims because the class in the class action brought prior to the limitations deadline was decertified after the bar date.  This led the court to conclude that the failure of the prospective plaintiffs to be added to the initial suit was a mistake and satisfied the other elements of a plaintiff being added to a suit after the limitations period under Federal Rule 15(c)(1)(C). *See Monahan v. City of Wilmington*, 2004 WL 758342, at *4 (D. Del. Jan. 30, 2004).

53651/0001-13833330v3

accounts and (iii) subsequent transfer of securities to corporation's account may have been improperly committed by defendants). *See also Mo., K. & T. Ry. Co. v. Wulf*, 226 U.S. 570, 576-77 (1913) (allowing amendment of complaint when mother of deceased had mistakenly sued in her individual capacity but "under the Federal statute the plaintiff could not, although sole beneficiary, maintain the action except as personal representative" because "[t]he change was in form rather than in substance"); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 19-20 (2d Cir. 1997) (reversing district court and allowing addition of individual shareholders as plaintiffs when original plaintiff, a corporation, had asserted identical claims as assignee of individual shareholders and "[t]here plainly was a mistake as to the legal effectiveness of the documents to permit AMI to sue as assignee"); *Allied Int'l, Inc. v. Int'l Longshoremen's Ass'n, AFL-CIO*, 814 F.2d 32, 35-36 (1st Cir. 1987) (identity of interest warranted "invocation of the prophylaxis of Rule 15(c)" when new plaintiff had acquired business and claims of original plaintiff and "[t]he revision was nominal in the most literal sense of the word... the only change was to delete the references to [the original] plaintiff and to insert in their place references to [the new plaintiff]"); *Raynor Bros. v. Am. Cyanimid Co.*, 695 F.2d 382, 385 (9th Cir. 1982) (upholding substitution of partnership for corporation because three brothers wholly owned both entities and mistakenly brought action on behalf of operating corporation when partnership was lessee of land on which damaged crops were planted); *Metro. Paving Co. v. Int'l Union of Operating Eng'rs*, 439 F.2d 300, 306 (10th Cir. 1971) (upholding substitution of three individual corporations as plaintiffs when original plaintiff was joint venture of the three corporations and "it was clear from the outset that the three corporations were the real parties in interest in this matter"); *Brauer v. Republic Steel Corp.*, 460 F.2d 801, 804-805 (10th Cir. 1972) (addition of plaintiffs allowed when original plaintiff was operator of oil leases

34

damaged by waterflood project and added plaintiffs were owners of the leases damaged; "[a] close identity of interest existed" and there was "no showing that [the defendant] was either surprised or prejudiced by the relation back"); *Crowder v. Gordons Transports, Inc.*, 387 F.2d 413, 418-19 (8th Cir. 1967) (allowing amendment and relation back when wife of deceased had mistakenly asserted children's claims for wrongful death of their father as administratrix rather than as "next friend" in original complaint).

77.     Under the applicable case law, there should be no doubt that the two-pronged test established in *Nelson* is met here. Regarding the first prong, it is obvious that the U.S. Debtors will not be prejudiced in maintaining a defense on the merits. The proofs of claim filed by SNMPRI assert claims for Nortel's pre-petition unauthorized use of the Software owned at least in part by SNMPR (i.e., the Pre-Petition Use Claims), and seeks the same type of relief and involves the same Software. The Adversary Proceeding, in part, seeks damages for SNMPRI *and* SNMPR against the U.S. Debtors relating to the *same* continued post-petition, pre-sale unauthorized use of the same Software (i.e., the Post-Petition, Pre-Sale Use Claims). Further, discovery and the expert reports in the Adversary Proceeding all deal with the same Software.

78.     The only material difference between the Pre-Petition Use Claims and the Post-Petition, Pre-Sale Use Claims (together, the "Use Claims") is the time period during which the claims arose. Accordingly, the Use Claims, which are being brought by entities with substantial identities of interest, will be adjudicated through the Adversary Proceeding regardless of the outcome of this Motion. In addition, SNMP Research will only be entitled to a single recovery of profits from the Pre-Petition Use Claims under the DUTSA or Copyright Act. In other words, allowing SNMPR to be added to preserve its copyright claims will not result in a double recovery of profits. The first prong of the *Nelson* test therefore is satisfied.

79.    As to the second prong of *Nelson*, the Court should also find that the U.S. Debtors

knew or should have known that, even though SNMPR did not file stand-alone pre-petition

proofs of claim to date, SNMPR had a claim for copyright infringement and violation of

applicable trade secret laws, for several reasons.

