**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- x
:
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
: (Jointly Administered)
:
: Re: D.I. 17348, 17350, 17415, 17431
Debtors. :
: Hearing Date: December 1, 2016
---------------------------------------------------------- x

**REPLY OF THE *AD HOC* GROUP OF BONDHOLDERS TO THE NORTEL TRADE CLAIMS CONSORTIUM'S OBJECTION TO THE MOTION FOR ENTRY OF AN ORDER APPROVING THE DEBTORS' DISCLOSURE STATEMENT, VOTING PROCEDURES, AND CONFIRMATION PROCEDURES**

The *ad hoc* group of bondholders (the "Bondholder Group")[2] hereby replies (the "Reply") to the *Objection of the Nortel Trade Claims Consortium to Debtors' (i) Proposed Disclosure Statement for the First Amended Joint Chapter 11 Plan of Nortel Networks Inc. And Certain of its Affiliated Debtors and (ii) Related Solicitation Procedures* [D.I. 17415] (the "TCC Objection") and, in support thereof, respectfully submits as follows:[3]

---

[1]  The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

[2]  The Bondholder Group consists of entities ("Bondholders") that hold certain bonds ("Bonds") issued or guaranteed by Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL" and, together with NNC and certain of their subsidiaries, the "Canadian Debtors"), Nortel Networks Inc. ("NNI"), and Nortel Networks Capital Corporation ("NNCC" and, together with NNI and certain of its subsidiaries, the "Debtors").

[3]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the *Debtors' Motion for Entry of an Order (i) Approving Adequacy of Information Contained in Disclosure Statement,*

**PRELIMINARY STATEMENT**

1.      Although the entirety of the TCC Objection is unfounded, the Bondholder Group submits this Reply solely in response to the TCC's argument that the Disclosure Statement is deficient because it fails to "mention the present controversy regarding the allowance of the unreduced Bond Guarantee Claims against the U.S. estate."[4]  (TCC Objection at 2.)  Put simply, there is no "controversy" surrounding Bondholders' guarantee claims, which, consistent with over 80 years of binding Supreme Court precedent, were allowed by this Court in 2014, without objection by the TCC.  The TCC now seeks to infect the Disclosure Statement with misinformation about the procedural history of these cases and legal arguments that are plainly wrong.  If the goal of a disclosure statement is to provide voting creditors with "adequate information," the TCC's proposed disclosures concerning the Bondholders' guarantee claims—and the purported "controversy" surrounding those claims—fall well short of that mark.

2.      First, despite the TCC's breathless characterization of the "treatment of the Bond Guarantee Claims under a U.S. plan" as the "most important *remaining* issue in this case" (*id.* ¶ 42 (emphasis added)), the size of Bondholders' guarantee claims against the Debtors' estate was ***conclusively determined*** nearly two years ago.  On December 18, 2014, this Court held that Bondholders have allowed claims against NNI for principal and prepetition interest in the amount of approximately $4 billion (the "9019 Order").[5]  The TCC concedes as much (TCC

---

*(ii) Establishing Voting Record Date, (iii) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan, and (iv) Scheduling Confirmation Hearing Date and Establishing Notice and Objection Procedures* [D.I. 17350] (the "Motion").

[4]  On November 23, 2016, Liquidity Solutions, Inc. ("LSI") filed a joinder to the TCC Objection [D.I. 17431] (the "LSI Joinder").  To the extent LSI joins in the TCC's arguments concerning Bondholders' guarantee clams, the arguments set forth in this Reply apply equally to the LSI Joinder.

[5]  "9019 Order" refers to the Order Granting Debtors' Motion Pursuant to Bankruptcy Rule 9019 Approving Settlement Agreement By and Among Nortel Networks Inc., the Supporting Bondholders, and

Objection ¶ 17), but fails to mention that the 9019 Order was not contingent on future events, nor was it timely appealed by the TCC or any other party. The 9019 Order is, therefore, final and not subject to appeal. Any disclosure concerning Bondholders' guarantee claims that does not mention this critical fact would be, at best, misleading.

3. Second, any additional disclosure must also note that eliminating or limiting the Bondholders' guarantee claims, as the TCC has advocated, would directly conflict with the Supreme Court's decision in *Ivanhoe Building & Loan Association v. Orr*, 295 U.S. 243 (1935). In that case, the Supreme Court held that a creditor holding a contractual guarantee may, in the event of the obligor's insolvency, assert the full amount of its claim against both the primary obligor and the guarantor, subject only to the limitation that it receive no more than a 100 percent recovery. Under that principle, Bondholders in this case may assert the full amount of their claims against both the issuer (NNC or NNL), as primary obligor, and any and all guarantors, including NNI. Thus, to the extent the Disclosure Statement is amended, voting creditors are entitled to know that the TCC is asking this Court to discard decades-old principles of U.S. bankruptcy law.

