**EXHIBIT A – SUMMARY OF OBJECTIONS TO DISCLOSURE STATEMENT**[1]

**Part I – Objections to Disclosures**

| Objecting Party | Objection[2] | Debtors' Response |
|---|---|---|
| **Nortel Trade Claims Consortium**<br><br>(the "NTCC Objection") [D.I. 17415] | The Disclosure Statement fails to disclose that the Nortel Trade Claims Consortium (the "NTCC") does not support the SPSA.<br><br>NTCC Obj. ¶¶ 28-34.<br><br>The Disclosure Statement ignores the NTCC's appeal of the Allocation Decision, currently pending before the Third Circuit.<br><br>NTCC Obj. ¶¶ 35-40.<br><br>The Disclosure Statement fails to provide any meaningful information regarding the Plan's "generous" treatment of NNCC Bondholders.<br><br>NTCC Obj. ¶¶ 63-65.<br><br>The Disclosure Statement omits the "controversy" regarding the "Bond Guarantee Claims" (Crossover Bonds Claims).<br><br>NTCC Obj. ¶¶ 41-44. | ▪ Although the Debtors believe the Disclosure Statement provides adequate information, the Debtors will add the following language to the Disclosure Statement to address these objections from the NTCC:<br><br>In its appellate submission, the NTCC – which was not a party to the Allocation Trial – argued that the Allocation Decision constitutes a *de facto* substantive consolidation of the Nortel Debtors around the world, and that therefore allowing the Crossover Bonds Claims in full against the Debtors under a U.S. chapter 11 plan would give the Bondholders a disproportionate share of the value in the Debtors' estate and, notwithstanding the Ivanhoe Bldg. & Loan Ass'n v. Orr, 295 U.S. 243 (1935) precedent, the Crossover Bonds Claims should not be given *pari passu* distributions under a Chapter 11 Plan. The PBGC – also not a party to the Allocation Trial – argued that the "modified pro rata" allocation adopted by the Bankruptcy Court improperly treated the PBGC's joint and several claims against the various Debtors and detrimentally affected or invalidated its lien against certain of the Sale Proceeds. The NTCC and PBGC are not parties to the SPSA and in filings with the Bankruptcy Court have indicated they do not support the Plan or the SPSA and intend to object to the confirmation of the Plan. The NTCC also has indicated its intention to continue to vigorously pursue its appeal of the Allocation Decision, to challenge the treatment of Bondholder claims under the Plan and to seek to have the Debtors escrow funds sufficient to pay the NTCC an enhanced recovery if the NTCC successfully litigated its pending appeal and such litigation were to result in higher recoveries to it under a plan of reorganization later approved by the Court.<br><br>Disclosure Statement § III.H.2.<br><br>▪ The Debtors further propose to add the following additional language to make clear that the NTCC does not support the SPSA or the Plan. |

---

[1] Additions to the Disclosure Statement are marked in bold and double-underlined; deletions are marked with strikethroughs.

[2] This Exhibit summarizes and necessarily paraphrases the Objectors' Objections to the Disclosure Statement, and any summary of or conflict between this Exhibit and the Objections are subject to the text of the actual Objections filed by these entities in their entirety. This summary is being provided for the convenience of the Court and all Objectors, and is without prejudice to the Debtors, who reserve all of their rights and defenses with respect to all Objections and issues related to these Chapter 11 Cases.

