**<u>EXHIBIT A</u>**

Court File No.  09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY
CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS
CORPORATION AND NORTHERN TELECOM CANADA LIMITED**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**MOTION RECORD**
**(Motion for Approval of Plan Filing and Meeting Order, Post-Filing Claims Bar Date
Order and Additional Misfiled Claim Order)**

**(returnable December 1, 2017)**

November 23, 2016

**GOODMANS LLP**
333 Bay Street, Suite 3400
Toronto, Ontario M5H 2S7

Jay Carfagnini  LSUC#: 22293T
Joseph Pasquariello LSUC#: 38390C
Christopher G. Armstrong LSUC#: 55148B
Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

Court File No.  09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY
CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS
CORPORATION AND NORTHERN TELECOM CANADA LIMITED**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**INDEX**

| DOCUMENT | TAB |
|---|---|
| Notice of Motion (Motion for Approval of Plan Filing and Meeting Order, Post-Filing Claims Bar Date Order and Additional Misfiled Claim Order) | 1 |
| One Hundred and Thirty Third Report of the Monitor dated November 23, 2016 | 2 |
| Proposed Plan Filing and Meeting Order | 3 |
| Proposed Post-Filing Claims Bar Date Order | 4 |
| Proposed Additional Misfiled Claim Order | 5 |
| Order dated May 27, 2009 (re: Appointment of Former Employee Representatives) | 6 |
| Order dated July 22, 2009 (re: Appointment of Continuing Employee Representatives) | 7 |
| Representation Order for Disabled Employees dated July 30, 2009 | 8 |

# TAB 1

Court File No.:  09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE** *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL**
**COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND**
**NORTHERN TELECOM CANADA LIMITED**

**APPLICATION UNDER THE** *COMPANIES' CREDITORS ARRANGEMENT ACT*, **R.S.C.**
**1985, c. C-36, AS AMENDED**

**NOTICE OF MOTION**
**(Motion for approval of Plan Filing and Meeting Order, Post-Filing Claims Bar Date**
**Order and Additional Misfiled Claim Order)**
**(returnable December 1, 2016)**

Nortel Networks Corporation ("**NNC**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks International Corporation, Nortel Networks Global Corporation, Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Limited (collectively, the "**Canadian Debtors**") jointly with Ernst & Young Inc. in its capacity as monitor (the "**Monitor**") of the Canadian Debtors will make a motion to Justice Newbould of the Commercial List on December 1, 2016 at 10:00 a.m. or as soon after that time as the motion can be heard, at 330 University Avenue, Toronto, Ontario.

**PROPOSED METHOD OF HEARING:** The motion is to be heard orally.

Capitalized terms used herein and not otherwise defined have the meaning given to them in the one hundred and thirty third report of the Monitor dated November 23, 2016 (the "**One Hundred and Thirty Third Report**").

**THE MOTION IS FOR ORDERS:**

2

1.      abridging the time for service of the Notice of Motion and the Motion Record herein and validating service;

2.      authorizing the filing of the Canadian Plan, convening the Meeting to be held on or about January 17, 2017 to consider and vote upon the Canadian Plan, authorizing the mailing and delivery of materials for consideration at the Meeting, setting the voting procedures to be followed by voting creditors and setting a date for the Sanction Hearing (the "**Meeting Order**");

3.      calling for Post-Filing Claims and setting a bar date for the filing of any such claims;

4.      deeming a certain specified claim filed against the U.S. Debtors to be filed against the Canadian Debtors; and

5.      such further and other relief as counsel may advise and this Honourable Court may permit.

**THE GROUNDS FOR THE MOTION ARE:**

**Canadian Plan and Information Circular**

1.      On October 12, 2016, the Canadian Debtors, U.S. Debtors, EMEA Debtors, and various Nortel creditor constituents entered into a certain Settlement and Plans Support Agreement (the "**Settlement and Support Agreement**") which, among other things, contains the terms of settlement of the Allocation Dispute among the estates and certain other significant claims;

2.      The Settlement and Support Agreement also contemplates the filing of a consolidated plan in Canada by the Canadian Debtors and sets certain target dates including for the date of the Meeting and the Sanction Hearing;

3.      As contemplated by the Settlement and Support Agreement, on November 4, 2016, the Monitor served and filed its one hundred and thirty first report (the "**One Hundred and Thirty First Report**") which contained the Canadian Debtors' proposed plan of

compromise and arrangement dated November 4, 2016 (the "**Canadian Plan**") and related information circular dated November 4, 2016 (the "**Information Circular**");

**Meeting Order**

4.      The Monitor and Canadian Debtors plan to hold a meeting of Affected Unsecured Creditors (the "**Meeting**") on January 17, 2017 starting at 1 p.m. (Toronto time) at The International Centre Conference Centre (6900 Airport Road, Mississauga, Ontario), and have proposed the terms of the Meeting Order to set out the process for the mailing of certain meeting materials, the solicitation of votes and the conduct of the Meeting;

5.      The proposed Meeting Order authorizes the filing of the Canadian Plan and the approval and distribution of the Information Circular as well as the forms of notices, proxies and instructions for voting to be distributed to Affected Unsecured Creditors (collectively, the "**Meeting Materials**");

*Notice of the Meeting*

6.      Publication and posting of notice of the Meeting and the Meeting Materials will be as follows:

   (a)      notice of the Meeting (the "**Publication Notice**"), as well as all of the Meeting Materials will be posted on the Monitor's website ([www.ey.com/ca/nortel](www.ey.com/ca/nortel)) (the "**Monitor's Website**");

   (b)      the Publication Notice will be sent to the service list in the CCAA Proceedings; and

   (c)      as soon as practical after the making of the Meeting Order, the Monitor will publish the Publication Notice: (A) in English in The Globe and Mail (National and Local Edition), The Wall Street Journal (Global Edition), Ottawa Citizen and Calgary Herald; and (B) in French in Journal de Montreal;

7.      The Meeting Materials will be available in English and French;

*Voting on the Canadian Plan*

8.      Voting will take place by written proxy (either by sending in a completed proxy or by delivering a proxy in person at the Meeting);

4

9.      Persons entitled to vote include:

(a)      Ordinary Creditors;

(b)      Court appointed Representatives on behalf of the current and former employees whom they represent;

(c)      Unifor on behalf of the former employees it represents;

(d)      Beneficial Bondholders; and

(e)      Morneau Shepell Ltd. in respect of the Canadian Pension Claims;

*Bondholder Solicitation Process*

10.      In the normal course, correspondence to bondholders from an issuer is distributed through a general chain of communication beginning with the indenture trustee, through to the depositories, then to participants (brokers and banks) and ultimately to beneficial holders.  The participants, being the parties responsible for direct communications with beneficial holders, are generally large institutions and many of these participants use mailing agents (such as Broadridge Financial Solutions, Inc.) or have multiple internal departments responsible for handling the various mailings;

11.      The Canadian Debtors, with the Monitor's consent, have retained Epiq Bankruptcy Solutions, LLC ("**Epiq**") to assist them with various matters relating to the distribution of materials to and solicitation of votes from the Bondholders;

12.      Epiq has extensive experience handling similar communications and is also the U.S. Debtors' claims agent;

13.      The retention of Epiq will ensure the Bondholder solicitation and voting process in respect of the Canadian Plan is efficiently coordinated with the U.S. Plan voting process;

14.      Beneficial Bondholders are entitled to vote on the Canadian Plan. They must complete their proxies and send the completed proxies back to their Participant Holders, who will then validate the holdings by completing one or more "Master Authentication Forms" to be submitted to Epiq. Epiq will then provide copies of the Master Authentication Forms (with attached proxies) to the Monitor;

*Support of the Canadian Plan*

15.    Pursuant to the Settlement and Support Agreement, there is significant support for the Canadian Plan, including from Bondholders holding approximately $3 billion of claims, employee and pension groups, UKPI and the U.S. and EMEA Debtors;

**Post-Filing Claims Bar Date Order**

16.    During the course of the CCAA Proceedings, the Canadian Debtors and Monitor have called for various claims pursuant to several different Orders.  In general, to qualify the claim had to arise in the "pre-filing period" (i.e. prior to January 14, 2009, except in respect of the New Applicants for which the pre-filing period was prior to March 18, 2016);

17.    In order to determine that no additional claims exist in the "post-filing" period against any of the Canadian Debtors (or their former officers and directors), the Canadian Debtors and Monitor are seeking an Order to call for Post-Filing Claims and setting a bar date for the filing of any such claim;

18.    The call for Post-Filing Claims excludes claims relating to payment for post-filing goods and services relating to the ongoing administration of the Canadian Debtors, any claim secured by the Administration Charge (under the Initial Order), professional fees that are currently being paid by the Canadian Debtors, any claims that are already covered by another claims order (including restructuring claims) or that have already been asserted, and any claim that is proposed to be settled under the Settlement and Support Agreement;

19.    Notice of the call and bar dates for Post-Filing Claims will be placed in The Globe and Mail (National Edition) and in The Wall Street Journal (Global Edition) and all materials will be posted on the Monitor's Website.  As there are no known Post-Filing Claims, no individual notices will be mailed;

20.     The bar date for filing a Post-Filing Claim will be: (a) for Post-Filing Claims existing as of December 1, 2016, January 6, 2017; and (b) for Post-Filing Claims that come into existence after December 1, 2016, the later of January 6, 2017 and the date that is 30 days after the facts giving rise to the Post-Filing Claim occur but in any event no later than 15 days after the Plan Effective Date;

**Additional Misfiled Claim**

21.     Certain claims were originally filed against a U.S. Debtor prior to the Claims Bar Date that should have been filed against a Canadian Debtor and vice versa;

22.     The Canadian Debtors, Monitor and U.S. Debtors have identified an additional claim where the creditor filed a claim against the incorrect Nortel legal entity;

23.     Coface North America Insurance Company, as assignee of the creditor Jaco Electronics, Inc., filed a claim totalling approximately $479,290 against a U.S. Debtor in the Chapter 11 Proceedings prior to the September 30, 2009 claims bar date which, based upon a review of the books and records of the Company, is properly a claim against a Canadian Debtor (the "**Additional Misfiled Claim**");

24.     To permit the timely resolution of the Additional Misfiled Claim, the Monitor is seeking an Order to deem such claim as validly filed against the appropriate Canadian Debtor in accordance with the Claims Procedure Order such that it may be resolved in accordance with the Claims Resolution Order dated September 16, 2010;

25.     Such relief will allow for the timely resolution of the Additional Misfiled Claim consistent with the manner in which substantively similar claims have been resolved and assist in advancing the claims processes in these CCAA Proceedings;

*General*

26.     Section 11(1) of the CCAA; and

27.     Such further and other grounds as counsel may advise and this Honourable Court may permit.

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of this motion:

1.      One Hundred and Thirty First Report;

2.      One Hundred and Thirty Third Report;

3.      Representation Order of this Court dated May 27, 2009;

4.      Representation Order of this Court dated July 22, 2009;

5.      Representation Order of this Court dated July 30, 2009; and

6.      Such further and other materials as counsel may advise and this Honourable Court may permit.

Date:   November 23, 2016

**GOODMANS LLP**

333 Bay Street, Suite 3400
Toronto, Ontario M5H 2S7

Jay Carfagnini LSUC#: 22293T
Joseph Pasquariello LSUC#: 38390C
Christopher G. Armstrong LSUC# 55148B

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

**GOWLING WLG (CANADA) LLP**
Barristers & Solicitors
Suite 1600, 1 First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1G5

Derrick Tay LSUC#: 21152A
Jennifer Stam LSUC#: 46735J

8

Tel:  416.862.5697
Fax: 416.862.7661

Lawyers for the Canadian Debtors

**TO:**    **THE SERVICE LIST**

Court File No.:  09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF COMPROMISE OR ARRANGMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA LIMITED

NOTICE OF MOTION FOR APPROVAL OF PLAN FILING AND MEETING ORDER, POST-FILING CLAIMS BAR DATE ORDER, AND ADDITIONAL MISFILED CLAIM ORDER UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

|  |  |
|---|---|
|  | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>Proceeding commenced at Toronto, Ontario Canada |
|  | **NOTICE OF MOTION**<br>**(Motion for Approval of Meeting Order, Post-Filing Claims Order and Additional Misfiled Claim Order)**<br>**(Returnable December 1, 2016)** |
|  | **GOODMANS LLP**<br>333 Bay Street, Suite 3400<br>Toronto, Ontario M5H 2S7<br><br>Jay Carfagnini LSUC#: 22293T<br>Joseph Pasquariello LSUC#: 38390C<br>Christopher G. Armstrong LSUC#: 55148B<br><br>Tel: 416.979.2211<br><br>Lawyers for the Monitor, Ernst & Young Inc.<br><br>**GOWLING WLG (CANADA) LLP**<br>One First Canadian Place<br>100 King Street West, Suite 1600<br>TORONTO, Ontario<br>M5X 1G5<br><br>Derrick Tay LSUC#: 21152A<br>Jennifer Stam LSUC#: 46735J<br><br>Tel: 416.862.5697<br><br>Lawyers for the Canadian Debtors |

# TAB 2

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION,  NORTEL**
**COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND**
**NORTHERN TELECOM CANADA LIMITED**

**ONE HUNDRED AND THIRTY THIRD REPORT OF THE MONITOR**
**DATED NOVEMBER 23, 2016**

## INTRODUCTION

1.    On January 14, 2009 (the "**Filing Date**"), Nortel Networks Corporation ("**NNC**" and
collectively with all its subsidiaries "**Nortel**" or the "**Company**"), Nortel Networks
Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks
International Corporation and Nortel Networks Global Corporation (collectively, with the
New Applicants (as defined below), the "**Canadian Debtors**") filed for and obtained
protection under the *Companies' Creditors Arrangement Act* ("**CCAA**"). Pursuant to the
Order of this Court dated January 14, 2009, as amended and restated (the "**Initial
Order**"), Ernst & Young Inc. was appointed as the Monitor of the Canadian Debtors (the
"**Monitor**") in the CCAA proceedings (the "**CCAA Proceedings**"). The stay of
proceedings was extended to March 31, 2017, by this Court in its Order dated September
29, 2016.

2.    Nortel Networks Inc. ("**NNI**") and certain of its U.S. subsidiaries and affiliates
concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the
"**Code**") in the United States Bankruptcy Court for the District of Delaware (the "**U.S.
Court**") on January 14, 2009 (the "**Chapter 11 Proceedings**").  As required by U.S. law,

an official committee of unsecured creditors (the "**Committee**") was established in January, 2009.

3.      An ad hoc group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized and is participating in these proceedings as well as the Chapter 11 Proceedings (the "**Bondholder Group**"). In addition, pursuant to Orders of this Court, representative counsel was appointed on behalf of the former employees of the Canadian Debtors, the continuing employees of the Canadian Debtors and the LTD Beneficiaries (collectively, "**Representative Counsel**") and each of these groups is participating in the CCAA Proceedings.

4.      Nortel Networks (CALA) Inc. ("**NN CALA**" and together with NNI and certain of its subsidiaries and affiliates that filed on January 14, 2009, the "**U.S. Debtors**") filed a voluntary petition under Chapter 11 of the Code in the U.S. Court on July 14, 2009.

5.      Nortel Networks UK Limited ("**NNUK**") and certain of its affiliates located in EMEA were granted administration orders (the "**U.K. Administration Orders**") by the High Court of England and Wales on January 14, 2009 (collectively the "**EMEA Debtors**" and with the Canadian Debtors and the U.S. Debtors, the "**Estates**" and each an "**Estate**"). The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as administrators of the various EMEA Debtors, except for Nortel Networks (Ireland) Limited, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively, the "**Joint Administrators**").

6.      Subsequent to the filing date, Nortel Networks S.A. ("**NNSA**") commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator (the "**French Liquidator**") and an administrator were appointed by the Versailles Commercial Court.

7.      The CCAA Proceedings and the U.K. Administration proceedings of NNUK and the other EMEA Debtors have been recognized by the U.S. Court as foreign main proceedings under Chapter 15 of the Code.

8.      Subsequent to the Filing Date, certain other Nortel subsidiaries have filed for creditor protection or bankruptcy proceedings in the local jurisdiction in which they are located.

9.      On March 18, 2016, Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Limited (collectively, the "**New Applicants**") sought and were granted an Order (New Applicants) of this Court pursuant to the CCAA (the "**New Applicants Order**"). Pursuant to the New Applicants Order, each of the New Applicants was deemed to be an "Applicant" (as defined in the Initial Order) in the CCAA Proceedings, entitled to all of the rights, benefits and protections granted by, and otherwise subject to, among other Orders of this Court entered in the CCAA Proceedings, the Initial Order as if it were an Applicant thereunder. The New Applicants Order also procedurally consolidated the CCAA proceedings of the New Applicants with the CCAA Proceedings.

**PURPOSE**

10.     The purpose of this one hundred and thirty third report of the Monitor ("**One Hundred and Thirty Third Report**") is to provide this Court and stakeholders with information regarding the Monitor and Canadian Debtors' motion:

> a)  seeking an Order, among other things, authorizing the filing of the Canadian Plan[1], convening the Meeting to be held on or about January 17, 2017 to consider and vote upon the Canadian Plan, authorizing the mailing and delivery of notices and materials for consideration at the Meeting, setting the voting procedures to be followed by voting creditors and setting a date for the Sanction Hearing;

> b)  seeking an Order to call for Post-Filing Claims and setting a bar date for the filing of any such claims; and

> c)  seeking an Order deeming a specified claim filed against the U.S. Debtors to be filed against the Canadian Debtors,

---

[1] Capitalized terms used in this introductory section are defined later in this One Hundred and Thirty Third Report.

and to provide an update in respect of certain matters pertaining to the Canadian Plan and Information Circular.

## TERMS OF REFERENCE

11.     In preparing this One Hundred and Thirty Third Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with the Company. The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of this information. Unless otherwise stated, all monetary amounts contained herein are expressed in U.S. dollars.

12.     Capitalized terms used herein and not otherwise defined in this One Hundred and Thirty Third Report are as defined in the Canadian Plan, the Settlement and Support Agreement or the Meeting Order (as each such term is defined below).

13.     The Monitor has made various materials relating to the CCAA Proceedings available on its website at www.ey.com/ca/nortel (the "**Monitor's Website**"). The Monitor's Website also contains a dynamic link to Epiq Bankruptcy LLC's website where materials relating to the Chapter 11 Proceedings are posted.

## CANADIAN PLAN AND INFORMATION CIRCULAR UPDATE

14.     As previously reported, on October 12, 2016, the Canadian Debtors, Monitor, U.S. Debtors, EMEA Debtors, EMEA Non-Filed Entities, Joint Administrators, NNSA Conflicts Administrator, French Liquidator, Bondholder Group, Committee, Representatives (defined below), Unifor, U.K. Pension Trustee, PPF, Joint Liquidators and the NNCC Bondholder Signatories, entered into a certain Settlement and Plans Support Agreement (the "**Settlement and Support Agreement**") which, among other things, contains the terms of settlement of the Allocation Dispute (as defined therein) among the estates and certain other significant claims. The Settlement and Support Agreement also contemplates the filing of a consolidated plan in Canada by the Canadian Debtors and one or more plans in the U.S. by the U.S. Debtors and sets out a target timeline for various related milestones, including the creditors' meeting and Sanction Hearing in Canada and the confirmation hearing in the U.S.

15.    On November 4, 2016, the Monitor served and filed its One Hundred and Thirty First report which contained the Canadian Debtors' proposed Plan of Compromise and Arrangement dated November 4, 2016 (the "**Canadian Plan**") and related information circular dated November 4, 2016 (the "**Information Circular**").

16.    Also on November 4, 2016, as contemplated by the Settlement and Support Agreement, the U.S. Debtors filed the First Amended Joint Chapter 11 Plan of Nortel Networks Inc. and Certain of its Affiliated Debtors (the "**U.S. Plans**") and related proposed disclosure statement (the "**U.S. Disclosure Statement**") with the U.S. Court.

17.    The purpose of the Canadian Plan is to:

a)    effectuate and implement the terms of the Settlement and Support Agreement, including the settlement of the Allocation Dispute and certain other claims, disputes and other matters contemplated therein, the release of the Sale Proceeds to the Canadian Debtors, U.S. Debtors and EMEA Debtors as provided for therein, and the payment contemplated pursuant to Section 4(e) of the Settlement and Support Agreement;

b)    provide for the substantive consolidation of each of the Canadian Debtors into the Canadian Estate on the terms contemplated by the Canadian Plan;

c)    provide for payment in full of Proven Priority Claims;

d)    provide for a pro rata distribution or distributions from the Canadian Estate to holders of all Proven Affected Unsecured Claims; and

e)    effect a release and discharge of all Affected Claims and Released Claims.

18.    The current estimated timeline to seek approval of and implement the Canadian Plan is as follows:

(a)    Meeting Order Hearing: December 1, 2016;

(b)    Creditor Meeting: January 17, 2017;

(c)    Sanction Hearing: January 24, 2017;

(d)    Plan Effective Date: February 15, 2017;

(e)    Plan Implementation Date: as soon as practical following the Plan Effective Date; and

(f)    Initial Distribution Date: within 60 days of the Plan Implementation Date.

19.    Based on the above timeline and subject to implementation of the Canadian Plan and the full effectiveness of the Settlement and Support Agreement, it is estimated an initial distribution to creditors may be possible in April 2017.   Creditors holding Proven Affected Unsecured Claims will receive distributions in U.S. dollars, unless such claim is predominantly denominated in Canadian dollars (i.e. more than 50% of the Proven Affected Unsecured Claim is denominated in Canadian dollars) (a "**CAD Claim**"), in which case creditors will receive distributions in Canadian dollars.

20.    On October 19, 2016, the Monitor sought and obtained an Order (the "**Canadian Currency Conversion Order**") from this Court that, among other things, authorized the Canadian Debtors and Monitor to enter into and perform their obligations under a Canadian distribution escrow agreement with certain of the U.S. Debtors, EMEA Debtors and a subsidiary of Royal Bank of Canada (the "**Canadian Distribution Agent**") and authorized the conversion of up to $1.2 billion of the Sale Proceeds into Canadian dollars. On October 21, 2016, the U.S. Court also issued an order (together with the Canadian Currency Conversion Order, the "**Currency Conversion Orders**") approving the U.S. Debtors entry into the Canadian distribution escrow agreement and authorizing the conversion of up to $1.2 billion of the Sale Proceeds into Canadian dollars.

21.    On October 24, 2016, pursuant to the Currency Conversion Orders, directions were issued to the U.S. Distribution Agent to transfer approximately $1.06 billion to the Canadian Distribution Agent. Such funds have been transferred and converted from U.S. dollars to Canadian dollars at a blended foreign exchange rate of $1.00 = CA$1.337650. The blended foreign exchange rate at which such funds together with any other funds transferred are converted from U.S. dollars to Canadian dollars shall constitute the Applicable F/X Rate for the Canadian Plan.

22.    With respect to Proven Affected Unsecured Claims, the Monitor currently  estimates that the range of recovery (per U.S. dollar) of Proven Affected Unsecured Claims will be

approximately 41.5 cents to 45 cents. Given currency conversion matters as described in the Canadian Plan, the Monitor estimates that the range of recovery (per CA dollar) for CAD Claims will be approximately CA 45 cents to CA 49 cents (assuming an Applicable F/X Rate of $1.00 = CA $1.337650).

## MEETING ORDER

23.     Under the terms of the Settlement and Support Agreement and as contemplated by the Canadian Plan, the Monitor and Canadian Debtors plan to hold a meeting of Affected Unsecured Creditors (the "**Meeting**") on January 17, 2017 starting at 1:00 p.m. (Toronto time) at The International Centre Conference Centre (6900 Airport Road, Mississauga, Ontario), and have proposed the terms of a meeting order (the "**Meeting Order**") to set out the process for the mailing of certain Meeting materials and notices, voting and the conduct of the Meeting.

24.     Consistent with the Canadian Plan, the Meeting Order contemplates a single class of creditors, namely the Affected Unsecured Creditors Class. The Affected Unsecured Creditors Class consists of those unsecured creditors with Affected Unsecured Claims against the Canadian Debtors. No other creditors or holders of interests, including holders of Director and Officer Claims, Equity Claims or Equity Interests, are permitted to vote on the Canadian Plan.

## Voting Claims

25.     Pursuant to the Canadian Plan and the proposed Meeting Order, Affected Unsecured Creditors with Voting Claims will be entitled to vote on the Canadian Plan. Voting Claims generally fall into two categories:

        a)  "**Bondholder Claims**" – claims in respect of the Bonds that have been either issued or guaranteed by one or more of the Canadian Debtors (the "**Bonds**"); and

        b)  "**Ordinary Creditor Claims**" **–** all other Affected Unsecured Claims (except for Bondholder Claims) including, without limitation, trade claims,

Compensation Claims, NNI Unsecured Claim, UKPI Claim, Canadian Pension Claims and other Intercompany Claims that are Voting Claims.

26.    Certain Affected Unsecured Claims will be finally settled and resolved pursuant to the Settlement and Support Agreement and, as such, will only become Proven Affected Unsecured Claims upon the effectiveness of the Settlement and Support Agreement. Under the Meeting Order, the amounts ascribed to those claims in the Settlement and Support Agreement and reflected in the Canadian Plan will be the amounts of those claims for voting purposes.    Any other Affected Unsecured Claims that remain unresolved as at the Meeting will be permitted to vote as set out below in the section describing the voting of "Unresolved Claims".

**The Affected Unsecured Creditors Class**

27.    The proposed Meeting Order divides Affected Unsecured Creditors into three different groups:

(a)    Beneficial Bondholders – Beneficial Bondholders are the unregistered holders of the Bonds who have the actual beneficial interest in the Bonds;

(b)    Compensation Creditors – Compensation Creditors are current and former employees of the Canadian Debtors (or their survivors) who have "Compensation Claims" (which are treated as Ordinary Claims) and who, as of the date of the Meeting Order, are represented by Representatives and Representative Counsel in the CCAA Proceedings under Representation Orders, or by Unifor; and

(c)    Ordinary Creditors – Ordinary Creditors are the balance of the Affected Unsecured Creditors.

28.    Although all three groups are part of the single "Affected Unsecured Creditors Class" (and in the case of Compensation Creditors and Ordinary Creditors, both have "Ordinary Claims"), they are described differently because of the nuances in relation to either (a) the proposed process under the Meeting Order for mailing and distribution of materials to them; and/or (b) the proposed process for voting.

**Meeting Materials and Publication of Notice of Meeting**

29.    The proposed Meeting Order authorizes the filing of the Canadian Plan and the approval and distribution of the Information Circular as well as the forms of notices, proxies and

instructions for voting to be distributed to Affected Unsecured Creditors (collectively, the "**Meeting Materials**").  French translations of the Meeting Materials will also be made available to Affected Unsecured Creditors upon request to the Monitor and will be available for download from the Monitor's Website.

30.     Publication and posting of notice of the Meeting and the Meeting Materials will be as follows:

(a)     notice of the Meeting (the "**Publication Notice**"), as well as all of the Meeting Materials will be posted on the Monitor's Website;

(b)     the Publication Notice will be sent to the service list in the CCAA Proceedings (the "**Service List**"); and

(c)     as soon as practical after the making of the Meeting Order, the Monitor will publish the Publication Notice: (A) in English in the *Globe and Mail* (National and Local Edition), *Wall Street Journal* (Global Edition), *Ottawa Citizen* and *Calgary Herald*; and (B) in French in *Journal de Montreal*.

