**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Nortel Networks Inc., *et al.*, | ) | Case No. 09-10138 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | **Obj. Deadline: December 13, 2016 at 4:00 p.m.** |
| | ) | **Hearing Date: December 20, 2016 at 10:00 a.m.** |

## MOTION OF INNINGS TELECOM EUROPE, LTD. FOR AUTHORITY TO AMEND ITS PRE-PETITION CLAIMS

Innings Telecom Europe Ltd. ("ITEL"), by its undersigned counsel, hereby moves for authority to amend its prepetition proofs of claim (the "Motion") against Nortel Networks, Inc., et al. ("Debtors") to increase the claims by an aggregate amount of $128,850.00.  In support of the Motion, ITEL respectfully states as follows:

### BACKGROUND FACTS

1.     ITEL was a supplier of Contact Centre Software to Nortel prior to Nortel's sale of assets to Avaya, Inc.  Under its supplier agreement with Nortel, Nortel paid royalties to ITEL based on the consumption of ITEL's proprietary software, as reported by Nortel in its quarterly sales reports sent to ITEL.  [See Declaration of Mark Henshall filed herewith ("Henshall Decl.") ¶3].  ITEL invoiced Nortel based on those reports, and Nortel paid royalties based on the invoices received.  [Henshall Decl. ¶5].  Nortel's reports were subject to audit and amendment, which could result in additional invoicing.  [Henshall Decl. ¶7 and Ex. 1].

2.     Debtors filed their bankruptcy petitions on January 14, 2009 ("Petition Date"). This Court set the claims bar date for September 30, 2009 ("Bar Date").

3.     ITEL timely-filed six separate unsecured claims with the Debtors, which claims were received by the Debtors' claims agent on September 28, 2009 and assigned claim numbers as set forth on the following chart:

| Claim Number | Claimant Name | Debtor Name | Date Filed | Claim Amount |
|---|---|---|---|---|
| 4392 | ITEL | Nortel Networks Inc. | 9/28/2009 | $447,543.00 |
| 4393 | ITEL | Nortel Networks Inc. | 9/28/2009 | $9,369.00 |
| 4394 | ITEL | Nortel Networks Inc. | 9/28/2009 | $352,565.80 |
| 4448 | ITEL | Nortel Networks Inc. | 9/28/2009 | $33,308.54 |
| 4450 | ITEL | Nortel Networks Inc. | 9/28/2009 | $432.00 |
| 4452 | ITEL | Nortel Networks Inc. | 9/28/2009 | $6,174.00 |
| | | | | **$849,392.34** |

4.     These claims were subsequently allowed in the amounts set forth above as of August 5, 2016, based on the Debtors' issuance of its *Second Notice of Proposed Formal Allowance of Certain Claims against the Debtors* (the "Notice"), served on July 5, 2016. [Henshall Decl., Ex. 2].[1]

5.     ITEL prepared each of the claims set forth on the chart above based on the quarterly royalty reports it received from Nortel.  A copy of Claim No. 4394 is attached hereto as Ex. A.  As set forth in the attachments to Proof of Claim 4394, ITEL received notice of the bankruptcy petitions from a Nortel representative by e-mail dated February 11, 2009, along with a 2008 Quarterly Report by which ITEL could calculate its claim for unpaid pre-petition royalties. [Ex. A, p. 3].  Additional or updated reports were provided thereafter pursuant to the parties' regular course of conduct.  [See e.g., Ex. A, p. 6-7].

6.     However, in 2010, ITEL, through its own review, discovered that certain products were omitted from prior royalty reports Nortel provided.  Two of those products (identified with

---

[1] Under the Debtors' Omnibus Settlement Procedures, the claims became allowed when no objection was filed by any of the Notice Parties within 30 days of the mailing of the Notice.

codes NTKC 0728 and NTKC 0730) were omitted from reporting for pre-petition time periods going back to 2007.  On May 16, 2010, ITEL asked Nortel for additional reports on the unreported codes and repeated its request on June 11, 2010.  [Henshall Decl. ¶8 and Ex. 1, pp. 3-4, 7-8].  Nortel provided the additional reports on June 30, 2010, and agreed to issue payments for the unreported amounts relating to post-petition periods.  [Henshall Decl. ¶9 and Ex. 3, pp.1-3]

7.    Based on the supplemental reports provided on June 30, 2010, ITEL determined that Claim 4394 should be increased by $127,400.00, and Claim 4448 should be increased by $1,450.00, for a total increase of $128,850.00.  ITEL immediately notified Nortel of the documented increase in the prepetition claims.  [Henshall Decl. ¶9].  Nortel apologetically acknowledged its erroneous reporting and the resulting inaccuracy of ITEL's timely-filed proofs of claims.  [Henshall Decl., Exhibit 1, page 2].

8.    Six years later, in July 2016, Nortel issued its *Second Notice of Proposed Formal Allowance of Certain Claims Against the Debtors* (the "Notice"), proposing to allow ITEL's claims in their original filed amount.  [Henshall Decl. ¶10].  ITEL received the Notice while Mr. Henshall, ITEL's Managing Director, and his family were on their annual vacation from July 10th through July 31st of 2016.  *Id.* at ¶11.  Mr. Henshall's first day back in his office was August 1, 2016, which was his first opportunity to review the Notice. *Id.*  The Notice indicated that objections to the proposed allowance of claims were due within thirty (30) calendar days of receipt.

