## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                  :

*In re*                       :      Chapter 11
                  :

Nortel Networks Inc., *et al.*,[1]     :      Case No. 09-10138 (KG)
                  :

           Debtors.       :      Jointly Administered
                  :

                  :      Hearing Date: December 2, 2016 at 3:00 p.m. (ET)
                  :
-------------------------------------------------------X

## DEBTORS' OPPOSITION TO
## PENSION BENEFIT GUARANTY CORPORATION'S
## MOTION TO EXTEND DATE OF EVIDENTIARY HEARING

Nortel Networks Inc. ("NNI") and certain of its U.S. affiliates, debtors and debtors in possession (collectively, the "Debtors"), hereby oppose the motion of the Pension Benefit Guaranty Corporation (the "PBGC") filed November 28, 2016 (D.I. 17447) (the "Second Motion") seeking to postpone the evidentiary hearing on the Debtors' Objection to the PBGC Claims and the Amended PBGC Claims[2] filed on November 2, 2016 (D.I. 17325) (the "Objection"), which is scheduled to commence on January 9, 2016.[3]  The Second Motion has no more merit than the PBGC's earlier request for similar relief filed November 10, 2016 (D.I. 17380) (the "First Motion"), and should likewise be denied.

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International, Inc. (8667). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]     Capitalized terms not defined herein are used as defined in the Objection.

[3]     By Order dated November 29, 2016, the Court set the Debtors' deadline to respond to the Second Motion as December 2, 2016 at 11:00 a.m.  (D.I. 17458.)

## PRELIMINARY STATEMENT

1.      The Second Motion is essentially a motion for reconsideration of the Court's November 22, 2016 order denying the First Motion and ordering that discovery must proceed immediately (D.I. 17426) (the "Discovery Order") – again asking the Court to defer indefinitely a hearing on the Objection until after the Plan confirmation hearing – but one that fails to identify any new fact, circumstance or law that justifies reconsideration.  This alone is fatal and requires that the Second Motion be denied.

2.      The PBGC's First Motion argued that discovery and a hearing on the Objection should be deferred until after Plan confirmation and that the parties should instead brief certain legal issues without discovery or a hearing.  In the PBGC's own words:  "At the November 22, 2016 hearing on PBGC's motion for a briefing schedule, PBGC asked the Court to postpone any extensive litigation of the Debtors' objection to PBGC's claims until after the confirmation hearing to avoid diverting the parties from focusing on confirmation issues.  PBGC noted that the Debtors' claims reserve covers the disputed portion of PBGC's claims, and that the Settlement and Plans Support Agreement acknowledges that PBGC could have a claim of as much as $708 million."  (Second Motion at 1-2.)  All of these arguments were raised before the Court issued the Discovery Order, all were considered by the Court, and all were properly rejected.

3.      The Court's Discovery Order rejected the PBGC's position completely, ruling that there *must* be discovery and that it *must* proceed without further delay, with an evidentiary hearing on the Objection commencing on January 9, 2016 and the Court's decision on the Objection being issued prior to the Plan confirmation hearing later that month.

4.      While the Debtors have heeded the Court's words, the PBGC has defied them, stonewalling on discovery and rebuffing the Debtors' attempts to advance it.  Instead of

complying with the Court's Discovery Order to proceed immediately and expeditiously with discovery, the PBGC dismisses the Court's instructions as "impossible," ignoring the Discovery Order instead, and then belatedly seeking reconsideration after wasting a full week intended for discovery. Discovery can and should be completed within the 47-day period ordered by the Court. The Debtors have taken the Court's directions and admonitions to heart, proposing a detailed discovery schedule and serving further revised and narrowed documents requests to ensure that the PBGC can meet its production obligations in the time provided by the Court. The Court should see the PBGC's delay tactics for what they are – an attempt to nullify the Discovery Order – and order that discovery proceed without any further delay so that the evidentiary hearing will proceed as scheduled.

