**EXHIBIT B**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
|  | X | |
| *In re* | : | Chapter 11 |
|  | : | |
| Nortel Networks Inc., *et* | : | Case No. 09-10138 (KG) |
|  | : | |
| Debtors. | : | Jointly Administered |
|  | : | |
|  | : | |
|  | : | |
|  | X | |

**DEBTORS' SECOND AMENDED FIRST SET OF REQUESTS**
**FOR PRODUCTION OF DOCUMENTS TO**
**THE PENSION BENEFIT GUARANTY CORPORATION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made

applicable to this proceeding by Rules 7026 and 7034 of the Federal Rules of Bankruptcy

Procedure, and Rules 7026-1 and 7026-3 of the Local Rules for the United States Bankruptcy

Court for the District of Delaware (the "Local Rules"), and in accordance with Judge Gross's

ruling on November 22, 2016 that "the Debtors are entitled to discovery and to an Evidentiary

Hearing on these matters" to be held on "the 9th, 10th, and 11th of January" (11/22/16 Tr. at

5556), Nortel Networks Inc. and certain of its affiliates, as debtors and debtors-in-possession

in the above-captioned case (collectively, the "Debtors"), hereby request claimant, the Pension

Benefit Guaranty Corporation (the "PBGC"), to produce the documents described below (the

"Requests") at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New

York, New York 10006 (Attn: James L. Bromley) on or before December 15, 2016. These

Requests amend and replace the Debtors' November 11, 2016 First Set of Document Requests

to the Pension Benefit Guaranty Corporation.

---

[1]       The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera

Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International, Inc. (8667). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

New York, New York 10006 (Attn: James L. Bromley) on a schedule to be agreed by the Parties or set by the Court such that production is made sufficiently in advance of the evidentiary hearing commencing January 9, 2016. These Requests amend and replace the Debtors' November 15, 2016 First Amended Set of Document Requests to the Pension Benefit Guaranty Corporation.

<u>DEFINITIONS</u>

1.    "ACLI Survey" means the quarterly survey conducted for the PBGC by the American Council of Life Insurers about annuity pricing information, as referenced by the PBGC in "PBGC Procedure for Setting Interest Factors Used to Value Liabilities For PBGC Financial Statements" (available at http://www.pbgc.gov/news/other/res/pbgc-procedure-interest-factors.html).

2.    "Allocation Trial" means the cross-border trial that was held in 2014 before the Court (as defined below) and the Canadian Court (as defined below) to determine allocation of the proceeds from the sale of over $7.3 billion in assets pursuant to the Interim Funding and Settlement Agreement, dated as of June 9, 2009 by and between the parties listed on Schedules 1, 2, and 3 thereto, and approved by the Order Entering Allocation Protocol, dated May 17, 2013 [D.I. 10564], the Order Entering Litigation Timetable and Discovery Plan, dated May 17, 2013 [D.I. 10566], the Canadian Court's Order (Allocation Protocol), dated April 3, 2013 and the Canadian Court's Order (Allocation Protocol – Litigation Timetable and Discovery Plan), dated May 15, 2013.

3.    "Amended PBGC Claims" means the proofs of claim filed by the PBGC against the Debtors on July 7, 2014 and designated on the Debtors' claim register as claim numbers 8760, 8761, 8762, and 8763, including the statements of the PBGC in support of each claim (each proof of claim, individually, an "Amended PBGC Claim").

3

4.      "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests any documents or other information which might otherwise be construed to be outside their scope.

5.      "Canadian Court" means the Ontario Superior Court of Justice – Commercial List.

6.     "Committee" means the Official Committee of Unsecured Creditors in the above captioned cases.

7.     "Communicate" or "Communication" means any transmission of information by one of more persons and/or between two or more persons by any means, including, without limitation, telephone conversations, letters, memorandums, facsimiles, electronic mail or other computer communications or linkups, electronic transfers, transfers of information stored on computer disk or computer memory, written memoranda, voice messaging and face-to-face conversations.

8.     "Concern," "relate to," "concerning," or "relating to" any given subject means all documents which assess, concern, constitute, contain, describe, discuss, embody, evidence, identify, record, reflect, regard, show, state, or refer or relate, directly or indirectly, in any way, to the subject matter identified.

