# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

Derek C. Abbott
(302) 351-9357
(302) 425-4664 FAX
dabbott@mnat.com

December 13, 2016

**VIA ECF**

The Honorable Kevin Gross
United States Bankruptcy Court
    for the District of Delaware
824 N. Market St., 6th Floor
Wilmington, DE 19801

      Re:    *In re Nortel Networks Inc., et al., Case No. 09-10138 (KG)*

Dear Judge Gross:

      I write on behalf of Nortel Networks Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned case (collectively, the "Debtors") to raise an important issue in advance of the telephonic discovery hearing scheduled for December 13, 2016 regarding the Debtors' objection to claims filed by the PBGC (the "Objection") (D.I. 17325).

      One of the central questions in this contested matter is whether "the PBGC uses a discount rate which [is] arbitrary and capricious." (11/22/16 Tr. 55.) Your Honor ruled that this entailed "numerous" factual questions, including an examination of "the processes by which the PBGC regulatory rate is set." (*Id.*) To date the PBGC has not produced a *single* document responsive to the Debtors' requests targeting the PBGC's rationale for adopting an annuity-based discount rate in calculating its claims. Most recently, in serving formal responses to the Debtors' document requests, the PBGC has asserted a blanket claim of "deliberative process privilege" that threatens to deny completely access to information on this issue. The Debtors request a ruling that the deliberative process privilege does not block discovery on this critical issue and an order that the PBGC immediately produce responsive documents being withheld on the basis of the deliberative process privilege.[1]

---

[1] The PBGC asserts deliberative process privilege as a general objection and specifically in response to Requests 4, 5, 10, 12, 16 and 18. (PBGC's Responses and Objection, attached as Exhibit A.)

The Honorable Kevin Gross
December 13, 2016
Page 2

I.     **The Discovery Sought Is Highly Relevant**

The PBGC has invoked the deliberative process privilege in response to the key requests aimed at determining whether the PBGC's regulatory discount rate is arbitrary and capricious.

As explained in the Debtors' prior submissions (D.I. 17420), the PBGC's practice of using annuity pricing to calculate its discount rate is not only arbitrary, but in fact contradictory to the PBGC's own consistent rationale for its Valuation Regulation that it has published in the Federal Register: "The value of a benefit as of the date of termination is the current value of the *cost that the PBGC normally should incur* as of the date of termination, in providing the benefit under reasonable . . . *investment returns assumptions reflecting current and longer term investment opportunities*." 40 Fed. Reg. 57982 (Dec. 12, 1975) (emphasis added). The PBGC's official notices published in the Federal Register fail to explain why the PBGC has chosen to use annuity pricing, when that method does not reflect its own cost, nor have the PBGC's official notices ever announced that the PBGC has abandoned its "cost" standard. The Debtors sought this critical information in Document Request 16, among others, which seeks documents concerning the PBGC's relevant rulemaking actions. In response, the PBGC has invoked the deliberative process privilege and produced nothing regarding its rationale for annuity pricing.

Nor has the PBGC produced a single document in response to Debtors' Document Request No. 10, which seeks documents concerning a 2013 white paper published on the PBGC's website, titled "Derivation of Interest Factors in PBGC's Liability Valuation Methodology" (the "White Paper"). The White Paper, which has not been published in the Federal Register or ever made subject to public scrutiny or commentary, states that its "purpose" "is to describe the *rationale* for the PBGC's liability valuation methodology and regulation particularly as it relates to the determination and application of interest factors." White Paper at 1 (emphasis added). The White Paper's stated rationale, however, is directly at odds with the explanation provided by the PBGC in the Federal Register in 1975 shortly after ERISA was enacted, and subsequently reiterated verbatim by the PBGC 17 years later in a 1993 proposed rule. 58 Fed. Reg. 5128 (Jan. 19, 1993). In contrast to the original explanation quoted above, which was based on the cost to the PBGC, the PBGC in the White Paper asserts – 20 years after its last Federal Register statement on the subject – that "[f]rom the *outset*, the cornerstone of the PBGC regulatory approach has been to value a plan's benefit liabilities by approximating the *fair market price of group annuities sold by private sector insurance companies*." White Paper at 2 (emphasis added). As the Debtors will show, the cost of annuities contracts and the cost to the PBGC are far from the same. How and why the PBGC came to give a public justification for its Valuation Regulation (unrelated to any litigation) that directly conflicts with the official rationale published in the Federal Register during the notice and comment process and how it came to be posted on the PBGC's website have important implications for the Court's consideration of whether the discount rate is arbitrary and capricious.[2] Here too, however, the PBGC has invoked deliberative process privilege.

