# BROWN RUDNICK

STEVEN D. POHL
direct dial: (617) 856-8594
fax: (617) 289-0433
spohl@brownrudnick.com

One
Financial
Center
Boston
Massachusetts
02111
tel 617.856.8200
fax 617.856.8201

December 13, 2016

**VIA ELECTRONIC MAIL**

The Honorable Kevin Gross
824 North Market Street
6th Floor
Wilmington, DE 19801

　　　　RE:　**In re Nortel Networks Inc., et al., Case No. 09-10138 (KG)**

Dear Judge Gross,

　　　　As Your Honor knows, this firm represents the Nortel Trade Claims Consortium (the "Consortium") in the above-referenced proceedings. We write concerning the discovery dispute related to the Consortium's First Set of Requests for Production of Documents to Debtors and subpoenas for the production of documents served upon Akin Gump Strauss Hauer & Feld LLP ("Akin"), Berkeley Research Group, LLC ("BRG"), Chilmark Partners, LLC ("Chilmark"), Cleary Gottlieb Steen & Hamilton LLP ("Cleary"), FTI Consulting, Inc. ("FTI"), Greylock Partners, LLC ("Greylock"), and Milbank, Tweed, Hadley & McCloy LLP ("Milbank") (collectively, the "Requests").[1] The dispute concerns the unreasonable position taken by Akin, Cleary, and Milbank, on behalf of themselves, their financial advisors, and, as applicable, their clients (collectively, the "Responding Parties"), that a vast majority of responsive documents are protected under a purported mediation privilege and common interest privilege.

　　　　The Consortium served the Document Requests on December 1, 2016. The Requests generally seek documents and communications concerning: (i) the formulation of and agreement to the terms of the Settlement and Support Agreement dated October 12, 2016 (the "SPSA"), in particular as to the formulation of the U.S. Plan and creditor recoveries thereunder; (ii) documents and communications concerning the SPSA Parties' analysis of the factors for approval of settlement agreements under Bankruptcy Rule 9019 (as articulated in In re Martin, 91 F.3d 389 (3d Cir. 1996)); and (iii) certain other issues raised in the Consortium's objection to the Disclosure Statement.

　　　　In its cover letter accompanying the Requests, the Consortium informed the Debtors, vis-à-vis their counsel, Cleary, that it requested a meet and confer to discuss the time frame for responding to the Requests, in view of the pending Plan confirmation schedule. On December 5, 2016, the Consortium followed up with Cleary, copying Akin and Milbank, again requesting to meet and

---

[1] Copies of the requests to Debtors and Akin are attached hereto as <u>Exhibit A</u>. The requests to BRG, Chilmark, Cleary, FTI, Greylock, and Milbank are virtually identical to the request to Akin.

confer regarding the Requests. Cleary, Akin, and Milbank agreed to a teleconference on December 6, 2016. At that teleconference, Cleary, Akin, and Milbank suggested that there would be "few, if any" responsive documents outside the scope of any privilege. Specifically, they asserted that (i) "the mediation privilege operates as a complete bar to any discovery concerning settlement negotiations from 9/25/2015 [the date of the Mediation Order] through to the conclusion of settlement discussions"; and (ii) even with respect to the four-month window between the Allocation Decision and September 25, 2015, "we believe it is highly unlikely that discovery will lead to any admissible evidence (or even discoverable information) because, among other reasons, virtually all of the communications between Akin Gump, Cleary Gottlieb, and Milbank will be immune from discovery based on a common interest privilege." A true and accurate copy of an email from Jeffrey A. Rosenthal, summarizing the position of Cleary, Akin, and Milbank, dated December 7, 2016, is attached hereto as Exhibit B.

Cleary, Akin, and Milbank nonetheless requested that the Consortium attempt to narrow the categories of documents it seeks in response to the Requests. The Consortium provided a more narrowly-tailored list of categories of documents on December 8, 2016, a copy of which is attached hereto as Exhibit C. This supplement emphasized that the Requests are directed principally at the distribution of Sales Proceeds among the U.S. Debtors' creditors, rather than the global allocation of settlement proceeds. The Parties had a follow-up meet and confer on December 9, 2016. At that teleconference, the Parties were unable to reach an agreement. Despite the Consortium providing more narrowly-tailored requests, Akin, Cleary, and Milbank maintained that virtually all of the documents and communications in their possession are protected by the mediation and common interest privileges. They also suggested that the parties defer a further meet and confer until after the filing of the 9019 motion, which they claim will be filed this week.[2]

