# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Derek C. Abbott
302 351 9357
302 425 4664 Fax
dabbott@mnat.com

December 13, 2016

VIA HAND DELIVERY AND ECF

The Honorable Kevin Gross
United States Bankruptcy Court
for the District of Delaware
824 N. Market Street, 6th Floor
Wilmington, DE 19801

Re: In re Nortel Networks Inc., et al., Case No. 09-10138 (KG)

Dear Judge Gross:

      We write on behalf of Nortel Networks Inc. ("NNI") and certain of its U.S. affiliates, as debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned bankruptcy case, along with the Official Committee of Unsecured Creditors (the "Committee") and the Ad Hoc Bondholder Group (the "Bondholder Group, and together with the Committee and the Debtors, the "U.S. Interests") to explain the U.S. Interests' position on various discovery requests served by the Nortel Trade Claims Consortium (the "NTCC") on the U.S. Interests and their various advisors on December 1, 2016 (collectively, the "Discovery Requests").

      The NTCC served document requests on the Debtors, and subpoenas on Greylock Partners, LLC (Principal Officer for the Debtors), Chilmark Partners, LLC (financial advisors to the Debtors), Cleary Gottlieb Steen & Hamilton LLP (counsel to the Debtors), as well as subpoenas on the counsel and the financial advisors of the Committee and the Bondholder Group. The NTCC has told counsel to the U.S. Interests that the discovery is directed at the settlements embodied in the Plan, including the Settlement and Plans Support Agreement, dated October 12, 2016 [D.I. 17249] (the "SPSA), in furtherance of the NTCC's opposition to the SPSA and the Plan. Each of the Discovery Requests seeks the production of substantially similar documents and accordingly raises the same threshold objections regarding the scope and categories of discovery from the U.S. Interests.[1]

      The Discovery Requests are severely overbroad in terms of the subject matter and the time period for which discovery is sought (which spans from January 14, 2009 to the

---

[1] As a representative sample of the Discovery Requests, the request for production of documents served on the Debtors by the NTCC is attached hereto as Exhibit A.

present). These facial failures – which show this entire exercise is either a fishing expedition, a nuisance intended to create settlement value, or both – are reason enough alone to quash the Discovery Requests in their entirety. That said, rather than simply oppose the Discovery Requests based on these fundamental flaws, the U.S. Interests met and conferred with the NTCC twice in the last week. While the NTCC has agreed (i) to narrow the scope of the Discovery Requests to the time period from May 12, 2015 (the date the Court issued its decision deciding the Allocation Dispute) through November 4, 2016 (the date the Debtors filed their Proposed Disclosure Statement for the First Amended Joint Chapter 11 Plan), and (ii) that it is not seeking discovery of communications that occurred solely between any of the Debtors, the Committee or the Bondholder Group and their own legal or financial advisors, the NTCC refuses to recognize certain fundamental privileges. As a result, the parties have been unable to resolve their more substantive disagreements regarding the discovery sought.

The U.S. Interests' overarching objection to the Discovery Requests is that they predominately seek documents that are subject to and protected from disclosure by (a) a common interest privilege between and among the U.S. Interests concerning litigation over the Allocation Decision; and (b) a mediation privilege among the parties to the confidential mediation led by Judge Joseph J. Farnan beginning in the fall of 2015, commencing with the issuance of the mediation order entered by Magistrate Judge Mary Pat Thynge on September 25, 2015, which privilege covers all of the documents and communications related to such mediation and the settlements that arose from it.

This Circuit has recognized the common interest privilege to allow attorneys and advisors representing parties "with similar legal interests" to share information without having to disclose it to others. In re Teleglobe Commc'ns Corp., 493 F.3d 345, 364 (3d Cir. 2007) (as amended Oct. 12, 2007). The purpose of the common interest privilege is to protect communications among such parties when the communications are "part of an on-going and joint effort" to coordinate legal strategies. In the Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp., 805 F.2d 120, 126 (3d Cir. 1986) (internal citations omitted). The materials sought by the Document Requests clearly fall within this rubric. Immediately following issuance of the Allocation Decision, the U.S. Interests engaged in formulating and executing a joint legal strategy (which included motions for reconsideration and appeals), which protects from discovery their communications and documents (to the extent any exist) relating to the various disputes that were enveloped in and ultimately compromised through the mediation process and led to the development of the SPSA and the Plan. Moreover, the Committee is an estate fiduciary and the Bondholder Group represents creditors holding the lion's share of claims against the Debtors. The Debtors have worked with both the Committee and the Bondholder Group prior to and in connection with the Allocation Decision and subsequent appeals to coordinate strategies to settle remaining claims and disputes and to bring these cases to a prompt and efficient conclusion. The documents and discussions regarding such matters are immune from discovery.

