**<u>Exhibit B</u>**

```
1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
2
                                   .   Chapter 11
3    IN RE:                        .
                                   .   Case No. 11-12010 (KG)
4    LOS ANGELES DODGERS, LLC,     .
     et al,                        .   Courtroom No. 3
5                                  .   824 Market Street
                      Debtors.     .   Wilmington, Delaware 19801
6                                  .
                                   .   Monday, April 15, 2013
7    . . . . . . . . . . . . . . . .

8                         TRANSCRIPT OF HEARING
                   BEFORE THE HONORABLE KEVIN GROSS
9              CHIEF UNITED STATES BANKRUPTCY JUDGE

10   APPEARANCES:

11   For the Reorganized
     Debtors:                      Amanda M. Hermann, Esq.
12                                 ASHBY & GEDDES, PA
                                   500 Delaware Avenue, 8th Floor
13                                 PO Box 1150
                                   Wilmington, Delaware 19899
14
     For Guggenheim Baseball:      Derek J. Sarafa, Esq.
15                                 WINSTON & STRAWN, LLP
                                   35 West Wacker Drive
16                                 Chicago, Illinois 60601

17

18

19   (Appearances Continued)

20   Audio Operator:              Electronically Recorded
                                  by Ginger Mace, ECRO
21
     Transcription Company:       Reliable
22                                1007 N. Orange Street
                                  Wilmington, Delaware 19801
23                                (302)654-8080
                                  Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording, transcript
25   produced by transcription service.
```

```
 1   APPEARANCES:   (Continued)

 2   For Major League Baseball:   Glenn M. Kurtz, Esq.
                                  WHITE & CASE, LLP
 3                                1155 Avenue of the Americas
                                  New York, New York 10036
 4
                                  Jeffrey M. Schlerf, Esq.
 5                                FOX ROTHSCHILD, LLP
                                  Citizens Bank Center
 6                                919 North Market STreet, Suite 1300
                                  Wilmington, Delaware 19899
 7
     For Jamie McCourt:           Laura Davis Jones, Esq.
 8                                PACHULSKI, STANG, ZIEHL
                                   & JONES, LLP
 9                                919 North Market Street, 17th Floor
                                  Wilmington, Delaware 19801
10
     For the Disbursing Agent:    Donald J. Bowman, Esq.
11                                YOUNG, CONAWAY, STARGATT
                                   & TAYLOR, LLP
12                                Rodney Square
                                  1000 North King Street
13                                Wilmington, Delaware 19801

14   APPEARANCES VIA TELEPHONE:

15   For the Reorganized
     Debtors:                     Michael J. Small, Esq.
16                                FOLEY & LARDNER, LLP

17   For Major League Baseball:   John J. Cunningham, Esq.
                                  WHITE & CASE, LLP
18
     For Jamie McCourt:           Caroline H. Heindel, Esq.
19                                GREENBERG GLUSKER FIELDS

20

21

22

23

24

25
```

1                              INDEX

2
                                                     Page
3

4   STATUS CONFERENCE RE SCRIGNA MATTER                 4

5   EMERGENCY MOTION TO ENFORCE CONFIRMATION ORDER      5

6        Court Decision                                23

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings commence at 3 p.m.)

2    (Call to order of the Court.)

3         THE COURT:  Good afternoon, everyone.  Thank you, and

4    please be seated.

5         MS. HERMANN:  Good afternoon, Your Honor.

6         THE COURT:  Ms. Hermann, good afternoon to you.

7         MS. HERMANN:  Thank you, Your Honor.  For the record,

8    Amanda Hermann, Ashbey & Geddes, on behalf of the reorganized

9    debtors.

10        Your Honor, just two matters on the agenda today.  The

11   first one is the continuing status conference on this Court's

12   order enforcing the automatic stay and plan confirmation

13   injunction against Mr. Scrigna.  And I believe my co-counsel

14   Michael Small is on the phone to address that matter.

15        THE COURT:  All right.  Good afternoon, Mr. Small.

16        MR. SMALL:  (Via Telephone) Good afternoon, Your

17   Honor.

18        Mr. Scrigna continues to take the steps that we've

19   requested to assure compliance with Your Honor's prior orders.

20   That hit a bit of a snag recently because he informed us that

21   he was no longer a resident in the home that he had listed as

22   his address.  But notwithstanding that, he still did send up

23   some documents, which are pretty close to complying.

24        And I'm hopeful that we'll either be able to just

25   continue this again or report completion of the dissolution of

1   his New York corporation, which is really the last piece.  He

2   needed to file a final tax return before the state will

3   dissolve the company, and we're working to get him to do that.

4          THE COURT:  All right.  That's wonderful news.  And I

5   assume he's still in Hawaii.

6          MR. SMALL:  Based on his last communication to us,

7   that is correct.

8          THE COURT:  All right.  All right.  Well, thank you

9   for the report.

10          MR. SMALL:  Thank you, Your Honor.

11          THE COURT:  And just, we'll keep things open until --

12   until he has satisfied all of his obligations.

