## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
              :

*In re*            :        Chapter 11

            :

Nortel Networks Inc., *et al.*,[1]     :        Case No. 09-10138 (KG)

            :

            Debtors.    :        Jointly Administered

            :        **Re: D.I. 17492, 17555**

            :

            :

            :

------------------------------------------------------------X

## DEBTORS' OBJECTION TO THE NORTEL TRADE CLAIMS CONSORTIUM'S (I) MOTION FOR RECONSIDERATION AND VACATION OF THE BANKRUPTCY COURT'S DECEMBER 18, 2014 PPI SETTLEMENT ORDER AND (II) OBJECTION TO CROSSOVER BONDS CLAIMS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby file this objection (the "Objection") to the Nortel Trade Claims Consortium's (the "NTCC")[2] (I) Motion for Reconsideration and Vacation of the Bankruptcy Court's December 18, 2014 PPI Settlement Order and (II) Objection to Crossover Bonds Claims [D.I. 17492] (the "Motion") and request that the Court deny the Motion.[3]  In support of this Objection, the Debtors respectfully represent as follows:

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International Inc. (8667). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]     The NTCC represents a group of creditors purportedly holding over $149 million in unsecured (non-funded) debt claims against the Debtors.

[3]     Liquidity Solution, Inc. ("LSI") also filed a Motion, Objection and Joinder to the NTCC's Motion on December 9, 2012 [D.I. 17555] seeking reconsideration of the PPI Settlement Agreement, which relief the Debtors submit should also be denied.

## PRELIMINARY STATEMENT

1.      The NTCC's Motion – which seeks (i) reconsideration of the PPI Settlement Agreement[4] that allowed the Crossover Bonds Claims against NNI in the aggregate unsecured amount of approximately $3.9 billion and (ii) disallowance of the Crossover Bonds Claims – should be denied as both untimely and without basis.  The Motion starts from the false premise that NNI's non-bondholder unsecured creditors are entitled to some unstated level of distributions on their claims, and that their expected recoveries under the Debtors' Plan are "depressed" because the Plan contemplates the Crossover Bonds will be paid by NNI on a *pari passu* basis with other general unsecured claims.

2.      In short, by the NTCC's own admission, the Motion is simply an attempt to reap additional recoveries from the Debtors for its own benefit at the expense of the Debtors' other unsecured creditors.  See Motion, ¶ 1.  Even if the Motion were timely (which it is not), the NTCC cannot satisfy its extremely high burden to justify reconsideration of the order approving the PPI Settlement Agreement.  The Debtors have proposed a Plan that would bring these cases to a final resolution after years of hard-fought litigation followed by substantial arms-length negotiations among the various worldwide Debtor estates and their respective creditors, including the NTCC.  The NTCC's proclaimed unhappiness with the terms of that settlement does not change the inescapable and fundamental facts of these cases – including that the settlements embodied in the Plan are in the best interests of the Debtors' creditors, or, in the context of this motion for reconsideration, that NNI guaranteed the Crossover Bonds and that the holders of such bonds are entitled to *pari passu* distributions on their allowed claims for prepetition amounts outstanding under the guarantees.  To the extent that the NTCC wants to

---

[4]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

challenge the Plan terms, it has an ample platform for doing so through the Plan confirmation

process, and it already has launched that effort by serving what the Court concluded were

aggressive and overbroad subpoenas seeking the production of privileged documents to

"discover" the basis for the settlements embodied in the SPSA and the facts of the mediation

process before Judge Farnan, to which the NTCC was a party, that led to the SPSA.  While the

Court concluded that such discovery is inappropriate, the Debtors will provide their responses to

the NTCC's Plan objections separately and at the appropriate time.  The NTCC should not be

permitted to further disrupt the Plan process and to generate settlement nuisance value by trying

to reopen matters previously resolved in these cases, long after the time period for doing so has

passed.

