```
                    IN THE UNITED STATES BANKRUPTCY COURT
                       FOR THE DISTRICT OF DELAWARE


IN RE:                          )    Case No. 09-10138(KG)
                                )    (Jointly Administered)
                                )
NORTEL NETWORKS, INC., et al.,)      Chapter 11
                                )
                                )    Courtroom 3
                                )    824 Market Street
            Debtors.            )    Wilmington, Delaware
                                )
                                )    December 13 2016
                                )    12:00 p.m.


                     TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JUDGE KEVIN GROSS
                 UNITED STATES BANKRUPTCY JUDGE

TELEPHONIC APPEARANCES:

For Debtors:              Morris Nichols Arsht & Tunnell, LLP
                          BY: DEREK C. ABBOTT, ESQ.
                          BY: ANDREW R. REMMING, ESQ.
                          302-351-9200

                          Cleary Gottlieb Steen & Hamilton
                          BY: JAMES BROMLEY, ESQ.
                          BY: JEFFREY ROSENTHAL, ESQ.
                          BY: LISA SCHWEITZER, ESQ.
                          BY: SRI K. KUEHNLENZ, ESQ.
                          212-225-2000

ECRO:                     GINGER MACE

Transcription Service:    DIAZ TRANSCRIPTION SERVICES
                          331 Schuylkill Street
                          Harrisburg, Pennsylvania 17110
                          (717) 233-6664
                          www.diaztrans.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

```
TELEPHONIC APPEARANCES:
(Continued)
```

| | |
|---|---|
| For Pension Trust Fund: | Bayard, P.C.<br>BY: JUSTIN ALBERTO, ESQ.<br>302-429-4226 |
| For the Monitor, Ernest<br>& Young: | Allen & Overy<br>BY: JOSEPH BADTKE-BERKOW, ESQ.<br>212-610-6417<br>BY: LAURA HALL, ESQ.<br>212-610-7300<br><br>Buchanan Ingersoll & Rooney<br>BY: KATHLEEN MURPHY, ESQ.<br>302-552-4214 |
| For Ad Hoc Bondholder Group: | Milbank Tweed Hadley & McCloy<br>BY: NICK BASSETT, ESQ.<br>212-530-5000<br>BY: THOMAS KRELLER, ESQ.<br>424-386-4463<br>BY: ERIC WEISS, ESQ.<br>212-530-5420 |
| For Official Creditor's<br>Committee: | Akin Gump Strauss Hauer & Feld<br>BY: FRED HODARA, ESQ.<br><br>BY: DAVID BOTTER, ESQ.<br>BY: ABID QURESHI, ESQ.<br>BY: ANTHONY LORING, ESQ.<br>BY: ROBERT JOHNSON, ESQ.<br>BY: BRAD KAHN, ESQ.<br>One Bryant Park<br>212-872-1000 |
| For the Joint Administrators: | Young Conaway Stargatt &<br>Taylor LLP<br>BY: JAIME CHAPMAN, ESQ.<br>302-571-5032 |
| For the Creditor, PBGC | Kelley Drye & Warren<br>BY: BENJAMIN FEDER, ESQ.<br>BY: MARISSA LORENZO, ESQ.<br>212-808-7800<br><br>Pension Benefit Guaranty Corp.<br>BY: VINCENTE MURRELL<br>202-326-4020 |

```
TELEPHONIC APPEARANCES:
 (Continued)
```

```
For Contrarian Capital          Contrarian Capital Management
Management:                     BY: KIMBERLY GLANIS, ESQ.
                                203-862-8250


For U.K. Pension Trust:         Willkie Farr & Gallagher, P.C.
                                BY: ANDREW HANRAHAN, ESQ.
                                212-728-8170


For Ad Hoc Committee of         Pachulski Stang Ziehl & Jones
Bondholders:                    BY: PETER KEANE, ESQ.
                                302-778-6401


For Joint Administrators:       Herbert Smith
                                BY: PHILLIPI LIS, ESQ.
                                302-571-6710


                                Herbert Smith
                                BY: JOHN WHITEOAK, ESQ.
                                302-571-6710


                                Hughes Hubbard & Reed, LLP
                                BY: CAROLINE BEAUDRIES, ESQ.
                                212-837-6000


For Law Debenture Trust         Patterson Belknap
Company of New York:            BY: DANIEL LOWENTHAL, ESQ.
                                212-336-2720


For Nortel Trade Class          Fox Rothschild
Consortium:                     BY: CARL NEFF, ESQ.
                                302-654-7444


                                Brown Rudnick
                                BY: STEVEN POHL, ESQ.
                                BY: JAMES STOLL, ESQ.
                                617-856-8594


For Interested Party,           Reorg Research, Inc.
Reorg Research, Inc.:           BY: JASON B. SANJANA, ESQ.
                                212-588-8890
```

TELEPHONIC APPEARANCES:
 (Continued)


For Cowen & Company:          Cowen & Company
                              BY: AMER TIWANA, ESQ.
                              646-616-3052

For Official Committee of     Whiteford Taylor Preston, LLP
Unsecured Creditors:          BY: CHRISTOPHER SAMIS, ESQ.
                              302-357-3266

1    WILMINGTON, DELAWARE, TUESDAY, DECEMBER 13, 2016, 11:59 A.M.

2              THE COURT:  Well Counsel, good afternoon.  It's

3    Judge Gross on the phone and I know that we have gathered on

4    the phone for discovery disputes, one between the Debtors and

5    the Nortel Trade Commission and the other between the Debtors

6    and the PBGC and I propose that we take up the NTCC matter

7    first unless parties disagree.

8              MR. ABBOTT:   Derek Abbot, for the Debtors.  Your

9    Honor, that makes sense.  I believe that Mr. Rosenthal will

10   be addressing that issue for the Debtors, Your Honor.

11             THE COURT:  All right, that's fine, Mr. Abbott.

12   Thank you.  Mr. Rosenthal, good afternoon.

13             MR. ROSENTHAL:  Good afternoon, Your Honor.  It's

14   been a while.

15             THE COURT:  Yes.  But the case stays on.

16             MR. ROSENTHAL:  It certainly does.  Well,

17   hopefully, I'll have the pleasure at some point to be back in

18   your Courtroom.

19             THE COURT:  Yes, sir.

20             MR. ROSENTHAL:  So the dispute today was really

21   -- it was brought about by the NTCC.  I don't know if the

22   Court would prefer to hear from them first as the party

23   seeking the discovery or prefer to hear the Debtor's

24   position.  I think we were each planning to reach out to the

25   Court equally when there was a Motion to Compel or a Motion

1    for Protective Order.  So I'll leave it to the Court as to

2    how you'd like to proceed.

3            THE COURT:  Well, why don't I hear from the NTCC

4    first?

5            MR. POHL:  Sure.  That's fine, Your Honor.  Thank

6    you.  It's Steven Pohl, from Brown Rudnick, for the Nortel

7    Trade Claims Consortium.  Our Delaware Counsel, Fox

8    Rothschild, is on and my partner, James Stoll, who's not

9    present with me, he is on the phone.

10            THE COURT:  All right.

11            MR. POHL:  And so I'd like to introduce our

12    position and when I'm finished Mr. Stoll may want to add

13    something.  So when we were last before Your Honor on

14    December 1st at the Disclosure Statement hearing, we had

15    previewed our position was that we were intending to object

16    to the Plan and that we would come to see you if we had a

17    discovery dispute.  So, again, thank you for seeing us on

18    short notice.

19            THE COURT:  Yes.

20            MR. POHL:  Our position is laid out in our letter,

21    and just to highlight a few of the points, some very basic,

22    and some getting to the gravamen of the issue.  One, we

23    requested Plan discover.  Certainly nothing unusual about

24    that.  Two, and the rules for Plan discovery, as we know, are

25    very broad and as both letters submitted to you indicate,

1    we've attempted through the meet-and-confer to narrow the

2    requests.  Two, we're seeking discovery related to the 9019

3    settlement.  Largely, we're looking for matters related to

4    the U.S. Plan, you know, not really the ultimate split of the

5    cash pot but the U.S. Plan and credit recoveries.  As I did

6    indicate at the December 1st hearing, we did reserve our right

7    to be able to seek additional discovery to the extent any

8    sort of comes to mind when we see the 9019 Motion and

9    [indiscernible] factors, and we haven't seen that yet.  We're

10   told that will be filed this week.  So that's the background.

11           So there was a mediation, as this Court is well

12   aware with Judge Farnan.  The focus of that mediation, which

13   is evident from the Mediation Order, was the split up of "the

14   global cash pot" among the three main jurisdictions.  That

15   mediation, start to end, was the better part of a year.  But

16   it's important to note, and we've highlighted it in the

17   letter, that there were essentially I would boil it down to

18   four to five sessions.  Certainly there may have been a call

19   in between here and there but, you know, in-person sessions

20   with Judge Farnan, there were four to five of them over the

21   year and some of them, admittedly were more than a day.  I

22   think at the most one of them was three days, another was two

23   days.  There were, as I said, stops and starts.  There was

24   progress followed by no progress, as this Court may recall

25   from its own hearing updates.  And there'd be silence for a

1    fair amount of time.  One example is, you know, from the

2    January session to the June session, there were no mediation

3    sessions and it was largely radio silence between and among,

4    as we understand it, three main jurisdictions.

5              So the Debtors, the Creditors Committee, the Ad

6    Hoc Bond Group used this as -- used the mediation as a

7    complete blanket protection from discovery and, you know, if

8    that were the rule, discovery would simply get a back seat.

9    And I want to highlight a couple things.  First, looking at

10   the letter submission from the three of them at page 3; I

11   don't know if the Court has it handy but --

12             THE COURT:  I do.

13             MR. POHL:  -- I'm looking at page 3.  I'm looking

14   at the carry over paragraph on the top and the last two

15   sentences, you know, say to the extent that the NTC seek to

16   parse the mediation of the allocation dispute and

17   negotiations leading to the U.S. Plan, you know, they're

18   inextricably intertwined and we were told that, on our meet-

19   and-confers, they were therefore immune from discovery, and

20   the economic terms we're told that are in the Plan were

21   directly from the allocation dispute.  And I guess my

22   response to that is that puts the cart before the horse.  You

23   know, that may be so.  It may not be so and we're entitled to

24   discovery on that.  You know, one example is -- and this has

25   come up not only in our papers but in the PBGC's papers,

1  there is a subcon of two entities and that arose from the

2  settlement with the NTCC bonds and the NTCC bonds, you know,

3  their Trustee, but not the Bondholders, participated in

4  mediation.  This is a one off settlement really unrelated to

5  the mediation and we're entitled to discovery on that.  There

6  may be more like that but, you know, the other thing I'd like

7  to just highlight so that the Court has the full appreciation

8  for where we're coming from, as the Court may recall on

9  reconsideration and on appeal, to the extent the Court has

10  seen any of the appeal papers, both the Debtors and the UCC

11  pointed out that the allocation Decision visited, you know,

12  an especially disproportionate harm or treatment on the U.S.

13  non-bond general unsecured that, in fact, Ms. Schweitzer, you

14  know, pointed it out to Your Honor at the Disclosure

15  Statement hearing.  So our position is we're entitled to

16  discovery to see what, if anything, our fiduciaries may have

17  tried to do to remedy that harm, separate and apart from

18  whatever the result of how the global pot put off.

19          In the same vain on mediation, and one of my

20  colleagues looked at it but I didn't have a chance to look at

21  every page, the Debtor submitted the ruling of Your Honor, a

22  transcript in a prior case regarding mediation and there's

23  several places in that transcript; I'll just point out the

24  pages to Your Honor, page 25, you know, makes clear that a

25  pre-existing letter or a pre-existing document is not subject

1  to protection by mediation.  It would be discoverable and

2  makes the point that it's submitted exclusively in connection

3  with mediation.  They are.  And there's several other pages;

4  26 and 28 and 29, where Your Honor makes it clear that it

5  disclose to the mediator in the mediation, that's what's

6  protected and we've highlighted some cases that indicate, you

7  know, the same.  It can't be that mediation starts and then

8  ends a year later, has some sessions in between with the

9  mediator and some activities outside and, therefore,

10 everything during that period is protected.  That's a great

11 template for every case in the future.  Schedule mediation.

12 If it works, great.  Everything is protected.  If it doesn't

13 you know, we're just back where we were.

14         Moving from the mediation discovery blanket comes

15 the joint defense.

16         THE COURT:  Yes.

17         MR. POHL:  Something that we always see thrown in

18 our faces, if we're not on the inside, if you will or on the

19 confirmation train, but if we're outside the confirmation

20 train, the blanket of joint defense is thrown up and in one

21 of our earliest calls, you know, it was pointed out to us

22 that there was a long period of time where the U.S.; that is

23 the Bonds, the Debtors, the Committee we're working, you

24 know, joint litigation strategy in the whole allocation

25 trial, we get that.  And we made it clear that we're not

1    looking for anything that pre-dates the allocation decision.

2    But we are looking for things that are not related to just

3    that splitting up of the global pot.  We're looking for term

4    sheets that were shared not with the mediator, not at the

5    mediation sessions.  And again, we've made clear that our

6    focus is, you know, the U.S. Plan and how that was carved

7    out.  And, you know, like everything, the Committee, the

8    Debtor, large Ad Hoc Groups, they want a [indiscernible]

9    deal.  But until there's a deal done, they're at each other's

10   throats.  Even if they're not at each other's throats, they

11   don't have a common interest, a joint interest.  They

12   represent different parties and they don't have a fiduciary

13   duty to all the same parties and here, you know, one thing

14   that really strikes quite a difference is that the

15   Bondholders; you know, this is subject to our pending Motion,

16   but the Bondholders claim to have the biggest claim in the

17   U.S. but they also have, you know, the biggest or one of the

18   biggest claims in Canada.  That certainly makes them

19   different than the U.S. Debtors.  It certainly makes them

20   different than the fiduciary UCC and it represents not only

21   the interest of the Bondholders as to their U.S. claim but

22   also, you know, a myriad of unsecured creditors that have

23   claims only in the U.S.  So that is a difference.  And so the

24   sum and substance of where we are, Your Honor, is that they'd

25   like to run us over.  I get that.  But they shouldn't be able

1   to throw out the steel cart and preclude us from all discover

2   and get no due process here.

3            One thing I want to point out before I either see

4   if you have questions or my partner, Jim Stoll, wants to make

5   any points, there's a couple other topics.  We're not on the

6   subject of the letters but are laid out in the attached

7   request that we haven't heard a defense raised as to and that

8   is the allocation of value to Nortel Networks CALA, the

9   settlement with NNCC and their Plan treatment and the subcon

10  related to that but we don't really have any agreement to

11  seek production of those documents.  So, with that, I'm

12  finished with my comments and I guess I would ask my partner,

13  who's not with me, to see if he has anything that he wanted

14  to add.

15            THE COURT:  All right.

16            MR. STOLL:  Good afternoon, Your Honor.  This is

17  Jim Stoll.  How are you?

18            THE COURT:  Very well, Mr. Stoll.  Thank you.  And

19  how are you --

20            MR. STOLL:  Yeah, I - -

21            THE COURT:  How are you doing?

22            MR. STOLL:  I'm doing fine.

23            THE COURT:  Good.

24            MR. STOLL:  I'm actually stepping out of a

25  deposition for this call so --

1          THE COURT:  Okay.

2          MR. STOLL:  -- it's giving me a good break.  I

3    really don't have a lot to offer in addition to what Mr. Pohl

4    said, only to point out that I think while you can always

5    find cases on, you know, both sides of issues, I think the

6    case law on the mediation privilege by in large is pretty

7    clear that you have to be in the mediation session with the

8    mediator submitting materials to the mediator.  You can't

9    have one off conversations with either all the parties,

10   subsets of the parties, and expect those to be privileged.

11   It doesn't further the mediation process and it's just not

12   the scope of what the mediation privilege is supposed to

13   protect.  And the common interest, again, you know, the case

14   law is very clear that you have to -- when you're negotiating

15   a deal, until you get that deal, you're not in a common

16   interest and in the bankruptcy context, we see this all the

17   time where people put together, you know, they negotiate a

18   pre-package Plan or they negotiate, you know, some form of

19   deal that a certain subset of creditors wants to put forward

20   and then they, once they have that deal, they present it to

21   the Court but all the negotiations leading up to that deal

22   are always discoverable.  So I think Mr. Pohl otherwise

23   articulated everything and I'll stop right there.

24          THE COURT:  Let me ask you both a question, and

25   it's a true question, but the Mediation Order provides that

1 all submissions, communications, and negotiations made in

2 connection with the mediation, all right, and then it talks

3 -- then it goes further to say shall not be disclosed outside

4 of the mediation process.  It doesn't say the mediation.  It

5 says the mediation process.  Is there any significance to

6 those words?

7 　　　　　MR. STOLL:  Well -- this is Jim Stoll again, Your

8 Honor.  Again, the mediation process, as I would interpret

9 that and as we do interpret that, involves where the parties

10 are in direct contact with the mediation -- I mean with the

11 mediator, whether that's on a one off basis or at an actual

12 session, but not where they are in negotiations amongst

13 themselves on the side, especially as it relates to what we

14 see as a very distinction between what the mediation covered,

15 which was the allocation between the different jurisdiction

16 and what we're seeking discovery on which is how the U.S.

17 Plan was devised once that allocation was otherwise the

18 subject of the mediation.

19 　　　　　THE COURT:  Okay.  All right.  Thank you, Mr.

20 Stoll.  I appreciate that.

21 　　　　　MR. STOLL:  Thank you, Your Honor.

22 　　　　　THE COURT:  Mr. Rosenthal, your turn.

23 　　　　　MR. ROSENTHAL:  Thank you, Your Honor.  So I may

24 be a little haphazard here because there's just a number of

25 things that Mr. Stoll and Mr. Pohl had said that are just

1   plain wrong, Your Honor, and I'm going to try to be brief and

2   kind of touch upon them.  But there are some remarkable

3   statements and just complete misstatements of the law and the

4   record.  And I think we will start out with just the latest

5   statement that Mr. Stoll said which is that separate

6   communications between the parties don't further the

7   mediation.  It was something to that effect.  And that is --

8   that's astounding because the fact of the matter is that in

9   any mediation that goes for a long period of time as this,

10  there are a number of communications throughout the process

11  that are all in furtherance of the mediation.  You have

12  initial sessions with the mediator, partiers go back, parties

13  have communications, you know, whether it's between the U.S.

14  Debtors and the Canadian Debtors, whether it's U.S. just

15  formulating positions, but it's all with an eye toward how do

16  we move this whole global mediation forward to conclusion.

17  So the idea that separate communications between parties

18  don't further the mediation is just wrong and there's no

19  authority but he says there's lots of authority out there for

20  these propositions.  There's none.  They cite two cases in

21  their letter.  One is a Western District of Pennsylvania case

22  that is all about a Pennsylvania statute.

23              THE COURT:  Yes.

24              MR. ROSENTHAL:  It's not about a Delaware statute.

25  It's not about this Mediation Order.  It's about the scope of

1  a Pennsylvania statute in the context of a one-day mediation.

2  The other case that he cites when he says that there's lots

3  of authority on this is a California case, Eastern District

4  of California, that's not even a mediation privilege case.

5  There's no mediation privilege there.  It's about the scope

6  of the settlement privilege.  And we're not talking about

7  settlement privilege here.  We're talking about mediation

8  privilege.  I don't know why they even cite this California

9  case.  That's all they cite, Your Honor, for these broad

10  compositions that have been pronounced to you and I think

11  that the analysis really starts and ends legally with Judge

12  Thynge's Order, because she says that communicating, and

13  you've pointed out in Paragraph 6, communications and

14  negotiations made in connection with the mediation are about

15  prejudice subject to 408, strictly confidential and shall not

16  be disclosed.  To me, that's the start and the end of this

17  analysis because it doesn't say submissions to the mediator,

18  statements made by Judge Farnan.  It's anything in connection

19  with the mediation.  And so as a legal matter, the curtain

20  comes down, whether you want to call it our steel curtain or

21  anything else that they want to describe it as, it comes down

22  over the mediation process.  As a factual matter, the

23  statements that they gave to you are just simply wrong.  I

24  mean, I heard Mr. Pohl say, until the deal was done we are at

25  each other's throats because we don't have fiduciary duties

1    to the same parties.  I mean that's also -- that's just not

2    true.  We had a common goal throughout the mediation of

3    maximizing the recovery to the U.S. Estates.  That was the

4    single-minded purpose of the U.S. Debtors.  It's how do we

5    maximize the recovery to the U.S. interests.  The Creditors

6    Committee shared that goal and the Bondholders shared that

7    goal and the communications that we had with each other were

8    about how to implement and how to succeed in our negations

9    for that goal.  And in terms of timing and the notion that we

10   look at isolated dates and times when we had joint sessions

11   with Judge Farnan, again, that's pretty myopic.  If you have

12   a mediation that is occurring for a long period of time, are

13   there breaks between plenary sessions?  Yes.  Does the

14   mediation ever get a bend?  Did Judge Farnan release the

15   parties from mediation such that the Mediation Order ceased

16   to be in effect?  No.  And, in fact, during this period of

17   time, you are having dialogs.  You are having Judge Farnan

18   reaching out to parties to try to move the process forward

19   and you're having parties talking as to how we can move the

20   process forward.  And to the extent that there's any gap in

21   any of them, look at what's going on here and that's where

22   the other privilege that's been ignored by our adversaries

23   comes into play.  It's just a common interest privilege, and

24   I'll talk about the cases that he mis-cites in a moment.  But

25   overlying this whole thing is a common interest privilege on

1  the underlying litigation and starting on May 12th, 2015, we

2  immediately went into litigation over first the Motions for

3  Reconsideration that Your Honor is familiar with.

4          THE COURT:  Yes.

5          MR. ROSENTHAL:  Followed by the litigation for

6  about eight months before the District Court, followed by the

7  Motions for Leave -- for Direct Appeal to the Third Circuit.

8  And that was taking place during this entire period of time

9  and we were having, the U.S. Debtors, regular communications

10  with the Bondholder Group and with the UCC over how to

11  achieve our collective goals in connection with that

12  litigation.  And to the extent that there were gaps in time

13  where the mediation -- where things were really quiet on the

14  mediation front, the communications we had among us were we

15  were drafting Briefs.  We were ending oral argument in early

16  April.  We were responding to the Canadian proceedings and

17  the developments in the Canadian proceedings and how that

18  impacted the U.S. Court proceedings and the appeal.  So the

19  idea that we can somehow, you know, dissect a little smidgen

20  between a couple here or there and say go look for some

21  communications that maybe are carved out, I can't think of

22  any, Your Honor, that would justify the needle in a haystack

23  search that they're looking for.  And if we look at their

24  cases that they try to say well, a common interest is really

25  very narrow as well, look at the two cases, Your Honor, that

1   they cite.  They cite one case in the District of Delaware

2   involving a -- I believe a litigation financer and the

3   question is does a litigation financer have the same legal

4   interests as opposed to commercial interests?  Well, here,

5   can anybody question that the UCC, the Bondholder Group, and

6   the U.S. Debtors did not have the same legal interests with

7   respect to the appeal and the Reconsideration Motions?  I

8   mean I cannot understand how the NTCC could make that

9   assertion credibly.

10         The second case that they cite, the Magnatar [ph]

11  case, talks about joint representations.  It's not a common

12  interest case.  It's what if one law firm represents multiple

13  parties and there comes a point in time when those parties

14  that one law firm is representing has divergent interests

15  and, therefore, can they justify the use of common Counsel

16  when their interests diverge.  I don't know why that's being

17  cited to the Court in connection with a common interest

18  situation here.

19         I think the bottom line, Your Honor, is what are

20  they really looking for here that they think -- and we

21  haven't gotten this answer from them.  We had these

22  negotiations that were aimed towards maximizing the value of

23  the U.S. Estates and to the extent that one constituency or

24  another may also be looking to maximizing their individual

25  recovery as part of their negotiations through the mediator,

1  that's their own negotiations.  On a global basis, we have a

2  blanket privilege.  We have a common interest.  We've worked

3  towards that.  In terms of their objection that they're

4  looking for discovery for, I'm really not understanding of

5  how the discovery is going to tie into it because we're told

6  well, how do the fiduciaries try to remedy that harm.  I

7  haven't really heard, Your Honor, the harm articulated.  The

8  harm is the U.S. interests want more money and the U.S.

9  interests work through the mediation process to try and

10  successfully get hundreds and hundreds of million dollars

11  more.  And there's no dispute, the NCCC does not disagree

12  that we succeeded in getting hundreds and hundreds of million

13  dollars more than we would have gotten had we just litigated

14  out the allocation Decision and it ultimately had been

15  affirmed by the Third Circuit.  So the idea that there's some

16  harm here that they're entitled to go behind, learn about,

17  seek discovery of, and challenge, either they want to say

18  that the ultimate settlement that we should have gotten a

19  different number and we should have settled or not settled at

20  all or not.  But I don't see where the discovery matters

21  here.

22         The last comment I want to make is with regards to

23  the NNCC issue that they said well, that's a one off

24  settlement and that's separate.  With respect, Your Honor,

25  it's not.  It was part of the mediation process.  It is in

1    the STSA that is being presented in the forthcoming 9019

2    Motion for the Court and, in that, NCC released their rights

3    to the lockbox.  And to say that there's somehow not a

4    mediation privilege governing the settlement with NCC is

5    simply wrong.  So I don't believe that I have anything

6    further unless Your Honor has any questions.

7              THE COURT:  I don't think I do, Mr. Rosenthal.  As

8    I said, I read the letters.  I read the cases that you cited.

9    I tried to do some quick research on my own and I don't have

10   questions for you.  I certainly understand the situation.  I

11   don't know if perhaps the NTCC can explain to me precisely

12   what documents they're looking for that are not being

13   produced.

14             MR. BASSETT:  Your Honor, this is Nick Bassett

15   from Milbank, on behalf of the Ad Hoc Group of Bondholders.

16   I just wanted to see if I could be heard for one moment.

17             THE COURT:  Of -- yes, you -- certainly you may

18   and the Committee may be heard for that matter.

