IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- X
: 
*In re*  : Chapter 11
 :
Nortel Networks Inc., *et al.*, : Case No. 09-10138 (KG)
 :
                        Debtors.[1] : Jointly Administered
 :
 : **RE: Docket No. 17625**
 :
------------------------------------------------------------- X

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NORTEL NETWORKS, INC., ET AL. IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO RULE 9019 APPROVING SETTLEMENT AGREEMENT BY AND AMONG THE DEBTORS AND PENSION BENEFIT GUARANTY CORPORATION WITH RESPECT TO PBGC CLAIMS AND RELATED ISSUES**

The Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks, Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby files this statement (the "Statement") in support of the *Debtors' Motion for Entry of an Order Pursuant to Rule 9019 Approving Settlement Agreement by and Among the Debtors and Pension Benefit Guaranty Corporation With Respect to PBGC Claims and Related Issues* (the "9019 Motion") [Docket No. 176265].[2] In support of this Statement, the Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. ("NNI") (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), Nortel Networks (CALA) Inc. (4226) and Nortel Networks India International, Inc. (8667).

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the 9019 Motion.

1

**PRELIMINARY STATEMENT**

1. The Committee[3] strongly supports approval of the Settlement Agreement. The Settlement Agreement resolves not only the priority and quantum of the PBGC's allowed claims, but also the PBGC's objections to confirmation of the Plan, thereby representing the settlement of one of the last remaining material disputes in the Debtors' long and winding path to confirmation of a Plan and distributions to creditors. Indeed, the Settlement Agreement provides the Debtors' estates with certainty as to one of the largest claims against the Debtors' estates, including a cap on distributions to the PBGC that may redound to the benefit of other general unsecured creditors in the United States. For these reasons, among others stated in the 9019 Motion, the Committee believes the Settlement Agreement is reasonable, in the best interests of the Debtors' estates and in the paramount interests of all creditors.

**STATEMENT IN SUPPORT**

2. The Committee agrees with and adopts the Debtors' application of the *Martin*[4] factors supporting approval of the Settlement Agreement. Significantly for unsecured creditors of these estates, the fourth *Martin* factor – the paramount interests of creditors as a whole – will be fully satisfied by approval of the Settlement Agreement, which removes a significant objection to confirmation of the Debtors' Plan later this month and paves the way to distributions to creditors.

3. As the Court is aware, since 2010, the parties involved in these chapter 11 cases have participated in extensive negotiations, a series of mediations and a cross-border 21-day trial, followed by numerous appeals, in order to attempt to resolve a dispute over the allocation of the approximately $7.3 billion of proceeds resulting from the sale of the Debtors' business

---

[3] The PBGC is a member of the Committee but did not participate in the deliberation or determination of the Committee to file this Statement in support of the 9019 Motion.

[4] *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

lines and other assets. The Settlement and Plans Support Agreement (the "SPSA"),[5] while, as noted to this Court numerous times since its execution, is certainly not perfect in outcome for the U.S. Debtors and their creditors, promises to resolve the Allocation Dispute and bring a close to these chapter 11 cases after eight years. The looming litigation regarding the PBGC's claims and the PBGC's related opposition to confirmation of the Plan stood as the primary remaining obstacles to confirmation of the Plan, which incorporates the terms of the SPSA.

4.     By the terms of the Settlement Agreement, the PBGC, one of the largest creditors of the Debtors, will support confirmation of the Plan, instead of opposing approval of the SPSA and confirmation of the Plan. The PBGC's support and agreement to vote in favor of the Plan increases the likelihood that the Plan will be confirmed and removes the uncertainty that would result from litigation – both before this Court and in potential appeals – of the Plan objections raised by the PBGC, as well as litigation of the allowed amount and priority of the PBGC's claims, which may have resulted in substantial reserves being required. Creating a smoother path to Plan confirmation, and to more prompt creditor distributions, is in the best interests of all creditors of the Debtors' estates.

5.     The Committee believes that the terms of the Settlement Agreement are extremely beneficial to the Debtors' estates, as they result in a waiver of any asserted entitlement to administrative or priority treatment and a substantially reduced unsecured PBGC claim amount. Rather than asserting claim amounts in excess of $708,000,000, the Settlement Agreement provides the PBGC a single allowed general unsecured claim against each Debtor in the amount

---

[5] The SPSA is dated October 12, 2016 and is entered into by (i) the Debtors, (ii) the Canadian Debtors, (iii) the Monitor, (iv) the EMEA Debtors, (v) the EMEA Non-Filed Entities; (vi) the Joint Administrators, (vii) Nortel Networks S.A. ("NNSA"), (viii) the NNSA Conflicts Administrator, (ix) the French Liquidator, (x) the Bondholder Group, (xi) the Canadian Creditors Committee, (xii) the Creditors' Committee, (xiii) the U.K. Pension Trustee, (xiv) the Board of Pension Protection Fund , (xv) the Joint Liquidators and (xvi) those bondholders of Nortel Networks Capital Corporation who are signatories to the SPSA .

3

112517268 v62225673v1

of $624,601,972, with a *cap* on the PBGC's rights to distributions from such claims in the amount of $565,000,000.  In addition to substantially reducing the amount of the PBGC's allowed claim and placing a cap on the PBGC's recoveries, the Settlement Agreement does not provide a recovery floor amount for the PBGC, thereby treating their reduced claim amount like that of all other general unsecured creditors.  The Committee believes that these reduced and capped amounts fall well within the range of reasonableness.  Furthermore, this proposed resolution of the PBGC's claims gives the Debtors' estates and their respective creditors a greater degree of certainty as to the amount and timing of distributions.

6. Finally, the only alternative to the Settlement Agreement is continued litigation of the Debtors' Objection to the PBGC Claims, as well as the PBGC's objections to confirmation of the Plan.  The extensive discovery process, hearing preparation, a three-day evidentiary hearing next week, a contested confirmation hearing, and any appeals arising therefrom would further drain the Debtors' estates and add uncertainty of outcome before this Court and any appellate panels, further delaying distributions to creditors who have already waited years to be paid.

7. Given the reasonableness of the terms of the Settlement Agreement, the likely high costs of continued litigation, the uncertainty of outcome from such continued litigation, and the Committee's firm belief that removing a major obstacle to Plan confirmation is in the best interests of all creditors of the Debtors' estates, the Committee fully supports approval of the 9019 Motion.

**CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court (i) approve the 9019 Motion and (ii) grant such other and further relief as may be just, proper, and equitable.

Dated: January 5, 2017
Wilmington, Delaware

By: /s/ Katherine Good
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
Whiteford, Taylor & Preston LLC
The Renaissance Centre
405 North King Street, Suite 500
Wilmington, DE  19801
Telephone:  (302) 353-4144

-and-

David H. Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Brad M. Kahn (admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY  10036
Telephone:  (212) 872-1000

*Co-counsel to the Official Committee of Unsecured Creditors*