IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | |
| ) | Bankruptcy No. 09-10138 |
| NORTEL NETWORKS, INC., et al., ) | |
| ) | Chapter 11 |
| Debtors. ) | |
| ) | **Hearing Date: January 24, 2017 at 10:00 a.m. ET** |
| ) | |

# IOWA DEPARTMENT OF REVENUE'S OBJECTION TO CONFIRMATION OF THE DEBTORS' CHAPTER 11 PLAN

The Iowa Department of Revenue (IDR) states as follows for its Objection to Confirmation of the Debtors' Chapter 11 Plan:

1. Nortel Networks, Inc., ("Nortel") and certain related entities (collectively with Nortel, "the Debtors") filed petitions under Chapter 11 of the Bankruptcy Code on January 14, 2009.

2. On March 26, 2010, the Debtors filed a Motion for Entry of an Order pursuant to 11 U.S.C. §§ 505(a) and 105 Determining Certain Tax Liabilities (the §505 Motion) asking the Court to determine that "items of gain or loss" resulting from certain property sales could be excluded from taxable income for 2009 and subsequent years until the proceeds were allocated among the various Debtors and related entities.

3. The Internal Revenue Service, the Illinois Department of Revenue, and the California Franchise Tax Board objected to the § 505 Motion. In addition, the IDR filed a response requesting that any decision with regard to the federal taxes apply equally to Iowa taxes. The Debtors withdrew the § 505 Motion on November 30, 2010.

4. On October 26, 2010, Nortel filed a 2009 Iowa corporation income tax return for

the tax year ending on December 31, 2009. The return was accompanied by a request for prompt determination pursuant to 11 U.S.C. § 505(b)(2).

5. On December 20, 2010, the IDR sent a letter notifying Nortel that the 2009 Iowa return was selected for examination. On May 26, 2011, the Debtors withdrew the request for prompt determination.

6. On September 25, 2013, Nortel sent a letter to the IDR requesting a Certificate of Tax Clearance with respect to 2012 taxes and any prior years "that would be impacted by [the] request." On October 16, 2013, the IDR sent a response to Nortel's accountants advising that it could not issue the clearance. The response noted outstanding issues concerning (a) allocation of the sale proceeds among the Debtors and related entries and (b) the appropriate tax year for reporting income from the sales. The undersigned sent a separate letter to Debtors' counsel on October 23, 2013, advising that the request for Certificate of Tax Clearance was premature.

7. Nortel responded to the IDR's letters on February 10, 2014, stating that the IRS had accepted the 2009 federal returns and that returns for subsequent years were not under audit. Furthermore, Nortel pledged to timely report any future adjustments to taxable income resulting from any IRS audit for 2010, 2011, or 2012.

8. Iowa Code § 422.33(1) imposes a tax on a corporation's "net income." In addition, Iowa Code § 422.33(4) imposes a "state alternative minimum tax" on the taxpayer's "state taxable income" after certain adjustments.

9. The term, "net income" is defined by Iowa Code § 422.35 as "taxable income before the net operating loss deduction, as properly computed for federal income tax purposes under the Internal Revenue Code," subject to certain adjustments. Thus, the Iowa corporation

income tax cannot be accurately determined without knowing the correct amount of the corporation's federal taxable income. Computation of Iowa alternative minimum tax is similarly dependent on federal taxable income.

10. Iowa Administrative Code § 701-52.3(4) requires taxpayers to file amended returns to report IRS adjustments:

> If it becomes known to the taxpayer that the amount of income reported to be federal net income or Iowa taxable income was erroneously stated on the Iowa return, or changed by Internal Revenue Service audit, or otherwise, the taxpayer shall file an amended Iowa return along with supporting schedules, to include the amended federal return and a copy of the federal revenue agent's report if applicable. A copy of the federal revenue agent's report and notification of final federal adjustments provided by the taxpayer will be acceptable in lieu of an amended return.

11. Paragraph VII(B)(2) at page 145 of the Disclosure Statement for the First Amended Joint Chapter 11 Plan filed on December 1, 2016, recognizes that prior sales of estate assets "will trigger income or gain recognition by the Debtors, in an amount based on the proportion of sale proceeds attributable to the Sales that is allocated to the Debtors." The paragraph further states that the "Debtors do not anticipate owing significant regular U.S. federal income tax with respect to the Sales for taxable years ending after the Initial Petition Date, aside from potential alternative minimum tax liability." Paragraph VII(B)(2) goes on to state that "the Debtors expect to incur some amount of [alternative minimum tax] resulting from its utilization of [net operating losses] to offset items of income and gain from the Sales that closed during 2009, 2010, and 2011."

