IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NORTEL NETWORKS, INC., *et al.,* | : | Case No. 09-10138 (KG) |
| | : | |
| Debtors. | : | **Hearing Date: 1/24/17 at 10:00 a.m.** |
| | : | **Objection Deadline: 1/9/17 at 4:00 p.m.** |

**UNITED STATES TRUSTEE'S LIMITED OBJECTION TO CONFIRMATION OF FIRST AMENDED JOINT CHAPTER 11 PLAN OF NORTEL NETWORKS, INC. AND CERTAIN OF ITS AFFILIATED ENTITIES (D.I. 17501)**

In support of his Limited Objection to Confirmation of the First Amended Joint Chapter 11 Plan of Nortel Networks, Inc. and Certain of its Affiliated Debtors (the "Plan"), Andrew R. Vara, Acting United States Trustee for Region 3 ("U.S. Trustee"), by his undersigned counsel, states as follows:

1. This Court has jurisdiction to hear this Limited Objection.

2. Pursuant to 28 U.S.C. Section 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has Apublic interest standing@ under 11 U.S.C. Section 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

3. In furtherance of his case supervisory responsibilities, as well as pursuant to 11 U.S.C. Section 307, the U.S. Trustee has standing to raise and be heard on this Limited Objection.

**BACKGROUND AND RELEVANT FACTS**

4. Debtor Nortel Networks, Inc. and all of the debtor Plan proponents except Nortel Networks (CALA), Inc. filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on January 14, 2009. Nortel Networks (CALA), Inc. filed a voluntary petition for relief under Chapter 11 on July 14, 2009, and its Chapter 11 case was ordered jointly administered with the debtor cases filed on January 14, 2009.

5. The U.S. Trustee appointed an Official Committee of Unsecured Creditors on January 26, 2009.

6. The Debtors filed the current draft of their Plan on December 1, 2016..

7. By order dated December 1, 2016, (D.I. 17516) this Court approved the Disclosure Statement with respect to the Plan.

8. The Plan contains release and exculpation provisions that are excessively broad in scope and include non-debtor third parties that are not otherwise entitled to such relief.

9. Plan Section 13.4 provides a release by the Debtors of the "SPSA Released Parties."

10. The term "SPSA Released Parties" is defined in Section 1.2 of the Plan as "each SPSA Releasor and each of their respective employees, officers, directors, agents, advisors, lawyers, successors and assigns and their directors and officers, both former and current, in their respective capacities as such. SPSA Releasor is in turn defined as "(i) the SPSA Parties and (ii) Participating Creditors," defined as "any creditor of the Global Debtors that is a party to the SPSA, or has delivered a Creditor Joinder or a Transferee Joinder."

11.     Plan Section 13.3 provides for releases by holders of claims and interests against the Debtors and third parties , providing in relevant part that the releases are binding not only on holders of claims and interests who have accepted the plan (whether by voting to accept it or by virtue of being unimpaired pursuant to Section 1126(f), but also on those "who are entitled to vote to accept or reject the Plan and abstain from voting and do not mark their ballots to indicate their refusal to grant the releases" provided in Plan Section 13.3.

12.     In addition to the foregoing releases, Plan Section 13.5 sets forth a broad exculpation provision:

> None of the Exculpated Parties shall have or incur any liability to any Entity for any act taken or omitted to be taken in connection with and subsequent to the commencement of the Chapter 11 Cases, the formulation, preparation, dissemination, implementation, solicitation of votes, confirmation or approval of the Plan or any compromises or settlements contained therein, the administration of the Plan or Distributions under the Plan, the Disclosure Statement and any ancillary documents related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; *provided*, *however*, the foregoing provisions of this Section 13.5 shall not affect the liability of any Exculpated Party that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, including, without limitation, fraud and criminal misconduct, and in all respects the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

13.     The term "Exculpated Party" is defined in Plan Section 1.2 as:

> each of (i) the Debtors, (ii) the Wind-Down Debtors, (iii) the U.S. Principal Officer; (iv) the Creditors' Committee, (v) the Bondholder Group, (vi) the NNC/NNL Notes Indenture Trustee, (vii) the NNCC Bonds Indenture Trustee, and with respect to each of the foregoing, (viii) any of their respective directors, officers, employees, members, attorneys, consultants, accountants, advisors, agents and other professionals (each acting solely in such capacity), and, collectively, all of them.

**ARGUMENT**

There are several ways in which the SPSA releases, the third party releases, and the exculpations set forth in the Plan are contrary to the standards set forth by this Court in *In re Tribune Company*, 464 B.R. 126 (Bankr. D. Del. 2011), *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011), and other applicable law, as detailed below.

