# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x
|  |  |  |
|---|---|---|
| *In re* | : | **Chapter 11** |
|  | : | **Case No. 09-10138 (KG)** |
|  | : | **(Jointly Administered)** |
| **NORTEL NETWORKS, INC., et al.,** | : |  |
|  | : | Hearing Date:  January 24, 2017 |
| **Debtors.**[1] | : | Related ECF Nos.:  17687, 17741 |

-----------------------------------------------------------x

**REPLY OF SOLUS ALTERNATIVE ASSET MANAGEMENT LP AND POINTSTATE CAPITAL LP WITH RESPECT TO (I) NNCC NOTEHOLDERS' STATEMENT CONCERNING PLAN AND SPSA AND OBJECTION TO ASSERTED FEES AND EXPENSES OF INDENTURE TRUSTEE AND (II) INDENTURE TRUSTEE'S RESPONSE TO FEE OBJECTION**

Solus Alternative Asset Management LP and PointState Capital LP (collectively, the "NNCC Noteholders"), in their capacities as holders of the 7.875% Notes issued by NNCC and NNL and guaranteed by NNL, submit this reply with respect to their Statement And Objection[2] and the Indenture Trustee's Response.[3]

1.      The NNCC Noteholders voted in favor of the Plan and agree with the Debtors and Creditors' Committee that their dispute with the Indenture Trustee concerning the Asserted Fees should not delay confirmation.[4]  The NNCC Noteholders submit this reply to

---

[1]      The Debtors, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769),Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

[2]      Statement Of Solus Alternative Asset Management LP And PointState Capital LP With Respect To (I) First Amended Joint Chapter 11 Plan Of Nortel Networks Inc. And Certain Of Its Affiliated Debtors And (II) Debtors' Motion For Entry Of An Order Pursuant To 11 U.S.C. §§ 105(a) And 363(b) And Federal Rule Of Bankruptcy Procedure 9019 Approving Settlement Agreement And Plan Support Agreement And Objection To Asserted Fees And Expenses Of Indenture Trustee [ECF No. 17687] (the "Statement And Objection").  Capitalized terms not defined herein have the meanings ascribed to them in the Statement And Objection.

[3]      Indenture Trustee Delaware Trust Company's (A) Response To Statement And Objection And (B) Joinder And Reservation Of Rights [ECF No. 17741] (the "Response").

[4]      See Debtors' Reply Br. [ECF No. 17731] at 36 (¶¶ 61, 62 (observing Fee Dispute "should not delay confirmation of the Plan")); Committee Reply. Br. [ECF No. 17737] at 11 & n. 4 ("The Committee

stress that the only issue before the Court at this juncture is the procedural question of whether the Proposed Fee Procedures should be implemented.  The Statement And Objection confirms the NNCC Noteholders' support for the Plan, articulates a detailed preliminary objection to the Asserted Fees of the Indenture Trustee (the "Fee Objection"), and outlines Proposed Fee Procedures.  The Proposed Fee Procedures are a mechanic for resolving the substantive issues presented by the Fee Objection that includes additional briefing and a requirement that the Asserted Fees be proven reasonable before the Indenture Trustee can exercise its charging lien on Plan distributions.  The Indenture Trustee's Response purports to address the NNCC Noteholders' challenges to the Asserted Fees and objects to the Proposed Fee Procedures. According to the Indenture Trustee, the Response and the Indenture Trustee's offer to submit its attorneys' time entries conclusively establish the reasonableness of $8 million in Asserted Fees and obviate the need for the Proposed Fee Procedures.[5]  The Indenture Trustee is wrong.

        2.       Because the NNCC Noteholders have objected to the Asserted Fees, the Indenture Trustee bears the burden of establishing their reasonableness.[6]  The Response does not carry that burden and instead contains the type of self-aggrandizing statements this Court has found insufficient for that purpose.[7]  And while the Indenture Trustee attempts to style this as a

---

believes that the issues raised by the NNCC Noteholders do not constitute an objection to confirmation of the Plan and should not in any way delay confirmation of the Plan.").

[5]    See Response at 2-3 (¶ 3) (arguing Court should find $8 million in Asserted Fees are "per se reasonable," offering to submit invoices, and arguing "[t]his process is familiar to all chapter 11 practitioners; it requires neither the briefing schedule nor the one-sided holdback that the Noteholders also request."); at 12 (¶ 23) ("[A] briefing schedule is not required because there is no legal issue to brief.").

[6]    See In re Worldwide Direct, Inc., 334 B.R. 112, 132 (D. Del. 2005) ("In awarding fees, the Court must decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant or otherwise unnecessary.  Where an opposing party lodges a sufficiently specific objection to an aspect of a fee award, the burden is on the party requesting the fees to justify the size of the award.").

