```
                 IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF DELAWARE


IN RE:                        )    Case No. 09-10138(KG)
                              )    (Jointly Administered)
                              )
NORTEL NETWORKS, INC., et al.,)    Chapter 11
                              )
                              )    Courtroom 3
                              )    824 Market Street
          Debtors.            )    Wilmington, Delaware
                              )
                              )    January 24, 2017
                              )    10:00 a.m.



                     TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE JUDGE KEVIN GROSS
                 UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:                  Morris Nichols Arsht & Tunnell, LLP
                              BY: DEREK C. ABBOTT, ESQ.
                              BY: ANDREW R. REMMING, ESQ.
                              302-351-9200

                              Cleary Gottlieb Steen & Hamilton
                              BY: JAMES BROMLEY, ESQ.
                              BY: JEFFREY ROSENTHAL, ESQ.
                              BY: LISA SCHWEITZER, ESQ.
                              BY: BEN BELLER, ESQ.
                              BY: PHILIP CANTWELL, ESQ.
                              BY: ANGELA WU, ESQ.
                              BY: RICK D'AMATO, ESQ.
                              BY: ASHLEY GRAHAM, ESQ.
                              212-225-2000

ECRO:                         GINGER MACE

Transcription Service:        DIAZ TRANSCRIPTION SERVICES
                              331 Schuylkill Street
                              Harrisburg, Pennsylvania 17110
                              (717) 233-6664
                              www.diaztranscription.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

APPEARANCES:
 (Continued)

For Official Creditor's
Committee:                      Akin Gump Strauss Hauer & Feld
                                BY: DAVID BOTTER, ESQ.
                                BY: BRAD KAHN, ESQ.
                                BY: ABID QURESHI, ESQ.
                                One Bryant Park
                                Bank of America Tower
                                New York, NY  10036
                                212-872-1000

                                Whiteford Taylor Preston, LLP
                                BY: CHRISTOPHER SAMIS, ESQ.
                                405 North King Street
                                Wilmington, DE  19801
                                302-357-3266

For the PBGC:                   Pension Benefit Guaranty Corp.
                                BY: VINCENT M. MURRELL, ESQ.
                                1200 K Street, N.W.
                                Washington, DC 20005
                                202-326-4020

For the EMEA Debtors:           Hughes Hubbard & Reed
                                BY: GABRIELLE GLEMANN, ESQ.
                                BY: CHARLES HUBERTY, ESQ.
                                One Battery Park Plaza
                                New York, NY  10004-1482
                                212-837-6000

                                Young Conaway Stargatt &
                                Taylor LLP
                                BY: JAIME CHAPMAN, ESQ.
                                Rodney Square
                                1000 North King Street
                                Wilmington, DE  19801
                                302-571-5030

For SNMP Research:              Cole Schotz Meisel Forman &
                                Leonard, P.A.
                                BY: PATRICK REILLY, ESQ.
                                BY: NORMAN PERNICK, ESQ.
                                500 Delaware Ave., #1410
                                Wilmington, DE  19801
                                302 652-3131

APPEARANCES:
 (Continued)

For Joint Alternative Asset        Quinn Emanuel Urquhart &
Management:                        Sullivan
                                   BY: JAMES C. TEECE, ESQ.
                                   51 Madison Avenue, 22nd Fl.
                                   New York, NY  10010
                                   212-849-7000

For U.K. Pension Claimants:        Bayard, P.C.
                                   BY: SARA BUSSIERE, ESQ.
                                   222 Delaware Avenue, Suite 200
                                   Wilmington, DE  19899
                                   302-655-5000

                                   Willkie Farr & Gallagher, P.C.
                                   BY: BRIAN O'CONNOR, ESQ.
                                   BY: ANDREW HANRAHAN, ESQ.
                                   787 Seventh Avenue
                                   New York, NY  10019
                                   212-728-8200

For Ad Hoc Bondholder Group:       Milbank Tweed Hadley & McCloy
                                   BY: ANDREW LEBLANC, ESQ.
                                   BY: NICK BASSETT, ESQ.
                                   2029 Century Park East
                                   33rd Floor
                                   Los Angeles, CA  90067
                                   424-386-4000

                                   Pachulski Stang Ziehl & Jones
                                   BY: PETER KEANE, ESQ.
                                   919 N. Market St., #1700
                                   Wilmington, DE  19801
                                   302-652-2100

For the Monitor/CAD Debtors:       Allen & Overy
                                   BY: KEN COLEMAN, ESQ.
                                   BY: JOSEPH BADTKE-BERKOW, ESQ.
                                   1221 Avenue of the Americas
                                   New York, NY  10020
                                   212-610-6300

For Nortel Trade Class             Fox Rothschild
Consortium:                        BY: JEFFREY SCHLERF, ESQ.
                                   919 N. Market St., Suite 300
                                   Wilmington, DE  19899
                                   302-654-7444

APPEARANCES:
 (Continued)

                              BROWN RUDNICK
                              BY: STEVEN POHL, ESQ.
                              BY: CHRISTOPHER FLOYD, ESQ.
                              One Financial Center
                              Boston, MA  02111
                              617-856-8200

For the Monitor:              Buchanan Ingersoll & Rooney,PC
                              BY: KATHLEEN MURPHY, ESQ.
                              919 N. Market St., Ste. 1500
                              Wilmington, DE  19801-3046
                              302-552-4214

For NNCC Trustee:             Morris James, LLP
                              BY: STEPHEN MILLER, ESQ.
                              500 Delaware Avenue
                              Suite 1500
                              Wilmington, DE  19899
                              302-888-6959

                              Patterson Belknap
                              BY: DANIEL LOWENTHAL, ESQ.
                              1133 Avenue of the Americas
                              New York, NY  10036
                              212-336-2000

For U.S. Trustee:             U.S. Trustee
                              BY: MARK KENNEY, ESQ.
                              844 King Street, Suite 2207
                              Wilmington, DE  19801
                              302-573-6565

For Stephen Taylor            Skadden Arps Slate, Meagher &
Conflicts Administrator:      Flom
                              BY: MATTHEW BEEBE, ESQ.
                              BY: ROBERT WEBER, ESQ.
                              BY: SUSAN SALTZSTEIN, ESQ.
                              One Rodney Square
                              920 North King Street
                              Wilmington, DE  19801
                              302-651-3000

```
APPEARANCES:
 (Continued)

For Solus Alternative Asset:    Pinckney Weidinger Urban &
                                Joyce
                                BY: JOANNE PINCKNEY, ESQ.
                                1220 North Market Street
                                Wilmington, DE  19801
                                (302) 504-1499

For the Bank of New             Duane Morris, LLP
York Mellon:                    BY: MICHAEL LASTOWSKI, ESQ.
                                222 Delaware Avenue
                                Suite 1600
                                Wilmington, DE  19801-1659
                                (302) 657-4928

                                Tannenbaum Helpern Syracuse &
                                Hirschtritt
                                BY: MICHAEL RIELA, ESQ.
                                900 Third Avenue
                                New York, NY 10022
                                212-508-6700

For CCC:                        DLA Piper
                                BY: TIMOTHY HOEFFNER, ESQ.
                                1251 Avenue of the Americas
                                New York, NY 10020-1104
                                212-335-43841

TELEPHONIC APPEARANCES:

For U.K. Pension Trust:         Willkie Farr & Gallagher, P.C.
                                BY: MARC ABRAMS, ESQ.
                                212-728-8000

For Joint Administrators:       Herbert Smith
                                BY: PHILLIPI LIS, ESQ.
                                302-571-6710
                                BY: KEVIN PULLEN, ESQ.
                                302-571-6710

                                Hughes Hubbard & Reed, LLP
                                BY: CAROLINE BEAUDRIES, ESQ.
                                BY: DEREK ADLER, ESQ.
                                212-837-6000
```

TELEPHONIC APPEARANCES:
(Continued)

                                Ernest & Young, LLP
                                BY: DAN MINDEL, ESQ.
                                724-321-1296


                                BY: STEPHEN HARRIS, ESQ.
                                BY: JO HEWITT, ESQ.
                                302-571-6710

For Ad Hoc Bondholder Group:    Milbank Tweed Hadley & McCloy
                                BY: ERIC WEISS, ESQ.
                                212-530-5420

For Official Creditor's         Akin Gump Strauss Hauer & Feld
Committee:                      BY: ROBERT JOHNSON, ESQ.
                                212-872-1000

For Contrarian Capital          Contrarian Capital Management
Management:                     BY: KIMBERLY GLANIS, ESQ.
                                203-862-8250

For Law Debenture Trust         Patterson Belknap
Company of New York:            BY: BRIAN GUINEY, ESQ.
                                212-336-2305

For Nortel Trade Class          Brown Rudnick
Consortium:                     BY: CHRISTOPHER FLOYD, ESQ.
                                617-856-8200

For Interested Party,           Reorg Research, Inc.
Reorg Research, Inc.:           BY: JASON B. SANJANA, ESQ.
                                212-588-8890

For Interested Party,           Dow Jones & Co.
Dow Jones:                      BY: PEG A. BRICKLEY, ESQ.
                                215-482-0953

For Interested Party,           Huron Consulting Group
Nortel Networks:                BY: COLEY BROWN, ESQ.
                                312-880-5643

For SNMP:                       Cole Schotz, P.C.
                                BY: DAVID DEAN, ESQ.
                                410-528-2972

For Interested Party,           Fortang Consulting, LLC

TELEPHONIC APPEARANCES:
 (Continued)

| | |
|---|---|
| Chaim Fortang: | BY: CHAIM FORTANG, ESQ. |
| | 914-925-3410 |
| | |
| For Interested party, | DLA Piper US, LLP |
| Canadian Creditors Committee: | BY: SELINDA A. MELNIK, ESQ. |
| | 302-357-5305 |
| | |
| For Creditor, Liquidity | Andrews Kurth, LLP |
| Solution: | BY: JEREMY RECKMEYER, ESQ. |
| | 212-850-2851 |
| | |
| For Creditor, Matt Doheny: | HSBC Bank |
| | BY: JONATHAN REHM, ESQ. |
| | 212-525-0875 |
| | |
| For Interested Party, | Skadden Arps Slate Meagher & |
| Stephen Taylor, Conflicts | Flom (New York) |
| Administrator | BY: ABIGAIL SHEEHAN, ESQ. |
| | 212-735-3579 |
| | |
| For Interested Party, | Tory's LLP |
| Nortel Networks: | BY: ADAM S. STAVENS, ESQ. |
| | 416-865-7333 |
| | |
| For Debtor, Nortel Networks: | Cleary Gottlieb Steen & |
| | Hamilton |
| | BY: MARGOT GLANIS, ESQ. |
| | 212-225-2386 |
| | |
| For Real Party In Interest, | Barclays |
| Barclays: | BY: ASHUTOSH HABBU, ESQ. |
| | 212-412-1316 |
| For Interested Party, | Merger Market |
| Debtwire: | BY: PATRICK HOLOHAN, ESQ. |
| | 656-412-5336 |
| | |
| For Interested Party, CCC: | CCC, Inc. |
| | BY: ROBERT HOME, ESQ. |
| | 404-374-5277 |
| | |
| For Interested Party, | Silverport Capital, LP |
| Silverport Capital | BY: TIMOTHY LAVELLE, ESA. |
| | 203-542-4230 |

```
TELEPHONIC APPEARANCES:
 (Continued)

For Interested Party,          Faralion Capital Management
Faralion Capital Management:   BY: MICHAEL G. LINN, ESQ.
                               415-421-2132


For Interested Party,          Cantor Fitzgerald
Cantor Fitzgerald:             BY: ANDREW M. THAU, ESQ.
                               212-915-1232


For Interested Party, UK       Hogan Lovells US, LLP
Pension Trust, Limited:        BY: JOHN TILMAN, ESQ.
                               414-659-2733


For Interested Party,          Bank of America
Bank of America:               BY: MICHAEL J. WALSH, ESQ.
                               646-855-8154


For Interested Party,          Bloomberg, LP
Bloomberg, LP:                 BY: JULIA M. WINTERS, ESQ.
                               212-617-6592


For Creditor, Official         Cassels Brock & Blackwell, LLP
Committee of Unsecured         BY: MICHAEL J. WUNDER, ESQ.
Creditors:                     416-860-6484
```

1  WILMINGTON, DELAWARE, TUESDAY, JANUARY 24, 2017, 10:09 A.M.

2         THE CLERK:  Please rise.

3         THE COURT:  Good morning, everyone.  Thank you.

4  You may be seated.  And we'll just wait for Justice

5  Newbould.

6         MR. ABBOTT:  Good morning, Your Honor.

7         THE COURT:  Good morning, Mr. Abbott.

8         JUSTICE NEWBOULD:  Good morning, Judge Gross.

9         THE COURT:  Good morning.  We're ready to begin

10  here.  Mr. Abbott was going to --

11         JUSTICE NEWBOULD:  Just -- we're having trouble

12  hearing you.

13         THE COURT:  Oh.  Any better?

14         JUSTICE NEWBOULD:  Yes.

15         THE COURT:  Okay.  I'll speak into the mic more

16  thoughtfully.

17         JUSTICE NEWBOULD:  All right.  I think we've

18  agreed, Judge Gross, that the Canadian proceedings will

19  start and then your proceedings will follow?

20         THE COURT:  That's right.  Mr. Abbott is standing

21  at the podium and maybe has something to address.

22         MR. ABBOTT:  Your Honor, Mr. Justice Newbould,

23  Judge Gross, Derek Abbott from Morris Nichols.  I was just

24  wanting to confirm that we expected that was likely going to

25  be the course of action, so I'll cede the podium, and when

1    the Canadian proceedings are concluded, Ms. Schweitzer will

2    start the Debtors' presentation here.

3              THE COURT:  All right.  Thank you, Mr. Abbott.

4              JUSTICE NEWBOULD:  Very well.

5              THE COURT:  Good.

6              M2. ZARNETT:  Good morning, Justice Newbould.

7              JUSTICE NEWBOULD:  Good morning.

8              M2. ZARNETT:  Judge Gross.

9              THE COURT:  Good morning.

10             M2. ZARNETT:  Benjamin Zarnett for the Monitor and

11   Canadian debtors.

12             The Canadian aspect of this matter is a Motion for

13   Sanction of the Canadian Debtors' Plan of Compromise and

14   Arrangements seeking the Order that's at tab 4 of our Motion

15   Record, and for an Order for the Release of the Escrowed

16   Sale Proceeds for the Canadian Debtors, the EMEA Debtors,

17   and the U.S. Debtors.  That's the Order at tab 5 of the

18   Motion Record.

19             The Plan of which we seek Sanction found at tab 2A

20   of the Motion Record gives effect to the Settlement and Plan

21   Support Agreement -- the SPSA -- which was entered into in

22   October of 2006 by which the Estates and the Major

23   Stakeholders have substantially resolved the issues that

24   have been plaguing Nortel's insolvency and delaying the

25   distribution of funds to Creditors, and from the Canadian

1    perspective, it provides for the release of more than $4.1

2    billion for the Canadian Estate for distribution to its

3    Creditors.

4              I wanted to touch very briefly on the major terms

5    of the SPSA, the major terms of the Plan, simply to put

6    those matters in perspective and deal with the issue that

7    has been raised about this Plan.

8              The major terms of the SPSA are first to resolve

9    the Allocation dispute, providing for 57.1 percent of the

10   proceeds that have been held to go to the Canadian Estate,

11   as I mentioned, in excess of $4.1 billion.  It also resolves

12   material claims against the Canadian Estate, which have been

13   the subject of proceedings here and in the U.S. Court, and

14   it provides for releases among the Estates which frees up

15   other proceeds which have been realized on Canadian assets

16   but had been subject to some uncertainty prior to that, and

17   it provides as a condition that the Plan be sanctioned, the

18   Canadian Plan be sanctioned by this Court and the U.S.

19   Court, Judge Gross, Sanction the U.S. Plan that you'll be

20   hearing about after we're done here.

21             Now, the Plan itself is not only a condition of

22   the SPSA, it is the method by which the long-awaited funds

23   for creditors will come into the Canadian Estate and flow

24   out to Creditors.  That plan at tab 2A of the Motion Record

25   comes before the Court endorsed by overwhelming majorities

1   of Creditors, 99.97 percent in number, 99.24 percent by

2   value.  The Plan provides for three priority payments.  All

3   have priority treatments under law and under prior Orders.

4   There are two payments to NNI in the United States, the

5   balance of -- it's essentially a Settlement of obligations

6   that arose post-filing but sharing of transaction expenses,

7   and the Plan provides -- preserves the right of former

8   employees who were to get a $3,000 payment each, which has

9   been paid to most of them, but 26 haven't yet been located.

10  For those, it preserves their rights.

11          JUSTICE NEWBOULD:  Mr. Zarnett, before you go

12  further, Mr. Armstrong, are the people from Calgary hooked

13  in right now by telephone?

14          MR. ARMSTRONG:  I believe they are, Your Honor,

15  but perhaps they want to confirm that.

16          THE CLERK:  Calgary, are you here?

17          MR. MCAVOY:  Yes, I am, Greg McAvoy here.

18          JUSTICE NEWBOULD:  And is the other Objector also

19  there?

20          MS. HOLLEY:  I am.

21          JUSTICE NEWBOULD:  Thank you very much.

22          M2. ZARNETT:  Thank you, Your Honor.

23          Beyond that, beyond those priority payments, and

24  for the vast bulk of the funds, this is a simple *pro rata*

25  plan.  Every Creditor shares *pro rata* and *pari passu*

1  according to their entitlements regardless of whether

2  they're former employees, pensioners, bondholders, trade

3  creditors, long-them disability beneficiaries.  That's

4  paragraph 6.3 of the Plan.  And that is consistent with the

5  SPSA under which the parties agreed the Creditors would be

6  treated ratably in all jurisdictions.

7          The estimated recoveries for Canadian Creditors

8  are Canadian 45 to 49 cents on the dollar, or U.S., 41.5 to

9  45 cents, depending on what currency their Claims are

10 denominated in.  Nothing is paid to shareholders consistent

11 with the fact that Creditors are not receiving 100 cents on

12 the dollar, and there is no Post-Petition Interest so

13 Creditors maintain the benefit of their original positions

14 without those positions being changed by preferential

15 accrual of interest in favor of some Creditors.

16          The Plan, Your Honor, contemplates substantive

17 consolidation of the Canadian Debtors.  All their assets are

18 rolled together.  All of their Claims against them will get

19 the same percentage payments.  In the Factum that we filed

20 paragraphs 89 to 101, we set out the four reasons why that

21 is appropriate here, and if you have any questions about

22 that, I'll leave that for you.

23          The Plan and the Sanction Order contemplate

24 capping the Reserves for Claims that have not yet been

25 finally resolved, and those are set out in the Monitor's

1   report.  That will allow the certainly necessary to effect

2   distributions because we know those Claims won't be able to

3   exceed those amounts, and we're not aware of any objection

4   to that.

5         JUSTICE NEWBOULD:  Have all those Claims been

6   served with the material?

7         M2. ZARNETT:  Yes.

8         JUSTICE NEWBOULD:  Thank you.

9         M2. ZARNETT:  Now, Your Honor is well aware of the

10  test for Plan Sanction, which we set out in our Factum in

11  paragraph 36.  Compliance with statutory requirements --

12  there's no issue about that.  Nothing has been done that's

13  not authorized by the CCAA or any Order.  There's been

14  strict compliance with all prior Orders.  There's no doubt

15  about that.  And of course, the third requirement is the

16  Plan be fair and reasonable, and we discussed that in the

17  Factum in paragraphs 48 to 60, but here, there are really

18  three overriding considerations that go to fairness and

19  reasonableness.  The first is the vote, which is a power

20  endorsement of fairness.  Here, the Canadian Airlines case,

21  among others, which we cite in paragraph 51 of our Factum,

22  talks about how votes are to be interpreted.  Here, the

23  Creditors have sent a very strong message that they're

24  ready, more than ready, for the overdue distributions that

25  the Plan will provide.

1          JUSTICE NEWBOULD:  Is it fair to say that the role

2    of the vote in considering a Plan of Compromise and

3    Arrangement is essentially the same role that the vote in

4    the Shareholders' Reorganization would play?  It's to be

5    taken without strong fact or completely binding?  Is that

6    fair?

7          M2. ZARNETT:  Exactly.  Second, this is

8    essentially a *pro rata pari passu* Plan in which all

9    creditors are treated equally by their recognized

10   entitlements that is the hallmark of fairness in an

11   insolvency.  In the Decision that this Court rendered and

12   then the Court of Appeals affirmed about Post-Petition

13   Interest, both Courts, this Court and the Court of Appeals,

14   stressed the *pari passu* principle as a fundamental tenet of

15   insolvency that is rooted in fairness, and in fact, the

16   application of that principle has advanced the interests of

17   Creditors here by preventing post-filing inequality from the

18   accrual of interest among other benefits of the *pari passu*

19   rule, but *pari passu pro rata* ratable according to

20   entitlements is fairness in the insolvency sets.

21          And the third is the need for this Plan compared

22   to alternatives.  The Creditors need this Plan.  They need

23   it in order for the distributions to take place in an

24   insolvency that is going on for too long.

25          Now, the two Objectors against that backdrop, Ms.

1  McAvoy and Ms. Holley, complain that the Plan is not fair

2  and reasonable, and the submissions that I make that follow

3  do not in any way detract from the sympathy that the Monitor

4  feels for all Creditors including the LTD Objectors, Mr.

5  McAvoy and Ms. Holley, whose entitlements are not being

6  completely and who suffer hardship due to Nortel's

7  insolvency.  However, that Objection does not support the

8  conclusion that the Plan is not fair and reasonable just

9  from the perspective of all Creditors, and that's so for the

10  following reasons.

11        The first is that at its heart, the LTD Objectors

12  complain although they're being treated equally with other

13  Creditors, their complaint essentially is that they should

14  be treated better than other Creditors because their needs

15  are greater, and in my submission, that is not germane to

16  the fairness analysis under the CCAA.  The CCAA is a statute

17  for Creditors.  Creditors qualify as Creditors because they

18  have entitlements.  They vote according to the size of their

19  entitlements, and the CCAA, like all insolvency regimes, is

20  predicated on the *pari passu* principle, which treats

21  creditors ratably by entitlement.  Justice Morawetz in the

22  Decision in this prior proceeding in this case quoted at

23  paragraph 63 of the Factum draws the distinction between

24  entitlement, which is the appropriate measure of fairness,

25  and relative need, which in other contexts of course may be

1  important but in this context cannot serve as a measure in

2  insolvencies.  So the LTD objectors are treated equally

3  according to their entitlements with all other Creditors

4  therefore being treated fairly.

5         Second, the LTD Beneficiaries including the LTD

6  Objectors have a representative, Ms. Kennedy, who was

7  appointed by Court Order from almost the outset of these

8  proceedings.  As my friend Mr. Zigler's Factum explains, and

9  I believe he'll elaborate on, the representative has

10  throughout sought to protect the interests of all the LTD

11  Beneficiaries and has obtained various terms, various

12  payments throughout the proceed with a view to partially

13  ameliorating the hardship of Nortel's insolvency.

14         Now, the structure of the CCAA and of that Order

15  described in paragraphs 66 and 67 of the Factum is that it

16  binds the Beneficiaries including on the Compromise of

17  Claims.  The representative supported the SPSA and supported

18  the Plan -- supports the Plan, and that is an important

19  measure of fairness because that representative has in mind

20  the interests of all LTD Beneficiaries, and therefore her

21  endorsement is an important indicator of fairness.

22         The third point is that the treatment in the Plan,

23  *pari passu* treatment, not priority treatment, has already

24  been resolved by a prior Order of this Court, which put into

25  place an agreement that was entered into, and that's

1   discussed in paragraph 33 of the Factum and also paragraphs

2   71 to 72.  And in the context of a dispute that was ongoing

3   about priorities or fairness categories of employee-related

4   Claims including Claims of people with entitlements to long-

5   term disability benefits, an agreement was made.  Certain

6   payments were agreed to, and one of the terms that was

7   agreed to was that henceforth *pari passu* treatment would be

8   provided for all LTD Claims.  No priority will be claimed

9   and no Plan could be approved that didn't give them *pari*

10  *passu* treatment.  The Agreement says that.  The Order says

11  that.  The provisions are recorded in the Factum.  That

12  Order was appealed.  The Appeal was sought unsuccessfully.

13  It was denied.  The Plan provides the very *pari passu*

14  treatment that that Order requires.  That Order cannot be

15  reconsidered.  Cited by the Objectors in their written

16  material was this Court's Reconsideration of the Allocation

17  Decision.  Reconsideration of the Allocation Decision took

18  place on principles that applied before the Order has been

19  taken out.  Here, the Order has been taken out, appealed

20  unsuccessfully, and seven years have passed.  By submission,

21  it's simply not open to Reconsideration.  That's addressed

22  in the Factum, paragraphs 77 to 79.

23          The last point that I wanted to address, Your

24  Honor, was the --

25          JUSTICE NEWBOULD:  It's fair to say that the

1    Reconsideration of the Allocation Decision wasn't based on

2    any Reconsideration of any of the principles whatsoever

3    established in the Decision.  It was effectively mostly

4    denied, and Judge Gross and I clarified what our intent was

5    and saying something that we probably hadn't said quite

6    accurately, that it really wasn't reconsidering the whole

7    issue at all.

8            M2. ZARNETT:  No.  Even if one applied the narrow

9    test for Reconsideration that the Court articulated in the

10   Allocation Decision, which is relevant to the sorts of

11   things that Your Honor has said, that the March 2010 Order

12   of Justice Morawetz could not be -- could not meet that as

13   for Reconsideration.  There's nothing unclear about that

14   Order.  But here, all the more so, the circumstances are

15   different.

16           Now, the last point that I wanted to discuss with

17   Your Honor was the Charter, the arguments that have been

18   made about the effect of the Charter here, and I want to

19   make several points, and Mr. Zigler is going to address this

20   as well.

21           The first --

22           JUSTICE NEWBOULD:  May I say I don't want

23   repetition because we've got two hearings today, and we want

24   to get through this, and you can be brief.  I think I'd

25   really prefer to hear the Objectors and what their arguments

1  are, but I've read the Factum, I've read Mr. Zigler's Facta.

2  I know -- I understand what you're going to say.

3          M2. ZARNETT:  Yes.  Then I'm happy to leave it to

4  reply after the issue has been framed that way by Your

5  Honor, and subject to that and subject to any questions that

6  you have about any of the mechanics of the Orders that --

7          JUSTICE NEWBOULD:  Thank you very much, Mr.

8  Zarnett.

9          MR. ZIGLER:  Good morning, Your Honor.  Good

10  morning, Judge Gross.

11          THE COURT:  Good morning.

12          MR. ZIGLER:  I'm here today --

13          JUSTICE NEWBOULD:  I did that just to make sure

14  that you're not sitting there with your eyes closed.

15                        (Laughter)

16          THE COURT:  No, I'm too interested in what's going

17  on in Canada.

18          MR. ZIGLER:  I'm here this morning on behalf of

19  the Court-appointed representatives for the former employees

20  and for the disabled employees.  I'm not here for the entire

21  CCC but I've been asked by my co-counsel in the CCC to

22  indicate obviously they supported the Settlement, part of a

23  99.97 percent.  Mr. Stikeman, Mr. Wadsworth and I think Mr.

24  Urbach are here.  And essentially, we're talking about the

25  interests of close to 20,000 Canadian employees, 14,000 of

1  them in the former employee category, people who are

2  pensioners, who are surviving spouses of deceased employees

3  who are pensions, people who've lost their jobs, and of

4  course, the 350 disabled employees.  I think it's fair to

5  say that they've all suffered extensively in terms of the

6  economic hardship that's been brought about by the

7  insolvency.  No one has a monopoly on suffering here.  There

8  are pensioners whose small pensions were cut as much as 40

9  percent.  They're unemployed people who didn't find jobs.

10 They're surviving spouses of deceased employees who are

11 dependent on unfunded payments of Nortel, and they're

12 disabled employees, and the disabled employees are in a

13 sticky position, same as all of these, but all of them have

14 come together to support this Plan and they've come to

15 support this Plan because in the circumstances of this case,

16 it is what is in the best interests of all these employees.

17       JUSTICE NEWBOULD:  Do you have in your Factum the

18 size of the employees who fall within the disabled group?

19       MR. ZIGLER:  I don't, but I have it in my Motion

20 Record.  There is a report from the actuaries, Mercers, and

21 in the actuarial report, there is data on the number of

22 pensioners and the number of disabled employees and so on.

23 If you go to my record at page 202, it will show that they

24 have 344 disabled employees with income benefits.  Those are

25 the ones who are entitled to the disability insurance

1  income.   There are about 351 with life insurance.  I don't

2  know why there's a distinction, but that's the approximate

3  amount.   The number of pensioners that are on the previous

4  page and the number of former employees are on other pages,

5  but that gives you a handle on the number.

6              I think it's fair to say that Ms. Kennedy

7  represents the majority of them.  She and her Committee

8  didn't just make this decision -- at the time of the

9  Settlement Agreement, there were meetings across Canada that

10  happened because the Pension Administrator wanted to meet

11  with all the pensioners and employees.  There were mass

12  consultations on this.

13              JUSTICE NEWBOULD:  Mr. Zigler, if I look at page

14  202 --

15              MR. ZIGLER:  Yes?

16              JUSTICE NEWBOULD:  -- there are 344 LTD employees

17  with income benefits, there are 349 with medical-dental

18  benefits and 351 with basic life insurance.  I take it this

19  is not cumulative --

20              MR. ZIGLER:  No.

21              JUSTICE NEWBOULD:  -- but rather --

22              MR. ZIGLER:  It's the same population largely.

23              JUSTICE NEWBOULD:  Beg your pardon?

24              MR. ZIGLER:  It's the same population.

25              JUSTICE NEWBOULD:  Right, with just a couple

1    numbers different from --

2         MR. ZIGLER:  Correct.  But ballpark, we've been

3    talking about 350 disabled people.  The Monitors identified

4    about 14,000 former employees.  Mr. Wadsworth represents

5    about 600 of them.  And then there's employees whose

6    positions were transferred as part of the sale of the Nortel

7    assets but who still had some entitlements, and they are

8    represented by yet another group.  But all of these people

9    have suffered losses, and what in effect is happening here

10   is that they've taken a very pragmatic approach to put an

11   end to this litigation after six years.  They took a

12   position in the Allocation Litigation which was an

13   alternative position but largely a successfully one for *pro

14   rata* distribution and have effected probably one of the

15   better resolutions for employees in the insolvency.  That

16   would take away all the hurt, and it doesn't take away all

17   the shortfall, but the Court-appointed representatives

18   certainly went to bat for their constituencies, and Ms.

19   Kennedy, the disabled representative -- and I set this out

20   in my Factum, went the extra mile to do try and do all sorts

21   of other things.  We include -- and Mr. Zarnett alluded to

22   it, but they include getting favorable tax treatment for the

23   loss of the disability payments and the health payments so

24   that they're not taxed.  The disability payments when they

25   were paid on a monthly basis by Nortel on an uninsured basis

1    were taxed so in essence these employees are receiving some

2    lump-sum payments tax-free thanks to Ms. Kennedy.  She's

3    worked for several agencies and provincial agencies to

4    assist these disabled employees to get health coverage out

5    of public plans, out of the CPP disability pension plan, and

6    in fact worked with the Lineup Administrator of the Nortel

7    Pension Plan in the provinces where it's permitted to allow

8    prepayments before people have reached retirement age to

9    have access to some of their pension money because all of

10   the disabled people are in the Nortel Pension Plan as well

11   and earned pension and now they're disabled so that they

12   would be entitled to a pension when they reach retirement

13   age.

14          The two employees -- and I intend to deal with

15   most of this and apply, if necessary, the Charter of Rights.

16   We say there is no basis to support that.  Ms. Kennedy has

17   used every argument possible to advance the interests of

18   disabled employees.  And really what matters are the factors

19   that are outlined in the Factum, I believe it's paragraph 36

20   and 37 -- sorry -- 35 and 36 of my Factum.

21          The fact remains that 45 to 49 cents on the dollar

22   is not much less than what they would have received had the

23   Judgment been implemented, which would have been about 52

24   cents on the dollar by our clients' calculation.

25          JUSTICE NEWBOULD:  I see you have different

1  figures, I think, from the Applicant.

2      MR. ZIGLER:  The 45 to 49 cents on the dollar are

3  identical.  That's the estimated recovery in Canadian

4  dollars.  Our clients' Claims are denominated in Canadian

5  dollars.

6      JUSTICE NEWBOULD:  Right.

7      MR. ZIGLER:  The estimated recovery, had the

8  Judgment been implemented, is our clients' estimate, but by

9  their calculation, it's a small price to pay to bring an end

10 to eight years of litigation and more costs.  It would have

11 reduced 52 to 53 cents roughly to where we're going to end

12 up had we continued litigating but avoids future litigation

13 over the magnitude of their Claims including the Pension

14 Plan.  It made sure there are no other major fights which

15 could continue this litigation for years, and it results in

16 prompt payments that will occur in the first half of 2017.

17 And frankly, as my clients point out in their Factum, as we

18 point out in paragraphs 37 and 38, the Court can't relate

19 this Claim.  You can accept it or reject it, and rejecting

20 the Plan just puts us back into no man's land where you have

21 continued litigation in two countries with no clear outcome.

22     On that basis, there's only one logical choice

23 here, and that is to effect the Plan that's fair and

24 reasonable.  It is definitely in the best interests of all

25 the employees to put an end to the litigation and put money

1  in their pockets as soon as possible in a manner that's

2  close to the Judgment that they were successful in

3  receiving.

4          As for the Charter, all I want to say is this, and

5  it's outlined in our Factum.  I'm not going to repeat the

6  arguments.  But the Charter deals with government action.

7  This is an insolvency.  It's an agreement among Creditors.

8  It doesn't work in this context nor is this Court in

9  sanctioning the plan a government actor.  I think the case

10  law on that is very clear.  We're not dealing with a social

11  assistance plan and whether somebody is being discriminated

12  in terms of their treatment under such Plan.  These are all

13  people who are owed money by Nortel.  Unfortunately, Nortel

14  chose to self-insure its disability insurance.  In those

15  circumstances, the Charter doesn't apply.  It doesn't

16  protect economic rights.  I don't think we need to get into

17  the discrimination arguments but we all know that all sorts

18  of people have suffered as Justice Morawetz pointed out.

19          The practical thing to do at this point is to

20  simply in short what Mr. McAvoy and what Ms. Holley have to

21  say.  But what this Settlement does is, it puts a lot of

22  money in their pockets right away.

23          The other thing to note is throughout this piece,

24  there is a hardship fund that Justice Morawetz established

25  in granting one of the early Orders when there was a

1  challenge to severance payments.  It's not before but

2  hundreds of people have accessed that fund, and $1.6 million

3  have paid out.  Those people aren't just disabled people.

4  They are terminated employees who were pensioners and

5  surviving spouses.  Rather than have people rely on hardship

6  funds, this creates a large payment to them now and puts an

7  end to the uncertainty that these people have faced for

8  eight years.  In those circumstances, Your Honor, I don't

9  think there's any other choice here but to sanction the plan

10  and allow people to move on.

11        JUSTICE NEWBOULD:  Thank you, Mr. Zigler.

12        Is there anyone else who wants to speak in support

13  of the Plan?

14        MR. WADSWORTH:  Your Honor, Judge Gross, my name

15  is Barry Wadsworth.  I represent Unifor, which used to be

16  the Canadian Auto Workers, and we represent retirees and

17  about 100 disabled workers who used to be with Nortel.  The

18  two individuals are dissenting with respect to the Plan have

19  suffered much in the last seven years that this process has

20  been going on.  Because we represent workers, we're not here

21  to disparage the two individuals who are dissenting with

22  respect to this.  We understand why.  We understand why

23  they're dissenting.  But we're here to let the Court know

24  that pursuant to the retainers that we have with the 632

25  retirees we represent, the LTDs that we represent,

1   approximately 100, and 48 former employees of Nortel that we

2   have communicated with each one of those as we're required

3   to, and we have received from everyone who responded a firm

4   endorsement in favor of this Plan.

5           Now, particularly with respect to the disabled, we

6   represent about 100 of them, and I've been here since the

7   beginning and I've gotten to know a lot of those people.

8   I've gotten to know some of them who didn't live to see this

9   day --

10          JUSTICE NEWBOULD:  Through which?

11          MR. WADSWORTH:  Who did not live to see this day.

12          JUSTICE NEWBOULD:  I'm sorry.

13          MR. WADSWORTH:  And I know from my personal

14  experiences with those people, they would wish to have seen

15  this day.  This is the end of a very long road, and quite

16  frankly, although they are not happy with the outcome,

17  they're not happy with the fact that there are others who

18  are going to be paid significantly more than they are, they

19  understand why.  They understand that this is all a result

20  of what Nortel did to them a long time ago when it self-

21  insured their LTD, when it self-insured their benefits.  But

22  none of that is going to be changed by the result that comes

23  here.  What it will do is provide some security to people

24  who desperately need it.  And for that reason, if nothing

25  else, those who made it to this day and those who did not

1  deserve to have this Settlement approved and the Court grant

2  the Order with respect to the Plan of Arrangement.

3          With respect to the legal arguments, I'll leave

4  those to the Court-appointed representatives who have

5  provided you with their legal arguments regarding the

6  dissenting employees' position.  At the end of the day,

7  there's been a ship that's been at sea for a long time.

8  It's time it comes to court.

9          Thank you, sir.

10          JUSTICE NEWBOULD:  Thank you, Mr. Wadsworth.

11          Anyone else in favor of the Plan?

12          UNKNOWN (CANADIAN):  Good morning, Your Honor.

13  Good morning, Judge Gross.  I'll be very brief, and I will

14  not steal the thunder of Ms. Schweitzer and my colleagues

15  who are in Delaware today, but the U.S. Debtors are pleased

16  to support the Sanction of this Plan today.

17          JUSTICE NEWBOULD:  Thank you, Mr. (Indiscernible).

18  Brevity is the soul of wit.

19          UNKNOWN (CANADIAN):  Good morning, Your Honor.

20  Good morning, Judge Gross.  I'm here on behalf of the

21  counsel for the Unsecured Creditors Committee, and we also

22  support the Sanction of this Plan.

23          JUSTICE NEWBOULD:  Thank you very much.

24          UNKNOWN (CANADIAN):  Good morning, Your Honor.

25  Good morning, Judge Gross.  I'm here on behalf of the Ad Hoc

1    Bondholder Group.  We also support the Sanction of the Plan.

2              JUSTICE NEWBOULD:  Thank you.

3              UNKNOWN (CANADIAN):  I'm here on behalf of the

4    U.K. PC.  We support it as well.

5              JUSTICE NEWBOULD:  Thank you.  All right.  We'll

6    hear from the LTD Objectors, and which is to go first?

7              MS. HOLLEY:  I will, Jennifer Holley.

8              JUSTICE NEWBOULD:  Yes, Ms. Holley.

9              MS. HOLLEY:  As I mentioned, my name is Jennifer

10   Holley, and I am a Nortel CCAA LTD Creditor.

11             Our submission requests that the CCAA judge make

12   an adjustment to the Nortel CCAA Plan of Arrangement and

13   Compromise to make it compliant with the Charter.  They're

14   unreasonable for the LTD.  They're in regard to the

15   interests of Greg McAvoy and myself and other members of the

16   LTD and in the LTD's best interests.

17             This adjustment requires Reconsideration of the

18   March 30th, 2010, Revised Interim Settlement Agreement.  The

19   requested adjustment is Canadian dollars of $44 million for

20   full payment of the LTD income and medical and dental claims

21   assuming that the CCAA cash ratio is 45 percent.  This is

22   just .8 percent of the expected Nortel Canada Estate of $5.7

23   billion.  The incremental $44 million requested for the LTD

24   could be placed in a reserve account in order to allow the

25   Nortel Plan Allocation and distribution of cash less the $44

1  million reserve account to be paid to all Creditors by April

2  2017.  The Court would then, if necessary, have greater time

3  to consider the grounds for the Order to make an adjustment

4  and Reconsideration as requested in this submission.

5       The Monitor in Nortel requested you to order the

6  creation of $530 million U.S. of reserves for 26 Creditors

7  and the distribution to the Creditors the remaining $3.7

8  billion.  The reserve of $44 million Canadian for the LTD is

9  not supported by the Monitor or Nortel for reasons that

10 we'll refute in our presentation.

11      Approval of the Nortel Plan by the CCAA judge

12 constitutes the use of his discretionary authority within

13 the CCAA to support the deleterious impact on the LTD in

14 violation of our chartered rights, section 1501 on

15 deprivation of substantive equality, and section 7 of

16 deprivation of rights, liberty and security.  Individuals

17 with mental and physical disabilities are expressly

18 protected in the Charter.  This is a case where equal

19 treatment of LTD Creditors results in LTD Charter

20 violations.  None of the Charter tests for expected

21 limitation of Charter rights are met.  Reasonable limits

22 cannot be objectified in a free and democratic society in

23 section 1 in accordance with principles of fundamental

24 justice, section 7, 14, to a section 33 notwithstanding

25 cause within the statute.

1              A judge who exercises delegated powers pursuant to

2    the law does not have the power to make an order that would

3    result in an infringement of the Charter.  The SEC's trade

4    decisions specifically address an adjudicator's

5    discretionary authority within a law and not be used in

6    violation of the Charter, and if it is, his discretionary

7    authority must be struck down under section 1502 and be of

8    no course or effect unless it can be demonstrably justified

9    under section 1 of the necessary discretionary authority to

10   limit Charter rights in order to circumvent the process of

11   the law.  The Charter --

12              JUSTICE NEWBOULD:  Ms. Holley, can I ask you a

13   question, please?

14              MS. HOLLEY:  Yes.

15              JUSTICE NEWBOULD:  I understand that in 2010 when

16   Settlement was approved by Order of Justice Morawetz, at

17   that time you objected to that Settlement and the Order?

18              MS. HOLLEY:  Yes, we do.

19              JUSTICE NEWBOULD:  And did you raise the Charter

20   back then?

21              MS. HOLLEY:  No, we did not.

22              JUSTICE NEWBOULD:  Is there some reason for that?

23              MS. HOLLEY:  To the best of my knowledge, we did

24   not raise it.  I would have to say that it was lack of

25   familiarity with the Charter.

1              JUSTICE NEWBOULD:  Right.  Another question --

2              MR. MCAVOY:  Justice --

3              JUSTICE NEWBOULD:  Yes.

4              MR. MCAVOY:  Your Honor, this is Greg McAvoy.

5              JUSTICE NEWBOULD:  Mr. McAvoy, I'd like to listen

6    to Mr. Holley, and then you'll have your chance, all right?

7              MR. MCAVOY:  Okay.

8              JUSTICE NEWBOULD:  And if you want to make a note

9    about something that's just been said, make a note of it and

10   then you can raise it, but I won't stop you from raising it.

11   I'd like to hear one at a time.

12             MR. MCAVOY:  Thank you, Your Honor.

13             JUSTICE NEWBOULD:  Thank you.

14             The other question I wanted to ask you -- and I'm

15   not going to stop you, Ms. Holley, but at the very beginning

16   of your submission, you said you want to exercise your

17   option to opt out of the Representation Order, correct?

18             MS. HOLLEY:  For this hearing, yes.

19             JUSTICE NEWBOULD:  Now, you're well aware that the

20   Representation Order that was made provided you with 30 days

21   only to opt out?  You're aware of that?

22             MS. HOLLEY:  Yes.

23             JUSTICE NEWBOULD:  All right.  What's the legal

24   basis for your now exercising a claim to opt out of that

25   Representation Order?

1          MS. HOLLEY:  Could you repeat the question,

2   please?

3          JUSTICE NEWBOULD:  Sure. What's the legal basis

4   for your right to now opt out of the Order more than 30

5   days, in fact, more than seven years after that

6   Representation Order was made?

7          MS. HOLLEY:  Well, as I said, we've just opted out

8   for this specific hearing.

9          JUSTICE NEWBOULD:  What's your legal basis for

10  having the ability to do so?

11         MS. HOLLEY:  Our -- because our representative

12  would not argue these facts for us.  We've approached them

13  several times about the inequality, the substantive

14  inequality, and they disagreed with us.

15         JUSTICE NEWBOULD:  All right.  Okay.  Go ahead.

16         MS. HOLLEY:  Excuse me just for a minute.

17         JUSTICE NEWBOULD:  Sure.

18         MS. HOLLEY:  The Monitor in Nortel factum says

19  that the LTD Objectors do not appear to question the

20  constitutional validity or applicability of the CCAA itself.

21  Our submission is clearly on an aspect of the CCAA that is

22  unconstitutional under section 52.1, which says the

23  Constitution of Canada is the supreme law of Canada, and any

24  law that is inconsistent with the provisions of the

25  Constitution is, to the extent of the inconsistencies, of no

1   course or effect.

2          JUSTICE NEWBOULD:   Which provision of the CCAA do

3   you say is unconstitutional?

4          MS. HOLLEY:   It is -- it's section 51, section

5   51.1. Excuse me for a minute.   Can I get back to that

6   question or --

7          JUSTICE NEWBOULD:   Yes.

8          MS. HOLLEY:   All right.   Okay.   So I was talking

9   about a judge who exercises delegated powers pursuant to the

10  law, and I also mentioned that in the SEC's trade decision

11  specifically addresses an adjudicator's discretionary

12  authority within a law, and the requisite SEC tests are

13  [indiscernible] they're both referenced in our documentation

14  that was sent to the Court last week.

15         JUSTICE NEWBOULD:   Yes.

16         MS. HOLLEY:   The Monitor in Nortel says we have

17  not served the notice of constitutional question under

18  section 109 of the Courts of Justice Act, which would be

19  required if they had filed.   We do not have to file a notice

20  of constitutional question under section 109 of the Courts

21  of Justice Act, as we are not making a subsection 24.1

22  claim, which is specified in section 109.2.   We're making a

23  section -- subsection 52.1 claim.   Given we are asserting

24  that an aspect of the CCAA is unconstitutional under 51.1,

25  the Monitor in Nortel's position with respect to the Charter

1  only covers government use of public funds is categorically

2  incorrect.

3          Ms. Kennedy being the Court-appointed

4  representative of the LTD, the Court-appointed legal

5  counsel, and her authority to vote for the Nortel Plan on

6  behalf of the LTD under the Representation Order, are all

7  court processes that have resulted in LTD Charter violation.

8  A CCAA judge cannot use his discretionary authority within

9  the CCAA to approve a plan simply because there is complete

10 majority support for it under these court processes.  The

11 processes violate Charter rights for one, many, or all of

12 the members of the LTD group.  LTD are not opting out of

13 representation by Ms. Kennedy, and this should not change

14 the assessment of whether or not CCAA is not constitutional

15 law with respect to its discretionary authority for judges

16 to approve the CCAA Plan but limits Charter rights if such

17 limitations are not demonstrably justified to serve the

18 purposes of CCAA.

19          Now I'm going to talk about the material facts on

20 the impact of the Nortel Plan on the LTD.  Any dollar

21 amounts are in Canadian dollars unless I refer otherwise.

22 The affidavit of Diane Urquhart, a financial expert,

23 provides tables 1 through 8 in our submission including

24 material facts on the actual and relative impact of the

25 Nortel Plan on members of the Long-Term Disabled former

1    employees group, or LTD.   Approval of the plan combined with

2    the 2010 Revised Interim Settlement Agreement results in LTD

3    being deprived of adequate disability income for basic

4    housing, food, clothing, and high medical and dental

5    expenses, and so we cannot live independently and with

6    dignity.   Sixty-six to sixty-eight percent estimated

7    compliance HWT and CCAA recovery of the amount owed for

8    Nortel disability income is applied to Nortel's pre-

9    bankruptcy disability income that was already reduced to 50

10   to 70 percent of our working income before disability.   Most

11   employees, as did I, opted for the high 70 percent coverage,

12   and we paid for this with our own contributions.   The LTD

13   outcome is Nortel disability income 33 to 48 percent of

14   disability income and there are 160 dependent children who

15   cannot help but are seriously deprived compared to their

16   peers with parents able to work.   Medical and dental

17   expenses have a 45 to 49 percent recovery with an average of

18   $7,291 per year for the LTD at 2010.

19          Mr. Zigler has mentioned in his Factum that there

20   is Trillium to cover the cost of our drugs.   We could never

21   get the same medical benefit coverage from a private insurer

22   as a disabled person.   Trillium does provide some drugs but

23   not all drug coverage.   As well, there's a host of other

24   medical supplies not covered, disabled out-of-pocket for

25   these medical expenses as well as therapy from practitioners

1  and dentists -- and dental.

2          LTD were not able to preserve capital from both

3  the HWT and the CCAA settlements.  It is a six-year delay of

4  the CCAA settlement.  The deeply compromised 38 percent HWT

5  and 45 to 49 percent CCAA settlement capital is already used

6  up by 2018 to cover the deficiencies in CCP disability

7  income subject to a reasonable basic allowance for food and

8  clothing and high medical and dental expenses during 2011 to

9  2017.  The estimated average annual deficiency of income

10  over expenses has grown from 27,000 in 2011 to just over

11  33,000 in 2017.  The 2017 average rate of living costs are

12  estimated at $36,000 derived from adjustments made to

13  specific Canada average household expenditures, in Canada.

14  These settlements [indiscernible] depletion by 2018.  The

15  LTD received only CPP disability income at a maximum of

16  $15,763 in 2017.  The CPP disability income is through

17  various measures of poverty.  Diane Urquhart uses an

18  estimate of $36,000 of income for average Canadian in a

19  single-person household, which represents what is needed to

20  not be deprived of substantive equality and adequate income

21  for housing, food, clothing and medical expenses.  Equality

22  to other persons in poverty is not a relevant test.  The LTD

23  is deprived of substantive equality in Canadian society

24  through the loss of dignity and exclusion and

25  marginalization.  An LTD who once worked and who actively

1  held insurance coverage at Nortel -- pardon me?

2           JUSTICE NEWBOULD:  Go ahead.

3           MS. HOLLEY:  Thank you.  So as I was saying, an

4  LTD who once worked and who actively held insurance coverage

5  at Nortel is by 2018 reduced to an annual income at the

6  maximum CPP disability income of $15,763 in 2017.  The

7  material facts on the relative impact of the Nortel Plan,

8  the Canadian long-term disabled former employees are the

9  worst impacted in Canada and in the U.S. and in the U.K.

10  The Bondholders are paid 98 cents per dollar claim.  U.S.

11  pensioners and U.K. pensioners are paid in full under the

12  U.S. Pension Benefit Guaranty Corporation and the U.K.

13  Pension Protection Fund subject to the maximum limit.

14  Canadian pensioners have much higher combined pension plans

15  and CCAA settlement.  They get 88 to 100 percent in Ontario

16  that is substantially subsidized by the Ontario Government

17  Grant of $384 million out of the OPGB program first $12,000

18  per year out of pension income.  Pensioners in Nova Scotia

19  recover 82 percent.  Pensioners in other provinces, 77

20  percent.  Canadian pensioners have the same compromise of

21  the lower medical and dental claims that average $1,961 in

22  2010.  Canadian pensioners have much higher CPP.  In

23  addition, they have the OAF income at a maximum of $20,312

24  in 2017 compared to maximum CPP disability of $15,763 in

25  2017.

1          JUSTICE NEWBOULD:  Ms. Holley, can I ask you

2    another question, please?

3          MS. HOLLEY:  Yes, sir.

4          JUSTICE NEWBOULD:  Are you a pensioner as well?

5          MS. HOLLEY:  I am not.

6          JUSTICE NEWBOULD:  All right.

7          MS. HOLLEY:  Although I do have -- I am a Creditor

8    with regard to my defined benefit pension plan through

9    Nortel.

10          JUSTICE NEWBOULD:  Sorry.  Say that one again.

11          MS. HOLLEY:  I am a Creditor for my defined

12    benefit pension --

13          JUSTICE NEWBOULD:  Yes?

14          MS. HOLLEY:  -- under the CCAA.

15          JUSTICE NEWBOULD:  Yes.

16          MS. HOLLEY:  But I am on LTD.  I am 53 years of

17    age, so I have many years until I am able to rely on any

18    other government safety net, such as OAF.

19          JUSTICE NEWBOULD:  But if the Plan were to be

20    approved, would you then get payment under your Pension

21    Claim?

22          MS. HOLLEY:  Yes, I would receive payment from my

23    pension claim.

24          JUSTICE NEWBOULD:  Go ahead.

25          MS. HOLLEY:  All right.  The Monitor's report --

1  the 132nd Monitor's Report, dated November 16th, 2016,

2  discloses a total Ernst and Young CCAA court monitor fee of

3  $108 million U.S., Pittman [ph] LLP court monitor's legal

4  counsel fees of 86.4 million U.S., and McPherson of U.S. 5.6

5  million before HST between January 19 and May 31, 2016.  The

6  combined disbursements for performing delegated court

7  monitor duties including the HST is $301 million Canadian.

8  Ernst and Young received fees of $570 million Canadian for

9  its role as CCAA court monitor, court administrator and U.S.

10  tax adviser to Nortel Networks.  As well, as the Monitor's

11  report goes on to disclose for the first time that former

12  employees and representative counsel received fees of 51

13  million.  DLA Piper LLP [indiscernible].  Nortel executives

14  are paid $250 million with retention bonuses, without

15  separate disclosure for Canada's state.  Nine Nortel

16  payments were granted as instructed trust, and an

17  uncompromised Settlement equivalent to monthly payments

18  ranging from $991 to $31,950 for a supplementary pension and

19  retirement allowance at June 25th, 2010, in Nortel Networks

20  Corporation [indiscernible] represented the executives.

21         The express use of discretion within the CCAA

22  violates the Charter in respect to LTD.  Reconciling the

23  charter and administrative law by Dean [indiscernible] Law

24  School says in Slate, the Court for the first time attempted

25  to reconcile for Charter and administrative law protections

1  where they overlap.  With respect to exercise of discretion

2  in particular, the Court reasoned that no such legislature

3  could grant discretionary authority to act in violation of

4  Charter rights.  Therefore, all such authority should be

5  interpreted by the Court in a manner consistent with charter

6  protections unless the wording of the statute itself is

7  inconsistent with the Charter rights in which case if it

8  could not be justified under section 1 of the Charter, that

9  provision would have to be struck down.

10            JUSTICE NEWBOULD:  Ms. Holley?  Can I just stop

11  you, Ms. Holley?

12            MS. HOLLEY:  Yes.

13            JUSTICE NEWBOULD:  I have your Brief.  You're just

14  reading it word for word, and I don't think that's necessary

15  --

16            MS. HOLLEY:  All right.

17            JUSTICE NEWBOULD:  -- or desirable because of the

18  time today we have.  There's also a U.S. hearing, and we

19  have to get through them.

20            MS. HOLLEY:  Understood.  Koskie Minsky is

21  incorrect when it says that Slate paragraph was only in the

22  minority dissenting judge's statement.  It is a quote from

23  the majority judgment giving the reasons for the SEC appeal

24  being dismissed.  Raylor, Vicente, and Carr [ph] has a

25  paragraph with similar phrases that is not the same

1   paragraph as in our submission.  The majority judgment does

2   a thorough assessment of whether the adjudicator can rely on

3   acceptable limitation of Charter rights under section 1 and

4   finds section 1 applies and further with no violation of the

5   Charter by the adjudicator.  This case does not include that

6   the Charter does not apply to an adjudicator.

7           JUSTICE NEWBOULD:  Can I just ask you a question?

8   I understand the law that you've cited.  I've read it

9   carefully.  On what -- do you assert that I as a judge am a

10  government actor?

11          MS. HOLLEY:  I do, because the Court is acting on

12  behalf of the government.

13          JUSTICE NEWBOULD:  How -- okay.  How is it I'm

14  acting on behalf of the government?

15          MS. HOLLEY:  Excuse me for a minute while I just

16  look through my notes.

17          JUSTICE NEWBOULD:  All right.

18          MS. HOLLEY:  Would you ask me the question again,

19  please?

20          JUSTICE NEWBOULD:  How is it that I am acting on

21  behalf of the government?

22          MS. HOLLEY:  Application of the Charter applies to

23  the Parliament and government of Canada in respect to all

24  matters within the authority of Parliament including all

25  matters relating to the Yukon Territory and Northwest

1    Territory.

2              JUSTICE NEWBOULD:  All right.  Go ahead.

3              MS. HOLLEY:  I'm sorry.  I know I have the answer.

4    It's just not coming to mind right now.

5              JUSTICE NEWBOULD:  Is the answer somewhere in your

6    written submission?

7              MS. HOLLEY:  I'm not sure if it's in the written

8    submission or in our presentation, in the rest of the

9    presentation that's to come.

10             JUSTICE NEWBOULD:  Okay.  Well, why don't you

11   proceed?

12             MS. HOLLEY:  Okay.  Oh, Slate says that the

13   Charter applies to orders made by the adjudicator.  The

14   adjudicator is a creature of statute.  He is appointed

15   pursuant to a legislative provision and derives all of his

16   powers from the statute.  The Constitution is the law of

17   Canada, and any law that is inconsistent with its provisions

18   is to the extent of the inconsistencies of no force or

19   effect.

20             JUSTICE NEWBOULD:  All right.

21             MS. HOLLEY:  It's not possible to interpret

22   legislation deferring discretion as inferring the power that

23   is granted in the the Charter, unless of course that power

24   is expressly deferred or necessarily implied.

25   [indiscernible] would require this Court declare the

1  legislation to be of no effect or force unless it could be

2  justified under section 1 of the Charter.  It follows that

3  an adjudicator who exercises delegated powers does not have

4  the power to make an Order that would result in the

5  infringement of the Charter.

6          JUSTICE NEWBOULD:  All right.

7          MS. HOLLEY:  [Indiscernible] is incorrect when it

8  says that this _Slate_ paragraph -- I'm sorry.  I already read

9  that to you.  It says that it was in the minority judgment

10 and it was actually in the majority judgment.  The principal

11 of an overly broad law described in Heywood applies to the

12 CCAA.  Okay.  So we disagree with the [indiscernible]

13 statements that the Charter governs relations between the

14 government and private persons and that the Nortel Plan is

15 fundamentally an agreement reached among private parties and

16 is beyond the scope of the Charter, and the SEC Robindale

17 versus [indiscernible] case distinguishes that personal

18 claims under 24.1 of the Charter are subject to limitation

19 periods.  As a general rule, the Charter does not apply to

20 the Court.

21         JUSTICE NEWBOULD:  Ms. Holley, you are now going

22 -- you are reading your written submissions again, and I

23 don't --

24         MS. HOLLEY:  Yes.  I'm sorry.  I forgot your

25 earlier directive of not doing that, so now I'll switch back

1  to my reply.

2          JUSTICE NEWBOULD:  Right, because otherwise --

3          MS. HOLLEY:  My apology to the Court.

4          JUSTICE NEWBOULD:  Well, that's all right.  You're

5  not a trained lawyer.  I understand.

6          MS. HOLLEY:  I am not, for sure.

7          JUSTICE NEWBOULD:  It's probably -- looking out at

8  this courtroom, it's probably to your benefit.

9                    (Laughter)

10          MS. HOLLEY:  All right.  Thank you.

11          As a general rule, the charter does not apply to

12  Court.  Marilyn Pilkington, a well-known constitutional law

13  expert, discusses the application of the charter to the

14  Court in her paper called Damages as a Remedy for

15  Infringement of the Canadian Charter of Rights and Freedom.

16  This paper with reference to the writings of another

17  constitutional expert, Peter Hall, who wrote Canada Act

18  Annotated 1982.  Ms. Pilkington says Parliament as a

19  legislature are subject to the Charter with respect to

20  matters within their authority.  Anybody acting under

21  statutory is also subject to the Charter.  Parliament or a

22  legislature cannot authorize a person or body acting under

23  statutory authority to infringe rights or freedoms

24  guaranteed by the Charter except through exercise of the

25  override power.  Accordingly, even if Section 32 of the

1   Charter is construed as providing that the Charter applies

2   only to Parliament, provincial legislatures and the

3   government, it will apply to a wide range of activities

4   undertaken under specialty authority and may extend beyond

5   activities which may be characterized as government action.

6            It seems clear that prosecutors and the courts and

7   government officials exercising adjudicative or

8   prosecutorial functions are obliged to comply with the

9   Charter and [indiscernible] courts are subject to the

10  Charter.

11           JUSTICE NEWBOULD:  What are you looking at?

12  You're reading from something.  I'm not sure what it is.

13           MS. HOLLEY:  It's my notes.  Oh, I see what you're

14  asking me.  It is a quote from Mary Pilkington.

15           JUSTICE NEWBOULD:  I didn't see that in your

16  Brief.

17           MS. HOLLEY:  No, this is a reply to one of the

18  points brought up by Koskie Minsky.

19           JUSTICE NEWBOULD:  All right.  Why don't you just

20  say what the article's from and where it -- just tell me

21  what it's from.  Is it from a digest, or what's it from?

22           MS. HOLLEY:  It's from a book.

23           JUSTICE NEWBOULD:  What's the book?

24           MS. HOLLEY:  Sorry.  A paper called Damages as a

25  Remedy for Infringement of the Canadian Charter of Rights

1 │ and Freedom.

2 │         JUSTICE NEWBOULD:  And where does someone find

3 │ that paper?  Is it online or something?

4 │         MS. HOLLEY:  Yes, it should be online.  I can find

5 │ that out for you and get back to you about that.

6 │         JUSTICE NEWBOULD:  All right.  How much longer do

7 │ you expect to be?

8 │         MS. HOLLEY:  Five minutes.

9 │         JUSTICE NEWBOULD:  All right.  Go ahead.

10 │        MS. HOLLEY:  Accordingly, even if section 3201 of

11 │ the Charter is construed is providing that the Charter

12 │ applies only to Parliament, provincial legislatures and the

13 │ government, it will apply to -- oh, sorry -- I read that

14 │ already -- to a wide range of activity.  If it can be

15 │ established that a judge has infringed settled, indisputable

16 │ constitutional rights, he like other officials should be

17 │ accountable to the victim.  The fact that the prospect of

18 │ such accountability may affect his decision is clearly all

19 │ to the good.  Judges and prosecutors should act in good

20 │ faith and respect constitutional rights.  If other officials

21 │ are deemed to know and are obliged to comply with the well-

22 │ settled constitutional law, surely the same can be

23 │ reasonable or can be reasonably expected of judges and

24 │ prosecutors.

25 │         JUSTICE NEWBOULD:  Is that author saying if I were

1  to make a decision that she viewed as being contrary to the

2  Charter that I could be sued personally?

3           MS. HOLLEY:  I'm not sure if that is her --

4           JUSTICE NEWBOULD:  That's what I thought I heard.

5           MS. HOLLEY:  But it certainly does sound like that

6  to me.

7           JUSTICE NEWBOULD:  It seemed to me too.

8                     (Laughter)

9           MS. HOLLEY:  [Indiscernible] also referred to the

10 Dolphin Delivery LTD versus RWDFU Local 580.  It doesn't

11 apply to the Court because it is about an injunction under

12 the B.C. Labor Code against union reps picketing at a

13 courier company's premises.  The appeal failed not because

14 the Charter did not apply to private litigation but because

15 the judge did not find any offending statute relied upon for

16 government action in the litigation between purely private

17 parties.  What the judge does say in Dolphin Delivery

18 supports our position on the Charter applied to courts.  In

19 my view, section 32 of the Charter specifies the actors to

20 whom the Charter will apply.  They are the legislative,

21 executive and administrative branches of the government.  It

22 will apply to those branches whether or not their action is

23 invoked in public or private litigation.  It would seem that

24 legislation is the only way in which a legislature may

25 infringe a guaranteed right for freedom.  Action by the

1  executive or administrative branches of government will

2  generally depend upon legislation that is statutory

3  authority to be extensively relied upon statutory authority

4  which constitutes a result in an infringement of the

5  guaranteed right of freedom.

6              JUSTICE NEWBOULD:  Ms. Holley, you're now just

7  reading from Dolphin, and I think most of the lawyers in the

8  room are aware of that.

9              MS. HOLLEY:  Thank you, Your Honor.  That is the

10  end of my presentation, and Greg McAvoy will now address the

11  Court.

12             JUSTICE NEWBOULD:  All right.  Thank you, Ms.

13  Holley.

14             MS. HOLLEY:  Thank you.

15             JUSTICE NEWBOULD:  Mr. McAvoy?

16             MR. MCAVOY:  Your Honor, in the interests of time,

17  I'll try to just abridge what I was going to present.

18             JUSTICE NEWBOULD:  If I could ask you -- Mr.

19  McAvoy, if I could ask you not to repeat what has already

20  been said by Ms. Holley, but if you have something else

21  other than what she has said --

22             MR. MCAVOY:  A few points, Your Honor.  I'll just

23  make a few points here.  I don't think there's too much but

24  there are a few points.

25             So in reply to what the Monitors of Nortel say,

1  this is not a case where broad discretion conferred by

2  statute must be read down to avoid a Charter breach.  This

3  is a case where the Court discretion to approve the Plan is

4  being exercised fulfil very purpose of the statute where

5  constitutionality is not challenged.  That Paragraph 2

6  treatment of creditors, Paragraph 2 and equal treatment

7  language is not expressed in the CCAA [indiscernible]

8  Paragraph 2 and equal treatment is not in SEC case.  Those

9  two objectives are purposes of the CCAA.

10        The other point I wanted to make, Your Honor, is

11  that in our written position, we talk about the Kennedy

12  affidavit.  We just urge the Court to consider these points

13  but I don't want to reiterate them at this stage.

14        Well, Your Honor, I don't want to waste your time.

15        JUSTICE NEWBOULD:  You're not wasting anyone's

16  time.  You make this -- you're not wasting time so don't

17  worry about that.  If you have any submissions to make that

18  haven't been made by Ms. Holley, then just for sure make

19  them now.

20        MR. MCAVOY:  I think that's pretty much it, Your

21  Honor.

22        JUSTICE NEWBOULD:  All right.

23        MR. MCAVOY:  The only thing I would like to state

24  is that the LTD are the worst impacted group in the

25  Crossover Claims and the six-year delay considering the

1    combined HWP and CCAA settlements deprives the LTD of

2    substantial equality and adequate income for housing, food

3    and medical expenses.

4         Thank you very much, Your Honor.

5         JUSTICE NEWBOULD:  Thank you, Mr. McAvoy.  By the

6    way, Ms. Holley, one of the sharp-eyed lawyers in the room

7    has given me where I can find that article by Marilyn

8    Pilkington.

9         MS. HOLLEY:  Thank you.  I'd also like to take

10   this opportunity to thank Your Honor and Judge Gross for

11   allowing us the opportunity to speak today.

12        JUSTICE NEWBOULD:  Thank you.

13        Now, is there any brief reply?

14        M2. ZARNETT:  Let me be very brief, Your Honor.

15        In the proceedings that led to the earlier Order,

16   I just wanted to point out that the LTD Objectors did have

17   counsel before Justice Morawetz and on their Appeal.

18        Second, section 109 applies where there's a

19   challenge to the validity or applicability of any act, and

20   to when a remedy is sought under section 24.

21        JUSTICE NEWBOULD:  It's when a remedy is sought

22   under section 24.1 against the government.

23        M2. ZARNETT:  That's right.  That's right.  That's

24   one circumstance.  But it's in any situation where the

25   applicability of constitutional validity that is at issue,

1  and it also applies.

2        The cases like _Slate_ that are referred to merely

3  are but an interpretive principle.  If you can read

4  legislation more than one way, then read it to be Charter

5  compliance.  But that really can't operate here in the way

6  that's suggested because you're asked to read the CCAA

7  discretion to approve a Plan has not permitting the approval

8  of _pari passu_ Plan when _pari passu_ is fundamental to the

9  legislation.

10        And the last point that I wanted to make was about

11  this notion of government action.  The material talks about

12  private rights and economic rights compared to government

13  action, and probably the best way to illustrate that is to

14  just think about one of the cases that -- two of the cases

15  that are cited by the LTD Objectors.  One is the _Eldridge_

16  case.  These are both Supreme Court cases.  _Eldridge_ is at

17  tab 22 of our authorities, _Gosselin_, which is at tab 21.

18  _Eldridge_ was about government funding of health services and

19  whether equality protection was violated when the government

20  did not provide funding for sign language interpreters for

21  persons who needed to access the basic services, so

22  government funding and entitlements under government law and

23  regulation.  _Gosselin_ had to do with the welfare system and

24  a distinction between recipients under a certain age and

25  over a certain age to get welfare financial assistance

1    provided by the government for government funds.

2            It's one thing to suggest the Charter reaches that

3    activity.  It's quite another to analogize to what is sought

4    here which is really a request not about government funding

5    or what the government is doing.  It's really a request that

6    other Creditors fund a different category of Creditors.

7    That has nothing to do in my submission of the Charter of

8    Protection.  Thank you.

9            JUSTICE NEWBOULD:  Thank you, Mr. Zarnett.

10            MR. ZIGLER:  Your Honor, one small point about one

11    case that was raised by Ms. Holley is called Ravndahl v.

12    Saskatchewan, R-A-V-N-D-A-H-L, at 2009 1 SCR 181, and that

13    has to do with this limitation issue that came up.  I don't

14    know whether they were represented by counsel in 2010.  That

15    case was a distinction between applying limitation to a

16    private Charter remedy or constitutional remedy and whether

17    one seeks to strike down legislation.  Also what Ms. Holley

18    and Mr. McAvoy are seeking here, and all sympathy to the

19    disabled people trying to get more, but they're seeking a

20    private remedy on something that was decided in 2010, and

21    the Limitations Act would apply.  Not that that's the key

22    point but that's important

23            I won't deal with Dolphin Delivery.  I think we

24    all know what it stands or and I think it's pretty clear

25    that if you were a government actor here with private

1   litigation that would be subject to the Charter.

2           I don't want to spend a lot of time on the merits

3   of section 50 and section 7 as to whether they've been

4   breached.  That is addressed in my Factum --

5           JUSTICE NEWBOULD:  Yes, I understand.

6           MR. ZIGLER:  -- in paragraphs 45 right to the end.

7   All I want to say on a factual basis is this, and Justice

8   Morawetz noted in his health and welfare cross-ruling.

9           JUSTICE NEWBOULD:  You're not --

10          MR. ZIGLER:  A lot of the circumstances, whether

11  we're dealing with disabled people or whether we're dealing

12  with surviving spouses, whether we're dealing with

13  pensioners, whether we're dealing with people who've been

14  unemployed for eight years, there is no case that's made out

15  with one group suffering any more than others as Creditors

16  of Nortel.  Yes, they are disabled.  There's a lot of

17  sympathy for disabled people.  But it is not their

18  disability that is a grounds for any possible type of

19  discrimination or stigmatization in this case.  And that's

20  what you need for section 15, and Justice Binney in a case

21  that again my friend -- sorry -- that Ms. Holley cites

22  called Granofsky does a great analysis of -- it's 2001 SCR

23  703 -- of how one deals with disability.  There is no

24  stigmatization of any group here, which is what section 15

25  is about nor is anyone being deprived of their life or

1  liberty, which is what section 7 is about.

2          This is about giving people a lot of money, maybe

3  not enough to totally get them through everything on their

4  own but to ameliorate their hardship, not to hurt them, and

5  in that respect, I don't see any basis for any Charter

6  violation at all to say nothing of the analysis.  No one

7  guarantees people any economic rights under the Charter.

8  The Charter is not an economic statute, nor does one

9  necessarily to have bring everyone up to the average

10  household income.  By definition, an average means there's

11  50 percent below and 50 percent above.  I don't want to get

12  into all of that.  I just think that kind of analysis is not

13  helpful to the Court.  What is helpful is that people will

14  get money quickly, and unfortunately, they will not be made

15  whole, but that is the nature of insolvency for all affected

16  Creditors.

17          JUSTICE NEWBOULD:  All right.  Thank you, Mr.

18  Zigler.

19          Anyone else?  All right.  Well, then that

20  concludes the Canadian hearing.  I think it's a joint

21  hearing, so now Judge Gross, if you want to organize all

22  those tasks down there.

23          THE COURT:  We've got a lot of them here.  Ms.

24  Schweitzer, when you're ready.

25          MS. SCHWEITZER:  Good morning, Judge Gross, Mr.

1    Justice Newbould.   For the record, Lisa Schweitzer from

2    Cleary Gottlieb for the Debtors.

3            We are obviously very excited to stand before you

4    today to see confirmation of the Plan.   It's hard to believe

5    that eight years have passed since we first stood before

6    you, and in considering the relief we're seeking today, it's

7    obviously worth stepping back of how we got here along the

8    way.   Back in 2009, we were before Your Honors, and Justice

9    Morawetz in Canada.   The capital markets had just collapsed.

10   Nortel came, and one of the first things we asked you to do

11   is allow us to be our own defenders.   We were uncertain

12   where the businesses were going and how much money could be

13   realized and preserved and whether employee jobs could be

14   kept.   The Claims in the case including these Guaranteed

15   Bonds were trading literally at cents on the dollar, and it

16   was unclear where the course of the case was going to go.

17           I think when we look at what we're asking for

18   today, we collectively should think about how everyone in

19   the room, everyone on the phone worked together for several

20   years to realize substantial value from the company, value

21   that some people didn't necessarily expect to receive at the

22   start.   We became pleased with the results of the CDMA sale,

23   where we had doubled an auction price and realized a billion

24   dollars of proceeds and proceeded to find value and unlock

25   value worldwide where the Nortel companies really are joined

1  at the hip in many ways with a record-breaking IP sale of

2  four and a half billion dollars, and even internet addresses

3  that no one knew existed or were of value and finding

4  another tens of millions of dollars or hundreds of millions

5  of dollars of value there.

6          With all those victories of course came disputes,

7  and we worked through a lot of Claims disputes in the U.S.

8  and with our own Creditors and with our other affiliates,

9  and today is the final culmination of the final disputes

10 hopefully that can be approved.

11         A lot of these disputes which inform where we are

12 today were novel, were hard-fought, involved a lot of money.

13 Back in 2009, we were learning about the U.K. pension law

14 that had been enforced on this worldwide basis on a

15 contested basis.  For the first time we had claims for EMEA

16 affiliates on the U.S. side similar to the stories that

17 you're hearing in Canada.  We too had claims brought by our

18 own employees and former employees or long-term-disabled

19 employees or retirees, holders of deferred compensation

20 claims who had their own expectation of hundred-cent dollars

21 being aside for them, all of whom compromised and were

22 required to walk away with less than full value.  These

23 Claim disputes and litigations that resulted in the

24 Settlement of those different Claims unfortunately not the

25 ability to give everyone hundred-cent dollars but with a

1    full vetting of issues and trying to balance every

2    individual Creditor's interest against the larger interest

3    of the cases.  All wound up being successful Settlements in

4    the extent that we ultimately were able to get money to

5    people to settle Claims and to work towards again a final

6    resolution, and the same themes that you heard in Canada.

7    At the end of the day, you've got a bucket of assets, a list

8    of Claims, and we can start handing out that money.

9           We also obviously had Claims with our trade

10   disputes, and the big Claim and litigation everyone's most

11   familiar with, which is just the allocation of the sale

12   proceeds, which consumed a lot of time, a lot of resources.

13   It was quite frankly vigorously litigated over issues

14   probably none of us knew about before and now we all have

15   honorable degrees in issues regarding intellectual property

16   and transfer pricing law and the intricacies of rules over

17   the world.

18          Obviously, since these litigations were difficult

19   and hard-fought and adversarial, it wasn't for a lack of

20   respect from anyone in the courtroom but simply because each

21   side knew the importance of the issues being litigated and

22   the big dollars being litigated and the stories that you've

23   already heard in Canada from some of the former employees

24   and that you'll hear today from some of our own employees

25   that we knew that real lives were at stake and real people

1  were being affected by the results of the litigation, and

2  the Debtors certainly I can speak on behalf of, but I think

3  it's fair to say all the parties around the world were

4  advocating for what we've always believed is the best

5  interests of our Estates and our own Creditors.  But it's

6  always hard to split the difference when you get to $7

7  billion, and there's always a person who's looking to say a

8  little better, a little more, and I think that the wonderful

9  thing today is to be able to come forward, Your Honor, with

10  a Plan and a Settlement Agreement and, most late-breaking,

11  another Settlement that was reached over the weekend, all of

12  which drive us towards the point where we can declare global

13  peace, we can declare finality.  We can get the money in the

14  hands of the Creditors, which is the theme that you hear

15  most often is, bring this to an end, get us our money, wrap

16  it up.

17         As I said, the plans were filed in the fall,

18  falling on the tails of the SPSA, and before I got into the

19  details, I do want to extend the most sincere thanks from

20  the U.S. Debtors and I think from everyone in the courtroom

21  appearing before Your Honor today to the former Chief Judge,

22  Judge Farnan, who was quite frankly invaluable in

23  facilitating a whole host of settlements and bearing with

24  the parties and really being a creative thinker and a

25  perseveror in getting us to the settlements over the last

1    year.   There were several of them, and it really -- he was

2    quite a force, and I say that without minimizing the efforts

3    and the successes of the prior mediators.   While they didn't

4    necessarily claim victory, they obviously laid the

5    foundation for a lot of the concepts and principles and

6    vetted a lot of the issues that enabled us to get to the

7    finish line.   So I think we all do have to acknowledge that

8    it wasn't us alone.   We had a lot of force and help on our

9    side from very smart and judicial people.

10             Of course, we also want to thank Your Honor and

11   Mr. Justice Newbould because we recognize that Judge

12   Morawetz before him had to make a lot of hard decisions and

13   tough calls and solve questions that were thorny and keep us

14   laser-focused on bringing the cases to conclusion.

15             And so today I want to give you a roadmap of where

16   we are on the U.S. side.   I believe Your Honor went to

17   start.   One of the issues was the issue of jurisdiction --

18             THE COURT:   Yes.

19             MS. SCHWEITZER:   -- and whether Your Honor can

20   proceed today.   I think -- we're happy to argue it and

21   address that more.   I think it's well set forth in the

22   papers that what we're seeking today is to resolve

23   Allocation Decisions that you have authority from, from

24   prior Orders.   I also note in light of the NTCC Settlement,

25   they are no longer pressing the jurisdiction question.   We

1  have, I believe, LSI, the other Claims trader who had joined

2  in the Objection, is on the phone today, as I understand it,

3  and I asked but they had indicated whether they intend to

4  continue to press Objections, so when I finish the roadmap,

5  we can maybe start there to understand exactly what is being

6  contested today.

7         But if we allow Your Honor to comment on

8  jurisdiction to the extent that you retain jurisdiction, I

9  think that we would propose to proceed given the briefing

10  that has been put in and given where we are with the nature

11  of the objections that have been filed and have been

12  resolved is to start with what I call the Big Show.  It's to

13  go through the cornerstone of the Plan Settlement, which is

14  the SPSA, and more recently the NTCC Settlement.  We have

15  Mr. Ray, the principal officer of the U.S. Debtors, in the

16  courtroom, who's prepared to testify, and Mr. Kennedy from

17  Chilmark Partners, who's a financial adviser to the Debtors,

18  also prepared to testify in support of the Plan.  They put

19  in declarations and so I propose to proffer the declarations

20  and have them supplement that with limited live testimony.

21  And then I have my colleagues to address the other Plan

22  requirements, which again are well set forth in the Briefs,

23  but just to highlight the other relief we're requesting.

24  And then to the extent that those large issues have been put

25  on, that we would proceed to go through the other specific

1  Objections, which I don't to minimize them but there are

2  more discrete issues, and a lot of them are just unique to

3  the objecting parties or limited number of parties.  And

4  then finally, we did file a 9019 Motion, which sits hip to

5  hip with the Plan and also seeks the same recognition and

6  authority for the SPSA for NNIII, who is not a Plan

7  proponent today.

8          So that's the roadmap that I would start with, but

9  I'll turn it over to Your Honor if you want to hear further

10 argument on the jurisdiction question or if you want to make

11 comments at this point.

12         THE COURT:  Well, let me ask if LSI is still

13 pressing its Objection.

14         MR. RECKMEYER:  Good morning, Your Honor.  Jeremy

15 Reckmeyer from Andrews Kurth on behalf of LSI.

16         THE COURT:  Yes.  Good morning.

17         MR. RECKMEYER:  Good morning.  We thank you for

18 allowing me to appear by telephone.

19         I would characterize LSI's position as being

20 limited Objections.  I don't believe they have any issue

21 with the local Settlement of the SPSA per se.  Their issue

22 is what has been previously, I guess previously before the

23 Court or noted, which is that they don't believe that any

24 U.S., quote, unquote, trade Creditors should be given

25 preferential status or treated differently relative to other

1    Creditors, so their concern is with the NTCC Settlement that

2    was announced over the weekend.  Among things, it failed to

3    provide certain reserves that are being set aside for the

4    NTCC Claimants.  LSI believes that any such reserves should

5    be made for all Creditors according to priority and stature.

6         Other than that, they do not have an objection to

7    the global Settlement.

8         THE COURT:  All right.  So you're not objecting to

9    the Court's jurisdiction, among other things?

10        MR. RECKMEYER:  No.

11        THE COURT:  All right.  Very well.

12        Well, let me comment on jurisdiction because

13   that's sort of a seminal point here, and I know there's no

14   objection to it at this time so I'm not going to go into

15   great detail, but what we're dealing with in part is the

16   Interim Funding and Settlement Agreement and the terms of

17   that Agreement, which provide that the Debtors shall -- and

18   this is paragraph 12C -- the Debtors shall as soon as

19   reasonably practicable following the execution of this

20   Agreement negotiate the good faith and attempt to reach

21   agreement on a timely basis on a protocol for resolving

22   disputes concerning the Allocation of Sale Proceeds from

23   Sale Transactions, and then 12D, the selling Debtor shall

24   immediately following entry into any Sale Transaction

25   negotiate in good faith and on a timely basis to attempt to

1  reach agreement regarding the Allocation of the Sale

2  Proceeds from such Sale Transaction.  And what I think has

3  happened here is, there's been a settlement of using the

4  IFSA, the Interim Funding Settlement Agreement, and the

5  proposed Confirmation Order merely renders the Allocation

6  Order irrelevant, and we have cases, the in Re Washington

7  Mutual case that says that -- where the Court found that it

8  had jurisdiction to confirm a plan even though it might

9  render moot a pending appeal.  We have in Re Prudential

10 Lines Inc. out of the Southern District of New York in 1994

11 where the Court said the Bankruptcy Courts reject broad

12 application of the divestiture rule to permit as little

13 disruption of the bankruptcy case as possible, and there the

14 Court held that the Bankruptcy Court did retain jurisdiction

15 of the matter in the absence of a stay pending appeal.  And

16 we have the Sabine decision from Judge Chapman in the

17 Southern District of New York where Judge Chapman held that

18 if the divestiture doctrine were to be applied in a way that

19 divests Bankruptcy Courts of jurisdiction over all issues

20 relevant to confirmation on which the Court has previously

21 ruled and are the subject of a pending appeal, this would

22 lead to an absurd result.  Courts would likely decline to

23 rule on any issues that could be implicated at confirmation

24 for fear of interfering with the debtor's ability to emerge

25 from Chapter 11.  Moreover, it would effectively cede

1  control of the conduct of a Chapter 11 case to disappointed

2  litigants.  This cannot be and is not the law.  So the Court

3  finds that it does have jurisdiction, it retained

4  jurisdiction, and we may proceed.

5          MS. SCHWEITZER:  Thank you, Your Honor.  I'm happy

6  to proceed.  I'm just also mindful of the clock that we're

7  at quarter 'til --

8          THE COURT:  Yes.

9          MS. SCHWEITZER:  -- and so what I'm proposing to

10  do is to start with a summary of some of the SPSA terms and

11  how it rolls into 9019 and talk about the NTCC Settlement.

12  I will then be prepared to call Mr. Ray and Mr. Kennedy for

13  brief testimony.  I wouldn't imagine it's going to last more

14  than a half-hour.  I think I'm done under an hour in all of

15  that.  I assume that we can continue to address LSI's

16  objection to that first step.  I'm not aware of any other

17  objections but I'm people want to be heard in support or

18  against that, those initial issues.

19          THE COURT:  Right.

20          MS. SCHWEITZER:  I just want to make sure that if

21  there's a point at which I should be planning for a break,

22  or if there's something you want to do to manage the time, I

23  can work around that.

24          THE COURT:  Justice Newbould, what do you think of

25  a break at this point?

1             JUSTICE NEWBOULD:  I'm quite happy to if you'd

2  like, Judge Gross.

3             THE COURT:  All right.  Why don't we take -- given

4  the number of people in the courtroom, why don't we take 15

5  minutes?  And we'll resume here again just a little bit

6  after noon.

7             MS. SCHWEITZER:  Great.  Thank you, Your Honor.

8             THE COURT:  All right.  We'll stand in recess.

9                (Recess from 11:47 a.m. to 12:12 p.m.)

10             THE CLERK:  Please rise.

11             THE COURT:  Thank you, all.  You may be seated.

12                           (Muffled voices)

13             THE COURT:  Watch out.  You're on the mic up there

14  in Canada.

15             MS. SCHWEITZER:  And enough people on the phone

16  know that their mics are live also?

17             THE COURT:  Oh, that's right.  It could be the

18  phone people.

19             Justice Newbould, are you ready?

20             JUSTICE NEWBOULD:  Yes, I am.

21             THE COURT:  All right.  Ms. Schweitzer, we're

22  ready.

23             MS. SCHWEITZER:  Thank you, Your Honor.

24             So to lead off, we're obviously here for the

25  Confirmation of the U.S. Debtors' Plan.  The backbone of the

1  Plan really is the Settlement and Plan Support Agreement

2  that was signed last summer between and among the Debtors,

3  their foreign affiliates, and various Creditor constituents,

4  and the Plan really comes and just implements that SPSA

5  quite directly.

6           The SPSA has been presented to Your Honor as part

7  of the Plan and also as a separate Rule 9019 Motion because

8  it is the central compromise of various disputes.  Obviously

9  the one that makes the headlines all the time is the

10  compromise of the Allocation Decision, and the Canadian

11  counsel had highlighted some of the aspects of the

12  compromise in that regard.  As Your Honor noted, the

13  compromise also comes from the authority that the parties

14  agreed to under the IFSA is that the different Estates would

15  put the money in a lockbox and would release that money from

16  the lockbox in the event of a compromise of how to cut up

17  the pie.  But obviously in addition to that, the Pleadings

18  repeatedly say and it's of fundamental importance that the

19  Settlement Agreement isn't merely the release of lockbox

20  proceeds but it really throughout the negotiation and the

21  reason that it's being put forward is it's an integration of

22  a whole bunch of settlements that come forward, and

23  particular with the U.S. Debtors, there are other aspects

24  and pieces to the puzzle of how the Debtors sit compared to

25  other Debtors that are also equally fundamentally important

1   in the SPSA and the compromise achieved up there.  There are

2   various intercompany Claims against U.S. Debtors that were

3   resolved and just clean-up and side letters and release of

4   money, but the thing that never can be understated the

5   importance of is also the U.S. Debtors obviously have a $2

6   billion Claim against the Canadian Debtors.

7           THE COURT:  Yes.

8           MS. SCHWEITZER:  And so if the money comes to

9   Canada, the U.S. Debtors again get a large share of those

10  Sale Proceeds coming through that $2 billion Claim.  Also,

11  the Bondholder counsel also sits in the U.S. Courts and it's

12  in U.S. law government indenture but in fact the Bonds, the

13  $4 billion of Bonds, are Canadian Creditor obligations, and

14  two of the largest Creditors in Canada are the U.S. Debtors

15  and then the Bonds, which are guaranteed in the U.S.

16          THE COURT:  Right.

17          MS. SCHWEITZER:  And so an essential part of the

18  bargain and an integrated part of the bargain is some of the

19  money's going to the U.S. and some of it's coming to Canada,

20  and the SPSA, which then again serves as the backbone for

21  the Canadian Plan, also creates certain boundaries that you

22  heard outlined in Canada that our Claims will be treated on

23  a *pro rata* basis, a *pari passu* basis, that there will -- the

24  Canadian Estates will be consolidated together such that

25  money can't be parked in one Canadian Debtor or another or

1   there won't be guarantees and triple dips within the

2   Canadian Estate that would erode value and the preservation

3   of value for the U.S. Debtors, and there are obviously other

4   effects protections, currency conversion protections and

5   subrogation rights and tax on Creditor recoveries and a lot

6   of mechanical issues, and any time you try to make a list

7   you feel like you've left one off that's equally important

8   or also is another lever into the formula.  But I think that

9   the SPSA, the complexity of it and the achievement of it, is

10  to be able to put all these different pieces together such

11  that when you get to the end of the SPSA, it's really just

12  handing out money in a very simple waterfall in the U.S.

13  Debtors' Plan.

14          As Your Honors are aware, the SPSA Settlements

15  were hard bargained for.  I would go through the list of

16  people that participated in that but they're well known to

17  you, and they were -- it was a lot of folks with a lot of

18  strong views and vigorous negotiation, and the types of

19  factors you would normally consider in a 9019 Motion that

20  was submitted at length, the complexity of the issues being

21  resolved, the expense and inconvenience of delay of not

22  resolving issues and not entering into a Settlement, and the

23  paramount interest of Creditors, the so-called Martin

24  factors, just resoundingly tip in favor of approving the

25  SPSA, which again makes approval of the plan easy.  The one

1  party that was not part -- that was part of the Allocation

2  Appeals was part of the mediations but was not a signatory

3  to the SPSA is relevant for today was the NTCC, the Nortel

4  Trade Claims Consortium, and they are a group of individual

5  Creditors who got together when the Allocation Decisions

6  came down and said this isn't enough for us, we are going to

7  spend our time and resources advocating that the U.S.

8  Debtors and particularly Unsecured Creditors get more money.

9  We have argued, many have argued, look, they're just looking

10  for general Unsecured Creditors.  Generally the one thing

11  is, they control their Appeal rights, and they came into the

12  room, they fought hard in the mediation, not to unleash the

13  conversation of mediation but they, like the U.S. Debtors

14  and the Unsecured Creditor Committees and the other Creditor

15  representatives fought hard to drive value to the U.S., and

16  at the end of the day when the larger SPSA was signed, they

17  were not a party to it.  However, the SPSA specifically gave

18  them certain protections in that the SPSA contains a

19  provision saying that the Bondholders will continue to

20  negotiate in good faith with the NTCC to have the NTCC

21  support the Plan.

22         Those further negotiations bubbled to you in hot-

23  and-cold different ways.  Your Honor's familiar with the

24  litigation that came before you after the Disclosure

25  Statement Hearing and different efforts to -- you know,

```
1   sticks and carrots and all that to get people's attention

2   and to try to move that forward.  Your Honor pointed to

3   Judge Farnan and said he wasn't already in one umbrella.  I

4   guess you appointed him or directed him to specifically

5   focus on resolution of the --

6            THE COURT:  That's right.

7            MS. SCHWEITZER:  -- NTCC Objection on recognizing

8   that they do have this role in the Appeal and that that was,

9   at least in their minds, an obstacle that they weren't

10  prepared to give up until they felt that they had gotten

11  adequate compensation and particularly from the Bondholders.

12           And so that was the Objecting Party.  Obviously in

13  the end, that resulted always in the 11th hour -- some

14  people would say everything in this case is on the 13th hour

15  -- but to the settlement of those issues.

16           Before the had resolved those issues, the NTCC was

17  really the primary party objecting to the SPSA.  I wouldn't

18  say all.  I think there are objections filed to the Plan or

19  other Claims raised today but they're relatively discrete in

20  terms of the larger Settlement.  NTCC's argument were, the

21  Court lacked jurisdiction, which we've already addressed,

22  whether there was sufficient Allocation dollars coming to

23  the U.S. Debtors generally, and arguments about how those

24  Allocation dollars were spread among the U.S. Debtors, all

25  of which were -- we have a lot of record evidence regarding
```

1  how those -- obviously the hard bargaining that took place

2  to get the Allocation dollars to the U.S. and the basis by

3  which Allocations were made to the other Debtors compared to

4  NNI.  Then NTCC also raised arguments about the treatment of

5  Bondholders under the Plan --

6          THE COURT:  Yes.

7          MS. SCHWEITZER:  -- which they said is unfair

8  discrimination on arguments or that the larger decision is a

9  de facto substantive consolidation.

10          And then most importantly to today's proceedings

11  is the NTCC also argued that the Debtors cannot moot their

12  Appeal rights, that they were just going to barrel forward

13  and press forward, and they were never going to willingly

14  give up those Allocation rights regardless of the

15  consequences to the larger case.  And so the other

16  objections other than that last one basically fall away both

17  because the NTCC is not on board, has settled, supporting of

18  the Plan and effectively withdrawing those objections and

19  because LSI, which is the only other party to join into

20  those Objections or the Objection generally, has walked

21  away, it sounds like from the phone, from those Objections

22  and their Objection now has turned to focusing on the NTCC

23  Settlement.

24          And so I can again at the end if there's any point

25  that Your Honor wants us to address any of those matters,

1   we're happy to put on more arguments or evidence, but I

2   think that there's certainly a lot of record evidence

3   regarding the history of the SPSA, the negotiations, the

4   Allocations among the U.S. Debtors, and our arguments on the

5   different Bondholder treatment issues, and I quite frankly

6   don't think that those are strong arguments that --

7           THE COURT:  Did LSI file an objection, Ms.

8   Schweitzer, or just a Joinder?

9           MS. SCHWEITZER:  Just a Joinder.

10          THE COURT:  That's what I thought.

11          MS. SCHWEITZER:  Yes, and some would argue you

12  remove an Objection, you haven't -- but we'll entertain it

13  regardless.

14          And so as I said, the hardest thing and frankly

15  the most power NTCC had was their argument that you can't

16  moot my Appeal, and the Debtors tried once to go to the 3rd

17  Circuit and to tell the 3rd Circuit, put this off, put this

18  off until the end of Confirmation and we were told to come

19  back on January 10th after the Objection deadline had

20  passed, which is exactly what the NTCC had requested.  They

21  came back on January 10th and said put this off again,

22  please put this off, we're going to confirm a Plan, we're

23  going to moot this, and if you don't set a schedule and we

24  can brief mootness and we will have pressure against NTCC,

25  we are in the right, NTCC is in the wrong, please allow us

1    to proceed.  There were crickets from the 3rd Circuit, and

2    we obviously have briefed at length our arguments of why

3    that's not a strong argument but we -- maybe it would win

4    the day, maybe not, but we got some news from the 3rd

5    Circuit on Monday which Your Honor I think is aware of is

6    that the 3rd Circuit on Monday which Your Honor I think is

7    aware of is that the 3rd Circuit had just on Monday after

8    the NTCC Settlement came out but was really the type of

9    issues that were driving the Settlement, the 3rd Circuit

10   issued an order saying the parties, meaning the worldwide

11   Nortel parties and Appealing parties including NTCC will

12   proceed on Merits Briefing on the Allocation Appeal, which

13   will start immediately and will go through May without even

14   knowing when those arguments on that Appeal would run, which

15   easily could run past the August outside date for the Plan

16   and the SPSA completion, and also would start running the

17   litigation cost clock all over again where again because of

18   the nature of where the Debtors sit that we -- part of our

19   money comes from our Claims against Canada, part of the

20   Debtor money for our Creditors comes from obviously our own

21   piggybank, and we would be -- we are now under a clock where

22   we absent a Settlement, absent the Plan being approved and

23   our ability to go back to the 3rd Circuit and declare a

24   global peace, we've now got a new clock running on expedited

25   briefing, expedited appealing in addition to the burn of

1   maintaining the Debtors in bankruptcy for months on end and

2   now in addition to putting delays in Creditor recoveries

3   under the Plan or even maybe potentially the ability to meet

4   the effective-date deadlines and to push the plan forward

5   are now all at risk.  So the NTCC certainly in the last

6   round of poker has all the chips in front of them.

7         The good thing I think at the end of the day is we

8   struck our deal on Sunday only to get the 3rd Circuit letter

9   on Monday but that leverage, the argument and the

10  uncertainty certainly again goes right back to the Martin

11  factors that people look at when they think about what a

12  Settlement is.

13        The other fact is to talk about what the

14  Settlement is in fact.  The NTCC Settlement, which follows

15  the term sheet and then we propose to integrate in the Plan

16  and Confirmation Order through minor amendments that were

17  filed yesterday is pretty simple at its essence.  It's a $4

18  million payment from the Bondholders.  Distributions

19  otherwise that would go to Bondholders are held back by the

20  Debtors.  They're deemed to be distributions for all purpose

21  but they're held in reserve by the Debtors so that if the

22  NTCC members don't get paid on their Unsecured Claims at a

23  certain threshold, then that can be used to direct value

24  towards them because that was their specific argument is

25  that we want value directed toward us, and if the Plan goes

1    forward for everyone else, we want some money held back for

2    us on that same idea that we can win an Appeal, we have a

3    special right.

4            The second half of the Settlement is that the

5    Bondholders on the one hand are giving up Substantial

6    Contribution Claims.  They've got their own fees coming off

7    of their Estate.

8            THE COURT:  Right.

9            MS. SCHWEITZER:  They have letters with the

10   Canadian Debtors where they agreed to come and look towards

11   the U.S. Debtors for money, and there's always of again

12   further claims against our Estate, and they gave those up.

13   The Debtors recognized the debt burn that we're about to

14   entail absent a Settlement, and the Debtors agreed to put 6½

15   million dollars up front today as a cost-avoidance measure

16   towards settling this Allocation Appeal and settling the

17   Plan Objection, but it all drives again into that mootness

18   argument which in the end it looks like it was a good deal.

19           There's a little -- just to walk through it and

20   state it on the record because I think that the Plan is

21   clear -- but there's a concept in the term sheet and then

22   also in the Plan, we use this term NTCC Settlement Claims

23   and that that's capped at $153 million.

24           THE COURT:  Yes.

25           MS. SCHWEITZER:  I think that there's obviously an

1  official Claims Register but people trade different times

2  and assign different Claims, and the Debtors want to make

3  sure that we're on a common understanding with the NTCC what

4  Claims go into this methodology.  Obviously if we're talking

5  about when you hit certain recoveries and how the $6.5

6  million will be applied, we kind of say to all your Claims

7  but the goal was to settle on a list of Claims and the NTCC

8  couldn't just trade into it, like oh, great, we have a deal,

9  let's trade in and throw even more Claims into that bucket.

10  So the Plan has a provision that the NTCC and the Debtors

11  will get together and just reconcile the list but knowing

12  that it could be less than $153 million but it won't be more

13  than $153 million.  It will be a Scheduled List of Claims.

14  That Scheduled List of Claims then gets allocated, the $6½

15  million payment on day one, and then if the recovery

16  thresholds hit above 70 cents aggregate including that 6½

17  million, then the Debtors can redirect proceeds from that

18  same List of Claims towards other Unsecured Creditors, again

19  until that 6½ million is effectively recouped and redirected

20  to other Creditors.  So we don't know if we'll ever get to

21  that threshold, but if we do, it's kind of a high-end

22  insurance that at certain thresholds the money comes back

23  and gets specifically directed to other Unsecured Creditors.

24          THE COURT:  Right.

25          MS. SCHWEITZER:  Obviously some fees are picked

1    up.   That seems to be a requirement for most settlements.

2    But there's -- a portion of their fees get picked up as

3    well.   And so that's the deal.   It's pretty straightforward.

4    And I think that the most important point obviously is that

5    it enables us to have NTCC aboard on the consensual

6    withdrawal of their Allocation Decision and to avoid that

7    significant cost burn, which isn't really thinking about

8    Plan recoveries.   That's just simply the money that's in our

9    piggybank today that we would like to maintain so that we

10   can give it out to Creditors, all of our Creditors, rather

11   than just have cash burn in the U.S., have cash burn in

12   Canada.

13          I know LSI had been focusing on sort of which

14   pocket this comes out of or how does it hurt them.   I think

15   we over the break went back and looked at the Declaration

16   that had been put in that I have the Declaration submitted

17   from John Ray and from Michael Kennedy.   We were prepared to

18   call them to the stand, but in reviewing the Declarations,

19   the way I would propose to proceed is to introduce the

20   Declarations into evidence --

21          THE COURT:   Yes.

22          MS. SCHWEITZER:   -- if people are willing to

23   accept it, do a very short proffer of just some of the

24   points that they would have otherwise covered if they were

25   called to the stand, and then if anyone wants to cross-

1  examine them, they're obviously available to be examined by

2  anyone here, and then if not, we have that into evidence

3  just recognizing the clock and the number of people again

4  who are being part of it today.

5        So with that, I would start with the Declaration

6  of John Ray, which was filed on the docket 17752 and is

7  dated as of yesterday's date, January 23rd, 2017.  As Your

8  Honor is aware, John Ray is the Principal Officer of NNI and

9  the other Debtors, and there are copies I believe in the

10  courtroom of the Declaration but I would start by proffering

11  the Declaration itself into evidence unless there's any

12  objection.

13        THE COURT:  Does anyone object to my admitting

14  into evidence Mr. Ray's Declaration?

15        Hearing no one, it is admitted.

16        MS. SCHWEITZER:  Thank you.

17        THE COURT:  We'll make it Debtors Exhibit #1.

18        MS. SCHWEITZER:  Yes.  And then in furtherance of

19  Mr. Ray's testimony, rather than calling him to the stand, I

20  have proposed to proceed with a very short supplemental

21  proffer on a couple of points unless anyone is opposed to me

22  proceeding in that manner.

23        THE COURT:  Any objection to a proffer to Mr. Ray?

24        All right.  You may proceed, Ms. Schweitzer.

25        MS. SCHWEITZER:  Thank you, Your Honor.

1          So Mr. Ray in addition to his testimony is

2     evidenced in his Declaration would also provide some

3     supplemental testimony with respect to the NTCC Settlement

4     and the manner in which the Settlement occurred, recognizing

5     obviously that there is a mediation privilege governing a

6     lot of the negotiations.  He's not looking to open the door

7     on that but just simply to provide information on process

8     and the resulting Settlement.

9          Mr. Ray if called to the stand would testify that

10    while NTCC was not a party to the SPSA that they did

11    participate in the mediations of the Allocation disputes

12    that did lead to the negotiation, development and execution

13    of the SPSA, that they were included because they had filed

14    or joined into the Reconsideration Motions filed by the

15    Debtors, and that they were also party to the Appeals in

16    front of the District Court and the 3rd Circuit where those

17    mediations originated from and were directed.

18         Mr. Ray would also if called to the stand note

19    that as part of the SPSA provisions that were negotiated

20    that there was an affirmative obligation of the Bondholders

21    to continue negotiating with the NTCC in good faith in order

22    to see if consensual terms could be agreed upon to have the

23    NTCC support the Settlement and the Plan, and to that extent

24    that further discussions and settlements with the NTCC

25    effectively are part of the SPSA process and the larger

1    Allocation Settlement, and further, those terms and the

2    ability to perform the SPSA.

3          Mr. Ray obviously could testify to the terms of

4    the NTCC Settlement but those are in evidence so there's no

5    need to go over them again in further testimony.  However,

6    if asked to compare the terms of the Settlement to a prior

7    offer which was disclosed on the docket as an unsuccessful

8    offer, Mr. Ray would testify that there was disclosed as

9    agreed to by the parties a prior offer made to the SPSA --

10   I'm sorry -- to the NTCC --

11         THE COURT:  Yes.

12         MS. SCHWEITZER:  -- in a mediation on January 16th

13   where it was a joint offer made by the Bondholders, the

14   Unsecured Creditor Committee and the Debtors to provide a

15   Substantial Contribution Claim to the Bondholders of about

16   6½ million and that the Bondholders then would direct

17   proceeds and payments to NTCC and that that offer while

18   structured differently essentially has the same economic

19   considerations and values as the ultimate proposal although

20   it was structured in a different manner and it again settled

21   a Substantial Contribution Claim.  It considered Claims by

22   the Bondholders in directing proceeds to the NTCC and it

23   enabled the Debtors -- it would have enabled the Debtors to

24   get the release of the Allocation Decision.  While that

25   offer wasn't accepted at the time as with respect to the

1  Debtors, it's economically quite similar to the final offer

2  where the final offer puts even more value from the

3  Bondholders on the table.  An additional $4 million of value

4  were put directly as an escrow that could be used towards

5  the NTCC Claims Holders.

6             I think that -- excuse me.  John Ray also if

7  called to the stand would point out that in considering

8  whether to settle with the NTCC and recognizing that a Plan

9  had been filed that the U.S. Debtors concluded that the NTCC

10 was in a different position than other Unsecured Creditors

11 as a party to the Appeal and that while the Debtors had

12 taken substantial steps to try to moot their appeal and to

13 try to proceed with SPSA and the Plan without their consent

14 and support that such efforts hadn't been fully successful

15 and that there was risk of delay and ultimate loss and cost

16 burn far in excess of the $6½ million that ultimately is

17 being paid to the NTCC under the Plan and would note in

18 particular the Order that came down from the 3rd Circuit on

19 Monday after the Settlement was reached which again shows

20 the first step of the cash burn that would occur absent the

21 Settlement.

22             And so if Mr. Ray was called to the stand, he

23 would testify that his bottom-line view of the effect of the

24 Settlement of the NTCC Allocation Decision or dispute and

25 their Appeal on the Debtors and the Creditors ultimately is

1  that it preserves assets of the Debtors rather than it ends

2  up being expense of the Debtors and it preserves the

3  Debtors' ability to make the Plan distributions and

4  recoveries which themselves wind up being on a *pro rata*

5  basis once the Plan is implemented and that also that the

6  net effect of the Settlement with NTCC is that it will be

7  able -- it helps the Debtor secure their ability to perform

8  on the Plan and to comply with their obligations under the

9  SPSA and therefore it is a part of the larger SPSA

10  Settlement.

11         And so that would conclude Mr. Ray's testimony if

12  he's called to the stand.  I can ask him to verify that that

13  truly and accurately states his testimony if he were called.

14         THE COURT:  All right.  Mr. Ray, does that

15  accurately report your testimony?

16         MR. RAY:  Yes, it does, Your Honor.

17         THE COURT:  All right.  Thank you, Mr. Ray.

18         MS. SCHWEITZER:  And so with that, I would submit

19  the evidence -- submit the testimony as a proffered

20  testimony in lieu of calling him to the stand.

21         THE COURT:  All right.  Any objection to my

22  admitting into evidence the proffer?

23         Hearing no one, it is admitted, Ms. Schweitzer.

24         MS. SCHWEITZER:  Unless anyone wants to examine

25  him, I would turn to the proffer of Mr. Kennedy's

1    Declaration.

2           THE COURT:  All right.  Does anyone wish to cross-

3    examine Mr. Ray, anyone in the courtroom?  All right.  You

4    may proceed then, Ms. Schweitzer.

5           MS. SCHWEITZER:  Thank you, Your Honor.

6           So the Debtors also filed a Declaration of Michael

7    Kennedy.  Michael Kennedy is a Partner at Chilmark Partners,

8    a financial advisory firm that has been advising the Debtors

9    throughout their case since 2010.  His Declaration is filed

10   with the Court on docket entry 17753, and it is dated

11   January 23rd, 2017, and I would offer that proffer into

12   evidence.  I believe it would be marked as Debtors Exhibit

13   #2.

14          THE COURT:  Any objection to my admitting into

15   evidence Mr. Kennedy's Declaration?

16          Hearing no one, it is admitted as Debtors Exhibit

17   #2.

18          MS. SCHWEITZER:  Excellent.  And with respect to

19   Mr. Kennedy, I don't believe there's a need to supplement

20   that testimony at this time.

21          THE COURT:  All right.

22          MS. SCHWEITZER:  And so I don't believe there's

23   anyone in the courtroom who wants to cross-examine him but I

24   will pause just to confirm.

25          THE COURT:  Does anyone wish to cross-examine Mr.

1   Kennedy?

2           Hearing no one --

3           MS. SCHWEITZER:  We can proceed?

4           THE COURT:  We can proceed, yes.

5           MS. SCHWEITZER:  So Your Honor, I think other than

6   that, obviously there's a lot of record evidence, and my

7   colleagues will later come up, and I believe will ask you to

8   take judicial notice of the larger docket in the cases and

9   the Allocation trial and the various appeals as well as

10  you're aware of the Canadian record, but I think that all of

11  those quite uncontested facts lead to the basis for approval

12  of SPSA, and the NTCC Settlement is the final component of

13  SPSA and an additional Plan Settlement.

14          As Mr. Reckmeyer from LSI -- representing LSI is

15  on the phone, had indicated, I understand his basic argument

16  to be just the concern that somehow NTCC is getting

17  preferential Plan treatment as a class 3 Creditor compared

18  to other similarly situated class 3A Creditors.

19          THE COURT:  Yes.

20          MS. SCHWEITZER:  I think that based on the

21  evidence that's been put in, that quite frankly they're not

22  getting any different treatment as class 3 Creditors.  The

23  Court is allowed to approve and certainly the Debtors are

24  allowed to settle Claims outside of Plan distributions.

25          THE COURT:  Right.

1          MS. SCHWEITZER:  And here, the NTCC had a unique

2    role in these cases in that they participated in the larger

3    mediations.  They put an anchor down years ago in arguing on

4    the Appeal and participating in the Appeal, and quite

5    frankly whether we like it or not, they've got a very strong

6    key right now at the 3rd Circuit and a lot of pressure to

7    exert with respect to their ability to continue the

8    litigation and try to extract more value towards themselves.

9    They also even in their own Objection raised arguments

10   secondarily originally to say look, even if you don't want

11   the Plan to go forward, I've got a key and so you've got to

12   drive money and put escrowed money set aside specifically

13   for me.  We obviously opposed it at the time as that is our

14   job to do, but that obviously is a secondary risk to the

15   larger Plan which promises *pro rata* treatment just to how

16   much money would be set aside if they ask for a lot more

17   than 6½ million to be set aside to protect their interest,

18   and that obviously those arguments are unique to them and

19   all come from their particular role that they took on years

20   ago and their advocacy for their own interests along the

21   way.

22          And so with that, I don't think that the question

23   of *pro rata* Plan distributions is even put in play.  The

24   Plan itself is only modified to make clear that the only

25   different in the Plan treatments is that they, unlike other

1  Creditors, have an obligation at certain recoveries to

2  potentially repay and redirect certain monies that they

3  receive but that the initial payment of 6½ million is being

4  made in order to get the Plan to get out the door, in order

5  to keep the value for other Creditors to come out the door.

6            It's worth also just mentioning in that it is a

7  modification to the Plan that's being made and so Rule 3019

8  does allow the Court to approve Plan modifications, and we

9  tried -- we had Mr. Kennedy run, and it's in his

10  Declaration, the effect that even if you wanted to say that

11  was treated as a change in recoveries, it was taking Plan

12  consideration away as opposed to just general Estate cross,

13  that the effect on Unsecured Creditor distributions at NNI

14  would be less than a penny.  I think we were on our fingers

15  counting what fraction of a penny.  We came up with three-

16  fifths or 60/100ths or whatever it is, but less than a half

17  a penny, less than quarter of a penny probably, even if you

18  wanted to look at the idea that this was actually Plan

19  Creditor proceeds being used rather than just Estate money

20  today so that it's certainly in 3019 that there's no

21  material Plan modification.  There's no need to resolicit

22  the Creditor recovery ranges within the Plan itself and

23  within the Disclosure Statement itself are well wider than

24  this type of effect.  Fundamentally, certainly under the

25  9019 factors of time, complexity, delay, paramount interests

1  of Creditors and risks of not settling, that this is quite

2  frankly a no-brainer to us given where we sit and given what

3  we face as a folk in the road of either getting this Plan

4  confirmed or really unleashing a whole new round of

5  litigation, which is a dream we've all lived and we care not

6  to live again.  And so that in our minds that this is just

7  Estate assets being spent and a Claim being settled in order

8  to get to the Plan and in order to be able to make Creditor

9  distributions.  It's not really a red herring to argue

10  somehow that they're getting treated differently for being

11  in the same place as everyone else because they quite

12  frankly are in a unique place.

13            THE COURT:  Yes.

14            MS. SCHWEITZER:  And so I don't mean to belabor

15  that argument because I actually do think it's rather easy,

16  and given the dollars at stake, I think it's a pretty

17  discrete argument.  I know that there are other -- Mr.

18  Reckmeyer is on the phone and may want to comment further.

19            THE COURT:  Right.

20            MS. SCHWEITZER:  I don't know if Your Honor -- I

21  don't want to open it up necessarily to every objection on

22  every issue but I'm happy to open it up if you want to hear

23  from other people who support the Settlement and, you know,

24  support the larger SPSA, and then we can turn to Objectors

25  on this issue.  The only one I know of -- is Mr. Reckmeyer

1   on the phone?

2           THE COURT:  Yes.

3           MS. SCHWEITZER:  And then once we get past that,

4   we're happy to go into the more general Plan Confirmation

5   Standards, if that makes sense?

6           THE COURT:  Okay.  Well, I'm not necessarily

7   urging anyone to come and speak in support of Confirmation

8   although you're welcome to before I hear from Mr. Reckmeyer.

9           Mr. Botter?

10          MR. BOTTER:  Good afternoon, Your Honor.

11          THE COURT:  Good afternoon.

12          MR. BOTTER:  Good afternoon, Justice Newbould.

13  David Botter, Akin Gump Strauss Hauer and Feld on behalf of

14  the Official Committee of Unsecured Creditors.

15          THE COURT:  Yes, sir.

16          MR. BOTTER:  Your Honor, with respect to the NTCC

17  Settlement and LSI's objection, I'll deal with that first.

18          Your Honor, the Committee is not happy with making

19  this payment to the NTCC Group.  However, it is a practical

20  solution to a problem that the Committee does not object to.

21          Your Honor, as we said in our Brief, speed and

22  certainty of distributions are of paramount importance to

23  U.S. Unsecured Creditors.

24          THE COURT:  Yes.

25          MR. BOTTER:  Pressing forward with the Appeals,

1  the Allocation Decision achieves only the opposite:  delay

2  and uncertainty.  The NTCC Settlement resolves that problem,

3  so Your Honor, the Committee does not object to that portion

4  of what we are doing here today.

5       Your Honor, with respect to the larger Plan and

6  SPSA, we obviously have come a long way since January 14th,

7  2009.  For those of us who have been here since the

8  beginning, which includes Your Honor, the Debtors globally

9  and here in the U.S., the Committee and each of its members,

10  and the Bondholder Group, we've experienced a very long and

11  complex Chapter 11 proceeding that has allowed us to walk

12  through every issue that you would see in a Chapter 11

13  proceeding.

14       THE COURT:  Yes, indeed.

15       MR. BOTTER:  As well as many issues that we have

16  never seen before, Your Honor.  There were clearly high

17  points of these cases as well as not-so-high points.  At the

18  outset of the proceeding, as Ms. Schweitzer said, we faced a

19  great deal of uncertainty.  We had worldwide businesses that

20  were hemorrhaging money and had very difficult prospects.

21  As a result of this great uncertainty, Your Honor, as Ms.

22  Schweitzer mentioned as well, bond prices and Unsecured

23  Claims traded in the low 20s or even less than that.  We had

24  to make very difficult decisions at the outset regarding the

25  directions of these cases.  Ultimately we realized that a

1  sales strategy needed to be pushed here.  And over the

2  course of nearly two years, the major Creditor groups and

3  the worldwide Debtors engaged in a concerted and very

4  successful sales effort.  We generated in excess of $7

5  billion for the Creditors of the worldwide Debtors.

6           And as Your Honor is too well aware, our success

7  led to the next set of issues.  We spent a good deal of time

8  attempting to negotiate a resolution.  Unfortunately, we

9  were initially unsuccessful.  We then, Your Honor, went to a

10 trial, and that was a lengthy 20-day trial in front of the

11 two Courts, again an unprecedented mechanism to try to

12 resolve these cases.  That resulted in a Decision that as

13 Your Honor knows many in the U.S. did not necessarily agree

14 with.

15           THE COURT:  Right.

16           MR. BOTTER:  However, Your Honor, ultimately that

17 Decision and the Appeals that followed and the process that

18 both Courts set us on led to another mediation before Judge

19 Farnan, and that mediation obviously bore fruit, and that

20 gave rise to the Settlement and Plan before the Courts

21 today.  Before the latest Settlement, the TCC had questioned

22 the result for the U.S. under the Settlement.  Obviously

23 they are now on board.  But as we said in our response,

24 although the outcome was not as good as what we had hoped

25 for at the outset of the trial and certainly following the

1  sales, the Settlement clearly satisfies all four of the

2  Martin factors, Your Honor, and importantly, the Settlement

3  leads to putting dollars, real dollars into Creditors'

4  pockets.  And in terms of dollars for U.S. Creditors, on a

5  blended basis for all the U.S. Creditors in this room from

6  all their sources of recoveries, Your Honor, U.S. General

7  Unsecured Creditors again on a blended basis will receive in

8  excess of 90 percent.  We've heard a lot of different

9  numbers, 50 to 55, but if you take all the sources of

10  recovery from whatever jurisdiction, General Unsecured

11  Creditors in the U.S. will receive in excess of 90 percent.

12          So instead of looking back to the trial, Your

13  Honor, we instead look back at 2009 and where we came from,

14  and we've come again a very long way from 20 cents or less.

15  While it may not have turned out exactly the way we wanted,

16  and frankly, that's what the definition of a settlement is

17  for all parties, the Plan and the Settlement embodied

18  therein are fair and reasonable and should be approved

19  today.  Thank you, Your Honor.

20          THE COURT:  Thank you, Mr. Botter.

21          Good afternoon.

22          MS. GLEMANN:  Good afternoon, Judge Gross, Justice

23  Newbould.  Gabrielle Glemann from Hughes Hubbard and Reed on

24  behalf of the Joint Administrators for the Nortel entities

25  located throughout EMEA.  Recognizing from our Canadian

1   colleagues that brevity is the soul of wit, the Joint

2   Administrators support both approval of the SPSA and the

3   Confirmation of the U.S. Plan, and for the record, because I

4   didn't hear it in Canada before, also Confirmation of the

5   Canadian Plan as well.

6           THE COURT:  All right. Thank you.

7           MS. GLEMANN:  Thank you.

8           THE COURT:  Mr. LeBlanc?

9           MR. LEBLANC:  Yes, Your Honor.

10          THE COURT:  I know I'd hear from you.

11          MR. LEBLANC:  I'm sorry, Your Honor?

12          THE COURT:  I knew I would hear from you.

13          MR. LEBLANC:  Well, you're going to hear very

14  briefly from me now.  I want to give you one piece of

15  information that I think would be relevant to your

16  consideration of the Trade Settlement.

17          THE COURT:  Yes.

18          MR. LEBLANC:  Because obviously the Trade

19  Settlement includes our class of Bondholders agreeing to

20  provide consideration to a different group of Creditors, the

21  Trade Consortium, as well as waiving their Substantial

22  Contribution Claims, and the one piece of information I

23  think Your Honor should have is that our class, the class

24  that we represent -- or I'm sorry -- I should say the group

25  that we represent constitutes in excess of 82 percent of the

1  class of Crossover Bondholders, and we have accepted and

2  agreed to the treatment that's contained therein.  So the

3  extent that this was or constitutes any modification of the

4  Plan, I agree with Ms. Schweitzer that it doesn't appear to

5  us to be material but resolicitation will be unnecessary

6  because I'm here to tell you that 82 percent of the Bonds

7  have supported the Settlement that we negotiated and

8  consummated on Sunday.

9              THE COURT:  All right.

10             MR. LEBLANC:  I'll reserve comments.  There was

11  one objection that deals with us, and I'll reserve comment

12  until we get to the U.S. Trustee's Objection.

13             THE COURT:  All right.

14             MR. LEBLANC:  But we obviously support approval of

15  the SPSA and the Plan.

16             THE COURT:  Very well.  Thank you, Mr. LeBlanc.

17             MS. SCHWEITZER:  Your Honor, just for your

18  clarity, I think he's referring to the exculpation of --

19             THE COURT:  Yes.

20             MS. SCHWEITZER:  -- these issues, and we'll deal

21  with that later.

22             MR. LEBLANC:  Yes.

23             THE COURT:  And I understood that.  Yes.

24             MR. LEBLANC:  Thank you, Your Honor.

25             THE COURT:  Thank you, Mr. LeBlanc.

1          Good afternoon.

2          MR. RIELA:  Good afternoon, Your Honor, Michael

3   Riela on behalf of Bank of New York Mellon, the Indenture

4   Trustee for the Crossover Bondholders.  We basically

5   represent 100 percent of the Crossover Bondholders.

6          THE COURT:  Yes.

7          MR. RIELA:  The Bank of New York does not oppose

8   the Settlement with respect to the NTCC, even though we

9   should make the record clear, I think it's already been made

10  clear, but just to double-check, that the $4 million that

11  will be held in escrow will be taken from all of the

12  Bondholders including those are not part of the Ad Hoc

13  Group.

14         THE COURT:  That's my understanding, yes.

15         MR. RIELA:  Exactly.  So I just wanted to make

16  sure that that was clear.  But for all the reasons that Ms.

17  Schweitzer mentioned why the NTCC Settlement makes sense as

18  well as the fact that $4 million is one-tenth of 1 percent

19  of the total amount of bonds outstanding, Bank of New York

20  certainly does not have any objection to that particular

21  Settlement, and Bank of New York also supports Confirmation

22  of the Plan in the U.S. and the Sanction of the Plan in

23  Canadian.

24         THE COURT:  All right.  Thank you.  Thank you.

25         Mr. Lowenthal.

1           MR. LOWENTHAL:  Yes.  Good afternoon, Your Honor.

2           THE COURT:  Good afternoon.

3           MR. LOWENTHAL:  Good afternoon, Justice Newbould.

4  Daniel Lowenthal, Patterson Belknap Webb and Tyler.  I'm

5  here today with Stephen Miller of Morris James, our counsel

6  in Delaware.

7           THE COURT:  Yes.

8           MR. LOWENTHAL:  Edwin Lamek of WeirFoulds is up in

9  the Canadian Court today.  We represent the Trustee on the

10 NNCC Bonds.  As you know, that is now Delaware Trust.  It

11 had been Law Debenture but they transferred the business in

12 early December, and I'm here at this point to tell Your

13 Honor that we fully support Confirmation of the Plan and

14 entry of the Confirmation Order as proposed by the Debtors.

15 Thank you.

16          THE COURT:  Thank you, Mr. Lowenthal.

17          All right.  I guess it's my turn first to rule on

18 the Settlement with the Trade Consortium.  Is that right,

19 Ms. Schweitzer?

20          MS. SCHWEITZER:  I believe that's right unless Mr.

21 Reckmeyer wanted to say anything else on the phone.

22          THE COURT:  Mr. Reckmeyer, did you want to say

23 anything?

24          MR. RECKMEYER:  Thank you, Your Honor.  I'll keep

25 it brief.  Again for the record, it's Jeremy Reckmeyer,

1    Andrews Kurth Kenyon, on behalf of LSI.

2              As I iterated earlier, LSI does not object to the

3    SPSA Global settlement.  Certainly LSI doesn't want to be an

4    obstructionist or otherwise get in the way of the process.

5    It's been a very long case indeed, and LSI is happy along

6    with the other parties that we've reached the Confirmation

7    process.  LSI just has a concern, as previously stressed,

8    that the NTCC is being treated preferentially with respect

9    to, among other things, the reserve under their Settlement.

10   LSI does believe that there are issues under 1129 that

11   relate to unfair discrimination among similarly situated

12   Creditors, and would ask or note we believe that the

13   treatment that has being giving to, or being given to the

14   NNTC under the Settlement should be applied to all U.S.

15   Unsecured Creditors.

16             And with that, I would end my remarks.

17             THE COURT:  All right.  Thank you, Mr. Reckmeyer.

18             Well, I'm going to approve -- let me address the

19   Settlement with NNTC and the Trade Consortium because that

20   is a matter that is solely in front of me.  With respect to

21   the SPSA and the Confirmation of the Plan, I think that

22   Justice Newbould and I would retire and discuss that before

23   we come back and rule.

24             But on the Trade Consortium Settlement, I am going

25   to approve that Settlement.  I recognize that Rule 9019

1  applies, and the Settlement certainly meets the tests of

2  Myers v. Martin, in RE Martin, 91 F3d 389, a decision of the

3  3rd Circuit in 1996, and looking at the factors, the

4  probability of success in litigation while there is an

5  Appeal pending, we don't know what the likelihood of success

6  is, but there is a probability of success.  The difficulty

7  in collecting on a judgment, it's clear that is implicated

8  here because we do have two jurisdictions, and the Canadian

9  jurisdiction has made clear thus far that they're not going

10 to consider an Appeal, and if we have an Appeal going

11 forward in the 3rd Circuit, there's the possibility of a

12 stalemate, and that stalemate of course would prevent

13 distribution of Sale Proceeds.

14         The complexity of the litigation is obvious.  This

15 is a very complex litigation.  And the paramount interest of

16 Creditors is to receive the Sale Proceeds as quickly as

17 possible.  It's already been a long time.  People are

18 suffering and it's time to make payment.  So for those

19 reasons, I do find that Rule 9019 is met, and I also find

20 that Rule 3019 is met because this is a non-material Plan

21 modification.  It is a very, very small percentage, and I

22 find that the Settlement does indeed meet Rule 3019.  So for

23 those reasons, I will approve it.

24         MS. SCHWEITZER:  Thank you, Your Honor.

25         One thing of housekeeping.  We had noticed the

1  Settlement out on Sunday night.

2            THE COURT:  Yes.

3            MS. SCHWEITZER:  There was also obviously notice

4  previously that the NTCC was an Objecting Party.  They were

5  engaged in mediation in December, in January.  Prior offers

6  have been blown out that had similar economic terms.  And so

7  certainly we would argue that it is non-material change on

8  anyone including participating Creditors and that we have

9  representatives of those various Creditors in the courtroom,

10  whether it's the Indenture Trustee or the Counsel of

11  Bondholder Group, but we would ask if Your Honor is amenable

12  to making a finding that the notice also was adequate under

13  the circumstances.

14            THE COURT:  I am willing to do that, Ms.

15  Schweitzer.  Thank you for bringing that to my attention.

16  Yes.

17            MS. SCHWEITZER:  Thank you.

18            And then with that, I believe we're into the rest

19  of the Plan, and a lot of it is set forth in the Briefs but

20  I was going to cede the podium to my colleague, Ben Beller,

21  and I believe this is his first time appearing in front of

22  Your Honor --

23            THE COURT:  All right.

24            MS. SCHWEITZER:  -- so that he can go through

25  that.  One of the aspects that he can touch upon is as part

1    of the Settlement, the NTCC has changed its vote to support

2    the Plan and so documents were filed last night that I

3    believe are before Your Honor as well on that.

4              THE COURT:  Yes.  Let me ask a question.  It's a

5    little bit after 1:00.  Do people want to take a lunch

6    recess at this point and come back and finish after the

7    recess?  I think it's a good idea, but I know that there are

8    a lot of people here who would be getting lunch during the

9    recess.

10             MS. SCHWEITZER:  Yes.

11             THE COURT:  Is that something that the parties

12   would like to do?

13             MS. SCHWEITZER:  We're happy to do it now.  Or how

14   long do you think you would need?  So he's saying he can

15   finish the voting 1129 about five, ten minutes.

16             THE COURT:  All right.

17             MS. SCHWEITZER:  And then the next step after that

18   would be turning to the Objections.

19             THE COURT:  That's right.

20             MS. SCHWEITZER:  Would that be all right if we

21   just close this off?

22             THE COURT:  That's fine.  Yes, let's do that.

23             MS. SCHWEITZER:  Okay.  Thank you.

24             THE COURT:  Good afternoon, Mr. Beller.

25             MR. BELLER:  Good afternoon, Your Honor.

1              THE COURT:  Good to see you.

2              MR. BELLER:  Thank you very much.

3              THE COURT:  Yes.

4              MR. BELLER:  For the record, Benjamin Beller from

5    Cleary Gottlieb on behalf of the Debtors.

6              The next item, as Ms. Schweitzer said, is the rest

7    of the Plan and certain specific issues that we wanted to

8    put on the record. Specifically, the voting results --

9              THE COURT:  Yes.

10             MR. BELLER:  -- which are contained in the initial

11   Declaration of Jane Sullivan on behalf of Epic Bankruptcy

12   Solutions LLC, which is the Debtors' claims balloting agent,

13   as well as the Supplemental Declaration that was filed

14   yesterday --

15             THE COURT:  Yes.

16             MR. BELLER:  -- in light of the NTCC Settlement.

17             THE COURT:  Remind me who that was.  That wasn't

18   Mr. Sullivan, was it?

19             MR. BELLER:  Ms. Sullivan was also the Declarant

20   in yesterday's --

21             THE COURT:  All right.  Okay.

22             MR. BELLER:  -- Supplemental Declaration.

23             THE COURT:  All right.

24             MR. BELLER:  And so the initial Declaration --

25   well, first and foremost, I think, just as we did with the

1   other Declarations, I'd like to introduce both the Initial

2   Declaration and Supplemental Declaration in evidence, and

3   Ms. Sullivan is here should anyone wish to cross-examine.

4           THE COURT:  Any objection?

5           All right.  Those are admitted then as Debtors

6   Exhibits #3 and #4.

7           MR. BELLER:  Thank you very much, Your Honor.

8           And just to briefly go through the key facts in

9   those Declarations, as of the voting deadline, Epic

10  calculated -- tabulated the votes, and all voting classes

11  other than class A3A in which the NTCC holds a number of

12  claims had voted to accept the Plan.

13          THE COURT:  Yes.

14          MR. BELLER:  And then on Sunday, January 22nd, the

15  NTCC filed a notice of its intent to change the votes both

16  in class A3A and the other classes against the Consolidated

17  Debtors NNI and NNCC.

18          THE COURT:  Which gave rise to the Supplemental

19  Declaration obviously.

20          MR. BELLER:  Which gave rise to the Supplemental

21  Declaration.

22          THE COURT:  Yes.

23          MR. BELLER:  And in the Supplemental Declaration,

24  Ms. Sullivan declares that in light of that notice of

25  intention to change the votes of the NTCC class A3A would

1  become an accepting class --

2          THE COURT:  Yes.

3          MR. BELLER:  -- of the Plan.

4          THE COURT:  Yes.

5          MR. BELLER:  And so in light of those Declarations

6  and the notice, the Debtors as well as the NTCC would ask

7  the Court to approve the change of the votes pursuant to

8  Rule 3018, and I'm happy to go through some of the reasons

9  -- you know, the reason why, which is the Settlement, but

10  that, you know, under the circumstances with the Debtors as

11  the Plan proponents supporting the vote change --

12          THE COURT:  Yes.

13          MR. BELLER:  -- in that the vote change furthers

14  the goal of consensual voting on the plan, that cause has

15  been shown and that the vote change should be approved.

16          THE COURT:  All right.  Does anyone wish to be

17  heard?

18          I agree, Mr. Beller.  Rule 3018 does indeed

19  establish the basis for the vote change, and there is cause,

20  and I approve it.

21          MR. BELLER:  Thank you very much, Your Honor.

22          THE COURT:  Yes, sir.

23          MR. BELLER:  Moving on to the Confirmation

24  requirements and the Plan satisfaction, of those

25  requirements, the Debtors will largely rest on their Briefs,

1    the Declarations that have already been admitted in

2    evidence, and Ms. Schweitzer's arguments earlier on the SPSA

3    and the Plan, and then as Ms. Schweitzer alluded to, we

4    would ask Your Honor to take judicial notice of the record

5    of these cases including the full record of the Allocation

6    trial --

7              THE COURT:  Yes.

8              MR. BELLER:  -- the Appeal -- Appeals, and as well

9    as the Canadian proceedings, and with that evidentiary

10   record, we submit -- the Debtors submit that Section 1129

11   Confirmation requirements are all satisfied including the

12   good-faith requirement --

13             THE COURT:  Yes.

14             MR. BELLER:  -- and the best-interest test for

15   creditors.

16             And so in the interests of moving things along,

17   I'd like to jump quickly to one additional element of

18   section 1129 in the Plan, which is the Substantive

19   Consolidation of NNI and NNC.

20             THE COURT:  Please.

21             MR. BELLER:  As put forward in the Declaration of

22   Mr. Ray, the Debtors submit that the Substantive

23   Consolidation of those two Debtor entities is appropriate

24   under the applicable standards in the 3rd Circuit.  The NNI

25   and NNC have substantial identity based on operation as a

1    financing arm for the Nortel entities and for additional

2    reasons for put forward in Mr. Ray's Declaration.

3            THE COURT:  All right.

4            MR. BELLER:  And so with that, I think now is a

5    good time for the lunch break, and when we resume, Mr.

6    Cantwell and I can address some of the other Objections that

7    as Ms. Schweitzer said are more discrete as to the Plan.

8            THE COURT:  That will be fine, Mr. Beller.  I'll

9    look forward to that.

10           And we'll take -- why don't we be back here at

11   2:15?  All right.  I'll give you a little more time for

12   lunch.

13           MR. BELLER:  Sure.  Thank you, Your Honor.

14           THE COURT:  All right.  Thank you, all.  We'll

15   stand in recess.

16           (Recess from 1:06 p.m. until 2:18 p.m.)

17           THE CLERK:  Please rise.

18           THE COURT:  Thank you, everyone.  You may be

19   seated.  We'll wait for Justice Newbould to reappear.

20   Justice Newbould, welcome back.  Are you ready, Mr. Beller?

21           MR. BELLER:  Yes.  Thank you, Your Honor.

22           THE COURT:  You bet.

23           MR. BELLER:  Benjamin Beller, for the Debtors.

24   As discussed before the lunch break, we think it makes sense

25   to now move to discuss the Objections and Responses to the

1  Plan --

2              THE COURT:  Yes.  Yes.

3              MR. BELLER:  -- that sort have not already been

4  addressed.  The first item we would suggest moving forward

5  with is the -- are the filings by Solus Alternative

6  Assessment Management and PointState Capital.

7              THE COURT:  I agree.

8              MR. BELLER:  And the response to that filing by

9  the NNCC Indenture Trustee.  Ordinarily, the Debtors would

10 address the issues raised by the various filings but we

11 think that this issue is really one between the NNCC

12 Bondholders on the one hand and the Indenture Trustee on the

13 other.

14             THE COURT:  Yes.

15             MR. BELLER:  The one point we would want to make

16 before ceding the podium to those parties is that whatever

17 the resolution of this dispute that the Court determines is

18 appropriate, the Debtors believe that it should in no way

19 delay or affect confirmation of the Plan.  It doesn't

20 implicate or target the Debtors or their assets and so it's

21 really a dispute between the Bondholders and their Indenture

22 Trustee.

23             THE COURT:  And you've reserved how much for the

24 -- towards the fees?  Is it 4 1/2 million?

25             MR. BELLER:  The SPSA --

1                THE COURT:  Yes.

2                MR. BELLER:  -- provides that the Debtors will

3  pay up to 4 1/4 million.

4                THE COURT:  4 1/4?

5                MR. BELLER:  Of reasonable and documented fees

6  for the NNC Indenture Trustee.

7                THE COURT:  Right.  All right.  Thank you, Mr.

8  Beller.

9                MR. BELLER:  Okay.  So with that -- and the

10  Debtors, you know, reserve their right to be heard on these

11  issues after the presentations by the Bondholders and the

12  Indenture Trustee.

13                THE COURT:  Of course.

14                MR. BELLER:  Thank you.

15                THE COURT:  But I do understand your position

16  that this should not delay confirmation.

17                MR. BELLER:  Thank you very much, Your Honor.

18                THE COURT:  Yes, Mr. Beller.  Good afternoon.

19                MR. TEECE:  Good afternoon, Judge Gross. Good

20  afternoon, Mr. Justice Newbould.  My name is James Teece.  I

21  am Counsel to Solus Alternative Asset Management, L.P. and

22  PointState Capital, L.P.

23                THE COURT:  Yes.

24                MR. TEECE:  These are the NNCC Noteholders as

25  they have defined themselves.  They hold 90 percent of the

1  Notes issued by NNCC.  To be clear, Your Honor, our clients

2  fully support confirmation of the Plan.  They allow me to

3  echo the sentiment raised by the Debtor that this is not a

4  dispute that should stop confirmation of the Plan.  And to

5  be clear, this -- we're arguing in the Objection phase of

6  today's proceedings but our clients do not object to the

7  Plan.  This is not an Objection.

8                THE COURT:  Right.

9                MR. TEECE:  They voted in favor of the Plan.  Our

10  clients are parties to the SPSA.  They've signed that

11  document and they support confirmation of the Plan.  In

12  point of fact, our clients are -- there was a reference

13  earlier today to parties who expressed strong views over the

14  course of the case.  Those were our clients.  They believed

15  that they had very strong views about their Estimation

16  Motion, about intercompany claims between their Debtor, NNCC

17  and NNI.  They brought those views to the Court.  They had

18  [indiscernible] Support Agreement claim.  They expressed

19  those views and they compromised those issues --

20                THE COURT:  Yes.

21                MR. TEECE:  -- under the SPSA, Your Honor, and

22  they're very -- you know, they're happy with that outcome,

23  obviously, and they're happy with the Plan.  But there is a

24  procedural issue between the Noteholders and their Indenture

25  Trustee with respect to the implementation of the Plan and

1   the method and manner of making distributions that requires

2   that that issue be raised at confirmation.  And so to be

3   clear, we have no interest in interrupting the momentum of

4   these proceedings or confirmation.  But attempts to

5   compromise this dispute have not resulted in a negotiated

6   resolution and the NNCC Noteholders have tried to craft the

7   least intrusive option that they could for dealing with this

8   issue at confirmation.  And that brings us to today's

9   dispute, which stated with precision, is whether the

10  procedures that the Noteholders have outlined for resolving

11  their disagreement with the Trustee over its reasonable fees

12  and expenses, whether those procedures should be approved,

13  and they require two things.  The first is a process --

14  putting a process in place for litigating disputes over

15  those fees.  And the second is holding back, if you will,

16  the $8 million that's asserted in fees, meaning the $4.25

17  million that is payable for reasonable and documented fees

18  under the Plan and also having a refraining from the

19  exercising of a charging lien over distributions --

20              THE COURT:  Right.

21              MR. TEECE:  -- to make up the balance up to $8

22  million.  And the Noteholders, what they're envisioning, is

23  what they would respectfully submit easily implement;

24  specifically, a Briefing Schedule that allows for some brief

25  period of discovery and supplemental briefing.  There have

1  been some factual issues that have been raised in connection

2  with the fees.  They are listed in our papers, Your Honor,

3  which we detailed, but just to name a few, the question of

4  whether the work that was performed over an eight-year

5  period of time by six different law firms, whether that

6  inured directly -- each of those tasks inured directly to

7  the benefit of the Noteholders.  And to that, Your Honor, I

8  would point the Court to Judge Walrath's *In Re: Worldwide*

9  *Direct Decision*.  We have cited this case extensively in our

10  papers.  We submit that is very on point to the issue here

11  today and the Court defined the examination of

12  reasonableness under the Indenture and Judge Walrath set a

13  standard on page 133 and 132 of that Decision, saying that

14  the reasonable services are those "services necessary to

15  protect the interests of the Noteholders separate from their

16  interest as general unsecured creditors and there has to be

17  an assurance that the work is done only that which is

18  necessary to protect the Noteholders' interests."  So our

19  point is that there's a factual issue as to the extent to

20  which the fees that have been asserted satisfy those

21  standards.  There's also an issue as to whether the Trustee

22  managed its professionals properly over that period of time.

23  There were a number of law firms.  There's a long period of

24  time.  And Judge Walrath once again observed that the

25  Trustee has the duty to assure that the expenses incurred by

1  it and its attorneys were reasonable, and that's from page

2  129 of that Decision.

3           THE COURT:  Yes.

4           MR. TEECE:  There's also an issue as to whether

5  or not our clients or even their counsel signed off on the

6  fees or waived their right to challenge them.  That will be

7  addressed as well during that period of time.  And so we

8  would submit a period of time short, obviously, for that to

9  take place, supplemental briefing.  There will be more

10 granular challenges.  The parties signed a Non-Disclosure

11 Agreement when they tried to settle this dispute.  We have

12 received copies of the day note entries but you'll notice

13 that we did not reference them in our Objection.  We were

14 precluded from doing so under that Agreement but, obviously,

15 if there is a period of time for us where we can further

16 this Objection, that process will be baked into the

17 supplemental briefly.

18           And then lastly, Your Honor, there'll be a

19 preliminary motion practice and, specifically, there our

20 clients intend to move for the -- to compel that the dispute

21 be immediate.  And by that, Your Honor, we think that there

22 is a tremendous opportunity to take advantage of mediation

23 in this case.  It would be improvident not to do that.

24 We've asked the Trustee to agree to submit the dispute to

25 mediation.  The Trustee will not agree to do that

1    consensually so we intend to apply to the Court to compel

2    this dispute to submit to mediation.

3            THE COURT:  All right.

4            MR. TEECE:  And then I guess at some point

5    there'll be a hearing, if necessary, if there's no

6    resolution, Your Honor.  We would envision it taking place

7    at some point in connection with perhaps the final Fee

8    Application hearing but that's the timeframe that the NNCC

9    Noteholders are contemplating here.  And these procedures,

10   we respectfully submit, Your Honor, they protect every

11   party.  They protect the Trustee because the money is held

12   back.  The money is there to pay the fees.  If they are

13   provided not to be reasonable, they protect the Noteholders.

14   They prevent the money from leaving the Estate and there are

15   distributions being charged while this dispute is being

16   resolved and the Objection that we understand raised by the

17   Trustee is that because the day note entries have been made

18   available and because a pleading has been filed that

19   contains a description of the services, that the

20   reasonableness has been established, per se.  But we'd

21   respectfully submit, Your Honor, that there is no

22   reasonableness, per se, in the case law.  There's no

23   reasonableness that automatically entitles them to exercise

24   a lien by simply producing the day notes.  The Plan provides

25   in Section 7.13 and 7.14 and 10.6 that the reasonable and

1  documented fees may be taken out.

2          THE COURT:  Right.

3          MR. TEECE:  And in light of the challenge that

4  has been lodged to the reasonableness of the fees, we

5  respectfully submit that that issue has to be resolved and

6  then reasonableness must be determined before the money can

7  be taken to pay them.  And again, Judge Walrath, Your Honor,

8  in the *Worldwide Direct* case addressed this process, this

9  process of reasonableness, in the *Worldwide Direct* Decision

10  and the Court observes on page 130 that the burden of proof

11  "is on the applicant, but the Court may consider

12  corroborating testimony as well as first-hand observations

13  of services" but -- and again on page 132, where the

14  opposing party launches a sufficiently specific objection to

15  an aspect of a fee award, the burden is on the party

16  requesting the fees to justify the size of its award.  So

17  we'd respectfully submit that that's the process.  The Court

18  looked at Affidavits, time records, depositions, and various

19  pleadings; that that is the process that should unfold at

20  this point and, obviously, we'll endeavor to do it very

21  quickly but that should be the process.

22          And to be clear, we're not here to argue the

23  substance of the Objection today.  It's not our intent to do

24  that.  The *Worldwide Direct* case is very prescient.  We

25  think it will become relevant at that point in time when the

1  substance of the Objection is ultimately put to the Court if

2  Your Honor approves the procedures.  But to be clear, what

3  we're asking for today is only the implementation of these

4  procedures.  We respectfully submit that they are very

5  narrowly tailored to the issue that is before you and that

6  they protect every party's rights equally without

7  prejudicing any particular party.  And with that, Your

8  Honor, I realize we're late in the day so I'd like to, if I

9  just could.  We're the ones asking for this relief.

10              THE COURT:  Yes.

11              MR. TEECE:  Is if I could reserve a minute or two

12  to reply.

13              THE COURT:  Yes.

14              MR. TEECE:  Just one point of clarification, Your

15  Honor.  The Debtors and the Creditors Committee are not

16  involved in this dispute.  That is absolutely correct.  But

17  there is a residual interest that NNI has in the $4.25

18  million account.  So if the money is not fully exhausted,

19  that money goes back to the Estate.  So there is some

20  connection to that.  To be clear though, they have not --

21  they're not weighing in on this issue at all.  This is a

22  dispute between the NNCC Noteholders and their Indenture

23  Trustee.

24              THE COURT:  All right.

25              MR. TEECE:  So with that, Your Honor, if I could

1    just reserve a minute or two to respond --

2                    THE COURT:  Yes.

3                    MR. TEECE:  -- as we are the ones asking for the

4    relief.  I'd cede the podium at this point, unless Your

5    Honor has any questions as well.

6                    THE COURT:  No I don't, Mr. Teece.  But just give

7    me some sense of the timeframe that you're talking about

8    here.

9                    MR. TEECE:  Whatever works, Your Honor.  I think

10   the -- if there is a final -- I just -- the final Fee

11   Application hearing seems an eloquent solution that -- I

12   don't know when that is.  I don't even know if it's been

13   set.  But I know generally how often they -- what the

14   timeframe is between -- typically between the effective date

15   of Plan and the final Fee Application hearing.  That's fine.

16   Or if somebody -- the Trustee wants to do it more quickly we

17   can consider that as well.  I think what we just want is an

18   opportunity to develop the record and during the pendency of

19   that record development, to make sure that the money doesn't

20   leave.  We'll be -- we can work at the Court's schedule.  We

21   can work at the Trustee's schedule.  We can work at

22   anybody's schedule because at the end of the day, it is not

23   -- this is not a significant -- it shouldn't take a

24   significant amount of time.  I do think though, Your Honor,

25   that if there is mediation that is ordered, there should be

1 enough time for us to present the issue to a mediator before

2 we come back to you and have a hearing on the ethicacy of

3 the reasonableness of the fees.

4              THE COURT:  All right.

5              MR. TEECE:  Fair enough?

6              THE COURT:  Thank you, Mr. Teece.

7              MR. TEECE:  My pleasure.

8              THE COURT:  You have a couple of minutes in

9 reserve.

10              MR. TEECE:  Thank you very much, Your Honor.

11              THE COURT:  Yes, sir.  Mr. Lowenthal?

12              MR. LOWENTHAL:  Good afternoon, Your Honor.

13              THE COURT:  Good afternoon.

14              MR. LOWENTHAL:  I'm back.

15              THE COURT:  Yes.

16              MR. LOWENTHAL:  Good afternoon, Justice Newbould.

17 Daniel Lowenthal, Patterson, Belknap, Webb & Tyler, for

18 Delaware Trust, the NNCC Trustee.  Again, I'm here with

19 Steve Miller and Mr. Lamick who's worked with us also is in

20 the Canadian Court.  Now, Your Honor, I'm just going to take

21 in order the request that of the Trustee.  So we'll start

22 with the request that there's some type of procedure that

23 gets put in place that what that would do would hold back

24 from the Trustee what it's entitled to exercise when

25 distributions are made, a set amount of money that no --

1   have no reserve for these, this procedure that they want to

2   put in place.  And yet all the money that would be

3   distributed other than that they want to go to them.  That's

4   not fair.  I'm not familiar with any case that's done

5   something like that and it's not appropriate under the

6   Confirmation Order that's been proposed.

7           So first of all, I have three comments to that.

8   Your Honor asked how long this would take.  Your Honor, this

9   should not take long, and I'm going to get to the process in

10  a minute.  But I understand the Debtors hope to have an

11  effective date in 60 days.

12          THE COURT:  Yes.

13          MR. LOWENTHAL:  And make distributions then.

14          THE COURT:  I thought effective date was by

15  August?  Is that right, Ms. Schweitzer?

16          MS. SCHWEITZER:  The end point of the effective

17  date requirement is August.

18          THE COURT:  Yeah.

19          MS. SCHWEITZER:  I think that we have to wait for

20  Orders to go final so the effective date likely would be in

21  a month.  Distributions would occur after that time so.

22          THE COURT:  Okay.  Very well.  Thank you.

23          MR. LOWENTHAL:  So, Your Honor, hopefully -- we

24  hope you'll put an end to this very quickly for reasons I'll

25  get to in a few minutes.  But there's no need to tinker with

1   the language of the Confirmation Order as proposed.  It's

2   consistent with the Indenture.  It's consistent with the

3   Plan as proposed.

4               THE COURT:  Right.

5               MR. LOWENTHAL:  So that it gets resolved.  Again,

6   I would like to see this done very quickly.  We'll know the

7   reasonable amount that should go to the Trustee and we'll

8   know how much should be distributed.  So we don't need to

9   tinker in the first instance with any specific language and

10  punish the Trustee in that regard.

11              Two other alternatives, Your Honor.  I think that

12  one's fine.  The other one would be no one gets any

13  distributions until this is resolved.  Okay?  We just --

14  Delaware Trust can hold the money and if Your Honor has not

15  ruled before the date distributions are made, they'll hold

16  the money.  When we have a result, they'll get their money

17  and the Trustee and its counsel will get its money.  That

18  seems like a level playing field.

19              I have a third option that I think is actually a

20  really reasonable option, Your Honor, which is to treat us

21  the way the Court would treat Estate professionals.  You pay

22  out 80 percent of fees and 100 percent of expenses that have

23  been incurred.  I think my firm's carrying over $50,000 to

24  $60,0000 in expenses now for five years.  Okay?  You pay out

25  80 percent and you just hold back the 20 percent until you

1    figure out what needs to get done.  Again, if this is dealt

2    with before the distribution, we'll know what the amounts

3    are.  But if it's not, we just tinker with the Confirmation

4    Order.  You pay out 80 percent to the firms -- like Law

5    Debenture that preceded Delaware Trust, eight years, they

6    haven't got paid a penny.

7               THE COURT:  Right.

8               MR. LOWENTHAL:  Right?  And the Canadian firms

9    and my firms and -- my firm and Mr. Miller's firm.  Just

10   like all the Estate professionals, 80 percent out and

11   expenses, let's just get those things paid.  Okay.  That

12   deals with that issue.  I think those are all reasonable

13   ways that we could deal with this.  It doesn't penalize

14   anybody.

15              With respect to standing here on the day of

16   confirmation suggesting we now need litigation, and let me

17   just say up front; I'm going to get to reasonableness in a

18   minute.

19              THE COURT:  Yes.

20              MR. LOWELTHAL:  We agree.  Fees must be

21   reasonable under the Indenture.  There's no dispute about

22   that.  But to start launching into some litigation at this

23   point, depositions, discovery, and the like, Your Honor,

24   seems completely off base, completely off base.  What does

25   Your Honor do?  What does your fellow Judges on this bench

1  do?  They take the invoices, and in this case there's a Fee

2  Committee which we know month after month looks at invoices,

3  and that's exactly what they do.  And Your Honor can take

4  the invoices if you want; again, I think we should shut this

5  down now but I'm going to get to that in a few minutes, take

6  the invoices, look through them.  I've looked through

7  virtually all of them.  I should mention I also -- the Dewey

8  Estate which preceded me; Mr. Schmidt might be here.  I'm

9  not sure if he is or not.  Look at their invoices.  Look at

10 our invoices, Mr. Miller's, Mr. Lamick's firms.  It's not

11 going to take a long time.  You guys do this all the time.

12 And, of course, if you want any supplemental papers, we'll

13 of course be glad to give those to Your Honor.  We should do

14 that before we start in with depositions.  What?  Mr. Teece

15 and I are going to be deposed over our 1,500 conversations

16 we've had over the last five years and I'm going to have

17 somebody show emails to him in which he said Dan, go to

18 mediation; I'll stay back at my office; if you need me, call

19 me.  I mean is that what we're going to do here?  We don't

20 need to do that.  So take the invoices if that's what Your

21 Honor wants to do.

22        Now, I want to talk about the reasonableness

23 because, as I understand it, the Debtors, in making their

24 deal with our holders -- we weren't involved in that.  Okay?

25 We're not bound by that.  Holders are not a party to the

1  Indenture.  In making a deal with them, they decided, the

2  Debtors did for economic reasons and they've confirmed this,

3  to pay 4.25 of fees, just line in Canada, as I understand

4  it.  The Canadians are paying about half of the Ad Hoc

5  Bondholders fees.  Okay?  So the rest, which again, round

6  dollars would be $3.75 million for eight years worth of work

7  would come to us out of disbursements.  Now, what that means

8  is the holders really aren't paying us.  We have a lien

9  under the document as to disbursements and these

10 sophisticated parties, when they buy into a case like this,

11 they know that the Debtors may not pay any amounts.  Right?

12 Often we have to make a substantial contribution.

13             THE COURT:  Right.

14             MR. LOWENTHAL:  Right?  But here, no one's

15 objected to this.  So they buy in knowing there's a high

16 chance that there would be some money coming out of the

17 charge in the -- and we have a lien on that money and our

18 fees need to be reasonable.  Now, let's look at what's

19 happened in this case because I think any way Your Honor

20 slices it, 3.75 million for Law Debenture and now Delaware

21 Trust for a month, for the Dewey Estate which had this case,

22 was the counsel from the Petition date or thereabouts to

23 April or May of 2009, from my firm, Patterson Belknap, going

24 -- by the time distributions are made, it would be about

25 five years.  Okay?  Mr. Miller's been with me the whole time

1  as our counsel here doing exactly what he's supposed to do.

2  And Mr. Lamick has been doing this case for five years doing

3  what he's supposed to do up in Canada, a case of eight

4  years.  Somebody earlier today I think in Canada said this

5  is a long road.  We could come up with a lot of ways of

6  phrasing what this case has been; complex, cross-border,

7  joint trial by video link, Your Honor, unprecedented, EMEA

8  Debtors, Monitor, Debtors here, fees, over a billion.

9  Somebody told me we're approaching $2 billion.

10           THE COURT:  Yes.

11           MR. LOWENTHAL:  $2 billion.  Ad Hoc Committee

12  fees for the cross-over bonds -- now, my holders are on the

13  Committee but they don't run the Committee.  They're not the

14  majority.  Their fees, I understand -- it's not a knock on

15  them.  I'm not being critical to any other party, $50 to

16  $100 million, Your Honor, $50 to $100 million.  And if you

17  look back, if you look back, which really -- easy to do.

18  It's like if you go to a movie and at the end of the movie

19  you say to yourself or your significant other, you say I

20  knew how that was going to turn out the whole time.  But

21  when you're sitting in the movie you don't necessarily know

22  how it's going to turn out.  So this is -- they're treating

23  this as if this was all premeditated.  It was scripted.  We

24  knew this would be an eight-year process.  We knew there

25  would be four mediations.  We knew there'd be a 20-day

1  trial.  We knew we'd come in and have to make a

2  reconsideration and that there'd be all this briefing on PPI

3  and there would never be PPI.  Okay?  It's really easy to

4  look back and act as if we all knew how this was going to

5  play out.  But that's not reality.  Think of the timeline of

6  what everybody has done and Ms. Schweitzer and others have

7  talked about it.  But let's think about it because we have

8  lived it.  We are the ones who have been here while for

9  seven and a half years, seven and a half years.  I was in

10 college and law school for seven years.  Seven and a half

11 years, out holders, by their own choice, were unrestricted.

12 It meant they maintained the option to trade on the

13 securities while they knew we were involved in this case.

14 We were on the Committee.  We had access day in and day out,

15 week in and week out to confidential material so that we

16 could be there with BRG and Akin and others running recovery

17 scenarios as one mediator after another put forth a Plan.

18 They got all the benefit of that.  Okay?  And then they came

19 in and cut the deal through them that they cut.  All right?

20 Now, I'm going come back in a minute to the things that

21 we've been doing but I said to them, and I submit to Your

22 Honor, you know what it's like?  It's like we pitched eight

23 innings of a baseball game and we've been there every inning

24 and we've gotten out of our seat, we've gone to the mount,

25 and we have a shutout after eight innings.  It's 4 to

1    nothing.  And they come in in the ninth inning and close it.

2    But they give up three runs, because I'm going to talk about

3    if they gave up the Support Agreement, the PPI, and the No-

4    Call, three runs.  But we still win.  We get a distribution

5    of par.  And they say you didn't really do anything.  You

6    pitched eight innings of a game.  We're the ones.  We're the

7    closer.  We get all the glory.  Okay?  But let's think about

8    what happened here.  There was $7.3 million in the lockbox.

9    That's what this has been about for years after the Rock

10   Star sale.  And that's all that we've been involved with.

11   Okay?  The Debtors have filed, I don't know, 75, 85

12   Objections to claims.  We don't -- didn't spend time and

13   money seeing some -- looking through, oh, they object to

14   this trade creditor.  We better bill time and run up time.

15   No.  We've been focused on the lockbox and what would happen

16   to the NNCC holders throughout depending on all the

17   potential recovery scenarios.  When I got involved in 2012,

18   April, Justice Winkler was getting ready to mediate this.

19            THE COURT:  Right.

20            MR. LOWENTHAL:  That was the third mediation.

21   I've never been in a case where there's been three

22   mediations.  And then that mediation took place four years

23   ago in January of 2013.  Now, that didn't succeed.  And then

24   in March of 2013, Your Honor and Justice Morawetz, I believe

25   it was; it was before Justice Newbould was involved,

1    appointed four parties to participate in -- first through a

2    protocol, then do an allocation trial, right?  And the three

3    Indenture Trustees; Wilmington Trust, Bank of New York, and

4    Law Debenture were all part of the core parties of that and

5    we had a long time of working out the protocol.  Then there

6    was fact discovery and expert discovery and we picked our

7    spots.  Some of them like Mr. McConnell, we really wanted to

8    be involved because of what he was testifying about.

9    Others, we relied on the Akin team to give us summaries of

10   those depositions.  We did the trial, as somebody mentioned

11   earlier, a 20-day trial.  It started May 12th of 2014.  I

12   believe closings were on the -- September 23rd, 24th of that

13   year.  We had the PPI litigation which was so important to

14   us during that same period.  Right?  And then we got the

15   Decisions a year to the day after the trial started, May

16   12th, 2015, long Decisions by Your Honors.  Very complicated,

17   very involved, and somewhat unusual in the result because we

18   were all working on contribution theory, legally your own

19   theory, fair market value theory, and, of course, pro-rata

20   modified -- excuse me, pro-rata.  And then we made Motions

21   for Reconsideration.  We, ourselves and Mr. Lamick in

22   Canada, and Your Honors granted those Motions in both

23   jurisdictions.  And after that, after that we all went to

24   see -- everybody pretty much in this Courtroom went to see

25   Magistrate Judge Thynge.  We started to see the TCC showing

1  up in the case.  And she suggested we go see Judge Farnan

2  for another mediation, and we all know how successful that

3  was, and that took a while.  And then the SPSA emerged, the

4  Disclosure Statement, the Plan, and here we are on a day

5  that we should all be celebrating everybody's great efforts.

6  We even had another issue that went right directly to our

7  holders and us which was the PBGC joint and several

8  liability claim.

9          THE COURT:  Right.

10          MR. LOWENTHAL:  Right?  Because if they didn't

11  settle and there was no subcon and there was joint and

12  several liability at NNCC, that would have a huge impact on

13  the holder's recovery potentially.  We were all over that.

14  Our holders called me up.  They asked me the research I had

15  on something like that.  So eight years.  They're not

16  restricted for seven and a half years.  And you could ask

17  Mr. Teece.  You could say to him when he comes right back up

18  after I talk for his couple of minutes, you could ask him a

19  few questions.  You say, Mr. Teece, you knew they were on

20  the Committee for all of these years, right?  Did you ever

21  give them the direction to stand down or tell them not to

22  serve on the Committee?  I assume the answer is no because

23  we never got that.  Mr. Teece, you knew the Courts appointed

24  Law Debenture as a core party.  Did you ever tell them to

25  stand down or give them a direction and not do that

1   discovery, participate in that trial, do the Reconsideration

2   Motion?  Of course not because we worked on it together.

3   Mr. Teece, did you ever tell Mr. Lowenthal or anyone else

4   for Law Debenture not to go to the mediations, the ones we

5   had at Mr. Abbott's office in Delaware, the ones we had at

6   the Cleary office downtown, the ones that we had at the

7   Cleary office in midtown, New York where some of us were

8   sitting at the Milbank offices?  No.  In fact, what he told

9   me was, and he can tell you he wants discovery; Dan, you go

10  to the mediation, you see Judge Farnan, you talk to the

11  other parities, and call me if you need me.  Okay?  So I

12  went and I talked to the other parties.  If they had to,

13  they could testify.  They would tell you Lowenthal would go

14  around talking about the no-call all the time and he would

15  talk about PPI and the Support Agreement, which I'm going to

16  get to in a minute.

17           THE COURT:  I'm going to interrupt you.

18           MR. LOWENTHAL:  Sure.

19           THE COURT:  Because the whole point here is

20  reasonableness.

21           MR. LOWENTHAL:  Yes.

22           THE COURT:  And I understand all the points

23  you're making.

24           MR. LOWENTHAL:  Yes.

25           THE COURT:  And you'll have an opportunity to

1   make these points once we do the procedures.

2            MR. LOWENTHAL:  Yes.

3            THE COURT:  But we have to do it on an expedited

4   basis.

5            MR. LOWENTHAL:  We sure do.

6            THE COURT:  Because if the Debtors want to make

7   distribution in let's say a month, six weeks --

8            MR. LOWENTHAL:  Right.

9            THE COURT:  -- we have to have this resolved

10  within that time.

11           MR. LOWENTHAL:  I agree.

12           THE COURT:  So I will set a date --

13           MR. LOWENTHAL:  Okay.

14           THE COURT:  -- for a hearing.

15           MR. LOWENTHAL:  Okay.

16           THE COURT:  And you and Mr. Teece can talk about

17  discovery and briefing and that sort of thing and submit a

18  schedule to me that --

19           MR. LOWENTHAL:  If that's what Your Honor wants,

20  that's what we'll do.

21           THE COURT:  -- works within that, that date for a

22  hearing, and I will rule on what fees you're entitled to.

23           MR. LOWENTHAL:  Okay.  I just want to be sure I

24  understand.  You're going to set a hearing for us to come

25  tell you what the procedures will be?

1          THE COURT:  Well, either to argue or to present

2    evidence on the fees.

3          MR. LOWENTHAL:  Oh, okay.  I'm not sure -- I'm

4    really not sure I follow what you want.  We'll do whatever

5    you want, Your Honor.  What specifically do you want us to

6    do in the short term?  Do you want us to give Your Honor and

7    the Fee Committee the invoices?  What is it --

8          THE COURT:  I don't want the invoices.

9          MR. LOWENTHAL:  Okay.

10          THE COURT:  What I'm going to want is briefing.

11   If you want to take discovery, the two of you can discuss

12   what discovery you want.  You can discuss whether you're

13   going to want an evidentiary hearing.  I'll give you a day

14   within the six weeks.  And if you need help in arriving at a

15   Scheduling Order of some kind, I'll be available to work

16   those details through with you.  But I'd like you in the

17   first instance to try to meet one another's concerns and we

18   really have to move on here.  We have other Objections and

19   it's getting late in the day and I --

20          MR. LOWENTHAL:  Well, I was almost done anyway,

21   Your Honor.

22          THE COURT:  And I plan to rule and Mr. --

23          MR. LOWENTHAL:  So I hear -- no, no.  I was

24   almost done.  Obviously --

25          THE COURT:  Right.

1          MR. LOWENTHAL:  -- there's a lot I had to say

2    here.

3          THE COURT:  Yes.

4          MR. LOWENTHAL:  But I hear you loud and clearly.

5    If that's what Your Honor wishes then that's what we're

6    going to do.

7          THE COURT:  So we will set a hearing date and

8    we'll resolve this.  All right?  And if Mr. Teece wants

9    mediation, he can talk to you about that.  If you don't want

10   mediation, you'll get me -- we'll get on the phone and we'll

11   work that out.

12         MR. LOWENTHAL:  Very well.

13         THE COURT:  Okay?

14         MR. LOWENTHAL:  Yes, sir.  Thank you, Your Honor.

15         THE COURT:  Mr. Teece?

16         MR. TEECE:  Just -- Your Honor, I have nothing

17   further.  I appreciate your ruling.  Just one -- that was --

18   mediation was my first question.

19         THE COURT:  Yes.

20         MR. TEECE:  And the second one was in the six

21   weeks, are we anticipating it will be done before the

22   effective date because that obviates the question of whether

23   or not -- my point is simply this, Your Honor.  If we are

24   not going to be done before the effective date, I'd ask the

25   opportunity to come back and raise the question of holding

1  the cash back again.

2          THE COURT:  Right.  I understand that.

3          MR. TEECE:  Because if it's resolved before the

4  effective date, then we never even have to hit that point

5  about whether the money has to be held back.

6          THE COURT:  Well, I'm assuming the effective date

7  is six weeks.  Is that safe, Ms. Schweitzer, or a month or

8  five weeks?

9          MS. SCHWEITZER:  I'm just going to find out.  I

10  don't know what the distribution --

11          THE COURT:  Sure.

12          MR. TEECE:  And so we're clear, we'll work out a

13  schedule and if we can't agree on mediation we'll get on the

14  phone with Your Honor?

15          THE COURT:  You'll get on the phone with me.

16          MR. TEECE:  Thank you very much.

17          THE COURT:  That's right.

18          MR. TEECE:  Thank you very much, Your Honor.

19          THE COURT:  Absolutely.

20          MR. LOWENTHAL:  Your Honor, may I ask one

21  question?

22          THE COURT:  Yes.

23          MR. LOWENTHAL:  If we go to mediation, and I have

24  to talk to the client, who's paying for that?

25          THE COURT:  Well, Mr. Teece, are you paying for

1    mediation?

2                MR. TEECE:  What I would say is this, Your Honor.

3    I think if there's a reasonable -- if it's something that

4    has to be negotiated perhaps during mediation, there's a

5    reasonableness determination about the fees, if they are

6    drastically reduced, I think we would an argument that the

7    fees incurred in proving them up might be subject to

8    challenge.  If they're not drastically reduced, there may be

9    another alternative argument.  So it's something that I

10   think we'd have to --

11               THE COURT:  I suspect we'll be talking.

12               MR. TEECE:  Right.

13               THE COURT:  All right?

14               MR. TEECE:  Fair enough.

15               THE COURT:  And we will talk this through.  All

16   right?

17               MR. TEECE:  I think you're right.

18               THE COURT:  Good.

19               MS. SCHWEITZER:  Your Honor, just --

20               THE COURT:  Yes.

21               MS. SCHWEIZER:  I think this timing is starting

22   to work for everyone so it's not an issue but just because I

23   know people are going to take away bigger messages regarding

24   the effective date and distributions, so there's -- the Plan

25   provides that the U.S. and Canadian Orders will go final

1   before the effective date.  That's a waivable condition.

2   But if it wasn't, that would be weeks to a month --

3                THE COURT:  Right.

4                MS. SCHWEITZER:  -- timeframe.  And then the U.S.

5   Plan contemplates that the distributions will occur within

6   60 days after that.

7                THE COURT:  Okay.

8                MS. SCHWEITZER:  Obviously, you need to know

9   before the last date to push a button and the bonds are also

10  being paid by Canada and I don't want to speak for them when

11  they need is a runway.

12               THE COURT:  Yes.

13               MS. SCHWEITZER:  So that's --

14               THE COURT:  So if we did this within a month it

15  would work?

16               MS. SCHWEITZER:  It seems like that would work

17  within this lender's schedule so.

18               THE COURT:  Okay.

19               MS. SCHWEITZER:  But just so no one is reading

20  anything larger into distribution dates or when they're

21  going to look for some cash or something based on this

22  conversation so.

23               THE COURT:  That's right.

24               MS. SCHWEITZER:  Thank you.

25               THE COURT:  Mr. Teece and Mr. Lowenthal, I'll

1  tell you what.  Tomorrow morning at 10:00 we'll talk.  All

2  right?

3           MR. TEECE:  Thank you very much, Your Honor.

4           THE COURT:  All right?  Tomorrow at 10, Mr.

5  Lowenthal?

6           MR. LOWENTHAL:  That's fine, Your Honor.

7           THE COURT:  Good.  Mr. Beller?

8           MR. BELLER:  Thank you, Your Honor.  The next

9  Objection argument will be taken by my colleague Phil

10  Cantwell.

11           THE COURT:  Yes.

12           MR. BELLER:  So I'll turn the podium over to him.

13           THE COURT:  All right.  Thank you, Mr. Beller.

14           MR. BELLER:  Thank you.

15           THE COURT:  Mr. Cantwell, it's good to see you

16  again.

17           MR. CANTWELL:  It's good to see you as well, Your

18  Honor.  Good afternoon.

19           THE COURT:  Good afternoon.

20           MR. CANTWELL:  Good afternoon, Mr. Justice

21  Newbould.  For the record, Philip Cantwell, of Cleary,

22  Gottlieb, Steen & Hamilton, on behalf of the Debtors.

23  Responding to the U.S. Trustee's Objection and arguments

24  today --

25           THE COURT:  All right.

1    MR. CANTWELL:  Just a brief update to Your Honor.

2    Mr. Kenney and I spoke during the lunch break and he had

3    previously asserted three arguments, the first of which was

4    about the mutual SPSA Releases that were part of the bargain

5    for.

6    THE COURT:  Yes.

7    MR. CANTWELL:  SPSA.  He informed me that he's no

8    longer pressing that Objection --

9    THE COURT:  Okay.

10    MR. CANTWELL:  -- in light of the factual record

11    that he heard this morning.  So that is a moot issue.  Your

12    Honor, that does leave two Objections of the U.S. Trustee.

13    First, an argument that the Plan's Third-Party Releases

14    should not apply to those claims holders whose solicitation

15    materials were returned as undeliverable --

16    THE COURT:  That's right.

17    MR. CANTWELL:  -- during the solicitation

18    process.  And second, the Plan's exculpation provision

19    should not apply to those non-Estate fiduciaries, despite

20    their -- what we believe are substantial contributions to

21    the resolution of these Chapter 11 cases as Mr. Lowenthal

22    had just detailed in great detail.  And, Your Honor, I would

23    propose to just take these in order.  On the second one,

24    again, the U.S. Trustee is not attacking the Debtors or the

25    principal officers or the Creditor Committees fitting into

1   the exculpation provision.  But nevertheless, this is our

2   Plan.  We think that we appropriately drafted it.  So I'll

3   allow for some brief remarks before ceding the podium to the

4   three entities who the U.S. Trustee is attempting to carve

5   back those exculpation --

6               THE COURT:  Okay.

7               MR. CANTWELL:  -- provisions.

8               THE COURT:  All right.

9               MR. CANTWELL:  Your Honor, the U.S. Trustee

10  argues that the Third-Party Releases shouldn't apply to

11  claims holders whose solicitation materials were returned as

12  undeliverable.  And, Your Honor, simply this Objection

13  should be overruled because it's both inconsistent with the

14  solicitation procedures that we were before Your Honor

15  getting approved in December and it would minimize the

16  importance of the Publication Notice that the Debtors

17  provided and spent money to, again, to provide to all

18  creditors.  And, Your Honor, the appropriate lens to analyze

19  this Objection through is where did the Debtors start and

20  what did we receive approval for and then what did we end up

21  doing.  Did we follow through on the procedures that you set

22  us off to follow?  And to start, as the U.S. Trustee has

23  noted in its reply, we took a lot of care to make these

24  Releases consensual.  There wasn't gamesmanship.  If you

25  accepted the Plan, you agreed to the Releases.  If you

1  rejected the Plan, you were deemed to reject the Plan.  We

2  didn't deem you to reject and require you to opt out or do

3  anything else that we perhaps could have done under

4  precedent --

5          THE COURT:  That's right.

6          MR. CANTWELL:  -- in this District.  And

7  consistent with precedent in this District, as part of that,

8  as we've cited extensively in our Brief, we sought and

9  received approval and procedures that required a creditor

10 that did not care to cast a ballot but nevertheless wanted

11 to not be bound by the Releases to opt out and just mail the

12 ballot back in.  It wasn't a hard procedure.  It was one

13 that Your Honor approved and it's consistent with, again,

14 precedent in this District.  And as Your Honor found, these

15 procedures laid out in the Disclosure Statement Order were

16 fair.  They were appropriate.  That was in the Disclosure

17 Statement Order.  And the Debtors and their agents then went

18 out and implemented your Order.  The Debtors mailed ballots

19 to creditors entitled to vote at the addresses that we had

20 on file and that we had maintained throughout the course of

21 these cases.  The nominees pushed the solicitation packages

22 through to their beneficial holders at the addresses that

23 they have on file.  These are the same addresses that the

24 holders would need to get paid or receive, you know, other

25 notifications and keep them apprised of what's going on in

1    their various holdings and -- that they may have.

2          And to supplement this, Your Honor, the Debtors

3    provided proper Publication Notice of the confirmation

4    hearing that included all of the Releases that made the

5    Notice much longer but it provided adequate and actually

6    additional notice.  We published that in the *Wall Street*

7    *Journal*, as evidenced by a Solicitation Affidavit on the

8    docket at 17691.  We published it in the *Globin Mail*, as

9    evidenced by a Solicitation Affidavit at 17692.  These are

10   the same publications that we've been providing Publication

11   Notice in throughout the course of these cases.  So nothing

12   had changed.  We implemented the Order that you sent us out

13   to approve.

14          Now, the U.S. Trustees Objection asks that those

15   holders of claims whose solicitation materials were returned

16   as undeliverable should not be deemed to have failed to opt

17   out; that, in effect, it shouldn't apply to them.  And we

18   view this as a result to renew obligation to be imposed

19   belatedly into the Order that Your Honor approved and that

20   the Debtors then went out and executed on.  Not only is it a

21   new obligation, it's one that had it been requested at the

22   time of the solicitation procedures, the Debtors would have

23   protested to.  Certain of these holdings, particularly the

24   bondholdings, the beneficial holdings that are pushed

25   through to nominees, from what we understand from Epiq, it I

1  an incredibly difficult, if not impossible, task to ask

2  Broadridge, which is the nominee that pushes out well over

3  90 percent of the solicitation materials ultimately to the

4  beneficial holders and is employed by these nominees to do

5  the nominees mailings once we've gotten the packages out

6  from Epiq to the nominees, Broadridge just doesn't track

7  this information.

8              THE COURT:  Right.

9              MR. CANTWELL:  And I know that's not -- that's

10  something I'm telling you had it been an issue before Your

11  Honor back in December, it's something that we would have

12  put evidence in on and it's something that we would have

13  brought to Your Honor's attention because we don't think

14  it's a condition that could have been satisfied and it's

15  something that by being unable to be satisfied would have

16  prevented us from tracking and keeping these logs that the

17  U.S. Debtor -- excuse me, the U.S. Trustee now asks that we

18  have done.

19              Second, Your Honor, it requires the Debtors to

20  basically eviscerate the Publication Notice that we sought

21  and approved from Your Honor.  Again, we put it in the *Wall

22  Street Journal*.  We put it in the *Globin Mail*.  We paid to

23  do that and it's something that the Debtors believe we

24  should be able to rest on.  And if there's ever an instance

25  in the future where one of these hypothetical individuals

1    shows up and they run into an argument that says no, you

2    released that cause of action when you forgot to return a

3    ballot and did not vote, there are procedures in place to

4    deal with that in the future.  They're neglect standards.

5    They're the things that you just deal with on a day-to-day

6    basis when claimants try and bring claims.  So it's not

7    something that the Debtors need to forego today when we've

8    followed our procedures as approved by Your Honor.

9              THE COURT:  Right.

10             MR. CANTWELL:  Your Honor, that's all I have on

11   point two.  Moving on to point three, the U.S. Trustee

12   argues that the Plan's exculpation provisions should not

13   apply to those non-Estate fiduciaries, notwithstanding what

14   the Debtors believe are significant long-term involvement in

15   these cases.  Your Honor, this Objection should be overruled

16   because the exculpation provisions were both properly

17   constructed and the exculpation of non-Estate fiduciaries,

18   as Your Honor has held before multiple times, is appropriate

19   under applicable Third Circuit law and precedent in this

20   District.  To start, just -- I know I have mentioned it, but

21   just to be clear, the U.S. Trustee doesn't object to the

22   exculpation provisions being provided to the Debtors, to the

23   U.S. principal officer, to our advisors and agents, to the

24   Creditors Committee and their individuals acting in their

25   capacity.  The U.S. Trustee challenges exculpation for the

1  Bondholder Group, the NNC, the Cross-Over Bonds Notes

2  Trustee, and the NNCC Notes Indenture Trustee.  And Counsel

3  to these parties will be rising to address why they

4  specifically deserve the exculpation -- the benefits of

5  exculpation.  But as a threshold matter, we want to explain

6  why we believe it's appropriate as well.

7            The exculpation provisions are appropriately

8  tailored.  There are carve outs for gross negligence,

9  willful misconduct.  Moreover, as Your Honor has previously

10 held, and as we have cited to extensively in our briefing,

11 the exculpation of non-Estate fiduciaries is appropriate in

12 particular case-specific circumstances.

13            THE COURT:  That's right.

14            MR. CANTWELL:  We share Your Honor's view that

15 *PWS Holdings* at the Third Circuit at 228 F.3d 224, didn't

16 bar, did not present a, you know, Bretline bar on

17 exculpating the non-Estate fiduciaries and the case law that

18 has interpreted that Decision makes clear that where the

19 facts merited, it can be provided.  And we certainly think

20 that the facts merit it here.  Mr. Ray's Declaration went in

21 earlier today and paragraph 32 lays out why he believed that

22 exculpation is appropriate.  Moreover, as -- again, Mr.

23 Lowenthal I'm sure will rise momentarily, but any recitation

24 of the history of these cases makes clear that these three

25 individuals or entities --

1          THE COURT:  Yes.

2          MR. CANTWELL:  -- were involved throughout the

3  duration of the cases and we think the appropriate question

4  to Your Honor is could we be here without their involvement?

5  Could we be standing here before you today ready to do a

6  consensual Plan or would there be some alternative than

7  litigation?  We think the answer is no, we couldn't be

8  before Your Honor today presenting this consensual Plan if

9  not for the contributions and involvement and participation

10  and dedication of these three parties throughout the course

11  of these cases and for that reason, we believe that in these

12  -- in this case on these facts it is appropriate to

13  exculpate these non-Estate fiduciaries as we believe we have

14  done so as appropriately tailored in our Plan.  At this

15  point, Your Honor, I will cede the podium to I assume the

16  representatives for those non-Estate fiduciaries and would

17  just reserve a moment, if necessary, to respond to Mr.

18  Kenney's anticipated argument.

19          THE COURT:  All right.  Thank you.  Thank you, Mr.

20  Cantwell.  Mr. LeBlanc?

21          MR. LEBLANC:  Yes, Your Honor.  Good afternoon.

22  Good afternoon, Mr. Justice Newbould.  Your Honor, I will be

23  brief again.  We laid out in our papers the basis for our

24  belief that the exculpation provisions here are appropriate.

25  I was actually here before you about six months ago arguing

1  this same issue in the *NewPage Verso* cases.

2           THE COURT:  That's right.

3           MR. LEBLANC:  Where the same argument was made by

4  the United States Trustee that, as a matter of law, these

5  exculpations could not be granted and Your Honor there

6  concluded that we had met the requisite threshold and they

7  could be granted.  So we'd urge the Court to do the same

8  thing here.  I'm not going to go through the history.  Ms.

9  Schweitzer actually had mentioned at the beginning of these

10 cases, day one, there was -- the U.S. Debtors were actual a

11 DIP lender to their Canadian entities.  Your Honor may recall

12 that they would have been a larger DIP lender but/for our

13 objection at day one.  Literally on the first day of these

14 cases --

15          THE COURT:  That's right.

16          MR. LEBLANC:  -- they sought to lend 200 million.

17 We objected.  They ended up lending 75 million, the effect of

18 which is the U.S. Debtors have $125 million more and oddly

19 enough, had Your Honor approved that full DIP loan, Canada

20 would have gotten a larger allocation because they would have

21 had more claims against them.  And so we've been here from

22 day one and it's laid out in our papers.  Your Honor, I would

23 add to what is in our papers the stuff that happened over the

24 weekend and I think that's particularly important.  Whatever

25 arguments may have existed previously by the U.S. Trustee

1   with respect to exculpation, their -- they have to recognize

2   that they have changed as a result of what happened over the

3   weekend and let me just lay out why that is.  Over the

4   weekend, Your Honor, we reached a settlement with the Trade

5   Consortium.  As Ms. Schweitzer had put on the record today,

6   because resolution of the Third Circuit appeal is a condition

7   to making distributions, had we not reached that resolution,

8   the earliest, in the absence of some later settlement, the

9   earliest we could have had briefing done would have been May

10  of this year.  And then assuming argument, a Decision by the

11  Third Circuit, if we got to August we'd put at risk the

12  entire SPSA.  We stepped in to fill a breach that we had --

13  that had to be filled with respect to the Trade Consortium by

14  committing our own dollars, by having what -- something I've

15  never done before as a counsel in any case, having a creditor

16  write a check to another creditor and waive substantial

17  contribution claims so we could facilitate a settlement, and

18  a settlement not that resolves claims against us but resolves

19  Objections to a confirmation that if they hadn't been

20  resolved could have and would have delayed distributions to

21  creditors not just here in the U.S., but creditors around the

22  world.  And so we stepped in, recognizing that we had to find

23  a resolution and they were looking for us to help with a

24  solution to it.  We stepped in to help fill that breach and

25  that's just an example that I would add to what we put in our

1   pleading on Thursday because it happened thereafter of us

2   facilitating everything that's happened in this case.  We've

3   been a core party from the beginning under IFSA.  We have

4   consent rights.  We've been active participants in the

5   mediation and, Your Honor, we think we'd meet the requisite

6   standards that Your Honor laid out previously in the *Verso*

7   case and may others, *Magnum Hunter* and elsewhere to get the

8   exculpation applied to our clients and to us as well.

9           I won't -- I think the arguments with respect to

10  the consensual Third-Party Releases and whether the return

11  ballots are affected, the Debtors have covered that so we

12  won't add anything to that unless --

13          THE COURT:  Right.

14          MR. LEBLANC:  -- Your Honor has any questions.

15          THE COURT:  I don't.  I don't.

16          MR. LEBLANC:  Thank you, Your Honor.

17          THE COURT:  Thank you, Mr. LeBlanc.

18          MR. RIELA:  Good afternoon again, Your Honor.

19          THE COURT:  Good afternoon.

20          MR. RIELA:  Michael Riela, of --

21          THE COURT:  Yes.

22          MR. RIELA:  -- of Tannenbaum Halpern for the Bank

23  of New York as Indenture Trustee.  So the Bank of New York is

24  not just the Indenture Trustee.  They're also a member of the

25  Creditors Committee.  I understand that the Objection here of

1    the U.S. Trustee relates to our role as the Indenture Trustee

2    as opposed to a Committee member.

3             THE COURT:  Right.

4             MR. RIELA:  We've been the Indenture Trustee with

5    respect to the so-called cross-over bonds since before the

6    case, you know, since the Indentures were issued back in 2006

7    and 2007, respectively.  We've been involved in the entire

8    case from day -- from -- yeah, basically since day one and

9    including since the Committee was formed in early 2009.  As

10   Mr. Cantwell mentioned in his papers, as we said in our

11   papers as well, Your Honor already has recognized that the

12   *PWS Holding* case does not prohibit the exculpation of non-

13   Estate fiduciaries so I won't get into a long soliloquy about

14   that.  I did notice in the *NewPage* case, in the confirmation

15   -- during the confirmation hearing, you mentioned that that

16   case was uniquely unique I think is the term that you used.

17   If any case could be more uniquely unique, it may be this

18   one.  We have the -- obviously, the unprecedented cross-

19   border trial that lasted for weeks.  The Bank of New York, as

20   Indenture Trustee, was a core party in that matter.

21   Initially, some parties did not want us to be a core party.

22   We actually had to come to the Court to ask to be included as

23   a core party because, as Indenture Trustee, we speak for all

24   bondholders, all cross-over bondholders, and they -- and

25   obviously, cross-over bondholders had claims both in the U.S.

1   and Canada.  So there was -- there's nobody that spoke for

2   the entire universe of those cross-over bondholders, not even

3   the UCC which focused on U.S.-only creditors.  Obviously,

4   very vigorous negotiations, at least four mediations with

5   three different mediators.  We were involved in all of them

6   as Indenture Trustee.  And no party to these proceedings has

7   objected to the scope of the exculpation except for the

8   United States Trustee.  No economic party-in-interest has

9   objected.

10          The Bank of New York is not just a -- any old

11  party that wants to be part of an exculpation that would not

12  have any duties otherwise.  I think the Objection of WaMu and

13  Tribune and others, we're talking about situations where some

14  parties who don't actually have duties to creditors want to

15  be part of the exculpation.  Under the Indentures, the

16  Indenture Trustees do have duties to their bondholders and

17  the scope of the exculpation is very similar to the scope of

18  the duties and the scope of the exculpations that are in our

19  Indenture that we -- we attached the relevant provisions of

20  the Indentures as an exhibit.  There really is not much of a

21  change from what we would argue be protected under the

22  Indenture versus what the exculpation provision of the Plan

23  would already provide.

24          With respect to the Bank of New York's individual

25  contributions to the case as Indenture Trustee, I would point

1  to the facts that we have been involved in the entire case

2  for over eight years now.  We worked very closely with the

3  Unsecured Creditors Committee certainly and the Ad Hoc

4  Bondholder Group, provided input as Indenture Trustee as

5  needed, obviously tried to keep our own legal fees and

6  expenses to a minimum, which legal fees and expenses, just

7  like for Law Debenture and Delaware Trust, have not been paid

8  to date.  We've not seen a penny since the beginning of the

9  case.  We've certainly had an active role in the allocation

10 litigation.  We made submissions during the trial.  As

11 Indenture Trustee, we appealed both this Court's Decision and

12 the Canadian Court's Decision and we have the pending appeals

13 both before the Canadian Supreme Court and the Third Circuit

14 here.  We also negotiated the Plan provisions, helped

15 negotiate the Plan provisions dealing with voting and

16 distributions to make sure that the bondholders are getting

17 the distributions that they're entitled to and then were able

18 to vote.  And we -- let's see, what else do we have here.

19 There are a bunch of other things that have already been

20 discussed here so I don't want to belabor the points.  The

21 U.S. Trustee also mentioned that the Court could make a

22 finding under Section 1125(e) of the Bankruptcy Code that we

23 participate in the solicitation in good faith and I think

24 there's plenty on the record to at least support that finding

25 as well.  Unless you have any other questions, Your Honor, I

1    am done.

2                  THE COURT:  Thank you.

3                  MR. RIELA:  Thank you.

4                  THE COURT:  Thank you.  Mr. Lowenthal?

5                  MR. LOWENTHAL:  Yes, Your Honor, Daniel Lowenthal,

6    Patterson, Belknap, Webb & Tyler, for Delaware Trust, the

7    NNCC Trustee.  Your Honor, I've already discussed today all

8    the work that we have done, as Mr. Riela just did.  I won't

9    repeat that.  Bank of New York took the lead in outlining the

10   arguments with respect or in response to the U.S. Trustee's

11   Objection on exculpation.  We join all of those arguments,

12   Your Honor.  Thank you.

13                 THE COURT:  Thank you.  Thank you, Mr. Lowenthal.

14   I guess it's Mr. Kenney's turn.  Mr. Kenney, good afternoon.

15                 MR. KENNEY:  Good afternoon, Your Honor, and good

16   afternoon, Mr. Justice Newbould.  Your Honor, I'm not sure

17   which to start with first because I feel like I'm getting

18   attacked from all sides but let me start with exculpation

19   because that seems to be the one everybody's concerned with.

20   All of the parties that are claiming exculpation are already

21   receiving some kind of Releases anyway, which is itself

22   questionable, but in the Third Circuit they're generally

23   allowed.  What I'm basically hearing from everybody about

24   exculpation is I was at the table and, therefore, I want to

25   be exculpated.  I worked hard.  I want to be exculpated.  I

1  gave up something on claims.  I want to be exculpated.  Your

2  Honor, Chapter 11 is about people being at the table, banging

3  on the table, beating the hell out of each other.  It's about

4  people fighting for their claims.  It's about people

5  resolving their claims, giving up something on their claims.

6  And yet out of six Judges in this District, Your Honor,

7  you're the only one who still allows exculpation to non-

8  Estates fiduciaries.  Let me first point out that they

9  pointed out a couple of cases by Judge Silverstein and Judge

10  Sontchi where exculpation was allowed.  Subsequently, Judge

11  Silverstein, in *ATLS Acquisition*, said no more exculpation.

12  In *Allied Systems Holdings*, Judge Sontchi said no

13  exculpation.  Judge Carey recently in *Hercules* said no

14  exculpation.  You're not an Estate fiduciary.  You don't get

15  it.  And the reason is the Estate fiduciaries are there.

16  They have a job to do.  They're representing more than just

17  their own interest.  They're usually representing some very

18  large constituency, okay?  An Indenture Trustee for

19  Bondholders, as a member of a Committee, is representing the

20  General Unsecured Creditors, and I have no objection to them

21  being exculpated for that.

22          THE COURT:  Right.

23          MR. KENNEY:  Anything else that they're doing,

24  they're doing on behalf of the Bondholders that they're an

25  Indenture Trustee for.  They have a contractual obligation.

1   They have a fiduciary duty to those Bondholders.  Their

2   fiduciary duty does not run to the Estate.  It does not run

3   to any creditors other than the Bondholders.  So essentially

4   what they're saying is we were at the table.  We want

5   exculpation for that reason.  And, Your Honor, I know Your

6   Honor has said, you know, that you disagree as to everybody

7   else's interpretation of *PWS*.  Your Honor, I have to

8   respectfully say I disagree with your interpretation.  In

9   *PWS*, somebody had argued that Committee Counsel was getting a

10  Release and the Court looked at it and said no, well, it's an

11  exculpation that they're getting and it's appropriate because

12  they're fiduciaries.  Okay?  They didn't say anything about

13  it being appropriate for anybody who's a non-fiduciary.  So

14  you're essentially looking at if it's really just an

15  exculpation, it's really -- it's a Release, Your Honor, and

16  what are they doing to get this additional release that

17  basically even people who didn't consent to it, even people

18  who rejected the Plan, are still bound not to sue them.

19  Okay?  I have Indenture Trustees who acted.  What if an

20  Indenture Trustee did something horribly wrong, who's in

21  breach of the Indenture of Trust?  It seems to me by the

22  terms of that exculpation provision, none of the Bondholders

23  can sue the Indenture Trustee, regardless of what the

24  Indenture Trust provides.  The Indenture Trust might have had

25  some carve out that allows that suit.  I think this

1  exculpation, unless it was gross misconduct or willful

2  negligence -- willful misconduct or gross negligence, pardon

3  me, unless it's one of those things, those Bondholders are

4  going to be told well, not right here, you know, you're done;

5  you can't sue.  You know, the concept of exculpation has been

6  treated by the other Judges in this District as a narrow one

7  and, Your Honor, now, what I also noticed is that they cite a

8  lot of cases where you're the Judge.

9           THE COURT:  Yes.

10          MR. KENNEY:  They're citing you to you.

11          THE COURT:  Right.

12          MR. KENNEY:  Okay?  We had a Judge in the Eastern

13  District of Pennsylvania, Judge Schull, who was famous for

14  citing himself.  I don't think he faired too well

15  historically, Your Honor, and, you know, the idea of --

16          THE COURT:  It's kind of -- that's kind of --

17          MR. KENNEY:  The idea of citing yourself --

18          THE COURT:  -- insulting, Mr. Kenney.

19          MR. KENNEY:  -- to yourself --

20          THE COURT:  Mr. Kenney?

21          MR. KENNEY:  Your Honor?

22          THE COURT:  Hold on.

23          MR. KENNEY:  Your Honor?

24          THE COURT:  Hold on.  Hold on.  That's kind of

25  insulting.  But that's all right.

1          MR. KENNEY:  Your Honor, I am not trying to --

2          THE COURT:  You can insult me.

3          MR. KENNEY:  -- be insulting but I'm do -- I am

4    saying, Your Honor --

5          THE COURT:  I've heard enough from you, Mr.

6    Kenney.

7          MR. KENNEY:  -- that, you know, when you're --

8          THE COURT:  I've heard enough --

9          MR. KENNEY:  -- citing you to you --

10          THE COURT:  -- on this point.

11          MR. KENNEY:  -- you're saying nobody's smarter

12   than you.

13          THE COURT:  I've heard --

14          MR. KENNEY:  Nobody can possibly be.

15          THE COURT:  Mr. Kenney, I've heard enough from

16   you.  Sit down.

17   (Laughter from Mr. Kenney.)

18          THE COURT:  You may sit down now.

19          MR. KENNEY:  I may, but I won't, Your Honor.

20          THE COURT:  You may sit down I said or I'll call

21   in the guards to sit you down.  Is that what you want me to

22   do?

23          MR. KENNEY:  No, Your Honor.  That's not what I

24   want to do.

25          THE COURT:  Then sit down.

 1                MR. KENNEY:  I have --

 2                THE COURT:  Then sit down.

 3                MR. KENNEY:  -- an argument to finish, Your Honor.

 4                THE COURT:  No, you're finished your argument.

 5   You can sit down.

 6                MR. KENNEY:  Thank you, Your Honor.

 7                THE COURT:  You're a wise guy, Mr. Kenney.  Sit

 8   down.

 9                MR. KENNEY:  I'm a wise man but not a wise guy,

10   Your Honor.

11                THE COURT:  You're a wise guy.  Sit down.  All

12   right.  Now, I will take this under consideration.  Mr.

13   Cantwell?

14                MR. CANTWELL:  Thank you, Your Honor.

15                THE COURT:  What's the next Objection?

16                MR. CANTWELL:  The next Objection, Your Honor, is

17   actually more of a Notice, just to draw Your Honor's

18   attention to.

19                THE COURT:  Yes.

20                MR. CANTWELL:  As we had discussed at the

21   Disclosure Statement hearing, and today is not the day to

22   argue the merits of the SNMP Research claims but we wanted to

23   make Your Honor --

24                THE COURT:  Right.

25                MR. CANTWELL:  -- aware of the Notice and

1  Agreement that we entered into with them to avoid a

2  confirmation Objection today and it sets us up to move that

3  case forward as quickly as possible.  Your Honor, as you're

4  aware, SNMP had objected to the Disclosure Statement.  The

5  parties did agree to and did work consensually through Plan

6  confirmation issues.  We filed a Notice of Resolution of

7  their Plan Objection on the docket at Docket 17707 --

8              THE COURT:  Yes.

9              MR. CANTWELL:  -- on January 12th and it achieved

10 multiple goals that both moved the case forward and, you

11 know, will allow us to be back before you soon.  First --

12 without added litigation expense.  First of all, it cleaned

13 up a lot of the claims that SNMP had asserted in its

14 litigation on both the pre-Petition and post-Petition basis.

15 When it came to its Proofs of Claim, SNMP Research

16 International; you'll remember there are two SNMP Research

17 entities at issue here, had taken a very scattershot approach

18 and they filed a Proof of Claim against almost every Debtor.

19              THE COURT:  That's right.

20             MR. CANTWELL:  As part of this Agreement, they've

21 clarified that they're only going to try and assert their

22 claim against NNI.

23             THE COURT:  Right.

24             MR. CANTWELL:  Same on the adversary proceeding

25 post-Petition.  Both SNMP Research International and SNMP

1    Research, Inc. had asserted claims again against every

2    Debtor, or almost every Debtor, and now they've cleaned that

3    up again and they will be attempting to prove their claims

4    only against NNI and NN CALA.  This enables the Debtors to

5    move forward with the wind-down of the non-NNI, non-NN CALA

6    Estates and it allows us to clean things up without engaging

7    in expensive estimation or other related litigations.

8              THE COURT:  Right.

9              MR. CANTWELL:  Moreover, Your Honor, the deal

10    makes sense because of just where we are in the case

11    generally.  I'm not sure if Your Honor was aware but there

12    was a recent unsuccessful --

13              THE COURT:  Mediation?

14              MR. CANTWELL:  -- mediation in Knoxville.  We were

15    not able to resolve their claims.  Expert depositions are

16    commencing this week and as Your Honor may be aware, the two

17    SNMP Research entities have a Motion pending regarding their

18    pre-Petition claims that we'll be coming back to Your Honor

19    soon on and this Motion feeds really directly into the core

20    of kind of the Plan settlement and what the -- with SNMP what

21    the Debtors have agreed to do.

22              In this Motion that is soon coming before Your

23    Honor, SNMP Research International is asking to amend its

24    Proof of Claim upward by over 1,000 percent, from $8.1

25    million to in excess of $81 million and in the Debtor's view,

1   it's almost entirely consisting of what we believe is a new

2   copyright claim.  They are effectively withdrawing the

3   contractual royalties damages claim that they've had on file

4   for years and they're trying to replace it with an

5   infringement claim.  And at the same time, that Motion seeks

6   to add as a claimant SNMP Research, Inc. because, among other

7   reasons, as SNMP had stated in this Motion, Inc. is the

8   actual copyright owner of the copyrights that they've been

9   attempting to make a claim -- or that they're now attempting

10  to press a claim for and that they hadn't previously made.

11  So, Your Honor, we're responding on January 30th and we intend

12  to propose, you know, a hearing date soon after.  And I

13  mention this by way of feeding into what we did in the

14  settlement because the Debtors did agree on a pre-Petition

15  basis to account for the chance that Your Honor were to allow

16  them to assert that $81 million claim and increase our

17  potential liability tenfold and we received on a pre-Petition

18  amount 85 -- well, as if there were an $85 million allowed

19  claim --

20          THE COURT:  Yes.

21          MR. CANTWELL:  -- to account for the litigation of

22  that Motion to Amend their Proof of Claim.  And also on a

23  post-Petition basis, we agreed to reserve 55 million against

24  NNI and 2.8 million against NN CALA.  That's just what came

25  out of them agreeing to focus and us agreeing to withhold

1    money so that we can soon litigate this at trial to

2    conclusion before Your Honor.  The Debtors can stomach these

3    reserves because of the spared litigation costs that we would

4    have incurred in Estimation Motions immediately before trial

5    to try and clean things up.  And, Your Honor, I'm really up

6    here to just explain that what this settlement should not

7    signal to the Court, the fact that we're reserving these, we

8    think, astronomical amounts that are largely inflated is that

9    in any way this should be an estimate or approximation of the

10   actual liability that we're facing; that this is somehow

11   evidence of a change in view of the Debtors as to the merits

12   of that litigation.  So we've set aside the reserves so that

13   we can be back before Your Honor quickly.  We intend to do

14   so.  I know we are in communication with counsel of SNMP.

15   They want to move things forward promptly as well.  We

16   memorialized that in the settlement and that's all I have,

17   Your Honor.

18              THE COURT:  Okay.

19              MR. CANTWELL:  Thank you.

20              THE COURT:  Thank you.  Mr. Burrell?

21              MR. BELLER:  Thank you, Your Honor, Ben Beller,

22   from --

23              THE COURT:  Beller.  Excuse me.

24              MR. BELLER:  -- for the Debtors.  No problem.

25   We'd like to now move -- oh, I'm sorry.  Before we move to

1  the last set of Objections, I did want to let the Court know

2  that we've also resolved one filed Objection by a State tax

3  authority --

4            THE COURT:  Iowa.

5            MR. BELLER:  -- and one informal Objection, both

6  of which are now resolved by new language in the Confirmation

7  Order that has been incorporated to the blackline that had

8  been circulated today -- or yesterday.  And now we can move

9  to the last set, which are Objections from former employees

10  of the Debtors.  I believe we have one of the Objectors in

11  the Courtroom.

12            THE COURT:  Okay.

13            MR. BELLER:  And I think we have one on the phone.

14  If it works for Your Honor, I'd like to start with the

15  Objector on the phone, and I think that's Mr. Robert Horne.

16            THE COURT:  Yes.

17            MR. BELLER:  Whose Objection was filed at Docket

18  No. 17701.  Mr. Horne is a former employee who was involved

19  in the deferred compensation settlement which was a

20  settlement approved by Your Honor back in January 2013.  Mr.

21  Horne appears to support the efforts of the Debtors to

22  resolve the various issues that we've addressed today but

23  takes issue with two specific parts of the Plan.  The first

24  is that he asks that the deferred compensation claims be re-

25  characterized from class three claims to class two secured

1  claims.

2          THE COURT:  Right.

3          MR. BELLER:  And then also asserts that the

4  Debtors improperly, for lack of a better word, took $10

5  million from the participants in the deferred compensation

6  settlement at the time of the settlement.  The Debtors

7  dispute and challenge both of these assertions and neither is

8  supported by any facts -- any of the facts or law relevant

9  here.  The -- as I mentioned, the class two claims are

10  secured claims.  The deferred compensation settlement claims

11  are not secured under Section 502 and so there's no basis to

12  reclassify them in class two.

13          As per the $10 million issue, the terms of the

14  settlement were fully disclosed and heavily negotiated and

15  the settlement, again, was approved by Your Honor in January

16  of 2013 and those terms clearly lay out the numbers that are

17  relevant in terms of what's in the Plan and what's being

18  given for distribution to the participants in the settlement.

19  And so, again, Mr. Horne, while we're sensitive to his

20  concerns and to his long wait for a distribution in these

21  case and his previous participation in the deferred

22  compensation settlement, we believe that the Objection should

23  be overruled.  And with that, I will --

24          THE COURT:  Turn it to Mr. Horne.

25          MR. BELLER:  -- turn it to Mr. Horne.

1              THE COURT:  Mr. Horne?

2              MR. HORNE:  Yes, Your Honor.

3              THE COURT:  Good afternoon.

4              MR. HORNE:  Good afternoon.  I am pleased to be

5    before you again and I want to make this very short.  Can you

6    hear me correctly?

7              THE COURT:  Very well, yes.

8              MR. HORNE:  Okay.  Your question first, I thought

9    the summary was good that -- but there's a couple of points

10   which were really missed.

11             THE COURT:  All right.

12             MR. HORNE:  These have both to do with the way

13   that the employees have been treated and I heard some

14   comments this morning from the Canadian people and I've been

15   hearing some comments from other Nortel people recently and

16   I'd just like to make two very quick examples.  Dealing first

17   of all with the deferred compensation, the negotiations were

18   extensive and very difficult and the offer that was finally

19   made after about the third or fourth round was one which

20   divided up the 300 people into three groups such that two

21   groups beat up the third group and forced them to take quite

22   a hit.  What also happened was the people on the other side

23   did not tell us how much money was in the bank which had been

24   put aside for us specifically in a fund and with U.S. Bank,

25   and that money was agreed that it was ours because it had

1   been put away on our behalf.  And when -- you know, the

2   negotiations for that, they wouldn't tell us how much but

3   they said there's not enough money to pay any more money out.

4   And then after we had agreed to something which was not quite

5   as good as it should have been, the money was released some

6   ten days later, 10 million more than they paid to us, took $3

7   million to the lawyers and unknown amount to anybody else.

8   But they, as far as I can see from the records of the other

9   day, this is the first time that I have seen there was $10

10  million taken out of the bank which should have been the

11  employees'.  So that's the way the negotiation went.

12          The other thing I'm saying is, nobody will talk

13  about the second point.  Nobody will talk about the pensions

14  which were owed.  I was on a pension at the time in 2009 when

15  the organization went bankrupt, and the Plan is valued at

16  $91,000 and it's now eight years since that has occurred and

17  I'm looking at it and I'm working out what $90,000 would be

18  over some seven or eight years, and it's about 10,000 a year,

19  11,000 -- 12,000 a month which was being paid, and without

20  negotiating, I have earlier today read the documents, about

21  52 percent being allocated.  That's a ridiculous amount for

22  what should have been paid as part of an ongoing pension

23  several years ago.  So those are my two points to be made.

24  And I think that we should review what's going on here.

25          THE COURT:  But you did participate in the

1   settlement did you not, Mr. Horne?

2           MR. HORNE:  I did indeed.  Many times I came up --

3           THE COURT:  Yes.

4           MR. HORNE:  -- and appeared before Judge Gross,

5   yes.

6           THE COURT:  Yes.  All right.

7           MR. HORNE:  And the negotiations all the time were

8   no, no, no, we haven't got the money; we haven't got the

9   money; you're wrong, you're wrong, you're wrong.

10          MR. BELLER:  May I, Your Honor?

11          THE COURT:  Yes you may.

12          MR. BELLER:  Thank you.

13          THE COURT:  Yes, Mr. Beller, please.

14          MR. BELLER:  Thank you, Your Honor.  Just briefly,

15  you know, the settlement was negotiated by the parties.  The

16  deferred compensation participants were represented by

17  counsel.  Everyone was doing their best to negotiate.  The

18  settlement, the -- nobody's seeking reconsideration of the

19  Order approving that settlement.  I think that --

20          THE COURT:  Well, no one sought it.  It's a little

21  late now.

22          MR. BELLER:  No.  No.

23          THE COURT:  But they didn't seek it.

24          MR. BELLER:  Thank you.  No one sought it and,

25  again, the record is that the numbers were disclosed.  The

1  terms of the settlement are what they are and the

2  negotiations are what they were.

3          THE COURT:  Yes.

4          MR. BELLER:  And I think that the other points I

5  addressed previously so --

6          THE COURT:  All right.

7          MR. BELLER:  -- that's it for me.  Thank you.

8          MR. HORNE:  Sorry.  But may I respond to that?

9          THE COURT:  Yes.

10         MR. HORNE:  The answer is it was a long time ago,

11 yes, but over Christmas was the first time that I've seen any

12 report at all as to how much the Debtors received from U.S.

13 Bank.  It was not disclosed at the time of negotiation.  We

14 were told the bank would not obtain that number and that

15 there was not enough money to pay more than what was being

16 offered.

17         THE COURT:  All right.

18         MR. HORNE:  And as a result of that form of

19 negotiation, $10 million was left on the table.

20         THE COURT:  Thank you, Mr. Horne.

21         MR. HORNE:  And in view of the conversations

22 today, it should be around 4 million or 6 million.  10

23 million sounds to be a big number.

24         THE COURT:  All right.  I will take your Objection

25 under advisement.

1          MR. HORNE:  Thank you, sir.

2          THE COURT:  Yes.

3          MR. HORNE:  Thank you, Your Honor.

4          MR. BELLER:  Thank you, Your Honor.

5          THE COURT:  Yes.

6          MR. BELLER:  Now we'll turn to the Objections

7    filed by Mr. Ernest Demel.

8          THE COURT:  Yes.

9          MR. BELLER:  Who I believe is in the Courtroom.

10          THE COURT:  All right.

11          MR. BELLER:  Mr. Demel filed two separate

12    submissions in advance of the deadline to object to the Plan.

13    One is styled as an Objection to the Plan and is another is

14    styled as a Motion to replace the -- a stipulation that is at

15    the heart of both documents.

16          THE COURT:  Right.

17          MR. BELLER:  The Debtors have treated both filings

18    as an Objection to the Plan in that they both object to --

19    based on similar reasons which is the claims stipulation that

20    we've been before Your Honor in years past and has gone up on

21    appeal to the Third Circuit over the last few years.  Mr.

22    Demel continues to believe it is unfair and should be

23    replaced or modified in some way.  The -- both submissions by

24    Mr. --

25          THE COURT:  Well, the Third Circuit rejected his

1  appeal did it not?

2           MR. BELLER:  Correct.

3           THE COURT:  I mean it affirmed?

4           MR. BELLER:  Correct, Your Honor.

5           THE COURT:  Yes.

6           MR. BELLER:  And that's the Debtor's main point

7  here is that this has been litigated.  In our confirmation

8  Brief we go through additional reasons why both of these

9  Objections should be overruled --

10           THE COURT:  Yes.

11           MR. BELLER:  -- including that the issues are res

12  judicata and, in addition, they don't raise proper Plan

13  Objections.

14           THE COURT:  Right.

15           MR. BELLER:  And Mr. Demel has an allowed claim in

16  the amount set forward in the stipulation.

17           THE COURT:  Right.  He was represented by counsel.

18           MR. BELLER:  He was represented by counsel.

19           THE COURT:  Yes.

20           MR. BELLER:  And should the Plan be confirmed, Mr.

21  Demel will receive his pro-rata distributions on that allowed

22  claim with the rest of the General Unsecured Creditors and,

23  you know, there's just -- Mr. Demel has simply put forward no

24  basis to re-litigate these issues once again before Your

25  Honor or to otherwise interfere with confirmation of the

1   Plan.

2           THE COURT:  All right.

3           MR. BELLER:   Thank you.

4           THE COURT:  Thank you.  Thank you.  Mr. Demel?

5   Good afternoon, sir.

6           MR. DEMEL:  Good afternoon, Judge.

7           THE COURT:  Judge, I was here for amendments to a

8   Stipulation Agreement sometime earlier.

9           THE COURT:  Yes.

10          MR. DEMEL:  And then I appealed the matter up to

11  the Third Circuit.  The -- during the process of the appeal,

12  I found new evidence that the attorney who signed the

13  Agreement had no legal basis to sign the Agreement.  It was

14  fraudulently executed Agreement.

15          THE COURT:  And where is your evidence of

16  fraudulent execution?

17          MR. DEMEL: Yeah.  Well, on the second Motion --

18          THE COURT:  Yes.

19          MR. DEMEL:  -- I have filed relevant documents.

20  Mr. Storm's Retainer Agreement and that clearly says that

21  he's allowed to represent me only in the New York ERISA

22  matter.

23          UNKNOWN FEMALE:  New York what?

24          MR. DEMEL:  New York ERISA case pension, ERISA.

25  And I have also filed a letter from him that he admits that

1   he had limited engagement with this case and in spite of my

2   objection, he signed the Agreement and released the LTD

3   violators from the ERISA case.  Because of that, I fired him

4   and from the New York case.  So all the documents have been

5   attached to my second Motion and what we have now is a

6   fraudulent document in our system.  I want to eliminate this

7   document with a new one and replace that.

8           Regarding the matter that went to the Third

9   Circuit, I have the -- the Third Circuit didn't consider this

10  newly found evidence because it was not admitted to the

11  Bankruptcy Court and that was the position of the Judges and

12  also the Nortel.  They -- in their filings, they said these

13  matters should belong to the Bankruptcy Court, not to the

14  High Courts.  So that is the reason that the Third Circuit

15  rejected expansion of the record with the newly found

16  evidence.

17          THE COURT:  All right.

18          MR. DEMEL:  In short, that's all I have, other

19  than I can read my Motions but you have copies of the Motion.

20          THE COURT:  I have read them, Mr. Demel, yes.

21          MR. DEMEL:  All of the Motions.

22          THE COURT:  Yes I have.

23          MR. DEMEL:  And regarding the res judicata matter

24  that this newly found evidence were never accepted in the

25  amendment case so this is two different things.  If I had the

1  Retainer Agreement of Mr. Storm, there won't be a case.  I

2  will bring it up to the Bankruptcy Court.  At that time, I

3  didn't have it and if Your Honor take a good look at his

4  Retainer Agreement, I have limited his duties only to the

5  ERISA case in New York.  And on the last page of the Retainer

6  Agreement, I have asked him to send the signed document back

7  to me but he never did until very recently.  And he executed

8  two of the letters with regard to this matter.  Mr. Stone

9  admits that his role, has a limited role in this matter, and

10 also he admits that because he signed the Stipulation and

11 dismissed the ERISA violators and I fired him.  That's in the

12 last page, last paragraph of Mr. Storm's letter.

13         THE COURT:  All right.

14         MR. DEMEL:  So in order to replace this

15 Stipulation Agreement with this fraudulent document, I am

16 open to work with Nortel in order to replace that document

17 because at the late stage of this litigation, I have run out

18 of patience with this case.

19         THE COURT:  All right.  Thank you, Mr. Demel.

20         MR. DEMEL:  Thank you, Your Honor.

21         MR. BELLER:  Your Honor?

22         THE COURT:  Mr. Beller, yes?

23         MR. BELLER:  Just briefly in response.  We believe

24 this -- the Debtors believe that this claim is settled after

25 years of litigation with Mr. Demel.  Mr. Demel was

1   represented at the time the settlement was signed.  He --

2   that settlement was signed in 2010.  The issue was not raised

3   again by Mr. Demel until 2014.

4                THE COURT:  Right.

5                MR. BELLER:  And we have been in litigation since.

6   So -- and again, Mr. Demel's Objection and concerns, while

7   we're sensitive to it and to his running out of patience with

8   this case, has no bearing on confirmation and the issue we're

9   here before Your Honor today.

10               THE COURT:  All right.

11               MR. BELLER:  Thank you.

12               THE COURT:  Thank you.

13               MR. BELLER:  Moving on to the final two Objections

14   --

15               THE COURT:  Yes.

16               MR. BELLER:  -- to Plan confirmation, one was

17   filed by Mr. Kent Hanneman at Docket No. 17684.  I don't

18   believe Mr. Hanneman is either on the phone or in the

19   Courtroom.

20               THE COURT:  I don't believe so either.

21               MR. BELLER:  The Objection doesn't raise an

22   Objection.  He simply says that he's on the side of the PBGC.

23   As Your Honor is aware, the PBGC supports confirmation of the

24   Plan.

25               THE COURT:  Yes.

1          MR. BELLER:  So this Objection is -- can be

2    overruled.

3          THE COURT:  That's right.

4          MR. BELLER:  Finally, the Objection of Ms. Linda

5    Hollenbec Amick, Docket No. 17685, Ms. Amick filed a claim in

6    these cases in 2012 and subsequently sold and transferred

7    that claim to Hain Capital in March 2013.  Ms. Amick now

8    objects to the disallowance of that claim that was achieved

9    by stipulation between the Debtors and Hain in March of 2016.

10   Again, this Objection presents no valid Objection to the

11   confirmation of the Plan and should be overruled.

12         THE COURT:  All right.

13         MR. BELLER:  Thank you, Your Honor.

14         THE COURT:  Thank you.  Thank you.

15         MR. BELLER:  I believe now I will turn the podium

16   back over to Mr. Cantwell for some confirmation issues.

17         THE COURT:  Okay.  Mr. Cantwell?

18         MR. CANTWELL:  Thank you.  Good afternoon again.

19   Your Honor, at this point, as Mr. Beller noted, we are

20   through the Objections.  We're through the Reponses and the

21   Notices.  What I have here, Your Honor, if you would like,

22   recognizing the day is getting late, last night, in light of

23   the various changes that it had been agreed to and nits and

24   everything else that go into the Confirmation Order, we filed

25   a blackline that was a comparison from what we had previously

1  filed on our Objection deadline on January 9th against the

2  various edits that had come in.  I have a redline of these

3  for Your Honor that I'm happy to walk through with you.

4  Alternatively, I can -- we've tabbed all these pages for Your

5  Honor so that nothing is missed.  I can leave that with you

6  if you would like, whatever you prefer.  I do, either way,

7  have a minor incremental blackline that I would just like to

8  read into the record that would --

9            THE COURT:  All right.

10           MR. CANTWELL:  -- reflect the change in the votes

11  as a result of the NTCC so on the -- may I approach?

12           THE COURT:  I will take the document.

13           MR. CANTWELL:  Okay.

14           THE COURT:  And I'll allow you to read into the

15  record.

16           MR. CANTWELLL:  May I approach, Your Honor?

17           THE COURT:  Yes.  Thank you, Mr. Cantwell.

18           MR. CANTWELL:  That is the blackline.  That is on

19  the document.

20           THE COURT:  Good.

21           MR. CANTWELL:  That's the redline.

22           THE COURT:  Yes.

23           MR. CANTWELL:  That's it.

24           THE COURT:  Okay.

25           MR. CANTWELL:  For anybody else in the Courtroom

1  who would like to see a printed out copy of the blackline

2  that we filed last night, my colleagues do have that in the

3  back of the room.  It's nothing new, at least the big one

4  that you're walking through last -- from last night.  So

5  there shouldn't be any surprises.  Your Honor, the

6  incremental edits to the proposed Confirmation Order, which

7  would be in the version, if Your Honor were to take this

8  under advisement and rule in our favor on the various

9  Objections and confirm the Plan today, --

10            THE COURT:  I do plan to rule today, by the way,

11  after an adjournment.

12            MR. CANTWELL:  Okay.  Excellent.  So we can just

13  get these out onto the record and then we'll step back.  In

14  paragraph 15 of the Proposed Confirmation Order --

15            THE COURT:  Yes.

16            MR. CANTWELL:  -- there is a single addition of

17  Class A(3)(a) to make clear that they are an impaired class

18  at a Debtor that voted to accept the plan.  At paragraph 36

19  of the Proposed Confirmation Order, it would now read after

20  the following edit:  As of the voting deadline, only Class

21  A(3)(a) voted to reject the Plan for NNI/NNCC.  After the

22  change of certain Class A(3)(a) votes to acceptances was

23  approved by the Court at the confirmation hearing for cause,

24  Class A(3)(a) accepted the Plan.  Holders of interest and

25  Class 5(a) of each Debtor are deemed to have rejected the

1  Plan.  Class 5(a) of each Debtor is impaired and, therefore,

2  Section 1129(a)(8) of the Bankruptcy Code is not satisfied.

3  Nevertheless, the Plan is confirmable because it satisfies

4  Section 1129(b) of the Bankruptcy Code with respect to such

5  non-accepting and impaired classes of interest.

6          In paragraph 38 of the Confirmation Order, it

7  would now -- we've added a line mentioning this Sullivan

8  Supplemental Voting Report.  There would simply be a citation

9  that -- in the first sentence.  The first sentence of

10 paragraph 38 would now read:  As set forth in the Voting

11 Report and the Supplemental Voting Report filed on January

12 23rd at Docket Item 17783 and herein, Classes A(3)(a),

13 A(3)(b), and A(3)(c) of NNI and NNCC, B(3)(a) and B(3)(b) of

14 NN CALA, C(3)(a) of Nortel Altsystems, and D(3)(a) through

15 O(3)(a) for all other Debtors voted to accept the Plan.

16         THE COURT:  Right.

17         MR. CANTWELL:  Paragraph 43 of the Proposed

18 Confirmation Order, the first sentence would now read:  The

19 classification and treatment of claims and interest in the

20 Plan meets all of the applicable requirements of Section

21 1129(a) of the Bankruptcy Code, other than paragraph 8, and

22 satisfies Section 1129(b) even if Class A(3)(a) rejected the

23 Plan.  And that is it, Your Honor.  Those are just the

24 conforming edits --

25         THE COURT:  All right.

1          MR. CANTWELL:  -- in light of the Voting

2   Stipulation.

3          THE COURT:  Okay.

4          MR. CANTWELL:  With that, Your Honor, we will

5   cease playing seesaw with Mr. Beller after he pops up and

6   discusses the approval of the SPSA 9019 and that is all for

7   me.  Thank you.

8          THE COURT:  All right.  Thank you, Mr. Cantwell.

9   Mr. Beller?

10         MR. BELLER:  Thank you, Your Honor.  So we've now

11  completed our presentation on --

12         THE COURT:  Plan.

13         MR. BELLER:  -- the Plan.

14         THE COURT:  Yes.

15         MR. BELLER:  And we wanted to move to the SPSA

16  which, again, as Ms. Schweitzer discussed earlier today, was

17  filed separately from the Plan, although the Plan is intended

18  to serve as a Motion for Approval of the SPSA.  Mainly --

19  well, in part, to seek approval of the SPSA with NNIII which

20  is not a Plan proponent and -- but which is an SPSA party.

21  So NNIII is a relatively small Debtor that filed its Petition

22  last summer and --

23         THE COURT:  Right.

24         MR. BELLER:  -- while we are working to file the

25  Chapter 11 Plan for NNIII, the Debtors had to -- we've had to

1    wait for the governmental bar date to pass in order to do

2    that.  That has passed yesterday.  So now we look forward to

3    filing a Disclosure Statement and Plan soon.  But just like

4    the other SPSA parties, the SPSA is at the heart of -- will

5    be at the heart of NNIII's Plan.  NNIII will not be receiving

6    any of the sale proceeds under the SPSA but does benefit from

7    the Releases as well as the settlement of intercompany claims

8    that are achieved through the SPSA.  Notice of the SPSA was

9    provided and, again, Ms. Schweitzer has gone through all the

10   reasons the Debtors believe the SPSA satisfies Bankruptcy

11   Rule 9019 and the Martin factors and should be approved.  And

12   so far all of those reasons, as well as the other evidentiary

13   basis in the record from today's hearing and the record of

14   the cases, we ask that the SPSA be approved.

15              THE COURT:  Okay.

16              MR. BELLER:  Thank you, Your Honor.

17              THE COURT:  Thank you.  Thank you, sir.  Anyone

18   else?

19   (No audible response.)

20              THE COURT:  All right.  Then I will retire to

21   Chambers, I'll talk with Justice Newbould, and I'll be back

22   to rule.

23              MR. KENNEY:  Your Honor, before you retire, may I

24   be heard briefly?

25              THE COURT:  Yes.

1          MR. KENNEY:  For the record, Mark Kenney, for the

2    United States Trustee.  Your Honor, I did not intend to cross

3    any lines.  I apologize.  I had actually worked very

4    diligently in editing my remarks to make sure I didn't say

5    anything that was over the line and I certainly had no

6    intention of insulting, demeaning, or otherwise upsetting the

7    Court.

8          THE COURT:  Well, the transcript will indicate

9    what you said, Mr. Kenney, and we'll read the transcript and

10   we'll know better.

11         MR. KENNEY:  Thank you, Your Honor.

12         THE COURT:  Yes.  All right.  Let's stand in

13   recess.  We will be back to rule.

14              (Recess from 3:49 p.m. to 4:23 p.m.)

15         THE CLERK:  All right.  Is everybody ready?

16         COUNSEL:  Yes.

17         THE CLERK:  Please rise.

18         THE COURT:  Thank you everyone.  You may be

19   seated.  Are you all settled there, Justice Newbould?  Are

20   you settled in?

21         JUSTICE NEWBOULD:  I am, Your Honor.

22   [Indiscernible].

23         THE COURT:  I don't think we're hearing you.

24   Let's try now.

25         JUSTICE NEWBOULD:  Is there a problem?

1              THE COURT:  That's better.  That's better.

2              JUSTICE NEWBOULD:  Okay.  Thank you.

3              THE COURT:  Yes.

4              JUSTICE NEWBOULD:  I'm glad to report that Judge

5   Gross and I have been able to come to a consistent decision.

6   I'm just going to have a few remarks.  I have endorsed the

7   Motion of record for the reasons to follow.  The Motion of

8   the Monitor is granted and Orders at Tabs 4 and 5 are

9   approved. And I don't know if you have Orders today for me to

10  sign or not but if you do, you can hand them up and I'll sign

11  them afterwards.  And I will provide written reasons for why

12  I made that Decision.  I want to say that it's a very happy

13  day today in this case in many respects to see the end of

14  this long, unhappy saga.  It will result, as Mr.

15  [indiscernible] said today, in money and security flowing to

16  people who desperately need it and I think everyone's pleased

17  to see that happen.  The parties and Counsel are to be

18  congratulated on reaching a resolution of the case.   And I

19  can tell you that Judge Gross and I are both relieved.  I

20  know how hard it has been for all of you working on this and

21  hard you've worked for some period of time on it.  I just add

22  that there's an asterisk to this congratulations and, to some

23  extent, this is a bitter-sweet day.  The asterisk is caused

24  by the unfortunate situation in which this case wasn't

25  settled much sooner and without all the added expense and

1  delay caused by the litigation once the lockbox funds came to

2  the point that they did.  And I noted that in 2011, the Third

3  Circuit Court of Appeals was concerned about this and said

4  that there are real live individuals who would be affected,

5  who were pawns in the moves being made by the knights and

6  rooks.  I'm not sure why they didn't refer to the kings and

7  queens but they referred to the knights and rooks.  They

8  urged mediation, they urged settlement, and they urged that

9  the assets not be depleted.  That was in 2011 and now we're

10  now six years later.  I recognize how hard people have fought

11  for the interests they represented.  That's what lawyers do

12  and that's what they're paid to do.  Unfortunately, the

13  people most affected by the Nortel insolvency; that is

14  retirees, pensioners, disabled persons, their families, and

15  in some cases their successors, have suffered by the delay

16  and was seen by the Third Circuit Court of Appeal; it was

17  also seen by Chief Justice Reicher when he started the

18  mediation process that, unfortunately, [indiscernible].

19  Having said that, I do want to congratulate you all for

20  finally resolving the issues.  I would say it is better later

21  than never.  I want to thank Counsel for their Briefs today

22  and for their arguments.  I want to thank Ms. Holly and Mr.

23  McElroy for their thoughtful presentations.  And lastly to

24  you, Judge Gross, I want to thank you for being Judge Gross;

25  thoughtful, courteous, good humored, most of the time, and a

1  great Judge.

2  (Laughter.)

3         JUSTICE NEWBOULD:  I've enjoyed working with you.

4  And that concludes my remarks.

5         THE COURT:  Thank you, Justice Newbould, and I

6  certainly have enjoyed working with you and I've learned from

7  you and I've benefitted from our association, and thank you.

8  Let me first take up the confirmation Objections and rule on

9  those.  Solus Fee Dispute, I'll call it, we will talk about

10  tomorrow at 10:00.  I'm just trying to think how to set this

11  up.  I think you ought to use Court Call and we'll do it here

12  in the Courtroom and we'll talk at that time about scheduling

13  the fee hearing and other matters that relate to that.

14         The Hanneman Objection is not really an Objection

15  and it was phrased that Hanneman would take the side that the

16  PBGC took and the PBGC supports the Plan and, therefore, that

17  really is not an Objection.

18         The Amick Objection, it's not really a Plan

19  Objection either and I'm going to disallow it to the extent

20  it is a Plan Objection because Ms. Amick sold her claim to

21  Hain Capital and, therefore, does not really have any cause

22  for relief at this point.

23         Mr. Demel, you are barred by res judicata from

24  raising your objection.  The Third Circuit affirmed the

25  Decision of this Court on November 4, 2106 and on the

1   materials that you've sent, I simply do not see newly

2   discovered evidence so I overrule your Objection.

3        The Horne Objection, Mr. Horne wants to reclassify

4   the NNI retiree benefits as secured claims in Class Two and

5   therefore paid 100 percent and there's just no reason for the

6   preferential treatment here.  There was a settlement of

7   deferred compensation claims.  It was heavily negotiated.  It

8   was approved following a hearing on Notice and, therefore,

9   that Objection is overruled.

10       Lastly is the Office of the United States Trustee

11  Objections.  The Office of the United States Trustee objects,

12  first of all, saying that the Releases should not apply to

13  holders of claims whose solicitation materials were returned

14  as undeliverable.  Also, the second part of the Objection is

15  that exculpation does not apply to non-Estate fiduciaries.

16  The Releases were heavily negotiated, mailing notice by first

17  class mail to the last known addresses satisfies due process,

18  and there was publication of the Notices and, therefore, I

19  find that the Releases are indeed established for those whose

20  materials were returned.

21       As far as exculpation is concerned, I will simply

22  say that exculpation includes the Estate, the non-estate

23  fiduciaries.  But the Court has to look at the particular

24  circumstances at hand.  That's what *In Re: PWS Holding Corp.*

25  holds and here there are very unique circumstances.  They

1  exist by virtue of a lengthy allocation trial, the appeals,

2  the settlement negotiations, the mediation, the settlement of

3  the Trade Consortium claims.  There were unique circumstances

4  in an extraordinary case and the Court, therefore, finds that

5  the exculpations are appropriate, as written, to cover the

6  non-Estate fiduciaries.

7            So that takes care of the Objections.  Now, before

8  I rule on the SPSA and confirmation, I have some statements

9  to make and we've spend a lot of time together on this case

10  and I would be remiss if I did not make some statements.

11  I've very pleased that the Trade Consortium settled its

12  Objection, which was what I believe was the last major

13  Objection.  I would have felt an enormous sense of regret had

14  the settlement not been reached, and the reasons are these.

15  First, there's the heartache over the once proud money group

16  of Nortel companies that employed over 30,000 people

17  worldwide having to file to bankruptcy protection, not to

18  reorganize but to liquidate.  Second, the case is eight years

19  old and the issues raised and addressed are so numerous that,

20  frankly, I can't even remember them all.  Third, billions of

21  dollars of professional fees have been approved by the Court.

22  Fourth, there's a very, very large sum of money at stake

23  that's being withheld from parties who should receive those

24  dollars.  And fifth, there's the hard fought lengthy

25  difficult allocation trial and then the appeals.  And all of

1  those matters bring this case to the forefront.

2         It is particularly gratifying to know that a

3  community of sophisticated parties represented by the finest

4  of law firms who battled hard for their clients came together

5  and worked out a settlement, taking into account all of the

6  complexities of the case.  And here I must recognize Justice

7  Winkler for his efforts, but especially the skill and

8  contribution of the Mediator, Joseph Farnan, former Judge

9  Joseph J. Farnan, and I thank him for his efforts, for the

10  mediation was successful beyond measure, no doubt largely due

11  to Justice Winkler's and Judge Farnan's effort.

12         It is a wonder and it is wonderful that almost a

13  consensual result has been brought to the Court for approval.

14  Your work made it possible for the Court to address the many

15  complexities of the case.  In saying that, I address all of

16  you, but with awareness that it is always difficult and

17  dangerous to name individuals, I especially recognize the

18  lawyers at Cleary Gottlieb and there especially Jim Bromley

19  and Lisa Schweitzer, also Derek Abbott and Andrew Remming at

20  Morris, Nichols, Arsht & Tunnell who headed their firm's

21  efforts, and as well the lawyers at Akin Gump for the

22  Committee of Unsecured Creditors, and especially David

23  Botter, Fred Hodara, Abid Qureshi, Brad Kahn, and Robert

24  Johnson, as well as Christopher Samis at the Whiteford,

25  Taylor & Preston firm.  But all of you in the Courtroom had a

1 role in the case and made a major contribution and did so

2 with behavior in the finest tradition of the legal

3 profession.  I worked hard on the case but I never regretted

4 doing so.

5          Now, I'm going to approve the settlement that is

6 instrumental to the Plan and I will enter the Order

7 confirming the Plan.  Now, first with respect to the

8 settlement, in reviewing the proposed settlement expressed in

9 the Settlement and Plan Support Agreement, the SPSA, and the

10 -- well, I've already addressed the settlement with the Trade

11 Consortium so I will remove that.  And having already

12 explained that the Court has jurisdiction, the Court will

13 apply the factors set out in *Myers v. Martin*, 91 F.3d 389, a

14 Third Circuit Decision in 1996.  There, the Third Circuit

15 ruled that in determining whether or not to approve a

16 settlement, the Court should look to the following factors.

17 First, the probability of success in the litigation; second,

18 the difficulty in collecting on the judgment; third, the

19 complexity of the litigation; and fourth, the paramount

20 interest of creditors.

21          First, on the probability of success in the

22 litigation, the Court notes that Debtors and other aligned

23 with them are Appellants in the Third Circuit.  They have not

24 been successful, despite their hardest efforts.  The

25 Allocation Opinion was not favorable to the Debtors and the

1    SPSA provides a more successful outcome.  The settlement is

2    fair, reasonable, and in the best interest of Debtor's

3    Estates and there can be no question that the settlement is

4    within the reasonable range of litigation possibilities.

5              Second, the difficulty in connection.  Here, the

6    $7.3 billion of sale funds are held in escrow.  The release

7    of the funds requires the consensual resolution by both the

8    United States and Canadian Courts.  The Canadian Courts have

9    thus far rejected any appeal.  The fact is there could be the

10   uncomfortable situation whereby there is a stalemate between

11   the United States and Canadian Courts, and thereby no ability

12   to obtain the escrowed funds.  This settlement has removed

13   that possibility.

14             Third, the complexity of the litigation.  The

15   allocation trial, the briefing, the Opinion, and now the

16   appeals all show the complexity of the limitation.

17             Fourth is the paramount interest of creditors.  It

18   is clear that distributing the sale proceeds with certainty

19   and expediency is in the paramount interest of creditors and

20   the settlement means just that.  Accordingly, the Court will

21   approve the SPSA with settlement of the allocation of the

22   sale funds and will do so very gladly.

23             Lastly is confirmation of the Plan.  First, the

24   Plan satisfies the letter and the spirit of Sections 1122,

25   1123, and 1129 of the Bankruptcy Code.  The classification

1  requirements are sound and therefore satisfy Section 1122.

2  The requirements of Section 1123 are met, including providing

3  adequate means for implementation.  And the requirements of

4  Section 1129 of the Code are met and I'll highlight a few of

5  those provisions.

6          Section 1129(a)(3), the Plan proposed in good

7  faith.  Good faith is determined based on the totality of the

8  circumstances, *In Re: Genesis Health Ventures, Inc.*, 266 B.R.

9  591, at page 609, a Decision of this Court in 2001.  The Plan

10  fosters results consistent with the objectives of the Code,

11  was proposed with honesty and with good intensions, and it

12  exhibits fundamental fairness in dealing with creditors.  The

13  SPSA resulted from compromise in which there was good faith

14  and arms-length negotiations and the Plan results in the

15  distribution of the sale proceeds in accordance with the SPSA

16  and the Bankruptcy Code.

17          Section 1129(a)(7), Best Interests.  The Plan

18  provides for distribution of the sale proceeds which is not

19  less than would have been received in a Chapter 7

20  liquidation.

21          Section 1129(a)(8).  This section is not satisfied

22  because the Plan was not accepted by each impaired class.

23  But instead, Section 1129(b) is satisfied.  The Plan does not

24  discriminate unfairly and is fair and equitable to each class

25  that has not accepted the Plan.

1              So with that, I will be pleased to sign the

2    Findings of Fact and the Confirmation Order and I believe the

3    Confirmation Order provides that it is -- is it immediately

4    effective without the 14-day stay, Ms. Schweitzer?

5              MS. SCHWEITZER:  Yes, Your Honor.

6              THE COURT:  All right.  And I will sign that

7    provision as well.

8              MS. SCHWEITZER:  Would you -- may I approach?

9              THE COURT:  Yes.

10             MS. SCHWEITZER:  So, Your --

11             THE COURT:  Oh, there's one thing I didn't rule

12   on.  I'm sorry.  Forgive me, because -- and I have to do this

13   and it's the substantive consolidation.  The Court addresses

14   the substantive consolidation of NNI and NNCC.  NNCC, of

15   course, is Nortel Networks Capital Corporation and NNI,

16   Nortel Networks, Inc.  These two entities share a substantial

17   identity.  NNCC's sole purpose was to serve as the financing

18   vehicle for the Nortel group of entities.  NNCC had no assets

19   or operations separate from NNI.  NNCC had no employees.  The

20   Court looks to *In Re: Lisanti Foods, Inc.*, 2007 Westlaw

21   2212720, a Third Circuit Decision in 2007, where the Third

22   Circuit affirmed substantive consolidation because the

23   entities have the same Officers, Directors, and Shareholders,

24   intercompany dealings were handled without corporate

25   formalities, the entities moved profits between them and

1  among themselves, did not charge each other for services

2  rendered, and were viewed as a single entity.  Creditors of

3  NNCC, the few creditors, the PBGC, the NNC Bondholders, NNNI,

4  all support the substantive consolidation of NNI and NNCC and

5  the Court does as well.

6            MS. SCHWEITZER:  Thank you, Your Honor.

7            THE COURT:  Now --

8            MS. SCHWEITZER:  So thank you, Your Honor.  I have

9  two Orders in my hand.  I have the SPSA 9019 Order.

10           THE COURT:  Yes.  Yes.

11           MS. SCHWEITZER:  And with respect to that, there

12  was one provision added to it, and I can hand you a blackline

13  as well, that just copies in a paragraph from the main

14  Confirmation Order which was noticed on everyone which just

15  has the escrow release language that says that this will be

16  the U.S. Escrow Release order for NNIII.

17           THE COURT:  Yes.

18           MS. SCHWEITZER:  Because NNIII is not a Plan

19  Proponent.  It has the mirror language just to make clear

20  that they're authorized to release the money from escrow when

21  the Plans go effective.  And I can approach and hand that up

22  to you.  We also have what we thought was the final version

23  of the Confirmation Order.  There is one change that someone

24  asked for, one deletion, and we also had a printing error so

25  it is yellow.  So I can hand up to you, and note for your

1  reference, but we can have a clean copy brought to your

2  Chambers just to have you sign --

3          THE COURT:  That would be fine.

4          MS. SCHWEITZER:  -- something that doesn't have

5  stripes on it.

6          THE COURT:  Yes.

7          MS. SCHWEITZER:  For the record, the one change

8  that was asked is that there's -- paragraph 182 of the

9  Confirmation Order, which the NNC Bonds Indenture Trustee

10  originally had asked to be included which said for the voids

11  of doubt, for all purposes under the Plan, this Order,

12  Delaware Trust Company, as successor to Law Debenture Trust

13  Company of New York, shall be deemed to be the NNCC Bonds

14  Indenture Trustee.  Our understanding -- I mean they are the

15  successor --

16          THE COURT:  Right.

17          MS. SCHWEITZER:  -- but there was some concern

18  about the language.  So that will be struck from the Final

19  Order.  The numbering won't change but we'll just -- when we

20  -- I'll give you the copy that has it crossed out and the

21  Final Order also will have it crossed out.  So with that, may

22  I approach, Your Honor.

23          THE COURT:  Yes, you may.  Thank you, Ms.

24  Schweitzer.  So I will wait to sign the Confirmation Order.

25          MS. SCHWEITZER:  Correct.  So this is the

1  blackline and then the Rule 9019.

2          THE COURT:  Okay.

3          MS. SCHWEITZER:  And then this is just for your

4  copy.  This is [indiscernible].

5          THE COURT:  Right.

6          MS. SCHWEITZER:  Right.  And then this -- the

7  Exhibit A is misstated, so that's for your reference.

8          THE COURT:  Okay.  All right.

9          MS. SCHWEITZER:  Thank you.

10         THE COURT:  Thank you, Ms. Schweitzer.  All right.

11  I will sign the Order approving the Settlement and Plan

12  Support Agreement.  Well, that's -- I have a blackline

13  version.  Is that --

14         MS. SCHWEITZER:  The cleaned is inside the folder.

15         THE COURT:  Oh, excuse.

16         MS. SCHWEITZER:  Sorry.

17         THE COURT:  All right.  It's signed.

18         MS. SCHWEITZER:  Thank you, Your Honor.

19         THE COURT:  Thank you all.  And with that, we'll

20  stand in recess.  Good evening to all of you.

21         COUNSEL:  Thank you, Your Honor.

22         THE COURT:  Thank you.

23     (Whereupon, at 4:45 p.m., the hearing was adjourned.)

24

1                           CERTIFICATION

2          I certify that the foregoing is a correct

3   transcript from the electronic sound recording of the

4   proceedings in the above-entitled matter.

5

6

7   _____          January 26, 2017

8   Tammy Kelly, Transcriber                      Date

9

10

11

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**1129(a)(3)(1)** 187:6
**1129(a)(7)(1)** 187:17
**1129(a)(8)(2)** 175:2 187:21
**14-day(1)** 188:4
**20-day(3)** 92:10 123:25 126:11
**60/1000bs(1)** 88:16
**a(3)(a)(5)** 174:17 174:22 174:24 175:12 175:22
**a(3)(c)(1)** 175:13
**a.m(3)** 1:15 9:1 67:9
**a3a(3)** 103:11 103:16 103:25
**abbott(9)** 1:25 9:6 9:7 9:10 9:20 9:22 9:23 10:3 184:19
**abbott's(1)** 128:5
**abid(2)** 2:8 184:23
**abigail(1)** 7:21
**ability(10)** 34:10 58:25 65:24 75:23 76:3 82:2 84:3 84:7 87:7 186:11
**able(13)** 14:2 37:16 38:2 40:17 59:4 60:9 70:10 84:7 89:8 140:24 149:17 157:15 179:5
**aboard(1)** 79:5
**about(87)** 11:7 11:20 13:21 14:12 14:15 14:22 15:12 18:3 19:13 19:18 20:6 20:24 21:6 22:1 23:3 23:4 23:5 24:23 27:17 28:6 33:9 34:13 35:9 36:19 48:5 49:11 51:11 51:17 53:10 53:11 53:14 53:18 54:4 54:10 55:25 56:1 56:2 57:18 58:13 59:14 66:11 72:23 73:4 76:11 76:13 77:13 78:5 79:7 82:15 101:15 109:15 109:16 116:7 120:21 121:22 122:4 122:24 124:7 124:7 125:2 125:7 125:9 126:8 128:14 128:15 129:16 131:9 132:5 133:5 136:4 143:25 147:13 148:13 150:23 151:2 151:3 151:4 152:12 162:19 163:13 163:13 163:18 163:20 180:3 181:9 181:12 190:18
**above(2)** 56:11 78:16
**aboveentitled (1)** 192:4
**abrams(1)** 5:34
**abridge(1)** 50:17
**absence(2)** 65:15 145:8
**absent(4)** 75:22 75:22 77:14 83:20
**absolutely(2)** 115:16 132:19
**absurd(1)** 65:22
**accept(5)** 25:19 79:23 103:12 174:18 175:15
**acceptable(1)** 43:3
**acceptances(1)** 174:22
**accepted(7)** 82:25 95:1 137:25 169:24 174:24 187:22 187:25
**accepting(1)** 104:1
**access(3)** 24:9 53:21 124:14
**accessed(1)** 27:3
**accordance(2)** 31:23 187:15
**according(5)** 13:1 15:19 16:18 17:3 64:5
**accordingly(3)** 46:25 48:10 186:20
**account(6)** 30:24 31:1 115:18 158:15 158:21 184:5
**accountability(1)** 48:18
**accountable(1)** 48:17
**accrual(2)** 13:15 15:18
**accurately(3)** 19:6 84:13 84:15
**achieved(4)** 69:1 156:9 172:8 177:8
**achievement(1)** 70:9
**achieves(1)** 91:1
**acknowledge(1)** 61:7
**acquisition(1)** 151:11
**across(1)** 22:9
**act(8)** 35:18 35:21 42:3 46:17 48:19 52:19 54:21 124:4
**acted(1)** 152:19
**acting(6)** 43:11 43:14 43:20 46:20 46:22 141:24
**action(9)** 9:25 26:6 47:5 49:16 49:22 49:25 53:11 53:13 141:2
**active(2)** 146:4 149:9
**actively(2)** 38:25 39:4
**activities(2)** 47:3 47:5
**activity(4)** 48:14 54:3
**actor(3)** 26:9 43:10 54:25
**actors(1)** 49:19
**actual(4)** 36:24 144:10 158:8 159:10
**actually(11)** 45:10 88:18 89:15 119:19 139:5 143:25 144:9 147:22 148:14 155:17 178:3
**actuarial(1)** 21:21
**actuaries(1)** 21:20
**adam(1)** 7:25
**add(5)** 144:23 145:25 146:12 158:6 179:21
**added(4)** 156:12 175:7 179:25 189:12
**addition(3)** 39:23 68:17 75:25 76:2 81:1 167:12 174:16
**additional(7)** 83:3 86:13 105:17 106:1 139:6 152:16 167:8
**address(15)** 9:21 18:23 19:19 32:4 50:10 61:21 62:21 118:5 73:25 98:18 106:6 107:10 142:3 184:14 184:15

**addressed(10)** 18:21 55:4 72:21 107:4 112:7 114:8 160:22 165:5 183:19 185:10
**addresses(7)** 35:11 58:2 138:19 138:22 138:23 182:17 188:13
**adequate(7)** 37:3 38:20 52:2 72:11 100:12 139:5
**adjourned(1)** 191:23
**adjournment(1)** 174:11
**adjudicative(1)** 47:7
**adjudicator(6)** 43:2 43:5 43:6 44:13 44:14 45:3
**adjudicator's(2)** 32:4 35:11
**adjustment(4)** 30:12 30:17 30:19 31:3
**adjustments(1)** 38:12
**adler(1)** 5:45
**administered(1)** 1:6
**administrative(4)** 41:23 41:25 49:21 50:1
**administrator(5)** 4:36 7:21 22:10 24:6 41:9
**administrators(3)** 5:37 93:24 94:2
**admits(3)** 168:25 170:9 170:10
**admitted(6)** 80:15 84:23 85:16 103:5 105:1 169:10
**admitting(3)** 80:13 84:22 85:14
**advance(2)** 24:17 166:12
**advanced(1)** 15:16
**advantage(1)** 112:22
**adversarial(1)** 59:19
**adversary(1)** 156:24
**advisement(2)** 165:25 174:8
**adviser(2)** 41:10 42:17
**advising(1)** 85:8
**advisors(1)** 141:23
**advisory(1)** 85:8
**advocacy(1)** 87:20
**advocating(2)** 60:4 71:7
**affect(2)** 48:18 107:19
**affected(5)** 56:15 60:1 146:11 180:4 180:13
**affidavit(4)** 36:22 51:12 139:7 139:9
**affidavits(1)** 114:18
**affiliates(3)** 58:8 58:16 68:3
**affirmative(1)** 81:20
**affirmed(15)** 11:12 167:3 181:24 188:22
**after(31)** 11:20 20:4 23:11 34:5 67:6 71:24 74:19 75:7 83:19 101:5 101:16 107:17 108:11 118:21 121:2 124:17 124:25 125:9 126:15 126:23 128:22 137:18 134:6 158:12 162:19 163:4 170:24 174:11 174:19 174:21 176:5
**afternoon(33)** 90:10 90:11 90:12 93:21 93:22 96:1 96:2 97:1 97:2 97:3 101:24 101:25 108:18 109:10 108:20 117:12 117:13 117:16 135:18 135:19 135:20 143:21 143:22 146:18 146:24 150:14 150:15 150:16 162:3 162:4 168:5 168:6 172:18
**afterwards(1)** 179:11
**again(57)** 40:10 43:18 45:22 55:21 59:5 62:22 67:5 69:9 69:20 70:25 73:24 74:21 75:17 75:17 76:10 77:11 77:17 78:18 80:3 82:5 82:20 83:19 89:6 92:11 93:7 93:14 97:25 111:24 114:7 114:13 117:18 119:5 120:1 121:4 122:5 132:1 135:16 136:24 137:7 138:13 140:21 142:22 143:23 146:18 157:1 157:3 161:15 161:19 162:5 164:25 167:24 171:3 171:6 172:10 172:18 176:16 177:9
**against(22)** 11:12 13:18 15:25 49:12 52:22 59:2 66:18 69:2 69:6 74:24 75:19 77:12 103:16 144:21 145:18 156:18 156:22 157:1 157:4 158:18 158:24 173:1
**age(5)** 24:8 24:13 40:17 53:24 53:25
**agencies(2)** 24:3 24:3
**agent(1)** 102:12
**agents(2)** 138:17 141:23
**aggregate(1)** 78:16
**ago(7)** 28:23 42:12 97:20 125:23 143:25 163:23 165:10
**agree(11)** 92:13 95:4 104:18 107:7 112:24 112:25 120:20 129:11 132:13 156:5 158:14 172:23
**agreed(16)** 9:18 13:5 18:6 18:7 68:14 77:10 77:14 81:22 82:9 95:2 137:25 157:21 158:23 162:25 163:4 177:22
**agreeing(3)** 94:19 158:25 158:25
**agreement(37)** 10:21 17:25 18:5 18:10 22:9 26:7 30:18 37:2 45:15 60:10 64:16 64:17 64:20 64:21 65:1 65:4 68:1 68:19 109:18 112:11 112:14 125:3 128:15 156:1 156:20 168:8 168:13 168:13 168:14 168:20 169:12 170:1 170:4 170:15 185:9 191:12
**ahead(5)** 34:15 39:2 40:24 44:2 48:9
**airlines(1)** 14:20
**akin(2)** 5:6 17:9 90:13 124:16 126:9 184:21
**al.(1)** 1:8
**aligned(1)** 185:22

**all(236)** 9:17 10:3 12:2 13:6 13:17 13:18 14:5 14:14 15:8 16:4 16:9 16:19 17:3 17:10 17:23 18:8 18:9 19:7 19:14 21:5 21:13 21:13 21:16 22:11 23:8 23:16 23:16 23:20 24:9 25:24 26:4 26:12 26:17 26:17 28:19 30:5 31:1 33:6 33:23 34:15 35:8 36:6 36:11 37:23 40:6 40:25 42:4 42:16 43:17 43:23 43:24 44:2 44:15 44:20 45:6 46:4 46:10 47:19 48:6 48:9 48:18 50:12 51:22 54:18 54:24 55:7 56:6 56:12 56:15 56:17 56:19 56:21 58:6 58:21 59:3 59:14 60:3 60:11 61:7 64:5 64:8 64:11 65:19 66:14 67:3 67:8 67:11 67:21 68:9 70:10 72:1 72:18 72:24 75:17 76:5 76:6 76:20 77:17 78:6 79:10 80:24 84:14 84:17 84:21 85:2 85:3 85:21 86:10 87:19 89:5 93:1 93:5 93:6 93:9 93:17 94:6 95:9 95:13 96:1 96:14 96:24 97:17 98:14 98:17 100:23 101:16 101:20 102:21 102:23 103:5 103:10 104:16 105:11 106:3 106:11 106:14 106:14 108:7 113:3 115:21 115:24 117:4 118:2 118:7 120:10 120:12 121:7 121:11 123:23 124:2 124:4 124:18 124:19 125:7 125:10 125:16 126:4 126:18 126:23 127:2 127:5 127:10 127:20 128:14 128:22 131:8 133:13 133:15 135:1 135:4 135:13 135:25 137:18 137:17 139:4 141:10 143:19 147:23 147:24 148:5 150:7 150:11 150:18 150:20 153:25 155:11 156:12 159:16 162:11 162:17 164:6 164:7 165:6 165:12 165:17 165:24 166:10 168:2 169:4 169:17 169:18 169:21 170:13 170:11 172:12 173:4 173:9 175:15 175:20 175:25 176:6 176:8 177:9 177:12 177:20 178:12 178:15 178:19 179:20 179:25 180:19 182:12 183:20 183:25 184:5 184:15 184:16 186:18 188:6 189:4 190:10 191:8 191:10 191:17 191:19 191:20
**allen(1)** 3:38
**allied(1)** 151:12
**allocated(2)** 78:14 163:21
**allocation(37)** 11:9 18:16 18:17 19:1 19:10 23:12 30:25 59:11 61:23 64:22 65:1 65:5 68:10 71:1 71:5 72:22 72:24 73:2 73:14 75:12 77:16 79:6 81:11 82:1 82:24 83:24 86:9 91:1 105:5 126:2 144:20 149:9 183:1 183:25 185:25 186:15 186:21
**allocations(2)** 73:3 74:4
**allow(13)** 14:1 24:7 27:10 30:24 57:1 62:7 74:25 88:8 109:2 137:3 156:11 158:15 173:14
**allowance(2)** 38:7 41:19
**allowed(9)** 86:23 86:24 91:11 150:23 151:10 158:18 167:15 167:21 168:21
**allowing(2)** 52:11 63:18
**allows(4)** 110:24 151:7 152:25 157:6
**almost(2)** 23:21 105:3
**almod(7)** 17:7 130:20 130:24 156:18 157:2 158:1 184:12
**alone(1)** 61:8
**along(4)** 57:7 87:20 98:5 105:16
**already(20)** 17:23 37:9 38:5 45:8 48:14 50:19 59:23 72:3 72:21 96:9 99:17 105:1 107:3 147:11 148:23 150:17 150:7 150:20 185:10 185:11
**also(68)** 11:11 12:18 18:1 29:21 30:1 35:10 42:18 46:21 49:9 52:9 53:1 54:17 59:9 61:10 61:24 62:18 63:5 66:6 67:16 68:7 68:13 68:25 69:5 69:10 69:11 69:21 70:8 73:4 73:11 75:16 77:22 81:2 81:15 81:18 83:6 84:5 85:6 87:9 88:6 94:4 96:21 99:19 100:3 100:12 102:19 108:17 112:1 112:19 121:7 134:9 146:24 149:14 149:21 150:17 158:2 160:12 161:3 162:22 168:25 169:12 170:10 180:17 182:14 184:19 189:22 189:24 191:12
**alternative(7)** 3:4 5:4 23:13 107:5 108:21 133:9
**alternatives(1)** 173:4
**alternatives(2)** 15:22 119:11
**although(7)** 16:12 28:16 40:7 82:19 90:8 92:24
**altsystems(1)** 151:13
**always(6)** 60:4 60:6 60:7 72:13 77:11 184:16
**ameliorate(1)** 56:4
**ameliorating(1)** 17:13
**amenable(1)** 100:1
**amend(2)** 157:23 158:22
**amendment(1)** 169:25
**amendments(2)** 76:16 168:7
**america(3)** 2:10 8:16 8:17
**americas(3)** 3:41 4:25 5:27
**amick(5)** 17:25 172:5 172:7 181:18 181:20
**among(14)** 11:14 14:21 15:18 26:7 45:15 64:2 64:9 68:2 72:24 74:14 98:9 98:11 158:6 189:1
**amount(10)** 22:3 37:7 96:19 116:24 117:25 119:7 158:18 163:7 163:21 167:16
**amounts(5)** 14:3 36:21 120:2 122:11 159:8
**analogize(1)** 54:3
**analysis(4)** 16:16 55:22 56:6 56:12
**analyze(1)** 137:18
**anchor(1)** 87:3

**and(301)** 9:4 9:19 9:21 9:25 10:10 10:13 10:15 10:17 10:20 10:22 10:24 10:25 11:6 11:13 11:13 11:16 11:18 11:23 12:3 12:7 12:18 12:23 12:25 13:4 13:12 13:21 13:23 13:25 14:3 14:15 14:16 14:16 14:18 15:2 15:11 15:13 15:15 15:21 16:1 16:2 16:2 16:5 16:6 16:8 16:9 16:15 16:19 16:25 17:8 17:11 17:14 17:15 17:17 17:18 17:20 17:25 18:1 18:2 18:6 18:9 18:20 19:4 19:14 19:5 19:18 19:19 19:23 19:24 19:25 20:5 20:5 20:20 20:23 20:24 21:1 21:12 21:14 21:20 21:22 22:4 22:7 22:11 22:18 23:5 23:7 23:9 23:14 23:16 23:18 23:19 23:20 23:21 23:23 24:3 24:5 24:11 24:11 24:14 24:15 24:18 24:20 24:20 25:10 25:15 25:17 25:18 25:19 25:23 25:23 25:25 26:4 26:11 26:20 27:2 27:4 27:6 27:10 27:16 27:16 28:1 28:3 28:6 28:7 28:13 28:18 28:25 29:1 29:13 29:14 29:21 30:6 30:10 30:12 30:15 30:16 30:20 30:24 30:25 31:1 31:7 31:15 31:16 31:17 31:22 32:5 32:6 32:7 32:19 33:6 33:8 33:9 34:3 34:14 34:23 35:10 35:12 36:5 36:13 36:24 37:4 37:4 37:5 37:5 37:7 37:12 37:14 37:16 38:1 38:1 38:3 38:5 38:7 38:8 38:8 38:20 38:21 38:24 38:24 38:25 39:4 39:9 39:9 39:11 39:12 39:15 39:21 41:2 41:4 41:5 41:8 41:9 41:12 41:16 41:18 41:23 42:14 42:18 42:18 42:24 43:3 43:4 43:23 43:25 44:15 44:17 45:10 45:14 45:14 45:15 45:16 45:22 46:15 47:2 47:4 47:6 47:9 47:20 48:1 48:2 48:5 48:12 48:19 48:20 48:21 48:23 49:21 50:7 50:10 51:16 51:25 52:1 52:2 52:3 52:10 52:17 52:19 53:1 53:10 53:12 53:13 53:18 53:22 53:22 53:23 53:24 54:12 54:16 54:18 54:20 54:24 55:3 55:7 55:8 55:19 55:20 56:4 56:11 56:14 57:6 57:8 57:10 57:12 57:13 57:15 57:23 57:24 57:24 58:2 58:2 58:3 58:7 58:8 58:9 58:18 58:21 58:23 59:1 59:5 59:6 59:8 59:10 59:10 59:14 59:16 59:16 59:19 59:21 59:22 59:25
**and(301)** 60:1 60:5 60:7 60:8 60:10 60:10 60:18 60:20 60:23 60:24 60:24 61:1 61:2 61:3 61:5 61:5 61:8 61:9 61:10 61:12 61:13 61:13 61:15 61:19 61:20 62:5 62:10 62:11 62:14 62:16 62:19 62:20 62:21 62:24 63:2 63:2 63:3 63:5 63:5 64:5 64:13 64:16 64:16 64:17 64:20 64:22 64:25 65:2 65:6 65:9 65:13 65:15 65:21 66:2 66:4 66:9 66:10 66:11 66:12 67:5 67:15 68:1 68:2 68:3 68:4 68:4 68:7 68:10 68:13 68:18 68:20 68:22 68:24 69:1 69:3 69:3 69:3 69:8 69:11 69:13 69:16 69:18 69:19 69:20 70:1 70:2 70:3 70:4 70:5 70:5 70:6 70:9 70:17 70:18 70:18 70:21 70:22 70:22 71:2 71:4 71:7 71:11 71:14 71:14 71:15 71:15 71:22 72:1 72:2 72:3 72:8 72:11 72:12 72:22 72:23 73:2 73:10 73:13 73:13 73:15 73:18 73:18 73:22 73:24 74:4 74:5 74:11 74:14 74:14 74:16 74:17 74:18 74:21 74:23 74:23 74:24 74:25 75:1 75:19 75:16 76:15 76:16 76:25 77:10 77:11 77:12 77:14 77:16 77:19 77:21 77:23 78:2 78:2 78:5 78:7 78:9 78:10 78:11 78:15 78:19 79:23 79:24 79:4 79:15 79:17 79:20 79:25 80:2 80:3 80:6 80:8 80:9 80:18 81:4 81:8 81:12 81:15 81:16 81:17 81:23 81:23 81:24 81:25 82:1 82:14 82:16 82:17 82:17 82:19 82:20 82:22 83:8 83:11 83:12 83:13 83:18 83:15 83:15 83:15 83:17 83:27 83:22 83:24 83:25 84:2 84:5 84:8 84:9 84:11 84:13 84:18 85:10 85:11 85:15 85:18 85:21 86:23 87:1 87:4 87:6 87:7 87:8 87:14 87:16 87:17 87:21 87:22 88:5 88:7 88:12 88:15 89:5 89:6 89:7 89:8 89:14 89:16 89:18 89:18 89:23 89:24 90:3 90:7 90:13 90:17 90:22 91:1 91:10 91:11 91:16 91:17 91:22 92:4 92:10 92:12 92:17 92:17 92:19 92:19 92:20 92:25 93:3 93:4 93:13 93:14 93:18 93:19 93:23 93:23 93:25 94:2 94:3 94:22 95:1 95:1 95:7 95:11 95:15 95:20 95:23 96:21

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**and**(301) 96:22 97:4 97:12 97:13 98:5 98:12 98:16 98:19 98:21 98:22 98:22 98:23 99:1 99:3 99:8 99:10 99:12 99:15 99:18 99:19 99:21 100:6 100:8 100:18 100:19 100:21 101:2 101:6 101:6 101:17 102:7 102:24 102:25 102:25 103:2 103:4 103:8 103:10 103:14 103:16 103:17 103:23 104:5 104:6 104:8 104:15 104:19 104:20 104:24 105:2 105:3 105:3 105:8 105:9 105:14 105:16 105:19 105:25 106:4 106:5 106:6 106:10 106:25 107:6 107:8 107:12 107:20 107:21 107:23 108:5 108:9 108:11 108:21 109:4 109:11 109:17 109:19 109:21 109:23 109:24 109:25 110:1 110:2 110:6 110:8 110:12 110:13 110:15 110:17 110:18 110:22 110:25 111:7 111:11 111:12 111:13 111:16 111:24 112:1 112:1 112:7 112:18 112:19 112:21 113:4 113:9 113:14 113:16 113:18 113:25 113:25 114:3 114:5 114:7 114:10 114:13 114:18 114:20 114:22 115:5 115:7 115:15 115:22 116:15 116:20 117:12 117:19 118:2 118:5 118:9 118:13 119:7 119:12 119:14 119:17 119:17 119:22 119:25 120:8 120:9 120:9 120:9 120:10 120:16 120:23 121:1 121:3 121:3 121:12 121:15 121:16 122:2 122:9 122:17 122:17 122:20 123:2 123:16 123:18 124:1 124:2 124:3 124:4 124:6 124:6 124:9 124:9 124:10 124:10 124:14 124:15 124:16 124:16 124:18 124:19 124:21 124:23 124:24 124:25 125:1 125:1 125:3 125:5 125:24 126:2 125:14 126:15 126:22 126:25 125:24 126:2 126:3 126:20 126:21 126:22 126:23 127:1 127:2 127:3 127:3 127:4 127:7 127:7 127:11 127:11 127:16 127:16 127:25 128:9 128:11 128:12 128:14 128:15 128:25 129:16 129:16 129:17 129:17 129:17 129:22 130:6 130:14 130:17 130:18 130:19 130:22 130:23 131:4 131:7 131:8 131:10 131:11 131:25 132:12 132:17 132:23 133:15 133:24 133:25 134:4 134:9 134:10 134:25 135:23 134:2 134:2 135:13 135:17 137:17 137:18 137:19 137:20 137:22 137:22 138:6 138:8 138:9 138:11 138:13 138:14 138:17 138:18 138:20 138:24 139:2 139:2 139:5 139:17 139:19 139:20 140:4 140:9 140:12 140:14 140:16 140:21 140:23 140:24 141:1 141:3 141:6 141:17 141:19 141:23 141:24 142:2 142:10

**and**(301) 142:17 142:19 142:21 143:3 143:9 143:9 143:10 143:11 143:16 144:5 144:6 144:18 144:21 144:22 144:24 145:3 145:16 145:17 145:20 145:22 145:23 145:24 146:5 146:7 146:7 146:8 146:10 147:7 147:8 147:24 147:24 148:1 148:6 148:12 148:13 148:16 148:19 149:2 149:5 149:6 149:7 149:11 149:12 149:13 149:15 149:17 149:18 149:23 150:15 150:24 151:6 151:9 151:15 151:20 152:5 152:10 152:10 152:11 152:25 153:15 153:21 155:21 155:25 155:26 156:5 156:7 156:11 156:18 156:21 156:25 157:2 157:3 157:4 157:6 157:16 157:19 157:20 157:25 158:4 158:5 158:10 158:11 158:12 158:16 158:17 158:22 158:24 158:25 159:5 159:5 159:16 160:5 160:8 160:13 160:15 161:10 161:17 161:19 161:20 161:21 161:23 162:5 162:12 162:14 162:15 162:18 162:18 162:21 162:24 162:25 163:1 163:4 163:7 163:15 163:16 163:16 163:17 163:18 163:19 163:24 164:4 164:7 164:24 165:1 165:6 165:14 165:18 165:25 166:10 166:22 166:25 167:12 167:15 167:20 167:22 168:10 168:15 168:20 168:25 169:1 169:2 169:4 169:5 169:7 169:11 169:21 169:23 170:3 170:5 170:7 170:9 170:10 170:11 171:5 171:6 171:6 171:7 171:8 172:6 172:6 172:9 172:17 172:21 172:22 173:2 173:4 173:14 174:8 174:9 174:13 174:24 175:1 175:5 175:11 175:12 175:13 175:13 175:14 175:19 175:21 175:22 175:23 176:6 176:15 176:20 177:3 177:9 177:11 177:11 177:11 177:17 177:23 178:5 178:9 178:9 179:5 179:8 179:8 179:10 179:11 179:15 179:16 179:17 179:18 179:19 179:20 179:22 179:25 179:25 180:2 180:3 180:5 180:6 180:7 180:8 180:9 180:12 180:14 180:16 180:22 180:22 180:23 180:25 181:4 181:5 181:16 181:7 181:18 181:11 181:12 181:21 181:13 181:16 181:16 181:19 181:20 181:24 182:4 182:5 182:8 182:18 182:18 182:25 183:4 183:8 183:25 184:5 184:8 184:7 184:9 184:11 184:12 184:16 184:18 184:19 184:19 184:21 184:22 184:23 185:1 185:1 185:6 185:9 185:9 185:11 185:19 185:22 185:25 186:2 186:3 186:8 186:11 186:11 186:15 186:19 186:22 186:24 186:25 187:1 187:3

**and**(32) 187:4 187:11 187:11 187:14 187:14 187:16 187:22 187:24 188:10 188:12 188:12 188:13 188:14 188:15 188:19 188:25 188:25 189:2 189:4 189:4 189:11 189:12 189:21 189:21 189:24 189:25 190:20 191:3 191:6 191:11 191:11 191:16 191:17 191:19

**and-cold**(1) 71:23
**andrew**(5) 1:26 3:19 3:25 8:9 184:19
**andrews**(3) 7:11 63:15 98:1
**angela**(1) 1:35
**angeles**(1) 3:29
**annotated**(1) 46:18
**announced**(1) 64:2
**another**(3) 38:9 39:5

**another**(16) 23:8 33:1 40:2 46:16 54:3 58:4 60:11 69:25 70:8 92:18 124:17 127:2 127:6 133:9 145:16 166:13
**another's**(1) 130:17
**answer**(5) 44:3 44:5 127:22 143:7 165:10
**anticipated**(1) 143:18
**anticipating**(1) 131:21
**any**(69) 9:13 13:21 14:3 14:13 16:3 19:2 20:5 20:6 27:9 34:23 36:20 40:17 44:17 49:15 51:17 52:13 52:19 52:24 55:15 55:18 55:24 56:5 56:5 56:7 63:20 63:23 64:4 64:24 65:23 66:16 70:6 73:24 73:25 80:11 80:23 84:21 85:14 86:22 95:3 96:20 103:4 115:7 116:5 118:4 119:9 119:12 121:12 122:19 123:15 142:23 145:15 146:14 147:17 148:10 148:12 149:25 152:3 159:9 161:8 163:3 165:11 174:5 177:6 178:3 181:21 186:9
**anybody**(5) 46:20 120:14 152:13 163:7 173:25
**anybody's**(1) 116:22
**anyone**(20) 27:12 29:11 55:25 56:19 59:20 79:25 80:2 80:13 80:21 84:24 85:2 85:3 85:23 85:25 90:7 100:8 103:3 104:16 128:3 177:17

**anyone's**(1) 51:15
**anything**(9) 97:21 97:23 125:5 134:20 146:12 151:23 152:12 178:5
**anyway**(2) 130:20 150:21
**apologize**(1) 178:3
**apology**(1) 46:3
**appeal**(30) 18:12 42:23 49:13 52:17 65:9 65:15 65:21 71:11 72:8 73:12 74:16 75:12 75:14 77:2 77:16 83:11 83:12 83:25 87:4 99:5 99:10 99:10 105:8 145:6 166:21 167:1 168:11 180:16 186:9
**appealed**(4) 18:12 18:19 149:11 168:10
**appealing**(2) 75:11 75:25
**appeals**(13) 15:12 15:13 71:2 81:15 86:9 90:25 92:17 105:8 149:12 180:3 185:23 186:16

**appear**(3) 34:19 63:18 95:4
**appearances**(1) 51:3 6:1 7:1 8:1
**appeared**(1) 164:4
**appearing**(2) 60:21 100:21
**appears**(1) 160:21
**appellants**(1) 185:23
**applicability**(3) 34:20 52:19 52:25
**applicable**(3) 105:24 141:19 175:20
**applicant**(2) 25:1 114:11
**application**(7) 15:16 43:22 46:13 65:12 113:8 116:11 116:15

**applied**(8) 18:18 19:8 37:8 49:18 65:18 78:6 98:14 146:8
**applies**(9) 43:4 43:22 44:13 45:11 47:1 48:12 52:18 53:1 99:1
**apply**(21) 24:15 26:15 43:6 45:19 46:11 47:3 48:13 49:11 49:14 49:20 49:22 54:21 113:1 136:14 136:19 137:10 139:17 141:13 182:12 182:15 185:13
**appointed**(5) 17:7 44:14 72:4 126:1 127:23
**appreciate**(1) 131:17
**apprised**(1) 138:25
**approach**(7) 23:10 156:17 173:11 173:16 188:8 189:21 190:22

**approached**(1) 34:12
**approaching**(1) 123:9
**appropriate**(17) 13:21 16:24 105:23 107:18 118:5 137:18 138:16 141:18 142:6 142:11 142:22 143:3 143:12 143:24 152:11 152:13 183:4
**appropriately**(3) 137:2 142:7 143:14
**approval**(13) 31:11 37:1 53:7 70:25 86:11 94:2 95:14 137:20 138:9 176:6 176:18 176:19 184:13

**approve**(15) 36:9 36:16 51:3 53:7 86:23 88:8 98:18 99:25 100:23 104:7 104:20 139:13 185:5 185:15 186:21
**approved**(23) 8:19 29:21 32:16 40:20 58:10 75:22 93:18 104:15 110:12 137:15 138:13 139:19 140:21 141:8 144:19 160:20 161:15 174:23 177:11 177:14 179:9 182:8 183:21

**approves**(1) 115:2
**approving**(3) 70:24 164:19 191:11
**approximate**(1) 28:1
**approximately**(1) 28:1
**approximation**(1) 159:9
**april**(3) 31:1 122:23 125:18

**are**(233) 10:1 11:8 12:4 12:14 12:16 13:8 13:9 13:11 13:17 13:25 14:17 14:22 15:9 16:15 17:2 18:11 19:14 20:1 20:24 21:1 21:3 21:8 21:10 21:12 21:24 21:25 22:1 22:2 22:24 22:16 22:17 23:7 24:1 24:10 24:18 24:19 25:2 25:4 26:12 26:13 27:4 27:18 27:21 28:16 28:17 28:18 28:18 29:15 29:15 31:17 31:21 35:12 35:21 35:23 36:6 36:12 36:17 36:21 37:14 37:15 38:11 39:8 39:10 39:11 40:4 41:14 45:18 45:21 45:22 46:19 47:8 47:9 47:11 48:21 48:21 49:20 50:8 50:24 51:9 51:24 53:2 53:3 53:15 53:16 54:18 55:16 57:3 57:25 58:11 61:16 61:25 62:10 62:22 63:1 63:2 64:3 65:21 67:16 67:19 68:23 68:25 69:1 69:15 69:19 69:15 70:3 70:14 71:4 71:6 72:18 74:6 74:25 75:21 76:5 76:9 77:5 78:22 79:22 80:4 80:9 81:25 82:4 86:23 87:18 88:23 89:12 89:17 90:12 91:4 92:23 93:18 96:12 98:10 99:17 101:3 101:7 102:10 103:5 105:11 106:7 106:20 107:5 108:24 109:10 109:12 111:2 111:14 113:9 113:12 113:14 115:4 115:15 116:3 117:25 119:15 120:8 120:12 121:15 121:25 122:24 123:12 124:8 127:4 131:21 131:23 132:25 133:3 133:23 134:9 136:20 138:23 139:9 139:24 141:3 141:14 142:7 142:8 143:24 146:6 148:9 148:16 149:19 150:20 150:20 151:15 152:16 152:18 153:3 156:16 157:10 157:15 158:2 159:8 159:14 160:6 160:9 161:9 161:11 161:18 163:23 165:1 165:1 165:2 167:11 172:19 174:17 174:25 175:23 176:24 177:8 178:19 178:19 178:19 179:8 179:17 179:19 180:4 181:23 182:19 182:25 183:5 183:13 183:19 185:23 186:6 187:1 187:2 187:4 190:14

**aren't**(1) 27:3
**aren't**(1) 122:8
**argue**(9) 34:12 61:20 74:11 89:9 100:7 114:22 130:1 148:21 155:22

**argued**(4) 71:9 71:9 73:11 152:9
**argues**(2) 137:10 141:12
**arguing**(3) 87:3 109:5 143:25
**argument**(21) 24:17 63:10 72:20 74:15 75:3 76:9 76:24 77:18 86:15 89:15 89:17 133:6 133:9 135:4 136:13 141:1 143:18 144:3 145:10 155:3 155:4

**arguments**(24) 19:17 19:25 26:6 26:17 29:3 29:5 72:23 73:4 73:8 74:1 74:4 74:6 75:2 75:14 87:9 87:18 105:2 135:23 136:3 144:25 146:9 150:10 150:11 180:22
**arm**(1) 106:1
**arms-length**(1) 187:14
**armstrong**(2) 12:12 12:14
**arose**(1) 12:6
**around**(5) 60:3 66:23 128:14 145:21 165:22
**arps**(2) 4:35 7:19
**arrangement**(3) 15:3 29:2 30:12
**arrangements**(1) 10:14
**arriving**(1) 130:14
**arsht**(2) 1:24 184:20
**article**(1) 52:7
**article's**(1) 47:20
**articulated**(1) 19:9
**ashley**(1) 1:37
**ashutosh**(1) 7:34
**aside**(7) 58:21 64:3 87:12 87:16 87:17 159:12 162:24
**ask**(23) 32:12 33:14 40:1 43:7 43:18 50:18 50:19 63:12 84:12 86:7 87:16 98:12 100:11 101:4 104:6 105:4 127:16 127:18 131:24 132:20 140:1 147:22 177:14
**asked**(12) 20:21 53:6 57:10 62:3 82:6 112:24 118:8 127:14 170:6 189:24 190:8 190:10

**asking**(6) 47:14 57:17 115:3 119:5 116:3 157:23
**asks**(3) 139:14 140:17 160:24
**aspect**(4) 10:12 34:21 35:24 114:15
**aspects**(3) 68:11 68:22 156:16
**assert**(3) 43:9 156:21 158:16
**asserted**(5) 110:16 111:20 136:3 156:13 157:1
**asserting**(1) 35:23
**assertions**(1) 161:7
**assert's**(1) 161:3
**assessment**(3) 36:4 43:12 107:6
**asset**(3) 3:4 5:4 108:21
**assets**(9) 11:15 13:17 23:7 59:7 84:1 89:7 107:20 180:18 188:7
**assign**(1) 78:2
**assist**(1) 24:4
**assistance**(2) 26:11 53:25
**association**(1) 181:7
**assume**(3) 66:15 127:22 143:15
**assuming**(3) 30:21 132:6 145:10
**assurance**(1) 111:17
**assure**(1) 111:25
**asterisk**(2) 179:22 179:23
**astronomical**(1) 159:8
**atls**(1) 151:11
**attached**(2) 148:19 169:5
**attacked**(1) 150:18
**attacking**(1) 136:24
**attempt**(2) 64:20 64:25
**attempted**(1) 41:24

**attempting**(5) 92:8 137:4 157:3 158:9 158:9
**attempts**(1) 110:4
**attention**(4) 72:1 100:15 140:13 155:18
**attorney**(1) 168:12
**attorneys**(1) 112:1
**auction**(1) 57:23
**audible**(1) 177:19
**august**(4) 75:15 118:15 118:17 145:11
**author**(1) 48:25
**authorities**(1) 53:17
**authority**(20) 31:12 32:5 32:7 32:9 35:12 36:5 36:8 36:15 42:3 42:4 42:24 46:20 46:23 47:4 50:3 50:3 61:23 63:6 68:13 160:3

**authorize**(1) 46:22
**authorized**(2) 14:13 189:20
**auto**(1) 21:16
**automatically**(1) 113:23
**available**(3) 30:1 113:18 130:15
**ave**(1) 2:45
**avenue**(9) 3:7 3:13 3:20 3:41 4:18 4:25 5:13 5:21 5:27

**average**(8) 37:17 38:9 38:11 38:13 38:18 39:21 56:9 56:10
**avoid**(3) 51:2 79:6 156:1
**avoids**(1) 25:12
**award**(2) 114:15 114:16
**aware**(17) 14:3 14:9 33:19 33:21 50:8 66:16 70:14 75:5 75:7 80:8 86:10 92:6 155:25 156:4 157:11 157:16 171:23
**awareness**(1) 184:16
**away**(9) 23:16 23:16 26:22 58:22 73:16 73:21 88:12 133:23 163:1

**b(3)(a**(1) 175:13
**b(3)(b**(1) 175:13
**b.r**(1) 49:12
**b1**(1) 187:8
**back**(52) 25:20 32:20 35:5 45:25 48:5 57:7 57:8 58:13 74:19 74:21 75:23 76:10 76:19 77:1 78:22 79:15 93:12 93:13 98:23 101:6 106:10 106:20 110:15 113:12 115:19 117:2 117:4 117:12 119:25 121:18 122:2 122:14 123:17 123:25 124:2 127:17 131:25 132:1 132:5 137:5 138:12 140:11 147:6 156:11 157:18 159:13 160:20 170:6 172:16 174:3 174:13 177:21 178:13

**backdoor**(2) 67:25 69:20
**backdrop**(1) 15:25
**badtke-berkow**(1) 3:40
**baked**(1) 112:16
**balance**(3) 12:5 59:1 110:21
**ballot**(3) 138:10 138:12 141:3
**balloting**(1) 102:12
**ballots**(2) 138:18 146:11
**ballpark**(1) 23:2
**banging**(1) 151:2
**bank**(21) 2:10 5:11 7:15 8:16 8:17 96:3 96:7 96:19 96:21 126:3 146:22 146:23 147:19 148:10 148:24 150:9 162:23 162:24 163:10 165:13 165:14
**bankrupt**(1) 163:15
**bankruptcy**(20) 1:1 1:20 37:9 65:11 65:13 65:14 65:19 76:1 102:11 149:22 169:11 169:13 170:2 175:2 175:4 175:21 177:10 183:17 186:25 187:16
**bar**(3) 142:16 142:16 177:1
**barclays**(2) 3:42 69:18
**bargain**(3) 69:18 69:18 136:4
**bargained**(1) 70:15
**bargaining**(1) 73:1
**barred**(1) 181:23
**barrel**(1) 73:12
**barry**(1) 27:15
**base**(2) 120:24 120:24
**based**(6) 19:1 86:20 105:25 134:21 166:19 187:7
**basel**(5) 32:18 37:3 38:7 53:21 86:15
**basically**(6) 73:16 96:4 140:20 147:8 150:23 152:17
**basis**(13) 22:5 24:6 25:22 33:24 34:3 34:9 55:7 56:5 58:14 58:15 64:4 64:25 69:23 69:23 73:2 84:5 86:13 93:7 104:19 129:4 141:6 143:23 156:14 158:15 158:23 161:11 167:24 168:13 177:13

**bassett**(1) 3:26
**bat**(1) 23:18
**battery**(1) 2:29
**battled**(1) 184:4
**bayard**(1) 3:11
**bearing**(2) 60:23 171:8
**beat**(1) 162:21
**beating**(1) 151:3
**beaudries**(1) 5:44
**became**(1) 57:22

01/26/17 13:06:00

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**because**(79) 14:2 16:14 16:17 17:19 19:23 21:15 22:10 24:9 27:20 34:11 36:9 42:17 43:11 46:2 49:11 49:13 49:14 53:6 59:20 61:11 64:12 68:7 73:17 73:19 75:17 76:24 77:20 81:13 89:11 89:15 94:3 94:18 95:6 98:19 99:20 99:20 113:11 113:17 113:18 116:22 121:23 122:19 124:7 125:2 126:8 126:17 127:10 127:22 128:2 128:19 129:6 131:22 132:3 133:22 137:13 140:13 141:6 144:20 145:6 146:1 147:23 150:17 150:19 152:11 157:10 158:6 158:14 159:3 162:25 169:3 169:10 170:10 170:17 175:3 181:20 187:22 188:12 188:22 189:18

**become**(2) 104:1 114:25

**beebe**(1) 4:37

**been**(114) 10:24 11:7 11:10 11:12 11:15 11:16 12:9 12:9 13:24 14:5 14:12 14:13 17:24 18:18 18:19 19:17 20:4 20:21 21:6 23:2 24:23 24:23 25:8 27:20 28:6 29:7 29:7 33:9 50:20 51:13 56:21 68:6 79:13 79:16 83:9 83:14 85:8 86:21 91:7 96:9 97:11 98:5 99:17 100:6 104:15 105:1 107:3 111:1 111:11 111:20 113:17 113:18 113:20 114:4 116:12 118:6 119:23 122:25 123:2 123:6 124:8 124:21 124:23 125:9 125:10 125:15 125:21 125:23 130:9 139:21 140:10 140:14 141:12 144:21 145:9 145:19 146:3 146:4 147:4 147:7 149:1 149:7 149:19 153:5 158:8 160:7 163:8 162:13 162:14 162:23 163:1 163:5 163:10 163:22 166:20 167:7 169:4 171:5 172:23 179:5 179:20 183:14 183:21 184:13 185:24 187:19

**before**(64) 11:19 11:25 12:11 18:18 24:8 27:1 37:10 41:5 52:17 57:3 57:8 59:14 60:18 60:21 61:12 63:22 71:24 72:16 90:8 91:16 92:10 92:21 94:4 98:22 101:3 106:24 107:16 114:6 115:5 117:1 119:15 120:2 121:14 125:25 131:21 131:24 132:3 134:1 134:9 137:3 137:14 140:10 141:18 143:3 143:25 145:15 147:5 149:13 156:11 157:22 159:2 159:4 159:13 159:25 162:5 164:4 166:20 167:24 171:9 177:23 183:7

**beg**(1) 222:22

**begin**(1) 9:9

**beginning**(6) 28:7 33:15 91:8 144:9 146:3 149:8

**behalf**(19) 20:18 29:20 29:25 30:3 36:6 43:12 43:14 43:21 60:2 63:15 90:13 93:24 96:3 98:1 102:5 102:11 135:22 151:24 163:1

**behavior**(1) 185:2

**being**(52) 13:14 16:5 16:12 17:4 26:11 36:3 37:3 42:24 49:1 51:4 55:25 58:21 59:3 59:21 59:22 60:1 60:24 62:5 63:19 64:13 68:21 70:20 75:22 80:4 83:17 84:2 84:4 88:3 88:7 88:19 89:7 89:7 89:10 98:8 98:13 98:13 113:15 113:15 123:15 134:10 140:15 141:22 151:21 152:11 152:13 161:17 163:19 163:21 165:15 180:5 180:24 183:23

**belabor**(2) 89:14 149:20

**belatedly**(1) 139:19

**belief**(1) 143:24

**believe**(41) 12:14 17:9 24:19 57:4 61:16 62:1 63:20 63:23 80:9 85:12 85:19 85:22 86:7 97:20 98:10 98:12 100:18 100:21 101:3 107:18 125:24 126:12 136:20 140:23 141:14 142:6 143:11 143:13 158:1 160:10 161:22 166:9 166:22 170:23 170:24 171:18 171:20 172:15 177:10 178:4

**believed**(3) 60:4 109:14 142:21

**believes**(1) 64:4

**belknap**(6) 4:23 6:25 97:4 117:17 122:23 150:6

**beller**(98) 1:33 100:20 101:24 101:25 102:2 102:4 102:4 102:10 102:13 102:19 102:22 102:24 103:7 103:14 103:20 103:23 104:3 104:5 104:13 104:18 104:21 104:23 105:8 105:14 105:21 106:4 106:6 106:13 106:20 106:24 106:25 107:2 107:5 107:25 108:2 108:5 108:8 108:9 108:14 108:17 108:18 135:7 135:8 135:12 135:13 135:14 159:21 159:23 159:23 159:24 160:5 160:13 160:17 161:3 161:25 164:10 164:12 164:13 164:14 164:24 164:25 165:7 166:4 166:9 166:9 166:11 166:17 167:2 167:4 167:6 167:11 167:15 167:18 167:20 168:3 170:21 170:22 170:23 171:5 171:11 171:13 171:16 171:19 176:5 176:9 176:10 176:13 176:15 176:24 177:16

**belong**(1) 169:13

**below**(1) 56:11

**ben**(3) 1:33 100:20 159:21

**bench**(1) 120:25

**beneficial**(3) 138:22 139:24 140:4

**beneficiaries**(5) 1:33 17:5 17:11 17:16 17:20

**benefit**(10) 2:20 13:13 37:21 39:12 40:8 40:12 46:8 111:7 124:18 177:16

**benefits**(8) 15:18 18:5 21:24 22:17 22:18 28:21 142:4 182:4

**benefitted**(1) 181:7

**benjamin**(3) 1:33 10:10 102:4 106:23

**best**(9) 21:16 25:24 30:16 32:23 53:13 60:4 164:17 186:2 187:17

**best-interested**(1) 105:14

**bet**(1) 106:22

**better**(10) 9:13 16:14 23:15 60:8 125:14 161:4 178:10 179:1 179:1 180:20

**between**(17) 16:23 41:5 45:13 49:16 53:24 54:15 68:2 107:11 107:21 109:16 109:24 115:22 116:14 116:14 172:9 186:10 188:25

**beyond**(5) 12:23 12:23 45:16 47:4 184:10

**big**(5) 59:10 59:22 62:12 165:23 174:3

**bigger**(1) 133:23

**bill**(1) 125:14

**billion**(15) 11:2 11:11 30:23 31:8 57:23 58:2 60:7 69:6 69:10 69:13 92:5 123:8 123:9 123:11 186:6

**billions**(1) 183:20

**binding**(1) 15:5

**binds**(1) 17:16

**binney**(1) 55:20

**bit**(2) 67:5 101:5

**bitter-sweet**(1) 191:23

**blackline**(8) 160:7 172:25 173:7 173:18 174:1 189:12 191:1 191:12

**blackwell**(1) 8:24

**blended**(2) 93:5 93:7

**bloomberg**(2) 8:20 8:21

**blown**(1) 100:6

**board**(2) 73:17 92:23

**body**(1) 46:22

**bond**(1) 91:22

**bondholder**(2) 34:8 6:13 30:1 169:1 74:5 91:10 100:11 142:1 149:4

**bondholders**(36) 13:2 39:10 71:19 72:11 73:5 76:18 76:19 77:5 81:20 82:13 82:15 82:16 82:22 83:3 94:19 95:1 96:4 96:5 96:12 107:12 107:21 108:11 122:5 147:24 147:24 147:25 148:2 148:16 149:16 151:19 151:24 152:3 152:12 152:22 153:3 189:3

**bondholdings**(1) 139:24

**bonds**(13) 57:15 69:12 69:13 95:6 96:19 97:10 123:12 134:9 142:1 147:5 190:9 190:13

**bonuses**(1) 41:14

**book**(2) 47:22 47:23

**border**(1) 147:19

**bore**(1) 92:19

**boston**(1) 6:7

**both**(28) 15:13 35:13 38:2 53:16 73:16 92:18 94:2 103:1 103:15 126:22 137:13 141:16 147:25 149:11 149:13 156:10 156:14 156:25 160:5 161:7 162:12 166:15 166:17 166:18 166:23 167:8 179:19 186:7

**botter**(11) 2:6 90:9 90:10 90:12 90:13 90:16 90:25 91:15 92:16 93:20 184:23

**bottom-line**(1) 83:23

**bound**(3) 121:25 138:11 152:18

**boundaries**(1) 69:21

**brad**(2) 2:7 184:23

**branches**(3) 49:21 49:22 50:1

**breach**(4) 51:2 145:12 145:24 152:21

**breached**(1) 55:4

**break**(6) 66:21 66:25 79:15 106:5 106:24 136:2

**bretline**(1) 142:16

**brevity**(2) 29:18 94:1

**brg**(1) 124:16

**brian**(2) 3:18 6:26

**brickley**(1) 6:38

**brief**(16) 19:24 29:13 42:13 47:16 52:13 52:14 66:13 74:24 90:21 97:25 110:24 136:1 137:3 138:8 143:23 167:8

**briefed**(1) 75:2

**briefing**(12) 62:9 75:12 75:25 110:24 110:25 112:9 124:2 129:17 130:10 142:10 145:9 186:15

**briefly**(7) 11:4 94:14 103:8 112:17 164:14 170:23 177:24

**briefs**(4) 62:10 100:19 104:25 180:21

**bring**(4) 25:9 56:9 60:15 141:6 170:2 184:1

**bringing**(2) 61:14 100:15

**brings**(1) 110:8

**broad**(3) 45:11 51:1 65:11

**broadridge**(2) 140:2 140:6

**brock**(1) 8:24

**bromley**(2) 1:30 184:18

**brought**(7) 21:6 47:18 58:17 109:17 140:23 184:13 190:1

**brown**(3) 4:3 6:29 6:42

**bryant**(1) 2:9

**bubbled**(1) 71:22

**buchanan**(1) 4:10

**bucket**(2) 59:7 78:9

**bulk**(1) 12:24

**bunch**(2) 68:22 149:19

**burden**(2) 114:10 114:15

**burn**(7) 75:25 77:13 79:7 79:11 79:11 83:16 83:20

**burrell**(1) 159:20

**business**(1) 97:11

**businesses**(2) 57:12 91:19

**bussiere**(1) 3:12

**but**(188) 11:16 12:6 12:9 12:15 14:17 15:19 17:1 19:14 20:1 20:21 21:13 21:19 22:2 22:5 22:21 23:2 23:7 23:8 23:13 23:17 23:19 25:8 25:12 26:6 26:17 26:21 27:1 27:9 27:23 28:21 29:15 33:10 33:15 36:16 37:15 37:22 40:16 40:19 49:5 49:14 50:20 50:23 51:13 52:24 53:3 53:5 54:19 54:22 55:17 56:4 56:15 58:25 59:20 60:2 60:5 62:3 62:7 62:8 63:21 63:8 64:15 66:17 68:17 68:19 69:12 70:8 70:16 71:2 71:13 72:15 72:19 74:1 74:12 75:3 75:8 75:8 76:9 76:21 77:10 77:17 78:7 78:11 78:12 78:21 79:2 79:18 80:10 81:7 82:4 82:11 85:23 86:13 87:14 88:3 88:16 89:22 92:23 93:9 95:5 95:14 96:10 96:16 97:11 98:24 99:6 100:11 100:19 101:7 104:9 107:10 108:15 109:6 109:23 110:4 111:3 112:12 112:14 113:8 113:20 114:11 114:13 114:21 115:15 115:19 116:6 116:13 118:8 118:25 120:23 122:5 124:8 125:7 129:3 130:16 131:4 133:22 134:2 134:19 137:1 138:10 139:5 140:7 145:21 142:3 142:19 145:21 158:8 160:11 166:22 163:2 163:8 163:25 164:23 165:8 165:11 169:19 170:7 176:20 177:3 177:6 179:10 180:17 182:23 183:18 184:7 184:16 184:25 185:23 187:22 190:17 190:19 190:1

**but/for**(1) 144:12

**button**(1) 134:9

**buy**(2) 120:12 122:15

**c(3)a**(1) 175:14

**cala**(4) 157:4 157:5 158:24 175:14

**calculated**(1) 103:10

**calculation**(2) 24:24 25:9

**calgary**(2) 12:12 12:16

**call**(6) 62:12 66:12 79:18 121:18 125:4 128:11 154:20 181:9 181:11

**called**(12) 46:14 47:24 54:11 55:22 79:25 81:9 81:18 83:7 83:22 84:12 84:13 127:14

**calling**(2) 69:19 84:20

**calls**(1) 61:13

**came**(12) 54:13 57:10 58:6 71:6 71:11 71:24 74:21 75:8 83:18 88:15 93:13 124:18 156:15 158:24 164:2 180:1 184:4

**can**(77) 19:24 25:19 32:8 32:12 33:10 35:5 40:1 43:17 48:4 48:14 48:22 48:23 52:7 53:3 58:10 59:8 60:2 60:12 60:13 60:13 61:19 62:5 66:15 66:23 69:4 73:24 74:24 76:23 77:2 78:17 79:10 84:20 85:3 86:3 88:5 89:24 100:24 105:1 105:25 106:4 106:8 114:6 116:17 116:20 116:21 116:21 119:14 121:3 128:9 129:16 130:11 130:12 131:9 142:19 152:23 154:2 154:14 155:5 155:7 159:1 159:2 159:13 160:8 162:5 163:8 169:19 172:1 173:4 173:5 174:12 179:10 179:19 180:3 189:12 189:21 190:21 190:1

**can't**(4) 25:18 53:5 69:25 74:15

**canada**(30) 20:17 22:9 30:22 34:23 34:23 38:13 38:13 39:9 43:23 44:17 46:17 57:9 58:7 59:6 59:23 67:14 69:9 69:14 69:19 69:22 75:19 90:16 122:3 123:3 123:4 126:22 134:10 144:19 148:1

**canada's**(1) 41:15

**canadian**(65) 7:8 9:18 10:1 10:11 10:12 10:13 10:16 11:25 11:21 11:10 11:12 11:15 11:18 11:23 13:7 13:8 13:17 14:20 20:25 25:3 25:4 27:16 29:12 29:19 29:24 30:3 30:19 31:8 36:21 38:18 38:23 39:8 39:14 39:20 39:22 41:7 41:8 46:15 47:25 56:20 68:10 69:6 69:13 69:21 69:24 69:25 70:7 70:10 70:19 80:16 84:5 96:23 97:9 99:8 106:19 117:20 130:8 133:25 144:11 149:12 149:13 162:14 186:8 186:8 186:11

**canadians**(1) 122:4

**cannot**(9) 17:1 18:14 31:22 36:8 37:5 37:15 46:22 66:2 73:11

**cantor**(2) 8:8 8:9

**cantwell**(48) 1:34 106:6 135:10 135:15 135:17 135:20 135:21 136:1 136:7 136:10 136:17 137:7 137:9 138:6 140:9 141:10 142:14 143:12 143:22 147:10 155:13 155:14 155:16 155:20 155:25 156:9 156:9 156:20 156:24 157:9 157:14 158:21 159:19 172:16 172:17 172:18 173:10 173:13 173:15 173:17 173:18 173:21 173:23 174:12 174:16 175:17 176:1 176:4 176:8

**cantwell**(1) 173:16

**can't**(3) 132:13 153:5 183:20

**capacity**(1) 141:25

**capital**(14) 6:21 6:21 7:44 7:45 8:4 8:5 38:2 38:5 57:9 107:6 108:22 172:7 181:21 188:15

**capped**(1) 77:23

**capping**(1) 13:24

**care**(4) 89:5 137:23 138:10 180:7

**carefully**(1) 43:9

**carey**(1) 151:13

**caroline**(1) 5:44

**carr**(1) 42:24

**carrots**(1) 72:1

**carrying**(1) 119:23

**carve**(3) 137:4 142:8 152:25

**case**(82) 1:5 14:20 16:22 21:15 26:9 31:18 42:7 43:5 45:17 51:1 51:3 51:8 53:16 54:11 54:15 55:14 55:19 55:20 57:14 57:16 65:7 65:13 66:1 72:14 73:15 85:9 98:5 109:14 111:9 112:23 113:22 114:8 114:24 118:4 121:1 122:10 122:19 122:22 123:3 123:6 124:13 125:21 127:1 142:17 143:12 145:15 146:2 146:7 147:6 147:8 147:12 147:14 147:16 147:17 148:25 149:1 149:9 156:3 156:10 157:10 161:21 168:24 169:1 169:3 169:4 169:25 170:1 170:5 170:18 171:8 179:13 179:18 179:24 183:4 183:9 183:18 184:1 184:6 184:15 185:1 185:3

**case-specific**(1) 142:12

**cases**(28) 53:2 53:14 53:14 53:16 59:3 61:14 65:6 86:8 87:2 91:17 91:25 92:12 105:5 136:21 138:21 139:11 141:15 142:24 143:3 143:11 144:1 144:10 144:14 151:9 153:8 172:6 177:14 180:15

**cash**(7) 30:21 30:25 79:11 79:11 83:20 132:1 134:21

**cassels**(1) 8:24

**cast**(1) 138:10

**categorically**(1) 18:3

**category**(2) 21:1 54:6

**cause**(6) 31:25 104:14 104:19 141:2 174:23 181:21

**caused**(2) 179:23 180:1

**ccaa**(34) 14:13 16:16 16:16 16:19 17:14 30:10 30:11 30:12 30:21 31:11 31:13 34:20 34:21 35:2 35:24 36:8 36:9 36:14 36:16 36:18 37:7 38:3 38:4 38:5 39:15 40:14 41:2 41:21 45:12 51:7 51:9 52:1 53:6

**ccc**(5) 5:25 7:40 7:40 20:21 20:21

**ccp**(1) 38:6

**cdma**(1) 57:22

**cease**(1) 176:5

**cede**(5) 9:25 65:25 100:20 116:4 143:15

**ceding**(2) 107:16 137:3

**celebrating**(1) 127:5

**center**(1) 68:8

**central**(1) 68:8

**cents**(11) 13:8 13:9 13:11 24:21 24:24 25:2 25:11 39:10 57:15 78:16 93:14

**century**(1) 3:27

**certain**(14) 18:5 53:24 53:25 64:3 69:21 71:18 76:23 78:5 78:22 88:1 88:2 102:7 139:23 174:22

**certainly**(20) 14:1 23:18 49:5 60:2 74:2 76:5 76:10 86:23 88:20 88:24 92:25 96:20 98:3 99:1 100:7 142:19 149:3 149:9 178:5 181:6

**certainty**(2) 90:22 186:18

**certification**(1) 192:1

**certify**(1) 192:2

**chaim**(2) 7:4 7:4

**challenge**(6) 21:7 52:19 112:6 114:3 133:8 161:7

**challenged**(1) 51:5

**challenges**(2) 112:10 141:25

**chambers**(2) 177:21 190:2

**chance**(3) 33:6 122:16 158:15

**change**(17) 36:13 88:11 100:7 103:15 103:25 104:7 104:11 104:13 104:19 114:19 148:21 159:11 173:10 174:22 189:23 190:7 190:19

**changed**(5) 13:14 28:22 101:1 139:12 145:2

**changes**(1) 172:23

**chapman**(3) 2:35 65:16 65:17

**chapter**(9) 1:8 65:25 66:1 91:11 91:12 136:21 151:2 176:25 187:19

**characterize**(1) 63:19

**characterized**(2) 47:5 160:25

**charge**(2) 122:17 189:1

**charged**(1) 113:15

**charging**(1) 110:19

**charles**(1) 2:28

**charter**(67) 19:17 19:18 24:15 26:4 26:6 26:15 30:13 31:18 31:19 31:20 32:2 32:6 32:10 32:11 32:19 32:25 35:25 36:7 32:25 41:22 41:23 41:25 42:4 42:5 42:7 42:8 43:3 43:5 43:6 43:22 44:13 44:23 45:2 45:5 45:13 45:16 45:18 45:19 46:11 46:13 46:15 46:19 46:21 46:24 47:1 47:7 47:9 47:10 47:25 48:11 49:2 49:14 49:18 49:19 49:20 51:23 54:2 54:7 54:16 55:1 56:7 56:7 56:8

**chartered**(1) 31:14

**check**(1) 145:16

**chief**(2) 60:21 180:17

**children**(1) 37:14

**chilmark**(2) 62:17 85:7

**chips**(1) 76:6

**choice**(3) 25:22 27:9 124:11

**chose**(1) 26:14

**christmas**(1) 165:11

**christopher**(4) 2:15 4:5 6:30 184:24

| Word | Page:Line |
|---|---|

**circuit**(35) 74:17 74:17 75:1 75:5 75:6 75:7 75:9 75:23 76:8 81:16 83:18 87:6 99:3 99:11 139:24 141:19 142:15 145:6 145:11 149:13 150:22 166:21 166:25 168:11 169:9 169:9 169:14 180:3 180:16 181:24 185:14 185:14 185:23 188:21 188:22

**circulated**(1) 160:8
**circumstance**(1) 52:24
**circumstances**(12) 19:14 21:15 26:15 27:8 55:10 100:13 104:10 142:12 182:24 182:25 183:3 187:8

**circumvent**(1) 32:10
**citation**(1) 175:8
**cite**(2) 14:21 153:7
**cited**(6) 18:15 43:8 53:15 111:9 138:8 142:10
**cites**(1) 55:21
**claim**(4) 153:10 153:14 153:17 154:9
**claim**(36) 25:19 33:24 35:22 35:23 39:10 40:21 40:23 58:23 59:10 61:4 69:6 69:10 82:15 82:21 89:7 109:18 127:8 156:15 156:18 156:22 157:24 158:2 158:3 158:5 158:9 158:10 158:16 158:19 158:22 167:15 167:22 170:24 172:5 172:7 172:8 181:20

**claimant**(1) 158:6
**claimants**(3) 3:11 64:4 141:6
**claimed**(1) 13:8
**claiming**(1) 150:20
**claims**(84) 11:12 13:9 13:18 13:24 14:2 14:5 17:17 18:4 18:4 18:8 25:4 25:13 30:20 39:21 45:18 51:25 57:14 58:7 58:15 58:17 58:20 58:24 59:5 59:8 59:9 62:1 69:2 69:22 71:4 72:19 75:19 76:22 77:6 77:12 77:22 78:1 78:2 78:6 78:7 78:9 78:13 78:14 78:18 82:21 83:5 86:24 91:23 94:22 102:12 103:12 109:16 125:12 136:14 137:11 139:15 141:6 144:21 145:17 145:18 147:25 151:1 151:4 151:5 151:5 155:22 156:13 157:1 157:3 157:15 157:18 160:24 160:25 161:1 161:9 161:10 166:10 166:19 175:19 177:7 182:4 182:7 182:13 183:3

**clarification**(1) 115:14
**clarified**(2) 19:4 156:21
**clarity**(1) 95:18
**class**(29) 3:45 6:29 86:17 86:18 86:22 94:19 94:23 103:1 103:11 103:16 103:25 104:1 160:25 160:25 161:9 161:12 174:17 174:17 174:20 174:24 174:25 175:1 175:22 182:4 182:17 187:22 187:24

**classes**(4) 103:10 103:16 175:5 175:12
**classification**(2) 175:19 186:25
**clean**(3) 157:6 159:5 190:1
**clean-up**(1) 69:3
**cleaned**(3) 156:12 157:2 191:14
**clear**(24) 25:21 26:10 47:6 54:24 77:21 87:24 96:9 96:10 96:16 99:7 99:9 109:1 109:5 110:3 114:22 115:2 115:20 132:12 141:21 142:18 142:24 174:17 186:18 189:19

**clearly**(7) 34:21 48:18 91:16 93:1 131:4 161:16
**cleary**(8) 1:29 7:28 57:2 102:5 128:6 128:7 135:21 184:18

**clerk**(6) 9:2 12:16 67:10 106:17 178:15 178:17
**client**(1) 132:24
**clients**(13) 24:24 25:4 25:8 25:17 109:1 109:6 109:10 109:12 109:14 112:5 112:20 146:8 184:4

**clock**(5) 66:6 75:17 75:21 75:24 80:3
**close**(4) 30:25 36:2 101:21 125:1
**closed**(1) 20:14
**closely**(1) 149:2
**closing**(1) 125:7
**closings**(1) 126:12
**clothing**(3) 37:4 38:8 38:21
**co-counsel**(1) 20:21
**code**(9) 49:12 149:22 175:2 175:4 175:21 186:25 187:4 187:10 187:16

**cole**(2) 2:41 6:45
**coleman**(1) 3:39
**coley**(1) 6:42
**collapsed**(1) 57:9
**colleague**(2) 100:20 135:9
**colleagues**(5) 29:14 62:21 86:7 94:1 174:2
**collecting**(2) 99:7 185:18
**collectively**(1) 57:18
**college**(1) 124:10
**combined**(4) 37:1 39:14 41:6 52:1
**come**(27) 11:23 21:14 21:14 24:4 44:9 60:9 68:22 74:18 77:10 86:7 87:19 88:5 90:7 91:6 93:14 98:23 101:6 117:2 122:7 123:5 124:1 124:20 125:1 129:24 131:25 147:22 173:2 179:5

**comes**(11) 11:25 28:22 29:8 68:4 68:13 69:8 75:19 75:20 78:22 79:14 127:17

**coming**(8) 44:4 69:10 69:19 72:22 77:6 122:16 157:18 157:22

**commencing**(1) 157:16
**comment**(5) 42:7 64:12 89:18 95:11

**comments**(5) 63:11 95:10 118:7 162:14 162:15
**committee**(29) 2:5 6:18 7:8 8:25 22:7 29:21 82:14 90:14 90:18 90:20 91:3 91:9 115:1 121:2 123:11 123:13 123:13 124:14 127:20 127:22 130:7 141:24 146:25 147:2 147:9 149:3 151:19 152:9 184:22

**committees**(2) 71:14 136:25
**committing**(1) 145:14
**common**(1) 78:3
**communicated**(1) 28:2
**communication**(1) 159:14
**community**(1) 184:3
**companies**(2) 57:25 183:16
**company**(4) 62:6 57:20 190:12 190:13
**company's**(1) 49:13
**compare**(1) 82:6
**compared**(7) 15:21 37:15 39:24 53:12 68:24 73:3 86:17

**comparison**(1) 172:25
**compel**(2) 112:20 113:1
**compensation**(10) 58:19 72:11 160:19 160:24 161:5 161:10 161:22 162:17 164:16 182:7

**complain**(2) 16:1 16:12
**complaint**(1) 16:13
**complete**(1) 36:9
**completed**(1) 176:11
**completely**(4) 15:5 16:6 120:24 120:24
**completion**(1) 75:16
**complex**(3) 91:11 99:15 123:6
**complexities**(2) 184:6 184:15
**complexity**(7) 70:9 70:20 88:25 99:14 185:19 186:14 186:16

**compliance**(4) 14:11 14:14 37:7 53:5
**compliant**(1) 30:13
**complicated**(1) 126:16
**comply**(3) 47:8 48:21 84:8
**component**(1) 86:12
**compromise**(3) 10:13 15:2 17:16 30:13 39:20 68:8 68:10 68:12 68:13 68:16 69:1 110:5 187:13

**compromised**(3) 38:4 58:21 109:19
**conaway**(1) 2:33
**concept**(2) 77:21 153:5
**concepts**(1) 61:5
**concern**(4) 64:1 86:16 98:7 190:17
**concerned**(3) 150:19 180:3 182:21
**concerning**(1) 64:22
**concerns**(3) 130:17 161:20 171:6
**concerted**(1) 92:3
**conclude**(1) 84:11
**concluded**(3) 10:1 83:9 144:6
**concludes**(2) 56:20 181:4
**conclusion**(3) 16:8 61:14 159:2
**condition**(5) 11:17 11:21 134:1 140:14 145:6
**conduct**(1) 66:1
**conferred**(1) 51:1
**confidential**(1) 124:15
**confirm**(6) 9:24 12:15 65:8 74:22 85:24 174:9
**confirmable**(1) 175:3
**confirmation**(60) 57:4 65:5 65:20 65:23 67:25 74:18 76:16 90:4 90:7 94:3 94:4 96:21 97:13 97:14 98:6 98:21 104:23 105:11 107:19 108:16 109:2 109:4 109:11 110:2 110:4 110:8 118:6 119:1 120:1 120:16 139:3 145:19 147:14 147:15 156:2 156:6 160:6 167:7 167:25 171:8 171:16 171:23 172:11 172:16 172:24 174:6 174:14 174:19 174:23 175:6 175:18 181:8 183:8 186:23 188:2 188:3 189:14 189:23 190:9 190:24

**confirmed**(3) 89:4 122:2 167:20
**confirming**(1) 185:7
**conflicts**(2) 4:36 7:20
**conforming**(1) 175:24
**congratulate**(1) 180:19
**congratulated**(1) 179:18
**congratulations**(1) 179:22
**connection**(4) 111:1 113:7 115:20 186:5
**consensual**(9) 79:5 81:22 104:14 137:24 143:6 143:8 146:10 184:13 186:7

**consensually**(2) 113:1 156:5
**consent**(3) 83:13 146:4 152:17
**consequences**(1) 73:15
**consider**(7) 31:3 51:12 70:19 99:10 114:11 116:17 169:9

**consideration**(4) 88:12 94:16 94:20 155:12
**considerations**(2) 14:18 82:19
**considered**(1) 82:21
**considering**(4) 15:2 51:25 57:6 83:7
**consistent**(9) 13:4 13:10 42:5 119:2 119:8 128:17 138:13 179:5 187:10

**consisting**(1) 69:4
**consolidated**(2) 69:24 103:16

**consolidation**(8) 13:17 73:9 105:19 105:23 188:13 188:14 188:22 189:4

**consortium**(12) 3:46 6:30 71:4 94:21 97:18 98:19 98:24 145:5 145:13 183:3 183:11 185:11

**constituencies**(1) 23:18
**constituency**(1) 151:18
**constituents**(1) 68:3
**constitute**(4) 31:12 50:4 94:25 95:3
**constitution**(3) 34:23 34:25 44:16
**constitutional**(11) 34:20 35:17 35:20 36:14 46:12 46:17 48:16 48:20 48:22 52:25 54:16

**constitutionality**(1) 51:5
**constructed**(1) 141:17
**construed**(2) 47:1 48:11
**constutations**(1) 22:12
**consulting**(2) 6:41 6:49
**consumed**(1) 59:12
**consummated**(1) 95:8
**consummation**(1) 95:2 102:10
**contains**(2) 71:18 113:19
**contemplate**(1) 13:23
**contemplates**(2) 13:16 134:5
**contemplating**(1) 113:9
**contested**(2) 58:15 62:6
**context**(3) 17:1 18:2 26:8
**contexts**(1) 16:25
**continue**(6) 25:15 62:4 66:15 71:19 81:21 87:7
**continued**(7) 2:2 3:2 4:2 5:2 6:2 7:2 8:2 25:12 25:21 143:15

**contingency**(1) 166:22
**contractual**(2) 151:25 158:3
**contrarian**(2) 6:21 6:21
**contrary**(1) 49:1
**contribution**(9) 77:6 82:15 82:21 94:22 122:12 126:18 145:17 184:18 185:1

**contributions**(4) 37:12 136:20 143:9 148:25
**control**(2) 66:1 71:11
**conversation**(2) 71:13 134:22
**conversations**(2) 121:15 165:21
**conversion**(1) 70:4
**copies**(4) 80:9 112:12 169:19 189:13
**copy**(4) 174:1 190:1 190:20 191:4
**copyright**(2) 158:2 158:8
**copyrights**(1) 158:8
**core**(7) 126:4 127:24 146:3 147:20 147:23 157:19

**cornerstone**(1) 62:13
**corp**(2) 2:20 182:24
**corporate**(1) 188:24
**corporation**(3) 39:12 41:20 188:15
**correct**(7) 23:2 33:17 115:16 167:2 167:4 190:25 192:2

**correctly**(1) 162:6
**corroborating**(1) 114:12
**cost**(4) 37:20 75:17 79:7 83:15
**cost-avoidance**(1) 77:15
**costs**(3) 25:10 38:11 159:3
**could**(45) 18:9 19:12 19:12 25:15 30:24 34:1 37:20 42:3 42:8 45:1 49:2 50:18 50:19 57:12 57:13 65:23 67:17 75:15 78:12 81:22 82:3 83:4 110:7 115:9 115:11 115:25 120:13 123:5 124:16 127:16 127:17 127:18 128:13 138:3 140:14 143:4 143:5 144:5 144:7 145:20 147:12 145:20 147:17 149:21 186:9

**couldn't**(1) 78:8
**couldn't**(1) 143:7
**counsel**(26) 29:21 36:5 41:4 41:12 52:17 54:14 68:11 69:11 97:5 100:10 108:21 112:5 119:17 122:12 123:1 142:2 145:15 152:9 159:14 164:17 167:17 167:18 178:16 179:17 180:21 191:21

**counting**(1) 88:15
**countries**(1) 25:21
**couple**(6) 22:25 80:21 117:8 127:18 151:9 162:9
**courier**(1) 49:13
**course**(22) 9:25 14:15 16:25 21:4 32:8 35:1 44:23 57:16 66:16 91:10 92:2 99:12 108:13 109:14 121:12 121:13 126:19 128:22 138:20 139:11 143:10 188:15

**court**(301) 1:1 9:3 9:7 9:9 9:13 9:15 9:20 10:3 10:5 10:9 11:13 11:18 11:19 11:25 15:11 15:12 15:13 15:13 17:7 17:24 19:9 20:11 20:16 25:18 26:8 27:23 29:1 29:8 31:2 35:14 36:7 36:10 41:2 41:3 41:6 41:9 41:9 41:24 42:2 42:5 43:11 44:25 45:20 46:3 46:14 49:11 50:11 51:3 51:12 53:16 56:13 56:23 61:18 63:12 63:16 63:23 64:8 64:11 65:7 65:11 65:14 65:14 65:20 66:2 66:8 66:19 66:24 67:3 67:8 67:11 67:13 67:17 67:21 69:7 69:16 72:6 72:21 73:6 74:7 74:10 77:8 77:24 78:24 79:21 80:13 80:17 80:23 81:16 82:11 84:14 84:17 84:21 85:2 85:10 85:14 85:21 85:25 86:4 86:19 86:23 86:25 88:8 89:13 89:19 90:2 90:6 90:11 90:15 90:24 91:14 92:3 93:20 94:6 94:8 94:10 94:12 94:17 95:9 95:13 95:16 95:19 95:23 95:25 96:6 96:14 96:24 97:2 97:7 97:9 97:16 97:22 98:17 100:2 100:14 100:23 101:4 101:11 101:16 101:19 101:22 101:24 102:1 102:3 102:9 102:15 102:17 102:21 102:23 103:4 103:15 103:18 103:22 104:2 104:4 104:12 104:16 104:22 105:7 105:13 105:20 106:3 106:8 106:14 106:18 106:22 107:2 107:7 107:14 107:17 107:23 108:1 108:4 108:7 108:13 108:15 108:18 108:23 109:8 109:17 109:20 110:20 111:8 111:12 111:23 113:1 113:3 114:2 114:10 114:11 114:17 115:1 115:10 115:13 115:24 116:2 116:6 117:4 117:6 117:8 117:11 117:13 117:15 117:20 118:12 118:14 118:18 118:22 119:4 119:21 120:7 120:19 122:13 122:18 123:9 123:16 124:19 125:9 125:19 127:9 128:17 128:18 128:22 128:25 129:3 129:6 129:9 129:12 129:14 129:16 129:21 130:7 130:22 131:3 131:13 131:15 131:19 132:22 132:25 132:1 132:5 132:13 132:19 132:22 132:25 133:6 136:9 136:16 137:6 137:8 138:5 140:8 141:9 142:13 143:1 143:19 144:2 144:7 144:15 146:13 146:5 146:17 146:19 146:21 147:3 147:22 149:13 149:21 150:2 150:4 150:13 151:22 152:10 153:9 153:11 153:16 153:18 153:20 153:22 153:24 154:2

**court**(150) 154:5 154:8 154:10 154:13 154:15 154:18 154:20 154:25 155:2 155:4 155:7 155:11 155:15 155:19 155:24 156:8 156:19 156:22 157:8 157:13 158:20 159:7 159:18 159:20 159:23 160:1 160:4 160:12 160:16 161:2 161:24 162:1 162:3 162:7 162:11 163:25 164:3 164:6 164:11 164:13 164:20 164:23 165:3 165:6 165:9 165:17 165:20 165:24 166:2 166:5 166:8 166:18 166:20 166:24 166:25 167:3 167:5 167:10 167:14 167:17 167:19 168:2 168:4 168:7 168:9 169:13 169:17 169:20 169:22 170:2 170:12 170:13 170:19 170:22 171:4 171:10 171:12 171:15 171:20 171:25 172:12 172:14 172:17 173:9 173:12 173:14 173:17 173:20 173:22 173:24 174:10 174:15 174:23 175:16 175:25 176:3 176:8 176:12 176:14 176:23 177:15 177:17 177:20 177:25 178:7 178:8 178:12 178:18 178:23 179:1 179:3 180:3 180:16 181:5 181:11 181:25 182:23 183:4 183:21 184:13 184:14 184:18 185:12 185:22 186:20 187:9 188:6 188:6 188:9 188:11 188:13 188:20 189:5 189:7 189:10 189:17 190:3 190:3 190:16 190:23 191:2 191:5 191:8 191:10 191:15 191:17 191:19 191:20 191:22

**court's**(2) 18:16 64:9
**court-appointed**(5) 20:19 23:17 29:4 36:3 36:4
**courteous**(1) 180:25
**courtroom**(17) 1:10 46:8 59:20 60:20 62:16 67:4 80:10 85:3 85:23 100:9 126:24 160:11 166:9 171:19 173:25 181:12 184:25

**courts**(18) 15:13 35:18 35:20 47:6 47:9 49:18 65:11 65:19 65:22 69:11 92:11 92:18 92:20 127:23 169:14 186:8 186:8 186:11

**court's**(3) 116:20 149:11 149:12
**cover**(3) 37:20 38:6 183:5
**coverage**(6) 24:4 37:11 37:21 37:23 39:1 39:4
**covered**(3) 37:24 79:24 146:11
**covers**(1) 36:1
**cpp**(6) 24:5 38:15 38:16 39:6 39:22 39:24
**craft**(1) 110:6
**creates**(2) 27:6 69:21
**creation**(1) 31:6
**creative**(1) 60:24
**creature**(1) 44:14
**creditor**(25) 7:11 7:15 8:24 12:25 30:10 40:7 40:11 68:3 69:13 70:5 71:14 71:14 76:2 82:14 86:17 88:13 88:19 88:22 89:8 92:2 125:14 136:25 138:9 145:15 145:16

**creditor's**(1) 59:2

| Word | Page:Line |
|---|---|
| creditors(97) | 7:8 8:26 10:25 11:3 11:23 11:24 12:1 13:3 13:5 13:7 13:11 13:13 13:15 14:23 15:9 15:22 16:4 16:9 16:13 16:14 16:17 16:17 16:17 16:21 17:3 26:7 29:21 31:1 31:6 31:7 31:19 51:6 54:6 54:6 55:15 56:8 60:5 60:14 63:24 64:1 64:5 69:14 70:23 71:5 71:8 71:10 75:20 78:18 78:20 78:23 79:10 79:10 83:10 83:25 86:18 86:22 88:1 88:5 89:1 90:14 90:23 92:5 93:3 93:4 93:5 93:7 93:11 94:20 98:12 98:15 99:16 100:8 100:9 105:15 111:16 115:15 137:18 139:18 141:24 145:21 145:21 146:25 148:3 148:14 149:3 151:20 152:3 167:22 184:22 185:20 186:17 186:19 187:12 189:2 189:3 |
| creditor's(2) | 2:4 6:17 |
| crickets(1) | 75:1 |
| critical(1) | 123:15 |
| cross(5) | 79:25 85:2 88:12 147:18 178:2 |
| cross-border(1) | 123:6 |
| cross-examine(3) | 85:23 85:25 103:3 |
| cross-over(6) | 123:12 142:1 147:5 147:24 147:25 |
| cross-ruling(1) | 55:8 |
| crossed(2) | 190:20 190:21 |
| crossover(4) | 51:25 95:1 96:4 96:5 |
| culmination(1) | 58:9 |
| cumulative(1) | 22:19 |
| currency(2) | 13:9 70:4 |
| cut(4) | 21:8 68:16 124:19 124:19 |
| d(3)ja(1) | 175:14 |
| damages(3) | 46:14 47:24 158:3 |
| dan(3) | 6:5 121:17 128:9 |
| dangerous(1) | 184:17 |
| daniel(4) | 4:24 97:4 117:17 150:5 |
| data(1) | 21:21 |
| date(23) | 75:15 80:7 116:14 118:11 118:14 118:17 118:20 119:15 122:22 129:12 129:21 131:7 131:22 131:24 132:4 133:24 134:1 134:9 149:9 158:12 177:1 192:8 |
| dated(3) | 41:1 80:7 85:10 |
| dates(1) | 134:20 |
| david(4) | 2:6 6:46 90:13 184:22 |
| day(33) | 28:9 28:11 28:15 28:25 29:6 59:7 71:16 75:4 76:7 78:15 112:12 113:17 113:24 115:8 116:22 120:15 124:14 124:14 126:15 127:4 130:3 130:19 144:10 144:13 144:13 144:22 147:8 147:8 155:21 163:9 172:22 179:13 179:23 |
| day-to-day(1) | 141:5 |
| days(5) | 33:20 34:5 118:11 134:6 163:6 |
| deadline(5) | 74:19 103:9 166:12 173:1 174:20 |
| deadlines(1) | 76:4 |
| deal(18) | 11:6 24:14 54:23 76:8 77:8 78:8 79:3 90:17 91:19 92:7 95:20 120:13 121:24 122:1 129:1 141:4 141:5 157:9 |
| dealing(10) | 26:10 55:11 55:11 55:12 55:13 64:15 110:7 149:15 162:16 187:12 |
| dealings(1) | 188:24 |
| deals(4) | 26:6 55:23 95:11 120:12 |
| deal(2) | 120:1 |
| dean(2) | 6:46 41:23 |
| debenture(9) | 6:25 97:11 120:5 122:20 126:4 127:24 128:4 149:7 190:12 |
| debt(1) | 77:13 |
| debtor(16) | 7:28 64:23 69:25 72:25 79:20 84:7 105:23 109:3 109:16 140:17 156:18 157:2 157:2 174:18 174:25 175:1 |
| debtor's(1) | 65:24 |
| debtors(132) | 1:12 1:24 2:26 3:38 10:2 10:11 10:13 10:16 10:16 10:17 13:17 29:15 57:2 60:2 60:20 62:15 62:17 64:17 64:18 67:25 68:2 68:23 68:24 68:25 69:2 69:7 69:6 69:9 69:14 70:3 70:13 71:8 71:13 72:23 72:24 73:3 73:11 74:4 74:16 75:18 76:1 76:20 76:21 77:10 77:11 77:13 77:14 78:2 78:10 78:17 80:9 80:17 81:14 82:23 82:23 83:1 83:9 83:11 83:25 84:1 84:2 84:3 85:6 85:8 85:12 85:16 86:23 91:8 92:3 92:5 97:14 102:5 102:12 103:5 103:17 104:6 104:10 104:25 105:10 105:22 106:23 107:9 107:18 107:20 108:2 108:10 115:18 121:23 122:2 122:11 123:8 123:8 125:11 129:6 135:22 136:24 137:16 137:19 138:17 138:18 139:2 139:20 139:22 140:19 140:23 141:7 141:14 141:22 141:14 144:18 146:11 157:4 157:21 158:14 159:2 159:11 159:24 160:10 160:21 161:4 161:6 165:12 166:17 170:24 172:9 175:15 176:25 177:10 185:22 185:25 |
| debtor's(3) | 157:25 167:6 186:2 |
| debtwire(1) | 7:37 |
| deceased(2) | 21:2 21:10 |
| december(4) | 97:12 100:5 137:15 140:11 |
| decided(2) | 54:20 122:1 |
| decision(35) | 15:11 16:22 18:17 18:17 19:1 19:3 19:10 22:8 35:10 48:18 49:1 65:16 66:8 73:8 79:6 82:24 83:24 91:1 92:12 92:17 99:2 111:9 111:13 143:17 148:2 148:19 148:19 149:11 149:12 179:5 179:12 181:25 185:14 187:9 188:21 |
| decisions(7) | 32:4 61:12 61:23 71:5 91:24 126:15 126:16 |
| declarant(1) | 102:19 |
| declaration(24) | 79:15 79:16 80:5 80:10 80:11 80:14 81:2 81:25 85:6 85:9 85:15 88:10 102:11 102:13 102:22 103:4 103:12 103:19 103:21 103:23 105:20 106:2 162:19 |
| declarations(8) | 62:19 62:19 79:18 79:20 103:1 103:9 104:5 105:1 |
| declare(4) | 44:25 60:12 60:13 75:23 |
| declares(1) | 103:24 |
| decline(1) | 65:22 |
| dedication(1) | 143:10 |
| deem(1) | 138:2 |
| deemed(6) | 48:21 76:20 138:1 139:16 174:25 190:13 |
| deeply(1) | 38:4 |
| defenders(1) | 57:11 |
| deferred(10) | 44:24 58:19 160:19 160:24 161:5 161:10 161:21 162:17 164:16 182:7 |
| deferring(1) | 44:22 |
| deficiencies(1) | 38:6 |
| deficiency(1) | 38:9 |
| defined(4) | 40:8 40:11 108:25 111:11 |
| definitely(1) | 25:24 |
| definition(2) | 56:10 93:16 |
| degrees(1) | 59:15 |
| delaware(18) | 1:2 1:12 2:45 3:13 4:18 5:13 9:1 29:15 97:6 97:10 117:18 119:14 120:5 122:20 128:5 149:7 150:6 190:12 |
| delayed(1) | 145:20 |
| delaying(1) | 10:24 |
| delays(1) | 76:2 |
| delegated(4) | 32:1 35:9 41:6 45:3 |
| deleterious(1) | 31:1 |
| deletion(1) | 189:24 |
| delivery(3) | 49:10 49:17 54:23 |
| demeaning(1) | 178:6 |
| demel(23) | 166:1 166:22 167:15 167:21 167:23 168:4 168:6 168:10 168:17 168:19 168:24 169:18 169:20 169:21 169:23 170:14 170:19 170:20 170:25 170:25 171:3 181:23 |
| demel's(1) | 171:6 |
| democratic(1) | 31:22 |
| demonstrably(2) | 32:8 36:17 |
| denied(2) | 18:13 19:4 |
| denominated(2) | 13:10 25:4 |
| dental(6) | 30:20 37:4 37:16 38:1 38:8 39:21 |
| dentists(1) | 38:1 |
| depend(1) | 50:2 |
| dependent(2) | 21:11 37:14 |
| depending(3) | 43:9 125:16 |
| depleted(1) | 180:9 |
| depletion(1) | 38:14 |
| deposed(1) | 121:15 |
| depositions(5) | 114:18 120:23 121:14 126:10 157:15 |
| deprivation(2) | 31:15 31:16 |
| deprived(5) | 37:3 37:15 38:20 38:23 55:25 |
| deprives(1) | 52:1 |
| derek(4) | 11:23 5:45 9:23 184:19 |
| derived(1) | 38:12 |
| derives(1) | 44:15 |
| described(2) | 17:15 45:11 |
| description(1) | 113:19 |
| deserve(2) | 29:1 142:4 |
| desirable(1) | 42:17 |
| desperately(2) | 28:24 179:16 |
| despite(2) | 136:19 185:24 |
| detail(2) | 64:15 136:22 |
| detailed(2) | 111:3 136:22 |
| details(2) | 60:19 130:16 |
| determination(1) | 133:5 |
| determined(2) | 114:6 187:7 |
| determines(1) | 107:17 |
| determining(1) | 185:15 |
| detract(1) | 16:3 |
| develop(1) | 116:18 |
| development(2) | 81:12 116:19 |
| dewey(2) | 121:7 122:21 |
| dia(2) | 36:22 38:17 |
| diaz(1) | 1:42 |
| did(54) | 20:13 28:11 28:20 28:25 32:19 32:21 32:23 37:11 49:14 49:15 52:16 53:20 63:4 65:14 74:7 81:10 81:12 92:13 97:22 102:25 112:13 122:2 126:10 127:20 127:24 128:3 134:14 137:19 137:20 137:23 137:21 137:24 138:14 142:16 142:16 144:17 147:21 150:8 152:25 164:1 164:2 167:7 170:7 178:2 180:2 183:10 185:1 189:1 |
| didn't(8) | 18:9 21:9 22:8 28:8 47:15 57:21 61:3 94:4 |
| didn't(14) | 125:5 125:12 125:23 127:10 138:2 142:15 152:12 152:17 164:23 169:9 170:3 178:4 180:6 188:11 |
| difference(1) | 60:6 |
| different(21) | 19:15 23:1 24:25 54:6 58:24 68:14 70:10 71:23 71:25 74:5 78:1 78:2 82:20 83:10 86:22 87:25 93:8 94:20 111:5 148:5 169:25 |
| differently(3) | 63:25 82:18 89:10 |
| difficult(7) | 59:18 91:20 91:24 140:1 162:18 183:25 184:16 |
| difficulty(3) | 99:6 185:18 186:5 |
| digest(1) | 47:21 |
| dignity(2) | 37:6 38:24 |
| diligently(1) | 178:4 |
| dip(3) | 144:11 144:12 144:19 |
| dips(1) | 70:1 |
| direct(6) | 76:23 82:16 111:9 114:8 114:9 114:24 |
| directed(4) | 72:4 76:25 78:23 81:17 |
| directing(1) | 82:22 |
| direction(2) | 127:21 127:25 |
| directions(1) | 91:25 |
| directive(1) | 45:25 |
| directly(6) | 68:5 83:4 111:6 111:6 127:6 157:19 |
| directors(1) | 188:23 |
| disabilities(1) | 31:17 |
| disability(20) | 13:3 18:5 21:25 23:23 23:24 24:5 26:14 37:3 37:8 37:9 37:10 37:13 37:14 38:6 38:15 38:16 39:6 39:24 55:18 55:23 |
| disagree(3) | 45:12 152:6 152:8 |
| disagreed(1) | 34:14 |
| disagreement(1) | 110:11 |
| disallow(1) | 181:19 |
| disallowance(1) | 172:8 |
| disappointed(1) | 66:1 |
| disbursements(3) | 41:6 122:7 122:9 |
| disclose(1) | 41:11 |
| disclosed(5) | 82:7 82:8 161:14 164:25 165:13 |
| disclosure(9) | 41:15 71:24 88:23 127:4 138:15 138:16 155:21 156:4 177:3 |
| discovered(1) | 182:2 |
| discovery(9) | 110:25 120:23 126:6 126:6 128:1 128:9 129:17 130:11 130:12 |
| discrete(4) | 63:2 72:19 89:17 106:7 |
| discretion(6) | 41:21 42:1 44:22 51:1 51:3 53:7 |
| discretionary(8) | 31:12 32:5 32:6 32:9 35:11 36:8 36:15 42:3 |
| discriminate(1) | 187:24 |
| discriminated(1) | 26:11 |
| discrimination(4) | 26:17 55:19 73:8 98:11 |
| discuss(5) | 19:16 98:22 106:25 134:17 154:15 |
| discussed(7) | 14:16 18:1 106:24 149:20 150:7 155:20 176:16 |
| discusses(2) | 46:13 176:6 |
| discussions(1) | 81:24 |
| dismissed(2) | 42:24 170:11 |
| disparage(1) | 27:21 |
| disputes(18) | 11:19 18:2 83:24 107:17 107:21 109:4 110:5 110:9 112:11 112:20 112:24 113:2 113:15 115:16 115:22 120:21 161:7 181:9 |
| disputes(1) | 58:6 58:7 58:9 58:10 59:10 64:22 68:8 81:11 110:14 |
| disruption(1) | 65:13 |
| dissenting(5) | 27:18 27:21 27:23 29:6 42:22 |
| distinction(4) | 16:23 22:2 53:24 54:15 |
| distinguishes(1) | 45:17 |
| distinguishing(1) | 186:18 |
| distribution(15) | 10:25 11:2 23:14 30:25 31:7 99:13 120:2 125:4 129:7 132:10 134:20 161:18 161:20 187:15 187:18 |
| distributions(27) | 14:2 14:24 15:23 76:18 76:20 83:18 86:24 87:23 88:13 89:9 90:22 110:1 110:19 113:15 117:25 118:13 118:21 119:13 119:15 122:24 133:24 134:5 145:7 145:20 149:16 149:17 167:21 |
| district(11) | 1:2 65:10 65:17 81:16 138:6 138:7 138:14 141:21 151:5 151:6 153:6 153:13 |
| divestiture(2) | 65:12 65:18 |
| divests(1) | 65:19 |
| divided(1) | 162:20 |
| div(3) | 5:25 7:7 41:13 |
| docket(11) | 80:6 82:7 85:10 86:8 139:8 156:7 156:7 160:17 171:17 172:5 175:12 |
| doctrine(1) | 65:18 |
| document(9) | 109:11 122:9 169:6 169:7 170:6 170:15 170:16 173:12 173:19 |
| documentation(1) | 35:13 |
| documented(3) | 108:5 110:17 114:1 |
| documents(5) | 101:2 163:20 166:15 168:19 169:4 |
| does(43) | 16:7 26:21 32:2 37:22 43:1 43:5 43:6 45:3 45:19 46:11 48:2 49:5 49:17 55:22 56:8 66:3 79:14 80:13 84:14 84:16 85:2 85:25 88:8 90:20 91:3 96:7 96:20 98:2 98:10 99:12 100:24 104:18 120:24 120:25 136:12 147:12 152:2 152:2 177:6 181:21 182:15 187:23 189:5 |
| doesn't(7) | 23:16 26:8 26:15 26:15 49:10 95:4 98:3 |
| doesn't(7) | 107:19 116:19 120:13 140:6 141:21 171:21 190:4 |
| doheny(1) | 7:15 |
| doing(14) | 45:25 54:5 91:4 112:14 123:1 123:2 123:2 124:21 137:21 151:23 151:24 152:16 164:17 185:4 |
| dollar(8) | 13:8 13:12 24:21 24:24 25:2 36:20 39:10 57:15 |
| dollars(23) | 25:4 25:5 30:19 36:21 57:24 58:2 58:4 58:5 58:20 58:25 59:22 72:22 72:24 73:3 72:15 89:16 93:3 93:3 93:4 122:6 145:14 183:21 183:24 |
| dolphin(4) | 49:10 49:17 50:7 54:23 |
| don't(35) | 19:22 21:19 22:1 26:16 27:8 42:14 44:10 45:23 47:19 50:23 51:13 51:14 51:16 54:13 55:2 56:5 56:11 63:1 63:20 63:23 67:3 67:4 74:6 74:23 76:22 78:20 85:19 85:22 87:10 87:22 89:14 89:20 89:21 99:5 106:10 |
| done(20) | 11:20 14:12 66:14 111:17 118:4 119:6 120:1 124:6 130:20 134:24 134:24 138:3 138:3 140:18 143:14 145:9 145:15 150:1 150:8 153:4 |
| don't(25) | 116:6 116:12 116:12 119:8 121:19 123:13 123:21 125:11 125:12 130:8 131:9 132:10 134:10 140:13 146:15 146:15 148:14 149:20 151:14 153:14 167:12 171:17 171:20 178:23 179:9 |
| door(3) | 81:6 88:4 88:5 |
| double-check(1) | 96:10 |
| doubled(1) | 57:23 |
| doubt(3) | 14:14 184:10 190:11 |
| dow(2) | 6:37 6:38 |
| down(20) | 32:7 42:9 51:2 54:17 56:22 71:6 83:18 87:3 121:5 127:21 127:25 154:16 154:18 154:20 154:21 154:25 155:2 155:5 155:8 155:11 |
| downtown(1) | 128:6 |
| drafted(1) | 137:2 |
| drastically(2) | 133:6 133:8 |
| draw(1) | 155:17 |
| draws(1) | 16:23 |
| dream(1) | 89:5 |
| drive(3) | 60:12 71:15 87:12 |
| drives(1) | 77:17 |
| driving(1) | 75:9 |
| drug(1) | 37:23 |
| drugs(2) | 37:20 37:22 |
| duane(1) | 5:11 |
| due(3) | 166 182:17 184:10 |
| duration(1) | 143:3 |
| during(11) | 38:8 101:8 112:7 116:18 126:14 133:4 136:2 136:17 147:15 149:10 168:11 |
| duties(6) | 41:7 148:12 148:14 148:16 148:18 170:4 |
| duty(3) | 111:25 152:1 152:2 |
| d'amato(1) | 1:36 |
| each(12) | 1:28 28:2 59:20 91:9 111:6 151:3 174:25 175:1 187:22 187:24 189:1 |
| earlier(11) | 45:25 52:15 98:2 105:2 109:13 123:4 126:11 142:21 163:20 168:8 176:16 |
| earliest(2) | 145:8 145:9 |
| early(3) | 26:25 97:12 147:9 |
| earned(1) | 24:11 |
| easily(2) | 75:15 10:23 |
| east(1) | 3:27 |
| eastern(1) | 153:12 |
| easy(4) | 70:25 89:15 123:17 124:3 |
| echo(1) | 109:3 |
| economic(9) | 21:6 26:16 53:12 56:7 56:8 82:18 100:6 122:2 148:8 |
| economically(1) | 83:1 |
| ecro(1) | 1:40 |
| edit(1) | 174:20 |
| editing(1) | 178:1 |
| edits(3) | 173:2 174:6 175:24 |
| edwin(1) | 97:8 |
| effect(16) | 10:20 14:1 19:18 23:9 25:23 32:8 35:1 44:19 45:11 83:23 84:6 88:10 88:13 88:24 137:17 144:17 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| effected(1) 23:14 | | esa(1) 7:45 | | expect(4) 9:24 30:22 31:20 48:23 | | fiduciaries(14) 136:19 141:13 141:17 142:11 142:17 143:13 143:16 147:13 151:8 151:15 152:12 182:15 182:23 183:6 | |

effected(1) 23:14
effective(13) 116:14 118:11 118:14 118:16 118:20 131:22 131:24 132:4 132:6 133:24 134:1 188:4 189:21
effective-date(1) 76:4
effectively(6) 19:3 65:25 73:18 78:19 81:25 158:2
effects(1) 70:4
effort(2) 92:4 184:11
efforts(9) 61:2 71:25 83:14 127:5 160:21 184:7 184:9 184:21 185:24
eight(5) 25:10 27:8 55:14 57:5 120:5 122:6 123:3 124:22 124:25 125:6 127:15 149:2 163:16 163:18 183:18
eight-year(2) 111:4 123:24
either(6) 89:3 130:1 171:18 171:20 173:6 181:19
elaborate(1) 17:9
eldridge(3) 53:15 53:16 53:18
electronic(2) 1:48 192:3
element(1) 105:17
eliminate(1) 169:6
eloquent(1) 111:16
else(16) 27:12 28:25 29:11 50:20 56:19 77:1 89:11 97:21 128:3 138:3 149:18 151:23 163:7 172:24 173:25 177:18
elsewhere(1) 146:7
else's(1) 152:7
emails(1) 121:17
emanuel(1) 3:4
embodied(1) 93:17
emea(5) 2:26 10:16 58:15 93:25 123:7
emerge(1) 65:24
emerged(1) 127:3
employed(2) 140:4 183:16
employee(3) 21:1 57:13 160:18
employee-related(1) 18:3
employees(40) 12:8 13:2 20:19 20:20 20:25 21:2 21:4 21:10 21:12 21:12 21:16 21:18 21:22 21:24 22:4 22:11 22:16 23:4 23:5 23:15 24:1 24:4 24:14 24:18 25:25 27:4 28:1 39:6 37:1 37:11 39:8 41:12 58:18 58:18 58:19 59:23 59:24 169:9 162:13 188:19
employees'(1) 163:11
enabled(3) 61:8 82:23 82:23
enables(2) 79:5 157:4
end(26) 23:11 25:9 25:25 25:17 28:15 29:6 50:10 55:6 59:7 65:15 70:11 71:16 72:13 73:24 74:18 76:1 76:7 77:18 98:16 116:22 118:16 118:24 123:18 137:20 179:13
endeavor(1) 114:20
ended(1) 144:17
endorsed(2) 11:25 179:6
endorsement(3) 14:20 17:21 28:4
ends(1) 84:1
enforced(1) 58:14
engaged(2) 92:3 100:5
engagement(1) 169:1
engaging(1) 157:6
enjoyed(2) 181:3 181:6
enormous(1) 183:13
enough(12) 36:3 67:15 71:6 117:1 117:5 133:14 144:19 154:5 154:8 154:15 163:3 165:15
entail(1) 177:14
enter(1) 185:6
entered(3) 10:21 17:25 156:1
entering(1) 70:22
entertain(1) 74:12
entire(5) 20:20 145:12 147:7 148:2 149:1
entirely(1) 158:1
entities(12) 93:24 105:23 106:1 137:4 142:25 144:1 156:17 157:17 188:16 188:18 188:23 188:25
entitled(6) 21:25 24:12 127:24 129:22 138:19 149:17
entitlement(2) 16:21 16:24
entitlements(10) 13:1 15:10 15:20 16:5 16:18 16:19 17:3 18:4 23:7 53:22
entitles(1) 113:23
entity(1) 189:2
entries(2) 112:12 113:17
entry(3) 64:24 85:10 97:14
envision(1) 113:6
envisioning(1) 110:22
epic(2) 102:11 103:9
epiq(2) 139:25 140:6
equal(3) 31:18 51:6 51:8
equality(6) 31:15 38:20 38:21 38:23 52:2 53:19
equally(5) 15:9 16:12 17:2 68:25 70:7 115:6
equitable(1) 187:24
equivalent(1) 41:17
eric(1) 6:14
erisa(6) 168:21 168:24 168:24 169:3 170:5 170:11
ernest(2) 6:4 166:7
ernst(2) 41:2 41:8
erode(1) 70:2
error(1) 189:24

esa(1) 7:45
escrow(4) 83:4 96:11 186:6 189:15 189:16 189:20
escrowed(3) 10:15 87:12 186:12
especially(4) 184:7 184:17 184:18 184:22
esq(76) 1:25 1:26 1:30 1:31 1:32 1:33 1:34 1:35 1:36 1:37 2:6 2:7 2:8 2:15 2:21 2:27 2:28 2:35 2:43 2:44 3:6 3:12 3:18 3:19 3:25 3:26 3:33 3:39 3:40 3:46 4:4 4:5 4:11 4:17 4:24 4:30 4:37 4:38 4:39 5:6 5:12 5:20 5:26 5:34 5:38 5:40 5:44 5:45 6:5 6:9 6:10 6:14 6:18 6:22 6:26 6:30 6:34 6:38 6:42 6:46 7:4 7:8 7:12 7:16 7:17 7:21 7:25 7:30 7:34 7:37 7:41 8:5 8:9 8:13 8:17 8:21 8:25
essence(2) 24:1 76:17
essential(1) 69:17
essentially(8) 15:2 15:3 15:8 16:13 20:24 82:18 152:3 152:14
establish(1) 104:19
established(5) 19:3 26:24 48:15 113:20 182:19
estate(22) 11:2 11:10 11:12 11:23 30:22 74:7 77:12 88:12 88:19 89:7 113:14 115:19 119:21 120:10 121:8 122:21 147:13 151:14 151:15 152:22 182:22
estates(8) 10:22 11:14 60:5 68:14 69:24 151:8 157:6 186:3
estimate(3) 25:8 38:18 159:9
estimated(6) 13:7 25:3 25:7 37:6 38:9 38:12
estimation(3) 109:15 157:7 159:4
ethicacy(1) 117:2
even(25) 19:8 46:25 48:10 58:2 65:8 75:13 76:3 78:9 83:2 87:9 87:10 87:23 88:10 88:17 91:23 96:8 112:5 116:12 127:6 132:4 148:2 152:17 152:17 175:22 183:20
evening(1) 191:20
event(1) 68:16
ever(5) 78:20 127:20 127:24 128:3 140:24
every(12) 12:25 24:17 59:1 89:21 89:22 91:12 113:10 115:6 124:23 156:18 157:1 157:2
everybody(5) 124:6 126:24 150:23 152:6 178:15
everybody's(2) 127:5 150:19
everyone(14) 9:3 28:3 56:9 57:18 57:19 58:25 60:20 77:1 89:11 106:18 133:22 164:17 178:18 189:14
everyone's(1) 59:10
everyone's(1) 179:16
everything(4) 56:3 72:14 146:2 172:24
evidence(25) 72:25 74:1 74:2 79:20 80:2 80:11 80:14 82:4 84:19 84:22 85:12 85:5 86:6 86:21 103:2 105:2 130:2 140:12 159:11 168:12 168:15 169:10 169:16 169:24 182:2
evidenced(3) 81:2 139:7 139:9
evidentiary(3) 105:9 130:13 177:12
eviscerate(1) 140:20
exactly(7) 15:7 62:5 74:20 93:15 96:15 121:3 121:1
examination(1) 111:11
examine(3) 80:1 84:24 85:3
examined(1) 80:1
example(1) 145:25
examples(1) 162:16
exceed(1) 14:3
excellent(2) 85:18 174:12
except(2) 46:24 148:7
excess(7) 11:11 83:16 90:24 93:8 93:11 94:25 157:25
excited(1) 57:3
exclusion(1) 38:24
exculpate(1) 143:13
exculpated(4) 150:25 150:25 151:1 151:21
exculpating(1) 142:17
exculpation(41) 95:18 136:18 137:1 137:5 141:12 141:16 141:17 141:22 141:25 142:5 142:7 142:11 142:22 143:24 145:1 146:8 147:12 148:7 148:11 148:15 148:17 148:22 150:11 150:18 150:20 150:24 151:7 151:10 151:11 151:13 151:14 152:5 152:11 152:15 152:22 153:1 153:5 182:15 182:21 182:22
exculpations(3) 144:5 148:18 183:5
excuse(8) 34:15 36:5 43:15 83:6 126:20 140:17 159:23 191:15
executed(3) 139:20 168:14 170:7
execution(3) 64:19 81:12 168:16
executive(2) 49:21 50:1
executives(2) 41:13 41:20
exercise(5) 33:16 42:1 46:24 113:23 117:24
exercised(1) 51:4
exercises(3) 32:1 35:9 45:3
exercising(3) 33:24 47:7 110:19
exert(1) 87:7
exhausted(1) 115:18
exhibit(5) 80:17 85:12 85:16 148:20 191:7
exhibits(2) 103:6 187:12
exist(1) 183:1
existed(2) 58:3 144:25
expansion(1) 169:15
expect(4) 48:7 57:21
expectation(1) 58:20

expect(4) 9:24 30:22 31:20 48:23
expediency(1) 186:19
expedited(3) 75:24 75:25 129:3
expenditures(1) 38:13
expense(4) 70:21 84:2 156:12 179:25
expenses(15) 12:6 37:5 37:17 37:25 38:8 38:10 38:21 52:3 110:12 111:25 119:22 119:24 120:11 149:6
expensive(1) 157:7
experienced(1) 91:10
experiences(1) 28:14
expert(5) 36:22 46:13 46:17 126:6 157:15
explain(2) 142:5 159:6
explained(1) 185:12
explains(1) 17:8
express(1) 41:21
expressed(4) 51:7 109:13 109:18 185:8
expressly(2) 31:17 44:24
extend(2) 41:4 60:19
extensive(1) 162:18
extent(10) 34:25 44:18 59:4 62:8 62:24 81:23 95:3 111:19 179:23 181:19
extra(1) 23:20
extract(1) 87:8
extraordinary(1) 183:4
eyes(1) 20:14
f.3d(2) 142:15 185:13
f3d(1) 99:2
face(1) 89:3
faced(2) 27:7 91:18
facilitate(1) 145:17
facilitating(2) 60:24 156:12
facing(1) 159:10
fact(18) 13:1 15:5 15:15 24:6 24:21 28:17 34:5 48:17 69:12 76:13 76:14 96:18 109:12 126:6 128:8 159:7 186:9 188:2
facta(1) 20:1
facto(1) 73:9
factors(10) 24:18 70:19 70:24 76:11 88:25 93:2 99:3 177:11 185:13 185:16
facts(12) 34:12 36:19 36:24 39:7 86:11 103:8 142:19 142:20 143:12 149:1 161:8 161:8
factual(5) 57:7 111:1 111:19 136:10
factum(20) 13:19 14:10 14:17 14:21 16:23 17:8 17:15 18:1 18:11 18:22 20:1 21:17 23:20 24:19 24:20 25:17 26:5 34:18 37:19 55:4
failed(3) 49:13 64:2 139:16
fair(18) 14:16 15:1 15:6 16:1 16:8 18:25 21:4 22:6 25:23 60:3 93:18 117:5 118:4 126:19 133:14 138:16 186:2 187:24
faired(1) 153:14
fairly(1) 173:4
fairness(11) 14:18 14:20 15:10 15:15 15:20 16:16 16:24 17:19 17:21 18:3 187:12
faith(9) 48:20 64:20 64:25 71:20 82:21 149:23 187:7 187:7 187:13
fall(3) 21:18 60:17 73:16
falling(1) 60:18
familiar(3) 59:11 71:23 118:4
families(1) 32:25
families(1) 180:14
famous(1) 153:13
far(6) 83:16 99:9 163:8 177:12 182:21 186:9
farralion(2) 8:4 8:5
farman(7) 60:22 72:3 92:19 127:1 128:10 184:8 184:9
farnan's(1) 184:11
farr(3) 3:17 5:33
favor(6) 13:15 28:4 29:11 70:24 109:9 174:8
favorable(2) 23:22 185:25
fear(1) 65:24
fee(9) 44:2 113:7 114:15 116:10 116:15 121:1 130:7 181:9 181:13
feeding(1) 158:13
feeds(1) 157:19
feel(2) 70:7 110:17
feels(1) 16:4
fees(35) 41:4 41:8 41:12 77:6 78:25 79:2 107:24 108:5 110:11 110:15 110:16 110:17 111:2 111:20 112:6 113:12 114:1 114:4 114:16 117:3 119:22 120:20 122:3 122:5 122:18 123:8 123:12 123:14 129:22 130:2 133:5 133:7 149:5 149:6 183:21
feld(3) 2:5 6:17 90:13
fellow(1) 120:25
felt(2) 72:10 183:13
female(1) 168:23
few(11) 50:22 50:23 50:24 111:3 118:25 121:5 127:19 166:21 179:6 187:4 189:3

fiduciaries(14) 136:19 141:13 141:17 142:11 142:17 143:13 143:16 147:13 151:8 151:15 152:12 182:15 182:23 183:6
fiduciary(3) 151:14 152:1 152:2
field(1) 119:18
fifth(1) 183:24
fifths(1) 88:16
fighting(1) 151:4
figure(1) 120:1
figures(1) 25:1
file(8) 35:19 63:4 74:7 138:20 138:23 158:3 176:24 183:17
filed(33) 13:19 35:19 60:17 62:11 72:18 76:17 80:6 81:13 81:14 83:9 85:6 85:9 101:2 102:13 103:15 113:18 125:11 156:6 156:18 162:6 166:17 166:7 166:11 168:19 168:25 171:17 172:5 172:24 173:1 174:2 175:11 176:17 176:21
filing(2) 107:8 177:3
filings(4) 107:5 107:10 166:17 169:12
fill(2) 145:12 145:24
filled(1) 145:13
final(16) 58:9 58:9 59:5 83:1 83:2 86:12 113:7 116:10 116:10 116:15 118:20 133:25 171:13 189:22 190:18 190:21
finality(1) 60:13
financial(5) 32:25 63:4 162:18 172:4 180:20
financial(5) 4:6 36:22 53:25 62:17 85:8
financing(2) 106:1 188:17
find(12) 21:9 48:2 48:4 49:15 52:7 57:24 99:19 99:19 99:22 132:9 145:22 182:19
finding(4) 58:3 100:12 149:22 149:24
findings(1) 188:2
finds(3) 43:4 66:3 183:4
fine(6) 101:22 106:8 116:15 119:12 135:6 190:3
finest(2) 184:3 185:2
fingers(1) 88:14
finish(5) 61:7 62:4 101:6 101:15 155:3
finished(1) 155:4
fired(2) 169:3 170:11
firm(6) 28:3 85:8 120:9 120:9 122:23 184:25
firms(7) 111:15 111:23 120:4 120:8 120:9 121:10
firm's(2) 119:23 184:20
first(48) 11:8 14:19 16:11 19:21 25:16 30:6 39:17 41:11 41:24 57:5 57:10 58:5 63:6 83:20 90:17 97:17 100:21 102:25 107:4 110:13 118:7 119:9 126:1 130:17 131:18 136:3 136:13 144:13 150:17 151:8 156:11 156:12 160:23 162:8 162:16 163:9 165:11 175:9 175:9 175:18 181:8 182:12 182:16 183:15 185:17 185:21 186:23
first-hand(1) 114:12
fiscal(1) 136:25
fitzgerald(2) 8:8 8:9
five(7) 48:8 101:15 119:24 121:16 122:25 123:2 132:8
flom(2) 4:36 7:20
floor(1) 3:28
flow(1) 11:23
flowing(1) 179:15
floyd(2) 4:5 6:30
focus(2) 152:5 158:25
focused(2) 125:15 148:3
focusing(3) 72:22 79:13
folder(1) 191:14
folk(1) 89:3
folks(1) 70:17
follow(6) 9:19 96:12 130:4 137:21 137:22 179:7
followed(2) 92:17 141:8
following(7) 16:10 64:19 64:24 92:25 174:20 182:8 185:16
follows(2) 45:2 76:14
food(4) 37:4 38:7 38:21 52:2
foods(1) 188:20

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

for(301) 1:24 2:4 2:20 2:26 2:41 3:4 3:11 3:24 3:38 3:45 4:10 4:16 4:29 4:35 5:4 5:11 5:25 5:33 5:37 6:13 6:17 6:21 6:25 6:29 6:33 6:37 6:41 6:45 6:49 7:7 7:11 7:15 7:19 7:24 7:28 7:33 7:36 7:40 7:44 8:4 8:8 8:12 8:16 8:20 8:24 9:4 10:10 10:12 10:15 10:15 10:16 11:1 11:2 11:2 11:9 11:14 11:23 12:2 12:10 12:24 13:7 13:22 13:24 14:10 14:24 15:21 15:23 15:24 16:4 16:9 16:17 18:8 19:9 19:13 20:19 20:20 20:20 23:13 23:15 23:18 23:22 24:3 25:15 26:4 27:7 28:24 29:7 29:21 30:14 30:19 30:23 31:3 31:6 31:8 31:9 31:20 32:22 33:18 33:24 34:4 34:8 34:9 34:12 34:16 35:5 36:5 36:10 36:11 36:15 37:3 37:7 37:11 37:12 37:18 37:24 38:7 38:18 38:21 40:11 41:6 41:8 41:11 41:15 41:18 41:24 41:25 42:14 42:23 43:15 46:6 46:14 47:25 48:5 49:15 49:25 51:18 52:2 52:10 53:20 53:20 54:1 55:14 55:17 55:18 55:20 56:5 56:15 57:1 57:2 57:17 57:19 58:15 58:15 58:21 59:19 60:4 61:5 63:6 63:6 63:17 64:3 64:5 64:21 65:24 66:12 66:21 67:24 69:20 70:3 70:15 71:3 71:10 71:16 75:15 75:20 76:1 76:20 77:1 77:17 77:19 79:1 86:11 87:13 87:16 87:20 88:5 89:10 91:7 92:5 92:22 92:25 93:4 93:5 93:17 93:24 94:3 95:17 96:4 96:16 97:25 99:18 99:22 100:15 102:4 104:19 105:14 106:1 106:1 106:2 106:5 106:11 106:19 106:23 107:23 108:6 110:7 110:10 110:14 110:17 110:24 112:8 112:15 112:20 115:3 115:9 116:3 117:1 117:17 118:1 118:19 118:24 119:24 122:2 122:6 122:20 122:21 122:21 123:2 123:12 124:8 124:10 125:9 126:21 127:2 127:16 127:18 127:20 128:4 129:14 129:21 129:24 132:24 132:25 133:22 134:10 134:21 135:21 136:5 137:3 137:20 141:25 142:8 143:9 143:11 143:16 143:23 145:23 146:22 147:19 147:23 148:1 148:7 149:2 149:7 150:6 151:14 151:18 151:21 151:25 152:5 152:13 153:13 158:4 158:10 158:15 158:22 159:24 160:14 161:4 161:18 161:20 162:24 163:2 163:21 165:7 168:7 172:16 173:3 173:4 173:25

for(42) 174:21 174:23 175:15 176:6 176:18 176:25 177:1 178:1 178:1 179:7 179:9 179:11 179:21 179:22 180:11 180:19 180:21 180:22 180:23 180:24 181:22 182:5 182:19 184:4 184:7 184:9 184:9 184:13 184:14 184:21 187:3 187:18 188:18 189:1 189:16 189:24 189:25 190:7 190:10 190:11 191:3 191:7

force(4) 44:18 45:1 61:2 61:8
forced(1) 162:21
forefront(1) 194:2
forego(1) 141:7
foregoing(1) 192:2
foreign(1) 68:3
foremost(1) 102:25
forgive(1) 188:12
forgot(2) 45:24 141:2
form(1) 165:18
formalities(1) 188:25
forman(1) 2:41
formed(1) 147:9
former(16) 12:7 13:2 20:19 21:1 22:4 23:4 28:1 36:25 39:8 41:11 58:18 59:23 60:21 160:9 160:18 184:8
formula(1) 70:8
fortang(3) 6:49 7:4 7:4
forth(5) 61:21 62:22 100:19 124:17 175:10
forward(22) 60:9 68:21 68:22 72:2 73:12 73:13 76:4 77:1 87:11 90:25 99:11 105:21 106:2 106:9 107:4 156:3 156:10 157:5 159:15 167:16 167:23 177:2
fosters(1) 187:10
fought(4) 71:12 71:15 180:10 183:24
found(7) 10:19 65:7 138:14 168:12 169:10 169:15 169:24
foundation(1) 61:5
four(7) 13:20 58:2 93:1 123:25 125:22 126:1 148:4
fourth(4) 162:19 183:22 185:19 186:17
fox(1) 3:45
fraction(1) 88:15
framed(1) 20:4
frankly(12) 25:17 28:16 59:13 60:22 74:5 74:14 86:21 87:5 89:2 89:12 93:16 183:20
fraudulent(3) 168:16 169:6 170:15
fraudulently(1) 168:14
fred(1) 184:23
free(1) 31:22
freedom(4) 46:15 48:1 49:25 50:5
freedoms(1) 46:23
frees(1) 11:14
friend(2) 17:8 55:21

from(131) 9:23 10:25 12:12 15:17 16:3 16:9 17:7 21:20 23:1 25:1 28:3 28:13 30:6 33:10 37:21 37:25 38:2 38:10 38:12 40:22 41:18 42:22 44:16 47:12 47:14 47:20 47:21 47:21 47:21 47:22 50:7 57:1 57:20 59:20 59:23 59:24 60:14 60:20 61:9 61:23 61:23 62:16 63:15 64:22 65:2 65:16 65:25 67:9 68:13 68:15 72:12 73:21 73:21 75:1 75:4 75:19 75:20 76:18 78:7 79:17 79:17 81:17 83:2 83:18 86:14 87:19 89:23 90:8 93:5 93:10 93:13 93:14 93:23 93:25 94:10 94:12 94:14 96:11 102:4 106:16 110:18 111:15 112:1 112:14 113:14 117:24 122:22 122:23 139:25 139:25 140:6 140:16 140:21 144:21 162:14 162:15 163:18 165:12 168:25 169:3 169:4 172:25 174:4 176:7 176:17 177:13 178:14 181:6 181:7 181:23 183:23 187:13 188:19 189:13 189:20 190:18 192:3

front(7) 76:6 77:15 81:16 92:10 98:20 100:21 102:17
fruit(1) 92:19
fulfil(1) 51:4
full(6) 30:20 39:11 58:22 59:1 105:5 144:19
fully(5) 83:14 97:13 109:2 115:18 161:14
functions(1) 47:8
fund(2) 26:14 27:2 39:13 54:6 162:24
fundamental(5) 15:14 31:23 53:8 68:18 187:12
fundamentally(5) 45:15 68:25 88:24
funding(6) 53:18 53:20 53:22 54:4 64:16 65:4
funds(11) 10:25 11:22 12:24 27:6 36:1 54:1 180:1 186:6 186:7 186:12 186:22

further(11) 12:12 43:4 63:9 71:22 77:12 81:24 82:1 82:5 89:18 112:15 131:17
furtherance(1) 80:18
furthers(1) 104:13
future(3) 25:12 140:25 141:4
gabrielle(2) 2:27 93:23
gallagher(2) 3:17 5:33
game(2) 124:23 125:6
gamesmanship(1) 137:24
gave(7) 71:17 77:12 92:20 103:18 103:20 125:3 151:11
general(10) 45:19 46:11 71:10 88:12 90:4 93:6 93:10 111:16 151:20 167:22
generally(7) 50:2 71:10 72:23 73:20 116:13 150:22 157:11
generated(1) 92:4
genesis(1) 187:8
germane(1) 16:15
get(59) 12:8 13:18 19:24 24:4 26:16 35:5 37:21 39:15 40:20 42:19 48:5 53:25 54:19 56:3 56:11 56:14 59:4 60:6 60:13 60:15 61:6 69:9 70:11 71:8 72:1 73:2 76:8 76:22 78:11 78:20 79:2 82:24 88:4 88:4 89:8 90:3 95:12 98:4 118:9 118:25 119:16 119:17 120:1 120:11 120:17 121:5 125:4 125:7 128:16 131:10 131:10 132:13 132:15 135:24 136:7 147:13 151:14 152:16 174:13
gets(5) 78:14 78:23 117:23 119:5 119:12
getting(15) 23:22 60:25 86:16 86:22 89:3 90:19 101:8 125:18 130:19 137:15 149:16 150:17 152:9 167:17 177:22
ginger(1) 1:40
give(17) 18:9 58:25 61:15 72:10 73:14 79:10 94:14 116:16 121:13 125:2 126:9 127:21 127:25 130:6 130:13 190:20
given(11) 35:23 52:7 62:9 62:10 63:24 67:3 89:2 89:2 89:16 98:13 161:18
gives(1) 10:20 22:5
giving(5) 42:23 56:2 77:5 98:13 151:5
glad(2) 121:13 179:4
gladly(1) 186:22
glanis(2) 6:22 7:30
glennann(4) 2:27 93:22 93:23 94:7
global(4) 60:12 64:7 75:24 98:3
globally(1) 91:8
globin(2) 139:8 140:22
glory(1) 125:7
goal(2) 78:7 104:14
goals(1) 156:10
goes(4) 41:11 76:10 76:25 115:19
going(63) 9:10 9:24 15:24 19:19 20:2 20:16 25:11 26:5 27:20 28:18 28:22 33:15 36:19 45:21 50:17 57:12 57:16 64:14 66:13 69:19 71:6 73:12 73:13 74:22 74:23 94:13 98:18 98:24 99:9 99:10 100:20 117:20 118:9 120:17 121:5 121:11 121:15 121:16 121:19 122:23 123:20 123:22 124:4 124:22 128:15 128:17 129:24 130:10 130:13 131:6 131:24 132:9 133:23 134:24 137:9 144:8 153:4 156:21 163:24 179:6 181:19 185:5
gone(3) 124:24 166:20 177:9

good(83) 9:3 9:6 9:7 9:8 9:9 10:5 10:6 10:7 10:9 20:9 20:9 20:11 29:12 29:13 29:19 29:20 29:24 29:25 48:19 48:19 56:25 59:6 63:14 63:16 63:17 64:20 64:25 71:20 76:7 77:18 81:21 90:10 90:11 90:12 92:7 92:24 93:21 93:22 96:1 96:2 97:1 97:2 97:3 101:7 101:24 101:25 102:1 106:5 108:18 108:19 108:19 117:12 117:13 117:16 133:18 135:7 135:15 135:17 135:18 135:19 135:20 135:21 143:22 143:22 146:16 146:18 149:19 150:14 150:15 150:15 150:23 162:4 162:9 163:5 168:5 168:6 170:3 172:18 173:20 180:25 187:6 187:7 187:11 187:13 191:20

good-faith(1) 105:12
gosselin(2) 53:17 53:23
got(20) 19:23 56:23 57:7 59:7 60:18 71:5 75:4 75:24 77:6 87:5 87:11 87:11 120:6 124:18 125:17 126:14 127:23 145:11 164:8 164:8
gotten(6) 28:7 28:8 72:10 124:24 140:5 144:20
gottlieb(6) 1:29 72:5 72:8 102:5 135:22 184:18
governing(1) 81:5
government(31) 26:6 26:9 36:1 39:16 40:18 43:10 43:12 43:14 43:21 43:23 45:14 47:3 47:5 47:7 48:13 49:16 49:21 50:1 52:22 53:11 53:12 53:18 53:19 53:22 53:22 54:1 54:1 54:4 54:5 54:25 69:12
governmental(1) 177:1
governs(1) 45:13
graham(1) 1:37
granofsky(1) 55:22
grant(3) 29:1 39:17 42:3
granted(6) 41:16 44:23 126:22 144:5 144:7 179:8
granting(1) 26:25
granular(1) 112:10
gratifying(1) 188:22
great(9) 55:22 64:15 67:7 78:8 91:19 91:21 127:5 136:22 181:1
greater(2) 16:15 31:2
greg(4) 12:17 30:15 33:4 50:10
gross(26) 1:19 9:8 9:18 9:23 10:8 11:19 19:4 20:10 27:14 29:13 29:20 29:25 52:10 56:21 56:25 67:2 93:22 108:19 142:8 153:1 153:2 164:4 179:5 179:9 180:24 180:24
grounds(2) 31:3 55:18
group(23) 3:24 6:13 6:41 21:18 23:8 30:1 36:12 37:1 51:24 55:15 55:24 71:4 90:19 91:10 94:20 94:24 96:13 100:11 142:1 149:4 162:21 183:15 188:18
groups(3) 92:2 162:20 162:21
grown(1) 38:10
guaranteed(5) 46:24 49:25 50:5 57:14 69:15
guarantees(2) 56:7 70:1
guaranty(2) 2:20 39:12
guard(1) 154:21
guess(5) 63:22 72:4 97:17 113:4 150:14
guiney(1) 6:26
gump(4) 2:5 6:17 90:13 184:21
guy(3) 155:7 155:9 155:11
guys(1) 121:11
habbu(1) 7:54
had(107) 11:16 23:7 24:22 25:7 25:12 35:19 53:23 57:9 57:23 58:14 58:15 58:17 58:20 59:9 61:8 61:12 62:1 62:3 65:8 68:11 72:10 72:16 74:15 74:19 74:20 75:7 79:13 79:16 81:13 83:9 83:11 86:15 87:1 88:9 91:19 91:20 91:23 92:21 92:24 97:11 99:25 100:8 103:12 109:15 109:17 121:16 121:22 124:14 126:5 126:13 127:6 127:14 128:5 128:6 128:12 131:5 136:2 136:22 138:19 138:20 139:12 139:21 140:10 144:6 144:9 144:19 144:21 145:6 145:7 145:9 145:12 145:15 145:17 145:18 153:12 155:20 156:4 156:13 156:17 157:1 158:3 158:7 160:7 162:23 162:25 163:4 168:13 168:18 169:1 169:25 170:9 170:14 170:16 172:21 172:23 173:2 173:7 174:2 174:25 179:5 179:6 179:14 180:10 180:15 181:6 181:21 183:13 185:23 186:8 187:19 188:12 188:23 189:4 189:9 189:22 190:1 190:2 190:11 191:12

haven't(3) 12:9 51:18 74:12
haven't(3) 120:6 164:8 164:8
having(8) 9:11 34:10 110:18 145:14 145:15 180:19 183:17 185:11

happened(9) 22:10 65:3 122:19 125:8 144:23 145:2 146:1 146:2 162:22
happening(1) 23:9
happy(17) 20:3 28:16 28:17 61:20 66:5 67:1 74:1 89:22 90:4 90:18 98:5 101:13 104:8 109:22 109:23 173:3 179:12
hard(15) 57:4 60:6 61:12 70:15 71:12 71:15 73:1 138:12 150:25 179:20 179:21 180:10 183:24 184:4 185:3
hard-fought(2) 58:12 59:19
hardest(2) 74:14 185:24
hardship(6) 16:6 17:13 21:6 26:24 27:5 56:4
harris(1) 6:9
harrisburg(1) 1:44
has(63) 9:21 11:7 12:8 14:12 15:16 17:9 17:11 17:19 17:23 18:18 18:19 19:1 20:4 21:7 24:16 27:19 37:19 38:10 42:24 48:15 50:19 50:22 52:7 53:7 54:7 54:13 62:10 63:22 65:2 65:20 68:6 73:17 73:20 73:22 76:6 78:10 82:18 85:8 91:11 98:7 98:13 99:9 101:1 104:14 111:16 111:25 113:18 113:20 114:4 114:5 115:17 116:5 119:14 123:2 123:6 124:6 125:9 132:5 133:4 137:22 141:18 142:9 142:18 146:14 147:11 148:6 148:8 152:6 153:5 160:7 163:16 166:20 167:7 167:15 167:23 170:9 171:8 172:7 177:9 179:20 182:13 184:1 185:12 186:12 187:25 189:15 189:19 190:20

hauer(3) 2:5 6:17 90:13
have(263) 10:23 10:24 11:10 11:12 11:15 12:3 13:21 13:24 14:5 14:23 16:14 16:20 17:18 18:20 19:17 20:6 21:13 21:17 21:19 21:24 23:9 23:14 24:8 24:9 24:22 24:25 25:10 25:20 26:18 26:20 27:2 27:3 27:5 27:7 27:18 27:24 28:2 28:3 28:21 29:4 29:24 31:2 32:2 32:24 33:6 35:16 35:19 36:7 37:17 39:14 39:20 39:22 40:7 40:17 42:9 42:13 42:18 42:19 44:3 45:3 50:20 51:17 52:16 56:9 57:5 59:14 61:7 61:23 62:1 62:11 62:11 62:14 62:20 62:21 62:24 63:20 64:6 65:6 65:9 65:16 66:3 66:5 69:5 71:9 71:19 71:20 72:22 72:25 74:24 75:2 75:22 77:2 77:9 77:19 79:6 79:11 91:15 93:15 94:23 95:1 95:7 96:20 99:8 99:10 100:8 100:15 105:25 107:3 108:25 110:3 110:5 110:6 110:10 110:25 111:1 111:10 112:11 112:13 113:17 115:20 117:22 118:4 118:7 118:7 118:20 119:2 119:18 119:19 119:22 121:16 122:8 122:12 122:17 124:1 124:6 124:7 124:8 124:25 125:15 125:17 128:3 129:2 129:19 130:18 131:9 131:16 131:24 133:21 134:1 134:20 138:6 141:10 142:14 142:17 142:19 142:20 142:23 143:6 143:7 143:13 143:14 144:20 144:25 145:1 145:9 145:9 146:1 146:11 146:11 146:11 147:18 148:12 148:14 148:15 149:1 149:7 149:12 149:18 149:19 149:23 150:8 150:11 151:5 151:13 151:15 151:17 151:21 151:25 152:1 152:4 152:9 152:11 152:12 152:23 153:5 153:11 153:22 156:2 156:21 157:6 157:17 157:21 159:4 159:16 160:10 160:13 162:12 162:13 163:5 163:9 163:10 163:20 163:22 166:7 168:19 169:6 169:16 169:17 170:13 170:19 171:3 173:10 173:17 174:1 174:7 174:24 175:9 176:9 176:19 176:21 178:6 178:7 180:11 180:18 181:16 181:21 181:23 183:13 183:21 185:23 188:13 188:21 189:9 189:22 190:2 190:21 191:12

he'll(1) 17:9
he's(4) 84:12 84:12 95:18 101:14
headed(1) 184:20
headlines(1) 68:9
health(5) 23:23 24:4 53:18 55:8 187:8
hear(15) 19:25 30:6 33:11 59:24 60:4 63:9 89:22 90:8 94:4 94:10 94:12 94:13 130:23 131:4 162:6
heard(15) 49:4 59:6 59:23 60:17 69:23 93:8 104:17 108:10 136:11 154:5 154:8 154:13 154:15 162:13 177:24
hearing(35) 9:12 11:20 33:18 34:8 42:18 56:20 56:21 116:11 116:15 117:2 129:14 129:22 129:24 130:13 131:7 139:4 147:15 150:23 155:21 158:12 162:15 174:23 177:13 178:23 181:13 182:8 191:23
hearings(1) 19:23
heart(4) 16:11 166:15 177:4 177:5
heartache(1) 183:15
heavily(3) 161:14 182:7 182:16
held(14) 11:10 39:1 39:4 65:4 65:17 76:19 76:21 77:1 96:11 113:1 132:5 141:18 142:10 186:6
hell(1) 151:3
help(5) 37:15 61:8 130:14 145:23 145:24
helped(1) 149:14
helpers(1) 5:18
helpful(2) 56:13 56:13
helps(1) 84:7

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

hemorrhaging(1) 91:20

henceforth(1) 18:7

her(6) 17:20 22:7 36:5 46:14 49:3 181:20

herbert(1) 5:37

hercules(1) 151:13

here(97) 9:10 10:2 11:13 11:20 12:16 12:17 13:21 14:17 14:20 14:22 15:17 18:19 19:14 19:18 20:12 20:18 20:20 20:24 21:7 23:9 25:23 27:9 27:20 27:23 28:6 28:23 29:20 29:25 30:3 50:23 53:5 54:4 54:18 54:25 55:24 56:23 57:7 64:13 65:3 67:5 67:24 80:2 87:1 91:4 91:7 91:9 92:1 95:6 95:7 97:12 99:8 101:8 103:3 106:10 111:10 113:9 114:22 116:8 117:18 120:15 121:8 121:19 121:14 123:11 123:8 124:8 125:8 127:4 128:19 130:18 131:2 142:20 143:4 143:5 143:24 143:25 144:8 144:21 145:21 146:25 149:14 149:18 149:20 153:4 156:17 159:6 161:9 163:24 167:7 168:7 171:9 172:21 181:11 182:6 182:25 184:6 186:5

herein(1) 175:12

herring(1) 89:9

hewitt(1) 6:10

heywood(1) 45:11

he's(5) 123:1 123:3 136:7 168:21 171:22

high(6) 37:4 37:11 38:8 91:16 122:15 169:14

high-end(1) 78:21

higher(2) 39:14 39:22

highlight(2) 62:23 187:4

highlighted(1) 68:11

him(17) 61:12 72:4 72:4 80:19 84:12 84:20 84:25 85:23 121:17 127:18 135:12 168:25 169:3 170:6 170:11 184:9

himself(1) 153:14

hip(3) 58:1 63:4 63:5

hirschtritt(1) 5:19

his(28) 31:12 32:6 36:8 37:19 44:15 48:18 55:8 81:1 81:2 83:23 84:13 85:9 86:15 88:9 100:21 127:18 147:10 161:19 161:20 161:21 166:25 167:21 170:3 170:4 170:9 171:7 184:7 184:9

historically(1) 153:15

history(3) 74:3 142:24 144:8

hit(4) 78:5 78:16 132:4 162:22

hoc(7) 3:24 6:13 29:25 96:12 122:4 123:11 149:3

hodara(1) 184:23

hoeffner(1) 5:26

hogan(1) 8:12

hold(8) 108:25 117:23 119:14 119:15 119:25 153:22 153:24 153:24

holders(18) 58:19 83:5 121:24 121:25 122:8 123:12 124:11 125:16 127:17 127:14 136:14 137:11 138:22 138:24 139:15 140:4 174:24 182:13

holder's(1) 127:13

holding(4) 110:15 131:25 147:12 182:24

holdings(5) 139:1 139:23 139:24 142:15 151:12

holds(2) 103:11 182:25

hollenbec(1) 172:5

holley(76) 12:20 16:1 16:5 26:20 30:7 30:7 30:8 30:9 30:10 32:12 32:14 32:18 32:23 33:6 33:15 33:18 33:22 34:1 34:7 34:11 34:16 34:18 35:4 35:8 35:16 39:3 40:1 40:3 40:5 40:7 40:11 40:14 40:16 40:22 40:25 42:10 42:11 42:12 42:16 42:20 43:11 43:15 43:18 43:22 44:3 44:7 44:12 44:21 45:7 45:21 45:24 46:3 46:6 46:10 47:13 47:17 47:22 47:24 48:4 48:8 48:10 49:3 49:5 49:9 50:6 50:9 50:13 50:14 50:20 51:18 52:6 52:9 54:11 54:17 55:21

holly(1) 180:22

holohan(1) 7:37

home(1) 7:41

honesty(1) 187:11

honor(253) 9:6 9:22 12:12 13:16 14:9 18:24 19:11 19:17 20:5 20:9 27:8 27:14 29:12 29:19 29:24 33:4 33:12 50:9 50:16 50:22 51:10 51:14 51:21 52:4 52:10 52:14 54:10 60:9 60:21 61:10 61:16 61:19 62:7 63:9 63:14 66:5 67:7 67:23 68:6 68:12 72:2 73:25 75:5 75:6 80:8 80:25 84:16 85:5 86:5 89:20 90:10 90:16 90:18 90:21 91:3 91:5 91:8 91:16 91:21 92:6 92:9 92:13 92:16 93:2 93:6 93:13 93:19 94:9 94:11 94:23 95:17 95:24 96:2 97:1 97:13 97:24 99:24 100:11 100:22 101:3 101:25 103:7 104:21 105:4 106:13 106:21 108:17 109:1 109:21 111:2 111:7 112:18 112:21 113:6 113:10 113:21 114:7 115:2 115:8 115:15 115:25 116:5 116:9 116:24 117:10 117:12 117:20 118:8 118:8 118:23 119:11 119:14 119:20 120:23 121:6 124:22 125:24 129:19 130:5 130:6 130:21 131:5 131:14 131:16 131:23 132:14 132:18 132:20 132:23 133:19 135:3 135:6 135:8 135:13 136:1 136:12 136:22 137:9 137:12 137:14 137:18 138:1 138:14 139:2 139:19 140:11 140:19 140:21 141:8 141:10 141:15 141:18 142:9 143:4 143:8 143:8 143:21 143:22 144:5 144:11 144:19 144:22 145:4 146:5 146:6 146:14 146:16 146:18 147:11 149:25 150:5 150:7 150:12 150:15 150:16 151:2 151:16 151:21 152:6 152:7 152:15 153:7 153:15 153:21 153:23 154:1 154:4 154:19 154:23 155:3 155:6 155:10 155:14 155:16 155:23 156:3 157:11 157:16 157:18 157:23 158:11 158:15 159:2 159:5 159:13 159:19 159:17 159:21 160:14 160:17 161:16 161:24 162:2 162:4 164:2 164:4 164:7 165:8 165:10 165:18 165:20 165:21 166:1 166:3 182:3 182:3

honor's(1) 153:15

honorable(2) 1:19 59:15

honors(4) 57:8 70:14 126:16 126:22

honor's(3) 140:13 142:14 155:17

hooked(1) 12:12

hope(2) 118:10 118:24

hoped(1) 92:24

hopefully(2) 58:10 118:23

horne(24) 160:5 160:18 160:21 161:19 161:24 161:25 162:1 162:2 162:4 162:8 162:12 164:1 164:2 164:4 164:7 165:8 165:10 165:18 165:20 165:21 166:1 166:3 182:3 182:3

horribly(1) 152:20

host(2) 37:23 60:23

hot(1) 71:22

hour(3) 66:14 72:13 72:14

household(3) 38:13 38:19 56:10

housekeeping(1) 99:25

housing(3) 37:4 38:21 52:2

how(32) 14:22 43:13 43:13 43:20 48:6 55:23 57:7 57:12 57:18 66:11 68:16 68:24 72:23 73:1 78:5 79:14 87:15 101:13 107:23 116:13 118:8 119:8 123:20 123:22 124:4 127:2 162:3 163:2 165:12 179:20 180:10 181:16

however(5) 16:7 71:17 82:5 90:19 92:16

hsbc(1) 7:15

hst(2) 41:5 41:7

hubbard(3) 2:26 5:43 93:23

huberty(1) 2:28

huge(1) 127:12

hughes(3) 2:26 5:43 93:23

humored(1) 180:25

hundred-one(2) 58:20 58:25

hundreds(2) 27:2 58:4

hunter(1) 146:7

huron(1) 6:41

hurt(3) 23:16 54:6 79:14

hwp(1) 52:1

hwt(3) 37:7 38:3 38:4

hypothetical(1) 140:25

i'd(7) 19:24 33:5 33:11 52:9 94:10 103:1 105:17

i'll(15) 9:15 9:25 13:22 29:3 29:13 45:25 50:7 50:22 63:9 90:17 95:10 95:11 97:24 106:8 106:11

i'm(37) 20:3 20:12 20:16 20:18 20:20 26:5 28:12 45:24 47:12 49:3 64:14 66:5 66:6 66:9 66:14 66:5 66:17 67:1 82:10 89:22 90:6 94:11 94:24 95:6 97:4 97:12 98:18 104:8

i've(8) 20:1 20:1 20:21 28:6 28:7 28:8 43:8 87:11

idea(5) 77:2 88:18 101:7 153:15 153:17

identical(1) 25:3

identified(1) 23:3

identity(2) 105:25 188:17

ifrs(3) 65:4 68:14 166:3

illustrate(1) 153:3

imagine(1) 66:13

immediate(1) 112:21

immediately(4) 64:24 75:13 159:4 188:3

impact(5) 31:13 36:20 36:24 39:7 127:12

impaired(2) 39:9 51:24

impaired(4) 174:17 175:1 175:5 187:22

implement(1) 110:23

implementation(3) 109:25 115:3 187:3

implemented(5) 24:23 25:8 84:5 138:18 139:12

implements(1) 68:4

implicate(1) 107:20

implicated(2) 65:23 99:7

implied(1) 44:24

importance(5) 59:21 68:18 69:5 90:22 137:16

important(9) 17:1 17:18 17:21 54:22 68:25 70:7 79:4 126:13 144:24

importantly(2) 73:10 93:2

imposed(1) 139:18

impossible(1) 140:1

improperly(1) 161:4

improvident(1) 112:23

inc(11) 1:8 6:33 6:34 7:40 65:10 157:1 158:6 158:7 187:8 188:16 188:20

include(3) 23:21 23:22 43:5

included(4) 81:3 143:22 147:22 190:10

includes(3) 91:8 94:19 182:22

including(18) 16:4 17:5 17:16 18:4 25:13 36:23 41:7 43:24 57:14 75:11 78:10 96:12 100:8 105:5 105:11 147:9 167:11 187:2

income(22) 21:22 22:17 30:20 37:3 37:8 37:9 37:10 37:13 37:14 38:7 38:9 38:15 38:16 38:18 38:20 39:5 39:6 39:18 39:23 52:2 56:10

inconsistencies(2) 34:25 44:18

inconsistent(4) 34:24 42:7 44:17 137:13

inconvenience(1) 70:21

incorporated(1) 160:7

incorrect(3) 36:2 42:25 45:7

increase(1) 158:16

incredibly(1) 140:1

incremental(3) 30:23 173:7 174:6

incurred(4) 111:25 119:23 133:7 159:4

indeed(6) 91:14 98:5 99:22 104:18 164:2 182:19

indenture(39) 69:12 96:3 100:10 107:9 107:12 107:21 108:6 108:12 109:24 112:12 115:22 119:2 120:21 122:1 126:3 142:2 146:23 146:24 147:1 147:4 147:20 147:23 148:6 148:16 148:19 148:22 148:25 149:4 149:11 151:18 151:25 152:19 152:20 152:21 152:23 152:24 152:24 190:9 190:14

indentures(3) 147:6 148:15 148:20

independently(1) 37:5

indicate(2) 20:22 178:8

indicated(2) 62:3 86:15

indicator(1) 17:2

indiscernible(18) 29:17 35:13 38:14 41:13 41:20 41:23 44:25 45:7 45:12 45:17 47:9 49:9 51:7 109:18 178:22 179:15 180:18 191:4

indisputable(1) 48:15

individual(3) 59:2 71:14 148:22

individuals(8) 27:18 27:21 31:16 140:25 141:24 142:25 180:4 184:17

inequality(3) 15:17 34:13 34:14

inferring(1) 44:22

inflated(1) 159:8

inform(1) 58:11

informal(1) 160:5

information(4) 81:7 94:15 94:22 140:7

informed(1) 136:7

infringe(2) 46:23 49:25

infringed(1) 48:15

infringements(5) 32:3 45:5 46:15 47:25 50:4 158:5

ingersoll(1) 4:10

initial(5) 66:18 88:3 102:10 102:24 103:1

initially(2) 92:9 147:21

injunction(1) 49:11

inning(2) 123:4 125:1

innings(3) 124:23 124:25 125:6

input(1) 149:4

inside(1) 191:14

insolvencies(1) 17:2

insolvency(13) 10:24 15:11 15:15 15:20 15:24 16:7 16:19 17:13 21:7 23:15 26:7 56:15 180:13

instance(3) 119:9 130:17 140:24

instead(3) 93:12 93:13 140:21

instructed(1) 41:16

instrumental(1) 185:6

insult(1) 154:2

insulting(3) 143:18 153:25 154:3 178:6

insurance(7) 21:25 22:1 22:18 26:14 39:1 39:4 78:22

insured(1) 28:7

insurer(1) 37:21

integrate(1) 76:15

integrated(1) 69:18

integration(1) 68:21

intellectual(1) 59:15

intend(7) 24:14 62:3 112:20 113:1 158:11 159:13 178:2

intended(1) 176:17

intensions(1) 187:11

intent(3) 19:4 103:15 114:23

intention(2) 103:25 178:6

intercompany(4) 69:2 109:16 177:7 188:24

interest(21) 73:3 13:12 13:15 15:13 15:18 59:2 59:2 70:23 87:17 99:15 110:3 111:16 115:17 174:24 175:5 175:19 185:20 186:2 186:17 186:19

interested(16) 6:33 6:37 6:41 6:49 7:7 7:19 7:24 7:36 7:40 7:44 8:4 8:8 8:12 8:16 8:20 20:16

interests(17) 15:16 17:10 17:20 20:25 21:16 24:17 25:24 30:15 30:16 50:16 60:5 87:20 88:25 105:16 111:15 180:11 187:17

interests."(1) 111:18

interfere(1) 167:25

interfering(1) 65:24

interim(4) 30:18 37:2 64:16 65:4

international(3) 156:16 156:25 157:23

internet(1) 58:2

interpret(1) 44:21

interpretation(2) 152:7 152:8

interpreted(3) 14:22 42:5 142:18

interpreters(1) 53:20

interpretive(1) 53:3

interrupt(1) 128:17

interrupting(1) 110:3

into(47) 9:15 10:21 11:23 17:24 17:25 25:20 26:16 56:12 60:18 64:14 64:24 66:17 70:8 70:22 71:11 73:19 77:17 78:4 78:8 78:9 79:20 80:2 80:11 80:14 81:14 84:22 85:11 85:14 90:4 93:3 100:18 112:16 120:22 122:10 124:30 126:25 139:19 141:1 147:13 156:1 157:19 158:13 162:20 172:24 173:8 173:14 184:5

intricacies(1) 59:16

introduce(2) 79:19 103:1

intrusive(1) 110:7

inured(2) 111:6 111:6

invaluable(1) 60:22

invoices(9) 121:1 121:2 121:4 121:6 121:9 121:10 121:20 130:7 130:8

invoked(1) 49:23

involved(14) 58:12 115:16 121:24 124:13 125:10 125:17 125:25 126:8 126:17 143:2 147:7 148:5 149:1 160:18

involvement(3) 141:14 143:4 143:9

iowa(1) 160:4

irrelevant(1) 65:6

isn't(3) 68:19 71:6 79:7

issue(35) 11:6 14:12 19:7 20:4 52:25 54:13 61:17 63:20 63:21 89:22 89:25 91:12 107:11 109:24 110:2 110:8 111:10 111:19 111:21 112:4 114:5 115:5 115:21 117:1 120:12 127:6 133:22 136:11 140:10 144:1 156:17 160:23 161:13 171:2 171:8

issued(3) 75:10 109:1 147:6

issues(35) 9:8 9:11 59:13 59:15 59:21 61:6 61:17 62:24 63:2 65:19 65:23 66:18 70:6 70:20 70:22 72:15 72:16 74:5 75:9 91:15 92:7 95:20 98:10 102:7 107:10 108:11 109:19 111:1 156:6 160:22 167:11 167:24 172:16 180:20 183:19

it's(65) 12:5 15:4 18:21 18:25 21:4 22:6 22:22 22:24 24:7 24:19 25:9 26:5 26:7 27:1 29:8 35:4 44:4 44:7 44:21 46:7 46:8 47:13 47:21 47:22 52:21 52:24 54:2 54:3 54:5 54:24 55:22 56:20 57:4 57:6 60:3 60:5 61:21 62:12 66:13 68:18 68:21 68:21 80:20 89:9 89:15 89:18 96:9 96:9 97:17 97:25 98:5 99:7 99:17 99:18 100:10 101:4 107:1 101:5 102:2 114:24 116:11 117:9 117:16 122:18 131:17

item(3) 102:6 107:4 175:12

iterated(1) 98:2

its(31) 21:2 116:1 26:14 36:15 41:9 44:17 63:13 76:17 91:9 101:1 103:15 110:11 111:22 112:1 114:16 119:17 119:17 137:23 156:13 156:15 157:23 176:21 183:11

itself(8) 11:21 34:20 42:6 80:11 87:24 88:22 88:23 150:21

it's(53) 107:20 114:23 116:12 117:24 118:5 119:1 119:2 120:3 121:10 123:14 123:18 123:22 124:3 124:22 124:22 124:25 130:19 132:3 133:3 133:9 133:22 135:15 135:17 137:13 138:13 139:21 140:11 140:12 140:14 140:14 140:23 141:6 142:6 144:22 150:14 151:3 151:4 152:10 152:12 152:15 152:15 153:3 153:16 158:1 163:16 163:18 164:20 174:3 179:12 181:18 188:13 191:17

i'd(6) 115:8 116:4 130:16 131:24 160:14 162:16

i'll(15) 18:24 121:18 130:13 130:15 134:25 135:12 137:2 154:20 173:14 177:11 177:21 179:10 181:9 187:4 190:20

| Word | Page:Line |
|---|---|

i'm(41) 117:14 117:18 117:20 118:4 118:9 120:17 121:5 121:8 121:16 123:15 124:20 125:2 128:15 128:17 130:3 130:3 130:10 132:6 132:9 140:10 142:23 144:3 150:16 150:17 150:23 154:3 155:9 157:11 159:5 159:25 163:12 163:17 163:17 173:3 179:4 179:6 180:6 181:10 181:19 185:5 188:12

i've(15) 121:6 125:21 145:14 150:7 154:5 154:8 154:13 154:15 162:14 165:11 181:3 181:6 181:7 183:11 185:10

jaime(1) 2:35

james(3) 1:30 3:6 4:16 97:5 108:20

jane(1) 102:11

january(18) 1:14 9:1 41:5 74:19 74:21 80:7 82:12 85:11 91:6 100:5 103:14 125:23 156:9 158:11 160:20 161:15 173:11 175:11

jason(1) 6:34

jeffrey(2) 1:31 3:46

jennifer(2) 30:7 30:9

jeremy(3) 7:12 63:14 97:25

jim(1) 184:18

joanne(1) 5:6

job(2) 87:14 151:16

jobs(3) 21:3 21:9 57:13

john(5) 8:13 79:17 80:6 80:8 83:6

johnson(2) 6:18 184:24

join(2) 73:19 150:11

joinder(2) 74:8 74:9

joined(3) 57:25 62:1 81:14

joint(9) 3:4 5:37 56:20 82:13 93:24 94:1 123:7 127:7 127:11

jointly(1) 1:6

jonathan(1) 7:16

jones(3) 3:32 6:37 6:38

joseph(3) 3:40 184:8 184:9

journal(2) 139:7 140:22

joyce(1) 1:5

judge(60) 1:19 1:20 9:8 9:18 9:23 10:8 11:19 19:4 20:10 27:14 29:13 29:20 29:25 30:11 31:11 32:1 35:9 36:8 43:9 48:15 49:15 49:16 52:10 56:21 56:25 60:21 60:22 61:11 65:16 65:17 67:2 72:3 92:18 93:22 108:19 111:8 111:12 111:24 114:7 126:25 127:1 128:10 151:9 151:9 151:10 151:12 151:13 153:8 153:12 153:13 164:4 168:6 168:7 179:4 179:19 180:24 180:24 181:1 184:8 184:11

judge's(1) 42:22

judges(7) 36:15 48:19 48:23 120:25 151:6 153:6 169:11

judgment(9) 24:23 25:8 26:2 42:23 43:1 45:9 45:10 99:7 185:18

judicata(3) 167:12 169:23 181:23

judicial(3) 61:9 86:8 105:4

julia(1) 8:21

jump(1) 105:17

june(1) 41:19

jurisdiction(16) 61:17 61:25 62:8 62:8 63:10 64:9 64:12 65:8 65:14 65:19 66:3 66:4 72:21 93:10 99:9 185:12

jurisdictions(3) 13:6 99:8 126:23

just(130) 9:4 9:11 9:23 16:8 20:13 22:8 22:25 25:20 27:3 30:22 33:9 34:7 34:16 38:10 42:10 42:13 43:7 43:15 44:4 47:19 47:20 50:6 50:17 50:22 51:12 51:18 52:16 53:14 56:12 57:9 59:11 62:23 63:2 66:6 66:20 67:5 68:4 69:3 70:11 70:24 71:9 73:12 74:8 74:9 75:7 77:19 78:8 78:11 79:8 79:11 79:22 80:8 81:7 85:24 86:16 87:15 88:6 88:12 88:19 89:6 95:17 96:10 96:15 98:7 101:21 102:25 103:8 111:3 115:9 115:14 116:1 116:6 116:10 116:17 117:20 119:13 119:25 120:3 120:9 120:11 120:17 122:3 129:23 131:16 131:17 132:9 133:19 133:22 134:19 136:1 136:22 136:23 138:11 140:6 141:5 141:20 141:21 143:17 145:13 145:25 145:25 146:24 148:10 149:6 150:8 151:16 152:14 155:17 157:10 158:24 159:6 162:16 164:14 167:23 170:23 173:7 174:12 175:23 177:3 179:6 179:21 181:10 182:5 186:20 189:13 189:14 189:19 190:2 190:19 191:3

justice(146) 9:4 9:8 9:11 9:14 9:17 9:22 10:4 10:6 10:7 12:11 12:18 12:21 14:5 14:8 15:1 16:21 18:25 19:12 19:22 20:7 20:13 21:17 22:12 22:16 22:21 22:23 23:25 24:25 25:6 26:18 26:24 27:11 28:10 28:12 29:10 29:17 29:23 30:2 30:5 30:8 32:14 32:12 32:15 32:16 32:19 32:22 33:1 33:2 33:3 33:8 33:13 33:19 33:23 34:3 34:9 34:15 34:17 35:2 35:7 35:15 35:18 35:21 39:2 40:1 40:4 40:6 40:10 40:13 40:15 40:19 40:24 42:10 42:13 42:17 43:7 43:13 43:17 43:20 44:2 44:5 44:10 44:20 45:6 45:21 46:2 46:4 46:7 47:11 47:15 47:19 47:23 48:2 48:6 48:9 48:25 49:4 49:7 50:6 50:12 50:15 50:18 51:15 51:22 52:5 52:12 52:17 52:21 54:9 55:5 55:7 55:9 55:20 56:17 57:1 57:8 61:11 66:21 70:6 78:22 90:17 93:22 97:9 98:22 106:19 106:20 108:20 117:16 125:18 125:24 125:25 135:20 145:12 150:16 177:25 155:17 165:23 165:23 165:23 172:23 173:3 175:22 178:13 183:1 181:15 184:6 184:11

justified(4) 32:8 36:17 42:8 45:2

justify(1) 114:16

kahn(2) 2:7 184:23

kathleen(1) 4:11

keane(1) 3:33

keep(5) 61:13 88:5 97:24 138:25 149:5

keeping(1) 140:16

kelly(1) 192:8

ken(1) 3:39

kennedy(16) 17:6 22:6 23:19 24:2 24:16 36:3 36:13 51:11 62:16 66:12 79:17 85:7 85:7 85:19 86:1 88:9

kennedy's(2) 84:25 85:15

kenney(34) 4:30 136:2 150:14 150:15 151:23 153:10 153:12 153:17 153:18 153:19 153:20 153:21 153:23 154:1 154:3 154:6 154:7 154:9 154:11 154:14 154:15 154:17 154:19 154:23 155:1 155:3 155:6 155:7 155:9 177:23 178:1 178:1 178:9 178:11

kenney's(2) 143:18 150:14

kent(1) 171:17

kenyon(1) 98:1

kept(1) 57:14

kevin(2) 1:19 5:40

key(4) 54:21 87:6 87:11 103:8

kimberly(1) 6:22

kind(9) 56:12 78:6 78:21 130:15 150:21 153:16 153:16 153:24 157:20

king(4) 2:16 2:37 4:31 4:41

kings(1) 180:6

knew(58) 54:13 59:14 59:21 59:25 94:12 123:20 123:24 123:24 123:25 124:1 124:4 124:13 127:19 127:23

knights(2) 180:5 180:7

knock(1) 123:14

know(66) 14:2 20:2 22:2 26:17 27:23 28:7 28:8 28:13 44:3 48:21 54:14 54:24 64:13 67:16 71:25 79:7 79:13 79:19 87:21 89:20 89:23 89:25 94:10 97:10 99:5 101:7 104:9 104:10 108:10 109:22 116:12 116:12 116:13 119:6 119:8 120:2 121:2 122:11 123:21 124:22 125:11 127:2 132:10 133:23 134:8 138:24 140:9 141:20 142:16 147:6 152:5 152:6 153:4 153:5 153:15 154:7 156:11 158:12 159:14 160:1 163:1 164:15 167:23 178:10 179:9 179:20 184:2

knowing(3) 75:14 78:11 122:15

knowledge(1) 32:23

known(2) 70:16 182:17

knows(1) 92:13

knoxville(1) 157:14

koskie(2) 42:20 47:18

kurth(3) 7:11 63:15 98:1

i.p(2) 108:21 190:18

labor(1) 49:12

lack(3) 32:24 59:19 161:4

lacked(1) 12:21

laid(5) 61:4 138:15 143:23 144:22 146:6

lamek(1) 97:8

lamick(3) 117:19 123:2 126:21

land(1) 25:20

language(8) 51:7 53:20 119:1 119:9 160:6 189:15 189:19 190:18

largely(5) 27:6 62:24 69:9 151:18 183:22

largely(5) 22:22 23:13 104:25 159:8 184:10

larger(15) 59:2 71:16 72:20 73:8 73:15 81:25 84:9 86:8 87:2 87:15 89:24 91:5 134:20 144:12 144:20

largest(1) 69:14

laser-focused(1) 61:14

last(26) 18:23 19:16 27:19 35:14 53:10 60:25 66:13 68:2 73:16 76:5 101:2 121:16 134:9 160:1 160:9 166:21 170:5 170:12 170:12 172:22 174:2 174:4 174:4 174:22 182:17 183:12

lasted(1) 147:19

lastly(4) 112:18 180:23 182:10 186:23

lastovski(1) 5:12

late(5) 115:8 138:9 164:21 170:17 172:22

late-breaking(1) 60:10

latest(1) 92:12

launches(1) 114:14

launching(1) 120:22

lavelle(1) 7:45

law(42) 6:25 12:3 26:10 32:2 32:5 32:11 34:23 34:24 35:10 35:12 36:15 41:23 41:23 45:23 44:46 44:17 45:11 46:12 48:22 53:22 58:13 59:16 66:2 69:12 97:11 111:5 111:23 113:22 120:4 122:20 126:14 127:24 128:4 131:19 141:19 142:17 144:4 149:7 161:8 184:4 190:12

lawyer(1) 46:5

lawyers(6) 50:7 52:6 163:7 180:11 184:18 184:21

lay(2) 144:3 161:16

lays(1) 142:21

lead(5) 65:22 67:24 81:12 86:11 150:9

leads(1) 93:3

learned(1) 181:6

learning(1) 58:13

least(5) 72:9 110:7 148:4 149:24 174:3

leave(1) 3:33

leblanc(19) 3:25 94:8 94:9 94:11 94:13 94:18 95:10 95:14 95:16 95:22 95:24 95:25 143:20 143:21 144:3 144:16 146:14 146:16 146:17

led(3) 52:15 92:7 92:18

left(2) 70:7 165:19

legal(11) 29:3 29:5 33:23 34:3 34:9 36:4 41:3 149:5 149:6 168:13 185:2

legally(1) 126:18

legislation(7) 44:22 45:1 49:24 50:2 53:4 53:9 54:17

legislative(2) 44:15 49:20

legislature(4) 42:2 46:19 46:22 49:24

legislatures(2) 47:2 48:12

lend(1) 144:16

lender(2) 144:11 144:12

lender's(1) 134:17

lending(1) 144:17

length(2) 70:20 75:2

lengthy(3) 92:10 183:1 183:24

lens(1) 137:18

leonard(1) 2:42

less(10) 24:22 30:25 58:22 78:12 88:14 88:16 88:17 91:23 93:14 187:19

let(12) 27:23 52:14 63:12 64:12 98:18 101:4 102:16 145:3 150:18 151:8 160:1 181:8

let's(2) 78:9 101:22

letter(4) 76:8 168:25 170:12 186:24

letters(3) 69:3 77:9 170:8

let's(8) 120:11 122:18 124:7 125:7 129:7 149:18 178:12 178:24

level(1) 119:18

lever(1) 70:8

leverage(1) 76:9

liability(4) 127:8 127:12 158:17 159:10

liberty(2) 31:16 56:1

lien(4) 110:19 113:24 122:8 122:17

lieu(1) 84:20

life(3) 22:1 22:18 55:25

light(6) 61:24 102:16 103:24 104:5 114:3 136:10 172:22 176:1

like(44) 16:19 33:5 33:11 48:16 49:5 51:23 52:9 53:2 67:2 70:7 71:3 73:21 77:18 78:8 79:9 87:5 101:12 103:1 105:17 115:8 118:5 119:6 119:18 120:4 120:10 120:23 122:10 123:18 124:22 124:22 126:7 127:15 130:16 134:16 149:7 150:17 159:25 160:14 162:16 172:21 173:6 173:7 174:1 177:3

likelihood(1) 99:5

likely(3) 9:24 65:22 118:20

limit(2) 32:10 39:13

limitation(6) 31:21 43:3 45:18 54:13 54:15 186:16

limitations(2) 36:17 54:21

limited(7) 81:3 62:20 63:3 63:20 169:1 170:4 170:9

limits(2) 31:21 36:16

linda(1) 172:4

line(4) 61:7 122:3 175:7 178:5

lines(4) 25:6 120:5 160:7 178:3

lineup(1) 24:6

link(1) 123:7

linn(1) 8:5

liquidate(1) 183:18

liquidation(1) 187:20

liquidity(1) 7:11

lis(1) 5:38

lisa(1) 1:32 57:1 184:19

lisanti(1) 188:20

list(8) 59:7 70:6 70:15 78:7 78:11 78:13 78:14 78:18

listed(1) 111:2

listen(1) 33:5

literally(2) 57:15 144:13

litigants(1) 66:7

litigate(1) 159:1

litigated(4) 59:13 59:21 59:22 167:7

litigating(2) 21:12 110:14

litigation(39) 23:11 23:12 25:10 25:12 25:15 25:21 25:25 49:16 49:18 49:23 55:1 59:10 60:1 71:24 75:17 87:8 89:5 99:4 99:14 99:15 120:22 126:13 143:7 149:10 156:12 156:14 158:21 159:3 159:12 170:17 170:25 171:5 180:1 185:17 185:19 185:22 186:4 186:14

litigations(3) 58:23 59:18 157:7

little(8) 60:8 60:8 65:12 67:5 77:19 101:5 106:11 164:20

live(7) 28:8 28:11 37:5 62:20 67:16 89:6 180:4

lived(2) 89:5 124:8

lives(1) 59:25

living(1) 38:11

llc(2) 6:49 102:12

llp(14) 1:24 2:14 2:34 4:16 5:11 5:43 6:4 7:7 7:11 7:24 8:12 8:24 41:3 41:13

loan(1) 144:19

local(2) 49:10 63:21

located(2) 12:9 93:25

lockbox(6) 68:15 68:16 68:19 125:8 125:15 180:1

lodged(1) 114:4

logical(1) 25:22

logs(1) 100:16

long(22) 15:24 18:4 28:15 28:20 29:7 91:6 91:10 93:14 98:5 99:17 101:14 111:23 118:8 118:9 121:11 123:5 126:5 126:16 147:13 161:20 165:10 179:14

long-awaited(1) 11:22

long-term(3) 36:25 39:8 141:14

long-term-disabled(1) 58:18

long-them(1) 13:3

longer(4) 48:6 61:25 136:8 139:5

look(22) 22:13 43:16 57:17 71:9 76:11 77:10 87:10 88:18 93:13 106:9 121:6 121:9 122:18 122:18 123:17 124:4 134:21 170:3 177:2 182:23 185:16

looked(4) 91:15 114:18 121:6 152:10

looking(11) 46:7 47:11 60:7 71:9 81:6 93:12 99:3 125:13 145:23 152:14 160:1

looks(3) 77:18 121:2 188:20

los(1) 3:29

loss(3) 23:23 38:24 83:15

losses(1) 23:9

lost(1) 21:13

lot(35) 26:21 28:7 55:2 55:10 55:16 56:2 56:23 58:7 58:11 58:12 59:12 59:12 61:5 61:6 61:8 61:12 63:2 70:5 70:17 70:17 72:25 74:2 81:6 86:6 87:6 87:16 93:8 100:19 101:8 123:5 131:1 137:23 153:8 156:13 183:9

loud(1) 131:4

lovells(1) 8:12

low(1) 91:23

lowelthal(1) 120:20

lowenthal(52) 4:24 96:25 97:1 97:3 97:4 97:8 97:16 117:11 117:12 117:14 117:16 117:17 118:13 118:23 119:5 120:8 122:14 123:11 125:20 127:10 128:3 128:13 128:18 128:21 128:24 129:2 129:5 129:8 129:11 129:13 129:15 129:19 129:23 130:3 130:9 130:20 130:23 131:1 131:4 131:12 131:14 132:20 132:23 134:25 135:3 135:6 136:21 142:23 150:4 150:5 150:5 150:13

lower(1) 39:21

lsi(15) 62:1 63:12 63:15 64:4 73:19 74:7 79:13 86:14 86:14 98:1 98:2 98:5 98:8 98:7 98:10

lsi's(3) 63:19 66:15 90:17

ltd(44) 16:4 16:11 17:2 17:5 17:5 17:10 17:20 18:8 22:16 28:21 30:6 30:10 30:14 30:16 30:20 30:23 31:8 31:13 31:19 31:19 34:19 36:4 36:6 36:7 36:12 36:12 36:20 37:1 37:22 37:12 37:18 38:2 38:15 38:22 38:25 39:4 40:16 41:22 49:10 51:24 52:1 52:16 53:15 169:2

ltd's(3) 30:16

ltds(1) 27:25

lump-sum(1) 24:2

lunch(6) 101:5 101:8 106:5 106:12 106:24 136:2

mace(1) 1:40

made(34) 18:5 19:18 25:14 28:25 33:20 34:6 38:12 44:13 51:18 55:14 56:14 64:5 73:3 82:9 82:13 88:4 88:7 96:9 99:9 113:17 117:25 119:15 122:24 126:20 139:4 144:3 149:10 158:10 162:19 163:23 179:12 180:5 184:14 185:1

madison(1) 3:7

magistrate(1) 126:25

magnitude(1) 25:13

magnum(1) 146:7

mail(4) 138:11 139:8 140:22 182:17

mailed(1) 138:18

mailing(1) 182:16

mailings(1) 140:5

main(2) 167:6 189:13

mainly(1) 176:18

maintain(2) 13:13 79:9

maintained(2) 124:12 138:20

maintaining(1) 76:1

major(8) 10:22 11:4 11:5 11:8 25:14 92:2 183:12 185:1

majorities(1) 11:3

majority(6) 22:7 36:10 42:23 43:1 45:10 123:14

make(51) 19:19 20:13 22:8 30:11 30:13 31:3 32:2 33:8 33:9 45:4 49:1 50:23 51:10 51:16 51:17 51:18 53:10 61:12 63:10 66:20 70:6 78:22 80:7 81:22 88:24 96:15 99:18 107:15 110:21 116:19 118:13 122:12 124:1 129:1 129:6 137:23 149:16 149:21 155:23 158:9 162:5 162:16 174:7 178:4 183:9 183:10 189:10

**Footer**

| Word | Page:Line |
|---|---|
| makes(8) | 8:69 70:25 90:5 96:17 106:24 142:18 142:24 157:10 |
| making(9) | 35:21 35:22 90:18 100:12 110:1 121:23 122:1 128:23 145:7 |
| man(1) | 155:9 |
| man's(1) | 25:20 |
| manage(1) | 66:22 |
| managed(1) | 111:22 |
| management(7) | 3:5 6:21 6:22 8:4 8:5 107:6 108:21 |
| manner(6) | 26:1 42:5 80:22 81:4 82:20 110:1 |
| many(9) | 36:11 40:17 58:1 71:9 91:15 92:13 164:2 179:13 184:14 |
| marc(1) | 5:34 |
| march(5) | 19:11 30:18 125:24 172:7 172:9 |
| marginalization(1) | 38:25 |
| margot(1) | 7:30 |
| marilyn(2) | 46:12 52:7 |
| mark(2) | 4:30 178:1 |
| marked(1) | 85:12 |
| market(7) | 1:11 3:34 3:47 4:12 5:7 7:36 126:19 |
| markets(1) | 57:9 |
| martin(7) | 70:23 76:10 93:2 99:2 99:2 177:11 185:13 |
| mary(1) | 47:14 |
| mass(1) | 22:11 |
| material(10) | 11:12 14:6 18:16 36:19 36:24 39:7 53:11 88:21 98:5 124:15 |
| materials(7) | 136:15 137:11 139:15 140:3 182:1 182:13 182:20 |
| matt(1) | 7:15 |
| matter(13) | 10:12 65:15 98:20 142:5 144:4 147:20 168:10 168:22 169:8 169:23 170:8 170:9 192:4 |
| matters(9) | 11:6 24:18 43:24 43:25 46:20 73:25 169:13 181:13 184:1 |
| matthew(1) | 4:37 |
| maximum(5) | 38:15 39:6 39:13 39:23 39:24 66:4 67:11 75:13 80:24 85:4 89:18 93:15 106:18 114:1 114:11 122:11 122:23 126:11 126:15 132:20 133:8 139:1 144:11 144:25 145:9 146:7 147:17 154:18 154:19 154:20 157:16 164:10 164:11 165:8 173:11 173:16 177:23 178:18 188:9 190:21 190:23 |
| maybe(6) | 9:21 56:2 62:5 75:3 75:4 76:3 |
| mcavoy(21) | 12:17 12:17 16:1 16:5 26:20 30:15 33:2 33:4 33:4 33:5 33:7 33:12 44:18 50:15 50:16 50:19 50:22 51:20 51:23 52:5 54:18 |
| mccloy(2) | 3:24 6:13 |
| mcconnell(1) | 126:7 |
| mcelroy(1) | 180:23 |
| mcpherson(1) | 41:4 |
| meagher(2) | 4:5 7:10 |
| mean(4) | 89:14 121:19 167:3 190:14 |
| meaning(2) | 75:10 110:16 |
| means(4) | 56:10 122:17 186:20 187:3 |
| meant(1) | 124:12 |
| measure(5) | 16:24 17:1 17:19 77:15 184:10 |
| measures(1) | 38:17 |
| mechanical(1) | 70:6 |
| mechanics(1) | 20:6 |
| mechanism(1) | 192:11 |
| mediate(1) | 125:18 |
| mediation(30) | 71:12 71:13 81:5 82:12 92:18 92:19 100:5 112:22 112:25 113:2 116:25 121:18 125:20 125:22 127:2 128:10 131:9 131:10 131:18 132:13 132:23 133:1 133:4 146:5 157:13 157:14 180:8 180:18 183:2 184:10 |
| mediations(8) | 71:2 81:11 81:17 87:3 123:25 125:22 128:4 148:4 |
| mediator(3) | 117:1 124:17 184:8 |
| mediators(2) | 61:3 148:5 |
| medical(10) | 30:20 37:4 37:16 37:21 37:24 37:25 38:8 38:21 39:21 52:3 |
| medical-dental(1) | 22:17 |
| meet(6) | 19:12 22:10 76:3 99:22 130:17 146:5 |
| meetings(1) | 22:9 |
| meets(2) | 99:1 175:20 |
| meisel(1) | 2:41 |
| mellon(2) | 51:6 96:3 |
| melnik(1) | 7:8 |
| member(3) | 146:24 147:2 151:19 |
| members(5) | 30:15 36:12 36:25 76:22 91:9 |
| memorialized(1) | 159:16 |
| mental(1) | 31:17 |
| mention(2) | 121:7 158:13 |
| mentioned(13) | 11:11 30:9 35:10 37:19 91:22 96:17 126:10 141:20 144:10 147:10 147:15 149:21 161:9 |
| mentioning(2) | 88:6 175:7 |
| mercers(1) | 21:20 |

| Word | Page:Line |
|---|---|
| merely(3) | 53:2 65:5 68:19 |
| merger(1) | 7:36 |
| merit(1) | 142:20 |
| merited(1) | 142:19 |
| merits(4) | 45:2 75:12 155:22 159:11 |
| message(1) | 14:23 |
| messages(1) | 133:23 |
| met(6) | 31:21 99:19 99:20 144:6 187:2 187:4 |
| method(2) | 11:22 110:1 |
| methodology(1) | 78:4 |
| mic(2) | 9:15 67:13 |
| michael(10) | 5:12 5:20 8:5 8:17 8:25 79:17 85:6 85:7 96:2 146:20 |
| mics(1) | 67:16 |
| midtown(1) | 128:7 |
| might(4) | 65:8 121:18 133:7 152:24 |
| milbank(3) | 3:24 6:13 128:8 |
| mile(1) | 23:20 |
| miller(3) | 4:17 97:5 117:19 |
| miller's(3) | 120:9 121:10 122:25 |
| million(59) | 27:2 30:19 30:23 31:1 31:6 31:8 39:17 41:3 41:4 41:5 41:7 41:8 41:13 41:14 76:18 77:15 77:23 78:6 78:12 78:13 78:15 78:17 78:19 82:16 80:18 80:23 96:10 96:18 107:24 108:3 110:16 110:17 110:22 115:18 122:6 122:20 123:16 123:16 125:8 144:16 144:17 144:18 157:25 157:25 158:16 158:18 158:23 158:24 161:5 161:13 163:8 163:7 163:10 165:10 165:19 165:22 165:23 |
| millions(2) | 58:4 58:4 |
| mind(2) | 17:19 44:4 |
| mindel(1) | 6:5 |
| mindful(1) | 66:6 |
| minds(2) | 72:9 89:6 |
| minimize(2) | 63:1 137:15 |
| minimizing(1) | 61:2 |
| minimum(1) | 149:6 |
| minor(2) | 76:16 173:7 |
| minority(2) | 42:22 45:9 |
| minsky(2) | 42:3 46:17 |
| minute(9) | 34:16 35:5 43:15 115:11 116:1 118:10 120:18 124:20 128:16 |
| minutes(7) | 48:8 67:5 101:15 117:8 118:25 121:5 127:18 |
| mirror(1) | 189:19 |
| misconduct(3) | 142:9 153:1 153:2 |
| missed(1) | 162:10 173:5 |
| misstated(1) | 191:7 |
| modification(4) | 88:7 88:21 95:3 99:21 |
| modifications(1) | 88:6 |
| modified(3) | 87:24 126:20 166:23 |
| moment(1) | 143:17 |
| momentarily(1) | 142:23 |
| momentum(1) | 110:3 |
| monday(5) | 75:5 75:6 75:7 76:9 83:19 |
| money(6) | 24:9 25:25 26:13 26:22 56:2 56:14 57:12 58:12 59:4 59:8 60:13 60:15 68:15 68:15 69:4 69:8 69:25 70:12 71:8 75:19 75:20 77:1 77:11 78:22 79:8 87:12 87:12 87:16 88:19 91:20 113:11 113:12 113:14 114:6 115:18 115:19 116:19 117:25 118:2 119:14 119:16 119:16 119:17 122:16 122:17 125:13 132:5 137:17 159:1 162:23 162:25 163:3 163:3 163:5 164:3 164:9 165:15 179:15 183:15 183:22 189:20 |
| money's(1) | 69:19 |
| monies(1) | 88:2 |
| monitor(13) | 4:10 10:10 16:3 31:9 34:18 35:16 35:25 41:2 41:7 41:9 41:11 41:10 |
| monitor's(5) | 13:25 40:25 41:1 41:3 41:10 |
| monitor/cadl(1) | 3:38 |
| monitors(2) | 23:3 50:25 |
| monopoly(1) | 21:7 |
| month(9) | 118:21 121:2 121:2 122:21 129:7 132:7 134:2 134:14 163:19 |
| monthly(2) | 23:25 41:17 |
| moods(5) | 76:1 143:25 |
| moot(6) | 65:9 73:11 74:16 74:23 83:12 136:11 |
| mootness(2) | 74:24 77:17 |
| morawetz(10) | 19:12 26:18 26:24 32:16 52:17 55:8 57:9 61:12 125:24 |
| more(38) | 9:15 11:1 14:24 19:14 25:10 28:18 34:4 34:5 53:4 54:19 55:15 60:8 62:11 62:14 63:2 66:13 71:8 74:1 78:9 78:12 83:2 87:8 87:16 90:4 106:7 106:11 112:9 116:16 144:18 144:21 147:17 151:11 151:16 155:17 163:3 163:6 165:15 186:1 |
| moreover(4) | 65:25 142:9 142:22 157:9 |
| morning(25) | 9:3 9:6 9:7 9:8 9:9 10:6 10:7 10:9 18:25 20:10 20:11 20:18 20:24 29:25 56:25 63:14 63:16 63:17 135:1 136:11 162:14 |
| morris(1) | 6:24 4:16 5:11 9:23 97:5 184:20 |

| Word | Page:Line |
|---|---|
| most(14) | 12:9 24:15 37:10 50:7 59:10 60:10 60:15 60:19 73:10 74:15 79:1 79:4 180:13 180:25 |
| mostly(1) | 19:3 |
| motion(25) | 19:12 10:14 10:18 10:20 11:24 21:19 63:4 68:7 70:19 109:16 112:19 128:2 157:17 157:19 157:22 158:5 158:7 158:22 166:14 168:17 169:5 169:19 176:18 179:7 179:7 |
| motions(6) | 81:14 126:20 126:22 159:4 169:19 169:21 |
| mount(1) | 124:24 |
| move(12) | 27:10 72:2 106:25 112:20 130:18 156:2 157:5 159:15 159:25 159:25 160:8 176:15 |
| moved(2) | 156:10 188:25 |
| moves(1) | 180:5 |
| movie(3) | 123:18 123:18 123:21 |
| moving(5) | 104:23 105:16 107:4 141:11 171:13 |
| much(31) | 12:21 20:1 21:8 24:22 27:19 29:23 39:14 39:22 48:6 50:23 51:20 52:4 57:12 87:16 102:2 103:7 104:21 107:23 108:17 117:10 119:8 126:24 132:16 132:18 135:3 135:3 148:20 162:23 163:2 165:12 179:25 |
| muffled(1) | 67:12 |
| multiple(2) | 141:18 156:10 |
| murphy(1) | 4:11 |
| murrell(1) | 7:21 |
| must(5) | 32:7 51:2 114:6 120:20 184:6 |
| mutual(2) | 65:7 136:4 |
| myers(2) | 99:2 185:13 |
| myself(1) | 30:15 |
| n.w(1) | 2:22 |
| name(5) | 27:14 30:9 108:20 111:3 184:17 |
| narrow(2) | 19:8 153:6 |
| narrowly(1) | 115:5 |
| nature(3) | 56:15 62:10 75:18 |
| nearly(1) | 92:2 |
| necessarily(8) | 44:24 56:9 57:21 61:4 89:21 90:6 92:13 123:21 |
| necessary(9) | 14:1 24:15 31:2 32:9 42:14 111:14 111:18 113:5 143:17 |
| need(24) | 15:21 15:22 15:22 16:25 26:16 28:24 55:20 82:5 85:19 88:21 101:14 118:25 119:8 120:16 121:18 121:20 122:18 128:11 130:14 134:8 134:11 138:24 141:7 179:16 |
| needed(4) | 38:19 53:21 92:1 149:5 |
| needs(2) | 16:14 120:1 |
| neglect(1) | 141:4 |
| negligence(3) | 142:8 153:2 153:2 |
| negotiate(6) | 64:20 64:25 71:20 92:8 149:15 164:17 |
| negotiated(9) | 81:19 95:7 110:5 133:4 149:14 161:14 164:15 182:7 182:16 |
| negotiating(2) | 81:21 163:20 |
| negotiation(6) | 68:20 70:18 81:12 163:11 165:15 165:19 |
| negotiations(10) | 71:22 74:3 81:6 148:4 162:17 163:2 164:7 165:2 183:2 187:14 |
| neither(1) | 161:7 |
| net(2) | 40:18 84:6 |
| networks(8) | 1:8 6:42 7:25 7:28 41:10 41:19 188:15 188:16 |
| never(13) | 37:20 69:4 73:13 91:16 124:3 125:21 127:23 132:4 145:15 169:24 170:7 180:21 185:3 |
| nevertheless(3) | 137:1 138:10 175:3 |
| new(39) | 2:11 2:30 3:8 3:21 3:42 4:26 5:11 5:22 5:28 6:26 7:20 65:10 65:17 75:24 89:4 96:3 96:7 96:19 96:21 126:3 128:7 139:21 146:23 146:23 147:19 148:10 148:24 150:9 158:1 160:6 168:12 168:21 168:23 168:24 169:4 169:7 170:5 174:3 190:13 |
| newbould(128) | 9:5 9:8 9:11 9:14 9:17 9:22 10:4 10:6 10:7 12:11 12:18 12:21 14:5 14:8 15:18 15:25 19:22 20:7 20:11 20:13 22:13 22:16 22:22 22:25 24:19 29:17 29:25 29:25 30:8 31:2 32:9 32:23 33:3 33:8 33:13 33:19 33:23 34:3 34:9 34:15 34:17 35:2 35:7 35:15 39:2 40:1 40:4 40:6 40:10 40:13 40:15 40:19 40:24 42:10 42:13 42:17 43:7 43:13 43:17 43:20 44:2 44:5 44:10 44:20 45:6 45:21 46:2 46:4 46:7 47:11 47:15 47:19 47:23 48:2 48:6 48:9 48:25 49:4 49:7 50:6 50:12 50:15 50:18 51:15 51:19 51:21 52:5 52:12 52:21 54:9 55:5 55:9 56:17 57:1 58:21 58:25 59:2 60:12 62:15 63:13 64:2 64:4 64:6 64:11 64:18 64:21 65:5 66:12 66:16 70:21 70:22 71:1 71:12 73:17 75:3 75:4 80:2 81:6 81:10 86:21 87:5 89:1 89:9 90:6 90:18 90:20 91:3 92:13 92:24 93:15 96:7 96:12 96:20 98:4 99:13 108:16 109:3 109:6 109:7 110:5 111:5 112:1 112:13 114:22 114:23 115:15 115:18 115:20 116:21 116:22 116:23 118:4 118:14 118:19 119:14 120:13 121:9 121:11 121:19 121:21 123:15 123:19 123:20 124:25 127:17 127:21 127:25 128:13 128:14 128:16 129:20 129:23 134:7 138:10 138:11 138:14 139:20 140:1 140:9 141:1 141:6 141:12 142:16 143:9 144:5 144:8 145:7 145:18 145:21 146:24 147:12 147:21 148:2 148:10 148:11 149:14 150:16 151:14 152:12 152:22 152:18 153:14 154:7 154:23 155:11 155:21 157:11 157:15 159:16 161:13 162:23 163:13 164:3 165:15 165:17 169:10 169:13 171:2 175:22 176:9 177:20 178:17 180:9 181:14 181:17 181:18 181:21 182:1 182:12 182:15 183:10 183:14 183:17 185:5 185:18 185:23 187:18 187:21 187:22 187:23 187:25 189:1 189:18 |
| newly(4) | 169:10 169:15 169:24 182:1 |
| newpage(2) | 144:1 147:14 |
| news(1) | 75:4 |
| next(6) | 92:7 101:17 102:6 135:8 155:15 155:16 |
| nichols(3) | 1:24 9:23 184:20 |

| Word | Page:Line |
|---|---|
| nick(1) | 3:26 |
| night(5) | 100:1 101:2 172:22 174:2 174:4 |
| nine(1) | 41:15 |
| ninth(1) | 125:1 |
| niks(1) | 172:23 |
| nnc(6) | 105:19 105:25 108:6 142:1 189:3 190:9 |
| nncc(24) | 4:16 97:10 103:17 107:9 107:11 108:24 109:1 109:16 110:6 113:8 115:22 117:18 125:16 127:12 142:2 150:7 175:13 188:14 188:14 188:18 188:19 189:3 189:4 190:13 |
| nnce's(1) | 188:17 |
| nni(18) | 12:4 73:4 80:8 88:13 103:17 105:19 105:24 109:17 115:17 156:22 157:4 158:24 175:13 182:4 188:14 188:15 188:19 189:4 |
| nni/nncc(1) | 174:21 |
| nniii(7) | 63:6 176:19 176:21 176:25 177:5 189:16 189:18 |
| nniii's(1) | 177:5 |
| nnni(1) | 189:3 |
| nntc(2) | 98:14 98:19 |
| no-brainer(1) | 89:2 |
| no-call(1) | 128:14 |
| nobody(4) | 148:1 154:14 163:12 163:13 |
| nobody's(2) | 154:11 164:18 |
| nominee(1) | 140:2 |
| nominees(5) | 138:22 139:25 140:4 140:5 140:6 |
| non(2) | 147:12 151:7 |
| non-accepting(1) | 175:5 |
| non-disclosure(1) | 112:10 |
| non-estate(6) | 139:16 141:13 141:17 142:11 142:17 143:13 143:16 182:15 182:22 183:6 |
| non-fiduciary(1) | 152:13 |
| non-material(2) | 99:20 100:7 |
| non-nn(1) | 157:5 |
| non-nni(1) | 157:5 |
| none(4) | 28:22 31:20 59:14 152:22 |
| noon(1) | 67:6 |
| nor(3) | 26:8 55:25 56:8 |
| normally(1) | 70:19 |
| norman(1) | 2:44 |
| nortel(56) | 1:8 3:45 6:29 6:42 7:25 7:28 21:11 23:6 23:25 24:6 24:10 26:13 26:13 27:17 28:1 28:20 30:10 30:12 30:22 30:25 31:5 31:9 31:11 34:18 35:16 36:5 36:20 36:25 37:8 37:13 39:1 39:5 39:7 40:9 41:10 41:13 41:15 41:19 45:14 50:25 55:16 57:10 57:25 71:3 75:11 93:24 106:1 162:15 169:12 170:16 175:14 180:13 183:16 188:15 188:16 188:18 |
| nortel's(5) | 10:24 16:6 17:13 35:25 37:8 |
| north(4) | 2:16 2:37 4:41 5:7 |
| northwest(1) | 43:25 |
| not(250) | 11:21 13:11 13:24 14:3 14:13 16:1 16:3 16:5 16:7 16:8 16:15 17:23 18:21 19:12 19:12 20:14 20:20 22:19 23:24 24:22 26:5 26:10 27:1 27:20 28:11 28:16 28:17 28:25 29:14 31:9 32:2 32:5 32:21 32:24 33:15 34:12 34:19 35:17 35:19 35:21 36:12 36:13 36:14 36:14 36:17 37:23 37:24 38:2 38:20 38:22 40:5 42:8 42:25 43:5 43:6 44:4 44:7 44:21 45:3 45:19 45:25 46:5 46:6 46:11 47:12 49:3 49:13 49:14 49:15 49:22 50:19 51:1 51:5 51:7 51:8 51:15 51:16 53:7 53:20 54:4 54:21 55:9 55:17 56:3 56:4 56:8 56:12 56:14 58:24 63:6 64:6 64:8 64:14 66:2 66:16 70:21 70:22 71:1 71:2 71:12 71:17 73:17 73:3 75:4 80:2 81:6 81:10 86:21 87:5 89:1 89:9 90:6 90:18 90:20 91:3 92:13 92:13 92:24 93:15 96:7 96:12 96:20 98:4 99:13 108:16 109:3 109:6 109:7 110:5 111:5 112:1 112:13 114:22 114:23 115:15 116:22 116:23 118:14 118:15 119:14 119:19 119:21 121:9 121:11 121:19 121:21 122:10 122:15 123:11 123:13 123:14 123:15 124:5 127:15 127:21 127:25 128:13 128:14 128:16 129:2 131:24 132:4 134:16 136:19 136:24 137:3 137:23 138:25 139:16 139:20 140:1 140:9 141:6 141:12 142:16 143:9 144:5 144:8 145:7 145:18 145:21 146:24 147:12 147:21 148:2 148:10 148:18 148:20 149:7 149:8 150:16 151:14 152:12 152:22 152:18 153:14 154:23 155:11 155:21 157:15 157:17 165:15 165:17 169:10 169:13 171:2 175:2 176:20 177:5 178:22 178:25 180:6 181:14 181:17 181:18 181:21 182:1 182:12 182:15 183:10 183:14 185:18 185:23 187:18 187:23 187:25 189:1 189:18 |
| not-so-high(1) | 91:17 |
| note(10) | 26:23 33:8 33:9 61:24 81:18 83:17 98:12 112:12 113:17 189:25 |
| noted(6) | 55:8 63:23 68:12 137:23 172:19 180:2 |
| noteholders(10) | 108:24 109:24 110:6 110:10 110:22 111:7 111:15 113:9 113:12 115:22 |
| noteholders'(1) | 111:18 |
| notes(7) | 43:16 47:13 109:1 113:24 142:1 142:2 |
| nothing(11) | 13:10 14:12 19:13 28:24 54:7 56:6 125:1 131:16 139:11 173:5 174:3 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

notice(23) 35:17 35:19 86:8 100:3 100:12 103:15 103:24 104:6 105:4 112:12 137:16 139:3 139:5 139:6 139:11 140:20 147:14 155:17 155:25 156:6 177:8 182:8 182:16

noticed(3) 59:25 153:7 189:14

notices(2) 172:21 182:18

notifications(1) 138:25

notion(1) 53:11

notwithstanding(2) 31:24 141:13

nova(1) 39:18

novel(1) 58:12

november(2) 41:1 181:25

now(76) 11:21 12:13 14:9 15:25 17:14 19:16 24:11 27:6 28:5 33:19 33:24 34:4 36:19 44:4 45:21 45:25 50:6 50:10 51:19 52:13 56:21 59:4 59:14 73:22 75:21 75:24 76:2 76:5 87:6 92:23 94:14 97:10 101:13 106:4 106:25 117:20 119:24 120:16 121:5 121:22 122:7 122:18 122:20 123:12 124:20 125:23 139:14 140:17 149:2 153:7 154:18 155:12 157:2 158:9 159:25 160:6 160:8 163:16 164:21 166:6 169:5 172:7 172:15 174:19 175:7 175:18 176:10 177:2 178:24 180:9 180:10 183:7 185:5 185:7 186:15 189:7

ntcc(60) 61:24 62:14 64:4 66:11 71:3 71:20 71:20 72:7 72:16 73:4 73:11 73:17 73:22 74:15 74:20 74:24 74:25 75:8 75:11 76:5 76:14 76:22 77:22 78:3 78:7 78:10 79:5 81:3 81:10 81:21 81:23 81:24 82:4 82:10 82:17 82:22 83:5 83:8 83:9 83:17 83:24 84:6 86:12 86:16 87:1 90:16 90:19 91:2 96:8 96:17 98:8 100:4 101:1 102:16 103:11 103:15 103:25 104:6 173:11

ntcc's(1) 72:20

number(13) 12:1 21:21 21:22 22:3 22:4 22:5 63:3 67:4 80:3 103:11 111:23 165:14 165:23

numbering(1) 190:19

numbers(4) 23:1 93:9 161:16 164:25

numerous(1) 183:19

o(3)(a)(1) 175:15

oaf(2) 39:23 40:18

object(9) 80:13 90:20 91:3 98:2 109:6 125:13 141:21 166:12 166:18

objected(6) 32:17 122:15 144:17 148:7 148:9 156:4

objectified(1) 31:22

objecting(5) 63:3 64:8 64:12 72:17 100:4

objection(78) 14:3 16:7 62:2 63:13 64:6 64:14 66:16 72:7 73:20 73:22 74:7 74:12 74:19 77:17 80:12 80:23 84:21 85:14 87:9 89:21 90:17 95:11 95:12 96:20 103:4 109:5 109:7 112:13 112:16 113:16 114:14 114:23 115:1 135:9 135:23 136:8 137:12 137:19 139:14 141:15 144:13 146:25 148:12 150:11 151:20 155:15 155:16 156:2 156:7 160:2 160:5 160:7 161:22 165:24 166:13 166:18 169:2 171:6 171:21 171:22 172:1 172:4 172:10 172:10 173:1 181:14 181:14 181:17 181:18 181:19 181:20 181:24 182:2 182:3 182:9 182:18 183:13

objections(28) 62:4 62:11 63:1 63:20 66:17 72:18 73:16 73:18 73:20 73:21 101:18 106:6 125:12 130:18 136:12 145:19 160:1 160:9 166:6 167:9 167:13 171:13 172:20 174:9 181:8 182:11 183:7

objectives(2) 51:9 187:10

objector(2) 12:18 160:15

objectors(13) 15:25 16:4 16:11 17:2 17:6 18:15 19:25 30:6 34:19 52:16 53:15 89:24 160:10

objects(2) 172:8 182:11

obligation(5) 81:20 88:1 139:18 139:21 151:25

obligations(3) 12:5 69:13 84:8

obliged(2) 47:8 48:21

observations(1) 114:12

observed(1) 111:24

observes(1) 114:10

obstacle(1) 72:9

obstructionist(1) 98:4

obtain(2) 165:14 186:12

obtained(1) 17:11

obvious(1) 131:22

obvious(1) 99:14

obviously(43) 20:22 57:3 57:7 59:9 59:18 61:4 67:24 68:8 68:17 69:5 70:3 72:12 73:1 75:2 75:20 77:25 78:4 78:25 79:4 80:1 81:5 82:3 86:6 87:13 87:14 87:18 91:6 92:19 92:22 94:8 95:14 100:3 103:19 109:23 112:8 112:14 114:20 130:24 134:8 147:18 147:25 148:3 149:5

occur(4) 25:16 83:20 118:21 134:5

occurred(2) 81:4 163:16

october(1) 10:22

oddly(1) 144:18

off(12) 67:24 70:7 74:17 74:18 74:21 74:22 77:6 101:21 112:5 120:24 120:24 137:22

offending(1) 49:15

offer(10) 82:7 82:8 82:9 82:13 82:17 82:25 83:1 83:7 157:6 162:18

offered(1) 165:16

offers(1) 100:5

office(11) 62:18 128:5 128:6 128:7 182:10 182:11

officer(3) 62:15 80:8 141:23

officers(2) 136:25 188:23

offices(1) 128:8

official(5) 2:4 6:17 8:24 78:1 90:14

officials(3) 47:7 48:16 48:20

often(3) 60:15 116:13 122:12

okay(50) 9:15 33:7 34:15 35:8 43:13 44:10 44:12 45:12 90:6 101:23 102:21 108:9 118:22 119:13 119:24 120:11 121:24 122:25 124:3 124:18 125:7 125:11 128:11 129:13 129:15 129:23 130:3 130:9 131:13 134:7 134:18 136:9 137:6 151:18 151:12 152:19 159:18 160:12 162:8 172:17 173:13 173:24 174:12 176:3 177:15 179:2 191:2 191:8

old(2) 148:10 183:19

once(11) 38:25 39:4 74:16 84:5 90:3 111:24 129:1 140:5 167:24 180:1 183:15

one(93) 2:9 2:29 4:6 4:40 18:6 19:8 21:7 23:13 23:14 25:22 26:25 28:2 33:11 36:11 40:10 47:17 52:6 52:24 53:4 53:14 53:15 54:2 54:10 54:10 54:17 55:15 55:23 56:6 56:8 57:10 58:3 61:17 68:9 69:25 70:7 70:25 71:10 72:3 73:16 77:5 78:15 80:15 84:23 85:16 86:2 89:25 94:14 94:22 95:11 99:25 100:25 105:17 107:11 107:12 107:15 115:14 119:12 119:12 124:17 130:17 131:17 131:20 132:20 134:19 136:23 138:12 139:21 140:25 144:10 144:13 144:22 147:8 149:11 151:9 157:3 153:3 153:6 160:2 160:5 160:10 160:13 162:19 169:19 170:8 171:16 174:3 188:11 189:12 189:23 189:24 190:7

one-tenth(1) 96:18

ones(8) 21:25 115:9 116:3 124:8 125:6 128:4 128:5 128:6

one's(2) 119:12 122:14

ongoing(2) 18:2 163:22

online(2) 48:3 48:4

only(25) 11:21 25:22 32:1 36:1 38:15 42:21 47:2 48:12 49:24 51:23 73:19 76:8 87:24 87:24 89:25 91:1 111:17 115:3 139:20 151:7 156:21 157:4 168:21 170:4 174:20

ontario(2) 39:15 39:16

onto(1) 174:13

open(5) 18:21 81:6 89:21 89:22 170:16

operate(1) 53:5

operation(1) 105:25

operations(1) 188:19

opgb(1) 39:17

opinion(2) 185:25 186:15

opportunity(6) 52:10 52:11 112:22 116:18 128:25 131:25

oppose(1) 96:7

opposed(4) 80:21 87:13 88:12 147:2

opposing(1) 114:14

opposite(1) 91:1

opt(7) 73:17 33:21 33:24 34:4 138:11 139:16

opted(2) 34:7 37:11

opting(1) 36:12

option(3) 34:17 110:7 119:19 119:20 124:12

order(79) 10:14 10:15 10:17 13:23 14:13 15:23 17:7 17:14 17:24 18:10 18:12 18:14 18:14 18:18 18:19 19:11 19:14 29:2 30:24 31:3 31:5 32:2 32:10 32:16 32:17 33:17 33:20 33:25 34:4 34:6 36:6 45:4 52:15 65:5 65:6 75:10 76:16 81:21 83:18 88:4 88:4 89:7 89:9 97:14 117:21 118:6 119:9 120:3 120:11 130:15 136:23 138:15 138:17 138:18 139:12 139:19 140:7 146:16 170:14 170:16 172:24 174:4 174:19 175:6 175:18 177:1 185:6 188:2 188:3 189:9 189:14 189:16 189:23 190:9 190:11 190:21 190:24 191:11

ordered(1) 116:25

orders(11) 12:3 14:16 20:6 26:25 44:13 61:24 118:20 133:25 179:8 179:9 189:9

ordinarily(1) 107:9

organization(1) 163:15

organize(1) 56:21

original(1) 113:13

originally(2) 87:10 190:10

originated(1) 81:17

other(89) 11:11 12:18 15:18 16:12 16:14 16:25 17:3 22:4 23:21 25:14 26:23 27:9 30:15 34:13 35:23 17:7 38:22 39:19 40:18 48:16 48:20 50:21 51:10 54:6 58:8 62:1 62:21 62:23 62:25 63:25 64:4 64:9 66:16 68:23 68:25 70:3 71:14 72:19 73:3 73:15 73:16 73:19 76:13 78:18 78:23 80:9 83:10 86:5 86:18 87:25 88:5 89:17 89:23 98:6 98:9 103:11 103:16 106:6 107:13 118:3 119:11 119:12 123:15 126:11 128:12 130:18 138:24 149:19 149:25 151:3 152:3 158:6 157:7 158:6 162:15 162:22 163:8 163:12 165:4 169:18 175:15 175:17 176:17 177:12 181:13 185:22 189:1

others(8) 14:21 28:17 55:15 124:6 124:16 126:9 146:7 148:13

otherwise(6) 36:21 46:2 76:19 79:24 98:4 148:12 167:25 178:6

ought(1) 181:11

our(105) 10:14 14:10 14:21 19:4 24:24 25:4 25:8 26:5 30:11 31:10 31:14 34:11 34:11 34:21 35:13 36:23 37:10 37:12 37:20 43:1 44:8 49:18 51:11 53:17 57:11 58:8 58:8 58:17 59:9 59:24 60:5 60:5 60:15 61:8 69:22 71:7 74:4 75:2 75:18 75:19 75:20 75:20 75:23 76:8 77:12 79:8 79:10 87:13 88:14 89:6 90:21 92:6 92:23 93:25 94:19 94:23 97:5 109:1 109:6 109:9 109:22 109:14 111:2 111:9 111:12 112:5 112:13 112:19 114:23 115:20 115:21 121:24 122:17 123:1 123:6 123:18 138:8 141:8 141:22 142:10 144:14 144:22 144:22 144:23 145:14 145:25 146:8 147:1 147:10 148:18 149:5 158:16 163:1 167:7 169:6 173:1 174:8 176:11 181:7 190:14

ours(1) 162:25

ourselves(1) 126:21

out(89) 11:24 13:20 13:25 14:10 14:19 18:19 23:19 24:4 24:5 25:17 25:18 26:18 27:3 33:17 33:21 33:24 34:4 34:7 36:12 39:17 39:18 46:7 48:5 52:16 55:14 59:8 65:10 67:13 70:12 75:8 79:10 79:14 83:7 88:4 88:5 93:15 100:1 100:6 114:1 119:22 119:24 120:1 120:4 120:10 122:7 122:16 123:20 123:22 124:5 124:11 124:14 124:15 124:24 126:5 131:11 132:9 132:12 138:2 138:11 138:15 138:19 139:12 139:17 139:20 140:5 142:21 143:6 146:6 151:3 151:6 151:9 152:25 158:25 161:16 163:3 163:10 163:17 170:17 171:7 174:1 174:13 184:5 185:13 190:20 190:21

out-of-pocket(1) 37:24

outcome(6) 25:21 28:16 37:13 92:24 109:22 186:1

outlined(4) 24:19 26:5 69:22 110:10

outlining(1) 150:9

outs(1) 142:8

outset(4) 17:7 91:18 91:24 92:25

outside(2) 75:15 86:24

outstanding(1) 96:19

over(40) 25:13 38:10 38:10 53:25 59:13 59:16 60:11 60:25 63:9 64:2 65:19 75:17 79:15 82:5 92:1 109:13 110:11 110:14 110:19 111:14 111:22 119:23 121:15 121:16 123:8 127:13 135:12 140:2 144:23 145:2 145:3 149:2 157:24 163:18 165:11 166:21 172:16 178:5 183:15 183:16

overdue(1) 14:24

overlap(1) 42:1

overly(1) 45:11

override(1) 46:25

overriding(1) 14:18

overrule(1) 182:2

overruled(7) 137:13 141:15 161:23 166:19 172:11 182:9

overwhelming(1) 11:25

overy(1) 3:38

owed(3) 36:13 37:7 163:14

own(17) 37:12 56:4 57:11 58:8 58:18 58:20 59:24 60:5 75:20 77:16 87:9 97:19 121:12 145:14 149:5 151:17

owner(1) 158:8

o'connor(1) 3:18

p.a(1) 2:42

p.c(4) 3:11 3:17 5:33 6:45

p.m(6) 67:9 106:16 106:16 178:14 178:14 191:23

pachulski(1) 3:32

packages(2) 138:21 140:5

page(10) 21:23 22:3 111:13 111:12 114:10 114:13 170:5 170:12 187:9

pages(2) 22:4 173:4

paid(23) 12:9 13:10 23:25 27:3 28:8 31:1 37:12 39:10 39:11 41:14 76:22 83:17 120:6 120:11 134:10 138:24 142:22 142:25 149:7 163:6 163:9 163:22 180:12 182:5

paper(4) 46:14 46:16 47:24 48:3

papers(9) 61:22 111:1 111:10 121:12 143:23 144:22 144:23 147:10 147:11

par(1) 125:5

paragraph(24) 13:4 14:11 14:21 16:23 18:1 24:19 42:21 42:25 43:1 45:8 51:5 51:6 51:8 54:18 142:21 170:12 174:14 174:18 175:6 175:10 175:17 175:21 189:13 190:8

paragraphs(7) 13:20 14:17 17:15 18:1 142:25 55:6

paramount(7) 70:23 88:25 90:22 99:15 185:19 186:17 186:19

pardon(3) 22:23 39:1 153:2

parents(1) 37:16

pari(13) 12:25 15:8 15:14 15:18 15:19 16:20 17:23 18:7 18:9 18:13 53:8 53:8 69:23

parities(1) 128:11

park(3) 2:9 2:29 3:27

parked(1) 69:25

parliament(6) 43:23 43:24 46:18 46:21 47:2 48:12

part(26) 20:22 23:6 64:15 68:6 69:17 69:18 71:1 71:7 71:2 75:18 75:19 80:4 81:9 81:25 84:9 96:12 100:25 126:4 136:4 138:7 148:11 148:15 156:20 163:22 176:19 182:14

partially(1) 17:12

participants(4) 146:4 161:5 161:18 164:16

participate(5) 81:11 126:1 128:1 149:23 163:25

participated(2) 70:16 87:2

participating(2) 83:4 108:8

participation(2) 143:9 161:21

particular(8) 42:2 68:23 83:18 87:19 96:20 115:7 142:12 182:23

particularly(6) 28:5 71:8 72:11 139:23 144:24 184:2

parties(34) 13:5 45:15 49:17 60:3 60:24 63:3 63:3 68:13 75:10 75:11 75:17 89:12 93:17 98:6 101:11 107:16 109:10 109:13 112:10 112:20 126:1 126:4 128:12 142:3 143:10 147:21 148:14 150:20 156:5 164:15 177:4 179:17 183:23 184:3

partner(1) 85:7

partners(2) 62:17 85:7

parts(1) 160:23

party(39) 63:3 64:7 6:41 6:49 7:7 7:19 7:24 7:33 7:36 7:40 7:44 8:4 8:8 8:12 8:16 8:20 71:1 71:17 72:12 72:17 73:19 81:10 81:15 83:11 100:4 113:11 114:14 114:15 115:7 121:25 123:15 127:24 146:3 147:20 147:21 147:23 148:4 148:11 176:20

party-in-interest(1) 148:8

party's(1) 115:16

pass(1) 177:1

passed(4) 38:20 57:5 74:20 177:2

passu(13) 12:25 15:8 15:14 15:18 15:19 16:20 17:23 18:7 18:10 18:13 53:8 53:8 69:23

past(3) 75:15 90:3 160:6

patience(2) 170:18 171:7

patrick(2) 2:43 7:37

patterson(6) 4:23 6:25 97:4 117:17 122:23 150:6

pause(1) 85:24

pawns(1) 180:5

pay(11) 25:9 108:3 113:12 114:7 119:21 119:24 120:4 122:3 122:12 163:3 165:15

payable(1) 110:17

paying(4) 122:4 122:8 132:24 132:25

payment(10) 12:8 27:6 30:20 40:20 40:22 76:18 78:15 88:3 90:19 99:18

payments(16) 12:2 12:4 12:23 13:19 17:12 18:6 21:11 23:23 23:23 23:24 24:2 25:16 27:1 41:16 41:17 82:17

phgc(7) 2:20 127:7 171:22 171:23 181:16 181:16 181:23

peace(2) 60:13 75:24

peers(1) 37:16

peg(1) 6:38

penalize(1) 120:13

pendency(1) 116:18

pending(6) 65:9 65:15 65:21 99:5 149:12 157:17

pennsylvania(2) 1:44 153:13

penny(6) 88:14 88:15 88:17 88:17 120:6 149:8

pension(25) 2:20 3:11 5:33 8:13 22:10 24:5 24:7 24:9 24:10 24:11 24:12 25:13 39:12 39:13 39:14 39:18 40:8 40:12 40:20 40:23 41:18 58:13 163:14 163:22 168:24

pensioner(1) 40:4

pensioners(16) 13:2 21:2 21:8 21:22 22:3 22:11 27:4 39:11 39:11 39:14 39:18 39:19 39:20 39:22 55:13 180:14

pensions(3) 21:3 21:8 163:13

people(59) 12:12 18:4 21:1 21:3 21:9 23:3 23:8 24:8 24:10 26:13 26:18 27:2 27:3 27:3 27:5 27:7 27:10 28:7 28:14 28:23 54:19 55:11 55:13 55:17 56:2 56:7 70:16 72:14 76:11 78:1 79:22 80:3 89:23 99:17 101:5 101:8 133:23 151:2 151:4 151:14 152:17 152:17 162:14 162:15 162:20 162:22 179:16 180:10 180:13 183:16

people's(2) 1:21

per(7) 37:18 39:10 39:18 63:21 113:20 113:22 161:13

percent(36) 11:9 12:1 12:11 20:23 21:9 30:22 37:6 37:10 37:11 37:13 37:17 38:4 38:5 39:15 39:19 39:20 56:11 56:11 93:8 93:11 94:25 95:6 96:5 96:18 108:25 119:22 119:22 119:25 119:25 120:4 120:10 140:7 157:24 163:21 182:5

percentage(2) 13:19 99:21

perform(2) 82:2 84:7

| Word | Page:Line |
|---|---|
| performed(1) 111:4 | |
| performing(1) 41:6 | |
| perhaps(4) 12:15 113:7 133:4 138:3 | |
| period(9) 110:25 111:5 111:22 111:23 112:7 112:8 112:15 126:14 179:25 | |
| periods(1) 45:19 | |
| permit(1) 65:12 | |
| permitted(1) 24:7 | |
| permitting(1) 53:7 | |
| pernick(1) 2:44 | |
| perseverer(1) 60:25 | |
| person(3) 37:22 46:22 60:7 | |
| personal(2) 28:13 45:17 | |
| personally(1) 49:2 | |
| persons(4) 38:22 45:14 53:21 180:14 | |
| perspective(1) 11:1 11:6 16:9 | |
| peter(2) 3:33 46:17 | |
| petition(2) 122:22 176:21 | |
| phase(1) 109:5 | |
| phil(1) 135:9 | |
| philip(2) 1:34 135:21 | |
| phillip(1) 5:38 | |
| phone(15) 57:19 62:2 67:15 67:18 73:21 86:15 89:18 90:1 97:21 131:10 132:14 132:15 160:13 160:15 171:18 | |
| phrased(1) 181:15 | |
| phrases(1) 42:25 | |
| phrasing(1) 123:6 | |
| physical(1) 31:17 | |
| picked(3) 78:25 79:2 126:6 | |
| picketing(1) 49:12 | |
| pie(1) 68:17 | |
| piece(3) 26:23 94:14 94:22 | |
| pieces(2) 68:24 70:10 | |
| piggybank(2) 75:21 79:9 | |
| pilkington(4) 46:12 46:18 47:14 52:8 | |
| pinckney(2) 5:4 5:6 | |
| piper(3) 5:25 7:7 41:13 | |
| pitched(2) 122:4 125:6 | |
| pittman(1) 41:3 | |
| place(11) 15:23 17:25 18:18 73:1 89:11 89:12 110:14 112:9 113:6 117:23 118:2 125:22 141:3 | |
| placed(1) 30:24 | |
| plaguing(1) 10:24 | |
| plan(226) 10:13 10:19 10:20 11:5 11:7 11:17 11:18 11:19 11:21 11:24 12:2 12:17 12:25 13:4 13:16 13:23 14:10 14:16 14:25 15:2 15:8 15:21 15:22 16:12 17:9 17:18 17:18 17:22 18:9 18:13 21:14 21:15 24:5 24:7 24:10 25:14 25:20 25:23 26:9 26:11 26:12 27:9 27:13 27:18 28:4 29:2 29:11 29:16 29:22 30:1 30:12 30:25 31:11 36:5 36:9 36:16 36:20 36:25 37:1 39:7 40:8 40:19 45:14 51:3 53:7 53:8 57:4 60:10 62:13 62:18 62:21 63:5 63:6 65:8 67:25 68:1 68:1 68:4 68:7 69:21 70:13 70:25 71:21 72:18 73:5 73:18 74:22 75:15 75:22 76:3 76:4 76:15 76:25 77:17 77:20 77:22 78:10 79:8 81:23 83:8 83:13 83:17 84:3 84:5 84:8 86:13 86:17 86:24 87:11 87:15 87:23 87:24 87:25 88:4 88:7 88:8 88:11 88:18 88:21 88:22 89:3 89:8 90:4 91:5 92:20 93:17 94:3 94:5 95:4 95:15 96:22 96:23 97:13 98:21 99:20 100:19 101:2 102:7 103:12 104:3 104:11 104:14 104:24 105:3 105:18 106:7 107:1 107:19 109:2 109:4 109:7 109:9 109:21 109:25 110:18 133:24 116:15 119:3 124:17 127:4 130:22 133:24 134:5 137:2 137:25 138:1 138:11 143:6 143:8 143:14 148:22 149:14 149:15 152:18 156:5 156:7 157:20 160:23 161:17 163:15 166:12 166:13 166:18 167:12 167:20 168:1 176:16 171:24 172:11 174:9 174:10 174:18 174:21 174:24 175:1 175:3 175:15 175:20 175:23 176:12 176:13 176:17 176:17 176:20 176:25 177:3 177:5 181:16 181:18 181:20 185:6 185:9 186:23 186:24 187:6 187:18 187:14 187:17 187:22 187:23 187:25 189:18 190:11 191:11 | |
| planning(1) 66:21 | |
| plans(4) 24:5 39:14 60:17 189:21 | |
| plan's(3) 136:13 136:18 141:12 | |
| play(3) 15:4 87:23 124:5 | |
| playing(2) 119:18 154:18 | |
| plaza(1) 2:29 | |
| pleading(2) 113:18 146:1 | |
| pleadings(2) 68:17 114:19 | |
| please(12) 9:2 32:13 34:2 40:2 43:19 67:10 74:22 74:25 105:20 106:17 164:13 178:17 | |
| pleased(6) 29:15 57:22 162:4 179:16 183:11 188:1 | |
| pleasure(1) 117:7 | |
| plenty(1) 149:24 | |
| pocket(1) 79:14 | |
| pockets(3) 26:1 26:22 93:4 | |
| podium(9) 9:21 9:25 100:20 107:16 116:4 135:12 137:3 143:15 172:15 | |
| pohl(1) 4:4 | |

| Word | Page:Line |
|---|---|
| point(48) 17:22 18:23 19:16 25:17 25:18 26:19 51:10 52:16 53:10 54:10 54:22 60:12 63:11 64:13 66:21 66:25 73:24 79:4 83:7 97:12 101:6 107:15 109:12 111:8 111:10 111:19 113:4 113:7 114:20 114:25 115:14 116:4 118:16 120:23 128:19 131:23 132:4 141:11 141:11 143:15 148:25 151:8 154:10 163:13 167:6 172:19 180:2 181:22 | |
| pointed(3) 26:18 72:2 151:9 | |
| points(16) 19:19 47:18 50:22 50:23 50:24 51:12 79:24 80:21 91:17 91:17 128:22 129:1 149:20 162:9 163:23 165:4 | |
| pointstate(2) 107:6 108:22 | |
| poker(1) 76:6 | |
| pops(1) 176:5 | |
| population(2) 22:22 22:24 | |
| portion(2) 79:2 91:3 | |
| position(11) 21:13 23:12 23:13 29:6 35:25 49:18 51:11 63:19 83:10 108:15 169:11 | |
| positions(3) 13:13 13:14 23:6 | |
| possibilities(1) 186:4 | |
| possibility(2) 99:11 186:13 | |
| possible(8) 24:17 26:1 44:21 55:18 65:13 99:17 156:3 184:14 | |
| possibly(1) 154:14 | |
| post-filing(2) 15:6 15:17 | |
| post-petition(5) 13:12 15:12 156:14 156:25 158:23 | |
| potential(2) 125:17 158:17 | |
| potentially(3) 76:3 88:2 127:13 | |
| power(2) 38:22 88:22 | |
| power(7) 14:19 32:2 44:22 44:23 45:4 46:25 74:15 | |
| powers(4) 32:1 35:9 44:16 45:3 | |
| ppearances(5) 1:22 2:1 3:1 4:1 5:1 | |
| ppi(5) 124:2 124:3 125:3 126:13 128:15 | |
| practicable(1) 64:19 | |
| practical(2) 26:19 90:19 | |
| practice(1) 112:19 | |
| practitioners(1) 37:25 | |
| pragmatic(1) 23:10 | |
| pre(1) 37:8 | |
| pre-petition(4) 156:14 157:18 158:14 158:17 | |
| preceded(2) 120:15 121:8 | |
| precedent(4) 138:4 138:7 138:14 141:19 | |
| precision(1) 110:9 | |
| precluded(1) 112:14 | |
| predicated(1) 16:20 | |
| prefer(2) 19:25 173:6 | |
| preferential(4) 13:14 63:25 86:17 182:6 | |
| preferentially(1) 98:8 | |
| prejudicing(1) 115:7 | |
| preliminary(1) 112:19 | |
| premeditated(1) 123:23 | |
| premises(1) 49:13 | |
| prepared(5) 62:16 62:18 66:12 72:10 79:17 | |
| prepayments(1) 24:8 | |
| prescient(1) 114:24 | |
| present(4) 50:17 117:1 130:1 142:16 | |
| presentation(6) 10:2 31:10 44:8 44:9 50:10 176:11 | |
| presentations(2) 108:11 180:23 | |
| presented(1) 68:20 | |
| presenting(1) 143:8 | |
| presents(1) 173:10 | |
| preservation(1) 70:2 | |
| preserve(1) 38:2 | |
| preserved(1) 57:13 | |
| preserves(4) 12:7 12:10 84:1 84:2 | |
| press(3) 62:4 73:13 158:10 | |
| pressing(4) 61:25 63:13 90:25 136:8 | |
| pressure(2) 74:24 87:6 | |
| preston(2) 2:14 184:25 | |
| pretty(6) 51:20 54:24 76:17 79:3 89:16 126:24 | |
| prevent(2) 99:12 113:14 | |
| prevented(1) 140:16 | |
| preventing(1) 15:17 | |
| previous(2) 22:3 161:21 | |
| previously(12) 63:22 63:22 65:20 98:7 100:4 136:3 142:9 144:25 146:6 158:10 165:5 172:25 | |
| price(2) 25:9 57:23 | |
| prices(1) 91:22 | |
| pricing(1) 59:16 | |
| primary(1) 72:17 | |
| principal(5) 45:10 62:15 80:8 136:25 141:23 | |
| principle(4) 15:14 15:16 16:20 53:3 | |
| principles(4) 18:18 19:2 31:23 61:5 | |
| printed(1) 174:1 | |
| printing(1) 189:24 | |
| prior(10) 11:16 12:3 14:14 16:22 17:24 61:3 61:24 82:6 82:9 100:5 | |
| priorities(1) 18:3 | |
| priority(6) 12:2 12:3 12:23 17:23 18:8 64:5 | |
| private(10) 37:21 45:14 45:15 49:14 49:16 49:23 53:12 54:16 54:20 54:25 | |
| privilege(1) 81:5 | |

| Word | Page:Line |
|---|---|
| pro(9) 12:24 12:25 15:8 15:19 23:13 69:23 84:4 87:15 87:23 | |
| pro-rata(3) 126:19 126:20 167:21 | |
| probability(4) 99:4 99:6 185:17 185:21 | |
| probably(7) 19:5 23:14 46:7 46:8 53:13 59:14 88:17 | |
| problem(4) 90:20 91:2 159:24 178:25 | |
| procedural(1) 109:24 | |
| procedure(3) 117:22 118:1 138:12 | |
| procedures(14) 110:10 112:10 113:9 115:2 115:4 115:22 125:19 137:14 137:21 138:9 138:15 139:22 141:3 141:8 | |
| proceed(16) 17:12 44:11 61:20 62:9 62:25 66:4 66:6 75:1 75:12 79:19 80:20 80:24 83:13 85:4 86:3 86:4 | |
| proceeded(1) 57:24 | |
| proceeding(6) 16:22 80:22 91:11 91:13 91:18 156:24 | |
| proceedings(14) 1:18 1:48 9:18 9:19 10:1 11:13 17:8 52:15 73:10 105:9 109:6 110:4 148:6 192:4 | |
| proceeds(19) 10:16 11:10 11:15 57:24 59:12 64:22 65:2 68:20 69:10 78:17 82:17 82:22 88:19 99:13 99:16 177:6 186:18 187:15 187:18 | |
| process(21) 27:19 32:10 81:7 81:25 92:17 98:4 98:7 110:13 110:14 112:16 114:8 114:9 114:17 114:19 114:21 118:9 123:24 136:18 168:11 180:18 182:17 | |
| processes(3) 36:7 36:10 36:11 | |
| produced(1) 1:49 | |
| producing(1) 113:24 | |
| profession(1) 185:3 | |
| professional(1) 183:21 | |
| professionals(3) 111:22 119:21 120:10 | |
| proffer(7) 62:19 79:23 80:21 80:23 84:22 84:25 | |
| proffered(1) 84:19 | |
| proffering(1) 80:10 | |
| profits(1) 188:25 | |
| program(1) 39:17 | |
| prohibit(1) 147:12 | |
| promises(1) 87:15 | |
| prompt(1) 25:16 | |
| promptly(1) 159:15 | |
| proof(4) 114:10 156:18 157:24 158:22 | |
| proofs(1) 156:15 | |
| proper(2) 139:3 167:12 | |
| property(2) 111:22 141:16 | |
| property(1) 59:15 | |
| proponent(3) 63:7 176:20 189:19 | |
| proponents(1) 104:11 | |
| proposal(1) 82:19 | |
| propose(6) 62:9 66:17 66:15 79:19 136:23 158:12 | |
| proposed(13) 65:5 80:20 97:14 118:6 119:1 119:3 174:6 174:14 174:19 175:17 185:8 187:6 187:11 | |
| proposing(1) 66:9 | |
| prosecutorial(1) 47:8 | |
| prosecutors(3) 47:6 48:19 48:24 | |
| prospect(1) 48:17 | |
| prospects(1) 91:20 | |
| protect(9) 17:10 26:16 87:17 111:15 111:18 113:10 113:11 113:13 115:6 | |
| protected(2) 31:18 148:21 | |
| protection(4) 39:13 53:19 54:8 183:17 | |
| protections(5) 41:25 42:6 70:4 70:7 71:18 | |
| protested(1) 139:23 | |
| protocol(3) 64:21 126:2 126:5 | |
| proud(1) 187:5 | |
| prove(1) 157:3 | |
| provide(13) 14:25 28:23 37:22 53:20 64:3 64:17 81:2 81:7 82:14 94:20 137:17 148:23 179:11 | |
| provided(12) 18:8 29:5 33:20 54:1 113:13 137:17 139:3 139:5 141:22 142:19 149:4 177:9 | |
| provides(14) 11:1 11:14 11:17 12:2 11:13 36:23 108:2 113:24 133:25 152:24 186:1 187:18 188:3 | |
| providing(5) 11:9 47:1 48:11 139:10 187:2 | |
| provinces(2) 24:7 39:19 | |
| provincial(5) 24:3 47:2 48:12 | |
| proving(1) 133:7 | |
| provision(11) 35:2 42:9 44:15 71:19 78:10 136:18 137:1 148:22 152:22 188:7 189:12 | |
| provisions(14) 18:11 34:24 44:17 91:19 137:7 141:12 141:16 141:22 142:7 143:24 148:19 149:14 149:15 187:5 | |
| prudential(1) 65:9 | |
| public(3) 24:5 36:1 49:23 | |
| publication(5) 137:16 139:3 139:10 140:20 182:18 | |
| publications(1) 139:10 | |
| published(2) 139:6 139:8 | |
| pullen(1) 5:40 | |
| punish(1) 119:10 | |
| purely(1) 49:16 | |
| purpose(5) 31:6 76:20 188:17 | |
| purposes(5) 27:24 32:1 35:9 44:15 104:7 | |
| pursuant(5) 27:24 32:1 35:9 44:15 104:7 | |

| Word | Page:Line |
|---|---|
| push(2) 76:4 134:9 | |
| pushed(3) 92:1 138:21 139:24 | |
| pushes(1) 140:22 | |
| put(40) 11:5 17:24 23:10 25:25 25:25 62:10 62:18 62:24 68:15 68:21 70:10 74:1 74:17 74:17 74:21 74:22 77:14 79:16 81:13 82:3 87:12 87:23 102:8 105:21 106:2 115:1 117:23 118:2 118:24 124:17 140:12 140:21 140:22 145:5 145:11 145:25 162:24 163:1 167:23 | |
| puts(4) 25:20 26:21 27:6 83:2 | |
| putting(3) 76:2 93:3 110:14 | |
| puzzle(1) 68:24 | |
| pw(5) 142:15 147:12 152:7 152:9 182:24 | |
| qualify(1) 16:17 | |
| quarter(2) 66:7 88:17 | |
| queen(1) 180:7 | |
| question(23) 32:13 33:1 33:14 34:1 34:19 35:6 35:17 35:20 40:2 43:7 43:18 61:25 63:10 87:22 101:4 111:3 131:18 132:22 131:25 132:21 143:3 162:8 186:3 | |
| questionable(1) 150:22 | |
| questioned(1) 92:21 | |
| questions(7) 13:21 20:5 61:13 116:5 127:19 146:14 149:25 | |
| quick(1) 162:16 | |
| quickly(9) 56:14 99:16 105:17 114:21 116:16 118:24 119:6 156:3 159:13 | |
| quinn(1) 3:4 | |
| quite(17) 19:5 28:15 54:3 59:13 60:22 61:2 67:1 68:5 74:5 83:1 86:11 86:21 87:4 89:1 89:11 162:21 163:4 | |
| quote(3) 42:22 47:14 63:24 | |
| quoted(1) 16:22 | |
| qureshi(2) 2:8 184:23 | |
| r-a-v-n-d-a-h-l(1) 54:12 | |
| raise(6) 32:19 32:24 33:10 131:25 167:12 171:21 | |
| raised(12) 11:7 54:11 72:19 73:4 87:9 107:10 109:3 110:2 111:1 113:16 171:2 183:19 | |
| raising(2) 33:10 181:24 | |
| range(3) 47:3 48:14 186:4 | |
| ranges(1) 88:22 | |
| ranging(1) 41:18 | |
| rata(9) 12:24 12:25 15:8 15:19 23:14 69:23 84:4 87:15 87:23 | |
| ratable(1) 15:19 | |
| ratably(2) 13:6 16:21 | |
| rate(1) 38:11 | |
| rather(7) 22:21 27:5 79:10 80:19 84:1 88:19 89:15 | |
| ratio(1) 30:21 | |
| ravndahl(1) 54:11 | |
| ray(18) 62:15 66:12 79:17 80:6 80:8 80:23 81:1 81:9 81:18 82:3 82:8 83:6 83:22 84:14 84:16 84:17 85:3 105:22 | |
| ray's(4) 80:14 80:19 84:11 106:2 | |
| raylor(1) 42:24 | |
| ray's(1) 142:20 | |
| re-litigate(1) 167:24 | |
| reach(3) 24:12 64:20 65:1 | |
| reached(8) 24:8 45:15 60:11 83:19 98:6 145:4 145:7 183:14 | |
| reaches(1) 54:2 | |
| reaching(1) 179:18 | |
| read(18) 20:1 20:1 43:8 45:8 48:13 51:2 53:3 53:4 53:6 163:20 169:19 169:20 173:8 173:14 174:19 175:10 175:18 178:9 | |
| reading(5) 42:14 45:22 47:12 50:7 134:19 | |
| ready(10) 9:9 14:24 14:24 56:24 67:19 67:22 106:20 125:18 143:5 178:15 | |
| real(5) 7:33 59:25 59:25 93:3 180:4 | |
| reality(1) 124:5 | |
| realize(2) 57:20 115:8 | |
| realized(4) 11:15 57:13 57:23 91:25 | |
| really(39) 14:17 19:6 19:25 24:18 53:5 54:4 54:5 57:25 60:24 61:1 68:1 68:4 68:20 70:11 72:17 75:8 79:7 89:4 89:9 107:11 107:21 119:20 122:8 123:17 123:3 123:5 126:7 130:17 145:24 31:21 38:7 48:23 93:18 108:5 110:11 110:17 111:14 112:1 113:13 113:25 119:7 119:20 120:12 120:21 122:18 133:3 186:2 186:4 | |
| reappear(1) 106:19 | |
| reason(9) 28:24 32:22 68:21 104:9 143:11 151:15 152:5 169:14 182:5 | |
| reasonable(23) 14:16 16:13 24:24 35:21 38:7 48:23 93:18 108:5 110:11 110:17 111:14 112:1 113:13 113:25 119:7 119:20 120:12 120:21 122:18 133:3 186:2 186:4 | |
| reasonableness(13) 14:19 111:12 113:20 113:22 113:23 114:4 114:6 114:9 117:23 120:17 121:22 128:20 133:5 | |
| reasonably(2) 48:23 64:19 | |
| reasoned(1) 42:2 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| reasons(19) 13:20 16:10 31:9 42:23 96:16 99:19 99:23 104:8 106:2 118:24 122:2 158:7 166:19 167:8 177:10 177:12 179:7 179:11 183:14 | | releases(14) 11:14 136:4 136:13 137:10 137:24 137:25 138:11 139:4 146:10 150:21 177:7 182:12 182:16 182:19 | | respectfully(7) 110:23 113:10 113:21 114:5 114:17 115:4 152:8 | | rule(26) 15:19 45:19 46:11 65:12 65:23 68:7 88:7 97:17 98:23 98:25 99:19 99:20 99:22 104:8 104:18 129:22 130:22 174:8 174:10 177:11 177:22 178:13 181:8 183:8 188:11 191:1 |
| recall(1) 144:11 | | relevant(10) 19:10 38:22 65:20 71:3 94:15 114:25 148:19 161:8 161:17 168:19 | | respectively(1) 147:7 | | ruled(3) 65:21 119:15 185:15 |
| receive(10) 40:22 57:21 88:3 93:7 93:11 99:16 137:20 138:24 167:21 183:23 | | relied(3) 49:15 50:3 126:9 | | respects(1) 179:13 | | rules(1) 59:16 |
| received(10) 24:22 28:3 38:15 41:8 41:12 112:12 138:9 158:17 165:12 187:10 | | relief(5) 57:6 62:23 115:9 116:4 181:22 | | respond(3) 116:1 143:17 165:8 | | ruling(1) 131:17 |
| | | relieved(1) 179:19 | | responded(1) 28:3 | | run(9) 75:14 75:15 88:9 123:13 125:14 141:1 152:2 152:2 170:17 |
| receiving(5) 13:11 24:1 26:3 150:21 177:5 | | rely(3) 27:5 40:17 43:2 | | responding(2) 135:23 158:11 | | running(4) 75:16 75:24 124:16 171:7 |
| recent(1) 157:12 | | remaining(1) 31:7 | | response(5) 92:23 107:8 150:10 170:23 177:19 | | runs(2) 125:2 125:4 |
| recently(4) 62:14 151:13 162:15 170:7 | | remains(1) 24:21 | | responses(1) 106:25 | | runway(1) 134:11 |
| recess(10) 67:8 67:9 101:6 101:7 101:9 106:15 106:16 178:13 178:14 191:20 | | remarks(5) 98:16 137:3 178:4 179:6 181:4 | | rest(7) 64:8 108:6 102:6 104:25 122:5 140:24 | | rwdfu(1) 49:10 |
| | | remedy(7) 46:14 47:25 52:20 52:21 54:16 54:16 184:13 | | restricted(1) 127:16 | | sabine(1) 65:16 |
| recipients(1) 53:24 | | remember(2) 156:16 183:20 | | result(26) 28:19 28:22 32:3 45:4 50:4 65:22 91:21 92:22 119:16 126:17 139:18 145:2 165:18 173:11 179:14 184:13 | | safe(1) 133:7 |
| recitation(1) 142:23 | | remind(1) 102:17 | | | | safety(1) 40:18 |
| reckmeyer(14) 7:12 63:14 63:15 63:17 64:10 86:14 89:18 89:25 90:8 97:21 97:22 97:24 97:25 98:17 | | remiss(1) 183:10 | | | | saga(1) 179:14 |
| | | remming(2) 1:26 184:19 | | resulted(6) 36:7 58:23 72:13 92:12 110:5 187:13 | | said(36) 19:5 19:11 33:9 33:16 34:7 50:20 50:21 60:17 65:11 71:6 72:3 73:7 74:14 74:21 90:21 91:18 92:23 102:6 106:7 121:17 123:4 124:21 147:10 151:11 151:12 151:13 152:6 152:10 154:20 163:3 169:12 178:9 179:15 180:3 180:19 190:10 |
| reclassify(2) 161:12 182:3 | | remove(2) 74:12 185:11 | | resulting(1) 81:8 | | |
| recognition(1) 63:5 | | removed(1) 186:12 | | results(8) 25:15 31:19 37:2 57:22 60:21 60:21 102:8 187:10 187:14 | | |
| recognize(6) 61:11 98:25 145:1 180:10 184:6 184:17 | | render(1) 65:9 | | | | |
| recognized(3) 15:9 77:13 147:11 | | rendered(2) 15:11 189:2 | | resume(2) 67:5 106:5 | | |
| recognizing(7) 72:7 80:3 81:4 83:8 93:25 145:22 172:22 | | renders(1) 65:5 | | retain(2) 62:8 65:14 | | sale(20) 10:16 23:6 57:22 58:1 59:11 64:22 64:23 64:24 65:1 65:2 69:10 99:3 99:16 125:10 177:6 186:6 186:18 186:22 187:15 187:18 |
| | | renew(1) 139:18 | | retained(1) 66:3 | | |
| reconcile(2) 41:25 78:11 | | reorg(2) 6:33 6:34 | | retainer(4) 168:20 170:1 170:4 170:5 | | sales(3) 92:1 92:4 93:1 |
| reconciling(1) 41:22 | | reorganization(1) 15:4 | | retainers(1) 27:24 | | saltzstein(1) 4:39 |
| reconsideration(14) 18:16 18:17 18:21 19:1 19:2 19:9 19:13 30:17 31:4 81:14 124:2 126:21 128:1 164:18 | | reorganize(1) 183:18 | | retention(1) 41:14 | | same(24) 13:19 15:3 21:13 22:22 22:24 37:21 39:20 42:25 48:22 59:6 63:5 77:2 78:18 82:18 89:11 126:14 138:23 139:10 144:3 144:7 156:24 158:5 188:23 |
| | | repay(1) 88:2 | | retire(3) 98:22 177:20 177:23 | | |
| reconsidered(1) 18:15 | | repeatedly(1) 68:18 | | retiree(1) 182:4 | | |
| reconsidering(1) 19:6 | | repetition(1) 19:23 | | retirees(4) 27:16 27:25 58:9 180:14 | | |
| record(36) 10:15 10:18 10:20 11:24 21:20 21:23 57:1 72:25 74:2 77:20 86:6 86:10 94:3 96:9 97:25 102:4 102:8 105:4 105:5 105:10 116:18 116:19 135:21 136:10 145:5 149:24 164:25 169:15 173:8 173:15 174:13 177:13 177:13 178:1 179:7 190:7 | | replace(5) 158:4 166:14 169:7 170:14 170:16 | | retirement(3) 24:8 24:12 41:19 | | samis(2) 2:15 184:24 |
| | | replaced(1) 166:23 | | return(2) 141:2 146:10 | | sanction(10) 10:13 10:19 11:19 13:23 14:10 27:9 29:16 29:22 30:1 96:2 |
| | | reply(7) 20:4 46:1 47:17 50:25 52:13 115:12 137:23 | | returned(5) 136:15 137:11 139:15 182:13 182:20 | | |
| | | reponses(1) 172:20 | | review(1) 163:24 | | |
| | | req(2) 14:1 21:20 21:21 40:25 41:1 41:11 84:15 165:12 175:8 175:11 175:11 179:4 | | reviewing(2) 79:18 185:8 | | sanctioned(2) 11:17 11:18 |
| record-breaking(1) 58:1 | | | | revised(2) 30:18 37:2 | | sanctioning(1) 26:9 |
| recorded(2) 1:48 18:11 | | | | rick(1) 1:36 | | sanjana(1) 6:34 |
| recording(2) 1:48 192:3 | | represent(11) 27:15 27:16 27:20 27:25 27:25 28:6 94:24 94:25 96:5 97:9 168:21 | | ridiculous(1) 163:21 | | sara(1) 3:12 |
| records(2) 114:18 163:8 | | | | riela(12) 5:20 96:2 96:3 96:7 96:15 146:18 146:20 146:20 146:22 147:4 150:3 150:8 | | saskatchewan(1) 54:12 |
| recouped(1) 78:19 | | | | | | satisfaction(1) 104:24 |
| recover(1) 39:19 | | representation(6) 33:17 33:20 33:25 34:6 36:6 36:13 | | | | satisfied(6) 105:11 140:14 140:15 175:2 187:21 |
| recoveries(9) 13:7 70:5 76:2 78:5 79:8 84:4 88:1 88:11 93:6 | | representative(8) 17:6 17:9 17:17 17:19 23:19 34:11 36:4 41:12 | | right(176) 9:17 9:20 10:3 12:7 12:13 22:25 25:6 26:22 30:5 33:1 33:6 33:23 34:4 34:15 35:8 40:6 40:25 42:16 43:17 44:2 44:4 44:20 45:6 46:2 46:4 46:10 47:19 48:6 48:9 49:25 50:5 50:12 51:22 52:23 52:23 55:6 56:17 56:19 64:8 64:21 66:19 67:3 67:8 67:17 67:21 69:16 72:6 74:25 76:10 77:3 77:8 78:24 80:24 84:14 84:17 84:21 85:2 85:3 85:21 86:25 87:6 89:19 92:15 94:6 95:9 95:13 96:24 97:17 97:18 97:20 98:17 100:23 101:16 104:6 106:3 106:11 106:24 108:7 108:10 108:11 109:8 110:20 112:6 113:3 114:2 115:24 117:4 118:15 119:4 120:7 120:8 122:11 122:13 122:14 124:19 125:19 126:2 126:14 127:6 127:9 127:10 127:17 127:20 129:8 130:25 131:8 132:2 132:17 133:12 133:13 133:16 133:17 134:3 134:23 135:2 135:4 135:13 135:25 136:14 137:8 138:5 140:8 141:9 142:13 143:19 144:2 144:15 146:13 147:3 151:22 153:4 153:11 153:25 155:12 155:24 156:19 156:23 157:8 161:2 162:11 164:5 166:5 165:17 165:24 166:10 166:16 167:14 167:17 168:2 169:17 170:13 170:19 171:4 171:10 172:3 172:12 173:9 175:16 175:25 176:8 176:23 177:20 178:12 178:15 188:6 190:16 191:5 191:6 191:8 191:10 191:17 | | satisfies(4) 93:1 175:3 175:22 177:10 182:17 186:24 |
| | | | | | | satisfy(2) 111:20 187:1 |
| recovery(10) 25:3 25:7 37:7 37:17 78:15 88:22 93:10 124:16 125:17 127:13 | | representatives(6) 20:19 23:17 29:4 71:15 100:9 143:16 | | | | say(44) 15:1 18:25 19:22 20:2 21:5 22:6 24:16 26:4 26:21 32:24 35:3 40:10 42:16 44:17 50:25 55:7 56:6 60:3 60:7 61:2 68:18 72:14 72:18 78:6 87:10 88:10 94:24 97:21 97:22 120:17 129:1 131:13 132:2 152:8 152:12 178:4 179:12 180:20 182:22 |
| | | represented(7) 23:8 41:20 54:14 164:16 167:17 167:18 171:1 180:11 184:3 | | | | |
| red(1) 89:9 | | | | | | |
| redirect(2) 78:17 88:2 | | representing(4) 86:14 151:16 151:17 151:19 | | | | |
| redirected(1) 78:19 | | represents(3) 22:7 23:4 39:19 | | | | |
| redline(2) 173:2 173:21 | | reps(1) 49:12 | | | | |
| reduced(5) 25:11 37:9 39:5 133:6 133:8 | | request(4) 54:4 54:5 117:21 117:22 | | | | saying(13) 19:5 39:3 48:25 71:19 75:10 101:14 111:13 152:4 154:4 154:11 163:12 182:12 184:15 |
| reed(3) 2:26 5:43 93:23 | | requested(6) 30:9 30:23 31:4 31:5 74:20 139:21 | | | | |
| refer(2) 36:21 180:6 | | requesting(2) 62:23 114:16 | | | | |
| reference(5) 46:16 109:12 112:13 190:1 191:7 | | requests(1) 30:11 | | | | says(16) 18:10 18:10 34:18 34:22 35:16 41:24 42:21 44:12 45:8 45:9 46:18 65:7 141:1 168:20 171:22 189:15 |
| referenced(1) 35:13 | | requires(3) 44:25 110:13 138:2 | | | | |
| referred(3) 49:9 53:22 180:7 | | required(4) 28:9 58:22 138:9 | | rights(26) 12:10 24:15 26:16 31:14 31:16 31:21 32:10 36:11 36:16 42:4 42:7 43:3 46:15 46:23 47:25 48:16 48:20 53:12 53:12 56:7 70:5 71:11 73:12 73:14 115:16 146:4 | | scattershot(1) 156:17 |
| referring(1) 95:18 | | requirement(4) 14:9 79:1 105:12 118:17 | | | | scenarios(2) 124:17 125:17 |
| reflect(1) 173:10 | | requirements(9) 14:11 62:22 104:24 104:25 105:11 175:20 187:1 187:22 187:2 | | | | schedule(8) 74:23 110:24 116:20 116:21 116:22 129:18 132:13 134:17 |
| refraining(1) 110:18 | | | | | | |
| refute(1) 31:10 | | requires(5) 18:14 30:17 110:1 140:19 186:7 | | rise(8) 9:2 67:10 92:20 103:18 103:20 106:17 142:23 178:17 | | scheduled(2) 78:13 78:14 |
| regard(5) 50:10 44:8 68:12 119:10 170:8 | | requisite(3) 35:12 144:6 146:5 | | | | scheduling(2) 130:15 181:12 |
| regarding(10) 29:5 59:15 65:1 72:25 74:3 91:24 133:23 157:17 169:8 169:23 | | res(3) 167:11 169:23 181:23 | | rising(1) 142:3 | | schlerf(1) 3:46 |
| | | research(12) 2:41 6:33 6:34 127:14 155:22 156:15 156:16 156:25 157:11 157:17 157:23 158:6 | | risk(4) 76:5 83:15 87:14 145:11 | | schmidt(1) 121:8 |
| | | | | risks(1) 89:1 | | schotz(2) 2:41 6:45 |
| regardless(4) 13:1 73:14 74:13 152:23 | | | | road(3) 28:15 89:3 123:5 | | schull(1) 153:13 |
| regimes(1) 16:19 | | reserve(14) 30:24 31:1 31:8 76:21 95:10 95:11 98:9 108:10 115:11 116:1 117:9 118:1 143:17 158:23 | | roadmap(3) 61:15 62:4 63:8 | | schuylkill(1) 1:43 |
| register(1) 78:1 | | | | robert(5) 4:38 6:18 7:41 160:15 184:23 | | schweizer(103) 1:32 10:1 29:14 56:24 56:25 57:1 61:19 66:5 66:9 66:20 67:7 67:15 67:21 67:23 69:8 69:17 72:7 73:7 74:8 74:9 74:11 77:9 77:25 78:25 79:22 80:16 80:18 80:24 80:25 82:12 84:18 84:22 84:24 85:4 85:5 85:18 85:22 86:3 86:5 86:20 87:1 89:14 89:20 90:3 91:18 91:22 95:4 97:15 97:20 96:17 97:19 97:20 99:24 100:3 100:15 100:17 100:24 101:10 101:13 101:17 101:20 101:23 102:6 105:3 106:7 113:15 118:16 118:19 124:6 132:7 132:9 133:19 134:4 134:8 134:13 134:16 134:19 134:24 144:9 145:5 176:16 177:9 184:19 188:4 188:6 188:8 188:9 188:10 188:19 189:1 189:11 189:18 189:24 190:7 190:17 190:22 191:13 191:16 191:19 191:10 191:14 191:16 191:18 |
| regret(1) 183:13 | | | | robinadale(1) 45:16 | | |
| regretted(1) 185:3 | | residual(1) 115:17 | | rock(1) 125:9 | | |
| regulation(1) 53:23 | | resolicit(1) 88:21 | | rodney(2) 2:36 4:40 | | |
| rehm(1) 7:16 | | resolicitation(1) 95:5 | | role(11) 15:1 15:3 41:9 72:8 87:2 87:19 147:1 149:9 170:9 170:9 188:1 | | |
| reicher(1) 180:17 | | resolution(13) 59:6 72:5 92:8 107:17 110:6 113:6 136:21 145:6 145:7 145:23 156:6 179:18 186:7 | | | | |
| reilly(1) 2:43 | | | | | | |
| reiterate(1) 51:13 | | resolutions(1) 23:15 | | rolled(1) 13:18 | | |
| reject(5) 25:19 65:11 138:1 138:2 174:21 | | resolve(6) 11:8 61:22 92:12 131:8 157:15 160:22 | | rolls(1) 66:11 | | schweizer's(1) 105:2 |
| rejected(7) 138:1 152:18 166:25 169:15 174:25 175:22 186:9 | | resolved(16) 10:23 13:25 17:24 62:12 69:3 70:21 72:16 113:16 114:5 119:5 119:13 129:9 132:3 145:20 160:2 160:6 | | rooks(2) 180:6 180:7 | | schweizer(1) 123:22 |
| | | | | room(6) 50:8 52:6 57:19 71:12 93:5 174:3 | | scope(5) 45:16 148:7 148:17 148:17 148:18 |
| rejecting(1) 25:19 | | | | rooney,pc(1) 4:10 | | scotia(1) 39:18 |
| relate(3) 25:18 98:11 181:13 | | | | rooted(1) 15:15 | | sea(2) 54:12 55:22 |
| related(1) 157:7 | | resolves(4) 11:11 91:2 145:18 145:18 | | rosenthal(1) 1:31 | | seabury(1) 123:23 |
| relates(1) 147:1 | | resolving(5) 64:21 70:22 110:10 151:5 180:20 | | rothschild(1) 3:45 | | sea(1) 29:7 |
| relating(1) 43:25 | | resoundingly(1) 70:24 | | roughly(1) 25:11 | | seat(1) 121:24 |
| relation(1) 43:15 | | resources(2) 59:12 71:17 | | round(4) 76:6 89:4 122:5 162:19 | | seated(4) 9:4 67:11 106:19 178:19 |
| relative(4) 16:25 36:24 39:7 63:25 | | respect(34) 27:18 27:22 28:5 29:2 29:3 35:5 36:15 41:22 42:1 43:23 46:24 48:20 56:5 59:20 81:3 82:25 85:18 87:7 90:16 91:5 90:8 98:8 98:20 109:25 120:15 145:1 145:3 146:9 147:5 148:24 150:10 175:4 185:7 189:11 | | royalties(1) 158:3 | | sec(4) 35:12 42:23 45:16 51:8 |
| relatively(2) 72:19 176:21 | | | | rudnick(2) 4:3 6:29 | | |
| release(13) 10:15 11:1 68:15 68:19 69:3 82:24 152:10 152:15 152:16 186:6 189:15 189:16 189:20 | | | | | | |
| released(3) 141:2 163:5 169:2 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

sec's(2) 32:3 35:10

second(16) 15:7 17:5 52:18 77:4 110:15 131:20 136:18 136:23 140:19 163:13 168:17 169:5 182:14 183:18 185:17 186:5

secondarily(1) 87:10
secondary(1) 87:14
section(46) 31:14 31:15 31:23 31:24 31:24 32:7 32:9 34:22 35:4 35:4 35:18 35:20 35:22 35:23 42:8 43:3 43:4 45:2 46:25 48:10 49:19 52:18 52:20 52:22 55:3 55:3 55:20 55:24 56:1 105:10 105:18 113:25 149:22 161:11 175:2 175:4 175:20 175:22 187:1 187:2 187:4 187:6 187:17 187:21 187:21 187:23

sections(1) 186:24
secure(1) 84:7
secured(4) 160:25 161:10 161:11 182:4
securities(1) 124:13
security(3) 28:23 31:16 179:15
see(24) 24:25 28:8 28:11 47:13 47:15 56:5 57:4 81:22 91:12 102:1 119:6 126:24 126:24 126:25 127:1 128:10 135:15 135:17 149:18 163:8 174:1 179:13 179:17 182:1

seek(3) 10:19 164:23 176:19
seeking(6) 10:14 54:18 54:19 57:6 61:22 164:18
seeks(3) 54:17 63:5 158:5
seem(1) 49:23
seemed(1) 49:7
seems(8) 47:6 79:1 116:11 119:18 120:24 134:16 150:9

seen(7) 28:14 91:16 149:8 163:9 165:11 180:16
seesaw(1) 176:5
self(1) 28:20
self-insure(1) 26:14
self-insured(1) 28:21
selinda(1) 7:8
selling(1) 64:23
seminal(1) 64:13
send(1) 170:6
sense(6) 90:5 96:17 106:24 116:7 157:10 183:13
sensitive(2) 161:19 171:7
sent(4) 14:23 35:14 139:12 182:1
sentence(3) 175:9 175:9 175:18
sentiment(1) 109:3
separate(5) 41:15 68:7 115:15 166:11 188:19
separately(1) 176:17
september(1) 126:12
seriously(1) 37:15
serve(5) 17:1 34:17 127:22 176:18 188:17
served(2) 14:6 35:17
serves(1) 69:20
service(2) 1:42 1:49
services(6) 1:42 53:18 53:21 111:14 113:19 189:1
service's(1) 114:13
set(28) 13:20 13:25 14:10 23:19 61:21 62:22 64:3 74:23 87:12 87:16 87:17 92:7 92:18 100:19 111:12 116:13 117:25 129:12 129:24 131:21 159:12 160:1 160:9 167:16 175:10 181:10 185:13

sets(2) 15:20 156:2
settle(6) 59:5 78:7 83:8 86:24 112:11 127:11
settled(10) 48:15 48:22 73:7 82:20 89:7 170:24 178:19 178:20 179:25 185:1
settlement(128) 10:20 12:5 20:22 22:9 26:21 29:1 30:18 32:16 32:17 37:2 38:4 38:5 39:15 41:17 58:24 60:10 60:11 61:24 62:13 62:14 63:21 64:1 64:7 64:16 65:3 65:4 66:11 68:1 68:19 70:22 72:15 72:20 73:23 75:8 76:9 76:14 76:24 77:4 77:17 77:22 81:3 81:4 81:8 81:23 82:1 82:4 82:6 83:19 83:21 83:24 84:6 84:10 86:12 86:13 89:23 90:17 91:2 92:20 92:21 92:22 93:1 93:2 93:16 93:17 94:16 94:19 95:7 96:8 96:17 96:21 97:18 98:3 98:9 98:14 98:19 98:24 98:25 99:1 99:22 100:1 101:2 102:16 104:9 104:15 104:8 145:17 145:18 157:20 158:14 159:6 159:16 160:19 160:20 161:6 161:6 161:10 161:14 161:15 161:18 161:22 164:1 164:15 164:18 164:19 165:1 171:1 171:12 177:7 180:8 182:6 183:2 183:2 183:14 184:5 185:5 185:8 185:8 185:9 185:10 185:16 186:1 186:6 186:12 186:20 186:21 191:11

settlements(10) 38:3 38:14 52:1 59:3 60:23 60:25 68:22 70:14 79:1 81:24

settling(3) 77:16 77:16 89:1
seven(9) 18:20 27:19 34:5 124:9 124:9 124:10 124:10 127:16 163:18
seventh(1) 3:20
several(8) 19:19 24:3 34:13 57:19 61:1 127:7 127:12 163:23

severance(1) 21:7
shall(4) 64:17 64:18 64:23 190:13
share(3) 69:9 142:14 188:16
shareholders(3) 13:10 154:4 188:23
shares(1) 12:25

sharing(1) 12:6
sharp-eyed(1) 52:6
she(4) 22:7 49:1 50:21 127:1
she's(1) 24:2
sheehan(1) 7:21
sheet(2) 76:15 77:21
ship(1) 29:7
short(7) 26:20 79:23 80:20 112:8 130:6 162:5 169:18
shortfall(1) 23:17
should(50) 16:13 36:13 42:4 48:4 48:16 48:19 57:18 63:24 64:4 66:21 93:18 94:23 94:24 96:9 98:14 103:3 108:15 107:18 108:16 110:12 114:19 114:21 116:25 118:9 119:7 119:8 121:4 121:7 121:13 127:5 136:14 136:19 137:13 139:16 140:18 141:12 141:15 159:6 159:19 161:22 163:5 163:10 163:22 163:24 165:22 166:22 167:9 167:20 169:13 172:11 177:11 182:12 183:23 185:16

shouldn't(4) 116:23 137:10 139:17 174:5
showing(1) 126:25
shown(1) 104:15
shows(2) 83:19 141:1
shut(1) 121:4
shutout(1) 124:25
side(8) 58:16 59:21 61:9 61:16 69:3 162:22 171:22 181:15
sides(1) 150:18
sign(9) 53:20 168:13 179:10 179:10 188:1 188:6 190:2 190:24 191:11
signal(1) 159:7
signatory(1) 71:2
signed(12) 68:2 71:16 109:10 112:5 112:10 168:12 169:2 170:6 170:10 171:1 171:2 191:17
significant(5) 79:7 116:23 116:24 123:19 141:14
significantly(1) 28:18
silverpart(2) 7:44 7:45
silverstein(2) 151:9 151:11
similar(6) 42:25 58:16 83:1 100:6 148:17 166:19
similarly(2) 86:18 98:11
simple(1) 32:4 70:12 76:17
simply(15) 11:5 18:21 26:20 36:9 59:20 79:8 81:7 113:24 131:23 137:12 167:23 171:22 175:8 182:1 182:21
since(13) 28:6 57:5 59:18 85:9 91:6 91:7 147:5 147:6 147:8 147:9 149:8 163:16 171:5
sincere(1) 60:19
single(2) 174:16 189:2
single-person(1) 38:19
sir(9) 29:9 40:3 90:15 104:22 117:11 131:14 166:1 168:5 177:17
sit(12) 68:24 75:18 89:2 154:16 154:18 154:20 154:21 154:25 155:3 155:7 155:11
sits(2) 63:4 69:11
sitting(3) 20:14 123:21 128:8
situated(2) 86:18 98:11
situation(3) 52:24 179:24 186:10
situations(1) 148:13
six(9) 23:11 111:5 129:7 130:14 131:20 132:7 143:25 151:6 180:10
six-year(2) 38:3 51:25
sixty-eight(1) 37:6
sixty-six(1) 37:6
size(3) 16:18 21:18 114:16
skadden(2) 4:35 7:19
skill(1) 184:7
slate(7) 4:35 7:19 41:24 42:21 44:12 45:8 53:2
slices(1) 122:20
smaller(5) 3:18 25:9 54:10 99:21 176:21
smart(1) 61:9
smarter(1) 154:11
smith(1) 5:37
snmp(15) 21:41 6:45 155:22 156:4 156:13 156:15 156:16 156:25 156:25 157:17 157:20 157:23 158:6 158:7 159:14
so-called(2) 70:23 147:5
social(1) 26:10
society(2) 31:22 38:23
sold(2) 172:6 181:20
sole(1) 188:17
solely(1) 98:20
solicitation(12) 136:14 136:17 137:11 137:14 138:21 139:7 139:9 139:15 139:22 140:3 149:23 182:13
soliloquy(1) 147:13
solus(4) 5:4 107:5 108:21 181:9
solution(4) 7:12 90:20 116:11 145:24
solutions(1) 102:12
solve(1) 61:13

some(59) 11:16 13:15 23:7 24:1 24:9 28:8 28:23 32:22 37:22 57:21 59:23 59:24 66:10 68:11 69:18 69:19 72:13 74:11 75:4 77:1 78:25 79:23 81:2 104:8 106:6 110:24 111:1 113:8 113:7 115:19 116:7 117:22 120:22 122:16 125:13 126:7 128:7 130:15 134:21 137:3 143:6 145:8 147:21 148:13 150:21 151:17 152:25 162:13 162:15 163:5 163:18 166:23 172:16 179:21 179:22 180:15 183:10 190:17

somebody(7) 26:11 116:16 121:17 123:4 123:9 126:10 152:9
somehow(3) 86:16 89:10 159:10
someone(2) 48:2 189:23
something(26) 9:21 19:5 33:9 47:12 48:3 50:20 54:20 66:22 101:11 118:5 127:5 133:3 133:9 134:21 140:10 140:11 140:12 140:15 140:23 141:7 145:14 151:1 151:5 152:20 163:4 190:4

sometime(1) 168:8
somewhat(1) 126:17
somewhere(1) 44:5
sontchi(2) 151:10 151:12
soon(8) 26:1 64:18 156:11 157:19 157:22 158:12 159:1 177:3
sooner(1) 179:25
sophisticated(2) 122:10 184:3
sorry(16) 24:20 28:12 40:10 44:3 45:8 45:24 47:24 48:13 55:21 82:10 94:11 94:24 159:25 165:8 188:12 191:16
sort(4) 64:13 79:13 107:3 129:17
sorts(3) 19:10 23:20 26:17
sought(10) 17:10 18:12 52:20 52:21 54:3 138:8 140:20 144:16 164:20 164:24
soul(2) 29:18 94:1
sound(4) 1:48 49:5 187:1 192:3
sounds(2) 73:21 165:23
sources(2) 65:10 65:17
southern(2) 65:10 65:17
spared(1) 159:3
speak(7) 9:15 27:12 52:11 60:2 90:7 134:10 147:23
special(1) 77:3
specialty(1) 47:4
specific(8) 34:8 38:13 62:25 76:24 102:7 114:14 119:9 160:23
specifically(12) 32:4 35:11 71:17 72:4 78:23 87:12 102:8 110:24 112:19 130:5 142:4 162:24
specified(1) 35:22
specifies(1) 49:19
spend(1) 92:7
spend(4) 55:2 71:7 125:12 183:9
spent(3) 89:7 92:7 137:17
spirit(1) 186:24
spite(1) 169:1
split(1) 60:6
spoke(2) 136:2 148:1
spots(1) 126:7
spouses(4) 21:2 21:10 27:5 55:12
spread(1) 72:24
spsa(70) 10:21 11:5 11:8 11:22 13:5 17:17 60:18 62:14 63:6 63:21 66:10 68:4 68:6 69:1 69:20 70:9 70:11 70:14 70:25 71:3 71:16 71:17 71:18 72:17 74:3 75:16 81:10 81:13 81:19 81:25 82:2 82:9 83:13 84:9 84:9 86:12 86:13 89:24 91:6 94:2 95:15 98:3 98:21 105:2 107:25 109:10 109:21 127:3 136:4 136:7 145:12 176:6 176:15 176:18 176:19 176:20 177:4 177:4 177:16 177:8 177:17 177:14 178:3 178:8 185:9 186:1 186:21 187:13 187:15 189:9
square(2) 2:36 4:40
stage(2) 51:13 170:17
stake(3) 59:25 89:16 183:22
stakeholders(1) 10:23
stalemate(3) 99:12 99:12 186:10
stand(16) 57:3 67:8 79:18 79:25 80:19 81:9 81:18 83:7 83:22 84:12 84:20 106:15 127:21 127:25 178:12 191:20
standard(1) 111:13
standards(5) 90:5 105:24 111:21 141:4 146:6
standing(3) 9:20 120:15 143:5
stands(1) 54:24
stang(1) 3:32
star(1) 125:10
stargatt(1) 2:23
start(22) 9:19 10:2 57:22 59:8 61:17 62:5 62:12 63:8 66:10 75:13 75:16 80:5 80:10 117:21 120:22 121:14 137:19 137:22 141:20 150:17 150:18 160:14
started(4) 126:11 126:15 126:25 180:17
starting(1) 133:21
state(4) 41:15 51:23 77:20 160:2
stated(2) 110:9 158:7
statement(92) 21:25 88:23 127:4 138:15 138:17 155:21 156:4 177:3
statements(3) 45:13 183:8 183:10

states(11) 1:1 1:20 12:4 84:13 144:4 148:8 178:2 182:10 182:11 186:8 186:11
stature(1) 64:5
status(1) 63:25
status(9) 16:16 31:25 42:6 44:14 44:16 49:15 51:2 51:4 56:8
statutory(5) 14:11 46:21 46:23 50:2 50:3
staveni(1) 7:25
stay(3) 65:15 121:18 188:4
ste(1) 4:12
steal(1) 29:14
steen(3) 1:29 7:28 135:22
step(4) 66:16 83:20 101:17 174:13
stephen(5) 4:17 4:35 6:9 7:20 97:5
stepped(3) 145:12 145:22 145:24
stepping(1) 57:7
steps(1) 83:12
steve(1) 117:19
steven(1) 4:4
sticks(1) 72:1
sticky(1) 21:13
stigmatization(2) 55:19 55:24
stikeman(1) 20:23
still(5) 23:7 63:12 125:4 151:7 152:18
stipulation(8) 166:14 166:19 167:16 168:8 170:10 170:15 172:9 176:2
stomach(1) 159:2
stone(1) 170:8
stood(1) 57:5
stop(4) 33:10 33:15 42:10 109:4
stories(2) 58:16 59:22
storm(1) 170:1
storm's(2) 168:20 170:12
straightforward(1) 79:3
strategy(1) 92:1
strauss(3) 2:5 6:17 90:13
street(10) 1:11 1:43 2:16 2:22 2:37 4:31 4:41 5:7 139:6 140:22
stressed(2) 15:14 98:7
strict(1) 14:14
strike(1) 54:17
stripes(1) 190:5
strong(8) 14:23 15:5 70:18 74:6 75:3 87:5 109:13 109:15
struck(4) 32:7 42:9 76:8 190:18
structure(1) 17:14
structured(2) 82:18 82:20
stuff(1) 144:23
styled(2) 166:13 166:14
subcon(1) 127:11
subject(13) 11:13 11:16 20:25 20:5 38:7 39:13 45:18 46:19 46:21 47:9 55:1 65:21 133:7
submission(11) 16:15 18:20 30:11 31:4 33:16 34:21 36:23 43:1 44:6 54:7
submissions(6) 16:2 45:22 51:17 149:10 166:12
submit(17) 84:18 84:19 105:10 105:10 105:22 110:23 111:10 112:8 112:24 113:2 113:10 113:21 114:5 114:17 115:4 124:21 161:23
submitted(2) 70:20 79:16
subrogation(1) 70:5
subsection(2) 35:21 35:23
subsequently(2) 151:10 172:6
subsidized(1) 39:16
substance(2) 114:23 115:1
substantial(12) 52:2 57:20 77:5 82:15 82:21 83:12 94:21 105:25 122:12 136:20 145:16 188:16
substantially(2) 10:23 39:16
substantive(12) 13:16 31:15 34:13 38:20 38:23 73:9 105:18 105:22 188:13 188:14 188:22 189:4
succeed(1) 125:23
success(6) 92:6 99:4 99:5 99:6 185:17 185:21
successor(2) 61:3 3
successful(8) 26:2 59:3 83:14 92:4 127:2 184:10 185:24 186:1
successfully(1) 123:3
successor(2) 190:12 190:15
successors(1) 180:15
such(13) 26:12 36:16 40:18 42:2 42:4 48:18 64:4 65:2 69:24 70:10 83:14 162:20 175:4
sue(3) 152:18 152:23 153:5
sued(1) 37:5
suffer(1) 16:6
suffered(5) 21:5 23:9 26:18 27:19 180:15
suffering(3) 21:7 55:15 99:18
sufficient(1) 72:22
sufficiently(1) 114:14
suggest(2) 54:2 107:4

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

suggested(2) 53:6 127:1
suggesting(1) 120:16
suit(1) 152:25
suite(5) 3:13 3:47 4:19 4:31 5:14
sullivan(7) 3:5 102:11 102:18 102:19 103:3 103:24 175:7

sum(1) 183:22
summaries(1) 126:9
summary(2) 66:10 162:9
summer(2) 68:2 176:22
sunday(4) 76:8 95:8 100:1 103:14
supplement(3) 62:20 85:19
supplemental(14) 80:20 81:3 102:13 102:22 103:2 103:18 103:20 103:23 110:25 112:9 112:17 121:12 175:8 175:11

supplementary(1) 41:18
supplies(1) 37:24
support(35) 10:21 16:7 21:14 21:15 24:16 27:12 29:16 29:22 30:1 30:4 31:13 36:10 62:18 66:17 68:1 71:21 81:23 83:14 89:23 89:24 90:7 94:2 95:14 97:13 101:1 109:2 109:11 109:18 118:5 128:15 149:24 160:21 185:9 189:4 191:12

supported(6) 17:17 17:17 20:22 31:9 95:7 161:8
supporting(2) 73:17 104:11
supports(5) 17:18 49:18 96:21 171:23 181:16
supposed(2) 123:1 123:3
supreme(3) 34:23 53:16 149:13
sure(27) 20:13 25:14 34:3 34:17 44:7 46:6 47:12 49:3 51:18 66:20 78:3 96:16 106:13 116:19 121:9 128:18 129:5 129:23 130:3 130:4 132:11 142:23 149:16 150:16 157:11 178:4 180:6

surely(1) 48:22
surprises(1) 174:5
surviving(4) 21:2 21:10 27:5 55:12
susan(1) 4:39
suspect(1) 133:11
switch(1) 45:25
sympathy(3) 16:3 54:18 55:17
syracuse(1) 5:18
system(2) 53:23 169:6
syswk(1) 151:12
tab(6) 10:14 10:17 10:19 11:24 53:17 53:17
tabbed(1) 173:4
table(6) 83:3 150:24 151:2 151:3 152:4 165:19
tables(1) 36:23
tabs(1) 179:8
tabulated(1) 103:10
tailored(3) 115:5 142:8 143:14
talk(1) 60:18
take(34) 15:23 22:18 23:6 23:16 23:16 52:9 67:3 67:4 86:8 93:9 101:5 105:4 106:10 112:9 112:22 116:23 117:20 118:8 118:9 121:1 121:3 121:5 121:11 121:20 130:11 133:23 136:23 155:12 162:21 165:24 170:3 173:12 174:7 181:8 181:15

taken(11) 15:5 18:19 18:19 23:10 83:12 96:11 114:7 114:7 135:9 156:7 163:10

takes(2) 160:23 183:7
taking(3) 88:11 113:6 184:5
talk(19) 36:19 51:11 66:11 76:13 121:22 125:2 127:18 128:10 128:15 129:16 131:9 132:24 133:15 135:1 163:12 163:13 177:21 181:9 181:12

talked(2) 124:7 128:12
talking(8) 20:24 23:3 35:8 78:4 116:7 128:14 133:11 148:13

talks(2) 14:22 53:11
tammy(1) 192:8
tannenbaum(2) 5:18 146:22
target(1) 107:20
task(1) 140:1
tasks(2) 56:22 111:6
tax(4) 23:22 41:10 70:5 160:2
tax-free(1) 34:2
taxed(2) 23:24 24:1
taylor(5) 2:14 2:34 4:35 7:20 184:25
tcc(2) 92:21 126:9
team(1) 126:9
tecce(44) 3:6 108:19 108:20 108:24 109:9 109:21 112:12 113:4 114:3 115:11 115:14 115:25 116:3 116:6 116:9 117:5 117:6 117:7 117:10 121:14 127:17 127:19 127:23 128:3 129:16 131:8 131:15 131:16 131:20 132:3 132:12 132:16 132:18 133:2 133:12 133:14 133:17 134:20 134:23 135:3

telephone(2) 12:13 63:18
telephonic(4) 5:31 6:1 7:1 8:1
tell(14) 47:20 67:18 89:6 95:12 127:21 127:24 128:3 128:9 128:13 129:25 135:1 162:23 163:2 179:19

telling(1) 140:10
ten(2) 101:15 163:6
tenet(1) 15:14
tenfold(1) 158:17

tens(1) 58:4
term(6) 18:5 76:15 77:21 77:22 130:6 147:16
terminated(1) 27:4
terms(21) 11:4 11:5 11:8 17:11 18:6 21:5 26:12 64:16 66:10 72:20 81:22 82:1 82:3 82:6 93:4 100:6 152:22 161:13 161:16 161:17 165:1

territory(2) 43:25 44:1
test(4) 14:10 19:9 38:22 105:14
testify(7) 62:16 62:18 81:9 82:3 82:8 83:23 128:13
testifying(1) 126:8
testimony(13) 62:20 66:13 80:19 81:1 81:3 82:5 84:11 84:13 84:15 84:19 84:20 85:20 114:12

tests(3) 31:20 35:12 99:1
than(41) 11:1 14:24 16:14 24:22 27:5 28:18 34:4 34:5 50:21 53:4 55:15 58:22 64:6 66:14 73:16 78:12 78:13 79:11 80:19 83:10 84:1 86:5 87:17 88:14 88:16 88:17 88:19 88:23 91:23 103:11 118:3 143:6 151:16 152:3 154:12 163:6 165:15 169:19 175:21 180:21 187:19

thank(135) 9:3 10:3 12:21 12:22 14:8 20:7 27:11 29:9 29:10 29:17 29:23 30:2 30:5 33:12 33:13 39:3 46:10 50:9 50:12 50:14 52:4 52:5 52:9 52:10 52:12 54:8 54:9 56:17 61:10 63:17 66:5 67:7 67:11 67:23 80:16 80:25 84:17 85:5 93:19 93:20 94:6 94:7 95:16 95:24 95:25 96:24 96:24 97:15 97:16 97:24 98:17 99:24 100:15 100:17 101:23 102:2 103:7 104:22 106:13 106:14 106:16 106:21 108:7 108:14 108:17 117:6 117:10 118:22 117:11 124:14 126:16 128:3 138:24 138:5 138:13 139:14 139:24 143:6 146:17 150:2 150:3 150:4 150:12 150:13 150:13 155:6 155:14 159:19 159:20 159:21 164:12 164:14 164:24 165:7 165:20 166:1 166:3 166:4 168:3 168:4 168:4 170:10 170:20 171:11 171:12 172:13 172:14 173:6 174:10 175:25 177:3 177:8 177:16 177:17 177:17 178:11 178:18 179:2 180:21 180:22 180:24 181:5 181:7 184:9 189:6 189:8 190:23 191:9 191:10 191:18 191:19 191:21 191:22

thanks(2) 24:2 60:19
that(301) 9:18 9:24 9:24 10:23 11:6 11:10 11:16 11:17 11:19 11:24 12:6 12:15 12:23 13:4 13:11 13:19 13:20 13:22 13:22 13:24 14:1 14:4 14:12 14:15 14:16 14:18 14:23 14:24 15:1 15:3 15:5 15:10 15:11 15:15 15:16 15:24 15:25 16:1 16:2 16:3 16:7 16:8 16:11 16:13 16:15 16:17 17:4 17:15 17:18 17:19 17:22 17:25 18:2 18:6 18:7 18:9 18:10 18:11 18:11 18:14 18:14 18:14 18:18 18:23 18:25 19:5 19:6 19:9 19:11 19:11 19:12 19:13 19:16 19:17 20:4 20:5 20:5 20:6 20:13 20:14 21:5 21:23 22:5 22:6 22:9 23:10 23:15 23:24 24:11 24:16 24:19 24:21 25:16 25:22 25:23 26:2 26:10 26:17 26:24 27:2 27:27 27:19 27:24 27:24 27:25 28:1 28:17 28:19 28:22 28:22 28:24 30:11 30:21 31:9 32:2 32:15 32:17 32:17 32:22 32:24 33:19 33:20 33:21 33:24 34:5 34:19 34:21 34:24 35:5 35:10 35:14 35:24 36:7 37:9 37:19 39:16 39:21 40:10 41:11 42:2 42:8 42:21 42:25 43:5 43:8 43:9 43:20 44:12 44:17 44:22 44:23 45:2 45:4 45:8 45:9 45:9 45:13 45:14 45:17 45:25 47:1 47:6 47:15 48:3 48:5 48:5 48:11 48:13 48:15 48:17 48:25 49:1 49:2 49:3 49:5 49:23 50:2 50:8 50:9 51:5 51:11 51:17 51:17 51:24 52:7 52:15 52:16 52:25 53:2 53:5 53:10 53:13 53:14 53:15 54:2 54:5 54:7 54:11 54:12 54:13 54:14 54:20 54:21 54:25 55:1 55:4 55:18 55:21 55:21 56:5 56:12 56:12 56:13 56:15 56:19 57:5 57:21 58:3 58:10 58:14 58:16 58:23 59:4 59:6 59:8 59:22 59:24 59:25 59:25 60:8 60:11 60:14 61:2 61:6 61:7 61:11 61:13 61:21 61:22 61:23 62:8 62:9 62:10 62:11 62:20 62:24 62:25 63:8 63:23 63:23 64:1 64:3 64:4 64:6 64:17 64:17 65:7 65:7 65:9 65:14 65:17 65:18 65:23 66:3 66:6 66:15 66:16 66:18 66:20 66:23 67:16 68:2 68:4 68:9 68:12 68:13 68:14 68:15 68:17 68:18 68:21 68:22 68:25 69:2 69:4 69:10 69:21 69:23 69:23 69:24 70:2 70:8 70:11 70:16 70:19 71:1 71:1 71:7

that(92) 172:23 172:24 172:25 173:2 173:3 173:5 173:5 173:7 173:8 173:18 173:18 174:2 174:2 174:4 174:17 174:18 175:9 175:23 176:4 176:6 176:21 177:2 177:7 177:8 177:14 178:5 179:4 179:12 179:12 179:17 179:19 179:22 180:2 180:2 180:4 180:8 180:9 180:13 180:18 180:19 181:4 181:12 181:13 181:15 181:15 181:16 182:1 182:9 182:12 182:19 182:22 183:4 183:7 183:11 183:16 183:19 183:22 183:24 184:2 184:14 184:15 184:16 185:5 185:11 185:12 185:15 185:22 186:3 186:13 186:18 186:20 187:25 188:1 188:3 188:6 189:11 189:13 189:15 189:18 189:20 189:23 190:3 190:4 190:8 190:8 190:18 190:20 190:21 191:13 191:19 192:2

that's(47) 9:20 10:14 10:17 13:3 14:12 16:9 17:25 18:21 21:6 22:23 25:3 25:23 26:1 29:7 33:9 42:14 44:9 46:4 49:4 51:20 52:23 52:23 54:3 54:21 54:22 55:14 55:19 63:8 64:13 67:17 70:7 72:6 74:10 75:7 77:20 79:3 79:8 79:8 86:21 88:7 93:16 95:2 96:14 97:20 101:19 101:22

that's(58) 110:16 112:1 113:8 114:17 116:15 118:3 118:4 118:6 121:3 121:20 124:5 125:9 125:10 129:19 129:20 131:5 135:13 132:17 134:1 134:13 134:23 135:6 136:16 138:5 140:9 140:9 141:10 142:13 144:2 144:15 144:24 145:25 146:2 153:16 153:24 153:25 154:23 156:19 158:24 159:16 160:15 163:11 163:21 165:7 167:6 169:18 170:11 172:3 173:21 173:23 179:1 179:1 180:11 180:12 182:24 183:23 191:7 191:12

thau(1) 8:9
the(301) 1:1 1:2 1:19 2:20 2:26 3:38 3:41 4:10 4:25 5:11 5:27 9:2 9:3 9:7 9:9 9:13 9:15 9:15 9:18 9:20 9:21 9:25 9:25 10:1 10:2 10:3 10:5 10:9 10:10 10:12 10:13 10:14 10:15 10:15 10:16 10:16 10:17 10:17 10:17 10:19 10:20 10:20 10:21 10:22 10:22 10:23 10:24 10:25 11:1 11:2 11:4 11:5 11:5 11:6 11:8 11:13 11:19 11:19 11:20 11:21 11:22 11:22 11:22 11:23 11:24 11:25 12:2 12:4 12:4 12:7 12:7 12:12 12:16 12:18 12:24 12:24 13:4 13:4 13:5 13:5 13:7 13:8 13:11 13:12 13:13 13:16 13:17 13:19 13:19 13:20 13:23 13:23 13:24 13:25 14:1 14:6 14:9 14:13 14:15 14:15 14:16 14:19 14:19 14:20 14:22 14:24 14:25 15:1 15:2 15:3 15:4 15:9 15:10 15:11 15:12 15:13 15:16 15:19 15:20 15:25 15:17 15:18 15:20 15:21 15:21 15:22 15:23 15:25 16:1 16:2 16:3 16:3 16:4 16:7 16:8 16:9 16:9 16:11 16:11 16:16 16:16 16:16 16:18 16:19 16:20 16:21 16:23 16:24 17:2 17:5 17:5 17:9 17:10 17:10 17:12 17:13 17:14 17:14 17:15 17:16 17:16 17:17 17:17 17:18 17:20 17:22 17:22 17:22 18:1 18:2 18:6 18:10 18:10 18:11 18:11 18:12 18:13 18:13 18:15 18:16 18:17 18:18 18:19 18:22 18:23 18:24 18:25 19:1 19:2 19:3 19:6 19:8 19:9 19:10 19:11 19:14 19:14 19:16 19:17 19:17 19:18 19:18 19:21 19:21 20:3 20:4 20:6 20:6 20:11 20:16 20:19 20:19 20:20 20:20 20:21 20:22 20:24 21:1 21:4 21:5 21:6 21:12 21:15 21:16 21:17 21:18 21:18 21:20 21:21 21:21 21:22 21:25 21:25 22:2 22:3 22:3 22:4 22:5 22:7 22:8 22:10 22:11 22:21 22:22 22:24 23:2 23:6 23:6 23:12 23:14 23:16 23:17 23:17 23:18 23:19 23:20 23:22 23:23 23:23 24:5 24:6 24:6 24:7 24:10 24:10 24:14 24:15 24:17 24:18 24:19 24:21 24:21 24:22 24:25 25:2 25:2 25:5 25:7 25:7 25:13 25:16 25:18 25:20 25:23 25:24

the(301) 25:25 26:2 26:4 26:5 26:6 26:6 26:9 26:15 26:17 26:19 26:23 26:25 27:7 27:9 27:13 27:16 27:17 27:18 27:19 27:21 27:23 27:24 27:24 27:25 28:5 28:6 28:15 28:16 28:17 28:22 29:1 29:2 29:2 29:3 29:4 29:5 29:6 29:6 29:11 29:14 29:15 29:16 29:18 29:20 29:21 29:22 29:25 30:1 30:1 30:3 30:6 30:10 30:15 30:16 30:17 30:18 30:20 30:21 30:22 30:23 30:23 30:24 30:25 31:2 31:3 31:3 31:5 31:5 31:7 31:7 31:11 31:13 31:18 31:19 31:19 31:21 31:11 31:12 31:13 31:13 31:13 31:18 31:19 31:20 31:25 32:2 32:5 32:3 32:8 32:9 32:10 32:11 32:12 32:17 32:19 32:23 32:23 32:25 33:14 33:15 33:17 33:19 33:20 34:1 34:3 34:4 34:10 34:13 34:13 34:18 34:19 34:19 34:20 34:21 34:22 34:24 34:25 34:25 35:2 35:9 35:10 35:13 35:14 35:18 35:23 35:24 35:25 36:3 36:3 36:4 36:5 36:6 36:6 36:9 36:10 36:10 36:12 36:16 36:16 36:19 36:20 36:20 36:22 36:24 36:24 36:25 37:1 37:2 37:7 37:10 37:12 37:13 37:17 37:18 37:20 37:21 38:3 38:3 38:4 38:4 38:6 38:6 38:8 38:11 38:14 38:16 38:23 38:24 39:5 39:6 39:7 39:7 39:8 39:9 39:9 39:10 39:11 39:11 39:12 39:18 39:19 39:20 39:21 39:23 39:24 40:10 40:19 40:25 41:1 41:5 41:7 41:10 41:11 41:11 41:20 41:21 41:22 41:22 41:24 41:24 42:1 42:5 42:6 42:6 42:8 42:17 42:22 42:22 42:23 42:23 42:23 42:25 43:1 43:2 43:4 43:5 43:6 43:8 43:11 43:12 43:14 43:18 43:18 43:21 43:22 43:23 43:24 43:25 44:1 44:5 44:7 44:8 44:10 44:12 44:13 44:13 44:16 44:16 44:16 44:18 44:23 44:24 44:25 45:2 45:4 45:4 45:5 45:5 45:9 45:10 45:16 45:18 45:13 45:13 45:14 45:16 45:16 45:16 45:18 45:19 45:20 46:3 46:11 46:13 46:13 46:13 46:15 46:16 46:16 46:19 46:21 46:24 46:25 47:1 47:2 47:6 47:8 47:9 47:17 47:20 47:23 47:25 48:1 48:11 48:12 48:17 48:17 48:17 48:19 48:21 48:22 49:1 49:9 49:9 49:11

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the(301)** 49:12 49:13 49:14 49:15 49:16 49:17 49:18 49:19 49:19 49:20 49:24 49:14 49:25 50:4 50:7 50:7 50:9 50:10 50:16 50:25 51:3 51:3 51:4 51:7 51:9 51:10 51:11 51:12 51:23 51:24 51:24 51:24 51:25 52:1 52:5 52:6 52:6 52:11 52:15 52:15 52:16 52:19 52:22 52:24 53:2 53:5 53:6 53:7 53:8 53:10 53:11 53:13 53:14 53:14 53:15 53:15 53:19 53:21 53:23 54:1 54:2 54:5 54:7 54:18 54:21 54:21 54:21 55:2 55:6 55:10 56:6 56:7 56:8 56:9 56:13 56:15 56:20 56:23 57:1 57:2 57:4 57:6 57:7 57:9 57:10 57:12 57:14 57:14 57:15 57:16 57:16 57:19 57:19 57:20 57:21 57:22 57:22 57:25 58:1 58:7 58:9 58:9 58:13 58:15 58:16 58:16 58:23 58:24 59:2 59:3 59:4 59:6 59:7 59:7 59:10 59:11 59:14 59:16 59:17 59:20 59:21 59:22 59:22 59:23 60:1 60:1 60:2 60:3 60:3 60:4 60:8 60:11 60:12 60:13 60:13 60:14 60:14 60:17 60:17 60:18 60:18 60:18 60:19 60:20 60:20 60:21 60:24 60:25 60:25 61:2 61:3 61:3 61:4 61:5 61:6 61:6 61:6 61:14 61:16 61:17 61:17 61:18 61:21 61:24 61:25 62:1 62:2 62:2 62:4 62:8 62:9 62:10 62:11 62:12 62:13 62:14 62:14 62:15 62:15 62:15 62:17 62:18 62:19 62:21 62:22 62:23 62:24 62:25 63:3 63:5 63:6 63:8 63:10 63:12 63:16 63:21 63:22 63:22 64:1 64:3 64:3 64:7 64:8 64:9 64:11 64:15 64:16 64:18 64:19 64:20 64:22 64:23 64:24 65:1 65:1 65:5 65:6 65:7 65:10 65:11 65:11 65:12 65:13 65:13 65:14 65:15 65:15 65:16 65:18 65:20 65:21 65:24 66:1 66:2 66:2 66:6 66:8 66:10 66:11 66:19 66:22 66:24 67:3 67:4 67:4 67:8 67:10 67:11 67:13 67:15 67:17 67:17 67:21 67:24 67:25 67:25 67:25 68:1 68:2 68:4 68:6 68:7 68:8 68:9 68:9 68:9 68:10 68:10 68:11 68:12 68:13 68:14 68:14 68:15 68:16 68:16 68:18 68:19 68:20 68:20 68:23 68:24 68:24 69:1 69:1 69:4

**the(301)** 69:4 69:5 69:6 69:7 69:8 69:9 69:11 69:11 69:12 69:12 69:14 69:14 69:15 69:15 69:16 69:17 69:18 69:18 69:19 69:19 69:20 69:21 69:23 70:1 70:2 70:3 70:8 70:9 70:9 70:10 70:11 70:11 70:12 70:14 70:15 70:18 70:20 70:20 70:21 70:22 70:23 70:24 70:25 70:25 71:1 71:2 71:3 71:3 71:3 71:5 71:7 71:10 71:11 71:12 71:13 71:14 71:14 71:15 71:16 71:16 71:16 71:17 71:18 71:19 71:20 71:20 71:21 71:23 71:24 72:5 72:6 72:8 72:11 72:12 72:13 72:13 72:14 72:15 72:16 72:16 72:17 72:17 72:18 72:20 72:20 72:23 72:24 73:1 73:2 73:2 73:2 73:3 73:4 73:5 73:6 73:8 73:11 73:11 73:14 73:15 73:15 73:17 73:18 73:19 73:20 73:21 73:22 73:24 74:3 74:3 74:3 74:3 74:4 74:7 74:10 74:14 74:15 74:16 74:16 74:17 74:18 74:19 74:20 74:25 74:25 75:1 75:4 75:4 75:6 75:7 75:8 75:8 75:9 75:9 75:10 75:10 75:12 75:15 75:15 75:16 75:16 75:18 75:18 75:19 75:22 75:23 75:25 75:25 76:1 76:3 76:3 76:4 76:4 76:5 76:5 76:6 76:7 76:7 76:7 76:8 76:9 76:9 76:10 76:13 76:13 76:14 76:15 76:15 76:18 76:19 76:21 76:21 76:24 76:25 77:4 77:7 77:8 77:8 77:9 77:11 77:11 77:13 77:14 77:16 77:18 77:20 77:20 77:20 77:21 77:22 77:22 77:24 78:2 78:3 78:5 78:7 78:7 78:8 78:10 78:11 78:14 78:15 78:17 78:22 78:24 79:3 79:4 79:5 79:8 79:11 79:15 79:16 79:16 79:18 79:19 79:19 79:21 79:23 79:25 80:3 80:3 80:5 80:6 80:8 80:10 80:10 80:11 80:13 80:17 80:20 80:23 81:3 81:4 81:4 81:6 81:6 81:8 81:9 81:10 81:11 81:11 81:12 81:13 81:14 81:14 81:16 81:18 81:18 81:19 81:20 81:21 81:22 81:23 81:24 81:24 81:24 81:25 81:25 82:2 82:3 82:4 82:6 82:6 82:7 82:9 82:9 82:10 82:11 82:13 82:13 82:14 82:15 82:16 82:18 82:19 82:22 82:22 82:23 82:23 82:24 82:25 82:25 83:1 83:2 83:2 83:3 83:3 83:5 83:6 83:8 83:9 83:9 83:11 83:13 83:16 83:17 83:17

**the(301)** 83:18 83:18 83:19 83:20 83:20 83:20 83:22 83:23 83:23 83:24 83:25 83:25 84:1 84:2 84:2 84:3 84:5 84:5 84:6 84:7 84:8 84:8 84:9 84:12 84:14 84:17 84:19 84:19 84:20 84:21 84:22 84:25 85:2 85:3 85:6 85:8 85:10 85:14 85:21 85:23 85:25 86:4 86:8 86:8 86:9 86:10 86:11 86:12 86:12 86:15 86:16 86:19 86:20 86:22 86:23 86:25 87:1 87:2 87:4 87:4 87:6 87:7 87:11 87:13 87:14 87:20 87:22 87:23 87:24 87:25 88:3 88:4 88:4 88:5 88:5 88:7 88:8 88:10 88:13 88:18 88:22 88:22 88:23 88:24 89:3 89:8 89:11 89:13 89:16 89:18 89:19 89:23 89:24 89:25 90:1 90:2 90:4 90:6 90:11 90:14 90:15 90:16 90:18 90:19 90:20 90:24 90:25 91:1 91:1 91:2 91:3 91:5 91:7 91:8 91:9 91:9 91:10 91:14 91:17 91:18 91:23 91:24 91:24 92:1 92:2 92:3 92:5 92:5 92:7 92:10 92:13 92:15 92:17 92:17 92:20 92:20 92:21 92:22 92:22 92:24 92:25 92:25 92:25 93:1 93:1 93:2 93:5 93:9 93:11 93:12 93:15 93:16 93:17 93:17 93:20 93:24 93:24 94:1 94:1 94:2 94:2 94:3 94:3 94:4 94:8 94:10 94:12 94:16 94:17 94:25 94:25 95:1 95:2 95:4 95:5 95:7 95:9 95:12 95:13 95:15 95:15 95:16 95:18 95:19 95:23 95:25 96:3 96:4 96:5 96:6 96:7 96:8 96:8 96:9 96:10 96:11 96:12 96:14 96:16 96:18 96:18 96:19 96:22 96:22 96:24 96:24 97:2 97:7 97:9 97:9 97:9 97:11 97:14 97:14 97:16 97:18 97:18 97:21 97:22 97:25 98:2 98:4 98:4 98:6 98:9 98:12 98:13 98:14 98:17 98:18 98:19 98:21 98:21 98:24 99:1 99:2 99:2 99:3 99:5 99:6 99:8 99:11 99:11 99:14 99:14 99:15 99:16 99:22 99:25 100:2 100:4 100:9 100:10 100:10 100:12 100:13 100:14 100:18 100:19 100:19 100:20 100:23 100:25 101:1 101:1 101:2 101:4 101:6 101:8 101:11 101:11 101:15 101:16 101:17 101:18 101:19 101:20 101:24 102:1 102:3 102:4 102:5 102:6 102:6 102:7 102:8

**the(301)** 102:9 102:10 102:12 102:13 102:15 102:16 102:17 102:19 102:21 102:23 102:24 102:25 103:1 103:4 103:8 103:9 103:9 103:10 103:11 103:12 103:13 103:14 103:15 103:16 103:16 103:18 103:18 103:20 103:22 103:23 103:25 104:2 104:3 104:4 104:6 104:6 104:6 104:7 104:7 104:7 104:8 104:9 104:10 104:10 104:11 104:11 104:12 104:13 104:14 104:14 104:14 104:15 104:16 104:19 104:19 104:22 104:23 104:24 104:25 105:1 105:2 105:3 105:4 105:5 105:5 105:7 105:8 105:9 105:10 105:11 105:13 105:14 105:16 105:18 105:18 105:20 105:21 105:22 105:22 105:24 105:24 106:1 106:3 106:5 106:6 106:7 106:8 106:14 106:15 106:17 107:5 107:6 107:7 107:8 107:9 107:9 107:10 107:10 107:11 107:12 107:12 107:12 107:14 107:15 107:16 107:17 107:17 107:18 107:19 107:21 107:22 107:23 107:23 107:24 107:25 108:1 108:2 108:4 108:6 108:7 108:9 108:10 108:11 108:11 108:13 108:15 108:18 108:23 108:24 108:25 109:2 109:3 109:4 109:5 109:6 109:9 109:10 109:10 110:1 110:9 110:9 110:10 110:10 110:11 110:13 110:15 110:16 110:16 110:18 110:20 110:21 110:22 112:2 111:3 111:4 111:7 111:7 111:8 111:10 111:11 111:11 111:12 111:14 111:15 111:15 111:17 111:18 111:19 111:20 111:21 111:24 111:25 111:25 112:3 112:5 112:10 112:12 112:16 112:20 112:20 112:24 112:24 112:25 113:1 113:3 113:7 113:8 113:8 113:11 113:11 113:12 113:12 113:13 113:14 113:14 113:16 113:16 113:17 113:19 113:21 113:22 113:24 113:24 113:25 114:2 114:3 114:4 114:4 114:6 114:8 114:10 114:10 114:11 114:13 114:15 114:15 114:16 114:16 114:17 114:21 114:22 114:24 114:25 115:1 115:1 115:2 115:3 115:5 115:15 115:18 115:19 115:22 115:24 116:2 116:3 116:4 116:6 116:7 116:10 116:13 116:14 116:15 116:16 116:18 116:18 116:19 116:20 116:21 116:22 117:1 117:2 117:3 117:3 117:4 117:6 117:8 117:11 117:13 117:15 117:18 117:20 117:21 117:21 117:22 117:24 118:2

**the(301)** 118:5 118:9 118:10 118:12 118:14 118:16 118:16 118:18 118:20 118:22 119:1 119:1 119:2 119:2 119:4 119:6 119:7 119:9 119:10 119:12 119:14 119:15 119:16 119:17 119:21 119:21 119:25 120:2 120:2 120:3 120:4 120:7 120:8 120:10 120:10 120:19 120:21 120:23 120:23 121:1 121:4 121:6 121:7 121:11 121:16 121:20 121:22 121:22 121:23 121:25 122:1 122:4 122:7 122:12 122:20 122:22 122:24 122:25 123:10 123:12 123:12 123:13 123:13 123:18 123:18 123:20 123:21 124:5 124:8 124:12 124:12 124:14 124:18 124:19 124:20 124:24 125:1 125:3 125:3 125:3 125:6 125:16 125:16 125:19 125:20 126:2 126:4 126:5 126:9 126:10 126:12 126:13 126:14 126:15 126:15 126:17 126:25 127:1 127:3 127:3 127:4 127:7 127:13 127:14 127:20 127:21 127:22 127:22 127:23 128:1 128:4 128:4 128:5 128:6 128:9 128:15 128:17 128:19 128:19 128:22 128:22 128:23 128:25 129:1 129:6 129:6 129:9 129:12 129:14 129:16 129:21 129:25 130:1 130:2 130:6 130:7 130:7 130:8 130:8 130:10 130:11 130:14 130:16 130:19 130:22 130:25 131:3 131:7 131:10 131:13 131:15 131:19 131:20 131:21 131:21 131:22 131:24 131:24 131:25 132:1 132:2 132:3 132:3 132:6 132:10 132:10 132:11 132:13 132:15 132:15 132:17 132:19 132:22 132:24 132:25 133:5 133:6 133:11 133:13 133:15 133:18 133:20 133:24 133:24 133:25 134:1 134:3 134:4 134:4 134:5 134:7 134:9 134:9 134:12 134:14 134:18 134:23 134:25 135:4 135:7 135:8 135:11 135:13 135:13 135:15 135:19 135:21 135:22 135:25 135:25 136:2 136:3 136:4 136:6 136:9 136:10 136:12 136:13 136:16 136:17 136:18 136:24 136:25 137:1 137:3 137:3 137:4 137:6 137:8 137:9 137:10 137:17 137:18 137:19 137:22 137:25 138:1 138:4 138:5 138:11 138:11 138:16 138:18 138:18 138:18 138:19 138:20 138:21 138:21 138:22 138:23 138:23 139:2 139:3 139:4 139:4 139:6 139:7 139:8 139:10 139:11 139:12 139:14 139:19 139:20 139:21 139:22 139:22 139:23 139:24 139:24 140:2 140:3 140:3

**the(301)** 140:5 140:5 140:6 140:8 140:16 140:17 140:19 140:20 140:20 140:22 140:23 140:24 141:5 141:7 141:9 141:11 141:11 141:12 141:14 141:16 141:17 141:21 141:21 141:22 141:22 141:23 141:25 141:25 142:1 142:1 142:2 142:4 142:7 142:11 142:13 142:15 142:17 142:17 142:18 142:20 142:20 143:1 143:2 143:3 143:4 143:7 143:9 143:10 143:13 143:15 143:19 143:23 143:24 144:1 144:2 144:4 144:4 144:4 144:7 144:8 144:9 144:10 144:13 144:15 144:17 144:18 144:23 144:23 144:25 145:2 145:3 145:4 145:5 145:6 145:6 145:8 145:8 145:8 145:10 145:10 145:11 145:13 145:15 145:21 145:23 146:4 146:6 146:7 146:9 146:10 146:10 146:11 146:13 146:15 146:17 146:19 146:21 146:22 146:23 146:24 146:24 146:25 147:1 147:1 147:3 147:4 147:5 147:5 147:6 147:9 147:11 147:12 147:14 147:14 147:15 147:16 147:18 147:18 147:19 147:22 147:25 148:2 148:3 148:7 148:7 148:7 148:10 148:12 148:15 148:15 148:17 148:18 148:18 148:23 148:24 148:25 149:1 149:2 149:3 149:8 149:8 149:9 149:11 149:12 149:13 149:14 149:15 149:16 149:17 149:20 149:20 149:21 149:22 149:24 150:2 150:6 150:8 150:9 150:9 150:10 150:13 151:3 151:17 151:18 151:22 151:25 152:2 152:4 152:6 152:10 152:10 152:18 152:21 152:22 152:23 152:23 152:24 153:3 153:6 153:8 153:9 153:11 153:12 153:16 153:17 153:18 153:19 153:22 153:23 154:2 154:3 154:8 154:13 154:15 154:18 154:20 154:21 154:25 154:25 155:4 155:7 155:11 155:15 155:15 155:19 155:20 155:21 155:22 155:23 155:24 155:25 156:4 156:9 156:11 156:13 156:14 156:19 156:23 156:24 157:2 157:5 157:15 157:5 157:9 157:13 157:13 157:16 157:20 157:21 157:23 158:2 158:5 158:7 158:8 158:13 158:14 158:15 158:20 158:21 159:2 159:3 159:3 159:7 159:9 159:10 159:11 159:14 159:16 159:18 159:19 159:22 159:23 159:25 160:1 160:1 160:4 160:6 160:7 160:9 160:10 160:10 160:21 160:21 160:22 160:23

**the(301)** 160:23 160:24 161:2 161:3 161:5 161:5 161:6 161:6 161:6 161:8 161:9 161:9 161:10 161:13 161:13 161:13 161:15 161:16 161:17 161:18 161:21 161:22 161:24 162:1 162:3 162:7 162:9 162:11 162:12 162:13 162:14 162:17 162:18 162:19 162:20 162:21 162:22 162:22 162:23 163:1 163:5 163:7 163:8 163:8 163:9 163:10 163:10 163:11 163:11 163:12 163:13 163:13 163:15 163:19 163:20 163:25 163:25 164:3 164:6 164:7 164:7 164:8 164:8 164:14 164:14 164:15 164:15 164:15 164:17 164:18 164:18 164:20 164:23 164:25 164:25 164:25 165:1 165:1 165:3 165:4 165:6 165:9 165:10 165:11 165:12 165:13 165:14 165:17 165:19 165:20 165:21 165:24 166:5 166:6 166:8 166:9 166:10 166:12 166:12 166:13 166:14 166:15 166:16 166:17 166:18 166:19 166:21 166:23 166:25 166:25 167:3 167:5 167:6 167:10 167:11 167:14 167:16 167:16 167:17 167:19 167:20 167:22 167:25 167:25 168:2 168:6 168:7 168:8 168:11 168:11 168:16 168:16 168:11 168:12 168:12 168:13 168:15 168:17 168:18 168:21 169:2 169:2 169:3 169:4 169:9 169:11 169:12 169:13 169:13 169:14 169:14 169:15 169:16 169:17 169:19 169:19 169:20 169:21 169:22 169:23 169:24 169:25 170:2 170:4 170:5 170:7 170:6 170:8 170:10 170:11 170:11 170:13 170:17 170:19 170:22 170:24 171:1 171:1 171:2 171:4 171:8 171:10 171:10 171:11 171:13 171:15 171:18 171:18 171:20 171:21 171:22 171:22 171:23 171:24 171:25 172:2 172:3 172:4 172:8 172:9 172:10 172:11 172:12 172:14 172:15 172:17 172:20 172:20 172:22 172:23 172:24 173:1 173:8 173:9 173:10 173:10 173:11 173:11 173:12 173:14 173:14 173:17 173:18 173:19 173:20 173:22 173:22 173:23 173:24 173:25 174:1 174:2 174:3 174:5 174:6 174:7 174:8 174:9 174:10 174:10 174:13 174:14 174:15 174:18 174:19 174:20 174:20 174:21 174:23 174:23 174:24 174:25 175:2 175:3 175:4 175:6 175:9 175:10 175:11 175:11 175:16 175:17 175:18 175:19 175:20 175:21 175:22 175:23 175:25 176:1 176:3 176:6 176:8 176:12 176:13 176:14 176:17 176:17 176:23 176:24 176:25 177:1 177:4

**the(295)** 177:4 177:5 177:6 177:6 177:7 177:7 177:8 177:8 177:9 177:10 177:10 177:11 177:12 177:13 177:13 177:14 177:14 177:15 177:17 177:20 177:20 177:21 178:1 178:1 178:5 178:6 178:8 178:8 178:9 178:9 178:12 178:15 178:17 178:18 178:23 179:1 179:3 179:6 179:7 179:7 179:8 179:13 179:17 179:19 179:23 179:24 179:25 180:1 180:1 180:2 180:5 180:5 180:6 180:7 180:9 180:9 180:10 180:11 180:16 180:18 180:20 180:25 181:6 181:6 181:16 181:16 181:18 181:21 181:24 181:25 182:1 182:2 182:3 182:4 182:5 182:10 182:10 182:11 182:11 182:12 182:14 182:14 182:16 182:17 182:18 182:19 182:22 182:23 182:23 182:25 183:1 183:2 183:3 183:4 183:7 183:9 183:11 183:14 183:14 183:15 183:15 183:18 183:19 183:21 183:24 183:24 183:25 184:1 184:3 184:5 184:6 184:7 184:9 184:9 184:13 184:14 184:14 184:15 184:17 184:21 184:21 184:24 184:25 185:1 185:2 185:3 185:5 185:6 185:6 185:7 185:9 185:9 185:10 185:12 185:13 185:14 185:16 185:18 185:19 185:19 185:21 185:21 185:22 185:23 185:24 185:25 186:1 186:2 186:4 186:5 186:6 186:7 186:7 186:7 186:8 186:14 186:14 186:15 186:15 186:15 186:16 186:16 186:18 186:19 186:20 186:20 186:21 186:21 186:23 186:24 186:24 186:24 186:25 186:25 187:2 187:3 187:4 187:6 187:7 187:9 187:10 187:10 187:17 187:18 187:22 187:23 187:25 188:1 188:2 188:2 188:4 188:8 188:9 188:10 188:11 188:13 188:13 188:14 188:17 188:18 189:5 188:19 188:19 189:20 189:21 189:22 189:23 190:3 190:6 190:7 190:7 190:8 190:9 190:10 190:11 190:13 190:14 190:16 190:18 190:19 190:20 190:23 190:24 190:25 191:1 191:2 191:3 191:9 191:15 191:16 191:18 191:19 191:18 191:19 191:19 191:15 191:17 191:19 191:19 192:1 192:3 192:3 192:4

**their(112)** 12:10 13:1 13:9 13:13 13:17 13:18 15:9 16:13 16:14 16:18 17:3 18:15 19:25 21:3 23:18 24:9 25:9 25:13 25:17 26:1 26:12 26:22 28:21 28:21 29:5 29:10 29:20 49:22 52:17 55:17 55:25 56:3 56:4 58:20 63:21 64:1 67:16 68:3 71:11 72:9 73:11 73:22 74:15 76:12 76:24 77:6 77:7 79:2 79:6 83:12 83:13 83:25 84:7 84:8 85:9 87:7 87:9 87:17 87:19 87:20 87:20 93:6 94:21 98:9 104:25 107:10 107:22 108:16 109:24 110:11 111:15 112:5 112:6 115:22 119:16 121:23 123:14 124:11 136:20 138:17 138:22 139:1 141:24 141:24 143:4 144:11 145:1 148:16 151:14 151:5 151:15 151:17 152:1 156:7 156:20 157:3 157:15 157:17 158:22 164:17 169:12 180:14 180:15 180:21 180:22 180:23 184:4 184:24 185:24

| Word | Page:Line |
|---|---|

them(66) 12:9 13:18 18:9 21:1 21:13 22:7 28:6 28:8 28:20 34:12 42:19 51:13 51:19 56:3 56:4 56:23 58:21 61:1 62:20 63:1 63:2 71:18 76:6 76:24 79:14 79:18 80:1 82:5 87:18 112:6 112:13 114:7 118:3 121:6 121:7 122:1 123:15 124:19 124:21 126:7 127:21 127:21 127:24 127:25 133:7 134:10 138:25 139:17 144:21 148:5 150:20 152:18 156:1 158:16 158:25 161:12 162:21 169:20 179:10 179:11 183:20 185:23 188:25

them(1) 60:14

themes(1) 59:6

themselves(4) 84:4 87:8 108:25 189:1

then(71) 9:19 15:12 20:3 23:5 31:2 32:20 33:6 33:10 40:20 51:18 53:4 56:20 62:21 62:24 63:4 64:23 66:12 69:15 69:20 73:4 73:10 76:15 76:23 77:21 78:14 78:15 78:17 79:25 80:2 80:18 82:16 85:4 89:24 90:3 92:9 100:18 101:17 103:5 103:14 105:3 112:18 113:4 114:6 118:13 124:18 125:22 125:23 126:2 126:5 126:14 126:20 127:3 131:5 132:4 134:4 137:20 138:17 139:20 145:10 149:17 154:25 155:2 161:3 163:4 168:10 174:13 177:20 183:25 191:1 191:3 191:6

theory(3) 126:18 126:19 126:19

therapy(1) 37:25

there(119) 12:4 12:19 13:12 14:17 20:14 21:7 21:20 21:21 22:1 22:9 22:11 22:16 22:17 24:16 25:14 26:24 26:25 27:12 28:17 32:22 36:9 37:14 37:19 50:24 52:13 55:14 55:23 56:22 58:5 61:1 62:5 63:1 65:13 67:13 68:23 69:1 69:1 69:23 70:1 70:3 72:18 72:22 75:1 80:9 81:5 81:20 82:8 83:15 89:17 91:16 95:10 98:10 99:4 99:6 100:3 101:7 104:19 109:12 109:23 110:25 111:16 111:23 112:9 112:15 112:19 112:21 113:12 113:14 113:21 115:17 115:19 116:10 116:25 116:25 122:16 123:24 124:3 124:16 124:23 125:8 126:5 127:11 127:11 133:8 137:24 141:3 142:8 143:6 144:5 144:10 148:1 148:20 149:19 151:15 156:16 157:11 158:18 163:9 165:15 170:1 174:5 174:16 175:8 178:19 178:25 180:4 182:6 182:18 182:25 183:3 184:18 185:14 186:9 186:10 187:13 189:11 189:23 190:17

there's(35) 14:12 14:13 14:14 19:13 22:2 23:5 25:22 27:9 29:7 37:23 42:18 50:23 52:18 55:16 56:10 60:7 64:13 65:3 66:21 66:22 73:24 74:2 77:11 77:19 77:21 77:25 79:2 80:11 82:4 85:9 85:22 86:6 88:20 88:21 99:11

thereabouts(1) 122:22

thereafter(1) 146:1

thereby(1) 186:11

therefore(13) 17:4 17:20 42:4 84:9 150:24 175:1 181:16 181:21 182:8 182:18 183:4 187:1

therein(2) 93:18 95:2

there'd(2) 123:25 124:2

there'll(2) 112:18 113:5

there's(30) 111:19 111:21 111:23 112:4 113:5 113:22 117:22 118:25 120:21 121:2 123:25 125:21 131:1 133:3 133:4 133:24 140:24 148:1 149:24 161:11 162:9 163:3 167:23 179:22 182:5 183:15 183:22 183:24 188:11 190:8

these(73) 17:7 21:13 21:16 23:8 24:1 24:6 26:12 27:17 32:9 34:18 51:12 53:16 57:14 58:11 58:22 59:18 70:10 87:2 91:17 95:20 95:23 100:5 108:14 108:19 115:3 118:1 122:9 127:20 129:1 136:21 136:23 137:23 138:14 138:21 138:23 139:9 139:13 140:4 140:16 140:25 141:15 142:3 142:24 142:24 143:10 143:11 143:12 143:13 144:4 144:9 144:13 148:6 159:2 159:7 161:17 161:20 162:12 167:8 167:24 169:12 172:6 173:2 173:4 174:3 181:14 181:18 186:16

they(178) 12:14 12:15 15:22 16:13 16:17 16:18 20:22 21:23 23:7 23:24 24:11 24:12 24:22 26:2 27:4 28:4 28:16 28:18 28:18 28:19 34:14 35:19 39:15 39:23 42:1 49:20 54:14 55:16 56:14 61:3 61:4 61:25 62:3 62:3 62:8 63:20 63:23 64:6 70:17 71:4 71:11 71:12 71:13 71:16 72:8 72:9 72:10 72:10 73:9 76:21 80:1 80:13 81:13 81:13 81:14 82:7 82:8 82:12 83:9 83:17 87:9 87:19 87:25 88:21 89:11 92:23 97:11 100:4 100:8 100:25 102:9 100:9 100:10 100:21 101:16 101:25 103:6 105:22 107:16 108:19 109:3 109:7 110:5 110:7 110:9 112:11 112:16 112:23 113:2 113:15 114:8 114:8 114:20 115:9 115:16 115:21 116:5 118:24 119:6 119:13 120:1 120:13 120:20 120:25 121:2 121:14 121:11 122:2 122:8 122:10 122:19 122:21 123:12 123:6 123:22 123:23 123:23 124:2 124:4 124:13 125:19 124:17 124:20 124:25 127:4 127:5 127:15 127:18 136:1 137:17 137:23 138:6 138:7 138:17 139:1 139:10 139:20 140:25 141:15 142:2 142:13 143:10 143:11 145:1 145:2 145:19 145:23 147:24 151:8 151:16 151:25 152:1 152:12 152:16 153:7 156:18 157:3 158:2 158:10 159:16 159:23 162:6 162:10 163:9 163:11 165:16 166:19 166:24 165:20 165:24 166:16 166:17 169:1 169:6 169:16 170:1 172:22 179:2 180:8 183:24 185:8 185:19 186:16 190:25 191:1 191:4 191:6

thorny(1) 61:13

thorough(1) 43:2

those(90) 11:6 12:10 12:23 13:14 13:25 14:2 14:3 14:5 21:24 26:14 27:3 27:8 28:2 28:7 28:14 28:25 59:9 71:22 72:15 72:16 72:23 73:1 73:14 73:18 73:20 73:21 73:25 74:6 75:14 77:12 81:16 82:1 82:4 86:11 87:18 91:7 96:12 99:18 99:19 100:9 103:5 103:11 103:12 113:14 113:16 116:13 118:1 118:20 120:5 121:1 121:3 122:10 122:11 122:15 123:19 123:21 123:25 124:19 125:1 125:2 125:3 125:5 125:13 127:10 127:14 127:19 128:12 128:14 129:24 129:25 130:21 131:4 136:16 137:5 139:14 143:13 143:16 143:18 144:2 144:6 144:17 144:20 145:1 145:2 145:19 147:22 149:18 151:16 151:15 151:21 152:1 152:11 153:6 153:18 157:3 157:18 159:13 159:17 163:3 160:9 161:17 162:8

though(4) 65:8 96:8 115:20 116:24

thought(5) 49:4 74:12 118:14 162:8 189:22

thoughtful(2) 180:23 190:25

thoughtfully(1) 9:16

three(16) 12:2 14:18 18:5 118:7 125:2 125:4 125:21 126:2 136:3 137:4 141:11 142:24 143:10 148:5 160:25 162:20

they're(22) 13:4 14:23 16:12 21:9 21:10 21:11 23:24 24:11 27:23 28:17 30:13 30:14 54:19 70:16 71:9 72:19 76:20 76:21 80:1 86:20 89:10 99:9

they've(6) 21:5 21:14 23:10 55:3 77:6 87:5

they'll(2) 119:15 119:16

they're(30) 35:13 109:22 109:22 109:23 110:22 115:21 123:13 123:22 127:15 133:8 134:20 141:4 141:5 146:24 149:17 150:22 151:16 151:17 151:21 151:24 151:24 152:3 152:12 152:13 153:10 156:1 158:4 158:9 180:12 189:20

they've(6) 109:10 122:12 156:20 157:2 158:3 158:8

thing(14) 26:19 26:23 51:23 54:2 60:9 69:4 71:10 74:14 76:7 99:25 129:17 144:8 163:12 188:11

things(17) 19:11 23:21 57:10 64:2 64:9 98:9 105:16 110:13 120:11 124:20 141:5 149:19 153:3 157:6 159:5 159:15 169:25

think(105) 9:17 19:24 20:23 21:4 22:6 25:1 26:9 26:16 27:9 42:14 50:7 50:23 51:20 53:14 54:23 54:24 56:12 56:20 57:17 57:18 60:2 60:8 60:20 61:7 61:20 61:21 62:9 65:2 66:14 66:24 70:8 72:18 74:2 74:6 75:3 75:6 76:7 76:11 77:20 77:25 79:4 79:14 83:6 86:5 86:10 86:20 87:22 88:14 89:15 89:16 94:15 94:23 95:18 96:9 98:21 101:7 101:14 102:25 106:4 106:24 107:11 112:21 114:25 116:9 116:17 116:24 118:19 119:11 119:23 120:12 121:4 122:19 123:4 124:5 124:7 125:7 133:3 133:6 133:10 133:17 134:8 133:17 140:13 142:19 143:7 143:13 143:23 143:25 144:24 145:6 147:16 148:12 149:23 152:5 153:14 159:8 160:13 160:15 163:24 164:19 165:4 178:23 179:16 181:10 181:11

thinker(1) 60:24

thinking(1) 79:7

third(31) 5:21 14:15 15:21 17:22 119:19 125:20 141:19 142:15 145:16 145:11 149:13 150:22 162:19 162:21 166:21 166:25 168:11 169:8 169:9 169:14 180:2 180:16 184:20 183:18 185:14 185:18 185:23 186:14 188:21 188:21

third-party(3) 136:13 137:10 146:10

this(257) 10:12 11:7 11:18 12:24 15:7 15:11 15:13 15:21 15:22 16:12 16:22 17:1 17:24 18:16 19:19 19:24 20:18 21:14 21:15 21:15 22:8 22:12 22:18 23:11 23:19 24:15 25:15 25:19 26:14 26:7 26:8 26:8 26:19 26:21 26:23 27:6 27:19 27:22 28:4 28:8 28:11 28:15 28:15 28:19 28:25 29:1 29:16 29:22 30:17 30:21 31:4 31:18 33:4 33:18 36:13 37:12 43:3 44:25 45:8 46:6 47:17 49:21 51:2 51:13 51:16 52:10 53:11 54:13 55:7 55:19 56:2 58:10 64:10 64:14 64:18 64:19 65:21 66:2 66:25 71:6 72:8 72:14 74:17 74:17 74:21 74:22 74:23 77:16 77:23 78:4 79:14 85:20 88:18 88:24 89:1 89:3 89:6 89:25 90:19 91:21 92:25 93:5 94:7 94:9 94:14 94:14 96:8 100:11 100:21 101:10 107:11 107:17 108:16 109:3 109:5 109:7 110:5 110:7 111:9 112:11 112:16 112:23 113:2 113:15 114:8 114:8 114:20 115:9 116:16 117:21 118:8 118:24 119:6 119:13 120:1 120:13 120:22 120:25 121:2 121:11 121:14 121:11 122:2 122:10 122:12 122:15 123:12 123:6 123:23 123:23 124:2 124:13 124:3 124:11 124:19 124:25 131:12 131:13 133:3 133:13 134:17 134:21 136:11 137:1 137:17 138:6 138:7 138:18 139:1 140:7 140:15 141:5 141:15 142:3 145:13 146:24 147:17 149:11 151:8 151:24 152:5 153:4 153:8 157:3 157:12 158:15 158:16 159:9 159:10 160:8 160:16 166:9 166:19 166:24 167:1 169:6 170:5 170:17 170:18 172:14 172:22 173:1 173:15 174:20 176:16 179:9 179:13 179:15 180:21

tory's(1) 7:24

total(2) 41:2 96:19

totality(1) 187:7

totally(1) 56:3

touch(2) 11:4 100:25

tough(1) 61:13

toward(1) 76:21

towards(9) 59:5 60:12 76:24 77:10 77:16 78:18 83:4 87:8 107:24

tower(1) 2:10

track(1) 140:6

tracking(1) 140:16

trade(24) 3:45 6:29 13:2 32:3 35:10 59:9 63:24 71:4 72:18 72:23 94:16 94:18 94:21 97:18 98:19 98:24 124:18 125:14 145:4 145:13 183:11 185:10

traded(1) 91:23

trader(1) 62:1

trading(1) 57:15

tradition(1) 185:2

trained(1) 46:5

transaction(3) 12:6 64:24 65:2

transactions(1) 64:23

transcriber(1) 192:8

transcript(5) 1:1 149 178:8 178:9 192:3

transfer(1) 59:16

transferred(3) 23:6 97:11 172:6

treat(2) 119:20 137:6

treated(14) 13:6 15:9 16:12 16:14 17:2 17:4 63:25 69:22 88:11 89:10 98:8 153:6 162:13 166:17

treating(1) 123:22

treatment(21) 17:22 17:23 17:23 18:7 18:10 18:14 23:22 26:12 31:19 51:6 51:6 51:8 73:4 74:5 86:17 86:22 87:15 95:2 98:13 175:19 182:6

treatments(2) 12:3 87:25

treats(1) 16:20

tremendous(1) 112:22

threshold(4) 76:23 78:21 142:5 144:6

thresholds(2) 78:16 78:22

through(43) 19:24 28:10 36:23 38:16 38:24 40:8 42:19 43:16 46:24 56:3 58:7 62:13 62:25 69:10 70:15 75:13 76:16 77:19 77:19 91:12 100:24 103:8 104:8 112:16 124:19 125:13 126:1 130:16 133:15 137:19 137:21 138:22 139:25 144:8 156:5 167:8 172:20 172:20 173:3 174:4 175:14 177:8 177:9

throughout(11) 17:10 17:12 26:23 68:20 85:9 93:25 125:16 138:20 139:11 143:2 143:10

throw(1) 78:9

thunder(1) 29:14

thursday(1) 146:1

thus(2) 99:9 186:9

thynge(1) 126:25

til(1) 66:7

tilman(1) 8:13

time(69) 22:8 28:20 29:7 29:8 31:2 32:17 33:11 41:11 41:24 42:18 50:16 51:14 51:16 51:16 55:2 58:15 59:12 64:14 64:22 68:9 70:6 71:7 82:25 85:20 87:13 88:25 92:7 99:17 99:18 100:21 106:5 106:6 87:15 111:21 111:24 112:7 112:8 112:15 114:18 114:25 116:24 117:14 120:20 122:24 122:25 123:20 125:12 125:14 125:16 126:5 128:14 129:12 129:23 158:5 161:6 163:9 163:14 164:7 165:10 165:11 165:13 170:2 171:1 179:21 180:25 181:12 183:9

timeframe(4) 113:8 116:7 116:14 134:4

timeline(1) 124:5

times(4) 64:21 64:25

times(4) 34:13 78:1 141:18 164:2

timing(1) 133:21

timothy(2) 5:26 7:45

tinker(3) 118:25 119:9 120:3

tip(1) 70:24

today(59) 19:23 20:12 29:15 29:16 42:18 52:11 57:6 57:18 58:9 58:12 59:24 60:9 60:21 61:15 61:20 61:22 62:2 62:6 63:17 71:3 72:19 77:15 79:9 80:4 88:20 91:4 92:21 93:19 97:5 97:9 109:13 111:11 114:23 115:5 123:4 135:24 141:7 142:21 143:5 143:8 145:5 150:7 155:21 156:2 160:8 160:22 163:20 165:22 171:9 174:9 174:10 176:16 179:9 179:19 179:15 180:21

today's(1) 73:10

today's(3) 109:6 110:8 177:13

together(10) 13:18 21:14 57:19 69:24 70:10 71:5 78:11 128:2 183:9 184:4

told(5) 74:18 123 123:8 153:8 153:14 165:14

tomorrow(3) 135:1 135:4 181:10

took(11) 18:17 23:11 73:2 87:19 125:22 127:3 137:23 150:9 161:6 163:6 181:16

trial(20) 86:9 92:10 92:10 92:25 93:12 105:6 123:7 124:1 126:2 126:10 126:11 126:15 128:1 147:19 149:10 159:1 159:4 183:1 183:25 186:15

tribune(1) 148:13

tried(5) 74:16 88:9 110:6 112:11 149:5

trillium(2) 37:20 37:22

triple(1) 70:1

trouble(1) 9:11

truly(1) 84:13

trust(17) 5:33 6:25 8:13 41:16 97:10 117:18 119:14 120:5 122:21 126:3 149:7 150:6 152:21 152:24 152:24 190:12 190:12

trustee(3) 4:16 4:29 4:29 96:4 97:9 100:10 107:9 107:12 107:22 108:6 108:12 109:25 110:11 111:21 111:25 112:24 112:25 113:11 113:17 115:23 116:16 117:18 117:21 117:24 119:7 136:24 137:4 137:9 137:22 140:17 141:11 141:21 141:25 142:2 142:4 144:4 144:25 146:23 146:24 147:1 147:1 147:4 147:20 147:23 148:6 148:8 148:25 149:4 149:11 149:21 150:7 151:18 151:25 152:20 152:23 178:22 182:11 190:9 190:14

trustee's(1) 95:12

trustees(4) 126:3 139:14 148:16 152:19

trustee's(1) 116:21 135:23 150:10

try(13) 23:20 50:17 70:6 72:2 83:12 83:13 87:8 92:11 130:17 141:6 156:21 159:5 178:24

trying(5) 54:19 59:1 154:1 158:4 181:10

tuesday(1) 9:1

tunnell(2) 1:24 184:20

turn(12) 63:9 84:25 89:24 97:17 123:20 123:22 135:12 150:14 161:24 161:25 166:6 172:15

turned(2) 73:22 93:15

turning(1) 101:18

tweed(2) 3:24 6:13

two(37) 12:4 15:25 19:23 24:14 25:21 27:18 27:21 51:9 53:14 69:14 92:2 92:11 99:8 105:23 110:13 115:11 116:1 119:11 130:11 136:12 141:11 156:16 157:16 160:23 160:25 161:9 161:12 162:16 162:20 163:23 166:11 169:25 170:8 171:13 182:4 188:16 189:9

tyler(3) 97:4 117:17 150:6

type(4) 55:18 75:8 88:24 117:22

types(1) 70:18

typically(1) 116:14

u.k(7) 3:11 5:33 30:4 39:9 39:11 39:12 58:13

u.s(83) 4:29 4:29 10:17 11:13 11:18 11:19 13:8 29:15 31:6 39:9 39:10 39:12 41:3 41:4 41:4 41:4 42:18 58:7 58:16 60:20 61:16 62:15 63:24 67:25 68:23 69:2 69:5 69:9 69:11 69:12 69:14 69:19 70:3 70:12 71:7 71:13 71:15 72:23 72:24 73:2 74:4 77:11 79:11 83:9 90:23 91:9 92:9 92:12 93:23 93:5 93:11 94:3 95:12 96:22 98:14 135:23 134:17 135:24 136:23 137:22 139:4 140:17 141:7 141:11 141:13 141:21 141:25 142:5 142:8 144:18 147:25 149:12 149:21 150:10 162:24 165:12 189:16

u.s.-only(1) 148:3

ucc(1) 148:3

ultimate(2) 82:19 83:15

ultimately(7) 59:4 83:16 88:25 91:25 92:16 115:1 140:3

umbrella(1) 72:3

unable(1) 140:15

uncertain(1) 57:11

uncertainty(6) 11:16 27:7 76:10 91:2 91:19 91:21

unclear(2) 19:13 57:16

uncomfortable(1) 186:10

uncompromised(1) 41:17

unconstitutional(3) 34:22 35:3 35:24

uncontested(1) 86:1

undeliverable(4) 136:15 137:12 139:16 182:14

under(63) 12:3 12:3 13:5 16:16 26:12 32:7 32:9 34:22 35:17 35:20 35:24 36:10 39:11 40:14 40:20 42:8 43:3 45:2 45:18 46:20 46:22 47:24 49:11 52:20 52:22 53:22 53:24 56:7 66:14 68:14 73:5 75:21 76:13 77:3 84:8 84:22 98:9 98:17 100:12 104:10 105:24 109:21 110:18 111:12 115:21 118:15 118:10 121:23 122:13 128:22 129:24 132:2 139:25 146:25

understand(23) 20:2 27:22 27:22 28:19 28:19 32:15 43:8 46:5 55:5 62:2 62:5 86:16 86:15 108:15 113:16 118:10 121:23 122:3 123:14 128:22 129:24 132:2 139:25 146:25

understanding(3) 78:3 96:14 190:14

understated(1) 79:24

understood(2) 42:20 95:23

unearthed(1) 47:4

unemployed(2) 21:9 55:14

unfair(3) 73:7 98:11 166:22

unfold(1) 187:24

unfold(1) 114:19

unfortunate(1) 179:24

| Word | Page:Line |
|---|---|
| unfortunately(6) | 26:13 56:14 58:24 92:8 180:12 180:18 |
| unfunded(1) | 21:11 |
| unhappy(1) | 179:14 |
| unifor(1) | 27:15 |
| uninsured(1) | 23:25 |
| union(1) | 49:12 |
| unique(8) | 63:2 87:1 87:18 89:12 147:16 147:17 182:25 183:3 |
| uniquely(2) | 147:16 147:17 |
| united(10) | 1:1 1:20 12:4 144:4 148:8 178:2 182:10 182:11 186:8 186:11 |
| universe(1) | 148:2 |
| unknown(6) | 29:12 29:19 29:24 30:3 163:7 168:23 |
| unleash(1) | 71:12 |
| unleashing(1) | 89:4 |
| unless(14) | 32:8 36:21 42:6 44:23 45:1 80:11 80:21 84:24 97:20 116:4 146:12 149:25 153:1 153:3 |
| unlike(1) | 87:25 |
| unlock(1) | 57:24 |
| unnecessary(1) | 95:5 |
| unprecedented(3) | 92:11 123:7 147:18 |
| unquote(1) | 63:24 |
| unreasonable(1) | 30:14 |
| unrestricted(1) | 124:11 |
| unsecured(22) | 8:25 29:21 71:8 71:10 71:14 76:22 78:18 78:23 82:14 83:10 88:13 90:14 90:23 91:22 93:7 93:10 98:15 111:16 149:3 151:20 167:22 184:22 |
| unsuccessful(3) | 82:7 92:9 157:12 |
| unsuccessfully(2) | 18:12 18:20 |
| until(10) | 40:17 72:10 74:18 78:19 95:12 106:16 119:13 119:25 170:7 171:3 |
| unusual(1) | 126:17 |
| update(1) | 136:1 |
| upon(5) | 49:15 50:2 50:3 81:22 100:25 |
| upsetting(1) | 178:6 |
| upward(1) | 157:24 |
| urbach(1) | 20:24 |
| urban(1) | 5:4 |
| urge(2) | 51:12 144:7 |
| urged(3) | 180:8 180:8 180:8 |
| urging(1) | 90:7 |
| urquhart(3) | 3:4 36:22 38:17 |
| use(6) | 31:12 36:1 36:8 41:21 77:22 181:11 |
| used(9) | 24:17 27:15 27:17 32:5 38:5 76:23 83:4 88:19 147:16 |
| uses(1) | 38:17 |
| using(1) | 65:3 |
| usually(1) | 151:17 |
| valid(1) | 172:10 |
| validity(3) | 34:20 52:19 52:25 |
| value(18) | 1:2.2 57:20 57:20 57:24 57:25 58:3 58:5 58:22 70:2 70:3 71:15 76:22 76:25 83:2 83:7 87:8 88:5 126:19 |
| valued(1) | 163:15 |
| values(1) | 82:19 |
| various(15) | 17:11 17:11 38:17 68:3 68:8 69:2 86:9 100:9 107:10 114:18 139:1 160:22 172:23 173:2 174:8 |
| vast(1) | 12:24 |
| vehicle(1) | 188:18 |
| ventures(1) | 187:8 |
| verify(1) | 84:12 |
| version(3) | 174:7 189:22 191:13 |
| verso(2) | 144:1 146:6 |
| versus(3) | 45:17 49:10 148:22 |
| very(70) | 10:4 11:4 11:21 14:23 18:13 20:7 23:10 26:10 28:15 29:13 29:23 33:15 51:4 52:4 52:14 57:3 61:9 64:11 70:12 79:23 80:8 87:5 91:10 91:20 91:23 93:14 94:14 95:16 98:9 99:5 99:20 99:21 102:2 103:7 104:21 108:17 109:15 109:22 111:10 114:20 114:24 115:4 117:10 118:22 119:24 119:6 126:16 126:17 131:12 132:16 132:18 132:25 133:11 148:4 148:17 149:2 151:17 156:17 162:5 162:7 162:16 162:18 170:7 178:3 179:12 182:25 183:11 183:22 183:22 186:22 |
| vetted(1) | 61:6 |
| vetting(1) | 59:1 |
| vicente(1) | 42:24 |
| victim(1) | 48:17 |
| victories(1) | 58:6 |
| victory(1) | 61:4 |
| video(1) | 123:7 |
| view(8) | 17:12 49:19 83:23 139:18 142:14 157:25 159:11 165:21 |
| viewed(2) | 49:1 189:2 |
| views(5) | 70:18 109:12 109:15 109:17 109:19 |
| vigorous(2) | 70:18 148:4 |
| vigorously(1) | 59:13 |
| vincent(1) | 2:21 |
| violate(1) | 36:11 |
| violated(1) | 53:19 |
| violates(1) | 41:22 |
| violation(6) | 31:14 32:6 36:7 42:3 43:4 56:6 |
| violations(1) | 31:20 |
| violators(2) | 169:3 170:11 |
| virtually(1) | 121:7 |
| virtue(1) | 183:1 |
| voices(1) | 67:12 |
| voids(1) | 190:10 |
| vote(11) | 14:19 15:2 15:3 16:18 36:5 101:1 104:11 104:13 104:15 104:19 138:19 141:3 149:18 |
| voted(5) | 103:12 109:9 174:18 174:21 175:15 |
| votes(1) | 14:22 103:10 103:15 103:25 104:7 173:10 174:22 |
| voting(11) | 101:15 102:8 103:9 103:10 104:14 149:15 174:20 175:8 175:10 175:11 176:1 |
| wadsworth(7) | 20:23 23:4 27:14 27:15 28:11 28:13 29:10 |
| wait(6) | 9:4 106:19 118:19 161:20 177:1 190:24 |
| waivable(1) | 134:1 |
| waive(1) | 145:16 |
| waived(1) | 112:6 |
| waj(1) | 94:21 |
| walk(4) | 58:22 77:19 91:11 173:3 |
| walked(1) | 73:20 |
| walking(1) | 174:4 |
| wall(2) | 139:6 140:21 |
| walrath(3) | 111:12 111:24 114:7 |
| walrath's(1) | 111:8 |
| walsh(1) | 8:17 |
| wamu(1) | 148:12 |
| want(71) | 12:15 19:18 19:22 19:23 26:4 33:8 33:16 51:13 51:14 55:2 55:7 56:11 56:21 60:19 61:10 61:15 63:9 63:10 66:17 66:20 66:22 76:25 77:1 78:2 87:10 89:18 89:21 89:22 94:14 97:22 98:3 100:15 107:15 116:17 118:1 118:3 121:4 121:12 121:22 129:6 129:23 130:4 130:5 130:5 130:6 130:8 130:10 130:11 130:12 130:13 130:19 134:10 142:5 147:21 148:14 149:20 150:24 150:25 151:1 152:4 154:21 154:24 159:15 160:1 162:5 169:6 179:12 180:19 180:21 180:22 180:24 |
| wanted(18) | 11:4 18:23 19:16 22:10 33:14 51:10 52:16 53:10 88:10 88:18 93:15 96:15 97:21 102:7 126:7 138:10 155:22 176:15 |
| wanting(1) | 9:24 |
| wants(12) | 27:12 73:25 79:25 84:24 85:23 116:16 121:21 128:9 129:19 131:8 148:11 182:3 |
| was(200) | 9:10 9:23 9:24 10:21 17:6 17:25 18:2 18:5 18:6 18:7 18:12 18:12 18:13 18:16 18:24 19:3 19:4 19:17 23:12 26:25 32:16 33:20 34:6 35:8 35:14 37:9 39:3 42:21 45:9 45:10 57:16 57:16 59:13 60:11 60:22 61:1 61:17 64:2 68:2 70:17 70:20 71:1 71:1 71:2 71:2 71:3 71:16 72:8 72:12 72:16 72:22 74:15 75:8 76:24 77:18 78:7 80:6 81:10 81:20 82:7 82:8 82:13 82:20 83:10 83:15 83:19 83:22 88:11 88:1 88:18 92:10 92:24 95:3 95:10 96:16 100:3 100:4 100:12 100:20 102:13 102:17 103:18 102:19 104:11 111:4 118:14 122:22 123:20 123:23 123:24 124:9 125:8 125:18 125:20 125:25 125:25 126:6 126:8 126:13 127:3 127:7 128:17 129:20 130:20 130:23 131:17 131:18 131:20 136:3 138:12 138:16 143:25 144:17 149:14 149:25 147:10 148:1 150:24 151:10 152:9 153:13 153:15 157:12 160:17 160:18 160:19 161:15 162:9 162:18 163:9 163:14 163:18 163:25 164:18 165:19 167:17 167:18 168:7 180:3 180:9 180:16 180:16 181:15 182:6 182:27 182:18 182:13 183:22 184:10 185:25 187:11 187:13 187:22 188:17 189:14 189:22 190:8 190:17 191:23 |
| washington(2) | 2:23 65:6 |
| wasn't(7) | 19:1 19:6 59:19 61:8 72:3 82:25 102:17 |
| wasn't(4) | 134:2 137:24 138:12 179:24 |
| waste(1) | 51:14 |
| wasting(2) | 51:15 51:16 |
| watch(1) | 67:13 |
| waterfall(1) | 70:12 |
| way(25) | 16:3 20:4 49:24 52:6 53:4 53:5 53:13 57:8 65:18 79:19 87:21 91:6 93:14 93:15 98:4 107:18 119:21 122:19 158:13 159:9 162:21 165:11 166:23 173:6 174:10 |
| ways(4) | 58:1 71:23 120:13 123:5 |
| we'll(11) | 9:4 30:5 31:10 67:5 67:8 74:12 78:20 80:17 95:20 106:10 106:14 |
| we're(33) | 9:9 9:11 11:20 14:3 20:24 25:11 26:10 27:20 27:23 28:2 35:22 55:11 55:11 55:12 55:13 57:17 61:20 61:22 62:23 64:15 66:6 67:21 67:24 74:1 74:22 74:22 77:13 78:3 78:4 90:4 100:10 101:13 |
| we've(14) | 9:17 19:23 23:2 34:7 34:12 56:23 60:4 72:21 75:24 89:5 91:10 93:8 93:14 98:6 |
| webb(3) | 97:4 117:17 150:6 |
| weber(1) | 4:38 |
| week(4) | 35:14 124:15 124:15 157:16 |
| weekend(5) | 60:11 64:2 144:24 145:3 145:4 |
| weeks(7) | 129:7 130:14 131:21 132:7 132:8 134:2 147:19 |
| weidinger(1) | 5:4 |
| weighing(1) | 115:21 |
| weirfolds(1) | 97:8 |
| weiss(1) | 6:14 |
| welcome(2) | 90:8 106:20 |
| welfare(3) | 53:23 53:25 55:8 |
| well(77) | 10:4 14:9 19:20 24:10 30:4 33:19 34:7 37:23 37:25 40:4 41:10 44:10 46:4 48:21 51:14 56:19 61:21 62:13 64:11 64:12 70:16 79:3 86:9 88:23 90:6 91:15 91:17 91:22 92:6 94:5 94:13 94:21 95:16 96:18 98:18 101:3 102:13 102:25 104:6 105:8 112:7 114:12 116:5 116:17 118:22 130:1 130:20 131:12 132:6 132:25 135:17 140:2 142:6 146:8 147:11 149:25 152:10 153:4 153:14 158:18 159:15 162:7 164:20 166:18 167:19 176:19 177:7 177:12 178:8 184:21 184:24 185:10 188:7 189:5 189:13 191:17 |
| well-known(1) | 46:12 |
| went(15) | 23:18 23:20 61:16 79:15 92:9 126:23 126:24 127:6 128:12 138:17 139:20 142:20 163:11 163:15 169:8 |
| were(112) | 12:8 18:6 21:8 22:9 22:11 23:6 23:25 24:1 26:2 27:4 38:2 40:19 41:16 48:25 54:14 54:25 57:8 57:11 57:12 57:15 58:3 58:12 58:12 58:13 58:21 59:4 59:18 59:25 60:1 60:3 60:17 61:1 61:13 65:18 69:2 70:15 70:17 71:17 72:20 72:24 72:25 73:3 73:12 73:13 74:18 75:1 75:9 76:16 79:17 79:24 81:13 81:15 81:17 81:19 83:4 84:13 88:14 91:16 91:20 92:9 100:4 101:2 109:14 111:23 112:1 112:13 124:11 124:13 124:14 126:4 126:12 126:18 127:13 127:19 128:7 134:4 138:15 138:16 139:15 143:5 144:10 145:23 147:6 148:5 149:17 152:4 157:14 158:15 158:18 161:14 162:10 162:17 163:14 164:7 164:16 164:25 165:12 165:14 169:24 174:7 180:5 182:13 182:16 182:20 183:3 188:24 189:2 |
| weren't(1) | 72:9 |
| weren't(1) | 121:24 |
| westlaw(1) | 188:20 |
| we'd(8) | 113:20 114:17 124:1 133:10 144:7 145:11 146:5 159:25 |
| we'll(26) | 106:19 114:20 116:20 117:21 119:6 119:7 120:2 121:12 129:20 130:4 131:8 131:10 131:10 132:12 132:13 133:11 135:1 157:18 166:6 174:13 178:21 181:11 181:12 190:19 191:19 |
| we're(22) | 109:5 114:22 115:3 115:8 115:9 121:19 121:25 123:9 125:6 125:6 131:5 132:12 148:13 158:11 159:7 159:10 161:19 171:7 171:8 172:20 178:23 180:9 |
| we're(28) | 112:24 121:16 124:21 124:23 124:24 124:24 125:10 125:15 138:8 139:10 140:5 141:7 144:21 146:2 146:4 147:4 147:7 149:8 149:9 159:12 160:2 160:22 160:20 173:4 175:7 176:10 176:25 183:9 |
| what(137) | 13:9 19:4 19:25 20:2 21:16 23:9 24:18 24:22 26:20 26:20 26:21 28:20 28:23 38:19 43:9 47:11 47:12 47:13 47:20 47:21 49:4 49:17 50:17 50:19 50:21 50:25 54:3 54:5 54:17 54:24 55:20 55:24 56:1 56:13 57:17 60:4 61:22 62:5 62:12 63:22 64:15 65:2 66:4 66:24 74:10 74:20 76:10 76:13 78:3 88:15 89:2 91:4 92:24 93:16 99:2 100:23 116:2 116:11 116:17 117:23 117:24 120:11 120:20 120:23 120:25 121:17 123:1 123:3 123:16 123:24 124:22 125:8 125:9 125:15 126:18 126:18 129:19 129:20 129:22 129:25 130:4 130:5 130:7 130:10 130:12 131:3 131:5 131:15 131:16 133:13 134:5 135:9 142:3 142:23 143:15 143:22 145:22 152:5 155:5 157:3 157:11 157:25 159:6 161:8 162:12 164:16 165:16 165:19 167:1 167:3 172:3 172:5 172:12 177:1 178:9 180:11 180:12 182:24 183:11 |
| what's(6) | 20:16 33:23 34:3 34:9 47:21 47:23 |
| whatever(7) | 88:16 93:10 107:16 116:9 130:4 144:24 173:6 |
| whatsoever(1) | 65:2 |
| what's(6) | 122:18 128:25 155:15 161:17 161:17 163:24 |
| when(45) | 9:25 23:24 24:12 26:25 28:20 28:21 32:15 142:21 45:7 52:20 52:21 53:8 53:19 56:24 57:17 60:6 62:4 70:11 71:5 71:16 75:14 76:11 78:5 106:5 112:11 114:25 116:12 117:24 119:16 122:10 123:21 125:17 127:17 134:10 134:20 141:2 141:6 141:7 154:7 156:15 163:1 163:14 180:17 189:20 190:19 |
| where(47) | 24:7 25:11 25:20 31:18 42:1 47:20 48:2 51:1 51:3 51:4 52:7 52:18 52:24 57:12 57:16 57:23 57:25 58:11 60:12 61:15 62:10 65:7 65:11 65:17 75:17 75:18 75:21 77:10 81:16 82:13 83:2 89:2 93:13 112:15 114:13 125:21 128:7 137:19 140:25 142:18 144:3 148:13 151:10 153:8 157:10 168:15 187:25 |
| hereby(1) | 186:10 |
| whereupon(1) | 191:23 |
| whether(31) | 13:1 36:14 43:2 49:22 53:19 54:14 54:16 55:3 55:10 55:11 55:12 55:13 57:13 61:19 62:3 72:22 83:8 87:5 100:10 110:9 110:12 111:4 114:11 115:12 115:13 132:12 131:22 132:5 146:10 185:15 |
| which(126) | 10:19 10:21 10:22 11:12 11:14 11:15 11:22 12:8 13:5 14:10 14:19 14:21 15:8 16:20 16:24 16:25 17:24 19:10 23:12 24:23 25:14 27:15 28:10 30:6 34:22 35:2 35:16 35:22 38:19 42:7 45:9 46:24 50:4 53:17 54:4 55:24 56:3 58:11 59:11 59:12 60:12 60:14 62:13 62:22 63:1 63:4 63:23 64:17 65:20 66:21 69:15 69:20 70:25 72:21 72:25 73:3 73:7 73:19 74:20 75:5 75:6 75:12 75:14 76:14 77:18 79:7 79:13 80:6 81:4 82:7 83:19 84:4 87:15 89:5 91:8 102:10 102:12 103:11 103:18 104:9 105:18 110:9 111:3 111:17 112:10 119:20 121:2 121:17 122:5 122:21 123:17 126:13 127:17 128:15 136:3 140:2 144:18 148:3 149:4 150:17 150:21 160:6 160:9 160:19 162:10 162:23 163:4 163:10 163:14 163:19 166:19 174:6 176:16 176:19 176:20 179:24 183:12 187:13 187:18 189:14 189:14 190:19 190:10 |
| while(15) | 43:15 61:3 81:10 82:17 82:24 83:11 93:15 99:4 113:15 124:8 124:13 127:3 161:19 171:6 176:24 |
| whiteford(2) | 2:14 184:24 |
| who(65) | 12:8 16:6 17:6 21:1 21:2 21:3 21:9 21:10 21:18 21:25 23:7 26:6 23:13 24:8 28:3 28:16 28:17 28:24 28:25 28:25 29:4 29:15 32:1 35:9 37:14 38:25 38:25 39:4 39:4 45:3 46:17 53:21 58:20 60:22 62:1 63:6 71:5 80:4 85:20 89:23 91:7 101:8 102:17 109:13 124:8 137:4 148:14 151:7 152:17 152:18 152:19 153:13 160:18 166:9 168:12 174:1 179:16 180:4 180:5 183:23 184:4 184:20 |
| who's(3) | 60:7 62:16 62:17 |
| who've(2) | 21:3 55:13 |
| whole(8) | 19:6 56:15 60:23 68:22 89:4 122:25 123:20 128:19 |
| whom(2) | 49:20 58:21 |
| whose(9) | 16:5 21:8 23:5 136:14 137:11 139:15 160:17 182:13 182:19 |
| who's(4) | 117:19 133:24 152:13 152:20 |
| why(20) | 13:20 22:2 27:22 27:22 28:19 44:10 47:19 67:3 67:4 75:2 96:17 104:9 106:10 142:3 142:21 145:3 167:8 179:11 180:6 |
| wide(2) | 47:3 48:14 |
| wider(1) | 88:23 |
| will(99) | 9:18 9:19 10:1 11:23 13:18 14:1 14:25 18:8 21:23 25:16 28:23 29:13 30:7 47:3 48:13 49:20 49:22 50:1 50:10 56:13 56:14 66:12 69:22 69:23 69:24 71:19 74:24 75:11 75:13 75:13 76:8 78:13 84:6 85:24 86:7 86:7 93:7 93:11 95:5 96:11 96:11 96:23 100:6 108:8 108:2 110:15 112:6 112:9 114:25 119:17 129:12 129:22 129:25 131:7 131:21 133:23 135:9 135:13 137:5 137:13 145:15 146:17 157:3 158:15 161:8 163:21 164:24 165:24 167:21 170:6 172:25 173:2 173:12 176:4 177:4 177:13 177:20 178:6 178:13 179:14 179:14 181:9 182:21 185:6 185:11 185:12 186:20 186:22 188:11 188:8 189:15 190:18 190:21 190:24 191:11 |
| willful(3) | 142:9 153:1 153:2 |
| willing(2) | 79:22 100:14 |
| willingly(1) | 73:13 |
| wilkie(2) | 3:17 5:33 |
| wilmington(15) | 1:12 2:17 2:38 2:46 3:14 3:35 3:48 4:13 4:20 4:32 4:42 5:8 5:15 9:1 126:3 |
| win(3) | 75:3 77:2 125:4 |
| wind(1) | 84:4 |
| wind-down(1) | 157:5 |
| window(2) | 125:18 184:7 |
| winkler's(1) | 184:11 |
| winkler(1) | 4:21 |
| wire(1) | 8:5 |
| wise(4) | 155:7 155:9 155:9 155:11 |
| wish(5) | 28:14 85:2 85:25 103:3 104:16 |
| wishes(1) | 131:5 |
| wit(2) | 29:18 94:1 |

| Word | Page:Line |
|---|---|
| **with**(241) | 11:6 13:4 13:11 14:6 14:11 14:14 16:12 17:3 17:12 18:4 19:16 20:14 21:24 22:1 22:11 22:17 22:17 22:18 22:25 24:6 24:14 25:21 26:6 26:10 27:17 27:18 27:21 27:24 28:2 28:5 28:14 28:16 28:17 29:2 29:3 29:5 30:13 31:17 31:23 32:25 33:20 34:14 34:24 35:25 36:15 37:1 37:5 37:12 37:16 37:17 40:8 41:14 42:1 42:5 42:7 42:25 43:4 44:17 45:12 46:16 46:19 47:8 48:21 53:23 54:13 54:23 54:25 55:11 55:12 55:12 55:13 55:15 55:23 57:22 58:1 58:6 58:8 58:8 58:22 58:25 59:9 59:11 60:9 60:23 62:10 62:12 62:16 62:23 62:21 64:1 64:15 65:24 66:10 68:23 70:17 71:20 71:23 77:9 78:3 80:5 80:5 80:20 81:3 81:21 81:24 82:25 83:8 83:13 84:6 84:8 84:18 85:10 85:18 87:7 87:22 88:15 90:16 90:17 90:18 90:25 91:5 92:14 95:4 95:11 95:21 96:8 97:5 97:18 98:6 98:8 98:16 98:19 100:8 102:18 102:25 104:10 105:9 106:4 107:5 108:9 109:22 109:23 109:25 110:7 110:9 110:11 111:2 113:7 115:7 115:25 117:18 117:19 117:22 118:4 118:25 119:2 119:2 119:9 120:2 120:3 120:12 120:13 120:15 121:14 121:24 122:1 122:25 123:5 124:16 125:10 130:16 132:14 132:15 137:13 138:7 138:13 141:4 141:5 145:1 145:4 145:13 145:23 146:9 147:4 148:4 148:24 149:2 149:15 150:10 150:17 150:18 150:19 152:8 156:1 157:5 157:20 158:4 159:14 160:14 160:23 161:23 162:12 162:17 162:24 167:22 167:25 169:1 169:7 169:15 170:8 170:15 170:16 170:18 170:25 171:7 173:3 173:5 175:4 176:4 176:5 176:19 177:21 181:3 181:6 184:16 185:2 185:7 185:10 185:23 186:18 186:21 187:10 187:11 187:11 187:12 187:15 188:1 189:11 190:21 191:19 |
| **withdrawal**(1) | 79:6 |
| **withdrawing**(2) | 73:18 158:2 |
| **withheld**(1) | 183:23 |
| **withhold**(1) | 158:25 |
| **within**(19) | 21:18 31:12 31:25 32:5 35:12 36:8 41:21 43:24 46:20 70:1 88:22 88:23 129:10 129:21 130:14 134:5 134:14 134:17 186:4 |
| **without**(14) | 13:14 15:5 41:14 61:2 75:13 83:13 115:6 143:4 156:12 157:6 163:19 179:25 188:4 188:24 |
| **won't**(5) | 14:2 33:10 54:23 70:1 78:12 |
| **wonder**(1) | 184:12 |
| **wonderful**(2) | 60:8 184:12 |
| **won't**(7) | 146:9 146:12 147:13 150:8 154:19 170:1 190:19 |
| **word**(3) | 42:14 42:14 161:4 |
| **wording**(1) | 42:6 |
| **work**(20) | 26:8 37:16 59:5 66:23 111:4 111:17 116:20 116:21 116:21 122:16 130:15 131:11 132:12 133:22 134:15 134:16 150:8 156:5 170:16 184:14 |
| **worked**(14) | 24:3 24:6 38:25 39:4 57:19 58:7 117:19 128:2 149:2 150:25 178:3 179:21 184:5 185:3 |
| **workers**(3) | 27:16 27:17 27:20 |
| **working**(8) | 37:10 126:5 126:18 163:17 176:24 179:20 181:3 181:6 |
| **works**(3) | 116:9 129:21 160:14 |
| **world**(3) | 59:17 60:3 145:22 |
| **worldwide**(11) | 57:25 58:14 75:10 91:19 92:3 92:5 111:8 114:8 114:9 114:24 183:17 |
| **worry**(1) | 51:17 |
| **worst**(2) | 39:9 51:24 |
| **worth**(3) | 57:7 88:6 122:6 |
| **would**(158) | 13:5 15:4 18:7 23:16 24:12 24:22 24:23 25:10 28:14 31:2 32:2 32:24 34:12 35:18 40:22 42:9 43:18 44:25 45:4 49:23 54:21 55:1 62:9 62:25 63:8 63:19 65:21 65:22 65:25 68:14 68:15 70:2 70:15 70:19 72:14 74:11 75:3 75:14 75:16 75:21 76:19 79:9 79:19 79:24 80:5 80:10 81:2 81:9 81:18 82:8 82:16 82:23 83:7 83:17 83:20 83:23 84:11 84:18 84:25 85:11 85:12 87:16 88:14 91:12 94:12 94:15 98:12 98:16 98:22 99:12 100:7 100:11 101:8 101:12 101:14 101:18 101:20 103:25 104:5 104:7 104:9 107:9 107:15 110:23 111:8 112:8 112:23 113:6 113:6 117:23 117:23 118:2 118:8 118:20 119:6 123:5 125:5 125:15 127:12 128:13 128:13 128:14 132:3 133:3 133:16 134:2 134:15 135:14 135:3 135:13 135:14 135:15 135:17 137:21 137:24 137:25 138:1 138:2 138:2 138:24 139:12 140:11 140:12 140:15 143:18 143:19 143:25 144:6 146:17 147:6 147:15 147:18 148:10 149:25 150:2 150:25 151:3 153:5 153:5 153:13 153:10 153:10 153:14 154:5 154:7 154:9 154:9 154:12 154:16 154:18 154:20 154:21 154:21 155:5 155:6 155:14 156:10 156:11 158:12 |
| **wouldn't**(2) | 66:13 72:17 |
| **wouldn't**(1) | 163:2 |
| **wound**(1) | 59:3 |
| **wrap**(1) | 60:15 |
| **write**(1) | 145:16 |
| **writings**(1) | 46:16 |
| **written**(7) | 18:15 44:6 44:7 45:22 51:11 179:11 183:5 |
| **wrong**(5) | 74:25 152:20 164:9 164:9 164:9 |
| **wrote**(1) | 46:17 |

| Word | Page:Line |
|---|---|
| **wunder**(1) | 8:25 |
| **www.diaztranscription.com**(1) | 1:46 |
| **yeah**(3) | 118:18 147:8 168:17 |
| **year**(7) | 37:18 39:18 61:1 126:13 126:15 145:10 |
| **years**(41) | 18:20 23:11 25:10 25:15 27:8 27:19 34:5 40:16 40:17 55:14 57:5 57:20 87:3 87:19 92:2 119:24 120:5 121:16 122:6 122:25 123:2 123:4 124:9 124:9 124:10 124:11 125:9 125:22 127:15 127:16 127:20 149:2 158:4 163:16 163:18 163:18 183:10 183:18 |
| **yellow**(1) | 189:25 |
| **yes**(141) | 9:14 12:17 14:7 20:3 22:15 30:8 32:14 32:18 33:3 33:18 33:22 35:7 35:15 40:3 40:13 40:15 40:22 42:12 45:24 48:4 55:5 55:16 61:18 63:16 66:8 67:20 69:7 73:6 74:11 77:24 79:21 80:18 82:11 84:16 86:4 86:19 89:13 90:2 90:15 90:24 91:14 94:9 94:17 95:19 95:22 95:23 96:6 96:14 97:1 97:7 100:2 100:16 101:4 101:10 101:22 102:3 102:9 102:15 103:13 103:22 104:2 104:4 104:12 104:22 105:7 105:13 106:21 107:2 107:2 107:14 108:1 108:18 108:23 109:20 112:3 115:10 115:13 116:2 116:7 116:25 117:18 118:4 118:18 118:22 118:25 121:10 121:17 121:25 122:9 123:15 124:20 125:16 126:16 126:16 126:22 129:19 130:5 130:21 131:4 133:2 135:11 136:16 137:5 139:2 141:5 141:20 143:21 144:4 144:19 144:22 145:4 145:6 146:16 146:16 146:9 146:18 147:10 148:16 149:13 149:17 150:15 150:16 151:1 151:5 152:5 152:7 152:15 153:7 154:8 155:15 156:10 156:10 158:21 159:3 161:3 162:3 162:21 164:16 167:25 170:22 172:10 173:2 174:5 174:7 178:4 179:2 180:4 180:8 183:3 184:16 185:5 185:10 185:23 186:18 189:2 189:17 190:6 190:23 |
| **yesterday**(4) | 76:17 102:14 160:8 177:2 |
| **yesterday's**(2) | 80:7 102:20 |
| **yet**(5) | 12:9 13:24 23:8 118:2 151:6 |
| **york**(2) | 2:1 2:30 3:8 3:21 3:42 4:25 5:12 5:22 5:26 6:26 7:20 65:10 65:17 96:3 96:7 96:19 96:21 126:3 128:7 146:23 146:23 147:19 148:10 150:19 168:21 168:23 168:24 169:4 170:5 190:13 |
| **york's**(1) | 148:24 |
| **york**(301) | 9:3 9:4 9:12 10:3 12:11 12:16 12:21 12:22 13:21 13:22 14:8 19:24 20:6 20:7 21:17 21:23 22:5 24:25 25:19 25:20 27:11 29:5 29:9 29:10 29:17 29:23 30:2 30:5 31:3 32:12 32:17 32:19 33:8 33:10 33:10 33:12 33:13 33:14 33:15 33:16 33:16 33:20 34:1 35:3 39:3 40:1 40:4 40:20 42:11 43:7 43:9 43:18 44:10 45:9 45:21 45:22 46:10 47:11 47:19 48:5 48:5 48:7 50:9 50:12 50:14 50:18 50:18 50:19 51:16 51:17 52:4 52:5 52:9 52:12 53:3 54:8 54:9 54:25 55:20 56:17 56:21 57:3 57:6 57:10 59:6 60:6 60:14 61:15 61:23 62:8 63:9 63:10 63:17 66:5 66:22 66:24 66:24 67:7 67:11 67:11 67:19 67:19 67:21 69:21 70:6 70:7 70:10 70:11 70:17 71:19 71:22 71:24 71:25 72:4 74:11 74:12 74:15 74:23 78:5 80:16 80:24 80:25 84:17 85:3 85:5 86:7 87:10 88:10 88:17 89:22 89:12 90:14 95:12 95:16 95:24 95:25 96:24 96:24 97:17 97:15 97:16 97:22 97:24 98:17 99:24 100:15 100:17 101:14 101:14 101:23 102:1 102:3 103:7 104:9 104:10 106:21 106:24 106:13 106:14 106:18 106:18 106:20 106:21 106:22 108:7 108:10 108:14 108:17 109:22 110:15 115:5 117:2 117:6 117:8 117:10 118:22 119:24 119:25 119:24 121:9 121:11 121:22 121:22 123:9 123:17 123:18 123:20 123:21 124:22 125:5 125:5 127:16 127:17 127:18 127:18 127:19 128:3 128:9 128:9 128:10 128:10 128:12 128:13 128:15 129:1 129:19 130:12 130:5 130:5 130:6 130:10 130:11 130:14 131:4 131:8 131:9 133:7 |
| **you**(87) | 159:19 159:20 159:21 162:5 162:5 163:1 163:25 164:1 164:11 164:12 164:14 164:15 164:24 165:7 165:20 166:1 166:3 166:4 167:23 168:3 168:4 168:14 169:19 170:19 170:20 171:11 171:12 172:13 172:14 172:14 172:18 172:21 173:3 173:6 173:6 173:16 173:16 173:16 173:17 177:17 177:17 177:23 178:9 178:11 178:18 178:18 178:19 178:20 178:23 179:2 179:9 179:10 179:19 179:20 180:19 180:24 180:24 181:3 181:5 181:6 181:7 181:11 181:13 184:16 184:25 188:8 189:6 189:8 189:12 189:22 189:25 190:2 190:20 190:23 190:23 191:9 191:10 191:18 191:19 191:20 191:21 |
| **you'd**(1) | 67:1 |
| **you'll**(3) | 11:19 33:6 59:24 |
| **you're**(20) | 20:2 20:14 33:19 33:21 42:13 46:4 47:12 47:13 50:6 51:15 51:16 53:6 55:9 56:24 58:17 64:8 67:13 86:10 90:18 94:13 |

| Word | Page:Line |
|---|---|
| **you've**(5) | 43:8 59:7 59:22 70:7 87:11 |
| **young**(4) | 2:33 6:4 41:2 41:8 |
| **your**(301) | 9:6 9:19 9:22 12:14 12:22 13:16 14:9 18:23 19:11 19:17 20:4 20:9 20:14 21:17 22:23 27:8 27:14 29:12 29:19 29:24 33:4 33:6 33:12 33:16 33:16 33:24 34:4 34:9 40:20 42:13 44:5 45:22 45:24 46:8 47:15 50:9 50:16 50:22 51:10 51:14 51:14 51:20 52:4 52:10 52:14 54:10 57:8 60:9 60:21 61:10 61:16 61:19 62:7 63:9 63:14 66:5 67:7 67:23 68:6 68:12 70:14 71:23 72:2 73:25 75:5 75:6 78:6 80:7 80:25 84:15 84:16 85:5 86:5 89:20 90:10 90:16 90:18 90:21 91:3 91:9 91:16 91:21 92:6 92:9 92:13 92:16 93:2 93:19 93:19 94:9 94:11 94:15 94:23 95:17 95:17 95:24 96:7 97:1 97:12 97:24 99:24 100:11 100:22 101:3 101:25 103:7 104:21 105:4 106:13 106:20 108:15 108:17 109:1 109:21 111:2 111:7 112:18 112:21 113:6 113:10 113:21 114:7 115:2 115:7 115:14 115:25 116:4 116:9 116:24 117:20 117:22 117:23 117:24 118:4 118:8 118:23 119:11 119:14 119:20 120:23 120:25 120:13 121:3 121:13 121:21 123:7 123:16 123:19 124:21 125:24 126:16 126:18 126:22 129:19 130:5 130:6 130:21 131:5 131:14 131:16 131:17 131:23 132:14 132:18 132:20 133:9 133:14 133:16 133:17 133:18 138:14 138:18 139:2 139:19 140:10 140:13 140:19 140:21 141:17 141:18 141:20 142:14 143:4 143:8 143:15 143:21 143:22 144:5 144:1 144:9 144:22 145:4 146:5 146:6 146:16 146:18 146:18 147:1 149:25 149:25 150:15 150:16 151:1 151:6 152:5 152:5 152:7 152:8 152:15 153:7 153:15 153:21 153:23 154:1 154:4 154:19 154:23 155:3 155:4 155:6 155:16 155:16 155:17 155:23 156:3 157:9 157:18 157:19 157:22 158:11 158:15 159:2 159:5 159:13 159:17 159:21 160:14 160:20 161:10 161:19 161:22 162:13 164:14 165:24 166:3 166:4 166:6 166:20 167:4 167:24 168:15 170:3 170:20 170:21 171:9 171:23 172:13 172:21 173:3 173:4 173:16 174:5 174:7 175:23 176:4 176:10 177:16 177:23 178:2 178:7 178:11 178:21 181:24 182:2 184:14 188:5 188:10 189:6 189:8 189:25 190:1 190:22 191:3 191:7 191:18 |
| **your**(1) | 191:21 |
| **yourself**(3) | 123:19 153:17 153:19 |
| **you'll**(6) | 112:12 128:24 128:25 131:10 132:15 156:16 |
| **you're**(2) | 116:7 123:21 128:23 129:22 129:24 130:12 133:17 151:7 151:14 152:14 153:4 153:8 154:7 154:11 155:4 155:7 155:11 156:3 164:9 164:9 174:4 |
| **you've**(2) | 107:23 179:21 182:1 |
| **yukon**(1) | 43:25 |
| **zarnett**(16) | 10:6 10:8 10:10 10:10 12:1 12:22 14:7 14:9 15:7 19:8 20:3 20:8 23:21 52:14 52:23 54:9 |
| **ziehl**(1) | 3:32 |
| **zigler**(19) | 19:19 20:9 20:12 20:18 21:19 22:13 22:15 22:20 22:22 23:2 25:2 25:7 27:11 37:19 54:10 55:6 55:10 56:18 |
| **zigler's**(2) | 17:8 20:1 |
| **services**(1) | 111:14 |
| **january**(1) | 192:7 |