**EXHIBIT B**

**SETTLEMENT STIPULATION**

*Execution Version*

# SETTLEMENT AGREEMENT BY AND AMONG THE SELLERS AND CIENA CORPORATION

This settlement agreement (this "**Settlement Agreement**") is entered into among Nortel Networks Corporation ("**NNC**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Inc. ("**NNI**"), the EMEA Sellers[1] and certain of the Other Sellers signatory hereto (together with NNC, NNL, NNI and the EMEA Sellers, the "**Sellers**") and CIENA CORPORATION (the "**Purchaser**" and, with each of the Sellers signatory hereto, the "**Parties**").

WHEREAS, on January 14, 2009 (the "**Petition Date**"), NNI and certain of its affiliates (collectively, the "**U.S. Debtors**")[2], filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Chapter 11 Cases**") in the Bankruptcy Court for the District of Delaware (the "**U.S. Court**");

WHEREAS, also on the Petition Date, NNC, NNL and certain of their Canadian affiliates (collectively, the "**Canadian Debtors**"[3] and, together with the EMEA Debtors (as defined below) and the U.S. Debtors, "**Nortel**"), filed an application with the Ontario Superior Court of Justice (the "**Canadian Court**" and together with the U.S. Court, the "**Courts**") under the *Companies' Creditors Arrangement Act* (Canada), seeking relief from their creditors (collectively, the "**Canadian Proceedings**");

---

[1]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in that certain Amended and Restated Asset Sale Agreement by and among NNC, NNL, NNI, the other entities identified therein as Sellers and the Purchaser  dated November 24, 2009, as amended from time to time (the "**Sale Agreement**"), or in the Escrow Agreement (as defined below).

[2]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[3]     The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

WHEREAS, on January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "**EMEA Debtors**")[4] into administration under the control of individuals from Ernst & Young LLP and Ernst & Young Chartered Accountants (the "**Joint Administrators**");

WHEREAS, on May 28, 2009, the Commercial Court of Versailles, France ordered the commencement of secondary proceedings and the appointment of an administrator and a liquidator (the "**French Liquidator**") in respect of Nortel Networks S.A. (in administration and in *liquidation judiciaire*) ("**NNSA**");

WHEREAS, on April 28, 2010, by special resolution Nortel Networks (Northern Ireland) Limited ("**NNNI**") entered liquidation under the control of individuals from Ernst & Young LLP (the "**Joint Liquidators**");

WHEREAS, on June 2, 2015, the High Court of England and Wales ordered the appointment of Stephen Jonathan Taylor of Isonomy Limited as Conflicts Administrator (the "**Conflicts Administrator**") in respect of NNSA;

WHEREAS, following a joint hearing between the Canadian Court and the U.S. Court on December 2, 2009, the Canadian Court approved the sale of the Canadian Debtors' assets relating to the "Metro Ethernet Networks" business (the "**Business**") to the Purchaser pursuant to the Sale Agreement and the Ancillary Agreements by order dated December 2, 2009, and the U.S. Court approved the sale of the U.S. Debtors' assets relating to the Business to the Purchaser pursuant to the Sale Agreement and the Ancillary Agreements by order dated December 3, 2009 [D.I. 2070];

---

[4]     The EMEA Debtors include the following entities:  NNUK, NNSA (in administration and liquidation judiciaire), Nortel Networks (Ireland) Limited (in administration), Nortel GmbH (in administration), Nortel Networks France S.A.S. (in administration), Nortel Networks Oy (in administration), Nortel Networks Romania SRL (in administration), Nortel Networks AB (in administration), Nortel Networks N.V. (in administration), Nortel Networks S.p.A. (in administration), Nortel Networks B.V. (in administration), Nortel Networks Polska Sp. z.o.o. (in administration), Nortel Networks Hispania, S.A. (in administration), Nortel Networks (Austria) GmbH (in administration), Nortel Networks, s.r.o. (in administration), Nortel Networks Engineering Service Kft (in administration), Nortel Networks Portugal S.A. (in administration), Nortel Networks Slovensko, s.r.o. (in administration) and Nortel Networks International Finance & Holding B.V. (in administration).

