## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NORTEL NETWORKS INC., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: February 28, 2017 at 9:00 a.m.** |

### AFFIDAVIT OF SANDRA E. HORWITZ

State of New York    :

                     : ss.

County of New York  :

Sandra E. Horwitz, being duly sworn, deposes and says:

1.    I am a Managing Director of Delaware Trust Company.  On December 6, 2016, Delaware Trust Company purchased from Law Debenture Trust Company of New York ("Law Debenture") its corporate trust business.  Following that transaction, I succeeded James D. Heaney as the representative of the Trustee for the 7.875% Notes (the "Notes").

**Background**

2.    I earned my Bachelor of Arts degree from U.C.L.A. in 1975, a Masters of Public Administration from U.S.C. in 1977, and an MBA from Columbia University in 1983.

3.    After earning my MBA, I accepted a position at Manufacturers Hanover Trust Company, where I focused on leveraged lending and relationship management.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), and Nortel Networks (CALA) Inc. (4226).

4.  I next joined Credit Lyonnais, where I worked until 2003.  I started at Credit Lyonnais as a First Vice President and rose through the ranks to the position of Senior Vice President.  Between 1999 and 2001, I was a Member of Credit Lyonnais Americas' Management Committee.  I became a member of the Asset Recovery Group of Credit Lyonnais in 2001.  In this position, I was charged with managing a diverse portfolio of distressed credits and businesses.

5.  I joined the Bankruptcy/Default Group of HSBC Bank U.S.A. in 2004.  In that capacity, I represented the investors of unsecured debt holders and sat on more than 25 creditors' committees.  Among others, I was involved with the creditors' committees for Calpine, Mirant, Northwest Airlines, Sea Containers, Ltd. and Tower Automotive.  During my time at HSBC, I also negotiated the termination of about 40 series of complex, structured notes that had been arranged by Lehman Brothers.

6.  In 2012, I joined Delaware Trust Company to establish its Restructuring and Bankruptcy Services Group.

**Delaware Trust Company Becomes Successor Trustee of the Notes**

7.  As a result of the transaction between Delaware Trust Company and Law Debenture, I became the Trustee representative for the Notes on December 6, 2016.  I had to quickly get up to speed on the Nortel bankruptcy proceeding.

8.  Although I previously had not worked with Dan Lowenthal of Patterson Belknap Webb & Tyler LLP, I was impressed by him during our initial briefings.  It quickly became apparent to me that Mr. Lowenthal understood the role and obligations of an indenture trustee – which is not, in my experience, true of all bankruptcy lawyers.

9.      Moreover, Mr. Lowenthal and his colleague, Brian Guiney, had encyclopedic knowledge at a very granular level of the Trustee's role in the Nortel bankruptcy. I found Mr. Lowenthal and Mr. Guiney to be bright, articulate and knowledgeable about relevant matters.

10.      After the initial briefings, Mr. Lowenthal kept me fully informed about matters in the case. It would not be an exaggeration to say that I have spoken with Mr. Lowenthal on an almost daily basis over the last couple of months. I have been impressed by his thoroughness and attention to detail. Moreover, as a business person and decision-maker, I rely on information from counsel to make prudent decisions. I have found Mr. Lowenthal to have excellent judgment, and to make well-reasoned and thoughtful recommendations.

**Review of Bills**

11.      One of my responsibilities as the representative of the Trustee is to review bills rendered to Delaware Trust Company by outside law firms.

12.      Since becoming involved in this matter, I have reviewed the bills rendered for December 2016 and January 2017 by Patterson Belknap Webb & Tyler LLP **(Exhibit A)**; Morris James LLP **(Exhibit B)**; and Weir Foulds LLP **(Exhibit C)**.

13.      In reviewing these bills, I was cognizant of the pending fee dispute. Given the existence of the fee dispute, I probably reviewed these bills even more closely than I would normally.

14.      In my judgment, based on my many years of experience, the briefings from counsel, and my day-to-day oversight of this matter beginning on December 6, 2016, the fees reflected on the bills for the time period beginning on December 6, 2016 that are collected under **Exhibits A**, **B** and **C** are reasonable.

3

15.     The bills of Delaware Trust Company for December 2016 and January 2017 are collected under **Exhibit D**.  In my judgment, these fees are reasonable as well.

**Service on the Creditors' Committee**

16.     I understand that the Fee Objectors contend that the Trustee should not have accepted a seat on the Committee or, if it did, it should not have been advised by counsel. For this reason, the Fee Objectors contend, certain fees are not reasonable. Based on my knowledge of the case and my many years' experience, I disagree.

17.     Although I was not involved in the Nortel bankruptcy at the time the decision was made by Law Debenture to join the Committee, in my mind it was unquestionably a prudent decision to join the Committee.

18.     As a general matter, indenture trustees represent the claims of the investors in the debt securities for which they serve as trustee.  An indenture trustee's goal is to maximize the recoveries to those creditors, regardless of their profile as an institutional or retail investor.

19.     It is custom and practice upon an event of default for an indenture trustee to avail itself of the right prescribed in the Indenture to rely on the advice of counsel.  It does this throughout the pendency of the event of default, including during a bankruptcy proceeding. Indenture trustees require counsel to be in attendance at every meeting of the creditors' committee, whether held in person or by telephone.  This arrangement enables the indenture trustee and its counsel to hear the same things at the same time, and confer about the deliberations and actions on a real-time basis.  In my experience, aside from the rare schedule conflict, I have always had counsel present – as have the other indenture trustees and other trustees sitting on the same committee.

20.    Generally and in Nortel, the indenture trustee's membership on a creditors' committee provided noteholders with a cost-efficient means to have, among other things: the facts and circumstances that led to the bankruptcy filing assessed; the legal claims to assets and avoidance actions prosecuted; the financial sources of recovery investigated; and the particular interests of noteholders proactively protected during the plan negotiation process.

21.    Debtor estates are required to fund these and other activities. Without membership on the creditors' committee, an indenture trustee, in fulfilling its statutory obligation to act as a prudent person, may deem it necessary to replicate the infrastructure of restructuring and investment banking advisors and legal counsel (with a broad array of specializations) available to the creditors' committee.  The fees and expenses incurred in such an undertaking would be borne solely by the beneficial holders. Moreover, having a seat at the table provides the indenture trustee with direct access to the debtor's management and advisors that would otherwise be challenging to obtain without status as a member of the creditors' committee.

22.    In my experience, noteholders often do not wish personally to serve on creditors' committees because of trading restrictions and the time taken away from being fully engaged in their principal business activities. With a highly liquid market for distressed debt, the composition of the noteholder group is subject to significant changes over time and day-to-day. As such, it would be imprudent for an indenture trustee, commonly as representative of one of the largest single claims in contemporary bankruptcy cases, to not assume the mantle of the noteholders' proponent on the creditors' committee.

23.    Furthermore, because sophisticated holders tend to invest in multiple tranches of debt with different levels of priority, or in debt and equity, or acquire trade claims or secured claims against a debtor, the indenture trustee is often the only large creditor that is

capable of representing the interests of a *particular* series of notes on a creditors' committee without a conflicting interest in another security of or claim against the debtor.

[*Remainder of page intentionally left blank*]

I swear under penalty of perjury that, to the best of my knowledge and belief, the foregoing is true and correct.

_Sandra E. Horwitz_
Sandra E. Horwitz

Sworn to Before Me this _21ˢᵀ_
Day of February, 2017.

_Ann B. Buzek_
Notary Public

ANN B. BUZEK
Notary Public, State of New York
No. 01BU4724521
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires May 31, 20_18_

7