<u>Exhibit D</u>

From:Bank of NY Mellon            12128155802        01/20/2009 10:34     #424 P.001/078

**NORTHERN TELECOM LIMITED**

**AND**

**NORTHERN TELECOM CAPITAL CORPORATION**

*as Issuers,*

**NORTHERN TELECOM LIMITED**

*as Guarantor,*

**AND**

**THE BANK OF NEW YORK**

*as Trustee*

*INDENTURE*

*Dated as of February 15, 1996*

CONFIDENTIAL                                                                      IT00009079

From:Bank of NY Mellon          12128155802          01/20/2009 10:34     #424 P.002/078

## NORTHERN TELECOM LIMITED
## NORTHERN TELECOM CAPITAL CORPORATION
### Reconciliation and tie between Trust Indenture Act of 1939 and
### Indenture, dated as of February 15, 1996

| Trust Indenture Act Section | Indenture Section |
| --- | --- |
| 310(a)(1) | 609 |
| (a)(2) | 609 |
| (a)(3) | Not Applicable |
| (a)(4) | Not Applicable |
| (b) | 609 |
| (c) | Not Applicable |
| 311(a) | 610 |
| (b) | 610 |
| 312(a) | 701 |
| (b) | 701(b) |
| (c) | 701(c) |
| 313(a) | 702(a) |
| (b) | 702(a) |
| (c) | 702(a) |
| (d) | 702(b) |
| 314(a) | 703(b) |
| (b) | Not Applicable |
| (c)(1) | 102 |
| (c)(2) | 102 |
| (c)(3) | Not Applicable |
| (d) | Not Applicable |
| (e) | 102 |
| 315(a) | 601(b) |
| (b) | 605 |
| (c) | 601(a) |
| (d) | 601(c) |
| (d)(1) | 601(b) |
| (d)(2) | 601(c)(2) |
| (d)(3) | 601(c)(3) |
| (e) | 511 |
| 316(a)(1)(A) | 506(a)(1) |
| (a)(1)(B) | 506(a)(2) |
| | 503(a) |
| (a)(2) | Not Applicable |
| (b) | 508 |
| 317(a)(1) | 509 |
| (a)(2) | 510 |
| (b) | 1003 |
| 318(a) | 107(b) |

Note: This reconciliation and tie shall not, for any purpose, be deemed to be a part of the Indenture.

CONFIDENTIAL                                                                                    IT00009080

# TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| PARTIES | ................................................................. | 1 |
| RECITALS | ................................................................. | 1 |

### ARTICLE ONE
#### DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

SECTION 101.     Definitions:

| (1) | Act | 1 |
|---|---|---|
| (2) | Affiliate | 1 |
| (3) | Attributable Debt | 2 |
| (4) | Authorized Newspaper | 2 |
| (5) | Board of Directors | 2 |
| (6) | Board Resolution | 2 |
| (7) | Business Day | 2 |
| (8) | Commission | 2 |
| (9) | Components | 2 |
| (10) | Consolidated Net Tangible Assets | 3 |
| (11) | Conversion Date | 3 |
| (12) | Corporate Trust Office | 3 |
| (13) | corporation | 3 |
| (14) | Corporation | 3 |
| (15) | Corporation Debt Securities | 3 |
| (16) | Debt Securities | 3 |
| (17) | Defaulted Interest | 3 |
| (18) | Depositary | 3 |
| (19) | Dollar or $ | 3 |
| (20) | ECU | 4 |
| (21) | European Communities | 4 |
| (22) | Event of Default | 4 |
| (23) | Exchange Act | 4 |
| (24) | Exchange Rate | 4 |
| (25) | Exchange Rate Officer's Certificate | 5 |
| (26) | Finance Subsidiary | 5 |
| (27) | Financing Leases | 5 |
| (28) | Foreign Currency | 5 |
| (29) | Funded Debt | 5 |
| (30) | Global Security | 5 |
| (31) | Guarantee | 5 |
| (32) | Guaranteed Debt Securities | 5 |
| (33) | Guarantor | 6 |
| (34) | Guarantor Request and Guarantor Order | 6 |
| (35) | Holder | 6 |

CONFIDENTIAL

IT00009081

ii

| | | PAGE |
|---|---|---|
| (36) | Indenture | 6 |
| (37) | interest | 6 |
| (38) | Interest Payment Date | 6 |
| (39) | Issuer Request and Issuer Order | 6 |
| (40) | Issuers | 6 |
| (41) | Maturity | 6 |
| (42) | Mortgage | 6 |
| (43) | Northern Telecom | 7 |
| (44) | Officers' Certificate | 7 |
| (45) | Opinion of Counsel | 7 |
| (46) | Original Issue Discount Security | 7 |
| (47) | Outstanding | 7 |
| (48) | Paying Agent | 8 |
| (49) | Person | 8 |
| (50) | Place of Payment | 8 |
| (51) | Predecessor Security | 8 |
| (52) | Purchase Money Mortgage | 8 |
| (53) | Redemption Date | 9 |
| (54) | Redemption Price | 9 |
| (55) | Regular Record Date | 9 |
| (56) | Responsible Officer | 9 |
| (57) | Restricted Subsidiary | 9 |
| (58) | Security Register and Security Registrar | 9 |
| (59) | Special Record Date | 9 |
| (60) | Stated Maturity Date | 9 |
| (61) | Subsidiary | 9 |
| (62) | Trust Indenture Act | 9 |
| (63) | Trustee | 10 |

| SECTION 102. | Compliance Certificates and Opinions | 10 |
|---|---|---|
| SECTION 103. | Form of Documents Delivered to Trustee | 10 |
| SECTION 104. | Acts of Holders | 11 |
| SECTION 105. | Notices, etc., to Trustee, Corporation, Finance Subsidiary and Guarantor | 12 |
| SECTION 106. | Notice to Holders; Waiver | 13 |
| SECTION 107. | Conflict with Trust Indenture Act | 13 |
| SECTION 108. | Effect of Headings and Table of Contents | 13 |
| SECTION 109. | Successors and Assigns | 13 |
| SECTION 110. | Separability Clause | 14 |
| SECTION 111. | Benefits of Indenture | 14 |
| SECTION 112. | Governing Law | 14 |
| SECTION 113. | Legal Holidays | 14 |

CONFIDENTIAL

iii

## ARTICLE TWO
### DEBT SECURITY FORMS

PAGE

SECTION 201.    Forms Generally...................................................................14
SECTION 202.    Forms of Debt Securities.....................................................14
SECTION 203.    Guarantee by Guarantor; Form of Guarantee .....................15
SECTION 204.    Form of Trustee's Certificate of Authentication ..................17

## ARTICLE THREE
### THE DEBT SECURITIES

SECTION 301.    Amount Unlimited; Issuable in Series..................................18
SECTION 302.    Denominations......................................................................20
SECTION 303.    Execution, Authentication, Delivery and Dating .................20
SECTION 304.    Temporary Debt Securities...................................................22
SECTION 305.    Registration, Registration of Transfer and Exchange ..........23
SECTION 306.    Mutilated, Destroyed, Lost or Stolen Debt Securities ..........25
SECTION 307.    Payment of Interest; Interest Rights Preserved.....................26
SECTION 308.    Persons Deemed Owners.......................................................27
SECTION 309.    Cancellation ..........................................................................28
SECTION 310.    Computation of Interest ........................................................28
SECTION 311.    Payment in Currencies..........................................................28
SECTION 312.    Judgments ..............................................................................31

## ARTICLE FOUR
### SATISFACTION AND DISCHARGE

SECTION 401.    Satisfaction and Discharge of Indenture...............................32
SECTION 402.    Application of Trust Money ..................................................33

## ARTICLE FIVE
### DEFAULTS AND REMEDIES

SECTION 501.    Events of Default and Enforcement........................................33
SECTION 502.    Waiver of Declaration ...........................................................35
SECTION 503.    Waiver ....................................................................................35
SECTION 504.    Other Remedies......................................................................36
SECTION 505.    Application of Money Collected ...........................................36
SECTION 506.    Control by Holders.................................................................37
SECTION 507.    Limitation on Suits.................................................................37
SECTION 508.    Rights of Holders To Receive Payment .................................37
SECTION 509.    Collection Suit by Trustee .....................................................38
SECTION 510.    Trustee May File Proofs of Claim .........................................38
SECTION 511.    Undertaking for Costs ...........................................................38
SECTION 512.    Delay or Omission Not Waiver .............................................38

CONFIDENTIAL

IT00009083

From:Bank of NY Mellon                12128155802            01/20/2009 10:34   #424 P.006/078

iv

PAGE

SECTION 513.    Waiver of Stay or Extension Laws...............................................38

### ARTICLE SIX
#### THE TRUSTEE

SECTION 601.    Duties of Trustee ....................................................................39
SECTION 602.    Rights of Trustee ....................................................................40
SECTION 603.    Individual Rights of Trustee .....................................................40
SECTION 604.    Trustee's Disclaimer ...............................................................40
SECTION 605.    Notice of Defaults...................................................................40
SECTION 606.    Compensation and Indemnity.....................................................41
SECTION 607.    Replacement of Trustee............................................................41
SECTION 608.    Successor Trustee by Merger, etc................................................44
SECTION 609.    Eligibility; Disqualification .......................................................44
SECTION 610.    Preferential Collection of Claims Against the Issuers....................44

### ARTICLE SEVEN
#### HOLDERS' LISTS AND REPORTS BY TRUSTEE, ISSUERS AND GUARANTOR

SECTION 701.    Preservation of Information: Communications to Holders ...............44
SECTION 702.    Reports by Trustee ..................................................................45
SECTION 703.    Reports by Issuers and the Guarantor .........................................46

### ARTICLE EIGHT
#### AMALGAMATION, CONSOLIDATION, CONVEYANCE, TRANSFER OR LEASE

SECTION 801.    Amalgamations and Consolidations of Issuers or Guarantor
                and Conveyances Permitted Subject to Certain Conditions..........47
SECTION 802.    Rights and Duties of Successor Corporation ...............................47
SECTION 803.    Officers' Certificate and Opinion of Counsel ..............................48

### ARTICLE NINE
#### SUPPLEMENTAL INDENTURES

SECTION 901.    Supplemental Indentures Without Consent of Holders...................48
SECTION 902.    Supplemental Indentures with Consent of Holders ........................49
SECTION 903.    Execution of Supplemental Indentures ........................................50
SECTION 904.    Effect of Supplemental Indentures..............................................51
SECTION 905.    Conformity with Trust Indenture Act ..........................................51
SECTION 906.    Reference in Debt Securities to Supplemental Indentures................51

