# Exhibit A

## quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL: (212) 849-7000 FAX: (212) 849-7100

February 3, 2017

**VIA ELECTRONIC MAIL**

Daniel Lowenthal, Esq.
James V. Masella III, Esq.
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036

Re:    **Nortel Networks, Inc., et al., Case No. 09-10138 (KG) (Bankr. D. Del.)**

Dear Mr. Lowenthal and Mr. Masella:

    As you know, we are counsel to Solus Alternative Asset Management LP, on behalf of certain funds and managed accounts ("Solus"), and PointState Capital LP ("PointState" and, together with Solus, the "NNCC Noteholders"), in their capacities as holders of approximately 90% of the fixed rate senior notes due June 15, 2026 (the "7.875% Notes") issued by NNCC and NNL and guaranteed by NNL pursuant to an Indenture dated February 15, 1996 (the "Indenture").[1]  Pursuant to paragraph 1 of the Court's Order dated January 26, 2017 [ECF No. 17805], the NNCC Noteholders hereby "identify the Indenture Trustee's[2] time entries to which they object."  The link in the attached email contains annotated invoices for (1) Patterson Belknap Webb & Tyler LLP, (2) Dewey & LeBoeuf LLP, (3) Border Ladner Gervais LP, and (4) Law Debenture.  The NNCC Noteholders have no objection to the fees and expenses incurred by Morris James LLP.

    The annotations are color coordinated as follows, although in various instances entries have more than one objection but only a single highlighted color appears:

    ▮ Objection to and request for write off of time incurred in connection with activities (a) undertaken by the Indenture Trustee and its professionals in connection with the Indenture Trustee's service as a member of the Creditors' Committee, which time does not appear directly related to the 7.875% Notes or matters peculiar to their holders' interests,[3] and/or (b) where staffing or the time spent were excessive.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the First Amended Joint Chapter 11 Plan Of Nortel Networks Inc. And Certain Of Its Affiliated Debtors [ECF No. 17763-2] (as amended, modified, or supplemented from time to time, the "Plan").

[2] As used in this letter, "Indenture Trustee" means the NNCC Bonds Indenture Trustee and any predecessor or successor thereto, including Law Debenture Trust Company of New York, the Delaware Trust Company.

[3] See, e.g., In re Worldwide Direct, Inc., 334 B.R. 130, 128 (Bankr. D. Del. 2005) (observing it is appropriate that "the Noteholders pay for the [services] if they provided benefit to the Noteholders *only*") (emphasis added); at 131-32 (Bankr. D. Del. 2005) ("While it was prudent of WTC to hire its own attorneys, it had an obligation to assure that the firm only did what was necessary to protect the Noteholders' interests;" accepting argument that

▇ Objection to and request for write off of time spent in connection with activities related to "allocation issues" that either (a) duplicated the efforts of the professionals retained by the Debtors, the Creditors' Committee, or the Bondholder Group, (b) did not advance the interest of NNCC or holders of 7.875% Notes, and/or (c) where staffing or the time spent were excessive.

▇ Objection to and request for write off of time spent in connection with the preparation of invoices and billing.

▇ Objection to and request for write off of duplicative time entries.

▇ Objection to and request for write off of time spent with respect to memoranda or other attorney-work product prepared by Dewey & LeBoeuf LLP that were not transferred to Patterson Belknap Webb & Tyler LLP or the Noteholders.  Moreover, the NNCC Noteholders submit it is custom and practice to provide a discount when a new firm is brought in to replace another firm.  No such discount was applied.  To the contrary, the average hourly rates charged and staffing increased, and no time was written off relating to the transition.

The NNCC Noteholders' identification of time entries is being sent without a waiver of any and all rights, which are reserved expressly.  Among other things, the NNCC Noteholders reserve the right to identify additional time entries and raise additional objections based on information gathered during discovery.

Very truly yours,

James C. Tecce

cc:   Hon. Joseph J. Farnan, Jr.  (Ret.)
      Stephen Miller, Esq.

---

indenture trustee "did not exercise the care required under the prudent person standard because it allowed duplication resulting in a reduced recovery for the Noteholders"); at 132 (noting with respect to asset sale and plan treatment that "[t]he Noteholders were in the same class and had the same interests as all other unsecured creditors …. The time records reveal an excessive amount of work on matters that were unnecessary or duplicative …. With the exception of the senior debt issue, the Noteholders' interests could be adequately represented by Committee counsel"); at 133 (trustee will be compensated "for services necessary to protect the interests of the Noteholders separate from their interests as general unsecured creditors"); at 132-134 (disallowing substantial portion of counsel fees incurred by indenture trustee that served as committee co-chair for failure to satisfy indenture's reasonableness standard:  "[Counsel] attended almost every Committee meeting, performed such business-related tasks as interviewing prospective crisis managers, interviewing counsel in litigation against third parties and claims against the estate, and serving (in lieu of his client or any other Committee member) as a member of the Plan working group.  This he did regardless of whether the meeting or call impacted on the senior debt issue or matters peculiar to the Noteholders' interests.").