# Exhibit D-2

276
APPENDIX C

Nortel CCAA Applicants
Advisor and Allocation Dispute Support Service Costs
All Figures in USD

| Restructuring Costs - Advisory Fees (All figures in USD) | Jan 19, 2014 - Mar 1, 2014 Weekly Forecast | Jan 19, 2014 - Mar 1, 2014 Total Forecast | Jan 19, 2014 - Mar 1, 2014 Total Actual | Mar 2, 2014 - Oct 4, 2014 Weekly Forecast | Mar 2, 2014 - Oct 4, 2014 Total Forecast |
|---|---|---|---|---|---|
| Canadian Debtors' Advisors | | | | | |
| Davies Ward Phillips & Vineberg LLP (Environmental) | | | | | |
| Gowling Lafleur Henderson LLP | | | | | |
| Mercer Human Resources Co | | | | | |
| Norton Rose Fulbright Canada LLP | | | | | |
| Buchanan Ingersoll & Rooney | | | | | |
| Fieldfisher Buschhaus Deringer | | | | | |
| Other Foreign Legal Advisors | | | | | |
| Other Foreign Legal Advisors | 450,000 | 2,700,000 | 1,396,837 | 450,000 | 13,550,000 |
| Monitor and Advisors | | | | | |
| Alex & Ovary LLP | | | | | |
| Ernst & Young Inc. | | | | | |
| Goodmans LLP | | | | | |
| Goodmans LLP | 1,340,000 | 8,040,000 | 7,251,723 | 1,340,000 | 41,540,000 |
| Canadian Estate Allocation Dispute Support Services² | 510,000 | 3,060,000 | 2,162,531 | 510,000 | 14,535,000 |
| Canadian Debtors / Monitor Subtotal | 2,300,000 | 13,800,000 | 10,801,091 | 2,300,000 | 70,025,000 |
| Employee Advisors | | | | | |
| 8003441 Canada Inc. (Financial Advisor) | | | | | |
| Koskie Minsky LLP | | | | | |
| DLA Piper LLP | | | | | |
| Wardle Daley Bernstein LLP | | | | | |
| Nelligan O'Brien Payne | | | | | |
| Shepell FGI | | | | | |
| Shibley Righton LLP | | | | | |
| The Segal Company | | | | | |
| Allocation Dispute Support Services¹ | 320,000 | 1,920,000 | 1,445,010 | 320,000 | 9,855,000 |
| Directors and Officers Advisors | | | | | |
| Osler Hoskin & Harcourt LLP | 60,000 | 360,000 | 246,670 | 60,000 | 1,860,000 |
| Ad Hoc Bondholder Group Advisors | | | | | |
| Bennett Jones LLP | | | | | |
| FTI Capital Advisors LLC | | | | | |
| Milbank Tweed Hadley & McCloy LLP | | | | | |
| Milbank Tweed Hadley & McCloy LLP | 420,000 | 2,520,000 | 1,453,964 | 420,000 | 17,020,000 |
| Total | 3,100,000 | 18,600,000 | 13,976,534 | 3,100,000 | 94,890,000 |

1. Certain vendors that were presented as part of Allocation Dispute Support Services in prior Monitor's Reports are now presented in the Advisor Fees. This new presentation better reflects the nature of services these vendors provide to the Estate.

# BLUE SHEET

Court File No. 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### ONE HUNDRED AND EIGHTH REPORT OF THE MONITOR DATED SEPTEMBER 24, 2014

## INTRODUCTION

1.    On January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC" and collectively with all its subsidiaries "Nortel" or the "Company"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation ("NNTC"), Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "Applicants") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("CCAA"). Pursuant to the Order of this Court dated January 14, 2009, as amended and restated (the "Initial Order"), Ernst & Young Inc. was appointed as the Monitor of the Applicants (the "Monitor") in the CCAA proceedings. The stay of proceedings was extended to October 3, 2014 by this Court in its Order dated March 21, 2014.

2.    Nortel Networks Inc. ("NNI") and certain of its U.S. subsidiaries and affiliates concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") on January 14, 2009 (the "Chapter 11 Proceedings"). As required by U.S. law, an official committee of unsecured creditors (the "Committee") was established in January, 2009.

**Nortel Networks - March 2, 2014 to September 13, 2014**
**CCAA Applicants**
**Forecast Cash Flow - Variances**
USD (Millions)

| | Forecast | Actuals | Variances |
|---|---|---|---|
| Start of period | 02-Mar-14 | 02-Mar-14 | 02-Mar-14 |
| End of period | 13-Sep-14 | 13-Sep-14 | 13-Sep-14 |

## 1. Receipts & Disbursements

| | Forecast | Actuals | Variances |
|---|---|---|---|
| **Receipts** | | | |
| Other Receipts | - | 0.1 | 0.1 |
| Net Intercompany Receipts | - | 13.2 | 13.2 |
| **Total Receipts** | - | 13.3 | 13.3 |
| **Disbursements** | | | |
| Payroll (Gross) | 1.4 | 1.0 | 0.4 |
| Benefits | 0.1 | 0.1 | - |
| Non-Inventory Purchases | 2.8 | 1.9 | 0.9 |
| Net Intercompany Disbursements | - | - | - |
| Restructuring Costs - Advisor Fees | 70.0 | 67.5 | 2.5 |
| Restructuring Costs - Allocation Dispute Support Services | 16.2 | 11.4 | 4.8 |
| **Total Disbursements** | 90.5 | 81.9 | 8.6 |
| **Net Cash Flow** | (90.5) | (68.6) | 21.9 |
| FX Impact | - | 3.0 | 3.0 |
| **Opening Available Cash Balance** | 209.2 | 209.2 | - |
| **Closing Available Cash Balance** | 118.7 | 143.6 | 24.9 |
| Unavailable Cash | 237.6 | 237.8 | 0.2 |
| **Total Cash** | 356.3 | 381.4 | 25.1 |
| Restricted Cash | 20.4 | 20.7 | 0.3 |
| **Total Cash + Restricted Cash** | 376.7 | 402.1 | 25.4 |

37

**Nortel Networks - September 14, 2014**
**CCAA Applicants**
**Forecast Cash Flow**
USD (Millions)

| | Forecast Sep-14 | Forecast | Forecast | Forecast | Forecast Oct-14 | Forecast | Forecast | Forecast | Forecast Nov-14 | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Start of period | 14-Sep-14 | 21-Sep-14 | 28-Sep-14 | 05-Oct-14 | 12-Oct-14 | 19-Oct-14 | 26-Oct-14 | 02-Nov-14 | 09-Nov-14 | 16-Nov-14 | 23-Nov-14 |
| End of period | 20-Sep-14 | 27-Sep-14 | 04-Oct-14 | 11-Oct-14 | 18-Oct-14 | 25-Oct-14 | 01-Nov-14 | 08-Nov-14 | 15-Nov-14 | 22-Nov-14 | 29-Nov-14 |
| **Receipts** | | | | | | | | | | | |
| Other Receipts | - | - | - | - | - | - | - | - | - | - | - |
| Net Intercompany Receipts | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | - | - | - | - | - | - | - | - |
| **Disbursements** | | | | | | | | | | | |
| Payroll (Gross) | 0.1 | - | 0.1 | - | - | - | - | - | - | - | - |
| Benefits | - | - | - | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 |
| Inventory Purchases | - | - | - | - | 0.1 | - | - | - | - | - | - |
| Non-Inventory Purchases | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.3 | 0.1 | 0.1 | 0.1 | 0.1 | 0.3 |
| Net Intercompany Disbursements | - | - | - | - | - | - | - | - | - | - | - |
| Restructuring Costs - Advisor Fees | 2.5 | 2.5 | 1.6 | 1.6 | 1.6 | 1.6 | 1.6 | 1.0 | 1.0 | 1.0 | 1.0 |
| Restructuring Costs - Allocation Dispute Support Services | 0.3 | 0.3 | - | - | - | 0.1 | - | - | - | - | 0.1 |
| **Total Disbursements** | 3.0 | 2.9 | 1.8 | 1.7 | 1.9 | 2.0 | 1.8 | 1.1 | 1.2 | 1.1 | 1.5 |
| **Net Cash Flow** | (3.0) | (2.9) | (1.8) | (1.7) | (1.9) | (2.0) | (1.8) | (1.1) | (1.2) | (1.1) | (1.5) |
| FX Impact | - | - | - | - | - | - | - | - | - | - | - |
| Opening Available Cash Balance | 143.6 | 140.6 | 137.7 | 135.9 | 134.2 | 132.3 | 130.3 | 128.5 | 127.4 | 126.2 | 125.1 |
| Closing Available Cash Balance | 140.6 | 137.7 | 135.9 | 134.2 | 132.3 | 130.3 | 128.5 | 127.4 | 126.2 | 125.1 | 123.6 |
| LG & Strandherd Proceeds | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 |
| **Total Cash** | 378.4 | 375.5 | 373.7 | 372.0 | 370.1 | 368.1 | 366.3 | 365.2 | 364.0 | 362.9 | 361.4 |
| Restricted Cash | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 |
| **Total Cash + Restricted Cash** | 399.1 | 396.2 | 394.4 | 392.7 | 390.8 | 388.8 | 387.0 | 385.9 | 384.7 | 383.6 | 382.1 |

279
APPENDIX 8

**Nortel Networks - September 14, 2014**
**CCAA Applicants**
**Forecast Cash Flow**
USD (Millions)

| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Dec-14 | | | | Jan-15 | | | | |
| Start of period | 30-Nov-14 | 07-Dec-14 | 14-Dec-14 | 21-Dec-14 | 28-Dec-14 | 04-Jan-15 | 11-Jan-15 | 18-Jan-15 | 25-Jan-15 | 01-Feb-15 | 08-Feb-15 |
| End of period | 06-Dec-14 | 13-Dec-14 | 20-Dec-14 | 27-Dec-14 | 03-Jan-15 | 10-Jan-15 | 17-Jan-15 | 24-Jan-15 | 31-Jan-15 | 07-Feb-15 | 14-Feb-15 |
| **Receipts** | | | | | | | | | | | |
| Other Receipts | - | - | - | - | - | - | - | - | - | - | - |
| Net Intercompany Receipts | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | - | - | - | - | - | - | - | - |
| **Disbursements** | | | | | | | | | | | |
| Payroll (Gross) | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 1.3 | - |
| Benefits | - | - | - | - | - | - | - | - | - | 0.1 | - |
| Inventory Purchases | - | - | - | - | - | - | - | - | - | - | - |
| Non-Inventory Purchases | 0.1 | 0.1 | 0.3 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.3 | 0.1 | 0.1 |
| Net Intercompany Disbursements | - | - | - | - | - | - | - | - | - | - | - |
| Restructuring Costs - Advisor Fees | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 |
| Restructuring Costs - Allocation Dispute Support Services | - | - | 0.1 | - | - | - | - | 0.1 | 0.1 | - | - |
| **Total Disbursements** | 1.1 | 1.2 | 1.4 | 1.2 | 1.1 | 1.2 | 1.1 | 1.2 | 1.4 | 2.5 | 1.1 |
| **Net Cash Flow** | (1.1) | (1.2) | (1.4) | (1.2) | (1.1) | (1.2) | (1.1) | (1.2) | (1.4) | (2.5) | (1.1) |
| FX Impact | - | - | - | - | - | - | - | - | - | - | - |
| **Opening Available Cash Balance** | 123.6 | 122.5 | 121.3 | 119.9 | 118.7 | 117.6 | 116.4 | 115.3 | 114.1 | 112.7 | 110.2 |
| **Closing Available Cash Balance** | 122.5 | 121.3 | 119.9 | 118.7 | 117.6 | 116.4 | 115.3 | 114.1 | 112.7 | 110.2 | 109.1 |
| LG & Strandherd Proceeds | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 |
| **Total Cash** | 360.3 | 359.1 | 357.7 | 356.5 | 355.4 | 354.2 | 353.1 | 351.9 | 350.5 | 348.0 | 346.9 |
| Restricted Cash | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 |
| **Total Cash + Restricted Cash** | 381.0 | 379.8 | 378.4 | 377.2 | 376.1 | 374.9 | 373.8 | 372.6 | 371.2 | 368.7 | 367.6 |

280
APPENDIX B

**Nortel Networks - September 14, 2014**
**CCAA Applicants**
Forecast Cash Flow
USD (Millions)

| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|
| | Feb-15 | 22-Feb-15 | 01-Mar-15 | Mar-15 | 15-Mar-15 | 22-Mar-15 | 29-Mar-15 | 14-Sep-14 |
| Start of period | 15-Feb-15 | 22-Feb-15 | 01-Mar-15 | 08-Mar-15 | 15-Mar-15 | 22-Mar-15 | 29-Mar-15 | 14-Sep-14 |
| End of period | 21-Feb-15 | 28-Feb-15 | 07-Mar-15 | 14-Mar-15 | 21-Mar-15 | 28-Mar-15 | 04-Apr-15 | 04-Apr-15 |
| **Receipts** | | | | | | | | |
| Other Receipts | - | - | - | - | - | - | - | - |
| Net Intercompany Receipts | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | - | - | - | - | - |
| **Disbursements** | | | | | | | | |
| Payroll (Gross) | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | 2.7 |
| Benefits | - | - | - | - | - | - | - | 0.2 |
| Inventory Purchases | - | - | - | - | - | - | - | - |
| Non-Inventory Purchases | 0.1 | 0.3 | 0.1 | 0.1 | 0.1 | 0.3 | 8.9 | 12.9 |
| Net Intercompany Disbursements | - | - | - | - | - | - | - | - |
| Restructuring Costs - Advisor Fees | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 35.0 |
| Restructuring Costs - Allocation Dispute Support Services | - | 0.1 | - | - | - | 0.1 | - | 1.2 |
| **Total Disbursements** | 1.2 | 1.4 | 1.2 | 1.1 | 1.2 | 1.4 | 10.0 | 52.0 |
| **Net Cash Flow** | (1.2) | (1.4) | (1.2) | (1.1) | (1.2) | (1.4) | (10.0) | (52.0) |
| FX Impact | - | - | - | - | - | - | - | - |
| Opening Available Cash Balance | 109.1 | 107.9 | 106.5 | 105.3 | 104.2 | 103.0 | 101.6 | 143.6 |
| Closing Available Cash Balance | 107.9 | 106.5 | 105.3 | 104.2 | 103.0 | 101.6 | 91.6 | 91.6 |
| LG & Standard Proceeds | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 | 237.8 |
| **Total Cash** | 345.7 | 344.3 | 343.1 | 342.0 | 340.8 | 339.4 | 329.4 | 329.4 |
| Restricted Cash | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 |
| **Total Cash + Restricted Cash** | 366.4 | 365.0 | 363.8 | 362.7 | 361.5 | 360.1 | 350.1 | 350.1 |

40

**Nortel CCAA Applicants**
Advisor and Allocation Dispute Support Service Costs
All Figures in USD

| Restructuring Costs – Advisory Fees (All figures in USD) | Mar 2, 2014 – Sept 13, 2014 Weekly Forecast | Mar 2, 2014 – Sept 13, 2014 Total Forecast | Mar 2, 2014 – Sept 13, 2014 Total Actual | Sept 14, 2014 – Apr 4, 2015 Avg Weekly Forecast [2] | Sept 14, 2014 – Apr 4, 2015 Total Forecast |
|---|---|---|---|---|---|
| **Canadian Debtors' Advisors** | | | | | |
| Davies Ward Phillips & Vineberg LLP (Environmental) | | | | | |
| Gowling Lafleur Henderson LLP | | | | | |
| Mercer Human Resources Co | | | | | |
| Norton Rose Fulbright Canada LLP | | | | | |
| Buchanan Ingersol & Rooney | | | | | |
| Freshfields Bruckhaus Deringer | | | | | |
| Other Foreign Legal Advisors | 450,000 | 12,600,000 | 9,480,484 | 106,249 | 3,681,210 |
| | | | | | |
| **Monitor and Advisors** | | | | | |
| Allen & Overy LLP | | | | | |
| Ernst & Young Inc. | | | | | |
| Goodmans LLP | 1,340,000 | 37,520,000 | 35,309,588 | 661,724 | 19,190,000 |
| | | | | | |
| Canadian Estate Allocation Dispute Support Services [1] | 510,000 | 13,770,000 | 8,138,529 | 38,707 | 1,122,500 |
| | | | | | |
| Canadian Debtors / Monitor Subtotal | 2,300,000 | 63,890,000 | 52,929,000 | 806,680 | 23,393,710 |
| | | | | | |
| **Employee Advisors** | | | | | |
| 603844I Canada Inc. (Financial Advisor) | | | | | |
| Koskie Minsky LLP | | | | | |
| DLA Piper LLP | | | | | |
| Nelligan O'Brien Payne | | | | | |
| Shepell-fgi | | | | | |
| Shibley Righton LLP | | | | | |
| The Segal Company | | | | | |
| Allocation Dispute Support Services [1] | 320,000 | 8,570,000 | 6,916,902 | 123,017 | 3,567,500 |
| | | | | | |
| **Directors and Officers Advisors** | | | | | |
| Osler Hoskin & Harcourt LLP | 60,000 | 1,680,000 | 2,789,896 | 10,517 | 385,000 |
| | | | | | |
| **Ad Hoc Bondholder Group Advisors** | | | | | |
| Bennett Jones LLP | | | | | |
| FTI Capital Advisors LLC | | | | | |
| Milbank Tweed Hadley & McCloy LLP | 420,000 | 11,760,000 | 16,251,674 | 308,252 | 8,859,310 |
| | | | | | |
| **Total** | 3,100,000 | 86,200,000 | 78,887,472 | 1,248,466 | 36,205,520 |

1. Certain vendors that were presented as part of Allocation Dispute Support Services in prior Month's Reports are now presented in the Advisor Fees. This new presentation better reflects the nature of services these vendors provide to the Estate.
2. Represents average weekly run-rate for the Forecast Period.

# BLUE SHEET

Court File No. 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### ONE HUNDRED AND FOURTEENTH REPORT OF THE MONITOR DATED MARCH 3, 2015

## INTRODUCTION

1.  On January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC" and collectively with all its subsidiaries "Nortel" or the "Company"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation ("NNTC"), Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "Applicants") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("CCAA"). Pursuant to the Order of this Court dated January 14, 2009, as amended and restated (the "Initial Order"), Ernst & Young Inc. was appointed as the Monitor of the Applicants (the "Monitor") in the CCAA proceedings. The stay of proceedings was extended to April 3, 2015 by this Court in its Order dated October 1, 2014.

2.  Nortel Networks Inc. ("NNI") and certain of its U.S. subsidiaries and affiliates concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") on January 14, 2009 (the "Chapter 11 Proceedings"). As required by U.S. law, an official committee of unsecured creditors (the "Committee") was established in January, 2009.

**Nortel Networks - September 14, 2014 to February 21, 2015**
**CCAA Applicants**
**Forecast Cash Flow - Variances**
USD (Millions)

| | Forecast | Actuals | Variances |
|---|---|---|---|
| Start of period | 14-Sep-14 | 14-Sep-14 | 14-Sep-14 |
| End of period | 21-Feb-15 | 21-Feb-15 | 21-Feb-15 |

**1 . Receipts & Disbursements**

| | Forecast | Actuals | Variances |
|---|---|---|---|
| **Receipts** | | | |
| Other Receipts | - | 29.9 | 29.9 |
| Net Intercompany Receipts | - | 8.9 | 8.9 |
| **Total Receipts** | - | 38.8 | 38.8 |
| **Disbursements** | | | |
| Payroll (Gross) | 2.4 | 2.0 | 0.4 |
| Benefits | 0.2 | 0.1 | 0.1 |
| Non-Inventory Purchases | 3.1 | 1.3 | 1.8 |
| Net Intercompany Disbursements | - | - | - |
| Restructuring Costs - Advisor Fees | 29.0 | 22.5 | 6.5 |
| Restructuring Costs - Allocation Dispute Support Services | 1.0 | 0.8 | 0.2 |
| **Total Disbursements** | 35.7 | 26.7 | 9.0 |
| **Net Cash Flow** | (35.7) | 12.1 | 47.8 |
| FX Impact | - | (10.1) | (10.1) |
| **Opening Available Cash Balance** | 143.6 | 143.6 | - |
| **Closing Available Cash Balance** | 107.9 | 145.6 | 37.7 |
| Unavailable Cash | 237.8 | 236.6 | (1.2) |
| **Total Cash** | 345.7 | 382.2 | 36.5 |
| Restricted Cash | 20.7 | 9.5 | (11.2) |
| **Total Cash + Restricted Cash** | 366.4 | 391.7 | 25.3 |

**Nortel Networks - February 22, 2015**
**CCAA Applicants**
**Forecast Cash Flow**
(US$ millions)

| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Start period | 22-Feb-15 | 01-Mar-15 | 08-Mar-15 | 15-Mar-15 | 22-Mar-15 | 29-Mar-15 | 05-Apr-15 | 12-Apr-15 | 19-Apr-15 | 26-Apr-15 | 03-May-15 |
| End period | 28-Feb-15 | 07-Mar-15 | 14-Mar-15 | 21-Mar-15 | 28-Mar-15 | 04-Apr-15 | 11-Apr-15 | 18-Apr-15 | 25-Apr-15 | 02-May-15 | 09-May-15 |
| **Receipts** | | | | | | | | | | | |
| Other Receipts | - | - | - | - | - | - | - | - | - | - | - |
| Net Intercompany Receipts | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | - | - | - | - | - | - | - | - |
| **Disbursements** | | | | | | | | | | | |
| Payroll (Gross) | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - |
| Benefits | - | - | - | - | - | - | - | - | - | - | - |
| Inventory Purchases | 0.2 | 0.1 | 0.1 | 0.1 | 0.2 | 0.1 | 0.1 | 0.1 | 0.2 | 0.1 | 0.1 |
| Non-Inventory Purchases | - | - | - | - | - | - | - | - | - | - | - |
| Net Intercompany Disbursements | - | - | - | - | - | - | - | - | - | - | - |
| Restructuring Costs - Advisor Fees | 1.8 | 1.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 |
| Restructuring Costs - Allocation Dispute Support Services | - | - | - | - | 0.1 | 0.1 | - | - | - | - | 0.1 |
| **Total Disbursements** | 2.0 | 2.0 | 0.9 | 1.0 | 1.1 | 1.0 | 0.9 | 1.0 | 1.0 | 1.0 | 1.0 |
| **Net Cash Flow** | (2.0) | (2.0) | (0.9) | (1.0) | (1.1) | (1.0) | (0.9) | (1.0) | (1.0) | (1.0) | (1.0) |
| FX Impact | - | - | - | - | - | - | - | - | - | - | - |
| Opening Available Cash Balance | 145.6 | 143.6 | 141.6 | 140.7 | 139.7 | 138.6 | 137.6 | 136.7 | 135.7 | 134.7 | 133.7 |
| Closing Available Cash Balance | 143.6 | 141.6 | 140.7 | 139.7 | 138.6 | 137.6 | 136.7 | 135.7 | 134.7 | 133.7 | 132.7 |
| LG & Standstend Proceeds | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 |
| **Total Cash** | 380.2 | 378.2 | 377.3 | 376.3 | 375.2 | 374.2 | 373.3 | 372.3 | 371.3 | 370.3 | 369.3 |
| Restricted Cash | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 |
| **Total Cash + Restricted Cash** | 389.7 | 387.7 | 386.8 | 385.8 | 384.7 | 383.7 | 382.8 | 381.8 | 380.8 | 379.8 | 378.8 |

42

285

43    286

**Nortel Networks - February 22, 2015**
**CCAA Applicants**
**Forecast Cash Flow**
USD millions

| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | May-15 | | | | | Jun-15 | | | | Jul-15 | |
| Start period | 10-May-15 | 17-May-15 | 24-May-15 | 31-May-15 | 07-Jun-15 | 14-Jun-15 | 21-Jun-15 | 28-Jun-15 | 05-Jul-15 | 12-Jul-15 | 19-Jul-15 |
| End period | 16-May-15 | 23-May-15 | 30-May-15 | 06-Jun-15 | 13-Jun-15 | 20-Jun-15 | 27-Jun-15 | 04-Jul-15 | 11-Jul-15 | 18-Jul-15 | 25-Jul-15 |
| **Receipts** | | | | | | | | | | | |
| Other Receipts | - | - | - | - | - | - | - | - | - | - | - |
| Net Intercompany Receipts | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | - | - | - | - | - | - | - | - |
| **Disbursements** | | | | | | | | | | | |
| Payroll (Gross) | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 |
| Benefits | 0.1 | - | - | - | - | - | - | - | - | - | - |
| Inventory Purchases | | | | | | | | | | | |
| Non-Inventory Purchases | 0.1 | 0.1 | 0.2 | 0.1 | 0.1 | 0.1 | 0.2 | 0.1 | 0.1 | 0.1 | 0.2 |
| Net Intercompany Disbursements | | | | | | | | | | | |
| Restructuring Costs - Advisor Fees | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 |
| Restructuring Costs - Allocation Dispute Support Services | - | - | - | - | 0.1 | 0.1 | 0.1 | - | - | - | 0.1 |
| **Total Disbursements** | 1.1 | 0.9 | 1.1 | 0.9 | 1.0 | 1.0 | 1.1 | 0.9 | 1.0 | 0.9 | 1.2 |
| **Net Cash Flow** | (1.1) | (0.9) | (1.1) | (0.9) | (1.0) | (1.0) | (1.1) | (0.9) | (1.0) | (0.9) | (1.2) |
| FX Impact | - | - | - | - | - | - | - | - | - | - | - |
| **Opening Available Cash Balance** | 132.7 | 131.6 | 130.7 | 129.6 | 128.7 | 127.7 | 126.7 | 125.6 | 124.7 | 123.7 | 122.8 |
| **Closing Available Cash Balance** | 131.6 | 130.7 | 129.6 | 128.7 | 127.7 | 126.7 | 125.6 | 124.7 | 123.7 | 122.8 | 121.6 |
| LG & Standhand Proceeds | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 |
| **Total Cash** | 368.2 | 367.3 | 366.2 | 365.3 | 364.3 | 363.3 | 362.2 | 361.3 | 360.3 | 359.4 | 358.2 |
| Restricted Cash | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 |
| **Total Cash + Restricted Cash** | 377.7 | 376.8 | 375.7 | 374.8 | 373.8 | 372.8 | 371.7 | 370.8 | 369.8 | 368.9 | 367.7 |

**Nortel Networks - February 22, 2015**
**CCAA Applicants**
**Forecast Cash Flow**

| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Aug-15 | | | | | Sep-15 | | |
| Start of period | 26-Jul-15 | 02-Aug-15 | 09-Aug-15 | 16-Aug-15 | 23-Aug-15 | 30-Aug-15 | 06-Sep-15 | 13-Sep-15 | 20-Sep-15 | 27-Sep-15 | 22-Feb-15 |
| End of period | 01-Aug-15 | 08-Aug-15 | 15-Aug-15 | 22-Aug-15 | 29-Aug-15 | 05-Sep-15 | 12-Sep-15 | 19-Sep-15 | 26-Sep-15 | 03-Oct-15 | 03-Oct-15 |
| **Receipts** | | | | | | | | | | | |
| Other Receipts | - | - | - | - | - | - | - | - | - | - | - |
| Net Intercompany Receipts | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | - | - | - | - | - | - | - | - |
| **Disbursements** | | | | | | | | | | | |
| Payroll (Gross) | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | 1.6 |
| Benefits | - | 0.1 | - | - | - | - | - | - | - | - | 0.2 |
| Inventory Purchases | - | - | - | - | - | - | - | - | - | - | - |
| Non-Inventory Purchases | 0.1 | 0.1 | - | 0.1 | 0.2 | 0.1 | 0.1 | 0.1 | 0.2 | 8.5 | 12.4 |
| Net Intercompany Disbursements | - | - | - | - | - | - | - | - | - | - | - |
| Restructuring Costs - Advisor Fees | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 27.6 |
| Restructuring Costs - Allocation Dispute Support Services | - | - | - | - | 0.1 | - | - | - | - | - | 0.5 |
| **Total Disbursements** | 0.9 | 1.1 | 0.9 | 1.0 | 1.1 | 1.0 | 0.9 | 1.0 | 1.0 | 9.4 | 42.3 |
| **Net Cash Flow** | (0.9) | (1.1) | (0.9) | (1.0) | (1.1) | (1.0) | (0.9) | (1.0) | (1.0) | (9.4) | (42.3) |
| FX Impact | - | - | - | - | - | - | - | - | - | - | - |
| **Opening Available Cash Balance** | 121.6 | 120.7 | 119.6 | 118.7 | 117.7 | 116.6 | 115.6 | 114.7 | 113.7 | 112.7 | 145.6 |
| **Closing Available Cash Balance** | 120.7 | 119.6 | 118.7 | 117.7 | 116.6 | 115.6 | 114.7 | 113.7 | 112.7 | 103.3 | 103.3 |
| LG & Strandhend Proceeds | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 | 236.6 |
| **Total Cash** | 357.3 | 356.2 | 355.3 | 354.3 | 353.3 | 352.2 | 351.3 | 350.3 | 349.3 | 339.9 | 339.9 |
| Restricted Cash | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 |
| **Total Cash + Restricted Cash** | 366.8 | 365.7 | 364.8 | 363.8 | 362.7 | 361.7 | 360.8 | 359.8 | 358.8 | 349.4 | 349.4 |

46
APP 288

Nortel CCAA Applicants
Advisor and Allocation Dispute Support Service Costs
All Figures in USD

| Restructuring Costs - Advisory Fees (All figures in USD) | Sept 14, 2014 - Feb 21, 2015 Avg Weekly Forecast[2] | Sept 14, 2014 - Feb 21, 2015 Total Forecast | Sept 14, 2014 - Feb 21, 2015 Total Actual | Feb 22, 2015 - Oct 3, 2015 Avg Weekly Forecast[2] | Feb 22, 2015 - Oct 3, 2015 Total Forecast |
|---|---|---|---|---|---|
| **Canadian Debtors' Advisors** | | | | | |
| Davies Ward Phillips & Vineberg LLP (Environmental) | | | | | |
| Gowling Lafleur Henderson LLP | | | | | |
| Mercer Human Resources Co | | | | | |
| Norton Rose Fulbright Canada LLP | | | | | |
| Buchanan Ingersoll & Rooney | | | | | |
| Freshfields Bruckhaus Deringer | | | | | |
| Other Foreign Legal Advisors | 115,705 | 2,661,210 | 1,859,438 | 96,500 | 1,868,000 |
| **Monitor and Advisors** | | | | | |
| Allen & Overy LLP | | | | | |
| Ernst & Young Inc. | | | | | |
| Goodmans LLP | 683,043 | 15,710,000 | 10,321,510 | 400,000 | 12,000,000 |
| Canadian Estate Allocation Dispute Support Services[3] | 42,283 | 972,500 | 536,704 | 16,000 | 512,000 |
| **Canadian Debtors / Monitor Subtotal** | 841,031 | 19,343,710 | 12,746,672 | 472,500 | 15,120,000 |
| **Employee Advisors** | | | | | |
| 6838441 Canada Inc. (Financial Advisor) | | | | | |
| Koskie Minsky LLP | | | | | |
| DLA Piper LLP | | | | | |
| Warda Daley Bernstein LLP | | | | | |
| Nelligan O'Brien Payne | | | | | |
| Shred FGI | | | | | |
| Shibley Righton LLP | | | | | |
| The Segal Company | | | | | |
| Allocation Dispute Support Services[1] | 127,717 | 2,937,600 | 2,618,341 | 55,938 | 1,790,000 |
| **Directors and Officers Advisors** | | | | | |
| Osler Hoskin & Harcourt LLP | 11,957 | 275,000 | 110,839 | 5,750 | 184,000 |
| **Ad Hoc Bondholder Group Advisors** | | | | | |
| Bennet Jones LLP | | | | | |
| FTI Capital Advisors LLC | | | | | |
| Milbank Tweed Hadley & McCloy LLP | 320,840 | 7,379,310 | 8,452,526 | 344,375 | 11,020,000 |
| **Total** | 1,301,544 | 29,935,520 | 23,330,377 | 878,563 | 28,114,000 |

1. Certain vendors that were presented as part of Allocation Dispute Support Services in prior Monitor's Reports are now presented in the Advisor Fees. This new presentation better reflects the nature of services these vendors provide to the Estate.
2. Represents average weekly run-rate for the Forecast Period.

# BLUE SHEET

Court File No. 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### ONE HUNDRED AND TWENTY FIRST REPORT OF THE MONITOR DATED SEPTEMBER 22, 2015

## INTRODUCTION

1.  On January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC" and collectively with all its subsidiaries "Nortel" or the "Company"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation ("NNTC"), Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "Canadian Debtors") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("CCAA"). Pursuant to the Order of this Court dated January 14, 2009, as amended and restated (the "Initial Order"), Ernst & Young Inc. was appointed as the Monitor of the Canadian Debtors (the "Monitor") in the CCAA proceedings. The stay of proceedings was extended to October 2, 2015 by this Court in its Order dated March 11, 2015.

2.  Nortel Networks Inc. ("NNI") and certain of its U.S. subsidiaries and affiliates concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") on January 14, 2009 (the "Chapter 11 Proceedings"). As required by U.S. law, an official committee of unsecured creditors (the "Committee") was established in January, 2009.

## Nortel Networks - February 22, 2015 to September 12, 2015
## CCAA Applicants
### Forecast Cash Flow - Variances
USD (Millions)

| | Forecast | Actuals | Variances |
|---|---|---|---|
| Start of period | 22-Feb-15 | 22-Feb-15 | 22-Feb-15 |
| End of period | 12-Sep-15 | 12-Sep-15 | 12-Sep-15 |

### 1 . Receipts & Disbursements

| | Forecast | Actuals | Variances |
|---|---|---|---|
| **Receipts** | | | |
| Other Receipts | - | 3.8 | 3.8 |
| Net Intercompany Receipts | - | 4.9 | 4.9 |
| **Total Receipts** | - | 8.7 | 8.7 |
| **Disbursements** | | | |
| Payroll (Gross) | 1.4 | 0.5 | 0.9 |
| Benefits | 0.2 | 0.1 | 0.1 |
| Non-Inventory Purchases | 3.6 | 2.1 | 1.5 |
| Net Intercompany Disbursements | - | - | - |
| Restructuring Costs - Advisor Fees | 25.2 | 17.1 | 8.1 |
| Restructuring Costs - Allocation Dispute Support Services | 0.5 | 0.5 | - |
| **Total Disbursements** | 30.9 | 20.3 | 10.6 |
| **Net Cash Flow** | (30.9) | (11.6) | 19.3 |
| FX Impact | - | (2.2) | (2.2) |
| **Opening Available Cash Balance** | 145.6 | 145.6 | - |
| **Closing Available Cash Balance** | 114.7 | 131.8 | 17.1 |
| Unavailable Cash | 236.6 | 236.3 | (0.3) |
| **Total Cash** | 351.3 | 368.1 | 16.8 |
| Restricted Cash | 9.5 | 9.1 | (0.4) |
| **Total Cash + Restricted Cash** | 360.8 | 377.2 | 16.4 |

**Nortel Networks - September 13, 2015**
**CCAA Applicants**
Forecast Cash Flow
USD (millions)

| | Forecast Sep-15 | Forecast 20-Sep-15 | Forecast 27-Sep-15 | Forecast 04-Oct-15 | Forecast 11-Oct-15 | Forecast 18-Oct-15 | Forecast 25-Oct-15 | Forecast 01-Nov-15 | Forecast 08-Nov-15 | Forecast 15-Nov-15 |
|---|---|---|---|---|---|---|---|---|---|---|
| Start period | 13-Sep-15 | 20-Sep-15 | 27-Sep-15 | 04-Oct-15 | 11-Oct-15 | 18-Oct-15 | 25-Oct-15 | 01-Nov-15 | 08-Nov-15 | 15-Nov-15 |
| End period | 19-Sep-15 | 26-Sep-15 | 03-Oct-15 | 10-Oct-15 | 17-Oct-15 | 24-Oct-15 | 31-Oct-15 | 07-Nov-15 | 14-Nov-15 | 21-Nov-15 |
| **Receipts** | | | | | | | | | | |
| Other Receipts | - | - | - | - | - | - | - | - | - | - |
| Net Intercompany Receipts | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | - | - | - | - | - | - | - |
| **Disbursements** | | | | | | | | | | |
| Payroll (Gross) | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - |
| Benefits | - | - | - | - | 0.1 | - | - | - | - | - |
| Inventory Purchases | - | - | - | - | - | - | - | - | - | - |
| Non-Inventory Purchases | 0.1 | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | 0.2 | 0.1 | 0.1 | 0.1 |
| Net Intercompany Disbursements | 0.6 | 0.6 | 0.6 | 0.7 | 0.7 | 0.7 | 0.7 | 0.7 | 0.7 | 0.7 |
| Restructuring Costs - Advisor Fees | - | - | - | - | - | - | 0.1 | - | - | - |
| Restructuring Costs - Allocation Dispute Support Services | | | | | | | | | | |
| **Total Disbursements** | 0.8 | 0.8 | 0.8 | 0.8 | 1.0 | 0.8 | 1.1 | 0.8 | 0.9 | 0.8 |
| **Net Cash Flow** | (0.3) | (0.8) | (0.8) | (0.8) | (1.0) | (0.8) | (1.1) | (0.8) | (0.9) | (0.8) |
| FX Impact | | | | | | | | | | |
| Opening Available Cash Balance | 131.8 | 131.0 | 130.2 | 129.4 | 128.6 | 127.6 | 126.8 | 125.7 | 124.9 | 124.0 |
| Closing Available Cash Balance | 131.0 | 130.2 | 129.4 | 128.6 | 127.6 | 126.8 | 125.7 | 124.9 | 124.0 | 123.2 |
| LG & Strandherd Proceeds | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 |
| **Total Cash** | 367.3 | 366.5 | 365.7 | 364.9 | 363.9 | 363.1 | 362.0 | 361.2 | 360.3 | 359.5 |
| Restricted Cash | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 |
| **Total Cash + Restricted Cash** | 376.4 | 375.5 | 374.8 | 374.0 | 373.0 | 372.2 | 371.1 | 370.3 | 369.4 | 368.6 |

**Nortel Networks - September 13, 2015**
CCAA Applicants
Forecast Cash Flow
USD millions

| | Forecast 23-Nov-15 28-Nov-15 | Forecast 29-Nov-15 05-Dec-15 | Forecast 06-Dec-15 12-Dec-15 | Forecast 13-Dec-15 19-Dec-15 | Forecast 20-Dec-15 26-Dec-15 | Forecast 27-Dec-15 02-Jan-16 | Forecast 03-Jan-16 09-Jan-16 | Forecast 10-Jan-16 16-Jan-16 | Forecast 17-Jan-16 23-Jan-16 | Forecast 24-Jan-16 30-Jan-16 |
|---|---|---|---|---|---|---|---|---|---|---|
| Start of period / End of period | | | | | | | | | | |
| **Receipts** | | | | | | | | | | |
| Other Receipts | 0.1 | - | - | - | - | - | - | - | - | - |
| Net Intercompany Receipts | - | - | - | 3.0 | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | 3.0 | - | - | - | - | - | - |
| **Disbursements** | | | | | | | | | | |
| Payroll (Gross) | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - |
| Benefits | - | - | - | - | - | - | - | - | - | - |
| Inventory Purchases | - | - | - | - | - | - | - | - | - | - |
| Non-Inventory Purchases | 0.2 | 0.1 | 0.4 | 0.1 | 0.3 | - | 0.1 | 0.4 | 0.1 | 0.2 |
| Net Intercompany Disbursements | - | - | - | - | - | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 |
| Restructuring Costs - Advisor Fees | 0.7 | 0.7 | 0.7 | 0.6 | 0.6 | - | - | - | - | - |
| Restructuring Costs - Allocation Dispute Support Services | 0.1 | - | - | - | 0.1 | - | - | - | - | 0.1 |
| **Total Disbursements** | 1.1 | 0.8 | 1.2 | 0.7 | 1.1 | 0.6 | 0.8 | 1.0 | 0.8 | 0.9 |
| **Net Cash Flow** | (1.1) | (0.8) | (1.2) | 2.3 | (1.1) | (0.6) | (0.8) | (1.0) | (0.8) | (0.9) |
| FX Impact | | | | | | | | | | |
| Opening Available Cash Balance | 123.2 | 122.1 | 121.3 | 120.1 | 122.4 | 121.3 | 120.7 | 119.9 | 118.9 | 118.1 |
| Closing Available Cash Balance | 122.1 | 121.3 | 120.1 | 122.4 | 121.3 | 120.7 | 119.9 | 118.9 | 118.1 | 117.2 |
| LG & Standhend Proceeds | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 |
| **Total Cash** | 358.4 | 357.6 | 356.4 | 358.7 | 357.6 | 357.0 | 356.2 | 355.2 | 354.4 | 353.5 |
| Restricted Cash | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 |
| **Total Cash + Restricted Cash** | 367.5 | 366.7 | 365.5 | 367.8 | 366.7 | 366.1 | 365.3 | 364.3 | 363.5 | 362.6 |

**Nortel Networks - September 13, 2015**
**CCAA Applicants**
Forecast Cash Flow
USD (millions)

| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|
| Start of period | 31-Jan-16 | 07-Feb-16 | 14-Feb-16 | 21-Feb-16 | 28-Feb-16 | 06-Mar-16 | 13-Mar-16 | 20-Mar-16 | 27-Mar-16 | 13-Sep-15 |
| End of period | 06-Feb-16 | 13-Feb-16 | 20-Feb-16 | 27-Feb-16 | 05-Mar-16 | 12-Mar-16 | 19-Mar-16 | 26-Mar-16 | 02-Apr-16 | 02-Apr-16 |
| **Receipts** | | | | | | | | | | |
| Other Receipts | - | - | - | - | - | - | - | - | - | 3.0 |
| Net Intercompany Receipts | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | - | - | - | - | - | - | 3.0 |
| **Disbursements** | | | | | | | | | | |
| Payroll (Gross) | 0.5 | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | 1.9 |
| Benefits | 0.1 | - | - | - | - | - | - | - | - | 0.2 |
| Inventory Purchases | - | - | - | - | - | - | - | - | - | - |
| Non-Inventory Purchases | 0.1 | 0.1 | 0.3 | 0.2 | 0.1 | 0.1 | 0.1 | 0.2 | 8.7 | 13.0 |
| Net Intercompany Disbursements | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 18.4 |
| Restructuring Costs - Advisor Fees | - | - | - | - | - | - | - | - | - | - |
| Restructuring Costs - Allocation Dispute Support Services | - | - | - | 0.1 | - | - | - | 0.1 | - | 0.6 |
| **Total Disbursements** | 1.3 | 0.7 | 1.0 | 0.9 | 0.8 | 0.7 | 0.8 | 0.9 | 9.4 | 34.1 |
| **Net Cash Flow** | (1.3) | (0.7) | (1.0) | (0.9) | (0.8) | (0.7) | (0.8) | (0.9) | (9.4) | (31.1) |
| FX Impact | - | - | - | - | - | - | - | - | - | - |
| Opening Available Cash Balance | 117.2 | 115.9 | 115.2 | 114.2 | 113.3 | 112.5 | 111.8 | 111.0 | 110.1 | 131.8 |
| Closing Available Cash Balance | 115.9 | 115.2 | 114.2 | 113.3 | 112.5 | 111.8 | 111.0 | 110.1 | 100.7 | 100.7 |
| LG & Strandherd Proceeds | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 | 236.3 |
| **Total Cash** | 352.2 | 351.5 | 350.5 | 349.6 | 348.8 | 348.1 | 347.3 | 346.4 | 337.0 | 337.0 |
| Restricted Cash | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 | 9.1 |
| **Total Cash + Restricted Cash** | 361.3 | 360.6 | 359.6 | 358.7 | 357.9 | 357.2 | 356.4 | 355.5 | 346.1 | 346.1 |

Nortel CCAA Applicants
Advisor and Allocation Dispute Support Service Costs
All Figures in USD

| Restructuring Costs - Advisory Fees (All figures in USD) | Feb 22, 2015 - Sept 12, 2015 Avg Weekly Forecast[2] | Feb 22, 2015 - Sept 12, 2015 Total Forecast | Feb 22, 2015 - Sept 12, 2015 Total Actual | Sept 13, 2015 - April 2, 2016 Avg Weekly Forecast[2] | Sept 13, 2015 - April 2, 2016 Total Forecast |
|---|---|---|---|---|---|
| **Canadian Debtors' Advisors** | | | | | |
| Davies Ward Phillips & Vineberg LLP (Environmental) | | | | | |
| Gowling Lafleur Henderson LLP | | | | | |
| Mercer Human Resources Co | | | | | |
| Norton Rose Fulbright Canada LLP | | | | | |
| Buchanan Ingersol & Rooney | | | | | |
| Freshfields Bruckhaus Deringer | | | | | |
| Other Foreign Legal Advisors | 56,655 | 1,643,000 | 1,751,234 | 91,897 | 2,665,000 |
| **Monitor and Advisors** | | | | | |
| Allen & Overy LLP | | | | | |
| Ernst & Young Inc. | | | | | |
| Goodmans LLP | 401,552 | 11,645,000 | 8,525,047 | 330,793 | 9,593,000 |
| Canadian Estate Allocation Dispute Support Services[1] | 16,000 | 464,000 | 500,731 | 20,690 | 600,000 |
| **Canadian Debtors / Monitor Subtotal** | 474,207 | 13,752,000 | 10,777,012 | 443,379 | 12,858,000 |
| **Employee Advisors** | | | | | |
| 6038441 Canada Inc. (Financial Advisor) | | | | | |
| Koskie Minsky LLP | | | | | |
| DLA Piper LLP | | | | | |
| Wardle Daley Bernstein LLP | | | | | |
| Nelligan O'Brien Payne | | | | | |
| Shibley Righton LLP | | | | | |
| The Segal Company | | | | | |
| Allocation Dispute Support Services[1] | 56,034 | 1,625,000 | 1,294,008 | 52,759 | 1,530,000 |
| **Directors and Officers Advisors** | | | | | |
| Osler Hoskin & Harcourt LLP | 5,828 | 169,000 | 135,650 | 5,000 | 145,000 |
| **Ad Hoc Bondholder Group Advisors** | | | | | |
| Bennett Jones LLP | | | | | |
| FTI Capital Advisors LLC | | | | | |
| Milbank Tweed Hadley & McCloy LLP | 348,966 | 10,120,000 | 5,414,495 | 155,000 | 4,495,000 |
| **Total** | 885,034 | 25,666,000 | 17,621,165 | 656,138 | 19,028,000 |

1. Certain vendors that were presented as part of Allocation Dispute Support Services in prior Monitor's Reports are now presented in the Advisor Fees. This new presentation better reflects the nature of services these vendors provide to the Estate.
2. Represents average weekly run-rate for the Forecast Period.

# BLUE SHEET

Court File No. 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### ONE HUNDRED AND TWENTY SEVENTH REPORT OF THE MONITOR DATED MARCH 9, 2016

## INTRODUCTION

1.  On January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC" and collectively with all its subsidiaries "Nortel" or the "Company"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation ("NNTC"), Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "Canadian Debtors") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("CCAA"). Pursuant to the Order of this Court dated January 14, 2009, as amended and restated (the "Initial Order"), Ernst & Young Inc. ("EYI") was appointed as the Monitor of the Canadian Debtors (the "Monitor") in the CCAA proceedings. The stay of proceedings was extended to April 1, 2016 by this Court in its Order dated October 1, 2015.

2.  Nortel Networks Inc. ("NNI") and certain of its U.S. subsidiaries and affiliates concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") on January 14, 2009 (the "Chapter 11 Proceedings"). As required by U.S. law, an official committee of unsecured creditors (the "Committee") was established in January, 2009.

## Nortel Networks - September 13, 2015 to February 27, 2016
## CCAA Applicants
### Forecast Cash Flow - Variances
USD (Millions)

|  | Forecast | Actuals | Variances |
|---|---|---|---|
| Start of period | 13-Sep-15 | 13-Sep-15 | 13-Sep-15 |
| End of period | 27-Feb-16 | 27-Feb-16 | 27-Feb-16 |

## 1 . Receipts & Disbursements

| | Forecast | Actuals | Variances |
|---|---|---|---|
| **Receipts** | | | |
| Other Receipts | - | - | - |
| Net Intercompany Receipts | 3.0 | 3.7 | 0.7 |
| **Total Receipts** | 3.0 | 3.7 | 0.7 |
| **Disbursements** | | | |
| Payroll (Gross) | 1.6 | 0.8 | 0.8 |
| Benefits | 0.2 | 0.1 | 0.1 |
| Non-Inventory Purchases | 3.8 | 1.4 | 2.4 |
| Net Intercompany Disbursements | - | - | - |
| Restructuring Costs - Advisor Fees | 15.4 | 13.5 | 1.9 |
| Restructuring Costs - Allocation Dispute Support Services | 0.5 | 0.3 | 0.2 |
| **Total Disbursements** | 21.5 | 16.1 | 5.4 |
| **Net Cash Flow** | (18.5) | (12.4) | 6.1 |
| FX Impact | - | (2.4) | (2.4) |
| **Opening Available Cash Balance** | 131.8 | 131.8 | - |
| **Closing Available Cash Balance** | 113.3 | 117.0 | 3.7 |
| Unavailable Cash | 236.3 | 236.1 | (0.2) |
| **Total Cash** | 349.6 | 353.1 | 3.5 |
| Restricted Cash | 9.1 | 8.5 | (0.6) |
| **Total Cash + Restricted Cash** | 358.7 | 361.6 | 2.9 |

**Nortel Networks  February 26, 2016**
**CCAA Applicants**
Forecast Cash Flow
(in millions)

| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Start of period | 28-Feb-16 | 06-Mar-16 | 13-Mar-16 | 20-Mar-16 | 27-Mar-16 | 03-Apr-16 | 10-Apr-16 | 17-Apr-16 | 24-Apr-16 | 01-May-16 | 08-May-16 |
| End of period | 05-Mar-16 | 12-Mar-16 | 19-Mar-16 | 26-Mar-16 | 02-Apr-16 | 09-Apr-16 | 16-Apr-16 | 23-Apr-16 | 30-Apr-16 | 07-May-16 | 14-May-16 |
| **Receipts** | | | | | | | | | | | |
| Other Receipts | - | - | - | - | - | - | - | - | - | - | - |
| Net Intercompany Receipts | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | - | - | - | - | - | - | - | - |
| **Disbursements** | | | | | | | | | | | |
| Payroll (Gross) | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 |
| Benefits | - | - | - | - | - | - | - | - | - | - | - |
| Inventory Purchases | - | - | - | - | - | - | - | - | - | - | - |
| Non-Inventory Purchases | 0.1 | 0.3 | 0.1 | 0.2 | 0.3 | 0.2 | 0.2 | 0.2 | 0.1 | 0.4 | 0.1 |
| Net Intercompany Disbursements | - | - | - | - | - | - | - | - | - | - | - |
| Restructuring Costs - Advisor Fees | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.6 | 0.5 | 0.5 | 0.5 |
| Restructuring Costs - Allocation Dispute Support Services | - | - | - | - | - | - | 0.1 | - | - | - | - |
| **Total Disbursements** | 0.8 | 0.9 | 0.8 | 0.8 | 1.0 | 0.8 | 1.0 | 0.8 | 0.7 | 0.9 | 0.7 |
| **Net Cash Flow** | (0.8) | (0.9) | (0.8) | (0.8) | (1.0) | (0.8) | (1.0) | (0.8) | (0.7) | (0.9) | (0.7) |
| FX Impact | - | - | - | - | - | - | - | - | - | - | - |
| Opening Available Cash Balance | 117.0 | 116.2 | 115.3 | 114.5 | 113.7 | 112.7 | 111.9 | 110.9 | 110.1 | 109.4 | 108.5 |
| Closing Available Cash Balance | 116.2 | 115.3 | 114.5 | 113.7 | 112.7 | 111.9 | 110.9 | 110.1 | 109.4 | 108.5 | 107.8 |
| LG & Stranded Proceeds | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 |
| **Total Cash** | 352.3 | 351.4 | 350.6 | 348.8 | 348.8 | 348.0 | 347.0 | 346.2 | 345.5 | 344.6 | 343.9 |
| Restricted Cash | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 |
| **Total Cash + Restricted Cash** | 360.8 | 359.9 | 359.1 | 358.3 | 357.3 | 356.5 | 355.5 | 354.7 | 354.0 | 353.1 | 352.4 |

1. The hypothetical assumptions are reasonable and consistent with the purpose of the projections described in the One Hundred and Twenty Seventh Report, and the probable assumptions are suitably supported and consistent with the plans of the debtor company and provide a reasonable basis for the projections. All such assumptions are disclosed in the One Hundred and Twenty Seventh Report.

2. Since the projections are based on assumptions regarding future events, actual results will vary from the information presented, and the variations may be material.

3. The projections have been prepared solely for the purpose described in One Hundred and Twenty Seventh Report, using the probable and hypothetical assumptions set out in that report. Consequently, readers are cautioned that it may not be appropriate for other purposes.

4700

**Nortel Networks - February 28, 2016**
**CCAA Applicants**
**Forecast Cash Flow**
USD (million)

| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Start of Period | 15-May-16 | 22-May-16 | 29-May-16 | 05-Jun-16 | 12-Jun-16 | 19-Jun-16 | 26-Jun-16 | 03-Jul-16 | 10-Jul-16 | 17-Jul-16 | 24-Jul-16 |
| End of Period | 21-May-16 | 28-May-16 | 04-Jun-16 | 11-Jun-16 | 18-Jun-16 | 25-Jun-16 | 02-Jul-16 | 09-Jul-16 | 16-Jul-16 | 23-Jul-16 | 30-Jul-16 |
| **Receipts** | | | | | | | | | | | |
| Other Receipts | - | - | - | - | - | - | - | - | - | - | - |
| Net Intercompany Receipts | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | - | - | - | - | - | - | - | - |
| **Disbursements** | | | | | | | | | | | |
| Payroll (Gross) | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - |
| Benefits | - | - | 0.1 | - | - | - | - | - | - | - | - |
| Inventory Purchases | - | - | - | - | - | - | - | - | - | - | - |
| Non-Inventory Purchases | 0.1 | 0.1 | 0.1 | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | 0.2 | 0.1 | 0.1 |
| Net Intercompany Disbursements | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 |
| Restructuring Costs - Advisor Fees | 0.1 | - | - | - | - | - | - | - | - | - | - |
| Restructuring Costs - Allocation Dispute Support Services | | | | | | 0.1 | | | | | |
| **Total Disbursements** | 0.7 | 0.7 | 0.7 | 0.8 | 0.6 | 0.8 | 0.6 | 0.7 | 0.7 | 0.7 | 0.6 |
| **Net Cash Flow** | (0.7) | (0.7) | (0.7) | (0.8) | (0.6) | (0.8) | (0.6) | (0.7) | (0.7) | (0.7) | (0.6) |
| FX Impact | | | | | | | | | | | |
| Opening Available Cash Balance | 107.8 | 107.1 | 106.4 | 105.7 | 104.9 | 104.3 | 103.5 | 102.9 | 102.2 | 101.5 | 100.8 |
| Closing Available Cash Balance | 107.1 | 106.4 | 105.7 | 104.9 | 104.3 | 103.5 | 102.9 | 102.2 | 101.5 | 100.8 | 100.2 |
| LG & Strandherd Proceeds | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 |
| **Total Cash** | 343.2 | 342.5 | 341.8 | 341.0 | 340.4 | 339.6 | 339.0 | 338.3 | 337.6 | 336.9 | 336.3 |
| Restricted Cash | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 |
| **Total Cash + Restricted Cash** | 351.7 | 351.0 | 350.3 | 349.5 | 348.9 | 348.1 | 347.5 | 346.8 | 346.1 | 345.4 | 344.8 |

**Nortel Networks - February 28, 2016**
**CCAA Applicants**
Forecast Cash Flow
USD (millions)

| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|
| Start of period | 31-Jul-16 | 07-Aug-16 | 14-Aug-16 | 21-Aug-16 | 28-Aug-16 | 04-Sep-16 | 11-Sep-16 | 18-Sep-16 | 25-Sep-16 | 28-Feb-16 |
| End of period | 06-Aug-16 | 13-Aug-16 | 20-Aug-16 | 27-Aug-16 | 03-Sep-16 | 10-Sep-16 | 17-Sep-16 | 24-Sep-16 | 01-Oct-16 | 01-Oct-16 |
| **Receipts** | | | | | | | | | | |
| Other Receipts | - | - | - | - | - | - | - | - | - | - |
| Net Intercompany Receipts | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | - | - | - | - | - | - | - |
| **Disbursements** | | | | | | | | | | |
| Payroll (Gross) | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | - | 0.1 | 1.6 |
| Benefits | - | - | - | 0.1 | - | - | - | - | - | 0.2 |
| Inventory Purchases | - | - | - | - | - | - | - | - | - | - |
| Non-Inventory Purchases | 0.1 | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 4.5 |
| Net Intercompany Disbursements | - | - | - | - | - | - | - | - | - | - |
| Restructuring Costs - Advisor Fees | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 16.3 |
| Restructuring Costs - Allocation Dispute Support Services | 0.1 | 0.1 | - | - | - | - | 0.1 | - | - | 0.5 |
| **Total Disbursements** | 0.7 | 0.8 | 0.7 | 0.7 | 0.7 | 0.6 | 0.8 | 0.6 | 0.7 | 23.1 |
| **Net Cash Flow** | (0.7) | (0.8) | (0.7) | (0.7) | (0.7) | (0.6) | (0.8) | (0.6) | (0.7) | (23.1) |
| FX Impact | - | - | - | - | - | - | - | - | - | - |
| **Opening Available Cash Balance** | 100.2 | 99.5 | 98.7 | 98.0 | 97.3 | 96.6 | 96.0 | 95.2 | 94.6 | 117.0 |
| **Closing Available Cash Balance** | 99.5 | 98.7 | 98.0 | 97.3 | 96.6 | 96.0 | 95.2 | 94.6 | 93.9 | 93.9 |
| LG & Strandhend Proceeds | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 | 236.1 |
| **Total Cash** | 335.6 | 334.8 | 334.1 | 333.4 | 332.7 | 332.1 | 331.3 | 330.7 | 330.0 | 330.0 |
| Restricted Cash | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 | 8.5 |
| **Total Cash + Restricted Cash** | 344.1 | 343.3 | 342.6 | 341.9 | 341.2 | 340.6 | 339.8 | 339.2 | 338.5 | 338.5 |

Nortel CCAA Applicants
Advisor and Allocation Dispute Support Service Costs
All Figures in USD

| Restructuring Costs -- Advisory Fees (All figures in USD) | Sept 13, 2015 - Feb 27, 2016 Avg Weekly Forecast[2] | Sept 13, 2015 - Feb 27, 2016 Total Forecast (24 weeks) | Sept 13, 2015 - Feb 27, 2016 Total Actual (24 weeks) | Feb 28, 2016 - Oct 1, 2016 Avg Weekly Forecast[2] | Feb 28, 2016 - Oct 1, 2016 Total Forecast (31 weeks) |
|---|---|---|---|---|---|
| **Canadian Debtors' Advisors** | | | | | |
| Davies Ward Phillips & Vineberg LLP (Environmental) | | | | | |
| Gowling Lafleur Henderson LLP | | | | | |
| Mercer Human Resources Co | | | | | |
| Norton Rose Fulbright Canada LLP | | | | | |
| Buchanan Ingersoll & Rooney | | | | | |
| Freshfields Bruckhaus Deringer | | | | | |
| Other Foreign Legal Advisors | 92,827 | 2,227,853 | 1,027,160 | 42,000 | 1,302,000 |
| **Monitor and Advisors** | | | | | |
| Allen & Overy LLP | | | | | |
| Ernst & Young Inc. | | | | | |
| Goodmans LLP | 334,023 | 8,016,542 | 6,124,394 | 245,000 | 7,595,000 |
| Canadian Estate Allocation Dispute Support Services[1] | 20,833 | 500,000 | 298,349 | 16,335 | 525,000 |
| **Canadian Debtors / Monitor Subtotal** | 447,683 | 10,744,394 | 7,447,903 | 303,935 | 9,422,000 |
| **Employee Advisors** | | | | | |
| 603841 Canada Inc. (Financial Advisor) | | | | | |
| Koskie Minsky LLP | | | | | |
| DLA Piper LLP | | | | | |
| Warde Daley Bernstein LLP | | | | | |
| Nelligan O'Brien Payne | | | | | |
| Shepell FGI | | | | | |
| Sibbey Righton LLP | | | | | |
| The Segal Company | | | | | |
| Allocation Dispute Support Services[1] | 53,269 | 1,278,452 | 1,918,682 | 52,000 | 1,612,000 |
| **Directors and Officers Advisors** | | | | | |
| Osler Hoskin & Harcourt LLP | 5,049 | 121,180 | 159,027 | 5,000 | 155,000 |
| **Ad Hoc Bondholder Group Advisors** | | | | | |
| Bennett Jones LLP | | | | | |
| FTI Capital Advisors LLC | | | | | |
| Milbank Tweed Hadley & McCloy LLP | 156,525 | 3,756,589 | 4,280,701 | 180,000 | 5,580,000 |
| **Total** | 662,526 | 15,900,615 | 13,806,312 | 540,935 | 16,765,000 |

1. Certain vendors that were presented as part of Allocation Dispute Support Services in prior Monitor's Reports are now presented in the Advisor Fees. This new presentation better reflects the nature of services these vendors provide to the Estate.
2. Represents average weekly run-rate for the Forecast Period.

## APPENDIX "D"

## LISTING OF MONITOR'S ACCOUNTS

## [ATTACHED]

**Nortel Networks**
**Professional Fees Invoice Summary - Ernst & Young Inc.**
**January 14, 2009 to May 27, 2016**

| Invoice Number | Invoice Date | Service Period | Fee | Expenses | Taxes | Total |
|---|---|---|---|---|---|---|
| CA0189469901 | 21-Jan-09 | Jan 14 - 16, 2009 | 265,167 50 | 21,010 91 | 14,308 92 | 300,487 33 |
| CA0189470797 | 26-Jan-09 | Jan 17 - 23, 2009 | 399,212 50 | 11,086 32 | 20,514 94 | 430,813 76 |
| CA0189472616 | 03-Feb-09 | Jan 24 - 30, 2009 | 422,700 00 | 13,202 58 | 21,795 13 | 457,697 71 |
| CA0189473436 | 10-Feb-09 | Jan 31 - Feb 6, 2009 | 394,460 00 | 34,868 53 | 21,466 43 | 450,794 96 |
| CA0189474682 | 18-Feb-09 | Feb 7 - 13, 2009 | 391,152 50 | 12,750 55 | 20,195 15 | 424,098 20 |
| CA0189475594 | 23-Feb-09 | Feb 14 - 20, 2009 | 341,670 00 | 16,995 90 | 17,933 30 | 376,599 20 |
| CA0189478119 | 04-Mar-09 | Feb 21 - 27, 2009 | 376,977 50 | 10,997 27 | 19,398 74 | 407,373 51 |
| CA0189478864 | 09-Mar-09 | Feb 28 - Mar 6, 2009 | 343,920 00 | 12,044 96 | 17,798 25 | 373,763 21 |
| CA0189480344 | 17-Mar-09 | Mar 7 - 13, 2009 | 406,227 50 | 15,792 04 | 21,100 98 | 443,120 52 |
| CA0189481530 | 25-Mar-09 | Mar 14 - 20, 2009 | 330,197 50 | 9,251 00 | 16,972 43 | 356,420 93 |
| CA0189483523 | 31-Mar-09 | Mar 21 - 27, 2009 | 342,177 50 | 5,033 61 | 17,360 56 | 364,571 66 |
| CA0189484829 | 07-Apr-09 | Mar 28 - Apr 3, 2009 | 408,300 00 | 10,109 74 | 20,920 49 | 439,330 23 |
| CA0189486069 | 14-Apr-09 | Apr 4 - 10, 2009 | 367,027 50 | 12,714 91 | 18,987 12 | 398,729 53 |
| CA0189487307 | 20-Apr-09 | Apr 11 - 17, 2009 | 318,172 50 | 6,456 60 | 16,231 46 | 340,860 56 |
| CA0189488689 | 27-Apr-09 | Apr 18 - 24, 2009 | 357,370 00 | 10,162 44 | 18,376 62 | 385,909 06 |
| CA0189492197 | 05-May-09 | Apr 25 - May 1, 2009 | 386,255 00 | 5,938 83 | 19,609 69 | 411,803 52 |
| CA0189493778 | 12-May-09 | May 2 - 8, 2009 | 398,315 00 | 10,006 82 | 20,416 09 | 428,737 91 |
| CA0189495257 | 20-May-09 | May 9 - 15, 2009 | 362,730 00 | 13,576 91 | 18,815 35 | 395,122 26 |
| CA0189497040 | 25-May-09 | May 16 - 22, 2009 | 299,012 50 | 8,318 36 | 15,366 54 | 322,697 40 |
| CA0189499745 | 02-Jun-09 | May 23 - 29, 2009 | 447,482 50 | 15,360 32 | 23,142 14 | 485,984 96 |
| CA0189500801 | 08-Jun-09 | May 30 - Jun 5, 2009 | 442,245 00 | 8,706 67 | 22,547 58 | 473,499 25 |
| CA0189502022 | 17-Jun-09 | Jun 6 - 12, 2009 | 423,922 50 | 12,689 08 | 21,830 58 | 458,442 16 |
| CA0189503439 | 22-Jun-09 | Jun 13 - 19, 2009 | 491,372 50 | 5,361 41 | 24,836 70 | 521,570 61 |
| CA0189505399 | 29-Jun-09 | Jun 20 - 26, 2009 | 484,992 50 | 8,402 76 | 24,669 76 | 518,065 02 |
| CA0189506728 | 06-Jul-09 | Jun 27 - Jul 3, 2009 | 232,902 50 | 10,891 70 | 12,189 71 | 255,983 91 |
| CA0189508102 | 15-Jul-09 | Jul 4 - 10, 2009 | 466,397 50 |  | 23,319 88 | 489,717 38 |
| CA0189508527 | 21-Jul-09 | Jul 11 - 17, 2009 | 432,942 50 | 22,229 71 | 22,758 61 | 477,930 82 |
| CA0189509247 | 27-Jul-09 | Jul 18 - 24, 2009 | 425,155 00 | 5,309 20 | 21,523 21 | 451,987 41 |
| CA0189509979 | 04-Aug-09 | Jul 25 - 31, 2009 | 408,752 50 | 10,126 16 | 20,943 93 | 439,822 59 |
| CA0189510981 | 10-Aug-09 | Aug 1 - 7, 2009 | 288,312 50 | 5,500 92 | 14,690 67 | 308,504 09 |
| CA0189511818 | 17-Aug-09 | Aug 8 - 14, 2009 | 439,137 50 | 13,499 18 | 22,631 83 | 475,268 51 |
| CA0189512370 | 25-Aug-09 | Aug 15 - 21, 2009 | 370,142 50 | 14,084 80 | 19,211 37 | 403,438 67 |
| CA0189513235 | 31-Aug-09 | Aug 22 - 28, 2009 | 358,210 00 | 21,866 72 | 19,003 84 | 399,080 56 |
| CA0189514577 | 09-Sep-09 | Aug 29 - Sep 4, 2009 | 359,632 50 | 39,241 67 | 19,943 71 | 418,817 88 |
| CA0189515414 | 14-Sep-09 | Sep 5 - 11, 2009 | 408,747 50 | 3,054 85 | 20,590 12 | 432,392 47 |
| CA0189516026 | 23-Sep-09 | Sep 12 - 18, 2009 | 423,787 50 | 10,792 83 | 21,729 02 | 456,309 35 |
| CA0189516903 | 29-Sep-09 | Sep 19 - 25, 2009 | 490,667 50 | 7,547 93 | 24,910 77 | 523,126 20 |
| CA0189518799 | 05-Oct-09 | Sep 26 - Oct 2, 2009 | 483,377 00 | 10,868 76 | 24,712 29 | 518,958 05 |
| CA0189519672 | 13-Oct-09 | Oct 3 - 9, 2009 | 434,515 50 | 29,880 57 | 23,219 80 | 487,615 87 |
| CA0189520290 | 20-Oct-09 | Oct 9 - 16, 2009 | 397,079 00 | 3,213 23 | 20,014 61 | 420,306 84 |
| CA0189521087 | 26-Oct-09 | Oct 17 - 23, 2009 | 479,730 50 | 18,130 12 | 24,893 03 | 522,753 65 |
| CA0189522082 | 02-Nov-09 | Oct 24 - 30, 2009 | 438,880 00 | 10,185 15 | 22,453 26 | 471,518 41 |
| CA0189523820 | 09-Nov-09 | Oct 31 - Nov 6, 2009 | 565,747 00 | 48,176 35 | 30,696 17 | 644,619 52 |
| CA0189524660 | 18-Nov-09 | Nov 7 - 13, 2009 | 567,906 00 | 20,400 31 | 29,415 32 | 617,721 63 |
| CA0189525233 | 23-Nov-09 | Nov 14 - 20, 2009 | 549,501 50 | 5,988 88 | 27,774 52 | 583,264 90 |
| CA0189526426 | 30-Nov-09 | Nov 21 - 27, 2009 | 650,489 00 | 18,093 37 | 33,429 12 | 702,011 49 |
| CA0189528150 | 08-Dec-09 | Nov 28 - Dec 4, 2009 | 529,474 50 | 23,121 89 | 27,629 82 | 580,226 21 |
| CA0189528835 | 14-Dec-09 | Dec 5 - 11, 2009 | 478,684 50 | 18,554 10 | 24,861 93 | 522,100 53 |
| CA0189530355 | 21-Dec-09 | Dec 12 - 18, 2009 | 466,377 00 | 3,644 84 | 23,501 09 | 493,522 93 |
| CA0189531657 | 04-Jan-10 | Dec 19 - Jan 1, 2010 | 273,356 50 | 19,109 40 | 14,623 30 | 307,089 20 |
| CA0189532638 | 12-Jan-10 | Jan 2 - 8, 2010 | 458,938 50 | 6,158 33 | 23,254 84 | 488,351 67 |
| CA0189533377 | 18-Jan-10 | Jan 9 - 15, 2010 | 491,477 00 | 4,824 25 | 24,815 06 | 521,116 31 |
| CA0189534779 | 25-Jan-10 | Jan 16 - 22, 2010 | 500,102 50 | 6,584 82 | 25,334 37 | 532,021 69 |
| CA0189536224 | 01-Feb-10 | Jan 23 - 29, 2010 | 445,747 50 | 2,777 95 | 22,426 27 | 470,951 72 |
| CA0189538292 | 09-Feb-10 | Jan 30 - Feb 5, 2010 | 507,828 00 | 3,665 00 | 25,574 65 | 537,067 65 |
| CA0189539162 | 17-Feb-10 | Feb 6 - 12, 2010 | 492,012 50 | 18,732 98 | 25,537 27 | 536,282 75 |
| CA0189540025 | 23-Feb-10 | Feb 13 - 19, 2010 | 353,249 00 | 3,615 83 | 17,843 24 | 374,708 07 |
| CA0189541493 | 01-Mar-10 | Feb 20 - 26, 2010 | 447,934 50 | 11,055 92 | 22,949 52 | 481,939 94 |
| CA0189543722 | 08-Mar-10 | Feb 27 - Mar 5, 2010 | 448,727 00 | 9,755 90 | 22,924 15 | 481,407 05 |
| CA0189544601 | 15-Mar-10 | Mar 6 - 12, 2010 | 503,927 00 | 94,271 73 | 29,909 94 | 628,108 67 |
| CA0189545720 | 23-Mar-10 | Mar 13 - 19, 2010 | 384,859 00 | 42,839 47 | 21,384 92 | 449,083 39 |
| CA0189547015 | 29-Mar-10 | Mar 20 - 26, 2010 | 356,237 00 | 5,075 96 | 18,065 65 | 379,378 61 |
| CA0189549100 | 05-Apr-10 | Mar 27 - Apr 2, 2010 | 330,141 00 | 11,613 14 | 17,087 71 | 358,841 85 |
| CA0189550682 | 12-Apr-10 | Apr 3 - 9, 2010 | 427,521 50 | 9,095 58 | 21,830 85 | 458,447 93 |
| CA0189551582 | 19-Apr-10 | Apr 10 -16, 2010 | 405,527 50 - | 3,070 81 | 20,122 83 | 422,579 52 |
| CA0189553229 | 27-Apr-10 | Apr 17 - 23, 2010 | 374,728 00 | 4,144 62 | 18,943 63 | 397,816 25 |
| CA0189554973 | 04-May-10 | Apr 24 - 30, 2010 | 401,321 50 | 14,647 66 | 20,798 46 | 436,767 62 |
| CA0189557960 | 12-May-10 | May 1 - 7, 2010 | 438,632 50 | 17,924 02 | 22,827 83 | 479,384 35 |
| CA0189559165 | 18-May-10 | May 8 - 14, 2010 | 405,843 00 | 13,182 91 | 20,951 30 | 439,977 21 |

**Nortel Networks**
**Professional Fees Invoice Summary - Ernst & Young Inc.**
**January 14, 2009 to May 27, 2016**

| Invoice Number | Invoice Date | Service Period | Fee | Expenses | Taxes | Total |
|---|---|---|---|---|---|---|
| CA0189560625 | 26-May-10 | May 15 - 21, 2010 | 373,923 50 | 32,723 96 | 20,332 37 | 426,979 83 |
| CA0189562299 | 02-Jun-10 | May 22 - 28, 2010 | 281,790 00 | 7,426 12 | 14,460 81 | 303,676 93 |
| CA0189564780 | 09-Jun-10 | May 29 - Jun 4, 2010 | 342,719 50 | 2,912 78 | 17,281 61 | 362,913 89 |
| CA0189565723 | 15-Jun-10 | Jun 5 - 11, 2010 | 417,506 00 | 23,303 40 | 22,040 47 | 462,849 87 |
| CA0189567189 | 22-Jun-10 | Jun 12 - 18, 2010 | 374,216 50 | 11,415 12 | 19,281 58 | 404,913 20 |
| CA0189568558 | 28-Jun-10 | Jun 19 - 25, 2010 | 361,483 50 | 10,537 03 | 18,601 03 | 390,621 56 |
| CA0189570532 | 05-Jul-10 | Jun 26 - Jul 2, 2010 | 244,633 50 | 7,852 05 | 12,624 28 | 265,109 83 |
| CA0189572305 | 14-Jul-10 | July 3 - 9, 2010 | 305,445 00 | 762 40 | 39,806 96 | 346,014 36 |
| CA0189572720 | 19-Jul-10 | July 10 - 16, 2010 | 430,373 00 | 12,743 96 | 57,605 20 | 500,722 16 |
| CA0189573802 | 27-Jul-10 | July 17 - 23, 2010 | 365,529 00 | 5,665 14 | 48,255 24 | 419,449 38 |
| CA0189574600 | 04-Aug-10 | July 24 - 30, 2010 | 380,277 00 | 6,405 98 | 50,268 79 | 436,951 77 |
| CA0189575799 | 09-Aug-10 | July 31 - Aug 6, 2010 | 300,671 50 | 6,352 40 | 39,913 11 | 346,937 01 |
| CA0189576512 | 16-Aug-10 | Aug 7 - 13, 2010 | 426,807 50 | 25,235 32 | 58,765 57 | 510,808 39 |
| CA0189577321 | 23-Aug-10 | Aug 14 - 20, 2010 | 466,710 50 | 5,780 00 | 61,423 77 | 533,914 27 |
| CA0189578063 | 30-Aug-10 | Aug 21 - 27, 2010 | 509,657 50 | 24,544 58 | 69,446 27 | 603,648 35 |
| CA0189579211 | 07-Sep-10 | Aug 28 - Sept 3, 2010 | 371,010 50 | 4,318 28 | 48,792 74 | 424,121 52 |
| CA0189580008 | 16-Sep-10 | Sept 4 - 10, 2010 | 355,888 50 | 7,578 49 | 47,250 71 | 410,717 70 |
| CA0189580496 | 21-Sep-10 | Sept 11 - 17, 2010 | 525,751 50 | 9,103 47 | 69,531 15 | 604,386 12 |
| CA0189581992 | 30-Sep-10 | Sept 18 - 24, 2010 | 563,890 50 | 18,412 11 | 75,699 34 | 658,001 95 |
| CA0189583639 | 05-Oct-10 | Sept 25 - Oct 1, 2010 | 553,817 50 | 59,679 01 | 79,754 55 | 693,251 06 |
| CA0189584845 | 15-Oct-10 | Oct 2 - 8, 2010 | 488,271 00 | 26,554 23 | 66,927 28 | 581,752 51 |
| CA0189585323 | 19-Oct-10 | Oct 9 - 15, 2010 | 458,529 00 | 6,752 75 | 60,486 63 | 525,768 38 |
| CA0189586285 | 25-Oct-10 | Oct 16 - 22, 2010 | 489,474 00 | 9,423 58 | 64,856 69 | 563,754 27 |
| CA0189587864 | 03-Nov-10 | Oct 23 - 29, 2010 | 528,623 00 | 5,866 08 | 69,483 58 | 603,972 66 |
| CA0189589716 | 09-Nov-10 | Oct 30 - Nov 5, 2010 | 623,091 00 | 14,235 02 | 82,852 38 | 720,178 40 |
| CA0189590606 | 15-Nov-10 | Nov 6 - 12, 2010 | 522,326 50 | 31,168 73 | 71,954 38 | 625,449 61 |
| CA0189591699 | 24-Nov-10 | Nov 13 - 19, 2010 | 507,356 00 | 9,813 43 | 67,232 03 | 584,401 46 |
| CA0189592731 | 01-Dec-10 | Nov 20 - 26, 2010 | 452,539 50 | 16,262 21 | 60,944 22 | 529,745 93 |
| CA0189593987 | 06-Dec-10 | Nov 27 - Dec 3, 2010 | 463,122 50 | 30,726 97 | 64,200 43 | 558,049 90 |
| CA0189594672 | 13-Dec-10 | Dec 4 - 10, 2010 | 464,188 00 | 9,100 57 | 61,527 51 | 534,816 08 |
| CA0189596263 | 21-Dec-10 | Dec 11 - 17, 2010 | 409,788 50 | 11,103 34 | 54,715 94 | 475,607 78 |
| CA0189598122 | 06-Jan-11 | Dec 18 - 31, 2010 | 280,269 50 | 9,324 01 | 37,647 16 | 327,240 67 |
| CA0189598555 | 10-Jan-11 | Jan 1 - 7, 2011 | 347,957 00 | 1,198 27 | 45,390 19 | 394,545 46 |
| CA0189599469 | 17-Jan-11 | Jan 8 - 14, 2011 | 400,920 00 | 15,195 95 | 54,095 07 | 470,211 02 |
| CA0189600592 | 25-Jan-11 | Jan 15 - 21, 2011 | 373,452 00 | 7,752 91 | 49,556 64 | 430,761 55 |
| CA0189601889 | 01-Feb-11 | Jan 22 - 28, 2011 | 411,980 00 | 4,306 52 | 54,117 25 | 470,403 77 |
| CA0189603951 | 07-Feb-11 | Jan 29 - Feb 4, 2011 | 336,387 50 | 14,228 68 | 45,580 10 | 396,196 28 |
| CA0189604743 | 15-Feb-11 | Feb 5 - 11, 2011 | 379,974 50 | 5,565 38 | 50,120 18 | 435,660 06 |
| CA0189605856 | 22-Feb-11 | Feb 12 - 18, 2011 | 385,189 00 | 11,394 71 | 51,555 88 | 448,139 59 |
| CA0189606865 | 01-Mar-11 | Feb 19 - 25, 2011 | 435,105 00 | 7,026 22 | 57,477 06 | 499,608 28 |
| CA0189609281 | 09-Mar-11 | Feb 26 - March 4, 2011 | 365,778 00 | 18,054 84 | 49,898 27 | 433,731 11 |
| CA0189610436 | 14-Mar-11 | March 5 - 11, 2011 | 493,086 00 | 15,581 28 | 66,126 75 | 574,794 03 |
| CA0189611820 | 23-Mar-11 | March 12 - 18, 2011 | 445,839 00 | 27,783 89 | 61,570 98 | 535,193 87 |
| CA0189613318 | 28-Mar-11 | March 19 - 25, 2011 | 485,740 50 | 4,995 97 | 63,795 74 | 554,532 21 |
| CA0189616223 | 04-Apr-11 | March 26 - April 1, 2011 | 583,661 50 | 9,899 78 | 77,162 97 | 670,724 25 |
| CA0189617479 | 13-Apr-11 | April 2 - 8, 2011 | 488,412 50 | 6,632 40 | 64,355 84 | 559,400 74 |
| CA0189618574 | 18-Apr-11 | April 9 - 15, 2011 | 486,097 50 | 31,105 12 | 67,236 34 | 584,438 96 |
| CA0189619939 | 25-Apr-11 | April 16 - 22, 2011 | 296,146 50 | 7,709 10 | 39,501 23 | 343,356 83 |
| CA0189622322 | 02-May-11 | April 23 - 29, 2011 | 356,915 50 | 20,308 76 | 49,039 15 | 426,263 41 |
| CA0189624935 | 09-May-11 | April 30 - May 6, 2011 | 407,551 50 | 5,078 73 | 53,641 93 | 466,272 16 |
| CA0189626139 | 16-May-11 | May 7 - 13, 2011 | 362,440 00 | 4,432 28 | 47,693 40 | 414,565 68 |
| CA0189627441 | 24-May-11 | May 14 - 20, 2011 | 256,346 50 | 32,780 35 | 37,586 49 | 326,713 34 |
| CA0189629198 | 30-May-11 | May 21 - 27, 2011 | 270,063 50 | 12,593 58 | 36,745 42 | 319,402 50 |
| CA0189631702 | 06-Jun-11 | May 28 - June 3, 2011 | 369,984 00 | 12,729 42 | 49,752 74 | 432,466 16 |
| CA0189633456 | 13-Jun-11 | June 4 - 10, 2011 | 472,370 50 | 8,640 94 | 62,531 49 | 543,542 93 |
| CA0189634998 | 21-Jun-11 | June 11 - 17, 2011 | 329,758 00 | 14,189 57 | 44,713 18 | 388,660 75 |
| CA0189636497 | 27-Jun-11 | June 18 - 24, 2011 | 269,684 00 | 4,211 40 | 35,606 40 | 309,501 80 |
| CA0189638852 | 06-Jul-11 | June 25 - July 1, 2011 | 208,626 50 | 7,893 05 | 28,147 54 | 244,667 09 |
| CA0189640469 | 12-Jul-11 | July 2 - 8, 2011 | 304,053 00 | 2,457 60 | 39,846 38 | 346,356 98 |
| CA0189641105 | 18-Jul-11 | July 9 - 15, 2011 | 372,135 50 | 4,157 85 | 48,918 14 | 425,211 49 |
| CA0189641987 | 26-Jul-11 | July 16 - 22, 2011 | 245,225 00 | 25,805 09 | 35,233 91 | 306,264 00 |
| CA0189642750 | 02-Aug-11 | July 23 - 29, 2011 | 230,617 00 | 1,429 24 | 30,166 01 | 262,212 25 |
| CA0189643911 | 08-Aug-11 | July 30 - Aug 5, 2011 | 216,224 50 | 14,042 56 | 29,934 72 | 260,201 78 |
| CA0189644777 | 16-Aug-11 | Aug 6 - 12, 2011 | 218,375 50 | 19,850 67 | 30,969 40 | 269,195 57 |
| CA0189645477 | 22-Aug-11 | Aug 13 - 19, 2011 | 328,157 50 | 799 68 | 42,764 43 | 371,721 61 |
| CA0189646322 | 29-Aug-11 | Aug 20 - 26, 2011 | 244,046 00 | 9,710 79 | 32,988 38 | 286,745 17 |
| CA0189647640 | 06-Sep-11 | Aug 27 - Sept 2, 2011 | 232,304 50 | 776 80 | 30,300 57 | 263,381 87 |
| CA0189648186 | 12-Sep-11 | Sept 3 - 9, 2011 | 265,208 00 | 19,584 00 | 37,022 96 | 321,814 96 |
| CA0189649179 | 19-Sep-11 | Sept 10 - 16, 2011 | 289,670 00 | 6,298 36 | 38,475 89 | 334,444 25 |
| CA0189650087 | 26-Sep-11 | Sept 17 - 23, 2011 | 299,190 50 | 11,991 48 | 40,453 66 | 351,635 64 |

**Nortel Networks**
**Professional Fees Invoice Summary - Ernst & Young Inc.**
**January 14, 2009 to May 27, 2016**

| Invoice Number | Invoice Date | Service Period | Fee | Expenses | Taxes | Total |
|---|---|---|---|---|---|---|
| CA0189652059 | 03-Oct-11 | Sept 24 - 30, 2011 | 355,010 00 | 12,118 64 | 47,726 72 | 414,855 36 |
| CA0189652991 | 12-Oct-11 | Oct 1 - 7, 2011 | 363,511 50 | 5,066 26 | 47,915 11 | 416,492 87 |
| CA0189653734 | 18-Oct-11 | Oct 8 - 14, 2011 | 312,012 50 | 1,434 60 | 40,748 12 | 354,195 22 |
| CA0189654837 | 25-Oct-11 | Oct 15 - 21, 2011 | 364,106 00 | 5,270 40 | 48,018 93 | 417,395 33 |
| CA0189655832 | 31-Oct-11 | Oct 22 - 28, 2011 | 387,103 50 | 15,580 00 | 52,348 86 | 455,032 36 |
| CA0189657943 | 08-Nov-11 | Oct 29 - Nov 4, 2011 | 339,722 00 | 18,461 99 | 46,563 92 | 404,747 91 |
| CA0189658799 | 14-Nov-11 | Nov 5 - 11, 2011 | 327,881 50 | 90 00 | 42,636 30 | 370,607 80 |
| CA0189659929 | 22-Nov-11 | Nov 12 - 18, 2011 | 322,960 00 | 11,660 33 | 43,500 64 | 378,120 97 |
| CA0189661183 | 28-Nov-11 | Nov 19 - 25, 2011 | 452,261 50 | 1,887 86 | 59,039 42 | 513,188 78 |
| CA0189662923 | 05-Dec-11 | Nov 26 - Dec 2, 2011 | 308,739 00 | 13,356 06 | 41,872 36 | 363,967 42 |
| CA0189664416 | 14-Dec-11 | Dec 3 - 9, 2011 | 339,132 00 | 4,875 83 | 44,721 02 | 388,728 85 |
| CA0189665332 | 19-Dec-11 | Dec 10 - 16, 2011 | 325,943 50 | 13,138 49 | 44,080 66 | 383,162 65 |
| CA0189666831 | 28-Dec-11 | Dec 17 - 23, 2011 | 315,282 50 | 6,519 99 | 41,834 32 | 363,636 81 |
| CA0189667336 | 03-Jan-12 | Dec 24 - 30, 2011 | 40,603 50 | 14,105 59 | 7,112 18 | 61,821 27 |
| CA0189668021 | 09-Jan-12 | Dec 31, 2011 - Jan 6, 2012 | 296,525 50 | 4,080 43 | 39,078 77 | 339,684 70 |
| CA0189669544 | 17-Jan-12 | Jan 7 - 13, 2012 | 378,831 00 | 1,084 11 | 49,388 96 | 429,304 07 |
| CA0189670304 | 23-Jan-12 | Jan 14 - 20, 2012 | 417,624 00 | 74,443 22 | 63,968 74 | 556,035 96 |
| CA0189671896 | 30-Jan-12 | Jan 21 - 27, 2012 | 411,979 00 | 9,083 57 | 54,738 13 | 475,800 70 |
| CA0189673497 | 06-Feb-12 | Jan 28 - Feb 3, 2012 | 325,194 00 | 5,096 42 | 42,937 75 | 373,228 17 |
| CA0189674856 | 13-Feb-12 | Feb 4 - 10, 2012 | 290,348 50 | 20,244 32 | 40,377 07 | 350,969 89 |
| CA0189676123 | 21-Feb-12 | Feb 11 - 17, 2012 | 316,762 50 | 4,150 31 | 41,718 67 | 362,631 48 |
| CA0189677480 | 27-Feb-12 | Feb 18 - 24, 2012 | 351,696 25 | 1,989 72 | 45,979 18 | 399,665 15 |
| CA0189679907 | 05-Mar-12 | Feb 25 - Mar 2, 2012 | 345,952 00 | 548 95 | 45,045 12 | 391,546 07 |
| CA0189681596 | 14-Mar-12 | Mar 3 - 9, 2012 | 309,912 00 | 25,623 93 | 43,619 67 | 379,155 60 |
| CA0189682626 | 19-Mar-12 | Mar 10-16, 2012 | 231,580 50 | 3,470 96 | 30,556 69 | 265,608 15 |
| CA0189684027 | 26-Mar-12 | Mar 17 - 23, 2012 | 299,312 00 | 6,269 14 | 39,725 55 | 345,306 69 |
| CA0189686616 | 03-Apr-12 | Mar 24 - 30, 2012 | 265,827 50 | 5,288 09 | 35,245 03 | 306,360 62 |
| CA0189687804 | 09-Apr-12 | Mar 31 - Apr 6, 2012 | 271,298 50 | 2,894 77 | 35,645 13 | 309,838 40 |
| CA0189689517 | 17-Apr-12 | Apr 7 - 13, 2012 | 312,514 50 | 2,727 43 | 40,981 45 | 356,223 38 |
| CA0189691106 | 23-Apr-12 | Apr 14 - 20, 2012 | 359,689 50 | 2,617 86 | 47,099 96 | 409,407 32 |
| CA0189693225 | 30-Apr-12 | Apr 21 - 27, 2012 | 311,015 00 | 3,727 75 | 40,916 56 | 355,659 31 |
| CA0189695925 | 07-May-12 | Apr 28 - May 4, 2012 | 290,404 00 | 3,584 45 | 38,218 50 | 332,206 95 |
| CA0189697773 | 14-May-12 | May 5 - 11, 2012 | 282,981 00 | 6,803 89 | 37,672 04 | 327,456 93 |
| CA0189699370 | 22-May-12 | May 12 - 18, 2012 | 242,513 00 | 644 15 | 31,610 43 | 274,767 58 |
| CA0189700867 | 28-May-12 | May 19 - 25, 2012 | 264,474 50 | 489 81 | 34,445 36 | 299,409 67 |
| CA0189704095 | 05-Jun-12 | May 26 - June 1, 2012 | 298,474 50 | 15,506 20 | 40,817 49 | 354,798 19 |
| CA0189705625 | 11-Jun-12 | June 2 - 8, 2012 | 288,181 00 | 4,005 88 | 37,984 29 | 330,171 17 |
| CA0189707207 | 18-Jun-12 | June 9 - 15, 2012 | 269,953 50 | 2,672 34 | 35,441 36 | 308,067 20 |
| CA0189708787 | 25-Jun-12 | June 16 - 22, 2012 | 378,974 50 | 1,754 89 | 49,494 82 | 430,224 21 |
| CA0189711444 | 04-Jul-12 | June 23 - 29, 2012 | 250,968 00 | 20,528 63 | 35,294 56 | 306,791 19 |
| CA0189712866 | 09-Jul-12 | June 30 - July 6, 2012 | 156,372 50 | 1,347 32 | 20,503 58 | 178,223 40 |
| CA0189713669 | 16-Jul-12 | July 7 - 13, 2012 | 290,513 00 | 11,954 85 | 39,320 82 | 341,788 67 |
| CA0189714938 | 23-Jul-12 | July 14 - 20, 2012 | 299,005 50 | 4,791 42 | 39,493 60 | 343,290 52 |
| CA0189716098 | 31-Jul-12 | July 21 - 27, 2012 | 195,239 00 | 10,072 50 | 26,690 50 | 232,002 00 |
| CA0189717835 | 08-Aug-12 | July 28 - Aug 3, 2012 | 209,922 50 | 602 80 | 27,368 29 | 237,893 59 |
| CA0189718756 | 13-Aug-12 | Aug 4 - 10, 2012 | 211,342 00 | 2,235 97 | 27,765 14 | 241,343 11 |
| CA0189719713 | 20-Aug-12 | Aug 11 - 17, 2012 | 254,532 50 | 12,916 64 | 34,768 39 | 302,217 53 |
| CA0189720589 | 27-Aug-12 | Aug 18 - 24, 2012 | 303,688 50 | 3,645 20 | 39,953 38 | 347,287 08 |
| CA0189722009 | 04-Sep-12 | Aug 25 - Sep 1, 2012 | 201,905 00 | 10,541 12 | 27,618 00 | 240,064 12 |
| CA0189722946 | 11-Sep-12 | Sep 1 - 7, 2012 | 192,274 50 | 1,200 65 | 25,151 77 | 218,626 92 |
| CA0189723922 | 18-Sep-12 | Sep 8 - 14, 2012 | 239,237 00 | 3,442 56 | 31,548 34 | 274,227 90 |
| CA0189724988 | 24-Sep-12 | Sep 15 - 21, 2012 | 269,823 50 | 12,530 59 | 36,706 03 | 319,060 12 |
| CA0189726995 | 01-Oct-12 | Sep 22 - 28, 2012 | 337,213 00 | 1,699 36 | 44,058 61 | 382,970 97 |
| CA0189728239 | 10-Oct-12 | Sep 29 - Oct 5, 2012 | 336,374 50 | 2,064 85 | 43,997 12 | 382,436 47 |
| CA0189729274 | 15-Oct-12 | Oct 6 - 12, 2012 | 289,479 00 | 11,528 84 | 39,131 02 | 340,138 86 |
| CA0189730681 | 22-Oct-12 | Oct 13 - 19, 2012 | 348,289 00 | 3,993 86 | 45,796 77 | 398,079 63 |
| CA0189732026 | 29-Oct-12 | Oct 20 - 26, 2012 | 353,285 50 | 4,757 30 | 46,545 56 | 404,588 36 |
| CA0189734292 | 06-Nov-12 | Oct 27 - Nov 2, 2012 | 342,856 00 | 1,440 72 | 44,758 57 | 389,055 29 |
| CA0189735471 | 12-Nov-12 | Nov 3 - 9, 2012 | 328,633 50 | 10,758 88 | 44,121 01 | 383,513 39 |
| CA0189736955 | 20-Nov-12 | Nov 10 - 16, 2012 | 227,983 00 | 7,190 82 | 30,572 60 | 265,746 42 |
| CA0189738004 | 26-Nov-12 | Nov 17 - 23, 2012 | 382,436 50 | 2,115 72 | 49,991 79 | 434,544 01 |
| CA0189740183 | 03-Dec-12 | Nov 24 - 30, 2012 | 326,981 50 | 402 95 | 42,559 98 | 369,944 43 |
| CA0189741387 | 11-Dec-12 | Dec 1 - 7, 2012 | 271,270 00 | 23,962 17 | 38,380 18 | 333,612 35 |
| CA0189742594 | 17-Dec-12 | Dec 8 - 14, 2012 | 282,838 00 | 2,744 29 | 37,125 70 | 322,707 99 |
| CA0189745365 | 02-Jan-13 | Dec 15 - 28, 2012 | 364,120 00 | 2,497 33 | 47,660 25 | 414,277 58 |
| CA0189746244 | 09-Jan-13 | Dec 29 - Jan 4, 2013 | 161,898 50 | 3,035 58 | 21,441 43 | 186,375 51 |
| CA0189747108 | 14-Jan-13 | Jan 5 - 11, 2013 | 305,748 50 | 9,055 49 | 40,924 52 | 355,728 51 |
| CA0189748036 | 21-Jan-13 | Jan 12 - 18, 2013 | 337,875 00 | 1,842 95 | 44,163 33 | 383,881 28 |
| CA0189749256 | 28-Jan-13 | Jan 19 - 25, 2013 | 349,065 50 | 3,899 97 | 45,885 51 | 398,850 98 |
| CA0189751320 | 05-Feb-13 | Jan 26 - Feb 1, 2013 | 331,905 50 | 6,543 71 | 43,998 40 | 382,447 61 |

**Nortel Networks**
**Professional Fees Invoice Summary - Ernst & Young Inc.**
**January 14, 2009 to May 27, 2016**

| Invoice Number | Invoice Date | Service Period | Fee | Expenses | Taxes | Total |
|---|---|---|---|---|---|---|
| CA0189752531 | 11-Feb-13 | Feb 2 - Feb 8, 2013 | 246,213 00 | 13,419 38 | 33,752 21 | 293,384 59 |
| CA0189754093 | 19-Feb-13 | Feb 9 - Feb 15, 2013 | 291,725 00 | 10,445 06 | 39,282 11 | 341,452 17 |
| CA0189755147 | 25-Feb-13 | Feb 16 - 22, 2013 | 249,759 00 | 870 48 | 32,581 83 | 283,211 31 |
| CA0189757355 | 04-Mar-13 | Feb 23 - March 1, 2013 | 267,475 50 | 21,380 31 | 37,551 26 | 326,407 07 |
| CA0189758842 | 11-Mar-13 | March 2 - 8, 2013 | 346,057 50 | 2,214 19 | 45,275 32 | 393,547 01 |
| CA0189760572 | 19-Mar-13 | March 9 - 15, 2013 | 277,048 50 | 6,641 93 | 36,879 76 | 320,570 19 |
| CA0189761869 | 25-Mar-13 | March 16 - 22, 2013 | 372,260 50 | 1,907 64 | 48,641 86 | 422,810 00 |
| CA0189764713 | 02-Apr-13 | March 23 - 29, 2013 | 317,992 50 | 6,546 70 | 42,190 10 | 366,729 30 |
| CA0189765932 | 08-Apr-13 | March 30 - Apr 5, 2013 | 384,123 50 | 2,035 35 | 50,200 65 | 436,359 50 |
| CA0189768286 | 15-Apr-13 | Apr 6 - 12, 2013 | 385,422 50 | 8,935 22 | 51,266 50 | 445,624 22 |
| CA0189770283 | 22-Apr-13 | Apr 13 - 19, 2013 | 284,725 50 | 2,156 31 | 37,294 64 | 324,176 45 |
| CA0189772886 | 29-Apr-13 | Apr 20 - 26, 2013 | 318,785 00 | 3,276 03 | 41,867 93 | 363,928 96 |
| CA0189776439 | 06-May-13 | Apr 27 - May 3, 2013 | 249,700 50 | 1,737 86 | 32,686 99 | 284,125 35 |
| CA0189778252 | 13-May-13 | May 4 - 10, 2013 | 300,302 50 | 1,158 51 | 39,189 93 | 340,650 94 |
| CA0189780924 | 21-May-13 | May 11 - 17, 2013 | 272,888 00 | 9,443 50 | 36,703 10 | 319,034 60 |
| CA0189782510 | 27-May-13 | May 18 - 24, 2013 | 272,204 00 | 5,742 16 | 36,133 00 | 314,079 16 |
| CA0189784676 | 03-Jun-13 | May 25 - 31, 2013 | 419,062 50 | 3,303 37 | 54,907 56 | 477,273 43 |
| CA0189786651 | 11-Jun-13 | June 1 - 7, 2013 | 281,260 50 | 18,844 49 | 39,013 65 | 339,118 64 |
| CA0189788212 | 18-Jun-13 | June 8 - 14, 2013 | 223,242 00 | 313 31 | 29,062 19 | 252,617 50 |
| CA0189790506 | 24-Jun-13 | June 15 - 21, 2013 | 262,162 00 | 24,562 87 | 37,274 23 | 323,999 10 |
| CA0189792735 | 03-Jul-13 | June 22 - 28, 2013 | 241,548 50 | 7,869 16 | 32,424 30 | 281,841 96 |
| CA0189794278 | 08-Jul-13 | June 29 - July 5, 2013 | 145,245 00 | 604 80 | 18,960 47 | 164,810 27 |
| CA0189795260 | 16-Jul-13 | July 6 - 12, 2013 | 241,511 00 | 12,346 26 | 33,001 44 | 286,858 70 |
| CA0189796189 | 22-Jul-13 | July 13 - 19, 2013 | 250,128 50 | 1,308 63 | 32,686 83 | 284,123 96 |
| CA0189797109 | 29-Jul-13 | July 20 - 26, 2013 | 255,817 50 | 857 83 | 33,367 79 | 290,043 12 |
| CA0189798385 | 06-Aug-13 | July 27 - Aug 2, 2013 | 219,531 50 | 7,236 74 | 29,479 87 | 256,248 11 |
| CA0189799196 | 12-Aug-13 | Aug 3 - 9, 2013 | 228,013 00 | 3,595 96 | 30,109 16 | 261,718 12 |
| CA0189800232 | 20-Aug-13 | Aug 10 - 16, 2013 | 209,528 00 | 2,807 85 | 27,603 66 | 239,939 51 |
| CA0189801208 | 27-Aug-13 | Aug 17 - 23, 2013 | 224,843 50 | 4,403 42 | 29,802 10 | 259,049 02 |
| CA0189802557 | 04-Sep-13 | Aug 24 - 30, 2013 | 160,239 00 | - | 20,831 07 | 181,070 07 |
| CA0189803368 | 10-Sep-13 | Aug 31 - Sept 6, 2013 | 194,696 00 | 33,000 00 | 29,600 48 | 257,296 48 |
| CA0189804655 | 17-Sep-13 | Sept 7 - 13, 2013 | 179,599 50 | 2,334 25 | 23,651 39 | 205,585 14 |
| CA0189805827 | 25-Sep-13 | Sept 14 - 20, 2013 | 231,326 00 | 7,928 04 | 31,103 03 | 270,357 07 |
| CA0189807276 | 01-Oct-13 | Sept 21 - 27, 2013 | 300,455 00 | 1,048 77 | 39,195 49 | 340,699 26 |
| CA0189808433 | 08-Oct-13 | Sept 28 - Oct 4, 2013 | 260,658 00 | 4,409 01 | 34,458 71 | 299,525 72 |
| CA0189809455 | 16-Oct-13 | Oct 5 - 11, 2013 | 254,036 50 | - | 33,024 75 | 287,061 25 |
| CA0189810476 | 22-Oct-13 | Oct 12 - 18, 2013 | 224,201 00 | 5,695 23 | 29,886 51 | 259,782 74 |
| CA0189811689 | 28-Oct-13 | Oct 19 - 25, 2013 | 284,215 00 | 532 40 | 37,017 16 | 321,764 56 |
| CA0189813814 | 04-Nov-13 | Oct 26 - Nov 1, 2013 | 277,577 00 | 13,404 87 | 37,827 64 | 328,809 51 |
| CA0189814849 | 12-Nov-13 | Nov 2 - 8, 2013 | 194,286 00 | 1,638 55 | 25,470 19 | 221,394 74 |
| CA0189816058 | 20-Nov-13 | Nov 9 - 15, 2013 | 239,550 50 | 6,651 96 | 32,006 32 | 278,208 78 |
| CA0189816994 | 25-Nov-13 | Nov 16 - 22, 2013 | 300,921 50 | 5,693 42 | 39,859 94 | 346,474 86 |
| CA0189819613 | 03-Dec-13 | Nov 23 - 29, 2013 | 239,893 00 | 12,467 12 | 32,806 82 | 285,166 94 |
| CA0189820991 | 10-Dec-13 | Nov 30 - Dec 6, 2013 | 215,803 50 | 15,740 61 | 30,100 73 | 261,644 84 |
| CA0189822415 | 17-Dec-13 | Dec 7 - 13, 2013 | 209,180 00 | - | 27,193 40 | 236,373 40 |
| CA0189823625 | 23-Dec-13 | Dec 14 - 20, 2013 | 188,763 50 | 3,595 85 | 25,006 72 | 217,366 07 |
| CA0189824911 | 07-Jan-14 | Dec 21 - Jan 3, 2014 | 81,006 50 | 1,274 00 | 10,696 47 | 92,976 97 |
| CA0189825970 | 13-Jan-14 | Jan 4 - 10, 2014 | 221,889 50 | 19 99 | 28,848 18 | 250,757 27 |
| CA0189827127 | 21-Jan-14 | Jan 11 - 17, 2014 | 273,909 50 | 2,108 15 | 35,882 29 | 311,899 94 |
| CA0189827939 | 27-Jan-14 | Jan 18 - 24, 2014 | 365,731 00 | 1,743 20 | 47,771 65 | 415,245 85 |
| CA0189830211 | 05-Feb-14 | Jan 25 - 31, 2014 | 380,656 50 | 2,263 41 | 49,779 59 | 432,699 50 |
| CA0189831810 | 12-Feb-14 | Feb 1 - 7, 2014 | 247,403 00 | 10,458 88 | 33,522 04 | 291,383 92 |
| CA0189832878 | 19-Feb-14 | Feb 8 - 14, 2014 | 324,620 50 | 2,370 27 | 42,508 80 | 369,499 57 |
| CA0189833871 | 25-Feb-14 | Feb 15 - 21, 2014 | 253,899 00 | 12,701 19 | 34,658 02 | 301,258 21 |
| CA0189835746 | 04-Mar-14 | Feb 22 - 28, 2014 | 370,339 50 | 4,691 42 | 48,754 02 | 423,784 94 |
| CA0189837769 | 10-Mar-14 | Mar 1 - 7, 2014 | 253,538 00 | 1,228 94 | 33,119 70 | 287,886 64 |
| CA0189838741 | 17-Mar-14 | Mar 8 - 14, 2014 | 342,756 00 | 5,534 55 | 45,277 77 | 393,568 32 |
| CA0189840762 | 25-Mar-14 | Mar 15 - 21, 2014 | 257,786 50 | 2,847 36 | 33,882 40 | 294,516 26 |
| CA0189843248 | 01-Apr-14 | Mar 22 - 28, 2014 | 312,712 00 | 9,630 08 | 41,904 47 | 364,246 55 |
| CA0189845000 | 08-Apr-14 | Mar 29 - Apr 4, 2014 | 309,820 00 | 7,074 17 | 41,196 24 | 358,090 41 |
| CA0189846422 | 14-Apr-14 | Apr 5 - 11, 2014 | 312,454 00 | 3,437 41 | 41,065 88 | 356,957 29 |
| CA0189848172 | 22-Apr-14 | Apr 12 - 18, 2014 | 180,252 50 | 1,172 66 | 23,585 27 | 205,010 43 |
| CA0189850560 | 29-Apr-14 | Apr 19 - 25, 2014 | 235,265 50 | 303 30 | 30,623 94 | 266,192 74 |
| CA0189853452 | 06-May-14 | Apr 26 - May 2, 2014 | 336,774 50 | 7,990 33 | 44,819 43 | 389,584 26 |
| CA0189855704 | 13-May-14 | May 3 - 9, 2014 | 237,201 50 | 328 60 | 30,878 91 | 268,409 01 |
| CA0189857271 | 21-May-14 | May 10 - 16, 2014 | 259,965 00 | 16,158 06 | 35,896 00 | 312,019 06 |
| CA0189859058 | 27-May-14 | May 17 - 23, 2014 | 174,038 00 | 2,681 37 | 22,973 52 | 199,692 89 |
| CA0189862144 | 03-Jun-14 | May 24 - 30, 2014 | 234,899 50 | 1,497 75 | 30,731 64 | 267,128 89 |
| CA0189863669 | 09-Jun-14 | May 31 - June 6, 2014 | 192,872 50 | 7,008 65 | 25,984 55 | 225,865 70 |
| CA0189865742 | 16-Jun-14 | June 7 - 13, 2014 | 178,660 00 | 2,085 05 | 23,496 86 | 204,241 91 |

**Nortel Networks**
**Professional Fees Invoice Summary - Ernst & Young Inc.**
**January 14, 2009 to May 27, 2016**

| Invoice Number | Invoice Date | Service Period | Fee | Expenses | Taxes | Total |
|---|---|---|---|---|---|---|
| CA0189867884 | 24-Jun-14 | June 14 - 20, 2014 | 210,610 00 | 5,330 97 | 28,072 33 | 244,013 30 |
| CA0189869971 | 02-Jul-14 | June 21 - 27, 2014 | 181,186 70 | 14,717 23 | 25,467 51 | 221,371 44 |
| CA0189871396 | 07-Jul-14 | June 27 - July 4, 2014 | 110,346 00 | - | 14,344 98 | 124,690 98 |
| CA0189872592 | 14-Jul-14 | Jul 5- 11, 2014 | 249,963 50 | 1,241 39 | 32,656 64 | 283,861 53 |
| CA0189873653 | 21-Jul-14 | Jul 12 - 18, 2014 | 222,832 50 | 2,968 99 | 29,354 19 | 255,155 68 |
| CA0189875088 | 28-Jul-14 | Jul 19 - 25, 2014 | 182,864 50 | - | 23,772 39 | 206,636 89 |
| CA0189876525 | 05-Aug-14 | Jul 26 - Aug 1, 2014 | 126,817 00 | 3,919 60 | 16,995 76 | 147,732 36 |
| CA0189877393 | 12-Aug-14 | Aug 2 - 8, 2014 | 107,162 00 | - | 13,931 06 | 121,093 06 |
| CA0189878402 | 19-Aug-14 | Aug 9 - 15, 2014 | 105,193 50 | 25,241 75 | 16,956 58 | 147,391 83 |
| CA0189879377 | 26-Aug-14 | Aug 16 - 22, 2014 | 163,422 00 | 1,096 83 | 21,387 45 | 185,906 28 |
| CA0189880618 | 03-Sep-14 | Aug 23 - 29, 2014 | 104,611 50 | 2,199 94 | 13,885 49 | 120,696 93 |
| CA0189881584 | 09-Sep-14 | Aug 30 - Sept 5, 2014 | 198,588 00 | 2,734 65 | 26,171 94 | 227,494 59 |
| CA0189882908 | 16-Sep-14 | Sept 6 - 12, 2014 | 209,204 50 | 1,047 57 | 27,332 77 | 237,584 84 |
| CA0189883981 | 23-Sep-14 | Sept 13 - 19, 2014 | 163,931 50 | 2,010 37 | 21,572 44 | 187,514 31 |
| CA0189885533 | 30-Sep-14 | Sept 20 - 26, 2014 | 175,719 00 | 7,479 05 | 23,815 75 | 207,013 80 |
| CA0189886894 | 07-Oct-14 | Sept 27 - Oct 3, 2014 | 154,080 50 | 1,232 27 | 20,190 66 | 175,503 43 |
| CA0189888201 | 16-Oct-14 | Oct 4 - 10, 2014 | 121,634 00 | 13,191 25 | 17,527 28 | 152,352 53 |
| CA0189889602 | 23-Oct-14 | Oct 11 - 17, 2014 | 92,549 00 | 1,313 00 | 12,202 06 | 106,064 06 |
| CA0189890304 | 27-Oct-14 | Oct 18 - 24, 2014 | 164,739 50 | 710 25 | 21,508 47 | 186,958 22 |
| CA0189892025 | 03-Nov-14 | Oct 25 - 31, 2014 | 199,385 50 | 1,218 68 | 26,078 54 | 226,682 72 |
| CA0189893377 | 10-Nov-14 | Nov 1 - 7, 2014 | 169,142 50 | 6,246 67 | 22,800 59 | 198,189 76 |
| CA0189894546 | 17-Nov-14 | Nov 8 - 14, 2014 | 125,337 50 | 5,490 12 | 17,007 59 | 147,835 21 |
| CA0189895955 | 25-Nov-14 | Nov 15 - 21, 2014 | 83,731 00 | 3,926 56 | 11,395 48 | 99,053 04 |
| CA0189897741 | 01-Dec-14 | Nov 22 - 28, 2014 | 104,798 00 | 2,762 97 | 13,982 93 | 121,543 90 |
| CA0189899337 | 08-Dec-14 | Nov 29 - Dec 5, 2014 | 115,792 50 | 1,006 95 | 15,183 93 | 131,983 38 |
| CA0189900934 | 15-Dec-14 | Dec 6 - 12, 2014 | 115,906 00 | 2,560 42 | 15,400 63 | 133,867 05 |
| CA0189902629 | 22-Dec-14 | Dec 13 - 19, 2014 | 88,670 00 | 2,520 20 | 11,854 73 | 103,044 93 |
| CA0189903919 | 05-Jan-15 | Dec 20 - Jan 2, 2015 | 16,552 50 | 1,550 32 | 2,353 37 | 20,456 19 |
| CA0189905079 | 12-Jan-15 | Jan 3 - 9, 2015 | 137,245 00 | 2,490 32 | 18,165 59 | 157,900 91 |
| CA0189906429 | 19-Jan-15 | Jan 10-16, 2015 | 101,253 50 | 1,292 29 | 13,330 95 | 115,876 74 |
| CA0189907606 | 26-Jan-15 | Jan 17-23, 2015 | 91,706 00 | 1,266 16 | 12,086 38 | 105,058 54 |
| CA0189909429 | 02-Feb-15 | Jan 24-30, 2015 | 118,946 00 | 1,233 18 | 15,623 29 | 135,802 47 |
| CA0189911080 | 10-Feb-15 | Jan 31-Feb 6, 2015 | 105,711 00 | 280 16 | 13,778 85 | 119,770 01 |
| CA0189912437 | 17-Feb-15 | Feb 7 - 13, 2015 | 161,391 50 | 3,527 29 | 21,439 44 | 186,358 23 |
| CA0189913631 | 23-Feb-15 | Feb 14 - 20, 2015 | 118,955 00 | 11,991 53 | 17,023 05 | 147,969 58 |
| CA0189915966 | 02-Mar-15 | Feb 21 - 27, 2015 | 157,268 00 | 10,843 14 | 21,854 45 | 189,965 59 |
| CA0189917991 | 11-Mar-15 | Feb 28 - Mar 6, 2015 | 162,016 00 | 1,204 42 | 21,218 65 | 184,439 07 |
| CA0189919029 | 16-Mar-15 | Mar 7 - 13, 2015 | 149,986 00 | 902 55 | 19,615 51 | 170,504 06 |
| CA0189920608 | 23-Mar-15 | Mar 14 - 20, 2015 | 105,697 00 | 1,224 37 | 13,899 78 | 120,821 15 |
| CA0189923347 | 31-Mar-15 | Mar 21 - 27, 2015 | 125,998 50 | 4,134 91 | 16,917 34 | 147,050 75 |
| CA0189924605 | 06-Apr-15 | Mar 28 - Apr 3, 2015 | 92,365 50 | 981 65 | 12,135 13 | 105,482 28 |
| CA0189926413 | 13-Apr-15 | Apr 4 - 10, 2015 | 122,538 00 | 631 56 | 16,012 04 | 139,181 60 |
| CA0189928373 | 20-Apr-15 | Apr 11 - 17, 2015 | 151,918 00 | 2,067 83 | 20,018 16 | 174,003 99 |
| CA0189930480 | 27-Apr-15 | Apr 18 - 24, 2015 | 125,431 50 | - | 16,306 10 | 141,737 60 |
| CA0189933486 | 05-May-15 | Apr 25 - May 1, 2015 | 114,800 00 | 2,797 15 | 15,287 63 | 132,884 78 |
| CA0189935506 | 12-May-15 | May 2 - 8, 2015 | 106,218 50 | 1,361 88 | 13,985 45 | 121,565 83 |
| CA0189937281 | 20-May-15 | May 9 - 15, 2015 | 165,004 50 | 1,411 94 | 21,634 14 | 188,050 58 |
| CA0189938974 | 25-May-15 | May 16 - 22, 2015 | 83,027 00 | 226 12 | 10,822 91 | 94,076 03 |
| CA0189941846 | 02-Jun-15 | May 23 - 31, 2015 | 114,326 50 | 2,937 39 | 15,244 31 | 132,508 20 |
| CA0189943928 | 09-Jun-15 | May 30 - June 5, 2015 | 139,238 50 | 506 02 | 18,166 79 | 157,911 31 |
| CA0189945269 | 15-Jun-15 | June 6 - 12, 2015 | 124,049 50 | 660 65 | 16,212 32 | 140,922 47 |
| CA0189946983 | 22-Jun-15 | June 13 - 19, 2015 | 181,111 50 | 7,810 55 | 24,559 87 | 213,481 92 |
| CA0189948994 | 29-Jun-15 | June 20 - 26, 2015 | 137,781 50 | 2,780 97 | 18,273 12 | 158,835 59 |
| CA0189950324 | 07-Jul-15 | June 27 - July 3, 2015 | 54,372 50 | 12,398 70 | 8,680 26 | 75,451 46 |
| CA0189952557 | 14-Jul-15 | July 4 - 10, 2015 | 123,325 50 | - | 16,032 32 | 139,357 82 |
| CA0189953538 | 20-Jul-15 | July 11 - 17, 2015 | 139,951 50 | 1,099 23 | 18,336 59 | 159,387 32 |
| CA0189954516 | 27-Jul-15 | July 18 - 24, 2015 | 82,288 00 | 2,073 67 | 10,967 02 | 95,328 69 |
| CA0189955781 | 04-Aug-15 | July 25 - 31, 2015 | 145,626 50 | - | 18,931 45 | 164,557 95 |
| CA0189957127 | 10-Aug-15 | Aug 1 - 8, 2015 | 69,885 00 | 3,730 47 | 9,570 01 | 83,185 48 |
| CA0189958593 | 19-Aug-15 | Aug 8 - 14, 2015 | 116,986 00 | 67 45 | 15,216 95 | 132,270 40 |
| CA0189959325 | 24-Aug-15 | Aug 15 - 21, 2015 | 86,644 50 | (6,166 78) | 10,462 10 | 90,939 82 |
| CA0189960566 | 01-Sep-15 | Aug 22 - 28, 2015 | 90,512 50 | - | 11,766 63 | 102,279 13 |
| CA0189961709 | 08-Sep-15 | Aug 29 - Sept 4, 2015 | 89,592 50 | 7,909 62 | 12,675 28 | 110,177 40 |
| CA0189962668 | 14-Sep-15 | Sept 5 - 11, 2015 | 96,618 50 | 2,991 16 | 12,949 26 | 112,558 92 |
| CA0189963843 | 21-Sep-15 | Sept 12 - 18, 2015 | 120,364 50 | 2,955 44 | 16,031 59 | 139,351 53 |
| CA0189965038 | 28-Sep-15 | Sept 19 - 25, 2015 | 115,432 50 | 1,817 28 | 15,242 47 | 132,492 25 |
| CA0189966945 | 05-Oct-15 | Sept 26 - Oct 2, 2015 | 165,616 00 | 173 83 | 21,552 68 | 187,342 51 |
| CA0189968789 | 13-Oct-15 | Oct 3 - 9, 2015 | 116,422 50 | 1,301 64 | 15,304 14 | 133,028 28 |
| CA0189970150 | 20-Oct-15 | Oct 10 - 16, 2015 | 133,986 50 | 1,367 08 | 17,595 97 | 152,949 55 |
| CA0189971370 | 26-Oct-15 | Oct 17 - 23, 2015 | 165,124 00 | 1,612 93 | 21,675 80 | 188,412 73 |

**Nortel Networks**
**Professional Fees Invoice Summary - Ernst & Young Inc.**
**January 14, 2009 to May 27, 2016**

| Invoice Number | Invoice Date | Service Period | Fee | Expenses | Taxes | Total |
|---|---|---|---|---|---|---|
| CA0189971370 | 03-Nov-15 | Oct 24 - 30, 2015 | 154,833 00 | 7,355 29 | 21,084 48 | 183,272 77 |
| CA0189974943 | 10-Nov-15 | Oct 31 - Nov 6, 2015 | 127,271 50 | 11,034 17 | 17,979 74 | 156,285 41 |
| CA0189976069 | 17-Nov-15 | Nov 7 - 13, 2015 | 133,429 50 | 687 96 | 17,435 27 | 151,552 73 |
| CA0189977041 | 23-Nov-15 | Nov 14 - 20, 2015 | 98,929 00 | 8,287 67 | 13,938 17 | 121,154 84 |
| CA0189978331 | 01-Dec-15 | Nov 21 - 27, 2015 | 153,346 00 | 7,542 09 | 20,915 45 | 181,803 54 |
| CA0189980322 | 07-Dec-15 | Nov 28 - Dec 4, 2015 | 110,255 50 | 219 71 | 14,361 78 | 124,836 99 |
| CA0189981930 | 14-Dec-15 | Dec 5 - 11, 2015 | 113,464 00 | 682 58 | 14,839 06 | 128,985 64 |
| CA0189984548 | 21-Dec-15 | Dec 12 - 18, 2015 | 135,405 50 | 11,087 81 | 19,044 13 | 165,537 44 |
| CA0189986249 | 28-Dec-15 | Dec 19 - 25, 2015 | 57,663 50 | 2,662 21 | 7,842 34 | 68,168 05 |
| CA0189986403 | 11-Jan-16 | Dec 26 - Jan 8, 2016 | 113,962 50 | - | 14,815 13 | 128,777 63 |
| CA0189986412 | 19-Jan-16 | Jan 9 - 15, 2016 | 127,967 50 | | 16,635 78 | 144,603 28 |
| CA0189986422 | 26-Jan-16 | Jan 16 - 22, 2016 | 113,854 00 | | 14,801 02 | 128,655 02 |
| CA0189986474 | 02-Feb-16 | Jan 23 - 29, 2016 | 117,261 50 | - | 15,244 00 | 132,505 50 |
| CA12C500000005 | 09-Feb-16 | Jan 30 - Feb 5, 2016 | 108,762 50 | 7,761 13 | 15,148 08 | 131,671 71 |
| CA12C500000031 | 17-Feb-16 | Feb 6 - 12, 2016 | 152,142 00 | - | 19,778 47 | 171,920 47 |
| CA12C500000047 | 23-Feb-16 | Feb 13 - 19, 2016 | 131,895 50 | 2,246 76 | 17,438 50 | 151,580 76 |
| CA12C500000066 | 29-Feb-16 | Feb 20 - 26, 2016 | 144,209 00 | 835 12 | 18,855 74 | 163,899 86 |
| CA12C500000106 | 09-Mar-16 | Feb 27 - Mar 4, 2016 | 180,453 00 | 3,193 85 | 23,874 10 | 207,520 95 |
| CA12C500000120 | 15-Mar-16 | Mar 5 - 11, 2016 | 131,048 00 | 2,758 23 | 17,394 81 | 151,201 04 |
| CA12C500000163 | 23-Mar-16 | Mar 12 - 18, 2016 | 93,067 00 | 3,134 16 | 12,506 16 | 108,707 32 |
| CA12C500000192 | 28-Mar-16 | Mar 19 - 25, 2016 | 138,828 00 | 617 59 | 18,127 93 | 157,573 52 |
| CA12C500000222 | 05-Apr-16 | Mar 26 - Apr 1, 2016 | 136,241 50 | 9,545 15 | 18952 27 | 164,738 92 |
| CA12C500000251 | 12-Apr-16 | Apr 2 - 8, 2016 | 117,191 50 | 2,691 81 | 15,584 84 | 135,468 15 |
| CA12C500000283 | 19-Apr-16 | Apr 9 - 15, 2016 | 159,227 50 | 15,800 11 | 22,753 59 | 197,781 20 |
| CA12C500000308 | 26-Apr-16 | Apr 16 - 22, 2016 | 103,529 00 | 2,441 19 | 13,776 13 | 119,746 32 |
| CA12C500000337 | 03-May-16 | Apr 23 - 29, 2016 | 128,786 50 | 2,394 20 | 17,053 50 | 148,234 20 |
| CA12C500000386 | 11-May-16 | Apr 30 - May 6, 2016 | 115,229 50 | 1,522 51 | 15,177 77 | 131,929 78 |
| CA12C500000396 | 18-May-16 | May 7 - 13, 2016 | 84,619 50 | 634 61 | 11,083 04 | 96,337 15 |
| CA12C500000413 | 24-May-16 | May 14 - 20, 2016 | 108,102 00 | 2,779 72 | 14,414 63 | 125,296 35 |
| CA12C500000439 | 31-May-16 | May 21 - 27, 2016 | 87,400 00 | 427 11 | 11,417 53 | 99,244 64 |
| | | **Grand Total (CAD)** [1] | **108,001,743.95** | **3,106,906.11** | **11,864,171.90** | **122,972,821.96** |

(1) Total amount for invoice #CA0189469901 is CAD 549,240  Amount shown is net of pre-filing fees of CAD 236,908 plus taxes

## APPENDIX "E"

## SUMMARY OF WORK PERFORMED BY MONITOR'S PROFESSIONALS

## [ATTACHED]

**Nortel Networks**
**Professional Fees - Ernst & Young Inc (CAD)**
**January 14, 2009 - May 27, 2016**

| Name | Rank | Avg. Hourly Rate | Total Hours | Total Fees (CAD) | Significant Activities |
|------|------|-----------------:|------------:|-----------------:|------------------------|
| McDonald, Murray | Partner | 800 | 7,992 4 | 6,396,113 | See Monitor's Report |
| Hamilton, Sharon | Partner | 804 | 9,817 5 | 7,891,005 | See Monitor's Report |
| Armitage, Bill | Partner | 782 | 2,676 9 | 2,094,138 | Allocation and Claims Litigation |
| Raimondo, Vince | Senior Manager / Partner | 780 | 1,539 5 | 1,200,640 | Tax Reporting |
| Kruger, Sean | Partner | 812 | 1,410 4 | 1,144,659 | Allocation and Claims Litigation, Interim Funding |
| Dewis, Stephen | Partner | 752 | 782 5 | 588,390 | Asset Realization |
| Ahamed, Farouk | Partner | 725 | 724 5 | 525,263 | Asset Realization |
| Graham, John | Partner | 734 | 528 0 | 387,800 | Asset Realization |
| Healey, Lynn | Partner | 725 | 215 5 | 156,238 | Fourth Estate |
| O'Donnell, Paul | Partner | 749 | 109 5 | 82,025 | Operations |
| Scott, Ron | Partner | 761 | 66 0 | 50,198 | Mediation / Settlement |
| Partners < 50 hours | | 731 | 202 0 | 147,658 | |
| | **Total Partners** | **793** | **26,064.7** | **20,664,124** | |
| Ayres, Tom | Associate Partner | 674 | 13,642 2 | 9,197,650 | See Monitor's Report |
| Tuck, Andrew | Associate Partner | 614 | 1,057 2 | 649,116 | Cash Flow Reporting, Claims Resolution |
| Munro, Craig | Associate Partner | 611 | 434 2 | 265,210 | Asset Realization |
| Adams, Gregory | Associate Partner | 705 | 302 8 | 213,373 | Operations |
| Rogers, Rosanne | Associate Partner | 685 | 55 0 | 37,675 | Tax Reporting |
| Associate Partner < 50 hours | | 647 | 97 4 | 62,971 | |
| | **Total Associate Partner** | **669** | **15,588.8** | **10,425,995** | |
| Beekenkamp, Brent | Senior Manager / Associate Partner | 642 | 15,837 8 | 10,170,871 | See Monitor's Report |
| Yau, Edmund | Manager / Senior Manager | 568 | 11,558 9 | 6,565,567 | See Monitor's Report |
| Saldanha, David | Manager / Senior Manager | 567 | 8,278 5 | 4,697,915 | See Monitor's Report |
| Close, Lee | Senior Manager | 607 | 8,146 6 | 4,941,215 | See Monitor's Report |
| McGran, Carol | Senior Manager | 613 | 6,435 0 | 3,943,060 | See Monitor's Report |
| Schaus, Steve | Senior Manager | 569 | 3,848 5 | 2,188,517 | Asset Realization, Operations, Interim Funding |
| Scipio del Campo, Linda | Senior Manager | 572 | 1,762 3 | 1,007,416 | Operations, CCAA Administration |
| Rodgers, Calvin | Senior Manager | 622 | 384 3 | 239,063 | Tax Reporting |
| Houston, Mike | Senior Manager | 595 | 344 4 | 204,918 | Allocation and Claims Litigation |
| Kanabar, Rick | Senior Manager | 577 | 316 6 | 182,745 | Compensation Claims and HWT |
| Ballestrin, Mike | Senior Manager | 575 | 305 3 | 175,548 | Operations |
| Carriere, Martin | Senior Manager | 637 | 238 0 | 151,491 | Compensation Claims |
| Daoust, Hugo | Senior Manager | 614 | 233 9 | 143,651 | Compensation Claims |
| Ross, Andrew | Senior Manager | 675 | 166 5 | 112,380 | Tax Reporting |
| Getler, Richard | Senior Manager | 575 | 166 5 | 95,738 | Operations |
| Milo, Andrea | Senior Manager | 583 | 161 7 | 94,230 | Allocation and Claims Litigation, Tax Reporting |
| Plantevin, Sebastien | Senior Manager | 621 | 139 0 | 86,343 | Compensation Claims |
| Wark, Tony | Senior Manager | 576 | 139 0 | 79,998 | Allocation and Claims Litigation, Interim Funding |
| Lonard, Jeffrey | Senior Manager | 577 | 84 6 | 48,840 | Allocation and Claims Litigation, Interim Funding |
| Noble, Richard | Senior Manager | 555 | 81 5 | 45,250 | Operations |
| Horn, Ron | Senior Manager | 595 | 67 7 | 40,309 | Tax Reporting |
| Cardinal, Brian | Senior Manager | 592 | 63 9 | 37,855 | Tax Reporting |
| Clarkson, Andrew | Senior Manager | 577 | 62 4 | 35,994 | Interim Funding |
| Windle, Jamie | Senior Manager | 412 | 56 5 | 23,300 | CCAA Administration |
| Facey, Sarah | Senior Manager | 595 | 50 5 | 30,048 | Allocation and Claims Litigation |
| Senior Managers < 50 hours | | 594 | 379 1 | 225,314 | |
| | **Total Senior Manager** | **600** | **59,309.0** | **35,567,572** | |
| Hussain, Jodat | Manager / Senior Manager | 538 | 11,030 9 | 5,935,862 | See Monitor's Report |
| Ho, Alison | Manager | 469 | 6,839 5 | 3,207,141 | Compensation Claims, HWT |
| Fung, Karen | Manager / Senior Manager | 523 | 4,523 3 | 2,367,140 | Compensation Claims |
| Hibberd, Chris | Manager | 426 | 4,408 7 | 1,876,690 | Cash Flow Reporting, Operations |
| Cheung, Tiki | Manager / Senior Manager | 488 | 3,924 6 | 1,915,033 | Allocation and Claims Litigation |
| Mesaglio, Sarah | Manager | 442 | 3,476 7 | 1,537,580 | Claims Resolution, HWT |
| Chen, Truman | Senior / Manager | 450 | 3,325 4 | 1,495,825 | Claims Resolution |
| Greenwood, Andre | Manager / Senior Manager | 594 | 3,253 3 | 1,934,058 | Compensation Claims |
| Bramer, Rob | Manager | 434 | 2,947 5 | 1,278,075 | Allocation and Claims Litigation |
| Qadeer, Kashif | Senior / Manager | 439 | 2,946 5 | 1,292,600 | Claims Resolution |
| Paterson, Chris | Manager | 416 | 2,916 3 | 1,212,720 | Cash Flow Reporting, Operations |
| Pollack, Daniel | Manager | 476 | 2,534 0 | 1,206,787 | Claims Resolution |
| Shenoy, Praveer | Manager | 422 | 1,954 5 | 825,000 | Cash Flow Reporting, Claims Resolution, Fourth Estate |
| Portela, Juanita | Manager / Senior Manager | 417 | 1,764 7 | 735,723 | Fourth Estate |
| Ibraham, Ammar | Manager | 417 | 1,756 5 | 732,428 | Cash Flow Reporting, Allocation and Claims Litigation |
| Han, Fiona | Manager | 484 | 1,694 4 | 819,312 | Compensation Claims |
| Elkind, Karoline | Manager | 400 | 1,119 9 | 447,960 | Fourth Estate and Cash Flow Reporting |
| Salsbury, Karen | Manager / Senior Manager | 473 | 1,068 8 | 505,947 | Allocation and Claims Litigation, Tax Reporting |
| Tardif, Jocelyn | Manager | 502 | 895 6 | 449,354 | Compensation Claims |
| Saraiva, Genevieve | Manager | 450 | 890 4 | 400,663 | Claims Resolution |
| Scott, Carolyn | Manager | 432 | 709 7 | 306,300 | Allocation and Claims Litigation |

**Nortel Networks**
**Professional Fees - Ernst & Young Inc (CAD)**
**January 14, 2009 - May 27, 2016**

| Name | Rank | Avg. Hourly Rate | Total Hours | Total Fees (CAD) | Significant Activities |
|------|------|-----------------:|------------:|-----------------:|------------------------|
| Gagne, Pierre | Manager | 436 | 425 4 | 185,278 | Compensation Claims |
| Hillyard, Leslie | Manager | 430 | 405 0 | 174,020 | Allocation and Claims Litigation |
| Dhillon, Raj | Manager | 300 | 367 0 | 110,100 | Operations |
| Walter, Christine | Manager | 475 | 293 9 | 139,627 | Tax Reporting |
| Hitt, Edith | Senior/ Manager | 478 | 265 9 | 127,119 | Compensation Claims |
| Lam, Sandy | Manager | 450 | 240 5 | 108,225 | Allocation and Claims Litigation |
| Negoi, Roxana | Manager | 425 | 197 5 | 83,938 | Operations |
| Maharaj, Vishen | Manager | 487 | 162 5 | 79,068 | Allocation and Claims Litigation |
| Simpson, Andrew | Manager | 450 | 155 0 | 69,750 | Allocation and Claims Litigation |
| Kelland, Susie | Manager | 402 | 143 0 | 57,426 | Allocation and Claims Litigation |
| Bourke, Laura | Senior/ Manager | 469 | 142 0 | 66,628 | Allocation and Claims Litigation, Tax Reporting |
| Yuzhakov, Vladimir | Manager | 401 | 135 5 | 54,400 | Cash Flow Reporting |
| Ingram, Marie | Manager | 450 | 115 5 | 51,975 | Allocation and Claims Litigation |
| Chen, Ray | Manager | 495 | 114 0 | 56,430 | Allocation and Claims Litigation |
| Trayhern, Emma | Manager | 450 | 112 1 | 50,445 | Allocation and Claims Litigation |
| Buchanan, Adele | Manager | 450 | 108 0 | 48,600 | Allocation and Claims Litigation |
| Lebeouf, Lucie | Manager | 252 | 107 0 | 26,960 | Compensation Claims |
| Cheung, Peggy | Manager | 450 | 100 0 | 45,000 | Allocation and Claims Litigation |
| Zhang, Michelle | Manager | 450 | 96 7 | 43,515 | Allocation and Claims Litigation |
| Lit, Gurpreet | Senior/ Manager | 450 | 94 5 | 42,525 | Allocation and Claims Litigation |
| Che, Wayne | Manager | 410 | 84 0 | 34,425 | Allocation and Claims Litigation |
| Knight, Mat | Manager | 425 | 72 5 | 30,813 | Operations |
| Baer, Luke | Manager | 510 | 72 1 | 36,771 | Compensation Claims |
| Panou, Annie | Manager | 450 | 61 8 | 27,810 | Allocation and Claims Litigation |
| Shaw, Adrian | Manager | 417 | 56 5 | 23,575 | Claims Resolution |
| Chugh, Achin | Manager | 443 | 51 5 | 22,790 | Claims Resolution |
| Poole, Louise | Manager | 450 | 50 9 | 22,905 | Allocation and Claims Litigation |
| Managers < 50 hours | | 452 | 617 2 | 278,803 5 | |
| | **Total Manager** | **473** | **68,828.7** | **32,581,113** | |
| Mitchell, Andrew | Senior/ Manager | 436 | 824 0 | 358,910 | Asset Realization |
| Dang, Diane | Senior | 376 | 707 5 | 266,250 | Allocation and Claims Litigation |
| Joseph,Vivek | Senior | 395 | 393 5 | 155,433 | Allocation and Claims Litigation |
| Reiter, Stephen | Senior | 395 | 385 0 | 152,075 | Allocation and Claims Litigation |
| Telebar, Michelle | Senior | 427 | 362 3 | 154,536 | Tax Reporting |
| Payawal, Pamela | Senior | 375 | 291 8 | 109,425 | Operations |
| Duvinage, Christopher | Senior | 395 | 261 6 | 103,286 | Allocation and Claims Litigation |
| Gaya, Sahar | Senior/ Senior Manager | 393 | 247 5 | 97,205 | Allocation and Claims Litigation |
| Gevry, Isabelle | Senior | 153 | 245 5 | 37,620 | Compensation Claims |
| Sanghera, Pav | Senior | 428 | 238 4 | 102,044 | Allocation and Claims Litigation |
| Bamhare, Shingayi | Senior | 375 | 226 0 | 84,750 | Operations |
| Beaudoin, Brooks | Senior/ Manager | 403 | 215 3 | 86,734 | Allocation and Claims Litigation |
| MacDonald, Mary-Ann | Senior | 395 | 174 5 | 68,928 | Tax Reporting |
| Han, Vivian | Senior | 398 | 161 5 | 64,270 | Allocation and Claims Litigation |
| Liu, Coco | Senior | 375 | 131 0 | 49,125 | Operations |
| Keita, Aboubacar | Senior | 425 | 99 0 | 42,075 | HWT |
| Luthra, Rajiv | Senior | 363 | 82 6 | 30,025 | Claims Resolution |
| Brent, Gregory | Senior | 160 | 80 5 | 12,880 | Claims Resolution |
| Chan, Justina | Senior | 395 | 76 2 | 30,099 | Allocation and Claims Litigation |
| Ashton, Kat | Senior | 425 | 69 3 | 29,453 | Tax Reporting |
| Nigrinis, Andrew | Senior | 410 | 66 2 | 27,148 | Allocation and Claims Litigation |
| Bastien, Mai | Senior | 425 | 59 4 | 25,245 | Tax Reporting |
| Valentino, Mirella | Senior | 275 | 57 7 | 15,880 | Tax Reporting |
| Seniors < 50 hours | | 356 | 744 0 | 264,795 | |
| | **Total Senior** | **382** | **6,200.3** | **2,368,187** | |
| Sangha, Kinder | Para Professional | 262 | 10,159 3 | 2,660,378 | Compensation Claims, HWT, Hardship |
| Ferguson, Rob | Para Professional | 265 | 5,052 4 | 1,339,802 | Compensation Claims |
| Mazzulla, Franca | Para Professional | 270 | 2,670 0 | 720,177 | Compensation Claims |
| Jackson, Marie | Para Professional | 270 | 2,123 7 | 572,587 | Compensation Claims |
| Bear, Cam | Para Professional | 266 | 1,662 3 | 441,612 | Compensation Claims |
| Hatful, Donna | Para Professional | 260 | 684 2 | 177,640 | Claims Resolution |
| Kan, Phillip | Para Professional | 271 | 246 6 | 66,836 | Claims Resolution |
| Carandang, Tess | Para Professional | 268 | 68 4 | 18,297 | Compensation Claims, HWT |
| | **Total Para Professional** | **265** | **22,666.9** | **5,997,328** | |
| | **Total Staff/Assistant** | **282** | **1,407.0** | **397,427** | |
| | **Grand Total (CAD)** | **540** | **200,065.4** | **108,001,744** | |

## APPENDIX "F"

## NORTEL GROUP CORPORATE CHART

### [ATTACHED]

Entity Structure as of January 5, 2009

**APPENDIX "G"**

**EXCERPTS FROM CERTAIN MONITOR'S REPORTS RE: INCREASING COSTS AND DELAYS OF ALLOCATION AND CLAIMS LITIGATION**

**[ATTACHED]**

Court File No. 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### NINETY-SEVENTH REPORT OF THE MONITOR
### DATED AUGUST 26, 2013

## INTRODUCTION

1.    On January 14, 2009, Nortel Networks Corporation ("**NNC**" and collectively with all its subsidiaries "**Nortel**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "**Canadian Debtors**") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("**CCAA**"). Pursuant to the Order of this Court dated January 14, 2009, as amended and restated (the "**Initial Order**"), Ernst & Young Inc. was appointed as the Monitor of the Canadian Debtors (the "**Monitor**") in the CCAA proceedings.

2.    Nortel Networks Inc. ("**NNI**") and certain of its U.S. subsidiaries and affiliates concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the "**Code**") in the United States Bankruptcy Court for the District of Delaware (the "**US Court**" and with this Court, the "**Courts**") on January 14, 2009 (the "**Chapter 11

52

- 7 -

17.    In late July, the Core Parties began to identify both their own trial witnesses and affiants as well as witnesses to be examined or deposed.[1]  Following the exchange of lists, the Core Parties worked to reduce the number of deponents with varied success. At present, it is anticipated there will be at least 103 depositions/examinations, 58 of which are expected to last one day and 45 of which are expected to last two days. It is likely depositions/examinations will take place in North America, Europe and (potentially) Asia.  There are also four third party examinations currently scheduled in London, and one that has been noticed to take place in Washington.

18.    In light of the extensive production and other discovery related work required to be undertaken by the Canadian Debtors and the Monitor to date, restructuring costs since April 2013 have significantly exceeded the amounts forecast in the Ninety-Fourth Report of the Monitor dated April 25, 2013. The Monitor anticipates that restructuring costs will continue to significantly exceed previously forecast amounts for the duration of the pre-trial period in light of the scope and extent of production required and the significant number of depositions noted above.  The Monitor is cognizant of the direct and indirect cost to creditors of the Canadian Estate of any delays in the Litigation Timetable and has sought, through the Stipulation and Deposition Protocol, to try to bring more certainty to the discovery process by limiting the challenges to production already made, curtailing the potentially endless requests for further document production and bringing greater orderliness to the deposition process.

---

[1] At the same time as agreeing to the Consolidated Document Requests in mid June, the parties agreed to a Consolidated Set of Interrogatories (the "**Consolidated Interrogatories**") which required parties to identify, among other things, persons associated with them who were thought to be most knowledgeable about various matters at issue. In late June and through July the parties delivered their responses to the Consolidated Interrogatories.

55

- 10 -

20.    The Stipulation is subject to the amended Litigation Timetable being approved by both this Court and the US Court. The amended Litigation Timetable, Stipulation and Deposition Protocol were all submitted to the US Court for approval on the morning of August 26, 2013.

## MONITOR'S OBSERVATIONS AND RECOMMENDATION

21.    The EMEA Debtors state in their factum delivered in connection with the EMEA Extension Motion that the Allocation Dispute "...is, without doubt, worthy of the 'Cadillac of procedure'."

22.    Although it need not be debated at present, the Monitor does not agree with this premise. The Allocation Dispute, no matter how many billions of dollars are at stake, takes place in the insolvency context within which there is significant precedent for truncated procedure. In addition, all litigation, no matter the size, is subject to the principle of proportionality, particularly so in the insolvency context.

23.    In the negotiations to date pertaining to production and procedure generally, the Monitor and the Canadian Debtors have been mindful of these principles and have attempted to negotiate and implement a procedure that gives effect to them to the extent possible, and to otherwise advance the litigation process in as an efficient and cost-effective manner as possible.[3]

---

[3] Such efforts, after unsuccessfully advocating for limits to be placed on the number of custodians, depositions and trial witnesses, have included: extensive and ongoing communication among the Estates in an attempt to solve problems before they become serious disputes, the negotiated streamlining of document requests and interrogatories into consolidated requests as noted above, the negotiated reduction in the number of electronic custodian records processed, agreed upon document search terms with the other Estates, large scale document review teams made up

56

- 11 -

24.   Notwithstanding these efforts, the document production, review and related discovery efforts required of the Core Parties to date, and what is expected for the balance of the pre-trial period, are substantial and burdensome.[4]

25.   The Monitor remains concerned about the significant costs occasioned by production and discovery efforts to date. Although extending the Litigation Timetable as contemplated by the Stipulation increases the time period during which such costs will be incurred, the production and discovery related covenants agreed to in the Stipulation will assist in containing the production and discovery process and achieving the overall goal of efficiency. On that basis, the Monitor is prepared to consent to the extended Litigation Timetable contemplated by the Stipulation.

All of which is respectfully submitted this 26th day of August, 2013.

**ERNST & YOUNG INC.**
**In its capacity as Monitor of the Canadian Debtors**
**and not in its personal capacity**

Per:

Murray A. McDonald
President
\6239396

---

largely of relatively low cost contract reviewers, the deployment of sophisticated document review technology and co-ordination with other Canadian interests in an attempt to minimize overlapping efforts.

[4] For example, further production sought by the EMEA Debtors from third parties, if granted and or pursued to the extent of current outstanding requests, could add significantly to this burden.

# BLUE SHEET

Court File No. 09-CL-7950

### ONTARIO
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### NINETY-EIGHTH REPORT OF THE MONITOR
### DATED OCTOBER 22, 2013

## INTRODUCTION

1.    On January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC" and collectively with all its subsidiaries "Nortel" or the "Company"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation ("NNTC"), Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "Applicants") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("CCAA"). Pursuant to the Order of this Court dated January 14, 2009, as amended and restated (the "Initial Order"), Ernst & Young Inc. was appointed as the Monitor of the Applicants (the "Monitor") in the CCAA proceedings. The stay of proceedings was extended to October 31, 2013 by this Court in its Order dated May 1, 2013.

2.    Nortel Networks Inc. ("NNI") and certain of its U.S. subsidiaries and affiliates concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") on January 14, 2009 (the "Chapter 11 Proceedings"). As required by U.S. law, an official committee of unsecured creditors (the "Committee") was established in January, 2009.

26. As described in greater detail below, the discovery process in connection with the Allocation Dispute to date has entailed significant efforts on the part of the Applicants and Monitor. These efforts were greater than anticipated and resulted in increased costs being incurred by the Applicants through the period to meet their discovery obligations, effectively participate in the discovery process and advance the interests of the Canadian estate. The Applicants and Monitor have sought to minimize discovery related costs to the extent possible by engaging a third party contractor to assist in document review and production and a third party document management and production services firm. This has permitted the use of large scale document review teams comprised of relatively low cost contract reviewers as well as the deployment of sophisticated document review technology to assist in the discovery process. This approach has significantly reduced advisor fees relative to what otherwise would have been the case. In spite of these efforts, restructuring costs taken as a whole through the period were approximately $10.9 million higher than forecast as a result of the extensive scope of the discovery process to date.

27. In addition, while Restructuring Costs - Advisor Fees for the period April 14, 2013 to October 12, 2013 have been consistent with the April 14th Forecast, the run rate over the past several weeks has exceeded forecast as activities related to the Allocation Dispute have accelerated, particularly the commencement of depositions. The new run rate for Restructuring Costs - Advisor Fees included in the October 13th Forecast have been adjusted to reflect this higher rate of activity.

28. Based on an analysis prepared by the Monitor, the Applicants have sufficient cash resources to fund the CCAA proceedings through January 31, 2014.

## STATUS OF THE APPLICANTS' CLAIMS PROCESS AND CROSS-BORDER CLAIMS MATTERS

29. Attached as Appendix "D" is an update as to the status of claims filed against the Applicants as of October 12, 2013 pursuant to the Claims Procedure Order (the "Claims Report") (which does not include claims filed pursuant to the Compensation Claims

Protocol, Amended Litigation Schedule, Deposition Protocol and amendments to certain of the foregoing documents;

f) reviewing and considering the approximately 2.8 million documents produced in the Allocation Dispute to date;

g) dealing with issues relating to the taking of evidence from foreign witnesses, including the issuance of various letters rogatory/letters of request for over 15 witnesses; and

h) dealing with subpoenas and summons issued in the United States for production and discovery from third parties and non-party production motions brought in the CCAA proceedings.

111. At present, the Applicants and Monitor are principally engaged in the deposition phase of the discovery process which began in late September. In excess of 110 depositions/examinations are anticipated to be conducted through the deposition period currently scheduled to run through December 13, 2013. Thirty-three depositions had taken place through the week ended October 18, 2013. Depositions are expected to take place in at least nine different countries in North America, Europe and Asia with most taking place in Toronto, New York and London.

112. Throughout the discovery process, the Applicants and Monitor have been mindful of the Courts' direction for the Allocation Dispute to proceed in a timely fashion, the potential for delays in the Litigation Timetable that could be occasioned by time-consuming procedural motions and the significant costs associated with both the document production process (and the particular burden on the Applicants in this regard as the largest custodian of documents) and the deposition process. To this end, the Applicants and Monitor have sought to advance the discovery process in the most efficient and cost-effective manner possible. These efforts, many of which have previously been reported to this Court, have included:

a) negotiating to reduce in excess of 1,000 individual document requests by the Core Parties to a list of 140 consolidated requests (as reflected in the Consolidated Document Requests) that govern production by all Core Parties;

b) negotiating to reduce the number of "custodians" (current or former Nortel employees whose electronic records would be located, processed and searched for documents potentially responsive to the Consolidated Document Requests) to 89. By way of comparison, the EMEA Debtors had initially identified over 140 custodians themselves;

c) negotiating to reduce the number of witnesses to be deposed and agreeing to a coordinated Deposition Protocol for scheduling and conducting the depositions and third party examinations noticed by the Core Parties;

d) bringing more certainty to the discovery process by reaching agreements limiting challenges to productions already made, curtailing potentially endless requests for further document production and bringing greater order to the deposition process;

e) extensive and ongoing communications with the other Core Parties, principally the U.S. Debtors and the EMEA Debtors, in an attempt to address discovery-related issues before they become serious disputes;

f) use of large scale document review teams made up of relatively low cost contract reviewers;

g) deployment of sophisticated document review technology;

h) use of a uniform court reporting service for all depositions at discounted rates;

i) extensive use of internet streaming technology for depositions; and

j) co-ordinating with other Canadian interests in the Allocation Dispute in an attempt to minimize overlapping efforts.

113. Although these efforts have assisted in circumscribing the scope of the discovery process relative to certain of the Core Parties' initial requests and reducing related costs to the extent possible, the undertaking of the Applicants and Monitor to respond to even this reduced scope is massive and unprecedented in the context of a CCAA proceeding. As described at paragraph 18 of the Ninety-Seventh Report, in light of the extensive efforts required of the Applicants and Monitor in connection with the discovery process, restructuring costs (including costs for third party document review and production, document management and expert fees) through August 26, 2013 had significantly exceeded forecast amounts and the Monitor anticipates such restructuring costs will continue to significantly exceed previously forecast amounts through the duration of the discovery process. The Applicants have revised their restructuring cost forecast for the Forecast Period based on actual results through the discovery process to date but it is possible that actual restructuring costs may exceed forecast amounts depending on the progress of the discovery process and the Allocation Dispute. Among other things, further delays to the Litigation Timetable, changes to the deposition schedule, additional depositions or further production may increase restructuring costs relative to forecast.

114. The Monitor remains concerned about the significant costs occasioned by discovery efforts to date and will continue to work to streamline and advance the discovery process and the Allocation Dispute in the most efficient and cost effective manner possible having regard to the overarching objective of successfully advancing the interests of the Canadian estate in the Allocation Dispute.

## TERMINATION OF SHARE REGISTER AND TRANSFER AGENT SERVICES

115. For reasons fully described in the Ninety-Fourth Report, NNC and NNL terminated their contractual relationship with Computershare Trust Company of Canada ("Computershare") for the provision of Transfer & Registry Services effective June 28, 2013.

116. As a result of the termination of these services, NNC and NNL no longer have the ability to maintain their share registers and as a result their share registers have been closed.

**BLUE SHEET**

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**ONE-HUNDREDTH REPORT OF THE MONITOR
DATED NOVEMBER 14, 2013**

## INTRODUCTION

1.  On January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC" and
    collectively with all its subsidiaries "Nortel" or the "Company"), Nortel Networks Limited
    ("NNL"), Nortel Networks Technology Corporation ("NNTC"), Nortel Networks
    International Corporation and Nortel Networks Global Corporation (collectively the
    "Applicants") filed for and obtained protection under the *Companies' Creditors
    Arrangement Act* ("CCAA"). Pursuant to the Order of this Court dated January 14, 2009,
    as amended and restated (the "Initial Order"), Ernst & Young Inc. was appointed as the
    Monitor of the Applicants (the "Monitor") in the CCAA proceedings. The stay of
    proceedings has been extended to April 1, 2014.

2.  Nortel Networks Inc. ("NNI") and certain of its U.S. subsidiaries and affiliates
    concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the
    "Code") in the United States Bankruptcy Court for the District of Delaware (the "U.S.
    Court") on January 14, 2009 (the "Chapter 11 Proceedings"). As required by U.S. law, an
    official committee of unsecured creditors (the "Committee") was established in January,
    2009.

alternatively they may file a joinder to indicate support of one or more of the proposals on or before January 27, 2014.

28.  In the event that the Courts are inclined to grant the relief requested and set a start date for the Trial that is after April 28, 2014, the proposed Order contemplates that the Moving Parties may agree to adjustments in the timetable (provided that the start date does not change) in order to use any additional time. Once the proposed schedule is presented, other Core Parties will have a period of time to object to any changes which will be then either be resolved consensually or through order of the Court(s).

29.  The Monitor and Applicants remain cognizant of the expressed desire of the Court that the parties adhere to the current timetable and resolve procedural differences without the significant time and expense required in seeking court direction. Although a delay in the commencement of the Trial at this point is not the first choice of the Monitor and the Applicants, they are hopeful the extra time will greatly assist in reducing the time and extent of the Representative Witness depositions as well as provide the parties with sufficient time to work towards resolution of remaining disputes related to the litigation process.

30.  A significant term of the proposed amendments is the agreement by the parties to commit to meet and confer to discuss remaining deposition disputes as well as trial logistics. The Monitor and the Applicants believe that it is critical that imminent progress be made regarding the proposal for the conduct of the trial, including not insignificantly, the Parties' proposed length of the trial. The Monitor and the Applicants understand that any proposals will be subject to the review and approval of the Courts.

**MONITOR'S ANALYSIS AND RECOMMENDATIONS**

31.  The Monitor remains concerned about the significant costs occasioned by discovery efforts to date and will continue to work to streamline and advance the discovery process and Allocation Dispute in the most efficient and cost effective manner possible having regard to the overarching objective of successfully advancing the interests of the Canadian estate

in the Allocation Dispute. Although the proposed amendments to the Allocation Dispute Orders contemplate a postponed commencement of the Trial, the Monitor is hopeful the added time will reduce the number of ongoing disputes and allow for, in particular, the Representative Witness examinations to be conducted in a more streamlined and efficient fashion.

32.  For the reasons outlined in this One-Hundredth Report, the Monitor, jointly with the Applicants, U.S. Debtors, EMEA Debtors/Joint Administrators, UK Pension Claimants and CCC request the relief set out herein.

All of which is respectfully submitted this 14th day of November, 2013.

**ERNST & YOUNG INC.**
**In its capacity as Monitor of the Applicants**
**and not in its personal capacity**

Per:

**Murray A. McDonald**
**President**

# BLUE SHEET

\

Court File No. 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS*
*ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

**ONE-HUNDRED FIRST REPORT OF THE MONITOR**
**DATED JANUARY 3, 2014**

## INTRODUCTION

1.    On January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC" and
collectively with all its subsidiaries "Nortel" or the "Company"), Nortel Networks Limited
("NNL"), Nortel Networks Technology Corporation ("NNTC"), Nortel Networks
International Corporation and Nortel Networks Global Corporation (collectively the
"Applicants" or "Canadian Debtors") filed for and obtained protection under the
*Companies' Creditors Arrangement Act* ("CCAA"). Pursuant to the Order of this Court
dated January 14, 2009, as amended and restated (the "Initial Order"), Ernst & Young Inc.
was appointed as the Monitor of the Applicants (the "Monitor") in the CCAA proceedings.
The stay of proceedings has been extended to April 1, 2014.

2.    Nortel Networks Inc. ("NNI") and certain of its U.S. subsidiaries and affiliates
concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the
"Code") in the United States Bankruptcy Court for the District of Delaware (the "U.S.
Court") on January 14, 2009 (the "Chapter 11 Proceedings"). As required by U.S. law, an
official committee of unsecured creditors (the "Committee") was established in January,
2009.

Debtors about the breadth of topics sent to them, the topics noticed to the Canadian Debtors by the U.S. Debtors and EMEA Debtors are very broad in nature as well. However, rather than dismiss them entirely, the Monitor and Canadian Debtors have attempted to provide a workable alternative through the December 21 Email.

46.  The Monitor and Canadian Debtors are of course concerned with the cost of this entire process.  They have made suggestions, since the beginning of the discovery process, to limit discovery.  These suggestions were rejected by the other Core Parties.  Subsequently, the Monitor and Canadian Debtors have also made further cost saving suggestions, including the cancellation of certain fact witness depositions and third party depositions, which would have saved significant cost.  For instance, the Monitor and Canadian Debtors did not believe it was necessary to pursue the letters rogatory process for the production of documents by and examination of numerous third parties in Europe which was initiated and pursued by the U.S. Debtors. Similarly, the Monitor and Canadian Debtors suggested the cancellation of a trip to Hong Kong for the deposition of one tax witness[13] (when approximately 20 other tax witnesses had been or were going to be deposed).  All of these suggestions have similarly been rejected.

47.  Although the Monitor and Canadian Debtors are prepared to curtail the process to make it as cost efficient as possible, it is the Monitor's and Canadian Debtors' view that the cancellation of Representative Party Discovery in its entirety does not result in more efficiency or save time in the overall trial process.  Further, it is the Monitor and Canadian Debtors' view that conducting Representative Party Discovery (either in writing, as recently proposed, or through 5 days of depositions taking place entirely in 2 North American cities)[14] is not a disproportionate burden or cost in the context of this trial and serves a distinct and important purpose.

48.  Starting with the original Discovery Plan through to the November 19 Order, Representative Party Discovery has always been contemplated under the pre-trial process

---

[13] This position was supported by the U.S. Debtors.

[14] The contemplated time period of Representative Party Discovery should be weighed in contrast to the approximately 90 days of fact witness depositions that took place in 15 cities in North America, Europe and Asia.

# APPENDIX "H"

## LITIGATION TIMETABLE AND DISCOVERY PLAN AND RELATED ORDERS

### [ATTACHED]

File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. JUSTICE | ) | WEDNESDAY, THE 3RD DAY OF |
| | ) | |
| MORAWETZ | ) | APRIL, 2013 |
| | ) | |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

## AMENDED AND RESTATED ORDER
### (Allocation Protocol)

**THIS MOTION** made by Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "**Canadian Debtors**) for an Order approving an allocation protocol in substantially the form attached as Schedule "A" to their Notice of Motion dated May 31, 2011 was heard June 7, 2011 and March 7, 2013.

**ON READING** the Affidavit of Michael Joseph Lang sworn June 1, 2011 and the exhibits thereto, the Compendium of the Canadian Debtors, the Sixty-Seventh Report of Ernst & Young Inc. in its capacity as Court-appointed Monitor (the "**Monitor**") dated June 2, 2011 and the appendices thereto, the Affidavit of Natasha De Cicco sworn April 25, 2011 and the exhibits thereto, the Affidavit of Kevin

- 2 -

Francis Lloyd sworn May 31, 2011 and the exhibits thereto, the Compendium of the Canadian Creditors Committee (the "**CCC**"), the Affidavit of Tai-Heng Cheng dated May 31, 2011 and the exhibits thereto, the Affidavit of Natasha De Cicco sworn June 3, 2011 and the exhibits thereto, the Affidavit of David M. Lindsey sworn June 3, 2011 and the exhibits thereto, the Affidavit of Natasha DeCicco sworn June 6, 2011 and the exhibits thereto, the Second Affidavit of Tai-Heng Cheng sworn June 6, 2011, the Affidavit of Debra Bilous sworn June 6, 2011 and the exhibits thereto, the Second Affidavit of David M. Lindsey sworn June 7, 2011, the Affidavit of Geoffrey Boddy sworn June 1, 2011 and the exhibits thereto and the Affidavit of Sara-Ann Van Allen sworn March 4, 2013 and the exhibits thereto and on hearing the submissions of counsel for the Canadian Debtors, the Monitor, the members of the CCC, the Joint Administrators of Nortel Networks UK Limited and the other EMEA Debtors, the Trustee of the Nortel Networks UK Pension Trust Limited and the Board of the UK Pension Protection Fund (collectively, the "**UK Pension Parties**"), the former directors and officers of Nortel Networks Corporation and Nortel Networks Limited, Nortel Networks Inc. and certain of its affiliates in US Chapter 11 bankruptcy proceedings (collectively, the "**US Debtors**"), Wilmington Trust, National Association, the Bank of New York Mellon, the Informal Nortel Noteholders Group, the Official Committee of Unsecured Creditors of the US Debtors, and Law Debenture Trust Company of New York, this Court having issued an Endorsement dated March 8, 2013 and Reasons for Decision dated this day:

1.      **THIS COURT ORDERS** that the allocation protocol in the form appended as Schedule "A" to this Order (the "**Allocation Protocol**") is approved. Capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Allocation Protocol.

- 3 -

2.    **THIS COURT ORDERS** that in addition to the Core Parties named in the Allocation Protocol, the Core Parties will include any additional party designated as a Core Party by Orders of both this Honourable Court and the US Court.

3.    **THIS COURT DIRECTS** that:

      a.  the trial under the Allocation Protocol will commence on January 6, 2014; and

      b.  the trial will commence with the allocation issues and continue thereafter with the EMEA Canadian Claims and the UK Pension Canadian Claims.

4.    **THIS COURT ORDERS** that the Canadian Debtors and the Monitor are authorized to take all steps necessary to carry out and give effect to the terms of the Allocation Protocol and this Order.

5.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Canadian Debtors, the Monitor and their respective agents in carrying out the terms of this Order.   All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Canadian Debtors and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Canadian Debtors and the Monitor and their respective agents in carrying out the terms of this Order.

6.    **THIS COURT ORDERS** that each of the Canadian Debtors and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body,

- 4 -

wherever located, for the recognition of this Order and for assistance in carrying out the terms of this

Order.

ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO

MAY 3 0 2013

Schedule "A"

## ALLOCATION PROTOCOL

1. <u>Purpose</u>. The purpose of this Allocation Protocol is for the U.S. and Canadian Courts to set forth binding procedures for determining the allocation of the Sale Proceeds among the Selling Debtors[1] ("<u>Allocation</u>," and any hearing regarding same, an "<u>Allocation Protocol Hearing</u>," and any discovery regarding same, "<u>Allocation Protocol Discovery</u>"). Subject to paragraphs 5 and 6 hereof, creditor claims, including but not limited to intercompany claims by and between any Nortel entities, their representatives or successors ("<u>Intercompany Claims</u>") are not governed by this Allocation Protocol. All Intercompany Claims between the U.S. Debtors and Canadian Debtors shall be determined in accordance with the Cross-Border Protocol and the Cross-Border Claims Protocol. All other Intercompany Claims shall be determined in accordance with the claims reconciliation process established by the Nortel entity against which any Intercompany Claim is made.

2. <u>Participants</u>. Each of the Selling Debtors, the Committee, the Bondholder Group, the Monitor, the Joint Administrators, the CCC, the Indenture Trustees, the UK Pension Claimants, and the Directors and Officers and such other parties as the U.S. Court and the Canadian Court may direct (collectively, the "<u>Core Parties</u>," and each individually, a "<u>Core Party</u>") and their authorized representatives shall have the right to participate fully in (a) any and all Allocation Protocol Hearings before the U.S. and Canadian Courts arising under or relating to this Allocation Protocol, and (b) any and all Allocation Protocol Discovery conducted in connection therewith. The foregoing is without prejudice to (x) the right of any other party in interest to file written submissions in support of or in opposition to any theory of allocation advanced at any Allocation Protocol Hearing before the U.S. and Canadian Courts or request permission to become a Core Party and fully participate in the foregoing, which request shall be made by motion on notice to the Core Parties for cause shown to both the U.S. and Canadian Courts, or (y) the power of the U.S. and Canadian Courts to adopt procedures to manage the Allocation Protocol Hearings and related proceedings.

3. <u>Cross-Border Protocol</u>. Any and all Allocation Protocol Hearings shall proceed in accordance with the Cross-Border Protocol, unless otherwise ordered by the U.S. and Canadian Courts.

4. <u>Procedures</u>. The U.S. and Canadian Courts will determine the procedures that will govern the Allocation Protocol Hearings and related Allocation Protocol Discovery. After hearing the procedural submissions of the Core Parties and taking into account the discovery already conducted to date in connection with the non-binding mediation sessions, the Allocation Protocol Discovery and Allocation Protocol Hearings shall proceed in an expeditious manner.

    a. <u>Pleadings</u>. The Core Parties will exchange pleadings, which they shall be entitled to amend, from time to time, in accordance with the usual practice of the U.S. and

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in Appendix A.

Canadian Courts. There shall be no restriction on the ability of any Core Party to advance or oppose any theory of allocation.

b. <u>Fact Discovery</u>. The U.S. and Canadian Courts will facilitate the Core Parties' exchange of fact discovery by determining the following:

    i. the deadline for, and acceptable manners of service of, reasonable requests for the production of non-privileged documents on any other Core Party;

    ii. the deadline for objections to any Core Party's document requests;

    iii. the deadline for identification of fact witnesses and number of fact witnesses allowed;

    iv. the process for compelling attendance of fact witnesses at depositions; and

    v. the deadline for completion of depositions, the number of depositions permitted, and the location of and time allowed for such depositions for each Core Party.

c. <u>Experts</u>. The U.S. and Canadian Courts shall facilitate expert discovery by determining the following:

    i. the deadline for and format of expert reports (including exhibits);

    ii. the deadline for and format of rebuttal expert reports (including exhibits); and

    iii. the deadline for completion of expert depositions and the time allowed for such expert deposition.

d. <u>Joint Conferences</u>. The U.S. and Canadian Courts shall be available for joint conferences to resolve any discovery disputes among the Core Parties and to receive updates as to the status of the proceedings. The U.S. and Canadian courts will determine when joint conferences may be set.

e. <u>Joint Hearings</u>. The U.S. and Canadian Courts shall have joint hearings on the merits. The U.S. and Canadian Courts shall determine:

    i. the rules governing the joint hearing on the merits;

    ii. the date(s) for an evidentiary hearing on the merits (after the close of fact and expert discovery and after the completion of written submissions) and the rules governing such hearing, during which opening and closing statements shall be made and cross-examination and redirect examination of fact and expert witnesses shall take place; and

    iii. the procedure for requesting or setting joint conferences as necessary to resolve any discovery disputes among the Core Parties or to receive updates to the status of the proceedings.

    f.   Written Submissions. The U.S. and Canadian Courts will determine:

        i.   the deadline for and format of opening submissions (including exhibits);

        ii.   the deadline for and format of fact affidavits, if any, to accompany the opening submissions, which shall constitute the direct testimony of each fact witness;

        iii.   the deadline for and format of reply submissions (including exhibits); and

        iv.   the deadline for and format of fact affidavits, if any, to accompany the reply submissions.

5.   EMEA Claims. Certain Intercompany Claims have been made by the EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor and by Nortel Networks AG and Nortel Networks AS against (a) the U.S. Debtors (the "EMEA U.S. Claims"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors and the Directors and Officers (the "EMEA Canadian Claims" (and together with the EMEA U.S. Claims, the "EMEA Claims")). The Canadian Debtors and the Directors and Officers may file motions with the Canadian Court to dismiss the EMEA Canadian Claims.

6.   UK Pension Claims. Certain claims have been made by the UK Pension Claimants against (a) the U.S. Debtors (the "UK Pension US Claims"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors (the "UK Pension Canadian Claims" (and together with the UK Pension US Claims, the "UK Pension Claims")). The Canadian Debtors may file motions with the Canadian Court to dismiss the UK Pension Canadian Claims.

7.   Decisions. The U.S. and Canadian Courts will (a) hold simultaneously (i) the Allocation Protocol Hearings, (ii) hearings before the U.S. Court on the merits of any remaining EMEA U.S. Claims and UK Pension US Claims, and (iii) hearings before the Canadian Court on the merits of any remaining EMEA Canadian Claim and UK Pension Canadian Claims, provided, however, that the U.S. and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only EMEA US Claims and/or UK Pension US Claims or only EMEA Canadian Claims and/or UK Pension Canadian Claims, and (b) issue their respective decisions on (i), (ii) and (iii). The trial for this matter is scheduled to commence on January 6, 2014. The trial will begin with the Allocation issues and continue thereafter with remaining issues to be addressed in this Allocation Protocol, including EMEA Claims and UK Pension Claims.

8.   Appeals. The Core Parties shall have their usual rights of appeal from all interlocutory and final decisions of the U.S. and Canadian Courts.

## Appendix A

**Bondholder Group:** The ad hoc group of bondholders that hold claims issued and/or guaranteed by NNC, NNL, NNI, and Nortel Networks Capital Corporation

**Canadian Court:** Ontario Superior Court of Justice (Commercial List)

**Canadian Debtors:** Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), and Nortel Networks Global Corporation., Nortel Networks International Corporation and Nortel Networks Technology Corporation

**CCC:** the ad hoc committee of major creditors having claims only against the Canadian Debtors comprised of: the former and disabled Canadian employees of the Canadian Debtors through their court-appointed representatives (the "Representatives for the Former and Disabled Employees"); the Canadian Auto Workers Union (the "CAW"); Morneau Shepell Ltd. as Administrator of Nortel's Canadian registered pension plans ("Morneau"); Superintendent of Financial Services of Ontario as Administrator of the Pension Benefits Guarantee Fund (the "Ontario Superintendent"); and the court-appointed representatives of the current and transferred employees of the Canadian Debtors ("Nortel Continuing Employee Committee")

**Committee:** The Official Committee of Unsecured Creditors in the chapter 11 cases of the U.S. Debtors

**Cross-Border Protocol:** Schedule A to the "Initial Order and Endorsement," entered by Canadian Court on January 14, 2009, as amended by Schedule A to the "Fifth Amended and Restated Initial Order," entered by the Canadian Court on February 15, 2011; and Exhibit B to the "Order Pursuant to 11 U.S.C. §§ 105(a) Approving Cross-Border Court-To-Court Protocol," entered by U.S. Court on January 15, 2009, as amended by Exhibit 1 to the "Order Approving Stipulation of the Debtors and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al., Amending the Cross-Border Court-to-Court Protocol," entered by the US Court on June 29, 2009

**Cross-Border Claims Protocol:** Schedule A to the "Order Approving Cross-Border Claims Protocol," entered by Canadian Court on September 16, 2010; and Schedule B to the "Debtors' Motion for Entry of an Order Approving a Cross-Border Protocol on the Resolution of Claims," granted by the U.S. Court on September 16, 2010 pursuant to the "Order Pursuant to 11 U.S.C. §§ 105(a) and 502 Approving a Cross-Border Court-to-Court Claims Protocol"

**Directors and Officers:** Certain individuals as former directors and officers of NNC and/or NNL represented by Osler, Hoskin & Harcourt, LLP

**EMEA Debtors:** Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited; Nortel Networks S.A. ("NNSA"); Nortel Networks NV; Nortel Networks SpA; Nortel Networks BV; Nortel Networks Polska Sp z.o.o.; Nortel Networks Hispania, SA; Nortel Networks (Austria) GmbH; Nortel Networks s.r.o.; Nortel Networks Engineering Service Kft; Nortel Networks Portugal SA; Nortel Networks Slovensko, s.r.o.; Nortel Networks Romania SRL; Nortel GmbH; Nortel Networks OY; Nortel Networks AB; Nortel Networks International Finance & Holding BV and Nortel Networks France S.A.S. Cosmé Rogeau, who has been appointed Liquidator for NNSA under French secondary proceedings, acts jointly with the Joint Administrators with respect to NNSA.

**Indenture Trustees:** (a) Wilmington Trust, National Association as successor indenture trustee pursuant to a trust indenture dated as of November 30, 1988, in respect of the 6.875% notes issued by Nortel Networks

Limited; (b) The Bank of New York Mellon (i) as indenture trustee pursuant to a trust indenture dated as of July 5, 2006 among Nortel Networks Limited, as issuer, and Nortel Networks Corp. and Nortel Networks Inc., as guarantors, and (ii) as indenture trustee pursuant to an indenture dated as of March 28, 2007 among Nortel Networks Corp., as issuer, and Nortel Networks Limited and Nortel Networks Inc., as guarantors; and (c) Law Debenture Trust Company of New York as successor indenture trustee pursuant to a trust indenture dated as of February 15, 1996, in respect of the 7.875% notes issued by Nortel Networks Limited and Nortel Networks Capital Corp. and guaranteed by Nortel Networks Limited.

**Joint Administrators**:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson and Stephen John Harris, as the Administrators in the insolvency proceedings pending in the United Kingdom for all EMEA Debtors except Nortel Networks (Ireland) Limited, and Alan Robert Bloom and David Martin Hughes as Administrators for Nortel Networks (Ireland) Limited

**Monitor**:  Ernst & Young Inc., in its capacity as the court-appointed monitor in the proceedings commenced under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, in respect of the Canadian Debtors

**Selling Debtors**:  Canadian Debtors, U.S. Debtors, EMEA Debtors and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited

**UK Pension Claimants**:  The Trustee of the NNUK Pension Plan ("UK Pension Trustee") and the Board of the Pension Protection Fund ("PPF")

**U.S. Court or US Court**:  United States Bankruptcy Court for the District of Delaware

**U.S. Debtors or US Debtors**:  Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc.

343

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding commenced at Toronto

ORDER
(Allocation Protocol)

**Goodmans LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON    M5H 2S7

Jay A. Carfagnini (LSUC#: 22293T)
Benjamin Zarnett (LSUC#: 17247M)
Fred Myers (LSUC#: 26301A)
Joseph Pasquariello (LSUC#: 38390C)
Christopher Armstrong (LSUC#: 55148B)
Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

**BLUE SHEET**

Court File No: 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| | | |
|---|---|---|
| **THE HONOURABLE MR.** | ) | **WEDNESDAY, THE 15TH DAY OF** |
| **JUSTICE MORAWETZ** | ) | **MAY, 2013** |
| | ) | |
| | ) | |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION (the "Canadian Debtors")

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**ORDER**
**(Allocation Protocol – Litigation Timetable and Discovery Plan)**

**WHEREAS** this Court approved an allocation protocol (the "**Allocation Protocol**")
pursuant to an Order (Allocation Protocol) dated April 3, 2013.

**WHEREAS** pursuant to an Endorsement of this Court dated April 17, 2013, a joint
hearing was convened between this Court and the United States Bankruptcy Court for the
District of Delaware to consider a litigation timetable and discovery plan in connection with the
Allocation Protocol, which hearing was heard on April 24, 2013.

**ON HEARING** the submissions of counsel for the Canadian Debtors, Ernst & Young
Inc. in its capacity as monitor of the Canadian Debtors (the "**Monitor**"), the members of the

Canadian Creditors Committee, the Joint Administrators of Nortel Networks UK Limited and the other EMEA Debtors, the Trustee of the Nortel Networks UK Pension Trust Limited and the Board of the UK Pension Protection Fund, the former directors and officers of Nortel Networks Corporation and Nortel Networks Limited, Nortel Networks Inc. and certain of its affiliates in US Chapter 11 bankruptcy proceedings, Wilmington Trust, National Association, the Bank of New York Mellon, the Informal Nortel Noteholders Group, the Official Committee of Unsecured Creditors of the US Debtors, and Law Debenture Trust Company of New York, this Court having issued an Endorsement dated May 3, 2013.

1.    **THIS COURT ORDERS** that the litigation timetable and discovery plan appended as Schedule "A" to this Order (the "**Litigation Timetable and Discovery Plan**") be implemented.

2.    **THIS COURT ORDERS** that the Canadian Debtors and the Monitor are authorized to take all steps necessary to carry out and give effect to the Litigation Timetable and Discovery Plan.

ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

MAY 1 6 2013

**SCHEDULE "A"**
**(Litigation Timetable and Discovery Plan)**

348

US Interests and EMEA Debtors' Proposed Litigation Timetable as of May 15, 2013

## LITIGATION TIMETABLE

Pursuant to the US Court's and Canadian Court's Orders approving the Allocation Protocol, the Cross-Border Protocol, and the Cross-Border Claims Protocol, it is hereby ordered:[1]

| Deadline/Date | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 16 by noon E.D.T. | Any Core Party who wishes to participate in the Allocation dispute shall serve a pleading or opening submission styled "Allocation Position of [●]" which will set out with reasonable particularity the relief sought with respect to allocation, the material facts relied upon and legal bases for the allocation position being advanced by that Core Party by noon E.D.T. on May 16, 2013 and file the same within the next business day. | The US Claims Defendant Group shall file and serve their responses to the US Claims. | Deadline for the U.K. Pension Claimants to deliver their affirmative pleading (which may be deemed by them to serve as their Dispute Notices) setting forth, with reasonable particularity, the relief sought, material facts relied upon and legal bases for their claims and the grounds upon which they seek to challenge their disallowance. |
| May 17 | Any Core Party may serve a joinder before May 17 and file the same within the next business day, provided that the joinder does not advance any new legal bases and does not rely on new material facts. | | |

---

[1] Capitalized terms shall have the meaning ascribed to them in the Allocation Protocol and Annex A attached hereto.

349

| Due Date/Due 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 17 | The Discovery Participants shall aim to reach agreement on a Confidentiality Stipulation and Protective Order as soon as possible. To the extent the Discovery Participants are unable to agree on a Confidentiality Stipulation and Protective Order, May 17 is the deadline for the Discovery Participants to file their versions of the Confidentiality Stipulation and Protective Order with the Courts. | | |
| May 22 | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, and the Bondholder Allocation Group. | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group. | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the Canadian EMEA Claimants Group, the UK Pension Claimants Group, and the Canadian Claims Defendant Group. |
| May 22 | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, and the Bondholder Allocation Group, without prejudice to an Allocation Group's right to later serve contention interrogatories, as to be discussed and/or resolved by the Courts. | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group, without prejudice to a US Claim Party's right to later serve contention interrogatories, as to be discussed and/or resolved by the Court. | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group, without prejudice to a Canadian Claim Party's right to later serve contention interrogatories, as to be discussed and/or resolved by the Court. |

2

350

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 24 | Deadline for Core Party who is not in one of the Discovery Groups, and who seeks to serve document requests and/or interrogatories that are non-duplicative of those document requests and/or interrogatories already served by the Allocation Groups, to seek leave of the Court to serve such non-duplicative document requests and/or interrogatories if prior to this time, such Core Party has been unable to reach agreement with the Core Party on whom it seeks to serve the non-duplicative document requests and/or interrogatories after meeting and conferring with such Core Party in good faith. | | |

3

·351

| Drc Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 29 | The US Debtors, UCC, EMEA Debtors, Joint Administrators, Canadian Debtors, Monitor, Bondholder Group, and any other Core Party who filed an opening submission may each file and serve a response to any opposing Core Party's opening submission or designate its opening submission as a cross-response. Each of the responses may be made individually, jointly, and/or by joining another Core Party's response. | | With respect to the Canadian Claims, each Disputing Creditor shall receive from the Monitor and the Canadian Debtors, by May 29, 2013, a response to such Disputing Creditor's Affirmative Pleading setting forth, with reasonable particularity, the grounds for the disallowance, the material facts relied upon and the legal bases for the disallowance. |
| June 3 | Deadline for supplemental document requests and identification interrogatories related to new issues raised in responsive submissions. | | |
| June 6 | In-person meet and confer between the Discovery Participants regarding the discovery requests and interrogatories served, procedures governing the production of documents, deposition procedures, and any other issues that have arisen thereof. | | |
| June 10 | Deadline for responses and objections to document requests and objections to interrogatories in accordance with the Discovery Plan. | | |
| June 10 | Subject to any objections, deadline for the recipients of document requests to commence the rolling production of documents in accordance with the Discovery Plan. | | |
| July 3 | Date by which parties served with document requests must certify to parties requesting their documents substantial progress with regard to production of documents. | | |
| July 22 | Date by which parties served with document requests must certify to parties requesting their documents substantial completion with regard to production of documents. | | |

352

| Due Date 2013 | Step in Allocation claims | Step in US claims | Step in Canadian claims |
|---|---|---|---|
| July 24 | Deadline for identification by each Core Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other Core Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Core Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. | Deadline for identification by each US Claim Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other US Claim Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that US Claim Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. | Deadline for identification by each Canadian Claim Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other Canadian Claim Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Canadian Claim Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. |
| July 26 | Deadline to file motions to compel and/or motions for a protective order with respect to document discovery. Notwithstanding this deadline, when a dispute arises, the affected Discovery Participants shall promptly attempt to resolve any discovery disputes in good faith and once an impasse is reached, file any motions with the relevant Court(s) promptly. | | |
| July 26 | Deadline for each of the Canadian Allocation Group, the EMEA Allocation Group, and the US Allocation Group to serve on any opposing Core Party the topics on which that Core Party's representative is to be examined or deposed in accordance with the Discovery Plan. | Deadline for each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group to serve on any opposing Claim Party and/or a member of the Canadian Claims Defendant Group the topics on which that Claim Party's representative is to be deposed pursuant to Rule 30(b)(6) in accordance with the Discovery Plan. | Deadline for each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group to serve on any opposing Claim Party and/or a member of the US Claims Defendant Group the topics on which that Claim Party's representative is to be examined in accordance with the Discovery Plan. |

353

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| July 29 | Deadline for parties to designate witnesses to be examined or deposed, subject to later additions for the reasons set forth in the Discovery Plan. Each of (1) the Canadian Allocation Group and the Canadian Claims Defendant Group together; (2) the EMEA Allocation Group, the US EMEA Claimants Group, the Canadian EMEA Claimants Group, and the UK Pension Claimants together; and (3) the US Allocation Group and the US Claims Defendant Group together may designate a limited number of fact witnesses for examination or deposition in accordance with the Discovery Plan. Parties are encouraged to identify witnesses as early as possible in order to facilitate scheduling. | | |
| August 2 | Deadline for each Core Party that is timely served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure to identify its representative for oral examination or deposition. | Deadline for each US Claim Party (other than the Committee) that is timely served with a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure to identify its representative for deposition. | Deadline for each Canadian Claim Party that is timely served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure to identify its representative for an oral examination. |
| August 5 | In-person meet and confer between the Discovery Participants regarding witnesses to be deposed or examined, deposition procedures and any other issues that have arisen. | | |
| September 13 | Deadline to identify experts and the subject matter of their reports in accordance with the Discovery Plan. | | |

354

| Due Date (2015) | Steps in Allocation | Steps in US Claims | Steps in Canadian Claims |
|---|---|---|---|
| September 27 | Deadline to complete witness depositions in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to any representative party examinations or Rule 30(b)(6) depositions. | Deadline to complete witness depositions in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to any Rule 30(b)(6) depositions. | Deadline to complete witness depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any undertakings to be answered within three weeks of each examination), in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to representative party examinations. |
| October 4 | Deadline for service of expert reports (including exhibits) in accordance with the Discovery Plan. | | |
| November 1 | Deadline for service of responding experts' reports (including exhibits) in accordance with the Discovery Plan. | | |
| Week of November 11 | Preliminary pre-trial conference. | | |
| December 6 | Deadline to complete depositions of experts in accordance with the Discovery Plan. | | |
| December 9* | Deadline to file a list of all witnesses and exhibits that each Discovery Participant intends to rely upon as part of its direct case. | | |
| December 13* | Deadline to file pre-trial motions. | | |

---

* All dates for pre-trial submissions are subject to modification by the Courts at the preliminary pre-trial conference.

7

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| December 13* | Deadline for filing of opening written submissions with the Courts. The content of such submissions will include:<br><br>a) Pre-trial briefs;<br><br>b) All fact affidavits to be used as direct testimony;<br><br>c) All exhibits to be used in a Discovery Participant's direct case; and<br><br>d) All deposition testimony to be used in a Discovery Participant's direct case. | | |
| Week of December 16,* if the Courts desire | Pre-Trial Conference(s) –<br><br>By this date, the Core Parties shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial, and<br><br>b) the contents of document briefs for use at the Joint Hearing/ the exhibits for use at the Joint Hearing.<br><br>All Nortel documents produced by a Discovery Participant to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. | Pre-Trial Conference(s) –<br><br>By this date, the US Claim Parties and the Canadian Claims Defendant Group shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial; and<br><br>b) the exhibits for use at the Joint Hearing.<br><br>All Nortel documents produced by a Discovery Participant to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. | Pre-Trial Conference(s) –<br><br>By this date, the Canadian Claim Parties and the US Claims Defendant Group shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial; and<br><br>b) the contents of document briefs for use at the Joint Hearing.<br><br>All Nortel documents produced by a Core Party to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. |

356

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| Begins January 6, 2014 | The US and Canadian courts will (a) hold simultaneously (i) hearings before the US and Canadian courts regarding Allocation, (ii) hearings before the US Court on the merits of any remaining US Claims, and (iii) hearings before the Canadian Court on the merits of any remaining Canadian Claims, provided, however, that the US and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only the US Claims or only the Canadian Claims, and (b) issue their respective decisions on (i), (ii), and (iii). The trial will begin with the Allocation issues and continue thereafter with remaining issues to be addressed in this Allocation Protocol, including EMEA Claims and UK Pension Claims. | | |
| Any date in this Litigation Timetable may be amended by the written agreement of all Core Parties, submitted to the US Court through the filing of a certification of counsel and to the Canadian Court through the filing of a letter from the Monitor to Justice Morawetz on notice to the Core Parties. Any Core Party may also file a motion with the applicable Court or Courts to modify this Litigation Timetable upon a showing of good cause. | | | |

9

357

## ANNEX A

## DEFINITIONS

Capitalized terms used in this Litigation Timetable but not otherwise defined in this Annex A shall have the meanings ascribed to them in the Allocation Protocol.

**Allocation Group:** Any of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, or the Bondholder Allocation Group.

**Bondholder Allocation Group:** The Bondholder Group.

**Canadian Allocation Group:** The Canadian Debtors, the Monitor, and the CCC.

**Canadian Claim Party:** Any party in the Canadian EMEA Claimants Group or the Canadian Claims Defendant Group, or the UK Pension Claimants.

**Canadian Claims:** Claims made by the Canadian EMEA Claimants Group and the UK Pension Claimants against any or all of the Canadian Debtors.

**Canadian Claims Defendant Group:** The Canadian Debtors against whom the Canadian EMEA Claimants Group and the UK Pensions Claimants have brought claims, the Directors and Officers (but only with respect to claims of the Canadian EMEA Claimants Group), and the Monitor.

**Canadian EMEA Claimants Group:** The EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor who made claims against any or all of the Canadian Debtors or Directors and Officers, and the UK Pension Claimants who made claims against NNC and NNL. Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

**Claim Group:** Any of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, the Canadian Claims Defendant Group, or the UK Pension Claimants.

**Discovery Participant:** Any Core Party or party of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, or the Canadian Claims Defendant Group who is participating in discovery pursuant to the Discovery Plan.

**Discovery Plan:** The Discovery Plan that will be entered by the Courts.

10

Disputing Creditor: Any party who has delivered an Affirmative Pleading to dispute the disallowance of its claim by the Monitor and the Canadian Debtors, which shall be deemed to include the EMEA Debtors.

EMEA Allocation Group: The UK Pension Claimants, the EMEA Debtors (including Nortel Networks International Finance & Holding BV as behalf of itself and as assignee of Nortel Networks o.o.o.), and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited. Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

Identification Interrogatories: Interrogatories seeking identification of (i) the names, roles and last known contact information of witnesses with knowledge of information relevant to the subject matter of Allocation, EMEA Claims or UK Pension Claims, (ii) information sufficient to identify transactions upon which any positions, claims, and/or defenses of the recipient of the interrogatory rely. An interrogatory seeking the names of multiple individuals or transactions shall be considered one interrogatory for purposes of any numerical limit on the number of interrogatories.

Representatives: Directors, officers, employees, attorneys, accountants, experts, consultants, financial advisors, or agents of any of the Core Parties, US Claim Parties, or Canadian Claim Parties.

U.K. Pension Claimants: Nortel Networks UK Pension Trust Limited and the Board of the Pension Protection Fund.

US Allocation Group: The US Debtors and the Committee.

US Claims: Claims made by the US EMEA Claimants Group and the UK Pension Claimants against any or all of the US Debtors.

US Claims Defendant Group: The US Debtors against whom the US EMEA Claimants Group and the UK Pension Claimants have brought claims and the Committee.

US EMEA Claimants Group: The EMEA Debtors and/or Joint Administrators or any other administrator or liquidator of an EMEA Debtor who made claims against any or all of the US Debtors, Nortel Networks AS, Nortel Networks South Africa (Proprietary) Limited, Nortel Networks AG, Nortel Networks Optical Components Limited, Northern Telecom France SA, Northern Telecom PCN limited. Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

US Claim Party: Any party in the US EMEA Claimants Group or the US Claims Defendant Group, or the UK Pension Claimants.

11

US Interests and EMEA Debtors' Proposed Discovery Plan as of May 15, 2013

## DISCOVERY PLAN

| | |
|---|---|
| **1. Definitions** | Capitalized terms used herein and not otherwise defined shall have the meaning ascribed in the Allocation Protocol or Litigation Timetable. |
| **2. Applicable Procedural Regime:** | In accordance with the Cross Border Protocol, the Cross-Claims Protocol and the Allocation Protocol, the following procedural regimes apply:<br><br>(1) With respect to Allocation, the Cross-Border, Cross-Claims and Allocation Protocols apply to the extent not inconsistent with this Discovery Plan, and the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the District of Delaware will apply as applicable.<br><br>(2) With respect to US Claims, the Cross-Border and Cross-Claims Protocols apply to the extent not inconsistent with this Discovery Plan, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the District of Delaware will apply as applicable.<br><br>(3) With respect to Canadian Claims, the Cross-Border Protocol, the Cross-Claims Protocols, the Claims Resolution Order, and the EMEA Claims Procedure Order apply to the extent not inconsistent with this Discovery Plan, and the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario will apply as applicable. |
| **3. Scope of Documentary Discovery Among Discovery Participants:** | *a) Definition of Documents*<br><br>References to "Documents" are intended to cover any record that contains any type of information or data in any form and includes everything within the definition of "document" contemplated by Rule 30.01(a) of the Rules of Civil Procedure for Ontario and/or the types of documents contemplated by Rule 34 of the Federal Rules of Civil Procedure.<br><br>*b) Reasonably Accessible Documents and Proportionality*<br><br>No Discovery Participant will be required to search data sources, including applications and databases, that it reasonably understands to already be in the possession, custody, or control of the Allocation Group or Claim Group making the request, provided that a Discovery Participant shall enumerate in its response to a discovery request any data sources that are not being searched on this ground. |

Each Discovery Participant will only be required to search reasonably accessible data. A Discovery Participant who believes that responsive materials are reasonably likely to be found in a decommissioned application or in storage media that cannot be accessed without considerable burden, time or expense shall give prompt notice of this in its response to a document request, and shall meet and confer in good faith with the requesting party or parties regarding the cost and practicality of accessing such responsive materials giving attention to the principle of proportionality.

A Discovery Participant shall not be required to re-produce a document that has already been produced by another Discovery Participant and the same document shall not be required to be produced by more than one Discovery Participant.

In light of the volume of the Debtors' hard-copy documents maintained in off-site storage facilities, and the abundance of available and overlapping electronic data, no Discovery Participant will be obligated to search such hard-copy documents, and rather will produce indices of such hard-copy documents (to the extent they exist) with their responses to any document request and shall meet and confer in good faith with the requesting party or parties regarding hard-copy documents that will be made available for inspection upon request. If any such documents inspected are copied for any requesting party, all other parties shall be notified and copies shall be provided to all parties at their own expense. If any party creates an electronic version of those documents, that party shall be responsible for loading the electronic version of the document(s) onto the Merrill Lextranet database in accordance with Schedule A hereto to the extent reasonable and not overly burdensome.

*c) Previously Produced Documents*

Documents produced into the Merrill Lextranet database ("Mediation Dataroom") for the purpose of the several mediations in this proceeding may be treated as having been produced in the Allocation, US Claims and Canadian Claims litigation, and any Discovery Participant that does not already have such documents shall be provided access to this Merrill Lextranet database, subject to an appropriate confidentiality, protective and/or sealing orders from the Court(s) and a provision allowing the Discovery Participants to clawback any privileged documents that may have been produced in the mediation context or that may be inadvertently produced under this Discovery Plan. Any Discovery Participant may request the load files for the Mediation Dataroom containing metadata from Merrill in order to facilitate loading such documents on a review platform of their choosing.

*d) No Waiver of Privilege*

The fact that a document has been produced by any Discovery Participant shall not be deemed to be an admission of relevance, nor an automatic waiver of privilege where a document has been, or is, produced inadvertently and/or under circumstances where the producing party did not intend to waive privilege (for itself or any other Discovery Participant who asserts privilege over the document), and any Discovery Participant who asserts privilege over the document may ask that it be clawed back under a procedure to be provided for in a confidentiality or protective order.

*f) Document Requests*

**By no later than May 22, 2013**

For Allocation, each Allocation Group shall be entitled to serve limited reasonable requests for production of non-privileged documents, such requests to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participant; provided that the Bondholder Group, prior to making such requests, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden. The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the document requests of an Allocation Group with similarly aligned interests. Further, such Discovery Participants who do not belong to an Allocation Group will have until May 24, 2013 to seek agreement with a Discovery Participant from whom it seeks documents and, failing agreement, to seek leave of the Courts to make additional document requests if it believes in good faith that such requests are necessary and non-duplicative.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on each opposing US Claim Party. The US Claims Defendant Group and the Bondholder Group shall confer on such requests. In addition, the EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on the Canadian Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed document request and by the US Court where the US Debtors are the recipient of the disputed document request. The Canadian and US Debtors' agreement to accept such discovery requests does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on each opposing Canadian Claim Party.   The Canadian Claims Defendant Group and the Bondholder Group shall confer on such requests.  In addition, the EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on the US Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed document request and by the US Court where the US Debtors are the recipient of the disputed document request.  The Canadian and US Debtors' agreement to accept such discovery requests does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation document requests and US Claims/Canadian Claims document requests.  Further, either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional document requests upon a showing of good cause.

*g) Interrogatories*

**By no later than May 22, 2013**

For Allocation, each Allocation Group shall be entitled to serve a limited number of reasonable Identification Interrogatories, such interrogatories to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participant; provided that the Bondholder Group, prior to serving such interrogatories, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden.   The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the interrogatories of an Allocation Group with similarly aligned interests.  Further, such Discovery Participants who do not belong to an Allocation Group will have until May 24, 2013 to seek agreement with a Discovery Participant on whom it wishes to serve interrogatories and, failing agreement, to seek leave of the Courts to serve additional interrogatories if it believes in good faith that such interrogatories are necessary and non-duplicative.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and US Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on each opposing US Claim Party.   The US Claims Defendant Group and the

Bondholder Group shall confer on such interrogatories. In addition, the EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on the Canadian Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed interrogatory and by the US Court where the US Debtors are the recipient of the disputed interrogatory. The Canadian and US Debtors' agreement to accept such interrogatories does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on each opposing Canadian Claim Party. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such interrogatories. In addition, the EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on the US Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed interrogatory and by the US Court where the US Debtors are the recipient of the disputed interrogatory. The Canadian and US Debtors' agreement to accept such interrogatories does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation interrogatories and US Claims interrogatories. Further, either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional Identification Interrogatories upon a showing of good cause.

The availability of contention interrogatories shall be decided by mutual agreement among the Discovery Participants at a later date, and, failing agreement, by the Court(s).

*h) Responses and Objections*

**By no later than June 10, 2013**

When objecting to any discovery request, the recipient of such discovery requests shall state the basis for objection, which may be made on any ground provided in the rules of the Applicable Procedural Regime set forth in section 2. Recipients are strongly encouraged to prepare joint objections to the same document request or interrogatories to the extent

their objections overlap.

*i) Production of Documents*

**Rolling Productions of Documents Shall Commence June 10, 2013 and Shall Be Completed by July 22, 2013:**

Subject to any objections made and sustained if challenged (see motions procedure below), each recipient of a document request shall produce any responsive non-privileged documents to any request made of it to all Discovery Participants by producing such documents into the Merrill Lextranet database (to the extent they overlap, responses to multiple requests may be combined or cross-referenced to each other to avoid duplication). The producing Discovery Participant shall promptly notify all Discovery Participants of the Docid range of each production.

In this same time frame, each Discovery Participant shall produce any further documents that they intend to rely upon at trial that are not already part of the mediation productions or responsive productions.

*j) Motions to Compel Document Production*

**Motions to Compel Document Productions Must Be Filed by July 26, 2013**

Any Discovery Participant who served document requests and who seeks to compel production of a document must do so only after meeting and conferring in good faith with the Discovery Participant against whom a motion is contemplated, and thereafter by serving a motion with supporting material, including legal argument/submissions, returnable in the applicable Court on seven business days notice on all Discovery Participants, and must establish that the ground for objection is not valid and that their position will be prejudiced in the absence of the response requested. The Discovery Participant whose objection is challenged shall respond to this motion within four business days and any other Discovery Participant whose interests are affected by the request may serve a supplementary response within two business days thereafter.

Notwithstanding this deadline, whenever a discovery dispute arises, the affected Discovery Participants shall promptly attempt to resolve the dispute in good faith and, if an impasse is reached, file any motions with the relevant Court(s) promptly.

*k) Privilege Logs*

Should a Discovery Participant withhold any document based on a claim of privilege or work product protection, the producing party shall provide a privilege log containing details about the category of documents

withheld, including at least the following information for each category: (a) the discovery participant asserting the privilege; (b) the subject matter of the category; (c) the date range; and (d) the author(s) and other recipients, which may be grouped by employer (such as Nortel entity or advisor or law firm). Discovery Participants may request additional information regarding categories on the privilege log in order to assess the basis for withholding and shall meet and confer on the same.

The following documents, to the extent created after the commencement of the bankruptcy proceedings, presumptively need not be included on a privilege log: (a) communications exclusively between a Discovery Participant and its outside counsel or (b) work product created by outside counsel and/or such counsel's agents.

Responsive documents which are jointly privileged as to two or more of the Discovery Participants shall be produced, but only to those Discovery Participants with whom the joint privilege is shared.

| 4. Format of Production of Electronic Records | For each electronic document, the responding party shall provide the metadata specified in Schedule A, but only to the extent they can reasonably be extracted or otherwise provided in a delimited text file. |
|---|---|

| 5. Trial Witness Identification | **By no later than July 24, 2013**<br><br>Each Discovery Participant shall identify any fact (non-expert) witnesses it anticipates calling or presenting testimony of at trial, by name, employer, title and functional role held during the time period relevant to their anticipated testimony. A Discovery Participant may identify trial witnesses not previously identified on good faith at a later date provided that any opposing Allocation Group or Claim Group has had or will have a reasonable opportunity to depose the later-identified witness before trial, regardless of the fact discovery cut-off or number of depositions taken.<br><br>Any Discovery Participant that has previously filed an affidavit or witness statement in the context of this litigation (the Ontario and Delaware proceedings) may also, at its option, choose to designate that evidence to be tendered at trial as long as the witness will be made available to be deposed and appears at trial for cross-examination. |
|---|---|

| 6. Oral Examinations Or Depositions | *a) Examinations of Representatives/ 30(b)(6) Depositions*<br><br>**By no later than July 26, 2013**<br><br>For Allocation, each Allocation Group (other than the Bondholder Allocation Group) may serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States |
|---|---|

Federal Rules of Civil Procedure on the solicitors or counsel of record for any opposing Discovery Participant specifying the topics, if any, on which that other Discovery Participant's representative(s) is to be examined/deposed. The Bondholder Allocation Group shall consult with the Canadian Allocation Group and the US Allocation Group regarding any requests under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure it would like the US Allocation Group and the Canadian Allocation Group to serve on other Discovery Participants in accordance with the foregoing. In the event that Canadian Allocation Group and the US Allocation Group do not agree to serve such requests, the Bondholder Allocation Group may seek leave of the Court or Courts, as applicable, by motion on notice to serve its own requests for examination under Rule 34.04 of the Ontario Rules of Civil Procedure and/or depositions under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group may each serve a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure on the counsel of record for any opposing US Claim Party specifying the topics, if any, on which the US Claim Party's representative is to be deposed. The US Claims Defendant Group and the Bondholder Group shall confer on such requests.

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group may each serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure on the solicitors/counsel of record for any opposing Canadian Claim Party specifying the topics, if any, on which the Canadian Claim Party's representative is to be examined/deposed. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such requests.

Use of (Discovery) Answers at Trial

Testimony of representatives proffered in response to requests under Ontario Rule 31.03 and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure may be used as evidence at trial only by Discovery Participants whose interests are adverse to those of the proffering Discovery Participants on the issue for which the evidence is being used.

**By no later than August 2, 2013**

Each Discovery Participant served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure shall designate a representative(s)

(who may, but is not required to be, a current or former officer, director or employee of that Discovery Participant) to be offered to be examined/deposed as though Rule 31.03 of the Ontario Rules of Civil Procedure applied and/or under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure as applicable. All Discovery Participants shall have the right to attend such examinations/depositions.

A Discovery Participant may designate its party representative(s) under Rule 34.04 of the Ontario Rules of Civil Procedure as its witness(es) under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure for a single examination/deposition of each such witness(es).

*b) Oral Examinations/ Deposition of Fact Witnesses:*

**By no later than July 29, 2013**

In addition to the aforementioned examinations/depositions pursuant to Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure, each Allocation Group and each Claim Group shall serve by this date notices stating the witnesses it wishes to examine or depose (which may include third parties, persons subject to the control of a Discovery Participant or both and which may be persons who have been identified as trial witnesses by another Discovery Participant, and any persons whose previously filed affidavits/witness statements have been designated by a Discovery Participant as trial evidence) in order to obtain factual information/admissions relevant to Allocation, US Claims or Canadian Claims. Each witness shall be named and his/her place of residence (if known) shall be identified. The parties shall meet as soon as practicable after this date to confer and attempt to reach agreement on the list of witnesses to be deposed and the time for examination of each witness by each party. In the absence of agreement this shall be submitted to the relevant Court(s) for decision. The attorneys for the US Debtors, the Canadian Debtors and the EMEA Debtors agree to accept requests under Rule 34.04 of the Ontario Rules of Civil Procedure and Depositions Notices the United States Federal Rules of Civil Procedure seeking to depose or examine persons under the control of their clients. All parties agree to cooperate in good faith in attempts to locate and obtain testimony from persons not under the control of any party, including through issuance of compulsory process, letters of request and other available procedures, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from which that party does not seek testimony.

The Bondholder Group shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, regarding any fact witnesses

it seeks to examine/depose.  In the event that the Canadian Allocation Group and the US Allocation Group do not intend to designate such fact witnesses that the Bondholder Group seeks to designate, the Bondholder Group may seek leave of the Court or Courts, as applicable, by motion on notice to designate such fact witnesses.

Either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to designate additional fact witnesses upon a showing of good cause.

**All examinations/depositions to be completed by no later than September 27, 2013**

The relevant parties shall meet and confer and attempt to agree on the fact witnesses to be examined/deposed and on an examination/deposition schedule that contemplates the completion of all witness examinations/depositions (including any examinations/depositions for testimony preservation that the Court(s) may have granted leave to conduct) in this time frame that reflects the practicalities of examining/deposing each witness (having regard to the number of Discovery Participants examining/deposing, the subject matter of the examinations/depositions, the available time for completion of all examinations/depositions and the residence of the witness).  All Discovery Participants shall have the right to attend such examinations/depositions.

The relevant parties will attempt to schedule depositions with a preference to finish fact witness depositions prior to any representative party examinations or Rule 30(b)(6) depositions.

*c) Use of Examinations/Depositions at Trial*

Designated portions of any examination/deposition may be filed as part of the evidence that any Discovery Participant may rely upon at trial in accordance with the usual rules that apply in the Canadian and US Courts, respectively.

**7. Experts**

> **By no later than September 13, 2013**
>
> Each Discovery Participant that intends to rely on the opinion evidence of a qualified expert shall identify the name of its intended expert(s) and the subject matter of their expertise and intended evidence.
>
> **By no later than October 4, 2013**
>
> Each Discovery Participant shall deliver an affidavit or report from their identified expert(s) setting out his/her findings, opinions and conclusions and identifying all documents/factual evidence relied upon in attached exhibits or by Bates number if previously produced, and containing the disclosures required by the Applicable Procedural Regime set forth in section 2.
>
> Any Discovery Participant that has previously filed an affidavit or report from an expert in the context of this litigation (the Ontario and Delaware proceedings) may, at its option, choose to designate that as part of their expert evidence at trial, provided that the expert will be made available to be examined/deposed and appears at trial as set out below.  If not so designated, those previously filed affidavits and/or reports shall not constitute part of the evidence at trial.
>
> Promptly after the submission of initial expert affidavits or reports, the Discovery Participants shall attempt to agree upon an expert examination/deposition schedule so that depositions can commence by November 8, 2013.
>
> **By no later than November 1, 2013**
>
> Each Discovery Participant shall have the right to deliver an affidavit or report from an expert, including a newly identified rebuttal expert, in response to one received by another Discovery Participant that addresses an issue that is adverse to the Discovery Participant's position in the Allocation, US Claims, or Canadian Claims litigation. Responses shall be permitted even if the Discovery Participant did not initially tender an expert's affidavit, if an issue is raised by an expert whose evidence is tendered by another Discovery Participant that calls for response. Responsive reports shall be limited to responding to issues on which an affirmative expert report has been proffered and shall not go beyond such issues.
>
> **By no later than December 6, 2013**
>
> As soon as practicable, the Discovery Participants shall meet and confer and attempt to agree on a schedule that contemplates the completion of all expert witness examinations/depositions between November 8, 2013 and December 6, 2013 that reflects the practicalities of examining/deposing

each witness (having regard to the number of parties examining/deposing, the subject matter of the examinations/depositions, the available time for completion of all examinations/depositions and the residence of the witness). All Discovery Participants shall have the right to attend such depositions.

A Discovery Participant may request that any expert be present at trial for cross-examination, and the affidavit or report of any expert not appearing at trial if requested to appear cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the expert's position.

The affidavits and/or reports shall be filed as evidence with the court at the trial, subject only to cross-examination at trial and any applicable objections that may be made and determined at the outset of the trial and directions or rulings from the Court(s) arising therefrom. The Discovery Participant proffering the expert may elect to take a short direct examination of the expert at trial solely to introduce the expert and provide brief background or summary of the expert's report. The affidavit or report of any expert not appearing at trial cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the expert's position.

Communications with Experts:

The experts shall not be examined/deposed about or asked to produce prior drafts of their affidavits/reports and/or their communications with the Discovery Participant who retained them or other Discovery Participants within the same Allocation Group or Claim Group, or their respective Representatives, or any other topic protected from disclosure by the Applicable Procedural Regime set forth in section 2.

With respect to Allocation and US Claims, Rule 26 of the United States Federal Rules of Civil Procedure applies to expert discovery.

| | |
|---|---|
| **8. General Procedure Applicable to All Oral Examinations/ Depositions** | Length of Oral Examinations/Depositions<br><br>The Discovery Participants will include for discussion in the meet and confer scheduled for August 5 the Discovery Participants' proposals for limits on the length of oral examinations/depositions and the procedure for conducting such examinations/depositions.<br><br>Coordinating Oral Examinations/Depositions<br><br>Each examination/deposition shall be coordinated so that a lead examiner is identified for each group that noticed the oral examination/deposition (where an Allocation Group and Claim Group from the same jurisdiction counts as one group). Lead examiners shall work in good faith with any other lead examiners as well as other affected Discovery Participants to |

reflect a coordinated effort to avoid duplication of questions. For the avoidance of doubt, the US Claim Parties shall have the right to attend oral examinations/depositions that relate to the Canadian Claims, and the Canadian Claim Parties shall have the right to attend oral examinations/depositions that relate to the US Claims.

Transcripts and video taping:

All examinations/depositions shall be taken under oath in the presence of a Canadian or US certified court reporter and transcribed and the transcripts made available to all Discovery Participants, whether or not they are in attendance at the examination/deposition. At the option of any examining/deposing Discovery Participant, the examination/deposition may be video-taped but the use to which the video tape may be put shall be entirely in the discretion of the Court(s). The examining/deposing Discovery Participant(s) shall proportionally pay for the cost of the first and Court copies of the transcript and all other parties shall pay for their own copies.

Objections:

Objections may be made on any ground provided in the rules of the Applicable Procedural Regime set forth in section 2. Questions that are objected to on grounds other than privilege shall be answered under reserve of that objection. All other objections shall be preserved.

Requirement for Summons:

If a summons, subpoena or other process is required to compel the attendance at deposition of any witness, the Monitor, the US Debtors, the Joint Administrators, and the UK Pension Claimants shall reasonably assist in issuing process or otherwise procuring a witness's attendance irrespective of which Discovery Participant has sought the witness's deposition, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from which that party does not seek testimony. Neither resort to the courts of any jurisdiction for the purposes of compelling a witness's production for deposition nor conducting a deposition in any jurisdiction shall constitute attornment or consent to that jurisdiction for any other purpose.

Undertakings:

With respect to Allocation and Canadian Claims, the witness shall answer any undertakings that were agreed to on his/her examination/deposition within two weeks of the date of his/her examination/deposition, unless otherwise agreed to by the affected Discovery Participants.

13

**9. General Terms**

Any Discovery Participant may make a motion to the Court to compel another Discovery Participant to take the steps contemplated by the Discovery Plan or other steps, and the parties agree that the Court(s) may take the existence of the Discovery Plan into account in determining whether to grant the order sought. The Discovery Participants that are parties to such a motion may seek to justify their respective positions on the basis of, among other things, any information that was unknown or not reasonably available to that Discovery Participant at the time the Discovery Plan was entered into.

The Discovery Participants recognize that, as additional information becomes available throughout the Allocation, US Claims and Canadian Claims litigation, it may become apparent that: (a) it is impracticable or impossible for a Discovery Participant to comply with the terms of the Discovery Plan, or to do so in a time-efficient or cost-efficient manner, or (b) further steps, beyond those set out in this Discovery Plan, are required in order for a Discovery Participant to obtain access to potentially relevant documents, information or witness testimony. Each Discovery Participant agrees to notify the other Discovery Participants promptly when it reasonably believes that it will not comply with any term of the Discovery Plan or when it reasonably concludes that further steps beyond those set out in this Discovery Plan are required. The Discovery Participants agree to negotiate in good faith with respect to any amendments to the Discovery Plan requested by a Discovery Participant on that basis, and to seek the assistance of the Courts(s) when appropriate in order to resolve disputes between the Discovery Participants.

All Discovery Participants shall meet and confer in good faith without the assistance of the Court(s) in attempting to resolve any disputes in the interpretation or implementation of this Discovery Plan. Discovery Participants are required to promptly seek relief from the applicable Court or Courts if an impasse is reached in any dispute and shall not be heard to complain of any prejudice resulting from their own delay in seeking relief.

All motions or directions sought from the Court(s) pursuant to this Discovery Plan shall be brought before the following Court or Courts: with respect to Allocation, before Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and Justice Morawetz of the Ontario Superior Court of Justice; with respect to US Claims, before Judge Gross; and with respect to Canadian Claims, before Justice Morawetz. The Courts shall hold regularly scheduled joint discovery conferences for discovery disputes in Allocation and those discovery disputes that affect both jurisdictions.

The EMEA Debtors' participation in the procedures addressed herein is without prejudice to their contention that Allocation should be decided by arbitration rather than the US and Canadian Courts, and shall not be

construed as a waiver of their objection to determining Allocation in accordance with the procedures set forth in the Allocation Protocol, this Discovery Plan and the Litigation Timetable.

All Discovery Participants reserve any rights they may have to object to the standing of any party to participate in any trial.

**SCHEDULE A**

Format for Exchange of Productions: Productions will be exchanged by loading each production into the Merrill Lextranet database with the following objectively coded metadata, if reasonably possible, and in the following form:

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| Document Numbering | *Docid* | Note Text | Unique document ID number (alpha prefix followed by sequential numbering) | AA0000001 |
| | *Parentid* | Note Text | Docid for the parent e-mail or document that has an attachment associated with it | AA0000001 |
| | *Attchids* | Note Text | Docid(s) attached to Parentid | AA0000001 |
| Fields/Coded Data for E-mails | *Datesent* | Date | Used to identify the date that an e-mail was sent | MM/DD/YYYY As per metadata |
| | *Timesent* | Time | Time e-mail was sent | As per metadata (HH:MM:SS) |
| | *Timercvd* | Time | Time e-mail was received | As per metadata (HH:MM:SS) |
| | *To* | Multi-Entry | Name/e-mail address of the address(es) of individuals who received the e-mail | As per metadata |
| | *From* | Note Text | Name/e-mail address of the person who sent the e-mail | As per metadata |
| | *Subject* | Note Text | Contents of the subject field in the e-mail | As per metadata |
| | *Cc* | Multi-Entry | Names/e-mail address(es) of the individuals who were copied on the e-mail | As per metadata |
| | *Bcc* | Multi-Entry | Names/e-mail address(es) of the individuals who were blind-copied on the e-mail | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment  When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc  This field is required for loading electronic documents and attachments | As per metadata |
| Fields/Coded Data for Attachments and Loose Electronic Documents | *Datesvd* | Date | Date an electronic file or attachment was last saved | As per metadata |
| | *Datecrtd* | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
| | *Filetype* | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | *Filename* | Note Text | File name of electronic file or attachment | As per metadata |
| | *Doclink* | Note Text | Used to link a document to the database record  Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | *Folder* | Note Text | Original folder containing path of electronic document as provided | As per metadata |
| | *Custodian* | Note Text | Person from whom document was collected | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment  When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc  This field is required for loading electronic documents and attachments. | As per metadata |

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| Fields/Coded Data for Paper Documents | *Docdate* | Date | Date of document (subjectively coded) | MM/DD/YYYY |
| | *CollectDate* | Date | Creation Date of Electronic File | MM/DD/YYYY |
| | *Source* | Note Text | Location or person from whom document was collected (subjectively coded) | |
| | *Attach#* | Note Text | Sequential number applied to attachments showing attachment sequence | .001, .002, etc. |
| | *Author* | Multi-Entry | Author(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| | *Recip* | Multi-Entry | Recipient(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| Fields/Coded Data for Electronic Documents (Chronological Review) | *Leaddate* | Date | Date of the parent document, populated to all attachments for use with chronological sorting while keeping document families together | MM/DD/YYYY |
| | *Leadtime* | Date | Time of the parent document, populated to all attachments for use with chronological sorting while keeping document families together

Allows for further sorting of documents dated the same day by time | HH:MM:SS |

1.  Each document shall be individually produced with a unique document ID number.

2.  For each document, the Discovery Participant shall provide a text file containing the text extracted directly from the native electronic version of that document, unless the document was redacted, is an image file, is a scanned hardcopy document, or is in another format from which text cannot be reasonably extracted. In these instances, provide a text file created using document-level optical character recognition (OCR) to the extent reasonably practicable.

3.  All images will be single page tiff format (excluding spreadsheets, Powerpoint presentations, and database files which will be provided in native format) with 300 dpi specifications to the extent practicable. Native format files to be provided in the eDocs folder.

4.  Parties will provide the following load files formatted as follows:

    (a)  Image folder (single page tiff, 300 dpi);

    (b)  eDocs folder (for native files);

    (c)  OCR folder (with text files and a control list for loading);

    (d)  data.txt or data.csv (with coded fields listed above for ESI and paper documentation); and

(e)      imginfo.txt or imginfo.csv or other formats at the request of the receiving party to the extent practicable.

5.      If a document and its exact duplicates are associated with the same custodian, the responding party may withhold the exact duplicates from production.  If a document and its exact duplicates are associated with different custodians, the responding party may withhold the exact duplicates from production and provide a metadata field for the produced document indicating the custodians for whom duplicates were withheld where practicable.

6.      While Discovery Participants will attempt in good faith to comply with all of the above, Discovery Participants shall produce documents and comply with the above to the extent practicable.

377

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
Proceeding commenced at Toronto

ORDER
(Litigation Timetable and
Discovery Plan)

**Goodmans LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON   M5H 2S7

Jay A. Carfagnini (LSUC#: 22293T)
Jessica Kimmel (LSUC#: 32312W)
Peter Ruby (LSUC#: 38439P)
Joseph Pasquariello (LSUC#: 38390C)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

\6205385

# BLUE SHEET

Court File No. 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

| | | |
|---|---|---|
| THE HONOURABLE | ) | TUESDAY, THE 27th DAY OF |
| | ) | |
| MR. JUSTICE PATTILLO | ) | AUGUST, 2013 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, C.C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### ORDER APPROVING AMENDED LITIGATION SCHEDULE

THIS MOTION, made by the court-appointed administrators and authorized foreign representatives (collectively, the "Joint Administrators") of Nortel Networks UK Limited and certain of its affiliates (the "EMEA Debtors") was heard on this day at 330 University Avenue, Toronto, Ontario.

**ON BEING ADVISED OF THE SUPPORT OF THE CORE PARTIES PURSUANT TO THE STIPULATION ATTACHED AT SCHEDULE "A" HERETO:**

1.      THIS COURT ORDERS THAT the Allocation Protocol, approved by Morawetz J. on April 3, 2013, and the Litigation Timetable and Discovery Plan, approved by Morawetz J. on May 15, 2013, shall be and are hereby amended in the form attached at Schedule

"B" hereto. This Court shall retain jurisdiction over all matters arising from or relating to the interpretation or implementation of this Order.

2.      THIS COURT ORDERS THAT all of the dates set forth in the Allocation Protocol and the Litigation and Discovery Plan shall remain in full force and effect except to the extent expressly modified by the terms of this Order.

3.      THIS COURT ORDERS THAT the Stipulation Regarding EMEA Motion for Extension of Schedule, attached at Schedule "A" hereto, shall be and is hereby approved.

ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

AUG 2 8 2013

NB

## SCHEDULE A

**Attached.**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re

NORTEL NETWORKS INC., *et al.*,

Debtors.

Chapter 11

Case No. 09-10138 (KG)
(Jointly Administered)

— and —

Court File No. 09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C.
1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER PART IV OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, R.S.C. 1985, c. C-36, AS AMENDED.

**STIPULATION REGARDING EMEA MOTION FOR EXTENSION OF SCHEDULE**

In conjunction with the agreement of the U.S. Debtors and Canadian Monitor

and Debtors (together with the EMEA Debtors, the "Estates"), as well as all other Core Parties

(together with the Estates, the "Parties"), to support the modification to the Litigation Timetable,

Discovery Plan and Allocation Protocol set forth in EMEA Debtors' Motion to Modify

Scheduling Orders (the "Motion"), the Parties hereby agree as follows, which agreement shall be

submitted to the Courts for concurrent approval with modification to the Litigation Timetable,

Discovery Plan and Allocation Protocol set forth in the Motion.  The Parties all acknowledge that

rather than seek piecemeal extensions and the burden such practice would have on the Courts and the Parties, the Motion and the Parties' support of modification to the Litigation Timetable, Discovery Plan and Allocation Protocol as set forth in the Motion is intended both to compensate for delays in the Litigation Timetable to date and reasonably anticipated future adjustments that will best enable the Parties to meet the proposed amended Litigation Timetable. This Stipulation shall be without effect in the event the modification to the Litigation Timetable, Discovery Plan and Allocation Protocol as set forth Motion is rejected by the Courts and it is recognized that the Parties may have different positions on how the existing or any other proposed amended Litigation Timetable can be met, with different conditions, if these ones are not adopted.

      1.     The Parties agree that they will complete their non-privileged document productions heretofore promised in the manner each of them has described no later than September 3, 2013 (the date by which productions will be sent, not necessarily received). Privilege logs shall be exchanged, and the production of joint privileged documents to the other Estates shall be completed, no later than September 7, 2013.

      2.     (a)     The Parties agree that none of them will challenge the methodology that any other Party has disclosed it has used to gather, review and produce responsive documents, including the use of predictive coding, manual reviews, particular promised key words, particular promised date ranges, the particular promised custodians whose documents have been searched and the particular identified repositories that have been searched.

           (b)     Notwithstanding the foregoing, on or before 10:00 am (EDT) August 26, 2013, the UKPC shall disclose to the Parties a description of the methodology used to gather, review and produce responsive documents and, in the event any other Party notifies the other Parties, on or before 10:00 am (EDT) August 29, 2013, that it intends to reserve its right to

2

challenge the methodology disclosed by the UKPC, the preceding sub-paragraph 2(a) shall not apply as between any member of that Party's Deposition Group and the UKPC.

3. Save for Parties' right to seek additional limited, targeted disclosure as set forth below, the Parties agree to forego further document requests of other Parties or requests that additional custodians or repositories of documents be searched. With due consideration being given to the associated cost or burden, Parties may seek limited, targeted disclosure of particular material documents or types of documents that were not captured by the prior searches or whose existence or relevance is discovered after the date hereof. Any Party receiving such a request shall reserve all rights to oppose such request. In the event of any dispute over such request, the requesting Party may make an application to the applicable Court(s) with a showing of good cause for the further disclosure. Nothing herein shall prevent any Party from assessing and if appropriate challenging assertions of privilege by other Parties.

4. After completion of their non-privileged document production as contemplated in paragraph 1 above and the completion of their privilege logs and any associated production, it is not expected that the Parties will make further productions of documents. In order to prevent the selective disclosure and use of favorable documents while avoiding the production of documents favorable to other Parties, if any of the Parties do in the future produce additional documents other than as a result of a request, agreement or court order providing for a targeted search, that Party will perform a full search for responsive documents consistent with that Party's methodology or the general methodology employed by any of the Estates. Other than pursuant to a specific targeted request, agreement or court order, any partial search for documents shall obligate that Party to perform a full search and production consistent with that Party's search and review methodology or with the general search and review methodology

3

employed by any of the Estates. In the event of future disagreement or perceived ambiguity concerning this paragraph, the Parties describe this agreement as intending for no "cherry-picking."

      5.    The proposed schedule in the Motion shall be amended such that the date for depositions or examinations to begin shall be September 23, 2013. Notwithstanding the foregoing, depositions or examinations previously scheduled through judicial process may proceed prior to September 23, 2013 if, upon request, the deponent or examinee does not agree with the noticing party at least five business days before the scheduled deposition or examination date to a mutually acceptable alternative date between September 23, 2013 and the close of fact discovery.

      6.    The Parties agree to undertake reasonable efforts to spread depositions and examinations evenly throughout the period for fact discovery and shall offer dates for witnesses they are producing voluntarily that enables depositions and examinations to be scheduled in such manner.

      7.    The Parties agree that the pendency of any third party discovery requests, or the receipt after August 31, 2013 of any third party documents, shall not be grounds to adjourn, delay or refuse to schedule the deposition or examination of any witness currently or formerly associated with a Party except upon a showing of good cause and determination of the Court(s) that it would advance the interests of justice. In the event of objections by third parties with regard to the scope of third party discovery requests or assertions of privilege, the Parties agree that they will meet and confer promptly with such third parties (and, as appropriate, among themselves) to consider the propriety of narrowing or limiting their scope to avoid the need for judicial intervention.

8.    Provided appropriate judicial process to compel the production of documents or testimony from third parties (which excludes persons currently or formerly associated with a Party who are being voluntarily produced for deposition or examination by a Party) is issued or commenced no later than September 30, 2013 and the noticing Party proceeds thereafter with reasonable diligence, the inability to compel such production of documents or testimony by the deadline to complete fact witness depositions or examinations shall not be a bar to obtaining such documents or testimony thereafter; provided, however, that

a.  nothing herein shall prohibit a Party from seeking third party discovery (through judicial process or otherwise) after September 30, 2013 that is completed by the deadline for completion of fact depositions and examinations (extendable by agreement of the Parties or court order for good cause); and

b.  absent court order, the absolute deadline for the receipt of such documents or testimony shall be the date for the service of rebuttal expert reports.

c.  Except for good cause shown and upon determination of the Courts that it would be in the interests of justice, the pursuit of any discovery from third parties shall not provide a basis for further deferral of the trial date or adjournment of any of the interim dates set forth in the Motion.

*[Remainder of Page Left Intentionally Blank]*

5

9.     The Parties support, and will move for, the prompt entry/approval of the

draft of the Deposition Protocol dated August 23, 2013 in the form annexed hereto as **Exhibit 1**.


Dated:  August 25, 2013

*Counsel for the Official Committee
of Unsecured Creditors*

*/s/ Fred Hodara*
AKIN GUMP STRAUSS HAUER & FELD
LLP

David H. Botter
Fred Hodara
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins
Christopher M. Samis
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

DENTONS CANADA LLP
(formerly Fraser Milner Casgrain LLP)

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

*Counsel for the Debtors
and Debtors in Possession*

*/s/ Jeffrey A. Rosenthal*
CLEARY GOTTLIEB STEEN & HAMILTON
LLP

Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

TORYS LLP

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2, Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

*Counsel for the Bondholders*

/s/ Atara Miller
_____

PACHULSKI STANG ZIEHL & JONES
LLP

Laura Davis Jones
Kathleen P. Makowski
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

MILBANK, TWEED, HADLEY &
McCLOY LLP

Dennis F. Dunne
Thomas R. Kreller
Albert A. Pisa
Andrew M. Leblanc
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

BENNETT JONES

Gavin Finlayson
Richard B. Swan
Kevin Zych
S. Richard Orzy
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario M5X 1A4
Canada

*Counsel for Ernst & Young Inc. as Monitor*

/s/ Paul Keller
_____

GOODMANS LLP

Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, ON M5H 257
Canada
Telephone: (416) 979 2211
Facsimile: (416) 979 1234

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Counsel for the Canadian Debtors*

/s/ Paul Keller

GOWLING LAFLEUR HENDERSON LLP

Jennifer Stam
Derrick Tay
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Tel: +1 416 216 4000
Fax: +1 416 216 3930

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY
PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Counsel for the Joint Administrators*

/s/ Neil Oxford

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

James L. Patton
Edwin J. Harron
John T. Dorsey
Jaime Luton Chapman
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Gabrielle Glemann
Charles H. Huberty
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

DAVIES WARD PHILLIPS & VINEBERG LLP

Robin Schwill

8

*Counsel for the Canadian Creditors Committee*

/s/ Selinda A. Melnik
Selinda A. Melnik (DE Bar No. 4032)

*on behalf of*

DLA PIPER LLP (US)
*U.S. Counsel for the Canadian Creditors Committee*

Selinda A. Melnik
919 North Market Street
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 468-5650
Facsimile: (302) 778-7914
- *and* -
Richard Hans
Timothy Hoeffner
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4530

CAW-CANADA LEGAL DEPARTMENT
*Lawyers for the Canadian Autoworkers Union*

Barry Wadsworth
205 Placer Court
Toronto, ON  M2H 3H9
Telephone: (416) 495-3776
Facsimile: (416) 495-3786

KOSKIE MINSKY LLP
*Lawyers for the Former and Disabled Canadian Employees*

Mark Zigler
Susan Philpott
Ari Kaplan
20 Queen Street West, Suite 900
Toronto, ON  M5H 3R3
Telephone: (416) 595-2090
Facsimile: (416) 204-2877

Sean Campbell
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

LAX O'SULLIVAN SCOTT LISUS LLP

Matthew P. Gottlieb
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

*Counsel for The Bank of New York Mellon, as Indenture Trustee*

/s/ Michael Riela

LATHAM & WATKINS LLP

Michael J. Riela
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

MCMILLAN LLP

Sheryl E. Seigel
Brookfield Place, Suite 4400
181 Bay Street
Toronto, ON M5J 2T3
Canada
Telephone: (416) 865-7000
Facsimile: (416) 865-7048

McCARTHY TÉTRAULT LLP
*Lawyers for Morneau Shepell Ltd.,*
*as administrator of the Nortel Canada*
*registered pension plans*

R. Paul Steep
Byron D. Shaw
Elder Marques
James D. Gage
Barbara J. Boake
TD Bank Tower, Suite 5300
Toronto Dominion Centre
66 Wellington Street West
Toronto ON M5K 1E6
Telephone: (416) 601-7998
Facsimile: (416) 868-0673

PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP

Ken Rosenberg
Lily Harmer
Karen Jones
Massimo Starnino
155 Wellington Street West, 35th Floor
Toronto, ON  M5V 3H1
Telephone: (416) 646-4300
Facsimile: (416) 646-4301

SHIBLEY RIGHTON LLP
w/ NELLIGAN O'BRIEN PAYNE LLP
Barristers and Solicitors
*Lawyers for the Active and Transferred*
*Canadian Employees*

Arthur O. Jacques/ Thomas McRae
Co-Counsel: Janice Payne / Steve Levitt
250 University Avenue, Suite 700
Toronto, ON  M5H 3E5
Telephone: (416) 214-5213/5206
Facsimile: (416) 214-5413/5400

*Counsel for the Trustee of Nortel Networks UK*
*Pension Plan and the Board of the Pension*
*Protection Fund*

*/s/ Sameer Advani*
BAYARD, P.A.

Charlene D. Davis
Justin R. Alberto
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

WILLKIE FARR & GALLAGHER LLP

Brian E. O'Connor
787 7th Ave.
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-9251

CASSELS BROCK & BLACKWELL LLP

David Ward
William Burden
Lara Jackson
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

THORNTON GROUT FINNIGAN LLP

Michael Barrack
D.J. Miller
Rebecca Lewis

*Counsel for the Wilmington Trust Company, not in its individual capacity but solely as Trustee*

/s/ David A. Crichlow

KATTEN MUCHIN ROSENMAN LLP

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

HEENAN BLAIKIE LLP

John Salmas
Kenneth David Kraft
Bay Adelaide Centre
P.O. Box 2900
333 Bay Street, Suite 2900
Toronto, ON M5H 2T4
Telephone: (416) 360-6336
Facsimile: (416) 360-8425

Andrea McEwan
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON M5K 1K7

*Counsel for the Law Debenture Trust Company of New York*

/s/ Daniel A. Lowenthal

BORDEN LADNER GERVAIS

John D. Marshall
Craig J. Hill
Edmond Lamek
Scotia Plaza,
40 King Street West, 44th Floor
Toronto, Ontario M5H 3Y4
Canada
Telephone: (416) 367-6000
Facsimile: (416) 367-6749

PATTERSON BELKNAP WEBB & TYLER LLP

Daniel A. Lowenthal
Brian P. Guiney
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

MORRIS JAMES LLP

Stephen M. Miller
Courtney R. Hamilton
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

11

*Counsel for the Former Directors and
Officers of Nortel Networks Corporation
and Nortel Networks Limited*

*/s/ Betsy Putnam*

OSLER, HOSKIN & HARCOURT LLP

Lyndon A.J. Barnes
Adam Hirsh
Box 50, 1 First Canadian Place
Toronto, Ontario
M5X 1B8
Canada

## EXHIBIT 1

### Deposition Protocol

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------X
                                                :
                                                :    Chapter 11
                                                :
In re                                           :
                                                :
Nortel Networks Inc., et al.,[1]                :    Case No. 09-10138 (KG)
                                                :
                     Debtors.                   :    (Jointly Administered)
                                                :
------------------------------------------------X
```

## DEPOSITION PROTOCOL STIPULATION

Having conferred and agreed that the orderly and efficient conduct of depositions[2] in these actions requires their mutual cooperation, the parties in this action hereby stipulate and agree that, subject to order of the U.S. and Canadian Courts, the following protocol (the "Deposition Protocol") shall apply to the taking of depositions/examinations in the Allocation dispute, and the litigations concerning the US Claims and the Canadian Claims.[3]

A.   APPLICABILITY OF DEPOSITION PROTOCOL

1.   This Deposition Protocol shall govern all oral depositions and examinations out of court of fact deponents in these proceedings, including depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) and party representative examinations pursuant to Rule 31 of the *Ontario Rules of Civil Procedure.*

---

[1]      In addition to Nortel Networks Inc., the Debtors in the Chapter 11 cases are:  Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA").  Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://epiq11.com/nortel.

[2]      The term "deposition(s)," as used herein, refers to both depositions and examinations.

[3]      Capitalized terms used in this Deposition Protocol but not otherwise defined shall have the meanings ascribed to them in the Litigation Timetable and/or the Allocation Protocol.

2. This Deposition Protocol shall apply to:

    a. The Canadian Allocation Group and Canadian Claims Defendant Group (the "Canadian Deposition Group");

    b. The US Allocation Group and US Claims Defendant Group (the "US Deposition Group");

    c. The EMEA Allocation Group, US EMEA Claimants Group, Canadian EMEA Claimants Group, and UK Pension Claimants ("EMEA Deposition Group") (each of the Canadian Deposition Group, US Deposition Group and EMEA Deposition Group a "Deposition Group") .

    d. All other Core Parties.  Except as otherwise provided herein, each Discovery Participant that is not a member of a Deposition Group will be deemed for purposes of this Deposition Protocol to be a member of the Deposition Group with similarly aligned interests for each applicable deposition.

## B.    LOCATION OF DEPOSITIONS

To maximize the efficiency of the depositions/examinations and for the convenience of all parties:

1. Depositions taking place in New York shall take place at Cleary Gottlieb Steen & Hamilton, LLP, One Liberty Plaza, New York, New York, 10006 (or alternative nearby site in the event of capacity restrictions).

2. Depositions taking place in Toronto shall take place at Goodmans LLP, 333 Bay Street Suite #3400, Toronto, Ontario M5H 2S7 (or alternative nearby site in the event of capacity restrictions).

3. Depositions taking place in London shall take place at Herbert Smith Freehills LLP, Exchange House, Primrose Street, London EC2A 2HS (or alternative nearby site in the event of capacity restrictions).

4. Depositions taking place in Ottawa shall take place at Gowling LaFleur Henderson LLP, 160 Elgin Street, Suite 2600, Ottawa, Ontario K1P 1C3 (or alternative nearby site in the event of capacity restrictions).

5. Depositions in other cities will take place either at a location chosen by the producing Discovery Participant, if applicable, or by designation or agreement by the Deposition Group(s) with whom the witness was primarily associated, which may take into account the convenience of the witness.

6. The host of each deposition shall provide one large room for the deposition as well as one breakout room for each of the three Deposition Groups, and one additional breakout room for the witness (and his or her counsel, if the witness is separately represented). In the event that more than one deposition occurs at a host firm on a given day, only one breakout room needs to be provided per Deposition Group.

7. All witnesses who a Discovery Participant has the ability to compel attendance in Toronto or New York [or London] shall be produced for deposition in either Toronto, New York [or London] at the option of the producing Discovery Participant. Discovery Participants shall use reasonable efforts to produce all cooperating witnesses in either Toronto, New York [or London], and each Discovery Participant producing a cooperating witness shall offer to pay that witnesses' reasonable travel expenses to do so.[4]

---

[4]    The Parties have not yet reached agreement on whether witnesses currently employed by or under the control of the EMEA Debtors or the U.K. Pension Claimants must be produced in Toronto or New York, or may be produced in London, and have reserved this issue for further discussion among themselves and, failing agreement, resolution by the Court(s). The Parties do agree that the EMEA Debtors and the U.K. Pension Claimants may produce cooperating witnesses not employed by them or under their control in London.

3

## C.    LENGTH OF DEPOSITIONS

1.  For witnesses designated by one or two Deposition Groups,[5] the presumption shall be that depositions shall last no longer than one seven-hour day (measured by the "on-the-record" time).

    a.  For witnesses designated by one Deposition Group, five hours shall be allocated for the designating Deposition Group, and one hour each shall be allocated for the remaining two Deposition Groups.

    b.  For witnesses designated by two Deposition Groups, three hours shall be allocated for each designating Deposition Group, and one hour shall be allocated for the remaining Deposition Group.

2.  For witnesses designated by three Deposition Groups, the presumption shall be that depositions shall last no longer than one ten-hour day (measured by the "on-the-record" time), or one and one half days, at the option of the witness. Each Deposition Group shall be allocated equal time.

3.  On August 9, 2013, each Deposition Group served all Core Parties with a list of designated witnesses that Deposition Group wishes to cross-designate. On August 13, 2013, each Deposition Group served all Core Parties with a list of witnesses that such Deposition Group anticipates requiring more time to examine than the presumed time allotment herein, including the amount of time that the Deposition Group requests for each such witness. In the event the total amount of time requested exceeds the presumptive maximum for a particular deposition and the witness is unwilling to agree to such additional time, the parties shall confer in good faith in an effort to reduce the total requested time and, failing agreement, shall have the right to seek judicial relief in

---

[5]    If, pursuant to Section 6 of the Discovery Plan, any Claim or Allocation Group within a Deposition Group designated or cross-designated the witness, the witness will be deemed "designated by" such Deposition Group, including for purposes of time allocations.

advance of such deposition. If the witness is willing to agree to additional time (including time over and above the total amount requested by the Deposition Groups), the Deposition Groups shall confer in good faith on a fair allocation of the additional time to depose the witness. Absent extraordinary circumstances, and to avoid the burden on a witness to appear twice, any disagreements with the allocated time for a deposition must be raised, and if unresolved, judicial relief seeking modification sought, prior to a deposition.

4. For purposes of time allocation, Core Parties that are not in one of the Deposition Groups shall be grouped by agreement with a Deposition Group with similarly aligned interests for that deposition and, if an agreement cannot be reached, may seek leave of the Court(s) or consent of the Deposition Groups for a separate time allocation.

5. The court reporter shall maintain a total running time for actual deposition testimony and record how much time is taken in each deposition by each Deposition Group.

6. Where necessary to complete the deposition and avoid unnecessary motion practice, the deponent may agree, at the request of any Discovery Participant, to extend the length of any deposition for additional time on the same day. The travel plans of other Core Parties shall not be an excuse to object to the extension of a deposition in the event of such agreement. In the event more than a de minimis amount of additional time is granted, the Core Parties shall work collaboratively to fairly allocate such additional time.

7. Time spent participating in teleconferences with the Court(s) or their agents during a deposition shall not be counted as "on the record" time for purposes of calculating the time remaining for the deposition.

**D.    SCHEDULING OF DEPOSITIONS**

1.  For witnesses designated for deposition by July 30, 2013, Discovery Participants advised the other Discovery Participants on August 13, 2013 of those witnesses they have been informed will appear voluntarily.  After a seven-day grace period expiring on August 20, 2013, for witnesses that have not indicated a willingness to appear voluntarily, any Discovery Participant may subpoena, issue any other applicable process, and/or contact that witness directly (subject to paragraph 2(c), below).

2.  For witnesses not voluntarily appearing:

    a.  The Discovery Participant with whom the witness was associated must provide last known contact information (including phone number) for the witness if not previously disclosed in interrogatory responses;

    b.  The Discovery Participant with whom that witness was associated must provide the name and contact information (including phone number) of the witness's attorney, if known;

    c.  Any Discovery Participant contacting such witness must first ask the witness if he or she has an attorney for purposes of this litigation, and if the answer is affirmative, further contact should occur through that counsel.  Discovery Participants must otherwise comply with all applicable ethical rules for speaking with unrepresented persons; and

    d.  Any contacting Discovery Participant shall notify the other Discovery Participants if he or she learns of contact or counsel information not previously disclosed to the other Discovery Participants.

3.  No depositions shall be conducted on weekends absent consent of each of the relevant Deposition Groups, on Labor Day (September 2, 2013), Rosh Hashanah (September 4, 5, and 6, 2013), Yom Kippur (September 13 and 14, 2013), Canadian Thanksgiving

(October 14, 2013) and U.S. Thanksgiving (November 28 and 29, 2013). In the event a weekend deposition is requested and the requisite consent cannot be obtained, the Deposition Group proposing such deposition may proceed only with leave upon demonstration of good cause to the U.S. Court for depositions taking place in the U.S., the Canadian Court for depositions taking place in Canada, and either Court for depositions taking place outside of North America.

4. Except upon order of the Court for good cause shown, or consent of each of the Deposition Groups, fact depositions shall be taken only once.

5. A master deposition calendar shall be maintained either online in realtime or by a member of the Scheduling Committee to be designated that shall update and circulate the calendar on a daily basis.

6. Depositions of witnesses under the control of a Discovery Participant or otherwise voluntarily appearing ("Voluntary Witnesses") shall be scheduled as follows:

   a. A scheduling committee (the "Scheduling Committee") shall be comprised of one person for each Deposition Group (who may be represented by an alternate if unavailable). By August 26, 2013, all Discovery Participants shall provide the dates that they have received from each Voluntary Witness on which they are (or are not) available to be deposed from September 23, 2013 through November 27, 2013. Discovery Participants shall seek to obtain multiple potential dates from witnesses. All Discovery Participants shall make every reasonable effort to be in a position to offer a sufficiently broad range of dates for their witnesses collectively so as to enable depositions of witnesses of each Discovery Participant to be scheduled relatively evenly throughout the period for fact depositions.

   b. The Scheduling Committee shall meet and confer by August 30 and as necessary thereafter to schedule the depositions of Voluntary Witnesses whose availability is

known as of the date of the creation of that schedule and shall distribute a calendar as soon as possible after conferring, but no later than September 4. Objections to this initial proposed schedule shall be made on or prior to September 9, 2013. Recognizing the importance of accommodating witnesses, objections to a date preferred by or required by the witness should be made sparingly and only in extreme circumstances.

c. Subsequent to August 30, 2013, Discovery Participants shall provide notice of potential deposition dates to the Scheduling Committee promptly after obtaining them from Voluntary Witnesses from whom they were unable to provide availability prior to the creation of the initial schedule, whereupon the Scheduling Committee shall meet and confer (which may be telephonic or by email) within three business days of being advised of available dates for a witness to select a proposed date for the deposition of that witness (provided however that the Scheduling Committee shall endeavor to meet and confer sooner if necessary to comply with the notice requirements in paragraph D(7) below). Any proposed deposition date and location for each witness determined by the Scheduling Committee shall be placed on the master calendar, following which all other Discovery Participants shall have two business days to object.

d. If the Scheduling Committee is unable to agree upon a proposed date for a witness within five business days of being provided with available dates, the party with whom the Voluntary Witness is cooperating shall select the date and inform the Scheduling Committee, following which all other Discovery Participants (including members of the Scheduling Committee) shall have two business days to object.

e. All objections shall be resolved through a meet and confer among the Scheduling Committee (or designated members) and the objector(s) within one business day;

8

failing resolution, the objector must seek relief from the Court(s) within two business days thereafter (by letter) by demonstrating good cause or the objection is waived.

7. Discovery Participants shall endeavor to provide the Scheduling Committee with sufficient advance notice of the first date a Voluntary Witness is available so as to provide the Scheduling Committee with sufficient time to notify all Discovery Participants of any deposition not less than five business days before examinations in North America and not less than seven business days before examinations outside of North America if more notice is not possible. Absent consent of each of the Discovery Groups, or authorization by one of the Courts, no deposition may be scheduled upon notice to all Discovery Participants of less than three business days if taking place in North America and five business days if taking place outside of North America.

8. Non-party depositions scheduled by compulsory process for witnesses who will not appear voluntarily ("Compulsory Witnesses") shall be immediately reflected on the calendar upon notice to the Scheduling Committee. Where more than one Deposition Group has designated a witness who will not agree to attend voluntarily, those Groups shall endeavor to coordinate the selection of a deposition date prior to one Deposition Group moving forward unilaterally. Except for such depositions noticed prior to the date hereof, where practicable, Discovery Participants shall adapt and utilize the Scheduling Committee procedure described in the preceding paragraphs to schedule the depositions of Compulsory Witnesses, including the deadlines set forth therein for objections, meet and confers and requests for judicial relief.

9. Once a Voluntary Witness has been placed on the master calendar and confirms the firm scheduling of his or her deposition, including its proposed length and location, and provided there are no timely objections to such scheduling, such Voluntary Witness

shall no longer be expected to remain available on any of the other dates that he or she may have previously indicated availability.

10. Once scheduled, depositions may not be postponed except on the unanimous consent (given or withheld in good faith) of the Scheduling Committee or for good cause authorized by the Court, except in the event of an emergency necessitated by the witness with insufficient time to obtain consent or leave. Immediate notice of any postponement shall be provided to the other Discovery Participants. So long as reasonable notice was provided consistent with paragraph D(7), the filing of an objection shall not result in the adjournment of a deposition unless a court order for such adjournment is obtained.

E.   **QUESTIONING AT DEPOSITIONS**

1. Deposition Groups shall allocate their time for each deposition among their members and shall each designate a lead examiner. Non-repetitive examination may be conducted by other Discovery Participants in the same Deposition Group (within the time allotted for that Group). The parties shall agree ahead of time on the order of questioning at each deposition and the lead examiners in each Deposition Group shall work in good faith as provided for in the Discovery Plan to coordinate the questioning in an effort to avoid duplication.

2. No more than two examiners per Discovery Participant may ask questions at a deposition. A second examiner may question the witness only on the following conditions: (i) the first examiner may not question the witness again after the second examiner has begun; (ii) the second examiner must have been present for the entirety of the first examiner's questioning; and (iii) the second examiner must question the witness only on a separate topic or separate topics than were covered by the first examiner.

3. Depositions shall begin promptly at 9:00 a.m. without exception unless absolutely necessary to accommodate the witness. As long as proper notice was provided, depositions shall commence at that time even if some Discovery Participants are not present.

4. An objection by one Discovery Participant preserves that objection for all Discovery Participants. Discovery Participants shall not make redundant objections.

   a. Objections to form shall be deemed to be on all grounds appropriate for a form objection.

   b. No objection other than to the form of the question is waived by failure to assert it during the deposition.

5. Nothing shall preclude counsel from seeking an order from the Court(s) to protect the witness where counsel has a reasonable, good faith belief that the witness is being questioned on wholly irrelevant matters or in an otherwise abusive manner, or that there are other grounds under Federal Rule of Bankruptcy Procedure 7026(c) or the Ontario Rule of Civil Procedure 34.14 for a protective order with respect to the questioning being conducted of the witness. In that event, counsel shall cooperate in deferring answers to those questions until later in the deposition to permit counsel to contact the Court. If the Court is unavailable throughout the deposition and the parties are unable to reach an agreement on the objected-to questions, the deposition may be adjourned until a court ruling can be obtained.

6. Discovery Participants are encouraged to limit attendance at depositions. There shall be no limitation on the number of attorneys viewing or listening remotely to a deposition, provided those attorneys following remotely remain silent.

7. For planning purposes, attendees shall endeavor to advise a designated person at the host location of their identities at least two business days prior to each deposition.

8. The Discovery Participants shall endeavor to have the court reporting service stream the deposition (audio, video, and/or transcription) over the internet so as to enable parties to follow the deposition remotely. Aside from limited questions (no more than ten) submitted in writing at least one business day prior to the commencement of the deposition where the number and scope of those questions do not warrant the attendance of counsel for a particular Discovery Participant at the examination, no examination may be conducted or objections asserted by any attorney not present at the deposition. No deposition shall be adjourned or delayed due to a problem with remote access technology. In the event of the advance submission of written questions, lead counsel at the deposition for the Discovery Group encompassing that Discovery Participant shall ask the questions but shall have the discretion and the duty not to ask any written questions he or she believes would be repetitive.

9. At the outset of the deposition, on the record, all counsel shall identify themselves and the Discovery Participant they represent. The Discovery Participants shall explore with the court reporting service how to record the identities of counsel following the deposition remotely.

**F.   USE OF DOCUMENTS**

1. No later than four business days before a deposition, all Discovery Participants intending to examine a deponent may, but shall not be obligated to, serve via email a non-binding list of the specific documents (by Bates number or, if previously marked, by exhibit number) that counsel anticipates using or referring to during the deposition. Discovery Participants shall endeavor to transmit pdfs of the actual documents with such email. In that circumstance, counsel need not bring extra copies of such documents except as necessary for the witness and his or her counsel.

2. Any counsel who does not pre-designate documents shall not forfeit the right to use those documents, but in that case, shall bring at least fifteen copies of such documents to the deposition for counsel and the witness, at least six of which must be hard copies and the balance of which can be pdfs in electronic form on individual USB drives/memory sticks. Any Discovery Participant that requests a copy of a document used during a deposition shall be provided one by the examining Discovery Participant following the deposition.

3. Each document marked for identification at a deposition shall be numbered with a new exhibit number. Counsel will make their best efforts to use the previously-marked exhibits by number in subsequent depositions.

4. To avoid the possibility of the same numbers being used for different exhibits during concurrently-conducted depositions, exhibits first marked during the deposition of a witness primarily associated with the Canadian Debtors shall begin with 1,000, the U.S. Debtors shall begin with 2,000, the EMEA Debtors shall begin with 3,000, the UK Pension Claimants shall begin with 4,000, and other parties shall begin with 5,000. (To the extent that a witness is primarily associated with more than one Discovery Participant, the lower sequence shall be used). When more than one deposition is occurring on the same day which poses risk of overlap, the examining parties shall confer in advance about starting numbers to use at those depositions to avoid overlap.[6]

5. Immediately following each deposition, the initial examiner shall be responsible for circulating a list of new exhibit numbers marked at such deposition, with reference to Bates numbers.

---

[6]    The Parties intend to confer further and, with the approval of each of the Discovery Groups prior to the commencement of depositions, may refer to exhibits by Bates numbers rather than exhibit numbers.

6.  The court reporter shall be responsible for ensuring that the original of all deposition transcripts, including exhibits, are retained at the court reporter's offices.

## G.    RULE 30(B)(6) AND REPRESENTATIVE PARTY DEPOSITIONS/ EXAMINATIONS

1.  Notwithstanding anything in the Discovery Protocol and Litigation Timetable to the contrary, representative party depositions/examinations for discovery under Rule 31 of the *Rules of Civil Procedure for Ontario* (hereinafter "Representative Depositions" of "Representative Witnesses") shall be conducted as follows:

a.  All previously served Rule 30(b)(6) notices are deemed superseded by this paragraph. At least ten business days before the commencement of Representative Depositions, a Deposition Group may serve a very limited number of subjects on which it believes no fact witness currently or formerly associated with the party producing the Representative Witness has provided adequate first-hand testimony. Provided such subjects are small in number and reasonable in scope, the Representative Witness has a duty to prepare to testify on the designated subjects. In the event a party designates an unreasonable number of subjects relative to the time limitations for the examination, subjects of an impermissibly broad scope or subjects inappropriate for a Representative Deposition, objections shall be served within three business days. The applicable parties shall meet and confer in good faith within two business days thereafter and, failing agreement, the burden shall be on the noticing party to obtain judicial relief at least two business days (in order to enable preparation) prior to the Representative Deposition. The failure to obtain judicial relief on a timely basis shall not be a basis to adjourn a Representative Deposition.

14

b.  Representative Depositions shall be scheduled through the Scheduling Committee process and with similar procedures. The identity of Representative Witnesses shall be disclosed at least five business days prior to their scheduled deposition dates.

c.  Discovery Participants shall not be limited in their examination of the Representative Witness to the noticed subjects; however, the Representative Witness shall have no duty to prepare for such examination on any specific subjects other than those noticed to which no objection was raised or court order obtained.

d.  Any undertakings required in accordance with Rule 31 of the *Rules of Civil Procedure for Ontario* shall be limited to specific matters of fact outside the Representative Witness's knowledge, information and belief that are not already the subject of first-hand deposition testimony obtained from a knowledgeable fact witness. In the event of disagreement, the applicable parties shall meet and confer promptly and promptly thereafter bring any dispute to the attention of the appropriate Court.

2.  Each Discovery Participant who filed an independent pleading (other than a non-argumentative joinder) shall designate one Representative Witness to be deposed in Toronto or New York, unless otherwise agreed by each of the Deposition Groups. Additionally, any Discovery Participant (other than the estates or UKP) who filed an independent pleading may withdraw such pleading by November 15, 2013 (and may file a non-argumentative joinder in its place) and thereby not be subject to the requirement to designate a Representative Witness. Notwithstanding the foregoing, the Directors and Officers shall not be required to designate a Representative Witness.

3.  Time allocation for Representative Depositions:

15

a. The Representative Witness for each of the U.S. Debtors, the Canadian Debtors, the U.K. Pension Claimants and NNUK shall be deposed for two seven-hour days, with one day being allocated to each of the two other Deposition Groups.

b. The Discovery Participants disagree on the amount of time for Representative Witnesses for the EMEA Debtors other than NNUK, including whether the EMEA Debtors can designate one Representative Witness for all of the EMEA Debtors collectively. To the extent they are unable to reach consensual resolution, the parties reserve all rights and will seek judicial guidance.

c. Each Representative Witness for each of the other Discovery Participants who filed an independent pleading (other than a non-argumentative joinder) shall be deposed for no longer than one seven-hour day (measured by the "on-the-record" time), with half being allocated to each of the two opposing Deposition Groups.

4. If a party designates a Representative Witness who has already been deposed as a fact witness, that party waives any objection to a second deposition. Unless agreed to by the Deposition Participants who noticed the fact deposition, Representative Depositions shall occur separate from fact depositions.

5. Representative Depositions shall occur during the last two weeks before fact depositions end.

**H.    COURT REPORTING SERVICES**

1. For reasons of cost and efficiency, Ellen Grauer Court Reporting Co. has offered discounted rates and shall be used for all depositions.

2. The court reporting service will provide remote access as described herein and secure real-time video streaming (if videotaped) and LiveNote, and the host party shall provide speaker-phone and internet capability for all depositions. The court reporting service will transcribe all conference calls with the Court from the deposition site as

part of the deposition transcript for that day. At the end of each day, the court reporter will provide a cleaned-up transcript of the LiveNote session (via web or email) to all Discovery Participants ordering a transcript.

3. Depositions may be videotaped or digitally recorded at the request and at the cost of any requesting Discovery Participant upon at least five business days' notice (where sufficient notice of the deposition is provided) to the court reporting service and all Discovery Participants and counsel for the witness. In the event multiple Discovery Participants request that a deposition be videotaped or digitally recorded, the cost of such taping shall be split equally among all Discovery Participants that request videotaping or digital recording. Counsel for the witness shall be entitled to a copy of such videotape without cost.

## I.    STANDARD STIPULATION

The following stipulation will apply to all depositions taken in these actions and shall be included in each transcript by the court reporter:

1. Upon completion of the transcription of today's session, the original transcript shall be sent to counsel for the witness by the court reporter. Counsel shall promptly forward it to the witness for review, correction and signature under penalty of perjury. The witness shall have 30 days from the day of receipt within which to review, make any corrections, sign the deposition transcript under penalty of perjury, and return it to counsel. The witness's counsel shall then forward the original transcript plus corrections to the court reporter, who will promptly notify all counsel of its receipt and any changes to testimony made by the witness.

2. If the witness is not represented by counsel, the original transcript will be sent to the witness by the court reporter. After review, correction and signature within 30 days from the date of receipt, the witness shall return the original transcript to the court

17

reporter, who will notify all counsel of its receipt and any changes to testimony by the witness.

3. The court reporter will retain the original transcript, including exhibits. If, for any reason, the original is lost, misplaced, not returned, not signed, or unavailable, a certified copy may be used in its place for all purposes. The court reporter is otherwise relieved of any statutory duties.

**J.    CONFIDENTIALITY**

The Order Entering a Protective Order [D.I. 10805] / [Order (Protective Order), Ontario Superior Court of Justice, 09-CL-7950, June 11, 2013] shall govern the treatment of Confidential Discovery Material presented at each deposition.

**K.    USE OF DEPOSITIONS AT TRIAL**

The Discovery Participants agree that Section 6(c) of the Discovery Plan should be clarified and amended, as necessary, to allow any Discovery Participant to use, in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Courts), deposition testimony of witnesses (other than deposition testimony of Representative Witnesses, the use of which is provided for under the Discovery Plan and the applicable Rules) as part of its direct or rebuttal case at trial, in a consistent manner for the purposes of Allocation, U.S. Claims and/or Canadian Claims. To the extent that the content of such deposition testimony would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Ontario rules of evidence or the Federal Rules of Evidence if the witness were present at trial in the relevant jurisdiction, any Discovery Participant may raise an objection to the admission of the testimony and either or both of the Court(s) may make a ruling about its admissibility at trial, based on the rules of evidence in each jurisdiction.

The Discovery Participants agree to meet and confer in good faith by no later than September 4, 2013 to endeavor to agree upon the parameters for the use and admissibility of

deposition testimony at trial, and any related considerations such as, without limitation, the extent

to which Discovery Participants will retain the right to compel witnesses to appear at trial. If the

Discovery Participants are unable to reach agreement by September 10, 2013, they will seek the

guidance of the Court(s) on the issue by no later than the week of September 16, 2013.

Dated: August 25, 2013

*Counsel for the Official Committee*
*of Unsecured Creditors*

/s/ Robert A. Johnson
AKIN GUMP STRAUSS HAUER & FELD
LLP

David H. Botter
Fred Hodara
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins
Christopher M. Samis
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

DENTONS CANADA LLP
(formerly Fraser Milner Casgrain LLP)

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

*Counsel for the Debtors*
*and Debtors in Possession*

/s/ Jeffrey A. Rosenthal
CLEARY GOTTLIEB STEEN & HAMILTON
LLP

Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

TORYS LLP

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2, Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

| | |
|---|---|
| *Counsel for the Bondholders* | *Counsel for Ernst & Young Inc. as Monitor* |
| */s/ Atara Miller* | */s/ Paul Keller* |

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones
Kathleen P. Makowski
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

MILBANK, TWEED, HADLEY & McCLOY LLP

Dennis F. Dunne
Thomas R. Kreller
Albert A. Pisa
Andrew M. Leblanc
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

BENNETT JONES

Gavin Finlayson
Richard B. Swan
Kevin Zych
S. Richard Orzy
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario M5X 1A4
Canada

GOODMANS LLP

Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, ON M5H 2S7
Canada
Telephone: (416) 979 2211
Facsimile: (416) 979 1234

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Counsel for the Canadian Debtors*

/s/ Paul Keller

GOWLING LAFLEUR HENDERSON LLP

Jennifer Stam
Derrick Tay
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Tel: +1 416 216 4000
Fax: +1 416 216 3930

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY
PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Counsel for the Joint Administrators*

/s/ Neil Oxford

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

James L. Patton
Edwin J. Harron
John T. Dorsey
Jaime Luton Chapman
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Gabrielle Glemann
Charles H. Huberty
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

DAVIES WARD PHILLIPS & VINEBERG LLP

*Counsel for the Canadian Creditors Committee*

/s/ Selinda A. Melnik
Selinda A. Melnik (DE Bar No. 4032)

*on behalf of*

DLA PIPER LLP (US)
*U.S. Counsel for the Canadian Creditors Committee*

Selinda A. Melnik
919 North Market Street
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 468-5650
Facsimile:  (302) 778-7914
- and -
Richard Hans
Timothy Hoeffner
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4530

CAW-CANADA LEGAL DEPARTMENT
*Lawyers for the Canadian Autoworkers Union*

Barry Wadsworth
205 Placer Court
Toronto, ON  M2H 3H9
Telephone: (416) 495-3776
Facsimile:  (416) 495-3786

KOSKIE MINSKY LLP
*Lawyers for the Former and Disabled Canadian Employees*

Mark Zigler
Susan Philpott
Ari Kaplan
20 Queen Street West, Suite 900
Toronto, ON  M5H 3R3
Telephone:  (416) 595-2090
Facsimile:   (416) 204-2877

Robin Schwill
Sean Campbell
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

LAX O'SULLIVAN SCOTT LISUS LLP

Matthew P. Gottlieb
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

*Counsel for The Bank of New York Mellon, as Indenture Trustee*

/s/ Michael Riela

LATHAM & WATKINS LLP

Michael J. Riela
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

MCMILLAN LLP

Sheryl E. Seigel
Brookfield Place, Suite 4400
181 Bay Street
Toronto, ON M5J 2T3
Canada
Telephone: (416) 865-7000
Facsimile: (416) 865-7048

McCARTHY TÉTRAULT LLP
*Lawyers for Morneau Shepell Ltd.,*
*as administrator of the Nortel Canada*
*registered pension plans*

R. Paul Steep
Byron D. Shaw
Elder Marques
James D. Gage
Barbara J. Boake
TD Bank Tower, Suite 5300
Toronto Dominion Centre
66 Wellington Street West
Toronto ON M5K 1E6
Telephone: (416) 601-7998
Facsimile: (416) 868-0673

PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP

Ken Rosenberg
Lily Harmer
Karen Jones
Massimo Starnino
155 Wellington Street West, 35th Floor
Toronto, ON M5V 3H1
Telephone: (416) 646-4300
Facsimile: (416) 646-4301

SHIBLEY RIGHTON LLP
w/ NELLIGAN O'BRIEN PAYNE LLP
Barristers and Solicitors
*Lawyers for the Active and Transferred*
*Canadian Employees*

Arthur O. Jacques/ Thomas McRae
Co-Counsel: Janice Payne / Steve Levitt
250 University Avenue, Suite 700
Toronto, ON M5H 3E5
Telephone: (416) 214-5213/5206
Facsimile: (416) 214-5413/5400

*Counsel for the Trustee of Nortel Networks UK*
*Pension Plan and the Board of the Pension*
*Protection Fund*

/s/ Sameer Advani
BAYARD, P.A.

Charlene D. Davis
Justin R. Alberto
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

WILLKIE FARR & GALLAGHER LLP

Brian E. O'Connor
787 7th Ave.
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-9251

CASSELS BROCK & BLACKWELL LLP

David Ward
William Burden
Lara Jackson
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

THORNTON GROUT FINNIGAN LLP

Michael Barrack
D.J. Miller

*Counsel for the Wilmington Trust Company, not in its individual capacity but solely as Trustee*

/s/ David A. Crichlow

KATTEN MUCHIN ROSENMAN LLP

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

HEENAN BLAIKIE LLP

John Salmas
Kenneth David Kraft
Bay Adelaide Centre
P.O. Box 2900
333 Bay Street, Suite 2900
Toronto, ON M5H 2T4
Telephone: (416) 360-6336
Facsimile: (416) 360-8425

Rebecca Lewis
Andrea McEwan
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON M5K 1K7

*Counsel for the Law Debenture Trust Company of New York*

/s/ Daniel A. Lowenthal

BORDEN LADNER GERVAIS

John D. Marshall
Craig J. Hill
Edmond Lamek
Scotia Plaza,
40 King Street West, 44th Floor
Toronto, Ontario M5H 3Y4
Canada
Telephone: (416) 367-6000
Facsimile: (416) 367-6749

PATTERSON BELKNAP WEBB & TYLER LLP

Daniel A. Lowenthal
Brian P. Guiney
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

MORRIS JAMES LLP

Stephen M. Miller
Courtney R. Hamilton
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

24

*Counsel for the Former Directors and*
*Officers of Nortel Networks Corporation and*
*Nortel Networks Limited*

*/s/ Betsy Putnam*

OSLER, HOSKIN & HARCOURT LLP

Lyndon A.J. Barnes
Adam Hirsh
Box 50, 1 First Canadian Place
Toronto, Ontario
M5X 1B8
Canada

## SCHEDULE B

## AMENDED LITIGATION TIMETABLE

| Deadline | Current Date | Proposed Revised Date |
|---|---|---|
| Date for completion of outstanding non-privileged document production | No date | September 3, 2013 |
| Date for completion of joint privileged documentation production and service of privilege logs | No date | September 7, 2013 |
| Date for depositions to begin | No date | September 23, 2013 |
| Deadline to identify experts and the subject matter of their reports | September 13, 2013 | November 27, 2013 |
| Deadline to complete witness depositions, including representative witness depositions | September 27, 2013 | December 13, 2013 |
| Deadline for service of expert reports | October 4, 2013 | December 20, 2013 |
| Deadline for service of rebuttal expert reports | November 1, 2013 | January 24, 2014 |
| Preliminary pre-trial conference | Week of November 11, 2013 | Week of February 17, 2014 |
| Deadline to complete expert depositions | December 6, 2013 | February 28, 2014 |
| Deadline to file a list of all witnesses and exhibits that each Core Party intends to rely upon as part of its direct case | December 9, 2013 | March 6, 2014 |
| Deadline to file:<br>• Pre-trial motions<br>• Pre-trial briefs<br>• All fact affidavits to be used in direct case<br>• All exhibits to be used in direct case<br>• All deposition testimony to be used in direct case | December 13, 2013 | March 14, 2014 |
| Pre-trial conference | Week of December 16, 2013 (if the Courts desire) | Week of March 17, 2014 (if the Courts desire) |
| Beginning of trial | January 6, 2014 | March 31, 2014 (or such later date as is convenient for the Courts) |

421

Court File No. 09-CL-7950

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, et al.
Applicants

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

PROCEEDING COMMENCED AT TORONTO

ORDER APPROVING
AMENDED LITIGATION TIMETABLE

**LAX O'SULLIVAN SCOTT LISUS LLP**
Counsel
Suite 2750, 145 King Street West
Toronto, ON  M5H 1J8

**Matthew P. Gottlieb** (LSUC #32268B)
**Tracy L. Wynne** (LSUC #37395R)
Tel: (416) 598-1744
Fax: (416) 598-3730

**DAVIES WARD PHILLIPS & VINEBERG LLP**
155 Wellington Street West
Toronto, ON  M5V 3J7

**Robin B. Schwill** (LSUC #38452I)
Tel: (416) 863-0900
Fax: (416) 863-0871

Lawyers for the Joint Administrators of Nortel Networks UK Limited
(In Administration)

**BLUE SHEET**



Court File No: 09-CL-7950

## ONTARIO
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

THE HONOURABLE MR.     )     **TUESDAY, THE 27th DAY OF**
JUSTICE PATTILLO     )     **AUGUST, 2013**
    )
    )
    )

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

## ORDER
### (Deposition Protocol)

**THIS MOTION**, made by Nortel Networks Corporation, Nortel Networks Limited,
Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel
Networks International Corporation (collectively, the "**Canadian Debtors**") jointly with Ernst &
Young Inc. in its capacity as monitor (the "**Monitor**") of the Canadian Debtors for the relief set
out in the Notice of Motion dated August 26, 2013 was heard this day at 330 University Avenue,
Toronto, Ontario.

**ON READING** the Ninety-Seventh Report of the Monitor dated August 26, 2013 (the
"**Ninety-Seventh Report**") and on hearing submissions of counsel for the Canadian Debtors, the
Monitor, and on being advised of the support of the other Core Parties (as defined in the Ninety-

Seventh Report), no one appearing for any other person on the service list, although served as appears from the Affidavit of Service of Jennifer Stam, sworn August 26, 2013, filed.

1.    THIS COURT ORDERS that the time for the service of the Notice of Motion, the Ninety-Seventh Report, and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.    THIS COURT ORDERS that the deposition protocol which is Exhibit "1" to the Stipulation, both of which are attached as Schedule A hereto, be and are hereby approved.

MISCELLANEOUS

3.    THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

4.    THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative

body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

AUG 2 7 2013

## SCHEDULE A
### Attached.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re

NORTEL NETWORKS INC., *et al.*,

Debtors.

Chapter 11

Case No. 09-10138 (KG)
(Jointly Administered)

— and —

Court File No. 09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C.
1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER PART IV OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, R.S.C. 1985, c. C-36, AS AMENDED.

**STIPULATION REGARDING EMEA MOTION FOR EXTENSION OF SCHEDULE**

In conjunction with the agreement of the U.S. Debtors and Canadian Monitor

and Debtors (together with the EMEA Debtors, the "Estates"), as well as all other Core Parties

(together with the Estates, the "Parties"), to support the modification to the Litigation Timetable,

Discovery Plan and Allocation Protocol set forth in EMEA Debtors' Motion to Modify

Scheduling Orders (the "Motion"), the Parties hereby agree as follows, which agreement shall be

submitted to the Courts for concurrent approval with modification to the Litigation Timetable,

Discovery Plan and Allocation Protocol set forth in the Motion. The Parties all acknowledge that

01:14041454.1

rather than seek piecemeal extensions and the burden such practice would have on the Courts and the Parties, the Motion and the Parties' support of modification to the Litigation Timetable, Discovery Plan and Allocation Protocol as set forth in the Motion is intended both to compensate for delays in the Litigation Timetable to date and reasonably anticipated future adjustments that will best enable the Parties to meet the proposed amended Litigation Timetable. This Stipulation shall be without effect in the event the modification to the Litigation Timetable, Discovery Plan and Allocation Protocol as set forth Motion is rejected by the Courts and it is recognized that the Parties may have different positions on how the existing or any other proposed amended Litigation Timetable can be met, with different conditions, if these ones are not adopted.

1.      The Parties agree that they will complete their non-privileged document productions heretofore promised in the manner each of them has described no later than September 3, 2013 (the date by which productions will be sent, not necessarily received). Privilege logs shall be exchanged, and the production of joint privileged documents to the other Estates shall be completed, no later than September 7, 2013.

2.      (a)      The Parties agree that none of them will challenge the methodology that any other Party has disclosed it has used to gather, review and produce responsive documents, including the use of predictive coding, manual reviews, particular promised key words, particular promised date ranges, the particular promised custodians whose documents have been searched and the particular identified repositories that have been searched.

(b)      Notwithstanding the foregoing, on or before 10:00 am (EDT) August 26, 2013, the UKPC shall disclose to the Parties a description of the methodology used to gather, review and produce responsive documents and, in the event any other Party notifies the other Parties, on or before 10:00 am (EDT) August 29, 2013, that it intends to reserve its right to

challenge the methodology disclosed by the UKPC, the preceding sub-paragraph 2(a) shall not apply as between any member of that Party's Deposition Group and the UKPC.

3.     Save for Parties' right to seek additional limited, targeted disclosure as set forth below, the Parties agree to forego further document requests of other Parties or requests that additional custodians or repositories of documents be searched. With due consideration being given to the associated cost or burden, Parties may seek limited, targeted disclosure of particular material documents or types of documents that were not captured by the prior searches or whose existence or relevance is discovered after the date hereof. Any Party receiving such a request shall reserve all rights to oppose such request. In the event of any dispute over such request, the requesting Party may make an application to the applicable Court(s) with a showing of good cause for the further disclosure. Nothing herein shall prevent any Party from assessing and if appropriate challenging assertions of privilege by other Parties.

4.     After completion of their non-privileged document production as contemplated in paragraph 1 above and the completion of their privilege logs and any associated production, it is not expected that the Parties will make further productions of documents. In order to prevent the selective disclosure and use of favorable documents while avoiding the production of documents favorable to other Parties, if any of the Parties do in the future produce additional documents other than as a result of a request, agreement or court order providing for a targeted search, that Party will perform a full search for responsive documents consistent with that Party's methodology or the general methodology employed by any of the Estates. Other than pursuant to a specific targeted request, agreement or court order, any partial search for documents shall obligate that Party to perform a full search and production consistent with that Party's search and review methodology or with the general search and review methodology

employed by any of the Estates. In the event of future disagreement or perceived ambiguity concerning this paragraph, the Parties describe this agreement as intending for no "cherry-picking."

5.    The proposed schedule in the Motion shall be amended such that the date for depositions or examinations to begin shall be September 23, 2013. Notwithstanding the foregoing, depositions or examinations previously scheduled through judicial process may proceed prior to September 23, 2013 if, upon request, the deponent or examinee does not agree with the noticing party at least five business days before the scheduled deposition or examination date to a mutually acceptable alternative date between September 23, 2013 and the close of fact discovery.

6.    The Parties agree to undertake reasonable efforts to spread depositions and examinations evenly throughout the period for fact discovery and shall offer dates for witnesses they are producing voluntarily that enables depositions and examinations to be scheduled in such manner.

7.    The Parties agree that the pendency of any third party discovery requests, or the receipt after August 31, 2013 of any third party documents, shall not be grounds to adjourn, delay or refuse to schedule the deposition or examination of any witness currently or formerly associated with a Party except upon a showing of good cause and determination of the Court(s) that it would advance the interests of justice. In the event of objections by third parties with regard to the scope of third party discovery requests or assertions of privilege, the Parties agree that they will meet and confer promptly with such third parties (and, as appropriate, among themselves) to consider the propriety of narrowing or limiting their scope to avoid the need for judicial intervention.

8.    Provided appropriate judicial process to compel the production of documents or testimony from third parties (which excludes persons currently or formerly associated with a Party who are being voluntarily produced for deposition or examination by a Party) is issued or commenced no later than September 30, 2013 and the noticing Party proceeds thereafter with reasonable diligence, the inability to compel such production of documents or testimony by the deadline to complete fact witness depositions or examinations shall not be a bar to obtaining such documents or testimony thereafter; provided, however, that

a.    nothing herein shall prohibit a Party from seeking third party discovery (through judicial process or otherwise) after September 30, 2013 that is completed by the deadline for completion of fact depositions and examinations (extendable by agreement of the Parties or court order for good cause); and

b.    absent court order, the absolute deadline for the receipt of such documents or testimony shall be the date for the service of rebuttal expert reports.

c.    Except for good cause shown and upon determination of the Courts that it would be in the interests of justice, the pursuit of any discovery from third parties shall not provide a basis for further deferral of the trial date or adjournment of any of the interim dates set forth in the Motion.

*[Remainder of Page Left Intentionally Blank]*

01:14041454.1

5

9.    The Parties support, and will move for, the prompt entry/approval of the draft of the Deposition Protocol dated August 23, 2013 in the form annexed hereto as **Exhibit 1**.

Dated: August 25, 2013

*Counsel for the Official Committee*
*of Unsecured Creditors*

/s/ *Fred Hodara*
AKIN GUMP STRAUSS HAUER & FELD
LLP

David H. Botter
Fred Hodara
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins
Christopher M. Samis
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

DENTONS CANADA LLP
(formerly Fraser Milner Casgrain LLP)

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

*Counsel for the Debtors*
*and Debtors in Possession*

/s/ *Jeffrey A. Rosenthal*
CLEARY GOTTLIEB STEEN & HAMILTON
LLP

Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

TORYS LLP

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2, Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

01:14041454.1

| *Counsel for the Bondholders* | *Counsel for Ernst & Young Inc. as Monitor* |
|---|---|
| /s/ Atara Miller | /s/ Paul Keller |

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones
Kathleen P. Makowski
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

MILBANK, TWEED, HADLEY & McCLOY LLP

Dennis F. Dunne
Thomas R. Kreller
Albert A. Pisa
Andrew M. Leblanc
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

BENNETT JONES

Gavin Finlayson
Richard B. Swan
Kevin Zych
S. Richard Orzy
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario M5X 1A4
Canada

GOODMANS LLP

Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, ON M5H 257
Canada
Telephone: (416) 979 2211
Facsimile: (416) 979 1234

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Counsel for the Canadian Debtors*

/s/ Paul Keller

GOWLING LAFLEUR HENDERSON LLP

Jennifer Stam
Derrick Tay
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Tel: +1 416 216 4000
Fax: +1 416 216 3930

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY
PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Counsel for the Joint Administrators*

/s/ Neil Oxford

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

James L. Patton
Edwin J. Harron
John T. Dorsey
Jaime Luton Chapman
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Gabrielle Glemann
Charles H. Huberty
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

DAVIES WARD PHILLIPS & VINEBERG LLP

Robin Schwill

01:14041454.1

8

*Counsel for the Canadian Creditors Committee*

/s/ Selinda A. Melnik
Selinda A. Melnik (DE Bar No. 4032)

*on behalf of*

DLA PIPER LLP (US)
*U.S. Counsel for the Canadian Creditors Committee*

Selinda A. Melnik
919 North Market Street
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 468-5650
Facsimile: (302) 778-7914
- and -
Richard Hans
Timothy Hoeffner
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4530

CAW-CANADA LEGAL DEPARTMENT
*Lawyers for the Canadian Autoworkers Union*

Barry Wadsworth
205 Placer Court
Toronto, ON  M2H 3H9
Telephone: (416) 495-3776
Facsimile:  (416) 495-3786

KOSKIE MINSKY LLP
*Lawyers for the Former and Disabled Canadian Employees*

Mark Zigler
Susan Philpott
Ari Kaplan
20 Queen Street West, Suite 900
Toronto, ON  M5H 3R3
Telephone:  (416) 595-2090
Facsimile:  (416) 204-2877

Sean Campbell
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

LAX O'SULLIVAN SCOTT LISUS LLP

Matthew P. Gottlieb
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

*Counsel for The Bank of New York Mellon, as Indenture Trustee*

/s/ Michael Riela

LATHAM & WATKINS LLP

Michael J. Riela
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

MCMILLAN LLP

Sheryl E. Seigel
Brookfield Place, Suite 4400
181 Bay Street
Toronto, ON M5J 2T3
Canada
Telephone: (416) 865-7000
Facsimile: (416) 865-7048

McCARTHY TÉTRAULT LLP
*Lawyers for Morneau Shepell Ltd.,*
*as administrator of the Nortel Canada*
*registered pension plans*

R. Paul Steep
Byron D. Shaw
Elder Marques
James D. Gage
Barbara J. Boake
TD Bank Tower, Suite 5300
Toronto Dominion Centre
66 Wellington Street West
Toronto ON M5K 1E6
Telephone: (416) 601-7998
Facsimile: (416) 868-0673

PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP

Ken Rosenberg
Lily Harmer
Karen Jones
Massimo Starnino
155 Wellington Street West, 35th Floor
Toronto, ON  M5V 3H1
Telephone: (416) 646-4300
Facsimile: (416) 646-4301

SHIBLEY RIGHTON LLP
w/ NELLIGAN O'BRIEN PAYNE LLP
Barristers and Solicitors
*Lawyers for the Active and Transferred*
*Canadian Employees*

Arthur O. Jacques/ Thomas McRae
Co-Counsel: Janice Payne / Steve Levitt
250 University Avenue, Suite 700
Toronto, ON  M5H 3E5
Telephone:  (416) 214-5213/5206
Facsimile:   (416) 214-5413/5400

*Counsel for the Trustee of Nortel Networks UK*
*Pension Plan and the Board of the Pension*
*Protection Fund*

/s/ Sameer Advani
BAYARD, P.A.

Charlene D. Davis
Justin R. Alberto
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

WILLKIE FARR & GALLAGHER LLP

Brian E. O'Connor
787 7th Ave.
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-9251

CASSELS BROCK & BLACKWELL LLP

David Ward
William Burden
Lara Jackson
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

THORNTON GROUT FINNIGAN LLP

Michael Barrack
D.J. Miller
Rebecca Lewis

01:14041454.1

10

*Counsel for the Wilmington Trust Company, not in its individual capacity but solely as Trustee*

/s/ David A. Crichlow

KATTEN MUCHIN ROSENMAN LLP

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

HEENAN BLAIKIE LLP

John Salmas
Kenneth David Kraft
Bay Adelaide Centre
P.O. Box 2900
333 Bay Street, Suite 2900
Toronto, ON M5H 2T4
Telephone: (416) 360-6336
Facsimile: (416) 360-8425

Andrea McEwan
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON M5K 1K7

*Counsel for the Law Debenture Trust Company of New York*

/s/ Daniel A. Lowenthal

BORDEN LADNER GERVAIS

John D. Marshall
Craig J. Hill
Edmond Lamek
Scotia Plaza,
40 King Street West, 44th Floor
Toronto, Ontario M5H 3Y4
Canada
Telephone: (416) 367-6000
Facsimile: (416) 367-6749

PATTERSON BELKNAP WEBB & TYLER LLP

Daniel A. Lowenthal
Brian P. Guiney
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

MORRIS JAMES LLP

Stephen M. Miller
Courtney R. Hamilton
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

\

*Counsel for the Former Directors and
Officers of Nortel Networks Corporation
and Nortel Networks Limited*

*/s/ Betsy Putnam*

OSLER, HOSKIN & HARCOURT LLP

Lyndon A.J. Barnes
Adam Hirsh
Box 50, 1 First Canadian Place
Toronto, Ontario
M5X 1B8
Canada

01:14041454.1

12

## EXHIBIT 1

**Deposition Protocol**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X

*In re*                                              :        Chapter 11

Nortel Networks Inc., *et al.*,[1]                   :        Case No. 09-10138 (KG)

                              Debtors.               :        (Jointly Administered)

---------------------------------------------------------X

## DEPOSITION PROTOCOL STIPULATION

Having conferred and agreed that the orderly and efficient conduct of depositions[2] in these actions requires their mutual cooperation, the parties in this action hereby stipulate and agree that, subject to order of the U.S. and Canadian Courts, the following protocol (the "Deposition Protocol") shall apply to the taking of depositions/examinations in the Allocation dispute, and the litigations concerning the US Claims and the Canadian Claims.[3]

**A.      APPLICABILITY OF DEPOSITION PROTOCOL**

1.   This Deposition Protocol shall govern all oral depositions and examinations out of court of fact deponents in these proceedings, including depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) and party representative examinations pursuant to Rule 31 of the *Ontario Rules of Civil Procedure.*

---

[1]      In addition to Nortel Networks Inc., the Debtors in the Chapter 11 cases are: Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA"). Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://epiq11.com/nortel.

[2]      The term "deposition(s)," as used herein, refers to both depositions and examinations.

[3]      Capitalized terms used in this Deposition Protocol but not otherwise defined shall have the meanings ascribed to them in the Litigation Timetable and/or the Allocation Protocol.

2.  This Deposition Protocol shall apply to:

  a.  The Canadian Allocation Group and Canadian Claims Defendant Group (the "Canadian Deposition Group");

  b.  The US Allocation Group and US Claims Defendant Group (the "US Deposition Group");

  c.  The EMEA Allocation Group, US EMEA Claimants Group, Canadian EMEA Claimants Group, and UK Pension Claimants ("EMEA Deposition Group") (each of the Canadian Deposition Group, US Deposition Group and EMEA Deposition Group a "Deposition Group").

  d.  All other Core Parties. Except as otherwise provided herein, each Discovery Participant that is not a member of a Deposition Group will be deemed for purposes of this Deposition Protocol to be a member of the Deposition Group with similarly aligned interests for each applicable deposition.

## B.    LOCATION OF DEPOSITIONS

To maximize the efficiency of the depositions/examinations and for the convenience of all parties:

1.  Depositions taking place in New York shall take place at Cleary Gottlieb Steen & Hamilton, LLP, One Liberty Plaza, New York, New York, 10006 (or alternative nearby site in the event of capacity restrictions).

2.  Depositions taking place in Toronto shall take place at Goodmans LLP, 333 Bay Street Suite #3400, Toronto, Ontario M5H 2S7 (or alternative nearby site in the event of capacity restrictions).

2

3. Depositions taking place in London shall take place at Herbert Smith Freehills LLP, Exchange House, Primrose Street, London EC2A 2HS (or alternative nearby site in the event of capacity restrictions).

4. Depositions taking place in Ottawa shall take place at Gowling LaFleur Henderson LLP, 160 Elgin Street, Suite 2600, Ottawa, Ontario K1P 1C3 (or alternative nearby site in the event of capacity restrictions).

5. Depositions in other cities will take place either at a location chosen by the producing Discovery Participant, if applicable, or by designation or agreement by the Deposition Group(s) with whom the witness was primarily associated, which may take into account the convenience of the witness.

6. The host of each deposition shall provide one large room for the deposition as well as one breakout room for each of the three Deposition Groups, and one additional breakout room for the witness (and his or her counsel, if the witness is separately represented). In the event that more than one deposition occurs at a host firm on a given day, only one breakout room needs to be provided per Deposition Group.

7. All witnesses who a Discovery Participant has the ability to compel attendance in Toronto or New York [or London] shall be produced for deposition in either Toronto, New York [or London] at the option of the producing Discovery Participant. Discovery Participants shall use reasonable efforts to produce all cooperating witnesses in either Toronto, New York [or London], and each Discovery Participant producing a cooperating witness shall offer to pay that witnesses' reasonable travel expenses to do so.[4]

---

[4] The Parties have not yet reached agreement on whether witnesses currently employed by or under the control of the EMEA Debtors or the U.K. Pension Claimants must be produced in Toronto or New York, or may be produced in London, and have reserved this issue for further discussion among themselves and, failing agreement, resolution by the Court(s). The Parties do agree that the EMEA Debtors and the U.K. Pension Claimants may produce cooperating witnesses not employed by them or under their control in London.

C.    **LENGTH OF DEPOSITIONS**

1.  For witnesses designated by one or two Deposition Groups,[5] the presumption shall be that depositions shall last no longer than one seven-hour day (measured by the "on-the-record" time).

    a.  For witnesses designated by one Deposition Group, five hours shall be allocated for the designating Deposition Group, and one hour each shall be allocated for the remaining two Deposition Groups.

    b.  For witnesses designated by two Deposition Groups, three hours shall be allocated for each designating Deposition Group, and one hour shall be allocated for the remaining Deposition Group.

2.  For witnesses designated by three Deposition Groups, the presumption shall be that depositions shall last no longer than one ten-hour day (measured by the "on-the-record" time), or one and one half days, at the option of the witness. Each Deposition Group shall be allocated equal time.

3.  On August 9, 2013, each Deposition Group served all Core Parties with a list of designated witnesses that Deposition Group wishes to cross-designate. On August 13, 2013, each Deposition Group served all Core Parties with a list of witnesses that such Deposition Group anticipates requiring more time to examine than the presumed time allotment herein, including the amount of time that the Deposition Group requests for each such witness. In the event the total amount of time requested exceeds the presumptive maximum for a particular deposition and the witness is unwilling to agree to such additional time, the parties shall confer in good faith in an effort to reduce the total requested time and, failing agreement, shall have the right to seek judicial relief in

---

[5]    If, pursuant to Section 6 of the Discovery Plan, any Claim or Allocation Group within a Deposition Group designated or cross-designated the witness, the witness will be deemed "designated by" such Deposition Group, including for purposes of time allocations.

4

advance of such deposition. If the witness is willing to agree to additional time (including time over and above the total amount requested by the Deposition Groups), the Deposition Groups shall confer in good faith on a fair allocation of the additional time to depose the witness. Absent extraordinary circumstances, and to avoid the burden on a witness to appear twice, any disagreements with the allocated time for a deposition must be raised, and if unresolved, judicial relief seeking modification sought, prior to a deposition.

4.  For purposes of time allocation, Core Parties that are not in one of the Deposition Groups shall be grouped by agreement with a Deposition Group with similarly aligned interests for that deposition and, if an agreement cannot be reached, may seek leave of the Court(s) or consent of the Deposition Groups for a separate time allocation.

5.  The court reporter shall maintain a total running time for actual deposition testimony and record how much time is taken in each deposition by each Deposition Group.

6.  Where necessary to complete the deposition and avoid unnecessary motion practice, the deponent may agree, at the request of any Discovery Participant, to extend the length of any deposition for additional time on the same day. The travel plans of other Core Parties shall not be an excuse to object to the extension of a deposition in the event of such agreement. In the event more than a de minimis amount of additional time is granted, the Core Parties shall work collaboratively to fairly allocate such additional time.

7.  Time spent participating in teleconferences with the Court(s) or their agents during a deposition shall not be counted as "on the record" time for purposes of calculating the time remaining for the deposition.

**D.    SCHEDULING OF DEPOSITIONS**

1.  For witnesses designated for deposition by July 30, 2013, Discovery Participants advised the other Discovery Participants on August 13, 2013 of those witnesses they have been informed will appear voluntarily.  After a seven-day grace period expiring on August 20, 2013, for witnesses that have not indicated a willingness to appear voluntarily, any Discovery Participant may subpoena, issue any other applicable process, and/or contact that witness directly (subject to paragraph 2(c), below).

2.  For witnesses not voluntarily appearing:

    a.  The Discovery Participant with whom the witness was associated must provide last known contact information (including phone number) for the witness if not previously disclosed in interrogatory responses;

    b.  The Discovery Participant with whom that witness was associated must provide the name and contact information (including phone number) of the witness's attorney, if known;

    c.  Any Discovery Participant contacting such witness must first ask the witness if he or she has an attorney for purposes of this litigation, and if the answer is affirmative, further contact should occur through that counsel.  Discovery Participants must otherwise comply with all applicable ethical rules for speaking with unrepresented persons; and

    d.  Any contacting Discovery Participant shall notify the other Discovery Participants if he or she learns of contact or counsel information not previously disclosed to the other Discovery Participants.

3.  No depositions shall be conducted on weekends absent consent of each of the relevant Deposition Groups, on Labor Day (September 2, 2013), Rosh Hashanah (September 4, 5, and 6, 2013), Yom Kippur (September 13 and 14, 2013), Canadian Thanksgiving

(October 14, 2013) and U.S. Thanksgiving (November 28 and 29, 2013). In the event a weekend deposition is requested and the requisite consent cannot be obtained, the Deposition Group proposing such deposition may proceed only with leave upon demonstration of good cause to the U.S. Court for depositions taking place in the U.S., the Canadian Court for depositions taking place in Canada, and either Court for depositions taking place outside of North America.

4. Except upon order of the Court for good cause shown, or consent of each of the Deposition Groups, fact depositions shall be taken only once.

5. A master deposition calendar shall be maintained either online in realtime or by a member of the Scheduling Committee to be designated that shall update and circulate the calendar on a daily basis.

6. Depositions of witnesses under the control of a Discovery Participant or otherwise voluntarily appearing ("Voluntary Witnesses") shall be scheduled as follows:

   a. A scheduling committee (the "Scheduling Committee") shall be comprised of one person for each Deposition Group (who may be represented by an alternate if unavailable). By August 26, 2013, all Discovery Participants shall provide the dates that they have received from each Voluntary Witness on which they are (or are not) available to be deposed from September 23, 2013 through November 27, 2013. Discovery Participants shall seek to obtain multiple potential dates from witnesses. All Discovery Participants shall make every reasonable effort to be in a position to offer a sufficiently broad range of dates for their witnesses collectively so as to enable depositions of witnesses of each Discovery Participant to be scheduled relatively evenly throughout the period for fact depositions.

   b. The Scheduling Committee shall meet and confer by August 30 and as necessary thereafter to schedule the depositions of Voluntary Witnesses whose availability is

known as of the date of the creation of that schedule and shall distribute a calendar as soon as possible after conferring, but no later than September 4. Objections to this initial proposed schedule shall be made on or prior to September 9, 2013. Recognizing the importance of accommodating witnesses, objections to a date preferred by or required by the witness should be made sparingly and only in extreme circumstances.

c. Subsequent to August 30, 2013, Discovery Participants shall provide notice of potential deposition dates to the Scheduling Committee promptly after obtaining them from Voluntary Witnesses from whom they were unable to provide availability prior to the creation of the initial schedule, whereupon the Scheduling Committee shall meet and confer (which may be telephonic or by email) within three business days of being advised of available dates for a witness to select a proposed date for the deposition of that witness (provided however that the Scheduling Committee shall endeavor to meet and confer sooner if necessary to comply with the notice requirements in paragraph D(7) below). Any proposed deposition date and location for each witness determined by the Scheduling Committee shall be placed on the master calendar, following which all other Discovery Participants shall have two business days to object.

d. If the Scheduling Committee is unable to agree upon a proposed date for a witness within five business days of being provided with available dates, the party with whom the Voluntary Witness is cooperating shall select the date and inform the Scheduling Committee, following which all other Discovery Participants (including members of the Scheduling Committee) shall have two business days to object.

e. All objections shall be resolved through a meet and confer among the Scheduling Committee (or designated members) and the objector(s) within one business day;

8

failing resolution, the objector must seek relief from the Court(s) within two business days thereafter (by letter) by demonstrating good cause or the objection is waived.

7. Discovery Participants shall endeavor to provide the Scheduling Committee with sufficient advance notice of the first date a Voluntary Witness is available so as to provide the Scheduling Committee with sufficient time to notify all Discovery Participants of any deposition not less than five business days before examinations in North America and not less than seven business days before examinations outside of North America if more notice is not possible. Absent consent of each of the Discovery Groups, or authorization by one of the Courts, no deposition may be scheduled upon notice to all Discovery Participants of less than three business days if taking place in North America and five business days if taking place outside of North America.

8. Non-party depositions scheduled by compulsory process for witnesses who will not appear voluntarily ("Compulsory Witnesses") shall be immediately reflected on the calendar upon notice to the Scheduling Committee. Where more than one Deposition Group has designated a witness who will not agree to attend voluntarily, those Groups shall endeavor to coordinate the selection of a deposition date prior to one Deposition Group moving forward unilaterally. Except for such depositions noticed prior to the date hereof, where practicable, Discovery Participants shall adapt and utilize the Scheduling Committee procedure described in the preceding paragraphs to schedule the depositions of Compulsory Witnesses, including the deadlines set forth therein for objections, meet and confers and requests for judicial relief.

9. Once a Voluntary Witness has been placed on the master calendar and confirms the firm scheduling of his or her deposition, including its proposed length and location, and provided there are no timely objections to such scheduling, such Voluntary Witness

9

shall no longer be expected to remain available on any of the other dates that he or she may have previously indicated availability.

10. Once scheduled, depositions may not be postponed except on the unanimous consent (given or withheld in good faith) of the Scheduling Committee or for good cause authorized by the Court, except in the event of an emergency necessitated by the witness with insufficient time to obtain consent or leave. Immediate notice of any postponement shall be provided to the other Discovery Participants. So long as reasonable notice was provided consistent with paragraph D(7), the filing of an objection shall not result in the adjournment of a deposition unless a court order for such adjournment is obtained.

## E.    QUESTIONING AT DEPOSITIONS

1. Deposition Groups shall allocate their time for each deposition among their members and shall each designate a lead examiner. Non-repetitive examination may be conducted by other Discovery Participants in the same Deposition Group (within the time allotted for that Group). The parties shall agree ahead of time on the order of questioning at each deposition and the lead examiners in each Deposition Group shall work in good faith as provided for in the Discovery Plan to coordinate the questioning in an effort to avoid duplication.

2. No more than two examiners per Discovery Participant may ask questions at a deposition. A second examiner may question the witness only on the following conditions: (i) the first examiner may not question the witness again after the second examiner has begun; (ii) the second examiner must have been present for the entirety of the first examiner's questioning; and (iii) the second examiner must question the witness only on a separate topic or separate topics than were covered by the first examiner.

3. Depositions shall begin promptly at 9:00 a.m. without exception unless absolutely necessary to accommodate the witness. As long as proper notice was provided, depositions shall commence at that time even if some Discovery Participants are not present.

4. An objection by one Discovery Participant preserves that objection for all Discovery Participants. Discovery Participants shall not make redundant objections.

   a. Objections to form shall be deemed to be on all grounds appropriate for a form objection.

   b. No objection other than to the form of the question is waived by failure to assert it during the deposition.

5. Nothing shall preclude counsel from seeking an order from the Court(s) to protect the witness where counsel has a reasonable, good faith belief that the witness is being questioned on wholly irrelevant matters or in an otherwise abusive manner, or that there are other grounds under Federal Rule of Bankruptcy Procedure 7026(c) or the Ontario Rule of Civil Procedure 34.14 for a protective order with respect to the questioning being conducted of the witness. In that event, counsel shall cooperate in deferring answers to those questions until later in the deposition to permit counsel to contact the Court. If the Court is unavailable throughout the deposition and the parties are unable to reach an agreement on the objected-to questions, the deposition may be adjourned until a court ruling can be obtained.

6. Discovery Participants are encouraged to limit attendance at depositions. There shall be no limitation on the number of attorneys viewing or listening remotely to a deposition, provided those attorneys following remotely remain silent.

7. For planning purposes, attendees shall endeavor to advise a designated person at the host location of their identities at least two business days prior to each deposition.

11

8. The Discovery Participants shall endeavor to have the court reporting service stream the deposition (audio, video, and/or transcription) over the internet so as to enable parties to follow the deposition remotely. Aside from limited questions (no more than ten) submitted in writing at least one business day prior to the commencement of the deposition where the number and scope of those questions do not warrant the attendance of counsel for a particular Discovery Participant at the examination, no examination may be conducted or objections asserted by any attorney not present at the deposition. No deposition shall be adjourned or delayed due to a problem with remote access technology. In the event of the advance submission of written questions, lead counsel at the deposition for the Discovery Group encompassing that Discovery Participant shall ask the questions but shall have the discretion and the duty not to ask any written questions he or she believes would be repetitive.

9. At the outset of the deposition, on the record, all counsel shall identify themselves and the Discovery Participant they represent. The Discovery Participants shall explore with the court reporting service how to record the identities of counsel following the deposition remotely.

## F.   USE OF DOCUMENTS

1. No later than four business days before a deposition, all Discovery Participants intending to examine a deponent may, but shall not be obligated to, serve via email a non-binding list of the specific documents (by Bates number or, if previously marked, by exhibit number) that counsel anticipates using or referring to during the deposition. Discovery Participants shall endeavor to transmit pdfs of the actual documents with such email. In that circumstance, counsel need not bring extra copies of such documents except as necessary for the witness and his or her counsel.

12

2. Any counsel who does not pre-designate documents shall not forfeit the right to use those documents, but in that case, shall bring at least fifteen copies of such documents to the deposition for counsel and the witness, at least six of which must be hard copies and the balance of which can be pdfs in electronic form on individual USB drives/memory sticks. Any Discovery Participant that requests a copy of a document used during a deposition shall be provided one by the examining Discovery Participant following the deposition.

3. Each document marked for identification at a deposition shall be numbered with a new exhibit number. Counsel will make their best efforts to use the previously-marked exhibits by number in subsequent depositions.

4. To avoid the possibility of the same numbers being used for different exhibits during concurrently-conducted depositions, exhibits first marked during the deposition of a witness primarily associated with the Canadian Debtors shall begin with 1,000, the U.S. Debtors shall begin with 2,000, the EMEA Debtors shall begin with 3,000, the UK Pension Claimants shall begin with 4,000, and other parties shall begin with 5,000. (To the extent that a witness is primarily associated with more than one Discovery Participant, the lower sequence shall be used). When more than one deposition is occurring on the same day which poses risk of overlap, the examining parties shall confer in advance about starting numbers to use at those depositions to avoid overlap.[6]

5. Immediately following each deposition, the initial examiner shall be responsible for circulating a list of new exhibit numbers marked at such deposition, with reference to Bates numbers.

---

[6]    The Parties intend to confer further and, with the approval of each of the Discovery Groups prior to the commencement of depositions, may refer to exhibits by Bates numbers rather than exhibit numbers.

13

6.  The court reporter shall be responsible for ensuring that the original of all deposition transcripts, including exhibits, are retained at the court reporter's offices.

G.  **RULE 30(B)(6) AND REPRESENTATIVE PARTY DEPOSITIONS/ EXAMINATIONS**

1.  Notwithstanding anything in the Discovery Protocol and Litigation Timetable to the contrary, representative party depositions/examinations for discovery under Rule 31 of the *Rules of Civil Procedure for Ontario* (hereinafter "Representative Depositions" of "Representative Witnesses") shall be conducted as follows:

a.  All previously served Rule 30(b)(6) notices are deemed superseded by this paragraph. At least ten business days before the commencement of Representative Depositions, a Deposition Group may serve a very limited number of subjects on which it believes no fact witness currently or formerly associated with the party producing the Representative Witness has provided adequate first-hand testimony. Provided such subjects are small in number and reasonable in scope, the Representative Witness has a duty to prepare to testify on the designated subjects. In the event a party designates an unreasonable number of subjects relative to the time limitations for the examination, subjects of an impermissibly broad scope or subjects inappropriate for a Representative Deposition, objections shall be served within three business days. The applicable parties shall meet and confer in good faith within two business days thereafter and, failing agreement, the burden shall be on the noticing party to obtain judicial relief at least two business days (in order to enable preparation) prior to the Representative Deposition. The failure to obtain judicial relief on a timely basis shall not be a basis to adjourn a Representative Deposition.

14

b.  Representative Depositions shall be scheduled through the Scheduling Committee process and with similar procedures.  The identity of Representative Witnesses shall be disclosed at least five business days prior to their scheduled deposition dates.

c.  Discovery Participants shall not be limited in their examination of the Representative Witness to the noticed subjects; however, the Representative Witness shall have no duty to prepare for such examination on any specific subjects other than those noticed to which no objection was raised or court order obtained.

d.  Any undertakings required in accordance with Rule 31 of the *Rules of Civil Procedure for Ontario* shall be limited to specific matters of fact outside the Representative Witness's knowledge, information and belief that are not already the subject of first-hand deposition testimony obtained from a knowledgeable fact witness.  In the event of disagreement, the applicable parties shall meet and confer promptly and promptly thereafter bring any dispute to the attention of the appropriate Court.

2.  Each Discovery Participant who filed an independent pleading (other than a non-argumentative joinder) shall designate one Representative Witness to be deposed in Toronto or New York, unless otherwise agreed by each of the Deposition Groups. Additionally, any Discovery Participant (other than the estates or UKP) who filed an independent pleading may withdraw such pleading by November 15, 2013 (and may file a non-argumentative joinder in its place) and thereby not be subject to the requirement to designate a Representative Witness.  Notwithstanding the foregoing, the Directors and Officers shall not be required to designate a Representative Witness.

3.  Time allocation for Representative Depositions:

15

a. The Representative Witness for each of the U.S. Debtors, the Canadian Debtors, the U.K. Pension Claimants and NNUK shall be deposed for two seven-hour days, with one day being allocated to each of the two other Deposition Groups.

b. The Discovery Participants disagree on the amount of time for Representative Witnesses for the EMEA Debtors other than NNUK, including whether the EMEA Debtors can designate one Representative Witness for all of the EMEA Debtors collectively. To the extent they are unable to reach consensual resolution, the parties reserve all rights and will seek judicial guidance.

c. Each Representative Witness for each of the other Discovery Participants who filed an independent pleading (other than a non-argumentative joinder) shall be deposed for no longer than one seven-hour day (measured by the "on-the-record" time), with half being allocated to each of the two opposing Deposition Groups.

4. If a party designates a Representative Witness who has already been deposed as a fact witness, that party waives any objection to a second deposition. Unless agreed to by the Deposition Participants who noticed the fact deposition, Representative Depositions shall occur separate from fact depositions.

5. Representative Depositions shall occur during the last two weeks before fact depositions end.

**H.    COURT REPORTING SERVICES**

1. For reasons of cost and efficiency, Ellen Grauer Court Reporting Co. has offered discounted rates and shall be used for all depositions.

2. The court reporting service will provide remote access as described herein and secure real-time video streaming (if videotaped) and LiveNote, and the host party shall provide speaker-phone and internet capability for all depositions. The court reporting service will transcribe all conference calls with the Court from the deposition site as

16

part of the deposition transcript for that day. At the end of each day, the court reporter will provide a cleaned-up transcript of the LiveNote session (via web or email) to all Discovery Participants ordering a transcript.

3. Depositions may be videotaped or digitally recorded at the request and at the cost of any requesting Discovery Participant upon at least five business days' notice (where sufficient notice of the deposition is provided) to the court reporting service and all Discovery Participants and counsel for the witness. In the event multiple Discovery Participants request that a deposition be videotaped or digitally recorded, the cost of such taping shall be split equally among all Discovery Participants that request videotaping or digital recording. Counsel for the witness shall be entitled to a copy of such videotape without cost.

## I.    STANDARD STIPULATION

The following stipulation will apply to all depositions taken in these actions and shall be included in each transcript by the court reporter:

1. Upon completion of the transcription of today's session, the original transcript shall be sent to counsel for the witness by the court reporter. Counsel shall promptly forward it to the witness for review, correction and signature under penalty of perjury. The witness shall have 30 days from the day of receipt within which to review, make any corrections, sign the deposition transcript under penalty of perjury, and return it to counsel. The witness's counsel shall then forward the original transcript plus corrections to the court reporter, who will promptly notify all counsel of its receipt and any changes to testimony made by the witness.

2. If the witness is not represented by counsel, the original transcript will be sent to the witness by the court reporter. After review, correction and signature within 30 days from the date of receipt, the witness shall return the original transcript to the court

17

reporter, who will notify all counsel of its receipt and any changes to testimony by the witness.

3. The court reporter will retain the original transcript, including exhibits. If, for any reason, the original is lost, misplaced, not returned, not signed, or unavailable, a certified copy may be used in its place for all purposes. The court reporter is otherwise relieved of any statutory duties.

## J.   CONFIDENTIALITY

The Order Entering a Protective Order [D.I. 10805] / [Order (Protective Order), Ontario Superior Court of Justice, 09-CL-7950, June 11, 2013] shall govern the treatment of Confidential Discovery Material presented at each deposition.

## K.   USE OF DEPOSITIONS AT TRIAL

The Discovery Participants agree that Section 6(c) of the Discovery Plan should be clarified and amended, as necessary, to allow any Discovery Participant to use, in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Courts), deposition testimony of witnesses (other than deposition testimony of Representative Witnesses, the use of which is provided for under the Discovery Plan and the applicable Rules) as part of its direct or rebuttal case at trial, in a consistent manner for the purposes of Allocation, U.S. Claims and/or Canadian Claims. To the extent that the content of such deposition testimony would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Ontario rules of evidence or the Federal Rules of Evidence if the witness were present at trial in the relevant jurisdiction, any Discovery Participant may raise an objection to the admission of the testimony and either or both of the Court(s) may make a ruling about its admissibility at trial, based on the rules of evidence in each jurisdiction.

The Discovery Participants agree to meet and confer in good faith by no later than September 4, 2013 to endeavor to agree upon the parameters for the use and admissibility of

18

deposition testimony at trial, and any related considerations such as, without limitation, the extent

to which Discovery Participants will retain the right to compel witnesses to appear at trial. If the

Discovery Participants are unable to reach agreement by September 10, 2013, they will seek the

guidance of the Court(s) on the issue by no later than the week of September 16, 2013.

Dated: August 25, 2013

*Counsel for the Official Committee*
*of Unsecured Creditors*

*/s/ Robert A. Johnson*
AKIN GUMP STRAUSS HAUER & FELD
LLP

David H. Botter
Fred Hodara
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins
Christopher M. Samis
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

DENTONS CANADA LLP
(formerly Fraser Milner Casgrain LLP)

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

*Counsel for the Debtors*
*and Debtors in Possession*

*/s/ Jeffrey A. Rosenthal*
CLEARY GOTTLIEB STEEN & HAMILTON
LLP

Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

TORYS LLP

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2, Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

| | |
|---|---|
| *Counsel for the Bondholders* | *Counsel for Ernst & Young Inc. as Monitor* |
| */s/ Atara Miller* | */s/ Paul Keller* |

<table>
<tr><td>

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones
Kathleen P. Makowski
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

MILBANK, TWEED, HADLEY & McCLOY LLP

Dennis F. Dunne
Thomas R. Kreller
Albert A. Pisa
Andrew M. Leblanc
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

BENNETT JONES

Gavin Finlayson
Richard B. Swan
Kevin Zych
S. Richard Orzy
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario M5X 1A4
Canada

</td><td>

GOODMANS LLP

Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, ON M5H 257
Canada
Telephone: (416) 979 2211
Facsimile: (416) 979 1234

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

</td></tr>
</table>

*Counsel for the Canadian Debtors*

/s/ Paul Keller

GOWLING LAFLEUR HENDERSON LLP

Jennifer Stam
Derrick Tay
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Tel: +1 416 216 4000
Fax: +1 416 216 3930

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY
PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Counsel for the Joint Administrators*

/s/ Neil Oxford

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

James L. Patton
Edwin J. Harron
John T. Dorsey
Jaime Luton Chapman
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Gabrielle Glemann
Charles H. Huberty
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

DAVIES WARD PHILLIPS & VINEBERG LLP

21

*Counsel for the Canadian Creditors Committee*

/s/ Selinda A. Melnik
Selinda A. Melnik (DE Bar No. 4032)

*on behalf of*

DLA PIPER LLP (US)
*U.S. Counsel for the Canadian Creditors Committee*

Selinda A. Melnik
919 North Market Street
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 468-5650
Facsimile: (302) 778-7914
- and -
Richard Hans
Timothy Hoeffner
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4530

CAW-CANADA LEGAL DEPARTMENT
*Lawyers for the Canadian Autoworkers Union*

Barry Wadsworth
205 Placer Court
Toronto, ON M2H 3H9
Telephone: (416) 495-3776
Facsimile: (416) 495-3786

KOSKIE MINSKY LLP
*Lawyers for the Former and Disabled Canadian Employees*

Mark Zigler
Susan Philpott
Ari Kaplan
20 Queen Street West, Suite 900
Toronto, ON M5H 3R3
Telephone: (416) 595-2090
Facsimile: (416) 204-2877

Robin Schwill
Sean Campbell
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

LAX O'SULLIVAN SCOTT LISUS LLP

Matthew P. Gottlieb
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

*Counsel for The Bank of New York Mellon, as Indenture Trustee*

/s/ Michael Riela

LATHAM & WATKINS LLP

Michael J. Riela
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

MCMILLAN LLP

Sheryl E. Seigel
Brookfield Place, Suite 4400
181 Bay Street
Toronto, ON M5J 2T3
Canada
Telephone: (416) 865-7000
Facsimile: (416) 865-7048

McCARTHY TÉTRAULT LLP
*Lawyers for Morneau Shepell Ltd.,*
*as administrator of the Nortel Canada*
*registered pension plans*

R. Paul Steep
Byron D. Shaw
Elder Marques
James D. Gage
Barbara J. Boake
TD Bank Tower, Suite 5300
Toronto Dominion Centre
66 Wellington Street West
Toronto ON M5K 1E6
Telephone: (416) 601-7998
Facsimile: (416) 868-0673

PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP

Ken Rosenberg
Lily Harmer
Karen Jones
Massimo Starnino
155 Wellington Street West, 35th Floor
Toronto, ON  M5V 3H1
Telephone: (416) 646-4300
Facsimile: (416) 646-4301

SHIBLEY RIGHTON LLP
w/ NELLIGAN O'BRIEN PAYNE LLP
Barristers and Solicitors
*Lawyers for the Active and Transferred*
*Canadian Employees*

Arthur O. Jacques/ Thomas McRae
Co-Counsel: Janice Payne / Steve Levitt
250 University Avenue, Suite 700
Toronto, ON  M5H 3E5
Telephone: (416) 214-5213/5206
Facsimile: (416) 214-5413/5400

*Counsel for the Trustee of Nortel Networks UK*
*Pension Plan and the Board of the Pension*
*Protection Fund*

*/s/ Sameer Advani*
BAYARD, P.A.

Charlene D. Davis
Justin R. Alberto
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

WILLKIE FARR & GALLAGHER LLP

Brian E. O'Connor
787 7th Ave.
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-9251

CASSELS BROCK & BLACKWELL LLP

David Ward
William Burden
Lara Jackson
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

THORNTON GROUT FINNIGAN LLP

Michael Barrack
D.J. Miller

23

*Counsel for the Wilmington Trust Company, not in its individual capacity but solely as Trustee*

/s/ David A. Crichlow

KATTEN MUCHIN ROSENMAN LLP

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

HEENAN BLAIKIE LLP

John Salmas
Kenneth David Kraft
Bay Adelaide Centre
P.O. Box 2900
333 Bay Street, Suite 2900
Toronto, ON M5H 2T4
Telephone: (416) 360-6336
Facsimile: (416) 360-8425

Rebecca Lewis
Andrea McEwan
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON M5K 1K7

*Counsel for the Law Debenture Trust Company of New York*

/s/ Daniel A. Lowenthal

BORDEN LADNER GERVAIS

John D. Marshall
Craig J. Hill
Edmond Lamek
Scotia Plaza,
40 King Street West, 44th Floor
Toronto, Ontario M5H 3Y4
Canada
Telephone: (416) 367-6000
Facsimile: (416) 367-6749

PATTERSON BELKNAP WEBB & TYLER LLP

Daniel A. Lowenthal
Brian P. Guiney
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

MORRIS JAMES LLP

Stephen M. Miller
Courtney R. Hamilton
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

*Counsel for the Former Directors and*
*Officers of Nortel Networks Corporation and*
*Nortel Networks Limited*

*/s/ Betsy Putnam*

OSLER, HOSKIN & HARCOURT LLP

Lyndon A.J. Barnes
Adam Hirsh
Box 50, 1 First Canadian Place
Toronto, Ontario
M5X 1B8
Canada

465

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
Proceeding commenced at Toronto

**ORDER**
**(Deposition Protocol)**

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place,
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Derrick Tay** (LSUC #: 21152A)
**Jennifer Stam** (LSUC #: 46735I)
Tel: (416) 862-5697
Fax: (416) 862-7661

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto ON M5H 2S7

**Jay A. Carfagnini** (LSUC#: 22293T)
**Jessica Kimmel** (LSUC#: 32312W)
**Peter Ruby** (LSUC#: 38439P)
**Joseph Pasquariello** (LSUC#: 38390C)
Tel: 416.979.2211
Fax: 416.979.1234

**BLUE SHEET**

File No. 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | |
|---|---|
| THE   HONOURABLE   MR.   JUSTICE   ) | FRIDAY, THE 20TH DAY OF |
| ) | |
| MORAWETZ                                             ) | SEPTEMBER, 2013 |
| ) | |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**ORDER**
**(Amended Deposition Protocol)**

**THIS MOTION** made by Nortel Networks Corporation, Nortel Networks Limited, Nortel

Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks

International Corporation (collectively, the **"Canadian Debtors"**) jointly with Ernst & Young Inc. in its

capacity as monitor (the **"Monitor"**) of the Canadian Debtors for the relief set out in the Notice of

Motion dated September 17, 2013, was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING** the Notice of Motion dated September 17, 2013, and on hearing submissions of

counsel for the Canadian Debtors and the Monitor, and on being advised of the consent or non-

opposition of the other Core Parties, no one appearing for any other person on the service list or the core

- 2 -

party service list although duly served as appears from the affidavit of Christopher G. Armstrong sworn September 18, 2013, filed.

1.    **THIS COURT ORDERS** that the time for the service of the Notice of Motion and other motion materials is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.    **THIS COURT ORDERS** that the Amendment to Deposition Protocol Stipulation appended as Exhibit "A" hereto be and is hereby approved.

3.    **THIS COURT ORDERS** that, without derogating from the Order (Protective Order) of this Court dated June 11, 2013, in connection with evidence obtained on any examination/deposition of a witness or party that is conducted in these proceedings, the laws of the jurisdiction where the examination/deposition is conducted shall apply, for all purposes, as relate to protections against self-incrimination and the use or derivative use of evidence for collateral purposes or in other proceedings, as applicable.

**MISCELLANEOUS**

4.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Canadian Debtors, the Monitor and their respective agents in carrying out the terms of this Order.   All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Canadian Debtors and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign

- 3 -

proceeding, or to assist the Canadian Debtors and the Monitor and their respective agents in carrying out the terms of this Order.

5.    **THIS COURT ORDERS** that each of the Canadian Debtors and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

SEP 2 0 2013

- 4 -

**EXHIBIT "A"**

**AMENDMENT TO DEPOSITION PROTOCOL STIPULATION**

**[ATTACHED]**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| | (Jointly Administered) |
| Debtors. | |

## AMENDMENT TO DEPOSITION PROTOCOL STIPLUATION

Having conferred and agreed on certain matters related to the use of depositions in the litigations concerning the Allocation dispute, the US Claims and the Canadian Claims, as required by the Deposition Protocol, which protocol was approved by orders of the U.S. and Canadian Courts dated August 26, 2013 and August 27, 2013, respectively, the parties hereto stipulate and agree that, subject to orders of the U.S. and Canadian Courts approving this Amendment to Deposition Protocol Stipulation, Section K of the Deposition Protocol shall be amended so that the last paragraph thereof is deleted in its entirety and replaced with the following two paragraphs:[2]

## K.    USE OF DEPOSITIONS AT TRIAL

[. . .]

Except as ordered by the Courts for good cause, for any fact witness who is not appearing to testify at trial, each Discovery Participant may submit into evidence the transcript of

---

[1]    The debtors in the chapter 11 cases, along with the last four digits of each such debtor's tax identification number, are:  Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

[2]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Litigation Timetable, approved by this Court's order dated May 17, 2013 [Dkt, No. 10566], and/or the Allocation Protocol, approved by this Court's order dated May 17, 2013 [Dkt, No. 10565].

such fact witness' deposition testimony or compelled testimony taken on any examination conducted pursuant to letters rogatory or letters of request, regardless of where the deponent resides, as part of a Discovery Participant's direct or rebuttal case, or as part of a cross-examination, at trial to determine Allocation, U.S. Claims and/or Canadian Claims. This submission will continue to be subject to the local rules of evidence and procedure that would apply if the witness were present and testifying in the U.S. or Canada, respectively. If a party offers only part of a deposition/examination, a party adverse in interest with respect to the topics covered in the part of the deposition so designated may designate other parts of the deposition/examination for context and any party may itself introduce other parts. Deposition/examination evidence must be provided to the courts in transcript form but may also be provided by video recording if available.

The dispute about the compellability of witnesses at trial will be deferred, on the basis of a complete reservation of the Discovery Participants' rights and positions as to the entitlement to compel witnesses and, if permitted, any limitations on the number that may be compelled or time limits that should be imposed on their testimony and any provision for the manner in which their deposition transcripts may be used. The parties have also agreed to defer the issue as to how deposition transcripts may be used at trial, if at all, with respect to fact witnesses who have provided an affidavit and are appearing to provide brief introductory direct testimony and to be cross-examined. All of this is to be decided by the Courts at the first pre-trial conference, which under the current schedule is to be held the week of February 17 (or such earlier pre-trial conference as the Courts may be willing to convene following the completion of fact depositions in order to resolve this

2

issue), if the Discovery Participants are not able to reach agreement on some or all of these matters before then.

The parties further stipulate and agree that all of the other terms and conditions of the Deposition Protocol remain in effect except as expressly amended herein.

*[Intentionally left blank]*

3

Dated:   September 20, 2013

| | |
|---|---|
| *Counsel for the Official Committee of Unsecured Creditors* | *Counsel for the Debtors and Debtors in Possession* |
| | |
| /s/ Robert A. Johnson | /s/ Jeffrey A. Rosenthal |
| AKIN GUMP STRAUSS HAUER & FELD LLP | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| | |
| David H. Botter | Howard S. Zelbo |
| Fred Hodara | James L. Bromley |
| Abid Qureshi | Jeffrey A. Rosenthal |
| One Bryant Park | Lisa M. Schweitzer |
| New York, New York 10036 | One Liberty Plaza |
| Telephone: (212) 872-1000 | New York, New York 10006 |
| Facsimile: (212) 872-1002 | Telephone: (212) 225-2000 |
| | Facsimile: (212) 225-3999 |
| | |
| RICHARDS, LAYTON & FINGER, P.A. | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | |
| Mark D. Collins | Derek C. Abbott |
| Christopher M. Samis | Eric D. Schwartz |
| One Rodney Square | Ann C. Cordo |
| 920 North King Street | 1201 North Market Street |
| Wilmington, Delaware 19801 | P.O. Box 1347 |
| Telephone: (302) 651-7700 | Wilmington, Delaware 19801 |
| Facsimile: (302) 651-7701 | Telephone: (302) 658-9200 |
| | Facsimile: (302) 658-3989 |
| | |
| DENTONS CANADA LLP | TORYS LLP |
| (formerly Fraser Milner Casgrain LLP) | |
| | Scott Bomhof |
| Ryan Jacobs | Tony DeMarinis |
| R. Shayne Kukulowicz | Andrew Gray |
| Michael J. Wunder | Adam Slavens |
| 77 King Street West | 79 Wellington Street West |
| 4th Floor | Suite 3000, Box 270, TD Centre |
| Toronto, ON M5K 0A1 | Toronto ON M5K 1N2, Canada |
| Canada | Telephone: (416) 865-0040 |
| Telephone: (416) 863-4511 | Facsimile: (416) 865-7380 |
| Facsimile: (416) 863-4592 | |

4

*Counsel for the Bondholders*

*/s/ Atara Miller*

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones
Kathleen P. Makowski
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400


MILBANK, TWEED, HADLEY & McCLOY LLP

Dennis F. Dunne
Thomas R. Kreller
Albert A. Pisa
Andrew M. Leblanc
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

BENNETT JONES

Gavin Finlayson
Richard B. Swan
Kevin Zych
S. Richard Orzy
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario M5X 1A4
Canada

*Counsel for Ernst & Young Inc. as Monitor*

*/s/ Paul Keller*

GOODMANS LLP
Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Bay Adelaide Centre
333 Bay Street Suite 3400
Toronto, ON M5H 2S7
Canada
Telephone: (416) 979 2211
Facsimile: (416) 979 1234


ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
Paul Keller
Laura Hall
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

5

*Counsel for the Canadian Debtors*

*/s/ Paul Keller*

GOWLING LAFLEUR HENDERSON LLP

Jennifer Stam
Derrick Tay
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Tel: +1 416 216 4000
Fax: +1 416 216 3930


ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
Paul Keller
Laura Hall
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Counsel for the Joint Administrators*

*/s/ Neil Oxford*

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

James L. Patton
Edwin J. Harron
John T. Dorsey
Jaime Luton Chapman
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Gabrielle Glemann
Charles H. Huberty
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

DAVIES WARD PHILLIPS & VINEBERG LLP

Robin Schwill
Sean Campbell
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

LAX O'SULLIVAN SCOTT LISUS LLP

Matthew P. Gottlieb
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

*Counsel for the Canadian Creditors Committee*

/s/ Selinda A. Melnik
Selinda A. Melnik (DE Bar No. 4032)

*on behalf of*

DLA PIPER LLP (US)
*U.S. Counsel for the Canadian Creditors Committee*

Selinda A. Melnik
919 North Market Street
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 468-5650
Facsimile: (302) 778-7914
- *and* -
Richard Hans
Timothy Hoeffner
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4530

CAW-CANADA LEGAL DEPARTMENT
*Lawyers for the Canadian Autoworkers Union*

Barry Wadsworth
205 Placer Court
Toronto, ON M2H 3H9
Telephone: (416) 495-3776
Facsimile: (416) 495-3786

KOSKIE MINSKY LLP
*Lawyers for the Former and Disabled Canadian Employees*

Mark Zigler
Susan Philpott
Ari Kaplan
20 Queen Street West, Suite 900
Toronto, ON M5H 3R3
Telephone: (416) 595-2090\
Facsimile: (416) 204-2877

*Counsel for The Bank of New York Mellon, as Indenture Trustee*

/s/ Michael Riela

LATHAM & WATKINS LLP

Michael J. Riela
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

MCMILLAN LLP

Sheryl E. Seigel
Brookfield Place, Suite 4400
181 Bay Street
Toronto, ON M5J 2T3
Canada
Telephone: (416) 865-7000
Facsimile: (416) 865-7048

7

McCARTHY TÉTRAULT LLP
*Lawyers for Morneau Shepell Ltd.,*
*as administrator of the Nortel Canada registered*
*pension plans*

R. Paul Steep
Byron D. Shaw
Elder Marques
James D. Gage
Barbara J. Boake
TD Bank Tower, Suite 5300
Toronto Dominion Centre
66 Wellington Street West
Toronto ON M5K 1E6
Telephone: (416) 601-7998
Facsimile: (416) 868-0673

PALIARE ROLAND ROSENBERG ROTHSTEIN
LLP

Ken Rosenberg
Lily Harmer
Karen Jones
Massimo Starnino
155 Wellington Street West, 35th Floor
Toronto, ON M5V 3H1
Telephone: (416) 646-4300
Facsimile: (416) 646-4301

SHIBLEY RIGHTON LLP
w/ NELLIGAN O'BRIEN PAYNE LLP
Barristers and Solicitors
*Lawyers for the Active and Transferred Canadian*
*Employees*

Arthur O. Jacques / Thomas McRae
Co-Counsel: Janice Payne / Steve Levitt
250 University Avenue, Suite 700
Toronto, ON M5H 3E5
Telephone: (416) 214-5213/5206
Facsimile: (416) 214-5413/5400

*Counsel for the Trustee of Nortel Networks UK*
*Pension Plan and the Board of the Pension*
*Protection Fund*

/s/ Sameer Advani
BAYARD, P.A.

Charlene D. Davis
Justin R. Alberto
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

WILLKIE FARR & GALLAGHER LLP

Brian E. O'Connor
787 7th Ave.
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-9251

CASSELS BROCK & BLACKWELL LLP

David Ward
William Burden
Lara Jackson
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

THORNTON GROUT FINNIGAN LLP

Michael Barrack
D.J. Miller
Rebecca Lewis
Andrea McEwan
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON M5K 1K7

*Counsel for the Wilmington Trust Company, not in its individual capacity but solely as Trustee*

/s/ David A. Crichlow

KATTEN MUCHIN ROSENMAN LLP

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

HEENAN BLAIKIE LLP

John Salmas
Kenneth David Kraft
Bay Adelaide Centre
P.O. Box 2900
333 Bay Street, Suite 2900
Toronto, ON M5H 2T4
Telephone: (416) 360-6336
Facsimile: (416) 360-8425

*Counsel for the Law Debenture Trust Company of New York*

/s/ Daniel A. Lowenthal

BORDEN LADNER GERVAIS

John D. Marshall
Craig J. Hill
Edmond Lamek
Scotia Plaza,
40 King Street West, 44th Floor
Toronto, Ontario M5H 3Y4
Canada
Telephone: (416) 367-6000
Facsimile: (416) 367-6749

PATTERSON BELKNAP WEBB & TYLER LLP

Daniel A. Lowenthal
Brian P. Guiney
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

MORRIS JAMES LLP

Stephen M. Miller
Courtney R. Hamilton
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

*Counsel for the Former Directors and Officers of
Nortel Networks Corporation and Nortel Networks
Limited*

*/s/ Betsy Putnam*

OSLER, HOSKIN & HARCOURT LLP

Lyndon A.J. Barnes
Adam Hirsh
Box 50, 1 First Canadian Place
Toronto, Ontario
M5X 1B8
Canada

10

Court File No: 09-CL-7950

481

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding commenced at Toronto

ORDER
(Amended Deposition Protocol)

Goodmans LLP
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON   M5H 2S7

Jay A. Carfagnini (LSUC# 22293T)
Joseph Pasquariello (LSUC# 38390C)
Christopher Armstrong (LSUC# 55148B)
Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

# BLUE SHEET

Court File No: 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | TUESDAY, THE 19ᵗʰ DAY OF |
| JUSTICE MORAWETZ | ) | NOVEMBER, 2013 |
| | ) | |
| | ) | |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**ORDER**
**(Amendments to Litigation Timetable, Discovery Plan and Deposition**
**Protocol)**

**THIS MOTION**, made by Nortel Networks Corporation, Nortel Networks Limited,

Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel

Networks International Corporation (collectively, the **"Canadian Debtors"**) jointly with Ernst &

Young Inc. in its capacity as monitor (the **"Monitor"**) of the Canadian Debtors, the U.S.

Debtors, Committee, the EMEA Debtors/ Joint Administrators, the UK Pension Claimants **and**

**the CCC** (all as defined in the Allocation Protocol (as defined in Schedule A hereto) and

collectively, the **"Moving Parties"**) for the relief set out in the Notice of Motion dated

November 14, 2013 was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING** the one-hundredth report of the Monitor dated November 14, 2013, and on hearing submissions of counsel for the Moving Parties and the objection of the ad hoc bondholder group, no one appearing for any other person on the service list, although served as appears from the Affidavit of Service of Kiran Dhillon sworn November 14, 2013, filed.

1.    THIS COURT ORDERS that the time for the service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.    THIS COURT ORDERS that capitalized terms used herein and not otherwise defined have the meaning given to them in Schedule A hereto.

3.    THIS COURT ORDERS that the terms of amendment set out in Schedule A hereto are hereby approved and the Allocation Protocol, the Litigation Timetable, the Discovery Plan and the Deposition Protocol be and they are hereby amended in accordance with such terms.

4.    THIS COURT ORDERS that the parties shall be permitted to adjust interim deadlines in the time table in accordance with the following procedures:

  a.    The Moving Parties shall meet and confer to determine whether further adjustments to the time table should be made and may upon unanimous agreement (subject to sub-paragraph (c) below), without further Order of the Court(s), propose amendments to the timetable provided that such dates shall not impact the Court ordered commencement date of the Trial;

  b.    Any objections by Core Parties to any proposed amendments shall be made within two (2) Business Days of such proposal being made to them in writing; and

c.  All objections shall be resolved through a meet and confer among all the Moving Parties (or designated members) and the objector(s) within two (2) Business Days, failing which, the objector must seek relief from the Court(s) within two (2) Business Days thereafter (by letter). Absent relief from the Court(s), any changes to the time table proposed by the Moving Parties shall be effective.

MISCELLANEOUS

5.    THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

6.    THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

DEC – 3 2013

## SCHEDULE A

**Attached.**

<u>**SCHEDULE "A" –AMENDMENT TERMS**</u>

Capitalized terms used herein and not otherwise defined have the meaning given to them in (i) the allocation procedure protocol approved by the Ontario Superior Court of Justice and the United States Bankruptcy Court for the District of Delaware (the **"Courts"**) in Orders dated on or about April 3, 2013 and May 16, 2013, respectively (as amended and restated, the "Allocation **Protocol"**), (ii) the litigation timetable and discovery plan approved by the Courts in Orders dated on or about May 16, 2013 and as amended by Orders of the Courts dated on or about August 27, 2013 (as amended, the **"Litigation Timetable and Discovery Plan"**), and (iii) the Deposition Protocol as approved by the Courts in Orders dated on or about August 27, 2013 and as amended by Orders dated on or about September 20, 2013 and September 25, 2013 (as amended, the **"Deposition Protocol"**) as applicable.

1.  The Allocation Protocol, Litigation Timetable and Discovery Plan and the Deposition Protocol are modified as follows:

| Deadline | Former Date | Revised Date |
|---|---|---|
| Deadline to complete witness depositions other than third party depositions (i.e., those other than current or former employees or directors of a Core Party) and Representative Witness depositions | December 13, 2013 | December 13, 2013[1] |
| Deadline for each Deposition Group to serve Representative Witness subjects in accordance with paragraph G(1)(a) of the Deposition Protocol | 10 business days prior to the commencement of Representative Witness depositions | 5pm (EST) December 13, 2013 other than with respect to topics relating to NNSA which shall be delivered no later than 5pm (EST) on December 17, 2013 |
| Identification of Representative Witnesses by each Core Party required to produce a Representative Witness | 5 business days prior to the commencement of Representative Witness | 5pm (EST) on December 18, 2013 |

---

[1] The parties shall be permitted to extend this date to December 18, 2013 with unanimous approval of the Scheduling Committee to the extent irreconcilable conflicts prevent a witness from being scheduled by December 13, 2013 provided however, except for good cause shown, that such extension shall not impact any other deadlines or dates in the timetable including the deadlines for noticing with respect to topics for and the scheduling of Representative Witness Depositions.

7790706.2

| Deadline | Former Date | Revised Date |
|---|---|---|
| | depositions | |
| Deadline for objections to Representative Witness subjects in accordance with paragraph G(1)(a) of the Deposition Protocol | Three business days after service of the subjects | 5pm (EST) on December 18, 2013 |
| Meet and confer of the Scheduling Committee to schedule Representative Witness Depositions | NA | December 19, 2013 and/or December 20, 2013 |
| Meet and confer regarding any objections on Representative Witness deposition subjects in accordance with paragraph G(1)(a) of the Deposition Protocol | Within two business days of service of the objections | December 20, 2013 |
| Deadline to identify experts and the subject matter of their reports | November 27, 2013 | January 8, 2014 |
| Representative Witness depositions | December 13, 2013 | January 8, 2014 to January 17, 2014 |
| Deadline for service of expert reports | December 20, 2013 | January 24, 2014 |
| Meet and confer to discuss foreign law experts | NA | No later than January 31, 2014 |
| Deadline for Discovery Groups to provide list of available dates of their experts to the Scheduling Committee | NA | 5pm (EST) on January 31, 2014 |
| Deadline to complete third party depositions | Due date of rebuttal expert reports | February 28, 2014 (solely for witnesses for whom process was started by Sept. 30, 2013 and except for good cause shown as per the current order) |
| Deadline for service of rebuttal expert reports | January 24, 2014 | February 28, 2014 |

7790706.2

| Deadline | Former Date | Revised Date |
|---|---|---|
| Preliminary pre-trial conference | Week of February 17, 2014 | January 29, 2014 |
| Expert depositions | February 28, 2014 | March 17, 2014 to April 4, 2014 |
| Deadline to file a list of all witnesses and exhibits that each Core Party intends to rely upon as part of its direct case | March 6, 2014 | April 10, 2014 |
| Deadline to file:<br><br>• Pre-trial motions<br><br>• Pre-trial briefs<br><br>• All fact affidavits to be used in direct case<br><br>• All exhibits to be used in direct case<br><br>• All deposition testimony to be used in direct case | March 14, 2014 | April 17, 2014 for service with filing on the following business day |
| Pre-trial conference | Week of March 17, 2014 (if the Courts desire) | Between April 21 and April 28, 2014 |
| Beginning of Trial | April 1, 2014 | Beginning on May 12, 2014 and continuing for 19 trial days thereafter |

**2.** <u>**Fact Witness Depositions**</u>

    a.   Third Party Witnesses.

        i.   Notwithstanding any prior orders, absent good cause shown to the Court(s), no Core Parties shall provide any further notices to third parties for production of documents and/or depositions (other than those currently disclosed to the Scheduling Committee).

ii.  Provided that appropriate judicial process to compel the production of documents or testimony from third parties was issued or commenced on or before September 30, 2013, or currently disclosed to the Scheduling Committee, the production of documents from such third parties and/or the depositions of such third party witnesses may be completed after the deadline for fact witness depositions, but must be completed by no later than February 28, 2014, except for good cause shown and by agreement of the Core Parties or order(s) of the Court(s).

3.    **Representative Witness Examinations**.

a.  The Deposition Protocol is hereby amended as follows:

i.  The second sentence of paragraph G(1)(a) is amended as follows:

"At least ten business days before the commencement of Representative Depositions" is hereby deleted and replaced with the words "On or before 5pm (EST) on December 13, 2013 (other than with respect to NNSA for which the deadline shall be December 17, 2013)"

ii.  The fourth sentence of paragraph G(1)(a) is amended as follows:

"objections shall be served within three business days" is hereby deleted and replaced with the words "objections shall be served no later than 5pm (EST) on December 18, 2013"

iii.  The fifth sentence of paragraph G(1)(a) is amended as follows:

"applicable parties shall meet and confer in good faith ~~within two business days thereafter~~ on or about December 20, 2013 and, failing agreement, the burden shall be on the noticing party to obtain judicial relief at least two business days (in order to enable preparation) prior to the Representative Deposition"

b.  On or before 5pm (EST) December 18, 2013, each Core Party that is required to

produce a Representative Witness under the Deposition Protocol shall identify their Representative Witness(es) and provide the Scheduling Committee with a list of all available deposition dates of their Representative Witness(es) for the period January 8, 2014 to January 17, 2014.

c. Representative Witness examinations will take place in accordance with the Deposition Protocol and will be scheduled between January 8, 2014 and January 17, 2014 to take place in New York or Toronto.

d. Each Core Party that is required to produce a Representative Witness under the Deposition Protocol will ensure that its Representative Witness can be produced on several pairs of days for the period January 8, 2014 to January 17, 2014.

e. The Deposition Groups will meet and confer during the week of December 16, 2013 to attempt to resolve any remaining disputes with respect to the Representative Witness depositions.

4. **Expert Witness Examinations.**

a. Expert witness examinations will take place between March 17, 2014 and April 4, 2014 in New York and Toronto.

b. Each Discovery Group will ensure that their expert witnesses can be produced for examination in either New York or Toronto on several days between March 17, 2014 and April 4, 2014 and, unless excused by the Scheduling Committee or the Courts, at a minimum

   i. each expert shall be required to offer at least 5 days on which they are available for deposition,

   ii. the deposition dates offered by the experts must be spread over at least two of the weeks; and

   iii. each Discovery Group must offer enough availability so that its experts' depositions can be scheduled equally over the three weeks of expert

depositions.

c. On or before 5pm (EST) January 31, 2014, each Discovery Group shall provide the Scheduling Committee with all available deposition dates of their experts for the period March 17, 2014 to April 4, 2014.

d. The Core Parties shall meet and confer no later than January 31, 2014 to attempt to reach agreement on the necessity of the examination of foreign law experts for deposition and trial.

5. **Trial Logistics**

a. The Core Parties shall meet and confer as soon as possible (but in any event no later than the week of December 16, 2013) with a view to attempting to reach consensus with respect to a proposal for the conduct of the trial, including the

i. material to be served/filed on April 10, 2014 and April 17, 2014;

ii. the feasibility of providing the Courts with a statement of agreed facts; and

iii. proposed length of the trial.

b. On or before January 20, 2014, the US Debtors, Canadian Debtors/Monitor, the EMEA Debtors and the UK Pension Claimants shall submit (either jointly or separately) their proposals for the conduct of the trial to the Courts. Other Core Parties shall be entitled to file their own proposal on or before January 20, 2014 or, alternatively, they may file a joinder to indicate support of one or more of the proposals on or before January 27, 2014.

6. **Miscellaneous**

a. Other than as expressly modified herein, all other terms, dates, provisions in the Allocation Protocol, Litigation Timetable, Discovery Plan and all amendments thereto remain in full force and effect.

7790706.2

493

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
Proceeding commenced at Toronto

**ORDER**
(Amendments to Litigation Timetable, Discovery
Plan and Deposition Protocol)

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place,
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Derrick Tay (LSUC # 21152A)**
**Jennifer Stam (LSUC # 46735J)**
Tel:    (416) 862-5697
Fax:    (416) 862-7661

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto ON  M5H 2S7

**Jay A. Carfagnini (LSUC# 22293T)**
**Alan Mark (LSUC# 21772U)**
**Jessica Kimmel (LSUC# 32312W)**
**Joseph Pasquariello (LSUC# 38390C)**
**Peter Ruby (LSUC# 38439P)**
Tel: 416.979.2211
Fax: 416.979.1234

TOR_LAW\ 8296198\7

# BLUE SHEET

# Exhibit A

Proposed Joint Trial Protocol[1]

## I.    **Pre-Trial Submissions**

### A.    **Fact Witness Affidavits**

1.    By March 31, 2014,[2] the Core Parties shall disclose the names of the fact witnesses for Allocation (as defined in the Allocation Protocol) and Claims[3] from whom they will submit affidavits, which witnesses will be made available for cross-examination at trial.[4]

2.    Opening fact witness affidavits for Allocation and Claims shall be exchanged by the Core Parties by April 11, 2014,[5] and submitted to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.II.

3.    At the time of exchange of fact witness affidavits, the offering Core Party shall disclose the location at which each witness shall testify at trial.

4.    On April 25, 2014, the Core Parties shall exchange the reply witness affidavits and submit such affidavits to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H.  Except with leave of the Courts for good cause shown, or as necessary to rebut specific allegations concerning a proposed new affiant which could not have been reasonably anticipated, reply affidavits shall be

---

[1]    This proposal assumes a single trial of Allocation and Claims and is subject to change in the event of the Courts' adoption of the anticipated requests of the EMEA Claimants and the UK Pension Claimants for an increased trial length or bifurcation of the trial. Additionally, the Litigation Timetable provides that the Bondholder Allocation Group is distinct from the allocation groups of the US, Canadian and EMEA Debtors and therefore has the right to make its own presentations to the Courts. However, in an effort to streamline the trial proceedings, the Core Parties agree that for purposes of this Proposed Joint Trial Protocol, the Bondholder Allocation Group shall be considered part of the US Allocation Group except (i) the Bondholder Allocation Group shall have the right to submit its own pre-trial and post-trial briefs and is entitled to its own allocation of time for opening statements and closing arguments (each not to exceed 15 minutes) and (ii) in the event of disagreement between them, either the Bondholder Allocation Group or the US Allocation Group shall have the right to petition the Courts, upon a showing of good cause, for additional time to allocate at trial for witness examinations specifically for the Bondholder Allocation Group. All other Core Parties' rights are reserved with respect to any such application by the Bondholder Allocation Group and/or the US Allocation Group.

[2]    All deadlines are to be considered to be no later than 8:30 p.m. Eastern time unless otherwise indicated.

[3]    "Claims" means the Canadian EMEA Claims and Canadian UKPC Claims as both terms are defined in the Allocation Protocol.

[4]    The Core Parties will meet and confer to discuss mutually acceptable limitations on the affidavits and those matters set out in Section II.C.4 herein with a view to submitting a joint proposal or competing proposals no later than February 28, 2014 and, subject to the availability of the Courts, with any unresolved issues to be determined by the Courts at a subsequent pre-trial conference to be convened no later than March 14, 2014.

[5]    "Claims Party" or "Claims Parties" refers to the Canadian Claims Defendant Group, the EMEA Claimants, and the UK Pension Claimants.

submitted only from witnesses who submit initial affidavits.

**B.      Deposition Designations**

1.      Deposition testimony may be submitted by any Core Party of any witness, except that deposition testimony (other than counter-designations for completeness) shall not be submitted by any Core Party of any witness from whom its Allocation Group is submitting an affidavit except that the EMEA Claimants and the UK Pension Claimants, as the case may be, may submit deposition testimony of a witness whose affidavit is submitted by the other of the EMEA Claimants and UK Pension Claimants solely with respect to their Claims.[6]

2.      Fact witness designations

a)      Initial designations shall be due by April 11, 2014.

b)      Objections to initial designations and counter-designations necessary for completeness, as well as initial supplemental designations specifically responsive to affidavit testimony, shall be due by April 25, 2014.

c)      Objections to counter-designations and initial supplemental designations, as well as final supplemental designations specifically responsive to reply affidavit testimony and counter-designations to initial supplemental designations, shall be due by April 29, 2014.

d)      Objections to final supplemental designations and counter-designations to initial supplemental designations, as well as counter-designations to final supplemental designations, shall be due by May 1, 2014.[7]

3.      Expert witness designations

a)      Designations for expert testimony shall be due April 17, 2014.

b)      Objections and counter-designations for expert testimony shall be due by April 25, 2014.

c)      Objections to counter-designations shall be due by April 30, 2014.

4.      Objections to deposition designations shall be made succinctly in writing and provided to the Courts with the final deposition designations for determination.   The time for determination of such objections will be subject to the discretion of the Courts.

---

[6]      In the event representative depositions take place, a Core Party may not offer the representative deposition testimony of any representative of itself or its Allocation Group (other than counter-designations for completeness).

[7]      Any objections to such further counter-designations shall be due by May 5, 2014 and shall result in the supplementation of the pre-trial orders.

5.      Any Core Party may seek leave of the Courts, for good cause shown, to permit the introduction at trial of deposition designations not included with the joint pre-trial orders/books. This provision shall not limit any Core Party's rights under Section II.C.8.

6.      Final deposition designations and objections shall be submitted to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H.

**C.    Exhibit lists**

1.      The Core Parties shall exchange exhibit lists prior to their submission to the Courts, in accordance with the following schedule:[8]

a)      Initial exhibit designations shall be exchanged by April 11, 2014.

b)      Objections to exhibit designations and supplemental designations shall be exchanged by April 25, 2014.

(1)      Supplemental designations are intended to encompass a limited number of exhibits that were overlooked with initial designations or relate to another Allocation Group's or Claims Party's initial designations.

(2)      The Courts shall have the right to exclude supplemental exhibit designations if they believe that admission would be prejudicial to any Core Party or order any other relief.

c)      Objections to supplemental designations shall be due by April 30, 2014.

d)      Final exhibit lists and objections shall be submitted to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H.

2.      Objections to exhibits shall be made succinctly in writing and provided to the Courts with the final exhibit lists for determinations.

a)      Barring objection, all exhibits shall be deemed admitted without having to be specifically moved into evidence at trial.

b)      No objection shall be made to the authenticity of any exhibit or to the lack of foundational testimony necessary for its admission into evidence unless a party has a specific good faith basis to believe that the proffering party could not have laid a proper foundation with an

---

[8]      The Core Parties contemplate that prior to the pre-trial conference scheduled for January 29, 2014, they will reach final agreement on a stipulation regarding representative depositions, which will incorporate certain additional phases in the exhibit list schedule set forth herein. In the event they do not reach such agreement, the Core Parties reserve their rights with respect to any necessary modification of the dates set forth in Sections I.C.1.b and I.I.

appropriate witness. The Core Parties reserve all rights to raise objections to the admissibility of documents to the extent they, in good faith, believe that necessary foundational testimony could not have been obtained, or as otherwise appropriate under the applicable laws or rules of evidence for reasons other than authenticity and foundation.[9] So long as notice is provided in accordance with the timeline for objections to exhibits generally, such objections may be raised by either the objecting Core Party or the proffering Core Party with the Courts as part of the Pre-Trial Motions in the manner set out in Section I.I.

3.     Any Core Party may seek leave of the Courts to permit the introduction at trial of any document that has not been designated for inclusion by any Core Party in the trial exhibit book upon a showing of good cause. In determining whether good cause has been shown, the Courts may consider, among other factors, the timeliness of the disclosure of the proposed exhibit and the underlying reasons therefore.

4.     Following the exchange of exhibit lists, the Core Parties shall confer to compile for the Courts a single set of joint exhibits whose admissibility is uncontested, along with separate sets (one for each Allocation Group and one for each Claims Party) of objected-to exhibits.

5.     Where applicable, exhibits shall be given the same number as used at depositions. Where an exhibit was marked more than one time at a deposition, one number shall be used and the Core Parties shall seek to modify other transcripts submitted to the Courts to reflect the exhibit number to be used at trial. In addition to providing the exhibit number marked at depositions, the exhibits shall also include the as-produced Document ID numbers.

**D.     Expert reports (which shall be those previously served in accordance with the Litigation Timetable)**

1.     The Core Parties shall meet and confer in order to reach agreement by no later than April 4, 2014 on the number of experts (both foreign law and non-foreign law experts) each Group will be permitted to offer to testify live at trial, with the reports of its other experts being submitted without live examination.

a)     By April 11, 2014, each Allocation Group and each Claims Party shall identify those expert witnesses (non-foreign law experts and, to the extent agreement is not reached pursuant to Section 1.D.1.b below, foreign law experts) who will be testifying live and the location where they will be testifying.

b)     The Core Parties will work in good faith after the exchange of expert reports to try and reach an agreement that would allow for the

---

[9]     For the avoidance of doubt, except with respect to hearsay or other foundational objections dealt with pursuant to the foregoing, the Core Parties' rights to object to the admission of exhibits (or their weight) on other evidentiary grounds, such as improper opinion evidence, are preserved.

testimony of foreign law experts to be submitted without live testimony (through expert reports and deposition testimony). In the event that the Core Parties are unable to agree, a Core Party may designate foreign law experts to testify live at trial subject to the terms herein.

2.      The expert reports that a Core Party intends to rely upon may not be altered or supplemented after the expert has been deposed unless the expert is made available for re-deposition.

3.      In the event that a Core Party seeks to withdraw an expert, the Core Party shall provide notice in writing of its intention. If a Core Party withdraws an expert in writing prior to that expert's deposition, no other Core Party may refer to the report(s) of such an expert (including in any rebuttal report to the extent practicable) and there shall be no inference related to such expert having been withdrawn. If a Core Party withdraws an expert in writing after that expert's deposition, the other Core Parties may refer to the report(s) and/or designate portions of the deposition of such expert.

**E.      Statement of Agreed Facts**

1.      The Core Parties shall endeavor in good faith to prepare a statement of agreed facts.

**F.      Confidentiality and Protective Order**

1.      The Core Parties shall endeavor in good faith to negotiate a proposed confidentiality and protective order no later than March 31, 2014 and shall file such order (or their respective proposed versions if the Core Parties do not reach agreement) on or before April 11, 2014.

**G.      Pre-trial briefs**

1.      On May 2, 2014, the Core Parties shall serve and file pre-trial briefs. Core Parties who do not file a brief shall have until May 6, 2014 to file a joinder to the pre-trial brief of another Core Party.

2.      Pre-trial briefs on Claims and Allocation shall be separate.

**H.      Proposed pre-trial orders**

1.      The Core Parties shall jointly prepare a proposed pre-trial order on Allocation  and a separate proposed pre-trial order on the EMEA Claims and the UK Pension Claims and submit such pre-trial orders to the Courts on May 2, 2014 by noon Eastern time.  These orders shall contain:

a)      Any agreed upon written statement of facts;

b)      A list of all deposition designations (both fact witness designations and expert witness depositions), including the relevant excerpts, as well as all objections to any such testimony;

5

c)      A list of all exhibits designations, as well as all objections to any such exhibit designations;

d)      A single set of joint exhibits whose admissibility is uncontested, along with separate sets (one for Allocation and one for Claims) of objected-to exhibits;

e)      Copies of all fact witness affidavits of designated trial witnesses; and

f)      Copies of all expert reports.

I.      **Motions regarding matters that for good reason ought to be decided prior to trial ("Pre-Trial Motions")**

1.      Pre-Trial Motions shall be served and filed on April 17, 2014.

2.      Responses to Pre-Trial Motions shall be served and filed on April 25, 2014.

3.      Replies to Pre-Trial Motions shall be served and filed on May 2, 2014.

4.      Any Core Party may request, or oppose any request, to appear before the Courts to provide oral submissions.

II.     **Trial**

A.      **General**

1.      Total trial time is estimated at 120 hours (20 days of six hours each). The trial time shall be utilized for (i) opening statements and (ii) presentation of witnesses in the manner permitted hereunder.

2.      The US Allocation Group shall be entitled to [●] hours, the Canadian Allocation Group shall be entitled to [●] hours, the Canadian Claims Defendant Group shall be entitled to [●] hours, the EMEA Allocation Group shall be entitled to [●] hours, the EMEA Claimants shall be entitled to [●] hours, and UK Pension Claimants shall be entitled to [●] hours. The Core Parties defer until a future date (as set forth in Section II.C.4) a decision with respect to the foregoing allocation of time but agree that the time used by each Core Party shall be measured in a "chess clock" approach.[10]

---

[10]     The UK Pension Claimants intend to raise the issue as to whether the length of trial prescribed by the Courts applies only to the Allocation trial rather than Allocation and Claims resolution. In this respect, the UK Pension Claimants will submit that the length of the trial is inadequate to address Allocation and Claims in a just and fair manner. All other Core Parties reserve their rights to support or object to the position of the UK Pension Claimants.

Other Core Parties may have submissions about entitlement to separate time allocations and all rights are reserved in this regard.

6

a)　　Each Allocation Group (and the Canadian Claims Defendant Group) shall have no restriction on how they wish to use or allocate their time allocations among members.

b)　　Any Core Party that is not part of an Allocation Group shall identify the Allocation Group with whom that Core Party is most closely aligned by April 14, 2014.

**B.　Opening Statements**

1.　Opening statements on Allocation shall be limited to [●] hours for each of the Allocation Groups, to be allocated among intra-Group members in whatever manner they see fit.[11]

a)　　Opening statements shall be in the following order:

(1)　　EMEA Allocation Group

(2)　　US Allocation Group

(3)　　Canadian Allocation Group

b)　　Each Core Party that is not part of an Allocation Group may present an opening statement immediately following the Allocation Group identified by that Core Party pursuant to Section II.A.2.b.  Such opening statement shall be no longer than 15 minutes.

2.　Opening statements on EMEA Claims and UK Pension Claims shall be limited to [●] hours for each of the Canadian Claims Defendant Group, the EMEA Claimants, and the UK Pension Claimants, to be allocated by intra-Group members in whatever manner they see fit.

a)　　Opening statements shall be in the following order:

(1)　　EMEA Claimants

(2)　　UK Pension Claimants

(3)　　Canadian Claims Defendant Group

**C.　Fact Witnesses[12]**

1.　No fact witness may testify who has not submitted an affidavit.

2.　Fact witnesses shall be called in the following order:

---

[11]　　No single Core Party will use the entire time allotted to any Allocation Group or Claims Group for making opening or closing submissions without agreement of other members of its Allocation Group or Claims Group.

[12]　　The rights of the Core Parties to examine and cross-examine are subject to the usual rules governing cross examination with respect to parties who are not adverse in interest, and are to be exercised in light of the expectation that direct evidence is to be disclosed in pre-filed affidavits.

a)      Canadian Allocation Group and Canadian Claims Defendant Group

b)      US Allocation Group

c)      EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants

3.      The examination of witnesses shall be in the following order (with the proffering Group determining the order of its witnesses):

a)      For Canadian Allocation Group and Canadian Claims Defendant Group witnesses:

(1)      Canadian Allocation Group and Canadian Claims Defendant Group

(2)      US Allocation Group  (on Allocation only)

(3)      EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants

b)      For US Allocation Group witnesses:

(1)      US Allocation Group

(2)      EMEA Allocation Group

(3)      Canadian Allocation Group

c)      For EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants witnesses:

(1)      EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants

(2)      Canadian Allocation Group and Canadian Claims Defendant Group

(3)      US Allocation Group  (on Allocation only)

4.      Re-direct and re-cross examinations shall be limited in scope to the preceding examinations since that Allocation Group or Claims Party last examined the witness and shall be conducted in the same order as the initial examinations.

5.      The Core Parties shall meet and confer in order to submit proposals to the Courts with respect to the trial schedule including (i) the time permitted for opening statements, and (ii) the division of trial time among the various Allocation Groups and/or Claims Parties.  An agreed-upon proposal, or separate proposals in the event the Core Parties fail to reach agreement, shall be submitted

to the Courts no later than February 28, 2014 so as to enable the Courts to adjudicate any disagreement at a pre-trial conference to be held no later than March 14, 2014, subject to the availability of the Courts.[13]

6.      Affidavits from fact witnesses shall serve as direct testimony; however, Core Parties shall be permitted to conduct an initial direct examination of up to 30 minutes consistent with the witness's affidavit or as appropriate to respond to the testimony of another witness, with such time being charged against the proffering Allocation Group's or Claims Party's time allocation.

7.      Core Parties that do not belong to any Allocation Group may cross-examine witnesses in conjunction with the Allocation Group identified by that Core Party pursuant to Section II.A.2.b, provided that such Core Parties shall coordinate their efforts with the members of the Allocation Group identified by that Core Party pursuant to Section II.A.2.b to the extent practicable.

8.      Fact witnesses shall only be called to testify once. Two business days following the completion of all fact witness testimony, the Core Parties shall have the opportunity to submit additional deposition designations solely as necessary to rebut testimony of a fact witness of another Allocation Group or Claims Party (with the Core Party that proffered such fact witness(es) having the right to submit two business days later objections as well as counter-designations necessary for completeness). A Core Party may not designate additional deposition testimony of a testifying witness without having first put the deposition testimony to the witness at trial.

      a)      If challenged, the Core Party seeking to offer such supplemental deposition designations shall be required to identify the specific testimony to which each designation relates

## D.      Expert Witnesses[14]

1.      The number of all expert witnesses (both non-foreign law and foreign law, unless an agreement has been reach that no foreign law experts need to appear at trial) to testify at trial will be chosen by each Allocation Group and Claims Party and disclosed to the other Core Parties no later than April 4, 2014, with the remaining experts testifying through written reports and deposition testimony.[15] Each other Allocation Groups or Claims Parties shall have the right to request the live appearance and cross examination of additional expert witnesses from the other Allocation Groups or Claims Parties.

---

[13]      The proposal(s) can be either for a specific allocation of time or principles by which time would be allocated. The allocation of any trial time to Core Parties who are not part of an Allocation Group shall be taken pro rata from all Allocation Groups.

[14]      The rights of the Core Parties to examine and cross-examine are subject to the usual rules governing cross examination with respect to parties who are not adverse in interest, and are to be exercised in light of the expectation that direct evidence is to be disclosed in pre-filed expert reports.

[15]      Subject to ability to call additional rebuttal expert witnesses.

a) Deposition testimony may be submitted by the other Allocation Groups or Claims Parties without restriction with respect to any experts. Deposition testimony may not be offered (except proper counter-designations) by any Allocation Group or Claims Party with respect to its own expert witness it is calling as a live witness.

2. Expert trial witnesses for Allocation and Claims shall be disclosed on April 11, 2014.

3. Expert witnesses whose evidence is solely in respect of Allocation or a combination of Allocation and Claims ("Allocation Experts") shall be called in the following order after the examination of all fact witnesses:

    a) EMEA Allocation Group

    b) Canadian Allocation Group

    c) US Allocation Group

4. The examination of Allocation Experts shall be in the following order (with the proffering Allocation Group determining the order of its witnesses):

    a) For EMEA Allocation Group witnesses

        (1) EMEA Allocation Group

        (2) Canadian Allocation Group

        (3) US Allocation Group

    b) For Canadian Allocation Group witnesses:

        (1) Canadian Allocation Group

        (2) US Allocation Group

        (3) EMEA Allocation Group

    c) For US Allocation Group witnesses

        (1) US Allocation Group

        (2) EMEA Allocation Group

        (3) Canadian Allocation Group

5. Expert witnesses whose evidence is only in respect of Claims ("Claims Experts") shall be called in the following order after the examination of all

Allocation expert witnesses:[16]

    a)    EMEA Claimants

    b)    UK Pension Claimants

    c)    Canadian Claims Defendant Group

6.    The examination of Claims Experts shall be in the following order (with the proffering Claims Party determining the order of its witnesses):

    a)    For EMEA Claimants witnesses:

        (1)    EMEA Claimants

        (2)    Canadian Claims Defendant Group

    b)    For UK Pension Claimants witnesses:

        (1)    UK Pension Claimants

        (2)    Canadian Claims Defendant Group

    c)    For Canadian Claims Defendant Group witnesses:

        (1)    Canadian Claims Defendant Group

        (2)    EMEA Claimants

        (3)    UK Pension Claimants

7.    Re-direct and re-cross examinations shall be limited in scope to the preceding examinations since that Allocation Group or Claims Party last examined the witness and shall be conducted in the same order as the initial examinations.

8.    Core Parties that do not belong to any Allocation Group may cross-examine expert witnesses in conjunction with the Allocation Group identified by that Core Party pursuant to Section II.A.2.b, provided that such Core Parties shall coordinate their efforts with the members of the Allocation Group identified by that Core Party pursuant to Section II.A.2.b to the extent practicable.

9.    Expert reports and rebuttal reports shall serve as direct testimony; however, Core Parties shall be permitted to conduct initial direct examinations (without time restriction) consistent with the expert's reports, with such time being charged against the proffering Allocation Group's or Claims Party's time allocation.

---

[16]    For greater certainty, the UK Pension Claimants shall not be entitled to conduct an examination of EMEA Claimants' Claims Experts, and the EMEA Claimants shall not be entitled to conduct an examination of the UK Pension Claimants' Claims Experts.

E.   The evidentiary record shall be closed simultaneously for all Core Parties at the conclusion of trial.

## III.   Post-Trial

### A.   Written Submissions

1.   Opening post-hearing memoranda on Allocation and opening post-hearing memoranda on Claims will be filed separately.

a)   Each opening post-hearing memoranda shall be submitted four weeks after the last day of trial.  Core Parties shall have two additional business days to file a joinder to the post-hearing memoranda of another Core Party.

2.   Responsive post-hearing memoranda on Allocation and responsive post-hearing memoranda on Claims will be filed separately.

a)   Responsive post-hearing memoranda shall be submitted three weeks after the opening post-hearing memoranda.  Core Parties shall have two additional business days to file a joinder to the responsive post-hearing memoranda of another Core Party.

### B.   Closing Arguments

1.   On [dates] [2 consecutive days], closing arguments on Allocation shall be heard.  On [date(s)], closing arguments on the EMEA Claims and UK Pension Claims shall be heard.

2.   Closing arguments on Allocation shall be limited to [●] hours for each of the Canadian Allocation Group, EMEA Allocation Group, and US Allocation Group, to be allocated by intra-Group members in whatever manner they see fit.  This time shall not be charged against the trial time allocations set forth above.

a)   Closing arguments on Allocation shall be in the following order:

(1)   Canadian Allocation Group

(2)   EMEA Allocation Group

(3)   US Allocation Group

b)   Each Core Party that is not part of an Allocation Group may present a closing argument immediately following the Allocation Group identified by that Core Party pursuant to Section II.A.2.b.  Such closing argument shall be no longer than 15 minutes.  A Core Party is not obligated to present a closing argument.

c)   Allocation Groups may reserve up to 1/3 of their time for closing arguments for a single round of rebuttal arguments in the same order as

12

initial closing arguments.

3.      The available time for closing arguments on EMEA Claims will be limited to [●] hours for the EMEA Claimants and [●] hours for the Canadian Claims Defendant Group, to be allocated among Group members in whatever manner they see fit.

    a)      Closing arguments on the EMEA Claims Dispute shall be in the following order:

        (1)      EMEA Claimants

        (2)      Canadian Claims Defendant Group

    b)      The EMEA Claimants may reserve up to 1/3 of their time of closing argument for a rebuttal argument.

4.      The available time for closing arguments on the UK Pension Claims Dispute will be limited to [●] hours for the UK Pension Claimants and [●] hours for the Canadian Claims Defendant Group, to be allocated among Group members in whatever manner they see fit.

    a)      Closing arguments on the UK Pension Claims Dispute shall be in the following order:

        (1)      UK Pension Claimants

        (2)      Canadian Claims Defendant Group

    b)      The UK Pension Claimants may reserve up to 1/3 of their time for closing argument for a rebuttal argument.

## IV.    Trial Location

A.      Each Allocation Group and Claims Party shall be entitled to advance and prove its case in the location it chooses (*i.e.*, opening statement, oral evidence and closing argument).

B.      Witnesses shall testify in either Toronto or Wilmington at their election, provided notice of location is furnished at the time of the exchange of affidavits.

C.      Trial location in Toronto shall be _____.

D.      Trial location in Wilmington shall be _____.

E.      Miscellaneous

    1.      When proceedings are occurring in Toronto, the US Court shall participate by live video link.

    2.      When proceedings are occurring in Wilmington, the Canadian Court shall

participate by live video link.

3.    All arguments shall be presented live in the locations listed above. Witness examination may be presented in either court location and presented through video link to the other location.

4.    Each Allocation Group shall have at least one lawyer present in the courtroom participating by video link in order to ensure the smooth presentation of documentary evidence to the video linked judge.

5.    Counsel admitted in either the US Court or Canadian Court (including by *pro hac vice*) may appear and participate fully in the other courtroom as if admitted in that Court.

## V.    Miscellaneous

A.    The Core Parties hereby acknowledge the previous agreements and orders that bear on the Joint Trial, including but not limited to (i) the Cross-border Insolvency Protocol; (ii) the Cross-border Claims Protocol; (iii) the Discovery Plan; and (iv) the Deposition Protocol and amendments thereto. The Core Parties stipulate and agree that to the extent these agreements are inconsistent with this Joint Trial Protocol, the Joint Trial Protocol shall govern.

B.    The Courts shall have the right to modify this Joint Trial Protocol at their discretion for good cause so long as they conclude that such modification is not unduly prejudicial to any Core Party.

C.    In the event any of the Core Parties elects to adopt an allocation position not contained in its pleadings, any other Core Party shall have the right to petition the Courts for a re-allocation of trial time and/or a re-ordering of the trial presentation. Nothing in this provision shall relieve any Core Party of any obligation to seek leave to amend its pleadings to the extent it is otherwise required to do so by law, or to impose any obligation to seek leave to amend its pleadings if it is not otherwise required to do so by law.

D.    Core Parties shall not be obligated to prove Canadian law to the US Court or US law to the Canadian Court as an issue of fact, but shall be entitled to argue the law of either jurisdiction in their pre-trial or post-hearing memoranda.

E.    Conduct of counsel at trial

1.    For efficiency, an examining attorney may approach a witness at any time without seeking permission from the Court.

2.    Counsel may conduct examinations or cross-examinations of a witness remotely or in person. Counsel may be present in both Courts.

3.    Counsel will conduct examination from a lectern.

4.    Any objection raised by one party shall be deemed reserved by all Core

14

Parties other than those in the Allocation Group against whom the objection is asserted.

5.      Counsel who will be conducting the examination (which shall be no more than one per Core Party for each witness[17]) and counsel who will be objecting during the examination will announce themselves at the beginning of the examination. Two persons from each Allocation Group (from different Core Parties) shall be designated to make objections for each witness.

F.      Exhibits

1.      A master set of all documents and proposed exhibits listed on all Core Parties' evidence lists will be prepared for each court. Four copies of these will be prepared in binders. One copy will be provided for each judge and one copy will be provided for the witness in each courtroom.

2.      A master set of exhibits will also be prepared electronically for the Courts and distributed on CD to the Courts. The Core Parties shall coordinate on the preparation of these master exhibits lists and delivery to the Courts.

3.      Demonstrative Exhibits

a)      Any Core Party shall be permitted to use either hard copy demonstratives, computer demonstratives, or a whiteboard if desired.

b)      A Core Party shall provide a copy of any demonstratives that it intends to use during a trial day no later than 7:00 p.m. the prior day (which can be a Sunday for demonstratives to be used on a Monday).

---

[17]      A Core Party may have a second examiner exclusively for Claims-related issues.

511

Court File No. 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION et al.

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**ONE HUNDRED AND THIRTY**
**SECOND REPORT OF THE MONITOR**
**DATED NOVEMBER 16, 2016**

**GOODMANS LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7

**Jay Carfagnini LSUC#22293T**
jcarfagnini@goodmans.ca
**Joseph Pasquariello LSUC#38390C**
jpasquariello@goodmans.ca
**Christopher G. Armstrong LSUC#55148B**
carmstrong@goodmans.ca

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

6608633

# TAB 3

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL**
**COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND**
**NORTHERN TELECOM CANADA LIMITED**

**AFFIDAVIT OF MURRAY MCDONALD**
**(sworn November 17, 2016)**

I, Murray A. McDonald, of the City of Toronto, in the Province of Ontario, MAKE
OATH AND SAY:

1.     I am the President of Ernst & Young Inc., the court appointed monitor (the "**Monitor**") in
the *Companies' Creditors Arrangement Act* ("**CCAA**") proceedings of Nortel Networks
Corporation *et al.* (collectively, the "**Canadian Debtors**" or "**Nortel**"). As such, I have
knowledge of the matters hereinafter deposed to. The Monitor does not, and does not
intend to, waive privilege by any statement herein or in the Report (as defined below).

2.     This affidavit is filed in support of the Monitor's motion for the passing of accounts of
the Monitor and of its counsel incurred during the period January 14, 2009, through to
and including May 31, 2016 (the "**Period**").

3.     Attached as Exhibit "A" hereto is a copy of the One Hundred and Thirty Second Report
of the Monitor, dated November 16, 2016 (the "**Report**"). The purpose of the Report is
to provide this Court with information in respect of the Monitor's motion to pass the
accounts of the Monitor and of its counsel for fees and disbursements incurred during the
Period. I either have direct knowledge of the matters set out in the Report, or have been
advised of the matters set out therein by the Monitor's lead professionals and counsel

who worked on them, and I was involved in the preparation of the Report and signed it. The Report describes the work of the Monitor and its counsel, being Goodmans LLP ("**Goodmans**") as its Canadian and lead legal counsel, Allen & Overy LLP ("**A&O**") as its U.S. legal counsel, and Buchanan Ingersoll & Rooney PC ("**BIR**") as its Delaware local legal counsel. I verily believe the contents of the Report, including its Appendices, to be true and I adopt it as part of this affidavit.

4.      As set out in detail in the Report, the changing circumstances of the CCAA proceedings and the resulting expansion of the Monitor's powers have resulted in the Monitor and its counsel undertaking a scope of work that is beyond the usual role of a monitor in a CCAA proceeding. Indeed, since October 2012 substantially all activities undertaken by or on behalf of Nortel have been undertaken by the Monitor's professionals, including with the assistance of Monitor's counsel.

### The Monitor's Fees and Disbursements

5.      A listing of the Monitor's accounts for the Period, including each account date and amount, is attached as Appendix "D" of the Report, the contents of which I verily believe to be true. As shown in the summary listing, the fees and disbursements of the Monitor for the Period are CA$122,972,821.96, inclusive of applicable taxes. This amount includes billings for 200,065.4 professional hours at an average hourly rate of CA$540. To the best of my knowledge, the Monitor's professional rates, as well as its disbursements, are comparable to the rates charged by other professional firms in the Toronto market for the provision of similar services regarding significant complex commercial restructuring matters.

6.      Attached as Appendix "E" of the Report is a summary table which identifies the individual professionals of the Monitor that have worked on the Nortel file along with their rank, average hourly billing rate, total number of hours worked, total associated professional fees and the work stream(s) in the CCAA proceedings in which the professional has been involved, the contents of which I verily believe to be true. I note that individual professionals working less than 50 hours have been aggregated in a single line item at each given rank in Appendix "E" of the Report. The Monitor's accounts

have been paid by Nortel in the normal course since the commencement of the CCAA proceedings as authorized by the Initial Order granted in the within proceedings.

7.    Copies of the detailed accounts of the Monitor and its counsel are available for the Court's review, subject to further direction and Order of this Court that the Monitor may require relating to matters of privilege and confidentiality.

8.    As noted, the table at Appendix "E" of the Report includes the average hourly billing rate for each Monitor professional based on his or her total hours worked on the file and the time period during which those hours were worked. The hourly rates of the Monitor's professionals have changed from time to time throughout the course of the Nortel mandate as a result of the following:

(a)    on a yearly basis, Ernst & Young Inc. conducts a review of its fees relative to market. In some cases this review results in an increase to hourly fees consistent with market changes; and

(b)    as certain of the Monitor's professionals have been promoted in rank, the hourly fee charged for those professionals' services has increased.

9.    Attached as Appendix "B" to the Report is a description of the background and roles of the lead professionals at the Monitor involved in the Nortel file, which I verily believe to be true.

*Counsel's Fees and Disbursements*

10.   As described in further detail in the Report, the Monitor's counsel have assisted and represented the Monitor in all aspects of the CCAA proceedings as well as in connection with the various Nortel insolvency proceedings pending in the United States, the United Kingdom and in various other jurisdictions.

11.   I am aware that representatives of each of Goodmans, A&O, and BIR are filling separate affidavits providing additional details regarding such counsel's fees and disbursements for the Period, including with respect to counsel's accounts (the **"Counsel Accounts"**).

12.    Each Counsel Account has been reviewed and authorized for payment by me or another professional of the Monitor at my direction and paid by Nortel in the normal course since the commencement of the CCAA proceedings as authorized by the Initial Order granted in the within proceedings.

13.    Based upon: (i) my own review of Counsel Accounts; and (ii) discussions with the other Monitor professionals who have reviewed Counsel Accounts, I believe the Counsel Accounts reflect billings for services performed by the Monitor's counsel consistent with the instructions given by the Monitor to such counsel.

*Conclusion*

14.    As set out in detail in the Report, these CCAA proceedings have been ongoing for more than seven and a half years as at the swearing of this affidavit, and I believe they are unprecedented in terms of their size, complexity, international aspects and the vast number of competing interests, all of which have contributed to the litigious nature of the proceedings.

15.    I believe that the efforts of the Monitor and its counsel have resulted in significant achievements for the Canadian Debtors and their creditors. The work performed by the Monitor, including by the Monitor's counsel at the direction of the Monitor, has been undertaken in good faith with a view to advancing the interests of the Canadian Debtors and their general body of creditors.

16.    I verily believe that the fees and disbursements charged by the Monitor, along with the fees and disbursements of counsel to the Monitor, during the Period are fair and reasonable in the circumstances of this proceeding.

SWORN before me at the City of Toronto,
in the Province of Ontario on the 17th day of
November, 2016

_____
*Commissioner for taking affidavits*

_____
Murray McDonald

EXHIBIT "A"

## ONE HUNDRED AND THIRTY SECOND REPORT OF THE MONITOR
## DATED NOVEMBER 16, 2016

### [ATTACHED]

[Exhibit excluded from served record.
See Tab 2 for copy of One Hundred and Thirty
Second Report]

518

Court File No. 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION *et. al.*

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST
Proceeding commenced at Toronto

**AFFIDAVIT OF MURRAY MCDONALD**
**(sworn November 17, 2016)**

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7

**Jay A. Carfagnini** LSUC#: 22293T
jcarfagnini@goodmans.ca
**Joseph Pasquariello** LSUC#: 38390C
jpasquariello@goodmans.ca
**Christopher G. Armstrong** LSUC#: 55148B
carmstrong@goodmans.ca

Tel: (416) 979-2211
Fax: (416) 979-1234

Lawyers for the Monitor, Ernst & Young Inc.

# **TAB 4**

Court File No.  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL
COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND
NORTHERN TELECOM CANADA LIMITED**

**AFFIDAVIT OF JAY A. CARFAGNINI**
**(sworn November 16, 2016)**

I, Jay A. Carfagnini, of the City of Toronto, in the Province of Ontario, MAKE OATH
AND SAY:

1.     I am a partner at Goodmans LLP ("**Goodmans**"), Canadian legal counsel to Ernst &
Young Inc. in its capacity as the Court-appointed Monitor (the "**Monitor**") in the *Companies'
Creditors Arrangement Act* proceedings of Nortel Networks Corporation *et al.* (collectively,
"**Nortel**"). As such, I have knowledge of the matters hereinafter deposed to, except where stated
to be on information and belief and whereso stated I verily believe it to be true.  Goodmans does
not, and does not intend to, waive privilege by any statement herein.

2.     This affidavit is filed in connection with the Monitor's motion for the passing of accounts
of the Monitor and of its counsel for fees and disbursements incurred during the period January
14, 2009, through to and including May 31, 2016 (the "**Period**").  In particular, this affidavit and
its exhibits provide information in respect of the fees and disbursements of Goodmans for the
Period.

3.      I am aware that the Monitor has prepared the One Hundred and Thirty Second Report of the Monitor dated November 16, 2016 (the "**Report**"), providing details regarding the activities of the Monitor and its counsel giving rise to their fees and disbursements for the Period. I have read the Report and agree with its contents and its description of the activities of Goodmans as described therein.

*Goodmans' Fees and Disbursements*

4.      Attached as Exhibit "A" hereto is a summary listing of Goodmans' accounts for the Period, including the date and amount of each account, the contents of which I verily believe to be true. As shown in the summary listing, the fees and disbursements of Goodmans for the Period are CA$99,994,744.85, inclusive of applicable taxes. This amount includes billings for 134,562.4 professional hours at an average hourly rate of CA$643. To the best of my knowledge, Goodmans' rates, as well as its disbursements, are comparable to the rates charged by other law firms in the Toronto market for the provision of similar services regarding significant complex commercial restructuring matters. Goodmans' accounts have been paid by Nortel at the direction of the Monitor in the normal course since the commencement of the CCAA proceedings as authorized by the Initial Order granted in the within proceedings.

5.      Attached as Exhibit "B" hereto is a summary table which identifies the individual Goodmans lawyers and other professionals that have worked on the Nortel file along with their rank, average hourly billing rate, total number of hours worked, total associated professional fees and the work stream(s) in which the professional has been involved, the contents of which I verily believe to be true. I note that individual professionals working less than 50 hours have been aggregated in a single line item at each given rank.

6.      As noted, the table at Exhibit "B" includes the average hourly billing rate for each Goodmans professional based on his or her total hours worked on the file and the time period during which those hours were worked. Goodmans conducts a yearly review of its professionals'

hourly billing rates relative to market, in some cases resulting in an increase to hourly fees consistent with market changes and/or the increased experience of a particular professional.

7.    Attached as Exhibit "C" hereto is a description of the background and roles of the lead Goodmans lawyers involved in the Nortel file and these proceedings, which I verily believe to be true.

8.    I verily believe that the fees and disbursements charged by Goodmans are fair and reasonable in the circumstances of these proceedings.

SWORN BEFORE ME at the City of Toronto, in the Province of Ontario, on November 16, 2016.

_____
Commissioner for taking affidavits

**Chris Armstrong**

_____
Jay A. Carfagnini

EXHIBIT "A"

LISTING OF GOODMANS ACCOUNTS

[ATTACHED]

This is Exhibit............."A".............referred to in the
affidavit of....Jay..A..Carfagnini;
sworn before me, this......16th
day of....November............20..16..
................................................
A COMMISSIONER FOR TAKING AFFIDAVITS

Chris Armstrong

Nortel Networks
Professional Fees Invoice Summary - Goodmans LLP
January 14, 2009 to May 31, 2016

| Invoice Number | Invoice Date | Service Period Ended | Fees | Disbursements | Taxes | Total |
|---|---|---|---|---|---|---|
| 512560 | 30-Jan-09 | 23/01/2009 | 46,050.59 | 2,573.51 | 2,431.21 | 51,055.31 |
| 514055 | 25-Feb-09 | 23/02/2009 | 207,407.00 | 1,007.53 | 10,420.73 | 218,835.26 |
| 516630 | 27-Mar-09 | 26/03/2009 | 190,011.00 | 974.03 | 9,549.25 | 200,534.28 |
| 518738 | 28-Apr-09 | 24/04/2009 | 265,878.00 | 6,878.59 | 13,637.83 | 286,394.42 |
| 520311 | 27-May-09 | 22/05/2009 | 233,183.00 | 8,765.16 | 12,097.01 | 254,045.17 |
| 521167 | 12-Jun-09 | 31/05/2009 | 84,581.00 | 646.93 | 4,261.40 | 89,489.33 |
| 521666 | 19-Jun-09 | 15/06/2009 | 177,343.50 | 1,768.07 | 8,955.58 | 188,067.15 |
| 522299 | 30-Jun-09 | 29/06/2009 | 177,462.50 | 2,000.23 | 8,973.14 | 188,435.87 |
| 523109 | 16-Jul-09 | 15/07/2009 | 165,797.00 | 1,387.99 | 8,359.25 | 175,544.24 |
| 524164 | 31-Jul-09 | 29/07/2009 | 198,151.50 | 7,244.88 | 10,269.82 | 215,666.20 |
| 524842 | 18-Aug-09 | 14/08/2009 | 206,333.50 | 5,051.22 | 10,569.24 | 221,953.96 |
| 526023 | 31-Aug-09 | 31/08/2009 | 279,263.50 | 4,312.27 | 14,178.79 | 297,754.56 |
| 526550 | 17-Sep-09 | 15/09/2009 | 248,159.00 | 3,332.26 | 12,574.56 | 264,065.82 |
| 527723 | 30-Sep-09 | 30/09/2009 | 193,189.00 | 3,839.17 | 9,851.41 | 206,879.58 |
| 528395 | 19-Oct-09 | 15/10/2009 | 302,941.00 | 5,428.08 | 15,418.45 | 323,787.53 |
| 529469 | 30-Oct-09 | 30/10/2009 | 255,223.50 | 1,699.27 | 12,846.14 | 269,768.91 |
| 530145 | 17-Nov-09 | 15/11/2009 | 334,535.00 | 11,525.05 | 17,303.00 | 363,363.05 |
| 531434 | 30-Nov-09 | 30/11/2009 | 295,147.00 | 4,698.91 | 14,992.30 | 314,838.21 |
| 532537 | 17-Dec-09 | 15/12/2009 | 259,288.00 | 31,351.43 | 14,531.97 | 305,171.40 |
| 533731 | 19-Jan-10 | 15/01/2010 | 407,405.00 | 6,578.22 | 20,699.16 | 434,682.38 |
| 534679 | 29-Jan-10 | 28/01/2010 | 303,126.00 | 2,582.54 | 15,285.43 | 320,993.97 |
| 535472 | 18-Feb-10 | 15/02/2010 | 551,611.50 | 3,697.36 | 27,765.45 | 583,074.31 |
| 536345 | 26-Feb-10 | 25/02/2010 | 397,257.00 | 9,541.37 | 20,339.92 | 427,138.29 |
| 537079 | 16-Mar-10 | 12/03/2010 | 318,133.50 | 12,656.45 | 16,533.15 | 347,323.10 |
| 538323 | 31-Mar-10 | 31/03/2010 | 325,430.00 | 3,283.42 | 16,435.67 | 345,149.09 |
| 539118 | 20-Apr-10 | 15/04/2010 | 193,146.50 | 2,328.67 | 9,773.76 | 205,248.93 |
| 540089 | 30-Apr-10 | 29/04/2010 | 261,289.50 | 3,849.62 | 13,256.96 | 278,396.08 |
| 540806 | 22-May-10 | 15/05/2010 | 302,778.50 | 6,975.26 | 15,487.69 | 325,241.45 |
| 541885 | 02-Jun-10 | 30/05/2010 | 336,755.00 | 3,547.47 | 17,015.12 | 357,317.59 |
| 542385 | 18-Jun-10 | 16/06/2010 | 508,203.00 | 24,828.11 | 26,651.56 | 559,682.67 |
| 543610 | 30-Jun-10 | 30/06/2010 | 268,012.00 | 3,389.99 | 13,570.10 | 284,972.09 |
| 544129 | 20-Jul-10 | 15/07/2010 | 336,591.00 | 8,768.84 | 41,769.09 | 387,128.93 |
| 545393 | 30-Jul-10 | 30/07/2010 | 307,197.50 | 1,539.75 | 40,125.75 | 348,863.00 |
| 545963 | 19-Aug-10 | 15/08/2010 | 301,719.00 | 20,954.93 | 41,947.61 | 364,621.54 |
| 546797 | 31-Aug-10 | 31/08/2010 | 646,192.50 | 28,119.20 | 87,660.53 | 761,972.23 |
| 547306 | 17-Sep-10 | 15/09/2010 | 475,709.00 | 69,309.91 | 70,835.95 | 615,854.86 |
| 548297 | 30-Sep-10 | 30/09/2010 | 727,192.50 | 211,793.98 | 122,068.25 | 1,061,054.73 |
| 549065 | 20-Oct-10 | 15/10/2010 | 502,941.00 | 22,404.78 | 68,294.95 | 593,640.73 |
| 550148 | 29-Oct-10 | 28/10/2010 | 420,649.00 | 13,463.80 | 56,434.66 | 490,547.46 |
| 550953 | 17-Nov-10 | 15/11/2010 | 471,192.00 | 46,484.89 | 67,298.00 | 584,974.89 |
| 552127 | 30-Nov-10 | 29/11/2010 | 230,436.50 | 16,146.16 | 32,055.75 | 278,638.41 |
| 552823 | 16-Dec-10 | 15/12/2010 | 391,583.50 | 29,316.92 | 54,700.55 | 475,600.97 |
| 553867 | 05-Jan-11 | 31/12/2010 | 148,014.00 | 32,890.51 | 23,517.59 | 204,422.10 |
| 554584 | 19-Jan-11 | 15/01/2011 | 403,067.50 | 5,668.65 | 53,135.70 | 461,871.85 |
| 555351 | 31-Jan-11 | 30/01/2011 | 394,066.50 | 3,408.28 | 51,671.73 | 449,146.51 |
| 555997 | 17-Feb-11 | 15/02/2011 | 391,263.00 | 3,808.75 | 51,359.33 | 446,431.08 |
| 556868 | 28-Feb-11 | 28/02/2011 | 233,343.50 | 3,394.38 | 30,775.93 | 267,513.81 |
| 557476 | 17-Mar-11 | 15/03/2011 | 429,817.50 | 9,907.93 | 57,164.31 | 496,889.74 |
| 558656 | 31-Mar-11 | 30/03/2011 | 439,046.00 | 4,597.86 | 57,673.70 | 501,317.56 |
| 559317 | 18-Apr-11 | 14/04/2011 | 489,947.55 | 8,630.30 | 71,531.96 | 570,109.81 |
| 560350 | 02-May-11 | 28/04/2011 | 300,663.50 | 6,684.10 | 39,938.68 | 347,286.28 |
| 560948 | 17-May-11 | 14/05/2011 | 426,386.00 | 16,563.35 | 57,583.42 | 500,532.77 |
| 561988 | 31-May-11 | 30/05/2011 | 725,889.50 | 17,264.46 | 96,610.02 | 839,763.98 |
| 562586 | 20-Jun-11 | 15/06/2011 | 1,075,630.00 | 19,938.29 | 142,423.88 | 1,237,992.17 |
| 563723 | 07-Jul-11 | 30/06/2011 | 746,207.00 | 8,151.74 | 98,050.13 | 852,408.87 |
| 564144 | 19-Jul-11 | 15/07/2011 | 517,965.00 | 24,605.16 | 70,534.12 | 613,104.28 |
| 565235 | 04-Aug-11 | 31/07/2011 | 388,700.00 | 18,333.81 | 52,914.40 | 459,948.21 |
| 565599 | 18-Aug-11 | 15/08/2011 | 337,549.00 | 17,905.30 | 46,206.98 | 401,661.28 |
| 566643 | 31-Aug-11 | 30/08/2011 | 455,596.00 | 12,247.44 | 60,803.14 | 528,646.58 |
| 567406 | 20-Sep-11 | 15/09/2011 | 498,002.00 | 19,730.01 | 67,305.16 | 585,037.17 |
| 568304 | 30-Sep-11 | 28/09/2011 | 346,568.50 | 14,740.23 | 46,953.63 | 408,262.36 |
| 568965 | 19-Oct-11 | 14/10/2011 | 349,534.00 | 5,947.62 | 46,212.61 | 401,694.23 |
| 570015 | 31-Oct-11 | 28/10/2011 | 214,792.00 | 3,914.59 | 28,431.86 | 247,138.45 |
| 570583 | 18-Nov-11 | 15/11/2011 | 254,229.00 | 11,437.39 | 34,536.63 | 300,203.02 |
| 571804 | 30-Nov-11 | 30/11/2011 | 264,120.00 | 6,941.40 | 35,204.96 | 306,266.36 |
| 572517 | 20-Dec-11 | 15/12/2011 | 257,945.00 | 6,249.18 | 34,345.24 | 298,539.42 |
| 573773 | 19-Jan-12 | 15/01/2012 | 247,587.00 | 1,367.16 | 32,364.04 | 281,318.20 |
| 574924 | 31-Jan-12 | 31/01/2012 | 176,297.00 | 1,031.25 | 23,052.67 | 200,380.92 |
| 575415 | 21-Feb-12 | 15/02/2012 | 142,087.00 | 863.09 | 18,567.00 | 161,517.09 |

Nortel Networks
Professional Fees Invoice Summary - Goodmans LLP
January 14, 2009 to May 31, 2016

| Invoice Number | Invoice Date | Service Period Ended | Fees | Disbursements | Taxes | Total |
|---|---|---|---|---|---|---|
| 576521 | 29-Feb-12 | 29/02/2012 | 142,313.50 | 4,542.97 | 19,074.84 | 165,931.31 |
| 577121 | 21-Mar-12 | 15/03/2012 | 110,196.00 | 1,916.75 | 14,574.66 | 126,687.41 |
| 578242 | 30-Mar-12 | 29/03/2012 | 116,417.00 | 1,998.69 | 15,394.04 | 133,809.73 |
| 578901 | 19-Apr-12 | 15/04/2012 | 182,266.50 | 814.44 | 23,800.53 | 206,881.47 |
| 580012 | 30-Apr-12 | 30/04/2012 | 162,946.00 | 1,601.02 | 21,391.11 | 185,938.13 |
| 580685 | 18-May-12 | 15/05/2012 | 175,432.50 | 2,109.76 | 23,080.50 | 200,622.76 |
| 581722 | 31-May-12 | 30/05/2012 | 86,432.50 | 1,667.07 | 11,452.95 | 99,552.52 |
| 582709 | 25-Jun-12 | 15/06/2012 | 177,599.50 | 2,834.50 | 23,456.43 | 203,890.43 |
| 583651 | 06-Jul-12 | 30/06/2012 | 136,585.00 | 577.83 | 17,831.17 | 154,994.00 |
| 584194 | 17-Jul-12 | 15/07/2012 | 124,371.00 | 942.86 | 16,290.80 | 141,604.66 |
| 585452 | 31-Jul-12 | 31/07/2012 | 158,312.00 | 1,807.61 | 20,782.53 | 180,902.14 |
| 586096 | 21-Aug-12 | 15/08/2012 | 126,201.00 | 1,507.35 | 16,602.09 | 144,310.44 |
| 586763 | 30-Aug-12 | 29/08/2012 | 145,005.00 | 548.92 | 18,922.01 | 164,475.93 |
| 587538 | 19-Sep-12 | 14/09/2012 | 123,174.00 | 770.28 | 16,112.76 | 140,057.04 |
| 588714 | 28-Sep-12 | 26/09/2012 | 101,215.50 | 411.49 | 13,211.51 | 114,838.50 |
| 589320 | 18-Oct-12 | 15/10/2012 | 163,747.50 | 2,751.18 | 21,628.32 | 188,127.00 |
| 590699 | 31-Oct-12 | 30/10/2012 | 133,850.00 | 1,413.37 | 17,567.73 | 152,831.10 |
| 591279 | 19-Nov-12 | 15/11/2012 | 177,000.00 | 1,766.26 | 23,239.61 | 202,005.87 |
| 592401 | 30-Nov-12 | 28/11/2012 | 169,135.00 | 1,501.15 | 22,166.19 | 192,802.34 |
| 593544 | 18-Dec-12 | 15/12/2012 | 234,979.50 | 5,964.54 | 31,306.22 | 272,250.26 |
| 594447 | 09-Jan-13 | 31/12/2012 | 56,296.50 | 664.36 | 7,404.92 | 64,365.78 |
| 594884 | 21-Jan-13 | 15/01/2013 | 211,218.50 | 2,060.76 | 27,726.31 | 241,005.57 |
| 596207 | 31-Jan-13 | 31/01/2013 | 209,018.50 | 843.12 | 27,282.02 | 237,143.64 |
| 596776 | 21-Feb-13 | 15/02/2013 | 202,760.50 | 4,234.00 | 26,909.29 | 233,903.79 |
| 597808 | 28-Feb-13 | 28/02/2013 | 208,345.00 | 3,731.52 | 27,569.95 | 239,646.47 |
| 599011 | 20-Mar-13 | 15/03/2013 | 404,653.00 | 5,178.89 | 53,278.15 | 463,110.04 |
| 600307 | 31-Mar-13 | 31/03/2013 | 453,336.00 | 2,224.23 | 59,222.83 | 514,783.06 |
| 601071 | 18-Apr-13 | 15/04/2013 | 788,556.50 | 6,117.53 | 103,291.12 | 897,965.15 |
| 602216 | 30-Apr-13 | 30/04/2013 | 675,860.00 | 8,797.33 | 88,988.94 | 773,646.27 |
| 603199 | 22-May-13 | 15/05/2013 | 665,698.50 | 5,177.55 | 87,213.89 | 758,089.94 |
| 604137 | 31-May-13 | 31/05/2013 | 840,041.50 | 9,071.99 | 110,384.76 | 959,498.25 |
| 604779 | 18-Jun-13 | 15/06/2013 | 868,043.50 | 9,236.46 | 114,046.40 | 991,326.36 |
| 605984 | 28-Jun-13 | 27/06/2013 | 470,448.50 | 5,994.62 | 61,937.61 | 538,380.73 |
| 606607 | 17-Jul-13 | 15/07/2013 | 830,374.50 | 5,522.01 | 108,666.55 | 944,563.06 |
| 607749 | 31-Jul-13 | 30/07/2013 | 822,023.50 | 13,357.09 | 108,599.48 | 943,980.07 |
| 608418 | 20-Aug-13 | 15/08/2013 | 1,187,251.50 | 8,889.25 | 155,498.30 | 1,351,639.05 |
| 609317 | 30-Aug-13 | 29/08/2013 | 971,941.50 | 6,540.34 | 127,202.64 | 1,105,684.48 |
| 609743 | 17-Sep-13 | 15/09/2013 | 1,131,138.00 | 18,782.84 | 149,489.71 | 1,299,410.55 |
| 611136 | 30-Sep-13 | 27/09/2013 | 1,492,206.50 | 32,254.22 | 198,163.39 | 1,722,624.11 |
| 611605 | 17-Oct-13 | 15/10/2013 | 1,518,553.50 | 42,335.87 | 202,915.62 | 1,763,804.99 |
| 612799 | 31-Oct-13 | 30/10/2013 | 1,805,997.00 | 31,880.82 | 238,891.10 | 2,076,768.92 |
| 613499 | 20-Nov-13 | 15/11/2013 | 1,758,938.00 | 165,954.13 | 250,235.98 | 2,175,128.11 |
| 614489 | 29-Nov-13 | 28/11/2013 | 1,288,746.50 | 17,789.13 | 169,833.13 | 1,476,368.76 |
| 615162 | 13-Dec-13 | 12/12/2013 | 1,187,194.50 | 128,625.66 | 171,056.63 | 1,486,876.79 |
| 616417 | 08-Jan-14 | 31/12/2013 | 827,138.00 | 28,726.32 | 111,262.36 | 967,126.68 |
| 616925 | 20-Jan-14 | 15/01/2014 | 1,055,818.00 | 43,135.17 | 142,863.91 | 1,241,817.08 |
| 618000 | 31-Jan-14 | 30/01/2014 | 1,546,622.00 | 32,009.40 | 205,205.57 | 1,783,836.97 |
| 618701 | 20-Feb-14 | 14/02/2014 | 1,808,103.50 | 31,546.44 | 239,121.48 | 2,078,771.42 |
| 619671 | 28-Feb-14 | 27/02/2014 | 1,536,336.00 | 17,344.77 | 201,978.50 | 1,755,659.27 |
| 620313 | 19-Mar-14 | 15/03/2014 | 1,832,248.50 | 34,787.97 | 242,714.75 | 2,109,751.22 |
| 621584 | 31-Mar-14 | 30/03/2014 | 2,037,162.50 | 61,506.57 | 272,810.47 | 2,371,479.54 |
| 622547 | 21-Apr-14 | 15/04/2014 | 2,360,769.50 | 75,269.93 | 316,685.13 | 2,752,724.56 |
| 624251 | 30-Apr-14 | 30/04/2014 | 2,026,783.50 | 41,866.47 | 268,891.48 | 2,337,541.45 |
| 624922 | 20-May-14 | 15/05/2014 | 2,123,880.00 | 78,698.04 | 286,335.15 | 2,488,913.19 |
| 626076 | 30-May-14 | 29/05/2014 | 1,317,834.00 | 53,197.49 | 178,234.09 | 1,549,265.58 |
| 626869 | 18-Jun-14 | 15/06/2014 | 1,302,547.00 | 42,224.25 | 174,820.26 | 1,519,591.51 |
| 627896 | 04-Jul-14 | 30/06/2014 | 1,344,430.00 | 33,664.74 | 179,152.32 | 1,557,247.06 |
| 628493 | 21-Jul-14 | 15/07/2014 | 1,746,003.50 | 65,602.55 | 235,508.79 | 2,047,114.84 |
| 629698 | 31-Jul-14 | 31/07/2014 | 1,062,482.00 | 57,903.91 | 145,630.95 | 1,266,016.86 |
| 630420 | 20-Aug-14 | 14/08/2014 | 790,400.00 | 30,103.74 | 106,665.49 | 927,169.23 |
| 631137 | 29-Aug-14 | 28/08/2014 | 675,742.50 | 12,393.95 | 89,457.74 | 777,594.19 |
| 631889 | 18-Sep-14 | 15/09/2014 | 1,431,514.00 | 19,655.33 | 188,574.27 | 1,639,743.60 |
| 633015 | 30-Sep-14 | 30/09/2014 | 1,190,148.00 | 29,668.63 | 158,559.65 | 1,378,376.28 |
| 633783 | 21-Oct-14 | 15/10/2014 | 321,119.00 | 30,946.70 | 45,768.54 | 397,834.24 |
| 634741 | 31-Oct-14 | 30/10/2014 | 349,556.50 | 5,265.87 | 46,126.91 | 400,949.28 |
| 635432 | 19-Nov-14 | 15/11/2014 | 281,480.50 | 13,767.66 | 38,382.27 | 333,630.43 |
| 636554 | 30-Nov-14 | 30/11/2014 | 165,689.00 | 6,990.18 | 22,448.29 | 195,127.47 |
| 637453 | 17-Dec-14 | 15/12/2014 | 241,525.50 | 4,559.26 | 31,991.02 | 278,075.78 |
| 638563 | 07-Jan-15 | 31/12/2014 | 107,005.50 | 4,393.93 | 14,432.40 | 125,831.83 |
| 638993 | 20-Jan-15 | 15/01/2015 | 315,332.00 | 19,433.64 | 43,519.53 | 378,285.17 |

Nortel Networks
Professional Fees Invoice Summary - Goodmans LLP
January 14, 2009 to May 31, 2016

| Invoice Number | Invoice Date | Service Period Ended | Fees | Disbursements | Taxes | Total |
|---|---|---|---|---|---|---|
| 639783 | 30-Jan-15 | 29/01/2015 | 315,655.00 | 10,981.61 | 42,462.76 | 369,099.37 |
| 640532 | 19-Feb-15 | 15/02/2015 | 263,029.50 | 5,958.04 | 34,918.86 | 303,906.40 |
| 641552 | 04-Mar-15 | 28/02/2015 | 295,826.50 | 6,203.66 | 39,263.93 | 341,294.09 |
| 642295 | 19-Mar-15 | 15/03/2015 | 433,211.50 | 7,596.78 | 57,255.55 | 498,063.83 |
| 643247 | 06-Apr-15 | 31/03/2015 | 346,864.00 | 9,244.42 | 46,277.58 | 402,386.00 |
| 643938 | 21-Apr-15 | 14/04/2015 | 253,109.00 | 4,355.76 | 33,453.91 | 290,918.67 |
| 645125 | 05-May-15 | 30/04/2015 | 371,536.50 | 5,471.01 | 49,010.98 | 426,018.49 |
| 645686 | 21-May-15 | 15/05/2015 | 245,986.50 | 2,331.78 | 32,247.71 | 280,565.99 |
| 646849 | 05-Jun-15 | 31/05/2015 | 261,546.00 | 3,067.14 | 34,383.20 | 298,996.34 |
| 647398 | 19-Jun-15 | 15/06/2015 | 466,977.50 | 5,414.62 | 61,410.98 | 533,803.10 |
| 648350 | 07-Jul-15 | 30/06/2015 | 352,186.00 | 10,068.07 | 47,093.03 | 409,347.10 |
| 649167 | 21-Jul-15 | 15/07/2015 | 255,625.00 | 6,861.53 | 34,123.25 | 296,609.78 |
| 650014 | 06-Aug-15 | 31/07/2015 | 181,122.50 | 5,859.15 | 24,258.09 | 211,239.74 |
| 650707 | 20-Aug-15 | 15/08/2015 | 149,719.00 | 3,547.96 | 19,924.70 | 173,191.66 |
| 651619 | 04-Sep-15 | 31/08/2015 | 316,883.00 | 9,583.23 | 42,440.61 | 368,906.84 |
| 655627 | 19-Nov-15 | 15/09/2015 | 296,725.00 | 3,297.08 | 39,002.87 | 339,024.95 |
| 653358 | 05-Oct-15 | 30/09/2015 | 349,897.00 | 5,242.88 | 46,168.18 | 401,308.06 |
| 654146 | 21-Oct-15 | 15/10/2015 | 297,520.50 | 6,566.72 | 39,531.34 | 343,618.56 |
| 655029 | 05-Nov-15 | 31/10/2015 | 302,590.50 | 1,396.07 | 39,518.26 | 343,504.83 |
| 655838 | 20-Nov-15 | 15/11/2015 | 256,839.00 | 15,855.22 | 35,450.25 | 308,144.47 |
| 656808 | 03-Dec-15 | 30/11/2015 | 230,657.50 | 2,480.84 | 30,307.99 | 263,446.33 |
| 657747 | 17-Dec-15 | 15/12/2015 | 177,560.00 | 22,184.72 | 25,966.81 | 225,711.53 |
| 658711 | 11-Jan-16 | 31/12/2015 | 69,156.50 | 2,165.17 | 9,255.31 | 80,576.98 |
| 659224 | 21-Jan-16 | 15/01/2016 | 405,541.00 | 9,082.70 | 53,901.08 | 468,524.78 |
| 660041 | 08-Feb-16 | 31/01/2016 | 339,315.00 | 4,784.00 | 44,699.85 | 388,798.85 |
| 660489 | 22-Feb-16 | 15/02/2016 | 352,126.50 | 6,116.50 | 46,571.60 | 404,814.60 |
| 661627 | 04-Mar-16 | 29/02/2016 | 306,432.50 | 5,059.81 | 40,494.01 | 351,986.32 |
| 662435 | 22-Mar-16 | 15/03/2016 | 267,792.50 | 4,386.97 | 35,383.34 | 307,562.81 |
| 663324 | 07-Apr-16 | 31/03/2016 | 273,117.50 | 6,561.30 | 36,318.21 | 315,997.01 |
| 663984 | 21-Apr-16 | 15/04/2016 | 380,028.00 | 5,557.55 | 50,126.12 | 435,711.67 |
| 664981 | 05-May-16 | 30/04/2016 | 379,571.00 | 7,476.14 | 50,299.62 | 437,346.76 |
| 665566 | 18-May-16 | 15/05/2016 | 388,014.50 | 4,278.59 | 50,998.11 | 443,291.20 |
| 666611 | 08-Jun-16 | 31/05/2016 | 349,466.00 | 6,422.48 | 46,265.50 | 402,153.98 |
| | | **Grand Total (CAD)** [1,2] | **86,483,927.64** | **2,605,102.62** | **10,905,714.59** | **99,994,744.85** |

(1) Total amount for invoice #512560 is CAD 162,674. Amount shown is net of pre-filing fees of CAD 106,304 plus taxes.
(2) Invoice #559317 is net of cost award of CAD 51,668 with respect to the UK Pension Litigation

EXHIBIT "B"

**WORK PERFORMED BY INDIVIDUAL GOODMANS' PROFESSIONALS**

[ATTACHED]

This is Exhibit.............." B " ..............referred to in the
affidavit of....Jay  A.  Cartagnini
sworn before me, this....16.h
day of....November.........20.16

....................................................
A COMMISSIONER FOR TAKING AFFIDAVITS

Chris Armstrong

Nortel Networks
Professional Fees - Goodmans LLP (CAD)
January 14, 2009 - May 31, 2016

| NAME | Rank | Avg. Hourly Rate | Total Hours | Total Fees (CAD) | Significant Activities |
|------|------|------|------|------|------|
| Carfagnini, Jay A. | Partner | 979 | 7,902.9 | 7,733,297 | See Monitor's Report and Exhibit C |
| Pasquariello, Joseph | Partner | 825 | 13,905.1 | 11,466,311 | See Monitor's Report and Exhibit C |
| Rubenstein, Gale | Partner | 849 | 6,920.4 | 5,875,470 | See Monitor's Report and Exhibit C |
| Ruby, Peter | Partner | 764 | 6,454.3 | 4,932,388 | See Monitor's Report and Exhibit C |
| Butti, Lauren | Associate / Partner | 658 | 4,881.5 | 3,213,882 | Allocation and Claims Litigation |
| Smith, Graham D. | Partner | 839 | 4,708.1 | 3,949,167 | See Monitor's Report and Exhibit C |
| Kimmel, Jessica A. | Partner | 890 | 3,912.2 | 3,482,247 | See Monitor's Report and Exhibit C |
| Wadden, Jason | Associate / Partner | 681 | 3,372.5 | 2,295,215 | Allocation and Claims Litigation |
| Zarnett, Ben | Partner | 1,065 | 2,988.1 | 3,183,255 | See Monitor's Report and Exhibit C |
| Mark, Alan | Partner | 961 | 2,890.3 | 2,776,744 | See Monitor's Report and Exhibit C |
| Wagner, Melaney | Partner | 736 | 2,267.2 | 1,668,661 | Compensation Claims |
| Myers, Frederick | Partner | 851 | 2,185.0 | 1,860,087 | Allocation and Claims Litigation |
| Empey, Brian F. | Partner | 795 | 2,010.5 | 1,597,772 | Allocation and Claims Litigation |
| Berry, Maureen | Partner | 762 | 1,710.4 | 1,303,217 | Allocation and Claims Litigation |
| Zimmerman, Susan | Partner | 824 | 1,526.7 | 1,258,501 | Allocation and Claims Litigation, Claims |
| McAlister, Monique | Partner | 455 | 1,299.9 | 591,748 | Allocation and Claims Litigation |
| Steele, Jana | Partner | 715 | 1,259.8 | 900,693 | Compensation Claims, HWT |
| Rosenthal, Julie | Partner | 783 | 1,096.5 | 858,905 | Allocation and Claims Litigation |
| Keefe, John A. | Partner | 966 | 852.9 | 824,323 | Allocation and Claims Litigation |
| Abols, Gesta | Partner | 450 | 571.2 | 257,040 | Allocation and Claims Litigation |
| Garvie, Susan A. | Partner | 461 | 472.0 | 217,491 | Allocation and Claims Litigation |
| Wiseman, David L. | Partner | 450 | 435.9 | 196,135 | Allocation and Claims Litigation |
| Gosselin, Brenda | Partner | 450 | 418.7 | 188,415 | Allocation and Claims Litigation |
| Ernst, Glenn S. | Partner | 902 | 398.0 | 358,854 | Compensation Claims, HWT |
| Burrows, Rebecca | Partner | 717 | 392.7 | 281,654 | Allocation and Claims Litigation |
| Rowland, Susan | Consultant | 762 | 369.4 | 281,408 | Compensation Claims |
| Conforti, Joe | Partner | 816 | 342.8 | 279,734 | Compensation Claims |
| Cohen, Daniel | Partner | 658 | 290.0 | 190,759 | Allocation and Claims Litigation |
| McGlaughlin, Grant | Partner | 450 | 283.0 | 127,350 | Allocation and Claims Litigation |
| Spiro, Mark | Partner | 450 | 282.1 | 126,945 | Allocation and Claims Litigation |
| Freeman, Sheldon | Partner | 450 | 210.6 | 94,770 | Allocation and Claims Litigation |
| Cook, Caroline | Partner | 560 | 194.1 | 108,696 | Asset Realization |
| Harris, Neil H. | Partner | 989 | 183.9 | 181,836 | Tax Reporting |
| Macdonald, Thomas M. | Partner | 780 | 161.0 | 125,583 | Asset Realization |
| Alcamo, William V. | Partner | 464 | 158.8 | 73,723 | Allocation and Claims Litigation |
| Kussner, Franey | Partner | 781 | 125.9 | 98,284 | Allocation and Claims Litigation |
| Surchin, Mark A. | Partner | 475 | 109.5 | 52,013 | Allocation and Claims Litigation |
| Stamegna, Carolyn | Partner | 450 | 102.1 | 45,945 | Allocation and Claims Litigation |
| Halperin, Stephen H. | Partner | 1,025 | 86.7 | 88,880 | CCAA Administration |
| Bell, Scott | Consultant | 695 | 77.4 | 53,759 | Allocation and Claims Litigation |
| Lederman, David | Partner | 660 | 77.3 | 51,018 | Allocation and Claims Litigation |
| Liu, Victor | Partner | 585 | 76.6 | 44,829 | Asset Realization |
| Alton, John D. | Partner | 757 | 61.9 | 46,833 | Compensation Claims |
| Partners < 50 hours | | 638 | 164.8 | 105,088 | |
| | | | | | |
| | **Total Partners** | **811** | **78,190.7** | **63,448,937** | |
| | | | | | |
| Armstrong, Christopher | Associate / Partner | 537 | 10,468.9 | 5,625,657 | See Monitor's Report and Exhibit C |
| Mighton, Jesse | Articling Student / Associate | 424 | 3,555.6 | 1,506,646 | Allocation and Claims Litigation |
| Kolla, Peter | Associate / Partner | 550 | 2,754.3 | 1,515,855 | Allocation and Claims Litigation |
| Jacobson, Tamryn | Associate | 520 | 2,507.0 | 1,302,790 | Allocation and Claims Litigation |
| Edge, Jonathan | Articling Student / Associate | 376 | 1,847.3 | 694,441 | Allocation and Claims Litigation |
| Arthurs, Hannah | Associate | 539 | 1,843.1 | 992,887 | Allocation and Claims Litigation |
| Costa, Caterina | Associate | 648 | 1,345.8 | 872,371 | Allocation and Claims Litigation, Claims |
| Creery, Monica | Associate / Research Lawyer | 707 | 1,339.6 | 946,497 | Allocation and Claims Litigation |
| Sarabura, Alexander | Articling Student / Associate | 424 | 1,293.5 | 548,826 | Allocation and Claims Litigation |
| Tenk, Andrea | Associate | 373 | 1,143.0 | 426,475 | Allocation and Claims Litigation |
| Ouanounou, Melanie | Associate | 560 | 1,107.7 | 620,312 | Allocation and Claims Litigation |
| Baulke, Ryan | Summer Student / Associate | 404 | 944.2 | 381,776 | Claims Resolution, Asset Realization |
| Yasskin, Michael | Associate | 453 | 672.3 | 304,633 | Allocation and Claims Litigation |
| Wakeling, Daniel | Articling Student / Associate | 360 | 577.7 | 207,692 | Allocation and Claims Litigation |
| Cappell, Lauren | Associate | 500 | 506.3 | 253,150 | Allocation and Claims Litigation |
| Singh, Johnny | Associate | 368 | 470.6 | 173,144 | Allocation and Claims Litigation |
| Hodges, Kellie | Associate | 374 | 456.6 | 170,775 | Allocation and Claims Litigation |
| Descours, Caroline | Associate | 395 | 455.1 | 179,586 | Allocation and Claims Litigation |
| Shneer, Michel | Articling Student / Associate | 433 | 436.7 | 188,998 | Allocation and Claims Litigation |
| Lahey, Andrew | Associate | 367 | 411.3 | 150,995 | Allocation and Claims Litigation |
| Anderson, Michel | Associate | 426 | 400.8 | 170,889 | Allocation and Claims Litigation |
| Young, Sydney | Associate | 401 | 345.2 | 138,411 | Claims Resolution |
| Wilson, Michael | Associate | 453 | 298.4 | 135,223 | Allocation and Claims Litigation |
| Uhren, John | Associate | 444 | 267.7 | 118,873 | Allocation and Claims Litigation |
| Banduk, Shazia | Articling Student / Associate | 441 | 253.6 | 111,942 | Allocation and Claims Litigation |
| Goldrich, Kayln | Associate | 395 | 127.3 | 50,284 | Claims Resolution |
| Goldberg, Eric | Articling Student / Associate | 313 | 112.0 | 35,023 | Allocation and Claims Litigation, Claims |

Nortel Networks
Professional Fees - Goodmans LLP (CAD)
January 14, 2009 - May 31, 2016

| NAME | Rank | Avg. Hourly Rate | Total Hours | Total Fees (CAD) | Significant Activities |
|------|------|------------------|-------------|------------------|------------------------|
| Halfin, Brad | Associate | 385 | 101.6 | 39,152 | Allocation and Claims Litigation |
| Cappe, Daniel | Associate | 506 | 94.5 | 47,853 | Allocation and Claims Litigation |
| Fox, Carlie | Associate | 393 | 64.6 | 25,420 | Claims Resolution |
| Associates and Consultant < 50 hours | | 442 | 402.9 | 178,139 | |
| | Total Associate and Consultant | 495 | 36,605.2 | 18,114,708 | |
| | Total Students | 269 | 9,178.6 | 2,468,838 | |
| | Total Clerks | 309 | 7,264.6 | 2,247,059 | |
| | Total Word Processing | 77 | 3,323.3 | 256,054 | |
| | Grand Total (CAD) | 643 | 134,562.4 | 86,535,596 | |
| Cost Award re: UK Pension Litigation | | - | - | (51,668) | |
| | Net Total (CAD) | 643 | 134,562.4 | 86,483,928 | |

## EXHIBIT "C"

## BACKGROUND AND ROLES OF LEAD COUNSEL TO THE MONITOR

**Name:**            Jay A. Carfagnini
**Rank:**            Partner (Restructuring)

**Year of Call:**        1982
**Avg. Hourly Rate:**    CA$976

Mr. Carfagnini is head of Goodmans' restructuring practice and lead partner on the Nortel mandate for the Monitor. He has significant experience in complex and cross-border restructuring matters, including Target Canada, InterTAN Canada/Circuit City and Quebecor World and has consistently been identified as a leading practitioner of insolvency and restructuring law by several international legal publications including the Lexpert/American Lawyer Media *Guide to the Leading 500 Lawyers in Canada, The Canadian Legal Lexpert Directory, Lexpert Magazine's Leading US/Canada Cross-Border Litigation Lawyers in Canada and the Leading US/Canada Cross-Border Corporate Lawyers in Canada*, Chambers Global Guide to the *World's Leading Lawyers, The Legal 500 Canada,* Euromoney's *Guide to the World's Leading Insolvency and Restructuring Lawyers, IFLR 1000* and *Best Lawyers in Canada.* He has been involved in virtually all aspects of the file to date, including the LOB and Residual IP transactions, the IFSA, CFSA and various other inter-estate agreements and the mediations and settlement discussions concerning the Allocation Dispute and related claims. Mr. Carfagnini has also spent significant time briefing and discussing issues in the case with representatives of the Canadian Debtors' stakeholders and the other Estates.

**Name:**            Joe Pasquariello
**Rank:**            Partner (Restructuring)

**Year of Call:**        1995
**Avg. Hourly Rate:**    CA$821

Mr. Pasquariello is a partner in Goodmans' restructuring practice and one of the lead partners on the Nortel mandate for the Monitor. He has significant experience in complex and cross-border restructuring matters, including Quebecor World, Hollinger and Calpine Canada. Mr. Pasquariello has been named as one of *Lexpert's Rising Stars - Leading Lawyers Under 40* and has also been recognized as a leading insolvency and restructuring lawyer by *Chambers Global Guide to the World's Leading Lawyers, The Canadian Legal Lexpert Directory, Best Lawyers in Canada, Euromoney's Guide to the World's Leading Lawyers in Banking, Financial and Transactional Law* (insolvency and restructuring) and the IFLR 1000. Mr. Pasquariello has been involved in virtually all aspects of the Nortel file to date, including the LOB and Residual IP transactions, the IFSA and various other inter-estate agreements, the mediations and settlement discussions concerning the Allocation Dispute and related claims and claims resolution matters.

This is Exhibit....."*C*".....referred to in the
affidavit of....*Jay A. Carfagnini*....
sworn before me, this....*16th*....
day of....*November*....20..*16*....

.............................................
A COMMISSIONER FOR TAKING AFFIDAVITS
Chris Armstrong

| Name: | Gale Rubenstein |
|---|---|
| Rank: | Partner (Restructuring) |

| Year of Call: | 1977 |
|---|---|
| Avg. Hourly Rate: | CA$849 |

Ms. Rubenstein is a senior partner in Goodmans' restructuring practice and one of the lead partners on the Nortel mandate for the Monitor. She has significant experience in complex and cross-border restructuring matters, including the Asset Backed Commercial Paper (ABCP) restructuring and the GM and Chrysler restructurings. Ms. Rubenstein is identified as a leading practitioner of restructuring and insolvency law by various legal publications including the *Canadian Legal Lexpert Directory, the 2012 Lexpert Special Edition on Canada's Leading Insolvency and Restructuring Lawyers* in the Globe & Mail's Report on Business Magazine, The *2014 Lexpert Guide to the Leading US/Canada Cross-border Corporate Lawyers in Canada, Chambers Global's Guide to the World's Leading Lawyers, IFLR 1000, The Best Lawyers in Canada,* Euromoney's *Guide to the World's Leading Insolvency and Restructuring Lawyers, Guide to the World's Leading Insurance and Reinsurance Lawyers and Guide to the World's Leading Women in Business Law, PLC's Which Lawyer?* And Restructuring and Insolvency Handbook and Law Business Research's *Who's Who International of Insolvency and Restructuring Lawyers and Who's Who Legal: Canada.* In 2013, Ms. Rubenstein received the Ontario Bar Association Award for Excellence in Insolvency Law. Ms. Rubenstein has been primarily focused on employee related matters in Nortel's CCAA proceedings, including the A&R Employee Settlement Agreement, the negotiations leading to the establishment of the Compensation Claims Process, pension matters and the distribution and wind-down of the HWT.

| Name: | Chris Armstrong |
|---|---|
| Rank: | Associate (2009 – 2014)/Partner (2015) (Restructuring) |

| Year of Call: | 2008 |
|---|---|
| Avg. Hourly Rate: | CA$530 |

Mr. Armstrong is a partner in Goodmans' restructuring group, although for most of the Nortel mandate Mr. Armstrong was an associate in the group. Mr. Armstrong has significant experience in complex and cross-border restructuring mandates, including Smurfit-Stone, Crystallex and Eddie Bauer, is recognized as a leading lawyer in the area of insolvency and financial restructuring by *The Canadian Legal Lexpert Directory* and was named a "rising star" in the *Expert Guides* LMG Rising Stars 2015 and 2016 editions. Mr. Armstrong has been involved in virtually all aspects of the file to date, including the LOB and Residual IP transactions, the other asset sales of the Canadian Debtors, various inter-estate agreements, claims resolution, the Allocation Dispute trial and the restructuring and wind-up of NNL's controlled subsidiaries in the Asia-Pacific region.

**Name:**          Benjamin Zarnett
**Rank:**          Partner (Litigation)

**Year of Call:**        1977
**Avg. Hourly Rate:**    CA$1,064

Mr. Zarnett is a senior partner in Goodmans' litigation group and is the lead litigation partner on the Nortel mandate for the Monitor, having argued a number of significant motions and appeals in the CCAA proceedings to date, including the FSD/Warning Notice appeal and the post-filing interest litigation. Of particular note, Mr. Zarnett was lead trial counsel for the Monitor in the Allocation Dispute. He has also been lead counsel in some of the most important and high-profile commercial cases to be decided by Canadian courts, including the Indalex priority dispute, the Asset Backed Commercial Paper restructuring case, the litigation concerning the acquisition of BCE Inc., the Danier Leather securities class action, the Bre-X Minerals litigation, the Canadian Red Cross restructuring litigation and the Confederation Life Insurance Company insolvency proceedings and has consistently been identified as a leading corporate commercial litigator by several international legal publications including *Lexpert Magazine, the Canadian Legal Lexpert Directory,* the *Lexpert/American Lawyer Media's Guide to the Leading 500 Lawyers in Canada* and *Chambers Global's The World's Leading Lawyers.* Mr. Zarnett was recognized by Lexpert Magazine as one of Canada's Top 25 Corporate Commercial Litigators and selected by it as one of the 100 Most Creative Lawyers in Canada.

**Name:**          Alan Mark
**Rank:**          Partner (Litigation)

**Year of Call:**        1982
**Avg. Hourly Rate:**    CA$959

Mr. Mark is a senior partner in Goodmans' litigation group. He was lead trial counsel for the Monitor in the trial to resolve the UKPC Claims and led the preparation of the defence of the UKPC Claims. He also conducted numerous depositions relating to the UKPC Claims and other aspects of the Allocation and Claims Litigation. Mr. Mark has consistently been identified as a leading practitioner by several domestic and international legal publications including *Chambers Global Guide to the World's Leading Lawyers, The Lexpert/American Lawyer Guide to the Leading 500 Lawyers in Canada, the Best Lawyers in Canada* and Benchmark Canada and Euromoney's *Guide to the World's Leading Litigation Lawyers.* Mr. Mark is a fellow of the American College of Trial Lawyers.

**Name:**          Graham Smith
**Rank:**          Partner (Litigation)

**Year of Call:**     1986
**Avg. Hourly Rate:**  CA$837

Mr. Smith is a partner in Goodmans' litigation group and has had significant involvement on the Nortel mandate for the Monitor, particularly with respect to transfer pricing issues arising out of the Allocation and Claims Litigation and certain significant claim disputes. Mr. Smith appears frequently before the Ontario Superior Court of Justice (Commercial List) and has extensive litigation experience at both the trial and appeal level. He has been involved in a number of significant domestic and cross-border insolvency cases, including the liquidation of Confederation Life Insurance Company, Reliance Insurance Company (Canadian Branch) and Markham General Insurance Company.


**Name:**          Jessica Kimmel
**Rank:**          Partner (Litigation)

**Year of Call:**     1991
**Avg. Hourly Rate:**  CA$890

Ms. Kimmel is a partner in Goodmans' litigation group and was one of the lead litigation counsel for the Monitor in the Allocation and Claims Litigation where her involvement included leading the defence of the EMEA Claims, negotiating the litigation and discovery procedure that preceded the Allocation and Claims Litigation, conducting numerous depositions on behalf of the Monitor and appearing as trial counsel for the Monitor in the trials to resolve the Allocation Dispute and the UKPC Claims. Ms Kimmel has significant experience in complex commercial disputes and has appeared before all levels of court in Ontario and in the Supreme Court of Canada on a number of high profile domestic and cross-border cases. Ms. Kimmel has consistently been identified as a leading practitioner in the area of dispute resolution and corporate/commercial litigation by a number of international legal publications including *Chambers Global The World's Leading Lawyers, PLC's Which Lawyer?*, the *Canadian Legal Lexpert Directory*, the *Lexpert Guide to the Leading U.S./Canada Cross-border Litigation Lawyers*, and the *Lexpert Special Edition on Litigation in the Globe & Mail's Report on Business Magazine. The Best Lawyers in Canada* ranks Ms. Kimmel as a leading lawyer in class action litigation, corporate/commercial litigation and securities law, litigation and she is also recognized by Benchmark Canada as one of Canada's Top 25 Women in Litigation.

**Name:**          Peter Ruby
**Rank:**          Partner (Litigation)

**Year of Call:**      1996
**Avg. Hourly Rate:**  CA$764

Mr. Ruby is a partner in Goodmans' litigation group and was one of the lead litigation counsel for the Monitor in the Allocation and Claims Litigation where his involvement included leading the preparation for the Allocation Dispute on behalf of the Monitor, negotiating the litigation and discovery procedure that preceded the Allocation and Claims Litigation, conducting numerous depositions and appearing as trial counsel for the Monitor in the trial to resolve the Allocation Dispute. Mr. Ruby has also assisted in matters relating to certain significant claim disputes. He leads Goodmans' IT practice group and maintains a national and international practice focused on business and information technology dispute resolution specializing in telecommunications and intellectual property. Mr. Ruby is recognized as a leading IT litigator in Chambers *Global's Guide to the World's Leading Lawyers for Business, The Canadian Legal Lexpert Directory* and *The Best Lawyers in Canada.*

535

Court File No. 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION *et. al.*

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST
Proceeding commenced at Toronto

AFFIDAVIT OF JAY A. CARFAGNINI
(sworn November 16, 2016)

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7

**Jay A. Carfagnini** LSUC#: 22293T
jcarfagnini@goodmans.ca
**Joseph Pasquariello** LSUC#: 38390C
jpasquariello@goodmans.ca
**Christopher G. Armstrong** LSUC#: 55148B
carmstrong@goodmans.ca

Tel: (416) 979-2211
Fax: (416) 979-1234

Lawyers for the Monitor, Ernst & Young Inc.

6510794

# TAB 5

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL**
**COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND**
**NORTHERN TELECOM CANADA LIMITED**

**AFFIDAVIT OF KEN COLEMAN**
**(sworn November 17, 2016)**

I, Ken Coleman, of the City of New York, in the State of New York, MAKE OATH
AND SAY:

1.      I am a partner at Allen & Overy LLP ("**A&O**"), U.S. legal counsel to Ernst & Young Inc.
in its capacity as  the Court-appointed Monitor (the "**Monitor**") in the *Companies' Creditors
Arrangement Act* proceedings of Nortel Networks Corporation *et al*. (collectively, "**Nortel**").  As
such, I have knowledge of the matters hereinafter deposed to, except where stated to be on
information and belief and whereso stated I verily believe it to be true.  A&O does not, and does
not intend to, waive privilege by any statement herein.

2.      This affidavit is filed in connection with the Monitor's motion for the passing of accounts
of the Monitor and of its counsel for fees and disbursements incurred during the period January
14, 2009, through to and including May 31, 2016 (the "**Period**").  In particular, this affidavit and
its exhibits provide information in respect of the fees and disbursements of A&O for the Period.
All amounts referenced herein are in U.S. dollars.

3.     I am aware that the Monitor has prepared the One Hundred and Thirty Second Report of the Monitor dated November 16, 2016 (the "**Report**"), providing details regarding the activities of the Monitor and its counsel giving rise to their fees and disbursements for the Period.  I have read the Report and agree with its contents and its description of the activities of A&O as described therein.

*A&O's Fees and Disbursements*

4.     Attached as Exhibit "A" hereto is a summary listing of A&O's accounts for the Period, including the date and amount of each account, the contents of which I verily believe to be true. As shown in the summary listing, the fees and disbursements of A&O for the Period are $31,352,136.73, inclusive of applicable taxes.   This amount includes billings for 46,448.4 professional hours at an average hourly rate of $639.  To the best of my knowledge, A&O's rates, as well as its disbursements, are comparable to the rates charged by other law firms in the New York market for the provision of similar services regarding significant complex commercial restructuring matters.  A&O's accounts have been paid by Nortel at the direction of the Monitor in the normal course since the commencement of the CCAA proceedings as authorized by the Initial Order granted in the within proceedings.

5.     Attached as Exhibit "B" hereto is a summary table which identifies the individual A&O lawyers and other professionals that have worked on the Nortel file along with their rank, average hourly billing rate, total number of hours worked, total associated professional fees and the work stream(s) in which the professional has been involved, the contents of which I verily believe to be true.  I note that: (i) individual professionals working less than 50 hours have been aggregated in a single line item at each given rank; and (ii) paralegal fees have been aggregated.

6.     As noted, the table at Exhibit "B" includes the average hourly billing rate for each A&O professional based on his or her total hours worked on the file and the time period during which those hours were worked.  A&O conducts a yearly review of its professionals' hourly billing

rates relative to market, in some cases resulting in an increase to hourly fees consistent with market changes and/or the increased experience of a particular professional.

7.      I verily believe that the fees and disbursements charged by A&O are fair and reasonable in the circumstances of these proceedings.

SWORN BEFORE ME at the City of
New York, in the State of New York,
on November 17, 2016.

Ken Coleman

<span>Notary Public, State of New York</span>
Notary Public    No. 01FR66069782
Qualified in Queens County
Commission Expires February 11, 2018

# EXHIBIT "A"

## LISTING OF A&O ACCOUNTS

### [ATTACHED]

DAWN FRANCE-SOMERSEL
Notary Public, State of New York
No. 01FR66069782
Qualified in Queens County
Commission Expires February 11, 20

Nortel Networks
Professional Fees Invoice Summary - Allen & Overy LLP Invoices
January 14, 2009 to May 31, 2016

| Invoice Number | Invoice Date | Service Period | Fees | Disbursements | Taxes | Total |
|---|---|---|---|---|---|---|
| 5717817 | 22-Jan-09 | January 14, 2009 to January 21, 2009 | 45,634.50 | 13,230.88 | - | 58,865.38 |
| 5718181 | 02-Mar-09 | January 21, 2009 to February 23, 2009 | 57,605.00 | 3,565.65 | - | 61,170.65 |
| 5718324 | 30-Mar-09 | February 25, 2009 to March 26, 2009 | 74,076.00 | 2,945.90 | - | 77,021.90 |
| 5718638 | 28-Apr-09 | March 24, 2009 to April 27, 2009 | 58,147.00 | 2,182.07 | - | 60,329.07 |
| 6001000452 | 16-Jul-09 | March 23, 2009 to July 1, 2009 | 167,408.50 | 3,967.43 | - | 171,375.93 |
| 6001000700 | 11-Aug-09 | July 2, 2009 to August 7, 2009 | 68,896.00 | 1,192.19 | - | 70,088.19 |
| 6001001016 | 21-Sep-09 | August 10, 2009 to September 17, 2009 | 84,868.50 | 985.46 | - | 85,853.96 |
| 6001001284 | 26-Oct-09 | August 31, 2009 to October 23, 2009 | 142,301.50 | 3,931.12 | - | 146,232.62 |
| 6001001740 | 30-Nov-09 | September 30, 2009 to November 29, 2009 | 54,646.00 | 7,876.66 | - | 62,522.66 |
| 6001001868 | 21-Dec-09 | November 29, 2009 to December 18, 2009 | 31,808.50 | 2,457.60 | - | 34,266.10 |
| 6001002147 | 25-Jan-10 | December 15, 2009 to January 21, 2010 | 50,128.00 | 793.07 | - | 50,921.07 |
| 6001002460 | 24-Feb-10 | November 9, 2009 to February 22, 2010 | 89,128.00 | 1,359.89 | - | 90,487.89 |
| 6001002754 | 29-Mar-10 | February 1, 2010 to March 26, 2010 | 123,359.00 | 2,665.96 | - | 126,024.96 |
| 6001003135 | 29-Apr-10 | March 26, 2010 to April 28, 2010 | 81,167.55 | 2,638.48 | - | 83,806.03 |
| 6001003373 | 27-May-10 | April 18, 2010 to May 25, 2010 | 95,180.68 | 1,609.26 | - | 96,789.94 |
| 6001003579 | 24-Jun-10 | May 7, 2010 to June 23, 2010 | 80,524.64 | 500.51 | - | 81,025.15 |
| 6001003853 | 29-Jul-10 | April 30, 2010 to July 27, 2010 | 74,945.08 | 1,226.66 | - | 76,171.74 |
| 6001004113 | 31-Aug-10 | June 29, 2010 to August 30, 2010 | 101,230.38 | 4,056.57 | - | 105,286.95 |
| 6001004361 | 30-Sep-10 | August 23, 2010 to September 29, 2010 | 179,065.74 | 2,785.50 | - | 181,851.24 |
| 6001004568 | 28-Oct-10 | September 20, 2010 to October 27, 2010 | 203,882.50 | 21,496.72 | - | 225,379.22 |
| 6001004939 | 30-Nov-10 | October 20, 2010 to November 29, 2010 | 150,663.48 | 5,571.27 | - | 156,234.75 |
| 6001004941 | 30-Nov-10 | October 18, 2010 to November 30, 2010 | 143,371.50 | 228.92 | - | 143,600.42 |
| 6001005184 | 29-Dec-10 | November 11, 2010 to December 20, 2010 | 355,148.76 | 8,579.84 | - | 363,728.60 |
| 6001005072 | 29-Dec-10 | November 11, 2010 to December 20, 2010 | 102,819.15 | 1,591.31 | - | 104,410.46 |
| 6001005301 | 31-Jan-11 | December 20, 2010 to January 31, 2011 | 142,776.00 | 13,525.07 | - | 156,301.07 |
| 6001005333 | 31-Jan-11 | December 20, 2010 to January 28, 2011 | 221,185.00 | 42,568.58 | - | 263,753.58 |
| 6001005618 | 28-Feb-11 | January 13, 2011 to February 23, 2011 | 79,835.12 | 14,775.03 | - | 94,610.15 |
| 6001005633 | 28-Feb-11 | January 27, 2011 to February 27, 2011 | 153,020.00 | 6,784.69 | - | 159,804.69 |
| 6001005974 | 31-Mar-11 | February 07, 2011 to March 30, 2011 | 130,478.59 | 5,589.78 | - | 136,068.37 |
| 6001005975 | 31-Mar-11 | February 9, 2011 to March 31, 2011 | 280,769.50 | 2,438.47 | - | 283,207.97 |
| 6001006210 | 27-Apr-11 | February 24, 2011 to April 26, 2011 | 201,497.00 | 7,141.84 | - | 208,638.84 |
| 6001006213 | 27-Apr-11 | March 8, 2011 to April 26, 2011 | 215,839.00 | 25,102.85 | - | 240,941.85 |
| 6001006230 | 27-Apr-11 | April 14, 2011 to April 26, 2011 | 33,880.00 | 826.40 | - | 34,706.40 |
| 6001006226 | 27-Apr-11 | April 12, 2011 to April 26, 2011 | 75,825.50 | - | - | 75,825.50 |
| 6001006210 | 06-May-11 | Period through April 27, 2011 | 35,100.00 | 80.00 | - | 35,180.00 |
| 6001006539 | 31-May-11 | April 18, 2011 to May 30, 2011 | 101,466.32 | 18,883.05 | - | 120,349.37 |
| 6001006545 | 31-May-11 | April 14, 2011 to May 27, 2011 | 228,837.00 | 2,228.01 | - | 231,065.01 |
| 6001006543 | 31-May-11 | April 25, 2011 to May 19, 2011 | 17,472.50 | 393.62 | - | 17,866.12 |
| 6001006541 | 31-May-11 | April 27, 2011 to May 27, 2011 | 150,303.50 | 3,209.38 | - | 153,512.88 |
| 6001006542 | 31-May-11 | Period through May 31, 2011 | 25,329.50 | 187.40 | - | 25,516.90 |
| 6001006750 | 30-Jun-11 | May 17, 2011 to June 28, 2011 | 201,428.00 | 3,426.30 | - | 204,854.30 |
| 6001006753 | 30-Jun-11 | May 16, 2011 to June 27, 2011 | 227,989.00 | 4,671.77 | - | 232,660.77 |
| 6001006751 | 30-Jun-11 | May 5, 2011 to June 28, 2011 | 85,198.00 | 1,775.49 | - | 86,973.49 |
| 6001006749 | 30-Jun-11 | Period through June 30, 2011 | 21,532.50 | 723.06 | - | 22,255.56 |
| 6001007017 | 28-Jul-11 | June 27, 2011 to July 27, 2011 | 115,365.50 | 2,621.39 | - | 117,986.89 |
| 6001007023 | 28-Jul-11 | June 2, 2011 to July 27, 2011 | 28,877.50 | (9,352.42) | - | 19,525.08 |
| 6001007024 | 28-Jul-11 | May 4, 2011 to July 26, 2011 | 14,237.50 | 418.01 | - | 14,655.51 |
| 6001007029 | 28-Jul-11 | Period through July 28, 2011 | 390.00 | 79.28 | - | 469.28 |
| 6001007350 | 31-Aug-11 | July 07, 2011 to August 26, 2011 | 144,753.13 | 6,209.45 | - | 150,962.58 |
| 6001007348 | 31-Aug-11 | July 26, 2011 to August 29, 2011 | 18,290.00 | 11,805.45 | - | 30,095.45 |
| 6001007349 | 31-Aug-11 | August 2, 2011 to August 26, 2011 | 3,547.50 | 39.63 | - | 3,587.13 |
| 6001007656 | 30-Sep-11 | March 09, 2011 to September 28, 2011 | 156,252.54 | 4,732.24 | - | 160,984.78 |
| 6001007660 | 30-Sep-11 | August 19, 2011 to September 27, 2011 | 7,850.00 | 17.56 | - | 7,867.56 |
| 6001007654 | 30-Sep-11 | Through September 1, 2011 | 510.00 | 15.41 | - | 525.41 |
| 6001007661 | 30-Sep-11 | Period through September 30, 2011 | - | 141.04 | - | 141.04 |
| 6001008032 | 31-Oct-11 | September 19, 2011 to October 28, 2011 | 235,192.86 | 4,441.34 | - | 239,634.20 |
| 6001008031 | 31-Oct-11 | September 26, 2011 to October 27, 2011 | 3,522.50 | 3,346.88 | - | 6,869.38 |
| 6001008245 | 30-Nov-11 | May 06, 2011 to November 29, 2011 | 53,486.35 | 6,787.98 | - | 60,274.33 |
| 6001008241 | 30-Nov-11 | November 4, 2011 to November 21, 2011 | 2,095.00 | 4.60 | - | 2,099.60 |
| 6001008565 | 28-Dec-11 | November 15, 2011 to December 27, 2011 | 117,626.00 | 3,911.75 | - | 121,537.75 |
| 6001008868 | 31-Jan-12 | December 19, 2011 to January 30, 2012 | 107,949.50 | 2,267.17 | - | 110,216.67 |
| 6001008890 | 31-Jan-12 | November 29, 2011 to January 20, 2012 | 1,215.00 | - | - | 1,215.00 |
| 6001009175 | 29-Feb-12 | January 23, 2012 to February 28, 2012 | 78,380.50 | 1,616.75 | - | 79,997.25 |
| 6001009481 | 30-Mar-12 | February 22, 2012 to March 29, 2012 | 59,855.52 | 1,184.51 | - | 61,040.03 |
| 6001009876 | 03-May-12 | May 09, 2011 to April 30, 2012 | 119,515.95 | 2,175.31 | - | 121,691.26 |
| 6001010154 | 31-May-12 | April 30, 2011 to May 30, 2012 | 130,430.58 | 675.14 | - | 131,105.72 |
| 6001010414 | 29-Jun-12 | May 15, 2012 to June 27, 2012 | 152,919.88 | 1,736.69 | - | 154,656.57 |
| 6001010413 | 29-Jun-12 | May 7, 2012 to June 5, 2012 | 4,630.50 | 4.80 | - | 4,635.30 |
| 6001010719 | 31-Jul-12 | June 07, 2012 to July 27, 2012 | 66,008.98 | 1,352.81 | - | 67,361.79 |

Nortel Networks
Professional Fees Invoice Summary - Allen & Overy LLP Invoices
January 14, 2009 to May 31, 2016

| Invoice Number | Invoice Date | Service Period | Fees | Disbursements | Taxes | Total |
|---|---|---|---|---|---|---|
| 6001010978 | 11-Sep-12 | May 07, 2012 to September 06, 2012 | 85,344.00 | 2,411.54 | - | 87,755.54 |
| 6001011144 | 28-Sep-12 | August 20, 2012 - September 26, 2012 | 39,872.20 | 1,330.73 | - | 41,202.93 |
| 6001011377 | 31-Oct-12 | August 18, 2012 - October 25, 2012 | 83,578.00 | 3,910.66 | - | 87,488.66 |
| 6001011716 | 30-Nov-12 | October 23, 2012 - November 28, 2012 | 24,285.50 | 17,512.33 | - | 41,797.83 |
| 6001012107 | 04-Jan-13 | October 09, 2012 - December 26, 2012 | 58,055.78 | 91.15 | - | 58,146.93 |
| 6001012355 | 31-Jan-13 | January 02, 2013 - January 28, 2013 | 104,473.47 | 1,741.95 | - | 106,215.42 |
| 6001012648 | 05-Mar-13 | January 21, 2013 - February 28, 2013 | 98,276.28 | 3,530.72 | - | 101,807.00 |
| 6001012819 | 28-Mar-13 | February 25, 2013 - March 27, 2013 | 97,561.99 | 3,288.14 | - | 100,850.13 |
| 6001013308 | 02-May-13 | March 01, 2013 - April 30, 2013 | 324,871.54 | 8,793.19 | - | 333,664.73 |
| 6001013524 | 30-May-13 | April 24, 2013, to May 30,2013 | 362,731.45 | 12,433.64 | - | 375,165.09 |
| 6001013757 | 27-Jun-13 | May 21, 2013 to June 11, 2013 | 3,718.00 | 9.20 | - | 3,727.20 |
| 6001013800 | 28-Jun-13 | May 07, 2013 to June 27, 2013 | 414,646.07 | 8,227.36 | - | 422,873.43 |
| 6001014098 | 30-Jul-13 | March 23 2013 to June 29, 2013 | 998,153.49 | 4,294.77 | - | 1,002,448.26 |
| 6001014095 | 30-Jul-13 | June 11, 2013 to July 1, 2013 | 2,925.00 | | - | 2,925.00 |
| 6001014380 | 29-Aug-13 | June 29, 2013 to August 28, 2013 | 1,017,812.55 | 44,580.63 | - | 1,062,393.18 |
| 6001014379 | 29-Aug-13 | July 22, 2013 to August 26, 2013 | 3,090.00 | | - | 3,090.00 |
| 6001014729 | 30-Sep-13 | August 6, 2013 to September 13, 2013 | 366.50 | | - | 366.50 |
| 6001014708 | 03-Oct-13 | July 10, 2013 to September 30, 2013 | 1,378,786.47 | 22,580.36 | - | 1,401,366.83 |
| 6001015080 | 07-Nov-13 | August 01, 2013 to October 31, 2013 | 2,062,855.15 | 295,890.79 | - | 2,358,745.94 |
| 6001015236 | 26-Nov-13 | October 24, 2013 to November 5, 2013 | 7,865.50 | | - | 7,865.50 |
| 6001015235 | 03-Dec-13 | October 09, 2013 to November 25, 2013 | 1,298,089.81 | 144,047.84 | - | 1,442,137.65 |
| 6001015716 | 07-Jan-14 | October 04, 2013 to December 31, 2013 | 883,775.81 | 178,488.97 | - | 1,062,264.78 |
| 6001016021 | 30-Jan-14 | December 10, 2013 to January 29, 2014 | 641,911.91 | 54,087.33 | - | 695,999.24 |
| 6001016038 | 30-Jan-14 | January 3, 2014 to January 27, 2014 | 4,950.00 | | - | 4,950.00 |
| 6001016346 | 27-Feb-14 | January 13, 2014 to February 26, 2014 | 676,741.79 | 54,214.70 | - | 730,956.49 |
| 6001016646 | 31-Mar-14 | February 03, 2014 to March 30, 2014 | 878,577.13 | 39,123.76 | - | 917,700.89 |
| 6001016669 | 31-Mar-14 | February 19, 2014 to March 14, 2014 | 2,004.00 | 2.00 | - | 2,006.00 |
| 6001017023 | 30-Apr-14 | February 26, 2014 to April 29, 2014 | 1,298,422.15 | 43,357.33 | - | 1,341,779.48 |
| 6001017325 | 02-Jun-14 | April 07, 2014 to May 29, 2014 | 1,384,694.19 | 65,046.42 | - | 1,449,740.61 |
| 6001017541 | 30-Jun-14 | May 13, 2014 to June 29, 2014 | 1,044,493.84 | 43,617.84 | - | 1,088,111.68 |
| 6001017848 | 31-Jul-14 | June 06, 2014 to July 30, 2014 | 1,123,093.46 | 48,655.47 | - | 1,171,748.93 |
| 6001018126 | 28-Aug-14 | August 6, 2014 to August 27, 2014 | 9,127.50 | | - | 9,127.50 |
| 6001018121 | 29-Aug-14 | July 07, 2014 to August 28, 2014 | 582,821.35 | 48,489.91 | - | 631,311.26 |
| 6001018130 | 30-Sep-14 | August 05, 2014 to September 30, 2014 | 784,766.98 | 12,816.90 | - | 797,583.88 |
| 6001018385 | 30-Sep-14 | September 2, 2014 to September 29, 2014 | 36,352.50 | 37.80 | - | 36,390.30 |
| 6001018842 | 02-Oct-14 | Period through September 15, 2014 | 1,126.50 | | - | 1,126.50 |
| 6001018641 | 31-Oct-14 | September 22, 2014 to October 30, 2014 | 778,228.33 | 43,140.94 | - | 821,369.27 |
| 6001018642 | 31-Oct-14 | September 19, 2014 to October 30, 2014 | 77,330.00 | 1,457.96 | - | 78,787.96 |
| 6001018841 | 25-Nov-14 | November 12, 2014 to November 24, 2014 | 9,580.50 | 12,778.33 | - | 22,358.83 |
| 6001018842 | 26-Nov-14 | October 29, 2014 to November 18, 2014 | 42,080.50 | 120.70 | - | 42,201.20 |
| 6001018871 | 01-Dec-14 | September 29, 2014 to November 26, 2014 | 488,416.13 | 20,099.33 | - | 508,515.46 |
| 6001019332 | 30-Dec-14 | November 20, 2014 to December 19, 2014 | 6,106.00 | 1,567.80 | - | 7,673.80 |
| 6001019333 | 30-Dec-14 | November 3, 2014 to December 10, 2014 | 14,067.50 | 14,865.83 | - | 28,933.33 |
| 6001019333 | 06-Jan-15 | November 12, 2014 to December 30, 2014 | 81,129.14 | 17,666.28 | 166.92 | 98,962.34 |
| 6001019555 | 29-Jan-15 | December 16, 2014 to January 27, 2015 | 5,810.00 | 3,441.32 | - | 9,251.32 |
| 6001019559 | 29-Jan-15 | December 18, 2014 to January 18, 2015 | 98,930.50 | 136.00 | - | 99,066.50 |
| 6001019562 | 29-Jan-15 | December 22, 2014 to January 28, 2015 | 16,577.00 | 275.10 | - | 16,852.10 |
| 6001019556 | 29-Jan-15 | Period through January 2, 2015 | 300.00 | 317.72 | - | 617.72 |
| 6001019851 | 26-Feb-15 | Period through February 26, 2015 | - | 338.80 | - | 338.80 |
| 6001019844 | 27-Feb-15 | January 29, 2015 to February 26, 2015 | 21,592.00 | 2,896.30 | - | 24,488.30 |
| 6001019848 | 27-Feb-15 | January 18, 2015 to February 25, 2015 | 26,074.50 | 50.80 | - | 26,125.30 |
| 6001019846 | 02-Mar-15 | January 12, 2015 to February 25, 2015 | 89,533.50 | 7.00 | - | 89,540.50 |
| 6001020152 | 31-Mar-15 | February 02, 2015 to March 30, 2015 | 48,745.92 | (8,885.45) | - | 39,860.47 |
| 6001020144 | 31-Mar-15 | February 17, 2015 to March 30, 2015 | 134,856.50 | 99.80 | - | 134,956.30 |
| 6001020155 | 31-Mar-15 | Period through March 2, 2015 | 150.00 | 17.79 | - | 167.79 |
| 6001020150 | 01-Apr-15 | February 18, 2015 to March 27, 2015 | 31,794.00 | 788.84 | - | 32,582.84 |
| 6001020544 | 30-Apr-15 | March 26, 2015 to April 29, 2015 | 10,015.00 | 1,634.32 | - | 11,649.32 |
| 6001020540 | 30-Apr-15 | Period throuh April 9, 2015 | 550.00 | 20.60 | - | 570.60 |
| 6001020549 | 04-May-15 | March 23, 2015 to April 23, 2015 | 14,040.00 | 2,832.06 | - | 16,872.06 |
| 6001020541 | 04-May-15 | March 31, 2015 to April 27, 2015 | 6,388.00 | 513.34 | - | 6,901.34 |
| 6001020722 | 29-May-15 | May 8, 2015 to May 15, 2015 | 1,405.00 | 423.46 | - | 1,828.46 |
| 6001020719 | 29-May-15 | April 30, 2015 to May 28, 2015 | 1,357.00 | 15.20 | - | 1,372.20 |
| 6001020724 | 01-Jun-15 | April 29, 2015 to May 29, 2015 | 116,861.00 | 1,980.12 | - | 118,841.12 |
| 6001021022 | 30-Jun-15 | May 12, 2015 to June 29, 2015 | 524,834.50 | 6,360.48 | - | 531,194.98 |
| 6001021039 | 30-Jun-15 | June 9, 2015 to June 16, 2015 | 2,437.50 | 232.78 | - | 2,670.28 |
| 6001021042 | 30-Jun-15 | May 22, 2015 to June 29, 2015 | 6,727.50 | | - | 6,727.50 |
| 6001021278 | 31-Jul-15 | May 12, 2015 to June 30, 2015 | 235,119.50 | 6,205.61 | - | 241,325.11 |
| 6001021269 | 31-Jul-15 | July 6, 2015 to July 7, 2015 | 390.00 | 194.10 | - | 584.10 |
| 6001021266 | 31-Jul-15 | June 19, 2015 to July 28, 2015 | 3,217.50 | 8.60 | - | 3,226.10 |
| 6001021442 | 31-Aug-15 | July 31, 2015 to August 26, 2015 | 2,827.50 | 5.04 | - | 2,832.54 |

Nortel Networks
**Professional Fees Invoice Summary - Allen & Overy LLP Invoices**
January 14, 2009 to May 31, 2016

| Invoice Number | Invoice Date | Service Period | Fees | Disbursements | Taxes | Total |
|---|---|---|---|---|---|---|
| 6001021443 | 31-Aug-15 | Period through August 31, 2015 | - | 59.92 | - | 59.92 |
| 6001021444 | 03-Sep-15 | July 13, 2015 to August 31, 2015 | 166,260.09 | 12,714.15 | - | 178,974.24 |
| 6001021686 | 30-Sep-15 | Period through September 29, 2015 | 141,325.96 | 8,342.06 | - | 149,668.02 |
| 6001021690 | 30-Sep-15 | Period through September 29, 2015 | 3,802.50 | - | - | 3,802.50 |
| 6001021692 | 30-Sep-15 | Period through September 18, 2015 | 400.00 | 40.26 | - | 440.26 |
| 6001021925 | 29-Oct-15 | Period through October 29, 2015 | - | 418.74 | - | 418.74 |
| 6001021937 | 29-Oct-15 | October 14, 2015 to October 26, 2015 | 2,827.50 | 28.40 | - | 2,855.90 |
| 6001021945 | 30-Oct-15 | September 30, 2015 to October 29, 2015 | 134,919.50 | 27,919.79 | - | 162,839.29 |
| 6001022162 | 30-Nov-15 | October 26, 2015 to November 25, 2015 | 487.50 | 6.26 | - | 493.76 |
| 6001022151 | 30-Nov-15 | October 26, 2015 to November 25, 2015 | 72,373.00 | 6,281.64 | - | 78,654.64 |
| 6001022526 | 31-Dec-15 | November 13, 2015 to December 30, 2015 | 380,260.50 | 643.59 | - | 380,904.09 |
| 6001022525 | 31-Dec-15 | December 4, 2015 to December 22, 2015 | 3,900.00 | - | - | 3,900.00 |
| 6001022692 | 28-Jan-16 | December 31, 2015 to January 27, 2016 | 240,247.50 | 3,689.27 | - | 243,936.77 |
| 6001022689 | 28-Jan-16 | December 22, 2015 to January 22, 2016 | 1,755.00 | 0.40 | - | 1,755.40 |
| 6001022973 | 29-Feb-16 | January 19, 2016 to February 28, 2016 | 159,203.50 | 10,967.04 | - | 170,170.54 |
| 6001022975 | 29-Feb-16 | February 1, 2016 to February 24, 2016 | 1,882.50 | - | - | 1,882.50 |
| 6001023189 | 30-Mar-16 | February 3, 2016 to March 30, 2016 | 418,860.00 | 6,504.99 | - | 425,364.99 |
| 6001023234 | 31-Mar-16 | March 2, 2016 to March 28, 2016 | 1,365.00 | - | - | 1,365.00 |
| 6001023529 | 29-Apr-16 | March 4, 2016 to April 28, 2016 | 237,590.50 | 9,555.10 | - | 247,145.60 |
| 6001023530 | 28-Apr-16 | March 30, 2016 to April 13, 2016 | 2,925.00 | 0.90 | - | 2,925.90 |
| 6001023868 | 31-May-16 | April 29, 2016 to May 30, 2016 | 108,894.50 | 6,251.28 | - | 115,145.78 |
| 6001023871 | 31-May-16 | April 28, 2016 to May 16, 2016 | 682.50 | - | - | 682.50 |
| | | **Grand Total (USD)[1]** | 29,666,323.21 | 1,685,646.60 | 166.92 | 31,352,136.73 |

(1) Total amount for invoice #5717817 is USD 202,833.88. Amount shown is net of pre-filing fees of USD 143,968.50.

EXHIBIT "B"

WORK PERFORMED BY INDIVIDUAL A&O PROFESSIONALS

[ATTACHED]

DAWN FRANCE-SOMERSEL
Notary Public, State of New York
No. 01FR66069782
Qualified in Queens County
Commission Expires February 11, 20

Nortel Networks
Professional Fees - Allen & Overy LLP (USD)
January 14, 2009 - May 31, 2016

| NAME | Rank | Avg Hourly Rate | Total Hours | Total Fees (USD) | Significant Activities |
|------|------|-----------------|-------------|------------------|------------------------|
| Ken Coleman | Partner | 980 | 2,865.5 | 2,809,402 | All Chapter 11/15 Matters |
| Laura Hall | Associate / Partner | 735 | 3,991.6 | 2,934,155 | All US Litigation Matters |
| Paul B Keller | Partner | 949 | 2,982.7 | 2,831,469 | All US Litigation Matters |
| Jacob Pultman | Partner | 975 | 2,299.7 | 2,242,166 | Allocation and Claims Litigation / Post-Petition Interest Litigation |
| Daniel Guyder | Partner | 940 | 1,832.2 | 1,722,473 | All Chapter 11/15 Matters |
| John Kibler | Associate / Partner | 948 | 689.2 | 653,561 | Post-Petition Interest Litigation |
| Andrew Rhys Davies | Partner | 839 | 192.6 | 161,666 | US Litigation |
| Elaine Johnston | Partner | 905 | 119.7 | 108,364 | Asset Realization |
| Cathleen McLaughlin | Partner | 926 | 90.1 | 83,451 | US Regulatory |
| David Por | Associate / Partner | 934 | 77.4 | 72,255 | Allocation and Claims Litigation / Foreign Proceedings (France) |
| Andrew Denny | Partner | 940 | 63.8 | 59,968 | Foreign Proceedings (UK) |
| Todd Fishman | Partner | 844 | 55.7 | 47,003 | US Litigation |
| Partners and Consultants < 50 hours | | 966 | 201.1 | 194,249 | |
| **Total Partners** | | **900** | **15,461.3** | **13,920,180** | |
| | | | | | |
| Joseph Badtke-Berkow | Associate | 486 | 3,681.0 | 1,789,487 | All Chapter 11/15 Matters |
| Claire Rajan | Associate | 669 | 2,895.6 | 1,937,442 | Allocation and Claims Litigation |
| Mark Nixdorf | Associate | 400 | 1,859.0 | 743,600 | All Chapter 11/15 Matters |
| Lisa Kraidin | Associate | 743 | 1,695.3 | 1,259,357 | All US Litigation Matters |
| Nicolette Ward | Associate | 481 | 1,687.6 | 811,240 | Allocation and Claims Litigation |
| Sarah Razaq | Associate | 576 | 1,630.7 | 939,649 | Allocation and Claims Litigation |
| Stephen Doody | Associate | 489 | 1,139.1 | 556,473 | Allocation/Claims and other US Litigation, |
| Jonathan Cho | Associate | 506 | 1,137.5 | 575,845 | All Chapter 11/15 Matters |
| James P. Barabas | Associate | 738 | 1,031.4 | 761,629 | Allocation and Claims Litigation |
| Michael Sadowitz | Associate | 515 | 978.8 | 504,443 | Allocation and Claims Litigation |
| Jessica Lubarsky | Associate | 659 | 910.6 | 599,907 | All Chapter 11/15 Matters |
| Michael Ferrario | Associate | 628 | 663.7 | 416,571 | Allocation and Claims Litigation |
| Reggie Schafer | Associate | 458 | 609.7 | 279,180 | Allocation and Claims Litigation |
| Bradley Pensyl | Associate | 663 | 579.4 | 384,230 | Post-Petition Interest Litigation |
| Laena Keyashian | Associate | 435 | 574.6 | 250,180 | Allocation and Claims Litigation |
| Amelie D. Baudot | Associate | 405 | 531.6 | 215,346 | All Chapter 11/15 Matters |
| Andrew Dove | Associate | 440 | 407.5 | 179,451 | All Chapter 11/15 Matters |
| Sophie Levy | Associate | 426 | 407.1 | 173,445 | Allocation and Claims Litigation |
| Josh Neifeld | Associate | 400 | 499.6 | 199,942 | All Chapter 11/15 Matters |
| Timothy Reibold | Associate | 521 | 338.9 | 176,485 | Allocation and Claims Litigation |
| Elouise Dellit | Associate | 437 | 301.2 | 131,712 | All Chapter 11/15 Matters |
| Rowena White | Associate | 507 | 293.8 | 149,018 | All Chapter 11/15 Matters |
| Phillip Lee | Associate | 355 | 263.8 | 93,695 | All Chapter 11/15 Matters |
| Alexander Bussey | Associate | 465 | 278.1 | 129,194 | Allocation and Claims Litigation |
| Anne-Laurence Faroux | Associate | 872 | 218.1 | 190,135 | Foreign Proceedings (France) |
| Bethany Kriss | Associate | 426 | 196.3 | 83,626 | All Chapter 11/15 Matters |
| Brian Lawrence | Associate | 486 | 178.0 | 86,560 | Allocation and Claims Litigation |
| Rebecca Perkins | Associate | 367 | 168.5 | 61,775 | All Chapter 11/15 Matters |
| Emma Leguillon | Associate | 518 | 144.1 | 74,686 | Foreign Proceedings (France) |
| Anna Pavlik | Associate | 421 | 142.0 | 59,786 | Asset Realization |
| LaToya Edwards | Associate | 414 | 111.8 | 46,231 | US Litigation |
| Ryan M. Kappa | Associate | 401 | 103.7 | 41,541 | US Regulatory |
| Desma Polydorou | Associate | 591 | 79.6 | 47,007 | Asset Realization |
| Noam Wiener | Associate | 425 | 56.9 | 24,187 | All Chapter 11/15 Matters |
| Associates < 50 hours | | 552 | 834.6 | 460,399 | |
| **Total Associate** | | **542** | **26,629.2** | **14,433,447** | |
| | | | | | |
| **Total Paralegal** | | **306** | **4,357.9** | **1,334,121** | |
| | | | | | |
| **Grand Total (USD)** | | **639** | **46,448.4** | **29,687,748** | |
| | | | | | |
| Discount | | - | - | (21,424) | |
| | | | | | |
| **Net Total (USD)** | | **639** | **46,448.4** | **29,666,323** | |

546

Court File No. 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION *et. al.*

*ONTARIO*
**SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST**
Proceeding commenced at Toronto

**AFFIDAVIT OF KEN COLEMAN**
**(sworn November 17, 2016)**

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Jay A. Carfagnini** LSUC#: 22293T
jcarfagnini@goodmans.ca
**Joseph Pasquariello** LSUC#: 38390C
jpasquariello@goodmans.ca
**Christopher G. Armstrong** LSUC#: 55148B
carmstrong@goodmans.ca

Tel: (416) 979-2211
Fax: (416) 979-1234

Lawyers for the Monitor, Ernst & Young Inc.

6510934

# TAB 6

Court File No.  09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA LIMITED

### AFFIDAVIT OF MARY F. CALOWAY
### (sworn November 17, 2016)

I, Mary F. Caloway, of the City of Wilmington, in the State of Delaware, MAKE OATH AND SAY:

1.      I am a shareholder of Buchanan Ingersoll & Rooney PC ("**BIR**"), local Delaware legal counsel to Ernst & Young Inc. in its capacity as the Court-appointed Monitor (the "**Monitor**") in the *Companies' Creditors Arrangement Act* proceedings of Nortel Networks Corporation *et al.* (collectively, "**Nortel**").  As such, I have knowledge of the matters hereinafter deposed to, except where stated to be on information and belief and whereso stated I verily believe it to be true. BIR does not, and does not intend to, waive privilege by any statement herein.

2.      This affidavit is filed in connection with the Monitor's motion for the passing of accounts of the Monitor and of its counsel for fees and disbursements incurred during the period January 14, 2009, through to and including May 31, 2016 (the "**Period**").  In particular, this affidavit and its exhibits provide information in respect of the fees and disbursements of BIR for the Period. All amounts referenced herein are in U.S. dollars.

3.      I am aware that the Monitor has prepared the One Hundred and Thirty Second Report of the Monitor dated November 16, 2016 (the "**Report**"), providing details regarding the activities of the Monitor and its counsel giving rise to their fees and disbursements for the Period. I have read the Report and agree with its contents and its description of the activities of BIR as described therein.

*BIR's Fees and Disbursements*

4.      Attached as Exhibit "A" hereto is a summary listing of BIR's accounts for the Period, including the date and amount of each account, the contents of which I verily believe to be true. As shown in the summary listing, the fees and disbursements of BIR for the Period are $1,476,489.87. This amount includes billings for 3,576.4 professional hours at an average hourly rate of $311. To the best of my knowledge, BIR's rates, as well as its disbursements, are comparable to the rates charged by other law firms in the Wilmington market for the provision of similar services regarding significant complex commercial restructuring matters. BIR's accounts have been paid by Nortel at the direction of the Monitor in the normal course since the commencement of the CCAA proceedings as authorized by the Initial Order granted in the within proceedings.

5.      Attached as Exhibit "B" hereto is a summary table which identifies the individual BIR lawyers and other professionals that have worked on the Nortel file along with their rank, average hourly billing rate, total number of hours worked and total associated professional fees, the contents of which I verily believe to be true.

6.      As noted, the table at Exhibit "B" includes the average hourly billing rate for each BIR professional based on his or her total hours worked on the file and the time period during which those hours were worked. BIR conducts a yearly review of its professionals' hourly billing rates relative to market, in some cases resulting in an increase to hourly fees consistent with market changes and/or the increased experience of a particular professional.

7.      I verily believe that the fees and disbursements charged by BIR are fair and reasonable in the circumstances of these proceedings.

SWORN BEFORE ME at the City of
Wilmington, in the State of Delaware,
on November 17, 2016.

_____
Notary Public

_____
**Mary F. Caloway**

- 4 -

## EXHIBIT "A"

### LISTING OF BIR'S ACCOUNTS

### [ATTACHED]

*Mary Caloway*

ANNETTE FAY DYE
MY COMMISSION
EXPIRES
May 11, 2019
NOTARY PUBLIC
STATE OF DELAWARE

*Annette Fay Dye*

Nortel Networks
Professional Fees Invoice Summary - Buchanan Ingersoll & Rooney PC
January 14, 2009 to May 31, 2016

| Invoice Number | Invoice Date | Service Period | Fees | Disbursements | Taxes | Total |
|---|---|---|---|---|---|---|
| 10179137 | 04-Feb-09 | through 01/31/09 | 11,629.00 | 932.43 | - | 12,561.43 |
| 10187846 | 10-Mar-09 | through 02/28/09 | 9,514.00 | 6,665.56 | - | 16,179.56 |
| 10194884 | 06-Apr-09 | through 03/31 09 | 5,462.00 | 2,967.42 | - | 8,429.42 |
| 10203224 | 08-May-09 | through 04/30/09 | 6,433.00 | 3,312.36 | - | 9,745.36 |
| 10210154 | 04-Jun-09 | through 05/31/09 | 2,677.00 | 4,627.23 | - | 7,304.23 |
| 10216763 | 06-Jul-09 | through 06/30/09 | 15,005.00 | 8,076.77 | - | 23,081.77 |
| 10224942 | 05-Aug-09 | through 07/31/09 | 11,142.00 | 4,117.98 | - | 15,259.98 |
| 10233411 | 08-Sep-09 | through 08/31/09 | 8,374.00 | 15,810.55 | - | 24,184.55 |
| 10241711 | 09-Oct-09 | through 09/30/09 | 5,774.00 | 1,942.70 | - | 7,716.70 |
| 10246952 | 05-Nov-09 | through 10/31/09 | 4,297.00 | 13,963.40 | - | 18,260.40 |
| 10252773 | 24-Nov-09 | through 11/23/09 | 2,768.00 | 6,144.78 | - | 8,912.78 |
| 10263536 | 12-Jan-10 | through 12/31/09 | 4,926.00 | 3,840.84 | - | 8,766.84 |
| 10268073 | 03-Feb-10 | through 01/31/10 | 4,395.50 | 4,496.71 | - | 8,892.21 |
| 10275527 | 03-Mar-10 | through 02/28/10 | 10,040.00 | 4,267.46 | - | 14,307.46 |
| 10283508 | 07-Apr-10 | through 03/31/10 | 8,425.50 | 4,062.32 | - | 12,487.82 |
| 10290244 | 07-May-10 | through 04/30/10 | 7,578.50 | 6,279.15 | - | 13,857.65 |
| 10296945 | 03-Jun-10 | through 05/31/10 | 2,905.50 | 2,924.91 | - | 5,830.41 |
| 10305235 | 08-Jul-10 | through 06/30/10 | 3,821.50 | 782.28 | - | 4,603.78 |
| 10311851 | 04-Aug-10 | through 07/31/10 | 4,636.50 | 3,123.62 | - | 7,760.12 |
| 10319478 | 07-Sep-10 | through 08/31/10 | 4,613.00 | 834.56 | - | 5,447.56 |
| 10326061 | 05-Oct-10 | through 09/30/10 | 10,432.00 | 5,826.07 | - | 16,258.07 |
| 10333372 | 03-Nov-10 | through 10/31/10 | 10,635.50 | 1,881.43 | - | 12,516.93 |
| 10342693 | 03-Dec-10 | through 11/30/10 | 16,507.00 | 3,733.86 | - | 20,240.86 |
| 10348193 | 05-Jan-11 | through 12/31/10 | 16,154.00 | 336.59 | - | 16,490.59 |
| 10356700 | 08-Feb-11 | through 01/31/11 | 27,827.00 | 3,700.21 | - | 31,527.21 |
| 10364118 | 08-Mar-11 | through 02/28/11 | 14,260.00 | 1,072.54 | - | 15,332.54 |
| 10370778 | 07-Apr-11 | through 03/31/11 | 17,860.00 | 5,481.41 | - | 23,341.41 |
| 10377693 | 25-May-11 | through 04/30/11 | 8,849.50 | 2,857.51 | - | 11,707.01 |
| 10382987 | 25-May-11 | through 04/29/11 | 14,834.50 | | - | 14,834.50 |
| 10384856 | 06-Jun-11 | through 05/31/11 | 7,236.00 | 1,514.38 | - | 8,750.38 |
| 10384857 | 06-Jun-11 | through 05/31/11 | 11,410.00 | 19.39 | - | 11,429.39 |
| 10387835 | 13-Jun-11 | through 06/12/11 | 6,762.50 | | - | 6,762.50 |
| 10391272 | 05-Jul-11 | through 06/30/11 | 20,895.00 | 5,185.39 | - | 26,080.39 |
| 10391275 | 05-Jul-11 | through 06/08/11 | - | 2,856.32 | - | 2,856.32 |
| 10398778 | 03-Aug-11 | through 07/31/11 | 7,239.00 | 6,994.08 | - | 14,233.08 |
| 10398780 | 03-Aug-11 | through 07/25/11 | 819.00 | 2.16 | - | 821.16 |
| 10407236 | 07-Sep-11 | through 08/31/11 | 6,442.00 | 4,592.53 | - | 11,034.53 |
| 10407238 | 07-Sep-11 | through 08/11/11 | 52.00 | | - | 52.00 |
| 10416164 | 10-Oct-11 | through 09/30/11 | 5,637.50 | 152.64 | - | 5,790.14 |
| 10416166 | 10-Oct-11 | through 09/29/11 | 208.00 | - | - | 208.00 |
| 10422157 | 03-Nov-11 | through 10/31/11 | 6,980.00 | 4,203.54 | - | 11,183.54 |
| 10422160 | 03-Nov-11 | through 10/21/11 | 406.00 | | - | 406.00 |
| 10427791 | 22-Nov-11 | through 11/30/11 | 2,390.50 | 10.49 | - | 2,400.99 |
| 10436776 | 04-Jan-12 | through 12/31/11 | 9,553.50 | 5,891.44 | - | 15,444.94 |
| 10444351 | 02-Feb-12 | through 01/31/12 | 667.00 | 1,906.16 | - | 2,573.16 |
| 10451542 | 05-Mar-12 | through 02/28/12 | 7,060.00 | 994.88 | - | 8,054.88 |
| 10458638 | 04-Apr-12 | through 03/31/12 | 8,743.50 | 191.12 | - | 8,934.62 |
| 10465675 | 02-May-12 | through 04/30/12 | 8,840.00 | 3,120.47 | - | 11,960.47 |
| 10476552 | 12-Jun-12 | through 05/31/12 | 10,555.00 | 1,517.04 | - | 12,072.04 |
| 10479944 | 03-Jul-12 | through 06/30/12 | 9,723.50 | 712.62 | - | 10,436.12 |
| 10486804 | 03-Aug-12 | through 07/31/12 | 8,252.50 | 1,038.19 | - | 9,290.69 |
| 10494705 | 07-Sep-12 | through 08/31/12 | 10,767.50 | 1,774.92 | - | 12,542.42 |
| 10502440 | 05-Oct-12 | through 09/30/12 | 4,938.50 | 208.89 | - | 5,147.39 |
| 10511015 | 08-Nov-12 | through 10/31/12 | 8,726.00 | 2,926.61 | - | 11,652.61 |
| 10518284 | 06-Dec-12 | through 11/30/12 | 6,750.00 | 857.95 | - | 7,607.95 |
| 10525923 | 10-Jan-13 | through 12/31/12 | 2,775.50 | 175.95 | - | 2,951.45 |
| 10530839 | 06-Feb-13 | through 01/31/13 | 3,787.50 | 75.10 | - | 3,862.60 |
| 10537866 | 06-Mar-13 | through 02/28/13 | 8,747.00 | 211.70 | - | 8,958.70 |
| 10543578 | 03-Apr-13 | through 03/31/13 | 10,610.50 | 412.30 | - | 11,022.80 |
| 10551729 | 07-May-13 | through 04/30/13 | 14,889.50 | 2,115.19 | - | 17,004.69 |
| 10557911 | 06-Jun-13 | through 05/31/13 | 26,638.50 | 3,851.55 | - | 30,490.05 |
| 10565694 | 08-Jul-13 | through 06/30/13 | 15,328.50 | 4,924.77 | - | 20,253.27 |
| 10573122 | 08-Aug-13 | through 07/31/13 | 8,905.00 | 7,133.83 | - | 16,038.83 |
| 10578587 | 06-Sep-13 | through 08/31/13 | 7,226.00 | 570.88 | - | 7,796.88 |
| 10585367 | 04-Oct-13 | through 09/30/13 | 15,296.00 | 105.60 | - | 15,401.60 |
| 10595063 | 07-Nov-13 | through 10/31/13 | 8,249.00 | 479.12 | - | 8,728.12 |
| 10599513 | 26-Nov-13 | through 11/25/13 | 10,739.50 | 4,138.15 | - | 14,877.65 |
| 10601947 | 04-Dec-13 | through 11/30/13 | 2,165.50 | 1,111.38 | - | 3,276.88 |
| 10608153 | 09-Jan-14 | through 12/31/13 | 10,924.50 | 1,377.65 | - | 12,302.15 |
| 10612633 | 05-Feb-14 | through 01/31/14 | 17,069.50 | 4,578.80 | - | 21,648.30 |

Nortel Networks
Professional Fees Invoice Summary - Buchanan Ingersoll & Rooney PC
January 14, 2009 to May 31, 2016

| Invoice Number | Invoice Date | Service Period | Fees | Disbursements | Taxes | Total |
|---|---|---|---|---|---|---|
| 10620427 | 10-Mar-14 | through 02/28/14 | 8,457.00 | 1,544.38 | - | 10,001.38 |
| 10625503 | 02-Apr-14 | through 03/31/14 | 11,987.00 | 2,051.50 | - | 14,038.50 |
| 10633002 | 06-May-14 | through 04/30/14 | 32,087.50 | 4,285.23 | - | 36,372.73 |
| 10638590 | 03-Jun-14 | through 05/31/14 | 92,410.50 | 4,081.49 | - | 96,491.99 |
| 10647138 | 09-Jul-14 | through 06/30/14 | 46,435.50 | 5,870.63 | - | 52,306.13 |
| 10655544 | 04-Aug-14 | through 07/31/14 | 24,385.00 | 4,132.55 | - | 28,517.55 |
| 10665054 | 05-Sep-14 | through 08/31/14 | 16,849.50 | 17,417.55 | - | 34,267.05 |
| 10672889 | 06-Oct-14 | through 09/30/14 | 25,184.50 | 2,481.46 | - | 27,665.96 |
| 10681572 | 05-Nov-14 | through 10/31/14 | 15,600.50 | 23,264.39 | - | 38,864.89 |
| 10689972 | 26-Nov-14 | through 11/30/14 | 19,256.00 | 3,962.95 | - | 23,218.95 |
| 10699153 | 06-Jan-15 | through 12/31/14 | 8,346.50 | 11,902.84 | - | 20,249.34 |
| 10706946 | 04-Feb-15 | through 01/31/15 | 15,730.00 | 5,152.69 | - | 20,882.69 |
| 10716199 | 07-Mar-15 | through 02/28/15 | 8,148.50 | 5,557.72 | - | 13,706.22 |
| 10723738 | 06-Apr-15 | through 03/31/15 | 17,420.50 | 15,524.97 | - | 32,945.47 |
| 10733970 | 11-May-15 | through 04/30/15 | 1,921.00 | 1,040.76 | - | 2,961.76 |
| 10740776 | 05-Jun-15 | through 05/31/15 | 7,574.00 | 292.40 | - | 7,866.40 |
| 10747906 | 07-Jul-15 | through 06/30/15 | 18,687.00 | 106.40 | - | 18,793.40 |
| 10755122 | 05-Aug-15 | through 07/31/15 | 15,327.50 | 2,385.45 | - | 17,712.95 |
| 10765844 | 09-Sep-15 | through 08/31/15 | 13,260.00 | 16,705.55 | - | 29,965.55 |
| 10771770 | 05-Oct-15 | through 09/30/15 | 8,788.50 | 21,322.71 | - | 30,111.21 |
| 10782127 | 07-Nov-15 | through 10/31/15 | 13,036.00 | 22.50 | - | 13,058.50 |
| 10789633 | 02-Dec-15 | through 11/30/15 | 21,156.00 | 3,460.34 | - | 24,616.34 |
| 10799438 | 12-Jan-16 | through 12/30/15 | 4,189.00 | 28.60 | - | 4,217.60 |
| 10804285 | 03-Feb-16 | through 1/29/16 | 11,792.00 | 676.61 | - | 12,468.61 |
| 10813638 | 08-Mar-16 | through 2/29/16 | 7,882.00 | 2,096.82 | - | 9,978.82 |
| 10821565 | 07-Apr-16 | through 3/31/16 | 17,510.00 | 1,315.58 | - | 18,825.58 |
| 10837505 | 08-Jun-16 | through 5/31/16 | 23,398.00 | 4,807.47 | - | 28,205.47 |
| | | Grand Total (USD) | 1,113,002.50 | 363,487.37 | - | 1,476,489.87 |

EXHIBIT "B"

WORK PERFORMED BY INDIVIDUAL BIR PROFESSIONALS

[ATTACHED]

Nortel Networks
**Professional Fees - Buchanan Ingersoll & Rooney PC (USD)**
**January 14, 2009 - May 31, 2016**

| NAME | Rank | Avg Hourly Rate | Total Hours | Total Fees (USD) |
|------|------|-----------------|-------------|------------------|
| Mary F. Caloway | Shareholder | 556 | 764.6 | 425,018.00 |
| Kathleen A. Murphy | Associate | 347 | 1,002.7 | 347,442.50 |
| Monah Parikh | Associate | 291 | 434.9 | 126,474.50 |
| Peter J. Duhig | Counsel | 283 | 42.5 | 12,038.50 |
| Tammy R. Rogers | Paralegal | 162 | 830.5 | 134,291.50 |
| Jennifer Parisi | Paralegal | 136 | 358.6 | 48,922.50 |
| Melissa Flores | Paralegal | 190 | 44.0 | 8,360 |
| Annette F. Dye | Paralegal | 100 | 92.0 | 9,200 |
| Donna S. Curcio | Paralegal | 210 | 1.4 | 294 |
| Gobeth Smith | Paralegal | 100 | 1.0 | 100 |
| Lit Tech Support | Other | 205 | 4.2 | 861 |
| **Grand Total (USD)** | | **311** | **3,576.4** | **1,113,003** |

Court File No. 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION *et. al.*

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**
Proceeding commenced at Toronto

**AFFIDAVIT OF MARY F. CALOWAY**
**(sworn November 17, 2016)**

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Jay A. Carfagnini** LSUC#: 22293T
jcarfagnini@goodmans.ca
**Joseph Pasquariello** LSUC#: 38390C
jpasquariello@goodmans.ca
**Christopher G. Armstrong** LSUC#: 55148B
carmstrong@goodmans.ca

Tel: (416) 979-2211
Fax: (416) 979-1234

Lawyers for the Monitor, Ernst & Young Inc.

6510954