# Exhibit 22

From:           James Tecce
Sent:           Fri 11/04/2016 3:34 PM (GMT-04:00)
To:             Lowenthal, Daniel A. (x2720); Guiney, Brian P. (x2305)
Cc:             Daniel Holzman
Bcc:
Subject:        Nortel
Attachments: 8521567_2.pdf


Dan and Brian, please see the attached.


We look forward to your client's response.


Good weekend.


**From:** Lowenthal, Daniel A. (x2720) [mailto:dalowenthal@pbwt.com]
**Sent:** Tuesday, November 01, 2016 5:46 PM
**To:** James Tecce <jamestecce@quinnemanuel.com>; Daniel Holzman <danielholzman@quinnemanuel.com>
**Cc:** Guiney, Brian P. (x2305) <bguiney@pbwt.com>
**Subject:** RE: Nortel


Jamie,


I've sent your email below to Law Debenture. I'll be back to you when I have their responses.


In the meantime, please reconsider your refusal to meet with us in person, and without pre-conditions.


Brian and I can still see you and Daniel on Thursday afternoon.


Dan

CONFIDENTIAL
QE_0001186

**From:** James Tecce [mailto:jamestecce@quinnemanuel.com]
**Sent:** Monday, October 31, 2016 5:20 PM
**To:** Lowenthal, Daniel A. (x2720); Daniel Holzman
**Cc:** Guiney, Brian P. (x2305)
**Subject:** RE: Nortel

```
        Dan.  It is extremely important to our clients to get the invoices requested
in the attached letter.  Otherwise, there can be no informed conversation about this
issue.  That being said, if your client is willing to commit to give our clients the
information requested in the letter, then we will make ourselves available for a
conference call on Thursday.  Please understand we think it is unreasonable to ask us
to put effort into a settlement discussion before receiving a commitment that the
information we have requested will be provided.  If your client is not prepared to
provide the invoices, then we will communicate that to our clients and advise you and
Law Debenture on how we intend to proceed.


        -Jamie
```

**From:** Lowenthal, Daniel A. (x2720) [mailto:dalowenthal@pbwt.com]
**Sent:** Monday, October 31, 2016 4:59 PM
**To:** James Tecce <jamestecce@quinnemanuel.com>; Daniel Holzman <danielholzman@quinnemanuel.com>
**Cc:** Guiney, Brian P. (x2305) <bguiney@pbwt.com>
**Subject:** RE: Nortel

Jamie,

Law Debenture says the first step should be a meeting of just lawyers. We'll address your questions below then. Can you and Daniel come here on Thursday afternoon?

Dan

**From:** James Tecce [mailto:jamestecce@quinnemanuel.com]
**Sent:** Monday, October 31, 2016 3:13 PM
**To:** Lowenthal, Daniel A. (x2720); Daniel Holzman

CONFIDENTIAL
QE_0001187

**Cc:** Guiney, Brian P. (x2305)
**Subject:** RE: Nortel

Thanks, Dan.

    A meeting makes sense to try and resolve this, but our client would like to meet directly with your client for a business-level discussion.  Will your client make itself available to meet with Steve and Mark?  If so, we can schedule that.

    Also, is your client still taking the position in response to the request in our attached letter that it will not provide the fee statements to Solus and PointState?  If not, can you please forward the fee statements to us.  It would be good for that to happen before any such business-level meeting.

    Best,

**From:** Lowenthal, Daniel A. (x2720) [mailto:dalowenthal@pbwt.com]
**Sent:** Monday, October 31, 2016 2:56 PM
**To:** James Tecce <jamestecce@quinnemanuel.com>; Daniel Holzman <danielholzman@quinnemanuel.com>
**Cc:** Guiney, Brian P. (x2305) <bguiney@pbwt.com>
**Subject:** RE: Nortel

Jamie/Daniel,

I've returned to my office. Are you two available to meet with Brian and me here on Thursday afternoon?

Dan

-----Original Message-----
From: Lowenthal, Daniel A. (x2720)
Sent: Friday, October 21, 2016 4:10 PM
To: James Tecce
Subject: Nortel

CONFIDENTIAL
QE_0001188

Jamie,

I'm out of my office and will be away on business (most of next week) until Monday, October 31. In the meantime, I've informed Law Debenture that your clients want to speak with them. We'll pick up with that when I return.

Have a good weekend.

Dan

Daniel A. Lowenthal
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Direct: 212-336-2720
Cell: 914-523-7585
Fax: 212-336-1253
dalowenthal@pbwt.com

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to Internet email for messages of this kind.

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to Internet email for messages of this kind.

---

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to Internet email for messages of this kind.

