# Exhibit 23

From: Lowenthal, Daniel A. (x2720)
Sent: Mon 11/14/2016 3:30 PM (GMT-05:00)
To: James Tecce
Cc: Guiney, Brian P. (x2305); Daniel Holzman
Bcc:
Subject: Nortel
Attachments: LTR to Tecce (2016-11-14).pdf

Jamie,

The letter attached responds to your letter of November 4, 2016.

Dan

Daniel A. Lowenthal
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Direct: 212-336-2720
Cell: 914-523-7585
Fax: 212-336-1253
dalowenthal@pbwt.com
www.pbwt.com

---

_____ Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to Internet email for messages of this kind.

---

_____

**Patterson Belknap Webb & Tyler** LLP

1133 Avenue of the Americas New York, NY 10036-6710 212.336.2000 fax 212.336.2222 www.pbwt.com

November 14, 2016

Daniel A. Lowenthal
Partner
(212) 336-2720
Direct Fax: (212) 336-1253
dalowenthal@pbwt.com

VIA ELECTRONIC MAIL

James C. Tecce, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

Re: Nortel Networks Inc., *et al.*, Case No. 09-10138 (KG) (Bankr. D. Del.) ("Debtors")

Dear Jamie:

We are counsel to Law Debenture Trust Company of New York, the successor indenture trustee under an indenture, dated February 15, 1996, by and among Nortel Networks Capital Corporation (f/k/a Northern Telecom Capital Corporation), as issuer, Nortel Networks Limited (f/k/a Northern Telecom Limited), as guarantor, and The Bank of New York, as trustee, pursuant to which were issued $150 million in aggregate principal amount of 7.875% Notes Due 2026 (the "***7.875% Notes***"). Law Debenture has also been represented in the Nortel cases by Dewey LeBoeuf LLP (our predecessor counsel until April 2012); Morris James LLP (Delaware counsel); and Faskin Martineau, Borden Ladner Gervais LLP, and Weir Foulds LLP (Canadian counsel).

This responds to your letter of November 4, 2016, which asks Law Debenture to provide its and its professionals' invoices and related day-note detail ("***Invoices***") to the Noteholders so they can assess the reasonableness of the fees and expenses incurred by Law Debenture and its professionals in the Nortel cases (the "***Bankruptcy Case***").[1] I respond to that request below, but first correct some of the many misstatements in your letter.

First, contrary to your assertion, Law Debenture has not refused to provide Invoices to the Noteholders. However, as explained below, and as both you and the Noteholders know, these materials contain privileged, attorney-client communications. Law Debenture will not produce invoices without addressing this and related issues. We had planned to discuss this when we invited you to our office. But you refused an in-person meeting, and now – rather than having a productive discussion around a conference table – we must respond to your incorrect written assertions.

[1] Capitalized terms used in this letter that are not defined have the meanings given to them in your letter.

Second, the suggestion that Law Debenture inserted "provisions in the chapter 11 plan that purport to limit the Noteholders' rights to challenge the reasonableness" of the Invoices is completely at odds with what I told you and Daniel Holzman during our October 30 phone call. I stated unequivocally, in response to a question from Lisa Schweitzer, that the Noteholders would have a chance to challenge the reasonableness of Law Debenture's fees if they wanted one. But I also said Law Debenture opposed the Noteholders' efforts to insert provisions in the plan and disclosure statement that would deny it the right to enforce its charging lien, a right that is plainly and unambiguously set forth in the Indenture.[2] Law Debenture will continue to resist efforts to impede its right to be paid its reasonable fees and expenses as contemplated by the Indenture.

