# Exhibit 31

From:       Daniel Holzman
Sent:       Fri 6/10/2016 3:46 PM (GMT-04:00)
To:         Schweitzer, Lisa M.; Gianis, Margot A.
Cc:         James Tecce
Bcc:
Subject:    Nortel - Executed NDA
Attachments: 8052274_1_Nortel NDA.pdf; DOC061016-001.pdf


Lisa and Margot,


Attached are an executed copy of the NDA and Solus' certification. We will send PointState's certification as soon as we have it, which we expect will be shortly. Please send to us a fully executed copy of the NDA. We would appreciate receiving relevant information today. Thank you.


Kind regards,

Daniel


**Daniel Holzman**

**Quinn Emanuel Urquhart & Sullivan, LLP**
**51 Madison Avenue, 22nd Floor**
**New York, NY 10010**
**Direct: (212) 849-7242**

**Main Fax: (212) 849-7100**
**E-mail: danielholzman@quinnemanuel.com**


**From:** Gianis, Margot A. [mailto:mgianis@cgsh.com]
**Sent:** Friday, June 10, 2016 1:45 PM
**To:** Schweitzer, Lisa M. <lschweitzer@cgsh.com>; Daniel Holzman <danielholzman@quinnemanuel.com>
**Cc:** James Tecce <jamestecce@quinnemanuel.com>
**Subject:** RE: revised draft NDA

CONFIDENTIAL

Daniel,

Attached is an execution copy of the NDA incorporating your changes.

Best,

Margot

———

**Margot A. Gianis**

Cleary Gottlieb Steen & Hamilton LLP
Assistant: mmclaughlin@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2386 | F: +1 212 225 3999
mgianis@cgsh.com  | clearygottlieb.com

**From:** Schweitzer, Lisa M.
**Sent:** Friday, June 10, 2016 11:53 AM
**To:** Daniel Holzman; Gianis, Margot A.
**Cc:** James Tecce
**Subject:** RE: revised draft NDA

Thanks Daniel.  These changes are fine.  We will send you an execution copy of the agreement.

———

**Lisa M. Schweitzer**

Cleary Gottlieb Steen & Hamilton LLP
Assistant: lgiambatista@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2629 | F: +1 212 225 3999
lschweitzer@cgsh.com  | clearygottlieb.com

CONFIDENTIAL

**From:** Daniel Holzman [mailto:danielholzman@quinnemanuel.com]
**Sent:** Friday, June 10, 2016 11:22 AM
**To:** Schweitzer, Lisa M.; Gianis, Margot A.
**Cc:** James Tecce
**Subject:** RE: revised draft NDA

Lisa and Margot,

Thank you for sending the NDA. It is generally fine and we are prepared to execute it, except for one correction in Section 9 as to the amount of the Debtholder Clients' holdings and clarifying language in Sections 2 and 3 that Confidential Information can be shared with any Debtholder Client who has signed an NDA or joinder to the NDA. Please send us an execution version today, so that we can sign the NDA and start receiving materials today. Also, to the extent that any of the Debtholder Clients are willing to get restricted, could you please provide an NDA or joinder to our NDA for them to sign.

Kind regards,

Daniel

**Daniel Holzman**

**Quinn Emanuel Urquhart & Sullivan, LLP**
**51 Madison Avenue, 22nd Floor**
**New York, NY 10010**
**Direct: (212) 849-7242**

**Main Fax: (212) 849-7100**
**E-mail: danielholzman@quinnemanuel.com**

**From:** Schweitzer, Lisa M. [mailto:lschweitzer@cgsh.com]
**Sent:** Thursday, June 09, 2016 9:00 PM
**To:** James Tecce <jamestecce@quinnemanuel.com>; Daniel Holzman
<danielholzman@quinnemanuel.com>

QE_0010378

**Cc:** Gianis, Margot A. <mgianis@cgsh.com>
**Subject:** revised draft NDA

Daniel and Jamie –

Attached is a revised NDA to reflect the removal of the Canadian Debtors as signatory parties and to account for a few other updates, as well as a blackline of the changes against the last version from 2014.  I can send a clean execution version after you confirm you're prepared to sign this.

