**<u>Appendix A</u>**

Court File No. 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C., 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL COMMUNICATIONS INC., ARCHITEL SYSTEMS CORPORATION AND NORTHERN TELECOM CANADA LIMITED (COLLECTIVELY, THE "CANADIAN DEBTORS")

CLAIM SETTLEMENT AGREEMENT

THIS CLAIM SETTLEMENT AGREEMENT ("Agreement") is made and entered into as of this 27th day of January, 2017, among (i) SNMP RESEARCH INC. AND SNMP RESEARCH INTERNATIONAL, INC. (collectively, "SNMPRI"), (ii) NORTEL NETWORKS CORPORATION ("NNC"), NORTEL NETWORKS LIMITED ("NNL") AND THE OTHER CANADIAN DEBTORS and (iii) ERNST & YOUNG INC. in its capacity as monitor of the Canadian Debtors (the "Monitor" and with SNMPRI and the Canadian Debtors, collectively, the "Parties", and each individually a "Party").

WHEREAS NNL (then known as Nortel Networks Corporation) and SNMP Research International, Inc. entered into a licence agreement dated December 23, 1999 (including all schedules thereto, the "License Agreement") pursuant to which SNMP Research International, Inc. licensed certain software to NNL and its affiliates;

AND WHEREAS certain of the Canadian Debtors commenced proceedings (the "CCAA Proceedings") under the *Companies' Creditors Arrangement Act* (Canada) (the "CCAA") on January

- 2 -

14, 2009 (the "**Filing Date**"), before the Ontario Superior Court of Justice (Commercial List) (the "**Ontario Court**");

**AND WHEREAS** Ernst & Young Inc. was appointed by the Ontario Court as Monitor of the Canadian Debtors in the CCAA Proceedings;

**AND WHEREAS** SNMP Research International, Inc. filed a Canadian CCAA Proof of Claim (#1477) dated September 25, 2009, against NNC, NNL and certain of the other Canadian Debtors asserting a claim of US$22,281 (the "**Original CCAA Claim**");

**AND WHEREAS** SNMP Research International, Inc. filed an Amended Canadian CCAA Proof of Claim dated September 15, 2011, against NNC, NNL and certain of the other Canadian Debtors asserting a claim of US$7,549,323 plus unspecified damages (the "**Amended CCAA Claim**");

**AND WHEREAS** in accordance with the endorsement of the Ontario Court dated February 27, 2015, SNMPRI filed a Statement of Claim in the CCAA Proceedings on or about March 16, 2015, alleging various claims against NNC, NNL and certain of the other Canadian Debtors on a joint and several basis, including claims for unpaid royalties, licensing fees, maintenance fees, copyright infringement, unauthorized use and distribution of SNMPRI software, misappropriation of trade secrets, breach of the License Agreement, inducing, procuring and/or contributing to copyright infringement by third parties, disgorgement of profits, accounting of profits, pre-judgment interest and post-judgment interest and costs on a substantial indemnity claim, and including claims in relation to the period prior to the Filing Date and claims in relation to the period after the Filing Date in an amount to be determined at trial and estimated by SNMPRI at US$86 million (as amended, the "**Statement of Claim**" and

- 3 -

collectively with the Original CCAA Claim and the Amended CCAA Claim, the "**CCAA Claim**");

**AND WHEREAS** Nortel Networks Inc. and its affiliated U.S. debtors (collectively, the "**U.S. Debtors**") are subject to proceedings pending under Chapter 11 of the United States Bankruptcy Code (Case No. 09-10138(KG)) before the United States Bankruptcy Court for the District of Delaware (the "**U.S. Bankruptcy Court**");

**AND WHEREAS** SNMPRI has also asserted claims against the U.S. Debtors in an Adversary Proceeding (No. 11-53454) pending before the U.S. Bankruptcy Court (the "**U.S. Adversary Proceeding**"), and in pre-petition proofs of claim which may be amended (collectively, the "**U.S. Claims**");

**AND WHEREAS** the Canadian Debtors and the Monitor dispute the CCAA Claim and in accordance with the endorsement of the Ontario Court dated February 27, 2015, the Canadian Debtors filed a Statement of Defence dated April 6, 2015, defending the CCAA Claim;