80.    *First*, pleadings filed by the U.S. Debtors confirm that the U.S. Debtors fully

understood that there is no difference between the substance of the Pre-Petition Use Claims

asserted by SNMPRI and the Post-Petition Use Claims asserted by SNMPRI *and* SNMPR. *See*

U.S. Debtors' opposition to motion to withdraw the reference [Adv. D.I. 184] at 8 ("Judge Gross

has overseen the U.S. Debtors' bankruptcy cases for more than six years, is charged with

adjudication of the proof of claim filed by [SNMP Research] that substantially overlaps with

several claims asserted against the U.S. Debtors in this action ...."); *Id.* at 11 ("[SNMP

Research's] core claims against the U.S. Debtors for the alleged post-petition use of [SNMP

Research's] software are largely duplicative of its pre-petition proof of claim, which is not part

of this adversary proceeding and which remains unresolved."); *see also* U.S. Debtors' appellee

brief regarding EMEA Debtors' appeal, Case No. 1:15-cv-879-LPS [D.I. 25] ("The [Adversary]

Complaint asserted claims for two distinct alleged actions. *First*, similar to the claims in the

SNMP Research Proof of Claim, the Complaint alleges infringement based on the U.S. Debtors'

and Canadian Debtors' use of SNMP Research's software in Nortel products without payment of

royalties to SNMP Research.").

81.    *Second*, not only did the U.S. Debtors recognize that the Pre-Petition Use Claims

and Post-Petition, Pre-Sale Use Claims were substantially similar, they discussed, in the

pleadings cited above, the Pre-Petition Use Claims as if they were filed by SNMPRI *and*

SNMPR.  In other words, the U.S. Debtors recognized that the Pre-Petition Use Claims were

36

being asserted by both entities. In these circumstances, there can be no serious debate that the U.S. Debtors not only reasonably should have known, but in fact *actually* knew, that SNMPR would have been added to the pre-petition claims but for a mistake on the part of SNMPR.

82.     *Third*, as demonstrated by the Case Declaration, the failure to add SNMPR to the claims was a mistake. At the time unlicensed uses of the Software were first being discovered, Dr. Case believed that SNMPRI could enforce its own and SNMPR's rights under the copyright law. SNMP Research was not experienced in prosecuting copyright infringement or trade secret suits; in fact, neither had ever been a plaintiff or defendant in any lawsuit before the filing of the Adversary Proceeding.

83.     While SNMPR may not be able to establish grounds for excusable neglect at this stage to file new claims for SNMPRI, cause still exists to add SNMPR as a claimant in the proposed claims under Federal Rule 15(c)(1)(C). As the Supreme Court has made clear, a Federal Rule 15(c)(1)(C) motion cannot be denied on timeliness grounds. *Krupski*, 560 U.S. at 541.[21] Instead, the Court must analyze the Third Circuit's *Nelson* factors and determine whether the party seeking to be added made a mistake at the time the claim could have been timely asserted and the potential prejudice to the U.S. Debtors. Because the *Nelson* factors are clearly met here, the Court should permit SNMPR to be added to the properly amended Proposed Claims under Rule 15(c)(1)(C).

---

[21] To the extent timing is any consideration, however, the Court should consider the fact that the U.S. Debtors have never objected to the Previously Amended Claims or ever challenged SNMPRI's standing. SNMP Research anticipated that these issues would be brought to light when the U.S. Debtors objected to the Previously Amended Claims, but that has not occurred to date. The Court should also consider that the Adversary Proceeding was stayed for several years, and that the addition of SNMPR as a claimant in the Proposed Claims will have zero impact on the issues to be tried, since SNMPR's copyrights are at issue in the Adversary Proceeding, which asserts materially identical Use Claims during the post-petition period.

**C.**    *If the Proposed Claims are New Claims, then SNMPR Should be Joined as a Real Party in Interest under Federal Rule 17(a)(3).*

84.    If the Court were to find that the Proposed Claims do not relate back to the Original Claims under Rule 15(c)(1)(B), notwithstanding the compelling case that they do, but still permits SNMPRI to file new late claims under *Pioneer*, then SNMPR should be joined in the late-filed Proposed Claims under Federal Rule 17(a)(3). Federal Rule 17(a)(3), made applicable herein through Bankruptcy Rules 9014(c) and 7017, allows another claimholder to be joined with or substituted for another claimholder. That rule provides that:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3). The Advisory Committee Notes to the rule provide, in part, that the rule was "intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Fed. R. Civ. P. 17, Advisory Committee Note (1966).[22]

85.    The Third Circuit has noted that the substitution (and presumably also joinder) of a real party in interest, even after the statute of limitations has run, is not significant when the change is merely formal and does not alter the facts and issues on which the claim is based. *See Nelson v. Cnty. of Allegheny*, 60 F.3d at 1015 n.8 (citing *Staren*, 529 F.2d at 1263). The rule has also been recognized in bankruptcy to permit a claim holder to be substituted for an affiliate after the bar date. *See Batesta-Sanechez*, 2014 WL 308970, at *2-4 (Bankr. N.D. Ill. Jan. 27, 2014)

---

[22] While Federal Rule 17(a)(3) may require a mistake to be understandable based on the Advisory Committee Notes, as discussed in the section above, Federal Rule 15(c)(1)(C) only requires that a mistake be honest and is a more flexible and easy standard to satisfy on the issue of mistake. Regardless, as discussed below, the mistake was not only subjectively honest, it was also objectively understandable, and thus SNMPR satisfies both standards.