4. In sum, the "controversy" to which the TCC refers is a contrivance unsupported by either the history of these cases or any discernible legal principle and, therefore, has no place in the Disclosure Statement. Nevertheless, to prevent any unnecessary delay in the confirmation process, the Bondholder Group will not oppose a disclosure that identifies the TCC's purported objections to the Bondholders' claims, as long as such disclosure also includes a comprehensive,

---

The Bank of New York Mellon With Respect to the NNI Post-Petition Interest Dispute and Related Issues [D.I. 14950].

and accurate, discussion of the deficiencies in those objections, including a description of the 9019 Order and *Ivanhoe*.[6]

## REPLY

### I. BONDHOLDERS' GUARANTEE CLAIMS HAVE BEEN ALLOWED BY THIS COURT

5.      In order to "provide a complete and accurate description of the issues regarding the allowance of the Bond Guarantee Claims against the U.S. estate" (TCC Objection ¶ 41), any additional disclosure concerning the TCC's objections must note that the 9019 Order conclusively ordered that Bondholders have "allowed claims for outstanding principal obligations and accrued prepetition interest obligations" against NNI in the amount of $3,934,521,442.  (9019 Order ¶ 5, Schedule A.)  This is not a controversial point; the TCC concedes as much, stating that "[p]ursuant to the PPI Settlement Agreement, NNI granted an allowed General Unsecured Claim to the Crossover Bonds in the aggregate amount of $3,934,521,442.00[.]"  (TCC Objection ¶ 17.)  Indeed, the TCC has previously (and correctly)

---

[6] In addition, the TCC urges the Court to, "at a minimum," amend the Disclosure Statement to "include a letter from the Consortium (the 'Consortium Letter') that sets forth the Consortium's objections to the SPSA and Plan and advises other similarly-situated U.S.-only Unsecured Creditors to vote against acceptance of the Plan." (TCC Objection ¶ 45.) As the case law cited by the TCC makes clear, it may be appropriate for a statutory committee to submit a such letter—indeed, 11 U.S.C. § 1103(c)(2) empowers statutory committees to "advise those represented by such committee of such committee's determinations as to any plan formulated." *See also Central Transport, Inc. v. Roberto* (*In re Tucker Freight Lines, Inc.*), 62 B.R. 213, 215 n.1 (Bankr. W.D. Mich 1986) (citing 11 U.S.C. § 1103(c) as the "reason that this Court has traditionally allowed the creditors' committees to include a letter to creditors in the disclosure statement and ballot packages."). But that rationale does not extend to individual creditors seeking to inject their self-interested views into the solicitation package provided to creditors, and the TCC cites no authority to the contrary. To the extent the Court nevertheless grants the TCC permission to submit a letter (which it should not), the Bondholder Group should be given the opportunity to submit a response letter, at least to the extent that the Consortium Letter addresses any issues relating to Bondholders' guarantee claims.

- 4 -

acknowledged that Bondholders' guarantee claims against NNI "were allowed by the Bankruptcy Court against the U.S. Debtors."[7]

6. In addition, voting creditors must also be made aware that the time for appealing the 9019 Order has long passed. "A bankruptcy court's approval of a settlement agreement [pursuant to Rule 9019] is considered a final order." *In re W.R. Grace & Co.*, 475 B.R. 34, 74 (D. Del. 2012), *aff'd* 729 F.3d 332 (3d Cir. 2013) (citing *In re Nutraquest, Inc.*, 434 F.3d 639, 643 (3d Cir.2006). "If not taken or preserved within the [14] day appeal period, an appeal from a final order of a bankruptcy court will fail." *In re Bradshaw*, 283 B.R. 814, 817 (B.A.P. 1st Cir. 2002).[8] The deadline for filing a notice of appeal of the 9019 Order, issued on December 18, 2014, was nearly two years ago.[9] The TCC therefore has no right to now challenge the 9019 Order.

7. The TCC also has no right to seek reconsideration of the 9019 Order. Although Bankruptcy Rule 9024 exempts motions "for the reconsideration of an order allowing or disallowing a claim against the estate entered *without a contest*" from the one-year limitation set

---

[7] Opening Brief of Appellant the Nortel Trade Claims Consortium in Support of Appeal from the Allocation Opinion, *Nortel Networks Inc. v. Ernst & Young Inc.*, 15-cv-00624 (LPS) (D. Del. Mar. 11, 2016) (D.I. 74) at 19; *see also id.* at 6 ("the Bankruptcy Court already had allowed $4.0 billion of claims asserted by the Crossover Bondholders that were issued by NNC and/or NNL but guaranteed by NNI[.]"); *id.* at 10 (referring to "the Bankruptcy Court's previous allowance of the Bond Guarantee Claims against the U.S. Debtors"); *id.* at 11 (referring to "the Bankruptcy Court's prior allowance of the Bond Guarantee Claims").