| | | |
|---|---|---|
| | | ■ An *ad hoc* group of creditors holding trade (supplier) and employee severance and pension claims (the "Nortel Trade Claims Consortium" or the "NTCC") also has appeared in the Chapter 11 Cases.  The NTCC has informed the Debtors and the Court that it does not support the SPSA or the Plan.<br><br>Disclosure Statement, p. 2. |
| | The Disclosure Statement should be amended to include a letter from the NTCC voicing its objection to the SPSA.<br><br>NTCC Obj. ¶¶ 45-46. | ■ It is not necessary or appropriate to include a letter from the NTCC in the Debtors' solicitation materials, given that the NTCC is not an official committee and additions are proposed to the Disclosure Statement that would adequately disclose its positions and arguments with respect to the confirmation of the Plan. |
| | The Disclosure Statement cannot be approved because it attempts to short-circuit the mandatory settlement-approval requirements of Bankruptcy Rule 9019.<br><br>NTCC Obj. ¶¶ 47-62. | ■ The Plan provides that settlements under the Plan (including the SPSA) are proposed to be approved under Rule 9019 and that the Plan itself shall serve as a motion by the Debtors seeking an order pursuant to Bankruptcy Rule 9019 approving the SPSA.<br><br>■ The Debtors also will amend section IV.N.5 of the Disclosure Statement to state the following:<br><br>> ~~The Plan provides that the Debtors, at their discretion, may seek approval of the SPSA as to any Debtor pursuant to Bankruptcy Rule 9019.~~<br>><br>> In the event that the Plan is not confirmed for any individual Debtor, the Plan shall be treated at the Confirmation Hearing as a motion seeking approval of the SPSA pursuant to Bankruptcy Rule 9019 as to any such individual Debtor that does not confirm a Plan.  The Debtors reserve their right that, if and after such a Debtor's entry into the SPSA is approved, any such individual Debtor may dismiss or convert its chapter 11 case, as necessary to effectuate the SPSA and the settlement contemplated therein or to wind down.  The Debtors shall coordinate with the SPSA Parties to make any required amendments or seek any required waivers to or under the SPSA in order to implement any such actions, subject to the SPSA Parties' rights under the SPSA.<br><br>Disclosure Statement § IV.N.5. |
| | The solicitation procedures attempt to circumvent the Bankruptcy Code's numerosity requirement by only giving claims traders one vote for claims acquired.<br><br>NTCC Obj. ¶¶ 66-67. | ■ The balloting procedures contain a provision that is standard and frequently approved in Delaware, and that is not intended to limit claims traders to only one vote for their acquired claims. |

2

| | | |
|---|---|---|
| **The Pension Benefit Guaranty Corporation** (the "PBGC Objection") [D.I. 17416] | The Disclosure Statement fails to provide adequate information with respect to the substantive consolidation of NNI and NNCC. PBGC Obj. ¶ 17-18. The Disclosure Statement should detail the risks of seeking substantive consolidation. PBGC Obj. ¶ 23-24. | <ul><li>The current Disclosure Statement contains adequate information; however, the Debtors propose to add the following language to the Disclosure Statement:</li></ul> **k.     Benefit of the SPSA to Creditors** The various terms of the SPSA, including the allocation of the Sale Proceeds both between the Canadian Debtors, the EMEA Debtors, NNSA and the Debtors, and among the Debtors; the Allowance of certain intercompany claims and other Claims against the Debtors; the Substantive Consolidation of NNI and NNCC, the consolidation of the Canadian Debtors, and the non-consolidation of the other Debtors; the provisions regarding Crossover Claims and the *pari passu* treatment of creditors; and the other terms contained therein constitute an integrated settlement among the Debtors, their worldwide affiliates and the other creditors that are signatories to the SPSA.  Certain creditors and groups, including the PBGC and NTCC, have indicated their intention to object to the confirmation of the Plan including based on provisions of the Plan that incorporate the SPSA terms.  However, the Debtors believe that, while the SPSA allocates less Sale Proceeds to the Debtors than they sought in the Allocation Trial, the SPSA settlement is beneficial to the Debtors and their creditors and the Plan is in the best interests of the Debtors' creditors because, among other reasons: (1) absent a settlement the Debtors would be required to continue litigation of the Allocation Dispute and there is no assurance that a better outcome could be obtained for the Debtors in light of the Court's decision and the current status of the U.S. and Canadian appeals; (2) if the Allocation Decision is affirmed on appeal, it is expected that further litigation would be necessary to determine the Debtors' ultimate allocation of Sale Proceeds and based on the current ruling, and the expected costs to continued litigation, it is expected that the final allocation to the Debtors under such a scenario would provide the Debtors with less Sale Proceeds than is contemplated under the SPSA and Plan, (3) in the absence of the SPSA settlement, the Debtors would be forced to resume and commence further time-consuming and costly litigation regarding the resolution of numerous other intercompany claims settled by the SPSA, without any guarantee of success and with an increased likelihood that the amounts available for recovery by creditors of all Debtors would be reduced, as well as potential litigation regarding the terms of the Canadian Debtors' CCAA plan and a chapter 11 plan for each of the Debtors, (4) the Debtors would continue to incur significant administrative and professional costs during the pendency of their cases, which would reduce the amount available for recovery by Creditors, and (5) such further litigation and disputes would result in additional delays in the Debtors' ability to make distributions to their creditors.  The SPSA and the Plan reduce or eliminate significant uncertainties regarding the Debtors' respective assets, claims and the expected |