**Mailing of Certain Meeting Materials**

*Mailing Materials*

31.     The Monitor and Canadian Debtors have considered what will be the most effective manner for distributing the Meeting Materials, including whether all Meeting Materials need to be mailed.   The Monitor and Canadian Debtors have also consulted with Representative Counsel regarding the set of materials to be mailed to Compensation Creditors.   Based on these considerations and consultations, the Monitor and Canadian Debtors are proposing to include a sub-set of the Meeting Materials in the mailing which they believe provide clear and concise information to creditors. In addition, copies of all of the Meeting Materials will be available on the Monitor's Website (in both English and French) and also will be provided in hard copy upon request.  The proposed mailing materials consist of:

(a)     <u>To Compensation Creditors</u>: a cover letter outlining certain key information regarding the Meeting Order, the Canadian Plan and distributions thereunder, and confirming that individual Compensation Creditors will not individually vote on the Plan (discussed in detail below) as their Representative or Unifor will be voting on their behalf, as well as a copy of the Publication Notice (the "**Compensation Creditor Mailing Materials**").  Compensation Creditor Mailing

Materials will be mailed out in English or French depending on the language preference the Monitor has on file for such Compensation Creditor. Compensation Creditor Mailing Materials in both English and French translation will be available on the Monitor's Website and copies will be provided by the Monitor in hard copy upon request; and

(b)    <u>To Beneficial Bondholders and Ordinary Creditors</u>: a cover letter outlining certain key information regarding the Canadian Plan and distributions thereunder, the Publication Notice, Information Circular, applicable form of proxy and voting instructions (the "**Bondholder Mailing Materials**" and "**Ordinary Creditor Mailing Materials**"). Bondholder Mailing Materials and Ordinary Creditor Mailing Materials will be mailed in English. The French translation of these materials will be available on the Monitor's Website and will be provided by the Monitor in hard copy upon request.

*Mailing to Compensation Creditors and Ordinary Creditors*

32.    The Monitor will mail the Compensation Creditor Mailing Materials and the Ordinary Creditor Mailing Materials within seven business days after the Meeting Order is made.

*Mailing to Bondholders*

33.    The Bonds were issued under four trust indentures.  The Monitor and Canadian Debtors have been working with the various indenture trustees and have been advised that all the Bonds are held through The Depository Trust Company ("**DTC**").

34.    In the normal course, correspondence to bondholders from an issuer is transmitted through a general chain of communication beginning with the indenture trustee, then through the depositories, to participants (brokers and banks) and ultimately to the beneficial holders of the Bonds.  The participants, being the parties responsible for direct communications with beneficial holders, are generally large institutions and many of these participants use mailing agents (such as Broadridge Financial Solutions, Inc.) or have multiple internal departments responsible for handling the various mailings.

35.    The Canadian Debtors, with the Monitor's consent, have retained Epiq Bankruptcy Solutions, LLC ("**Epiq**") to assist them with various matters relating to the mailing, solicitation, voting process and tabulation for the Beneficial Bondholders.  Epiq has extensive experience handling similar communications. Epiq is also the U.S. Debtors' claims agent.  The retention of Epiq will ensure the Beneficial Bondholder solicitation

and voting process in respect of the Canadian Plan is efficiently coordinated with the U.S. Plans solicitation process. The Monitor will work with Epiq to ensure separate administration and solicitation procedures are in place in respect of the Canadian Plan.

36. The Monitor and Canadian Debtors propose that Epiq, as agent, will print and mail the Bondholder Mailing Material packages (along with authentication forms and instructions, as discussed below) to the Participant Holders (or their mailing agents) for distribution to Beneficial Holders as at November 21, 2016, being the Voting Record Date. The Monitor is advised that Epiq will be able to provide affidavits of mailing in connection with this process.

**The Meeting**

37. As set out above, the Meeting is anticipated to be held on January 17, 2017 starting at 1:00 p.m. (Toronto time) at The International Centre Conference Centre, 6900 Airport Road, Mississauga, Ontario.

38. The Meeting will be conducted by the Monitor and chaired by Murray McDonald, President of Ernst & Young Inc. A Quorum for the Meeting will consist of at least one holder of an Affected Unsecured Claim voting at the Meeting (in person or by proxy). The chair will be entitled to adjourn the Meeting and notice of any adjournment will be sent to the Service List, posted on the Monitor's Website and posted at the meeting location.

**Voting**

*Ordinary Creditors*

39. An Ordinary Creditor who has a voting claim will be entitled to vote for or against the approval of the Canadian Plan by either returning their proxy so it is received by the Monitor at least three business days prior to the Meeting or attending the Meeting in person and submitting its proxy at the time designated by the chair. An Ordinary Creditor will be entitled to one vote only (even if it has multiple voting claims or has accumulated multiple voting claims through assignment of claims) and the value of that

voting claim will be equal to the total value of the separate and distinct voting claims such Ordinary Creditor holds.

*Compensation Creditors*

40.    In 2009, this Court issued the following orders with respect to the appointment of representatives (the "**Representatives**") and Representative Counsel to represent certain employee groups of the Canadian Debtors in respect of all matters in these CCAA Proceedings:

> a)    an Order dated May 27, 2009 appointing Donald Sproule, David Archibald and Michael Campbell as representatives of all former non-unionized employees of the Canadian Debtors and appointing Koskie Minsky LLP as their representative counsel;

> b)    an Order dated July 22, 2009 appointing Kent Felske and Dany Sylvain as representatives for all Canadian non-unionized employees of the Canadian Debtors whose employment with the Canadian Debtors continued through the CCAA Proceedings and appointing Nelligan O'Brien Payne LLP and Shibley Righton LLP as their representative counsel; and

> c)    an Order dated July 30, 2009 appointing Sue Kennedy as representative for LTD Beneficiaries (as defined therein) receiving or entitled to receive disability income benefits by or through the Canadian Debtors and appointing Koskie Minsky LLP as their representative counsel.

41.    Further, certain former unionized employees are represented by Unifor (formerly CAW).

42.    Pursuant to the proposed Meeting Order, a Court appointed Representative and Unifor will vote on behalf of the Compensation Creditors they represent.  Such Representatives and Unifor will submit a proxy which will count in number based on the number of individual claimants they represent for a total dollar amount based on the total amount of the claims of those individuals.  There are only a few former employees of the Canadian Debtors who opted out of representation by the Representatives.  To the extent those

individuals have Voting Claims, they are Ordinary Creditors under the Meeting Order and are entitled to vote on their own behalf.

*Bondholders*

43.   Beneficial Bondholders (and not the indenture trustees, Registered Bondholder or Participant Holders) are entitled to vote on the Canadian Plan.  As set out above, there is a chain of communications that must take place in order for the Beneficial Bondholders to receive the mailings regarding the Meeting.  A similar process, working itself back up the chain, is required in order to ensure the proxies are completed (and voted) by the Beneficial Bondholders and the holdings of such holder are validated by the applicable Participant Holders before the proxies are returned to Epiq (as agent for the Monitor).  As such, the process for the submission of proxies by Beneficial Bondholders is a two-step process.  First, Beneficial Bondholders complete their proxies (one per CUSIP and per Participant Holder through whom they hold Bonds) and return the completed proxies back to their Participant Holder(s).  Second, Participant Holders: (i) receive back the completed proxies, (ii) validate the holdings by completing one or more "Master Authentication Forms" (one per CUSIP), (iii) attach copies of the completed proxies they have received to the Master Authentication Forms, and (iv) forward the completed Master Authentication Forms (with the attached proxies) to Epiq.  Upon receipt, Epiq will provide copies of the Master Authentication Forms (with the attached proxies) to the Monitor.

44.   The Monitor believes this process to be the most thorough and efficient option as it: (a) provides the Beneficial Bondholders the right to vote through submitting a proxy; (b) ensures validation of the Beneficial Bondholder's holdings by requiring all Beneficial Bondholders to return their completed proxies to their Participant Holder for validation; (c) ensures the vote is being cast by the Beneficial Bondholder (and not the Participant Holder or Registered Bondholder) by requiring copies of the completed proxies to be attached to the Master Authentication Forms; and (d) is capable of being executed by Beneficial Bondholders and Participant Holders within the parameters of their communication systems.

45.    As set out above, each Beneficial Bondholder must submit a separate completed proxy for each CUSIP and each Participant Holder through which it holds Bonds so that such holdings may be validated by the Participant Holder.  Proxies returned to Epiq and the Monitor will be aggregated such that each Beneficial Bondholder receives one vote equal to the total value of the bond claims it holds.

46.    Master Authentication Forms must be received back by Epiq at least four Business Days prior to the Meeting to be verified by both Epiq and the Monitor.  Beneficial Bondholders wishing to attend the Meeting and vote at the Meeting must first return a proxy to their Participant Holder and have its holdings validated through a Master Authentication Form. Beneficial Bondholders whose holdings have not been validated by the Participant Holder through a Master Authentication Form will not have a voting claim by proxy or in person.

*Voting of Unresolved Claims*

47.    Pursuant to the proposed Meeting Order, holders of Affected Unsecured Claims which remain unresolved for distribution purposes are entitled to vote as follows:

(a)    any liquidated claim in whole or in part:

(i)    if no notice of disallowance has been issued, at the face value of the Affected Unsecured Claim, as filed; or

(ii)    where a notice of disallowance has been issued, at the amount that is the greater of $1 and the amount allowed by the Monitor in the notice of disallowance or, where there is a decision of a Claims Officer or Order of the CCAA Court, the amount of the Affected Unsecured Claim as set out in such decision or Order; or

(b)    any unresolved claim that is unliquidated in its entirety will be valued at $1.

48.    The dollar value ascribed to an Unresolved Claim for voting purposes will be deemed to be solely for the purpose of voting on the Canadian Plan.  Such ascribed value for voting purposes will not influence or impact the ultimate allowance or disallowance of such claim or its value, if any, for distribution purposes under the Canadian Plan.

49.    If an Affected Unsecured Creditor disputes the value attributed to its claim for voting purposes, such creditor will be entitled to seek relief in this regard at the Sanction

Hearing. The Monitor believes this is an appropriate means of addressing any potential disputes regarding the value of unresolved Affected Unsecured Claims for voting purposes, including in that it will defer any disputes to a point in time when stakeholders and the Court will be able to assess whether the value of an Unresolved Claim for voting purposes could have an impact on the outcome of the vote to approve the Canadian Plan.

**Required Majority and Sanction Hearing**

50.    If the Canadian Plan is approved by the Required Majority (a majority of Affected Unsecured Creditors voting representing at least two thirds in value of those Affected Unsecured Claims that are being voted), the Monitor and Canadian Debtors will bring a motion seeking approval of the Canadian Plan by the Court on or about January 24, 2017.

51.    Pursuant to the Settlement and Support Agreement, creditors with Claims in excess of the Required Majority (in number and in value) have agreed to support and vote in favour if the Canadian Plan.  Those creditors include bondholders with claims of approximately $3.0 billion, representatives of the former employee and pension groups representing over 15,000 former employees and retirees with claims of approximately CA $3 billion and NNI, UKPI and NNUK with claims totalling approximately $2.5 billion.

**POST-FILING CLAIMS BAR DATE ORDER**

52.    During the course of the CCAA Proceedings, the Canadian Debtors and Monitor have called for various claims pursuant to several different Orders.  In general, to qualify the claim had to arise in the "pre-filing period" (i.e. prior to January 14, 2009, except in respect of the New Applicants for which the pre-filing period was prior to March 18, 2016).

53.    In order to determine no additional claims exist in the "post-filing" period against any of the Canadian Debtors (or their former officers and directors), the Canadian Debtors and Monitor are seeking an Order to call for Post-Filing Claims and setting a bar date for the filing of any such claims.  In recognition of the ongoing administration of the Canadian Debtors, the call for Post-Filing Claims excludes claims relating to payment for post-filing goods and services provided to the Canadian Debtors relating to the ongoing administration of the Canadian Debtors, any claim secured by the Administration Charge

(under the Initial Order), professional fees that are currently being paid by the Canadian Debtors, any claims that are already covered by another claims order (including restructuring claims) and any claim that is proposed to be settled under the Settlement and Support Agreement.

54.     Notice of the call and bar dates for Post-Filing Claims will be placed in the *Globe and Mail* (National Edition) and in the *Wall Street Journal* (Global Edition) and all materials will be posted on the Monitor's Website.  As there are no known Post-Filing Claims, no individual notices will be mailed.

55.     The bar date for filing a Post-Filing Claim will be: (a) for Post-Filing Claims existing as of December 1, 2016, January 6, 2017; and (b) for Post-Filing Claims that come into existence after December 1, 2016, the later of January 6, 2017 and the date that is 30 days after the facts giving rise to the Post-Filing Claim occur but in any event no later than 15 days after the Plan Effective Date.

56.     The proposed procedure to review and resolve any Post-Filing Claims filed is substantially similar to the review and resolution procedures prescribed by prior Claims Orders issued by the Court, except that the Monitor shall have the authority to treat a Proof of Claim as a nullity and not capable of creating any claim, right or liability against the Canadian Debtors where such Proof of Claim asserts a claims that is excluded pursuant to the terms of the proposed Order, including any claim that has already been asserted, addressed, claimed, alleged, or otherwise dealt with in the CCAA Proceedings. Any creditor wishing to dispute such a determination by the Monitor shall be required to bring a motion before this Court within seven days of receiving notice of such determination from the Monitor.

**ADDITIONAL MISFILED CLAIMS**

57.     As more fully described in the Eightieth Report, certain claims were originally filed against a U.S. Debtor prior to the Claims Bar Date that should have been filed against a Canadian Debtor (the "**Misfiled Claims**") and vice versa.  By Orders dated February 17, 2012, July 27, 2012, October 29, 2013, and September 29, 2016, this Court has deemed

similar such Misfiled Claims as validly filed against the appropriate Canadian Debtor in accordance with the Claims Procedure Order.

58.    The Canadian Debtors, Monitor and U.S. Debtors have identified an additional claim where the creditor filed a claim against the incorrect Nortel legal entity.

59.    The Coface North America Insurance Company, as assignee of the creditor Jaco Electronics, Inc., filed a claim totalling approximately $479,290 against a U.S. Debtor in the Chapter 11 Proceedings prior to the September 30, 2009 claims bar date which, based upon a review of the books and records of the Canadian Debtors, is properly a claim against a Canadian Debtor (the "**Additional Misfiled Claim**").  The Additional Misfiled Claim relates to invoice based liabilities where a Canadian Debtor issued the purchase order for the goods or services underlying the claim in question.

60.    To permit the timely resolution of the Additional Misfiled Claim, the Monitor is seeking an Order to deem such claim as validly filed against the appropriate Canadian Debtor in accordance with the Claims Procedure Order such that it may be resolved in accordance with the Claims Resolution Order.

61.    Such relief will allow for the timely resolution of the Additional Misfiled Claim consistent with the manner in which similar claims have been resolved and assist in advancing the claims process in these CCAA Proceedings.  The Monitor is of the view such relief is appropriate as a result of the factors described above.

**CONCLUSION**

62.    For the reasons outlined in this One Hundred and Thirty Third Report, the Monitor supports the granting of:

> a)    the motion seeking approval of the Meeting Order which, among other things, authorizes the filing of the Canadian Plan and convening a meeting of creditors to be held on or about January 17, 2017, to consider and vote upon the Canadian Plan;

b) the motion seeking an Order to call for Post-Filing Claims and setting a bar date for the filing of any such claims; and

c) the motion deeming the Additional Misfiled Claim to be validly filed against the appropriate Canadian Debtor in accordance with the Claims Procedure Order.

All of which is respectfully submitted this 23rd day of November, 2016.

**ERNST & YOUNG INC.**
**in its capacity as Monitor of Nortel Networks Corporation** *et al.*
**and not its personal capacity**

Per:

Murray A. McDonald
President

6635696

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

Court File No:  09-CL-7950

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

*ONTARIO*
**SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**ONE HUNDRED AND THIRTY THIRD REPORT OF THE MONITOR DATED NOVEMBER 23, 2016**

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

Jay A. Carfagnini  (LSUC#: 22293T)
jcarfagnini@goodmans.ca
Joseph Pasquariello (LSUC# 38390C)
jpasquariello@goodmans.ca
Christopher G. Armstrong (LSUC# 55148B)
carmstrong@goodmans.ca

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

# TAB 3

Court File No. 09-CL-7950

*ONTARIO*

**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | THURSDAY, THE 1ST DAY |
| | ) | |
| JUSTICE NEWBOULD | ) | OF DECEMBER, 2016 |

IN THE MATTER OF THE COMPANIES' CREDITORS
ARRANGEMENT ACT,

R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF NORTEL NETWORKS CORPORATION,
NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION, NORTEL NETWORKS
TECHNOLOGY CORPORATION, NORTEL
COMMUNICATIONS INC., ARCHITEL SYSTEMS
CORPORATION AND NORTHERN TELECOM CANADA
LIMITED

APPLICATION UNDER THE COMPANIES' CREDITORS
ARRANGEMENT ACT,

R.S.C. 1985, c. C-36, AS AMENDED

**PLAN FILING AND MEETING ORDER**

THIS MOTION, made by Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, Nortel Networks International Corporation, Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Ltd. (collectively, the "**Canadian Debtors**") jointly with Ernst & Young Inc. in its capacity as monitor of the Canadian Debtors (the "**Monitor**" and together with the Canadian Debtors, the "**Moving Parties**") for an order, *inter alia*, (a) accepting the filing of the Plan, (b) authorizing the classification of creditors for purposes of voting on the Plan, (c) authorizing and directing the Monitor to call, hold and conduct a meeting of Affected Unsecured

1

Creditors to consider and vote on a resolution to approve the Plan, (d) authorizing and directing the mailing and distribution of the Meeting Materials, (e) approving the procedures to be followed with respect to the meeting of Affected Unsecured Creditors, and (f) setting a date for the hearing of the Moving Parties' motion for Court approval of the Plan, was heard this day at 330 University Avenue, Toronto, Ontario.

ON READING the Notice of Motion, the One Hundred and Thirty Third report of the Monitor dated November 23, 2016 (the "**One Hundred and Thirty Third Report**"), and on hearing the submissions of counsel for the Monitor, ■, no other parties appearing for the other parties served with the Motion Record, although duly served as appears from the affidavit of service, filed:

## SERVICE

1.    THIS COURT ORDERS that the time for service of the Notice of Motion, the Motion Record and the One Hundred and Thirty Third Report is hereby abridged and validated such that this Motion is properly returnable today and service upon any interested party other than those parties served is hereby dispensed with.

## DEFINITIONS

2.    THIS COURT ORDERS that for the purposes of this Meeting Order, in addition to the terms defined elsewhere in this Meeting Order or in the Plan, the following terms shall have the following meanings:

(a)    "**1988 Bondholder**" means a holder of one or more 1988 Bonds on the Voting Record Date including any Beneficial Bondholder holding 1988 Bonds;

(b)    "**1988 Bondholder Claim**" means a Voting Claim by a 1988 Bondholder in respect of 1988 Bonds;

(c)    "**1988 Bonds**" has the meaning given to it in subparagraph 2(zzzz)(iii);

(d)    "**Affected Claim**" means an Affected Claim under the Plan;

(e)    "**Affected Creditor**" means an Affected Creditor under the Plan;

(f)    "**Affected Unsecured Claim**" means any Affected Claim that is not a Director/Officer Claim or an Equity Claim;

(g)    "**Affected Unsecured Creditor**" means any holder of an Affected Unsecured Claim, but only with respect to and to the extent of such Affected Unsecured Claim;

(h)    "**Affected Unsecured Creditors Class**" has the meaning given to it in paragraph 10;

(i)    "**Beneficial Bondholder**" means a beneficial owner of any Bonds as at the Voting Record Date;

(j)    "**Bondholder**" means, as at the Voting Record Date, a registered or beneficial holder of a Bond, as the context requires, in such capacity;

(k)    "**Bondholder Claim**" means a Claim held by a Bondholder in respect of the Bonds;

(l)    "**Bondholder Claim Amount**" has the meaning given to it in paragraph 44;

(m)    "**Bondholder Mailing Materials**" has the meaning given to it in paragraph 21;

(n)    "**Bondholder Meeting Materials**" has the meaning given to it in subparagraph 2(hhh)(vi);

(o)    "**Bondholder Proxy**" means a proxy substantially in the form of Schedule "**C-3**", to be completed by Beneficial Bondholders in accordance with the terms of this Meeting Order and the Instructions to Bondholders;

(p)    "**Bonds**" means the Crossover Bonds, 1988 Bonds and NNCC Bonds and any bond, notes or debenture issued in substitution or replacement thereof and "**Bond**" means any one of them;

(q)     "**Business Day**" means a day, other than Saturday, Sunday or a statutory holiday, on which banks are generally open for business in both Toronto, Ontario, Canada and New York, New York, U.S.A.;

(r)     "**Canadian Debtors**" has the meaning given to it in the preamble;

(s)     "**Canadian Pension Claims**" has the meaning given to it in the Plan;

(t)     "**CCAA Court**" means the Ontario Superior Court of Justice (Commercial List);

(u)     "**CCAA Proceedings**" means these proceedings commenced by the Canadian Debtors pursuant to the CCAA;

(v)     "**Chair**" has the meaning given to it in paragraph 31;

(w)     "**Claim**" has the meaning given to it in the applicable Claims Orders but shall not include a Director/Officer Claim;

(x)     "**Claims Orders**" means, as the context requires, any or all  of the following Orders of the CCAA Court: the Claims Procedure Order, the Compensation Claims Procedure Order, the Claims Resolution Order, the Order approving the Cross-Border Claims Protocol dated September 16, 2010; the EMEA Claims Procedure Order dated January 14, 2011, the Intercompany Claims Procedure Order dated July 27, 2012, the Order dated September 29, 2016 in respect of Claims against the New Applicants; and the Post-Filing Claims Bar Date Order;

(y)     "**Claims Procedure Order**" means the Claims Procedure Order made by the CCAA Court dated July 30, 2009, as amended and restated on October 7, 2009;

(z)     "**Claims Resolution Order**" means the Claims Resolution Order dated September 16, 2010;

(aa)    "**Compensation Claims**" has the meaning given to it in the Compensation Claims Procedure Order;

(bb)     "**Compensation Claims Procedure Order**" means the Compensation Claims Procedure Order of the CCAA Court dated October 6, 2011, including the Compensation Claims Methodology Order of the CCAA Court dated October 6, 2011;

(cc)     "**Compensation Creditor**" means a Creditor who is a holder of a Compensation Claim and who, as of the date of this Meeting Order, continues to be represented by a Representative and Representative Counsel pursuant to the Representation Orders or by Unifor;

(dd)     "**Compensation Creditor Mailing Materials**" has the meaning given to it in paragraph 15;

(ee)     "**Compensation Creditor Meeting Materials**" has the meaning given to it in subparagraph 2(hhh)(vii);

(ff)     "**Crossover Bondholder Claim**" means a Voting Claim of a Crossover Bondholder in respect of Crossover Bonds, the aggregate amount of all Crossover Bondholder Claims being US$3,940,750,260;

(gg)     "**Crossover Bondholder**" means a holder of one or more Crossover Bonds on the Voting Record Date including any Beneficial Bondholder holding Crossover Bonds;

(hh)     "**Crossover Bonds**" has the meaning given to it in subparagraph 2(zzzz)(ii);

(ii)     "**Depository**" means The Depository Trust Company, The Canadian Depository for Securities or agency of similar nature;

(jj)     "**Directors**" means all former directors (or their estates) of the Canadian Debtors, in such capacity, and "**Director**" means any one of them;

(kk)     "**Directors / Officer Claim**" means any right or claim of any Person howsoever arising against one or more of the Directors or Officers for which any Director or Officer of a Canadian Debtor is alleged to be by statute or otherwise by law liable

to pay in his or her capacity as a Director or Officer, whether or not such right or claim is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, perfected, unperfected, present, future, known, or unknown, by guarantee, surety or otherwise, and whether or not such right is executory or anticipatory in nature, including the right or ability of any Person to advance a claim for contribution or indemnity or otherwise with respect to any claim, matter, action, cause or chose in action, whether existing at present or commenced in the future, and shall include any "Director/Officer Claim" (as such term is defined in the Claims Procedure Order without reference to the exclusion of any claims in such definition);

(ll)    "**Duplicative Voting Claim**" means a Voting Claim that, absent substantive consolidation under this Meeting Order and the Plan, would have been a Voting Claim against more than one of the Canadian Debtors based on the same underlying debt or obligation;

(mm)    "**Epiq**" means Epiq Bankruptcy Solutions, LLC;

(nn)    "**Equity Claim**" means a Claim that is in respect of an Equity Interest, including a claim for, among others: (i) a dividend or similar payment; (ii) a return of capital; (iii) a redemption or retraction obligation; (iv) a monetary loss resulting from the ownership, purchase or sale of an Equity Interest or from the rescission or, in Quebec, annulment, of a purchase or sale of an Equity Interest, or (v) contribution or indemnity in respect of a claim referred to in any of the foregoing (i) through (iv);

(oo)    "**Equity Claimant**" means any Person with an Equity Claim or holding an Equity Interest, but only in such capacity;

(pp)    "**Equity Interest**" means a share of a Canadian Debtor, or a warrant or option or another right to acquire a share in a Canadian Debtor, including the common shares of NNC and the preferred shares of NNL;

(qq)  "**Indenture Trustees**" means the indenture trustees (or their successors and assigns) under the Trust Indentures;

(rr)  "**Information Circular**" means the information circular dated November 4, 2016 in respect of the Plan attached to the One Hundred and Thirty First Report, as the same may be amended, supplemented or restated from time to time;

(ss)  "**Intercompany Claims**" means a Claim by a Nortel Group entity (including by any administrator, liquidator, receiver, trustee, office holder or similar official appointed in respect thereof) against a Canadian Debtor, including those unsecured intercompany claims against the Canadian Debtors set out in Schedule "C" to the Plan;

(tt)  "**Initial Order**" means initial order dated January 14, 2009, as amended and restated from time to time;

(uu)  "**Instructions**" means the Instructions to Bondholders and Instructions to Ordinary Creditors;

(vv)  "**Instructions to Bondholders**" means, as the context requires, the Instructions to Participant Holders or Instructions to Beneficial Bondholders;

(ww)  "**Instructions to Ordinary Creditors**" means the instructions substantially in the form attached as Schedule "**B-1**" hereto;

(xx)  "**Instructions to Participant Holders**" means the instructions to Participant Holders substantially in the form attached as Schedule "**C-1**" hereto;

(yy)  "**Instructions to Beneficial Bondholders**" means the instructions to Beneficial Bondholders substantially in the form attached as Schedule "**C-2**" hereto;

(zz)  "**Latest Known Address**" means, with respect to any Creditor, the address on file with the Canadian Debtors or the Monitor as of the date of this Meeting Order as the primary address for contact for such Creditor and shall not include any secondary or additional addresses that may have been provided by such Creditor;

(aaa) "**Letter to Compensation Creditors**" means the form of letter to be sent to Compensation Creditors substantially in the form attached as Schedule "**A-3**" hereto;

(bbb) "**Letter to Ordinary Creditors and Bondholders**" means the form of letter to be sent to Ordinary Creditors and Bondholders substantially in the form attached as Schedule "**A-2**" hereto;