9.    On August 4, 2016, just three days after receiving the Notice, Mr. Henshall initiated efforts to contact Nortel's counsel to dispute the amount of the proposed allowance and demand that ITEL's prepetition claims be increased due to Nortel's inaccurate reports.  *Id.* at ¶

12.  Nortel eventually advised ITEL on September 27, 2016 that it would not assist in amending the claims to reflect the true prepetition amounts, notwithstanding Nortel's having long been aware that the claim amounts were inaccurate solely due to Nortel's errors.  *Id*. at ¶ 15.

## RELIEF REQUESTED

10.    Based on the foregoing, ITEL seeks authority to amend its filed Claim No. 4394 by $127,400.00 to $479,965.80, and Claim No. 4448 by $1,450.00 to $34,758.54, for a total increase of $128,850.00.

## ARGUMENT AND AUTHORITIES

### A.    The Proposed Amendments Relate Back to the Timely-Filed Claims.

11.    ITEL should be allowed to amend its prepetition proofs of claims to include the amounts which, but for Nortel's erroneous reporting, would have been included in the original timely-filed proofs of claims.  Federal Rule of Civil Procedure 15 ("Federal Rules"), which courts routinely apply to "relation back" analyses in evaluating whether to permit amendments to claims, wholly favors allowing ITEL to amend its claims.

12.    "It is a well settled principle that, absent contrary equitable considerations or prejudice to the opposing party, amendments to proofs of claim should be freely given." *In re Edison Bros. Stores, Inc*., 2002 WL 999260, at *3 (Bankr. D. Del. May 15, 2002) (citations and quotations omitted). The Third Circuit has recognized a liberal approach to amending pleadings under Federal Rule 15(a)(2). *See Le v. City of Wilmington*, 2010 WL 2754253, at *2 (D. Del. July 12, 2010) (citing *Dole v. Arco*, 921 F.2d 484, 487 (3d Cir. 1990)). Pursuant to Federal Rule 15(a)(2), "[i]n the absence of dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party." *Id*. (citations omitted).

13.     Regarding the first prong, "futility," the dispositive consideration is whether the amendment relates back to the timely-filed original proof of claim. Debtors' admission of error forecloses any dispute here. ITEL's amendments are a correction of the amount stated in the timely-filed original proofs of claim and the corrections are solely due to Nortel's omissions in accurately reporting sales. ITEL's proposed amended proofs of claim corrects the amount arising from precisely the same "conduct, transaction, or occurrence set out – or attempted to be set out – in the original [proofs of claim]." Fed. R. Civ. P. 15(c)(2). The amendments are not a new claim but rather a correction of the original amount, which corrections are derived solely from reports provided by Nortel *after* the bar date. As such, the original proofs of claim gave Nortel fair notice of the conduct, transaction, or occurrence that gave rise to the amended claim.

14.     Further, there is no dilatory motive on ITEL's part. ITEL relied upon the parties' ordinary business conduct. ITEL discovered that certain information was missing from Nortel's reporting and repeatedly requested that Nortel issue reports to include the missing information. Upon receipt of these reports, ITEL notified Nortel of the increased pre-petition amounts due to it *that same* day, June 30, 2010. Here, time provides no motive or advantage to ITEL, a party in interest seeking only what is equitable – an amended claim accurately accounting for what it is owed prepetition. *See In re Stone & Webster, Inc.,* 547 B.R. 588, 606 (Bankr. D. Del. 2016) (allowing insurer that filed a timely proof of claim for amounts due under the policy to amend claim to increase amount of claim to reflect more accurately amounts due under the policy).

15.     Lastly, allowing ITEL to amend its original claim does not unfairly prejudice Nortel. The amendment is for an amount about which Nortel has been aware, and an amount which exists solely because of Nortel's prior omissions. The $128,850.00 increase in the claim due to the amendment presents no discernable impact upon Nortel's ability to consummate its

Plan. Likewise, there is no calculable impact upon recoveries to other unsecured creditors. Allowing ITEL's amended proof of claim to reflect the proper prepetition debt will not create unfair prejudice in this case.

**B.      The Amendment Should Be Allowed Under An Excusable Neglect Standard.**

16.      Pursuant to Bankruptcy Rules 3003(c)(2), 3003(c)(3) and 9006(b)(1), courts may extend the period for filing or amending a proof of claim where the late filing resulted from excusable neglect. *In re Pioneer Investment Services Co. v. Brunswick Associates,* 507 U.S. 380 (1993) ("*Pioneer*"). In *Pioneer,* the Supreme Court held that a creditor could file its proof of claim outside of the bar date where the failure to timely file was the result of excusable neglect. Relying on Rule 9006(b)(1), the Supreme Court found that excusable neglect extends even to failures that are within a party's control. *Id*. at 388.