5.     The PBGC has offered no valid reason for reconsideration of the Discovery Order. The Court has already ruled against the PBGC on each of the arguments raised in the Second Motion, each of which was previously advanced unsuccessfully by the PBGC in its First Motion. Those arguments – including the PBGC's argument that resolution of the Objection need not occur prior to the Plan confirmation hearing and that the Court in US Airways set a different schedule – are no more compelling in the second telling. The Court considered these arguments the first time, and fully understood the implications of its Discovery Order, including the pressure it would place on the parties to accomplish discovery before the start of the evidentiary hearing on January 9, as well as the good-faith cooperation that would be required to meet that goal. The Court undoubtedly understood that its Discovery Order required the parties to work quickly, and during "the winter holidays, while the parties are simultaneously preparing for a trial on substantive consolidation at or before the confirmation hearing." (Second Motion at 3.) It rightly concluded that the magnitude of the issues at play (including hundreds of millions

of dollars in claims by the PBGC), the long period already occupied by this bankruptcy (nearly eight years), and the need to resolve the Objection and bring the proceedings to a close all warranted the schedule that it ordered.  That decision was correct and should not be revisited as a result of the PBGC's intransigence.

6.    Enough is enough.  The PBGC's stonewalling must end, and the Court should order that the PBGC comply immediately.  Precious time is wasting.

## ARGUMENT

7.    "The scope of a motion for reconsideration . . . is extremely limited.  Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence."  Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011) (Rule 59(e) motion); see also D. Del. Local Rule 7.1.5(a) ("Motions for reargument shall be sparingly granted").  These principles are as applicable to discovery and scheduling matters as they are to dispositive matters, if not more so, given that the issues at play are squarely within the Court's sound discretion.  See, e.g., Philadelphia Workforce Dev. Corp. v. KRA Corp., No. CIV.A. 09-5261, 2015 WL 1893224, at *1 (E.D. Pa. Apr. 24, 2015) (noting in the context of a "Motion for Reconsideration pursuant to Local Rule of Civil Procedure 7.1(g) seeking to amend the Court's April 2, 2015 pretrial Order to include deadlines for expert discovery" that the "purpose of a motion for reconsideration 'is to correct manifest errors of law or fact or to present newly discovered evidence.'" (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985))).  Indeed, were disgruntled litigants permitted to reargue the Court's discretionary scheduling and discovery orders at every turn, the result would be paralysis.  That is not what the Rules contemplate.

8.     The Discovery Order was undoubtedly a valid exercise of the Court's discretion. The PBGC has identified no legal error or new evidence here that could warrant reconsideration – nor could it – and its Second Motion, like its First Motion, is a waste of scarce time and resources that should have been devoted to complying with the Court-ordered schedule for the upcoming evidentiary hearing.

## I.    THE PBGC HAS IGNORED THE COURT'S ORDER TO PROCEED WITH DISCOVERY

9.     Discovery and an evidentiary hearing in this matter have been a long time coming.  The PBGC first filed its PBGC Claims on September 29, 2009, seeking, among other things, $593 million in purported damages.  The PBGC provided no Supporting Information for these claims as required by Bankruptcy Rule 3001(c).  Nearly five years after the Bar Date, on July 7, 2014, the PBGC filed its Amended PBGC Claims alleging damages of $708 million, without seeking leave of the Court to amend as required by Bankruptcy Rule 7015, and again without providing the Supporting Information required by Bankruptcy Rule 3001(c).

10.     The Debtors did not delay in voicing their objections to the PBGC's oversized and procedurally improper claims.  As noted by the PBGC on the record at the November 22 hearing, representatives of the Debtors and the PBGC met in person in August 2015 to discuss the Debtors' concerns about the PBGC Claims and the Amended PBGC Claims.  After repeatedly and unsuccessfully attempting to engage with the PBGC on these issues, the Debtors sent the PBGC a draft of the Objection to the PBGC Claims and Amended PBGC claims on July 22, 2016.  Although not required to do so, the Debtors shared the draft Objection in the hope that the PBGC would at last engage seriously with the issues it raised, and that the parties could reach a timely resolution without disrupting the Global Settlement negotiations and Plan confirmation process.  These attempts failed, however, and the Debtors filed their 53-page Objection and 296-

page supporting Tunis Declaration and exhibits on November 2, 2016, creating a contested matter under Bankruptcy Rule 9014.