9.     "Court" means the court in the above-captioned cases.

10.    "Debtors" means the above-captioned debtors.

11.    "Document(s)" shall have the full meaning ascribed to it in Rule 34 of the Federal Rules of Civil Procedure, and for purposes of this Request shall be deemed to include "electronically stored information" ("ESI") as also defined in Rule 34. Examples of documents include, but are not limited to, all writings in any form, calendars, correspondence, diaries,

manuals, memoranda, notes, actuarial work papers, reports, records, drawings, graphs, charts, photographs, sound recordings, images, video recordings, telephone records, Bloombergs, electronic mail messages, instant messages, spreadsheets, databases, all other forms of electronic communication, and other data or data compilations of whatever nature stored in any medium (including those from which information can be obtained or translated if necessary into a

reasonably useable form). For the avoidance of doubt, document(s) shall include all originals of any nature whatsoever and all non-identical copies thereof, whether different from the originals by reason of any notation made on such copies or otherwise.

12.     "Insurance Claim" means the proof of claim filed by the PBGC against the Debtors on September 29, 2009 and designated on the Debtors' claim register as claim number 4737, including the statement of the PBGC in support of this claim.

13.     "Milliman" means Milliman, Inc. and each of its divisions, subsidiaries, affiliates, controlled entities, related companies, predecessors, successors and assigns; and present and former officers, directors, employees, agents, attorneys, accountants, actuaries, and representatives of any of the persons or entities listed above; and any other person or entity who currently or formerly acted or purported to act on behalf, or who are or have been subject to the direction or control of, any of the persons or entities listed above.

14.     "PBGC" means the Pension Benefit Guaranty Corporation and each of its departments, offices, divisions, and branches; and present and former members of its board directors, executive directors, directors, officers, employees, contractors (including but not limited to Milliman), agents, attorneys, accountants, actuaries, and representatives of any of the persons or entities listed above; and any other person or entity who currently or formerly acted

or purported to act on behalf, or who are or have been subject to the direction or control of, any of the persons or entities listed above.

15.     "PBGC Claims" means the proofs of claim filed by the PBGC against the Debtors on September 29, 2009 and designated on the Debtors' claim register as claim numbers 4735, 4736, 4737 and 4738, including the statements of the PBGC in support of each claim (each proof of claim, individually, a "PBGC Claim").

16. "PBGC Select Rate" means the interest rate that the PBGC publishes or has published in Appendix B to 29 CFR Part 4044 (or in Appendix B to the predecessors to 29 CFR Part 4044, i.e. 29 CFR Part 2619 or 29 CFR Part 4010) that applies to the select period.

17. "PBGC Ultimate Rate" means the interest rate that the PBGC publishes or has published in Appendix B to 29 CFR Part 4044 (or in Appendix B to the predecessors to 29 CFR Part 4044, i.e. 29 CFR Part 2619 or 29 CFR Part 4010) that applies to the ultimate period.

18. "Pension Plan" means the Nortel Networks Retirement Income Plan effective May 1, 1974.

19. "Person" shall mean and include a natural person, individual, partnership, firm, labor organization, corporation, governmental body, or any kind of business or legal entity, its agents or employees.

20. "Prudent Investor Rate" means the rate of return on the PBGC's assets that would be obtained by a prudent market investor.

21. "Unfunded Benefit Liabilities Claim" means the proof of claim filed by the PBGC against the Debtors on September 29, 2009 and designated on the Debtors' claim register as claim number 4735, including the statement of the PBGC in support of this claim.

22.     "You" or "Your" as used herein means the PBGC as well as any former or current owner, director, officer, employee, agent, trust, custodian, parent, subsidiary, affiliate, predecessor, successor, attorney, accountant, representative, or other person(s) purporting to act on the PBGC's behalf.

## INSTRUCTIONS

1.     In construing these Requests, where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to obtain the broadest possible meaning.