---

[2] Among other things, the possibility that "[p]ost hoc rationalizations" were employed in an attempt to compensate for the fact that the original administrative record does not justify the PBGC's artificial discount rate warrants discovery. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

The Honorable Kevin Gross
December 13, 2016
Page 3

## II. The Deliberative Process Privilege Does Not Apply Here

The law in this area is clear. The deliberative process privilege is "narrowly construed," and the government bears the burden of showing that it applies. *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 854, 856 (3d Cir. 1995). It is a qualified privilege, subject to a number of common-sense statutory and judicial limitations. It has no application here.

*First*, the documents at issue are outside of the time period to which the deliberative process privilege could apply here. The deliberative process privilege applies only to "pre-decisional" documents. *See N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151-152 (1975). The PBGC originally formulated its policy regarding the PBGC Artificial Rate in 1975 (which was published as an interim valuation regulation in 1976 and finalized in 1981). Any documents after that date, including documents related to the creation of the White Paper, are not pre-decisional as to a decision made in the 1970s and 80s. *See id.* at 151-152 (documents regarding the agency decision dated *after* that decision are not protected). Moreover, as the PBGC has belatedly conceded after serving its responses, documents that date from the original decision-making in the 1970s fall outside the 25-year "sunset" provision of the FOIA Improvement Act of 2016, and are therefore not protected either.[3]

*Second*, even where the deliberative process privilege applies to materials created more recently, courts balance the parties' competing interests to determine its scope and effect. *Redland*, 55 F.3d at 854. In balancing these interests, the Court should consider "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id.* (citations omitted).

Balancing these interests, courts regularly find that where, as here, "the very policy deliberations of the particular government entity are at issue, the privilege is not available." *Dobrich v. Walls*, No. CIVA 05-120 JJF, 2006 WL 2642218, at *6 (D. Del. Sept. 14, 2006) (compelling production of materials regarding adoption of school board policy). This case is no different. Here, the importance of the discovery sought in determining whether the PBGC's discount rate is "arbitrary and capricious," the fact that the PBGC is a plaintiff seeking a windfall of hundreds of millions of dollars (while refusing to allow the Debtors to probe its rationale), and the detrimental effect that such a windfall would have on the Debtors and their other creditors, all weigh strongly in favor of disclosure. Moreover, the public importance of the issue at play – the validity of the PBGC's regulation applicable to all terminated pension plans – merits a full record. Finally, there is no risk of a "chilling" effect, as the policy decision at issue was rendered decades ago, by representatives who have long since departed.

---

[3] The provision provides in relevant part that "the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." 5 U.S.C. § 552(b)(5). The FOIA exemption is generally considered "co-extensive" with the federal common law deliberative process privilege. *See CACI Field Servs., Inc. v. United States*, 12 Cl. Ct. 680, 687 (1987). Indeed, it would make no sense to apply a different standard in civil litigation, where a party could simply use the FOIA process to obtain those same documents, which would of course be highly inefficient and wasteful.

The Honorable Kevin Gross
December 13, 2016
Page 4

\*\*\*

The Debtors therefore respectfully request a ruling that the deliberative process privilege does not apply to the Debtors' requests for documents concerning the PBGC's formulation of its policy of using annuity pricing to calculate its regulatory discount rate and an order that the PBGC immediately produce responsive Documents being withheld on the basis of the deliberative process privilege.

Respectfully submitted,

Derek C. Abbott

cc: All counsel (via ECF)
    Paula Connelly, Esq. (via email)
    Garth Wilson, Esq. (via email)

10635685.1