The Responding Parties assert a universal mediation privilege during the mediation period, which they allege spans over a year, from September 25, 2015 to October 12, 2016. The Responding Parties rely on the confidentiality provision of the Mediation Order, which provides that "[a]ll submissions, communications and negotiations made in connection with the mediation . . . shall not be disclosed outside of the mediation process." Mediation Order, at ¶ 6. However, the gravamen of the mediation concerned the global allocation of Sale Proceeds among creditors of all the Debtors.[3] This is entirely distinct from the substance of the Consortium's Requests, namely the allocation among U.S. creditors of their portion of the global settlement. The mediation privilege should not extend to communications that do not relate to the focus of the mediation.

Additionally, courts have held that a confidentiality provision in a mediation order does not extend to communications made outside of the mediation itself because the rationale underlying the mediation privilege does not apply when the mediator is not present. See U.S. Fid. & Guar. Co. v. Dick Corp./Barton Malow, 215 F.R.D. 503, 506-07 (W.D. Pa. 2003) ("communications purely between the parties and not involving the active participation of the mediator are not privileged . . . the mediation process requires the presence, or at least the active participation, of a mediator."); United States v. U. Pac. R.R., 2007 WL 1500551, at *6 (E.D. Cal. May 23, 2007) (settlement communications not "prepared in connection with a formal mediation or court-ordered settlement

---

[2] The Consortium reserves the right to request further discovery following the filing of the 9019 motion.
[3] See Recommendation of Judge Thynge, at p.3 n.2 ("The dispute of these proceedings focuses on the allocation of $7.3 billion of proceeds from the joint assets sales by the Nortel debtors . . . .").


conference" are discoverable).  The same rationale is clear from the language of the Mediation Order.  The confidentiality provision states that "[t]he parties acknowledge that the confidentiality of the mediation may impact the ability of parties to participate in the mediation . . . ."  Mediation Order, at ¶ 6.  This evidences an intent to preserve the sanctity of the actual mediation process only, and not every side-bar communication between the parties or sub-sets of the parties otherwise participating in the process.  Extending the mediation privilege to communications that took place outside of the presence of the mediator, as the Responding Parties demand, does not further the mediation process.

Moreover, there were significant lapses in the mediation process.  For instance, there were only 9 days of mediation over a 9-month span.  The sessions were on October 27 and 28, 2015, November 5, 9, 17, and 18, 2015, January 14 and 15, 2016, and June 2, 2016.  It strains credulity to assert that all of the Responding Parties' communications from October 27, 2015 to June 2, 2016 are protected by the mediation privilege when the mediation was not necessarily active during that time.  There were starts and stops to the mediation.  The Responding Parties' assertion of a universal privilege unfairly throws a blanket over the entire process and settlement.

In order for a communication to be protected under the common interest privilege, "the interests must be 'identical, not similar, and be legal, not solely commercial.'"  Leader Technologies, Inc. v. Facebook, Inc., 719 F. Supp. 2d 373, 376 (D. Del. 2010) (quoting In re Regents of University of Cal., 101 F.3d 1386, 1390 (Fed. Cir. 1996)).  "[A] joint representation terminates when the parties have diverged and there is no justification for using common attorneys."  Magnetar Technologies Corp. v. Six Flags Theme Park Inc., 886 F. Supp. 2d 466, 479 (D. Del. 2012).  Here, Cleary, Akin, and Milbank each represented different constituents in the negotiations of the SPSA - the Debtors, the Creditors' Committee, and the Bondholder Group, respectfully.  Each of these entities had their own self-interest at heart during the settlement negotiations.  Even if their interests aligned with respect to the global allocation, the subject of the mediation, their interests diverged with respect to the U.S. Plan, the focus of the Consortium's Requests.  In the absence of identical legal interests, the common interest privilege cannot apply to communications between them, at least with respect to the U.S. Plan.  The Consortium is therefore entitled to discovery of those communications.

For these reasons, the Consortium respectfully asks that Your Honor command the Responding Parties to produce non-privileged documents responsive to the Requests on a rolling basis, with production to be completed no later than December 23, 2016 in order to provide the Consortium sufficient time to review the production in advance of the Plan confirmation hearing scheduled for January 24, 2017.

Sincerely,

**BROWN RUDNICK LLP**

/s/ Steven D. Pohl
Steven D. Pohl