The Discovery Requests, even as modified through the meet and confer process, seek disclosure of documents and communications that are also directly and nearly entirely covered by the mediation privilege. The District Court order appointing Judge Farnan as

The Honorable Kevin Gross
December 13, 2016
Page 3

mediator provided "[a]ll submissions, communications and negotiations made *in connection with the mediation shall be made on a without prejudice basis and subject to Rule 408 of the Federal Rules of Evidence, shall be strictly confidential and shall not be disclosed* outside of the mediation process..." (emphasis added).  Accordingly, the order makes clear that such communications and documents are not limited to those documents shared with Judge Farnan, and are not merely inadmissible as evidence, but are also not susceptible to discovery.  To the extent the NTCC seeks to parse the mediation of the Allocation Dispute and negotiations leading to the Plan, the two are inextricably intertwined and equally immune from discovery.  The key economic terms embodied in the Plan flowed directly from, and were achieved in tandem with, the settlement of the Allocation Dispute.

This Court has previously recognized the "sanctity" of court-ordered mediation in In re Los Angeles Dodgers, LLC, et al., Case No. 11-12010 (KG), where Your Honor rejected a similar effort.  See Tr. of 4/15/13 Hr'g at 24-25 [D.I. 2032], attached hereto as Exhibit B.  There, Your Honor explained that confidentiality of materials exchanged in connection with a mediation is the "hallmark and essential ingredient of mediation," Id. at 26:22-23, and held that the Court's order, Local Rule, and applicable law mandate that mediation materials are not to be disclosed outside of the mediation.  Here, the NTCC is attempting to invade the sanctity of a court-ordered mediation that led to the settlement of long-standing disputes by demanding documents exchanged in connection with that mediation and its ultimate outcome.  These concerns are equally applicable, if not more so here, given that the NTCC was a party to the mediation and had ample opportunity to participate, advocate for its own positions, and understand those of the other Nortel estates.  Its effort to fish for some speculative backroom dealing that uniquely disadvantaged its members' interests is baseless and should not be countenanced as an excuse either to invade the mediation privilege or to force the U.S. Interests to undertake document searches and reviews merely to conclude that all (or nearly all) of the documents sought by the NTCC are privileged.

Given the breadth and time period of the two privileges, counsel for the various U.S. Interests have asked the NTCC to narrow their requests to account for these fundamental objections.  The NTCC has declined to do so, claiming that communications regarding the Plan and SPSA are not wholly covered by the mediation privilege and that the common interest privilege is more limited than described herein.  We remain willing to search for and produce specifically identified, relevant categories of documents created after May 12, 2015 and prior to September 25, 2015 that were shared among each other (or to third parties) and are unrelated to the U.S. Interests' collaborative litigation efforts.

For the avoidance of doubt, the U.S. Interests reserve all of their rights and defenses with respect to the Discovery Requests.

Respectfully,

Derek C. Abbott

The Honorable Kevin Gross
December 13, 2016
Page 4

cc: Steven D Pohl (via email – Spohl@brownrudnick.com)
    Christopher M. Floyd (via email – Cfloyd@brownrudnick.com)
    James L. Bromley (via email – Jbromley@cgsh.com)
    Jeffrey A. Rosenthal (via email – Jrosenthal@cgsh.com)
    Lisa M. Schweitzer (via email – Lschweitzer@cgsh.com)
    John J. Ray III (via email – Jray@greylockpartnersllc.com)
    Michael Kennedy (via email – Mkennedy@chilmarkpartners.com)
    Fred S. Hodara (via email – Fhodara@akingump.com)
    David H. Botter (via email – Dbotter@akingump.com)
    Abid Qureshi (via email – Aqureshi@akingump.com)
    Jay Borow (via email – Jborow@thinkbrg.com)
    Dennis F. Dunne (via email – Ddunne@milbank.com)
    Andrew M. Leblanc (via email – Aleblanc@milbank.com)
    Atara Miller (via email – Amiller@milbank.com)
    Michael Katzenstein (via email – Mike.katzenstein@fticonsulting.com)

10635964