13          MR. SMALL:  Thank you, Your Honor.

14          THE COURT:  Thank you.

15          MS. HERMANN:  Thank you, Your Honor.

16          Your Honor, the second matter on the agenda is the Los

17   Angeles Dodgers' emergency motion to enforce the confirmation

18   order.  Your Honor, we'd like to thank the Court for hearing

19   this matter on such an expedited basis.

20          Your Honor, in court with me today is Derek Sarafa

21   from the firm of Winston & Strawn, who's counsel to Guggenheim

22   Baseball Management, LP.  And Mr. Sarafa has been admitted *pro*

23   *hac vice* by your court's order at Docket 1721.

24          THE COURT:  All right.

25          MS. HERMANN:  Thank you, Your Honor.

1        THE COURT:  Thank you.  Thank you, Ms. Hermann.

2        Mr. Sarafa, good afternoon to you.

3        MR. SARAFA:  Hello, Judge.  Good afternoon.  I think

4   the last time I was here for the confirmation plan, myself or

5   someone else started with an update on where the Dodgers stood.

6        Briefly, a busy off season, Your Honor; $100 million

7   in renovations to Dodgers Stadium.

8        THE COURT:  Oh, good.

9        MR. SARAFA:  A great roster that includes, still, Matt

10  Kemp, Clay Kershaw, and additions to the pitching staff, the

11  Korean left-hander Ryu, and also Zach Greinke, who you may

12  know.

13        THE COURT:  I've been reading and watching television

14  about Mr. Greinke.

15        MR. SARAFA:  Was feloniously assaulted.

16     (Laughter.)

17        MR. SARAFA:  And Judge, these are the things that the

18  residents of Los Angeles and Dodgers fans everywhere are

19  discussing, and this is the kind of thing we should be

20  discussing.

21        THE COURT:  Sure.

22        MR. SARAFA:  But instead, we are here to reread a

23  chapter of ancient Dodger history relating to the McCourt

24  divorce proceedings, which I think we all probably believed had

25  been concluded on January 19th, 2012, when that case had a

1  final judgment entered.  But it appears that a final judgment

2  is not what it used to be because the case has been reopened or

3  is attempting to be reopened.

4        And so the question for Your Honor today is whether

5  documents prepared and used by the team in the mediation that

6  Your Honor ordered with Major League Baseball can be disclosed

7  and used by the McCourts in their divorce proceedings.  And the

8  answer to that question has to be no, based upon the Court's

9  existing mediation order and the local rules here in Delaware

10 that specifically prohibit using information or materials

11 prepared for and used in a mediation in any other proceeding.

12        THE COURT:  Yes.

13        MR. SARAFA:  Your Honor, your order is quite clear.

14 I'm sure you have reviewed.  It states, and I'm quoting:

15        "Information disclosed to the mediator in private

16        session shall remain confidential."

17        And of course, you know that's also consistent with

18 the local rule, which says --

19        THE COURT:  I --

20        MR. SARAFA:  -- exactly the same thing.

21        THE COURT:  That's right.

22        MR. SARAFA:  And both the local rule and Your Honor's

23 order say that such information cannot be used in any, quote,

24 "proceeding."  Any proceeding.  So the --

25        THE COURT:  And that's not unusual.  I mean, that is

1    what mediation is supposed to be.

2            MR. SARAFA:  It is, Judge.  And so the only question,

3    as I see it today, the essence of what you're being asked to

4    decide is:  Are these particular materials and information

5    mediation materials that are covered by Your Honor's order and

6    by the local rules.  And the answer is yes.

7            Let me say first that the document or presentation

8    that we're talking about, on its face, is titled "Confidential

9    Mediation Materials."  That usually -- that's a pretty good

10   sign that it is what it purports to be.

11           But lucky for me, Judge, you don't have to take my

12   word for it because Judge Farnan has already weighed in, and he

13   knows better than anyone, and better certainly than I do, since

14   I was not involved at the time of the mediation, whether these

15   are mediation materials.  And I'm going to quote from Judge

16   Farnan's declaration, in which he says:

17               "These materials were prepared at my request, were

18               submitted to me and discussed with me by counsel for

19               the Dodgers and the Dodgers' financial advisor

20               Blackstone, for my use in trying to resolve the

21               Dodgers' then-pending dispute with Major League

22               Baseball, and are confidential pursuant to Judge

23               Gross' mediation order."

24           THE COURT:  And Judge Farnan knows better than I do

25   because such information was certainly inadmissible before me.

1      MR. SARAFA:  That's also correct, Your Honor.  And

2  that was noted in your order, that you were not to be given any

3  of those information, and would just receive reports from Judge

4  Farnan on whether disputes had been concluded.

5      THE COURT:  Correct.

6      MR. SARAFA:  Judge, I won't belabor the point.

7  Obviously, the mediation system would implode if there was no

8  confidentiality because litigants would not lay their cards on

9  the table.  They would be very concerned about acknowledging

10  even the slightest witness in their case, for fear that it

11  could be used against them in that proceeding or another.