## RELEVANT BACKGROUND

3.       On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.[5] and Nortel Networks India International Inc.,[6] filed voluntary petitions

for relief under Chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural

purposes only.  Soon after the commencement of these insolvency proceedings, the Debtors and

their various affiliates entered into a series of transactions in which they sold various business

units and other assets to various purchasers.  Despite early and repeated efforts at mediation

(including before all of the asset sales were consummated), the key parties were unable to reach

---

[5]       Nortel Networks (CALA) Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[6]       Nortel Networks India International Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 26, 2016, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 17090].

an agreement as to the distribution of the proceeds of such transactions, and proceeded to engage in litigation before this Court and the Canadian Court (the "Allocation Dispute").[7]

4.      On September 25, 2009, The Bank of New York Mellon, as indenture trustee for the Crossover Bonds, timely filed two proofs of claim against NNI on behalf of the holders of certain notes issued by one of the Canadian Debtors and guaranteed by, among others, NNI in the aggregate amount of $3,940,750,260 on account of NNI's guarantee of such bonds.  On October 25, 2013, Wilmington Trust, N.A., indenture trustee for certain notes issued by NNL not guaranteed by any Debtor, filed an objection to those two proofs of claim filed by The Bank of New York Mellon requesting disallowance of the Crossover Bonds Claims, including any claim to post-petition interest [D.I. 12116] (the "Wilmington Trust Claims Objection").  On November 15, 2013, the Court issued an order adjourning the objection.

5.      Eight months later, and five weeks into the Allocation Trial, the Monitor submitted a memorandum to the Court requesting that the Canadian Court and the Bankruptcy Court each determine whether the Crossover Bondholders are entitled to post-petition interest both in the United States and Canada under applicable law and procedures in each jurisdiction. After extensive briefing from a number of parties advancing divergent and competing positions, the Crossover Bondholders and the Debtors engaged in discussions and negotiations that ultimately led to the PPI Settlement Agreement.

6.      The PPI Settlement Agreement provides, in relevant part, that (i) the Crossover Bondholders[8] will have allowed general unsecured claims against NNI in the aggregate amount

---

[7]      A detailed summary of the various business unit and asset sale transactions, as well as a description of the Allocation Dispute, is set forth in the Disclosure Statement.

[8]      The "NNCC Bonds", a series of notes issued by NNCC and NNL and guaranteed by NNL, pursuant to an indenture dated as of February 15, 1996, are not subject to the PPI Settlement Agreement and their treatment in the Debtors' Chapter 11 cases was not determined by the order approving the PPI Settlement Agreement.  Accordingly,

of $3,934,521,442.00; and (ii) in the event that NNI's estate has more than sufficient funds to pay all administrative, priority, secured, and general unsecured claims, the Crossover Bondholders will be entitled to payment of post-petition interest with respect to such bonds, capped at $1.01 billion.[9]  The PPI Settlement Agreement further provides that the Crossover Bondholders' claims to any other contractual entitlements are included in and subject to the $1.01 billion total cap.

7.      Following a two-day evidentiary hearing on November 4 and 5, 2014, at which the Court considered objections raised by the Monitor with respect to the terms of the PPI Settlement Agreement, the Court entered the order approving the PPI Settlement Agreement on December 18, 2014 [D.I. 14950].  Thereafter, the Monitor and the Canadian Debtors filed an appeal of the order approving the PPI Settlement Agreement based on their objection to the allowance of the Crossover Bondholders' claims for post-petition interest, which appeal remains pending.  Neither the NTCC nor any of its members appeared at any time in connection with the PPI Settlement Agreement, the order approving the PPI Settlement Agreement, or the subsequent appeal, and no party challenged the allowance of the unsecured Crossover Bonds Claims in the amount of the outstanding principal and prepetition interest owed.

8.      At the time this Court considered the PPI Settlement Agreement, the Allocation Dispute had not yet been decided.  The Allocation Trial, however, had concluded by that time and at least one party at the Allocation Trial advocated that this Court endorse an allocation methodology that would render NNI insolvent.  This was publicly known at the time the PPI

---

the relief requested in the Motion, and therefore this Objection, does not relate to the NNCC Bonds or the treatment of the NNCC Bonds under the SPSA or the Plan.

[9]      The post-petition interest cap consists of (x) a cap of $876 million for the period from the Petition Date up to and including June 30, 2014; and (y) additional interest accruing at a rate of 3.5% per annum from July 1, 2014 until the earlier of June 30, 2015 and the date of the final distribution with respect to the Crossover Bonds, with such additional interest capped at $134 million.