19             MR. BASSETT:  Thank you, Judge Gross.  So I just

20   wanted to say that the Bondholder Group, of course, as

21   indicated in the letter filed today by the U.S. Debtors fully

22   supports the position that they have articulated and I also

23   join in the remarks that Mr. Rosenthal has made today.  I

24   just wanted to make a couple of additional points and first,

25   I just wanted to stress from the perspective of the

1   Bondholder Group our view of the critical importance of

2   maintaining the confidentiality of information that is both

3   shared in connection with settlement discussions and

4   information that is exchanged among parties who share a

5   common interest.  I think I can confidently say, and I would

6   presume that other parties to this case would agree with me,

7   that we would not have at long last reached a settlement in

8   these extraordinarily contentious cases if the parties were

9   not able at all times during settlement discussions, not

10  simply during an active mediation session to speak freely and

11  openly and share all ideas and positions without fear of

12  those discussions becoming subject to disclosure at a later

13  date.  And in a similar vein I can also say as a

14  representative of the Bondholder Group that there is no way

15  we would have been able to reach a settlement in these cases

16  if the Bondholder Group, the U.S. Debtors, and the UCC were

17  not able to join forces as advocates on behalf of the U.S.

18  Estates and critical to being able to do that, of course, is

19  the ability of these -- of the parties who share that common

20  interest, the three of us, to have a free flowing exchange of

21  information relating to strategies and negotiations as well

22  as legal analysis, again, without fear that they would later

23  be subject to disclosure at a dispute like this or otherwise.

24  So I just think that it's critically important that both the

25  mediation and settlement discussions privileges and the

1    common interest privileges be upheld and respected if there's

2    going to be any hope that similar settlement negotiations in

3    future cases can bear the kind of fruit that they have here.

4            The second point I wanted to raise, Your Honor, is

5    that the issue of what discovery may be appropriate on a

6    Motion to Approve a Settlement is actually not without

7    precedent in these cases.  As the Court will recall, the

8    Monitor actually sought extensive discovery in 2014 in

9    connection with the 9019 Motion filed by the Debtors to

10   approve the settlement of the PPI dispute and the allowance

11   of the Bondholder's Pre-Petition claims.

12           THE COURT:  Yes.

13           MR. BASSETT:  Now, it's not surprising to me that

14   the TCC does not remember these issues because presumably

15   now, regrettably, it had elected to sit on the sidelines for

16   that entire process.  But what happened, as the Court will

17   recall, is that at a hearing on a dispute over the extensive

18   discovery sought by the Monitor, the Court declined to order

19   discovery even though in that situation, unlike here, the

20   Monitor had alleged a lack of good faith and a lack of

21   [indiscernible] minded dealings between the parties to the

22   settlement.  Instead, what the Court said is that the U.S.

23   Debtors should just produce whatever evidence it deemed

24   necessary to support the settlement.  And when those

25   materials were produced, notably, they did not include any

1    settlement communications or any common interest

2    communications and, in fact, on the top of its settlement

3    communications, the Court actually told the parties at a

4    hearing on August 8, 2014 that it thought that the disclosure

5    of settlement communications which were sought by the

6    Monitor's discovery requests, including drafts of any

7    Settlement Agreements, would not be appropriate and that was

8    even though, critically for the instant dispute, that was

9    even though there was no active mediation pending at that

10   time.  In fact, there was no mediation at all surrounding

11   specifically the issue of the post-Petition interest that was

12   being discussed at that time.

13             And in a similar vein, the Court also made clear

14   at an earlier hearing on June 27th, 2014 with respect to

15   certain statements that a party had made in a chambers

16   conference about settlement negotiations that the disclosure

17   of information from such negotiations was "a breach of the

18   confidentiality of settlement discussions" and again, no

19   mediation pending at that time.  So we think really, Your

20   Honor, it has already been decided in these cases what kind

21   of discovery is appropriate and that does not include the

22   discovery sought by the TCC here, including discovery that

23   would invade the privileges of mediation and settlement

24   discussions as well as common interest communications amongst

25   similarly situated parties.

1          And finally, Your Honor, the last point I will

2    make is in response to a point made by Mr. Stoll where he

3    seemed to suggest that there may be some discovery here

4    that's appropriate outside of the realm of common interest

5    because the Bondholders are in a unique position in that they

6    have claims against both the U.S. and Canada and I think what

7    you suggested, although it's not entirely clear is that there

8    may therefore be discussions at arm's length between the U.S.

9    Debtors and the Bondholders about our claims that would not

10   be covered by common interest and on that point, and again,

11   this relates to -- looks forward a little bit to the Motion

12   for Reconsideration that they filed, but Bondholder's claims

13   against the U.S. Estate were fully and finally allowed in

14   2014 in the Order that the Court had entered.  So it was not

15   an issue that was on the table as part of the most recent

16   negotiations for the SPSA or the Plan and, therefore, it

17   seems to me, if I'm interpreting Mr. Stoll's comments

18   correctly, that what he's seeking for -- what he's seeking

19   just doesn't even exist.  So with that, Your Honor, I just

20   want to say that the Bondholder Group, again, fully supports

21   the remarks of Mr. Rosenthal and the position of the U.S.

22   Debtors and unless the Court has any questions, that's all I

23   wanted to say.  Thank you.

24          THE COURT:  Well, your argument goes to the fact

25   that settlement discussions themselves are confidential

1  doesn't it?

2        MR. BASSETT:  It does, Your Honor.

3        THE COURT:  In part.  In part, that's your

4  argument?

5        MR. BASSETT:  It does, Your Honor.  I believe it

6  is heightened when the Court has ordered a mediation like it

7  has in this case and where the parties have been working

8  diligently both during and at mediation sessions and in

9  between those sessions to try to reach a settlement.  And I

10  think again that if the Court is willing to try to finally

11  parse when a mediation session is active and when it's not

12  and what communications relate to that mediation and which

13  ones don't, I think it's an extremely dangerous and an

14  extremely slippery slope because in order to -- and I think

15  this case is the perfect testament to how successful parties

16  can be in even the most contentious case and we are able to

17  freely and openly engage in negotiations and share all ideas

18  and positions without fear of having somebody come in after

19  the fact and use those same statements against us.  So I just

20  think that it doesn't make any sense to say that, you know,

21  certain information is not subject to disclosure because it

22  occurred technically during mediation session while other

23  information is because maybe it occurred at the, you know,

24  wrong date on some calendar.  I just -- I think Your Honor is

25  right.  It's not just about a mediation being technically

1  active.  It's about settlement discussions and protecting the

2  sanctity of those discussions.

3          MR. ROSENTHAL:  Your Honor, it's Jeff Rosenthal.

4  There's just one thing I had neglected to mention during my

5  remarks but I'm reminded by something that Mr. Bassett just

6  said.

7          THE COURT:  Yes.

8          MR. ROSENTHAL:  One thing that's important, and

9  you can see it because the Disclosure Statement is before the

10 Court and the settlement is this is pari-passu Plan, by in

11 large.  So the notion that they want to engage in some

12 discovery to see what various deal -- how somehow we came up

13 with this convoluted structure to specifically prejudice the

14 NTCC's constituents, look at the Plan.  It's the Unsecured

15 Creditors, the Bondholders.  They get pari-passu.  So they're

16 looking for something that's not there and they want to go

17 invade the mediation privilege and invade the common interest

18 privilege to see if well, maybe there's really something

19 there but the Plan's the Plan.  They can object to the Plan.

20 They can object to the 9019 settlement.  But the idea is that

21 they need discovery to find out what backroom deals were done

22 to get to a pari-passu Plan is kind of absurd.

23          THE COURT:  All right.  Thank you, Mr. Rosenthal.

24 Anyone else opposing discovery, if you will?

25          MR. JOHNSON:  Your Honor?

1          THE COURT:  Yes?

2          MR. JOHNSON:  Your Honor, this is Robert Johnson,

3    from Akin Gump, on behalf of the Official Committee of

4    Unsecured Creditors.

5          THE COURT:  Hello, Mr. Johnson.

6          MR. JOHNSON:  Thank you for hearing us today.  And

7    I want to state that the Committee joins in the comments of

8    Mr. Rosenthal and Mr. Bassett.  We think that the mediation

9    privilege is broad and here it did incorporate the entire

10   mediation process.  And I think it's important also to note

11   that the Recommendation Order that was issued by Magistrate

12   Judge Thynge on September 25th, 2015 was approving a set of

13   conditions to mediation that had been approved by Counsel and

14   that included Counsel for the Trade Claims Consortium.  So we

15   believe that that condition in Condition #6, the

16   confidentiality, is broad and the TCC has already agreed to

17   it.

18          The other points regarding the scope of the

19   mediation privilege I believe have already been adequately

20   argued.  There is a sentence that's in our letter that we

21   were really responsible for and it's the sentence that Mr.

22   Pohl pointed out and it says that the two points, the

23   mediation and the Plan, are inextricably intertwined and

24   equally immune from discovery.  The key economic terms

25   embodied in the Plan flow directly from and were achieved in

1  tandem with the settlement of the allocation dispute.  And

2  that's an absolutely correct statement of the situation, Your

3  Honor.  The Plan is very much an embodiment of the Settlement

4  Plans and Support Agreement, the SPSA, and the economic terms

5  all do flow from that SPSA and the SPSA's approval, pursuant

6  to 9019 is a key aspect of this Plan.  And when you go to the

7  distinction that the Trade Claims Consortium tries to draw

8  out between itself or its members and the Bondholders, we do

9  have to underscore that they are unsecured creditors and the

10  Committee is looking out for the recoveries of unsecured

11  creditors as a whole and we have to look at all Unsecured

12  Creditors.  But we can't escape the fact that the Unsecured

13  Creditors who were not Bondholders need to be paid pari-passu

14  with Unsecured Creditors who are Bondholders.  We were

15  acutely aware and were made acutely aware that those

16  Bondholders also have a claim in the Canadian Estates which

17  is why at the time of reconsideration we argued that Your

18  Honor's allocation Decision would have a very, very punitive

19  impact on Unsecured Creditors, general Unsecured Creditors

20  but we have never taken the position that they could be

21  treated in any way differently.  And if we look at the Plan

22  at Section 4.3 and 4.4, it deals with Class 3(a), which is

23  general unsecured claims, and Class 3(b) which is cross-over

24  bond claims and they have identical treatment.  They are to

25  receive its pro-rata share of creditor proceeds.  So, Your

1   Honor, we see the whole Plan process as completely

2   intertwined with the mediation process.

3               THE COURT:  All right.

4               MR. JOHNSON:  Thank you.

5               THE COURT:  Thank you, Mr. Johnson.  All right.

6   How about Mr. Pohl or Mr. Stoll?

7               MR. ADLER:  Your Honor, can you hear me?  It's

8   Derek Adler, at Hughes Hubbard.

9               THE COURT:  Oh, yes, Mr. Adler.  Good afternoon.

10              MR. ADLER:  Hi.  Yeah, here for the EMEA Debtors

11  as you know.  Mostly, we're a stranger to this dispute.  I

12  don't have anything to say about most of what's been said

13  today.  But we had one objection to all the subpoenas that

14  had been served by the TTCC which is that, arguably, they

15  would require the production of materials that might be in

16  the possession of the U.S. Debtors, the Committee, and so on

17  that were provided by the EMEA Debtors, information and

18  documents provided by the EMEA Debtors in the course of the

19  mediations.  And based on the correspondence I've seen, I

20  infer that the TCC is not intending those such materials to

21  be in the scope of what they're seeking.  But I would

22  appreciate a confirmation either from Your Honor or from Mr.

23  Pohl that if this doesn't become moot based on Your Honor's

24  rulings today that materials and information provided by the

25  EMEA Debtors during the course of the various mediations are

1  not within the scope of the subpoenas that they've served.  I

2  think that's clear but I'd like that confirmed on the record

3  today if I could.

4            THE COURT:  All right.  Anyone willing to confirm

5  that fact?

6            MR. POHL:  Your Honor, this is Steven Pohl.  Maybe

7  I'm the last one to speak unless there's anybody else

8  speaking out against discovery.

9            THE COURT:  Is there anyone else speaking out

10  against discovery?

11  (No audible response.)

12            THE COURT:  All right.  You -- it is you, Mr.

13  Pohl.

14            MR. POHL:  Okay.  So to complete this, Your Honor,

15  and both to respond to Mr. Adler and to respond to your

16  questions, basically, I have three points.  First, Your

17  Honor, in the recommendation from Judge Thynge, at footnote 2

18  on page 3 of the Order, which is really the beginning of the

19  Order because the first two pages are captions, it indicates;

20  I'm just going to read from footnote 2:  The dispute of these

21  proceedings focuses on the allocation of 7.3 billion of

22  proceeds from the joint asset sales from the Nortel Debtors

23  and was the subject of a six-week trial in the summer of

24  2014.  And that's what the trial was about and that's what

25  we're saying here.  It was about how to split up the pot

1  among the jurisdictions and then it was to leave to those

2  three principal jurisdictions how to do their own Plans in

3  their own jurisdictions.  It wasn't aimed at solving the Plan

4  in that jurisdiction, which is now the thread that is laid

5  out in the letter and that the Committee just took credit for

6  putting in the letter.  And so what we're asking for, Your

7  Honor, to answer your question specifically, and this is laid

8  out in the more narrow scope of documents that we ask for is

9  we'd like to have discovery on discussions, you know, emails,

10 whatever it is, and related analysis, you know, and that's

11 generally going to be some sort of waterfall analysis, maybe

12 it's a term sheet, as to how the share of the global pot

13 should be allocated among creditors.  It's not as simple as,

14 you know, it's all pari-passu.  You know, that is what the

15 Plan says at NNI.  You know, there's an allocation of money

16 that went to Nortel Network CALA.  There was an allocation of

17 money that was baked into the settlement to go to the NTCC

18 Bonds based upon a negotiation.  And also as Counsel from the

19 UCC noted, there was a particular, quote/unquote, you know,

20 disproportion harm visited upon the non-Bond creditors under

21 the allocation Decision and we're looking to see whether

22 there were discussions surrounding that that, you know, would

23 have merited some different negotiated treatment for

24 unsecured creditors that are not Bondholders or some

25 different negotiated settlement or discussion regarding

1  whether the allowance claim of the bonds from the PPI 9019

2  that we're challenging is something that, you know, was

3  considered by our Debtor.  So, you know, that's the gravamen

4  of what we're looking for, Your Honor, and without discovery,

5  you know, makes it a much more difficult challenge to do

6  anything in these cases.  That's all I have to say.

7        THE COURT:  What do you have to say in response to

8  Mr. Adler's request for confirmation?

9        MR. POHL:  I apologize.  Yeah.  No, we are not

10  looking for, you know, bid sheets, if you will, put in by

11  the, you know, EMEA and Canadian side as to, you know, how

12  they want to see the global pot split up and, you know, if

13  any of their Plans said -- any of their term sheets said, you

14  know, how the U.S. should be split up, I see that as

15  irrelevant and I don't really care about it.  So I'm not

16  looking for their submissions, if you will, on their side,

17  you know, on bids from them.  So that's hopefully the

18  confirmation that Mr. Adler is looking for.

19        MR. ROSENTHAL:  Your Honor, Jeff Rosenthal, can I

20  respond real briefly to the points that Mr. Pohl just made?

21        THE COURT:  Yes, you may.

22        MR. ROSENTHAL:  So Mr. Pohl quoted from footnote 2

23  to Judge Thynge's Order defining the dispute, the allocation

24  of the $7.3 billion of proceeds and the SPSA and the Plan are

25  the embodiment of the settlement of that dispute.  They are

1    one in the same.  That is the document that comes out of this

2    mediation settling what Judge Thynge has defined that as.

3    Now, Mr. Pohl has said well, he wants to know whether

4    discussions around the settlement that would have merited a

5    different negotiated position.  I mean I don't think I could

6    have made a better argument than he just made as to why

7    that's covered by a mediation privilege.  Discussions around

8    it that would have altered parties' negotiating positions,

9    that's the mediation.  And, you know, with regard to his

10   complaint, he was in the room where it happened.  NTCC was at

11   the table.  They -- he knows what discussions there were and

12   what positions were put forth and, in fact, NTCC put those

13   positions forth that would have had different kinds of

14   treatments and it didn't happen and if he wants to persuade

15   the Court when he files his Objection to the Plan or the 9019

16   settlement that the Court should reject it for whatever

17   reason, they're welcome to do it.  But to get into this

18   discovery to try to fish to see if there's something within

19   the confines of the mediation is just completely

20   inappropriate.  And I guess I'll just leave with the final

21   point of it's largely a part to the Plan.  You know, we got

22   the number, $1.76 billion or some coming to the U.S. Debtors

23   and it's largely being divided up pari-passu among all the

24   creditors.  And I guess what he's saying is, were there

25   opportunities in the context of the mediation that we could

1  have negotiated something different for our Plan to be not

2  pari-passu, and there's just -- there's no basis to go

3  fishing to look to see if that happened.

4           THE COURT:  Okay.  All right.  Anyone else?  Mr.

5  Adler, did you have your question answered to your

6  satisfaction?

7           MR. ADLER:  Yes, Your Honor.  I heard Mr. Pohl to

8  confirm that he's not seeking any documents or information

9  that were provided by the EMEA Debtors in the context of the

10  mediation and that's fine for me.

11           THE COURT:  Okay.  Very well.  Well, I have to

12  decide this now and, you know, I really -- I didn't have a

13  lot of time to read and consider the parties' submissions but

14  I can tell you that I read them carefully and my ruling is

15  going to be the result of that reading and my careful regard

16  for the submissions and here's what I find.  First of all,

17  the requested documents are clearly covered and excluded by

18  the District Court's Mediation Order which provides, in part,

19  that all submissions, communications, and negotiations made

20  in connection with the mediation shall be made on a without

21  prejudice basis and subject to Rule 408 of the Federal Rules

22  of Evidence, shall be strictly confidential, and shall not be

23  disclosed out of the mediation process.  And the key words to

24  me are in connection with the mediation and the mediation

25  process because that's really what the parties have discussed

1 and that is what the Trade Commission is seeking discovery of

2 and that information was explicitly precluded by the

3 Mediation Order.  You know, Judge Carey of this Court ruled

4 on a similar situation presented in In Re: Tribune Company,

5 2011 Westlaw 386827 in 2011, and he applied the mediation

6 privilege and as Judge Carey noted, allowing discovery would

7 be contrary to what a mediation is all about.  The open,

8 honest, and confidential communications by and among parties

9 without fear that those discussions or sharing of information

10 will later have to be produced in discovery and, here, to

11 allow the discovery would violate the District Court Order

12 prohibiting disclosure outside of the mediation process.  And

13 again, I emphasize that the District Court used the words in

14 connection with the mediation and the mediation process which

15 certainly encompasses more than the actual time spent in

16 mediation with the mediator.  It encompasses parties

17 discussing settlement among themselves.  And I also have to

18 cite my ruling in the Los Angeles Dodgers case in which I

19 upheld the confidentiality and the sanctity of mediation.

20          Furthermore, in the Third Circuit, there is

21 recognition of the common interest privilege in which parties

22 who share a substantially similar legal interest, and I

23 emphasize the words substantially similar, can communicate

24 their positions on a privileged basis.  That's from the In

25 Re: Teleglobe Communications case, 493 F.3rd 345, a Decision

1    of the Third Circuit in 2007.  I am satisfied that the

2    Debtors, the Creditors Committee, and the Bondholders did

3    share a substantially similar legal interest and were engaged

4    in formulating a joint legal strategy.

5         So accordingly, the Court finds that the requested

6    documents are protected from production by the common

7    interest privilege and/or the mediation privilege, or if not

8    privileged, the confidential nature of the settlement

9    negotiations.  And that's the Court's ruling.  I am, in

10   essence, denying the Motion to Compel and granting the Motion

11   for a Protective Order and that's the ruling on the NTCC.

12        MR. ROSENTHAL:  Thank you, Your Honor.  Ms.

13   Schweitzer has one thing that she would like to suggest to

14   the Court.

15        THE COURT:  Yes, Ms. Schweitzer.

16        MR. STOLL:  Before you do that; I don't mean to

17   interrupt.  This is Jim Stoll, Your Honor. I'm going to drop

18   off; just because like I'm -- I took a break from my

19   deposition, so I can get back to that.

20        THE COURT:  You bet, Mr. Stoll.  Thank you for

21   your participation.

22        MR. STOLL:  Thank you, Your Honor.

23        MS. SCHWEITZER:  Your Honor, Lisa Schweitzer.

24   Good morning still or I guess good afternoon.  While everyone

25   else is on the line, I know we have the next matter of

1  parades today is the disputes regarding the PBGC claims

2  discovery process.  But I think we're ready -- what you're

3  seeing is the parade of Objections and a taste of what's

4  coming in the next month for us.  We all know that NTCC and

5  PBGC intend to oppose the Plan, the confirmation process.  We

6  have the NTCC Motion to Reconsider the Bondholder's

7  Settlement next week on the 20th and then we start, you know,

8  in earnest I guess already have started in earnest in working

9  towards Plan confirmation, or in their case, working against

10  Plan confirmation.  And I think the Debtors, as you know,

11  believe that the Plan and the settlements are all in the best

12  interests of ourselves and our creditors and we're really

13  focused on bringing the cases to conclusion but we also

14  recognize we're at a point where time is not on anyone's side

15  and the people on the phone are generally in these cases, the

16  Plan Objections will be due on the 9th and then we'll go right

17  into the PBGC claims trial and it sounds like a contested

18  hearing on the 24th and if that's the path we're going on that

19  it's unfortunate that that will be the path we're on.  But I

20  think the Debtors reflecting its point also realize that

21  there have been a lot of mediations, many of them successful,

22  some of them not.  The PBGC and NPCC have both been parties

23  to settlement discussions or mediations in different

24  permutations in the past, and obviously those haven't worked.

25  But right now we're at a point where no one has, you know, an

1  excuse to blink or to stop or to pause and reflect and the

2  Debtors are concerned that everyone get that opportunity and

3  think before putting this entire Plan at risk and kind of

4  playing this dangerous game out in conclusion.  And we took

5  note of the calendar in that we are -- many of the parties in

6  front of Your Honor next Tuesday, the 20th, for the NCC Fee

7  Reconsideration Motion.

8            THE COURT:  Yes.

9            MS. SCHWEITZER:  And we thought that that actually

10  presents itself as one last opportunity maybe before the year

11  end and before we are in active and relentless litigation in

12  January where it could be possible to have a mediation

13  between these objecting parties, NTCC, the PBGC, the Debtors;

14  I think it would be helpful for the Bondholders to be there

15  given the nature of the Objections being lodged, and

16  certainly not suggesting that anyone has money in their

17  pocket but that we all be forced to sit in a room for a day

18  and to see if any peace can be reached or -- with any of the

19  parties, all the parties, anything we can do to narrow the

20  disputes.  But we also recognize no one's going to do it on

21  their own and so we were -- want to bait this before the

22  Court to see if the Court would be amenable to ordering a

23  mediation between these parties on the 20th to follow the 9:00

24  hearing since most or all of us will be there anyway and that

25  we all give it one more go and we all -- it gives us all an

1  opportunity to give hard thought to taking the choice between

2  settlement and what the next month looks like otherwise.  And

3  so we hadn't discussed this with other parties yet before but

4  we -- given the nature of what you're hearing and you've

5  already heard today, in the expectation that we will be in

6  front of you after the settlement over and over again with

7  these types of issues in the next month, we just want to not

8  sit on the idea.  We've checked with Judge Farnan.  He's

9  available in Delaware on the 20th, which is another reason to

10  select a date.  So we wanted to put it out there and I

11  apologize to disrupt the hearing but just while we were on

12  the call, I wanted to put it on before people dropped off.

13          THE COURT:  Well, I've given this some thought

14  because we have a mediator in place who's very familiar with

15  the facts and we have two parties who are at least objecting

16  to the Plan and the settlement and let me hear from them on

17  going forward to mediate.

18          MS. CONNELLY:  Your Honor, this is Paula Connelly,

19  for PBGC.

20          THE COURT:  Yes, Ms. Connelly.

21          MS. CONNELLY:  We are very much in favor of that

22  idea but we are also very concerned about the very compacted

23  schedule that is currently in place under which PBGC needs to

24  complete its voluminous document production by the 21st and

25  expert reports by the 28th and a trial beginning on the 9th.

1  So while we are very much in favor of that idea, we would ask

2  that the Court consider extending those dates so that the

3  very same people who are involved in mediation can't at the

4  same time be working as we are around the clock on the

5  discovery.

6              THE COURT:  All right.  Ms. Schweitzer, what do

7  you say to that?  I take it you would oppose that?

8              MS. SCHWEITZER:  I think we would oppose that.  As

9  Mr. Bromley is sitting next to me reaching for the phone as

10  well who is closer to the date.  I personally don't think

11  that -- I think it would be important for a person with

12  authority to settle come from each of the parties.  I would

13  be surprised given where we're at and what people know about

14  these issues that a one -- attending a one-day mediation will

15  need to re-set a whole bunch of dates.  But if Mr. Bromley

16  wants to add, he certainly can.

17              THE COURT:  Mr. Bromley?

18              MR. BROMLEY:  Hi, Your Honor.  How are you?

19              THE COURT:  I am well.  How are you, Mr. Bromley?

20  I'm looking forward to the next six weeks.

21              MR. BROMLEY:  You know, so am I, Your Honor, and,

22  you know, it really pains me that Ms. Connelly is somehow not

23  looking forward to it the same way that I am.

24              THE COURT:  Right.  Well --

25              MR. BROMLEY:  But that being --

1            THE COURT:  -- you've cleared your vacation

2    schedule so you're more relaxed.

3            MR. BROMLEY:  Yes, that's one way to put it, Your

4    Honor.  Look, I -- the fact is what we're talking about here,

5    Your Honor, is a one-day mediation on the 20th.  You know, but

6    we don't want to be unreasonable.  If the PBGC -- well, the

7    key issue here, Your Honor, is that we do not move the merits

8    hearing beyond the 24th.  If the Court was willing to move

9    everything back by say two days; we move the 21st to the 23rd

10   and the 28th to the 30th, and then I just have -- or whatever,

11   we move it a couple of days, I think we're okay with that.