12. Nortel has not filed any Iowa tax returns for 2013, 2014, or 2015. Furthermore, the IDR is uncertain whether Nortel might be required to amend its returns for 2009 through 2012 as the result of federal adjustments or resolution of the allocation dispute.

13. For the reasons stated above, Nortel may have Iowa tax liabilities for the years 2009 through 2017. Any such liabilities would be entitled to priority as administrative expenses under 11 U.S.C. §§ 503(b)(1)(B) and 507(a)(2).

14. The Debtors filed their First Amended Joint Chapter 11 Plan (the Plan) on December 1, 2016. The IDR objects to confirmation of the Plan for the following reasons:

a. Paragraphs 1.2, 2.1, and 11.8 might be interpreted to improperly set a bar date for filing or amending tax claims for post-petition periods. Bankruptcy Code § 503(b)(1)(D) states that "a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense." Furthermore, any deadline that denies the IDR sufficient to time to receive and review Nortel's returns or federal adjustments to those returns is unreasonable.

b. Paragraph 2.1 does not clearly provide for full payment of all post-petition tax liabilities as required by 11 U.S.C. § 1129(a)(9)(A).

c. Paragraphs 1.2, 7.12, and 11.5 of the Plan might be interpreted to improperly deny interest on post-petition tax claims. Interest on post-petition tax claims qualifies for administrative expense status to the same extent as the underlying tax liability. <u>United States of America v. Cranshaw (In re Allied Mechanical Services, Inc.)</u>, 885 F.2d. 837, 839 (11th Cir. 1989); <u>Untied States v. Flo-Lizer, Inc. (In re Flo-Lizer, Inc,)</u>, 916 F.2d 363, 366-67 (6th Cir. 1990); <u>United States v. Yellin (In re Weinstein)</u>, 272 F.3d 39 (1st Cir. 2001).

d. The Plan does not appear to include a reserve for post-petition state tax claims. Without a reserve for payment of the post-petition taxes, the Plan does not meet the

feasibility requirement imposed by 11 U.S.C. § 1129(a)(11).

15.    To resolve the objections noted in sub-paragraphs 14(a) through (c) above, the Debtors should insert language similar to the following:

> Notwithstanding any other provision in this Plan, including but not limited to paragraphs 1.2, 2.1, 7.12, 11.5, and 11.8, (a) no bar date shall not apply to governmental entities owed administrative taxes and they shall not be required to file an application, or proof of claim, requesting allowance as a condition to receiving payment in full pursuant paragraph 2.1, and (b) interest shall be paid on post-petition tax claims at the rate specified by applicable non-bankruptcy law.

16.    To resolve the objection noted in sub-paragraph 14(d) above, the Debtors should amend paragraph 15.5 of the Plan to clearly include a reserve for payment of post-petition taxes.

THEREFORE, the IDR asks the Court to deny confirmation of the Plan.

                IOWA DEPARTMENT OF REVENUE

                By: <u>/s/ John Waters – January 6, 2017</u>
                     JOHN WATERS, Attorney At Law
                     Iowa Department of Revenue
                     Collections Section
                     P.O. Box 10457
                     Des Moines, Iowa 50306
                     (515) 281-6427
                     Fax: (515) 281-0763

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the above document(s) was delivered to FedEx for next day delivery to the persons listed below at the addresses indicated on the 6th day of January 2017.

/s/ John Waters – January 6, 2017
JOHN WATERS

Copy To:

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Attn: James L. Bromley, Esq.
 Lisa M. Schweitzer, Esq.

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, 18th Floor
Wilmington, Delaware 19899
Attn: Derek C. Abbott, Esq.
 Andrew R. Remming, Esq.

Akin Grump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Attn: Fred S. Hodara, Esq
 David H. Botter, Esq.
 Brad M. Kahn, Esq.

Whiteford, Taylor and Preston LLP
The Renaissance Centre, Suite 500
405 North King Street
Wilmington, Delaware 19801
Attn: Christopher M. Samis, Esq.

Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, New York 10005
Attn: Albert A. Pisa, Esq.

Office of the United States Trustee
J. Caleb Boggs Federal Building
Room 2207, 844 N. King Street
Wilmington, DE 19801
Attn: Mark S. Kenney, Esq.