**(1)   Excessively Broad SPSA Releases**

14.     The Plan provides releases by the Debtors and their estates of many non-debtor parties.  Pursuant to this Court's decisions in *Tribune*, and *Washington Mutual*, among others, the five factors set forth in *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del 1999) and *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 937-38 (Bankr. W. D. Mo. 1994) should be considered to determine whether, notwithstanding § 524(e) of the Code, a plan may provide for releases by debtors of non-debtor entities.  See *Tribune*, 464 B.R. at 186; *Washington Mutual*, 442 B.R. at 346; *In re Spansion, Inc.*, 426 B.R. 114, 142-43, n. 47 (Bankr. D. Del. 2010); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004). Those factors are as follows:

(a)   identity of interests between debtor and non-debtor releasee, so that a suit against the non-debtor will deplete the estate's resources (e.g., due to a debtor's indemnification of a non-debtor);

(b)   substantial contribution to the plan by non-debtor;

(c)   necessity of release to the reorganization;

(d)   overwhelming acceptance of plan and release by creditors; and

(e)   payment of all or substantially all of the claims of the creditors and interest holders under the plan.

*Tribune,* 464 B.R. at 186 (citing *Washington Mutual*, 442 B.R. at 346 (*citing* Zenith, 241 B.R. at 110)). "The factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness." *Tribune,* 464 B.R. at 186 (*citing Washington Mutual*, 442 B.R. at 346).

15. In these cases, neither the Plan nor the Disclosure Statement adequately address which if any of the *Zenith* factors are met for all of the parties who will receive releases from the Debtors under Plan Section 13.4. Absent a showing, and appropriate finding by the Court, that each of the proposed SPSA Released Parties has made a substantial contribution to the Plan,[1] and that the other elements of *Zenith* have been met, the releases given by the Debtors render the Plan unconfirmable.

16. The Debtors have the burden to establish whether the *Zenith* factors have been met as to each of the non-debtor entities who are beneficiaries of the SPSA Releases. Because an evidentiary predicate is necessary to approve the SPSA Debtor Releases, the U.S. Trustee reserves argument on this issue until the record at the confirmation hearing is closed.

### (2) Involuntary Third-Party Releases

17. The third-party releases in the Plan, which benefit the Debtors as well as numerous non-debtors, will be given not only by all holders of claims and interests who vote to accept the Plan or are presumed under Section 1126(f) to have accepted it, but also by holders of claims and interests who (i) are entitled to vote to accept or reject the plan. (ii) abstain from

---

[1] An example of a "substantial contribution" can be found in *Coram*, where this Court, after examining the *Zenith* factors, allowed the debtors to release noteholders who had contributed $56 million in funding to the plan, which funds allowed the debtors to repay in full all creditors other than the noteholders, as well as make a significant distribution to the debtors' shareholders. 315 B.R. at 335.

voting, and (iii) do not mark their ballots to indicate their refusal to grant the release provided in Plan Section 13.3.

18.     Some Courts in this District have determined that third party releases of non-debtors should be allowed provided that they are consensual.  *See In re Washington Mutual, Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011), *citing, inter alia, In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004)(holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party); *Zenith*, 241 B.R. at 92 (release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the plan); *In re Exide Techs.*, 303 B.R. 48, 74 (Bankr. D. Del. 2003)(approving releases which were binding only on creditors and equity holders who accepted the terms of the plan).

19.     In *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F.3d 203 (3d Cir. 2000), the Third Circuit surveyed cases from various circuits as to when, if ever, a non-consensual third party release is permissible.  The Court acknowledged that a number of circuits do not allow non-consensual releases under any circumstances.  *See id*. at 212.  Other circuits, the Court found, "have adopted a more flexible approach, albeit in the context of extraordinary cases," such as mass tort cases.  *See id.* at 212, *citing Securities and Exchange Commission v. Drexel Burnham Lambert Group, Inc. ( In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992); *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 640, 649 (2d Cir. 1988).  *See also*, *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141 (2d Cir. 2005)(third party release may be granted "only in rare cases").

20.     In *Continental Airlines*, the Third Circuit ultimately determined that the proposed releases in that case, which enjoined shareholder lawsuits against the debtors' directors and

officers, did "not pass muster under even the most flexible test for the validity of no-debtor releases." *Continental,* 203 F.3d at 214. Therefore, the Court determined that it "need not speculate on whether there are circumstances under which we might validate a non-consensual release that is both necessary and given in exchange for fair consideration." *Id.* at 214, n.11. However, the Court did describe the "hallmarks of permissible non-consensual releases" to be "fairness, necessity to the reorganization, and special factual findings to support these conclusions." *Id.* at 214.