[7]    See id., 334 B.R. at 133 (rejecting attorneys' testimony whether its fees were reasonable as "self serving" and concluding "many of the services rendered by [trustee counsel] merely duplicated services performed by counsel for the Committee."). Cf. id. at 123 (reviewing application for substantial contribution and noting "[b]ecause WTC is presumed to be acting in the interests of the Noteholders, it must introduce

$3.75 million dispute by claiming the Debtors have "agreed to pay $4.25 million of the Asserted Fees" (Response ¶ 5 & n. 6, ¶ 20), the Debtors have confirmed the Plan's provision for up to $4.25 million in reasonable and documented fees does not constitute a finding of reasonableness.[8]  The Indenture Trustee must establish that the entire $8 million was reasonable. It has not done so.

3.    Moreover, the Response raises factual issues that will require the development of an evidentiary record.[9]  The Response similarly raises legal issues that require further briefing, including the efficacy of the Indenture Trustee's defense that the NNCC Noteholders are estopped from challenging the Asserted Fees' reasonableness;[10] the implications

---

something more than self-serving statements regarding its involvement in the case in order to carry its burden of demonstrating that its services provided a substantial contribution to the estate.").

[8]    See Debtors' Reply at 36 (¶ 61 ("By agreeing to the fee reimbursement provision, the Debtors did not signal any judgment regarding the reasonableness of the fees incurred by the NNCC Bonds Indenture Trustee or its advisors.")).

[9]    Some examples include the Indenture Trustee's unsubstantiated assertions that (a) it was not until "the summer of 2016 …. [that] the Noteholders decided to get in the game" (Response ¶ 7); (b) "the Noteholders and their counsel leaned heavily on the Trustee and its professionals" (Response ¶ 6); (c) the NNCC Noteholders made "regular demands of the Trustee" and relied on its professionals "for assistance throughout these cases in order to refrain from becoming restricted" (Response ¶ 4); (d) "[f]or the last eight years, the Noteholders and their counsel were in regular contact with the Trustee's counsel regarding a wide range of issues" (Response ¶ 37); (e) the NNCC Noteholders benefited from its "work with the Committee's financial advisor" on behalf of the 7.875% Notes (Response ¶ 32); (f) the wide range of activities the Indenture Trustee decided to undertake that are set forth in the Response (see, e.g., ¶¶ 1, 6, 19, 37-38) all inured to the benefit of holders of the 7.875% Notes or otherwise were not duplicative of the Creditors' Committee's, Bondholder Committee's, or Debtors' efforts; (g) professional courtesies, e.g., thanking colleagues, are appropriately construed as invitations to incur significant fees (see Response ¶ 8 ("[T]he Noteholders and their counsel thanked the Trustee for its work and cooperation."); (h) the "Noteholders' counsel chose not to attend mediations in these cases specifically because the Trustee's counsel would be there" (Response ¶ 38); and (i) the NNCC Noteholders' counsel improperly "surrendered a par or better recovery at the bargaining table" when negotiating the Plan's treatment of the 7.875% Notes (Response ¶ 8).  The list goes on.

[10]    This Court has expressly rejected this argument.  See, e.g., In re Worldwide Direct, Inc., 334 B.R. at 128 (rejecting argument that noteholders were "barred" from objecting to reasonableness of indenture trustee's counsel's fees when they "never objected to [indenture trustee] serving on the Committee or serving as Committee co-chair …. urged [indenture trustee] to be active in the AT&T sale process and in objections to certain claims …. contacted [indenture trustee's counsel] for updates on the status of the case …. [and never told indenture trustee] its services were unnecessary;" noting "none of these factors prevents [the noteholders] (or the Court) from reviewing the reasonableness of the fees sought under the Indenture"); cf., Becker v. Bank of New York Mellon Trust Co., 172 F. Supp. 3d 777, 799 (E.D. Pa. 2016) (indenture provisions compensating trustee for "reasonable services" and providing for payment of its "reasonable

of the Indenture Trustee's failure to provide a budget, estimate, work plan, or fee update when approximately 90% of the 7.875% Notes have at all relevant times been held by two holders represented by their own counsel; the appropriateness of the Asserted Fees when the NNCC Noteholders' counsel fees from 2014 (when they appeared in the cases) through the Plan settlement they negotiated totaled approximately $700,000; and—importantly—the propriety of charging holders of "unique debt securities" (Response ¶¶ 7, 13) for all fees incurred as a member of a Creditors' Committee that had its own battery of first-tier lawyers.  According to the Response (¶¶ 2, 3, 23), indenture trustees can incur substantial fees sitting on creditors' committees and, among other things, attend meetings, participate in case aspects being handled by the creditors' committee and its counsel, and utilize the charging lien to recoup from the noteholders all fees and expenses—regardless of whether those activities directly impacted the noteholders or matters peculiar to their interests.  The law provides otherwise.[11]

      4.      These are substantive issues that are not currently before the Court.  The only question currently before the Court is the appropriateness of the Proposed Fee Procedures.