WHEREAS, in connection with the Sale Agreement, certain Sellers (or affiliates of the Sellers) entered into certain Ancillary Agreements and the EMEA Sellers, the Joint Administrators, the Joint Israeli Administrators and the Purchaser entered into a separate agreement providing for the sale to the Purchaser (or the EMEA Designated Purchaser) of the EMEA Assets (as amended from time to time, the "**EMEA Asset Sale Agreement**");

WHEREAS, the sale of the Business by the Sellers to the Purchaser closed on March 19, 2010 (the "**Closing**");

WHEREAS, in connection with the sale of the Business, Citibank, N.A. ("**Citibank**"), NNI, NNL, NNC, Nortel Networks UK Limited (in administration) ("**NNUK**") and the Purchaser entered into an Escrow Agreement dated as of March 19, 2010 (the "**Escrow Agreement**"), and established an escrow account (the "**Escrow Account**"), with Citibank as escrow agent, to hold the Escrow Amount, which consisted of, among other things, the Transition Services Escrow Funds,  Tax Escrow Funds, EMEA Tax Escrow Funds, Italian Tax Escrow Funds and Polish Tax Escrow Funds, pursuant to Section 2.2.5 of the Sale Agreement;

WHEREAS, pursuant to a letter agreement dated April 13, 2011, Nortel Networks Israel (Sales and Marketing) (in administration) and Nortel Communications Holdings (1997) Ltd. (in administration) (collectively, "**Nortel Israel**") irrevocably assigned, transferred and conveyed to NNI and NNUK all of its present and future rights, title and interest in, among other things, any portion of the proceeds of the sale of the Business. NNI and NNUK were appointed as Nortel Israel's agents and attorneys-in-fact, with full power of substitution, to act in the name, place and stead of Nortel Israel with respect to matters arising in connection with that letter agreement;

WHEREAS, o.o.o. Nortel Networks ("**Nortel Russia**") was placed into voluntary liquidation in Russia.  Prior to such liquidation, Nortel Russia entered into an agreement with NNC, NNL, NNI, NNUK, and certain other parties as to certain matters related to the sale of the Business (the "**Russia MEN Settlement**").Under the Russia MEN Settlement, all of the right, title and interest, if any, that Nortel Russia or any successor, assign, trustee, liquidator or similar person as of the date of such payment had or could have had thereafter to any allocation or distribution of the proceeds of the sale of the Business was assigned and transferred to Nortel Networks International Finance & Holding B.V.;

WHEREAS, the Sellers and certain of their affiliates are parties to an Allocation Settlement Agreement (APAC/CALA) dated as of July 19, 2012 pursuant to which certain of the Other Sellers agreed to a full and final settlement of claims to, among other things, any proceeds of the sale of the Business, such that only the Canadian Debtors, U.S. Debtors and EMEA Sellers have a remaining interest in the proceeds of the sale of the Business;

WHEREAS, certain disputes have arisen between the Sellers and the Purchaser with respect to the sale of the Business, including, without limitation, with respect to payment of fees for transition services, and reimbursement for payment of VAT and severance obligations in certain countries (the "**Disputes**");

WHEREAS, the Sellers and the Purchaser have reached an agreement in principle to resolve the Disputes, including with respect to the Sale Agreement, the EMEA Sale Agreement, the Escrow Agreement and the Ancillary Agreements, under which, *inter alia*, the Purchaser agrees to pay US$2,300,000 to certain of the Sellers and all amounts currently held in the Escrow Account shall be released to the U.S. Distribution Agent (as defined below) or as may jointly be directed in writing by NNC, NNL, NNI and NNUK; and

WHEREAS, after engaging in arms' length negotiations and based on the terms and representations set forth below, the Parties have agreed to resolve the Disputes as follows:

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED THAT**:

1.    <u>Court Approvals</u>.  All provisions of this Settlement Agreement are subject to: (i) the entry of an order by each of the U.S. Court and the Canadian Court approving this Settlement Agreement and authorizing the U.S. Debtors and Canadian Debtors that are party hereto, respectively, to enter into and perform their obligations under this Settlement Agreement (together, the "**Approval Orders**"); and (ii) such Approval Orders becoming final and not subject to further appeal.  The Parties agree to use all deliberate and reasonable efforts to secure such Approval Orders as soon as is practicable.  In the event the Approval Orders are not entered by the Courts or such Approval Orders do not become final and not subject to further appeal, this Settlement Agreement shall have no effect and the Parties reserve all of their rights and defenses with respect to the Disputes.

- 5 -

2.     <u>Settlement Payments</u>. Within five (5) business days of the Approval Orders becoming final and not subject to further appeal, the Purchaser shall pay US$2,300,000 in the aggregate by wire transfer of immediately available funds to the following Sellers in the following amounts:

    (a)     NNL – US$470,222.41;

    (b)     NNI – US$974,119.98; and

    (c)     NNUK – US$855,657.61.

Each of NNL, NNI and NNUK shall provide written wire transfer instructions to the Purchaser for the payment to be made to each of them by no later than ten (10) business days following the entry of the Approval Orders.

3.     <u>Release of Funds From Escrow, Payment of the Balance by Purchaser</u>. Within five (5) business days of the Approval Orders becoming final and not subject to further appeal, the Purchaser, NNC, NNL, NNI and NNUK (to the extent such Parties' instructions are required by the terms of the Escrow Agreement) shall deliver joint written instructions authorizing Citibank to immediately release the entire amount in the Escrow Account (being an amount of US$21,750,000 plus interest accrued thereon from the Closing Date until the date of such payment) to the U.S. Distribution Agent or to such other recipient(s) as may jointly be directed in writing by NNC, NNL, NNI and NNUK.  Such payment shall be effected by those Parties whose instructions are required by the terms of the Escrow Agreement directing Citibank to immediately deliver such payment by wire transfer to the account (the "**Distribution Escrow Account**") established pursuant to that certain MEN Distribution Escrow Agreement dated as of March 19, 2010 (the "**Distribution Escrow Agreement**") between, among others, the Sellers and JPMorgan Chase Bank, N.A., as escrow and distribution agent (the "**U.S. Distribution Agent**"), or to such other recipient(s) and accounts as may jointly be directed in writing by NNC, NNL, NNI and NNUK.

4.     <u>Lab Books</u>. NNL and NNUK are currently storing those certain books and records that are listed on Exhibit A to this Settlement Agreement relating to the Patents that are Transferred Intellectual Property (the "**Lab Books**"). NNL and NNUK shall continue to store the Lab Books they are presently storing through December 31, 2022, at locations that are reasonably accessible

- 6 -

by the Purchaser on reasonable notice to NNL and NNUK, as the case may be. The Parties agree that the current storage locations of the Lab Books are satisfactory for this purpose. Effective upon the Settlement Date (as defined below), 50% of the cost of this storage will be paid by the Purchaser, and 50% of the cost of this storage will be paid collectively by NNL and NNUK, with each of NNL and NNUK being solely responsible for its own remaining storage cost and having no liability to one another with respect to such storage costs. The U.S. Debtors will not be responsible for any costs related to the storage of the Lab Books.