CONFIDENTIAL                                                                    IT00009084

From:Bank of NY Mellon          12128155802          01/20/2009 10:35    #424 P.007/079

v

## ARTICLE TEN
### COVENANTS

SECTION 1001.  Payment of Principal, Premium and Interest ...........................51
SECTION 1002.  Maintenance of Office or Agency............................................51
SECTION 1003.  Money for Debt Securities Payments to Be Held in Trust.............52
SECTION 1004.  Negative Pledge ......................................................................54
SECTION 1005.  Compliance Certificate .............................................................55
SECTION 1006.  Waiver of Certain Covenants.....................................................55

## ARTICLE ELEVEN
### REDEMPTION OF DEBT SECURITIES

SECTION 1101.  Applicability of Article.............................................................56
SECTION 1102.  Election to Redeem; Notice to Trustee......................................56
SECTION 1103.  Selection by Trustee of Debt Securities to be Redeemed .................56
SECTION 1104.  Notice of Redemption ..............................................................57
SECTION 1105.  Deposit of Redemption Price ....................................................57
SECTION 1106.  Debt Securities Payable on Redemption Date ............................57
SECTION 1107.  Debt Security Redeemed in Part ...............................................58

## ARTICLE TWELVE
### SINKING FUNDS

SECTION 1201.  Applicability of Article.............................................................58
SECTION 1202.  Satisfaction of Sinking Fund Payments with Debt Securities ............58
SECTION 1203.  Redemption of Debt Securities for Sinking Fund..........................59

## ARTICLE THIRTEEN
### DEFEASANCE

SECTION 1301.  Discharge by Deposit of Money or Debt Securities......................59
SECTION 1302.  Defeasance of Certain Obligations.............................................61
SECTION 1303.  Application of Trust Money .......................................................61
SECTION 1304.  Repayment to the Corporation...................................................61

## ARTICLE FOURTEEN
### MEETINGS OF HOLDERS OF DEBT SECURITIES

SECTION 1401.  Purposes for Which Meetings May Be Called .............................62
SECTION 1402.  Call, Notice and Place of Meetings............................................62
SECTION 1403.  Persons Entitled to Vote at Meetings.........................................63
SECTION 1404.  Quorum; Action ......................................................................63

CONFIDENTIAL

IT00009085

From:Bank of NY Mellon          12128155802          01/20/2009 10:35        #424 P.008/078

vi

|  |  | PAGE |
|---|---|---|
| SECTION 1405. | Determination of Voting Rights; Conduct and Adjournment of Meetings | 64 |
| SECTION 1406. | Counting Votes and Recording Action of Meetings | 64 |
| SIGNATURES | | 66 |
| EXHIBIT A | | A-1 |

CONFIDENTIAL

IT00009086

INDENTURE dated as of February 15, 1996, among Northern Telecom Limited (the "Corporation"), a Canadian corporation having its principal place of business at 2920 Matheson Boulevard East, Mississauga, Ontario, Canada, L4W 4M7, Northern Telecom Capital Corporation (the "Finance Subsidiary" and together with the Corporation in its capacity as an Issuer of Debt Securities, the "Issuers" and each an "Issuer"), a Delaware corporation having its principal place of business at Northern Telecom Plaza, 200 Athens Way, Nashville, Tennessee, U.S.A., 37228-1397, Northern Telecom Limited, in its capacity as guarantor of Debt Securities issued by the Finance Subsidiary (the "Guarantor"), and The Bank of New York, a New York banking corporation (the "Trustee"), having its Corporate Trust Office at 101 Barclay Street, New York, New York, U.S.A. 10286.

For and in consideration of the premises and the purchase of the Debt Securities by the Holders thereof, it is mutually covenanted and agreed, for the equal and proportionate benefit of all Holders of the Debt Securities or of a series thereof, as follows.

## ARTICLE ONE

### DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

SECTION 101.   *Definitions*.

For all purposes of this Indenture, except as otherwise expressly provided or unless the context otherwise requires:

(A)   the terms defined in this Article have the meanings assigned to them in this Article, and include the plural as well as the singular;

(B)   all other terms used herein that are defined in the Trust Indenture Act, either directly or by reference therein, have the meanings assigned to them therein;

(C)   all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with Canadian generally accepted accounting principles, and, except as otherwise herein expressly provided, the term "generally accepted accounting principles" with respect to any computation required or permitted hereunder shall mean such Canadian accounting principles as are generally accepted at the date of such computation; and

(D)   the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.

(1)   "Act" when used with respect to any Holder has the meaning specified in Section 104.

(2)   "Affiliate" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified

CONFIDENTIAL

Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

(3)    "Attributable Debt" in respect of a Financing Lease means the present value of the obligations of the lessee thereunder for rental payments during the remaining term of such lease.

(4)    "Authorized Newspaper" means a newspaper in an official language of the country of publication or in the English language customarily published on each Business Day, whether or not published on Saturdays, Sundays or holidays, and of general circulation in the place in connection with which the term is used or in the financial community of such place. Where successive publications are required to be made in Authorized Newspapers, the successive publications may be made in the same or in different newspapers in the same city meeting the foregoing requirements and in each case on any Business Day.

(5)    "Board of Directors" means, in respect of an Issuer or the Guarantor, the board of directors, the executive committee or any other committee of that board or any group of directors of that board, duly authorized to make a decision on the matter in question.

(6)    "Board Resolution" means a copy of a resolution certified by the Secretary or an Assistant Secretary of an Issuer or the Guarantor, as the case may be, to have been duly adopted by the Board of Directors of such Issuer or the Guarantor, respectively, and to be in full force and effect on the date of such certification.

(7)    "Business Day", when used with respect to any Place of Payment, means any Monday, Tuesday, Wednesday, Thursday or Friday that is not a day on which banking institutions in that Place of Payment are authorized or obligated by law to close.

(8)    "Commission" means the Securities and Exchange Commission, as from time to time constituted, created under the Exchange Act, or if at any time after the execution of this instrument such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act, then the body performing such duties on such date.

(9)    "Components", with respect to a composite currency (including but not limited to ECU), means the currency amounts that are components of such composite currency on the Conversion Date. If after such Conversion Date the official unit of any component currency is altered by way of combination or subdivision, the number of units of such currency shall be divided or multiplied in the same proportion to calculate the Component. If after such Conversion Date two or more component currencies are consolidated into a single currency, the amounts of those currencies as Components shall be replaced by an amount in such single currency equal to the sum of the amounts of such consolidated component currencies expressed in such single currency, and such amount shall thereafter be a Component. If after such Conversion Date any component currency shall be divided into two or more currencies, the amount of such currency as a Component shall be replaced by amounts of such two or more

- 2 -

CONFIDENTIAL                                                                 IT00009088

currencies, each of which shall be equal to the amount of such former component currency divided by the number of currencies into which such component currency was divided, and such amounts shall thereafter be Components.

(10)    "Consolidated Net Tangible Assets" means the total amount of assets after deducting therefrom (i) all current liabilities, and (ii) all goodwill, tradenames, trademarks, patents, unamortized debt discount and expense and other like intangible assets, all as shown in the then most recent consolidated balance sheet of Northern Telecom contained in Northern Telecom's annual or quarterly report to shareholders; assets shall include an amount equal to the Attributable Debt in respect of those Financing Leases not capitalized on such balance sheet.

(11)    "Conversion Date", with respect to a composite currency (including but not limited to ECU), has the meaning specified in Section 311(f).

(12)    "Corporate Trust Office" means the principal corporate trust office of the Trustee at which at any particular time its corporate trust business shall be administered.

(13)    "corporation" includes corporations, associations, companies and business trusts.

(14)    "Corporation" means the Person named as the "Corporation" in the first paragraph of this Indenture until a successor corporation shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Corporation" shall mean such successor corporation.

(15)    "Corporation Debt Securities" means Debt Securities issued by the Corporation and authenticated and delivered under this Indenture.

(16)    "Debt Securities" means Corporation Debt Securities and Guaranteed Debt Securities.

(17)    "Defaulted Interest" has the meaning specified in Section 307.

(18)    "Depositary" means, with respect to the Debt Securities of any series issuable or issued in whole or in part in the form of one or more Global Securities, the Person designated as Depositary by the applicable Issuer pursuant to Section 301 until a successor Depositary shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Depositary" shall mean or include each Person who is then a Depositary hereunder, and if at any time there is more than one such Person, "Depositary" as used with respect to the Debt Securities of any such series shall mean the Depositary with respect to the Debt Securities of that series.

(19)    "Dollar" or "$" means the currency of the United States of America which as at the time of payment is legal tender for the payment of public and private debts.

- 3 -

CONFIDENTIAL                                                                                 IT00009089

(20)    "ECU" means the European Currency Unit as defined and revised from time to time by the Council of the European Communities.

(21)    "European Communities" means the European Economic Community, the European Coal and Steel Community and the European Atomic Energy Community.

(22)    "Event of Default" has the meaning specified in Section 501.

(23)    "Exchange Act" means the Securities Exchange Act of 1934, as amended.

(24)    "Exchange Rate" means:  (i) with respect to a currency (other than a composite currency) in which payment is to be made on Debt Securities denominated in a composite currency, the exchange rate between such composite currency and such currency reported by the agency or organization, if any, designated pursuant to Section 301(b)(12) or by the Council of the European Communities (in the case of ECU, whose reports are currently based on the rates in effect at 2:30 P.M., Brussels time, on the relevant exchange markets), as appropriate, or if such exchange rate is not or ceases to be so reported, then such exchange rate as shall be determined by the Trustee using quotations from one or more major banks in The City of New York or such other quotations as the Trustee shall deem appropriate, such banks being satisfactory to the applicable Issuer, on the Regular or Special Record Date with respect to such Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the maturity of an installment of principal, as the case may be; (ii) with respect to payments in Dollars to be made on Debt Securities denominated in a Foreign Currency, the noon buying rate for that currency for wire transfers quoted in The City of New York on the Regular or Special Record Date with respect to such Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the maturity of an installment of principal, as the case may be, as certified for customs purposes by the Federal Reserve Bank of New York; (iii) with respect to payments in a Foreign Currency to be made on Debt Securities denominated in Dollars or converted into Dollars pursuant to Section 311(f), the noon Dollar buying rate for that currency for wire transfers quoted in The City of New York on the Regular or Special Record Date with respect to such Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the maturity of an installment of principal, as the case may be, as certified for customs purposes by the Federal Reserve Bank of New York; and (iv) with respect to payments in a Foreign Currency to be made on Debt Securities denominated in a different Foreign Currency, the exchange rate between such Foreign Currencies determined in the manner specified pursuant to Section 301(b)(15).  Except in the situation contemplated in (i) above, if for any reason such rates are not available with respect to one or more currencies for which an Exchange Rate is required, the Trustee shall use such quotation of the Federal Reserve Bank of New York as of the most recent available date, or quotations from one or more major banks in The City of New York or in the country of issue of the currency in question, or such other quotations as the Trustee shall deem appropriate, such banks being satisfactory to the applicable Issuer.  Unless otherwise specified by the Trustee, if there is more than one market for dealing in any currency by reason of foreign exchange regulations or otherwise, the market to be used in respect of such currency shall be that upon which a non-

- 4 -

CONFIDENTIAL                                                                    IT00009090

resident issuer of securities designated in such currency would purchase such currency in order to make payments in respect of such securities.