---

CONFIDENTIAL

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL: (212) 849-7000 FAX: (212) 849-7100

November 4, 2016

**VIA ELECTRONIC MAIL**

Daniel Lowenthal, Esq.
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036

Re:   **Nortel Networks, Inc., et al., Case No. 09-10138 (KG) (Bankr. D. Del.)**

Dear Mr. Lowenthal:

We are counsel to Solus Alternative Asset Management LP, on behalf of certain funds and managed accounts ("Solus"), and PointState Capital LP ("PointState," and, with Solus, the "Noteholders"), in their capacities as holders of approximately 90% of the certain fixed rate senior notes due June 15, 2026 (the "7.875% Notes") issued by Nortel Networks Capital Corporation f/k/a Northern Telecom Corporation and Nortel Networks Limited f/k/a Northern Telecom Limited ("NNL"), and guaranteed by NNL, pursuant to an Indenture, dated February 15, 1996 (the "Indenture"). We are writing to follow up on our October 14, 2016 letter with respect to the fees and expenses that Law Debenture Trust Company of New York, as successor Trustee to The Bank of New York under the Indenture ("Law Debenture") asserts it incurred between January 14, 2009 and September 30, 2016 in connection with the above-captioned chapter 11 cases in the purported amount of $7,763,845.64 (the "Asserted Expenses").

This summer, when the Noteholders' counsel negotiated an agreement with Debtors' counsel concerning the treatment of the 7.875% Notes in the above-captioned cases, the Noteholders' counsel heard informally from others that Law Debenture's fees might total as much as $7.5 million. By emails dated July 7 and July 8, 2016, the Noteholders' counsel asked Law Debenture's counsel for "the name and phone number of the Trustee .... [because] Solus would like to know the total amount of the Trustee's fees." Three months later, by email dated October 6, 2016, the Noteholders' counsel asked again for "the contact information for the relevant person at Law Debenture[] .... [and for] the amount of Law Debentures' fees and expenses .... as well as a bill and supporting documentation." On October 13, 2016, Law Debenture finally provided a chart listing the Asserted Expenses without any descriptive information. And, to date, Law Debenture has neither provided supporting documentation for the Asserted Expenses, identified a business person with knowledge of the Asserted Expenses, nor made itself available to speak directly with the Noteholders about the Asserted Expenses.

The Asserted Expenses are confounding when, among other things, (a) at no point during the cases did Law Debenture provide a budget, estimate, work plan, or fee update to the Noteholders in advance of incurring the fees; (b) they constitute five percent (5%) of the face amount ($150 million) of the 7.875% Notes; and (c) the fees incurred by the indenture trustees for the other bond issues are 50% less, i.e., approximately $4 million, even though their debt is 20 times greater, i.e., nearly $3 billion of notes—making their fees one-tenth of one percent

quinn emanuel urquhart & sullivan, llp

NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS

CONFIDENTIAL

(0.1%) of the several issues. Equally concerning is Law Debenture's flat refusal to provide copies of its invoices, including day-note detail, or offer any documentation that might explain the magnitude of the Asserted Expenses. Finally, Law Debenture's more recent attempts to insert provisions in the chapter 11 plan that purport to limit the Noteholders' rights to challenge the reasonableness of the Asserted Expenses are not well received.

Even though Law Debenture owes a fiduciary duty to the Noteholders, its recent actions have focused more on protecting its ability to satisfy the Asserted Expenses than on vindicating the Noteholders' rights to recover what they are owed under the Indenture.[1] Moreover, section 606 of the Indenture requires that the Trustee's expenses, including the "charges and expenses of its counsel," must be "reasonable and documented" and be reasonable and necessary in accordance with section 503 of the Bankruptcy Code. Absent documentation or any demonstration of how the fees are reasonable, Law Debenture has no right to the Asserted Expenses or to seek their satisfaction from distributions to the Noteholders under a chapter 11 plan. Attempts to do so will be challenged. Solus and PointState want to work cooperatively with Law Debenture, but its refusal to provide details regarding, or an explanation of the Asserted Expenses makes it impossible to conduct a dialogue regarding those fees. And, Law Debenture's insistence that discussions concerning the Asserted Expenses continue through attorneys (which simply adds to the Asserted Expenses) is not productive. While several attorney-level discussions already have taken place, ultimately Law Debenture needs to explain directly to the Noteholders (a) why it incurred nearly $8 million in fees and (b) how those fees are reasonable and contributed to the Noteholders' recovery in these cases. To that end, please provide the invoices (with day-note detail) by **Friday November 11, 2016** and make principals available for a business-level discussion, without attorneys, the week of **November 14, 2016**. Law Debenture should be fully cognizant of its fiduciary duties and be governed accordingly. Nothing herein is or should be construed to be an admission of any type whatsoever. Nor does anything in this letter limit, restrict, or waive in any way any and all rights, claims, actions, remedies, or defenses that the Noteholders may have. We look forward to your response.

Very truly yours,

James C. Tecce

---

[1] See, e.g., Royal Park Inv. SA/NV v. HSBC Bank USA, 109 F. Supp. 3d 587, 597 (S.D.N.Y. 2015) ("Following a contractually defined 'Event of Default' .... [the trustee] now must, as prudence dictates, exercise those singularly conferred prerogatives in order to secure the basic purpose of any trust indenture, the repayment of the underlying obligation."); BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 778 F. Supp. 2d 375, 401 (S.D.N.Y. 2011) ("After an event of default, the indenture trustee's fiduciary duties expand by operation of New York common law .... [It owes a] fiduciary duty of undivided loyalty to trust beneficiaries ... [and its] obligations come more closely to resemble those of an ordinary fiduciary, regardless of any limitations or exculpatory provisions contained in the indenture."). See also Indenture § 601(a) ("If an Event of Default has occurred and is continuing, the Trustee shall exercise such rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of his own affairs.").

2

CONFIDENTIAL