Third, the magnitude of Law Debenture's fees and expenses relative to the face amount of the 7.875% Notes, or to the fees and expenses of other indenture trustees, is not at all probative of their reasonableness. For one thing, your comparison to the "indenture trustee for the other bond issues" conspicuously ignores the fees and expenses incurred by the third indenture trustee in this case (Wilmington Trust), which we understand are comparable to Law Debenture's fees and expenses. In large bankruptcy cases, multiple indenture trustees regularly represent stakeholders in different parts of a debtor's capital structure and with different issues of importance. The indenture trustee with the lowest fee at the end of a case is not necessarily the only one whose fees are reasonable. Here, for instance, Bank of New York Mellon ("*BNYM*") was aligned on every key issue with the *ad hoc* group of bondholders (whose professionals billed close to $50 million). By contrast, the Noteholders were often not aligned with the ad hoc group and other Core Parties on such significant issues as the Support Agreement, post-petition interest, and the no-call.[3]

For much of the Bankruptcy Case, Law Debenture was the only party actively protecting and promoting the interests of the holders of the 7.875% Notes. We filed court papers – including a successful motion for reconsideration – lobbied professionals for many other parties with respect to issues unique to the 7.875% Notes, and addressed issues with mediator Joseph Farnan. It is hardly surprising, therefore, that Law Debenture's fees exceed BNYM's fees. Remarkably, however, your inapt comparison between Law Debenture and BNYM completely ignores that the Noteholders will not bear these additional costs. As you know, NNI will pay up to $4.25 million of Law Debenture's fees and expenses (including legal fees) under the proposed chapter 11 plan. This will drastically reduce the amount that must be paid from distributions to

[2] The suggestion that Law Debenture does not have recourse to a charging lien to satisfy its reasonable fees and expenses, including the fees and expenses of its counsel, is especially preposterous in light of the Noteholders' demand to review the Invoices. If Law Debenture did not have the right to exercise a charging lien against distributions it receives from the Debtors, then what possible reason could there be for the Noteholders to review the Invoices?

[3] In fact, you once told me that you thought the ad hoc bondholders might expel the Noteholders from the group, and that if we had to litigate the NNCC issues, it would be just you and me before Judge Gross and against everyone else. We took your views seriously, and, as described in more detail below, worked hard to ensure that Law Debenture would be well-positioned to help maximize recoveries for all holders of the 7.875% Notes in any such litigation. Much of that work focused on the unique features of the 7.875% Notes, which you relinquished in settlement talks without our input or involvement.

the Noteholders through exercise of Law Debenture's charging lien. And it is in addition to the fees NNI will pay for the Noteholders' portion of fees for the ad hoc bondholders' professionals and your firm's fees. As of September 30, 2016, the Noteholders would pay just $3.5 million of the more than $10 million incurred by all of these professionals.[4]

Fourth, your statement that Law Debenture's "recent actions have focused more on protecting its ability to satisfy the Asserted Expenses than on vindicating the Noteholders' rights to recover what they are owed under the Indenture" is not only offensive, but is demonstrably false. For almost eight years, Law Debenture and its professionals have worked incredibly hard to maximize recoveries for all holders of the 7.875% Notes and to ensure they receive their distributions quickly and seamlessly. To give just one example, over the past few weeks Law Debenture has reviewed and revised the Debtors' proposed plan, disclosure statement, and ballots to ensure that the voting and distribution mechanisms filed with the Court for approval are in the best interests of all holders of the 7.875% Notes. The resulting improvements to these documents will directly benefit those holders.

Fifth, your statement that "at no point during the cases did Law Debenture provide a budget, estimate, work plan, or fee update to the Noteholders in advance of incurring the fees" is astounding. Since 2009, the Noteholders have worked with Law Debenture, through counsel, often on a weekly basis. The Noteholders have requested, sought, demanded, and availed themselves of the expertise that Law Debenture and its counsel in New York, Delaware, and Toronto have developed in the Bankruptcy Case. If necessary, we will provide your clients with an exhaustive list of every request and demand that your clients' former counsel, Javier Schiffrin, and, more recently, you, and Daniel, have made of Law Debenture throughout the Bankruptcy Case. Here are a few examples:

- Javier asked us to send him a draft of any document we planned to file with the Court; we did that with him and with you. We discussed what papers would say, sent you drafts, and often added your suggestions to the final versions filed with the Court.