Lisa

———

**Lisa M. Schweitzer**

Cleary Gottlieb Steen & Hamilton LLP
Assistant: lgiambatista@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2629 | F: +1 212 225 3999
lschweitzer@cgsh.com | clearygottlieb.com

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any
attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those
affiliated entities.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any
attachments without retaining a copy.

CONFIDENTIAL

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

CONFIDENTIAL

QE_0010380

Execution Copy

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement") is entered into on this 10th day of June, 2016, by Quinn Emanuel Urquhart & Sullivan, LLP (the "Recipient"), Nortel Networks Inc. ("NNI") and certain other Nortel companies specified on Exhibit A (such companies collectively with NNI, the "U.S. Debtors") (the U.S. Debtors, together with all other Nortel subsidiaries and affiliates including, without limitation, Nortel Networks Limited ("NNL"), Nortel Networks Corporation ("NNC") and Nortel Networks Capital Corporation ("NNCC"), are hereinafter collectively referred to as the "Company").

## RECITALS

WHEREAS, the Recipient has been engaged by the entities listed on Schedule 1 hereto (each a "Debtholder Client" and collectively the Debtholder Clients) to act as their representative and, at their sole cost and expense, in connection with (i) all matters relating to the allocation of proceeds of certain asset sales between and among various Company entities (the "Allocation Matters") and (ii) the claims of the Debtholder Client in the Chapter 11 Cases and the Canadian Cases (as both such terms are defined below), in accordance with the terms of the engagement letter between the Recipient and the Debtholder Client.

WHEREAS, the Debtholder Clients have each signed a Confirmation, Acknowledgement and Undertaking in the form of Schedule 2 hereto (the "Debtholder Client Confirmation") which the Recipient has delivered to the Company.

WHEREAS, the Debtholder Clients are the holders of, or the investment managers for holders of, debt securities issued and/or guaranteed by NNC, NNL, NNI and/or NNCC (in such capacity, the "Debtholders").

WHEREAS, on January 14, 2009, the U.S. Debtors (other than Nortel Networks (CALA) Inc. ("NN CALA")) filed voluntary petitions and certain orders for relief (the "Chapter 11 Cases") pursuant to Title 11 of the United States Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and NN CALA filed on July 14, 2009 a voluntary petition in respect of the Chapter 11 Cases pursuant to the Bankruptcy Code before the Bankruptcy Court.

WHEREAS, concurrently with the Chapter 11 Cases, NNC, NNL and certain other Nortel companies specified on Exhibit B (such companies collectively, the "Canadian Debtors") sought creditor protection under the Companies' Creditors Arrangement Act (the "Canadian Cases") in the Ontario Superior Court of Justice Commercial List (the "Canadian Court") and certain entities of the Company incorporated in the Europe, Middle East and Africa region (such companies collectively, the "EMEA Debtors") subsequently made consequential filings for creditor protection under the Insolvency Act 1986 (the "UK Cases" and together with the Chapter 11 Cases and the Canadian Cases, the "Cases").

WHEREAS, on June 11, 2013, the Canadian Court and the Bankruptcy Court entered a

protective order (the "Protective Order") governing the participation of the U.S. Debtors, the Canadian Debtors, the EMEA Debtors, the Debtholder Client, the Recipient and other parties in discovery undertaken in connection with certain claims made in the Cases.

WHEREAS, the Company is willing to provide the Recipient with Confidential Information (as defined below) not governed by the Protective Order, subject to the terms and conditions contained in this Agreement, in the Recipient's capacity as a representative of the Debtholder Clients.

WHEREAS, the parties acknowledge, among other things, that the debt securities held or managed by the Debtholders and certain equity securities issued by NNCC, NNC and NNL are publicly-traded securities.