**AND WHEREAS** the Ontario Court granted an Order (SNMPRI – Use of Documents Produced for Discovery) dated May 27, 2015 (the "**Canadian Documents Order**"), ordering, among other things, that to the extent permissible by applicable U.S. law and the orders of the U.S. Bankruptcy Court or the U.S. District Court for the District of Delaware (as applicable), the Confidential Records and Confidential Information (each as defined in the Canadian Documents Order) may be used by SNMPRI or the U.S. Debtors in connection with the U.S. Claims;

**AND WHEREAS** the U.S. Bankruptcy Court entered an Order Approving Stipulation and Agreement Governing Production, Exchange and Filing of Confidential Materials dated August 5, 2015, approving a Stipulation and Agreement Governing Production, Exchange and

- 4 -

Filing of Confidential Materials dated August 4, 2015 pursuant to which the U.S. Debtors, SNMPRI and the other parties thereto agreed that documents produced by the Canadian Debtors and SNMPRI in the SNMP Research Canadian Claim Proceeding (as defined therein) shall be deemed produced and could be used in the U.S. Adversary Proceeding, subject to the preservation of all objections regarding admissibility (the "**U.S. Documents Order and Stipulation**");

**AND WHEREAS** certain of the Canadian Debtors, the Monitor and SNMPRI are party to an Agreement re: Retention of Records dated November 3, 2015 (the "**Records Retention Agreement**") relating to the continued retention of certain hard copy and electronic records by the Canadian Debtors and pursuant to which SNMPRI is obligated to reimburse the Canadian Debtors for any and all costs incurred by the Canadian Debtors in connection with the continued retention of such records;

**AND WHEREAS** NNL holds a deposit of CA$25,000 received from SNMPRI to serve as security for SNMPRI's obligations under the Records Retention Agreement (the "**Retention Costs Deposit**");

**AND WHEREAS** the Canadian Debtors, the Monitor and SNMPRI have engaged in various motion practice in the CCAA Proceedings, including the Canadian Debtors and Monitor moving for partial summary judgment in respect of the CCAA Claim at a motion heard by the Ontario Court on April 12 and 13, 2016;

**AND WHEREAS** by Order dated April 26, 2016, the Ontario Court granted summary judgment in respect of certain of the claims asserted by SNMPRI in the CCAA Claim (the "**Summary Judgment Order**");

- 5 -

**AND WHEREAS** pursuant to the Summary Judgment Order costs payable to the Canadian Debtors and Monitor in respect of the Summary Judgment Motion were fixed at CA$540,000 (the "**Cost Award**") and payable by SNMPRI to NNL on the terms agreed among counsel on June 23, 2016;

**AND WHEREAS** on October 12, 2016, the Canadian Debtors, the Monitor, the U.S. Debtors and various other parties entered into that certain Settlement and Plans Support Agreement (the "**SPSA**");

**AND WHEREAS** on October 14, 2016, the Court of Appeal for Ontario denied SNMPRI's leave to appeal application in respect of the Summary Judgment Order;

**AND WHEREAS** on October 26, 2016, counsel to SNMPRI transferred CA$540,000 to NNL on account of the Cost Award;

**AND WHEREAS** on December 1, 2016, the Ontario Court authorized the filing of a Plan of Compromise and Arrangement pursuant to the CCAA concerning, affecting and involving the Canadian Debtors dated November 30, 2016 (as the same may be amended and/or restated in accordance with its terms, the "**Filed Plan**");

**AND WHEREAS** the Parties have engaged in good faith arm's length negotiations and have agreed to fully and finally settle the CCAA Claim and any and all other matters in dispute or otherwise outstanding between them on and subject to the terms of this Agreement.

**NOW THEREFORE** in consideration of the representations, warranties, covenants and mutual promises set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

- 6 -

1. <u>Certain Definitions and Interpretation</u>. Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Claims Resolution Order of the Ontario Court dated September 16, 2010.