(recognizing that Rule 17(a)(3) can be utilized to substitute the proper claimant in the context of a claim objection, but ultimately finding that doing so was unnecessary because the proper claimant had a separate scheduled claim that was not listed as disputed, contingent or unliquidated).

86.     In the present case, the Court should join SNMPR as a claimant and real party in interest in connection with the Proposed Claims for multiple reasons. *First*, the U.S. Debtors have not objected to SNMPRI's standing to pursue claims on behalf of itself and SNMPR in the claims. Because Rule 17(a)(3) provides that a reasonable period of time must be given to ratify, substitute or join after an objection, the timing of a request to join, before any objection is made, is no impediment to the request.

87.     *Second*, the failure to add SNMPR as a creditor when the Original Claims were amended was understandable. As detailed in the Case Declaration and discussed in connection with the Rule 15(c)(1)(C) request above, when the First Amended NNI Claim was filed after Nortel's unauthorized use of the Software was first discovered, Dr. Cases believed that SNMPRI, as the party to the Nortel License, could enforce any wrongful use of the Software against Nortel on its own. This mistake was certainly understandable, given that SNMP Research had never filed a copyright infringement or trade secret suit before the present dispute with Nortel. Moreover, as set forth in the Case Declaration, Dr. Case was not aware of the terms of the SNMPR/SNMPRI License when the Original Claims were filed. As he stated in his Declaration, he does not recall whether any version of a license between SNMPRI and SNMPR was ever signed prior to late September 2011, long after the Bar Date. Under these circumstances, Dr. Case's mistake in failing to file separate pre-petition claims for SNMPR when the First Amended

39

NNI Claim was filed and Nortel's unlicensed use of the Software was first discovered was fully understandable.

88.     *Third*, joining SNMPR as a creditor in the Proposed Claims will not have any impact on the issues to be tried in this dispute.  SNMPR is a formal party in the Adversary Proceeding, and thus SNMPR's copyright infringement and trade secret claims which straddle the Petition Date are front and center in the Adversary Proceeding, which will be consolidated for purposes of trial and the hearing on the Proposed Claims, if this Motion is granted. Moreover, the same Software is at issue with respect to SNMPR's pre-petition and post-petition claims for copyright infringement and trade secret misappropriation.

## CONCLUSION

89.     Under these authorities, the U.S. Debtors cannot be permitted to avoid liability to SNMP Research for the U.S. Debtors' pre-petition wrongful conduct based on technical arguments attempting to prevent amendment of SNMP Research's proof of claims to reflect information the U.S. Debtors failed to disclose until well after the bar date.  One of the bedrocks of bankruptcy jurisprudence, applied in "passing on a wide range of problems arising out of the administration of bankrupt estates," is "that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." *Pepper v. Litton*, 308 U.S. 295, 304-05 (1939).  Permitting SNMP Research to amend its proof of claims is not only consistent with the rules and case law governing amendment of proofs of claims discussed above, it also is consistent with the fundamental principles of equity and fairness that govern all bankruptcy and other equitable proceedings.

WHEREFORE, SNMP Research respectfully requests that the Court enter an Order: (i) granting this Motion; (ii) allowing SNMPRI to file the Proposed Claims as amendments to the Original Claims and Previously Amended Claims, or alternatively, authorizing SNMPRI's filing

40

of the Previously Amended Claims and Proposed Claims, as applicable, as new claims filed after the Bar Date; and (iii) adding SNMPR as a claimant in the Proposed Claims under Federal Rule 15(c)(1)(C), or alternatively, joining SNMPR as a real party in interest in the Proposed Claims under Federal Rule 17(a)(3); and (iv) granting SNMP Research such other relief as the Court deems appropriate under the circumstances.

Dated: November 23, 2016

**OF COUNSEL**

Richard S. Busch, Esq.
**King & Ballow Law Offices**
315 Union Street, Suite 1100
Nashville, TN 37201
(615) 259-3456 (Phone)
(615) 726-5417 (Fax)
rbusch@kingballow.com

-and-

John L. Wood, Esq.
**Egerton, McAfee, Armistead & Davis, P.C.**
900 S. Gay Street
Knoxville, TN 37902
(865) 546-0500 (Phone)
(865) 525-5293 (Fax)
jwood@emlaw.com

**COLE SCHOTZ P.C.**

*/s/ Nicholas J. Brannick*
Norman L. Pernick (No. 2290)
Nicholas J. Brannick (No. 5721)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 651-2002 (Phone)
(302) 652-3117 (Fax)
npernick@coleschotz.com
nbrannick@coleschotz.com

-and-

G. David Dean, Esq.
300 E. Lombard Street, Suite 1450
Baltimore, MD 21202
(410) 230-0660 (Phone)
(410) 230-0667 (Fax)
ddean@coleschotz.com

*Counsel for Plaintiffs SNMP Research, Inc. and SNMP Research International, Inc.*

41