[8] *See generally* Fed. R. Bankr. P. 8002(a)(1) ("a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed."); *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1283 (2d Cir. 1990) (explaining why and how "[t]he standards for determining finality in bankruptcy differ from those applicable to ordinary civil litigation").

[9] Although the 9019 Order remains subject to a pending appeal filed by the Canadian Debtors, the Bondholders' allowed claims have not been challenged. The Canadian Debtors have challenged only the rate at which post-petition interest should accrue in respect of the Bondholders' claims. Accordingly, the size of the Bondholders' guarantee claims against NNI is now final. *See also Am. Civil Liberties Union v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) ("[u]nder the law-of-the-case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).

DOCS_DE:210971.1 61026/001

forth in Federal Rule of Civil Procedure 60(b), Fed. R. Bankr. P. 9024 (emphasis added), "when a proof of claim ***has in fact been litigated*** between parties to a bankruptcy proceeding, the litigants must seek reconsideration of the bankruptcy court's determination pursuant to the usual Rule 60 standards if they elect not to pursue a timely appeal of the original order allowing or disallowing the claim." *In re Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987) (emphasis added). Here, the 9019 Order was entered after months of intense litigation involving the Bondholder Group, the U.S. Debtors, and other parties. Having failed to either seek reconsideration of, or file a timely appeal of, the 9019 Order, voting creditors are entitled to know that the TCC can no longer challenge the Bondholders' allowed claims against the estate of NNI.

**II.  THE ALLOWANCE OF BONDHOLDERS' GUARANTEE CLAIMS IS REQUIRED BY SUPREME COURT PRECEDENT**

8. To the extent the Disclosure Statement is amended to note that a disallowance or reduction of Bondholders' guarantee claims "will significantly improve recoveries for U.S.-only Unsecured Creditors" (TCC Objection ¶ 44), the Disclosure Statement must also note that a "favorable outcome" is exceedingly unlikely in light of the Supreme Court's decision in *Ivanhoe Building & Loan Association v. Orr*, 295 U.S. 243 (1935).

9. Eighty years ago, the Supreme Court held in *Ivanhoe* that a creditor may assert the full amount of its claim against both a primary obligor and a guarantor. *See generally Nuveen Mun. Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283, 295 (3d Cir. 2012) (recognizing that *Ivanhoe* "provides that a creditor may file a proof of claim for the total amount it is owed by a debtor even if it has received or may recover all or a portion of that amount from a non-debtor."). In the context of Nortel's insolvency proceedings, this means that, irrespective of this Court's prior orders, Bondholders have the unequivocal right to assert the full amount of their primary claims against the estates of all Nortel Bond obligors and the full amount of their

- 6 -

DOCS_DE:210971.1 61026/001

guarantee claims against the estates of all Nortel Bond guarantors.  Thus, to be complete and accurate, any amendment to the Disclosure Statement must state that to the extent this results in Bondholders "absorbing a disproportionate share of the value in the U.S. estate" (TCC Objection ¶ 44), it is a function not of nefarious conduct but of Bondholders' contractual guarantee rights and fundamental principles of U.S. bankruptcy law.

## CONCLUSION

For the reasons set forth herein, the Bondholder Group respectfully requests that the Court:  (a) grant the Motion; and (b) grant such other and further relief as the Court deems appropriate.

Dated:  November 28, 2016
       Wilmington, Delaware

    **PACHULSKI STANG ZIEHL & JONES LLP**

    /s/ *Peter J. Keane*
    Laura Davis Jones (No. 2436)
    Peter J. Keane (No. 5503)
    919 N. Market Street, 17th Floor
    PO Box 8705
    Wilmington, Delaware 19899-8705 (Courier 19801)
    Telephone:  (302) 652-4100
    Facsimile:  (302) 652-4400

    -and-

    **MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP**
    Dennis F. Dunne
    Andrew M. Leblanc
    Atara Miller
    28 Liberty Street
    New York, New York 10005-1413
    Telephone:  (212) 530-5000
    Facsimile:  (212) 530-5219

    -and-

    Thomas R. Kreller
    2029 Century Park East, 33rd Floor
    Los Angeles, California 90067
    Telephone: (213) 892-4463
    Facsimile: (213) 629-5063

    ***Attorneys for Ad Hoc Group of Bondholders***