3

| | | |
|---|---|---|
| | | recoveries for their creditors, and avoid the incurrence of the substantial costs that otherwise likely would be required to resolve these issues. <br><br> Disclosure Statement § III.H.3.k. <br><br> ▪ The language above adequately discloses the role substantive consolidation plays in the global integrated settlement, and satisfies the "adequate information" standard. |
| | The Disclosure Statement should set forth the Debtors' estimate of the effect of substantive consolidation on the PBGC Claims and the impact (positive or negative) on the claims of any other creditors, including the NNCC Bonds Claim. <br><br> PBGC Obj. ¶ 17-18. | ▪ The Disclosure Statement contains adequate information; however, the Debtors propose to include the above language regarding the SPSA settlement terms and the expected effect of Plan approval or no Plan approval on their creditors. The Debtors also note that the Budget and Recovery Analysis attached as Appendix C to the Disclosure Statement includes a Summary Recovery Table that sets forth projected recoveries for the PBGC under the Plan. The Debtors believe this disclosure provides creditors (including the PBGC) with adequate information regarding the Plan. |
| | The Disclosure Statement should provide the rationale for why substantive consolidation is being sought for NNI and NNCC only. <br><br> PBGC Obj. ¶ 21-22. | ▪ The Disclosure Statement contains adequate information; however, Debtors propose to add the following language to the Disclosure Statement: <br><br> The Debtors believe that the substantive consolidation of NNI and NNCC, an integrated provision of the SPSA, is in the best interests of NNI and NNCC and their creditors. Notably, prior to the Petition Date, NNCC was a wholly owned subsidiary of NNI formed solely for the purpose of raising financing for Nortel. The officers and directors of NNCC substantially overlapped with those of NNI and NNCC never had its own employees or its own separate operations other than its role as a source of financing through its issuance of the NNCC Bonds and NNCC 2006 Notes. NNCC also did not have its own assets, other than its right to receive payments from NNI. Moreover, prior to the Petition Date, NNI and NNCC (and other subsidiaries) also were accounted for in NNC's financial statements as "consolidated subsidiaries." Accordingly, as the Debtors will demonstrate at the Confirmation Hearing, for these and other reasons, the substantive consolidation of NNI and NNCC is appropriate under applicable law and in the best interests of their creditors. <br><br> Disclosure Statement § IV.B. |
| | | |
| **SNMP Research International, Inc. and SNMP Research, Inc.** | The "low end" recovery estimates included in the Disclosure Statement should be calculated with the assumption that SNMP Research's claims are allowed in full. | ▪ The Debtors disagree that such disclosure is necessary or appropriate, but propose to include additional information in the Budget and Recovery Analysis located at Appendix C to the Disclosure Statement to include an additional scenario in which a claim of $47.12 million is allowed as an administrative claim against NNI and an $81.08 million general unsecured |

4

| | | |
|---|---|---|
| (the "SNMP Research Objection") [D.I. 17417] | SNMP Research Obj., pp. 20-21. | claim is included as a claim against each of the Debtors against who SNMPRI has filed a proof of claim, without prejudice to the Debtors' rights and defenses with respect to such claims. |
| | The Disclosure Statement should be updated now that the Debtors have SNMP Research's expert reports.<br><br>SNMP Research Obj., p. 21. | ▪ The Debtors disagree that such disclosure is necessary or appropriate but are willing to add the following disclosure regarding the expert reports, with the understanding that SNMPRI has marked the expert reports as confidential and therefore the Debtors will only include such amounts if SNMPRI consents to such disclosure:<br><br>On November 2, 2016, SNMP Research served the Debtors with an expert report that purports to set forth SNMP Research's claimed damages, and on November 23, 2016, SNMP Research moved the Court to allow SNMPRI's previously-filed proofs of claim to be amended and also to add SNMPR as a claimant [D.I. 17432]. In a declaration attached to that motion, SNMP Research contends that its prepetition damages against the Debtors total at least $81.08 million, including at least $33.12 million in actual damages, at least $39.27 million in lost profits and at least $8.69 million in interest. At present, only SNMPRI has filed proofs of claims. In its motion for leave to amend the proofs of claims, SNMP Research seeks to add SNMPR as a claimant and to significantly change the amount and nature of its previously-filed claims. SNMP Research's Objection claims that it holds post-petition administrative damages claims against each of the Debtors in the total amount of at least $47.12 million, including $___ million in actual damages, $___ million in lost profits and $___ million in interest. The Debtors assert that they have substantial defenses to these claims and intend to vigorously contest such claims, including SNMPRI's present attempt to amend its prepetition claims to add a new party and to increase the amount it is claiming to $81.08 million. |
| | The Disclosure Statement does not adequately describe the Court's ruling on the parties' respective motions for partial summary judgment.<br><br>SNMP Research Obj., pp. 21-22. | ▪ While the Debtors disagree with the objection to the description of the Court's ruling on the parties' respective motions for partial summary judgment, the Debtors are willing to modify the relevant paragraph as follows:<br><br>SNMP Research ~~moved~~filed a motion for partial summary judgment on October 14, 2015 ~~to~~, in which it sought an order determin~~ing~~e ~~whether~~that "the [Bankruptcy] Court did not authorized the U.S. Debtors to ~~sell or otherwise~~ transfer any intellectual property owned by SNMP Research~~'s property.~~, including but not limited to its Software, to any third party." The Debtors cross-moved for partial summary judgment on November 6, 2015 for a ruling that SNMP Research's "profits" claims for a portion of the purchase price paid in the Business Line Sales ~~proceeds~~ could not ~~survive~~be sustained because the sale agreements and sale orders provided only for the sale of the selling debtors' property and the purchase price was only attributable to the selling debtors' property ~~owned by Nortel~~. In response to SNMP Research's motion, the U.S. Debtors made clear that they were not contending that the sale orders operated to sell |