(ccc) "**Mailing Agent**" means Broadridge Financial Solutions, Inc. and any other mailing agent used by any Participant Holder to distribute materials to Beneficial Bondholders;

(ddd)  "**Mailing Date**" means the date to be selected by the Monitor on which the Monitor shall make the mailings contemplated by paragraphs 13, 21 and 24 of this Meeting Order, which date shall be within seven (7) Business Days of the date of this Meeting Order;

(eee) "**Master Authentication Form**" means the form of master authentication form to be submitted by Participant Holders to Epiq attaching the Beneficial Bondholder Proxies received by such Participant Holder and validating the holdings of such Beneficial Bondholders, substantially in the form attached as Schedule "**C-4**" hereto;

(fff) "**Meeting**" means the meeting of the Affected Unsecured Creditors Class, and any extension or adjournment thereof, that is called and conducted in accordance with this Meeting Order for the purpose of considering and voting on the Plan;

(ggg) "**Meeting Date**" means the date and time for the Meeting to be selected by the Monitor, which date shall be on or about January 17, 2017 (unless extended in accordance with the terms of this Meeting Order);

(hhh) "**Meeting Materials**" means:

    (i)    the Publication Notice;

(ii)    the Plan;

(iii)    the Information Circular;

(iv)    the Meeting Order and any endorsement or reasons;

(v)    as it relates to Ordinary Creditors, the Letter to Ordinary Creditors and Bondholders, a blank form of the Voting Proxy and Instructions to Ordinary Creditors (together with the documents set out in (i) through (iv) above, the "**Ordinary Creditor Meeting Materials**");

(vi)    as it relates to Bondholders, the Letter to Ordinary Creditors and Bondholders and (A) with respect to Beneficial Bondholders, a blank form of Bondholder Proxy and Instructions to Beneficial Bondholders, and (B) with respect to Participant Holders, a blank form of Master Authentication Form and Instructions to Participant Holders (together with the documents set out in (i) through (iv) above, the "**Bondholder Meeting Materials**");

(vii)    as it relates to Compensation Creditors, the Letter to Compensation Creditors (together with the documents set out in (i) through (iv) above, the "**Compensation Creditor Meeting Materials**");

(iii)    "**Meeting Order**" means this Meeting Order, as it may be amended by any further Order of the CCAA Court;

(jjj)    "**Monitor**" has the meaning given to it in the preamble;

(kkk)    "**Monitor's Powers Orders**" means the following orders of the CCAA Court: (i) the Initial Order; (ii) the Claims Orders; (iii) the Order dated August 14, 2009; (iv) the Order (Monitor's Expansion of Power Order #2) dated October 3, 2014; (v) the Order (New Applicants) dated March 18, 2016; and (vi) this Meeting Order;

(lll)    "**Monitor's Website**" means the website maintained by the Monitor in respect of the CCAA Proceedings at the following address: www.ey.com/ca/nortel;

(mmm) "**Moving Parties**" has the meaning given to it in the preamble;

(nnn)   "**New Applicants**" means Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Ltd;

(ooo)   "**New Applicants Order**" means the Order of the CCAA Court dated March 18, 2016 in Court File No. CV-16-11312-00CL;

(ppp)   "**New Restructuring Claim**" means a Restructuring Claim (as defined in the Claim Procedure Order) arising after the Mailing Date;

(qqq)   "**NNC**" means Nortel Networks Corporation;

(rrr)   "**NNCC Bondholder**" means a Registered, Unregistered or Beneficial Bondholder holding one or more NNCC Bonds;

(sss)   "**NNCC Bondholder Claim**" means a Voting Claim of a NNCC Bondholder in respect of NNCC Bonds, the aggregate amount all NNCC Bondholder Claims being US$150,951,562;

(ttt)   "**NNCC Bonds**" has the meaning given to it in subsection 2(zzzz)(iv);

(uuu)   "**NNI Unsecured Claim**" means the allowed unsecured Voting Claim of Nortel Networks Inc. against Nortel Networks Limited in the amount of US$2.0 billion pursuant to the Final Canadian Funding and Settlement Agreement dated as of December 23, 2009 and approved by an Order of the CCAA Court dated January 21, 2010;

(vvv)   "**NNL**" means Nortel Networks Limited;

(www) "**NNUK Claim**" means the Proven NNUK Claim and, the Contingent Additional NNUK Claim (as both terms are defined in the Plan);

(xxx)   "**Notice to Affected Unsecured Creditors**" means the notice to Affected Unsecured Creditors substantially in the form attached as Schedule "**A-1**" hereto;

(yyy)   "**Officers**" means all former officers (or their estates) of the Canadian Debtors, in such capacity, and "**Officer**" means any one of them;

(zzz)   "**One Hundred and Thirty First Report**" means the one hundred and thirty-first report of the Monitor dated November 4, 2016;

(aaaa)  "**Ordinary Creditor**" means a Creditor with an Ordinary Creditor Claim, other than Compensation Creditors;

(bbbb)  "**Ordinary Creditor Claim**" means an Affected Unsecured Claim that is not a Bondholder Claim and, for greater certainty, includes the UKPI Claim, NNUK Claim, Canadian Pension Claims, Compensation Claims, Intercompany Claims and NNI Unsecured Claim;

(cccc)  "**Ordinary Creditor Mailing Materials**" has the meaning given to it in paragraph 13;

(dddd)  "**Ordinary Creditor Meeting Materials**" has the meaning given to it in subparagraph 2(hhh)(v);

(eeee)  "**Participant Holder**" means a Person whose name appears on any of the Participant Holders Lists as at the Voting Record Date but who is not a Beneficial Bondholder;

(ffff)   "**Participant Holders List**" means the list of Participant Holders to be provided by the Depositories in accordance with the terms of this Meeting Order;

(gggg)  "**Person**" includes any individual, partnership, joint venture, trust, corporation, unlimited liability company, unincorporated organization, government body or agency or instrumentality thereof, or any other juridical entity howsoever designated or constituted;

(hhhh)  "**Plan**" means the plan of compromise and arrangement dated November 4, 2016 filed by the Moving Parties and attached to the One Hundred and Thirty First Report, as such plan of compromise and arrangement may be amended, supplemented or restated from time to time in accordance with the terms hereof;

(iiii)    "**Post-Filing Claims**" has the meaning given to it in the Post-Filing Claims Bar Date Order;

(jjjj)    "**Post-Filing Claims Bar Date Order**" means the Order of the CCAA Court dated December 1, 2016 calling for Post-Filing Claims;

(kkkk)    "**Proof of Claim**" means the "Proof of Claim" referred to in any of the Claims Orders, as applicable;

(llll)    "**Proven Affected Unsecured Claim**" means a Proven Affected Unsecured Claim under the Plan;

(mmmm)    "**Proxy**" means a Voting Proxy or Bondholder Proxy, as applicable;

(nnnn)    "**Publication Notice**" means the notice to Affected Unsecured Creditors substantially in the form attached as Schedule "**A-1**" hereto to be published in accordance with paragraph 11;

(oooo)    "**Registered Bondholder**" means a Bondholder who is the legal owner or holder of one or more Bonds and whose name appears on a Registered Bondholder List;

(pppp)    "**Representation Orders**" means, collectively, (i) the Order of the CCAA Court dated May 27, 2009 appointing Koskie Minsky LLP as counsel for former employees, including pensioners, of the Canadian Debtors; (ii) the Order of the CCAA Court dated July 22, 2009 appointing Nelligan O'Brien Payne, LLP and Shibley Righton LLP as counsel for all Canadian non-unionized employees of the Canadian Debtors whose employment with the Canadian Debtors continued throughout the CCAA Proceedings; (iii) the Order of the CCAA Court dated July 30, 2009 appointing Koskie Minsky LLP as counsel for LTD Beneficiaries (as defined therein) receiving or entitled to receive disability income benefits by or through the Canadian Debtors;

(qqqq)    "**Representatives**" means the Court appointed representatives appointed pursuant to the Representation Orders;

(rrrr)    "**Representative Counsel**" means the Court appointed representative counsel appointed pursuant to the Representation Orders;

(ssss)    "**Required Majority**" means, with respect to the Affected Unsecured Creditors Class, a majority in number of Affected Unsecured Creditors holding Voting Claims representing at least two thirds in value of the Voting Claims of Affected Unsecured Creditors, in each case who are entitled to vote at the Meeting in accordance with the this Meeting Order and who are present and voting in Person or by proxy on the resolution approving the Plan at the Meeting;

(tttt)    "**Sanction Hearing**" has the meaning given to it in paragraph 59;

(uuuu)   "**Sanction Hearing Date**" means the date to be selected by the Monitor for the Sanction Hearing, which is targeted to be scheduled on or about January 24, 2017 (or such other date on or after the Meeting Date as may be set by the Monitor or the CCAA Court);

(vvvv)   "**Scrutineers**" has the meaning given to it in paragraph 32;

(wwww)       "**Secretary**" has the meaning given to it in paragraph 32;

(xxxx)   "**Service List**" means the service list maintained for the CCAA Proceedings posted on the Monitor's Website;

(yyyy)   "**Settlement and Support Agreement**" means that certain settlement and plans support agreement dated as of October 12, 2016 entered into by and among the Settlement Parties (as defined in the Plan), together with all Annexes thereto, in each case, as amended, supplemented or otherwise modified from time to time in accordance with the terms thereof;

(zzzz)   "**Trust Indentures**" means collectively:

(i)     the Indenture dated as of March 28, 2007 governing the 1.75% Convertible Senior Bonds due 2012 and the 2.125% Convertible Senior Bonds due 2014 (the "**2007 Bonds**") issued by Nortel Networks

Corporation and guaranteed by Nortel Networks Limited and Nortel Networks Inc.;

(ii)     the Indenture dated as of July 5, 2006, as supplemented by the First Supplemental Indenture dated as of July 5, 2006, the Second Supplemental Indenture dated as of May 1, 2007, and the Third Supplemental Indenture dated as of May 28, 2008, governing the Floating Rate Senior Bonds due 2011, the 10.125% Senior Bonds due 2013 and the 10.750% Senior Bonds due 2016 (together with the 2007 Bonds, the "**Crossover Bonds**") issued by Nortel Networks Limited and guaranteed by Nortel Networks Corporation and Nortel Networks Inc.;

(iii)     the Indenture dated as of November 30, 1988, governing the 6.875% Bonds due 2023 (the "**1988 Bonds**") issued by Northern Telecom Limited (now Nortel Networks Limited); and

(iv)     the Indenture dated as of February 15, 1996, governing the 7.875% Bonds due 2026 (the "**NNCC Bonds**") issued by Northern Telecom Capital Corporation (now Nortel Networks Capital Corporation) and guaranteed by Northern Telecom Limited (now NNL);

(aaaaa) "**UKPI**" means the Nortel Networks UK Ltd Pension Trust Limited and the Board of the Pension Protection Fund;

(bbbbb)     "**UKPI Claim**" means UKPI's allowed Voting Claim in the amount of £339.75 million (being US $494,879,850 when converted in accordance with the Plan and paragraph 70 of this Meeting Order);

(ccccc) "**Unaffected Claim**" means any Unaffected Claim under the Plan;

(ddddd)     "**Unresolved Claim**" means an Affected Unsecured Claim which by the date of the Meeting in whole or in part: (i) has not been finally determined to be a Voting Claim; (ii) is validly disputed in accordance with the Claims Orders; and/or (iii) remains subject to review and/or resolution in accordance with the

Claims Orders, including both as to proof and/or quantum, but shall not include the Contingent Additional NNUK Claim, which is a Voting Claim;

(eeeee) "**U.S. Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware;

(fffff) "**Voting Claim**" means an Affected Unsecured Claim to the extent that such Affected Unsecured Claim has been accepted by the Monitor solely for the purpose of voting on the Plan (which acceptance for the purpose of voting shall have no effect on whether such Claim is a Proven Affected Unsecured Claim for purposes of the Plan), in each case in accordance with the provisions of the Claims Orders or any other Order, as applicable;

(ggggg) "**Voting Proxy**" means a proxy substantially in the form attached as Schedule "**B-2**" hereto, to be submitted to the Monitor by any Ordinary Creditor or Representative who wishes to vote by proxy at the Meeting; and

(hhhhh) "**Voting Record Date**" means November 21, 2016.

3.    THIS COURT ORDERS that all references to time herein shall mean local time in Toronto, Ontario, Canada, and any reference to an event occurring on a Business Day shall mean prior to 4:00 P.M. on such Business Day unless otherwise indicated herein.

4.    THIS COURT ORDERS that all references to the word "including" or "includes" shall mean "including without limitation" or "includes without limitation", as the case may be.

5.    THIS COURT ORDERS that, unless the context otherwise requires, words importing the singular shall include the plural and *vice versa*, and words importing any gender shall include all genders.

**THE PLAN**

6.    THIS COURT ORDERS that the Plan is hereby accepted for filing, and the Monitor is hereby authorized and directed to call and hold a meeting of Affected Unsecured Creditors to vote on the Plan in the manner set forth herein.

7.      THIS COURT ORDERS that the Moving Parties may, at any time and from time to time prior to or at the Meeting, amend, restate, modify and/or supplement the Plan, subject to the terms of the Plan, provided that:

(a)      the Monitor or the Chair shall communicate the details of any such amendments, restatements, modifications and/or supplements to Affected Unsecured Creditors present at the Meeting prior to any vote being taken at the Meeting;

(b)      the Monitor shall provide notice to the Service List of any such amendments, restatements, modifications and/or supplements and shall forthwith file a copy thereof with the CCAA Court and in any event prior to the Sanction Hearing; and

(c)      the Monitor shall post an electronic copy of any such amendments, restatements, modifications and/or supplements on the Monitor's Website prior to the Sanction Hearing.

**FORMS OF DOCUMENTS**

8.      THIS COURT ORDERS that the following documents be and are hereby approved:

(a)      Notices:

(i)      Publication Notice (Schedule "**A-1**");

(ii)      Letter to Ordinary Creditors and Bondholders (Schedule "**A-2**");

(iii)      Letter to Compensation Creditors (Schedule "**A-3**");

(b)      Ordinary Creditors:

(i)      Instructions to Ordinary Creditors (Schedule "**B-1**");

(ii)      form of Voting Proxy (Schedule "**B-2**");

(c)      Bondholders:

(i)      Instructions to Participant Holders (Schedule "**C-1**");

(ii)      Instructions to Beneficial Bondholders (Schedule "**C-2**");

(iii)      form of Bondholder Proxy (Schedule "**C-3**"); and

(iv)     form of Master Authentication Form (Schedule "**C-4**").

9.     THIS COURT ORDERS that the Monitor may (i) make any changes to the Meeting Materials as are necessary or desirable to conform the content thereof to the terms of the Plan or this Meeting Order, and (ii) at any time and from time to time prior to or at the Meeting, amend, restate, modify and/or supplement any of such materials, subject to the terms of the Plan, provided that:

(a)     the Monitor or the Chair shall communicate the details of any such amendments, restatements, modifications and/or supplements to Affected Unsecured Creditors present at the Meeting prior to any vote being taken at the Meeting;

(b)     the Monitor shall provide notice to the Service List of any such amendments, restatements, modifications and/or supplements and shall forthwith file a copy thereof with the CCAA Court and in any event prior to the Sanction Hearing; and

(c)     the Monitor shall post an electronic copy of any such amendments, restatements, modifications and/or supplements on the Monitor's Website prior to the Sanction Hearing.

**CLASSIFICATION OF CREDITORS**

10.     THIS COURT ORDERS that the only class of creditors for the purposes of considering and voting on the Plan shall be the "**Affected Unsecured Creditors Class**".

**PUBLICATION OF NOTICE**

11.     THIS COURT ORDERS that the Monitor shall, as soon as practical, cause the Notice to Affected Unsecured Creditors to be published in English in The Globe and Mail (National and Local Edition), The Wall Street Journal (Global Edition), Ottawa Citizen and Calgary Herald and in French in Le Journal de Montreal.

12.     THIS COURT ORDERS that the Monitor shall, no later than three (3) Business Days following the date of this Meeting Order, post an electronic copy of the Meeting Materials in

English and in French on the Monitor's Website under the heading "Plan and Other Creditor Meeting Documents" and serve the Meeting Materials on the Service List.

## NOTICE TO ORDINARY CREDITORS

13.    THIS COURT ORDERS that the Monitor shall, on the Mailing Date, deliver the Publication Notice, Letter to Ordinary Creditors and Bondholders, Information Circular, Instructions to Ordinary Creditors and a blank form of Voting Proxy (the "**Ordinary Creditor Mailing Materials**") by pre-paid first class mail, courier, personal delivery or email to each Ordinary Creditor with a Voting Claim and/or an Unresolved Claim and to the Representatives at the Latest Known Address provided, however, that (i) with respect to the NNUK Claim, Canadian Pension Claims, NNI Unsecured Claim and UKPI Claim, the Monitor may deliver the Ordinary Creditor Mailing Materials to counsel appearing on the Service List for such Affected Unsecured Creditors; and (ii) with respect to any other Intercompany Claim that is a Voting Claim, the Monitor may deliver the Ordinary Creditor Mailing Materials to any last known officer, director or administrator of such Intercompany Creditor.

14.    THIS COURT ORDERS that in addition to the Ordinary Creditor Mailing Materials, upon request of any Ordinary Creditor, the Monitor shall provide hard copies of any of the other Ordinary Creditor Meeting Materials to such Ordinary Creditor. The Monitor shall also provide French translations of the Ordinary Creditor Meeting Materials upon request.

## NOTICE TO COMPENSATION CREDITORS

15.    THIS COURT ORDERS that the Monitor shall, on the Mailing Date, deliver (a) the Publication Notice and Letter to Compensation Creditors (the "**Compensation Creditors Mailing Materials**") by pre-paid first class mail, courier, personal delivery or email to each Compensation Creditor at the Compensation Creditor's Latest Known Address; and (b) a blank form of Voting Proxy and Instructions to Ordinary Creditors to Representative Counsel and counsel for Unifor by email. Compensation Creditor Mailing Materials shall be provided in English or French depending on the language preference previously indicated by Compensation Creditors and on file with the Monitor. On request, the Monitor will provide the Compensation Creditor Meeting Materials in the other language.

16.    THIS COURT ORDERS that in addition to the Compensation Creditor Mailing Materials, upon request of any Compensation Creditor, the Monitor shall provide hard copies of any of the other Compensation Creditor Meeting Materials to such Compensation Creditor. The Monitor shall also provide French translations of the Compensation Creditor Meeting Materials upon request.

17.    THIS COURT ORDERS that votes by Compensation Creditors shall be effected through: (a) the Compensation Creditors' respective Representatives, who are hereby authorized and empowered to vote on behalf of each of the Compensation Creditors whom they currently represent pursuant to the Representation Orders; and (b) Unifor for the Compensation Creditors it represents.  The Representatives and Unifor shall each be entitled to submit a single Voting Proxy and shall not be required to submit individual proxies or ballots in respect of individual Compensation Claims.

## NOTICE TO BONDHOLDERS

18.    THIS COURT ORDERS that the Monitor and the Canadian Debtors' retention of Epiq to act as the Monitor's agent in connection with the mailing and solicitation process in connection with Bondholder Claims be and is hereby approved.

19.    THIS COURT ODERS that, without limiting the generality of paragraphs 18 or 68, for the purposes of paragraphs 20 through 29, 54 and 63, references to the Monitor shall be deemed to mean "the Monitor or Epiq".

*Indenture Trustees and Registered Bondholders*

20.    THIS COURT ORDERS that, to the extent such information has not been obtained prior to the date of this Meeting Order:

      (a)      as soon as possible after the date of the Meeting Order and in any event no later than two (2) Business Days following the date of the Meeting Order each of the Indenture Trustees shall confirm to the Monitor in writing (in accordance with paragraph 64) that the only Registered Bondholders are one or more Depositories (and identify and provide contact information for the applicable Depository); and

(b)     immediately thereafter, the Monitor shall request Participant Holders Lists in respect of the Bonds from the Depositories and as soon as practicable thereafter, each Depository shall provide all relevant Participant Holders Lists to the Monitor as at the Voting Record Date. In each case, any Participant Holder List so provided shall list the Participant Holders as at the Voting Record Date and their respective addresses and telephone numbers, fax numbers and email addresses, to the extent available.

21.     THIS COURT ORDERS that on the Mailing Date (or such later date where the Monitor does not have requisite information) the Monitor shall deliver the Publication Notice, Letter to Ordinary Creditors and Bondholders, Information Circular, Instructions to Bondholders and blank form of Bondholder Proxy (the "**Bondholder Mailing Materials**") by pre-paid first class mail, courier, personal delivery or email to the Depositories.

22.     THIS COURT ORDERS that to the extent that an Indenture Trustee or a Depository has a standard process for providing notice of the entry of this Meeting Order to its Participant Holders, it shall post notice of the mailing to its Participant Holders.

*Participant Holders and Beneficial Bondholders*

23.     THIS COURT ORDERS that each Participant Holder or any Mailing Agent shall advise the Monitor as to the number of hard copies of the Bondholder Mailing Materials required by each Participant Holder and such information shall be provided within two (2) Business Days of the date of the request is made.

24.     THIS COURT ORDERS that on the Mailing Date (or such later date where the Monitor does not have the requisite information), the Monitor shall provide to each Participant Holder the Bondholder Mailing Materials in electronic form or, where such Participant Holder has advised it requires hard copies, the number of hard copies of the Bondholder Mailing Materials so advised by such Participant Holder and shall subsequently provide each Participant Holder with a blank form of the Master Authentication Form and Instructions to Participant Holders, all to be sent by way of pre-paid first class mail, courier or personal delivery.

25.    THIS COURT ORDERS that, within five (5) Business Days of any Participant Holder's receipt of the Bondholder Mailing Materials from the Monitor pursuant to paragraph 24, such Participant Holder shall:

(a)    deliver to each Beneficial Bondholder that has an account (directly or through an agent or custodian) with such Participant Holder, the Bondholder Mailing Materials; and

(b)    request that such Beneficial Bondholders complete one or more Bondholder Proxies (one per CUSIP and per Participant Holder) and return such Bondholder Proxy or Proxies to their Participant Holder with sufficient time to allow such Participant Holder to complete and return one or more Master Authentication Forms by the deadline set out in paragraph 26 below.

26.    THIS COURT ORDERS upon receipt of the Bondholder Proxies from Beneficial Bondholders, each Participant Holder shall complete and sign one or more Master Authentication Forms (one per CUSIP) in respect of all Bondholder Proxies it receives from Beneficial Bondholders and deliver such Master Authentication Form or Forms to the return address indicated in the Instructions to Participant Holders.  To the extent that a Participant Holder receives further Bondholder Proxies after a Master Authentication Form is submitted, a Participant Holder may submit one or more Master Authentication Forms in respect of such further Bondholder Proxies.  All Master Authentication Forms must be received at least four (4) Business Days prior to the Meeting. To the extent a Participant Holder submits multiple Master Authentication Forms in respect of the same Bondholder Proxy, the last dated, timely received, validly executed Master Authentication Form shall be deemed to supersede any previously submitted Master Authentication Forms.

27.    THIS COURT ORDERS that where: (a) a Participant Holder or its Mailing Agent has a standard practice for distributing meeting materials to Beneficial Bondholders and for gathering information and proxies or voting instructions from Beneficial Bondholders; (b) the Participant Holder has discussed such standard practice in advance with the Monitor; and (c) such standard practice is acceptable to the Monitor; such Participant Holder or its agent may, in lieu of following the procedure set out in paragraphs 25 and 26 above, follow such standard practice

provided that all applicable Bondholder Proxies, Master Authentication Forms and Instructions are delivered in accordance with the terms of this Meeting Order.

28.     THIS COURT ORDERS that to the extent a Beneficial Bondholder holds Bonds through multiple Participant Holders, it must submit one or more Bondholder Proxies (one per CUSIP and per Participant Holder) to each Participant Holder through which it holds Bonds.

**NOTICE, SERVICE AND DELIVERY**

29.     THIS COURT ORDERS that the Monitor's fulfillment of the notice, delivery and Monitor's Website posting requirements set out in this Meeting Order shall constitute good and sufficient notice, service and delivery thereof on all Persons who may be entitled to receive notice, service or delivery thereof or who may wish to be present or vote (in person or by proxy) at the Meeting, and that no other form of notice, service or delivery need be given or made on such Persons and no other document or material need be served on such Persons.

**CONDUCT OF MEETING AND DELIVERY OF PROXIES**

30.     THIS COURT ORDERS that the Monitor is hereby authorized and directed to call, hold and conduct the Meeting on the Meeting Date at The International Centre Conference Centre (6900 Airport Road, Mississauga, Ontario), (or such other venue as may be determined by the Monitor), for the purpose of seeking approval of the Plan by the Affected Unsecured Creditors with Voting Claims at the Meeting in the manner set forth herein.  In the event that the Meeting Date is extended after the Mailing Date, the Monitor shall post notice of the extension of the Meeting Date on the Monitor's Website and provide notice of the extension of the Meeting Date to the Service List.

31.     THIS COURT ORDERS that Murray McDonald or another representative of the Monitor, designated by the Monitor, shall preside as the chair of the Meeting (the "**Chair**") and, subject to this Meeting Order or any further Order of the Court, shall decide all matters relating to the conduct of the Meeting.

32.     THIS COURT ORDERS that the Monitor may appoint scrutineers for the supervision and tabulation of the attendance, quorum, and votes cast at the Meeting (the "**Scrutineers**").  A Person designated by the Monitor shall act as secretary of the Meeting (the "**Secretary**").

33.     THIS COURT ORDERS that the quorum required at the Meeting shall be one (1) Affected Unsecured Creditor with a Voting Claim present at the Meeting (in person or by proxy).

34.     THIS COURT ORDERS that the Chair shall be entitled to adjourn and further adjourn the Meeting at the Meeting or at any adjourned Meeting or change the venue for the Meeting.  In the event of any adjournment or change of venue described in this paragraph, no Person shall be required to deliver any notice of the adjournment of the Meeting or adjourned Meeting or change of venue, provided that the Monitor shall: (a) announce the adjournment at the Meeting, adjourned Meeting or change of venue, as applicable; (b) post notice of any adjournment (or further adjournment), or if the venue is changed within one (1) Business Day of the Meeting Date of the Meeting, at the location where the Meeting was scheduled to be held at the time the Meeting was scheduled to start; (c) forthwith post notice of the adjournment or change of venue on the Monitor's Website; and (d) provide notice of the adjournment or change of venue to the Service List forthwith.  Subject to the terms of the Plan, Proxies validly delivered in connection with the Meeting shall be accepted as Proxies in respect of any adjourned Meeting.

35.     THIS COURT ORDERS that the only Persons entitled to attend and speak at the Meeting are: (a) the Affected Unsecured Creditors entitled to vote at the Meeting (or, if applicable, any Person holding a valid Proxy or on behalf of one or more such Affected Unsecured Creditors); (b) the Chair, the Scrutineers and the Secretary; (c) the Monitor; (d) the Representatives; (e) the Indenture Trustees; and (f) Canadian Debtors' legal counsel and any legal counsel or financial advisors to any of the foregoing Persons in (a) through (e) above.  Any other Person may only be admitted to the Meeting on invitation of the Chair.