17.      If ITEL's proposed amended claims are evaluated under the excusable neglect standard, the Court should likewise allow the amendments.   In deciding whether excusable neglect exists, courts review four factors: (1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether the movant had reasonable control; and (4) whether the movant acted in good faith. *Id*. at 395. The Third Circuit has adopted the foregoing test. *See In re O'Brien Environmental Energy, Inc.,* 188 F.3d 116, 130 (3d Cir. 1999).

18.      Here, there is no prejudice to Nortel in allowing ITEL to file its amended claims after the Bar Date. The Nortel Debtors have been aware of the liabilities associated with ITEL's amended claims. Indeed, it is Nortel's inaccurate reporting that requires the amendments, and, in fact, Nortel would have been aware prior to the bar date but for its inaccurate reporting. Nortel's awareness of ITEL's accurate claim is sufficient for Nortel not to be prejudiced by allowing the

amended claims. See *In re McKissick,* 2003 Bankr. LEXIS 1103, 10 (Bankr. W.D. Pa. 2003), where the court noted that "Debtor is and has been throughout the course of this case fully aware of the nature and amount of CIT's claims."  "CIT's claim is not a surprise."

19.    Second, the length of the delay favors ITEL.   On the same day that ITEL determined the inaccuracies of Nortel's reports, ITEL reported to Nortel that the amount of its claims should be increased.  [Henshall Decl. ¶¶ 8 and 9].

20.    Most significantly, any delay must be measured from the date ITEL first reviewed *Nortel's Second Notice of Proposed Form Allowance of Certain Claims Against the Debtor* (the "Notice"), since that is the time when Debtors apparently reviewed ITEL's claims for the purpose of allowing them. Although not entered on Nortel's case docket, the Notice was sent to ITEL in July 2016.  *Id.* at ¶ 10.  ITEL's representative reviewed the Notice in August 2016 and immediately undertook efforts to notify the Debtors of the increased amount of its claims to reflect the proper prepetition debt. *Id.* at ¶ 11.  When Debtors' counsel advised that it could not consent to amendments to the allowed claims, ITEL initiated efforts to retain counsel to pursue the amendments.   Viewed in this proper context, the length of delay factor should not weigh against ITEL.

21.    Allowing ITEL's amended proofs of claim will not interfere with the judicial proceeding.  In *Pioneer,* in allowing the claimant to file the late proof of claim, the court found, "that there was no danger of prejudice to the debtor or the administration of judicial proceedings, as the claim, though untimely, was accounted for in the reorganization plan and was filed prior to the plan's effective date." *In re McKissick,* 2003 Bankr. LEXIS at 9 (*discussing Pioneer, 507* U.S. 380).  If Nortel has not already accounted for ITEL's claim in its Reorganization Plan (the "Plan"), it should do so because the full amount of ITEL's prepetition claim was in Nortel's

books and records and the increased amount was expressly disclosed to Nortel well before confirmation of the Plan and its Effective Date (neither of which have occurred).

22.     Third, ITEL has a valid reason for the delay in filing its proofs of claim in the full amount – Nortel provided inaccurate reports.  Under the facts here, equity requires that ITEL not suffer a loss arising from Nortel's conduct.  Likewise, ITEL's delay in responding to the Notice proposing to allow ITEL's claims in their original filed amount was due solely to the fact that its representative was on vacation when the Notice arrived.  [Henshall Decl. ¶11].

23.     Fourth, ITEL acted in good faith.  Once Nortel's error was discovered, ITEL sought to resolve that error and did so in good faith.

24.     In sum, ITEL timely filed its prepetition proofs of claims, and the inaccuracy in the amount of those claims rests only with Nortel's failure to provide accurate reporting.  Any fault or carelessness is wholly and directly traceable to Nortel. Even if Nortel argues that ITEL should have scrutinized Nortel's reporting earlier (albeit with no support from the parties' established course of business) any suggested carelessness would not preclude allowing ITEL's amended claims.  The court in *In re Spring Ford,* found that neglect encompasses both simple, faultless omissions to act and, more commonly, omissions caused by "carelessness." In *re Spring Ford Industries, Inc.,* 2003 Bankr. LEXIS 882, at 6 (Bankr. E.D. Pa. 2003) (*quoting Pioneer,* at 388).  ITEL's acting in accordance with the parties' established business protocol, albeit to ITEL's disadvantage, at most constitutes a faultless omission to act.

**WHEREFORE**, ITEL requests this Court for an order (i) authorizing amendments in the aggregate amount of $128,850.00 to ITEL's proofs of claim, after the bar date; (ii) deeming the amendments relate back to the original timely-filed proofs of claim; and (iii) deeming ITEL's amended claims filed consistent with the proposed order attached hereto as timely-filed.

Date:  November 29, 2016
      Wilmington, DE

**SULLIVAN · HAZELTINE · ALLINSON** LLC

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
Elihu E. Allinson III (No. 3476)
Thomas D. Walsh (No. 3783)
901 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
bsullivan@sha-llc.com
twalsh@sha-llc.com

*Attorneys for Innings Telecom Europe Ltd. (ITEL)*