11. Given the fact-bound nature of the Objection, the Debtors promptly served the PBGC with document requests and interrogatories seven business days later, on November 11, 2016, which were later amended on November 15, 2016. The Debtors' discovery requests sought the information necessary to resolve the many factual issues and mixed questions of law and fact raised in the Objection, including most notably: (*i*) the PBGC's basis for using the arbitrary and capricious annuity-based PBGC Artificial Rate in calculating its claim for unfunded benefit liabilities – even though in reality the PBGC invests in a portfolio of securities that earns significantly higher returns, resulting in a massive overstatement of the PBGC's claim by hundreds of millions of dollars; and (*ii*) the reasons for the PBGC's bad-faith decision (five years after the Bar Date and only days after the close of evidence in the Allocation Trial) to dramatically increase its claims by a staggering $114 million without explanation or seeking leave to amend the previously filed claims. When the PBGC stated that it would move for a protective order prior to the November 22 hearing, the Debtors offered to extend the PBGC's time to respond, in order to avoid burdening the Court with unnecessary motion practice, with the understanding that the Court would resolve the issue of whether discovery should go forward at the November 22 hearing.

12. At the November 22 hearing and in its First Motion, the PBGC argued strenuously that both discovery and a hearing should be put off until well into 2017. It argued that "resolving the legal questions would eliminate or at the very least sharply curtail the need for any discovery" (First Motion at 1), and that allowing summary judgment briefing before discovery would "avoid wasting the time and resources of the Court and the parties." (Id. ¶ 6).

It therefore asked the Court to enter an order "establishing a briefing schedule for the parties to address the legal issues in the Objection before any discovery is undertaken." (Id. ¶ 4.) Its proposed schedule guaranteed that an evidentiary hearing could not be held before the Plan confirmation hearing, as the PBGC's reply brief on legal issues would be due January 23, 2017 at 4:00 p.m. (D.I. 17380), which as the Court noted was only mere hours before the Plan confirmation hearing (Tr. at 38:1-6.)[4]

13.    The Court unequivocally rejected the PBGC's delay tactics. It ruled "without hesitation" that "the Debtors are entitled to discovery and to an Evidentiary Hearing on these matters." (Tr. at 55:18-20.) It overruled the PBGC's objections to proceeding with discovery, concluding that discovery was necessary and should proceed at once. It identified "numerous" factual issues and mixed questions of law and fact, including, for example: "[W]hy the PBGC did not move to file amended claims pursuant Bankruptcy Rule 7015?" "Were the amended claims made in bad faith?" "Does the PBGC's discount rate reflect the money needed as of the Plan termination date to enable the PBGC to satisfy the forthcoming pension obligations?" And is the PBGC "discount rate which the Debtors challenge" "arbitrary and capricious"? (Tr. at 54-55.)

14.    The Court was clear that it expected both parties to cooperate fully in discovery and get the work done in short order. The Court said "gently, but with its full measure, that there has to be discovery. And there will be an Evidentiary Hearing on the claims, the amended claims, and the Debtors' objection," because "[w]hat the Court is addressing in the dispute are

---

[4]    The PBGC argued that "the applicability of PBGC's regulatory interest assumption," "the statutory termination premiums," and "whether PBGC can file an amended claim without filing a motion under Bankruptcy Rule 7015" were all "pure" questions of law. (First Motion ¶ 6.) It asserted that its "investment policies" were "irrelevant" and that its "decision-making processes" and "information underlying the process by which the PBGC [regulatory] rate is set" were "not permissible subjects of discovery." (Id.) The Court rejected all of these assertions.

mixed questions of law and fact and that requires discovery." (Tr. at 53:11-15.) The Court initially suggested that discovery would be due as early as December 12, 2016 (Tr. at 56:21), but left it to the parties to work out the exact timing, including building in "time for objections and for me to hear those objections and those could be on fairly, what I would think would be fairly short order" (Tr. at 57:7-10). The Court was clear in its directions that the parties should engage with each other on the substance of discovery: "Talk about -- talk with the PBGC about when discovery will be made and then when you've arrived at a date, we'll add a few days and we'll schedule a hearing on any discovery disputes. I don't want to impose a date for discovery to terminate here. I'd rather the parties talk and agree." (Tr. at 57:20).

15.     That same day, the Court issued the Discovery Order denying PBGC's First Motion (as it had indicated at the hearing), confirming the evidentiary hearing dates, and directing the parties once again to meet and confer: "The Debtors and the PBGC are directed to meet and confer on the scope of discovery not later than November 30, 2016, with the goal of narrowing the parameters of discovery and to set a date for production." (D.I. 17426.) The Court stated it "expects good faith and reason to prevail as the Debtors and the PBGC prepare for the evidentiary hearing." (Id.) The parties were not invited to reargue their positions on the schedule; they were ordered to pursue discovery with all due speed.