2.      In construing these Requests the word "any" shall be read to mean each and every.

3.      In construing these Requests the word "all" and "each" shall be construed as "all and each;"

4.      In construing these Requests the use of a verb in any tense shall be construed as the use of that verb in all other tenses.

5.      Each Request shall be answered fully and in writing.

6.      In responding to these Requests, You shall produce all responsive documents that are in Your possession, custody or control or in the possession, custody, or control of any of Your predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of Your respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives. A document shall be deemed to be within Your control if You have the right to secure the document or a copy of the document from another person or entity having possession or custody of the document.

7.      These Requests are intended to cover all information and Documents in the PBGC's possession, custody or control. If any document responsive to these Requests was, but is, no longer, in Your possession, custody or control, state whether it (a) is missing or lost;

(b) has been destroyed; (c) was transferred voluntarily or involuntarily to others; or (d) was otherwise disposed of. In each instance, identify the name, address, and telephone number of the document's current or last known custodian, and the date and circumstances surrounding its disposition.

8.      ESI shall be produced in standard Group IV TIFF format with accompanying text extraction and metadata in a Concordance load file, unless otherwise stated in

the Requests. To the extent You produce one form of a document, it need not be produced in another form; however, the Debtors reserve the right to request native files for any document that is unreadable or has limited Accessibility in the Group IV TIFF format (e.g., ~~MS Excel,~~ PowerPoint~~, or databases~~). Audio, audiovisual, ~~and~~ video and database or spreadsheet (e.g. ME Excel) files shall be produced in their native formats. The metadata for any responsive ESI shall be produced with the responsive data, including the following fields as appropriate for the file type: author(s), recipient(s), blind copy recipient(s), subject, document type, custodian, file creation date, file modification date, access date, last save by, file path, and folder information.

9.      The documents covered by these Requests encompass those dated, created, or that have come into existence through the date of these Requests and to the time of production.

10.      These Requests are continuing in nature. Under Rule 26(e) of the Federal Rules of Civil Procedure, the PBGC is required to supplement or amend the responses to these Requests if they obtain further or different information and/or learn that a response is incomplete or incorrect, and the Debtors specifically reserve the right to seek supplementary responses.

11.      If objection is made to any of these Requests, the response shall state whether documents are being withheld from inspection and production on the basis of such

objection, or whether inspection and production of the responsive documents will occur notwithstanding such objection.

12.     If You claim a privilege as to any of the information requested to be identified and/or produced in the Requests, specify the privilege claimed, the Communication or other matter as to which such claim is made, the subject of the Communication or other matter and the basis upon which You assert the claim of privilege, as well as provide a description of

each document withheld sufficient to validate the privilege claimed, including the date of each document, its author and all recipients.

13.     If a portion of any document responsive to these Requests is withheld under claim of privilege pursuant to Instruction 13, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

14.     You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 14 and 15 above), regardless of whether You consider the entire document to be relevant or responsive to the Request.

15.     If no documents are responsive to a particular Request, please specify that You have no responsive documents.

16.     Each Request is to be answered separately and as completely as possible. The fact that an investigation is continuing or that discovery is not complete shall not be an excuse for failure to answer each Request as fully as possible.

17.     No part of a Request shall be left unanswered merely because an objection is made to another part of the Request.

18.     If, in answering these Requests, You claim any ambiguity in interpreting either a request or a definition or instruction applicable thereto, You should not use such claims

as a basis for refusing to respond, but You should set forth as part of your response to such Request the language You deem to be ambiguous and the interpretation You chose to use in responding to the Request.

19.    Each document produced pursuant to these Requests should be produced as it is kept in the ordinary course of business, within the file folder or binder in which such document is located.

DOCUMENTS REQUESTED

REQUEST NO. 1: ~~All Documents and Communications concerning~~As to the PBGC Claims, ~~including but not limited to~~documents sufficient to show the data used to determine pension entitlements, calculation of the claims amounts stated in each of the PBGC Claims, the methodology applied by the PBGC in determining the claim amounts stated in each of the PBGC Claims (including without limitation at least 10 different sample life calculations showing how the PBGC applies its discount rate, mortality table, XRA, and other assumptions to individuals with different statuses, payment forms, and benefit types), and the reasons for selection of that methodology, including but not limited to determination of any priority or administrative claim, and whether to make an adjustment to assets to reflect payment of premiums by the plan in 2009 in light of 29 C.F.R. § 4007.12.