12      Here, Judge, in addition to that concern, you told the

13  parties in advance that it would be confidential.  So, if you

14  said in advance it wouldn't be confidential, that would have

15  been one thing.  It probably would have been a bad idea because

16  they wouldn't have gotten very much accomplished.  But here,

17  the order gave them that assurance.  That was your word, that

18  the information was going to be kept confidential, and they

19  relied upon that in communicating with Judge Farnan and each

20  other openly and freely.  And it would be unfair to the parties

21  at this point to essentially pull the rug out from under them

22  by letting this information be publicly disclosed.

23      Judge, we did not have time to file a reply since --

24      THE COURT:  I understand.

25      MR. SARAFA:  -- in the emergency circumstances.  So

1  let me briefly address three points from Ms. McCourt's brief,

2  which is based on, effectively, a mischaracterization of the

3  facts, and I think a misunderstanding of the law.  First of

4  all, the facts.

5        Ms. McCourt tries to paint a picture that we are

6  wrongfully asking the Court to effectively overrule the

7  California Court, and that there would be dueling orders if

8  Your Honor was to order the nondisclosure of this information.

9  And that is not correct.

10        What has happened in California has been less than

11  clear, to be sure.  I would summarize it by saying that the

12  Court in California issued an order which ordered the

13  production of documents, except for those covered by the

14  attorney/client privilege.  It did not specifically address

15  this issue in the order itself, which Your Honor has before

16  you, of whether the information was covered by Your Honor's

17  order.  It did not specifically address that issue.

18        Once counsel for Frank McCourt realized that, they

19  went to court and basically filed some papers to say, this is

20  covered by Judge Gross' order, and you should not compel the

21  production of the information.  At that time, the Judge took

22  the -- took the matter under advisement --

23        THE COURT:  Yes.

24        MR. SARAFA:  -- and will be hearing it on Wednesday.

25  They gave -- the Judge wanted us, Guggenheim Baseball, and also

1   Major League Baseball to have notice of the fact that he would

2   be deciding it on Wednesday.

3          It is clear -- no matter how confusing the past in

4   that case is, one thing is clear to me, even though I'm not --

5   I wasn't there.  But what is absolutely clear to me is that

6   this is issue is open right now.  So the idea that there would

7   be some dueling orders, even for other reasons I'm not

8   concerned about, and I'll explain in a moment; but the idea

9   that there would be dueling orders is untrue.  At this point,

10  there would not be dueling orders if Your Honor issued an

11  order.  I would hope and expect the California Court, under the

12  principles of comity, to defer to that order on Wednesday.  And

13  so that's why we're here.

14         And we're here, although Ms. McCourt says improperly

15  racing to Your Honor, we're here because it's your order that

16  we're seeking to enforce, Judge.

17         THE COURT:  That's right.

18         MR. SARAFA:  So you're the person who wrote that

19  order, and you're in a position to enforce that order, and

20  that's why we're before you.

21         Second, the idea that abstention prevents Your Honor

22  from acting here is simply untrue.  Abstention applies,

23  generally speaking, when a court refuses to hear a case because

24  doing so would impinge upon the jurisdiction or power of

25  another court.  And that's not the case here, Judge, because

1   you are not making a ruling today about how to divide up the

2   assets of the McCourts in their divorce proceedings, or whether

3   to reopen those proceedings and set aside the judgment.  You

4   are making an order today regarding the disclosure or

5   nondisclosure of mediation materials for a mediation that you,

6   yourself, ordered.

7         THE COURT:  And a mediation that doesn't impact Mr.

8   McCourt alone, but impacts other parties who were involved in

9   that mediation.

10         MR. SARAFA:  It's even worse than that, in the sense

11   that, Judge, the party that was involved in that mediation was

12   the Dodgers, that he no longer has any interest in.   So here

13   we are, as the Dodgers, and it would be disclosed in that

14   litigation, both us and Major League Baseball would be

15   impacted.  And we have, obviously, no interest in that

16   litigation.

17         So Your Honor would not be directing the California

18   Court to do or not do anything.  That case is going to proceed

19   just fine.  Ms. McCourt is either going to set aside the

20   judgment or not, and nothing you do is going to change that.

21   She will not be able to use this as evidence because she won't

22   have it as evidence.  But that's not going to change the

23   division of assets.  So the idea that you're somehow impinging

24   upon the authority of that Court is simply not true.

25         It's also a misunderstanding of the idea of

1  abstention.  Abstention generally occurs, in the <u>Younger</u> case,

2  for example that they cite -- <u>Younger</u> is a case which ruled

3  that, in a federal civil lawsuit, based on, for example, an

4  unlawful search and seizure, you can't go forward with that

5  civil suit until the underlying state criminal proceeding is

6  completed.

7       And generally, it is in a situation in which a

8  subsequent court -- in other words, where the state case is

9  filed first, the federal court will then abstain from a

10  subsequent case that could impinge on the jurisdiction of the

11  state court case.  Well, here, clearly, the bankruptcy case was

12  first.

13       And in addition to that, even if it was an issue of

14  infringing upon the state jurisdiction, you would have to weigh

15  the interest of the federal government in its bankruptcy

16  proceedings against the interest in the state proceeding, which

17  -- in the divorce proceedings, which you don't even need to get

18  that far, Judge.