Settlement Agreement was executed and this Court's approval was sought.  Nevertheless, neither the NTCC nor any of its members objected to the PPI Settlement Agreement.

9.      Subsequent to the approval of the PPI Settlement Agreement, on May 14, 2015, this Court and the Canadian Court simultaneously issued opinions deciding the Allocation Dispute, from which appeals were pursued by several parties, which appeals remain outstanding.[10]  Renewed vigorous, arms-length negotiations among the various parties under the supervision of a court-appointed mediator, starting in the fall of 2015, ultimately led to the settlement of the Allocation Dispute and various other matters as embodied in the SPSA and in the Debtors' Plan, as amended and filed with the Court on December 1, 2016 [D.I. 17501].  As the NTCC acknowledges, the SPSA provides for a greater amount of Sale Proceeds to be allocated to the Debtors than would be expected to flow to the Debtors under the Court's Allocation Decision.  The SPSA also eliminates other risks and uncertainties to the Debtors and their creditors, including those relating to the recovery expected on account of NNI's allowed $2 billion claim against NNL and the resolution of other intercompany claims.

10.      By order dated December 1, 2016, the Court approved the Debtors' Disclosure Statement and the Debtors' procedures for soliciting votes on the Plan, and scheduled a hearing to confirm the Plan for January 24, 2017 [D.I. 17516].[11]

## ARGUMENT

11.      The relief requested in the Motion is untimely and is not appropriate under the facts and applicable law.  Moreover, the NTCC's argument that the Crossover Bonds Claims should be disallowed is entirely inconsistent with the facts of these Chapter 11 cases and with

---

[10]      *See* Appeals and Cross-Appeals, July 9-23, 2015 [D.I.s 15846, 15878, 15888, 15890, 15894, 15893, 15916, 15919, 15921, 15926].

[11]      As set forth in the Plan and Disclosure Statement, the Plan does not include a Plan for Nortel Networks India International Inc., which intends to file its own Chapter 11 plan in its Chapter 11 case.

governing law, including the Supreme Court precedent of <u>Ivanhoe Bldg. & Loan Ass'n v. Orr</u>,

295 U.S. 243 (1935), which declared that a holder of  guaranteed debt is entitled to assert the full

amount of its claim against both the primary obligor and the guarantor.

## I.    <u>The Motion for Reconsideration is Untimely</u>

12.     The Motion is untimely because it does not comply with the time limitations of

Rule 60(c) of the Federal Rules of Civil Procedure (the "<u>FRCP</u>"), as made applicable to these

proceedings by Bankruptcy Rule 9024.  Contrary to the NTCC's assertions, the time limitations

for a motion for reconsideration provided in the Bankruptcy Rules and FRCP are applicable to a

motion under section 502(j) of the Bankruptcy Code.  <u>See</u> <u>In re Tender Loving Care Health</u>

<u>Servs., Inc.</u>, 562 F.3d 158, 163 (2d Cir. 2009) ("<u>In re Tender Loving</u>") (holding that a motion to

reconsider pursuant to section 502(j) of the Bankruptcy Code is governed by the time limit set

forth in Bankruptcy Rule 9024).

13.     FRCP 60 permits a court to grant relief from a final judgment, order, or

proceeding based on, among other things, (i) newly discovered evidence that, with reasonable

diligence, could not have been discovered in time to move for a new trial under Rule 59(b), or

(ii) any other reason that justifies relief.  That rule requires that such a motion be made within a

reasonable time and, when based on newly discovered evidence, no more than a year after the

entry of the judgment or order or the date of the proceeding.  <u>See</u> FRCP 60(b) and (c).  While the

NTCC offers no argument that its Motion is timely, by purporting to seek relief pursuant to

FRCP 60(b)(6) based on "other reasons that justify relief," it was obligated to file the Motion

"within a reasonable time."   However, notwithstanding the NTCC's characterization of its

Motion, in substance, the NTCC seeks relief under FRCP 60(b)(2), which requires a motion for

reconsideration of allowed claims to be filed within one-year of the order allowing such claims.