12   If Ms. Connelly's suggestion is that we somehow move it into

13   February after the confirmation hearing, I think that is not

14   something that we'd be willing to consent to.

15           THE COURT:  Well, I'm not willing to change the

16   whole schedule around for what really I would hope would be a

17   successful mediation but what I'm going to propose is go

18   forward with mediation next week and then we'll see where you

19   are after that.

20           MS. SCHWEITZER:  We haven't heard from Mr. Pohl.

21   I assume that he would be equally amenable to attending as

22   would be the Bondholders.  I don't mean to speak for people

23   on the phone but I think they -- it would be important to

24   have folks comes with decision-makers and authority and --

25   but we're obviously -- if only some people are willing to

1   come, we're happy to meet with them as well.

2                THE COURT:  Mr. Pohl, are you on the phone?

3                MR. POHL:  Yes, Your Honor.  I think as the

4   Debtors know and as the Bondholders know, we've been asking

5   for this for a while and since we didn't get a response we've

6   been quiet for the last couple weeks.  We will -- I will of

7   course be there and I will, if the Court orders it, I will

8   certainly immediately contact our clients that have in the

9   past been at mediation and that are subject to County

10  restrictions about it and hope to be able to make their

11  schedules so that they can be there as well.

12               THE COURT:  All right.  Well, I'm --

13               MR. BOTTER:  Your Honor?

14               THE COURT:  Yes?

15               MR. BOTTER:  David Botter, on behalf of the

16  Committee.  Those dates obviously work with the Committee as

17  well and we'll be there.

18               THE COURT:  All right.

19               MR. BASSETT:  Your Honor, Nick Bassett again, from

20  Milbank, on behalf of the Bondholder.  I would not personally

21  be the one who would be attending that mediation session.  I

22  assume that somebody from Milbank would be able to attend but

23  I would just need to check with my colleagues to make sure

24  that works.

25               THE COURT:  All right.  Well, I am going to order

1  that mediation take place next week if Judge Farnan is

2  available.  Certainly, the parties will be here in Delaware,

3  at least the NTCC, the Debtors, the Bondholders, the

4  Creditors Committee.  I don't know if the PBGC was planning

5  to attend but I think it makes a lot of sense to try one more

6  time to reach a resolution here and I know that the stakes

7  are very, very significant and the parties' time and effort

8  is also substantial and so I will order that mediation take

9  place and I will -- does someone want to propose an Order or

10  do you want me to just draft one myself?

11            MS. SCHWEITZER:  We're happy to submit one, Your

12  Honor.  We'll work with Morris Nichols to do that.

13            THE COURT:  Okay.  That's fine.

14            MS. CONNELLY:  Your Honor, Paula Connelly again.

15  We would like to take Mr. Bromley up on the offer of

16  extending the date for the document production to the 23rd.

17  That would help us a lot.

18            THE COURT:  Mr. Bromley, that's getting awfully

19  close to the holiday.

20            MR. BROMLEY:  Yes.  Well, Your Honor, I think the

21  best idea is yours, which is we'll just wait and see how

22  things go.

23            THE COURT:  That's what I think.  Let's see how

24  things go next week.  You can report back to me and then at

25  that point I will consider extending the date.  All right?

1    So I will enter the Order and I think that's a good idea that

2    we do that.

3            Now, we now have the PBGC issue and I think I

4    ought to hear, unless you want to wait on this until after

5    the mediation, but I think I ought to hear from the Debtors

6    on this.

7            MR. BROMLEY:  Thank you, Your Honor.  Yeah, we

8    would not like to wait on this.  So, Your Honor, we obviously

9    are in the middle of a very aggressive discovery schedule

10   here and it's an aggressive document production program, as

11   Your Honor is well aware, and this is not easy for anyone and

12   I think efforts are being made to produce documents on both

13   sides.  So there -- Your Honor, when we last spoke with you

14   last week, we had talked about the responses from the parties

15   being due at the end of last week and that this date has been

16   scheduled as a holding date in the event that there were any

17   concerns that were being raised by either party about the

18   responses and objections that the parties would submit.  As

19   Your Honor I hope has seen, we have submitted a letter this

20   morning indicating that the Debtors do have a concern, and

21   it's an important concern, Your Honor.  It is a concern

22   related to the assertion by the PBGC of what is known as the

23   deliberative process privilege and it has been asserted by

24   the PBGC over a number of the document requests that we had

25   made, as well as with respect to a number of interrogatories

1   and we have a problem.  The problem, Your Honor, is that the

2   crux of this dispute has to do with the PBGC's adoption of an

3   annuity based discount rate for the calculation of its

4   claims.  That decision to adopt the annuity rate as the

5   discount rate is the single most important factor in the

6   dispute that the parties have.  Now, the PBGC has resisted

7   mightily any inquiry into the process by which the PBC has

8   decided to use the annuity rate as the discount rate and it

9   is asserting in connection with the documents that we've

10  request the deliberative process privilege.  And the

11  deliberative process privilege is a different privilege than

12  the work product or attorney/client privilege.  It is a

13  privilege that, to the extent it exists, and I should note

14  it's narrowly construed; the Third Circuit has made it very

15  clear the deliberative process privilege, to the extent it

16  exists, is narrowly construed.  It is different from the

17  attorney/client privilege and it is different from the work

18  product privilege.

19          The idea is that government entities when they are

20  creating certain rulemaking and the like should be entitled

21  to a privilege with respect to their internal deliberations.

22  Now, there are a couple of restrictions there.  The first,

23  which the PBGC acknowledged yesterday, is that with respect

24  to any rulemaking that took place over 25 years ago where

25  indeed any determinations that took place over 25 years ago,

1   the deliberative process privilege simply does not apply.

2   That is a mentor of statutory law when the Freedom of

3   Information Act was amended earlier this year and there was a

4   blanket rejection of the deliberative process privilege for

5   anything that is over 25 years old and the PBGC acknowledged

6   that to us in an email yesterday evening.  So we are grateful

7   for that acknowledgement.  But it doesn't solve the problem,

8   Your Honor, because the situation that we have here is that

9   the PBGC over a series of years starting in 1975, the year

10  after ERISA was adopted, had made public statements with

11  respect to the way it would determine its discount rate.

12  Starting in 1974, the PBGC published in the Federal Record

13  statement that indicated that the interest rate that they

14  should use to calculate their claims should be based on the

15  cost that the PBGC normally should incur as of the date of

16  termination in providing the benefit, assuming reasonable

17  investment return assumptions reflecting current and longer

18  term investment opportunities.  That is the original

19  statement of intent.  That is the original statement in the

20  Federal Register of the PBGC of how they should determine

21  making claims in bankruptcy cases.  They have to look at the

22  costs that they would have to incur.  That statement was made

23  in 1975.  It was repeated verbatim in 1993, 18 years later.

24  That is not what -- that statement, Your Honor, as made both

25  in '75 and '93, are critical to this analysis because the

1  PBGC does not use the discount rate that is based on its

2  cost.  It uses the discount rate that's based on this

3  fictional annuity rate that it is able to cobble together by

4  asking certain insurance companies what they might charge for

5  annuities that the PBGC never buys.

6            When we're sitting -- and while we're sitting

7  here, Your Honor, trying to look at the issue that Your Honor

8  needs to take a look at during the contested hearing in

9  January, it really boils down to why is the PBGC using the

10  annuity rate when its stated intention from 1975 and '93 is

11  that they should be using a rate that would allow us to

12  approximate the cost of billing a whole.  And that makes

13  sense, Your Honor, because what we're talking about here is

14  effectively a damage claim.  It's no different than any other

15  damage claim that the Court needs to deal with on a daily

16  basis in reconciling claims in any number of bankruptcies.

17  So the document requests that we've made and the

18  Interrogatories that we have requested asked the PBGC to tell

19  us how they have come to make the determination that the

20  annuity rate somehow approximates the cost that the PBGC will

21  incur in providing the benefits that have been promised.  And

22  the response has been that the materials are protected by the

23  deliberative process privilege.  And so the Debtor's view,

24  Your Honor, is that that simply cannot be the case because if

25  the deliberative process privilege prevents information

1   relating to that question from being produced, then simply we

2   will not have any information produced.  The PBGC will simply

3   say it's part of our deliberative process and we can't

4   provide it.

5           So the Redland [ph] case, Your Honor, in the Third

6   Circuit from 1995 makes it very clear that this privilege is

7   to be narrowly construed and that the government bears the

8   burden of showing that it applies its qualified privilege and

9   it's subject to a number of common sense limitations.  So

10  when we -- when you have to look at this, you have to take

11  into account also the balance of the interests.  It's not

12  just the interests of the government but it's the interests

13  of the parties seeking the information.  And Redland had said

14  that there are four things that the Court may -- should take

15  into account.  The first is the relevance of the evidence

16  sought to be protected.  Clearly, the evidence that we're

17  looking for here is exactly the issue.  The PBGC protected,

18  has been making claims that are completely unrelated to the

19  costs of providing the benefits.  They have made

20  determinations as a policy matter that that's the discount

21  rate that they're going to use, the annuity rate, and they're

22  not going to use the prudent investor rate, notwithstanding

23  the fact that that's how they invest their assets.  This is

24  the question, and whether or not the rates that the PBGC uses

25  to calculate their claims and the interpretation that they

1  made of the regulation is arbitrary and capricious, both

2  inside of bankruptcy and outside of bankruptcy.  So it goes

3  directly to that issue.

4        The question -- the other issues that Redland says

5  the Court should take into account is the availability of

6  other evidence.  Well, certainly, there's circumstantial

7  evidence that we intend to present and have already

8  presented, in part, which is that the interest rate that the

9  PBGC generates on its assets is completely different from the

10  annuity rate, number one.

11       Number two is the annuities that the PBGC are

12  getting close for are never purchased by the PBGC.

13       The third issue, Your Honor, Redland says is the

14  seriousness of the litigation and the issues involved.  As

15  Your Honor knows, PBGC's claims here are for $708 million.

16  It's interesting that on this call with Mr. Pohl, because

17  this is a dollar-for-dollar benefit to Mr. Pohl's client, and

18  I will say you're welcome, Steve, for us pressing this claim

19  on your behalf, but any money that we are able to take away

20  from the PBGC as a result of this claims objection goes

21  directly to Mr. Pohl's client.  So there is no question

22  whatsoever that this is a serious issue, particularly in the

23  context of this case.

24       The third couple of -- the fourth, I'm sorry, is

25  the role of government in the litigation.  Clearly, there's

1    no one else to litigation with, unfortunately, but the

2    government and so we're here.

3           And the final one is the question of whether or

4    not there's any possibility of future timidity by government

5    employees, who will be forced to recognize that their secrets

6    are voidable, or violable, I'm sorry.  And in this, Your

7    Honor, the issue is very interesting.  The -- ERISA was

8    adopted in 1974.  The PBGC's first pronunciation about the

9    standard by which it should be calculating its claims was in

10   1975.  For 40 odd years now, 42 years almost, the PBGC has

11   been asserting claims that are completely unrelated to the

12   amount of damages that they suffer.  The decisions that have

13   been made have been made decades ago.  So the idea that the

14   government somehow should be able to protect by a blanket

15   assertion of the deliberative process that none of the

16   determinations that they have made with respect to this issue

17   should be disclosed is simply a strange credulity.

18           It's also important, Your Honor, to note that the

19   PBGC has done something else, and just two years ago.  They

20   have published on their website something that has no title

21   so we've given it one which is the light paper.  It's a 2013

22   several page document which attempts to argue some 20 years

23   after the 1993 Federal Register pronunciation about cost that

24   somehow the PBGC has always been looking at annuity rate and

25   therefore that's always the way it should be calculated.

1  It's an ex-post justification for what has been 40 years of

2  misinterpretation of its regulations.  That document itself

3  seems to have no particular providence.  It seems to have

4  simply appeared on the website and we, Your Honor, said that

5  we should be able to find out who wrote it.  We should see

6  drafts of it.  We should understand how it came to be put on

7  the website.  It has nothing to do with litigation.  It's

8  been voluntarily put out there by the PBGC clearly to argue

9  against the position that the Debtors are taking here and

10 there should be no deliberative process privilege that covers

11 specifically that one document which is clearly a public

12 pronunciation by the PBGC to defend its practices.

13          Your Honor, that's our argument on the

14 deliberative process privilege.  We're happy to answer any

15 questions and certainly to the PBGC.

16          THE COURT:  You know, Mr. Bromley, I'm going to

17 first hear from the PBGC.  I did not get a letter from the

18 PBGC, which I understand it was a very tight timeframe, but

19 is the PBGC prepared to argue its position?

20          MS. CONNELLY:  Yes, Your Honor, and we apologize

21 for not submitting a letter.  We didn't understand that there

22 were to be letters on this subject for this morning.

23          THE COURT:  That's okay.

24          MS. CONNELLY:  We're happy to address it.  Your

25 Honor, PBGC's view is that the Debtor's filing here is

1    improper and premature.  Contrary to all the things that Mr.

2    Bromley has said this morning, PBGC has not asserted the

3    deliberative process for a single document.  We have not

4    withheld a single document.  We have not asserted the

5    privilege one time.  The Debtors are simply manufacturing a

6    dispute where none exists and, in effect, they're seeking an

7    Advisory Opinion from the Court that would make a wholesale

8    waiver of the deliberative process privilege without the

9    benefit of seeing a single document that the parties might or

10   might not have a dispute about.  Your Honor, the production

11   deadline is next Wednesday, a week from tomorrow.  So it's

12   really inappropriate and unnecessary to address this now.

13   Just like the Debtors did in their responses, PBGC committed

14   to search for and produce non-privileged documents.  The

15   Debtors asserted general and specific privilege objections,

16   just like PBGC did.  We conferred with the Debtors yesterday

17   and today, explained that we have not asserted privilege at

18   all yet, and as Mr. Bromley indicated, that we won't be

19   asserting it for documents older than 25 years.

20             Your Honor, PBGC understands that the deliberative

21   process privilege is narrow and must be assessed document-by-

22   document.  PBGC has an established process that it goes

23   through before asserting this privilege in every case and it

24   rises to the highest level of the agency.  Before we assert

25   deliberative process privilege, the General Counsel reviews

1  the documents and certifies in a Declaration that their

2  production would injure the agency's candid deliberations.

3  No documents have been presented to our General Counsel yet.

4  Given the very compacted schedule here, the parties are

5  producing documents on a rolling basis.  PBGC has produced

6  more documents than the Debtors have.  We have recalled 37

7  boxes of documents from the U.S. Airways litigation, which

8  the Debtors wanted information about.  We have teams of

9  attorneys combing the agency for documents over a 40-year

10  period.  We are assembling thousands of pages of documents

11  that need to be reviewed for responsiveness.  There was

12  simply no need for the Debtors to come to the Court now and

13  mischaracterize PBGC as having asserted privilege when we

14  have certainly have not done so.  So we would urge the Court

15  to wait and assert that it's premature for the Court to

16  address this issue in a complete vacuum.  Thank you, Your

17  Honor.

18         THE COURT:  All right.  Thank you, Ms. Connelly.

19         MR. BROMLEY:  May I be heard, Your Honor?

20         THE COURT:  Yes, Mr. Bromley, you may.

21         MR. BROMLEY:  Ms. Connelly's repetition of the

22  phrase not a single document is a good one because we have

23  not received a single document from the PBGC to date that has

24  not been -- that is anything from their files.  The only

25  things we've received from the PBGC are materials that have

1  otherwise been publicly available.

2            Now, with respect to this prematurity argument,

3  Your Honor, at Your Honor's direct instruction, we have had

4  two meet-and-confers with the PBGC.  We have also received

5  the PBGC's responses to our document requests.  In each of

6  the meet-and-confers, the PBGC made it crystal clear that

7  they were intending to, and would, if served, for virtually

8  all of the materials that we're seeking, the deliberative

9  process privilege.  When we received their document

10  responses, they said the exact same thing.

11            Your Honor, you recognized the compressed

12  timeframe in which we're operating in and that's why this

13  hearing was scheduled by Your Honor to be held several days

14  after the exchange of the responses to the document request.

15  It was scheduled after those responses were to be delivered

16  and before production was to be completed.  So the idea this

17  is premature is really not -- it's not a credible argument,

18  Your Honor.  The PBGC has said to us over and over again that

19  they intend to assert the deliberative process privilege.

20  Only yesterday evening in an email did Ms. Connelly tell me

21  that from their technical point of view, the only time they

22  will formally assert that is after they've handed a specific

23  document to the General Counsel of the PBGC.  The idea that

24  this is premature is not accurate in the timeframe that we're

25  operating and given that the PBGC has repeated to us over and

1  over that they're going to assert the deliberative process

2  privilege it's important to tell the PBGC now before the 21st

3  exactly what they need to do when they're producing their

4  documents.

5         In addition, Your Honor, when you're taking a look

6  at the underlying issue here as to whether or not the

7  regulation is arbitration and capricious, the State Farm case

8  and the Supreme Court in the State Farm case specifically

9  said that Courts should look at whether the agency considered

10  all of the relevant factors and data in determining whether

11  or not the regulation is arbitrary and capricious.  The

12  public Federal Register publications the PBGC has provided to

13  us and the so-called administrative record that they've

14  produced in the U.S. Airways case is simply completely

15  lacking in any kind of analysis that the PBGC would have

16  done.  So this is not something that the PBGC has come upon

17  suddenly.  The PBGC has a few things that it has sworn to

18  protect, one of them the annuity interest rate.  The idea

19  that we have somehow snuck up on them and said boo; you've

20  got to do something that you never thought you'd ever have to

21  do, is simply ridiculous; that we need to have this

22  information.  We need to have it quickly and we need to have

23  it in advance of the finishing of the expert reports, which

24  are due to be filed on the 28th of December.  Simply, we can't

25  allow the PBGC, Your Honor, to hide behind the cloak of the

1 deliberative process privilege and prevent the Debtors from

2 having critical information that they need to prosecute this

3 claims Objection.  Thank you, Your Honor.

4                THE COURT:  Thank you, Mr. --

5                MS. CONNELLY:  Your Honor, may I respond?

6                THE COURT:  Oh, yes, Ms. Connelly, certainly.

7                MS. CONNELLY:  Thank you.  Your Honor, Mr. Bromley

8 has said over and over that PBGC has said over and over that

9 it intends to assert the deliberative process privilege.  I

10 was personally involved in each of these meet-and-confer

11 sessions.  We have never said any such thing, nor do we

12 intend to do any such thing.  We haven't even gathered all

13 the documents yet, although we're working very hard to do so,

14 and when we do that, that will be the time when we assess the

15 documents for the deliberative process privilege.  So we

16 certainly have never said over and over that we intend to

17 hide behind any privilege.  And we would just assert one more

18 time that the Courts, including the Redland Court in the

19 Third Circuit, has told Courts that the way you assess the

20 deliberative process privilege is looking at the document,

21 seeing whether there's a basis for the privilege, and then

22 balancing the factors that Mr. Bromley articulated.  You

23 can't do that in advance in an advisory way in a vacuum.

24                THE COURT:  Well, I have to say I'm -- I recognize

25 that we're operating on a very, very short timeframe here and

1  it places everyone at a disadvantage.  But I am concerned

2  with making a ruling in a matter where the privilege is not

3  being asserted at this time to sort of render an Advisory

4  Opinion, which I think it would be.  You know, I recognize

5  what a difficult situation this case is for everyone and this

6  particular -- in particular for the Debtors.

7           MR. BROMLEY:  Your Honor, can I just -- can I ask

8  a question?

9           THE COURT:  Yes, please.

10           MR. BROMLEY:  So here's one of the problems.  So

11  on the 21st then, if Ms. -- and, first of all, you know, I

12  have -- Ms. Connelly, I have the notes of the meeting so --

13  and I know what you said.  The -- on the 21st, in order for us

14  to do this, right, in the way that Ms. Connelly suggests,

15  what we need is every single document as to which they're

16  going to assert the privilege, the deliberative process

17  privilege, and the certification by the General Counsel

18  delivered to the Court on the 21st.  That's what needs to

19  happen.  Otherwise, we're not going to be able to do this.

20           MS. CONNELLY:  That's what we intend to do, Your

21  Honor.

22           THE COURT:  And then, if need be, we could have a

23  teleconference on the 22nd, is that right, if need be?

24           MR. BROMLEY:  I think we would need to be -- to

25  have Your Honor on the 22nd.  We would also obviously need a

1  log of all the documents so that we have the date of the

2  document, the author of the document, the subject matter, the

3  recipients, the entirety of the information, other than the

4  substance underlying it, the same sort of standard that you

5  [indiscernible] and have privileges upon.

6              THE COURT:  All right.  Well, I understand the

7  concern that Ms. Connelly has raised and I agree with it.  I

8  will say that I recognize the very, very narrowness, if you

9  will, of the privilege and it is the PBGC's burden to

10  establish that privilege and, in fact, I believe in the

11  Redland case, didn't -- Ms. Connelly, didn't the Court

12  review the documents?

13              MS. CONNELLY:  I believe it did, Your Honor.

14              THE COURT:  Yeah, I think so.  So here's what I'm

15  going to say to you.  I am not going to extend the time for

16  production of these particular documents beyond the 21st.  I

17  recognize that they're sensitive.  It's time-sensitive and we

18  have to keep the case moving.  If the PBGC is going to assert

19  the privilege, then I would want the documents in my hands by

20  the 22nd in the afternoon and we would have a teleconference

21  on the 22nd about them.  I just don't think --

22              MR. BROMLEY:  Sorry, Your Honor, you meant the 21st

23  in your hands?

24              THE COURT:  Well, I would have the documents

25  certainly, I guess, the morning of the 22nd for our

1  teleconference on the 22nd, so that I could then rule.  But

2  listening to what Ms. Connelly has said, I just don't think

3  it's appropriate for me to rule today on these documents but

4  I do want to rule quickly and I think the 22nd is about the

5  best I can do.

6            MS. CONNELLY:  Thank you, Your Honor.

7            THE COURT:  I think that's what we'll do, and let

8  me just look at the 22nd.  I'm going to schedule the

9  teleconference for 2:30.

10            MR. BROMLEY:  That works for the Debtors, Your

11  Honor.

12            THE COURT:  So I would need those documents, Ms.

13  Connelly, by the morning of the 22nd.

14            MS. CONNELLY:  Yes, Your Honor.

15            THE COURT:  Okay.  All right.  And we'll have the

16  teleconference and I'll be in a position to rule at the

17  conclusion of the teleconference.  But I think today is

18  premature.  All right?  Anything else that anyone has for me?

19  A dangerous question in this case but I'll ask it.

20            MS. CONNELLY:  Nothing here.

21            MR. BROMLEY:  Thank you very much, Your Honor.

22  Nothing from the Debtors.

23            THE COURT:  All right, everyone.  Well, we'll

24  stand in recess until I see you next week and we'll do the

25  Order on the mediation for the 20th.

1          MS. SCHWEITZER:  All right.  Thank you, Your

2   Honor.

3          MR. BROMLEY:  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          MS. CONNELLY:  Thank you, Your Honor.

6          THE COURT:  And good day to you.

7    (Whereupon, at 1:25 p.m., the hearing was adjourned.)

8                      CERTIFICATION

9          I certify that the foregoing is a correct

10   transcript from the electronic sound recording of the

11   proceedings in the above-entitled matter.