21.     In this case, it appears that the Debtors have made a substantial effort to ensure that the third party releases are consensual, through affirmative consent by those who vote to accept the plan and constructive consent by holders of claims or interests who abstain from voting and fail to opt out of the third party releases. However, no safeguards have been implemented to ensure that parties who fail to submit ballots have in fact abstained from voting (and impliedly given constructive consent to the third party releases), as opposed to not having received ballots. Parties that have not received ballots (and the concomitant opportunity to vote on the Plan or to abstain from voting and to opt out of the third party releases) in the first place cannot be deemed to have consented to the third party releases; as to them, the third party releases are involuntary.

22.     Safeguards should be implemented to protect the rights of holders of claims or interests who have not received ballots. Although the entire universe of such holders cannot be ascertained with certainty, the balloting agent and the nominees for bond holders who hold their bonds in "street name" should provide reports identifying the holders of claims or interests whose solicitation materials were returned to either the balloting agent or the nominees (as the

case may be) as undeliverable. Such holders should not be deemed to have failed to opt out of the third-party releases, and should instead excluded from those releases.

### (3) Excessively Broad Exculpation Provision

23. Plan Section 13.5 provides an exculpation in favor of parties who are not estate fiduciaries (the Bondholder Group, as well as the NNC/NNL Notes Indenture Trustee and the NNCC Bonds Indenture Trustee (beyond any role the indenture trustees may have had as members of the Creditors' Committee)), and each such parties' respective directors, officers, employees, members, attorneys, consultants, accountants, advisors, agents and other professionals (each acting solely in such capacity).

24. As stated by the Court in *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011), an "exculpation clause must be limited to the *fiduciaries* who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers." *Id.* at 350-51 (emphasis added). The Court in *Tribune* stated agreement with the holding in *Washington Mutual* relating to exculpated parties, and held that the exculpation clause in *Tribune* "must exclude non-fiduciaries." *Id.* at 189, quoting *Washington Mutual,* 422 B.R. at 350-51. *Accord, In re PTL Holdings LLC,* 55 Bankr. Ct. Dec 206, 2011 Bankr. LEXIS 4436, *38 (Bankr. D. Del. Nov. 10, 2011)(Shannon, J.)(sustaining U.S. Trustee's objection to exculpation clause, stating that such clause "must be reeled in to include only those parties who have acted as estate fiduciaries and their professionals."), relying on, *inter alia, In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000).

25. The Plan's exculpation provision does not comply with the applicable case law set forth above, as it applies to parties who are not estate fiduciaries in these cases. The only parties who are eligible for exculpation in these cases are the Debtors, the Debtors' officers serving

during the Chapter 11 cases in their capacity as such, the official committees appointed in this case under Sections 1102 and 1114 and the members of those committees while acting in their capacity as committee members, and their respective attorneys, financial advisors and other professionals. *See, e.g., Washington Mutual,* 442 B.R. at 350-51; *Tribune,* 464 B.R. at 190. Members of unofficial committees and indenture trustees who were acting in any capacity other than their roles as members of an official committee, and those parties' respective officers, directors, affiliates, professionals and the like, are not estate fiduciaries and should not be exculpated.

26. The non-fiduciaries named as Exculpated Parties need not be included in the list of Exculpated Parties in order to be sheltered in the safe harbor of Section 1125(e). Provided that a factual record supporting such a finding is established, the Court may include a finding in its order confirming the Plan that those parties have participated in good faith and in compliance with the Bankruptcy Code and applicable non-bankruptcy law and regulations governing the solicitation of acceptance or rejection of the Plan. The Non-Fiduciaries are entitled to no further exculpation.

27. Unless the Plan's exculpation provision is amended so that it covers only fiduciaries of the Debtors' estates, the Plan should not be confirmed.

28. The U. S. Trustee reserves any and all rights, remedies and obligations found at law, equity or otherwise, to complement, supplement, augment, alter and/or modify this Limited Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds or take such other actions as may become apparent upon further factual discovery.

## CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court deny confirmation of the Plan except upon appropriate modifications consistent with this Objection, and grant such other relief as may be appropriate.

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**

Dated: January 9, 2017

BY: */s/ Mark S. Kenney*

Mark S. Kenney
Trial Attorney
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)