---

expenses and disbursements" did not mean that "the bondholders would compensate the Indenture Trustee for any services, expenses, or disbursements whatsoever").

[11]    See, e.g., In re Worldwide Direct, Inc., 334 B.R. at 131-132 ("While it was prudent of WTC to hire its own attorneys, it had an obligation to assure that the firm only did what was necessary to protect the Noteholders' interests;" accepting argument that indenture trustee "did not exercise the care required under the prudent person standard because it allowed duplication resulting in a reduced recovery for the Noteholders"); at 132 (noting with respect to asset sale and plan treatment that "[t]he Noteholders were in the same class and had the same interests as all other unsecured creditors …. The time records reveal an excessive amount of work on matters that were unnecessary or duplicative …. With the exception of the senior debt issue, the Noteholders' interests could be adequately represented by Committee counsel"); at 132-134 (disallowing substantial portion of counsel fees incurred by indenture trustee that served as committee co-chair for failure to satisfy indenture's reasonableness standard:  "[Counsel] attended almost every Committee meeting, performed such business-related tasks as interviewing prospective crisis managers, interviewing counsel in litigation against third parties and claims against the estate, and serving (in lieu of his client or any other Committee member) as a member of the Plan working group.  This he did regardless of whether the meeting or call impacted on the senior debt issue or matters peculiar to the Noteholders' interests."); In re General Homes Corp. FMGC, Inc., 143 B.R. 99, 103 (Bankr. S.D. Tex. 1992) ("The services provided by [indenture trustee] and its various counsel to the noteholders … in attending Committee meetings and in bringing in-house and outside counsel to meetings of the Committee, were not beneficial to the estate or its unsecured creditors, and arguably were not beneficial to the noteholders themselves.").

If adopted, they will provide a process for resolving substantive disputes in a manner that is consistent with this Court's practice of allowing for the development of a complete record.[12]  The Proposed Fee Procedures also prevent the Indenture Trustee from taking Plan distributions to satisfy its claims and then requiring both the NNCC Noteholders and the NNI estate—which has a reversionary interest in the Plan Fee Consideration ($4.25 million)—to pursue a refund.  That is precisely the tactical advantage the Indenture Trustee is trying to obtain by opposing the Proposed Fee Procedures.

5.    Lastly, because mediation has proven extremely effective in these cases, the NNCC Noteholders asked the Indenture Trustee to submit the dispute to the Honorable Joseph J. Farnan, Jr. (Ret.).  The Indenture Trustee flatly refuses to do so, preferring to litigate with the NNCC Noteholders and reserving the right to charge them for attendant fees and expenses.  Notwithstanding, the NNCC Noteholders intend to file a motion to compel mediation if and when the Court implements the Proposed Fee Procedures.

---

[12]    See In re Worldwide Direct, Inc., 334 B.R. at 123 (reviewing "affidavits, time records, depositions and various pleadings submitted by the parties to determine whether the services provided by WTC and its counsel conferred an actual and demonstrable benefit upon the estate and the creditors by fostering or enhancing the progress of the reorganization.").

## CONCLUSION

WHEREFORE, the NNCC Noteholders respectfully request that the Court (A) enter the Confirmation Order confirming the Plan, approving the SPSA, and containing the Proposed Fee Procedures; (B) sustain the Fee Objection; (C) following a briefing schedule agreed to by the Indenture Trustee and the NNCC Noteholders, enter the Trustee-Fee Approval Order awarding the Indenture Trustee only those fees and expenses that are determined to be allowable under the Indenture and applicable law; and (D) award such other, further relief as the Court deems appropriate.

Dated: Wilmington, Delaware
      January 20, 2017

Respectfully submitted,

*/s/ Joanne P. Pinckney*
_____

Joanne P. Pinckney, Esq. (DE No. 3344)
**PINCKNEY, WEIDINGER, URBAN & JOYCE LLC**
(302) 504 1497 (Telephone)
3711 Kennett Pike, Suite 210
Greenville, Delaware 19807

-and-

James C. Tecce (admitted pro hac vice)
Daniel S. Holzman (admitted pro hac vice)
**QUINN, EMANUEL, URQUHART & SULLIVAN LLP**
52 Madison Avenue, 22nd Floor
(212) 849-7000 (Telephone)
New York, New York  10010

*Counsel to Solus Alternative Asset*
*Management LP and PointState Capital LP*