5.      <u>Releases</u>.  The Parties agree to the following releases:

    (a)      <u>Release of Sellers</u>.  Effective upon the Settlement Date (as defined below), the Purchaser hereby releases and forever discharges the Sellers, their past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, administrators, liquidators, monitor, directors, officers, employees, managers, agents, attorneys, solicitors and advisors, and each of their predecessors, successors and assigns (collectively, the "**Seller Releasees**"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, whether sounding in contract, tort or otherwise (collectively "**Claims**"), that the Purchaser now has, had, may have had, or hereafter may have against any of the Seller Releasees in connection with or related to the sale of the Business, including (without limitation) the  Sale Agreement, the EMEA Sale Agreement, the Escrow Agreement, the Ancillary Agreements and other Transaction Documents and the Disputes (collectively, the "**Settled Matters**") and the Purchaser hereby covenants forever not to sue or bring any Claims against the Seller Releasees concerning or relating to the Settled Matters, provided, for the avoidance of doubt, this paragraph 5(a) shall not release or apply to the obligations of the Sellers under this Agreement.

    (b)      <u>Release of Purchaser</u>.  Effective upon the Settlement Date, the Sellers hereby release and forever discharge the Purchaser, its past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, attorneys and advisors, and each of their predecessors, successors and assigns (collectively, the "**Purchaser Releasees**"), from any and all Claims that the Sellers now have, had, may have had, or hereafter may have against any of the Purchaser Releasees in connection with or related to the Settled Matters, and the Sellers hereby covenant forever not to sue or bring any Claims against the Purchaser Releasees concerning or relating to the Settled Matters, provided, for the avoidance of doubt, this paragraph 5(b) shall not release or apply to the obligations of the Purchaser under this Agreement.

- 7 -

    (c)    The Parties acknowledge and understand that hereafter they may discover or appreciate claims, facts, issues, or concerns in addition to or different from those that they now know or believe to exist with respect to the Settled Matters, which if known or suspected at the time of execution of this Settlement Agreement, might have materially affected the settlement embodied herein.  The Parties nevertheless agree that the releases contained herein apply to any such additional or different claims, facts, issues, or concerns.  The Parties acknowledge that they are familiar with the provisions of California Civil Code Section 1542 ("A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.") and specifically waive all rights and release such claims as referenced therein and in any similar statute or law.

    (d)    The Sellers and Purchaser hereby represent that they are the sole and exclusive owners of the respective Claims concerning or relating to the Settled Matters addressed in this Settlement Agreement and that each Party to this Settlement Agreement respectively has the sole right and exclusive authority to execute this Settlement Agreement and has not sold, assigned, transferred, conveyed, or otherwise disposed of any of the Claims concerning or relating to the Settled Matters referred to in this Settlement Agreement.

6.    <u>No Admissions</u>.  This Settlement Agreement and any draft thereof shall not constitute an admission of liability or lack thereof by the U.S. Debtors, the Canadian Debtors, the EMEA Debtors, the Seller Releasees, the Purchaser Releasees or their affiliates, or any other Party, and shall not be admissible as evidence in any court of law or other legal proceeding for any purpose, other than for the purpose of enforcing the Settlement Agreement.  Each Party acknowledges and agrees that nothing in this Settlement Agreement constitutes a concession of any legal issue raised in the Disputes.

7.    <u>Costs and Expenses</u>.  Each Party agrees to bear its own costs, expenses and attorneys' fees incurred in connection with the negotiations related to and preparation of this Settlement Agreement and to not seek from the other Parties reimbursement of any such costs, expenses or attorneys' fees.

8.    <u>Governing Law</u>.  This Settlement Agreement shall be governed by, and construed in accordance with, the laws of the State of New York without regard to the rules of conflict of laws of any other jurisdiction that would cause any laws other than the laws of the State of New York to be applied.

- 8 -

9.    <u>Jurisdiction</u>.  The Parties agree that the Courts shall have exclusive jurisdiction over all matters involving or relating to the interpretation, implementation, and enforcement of this Settlement Agreement and any disputes arising in connection therewith, and each Party hereby expressly submits to the jurisdiction of the Courts.

10.    <u>Jury Waiver</u>.  Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect of any litigation directly or indirectly arising out of, under or in connection with this Settlement Agreement or any transaction contemplated hereby.  Each Party (i) certifies that no representative, agent or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Parties hereto have been induced to enter into this Settlement Agreement, by, among other things, the mutual waivers and certifications in this paragraph.