(25)   "Exchange Rate Officers' Certificate", with respect to any date for the payment of principal of (and premium, if any) and interest on any series of Debt Securities, means a certificate setting forth the applicable Exchange Rate or Rates as of the Regular or Special Record Date with respect to such Interest Payment Date, date for payment of Defaulted Interest or the fifteenth day immediately preceding the maturity of an installment of principal, as the case may be, and the amounts payable in Dollars and Foreign Currencies in respect of the principal of (and premium, if any) and interest on Debt Securities denominated in ECU, any other composite currency or any Foreign Currency, and signed by any two of the Chairman of the Board, the President or any Vice-President or any one of the aforesaid officers together with any one of the Secretary, the Controller, the Treasurer, any Assistant Secretary or any Assistant Treasurer of the applicable Issuer and delivered to the Trustee.

(26)   "Finance Subsidiary" means the Person named as the "Finance Subsidiary" in the first paragraph of this Indenture until a successor corporation shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Finance Subsidiary" shall mean such successor corporation.

(27)   "Financing Leases" means sale and leaseback transactions, except for: (i) temporary leases for a term, including any renewal thereof, of not more than three years; (ii) leases between Northern Telecom and any Restricted Subsidiary, between any Restricted Subsidiary and Northern Telecom or between Restricted Subsidiaries; and (iii) leases for properties executed within one year of the latest of acquisition, completion of construction and commencement of commercial operation thereof.

(28)   "Foreign Currency" means a currency issued by the government of any country other than the United States of America.

(29)   "Funded Debt" means any indebtedness for borrowed money, whether of Northern Telecom or of a third person.

(30)   "Global Security" means a Debt Security evidencing all or part of a series of Debt Securities, issued to the Depositary for such series in accordance with Section 303 and bearing the legend prescribed in Section 303(c).

(31)   "Guarantee" means any guarantee of the Guarantor as endorsed on each Guaranteed Debt Security authenticated and delivered pursuant to this Indenture and shall include the Guarantee set forth in Section 203 of this Indenture and all other obligations and covenants of the Guarantor contained in this Indenture and any Guaranteed Debt Securities.

(32)   "Guaranteed Debt Securities" means Debt Securities issued by the Finance Subsidiary and guaranteed by the Guarantor and authenticated and delivered under this Indenture.

- 5 -

CONFIDENTIAL                                                                                   IT00009091

(33)    "Guarantor" means the Person named as "Guarantor" in the first paragraph of this Indenture until a successor corporation shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Guarantor" shall mean such successor corporation.

(34)    "Guarantor Request" and "Guarantor Order" mean, respectively, a written request or order signed in the name of the Guarantor by any two of the Chairman of the Board, the President or any Vice-President or any one of the aforesaid officers together with any one of the Secretary, the Controller, the Treasurer, any Assistant Secretary or any Assistant Treasurer of the Guarantor and delivered to the Trustee.

(35)    "Holder", with respect to a Debt Security, means the Person in whose name such Debt Security is registered in the Security Register.

(36)    "Indenture" means this instrument as originally executed or as it may from time to time be supplemented, amended or restated by or pursuant to one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof and, unless the context otherwise requires, shall include the terms of a particular series of Debt Securities established as contemplated by Section 301.

(37)    "interest", when used with respect to an Original Issue Discount Security that by its terms bears stated interest only after Maturity, refers to interest payable after Maturity.

(38)    "Interest Payment Date", with respect to any Debt Security, means the Stated Maturity Date of an installment of interest on such Debt Security.

(39)    "Issuer Request" and "Issuer Order" mean, respectively, a written request or order signed in the name of the applicable Issuer by any two of the Chairman of the Board, the President or any Vice-President or any one of the aforesaid officers together with any one of the Secretary, the Controller, the Treasurer, any Assistant Secretary or any Assistant Treasurer of such Issuer and delivered to the Trustee.

(40)    "Issuer" and "Issuers" have the meanings assigned to such terms in the first paragraph of this Indenture.

(41)    "Maturity", when used with respect to any Debt Security, means the date on which the principal of such Debt Security becomes due and payable as therein or herein provided, whether at the Stated Maturity Date or by declaration of acceleration, call for redemption, repayment at the option of the Holder or otherwise.

(42)    "Mortgage" means and includes any mortgage, hypothec, pledge, lien, security interest, privilege, floating charge, conditional sale or other title retention agreement or other similar encumbrance securing indebtedness for borrowed money.

- 6 -

CONFIDENTIAL

IT00009092

(43)   "Northern Telecom" means Northern Telecom Limited, whether in its capacity as Issuer or Guarantor.

(44)   "Officers' Certificate" means a certificate signed by any two of the Chairman of the Board, the President or any Vice-President or any one of the aforesaid officers together with any one of the Secretary, the Controller, the Treasurer, any Assistant Secretary or any Assistant Treasurer of the applicable Issuer or the Guarantor, as the case may be, and delivered to the Trustee.

(45)   "Opinion of Counsel" means a written opinion of counsel, who may be counsel to the applicable Issuer or the Guarantor or both, as the case may be.

(46)   "Original Issue Discount Security" means any Debt Security that is issued with "original issue discount" within the meaning of Section 1273(a) of the United States Internal Revenue Code of 1986 and the regulations thereunder and any other Debt Security designated by the applicable Issuer as issued with original issue discount for United States federal income tax purposes.

(47)   "Outstanding" when used with respect to Debt Securities means, as of the date of determination, all Debt Securities theretofore authenticated and delivered under this Indenture, *except*:

> (i)   Debt Securities theretofore cancelled by the Trustee or delivered to the Trustee for cancellation;
>
> (ii)   Debt Securities for whose payment or redemption money in the necessary amount has been theretofore deposited with the Trustee or any Paying Agent (other than the applicable Issuer or the Guarantor) in trust or set aside and segregated in trust by the applicable Issuer or the Guarantor (if such Issuer or the Guarantor shall act as its own Paying Agent) for the Holders of such Debt Securities; *provided, however,* that if such Debt Securities are to be redeemed, notice of such redemption has been duly given pursuant to this Indenture or provision therefor satisfactory to the Trustee has been made; and
>
> (iii)  Debt Securities that have been surrendered to the Trustee pursuant to Section 306 or in exchange for or in lieu of which other Debt Securities have been authenticated and delivered pursuant to this Indenture, other than any such Debt Securities in respect of which there shall have been presented to the Trustee proof satisfactory to it that such Debt Securities are held by a bona fide purchaser in whose hands such Debt Securities are valid obligations of the applicable Issuer;

*provided, however,* that in determining whether the Holders of the requisite principal amount of Outstanding Debt Securities have taken any Act hereunder, Debt Securities owned by the applicable Issuer or any other obligor upon the Debt Securities or any Affiliate of such Issuer or of such other obligor shall be disregarded and deemed not to be Outstanding; *provided*

- 7 -

CONFIDENTIAL                                                                          IT00009093

*further* that, in determining whether the Trustee shall be protected in relying upon such Act, only Debt Securities that the Trustee knows to be so owned shall be so disregarded; and *provided further* that Debt Securities so owned that have been pledged in good faith may be regarded as Outstanding if the pledgee establishes to the satisfaction of the Trustee the pledgee's right to act with respect to such Debt Securities and that the pledgee is not the applicable Issuer or any other obligor upon the Debt Securities or any Affiliate of such Issuer or of such other obligor.

(48)    "Paying Agent" means any Person authorized by the applicable Issuer to pay the principal of (and premium, if any) or interest on any Debt Securities on behalf of such Issuer.

(49)    "Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

(50)    "Place of Payment" means: (i) when used with respect to the Debt Securities of any series payable in Dollars, the Corporate Trust Office of the Trustee in the Borough of Manhattan, The City and State of New York; and, (ii) when used with respect to the Debt Securities of any series payable in a Foreign Currency, the other place or places, if any, where the principal of (and premium, if any) and interest on the Debt Securities of that series are payable as specified as contemplated by Section 301.

(51)    "Predecessor Security" of any particular Debt Security means every previous Debt Security evidencing all or a portion of the same debt as that evidenced by such particular Debt Security; and, for the purposes of this definition, any Debt Security authenticated and delivered under Section 306 in lieu of a lost, destroyed or stolen Debt Security shall be deemed to evidence the same debt as the lost, destroyed or stolen Debt Security.

(52)    "Purchase Money Mortgage" means a mortgage on property existing at the time of acquisition thereof by Northern Telecom or a Restricted Subsidiary; any mortgage on any property acquired, constructed or improved by Northern Telecom or a Restricted Subsidiary incurred after the date of the issue of the Debt Securities which is created or assumed contemporaneously with, or within 180 days after, such acquisition, or completion of such construction or improvement, to secure or provide for the payment of the purchase price thereof or the cost of construction or improvement thereon incurred after the date of issuance of the Debt Securities (including the cost of any underlying real property); *provided, however,* that in the case of any such acquisition, construction or improvement, the Mortgage shall not apply to any property previously owned by Northern Telecom or a Restricted Subsidiary, other than, in the case of any such construction or improvement, any real property, theretofore substantially unimproved for the purposes of Northern Telecom or a Restricted Subsidiary, on which the property so constructed, or the improvement, is located and other than any machinery or equipment installed at any time so as to constitute immovable property or a fixture on the real property on which the property so constructed, or the improvement, is located.

- 8 -

CONFIDENTIAL                                                     IT00009094

(53)  "Redemption Date", when used with respect to any Debt Security to be redeemed, means the date fixed for such redemption by or pursuant to this Indenture.

(54)  "Redemption Price", when used with respect to any Debt Security to be redeemed, means the price at which it is to be redeemed pursuant to this Indenture.

(55)  "Regular Record Date" for the interest payable on any Interest Payment Date on the Debt Securities of any series means the date specified for that purpose as contemplated by Section 301.