- Law Debenture was a "Core Party" to cross-border allocation trial. Its Delaware counsel, New York counsel, and Toronto counsel all worked diligently with counsel for the Committee and its members, the Debtors, and the ad hoc group to advance positions designed to maximize the Noteholders' recovery.

- We participated in all four mediations and advanced positions there that were important to the Noteholders. We coordinated with you, remained in touch throughout the process – with a promise to call you to attend as well if that made sense – and made sure that the Debtors contacted you to discuss issues most significant to the Noteholders.

[4] This sum is approximately 1% of the total amount of Law Debenture's claim, which you have calculated to be at least $328 million.

- You regularly asked for our assistance and consulted with us on legal issues pertaining to the PBGC's joint-and-several claim and the no-call claim, and you consulted Law Debenture's Canadian counsel (Edmond Lamek) for help and insight on Canadian law and process.

At all times, the Noteholders – sophisticated and experienced participants in the distressed debt market – have been on actual and constructive notice of the work Law Debenture has done in these cases. And yet, of all the requests that the Noteholders have made of Law Debenture, you and I have never discussed their desire for a budget. Law Debenture's track record of responsiveness speaks for itself: we never refused a call or a meeting with you, always let you comment on pleadings we filed with the Court, and never failed to respond to any emails or other communications from you, Javier, or Daniel. If the Noteholders wanted a budget, you could have asked for one.

The Noteholders made regular demands and requests of Law Debenture throughout one of the most complex and contentious cross-border bankruptcy cases in history, then leveraged Law Debenture's advocacy for all holders of the 7.875% Notes into a highly favorable settlement. Now, with that settlement comfortably in hand, they complain that *less than half* of the fees and expenses incurred by Law Debenture must be paid out of the charging lien. It is simply not credible for experienced veterans of large chapter 11 cases such as you and your clients to profess surprise that the work Law Debenture performed on their behalf (and often at their request), over a period of almost eight years and in multiple jurisdictions, generated a few million dollars of fees that must be paid at the conclusion of the Bankruptcy Case.

Law Debenture appreciates your statement that the Noteholders "want to work cooperatively with Law Debenture." But your refusal to meet with us in person without precondition, as well as your attempts to insert language into the plan that would question the existence of a charging lien in the Indenture, can only be taken as a signal of hostility towards the Trustee, not a desire to work cooperatively. Indeed, while the entire premise of your letter is that the reasonableness of the fees and expenses cannot be verified until the Noteholders review the Invoices, the Noteholders appear to have had no trouble concluding – before reviewing the Invoices – that the fees and expenses are not reasonable. It should hardly be surprising, therefore, that Law Debenture is hesitant to share the Invoices with the Noteholders given the potential that the result of their review is preordained.

Nevertheless, Law Debenture will agree to make the Invoices available to the Noteholders, subject to any redactions Law Debenture deems necessary to protect privileged material, upon execution of a confidentiality and non-disclosure agreement ("*NDA*"). The Noteholders' review would be subject to a full reservation of rights by Law Debenture to seek payment of all of its fees and expenses, whether pursuant to the plan, out of the charging lien, or otherwise. Subject to your confirmation that this proposal is acceptable to the Noteholders, we will plan to send you a draft NDA by the end of this week. We cannot estimate how long it will take to gather and redact the Invoices, but we will send them to you as soon as possible after the NDA is executed.

Law Debenture believes the fees and expenses it has incurred in the Bankruptcy Case are more than reasonable in light of the duration and complexity of these cases and the

many requests and demands made of Law Debenture by the Noteholders. Nevertheless, if the Noteholders have questions about the Invoices, we and our client will meet with them. Law Debenture is under no obligation to meet with the Noteholders without counsel present and will not do so given the serious questions the Noteholders have raised about the performance of its duties under the Indenture. Whether the Noteholders have their counsel present is up to them.

This letter is provided to you subject to Rule 408 of the Federal Rules of Evidence in an effort to compromise a disputed claim; it is subject to a reservation of all of the rights of all of the claims and defenses of Law Debenture and each of its professionals.

Sincerely,

Daniel A. Lowenthal