WHEREAS, the parties acknowledge that other holders of, or investment managers for holders of, debt securities issued and/or guaranteed by NNC, NNL, NNI and/or NNCC have executed, or may execute, a substantially identical Agreement (the Recipients pursuant to all such Agreements, collectively, the "Holders").

NOW, THEREFORE, in consideration of the mutual agreements contained herein, the Recipient and the U.S. Debtors agree as follows:

**I.    Confidentiality**

1.    As used in this Agreement, "Confidential Information" shall mean any information relating to the Company that is non-public, confidential, or proprietary in nature, including the content of all discussions, communications, negotiations, and evaluations in writing, orally, or otherwise, in each case received on or after the date hereof by the Recipient or any of its affiliates, members, partners, counsels, associates, employees, agents, advisors, accountants, consultants, attorneys or representatives (each of the foregoing, other than the Recipient and, for the avoidance of doubt, the Debtholder Clients, a "Representative") from the Company, Ernst & Young Inc., as the court-appointed Monitor in connection with the Canadian Cases (the "Monitor"), any of Alan Bloom, Stephen Harris, Chris Hill and Alan Hudson of Ernst & Young LLP or Ernst & Young Chartered Accountants, as applicable, as the court-appointed joint administrators of the EMEA Debtors in connection with the UK Cases (such individuals collectively, the "Joint Administrators"), or any of their respective representatives, agents, advisors or counsels, or to which the Recipient or any of its Representatives was a party, and all notes, reports, analyses, compilations, studies, files or other documents or material, whether prepared by the Recipient or others, to the extent such notes, reports, analyses, compilations, studies, files or other documents or material are based on, contain or otherwise reflect such information.

Notwithstanding the foregoing, for the avoidance of doubt, Confidential Information shall not include any Discovery Material as defined and governed by the Protective Order, nor shall Confidential Information include any information:

(a)    that was already in the possession of the Recipient or a Representative, or

2

**QE_0010382**

that was available to them on a non-confidential basis from any source, including a source other than the Company, the Monitor, the Joint Administrators or any of their respective agents or representatives, in each case prior to the time of disclosure by the Company, the Monitor or the Joint Administrators to the Recipient or its Representative under the terms of this Agreement;

(b)    obtained by the Recipient or a Representative from a third person, which insofar as is known to such Recipient or such Representative, after reasonable inquiry, is not subject to any legal, contractual, or fiduciary prohibition or obligation against disclosure by that third person in favor of the Company;

(c)    which is or becomes generally available to the public or the Company's other security holders other than as a result of a violation of this Agreement by the Recipient or any of its Representatives;

(d)    that is developed by the Recipient or its Representatives without use of or reference to the Confidential Information; or

(e)    that is permitted to be disclosed with the prior written consent of the U.S. Debtors.

2.    The Recipient agrees, except as otherwise provided herein (including, without limitation, paragraphs 3 and 5):

(a)    not to disclose in any manner whatsoever to any person or entity (including, without limitation, any Debtholder Client who has not signed a confidentiality agreement with the U.S. Debtors or a joinder to this Agreement) other than its Representatives all or any part of the Confidential Information without the prior written consent of the U.S. Debtors;

(b)    not to use the whole or any part of the Confidential Information for any purpose other than in its capacity as a representative of the Debtholder Clients in the context of the Cases; and

(c)    to disclose the Confidential Information only to its Representatives in connection with the Cases and subject to the limitations otherwise provided herein.

3.    It is understood that the Recipient may disclose the Confidential Information only:

(a)    to any of its Representatives who require the Confidential Information in connection with the Recipient's capacity as the representative of the Debtholder Clients in the Cases; provided, however, that (x) the Recipient will inform any such Representative (i) of the confidential nature of, and

3

QE_0010383

the non-use restrictions applicable to, such information and (ii) that upon receipt of any Confidential Information, such party shall be obligated to maintain the confidentiality of the Confidential Information and not use the Confidential Information in violation of the restrictions contained herein and (y) the Recipient hereby agrees to be responsible for any breach of this Agreement by such Representatives, unless any such Representative has separately signed a confidentiality agreement with the U.S. Debtors;