2. <u>Settlement of CCAA Claim</u>. In full and final settlement of the CCAA Claim (including, for the avoidance of doubt, any claim alleged to relate to the period from and after the Filing Date), the Parties agree that SNMP Research International, Inc. shall have a single general unsecured claim against NNL in the amount of US$3,500 (three thousand, five hundred dollars) (the "**Accepted Claim**"). The Accepted Claim shall constitute SNMPRI's Proven Claim for all purposes, including, without limitation, for the purposes of voting and distribution under any Plan, including the Filed Plan. Nothing herein shall prejudice the Canadian Debtors' ability to effect a consolidation of their respective estates for purposes of a Plan or distribution in connection with the Accepted Claim. For the avoidance of doubt, SNMP Research International, Inc. shall only have a Proven Claim against NNL, and not against any other Canadian Debtor and SNMP Research Inc. shall not have a Proven Claim against any of the Canadian Debtors. Distributions on the Accepted Claim shall be subject to withholdings as required by applicable law, including as contemplated pursuant to the Filed Plan.

3. <u>Records Retention Agreement</u>. Upon execution of this Agreement: (i) the Hard Copy Records Termination Date and the ClearCase Server Termination Date (each as defined in the Records Retention Agreement) shall be deemed to have occurred; (ii) the Canadian Debtors shall be permitted to immediately dispose of the Hard Copy Records and the ClearCase Servers (each as defined in the Records Retention Agreement); (iii) SNMPRI shall no longer have any obligation to reimburse the Canadian Debtors for the costs of the continued retention of the Hard Copy Records and the ClearCase Servers; and (iv) the Records Retention Agreement shall otherwise terminate and be of no further force and effect except for the payment obligations contemplated in the immediately

following sentences. The Parties acknowledge that as at the date hereof the amount due by SNMPRI to the Canadian Debtors pursuant to the Records Retention Agreement is CA$15,784.94. Such amount shall be satisfied by the Canadian Debtors applying the Retention Costs Deposit to such obligation, with the remaining balance of the Retention Costs Deposit being returned to SNMPRI via cheque payable to SNMP Research International Inc.

4. <u>No Further Discovery or Access to Records</u>. SNMPRI hereby irrevocably and forever waives its ability to seek any further discovery (whether through the production of documents or otherwise) of the Canadian Debtors or the Monitor in connection with any claim, litigation or other proceeding, including, without limitation, in connection with the U.S. Claims or any further or other claim SNMPRI may assert against any other person, including, without limitation, any purchaser of any Nortel assets. Without limiting the generality of the foregoing, SNMPRI shall have no further right to conduct any further searches of the Canadian Debtors' records (whether hard copy or electronic) or to otherwise access, whether directly or indirectly, the Canadian Debtors' records. Nothing herein shall restrict SNMPRI's ability to use documents already produced by the Canadian Debtors to SNMPRI (the "**Canadian Documents**") as permitted pursuant to the Canadian Documents Order and the U.S. Documents Order and Stipulation and the Canadian Debtors and the Monitor acknowledge SNMPRI's continuing right to use the Canadian Documents pursuant to and in accordance with the Canadian Documents Order and the U.S. Documents Order and Stipulation.

5. <u>Costs</u>. Without limiting the generality of the settlement and releases contemplated hereby, the Canadian Debtors and the Monitor, on the one hand, and SNMPRI, on the other, expressly agree and acknowledge that neither will have any further liability for costs (including, without limitation, lawyers' fees and disbursements and the costs of any expert) incurred by the other Party relating to the CCAA Claim or any other litigation between them, and the Canadian Debtors hereby expressly waive and release the CA$1,500 cost award against SNMPRI in their favour pursuant to the

- 8 -

October 14, 2016, reasons of the Court of Appeal for Ontario. For the avoidance of doubt, NNL shall retain the Cost Award in its entirety and SNMPRI releases any claim to the return of the Cost Award.

6. <u>No Assistance to SNMPRI</u>. As contemplated pursuant to Section 4(f) of the SPSA, neither the Canadian Debtors nor the Monitor shall assist SNMPRI in bringing any claims against any other Debtor (as defined in the SPSA), including the U.S. Claims.