5

| | | |
|---|---|---|
| | | or transfer any assets belonging to SNMP Research or any other third party and they had not sought any such order. The Bankruptcy Court, on February 8, 2016, ruled ~~that the Bankruptcy~~with respect to SNMP Research's motion that "Debtors did not seek and the Court did not authorize the ~~Debtors to sell SNMP Research's~~sale or transfer of SNMP's intellectual property rights or its intellectual property, including its software, to purchasers in the Business Line Sales. It is equally clear, however, that the Sale Orders approved the sales and did not enjoin Nortel from selling or transferring the SNMP software." With respect to the Debtors' motion, the Bankruptcy Court stated that "[t]he purchase price which purchasers paid to Nortel pursuant to the Sale Orders was for assets which the Court authorized be sold in the Sale Orders" and that the "Sale Orders plainly establish that Nortel was not authorized to sell SNMP property to purchasers, and therefore Nortel should have received no funds for SNMP property. If that is the case, then the purchase price in each sale cannot be attributed to SNMP property, ~~but~~including the SNMP software." The Bankruptcy Court denied the Debtors' motion~~ and left the issue raised by that motion to be resolved at a later time~~., stating as follows: "[I]t will be SNMP's burden to prove that the transfer of SNMP software were sales, i.e., generated income. If SNMP can prove the sales occurred, then the burden will shift to Nortel to prove what portion of the money it received is attributable to the SNMP software. If SNMP cannot establish that Nortel profited from the transfers, then the burden will remain with SNMP to prove its actual damages." Following ~~a~~the Debtors' motion for clarification of the Bankruptcy Court's February 8, 2016 decision, the Bankruptcy Court indicated that resolution of the issue raised by the Debtors' motion would need to await the completion of discovery. The parties are currently engaged in discovery and ~~under the current case scheduling order,~~ expert reports ~~will be~~are being submitted ~~in November and December 2016~~. A trial date, if necessary, will be set in the future. The Debtors dispute and intend to continue vigorously defending SNMP Research's allegations. |
| | The Disclosure Statement does not adequately disclose the release, discharge and injunction provisions of the Plan.<br><br>SNMP Research Obj., p. 22. | ▪ The Plan, Disclosure Statement and other solicitation materials adequately disclose the substance of these provisions. |
| | | |
| **General Beneficial LP**<br><br>(the "General Beneficial Objection") [D.I. 17379] | The Disclosure Statement must be rejected because the Debtors failed to provide a claim number for shares of Nortel Networks Corporation common stock.<br><br>General Beneficial Obj., p. 1. | ▪ No changes are required to the Disclosure Statement given that the Debtors understand that General Beneficial is a holder of equity in their Canadian parent, Nortel Networks Corporation ("NNC"), and the Debtors do not have obligations to General Beneficial LP on account of any purported equity holdings in NNC. |