36.     THIS COURT ORDERS that the Monitor may waive in writing the time limits imposed on Affected Unsecured Creditors as set out in this Meeting Order (including the schedules hereto), generally or in individual circumstances, if the Monitor deems it advisable to do so.

**ASSIGNMENT OF AFFECTED CLAIMS PRIOR TO THE MEETING**

37.    THIS COURT ORDERS that, subject to any restrictions contained in Applicable Laws and subject further to the terms of the Plan, the Claims Orders and the Settlement and Support Agreement, an Ordinary Creditor or Compensation Creditor may transfer or assign the whole of its Voting Claim prior to the Meeting (or any adjournment thereof), provided that the Monitor shall not be obliged to deal with any transferee or assignee thereof as an Affected Unsecured Creditor in respect of such Voting Claim, including allowing such transferee or assignee to attend or vote at the Meeting, unless and until actual notice of the transfer or assignment, together with satisfactory evidence of such transfer or assignment, has been received and acknowledged by the Monitor, which receipt and acknowledgment must have occurred on or before 4 p.m. (Toronto time) on the date that is seven (7) days prior to the date of the Meeting (or any adjournment thereof), failing which the original transferor shall have all applicable rights as the "Ordinary Creditor" or "Compensation Creditor" as the case may be with respect to such Voting Claim as if no transfer of the Voting Claim had occurred.  If such receipt and acknowledgment by the Monitor have occurred on or before 4 p.m. (Toronto time) on the date that is seven (7) days prior to the date of the Meeting (or any adjournment thereof): (a) the transferor of the applicable Voting Claim shall no longer constitute an Affected Unsecured Creditor in respect of such Voting Claim; and (b) the transferee or assignee of the applicable Voting Claim shall, for all purposes in accordance with this Meeting Order, constitute an Ordinary Creditor or Compensation Creditor as the case may be in respect of such Voting Claim, and shall be bound by any and all notices previously given to the transferor or assignor in respect thereof, the voting process set out in this Meeting Order applicable to such Ordinary Creditor Claim, and any Proxy duly submitted to the Monitor in accordance with this Meeting Order.  For greater certainty, the Monitor shall not recognize partial transfers or assignments of Ordinary Creditor Claims.

38.    THIS COURT ORDERS that only those Beneficial Bondholders that have beneficial ownership of one or more Bonds as at the Voting Record Date shall be entitled to vote at the Meeting (whether in person or by proxy).  Nothing in this Meeting Order restricts the Beneficial Bondholders from transferring or assigning such Bonds prior to or after the Voting Record Date, provided that if such transfer or assignment occurs after the Voting Record Date, only the

original Beneficial Bondholder of such Bonds as at the Voting Record Date (and not any transferee) shall be treated as a Beneficial Bondholder for purposes of this Meeting Order and the Meeting, provided, however, that the Settlement and Support Agreement shall continue to apply to the transferee of any Beneficial Bondholder bound thereby.

**VOTING PROCEDURE**

39.     THIS COURT ORDERS that at the Meeting, the Chair shall direct a vote, by written Proxy, on a resolution to approve the Plan and any amendments thereto.

**Persons Entitled to Vote**

40.     THIS COURT ORDERS that, subject to paragraphs 56 - 57, the only Persons entitled to vote at the Meeting (whether in person or by proxy) are:

(a)     Beneficial Bondholders with Voting Claims that have beneficial ownership of one or more Bonds as at the Voting Record Date (or any such Beneficial Bondholder's validly appointed holder of its Bondholder Proxy) whose holdings have been validated by such Beneficial Bondholder's Participant Holder or Participant Holders or a Master Authentication Form;

(b)     Ordinary Creditors with Voting Claims as at the Voting Record Date including, without limitation, the holders of all Intercompany Claims (including the NNI Unsecured Claim and the NNUK Claim) that are Voting Claims (or any such Ordinary Creditor's validly appointed holder of its Voting Proxy);

(c)     Representatives, on behalf of all Compensation Creditors with Voting Claims as at the Voting Record Date;

(d)     Unifor, on behalf of Compensation Creditors that it currently represents with Voting Claims as at the Voting Record Date; and

(e)     Morneau Shepell Ltd., in its capacity as administrator of the Canadian Pension Plans, in respect of the Canadian Pension Claims.

41.    THIS COURT ORDERS that Unaffected Creditors (in such capacity) and Equity Claimants (in such capacity) shall not, and shall have no right to, attend the Meeting or vote on the Plan.

42.    THIS COURT ORDERS that each Ordinary Creditor with a Voting Claim shall be entitled to one (1) vote as a member of the Affected Unsecured Creditors Class, which vote shall have a value equal to the dollar value of such Ordinary Creditor's Voting Claim. For the avoidance of doubt, the Voting Claim amounts in respect of the NNI Unsecured Claim, NNUK Claim and the other Intercompany Claims listed in Schedule "C" to the Plan, UKPI Claim, and Canadian Pension Claims shall be the dollar amounts ascribed to them in the Plan.

43.    THIS COURT ORDERS that each Beneficial Bondholder with a Voting Claim shall be entitled to one vote as a member of the Affected Unsecured Creditors Class, which vote shall have a value equal to such Beneficial Bondholder's Bondholder Claim Amount. For greater certainty, with respect to voting by Beneficial Bondholders, only the Beneficial Bondholders, and not Depositories or Participant Holders (unless any such Depository or Participant Bondholder is itself a Beneficial Bondholder or such Depository or Participant Holder is voting as proxy holder for one or more Beneficial Bondholders), shall be entitled to vote on the Plan as provided for in this Meeting Order.

44.    THIS COURT ORDERS that for the purposes of this Meeting Order, a Beneficial Bondholder's "**Bondholder Claim Amount**" shall be the total of such Beneficial Bondholder's:

   (a)    pro rata   share of the aggregate amount of the 1988 Bondholder Claim, if any; plus

   (b)    pro rata share of the aggregate amount of the Crossover Bondholder Claim, if any; plus

   (c)    pro rata share of the aggregate amount of the NNCC Bondholder Claim, if any.

45.    THIS COURT ORDERS that for greater certainty, the aggregate amount of the Bondholder Claims for voting purposes shall be as follows:

   (a)    1988 Bondholder Claims: US$205,079,861;

   (b)    Crossover Bondholder Claims: US$3,940,750,260; and

(c)      NNCC Bondholder Claims: US$150,951,562.

46.      THIS COURT ORDERS that the Representatives and Unifor shall be entitled to vote on behalf of their applicable Compensation Creditors, which votes shall constitute, in number, the number of individuals that each Representative or Unifor represents as indicated on the Voting Proxy and shall have a dollar value equal to the aggregate value of such Compensation Claims voted.

47.      THIS COURT ORDERS that any Proxies or votes received by Compensation Creditors which are not submitted by a Representative or Unifor shall be disregarded by the Monitor and shall be considered a nullity with no force and effect.  For greater certainty, the Monitor shall have no obligation to record or report on any such Proxies or votes.

**Calculation of Votes**

48.      THIS COURT ORDERS that notwithstanding any other provision of this Meeting Order, an Affected Unsecured Creditor holding a Voting Claim or Voting Claims regardless of whether such Voting Claim or Voting Claims is held against more than one Canadian Debtor, whether directly, by way of guarantee or otherwise shall have only one (1) vote in respect of the Plan without duplication, and including, without limitation:

(a)      any transferee(s) of multiple Voting Claims shall have one (1) vote in an amount equal to the aggregate of all of the Voting Claims assigned to such transferee (other than any Compensation Claim which is subject to the vote of the Representatives);

(b)      regardless of the number of Bondholder Proxies that are submitted by any one Beneficial Bondholder, each Beneficial Bondholder shall have one (1) vote in an amount equal to the aggregate of such Beneficial Bondholders' Bondholder Claim Amount;

(c)      holders of Duplicative Voting Claims shall only be entitled to one (1) Voting Claim in an amount equal to the largest of such Duplicative Voting Claims (to the extent that such Duplicative Voting Claim is also a Voting Claim); and

(d)      holders of Voting Claims against more than one Canadian Debtor which Voting Claims are based on separate and distinct underlying debts shall have one (1) Voting Claim equal to the aggregate amount of all such separate and distinct Voting Claims.

49.      THIS COURT ORDERS that for the purpose of calculating the two-thirds majority in value of Voting Claims, the aggregate amount of Voting Claims held by all Affected Unsecured Creditors that vote in favour of the Plan (in person or by proxy) shall be divided by the aggregate amount of all Voting Claims held by all Affected Unsecured Creditors that vote on the Plan (in person or by proxy).   For greater certainty, an Affected Unsecured Creditor having Voting Claims against more than one Canadian Debtor shall only be entitled to one vote in respect of such Voting Claims at the Meeting and the Monitor shall have no obligation to tabulate or report on votes with respect to the Canadian Debtors individually.

50.      THIS COURT ORDERS that, for purposes of tabulating the votes cast on any matter that may come before the Meeting, the Chair shall be entitled to rely on any vote cast by a holder of a Voting Proxy or a Bondholder Proxy that has been duly submitted to the Monitor in the manner set forth in this Meeting Order.

**Submission of Proxies and Voting At the Meeting**

51.      THIS COURT ORDERS that regardless of whether an Affected Unsecured Creditor wishes to attend the Meeting in person or submit its Proxy in advance of the Meeting, any Affected Unsecured Creditor that is entitled to vote on the Plan, must, in accordance with applicable Instructions:

(a)      duly complete and sign the applicable Proxy;

(b)      identify himself, herself or another individual in the applicable Proxy as the Person with the power to attend and vote at the Meeting on behalf of such Affected Unsecured Creditor; and

(c)      submit its Proxy to the Monitor by:

      (i)        delivering its Proxy to the Monitor in accordance with paragraph 64, on the date set out in the applicable Instructions, which shall be the date that is three (3) Business Days prior to the scheduled Meeting; or

      (ii)      where the Affected Unsecured Creditor has not submitted its Proxy at least three (3) Business Days in advance of the Meeting, attend the Meeting in Person (or through a nominee) and submit the Proxy to the Monitor at the Meeting at the time specified by the Chair at the Meeting; and

(d)      Notwithstanding the foregoing, all Beneficial Bondholders wishing to vote either in person or by proxy must have submitted its Bondholder Proxy to its Participant Holder and such Participant Holder must have submitted a Master Authentication Form in respect of such Bondholder Proxy so that it is received by Epiq at least four (4) Business Days prior to the Meeting.

52.      THIS COURT ORDERS that in order to be effective, and in addition to the criteria in paragraphs 51(a) and 51(b) above, any Bondholder Proxy must:

(a)      be in respect of single CUSIP;

(b)      state the applicable account number or numbers of the account or accounts maintained by the applicable Beneficial Bondholder with such Participant Holder;

(c)      state the principal amount of Bonds for such CUSIP number that such Beneficial Bondholder holds in each such account or accounts;

(d)      acknowledge that the Beneficial Bondholder has read the Bondholder Meeting Materials; and

(e)      authorize the Participant Holder to provide a copy of the Bondholder's Proxy to Epiq and the Monitor.

53.      THIS COURT ORDERS all Master Authentication Forms must:

(a)      be in respect of a single CUSIP;

(b)      state the name and account number of the Beneficial Bondholder's whose Proxies it is authenticating, and the principal amount of such Bonds for such CUSIP number (excluding any Accrued Interest or Post-Filing Date Interest); and

(c)      attach copies of all relevant Bondholder's Proxies for which the Participant Holder is authenticating the holdings.

54.      THIS COURT ORDERS that if there is any dispute as to the principal amount of Bonds held by any Beneficial Bondholder, the Monitor will request the Participant Holder, if any, who maintains book entry records or other records evidencing such Beneficial Bondholder's ownership of Bonds, to confirm to the Monitor the information provided by such Beneficial Bondholder and such Participant Holder shall provide such requested information forthwith.  If any such dispute is not resolved by such Beneficial Bondholder and the Monitor by the date of the Meeting (or any adjournment thereof), the Monitor shall tabulate the vote for or against the Plan in respect of the disputed principal amount of such Beneficial Bondholder's Bonds separately.  If: (a) any such dispute remains unresolved as of the date of the Sanction Hearing; and (b) the approval or non-approval of the Plan would be affected by the votes cast in respect of such disputed principal amount of Bonds, then such result shall be reported to the Court at the Sanction Hearing and, if necessary, the Monitor may make a request to the Court for directions.

55.      THIS COURT ORDERS that notwithstanding anything in paragraphs 51 - 54 or any minor error or omission in any Proxy that is submitted to the Monitor, the Chair shall have the discretion to accept for voting purposes any Proxy submitted to the Monitor in accordance with the Meeting Order.

**VOTING OF UNRESOLVED CLAIMS**

56.      THIS COURT ORDERS that except as otherwise provided for herein or as may otherwise be ordered by the CCAA Court at the Sanction Hearing, the dollar value of any Unresolved Claims for voting purposes at the Meeting shall be as follows:

(a)      Unresolved Claims that are liquidated in whole or in part:

(i)      for which no notice of disallowance has been issued by the Monitor: the face value of the Affected Unsecured Claim, as filed; or

(ii)      for which a notice of disallowance has been issued by the Monitor: the greater of US$1.00 and the amount allowed by the Monitor in the notice of disallowance or, where there is a decision of a Claims Officer or Order of the CCAA Court, the amount of the Affected Unsecured Claim as set out in such decision or Order; or

(b)      Unresolved Claims that are unliquidated in their entirety: US$1.00

57.      THIS COURT ORDERS that the Monitor shall keep a separate record of votes cast by Affected Unsecured Creditors with Unresolved Claims and shall report to the Court with respect thereto at the Sanction Hearing.  If approval or non-approval of the Plan by Affected Unsecured Creditors could be altered by the votes cast in respect of Unresolved Claims: (a) such result shall be reported to the Court as soon as reasonably practicable after the Meeting; (b) if a deferral of the Sanction Hearing is deemed to be necessary or advisable by the Monitor, the Monitor shall request an appropriate deferral of the Sanction Hearing; and (c) the Monitor may make a request to the Court for directions.

**NEW RESTRUCTURING CLAIMS**

58.      THIS COURT ORDERS that the Monitor shall, no later than three (3) Business Days following the receipt of a Proof of Claim from any Person asserting a New Restructuring Claim, deliver the Ordinary Creditor Meeting Materials by pre-paid first class mail, courier, personal delivery or email to such Person at the Latest Known Address set out in any such Proof of Claim.

**PLAN SANCTION**

59.      THIS COURT ORDERS that the Monitor shall report to the Court the results of any votes taken at the Meeting as soon as reasonably practicable after the Meeting (or any adjournment thereof).  If the Plan is approved by the Required Majority, the Moving Parties may apply to the Court at 10 a.m. on the Sanction Hearing Date for the Sanction Order (the "**Sanction Hearing**").

60.     THIS COURT ORDERS that service of this Meeting Order by the Moving Parties to the parties on the Service List shall constitute good and sufficient service of notice of the Sanction Hearing on all Persons entitled to receive such service and no other form of notice or service need be made and no other materials need be served in respect of the Sanction Hearing, except that any party shall also serve the Service List with any additional materials that it intends to use in support of the Sanction Hearing.

## APPROVAL OF THE PLAN

61.     THIS COURT ORDERS that the Plan must receive an affirmative vote from the Required Majority in order to be approved by the Affected Unsecured Creditors.

62.     THIS COURT ORDERS that the result of any vote at the Meeting shall be binding on all Affected Unsecured Creditors, regardless of whether such Affected Unsecured Creditor was present at or voted at the Meeting.

## SERVICE AND NOTICE

63.     THIS COURT ORDERS that any delivery of any documents, packages, notices or otherwise contemplated by this Meeting Order by the Monitor shall be by way of pre-paid first class mail, courier, personal delivery, facsimile or e-mail to such Persons (or any director, officer or known representative) and that any such service or notice by courier, personal delivery, facsimile or e-mail shall be deemed to be received on the next Business Day following the date of forwarding thereof, or if sent by pre-paid first class mail, on the fourth Business Day after mailing.

64.     THIS COURT ORDERS that any notice or other communication to be given under this Meeting Order by any Person to the Monitor shall be in writing in substantially the form, if any, provided for in this Meeting Order and will be sufficiently given only if delivered by courier, personal delivery, facsimile or e-mail addressed to:

>       Ernst & Young Inc.
>       Court Appointed Monitor of Nortel Networks Corporation & others
>       222 Bay Street, Suite 2400
>       Toronto, Ontario M5K 1J7

| | |
|---|---|
| Attention: | Nortel Monitor |
| Telephone: | 1.866.942.7177 or 416.943.4439 |
| Facsimile: | 416.943.2808 |
| Email: | nortel.monitor@ca.ey.com |

65.    THIS COURT ORDERS that any such notice or other communication by any such Person shall be deemed received only upon actual receipt thereof during normal business hours on a Business Day.

## MONITOR'S ROLE

66.    THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and obligations under the CCAA or any Order made in these CCAA Proceedings including the Monitor's Powers Orders and the New Applicants Order, is hereby directed and empowered to take such other actions and fulfill such other roles as are authorized by this Meeting Order.

67.    THIS COURT ORDERS that: (i) in carrying out the terms of this Meeting Order, the Monitor shall have all the protections given to it by the CCAA, the Monitor's Powers Orders and the New Applicants Order, including the stay of proceedings in its favour; (ii) the Monitor shall incur no liability or obligation as a result of carrying out the provisions of this Meeting Order, save and except for any gross negligence or wilful misconduct on its part; (iii) the Monitor shall be entitled to rely on the books and records of the Canadian Debtors and any information provided by the Canadian Debtors without independent investigation; and (iv) the Monitor shall not be liable for any claims or damages resulting from any errors or omissions in such books, records or information.

68.    THIS COURT ORDERS that the Monitor and the Canadian Debtors are hereby authorized to retain such agents as they deem to be advisable to assist them in connection with calling and conducting the Meeting, including with respect to the distribution of Meeting Materials, the identification of the applicable Affected Unsecured Creditors, and the solicitation of proxies from Persons entitled to vote at the Meeting including.

## MISCELLANEOUS

69.     THIS COURT ORDERS that nothing in this Meeting Order (including the acceptance or determination of any Claim, or any part thereof, as a Voting Claim in accordance with this Meeting Order) has any impact on the status of Voting Claims as Proven Affected Unsecured Claims for purposes of the Plan and, for greater certainty, to the extent that any Voting Claim is also a Proven Affected Unsecured Claim pursuant to any Order of the CCAA Court, agreement (including under the Settlement and Support Agreement) or otherwise, reference to such Proven Affected Unsecured Claims as "Voting Claims" herein shall not alter the status of such Claims as Proven Affected Unsecured Claims.

70.     THIS COURT ORDERS that, for the purposes of this Meeting Order (including the calculation of the Required Majority), all Voting Claims shall be deemed to be denominated in U.S. dollars using the exchange rate specified on Schedule "D" to the Plan. Any Voting Claims that are not denominated in U.S. dollars or Canadian dollars shall be deemed to be converted first to Canadian dollars at the applicable F/X rate and then converted to U.S. dollars pursuant to Schedule "D" to the Plan.

71.     THIS COURT ORDERS that the Moving Parties may from time to time apply to the CCAA Court for advice and directions in the discharge of their powers and duties hereunder.

72.     THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Canadian Debtors, the Monitor and their respective agents in carrying out the terms of this Meeting Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Canadian Debtors and to the Monitor, as an officer of this CCAA Court, as may be necessary or desirable to give effect to this Meeting Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Meeting Order.

**SCHEDULE "A-1" – PUBLICATION NOTICE**

**NOTICE TO AFFECTED UNSECURED CREDITORS**

**OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA LIMITED (THE "CANADIAN DEBTORS")**

NOTICE IS HEREBY GIVEN that a Plan of Compromise and Arrangement (as amended from time to time, the "**Plan**") has been filed with the Ontario Superior Court of Justice (Commercial List) (the "**CCAA Court**") in respect of the Canadian Debtors pursuant to the *Companies' Creditors Arrangement Act,* R.S.C. 1985, c. C-36, as amended (the "**CCAA**").

> **TAKE NOTE THAT THESE MATERIALS relate to the <u>CANADIAN CCAA PROCEEDINGS ONLY</u> and do not apply to any other restructuring proceeding including the Chapter 11 Proceedings of Nortel Networks Inc. and the other U.S. Debtors. If you have claims in both the Canadian and U.S. proceedings, you <u>MUST</u> vote your claims in respect of the Canadian Debtors in this CCAA Proceeding in order for your vote to count with respect to the Canadian Plan and must comply with the applicable procedures in the U.S. Debtors' cases for your claim in respect of the U.S. Debtors. A vote in the U.S. Proceedings will not be recognized in the Canadian CCAA Proceedings and v*ice versa*.**

A copy of the Plan and the Information Circular (the "**Information Circular**") are available at www.ey.com/ca/nortel (the "**Monitor's Website**") under the section entitled "Plan and Other Creditor Meeting Documents". If you wish to receive a printed copy of the Plan or the Information Circular please contact the Monitor at the contact information below.

NOTICE IS ALSO HEREBY GIVEN that a meeting of Affected Unsecured Creditors (the "**Meeting**") will be held at **1 p.m.** on **Tuesday, January 17, 2017** (or such other date as may be set and announced in accordance with the Meeting Order) at **The International Centre Conference Centre (6900 Airport Road, Mississauga, Ontario)**, for the purpose of considering and, if thought advisable, passing, with or without variation, a resolution to approve the Plan (the full text of which resolution is set out in Schedule "A" to the Information Circular) and to transact such other business as may properly come before the Meeting (or any adjournment thereof). The Meeting is being held pursuant to the Order of the Court made on December 1, 2016 (the "**Meeting Order**"). A copy of the Meeting Order is available on the Monitor's Website under the Section "Plan and Other Creditor Meeting Documents". Capitalized terms used but not otherwise defined in this notice have the meaning ascribed to them in the Meeting Order, Information Circular or Plan.

The Plan must receive an affirmative vote of the Required Majority in order to be approved by the Affected Unsecured Creditors. The Required Majority is a majority in number of Affected Unsecured Creditors with Voting Claims, and two-thirds in value of the Voting Claims held by such Affected Unsecured Creditors, in each case who vote (in person or by proxy) on the Plan at the Meeting. The Plan must also be sanctioned by a final order of the CCAA Court (the "**Sanction Order**") pursuant to the CCAA. Notice is also hereby given that, if the Plan is approved by the Required Majority at the Meeting, the Sanction Order will be sought in an application before the CCAA Court at 10:00 AM on January 24, 2017, (or such other date or time as may be set by the CCAA Court), to seek approval of the Plan. If the Plan is approved by the Required Majority and sanctioned by the CCAA Court, then, subject to the satisfaction or waiver of the conditions to effectiveness and implementation of the Plan, all Persons referred to in the Plan (including the Affected Unsecured Creditors) will receive the treatment set out in the Plan.

**AMENDMENTS TO THE PLAN**

The Canadian Debtors and Monitor may, at any time and from time to time prior to or at the Meeting, amend, restate, modify and/or supplement the Plan, subject to the terms of the Plan, provided that: (i) the Monitor or the Chair shall communicate the details of any such amendment, restatement and/or supplement to all Affected Unsecured Creditors present at the Meeting prior to any vote being taken at the Meeting; (ii) the Monitor shall provide notice to the Service List of any such amendment, restatement and/or supplement and shall file a copy thereof with the CCAA Court prior to the Sanction Hearing; and (iii) the Monitor shall post an electronic copy of any such amendment, restatement and/or supplement on the Monitor's Website prior to the Sanction Hearing.

**COMPLETION OF PROXIES**

Any Affected Unsecured Creditor who is entitled to vote at the Meeting and that wishes to vote by proxy or in Person at the Meeting must complete, sign and return the applicable form of proxy included in its creditor package and deliver its proxy to the Monitor in accordance with applicable Instructions.

**Compensation Creditors**

**IF YOU ARE A COMPENSATION CREDITOR COVERED BY THE REPRESENTATION ORDERS, YOUR REPRESENTATIVE WILL BE VOTING ON YOUR BEHALF AND WILL BE VOTING IN FAVOUR OF THE PLAN. YOU SHOULD NOT SUBMIT A SEPARATE PROXY.**

**Participant Holders and Beneficial Bondholder**

**IF YOU ARE A PARTICIPANT HOLDER OR BENEFICIAL BONDHOLDER, YOU MUST CLOSELY FOLLOW THE INSTRUCTIONS FOR THE COMPLETION AND RETURN OF BONDHOLDER PROXIES AND MASTER AUTHENTICATION FORMS.**

The Monitor's contact information is:

Ernst & Young Inc.
Court Appointed Monitor of Nortel Networks Corporation & others
222 Bay Street, Suite 2400
Toronto, Ontario M5K 1J7

Attention:     Nortel Monitor
Telephone:    1.866.942.7177 or 416.943.4439
Facsimile:     416.943.2808
Email:          nortel.monitor@ca.ey.com

This notice is given by the Monitor pursuant to the Meeting Order.

Si vous avez besoin d'une copie du plan ou de l'un des documents relatifs à l'assemblée des créanciers en français, veuillez consulter le site Web du contrôleur ou communiquer avec le contrôleur à l'adresse figurant ci-dessus.

## SCHEDULE "A-2" LETTER TO ORDINARY CREDITORS AND BONDHOLDERS

December _____, 2016

Dear Ordinary Creditors and Bondholders:

**Re:**    Meeting of Affected Unsecured Creditors of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation, Nortel Networks Technology Corporation, Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Limited (the "**Canadian Debtors**") to vote on the Plan of Compromise and Arrangement pursuant to the *Companies' Creditors Arrangement Act* (the "**Plan**")

We enclose in this package the following documents for your review and consideration:

1. Publication Notice;
2. Information Circular;
3. blank form of applicable Proxy and instructions for voting;

> **TAKE NOTE THAT THESE MATERIALS relate to the <u>CANADIAN CCAA PROCEEDINGS ONLY</u> and do not apply to any other restructuring proceeding including the Chapter 11 Proceedings of Nortel Networks Inc. and the other U.S. Debtors. If you have claims in both the Canadian and U.S. proceedings, you <u>MUST</u> vote your claims in respect of the Canadian Debtors in this CCAA Proceeding in order for your vote to count with respect to the Canadian Plan and must comply with the applicable procedures in the U.S. Debtors' cases for your claim in respect of the U.S. Debtors.  A vote in the U.S. Proceedings will not be recognized in the Canadian CCAA Proceedings and *vice versa*.**

Please take note that these materials as well as the other Meeting Materials are also available at www.ey.com/ca/nortel under the section entitled "Plan and Other Creditor Meeting Documents".

You are entitled to attend the Meeting of Affected Unsecured Creditors (the "**Meeting**") of Canadian Debtors as defined in the Meeting Order dated December 1, 2016. The Meeting will be held at **1 p.m. (Toronto time) on Tuesday, January 17, 2017 at The International Centre Conference Centre (6900 Airport Road, Mississauga, Ontario)**. At the Meeting, you will be asked to consider a resolution to approve the Plan.

### ORDINARY CREDITORS

Please follow the enclosed "Instructions to Ordinary Creditors" and complete the enclosed form of proxy and submit it to the Monitor as soon as possible but no later than 4:00 p.m. (Toronto time) on January 11, 2017. Should you plan on attending the Meeting, you may also submit your proxy at that time.