16.     The Debtors took heed. As noted on the transcript, the Debtors' counsel offered to "schedule a meeting and confer *immediately*" at the conclusion of the November 22 hearing. (Tr. at 57:24-25 (emphasis added)). The Debtors' reiterated the offer to the PBGC in court, immediately after the hearing concluded, suggesting a meet-and-confer the following day. The PBGC rejected that offer, stating that they would not be in the office the day before Thanksgiving and would not otherwise make time for a meet and confer that day.

17.     The next day, on Wednesday, November 23, having heard nothing from the

PBGC about the Debtors' offer to discuss the scope of discovery, the Debtors followed up with a

detailed proposal for the conduct of discovery on the timeline ordered by the Court.  The

Debtors' proposed schedule contemplated, among other things, that:

- The Debtors would serve amended, narrowed document requests within 8 days of the November 22 hearing.

- The PBGC would simultaneously produce the documents it previously produced in the US Airways litigation – a virtually burden-free task that the PBGC offered to complete during the hearing but has yet to follow through on.[5]

- The PBGC would make rolling document productions as to uncontested requests while points of dispute were ironed out, thereby making the most of the time available.

- There would be a hearing before the Court during the first full week of December to address any outstanding disputes in a timely manner.

- The Debtors would grant the PBGC an additional week to respond to the Debtors' interrogatories (in addition to the one-week extension already granted).

- The parties would each have 36 days from the November 22 hearing to complete expert reports.

- The week prior to the evidentiary hearing would be reserved for depositions.

(November 23, 2016 Email from J. Bromley to P. Connelly, attached as Exhibit A.)

18.     The Debtors' proposal was met with silence.  It was not until three days later, on

November 26, a Saturday, at 7:09 p.m. in the evening that the PBGC responded, flatly rejecting

the Debtors' proposal without suggesting any alternative schedule that would complete discovery

in the time ordered by the Court – which the PBGC dismissed as "impossible."  (November 26,

2016 Email from G. Wilson to J. Bromley, attached as Exhibit A.)  The Debtors responded on

---

[5]     The PBGC stated on the record that "there was an administrative record of sorts put together for the PBGC's regulation for the U.S. Airways case.  We would be happy to produce that.  *It's already put together*."  (Tr. at 45:7-10 (emphasis added).)  It is simply inexcusable that the PBGC has yet to do so, more than a week after the hearing and after the Debtors requested it be produced as a logical first step in discovery.

9

Monday, November 28, pointing out that the PBGC's proposal to push out the schedule indefinitely was moot in light of the Court's Discovery Order, that the Court clearly understood the implications of the schedule it established, and that the Debtors would be serving narrowed document requests the following day (one day earlier than as indicated in their proposed schedule) and would be prepared to have a meet and confer the following morning – notwithstanding that the PBGC had until that point refused the Debtors' offers to meet and confer on the scope of the requests, which had been pending in some form for over two weeks. (November 28, 2016 Email from J. Bromley to G. Wilson, attached as Exhibit A.)

19.    On November 29, 2016, the Debtors served further revised and narrowed document requests.  Bearing in mind the Court's direction to narrow the scope of discovery consistent with the schedule set by the Court, the Debtors *withdrew 10 of its 35 document requests entirely*, significantly narrowing both the scope of discovery requested and the number of points of potential dispute.  (See Comparison of Document Requests dated November 15, 2016 and November 29, 2016, attached as Exhibit B.)  The withdrawn requests include significant matters concerning the PBGC's claims and its bad faith, which the Court ruled were relevant and discoverable but which the Debtors nonetheless agreed voluntarily to withdraw in order to reduce the burden of discovery on the PBGC and focus discovery on the most crucial issues and documents.  In addition, the Debtors have revised several of the 25 remaining document requests to significantly narrow their scope and burden, in several instances replacing its requests for "all documents" concerning relevant matters with requests for documents "sufficient to show" the key issues.