~~REQUEST NO. 2: All Documents and Communications concerning the PBGC's review, submission or approval of each of the PBGC Claims.~~

REQUEST NO. ~~3~~2: ~~All Documents and Communications concerning~~As to the Amended PBGC Claims, ~~including but not limited to~~documents sufficient to show the data used to determine pension entitlements, calculation of the claims amounts stated in each of the Amended PBGC Claims, the methodology applied by the PBGC in determining the claim amounts stated in each of the Amended PBGC Claims (including without limitation at least 10 different sample life calculations showing how the PBGC applies its discount rate, mortality table, XRA, and other assumptions to individuals with different statuses, payment forms, and benefit types), the reasons for the selection of that methodology, and the reasons for

and the analysis supporting the amendment upward of the claim amounts asserted in the Unfunded Benefit Liabilities Claim and the Insurance Claim, including but not limited to determination of any priority or administrative claim, and whether to make an adjustment to assets to reflect payment of premiums by the plan in 2009 in light of 29 C.F.R. § 4007.12.

REQUEST NO. 43: All Documents and Communications concerning the PBGC's review, submission or approval of each of the Amended PBGC Claims.

REQUEST NO. 5: All Documents and Communications concerning any

REQUEST NO. 4: All guidelines, policies, procedures, practices, rules, staff instructions, or standards applicable to the PBGC or used by the PBGC that relate to the determination, analysis, review, submission or approval of the PBGC Claims or the Amended PBGC Claims, including but not limited to provisions of the Actuarial Technical Manual or Operating Policy Manual that apply to such determination, review, submission or approval.

REQUEST NO. ~~6~~5: The PBGC's full Pension Information Profile for the Pension Plan in Microsoft Excel format, with no hidden spreadsheet cells.

REQUEST NO. ~~7~~6: ~~All~~Documents sufficient to identify all proofs of claim filed by the PBGC within the past ten years in any bankruptcy proceeding where the PBGC amended upward the estimated amount owed by a debtor to the PBGC after passage of the bar date fixed by a court for filing proofs of claim or interests against that debtor.

~~REQUEST NO. 8: All Documents filed by the PBGC on a claims register or with a court concerning the proofs of claim You produced in response to Request No. 7.~~

REQUEST NO. ~~9~~7: All Documents and Communications supporting, providing a basis for or against, or otherwise concerning use of a Prudent Investor Rate or other rate not specified in PBGC regulations implementing ERISA Section 4044, in order to determine the amount of a PBGC claim for underfunding of a terminated pension plan.

REQUEST NO. ~~10~~8: All Documents and Communications supporting, providing a basis for, or otherwise concerning the PBGC Select Rate and PBGC Ultimate Rate.

REQUEST NO. ~~11~~9: All ACLI Surveys conducted on or after January 1, 2008, and on or before December 31, 2009, and all Documents and Communications concerning the ACLI Surveys conducted during that time period, including but not limited to information reflecting the identity of the insurance company providing each response to each such survey and the use of each such survey by the PBGC to determine PBGC Select Rates and PBGC Ultimate Rates.

REQUEST NO. ~~12: All~~10: Documents ~~and Communications concerning~~ sufficient to show the PBGC's methodology for determining the interest rates that the PBGC publishes or has published in Appendix B to 29 CFR Part 4044 (or in Appendix B to the predecessors to 29 CFR

Part 4044, i.e. 29 CFR Part 2619 or 29 CFR Part 4010) based on the results of the ACLI Surveys, including but not limited to any changes to that methodology or the ACLI Surveys, and any Documents or Communications concerning the validity or appropriateness of that methodology, ACLI Survey results, or the PBGC's approach of selecting interest rates by attempting to match private-sector annuity prices.