19       I think it's quite clear that you have the authority

20  under your confirmation order -- you have authority over these

21  parties to direct them to do or not do something with regards

22  to the disclosure of information relating to this case.  And

23  the fact that there happens to be a divorce proceeding in

24  California, in which some of this information is being argued

25  as relevant, simply doesn't change that fact.

1    Finally, Judge, Ms. McCourt raises the argument that
2  there is a protective order in her case which should be
3  sufficient to protect the interest of the party.  Two responses
4  to that, Judge:

5    First, so what?  What Your Honor's order says is that
6  the information shall remain confidential.  And giving it to
7  another party makes it not confidential anymore; that party has
8  access to it.

9    The idea behind Your Honor's order is it's for the
10 parties to the mediation, it remains confidential to them, not
11 that it can be used in litigations across the country, as long
12 as there's a protective order.  And in fact, that's belied by
13 your order, which specifically says it's not usable in any
14 other proceeding.

15   Point two is that that case is set for trial on
16 Friday.  And so, while the information would remain protected
17 for three or four days during discovery, once they get to
18 trial, that information could, and I would fully expect, become
19 public, absent extraordinary relief, such as sealing the
20 courtroom, which in a case of public significance, as Your
21 Honor knows, is very rare.  And it is, I would suspect,
22 unlikely to happen there, just like it is at any other court.

23   Judge, it is high time that we put this chapter in
24 Dodgers history fully and finally behind us.  There is no
25 reason to essentially overrule your own order and make this --

1  this information public, as you assured the parties that it

2  would remain confidential.  And that is what is the right thing

3  to do for the team and Major League Baseball and for Your Honor

4  and the mediation process, generally.

5          So we ask that Your Honor enforce the confirmation

6  order by ordering that Ms. McCourt may not discover, and Mr.

7  McCourt may not disclose any confidential information

8  materials.  Thank you, Your Honor.

9          THE COURT:  Thank you, Mr. Sarafa.

10         MR. SARAFA:  Questions?

11         THE COURT:  Not at the moment.  Thank you, sir.

12         Mr. Kurtz, it's a pleasure to have you here, sir.

13         MR. KURTZ:  Thank you, Your Honor.  It's a pleasure to

14  be back.

15         THE COURT:  Yes.

16         MR. KURTZ:  Glenn Kurtz of White & Case on behalf of

17  the Office of the Commissioner of Baseball, doing business as

18  Major League Baseball.  And I'd like to introduce to the Court

19  with me today Tom Ostertag who is the General Counsel of Major

20  League Baseball.

21         THE COURT:  Yes.  Good to have you here Mr. Ostertag.

22         MR. KURTZ:  Who attends, because this is a pretty

23  serious issue, we think.

24         I don't want to belabor too much here, although I feel

25  like some of it is worthy of a little bit of belaborment.

16

1          THE COURT:  Okay.

2          MR. KURTZ:  The information at issue includes highly

3    confidential Major League Baseball information.  As counsel has

4    already mentioned, Judge Farnan himself requested the

5    information.  It embeds the special terms of the baseball

6    procedures and related matters that have been so confidential,

7    we've been reluctant even to describe in anything but the

8    vaguest of ways what it includes.

9          We took a lot of steps to protect this kind of

10    information from disclosure, which included having protections

11    in a number of orders:  Appointing the mediator, the

12    confirmation order, the plan, the mediation rules.  And even we

13    took the step of having an important piece of the settlement

14    not filed --

15          THE COURT:  Correct.

16          MR. KURTZ:  -- the special terms, which is really

17    what's here at issue, not filed, to ensure that there couldn't

18    even be a procedure by which somebody could come to court and

19    try to access this kind of information.

20          THE COURT:  I'm just curious about one thing, Mr.

21    Kurtz.  Some of the information you provided in the mediation,

22    was it shared with Mr. McCourt, or was it just provided to the

23    mediator?

24          MR. KURTZ:  It was -- well, the information at issue

25    would have been provided with the Dodgers; and therefore, Mr.

1  McCourt would have seen it just --

2           THE COURT:  Okay.

3           MR. KURTZ:  -- as a counter-party.

4           THE COURT:  That's right.  Because he was the Dodgers

5  at that point.

6           MR. KURTZ:  And they had to work this information in.

7  It became part of the special terms, so it had to be reviewed

8  and agreed to.  And then it became subject, really, to disputes

9  only, to the extent that Judge Farnan would rule on them.

10          THE COURT:  Okay.

11          MR. KURTZ:  So this was sort of removed from the case

12 because there's always the risk that, if you have something

13 public, that it can be accessed in one way or another.  So we

14 took a lot of steps to protect it.

15          We have the mediation rules.  Rule 9019-5(d) is

16 absolutely clear that you can't use these kinds of information.

17 This can't be disclosed, this can't be used in hearings.  Those

18 are the rules of engagement.