Specifically, the NTCC points to the Allocation Decision as the "contaminated" starting point for

the SPSA and the Plan that requires reconsideration of the order approving the PPI Settlement

Agreement.  As such, the NTCC was required to seek the relief  requested no later than one year

after the order approving the PPI Settlement Agreement was issued (*i.e.* before December

2015).[12]  At the latest, the NTCC's Motion was time-barred on May 12, 2016, one year after the

"contaminated" Allocation Decision brought to the forefront the issues of both the Debtors'

insolvency and the implications of the PPI Settlement Agreement about which the NTCC now

complains.   It failed to seek relief consistent with the applicable time limitation and,

accordingly, its request is time-barred.[13]

14.    Moreover, even were the one-year limitation not applicable, the Motion is still

untimely as the NTCC failed to file it within a "reasonable" time after the order approving the

PPI Settlement Agreement.  The Court issued that order more than two years ago, and the

NTCC's principal complaint in the Motion – its concern that the Crossover Bondholders have an

allowed claim for principal and pre-petition interest against NNI regardless of the ultimate

allocation of the Sale Proceeds – was known when the PPI Settlement Agreement was approved

by the Court.  Moreover, that allowed claim was the subject of intense discussion at the time of

the Allocation Decision, as well as argument to this Court in connection with the Allocation

Decision reconsideration motions in July 2015, in which the NTCC participated.  This allowed

claim remained at the forefront throughout the mediation sessions that followed the issuance of

---

[12]    The exception to the one-year time limitation contained in Bankruptcy Rule 9024 for a motion to reconsider an order allowing or disallowing a claim "entered without a contest" does not apply here because it is beyond dispute that the PPI Settlement Agreement and the validity of the Crossover Bonds Claims were challenged by the Monitor and Canadian Debtors, and because the Wilmington Trust Claims Objection put the Crossover Bonds Claims in dispute.  See In re Tender Loving, 562 F.3d at 163 (concluding that even if the settlement order was entered without dispute, the fact that an objection to the claim subject to the settlement order has been filed means that the order was not "entered without a contest.").

[13]    Notwithstanding the NTCC's hyperbolic statements, according to its most recent Rule 2019 statement filed on November 30, 2016, certain members of the NTCC have purchased and sold claims in the time since the order approving the PPI Settlement Agreement was issued in an apparent opportunistic effort to reap benefits from the impact of the so-called "contaminated" Allocation Decision.  See First Amended Verified Statement of Counsel to the Nortel Trade Claims Consortium Pursuant to Bankruptcy Rule 2019 [D.I. 17493].

the Allocation Decisions in which the NTCC participated.  The NTCC's decision to wait to file

the Motion until after the settlement leading to the SPSA was announced and a mere seven

weeks before the confirmation hearing on the Debtors' Plan plainly runs afoul of the reasonable

time requirement of FRCP 60.[14]  Accordingly, the Debtors submit that the Motion is time-barred

pursuant to Bankruptcy Rule 9024.

## II.    Reconsideration of the PPI Settlement Agreement is Not Justified under Section 502(j) of the Bankruptcy Code

15.    Even if the Motion were timely, no basis exists to reconsider or vacate the

allowance of the Crossover Bondholders' unsecured $3.9 billion claims.  Section 502(j) of the

Bankruptcy Code provides a narrow avenue for the reconsideration of allowed or disallowed

claims "*for cause*."  11. U.S.C. § 502(j) (emphasis added).  The Bankruptcy Code does not

define "cause," but when deciding a motion under section 502(j), courts, including those in the

Third Circuit, generally apply the standard set forth in FRCP 60, as made applicable by

Bankruptcy Rule 9024.  See In re Genesis Health Ventures, Inc., 362 B.R. 657, 661 (D. Del.

2007); In re Lomas, 212 B.R. 46, 51-52 (Bankr. D. Del. 1997); see also In re Terrestar Networks,

Inc., No. 10-15446 (SHL), 2013 WL 781613, at *2 (Bankr. S.D.N.Y. Feb. 28, 2013) (collecting

cases).

16.    A movant under FRCP 60(b) bears a "heavy burden" to show that cause for

reconsideration exists under one of the six enumerated bases for relief.[15]  See In re Syntax-

---

[14]    As a general matter, even a motion pursuant to FRCP 60(b)(6) filed more than one year after final judgment is untimely unless "extraordinary circumstances" excuse the party's failure to proceed sooner.  See Ortiz v. Pierce, No. CV 08-487-LPS, 2014 WL 3909138, at *1 (D. Del. Aug. 11, 2014), certificate of appealability denied (Apr. 9, 2015) (citing Ackerman v. U.S., 340 U.S. 193, 202 (1950)).  The NTCC has not offered any such excuse for its delay in bringing the Motion.