12

13

14   _____          December 19, 2016
15   Tammy Kelly, Transcriber                        Date

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

40-year(1) 54:9
a.m(1) 5:1
abbot(1) 5:8
abbott(3) 1:25 5:8 5:11
abid(1) 2:31
ability(1) 22:19
able(14) 7:7 11:25 22:9 22:15 22:17 22:18 26:16 43:10 43:22 48:3 50:19 51:14 52:5 58:19
about(38) 5:21 6:23 15:22 15:24 15:25 15:25 16:5 16:6 16:7 16:14 17:8 17:24 18:6 19:11 20:16 24:16 25:9 26:25 27:1 30:6 30:12 31:24 31:25 33:15 36:7 40:22 41:13 42:4 43:10 45:14 47:18 48:13 51:8 51:23 53:10 54:8 59:21 60:4
abovoentitled (1) 61:11
absolutely(1) 29:2
absurd(1) 27:22
accordingly(1) 37:5
account(3) 49:11 49:15 50:5
accurate(1) 55:24
achieve(1) 18:11
achieved(1) 28:25
acknowledged(2) 46:23 47:5
acknowledgement(1) 47:7
act(1) 47:3
active(5) 22:10 24:9 26:11 27:1 39:11
activities(1) 10:9
actual(2) 14:11 36:15
actually(5) 12:24 23:6 23:8 24:3 39:9
acutely(2) 29:15 29:15
add(3) 6:12 12:14 41:16
addition(1) 13:3 56:5
additional(2) 7:7 21:24
address(3) 52:24 53:12 54:16
addressing(1) 5:10
adequately(1) 28:19
adjourned(1) 61:7
adler(8) 30:7 30:8 30:9 30:10 31:15 33:18 35:5 35:7
adler's(1) 33:8
administered(1) 1:6
administrative(1) 56:13
administrators(2) 2:38 3:16
admittedly(1) 7:21
adopt(1) 46:4
adopted(2) 47:10 51:8
adoption(1) 46:2
advance(2) 56:23 57:23
adversaries(1) 17:22
advisory(3) 53:7 57:23 58:3
advocates(1) 22:17
affirmed(1) 20:15
after(10) 26:18 40:6 42:13 42:19 45:4 47:10 51:23 55:14 55:15 55:22
afternoon(7) 5:2 5:12 5:13 12:16 30:9 37:24 59:20
again(16) 6:17 11:5 13:13 14:7 14:8 17:11 22:22 24:18 25:10 26:10 36:13 40:6 43:19 44:14 55:18
against(7) 25:6 25:13 26:19 31:10 38:9 52:9
agency(3) 53:14 54:9 56:9
agency's(1) 54:2
aggressive(2) 45:9 45:10
ago(4) 46:24 46:25 51:13 51:19
agree(2) 22:6 59:7
agreed(1) 28:16
agreement(2) 12:10 29:4
agreements(1) 24:7
aimed(2) 19:22 32:3
airways(2) 54:7 56:14
akin(2) 2:27 28:3
ak(1) 1:8
alberto(1) 2:9
all(62) 5:11 6:10 11:13 12:1 12:15 13:9 13:16 13:21 14:1 14:2 14:19 15:11 15:15 15:22 16:9 20:20 22:9 22:11 24:10 25:22 26:17 27:23 29:5 29:11 30:3 30:5 30:13 31:4 31:12 32:14 33:6 34:23 35:4 35:16 35:19 36:7 38:4 38:11 39:17 39:19 39:24 39:25 39:25 41:6 43:12 43:18 43:25 44:25 53:1 53:18 54:18 55:8 56:10 57:12 58:11 59:1 59:6 60:15 60:18 60:23 61:1
alleged(1) 33:24
allen(1) 2:8
allocated(1) 32:13
allocation(16) 8:16 8:21 9:11 10:24 11:1 12:8 14:15 14:17 20:14 29:1 29:18 31:21 32:15 32:16 32:21 33:23
allow(3) 36:11 48:11 56:25
allowance(2) 23:10 33:1
allowed(1) 25:13
allowing(1) 36:6
almost(1) 51:10
alone(6) 24:20 28:16 28:19 38:8 40:5 50:7
also(20) 11:17 11:22 17:1 19:24 21:22 22:13 24:13 28:10 29:16 32:18 36:17 38:13 38:20 39:20 40:22 44:8 49:11 51:16 55:4 58:25
altered(1) 34:8

although(2) 25:7 57:13
always(5) 10:17 13:4 13:22 51:24 51:25
amenable(2) 39:22 42:21
amended(1) 47:3
amer(1) 4:8
among(9) 7:14 8:3 18:14 22:4 32:1 32:13 34:23 36:8 36:17
amongst(2) 14:12 24:24
amount(2) 8:1 51:12
analysis(7) 16:1 16:17 22:22 32:10 32:11 47:25
and(30) 5:3 5:4 5:5 5:6 5:6 6:11 6:12 6:16 6:21 6:22 6:24 6:25 7:5 7:8 7:9 7:16 7:19 7:21 7:23 7:25 8:3 8:3 8:7 8:9 8:14 8:16 8:18 8:19 8:21 8:23 8:24 9:1 9:2 9:5 9:9 9:10 9:17 9:19 9:22 10:1 10:3 10:4 10:4 10:6 10:7 10:9 10:9 10:20 10:25 11:5 11:6 11:7 11:12 11:13 11:20 11:23 11:24 12:1 12:2 12:7 12:9 12:19 12:12 12:18 13:10 13:11 13:13 13:16 13:20 13:23 13:24 14:1 14:2 14:9 14:16 14:25 15:1 15:1 15:3 15:3 15:4 15:7 15:14 15:18 16:6 16:10 16:11 16:12 16:13 16:15 16:16 16:19 17:6 17:7 17:8 17:9 17:19 17:10 17:16 17:19 17:20 17:21 17:23 18:1 18:8 18:9 18:10 18:12 18:17 18:18 18:23 19:2 19:5 19:7 19:13 19:15 19:20 19:23 20:8 20:9 20:10 20:11 20:12 20:14 20:17 20:19 20:24 21:2 21:3 21:9 21:18 21:22 21:24 22:3 22:5 22:10 22:11 22:11 22:13 22:16 22:18 22:21 22:25 22:25 23:1 23:10 23:20 23:24 24:2 24:7 24:13 24:18 24:21 24:23 25:1 25:6 25:8 25:9 25:17 24:13 25:16 25:21 25:25 25:25 26:2 26:6 26:11 26:12 26:12 26:13 26:14 26:16 26:17 26:17 26:18 26:19 27:1 27:8 27:10 27:16 27:17 27:17 28:6 28:8 28:9 28:10 28:13 28:16 28:21 28:22 28:23 28:25 29:1 29:4 29:4 29:5 29:6 29:8 30:9 30:11 30:19 30:24 31:15 31:15 31:23 31:24 31:24 32:1 32:5 32:6 32:7 32:10 32:10 32:10 32:18 32:21 33:4 33:11 33:12 33:15 33:24 34:3 34:9 34:11 34:12 34:14 34:14 34:20 34:23 34:24 35:2 35:10 35:15 35:15 35:14 35:17 35:19 35:21 35:22 35:23 35:24 36:1 36:2 36:5 36:8 36:8 36:10 36:12 36:14 36:17 36:22 37:2 37:3 37:9 37:10 37:11 38:3 38:7 38:10 38:11 38:12 38:12 38:15 38:16 38:17 38:18 38:22 38:24 39:1 39:1 39:2 39:3 39:4 39:9 39:11 39:11 39:15 39:18 39:21 39:24 39:25 40:2 40:2 40:4 40:6
and-confers(1) 8:19
and/or(1) 33:17
andrew(2) 1:26 3:9
angeles(1) 3:18
annuities(2) 48:5 50:11
annuity(10) 46:3 46:4 46:8 48:3 48:10 48:20 49:2 50:10 51:24 56:18
another(3) 7:22 19:24 40:9
answer(3) 39:21 32:7 52:14
answered(1) 35:5
anthony(1) 2:32
any(36) 7:7 9:10 12:5 12:10 14:5 15:9 17:20 17:21 18:22 21:6 23:2 23:25 24:1 24:6 25:22 26:20 29:21 33:13 33:13 35:8 39:18 39:18 45:16 46:7 46:24 46:25 48:18 48:16 49:22 50:19 51:4 52:14 56:5 57:6 57:12 57:17
anybody(1) 19:5 31:7
anyone(7) 27:24 31:4 31:9 35:4 39:16 45:11 60:18
anyone's(1) 38:14
anything(12) 9:16 11:1 12:13 16:18 16:21 21:5 30:12 33:6 39:19 47:5 54:24 60:18
anyway(1) 39:24
apart(1) 9:17
apologize(3) 33:9 40:11 52:20
appeal(5) 9:9 9:10 18:7 18:18 19:7
appearances(4) 1:22 2:1 3:1 4:3
appeared(1) 52:4
applied(1) 36:5
applies(1) 49:8
apply(1) 47:1
appreciate(2) 14:20 30:22
appreciation(1) 9:7
appropriate(5) 23:5 24:7 24:21 25:4 60:3
approval(1) 29:5
approve(2) 23:6 23:10
approved(1) 28:13

approving(1) 28:12
approximate(1) 48:12
approximates(1) 48:20
april(1) 18:16
arbitrary(2) 50:1 56:11
arbitration(1) 56:7
are(81) 6:24 8:20 10:3 11:2 11:2 11:24 12:6 12:17 12:19 12:21 13:22 14:10 14:12 14:25 15:2 15:10 15:11 16:14 16:23 16:24 17:12 17:17 17:17 18:21 19:19 21:12 25:5 25:25 26:16 28:23 29:9 29:14 29:24 30:25 31:19 32:24 33:9 33:24 33:25 35:17 35:24 37:6 38:11 38:15 39:2 39:5 39:11 40:15 40:21 40:22 41:1 41:3 41:4 41:18 41:19 42:19 42:25 43:3 43:9 43:20 43:22 44:7 45:9 45:12 46:19 46:22 47:6 47:25 48:22 53:5 54:4 54:10 54:25 56:24
arguably(1) 30:14
argue(3) 51:22 52:8 52:19
argued(2) 28:20 29:17
argument(7) 18:25 25:24 26:4 34:6 52:13 55:2 55:17
arm's(1) 25:8
arose(1) 9:1
around(4) 34:4 34:7 41:4 42:16
arsht(1) 1:24
articulated(1) 13:23 20:7 21:22 57:22
ask(6) 12:12 13:24 32:8 41:1 58:7 60:19
asked(1) 48:18
asking(3) 32:6 43:4 48:4
aspect(1) 29:6
assembling(1) 54:10
assert(9) 53:24 54:15 55:19 55:22 56:1 57:9 57:17 58:16 59:18
asserted(7) 45:23 53:2 53:4 53:15 53:17 54:13 58:3
asserting(4) 46:9 51:11 53:19 53:23
assertion(3) 19:9 45:22 51:15
assess(2) 57:14 57:19
assessed(1) 53:21
asset(1) 31:22
assets(2) 49:23 50:9
assume(2) 42:21 43:22
assuming(1) 47:16
assumption(1) 47:17
astounding(1) 15:8
attached(1) 12:6
attempted(1) 7:1
attempts(1) 51:22
attended(3) 43:22 44:5
attending(3) 41:14 42:21 43:21
attorney/client(2) 46:12 46:17
audible(1) 31:11
august(1) 24:4
author(1) 59:2
authority(5) 15:19 15:19 31:4 41:12 42:24
availability(1) 50:5
available(3) 40:9 44:2 55:1
aware(4) 7:12 29:15 29:15 45:11
away(1) 50:19
awfully(1) 44:18
back(7) 5:17 8:8 10:13 15:12 37:19 42:9 44:24
background(1) 7:10
backroom(1) 27:21
badike-berkow(1) 2:9
bait(1) 39:21
baked(1) 32:17
balance(1) 49:11
balancing(1) 57:22
bankruptcies(1) 48:16
bankruptcy(6) 1:1 1:20 13:16 47:21 50:2 50:2
based(7) 30:19 30:23 32:18 46:3 47:14 48:1 48:2
basic(1) 6:21
basically(1) 31:16
basis(8) 14:11 20:1 35:2 35:21 36:24 48:16 54:5 27:5 28:8 43:19 43:19
bayard(1) 2:4
bcr(2) 13:3
bears(1) 49:7
beadrieu(1) 3:25
because(22) 14:24 15:8 16:12 16:17 16:25 20:5 23:14 25:5 26:14 26:21 26:23 27:9 31:19 35:25 37:18 40:14 47:8 47:25 48:13 48:24 50:16 54:22
becoming(1) 30:23
becoming(1) 22:12
been(31) 5:14 7:18 16:10 17:22 20:14 22:15 24:20 26:7 26:13 28:19 30:12 30:14 38:21 38:22 43:4 43:6 43:9 45:15 45:23 48:21 48:22 49:18 51:11 51:13 51:13 51:24 52:1 52:8 54:3 54:24 55:1
before(17) 1:19 6:13 8:22 12:23 18:6 27:9 37:16 39:3 39:10 39:11 39:21 40:3 40:12 53:23 53:24 55:16 56:2
beginning(2) 31:18 40:25
behalf(6) 21:15 22:17 28:3 43:15 43:20 50:19
behind(3) 20:16 66:25 57:17

being(14) 19:16 21:1 21:12 22:18 24:12 26:25 34:23 39:15 41:25 45:12 45:15 45:17 49:1 58:3
believe(9) 5:9 19:2 21:5 26:5 28:15 28:19 38:11 59:10 59:13
belknap(1) 3:28
bend(1) 17:14
benefit(4) 2:48 47:16 50:17 53:9
benefits(2) 48:21 49:19
benjamin(1) 2:44
best(3) 38:11 44:21 60:5
bet(1) 37:20
better(2) 7:15 34:6
between(19) 5:4 5:5 7:19 8:3 10:8 14:14 14:15 15:6 15:13 15:17 17:13 18:20 23:21 25:8 26:9 29:8 39:13 39:23 40:1
beyond(2) 42:8 59:16
bid(1) 33:10
bids(1) 33:17
biggest(3) 11:16 11:17 11:18
billing(1) 48:12
billion(3) 31:21 33:24 34:22
bit(1) 25:11
blanket(6) 8:7 10:14 10:20 20:2 47:4 51:14
blink(1) 39:1
boil(1) 7:17
boils(1) 48:9
bond(2) 8:6 29:24
bondholder(9) 2:18 18:10 19:5 21:20 22:1 22:14 22:16 25:20 43:20
bondholders(20) 3:13 9:3 11:15 11:16 11:21 17:6 21:15 25:5 25:9 27:15 29:8 29:13 29:14 29:16 32:24 37:2 39:14 42:22 43:4 44:3
bondholder's(3) 23:11 25:12 38:6
bonds(5) 9:2 9:2 10:23 32:18 33:1
boo(1) 56:19
both(13) 6:25 9:10 13:5 13:24 22:22 24:24 25:6 26:8 31:15 38:22 45:12 47:24 50:1
botter(4) 2:30 43:13 43:15 43:15
bottom(1) 19:19
boxes(1) 54:7
brad(1) 2:34
breach(1) 24:17
break(2) 13:2 37:18
breaks(1) 17:13
brief(1) 15:1
briefly(1) 33:20
briefs(1) 18:15
bringing(1) 38:13
broad(6) 6:25 16:9 28:9 28:16
bromley(28) 1:30 41:9 41:15 41:17 41:18 41:19 41:21 41:25 42:3 44:15 44:18 44:20 45:7 52:16 53:2 53:18 54:19 54:20 54:21 57:7 57:22 58:7 58:10 58:24 59:22 60:20 61:3 60:17
brought(1) 5:21
brown(2) 3:36 6:6
bryant(1) 2:35
buchanan(1) 2:14
bunch(1) 41:15
burden(2) 49:8 59:9
but(66) 5:15 7:5 7:15 7:19 8:11 8:25 9:3 9:6 9:20 10:19 11:2 11:9 11:16 11:17 11:21 11:25 12:6 12:10 13:21 13:25 14:12 15:2 15:15 17:5 19:24 23:16 25:12 27:5 27:19 27:20 29:12 29:20 30:13 30:21 31:2 34:17 35:13 38:2 38:13 38:19 38:20 39:17 40:3 40:11 40:22 41:15 41:25 42:5 42:17 42:23 42:25 43:9 43:22 44:5 45:7 45:17 49:12 50:19 51:1 52:18 58:1 60:1 60:17 60:19
buys(1) 18:15
cala(2) 12:8 32:16
calculate(2) 47:14 49:25
calculated(1) 51:25
calculating(1) 51:9
calculation(1) 46:3
calendar(2) 26:24 39:5
california(3) 16:3 16:4 16:8
call(5) 7:18 12:25 16:20 40:12 50:16
calls(1) 10:21
came(2) 27:12 52:6
can(26) 13:4 17:19 18:19 19:5 19:15 21:11 22:5 22:13 23:3 26:16 27:9 27:17 27:20 30:7 33:19 35:14 36:23 37:19 39:18 39:19 41:16 43:14 54:8 58:7 58:7 60:5
canada(2) 11:18 25:6
canadian(5) 15:14 18:16 18:17 29:16 33:11
candid(1) 54:2
cannot(2) 19:8 48:24
can't(8) 9:3 13:8 18:21 29:12 41:3 49:3 56:24 57:23
capital(2) 3:4 3:4
capricious(3) 50:1 56:7 56:11
captions(1) 31:19
care(1) 33:15
carefully(1) 35:15

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| carefully(1) 35:14 | | conaway(1) 2:38 | | curtain(2) 16:19 16:20 | | disproportion(1) 32:20 | |
| carey(2) 36:3 36:6 | | concern(4) 45:20 45:21 45:21 59:7 | | daily(1) 48:15 | | disproportionate(1) 9:12 | |
| carl(1) 3:33 | | concerned(3) 39:2 40:22 58:1 | | damage(2) 48:14 48:15 | | dispute(18) 5:20 6:17 8:16 8:21 20:11 22:23 23:10 23:17 24:8 29:1 30:11 31:20 33:23 33:25 46:2 46:6 53:6 53:10 | |
| caroline(1) 3:25 | | concerns(1) 45:17 | | damages(1) 51:12 | | | |
| carry(1) 8:14 | | conclusion(4) 15:16 38:13 39:4 60:17 | | dangerous(2) 26:13 39:4 60:19 | | | |
| carri(2) 8:22 12:1 | | condition(2) 28:15 28:15 | | daniel(1) 3:29 | | disputes(3) 5:4 38:1 39:20 | |
| carved(1) 11:6 18:21 | | conditions(1) 28:13 | | data(1) 56:10 | | disrupt(1) 40:11 | |
| case(33) 1:5 5:15 9:22 10:11 13:6 13:13 15:21 16:2 16:3 16:4 16:9 19:1 19:10 19:11 19:12 22:6 26:7 26:15 26:16 36:18 36:25 38:9 48:4 49:5 50:23 53:23 56:7 56:8 56:14 58:5 59:11 59:18 60:19 | | conference(1) 24:14 | | date(11) 22:13 22:24 26:24 40:10 41:10 44:16 44:25 45:15 45:16 47:15 54:23 59:1 | | dissect(1) 18:19 | |
| | | conferred(1) 53:16 | | | | distinction(2) 14:14 29:7 | |
| | | confidential(5) 16:15 25:25 35:22 36:8 37:8 | | dates(4) 17:10 41:2 41:15 43:16 | | district(6) 1:2 15:21 16:3 18:6 19:1 35:18 36:11 | |
| | | confidentiality(4) 22:2 24:18 28:16 36:19 | | david(2) 2:30 43:15 | | diverge(1) 19:16 | |
| cases(16) 10:6 13:5 15:20 17:24 18:24 18:25 21:8 22:8 22:15 23:3 23:7 24:20 33:6 38:13 38:15 47:21 | | confidently(1) 22:5 | | day(3) 7:21 39:17 61:6 | | divergent(1) 19:14 | |
| | | confines(1) 34:19 | | days(7) 7:22 7:23 42:9 42:11 55:13 | | divided(1) 34:23 | |
| | | confirm(2) 31:4 35:8 | | deadline(1) 53:11 | | document(24) 9:25 34:1 40:24 44:16 45:10 45:24 | |
| cash(2) 7:5 7:14 | | confirmation(9) 10:19 10:19 30:22 33:8 33:18 38:5 38:9 38:10 42:13 | | deal(10) 11:9 11:10 13:15 13:15 13:19 13:20 13:21 16:24 27:12 48:15 | | 48:17 51:22 52:21 53:1 53:3 53:4 53:9 53:22 54:22 54:23 55:5 55:9 55:14 55:23 57:20 58:15 59:2 59:2 | |
| ceased(1) 17:15 | | | | | | | |
| certain(5) 13:19 24:15 26:21 46:20 48:4 | | confirmed(1) 31:2 | | dealings(1) 23:21 | | | |
| | | connection(12) 10:2 14:2 16:14 16:18 18:11 19:17 20:3 22:1 23:6 42:14 45:18 51:24 55:20 57:5 57:6 57:7 57:8 58:12 58:14 58:20 59:7 59:11 59:13 60:2 60:6 60:13 60:14 60:20 61:5 | | deals(2) 23:21 29:22 | | documents(28) 12:11 21:12 30:18 32:8 35:8 35:17 37:6 45:12 46:9 53:8 53:14 53:19 54:1 54:3 54:5 54:6 54:7 54:9 54:10 56:4 57:13 57:15 59:1 59:12 59:16 59:19 59:24 60:3 60:12 | |
| | | | | debenture(1) 3:28 | | | |
| certainly(18) 5:16 6:23 7:18 11:18 11:19 21:10 21:17 36:15 39:16 41:16 43:8 44:2 50:6 52:15 54:14 57:6 57:16 59:25 | | | | debtor(3) 9:21 11:8 33:3 | | | |
| | | | | debtors(50) 1:12 1:24 5:4 5:5 5:8 5:10 8:5 9:10 10:23 10:19 15:14 15:14 17:4 18:9 19:6 21:21 22:16 23:9 23:23 25:9 25:22 30:10 30:16 30:17 30:18 30:25 31:22 34:22 35:9 37:2 38:10 38:20 39:2 39:13 43:4 44:3 45:5 45:20 52:9 53:5 53:13 53:15 53:16 54:6 54:8 54:12 57:1 58:6 60:10 60:22 | | dodgers(1) 36:18 | |
| | | connelly(26) 40:18 40:18 40:20 40:21 41:22 44:14 44:14 52:20 52:24 54:18 55:20 57:5 57:6 57:7 58:12 58:14 58:20 59:7 59:11 59:13 60:2 60:6 60:13 60:14 60:20 61:5 | | | | does(11) 5:16 17:13 19:3 20:11 23:14 24:21 26:2 26:5 44:9 47:1 48:1 | |
| certification(2) 58:17 61:8 | | | | | | | |
| certifies(1) 54:1 | | | | | | doesn't(9) 10:12 13:11 14:4 16:17 25:19 26:1 26:20 30:23 47:7 | |
| certify(1) 61:9 | | connelly's(2) 42:12 54:21 | | | | | |
| challenge(2) 20:17 33:5 | | consent(1) 42:14 | | | | | |
| challenging(1) 33:2 | | consider(3) 35:13 41:2 44:25 | | | | doing(2) 12:21 12:22 | |
| chambers(1) 24:15 | | considered(2) 33:3 56:9 | | debtor's(3) 5:23 48:23 52:25 | | dollar-for-dollar(1) 50:17 | |
| chance(1) 9:20 | | consortium(4) 3:33 6:7 28:14 29:7 | | decades(1) 51:13 | | dollars(2) 20:10 20:13 | |
| change(1) 42:15 | | constituency(1) 19:23 | | december(5) 1:14 5:1 6:14 7:6 56:24 | | don't(28) 5:21 6:3 8:11 11:11 11:12 12:10 13:3 15:6 15:18 16:6 16:25 19:16 20:20 21:5 21:7 21:9 21:11 26:13 30:12 33:15 34:5 37:16 41:10 42:6 44:2 59:21 60:2 | |
| chapman(1) 2:40 | | constituents(1) 27:14 | | decide(1) 35:12 | | | |
| chapter(1) 1:8 | | construed(3) 46:14 46:16 49:7 | | decided(2) 24:20 46:8 | | | |
| charge(1) 48:4 | | contact(2) 14:10 43:8 | | decision(7) 9:11 11:2 20:14 29:18 32:21 36:25 46:4 | | | |
| check(1) 43:23 | | contentions(2) 22:8 26:16 | | decision-makers(1) 42:24 | | | |
| checked(1) 40:8 | | contested(2) 38:17 48:8 | | decisions(1) 51:12 | | | |
| choice(1) 40:1 | | context(3) 13:16 16:1 34:25 35:9 50:23 | | declaration(1) 54:1 | | down(4) 7:17 16:20 16:21 48:9 | |
| christopher(1) 4:12 | | continued(3) 2:3 3:2 4:4 | | declined(1) 23:18 | | draft(1) 44:10 | |
| circuit(7) 18:7 20:15 36:20 37:1 46:14 49:6 57:19 | | contrarian(2) 3:4 3:4 | | deemed(1) 23:23 | | drafting(1) 18:15 | |
| circumstantial(1) 50:6 | | contrary(3) 36:7 53:1 | | defend(1) 52:12 | | drafts(2) 24:6 52:6 | |
| cite(7) 15:20 16:8 16:9 19:1 19:1 19:10 36:18 | | conversations(1) 13:9 | | defense(3) 10:15 10:20 12:7 | | draw(1) 29:7 | |
| cited(2) 19:17 21:8 | | convoluted(1) 27:13 | | defined(1) 34:2 | | drop(1) 37:17 | |
| cites(1) 16:2 | | corp(1) 2:48 | | defining(1) 33:23 | | dropped(1) 40:12 | |
| claim(8) 8:11 11:16 11:16 11:21 29:16 33:1 48:14 48:15 50:18 | | correct(2) 29:2 61:9 | | delaware(8) 1:2 1:12 5:1 6:7 15:24 19:1 40:9 44:2 | | drye(1) 2:43 | |
| | | correctly(1) 25:18 | | deliberations(2) 46:21 54:2 | | due(4) 12:2 38:16 45:15 56:24 | |
| | | correspondence(1) 30:19 | | deliberative(24) 45:23 46:10 46:11 46:15 47:1 47:4 48:23 48:25 49:3 51:15 52:10 52:14 53:3 53:8 53:20 53:25 55:8 55:19 56:1 57:1 57:7 57:15 57:20 58:16 | | during(10) 10:10 17:16 18:8 22:9 22:10 26:8 26:22 27:4 30:25 48:8 | |
| claims(24) 6:7 11:18 11:23 23:11 25:6 25:9 25:12 28:14 29:7 29:23 29:24 38:1 38:17 46:14 47:14 47:21 48:16 49:18 49:25 50:15 50:20 51:9 51:11 57:3 | | cost(5) 47:15 48:2 48:12 48:17 50:23 | | | | | |
| | | costs(2) 47:22 49:19 | | | | duties(1) 16:25 | |
| | | could(9) 19:8 21:16 29:20 31:3 34:5 34:25 39:12 58:22 60:1 | | delivered(2) 55:15 58:18 | | duty(1) 11:13 | |