11.    <u>Binding Effect</u>.  This Settlement Agreement shall be binding on each Party, its respective agents, administrators, successors (including any receiver or trustee in bankruptcy of any such party) and assigns from the date the Approval Orders become final and not subject to further appeal (the "**Settlement Date**") and shall continue to be binding after the conclusion of the Chapter 11 Cases and the Canadian Proceedings.

12.    <u>Signing Authority</u>.  The Parties represent and warrant to each other that the signatories to this Settlement Agreement, on each Party's respective behalf, have full power and authority to enter into it.

13.    <u>Joint Administrators as Agents</u>. For all purposes of this Settlement Agreement, the Joint Administrators act without personal liability as agents of the EMEA Debtors and each EMEA Non-Debtor Seller hereby irrevocably appoints the Joint Administrators as its representatives. Pursuant to this clause, the Joint Administrators shall expressly have the power to, in the name of and on behalf of each EMEA Debtor and each EMEA Non-Debtor Seller, as its agents and without personal liability, take all decisions and carry out all actions required or desirable in connection with this Settlement Agreement.  The Joint Administrators are party to this Settlement Agreement solely for the purposes of obtaining the benefit of this and the other clauses expressed to be in their favour.

14.    <u>Joint Liquidators as Agents</u>. For all purposes of this Settlement Agreement, the Joint Liquidators act without personal liability as agents of NNNI and NNNI hereby irrevocably appoints the Joint Liquidators as its representatives.  Pursuant to this clause, the Joint Liquidators shall expressly have the power to, in the name of and on behalf of NNNI, as its agents and without personal liability, take all decisions and carry out all actions required or desirable in connection with this Settlement Agreement.  The Joint Liquidators are party to this Settlement Agreement solely for the purposes of obtaining the benefit of this and the other clauses expressed to be in their favour.

15.    <u>French Liquidator as Agent</u>.  For all purposes of this Settlement Agreement, the French Liquidator acts without personal liability as agent of NNSA.

16.    <u>Conflicts Administrator as Agent</u>. For all purposes of this Settlement Agreement, the Conflicts Administrator acts without personal liability as agent of NNSA and NNSA hereby irrevocably appoints the Conflicts Administrator as its representative.  Pursuant to this clause, the Conflicts Administrator shall expressly have the power to, in the name of and on behalf of NNSA, as its agent and without personal liability, take all decisions and carry out all actions required or desirable in connection with this Settlement Agreement.  The Conflicts Administrator is party to this Settlement Agreement solely for the purposes of obtaining the benefit of this and the other clauses expressed to be in their favour.

17.    <u>Reservation of Rights</u>.  Except as expressly set out herein, nothing herein shall constitute an amendment, modification or waiver of any provision of the Sale Agreement or any other Transaction Document or of any rights of the Sellers or the Purchaser thereunder.

18.    <u>Entire Agreement</u>.  This Settlement Agreement contains the entire understanding of the Parties with respect to the matters addressed herein, and all prior discussions among the Parties concerning such matters are merged herein.  There are no representations, warranties, covenants, promises, or undertakings except those expressly set forth herein.

19.    <u>Manner of Execution</u>.   The Parties may execute this Settlement Agreement in counterparts, and all executed counterparts shall collectively be deemed to be one and the same instrument.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Settlement Agreement.

Dated: February ___, 2017

CIENA CORPORATION

Per: _____

Name:

Title:        DAVID M. ROTHENSTEIN
              Senior Vice President & General Counsel

**NORTEL NETWORKS LIMITED**

Per: _____
        Name:  Tanecia Wong Ken
        Title:   Authorized Representative

**NORTEL NETWORKS CORPORATION**

Per: _____
        Name:  Tanecia Wong Ken
        Title:   Authorized Representative

**NORTEL NETWORKS TECHNOLOGY CORPORATION**

Per: _____
        Name:  Tanecia Wong Ken
        Title:   Authorized Representative