(56)  "Responsible Officer" when used with respect to the Trustee means the chairman or vice-chairman of the board of directors, the chairman or any vice-chairman of the executive committee of the board of directors, the trust committee, the president, any vice-president (whether or not designated by a number or word or words added before or after the title "vice-president"), the secretary, any assistant secretary, the treasurer, any assistant treasurer, the cashier, any assistant cashier, any trust officer or assistant trust officer, the controller or any assistant controller or any other officer of the Trustee customarily performing functions similar to those performed by any of the above designated officers and also means, with respect to a particular corporate trust matter, any other officer to whom such matter is referred because of his knowledge of and familiarity with the particular subject.

(57)  "Restricted Subsidiary" means Northern Telecom Inc. or, if and for so long as the Finance Subsidiary has Outstanding Guaranteed Debt Securities, the Finance Subsidiary, each a Subsidiary.

(58)  "Security Register" and "Security Registrar" have the respective meanings specified in Section 305.

(59)  "Special Record Date" for the payment of any Defaulted Interest means a date fixed by the Trustee pursuant to Section 307.

(60)  "Stated Maturity Date", when used with respect to any Debt Security or any installment of interest thereon, means the date specified in such Debt Security as the fixed date on which the principal of such Debt Security or such installment of interest is due and payable.

(61)  "Subsidiary" means a corporation, a majority of the outstanding voting shares of which are owned, directly or indirectly, by Northern Telecom or by one or more other Subsidiaries, or by Northern Telecom and one or more other Subsidiaries. For the purposes of this definition, "voting shares" means shares having voting power for the election of directors, whether at all times or only so long as no other shares have such voting power by reason of any contingency.

(62)  "Trust Indenture Act" means the Trust Indenture Act of 1939 as in force at the date as of which this indenture was executed, except as provided in Sections 609, 703 and 905.

- 9 -

CONFIDENTIAL                                                      IT00009095

From:Bank of NY Mellon          12128155802          01/20/2009 10:37     #424 P.018/078

(63)    "Trustee" means the Person named as the "Trustee" in the first paragraph of this Indenture until a successor Trustee shall have become such pursuant to the applicable provisions hereof, and thereafter "Trustee" shall mean or include each Person who is then a Trustee hereunder, and if at any time there is more than one such Person, "Trustee" as used with respect to the Debt Securities of any series shall mean the Trustee with respect to Debt Securities of that series.

SECTION 102.    *Compliance Certificates and Opinions.*

(a)    Upon any application or request by an Issuer or the Guarantor to the Trustee to take any action under any provision of this Indenture, such Issuer or the Guarantor, as the case may be, shall furnish to the Trustee an Officers' Certificate and Opinion of Counsel stating that all conditions precedent, if any, provided for in this Indenture related to the proposed action have been complied with except that, in the case of any such application or request as to which the furnishing of such documents is specifically required by any provision of this Indenture related to such particular application or request, no additional certificate or opinion need be furnished.

(b)    Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include: (1) a statement that each individual signing such certificate or opinion has read such covenant or condition and the definitions herein related thereto; (2) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based; (3) a statement that, in the opinion of each such individual, he has made such examination or investigation as is reasonably necessary to enable him to make the statement or to express an opinion whether such covenant or condition has been complied with; and (4) a statement whether, in the opinion of each such individual, such condition or covenant has been complied with.

SECTION 103.    *Form of Documents Delivered to Trustee.*

(a)    In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

(b)    Any certificate or opinion of an officer of an Issuer or the Guarantor may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which such certificate or opinion is based is erroneous. Any such certificate or Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of such Issuer or the Guarantor, as the case may be, stating that the information with respect to such factual matters is in the possession of such certifying entity

- 10 -

CONFIDENTIAL                                                                    IT00009096

unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters is erroneous.

(c)     Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

SECTION 104.   *Acts of Holders.*

(a)     Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Holders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Holders in person or by an agent duly appointed in writing. Except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are delivered to the Trustee and, where it is hereby expressly required, to the Issuers and the Guarantor or any of them. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Holders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and, subject to Section 601, conclusive in favor of the Trustee, the Issuers and the Guarantor, if made in the manner provided in this Section. The record of any meeting of Holders of Debt Securities shall be proved in the manner provided in Section 1406.

(b)     The fact and date of the execution by any Person of any such instrument or writing may be proved by the affidavit of a witness of such execution or by a certificate of a notary public or other officer authorized by law to take acknowledgments of deeds, certifying that the individual signing such instrument or writing acknowledged to him the execution thereof. Where such execution is by a signer acting in a capacity, other than his individual capacity, such certificate or affidavit shall also constitute sufficient proof of his authority. The fact and date of the execution of any such instrument or writing, or the authority of the Person executing the same, may also be proved in any manner that the Trustee deems sufficient.

(c)     The ownership of Debt Securities shall be proved by the Security Register.

(d)     If an Issuer or the Guarantor shall solicit from the Holders of Debt Securities of any series any Act, such Issuer or the Guarantor, as the case may be, may, at its option, by Board Resolution, fix in advance a record date for the determination of Holders of Debt Securities entitled to take such Act, but such Issuer or the Guarantor, as the case may be, shall have no obligation to do so. Any such record date shall be fixed at the discretion of such Issuer or the Guarantor, as the case may be. If such a record date is fixed, such Act may be sought or taken before or after the record date, but only the Holders of record at the close of business on such record date shall be deemed to be Holders for the purpose of determining whether Holders of the requisite proportion of Debt Securities of such series Outstanding have authorized or agreed or consented to such Act, and for that purpose the Debt Securities of such series Outstanding shall be computed as of such record date.

- 11 -

CONFIDENTIAL

IT00009097

(e)     Any Act of the Holder of any Debt Security shall bind every future holder of the same
Debt Security and the Holder of every Debt Security issued upon the registration of transfer
thereof or in exchange therefor or in lieu thereof in respect of anything done, suffered or
omitted by the Trustee, the applicable Issuer or the Guarantor in reliance thereon, whether or
not notation of such action is made upon such Debt Security.

(f)     For purposes of determining the principal amount of Outstanding Debt Securities of
any series the Holders of which are required, requested or permitted to take any Act under this
Indenture: (1) each Original Issue Discount Security shall be deemed to have an amount
outstanding determined by the Trustee that could be declared to be due and payable pursuant to
the terms of such Original Issue Discount Security as of the date such Act is delivered to the
Trustee and, where it is hereby expressly required, to the applicable Issuer or the Guarantor;
and (2) each Debt Security denominated in a Foreign Currency or composite currency shall be
deemed to have an amount outstanding determined by the Trustee by converting the principal
amount of such Debt Security in the currency in which such Debt Security is denominated into
Dollars at the Exchange Rate as of the date such Act is delivered to the Trustee and, where it
is hereby expressly required, to the applicable Issuer or the Guarantor (or, if there is no such
rate on such date for the reasons specified in Section 311(d), such rate on the date specified in
such Section).

SECTION 105.     *Notices, etc., to Trustee, Corporation, Finance Subsidiary and Guarantor.*

Any Act of Holders or other document provided or permitted by this Indenture to be made
upon, given or furnished to, or filed with:

   (1)  the Trustee by any Holder, or by either Issuer or the Guarantor shall be sufficient
        for every purpose hereunder if made, given, furnished or filed in writing to or with
        the Trustee at its Corporate Trust Office, Attention: Corporate Trust Department
        facsimile number (212) 815-5915, and shall be deemed to have been made at the
        time of delivery or facsimile transmission; provided that any delivery made or
        facsimile sent on a day other than a Business Day in New York, shall be deemed to
        be received on the next following Business Day in New York; or

   (2)  either Issuer or the Guarantor, by the Trustee or by any Holder shall be sufficient
        for every purpose hereunder (unless otherwise herein expressly provided) if in
        writing to such Issuer or the Guarantor, as the case may be, addressed to it at the
        address of its executive office specified in the first paragraph of this Indenture,
        Attention: Corporate Secretary, facsimile number (905) 238-7927, in the case of
        Northern Telecom; or Attention: Secretary, facsimile number (615) 734-4067, in
        the case of Finance Subsidiary or at any other address previously furnished in
        writing to the Trustee by such Issuer or the Guarantor, as the case may be, and
        shall be deemed to have been made at the time of delivery or facsimile
        transmission; provided that any delivery made or facsimile sent on a day other than
        a Business Day in Toronto, Ontario or Nashville, Tennessee, respectively, shall be

- 12 -

CONFIDENTIAL                                                                      IT00009098

deemed to be received on the next following Business Day in Toronto, Ontario or Nashville, Tennessee, respectively.

SECTION 106.    *Notice to Holders; Waiver.*

(a)      Except as otherwise expressly provided herein, where this Indenture provides for notice to Holders of any event such notice shall be sufficiently given to Holders if in writing and mailed, first-class postage prepaid, to each Holder affected by such event, at his address as it appears in the Security Register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice.

(b)      If the regular mail service is suspended or for any other reason it shall be impracticable to give notice to Holders by mail, then such notification to Holders as shall be made with the approval of the Trustee shall constitute sufficient notification for every purpose hereunder. In any case where notice to Holders is given by mail, neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder shall affect the sufficiency of such notice with respect to other Holders.

(c)      Where this Indenture provides for notice in any manner, such notice may be waived in writing by the Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Holders shall be filed with the Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

(d)      Any Act required or permitted under this Indenture shall be in the English language.

SECTION 107. *Conflict with Trust Indenture Act.*

If any provision of this Indenture limits, qualifies or conflicts with a provision of the Trust Indenture Act that is required under the Trust Indenture Act to be a part of and govern this Indenture, the latter provision shall control. If any provision of this Indenture modifies or excludes any provision of the Trust Indenture Act that may be so modified or excluded, the latter provision shall be deemed to apply to this Indenture as so modified or excluded, as the case may be.

SECTION 108.    *Effect of Headings and Table of Contents.*

The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

SECTION 109.    *Successors and Assigns.*

All covenants and agreements in this Indenture by each Issuer or the Guarantor shall bind its successors and assigns, whether expressed or not.

- 13 -

IT00009099

SECTION 110.    *Separability Clause.*

If any provision in this Indenture or in the Debt Securities shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

SECTION 111.    *Benefits of Indenture.*

Nothing in this Indenture or in the Debt Securities, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, any Paying Agent and the Holders, any benefit or any legal or equitable right, remedy or claim under this Indenture.

SECTION 112.    *Governing Law.*

This Indenture and the Debt Securities shall be governed by and construed in accordance with the laws of the State of New York.