(b)    to any party in interest (including such party's Representatives) engaged in the evaluation of proceedings in the Cases or any proposed plan of reorganization of the Company who has first signed a confidentiality agreement with the U.S. Debtors; provided, however, that (i) as to the members (or their Representatives, including their counsel and financial advisors) of the Official Committee of Unsecured Creditors in the Chapter 11 Cases, the Monitor, the Canadian Debtors and the Joint Administrators (or their representatives), the Recipient may do so without further consultation with the U.S. Debtors; (ii) as to parties in interest engaged in the evaluation of proceedings in the Cases or any proposed plan of reorganization of the Company that have the same Confidential Information the Recipient has (such entity having received such Confidential Information without violation of any legal, contractual or fiduciary prohibition or obligation) or any other party that has signed a confidentiality agreement with the Company, the Recipient may discuss such Confidential Information with such parties in interest without further consultation with the U.S. Debtors; and (iii) as to all other parties in interest, persons or entities, the Recipient may do so only with the prior written consent of the U.S. Debtors;

(c)    to any Debtholder Client who has signed a confidentiality agreement with the U.S. Debtors or a joinder to this Agreement;

(d)    in accordance with paragraph 5 hereof;

(e)    with the prior written consent of the U.S. Debtors.

4.    The Recipient and its Representatives shall not share any Confidential Information with any officers, employees, counsel, accountants, advisors or agents of the Recipient or its Representatives that are known to be, or reasonably may be considered to be, involved in acquiring any assets of or trading in claims (including debt claims) against the Company, or with the Debtholder Clients, subject to section 3(b).

5.    If the Recipient (i) receives any request or has any requirement, arising in connection with any judicial, regulatory, self-regulatory, or other proceedings, including any discovery request, for the Recipient to disclose all or any portion of the Confidential Information and (ii) in the opinion of the Recipient's legal counsel, is legally required to disclose such Confidential Information, the Recipient may disclose such Confidential

4

QE_0010384

Information; provided, however, that where legally permissible under the circumstances, prior to making any such disclosure, the Recipient shall provide prompt notice of such request or requirement for disclosure to the U.S. Debtors so that the U.S. Debtors may seek a protective order or other appropriate remedy at the Company's sole cost and expense or waive compliance with the applicable provisions of this Agreement by the Recipient, and in any event, shall provide notice to the U.S. Debtors concurrently with such disclosure. In the event the U.S. Debtors determine to seek such protective order or other remedy, the Recipient will cooperate with the U.S. Debtors, at the Company's sole cost and expense, in seeking such protective order or other remedy. In the event that such protective order or other remedy is not obtained and disclosure of Confidential Information is required, or the U.S. Debtors grant a waiver hereunder, the Recipient (A) may, without liability hereunder furnish that portion (and only that portion) of the Confidential Information which, in the good faith opinion of the Recipient's legal counsel, the Recipient is legally required to disclose and (B) will exercise its commercially reasonable efforts to have confidential treatment accorded any Confidential Information so furnished.

6.    The Recipient acknowledges that the Confidential Information is and remains the property of the Company. In no event shall the Recipient or any of its Representatives be deemed, by virtue of this Agreement, to have acquired any right or interest of any kind or nature whatsoever, in or to, any Confidential Information. The Recipient shall, promptly upon written request by the U.S. Debtors, destroy any Confidential Information provided by the Company, the Monitor, the Joint Administrators or any of their respective representatives, agents, advisors or counsels to the Recipient or any of its Representatives that exists in any tangible form, including all copies and notes thereof, and including Confidential Information incorporated into analyses, compilations, studies, or other documents prepared by the Recipient or its Representatives (with such destruction being confirmed in writing by the Recipient following the Company's written request to Recipient for such confirmation), except for (i) copies of Confidential Information which the Recipient is required to retain in order to satisfy the requirements of any law, regulation, or securities exchange rule governing the conduct of the Recipient or the Recipient's internal compliance requirements or (ii) copies of any computer records and files containing any Confidential Information which have been created pursuant to such Recipient's automatic electronic archiving and back-up procedures, to the extent, in each case, such copies are retained in accordance with the confidentiality obligations specified in this Agreement.