7. <u>Nortel/Monitor Release</u>. SNMP Research Inc. and SNMP Research International Inc. for and on behalf of themselves, their affiliates and their respective successors and assigns (collectively, the "**SNMPRI Releasing Parties**") hereby release and forever discharge the Canadian Debtors, the Monitor and each of their respective current and former shareholders, directors, officers, employees, agents, lawyers, personal representatives, successors and assigns (collectively, the "**Released Parties**") from any and all liabilities, claims, demands, debts, obligations, damages, actions, causes of action, setoffs, recoupments, contributions, costs and expenses (including, without limitation, lawyers' fees) (collectively, "**Liabilities**") which arise from or relate to agreements, transactions, events, actions, activities, matters or circumstances occurring or existing on or prior to the date hereof, whether known or unknown, foreseen or unforeseen, matured or unmatured, contingent or not contingent, liquidated or unliquidated, whether in law or equity and whether based on contract, tort, fraud or otherwise, which any of the SNMPRI Releasing Parties now has or hereafter may have against any of the Released Parties, including, without limitation, the CCAA Claim and any claim asserted in any of the Original CCAA Claim, the Amended CCAA Claim or the Statement of Claim and any Liabilities arising under or in connection with the License Agreement or the use or transfer of any SNMPRI software or other intellectual property by the Canadian Debtors, except for the allowance of, and distributions on account of, the Accepted Claim and the obligations of the Canadian Debtors under this Agreement. Notwithstanding the foregoing, and for the sake of clarity

and the avoidance of doubt, nothing in this Agreement, including this paragraph 7, or other matter in the CCAA Proceedings, including the Filed Plan as may be amended, shall release or otherwise impair in any way the U.S. Claims as against the U.S. Debtors, including, without limitation, any U.S. Claims as against the U.S. Debtors for which SNMPRI alleges the Canadian Debtors and U.S. Debtors are jointly and severally liable and any Claims against the U.S. Debtors for breach of contract, copyright infringement, trade secret misappropriation, damages of any kind, and claims for disgorgement of profits.

8. <u>SNMPRI Release</u>. The Canadian Debtors and the Monitor for and on behalf of themselves and their respective successors and assigns (collectively, the "**Releasing Parties**") hereby release and forever discharge SNMP Research Inc., SNMP Research International Inc. and each of their respective current and former shareholders, directors, officers, employees, agents, lawyers, personal representatives, successors and assigns (collectively, the "**SNMPRI Released Parties**") from any and all Liabilities which arise from or relate to agreements, transactions, events, actions, activities, matters or circumstances occurring or existing on or prior to the date hereof, whether known or unknown, foreseen or unforeseen, matured or unmatured, contingent or not contingent, liquidated or unliquidated, whether in law or equity and whether based on contract, tort, fraud or otherwise, which any of the Releasing Parties now has or hereafter may have against any of the SNMPRI Released Parties, including, without limitation, any Liabilities arising under or in connection with the License Agreement or the use or transfer of any SNMPRI software or other intellectual property by the Canadian Debtors, except for the obligations of SNMPRI under this Agreement.

9. <u>No Further Claims</u>. Except as settled and admitted in paragraph 2 hereof, the CCAA Claim shall be deemed withdrawn in full and SNMPRI shall be forever barred from asserting or continuing the CCAA Claim or any other claim against the Canadian Debtors or any of them and shall be forever barred from amending the amount or priority of the Accepted Claim. For the

avoidance of doubt and without limiting the generality of the foregoing, SNMPRI agrees that it shall not seek any further leave to appeal, appeal or other review of the Summary Judgment Order. SNMPRI further undertakes, covenants and agrees not to make any claim, participate in any proceeding or take any action against any other person or entity who would as a result of such claim, proceeding or action have a claim for contribution or indemnity against any of the Released Parties in relation to the matters released hereunder; provided, however, that nothing in this paragraph 9 shall release or otherwise impair the U.S. Claims as against the U.S. Debtors, including, without limitation, any U.S. Claims as against the U.S. Debtors which SNMPRI alleges the Canadian Debtors and U.S. Debtors are jointly and severally liable for.

10. **Binding Effect**. This Agreement shall be binding upon any successors or assigns of the Parties, including any assignee of the Accepted Claim.