| | | |
|---|---|---|
| **United States Trustee (Informal Comments)** | There should be additional disclosure regarding the expected identity of the director(s) of the post-confirmation entities and the procedures for the oversight and removal of the Plan Administrator. | ▪ The Debtors will include the following disclosure regarding the expected identity of the directors and officers of Wind-Down NNI:<br><br>The Debtors anticipate that John J. Ray, III will be appointed as the sole director of Wind-Down NNI.  The Plan Administrator will have the authority to appoint the officers of Wind-Down NNI.  The Debtors also expect that Kathy Schultea of RLKS Executive Solutions LLC will be named as the Vice President and Secretary and Mary Cilia of RLKS Executive Solutions LLC will be named as the Chief Financial Officer of Wind-Down NNI.<br><br>Disclosure Statement § IV.E.3.a.<br><br>▪ The Debtors will include the following disclosure regarding the expected  identity of the directors and officers of the other Wind-Down Debtors:<br><br>The Debtors anticipate that John J. Ray, III will be appointed as the sole director of each of the Wind-Down Debtors.  The Plan Administrator will have the authority to appoint the officers of each of the Wind-Down Debtors.  The Debtors also expect that Kathy Schultea of RLKS Executive Solutions LLC will be named as the Vice President and Secretary and Mary Cilia of RLKS Executive Solutions LLC will be named as the Chief Financial Officer of each of the Wind-Down Debtors.<br><br>Disclosure Statement § IV.E.3.b.<br><br>▪ The Debtors will include the following disclosure regarding the expected procedures for the oversight and removal of the Plan Administrator.<br><br>    **a.     Resignation and Removal of the Plan Administrator**<br><br>Subject to change and definitive documentation in the Plan Administrator Agreement, it is anticipated that the following terms will be included in the Plan Administrator Agreement.  The  Plan Administrator Agreement will provide that the Plan Administrator will be able to resign as Plan Administrator upon delivery of sixty (60) days' written notice to the Bankruptcy Court. However, if a successor Plan Administrator has not been appointed by the end of such sixty (60) day period, the current Plan Administrator shall continue as Plan Administrator pursuant to the terms specified herein until such time as a successor is appointed by the Bankruptcy Court. The Plan Administrator shall have the authority to name a successor Plan |

7

| | | |
|---|---|---|
| | | Administrator, subject to Bankruptcy Court approval or, if the Plan Administrator is unable to make such an appointment, counsel to the Debtors also may identify a successor Plan Administrator, subject to Bankruptcy Court approval.<br><br>The Plan Administrator may be removed by the Bankruptcy Court on the grounds of: (i) the Plan Administrator's theft or embezzlement or attempted theft or embezzlement of money or tangible or intangible Assets or property; (ii) the Plan Administrator's violation of any law (whether foreign or domestic), which results in a felony indictment or similar judicial proceeding; (iii) the Plan Administrator's willful misconduct or fraud in the performance of his duties.<br><br>In the event of the death, resignation or removal of the Plan Administrator, the Bankruptcy Court shall appoint a successor Plan Administrator. Such appointment shall specify and establish the date on which such appointment shall be effective. Every successor Plan Administrator, without any further act, deed, conveyance or Bankruptcy Court order, shall become vested with all rights, powers, trusts and duties of the retiring Plan Administrator hereunder and under the Plan; provided, however, that no Plan Administrator shall be liable for the acts or omissions of any prior or subsequent Plan Administrator.<br><br>Disclosure Statement § IV.E.2.c. |
| | The Debtors should adjust the Solicitation Procedures to shorten the outside date for the Debtors to file Voting Objections to provide claimants with adequate time prior to the confirmation hearing to respond to such objections. | ▪ The Debtors will adjust the Solicitation Procedures as follows:<br><br>If the Debtors have served an objection or request for estimation as to a Claim ~~at least ten (10) days before the~~no later than December 8, 2016 (the "Voting Objection Deadline"), such Claim is temporarily disallowed for voting purposes only and not for the purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court before the Voting Deadline; *provided* that Claims that amend previously filed Claims to which the Debtors have objected or requested estimation and for which such objection or estimation request remains pending or unresolved also shall be deemed to be subject to a pending objection or request for estimation for purposes of this provision.<br><br>Disclosure Statement Order ¶ 10(c).<br><br>Additional objections or requests for estimation to Claims as described in part (c) above will be filed and served by the Debtors in a manner the Debtors deem appropriate in accordance with applicable law; *provided that* if such objection or request for estimation is served after [the entry of this Order and before the Voting Objection Deadline], such objection will be served on the holder of such Claim via overnight delivery, or via-email if consented to by the holder of such Claim, and any response filed by the holder of such Claim will be filed and served on the Debtors by |