### BONDHOLDERS

Please follow the enclosed "Instructions to Beneficial Bondholders" and complete the enclosed form of proxy and submit to each of your Participant Holder(s) through which you hold Bonds no later than the deadline set out by your Participant Holder(s). Please submit one Proxy per CUSIP, per Participant

Holder. The Participant Holder(s) will provide Epiq Bankruptcy Solutions, LLC (the Monitor's agent) with a summary of voting Proxies received from their clients and copies of your proxies.

You may attend and vote at the Meeting in person but you must have previously had holdings validated by all Participant Holders through which you hold Bonds in order for your vote to count.

### Expected Recovery Range

The current estimated range of recovery per U.S. dollar is approximately 41.5 cents to 45 cents. The estimated range of recovery per Canadian dollar is CA 45 cents to 49 cents, assuming an exchange rate of approximately US $1.00 = CA $1.337650.

Pursuant to the Plan, holders of proven affected unsecured claims will receive distributions in U.S. dollars, unless such claim is predominantly denominated in Canadian dollars (i.e. more than 50% of a claim is in Canadian dollars), in which case creditors will be paid in Canadian dollars. The initial distribution is currently anticipated to be made during April 2017.

### Plan Approval

The Plan must be approved by a majority of creditors voting representing at least two thirds in value of the votes cast by proven affected unsecured creditors, voting as a single class, present in person or represented by proxy at the Meeting. Effectiveness of the Plan is subject to the approval of the Ontario Superior Court of Justice (Commercial List), expiration or final resolution of any appeals taken and confirmation of U.S. Plans by the U.S. Bankruptcy Court.

### Additional Information

For additional information with respect to the Plan, see the section in the accompanying Information Circular entitled *"Summary Information"* (pages 5 - 10). These pages contain important information relating to the distributions under the Plan.

The accompanying Information Circular contains a detailed description of the Plan, as well as certain *pro forma* information. It also includes certain risk factors relating to the implementation of the Plan.

Please give this material your careful consideration and, if you require assistance, consult your financial, tax or other professional advisors.

Si vous avez besoin d'une copie du plan ou de l'un des documents relatifs à l'assemblée des créanciers en français, veuillez consulter le site Web du contrôleur ou communiquer avec le contrôleur à l'adresse figurant ci-dessus.

**Sincerely,**

**ERNST & YOUNG INC., solely in its capacity as Monitor in the CCAA Proceedings of the Canadian Debtors and not in its personal capacity.**

## SCHEDULE "A-3" – LETTER TO COMPENSATION CREDITORS

December _____, 2016

Dear Compensation Creditor,

Re:    Meeting of Affected Unsecured Creditors of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation, Nortel Networks Technology Corporation, Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Limited (the "**Canadian Debtors**") to vote on the Plan of Compromise and Arrangement pursuant to the *Companies' Creditors Arrangement Act* (the "**Plan**")

We enclose in this package the Publication Notice for your review and consideration, in the language of your choice as indicated on file with the Monitor.

Please take note that the other Meeting Materials are available at www.ey.com/ca/nortel (the "**Monitor's Website**") in both English and French under the section entitled "Plan and Other Creditor Meeting Documents".

The purpose of these materials is to provide you with information relating to the Plan and the Meeting of Affected Unsecured Creditors of the Canadian Debtors (the "**Meeting**"). **YOU ARE NOT REQUIRED TO ATTEND THE MEETING OR CAST A VOTE. AS EXPLAINED BELOW, YOUR REPRESENTATIVES WILL VOTE ON YOUR BEHALF.**

**Expected Recovery Range**

Pursuant to the Plan, holders of Compensation Creditor Claims will receive distributions in U.S. dollars, unless such claim is predominantly denominated in Canadian dollars (i.e. more than 50% of a claim is in Canadian dollars), in which case creditors will be paid in Canadian dollars.  The current estimated recovery range per U.S. dollar of claim is approximately 41.5 cents to 45 cents.  The estimated range of recovery per Canadian dollar of claim is CA 45 cents to 49 cents, assuming an exchange rate of approximately US $1.00 = CA $1.337650.  The initial distribution is currently anticipated to be made during April 2017.

*Certain Issues Affecting Amount and Timing of Distributions*

Further to previous court orders issued in the CCAA Proceedings,

- Compensation Creditor Claims will be reduced by the amount of any payments received by creditors from the Health and Welfare Trust (HWT).

- Compensation Creditor distributions will be reduced by the amount of any payments received by creditors through the employee hardship process.

Compensation Creditors with reductions for HWT payments or payments received through the employee hardship process will be provided these amounts on their distribution statement.

Distributions to Compensation Creditors will not be made until the Monitor receives a confirmation regarding employment insurance ("**EI Confirmation**") from Employment and Social Development Canada (ESDC), pursuant to the *Employment Insurance Act*. These Compensation Creditors may therefore receive their initial distributions after the target date of April 2017 and such distributions will be subject to standard source deductions and deductions on account of any employment insurance overpayment received. The amount of any employment insurance overpayment deduction will be determined by ESDC and, in any event, all deductions will be shown on a distribution statement.

<u>If your address on file with the Monitor on the Distribution Record Date is not a Canadian address, you will be treated as a non-resident of Canada for purposes of any applicable non-resident withholding tax. You will not receive a gross-up for any amounts deducted or withheld.</u>

## Voting

Pursuant to certain Representation Orders made in these CCAA Proceedings, Kent Felske, Dany Sylvain, Donald Sproule, David Archibald, Michael Campbell and Sue Kennedy (the "**Representatives**") were appointed as representatives of all current and former non Union represented employees of the Canadian Debtors with the authority to represent you in these CCAA Proceedings. Copies of the Representation Orders can be found on the Monitor's Website under the section entitled "Employees, Former Employee and Disabled Employee Representative Orders".

If you are a member of Unifor (formerly CAW, the "**Union**"), or retained the Union to represent you in the CCAA Proceedings, your Union representative will be voting on your behalf at the meeting.

Your Representatives or Union representative continue to represent you in the CCAA Proceedings and will be voting on your behalf at the Meeting. **<u>As such, you are not required to vote or submit a proxy to the Monitor or to your Representatives.</u>**

The Representatives and Unifor are parties to the Settlement and Support Agreement dated as of October 12, 2016 and **<u>will be voting in favour of the Plan.</u>**

The Meeting is to be held at **1 p.m.** on **Tuesday, January 17, 2017** (or such other date and time as may be set and announced in accordance with the Meeting Order) at **The International Centre Conference Centre (6900 Airport Road, Mississauga, Ontario)**. Although you are welcome to attend the Meeting to observe, your Representatives will vote on your behalf in favour of the Plan.

## Plan Approval

The Plan must be approved by a majority of creditors voting and representing at least two thirds in value of the votes cast by proven affected unsecured creditors, voting as a single class and present in person or represented by proxy at the Meeting. Effectiveness of the Plan is subject to the approval of the Ontario Superior Court of Justice (Commercial List), expiration or final resolution of any appeals taken and confirmation of U.S. Plans by the U.S. Bankruptcy Court.

## Additional Information

For additional information with respect to the Plan, see the section in the Information Circular (available on the Monitor's Website under "Plan and Other Creditor Meeting Documents") entitled *"Summary Information"* (pages 5 - 10). These pages contain important information relating to distributions under the Plan.

Please give this material your careful consideration and, if you require assistance, consult your Court-appointed Representative Counsel or other financial or tax advisors.

Si vous avez besoin d'une copie du plan ou de l'un des documents relatifs à l'assemblée des créanciers en français, veuillez consulter le site Web du contrôleur ou communiquer avec le contrôleur à l'adresse figurant ci-dessus.

Sincerely,

**ERNST & YOUNG INC., solely in its capacity as Monitor in the CCAA Proceedings of the Canadian Debtors and not in its personal capacity**

## SCHEDULE "B-1" - INSTRUCTIONS TO ORDINARY CREDITORS

■, 2016

TO:    ORDINARY CREDITORS OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA LIMITED (THE "CANADIAN DEBTORS")

Re:    **Meeting of Affected Unsecured Creditors of the Canadian Debtors to vote on the Plan of Compromise and Arrangement pursuant to the *Companies' Creditors Arrangement Act* (the "Plan")**

---

**TAKE NOTE THAT THESE MATERIALS** relate to the **CANADIAN CCAA PROCEEDINGS ONLY** and do not apply to any other restructuring proceeding including the Chapter 11 Proceedings of Nortel Networks Inc. and the other U.S. Debtors. If you have claims in both the Canadian and U.S. proceedings, you **MUST** vote your claims in respect of the Canadian Debtors in this CCAA Proceeding in order for your vote to count with respect to the Canadian Plan and must comply with the applicable procedures in the U.S. Debtors' cases for your claim in respect of the U.S. Debtors.  A vote in the U.S. Proceedings will not be recognized in the Canadian CCAA Proceedings and *vice versa*.

---

All of the Meeting Materials, including the Meeting Order, the Plan and the Information Circular are available at www.ey.com/ca/nortel under the section entitled "Plan and Other Creditor Meeting Documents".  If you require a copy of any other of the Meeting Materials please contact the Monitor at the below address and a copy will be provided to you.

The purpose of these materials is to enable you to consider the Plan and vote to accept or reject the resolution to approve the Plan at the Meeting of Affected Unsecured Creditors of the Canadian Debtors to be held at **1 p.m.** on **Tuesday, January 17, 2017** (or such other date as may be set and announced in accordance with the Meeting Order) at **The International Centre Conference Centre (6900 Airport Road, Mississauga, Ontario)**, (the "**Meeting**").

### PROXIES

Ordinary Creditors who wish to vote must complete the enclosed Proxy and provide it to the Monitor by (a) email; (b) courier or personal delivery; or (c) facsimile transmission all at the contact information below, so that it is received by the Monitor no later than **4:00 p.m. (Toronto time) on January 11, 2017,** or else such Person (or its nominee) must attend the Meeting and submit the completed proxy to the Monitor at the Meeting at the time specified by the Chair.

### FURTHER INFORMATION

If you have any questions regarding the process or any of the enclosed forms, please contact Ernst & Young Inc. at the following address:

> Ernst & Young Inc.
> Court Appointed Monitor of Nortel Networks Corporation & others
> 222 Bay Street, Suite 2400
> Toronto, Ontario M5K 1J7
>
> Attention:        Nortel Monitor
> Telephone:      1.866.942.7177 or 416.943.4439
> Facsimile:       416.943.2808
> Email:             nortel.monitor@ca.ey.com

Si vous avez besoin d'une copie du plan ou de l'un des documents relatifs à l'assemblée des créanciers en français, veuillez consulter le site Web du contrôleur ou communiquer avec le contrôleur à l'adresse figurant ci-dessus.

## SCHEDULE "B-2" – ORDINARY CREDITORS' VOTING PROXY

**MEETING OF AFFECTED UNSECURED CREDITORS OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA LIMITED (THE "CANADIAN DEBTORS")**

to be held pursuant to an Order of the Ontario Superior Court of Justice (the "**Meeting Order**") in connection with the Plan of Compromise and Arrangement (the "**Plan**") under the *Companies' Creditors Arrangement Act* (Canada) in respect of the Canadian Debtors at **1 p.m.** on **Tuesday, January 17, 2017** (or such other date as may be set and announced in accordance with the Meeting Order) at **The International Centre Conference Centre (6900 Airport Road, Mississauga, Ontario)** and any adjournment thereof.

*Before completing this Proxy, please read carefully the Instructions accompanying this Proxy for information respecting the proper completion and return of this Proxy.*

**IN ORDER TO VOTE ON THE PLAN, THIS PROXY MUST BE COMPLETED AND SIGNED BY THE ORDINARY CREDITOR AND PROVIDED TO THE MONITOR, ERNST & YOUNG INC., PRIOR TO 4:00 P.M. TORONTO TIME ON JANUARY 11, 2017 OR DELIVERED TO THE MONITOR IN PERSON OR THROUGH ITS NOMINEE AT THE MEETING AT THE TIME SPECIFIED BY THE CHAIR**

**THE UNDERSIGNED ORDINARY CREDITOR** hereby revokes all proxies previously given and nominates, constitutes and appoints _____ (must be an individual – corporations may not be appointed as proxies) or, if no Person is named, Murray McDonald, President of Ernst & Young Inc., the Canadian Monitor (or his designee), as nominee of the Ordinary Creditor, with power of substitution, to attend on behalf of and act for the Ordinary Creditor at the Meeting of Affected Unsecured Creditors of the Canadian Debtors to be held in connection with the Plan and at any and all adjournments thereof, and to vote the Ordinary Creditor's Claim as follows:

A.  (mark one only)                              -and-

❑   VOTE FOR approval of the Plan; or

❑   VOTE AGAINST approval of the Plan;

B.   vote at the nominee's discretion and otherwise act for and on behalf of the undersigned Ordinary Creditor with respect to any amendments or variations to the Plan and to any other matters that may come before the Meeting of the Ordinary Creditors of the Canadian Debtors or any adjournment thereof

If you submit a proxy but do not indicate your vote in part "A" above: (a) if Murray McDonald (or his designee) is your nominee, he will vote this proxy FOR approval of the Plan; and (b) if you have named another individual as your nominee and that person does not vote in person at the meeting, your proxy will be deemed to vote FOR approval of the Plan.

| | |
|---|---|
| Date: | |
| Ordinary Creditor Name (**please print legibly**): | |
| Phone Number: | |
| Email Address: | |
| Mailing Address: | |
| Signature of Ordinary Creditor or, if a corporation, signature of | |

| an authorized signing officer of the corporation and such officer's name and title: | |
|---|---|

## INSTRUCTIONS FOR COMPLETION OF VOTING PROXY

1.  Each Ordinary Creditor has the right to appoint an individual (who need not be an Ordinary Creditor) to attend, act and vote on the Ordinary Creditor's behalf. Such right may be exercised by inserting in the space provided the name of the Person to be appointed. An individual Ordinary Creditor wishing to attend and vote in person at the Meeting of Affected Unsecured Creditors of the Canadian Debtors should insert his or her name in the space provided. **If no name has been inserted in the space provided, the Ordinary Creditor will be deemed to have appointed Murray McDonald, President of Ernst & Young Inc. the Canadian Monitor (or his designee) as the Ordinary Creditor's proxyholder.**

2.  **If you submit a proxy but do not indicate your vote in part "A" of the Proxy: (a) if Murray McDonald (or his designee) is your nominee, he will vote this proxy FOR approval of the Plan; and (b) if you have named another individual as your nominee and that person does not vote in person at the meeting, your proxy will be deemed to vote FOR approval of the Plan.**

3.  If this Proxy is not dated in the space provided, it will be deemed to bear the date on which it is received by the Monitor.

4.  This Proxy must be signed by the Ordinary Creditor or by the Ordinary Creditor's attorney duly authorized in writing or, if the Ordinary Creditor is a corporation, by a duly authorized officer or attorney of the corporation specifying the title of such officer or attorney.

5.  Valid proxies bearing or deemed to bear a later date will revoke this Proxy. If more than one valid proxy for the same Ordinary Creditor and bearing or deemed to bear the same date are received with conflicting instructions, such proxies will be treated as disputed proxies and will not be counted.

6.  Unless you plan to vote in Person at the meeting, you must complete the Voting Proxy and provide it to the Monitor by (a) email; (b) courier or personal delivery; or (c) facsimile transmission all at the contact information below, so that it is received by the Monitor no later than 4:00 p.m. (Toronto time) on January 11, 2017:

> Ernst & Young Inc.
> Court Appointed Monitor of Nortel Networks Corporation & others
> 222 Bay Street, Suite 2400
> Toronto, Ontario M5K 1J7
>
> Attention:        Nortel Monitor
> Telephone:        1.866.942.7177 or 416.943.4439
> Facsimile:        416.943.2808
> Email:  nortel.monitor@ca.ey.com

### SCHEDULE "C-1" - INSTRUCTIONS TO PARTICIPANT HOLDERS
### URGENT – IMMEDIATE ACTION REQUIRED

■, 2016

TO:    ALL PARTICIPANT HOLDERS IN RESPECT OF THE FOLLOWING BONDS ISSUED OR GUARANTEED BY NORTEL NETWORKS CORPORATION AND NORTEL NETWORKS LIMITED:

(i)    US$1,000,000,000 LIBOR + 4.250% FLOATING RATE NOTES DUE 2011 (CUSIP NO. 656569AH3; 656569AK6; C65614AC0) PURSUANT TO AN INDENTURE DATED AS OF JULY 5, 2006, AS AMENDED

(ii) US$550,000,000 10.125% FIXED RATE NOTES DUE 2013 (CUSIP NO. 656569AG5; 656569AE0; C65614AB2) PURSUANT TO AN INDENTURE DATED AS OF JULY 5, 2008, AS AMENDED

(iii) US$1,125,000,000 10.75% FIXED RATE NOTES DUE 2016 (CUSIP NO. 656569AD2; 656569AL4; C65614AD8; 656569AB6; C65614AA4) PURSUANT TO AN INDENTURE DATED AS OF JULY 5, 2008, AS AMENDED

(iv) US$575,000,000 1.75% CONVERTIBLE SENIOR NOTES DUE 2012 (CUSIP NO. 656568AC6; 656568AF9) PURSUANT TO AN INDENTURE DATED AS OF MARCH 28, 2007, AS AMENDED

(collectively, the "**Bonds**")

(v)  US$575,000,000 2.125% CONVERTIBLE SENIOR NOTES DUE 2014 (CUSIP NO. 656568AD4; 656568AE2) PURSUANT TO AN INDENTURE DATED AS OF MARCH 28, 2007, AS AMENDED

(vi) US$150,000,000 7.875% NOTES DUE 2026 (CUSIP NO. 665810AB3) PURSUANT TO AN INDENTURE DATED AS OF FEBRUARY 15, 1996, AS AMENDED

(vii) US$200,000,000 6.875% UNSECURED SENIOR NOTES DUE 2023 (CUSIP NO. 665815AH9) PURSUANT TO AN INDENTURE DATED AS OF NOVEMBER 30, 1988, AS AMENDED

Re:    Meeting of Affected Unsecured Creditors of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation, Nortel Networks Technology Corporation, Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Limited (the "**Canadian Debtors**") to vote on the Plan of Compromise and Arrangement pursuant to the *Companies' Creditors Arrangement Act* (the "**Plan**")

> **TAKE NOTE THAT THESE MATERIALS** relate to the **CANADIAN CCAA PROCEEDINGS ONLY** and do not apply to any other restructuring proceeding including the Chapter 11 Proceedings of Nortel Networks Inc. and the other U.S. Debtors. If you have claims in both the Canadian and U.S. proceedings, you **MUST** vote your claims in respect of the Canadian Debtors in this CCAA Proceeding in order for your vote to count with respect to the Canadian Plan and must comply with the applicable procedures in the U.S. Debtors' cases for your claim in respect of the U.S. Debtors.  A vote in the U.S. Proceedings will not be recognized in the Canadian CCAA Proceedings and *vice versa*.

**ALL MASTER AUTHENTICATION FORMS MUST BE RECEIVED BY EPIQ BANKRUPTCY SOLUTIONS, LLC ("EPIQ") PRIOR TO THE DEADLINE OF 4:00 P.M. ON JANUARY 10, 2017 (THE "DEADLINE")**

**PROOF OF CLAIM**

THE TOTAL AMOUNT OF ALL THE BONDHOLDER CLAIMS HAS BEEN FILED BY THE INDENTURE TRUSTEES.  YOU DO NOT HAVE TO PROVIDE A PROOF OF CLAIM.

**PROXY INSTRUCTIONS**

According to the records of the Depository or the applicable Indenture Trustee, you are the holder or custodian (the "**Participant Holder**") on behalf of a beneficial holder of Bonds.

We enclose Bondholder Mailing Materials to be forwarded by you or your agent to each of the Beneficial Bondholders recorded in your account records or book entry records.  We have also enclosed a form of Master Authentication Form to be used by you or your agent to validate the holdings of your Beneficial Bondholders and to be completed and returned to Epiq prior to the Deadline.

**THE BONDHOLDER MAILING MATERIALS ARE TIME SENSITIVE. PURSUANT TO THE ORDER OF THE CCAA COURT DATED DECEMBER 1, 2016, MUST BE FORWARDED TO EACH OF THE BENEFICIAL BONDHOLDERS TOGETHER WITH THE BONDHOLDER PROXY FOR THAT BENEFICIAL BONDHOLDER WITHOUT DELAY AND NO LATER THAN FIVE (5) BUSINESS DAYS FROM YOUR RECEIPT OF THE BONDHOLDER MAILING MATERIALS.**

Please instruct Beneficial Bondholders to return completed Bondholders Proxies to you to allow sufficient time as may be required by you to complete and submit one or more Master Authentication Forms by the Deadline.   Upon receipt of such completed Bondholder Proxies, you must complete Master Authentication Forms (one per CUSIP) validating the holdings of such Beneficial Bondholders and attaching copies of the Bondholder Proxies received by you.  All Master Authentication Forms must be received by Epiq no later than **4 p.m. (Eastern Time) on January 10, 2017.**

By completing and signing the Bondholder Proxy, the Beneficial Bondholder acknowledges and agrees that it has read the Plan and other Bondholder Meeting Materials and authorizes its Participant Holder to provide a copy of the Bondholder Proxy to Epiq and the Monitor.

**If you have a standard practice for distributing meeting materials to Beneficial Bondholders and for gathering information and proxies or voting instructions from Beneficial Bondholders that differs from the process described above, please contact Epiq immediately to determine whether you are able to use such standard practice as an alternative to the process described above. Epiq may be contacted via email at tabulation@epiqsystems.com with a reference "Nortel Canada" in the subject line.**

All Master Authentication Forms should be returned by (a) mail; (b) courier; or (c) personal delivery to:

**Epiq Bankruptcy Solutions, LLC**
**Attn: Nortel Networks Corporation**
**Master Authentication Form Processing**
**777 Third Avenue, 12th Floor**
**New York, NY 10017**

You can also view copies of documents relating to this process on the following Monitor's Website www.ey.com/ca/nortel in the section entitled "Plan and Other Creditor Meeting Documents".

Si vous avez besoin d'une copie du plan ou de l'un des documents relatifs à l'assemblée des créanciers en français, veuillez consulter le site Web du contrôleur ou communiquer avec le contrôleur à l'adresse figurant ci-dessus.

**SCHEDULE "C-2" - INSTRUCTIONS TO BENEFICIAL BONDHOLDERS**

**URGENT – IMMEDIATE ACTION REQUIRED**

■, 2016

TO:    ALL BENEFICIAL BONDHOLDERS IN RESPECT OF THE FOLLOWING BONDS ISSUED OR GUARANTEED BY NORTEL NETWORKS CORPORATION AND NORTEL NETWORKS LIMITED:

(i)    US$1,000,000,000 LIBOR + 4.250% FLOATING RATE NOTES DUE 2011 (CUSIP NO. 656569AH3; 656569AK6; C65614AC0) PURSUANT TO AN INDENTURE DATED AS OF JULY 5, 2006, AS AMENDED

(ii)   US$550,000,000 10.125% FIXED RATE NOTES DUE 2013 (CUSIP NO. 656569AG5; 656569AE0; C65614AB2) PURSUANT TO AN INDENTURE DATED AS OF JULY 5, 2008, AS AMENDED

(iii)  US$1,125,000,000 10.75% FIXED RATE NOTES DUE 2016 (CUSIP NO. 656569AD2; 656569AL4; C65614AD8; 656569AB6; C65614AA4) PURSUANT TO AN INDENTURE DATED AS OF JULY 5, 2008, AS AMENDED

(iv)  US$575,000,000 1.75% CONVERTIBLE SENIOR NOTES DUE 2012 (CUSIP NO. 656568AC6; 656568AF9) PURSUANT TO AN INDENTURE DATED AS OF MARCH 28, 2007, AS AMENDED

(v)   US$575,000,000 2.125% CONVERTIBLE SENIOR NOTES DUE 2014 (CUSIP NO. 656568AD4; 656568AE2) PURSUANT TO AN INDENTURE DATED AS OF MARCH 28, 2007, AS AMENDED

(vi)  US$150,000,000 7.875% NOTES DUE 2026 (CUSIP NO. 665810AB3) PURSUANT TO AN INDENTURE DATED AS OF FEBRUARY 15, 1996, AS AMENDED

(vii) US$200,000,000 6.875% UNSECURED SENIOR NOTES DUE 2023 (CUSIP NO. 665815AH9) PURSUANT TO AN INDENTURE DATED AS OF NOVEMBER 30, 1988, AS AMENDED

(collectively, the "**Bonds**")

Re:    Meeting of Affected Unsecured Creditors of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation, Nortel Networks Technology Corporation, Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Limited (the "**Canadian Debtors**") to vote on the Plan of Compromise and Arrangement pursuant to the *Companies' Creditors Arrangement Act* (the "**Plan**")

TAKE NOTE THAT THESE MATERIALS relate to the **CANADIAN CCAA PROCEEDINGS ONLY** and do not apply to any other restructuring proceeding including the Chapter 11 Proceedings of Nortel Networks Inc. and the other U.S. Debtors. If you have claims in both the Canadian and U.S. proceedings, you **MUST** vote your claims in respect of the Canadian Debtors in this CCAA Proceeding in order for your vote to count with respect to the Canadian Plan and must comply with the applicable procedures in the U.S. Debtors' cases for your claim in respect of the U.S. Debtors.  A vote in the U.S. Proceedings will not be recognized in the

| **Canadian CCAA Proceedings and *vice versa*.** |
| --- |

Please take note that the Meeting Materials are available at www.ey.com/ca/nortel in the section entitled "Plan and Other Creditor Meeting Documents".

The purpose of these materials is to provide Beneficial Bondholders (i.e., those who own Bonds beneficially themselves and do not hold such Bonds for the benefit of another person) with the documents required to enable them to consider the Plan and to cast their vote to accept or reject the resolution to approve the Plan at the meeting of the Affected Unsecured Creditors to be held at **1 p.m.** on **Tuesday, January 17, 2017** (or such other date as may be set and announced in accordance with the Meeting Order) at **The International Centre Conference Centre (6900 Airport Road, Mississauga, Ontario)**, (the "**Meeting**").

**PROOF OF CLAIM**

THE TOTAL AMOUNT OF ALL THE BONDHOLDER CLAIMS HAS BEEN FILED BY THE INDENTURE TRUSTEES.  THEREFORE, YOU DO NOT HAVE TO PROVIDE A PROOF OF CLAIM.

**PROXY INSTRUCTIONS**

Proxies are only to be filed by Beneficial Bondholders (or their nominee). If you are a trust company, depository, broker, book entry system, agent, custodian or any other entity that holds bonds for another Person, please refer to the Instructions to Participant Holders or contact Epiq or Ernst & Young Inc. for the information applicable to you.

IF YOU ARE A BENEFICIAL BONDHOLDER AND YOU WISH TO VOTE ON THE PLAN, YOU MUST COMPLETE THE ENCLOSED BONDHOLDER PROXY IN ACCORDANCE WITH THE INSTRUCTIONS SET OUT THEREIN AND RETURN IT TO YOUR PARTICIPANT HOLDER PRIOR TO THE DEADLINE REQUIRED BY YOUR PARTICIPANT HOLDER.