20.    Instead of engaging with the Debtors as the Court directed, the PBGC instead elected to file its Motion, nearly a week after the November 22 hearing.[6]  It should not be rewarded for doing so.[7]

## II.    THE PBGC'S SECOND MOTION PROVIDES NO BASIS FOR RECONSIDERATION OF THE COURT'S DISCOVERY ORDER

21.    The Court made clear that it was well aware of the implications of the Discovery Order, taking into account both the magnitude of discovery to be had and the short time available for it.  It was on this basis – the Court's understanding of the issues at play and the time needed to address them – that it set the hearing schedule.  (See Tr. at 55:21-56:9.)

22.    The PBGC has offered no valid reason to reverse course now – no new facts or circumstances, no intervening change in the law.  The only two purported bases for reconsideration offered by the PBGC are (i) that the Court's decision was allegedly based on concerns regarding plan voting raised by the bondholders at the November 22 hearing, and (ii) that the court in the US Airways case allowed a longer period for discovery.  Both arguments are built on false premises – the Court's decision was not based exclusively on the concern raised by the bondholders, and the court in US Airways did not provide a materially longer period for discovery.  But regardless, neither argument constitutes a new fact, change of circumstances, or intervening change in the law that could possibly warrant reconsideration.  Both were raised by PBGC in its First Motion, and both were rejected by the Court.

---

[6]    Despite seeking to shorten the Debtors' time to respond to the motion, the PBGC filed it only on ECF and without emailing a copy to the Debtors or otherwise alerting them to the filing and request to shorten.

[7]    Only after filing its Motion and after the Debtors' counsel made yet another request to meet and confer on November 30, did the PBGC finally agree to meet and confer on December 1 (after the deadline set by the Court in its Discovery Order).  During the meet and confer, the PBGC announced that it would be serving discovery requests in the coming days – over 20 days after the Debtors served their original discovery requests on November 11 and with only five weeks remaining before the hearing, a maneuver presumably designed to stretch out discovery, prejudice the Debtors, or both.

A. **Plan Voting Issues**

23.     The PBGC argues, without support, that the "*sole* reason" for the Court's decision was to account for a plan voting concern raised by bondholders at the November 22 hearing (Second Motion at 2), and that the Court need not give weight to this argument in light of the PBGC's offer (nearly a week after the November 22 hearing) to "stipulate[e] to limit its claims *for voting purposes only* to a significantly reduced amount."  (Second Motion at 2.)

24.     As a preliminary matter, the PBGC made precisely the argument it advances now in its First Motion:  that "[t]he Debtors' goal of confirming a Chapter 11 plan in early 2017 is not at all dependent on the timing of adjudicating PBGC's claims" and that "[t]he proposed plan does not prescribe any such timing."  (First Motion ¶ 7; see also Second Motion at 1-2 ("At the November 22, 2016, hearing on PBGC's motion for a briefing schedule, PBGC asked the Court to postpone any extensive litigation of the Debtors' objection to PBGC's claims until after the confirmation hearing to avoid diverting the parties from focusing on confirmation issues.  PBGC noted that the Debtors' claims reserve covers the disputed portion of PBGC's claims, and that the Settlement and Plans Support Agreement acknowledges that PBGC could have a claim of as much as $708 million.").)  Having unconvincingly raised this argument in its First Motion, and having had the opportunity to address the bondholders' counterargument at oral argument on November 22, the PBGC should not be heard now to complain that the Court did not adopt its erroneous position.  The PBGC presents no valid argument for reconsideration; it merely repeats its prior points.[8]

---

[8]     The PBGC's proposal to stipulate to a lower amount for purposes of voting on Debtors' plans is not a new fact relevant to the Court's analysis.  The Objection is not about voting (indeed, because of the Objection, the burden is on the PBGC to move for allowance for voting purposes).  The Objection is about the allowance of such Claims for all purposes.