REQUEST NO. 1311: All Documents and Communications concerning the PBGC's submissions for approval to the Office of Management and Budget under the Paperwork Reduction Act, 44 U.S.C. §§ 3501-3521, of ACLI Surveys under OMB Control Number 12120030 that were received by the Office and Management and Budget (as reflected at http://www.reginfo.gov/public/do/PRAOMBHistory?ombControlNumber=1212-0030) on or about August 19, 1983, August 7, 1986, April 17, 1987, December 28, 1987, February 11, 1988, February 5, 1990, April 20, 1990, May 25, 1993, July 30, 1993, September 20, 1999, and February 10, 2009, including but not limited to Documents and Communications relating to

changes to the ACLI Survey or to the PBGC's methodology for determining interest rates, or to the Office of Management and Budget's questions and responses about such PBGC submissions.

REQUEST NO. ~~14~~12: Documents and Communications supporting, providing a basis for or against, or otherwise concerning use of the expected retirement age assumptions specified in PBGC's regulations implementing ERISA Section 4044.

REQUEST NO. ~~15~~13: All Documents and Communications concerning the PBGC's determination, as reflected in its "Notice of proposed changes in the method for setting the interest rate and factor," published at 45 Fed. Reg. 38415 (June 9, 1980), to propose a new method for determining the interest rates that apply to terminating or terminated pension plans.

REQUEST NO. ~~16~~14: All Documents and Communications concerning the PBGC's rulemaking actions reflected in its proposed rules published at 40 Fed. Reg. 57982 (December 12, 1975), 41 Fed. Reg. 48498 (Nov. 3, 1976), 58 Fed. Reg. 5128 (Jan. 19, 1993), and 70 Fed. Reg. 12429 (Mar. 14, 2005), its interim final rules published at 41 Fed. Reg. 48484 (Nov. 3, 1976), 42 Fed. Reg. 2678 (Jan. 13, 1977), and 43 Fed. Reg. 55240 (Nov. 27, 1978), and its final rules published at 46 Fed. Reg. 9492 (Jan. 28, 1981), 58 Fed. Reg. 50812 (Sept. 28, 1993), and 70 Fed. Reg. 72205 (Dec. 2, 2005).

REQUEST NO. ~~17~~15: All Documents and Communications concerning the PBGC's decisions, reasons, or bases for purchasing or for not purchasing annuities with its assets, including but not limited to assets consisting of PBGC premiums, assets of terminated plans, or recoveries the PBGC has received on its claims against employers.

REQUEST NO. ~~18~~16: All Documents and Communications concerning the PBGC's investment strategy under the PBGC's single-employer program for its assets, including

but not limited to assets consisting of PBGC premiums, assets of terminated plans, or recoveries the PBGC has received on its claims against employers.

REQUEST NO. ~~19~~17: All ~~Documents and Communications concerning any~~ guidelines, policies, procedures, practices, rules, staff instructions, or standards applicable to the PBGC or used by the PBGC with respect to how the investment managers are permitted to invest the PBGC's assets under the PBGC's single-employer program, including but not limited to assets consisting of PBGC premiums, assets of terminated plans, or recoveries the PBGC has received on its claims against employers.

~~REQUEST NO. 20: All Documents or Communications concerning meetings of the Committee, either by telephone or in person, including but not limited to any documents~~

created in preparation for Committee meetings, created for use during the Committee meetings, or created after the conclusion of Committee meetings.

REQUEST NO. 21: All Documents concerning expenses incurred by the PBGC which relate to meetings of the Committee, either by telephone or in person, including but not limited to expenses incurred in preparation for the Committee meetings, transportation expenses to and from the Committee meetings, lodging and meal expenses incurred during the course of attending Committee meetings.

REQUEST NO. 22: All18: Documents and Communications concerningsufficient to permit the Debtors to calculate the aggregate number of days PBGC personnel attended meetings and conference calls concerning the Debtors' Chapter 11 proceedings, including without limitation committee meetings, committee conference calls, hearings before the Bankruptcy Court, mediation sessions, and the Allocation Trial, including but not limited to any documents created in preparation for the Allocation Trial, created for use while observing the Allocation Trial, or created after the conclusion of the Allocation Trial.