19          As counsel noted, this is very important.  This is

20 important in this case.  It's important beyond this case.  It

21 would have a chilling effect.  And I think, in most complex

22 cases, in particular ones in bankruptcy that have so many

23 constituents, the ability to have confidential mediation in

24 order to resolve amicably disputes that would otherwise take an

25 enormous amount of judicial resources is really contingent on

18

1    the ability, in accordance with the rule, to be able to speak

2    freely, exchange information freely, have that privilege, and

3    not have to see that in subsequent cases.  And Major League

4    Baseball relied on that rule, and it relied on all the orders,

5    Your Honor.  That information was shared and statements were

6    made and analyses were performed, all under the -- you know,

7    the understandings that we had statutory rules, and that we had

8    orders that would protect the information.  And we're very

9    interested, obviously, in ensuring that those are fully --

10         (Off the record at 3:18 p.m.)

11         (Proceedings resume at 3:21 p.m.)

12              THE COURT:  You're okay now, Ms. Mace?

13              THE ECRO:  Yes.

14              THE COURT:  Good.  All right.

15         All right.  Mr. Kurtz, I'm sorry.  If you may -- you

16    may proceed again.

17              MR. KURTZ:  So on venue, Your Honor, the Supreme

18    Court's decision in Celotex says, if you are subject to a

19    confirmation plan and order in a bankruptcy case, and you want

20    to change it, you can't collaterally attack if you can't go to,

21    in that case, a District Court, in this case, a state court,

22    and try to get yourself relief; you have to come back.  And as

23    the Supreme Court said in that case, the last line of the case,

24    in ruling that -- that you could not go to another court, it

25    said:

1            "This they cannot be permitted to do without seriously

2            undercutting the orderly process of law."

3        Which is, of course, exactly correct.  If somebody has

4    a problem with your rules, they come in here, they know they're

5    not going to get relief, or they shouldn't be able to get

6    relief because mediation is so important.

7        The last issue is the protective order.  I think

8    counsel, you know, sort of adequately noted it doesn't mean

9    anything here.  The whole purpose of the protective order was

10   that the information that was used and disclosed by the parties

11   to the mediation wouldn't have that information disclosed to

12   new parties, like Jamie McCourt.  And so a protective order --

13   every single litigation in the country has a protective order.

14   That doesn't mean that you -- mediation materials -- by non-

15   parties.  The parties here were the Dodgers and Baseball -- can

16   come in, invade your mediation, grab your materials, and go use

17   them for collateral purposes, especially here.

18       The notion that you can control the disclosure is

19   wrong because we don't know what can be controlled in

20   California.  I'm not really familiar with those proceedings.

21   What I did read, though, from the plaintiff, from Jamie McCourt

22   here, was that -- and it sounds like, based on what the

23   debtors' counsel said, it wasn't accurate, but that the

24   California Court had a different view on this already.  So what

25   that, I think, tells you is the only one that's going to

1  protect your orders is Your Honor.

2          And the idea that you could somehow avoid a direct

3  violation of your order is impossible because your order says

4  it can't be used in any subsequent proceedings.  And there's

5  certainly no purpose in these materials if they can't be used

6  in subsequent proceedings.  So it's not -- we're not here for

7  curiosity.  I think she's here to garner evidence in support of

8  a trial that's apparently up and coming on Friday, in which

9  she's going to challenge her divorce decree.

10          THE COURT:  Yes.  All right.

11          MR. KURTZ:  So -- okay.  Thank you, Your Honor.

12          THE COURT:  Thank you, Mr. Kurtz.  I have a lot of

13  questions, but I think most of them are for Ms. Jones.

14          Good afternoon, Ms. Jones.

15          MS. JONES:  Good afternoon, Your Honor.  For the

16  record, Laura Davis Jones, Pachulski, Stang, Ziehl & Jones, on

17  behalf of Jamie McCourt.

18          Your Honor, I would like to introduce to the Court and

19  move the admission of Caroline Heindel, who is on the phone,

20  Your Honor.  She is with Greenberg Glusker, she's lead counsel

21  to Jamie McCourt --

22          THE COURT:  All right.

23          MS. JONES:  -- and who's been handling this matter.

24  And I would ask Your Honor that she be able to address the

25  Court.

1    THE COURT:  That would be fine.  And it's Ms. Heindel?

2    MS. HEINDEL:  (Via Telephone) Good afternoon, Your

3    Honor.

4    THE COURT:  Good afternoon, Ms. Heindel.  And you are

5    calling in from California.

6    MS. HEINDEL:  From Los -- yes, Los Angeles.

7    THE COURT:  All right.  Well, it's a good thing you're

8    far away.

9    (Laughter.)

10    THE COURT:  But certainly --

11    MS. HEINDEL:  With the --

12    THE COURT:  You may proceed.  I'm sorry.

13    MS. HEINDEL:  Oh, okay.  I just want to address just a

14    couple of points.  I think we've stated what we wanted to state

15    in our brief.  But I did want to say this.  I don't know where

16    Mr. Sarafa gets his information that the California order is in

17    flux.  There's no indication, being counsel of record on that

18    action, that it is in flux.

19    Just to go over it again, so in -- we brought a motion

20    to compel compliance or further responses to a document request

21    we served on Mr. McCourt, which was not -- we didn't

22    specifically ask for documents related to the mediation.  That

23    wasn't the nature of the request.  We did ask for documents

24    related to the valuation of the Dodgers.  And obviously,

25    there's some overlap there.  But in any event, early in

1    February, the Court made a ruling that it did not believe that

2    the mediation privilege applied, even though Mr. McCourt had

3    argued that it did.