[15]    FRCP 60(b) provides the following bases for relief: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or

Brillian Corp., No. 13-337 (GMS), 2016 WL 5662074, at *12 (D. Del. Sept. 29, 2016) (citing

Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991).  Moreover, reconsideration is granted

sparingly due to the strong public policy favoring finality of the judicial orders and decisions.

See In re Syntax-Brillian Corp., 551 B.R. 156, 160 (Bankr. D. Del. 2016) (citation omitted).

Although relief under Rule 60(b) is left to the "sound discretion" of the court, In re New Century

TRS Holdings, Inc., No. 12-288-SLR, 2013 WL 1680472, at *1 (D. Del. Apr. 17, 2013), it

should be granted "only where extraordinary justifying circumstances are present," In re Syntax-

Brillian Corp., 551 B.R. at 160 (citing Pilsco v. Union R.R. Co., 379 F.2d 15, 16 (3d Cir. 1967)).

This is particularly true when a movant seeks reconsideration pursuant to the catchall provision

of FRCP 60(b)(6),[16] for which the movant must show "extraordinary circumstances where,

without such relief, an extreme and unexpected hardship would occur." Cox v. Horn, 757 F.3d

113, 115 (3d Cir. 2014) (quoting Sawka v. Healtheast, Inc., 989 F.2d 138, 140 (3d Cir. 1993));

see also In re Beam, 510 B.R. 399, 408 (Bankr. N.D. Ga. 2014).[17]

    17.    The NTCC has failed to carry its burden to show that cause exists such that

reconsideration of the allowance of the Crossover Bonds Claims in the amount of outstanding

principal and prepetition interest based on NNI's guarantee of such bonds is warranted.  In the

Motion, NTCC does not suggest that NNI's contractual guarantees are not valid obligations.  Its

claim that reconsideration is warranted because of the Debtors' anticipated insolvency and the *de*

---

discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justified relief.  Fed .R. Civ. P. 60(b).

[16]    As discussed above, although the NTCC cites FRCP 60(b)(6) as the basis for its motion, its arguments are more consistent with a motion for reconsideration under FRCP 60(b)(2).  Under either subsection of FRCP 60(b), reconsideration is not appropriate here.

[17]    In fact, FRCP 60(b)(6) generally requires the movant to make a "'more compelling showing of inequity or hardship" than would normally be required . . . under any of the first five subsections of Rule 60(b)."  In re New Century TRS Holdings, Inc., 2013 WL 1680472, at *2 (internal citation omitted).

*facto* substantive consolidation of the Debtors with the Canadian Debtors effectuated by the

Allocation Decision entirely lacks merit.[18]

18.      While the NTCC claims that the fact that NNI will not pay its general unsecured

claims in full is a changed circumstance, even if that were accepted to be true, the NTCC does

not explain why the Crossover Bondholders would not be entitled to allowance of their general

unsecured claims against NNI based on contractual guarantees in any event.  Realizing this

argument alone is insufficient, the NTCC further argues that the Allocation Decision created a

"*de facto*" substantive consolidation of the Debtors and the Canadian Debtors that justifies

reconsideration of the allowance of the Crossover Bonds Claims.  Without delving into that

argument (which the NTCC notably fails to develop), the fact of the matter is that this Court has

expressly held otherwise – the Allocation Decision proclaims: "[t]o be clear, the Court is not

ordering cross-border, global substantive consolidation.." <u>See</u> Allocation Decision at 63; <u>see</u>

<u>also</u> <u>id.</u> at 101 ("Pro Rata Allocation is Not Substantive Consolidation").  What's more, the

SPSA and Plan do not effectuate a substantive consolidation of the Debtors and the Canadian

Debtors in any shape or form.  In settling the Allocation Dispute, among other things, the SPSA

contemplates separate allocations of Sale Proceeds to, among others, the relevant Debtors, on the

one hand, and to the Canadian Debtors, on the other, to be separately distributed to the creditors

of their respective estates.  To the extent the NTCC wishes to argue that the Allocation Decision

is *de facto* substantive consolidation, it may do so in connection with its pending appeal to the