| class(3) 3:32 29:22 29:23 | | | | denying(1) 37:10 | | each(8) 5:24 11:9 11:10 16:25 17:7 41:12 55:5 57:10 57:11 | |
| clear(12) 9:24 10:4 10:25 11:5 13:7 13:14 24:13 25:7 31:2 46:15 49:6 55:6 | | | | deposition(2) 12:25 37:19 | | | |
| | | counsel(10) 5:2 6:7 19:15 28:13 28:14 32:18 53:5 54:3 55:23 58:17 | | derek(3) 1:25 5:8 30:8 | | earlier(2) 24:14 47:3 | |
| | | | | describe(1) 16:21 | | earliest(1) 10:21 | |
| cleared(1) 16:11 | | county(1) 43:9 | | determination(1) 48:19 | | early(1) 18:15 | |
| clearly(5) 35:17 49:16 50:25 52:8 52:11 | | couple(8) 8:9 12:5 18:20 21:24 42:11 43:6 46:22 50:24 | | determinations(3) 46:25 49:20 51:16 | | earnest(2) 38:8 38:8 | |
| cleary(1) 1:29 | | | | determine(2) 47:11 47:20 | | eastern(1) 16:3 | |
| client(2) 50:17 50:21 | | course(5) 21:20 22:18 30:18 30:25 43:7 | | determining(1) 56:10 | | easy(1) 45:14 | |
| clients(1) 43:8 | | court(124) 1:1 5:2 5:11 5:15 5:19 5:22 5:25 6:1 6:3 6:10 6:19 7:11 7:24 8:11 8:12 9:7 9:8 9:9 10:16 12:15 12:18 12:21 12:23 13:1 13:21 13:24 14:19 14:22 15:23 18:4 18:6 18:18 19:17 21:2 21:7 21:17 23:7 23:12 23:16 23:18 24:22 24:3 24:13 25:14 25:22 25:24 26:3 26:6 26:10 27:7 27:10 27:23 28:1 28:5 30:3 30:5 30:9 31:4 31:9 31:12 33:7 33:21 34:15 34:16 35:4 35:11 36:3 36:11 36:13 37:5 37:14 37:15 37:20 39:8 39:22 39:22 40:13 40:20 41:2 41:6 41:17 41:19 41:24 42:1 42:8 42:15 43:2 43:7 43:12 43:14 43:18 43:25 44:13 44:18 44:23 48:15 49:4 50:5 52:16 52:23 53:7 54:12 54:14 54:15 54:18 54:20 56:8 57:4 57:6 57:18 57:24 58:9 58:22 59:6 59:11 59:14 59:24 60:7 60:12 60:15 60:23 61:4 61:6 | | diaz(1) 1:38 | | economic(3) 8:20 28:24 29:4 | |
| clock(1) 41:4 | | | | | | ecro(1) 1:36 | |
| close(2) 44:19 50:12 | | | | did(13) 7:5 7:6 17:14 19:6 23:25 28:9 35:5 37:2 52:17 53:13 53:16 55:20 59:13 | | effect(3) 15:7 17:16 53:6 | |
| closer(1) 41:10 | | | | | | effectively(1) 48:14 | |
| cobble(1) 48:3 | | | | | | effort(1) 44:7 | |
| colleagues(2) 9:20 43:23 | | | | didn't(7) 9:20 34:14 35:12 43:5 52:21 59:11 59:11 | | efforts(1) 45:12 | |
| collective(1) 18:11 | | | | difference(1) 11:23 | | eight(1) 18:6 | |
| combing(1) 54:9 | | | | different(16) 11:12 11:19 11:20 14:15 20:19 32:23 32:25 34:5 34:13 35:1 38:23 46:11 46:16 46:17 48:14 50:9 | | either(5) 12:3 13:9 20:17 30:22 45:17 | |
| come(8) 6:16 8:25 26:18 41:12 43:1 48:19 54:12 | | | | | | electoral(1) 23:15 | |
| | | courtroom(1) 1:10 5:18 | | | | electronic(2) 14:1 46:10 | |
| comes(8) 7:8 10:14 16:20 16:21 17:23 19:13 34:1 42:24 | | courts(3) 56:9 57:18 57:19 | | | | else(9) 16:21 27:24 31:7 31:9 35:4 37:25 51:1 51:19 60:18 | |
| | | court's(2) 35:18 37:9 | | | | | |
| coming(3) 9:8 34:22 38:4 | | covered(6) 14:14 25:10 34:7 35:17 | | differently(1) 29:21 | | | |
| comment(1) 20:22 | | covers(1) 52:10 | | difficult(1) 23:25 58:5 | | email(2) 47:6 55:20 | |
| comments(3) 12:12 25:17 28:7 | | cowen(2) 4:7 4:7 | | diligently(1) 24:9 | | emails(1) 32:9 | |
| commercial(1) 19:4 | | creating(1) 46:20 | | direct(1) 51:10 18:25 55:3 | | embodied(1) 28:25 | |
| commission(2) 5:5 36:1 | | credible(1) 55:17 | | directly(4) 8:21 28:25 50:3 50:21 | | embodiment(2) 29:3 33:25 | |
| commit(1) 53:13 | | credibly(1) 19:9 | | disadvantage(1) 5:7 20:11 | | emea(6) 30:10 30:17 30:18 30:25 33:11 35:9 | |
| committed(17) 2:37 3:12 4:11 4:8 5:23 11:7 17:6 21:18 28:3 28:7 29:10 30:16 34:7 35:17 43:16 43:16 44:4 | | credit(2) 7:5 12:5 | | disagree(2) 5:7 20:11 | | emphasize(2) 36:3 36:23 | |
| | | creditor(2) 2:43 29:25 | | disclose(1) 10:15 | | employees(1) 51:5 | |
| | | creditor's(1) 2:26 | | disclosed(4) 14:3 16:16 35:23 51:17 | | encompasses(2) 36:15 36:16 | |
| | | creditors(21) 4:12 8:5 11:22 13:19 17:5 27:15 28:4 29:9 29:11 29:12 29:13 29:14 29:19 29:19 29:19 32:11 32:20 32:24 34:24 37:2 38:12 44:4 | | disclosure(9) 6:14 9:14 22:12 22:23 24:4 24:16 26:21 27:9 36:12 | | end(4) 7:15 16:16 39:11 45:15 | |
| common(2) 11:11 13:13 | | | | | | ending(1) 18:15 | |
| | | | | | | ends(2) 10:8 16:11 | |
| communicate(1) 36:23 | | | | discount(7) 46:3 46:5 46:8 47:11 48:1 48:2 49:20 | | engage(2) 26:17 27:11 | |
| communicating(1) 16:12 | | | | discover(2) 6:23 12:1 | | engaged(1) 37:3 | |
| communications(19) 14:1 15:6 15:10 15:13 15:17 16:13 17:7 18:9 18:14 18:21 24:1 24:2 24:3 24:5 24:24 26:12 35:19 36:8 36:25 | | credulity(1) 51:17 | | discoverable(1) 10:1 13:22 | | enter(1) 45:1 | |
| | | critical(4) 22:1 22:18 47:25 57:2 | | discovery(45) 5:4 5:23 6:17 6:24 7:2 7:7 8:7 8:8 8:19 8:24 9:5 9:16 10:14 14:16 20:4 20:5 20:17 20:20 23:5 23:8 23:18 23:19 24:6 24:21 24:22 24:22 25:3 27:12 27:21 27:22 28:24 31:8 31:10 32:9 33:4 34:18 36:1 36:6 36:18 38:22 41:5 45:9 | | entered(1) 25:14 | |
| | | critically(2) 22:24 24:8 | | | | entire(4) 18:8 23:16 28:9 39:3 | |
| compacted(2) 40:22 54:4 | | cross-over(1) 29:23 | | | | entirely(1) 25:7 | |
| companies(1) 48:4 | | crux(1) 46:2 | | | | entirety(1) 59:3 | |
| company(4) 3:29 4:7 4:7 36:4 | | crystal(1) 55:6 | | | | entities(2) 9:1 46:17 | |
| compel(2) 5:25 37:10 | | current(1) 47:17 | | | | entitled(5) 8:23 9:5 9:15 20:16 46:20 | |
| complaint(1) 34:10 | | currently(1) 40:23 | | discussed(3) 24:12 35:25 40:3 | | equally(3) 5:25 28:24 42:21 | |
| complete(5) 8:7 15:3 31:14 40:24 54:16 | | | | discussing(1) 36:17 | | eric(1) 2:23 | |
| completed(1) 55:16 | | | | discussion(1) 32:25 | | erisa(2) 47:10 51:7 | |
| compositions(1) 11:10 | | | | discussions(16) 22:3 22:9 22:12 22:25 24:24 25:8 25:25 27:1 27:2 32:9 32:22 33:22 34:4 34:7 34:11 36:9 38:23 | | ernest(1) 2:8 | |
| compressed(1) 55:11 | | | | discussions"(1) 24:18 | | escape(1) 29:12 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**especially**(2) 9:12 14:13
**esq**(35) 1:25 1:26 1:30 1:31 1:32 1:33 2:5 2:9 2:11 2:15 2:19 2:21 2:23 2:28 2:30 2:31 2:32 2:33 2:34 2:40 2:44 2:45 3:5 3:9 3:13 3:17 3:21 3:25 3:29 3:33 3:37 3:38 3:42 4:8 4:12
**essence**(1) 37:10
**essentially**(1) 7:17
**establish**(1) 59:10
**established**(1) 53:12
**estate**(1) 25:13
**estates**(4) 17:3 19:23 22:18 29:16
**even**(9) 11:10 16:4 16:8 23:19 24:8 24:9 25:19 26:16 57:12
**evening**(2) 47:6 55:20
**event**(1) 45:16
**ever**(2) 17:14 56:20
**every**(4) 9:21 10:11 53:23 58:15
**everyone**(5) 37:24 39:2 58:1 58:5 60:23
**everything**(5) 10:10 10:12 11:7 13:23 42:9
**evidence**(6) 23:23 35:22 49:15 49:16 50:6 50:7
**evident**(1) 7:13
**ex-post**(1) 52:1
**exact**(1) 55:10
**exactly**(2) 49:17 56:3
**example**(2) 8:1 8:24
**exchange**(2) 22:20 55:14
**exchanged**(1) 12:24
**excluded**(1) 35:17
**exclusively**(1) 10:2
**excuse**(1) 39:1
**exist**(1) 25:19
**exists**(3) 46:13 46:16 53:6
**expect**(1) 13:10
**expectation**(1) 40:5
**expert**(2) 40:25 56:23
**explain**(1) 21:11
**explained**(1) 53:17
**explicitly**(1) 36:2
**extend**(1) 59:15
**extending**(3) 41:2 44:16 44:25
**extensive**(2) 23:8 23:17
**extent**(8) 7:7 8:15 9:9 17:20 18:12 19:23 46:13 46:15
**extraordinarily**(1) 22:8
**extremely**(2) 26:13 26:14
**eye**(1) 15:15
**eye**(1) f.3rd(1) 36:25
**faces**(1) 10:18
**fact**(13) 9:13 15:8 17:16 24:2 24:10 25:24 26:19 29:12 31:5 34:12 42:4 49:23 59:10

**factor**(1) 46:5
**factors**(3) 7:9 56:10 57:22
**facts**(1) 40:15
**factual**(1) 16:2
**fair**(1) 8:1
**faith**(1) 23:20
**familiar**(2) 18:3 40:14
**farran**(8) 7:12 7:20 16:18 17:11 17:14 17:17 40:8 44:1
**farr**(1) 3:8
**favor**(2) 40:21 41:1
**fear**(4) 22:11 22:22 26:18 36:9
**february**(1) 42:13
**feder**(1) 2:44
**federal**(5) 35:21 47:12 47:20 51:23 56:12
**fee**(1) 39:6
**feel**(1) 2:27
**few**(2) 6:21 56:17
**fictional**(1) 48:3
**fiduciaries**(2) 9:16 20:6
**fiduciary**(3) 11:12 11:20 16:25
**filed**(5) 7:10 21:21 23:9 25:12 56:24
**files**(3) 34:15 54:24
**filing**(1) 52:25
**final**(2) 34:20 51:3
**finally**(3) 25:1 25:13 26:10
**financer**(2) 19:2 19:3
**find**(4) 13:5 27:21 35:16 52:5
**finds**(1) 37:5
**fine**(5) 5:11 6:5 12:22 35:10 44:13
**finished**(2) 6:12 12:12
**finishing**(1) 56:23
**firm**(2) 19:12 19:14
**first**(14) 5:7 5:22 6:4 8:9 18:2 21:24 31:16 31:19 32:6 46:22 49:15 51:8 52:17 58:11
**fish**(1) 34:18
**fishing**(1) 35:3
**five**(2) 7:18 7:20
**flow**(2) 28:25 29:5
**flowing**(1) 22:20
**focus**(2) 7:12 10:16
**focused**(1) 38:13
**focuses**(1) 31:21
**folks**(1) 42:24

**follow**(1) 39:23
**followed**(3) 7:24 18:5 18:6
**footnote**(3) 31:17 31:20 33:22
**for**(123) 1:2 1:24 2:4 2:8 2:18 2:26 2:38 2:43 3:4 3:8 3:12 3:16 3:28 3:32 3:41 4:7 4:11 5:4 5:8 5:10 6:1 6:6 6:17 6:24 7:3 7:25 9:8 10:11 11:1 11:2 11:3 12:25 15:9 15:16 16:9 17:9 17:12 18:2 18:5 18:7 18:7 18:20 18:23 19:20 20:4 20:4 21:2 21:10 21:12 21:16 21:18 23:15 24:8 25:12 25:16 25:18 27:16 28:6 28:14 28:21 29:10 30:10 32:5 32:6 32:8 32:23 33:4 33:8 33:10 33:16 33:18 34:16 35:1 35:10 35:16 37:11 37:20 38:4 39:6 39:14 39:17 40:19 41:9 41:11 42:16 42:22 43:5 43:5 43:6 44:16 45:11 46:3 47:4 47:7 48:4 49:17 50:12 50:15 50:18 51:20 51:22 52:22 53:3 53:14 53:19 54:9 54:11 54:22 54:23 55:7 57:15 57:21 58:5 58:6 58:13 59:15 59:25 60:3 60:9 60:10 60:18 60:25

**forced**(2) 39:17 51:5
**forces**(1) 22:17
**foregoing**(1) 61:9
**form**(1) 13:18
**formally**(1) 55:22
**formulating**(2) 15:15 37:4
**forth**(2) 34:12 34:13
**forthcoming**(1) 21:1
**forward**(9) 13:19 15:16 17:18 17:20 25:11 40:17 41:20 41:23 42:18
**four**(3) 7:18 7:20 49:14
**fourth**(1) 50:24
**fox**(2) 3:32 6:7
**free**(1) 2:28
**free**(1) 12:20
**freedom**(1) 47:2
**freely**(2) 22:10 26:17
**from**(63) 5:22 6:3 6:6 7:13 7:25 8:1 8:7 8:10 8:19 9:1 9:8 9:17 10:14 12:1 17:15 19:21 21:15 21:25 24:17 28:3 28:24 28:25 29:2 30:22 31:17 31:20 31:22 31:22 32:18 33:4 33:7 34:4 34:9 36:24 37:6 37:18 40:16 41:12 42:20 43:19 43:22 45:5 45:14 46:16 46:17 48:10 49:1 49:6 50:9 50:20 52:17 52:17 53:7 53:11 54:7 54:23 54:24 54:25 55:9 55:11 56:9 56:19 56:20 56:21 56:22 56:22 57:11 57:16 57:24 58:12 58:12 58:22 59:22 59:25 59:20 59:24 60:15

**front**(3) 18:14 39:6 40:6
**fruit**(1) 23:3
**full**(1) 9:7
**fully**(3) 21:21 25:13 25:20
**fund**(1) 2:4
**further**(5) 13:11 14:3 15:6 15:18 21:6
**furtherance**(1) 15:11
**furthermore**(1) 36:20
**future**(3) 10:11 23:13 51:4
**gallagher**(1) 3:8
**game**(1) 39:4
**gap**(1) 17:20
**gaps**(1) 18:12
**gathered**(2) 5:3 57:12
**gave**(1) 16:23
**general**(8) 9:13 29:19 29:23 53:15 53:25 54:3 55:23 58:17

**generally**(2) 32:11 38:15
**generates**(1) 50:9
**get**(14) 8:8 10:25 11:25 12:2 13:15 17:14 20:10 27:15 27:22 34:17 37:19 39:2 43:5 52:17
**getting**(4) 6:22 20:12 44:18 50:12
**ginger**(1) 1:36
**give**(2) 39:25 40:1
**given**(7) 39:15 40:4 40:13 41:13 51:21 54:4 55:25
**gives**(1) 39:25
**giving**(1) 13:2
**glanis**(1) 3:5
**global**(7) 7:14 9:18 11:3 15:16 20:1 32:12 33:12
**goal**(4) 17:2 17:6 17:7 17:9
**goals**(1) 18:11
**goes**(4) 14:5 15:9 25:24 50:2 50:20 53:22
**going**(23) 15:1 17:21 20:5 23:2 31:20 32:11 35:15 37:17 38:18 39:20 40:17 42:17 43:25 49:21 49:22 52:16 56:1 58:16 58:19 59:15 59:18 60:8

**good**(13) 5:2 5:12 5:13 12:16 12:23 13:2 23:20 30:9 37:24 37:24 45:1 54:22 61:6
**got**(4) 34:21 56:20
**gotten**(3) 19:21 20:13 20:18
**gottlieb**(1) 1:29
**governing**(1) 21:4
**government**(7) 46:19 49:7 49:12 50:25 51:2 51:4 51:14
**granting**(1) 37:10
**grateful**(1) 47:6
**gravamen**(2) 6:22 33:3
**great**(2) 10:10 10:12
**gross**(3) 1:19 5:3 21:19

**group**(10) 2:18 8:6 18:10 19:5 21:15 21:20 22:1 22:14 22:16 25:20
**groups**(1) 11:8
**guaranty**(1) 2:48
**guess**(7) 8:21 12:12 34:20 34:24 37:24 38:8 59:25
**gump**(2) 2:27 28:3
**had**(24) 6:14 6:16 14:25 17:2 17:7 17:10 18:14 19:21 20:13 20:14 23:5 23:20 24:15 25:14 27:4 28:13 30:13 30:14 34:13 45:14 45:24 47:10 49:13 55:3
**hadley**(1) 2:18
**hadn't**(1) 40:3
**hall**(1) 2:11
**hamilton**(1) 1:19
**handed**(1) 55:22
**hands**(2) 59:19 59:23
**handy**(1) 8:11
**hanrahan**(1) 3:9
**haphazard**(1) 14:24
**happen**(2) 34:14 58:19
**happened**(3) 23:16 34:10 35:3
**happy**(4) 43:1 44:11 52:14 52:24
**hard**(2) 40:1 57:13
**harm**(7) 9:12 9:17 20:6 20:7 20:8 20:16 32:20
**harrisburg**(1) 1:40
**has**(51) 8:11 8:24 9:7 9:9 10:8 12:13 19:14 21:6 21:23 24:20 25:22 26:6 26:7 28:16 34:2 34:3 37:13 38:25 39:16 45:15 45:19 45:23 46:2 46:6 46:7 46:14 48:22 49:18 51:10 51:19 51:20 51:24 52:1 52:7 53:2 53:2 53:22 54:5 54:23 55:18 55:25 56:12 56:16 56:17 56:17 57:8 57:8 57:19 59:7 60:2 60:18
**hauer**(1) 2:27
**have**(128) 5:3 5:17 7:18 9:16 9:20 11:11 11:12 11:16 11:17 11:22 12:14 12:10 13:3 13:7 13:9 13:14 13:20 15:11 15:13 16:10 16:25 17:11 19:3 19:6 20:1 20:2 20:13 20:18 20:19 21:3 21:10 21:22 22:7 22:15 22:20 22:20 23:3 25:6 26:7 28:19 29:9 29:18 29:20 29:24 30:12 31:16 32:9 32:23 33:6 33:7 34:4 34:6 34:8 34:13 35:1 35:5 35:11 35:12 35:25 36:10 36:17 37:25 38:6 38:8 38:21 38:22 39:12 40:14 40:15 42:10 42:24 43:8 43:25 45:19 45:20 46:1 46:6 47:8 47:21 47:22 48:18 48:19 48:21 49:2 49:10 49:10 49:19 50:7 51:12 51:13 51:16 51:22 52:3 52:3 53:3 53:10 53:17 54:3 54:6 54:6 54:8 54:14 54:14 54:22 54:25 55:3 55:4 56:15 56:19 56:20 56:21 56:22 56:22 57:11 57:16 57:24 58:12 58:12 58:22 59:12 59:20 59:24 60:15

**haven't**(7) 7:9 12:7 19:21 20:7 38:24 42:20 57:12
**having**(7) 17:17 17:17 17:19 18:9 26:18 54:13 57:2
**haystack**(1) 18:22
**hear**(8) 5:22 5:23 6:3 30:7 40:16 45:4 45:5 52:17
**heard**(9) 12:7 16:24 20:7 21:16 21:18 35:7 40:5 42:20 54:19
**hearing**(17) 6:14 7:6 7:25 9:25 23:17 24:4 24:14 28:6 38:18 39:24 40:4 40:11 42:8 42:13 48:8 55:13 61:7
**heightened**(1) 26:6
**held**(1) 55:13
**hello**(1) 28:5
**help**(1) 44:17
**helpful**(1) 39:14
**herbert**(2) 3:16 3:20
**here**(37) 7:19 11:13 12:2 14:24 16:7 17:21 18:20 19:4 19:18 19:20 20:21 23:3 23:19 24:22 25:3 28:9 30:10 31:25 36:10 42:4 42:7 44:2 44:6 45:10 47:8 48:7 48:13 49:17 50:15 51:2 52:9 52:25 54:20 56:6 57:25 60:20
**here's**(3) 35:16 58:10 59:14
**he's**(5) 25:18 25:18 34:24 35:8 40:8
**hide**(2) 56:25 57:17
**highest**(1) 53:24
**highlight**(3) 6:21 8:9 9:7
**highlighted**(2) 7:16 10:6
**his**(2) 54:9 34:15
**hoc**(5) 2:18 3:12 8:6 11:8 21:15
**hodara**(1) 2:28
**holding**(1) 45:16
**holiday**(1) 44:19
**honest**(1) 36:8
**honor**(109) 5:9 5:10 5:13 6:5 6:13 9:14 9:21 9:24 10:4 11:24 12:16 14:11 14:21 14:23 15:1 16:9 18:3 18:22 18:25 19:19 20:7 20:24 21:6 21:14 23:4 24:20 25:1 25:19 26:2 26:5 26:24 27:3 27:25 28:22 29:3 30:1 30:7 30:22 31:6 31:14 31:18 37:12 37:23 39:16 40:18 41:8 41:21 42:4 42:5 42:7 43:3 43:19 43:19 44:12 44:14 44:20 45:7 45:8 45:11 45:13 45:16 45:19 46:1 46:7 47:18 48:3 48:13 48:24 49:5 50:13 50:17 51:18 52:4 52:13 52:20 52:25 53:10 53:20 54:5 54:19 55:3 55:11 55:13 55:18 56:5 56:25 57:3 57:5 57:7 58:7 58:21 58:25 59:13 59:22 60:6 60:11 60:14 60:21 61:2 61:3 61:5
**honorable**(1) 1:19
**honor's**(3) 29:18 30:23 55:3
**hope**(4) 23:2 42:16 43:10 45:19

**hopefully**(2) 5:17 33:17
**horse**(1) 8:22
**how**(33) 6:2 9:18 11:6 12:17 12:19 12:21 14:16 15:15 17:4 17:8 17:8 17:19 18:10 18:17 19:8 20:5 20:6 26:15 27:12 30:6 31:25 32:2 32:12 33:11 33:14 41:18 41:19 44:21 44:23 47:20 48:19 49:23 52:6
**hubbard**(2) 3:24 30:8
**hughes**(2) 3:24 30:8
**hundreds**(4) 20:10 20:10 20:12 20:12
**idea**(14) 15:17 18:19 20:15 27:20 40:8 40:22 41:1 44:21 45:1 46:19 51:13 55:16 55:23 56:18
**ideas**(2) 22:11 26:17
**identical**(1) 29:24
**ignored**(1) 17:22
**immediately**(2) 18:2 43:8
**immune**(2) 8:19 28:24
**impact**(1) 29:19
**impacted**(1) 18:18
**implement**(1) 17:8
**importance**(1) 22:1
**important**(10) 7:16 22:24 27:8 28:10 41:11 42:23 45:21 46:5 51:18 56:18
**improper**(1) 53:1
**in-person**(1) 7:19
**inappropriate**(2) 34:20 53:12
**inc**(3) 1:8 3:41 32:4
**include**(2) 23:25 24:21
**included**(1) 28:14
**including**(3) 24:6 24:22 57:18
**incorporate**(1) 28:9
**incur**(3) 47:17 47:22 48:21
**indeed**(1) 46:25
**indicate**(3) 6:25 7:6 10:6
**indicated**(3) 21:21 47:13 53:18
**indicates**(1) 31:19
**indicating**(1) 45:20
**indiscernible**(4) 7:9 11:8 23:21 59:5
**individual**(1) 19:24
**inextricably**(2) 8:18 28:23
**infer**(1) 30:20
**information**(19) 22:2 22:4 22:21 24:17 26:21 26:23 30:17 30:24 35:8 36:2 36:9 47:3 48:25 49:2 49:3 54:8 56:22 57:2 59:3
**ingersoll**(1) 2:14
**initial**(1) 15:12
**injure**(1) 54:2
**inquiry**(1) 46:7
**inside**(2) 10:18 50:2
**instant**(1) 24:8
**instead**(1) 23:22
**instruction**(1) 55:3
**insurance**(1) 48:4
**intend**(6) 38:5 50:7 55:19 57:12 57:16 58:20
**intends**(1) 6:15 30:20 55:7
**intends**(1) 57:9
**intent**(1) 47:19
**intention**(1) 48:10
**interest**(27) 11:11 11:11 11:21 13:13 13:16 17:23 17:25 18:24 19:12 19:17 20:7 22:11 24:1 24:11 24:24 25:4 25:10 27:17 36:21 36:22 37:3 37:7 47:13 50:8 56:18
**interested**(1) 3:41
**interesting**(2) 50:16 51:7
**interests**(12) 17:5 19:4 19:6 19:14 19:16 20:8 20:9 38:12 49:11 49:12 49:12
**internal**(1) 46:21
**interpret**(2) 14:8 14:9
**interpretation**(1) 49:25
**interpreting**(1) 25:17
**interpretive**(2) 45:25 48:18
**interrupt**(1) 37:17
**intertwined**(3) 8:18 28:23 30:2
**into**(11) 17:23 18:2 20:5 32:17 34:17 38:17 42:12 46:7 49:11 49:15 50:5
**introduce**(1) 6:11
**invade**(3) 24:23 27:17 27:17
**invest**(1) 49:23
**investment**(2) 47:17 47:18
**investor**(1) 49:22
**involved**(3) 41:3 50:4 57:10
**involve**(1) 19:12
**involving**(1) 19:2
**irrelevant**(1) 33:15
**isolated**(1) 17:10
**issue**(17) 5:10 6:22 20:23 23:5 24:11 25:15 42:7 45:3 48:7 49:17 50:3 50:13 50:22 51:7 51:16 54:16 56:6
**issued**(1) 38:11
**issues**(6) 13:25 23:14 40:7 41:14 50:4 50:14
**its**(16) 7:25 24:2 29:8 29:25 38:02 46:3 47:11 48:1 48:10 49:8 50:9 51:9 52:2 52:12 52:19

| Word | Page:Line |