**NORTEL NETWORKS INC.**

Per: _____
Name:  John J. Ray III
Title:  Principal Officer

**ARCHITEL SYSTEMS (U.S.)
CORPORATION**

Per: _____
Name:  John J. Ray III
Title:  Principal Officer

**NORTEL ALTSYSTEMS INC.**

Per: _____
Name:  John J. Ray III
Title:  Principal Officer

**NORTEL ALTSYSTEMS
INTERNATIONAL INC.**

Per: _____
Name:  John J. Ray III
Title:  Principal Officer

**NORTEL NETWORKS APPLICATIONS
MANAGEMENT SOLUTIONS INC.**

Per: _____
Name:  John J. Ray III
Title:  Principal Officer

**NORTEL NETWORKS CABLE
SOLUTIONS INC.**

Per: _____
     Name:  John J. Ray III
     Title:   Principal Officer

**NORTEL NETWORKS CAPITAL
CORPORATION**

Per: _____
     Name:  John J. Ray III
     Title:   Principal Officer

**NORTEL NETWORKS HPOCS INC.**

Per: _____
     Name:  John J. Ray III
     Title:   Principal Officer

**NORTEL NETWORKS INTERNATIONAL
INC.**

Per: _____
     Name:  John J. Ray III
     Title:   Principal Officer

**NORTEL NETWORKS OPTICAL
COMPONENTS INC.**

Per: _____
     Name:  John J. Ray III
     Title:   Principal Officer

**NORTHERN TELECOM
INTERNATIONAL INC.**

Per: _____
     Name:  John J. Ray III
     Title:   Principal Officer

**SONOMA SYSTEMS**

Per: _____
Name:  John J. Ray III
Title:  Principal Officer

**QTERA CORPORATION**

Per: _____
Name:  John J. Ray III
Title:  Principal Officer

**XROS, INC.**

Per: _____
Name:  John J. Ray III
Title:  Principal Officer

**CORETEK, INC.**

Per: _____
Name:  John J. Ray III
Title:  Principal Officer

Per: _____
Name:
Title:

**NORTEL NETWORKS (CALA) INC.**

Per: _____
Name:  John J. Ray III
Title:  Principal Officer

**SIGNED** for and on behalf of **Nortel**
**Networks S.A.** (in administration and in
liquidation judiciaire) by
____Alan Bloom_____ as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)

Witness Signature
Name: Olivia Lancaster
Address: 1 MORE LONDON PLACE
LONDON, SE1 2AF

)
)
)

1

**SIGNED** for and on behalf of **Nortel**                )
**Networks UK Limited** (in administration)               )
by ___ Alan  Bloom ___ as Joint                           )
Administrator (acting as agent and without                )
personal liability) in the presence of:

_____                          )
Witness Signature                                         )
Name: Olivia Lancaster                                    )
Address: 1 MORE LONDON PLACE
         LONDON, SE1 2AF

**SIGNED** for and on behalf of **Nortel**
**GmbH** (in administration) by
___Alan Bloom___ as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)

_____
Witness Signature
Name: Olivia Lancaster
Address: 1 MORE LONDON PLACE
        LONDON, SE1 2AF

)
)
)

11/41173120_2

3

**SIGNED** for and on behalf of **Nortel**
**Networks SpA** (in administration) by )
_____Alan Bloom_____ as Joint Administrator )
(acting as agent and without personal )
liability) in the presence of: )

_____ )
Witness Signature )
Name: Olivia Lancaster )
Address: 1 MORE LONDON PLACE
LONDON, SE1 2AF

SIGNED for and on behalf of **Nortel**                )
**Networks Hispania S.A.** (in administration)         )
by ___Alan Bloom___ as Joint                          )
Administrator (acting as agent and without            )
personal liability) in the presence of:

Witness Signature                                     )
Name: Olivia Lancaster                                )
Address: 1 MORE LONDON PLACE                          )
         LONDON, SE1 2AF