SECTION 113.    *Legal Holidays.*

If any Interest Payment Date, Redemption Date or Stated Maturity Date of any Debt Security shall not be a Business Day at any Place of Payment, then (notwithstanding any other provision of this Indenture or of the Debt Securities) payment of interest or principal (and premium, if any) need not be made at such Place of Payment on such date, but may be made on the next succeeding Business Day at such Place of Payment with the same force and effect as if made on the Interest Payment Date, Redemption Date, or Stated Maturity Date, and no interest shall accrue on such payment for the period from and after such Interest Payment Date, Redemption Date or Stated Maturity Date, as the case may be.

### ARTICLE TWO

### DEBT SECURITY FORMS

SECTION 201.    *Forms Generally.*

(a)    All Debt Securities, Guarantees, if any, and the Trustee's certificate of authentication shall have such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture or by a Board Resolution and as set forth in an Officers' Certificate or any indenture supplemental hereto and may have such letters, numbers or other marks of identification or designation and such legends or endorsements placed thereon as the applicable Issuer or Guarantor, as the case may be, may deem appropriate and as are not inconsistent with the provisions of this Indenture, or as may be required to comply with any law or with any rule or regulation made pursuant thereto or with any rule or regulation of any securities exchange on which any of the Debt Securities may be listed, or to conform to usage.

- 14 -

(b)     The definitive Debt Securities and Guarantees, if any, shall be printed, lithographed or engraved or produced by any combination of these methods on steel engraved borders or may be produced in any other manner; *provided* that such manner is permitted by the rules of any securities exchange on which the Debt Securities may be listed or of any automated quotation system on which such series may be quoted, all as determined by the officers executing such Debt Securities, as conclusively evidenced by their execution of such Debt Securities.

SECTION 202.    *Forms of Debt Securities.*

Debt Securities shall be in the forms approved by the officers executing such Debt Securities, as conclusively evidenced by their execution of such Debt Securities, having those terms approved by or pursuant to a Board of Resolution and set forth in an Officers' Certificate or one or more indentures supplemental hereto which shall set forth the information required by Section 301. The Debt Securities of each series shall be issuable in registered form without coupons and may be in the form of one or more Global Securities in whole or in part.

SECTION 203.    *Guarantee by Guarantor; Form of Guarantee.*

The Guarantor by its execution of this Indenture hereby agrees with each Holder of a Guaranteed Debt Security of each series authenticated and delivered by the Trustee and with the Trustee on behalf of each such Holder, to be unconditionally bound by the terms and provisions of the Guarantees set forth below and authorizes the Trustee to confirm such Guarantees to the Holder of each such Guaranteed Debt Security by its execution and delivery of each such Guaranteed Debt Security, with such Guarantees endorsed thereon, authenticated and delivered by the Trustee.

Guarantees to be endorsed on the Guaranteed Debt Securities shall, subject to Section 201, be in substantially the form set forth below:

### GUARANTEE

### OF

### NORTHERN TELECOM LIMITED

For value received, Northern Telecom Limited, a corporation incorporated under the laws of Canada, having its principal executive offices at 2920 Matheson Boulevard East, Mississauga, Ontario, Canada, L4W 4M7 (herein called the "Guarantor", which term includes any successor Person under the Indenture referred to in the Debt Security upon which this Guarantee is endorsed), hereby unconditionally guarantees to the Holder of the Guaranteed Debt Security upon which this Guarantee is endorsed and to the Trustee on behalf of each such Holder the due and punctual payment of the principal of, premium, if any, and interest on such Guaranteed Debt Security and the due and punctual payment of the sinking fund or analogous payments referred to therein, if any, when and as the same shall become due and

- 15 -

CONFIDENTIAL                                                                                            IT00009101

From: Bank of NY Mellon                12128155802                01/20/2009 10:39        #424 P.024/078

payable, whether on the Stated Maturity Date, by declaration of acceleration, call for redemption or otherwise, according to the terms thereof and of the Indenture referred to therein. In case of the failure of Northern Telecom Capital Corporation, a corporation organized under the laws of Delaware (herein called the "Borrower", which term includes any successor Person under such Indenture), punctually to make any such payment of principal, premium, if any, or interest or any such sinking fund or analogous payment, the Guarantor hereby agrees to cause any such payment to be made punctually when and as the same shall become due and payable, whether on the Stated Maturity Date or by declaration of acceleration, call for redemption or otherwise, and as if such payment were made by the Borrower.

The Guarantor hereby agrees that its obligations hereunder shall be as if it were principal debtor and not merely surety, and shall be absolute and unconditional, irrespective of, and shall be unaffected by, any invalidity, irregularity or unenforceability of such Guaranteed Debt Security or such Indenture, any failure to enforce the provisions of such Guaranteed Debt Security or such Indenture, or any waiver, modification or indulgence granted to the Borrower with respect thereto, by the Holder of such Guaranteed Debt Security or the Trustee or any other circumstance which may otherwise constitute a legal or equitable discharge of a surety or guarantor; provided, however, that, notwithstanding the foregoing, no such waiver, modification or indulgence shall, without the consent of the Guarantor, increase the principal amount of such Guaranteed Debt Security, or increase the interest rate thereon, or increase any premium payable upon redemption thereof, or alter the Stated Maturity Date thereof, or increase the principal amount of any Original Issue Discount Security that would be due and payable upon a declaration of acceleration of the maturity thereof pursuant to Article Five of such Indenture. The Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of merger or bankruptcy of the Borrower, any right to require a proceeding first against the Borrower, protest or notice with respect to such Guaranteed Debt Security or the indebtedness evidenced thereby or with respect to any sinking fund or analogous payment required under such Debt Security and all demands whatsoever, and covenants that this Guarantee will not be discharged except by payment in full of the principal of, premium, if any, and interest on such Guaranteed Debt Security.

The Guarantor shall be surrogated to all rights of the Holder of such Guaranteed Debt Security and the Trustee against the Borrower in respect of any amounts paid to such Holder by the Guarantor pursuant to the provisions of this Guarantee; provided, however, that the Guarantor shall not be entitled to enforce, or to receive any payments arising out of or based upon such right of subrogation until the principal of, premium, if any, and interest on all Guaranteed Debt Securities of the same series issued under such Indenture shall have been paid in full.

No reference herein to such Indenture and no provision of this Guarantee or of such Indenture shall alter or impair the guarantees of the Guarantor, which are absolute and unconditional, of the due and punctual payment of the principal of, premium, if any, and interest on, and any sinking fund or analogous payments with respect to, the Guaranteed Debt Security upon which this Guarantee is endorsed.

- 16 -

CONFIDENTIAL

IT00009102

From:Bank of NY Mellon                12128155802              01/20/2009 10:39        #424 P.025/078

This Guarantee shall not be valid or obligatory for any purpose until the certificate of authentication of such Guaranteed Debt Security shall have been manually executed by or on behalf of the Trustee under such Indenture.

All terms used in this Guarantee which are defined in such Indenture shall have the meanings assigned to them in such Indenture.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York.

Executed and dated the date on the face hereof.

NORTHERN TELECOM LIMITED

By _____
   Name:
   Title:


By _____
   Name:
   Title:


SECTION 204.   *Form of Trustee's Certificate of Authentication.*

The form of the Trustee's certificate of authentication to be borne by the Debt Securities shall be substantially as follows:

Dated:

TRUSTEE'S CERTIFICATE OF AUTHENTICATION

This is one of the Debt Securities issued under the within-mentioned Indenture.

[Name of Trustee]
                                        *as Trustee*

By ...............................................
                 *Authorized Signatory*

- 17 -

CONFIDENTIAL                                                                                    IT00009103

ARTICLE THREE

THE DEBT SECURITIES

SECTION 301.  *Amount Unlimited; Issuable in Series.*

(a)  The aggregate principal amount of Debt Securities that may be authenticated and delivered under this Indenture is unlimited.

(b)  The Debt Securities may be issued in one or more series.  Not all Debt Securities of any one series need be issued at the same time, and, unless otherwise provided, a series may be reopened for issuances of additional Debt Securities of such series.  There shall be established in or pursuant to a Board Resolution of the applicable Issuer and set forth in an Officers' Certificate, or established in one or more indentures supplemental hereto, prior to the issuance of Debt Securities of any series:

    (1)  whether such Debt Securities are Corporation Debt Securities or Guaranteed Debt Securities;

    (2)  the title of the Debt Securities of the series (which shall distinguish the Debt Securities of the series from all other Debt Securities);

    (3)  the limit, if any, upon the aggregate principal amount of the Debt Securities of the series that may be authenticated and delivered under this Indenture (except for Debt Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Debt Securities of the series pursuant to Sections 304, 305, 306, 906 or 1107);

    (4)  the date or dates on which the principal of the Debt Securities of the series is payable;

    (5)  the rate or rates or the method of determination thereof at which the Debt Securities of the series shall bear interest, if any, the date or dates from which such interest shall accrue, the Interest Payment Dates on which such interest shall be payable, and the Regular Record Dates for the interest payable on such Interest Payment Dates;

    (6)  the place or places where the principal of (and premium, if any) and interest on Debt Securities of the series shall be payable;

    (7)  the period or periods within which or the date or dates on which, if any, the price or prices at which and the terms and conditions upon which Debt Securities of the series may be repurchased or redeemed, in whole or in part, at the option of the applicable Issuer;

- 18 -

CONFIDENTIAL

(8)     the obligation, if any, of the applicable Issuer to redeem, repay or purchase
        Debt Securities of the series either pursuant to any sinking fund or analogous
        provisions or at the option of a Holder thereof and the period or periods within
        which, the price or prices at which and the terms and conditions upon which
        Debt Securities of the series shall be redeemed, repaid or purchased, in whole
        or in part, pursuant to such obligation;

(9)     whether the Debt Securities of the series shall be issued in whole or in part in
        the form of one or more Global Securities and, in such case, the Depositary for
        such Global Security or Securities and the terms and conditions, if any, upon
        which interests in such Global Security or Securities may be exchanged in whole
        or in part for the individual Debt Securities represented thereby;

(10)    the denominations in which Debt Securities of the series shall be issuable;

(11)    if other than the principal amount thereof, the portion of the principal amount of
        Debt Securities of the series that shall be payable upon declaration of
        acceleration of the Maturity thereof pursuant to Section 501;

(12)    the currency or currencies of denominations of the Debt Securities of any series,
        which may be in Dollars, any Foreign Currency or any composite currency,
        including but not limited to ECU, and, if any such currency of denomination is
        a composite currency other than ECU, the agency or organization, if any,
        responsible for overseeing such composite currency;

(13)    the currency or currencies in which payment of the principal of (and premium,
        if any) and interest on the Debt Securities of the series will be made, and the
        currency or currencies, if any, in which payment of the principal of (and
        premium, if any) or the interest on Debt Securities of the series, at the election
        of each of the Holders thereof, may also be payable;

(14)    if the amount of payments of principal of (and premium, if any) or interest on
        the Debt Securities of the series may be determined with reference to an index
        based on a currency or currencies other than that in which the Debt Securities of
        the series are denominated or designated to be payable, the manner in which
        such amounts shall be determined;

(15)    if the payments of principal of (and premium, if any) or the interest on the Debt
        Securities of the series are to be made in a Foreign Currency, other than the
        Foreign Currency in which such Debt Securities are denominated, the manner in
        which the Exchange Rate with respect to such payments shall be determined;

(16)    the terms, if any, upon which the Debt Securities of the series will be
        defeasable; and

- 19 -

CONFIDENTIAL                                                            IT00009105

(17)   any other terms of the series (which terms shall not be inconsistent with the provisions of this Indenture).