7.    Although the Recipient understands that the Company has endeavored to include in the Confidential Information information known to it which it believes to be relevant for the purpose of the Recipient's analysis as a representative of the Debtholder Clients, the Recipient further understands and acknowledges that none of the Company, the Monitor, the Joint Administrators or any of their respective representatives, agents, advisors, counsels, affiliates or controlling persons (within the meaning of the Securities Exchange Act of 1934, as amended) makes any representation or warranty, express or implied, as to the accuracy or completeness of the Confidential Information or any other information provided to the Recipient or its Representatives by the Company, the Monitor, the Joint Administrators or any of their respective representatives, agents, advisors, counsels, affiliates or controlling

5

QE_0010385

persons in connection with matters contemplated hereby. Only those representations or warranties, if any, that are made in the disclosure statement, when, as and if it is approved by the Bankruptcy Court or the plan of reorganization, when, as and if it is confirmed by the Bankruptcy Court and, in either case subject to such limitations and restrictions as may be specified in such documentation, will have any legal effect. Furthermore, none of the Company, the Monitor, the Joint Administrators or any of their respective representatives, agents, advisors, counsels, affiliates or controlling persons shall have any liability to the Recipient or any other party, including, without limitation, the Representatives, the Debtholder Client, or any other unsecured creditor, resulting from the use of, or reliance on, Confidential Information by the Recipient or its Representatives, except as may be provided by any separate agreement between any of the parties that has been approved by the Bankruptcy Court, if and when approved and then, only with respect to any party to such separate agreement and only to the extent provided therein and except, with respect to Confidential Information provided by the Company, as a result of any fraud or willful misconduct by the Company.

8.    In the event that the Recipient is engaged by any additional Debtholders, concurrently therewith the Recipient will obtain from such Debtholder, and deliver to the Company, a Debtholder Client Confirmation signed by such Debtholder.

9.    The Recipient represents and warrants to the Company that, as of the date hereof, based solely on information received from the Debtholder Clients, the Debtholder Clients hold, or are the investment managers for holders of, 7.875% notes due 2026 issued by NNCC (the "7.875% Notes") having an aggregate principal amount of not less than US$130 million. The Recipient agrees that it will advise the Company promptly if (i) it becomes aware that the Debtholder Client at any time during the term of Recipient's engagement holds, or is the investment manager for holders of 7.875% Notes having an aggregate principal amount of less than US$100 million or (ii) the Recipient's engagement to act on behalf of the Debtholder Client is terminated or otherwise expires.

**II.        Termination and Non-Disclosure**

10.    The Recipient is aware, and will advise its Representatives, that applicable United States and Canadian securities laws restrict persons with material, non-public information concerning the Company (including matters that may be the subject of this Agreement) from purchasing or selling securities of the Company, or from communicating such information to any other person, except in circumstances permitted under applicable securities laws. The Recipient represents, warrants and covenants to and with the Company that the Recipient does not, and will not, own (beneficially or otherwise), purchase or sell, exercise control or direction over, or advise any person or entity as to the investing in or purchase or sale of, any Nortel Securities (as defined below). For the purposes of this Agreement, "Nortel Securities" means: (i) any Debt Securities or any equity securities issued or guaranteed by NNC, NNL, NNI, or NNCC; (ii) any put, call, option or other right or obligation to purchase or sell securities referred to in clause (i) above; and (iii) any derivative of a security referred to in clause (i) above. For the avoidance of doubt, nothing in this Agreement is intended to create any restrictions from trading or to in any way create