11. **No Transfer**. SNMPRI represents and warrants that it has not sold, assigned or otherwise transferred the CCAA Claim or any of the other claims being released pursuant to this Agreement to a third party. Nothing herein shall limit SNMPRI's right to assign, sell or transfer the Accepted Claim to a third party, provided that (i) any such assignment shall be subject to the provisions of the Claims Procedure Order dated July 30, 2009 (as amended and restated) including paragraphs 18 to 20 thereof, and (ii) any assignee or transferee of an Accepted Claim shall, prior to the assignment or transfer of such Accepted Claim, acknowledge the terms of this Agreement and agree to be bound by the terms hereof.

12. **Entire Agreement**. This Agreement constitutes the entire agreement among the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof. This Agreement cannot be amended except by a writing signed by each of the Parties hereto.

13. **No Admissions**. Each Party acknowledges and agrees that nothing in this

- 11 -

Agreement constitutes an admission or concession of any legal issue raised in or relating to the CCAA Claim.

14. <u>Costs and Expenses</u>.  Except as otherwise expressly contemplated herein, the Parties agree to bear their own costs, expenses and lawyers' fees incurred in relation to the disputes resolved by this Agreement, the negotiations related to the settlements herein and the preparation of this Agreement and to not seek from the other Parties reimbursement of any such costs, expenses or lawyers' fees.

15. <u>Jurisdiction and Governing Law</u>.  The Parties hereby irrevocably attorn to the exclusive jurisdiction of the Ontario Court with respect to any and all disputes arising out of or in connection with this Agreement. This Agreement shall be interpreted, construed, and enforced in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein.

16. <u>Manner of Execution</u>.  This Agreement may be executed in counterparts, each of which shall be an original, and such counterparts shall be construed together as one instrument. The signature of any of the Parties hereto may be evidenced by a facsimile, scanned email or internet transmission copy of this Agreement bearing such signature.

**[Signature page immediately follows]**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

SNMP RESEARCH INC.

Per: *[signature]*
Name: Jeffrey D Case
Title: Founder and CTO

SNMP RESEARCH INTERNATIONAL, INC.

Per: *Mary L Case*
Name: Mary L. Case
Title: CEO

NORTEL NETWORKS CORPORATION AND NORTEL NETWORKS LIMITED FOR AND ON BEHALF OF THEMSELVES AND THE OTHER CANADIAN DEBTORS

Per: _____
Name:  Tanecia Wong Ken
Title:  Authorized Representative

ERNST & YOUNG INC. IN ITS CAPACITY AS MONITOR OF NORTEL NETWORKS CORPORATION ET AL. AND NOT IN ITS PERSONAL CAPACITY

Per: _____
Name:  Tom C. Ayres
Title:  Senior Vice-President

6640302

Doc#3814952v4

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**SNMP RESEARCH INC.**

Per: _____
     Name:
     Title:

**SNMP RESEARCH INTERNATIONAL, INC.**

Per: _____
     Name:
     Title:

**NORTEL NETWORKS CORPORATION AND NORTEL NETWORKS LIMITED FOR AND ON BEHALF OF THEMSELVES AND THE OTHER CANADIAN DEBTORS**

Per: _____[signature]_____
     Name: Tanecia Wong Ken
     Title: Authorized Representative

**ERNST & YOUNG INC. IN ITS CAPACITY AS MONITOR OF NORTEL NETWORKS CORPORATION ET AL. AND NOT IN ITS PERSONAL CAPACITY**

Per: _____
     Name: Tom C. Ayres
     Title: Senior Vice-President

6640302

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first written above.

**SNMP RESEARCH INC.**

Per: _____
      Name:
      Title:

**SNMP RESEARCH INTERNATIONAL, INC.**

Per: _____
      Name:
      Title:

**NORTEL NETWORKS CORPORATION AND NORTEL NETWORKS LIMITED FOR AND ON BEHALF OF THEMSELVES AND THE OTHER CANADIAN DEBTORS**

Per: _____
      Name: Tanecia Wong Ken
      Title: Authorized Representative

**ERNST & YOUNG INC. IN ITS CAPACITY AS MONITOR OF NORTEL NETWORKS CORPORATION ET AL. AND NOT IN ITS PERSONAL CAPACITY**

Per: _[signature]_____
      Name: Tom C. Ayres
      Title: Senior Vice-President