|  |  |  |
|---|---|---|
|  |  | (i) overnight delivery or (ii) regular mail and e-mail to the attention of Derek Abbott of Morris Nichols Arsht & Tunnell LLP (dabbott@mnat.com) and Lisa Schweitzer of Cleary Gottlieb Steen & Hamilton LLP (lschweitzer@cgsh.com); <br><br> Disclosure Statement Order ¶ 10(d). <br><br> Holders of Claims subject to an objection or request for estimation as described in part (c) above that are filed by the Debtors between the entry of this Order and the Voting Objection Deadline who wish to file a reply to such objection or request for estimation must file such reply with the Court no later than **4:00 PM on the date that falls 14 days after such objection or request for estimation is filed by the Debtors (the "Voting Objection Response Deadline")**. Such reply must be filed and served on the Debtors by United States mail, overnight mail, facsimile, hand delivery or e-mail to the attention of Derek Abbott of Morris Nichols Arsht & Tunnell LLP (dabbott@mnat.com) and Lisa Schweitzer of Cleary Gottlieb Steen & Hamilton LLP (lschweitzer@cgsh.com) so as to be received by the Voting Objection Reply Deadline. <br><br> Disclosure Statement Order ¶ 10(e). <br><br> Holders of Claims in Classes 3A, 3B, and 3C whose claims are subject to these Temporary Allowance Procedures, including those whose Claims have not been formally allowed by the Court (except those claimants whose Claims are subject to part (e) above that must respond on or before their Voting Objection Response Deadline) and that (a) wish to have their vote counted other than in accordance with the Temporary Allowance Procedures, and (b) fail to resolve such Claims by mutual consent with the Debtors, shall be required to file a motion with the Court, with evidence in support thereof, seeking temporary allowance of such Claim pursuant to Bankruptcy Rule 3018(a) (a "Rule 3018(a) Motion") **on or before December 15, 2016 at 4:00 p.m. (Prevailing Eastern Time) (the "Rule 3018(a) Motion Deadline")**. A Rule 3018(a) Motion must be filed and served on the Debtors by United States mail, overnight mail, facsimile, hand delivery or e-mail to the attention of Derek Abbott of Morris Nichols Arsht & Tunnell LLP (dabbott@mnat.com) and Lisa Schweitzer of Cleary Gottlieb Steen & Hamilton LLP (lschweitzer@cgsh.com) so as to be received by the Rule 3018(a) Motion Deadline. <br><br> Disclosure Statement Order ¶ 10(j). <br><br> With regard to any timely Rule 3018(a) Motion, the Debtors shall file a response and serve the response on the moving party via overnight delivery, or via e-mail to if consented to by the moving party, **no later than December 30, 2016 at 4:00 p.m. (Prevailing Eastern Time)**. The Court sets [January 5], 2017 at [●] for a hearing regarding timely filed Rule 3018(a) Motions, if any |

| | | |
|---|---|---|
| | | Disclosure Statement Order ¶ 10(i).<br><br>A Rule 3018(a) Motion must be <u>filed and</u> served on the Debtors <u>by United States mail, overnight mail, facsimile, hand delivery or e-mail to the attention of Derek Abbott of Morris Nichols Arsht & Tunnell LLP (dabbott@mnat.com) and Lisa Schweitzer of Cleary Gottlieb Steen & Hamilton LLP (lschweitzer@cgsh.com)</u> so as to be received by the Rule 3018(a) Motion Deadline.<br><br>Conf. Hearing Notice ¶ 8. |
| | The Disclosure Statement and Solicitation Procedures should be revised with certain clarifications regarding the Debtors' right to request at the Confirmation Hearing that impaired classes for which no ballots are received be deemed to accept the Plan. | ▪ The Debtors will include the following disclosure regarding deemed acceptance by non-voting classes:<br><br>**<u>REQUEST FOR</u> DEEMED ACCEPTANCE BY NON-VOTING CLASSES.** If no votes to accept or reject the Plan are received with respect to a Class that is solicited in accordance with the Solicitation Procedures (other than a Class that is deemed eliminated pursuant to Plan <u>Section 5.4(a)</u> (*Elimination of Vacant Classes; Deemed Acceptance by Non-Voting Classes*), ~~such~~<u>the Debtors will request at the Confirmation Hearing that the Court deem this</u> Class ~~will be deemed~~ to have ~~voted to~~ accept<u>ed</u> the Plan~~, unless the Bankruptcy Court, for cause, orders otherwise~~.<br><br>Disclosure Statement § I.C.<br><br>▪ The Debtors will revise the Solicitation Procedures as follows:<br><br>If no votes to accept or reject the Plan are received with respect to a particular Class, ~~such~~<u>the Debtors will request at the Confirmation Hearing that the Court deem this</u> Class ~~is deemed~~ to have ~~voted to~~ accept<u>ed</u> the Plan.<br><br>Disclosure Statement Order ¶ 11(o). |