**IF YOU ARE A BENEFICIAL BONDHOLDER AND HAVE SIGNED A CREDITOR JOINDER TO THE SETTLEMENT AND SUPPORT AGREEMENT DATED OCTOBER 12, 2016, YOU ARE OBLIGATED TO VOTE IN FAVOUR OF THE PLAN.  IF YOU APPOINT A PROXY OR OTHER NOMINEE OR REPRESENTATIVE TO VOTE ON YOUR BEHALF, YOU MUST INSTRUCT SUCH PROXYHOLDER OR NOMINEE TO VOTE IN FAVOUR OF THE PLAN.**

**INSTRUCTIONS FOR BENEFICIAL BONDHOLDERS**

If you are a Beneficial Bondholder and you wish to vote at the Meeting, you must complete the enclosed Bondholder Proxy and return it to your Participant Holder in the manner you are instructed to by your Participant Holder. **Whether you vote in person or by proxy you must return your completed Bondholder Proxy to your Participant Holder and your Participant Holder must submit a Master Authentication Form validating your holdings and attaching a copy of your Bondholder Proxy by the deadline of 4:00 p.m. on January 10, 2017 (please note this is not the date by which you must have completed your Bondholder Proxy, but the date Master Authentication Forms must be delivered to Epiq after you send back your Bondholder Proxies to your Participant Holder).**

You must:

1.  complete a separate Bondholder Proxy for each CUSIP and each Participant Holder through which you hold Bonds;

2.  provide a copy of your completed Bondholder Proxy to each Participant Holder through which you hold Bonds no later than the deadline set out by your Participant Holder so that it may submit a Master Authentication Form by 4:00 p.m. (Toronto time) on January 10, 2017 (please note this is <u>not</u> the date by which you must have completed your Bondholder Proxy, but the date Master Authentication Forms must be delivered to Epiq <u>after</u> you send back your Bondholder Proxies to your Participant Holder); and

3.  authorize your Participant Holder to provide a copy of your Bondholder Proxy to Epiq or the Monitor.

If no name is indicated in your Proxy, Murray McDonald, President of Ernst & Young Inc., the Canadian Monitor (or his designee) will be named as your proxyholder. If you do not indicate your vote and Murray McDonald (or his designee) is your proxyholder, he will vote FOR approval of the Plan.

In completing and signing your Bondholder Proxy you will be acknowledging that you have read the Canadian Plan and other Bondholder Meeting Materials.

Si vous avez besoin d'une copie du plan ou de l'un des documents relatifs à l'assemblée des créanciers en français, veuillez consulter le site Web du contrôleur ou communiquer avec le contrôleur à l'adresse figurant ci-dessus.

## SCHEDULE "C-3" - BONDHOLDER PROXY

**For Use by Beneficial Bondholders of the following Bonds Issued or Guaranteed by Nortel Networks Corporation or Nortel Networks Limited:**

(i)    US$1,000,000,000 LIBOR + 4.250% FLOATING RATE NOTES DUE 2011 (CUSIP NO. 656569AH3; 656569AK6; C65614AC0) PURSUANT TO AN INDENTURE DATED AS OF JULY 5, 2006, AS AMENDED

(ii)    US$550,000,000 10.125% FIXED RATE NOTES DUE 2013 (CUSIP NO. 656569AG5; 656569AE0; C65614AB2) PURSUANT TO AN INDENTURE DATED AS OF JULY 5, 2008, AS AMENDED

(iii)    US$1,125,000,000 10.75% FIXED RATE NOTES DUE 2016 (CUSIP NO. 656569AD2; 656569AL4; C65614AD8; 656569AB6; C65614AA4) PURSUANT TO AN INDENTURE DATED AS OF JULY 5, 2008, AS AMENDED

(iv)    US$575,000,000 1.75% CONVERTIBLE SENIOR NOTES DUE 2012 (CUSIP NO. 656568AC6; 656568AF9) PURSUANT TO AN INDENTURE DATED AS OF MARCH 28, 2007, AS AMENDED

(v)    US$575,000,000 2.125% CONVERTIBLE SENIOR NOTES DUE 2014 (CUSIP NO. 656568AD4; 656568AE2) PURSUANT TO AN INDENTURE DATED AS OF MARCH 28, 2007, AS AMENDED

(vi)    US$150,000,000 7.875% NOTES DUE 2026 (CUSIP NO. 665810AB3) PURSUANT TO AN INDENTURE DATED AS OF FEBRUARY 15, 1996, AS AMENDED

(vii)    US$200,000,000 6.875% UNSECURED SENIOR NOTES DUE 2023 (CUSIP NO. 665815AH9) PURSUANT TO AN INDENTURE DATED AS OF NOVEMBER 30, 1988, AS AMENDED

(collectively, the **"Bonds"**)

## MEETING OF AFFECTED UNSECURED CREDITORS OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA LIMITED (THE "CANADIAN DEBTORS")

to be held pursuant to an Order of the Ontario Superior Court of Justice (the "**Meeting Order**") in connection with the Plan of Compromise and Arrangement (the "**Plan**") under the *Companies' Creditors Arrangement Act* (Canada) in respect of the Canadian Debtors   at **1 p.m.**  on **Tuesday, January 17, 2017** (or such other date as may be set and announced in accordance with the Meeting Order) at **The International Centre Conference Centre (6900 Airport Road, Mississauga, Ontario)** and any adjournment thereof.

*Before completing this Proxy, please read carefully the instructions accompanying this Proxy for information respecting the proper completion and return of this Proxy.*

A BENEFICIAL BONDHOLDER MUST COMPLETE AND SIGN ONE OR MORE PROXIES (ONE FOR EACH CUSIP AND/OR PARTICIPANT HOLDER) AND RETURN SUCH PROXY TO EACH PARTICIPANT HOLDER THROUGH WHICH IT HOLDS BONDS NO LATER THAN THE DATE SPECIFIED BY EACH SUCH PARTICIPANT HOLDER.

Principal Amount Held by Beneficial Bondholder as of November 21, 2016.

$_____

**THE UNDERSIGNED BENEFICIAL BONDHOLDER** hereby revokes all proxies previously given and nominates, constitutes and appoints _____ or, if no Person is named, Murray McDonald, President of Ernst & Young, Inc., the Canadian Monitor (or his designee), as nominee of the Beneficial Bondholder, with power of substitution, to attend on behalf of and act for the Beneficial Bondholder at the Meeting of Affected Unsecured Creditors of the Canadian Debtors be held in connection with the Plan and at any and all adjournments thereof, and to vote the Beneficial Bondholder's Claims in respect of the Bonds beneficially owned by it as follows:

A.  (mark one only)                                -and-

   ❑  VOTE FOR approval of the Plan; or

   ❑  VOTE AGAINST approval of the Plan;

B.  vote at the nominee's discretion and otherwise act for and on behalf of the undersigned Beneficial Bondholder with respect to any amendments or variations to the Plan and to any other matters that may come before the Meeting of the Affected Unsecured Creditors of the Canadian Debtors or any adjournment thereof

If you submit a proxy but do not indicate your vote in part "A" above: (a) if Murray McDonald (or his designee) is your nominee, he will vote this proxy FOR approval of the Plan; and (b) if you have named another individual as your nominee and that person does not vote in person at the meeting, your proxy will be deemed to vote FOR approval of the Plan.

You will receive a separate Proxy for each account you hold. Please complete and return each Proxy you receive.

**The Beneficial Bondholder hereby acknowledges and agrees that it has read the Plan and other Bondholder Meeting Materials and authorizes its Participant Holder to provide a copy of this Bondholder Proxy to Epiq and the Monitor.**

| | |
|---|---|
| Date: | |
| Beneficial Bondholder Name: (**please print legibly**) | |
| Phone Number: | |
| Email Address: | |
| Mailing Address: | |
| Signature of Beneficial Bondholder or, if a corporation, signature of an authorized signing officer of the corporation and such officer's name and title: | |

**DELIVERY**

Completed Bondholder Proxies must be returned to each relevant Participant Holder as directed by such Participant Holder and by the deadline specified by the applicable Participant Holder.

**Canadian CCAA Proceedings Only**

## <u>INSTRUCTIONS FOR COMPLETION OF PROXY</u>

1.  Each Beneficial Bondholder has the right to appoint an individual (who need not be a Bondholder) to attend, act and vote for and on the Beneficial Bondholder's behalf and such right may be exercised by inserting the name of the Person to be appointed. A Beneficial Bondholder wishing to have a representative attend and vote in Person at the Meeting of Affected Unsecured Creditors of the Canadian Debtors should insert such individual representative's name in the space provided.  **If no name has been inserted in the space provided, the Beneficial Bondholder will be deemed to have appointed Murray McDonald, President of Ernst & Young Inc., the Canadian Monitor (or his designee) as the Beneficial Bondholder's proxyholder.**

2.  If you submit a proxy but do not indicate your vote in part "A" of the Proxy: (a) if Murray McDonald (or his designee) is your nominee, he will vote this proxy FOR approval of the Plan; and (b) if you have named another individual as your nominee and that person does not vote in person at the meeting, your proxy will be deemed to vote FOR approval of the Plan.

3.  If this Proxy is not dated in the space provided, it will be deemed to bear the date on which it is received by the Monitor.

4.  This Proxy must be signed by the Beneficial Bondholder of the applicable Bonds or by his or her attorney duly authorized in writing or, if the Beneficial Bondholder is a corporation, by a duly authorized officer or attorney of the corporation specifying the title of such officer or attorney.

5.  Separate Proxies must be completed for each CUSIP and for each Participant Holder through whom your Bonds are held. Completed Proxies must be returned to the applicable Participant Holder.  Participant Holders will be required to submit Master Authentication Forms validating the holdings of such Beneficial Bondholders and attaching copies of all Proxies to Epiq.

6.  Valid proxies bearing or deemed to bear a later date will revoke this Proxy.  If more than one valid proxy for the same Beneficial Bondholder in respect of the same Bonds and bearing or deemed to bear the same date are received with conflicting instructions, such proxies will be treated as disputed proxies and will not be counted.

**Canadian CCAA Proceedings Only**

## SCHEDULE "C-4" – MASTER AUTHENTICATION FORM

**For Use by Participant Holders validating the holdings of Beneficial Bondholder holding the following Bonds Issued or Guaranteed by Nortel Networks Corporation or Nortel Networks Limited:**

(i)    US$1,000,000,000 LIBOR + 4.250% FLOATING RATE NOTES DUE 2011 (CUSIP NO. 656569AH3; 656569AK6; C65614AC0) PURSUANT TO AN INDENTURE DATED AS OF JULY 5, 2006, AS AMENDED

(ii)   US$550,000,000 10.125% FIXED RATE NOTES DUE 2013 (CUSIP NO. 656569AG5; 656569AE0; C65614AB2) PURSUANT TO AN INDENTURE DATED AS OF JULY 5, 2008, AS AMENDED

(iii) US$1,125,000,000 10.75% FIXED RATE NOTES DUE 2016 (CUSIP NO. 656569AD2; 656569AL4; C65614AD8; 656569AB6; C65614AA4) PURSUANT TO AN INDENTURE DATED AS OF JULY 5, 2008, AS AMENDED

(iv)  US$575,000,000 1.75% CONVERTIBLE SENIOR NOTES DUE 2012 (CUSIP NO. 656568AC6; 656568AF9) PURSUANT TO AN INDENTURE DATED AS OF MARCH 28, 2007, AS AMENDED

(v)   US$575,000,000 2.125% CONVERTIBLE SENIOR NOTES DUE 2014 (CUSIP NO. 656568AD4; 656568AE2) PURSUANT TO AN INDENTURE DATED AS OF MARCH 28, 2007, AS AMENDED

(vi)  US$150,000,000 7.875% NOTES DUE 2026 (CUSIP NO. 665810AB3) PURSUANT TO AN INDENTURE DATED AS OF FEBRUARY 15, 1996, AS AMENDED

(vii) US$200,000,000 6.875% UNSECURED SENIOR NOTES DUE 2023 (CUSIP NO. 665815AH9) PURSUANT TO AN INDENTURE DATED AS OF NOVEMBER 30, 1988, AS AMENDED

(collectively, the **"Bonds"**)

## MEETING OF AFFECTED UNSECURED CREDITORS OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA LIMITED (THE "CANADIAN DEBTORS")

to be held pursuant to an Order of the Ontario Superior Court of Justice (the "**Meeting Order**") in connection with the Plan of Compromise and Arrangement (the "**Plan**") under the *Companies' Creditors Arrangement Act* (Canada) in respect of the Canadian Debtors at **1 p.m.** on **Tuesday, January 17, 2017,** (or such other date as may be set and announced in accordance with the Meeting Order) at **The International Centre Conference Centre (6900 Airport Road, Mississauga, Ontario)** and any adjournment thereof.

*Before completing this Master Authentication Form, please carefully read the accompanying instructions for information respecting the proper completion and return of this Master Authentication Forms.*

THIS MASTER AUTHENTICATION FORM MUST BE COMPLETED AND SIGNED IN ACCORDANCE WITH THE INSTRUCTIONS. PURSUANT TO THE ORDER OF THE CCAA COURT DATED DECEMBER 1, 2016, YOU MUST ATTACH COPIES OF ALL BONDHOLDER PROXIES RELEVANT TO THE MASTER AUTHENTICATION FORM AND IT MUST BE

PROVIDED TO EPIQ BANKRUPTCY SOLUTIONS, LLC PRIOR TO **4:00 P.M. EASTERN TIME ON JANUARY 10, 2017.**

**USE ONE MASTER AUTHENTICATION FORM PER CUSIP. PLEASE CHECK A BOX BELOW TO INDICATE TO WHICH CUSIP THIS MASTER AUTHENTICATION FORM PERTAINS**

| | | | | | |
|---|---|---|---|---|---|
| ❑ | 656568AC6 | ❑ | 656569AD2 | ❑ | 656569AL4 |
| ❑ | 656568AD4 | ❑ | 656569AE0 | ❑ | 665815AH9 |
| ❑ | 656568AE2 | ❑ | 656569AG5 | ❑ | C65614AA4 |
| ❑ | 656568AF9 | ❑ | 656569AH3 | ❑ | C65614AB2 |
| ❑ | 656569AB6 | ❑ | 656569AK6 | ❑ | C65614AD8 |
| ❑ | C65614AC0 | ❑ | 665815AH9 | | |

**PART I:  Principal Amount of Bonds as at November 21, 2016 (the "Voting Record Date"):**

| Beneficial Bondholder Name | Account # | Principal Amount of Bonds at Voting Record Date |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

(If additional space is required, please attach extra pages)

**Canadian CCAA Proceedings Only**

Copies of all Proxies received and reflected above (or on the attached extra pages) are attached to this Master Authentication Form.


**PART II: PARTICIPANT HOLDER CERTIFICATION AND INFORMATION**

The undersigned certifies that as of the Voting Record Date (listed above), the principal value of the holdings of the Beneficial Bondholders listed above (or on the attached extra pages) is true and accurate.

Date Submitted: _____, 2016          Participant No.          _____

Print Name of Participant Holder (**please print legibly**): _____

Signature: _____

Authorized Participant Holder Employee Contact (Print Name): _____

Title: _____

Tel. No.: _____Fax No.: _____

E-Mail: _____

**MEDALLION STAMP BELOW**:

**DELIVERY**

Completed Master Authentication Forms should be sent to:

Epiq Bankruptcy Solutions, LLC
Attn: Nortel Networks Corporation
Master Authentication Form Processing
777 Third Avenue, 12th Floor
New York, NY 10017

Master Authentication Forms may be delivered by mail, courier or personal delivery, all at the contact information above, and must be received by Epiq **no later than 4:00 p.m. (Eastern Time) on January 10, 2017.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS FORM OR THE PROCEDURES, PLEASE CONTACT THE MONITOR'S AGENT BY EMAIL AT TABULATION@EPIQSYSTEMS.COM AND REFERENCE "NORTEL CANADA" IN THE SUBJECT LINE.**

**Canadian CCAA Proceedings Only**

## <u>INSTRUCTIONS FOR COMPLETION OF MASTER AUTHENTICATION FORMS</u>

1.     **You must use a separate Master Authentication Form for each CUSIP.**

2.     Each Participant Holder providing a Master Authentication Form must complete Parts I and II of the Master Authentication Form and provide all information requested therein. Please take notice of the following:

        A.     Part I relates to Bonds for which you have received Proxies from Beneficial Bondholders; and

        B.     Part II is your certification – you must complete this section and sign it.

3.     You must attach copies of each Bondholder Proxy to the Master Authentication Form. **If you receive further Proxies after you have submitted a Master Authentication Form, you may submit one or more further Master Authentication Forms as long as all Master Authentication Forms are received by the Deadline (defined below).**

4.     If this Master Authentication Form is not dated in the space provided, it will be deemed to bear the date on which it is received by Epiq.

5.     The Participant Holder must complete the Master Authentication Form, sign, and certify in order for it to be valid.

6.     Master Authentication Forms (including the attached Bondholder Proxies) may be delivered to Epiq at the address below, and must be received by Epiq **no later than 4:00 p.m. (Eastern Time) on January 10, 2017 (the "Deadline").**

Epiq Bankruptcy Solutions, LLC
Attn: Nortel Networks Corporation
Master Authentication Form Processing
777 Third Avenue, 12th Floor
New York, NY 10017

**IF YOU HAVE ANY QUESTIONS REGARDING THIS FORM OR THE PROCEDURES, PLEASE CONTACT THE MONITOR'S AGENT BY EMAIL AT TABULATION@EPIQSYSTEMS.COM AND REFERENCE "NORTEL CANADA" IN THE SUBJECT LINE.**

# TAB 4

Court File No. 09-CL-7950

*ONTARIO*

**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | THURSDAY, THE 1ST DAY |
| | ) | |
| JUSTICE NEWBOULD | ) | OF DECEMBER, 2016 |

IN THE MATTER OF THE COMPANIES' CREDITORS
ARRANGEMENT ACT,

R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL
NETWORKS INTERNATIONAL CORPORATION, NORTEL
NETWORKS TECHNOLOGY CORPORATION, NORTEL
COMMUNICATIONS INC., ARCHITEL SYSTEMS
CORPORATION AND NORTHERN TELECOM CANADA
LTD.

APPLICATION UNDER THE COMPANIES' CREDITORS
ARRANGEMENT ACT,

R.S.C. 1985, c. C-36, AS AMENDED

**POST-FILING CLAIMS BAR DATE ORDER**

THIS MOTION, made by Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, Nortel Networks International Corporation, Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Ltd. (collectively, the "**Canadian Debtors**" and each, individually, a "**Canadian Debtor**") jointly with Ernst & Young Inc. in its capacity as monitor (the "**Monitor**") of the Canadian Debtors for an order, *inter alia*, establishing a claims bar date for Post-Filing Claims (defined below) was heard this day at 330 University Avenue, Toronto, Ontario.

ON READING the Notice of Motion, the One Hundred and Thirty Third report of the Monitor dated November 23, 2016 (the "**One Hundred and Thirty Third Report**"), and on hearing the submissions of counsel for the Monitor, ■, no other parties appearing for the other parties served with the Motion Record, although duly served as appears from the affidavit of service, filed:

**SERVICE**

1.     THIS COURT ORDERS that the time for service of the Notice of Motion, the Motion Record and the One Hundred and Thirty Third Report is hereby abridged and validated such that this Motion is properly returnable today and service upon any interested party other than those parties served is hereby dispensed with.

**DEFINITIONS**

2.     THIS COURT ORDERS that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Meeting Order.

3.     THIS COURT ORDERS that for the purposes of this Order, in addition to the terms defined elsewhere in this Order, the following terms shall have the following meanings:

(a)     "**Claim**" means:

(i)     any right of any Person against the Canadian Debtors, or any of them, in connection with any indebtedness, liability or obligation of any kind of the Canadian Debtors or any of them, whether liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present, future, known or unknown, by guarantee, surety or otherwise and whether or not such right is executory in nature, including the right or ability of any Person to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future; and

(ii)     any right of any Person against the Directors or Officers of the Canadian Debtors, or any of them, that relates to a Claim set out in (i) above for which the Directors or Officers of the Canadian Debtors are by law liable to pay in their capacity as Directors or Officers or in any other capacity, including without limitation, any capacity relating to the administration, management or oversight of any of the pension plans or employee benefit plans administered or sponsored by the Canadian Debtors or their subsidiaries;

(b)     "**Claims Officer**" has the meaning ascribed to it in the Claims Resolution Order;

(c)     "**Claims Resolution Order**" means the Claims Resolution Order made in these CCAA Proceedings dated September 16, 2010;

(d)     "**Creditor**" means any Person having a Post-Filing Claim;

(e)     "**Directors or Officers**" means all former directors and officers of the Canadian Debtors;

(f)     "**Dispute Notice**" means a written notice to the Monitor, in substantially the form attached as Schedule "D" to this Order, delivered to the Monitor by a Creditor who has received a Notice of Disallowance, of its intention to dispute such Notice of Disallowance;

(g)     "**Initial Order**" means the Initial Order made in these CCAA Proceedings dated January 14, 2009, as amended and restated;

(h)     "**Intercompany Claims**" has the meaning given to it in the Intercompany Claims Order;

(i)     "**Intercompany Claims Order**" means the Intercompany Claims Procedure Order made in these CCAA Proceedings dated July 27, 2012;

(j)     "**New Applicants**" means Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Ltd.;

(k)     "**Notice of Disallowance**" means a notice of disallowance substantially in the form attached as Schedule "C" to this Order;

(l)     "**Notice Regarding Post-Filing Claims**" means the notice substantially in the form attached as Schedule "A" to this Order;

(m)     "**Plan Effective Date**" has the meaning given to it in the plan;

(n)     "**Post-Filing Claim**" has the meaning given to it in paragraph 12;

(o)     "**Post-Filing Claims Bar Date**" means, in respect of each Post-Filing Claim and each Creditor asserting a Post-Filing Claim, 4:00 p.m. (prevailing time in Toronto, Ontario, Canada) on:

    (i)     for Post-Filing Claims existing as of December 1, 2016, January 6, 2017; and

    (ii)     for Post-Filing Claims that come into existence after December 1, 2016, the later of January 6, 2017 and the date that is 30 days after the facts giving rise to the Post-Filing Claim occur but in any event no later than 15 days after the Plan Effective Date;

(p)     "**Post-Filing Period**" means, as it relates to Post-Filing Claims, the time period including and since:

    (i)     Subject to (ii) below, in respect of Claims against the Canadian Debtors other than the New Applicants, January 14, 2009;

    (ii)     Notwithstanding (i) above, in respect of Inter-Company Claims against the Canadian Debtors (other than the New Applicants), the time period including and since September 30, 2011; and

    (iii)     March 18, 2016 in respect of the New Applicants;

(q)     "**Proof of Claim**" means a Proof of Claim form in substantially the form attached as Schedule "B" to this Order;

(r)    "**Proof of Claim Document Package**" means a document package that includes a copy of:

(i)    the Notice to Post-Filing Creditors;

(ii)    a Proof of Claim; and

(iii)    such other materials as the Monitor may consider appropriate or desirable;

(s)    "**Reference Date**" means:

(i)    Subject to (ii) below, in respect of Claims against the Canadian Debtors other than the New Applicants, January 14, 2009;

(ii)    Notwithstanding (i) above, in respect of Inter-Company Claims against the Canadian Debtors (other than the New Applicants), the Reference Date shall be September 30, 2011; and

(iii)    March 18, 2016 in respect of the New Applicants;

(t)    "**Representative**" means any current or future liquidators, administrators, receivers or other Persons having similar responsibilities appointed in connection with the administration, liquidation, receivership or other wind down of any Person, including the estates of any affiliates of the Canadian Debtors; and

(u)    "**Website**" means www.ey.com/ca/nortel.

## Form of Documents

4.    THIS COURT ORDERS that the:

(a)    form of Notice Regarding Post-Filing Claims  (Schedule A);

(b)    form of Proof of Claim and Guide to Completing Proof of Claim (Schedule B);

(c)    form of Notice of Disallowance (Schedule C); and

(d)      form of Dispute Notice (Schedule D),

be and are hereby approved.

## MONITOR'S ROLE

5.      THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and obligations under the CCAA or any Order made in these CCAA Proceedings including the Monitor's Powers Orders, is hereby directed and empowered to take such other actions and fulfill such other roles as are authorized by this Order.

6.      THIS COURT ORDERS that: (i) in carrying out the terms of this Order, the Monitor shall have all the protections given to it by the CCAA and the Monitor's Powers Orders, including the stay of proceedings in its favour; (ii) the Monitor shall incur no liability or obligation as a result of carrying out the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part; (iii) the Monitor shall be entitled to rely on the books and records of the Canadian Debtors and any information provided by the Canadian Debtors without independent investigation; and (iv) the Monitor shall not be liable for any claims or damages resulting from any errors or omissions in such books, records or information.

7.      THIS COURT ORDERS that the Monitor may authorize counsel to take any steps or perform any duties to be taken or performed by the Monitor under this Order, on behalf of and in the stead of the Monitor.

## POST-FILING CLAIMS

### Publication of Notice Regarding Post-Filing Claims

8.      THIS COURT ORDERS the Monitor shall no later than three (3) Business Days following the making of this Order, post a copy of the Proof of Claim Document Package on the Website and serve a copy of the Notice Regarding Post-Filing Claims on the service list in the CCAA Proceedings.

9.      THIS COURT ORDERS that the Monitor shall publish the Notice Regarding Post-Filing Claims in Wall Street Journal (Global Edition) and Globe and Mail (National Edition) as soon as practicable.

10.      THIS COURT ORDERS that other than as provided for herein with respect to notice in paragraphs 8 and 9 above, neither the Canadian Debtors nor the Monitor are under any obligation to give notice to any Person.

**Post-Filing Claims**

11.      THIS COURT ORDERS that any Person that wishes to assert a Post-Filing Claim shall be required to file a Proof of Claim on or before the Post-Filing Claims Bar Date.

12.      THIS COURT ORDERS that "**Post-Filing Claim**" shall mean any Claim which (a) is based on facts arising during the Post-Filing Period, (b) relates to the time period after the Reference Date; or (c) would be a claim provable in bankruptcy had the Canadian Debtors against whom the Claim is asserted become bankrupt between the Reference Date and the date which is 15 days after the Plan Effective Date, but does not include:

(a)      Any debt, liability or obligation of the Canadian Debtors existing now or subsequent to this Order for payment for goods or services provided to the Canadian Debtors relating to the ongoing administration of the Canadian Debtors' estate, including in connection with the implementation of the Plan, that is payable by the Canadian Debtors in the ordinary course of business;

(b)      Any Claim that is secured by the Administration Charge (as defined in the Initial Order);

(c)      Claims for professional fees and expenses that are currently being paid by the Canadian Debtors in these CCAA Proceedings;

(d)      Any Claim that would be a Post-Filing Claim but has already been asserted, addressed, claimed, alleged, or otherwise dealt with in an existing Proof of Claim

filed pursuant to one of the other Claims Orders, or otherwise asserted in a filing with the Court in these CCAA Proceedings;

(e)     Restructuring Claims (as defined in the Claims Procedure Order); and

(f)     Any Claim settled, resolved or released pursuant to the Settlement and Support Agreement.

13.    THIS COURT ORDERS that all Proofs of Claim shall be filed with the Monitor and any Creditor that does not file a Proof of Claim on or before the Post-Filing Claims Bar Date (a) shall be and is hereby forever barred from making or enforcing any Post-Filing Claim against the Canadian Debtors or any of them, or against the Directors or Officers, or any of them; and (b) shall not be entitled to further notice in, and shall not be entitled to participate as a creditor in, these proceedings with respect to any Post-Filing Claim.