25.     In any case, the PBGC's understanding of the bondholders' concerns is a red herring. It was the Court that decided the schedule – not the bondholders or other parties – and for its own, and proper, reasons: "THE COURT: Okay. All right. Then I'm going to suggest the 9th, 10th, and 11th of January." (Tr. at 56:19-20.) The Court made its reasons clear:

> Now the concern the Court has is with the volume of discovery that has been just identified and the date for the Evidentiary Hearing, there's a lot of work to be done, a tremendous amount of discovery, I think. And Ms. Connelly, I know has made proposals today for discovery. I think the parties need to talk about discovery and what will be acceptable and what is necessary. We can't have 40 years of material produced in what will be a short time because *I am going to propose that the Evidentiary Hearing take place the second week of January. I need to time to decide. This is a difficult issue. It's a complex matter. And I need the time before confirmation and I want to get you a ruling before confirmation, not on the eve of confirmation, but well in advance.*

(Tr. at 55:21-56:9 (emphasis added).)  As is clear from the bolded text above, the Court set the schedule it chose for its own reasons.  The Court felt it prudent to rule on the Objection prior to confirmation, and felt it needed adequate time to do so.  As the Court also noted, "this has been a long, difficult case.  And it's unfortunate that we're where we are today so close to what will be a Confirmation Hearing at the end of January." (Tr. at 53:1-4.)  Unfortunate indeed, and all the more so that the PBGC seeks to delay the case further.

**B.  US Airways**

26.     The Second Motion, like the First Motion, also invokes the purportedly "landmark" precedent of the <u>US Airways</u> bankruptcy litigation.  (First Motion ¶ 5; Second Motion at 2.)  The PBGC attempts to draw a contrast with the <u>US Airways</u> case in which the court also held an evidentiary hearing on an objection to a claim by the PBGC.  (Second Motion at 2.)  Having previously relied on that case in its First Motion to argue that *no* discovery is needed here (First Motion ¶ 5), it is ironic, to say the least, that the PBGC now invokes <u>US</u>

13

Airways to suggest that the amount of discovery needed to resolve the Objection is *so substantial* that the 47 days between November 22 and the January 9 hearing must be expanded.  While the Debtors look forward to receiving the voluminous productions the PBGC is apparently planning on making, the circumstances in <u>US Airways</u> are readily distinguishable.  There, the objection to the PBGC's claim was filed on August 1, 2003 – more than four months *after* the plan of reorganization had been confirmed on March 18, 2003.  The Court was therefore not confronted with the situation here, where the PBGC's oversized claims have long been a point of contention and the subject of an Objection provided to the PBGC in draft form over four months ago.

27.     Even were <u>US Airways</u> not clearly distinguishable on this point, the fact is that the discovery schedule proposed by the Debtors here – which unlike the PBGC's position conformed to the Court's order – provides just as much time for discovery, if not more.  The PBGC emphasizes that the <u>US Airways</u> court held its evidentiary hearing nearly three months after issuing a scheduling order, but as the PBGC also concedes, most of that time was not occupied by discovery.  In fact, by the PBGC's own characterization, in <u>US Airways</u> the "court allowed [only] 20 days for discovery," with document production due 20 days after service of discovery requests.  (Second Motion at 2.)  Here, by contrast, under the Debtors' proposed schedule the PBGC's production would not need to be substantially complete until December 16, 2016 – 24 days after the November 22 hearing, and *five weeks* (35 days) after the Debtors' original requests (since amended and narrowed) were served on November 11.  The bulk of the difference between the schedule here and the one used in <u>US Airways</u> is not the time for discovery, but rather the time for dispositive motions, evidentiary stipulations, and pretrial briefs – which in <u>US Airways</u> occupied nearly a month, but which are neither required nor contemplated under the Court's schedule here.

14

## CONCLUSION

For all of the foregoing reasons, the PBGC's Second Motion should be denied.


Dated:  December 2, 2016          CLEARY GOTTLIEB STEEN & HAMILTON LLP
        Wilmington, Delaware

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999


        - and -


KEIGHTLEY & ASHNER LLP          MORRIS, NICHOLS, ARSHT & TUNNELL LLP


          */s/ Andrew R. Remming*
Harold J. Ashner                Derek C. Abbott (No. 3376)
700 12th Street, N.W., Suite 700     Eric D. Schwartz (No. 3134)
Washington, D.C. 20005          Andrew R. Remming (No. 5120)
Telephone:  (202) 558-5147      1201 North Market Street
Facsimile:  (202) 330-5490      P.O. Box 1347
        Wilmington, Delaware 19801
        Telephone:  (302) 658-9200
        Facsimile: (302) 658-3989


*Special Pension Benefits Counsel*          *Counsel for the Debtors*
*for the Debtors and Debtors in*          *and Debtors in Possession*
*Possession*