REQUEST NO. 23: All Documents concerning expenses incurred by the PBGC which relate to the Allocation Trial, including but not limited to expenses incurred in preparation for the Allocation Trial, transportation expenses to and from the Allocation Trial, and lodging and meal expenses incurred during the course of observing the Allocation Trial.

REQUEST NO. 2419: All Documents and Communications concerning any mediations or negotiations relating to allocation of the Debtors' assets, including but not limited to any documents created in preparation for such mediations or negotiations, created

for use during such mediations or negotiations, or created after the conclusion of such mediations or negotiations.

REQUEST NO. 25: All Documents concerning expenses incurred by the PBGC which relate to mediations or negotiations concerning allocation of the Debtors' assets, either by telephone or in person, including but not limited to expenses incurred in preparation for such

~~mediations or negotiations, transportation expenses to and from such mediations or~~

~~negotiations, and lodging and meal expenses incurred during the course of attending such~~

~~mediations or negotiations.~~

REQUEST NO. ~~26~~20: All Documents and Communications concerning

analysis, assessment or review of any position for allocation of the Debtors' assets,

including but not limited to the likelihood of success of any position for allocation asserted,

argued or otherwise raised by any party to the Allocation Trial.

~~REQUEST NO. 27: All Documents and Communications concerning analysis,~~

~~assessment or review of pleadings, motions, memoranda, reports or other legal documents~~

~~filed in this Court or the Canadian Court relating to the Allocation Trial.~~

REQUEST NO. ~~28~~21: All Documents and Communications concerning the

impact on claim recoveries by any position for allocation of the Debtors' assets, including but

not

limited to any position for allocation asserted, argued or otherwise raised by any party to the Allocation Trial.

REQUEST NO. 29: All Documents and Communications concerning the time spent and amount billed by individuals employed, hired or retained by the PBGC analyzing, assessing or reviewing any position for allocation of the Debtors' assets, including but not limited to any time log or diary entries created by such individuals

REQUEST NO. 30: All Documents and Communications concerning the time spent and amount billed by individuals employed, hired or retained by the PBGC analyzing, assessing or reviewing the impact on claim recoveries of any position for allocation of the Debtors' assets, including but not limited to any time log or diary entries created by such individuals.

REQUEST NO. ~~31~~22: All Documents and Communications concerning the determination made by the PBGC or Milliman, reflected in the Actuarial Case Memo for: Nortel Networks Retirement Income Plan, dated August 4, 2014, that the PBGC's "Actual Recovery Ratio" was 67.21%.

REQUEST NO. ~~32~~23: All ~~Documents and Communications concerning any~~ guidelines, policies, procedures, practices, rules, staff instructions, or standards applicable to the PBGC or used by the PBGC that relate to the PBGC's determination, decision or approval to amend a proof of claim, including but not limited to any policy concerning the PBGC's decision to amend or not amend a proof of claim filed in any proceeding when there is less than a 5% deviation from the claim amount stated in the initial proof of claim and the audited liabilities amount determined by the PBGC for that claim.

~~REQUEST NO. 33: All Documents and Communications concerning how the guidelines, policies, procedures, practices, rules, staff instructions, or standards You produced in response to Request No. 32 applied or did not apply to the PBGC's decision to amend upward the claim amounts stated in each of the Unfunded Benefit Liabilities Claim and the Insurance Claim.~~

REQUEST NO. ~~34~~24: All Documents and Communications concerning the PBGC's determination, calculation, estimation or projection of future PBGC investment return on assets under the PBGC's single-employer program, including but not limited to the determination, estimation, calculation or projection of future PBGC investment return on assets based upon the PBGC's stochastic model for its 2008 and 2009 fiscal years under the PBGC's Pension Insurance Modeling System ("PIMS").

REQUEST NO. ~~35~~25: All Documents and Communications ~~identified in Your responses to Debtors' November 15, 2016 Amended First Set of Interrogatories to the Pension Benefit Guaranty Corporation, and all Documents and Communications relating to or supporting those responses.~~concerning the PBGC's mortality studies conducted in 2004 and 2011, as referenced in the 2004 and 2012 PBGC annual reports.

Dated: November ~~15~~29, 2016
     Wilmington,
     Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

  - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

   */s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*