4            Subsequent to that ruling, which we've attached as --

5    I believe the debtor has attached as an exhibit.  Subsequent to

6    that ruling, Mr. McCourt's counsel submitted two separate

7    letters to the Judge in the California case, attaching

8    additional evidence with respect to the mediation privilege,

9    specifically, including letters both from the debtors and from

10   Major League Baseball, and those were submitted in mid-March.

11           And then, on April 5th, the Judge issues a proposed

12   order, where they -- he rejected Mr. McCourt's proposed order,

13   stating that documents based on any privilege should be

14   excluded from the production, and entered the order submitted

15   by our firm, which allowed him only to withhold documents based

16   on attorney/client privilege and work product privilege.  So

17   that's the nature of what happened in California.

18           Mr. McCourt produced a privilege log, which we've also

19   attached to our papers.  He did not produce any documents.  We

20   -- he is now -- you know on the basis of attorney/client

21   privilege and work product.  We brought a motion to compel, and

22   that we brought on an expedited basis.  Because, actually, the

23   hearing in the California matter was scheduled for today.  But

24   because of various discovery matters, including this discovery

25   matter, it has been continued a bit.

1    So instead, the California Court is going to hear on

2  Wednesday our motion to compel those documents from Mr.

3  McCourt, but not a reconsideration of the order.  It's a

4  question of whether the documents he's saying that he doesn't

5  need to produce, actually, he does need to produce.

6    THE COURT:  All right.  All right.  Well, I, of

7  course, am not dealing with attorney/client privilege here or

8  work product, but really just the mediation issues.  And let me

9  say a few things.

10    First of all, the mediation in this case turned a

11  potentially unsuccessful case, a sale or a reorganization, into

12  a highly successful one.  And I am not, of course, ruling on

13  the dispute pending in California between Mr. McCourt and Mrs.

14  -- the former Mrs. McCourt in their divorce proceedings,

15  whereby Mrs. McCourt is seeking to overturn the stipulated

16  judgment.  I think it's only fair, however, to note that, when

17  the bankruptcy case started, the Dodgers were in real trouble,

18  unable to even make payroll, and success was far from a

19  foregone conclusion.

20    Moreover, the value of the mediation -- I'm sorry --

21  the value of the team was established in an auction, not in the

22  mediation and not in the court.  And I think that is something

23  that I hope will be a point in the -- in the trial in

24  California.

25    And finally, Mrs. McCourt, not only did not object to

1   confirmation of a plan which reflected the sale terms, but she

2   filed a pleading, asking for assurance that her judgment in

3   California would be honored after the sale terms were public.

4   So all of this challenged in California State Court seems odd

5   to me, but that's not a matter of my concern, really.  My

6   concern is the discovery which Mrs. McCourt seeks, and which

7   the California State Court, by the learned Judge Gordon, is

8   considering, and that's what I'm going to rule upon.

9          No one has more respect for or will afford greater

10  comity towards another court than I will.  At the same time, I

11  -- the Court would hope that the California Court will

12  reciprocate, especially where a preexisting order of this Court

13  has a direct bearing on the dispute.

14         I believe that what we have here is Mrs. McCourt's

15  effort to invade the sanctity of a court-ordered mediation.

16  And that effort is, frankly, shocking to the Court's

17  conscience.

18         First of all, we have my order, which I think very

19  clearly provides, and I've got -- I've got it here somewhere.

20  Well, I hope I have it here somewhere.  But it clearly provides

21  for the confidentiality of the mediation and documents

22  submitted -- here it is.  I have the order appointing mediator,

23  which I entered on October 3rd, 2011, prior to the commencement

24  of the mediation, in which I make it clear that the mediation

25  proceedings are settlement negotiations and ...

1           "-- all offers, promises, conduct, and statements,

2           whether written or oral, made in the course of the

3           proceedings are inadmissible in any proceeding.  The

4           parties agree not to subpoena or otherwise require the

5           mediator to testify or produce records, notes, or work

6           product in any future proceedings.  Evidence that is

7           otherwise admissible or discoverable shall not be

8           rendered inadmissible or non-discoverable as a result

9           of its use in a mediation session, and information

10          disclosed to the mediator in private session shall

11          remain confidential, unless the party authorizes

12          disclosure."

13      That's Paragraph 5.

14      Paragraph 6:

15          "The mediation will be confidential, and the mediator

16          will treat all documents he receives as confidential."

17      Now it's clear that a document that is otherwise

18  discoverable does not become immune to discovery simply because

19  it was submitted to the mediator.  So, for example, a

20  preexisting letter or a preexisting document that happened to

21  be submitted to the mediator would not be non-discoverable.

22  But documents submitted exclusively in connection with the

23  mediation are.  And documents which are otherwise not

24  discoverable or not admissible, obviously, can't be produced by

25  anyone, and any party to the mediation or the mediator himself.