Third Circuit (to the extent it has standing to do so and such appeal is not mooted); and to the

extent the NTCC wishes to object to the SPSA and Plan terms, it may do so by pursuing an

---

[18]      Under the terms of the PPI Settlement Agreement, to the extent the Debtors proved to be solvent, the
Debtors' liability for post-petition interest on the Crossover Bonds  Claims would be limited to a negotiated, agreed
upon amount, while to the extent that the Debtors proved to be insolvent, the PPI Settlement Agreement provides
that the Debtors will not owe any post-petition interest on account of the Crossover Bonds Claims and that the
Crossover Bondholders' unsecured claims would be fixed at and limited to $3,934,521,442.

objection to the Debtors' forthcoming 9019 motion and to the Plan.  But in any event, this Motion is simply the wrong platform to advance such arguments.[19]

19.    In the same vein, the NTCC fails to establish that reconsideration under section 502(j) is warranted based on the equities of the case.  As an initial matter, reconsideration under section 502(j) involves a two-step process, requiring a court first to find "cause" for reconsideration before deciding whether the "equities of the case" dictate allowance (or disallowance) of the claim.  In re Morningstar, 433 B.R. at 719 ("To focus solely on "the equities" ignores the first part of the rule, the requirement of cause.  Absent cause, there is no basis for reconsidering anything.").  Thus, in the absence of cause for reconsideration, the Court need not reach the question of the equities of the case.

20.    Moreover, as a substantive matter, the equities of the case do not favor reconsideration given the untimeliness of the Motion, which was filed two years after the order approving the PPI Settlement Agreement was issued, more than a year and a half after the Allocation Decision and just seven weeks before the Debtors' plan confirmation hearing.  The NTCC's transparent litigation tactic is nothing more than a distraction from the Debtors' efforts to bring resolution to their Chapter 11 cases.  In addition, even had the NTCC articulated some cause (which it has not), vacatur of the PPI Settlement Agreement is inconsistent with the equities here because it would not accomplish the NTCC's objective – the disallowance of the Crossover Bonds Claims.[20]  Allowance of the Crossover Bonds Claims is directly contemplated by and consistent with the Ivanhoe rule.  Indeed, the NTCC acknowledges that the Crossover

---

[19]    Although LSI claims to assert an additional argument in favor of reconsideration premised on the purported effect of the Allocation Decision on the PPI Settlement Agreement, for similar reasons, LSI's argument is incorrect and, in any event, more properly raised in the context of confirmation of the Plan.

[20]    Moreover, because section 502(j) of the Bankruptcy Code and FRCP 60, as made applicable by Bankruptcy Rule 9024, expressly define the circumstances in which reconsideration of a motion allowing or disallowing a claim is appropriate, the NTCC cannot invoke the Court's equitable powers under section 105 of the Bankruptcy Code to avoid the requirements of section 502(j) and FRCP 60.

Bonds Claims are "quintessential <u>Ivanhoe</u> claims" and fails to provide a valid basis for the Court to find that <u>Ivanhoe</u> should not therefore apply.  As such, while the NTCC purports to challenge the PPI Settlement, its Motion is in substance a challenge to the Court's Allocation Decision, the SPSA and applicable law.  Accordingly, the Motion, while lacking merit, is also not the appropriate avenue for asserting the NTCC's arguments.

21.     In light of the foregoing, the Debtors submit that there is no basis for the relief requested by the NTCC and request that the Court deny the Motion.

### Notice

22.     Notice of this Objection has been given via first class mail, facsimile, electronic transmission, hand delivery or overnight mail to (i) counsel to the NTCC; (ii) counsel to LSI; (iii) the U.S. Trustee; (iv) counsel to the Official Committee of Unsecured Creditors; (v) counsel to the Crossover Bondholders; (vi) counsel to the Canadian Debtors; and (vii) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court deny the Motion and the relief requested therein.

Dated: December 13, 2016         CLEARY GOTTLIEB STEEN & HAMILTON LLP
      Wilmington, Delaware

James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


   */s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*