|------|-----------|
| itself(3) 29:8 39:10 52:2 | |
| it's(58) 5:2 5:13 6:6 7:16 10:2 13:2 13:11 13:25 15:13 15:14 15:15 15:24 15:25 15:25 16:5 16:18 17:4 17:23 19:11 19:12 20:25 22:24 23:13 25:7 26:13 26:13 26:25 27:1 27:3 27:14 28:10 28:21 30:7 32:12 32:13 32:14 34:21 34:23 38:19 45:10 45:21 46:14 48:14 49:3 49:9 49:11 49:12 50:16 51:18 51:21 52:1 52:7 53:11 54:15 55:17 56:2 59:17 60:3 | |
| i'd(3) 6:11 9:6 31:2 | |
| i'll(8) 5:17 6:1 9:23 13:23 17:24 34:20 60:16 60:19 | |
| i'm(25) 6:12 8:13 8:13 12:11 12:22 12:24 15:1 20:4 25:17 27:5 31:7 31:20 33:15 37:17 37:18 41:20 42:15 42:17 43:12 50:24 51:6 52:16 57:24 59:18 60:8 | |
| i've(2) 20:19 40:13 | |
| jaime(1) 2:40 | |
| james(1) 3:10 3:38 6:8 | |
| january(3) 8:2 39:12 48:9 | |
| jason(1) 3:42 | |
| jeff(2) 27:3 33:19 | |
| jeffrey(1) 1:31 | |
| jim(4) 12:4 12:17 14:7 37:17 | |
| john(1) 3:21 | |
| johnson(8) 2:33 27:25 28:2 28:2 28:5 28:6 30:4 30:5 | |
| join(2) 21:23 22:17 | |
| joins(1) 28:7 | |
| joint(10) 2:38 3:16 10:15 10:20 10:24 11:11 17:10 19:11 31:22 37:4 | |
| jointly(1) 1:6 | |
| jones(1) 3:12 | |
| joseph(1) 2:9 | |
| judge(9) 1:19 1:26 5:3 7:12 7:20 16:11 16:18 17:11 17:14 17:17 21:19 28:12 31:17 33:23 34:2 36:3 36:6 40:8 44:1 | |
| june(2) 8:2 24:14 | |
| jurisdiction(2) 14:15 32:4 | |
| jurisdictions(5) 7:14 8:4 32:1 32:2 32:3 | |
| just(52) 6:21 9:7 9:23 10:13 11:2 13:11 14:24 14:25 15:3 15:4 15:14 15:18 16:23 17:1 17:23 20:13 21:16 21:19 21:24 21:25 22:24 23:23 25:19 25:19 26:24 26:25 27:4 27:5 31:20 32:5 33:20 34:6 34:19 34:20 35:2 37:16 40:11 42:10 43:23 44:10 44:21 49:12 51:19 53:13 53:16 57:17 58:7 59:21 60:2 60:8 | |
| justification(1) 58:21 | |
| justify(2) 18:22 19:15 | |
| justin(1) 2:5 | |
| kahn(1) 2:34 | |
| kathleen(1) 2:15 | |
| keane(1) 3:13 | |
| keep(1) 59:18 | |
| kelley(1) 2:43 | |
| kevin(1) 1:19 | |
| key(4) 28:24 29:6 35:23 42:7 | |
| kimberly(1) 3:35 | |
| kind(6) 15:2 23:3 24:20 27:22 39:3 56:15 | |
| kinds(1) 34:13 | |
| know(77) 5:3 5:21 6:24 7:4 7:19 8:1 8:7 8:11 8:15 8:17 8:23 8:24 9:2 9:6 9:11 9:14 9:24 10:7 10:13 10:21 10:24 11:6 11:7 11:13 11:15 11:17 11:22 13:5 13:13 13:17 13:18 15:13 16:8 18:9 19:11 19:21 26:20 26:23 30:1 32:9 32:10 32:14 32:14 32:25 32:19 32:22 33:2 33:23 33:25 33:25 33:11 33:12 33:14 33:17 34:9 34:21 35:12 36:3 37:25 38:4 38:7 38:10 38:25 41:13 41:21 41:22 42:5 43:4 43:4 44:4 44:6 52:16 58:4 58:11 58:13 | |
| known(1) 45:22 | |
| knows(3) 34:11 50:15 | |
| kreller(1) 2:21 | |
| kuehnelenz(1) 1:33 | |
| lack(2) 23:20 23:20 | |
| lacking(1) 56:15 | |
| laid(4) 6:20 12:6 32:4 32:7 | |
| large(3) 11:8 13:6 27:11 | |
| largely(3) 7:3 8:3 34:21 34:23 | |
| last(11) 6:13 8:14 20:22 22:7 25:1 31:7 39:10 43:6 45:13 45:14 45:15 | |
| later(5) 10:8 22:12 22:22 36:10 47:23 | |
| latest(1) 15:4 | |
| laura(1) 2:11 | |
| law(7) 3:28 13:6 13:14 15:3 19:12 19:14 47:2 | |
| leading(2) 8:17 13:21 | |
| learn(1) 20:16 | |
| least(2) 6:1 18:7 32:1 34:2 | |
| leave(4) 6:1 18:7 32:1 34:2 | |
| legal(7) 16:19 19:3 19:6 19:22 36:22 37:3 37:4 | |
| legally(1) 16:11 | |
| length(1) 25:8 | |
| let(3) 13:24 40:16 60:7 | |
| letter(12) 6:20 7:17 8:10 9:25 19:21 21:21 28:20 32:5 32:6 45:19 52:17 52:21 | |
| letters(4) 6:25 12:6 21:6 52:22 | |
| let's(1) 44:23 | |

| Word | Page:Line |
|------|-----------|
| level(1) 53:24 | |
| light(1) 51:21 | |
| like(19) 6:2 6:11 9:6 9:6 11:7 11:25 22:23 26:6 31:2 32:9 37:13 37:18 38:17 40:2 44:15 45:8 46:20 53:13 53:16 | |
| limitations(1) 49:9 | |
| line(2) 19:19 37:25 | |
| lis(1) 3:17 | |
| lisa(2) 1:32 37:23 | |
| listening(1) 8:2 | |
| litigated(1) 20:13 | |
| litigation(13) 10:24 18:1 18:2 18:5 18:12 19:2 19:3 39:11 50:14 50:25 51:1 52:7 54:7 | |
| little(3) 14:24 18:19 25:11 | |
| llp(4) 1:24 2:39 3:24 4:11 | |
| lockbox(1) 21:3 | |
| lodged(1) 39:15 | |
| log(1) 59:1 | |
| long(4) 10:22 15:9 17:12 22:7 | |
| longer(1) 47:17 | |
| look(18) 9:20 17:10 17:21 18:20 18:23 18:25 27:14 29:11 29:21 35:3 42:4 47:21 48:7 48:8 49:10 56:5 56:7 60:8 | |
| looked(1) 9:20 | |
| looking(24) 7:3 8:9 8:13 8:13 11:1 11:2 11:3 18:23 19:20 19:24 20:4 21:12 27:16 29:10 32:21 33:4 33:10 33:16 33:18 41:20 41:23 49:17 51:24 57:20 | |
| looks(2) 25:11 40:2 | |
| lorenzo(1) 2:45 | |
| loring(1) 2:32 | |
| lot(5) 13:3 35:13 35:13 38:21 44:5 44:17 | |
| lots(2) 15:19 16:2 | |
| lowenthal(1) 3:29 | |
| mace(1) 1:36 | |
| made(28) 10:25 11:5 14:1 16:16 16:18 21:23 24:13 24:15 25:2 29:15 33:20 34:6 34:6 35:19 35:20 45:12 45:25 46:14 47:10 47:22 47:24 48:17 49:19 50:1 51:13 51:13 51:16 55:6 | |
| magistrate(1) 28:11 | |
| magnatar(1) 19:10 | |
| main(2) 7:14 8:4 | |
| maintaining(1) 22:2 | |
| make(10) 12:4 19:8 20:22 21:24 25:2 26:20 43:10 43:23 48:19 53:7 | |
| makes(10) 5:9 9:24 10:2 10:4 11:18 11:19 33:5 44:5 48:12 49:6 | |
| making(3) 47:21 49:18 58:2 | |
| management(2) 3:4 3:5 | |
| manipulating(1) 53:5 | |
| many(2) 38:21 39:5 | |
| marissa(1) 2:45 | |
| market(1) 1:11 | |
| materials(3) 13:8 13:25 30:15 30:20 30:24 48:22 54:25 55:8 | |
| matter(10) 5:6 15:8 16:19 16:22 21:18 37:25 49:20 58:2 59:2 61:11 | |
| matters(2) 7:3 20:20 | |
| maximize(1) 17:5 | |
| maximizing(3) 17:3 19:22 19:24 | |
| may(21) 6:12 7:18 7:24 8:23 8:23 9:6 9:8 9:16 14:23 18:1 19:24 21:17 21:18 23:5 25:3 25:8 33:21 49:14 54:19 54:20 57:5 | |
| maybe(6) 18:21 26:23 27:18 31:6 32:11 39:10 | |
| mccloy(1) 2:18 | |
| mean(7) 14:10 16:24 17:1 19:8 34:5 37:16 42:22 | |
| meant(1) 59:22 | |
| mediate(1) 40:17 | |
| mediation(106) 7:11 7:12 7:13 7:15 8:2 8:16 9:4 9:5 9:19 9:22 10:1 10:3 10:5 10:7 10:11 10:14 11:5 13:6 13:7 13:11 13:12 13:23 14:2 14:4 14:4 14:5 14:8 14:10 14:14 14:18 15:7 15:9 15:11 15:16 15:18 15:25 16:1 16:4 16:5 16:7 16:14 16:17 17:2 17:12 17:14 17:15 17:15 18:13 18:14 20:9 20:14 21:10 22:10 22:11 23:23 24:9 24:10 24:19 24:23 26:6 26:8 26:11 26:12 26:22 26:25 27:17 28:8 28:10 28:19 28:23 30:2 34:2 34:7 34:19 34:25 35:10 35:18 35:20 35:23 35:24 36:3 36:5 36:7 36:12 40:14 41:4 42:17 42:18 43:21 43:23 44:1 44:8 45:5 60:25 | |
| mediations(4) 30:19 30:25 38:21 38:23 | |
| mediator(11) 10:5 10:9 11:4 13:8 13:8 14:11 15:12 16:17 17:25 36:16 40:14 | |
| meet(2) 8:18 43:11 | |
| meet-and-confer(2) 7:1 57:10 | |
| meet-and-confers(2) 55:4 55:6 | |
| meeting(1) 58:12 | |
| members(1) 29:8 | |

| Word | Page:Line |
|------|-----------|
| mention(1) 27:4 | |
| mentor(1) 47:2 | |
| merited(2) 32:23 34:4 | |
| merits(1) 42:7 | |
| middle(1) 45:9 | |
| might(1) 30:15 48:4 53:9 53:10 | |
| mightily(1) 46:7 | |
| milbank(4) 2:18 21:15 43:20 43:22 | |
| million(3) 20:10 20:12 50:15 | |
| mind(1) 7:8 | |
| minded(1) 23:21 | |
| mis-cites(1) 17:24 | |
| mischaracterize(1) 54:13 | |
| misinterpretation(1) 52:2 | |
| misstatements(1) 15:3 | |
| moment(1) 17:24 21:16 | |
| money(5) 20:8 32:15 32:17 39:16 50:19 | |
| monitor(4) 2:8 23:8 23:18 23:20 | |
| monitor's(3) 24:6 | |
| month(3) 38:4 40:2 40:7 | |
| months(1) 18:6 | |
| mooi(1) 30:23 | |
| more(13) 7:21 9:6 20:8 20:11 20:13 32:8 33:5 36:15 39:25 42:2 44:5 54:6 57:17 | |
| morning(6) 37:24 45:20 52:22 53:2 59:25 60:13 | |
| morris(2) 1:24 44:12 | |
| most(5) 7:22 25:16 26:10 39:24 46:5 | |
| mostly(1) 50:11 | |
| motion(12) 5:25 5:25 7:8 11:15 21:2 23:6 23:9 25:11 37:10 37:10 38:6 39:7 | |
| motions(3) 18:2 18:7 19:7 | |
| move(8) 15:16 17:18 17:19 42:7 42:8 42:9 42:11 42:12 | |
| moving(2) 10:14 59:18 | |
| much(5) 29:3 33:5 40:21 41:1 60:21 | |
| multiple(1) 19:12 | |
| murphy(1) 2:15 | |
| murrell(1) 2:49 | |
| must(1) 53:21 | |
| myopic(1) 17:11 | |
| myriad(1) 11:22 | |
| myself(1) 44:10 | |
| narrow(5) 7:1 18:25 32:8 39:19 53:21 | |
| narrowly(3) 46:14 46:16 49:7 | |
| narrowness(1) 59:8 | |
| nature(3) 37:8 39:15 40:4 | |
| ncc(3) 21:2 21:4 39:6 | |
| ncc(2) 20:11 | |
| necessary(1) 23:24 | |
| need(17) 21:21 29:13 41:15 43:23 54:11 54:12 56:3 56:21 56:22 56:22 57:2 58:15 58:22 58:23 58:24 58:25 60:12 | |
| needle(1) 18:22 | |
| needs(4) 40:23 48:8 48:15 58:18 | |
| neff(1) 3:33 | |
| negations(1) 17:8 | |
| neglected(1) 27:4 | |
| negotiate(2) 13:17 13:18 | |
| negotiated(4) 32:23 32:25 34:5 35:1 | |
| negotiating(2) 13:14 34:8 | |
| negotiation(1) 32:18 | |
| negotiations(16) 8:17 13:21 14:1 14:12 16:14 19:22 19:25 20:1 22:21 23:4 24:16 24:17 25:16 26:17 35:19 37:9 | |
| network(1) 32:16 | |
| networks(2) 1:8 12:8 | |
| never(6) 29:20 48:5 50:2 56:20 57:11 57:16 | |
| new(1) 3:29 | |
| next(13) 37:25 38:4 38:7 39:6 40:2 40:7 41:9 41:20 42:18 44:1 44:24 55:13 60:11 60:24 | |
| nichols(2) 1:24 44:12 | |
| nick(3) 2:14 24:11 43:19 | |
| nnce(2) 12:9 20:23 | |
| nni(1) 32:15 | |
| non-bond(2) 9:13 32:20 | |
| non-privileged(1) 59:7 | |
| non-privileged(1) 15:20 55:13 53:6 | |
| nori(1) 57:11 | |
| normally(1) 47:15 | |
| nortel(7) 1:8 3:32 5:5 6:6 12:8 31:22 32:16 | |
| nortel(10) 6:8 7:4 8:23 8:25 9:3 9:25 10:18 10:25 11:2 11:4 11:4 11:10 11:20 12:5 12:13 13:11 13:15 14:3 14:12 15:24 15:25 16:4 16:6 16:15 17:1 19:6 19:11 20:16 20:18 20:19 20:20 20:25 21:3 21:13 21:22 22:9 22:22 23:13 23:14 23:25 24:7 24:21 25:7 25:9 25:14 26:1 26:22 26:25 26:25 27:16 29:13 30:23 30:23 31:1 32:13 32:24 33:9 33:15 35:1 35:8 35:13 35:19 37:14 37:15 38:22 39:16 40:17 41:3 41:23 42:12 42:13 42:15 43:20 45:5 45:11 47:1 47:24 48:4 49:21 49:22 49:24 54:1 54:17 52:12 53:2 53:3 53:10 53:17 54:14 54:22 54:23 54:24 54:25 55:17 55:17 55:24 56:6 56:11 56:16 58:2 58:19 59:15 | |

| Word | Page:Line |
|------|-----------|
| notably(1) 23:25 | |
| note(5) 7:16 28:10 39:5 46:13 51:18 | |
| noted(2) 32:19 36:6 | |
| notes(1) 58:12 | |
| nothing(4) 6:23 52:7 60:20 60:22 | |
| notice(1) 6:18 | |
| notion(2) 17:9 27:11 | |
| notwithstanding(1) 49:22 | |
| now(13) 23:13 23:15 32:4 34:3 35:12 38:25 45:3 45:3 46:6 46:22 51:10 53:12 54:12 55:2 56:2 | |
| npc(1) 38:22 | |
| ntc(1) 8:17 | |
| ntcc(15) 5:6 5:21 6:3 9:2 9:2 19:8 21:11 32:17 34:10 34:12 37:11 38:4 38:6 39:13 44:3 | |
| ntcc's(1) 27:14 | |
| number(10) 14:24 15:10 20:19 34:22 45:24 45:25 48:16 49:9 50:10 50:11 | |
| object(3) 6:15 27:19 27:20 | |
| objecting(2) 39:13 40:15 | |
| objection(5) 20:3 30:13 34:15 50:20 57:3 | |
| objections(5) 38:3 38:16 39:15 45:18 53:15 | |
| obviously(5) 38:24 42:25 43:16 45:8 58:25 | |
| occurred(2) 26:22 26:23 | |
| occurring(1) 17:12 | |
| odd(1) 51:10 | |
| off(7) 9:4 9:18 13:9 14:11 20:23 37:18 40:12 | |
| offer(2) 13:8 44:15 | |
| official(3) 2:26 4:11 28:3 | |
| okay(9) 13:1 14:19 31:14 35:4 35:11 42:11 44:13 52:23 60:15 | |
| old(1) 47:5 | |
| olct(1) 53:19 | |
| once(2) 13:20 14:17 | |
| one(46) 2:35 5:4 6:22 7:22 8:1 8:24 9:4 9:19 10:20 11:13 11:17 12:3 13:9 14:1 15:21 19:1 19:12 19:14 19:23 20:23 21:16 27:4 27:8 30:13 31:7 34:1 37:13 38:25 39:10 39:25 41:14 42:3 42:1 44:5 44:10 44:11 50:10 51:1 51:3 51:21 52:11 53:5 54:22 56:18 57:17 58:10 | |
| one-day(3) 16:1 41:14 42:5 | |
| ones(1) 26:13 | |
| one's(1) 39:20 | |
| only(8) 8:25 11:20 11:23 13:4 42:25 54:24 55:20 55:21 | |
| open(1) 36:7 | |
| openly(2) 22:11 26:17 | |
| operating(3) 55:12 55:25 57:25 | |
| opinion(2) 3:39:2 39:10 40:1 | |
| oppose(3) 38:5 41:7 41:8 | |
| opposing(2) 19:4 | |
| opposing(1) 27:24 | |
| oral(1) 18:15 | |
| order(23) 6:1 7:13 13:25 15:25 16:12 17:15 23:18 25:14 26:14 28:11 31:18 31:19 33:23 35:18 36:3 36:11 37:11 43:25 44:8 44:9 45:1 58:13 60:25 | |
| ordered(1) 26:6 | |
| ordering(1) 39:2 | |
| orders(1) 43:7 | |
| original(2) 47:18 47:19 | |
| other(15) 5:9 9:6 10:3 12:5 16:2 17:7 17:22 22:6 26:22 28:18 40:3 48:14 50:4 50:6 59:5 | |
| otherwise(6) 5:14 11:7 22:23 40:2 55:1 58:19 | |
| other's(3) 11:9 11:10 55:6 | |
| ought(2) 45:4 45:5 | |
| our(30) 6:7 6:11 6:15 6:20 6:20 7:6 8:18 8:25 9:15 9:16 10:18 10:21 11:1 11:15 16:20 17:8 17:22 18:11 22:1 25:9 28:20 33:3 35:1 38:12 43:8 49:3 52:13 54:3 55:5 59:25 | |
| ourselves(1) 38:12 | |
| out(32) 5:24 6:20 9:11 9:14 9:23 10:21 11:7 12:1 12:6 12:24 13:4 15:4 15:19 16:13 17:18 18:21 20:14 27:21 28:22 29:20 31:8 31:9 32:5 32:8 34:1 35:23 39:4 40:10 52:5 52:8 | |
| outside(6) 10:9 10:19 11:4 35:4 36:12 50:2 | |
| over(25) 7:20 8:14 11:25 16:22 18:2 18:10 23:17 40:6 40:6 45:24 46:24 46:25 47:5 47:9 54:9 55:18 55:18 55:25 56:1 57:8 57:8 57:8 57:16 57:16 57:16 | |
| overlying(1) 17:25 | |
| overy(1) 2:8 | |
| owns(6) 7:25 20:1 21:9 32:2 32:3 39:21 | |
| p.c(2) 2:4 3:8 | |
| p.m(2) 1:15 61:7 | |
| pachulski(1) 3:12 | |
| page(6) 8:10 8:13 9:21 9:24 31:18 51:22 | |
| pages(4) 9:24 10:3 31:19 54:10 | |
| paid(1) 29:13 | |
| pains(1) 41:22 | |

| Word | Page:Line |
|------|-----------|

paper(1) 51:21
papers(3) 8:25 8:25 9:10
parade(1) 38:3
parades(1) 38:1
paragraph(2) 8:14 16:13
pari-passu(5) 27:10 27:15 27:22 29:13 32:14 34:23 35:2
park(1) 2:35
parse(3) 8:16 26:11
part(10) 7:15 19:25 20:25 25:15 26:3 26:3 34:21 35:18 49:3 50:8
participated(1) 9:3
participation(1) 37:21
particular(5) 32:19 52:3 58:6 58:6 59:16
particularly(1) 50:22
partiers(1) 15:12
parties(44) 5:7 11:12 11:13 13:9 13:10 14:9 15:6 15:12 15:17 17:1 17:15 17:18 17:19 17:19 19:13 22:4 22:6 22:8 22:19 23:21 24:3 24:25 26:7 26:15 35:25 36:8 36:16 36:21 38:22 39:5 39:13 39:19 39:19 39:23 40:3 40:15 41:12 44:2 45:14 45:18 46:6 49:13 53:9 54:4
parties'(3) 34:8 35:13 44:7
partner(3) 6:8 12:4 12:12
party(4) 3:41 5:22 24:15 45:17
past(2) 38:24 43:9
path(2) 38:18 38:19
patterson(1) 3:28
paula(2) 40:18 44:14
pause(1) 39:1
pbc(1) 46:7
pbgc(61) 2:43 5:6 38:1 38:5 38:17 38:22 39:13 40:19 40:23 42:6 44:4 45:3 45:22 45:24 46:6 46:23 47:5 47:9 47:12 47:15 47:20 48:1 48:5 48:9 48:18 48:20 49:2 49:17 49:24 50:9 50:11 50:12 50:20 51:10 51:19 51:24 52:8 52:12 52:15 52:17 52:18 52:19 53:2 53:13 53:16 53:20 53:22 54:5 54:13 54:23 54:25 55:4 55:6 55:18 55:23 55:25 56:2 56:12 56:15 56:16 56:17 56:25 57:8 59:18
pbgc's(7) 8:25 46:2 50:15 51:8 52:25 55:5 55:9
peace(1) 39:12
pending(3) 11:15 24:9 24:19
pennsylvania(4) 1:40 15:21 15:22 16:1
pension(2) 2:4 2:48 3:8
people(7) 13:17 38:15 40:12 41:3 41:13 42:22 42:25
perfect(1) 26:15
perhaps(1) 21:11
period(7) 10:10 10:22 15:9 17:12 17:16 18:8 54:10
permutations(1) 38:24
person(1) 41:11
personally(3) 41:10 43:20 57:10
perspective(1) 21:25
persuade(1) 34:14
peter(1) 3:13
phillipi(1) 3:17
phone(7) 5:3 5:4 6:9 38:15 41:9 42:23 43:2
phrase(1) 54:22
place(7) 18:8 40:14 40:23 44:1 44:9 46:24 46:25
places(2) 9:23 58:1
plain(1) 15:1
plan(36) 6:16 6:23 6:24 7:4 7:5 8:17 8:20 11:6 12:9 13:18 14:17 25:16 27:10 27:14 27:19 27:19 27:22 28:23 28:25 29:3 29:6 29:21 30:1 32:3 34:15 34:21 35:1 38:14 38:14 38:20 38:25 44:3 39:3 40:16
planning(2) 5:24 44:4
plans(3) 29:4 32:2 33:13
plan's(1) 27:19
play(1) 17:23
playing(1) 39:4
please(1) 58:9
pleasure(1) 5:17
plenary(1) 17:13
pocket(1) 39:19
pohl(7) 3:37 6:5 6:6 6:11 6:20 8:13 10:17 13:3 13:22 14:25 16:24 28:22 30:6 30:23 31:6 31:6 31:13 31:14 33:19 33:20 33:22 34:3 35:7 42:20 43:2 43:5 50:16
pohl's(2) 50:17 50:21
point(16) 5:17 9:23 10:2 12:3 13:4 19:13 23:4 25:1 25:2 25:10 34:21 38:14 38:20 38:25 44:25 55:21
pointed(5) 9:11 9:14 10:21 16:13 28:22
points(7) 6:21 12:5 21:24 28:18 28:22 31:16 33:20
policy(1) 49:20
position(13) 5:24 6:12 6:15 6:20 9:15 21:22 25:5 25:21 29:20 34:5 52:9 52:19 60:16
positions(7) 15:15 22:11 26:18 34:8 34:12 34:13
possession(1) 30:16
possibility(1) 51:4
possible(1) 39:12
post-petition(1) 24:11
pot(5) 7:5 9:18 11:3 31:25 32:12 33:12
pot''(1) 7:14
ppi(2) 23:10 33:1

| Word | Page:Line |
|------|-----------|

practices(1) 52:12
pre-dates(1) 11:1
pre-existing(2) 9:25 9:25
pre-package(1) 13:18
pre-petition(1) 23:11
precedent(1) 23:7
precisely(1) 21:11
preclude(1) 12:1
precluded(1) 36:2
prefer(2) 5:22 5:23
prejudice(5) 16:15 27:13 35:21
premature(5) 53:11 54:15 55:17 55:24 60:18
prematurity(1) 55:2
prepared(1) 52:19
present(3) 6:9 13:20 50:7
presented(4) 21:1 36:4 50:8 54:3
presents(1) 39:10
pressing(1) 50:18
preston(1) 4:11
presumably(1) 23:14
presume(1) 22:6
pretty(2) 13:6 17:11
prevent(1) 57:1
prevents(1) 48:25
previewed(1) 6:15
principal(1) 32:2
prior(1) 9:7
privilege(62) 13:6 13:12 16:4 16:5 16:6 16:7 16:8 17:22 17:23 17:25 20:2 21:4 27:17 27:18 28:9 28:19 34:7 36:6 36:21 37:7 37:7 45:23 46:10 46:11 46:11 46:12 46:13 46:15 46:17 46:18 46:21 47:1 47:4 48:23 48:25 49:6 49:8 52:10 52:14 53:8 53:15 53:17 53:21 53:23 53:24 55:9 55:16 56:7 56:21 59:10 59:10 59:19
privileged(3) 13:10 36:24 37:8
privileges(4) 22:25 23:1 24:23 59:5
pro-rata(1) 29:25
problem(3) 46:1 46:1 47:7
problems(1) 58:10
proceed(1) 6:2
proceedings(5) 1:18 1:44 18:16 18:17 18:18 31:21 61:11
proceeds(3) 29:25 31:22 33:24
process(47) 12:2 13:11 14:4 14:5 14:8 14:8 15:10 16:22 17:18 17:20 20:9 20:25 23:16 28:10 30:1 30:2 35:23 35:25 36:12 36:14 38:2 38:5 45:23 46:7 46:16 46:15 47:1 47:4 48:23 48:25 49:3 51:15 52:10 52:14 53:3 53:8 53:11 53:22 53:25 55:9 55:19 56:1 57:1 57:9 57:15 57:20 58:16