SIGNED for and on behalf of **Nortel**
**Networks B.V.** (in administration) by
_____Alan Bloom_____ as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

)
)
)
)

_____
Witness Signature
Name: Olivia Lancaster
Address: 1 MORE LONDON PLACE
LONDON, SE1 2AF

)
)
)

**SIGNED** for and on behalf of **Nortel**
**Networks AB** (in administration) by
_____Alan Bloom_____ as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

)
)
)
)

_____ )

Witness Signature

Name: Olivia Lancaster )
)
Address: 1 MORE LONDON PLACE
LONDON, SE1 2AF

**SIGNED** for and on behalf of **Nortel**
**Networks N.V.** (in administration) by
_____ Alan Bloom _____ as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

)
)
)
)

_____

Witness Signature
Name: Olivia Lancaster
Address: 1 MORE LONDON PLACE
LONDON, SE1 2AF

)
)
)

**SIGNED** for and on behalf of **Nortel**
**Networks (Austria) GmbH** (in
administration) by ___Alan Bloom___ as
Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)

Witness Signature
Name: Olivia Lancaster
Address: 1 MORE LONDON PLACE
LONDON, SE1 2AF

)
)
)

**SIGNED** for and on behalf of **Nortel**
**Networks Portugal S.A.** (in administration)
by ___Alan Bloom___ as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)

_____  )
Witness Signature                                          )
Name: Olivia Lancaster                                    )
Address:  1 MORE LONDON PLACE
              LONDON, SE1 2AF

**SIGNED** for and on behalf of **Nortel**
**Networks s.r.o.** (in administration) by
_____Alan Bloom_____ as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

)
)
)
)

Witness Signature
Name: Olivia Lancaster
Address: 1 MORE LONDON PLACE
LONDON, SE1 2AF

)
)
)

**SIGNED** for and on behalf of **Nortel**
**Networks Polska Sp. z.o.o.** (in
administration) by ___Alan Bloom___ as
Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)
)

Witness Signature
Name: Olivia Lancaster
Address:  I MORE LONDON PLACE
LONDON, SE1 2AF

)
)
)

**SIGNED** for and on behalf of **Nortel**
**Networks Engineering Service kft** (in
administration) by ___Alan Bloom___ as
Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)

Witness Signature
Name: Olivia Lancaster
Address:  1 MORE LONDON PLACE
LONDON, SE1 2AF

)
)
)

**SIGNED** for and on behalf of **Nortel**
**Networks Slovensko s.r.o.** (in
administration) by ___Alan Bloom___ as
Joint Administrator (acting as agent and
without personal liability) in the presence of:

)
)
)
)

Witness Signature
Name: Olivia Lancaster
Address: 1 MORE LONDON PLACE
LONDON, SE1 2AF

)
)
)

**SIGNED** for and on behalf of **Nortel**
**Networks Romania Srl** (in administration)
by ___Alan Bloom___ as Joint
Administrator (acting as agent and without
personal liability)
in the presence of:

)
)
)
)

_____

Witness Signature
Name: Olivia Lancaster
Address: 1 MORE LONDON PLACE
LONDON, SE1 2AF

)
)
)

**SIGNED** for and on behalf of **Nortel**　　　)
**Networks Oy** (in administration) by　　　　)
　__Alan Bloom__　　as Joint Administrator　)
(acting as agent and without personal　　　　)
liability) in the presence of:

　　　　　　　　　　　　　　　　　　　　　　)
Witness Signature
Name: Olivia Lancaster　　　　　　　　　　)
Address:　1 MORE LONDON PLACE
　　　　　LONDON, SE1 2AF

**SIGNED** for and on behalf of **Nortel**　　　）
**Networks International Finance &**　　　）
**Holding B.V.** (in administration) by　　　）
_____ Alan Bloom _____ as Joint　　　）
Administrator (acting as agent and without
personal liability) in the presence of:

_____　）
Witness Signature　　　　　　　　　）
Name: Olivia Lancaster　　　　　　　）
Address: 1 MORE LONDON PLACE
　　　　　LONDON, SE1 2AF

**SIGNED** for and on behalf of **Nortel**
**Networks France S.A.S.** (in administration)
by ___Alan Bloom___ as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)

_____

_____
Witness Signature
Name: Olivia Lancaster
Address: 1 MORE LONDON PLACE
LONDON, SE1 2AF

)
)
)

**SIGNED** for and on behalf of **Nortel** )
**Networks (Ireland) Limited** (in )
administration) by David Hughes as Joint )
Administrator (acting as agent and without )
personal liability) in the presence of:

_____  )
Witness Signature                                           )
Name:                                                              )
Address:

**SIGNED** by _____*Alan Bloom*_____ in )
his own capacity and on behalf of the Joint )
Administrators without personal liability and )
solely for the benefit of the provisions of )
this Settlement Agreement expressed to be
conferred on or given to the Joint
Administrators:

_____ )
Witness Signature )
Name: Olivia Lancaster )
Address: 1 MORE LONDON PLACE
LONDON, SE1 2AF

SIGNED for and on behalf of **Nortel** )
**Networks Networks (Northern Ireland)** )
**Limited** (in liquidation) by Richard Barker )
as liquidator (acting as agent and without )
personal liability) in the presence of:

_____ )
Witness Signature )
Name:         PHILIP MEDDELL )
Address:      1 MORE LONDON PLACE

              London
              SE1 2AF

SIGNED by Richard Barker in his own )
capacity and on behalf of the Joint )
Liquidators without personal liability and )
solely for the benefit of the provisions of )
this Settlement Agreement expressed to be
conferred on or given to the Joint
Liquidators:

_____  )
Witness Signature                              )
Name:        PHILIP MCQUEEN       )
Address:     1 MORE LONDON PLACE

             London

             SE1  2AF

**SIGNED** for and on behalf of **Nortel**
**Networks AG** by ~~DAVID QUANE~~    )
in the presence of:    )
    )
    )

_____
Witness Signature
Name:    ~~GERALD STAUNTON~~
Address:   ~~19 CASHELMARA~~
    ~~GALWAY IRELAND~~

SIGNED for and on behalf of **Nortel** )
**Networks S.A.** (in administration and in )
liquidation judiciaire) by Maître Cosme )
Rogeau as liquidateur judiciaire (acting as )
agent and without personal liability) in the
presence of:

Witness Signature )
Name: )
Address: )

RAJEEV SHARMA FOUCER
PARTNER
FTPA
18U AVENUE FOCH, 75116 PARIS FRANCE

**SIGNED** by Maître Cosme Rogeau in his )
own capacity and without personal liability )
and solely for the benefit of the provisions )
of this Settlement Agreement expressed to )
be conferred on or given to the French )
Liquidator:

Witness Signature:

Name:
Address:

RASEEV SHARMA FOUDER
PARTNER
FTPA, 1 BD AVENUE FOCH, 75116 PARIS
FRANCE

**SIGNED** for and on behalf of **Nortel** )
**Networks S.A.** (in administration and in )
liquidation judiciaire) by Stephen Jonathan )
Taylor as Conflicts Administrator (acting as )
agent and without personal liability) in the
presence of:

_____ )
Witness Signature )
Name:
Address:    SUSAN J. CUNLIFFE
            24 CROMFORD RD.
            WIRKSWORTH
            DERBYS.
            DE4 4FR

**SIGNED** by Stephen Jonathan Taylor in his )
own capacity and without personal liability )
and solely for the benefit of the provisions )
of this Settlement Agreement expressed to )
be conferred on or given to the Conflicts
Administrator:

_____ )
Witness Signature )
Name: )
Address:

SUSAN J. CUNLIFFE

24 CROMFORD RD

WIRKSWORTH

DERBYS.

DE4 4FR

**EXHIBIT A**

**[Intentionally Omitted]**