(c)   All Debt Securities of any one series shall be substantially identical except as to denomination and except as may otherwise be provided in or pursuant to such Board Resolution and set forth in such Officers' Certificate or in such indenture or indentures supplemental hereto.

(d)   If any of the terms of a series of Debt Securities are established by action taken pursuant to a Board Resolution, a copy of an appropriate record of such action shall be certified by the Secretary or an Assistant Secretary of the applicable Issuer and delivered to the Trustee at or prior to the delivery of the Officers' Certificate setting forth the terms of the series.

(e)   Debt Securities of any series which are repayable at the option of the Holders shall be repaid in accordance with the terms of the Debt Securities of such series.

SECTION 302.   *Denominations.*

Unless otherwise provided as contemplated by Section 301 with respect to any series of Debt Securities and except as provided in Section 303, Debt Securities will be issued in denominations, unless otherwise specified by the applicable Issuer, of integral multiples of $1,000.

SECTION 303.   *Execution, Authentication, Delivery and Dating.*

(a)   The Debt Securities shall be executed on behalf of the applicable Issuer by any two of the Chairman of the Board, the President or any Vice-President or any one of the aforesaid officers together with any one of the Secretary, the Controller, the Treasurer, any Assistant Secretary or any Assistant Treasurer of such Issuer. The Debt Securities may but need not be under the corporate seal of the applicable Issuer or a reproduction thereof (which reproduction shall for such purposes be deemed to be the corporate seal of such Issuer). The signature of any of these officers on the Debt Securities may be manual or facsimile. Debt Securities bearing the manual or facsimile signatures of individuals who were at any time the proper officers of the applicable Issuer shall bind such Issuer notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Debt Securities.

(b)   At any time and from time to time after the execution and delivery of this Indenture, the applicable Issuer may deliver Debt Securities of any series executed by such Issuer and Guarantor, if applicable, to the Trustee for authentication, together with an Issuer Order of such Issuer for the authentication and delivery of such Debt Securities; whereupon the Trustee, in accordance with such Issuer Order shall authenticate and deliver such Debt Securities. The Trustee shall be entitled to receive, prior to the authentication and delivery of such Debt Securities, the supplemental indenture or the Board Resolution by or pursuant to which the

- 20 -

CONFIDENTIAL                                                                                   IT00009106

terms of such Debt Securities have been approved, an Officers' Certificate as to the absence of any event that is, or after notice or lapse of time or both would become, an Event of Default, and an Opinion or Opinions of Counsel of such Issuer and Guarantor, if applicable, to the effect that:

(1)    all instruments furnished by the applicable Issuer and the Guarantor (in the case of Guaranteed Debt Securities) to the Trustee in connection with the authentication and delivery of such Debt Securities conform to the requirements of this Indenture and constitute sufficient authority hereunder for the Trustee to authenticate and deliver such Debt Securities;

(2)    the forms of such Debt Securities and Guarantees, if any, have been established in conformity with the provisions of this Indenture;

(3)    the terms of such Debt Securities and Guarantees, if any, have been established in conformity with the provisions of this Indenture;

(4)    in the event that the forms or terms of such Debt Securities and Guarantees, if any, have been established in a supplemental indenture, the execution and delivery of such supplemental indenture have been duly authorized by all necessary corporate action of the applicable Issuer and the Guarantor (in the case of Guaranteed Debt Securities); such supplemental indenture has been duly executed and delivered by such Issuer and Guarantor and, assuming due authorization, execution and delivery by the Trustee, is a valid and binding obligation enforceable against such Issuer and Guarantor in accordance with its terms, subject to enforceability being limited by bankruptcy, insolvency, or other laws affecting the enforcement of creditors' rights generally, and equitable remedies, including the remedies of specific performance and injunction, being granted only in the discretion of a court of competent jurisdiction;

(5)    the execution and delivery of such Debt Securities and Guarantees, if any, have been duly authorized by all necessary corporate action of the applicable Issuer and the Guarantor (in the case of Guaranteed Debt Securities) and such Debt Securities and Guarantees, if any, have been duly executed by such Issuer and Guarantor and, assuming due authentication by the Trustee and delivery by such Issuer and Guarantor are valid and binding obligations of such Issuer and Guarantor enforceable against such Issuer and Guarantor in accordance with their terms, entitled to the benefit of the Indenture, subject to enforceability being limited by bankruptcy, insolvency, or other laws affecting the enforcement of creditors' rights generally, and equitable remedies, including the remedies of specific performance and injunction, being granted only in the discretion of a court of competent jurisdiction;

(6)    the amount of Outstanding Debt Securities of such series, together with the amount of such Debt Securities, does not exceed any limit established under the

- 21 -

CONFIDENTIAL

IT00009107

terms of this Indenture on the amount of Debt Securities of such series that may be authenticated and delivered; and

(7)     such other matters as the Trustee may reasonably request.

(c)     If the applicable Issuer shall establish pursuant to Section 301 that the Debt Securities of a series are to be issued in whole or in part in the form of one or more Global Securities, then such Issuer and the Guarantor (in the case of Guaranteed Debt Securities) shall execute and the Trustee shall authenticate and deliver one or more Global Securities that shall: (1) represent an aggregate amount equal to the aggregate principal amount of the Outstanding Debt Securities of such series to be represented by one or more Global Securities; (2) be registered in the name of the Depositary for such Global Security or Securities or the nominee of such Depositary; (3) be delivered by the Trustee to such Depositary or pursuant to such Depositary's instruction; and (4) bear a legend substantially to the following effect: "Unless and until it is exchanged in whole or in part for the individual Debt Securities represented hereby, this Global Security may not be transferred except as a whole by the Depositary to a nominee of the Depositary or by a nominee of the Depositary to the Depositary or another nominee of the Depositary or by the Depositary or any such nominee to a successor Depositary or a nominee of such successor Depositary."

(d)     Each Depositary designated pursuant to Section 301 for a Global Security must, at the time of its designation and at all times while it serves as such Depositary, be a clearing agency registered under the Exchange Act and any other applicable statute or regulation.

(e)     The Trustee shall not be required to authenticate any Debt Securities if the issuance of such Debt Securities pursuant to this Indenture will adversely affect the Trustee's own rights, duties or immunities under this Indenture.

(f)     Each Debt Security shall be dated the date of its issue, except as otherwise provided pursuant to Section 301 with respect to Debt Securities of such series.

(g)     No Debt Security or Guarantee endorsed thereon, if any, shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Debt Security a certificate of authentication substantially in the form provided for herein duly executed by the Trustee by manual signature of one of its authorized officers, and such certificate upon any Debt Security shall be conclusive evidence, and the only evidence, that such Debt Security has been duly authenticated and delivered hereunder and is entitled to the benefits of this Indenture.

SECTION 304.     *Temporary Debt Securities.*

(a)     Pending the preparation of definitive Debt Securities of any series, the applicable Issuer may execute, and, upon receipt of an Issuer Order of such Issuer, the Trustee shall authenticate and deliver, temporary Debt Securities that are printed, lithographed, typewritten, mimeographed or otherwise produced, in any authorized denomination, substantially of the

- 22 -

CONFIDENTIAL                                    IT00009108

tenor of the definitive Debt Securities in lieu of which they are issued, in registered form and, in the case of Guaranteed Debt Securities, having endorsed thereon a Guarantee executed by the Guarantor substantially of the tenor of the definitive Guarantee, in all cases with such appropriate insertions, omissions, substitutions and other variations as the officers of the Issuer and Guarantor, if applicable executing such Debt Securities and Guarantees, if any, may determine, as conclusively evidenced by their execution of such Debt Securities. Any such temporary Debt Securities may be in global form, representing all or a portion of the Outstanding Debt Securities of such series. Every such temporary Debt Security and Guarantee, if any, shall be executed by officers of the applicable Issuer and Guarantor, if applicable, and shall be authenticated and delivered by the Trustee upon the same terms and conditions and in substantially the same manner, and with the same effect, as the definitive Debt Securities and Guarantee, if any, in lieu of which it is issued.

(b)    If temporary Debt Securities of any series are issued, the applicable Issuer will cause definitive Debt Securities of such series to be prepared without unreasonable delay. Upon surrender for cancellation of any one or more temporary Debt Securities of any series, the applicable Issuer shall execute and the Trustee shall authenticate and deliver in exchange therefor a like principal amount of definitive Debt Securities of the same series of authorized denominations and of like tenor and, in the case of Guaranteed Debt Securities, having endorsed thereon a Guarantee executed by the Guarantor. Until so exchanged, temporary Debt Securities of any series shall in all respects be entitled to the same benefits under this Indenture as individual Debt Securities of such series, except as otherwise specified as contemplated by Section 301 with respect to the payment of interest on Global Securities in temporary form.

(c)    Upon any exchange of a portion of a temporary Global Security for a definitive Global Security or for the individual Debt Securities represented thereby pursuant to this Section 304 or Section 305, the temporary Global Security shall be endorsed by the Trustee to reflect the reduction of the principal amount evidenced thereby, whereupon the principal amount of such temporary Global Security shall be reduced for all purposes by the amount so exchanged and endorsed.

SECTION 305.    *Registration, Registration of Transfer and Exchange.*

(a)    The Issuers each will maintain an office or agency at which shall be kept a register (the "Security Registers") which, subject to such reasonable regulations as it may prescribe, shall provide for the registration of Debt Securities and of transfers of Debt Securities. Unless and until otherwise determined by an Issuer, the Trustee shall act as such Issuer's agent as Security Registrar and the Security Registers shall be kept at the office or agency of the Trustee in the Borough of Manhattan, The City of New York. Such Security Registers shall be in written form or in any other form capable of being converted into written form within a reasonable period of time. At all reasonable times, the Security Registers shall be open for inspection by the Trustee.