6

QE_0010386

obligations on the part of the Debtholder Clients to the Company with respect to trading or advisory services, and subject to any applicable transfer restrictions contained in the relevant indentures pursuant to which the debt securities of the Company were issued, and in compliance with applicable United States and Canadian securities laws, the Debtholder Clients may sell or assign such debt securities subject to and in compliance with, to the extent applicable, the Canadian Cease Trade Order (the "CTO"), which the Recipient acknowledges awareness of, provided that, should the Debtholder Client sign a confidentiality agreement as contemplated by the Debtholder Client Confirmation and thereafter receive Confidential Information, the Debtholder Client shall be permitted to engage in any such trading or advisory services only so long as it has established and will maintain at all times information blocking policies and procedures designed to prevent the misuse of material non-public information and isolating its trading and advisory services activities from its activities as Debtholder in the context of the Cases so as to ensure that Confidential Information is not available to persons that would engage in, or participate in decisions or give advice with respect to, any such trading or advisory services and that the Debtholder Client's personnel involved in the Cases similarly are not provided information regarding the Recipient's trading in the claims against the Company in advance of such trades, except that the Debtholder Client's personnel involved in the Cases may, after the date of the relevant trades, receive the usual and customary internal and public reports showing the Debtholder Client's prior purchases and sales and the amount and class of securities owned or held by the Debtholder Client, including debt securities issued by the Company, to the extent that such personnel would otherwise receive such reports in the ordinary course and such reports are not specifically prepared with respect to the Company. Notwithstanding anything to the contrary, the Recipient shall have no liability to the Company if any Debtholder Client, which has signed a Confidentiality Agreement, as contemplated by the Debtholder Client Confirmation, does not act in accordance with the foregoing so long as the Recipient has not advised the Debtholder Client to act not in accordance with the foregoing.

11.  Prior to the disclosure of any Confidential Information to the Recipient, the Recipient may elect in its sole discretion not to receive such Confidential Information.

12.  This Agreement shall terminate, including all restrictions imposed on the Recipient hereunder, on the earliest of (i) the date that the U.S. Debtors have publicly disclosed any material non-public information included in the Confidential Information but only with respect to such portion of the Confidential Information that has been disclosed, (ii) the date on which the disclosure statement containing such Confidential Information is approved by the Bankruptcy Court, provided that if any Confidential Information is offered to the Recipient after such date and the Recipient has elected to receive such Confidential Information, the restrictions in this Agreement shall continue to apply to the Recipient solely with respect to such Confidential Information, and (iii) such earlier date as may be mutually agreed to by the U.S. Debtors and the Recipient; provided that following termination of this Agreement, any right that the Company may have to enforce the provisions of this Agreement or to seek any remedy for any action or failure to act by the Recipient or its Representatives or other breach of this Agreement prior to such termination shall survive any such terminations, subject to any applicable statute of limitations.

7

CONFIDENTIAL

QE_0010387

13.    Upon the Recipient's reasonable request, the Company will promptly advise the Recipient whether or not it reasonably believes that (i) any particular information provided to the Recipient or its Representatives constitutes Confidential Information or material non-public information, or (ii) any particular information that it previously advised the Recipient was material non-public information has since been publicly disclosed by the Company.

## III.    Miscellaneous

14.    Nothing in this Agreement shall preclude the Recipient, or the Debtholder Clients from taking any action to obtain information relating to the Company or any relevant transaction through any other lawful means, including, without limitation, through or in connection with any legal proceeding, by subpoena, discovery request or otherwise; provided, however, that nothing in this Agreement shall grant the Recipient or the Debtholder Clients separate rights to take any such action. Information obtained by the Recipient or the Debtholder Client pursuant to action taken under this paragraph 14 shall not be "Confidential Information" for purposes of this Agreement but shall be governed by any applicable order entered in such legal proceeding.