**Part II – Objections that Constitute Objections to Confirmation of the Plan**

| Objecting Party | Objection | Debtors' Response |
|---|---|---|
| **Nortel Trade Claims Consortium** | The Plan does not satisfy Bankruptcy Rule 9019.<br><br>NTCC Obj. ¶ 70. | ▪ This is a confirmation objection that should be addressed at the confirmation hearing.<br><br>▪ Furthermore, the SPSA is a reasonable compromise of the Allocation Dispute and other matters among the parties to such settlement and satisfies the requirements of Bankruptcy Rule 9019, the *Martin* factors and all other applicable standards. |
| | The Plan provides for the improper substantive consolidation of NNCC into NNI.<br><br>NTCC Obj. ¶ 70. | ▪ This is a confirmation objection that should be addressed at the confirmation hearing. |
| | The Plan does not provide for escrow of recoveries pending the NTCC's appeal.<br><br>NTCC Obj. ¶ 70. | ▪ This is a confirmation objection that should be addressed at the confirmation hearing. |
| | The Plan's contemplated distribution on account of the Bond Guarantee Claims (Crossover Bonds Claims) is improper.<br><br>NTCC Obj. ¶ 70. | ▪ This is a confirmation objection that should be addressed at the confirmation hearing.<br><br>▪ Furthermore, the treatment of the Crossover Bonds Claims is consistent with the SPSA and applicable law. |
| | The Plan provides for an unjustifiably high allocation to NN CALA.<br><br>NTCC Obj. ¶ 70. | ▪ This is a confirmation objection that should be addressed at the confirmation hearing.<br><br>▪ Furthermore, the allocation of sale proceeds to NN CALA is one component of the integrated settlements contained in the SPSA and the Plan and cannot be evaluated separately from the remainder of the settlement or Plan terms. |
| | The SPSA provides for an improper substantive consolidation of the Canadian Debtors.<br><br>NTCC Obj. ¶ 70. | ▪ This is a confirmation objection that should be addressed at the confirmation hearing, and is more properly asserted in the Canadian Debtors' CCAA proceedings to the extent it is directed at the Canadian Debtors' plan. |

| | | |
|---|---|---|
| **SNMP Research International, Inc.** | The provisions of the Plan and SPSA singling out SNMP Research violate the Bankruptcy Code.<br><br>SNMP Research Obj., pp. 7-12. | - This is a confirmation objection that should be addressed at the confirmation hearing but, as discussed in the Reply, it appears to be based on an improper reading of the SPSA and Plan terms. |
| | The provisions for post-confirmation estimation of claims for purposes of distribution are not permissible.<br><br>SNMP Research Obj., pp. 12-15. | - This is a confirmation objection that should be addressed at the confirmation hearing.<br>- Furthermore, the Plan merely preserves the Debtors' right to seek estimation by the Court of claims pursuant to 502(c); such provisions are routinely confirmed. |
| | The Plan's release, discharge and injunction provisions of the Plan violate the Bankruptcy Code.<br><br>SNMP Research Obj., pp. 16-18. | - This is a confirmation objection that should be addressed at the confirmation hearing.<br>- Furthermore, Plan, Disclosure Statement and solicitation materials provide adequate notice of these provisions and the typical creditor opt-out rights contained in the Plan. |
| | The Plan cannot use Bankruptcy Rule 9019 approval of the SPSA to avoid the requirements of confirmation of an individual Debtor's plan.<br><br>SNMP Research Obj., pp. 18-19. | - This is a confirmation objection that should be addressed at the confirmation hearing, although the Debtors note that the Court has authority to approve settlements both in the context of a Plan and separately from a Plan under Bankruptcy Rule 9019. |