14.    THIS COURT ORDERS that any Creditor shall include any and all Post-Filing Claims it asserts against any Canadian Debtor in a single Proof of Claim.

15.    THIS COURT ORDERS that if a Post-Filing Claim is being asserted against any Director or Officer, such Post-Filing Claim shall be included in the same Proof of Claim, and shall provide reasonable particulars of the individuals against whom such Post-Filing Claim is asserted and the nature and basis of the Post-Filing Claim against such individuals.

16.    THIS COURT ORDERS that this Order shall not operate to revive any Post-Filing Claims that were already barred by the expiration of a statute of limitation or other notice or limitation period, or any other time period of similar effect, under any applicable law.

17.    THIS COURT ORDERS that if any Post-Filing Claim arose in a currency other than Canadian dollars, then the Creditor making such Post-Filing Claim shall complete its Proof of Claim indicating the amount of the Post-Filing Claim in such other currency, rather than in Canadian dollars.

18.    THIS COURT ORDERS that the Monitor may, where it is satisfied that a Post-Filing Claim has been adequately filed, waive strict compliance with the requirements of this Order as to the completion and execution of Proofs of Claim.

19.    THIS COURT ORDERS that the Monitor, in consultation with any named Director or Officer, where applicable, shall review all Proofs of Claim filed on or before the Post-Filing Claims Bar Date and the Monitor may accept the Post-Filing Claim as filed, or may disallow the Post-Filing Claim (in whole or in part) by way of Notice of Disallowance delivered to the Creditor.

20.    THIS COURT ORDERS that where a Notice of Disallowance has been delivered to a Creditor by the Monitor, the procedures set out in paragraphs 22 through 23 shall thereafter apply.

21.    THIS COURT ORDERS that at any time, the Monitor may request additional information from a Creditor with respect to a Post-Filing Claim, and the Monitor may request that the Creditor file a revised Proof of Claim.

**Dispute Notice**

22.    THIS COURT ORDERS that any Creditor that intends to dispute a Notice of Disallowance shall file a Dispute Notice with the Monitor as soon as reasonably possible but in any event such that the Dispute Notice shall be received by the Monitor on or before 4:00 p.m. (prevailing time in Toronto, Ontario, Canada) on the day that is ten (10) Business Days after the Notice of Disallowance is deemed received by the Creditor in accordance with paragraph 37 of this Order.  The filing of a Dispute Notice with the Monitor within the time allowed therefore shall constitute an application to have the Post-Filing Claim determined as set out in paragraphs 24 to 29 hereof.

23.    THIS COURT ORDERS that where a Creditor fails to file a Dispute Notice with the Monitor within the time allowed therefore, the Post-Filing Claim shall be deemed to be as set out in the Notice of Disallowance and such Notice of Disallowance shall be final and binding for all purposes.

**Resolution:  Post-Filing Claims**

24.    THIS COURT ORDERS that in the event a Creditor files a Proof of Claim asserting a Post-Filing Claim that is excluded by virtue of paragraph 12(a) through (f) above, such Proof of Claim (or the portion thereof that contains a Claim excluded by virtue of paragraph 12(a) through (f)) shall have no force and effect and shall be regarded as a nullity in all respects not capable of creating any claim, right or liability against the Canadian Debtors. The Monitor shall notify any Creditor that has filed such a Proof of Claim that its Proof of Claim (or portion thereof) is a nullity and may, where a portion of the Proof of Claim does assert a Post-Filing Claim, request that the Creditor file a revised Proof of Claim. Any Creditor wishing to dispute such notice shall bring a motion before this Court within seven (7) days of receiving such notice from the Monitor.

25.    THIS COURT ORDERS that if a Creditor delivers a Dispute Notice to the Monitor, the Creditor, Monitor and a Director or Officer, if the Post-Filing Claim in question is asserted against such Director or Officer, shall attempt to consensually resolve and settle the dispute.

26.    THIS COURT ORDERS that in the event the dispute raised in the Dispute Notice is not settled within a time period or in a manner satisfactory to the Monitor, the Monitor shall refer the dispute to a Claims Officer for determination, or in the alternative and in its sole discretion, bring the dispute before the Court for determination or directions regarding determination. If the Monitor refers the dispute to a Claims Officer for determination, then (a) the Claims Officer shall determine the manner, if any, in which evidence may be brought before the Claims Officer by the parties as well as any other matters, procedural or substantive, which may arise in respect of the Claim Officer's determination of the Post-Filing Claim and (b) the provisions of paragraphs 27 and 28 of this Order shall apply to the determination of the Claims Officer.  For greater certainty, the Claims Officer may require written submissions and may limit submissions to written submissions, at the Claims Officer's discretion.

27.    THIS COURT ORDERS that the Claims Officer shall, no later than (a) thirty (30) calendar days from the closing of submissions (whether written or oral or both), or (b) such

other date as the Claims Officer may order, notify the Creditor and the Monitor and, if the Post-Filing Claim in question is asserted against a Director or Officer, such Director of Officer, in writing of the Claims Officer's determination of such Post-Filing Claim.

28.     THIS COURT ORDERS that the Claims Officer's determination of any Post-Filing Claim shall be final and binding, unless within ten (10) Business Days of the delivery of the Claims Officer's determination, the Monitor, Creditor, or a Director or Officer if the Post-Filing Claim in question is asserted against such Director or Officer, has filed with this Court an appeal of the Claims Officer's determination, by way of notice of motion.

29.     THIS COURT ORDERS that the amount and status of every Post-Filing Claim as finally determined in accordance with the forms and procedures set out in this Order, including any determination as to the nature, amount, value, priority or validity of any Post-Filing Claim, shall be final and binding for all purposes, including the Plan, and that no other Post-Filing Claim may be made by such Creditor.

**Notice of Transfers**

30.     THIS COURT ORDERS that the Monitor shall have no obligation to give notice to or to otherwise deal with a transferee or assignee of a Post-Filing Claim as the Creditor in respect thereof unless and until (a) actual written notice of transfer or assignment, together with satisfactory evidence of such transfer or assignment, shall have been received by the Monitor, and (b) the Monitor shall have acknowledged in writing such transfer or assignment, and thereafter such transferee or assignee shall for the purposes hereof constitute the "Creditor" in respect of such Post-Filing Claim.  Any such transferee or assignee of a Post-Filing Claim, and such Post-Filing Claim, shall be bound by any notices given or steps taken in respect of such Post-Filing Claim in accordance with this Order prior to the written acknowledgment by the Monitor of such transfer or assignment.

31.     THIS COURT ORDERS that if the holder of a Claim has transferred or assigned the whole of such Post-Filing Claim to more than one Person or part of such Post-Filing Claim to another Person or Persons, such transfer or assignment shall not create a separate Post-Filing Claim or Claims and such Post-Filing Claim shall continue to constitute and be dealt with as a

single Post-Filing Claim notwithstanding such transfer or assignment. The Monitor shall in each such case not be bound to acknowledge or recognize any such transfer or assignment and shall be entitled to give notices to and to otherwise deal with such Post-Filing Claim only as a whole and then only to and with the Person last holding such Post-Filing Claim in whole as the Creditor in respect of such Post-Filing Claim.  Provided that a transfer or assignment of the Post-Filing Claim has taken place in accordance with paragraph 30 of this Order and the Monitor has acknowledged in writing such transfer or assignment, the Person last holding such Post-Filing Claim in whole as the Creditor in respect of such Post-Filing Claim may by notice in writing to the Monitor direct that subsequent dealings in respect of such Post-Filing Claim, but only as a whole, shall be with a specified Person. In such event, such Post-Filing Creditor, such transferee or assignee of the Post-Filing Claim and the whole of such Post-Filing Claim shall be bound by any notices given or steps taken in respect of such Post-Filing Claim by or with respect to such Person in accordance with this Order.

32.     THIS COURT ORDERS that the transferee or assignee of any Post-Filing Claim (a) shall take the Post-Filing Claim subject to the rights and obligations of the transferor/assignor of the Post-Filing Claim, and subject to the rights of any Canadian Debtor against any such transferor or assignor, including any rights of set-off which any Canadian Debtor had against such transferor or assignor, and (b) cannot use any transferred or assigned Post-Filing Claim to reduce any amount owing by the transferee or assignee to any Canadian Debtor, whether by way of set-off, application, merger, consolidation or otherwise.

**Representatives**

33.     THIS COURT ORDERS that the Monitor shall have no obligation to give notice or otherwise deal with a Representative unless and until the Monitor has:

> (a)     received actual written notice of the appointment of the Representative together with satisfactory evidence of such appointment; and

> (b)     acknowledged in writing such appointment,

and thereafter, such Representative shall for all purposes hereof constitute a "Creditor".  Any such Representative shall be bound by any notices given or steps taken in respect of a Post-

Filing Claim in accordance with this Order prior to the appointment of such Representative or written acknowledgement by the Monitor of the appointment in accordance with paragraph 33(b).

34.     THIS COURT ORDERS that any Representative appointed (a) shall take the Post-Filing Claim subject to the rights and obligations of the Creditor of the Post-Filing Claim, and subject to the rights of any Canadian Debtor against any such Creditor, including any rights of set-off which any Canadian Debtor had against such Creditor, and (b) cannot use the fact of the appointment of the Representative to reduce any amount owing by the Creditor to any Canadian Debtor, whether by way of set-off, application, merger, consolidation or otherwise.

**Directions**

35.     THIS COURT ORDERS that the Monitor may, at any time, and with such notice as the Court may require, seek directions from the Court with respect to this Order and the claims process set out herein, including the forms attached as Schedules to this Order.

**Previous Claims Orders**

36.     THIS COURT ORDERS that, for the avoidance of doubt, nothing in this Order supersedes or shall be deemed to supersede any provision of the Cross-Border Protocol (as set out in the Initial Order), the Cross-Border Claims Protocol (as defined in the Claims Procedure Order) or the Claims Orders, any settlement or resolution of any Claim, including a Claim relating to the Post-Filing Period, any decision of any Claim Officer regarding a Claim or any Order of this Court or another Court of competent jurisdiction regarding any Claim.

**Service and Notice**

37.     THIS COURT ORDERS that the Monitor is at liberty to deliver any letters, notices or other documents to Creditors or other interested Persons, by forwarding true copies thereof by pre-paid first class mail, courier, personal delivery, facsimile or e-mail to such Persons (or any director, officer or known Representative) at the address as last shown on the records of the Canadian Debtors and that any such service or notice by courier, personal delivery, facsimile or

e-mail shall be deemed to be received on the next Business Day following the date of forwarding thereof, or if sent by pre-paid first class mail, on the fourth Business Day after mailing.  Notwithstanding anything to the contrary in this paragraph, Notices of Disallowance shall be sent only by e-mail, registered mail or by courier.

38.    THIS COURT ORDERS that any notice or other communication to be given under this Order by a Creditor to the Monitor shall be in writing in substantially the form, if any, provided for in this Order and will be sufficiently given only if given by pre-paid first class mail, courier, personal delivery, facsimile or e-mail addressed to:

> ERNST & YOUNG INC.
> Court-appointed Monitor of Nortel Networks Corporation & others
> 222 Bay Street, Suite 2400
> Toronto, Ontario
> Canada M5K 1J7
>
> Attention:       Nortel Claims
> Telephone:       1-416-943-4439 or 1-866-942-7177
> E-mail           nortel.monitor@ca.ey.com
> Fax:             1-416-943-2808

Any such notice or other communication by a Creditor shall be deemed received only upon actual receipt thereof during normal business hours on a Business Day.

39.    THIS COURT ORDERS that where, pursuant to this Order, consultation is to occur with a Director or Officer or notice is to be given to any such Person, and such Director or Officer is represented by counsel, then such consultation or notice may be with or to such counsel.

**Miscellaneous**

40.    THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Canadian Debtors, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Canadian Debtors and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative

status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

_____

## SCHEDULE "A"

---

### NOTICE TO CREDITORS
### OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA LIMITED
(hereinafter referred to as the "**Canadian Debtors**")

---

**RE: NOTICE OF POST-FILING CLAIMS PROCEDURE FOR THE CANADIAN DEBTORS PURSUANT TO THE *COMPANIES' CREDITORS ARRANGEMENT ACT* (the "CCAA")**

**PLEASE TAKE NOTICE** that this notice is being published pursuant to an Order of the Superior Court of Justice of Ontario made December 1, 2016 (the "**Order**"). Pursuant to the Order, creditors who believe they have a Post-Filing Claim, and have not previously filed such Post-Filing Claim in another Proof of Claim against one or more of the Canadian Debtors (or any Director or Officer) must file a proof of claim in accordance with the terms of the Order.

Creditors who have supplied goods or services to the Canadian Debtors during the Post-Filing Period payable in the ordinary course need not file a Proof of Claim. Certain other exemptions exist.  Please refer to the Order or contact the Monitor at the address below if you are not sure whether you need to file a Proof of Claim.

Creditors may obtain a copy of the Order and a Proof of Claim Document Package from the website of Ernst & Young Inc., Court-appointed monitor of the Canadian Debtors (the "**Monitor**"), at "www.ey.com/ca/nortel", or by contacting the Monitor by telephone (1-416-943-4439 or 1-866-942-7177) or by fax (1-416-943-2808).

**Completed Proofs of Claim must be received by the Monitor by 4:00 p.m. (prevailing Eastern Time) on the applicable Post-Filing Claims Bar Date, as set out in the Order. The Post-Filing Claims Bar Date for most Post-Filing Claims is January 6, 2017. It is your responsibility to ensure the Monitor receives your Proof of Claim by the applicable Post-Filing Claims Bar Date.**

**PLEASE NOTE that these procedures apply ONLY to Post-Filing Claims against the Canadian Debtors in the CCAA Proceedings. In particular, these procedures do <u>not</u> apply to claims against any of the Canadian Debtors' affiliates that are subject to creditor protection proceedings in other jurisdictions, including in the United States. Separate**

proceedings and deadlines have been or will be established in those cases for the filing of claims.

**CLAIMS WHICH ARE NOT RECEIVED BY THE APPLICABLE POST-FILING CLAIMS BAR DATE WILL BE BARRED AND EXTINGUISHED FOREVER.**

**DATED** at Toronto this ■ day of ■, ■.

**SCHEDULE "B"**

**(form of Proof of Claim attached)**

**CANADIAN CCAA Proof of Claim (Post-Filing Claims)    re Canadian Debtors**

❶    **Name of Debtor (the "Debtor")**
Debtor:

❷    **Original Creditor Identification (the "Creditor")**

| Legal Name of Creditor | Name of Contact |
|---|---|
| Address | Phone # |
| | Fax # |
| City | Prov / State | Postal/Zip code | e-mail |

❸    **Assignee  if Post-Filing Claim has been assigned**

| Full Legal Name of Assignee | Name of Contact |
|---|---|
| Address | Phone # |
| | Fax # |
| City | Prov / State | Postal/Zip code | e-mail |

❹    **Amount of Post-Filing Claim**

The Debtor / Officer(s) / Director(s) was/were and still is/are indebted to the Creditor as follows:

| | | | | If you are making a Post-Filing Claim against an Officer or Director check the box below, and list the Officer(s) and Director(s) against whom you assert your Post-Filing Claim |
|---|---|---|---|---|
| *Post-Filing Claims will be recorded as "Unsecured" unless the "Secured" box is checked* | | *(Check only if applicable)* | | |
| Currency | Original Currency Amount | Secured | S. 136 Priority | |
| | | ❑ | ❑ | ❑ |
| | | ❑ | ❑ | ❑ |
| | | ❑ | ❑ | ❑ |
| | | ❑ | ❑ | ❑ |
| | | ❑ | ❑ | ❑ |
| | | ❑ | ❑ | ❑ |

❺    **Documentation**

Provide all particulars of the Post-Filing Claim and supporting documentation, including amount, description of transaction(s) or agreement(s) giving rise to the Post-Filing Claim, name of any guarantor which has guaranteed the Post-Filing Claim, and amount of invoices, particulars of all credits, discounts, etc. claimed, description of the security, if any, granted by the affected Debtor to the Creditor and estimated value of such security, particulars of any restructuring claim.

❻    **Certification**

I hereby certify that:
- I am the Creditor, or authorized Representative of the Creditor.
- I have knowledge of all the circumstances connected with this Post-Filing Claim.
- The Creditor asserts this Post-Filing Claim against the Debtor; and the Officer(s) and Director(s) as indicated above.
- Complete documentation in support of this Post-Filing Claim is attached.

This space reserved for use by the Monitor

| Signature | Name |
|---|---|
| | Title |
| Dated at | Signed at |

❼    **Filing of Post-Filing Claim**

**This Proof of Claim must be received by the Monitor by no later than 4:00 p.m. (prevailing Eastern Time) on <u>JANUARY 6, 2017</u>, by prepaid ordinary mail, courier, personal delivery or electronic or digital transmission at the following address:**

Ernst & Young Inc.
222 Bay St., Suite 2400
Toronto-Dominion Centre
Toronto, ON  M5K 1J7
CANADA
Attention: Nortel Claims

Fax: 416-943-2808
Tel: 1-866-942-7177 or 416-943-4439
e-mail: nortel.monitor@ca.ey.com

A version of this form is available at www.ey.com/ca/nortel

## GUIDE TO COMPLETING THE PROOF OF CLAIM FORM

This Guide has been prepared to assist creditors of the Canadian Debtors listed in Section 1 below ("**Creditors**") in filling out the Proof of Claim form. If you have any additional questions regarding completion of the Proof of Claim form, please consult the Monitor's website at www.ey.com/ca/nortel or contact the Monitor, whose contact information is listed below.

Additional copies of the Proof of Claim form may be found at the Monitor's website.

Please note this is a guide only, and in the event of any inconsistency between the terms of this guide and the terms of the Order of the CCAA Court made on December 1, 2016, the terms of the Order will govern.

**Section 1—Name of Canadian Debtors:**

- A separate Proof of Claim form must be filed for each Canadian Debtor against whom a claim is being asserted.

- **Please make sure all information in Proof of Claim forms is printed legibly.**

- The following is a list of Canadian Debtor companies against whom a claim may be asserted in this Post-Filing Claims Process:

  - Nortel Networks Corporation

  - Nortel Networks Limited

  - Nortel Networks Global Corporation

  - Nortel Networks International Corporation

  - Nortel Networks Technology Corporation

  - Nortel Communications Inc.

  - Architel Systems Corporation

  - Northern Telecom Canada Limited

**PLEASE NOTE that these procedures apply ONLY to Post-Filing Claims filed against the Canadian Debtors in the CCAA Proceedings. In particular, these procedures do <u>not</u> apply to Claims against any of the Canadian Debtors' affiliates that are subject to creditor protection proceedings in other jurisdictions, including in the United States. Separate proceedings and deadlines have been or will be established in those cases for the filing of claims.**

**PLEASE TAKE FURTHER NOTICE that if you have already filed a Proof of Claim that includes your Post-Filing Claim, you do NOT need to file a further Proof of Claim and your Claim will be addressed in the other claims process.  Any duplicative Proofs of Claim that are received by the Monitor will be disregarded.**

**Section 2 — Original Creditor**

- A separate Proof of Claim form must be filed by each legal entity or Person asserting a Post-Filing Claim against a Canadian Debtor listed in Section 1.

- The Creditor shall include any and all Post-Filing Claims it asserts against a single Canadian Debtor in a single Proof of Claim.

- The full legal name of the Creditor must be provided.

- If the Creditor operates under a different name, or names, please list such name(s) in parentheses after the Creditor's legal name.

- If the Claim has been assigned or transferred to another party, Section 3 must also be completed.

- Unless the Claim is assigned or transferred, all future correspondence, notices, etc. regarding the Claim will be directed to the address and contact information indicated in this section.

**Section 3 — Assignee**

- This section must be completed if the Creditor has assigned or otherwise transferred its Claim.

- The full legal name of the Assignee must be provided.

- If the Assignee operates under a different name, or names, please list such names(s) in parentheses after the Assignee's legal name.

- If the Monitor is satisfied that an assignment or transfer has occurred, all future correspondence, notices, etc. regarding the Claim will be directed to the Assignee at the address and contact information indicated in this section.

**Section 4 — Amount of Post-Filing Claim of Creditor against Canadian Debtor**

- Indicate the amount the Canadian Debtor / director(s) or officer(s) was, and still is indebted to the Creditor

*Currency, Original Currency Amount*

- The amount of the Post-Filing Claim must be provided in the currency in which it arose.

- Indicate the appropriate currency in the Currency column.

- If the Post-Filing Claim is denominated in multiple currencies, use a separate line to indicate the Post-Filing Claim amount in each such currency. If there are insufficient lines to record these amounts, attach a separate schedule with the required information.

*Secured*

- Check the Secured box ONLY if the Post-Filing Claim recorded on that line is secured. Do not check this box if your Post-Filing Claim is unsecured.

- If the value of the collateral securing your Post-Filing Claim is less than the amount of your Post-Filing Claim, enter the shortfall portion on a separate line as an unsecured claim.

- Evidence supporting the security you hold must be submitted with the Proof of Claim form. Provide full particulars of the nature of the security, including the date on which the security was given and the value you attribute to the collateral securing your Claim. Attach a copy of all related security documents.

*S. 136 Priority*

- Check this box ONLY if the amount of your Post-Filing Claim has a right to priority pursuant to Section 136 of the Bankruptcy and Insolvency Act (Canada) (the "BIA") or would be entitled to claim such a priority if this Proof of Claim were being filed in accordance with the provisions of the BIA.

- If a priority claim is being asserted pursuant to s. 136 of the BIA, please provide details as to the nature of the claim being asserted, and the basis for priority on which you rely.

*Directors and Officers*

- Check this box only if the Post-Filing Claim you are making is also being asserted against a former director or officer of a Canadian Debtor.

- you must identify the individual director(s) or officer(s) against whom you are asserting the Post-Filing Claim.

**Section 5 — Documentation**

- Attach to the claim form all particulars of the Post-Filing Claim and supporting documentation, including amount, description of transaction(s) or agreement(s) giving rise to the Post-Filing Claim, name of any guarantor which has guaranteed the Post-Filing Claim, amount of invoices, particulars of all credits, discounts, etc. claimed, description of the security, if any, granted by the Canadian Debtor or any director or officer to the Creditor and estimated value of such security, and particulars of any restructuring claim.

**Section 6 — Certification**

- The Person signing the Proof of Claim form should:

  o Be the Creditor, or authorized Representative of the Creditor.

    o   Have knowledge of all the circumstances connected with this Claim.

- By signing and submitting the Proof of Claim, the Creditor is asserting the claim against the Canadian Debtor and / or the indicated director(s) or officer(s).

**Section 7 — Filing of Claim**

- This Proof of Claim **must be received** by the Monitor no later than 4:00 p.m. (prevailing time in Toronto, Ontario, Canada) on (a) for Post-Filing Claims existing as of December 1, 2016, January 6, 2017; and (b) for Post-Filing Claims that come into existence after December 1, 2016, the later of January 6, 2017 and the date that is 30 days after the facts giving rise to the Post-Filing Claim occur but in any event no later than 15 days after the Plan Effective Date. Proofs of Claim should be sent by prepaid ordinary mail, courier, personal delivery or electronic or digital transmission to the following address:

        Ernst & Young Inc.
        Court-appointed Monitor of Nortel Networks Corporation, et al.,
        222 Bay Street, Suite 2400
        Toronto, Ontario
        Canada M5K 1J7
        Attention:    Nortel Claims

        Telephone: 1-866-942-7177 or 416-943-4439
        E-mail:Nortel.monitor@ca.ey.com
        Fax:    416-943-2808

**Failure to file your Proof of Claim so that it is received by the Monitor by 4:00 p.m. (prevailing time in Toronto, Ontario, Canada), on the Post-Filing Claims Bar Date will result in your claim being barred and you will be prevented from making or enforcing a Post-Filing Claim against the Canadian Debtor or any current or former director or officer of any of the Canadian Debtors. In addition, you shall not be entitled to further notice in and shall not be entitled to participate as a creditor in these proceedings.**

**SCHEDULE C — FORM OF NOTICE OF DISALLOWNCE**

---

**NOTICE OF DISALLOWANCE**

**For creditors with Post-Filing Claims against Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation, Nortel Networks Technology Corporation, Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Limited (each a "Canadian Debtor" and collectively, the "Canadian Debtors") and/or their respective Officers and Directors**

---

Claim Reference Number:
Name of Canadian Debtor:
TO:

Capitalized terms not defined in this Notice of Disallowance have the meanings ascribed to them in the Order of the Ontario Superior Court of Justice dated ■ (the "**Order**"). **All dollar values contained herein are in Canadian dollars unless otherwise noted.**

Pursuant to paragraph 19 of the Order, Ernst & Young Inc., in its capacity as Court-appointed Monitor of the Canadian Debtors, hereby gives you notice that it has reviewed your Proof of Claim in conjunction with the Canadian Debtor and has disallowed all or part of your Post-Filing Claim. Subject to further dispute by you in accordance with the Order, your Post-Filing Claim will be allowed as follows:

| Proof of Claim amount as submitted by Creditor | | Amount allowed by Monitor | |
|---|---|---|---|
| Currency | Amount | Currency | Amount |
|  |  |  |  |

**Reasons for Disallowance:**

**SERVICE OF DISPUTE NOTICES**

**If you intend to dispute this Notice of Disallowance, you must, no later than 4:00 pm (prevailing time in Toronto, Ontario, Canada) on the day that is ten (10) Business Days after this Notice of Disallowance is deemed to have been received by you (in accordance with paragraph 36 of the Order), deliver a Dispute Notice to the Monitor by pre-paid first class mail, registered mail, courier, personal delivery or electronic or digital transmission to the address below.** In accordance with the Order, notices shall be deemed to be received upon actual receipt thereof by the Monitor during normal business hours on a Business Day, or if delivered outside of normal business hours, on the next Business Day. The form of Dispute Notice is enclosed and can also be accessed on the Monitor's website at www.ey.com/ca/nortel.

6

ERNST & YOUNG INC.
Court-appointed Monitor of Nortel Networks Corporation, et al.
222 Bay Street, Suite 2400
Toronto, Ontario
Canada M5K 1J7

| | |
|---|---|
| Attention: | Nortel Claims |
| Telephone: | 1-416-943-4439 or 1-866-942-7177 |
| E-mail | nortel.monitor@ca.ey.com |
| Fax: | 1-416-943-2802 |

**IF YOU FAIL TO FILE A DISPUTE NOTICE WITHIN THE PRESCRIBED TIME PERIOD, THIS NOTICE OF DISALLOWANCE WILL BE BINDING UPON YOU.**

**DATED** at Toronto, this_____day of _____ , 20___.

**ERNST & YOUNG INC.**, in its capacity as Court-appointed Monitor of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation, Nortel Networks Technology Corporation, Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Limited and not in its personal capacity.

Per:

## SCHEDULE D — FORM OF DISPUTE NOTICE

### DISPUTE NOTICE

**In respect of a Post-Filing Claim against Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation, Nortel Networks Technology Corporation, Nortel Communications Inc., Architel Systems Corporation and Northern Telecom Canada Limited (each a "Canadian Debtor" and collectively, the "Canadian Debtors") and/or their respective Officers and Directors**

Claim Reference Number:_____

Name of Canadian Debtor against whom a Post-Filing Claim is asserted:_____

**1.      Particulars of Creditor:**

Full Legal Name of Creditor (include trade name, if different):

_____

_____

*(the "Creditor")*

Full Mailing Address of the Creditor:

_____

_____

Other Contact information of the Creditor:

Telephone Number:      _____

Email Address:           _____

Facsimile Number:      _____

Attention (Contact Person):    _____

**2.      Particulars of original Creditor from whom you acquired the Post-Filing Claim, if applicable:**

Have you acquired this Post-Filing Claim by assignment?