1    Then we have the Court's local rule, which has been

2    referred to, and that local rule -- which I'm not going to read

3    in great detail, but it's Local Rule 9019-5(d)(1) makes it

4    clear that there is a protection of information disclosed at

5    mediation.  And then, as I will refer to case law shortly, it's

6    clear that this local rule is something that the Court prepared

7    and enforces in accordance with such case law.

8    The problem the Court is having is that the sale was

9    successful beyond the Court's or the parties', perhaps,

10   greatest expectation, and a successful sale, of which Mrs.

11   McCourt is now seeking to take advantage, while at the same

12   time attempting to violate a key term:  Confidentiality.  The

13   success is directly attributable to the mediation, which, in

14   turn, was successful for two reasons:

15   First, the mediation, Joseph Farnan, brought his vast

16   skill and knowledge to the task and worked tireless and

17   patiently to achieve the result.  He gained both the respect

18   and the trust of the parties.

19   Second, in this highly visible case, the parties were

20   able to negotiate without fear of any breach of the

21   confidentiality of their discussions or submission of documents

22   requested by the mediator.  And confidentiality is, indeed, the

23   hallmark and the essential ingredient of mediation.

24   And the case law makes all of that clear.  For

25   example, in Sheldone v. Pennsylvania Turnpike Commission, a

1  decision by the Western District of Pennsylvania at 104 F.Supp.

2  2d 511, decided in the year 2000, the Court held that a federal

3  mediation privilege exists; and, in doing so, stated that:

4          "Mediation is the process in which an independent,

5           impartial, trained, neutral third party or mediator

6           facilitates the resolution of a dispute by assisting

7           parties in reaching a voluntary agreement."

8          And went further to state that it is the

9  confidentiality of that proceeding which is so critical to the

10  success.

11         And then the Court discussed the four factors for

12  finding a privilege, which the Supreme Court enunciated in

13  Jaffee v. Redmond, which is a decision in 1996, found at 518

14  U.S. 1, which provides the standards for determining whether a

15  potential federal evidentiary privilege should be recognized

16  and the four relevant factors are:

17         "-- whether the asserted privilege is rooted in the

18          imperative need for confidence and trust; whether the

19          privilege would serve public ends; whether the

20          evidentiary detriment caused by an exercise of the

21          privilege is modest; and whether denial of the federal

22          privilege would frustrate a parallel privilege adopted

23          by the states."

24         And the Court finds that all of those exist in this

25  case.

1       And moreover, it appears that virtually all states

2  have adopted or given cognizance to a mediation privilege.  I

3  know that, certainly, as the local -- as the local rule

4  indicates, our court has.

5       Now, again, this does not protect from disclosure any

6  evidence otherwise and independently discoverable merely

7  because it was presented in the course of the mediation.  A

8  party; and here, Mrs. McCourt, is free to seek discovery.  But

9  documents submitted to the mediator, to enable the mediator to

10 perform his duties, clearly are subject to that mediation

11 privilege.

12      And the decision is not alone.  There are other cases

13 so finding.  There's the <u>Chester County Hospital v. Independent</u>

14 <u>Blue Cross</u>, a decision from the Eastern District of

15 Pennsylvania, which is cited in Westlaw at 2003 WL 25905471.

16 And again, the Court found that there is a mediation -- a

17 federal mediation privilege, and adopted that privilege.

18      And it is a privilege which, by the way, is adoptable

19 basically on a case-by-case basis.  And here, there is clearly

20 a strong need for that privilege to be adopted and to be

21 exercised, so -- and the Court is going to do that.  There is a

22 mediation privilege that is applicable here, and the Court will

23 enforce that privilege.

24      And thus, to be clear, confidential documents,

25 statements, and information provided to the mediator in this

1    case for the mediation are privileged and are not to be

2    produced.  Mrs. McCourt will not be permitted to seek such

3    discovery of documents, statements, or information provided to

4    the mediator; and Mr. McCourt, likewise, will not be permitted

5    to do so.  And that is the Court's ruling.

6             I will note that this is not a situation in which the

7    Court is being asked to interpret its order.  The order is

8    clear.  This is a situation in which the Court has been asked

9    to enforce that order for public policy reasons, as well as for

10   the protection of the parties, and the Court does enforce that.

11   And I will grant the relief requested under the circumstances.

12             MR. SARAFA:  (Not identified) Thank you, Your Honor.

13             THE COURT:  By the way, to the extent -- you know, I

14   know there has been sort of a question as to whether the

15   parties here today are in some way circumventing the California

16   Court.  And I would say that, in fact, it is Mrs. McCourt who

17   has circumvented this Court's order by going to California, as

18   she did, and seeking the discovery of documents and information

19   which is clearly protected by the Court's mediation order.  And

20   I don't consider myself, in any way, shape, or form, violating

21   any issues of comity or extension or the like.  This is my

22   order, and I'm enforcing it because it was an essential

23   ingredient in the success of this case and in the confirmation

24   order and the like.

25             So with that, I think I have the form of order.

1          MS. HERMANN:  Right.

2          THE COURT:  Do you have another one for me, Ms.

3    Hermann?

4          MS. HERMANN:  It's the same, so you have it.

5          THE COURT:  Okay.  That would be fine.  I would be

6    pleased to sign that.