produce(3) 23:23 45:12 53:14
produced(8) 1:45 21:13 23:25 36:10 49:1 49:2 54:5 56:14
producing(2) 54:5 56:3
product(2) 46:12 46:18
production(12) 12:11 30:15 37:6 40:24 44:16 45:10 53:10 54:2 55:16 59:16
program(1) 45:10
progress(2) 7:24 7:24
prohibiting(1) 36:12
promised(1) 48:21
pronounced(1) 16:10
pronunciation(3) 51:8 51:23 52:12
propose(3) 5:6 42:17 44:9
propositions(1) 15:20
prosecute(1) 57:2
protect(3) 13:13 51:14 56:18
protected(7) 10:6 10:10 10:12 37:6 48:22 49:16 49:19
protecting(1) 27:1
protection(2) 8:7 10:1
protective(2) 6:1 37:11
provide(1) 49:4
provided(5) 30:17 30:18 30:24 35:9 56:12
providence(1) 52:3
provides(2) 13:25 35:18
providing(3) 47:16 48:21 49:19
prudent(1) 49:22
public(5) 3:47:10 52:11 56:12
publications(1) 56:12
publicly(1) 55:1
published(2) 47:12 51:20
punitive(1) 29:18
purchased(1) 50:12
purpose(1) 17:4
pursuant(1) 29:5
put(11) 9:18 13:17 13:19 33:10 34:12 34:12 40:10 40:12 42:3 52:6 52:8
puts(1) 8:22
putting(2) 32:6 39:3
qualified(1) 49:8
question(13) 13:24 13:25 19:3 19:5 32:7 35:5 49:1 49:24 50:4 50:21 51:3 58:8 60:19

| Word | Page:Line |
|------|-----------|

questions(6) 12:4 21:6 21:10 25:22 31:16 52:15
quick(1) 21:9
quickly(2) 56:22 60:4
quiet(2) 18:13 43:6
quite(1) 11:14
quote/unquote(1) 32:19
quoted(1) 33:22
qureshi(1) 23:4
radio(1) 8:3
raise(1) 23:4
raised(3) 12:7 45:17 59:7
rate(20) 46:3 46:4 46:5 46:8 46:8 47:11 47:13 48:1 48:2 48:3 48:10 48:11 48:20 49:21 49:21 49:22 50:8 50:10 51:24 56:18
rates(1) 49:24
re-set(1) 41:15
reach(4) 5:24 22:15 26:9 44:6
reached(2) 22:7 39:18
reaching(2) 17:18 41:9
read(5) 21:8 21:8 31:20 35:13 35:14
reading(1) 35:15
real(1) 38:2
real(1) 33:20
realize(1) 38:20
really(25) 5:20 7:4 9:4 11:14 12:10 13:3 16:11 18:3 18:24 19:20 20:4 20:7 24:19 27:18 28:21 31:18 33:15 35:12 35:20 38:12 41:22 42:16 49:3 53:12 55:17
realm(1) 25:4
reason(2) 34:17 40:9
reasonable(1) 47:16
recall(2) 7:24 9:8 23:17
recalled(1) 54:6
receive(1) 29:25
received(4) 54:23 54:25 55:4 55:9
recent(1) 25:15
recess(1) 60:24
recipients(1) 59:3
recognition(1) 36:21
recognize(7) 38:14 39:20 51:5 57:24 58:4 59:8 59:17
recognized(1) 55:11
recommendation(2) 28:11 31:17
reconciling(1) 55:14
reconsider(1) 38:6
record(6) 9:9 18:3 19:7 25:12 29:17 39:7
record(4) 15:4 31:2 47:12 56:13
recorded(1) 1:44
recording(2) 1:44 61:10
recoveries(2) 7:5 29:10
recovery(3) 17:15 17:17 19:25
redland(6) 49:5 49:13 50:4 50:13 57:18 59:11
reed(1) 3:24
reflect(1) 39:1
reflecting(2) 38:20 47:17
regard(3) 34:9 35:15
regarding(4) 9:22 28:18 32:25 38:1
regards(1) 20:22
register(3) 47:20 51:23 56:12
regrettably(1) 15:20
regular(1) 18:9
regulation(3) 50:1 56:7 56:11
regulations(1) 52:2
reject(1) 34:16
rejection(1) 47:4
relate(1) 26:12
related(6) 7:3 73:11 12:10 32:10 45:22
relates(2) 14:13 25:11
relating(2) 22:21 49:1
relaxed(1) 42:2
release(1) 17:14
released(1) 21:2
relentless(1) 39:11
relevance(1) 49:15
relevant(1) 56:10
remarkable(1) 15:2
remarks(3) 21:23 25:21 27:5
remedy(2) 9:17 20:6
remember(1) 23:14
reminded(1) 27:5
remming(1) 1:26
render(1) 58:3
reorg(2) 3:41 3:42
repeated(2) 47:24 55:17 37:5 48:18
repetition(1) 54:21
report(1) 44:24
reports(2) 40:25 56:23
represent(1) 11:12
representations(1) 19:11
representative(1) 22:14
representing(1) 19:14
represents(2) 11:20 19:12
request(4) 12:7 33:8 46:10 55:14
requested(4) 6:23 16:3 37:5 48:18
requests(5) 7:2 24:6 45:24 48:17 55:5
require(1) 30:15
research(3) 3:41 3:42 21:9
reserve(1) 7:6
resisted(1) 46:6

| Word | Page:Line |
|------|-----------|

resolution(1) 44:6
respect(9) 19:7 20:24 24:14 45:25 46:21 46:23 47:11 51:16 55:2
respected(1) 23:1
respond(4) 31:15 31:15 33:20 57:5
responding(1) 38:16
response(6) 8:22 25:2 31:11 33:7 43:5 48:22
responses(7) 45:14 45:18 55:7 55:10 55:10 55:14 55:15
responsible(1) 28:21
responsiveness(1) 54:11
restrictions(2) 43:10 46:22
result(3) 9:18 35:15 50:20
return(1) 59:12
review(1) 59:12
reviewed(1) 54:11
reviews(1) 53:25
ridiculous(1) 56:21
right(30) 5:11 6:10 7:6 12:5 13:23 14:2 14:19 26:25 27:23 30:3 30:5 31:4 31:12 35:4 38:16 38:25 41:6 41:24 43:12 43:18 43:25 44:25 54:18 58:14 58:23 59:6 60:15 60:18 60:23 61:1
rights(1) 21:2
rises(1) 53:24
risk(1) 39:3
robert(2) 2:33 28:2
role(1) 50:25
rolling(1) 54:5
room(2) 34:10 39:17
rooney(1) 2:14
rosenthal(22) 1:31 5:9 5:12 5:13 5:16 5:20 14:22 14:23 15:24 18:5 21:7 21:23 25:21 27:3 27:3 27:8 27:23 28:8 33:19 33:19 32:22 37:12
rothschild(2) 3:32 6:8
rudnick(2) 3:36 6:6
rte(6) 8:3 35:21 60:1 60:3 60:4 60:16
ruled(1) 36:3
rulemaking(2) 46:20 46:24
rules(2) 6:24 35:21
ruling(2) 9:21 35:14 36:18 37:9 37:11 58:2
rulings(1) 30:24
run(1) 11:25
said(25) 7:23 13:4 14:25 15:5 20:23 21:8 23:22 27:6 30:12 33:13 33:13 34:3 47:18 49:22 54:2 53:2 55:10 55:18 56:9 56:19 57:8 57:8 57:11 57:16 58:13 60:2
sales(1) 31:22
same(13) 9:19 10:7 11:13 17:1 19:3 19:6 26:19 34:1 41:3 41:4 41:23 55:10 59:4
samis(1) 4:12
sanctity(2) 27:2 36:19
sanjana(1) 3:42
satisfaction(1) 35:6
satisfied(1) 37:1
say(25) 8:15 14:3 14:6 14:17 16:24 18:20 18:24 20:17 21:3 21:20 22:5 22:13 25:20 25:23 26:20 30:12 33:6 33:7 41:7 42:9 49:3 50:18 57:24 59:8 59:15
saying(2) 31:25 34:24
says(8) 14:5 15:19 16:2 16:12 28:22 32:15 50:4 50:13
schedule(7) 10:11 40:23 42:2 42:16 45:9 54:4 60:8
scheduled(3) 45:16 55:13 55:15
schedules(1) 43:11
schuylkill(1) 1:39
schweitzer(12) 1:32 9:13 37:13 37:15 37:23 37:23 39:7 41:6 41:8 42:20 44:11 61:1
scope(7) 13:12 15:25 16:5 28:18 30:21 31:1 32:8
search(2) 18:23 53:14
seat(1) 8:8
second(2) 19:10 23:4
secrets(1) 51:5
section(1) 29:22
see(26) 6:16 7:8 9:16 10:17 12:3 12:13 13:16 14:14 20:20 21:16 27:9 27:12 27:18 30:1 32:21 33:12 33:14 34:18 35:3 39:18 39:22 42:18 44:21 44:23 52:5 60:24
seeing(4) 6:17 38:3 53:9 57:21
seek(4) 7:7 8:15 12:11 20:17
seeking(5) 15:23 7:2 14:16 25:18 25:18 30:21 35:8 56:1 49:13 53:6 55:8
seemed(1) 25:3
seems(3) 25:17 52:3 52:3
seen(4) 7:9 9:10 30:19 45:19
select(1) 40:10
sense(5) 5:9 26:20 44:5 48:13 49:9
sensitive(1) 59:17
sentence(2) 28:20 28:21
sentences(1) 8:15
separate(4) 9:17 15:5 15:17 20:24
september(1) 28:12
series(1) 9:7
serious(1) 50:22

| Word | Page:Line |
| --- | --- |

seriousness(1) 50:14
served(3) 30:14 31:1 55:7
service(2) 1:38 1:45
services(1) 1:38
session(8) 8:2 8:2 13:7 14:12 22:10 26:11 26:22
sessions(11) 7:18 7:19 8:3 10:8 11:5 15:12 17:10 17:13 26:8 26:9 57:11

set(1) 28:12
settle(1) 41:12
settled(2) 20:19 20:19
settlement(45) 7:3 9:2 9:4 12:9 16:6 16:7 20:18 20:24 21:4 22:3 22:7 22:9 22:15 22:25 23:2 23:6 23:10 23:22 23:24 24:1 24:2 24:5 24:7 24:16 24:18 24:23 25:25 26:9 27:1 27:10 27:20 29:2 29:5 32:17 32:25 33:25 34:4 34:16 36:17 37:8 38:7 38:23 40:2 40:6 40:16
settlements(1) 38:11
settling(1) 34:2
several(4) 9:23 10:3 51:22 55:13
shall(5) 14:3 16:15 35:20 35:22 35:22
share(8) 22:4 22:11 22:19 26:17 29:25 32:12 36:22 37:3

shared(4) 11:4 17:6 17:6 22:3
sharing(1) 36:9
she(2) 16:12 37:13
sheet(1) 32:12
sheets(3) 11:4 33:10 33:13
short(2) 6:18 57:25
should(24) 20:19 20:19 23:23 32:13 33:14 34:16 46:13 46:20 47:14 47:14 47:15 47:20 48:11 49:14 50:5 51:9 51:14 51:17 51:25 52:5 52:6 52:10 56:9 56:9
shouldn't(1) 11:25
showing(1) 49:8
side(4) 14:13 33:11 33:16 38:14
sidelines(1) 23:15
sides(2) 13:5 45:13
significance(1) 14:5
significant(1) 44:7
silence(2) 7:25 8:3
similar(7) 22:13 23:2 24:13 36:4 36:22 36:23 37:3
similarly(1) 24:25
simple(1) 32:13
simply(15) 8:8 16:23 21:5 22:10 47:1 48:24 49:1 49:2 51:17 52:4 53:5 54:12 56:14 56:21 56:24

since(2) 39:24 43:5
single(7) 46:5 53:3 53:4 53:9 54:22 54:23 58:15
single-minded(1) 17:4
sir(1) 5:19
sit(3) 23:15 39:17 40:8
sitting(3) 41:9 48:6 48:6
situated(1) 24:25
situation(7) 19:18 21:10 23:19 29:2 36:4 47:8 58:5
six(1) 41:20
six-week(1) 31:23
slippery(1) 26:14
slope(1) 26:14
smidgen(1) 18:19
smith(2) 3:16 3:20
snuck(1) 56:19
so-called(1) 56:13
solve(1) 47:7
solving(1) 32:3
some(23) 5:17 6:21 6:22 7:21 10:6 10:8 10:9 13:18 15:2 18:20 20:15 21:9 23:5 24:24 27:11 32:11 32:23 32:24 34:22 38:22 40:13 42:25 51:22

somebody(2) 26:18 43:22
somehow(9) 18:19 21:3 27:12 41:22 42:12 48:20 51:14 51:24 56:19

someone(1) 44:9
something(14) 6:13 10:17 15:7 27:5 27:16 27:18 33:2 34:18 35:1 42:14 51:19 51:20 56:16 56:20

sorry(3) 50:24 51:6 59:22
sort(4) 7:8 32:11 58:3 59:4
sought(5) 23:8 23:18 24:5 24:22 49:16
sound(2) 1:44 61:10
sounds(1) 38:17
speak(3) 22:10 31:7 42:22
speaking(2) 31:8 31:9
specific(2) 53:15 55:22
specifically(5) 24:11 27:13 32:7 52:11 56:8
spent(1) 36:15
split(5) 7:4 7:13 31:25 33:12 33:14
splitting(1) 11:3
spoke(1) 45:13
spsa(4) 25:16 29:4 29:5 33:24
spsa's(1) 29:5
sri(1) 1:33
stakes(1) 44:6
stand(1) 60:24
standard(2) 51:9 59:4
stang(1) 3:12
stargatt(1) 2:38

start(4) 7:15 15:4 16:16 38:7
started(1) 38:8
starting(3) 18:1 47:9 47:12
starts(3) 7:23 10:7 16:11
state(3) 28:7 56:7 56:8
stated(1) 48:10
statement(10) 6:14 9:15 15:5 27:9 29:2 47:13 47:19 47:19 47:22 47:24
statements(6) 15:3 16:18 16:23 24:15 26:19 47:10
states(2) 1:1 1:20
statute(3) 15:22 15:24 16:1
statutory(1) 47:2
stays(1) 5:15
steel(2) 12:1 16:20
steen(1) 1:29
stepping(1) 12:24
steve(1) 50:18
steven(3) 3:37 6:6 31:6
still(1) 37:24
stoll(23) 3:38 6:8 6:12 12:4 12:16 12:17 12:18 12:20 12:22 12:24 13:2 14:7 14:7 14:20 14:21 14:25 15:5 25:2 30:6 37:16 37:17 37:20 37:22

stoll's(1)
stop(2) 13:23 39:1
stops(1) 7:23
strange(1) 54:13
stranger(1) 30:11
strategies(1) 22:21
strategy(2) 10:24 37:4
strauss(1) 2:27
street(2) 1:11 1:39
stress(1) 21:25
strictly(2) 16:15 35:22
strikes(1) 11:14
structure(1) 27:13
stsa(1) 21:1
subcon(2) 9:1 12:9
subject(14) 9:25 11:15 12:6 14:18 16:15 22:12 22:23 26:21 31:23 35:21 43:9 49:9 52:22 59:2

submission(1) 8:10
submissions(6) 14:1 16:17 33:16 35:13 35:16 35:19
submit(2) 44:11 45:18
submitted(4) 6:25 9:21 10:2 45:19
submitting(2) 13:8 52:21
subpoenas(2) 30:13 31:1
subset(1) 13:19
subsets(1) 13:10
substance(2) 11:24 59:4
substantial(1) 44:8
substantially(3) 36:22 36:23 37:3
succeed(1) 17:8
succeeded(1) 20:12
successful(3) 26:15 38:21 42:17
successfully(1) 20:10
such(5) 17:15 24:17 30:20 57:11 57:12
suddenly(1) 56:17
suffer(1) 51:12
suggest(2) 25:3 37:13
suggested(1) 25:7
suggesting(1) 39:16
suggestion(1) 42:12
suggests(1) 58:14
sum(1) 11:24
summer(1) 31:23
support(2) 23:24 29:4
supports(2) 21:22 25:20
supposed(1) 13:12
supreme(1) 56:8
sure(2) 6:5 43:23
surprised(1) 41:13
surprising(1) 23:13
surrounding(2) 24:10 32:22
sworn(1) 56:17
table(2) 35:15 34:11
take(10) 5:6 41:7 44:1 44:8 44:15 48:8 49:10 49:14 50:5 50:19

taken(1) 29:20
taking(4) 18:8 40:1 52:9 56:5
talk(1) 17:24
talked(1) 45:14
talking(5) 16:6 16:7 17:19 42:4 48:13
talks(2) 14:2 19:11
tandem(1) 17:4
taste(1) 38:3
taylor(2) 2:39 4:11
tcc(4) 23:14 24:22 28:16 30:20
teams(1) 54:8
technical(1) 55:2
technically(2) 26:22 26:25
teleconference(6) 3:23 59:20 60:1 60:9 60:16 60:17
teleglobe(1) 36:25
telephonic(1) 42:2 3:1 4:3
tell(4) 35:6 41:8 55:20 56:2
template(1) 10:11
term(4) 11:3 32:12 33:13 47:18

termination(1) 47:16
terms(5) 8:20 17:9 20:3 28:24 29:4
testament(1) 26:15
than(11) 7:21 11:19 11:20 20:13 34:6 36:15 46:11 48:14 53:19 54:6 59:3

thank(28) 5:12 6:5 6:17 12:18 14:19 14:21 14:23 21:19 25:23 27:23 28:6 30:4 30:5 37:12 37:20 37:22 45:7 54:16 54:18 57:3 57:4 57:7 60:6 60:21 61:1 61:3 61:4 61:5

that(301) 5:3 5:6 5:9 5:9 5:9 5:10 6:15 6:16 6:24 7:9 7:10 7:12 7:14 7:17 8:8 8:15 8:18 8:20 8:22 8:22 8:23 8:24 9:1 9:5 9:6 9:7 9:11 9:13 9:17 9:23 9:24 10:2 10:4 10:6 10:7 10:10 10:17 10:22 10:22 10:25 10:25 11:1 11:2 11:13 11:16 11:16 11:14 11:14 11:18 11:22 11:23 11:24 11:25 12:7 12:7 12:10 12:11 12:13 13:4 13:7 13:14 13:15 13:19 13:20 13:21 13:25 14:9 14:9 14:17 14:20 14:25 15:5 15:5 15:7 15:7 15:8 15:9 15:11 15:17 15:22 16:2 16:2 16:10 16:11 16:12 16:21 16:23 17:3 17:6 17:6 17:7 17:19 17:12 17:15 17:20 17:24 18:3 18:8 18:11 18:12 18:17 18:19 18:20 18:21 18:24 18:25 19:5 19:8 19:10 19:14 19:20 19:22 19:23 20:3 20:3 20:6 20:12 20:15 20:16 20:18 20:20 20:23 21:1 21:2 21:3 21:5 21:8 21:12 21:18 21:20 21:22 21:23 22:2 22:4 22:6 22:7 22:14 22:18 22:19 22:22 22:24 22:24 23:2 23:3 23:5 23:13 23:16 23:17 23:22 23:24 24:4 24:7 24:8 24:9 24:11 24:12 24:15 24:16 24:19 24:21 24:22 25:3 25:5 25:7 25:9 25:10 25:12 25:14 25:15 25:18 25:19 25:20 25:25 26:10 26:12 26:20 26:20 27:5 27:11 27:20 28:7 28:8 28:11 28:11 28:13 28:14 28:15 28:15 28:20 28:21 28:22 29:5 29:7 29:9 29:12 29:15 29:17 29:20 30:13 30:14 30:15 30:17 30:20 30:23 30:24 31:1 31:2 31:5 32:4 32:4 32:5 32:8 32:14 32:16 32:17 32:22 32:22 32:24 33:2 33:2 33:14 33:18 33:20 33:25 34:1 34:1 34:2 34:4 34:8 34:13 34:16 34:25 35:3 35:8 35:9 35:14 35:15 35:19 36:1 36:2 36:9 36:13 37:1 37:5 37:13 37:16 37:19 38:4 38:11 38:18 38:19 38:19 38:20 39:2 39:2 39:5 39:9 39:9 39:16 39:17 39:24 40:5 40:21 40:25 41:1 41:2 41:2 41:7 41:7 41:8 41:11 41:14 41:22 41:23 41:25 42:7 42:11 42:12 42:13 42:14 42:19 42:21 43:8 43:9 43:11 43:21 43:22 43:24 44:1 44:6 44:8 44:12 44:17 44:25 45:1 45:2 45:15

that(138) 45:16 45:17 45:18 45:20 45:24 46:1 46:4 46:6 46:9 46:13 46:19 46:23 46:24 46:25 47:2 47:5 47:6 47:7 47:8 47:8 47:13 47:13 47:15 47:17 47:18 47:19 47:22 47:22 47:24 47:24 48:1 48:3 48:5 48:7 48:11 48:11 48:12 48:15 48:17 48:18 48:19 48:20 48:21 48:22 48:24 48:24 49:1 49:6 49:7 49:8 49:14 49:14 49:16 49:18 49:20 49:21 49:23 49:24 49:25 50:3 50:4 50:7 50:8 50:8 50:11 50:16 50:19 50:22 51:5 51:11 51:12 51:12 51:13 51:15 51:16 51:18 51:20 51:23 52:2 52:4 52:9 52:10 52:11 52:21 52:25 53:1 53:7 53:9 53:17 53:18 53:20 53:22 54:1 54:11 54:15 54:23 54:24 54:25 55:6 55:8 55:18 55:21 55:22 55:23 55:24 55:25 56:1 56:9 56:13 56:15 56:16 56:17 56:19 56:20 56:21 57:2 57:8 57:8 57:14 57:16 57:18 57:19 57:22 57:23 57:25 58:14 58:23 59:1 59:4 59:7 59:8 59:10 59:17 60:1 60:10 60:18 61:9

that's(56) 5:11 6:5 7:10 10:5 10:10 14:11 15:8 16:4 16:9 16:16 17:1 17:11 17:11 17:21 17:22 19:16 20:1 20:23 20:24 25:4 25:22 26:3 27:8 27:16 28:20 29:2 31:2 31:24 31:24 32:10 33:3 33:6 33:17 34:7 34:9 35:10 35:25 36:24 37:3 37:17 38:16 38:22 44:13 44:18 44:23 45:1 48:2 49:20 49:23 51:25 52:13 52:23 55:12 58:18 58:20 60:7

the(301) 1:1 1:2 1:19 2:8 2:38 2:43 5:2 5:3 5:4 5:4 5:5 5:5 5:5 5:6 5:6 5:8 5:10 5:11 5:15 5:15 5:17 5:19 5:20 5:21 5:21 5:22 5:23 5:23 5:24 6:1 6:3 6:3 6:6 6:9 6:10 6:14 6:16 6:19 6:21 6:22 6:22 6:24 7:1 7:1 7:2 7:4 7:4 7:4 7:5 7:6 7:7 7:8 7:10 7:12 7:13 7:13 7:14 7:15 7:16 7:20 7:22 8:1 8:2 8:5 8:5 8:5 8:6 8:8 8:10 8:10 8:11 8:12 8:14 8:14 8:14 8:15 8:15 8:16 8:16 8:17 8:20 8:20 8:21 8:22 8:22 8:25 9:1 9:2 9:2 9:3 9:5 9:6 9:7 9:7 9:8 9:9 9:9 9:10 9:10 9:10 9:11 9:12 9:14 9:18 9:18 9:19 9:19 9:21 9:23 10:2 10:5 10:5 10:7 10:8 10:11 10:14 10:15 10:16 10:18 10:18 10:19 10:20 10:22 10:23 10:23 10:24 11:1 11:3 11:4 11:4 11:6 11:7 11:7 11:13 11:14 11:16 11:16 11:16 11:17 11:17 11:19 11:20 11:21 11:21 11:23 11:23 12:1 12:5 12:6 12:6 12:8 12:8 12:9 12:15 12:18 12:21 12:23 13:1 13:5 13:5 13:6 13:7 13:7 13:13 13:9 13:10 13:11 13:12 13:12 13:13 13:13 13:16 13:16 13:21 13:21 13:24 13:25 14:2 14:3 14:4 14:5 14:8 14:9 14:10 14:10 14:13 14:14 14:15 14:16 14:16 14:17 14:18 14:19 14:22 15:3 15:3 15:4 15:6 15:6 15:8 15:8 15:10 15:11 15:12 15:13 15:14 15:17 15:18 15:23 15:25 16:1 16:2 16:5 16:6 16:11 16:14 16:16 16:17 16:17 16:19 16:19 16:22 16:22 16:24 17:1 17:2 17:3 17:3 17:3 17:4 17:5 17:5 17:6 17:6 17:7 17:9 17:13 17:14 17:15 17:18 17:19 17:20 17:22 17:24 18:1 18:2 18:4 18:5 18:6 18:6 18:7 18:9 18:10 18:10 18:12 18:13 18:13 18:14 18:16 18:17 18:17 18:18 18:18 18:18 18:22 18:25 19:1 19:2 19:3 19:5 19:5 19:6 19:6 19:7 19:7 19:8 19:10 19:10 19:10 19:15 19:17 19:19 19:22 19:23 19:23 19:25 20:5 20:6 20:7 20:7 20:8 20:8 20:9 20:11 20:14 20:15 20:18 20:20 20:22 20:23 20:25

the(301) 21:1 21:1 21:2 21:3 21:4 21:7 21:8 21:8 21:10 21:11 21:15 21:17 21:18 21:20 21:21 21:21 21:22 21:23 21:25 21:25 22:1 22:2 22:8 22:14 22:16 22:16 22:16 22:17 22:19 22:19 22:20 22:24 22:25 23:3 23:4 23:5 23:7 23:7 23:9 23:9 23:10 23:10 23:11 23:12 23:14 23:15 23:16 23:17 23:18 23:18 23:19 23:21 23:21 23:22 23:22 23:24 24:2 24:3 24:3 24:4 24:4 24:5 24:8 24:11 24:11 24:13 24:16 24:17 24:21 24:22 24:23 25:1 25:4 25:5 25:6 25:8 25:9 25:11 25:13 25:14 25:14 25:15 25:15 25:16 25:16 25:20 25:21 25:21 25:22 25:24 25:24 26:3 26:6 26:7 26:10 26:15 26:16 26:19 26:23 27:1 27:7 27:9 27:9 27:10 27:11 27:13 27:14 27:14 27:15 27:17 27:17 27:19 27:19 27:19 27:20 27:20 27:23 28:1 28:3 28:5 28:7 28:7 28:8 28:9 28:11 28:14 28:15 28:16 28:18 28:18 28:21 28:22 28:22 28:23 28:24 28:25 29:1 29:1 29:2 29:3 29:3 29:4 29:4 29:5 29:6 29:7 29:8 29:9 29:10 29:12 29:12 29:16 29:17 29:20 29:21 30:1 30:2 30:3 30:5 30:9 30:10 30:13 30:14 30:15 30:16 30:16 30:17 30:18 30:18 30:18 30:19 30:19 30:20 30:21 30:24 30:25 30:25 31:1 31:2 31:4 31:7 31:9 31:12 31:17 31:18 31:18 31:18 31:19 31:20 31:21 31:22 31:23 31:23 31:24 31:25 32:1 32:3 32:4 32:5 32:5 32:6 32:8 32:12 32:14 32:17 32:17 32:18 32:20 32:21 33:1 33:1 33:1 33:3 33:7 33:11 33:12 33:13 33:17 33:20 33:23 33:24 33:24 34:3 34:3 34:5 34:5 34:11 34:14 34:15 34:15 34:16 34:19 34:20 34:21 34:22 34:24 34:25 34:25 35:3 35:9 35:9 35:11 35:13 35:15 35:16 35:17 35:18 35:20 35:21 35:23 35:24 35:24 35:24 35:25 36:1 36:2 36:6 36:7 36:11 36:16 36:18 36:19 36:20 36:21 36:23 36:24 37:1 37:1 37:2 37:2 37:5 37:5 37:6 37:7 37:8 37:8 37:9 37:10 37:10