(b)    Upon surrender for registration of transfer of any Debt Security of any series at the office or agency of the applicable Issuer maintained for such purpose, such Issuer shall

- 23 -

IT00009109

execute, and the Trustee shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Debt Securities of the same series of any authorized denomination or denominations, of like tenor and aggregate principal amount and, in the case of Guaranteed Debt Securities, having endorsed thereon a Guarantee executed by the Guarantor. Every Debt Security presented or surrendered for registration of transfer or for exchange shall (if so required by such Issuer, the Security Registrar or the Trustee) be duly endorsed, or be accompanied by a written instrument of transfer in form satisfactory to such Issuer, the Security Registrar and the Trustee duly executed, by the Holder thereof or his attorney duly authorized in writing.

(c)    Notwithstanding any other provision of this Section, unless and until it is exchanged in whole or in part for Debt Securities in definitive form, a Global Security representing all or a portion of the Debt Securities of a series may not be transferred except as a whole by the Depositary for such series to a nominee of such Depositary or by a nominee of such Depositary to such Depositary or another nominee of such Depositary or by such Depositary or any such nominee to a successor Depositary for such series or a nominee of such successor Depositary.

(d)    At the option of the Holder, Debt Securities of any series (other than a Global Security) may be exchanged for other Debt Securities of the same series of any authorized denomination or denominations of a like aggregate principal amount, upon surrender of the Debt Securities to be exchanged at such office or agency.

(e)    If at any time the Depositary for the Debt Securities of a series notifies the applicable Issuer that it is unwilling or unable to continue as Depositary for the Debt Securities of such series or if at any time the Depositary for the Debt Securities of such series shall no longer be eligible under Section 303(d), such Issuer shall appoint a successor Depositary with respect to the Debt Securities of such series.

(f)    The applicable Issuer may at any time and in its sole discretion determine that individual Debt Securities of any series issued in the form of one or more Global Securities shall no longer be represented by such Global Security or Global Securities. In such event such Issuer will execute, and the Trustee, upon receipt of an Issuer Order for the authentication and delivery of individual Debt Securities of such series, will authenticate and deliver, individual Debt Securities of such series in an aggregate principal amount equal to the principal amount of the Global Security or Securities representing Debt Securities of such series (which, in the case of Guaranteed Debt Securities, shall have endorsed thereon a Guarantee executed by the Guarantor) in exchange for such Global Security or Global Securities.

(g)    If specified by the applicable Issuer pursuant to Section 301 with respect to a series of Debt Securities, the Depositary for such series of Debt Securities may surrender a Global Security for such series of Debt Securities in exchange in whole or in part for definitive Debt Securities of such series on such terms as are acceptable to such Issuer and such Depositary. Thereupon, such Issuer shall execute, and the Trustee shall authenticate and deliver, without

- 24 -

                                                                                   IT00009110

service charge: (1) to each Person specified by such Depositary a new definitive Debt Security or Debt Securities of the same series (which, in the case of Guaranteed Debt Securities, shall have endorsed thereon a Guarantee executed by the Guarantor), of any authorized denomination as requested by such Person in aggregate principal amount equal to and in exchange for such Person's beneficial interest in the Global Security; and (2) to such Depositary a new Global Security (which, in the case of Guaranteed Debt Securities, shall have endorsed thereon a Guarantee executed by the Guarantor) in a denomination equal to the difference, if any, between the principal amount of the surrendered Global Security and the aggregate principal amount of definitive Debt Securities delivered to Holders thereof.

(h)     In any exchange provided for in Sections 305(f) or (g), the applicable Issuer shall execute and the Trustee will authenticate and deliver Debt Securities (which, in the case of Guaranteed Debt Securities, shall have endorsed thereon a Guarantee executed by the Guarantor) in registered form in authorized denominations.

(i)     Upon the exchange of a Global Security for individual Debt Securities in definitive form, such Global Security shall be cancelled by the Trustee. Individual Debt Securities exchanged for portions of a Global Security pursuant to this Section shall be registered in such names and in such authorized denominations as the Depositary for such Global Security, pursuant to instructions from its direct or indirect participants or otherwise, shall instruct the Trustee. The Trustee shall deliver such Debt Securities to the persons in whose names such Debt Securities are so registered.

(j)     All Debt Securities executed for delivery upon any transfer or exchange of Debt Securities shall be valid obligations of the applicable Issuer evidencing the same debt, and entitled to the same benefits under this Indenture, as the Debt Securities surrendered for such transfer or exchange. No service charge shall be made for any registration of transfer or exchange of Debt Securities, but the applicable Issuer may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any transfer, registration of transfer or exchange of Debt Securities, other than exchanges pursuant to Sections 304, 906 or 1107 not involving any transfer.

(k)     The applicable Issuer shall not be required to: (1) execute for delivery, register the transfer of or exchange of Debt Securities of any particular series during a period beginning at the opening of business 15 days before the day of the mailing of a notice of redemption of Debt Securities of such series selected for redemption under Section 1103 and ending at the close of business on the day of such mailing; or (2) register the transfer of or exchange of any Debt Security so selected for redemption in whole or in part, except the unredeemed portion of any Debt Security being redeemed in part.

SECTION 306.   *Mutilated, Destroyed, Lost or Stolen Debt Securities.*

(a)     If: (1) any mutilated Debt Security is surrendered to the Trustee; or (2) the applicable Issuer, the Guarantor (in the case of a Guaranteed Debt Security) and the Trustee receive evidence to their satisfaction of the destruction, loss or theft of any Debt Security, and such

- 25 -

CONFIDENTIAL                                    IT00009111

Issuer, Guarantor and the Trustee receive such security or indemnity satisfactory to them; then, in the absence of notice to such Issuer, Guarantor or the Trustee that such Debt Security has been acquired by a bona fide purchaser, such Issuer and Guarantor, as the case may be, shall execute and upon its written request the Trustee shall authenticate and deliver, in exchange for any such Security, a new Debt Security of like tenor and principal amount and, in the case of Guaranteed Debt Securities, having endorsed thereon a Guarantee executed by the Guarantor, in registered form bearing a number not contemporaneously outstanding appertaining to such destroyed, lost or stolen Debt Security.

(b)    If any such mutilated, destroyed, lost or stolen Debt Security has become or is about to become due and payable, the applicable Issuer or the Guarantor (in the case of Guaranteed Debt Securities) in their discretion may, instead of executing for delivery a new Debt Security, pay such Debt Security. Upon the execution for delivery of any new Debt Security under this Section, such Issuer or Guarantor may require the payment by the Holder of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith. The provisions of this Section are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Debt Securities.

(c)    Every new Debt Security of any series and the Guarantee endorsed thereon, if any, executed for delivery pursuant to this Section in lieu of any destroyed, lost or stolen Debt Security shall constitute a contractual obligation of the applicable Issuer and the Guarantor (in the case of Guaranteed Debt Securities), to the same effect as such destroyed, lost or stolen Debt Security shall be at any time enforceable by anyone, and any such new Debt Security and Guarantee, if any, shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Debt Securities of that series and the Guarantee endorsed thereon, if any, duly issued hereunder.

SECTION 307.    *Payment of Interest; Interest Rights Preserved.*

(a)    Interest on any Debt Security that is payable on any Interest Payment Date shall be paid to the Person in whose name that Debt Security (or one or more Predecessor Securities) is registered at the close of business on the Regular Record Date for such interest. At the option of the applicable Issuer payment of interest on any Debt Security may be made by cheque mailed to the address of the Person entitled thereto as such address shall appear in the Security Register or by wire transfer to an account designated by such Person (see Section 1001).

(b)    Any interest on any Debt Security of any series that is payable, but is not punctually paid or duly provided for, on any Interest Payment Date (herein called "Defaulted Interest") shall be paid in accordance with the following provisions and not to the registered Holder on the relevant Regular Record Date by virtue of his having been such Holder.

(1)    The applicable Issuer may elect to make payment of any Defaulted Interest to the Persons in whose names the Debt Securities of such series (or their

- 26 -

CONFIDENTIAL                                                                            IT00009112

respective Predecessor Securities) are registered at the close of business on a Special Record Date for the payment of such Defaulted Interest, which shall be fixed in the following manner. Such Issuer shall notify the Trustee in writing of the amount of Defaulted Interest proposed to be paid on each Debt Security of such series and the date of the proposed payment, and at the same time such Issuer shall deposit with the Trustee an amount of money equal to the aggregate amount proposed to be paid in respect of such Defaulted Interest or shall make arrangements satisfactory to the Trustee for such deposit prior to the date of the proposed payment, such money when deposited to be held in trust for the benefit of the Persons entitled to such Defaulted Interest. Thereupon the Trustee shall fix a Special Record Date for the payment of such Defaulted Interest, which shall be not more than 15 days and not less than 10 days prior to the date of the proposed payment and not less than 10 days after the receipt by the Trustee of the notice of the proposed payment. The Trustee shall cause notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor to be mailed, first-class postage prepaid, to each Holder of Debt Securities of such series at his address as it appears in the Security Register, not less than 10 days prior to such Special Record Date. Defaulted Interest shall be paid to the Persons in whose names the Debt Securities of such series (or their respective Predecessor Securities) are registered at the close of business on such Special Record Date and shall no longer be payable pursuant to the following Clause (2).

(2)     The applicable Issuer may make payment of any Defaulted Interest on the Debt Securities of any series in any other lawful manner not inconsistent with the requirements of any securities exchange on which the Debt Securities may be listed, and upon such notice as may be required by such exchange, if, after notice given by such Issuer to the Trustee of the proposed payment pursuant to this clause, such manner of payment shall be deemed practicable by the Trustee.

(c)     Subject to the foregoing provisions of this Section, each Debt Security delivered under this Indenture upon registration of transfer of or in exchange for or in lieu of any other Debt Security shall carry the rights to interest accrued and unpaid, and to accrue, that were carried by such other Debt Security.

SECTION 308.    *Persons Deemed Owners.*

(a)     Prior to due presentment of a Debt Security for registration of transfer, the applicable Issuer, the Guarantor (in the case of Guaranteed Debt Securities), the Trustee and any agent of any of the foregoing may treat the Person in whose name such Debt Security is registered as the owner of such Debt Security for the purpose of receiving payment of principal of (and premium, if any) and, subject to Section 307, interest on such Debt Security and for all other purposes whatsoever, whether or not such Debt Security be overdue, and none of such Issuer, Guarantor, the Trustee or any agent of any of the foregoing shall be affected by notice to the contrary.