15.    Unless such information is otherwise generally available to the public and then only to the extent such information is public, none of the U.S. Debtors or their respective agents or representatives shall disclose in any press release, public filing, document or oral or written communication with any third party: (i) absent the Recipient's prior written consent, (a) the Recipient's identity, (b) the Recipient's written or oral statement(s) of legal or factual positions as expressed by it or its Representatives, or (c) the status of any negotiations or discussions with the Recipient; and (ii) absent the prior written consent of the Debtholder Clients, as applicable: (a) the identity of any Debtholder Client, or (b) the aggregate or individual size or percentage of the Debtholder Client's holdings of the Company's debt securities; provided, that, in the case of the foregoing clauses (i) and (ii) (other than clause (ii)(b)), prior written consent shall not be required with respect to disclosures made (A) to the Official Committee of Unsecured Creditors in the Chapter 11 Cases, the Holders, the United States Trustee for the District of Delaware in the Chapter 11 Cases, the Monitor, the Canadian Debtors, representatives of the ad hoc committee of major creditors having claims only against the Canadian Debtors, and the Joint Administrators and, with respect to each of the foregoing parties, any agents, advisors, accountants, consultants, attorneys or other representatives thereof, in each case on a confidential basis, or (B) as otherwise required by law, regulation, or securities exchange rule, or as directed by the Bankruptcy Court or any other court with jurisdiction over any of the Cases.

16.    The parties hereto understand and agree that no contract or agreement providing for any restructuring transaction between the parties shall be deemed to exist unless and until appropriate documentation has been executed and delivered and approval has been obtained of the Bankruptcy Court and any other court of competent jurisdiction in connection with such restructuring. The parties hereto also agree that unless and until the conditions set forth in the preceding sentence have been fulfilled, none of the U.S. Debtors, the Recipient or the Debtholder Client will be under any legal obligation of any kind whatsoever with respect to such a restructuring transaction by virtue of this Agreement or otherwise except for the

8

QE_0010388

matters specifically agreed to herein. It is further acknowledged and agreed that the parties hereto reserve the right, in each of their respective sole discretion, to reject any and all proposals made by the parties hereto or any of their representatives with regard to any restructuring transaction between the U.S. Debtors, the Recipient or the Debtholder Clients, and to terminate discussions and negotiations at any time. Notwithstanding the foregoing, nothing contained herein shall be construed as (i) restricting the ability of the Bankruptcy Court or any other court of competent jurisdiction to initiate or confirm a reorganization plan for the Company despite objections from the Recipient or the Debtholder Clients, or cram down any claim held by the Debtholder Client in the Cases or (ii) a consent or agreement by the Recipient or the Debtholder Client to any of the foregoing.

17.    This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to the choice of law provisions thereof that would result in the application of law of another jurisdiction. The Recipient agrees and consents to personal jurisdiction and venue in the Bankruptcy Court for the purposes of any action, suit or proceeding arising out of or relating to this Agreement. To the fullest extent permitted by law, the Recipient, its Representatives and the U.S. Debtors hereby agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of either party with respect to any matter whatsoever relating to this Agreement.

18.    It is understood and agreed that money damages may not be an appropriate remedy for any breach of this Agreement and, accordingly, the U.S. Debtors shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach.

19.    If any portion of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall be unaffected thereby and shall remain in full force and effect. This Agreement may be signed in one or more counterparts (including by means of telecopied or electronically mailed facsimiles of signatures pages), each of which need not contain the signature of all parties hereto, and all of such counterparts taken together shall constitute a single agreement. This Agreement contains the entire agreement between the parties concerning the confidentiality of the Confidential Information and shall be binding upon any respective successors and permitted assigns. This Agreement may be modified or waived only by a separate writing executed by the U.S. Debtors and the Recipient expressly so modifying this Agreement or waiving any provision thereof. No course of dealing between the parties shall be deemed to modify or amend any provision of this Agreement.

20.    No delay in exercising any rights hereunder shall be construed to be a waiver of such rights, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right hereunder.

21.    Any notices or consents to be given hereunder by any party to another party may be effected in writing by personal delivery, overnight courier, or facsimile. Notices to the Company shall be provided to Nortel Networks Inc., Attn: John J. Ray, III, Principal Officer, 4001 E. Chapel Hill - Nelson Highway, Research Triangle Park, North Carolina 27709, Facsimile: (919) 905-3741, with a copy (which shall not constitute notice) to James L.