Yes: ❏      No: ❏

If yes and if not already provided, attach documents evidencing assignment.

Full Legal Name of original Creditor(s): _____

**3.      Dispute of Disallowance of Claim:**

The Creditor hereby disagrees with the value of its Post-Filing Claim as set out in the Notice of Disallowance and asserts a Post-Filing Claim as follows:

| Proof of Claim amount as submitted by Creditor | | Amount allowed by Monitor | |
|---|---|---|---|
| Currency | Amount | Currency | Amount |
| | | | |

**REASON(S) FOR THE DISPUTE:**

*(You must include a list of reasons as to why you are disputing your Post-Filing Claim as set out in the Notice of Disallowance and attach supporting documentation as applicable. Should you require more space, please attach additional pages.)*

_____

_____

_____

_____

_____

**SERVICE OF DISPUTE NOTICES**

This form is to be returned by pre-paid first class mail, courier, personal delivery or electronic or digital transmission and must be received no later than:

**4:00 P.M. (PREVAILING TIME IN TORONTO, ONTARIO, CANADA) ON THE DAY THAT IS TEN (10) BUSINESS DAYS AFTER THE NOTICE OF DISALLOWANCE IS DEEMED RECEIVED BY YOU PURSUANT TO PARAGRAPH 37 OF THE POST-FILING CLAIMS PROCEDURE ORDER,**

**TO:**

**ERNST & YOUNG INC.**
Court-appointed Monitor of Nortel Networks Corporation et al.
222 Bay Street, Suite 2400
Toronto, Ontario
Canada M5K 1J7

Attention:      Nortel Claims
Telephone:     1-416-943-4439 or 1-866-942-7177
E-mail          nortel.monitor@ca.ey.com

3

Fax:          1-416-943-2808


DATED this_____day of_____, 201_.

Name of Creditor:_____


_____          Per:_____
Name:                                     Witness
                                          Title:
                                          *(please print)*

Court File No.:  09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF COMPROMISE OR ARRANGMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA LIMITED

|  |  |
|---|---|
|  | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>**Proceeding commenced at Toronto, Ontario Canada** |
|  | **POST-FILING CLAIMS BAR DATE ORDER**<br>**(Returnable December 1, 2016)** |
|  | **GOODMANS LLP**<br>333 Bay Street, Suite 3400<br>Toronto, Ontario M5H 2S7<br><br>Jay Carfagnini LSUC#: 22293T<br>Joseph Pasquariello LSUC#: 38390C<br>Christopher G. Armstrong LSUC#: 55148B<br><br>Tel: 416.979.2211<br><br>Lawyers for the Monitor, Ernst & Young Inc.<br><br>**GOWLING WLG (CANADA) LLP**<br>One First Canadian Place<br>100 King Street West, Suite 1600<br>TORONTO, Ontario<br>M5X 1G5<br><br>Derrick Tay LSUC#: 21152A<br>Jennifer Stam LSUC#: 46735J<br><br>Tel: 416.862.5697<br><br>Lawyers for the Canadian Debtors |

# TAB 5

Court File No. 09-CL-7950

***ONTARIO***

**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | THURSDAY, THE 1ST DAY |
| | ) | |
| JUSTICE NEWBOULD | ) | OF DECEMBER, 2016 |

IN THE MATTER OF THE COMPANIES' CREDITORS
ARRANGEMENT ACT,

R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF NORTEL NETWORKS CORPORATION,
NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL
CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION, NORTEL NETWORKS TECHNOLOGY
CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL
SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA
LTD.

APPLICATION UNDER THE COMPANIES' CREDITORS
ARRANGEMENT ACT,

R.S.C. 1985, c. C-36, AS AMENDED

**ADDITIONAL MISFILED CLAIM ORDER**

THIS MOTION, made by Nortel Networks Corporation, Nortel Networks Limited, Nortel
Networks Technology Corporation, Nortel Networks Global Corporation, Nortel Networks
International Corporation, Nortel Communications Inc., Architel Systems Corporation and Northern
Telecom Canada Ltd. (collectively, the "**Canadian Debtors**" and each, individually, a "**Canadian
Debtor**") jointly with Ernst & Young Inc. in its capacity as monitor (the "**Monitor**") of the Canadian
Debtors for an order resolving the Additional Misfiled Claim (defined below) in accordance with the
Claims Resolution Order of this Court dated September 16, 2010 (the "**Claims Resolution Order**")
was heard this day at 330 University Avenue, Toronto, Ontario.

ON READING the Notice of Motion, the One Hundred and Thirty Third report of the Monitor
dated November 23, 2016 (the "**One Hundred and Thirty Third Report**"), and on hearing the

submissions of counsel for the Monitor, ■, no other parties appearing for the other parties served with the Motion Record, although duly served as appears from the affidavit of service of ■ sworn ■ , filed:

1.      THIS COURT ORDERS that the time for service of the Notice of Motion, the Motion Record and the One Hundred and Thirty Third Report is hereby abridged and validated such that this Motion is properly returnable today and service upon any interested party other than those parties served is hereby dispensed with.

2.      THIS COURT ORDERS that the claim filed by Coface North America Insurance Company as assignee of the creditor Jaco Electronics, Inc., in the amount of approximately $479,290 against a U.S. Debtor in the Chapter 11 Proceedings prior to the September 30, 2009 claims bar date which, based upon a review of the books and records of the Canadian Debtors, is properly a claim against a Canadian Debtor (the "**Additional Misfiled Claim**"), is hereby deemed validly filed against the appropriate Canadian Debtor in accordance with the Amended and Restated Claims Procedure Order of this Court dated July 30, 2009 such that it may be resolved in accordance with the Claims Resolution Order.

3.      THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Canadian Debtors, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Canadian Debtors and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

_____

Court File No.:  09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF COMPROMISE OR ARRANGMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA LIMITED

|  |  |
|---|---|
|  | **ONTARIO** <br> **SUPERIOR COURT OF JUSTICE** <br> **(COMMERCIAL LIST)** <br><br> **Proceeding commenced at Toronto, Ontario Canada** |
|  | **ADDITIONAL MISFILED CLAIM ORDER** <br> **(Returnable December 1, 2016)** |
|  | **GOODMANS LLP** <br> 333 Bay Street, Suite 3400 <br> Toronto, Ontario M5H 2S7 <br><br> Jay Carfagnini LSUC#: 22293T <br> Joseph Pasquariello LSUC#: 38390C <br> Christopher G. Armstrong LSUC#: 55148B <br><br> Tel: 416.979.2211 <br><br> Lawyers for the Monitor, Ernst & Young Inc. <br><br> **GOWLING WLG (CANADA) LLP** <br> One First Canadian Place <br> 100 King Street West, Suite 1600 <br> TORONTO, Ontario <br> M5X 1G5 <br><br> Derrick Tay LSUC#: 21152A <br> Jennifer Stam LSUC#: 46735J <br><br> Tel: 416.862.5697 <br><br> Lawyers for the Canadian Debtors |

# TAB 6

Court File No.  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. JUSTICE | ) | WEDNESDAY, THE 27TH DAY OF |
| | ) | |
| MORAWETZ | ) | MAY, 2009 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION (the "Applicants")**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36 AS AMENDED**

**O R D E R**

THIS MOTION, made by Donald Sproule, David Archibald and Michael Campbell (collectively, the "Representatives") on behalf of former employees, including pensioners, of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International and/or Nortel Networks Technology Corporation (collectively "Nortel") or any person claiming an interest under or on behalf of such former employees or pensioners and surviving spouses in receipt of a Nortel pension, or group or class of them (collectively the "Former Employees") was heard Monday, April 20, 2009, on the Commercial List at the courthouse at 330 University Avenue, Toronto, Ontario, Reasons for Decision having been reserved to May 27, 2009,

ON READING the Motion Record of the Representatives and on hearing the submissions of counsel for the Representatives, Nortel, the Monitor and other parties,

1.     **THIS COURT ORDERS** that further service of the Notice of Motion and Motion Record on any party not already served is hereby dispensed with, such that this motion was properly returnable April 20, 2009.

2.     **THIS COURT ORDERS** that, subject to paragraphs 8-9 hereof, Donald Sproule, David Archibald and Michael Campbell are hereby appointed as representatives of all Former Employees in the proceedings under the *Companies' Creditors Arrangement Act (Canada)* ("CCAA"), the *Bankruptcy and Insolvency Act* (Canada) (the "BIA") or in any other proceeding which has been or may be brought before this Honourable Court (the "Proceedings"), including, without limitation, for the purpose of settling or compromising claims by the Former Employees in the Proceedings.

3.     **THIS COURT ORDERS** that, subject to paragraphs 8-9 hereof, Koskie Minsky LLP is hereby appointed as counsel for all Former Employees in the Proceedings for any issues affecting the Former Employees in the Proceedings.

4.     **THIS COURT ORDERS** that Nortel shall provide to the Representatives and their counsel, without charge:

    (a)     the names, last known addresses and last known e-mail addresses (if any) of all the Former Employees, whom they represent, as well as applicable data regarding their entitlements, subject to a confidentiality agreement and to only be used for the purposes of the Proceedings; and

    (b)     upon request of the Representatives and their counsel, such documents and data, as may be relevant to matters relating to the issues in the Proceedings, including documents and data, pertaining to the various pension, benefit, supplementary pension, termination allowance plans, severance and termination payments and other arrangements for group health, life insurance, retirement and severance payments, including up to date financial information regarding the funding and investments of any of these arrangements.

5.     **THIS COURT ORDERS** that all reasonable legal, actuarial and financial expert and advisory fees and all other incidental fees and disbursements, as may have been or shall be

incurred by the Representatives and their counsel, shall be paid by Nortel on a bi-weekly basis, forthwith upon the rendering of accounts to Nortel. In the event of any disagreement regarding such fees, such matters may be remitted to this Court for determination.

6.     **THIS COURT ORDERS** that notice of the granting of this Order be provided to the Former Employees by advertisement in the national edition of the Globe and Mail, La Presse, the Ottawa Citizen and the Calgary Herald under such terms and conditions as to be agreed upon by the Representatives, the Applicants and the Monitor.

7.     **THIS COURT ORDERS** that the Representatives, or their counsel on their behalf, are authorized to take all steps and to do all acts necessary or desirable to carry out the terms of this Order, including dealing with any Court, regulatory body and other government ministry, department or agency, and to take all such steps as are necessary or incidental thereto.

8.     **THIS COURT ORDERS** that, subject to paragraph 9 hereof, any individual Former Employee who does not wish to be bound by this Order and all other related Orders which may subsequently be made in these proceedings shall, within 30 days of publication of notice of this Order, notify the Monitor, in writing, by facsimile, mail or delivery, and in the form attached as Schedule "A" hereto and shall thereafter not be bound and shall be represented themselves as an independent individual party to the extent they wish to appear in these Proceedings.

9.     **THIS COURT ORDERS** that notwithstanding paragraph 8 hereof any Former Employee already represented by Lewis Gottheil, counsel to the National Automobile, Aerospace, Transportation and General Workers Union of Canada ("CAW-Canada") ("CAW Counsel") are not bound by this Order and CAW Counsel shall deliver to Koskie Minsky LLP, the Monitor and Nortel a listing of each Former Employee so represented within 30 days of the issuance of this Order.

10.     **THIS COURT ORDERS** that Former Employees bound by this Order specifically exclude any former chief executive officer or chairman of the board of directors, any non-employee member of the board of directors, or such former employees or officers that are

subject to investigation and charges by the Ontario Securities Commission or the United States Securities and Exchange Commission, and that the Representatives have no obligation to represent such persons.

11.    **THIS COURT ORDERS** that the Representatives and Koskie Minsky LLP shall have no liability as a result of their respective appointment or the fulfilment of their duties in carrying out the provisions of this Order from and after January 14, 2009 save and except for any gross negligence or unlawful misconduct on their part.

12.    **THIS COURT ORDERS** that the Representatives shall be at liberty and are authorized at any time to apply to this Honourable Court for advice and directions in the discharge or variation of theirs powers and duties.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

JUN 3 0 2009

PER / PAR:

## SCHEDULE "A"

Court File No.: 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES CREDITORS' ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

### OPT-OUT LETTER

Ernst & Young Inc.
Ernst & Young Tower
222 Bay Street
P.O. Box 251
Toronto, Ontario  M5K 1J7

Attention:  Lee K. Close
Tel:  1.866.942.7177
Fax:  416.943.3300

I, _____, am a former employee of the Nortel companies, as
        [Insert Name]
defined in the Order of Mr. Justice Morawetz dated April 20, 2009.

Under Paragraph 8 of that Order, former employees who do not wish Koskie Minsky LLP to act
as their representative counsel may opt out.

I hereby notify the Monitor that I do not wish to be bound by the Order and will be represented
as an independent individual party to the extent I wish to appear in these proceedings.

_____          _____
Date                                Signature



128

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding commenced at Toronto

O R D E R

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 1671251\7

# TAB 7

Court File No. 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

THE HONOURABLE MR.                    )          WEDNESDAY, THE 22ND DAY OF
                                      )
JUSTICE MORAWETZ                      )          JULY, 2009

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, C. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT**
**OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION and NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**ORDER**

THIS MOTION, made by Kent Felske and Dany Sylvain (collectively, the "Representatives") on behalf of all Canadian non-unionized employees of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International and/or Nortel Networks Technology Corporation (collectively, "Nortel") was heard Thursday, July 9, 2009 on the Commercial List at 330 University Avenue, Toronto, Ontario.

ON READING the motion record of the Representatives, the motion record of Nortel, and on hearing submissions of counsel for the Representatives, Nortel, the Monitor and other parties,

1.      **THIS COURT ORDERS** that time for service of the notice of motion and the motion record is abridged, service of notice of motion material and the motion record is validated, all such that this motion is properly returnable on July 9, 2009.

2.      **THIS COURT ORDERS** that Kent Felske and Dany Sylvain be and hereby are appointed as the representatives of all Canadian non-unionized employees of Nortel whose employment with Nortel is continuing (the "Continuing Employees") while it is continuing in the

proceedings under the *Companies' Creditors Arrangement Act* ("CCAA"), the *Bankruptcy and Insolvency Act* (Canada) (the "BIA") or in any other proceeding which has been or may be brought before this Honourable Court (collectively, the "Proceedings").

3.    **THIS COURT ORDERS** that Nelligan O'Brien Payne, LLP and Shibley Righton LLP be and hereby are appointed as counsel (the "Continuing Employee Counsel") for the Continuing Employees to provide advice and representation with respect to Continuing Employees' employment-related claims and potential claims in the Proceedings, including issues arising with respect to pension plans and the health and welfare trust (such appointment to be referred to herein as the "Mandate"). For greater certainty, the Mandate does not include negotiations or requests with potential purchasers of assets of Nortel but the Continuing Employee Counsel shall from time to time be able to seek responses from the Monitor with respect to issues arising out of such negotiations and concluded arrangements on a need to know basis, including the recent Ericsson asset purchase agreement.

4.    **THIS COURT ORDERS** that, subject to the prior written consent of the Monitor, Nortel shall provide to the Representatives and to the Continuing Employee Counsel, without charge upon request by the Representatives and their Counsel, such documents and data, as may be relevant to matters relating to the claims in the Proceedings, including documents and data pertaining to the entitlements of Continuing Employees, the terms and conditions of their employment including pension benefit, bonus, termination and severance entitlements and any agreements and documents related to the transfer or prospective transfer of employees from Nortel to new employers.

5.    **THIS COURT ORDERS** that all reasonable legal  fees and all other incidental fees and disbursements incurred in carrying out the Mandate, as may have been or shall be incurred by the Representatives and the Continuing Employee Counsel, shall be paid by Nortel on a bi-weekly basis, forthwith upon the rendering of accounts to Nortel and that, in the event of any disagreement regarding such fees, such matters may be remitted to this Court for determination.

6.    **THIS COURT ORDERS** that notice of the granting of this Order be provided to the Continuing Employees by the Monitor, together with the information attached in Schedule "A", by electronic transmission of a copy hereof as soon as practicable after the granting of this Order,

together with the specific contact information provided by the Representatives and the Continuing Employee Counsel.

7. **THIS COURT ORDERS** that the Representatives or their Continuing Employee Counsel on their behalf be and hereby are authorized to take all steps and to do all acts necessary or desirable to carry out the terms of this Order, including dealing with any Court, regulatory body and other government ministry, department or agency, and to take all such steps as are necessary or incidental thereto.

8. **THIS COURT ORDERS** that any individual Continuing Employee who does not wish to be bound by this order and all other related orders which may subsequently be made in these proceedings shall by September 18, 2009 notify the Monitor in writing by facsimile, mail or delivery, and in the form attached as Schedule "B" hereto and shall thereafter not be bound and shall be represented themselves as an independent individual party to the extent they wish to appear in the Proceedings.

9. **THIS COURT ORDERS** that the Continuing Employees bound by this Order do not include any employees who are subject to investigation and charges by the Ontario Securities Commission or the United States Securities and Exchange Commission, and that the Representatives have no obligation to represent such persons.

10. **THIS COURT ORDERS** that the Representatives, Nelligan O'Brien Payne LLP and Shibley Righton LLP as Continuing Employee Counsel shall have no liability as a result of their appointment or the fulfilment of their duties in carrying out the provisions of this Order from and after January 14, 2009 save and except for any gross negligence or unlawful misconduct on their part.

11.    **THIS COURT ORDERS** that the Representatives shall be at liberty and are authorized at any time to apply to this Honourable Court for advice and directions in the discharge or variation of theirs powers and duties.

ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

AUG 0 4 2009

PER / PAR: TV

## SCHEDULE "A"

In an endorsement issued on July 22, 2009 by the Ontario Superior Court of Justice in Nortel's outstanding CCAA proceedings (the "Proceedings"), Nelligan O'Brien Payne and Shibley Righton were jointly appointed as counsel for Canadian non-unionized employees of Nortel whose employment with Nortel is continuing (the "Continuing Employees"). A copy of the Representation Order for the Continuing Employees dated July 22, 2009 is attached.

Justice Morawetz stated that the Continuing Employees at Nortel have an interest in the Proceedings and it is advisable that they have legal representation to provide general advice on employee issues that affect them. The Commercial Court also appointed Kent Felske and Dany Sylvain as representatives of the Continuing Employees.

Former employees of Nortel and employees whose employment is terminated in the future continue to be represented by Koskie Minsky.

Nortel will be responsible for the reasonable legal fees incurred by the court-appointed counsel in carrying out their prescribed mandate.

If you do not wish to be bound by this order, you may opt-out of the group in accordance with paragraph 8 of the Order.

Continuing Employees may in confidence directly contact Nelligan O'Brien Payne at – NCCE@nelligan.ca (use your personal email) or by telephone to Ms. Christine Seed (613) 231-8280 or 1-888-565-9912.

**SCHEDULE "B"**

Court File No.  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C.
1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION**

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**OPT-OUT LETTER**

**Ernst & Young Inc.**
**Ernst & Young Tower**
**222 Bay Street**
**P.O. Box 251**
**Toronto, ON  M5K 1J7**

**Attention:  Lee K. Close**
**Tel.:  1.866.942.7177**
**Fax:  416.943.3300**

I, _____, am a current employee of Nortel, as defined in the Order of
      [Insert Name]

Mr. Justice Morawetz dated July 22, 2009.

Under Paragraph 8 of that Order, current employees who do not wish Shibley Righton LLP and
Nelligan O'Brien Payne LLP to act as their representative counsel may opt out.

I hereby notify the Monitor that I do not wish to be bound by the Order and will be represented
as an independent individual party at my own expense to the extent I wish to appear in these
proceedings.

_____      _____

Date                                 Signature

136

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, C. c-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No: 09-CL-7950

| *ONTARIO* SUPERIOR COURT OF JUSTICE | |
|---|---|
| Proceeding commenced at Toronto | |
| | ORDER |
| | **OGILVY RENAULT LLP** Suite 3800 Royal Bank Plaza, South Tower 200 Bay Street Toronto, Ontario M5J 2Z4 **Derrick Tay LSUC#: 21152A** Tel: (416) 216-4832 Email: dtay@ogilvyrenault.com **Jennifer Stam LSUC#: 46735U** Tel: (416) 216-2327 Email: jstam@ogilvyrenault.com Lawyers for the Applicants |

# TAB 8

Court File No.  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | |
|---|---|
| THE HONOURABLE MR. JUSTICE | ) THURSDAY, THE 30TH DAY OF |
| | ) |
| MORAWETZ | ) JULY, 2009 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION (the "Applicants")**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36 AS AMENDED**

**ORDER**
**(Representation Order for Disabled Employees)**

**THIS MOTION**, made by the Applicants (collectively, "Nortel") for an order appointing representative counsel for those employees of Nortel who are currently not working due to an injury, illness or medical condition in respect of which they are receiving or entitled to receive disability income benefits by or through Nortel, and who may assert an existing or future claim for payment, reimbursement or coverage arising in connection with their employment with Nortel or termination thereof, a pension or benefit plan sponsored by Nortel, including in relation to medical, dental, long-term or short-term disability benefits, life insurance or any other benefit, obligation or payment to which such person (or others who may be entitled to claim under or through such person) may be entitled from or through Nortel (referred to individually as an "LTD Beneficiary" and collectively, as the "LTD Beneficiaries") save and except those LTD Beneficiaries who are currently employed and whose benefit or other payments, as described above, arise directly or inferentially out of a

collective agreement between the Applicants, or any of them, and the CAW-Canada was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the Motion Record of the Applicants and on hearing the submissions of counsel for the Representative, the CAW-Canada, Nortel, the Monitor and other parties,

1. **THIS COURT ORDERS** that the time for the service of the Notice of Motion and the Motion Record is hereby abridged so that this Motion is properly returnable today and hereby dispenses of further service thereof.

2. **THIS COURT ORDERS** that further service of the Notice of Motion and Motion Record on any party not already served is hereby dispensed with, such that this motion was properly returnable July 9, 2009.

3. **THIS COURT ORDERS** that, subject to paragraph 9 hereof, Sue Kennedy is hereby appointed as representative of all LTD Beneficiaries in the proceedings under the *Companies' Creditors Arrangement Act (Canada)* ("CCAA"), the *Bankruptcy and Insolvency Act* (Canada) (the "BIA") or in any other proceeding which has been or may be brought before this Honourable Court (the "Proceedings"), including, without limitation, for the purpose of settling or compromising claims by the LTD Beneficiaries in the Proceedings.

4. **THIS COURT ORDERS** that, subject to paragraph 9 hereof, Koskie Minsky LLP is hereby appointed as counsel for all LTD Beneficiaries in the Proceedings for any issues affecting the LTD Beneficiaries in the Proceedings.

5. **THIS COURT ORDERS** that Nortel shall provide to the Representatives and their counsel, without charge:

   (a) the names, last known addresses and last known e-mail addresses (if any) of all the Former Employees, whom they represent, as well as applicable data regarding their entitlements, subject to a confidentiality agreement and to only be used for the purposes of the Proceedings; and

   (b) upon request of the Representatives and their counsel, such documents and data, as may be relevant to matters relating to the issues in the Proceedings,

including documents and data, pertaining to the various long term disability, pension, benefit, supplementary pension, termination allowance plans, severance and termination payments and other arrangements for group health, life insurance, retirement and severance payments, including up to date financial information regarding the funding and investments of any of these arrangements.

6.      **THIS COURT ORDERS** that all reasonable legal, actuarial and financial expert and advisory fees and all other incidental fees and disbursements, as may have been or shall be incurred by the Representatives and their counsel, shall be paid by Nortel on a bi-weekly basis, forthwith upon the rendering of accounts to Nortel. In the event of any disagreement regarding such fees, such matters may be remitted to this Court for determination.

7.      **THIS COURT ORDERS** that notice of the granting of this Order be provided to the LTD Beneficiaries by regular mail to their last know address under such terms and conditions as to be agreed upon by the Representative, the Applicants and the Monitor.

8.      **THIS COURT ORDERS** that the Representative, or her counsel on her behalf, are authorized to take all steps and to do all acts necessary or desirable to carry out the terms of this Order, including dealing with any Court, regulatory body and other government ministry, department or agency, and to take all such steps as are necessary or incidental thereto.

9.      **THIS COURT ORDERS** that any individual LTD Beneficiary who does not wish to be bound by this Order and all other related Orders which may subsequently be made in these proceedings shall, within 30 days of mailing of notice of this Order, notify the Monitor, in writing, by facsimile, mail or delivery, and in the form attached as Schedule "A" hereto and shall thereafter not be bound and shall be represented themselves as an independent individual party to the extent they wish to appear in these Proceedings.

10.     **THIS COURT ORDERS** that the Representative and Koskie Minsky LLP shall have no liability as a result of their respective appointment or the fulfilment of their duties in carrying out the provisions of this Order from and after January 14, 2009 save and except for any gross negligence or unlawful misconduct on their part.

11.   **THIS COURT ORDERS** that the Representatives shall be at liberty and are authorized at any time to apply to this Honourable Court for advice and directions in the discharge or variation of theirs powers and duties.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

JUL 3 0 2009

PER / PAR:

## SCHEDULE "A"

Court File No.: 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES CREDITORS' ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

### OPT-OUT LETTER

Ernst & Young Inc.
Ernst & Young Tower
222 Bay Street
P.O. Box 251
Toronto, Ontario  M5K 1J7

Attention: Lee K. Close
Tel: 1.866.942.7177
Fax: 416.943.3300

I, _____, am an employee of the Nortel companies, and am
[Insert Name]
currently in receipt of or have applied for disability income benefits.

Under Paragraph 9 of the Representation Order for Disabled Employees, LTD Beneficiaries who
do not wish Koskie Minsky LLP to act as their representative counsel may opt out.

I hereby notify the Monitor that I do not wish to be bound by the Order and will be represented
as an independent individual party to the extent I wish to appear in these proceedings.

_____          _____

Date                                                          *Signature*

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No: 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

Proceeding commenced at Toronto

**O R D E R**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION et al.

Court File No.  09-CL-7950

| | |
|---|---|
| | *ONTARIO*<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>**Proceeding commenced at Toronto** |
| | **MOTION RECORD**<br>**(Motion for Approval of Plan Filing and Meeting Order, Post-Filing Claims Bar Date Order and Additional Misfiled Claim Order)** |
| | **GOODMANS LLP**<br>Barristers & Solicitors<br>Bay Adelaide Centre<br>333 Bay Street, Suite 3400<br>Toronto, ON  M5H 2S7<br><br>**Jay A. Carfagnini**  LSUC#: 22293T<br>jcarfagnini@goodmans.ca<br>**Joseph Pasquariello**  LSUC#: 38390C<br>jpasquariello@goodmans.ca<br>**Christopher G. Armstrong**  LSUC#: 55148B<br>carmstrong@goodmans.ca<br><br>Tel: 416.979.2211<br>Fax: 416.979.1234<br><br>Lawyers for the Monitor, Ernst & Young Inc. |

6635770