7          MS. HERMANN:  Okay.

8       (Participants confer.)

9          MS. HERMANN:  May I approach, Your Honor?

10          THE COURT:  You certainly may.  Thank you.  Good to

11   see you.

12          And I have reviewed the order in advance, and I will

13   sign it as submitted.

14          MS. HERMANN:  Thank you, Your Honor.

15       (Pause in proceedings.)

16          THE COURT:  Anything further?

17          MS. HERMANN:  That's all for today.  And we just want

18   to thank you again for hearing this matter on an expedited

19   basis.

20          THE COURT:  Well, it was an important matter, and I

21   certainly appreciated the need for expedition here.

22          MS. HERMANN:  Thank you, Your Honor.

23          THE COURT:  Thank you, everyone.

24          UNIDENTIFIED:  Thank you, Judge.

25          THE COURT:  And we'll stand in recess.

1          UNIDENTIFIED:  Thank you, Your Honor.

2          THE COURT:  And good day to all of you.  Thank you.

3     (Proceedings concluded at 3:39 p.m.)

4                              * * * * *

1            CERTIFICATION

2        I certify that the foregoing is a correct transcript

3    from the electronic sound recording of the proceedings in the

4    above-entitled matter to the best of my knowledge and ability.

5

6

7

8    _____    April 16, 2013

9    Coleen Rand, AAERT Cert. No. 341

10   Certified Court Transcriptionist

11   For Reliable

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# UNITED STATES BANKRUPTCY COURT
## District of Delaware

**In Re:**
Los Angeles Dodgers LLC
Dodger Stadium                      **Chapter:** 11
1000 Elysian Park Avenue
Los Angeles, CA 90012
  **EIN:** 20–0343133
LA Team Co. LLC

*Case No.*:  11–12010–KG

### NOTICE OF FILING OF TRANSCRIPT AND OF DEADLINES RELATED TO RESTRICTION AND REDACTION

A transcript of the proceeding held on 04/15/2013 was filed on 04/23/2013 . The following deadlines apply:

The parties have  7 days to file with the court a *Notice of Intent to Request Redaction* of this transcript. The deadline for filing a *request for redaction* is 5/14/2013 .

If a request for redaction is filed, the redacted transcript is due 5/24/2013 .

If no such notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is 7/22/2013 unless extended by court order.

To review the transcript for redaction purposes, you may purchase a copy from the transcriber (see docket for Transcriber's information) or you may view the document at the clerk's office public terminal.

*David D. Bird*

Clerk of Court

Date: 4/23/13

(ntc)

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0311−1 | User: GingerM | Date Created: 4/23/2013 |
| Case: 11−12010−KG | Form ID: ntcBK | Total: 20 |

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ust | United States Trustee | USTPREGION03.WL.ECF@USDOJ.GOV |
| aty | Donald J. Bowman, Jr. | bankfilings@ycst.com |
| aty | Ian J Bambrick | ibambrick@ycst.com |
| aty | Joshua M. Mester | jmester@jonesday.com |
| aty | Michael J. Small | msmall@foley.com |
| aty | Robert S. Brady | bankfilings@ycst.com |
| aty | Robert S. Brady | rbrady@ycst.com |
| aty | Ryan M. Bartley | bankfilings@ycst.com |
| aty | Sidney P. Levinson | slevinson@jonesday.com |

TOTAL: 9

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | |
|---|---|---|
| db | Los Angeles Dodgers LLC        Dodger Stadium        1000 Elysian Park Avenue        Los Angeles, CA 90012 | | |
| aty | Alek Strygin        Dewey &LeBoeuf LLP        333 South Grand Avenue        Suite 2600        Los Angeles, CA 90071−1530 | | |
| aty | Bruce Bennett        Dewey &Leboeuf LLP        333 South Grand Avenue        Suite 2600        Los Angeles, CA 90071−1530 | | |
| aty | David Greenspan        Dewey &LeBoeuf LLP        1301 Avenue of the Americas        New York, NY 10019−60920 | | |
| aty | Jason R. Wolf        Dewey &LeBoeuf LLP        333 South Grand Avenue        Suite 2600        Los Angeles, CA 90071−1530 | | |
| aty | John E. Schreiber        Dewey * LeBoeuf LLP        333 South Grand Ave, 26th Floor        Los Angeles, CA 90071 | | |
| aty | Martin J. Bienenstock        Dewey &LeBoeuf LLP        1301 Avenue of the Americas        New York, NY 10019−60920 | | |
| aty | Matthew M. Walsh        Dewey &LeBoeuf LLP        333 South Grand Avenue        Suite 2600        Los Angeles, CA 90071−1530 | | |
| aty | Monika S. Wiener        333 South Grand Avenute, Suite 2600        Los Angeles, CA 90071−1530 | | |
| aty | Philip M. Abelson        Dewey &LeBoeuf LLP        1301 Avenue of the Americas        New York, NY 10019−60920 | | |
| aty | William P. Bowden        ASHBY &GEDDES        500 Delaware Ave.        Wilmington, DE 19801 | | |

TOTAL: 11