| Word | Page:Line |
|---|---|

**the(301)** 37:11 37:11 37:14 37:15 37:20 37:25 37:25 38:1 38:1 38:3 38:4 38:5 38:5 38:6 38:6 38:7 38:10 38:11 38:11 38:11 38:13 38:15 38:15 38:15 38:16 38:17 38:18 38:18 38:19 38:20 38:22 38:24 39:1 39:5 39:5 39:6 39:6 39:8 39:9 39:10 39:13 39:13 39:14 39:15 39:15 39:18 39:19 39:19 39:19 39:21 39:22 39:23 39:23 40:1 40:2 40:4 40:5 40:6 40:7 40:8 40:9 40:11 40:12 40:13 40:15 40:16 40:16 40:20 40:22 40:24 40:25 40:25 41:2 41:2 41:3 41:4 41:4 41:6 41:9 41:10 41:12 41:17 41:19 41:20 41:23 41:24 42:1 42:4 42:5 42:6 42:6 42:7 42:8 42:8 42:9 42:9 42:10 42:10 42:13 42:15 42:15 42:22 42:23 43:2 43:3 43:3 43:4 43:4 43:13 43:13 43:14 43:15 43:16 43:18 43:20 43:21 43:25 44:2 44:3 44:3 44:3 44:3 44:4 44:6 44:7 44:13 44:15 44:16 44:16 44:16 44:18 44:19 44:20 44:23 44:25 45:1 45:3 45:5 45:5 45:5 45:14 45:14 45:15 45:16 45:17 45:18 45:20 45:22 45:22 45:22 45:24 45:24 46:1 46:1 46:2 46:3 46:4 46:4 46:5 46:5 46:6 46:6 46:7 46:7 46:8 46:8 46:9 46:10 46:10 46:12 46:13 46:14 46:15 46:15 46:16 46:17 46:19 46:20 46:22 46:23 47:1 47:2 47:4 47:5 47:7 47:8 47:9 47:9 47:11 47:12 47:12 47:13 47:14 47:15 47:15 47:16 47:18 47:19 47:20 47:21 47:25 47:25 48:1 48:2 48:5 48:7 48:8 48:9 48:9 48:12 48:15 48:17 48:17 48:18 48:19 48:19 48:20 48:20 48:21 48:22 48:22 48:24 48:24 48:25 49:2 49:5 49:5 49:7 49:7 49:11 49:11 49:12 49:12 49:12 49:13 49:13 49:14 49:15 49:15 49:15 49:16 49:17 49:17 49:18 49:19 49:20 49:21 49:22 49:23 49:24 49:24 49:24 49:25 50:1 50:4 50:4 50:5 50:5 50:5 50:8 50:9 50:11 50:11 50:12 50:13 50:13 50:14 50:14 50:20 50:22 50:24 50:24 50:25 50:25 51:1 51:3 51:3 51:7 51:7 51:8 51:8 51:10 51:11 51:12 51:13 51:13 51:15 51:15 51:18 51:21 51:23 51:24 51:25 52:4 52:7 52:8 52:9 52:9 52:12 52:13 52:15

**the(182)** 52:16 52:17 52:17 52:19 52:23 52:25 53:1 53:2 53:4 53:5 53:7 53:8 53:10 53:11 53:12 53:13 53:14 53:16 53:20 53:24 53:24 53:25 54:1 54:2 54:4 54:4 54:6 54:7 54:8 54:9 54:12 54:12 54:14 54:15 54:18 54:20 54:21 54:23 54:24 54:25 55:4 55:5 55:6 55:6 55:8 55:8 55:9 55:11 55:14 55:14 55:14 55:16 55:18 55:19 55:21 55:23 55:23 55:24 55:25 56:1 56:2 56:2 56:6 56:6 56:7 56:8 56:8 56:9 56:10 56:11 56:11 56:12 56:13 56:14 56:15 56:16 56:17 56:18 56:18 56:23 56:23 56:24 56:25 56:25 56:25 57:1 57:4 57:6 57:9 57:13 57:14 57:14 57:22 57:24 57:25 57:18 57:19 57:19 57:20 57:21 57:22 57:24 58:2 58:6 58:9 58:10 58:11 58:12 58:12 58:13 58:13 58:14 58:16 58:16 58:17 58:17 58:18 58:18 58:22 58:23 58:25 59:1 59:1 59:2 59:2 59:2 59:2 59:3 59:3 59:3 59:4 59:5 59:6 59:6 59:8 59:9 59:9 59:10 59:11 59:12 59:14 59:15 59:16 59:18 59:18 59:19 59:19 59:20 59:20 59:21 59:22 59:24 59:24 59:25 59:25 60:1 60:4 60:4 60:7 60:8 60:8 60:10 60:12 60:13 60:13 60:15 60:15 60:16 60:17 60:22 60:23 60:24 60:25 60:25 61:4 61:6 61:7 61:7 61:10 61:10 61:11

**their(34)** 9:3 11:21 12:9 15:21 18:23 19:16 19:24 19:25 20:1 20:3 21:2 32:2 32:3 33:13 33:13 33:16 33:16 36:24 38:9 39:16 39:21 43:10 46:21 47:14 49:23 49:25 51:5 51:25 53:1 54:1 54:24 55:9 55:21 56:3

**them(34)** 5:22 7:20 7:21 7:22 8:10 11:18 11:19 15:2 17:21 19:21 33:17 35:14 38:21 38:22 40:16 43:1 56:18 56:19 59:21

**themselves(3)** 14:13 25:25 36:17

**then(16)** 10:7 13:20 14:2 14:3 32:1 38:7 38:16 42:10 42:18 44:24 49:1 57:21 58:11 58:22 59:19 60:1

**there(55)** 5:25 7:11 7:17 7:18 7:19 7:20 7:23 7:23 8:2 9:1 9:5 10:22 13:23 14:5 15:2 15:10 15:19 16:5 17:13 18:12 18:20 19:13 22:24 24:16 24:20 25:3 25:7 27:16 27:19 28:20 31:9 32:16 32:19 34:7 34:10 34:24 36:20 38:21 39:14 39:24 40:10 43:7 43:11 43:17 45:13 45:16 46:22 46:22 47:3 49:14 50:21 52:8 52:10 52:21 54:11

**therefore(6)** 8:19 10:9 19:15 25:8 25:16 51:25

**there'd(1)** 7:25

**there's(26)** 9:22 10:3 11:9 12:5 14:24 15:18 15:19 15:20 16:2 16:5 17:20 20:11 20:15 21:3 23:1 27:4 27:18 31:7 32:5 34:5 35:2 35:2 50:6 50:25 51:6 56:3

**these(19)** 15:20 16:9 19:21 22:8 22:15 22:19 23:7 23:14 24:20 31:20 33:6 38:15 39:13 39:23 40:7 41:14 57:10 59:16 60:3

**they(75)** 8:19 10:3 11:8 11:10 11:11 11:12 11:17 11:25 13:17 13:18 13:20 13:20 13:20 14:12 15:20 16:8 16:9 16:21 16:23 18:24 19:1 19:1 19:10 19:15 19:20 19:20 20:17 20:23 21:22 22:22 23:3 23:25 25:5 25:22 27:11 27:15 27:16 27:19 27:20 27:21 29:9 29:20 29:24 29:24 30:14 33:12 33:25 34:9 48:11 48:19 48:19 49:23 49:25 51:12 51:16 51:19 55:7 55:10 55:19 55:21 56:3 57:2

**they'd(1)** 11:24

**they're(17)** 8:17 11:9 11:10 18:23 20:3 20:16 21:12 27:15 30:21 34:17 49:21 53:6 56:1 56:3 58:15 59:17

**they've(3)** 31:1 55:22 56:13

**thing(10)** 9:6 11:13 12:3 17:25 27:4 27:8 37:13 55:10 57:11 57:12

**things(10)** 8:9 11:2 14:25 18:13 44:22 44:24 49:14 53:1 54:25 56:17

**think(51)** 5:24 7:22 13:4 13:5 13:22 15:4 16:10 18:21 19:19 19:20 21:7 22:5 22:24 24:19 25:6 26:10 26:13 26:14 26:20 26:24 28:10 31:2 34:5 38:2 38:10 38:20 39:3 39:14 41:8 41:10 41:11 42:5 45:12 42:23 43:3 44:5 44:20 44:23 45:1 45:3 45:5 45:12 58:4 58:24 59:14 59:21 60:2 60:4 60:7 60:17

**third(9)** 18:7 20:15 36:20 37:1 46:14 49:5 50:13 50:24 57:19

**this(88)** 7:10 7:11 7:24 8:6 8:24 9:4 11:15 12:16 12:25 13:16 14:7 15:9 15:16 15:25 16:3 16:8 16:16 17:16 17:25 18:8 19:21 21:14 22:6 22:23 25:11 26:7 25:20 27:10 27:13 28:2 29:6 30:11 30:23 31:6 31:14 32:7 34:1 34:17 35:12 36:4 37:17 39:3 39:4 39:21 40:3 40:13 40:18 43:5 45:4 45:6 45:8 45:11 45:15 45:19 46:2 47:3 47:25 48:2 49:6 49:10 49:23 50:16 50:17 50:18 50:20 50:22 50:23 51:6 51:16 52:22 52:22 53:2 53:12 53:23 54:16 55:2 55:2 55:16 55:19 60:19

**thomas(1)** 2:21

**those(19)** 12:11 13:10 14:6 19:13 22:12 23:24 26:9 26:19 27:2 29:15 30:20 32:1 34:12 36:9 38:24 41:2 43:16 55:15 60:12

**though(3)** 23:19 24:8 24:9

**thought(5)** 24:4 39:9 40:1 40:13 56:20

**thousands(1)** 54:10

**thread(1)** 3:2

**three(7)** 7:14 7:22 8:4 8:10 22:20 31:16 32:2

**throats(3)** 11:10 11:13 11:16

**through(4)** 7:1 19:25 20:9 53:23

**throughout(2)** 15:10 17:2

**throw(1)** 12:1

**thrown(2)** 10:17 10:20

**thynge(3)** 28:12 31:17 34:2

**thynge's(2)** 16:12 33:23

**tie(1)** 20:5

**tight(1)** 52:18

**time(25)** 8:1 10:12 13:17 15:9 17:12 17:17 18:8 18:12 19:13 24:10 24:12 24:19 29:17 35:13 36:15 38:14 41:4 44:6 44:7 53:5 55:21 57:14 57:18 58:3 59:15

**time-sensitive(1)** 59:17

**timeframe(4)** 52:18 55:12 55:24 57:25

**times(2)** 17:10 22:9

**timidity(1)** 51:14

**timing(1)** 17:9

**title(1)** 5:20

**tivana(1)** 4:8

**today(12)** 5:20 11:21 21:23 28:6 30:13 30:24 31:3 38:1 40:5 53:17 60:3 60:17

**together(2)** 13:17 48:3

**told(6)** 7:10 8:18 8:20 20:5 24:3 57:19

**tomorrow(1)** 53:11

**took(5)** 32:5 37:18 39:4 46:24 46:25

**top(2)** 8:14 24:2

**topics(1)** 15:2

**touch(1)** 15:2

**toward(1)** 15:15

**towards(3)** 19:22 20:3 38:9

**trade(6)** 3:32 5:5 6:7 28:14 29:7 36:1

**train(2)** 10:19 10:20

**transcript(5)** 1:18 1:45 9:22 9:23 61:10

**transcription(3)** 1:38 1:38 1:45

**treated(1)** 7:8

**treatment(4)** 9:12 12:9 29:24 32:23

**treatments(1)** 34:14

**trial(5)** 10:25 31:23 31:24 38:17 40:25

**tribune(1)** 36:4

**tried(2)** 9:17 21:9

**tries(1)** 29:7

**true(2)** 13:25 17:2

**trust(3)** 2:4 3:8 3:28

**trustee(1)** 9:3

**try(9)** 15:1 17:18 18:24 20:6 20:9 26:9 26:10 34:18 44:5

**trying(1)** 48:7

**ttc(1)** 30:14

**tuesday(2)** 5:1 39:6

**tunnell(1)** 2:10

**turn(1)** 14:22

**tweed(1)** 2:18

**two(16)** 6:24 7:2 7:22 8:14 9:1 15:20 18:25 28:22 31:19 40:15 42:9 50:11 51:19 55:4

**types(1)** 40:7

**u.k(1)** 3:8

**u.s.(35)** 5:7 5:4 5:8 5:17 9:12 10:22 11:6 11:17 11:19 11:21 11:23 14:16 15:13 15:14 17:3 17:4 17:5 18:9 18:18 19:6 19:23 20:8 20:8 21:21 22:16 22:17 23:27 25:6 25:8 25:13 25:21 30:16 33:14 34:22 54:7 56:16

**ucc(6)** 9:10 11:20 18:10 19:5 22:16 32:19

**ultimate(2)** 7:4 20:18

**ultimately(1)** 20:14

**under(2)** 32:20 40:21

**underlying(3)** 18:1 56:6 59:4

**underscore(1)** 29:9

**understand(7)** 8:4 19:8 21:10 52:6 52:18 52:21 59:6

**understanding(1)** 20:4

**understands(1)** 53:20

**unfortunate(1)** 38:19

**unfortunately(1)** 51:1

**unique(1)** 25:5

**united(2)** 1:1 1:20

**unless(5)** 5:7 21:6 25:22 31:7 45:4

**unlike(1)** 23:19

**unnecessary(1)** 53:14

**unreasonable(1)** 42:6

**unrelated(3)** 9:4 49:8 51:11

**unsecured(14)** 4:12 9:13 12:27 27:14 28:4 29:9 29:10 29:11 29:12 29:14 29:19 29:19 29:23 32:24

**until(5)** 11:9 13:15 16:24 45:4 60:24

**unusual(1)** 6:23

**updates(1)** 6:23

**upheld(2)** 23:1 36:19

**upon(5)** 15:2 32:18 32:20 56:16 59:5

**use(7)** 19:15 26:19 46:8 47:14 48:1 49:21 49:22

**used(3)** 8:6 8:6 36:13

**uses(2)** 48:2 49:24

**using(2)** 48:8 48:11

**vacation(1)** 42:1

**vacuum(2)** 54:16 57:23

**vain(1)** 19:19

**value(2)** 12:18 19:22

**various(2)** 27:12 30:25

**vein(2)** 22:13 54:3

**verbatim(1)** 47:23

**very(30)** 6:21 6:25 12:18 13:14 14:14 18:25 29:3 29:18 29:18 35:11 40:14 40:21 40:22 40:22 41:1 41:3 44:7 44:7 45:9 46:14 49:6 51:7 52:18 54:14 57:13 57:25 57:25 59:8 59:8 60:21

**view(4)** 22:1 48:23 52:25 55:21

**vincente(1)** 2:49

**voidable(1)** 51:6

**violate(1)** 36:11

**virtually(1)** 55:7

**visited(2)** 9:11 32:20

**voidable(1)** 51:6

**voluminous(1)** 40:24

**voluntarily(1)** 23:12

**wait(4)** 44:21 45:4 45:8 54:15

**waiver(1)** 53:8

**want(22)** 6:12 8:9 11:8 12:3 16:20 16:21 20:8 20:17 20:22 25:20 27:11 27:16 28:7 33:12 39:21 40:7 42:6 44:9 44:10 45:4 57:19 60:4

**wanted(10)** 12:13 21:16 21:20 21:24 21:25 23:4 25:23 40:10 44:12 54:8

**wants(5)** 12:4 13:19 34:3 34:14 41:16

**warren(1)** 2:43

**was(59)** 5:20 5:21 5:25 6:15 7:11 7:13 7:15 7:22 7:22 7:23 8:3 10:12 11:6 13:5 14:17 14:17 14:17 15:7 16:24 17:3 18:8 20:25 24:7 24:8 24:9 24:20 24:11 24:17 25:14 25:15 28:11 28:21 31:23 31:24 31:25 32:1 32:16 32:17 32:19 33:2 34:10 34:10 36:2 42:8 42:8 44:4 47:3 47:3 47:10 47:22 47:23 51:7 51:17 52:18 54:11 55:13 55:15 55:16 61:7

**wasn't(1)** 32:3

**waterfall(1)** 32:11

**way(7)** 21:9 22:1 41:23 42:3 47:11 51:25 57:19 57:23 58:14

**website(3)** 51:20 52:4 52:7

**wednesday(1)** 53:11

**week(9)** 7:10 38:7 42:18 44:1 44:24 45:14 45:15 53:11 60:24

**weeks(2)** 41:20 43:6

**weiss(1)** 2:23

**welcome(2)** 34:17 50:18

**well(37)** 5:2 5:16 6:3 7:11 12:18 14:7 18:24 18:25 19:4 20:6 20:23 22:21 24:24 25:24 27:18 34:3 35:11 35:11 40:13 41:10 41:19 41:24 42:6 42:15 43:1 43:11 43:12 43:17 43:25 44:5 45:11 45:25 50:6 57:24 59:6 59:24 60:23

**went(2)** 18:2 32:16

**were(48)** 5:24 6:13 6:15 7:17 7:20 7:21 7:23 8:2 8:8 8:18 8:19 8:20 10:13 11:4 17:7 18:9 18:12 18:13 18:14 18:15 18:15 18:16 19:22 22:8 22:16 23:25 24:5 25:13 27:21 28:21 28:25 29:13 29:14 29:15 30:17 32:23 34:11 34:12 34:24 35:9 37:3 39:21 40:11 45:16 45:17 52:22 55:7 55:15

**western(1)** 15:21

**westlaw(1)** 36:5

**we'd(2)** 57:9 57:24

**we'll(9)** 38:16 42:18 43:17 44:12 44:21 60:7 60:15 60:23 60:24

**we're(50)** 7:2 7:3 7:9 8:20 8:23 9:5 9:8 9:15 10:13 10:18 10:19 19:23 10:25 11:3 12:5 14:16 16:6 16:7 20:5 30:11 21:23 32:6 32:21 33:2 33:4 38:2 38:12 38:14 38:18 38:19 38:25 41:13 42:4 42:11 42:25 43:1 44:11 48:6 48:6 48:13 49:16 51:2 52:14 52:24 55:8 55:12 55:24 57:13 57:25 58:19

**we've(12)** 7:1 7:16 10:6 11:5 20:2 40:8 43:4 43:5 43:11 51:21 54:25

**what(57)** 9:16 13:3 13:12 14:13 14:14 14:16 16:19 19:12 19:19 21:12 23:5 23:16 23:22 24:20 25:6 25:18 25:18 26:12 27:12 27:21 30:21 31:24 31:24 32:24 32:14 33:4 33:7 34:2 34:11 34:12 34:24 35:16 35:25 36:1 36:7 38:2 40:2 40:4 44:6 41:13 42:4 42:16 42:17 44:23 45:22 47:24 48:4 48:13 52:1 56:3 58:5 58:13 58:15 58:18 58:20 59:14 60:2 60:7

**whatever(5)** 9:18 23:23 32:10 34:16 42:10

**whatsoever(1)** 50:22

**what's(4)** 10:5 17:21 30:12 38:3

**when(28)** 5:25 6:12 6:13 7:8 13:14 16:2 17:10 19:13 19:19 21:12 23:5 23:16 23:22 24:20 25:6 25:18 25:18 26:12 27:12 27:21 30:21 31:24 31:24 34:15 34:19 47:2 48:6 48:10 49:9 49:10 54:13 55:9 56:5 56:5 57:14 57:14

**where(23)** 9:8 10:4 10:13 10:22 11:24 13:17 14:9 14:12 17:21 18:13 18:13 20:20 25:2 26:7 34:10 38:14 38:25 39:12 41:13 42:18 46:24 53:6 58:2

**whereupon(1)** 61:7

**whether(13)** 14:11 15:13 15:14 16:20 32:21 33:1 34:3 49:24 51:3 56:6 56:10 57:21

**which(32)** 7:12 14:15 14:16 15:5 24:5 26:12 29:16 29:22 29:23 30:14 31:8 32:4 35:18 36:14 36:18 36:21 40:9 40:23 44:21 46:7 46:23 50:8 51:9 51:21 51:22 52:11 52:18 54:7 55:12 56:23 58:4 58:15

**while(8)** 5:14 13:4 19:22 37:24 40:11 41:1 43:5 48:6

**whiteford(1)** 4:11

**whiteoak(1)** 3:21

**who(11)** 22:24 22:19 29:13 29:14 36:22 40:15 41:3 41:10 43:21 51:5 52:5

**whole(8)** 10:24 15:16 17:25 29:11 30:1 41:15 42:16 48:12

**wholesale(1)** 53:7

**who's(3)** 6:8 12:13 40:14

**why(7)** 6:3 16:8 19:16 29:17 34:6 48:9 55:12

**will(34)** 5:9 7:10 10:18 15:4 23:7 23:16 25:1 27:24 33:10 33:16 36:10 38:16 38:9 39:20 44:5 44:11 45:14 43:6 43:6 43:7 43:7 44:2 44:8 44:9 44:25 45:1 48:20 49:2 49:2 50:8 51:5 55:22 57:14 59:8 59:9

**willing(6)** 26:10 31:4 42:8 42:14 42:15 42:25

**willkie(1)** 3:4

**wilmington(2)** 1:12 5:1

**with(79)** 6:9 7:12 7:22 9:2 10:3 10:8 11:4 12:9 12:11 12:12 12:13 13:7 13:9 14:2 14:10 14:10 15:4 15:12 15:15 16:11 16:14 16:19 17:7 17:11 18:3 18:10 18:10 18:11 19:6 19:17 20:22 20:24 21:4 22:3 22:6 23:9 24:14 25:19 27:13 29:1 29:14 29:22 30:2 34:9 34:20 35:20 35:24 36:14 36:16 39:18 40:3 40:6 40:8 40:14 41:11 42:11 42:18 42:24 43:1 43:6 43:16 43:23 44:12 45:13 45:25 46:9 46:21 46:23 47:10 48:15 50:6 51:1 51:16 52:7 53:16 55:2 55:4 58:2 59:7

**withheld(1)** 53:4

**within(2)** 31:1 34:18

**without(8)** 22:11 22:23 23:6 26:18 33:4 35:20 36:9 53:8

**won't(1)** 53:18

**words(4)** 14:6 35:23 36:13 36:23

**work(5)** 20:9 43:16 44:12 46:12 46:17

**worked(2)** 31:2 38:24

**working(6)** 10:23 26:7 38:8 38:9 41:4 57:13

**works(3)** 10:12 43:24 60:10

| Word | Page:Line |
|------|-----------|

**would**(63) 5:22  6:16  7:17  8:8  10:1  12:12  14:8  18:22
20:13  22:5  22:6  22:7  22:15  22:22  24:7  24:23  25:9
29:18  30:15  30:21  32:22  34:4  34:8  34:13  36:6  36:11
37:13  39:14  39:22  41:1  41:7  41:8  41:11  41:12  42:16
42:16  42:21  42:22  42:23  43:20  43:21  43:22  43:23
44:15  44:17  45:8  45:18  47:11  47:22  48:11  53:7  54:2
54:14  55:7  56:15  57:17  58:4  58:24  58:25  59:19
59:20  59:24  60:12

**wrong**(5) 15:1  15:18  16:23  21:5  26:24
**wrote**(1) 52:5
**www.diaztrans.com**(1) 1:42
**yeah**(5) 12:20  30:10  33:9  45:7  59:14
**year**(6) 7:15  7:21  10:8  39:10  47:3  47:9
**years**(11) 46:24  46:25  47:5  47:9  47:23  51:10  51:10
51:19  51:22  52:1  53:19

**yes**(26) 5:15  5:19  6:19  10:16  15:23  17:13  18:4  21:17
23:12  27:7  28:1  30:9  33:21  35:7  37:15  39:8  40:20
42:3  43:3  43:14  44:20  52:20  54:20  57:6  58:9  60:14

**yesterday**(4) 46:23  47:6  53:16  55:20
**yet**(5) 7:9  40:3  53:18  54:3  57:13
**york**(1) 3:29
**you**(153) 5:12  6:6  6:16  6:17  6:25  7:4  7:19  8:1  8:7
8:15  8:17  8:22  8:24  9:2  9:6  9:11  9:13  9:24  10:6
10:13  10:18  10:21  10:23  11:6  11:7  11:13  11:15  11:17
11:22  12:4  12:17  12:18  12:19  12:21  13:4  13:5  13:7
13:8  13:13  13:14  13:15  13:17  13:18  13:24  14:19
14:21  14:23  15:11  15:13  16:10  16:20  16:23  17:11
17:17  17:17  18:19  21:8  21:10  21:17  21:17  21:19
25:7  25:23  26:20  26:23  27:9  27:23  27:24  28:6  29:6
30:4  30:5  30:7  30:11  31:12  31:12  32:9  32:10  32:14
32:14  32:15  32:19  32:22  33:2  33:3  33:5  33:7  33:10
33:10  33:11  33:11  33:12  33:13  33:16  33:17  33:21
34:9  34:21  35:5  35:12  35:14  36:3  37:12  37:16  37:20
37:20  37:22  38:7  38:10  38:25  40:6  41:7  41:7  41:18
41:19  41:21  41:22  42:5  42:18  43:2  44:10  44:24  45:4
45:7  45:13  49:10  49:10  52:16  54:16  54:18  54:20
55:11  56:20  57:3  57:4  57:7  57:19  57:22  58:4  58:11
58:13  59:4  59:8  59:15  59:22  60:6  60:21  60:24  61:1
61:3  61:4  61:5  61:6

**young**(2) 2:9  2:38
**your**(124) 5:8  5:10  5:13  5:18  6:5  6:13  9:14  9:21
9:24  10:4  11:24  12:16  14:7  14:21  14:22  14:23  15:1
16:9  18:3  18:22  18:25  19:19  20:7  20:24  21:6  21:14
23:4  24:19  25:1  25:19  25:24  26:2  26:3  26:5  26:24
27:3  27:25  28:2  29:2  29:17  29:25  30:7  30:22  30:23
31:6  31:14  31:15  31:16  32:6  32:7  33:4  33:19  35:5
35:5  35:7  37:12  37:17  37:21  37:22  37:23  39:6  40:18
41:18  41:21  42:1  42:3  42:5  42:7  43:3  43:13  43:19
44:11  44:14  44:20  45:7  45:8  45:11  45:13  45:19  45:21
46:1  47:8  47:24  48:7  48:7  48:13  48:24  49:5  50:13
50:15  50:19  51:6  51:18  52:4  52:13  52:20  52:24
53:10  53:20  54:16  54:19  55:3  55:3  55:11  55:13
55:18  56:5  56:25  57:3  57:5  57:7  58:7  58:20  58:25
59:13  59:22  59:23  60:6  60:10  60:14  60:21  61:1  61:3
61:5

**yours**(1) 44:21
**you'd**(2) 6:2  56:20
**you're**(8) 13:14  13:15  17:19  38:2  40:4  42:2  50:18
56:5

**you've**(4) 16:13  40:4  42:1  56:19
**ziehl**(1) 3:12
**"the**(1) 7:13
**december**(1) 61:14