- 27 -

CONFIDENTIAL

IT00009113

(b)    None of the applicable Issuer, the Guarantor (in the case of Guaranteed Debt Securities), the Trustee, any Paying Agent or the Security Registrar will have any responsibility or liability for any aspect of the records related to or payments made on account of beneficial ownership interests of a Global Security or for maintaining, supervising or reviewing any records related to such beneficial ownership interests.

SECTION 309.    *Cancellation.*

Unless otherwise provided, all Debt Securities surrendered for payment, redemption, registration of transfer or exchange shall, if surrendered to any Person other than the Trustee, be delivered to the Trustee and shall be promptly cancelled by it. The applicable Issuer or the Guarantor (in the case of Guaranteed Debt Securities) may deliver to the Trustee for cancellation any Debt Securities previously authenticated and delivered hereunder that such Issuer or Guarantor may have acquired in any manner whatsoever, and all Debt Securities so delivered shall be promptly cancelled by the Trustee. No Debt Securities shall be authenticated in lieu of or in exchange for any Debt Securities cancelled as provided in this Section, except as expressly permitted by this Indenture. All cancelled Debt Securities held by the Trustee shall be disposed of in accordance with the Trustee's policy of disposal or shall be returned to the applicable Issuer upon Issuer Request of such Issuer; provided, however, that the Trustee shall not be required to destroy cancelled Debt Securities.

SECTION 310.    *Computation of Interest.*

Except as otherwise specified pursuant to Section 301 for Debt Securities of any series, interest on the Debt Securities of each series shall be computed on the basis of a 360-day year of twelve 30-day months. Solely for the purposes of disclosure pursuant to the Interest Act (Canada) and without affecting the calculation of interest on any Debt Securities, the yearly rate of interest for any portion of an interest period of less than one year is the percent rate per annum noted on any series of Debt Securities multiplied by the number of days in the calendar year in which interest is paid divided by 360.

SECTION 311.    *Payment in Currencies.*

(a)    Payment of principal of (and premium, if any) and interest on the Debt Securities of any series shall be made in the currency or currencies specified pursuant to Section 301; *provided* that the Holder of a Debt Security of such series may elect to receive such payment in any one of Dollars or any other currency designated for such purpose pursuant to Section 301. A Holder may make such election by delivering to the Trustee a written notice thereof, substantially in the form attached hereto as Exhibit A or in such other form as may be acceptable to the Trustee, not later than the close of business on the Regular or Special Record Date immediately preceding the applicable Interest Payment Date or date for Payment of Defaulted Interest or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be. Such election shall remain in effect with respect to such Holder until such Holder delivers to the Trustee a written notice substantially in the form attached

- 28 -

CONFIDENTIAL                                                    IT00009114

hereto as Exhibit A or in such other form as may be acceptable to the Trustee specifying a change in the currency in which such payment is to be made; *provided* that any such notice must be delivered to the Trustee not later than the close of business on the Regular or Special Record Date immediately preceding the next Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be, in order to be effective for the payment to be made thereon; and *provided further* that no such change in currency may be made with respect to payments to be made on any Debt Security with respect to which notice of redemption has been given by the applicable Issuer, pursuant to Article Eleven.

(b)    Except as otherwise specified pursuant to Section 301, the Trustee shall deliver to the applicable Issuer, not later than the eighth Business Day after the Regular or Special Record Date with respect to an Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be, with respect to a series of Debt Securities, a written notice specifying, in the currency or currencies in which the Debt Securities of such series are denominated, the aggregate amount of the principal of (and premium, if any) and interest on such Debt Securities to be paid on such payment date. If payments on any such Debt Securities are designated to be made in a currency other than the currency in which such Debt Securities are denominated or if at least one Holder has made the election referred to in paragraph (a) above, then such written notice shall also specify, in each currency in which payment is to be made pursuant to paragraph (a), the amount of principal of (and premium, if any) and interest on such series of Debt Securities to be paid in such currency on such payment date.

(c)    The applicable Issuer shall deliver, not later than the fourth Business Day following each Regular or Special Record Date or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be, to the Trustee an Exchange Rate Officers' Certificate in respect of the Dollar or Foreign Currency payments to be made on such payment date. Except as otherwise specified pursuant to Section 301, the amount receivable by Holders who have elected payment in a currency other than the currency in which such Debt Securities are denominated as provided in paragraph (a) above shall be determined by such Issuer on the basis of the applicable Exchange Rate set forth in the applicable Exchange Rate Officers' Certificate.

(d)    Except as otherwise specified pursuant to Section 301, if the Foreign Currency in which Debt Securities of a series is denominated ceases to be used both by the government of the country which issued such currency and for the settlement of transactions by banks, then with respect to each date for the payment of principal of (and premium, if any) and interest on such Debt Securities occurring after the final date on which the Foreign Currency was so used, all payments with respect to such Debt Securities shall be made in Dollars; *provided* that payment to a Holder of a Debt Security of such series shall be made in a different Foreign Currency if that Holder has elected or elects payment in such Foreign Currency as provided for by paragraph (a) above. If payment is to be made in Dollars to the Holders of any such Debt Securities pursuant to the provisions of the preceding sentence, then the amount to be paid in Dollars on a payment date by the applicable Issuer to the Trustee and by the Trustee or

- 29 -

any Paying Agent to Holders shall be determined by the Trustee as of the Regular or Special Record Date with respect to such Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be, and shall be equal to the sum obtained by converting the specified Foreign Currency into Dollars at the Exchange Rate on the last Record Date on which such Foreign Currency was so used in such capacity.

(e)    If a Holder of a Debt Security denominated in a composite currency has elected payment in a specified Foreign Currency as provided for by paragraph (a) and such Foreign Currency ceases to be used both by the government of the country which issued such currency and for the settlement of transactions by banks, such Holder shall, subject to paragraph (f) below, receive payment in such composite currency; *provided* that such payment to such Holder shall be made in a different Foreign Currency or in Dollars if that Holder has elected or elects payment in such Foreign Currency or in Dollars as provided for by paragraph (a) above.

(f)    Except as otherwise specified as contemplated by Section 301, if ECU ceases to be used both within the European Monetary System, or if any other composite currency in which a Debt Security is denominated or payable ceases to be used for the purposes for which it was established, then with respect to each date for the payment of principal of (and premium, if any) and interest on Debt Securities of a series denominated in ECU or such other composite currency, as the case may be, occurring after the last date on which ECU or such other composite currency, as the case may be, was so used (the "Conversion Date"), all payments with respect to such Debt Securities shall be made in Dollars; *provided* that payment to a Holder of a Debt Security of such series shall be made in a Foreign Currency if that Holder has elected or elects payment in such Foreign Currency as provided for by paragraph (a) above.

(g)    If payment with respect to Debt Securities of a series denominated in ECU or any other composite currency is to be made in Dollars pursuant to the provisions of Section 311(f) then the amount to be paid in Dollars on a payment date by the applicable Issuer to the Trustee and by the Trustee or any Paying Agent to Holders shall be determined by the Trustee as of the Regular or Special Record Date with respect to such Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be, and shall be equal to the sum of the amounts obtained by converting each Component of such composite currency into Dollars at the Exchange Rate for such Component on such Record Date or fifteenth day, as the case may be, multiplied by the number of ECU or units of such other composite currency, as the case may be, that would have been so paid had ECU or such other composite currency, as the case may be, not ceased to be so used. If payment is to be made in Foreign Currency to the Holders of Debt Securities of such series pursuant to Section 311(f), then the amount to be paid in such Foreign Currency on a payment date by the applicable Issuer to the Trustee and by the Trustee or any Paying Agent to Holders shall be determined by the Trustee as of the Regular or Special Record Date with respect to such Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the Maturity of an installment of

- 30 -

CONFIDENTIAL                                                                                        IT00009116

principal, as the case may be, and shall be determined by (1) converting each Component of such composite currency into Dollars at the Exchange Rate for such Component on such Record Date or fifteenth day, as the case may be, and (2) converting the sum in Dollars so obtained into such Foreign Currency at the Exchange Rate for such Foreign Currency on such Record Date or fifteenth day, as the case may be.

(h)   All decisions and determinations of the Trustee regarding conversion of Foreign Currency into Dollars pursuant to Sections 311(d) or 301 or the conversion of ECU or any other composite currency into Dollars or Foreign Currency pursuant to Sections 311(d) and (f) above or as specified pursuant to Section 301 or the Exchange Rate shall, in the absence of manifest error, be conclusive for all purposes and irrevocably binding upon the applicable Issuer and all Holders of the Debt Securities. If a Foreign Currency, ECU or other composite currency in which payment of Debt Securities of a series may be made ceases to be used both by the government of the country which issued such currency or within the European Monetary System and for the settlement of transactions by banks, such Issuer, after learning thereof, will give notice thereof to the Trustee immediately (and the Trustee promptly thereafter will give notice to the Holders in the manner provided in Section 106) specifying as the case may be the last date on which the Foreign Currency was used for the payment of principal of (and premium, if any) or interest on such Debt Securities, or the Conversion Date with respect to such composite currency and the Components of such composite currency on such Conversion Date. If any Component subsequently changes, such Issuer, after learning thereof, will give notice to the Trustee similarly. The Trustee shall be fully justified and protected in relying and acting upon the information so received by such Issuer and shall not otherwise have any duty or obligation to determine such information independently.

SECTION 312.   *Judgments.*

Any payment in respect of principal of (and premium, if any) and interest otherwise due on Debt Securities made in Canadian currency by Northern Telecom to any Holder of Debt Securities (the "Payee") pursuant to a judgment or order of a court or tribunal in Canada shall constitute a discharge of Northern Telecom only to the extent of the amount of Dollars or Foreign Currency payable on such Debt Securities (the "Purchased Amount") that the Payee, on the date of such payment in Canadian currency, would be able to purchase with the amount so paid based on the noon buying rate for Dollars or the Foreign Currency for wire transfers quoted on the date of payment or, if such date if not a business day in Toronto, Canada, on the next business day in Toronto, Canada. If the amount otherwise due to the Payee (the "Amount Due") is greater or less than the Purchased Amount, Northern Telecom shall indemnify and hold harmless the Payee to the extent that the Amount Due exceeds the Purchased Amount and Northern Telecom may retain the amount, if any, by which the Amount Due is less than the Purchased Amount. This indemnity shall constitute a separate and independent obligation from the other obligations contained in this Indenture and shall give rise to a separate and independent cause of action and shall continue in full force and effect notwithstanding any judgment or order for a liquidated sum in respect of amounts due under the Debt Securities or any judgment or order.

- 31 -

CONFIDENTIAL                                                            IT00009117