9

CONFIDENTIAL

QE_0010389

Bromley, Esq. and Lisa M. Schweitzer, Esq., Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Facsimile: (212) 225-3999. Notices to the Recipient shall be provided to James Tecce, Esq., Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010, Facsimile: (212) 849-7100.

*[Signature page follows]*

10

CONFIDENTIAL

QE_0010390

IN WITNESS WHEREOF, the Recipient and the U.S. Debtors have executed this Agreement by their duly authorized officers as of the date first set forth above.

NORTEL NETWORKS INC. AND THE OTHER U.S. DEBTORS

By: _____

Name: _____

Title: _____


QUINN EMANUEL URQUHART & SULLIVAN LLP

By: _____

Name: _JAMES TECCE_

Title: _PARTNER_

11

CONFIDENTIAL

QE_0010391

<u>**Schedule 1**</u>

<u>**Debtholder Client**</u>

1. Solus Alternative Asset Management LP

2. PointState Capital LP

S-1

[NEWYORK 2511639_20]

**CONFIDENTIAL**

**QE_0010392**

## Schedule 2

### Confirmation, Acknowledgment and Undertaking

TO:    Nortel Networks Inc. (on behalf of the U.S. Debtors)

In consideration of the U.S. Debtors entering into the Confidentiality Agreement dated June ____, 2016 (the "Agreement") with Quinn Emanuel Urquhart & Sullivan, LLP (defined in the Agreement as the "Recipient"; and all other capitalized terms used herein, unless otherwise defined, have the meanings ascribed thereto in the Agreement), the undersigned hereby:

1.    confirms that the undersigned is a holder of, or the investment manager for holders of, debt securities issued and/or guaranteed by Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc. and/or Nortel Networks Capital Corporation (a "Debtholder");

2.    confirms that the Recipient has been appointed as the undersigned's representative in connection with the Chapter 11 Cases and the Canadian Cases;

3.    acknowledges that neither the Recipient nor its Representatives are authorized to share any Confidential Information with the undersigned unless the undersigned has first entered into a confidentiality agreement with the U.S. Debtors on terms satisfactory to the U.S. Debtors (a "NDA"), and confirms that the undersigned will not request or knowingly receive or discuss any Confidential Information from or with the Recipient or its Representatives unless and until the undersigned has entered into such NDA; and

[NEWYORK 2511639_20]

CONFIDENTIAL

QE_0010393

4.     undertakes to notify NNI as soon as reasonably practicable in the event that at any time prior to the termination of the Agreement (i) the undersigned ceases to be a Debtholder, or (ii) the appointment of the Recipient to act on the undersigned's behalf, as described in paragraph 2 above, is terminated or otherwise expires.

DATED this _____ day of June, 2016.

[Debtholder Client]

By: _____
Name: _____
Title: _____

S-3

[NEWYORK 2511639_20]

CONFIDENTIAL                                                                                        QE_0010394

## Exhibit A

### U.S. Debtors

Nortel Networks Inc.

Nortel Networks Capital Corporation

Nortel Networks Cable Solutions Inc.

Xros, Inc.

Nortel Networks Applications Management Solutions Inc.

CoreTek, Inc.

Nortel Altsystems Inc. (formerly known as Alteon WebSystems Inc.)

Nortel Altsystems International Inc. (formerly known as Alteon WebSystems International Inc.)

Sonoma Systems

Qtera Corporation

Nortel Networks International Inc.

Northern Telecom International Inc.

Nortel Networks Optical Components Inc.

Nortel Networks HPOCS Inc.

Architel Systems (U.S.) Corporation

Nortel Networks (CALA) Inc.

A-1

[NEWYORK 2511639_20]

CONFIDENTIAL

QE_0010395

**Exhibit B**

**Canadian Debtors**

Nortel Networks Corporation
Nortel Networks Limited
Nortel Networks Technology Corporation
Nortel Networks Global Corporation
Nortel Networks International Corporation

03427.00003/5793533.6                    B-1

CONFIDENTIAL                                                    QE_0010396